1            UNITED STATES BANKRUPTCY COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 -oOo-

4   In Re:                 ) Case No. 19-30088
                        ) Chapter 11

5   PG&E CORPORATION AND PACIFIC   )
   GAS AND ELECTRIC COMPANY      ) San Francisco, California

6                         ) Wednesday, October 23, 2019
             Debtors.   ) 10:00 AM

7   _____ )
                           DEBTORS' MOTION PURSUANT TO

8                            11 U.S.C. SECTIONS 363(B) AND
                           105(A) AND FED. R. BANKR. P.

9                            6004 AND 9019 FOR ENTRY OF AN
                           ORDER (I) AUTHORIZING THE

10                           DEBTORS TO ENTER INTO
                          RESTRUCTURING SUPPORT

11                          AGREEMENT WITH THE CONSENTING
                         SUBROGATION CLAIMHOLDERS,

12                        (II) APPROVING THE TERMS OF
                         SETTLEMENT WITH SUCH

13                         CONSENTING SUBROGATION
                        CLAIMHOLDERS, INCLUDING THE

14                       ALLOWED SUBROGATION AMOUNT,
                       AND (III) GRANTING RELATED

15                       RELIEF (THE "SUBROGATION
                       SETTLEMENT AND RSA MOTION")

16                       [3992]

17                       STATUS CONFERENCE

18                       APPLICATION OF THE OFFICIAL
                       COMMITTEE OF TORT CLAIMANTS

19                       FOR ENTRY OF AN ORDER (I)
                       CONFIRMING THE SCOPE OF

20                       EMPLOYMENT OF BAKER &
                       HOSTETLER LLP, OR

21                       ALTERNATIVELY (II) AMENDING
                       THE ORDER APPROVING

22                       APPLICATION OF THE OFFICIAL
                       COMMITTEE OF TORT CLAIMANTS

23                       PURSUANT TO 11 U.S.C. SECTION
                       1103 AND FED.R.BANKR.P. 2014

24                       AND 5002, FOR AN ORDER
                       AUTHORIZING RETENTION AND

25                       EMPLOYMENT OF BAKER &

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1                              HOSTETLER LLP, EFFECTIVE AS
                               OF FEBRUARY 15, 2019 (DOC.
 2                             NO. 1331) (THE RETENTION
                               ORDER) [4018]
 3

 4                     TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE DENNIS MONTALI
 5                 UNITED STATES BANKRUPTCY JUDGE

 6
        APPEARANCES:
 7      For the Debtors:        STEPHEN KAROTKIN, ESQ.
                                JESSICA LIOU, ESQ.
 8                              Weil, Gotshal & Manges LLP
                                767 Fifth Avenue
 9                              New York, NY 10153
                                (212)310-8000
10      For the Debtors:        KEVIN J. ORSINI, ESQ.
                                PAUL H. ZUMBRO, ESQ.
11                              Cravath, Swaine & Moore LLP
                                825 Eighth Ave.
12                              New York, NY 10019
                                (212)474-1000
13
        For Official Committee of   KIMBERLY S. MORRIS, ESQ.
14      Tort Claimants:         ROBERT A. JULIAN, ESQ.
                                CECILY ANN DUMAS, ESQ.
15                              Baker and Hostetler LLP
                                11601 Wilshire Boulevard
16                              Suite 1400
                                Los Angeles, CA 90025
17                              (310)820-8800

18      For Official Committee of   ANDREW LEBLANC, ESQ.
        Unsecured Creditors:    Milbank LLP
19                              1850 K St. NW
                                #1100
20                              Washington, DC 20006
                                (202)835-7500
21
        For Adventist Health    REBECCA J. WINTHROP, ESQ.
22      System/West and Feather Norton Rose Fulbright US LLP
        River Hospital:         555 South Flower Street
23                              Forty-First Floor
                                Los Angeles, CA 90071
24                              (213)892-9200

25
```

| | | |
|---|---|---|
| 1 | For United States of America: | MATTHEW J. TROY, ESQ. United States Department of |
| 2 | | Justice, Civil Division P.O. Box 875 |
| 3 | | Ben Franklin Station Washington, DC 20044 |
| 4 | | (202)514-9038 |
| 5 | For California State Agencies: | PAUL J. PASCUZZI, ESQ. Felderstein Fitzgerald et al LLP |
| 6 | | 500 Capital Mall #2250 |
| 7 | | Sacramento, CA 95814 (916)329-7400 |
| 8 | | |
| 9 | For Ad Hoc Committee of Senior Unsecured | MICHAEL S. STAMER, ESQ. ABID QURESHI, ESQ. |
| 10 | Noteholders: | Akin Gump Strauss Hauer &Feld LLP One Bryant Park |
| 11 | | New York, NY 10036 (212)872-1000 |
| 12 | For Official Committee of Unsecured Creditors: | GREGORY A. BRAY, ESQ. Milbank, LLP |
| 13 | | 2029 Century Park East 33rd Fl |
| 14 | | Los Angeles, CA 90067 (424)386-4000 |
| 15 | | |
| 16 | For Ad Hoc Committee of Holders of Trade Claims: | DAVID M. FELDMAN, ESQ. Gibson, Dunn & Crutcher LLP |
| 17 | | 200 Park Ave. New York, NY 10166 |
| 18 | | (212)351-4000 |
| 19 | For Citibank N.A., as Administrative Agent for | TIMOTHY GRAULICH, ESQ. Davis Polk and Wardwell LLP |
| 20 | the Utility Revolving Credit Facility: | 450 Lexington Ave. New York, NY 10017 |
| 21 | | (212)450-4000 |
| 22 | For Certain Utility Bondholders: | DAVID M. GUESS, ESQ. Bienert Katzman PC |
| 23 | | 903 Calle Amanecer Suite 350 |
| 24 | | San Clemente, CA 92673 (949)369-3700 |
| 25 | | |

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Certain Utility        ADAM C. HARRIS, ESQ.
     Bondholders:               Schulte Roth & Zabel LLP
 2                              919 Third Avenue
                                New York, NY 10022
 3                              (212)756-2000

 4   For BOKF, NA:              ANDREW I. SILFEN, ESQ.
                                Arent Fox LLC
 5                              1301 Avenue of the Americas
                                42nd Fl.
 6                              New York, NY 10019
                                (212)484-3900
 7
     For Bank of America, N.A.: M. DAVID MINNICK, ESQ.
 8                              Pillsbury Winthrop Shaw Pittman
                                4 Embarcadero Center
 9                              22nd Fl.
                                San Francisco, CA 94126
10                              (415)983-1000

11   For PG&E Shareholders:     BRUCE BENNETT, ESQ.
                                Jones Day
12                              555 South Flower Street
                                Fiftieth Floor
13                              Los Angeles, CA 90071
                                (213)489-3939
14
     For Mizuho Bank:           SHERRY J. MILLMAN, ESQ.
15                              Stroock & Stroock & Lavan LLP
                                180 Maiden Ln
16                              New York, NY 10038
                                (212)806-5400
17
     For Ad Hoc Group of        MATTHEW A. FELDMAN, ESQ.
18   Subrogation Claim Holders: Willkie Farr & Gallagher LLP
                                787 7th Ave.
19                              New York, NY 10019
                                (212)728-8000
20
     For SLF Fire Victim        RICHARD A. MARSHACK, ESQ.
21   Claimants:                 Marshack Hays LLP
                                870 Roosevelt
22                              Irvine, CA 92620
                                (949)333-7777
23
     Also Present:              Will Abrams
24                              Claimant, Fire Survivor

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      Court Recorder:              LORENA PARADA
                                     United States Bankruptcy
                                     Court
19                                   450 Golden Gate Ave.
                                     San Francisco, CA 94102
20

21      Transcriber:                 ALIZA BLUMENFELD
                                     eScribers, LLC
22                                   7227 N. 16th Street
                                     Suite #207
23                                   Phoenix, AZ 85020
                                     (973)406-2250
24

        Proceedings recorded by electronic sound recording;
25      transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, OCTOBER 23, 2019,

2                         10:00 AM

3                          -oOo-

4        (Call to order of the Court.)

5            THE BAILIFF:  All rise.  The Court is now in session,

6    the Honorable Dennis Montali presiding.

7            THE COURT:  Good morning.  Crowded house.

8            Good morning, everyone.

9            IN UNISON:  Good morning, Your Honor.

10           THE BAILIFF:  This the Court's 10 a.m. calendar, in

11   the matter of PG&E Corporation.

12           THE COURT:  Mr. Karotkin, you're ready to go?

13           MR. KAROTKIN:  Good morning, Your Honor.  Steven

14   Karotkin, Weil, Gotshal & Manges, for the debtors.

15           Yes, we are.  I think you wanted the first matter, the

16   Baker motion.

17           THE COURT:  Yes.  Let me just make an opening comment

18   that's related to nothing except everything.  I noticed in the

19   last round of briefing that there's a little bit of emotion

20   that's creeping in the words and lines, so I'm going to ask

21   counsel to downplay the energy a little bit and stop making

22   references to hedge funds or opponents by their name when it

23   isn't relevant; Elliott on the one hand or Baupost on the other

24   and so on.  And just stick with the functional terms if you --

25   there's a reason to name a company for something important,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    that's fine.  But I just want to keep our arguments a little

2    bit more balanced and civilized.  Nothing specific beyond that.

3          Okay.  Let's go.  Who's going to make the presentation

4    for the TCC on the motion?

5          Good morning.

6          MS. MORRIS:  Good morning, Your Honor.  Kimberly

7    Morris of Baker Hostetler on behalf of the official committee

8    of tort claimants.

9          THE COURT:  All right.  Good morning, Ms. Morris.

10         MS. MORRIS:  I'd like to reserve two minutes.  I

11   noticed that you gave us each ten minutes, and I'd --

12         THE COURT:  Yeah, it was a lot of time.

13         MS. MORRIS:  -- like to reserve two.  Yeah.

14         THE COURT:  I have one opening question for you.

15         MS. MORRIS:  Um-hum.

16         THE COURT:  I was confused in the papers.  I think it

17   kind of shows up a couple of times, but I'll focus on page 6 of

18   the motion.  The top, it -- the following sentence seems to be

19   completely incorrect.  "The state court litigation involves

20   claims estimation, confirmation issues, and potential

21   compromise of controversies."  The last time I checked, it

22   should -- it would have none of those involved.

23         MS. MORRIS:  Well --

24         THE COURT:  It's a claim by a group of plaintiffs

25   against the utility or the utility and the parent for their

PG&E Corp., Pacific Gas & Electric Co.

1  damages out of the fires.  There's nothing about claims

2  estimation, nothing about compromises, nothing about any of the

3  things that are mentioned there.  So what does that mean to

4  this motion?

5        MS. MORRIS:  Sure, Your Honor.  I believe that when

6  Your Honor granted the relief from stay for -- to allow the

7  Tubbs claimants to proceed in the state court litigation, that

8  you recognized the importance of the Tubbs proceeding to --

9        THE COURT:  I did.

10        MS. MORRIS:  -- the estimation and the data points

11  that would result from that proceeding as to the debtors'

12  liability for the Tubbs fire.

13        THE COURT:  Right.

14        MS. MORRIS:  And the debtors, in connection with the

15  various motions that they've made, said that the Tubbs issue

16  was one of the gating issues with respect --

17        THE COURT:  Well, I know.

18        MS. MORRIS:  -- to this proceeding.

19        THE COURT:  That's obvious that we -- that's so

20  obvious, you don't even have to repeat it.

21        MS. MORRIS:  Um-hum.

22        THE COURT:  It's obvious; that's why I granted it.

23  But there was nothing about granting the relief from stay that

24  said, by the way, Superior Court, would you please deal with

25  estimation or confirmation issues or, by the way, for any

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  compromises.

2      MS. MORRIS:  Yeah, you're right, Your Honor.  It's

3  just the data points that were resolved from that trial as to

4  the debtors' liability.

5      THE COURT:  Right.  So the data point will be a

6  verdict, perhaps --

7      MS. MORRIS:  Um-hum.

8      THE COURT:  -- that is favorable for one side or

9  favorable to the other side.

10      MS. MORRIS:  That's right.

11      THE COURT:  What else will there be?  Maybe -- unless

12  there's some specific findings that are relevant to that

13  inquiry.

14      MS. MORRIS:  Well, the debtors' liability for the

15  fires will affect the estimation of the Tubbs claim.  Judge

16  Donato --

17      THE COURT:  I asked what the outcome in the court will

18  be, not where they will go with Judge Donato or me --

19      MS. MORRIS:  Um-hum.

20      THE COURT:  -- or anywhere.  I would imagine a

21  superior court judge will sign a verdict or an order, whatever

22  the correct proceeding is, that says, Plaintiff recovers X or

23  Defendant recovers Y or perhaps responding to a special

24  interrogatories.  But beyond that, I don't know that anything

25  would be happening.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1     MS. MORRIS:  Yeah, and the practical effect of that is

2  that the individual plaintiffs, if they do receive a judgment,

3  they can't go enforce that judgement because I think your order

4  makes clear they can't do that.

5     THE COURT:  So does the --

6     MS. MORRIS:  That's right.

7     THE COURT:  So does the Bankruptcy Code.

8     MS. MORRIS:  Yeah.

9     THE COURT:  But that's not the point.  The point is

10  your motion today is to take an action -- it reads as though

11  you're going to take a more broader role in the Superior Court

12  dealing with bankruptcy issues, which doesn't seem relevant.

13     MS. MORRIS:  It actually affects the estimation

14  issues --

15     THE COURT:  I know it affects --

16     MS. MORRIS:  Yeah.

17     THE COURT:  -- but pretend I'm the Superior Court

18  judge now --

19     MS. MORRIS:  Um-hum.

20     THE COURT:  -- magically, down the street, and we're

21  here at the opening of trial, and say, why are you bothering me

22  with bankruptcy court issues?  We're here to decide if the

23  defendant is guilty -- is liable to the plaintiffs.  Period.

24     MS. MORRIS:  That's right, and the issues that will be

25  litigated in the state court proceeding are some of the very

PG&E Corp., Pacific Gas & Electric Co.

1  same issues that we're going to be litigating in the estimation

2  proceedings before Judge Donato.  Just by way of example, some

3  of --

4          THE COURT:  I know it.  I got it.  I'm the one that

5  teed Judge Donato for you, so I know that.

6          Okay.  Let's go back to you, opening comment about

7  today's motion.

8          MS. MORRIS:  Well, given the overlapping issues, Your

9  Honor, will be addressed in both proceedings and especially

10  given the truncated time frame in which we're -- the Tubbs

11  trial is proceeding and the estimation trial is proceeding, in

12  essentially one-tenth of the time that it would normally take

13  to try these issues, the coordination of the efforts between

14  what's going on in the Tubbs case and what's going in the

15  estimation case, the same documents, the same witnesses,

16  potentially the same experts, and the same issues to be decided

17  by both judges, make it essential that we have the ability to

18  participate in that trial.

19          THE COURT:  But why on PG&E's nickel?  In other words,

20  you essentially want me to say that the TCC and its lawyers and

21  its experts are on the payroll for everything else they are in

22  the state court litigation, where, had there been no

23  bankruptcy, the state court plaintiffs aren't quite capable of

24  proving their case.

25          MS. MORRIS:  Your Honor, the estimation proceeding is

PG&E Corp., Pacific Gas & Electric Co.

1   essentially now on three tribunals.  We're before Judge Donato

2   for the majority of the fires.  We're before Judge Jackson for

3   purposes of the legal liability, the actual causation issue

4   that will inform what Judge Donato does with those Tubbs

5   claims, and then before Your Honor for the inverse condemnation

6   issue.

7        THE COURT:  And no one on the debtors' side has

8   questioned the scope of your firm's engagement for two of those

9   three things.  No one has questioned that, and I don't.  The

10  only question -- the only question is, do you and your

11  colleagues go down the street to the Superior Court and file

12  briefs and take positions as -- almost as a co-plaintiff in a

13  manner that, again, that you can send the bill to PG&E, which

14  doesn't seem -- it's what they've complained about, and I think

15  I'm persuaded that that's a reasonable argument, unless you can

16  convince me otherwise.

17       MS. MORRIS:  Yeah, Your Honor, the buildup of the

18  legal issues in the estimation proceeding and the documents

19  that we're looking at and the witnesses that we're talking to

20  are the same exact witnesses that the Tubbs fire victims -- or

21  the Tubbs plaintiffs' lawyers are looking at in their

22  proceeding.  In fact, we've even talked to Mr. Orsini about

23  cross-designated -- cross-designating some of the 30(b)(6) and

24  PMK depositions in the state court proceedings.

25       So we believe that our employment application, our

PG&E Corp., Pacific Gas & Electric Co.

1    retention application allows us the ability to participate, not

2    as presenting facts and evidence in the court -- the

3    plaintiffs' lawyers will do that -- but in coordinating with

4    the plaintiffs' lawyers, who are looking at the same exact

5    issues that we are, who are examining the same exact issues as

6    we are --

7             THE COURT:  Ms. Morris, the point is, do you do that

8    with the plaintiffs, or do you do it with PG&E paying the

9    bills?  Isn't that what it comes down to?  I mean, I realize

10   that you believe and your clients believe that PG&E should be

11   paying all the bills, and that's for another day.  The question

12   is, for the work you're doing today and the work tomorrow and

13   next week and last week, you're getting paid -- no one's

14   questioning that -- and -- but if you take an active role in

15   the Superior Court, the debtors' position is that's not

16   appropriate.

17            Just tell me why that is appropriate.  But you're just

18   repeating stuff that I know.  So tell me why -- what I don't

19   know -- why --

20            MS. MORRIS:  Because it --

21            THE COURT:  -- I should overrule their objection.

22            MS. MORRIS:  If the ultimate verdict from the Tubbs

23   trial were only affecting the fourteen preference plaintiffs,

24   then I believe Your Honor would be absolutely correct.

25   However, that verdict the tens of thousands of Tubbs claimants.

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Well, of course it will.  Of course, it

2     will.

3          MS. MORRIS:  And if that is to be --

4          THE COURT:  It'll affect them, prospective -- I mean,

5     affirmatively, if it's a very good result, and very negatively

6     if it's an adverse result.

7          MS. MORRIS:  And we believe that we need to protect

8     the interests of those tens of thousands of claimants by

9     looking at evidence and making sure it's presented in a way

10    that present -- that protects the interests of those claimants.

11    And in fact, one of the cases cited by the debtors, that's

12    exactly what the committee had done.  In the Continental

13    Airlines case, they sought authority for two things.  One was

14    to participate in the estimation of a class claim for the

15    benefit of the committee, and the second was to represent those

16    individual class claimants.

17         The court rejected the ability of the committee

18    lawyers to represent the individual class claimants, and that's

19    not what we're trying to do here.  They have very fine lawyers.

20    What we are trying to do is what the judge allowed the lawyers

21    to do in the Continental Airlines case, which is file briefs

22    and participate in the trial to the extent it's necessary to

23    protect the claimants.

24         THE COURT:  But the debtors' position isn't that you

25    can't take a role that's -- that you can't, in effect, be

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   writing the brief for the plaintiffs' lawyers, and -- they

2   don't use the term -- but effectively acting as co-trial

3   counsel.  They don't question your right to be there.  I doubt

4   Mr. Orsini's going to ask the Superior Court judge to throw you

5   out of the courtroom.  They've said in papers here that they

6   don't object to your involvement; it's the more specific

7   thing -- well, anyway, I'll let them respond.

8           MS. MORRIS:  Your Honor, I'm happy to rest on our

9   papers --

10          THE COURT:  Okay.

11          MS. MORRIS:  -- and so I'll turn it over and just

12  reserve time, if you have any further questions for us.

13          THE COURT:  Okay.  Now, the OCC filed a -- kind of a

14  position that doesn't state a position, so I'm assuming that --

15  I mean, this is the most emphatic position I've seen from the

16  OCC.  We reserve all of our rights.  So are you here reserving

17  your rights?

18          MR. LEBLANC:  Your Honor, Andrew LeBlanc of Milbank,

19  on behalf of the official committee of unsecured creditors.

20          Your Honor, the reason we filed that is, while we're

21  sympathetic to the debtors' position, we understand their

22  position, we didn't take a position on this.  What we are

23  concerned with is that, to the extent that the TCC is permitted

24  to participate in some meaningful way at the -- in the state

25  court proceeding, we have asked to have rights of

PG&E Corp., Pacific Gas & Electric Co.

1    participation; meaning, we've asked to observe depositions that

2    are occurring there given the relevance of those depositions

3    to --

4              THE COURT:  Well, is there any opposition to that?

5              MR. LEBLANC:  The debtors have opposed that, so --

6              THE COURT:  But there's nothing before me to --

7              MR. LEBLANC:  No.  And I agree, Your Honor.  But what

8    I -- the point of our reservation of rights is that, if the

9    Court were to permit the TCC to go down to the state court,

10   participate in the way that they've asked, and that entitled

11   them to be present at depositions of witnesses that are going

12   on down there, we would ask for the same rights, to the extent

13   that they were granted those rights.

14             We're not asking anything else; there's nothing before

15   you.  We did make that request of Judge Donato; he denied it,

16   saying that that was a question for the state court tribunal,

17   whether or not we could be present for depositions.

18             THE COURT:  So what?  Why shouldn't I say the same

19   thing?

20             MR. LEBLANC:  Well -- and that's why, Your Honor, we

21   haven't asked for that, unless the TCC is granted it.

22             THE COURT:  Well -- but if I deny today's motion, the

23   TCC is free to ask the Superior Court judge if they can have

24   a -- participate.

25             MR. LEBLANC:  They could, Your Honor, and we could

PG&E Corp., Pacific Gas & Electric Co.

1    make the same request, although it's a little -- there's a

2    quirk of our existence as a federally, statutorily created

3    entity that creates a odd circumstance of asking for rights to

4    participate there.  We -- all we're asking for -- all we've

5    asked for from the debtors --

6            THE COURT:  Well -- but you know why?  You didn't -- I

7    mean, even though it was federal, federal, you certainly were

8    asked to participate in the FERC litigation, and you did.

9    And --

10            MR. LEBLANC:  We --

11            THE COURT:  I mean, the TCC hadn't taken a role or

12    wasn't even active then.  But that's the --

13            MR. LEBLANC:  Sure.

14            THE COURT:  -- kind of thing that would be normal.

15    The thing that makes this one a little different is why we're

16    talking -- but anyway --

17            MR. LEBLANC:  Understood.  And our --the only reason

18    for our filing, Your Honor, was to say that if they're able to

19    be present at depositions -- and we've asked for the same

20    rights.  Not to question witnesses, but just to be able to

21    observe these depositions so that we have that information for

22    the purposes of the estimation proceedings that will follow.

23    But it's not -- we haven't made the request of you, and we're

24    not making it now, unless it's -- unless a similar right is

25    granted to them.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Okay.

2          MR. LEBLANC:  Thank you, Your Honor.

3          THE COURT:  Got it.  Thank you.

4          Good morning.

5          MS. LIOU:  Good morning, Your Honor.  For the record,

6     Jessica Liou --

7          THE COURT:  Ms. Liou.

8          MS. LIOU:  -- from Weil, Gotshal & Manges, on behalf

9     of the debtors.

10         Your Honor, just to correct one of the statements that

11    Mr. LeBlanc made, the debtors have not opposed the unsecured

12    creditors' committee monitoring the state court proceedings and

13    dialing in on the phone for depositions.  Our position,

14    obviously, is that they should not participate in questioning

15    in those proceedings.

16         THE COURT:  In the depositions or in the trial?

17         MS. LIOU:  In the depositions, and monitoring the

18    trial is fine as well.

19         THE COURT:  But monitoring the trial means monitoring;

20    it doesn't mean --

21         MS. LIOU:  It doesn't mean active participation.

22         THE COURT:  I mean, it's up to the Superior Court

23    judge to decide whether --

24         MS. LIOU:  That's --

25         THE COURT:  -- to let anybody --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      MS. LIOU:  That's absolutely correct, and I presume

2   they will have to make a motion to intervene or appear as a

3   party.  And the judge will have to decide that issue in the

4   state court.

5      THE COURT:  But what about the TCC?

6      MS. LIOU:  Yes.

7      THE COURT:  Is the TC -- what's the role -- would you

8   believe that even without today's motion or even if I denied

9   this motion, can't the TCC monitor the depositions or

10  participate --

11     MS. LIOU:  Well --

12     THE COURT:  -- the same way?

13     MS. LIOU:  Yeah, we stated in our papers very clearly

14  that we are not opposed to them monitoring the --

15     THE COURT:  Right.

16     MS. LIOU:  -- state court proceeding.  That's not why

17  we're here today.  They are seeking to go above and beyond

18  that.  They are seeking to expand the scope of their

19  representation outside of what the Bankruptcy Code has.

20     THE COURT:  Well, what -- if I deny the motion, how

21  would you describe what they can't do?

22     MS. LIOU:  What they can't do is they can't ghost

23  write pleadings.  They can't pass through costs of expert

24  witnesses --

25     THE COURT:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MS. LIOU:  -- preparing expert witnesses, creating

2     lines of questioning for those expert witnesses on to the

3     estate.  They can't participate in the litigation discovery.

4     They can go ahead --

5          THE COURT:  Well --

6          MS. LIOU:  -- monitor what is happening.

7          THE COURT:  -- another subject.  Participate but --

8     participate in the discovery but sit in and observe the

9     discovery?

10          MS. LIOU:  I believe that that is fine.  That is

11     absolutely fine.

12          THE COURT:  Okay.  Okay.  Well, go ahead.

13          MS. LIOU:  Yes.

14          THE COURT:  So am I right that this is all about how

15     much it costs, or am I -- or is it more than that?  In other

16     words, this isn't just a question of the debtor having to pay

17     for additional work by TCC.  It's -- you want me to prohibit

18     them from doing things like ghost write.  I don't know how I

19     enforce that, but --

20          MS. LIOU:  Absolutely.  No, you're absolutely correct,

21     Your Honor.  This is not just about the cost.  I mean, I think

22     we feel very strongly that the Code and precedent does not

23     provide for this expansion of a committee's duties.  I mean,

24     this is completely novel and unprecedented relief, and the

25     committee -- the TCC itself has not been able to point to any

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   situation where this has been allowed.  In addition to that, we

2   do think that there are potential serious conflicts that are

3   posed, and I know the TCC has indicated in its papers that they

4   don't believe a conflict exists.  But there are two reasons why

5   I believe there is not just a potential for conflict, but an

6   actual conflict that could exist.

7           In their plan, they've got a 14.5-billion-dollar cap

8   on the recovery that goes to all these plaintiffs.  Depending

9   on the outcome of the Tubbs trial, more or less may be

10  available for other members of its constituent.  I think it

11  goes outside the role of a committee properly to go ahead and

12  aid individual claimants in the maximization of their claims

13  against the estate, which may then prejudice other members of

14  their constituency.

15          THE COURT:  Okay.  Well -- but that's not quite the

16  same as representing an individual member or an -- excuse me,

17  an individual plaintiff.  They're not asking to do that.

18          MS. LIOU:  Well, I think you hit the nail on the head

19  when you said they're essentially acting as co-counsel to the

20  existing qualified, very able counsel for the plaintiffs in the

21  state court litigation.

22          THE COURT:  All right.  Okay.  Anything further?

23          MS. LIOU:  No, Your Honor.  That's it from us.  We

24  rest on our -- the rest of the arguments in our papers.

25          THE COURT:  Ms. Morris, you asked for -- to reserve

PG&E Corp., Pacific Gas & Electric Co.

1    some time.  You want -- you said -- are you going to submit, or

2    do you want to --

3              MS. MORRIS:  We're happy to submit it with the

4    arguments so far.

5              THE COURT:  Okay.  I'm going to just give it a little

6    bit of thought.  I don't intend to do anything other than issue

7    the briefest of orders that won't be expansive in terms of what

8    I do.  But I just want to reflect on what I heard both counsel

9    said today -- or all three counsel, rather.  And so I'll have a

10   ruling on it very promptly.  So I'll treat that as submitted.

11   Thank you for your time.

12             Okay.  Mr. Karotkin.

13             MR. KAROTKIN:  Thank you, sir.  Again, Steven

14   Karotkin, Weil Gotshal & Manges, for the debtors.

15             I believe, Your Honor, pursuant to your order, you

16   wanted to consider the briefing schedule next with respect

17   to --

18             THE COURT:  Yeah.

19             MR. KAROTKIN:  -- the make-whole.

20             THE COURT:  I mean, when I -- I did that, and I sent

21   that out before I was able to read all the stuff that came in

22   in the last thirty-six hours.  I wasn't even here for most of

23   Monday, so when I had the late filing from you and from the

24   subrogation committee, there was a lot of stuff in there,

25   including the correspondence:  one from you and one from Baker

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Hostetler on the subject of briefing.

2        Your letter was the earlier letter of October 16th,

3    but I don't believe -- or maybe that was one that I got earlier

4    when I was traveling.  Anyway, my point is that, maybe, to some

5    extent, talking about plan scheduling and briefing schedule

6    overlaps.  So for lack of any way to do it, why don't we just

7    take it in parts?

8        So let's start again with inverse condemnation, which

9    isn't in your letter of October 16th.  We had previously talked

10   about that, but now Mr. Julian's letter of yesterday raises the

11   issue of something that's been discussed with Judge Donato.

12   And I did look at the transcript of Judge Donato's ruling -- or

13   his hearing yesterday.

14       So what is it that you propose, Mr. Karotkin?  You --

15       MR. KAROTKIN:  I propose that Mr. Orsini address that

16   issue.

17       THE COURT:  Oh, okay.

18       MR. ORSINI:  Good morning, Your Honor.  Kevin Orsini,

19   Cravath, Swaine & Moore, for the debtors.

20       THE COURT:  So I -- just to review, the original date

21   from prior hearings was opening brief, October 25th, then on

22   November 15th, November 22nd, and December 11th.  But Mr.

23   Julian wants to go earlier.  What do you want to do?

24       MR. ORSINI:  And so Your Honor, as you'll recall, we

25   had tried to tee up the inverse issue a lot earlier in the

PG&E Corp., Pacific Gas & Electric Co.

1  whole process.

2       THE COURT:  Right.

3       MR. ORSINI:  We are where we are now.  We're certainly

4  amenable, subject to Your Honor's preferences, to moving up the

5  hearing date.  We'd also be amenable -- again, you're the judge

6  who's going to make the decision, so if you think replies are

7  unnecessary, we're not going to stand up here and insist on a

8  reply.  The one thing I do think is important, Your Honor, and

9  the one area where I think we disagree with Mr. Julian is, we

10 would like a hearing.  We would like an opportunity to discuss

11 the issues with the Court.

12      THE COURT:  Well, at the -- my prior hearing was

13 before all of you were headed up to see Judge Donato, and now

14 you've seen him twice since you were last here.  And I have

15 twice read the transcripts that -- the presentations before

16 him.  And I still don't know what the answer to the Cantu

17 question is.

18      So is Cantu off the table for me, for sure, or not for

19 sure?

20      MR. ORSINI:  Well, Your Honor, I'm not sure I know the

21 answer to that question, either.  I --

22      THE COURT:  Well, I remember asking someone, please

23 find out from Judge Donato.

24      MR. ORSINI:  Right.  And what I do know is Judge

25 Donato has made clear is that he will not consider summary

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    judgment motions from us on the Cantu issue.  That much has

2    been very clear on the transcript.  We think it's a very

3    important material issue to some of these fires, and so we will

4    either address it in the context of the final estimation

5    hearing, or we're happy to address that with Your Honor

6    separately.

7            I think Judge Donato's view is that is likely an issue

8    that if it's existing and if it's being decided as before him,

9    but I don't know what else to add --

10           THE COURT:  Well, help me --

11           MR. ORSINI:  -- on that point, Your Honor.

12           THE COURT:  -- help me understand better, where does

13   Cantu fit in the hierarchy of the inverse condemnation thing?

14           MR. ORSINI:  Sure.

15           THE COURT:  I mean, I've heard it several times, and

16   I'm thinking in terms of, is this efficient to break this into

17   parts?

18           MR. ORSINI:  So the way I look at is, there's -- what

19   we had previously discussed with Your Honor and what we're

20   prepared to file on Friday, is what I call our threshold

21   inverse challenge, which is the question of, does inverse

22   condemnation apply to an investor and utility like PG&E?

23           THE COURT:  And the Butte trial court said, no,

24   right -- I mean, says it does apply?

25           MR. ORSINI:  The Butte trial court said it does

PG&E Corp., Pacific Gas & Electric Co.

1    apply --

2              THE COURT:  Right.

3              MR. ORSINI:  -- as did the North Bay trial court on a

4    demur.

5              THE COURT:  Right.

6              MR. ORSINI:  But we believe those were both

7    incorrectly decided and don't reflect the California Supreme

8    Court precedent.

9              THE COURT:  No, I understand --

10             MR. ORSINI:  As to the merits.

11             THE COURT:  -- it might on the merits.

12             MR. ORSINI:  But -- so if we win on that, if we were

13   to convince Your Honor that that is true, that inverse just

14   doesn't apply to PG&E, we never get to Cantu.

15             THE COURT:  And Cantu's dead now, right?

16             MR. ORSINI:  Cantu's dead.

17             THE COURT:  Cantu's off the table?

18             MR. ORSINI:  Correct.  If we don't prevail and Your

19   Honor concludes that inverse does apply as a constitutional

20   doctrinal matter to PG&E, then the Cantu issue becomes ripe

21   with respect to a subset of the fires, because the argument

22   under Cantu doctrine is --

23             THE COURT:  Yeah.

24             MR. ORSINI:  -- that, based on the facts of how a

25   particular line was constructed --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1        THE COURT:  Yeah, I --

2        MR. ORSINI:  -- to serve --

3        THE COURT:  -- do understand that that's a fact, and I

4   think you were somewhat bullish about thinking it's still not

5   materially facts in dispute.  But I think your opponents don't

6   agree with you.

7        MR. ORSINI:  I think that's right.

8        THE COURT:  So --

9        MR. ORSINI:  I'm still bullish that there are not

10  facts in dispute, and I'm sure they're equally bullish that

11  there are.

12       THE COURT:  Well, it seems to me that it makes no

13  sense for me even to go near the Cantu case unless it goes out

14  with the -- I toss it with the bath and the baby by buying your

15  argument on the basic principle, which I have to keep an open

16  mind and read the briefs.

17       MR. ORSINI:  I think where we are right now, Your

18  Honor, that probably makes the most sense.

19       THE COURT:  Okay.

20       MR. ORSINI:  We focused our briefing that we're

21  starting on Friday on the threshold issue.  And in terms of the

22  schedules, as I said, happy to forgo reply.  It's up to Your

23  Honor whether you think a reply will be useful.  I won't take

24  it personal if you say it won't be, but we would like an

25  opportunity to come and have a hearing to discuss the issue

PG&E Corp., Pacific Gas & Electric Co.

1  with Your Honor.

2  THE COURT:  Well -- okay.  So I was looking at my own

3  schedule.  We've got a lot of stuff coming up, and we're going

4  to talk more about some other schedules in a minute.  Mr.

5  Julian, who's here, and we can speak for himself, but I mean,

6  he's suggesting submitting the matter after November 15th.  I

7  mean, I guess, basically, if we go back -- if I take Mr.

8  Julian's letter and take your comments, Mr. Orsini, I can stick

9  with what we have and say, opening brief, but it's opening

10  brief from you, from the debtors, or anybody that aligns with

11  you.  Right?

12  MR. ORSINI:  Correct, Your Honor.

13  THE COURT:  And then reply -- or opposition -- Mr.

14  Julian's letter says the 15th -- and he would have it submitted

15  then.  And you would have it argued.  And yeah, I mean, I'll

16  pass up the invitation to skip the reply briefs.  And so I

17  think what I would do is -- I believe we have -- one second.

18  Well, it's a tight schedule, but we are -- we still

19  have blocked out a PG&E day on November 19th.  So what if we

20  sit with 10/25, 11/15, and argument on 11/19?

21  MR. ORSINI:  That would be great from our perspective,

22  Your Honor.

23  THE COURT:  Mr. Julian, is that acceptable?

24  MR. JULIAN:  That's fine, Your Honor.

25  THE COURT:  So is there anyone in the court that's

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   going to be filing briefs with the TCC, or, Mr. Julian, you

2   must be getting -- whether I grant or deny their earlier

3   motion, I presume you're going to hear from some of your state

4   court colleagues on the arguments.  But whether one of you or

5   more than one of you sign the brief is not important to me.  Is

6   there any reason why there'd be any problem with just a page

7   brief and limit on one brief from both sides, and we're done?

8          MR. JULIAN:  You've asked us to coordinate; we are

9   coordinating.

10          THE COURT:  Well -- okay.  So --

11          MR. JULIAN:  We hope the subro claimants are a part of

12   this.

13          THE COURT:  Okay.  Let's do this.  Mr. Orsini, at the

14   risk of asking the question I don't want to ask you to answer,

15   how much -- are you going to stick with the twenty-five pages,

16   or are you going to ask for an oversized brief?

17          MR. ORSINI:  So Your Honor, our brief is currently

18   under twenty-five pages.  I would expect to land there.  I do

19   believe that the equity group represented by Mr. Bennett, as

20   well as potentially the unsecured creditors' committee, had

21   views that they would submit short joinders.  We can -- I don't

22   know the length of the briefs they are --

23          THE COURT:  Okay.

24          MR. ORSINI:  -- proposing.

25          THE COURT:  I'll simplify it.  Here's what I'll do.  I

PG&E Corp., Pacific Gas & Electric Co.

1    will take from the debtor and anybody that aligns with the

2    debtor -- whether that's OCC, shareholders, or otherwise -- to

3    have one brief, jointly argued and -- I see that many of you,

4    in the prior submission to Judge Donato, did quite ably of

5    joining -- filing a statement that nobody was aggrieving with,

6    but everybody had his own segment.

7        MR. ORSINI:  We hope -- we got it in one document,

8    Your Honor.  That was the accomplishment.

9        THE COURT:  I guess if I get everybody in one brief on

10   one side of inverse condemnation, they better take the same

11   view.  But I'll tell you what.  I'll go with 10/25, thirty-

12   five-page max joinders and within the thirty-five.  Same for

13   Mr. Julian and the TCC on the other side.  November 15th,

14   thirty-five pages.

15       Mr. Julian, you can line up all your colleagues that

16   want to join you on the argument.  And so I will get up to

17   seventy pages, and I will say no reply brief.  And we will have

18   an argument at 10 o'clock on -- what did I say -- December --

19       MR. ORSINI:  No, it was November 19th.

20       THE COURT:  -- I mean November 19th.

21       MR. ORSINI:  I believe so.

22       THE COURT:  Okay.  Does that work for everybody?

23       Anyone want to speak against that bef -- because it's

24   a done deal as far as I'm concerned.  And Cantu is not going to

25   be discussed.

PG&E Corp., Pacific Gas & Electric Co.

1          Okay.

2          MR. ORSINI:  Thank you, Your Honor.

3          THE COURT:  Now, you're going to go back to your

4   colleague there for the other schedules?

5          MR. ORSINI:  I am absolutely going to now propose that

6   Mr. Karotkin come back up.

7          THE COURT:  So Mr. Karotkin, your letter -- or

8   rather -- I'm sorry, the filing that you made yesterday

9   afternoon includes post-petition interest.  So the first

10  question I have on that is, is this a -- your letter divides

11  sort of the briefing into two categories:  post-petition

12  interest and make-whole premium.

13         MR. KAROTKIN:  That was done, Your Honor, at the

14  request of counsel for the other side.

15         THE COURT:  No, and that's fine with me.  I think I

16  had even -- my question to you is, is there something else?  Is

17  there another brief or brief of topic that is the question if

18  impaired or not impaired?  In other words, I'm --

19         MR. KAROTKIN:  I think those are the two issues that

20  go -- the post-petition interest and the make-whole premium go

21  to the issue of impairment.

22         THE COURT:  Well -- but for example, in the briefing

23  for the motion that's on today, the -- what we'll call the 9019

24  motion or the RSA motion -- there is an argument that I think

25  you've argue -- you're arguing that, of course, the subrogation

PG&E Corp., Pacific Gas & Electric Co.

1    group is impaired.  And I believe some of the opposition may be

2    getting my -- the opposition's blended in my head.  But they're

3    saying, no, it's unimpaired.  So that's maybe an easy question

4    to answer.  But the question is, isn't that something that

5    should be addressed as a gating issue?

6            MR. KAROTKIN:  We're happy to do that as well.  What

7    we were trying to address, Your Honor, was what had come up

8    earlier --

9            THE COURT:  Yeah.

10           MR. KAROTKIN:  -- in September, when you -- you had

11   raised the issues of the post-petition interest and the make-

12   whole and requested -- it was your view, and we agreed, that

13   those were gating issues that should be addressed early in the

14   process.  We're happy to address --

15           THE COURT:  No, we're on the same page here.

16           MR. KAROTKIN:  Yeah, and we're happy to have another

17   brief, if necessary, to address --

18           THE COURT:  Well --

19           MR. KAROTKIN:  -- the issue with respect to the

20   subrogation claimants.

21           THE COURT:  Let me say this:  that later -- and

22   perhaps the next item on the agenda is to discuss different

23   views about a timeline for confirmation and consideration of

24   plans.  It strikes me -- and this goes back to one of the very

25   early hearings that I had when I said let's be creative and

PG&E Corp., Pacific Gas & Electric Co.

1  figure out a way to be more efficient.  I would like to break

2  the confirmation issues into discrete things, like these, that

3  they are confirmation issues.  And I can sure understand --

4  everybody's going to tell me the obvious.  We can't get to an

5  estimation number until Tubbs and Donato are done.  Of course,

6  that's true.

7          But -- and of course, we can't know some of the

8  ultimate confirmation issues until we know feasibility and

9  financing, et cetera.  But there are some other issues that are

10 discrete.  And it would seem to me that we don't have to get to

11 disclosure discussions if we can isolate and pin down with the

12 competing parties' confirmation issues.  And --

13         MR. KAROTKIN:  And the --

14         THE COURT:  -- there's no rule that says you can't

15 start the confirmation process before you get to the

16 estimation.

17         MR. KAROTKIN:  Well -- exactly.  And that was your

18 idea, Your Honor, and we agreed.  And --

19         THE COURT:  Right.

20         MR. KAROTKIN:  -- what we did --

21         THE COURT:  So why don't we --

22         MR. KAROTKIN:  -- is we engaged with the other parties

23 at your direction to agree on a briefing schedule for these

24 issues.  In -- as I indicated in my letter of, I believe,

25 October 16th, we had largely agreed on the schedule.

PG&E Corp., Pacific Gas & Electric Co.

1        THE COURT:  Yeah.

2        MR. KAROTKIN:  You then terminated exclusivity, and

3   all of a sudden, things changed.

4        THE COURT:  No, I understand that things changed.

5        MR. KAROTKIN:  I don't think there's any reason to

6   change the fact that these issues should be addressed now.  We

7   proposed a schedule, at least for these two items, pretty much,

8   Your Honor, consistent with what had been largely agreed upon

9   earlier.

10        THE COURT:  No, I know.  I understand this is --

11        MR. KAROTKIN:  The only change --

12        THE COURT:  -- the (indiscernible) are in.

13        MR. KAROTKIN:  -- being, of course --

14        THE COURT:  Yeah.

15        MR. KAROTKIN:  -- like, we've now wasted two more

16   weeks --

17        THE COURT:  Well --

18        MR. KAROTKIN:  -- and we pushed it out.  So what we

19   have proposed is a briefing schedule that, frankly, is, as I

20   said, largely consistent with what had been agreed to before

21   they changed their minds and viewed the process to proceed

22   differently.

23        THE COURT:  Well, they're allowed to change their

24   mind.  It's a --

25        MR. KAROTKIN:  Your Honor, we've become very

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    accustomed to that.

2         THE COURT:  So --

3         MR. KAROTKIN:  But --

4         THE COURT:  But here -- But Mr. --

5         MR. KAROTKIN:  -- what I'm saying is --

6         THE COURT:  But Mr. Karotkin, I want to pin you down.

7    I hear -- you keep telling me how brilliant I was by thinking

8    of these specific issues.

9         MR. KAROTKIN:  Yes, absolutely, Your Honor.

10        THE COURT:  But I want to show -- I want you to help

11   me -- you be equally brilliant.  Are there some other issues?

12   Now, for example, I still don't know where we are on the

13   question of whether I -- there can be an estimation of the

14   government claims that are filed as claims.

15        MR. KAROTKIN:  And Mr. Zumbro has agreed on a schedule

16   for that with the other parties.

17        THE COURT:  A briefing schedule?

18        MR. KAROTKIN:  Yes, sir.

19        THE COURT:  Okay.  Fine.  That's great.  So -- and I'm

20   glad to hear that.  But that was my point.  When I'm looking at

21   your filing of yesterday, I'm going, well, wait a minute, we're

22   missing something.  Where is --

23        MR. KAROTKIN:  Yes.

24        THE COURT:  -- impaired --

25        MR. KAROTKIN:  No.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  -- and unimpaired?  And then --

2          MR. KAROTKIN:  Mr. Zumbro will tell the Court shortly

3   exactly what --

4          THE COURT:  Okay.

5          MR. KAROTKIN:  -- what has been agreed upon.  And what

6   we're suggesting, Your Honor -- again, consistent with what

7   you've -- your views --

8          THE COURT:  My brilliance.

9          MR. KAROTKIN:  -- this -- your brilliance.

10         THE COURT:  Not your brilliance.  All right.

11         MR. KAROTKIN:  Yes.  I'll use your words.  Your

12  brilliance.  I certainly agree with that.

13         THE COURT:  Right.  That's right.

14         MR. KAROTKIN:  Is that this is a reasonable briefing

15  schedule for these issues, plenty of time.  We agreed to split

16  it up into two distinct briefs, at their request, to give more

17  time on the make-whole premium, which they think is more

18  complicated.  We were prepared to move more quickly on that;

19  they didn't want to.  And if Your Honor wishes, we can agree on

20  a different briefing schedule with respect to whether or not

21  the subrogation claimants are impaired under our plan.

22         THE COURT:  I prefer letting you and the principal

23  lawyers agree, and you've made progress.  I'm --

24         MR. KAROTKIN:  Well, no --

25         THE COURT:  I'm on board.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. KAROTKIN:  -- the problem is, Your Honor, we

2  didn't make progress.

3    THE COURT:  Well --

4    MR. KAROTKIN:  The problem is, Your Honor, is we

5  thought we had made progress.  And then -- again, as we

6  predicted, when you terminated exclusivity, people backed off.

7  People polarized, and they backed off from where they were.

8    THE COURT:  Well --

9    MR. KAROTKIN:  We think this is a reasonable schedule,

10  and we would ask you to approve it so we can move this forward.

11  These are discrete issues.  There is no reason -- nothing has

12  changed by reason of your decision to terminate exclusivity to

13  say these issues should not be addressed now.

14    THE COURT:  Okay.

15    MR. KAROTKIN:  Nothing has changed.

16    THE COURT:  So -- but if we were trying to do a

17  checklist of what hoops does anybody have to jump through to

18  get a plan confirmed, well, first of all, you got to get the

19  votes, and you got to decide whether there's impaired classes

20  and how they vote.  And then you got to decide whether your

21  plan is feasible.  So those are all things that are down the

22  road a bit.  But I'm just trying to make sure we put all of our

23  collective heads together to try to identify any other critical

24  issues that can be dealt with earlier.

25    So whether we call it two briefs or three briefs or

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  four briefs isn't the point.  It's post-petition interest,

2  make-whole, impair or not impair, 502(c), maybe a cram-down if

3  there's another variation on some absolute priority issues.  I

4  just want the best brains together -- put together to figure

5  out how to tee it up so I can do my job.

6          MR. KAROTKIN:  Okay.

7          THE COURT:  That's all.

8          MR. KAROTKIN:  May I --

9          THE COURT:  And --

10         MR. KAROTKIN:  -- make a suggestion --

11         THE COURT:  Yes.

12         MR. KAROTKIN:  -- on that?  Okay.

13         THE COURT:  By all means.

14         MR. KAROTKIN:  I think, for purposes of today, the

15  only issues I'm aware of are the three you mentioned, which are

16  the two -- post-petition interest, make-whole premium, and

17  whether or not, under our plan -- excuse me -- the subrogation

18  claimants are impaired or not impaired.

19         THE COURT:  Okay.

20         MR. KAROTKIN:  Okay?

21         THE COURT:  Um-hum.

22         MR. KAROTKIN:  I'm reluctant, Your Honor, to leave the

23  courtroom today without having a schedule in the post-petition

24  interest issue and the make-whole premium set.

25         THE COURT:  You will.  We will have -- we will have

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  the schedule this moment.

2  MR. KAROTKIN:  Okay.  And I'm more than happy to try,

3  as we tried before, to work with the TCC and the ad hoc

4  bondholders to agree on the schedule for the issue of

5  impairment.  And we can do that during a break today and

6  perhaps agree on that, or we can report to you in the next

7  couple of days.

8  But Your Honor, after what we've been through for the

9  last two weeks or three weeks to try to agree on a schedule, I

10  am absolutely reluctant to leave the courtroom today without a

11  schedule on those two issues.

12  THE COURT:  I'm -- you're going to have a schedule as

13  soon as I hear from the other side.

14  MR. KAROTKIN:  Okay.

15  THE COURT:  So let's stick -- oh, well, help me -- one

16  more thing, because I'm not -- there are a lot of people

17  following this case, and I want to make sure we're not missing

18  something.  The phrase "make-whole premium" is a -- "make-

19  whole" is a term that shows up in a couple of different places.

20  So what we're talking about here is the issue of -- part of the

21  impairment/not impairment, right?

22  MR. KAROTKIN:  Correct.

23  THE COURT:  For the bond.  It's not --

24  MR. KAROTKIN:  This has nothing to do --

25  THE COURT:  It's not -- nothing to do with the

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  subrogation claim --

2          MR. KAROTKIN:  It has nothing to do --

3          THE COURT:  -- and the insurance issue.

4          MR. KAROTKIN:  -- with the insured -- the insured

5  issue, insured versus not --

6          THE COURT:  Right.

7          MR. KAROTKIN:  -- insured issue.  Insured versus --

8          THE COURT:  Right.  I know, but it's just --

9          MR. KAROTKIN:  Correct.

10         THE COURT:  -- the phrase.

11         MR. KAROTKIN:  That's "made-whole".

12         THE COURT:  Made-whole, make-whole.  Okay.

13         MR. KAROTKIN:  That's how we can distinguish those.

14  This is the --

15         THE COURT:  Okay.

16         MR. KAROTKIN:  -- make-whole premium in connection

17  with the refinancing of the bonds.

18         THE COURT:  So what I think I would do, Mr. Karotkin,

19  so as -- and to the extent that you complain about what you've

20  been through, I'm sure the other side will complain, and I

21  don't want to get there.  I want to have a schedule, too.  So

22  I'm willing, for these purposes, to just use the topics that

23  you and I have been talking about, and then every other counsel

24  that wants to be heard and say that we're crazy and there's a

25  different way to do it, I'll listen to them.

PG&E Corp., Pacific Gas & Electric Co.

1          But for post-petition interest, the opening brief

2     then -- it's your side.  It's debtors' opening brief, because

3     your plan argues that you can -- you don't have to pay

4     contract.  You can pay judgment rate -- federal judgment

5     rate --

6          MR. KAROTKIN:  Correct.

7          THE COURT:  -- right?  So the question is then, then

8     who is going to be on your side?  Is it going to be the same

9     alignment:  the shareholder group, the OCC -- or maybe not the

10    OCC --

11         MR. KAROTKIN:  Not the OCC.

12         THE COURT:  -- I don't know.  But I -- and I don't

13    care the answer.  I'm -- I think what I would like to do today

14    is -- well, excuse me.  We talked about simultaneous based on

15    this issue, right?  So --

16         MR. KAROTKIN:  Well, we -- there's a proposed

17    schedule.  I don't know if you're looking there, but --

18         THE COURT:  Yeah, I'm looking at it.  This --

19         MR. KAROTKIN:  Yeah.

20         THE COURT:  -- is the one that was on your --

21         MR. KAROTKIN:  We're talking about --

22         THE COURT:  -- filing yesterday.

23         MR. KAROTKIN:  -- simultaneous briefs.

24         THE COURT:  Yeah.

25         MR. KAROTKIN:  That's what -- actually, that's what

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    they requested, again.

2              THE COURT:  Well -- okay,

3              MR. KAROTKIN:  Which is fine with us.  We agree to

4    that.  That's fine.

5              THE COURT:  So let's try it this way then.  On

6    November 8th, the debtor, on the one side, and TCC, presumably,

7    on the senior bondholders, primarily, and anybody lining up

8    with either of those two -- so I don't -- we don't have to have

9    a show of hands -- would file simultaneous briefs on November

10   8th and simultaneous reply briefs on November 22nd.  And I

11   would have oral argument.

12             Now, your proposal says the 16th.  I don't --

13             MR. KAROTKIN:  And the reason being, Your Honor -- I

14   can explain that --

15             THE COURT:  Okay.

16             MR. KAROTKIN:  -- is -- I think, originally, the

17   parties had discussed December 11th, and then I think the --

18   you had originally, or people were originally thinking about

19   having the inverse condemnation argument on December 11th.  So

20   before that had been changed today, just a few minutes ago, we

21   had suggested December 16th.  December 11th is fine with us.

22             THE COURT:  Yeah, I think the 16th is just one of

23   those days that doesn't work.

24             Isn't that right, Mr. Caplus (phonetic)?  That's not a

25   day we've got reserved for PG&E?  We've got the -- we have the

PG&E Corp., Pacific Gas & Electric Co.

1   11th, but we don't have another -- right?

2           THE BAILIFF:  Correct.  It's not a reserved date.

3           THE COURT:  Yeah.  I mean, I can do it if we need to.

4   I don't --

5           MR. KAROTKIN:  The 11th is fine.  And originally,

6   that's what we talked about.

7           THE COURT:  Okay.  Let -- I will hear from everybody

8   else.  But for now, I want to stick with you, Mr. Karotkin.

9   And so the proposal would be simultaneous briefs on the 8th;

10  simultaneous replies on the 22nd; oral argument on December

11  11th.

12          MR. KAROTKIN:  And again, Your Honor, it's my

13  understanding what you mean is, as you stated, with inverse,

14  there would be brief together on one side and one brief --

15          THE COURT:  Thirty-five pages.

16          MR. KAROTKIN:  -- together on the other side.

17          THE COURT:  Thirty-five.

18          MR. KAROTKIN:  Yeah.

19          THE COURT:  That would be the proposal.  Okay.

20          Then for make-whole premium, your proposal is November

21  21, December 13th, and January 6th.  I didn't clear that date.

22          Is that a PG&E date?

23          THE BAILIFF:  I'm sorry, which date?

24          THE COURT:  I mean, we can make it a date, but we have

25  a number of dates set aside.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE BAILIFF:  What date?

2      MR. KAROTKIN:  January 6th.

3      THE COURT:  January 6th?

4      THE BAILIFF:  It is not right now.

5      THE COURT:  But what's our first January date for

6  PG&E?

7      THE BAILIFF:  14.

8      THE COURT:  Well, is the 6th available?

9      THE BAILIFF:  Yes.

10      THE COURT:  Okay.  Well, let's tentatively say that.

11      And so Mr. Karotkin, I don't -- I'm not afraid of

12  having two issues briefed and argued if you want to move the --

13  well, you said Mr. Zumbro's got some dates for the 502(c)

14  issue.  So you want to match up the same schedule on the

15  impair/not impair as with the make-whole schedule?

16      MR. KAROTKIN:  That's fine with us.  Okay.

17      THE COURT:  Okay.  Again, so I'm going to hear from

18  others.  But you want to talk to him?

19      (Counsel confer.)

20      MR. KAROTKIN:  Okay.  We're fine with doing the

21  impairment with respect to the subrogation claimants on the

22  same schedule -- I believe you said it's the make-whole?

23      THE COURT:  Yeah.  I mean, there -- I mean, I would do

24  it even on the earlier one, but I think I have enough going on

25  with the -- a lot of -- you guys have a lot of brief writers.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   We only have one brief reader.

2          MR. KAROTKIN:  Right.  We're happy to do it on the

3   make-whole schedule.

4          THE COURT:  Okay.

5          MR. KAROTKIN:  I believe that makes sense.

6          THE COURT:  All right.  So again, I'll let Ms. Diemer

7   or anyone else that wants to be heard -- I'm not trying to cut

8   anybody off.  I'm tentatively sticking with that schedule, and

9   we'll ask Mr. Zumbro to confirm his schedule.  And so that'll

10  be four briefing schedules -- let me finish.  Let me get from

11  Mr. Zumbro to get the last one --

12         MR. STAMER:  Yeah, sure, sure, sure.

13         THE COURT:  -- from the debtors' proposal, and then

14  I'll hear from you, Mr. Stamer.

15         Okay.  Mr. Zumbro.

16         MR. ZUMBRO:  Thank you.  Good morning, Your Honor.

17         THE COURT:  Thank you.

18         MR. ZUMBRO:  Paul Zumbro, from Cravath, Swaine &

19  Moore, on behalf of the debtors.

20         I'll start by saying I don't want thirty-five pages,

21  so if you could stick me to twenty-five pages, that would be

22  fine on ours.  We didn't specifically discuss --

23         THE COURT:  In that case, fifteen.

24         MR. ZUMBRO:  Yeah.  Okay.  That's fine, too.

25         But we've agreed with this -- the cutoff that we've

PG&E Corp., Pacific Gas & Electric Co.

1    agreed with the U.S. government and the California state

2    agencies and the TCC for the briefing schedule on the 502(c)

3    estimation issue is, that -- now that we've got -- the bar date

4    has passed, and we've got the relevant claims --

5          THE COURT:  Well, the bar date is -- we don't know

6    what --

7          MR. ZUMBRO:  Well, the bar date --

8          THE COURT:  -- the bar date's going to be.

9          MR. ZUMBRO:  Let's just say, October 21st has

10   passed --

11         THE COURT:  Right.

12         MR. ZUMBRO:  -- and we've got the federal and state

13   agencies claims filed.  We're going to identify the claims that

14   we believe are subject to estimation and that the creditors are

15   commence the briefing.  So the schedule's, subject to the

16   Court's calendar, that we've agreed would be -- that we would

17   designate which were the creditors' claims we contend are

18   unliquidated and subject to estimation are November 1st.  The

19   creditors would file their brief on November 15th.  The

20   debtors' objection would be December 5th.  The creditors' reply

21   would be December 12th, and then the hearing would be at the

22   December 17th omnibus hearing, which I think fits with the

23   other dates we discussed this morning.

24         THE COURT:  Are we still showing the 17th, Mr. --

25         MR. ZUMBRO:  Yes.

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  And that's still -- oh, it is?  Okay.

2      Let me pause for a minute.

3      Mr. Julian, I'm going to ask you a question out of

4  order here.  Your motion to extend the bar date, that, I

5  presume, is for fire claims only?  It's not all claims, right?

6  I haven't studied your papers.

7      MR. JULIAN:  Correct, Your Honor.

8      THE COURT:  So -- well, I guess I need -- okay.  Thank

9  you.

10      I mean, I realize -- I haven't even read the briefs,

11  so I know how important that is.  But I -- what I don't know is

12  whether that impacts the government claims and whether they

13  would take the position that there's an extension there.  I --

14  I'm trying to juggle these issues, so --

15      MR. ZUMBRO:  Mr. Troy's, I believe, in the courtroom

16  here, I don't know whether you have a view on that.  Our view

17  is that it shouldn't affect the government plans, but --

18      THE COURT:  Well, I assumed, too, reading what was

19  said to Judge Donato yesterday and reading enough -- a little

20  bit about what the TCC filed, that we know who the

21  beneficiaries are of the efforts to try to change the results.

22  And it doesn't seem that governmental agencies or insurance

23  companies or banks need to be helped on how to file claims.

24      MR. ZUMBRO:  Correct.  And we believe, Your Honor --

25      THE COURT:  So I would not be inclined to have a new

PG&E Corp., Pacific Gas & Electric Co.

1   bar date for any of those people, no matter, but I just wanted

2   to make sure.  I don't want to set a briefing schedule only to

3   be backed into, well, there's more time to file the claim.

4           MR. ZUMBRO:  No.  We understand.  We think that the

5   noticing program has been robust for all claimants, including

6   the individual claimants, but we particularly don't think that

7   there's any doubt that the governmental agencies have had

8   proper notice and have in fact participated in the process

9   throughout this proceeding.  So I don't think there's any

10  issue, but Mr. Troy can correct me if I'm wrong.

11          THE COURT:  Okay.

12          MS. WINTHROP:  Good morning, Your Honor.  Rebecca

13  Winthrop of Norton Rose Fulbright, on behalf of the Adventist

14  claimants.  The briefing schedule Mr. Zumbro just laid out for

15  the Court is also to apply to Adventist Health claims.

16          THE COURT:  Not as a government agency but as a person

17  who's got a claim --

18          MS. WINTHROP:  As a property-damage claim, if you

19  want --

20          THE COURT:  And that's acceptable to you too?

21          MR. ZUMBRO:  Correct, on the same framework.  One

22  brief on the one side of the issue, and one brief on the other

23  side of the issue, is what our understanding was.  But --

24          THE COURT:  So --

25          MR. ZUMBRO:  -- did you say you want to put in an

PG&E Corp., Pacific Gas & Electric Co.

1  extra --

2          THE COURT:  -- Mr. Zumbro --

3          MR. ZUMBRO:  If you want to put in another brief,

4  that's fine.

5          THE COURT:  Mr. Zumbro, back up, though.  What do you

6  file on November 1st?  If they just file a list -- right?  You

7  say the following people we think should be estimated?

8          MR. ZUMBRO:  Correct.  Well, we were focused primarily

9  on the governmental claims but, yes, we were going to look at

10 the governmental claims, both the U.S. government and the

11 California state-agency claims.  And once we've had a chance to

12 look through those, we were going to meet and confer with the

13 lawyers on the side to try to discuss those, but we were going

14 to notify them as to which ones --

15         THE COURT:  Okay, so --

16         MR. ZUMBRO:  -- we would --

17         THE COURT:  -- let's suppose that Mr. Pascuzzi says,

18 "Wait, you can't do that.  My claim is fixed in the sum of

19 three million dollars."  Then he briefs that on November 15th,

20 under your proposal, and you respond to that on December 5th.

21 So the briefing of November 15 and December 5th is really the

22 briefing.  The first document is not so much a briefing as a --

23         MR. ZUMBRO:  That's correct.

24         THE COURT:  -- as a trigger as to -- for the --

25         MR. ZUMBRO:  That's correct.

(970) 686-7611 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  Okay.  And then -- all right, so -- well,

2    let's get the -- I asked Mr. Stamer to wait till we come to the

3    other issue; now I've got everybody on this issue.  So let's

4    stick with this issue.  Let's stick to counsel --

5    So, Ms. Winthrop, you're okay with what you just

6    heard, then, right?

7    MR. TROY:  Matthew Troy, Your Honor --

8    THE COURT:  Yeah.  Mr. Troy.

9    MR. TROY:  -- U.S. Department of Justice, Civil

10   Division, on behalf of federal government, various federal

11   agencies.

12   Fine with the schedule.  Not fine with one brief from

13   everybody on one side.  The debtors are going to designate

14   discrete proofs of claim that they claim are subject to

15   estimation, presumably because in their view they are

16   unliquidated.  Those claims are going to be unique to each of

17   the agencies and private entities that filed them.  We will

18   need -- I can't address Adventist's claims, I can't address

19   California state-agency claims, and vice versa.

20   I would submit that -- our agreement, I thought, was

21   that we would have separate briefs for each of the people or

22   entities whose claims were designated.

23   THE COURT:  Well, you can take --

24   MR. TROY:  I can do all of the U.S. government's.

25   THE COURT:  You can take all the federal --

PG&E Corp., Pacific Gas & Electric Co.

1          MR. TROY:  Yes.

2          THE COURT:  -- and Mr. Pascuzzi --

3          MR. TROY:  I got that covered.

4          THE COURT:  -- can take all the state.

5          MR. TROY:  Correct.

6          THE COURT:  Right?

7          MR. TROY:  Right.

8          THE COURT:  And Ms. Winthrop can take her client,

9   and --

10          MR. TROY:  Correct.

11          THE COURT:  -- maybe we got everybody.

12          MR. TROY:  Right.

13          THE COURT:  I don't have a problem with that.

14          MR. TROY:  Okay.  And taking up on your queue that I

15   think we've heard throughout these hearings, going back a

16   couple months, is our intent is not to recite back to you

17   502(c) about liquidated --

18          THE COURT:  Good.

19          MR. TROY:  -- disputed, or contingent.

20          THE COURT:  Good.

21          MR. TROY:  I think you've done that very well for us

22   already.  I'm just going to focus on the claims that they

23   identify.

24          THE COURT:  You won't cite all the Chapter 13 cases

25   that the Ninth Circuit has --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1            MR. TROY:  If you'd like to, I'd -- happy to --

2            THE COURT:  -- told us about?

3            MR. TROY:  -- so you can use it --

4            THE COURT:  Okay.

5            MR. TROY:  -- for the next bar course.

6            THE COURT:  It'll use up your page quota.

7            MR. TROY:  No, but that's not our intent.

8            So the schedule is fine.  So long as we have separate

9 briefs, that's fine as well.

10          Your Honor, I also just want to mention that Mr.

11 Pascuzzi is on the line and listening in, and just wanted to

12 let him have an opportunity to say anything if he wanted to.

13          THE COURT:  Mr. Pascuzzi, you --

14          MR. PASCUZZI:  I --

15          THE COURT:  -- bored with us?  Separate brief for you?

16          MR. PASCUZZI:  Good -- yes, Your Honor.  Good morning.

17 Paul Pascuzzi, co-counsel with the Attorney General's office,

18 for the California state agencies.

19          I agree with what Mr. Troy said; we do need separate

20 briefs.  And I hear the Court saying that's fine.  And again,

21 we'll do our best to be efficient on the pages.

22          THE COURT:  Well, don't reinvent the wheel, that's

23 all.  Let's say Mr. Zumbro offered twenty-five pages; I'll say

24 twenty-five pages from you and from Mr. Troy.

25          And, Ms. Winthrop, I hope you don't need twenty-five

PG&E Corp., Pacific Gas & Electric Co.

1    pages.  Do you?  But are you okay with it, too, everything?

2             MS. WINTHROP:  I would like an opportunity to

3    separately brief, and I'm fine with twenty-five pages.

4             THE COURT:  Mr. Zumbro, I think --

5             MS. WINTHROP:  Thank you, Your Honor.

6             THE COURT:  -- given what we're talking about, unless

7    there's someone else here that wants to be heard on this issue,

8    this one I'd like you to draft an order, a scheduling order.  I

9    mean, we've been dealing with the post-petition and the make-

10   wholes, and the impair/not impair more informally.  But this

11   one's got too many moving parts, so can I ask you to circulate

12   a stipulated order that -- again, I'll repeat it:  November 1

13   is the date that the debtor identifies which claims they

14   believe --

15            UNIDENTIFIED SPEAKER:  Can you speak up?

16            THE COURT:  -- should be estimated --

17            MR. ZUMBRO:  Sorry, Your Honor; I think certain people

18   are having a hard time.  If you wouldn't mind --

19            THE COURT:  Oh, I'm sorry.

20            MR. ZUMBRO:  -- putting the microphone --

21            THE COURT:  November 1st you'll -- the debtor, through

22   you, Mr. Zumbro, will designate which claims are -- you believe

23   are estimatable (sic).  And the two governmental agencies and

24   the Adventist group all will, by the 15th of November, have

25   briefs, twenty-five pages for each of the three, maximum, to

                PG&E Corp., Pacific Gas & Electric Co.

1    respond.  And you will have a reply or call it -- from the

2    debtor on the 5th, and I'll hear it on the 17th.

3              MR. ZUMBRO:  That sounds fine, sir.  We'll --

4              THE COURT:  And --

5              MR. ZUMBRO:  We'll submit that.

6              THE COURT:  And everybody's committed not to reinvent

7    the wheel.  And just preserve your record, but do it with a

8    footnote, one footnote.  Okay?

9              MR. ZUMBRO:  Now I'm confused.  Judge Donato said

10   we're not allowed to use footnotes, but --

11             THE COURT:  Well, he's on the nineteenth floor.

12             MR. ZUMBRO:  Thank you, sir.

13             THE COURT:  He's Article III.

14             All right, does anyone want to be heard on this issue?

15   I mean, is there anyone in court or on the phone -- and pardon

16   me for getting away from the microphone -- that wants to be

17   heard on the 502(c) issue?

18             Okay, we're done on that.  Mr. Stamer, back --

19             MR. PASCUZZI:  Your Honor?  Your Honor?

20             THE COURT:  Yes, sir.

21             MR. PASCUZZI:  Your Honor, this is Paul Pascuzzi.  I

22   think you may have just misspoke on the briefing that Mr.

23   Zumbro heard (sic).  He said November 1 for the designation of

24   the claims, and then November 15 would be the creditor brief,

25   December 5 would be the debtor response, and then December 12

(970) 381-0500 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    the creditor reply, and the hearing on December 17th.  I just

2    want to make sure that's the schedule we are talking about.

3             THE COURT:  I think, when I repeated it --

4             MR. PASCUZZI:  I think that's what he started --

5             THE COURT:  -- when I repeated it, I was so intrigued

6    by Mr. Karotkin agreeing he didn't have to do reply briefs,

7    that I forgot that Mr. Zumbro wanted to -- wants --

8             MR. ZUMBRO:  That's correct; December 12th.  What Mr.

9    Pascuzzi --

10            THE COURT:  Or, well, the creditors wanted to do it.

11   Actually, the --

12            MR. ZUMBRO:  Correct.

13            THE COURT:  -- the creditors.  Okay.

14            MR. PASCUZZI:  Yeah.

15            THE COURT:  That's fine.  And Mr. Zumbro will

16   memorialize that in a stipulation.

17            MR. ZUMBRO:  Yes.

18            THE COURT:  Thank you, Mr. Pascuzzi.

19            Okay --

20            MR. PASCUZZI:  Thank you.

21            THE COURT:  -- Mr. Stamer.

22            MR. STAMER:  Good morning, Your Honor.  For the

23   record, Mike Stamer from Akin Gump, on behalf of the ad hoc

24   committee.

25            Your Honor, I stand to rise -- "I stand to rise".  I

PG&E Corp., Pacific Gas & Electric Co.

1    rise to address the specific issue that you raised with respect

2    to briefing as it relates to post-petition interest and make-

3    whole.  I appreciate your comments with respect to trying to

4    keep these proceedings civil, and I will do my best to abide by

5    Your Honor's instructions.

6         We believe that things have changed very dramatically;

7    the landscape has changed.  And whether you want me to proceed

8    now or I can wait, we believe that we have all been presented

9    with an opportunity to fast-track this company out of Chapter

10   11 to a successful conclusion that pays tort claimants in full

11   and abides by the deadline in AB 1054; possibly the only viable

12   chance to do that.

13        So, Your Honor, I realize I'm at the podium talking

14   about briefing with respect to PPI and make-whole.  We had a

15   number of conversations with the company, regarding what the

16   schedule should look like.  We had a very unpleasant -- we had

17   a very unpleasant meet-and-confer on Monday, which, unless Your

18   Honor wants me to, I will not go into detail.

19        THE COURT:  I don't want to hear it.

20        MR. STAMER:  But --

21        THE COURT:  I wasn't here.

22        MR. STAMER:  You weren't there for that.  But, Your

23   Honor, our intentions are true.  Our intentions are to minimize

24   delay and maximize the likelihood of a successful outcome here.

25        THE COURT:  Mr. Stamer, I wasn't judging anybody.  I'm

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    just saying I want to -- I want to keep the labels out of the

2    briefing, like hedge funds, you know.

3            MR. STAMER:  I --

4            THE COURT:  It's not necessary.

5            MR. STAMER:  I -- understood, Your Honor.

6            THE COURT:  Okay.

7            MR. STAMER:  So again, from our perspective the best

8    way to handle these issues is to handle them in connection with

9    the litigation over the TCC ad hoc committee plan, that under

10   our plan we can address post-petition interest, we can address

11   make-whole optional redemption, we can do it efficiently, we

12   can do it surgically.  There is significantly less at issue

13   under our plan, with respect to those issues.

14           Your Honor, you'll recall we are reinstating the vast

15   majority of the funded bond debt, and therefore only the stuff

16   that is refinanced, and some other issues you'll hear about in

17   a few minutes from other parties, the issue -- the amounts in

18   dispute under our plan, with respect to post-petition interest,

19   is much smaller.  So I --

20           THE COURT:  Well, there still is an -- it's still an

21   amount; it's still --

22           MR. STAMER:  It's --

23           THE COURT:  -- some money.

24           MR. STAMER:  I think it's thirty-eight million

25   dollars --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Yeah.

2          MR. STAMER:  -- as it relates to the bonds.

3          THE COURT:  No, I read that.

4          MR. STAMER:  Okay.

5          THE COURT:  I read that.

6          MR. STAMER:  And, Your Honor, we think the most

7   efficient way to do it and the most efficient way to get to --

8   the football metaphor -- the end zone, which is confirmation,

9   satisfaction of AB 1054, is to allow our plan to go first.

10         THE COURT:  Well, that's a different issue, see.

11         MR. STAMER:  It --

12         THE COURT:  To me --

13         MR. STAMER:  Your Honor --

14         THE COURT:  Okay?

15         MR. STAMER:  It is a different issue.  And I don't

16  mean to creep.  I know that's the next thing on the agenda.

17         THE COURT:  I don't mind -- I don't mind taking it all

18  together, but what I -- well, let me make sure you're clear.

19  I'm not about to make this like consecutive sentences.  I'm

20  going to do it concurrent, for the time being.

21         MR. STAMER:  And there are different layers of

22  concurrence.

23         THE COURT:  Right.  That's true.

24         MR. STAMER:  We think one of the advantages -- and

25  this is maybe a threshold issue we should talk about.  One of

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    the advantages of our plan -- which, Your Honor, you'll recall,

2    we had a back-and-forth on September 24th and you had a back-

3    and-forth with Mr. Karotkin on this issue, at the status

4    conference --

5              THE COURT:  Right.

6              MR. STAMER:  -- is our ability to take the burden off

7    of Judge Donato by virtue of mooting the estimation.  Those

8    are --

9              THE COURT:  I know, but --

10             MR. STAMER:  -- the words we used.

11             THE COURT:  -- there's a whole group of lawyers on

12   this side of the room that don't think the burden is gone; it's

13   still there; it's just --

14             MR. STAMER:  Your Honor, and --

15             THE COURT:  -- a different label.

16             MR. STAMER:  It's a --

17             THE COURT:  It's called valuation, right?

18             MR. STAMER:  Your Honor, you're exactly right.

19             THE COURT:  Right.

20             MR. STAMER:  It is clearly within your court

21   jurisdiction.  I don't think anyone would argue otherwise.  And

22   we believe what you need to find to confirm the TCC ad hoc plan

23   is that it doesn't violate the absolute-priority rule.  The

24   settlement is reasonable and it doesn't violate the absolute-

25   priority rule --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  But how about if it overpays your class?

2      MR. STAMER:  Your Honor, not our class.

3      THE COURT:  I mean --

4      MR. STAMER:  You mean the TCCs?

5      THE COURT:  Yeah, the TCCs.

6      MR. STAMER:  That is the fundamental issue, as part of

7  confirmation, you would have to resolve.

8      THE COURT:  Right.  Right, but it's still a fact

9  question, right?  In other words, you've got to -- you've got

10  to get a number called estimation, either by Judge Donato or a

11  mediated settlement, and let's assume the former, and he has a

12  schedule and he's going to plug in that number, and that

13  number's going to influence, really, some of these other issues

14  dramatically.

15      So, I mean, your plan is DOA if he puts a huge number

16  on it.  And --

17      MR. STAMER:  Other way around.

18      THE COURT:  Well --

19      MR. STAMER:  Other way around.

20      THE COURT:  -- I mean a huger number.

21      MR. STAMER:  No, no, Your Honor --

22      THE COURT:  Yeah; I mean a --

23      MR. STAMER:  -- as we talked about in connection with

24  exclusivity, our plan is DOA; we'd have to amend it if in fact

25  the number is very small.

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  No, I know that.

2          MR. STAMER:  So if the number is --

3          THE COURT:  But what if it's very large?

4          MR. STAMER:  If it's very large, we are relying upon

5   our partners, the TCC and the members of the TCC and the people

6   that they work with, to carry the class.  I believe counsel for

7   the TCC, at the exclusivity hearing, said, we are confident

8   that we will carry the class, the fiduciary for the tort

9   claimants.

10         THE COURT:  But --

11         MR. STAMER:  So, big number.

12         THE COURT:  -- Mr. Stamer, if the --

13         MR. STAMER:  Sure.

14         THE COURT:  -- if the ultimate determination is

15  insolvency, then we're all starting --

16         MR. STAMER:  Your Honor, it's a --

17         THE COURT:  -- all over again, aren't we?

18         MR. STAMER:  -- it's a great question.  So if in fact

19  they can't carry the class, then you're right; we start --

20  there's an insolvent -- potentially an insolvent company; we

21  have post-petition interest that's not as big -- not really an

22  issue.  We can talk about that separately.

23         THE COURT:  Right.

24         MR. STAMER:  But the point is, Your Honor, under our

25  joint plan, if the claim number -- again, what we're giving to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   the nonsettling public entities and the nonsubros -- is

2   thirteen-and-a-half billion dollars, for everybody.  So if the

3   finding of Your Honor in connection with confirmation, whether

4   you want to do that in advance of a mediation or Judge

5   Donato -- which we believe you can do and can do it very

6   efficiently.  If the finding is 13.5, 13.6, 20, 40, 100, and

7   the settlement sticks, which we believe it will stick, then our

8   plan is confirmable.

9          So the virtue of the TCC plan, Your Honor, is we have

10  an agreement to satisfy the tort claimants in an amount that

11  they have all agreed to, including the PI -- the PE, the public

12  entities, and including the subros.  We're giving them the

13  eleven --

14         THE COURT:  No --

15         MR. STAMER:  -- billion dollars.

16         THE COURT:  No, I know you are.  I know.

17         MR. STAMER:  So the virtue of our plan is the only way

18  we're vulnerable to having it not confirmable is if the number

19  is significantly less than 25.5.

20         THE COURT:  Okay.

21         MR. STAMER:  And I will leave it to my colleagues on

22  the TCC to talk to you; they have, to some degree.  I believe

23  they may have some information about the preliminary proofs-of-

24  claim numbers.

25         Your Honor, we are -- the TCC is very confident that

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    they're going to do -- that the number's going to be far in

2    excess of twenty-five-and-a-half billion dollars.  That's the

3    fundamental assumption of our settlement, that they are willing

4    to settle, all in, for 25.5, regardless of where the number --

5    where the number comes out.

6            THE COURT:  Well, but more specifically it's the TCC

7    for the 14.5 --

8            MR. STAMER:  It's the TCC --

9            THE COURT:  -- that are --

10           MR. STAMER:  -- for the 13.5.

11           THE COURT:  13 -- the 13.5.

12           MR. STAMER:  You're right, but everybody else has

13   agreed, Your Honor.

14           THE COURT:  No, I know.  I know that.

15           MR. STAMER:  And we'll get to the subrogation stuff in

16   a --

17           THE COURT:  But let's --

18           MR. STAMER:  Sure.

19           THE COURT:  -- let's go back to timing.  In other

20   words, I -- you say that your plan is easier because a portion

21   of the estimation is out, but not all of it.  And it doesn't

22   seem to me that you could ever have -- you could ever be

23   finished -- it can ever be confirmed until you got that final

24   number; right?

25           MR. STAMER:  Your Honor, we filed the statement --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Yes.

2          MR. STAMER:  -- and attached to the statement is a

3    picture.  I actually --

4          THE COURT:  No, I saw it.

5          MR. STAMER:  I'm a picture guy.

6          THE COURT:  I looked at it.

7          MR. STAMER:  And the -- we actually plugged in here

8    what we thought the company's schedule was going to be, on a

9    side-by-side.  They actually were more aggressive.  So they

10   actually pulled back what we thought they were going to be, by

11   about a month.  So there's -- regardless of which way we go,

12   it's -- they leave no margin for error in the schedule they've

13   proposed.

14          If you look at our schedule, Your Honor, we believe we

15   can get to confirmation in advance of the beginning of the

16   estimation trial.  So we litigate core confirmation issues, we

17   litigate whatever allowance of claim entitlements, make-whole,

18   PPI, and Your Honor litigates fair-and-equitable --

19          THE COURT:  But it's not -- it's --

20          MR. STAMER:  -- best interest.

21          THE COURT:  But it's not really litigated.  It's legal

22   argument, isn't it?

23          MR. STAMER:  It's not, Your Honor.

24          THE COURT:  Is it a legal question?  In other words,

25   we take your plan as it's presently stated --

(973) operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. STAMER:  Yep.

2          THE COURT:  -- the recent one, and we take the

3  debtors' plan, and we then test the various legal tests of

4  1129 --

5          MR. STAMER:  Correct.

6          THE COURT:  -- and the other things, and some are

7  legal, some are factual.  So we --

8          MR. STAMER:  Absolutely correct.

9          THE COURT:  Okay.  So, I mean, that's why your time

10  line seems to be distorted in the sense that there's too much

11  that you have to wait to get done -- for you to have a lot of

12  things all done.  But many of the debtors' same things can move

13  earlier, too, which is what we just talked about.

14          MR. STAMER:  Actually, fundamentally I agree with

15  everything Your Honor has said but one thing.

16          THE COURT:  Okay.

17          MR. STAMER:  And we appreciate the efforts by the

18  Court to streamline confirmation and try to pull things out and

19  resolve them earlier rather than later.  We don't think that's

20  necessary as it relates to our plan, because of the speed at

21  which we can get to confirmation.

22          The biggest difference between our plans, setting

23  aside post-petition interest, make-whole, all of that stuff --

24  the biggest difference is they are required to estimate; they

25  have to.  Unequivocally, they need to get Judge Donato to say

                PG&E Corp., Pacific Gas & Electric Co.

1    that there is less than 6.9 billion dollars of tort claims, or

2    their financing disappears.

3            There's an 8.4 number --

4            THE COURT:  Well -- but maybe it doesn't disappear.

5    Maybe --

6            MR. STAMER:  I'm glad you brought that up, Your Honor.

7    I --

8            THE COURT:  Okay.

9            MR. STAMER:  We actually refer to that as the stroke-

10   of-the-pen argument.  Okay.  Stroke of the pen.  Right?  So the

11   debtors are of the view that, if we get a different view from

12   Judge Donato with a stroke of a pen, what we will do is we will

13   just raise more money.

14           So here's one of the fundamental problems:  the world

15   doesn't work that way.  That's number one.  Number two, the

16   bulk of their money is coming from equity holders.  Setting

17   aside the thirty-plus --

18           THE COURT:  I know.

19           MR. STAMER:  -- billion dollars of bridge loan --

20           THE COURT:  Yes; I understand.

21           MR. STAMER:  -- it comes from equity holders.

22           THE COURT:  I know that.

23           MR. STAMER:  And why are they putting that money up?

24   They think it's an attractive --

25           THE COURT:  Well, I think I figured out --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      MR. STAMER:  -- investment.

2      THE COURT:  -- a long time ago why both sides would

3 like to get control of the company.  So I got it.  Okay?

4      MR. STAMER:  I -- understood, but it's specifically

5 this issue:  So they're putting money up, they think it's a

6 good investment, but it relies upon Judge -- Your Honor saying

7 we're entitled to very little post-petition interest and no

8 make-whole.  And they rely upon squishing down the tort claims.

9 All right?  If they --

10     THE COURT:  Well, wait a minute, now you're sounding

11 like one of the tort-claimant lawyers.  They're not squishing

12 down.  They're going to go through a consensual resolution or a

13 judicial one, and they will get -- if it's the latter, the

14 judicial process will give them a number.  Now, that might be

15 squishing --

16     MR. STAMER:  I --

17     THE COURT:  -- as a --

18     MR. STAMER:  I apologize for the shorthand, Your

19 Honor.

20     THE COURT:  It's okay.

21     MR. STAMER:  I --

22     THE COURT:  I'm not taking it personally.

23     MR. STAMER:  They're a very passionate group and it

24 tends to rub off a little bit.

25     THE COURT:  But, Mr. Stamer, you would have me believe

PG&E Corp., Pacific Gas & Electric Co.

1   that Mr. Karotkin and Mr. Bennett and all of them are going to

2   fold their tent if Judge Donato raises the number by fifty

3   cents.  I mean, what if it's ten million?  What if it's --

4   billion.  What if it's eleven billion?

5           MR. STAMER:  That's -- Your Honor --

6           THE COURT:  What if it's twelve billion?

7           MR. STAMER:  -- that's the gray area.  But --

8           THE COURT:  That's right.

9           MR. STAMER:  -- again, to put things in perspective;

10  the value of the equity of PG&E on the market right now, as of

11  the close of business yesterday, was 4.3 billion dollars.

12          THE COURT:  Okay.

13          MR. STAMER:  Right?  4.3 billion --

14          THE COURT:  I don't know, but I'll take your word for

15  it.

16          MR. STAMER:  I just asked one of my clients and they

17  looked it up on the computer -- on their phone, actually.

18          So the difference between the 6.9, which is what their

19  financing relies upon, and our 13.5 is a lot bigger than that.

20  So they lose their incentive to fund this plan on an equity

21  basis, if in fact the equity value disappears.  So --

22          THE COURT:  Well, of course.  I understand that.  But

23  therefore, what?  I mean -- and I'm not sure --

24          MR. STAMER:  Stroke of the --

25          THE COURT:  -- what you want me to do.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. STAMER:  No, no, no.  I just want to make sure --

2    I wanted to address the stroke-of-the-pen argument, the fact

3    that, if things don't go well with Donato from the -- with

4    Judge Donato, from the perspective of the debtors and equity,

5    that with a stroke of the pen they're going to write another

6    check.  It's not going to happen.  There may be other people

7    out there that are willing to put money in, but the equity does

8    not have an incentive to write a big check at an attractive

9    value to protect their equity investment.

10    THE COURT:  But that -- but again, you're stating the

11    obvious.  And so let's pretend the hypothetical --

12    MR. STAMER:  Sure.

13    THE COURT:  -- that Judge Donato has just announced,

14    that I find the estimated claims are twelve billion dollars.

15    And so Mr. Karotkin's plan at the moment isn't doable, but with

16    a stroke of the pen he says, we can make it twelve million.

17    You might say that doesn't happen that way in the real world,

18    and I would agree with you.  But that's why you schedule a

19    hearing on feasibility.  Prove your feasibility and show

20    whatever legal infirmities, if any, may exist on your plan.

21    And if, you know what, as you have predicted -- or

22    maybe it was Mr. Bennett that predicted, before, for your side;

23    if the numbers get you high and somebody drops out, the

24    question, which goes back to my philosophy about changing my

25    view and allowing competing plans, is so we have somebody --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    still one man standing, you know?

2            MR. STAMER:  Your Honor, and I'm --

3            THE COURT:  Okay?

4            MR. STAMER:  We're not -- just so we're clear; nothing

5    that we're saying would stop the debtors from pursuing their

6    plan.  And if Judge Donato comes up somewhere between 6.9 and

7    13.5, then there'll be a scramble.  Right?

8            THE COURT:  Right.

9            MR. STAMER:  We'll scramble to move down; they'll

10   scramble to move up.  But under their plan, they've got to do

11   it in six days.  Under their schedule, their side-by-side,

12   Judge Donato issues his decision without any time for post-

13   trial briefing or anything else, and then six days later --

14           THE COURT:  Well, what are you looking at here for the

15   six days later?

16           MR. STAMER:  It's actually the attachment to --

17           THE COURT:  Yeah, I'm looking at it.  The -- your

18   chart, right?

19           MR. STAMER:  It's not our chart.  It's actually their

20   chart.  It's attached to Mr. Karotkin's latest pleading.

21           THE COURT:  All right.

22           MR. STAMER:  So if you look at -- it's one of the

23   schedules.

24           Does anyone have an extra copy?

25           THE COURT:  Well, I had everything up here, but I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    don't --

2         MR. STAMER:  Your Honor, may I approach?  I'll give it

3    to you handy.

4         THE COURT:  Yes, of course.  Yeah.  Sure.

5         Oh, yeah; no, I have -- I'm sorry, I just -- I had

6    it -- I had it on the next page.  There it is.  Okay, go ahead.

7         MR. STAMER:  Okay.  So --

8         THE COURT:  Yeah, all right, so there it is, but --

9         MR. STAMER:  So --

10        THE COURT:  But I don't -- who agreed -- I didn't

11   agree to this schedule.

12        MR. STAMER:  I -- Your Honor, what I'm -- look, you

13   didn't agree to the schedule.  I'm just trying to -- I'm trying

14   to explain the difference of the two plans, the risk associated

15   with what the debtors' schedule -- as they have proposed, and

16   how we address the stroke-of-the-pen argument, and that is,

17   under their schedule the -- February 18th, Judge Donato starts

18   the estimation trial.  Two weeks later, under their time line,

19   although Judge Donato said two to three weeks, he issues a

20   decision.  So that doesn't give him any time to write a

21   decision or for post-trial briefing.  And then on the 10th of

22   March, six days later, that's when we need to file amended

23   plans and disclosure statements.

24        So if -- this is quite a needle that they'd need to

25   thread.  Judge Donato needs to be somewhere in between the 6.9

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    and the 13.5 and then, with a stroke of the pen, they need to

2    find enough money to fill the gap.  And, Your Honor, my only

3    point is, if this breaks down -- if this schedule breaks down,

4    we blow up.  We --

5            THE COURT:  Well --

6            MR. STAMER:  We don't satisfy --

7            THE COURT:  Wait a minute, wait a minute --

8            MR. STAMER:  -- AB 1054.

9            THE COURT:  -- wait a minute.

10            MR. STAMER:  Sure.

11            THE COURT:  If -- why don't we refine that a little

12   bit and say, if Mr. Karotkin and his client's schedule breaks

13   down, do we still have a confirmable plan from you?  The answer

14   is yes.

15            MR. STAMER:  Absolutely.

16            THE COURT:  That's right.  So what's the problem?

17   Why -- it's just a question of making sure we do it efficiently

18   by having the legal issues ahead of time, which is what we've

19   been talking about.  And there will be some evidence and facts

20   that you have to put on to prove on your schedule -- and

21   that's -- where did your chart'd go?  I had it here a minute

22   ago.

23            I mean, I guess what I'm missing, Mr. Stamer, is --

24            MR. STAMER:  Sure.

25            THE COURT:  -- your point.  Your point is their plan

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    may not make it.  Okay.  I agree, it may not make it.  If you

2    think your plan will make it, then all you have to do is figure

3    out and convince me to make sure it can happen.  But what I

4    don't want to do is have essentially a confirmation hearing for

5    your side and just put it on the backburner for three months if

6    we have to wait for the estimation, because, again, you haven't

7    told me when we're going to have a valuation to see whether

8    your plan does in fact satisfy the absolute-priority rule,

9    because it might either overpay a class to the detriment of the

10   equity class; right?

11          MR. STAMER:  Your Honor, if you go back to this

12   schedule, the exhibit of our statement, which is the top and

13   bottom --

14          THE COURT:  Yeah?

15          MR. STAMER:  -- and this is not a clear depiction of

16   the company, because, again, they've moved everything up by

17   about a month -- our proposed start of confirmation is January

18   21st.  January 21st.  Estimation is supposed to start three

19   weeks later, give or take; actually, almost four weeks later.

20          So when the litigation -- the trial over 1129(a) and

21   (b) would occur -- it would start, under our schedule, January

22   21st.

23          THE COURT:  So what -- okay, it's January 21st.

24          MR. STAMER:  Yeah.

25          THE COURT:  What are we going to do at the

PG&E Corp., Pacific Gas & Electric Co.

1  confirmation hearing?  We can't --

2         MR. STAMER:  We're going to do --

3         THE COURT:  We can't count votes.  Right?  We can't --

4  well, again -- well, okay, so what -- you tell me.

5         MR. STAMER:  Well, let's take it one at a time.

6         THE COURT:  What --

7         MR. STAMER:  So with respect --

8         THE COURT:  What do you present?

9         MR. STAMER:  With respect to voting, in connection

10  with approval of the disclosure statement, we're going to have

11  to do something with respect to how the tort claimants will

12  vote.  We can -- this has happened before -- in advance of

13  identification of everybody's individual claim.

14         THE COURT:  Yeah.

15         MR. STAMER:  That's what we do.

16         THE COURT:  I know.

17         MR. STAMER:  On January 21st we would start with a

18  full presentation of the fact that our plan satisfies all of

19  the elements of 1129(a) and (b).

20         THE COURT:  But what specifically -- what is the

21  evidence that you'll put on?

22         MR. STAMER:  The evidence is -- we would have to put

23  on some type of a truncated case, which would be led by the

24  TCC, with --

25         THE COURT:  Feasibility, right?

PG&E Corp., Pacific Gas & Electric Co.

1        MR. STAMER:  Feasibility, absolute-priority rule --

2        THE COURT:  Right.

3        MR. STAMER:  -- which is -- there'd have to be some

4   type of quantification in a truncated manner --

5        THE COURT:  But what if the opponents say that your

6   plan violates the absolute-priority rule by overpaying a class?

7   That's a fact question, right?

8        MR. STAMER:  It -- that's exactly right.

9        THE COURT:  Right, and we're going to have a trial on

10  that subject.

11       MR. STAMER:  Correct.

12       THE COURT:  And so don't you then -- isn't that the

13  equivalent of estimation?  It's just estimating a different

14  number.

15       MR. STAMER:  Our view is it is much less involved,

16  much --

17       THE COURT:  Well, I agree.

18       MR. STAMER:  -- much less comprehensive, because what

19  the debtors need to do to confirm their plan is estimate the

20  claims to establish a cap.  They're going to do a bottoms

21  (sic)-up analysis, if estimation goes forward, which will be

22  incredibly complex and --

23       THE COURT:  No, I know.  I --

24       MR. STAMER:  -- time-consuming and expensive.

25       THE COURT:  I read the transcript of yesterday's

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    hearing.  I know it's complex.

2         MR. STAMER:  As we discussed on September 24th, we

3    believe that this can be done by the bankruptcy court, as part

4    of the bankruptcy court's core jurisdiction.  It is a -- it is

5    both a fact component and an expert component.  And, Your

6    Honor, the good news is there's a tremendous amount of work

7    being done in connection with estimation, that all the parties

8    can benefit from.  There's discovery.  There's identification

9    of expert witnesses.  We don't need as comprehensive a trial as

10   Judge Donato is going to require on this issue, because it's a

11   much narrower issue.  But --

12        THE COURT:  No, I agree, but it --

13        MR. STAMER:  But the prize, as Your Honor knows -- and

14   again, I apologize if I'm getting a little worked up.  The

15   prize is to give this company and its creditors a viable shot

16   of emerging or confirming -- satisfying the deadline of AB

17   1054.

18        THE COURT:  No, I know that.

19        MR. STAMER:  And if we succeed, Your Honor, if our

20   plan is confirmable like we are certain that it is, then Judge

21   Donato is free to take on his very substantial other docket and

22   we don't further him (sic) -- we don't burden him further.  And

23   if we're wrong, if Your Honor, based upon what you hear from

24   the TCC and from the debtors, say (sic), I'm not comfortable --

25        THE COURT:  Well, wait, let me -- time out.  Suppose I

PG&E Corp., Pacific Gas & Electric Co.

1    went exactly with your time line and we got to the point where,

2    okay, it's January 21st and whatever time it takes to do

3    that -- and I listen to the issues and I'm prepared to say,

4    well, I'm prepared to confirm this plan when the other plan has

5    either failed or -- the vote, or it has not failed, and then I

6    have to make a choice.  Isn't that what would happen anyway?

7         MR. STAMER:  Well, Your Honor, our view is -- our

8    proposed schedule is no.  If you have a confirmed plan, if you

9    have found that our settlement -- our plan is fair and

10   equitable, it doesn't overpay the torts --

11        THE COURT:  Yeah?  And I have to confirm it then?  I

12   just tell the --

13        MR. STAMER:  Well, you --

14        THE COURT:  -- other ones, "No luck"?

15        MR. STAMER:  Well, we can talk about --

16        THE COURT:  But I don't think that's what the --

17        MR. STAMER:  -- what you have to do -- you're the

18   judge.

19        THE COURT:  I --

20        MR. STAMER:  You don't have to do --

21        THE COURT:  No, no.  I have to do what the Code says.

22   And I don't think the Code says that you can -- you dump a

23   debtor's plan because some other plan could be confirmed --

24        MR. STAMER:  Let me address that.  And the way I'd

25   address it is, if you find that our settlement is reasonable

operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corp., Pacific Gas & Electric Co.

1 and our plan is fair and equitable to the tort claimants, so

2 the claims are in excess of 25.5, the debtors' plan, as

3 sponsored by equity, is DOA; it's because they don't have the

4 financing; it's a condition precedent to confirmation.

5 THE COURT: But, Mr. Stamer, that, again, is the --

6 that's -- you're asking me to say your plan is confirmable,

7 therefore the debtor doesn't even get to show how its plan's

8 confirmable.

9 MR. STAMER: Your Honor, if --

10 THE COURT: And I guess I don't know how I am allowed

11 to do that.

12 MR. STAMER: Well, Your Honor, if you -- and again,

13 I -- if Your Honor wants to allow us to go forward and then you

14 can hold in reserve confirmation pending --

15 THE COURT: Well, that's what I said a minute ago.

16 That's what I said.

17 MR. STAMER: Yeah, that --

18 THE COURT: I don't know why that -- I don't know why

19 that's efficient. But look, if the debtor --

20 MR. STAMER: The --

21 THE COURT: -- stands up and says, "We throw in the

22 towel. We don't have a plan to promote," then if you've got

23 your plan ready to be confirmed or ready to be confirmed on a

24 schedule, then you're fine. But if the debtor's still in the

25 game, I don't believe at this point that the law says, well,

PG&E Corp., Pacific Gas & Electric Co.

1    sorry, Debtor, your plan doesn't even get tested, because you

2    got this other plan.

3           MR. STAMER:  Your Honor, look, I think everyone will

4    agree this is a case potentially unlike any other.

5           THE COURT:  We've all agreed.  We ought to give it a

6    number.

7           MR. STAMER:  Deadline -- right.  Well, that

8    argument -- number 1.  That'll be number 1.

9           THE COURT:  Number 1.

10          MR. STAMER:  Okay.  The efficiency with our

11   approach -- and again, Your Honor, I don't know if you'll agree

12   or not -- is, if we get to confirmation, you render unnecessary

13   everything else.  And it's not a question of trying to

14   disadvantage the debtor.  What it is is -- as a prerequisite --

15          THE COURT:  Of course it is.

16          MR. STAMER:  As a --

17          THE COURT:  You're not in this for charity either.

18          MR. STAMER:  As a -- fair enough.  As a prerequisite

19   to you confirming our plan, Judge, fair and equitable, Your

20   Honor, you need to find that we don't violate the absolute-

21   priority rule.

22          THE COURT:  I got that but, look, the -- we're having

23   a debate that I'd rather defer for a little while.  But the way

24   I see it is, if you have the -- and I took your lead and TCC's

25   strong opinion to do what was a change of position, by

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    obviously my prior ruling.  So I said, okay, we're going to

2    have two plans.  But implicit in that, in my mind, among other

3    things, was to make sure one of them would make it to the

4    finish line.

5           So you're saying, okay, mine's going to finish first.

6    The other side, by the way, hasn't spoken to the issue yet.

7    I'm sure they have a different take on your time line.  But

8    either -- doesn't matter.  I don't think the Code says that,

9    okay, because I gave you preference, if you will, that, once

10   you convince me it's confirmed, I just confirm it and we're

11   done and everybody goes home.  It means, no, I give the debtor

12   an opportunity, under this record, to put on its plan and, if

13   the debtor has a confirmable plan, then I let the voters vote

14   and, if they vote for both plans, I have to make the choice.

15   If they vote for one and not the other, they've made the

16   choice.  Isn't that the law?

17          MR. STAMER:  Again, argument number 1:  this is a case

18   like no other.

19          THE COURT:  Right.

20          MR. STAMER:  The goal has to be to do whatever is

21   necessary to minimize risk and maximize the likelihood we

22   satisfy the time requirements of --

23          THE COURT:  Correct.

24          MR. STAMER:  -- 1129.

25          THE COURT:  Correct.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1        MR. STAMER:  If -- Your Honor, we'd be open to talking

2   to Your Honor, to the company, about some kind of a hybrid

3   approach.  If Your Honor is focused on Judge Donato making the

4   estimation proceeding, we can front-end every --

5        THE COURT:  Listen, my number-one "A" goal is to put

6   Judge Donato out of business by taking it out of his hands.

7   But at the moment I haven't got the solution yet.  I'm working

8   on it.

9        Let's go back to the immediate -- let's talk --

10        MR. STAMER:  Fair enough.

11        THE COURT:  -- about the schedule -- the -- I'm not

12   saying I won't consider your sequence, but I'm --

13        MR. STAMER:  Okay.

14        THE COURT:  -- simply not going to put the debtors'

15   plan on the backburner and take yours all the way through to

16   confirmation.  So let's go back to the briefing schedule.

17        MR. STAMER:  Okay.

18        THE COURT:  Do you have a problem with --

19        MR. STAMER:  We have --

20        THE COURT:  -- what Mr. Karotkin and I --

21        MR. STAMER:  We have two problems.

22        THE COURT:  Okay.

23        MR. STAMER:  The first is, we don't want one brief on

24   our side.  So there are -- you're going to hear from new

25   participants in this process.  There is an ad hoc trade

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    committee who is going to assert that they have an entitlement

2    to, I believe, statutory -- California statutory interest.  I

3    won't speak for them.  I believe there's an unsecured-bank-debt

4    group that has issues with respect to their interest rates.  We

5    have the official committee, the indenture trustee.  We have

6    us.  Under our plan, these are very significant issues.  Under

7    the debtors' plan, they're north of six billion dollars.

8           So what we -- two things, Your Honor.  We think there

9    could be a little more slack in the schedule so that it would

10   be pushed back by a couple of weeks if in fact Your Honor wants

11   to do it as part of -- as separate and apart from confirmation.

12   And at the very least, the January 6th date, at the end of the

13   make-whole -- we have people that are not available, so we'd

14   need to -- at the very least, we'd need to roll that date.

15          THE COURT:  Well, but let's stick with what --

16          MR. STAMER:  Sure.

17          THE COURT:  -- what Mr. Karotkin called the post-

18   petition interest.  So you're telling me there's some other --

19   I mean, I just don't have the ability to have half a dozen

20   different groups with separate briefing and then put them all

21   in one great big bundle.  I'll do it if we have to, and I'll

22   stretch it out if we have to, but can't we just start with an

23   alternative to the post-petition -- the point was opening

24   briefs.

25          MR. STAMER:  I think we're fine with that, that

PG&E Corp., Pacific Gas & Electric Co.

1    everyone -- simultaneous briefing is fine with us.

2         THE COURT:  Right.

3         MR. STAMER:  But what --

4         THE COURT:  But what I'm getting at is --

5         MR. STAMER:  Yeah.

6         THE COURT:  -- do you -- let's focus -- you.

7         MR. STAMER:  Yeah.

8         THE COURT:  And you're only here representing your

9    group.

10        MR. STAMER:  Yep.

11        THE COURT:  You can brief your view of the world on

12   the post-petition-interest thing.  You're entitled to post-

13   petition interest under your plan and presumably under their

14   plan; right?

15        MR. STAMER:  We'd have to do both, I believe.

16        THE COURT:  That's right.

17        MR. STAMER:  Right.

18        THE COURT:  That's right.  And are you telling me that

19   four different creditor groups want to have separate briefing

20   on that?  I guess I need to hear from them today, but I don't

21   know why they can't --

22        MR. STAMER:  You'll hear from the indenture trustee

23   and --

24        THE COURT:  Yeah.

25        MR. STAMER:  -- you'll hear from the official

PG&E Corp., Pacific Gas & Electric Co.

1  creditors' committee.

2       THE COURT:  Yeah.  Okay.

3       MR. STAMER:  So leaving aside the two additional ad

4  hoc groups that have surfaced, that would be our preference

5  that we don't just collaborate on one brief that we -- and we

6  can talk about appropriate page limits and all that, but we

7  would rather not do it with one consolidated brief.

8       THE COURT:  Okay.  But are you -- do you have a

9  problem with the timetable for that one?

10      MR. STAMER:  Again, what we'd like to do is kind of

11 roll the entire schedule to the extent -- to the extent we can.

12 So the arguments would be later in January or the --

13      THE COURT:  Well, wait; for the post-petition, now

14 we've got November 8, November 22nd, and December --

15      MR. STAMER:  December 11th.

16      THE COURT:  -- 11.  December 11.  So you're proposing

17 moving that out --

18      MR. STAMER:  Exactly.

19      THE COURT:  -- to a later -- to how far?

20      MR. STAMER:  We'd ask for a month.

21      THE COURT:  And why?  I guess my question is, for

22 somebody that wants to move the plan faster, why do you want to

23 slow down this process?

24      MR. STAMER:  Your Honor -- I'm sorry.  So to the

25 extent we're talking about operating under our construct, so

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   getting a head start on the issues in our plan upfront, then I

2   think the only thing we probably need to move is the January 6

3   date --

4            THE COURT:  Okay.

5            MR. STAMER:  -- because people aren't available.

6            THE COURT:  I can accommodate that.

7            MR. STAMER:  Okay.

8            THE COURT:  But January 6th is not a post-petition-

9   interest date.

10           MR. STAMER:  No, I'm sorry; that's the separate --

11           THE COURT:  Okay.  So --

12           MR. STAMER:  That's make-whole.  That's --

13           THE COURT:  So let's --

14           MR. STAMER:  -- redemption premium.

15           THE COURT:  Just for a minute --

16           MR. STAMER:  Okay.

17           THE COURT:  You, speaking for your client, have a

18  problem with November 8th, November 22nd, December 11, on

19  post -- on the post-petition interest and related question?

20           MR. STAMER:  Your Honor, we would like -- we would

21  like to push that for a limited period of time, to give

22  everybody -- whether it's a week, two weeks, three weeks,

23  whatever --

24           THE COURT:  Give me some specifics and I'll see if it

25  works.  I mean, I've got a calendar.  I don't have a huge trial

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   crushed with other matters, but I still have to do certain

2   things.  So tell me what you think will work.

3            MR. STAMER:  Why don't we move everything two weeks.

4            THE COURT:  And can you tell me --

5            MR. KAROTKIN:  Your Honor, it was already moved two

6   weeks by their delay.

7            THE COURT:  Yeah.

8            MR. KAROTKIN:  I mean, this is ridiculous.

9            THE COURT:  But why is this necessary, Mr. Stamer?

10  These are just legal arguments.  I mean, is this something --

11  somebody has pressing personal commitments or --

12           MR. STAMER:  I -- again, they're important issues; we

13  just want to make sure that we have appropriate -- and we've

14  got a number of people involved in the process.

15           THE COURT:  Today's October 23rd.  The first brief

16  would be due in two weeks.

17           MR. STAMER:  I understand, Your Honor.  I understand,

18  Your Honor.  If there's flex in the schedule --

19           THE COURT:  See, I'm having a little bit of a problem

20  saying we got this time, we want to go quick, quick, quick,

21  but, by the way, slow down the briefing here.

22           I'll tell you what.

23           MR. STAMER:  Sure.

24           THE COURT:  Mr. Stamer, for post-petition interest,

25  I'm going to stick at least tentatively with the dates Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Karotkin suggested.  I'll wait and hear from other parties that

2    want to be heard.

3            Now, on the make-whole and on the

4    impaired/unimpaired -- I got to keep my dates straight here.

5    Yeah.  We've got -- I'm sorry, I got my dates mixed up.  Yeah,

6    we got the November 21st, December 13, January 6.  January 6 is

7    not convenient; we'll make it another January date.  But what

8    is your pitch for changing the opening and reply-brief dates

9    for the November 21 and December 13 date?

10           MR. STAMER:  Your Honor, I had very little success

11   asking to move the original dates, so all I would ask at this

12   point is to move the January 6 date to the following week.

13           THE COURT:  Mr. --

14           MR. STAMER:  I understand the need for efficiency, and

15   our hope is we can move this process along very quickly.  My

16   only point was, if we're doing it as a dual track where we're

17   not targeting a January 18th confirmation hearing or initial

18   confirmation hearing, then there's more slack in the --

19           THE COURT:  I'm not saying --

20           MR. STAMER:  -- in the schedule.

21           THE COURT:  -- that we aren't.  I haven't --

22           MR. STAMER:  Oh.  Okay.

23           THE COURT:  -- heard from the other side on that.  I

24   mean, I realize, as I said at the start of the hearing, that,

25   having read the briefs from yesterday that came in and got

PG&E Corp., Pacific Gas & Electric Co.

1    (sic) from you yesterday, I realized that even my own thinking

2    of some of these dates may have changed. And I -- this is

3    very, very fresh --

4              MR. STAMER: I --

5              THE COURT: -- for me to even process.

6              MR. STAMER: -- completely understand.

7              THE COURT: So what is -- what date in January is more

8    convenient for you for argument? And again, is it personal or

9    is it someone other -- again, I don't need to know anybody's

10   personal schedule. I just want to know when is the --

11             MR. STAMER: If we can do it the -- if we can do it

12   the following week.

13             THE COURT: Mr. --

14             MR. STAMER: Any day the following week is --

15             UNIDENTIFIED SPEAKER: We can do it on the 14th.

16             THE COURT: Huh?

17             MR. STAMER: -- probably fine.

18             UNIDENTIFIED SPEAKER: January 14.

19             THE COURT: 14th.

20             MR. STAMER: January 14. Okay.

21             THE COURT: Okay, let's do this, then, because I want

22   to let other people speak: So I'm going to -- I'm going to

23   make one change to the dates that I scheduled with Mr.

24   Karotkin, and that's to move that January date from the 6th to

25   the 14th. And I guess what somebody needs to tell me about is

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   whether we do separate briefs.  But I need to hear from people

2   on that.  I can't keep track of them all.  So -- I mean, I

3   managed to do it.  We did it on the 502(c); we do separate

4   briefs.  We're doing it.

5           MR. STAMER:  Okay.  Thank you, Judge.

6           THE COURT:  All right.  So who wishes to be heard on

7   that?  Mr. -- for the creditors' committee.

8           MR. BRAY:  Good morning, Your Honor.  Gregory --

9           THE COURT:  Yes, Mr. --

10          MR. BRAY:  -- Bray, Milbank LLP --

11          THE COURT:  Right.

12          MR. BRAY:  -- counsel for the committee.

13          THE COURT:  Right.  Mr. Bray.

14          MR. BRAY:  On the dates, my comments are in the

15  context of the question you've asked on the other issue of fast

16  track.  I will note the committee favors fast-tracking as much

17  as we possibly can in this case.

18          THE COURT:  Okay.

19          MR. BRAY:  We have expressed our concern several times

20  to the Court.

21          THE COURT:  So you like those days we just heard?

22          MR. BRAY:  Well, we'll get to those.  Yes.  I'm not

23  disagreeing with the dates.  But as a general matter, as many

24  confirmation issues as we can fast-track, the better.  If we

25  could fast-track a confirmation --

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  Are there some other ones --

2    MR. BRAY:  -- or both --

3    THE COURT:  -- you can think of that, no, you

4  haven't --

5    MR. BRAY:  We're going to give that more thought.

6  Obviously, Mr. Stamer, the bondholders, and the TCC have made a

7  proposal to you about fast-tracking confirmation.  We find it

8  intriguing.  I understand that there are --

9    THE COURT:  I'm not opposed to it.

10    MR. BRAY:  -- issues with it.  I --

11    THE COURT:  I just have to --

12    MR. BRAY:  I understand.

13    THE COURT:  -- absorb it.

14    MR. BRAY:  And I am qualifying what I'm about to say,

15  by that.  What I'm about to say is what I said in my letter to

16  you in response to Mr. Karotkin's letter, which is, we did

17  have -- we have discussed the dates Mr. Karotkin laid out.

18  There's no -- we're not going to deny that.  What's changed

19  since then is that we have been contacted by a number of

20  parties who have large unsecured claims, advising us they wish

21  to participate in the process.  And as a fiduciary for the

22  unsecured creditors, at least the non-wildfire victims, we felt

23  it incumbent to advise the Court of that and to try to arrange

24  a briefing schedule that will accommodate the interest of the

25  various parties.

PG&E Corp., Pacific Gas & Electric Co.

1           The two issues you've mentioned -- PPI and the

2  redemption -- they're significant issues. And they may not be

3  squarely issues of first impression, but we think that

4  Cardelucci -- and I'm not asking you to respond -- does not

5  squarely address the issues. There are issues that go well

6  beyond that. And the make-whole issue is -- while not novel in

7  the Ninth Circuit, these particular facts, there's a lot of

8  briefing to be done. And there's significant dollar issues

9  involved. And as I said, a number of significant creditors

10  have advised us they want to be heard and participate --

11           THE COURT: Okay.

12           MR. BRAY: -- on this --

13           THE COURT: I'm not --

14           MR. BRAY: Yeah. Yeah.

15           THE COURT: -- saying no.

16           MR. BRAY: Yeah. -- as they would in confirmation.

17           So having said that --

18           THE COURT: Well, I mean, again, every -- I'll keep

19  repeating it. To me, we are dealing with confirmation right

20  now. We're breaking it into little pieces.

21           MR. BRAY: And that's exactly why I think people are

22  saying they want to be heard --

23           THE COURT: Okay.

24           MR. BRAY: -- as they would --

25           THE COURT: That's fine.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. BRAY:  -- at confirmation.  We're going to treat

2    it in that fashion as well, Your Honor.

3        Having said that, we do intend to submit briefs on

4    both issues.  The PPI issue, the post-petition-interest issue,

5    squarely affects our constituency, so we will be active in that

6    briefing.

7        THE COURT:  No, that's fine.  I --

8        MR. BRAY:  Yeah.

9        THE COURT:  But tell me what you have --

10       MR. BRAY:  The --

11       THE COURT:  -- position on the timing.

12       MR. BRAY:  I -- we're fine, as the committee, with the

13   dates you've raised.  I'm not going to speak for others,

14   because some creditors have just been made aware of what's

15   happening and they may need more time.  We've been aware of the

16   issues for a while.  But no notice went out to creditors, other

17   than what happened in the courtroom.  So I think you're going

18   to hear from some people they were sort of caught off guard by

19   this.  That's why we pulled back from the negotiations, to give

20   them a chance to be heard.  I know I'm being repetitive on

21   this, but that was important to us.

22       Having said that, and after you've heard from them and

23   weighed the various issues, we're fine proceeding on the time

24   line that you've outlined as modified through your various

25   discussions here.  We do think that separate briefs are

PG&E Corp., Pacific Gas & Electric Co.

1  probably required.  I know you don't want to read the same

2  brief ten times, and the parties will have to try to manage

3  that, but I suspect that there will be parties that will take

4  divergent or separate interests here and they will want to

5  brief those issues.

6          THE COURT:  Okay.

7          MR. BRAY:  And I think that's the main point I want to

8  make.  And where we probably part company with the debtor is we

9  do believe that separate briefing, for the issues -- and then

10 multiple briefs, too, on each issue, in other words, multiple

11 parties will want to submit on the issues -- that's the

12 important issue for us, Your Honor.

13         THE COURT:  Okay.  All right, so, Mr. Julian, let's

14 hear from --

15         Or, Ms. Dumas, do you want to speak to these issues

16 specifically?  Because I'm seeing -- the other attorneys want

17 to be heard.  So -- I don't know whether you do or don't, on

18 the schedule.

19         MS. DUMAS:  Your Honor, the TCC believes that these --

20 Cecily Dumas, Baker Hostetler, appearing on behalf of the

21 official committee of tort claimants.

22         These, as Mr. Bray said, are extremely important

23 issues in the case, issues of --

24         THE COURT:  They don't quite affect your clients

25 specifically, though, right?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MS. DUMAS:  They don't affect us --

2          THE COURT:  Yeah.

3          MS. DUMAS:  -- specifically, which is why we're

4  monitoring.  We're going to stand down on arguments about

5  briefing.  We'll accommodate other parties.  But we do believe

6  that they are threshold issues that should be addressed by the

7  Court sooner rather than later.

8          THE COURT:  But the invitation's still to you and

9  your --

10          MS. DUMAS:  Absolutely.

11          THE COURT:  -- colleagues, too, to make sure, if there

12  are other confirmation issues that can be ticked off and dealt

13  with earlier -- I realize that there are some issues doing

14  that, but I think it -- something I'm trying to do.  You don't

15  have to do it today but, I mean, if it's something that --

16  something we should remember to get addressed, let's do it no

17  matter which time line we're on here.

18          MS. DUMAS:  Yeah; thank you, sir.

19          THE COURT:  Okay?

20          MS. DUMAS:  That's -- we appreciate that suggestion

21  this morning, and we're taking it to heart.  Nothing is on our

22  minds today, but we'll bring it back to Your Honor.

23          THE COURT:  Okay.

24          All right, so I have a number of counsel standing.

25  Let's get appearances.  And tell me -- again, I've read --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  trying to keep track of everybody, but give me your name.

2  MR. D. FELDMAN:  Good morning, Your Honor.  David

3  Feldman, Gibson Dunn & Crutcher, on behalf of the newly formed

4  ad hoc committee of holders of trade claims.

5  THE COURT:  Ad hoc, trade.

6  MR. D. FELDMAN:  I represent --

7  THE COURT:  Okay.

8  MR. D. FELDMAN:  -- a -- we filed a 2019 in this case

9  and expect that we'll be filing a supplemental 2019 probably in

10 the near term.  We represent several hundred million dollars'

11 worth of trade claims in this case, for holders of the claims,

12 who have provided services and goods to this company.

13 I frankly -- my retention in this case is principally

14 to deal with the issue of post-petition interest.  Frankly, we

15 have problems with, and believe there are objections --

16 appropriate objections to, both the debtors' plan and the TCC

17 ad hoc noteholder plan on the post-petition-interest rate

18 that's being proposed to the alleged unimpaired class of

19 general unsecured claims.  We'd like to be heard on that issue.

20 THE COURT:  Well, give me a preview.  I mean,

21 obviously we know what the debtors' position is with

22 Cardelucci, but --

23 MR. D. FELDMAN:  We believe that Cardelucci --

24 THE COURT:  -- you --

25 MR. D. FELDMAN:  -- as you've heard from --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  -- you believe it doesn't apply?

2          MR. D. FELDMAN:  -- as you've heard from others, does

3    not apply --

4          THE COURT:  Okay.

5          MR. D. FELDMAN:  -- does not apply in this case.

6          THE COURT:  So what does?

7          MR. D. FELDMAN:  And --

8          THE COURT:  Doesn't it vary with your different

9    creditors for the trade?

10         MR. D. FELDMAN:  I think that our arguments are a

11   corollary to the bondholder arguments, that if the contract

12   rate of interest is appropriate for them, that a contract rate

13   or an implied contract rate of interest for trade creditors

14   would be applicable in our case.  California Civil Code 3289

15   provides that if you have a contractual relationship with a

16   company and that contract does not specify an interest rate,

17   the California state statute says you're entitled to interest

18   at ten percent.

19         THE COURT:  What does the bankruptcy law say?

20         MR. D. FELDMAN:  What does the bankruptcy law say on

21   that?

22         THE COURT:  Well, that's where we're applying this.

23         MR. D. FELDMAN:  I believe that there's -- I believe

24   there's Ninth Circuit precedent -- and I don't want to go into

25   all the arguments today --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  No, I just want a preview of what your

2  issue is.  In other words --

3    MR. D. FELDMAN:  I believe there're Ninth -- there's

4  Ninth Circuit precedent --

5    THE COURT:  Let me rephrase my question.

6    MR. D. FELDMAN:  Yeah.

7    THE COURT:  If I take the suggestion that maybe

8  Cardelucci doesn't apply here --

9    MR. D. FELDMAN:  Right.

10    THE COURT:  -- what does apply?

11    MR. D. FELDMAN:  I think that one of the cases that

12  you would look to would be Sylmar, Ninth Circuit case --

13    THE COURT:  Right.

14    MR. D. FELDMAN:  -- in which the court approved in

15  that case an unimpaired class of contract rate of interest for

16  those with an interest rate, and a ten-percent state statutory

17  rate for those that didn't have a contractual --

18    THE COURT:  Okay.

19    MR. D. FELDMAN:  -- express contractual rate of

20  interest.

21    THE COURT:  All right, but it still is --

22    MR. D. FELDMAN:  I think that squarely applies.

23    THE COURT:  -- a question of -- well, I mean, it's a

24  question of law applied to -- Creditor A might be one rate,

25  Creditor B another rate, in your case.  I mean, are your

(97) operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  creditors all similarly situated in that --

2          MR. D. FELDMAN:  Yes.

3          THE COURT:  Okay.  Well --

4          MR. D. FELDMAN:  Yes.

5          THE COURT:  -- all right, so what do you want me to

6  do?  Do you just want to --

7          MR. D. FELDMAN:  So we'd like -- we'd --

8          THE COURT:  -- have a right to brief?

9          MR. D. FELDMAN:  We'd like to be -- we'd like to have

10  the opportunity to write our own brief.  We don't intend to

11  duplicate the efforts of others.

12          THE COURT:  Okay.

13          MR. D. FELDMAN:  But we would like to file our own

14  brief.

15          THE COURT:  You have any problem with the schedule?

16          MR. D. FELDMAN:  We do not have any issues with the

17  schedule.  We're ready to -- we're ready --

18          THE COURT:  Okay, I'll come back to --

19          MR. D. FELDMAN:  -- to go.

20          THE COURT:  -- the briefing in a minute.  Thank you,

21  Mr. Feldman.

22          MR. D. FELDMAN:  Thank you, Your Honor.

23          THE COURT:  Who's next?

24          Good morning.

25          MR. GRAULICH:  Good morning, Your Honor.  Timothy

PG&E Corp., Pacific Gas & Electric Co.

1    Graulich of Davis Polk & Wardwell, on behalf of Citibank as

2    agent for the three-billion-dollar-utility revolver.

3          THE COURT:  I just -- could you spell your name for

4    me?  I didn't recognize it.

5          MR. GRAULICH:  Sure.  Last name is G-R-A-U-L-I-C-H.

6          THE COURT:  Mr. Graulich.  Okay, thank you.

7          MR. GRAULICH:  Thank you, Your Honor.  And Your Honor

8    may recall, my firm had sent a letter to Your Honor about this

9    issue in response to Mr. Karotkin's original letter with

10   respect to briefing.  But very briefly, Your Honor; I think

11   that the banks and the bonds are probably pretty aligned with

12   respect to these issues, provided that we're talking about just

13   the legal issues.  And to be clear, the legal issue I'm talking

14   about is post-petition interest.

15         THE COURT:  Right.

16         MR. GRAULICH:  The banks don't have a view with

17   respect to make-whole.

18         THE COURT:  Right.

19         MR. GRAULICH:  And as to post-petition interest, the

20   legal question -- I think we could find -- we would reserve our

21   right to file our own separate brief but, frankly, we've been

22   working well with the other similarly situated parties.  It may

23   well be that --

24         THE COURT:  But you're on the --

25         MR. GRAULICH:  -- we don't need to.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  -- you're on the side of the senior

2    bondholders, right?

3    MR. GRAULICH:  Correct, Your Honor.  With respect to

4    the legal issue, I just wanted to flag --

5    THE COURT:  Yeah.

6    MR. GRAULICH:  -- the fact, as long as we keep this to

7    the core legal issue, I think there's general alignment and we

8    may be able to minimize or even eliminate what of a -- a

9    separate pleading that we may need to file.

10    I will note that, if there is contractual rate of

11    interest, how we go about calculating that would be on a -- we

12    have parochial questions with respect to that, that we've been

13    in discussions with the company about since almost the date of

14    the filing.  So, provided that we are keeping this to the legal

15    question, that's great.  There may be a second question in the

16    future, factually, about how one would go about calculating

17    that contract rate of interest --

18    THE COURT:  Yeah.  No, that's fine.

19    MR. GRAULICH:  -- for the bank debt.

20    THE COURT:  Okay, so -- but it sounds to me like

21    you're willing to just join with the senior bondholders on a --

22    join in the brief with them?

23    MR. GRAULICH:  Well, let's put it this way:  I think,

24    whether it's the senior bondholders or the creditors'

25    committee, because I understand that they both may want to file

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    something, we certainly don't want to speak for others to

2    combine other briefs that may need to be separate.  But our

3    intention is to work cooperatively with them.  If we are okay

4    with what's being filed, we may sign off on that brief or just

5    a short joinder.

6                THE COURT:  A "me too".

7                MR. GRAULICH:  Yeah.  And if there's -- and, for

8    whatever reason, if it turns out that we -- and this is not

9    what I would expect; if we can't collaborate, we may file

10   something separately.  But that's not my -- that's not my

11   intention or --

12               THE COURT:  Okay.

13               MR. GRAULICH:  -- impression at this moment.

14               THE COURT:  Okay.

15               MR. GRAULICH:  Thank you, Your Honor.

16               THE COURT:  Fine.  Thank you, Mr. Graulich.

17               Good morning.  Still morning.

18               MR. ABRAMS:  Your Honor, my name is Will Abrams.

19   Respectfully, a little concerned about the schedule, in terms

20   of all parties --

21               THE COURT:  Just tell me who your client is.

22               MR. ABRAMS:  Sure.  I'm a party to the CPUC

23   proceedings, a wildfire survivor, and a claimant as well, and

24   just very concerned that the schedule associated with the

25   proceedings isn't taking into consideration the feasibility

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  earlier in the schedule.  So --

2      THE COURT:  Sorry; taking the schedule what?

3      MR. ABRAMS:  The feasibility --

4      THE COURT:  What --

5      MR. ABRAMS:  -- earlier in the schedule.  So, part of

6  what I don't see in any of the plans that are being proposed is

7  risk mitigation and what's going to occur there.

8      THE COURT:  We're only --

9      MR. ABRAMS:  And none of the --

10     THE COURT:  We're only talking about timing for

11 briefing some very legal questions at the moment, Mr. Abrams.

12 I'll come back to you when I can, but I'm trying to line up all

13 the lawyers representing the groups who want to be heard on

14 this interest issue.  I can't deal with other matters at the

15 moment.

16     MR. ABRAMS:  Okay.  I can come back on that.  I

17 apologize, Your Honor.

18     THE COURT:  Yeah, I mean, it's not --

19     MR. ABRAMS:  Just concerned that --

20     THE COURT:  No, you don't have to apologize.  I --

21     MR. ABRAMS:  -- that we're moving forward very quickly

22 to meet an arbitrary deadline while at the same time missing

23 the mark in terms of focusing on safety.  And given the current

24 circumstances and --

25     THE COURT:  Mr. Abrams, my job is to deal with whether

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  a plan can be confirmed.  And --

2      MR. ABRAMS:  I understand, Your Honor.

3      THE COURT:  And if you or someone else believes that

4  one or the others of these plans has some safety concerns, I'm

5  not sure that I'm the right one to say; but if I am, you object

6  to confirmation and raise your argument or you take it up with

7  the CPUC.

8      MR. ABRAMS:  But I don't see that being introduced in

9  terms of the schedule, in terms of --

10      THE COURT:  Well, because we're talking about --

11      MR. ABRAMS:  -- parties coming forward and saying,

12  here's what we're going to do to mitigate risk, to make sure --

13      THE COURT:  Mr. Abram (sic) --

14      MR. ABRAMS:  -- that our dollars --

15      THE COURT:  Mr. Abram --

16      MR. ABRAMS:  -- are appropriate for --

17      THE COURT:  Mr. Abram --

18      MR. ABRAMS:  -- how we're moving forward.

19      THE COURT:  Mr. Abram, I think you're missing the

20  point.  I'm trying to schedule how to decide whether this plan

21  can be confirmed.  Safety is important; it's not necessarily

22  something I can deal with.  But to the extent that the

23  bankruptcy court can deal with it, I'll deal with it, but not

24  this morning, because I'm dealing with these other issues this

25  morning.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1        MR. ABRAMS:  I understand, Your Honor.

2        THE COURT:  Okay.  Thank you.

3        MR. ABRAMS:  Thank you.

4        THE COURT:  All right.  For briefing schedules, who's

5    up?

6        MR. GUESS:  Good morning, Your Honor.  David Guess

7    with Bienert Katzman.  With me is my co-counsel, Adam Harris of

8    Schulte Roth & Zabel.  We're here on behalf of Anchorage

9    Capital Group, Centerbridge Partners, Fidelity Management and

10   Research Company, Silver Point Capital, and SteelMill --

11       THE COURT:  And what kind of --

12       MR. GUESS:  -- Master Fund.

13       THE COURT:  -- creditors are they?  What --

14       MR. GUESS:  These are unsecured -- well, they -- we

15   filed a 2019 statement yesterday --

16       THE COURT:  Just tell me --

17       MR. GUESS:  -- and an amended one this morning.

18       THE COURT:  Just tell me what the nature of their

19   claims --

20       MR. GUESS:  They --

21       THE COURT:  I mean, what are they?

22       MR. GUESS:  They're multiple natures, but they have

23   unsecured bond debt.

24       THE COURT:  Okay.

25       MR. GUESS:  And then we're representing them in that

PG&E Corp., Pacific Gas & Electric Co.

1    capacity.

2            THE COURT:  Okay.  And what's your desire?

3            MR. GUESS:  Mr. Harris -- we filed a pro hac

4    application for him yesterday.

5            THE COURT:  It's okay.  He can be heard.

6            MR. GUESS:  So we -- with your permission, we'd like

7    him to speak.

8            THE COURT:  Sure.

9            Good morning, Mr. Harris.

10           MR. HARRIS:  Thank you, Your --

11           THE COURT:  I'm sorry.  And the other gentleman, I

12   just didn't get your name.

13           MR. HARRIS:  David Guess.

14           THE COURT:  Guess?

15           Okay, Mr. Harris, what would you like to have me do?

16           MR. HARRIS:  Your Honor, I would like to answer

17   actually one of the questions that you posed to multiple

18   counsel this morning, about whether there're issues, other than

19   those that people have been focusing on, that give rise to

20   serious concerns regarding confirmation and should be put into

21   the calendar.  If Your Honor would like to finish up on the

22   briefing schedule with respect to the matters you've been

23   dealing with --

24           THE COURT:  Well, I mean, that's what I --

25           MR. HARRIS:  -- it's --

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  I've got -- I'm trying to keep track of

2  all the briefing schedules, but I --

3      MR. HARRIS:  If you'd like to finish that up, Your

4  Honor, we can come back -- we can come back --

5      THE COURT:  Well, do you have some specifics --

6      MR. HARRIS:  Not on those --

7      THE COURT:  -- on the briefing schedule?

8      MR. HARRIS:  -- specific ones.  I wanted to bring to

9  Your Honor's attention some other matters which I think need to

10  be put on their own set of schedules.  But I'd be happy to --

11      THE COURT:  Yeah, let's --

12      MR. HARRIS:  -- allow you to finish up on this.

13      THE COURT:  -- let's finish the schedule -- my

14  briefing schedule.

15      MR. HARRIS:  That's fine, Your Honor.

16      THE COURT:  Thank you, Mr. Harris.

17      MR. SILFEN:  Good afternoon, Your Honor.  Andrew

18  Silfen with Arent Fox, counsel -- well, it's afternoon for me

19  in New York -- BOKF, the indenture trustee for the senior notes

20  in --

21      THE COURT:  Right.

22      MR. SILFEN:  -- the principal amount -- excess of

23  seventeen-and-a-half billion dollars.  I guess I get to go

24  clean up and kind of tie this all together.

25      And what Mr. Stamer's presented is very appealable

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    (sic) and something we should all think about.  I just want to

2    address the questions you have with respect to scheduling of

3    the ripe disputes.  And we have been active the whole time in

4    trying --

5              THE COURT:  Yes.

6              MR. SILFEN:  -- to get an agreement to present to Your

7    Honor, and we just want a workable, fair, and balanced schedule

8    that enables the issues to get fully briefed and presented to

9    Your Honor and considered by Your Honor.  And towards that end,

10   the group that was involved that was here at the last hearing

11   agreed to concurrent simultaneous open briefs and concurrent

12   simultaneous reply briefs.

13             Where we had a disagreement is as to page limits and a

14   disagreement as to whether each side would file one brief or

15   individual --

16             THE COURT:  Right.

17             MR. SILFEN:  -- briefs, and we want to just make sure

18   there's reasonable time as we work through this today that we

19   take all considerations in setting the schedule.

20             So the easier one which is post-petition interest

21   where there appears to be some alignment among the parties, at

22   least as to the legal issue, there are separate issues as to

23   each holder or -- no, sorry, as to each claim --

24             THE COURT:  It's not what we're dealing with.

25             MR. SILFEN:  -- as to amount.  But if Your Honor is

PG&E Corp., Pacific Gas & Electric Co.

1    going to move into a direction of coordination between the

2    side -- our side versus their side, or Your Honor's going to

3    try to implement some process where there is a joint brief, and

4    maybe supplement briefs, we're going to need more time than the

5    date that's been presented by Mr. Karotkin.

6         It's not the drafting per se that can't be made on a

7    day, but if there's going to be an obligation to coordinate or

8    some kind of joint brief, at least amongst some of the parties,

9    I think realistically it's just going to take a little more

10   time --

11        THE COURT:  When --

12        MR. SILFEN:  -- to get their -- well --

13        THE COURT:  -- when -- what are you proposing?

14        MR. SILFEN:  It's easy for me to say.  But --

15        THE COURT:  Yeah, I know.  Well --

16        MR. SILFEN:  -- well, probably a couple of more weeks

17   with respect to post-petition interest would probably make

18   sense and would probably be workable.

19        The harder issue is the make whole optional redemption

20   which is in a point issue to the senior notes, and a point

21   issue to the indentured trustee.  It arises under the indenture

22   where the successor's indenture -- the successor indenture is

23   the signatory to the indenture in the one along with the senior

24   notes who enforces --

25        THE COURT:  Well, again, just tell me what the problem

PG&E Corp., Pacific Gas & Electric Co.

1    is.

2            MR. SILFEN:  Okay.  So --

3            THE COURT:  We're talking about a brief in a month.

4            MR. SILFEN:  Right.  So here if you look at, just to

5    kind of illustrate the dispute, if you look at Momentive, EFH,

6    or Ultra which are the same kinds of disputes in other

7    circuits --

8            THE COURT:  I don't know what you're talking about.  I

9    don't know those cases.

10           MR. SILFEN:  -- the briefs -- the briefs in those

11   cases were somewhere between thirty-five and fifty pages, and

12   it's a complex issue and it's a complex issue not only because

13   of incorporating the indentures and the indenture language --

14   there's three indentures, there's twenty-five series of

15   notes -- there's the application of New York law and California

16   law in the indentures, there's state law and federal law we

17   suspect implicated.  And again, kind of put this in context

18   because I don't want the burden to go on us, the debtor has the

19   election to refinance the notes or reinstate.  It's making the

20   choice to refinance.  That is triggering the make whole

21   optional redemption.

22           So it's the decision that the debtor makes.  The

23   debtor has the right to make that decision subject to the Code,

24   but the dispute is arising because of the debtor's election.

25           I think that with that in mind, and given the

PG&E Corp., Pacific Gas & Electric Co.

1    magnitude of the issue and the complexity, and we want to

2    present it in the best way to Your Honor so Your Honor can

3    consider it an easy and efficient way rather than just, for

4    lack of a better word, vomit on you, is -- and I say that to

5    make a dramatic point because we want to present this in a way

6    that you can make the best ruling possible presented on the

7    papers and argument.  That's one.

8          Also, I think the parties are not as aligned with

9    respect to make sure all optional redemption as the post-

10   petition interest.  So it's distinguishing.

11         So I think what I'm suggesting is for the make whole

12   optional redemption that you push it out, and what I'm saying

13   if we're doing it in the most accelerated time, which we all

14   agree, we all agree that day at Your Honor's suggestion that it

15   was important to break out these issues, that they're gating

16   issues, and they need to be accelerated basis.  I guess the

17   question is how accelerated.

18         Opening briefs, we suggest November 27th.

19         THE COURT:  That's six full days from what's proposed.

20         MR. SILFEN:  Well, I would ask for more but I'm trying

21   to be reasonable and work with the parties here, because I know

22   Mr. Karotkin's going to stand up and Mr. Bennett's going to

23   stand up and say we got to move, we got to move, we got to

24   move.  But any day is helpful.

25         So we're suggesting November 27th, December 20th, and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      then have arguments sometime in January.

2                 THE COURT:  How about --

3                 MR. SILFEN:  If you're asking me what we real --

4                 THE COURT:  How about 14th?

5                 UNIDENTIFIED SPEAKER:  That's fine with me.

6                 THE COURT:  You're --

7                 MR. SILFEN:  You know, we had originally propo --

8                 THE COURT:  You're easy.

9                 MR. SILFEN:  We had originally proposed and

10     suggested -- and the parties talked about this -- that having

11     the arguments for the post-petition interest and the make whole

12     on different days.

13                THE COURT:  I have to ask the folks to stop talking

14     over here.  I can't -- I can't get you on the record and I

15     can't hear counsel speak.

16                MR. SILFEN:  We had originally discussed, at least the

17     original parties who were trying to come up with a schedule

18     that it may be in your interest and in the -- since the issues

19     are significant, not to have the post-petition interest and the

20     make whole on the same day.  That's what we had proposed.

21                THE COURT:  But we're not --

22                MR. SILFEN:  If Your Honor wants them both on the say

23     that --

24                THE COURT:  They're not.  They're not.  I mean,

25     you're --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. SILFEN:  I just --

2          THE COURT:  -- we dealt with this an hour ago.  We've

3    got a schedule and it's moving faster on --

4          MR. SILFEN:  That's fine.

5          THE COURT:  -- post-petition interests, and the only

6    question is whether other people join in.

7          So you've proposed moving the opening brief on the

8    make whole by six days.  Done.  You got it.  Not a problem.

9    But I mean --

10          MR. SILFEN:  And the reply brief, we're suggesting is

11    December 20th.

12          UNIDENTIFIED SPEAKER:  And the argument?

13          UNIDENTIFIED SPEAKER:  I think it's January.  That's

14    fine.

15          THE COURT:  I mean, look -- look, that doesn't strike

16    me as difficult.  What about combining the brief, though?  You

17    said you need separate briefs, right?

18          MR. SILFEN:  Well, in having combined briefs assumes

19    that the parties are aligned, right.  And --

20          THE COURT:  Well, of course.  I meant from --

21          MR. SILFEN:  -- and it's not --

22          THE COURT:  I mean combining with the party you're

23    aligned with.

24          MR. SILFEN:  As indentured trustee, we're charged to

25    make and protect the indenture and the rights under the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    indenture, and our rights are for all the holders, and our

2    arguments are for the all the holders.

3         It's not exactly here that we're aligned with any

4    other party.  The creditors' committee wants to be heard on the

5    issue, and the senior notes and, obviously, the senior notes

6    have a right to be heard on this issue.

7         I think you're only on our side, basically, talking

8    about maybe three parties.  We're happy to coordinate, and I'm

9    sure we all will coordinate.

10        THE COURT:  Okay.

11        MR. SILFEN:  But coordination is different than

12   putting -- requiring one brief.

13        THE COURT:  I know.  I got it.

14        MR. SILFEN:  All right.

15        THE COURT:  Okay.  Anybody else want to be heard on

16   the briefing schedule?

17        Mr. Minnick?  Good morning.

18        MR. MINNICK:  Good morning, Your Honor.  M. David

19   Minnick of the Pillsbury firm on behalf of Wilmington Trust

20   National Association, the successor administrative agent on the

21   parent company's revolving credit facility syndicate.

22        Mine is a more mundane request, unfortunately, Your

23   Honor.  We are the successor trustee.  We have had a number of

24   fires trade in our syndicate, and so we are awaiting

25   instructions as to what position they will take, and our goal

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    here today is simply to preserve the opportunity should we have

2    a position that requires us to go forward and brief, and that

3    we would first, of course, try to work with the party on either

4    side that we are pursuing as a similar position that --

5              THE COURT:  Is this for a make whole or for post-

6    petition?

7              MR. MINNICK:  Post-petition interest, Your Honor.

8              THE COURT:  And -- okay, but --

9              MR. MINNICK:  Yeah, so we --

10             THE COURT:  -- but you don't --

11             MR. MINNICK:  -- the issue we may not need to do

12   anything, but we have to reserve the right to be able to file

13   something on instructions assuming we can't get an agreement

14   with --

15             THE COURT:  Well, tell your client your opening briefs

16   are due on November 8th, but you're probably going to be on the

17   reply side anyway.  You're not going with the --

18             MR. MINNICK:  That's fine.  So long as we can have --

19             THE COURT:  -- with the debtor's interest, right?

20             MR. MINNICK:  So long as we have the ability to put

21   something in front of Your Honor that was all we were asking

22   for.

23             THE COURT:  Okay.  Anyone else want to be heard?

24             Mr. Bennett are you here for someone from the

25   shareholder's side?  Are you going to be agreeing with the

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    debtor, Mr. Bennett, because if you are, that's fine.

2           MR. BENNETT:  With respect to the schedules that

3    you're working through, we are absolutely fine.  With respect

4    to Mr. Stamer's effort to accelerate one brief confirmation

5    over another, we would have a lot to say, but I don't think --

6           THE COURT:  Yeah, I'm going to come back and deal with

7    that separately.

8           MR. BENNETT:  -- we're dealing with that right now.

9           THE COURT:  Okay.  All right.  Well, look, here's what

10   I'm going to do.

11          MR. KAROTKIN:  Your Honor?

12          MS. MILLMAN:  Your Honor?

13          THE COURT:  Yes, on the phone.  Yes.

14          MS. MILLMAN:  Good afternoon.  This is Sherry Millman

15   with Stroock & Stroock & Lavan and I'm speaking on behalf of

16   Mizuho Bank which is the agent for the Colstro (ph.) term loan

17   in the amount of 350 million dollars.  Our issue is with

18   respect to post-petition interest only.  We are absolutely fine

19   with the amended schedule of submissions by November 8th, et

20   cetera.  We, likewise, do not know yet whether we would be

21   weighing in, but we would like to, of course, know that we

22   should have been weighing in.  If we do weigh in, we will work

23   cooperatively with those on our side.  We haven't communicated

24   with PG&E (indiscernible), but we do want the Court to know

25   that we need to file something additional and we'd like to have

PG&E Corp., Pacific Gas & Electric Co.

1    that right as well.

2         THE COURT:  Okay.  And thank you very much.  That's

3    noted.

4         MS. MILLMAN:  Thanks.

5         THE COURT:  Mr. Karotkin?

6         MR. KAROTKIN:  Yes, very briefly.

7         First of all, I didn't hear what Mr. Silfen said about

8    changing the make whole premium schedule.

9         THE COURT:  Well, I think he suggested six days, so I

10   was agreeable to moving it to the 27th, and then the reply on

11   the 20th of December.  But the date -- we've moved the date to

12   January 14th for the argument.

13        MR. KAROTKIN:  Yes, that's fine.  Okay.

14        THE COURT:  Yeah.  No, having -- Mr. Karotkin, I'm

15   probably going to put another burden on you to help me get this

16   all drafted out so it would clear.  I don't want to have the

17   oral transcript, or the written transcript be what everybody's

18   relying on.  So I thought it was going to be a little easier,

19   but there's too many people.  So we'll talk in a few minutes

20   about how to do it.

21        MR. KAROTKIN:  Okay.  That's fine.  I'd like to have

22   the opportunity, as Mr. Bennett said, to address Mr. Stamer's

23   comments about the confirmation scheduling.

24        I will note that with respect to multiple briefs or

25   them getting together to try to file one or two briefs, I find

PG&E Corp., Pacific Gas & Electric Co.

1    it hard to understand how the indentured trustee's views could

2    be different than Mr. Stamer's client's views since they're all

3    bondholders.  The indentured trustee is also on the UCC, so I

4    really don't understand how it would be difficult to

5    coordinate.

6            I don't want to delay this thing, that's for sure.  So

7    if they need to file multiple briefs and there's a reason to do

8    that, we're not going to fight them on that, but we would need,

9    if they are going to file multiple briefs, Your Honor, more

10   than thirty-five pages to address that.  So that's the request

11   we would make.

12           THE COURT:  Yeah.  It's hard for me to keep track of

13   all the pages for now, but I think I -- well, you deem more

14   than thirty-five, is that what you're saying?

15           MR. KAROTKIN:  Yes, sir.

16           THE COURT:  I mean, again, we're talking about

17   simultaneous briefs in both of these cases.

18           MR. KAROTKIN:  So I'm thinking certainly for the

19   reply.  Right?

20           THE COURT:  Okay.  I'll figure out what to do about

21   that.

22           MR. KAROTKIN:  Okay.  Thank you.

23           THE COURT:  All right.  Ten minutes?  Let's take a

24   ten-minute break and then we'll come back and talk about the

25   confirmation issues, and then more importantly get to the 9019

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  motion.

2      THE CLERK:  All rise.

3      (Recess from 11:54 a.m., until 12:08 p.m.)

4      THE CLERK:  All rise.  Court is now in session.

5      THE COURT:  So Mr. Karotkin, I think it would help me

6  if we wrap up the briefing issue by asking you to, perhaps, you

7  can coordinate with Mr. Zumbro, maybe just do -- maybe one

8  order would be sufficient, that just lays out the briefing

9  sequence for the three different things we talked about -- or

10  four, rather, post-petition, then make whole, impair or not

11  impair together, and then the 502(c), and I'm looking to you to

12  do it to draft it more thoroughly so the titles and the

13  terminology is clear so the reader knows what we're talking

14  about.  And I'll make -- and I think I'll run through the

15  deadlines and make sure they're consistent with what you've

16  said -- I mean, what you've noted.  And the one thing I'll ask

17  you to do is to submit a proposed order that leaves blank the

18  page limits and I'll just think about it after I've looked at

19  all these other points and fill them in -- and fill in the

20  blanks.  Is that doable?

21      MR. KAROTKIN:  Yes.

22      THE COURT:  Okay.

23      MR. KAROTKIN:  The only question with respect to

24  multiple briefs or not multiple briefs, how would you like to

25  address that?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  Yeah, let me think about that for a

2  minute, but just make sure we're clear on the dates.

3    So post-petition interests, the opening briefs,

4  November 8th; reply briefs, November 22nd; the oral argument,

5  December 11th at 10 a.m.; the make whole and impair/not impair

6  question, November 27; opening reply, December 20; and oral

7  argument, January 14th.

8    The dates for the 502(c) were a little easier.  That

9  was the debtor file its position on what isn't subject to

10  estimations on November 1st.  The opposition, item number 15

11  and the debtor's reply December 5th.  Excuse me -- yeah, and a

12  hearing on December 17th.  And --

13    UNIDENTIFIED SPEAKER:  Sorry, Your Honor.  There's one

14  other date.  The debtor's objection, December 5th and then the

15  creditors' reply December --

16    THE COURT:  Yeah, that's the one I forgot about.

17    UNIDENTIFIED SPEAKER:  -- December 12 with the

18  creditor's reply.

19    THE COURT:  Yeah, okay.  I'm sorry.

20    UNIDENTIFIED SPEAKER:  No, thank you, sir.

21    THE COURT:  That's right.  And I guess I'm just going

22  to have let people file their own briefs on these issues.  It's

23  just too hard to keep track of them.

24    MR. KAROTKIN:  Okay.

25    THE COURT:  Yeah, and I just -- I'll take my chances

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    on it.

2         Look, I'm going to make this argument that I expect

3    counsel to make an effort to coordinate with parties that are

4    similarly situated which is almost always adverse to the debtor

5    here on these issues, and do your best to file -- consolidate

6    the briefs and do not reinvent the wheel by telling me when the

7    Bankruptcy Code was enacted by Congress and when this case was

8    filed.  And -- but I'm just not going to -- I can't take the

9    risk of cutting one off when we're dealing with such major

10   issues.  So I'll just put some page limits in there, and I'll

11   take it from there.

12        Mr. Karotkin, you're just helping me keep track of the

13   schedule here and we'll take it from there.

14        MR. KAROTKIN:  Very well, sir.  We'll do that.

15        THE COURT:  Okay.  And the inverse condemnation.  I'm

16   sorry; I forgot about that.  We had already talked about that

17   and that's the one that wasn't very controversial.

18        MR. KAROTKIN:  You want us to wait for that as well?

19        THE COURT:  I guess so.

20        MR. KAROTKIN:  Sure.

21        THE COURT:  Let's put them all in one place --

22        MR. KAROTKIN:  Okay.

23        THE COURT:  -- so people tracking the case can know

24   what we're doing.

25        Okay.  So what's left is on the plan issue, and Mr.

PG&E Corp., Pacific Gas & Electric Co.

1    Stamer made his point, and you and Mr. Bennett want to be

2    heard.  And I don't know how I'm going to do anything more than

3    just listen to you today.  And there was one gentleman -- I'm

4    trying to keep track of the names -- that wanted -- Mr. -- one

5    second -- Mr. Harris wanted to be heard on a couple of

6    suggested other issues that he has that he thinks are relevant

7    to confirmation.  So -- but let's get your response to the time

8    line --

9         MR. KAROTKIN:  Okay.

10        THE COURT:  -- that Mr. Stamer's arguing, and I'll

11   hear what Mr. Bennett has to say.  I really want to get to the

12   main event here on our 9019 motion.

13        MR. KAROTKIN:  Well, okay.  Thank you, Your Honor.

14        Steven Karotkin, Weil, Gotshal & Manges for the

15   debtors.

16        I think probably the easiest way to summarize Mr.

17   Stamer's argument before the Court a few minutes ago was he

18   said argument number one, which is this case is unique and

19   unprecedented, and I guess because of that for some reason he's

20   asking you, as you noted Your Honor yourself, to ignore the law

21   on what happens with competing plans.

22        He also indicated that he's sure -- he's sure based on

23   discussions with the tort claimants' committee that under their

24   plan it will be successfully accepted notwithstanding --

25   notwithstanding what happens with Judge Donato.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    So even if Judge Donato comes in with an estimation of

2    well in excess of thirteen and a half billion on the tort

3    claims, don't worry, no problem, they'll accept the plan and

4    we'll move to confirmation.  Of course, there's no evidence of

5    that.  There's no evidence of even who sits on the tort

6    claimant's committee that has the ability to deliver any votes

7    or how many people they represent that have actually filed

8    claims in the case.  But let's take that -- they're asking you

9    just take that on faith, Your Honor, and accelerate our plan.

10   And effectively, what they're saying, Your Honor, is

11   despite representing to the Court in hearings on September

12   24th, on October 27th that if exclusivity were terminated, the

13   plans would move together.  What they now propose, and I think

14   you alluded to it, is they should usurp exclusivity for

15   themselves.

16   Having it modified and terminated was not good enough.

17   Now, their plan should move forward, and again, I think your

18   words, and dump the debtor's plan.  That's what they're asking

19   you to do.  And I think as you appropriately noted that's not

20   appropriate under Section 1121.  It would be unprecedented, and

21   it would completely undermine the debtor's statutory rights.

22   Again, Your Honor, as I mentioned at the outset of the

23   hearing, as we predicted -- as we predicted at the exclusivity

24   hearing, termination of exclusivity has not worked to promote a

25   consensus.  As we told you the ad hocs and the TCC have become

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   polarized entirely and now want to move forward solely with

2   their own plan.  That's not the way it should work.

3        And again, Your Honor, after you noted at those

4   hearings that the debtors have made substantial progress with

5   the subrogation settlement and with their plan, the amended

6   plan that they filed to incorporate, Your Honor, what has

7   happened in two weeks?  What has happened in two weeks that

8   weren't essentially doing what they're asking you to do to

9   strip the debtors of their rights to pursue their plan

10  consistent with Section 1121 of the Bankruptcy Code, and we

11  submit, Your Honor, nothing has happened.

12       At the exclusivity hearing, Your Honor, the TCC made

13  it very clear, absolutely clear to you that they would only

14  engage in mediation.  They were only engaged in mediation if

15  you agreed to terminate exclusivity.  Having done that, we say

16  to Your Honor now is the time to promptly appoint a mediator.

17  That is the way to move these cases forward, and let's see if

18  the TCC will live up to its word and its commitment to this

19  Court to mediate.  That's the way to get a consensus, not, Your

20  Honor, to let their plan proceed before the debtor's plan in

21  complete contravention of the statute.

22       Letting their plan go first will assure one thing,

23  Your Honor, and that's there will never be a global consensus

24  achieved in these cases.  That's for sure.

25       THE COURT:  Why do you think that's true?  I mean --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      MR. KAROTKIN:  Because as they've said, they want to

2   move expeditiously with their plan.  They're not interested in

3   discussing anything else.  Let's move forward, let's confirm

4   our plan, and let's see what happens.  The debtor's plan will

5   fail.  There's no interest -- let them stand up, Your Honor,

6   and say we are prepared.

7        Have they even put in their plan what they're offering

8   the subrogation claimants?  Have they said the nature of that

9   consideration?  No.

10       Have they said the nature of the consideration they've

11  proposed to fund the tort claimants' trust with?  No.  It's

12  going to be a combination of cash and stock.

13       Have they specified what it is?  Have they told the

14  subrogation claimants that they will, in their plan, give them

15  eleven billion dollars in cash as we have settled with them?

16  No.

17       Will the tort claimants --

18       THE COURT:  Well, let me -- let me interrupt.  I have,

19  obviously, been reading a lot of stuff, and I can't absorb all

20  of these new plans, but aren't those the very kind of things

21  that do get sorted out even if there isn't across the board

22  consensus, that those are the kinds of things that get -- is

23  all before you ever even have the confirmation hearing?

24       MR. KAROTKIN:  Normally.

25       THE COURT:  No, but --

PG&E Corp., Pacific Gas & Electric Co.

1        MR. KAROTKIN:  But they're saying well, let's go ahead

2   and vote.

3        THE COURT:  No.

4        MR. KAROTKIN:  Never mind, let's go ahead and vote --

5        THE COURT:  No, you're --

6        MR. KAROTKIN:  -- on something we don't even know

7   we're voting on.

8        THE COURT:  You're moving too fast.  Even if you

9   didn't have a plan to offer, their plan isn't ready to be

10  confirmed today because leaving aside disclosures, there may be

11  some open issues that have to be resolved between the creditor

12  groups.  Whether it's your plan or their plan that's normal,

13  right?  It's normal.

14        MR. KAROTKIN:  Normal, and that's, Your Honor, a

15  reason to have mediation start now --

16        THE COURT:  No, I understand it.

17        MR. KAROTKIN:  -- and not, Your Honor, to let one plan

18  move ahead of another plan.

19        THE COURT:  I'm not --

20        MR. KAROTKIN:  That's the reason.

21        THE COURT:  I've not ignored your request for

22  mediation, nor have I ignored what was said at the prior

23  hearing.  I intend to take some action on it in the very near

24  future.  That's all I can say at this point.

25        MR. KAROTKIN:  Okay.  And we would -- as I said, Your

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  Honor, we would encourage that.

2      So what you have is Mr. Stamer and the ad hoc and the

3  TCC scheduling request is premised entirely on their view that

4  the magnitude of the TCC's constituency claims is huge, and

5  that somehow estimation is not required under their plan.  I

6  don't know how they said that, because again in prior hearings

7  before the Court you recognized at a minimum, estimation is

8  necessary to address the absolute priority rule.

9      THE COURT:  Now, it might just be terminology, though,

10  right?  Whether you call it estimation or valuation, it's still

11  a factual inquiry to determine it, right?

12      MR. KAROTKIN:  Yes, a factual --

13      THE COURT:  And Mr. Bennett made that point.

14      MR. KAROTKIN:  A factual inquiry to determine, Your

15  Honor, exactly what Judge Donato has withdrawn the reference to

16  determine, and what they're saying to you is no, no, no, no

17  more in Judge Donato's court; you do it.  You take it away from

18  him and you do it.

19      THE COURT:  Well, Mr. Karotkin --

20      MR. KAROTKIN:  I don't see how you can do that.

21      THE COURT:  -- what we'll --

22      MR. KAROTKIN:  I think one thing is absolutely clear

23  to Your Honor is what they're trying to do here is to really

24  avoid a detailed inquiry as to the value of the tort claimant's

25  claims that -- and that's before Judge Donato.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  Well, but what would --

2      MR. KAROTKIN:  That's what he's going to do.

3      THE COURT:  But what I -- tell me this one, just

4  pretending, one of my hypotheticals, that you didn't have a

5  plan on the table at the moment and the TCC and the ad hoc

6  group did.  We wouldn't need an estimation in the traditional

7  sense, right.

8      MR. KAROTKIN:  Yes, you would.

9      THE COURT:  Well -- but no, I mean to figure out the

10  aggregate amount for the victim.

11      MR. KAROTKIN:  Why is it any different, Your Honor?

12      THE COURT:  Well, that's what I'm asking you.

13      MR. KAROTKIN:  It's not any different.

14      THE COURT:  What would --

15      MR. KAROTKIN:  In order to confirm that plan, an

16  estimation has to be done to determine -- and you said it

17  before, an estimation has to be done to determine whether that

18  plan satisfies the absolute priority rule --

19      THE COURT:  But I think --

20      MR. KAROTKIN:  -- unless Mr. Bennett's clients are not

21  going to object, and I can assure that's not going to happen.

22      THE COURT:  But that's what I'm getting at is, if

23  you -- do you need to have a judicial estimation if the

24  proponent says I'm going to pay this class this amount of

25  money, and that class responds by saying okay, I'll accept

PG&E Corp., Pacific Gas & Electric Co.

1    that.

2         MR. KAROTKIN:  Yes, you have to determine whether

3    they're getting paid too much.

4         THE COURT:  All I'm focusing on is the semantics here.

5    I don't think it's the traditional estimation of the claim to

6    figure out how to distribute to the claim, I think it's the

7    same inquiry, perhaps, to determine whether the equity is

8    unfairly being impaired.

9         MR. KAROTKIN:  It's a similar inquiry.  It's the

10   inquiry that Judge Donato has withdrawn the reference to do in

11   this case, okay.

12        THE COURT:  Well, I know why he's withdrawn the

13   reference.  I suggested that he withdraw the reference, but it

14   was to -- it was to do and deal with the personal injury

15   wrongful death claims that I could not do as a matter of law,

16   that's all.  But I could do the estimation valuation on a

17   cramdown question, right?  Absolute priority question.

18        MR. KAROTKIN:  I don't think --

19        THE COURT:  You don't think so?

20        MR. KAROTKIN:  -- in the context of their plan you can

21   do it where they agreed in their plan to take less if Judge

22   Donato determines it is less.  I don't think so, okay?

23        THE COURT:  Okay.

24        MR. KAROTKIN:  And that's before Judge Donato.  Those

25   proceedings are pending before Judge Donato.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  No, I understand.

2      MR. KAROTKIN:  The Tubbs trial is proceeding.

3      THE COURT:  So what would happen -- okay.  So -- no, I

4  know that.  But -- so Mr. Stamer restated the numbers in his

5  plan for the subro -- the eleven for the subro, and the

6  thirteen and a half, I believe, it was for the --

7      MR. KAROTKIN:  Not really, Your Honor, because that's

8  in brackets.

9      THE COURT:  But what I'm trying to get to is what

10  would happen in your mind if Judge Donato picked a lower

11  number?  What would be the inquiry?  In other words, if he

12  determined that -- and no, I'm sorry, I misspoke.

13      If there was a -- if there was not an objection, do

14  you think that the equity has a right to be heard on how much

15  is being paid?  And you think that's something that he would

16  have to do rather than --

17      MR. KAROTKIN:  At this point, yes, Your Honor.

18      THE COURT:  Okay.

19      MR. KAROTKIN:  At this point for sure.

20      THE COURT:  Okay.

21      MR. KAROTKIN:  And as we noted in our reply, at the

22  October 7th hearing, Ms. Dumas clearly indicated that

23  estimation would be required to determine what they would be

24  entitled to under the plan.

25      THE COURT:  She did.  I recall that.

(972)866-3290 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. KAROTKIN:  And now, all of a sudden -- all of a

2  sudden because they want to move on the fast track, estimation

3  somehow now isn't required in these cases, and despite the fact

4  that they said, again, before Your Honor -- you asked them,

5  Your Honor, is their plan a backup plan.  You asked them that

6  at the October 7th hearing.

7    THE COURT:  Well, they said it frequently in the

8  papers.

9    MR. KAROTKIN:  And what did they say?  No, it's not a

10  backup plan.  It should move forward together with the debtor's

11  plan.  That's what they said before Your Honor.  And now, for

12  some reason, things have changed.

13    What has become, as I said earlier, Your Honor,

14  patently obvious from the request to fast track the plan --

15  their plan -- is to have you do a summary estimation proceeding

16  in connection with the confirmation hearing as you indicated.

17  And in an effort,  Your Honor, to avoid a serious inquiry, it's

18  obvious its effort to avoid a serious inquiry as to the value

19  of their claims to be addressed in these cases.

20    And, Your Honor, as you have said, no one should get

21  paid in these cases unless they can demonstrate they're

22  entitled to it.  Well, now, Your Honor, the bar date has

23  passed.  We know they want to extend the bar date.  Information

24  is finally coming in, and people will have an opportunity to

25  evaluate the claims, the magnitude of the claims, information

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    with respect to the claims, evidence -- evidence about the

2    claims rather than the TCC statement and the ad hoc statement;

3    don't worry, Your Honor, the claims are well in excess of

4    fourteen and a half billion dollars, don't worry about it,

5    don't worry about it, they will accept the plan.

6         No, now, we will have an actual hearing before Judge

7    Donato where he can make that decision.  And what they're

8    asking you to do is to have, instead, a very quick process in

9    front of you that is pending before Judge Donato, and we don't,

10   frankly, see how that is either appropriate or how in the face

11   of those proceedings, pending, how you can take that back from

12   Judge Donato.

13        Your Honor, the debtors, unlike the tort committee,

14   and unlike the ad hoc bondholder committee are fiduciaries for

15   all economic stakeholders in these cases.

16        The debtors, as well as Your Honor have an obligation

17   to assure that in the context of a plan in these cases, all

18   creditors and equity holders are treated fairly and equitably,

19   and that's what the estimation proceeding is all about.  And

20   when they have been concluded, and Judge Donato has made his

21   decision, and it's clear based on his own schedule, he's very

22   cognizant as you well know --

23        THE COURT:  No, I'm aware.

24        MR. KAROTKIN:  -- of AB 1054 and the June 30th

25   deadline, very, very cognizant that this -- that these cases

PG&E Corp., Pacific Gas & Electric Co.

1    have to be concluded by then, and when he makes his decision,

2    and it will be timely in order -- you can be sure it will be

3    timely to meet that timetable, then both plans can be

4    appropriately amended to address his ruling, and that's what

5    our schedule reflects.  That's the way it should be done.  As

6    we say, they can be one disclosure statement for both plans,

7    and it can individually describe each plan.  And then, when

8    he's finished, the plans which will have actually the

9    treatment, the actual treatment for those voting on the plan

10   can be distributed again, in the customary fashion for people

11   to vote on it.

12        THE COURT:  Let me digress slightly.  How do I make

13   this all work under your time line without knowing what the

14   CPUC's position is on that?

15        MR. KAROTKIN:  The CPUC is -- first of all, Mr.

16   Kornberg can tell you the CPUC's position.  I don't want to

17   speak for him.  But what I can tell you is that we are meeting

18   with the CPUC on a weekly basis to move our plan forward, and

19   we are very, very comfortable with the fact that we will meet

20   the timetable with the CPUC.

21        THE COURT:  Okay.  Well, Mr. Kornberg can speak to it

22   if he wants to.  For now, I'm probably not going to make any

23   definitive decision about scheduling.  I mean, I'm -- because I

24   just have to process all this but go ahead and finish your

25   point.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. KAROTKIN:  And let me continue to address a couple

2    of other issues that Mr. Stamer raised.

3         And again, as Your Honor -- Your Honor again noted at

4    the prior hearings before the Court, our plan is conditioned on

5    compliance with AB 1054.  And as you recognized even this

6    morning several times once the estimation proceedings are

7    concluded, our plan can be amended to address that.

8         And what the ad hoc committee, Your Honor, what the ad

9    hoc committee and the tort committee would have you believe is

10   that if Judge Donato estimates a number over and above the

11   current financing fact and our commitments, our plan blows up.

12        THE COURT:  Well, that's what they're --

13        MR. KAROTKIN:  It vaporizes.

14        THE COURT:  That's their point.

15        MR. KAROTKIN:  Okay.  They're wrong.  They're wrong.

16   We will be in a position to amend the plan as we've indicated

17   to the Court and as Mr. Wells has testified in his deposition,

18   there is ample capacity in both the debt and equity markets to

19   timely fund a plan and meet the requirements of AB 1054.

20        The debtor's plan does not vaporize.  That's the

21   mistake and the misconception he's asking you to accept, Your

22   Honor, is that that financing has to come from the debtor's

23   existing equity holders.  It doesn't.  There is no requirement

24   that it come from the existing equity holders.  In fact, the

25   equity commitments that the debtors have already obtained for

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   the rights offering are not exclusively from the equity

2   holders.  There is an array of investors more than willing to

3   invest in this company in order to fund the plan at whatever

4   levels it is.

5            I would note, Your Honor, and again, Mr. Stamer said

6   well, the debtors will have seven days to get new financing.

7   Well, let me tell you, Your Honor, when the debtors revise

8   their plan to increase the distribution by two or three billion

9   dollars, they got equity commitments in two days -- two days.

10  And you know what?  They were oversubscribed.

11           And as Mr. Wells' declarations have indicated, and as

12  his deposition testimony has reflected, there is more than

13  sufficient capacity in the market to fund the debtor's plan.

14  Of course, no one's going to give a definitive commitment until

15  they know what that liability is.  Nobody is going to pay for

16  those unlimited commitments going forward, but there is more

17  capacity -- the money center banks have told the debtors -- and

18  we filed those letters with the Court -- there is plenty of

19  capacity to fund the plan.

20           I mean, Your Honor, just think about this for a

21  moment.  Clearly the Elliott group, the bondholders, are

22  willing to provide that capital, and there's no doubt that

23  others will do it.  They're not doing it to protect their

24  position in this case.  They're not providing the debtors with

25  financing at attractive rates.  It's just, they are here, as

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    you indicated, to make money, and there are plenty of other

2    financial institutions who are willing to do the same thing.

3    And if Judge Donato comes in with a higher number, those

4    financial institutions will be ready to come forward.

5           The ad hoc bondholders, Your Honor, are not a group of

6    altruistic investors willing to put up money on favorable terms

7    in an effort to save the State of California.  Any number of

8    financial institutions have advised the debtors that there is

9    adequate capital necessary and, in fact, Your Honor, on

10   substantially better terms than the terms that are being

11   provided by the ad hoc bondholders.  And as we've noted, their

12   interest rates are high, they require reinstatement --

13          THE COURT:  Well, listen, now, you're getting down to

14   the details.  The question is scheduling.  You made your point

15   about I shouldn't put their plan on a fast track.  You believe

16   your plan is on an adequate track and let me use the day more

17   efficiently by hearing from Mr. Bennett or others and then move

18   into the other question.

19          I'm not going to make a ruling today.  I'm not going

20   to schedule a hearing on their plan today.

21          MR. KAROTKIN:  Let me just say one last thing, Your

22   Honor?

23          THE COURT:  Sure.

24          MR. KAROTKIN:  The schedule we propose works, and it's

25   consistent with how Chapter 11 cases should be administered.

PG&E Corp., Pacific Gas & Electric Co.

1    It's consistent with how competing plans should be

2    administered.  In fact, as you noted yourself, those plans

3    should be considered together if they meet the requirements for

4    confirmation.

5           THE COURT:  But having said that, I want to move on, I

6    want to ask you one more question.

7           Well, never mind.  I'll come back to it.  There's just

8    too many things going on.

9           MR. KAROTKIN:  Okay.  Thank you, Your Honor.

10          THE COURT:  Mr. Bennett, do you want to be heard or

11   not?  I mean, I'm not going to schedule anything today anyway,

12   but I'll be happy to listen to you.

13          MR. BENNETT:  Thank you, Your Honor.

14          Very briefly, Your Honor.

15          THE COURT:  And you would help me by responding as Mr.

16   Karotkin was doing as why, if it's true, that you disagree with

17   Mr. Stamer that we don't have to have an estimation hearing if

18   their plan goes forward.

19          MR. BENNETT:  Okay.  Well, so first of all, their plan

20   is premised on a -- to begin with, and I don't know how deeply

21   you dug into the deposition testimony and the factual matter

22   that was behind the paperwork in connection with --

23          THE COURT:  Well, some of it.  I mean, I --

24          MR. BENNETT:  -- exclusivity.  But one of the points

25   that we made there, and that would come in a confirmation

PG&E Corp., Pacific Gas & Electric Co.

1   hearing as well, and maybe it's a point that has to be

2   litigated ahead of time but -- which maybe I'll write a letter

3   to Mr. Stamer about and see if we can work out a schedule, the

4   so-called agreement, so-called settlement that resulted in a

5   14.5 billion dollar number which, of course, includes the

6   billion for the municipal settlement, so it's sometimes

7   referred to as 13.5 was not an agreement that was reached at

8   arms' length between parties that were genuine adversaries with

9   respect to the issue.

10          At one point, Your Honor focused on that and -- a long

11  time ago, we've never lost focus on that.  And frankly, the

12  idea that there's some kind of summary proceeding in a

13  confirmation hearing concerning the allowable amount of those

14  claims on the basis of a not arms' length settlement is an idea

15  that, of course, is supported by no case.  Those cases have

16  been cited to you already.  But again, if there's formal

17  briefing on that, maybe we should do it, but I'll start by

18  corresponding with Mr. Stamer.  We'll do it in writing so there

19  can't be any misunderstandings and see whether we can tee that

20  up for you.

21          But the consequences of that, Your Honor, that if you

22  were to decide that it was somehow different from estimation,

23  our argument would be is it has to be more exacting and more

24  thorough, not rough and dirty like estimations sometimes

25  results.  And of course, it would bring the Tubbs trial back to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Your Honor's courtroom.

2            THE COURT:  But doesn't it all turn on the maintaining

3    solvency and if some -- if certain circumstances change and we

4    have an insolvency, wouldn't that change the --

5            MR. BENNETT:  That would, but you'd have to determine

6    whether the claims are high enough to generate an insolvency.

7            THE COURT:  Yeah.  No, I understand.

8            MR. BENNETT:  And which require --

9            THE COURT:  It gets back to the estimation.

10           MR. BENNETT:  -- which -- estimation, or if Your Honor

11   decides that you want to take that fall back and have the Tubbs

12   trial here, I'm not sure we would object to that.  But it

13   might -- it would have to happen because --

14           THE COURT:  I've got plenty of time.

15           MR. BENNETT:  Well, it seems like you've set aside the

16   time, and that you have enormous interest in the issues.

17           THE COURT:  No, we're not taking the Tubbs trial.

18           MR. BENNETT:  But that is where it leads.  And so --

19           THE COURT:  Yeah, but let's be realistic.  I mean,

20   look outside the window.  If we have another catastrophic fire

21   post-petition, that itself could trigger the issue, right?

22           MR. BENNETT:  Your Honor, one of the -- it could, or

23   it couldn't.  Here's one of the parts about this case that

24   has -- we had this long three-hour discussion this morning --

25   almost three hour, it hasn't been three hours yet, but soon to

(970) 390-5060  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   be three-hour discussion, and what struck me about it is is

2   that much of it was about pronouncements of facts that we're

3   almost in a position to start proving with evidence, and

4   efforts to somehow evade the actual presentation of facts.

5          We need facts in this case.  It's not often mentioned,

6   but we get it.  It's true that there are victims that suffered

7   in the fires, and that they suffered a lot.  They've also been

8   paid more than fifteen billion dollars already.  Not every

9   victim.  And so to say that there's 14.5 billion dollars more

10  is talking about 30 billion dollars in losses.  That's an

11  enormous number.  And the parties are entitled to prove two

12  things, whether or not those numbers are real -- what the real

13  numbers are, and two, whether or not it is true that the

14  allegations that PG&E is responsible for all the fires are true

15  which the company doesn't believe is true and, frankly, my

16  clients don't believe is true.

17         And so the effort to accelerate, I see it -- I can't

18  crawl into Mr. Stamer's head and know for sure, or his client's

19  head -- I see it as an effort to evade factual development, to

20  kind of rush to a judgment based upon a lot of assumptions that

21  aren't true.

22         Specific to some of his -- I'm going to confine to his

23  specific assertions which, frankly, are factual assertions in

24  many ways which Your Honor's not supposed to credit, and no one

25  should credit.

PG&E Corp., Pacific Gas & Electric Co.

1    So fact assertion number one was that the financing

2    behind the debtors would disappear.  Well, of course, there's

3    no -- that's a factual assertion.  He doesn't have the faintest

4    idea one way or another.  The truth is as Mr. Karotkin pointed

5    out, it won't.  They were never dependent --

6        THE COURT:  Well, that's a fact too.

7        MR. BENNETT:  Fine.

8        THE COURT:  No.  No, no.  But look --

9        MR. BENNETT:  We --

10       THE COURT:  -- you and I both know --

11       MR. BENNETT:  We are ready to prove it.

12       THE COURT:  That's right.  And you and I both know

13   that if it's time for anybody, whether it be their side or your

14   side, to confirm a plan, they got to prove up feasibility.

15       MR. BENNETT:  Exactly.

16       THE COURT:  So --

17       MR. BENNETT:  Exactly right.

18       THE COURT:  So that's -- and that has to happen.

19       MR. BENNETT:  But I want to say one more thing to just

20   remind the Court that when they say that there's something

21   wrong with our financing, remember the financing documents that

22   exist behind the debtor's plan were negotiated at arms' length

23   with the debtors.  There are no sole discretion provisions.

24   I'm going to paraphrase like Adam Schiff did, but it's an

25   accurate paraphrase, their document says we'll put up financing

PG&E Corp., Pacific Gas & Electric Co.

1    if in our discretion we want to.  That's what theirs really

2    says, and if Your Honor wants me to take you through it and

3    show you the places --

4         THE COURT:  No, no, I've looked at the documents

5    enough to know --

6         MR. BENNETT:  Okay.

7         THE COURT:  -- that there's some outs there, but

8    again, so what.  They're --

9         MR. BENNETT:  Okay.  But then they shouldn't be

10   criticizing what the financing that the debtors can deliver --

11        THE COURT:  But you again --

12        MR. BENNETT:  -- when they deliver better financing.

13        THE COURT:  -- you and I both know the answer to the

14   following question.  If Mr. Stamer's plan is up for

15   confirmation, aren't you going to raise an objection and make

16   them prove feasibility?

17        MR. BENNETT:  We absolutely are.

18        THE COURT:  Okay.

19        MR. BENNETT:  And they're going to do the same with

20   ours and that's when it happens.

21        THE COURT:  Okay.

22        MR. BENNETT:  Okay.

23        THE COURT:  All right.

24        MR. BENNETT:  I want to also point out that there's

25   other -- Mr. Stamer would like to say the only issue here is

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    the size of the claims, and of course that's not even close to

2    right.

3         There's another issue which he wants to blow away too

4    which is can reinstatement result in overpayment particularly

5    where the plan has been engineered to turn all the unsecured

6    debt into secured debt.  That's another great discrete issue

7    that Your Honor might want to consider separately.  I'll send

8    Mr. Stamer a letter, but that's a fundamental confirmation

9    problem with their plan, and he sized it.  I don't have to size

10   it.  It's a five billion dollar issue.  That's it.

11        THE COURT:  That reinstating and over secure overpays?

12        MR. BENNETT:  Yes.

13        THE COURT:  Okay.

14        MR. BENNETT:  When reinstating loss making secured is

15   overpayment that prohibited under the Bankruptcy Code.

16   Valuation.

17        One of the absolutely tenants of everything a debtor

18   has done, and that my clients buy into for obvious reasons is

19   that if there's going to be any money raised pursuant to any

20   plan it should be raised at the highest possible prices, or

21   alternatively the lowest possible capital cost.  That should be

22   an absolute fundamental, that we're looking to -- that no

23   matter what the claims are, we're in the business of value

24   maximization.

25        So one of the things that would have to be proved

PG&E Corp., Pacific Gas & Electric Co.

1    under their plan which Mr. Karotkin just suggested cannot be

2    proved, and which is, of course, a factual issue as to which

3    Your Honor would have to hear evidence and would be contested

4    is whether or not the financing that if it became real from the

5    bondholders was, in fact, financing, that was the highest and

6    best chain obtainable, and that realized the debtor's true

7    valuation.  That's not a little issue; it's a big issue.

8            Another issue --

9            THE COURT:  That's just a restatement of the whole

10   question and they -- are they taking it out of equity

11   improperly?

12           MR. BENNETT:  Exactly, Your Honor.

13           THE COURT:  However you label it.

14           MR. BENNETT:  Okay.  There's another issue too which

15   is -- and this comes out of -- Your Honor knows that this is a

16   big deal in single asset real property cases, but it's also a

17   big deal in this case.  Who gets to make new investments?

18           If a new investment is required of cash and the terms

19   are the same, would it go to impaired creditors who want the

20   opportunity to continue to maintain their investment or

21   unimpaired creditors?

22           When is the last time we were in bankruptcy court

23   where an unimpaired creditor decided to take upon themselves to

24   take an investment opportunity for themselves when there were

25   other impaired creditors that might want the same opportunity?

of 261
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    There are multiple variations on this particular question.  Mr.

2    Harris is here to address a slightly different one.  But this

3    is another major issue with their plan which Mr. Stamer, of

4    course, never talks about.

5              THE COURT:  But again, you're acting like Mr. Stamer

6    thinks that I should confirm his plan, and I think he has

7    conceded that as long as there's this other plan, and maybe

8    concede's a strong word, I certainly stated even if he had his

9    plan all set to go until the debtor is out of luck or I'm

10   prepared to say your time's up, debtor, we have to get to that

11   point, don't we?

12             MR. BENNETT:  Yes.  Absolutely.

13             THE COURT:  And so we're -- so no matter what, we're

14   still in the running.

15             MR. BENNETT:  I make these points primarily because

16   every time he stood up he says it's really simple, all we have

17   is one question; the debtor's plan is more complicated.  The

18   fact is that's just not true.

19             And, frankly, if Your Honor is ever again interested

20   in addressing the schedule, what I would ask you to do is set a

21   briefing schedule so both parties can lay out the confirmation

22   issues, talk about what kind of process is really entailed.

23             THE COURT:  Well, have we missed some?  I mean --

24             MR. BENNETT:  I've cut out the small ones, Your Honor,

25   to focus on the hard -- what I regard as the hard ones.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1       THE COURT:  But I've been -- the invitation is there,

2  not, perhaps, today, but to get the checklist of things that

3  could be dealt with properly and sequentially out of order --

4  out of the traditional order.

5       MR. BENNETT:  And I'm going to take that invitation.

6       THE COURT:  Okay.

7       MR. BENNETT:  And I think the right way to do it as I

8  said before, we'll write a letter to Mr. Stamer --

9       THE COURT:  Good.

10      MR. BENNETT:  -- and we'll sort it out.

11      Now, I want to talk about some law.

12      We've been fencing around it --

13      THE COURT:  Well, I'm going to stop you only by saying

14 I welcome you're telling me about the law, but I'm not going to

15 do anything today and -- except try to get to the 9019 motion.

16      MR. BENNETT:  I understand that, Your Honor.

17      THE COURT:  Okay.

18      MR. BENNETT:  But again, look, if status conferences

19 get more bounded and other people don't blast into other

20 irrelevant categories I don't feel it necessary to respond but

21 it happens, so I feel it's required to respond.

22      Nobody managed to mention 1129(c).  And 1129(c), of

23 course, is the only provision equity in the statute that

24 addresses of what the Court's supposed to do with multiple

25 plans.  And I think you've paraphrased it --

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  I mentioned it before.

2      MR. BENNETT:  -- accurately -- yes, you paraphrased it

3  accurately which is when there are multiple plans you're

4  supposed -- your first job is to figure out how many are

5  confirmable, and then after you've decided as to however

6  many -- okay, here, we're talking about two -- then there's the

7  issue of preferences expressed through the voting.

8      THE COURT:  Right.

9      MR. BENNETT:  And that could get very complicated

10  here.

11      THE COURT:  And then the statute tells me what to do

12  if they're both accepted.

13      MR. BENNETT:  Exactly.  But you can't read 1129(c) to

14  say oh, but one plan can race past the other because of a

15  procedural advantage.  That's not what it says.  That's not how

16  it would be interpreted, I don't think, in any court.  And so

17  it provides a very strong guide to keeping everything on the

18  same track which as Mr. Karotkin correctly stated was -- and I

19  think -- don't think it was just once, was what was advertised

20  when Your Honor was urged to terminate exclusivity.

21      THE COURT:  Well, I didn't give you any reason to

22  believe that I'm going to depart from that, am I?  I mean, I

23  might have --

24      MR. BENNETT:  No, you --

25      THE COURT:  -- I might have disappointed you by

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    breaking exclusivity, but I haven't said that the debtor isn't

2    still in the game with this plan.

3            MR. BENNETT:  Your Honor, I'm just responding to --

4            THE COURT:  Okay.

5            MR. BENNETT:  -- to something that was urged upon you

6    with a great deal of spirit and, frankly, volume a little bit

7    earlier today.

8            THE COURT:  Now, I ask that we calm this down.  Okay.

9    I'm going to conclude the discussion of plan scheduling,

10   because I told you I'm not going to --

11           MS. DUMAS:  No, Your Honor.  Very briefly.

12           THE COURT:  Ms. Dumas.

13           MR. FELDMAN:  Your Honor, I need thirty seconds,

14   because there's one issue that nobody's raised and I think it's

15   relative, Your Honor.

16           THE COURT:  You go first, sir.  Thirty seconds.  And

17   then Ms. Dumas, and then Mr. Harris, and then we're going to go

18   to the 510 -- I mean the 9019 --

19           MR. FELDMAN:  For the record, Your Honor, Matthew

20   Feldman on behalf of the ad committee of subrogation holders.

21           THE COURT:  I thought you were here, Mr. Feldman.

22           MR. FELDMAN:  Your Honor, obviously, if the Court had

23   done today in a different order, I might not need to rise, but

24   if the Court is not inclined to approve the RSA and the made

25   whole -- I'm sorry, and the settlement, the 9019 settlement

(971) 712-1800 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    with my clients, we absolutely will need estimation and we will

2    roll right into estimation --

3              THE COURT:  Well, I didn't say --

4              MR. FELDMAN:  -- as is contemplated.

5              THE COURT:  I mean, my choices aren't just to approve

6    it or disapprove it, are they?

7              MR. FELDMAN:  I --

8              THE COURT:  I mean, here, in the last twenty-four

9    hours, I got two letters from you and a supplement and a

10   thirty-five page brief, and it might well be that it needs to

11   be tied up into one concise document.

12             MR. FELDMAN:  Understood, Your Honor.

13             THE COURT:  Okay.

14             MR. FELDMAN:  But as you go back and think about

15   schedule, the idea that no one would have to estimate as

16   posited by Mr. Stamer may turn out to not be correct.

17             THE COURT:  Okay.

18             MR. FELDMAN:  This is not just about the IPs.  Thank

19   you.

20             THE COURT:  Got it.  Thank you.

21             Ms. Dumas.

22             MS. DUMAS:  Thank you, Your Honor.  Very briefly.

23             Many, many excellent points with respect to the

24   Bankruptcy Code have been made and how the cases should proceed

25   with which we concur.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          I'm going to make one practical observation, only

2   because the constituent that we represent is the involuntary

3   creditors, and to explain to the Court the practical reasons

4   why we endorsed a fast-track approach, whether it's the

5   bondholder plan, which happens to be the only fast-track

6   approach available, or a different plan, and that is the

7   following:  we have thousands of constituents, and we

8   understand that there are a range of outcomes, litigation

9   outcomes.  So for example, if Judge Donato were to give an

10  estimate of tort claims of, say -- I'm just going to use, by

11  example, twenty-five billion -- then we, the TCC, most likely

12  will not be able to convince all those people who are very

13  energetic about their rights, plaintiffs, to not force breaking

14  solvency because --

15          THE COURT:  To not do what?

16          MS. DUMAS:  Not force breaking solvency because if

17  Judge Donato's estimate --

18          THE COURT:  I know.

19          MS. DUMAS:  I'm going to walk through this.  I may say

20  it wrong, but --

21          THE COURT:  I'm having a little trouble following your

22  theory, but --

23          MS. DUMAS:  Yeah, so --

24          THE COURT:  Okay.

25          MS. DUMAS:  So right now, we think the break point of

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   solvency is this 25.5 billion compromise; that's why we called

2   it a compromise.  25.5 meaning the amount that's available for

3   tort claimants.  So 11 billion to subro, 1 billion to the

4   settling PEs, 13.5 billion to victims and the state and federal

5   agencies which, by the way, they just filed 6-1/2 billion, so

6   of the 13.5, the United States and the state just filed claims

7   for 6.5 billion of that.  So the hurdle isn't quite so high.

8           But anyway, to my point, because the TCC is concerned

9   about both ranges.  To my point, let's just say hypothetically

10  that it's twenty-five billion that Judge Donato says.  I

11  estimate for victim claims because I'm a believer in punitive

12  damages, or I'm a believer in the emotional distress claims;

13  for whatever reason.  There are many of these involuntary

14  creditors who will say, I'm not going to stand back and take

15  the TCC's recommendation that I let everybody else get paid in

16  full.  We're going to change the case entirely.  We're going to

17  put our number in there and everybody else is going to have to

18  take their sixty cents on the dollar which will then trigger

19  the domino effect of every single affected creditor in the

20  case.

21          THE COURT:  I'm not following you.  I mean, how does

22  this happen?  Meaning they vote against the plan?  Vote against

23  your plan?  I mean, I guess that's --

24          MS. DUMAS:  Yes, exactly.

25          THE COURT:  I'm trying to describe --

PG&E Corp., Pacific Gas & Electric Co.

1          MS. DUMAS:  Yeah, sure.  Yes.

2          THE COURT:  -- figure out where you're going with

3    this.

4          MS. DUMAS:  They -- yes.  They vote against -- if

5    there's a high estimation --

6          THE COURT:  By what the majority is.

7          MS. DUMAS:  -- they vote against the plan.

8          THE COURT:  Okay.

9          MS. DUMAS:  That's right.  On the other side -- and

10   demand, because --

11         THE COURT:  Well, excuse me.  If they vote against the

12   plan then, unless there's some other theory, that plan is dead,

13   right?

14         MS. DUMAS:  Well, yes.  And here's the thing, though.

15   This is a dictate of -- I could be speaking about a bondholder

16   plan or a debtor plan right now.

17         THE COURT:  Right.

18         MS. DUMAS:  What I'm trying to talk about is the

19   practicalities of compromise.  So I'm talking about the high

20   side --

21         THE COURT:  Okay.

22         MS. DUMAS:  -- that a number big enough to render the

23   debtor insolvent, that makes this a three- to five-year case,

24   not a seventeen-month case.  Just in our view.  We're trying to

25   avoid that by confining ourselves --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  No, I mean, we all are.

2          MS. DUMAS:  -- to the distributed value.

3          THE COURT:  I mean, I think we've been --

4          MS. DUMAS:  Yeah.

5          THE COURT:  -- talking about that for ten months.

6          MS. DUMAS:  Right.  Absolutely.  But so let me -- this

7    is why we're talking about -- we're being practical; we're

8    trying to talk about compromise.  Let's go to the other end.

9          I think what the debtors and the equity security

10   holders are validly relying on as a big swing in the numbers is

11   the Tubbs trial.  The Tubbs trial is a large component of all

12   tort claims.

13         So I'm going to do another hypothetical, and Mr.

14   Baghdati (phonetic) over here is going to shriek, but I'm going

15   to do a hypothetical that the plaintiffs in Tubbs get defensed,

16   right, so that there are no victim claims allowable whose

17   injuries come out of Tubbs.  In that scenario --

18         THE COURT:  And no insurance company claims, either.

19   Right?

20         MS. DUMAS:  Which brings me back to the point, is how

21   can you approve the eleven billion right now because forty

22   percent of all insurance claims are derived from Tubbs.  And

23   I'm not trying to pick a fight with anybody right now, but it

24   looks --

25         THE COURT:  Well, it sounds like you're arguing

PG&E Corp., Pacific Gas & Electric Co.

1  against the motion.

2       MS. DUMAS:  No, no, no.  I'm just doing hypotheticals.

3  But there may be a hypothetical where if Tubbs goes to a

4  defense on all the claims, then there will be people who

5  validly raise the point that the insurance companies are then

6  getting 105 cents on the dollar on their payments because of

7  the amount of the eleven billion.  So this is -- again, I'm

8  just telling you what we're trying to do to hold the center.

9       To use, holding the center of a compromise of 25.5

10  billion going to all tort claimants is really -- the debtors

11  could do the same thing today.  They have chosen not to for

12  their own reason; that's totally fine.  But the point is that

13  it's more risky for this case not to meet AB 1054, in our view,

14  if Tubbs goes and if Judge Donato goes.  And we view it as a --

15  we literally view it as a compromise, not a money-grab.

16       THE COURT:  Well, Ms. Dumas, I'm having trouble only

17  not understanding --

18       MS. DUMAS:  Yeah.

19       THE COURT:  -- your words, but where you're going with

20  the argument now.  I thought -- I'm just talking about

21  scheduling.

22       MS. DUMAS:  Yes.  You're talking about scheduling --

23       THE COURT:  So what do you -- what it is it you want?

24       MS. DUMAS:  -- and I felt the need --

25       THE COURT:  What do you want me to do?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MS. DUMAS:  So I felt --

2          THE COURT:  I mean, it sound it sounds like you're

3   arguing about why I should deny the 9019 motion, which is --

4   you're entitled.

5          MS. DUMAS:  Oh, yeah, we --

6          THE COURT:  You've made that in your papers, and --

7          MS. DUMAS:  Yeah.

8          THE COURT:  But what --

9          MS. DUMAS:  No, that's Mr. Julian's terrain.

10         THE COURT:  So what --

11         MS. DUMAS:  What I'm saying is, I'm describing for the

12  Court what I think is the very valid reason in a sui generis

13  case why the tort committee signed on to a fast-track

14  compromise.

15         THE COURT:  I didn't question it.  But that doesn't

16  mean I'm going to have a confirmation hearing next week,

17  either, for all the reasons you heard.  But -- so I mean --

18         MS. DUMAS:  So --

19         THE COURT:  -- is this your pitch to have me schedule

20  the confirmation hearing on your plan?  I'm not prepared to do

21  that.

22         MS. DUMAS:  I --

23         THE COURT:  I'm not saying I won't do something.  I

24  haven't been able to process it all.

25         MS. DUMAS:  Yeah.  No, I understand that --

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  This is fast-moving for me as well as for

2     all of you.

3          MS. DUMAS:  Yeah.

4          THE COURT:  So --

5          MS. DUMAS:  And we do understand that the -- we do

6     understand the Bankruptcy Code.

7          THE COURT:  Well, I know you do.

8          MS. DUMAS:  We do understand parallel tracking of

9     plans that are both confirmable.  But the trouble we have, the

10    real problem we have, which is an actual meaningful problem, is

11    this 8.4 cap, which is actually a 6.9 billion dollar cap.  And

12    for the debtors to -- again, for the debtors to stand up and

13    say, you have to be capped at 8.4 billion when the public

14    entities just filed 6-1/2 billion --

15         THE COURT:  I don't know what to make -- why are you

16    saying this?  We are not here deciding to confirm or deny

17    confirmation of the debtors' plan, and -- any more than I'm

18    here to confirm or deny confirmation of the plan that you

19    support.  So I know these things, but therefore, what do you

20    want me to do today?

21         MS. DUMAS:  Well --

22         THE COURT:  I know you feel strongly about the cap.

23    You also told me at the last hearing, if they went up six

24    billion, you would be happy as a clam.

25         MS. DUMAS:  Well, we --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  So I know that.

2    MS. DUMAS:  Yeah, we also --

3    THE COURT:  Okay?

4    MS. DUMAS:  -- I mean, we also -- again, we're not

5    trying to be unfair.  We're not trying to deprive people of

6    rights.  We are trying to keep this, in our view, this whole

7    bankruptcy case, on a track that it even can get confirmed.

8    THE COURT:  And Ms. Dumas, if I thought that by

9    delaying consideration of your side's plan would imperil it, I

10   perhaps would --

11   MS. DUMAS:  Yeah.

12   THE COURT:  -- think differently.  But I believe that

13   your plan, and Mr. Stamer's summary of it, is a plan that he

14   wants confirmed, but he isn't saying if I don't confirm it by

15   next week he's walking.  And if I don't confirm it until next

16   spring, he's still going to be happy if his plan gets -- his

17   clients' plans get confirmed.

18   MS. DUMAS:  Yeah.  I --

19   THE COURT:  So all we're talking about is scheduling.

20   And at the moment there are -- and you personally, and your

21   clients, were very influential in persuading me to change my

22   position and allow the plan.  But that doesn't mean I'm dumping

23   the debtors' plan in the trash can, and it does get back to the

24   point that I've tried to stick with since then, that there are

25   two plans, that neither one is perfect yet and neither one is

PG&E Corp., Pacific Gas & Electric Co.

1   confirmable yet, but both are potentially confirmable.  And

2   yes, there are all these unknowns:  there's Judge Donato's

3   ruling, and the Tubbs trial, and these legal issues maybe are

4   not plan breakers, but they're plan influencers.  And we're

5   going to get there --

6           MS. DUMAS:  Um-hum.

7           THE COURT:  -- in my opinion; I hope.

8           MS. DUMAS:  Yeah.

9           THE COURT:  And I would be disappointed, as I'm sure

10  your clients and you would be devastated, if there's no plan.

11  But at the moment, I'm still of the view that there are two

12  plans to keep on --

13          MS. DUMAS:  Yeah.

14          THE COURT:  -- a track.  And we can debate, and will

15  debate at a later point, how that track should be played out.

16  But let's leave it at that --

17          MS. DUMAS:  Yeah.

18          THE COURT:  -- for now because I'm telling you, I'm

19  not going to make a ruling on the scheduling today.

20          MS. DUMAS:  Yeah.  Understood, Your Honor.

21          THE COURT:  Okay.

22          MS. DUMAS:  I think you -- I'll just boil down my

23  final comment, which is really -- you stated it much better

24  than I did.  I think where I'm coming down is that the TCC,

25  having the most exposure to this unruly and large class of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    claimants, the TCC actually believes that it may imperil the

2    plan confirmation process if we have to go to the Tubbs trial,

3    if we have to go to confirmation.  Because either way, it's

4    going to be very difficult to -- unless there is a compromise.

5    And I've said this to everybody in the room.  I mean, it's --

6    but unless there's a compromise, we're not going to be able to

7    get a plan.  We're not going to be able to get a plan confirmed

8    politically over the objection of the tort claimants, and the

9    TCC isn't going to be able to persuade the tort claimants that

10   a compromise works if Judge Donato goes with Mr. Julian, or

11   vice versa.  Or vice versa, that's my point.

12              THE COURT:  Okay.

13              MS. DUMAS:  Thank you, Your Honor.

14              THE COURT:  Thanks.

15              Mr. Harris?  And then I'm going to -- you're the last

16   speaker on the plan issue, and then we're going to talk about

17   the 9019 motion.

18              MR. HARRIS:  Thank you, Your Honor.  Adam Harris from

19   Schulte Roth & Zabel on behalf of PointState Capital,

20   Centerbridge Partners, Anchorage Capital Group, Silver Point,

21   and Fidelity Management and Research.

22              Your Honor, I don't want to unnecessarily prolong this

23   morning's discussion, but Your Honor did ask a question to Mr.

24   Karotkin first and then several others who followed him, I

25   believe it was two and a half hours ago.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Whatever.

2          MR. HARRIS:  Whatever.

3          THE COURT:  Seemed like just moments ago, right?

4          MR. HARRIS:  Exactly.  About the context of trying to

5     identify those predicate issues that will bear on confirmation

6     and whether there were others beyond the post-petition

7     interests and the make whole --

8          THE COURT:  And Mr. Bennett --

9          MR. HARRIS:  -- and Mr. Bennett.

10          THE COURT:  -- is going to suggest some, too.

11          MR. HARRIS:  And Mr. Bennett now has raised a couple.

12     And I'm here to say that there are, in our view, at least two

13     others that should be addressed.

14          THE COURT:  Okay.

15          MR. HARRIS:  And like Mr. Bennett, Your Honor, I will

16     deal with Mr. Stamer through correspondence to see if we can

17     come up with a timetable --

18          THE COURT:  Do you want to give me a clue, or the

19     top --

20          MR. HARRIS:  Well, I'm happy to preview them for Your

21     Honor.  The first is an issue under the TCC ad hoc plan that

22     comes up under Section 1123(a)(4) of the Bankruptcy Code, Your

23     Honor, which requires that creditors in the same class receive

24     similar treatment --

25          THE COURT:  Um-hum.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. HARRIS:  -- with respect to their claims.

2         As Your Honor knows, then, under the terms of the TCC

3    ad hoc committee plan, in addition to getting the treatment

4    afforded to utility bond holders in Class 5b and 6b (phonetic),

5    the commitment parties and certain members of the ad hoc

6    committee will also have the sole and exclusive opportunity to

7    participate in the new holdco equity investment, the new

8    unsecured bond investment, to backstop the new utility secured

9    bonds, as well as to earn 670 million dollars of commitment

10   fees.  Your Honor, our view is those are distributions on

11   account of their claims, that they put them in a different

12   treatment category than everybody else, that they were in the

13   room and uniquely positioned because of their creditor status

14   to effectively negotiate, to take that for themselves, and that

15   that constitutes a clear violation of 1123(a)(4).

16        Now, that argument, Your Honor, I'm sure will be met

17   by Mr. Stamer telling me that these particular groups of

18   creditors should be viewed no differently than any other third-

19   party investor who is willing to make financing available to

20   the company in order to facilitate an exit.  I would suggest to

21   Your Honor that the terms of the plan, the terms of the

22   financing letters, the conditions of the plan that require that

23   this financing be accepted all would speak differently to what

24   the outcome should be and that there is a -- as the Court would

25   say, a causal relationship between the opportunities afforded

PG&E Corp., Pacific Gas & Electric Co.

1    to them, and then exclusively in relation to their existing

2    bondholders.

3              THE COURT:  Okay.  That's a preview, right?

4              MR. HARRIS:  Right.

5              THE COURT:  And it seems to me that if you can work

6    out a stipulation to tee it up, it sounds like a legal

7    question.

8              MR. HARRIS:  Right.

9              THE COURT:  Okay.

10              MR. HARRIS:  And part of it is a factual question,

11   Your Honor, with respect to the issue of causal relationship,

12   but we'll address that with Mr. Stamer and see if we can come

13   up with a schedule for addressing that.

14              THE COURT:  Okay.  And the second one?

15              MR. HARRIS:  The second part, Your Honor, actually

16   arises based upon, in my view, the response that I think we're

17   likely to get to this which, as I said, is we should be treated

18   and viewed as traditional third-party financing sources here,

19   typical of what you would see in any other case.  And Your

20   Honor, assuming we could suspend reality for a second and

21   actually buy into that, let's take that on its face.  Let's say

22   that they should be viewed as actual third parties.

23              Well, in what case, Your Honor, has a actual third-

24   party financing source ever been able to walk into a debtor and

25   say, here are the terms of my financing, and take it, and you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  have no opportunity to go out and test it in the capital

2  markets to determine whether it is, in fact, the best

3  opportunity, best terms available for the circumstances of your

4  particular plan.  There is no market test capabilities.

5  They're not backstop commitments.  These are absolute, mandated

6  investments that the plan, as I said, requires be in place and

7  consummated in order for their plan to go effective.

8          There's no fiduciary out which would be typical in any

9  circumstance like this if somebody were simply to come across

10  the transom and offer the company financing the funds for the

11  same amount of money on better terms.  There's no opportunity.

12  Honestly, Your Honor, it's because there's no fiduciary on

13  their side in this particular plan looking out for the

14  interests of the estate and other creditors, which is what left

15  us in the position we're in right now.

16          And it requires, Your Honor, that Your Honor approve

17  all of this.  So as it relates to that aspect of it, not only

18  do we have an 1123(a)(4) problem; we think there's a

19  significant problem under 1129(a)(3) and 363 of the Code

20  because when it comes before Your Honor and they have to put on

21  a case in proof to provide Your Honor with the basis upon which

22  you're going to approve all of this, somebody's going to have

23  to get up and say this is an exercise of reasonable business

24  judgment; this was designed in order to maximize the value of

25  the estate for the benefit of all parties-in-interest.  And we

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    think the factual predicate for that is going to be difficult

2    if not impossible to make in light of the fact that there's

3    been no market test, and particularly in light of the evidence

4    which we think the debtors have alluded to this morning

5    regarding the capital markets being open and available on terms

6    materially better.

7         THE COURT:  Well, but doesn't that -- doesn't that

8    self-correct if there are competing plans and they're up for

9    confirmation?

10        MR. HARRIS:  If there are competing plans.

11        THE COURT:  Well, there are competing plans at the

12   moment.

13        MR. HARRIS:  Well, but --

14        THE COURT:  They're not ready to go yet.

15        MR. HARRIS:  So let me just --

16        THE COURT:  Aren't they -- well.

17        MR. HARRIS:  Yeah, I agree.  It may be self-

18   correcting, Your Honor.  And obviously, if the debtors' plan

19   goes forward, these issues may be -- would be, moot.  But the

20   issue really came up, Your Honor, in light of the decision to

21   terminate exclusivity.  When --

22        THE COURT:  Well, of course.  That goes without

23   saying.

24        MR. HARRIS:  Well, I know, but then my clients, who

25   honestly have written commitment letters to support the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  debtors' plan and underwrite that, have now been put into a

2  position where they have to evaluate where they stand vis-à-vis

3  other constituencies in the event that the TCC ad hoc committee

4  plan gets legs, goes forward.  Were Your Honor to give it

5  primacy, with respect to -- and I'm not saying you are or

6  aren't, but these are the things that have now come to light

7  that we've been forced to kind of grapple with.  And again,

8  they're not up for decision today.

9           THE COURT:  Well, see, you're using words like "forced

10  to".  I mean, isn't that the natural consequence if -- I mean,

11  you can say, well, the judge screwed up by breaking

12  exclusivity; well, okay.  But there is a competing plan, and

13  that plan is here with all its warts.  And if you have an

14  attack and can show it's uncons -- wrong word, unconfirmable.

15  Unconstitutional probably would work, too, but unconfirmable --

16  then you will get rid of that plan, right?  I guess I'm saying,

17  therefore, what am I supposed to do now?

18           MR. HARRIS:  Yeah.

19           THE COURT:  To the extent you identify an issue,

20  that's helpful.  But yeah.

21           MR. HARRIS:  Yeah.  I think, Your Honor, I'm simply

22  reacting to your question earlier on.  And I guess there are

23  circumstances, hypotheticals that various people have come up

24  with, under which the plan that would be going to confirmation

25  or for Your Honor's consideration, in terms of two confirmable

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    plans, would be the -- let me back up.

2            There are circumstances one could hypothesize under

3    which the TCC ad hoc committee plan is the only plan going

4    forward.

5            THE COURT:  Correct.

6            MR. HARRIS:  Okay.

7            THE COURT:  And if that was --

8            MR. HARRIS:  And if that were to occur, the issues

9    that I'm talking about right now would be front and center, in

10   terms of its confirmability.

11           THE COURT:  Right.

12           MR. HARRIS:  So when you asked the question earlier on

13   this morning -- are there issues that we should be addressing

14   in advance of a confirmation hearing that could be resolved and

15   allow us to get to a confirmation hearing more easily, should

16   that occur -- these are two that my clients believe should be

17   on that list.

18           THE COURT:  No, I'm -- this is another way of saying

19   I'm glad you identified them.  And to me, it is -- we're

20   stretching out the confirmation on a linear way to address and

21   vet and test, at least from my point of view, the validity or

22   invalidity of these provisions.  And so you've identified a

23   couple, and that's great.

24           MR. HARRIS:  Great.

25           THE COURT:  I mean, I hope you do it.  And to the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   extent that it can lend itself to a discrete legal challenge,

2   that's fine.  If we have to wait, and it becomes part of the

3   confirmation objection that might be filed in a more

4   traditional schedule, that would be fine, too.

5           So I will leave it at encouraging you to see if you

6   can get a consensus on how to tee it up ahead of time, okay?

7           MR. HARRIS:  We're happy to do that, Your Honor.

8           THE COURT:  Okay.

9           MR. HARRIS:  Thank you very much for the time.

10          THE COURT:  Okay.  Mr. Stamer, I --

11          MR. STAMER:  Really short, Your Honor.

12          THE COURT:  We'll never get to the motion if you keep

13  coming back.

14          MR. STAMER:  I think this is actually probably a

15  pretty good segue to the motion, if you just give me a couple

16  of minutes.  Again, for the record, Mike Stamer --

17          THE COURT:  Yes, sir.

18          MR. STAMER:  -- from Akin Gump, on behalf of the ad

19  hoc noteholder committee.

20          I'll start with where Mr. Harris ended.  Our plan's

21  not perfect, and we're happy to talk to people and the Court as

22  we move forward to try to resolve open issues.  But I think you

23  need to understand who Mr. Harris represents.  He represents

24  four institutions, all of whom sit on Mr. Bennett's committee.

25          THE COURT:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. STAMER:  So he talks about being a splinter

2  bondholder group; they're actually on the equity committee and

3  they have written commitments to fund the equity plan.  So what

4  they're looking to do -- this is the ultimate hedge.  And it's

5  also -- it's offensive, as well because they want to be able to

6  participate in our plan if they lose.

7    And oh, by the way, they're making the argument that

8  the distributions are being made on account of our claims?

9  That's not -- they're not making that as a bondholder.  Because

10  if that's the case, we're getting paid more than in full.  The

11  financing we're providing, Your Honor, is new money, not on

12  account of our claims.  And if we made it available to all

13  unsecured creditors or all bondholders, they would argue --

14  these same clients in Mr. Bennett's group, would argue, you're

15  getting paid more than hundred cents.

16    THE COURT:  But now you're arguing the merits.

17    MR. STAMER:  I'm sorry.  Okay.

18    THE COURT:  That's the merits.

19    MR. STAMER:  You're right.  You're right.

20    THE COURT:  Okay.

21    MR. STAMER:  So the only other issue is, it relates to

22  Mr. Karotkin's very strong statement that you can't take

23  estimation away.  You have to estimate.  You have to estimate.

24    We completely disagree.  We think, actually, under

25  502(c) you no longer have to estimate the claims because under

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    our plan, the liquidation of these claims will not unduly delay

2    these proceedings.  That's number one.

3            And number two, Mr. Feldman got up and said, if you

4    don't approve my settlement, then you need to estimate me.  So

5    on the one hand, they're saying you have to estimate the tort

6    claims, and on -- the next thing on the calendar, they are not

7    estimating the subrogation claims and they're settling, which

8    is exactly what we're doing with respect to the torts.

9            So Your Honor, I'm --

10           THE COURT:  But you don't disagree, do you?  The

11   valuation issue, whether we call it estimation or valuation,

12   it's the same inquiry, isn't it?

13           MR. STAMER:  It is.

14           THE COURT:  Yeah.

15           MR. STAMER:  The answer is, it's a different name.

16   From your perspective, you do not need to do a bottoms up, full

17   analysis, for purposes --

18           THE COURT:  No, I understand.

19           MR. STAMER:  -- of capping individual plaintiffs'

20   claims.  You need to make a decision that the settlement is

21   reasonable and that's it's fair and equitable, that it doesn't

22   overpay the torts.  And we can talk about the best way and the

23   most efficient way to do that, but the reference to withdrawal

24   of the reference -- the district court didn't withdraw your

25   jurisdiction over 1129(b).

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  I know.

2          MR. STAMER:  Okay.

3          THE COURT:  I'm the one that made the recommendation,

4    remember?

5          MR. STAMER:  We understand.  Yeah, I do.  Very well.

6          THE COURT:  Judge Donato wasn't just sitting around

7    one day and saying, I think I'll take something away from

8    Montali.  I'm the one that said, I have to, and he did.  So

9    anyway, okay.

10          We're going to move to the motion.

11          MR. STAMER:  Thank you, Your Honor.

12          THE COURT:  Thank you, Mr. Stamer.

13          All right.  A couple of opening comments on the

14    motion.  First of all, I appreciate that a lot of progress has

15    been made in the last few days.  And again, I can't even keep

16    up with all the progress being made.  And to the extent that

17    the debtor, on the one hand, and various parties, the

18    government agencies and others have, when they've been able to

19    narrow issues, that's helpful.

20          I still, however, find that what's unhelpful is to

21    have and to think about that I would, under any circumstances,

22    figure out a way to approve what appears to be at least three

23    separate documents and a term sheet and two letters from

24    counsel yesterday, in the last couple days, and a proposed

25    order that's fifteen pages long.  And I don't know how anybody

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    could possibly understand what the deal is.

2          So I'm kind of struggling with why can't there be,

3    first of all, a discussion with any pending challenges.

4    Certainly, the TCC has objected on subordination issues, and

5    some of the other objections go to very specific things, but at

6    the end of the day, it seems to me that the better way to deal

7    with this would be to restate the RSA and not have a separate

8    term sheet that is supposed to -- which probably gives way to

9    the RSA if there's an inconsistency, and then have two letters

10   from Mr. Feldman, and then have a proposed order.  It all is

11   almost incomprehensible.

12         So I'm -- and this really is the -- I believe Mr. Troy

13   made the objection from the federal government's point of view

14   that it's just almost too hard to sort out the words.  It's not

15   that we can't read it; it's that you need a road map to figure

16   out what the deal is.

17         So that's a long way of saying I would much prefer, if

18   I am persuaded to grant the debtors' motion, to grant it in a

19   restated format so that it could be in one document.

20         Now, I understand that the subrogation group have lots

21   of members and banks and all over the country, and it's not

22   easy to round up all the cats and get them back online again,

23   but it seems to me that having a comprehensive document that

24   would put in one, four-cornered place what the ground rules

25   are, would be much more constructive.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    So I'll be open to what people want to say about that,

2    and I will then ask Mr. Karotkin to go ahead and tell me --

3    you're going to do this, aren't you?  Where we are and where

4    you think -- what objections you still need to have me rule on?

5    Because it seems to me, a number of them, as you say, have been

6    resolved by your own representations.  Is that clear?  Say yes.

7          MR. KAROTKIN:  May I take the Fifth?

8          I think, Your Honor, that it is not quite as

9    complicated as you think.  I think that with respect to the RSA

10   and the settlement agreement, the terms are not that

11   complicated.  And I think that Mr. Feldman's letter, which is

12   attached to his responsive pleading -- to which, by the way,

13   the debtors concur -- has resolved most of the objections, and

14   I think that with respect to the objections raised by Mr. Troy

15   and others as to whether or not they are included within the

16   definition of subrogation claimants, I think that's pretty

17   easy.

18         THE COURT:  That's resolved, right?

19         MR. KAROTKIN:  That's been resolved.

20         THE COURT:  Yeah.  Okay.

21         MR. KAROTKIN:  And I think to the extent the U.S.

22   Trustee had some objections with respect to --

23         THE COURT:  Well, the U.S. Trustee never even filed

24   anything --

25         MR. KAROTKIN:  No.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT: -- that I'm aware of. So I don't think

2  the U.S. --

3    MR. KAROTKIN: No. The U.S. Trustee had raised some

4  issues with us --

5    THE COURT: Right.

6    MR. KAROTKIN: -- as to fees and how those would be

7  addressed. I think that we have resolved those as well.

8    THE COURT: Right.

9    MR. KAROTKIN: So I think that what is left for the

10  Court to consider, and I think that we tried to set this forth

11  in our reply pleading, is the issue raised by the TCC with

12  respect to the made whole.

13    THE COURT: Yeah. But you realize that I got some,

14  like, sixty pages of argument late Monday evening. I mean, I

15  just -- I can only process so much. And I didn't mean to imply

16  that I couldn't understand it; I'm saying that Mr. Troy's

17  objection originally just points out inconsistencies. And

18  maybe you could -- maybe it's completely consistent to you, but

19  I don't -- I couldn't do a diagram of -- outline in one outline

20  the RSA and the settlement agreement and the term sheet and

21  then the proposed order and then the two letters from Mr.

22  Feldman. It's all one bundle --

23    MR. KAROTKIN: Well --

24    THE COURT: -- of stuff, right?

25    MR. KAROTKIN: Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  It's not rocket science; it just needs to

2  be clear so somebody knows what the deal is.

3      MR. KAROTKIN:  Well, I'm not exactly sure what you're

4  suggesting that we should do.

5      THE COURT:  Just restate.  Like frequently you will

6  restate in a plan or restate in an agreement.

7      MR. KAROTKIN:  Okay.

8      THE COURT:  A restatement of what the relation -- what

9  the consideration, and the tradeoff, and what's being done.  I

10  mean, again, there may be some other people that want to be

11  heard and convince me that I should kill the whole thing, but

12  I'm inclined to think that you've made your case.  But that's

13  really what I think is -- I mean, Mr. Karotkin, I don't know

14  how somebody who isn't completely educated in all of these

15  special areas would understand this conglomeration of

16  documents, if we just gave it to someone and said, here, try to

17  figure this out.  And if you had one restated RSA, then you

18  would do it.  And then you don't even need a separate motion.

19  The motion approves the RSA, right?

20      MR. KAROTKIN:  Well, we certainly could do that.  I

21  think it would be --

22      THE COURT:  Well, is it a problem?

23      MR. KAROTKIN:  Pardon me?

24      THE COURT:  Is it a problem?  I mean, Mr. Feldman, is

25  it a problem for your --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1     MR. KAROTKIN:  I don't think it's a problem.  Mr.

2  Feldman's here, and he can address it as well.  I don't think

3  it's a problem.  I think that to the extent there are

4  outstanding objections, you could address them today and we

5  could submit a restated RSA that clearly sets forth the

6  agreement.

7     THE COURT:  No, I think the point -- but I think the

8  point -- maybe it was Mr. Feldman's submission and not yours,

9  but one of them -- again, I started this segment by

10  complimenting the parties for making so many -- such progress.

11  But I said -- you even said, the final something would be there

12  for people to look at, right?

13     Mr. Feldman, is this --

14     MR. KAROTKIN:  And I think that what is reflected in

15  the revised order I think addresses those particular issues.

16     THE COURT:  Yeah, but that's my point.  When the

17  revised order starts to be the most important document, then it

18  gets a little too much -- too confusing, to me.

19     Mr. Feldman, you don't have -- is this a problem?

20     MR. FELDMAN:  No.  It's not a problem at all, Your

21  Honor.  But I want to just go back slightly, just so we

22  understand how we got here and what it is we are asking the

23  Court to approve today.

24     When we did the RSA, Your Honor, the company had not

25  yet filed a plan.  So there was a term sheet --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Right.

2          MR. FELDMAN:  -- for the plan that was attached to the

3     RSA.

4          THE COURT:  No, I know.  I'm a fan of term sheets, so.

5          MR. FELDMAN:  The plan is now on file, and obviously

6     takes care of -- it reflects the term sheet, supersedes it.

7          THE COURT:  But there's already changes to it.

8          MR. FELDMAN:  Let me address that as well.

9          Some of the objectors raise what we think are very

10    legitimate points that pointed out things that were not

11    intended --

12          THE COURT:  Right.

13          MR. FELDMAN:  -- as part of the business deal.

14          THE COURT:  Right.

15          MR. FELDMAN:  And so we did put together a letter that

16    attempts to address those, to the extent we were willing to

17    address them.  That has to now get memorialized in a modified

18    plan that has to be filed by the company because it goes to

19    things like releases, et cetera.

20          THE COURT:  Back to releases, yeah.

21          MR. FELDMAN:  Yeah.

22          THE COURT:  I mean, certainly the releases.

23          MR. FELDMAN:  Yes.  So we think that makes complete

24    sense, Your Honor.  We should file -- we should create an

25    updated RSA and attach what will ultimately become the modified

PG&E Corp., Pacific Gas & Electric Co.

1    plan to it and ask the Court to approve that.

2        But what hasn't changed and what really needs to be

3    done today, Your Honor, would be for the Court to consider the

4    allowance of the claim at eleven billion dollars, which is

5    really core to what we're asking for.

6        THE COURT:  Right.

7        MR. FELDMAN:  All of the other issues, frankly, are

8    really -- go to confirmation issues, in the sense that -- and I

9    don't think they're --

10       THE COURT:  No, they do.  I agree with you.

11       MR. FELDMAN:  I don't think they're stand-alone

12   issues --

13       THE COURT:  I mean, look.

14       MR. FELDMAN:  -- we ought to be briefing, so.

15       THE COURT:  Let's try a simple case.  In a simple

16   case, which we -- number one, this isn't a simple case.  In a

17   simple case, a trustee would come in and say, I just settled

18   with this creditor here, and I'm going to pay him eleven

19   dollars.  And the creditors say, yeah, I really have a claim

20   for twenty, but we're settling for eleven dollars.  And you'd

21   have a simple agreement that says trustee pays eleven dollars

22   to creditor, who waives any other claim, period.  And that's

23   what you're doing.  And whether it's under the ANC Properties

24   (sic) principle of 9019 -- I mean, to me, that's what was

25   confusing is are there two motions or one?  And I think that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  was Mr. Troy's argument.

2      So if under 9019 the debtor says I would like to

3  compromise with this group called the subrogation claimant, and

4  I'm doing it by virtue of this document, called an RSA, and the

5  RSA must, necessarily, be consistent with the plan, then I

6  would say, fine.  That motion is evaluated under the -- you

7  know, the ANC test, and again, if objections are still liable,

8  they're overruled, and you approve it.

9      And then when our grandchildren are trying to figure

10 out what we do, they don't go back and say, where's that letter

11 from Mr. Feldman that was Exhibit B to the brief that Mr.

12 Karotkin filed the night before the hearing?  You have an

13 operative document that does it.

14     MR. FELDMAN:  Yes.

15     THE COURT:  That's all.

16     MR. FELDMAN:  And we will, Your Honor, create an

17 operative document --

18     THE COURT:  Okay.

19     MR. FELDMAN:  -- subject to this Court's ruling.  I

20 don't think it's a difficult thing to do.  And again, we are

21 asking that the Court approve the settlement under 9019 under

22 the applicable test in the Ninth Circuit, the ANC case.

23     THE COURT:  Right.

24     MR. FELDMAN:  And we are asking the Court to authorize

25 the debtors to enter into an RSA, which has benefits for my

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   clients --

2           THE COURT:  Of course.

3           MR. FELDMAN:  -- and benefits for the debtors.  To the

4   extent that part of that RSA requires the company to propose a

5   plan that has provisions people don't like, we're going to hear

6   a lot about those provisions today, but I would argue

7   vociferously, Your Honor, that we ought to address those at an

8   appropriate time.  It shouldn't prevent the settlement and it

9   shouldn't prevent the RSA.

10          THE COURT:  But there are a couple questions, and I'm

11  not even sure -- I mean, I tried to keep track of all the

12  objectors so I could remember to call on them if they're still

13  viable, but I have a couple of my own that you can, perhaps,

14  dispel.  And that is, there's no theory under which you end up

15  with an admin claim of eleven billion dollars, is there?

16          MR. FELDMAN:  There is no theory under which --

17          THE COURT:  Any theory?

18          MR. FELDMAN:  -- I wind up with an admin claim of

19  eleven billion dollars.

20          THE COURT:  I mean, somebody made that argument, and I

21  went, this couldn't possibly be right.

22          MR. FELDMAN:  But this is the law of unintended

23  consequences.  We didn't say we don't wind up with an eleven

24  billion dollar admin claim, and there is an ambiguity about

25  what would happen if the company turned out to be insolvent and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  we had an eleven billion dollar claim, or are we asking to

2  still be paid eleven billion in cash?  And we've said and

3  addressed that in the letter --

4          THE COURT:  You addressed that in the letter.

5          MR. FELDMAN:  -- which we will --

6          THE COURT:  That's right.

7          MR. FELDMAN:  -- address in the plan.

8          THE COURT:  Right.

9          MR. FELDMAN:  But that is, in fact, not the case.

10         THE COURT:  And the other issue -- well, that.  You

11 just said it.  If the plan is -- well, if a competing plan is

12 confirmed, you have your eleven billion dollar claim that's

13 approved under 9019.  Leaving aside whether it's the same

14 amount that's in the other plan, that's not the point.  There

15 could be a third plan that had something else, but you've got

16 yourself -- you "take to the bank" an eleven billion dollar

17 settlement amount.

18         MR. FELDMAN:  Correct.

19         THE COURT:  With the good side and the bad side.

20         MR. FELDMAN:  Correct.

21         THE COURT:  Okay.

22         MR. FELDMAN:  We'll take the risk on Tubbs turning

23 into a homerun, as Ms. Dumas suggested, and the company has

24 decided they'll take the risk that they win Tubbs and are

25 potentially paying us at a high number.

(970) 988-0100   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  Well, that's right.  And they may be

2 paying you more than they might have paid you if you hadn't

3 made the settlement.

4    MR. FELDMAN:  They might.

5    THE COURT:  That's the nature of the settlement.

6    MR. FELDMAN:  But it will not be more -- it will not

7 be more than hundred cents on the dollar, and we certainly will

8 demonstrate that in conjunction with confirmation, if we ever

9 get to that point.

10    THE COURT:  And you still adhere to the conception,

11 not one of your opponents, that you have an impaired claim.

12 And presumably will vote your claim.

13    MR. FELDMAN:  We do believe we will have an impaired

14 claim, and we've indicated in the RSA that we will vote in

15 favor of the company's plan.

16    THE COURT:  And I believe you said at one of the prior

17 hearings that their -- originally, you had eighty-five percent

18 signup.  You still may not have a hundred percent, so you still

19 may get votes against your plan by your own classmates.

20    MR. FELDMAN:  Correct.  But I think it's worth

21 updating the Court just on where those numbers stand today just

22 because I think it's relevant in a slightly different way, as

23 well.  We are now up to 134 subrogation claimants who have

24 signed up to the RSA, Your Honor, including a fair number of

25 them who have signed up since the Court terminated exclusivity,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    which I think is an indicator of how they feel about the TCC

2    bondholder plan.  And those 134 holders represent slightly more

3    than ninety-six and a half percent of the total subrogation

4    claimants.

5         THE COURT:  And you haven't been soliciting votes in

6    violation of Section 1125, have you?

7         MR. FELDMAN:  We have not been soliciting any votes in

8    violation, Your Honor.

9         THE COURT:  All right.

10        MR. FELDMAN:  We have been asking people to review the

11   RSA and, if they're willing to join it, to join it.

12        THE COURT:  Okay.  Well, we kind of got to where I was

13   concerned in an indirect way, but --

14        MR. FELDMAN:  So we have more than ninety-six and a

15   half percent, and I suspect we will get much closer to ninety-

16   eight percent by the time we're done.

17        THE COURT:  So why don't we make this a little bit

18   easy?  By my calculation, the Governor's office and the United

19   States and, I believe, the state agencies, their problems all

20   appear to have been resolved.  And so if any of their

21   representatives or counsel disagrees with that statement,

22   please speak up.  If I don't hear from you, I will assume that

23   that's a correct statement.

24        So Mr. Troy?

25        MR. TROY:  Matthew Troy, Your Honor, Department of

(972) 786-3011 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Justice, Civil Division on behalf of the United States.  It is

2    not a correct statement, Your Honor.

3            THE COURT:  Okay.

4            MR. TROY:  One of the objections was addressed by a

5    revision to the order.  The other objection having to do with

6    the settlement payment condition tied to a third-party release

7    for the subrogation claim holders is not resolved.

8            THE COURT:  But I thought that's been resolved.  You

9    don't think it's been resolved by the way the plan would be

10   reworded?

11           MR. TROY:  No, I don't, Your Honor.  And I think for

12   purposes of your Court's consideration of whether or not it

13   should approve an RSA today that contains a provision like the

14   settlement payment condition is something that you should

15   consider as to whether it is appropriate for the RSA to be

16   approved today.  I can go into it now if you want to or I can

17   wait.

18           THE COURT:  Well, no.  Say it.  I mean, I thought you

19   were taken care of by provision.  So what's the fatal flaw?

20   Well, you heard Mr. Feldman agree there can be a restated RSA.

21   And you haven't seen it, obviously, but --

22           MR. TROY:  Right.

23           THE COURT:  And I -- look, I started by agreeing with

24   you that there was a lot of internal ambiguity and difficulty

25   just parsing through.  Do you still think -- well, and partly

PG&E Corp., Pacific Gas & Electric Co.

1    correcting it and restating it is to avoid that.

2              MR. TROY:  Right.  And what I've seen in Mr. Feldman's

3    letter doesn't do it.

4              THE COURT:  Okay.

5              MR. TROY:  So if you can, I can try to walk you

6    through it.

7              THE COURT:  Yeah.  Please do.

8              MR. TROY:  Okay.  So the point is, Your Honor, that

9    they have a restructuring support agreement.  There are parties

10   to that:  the debtors and the subrogation claim holders who

11   sign on to it.

12             THE COURT:  Okay.

13             MR. TROY:  Those are the only parties to that.  As

14   part of the compromise, the overall compromise there, what the

15   subrogation holders have negotiated and demanded is that if the

16   debtor goes and negotiates with anyone else --

17             THE COURT:  Right.

18             MR. TROY:  -- holding a wildfire claim --

19             THE COURT:  They've got to release them.

20             MR. TROY:  -- they've got to release them.

21             THE COURT:  And they took it out, though.

22             MR. TROY:  Excuse me?

23             THE COURT:  I thought they took that out.  And it's

24   voluntary, the -- what I read in the reply briefs was that --

25   this gets back to, maybe it's in a Feldman letter somewhere --

(972) 499-0260 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    that that is no longer going to be operative and that it's

2    consensual, and that somebody --

3              MR. TROY:  It's operative the moment the RSA's

4    approved and my clients go to sit down with the debtors and

5    negotiate a settlement -- potential settlement, of the

6    government claims, and we happily reach agreement on a number,

7    and then the debtors slide across the table to me a release, a

8    third-party release.

9              THE COURT:  Because you've reached agreement with the

10   debtor?

11             MR. TROY:  Correct.  And that's a game changer.

12   That's a showstopper.

13             Let me give you -- try to count -- try to illuminate

14   you on this by contrasting it with another plan support

15   agreement that exists in this case.  It hasn't come before your

16   Court.  I'm going to walk through, real quickly, some of the

17   provisions there; I'm assuming you're not familiar with them.

18   This is with the public entities.  If you're familiar with

19   them, please stop me.

20             THE COURT:  Well, I'm familiar with them in the sense

21   that I approved something --

22             MR. TROY:  All right.

23             THE COURT:  -- previously, but --

24             MR. TROY:  This is getting -- there's termination

25   events in there.  The public entities negotiated termination

PG&E Corp., Pacific Gas & Electric Co.

1  events in there for their benefit.  They can terminate the PSA

2  if these things happen.

3          One of these things is the failure of the debtors to

4  propose a plan in these cases that does not contain a third-

5  party release of the public entities.  I looked at that and I

6  said, hmm.  That's interesting.  I might have an issue with

7  that.  But that's a plan confirmation issue.

8          If the debtors do actually go ahead and propose a plan

9  that says that, I'm going to take a hard look at it.  Not

10 because it's a public entity, but because it's just a third-

11 party release that runs to the benefit of the public entities

12 from everyone in the case, which is exactly what is happening

13 here:  a release running to the subrogation claim holders from

14 all parties in the case for all of their claims.

15         THE COURT:  Well, you say "all parties in the case".

16 The only -- that I understood, the change here was it is

17 voluntary if a creditor makes a deal with the debtor, says, I

18 will release Mr. Feldman's client.  But if he doesn't want to

19 do that, he doesn't have to.

20         MR. TROY:  Right.

21         THE COURT:  In theory, he doesn't have to.  It goes on

22 with its claim.

23         MR. TROY:  But it seriously hinders the efficacy of

24 settlement negotiations when you start with the premise that

25 regardless of being able to reach an agreement on a number

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   between us, the claimants and the debtor, you also have to give

2   this release to somebody else.

3          THE COURT:  Well, it might hinder a settlement --

4          MR. TROY:  Because this is what this agreement, to

5   which you were not a party to, requires.

6          THE COURT:  No, I know.  It might hinder settlement,

7   but is it legally prohibited under controlling law?

8          MR. TROY:  My view would be yes, under ANC Properties

9   (sic) because the issue is two parties are affecting, through

10   your Court asking you to approve a compromise that effects the

11   rights of other parties.  It seriously hinders negotiations

12   over a potential settlement with the debtor when this is

13   hanging out there.  And it is a requirement.  It is the

14   touchstone from which settlement agreements then start.  This

15   has to be given.

16          THE COURT:  Okay.

17          MR. TROY:  And that's only my point, is that that

18   materially impacts nonparties, other creditors in the case, to

19   the RSA.

20          THE COURT:  So you don't think it violates things like

21   Lowenschuss, but rather ANC Properties (sic), as best interest

22   of creditor?  I mean, Lowenschuss says you can't have third-

23   party release.

24          MR. TROY:  I mean, implicitly, it doesn't -- I mean,

25   it does.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Well --

2          MR. TROY:  I mean, implicitly it does.  I mean,

3    they're trying to -- they're trying to thread that needle

4    with --

5          THE COURT:  Okay.

6          MR. TROY:  -- put that camel through the needle eye.

7          THE COURT:  I'm not saying that your argument is

8    crazy; I'm just trying to say where you believe the flaw is,

9    and I think you're pointing it out there.

10          MR. TROY:  I mean, ultimately, it is 9019 and it's ANC

11   Properties (sic) which says the Court shouldn't be approving

12   and RSA that impacts, that prejudices, nonparties to the

13   settlement.

14          THE COURT:  And you think ANC says that?

15          MR. TROY:  I believe that it does, yes.

16          THE COURT:  All right, because I don't --

17          MR. TROY:  At least it's a consideration that must be

18   given.

19          THE COURT:  Well, I don't agree or disagree with you;

20   I just hadn't thought about it.  To me, as a trial judge and

21   also my prior life on the BAP, we dealt with ANC Properties

22   (sic) all the time.  But you usually go through the four major

23   factors that everybody can recite from verbatim.

24          MR. TROY:  Right.

25          THE COURT:  But that's a little -- this is not one of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    those; it's --

2          MR. TROY:  Well, I'm thinking of, I think, one of

3    those factors.  I mean, it is in the ANC decision.

4          THE COURT:  Yeah.  I know.  I know.  But what I'm

5    saying is it's a subtle one that doesn't come up as often as --

6          MR. TROY:  Your Honor, it may be subtle, but I would

7    submit that it will have a material impact going forward in

8    this case the day after you approve the RSA, if that's in

9    there.

10          THE COURT:  Okay.  Thank you, Mr. Troy.

11          MR. FELDMAN:  Your Honor, do you want me to address

12    one at a time, or do you want everybody to come up?  This is

13    actually a fairly easy one to address.

14          THE COURT:  Well, if it's a fairly easy one, have at

15    it and get Mr. Troy to sign up.

16          MR. FELDMAN:  Your Honor, the definition -- again, I

17    understand it's a complicated document.  But the definition in

18    the document that requires the release requires it for IP

19    claims, which are defined as wildfire claims, but excludes

20    public entities.  So the provision he's complaining about

21    doesn't actually apply if the company wants to go settle with

22    his client.  So that's the easiest answer, but I'm happy to

23    also address the more substantive question, which is why do we

24    have the requirement, and what's it intended to accomplish?

25          THE COURT:  Well, I think --

PG&E Corp., Pacific Gas & Electric Co.

1          MR. FELDMAN:  It's up to Your Honor whether you want

2    to hear that now or you want to hear it later.

3          THE COURT:  Well, listen.

4          Mr. Troy, are you satisfied with that explanation?

5    And you can just stay there.  I mean, I want to try to deal

6    with these specifics, and I didn't know you were still in the

7    game with your objection.  So does that clarify it, or not?

8          MR. TROY:  Yeah, I think so, if Mr. Feldman's willing

9    to stand by that representation to this Court that that is not

10   going to be a requirement imposed as part of negotiations that

11   my clients might have with the debtors.

12         THE COURT:  So you're here representing your clients;

13   you're not amicus for the IP clients?

14         MR. TROY:  No, I am not.  But no, that's fine.  I'll

15   accept that representation.

16         THE COURT:  Okay.  Well, again, that's the kind of

17   thing that is easily fixed in a clear draft, it seems to me,

18   so.

19         MR. FELDMAN:  Agreed, Your Honor, and we'll share it

20   and make sure that it's clear.

21         THE COURT:  Okay.  What I'd like to do, then -- and

22   Mr. Feldman, stay there -- let's go down the list with the

23   objection.  No, I mean stay nearby, but --

24         Counsel -- no, one moment.  Counsel, you come up next.

25   That's Ms. Winthrop, right?

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MS. WINTHROP:  Good afternoon, Your Honor.  Rebecca

2    Winthrop --

3          THE COURT:  Yeah, right.  So --

4          MS. WINTHROP:  -- of Adventist.  We have the same

5    issues with respect to the third-party release, Your Honor, as

6    well as an additional belief that it violates AB 1054 because

7    it's a unilateral release.  It is a one-way release, going in

8    favor of the insurers so that we, in order to settle, are faced

9    with a Hobbesian choice between either litigating all the way

10   through the circuit the amount of our claim, or giving a

11   release of our insurance carriers, only to allow them, since

12   it's a unilateral release in favor of the insurance carrier, to

13   come back to us and sue us for reimbursement, if they feel that

14   we have received more than that to which we are entitled.  So

15   it put --

16         THE COURT:  And you think that's in 1054?  Again, I

17   don't -- I'll take your word for it.

18         MS. WINTHROP:  Well, the 1054 requires fire claim

19   victims to be fully paid for their claims.  And so it is my

20   belief that this not only violates Lowenschuss, because it is a

21   coerced, nonvoluntary release, but also it violates the nature

22   and spirit of AB 1054.

23         THE COURT:  So the debtor can't solve the problem by

24   making you whole?

25         MS. WINTHROP:  But Your Honor, the only way that we

(972) 805-4357 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    can -- first of all, the debtor doesn't propose to make us

2    whole; it proposed a fund which they believe will be estimated

3    to be made whole.

4         THE COURT:  But you're arguing your out of the fund.

5    If you are out of the estimation, you think you're still in the

6    fund?

7         MS. WINTHROP:  Well, Your Honor, we are -- even if we

8    are liquidated, we are supposed to be paid from the pot of

9    money put into the liquidation.

10        THE COURT:  To the trust.

11        MS. WINTHROP:  In the trust, yes.  Yes.

12        THE COURT:  Well, that was on -- I mean, that was --

13   that's worth clarifying because that's true with the government

14   entities, as well.

15        MS. WINTHROP:  That's exactly it, Your Honor.  That is

16   exactly it, Your Honor.

17        THE COURT:  I mean, Ms. Dumas made the point about

18   there's already, today, she says, six billion dollars in there.

19   If she's right and that is part of the trust, that is half the

20   trust, or nearly half, right?

21        MS. WINTHROP:  Yes, Your Honor.

22        THE COURT:  So okay, but that's a different question.

23   That's not a 9019 question.  You believe that --

24        MS. WINTHROP:  Well, as Mr. --

25        THE COURT:  I mean, they're related, obviously.

PG&E Corp., Pacific Gas & Electric Co.

1    MS. WINTHROP:  Yes.  Yes.  I mean, it locks them into

2  an approach.  And it not only locks the debtor into an

3  approach.  It locks the liquidation trust into an approach,

4  which they cannot settle any claim within the purview of what

5  they're supposed to be paying out unless they absolutely demand

6  from the victim a release of their insurance carriers, when, in

7  fact, they may be now exposed to claims back from their

8  insurance carriers.

9    THE COURT:  And the Adventist Health is within the

10  definition of PI --

11    MS. WINTHROP:  Yes.

12    THE COURT:  -- for purposes of this agreement?

13    MS. WINTHROP:  Yes, Your Honor.  Yes.

14    THE COURT:  Okay.  Well, Mr. Feldman, do you want to

15  tell me why that's --

16    MR. FELDMAN:  Yes.

17    THE COURT:  Is that an easy one, too?

18    MR. FELDMAN:  I think it's actually fundamental to

19  what we're talking about today, Your Honor.  And I want to

20  address, and I appreciate the opportunity to do it now.

21    Your Honor, there are actually two releases that are

22  embedded in the RSA, and I want to differentiate between the

23  two of them so that there's not confusion.  The one that is

24  contained in the plan, which is sort of a typical

25  release/exculpation for activities that took place during the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Chapter 11 case, we've now modified that, as set forth in the

2    letter, to actually be an opt-in release.

3            THE COURT:  Right.

4            MR. FELDMAN:  And we have to reflect that.

5            There's a second release that is not drafted, not yet

6    before this Court for approval, which will have to come before

7    the Court as part of the confirmation process which would

8    require, as outlined, that if you settle your claim, your IP

9    claim with the company, with the trust, part of that settlement

10   will be you will agree this is going to be your sole source of

11   recovery.  You're not going to settle on the cheap with the

12   company and then turn around and sue your insurer, which is,

13   contrary to what Mr. Julian says, and insured on insurer

14   litigation.

15           MR. FELDMAN:  One of the reasons that my clients are

16   willing to compromise their claims at eleven billion dollars is

17   so that they understand they get eleven billion dollars.

18   They're not going to turn around and pay five of it back to

19   these claimants.

20           And in a solvent company case, which this should be,

21   which is how we're going to meet AB 1054, then the IPs should

22   understand this is your source of recovery.  The company's

23   solvent, and this is where you're collecting your money from.

24   And if the company turns out not to be a solvent company case,

25   then all this is off the table.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  Well, yeah.

2    MR. FELDMAN:  None of the releases apply.

3    THE COURT:  But let's assume it's solvent.  So what do

4  I tell Mr. Troy or Ms. Winthrop about how they're going to --

5  first of all, are they hamstrung for negotiations?  And

6  secondly, are they locked in to never getting a full payment?

7    MR. FELDMAN:  They're not hamstrung in negotiations,

8  and they're not locked in to never getting a full payment.  If

9  they choose to liquidate their claim through whatever court

10  process they decide to liquidate their claim, presumably Judge

11  Donato is going to determine that the trust has sufficient

12  value in it, and they're going to get paid that amount of

13  money.  So that's the whole purpose of the estimation process.

14    But for that, Your Honor, there is no settlement.

15  There is no deal, because the whole fundamental premise of the

16  compromise is that, if you take what's available to you from

17  the trust, and presumably the trust with the IP lawyers are

18  going to create a matrix --

19    THE COURT:  No, I know about --

20    MR. FELDMAN:  -- that's going to be available for

21  people.

22    THE COURT:  Sure.  I know how that works.

23    MR. FELDMAN:  Right.  If you decide to get paid that

24  amount, as permitted under the matrix, then that's your

25  recovery, and you need to know that going in.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1     THE COURT:  Yeah, but -- so what happens if I approve

2  this restated RSA, you tell me there's a second release coming

3  along that will be operative under the plan -- so are part of

4  these release permissions operative under the RSA or not?  With

5  people like (indiscernible).

6     MR. FELDMAN:  The release that's being talked about

7  now, which would be a release of any claims against your

8  insurer -- the form of release doesn't exist.  You'll have to

9  approve the form of release at some later point in time.  But

10  the concept we are asking the Court to approve today --

11     THE COURT:  Okay, but so --

12     MR. FELDMAN:  -- that if we enter into this

13  compromise, and if we agree to an allowed claim at eleven

14  billion dollars, and the company turns out to be solvent, that

15  we will not have claims back against us.

16     THE COURT:  Okay.  So contrast the federal government

17  with the -- you've just clarified that Mr. Troy and the federal

18  government and therefore the state agencies also are not part

19  of this at all.

20     MR. FELDMAN:  They are not insureds.

21     THE COURT:  They're not insured for these purposes or

22  any other purpose, but Ms. Winthrop's client is.  So Ms.

23  Winthrop's choice, if she is stuck with an order approving the

24  9019 motion, leaving aside an appeal, is it's over.  She has no

25  claim to assert against your client.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. FELDMAN:  That's not correct, Your Honor.

2          THE COURT:  Well, then all right.  That would --

3          MR. FELDMAN:  If she litigates her claim --

4          THE COURT:  If she litigates --

5          MR. FELDMAN:  -- gets a judgement --

6          THE COURT:  If she litigates.  But if she sits down

7 with Mr. Karotkin or Mr. Orsini and cuts a deal, it's --

8          MR. FELDMAN:  Not without coming back to me.  If she

9 cuts a deal, she's releasing me.

10         THE COURT:  Well, she's got to -- if she cuts a deal

11 and she says, that's not good enough, and they say, let's get

12 Feldman and line him up, your client can always move off of

13 that position on a one-on-one basis, right?

14         MR. FELDMAN:  Yes.  But we're asking you to approve,

15 Your Honor, today, that if a IP accepts the settlement under

16 the matrix, accepts the settlement in a negotiation with the

17 company, that that will be their source of recovery.

18         THE COURT:  So you're really wanting me to accept that

19 it's really consensual, even though it's perhaps a bit coerced?

20         MR. FELDMAN:  No.  What we want you to accept is that,

21 if this is a solvent company, the company should be the source

22 of recovery, and that we've compromised our claim --

23         THE COURT:  No.

24         MR. FELDMAN:  -- forty-five percent of our claim --

25         THE COURT:  No, no.  No, I --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. FELDMAN:  -- to create value for the company to be

2     able to be solvent.

3          THE COURT:  Mr. Feldman, I'm aware of that.  But what

4     I'm getting at is that -- let's again stick with Ms. Winthrop

5     as an example, because I don't remember what the amount of her

6     claim is, but I presume it's substantial.  And so let's just

7     say it's two-million dollars.  And if she sits down with the

8     debtor and negotiates anything less than two-million dollars

9     and accepts it, she's finished, because the approval of the RSA

10    makes it so.

11         MR. FELDMAN:  Correct.

12         THE COURT:  That's your legal defense to it.  You

13    can't go after me because I didn't do it.  Now, as a consensual

14    matter, you can always do it, obviously, or whatever.  Okay.

15    So your view is that that takes it outside of any of the Ninth

16    Circuit case law, because it's consensual --

17         MR. FELDMAN:  Correct.

18         THE COURT:  -- consensual even though you might have

19    to take a different way to make yourself whole.

20         MR. FELDMAN:  Correct, Your Honor.

21         THE COURT:  Okay.

22         MR. FELDMAN:  They have a choice.  They can choose to

23    settle and accept whatever deal comes with that settlement, or

24    they can choose to pursue their claim.

25         THE COURT:  Okay.  Well, Ms. Winthrop, unless you want

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    to argue anymore, I just have to figure out whether I'm going

2    to approve that.  So do you want to make any more argument,

3    or -- I mean, you made your point.  I got it.

4            MS. WINTHROP:  Okay.

5            THE COURT:  But I don't want to shut you out.  Want to

6    say anymore?

7            MS. WINTHROP:  One last thought, Your Honor.  I just

8    want to make sure it's understood that he may be done if we

9    actually elect to settle.  He may be -- his client is done.  My

10   client is now open for litigation from his client.  So this

11   is --

12           THE COURT:  Well, but for what?  I mean, if they --

13           MS. WINTHROP:  The right to get reimbursed.  If they

14   feel that we've been overpaid for the amount of our claim, they

15   can then come back to us and sue us for reimbursement and thus

16   get even more recovery.

17           THE COURT:  Yeah, you did make that statement.  But

18   they could do that now, right?

19           I mean, they could do it now.  I mean, if there was

20   never a settlement, if the company is insolvent and this whole

21   RSA deal is off, if an insurance company believes they overpaid

22   an insured, they always have the right to seek to recover

23   reimbursement.

24           MS. WINTHROP:  Normally, at the end of adjudication of

25   a claim, assuming the parties are in agreement, both parties

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    exchange mutual releases.  It's outside of the court system.

2            THE COURT:  No, but --

3            MS. WINTHROP:  It's done voluntarily.

4            THE COURT:  Yeah, I understand.  But what I'm getting

5    at is that you made the point in your opening comment that AB

6    1054 may be violated here because this is unilateral, not --

7            MS. WINTHROP:  Correct.

8            THE COURT:  -- mutual.  And I'm saying, okay, but it

9    may not violate any bankruptcy principle; the question is, what

10   am I supposed to do about it?  I'm not in the business of

11   enforcing AB 1054.  I mean, I'm not supposed to.  That sounds

12   wrong.  I don't know if there is a consequence between two

13   people, neither of whom is in bankruptcy -- your client and his

14   client -- and AB 1054 is implicated.  So what would I do?  How

15   would I solve the problem for you?  Make Mr. Feldman's client

16   give you a mutual release?  I mean, it sounds like a nice thing

17   to ask for.  I don't know that I can order it as a condition to

18   this settlement.

19           MS. WINTHROP:  Well, the same reason why you can't

20   order Mr. Feldman's client, you should not be able to order

21   our -- or make it as a condition, a unilateral condition, to

22   our ability to settle our claim in this bankruptcy case to have

23   a release imposed on us.  We believe that is not a true

24   voluntary release.

25           THE COURT:  Okay.

PG&E Corp., Pacific Gas & Electric Co.

1    MS. WINTHROP:  It's also an election of remedies,

2  because we paid good money to get our insurance policy and to

3  be able to proceed forward with that policy, and we should not

4  have to elect one or the other.

5    MR. JULIAN:  Your Honor, TCC has a view on this, too.

6    MR. FELDMAN:  Your Honor, I want to address the last

7  statement.  There is nothing in the RSA that limits an

8  insured's ability to pursue claims against its insurance

9  company, up to the point where it then decides to settle with

10  the company.  If they think we have not performed properly

11  under our policy -- it's one of the clarifying comments we make

12  in our letter -- we are not looking to release the

13  insured/insurer relationship.  But I will say, if you decide to

14  take your money, you should decide to take your money.

15    THE COURT:  Yeah, but -- okay.  All right.  I'll leave

16  it at that.

17    Mr. Julian, I was going to try to get rid of the other

18  objections first and come to yours, if you don't mind.  But,

19  well, I mean --

20    MR. JULIAN:  I'll argue the release later.

21    THE COURT:  Well, I mean, I'd like to deal with all

22  the issues.  Well, all right, you're here.  You've been

23  patient.  I mean, are you still adhering to the subordination

24  issue?  I mean, that's --

25    MR. JULIAN:  No, Your Honor.  I'm speaking to the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1     release, because we just raised it.

2          THE COURT:  Well, no, I'm speaking to all the issues

3     that you raised.

4          MR. JULIAN:  I will speak to the other ones, too.

5          THE COURT:  Okay.

6          MR. JULIAN:  But since we're on the release, let me

7     say that we have an objection, because these are not voluntary

8     releases the way they've been revised, and we believe it fails

9     under A&C and Lowenschuss.  Two reasons.

10         First, in A&C Properties, the Ninth Circuit set forth

11    two rules for looking at settlements.  When the settlement

12    resolves a dispute between the creditor and the debtor, that

13    dispute, that is, the amount of the allowed claim, is

14    determined under the fairness test of the four-prong test that

15    you know so well.

16         The Ninth Circuit said, when the settlement attempts

17    to address resolution of a claim between one creditor and

18    another creditor, like they're trying to do with this release,

19    there's a different test.  And the Ninth Circuit said, quote,

20    "The bankruptcy court is obligated to preserve creditors'

21    rights", period, close quote, end stop.  There is no exception.

22         THE COURT:  That's in A&C?

23         MR. JULIAN:  Yes, it is.

24         THE COURT:  That's the language in A&C?

25         MR. JULIAN:  And if the debtor and the subrogated

(973) operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    claimants were here today, addressing what you started off

2    talking about, simple case, allowing an 11-billion-dollar claim

3    on 15.8 billion dollars of payments -- it's not 20 by the way;

4    it's 15.8 -- and they had put on some evidence that you are

5    going to require the fire victims someday to put on, meaning,

6    what did you pay, let's have some evidence of it -- then it

7    would be an allowed claim under A&C Properties, and you could

8    prove it.

9         But what they're doing with respect to every single

10   one of these terms is to bind the parties here, with respect to

11   things that are determined as to their fairness in plan

12   confirmation.  And this release is the same one.  A release and

13   a terms sheet -- or a release and a resolution term sheet,

14   pursuant to a plan, is exactly what Lowenschuss shot down in

15   principle, because it was a global release pursuant to a plan.

16   I remember --

17        THE COURT:  But this is voluntary, isn't it?

18        MR. JULIAN:  It's not voluntary.

19        THE COURT:  You don't believe this is voluntary?

20        MR. JULIAN:  Look, look.  In real world, in a

21   resolution trust in a mass court case, you got to get your

22   money out of the matrix, because if everyone litigates in order

23   to preserve their claims, they bankrupt the trust.  That's what

24   they're not telling you.

25        THE COURT:  Well, but that's why you want to have a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    premium on the fund.

2            MR. JULIAN:  And that's why you want to have a matrix,

3    but that's why it's not consensual.  They're forcing it here,

4    and there's no question in my mind that this is a Lowenschuss

5    issue and should be certified to the Ninth Circuit if there's

6    any disagreement on this.  I remember when American Hardwoods

7    came down, because it followed on the heels of A.H. Robins, and

8    the Ninth Circuit said, we're not going to do it in this case,

9    but we think maybe there will be exceptional circumstances.

10           And when Lowenschuss came up, the parties said, hey,

11   exceptional circumstances here.  And the Ninth Circuit shot

12   them down with the strongest words I've ever seen.  They said,

13   you misread American Hardwoods.  And what they were really

14   saying colloquially is there is no such exceptional case in the

15   Ninth Circuit.  This is Second Circuit wizardry.  It is not

16   approved in the Ninth Circuit.  And it impairs the creditors'

17   rights.  We don't want to give releases to these insurance

18   companies.  And if we're forced to do it in order to get money

19   out of a plan, that's not a consensual release.

20           There's no doubt in my mind that that is illegal under

21   A&C Properties' statement that the bankruptcy court is

22   obligated to preserve creditor rights, close quote, and illegal

23   under Lowenschuss.

24           Your Honor, I'll --

25           THE COURT:  Well --

PG&E Corp., Pacific Gas & Electric Co.

1     MR. JULIAN:  -- go to the next issue, which is

2     subordination.  If Your Honor is saying all you want to do

3     today is approve the eleven billion dollars, I think we can

4     move on.  But if part of your settlement gives them pari passu

5     treatment with the wildfire victims and does not preserve the

6     subordination rights under Section 509 of the Code, then we

7     have a problem with it.

8     THE COURT:  But you haven't really persuaded me that

9     509 even applies here.

10    MR. JULIAN:  Well, there's only one case in the nation

11    on it.

12    THE COURT:  Yeah.  Well, how about reading the

13    statute?  Is the insurance company liable with the debtor?

14    MR. JULIAN:  Yes, and I'll tell you why.

15    THE COURT:  Okay.

16    MR. JULIAN:  I had the same problem reading the

17    statute the first time I read it, and then I realized this.  A

18    definition of a claim under the Code, Section 101, includes

19    both contract claims and tort claims.  And the question is,

20    when you have a tort claim -- the debtor's a tortfeasor, and

21    the debtor is liable on a claim by the victim against the

22    tortfeasor.

23    THE COURT:  Yeah, that's --

24    MR. JULIAN:  That's a tort claim.

25    THE COURT:  That's easy.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. JULIAN:  The insurance company is liable to the

2    victim on the same wildfire loss.  The claim is a wildfire

3    loss.  It happens to be a different theory.  Both claims are

4    wildfire losses, Your Honor.  The wildfire loss against the

5    debtor is a tort claim, and the wildfire loss against an

6    insurance company is on a contract claim.  It's a different

7    theory.  One's tort, and one's contract.

8    We have the same problem when there's a surety

9    involved -- a surety or a guarantor of a loan.

10   THE COURT:  But this isn't a surety.

11   MR. JULIAN:  Well --

12   THE COURT:  It's not.  It's different.

13   MR. JULIAN:  But the statute does not limit it to

14   sureties.  It's co-debtors.  And that's what the Court said in

15   Dow Corning.

16   THE COURT:  Well, it says, an entity that is liable

17   with the debtor --

18   MR. JULIAN:  Yes, on the wildfire loss.

19   THE COURT:  Well, it doesn't say -- it just says,

20   liable with the debtor.  It doesn't say what on.

21   MR. JULIAN:  And I'm saying it's --

22   THE COURT:  But that has to be one -- well, okay,

23   that's your argument.

24   MR. JULIAN:  Yeah.  I understand, Your Honor, that

25   you're not the first to have a problem with this, but Dow

PG&E Corp., Pacific Gas & Electric Co.

1    Corning didn't have any problem.

2          THE COURT:  Well, I have a problem with your competing

3    claim that doesn't subordinate them.  So what am I supposed to

4    do with your plan that doesn't subordinate the people you want

5    me to subordinate under exactly the same provisions of their

6    plan?  Is that not a little inconsistent?

7          MR. JULIAN:  No, no.

8          THE COURT:  No?  How do you get around that?

9          MR. JULIAN:  Well, the TCC, faced with the

10   presentation right of forty to fifty percent, looked at the

11   value of the claims and decided that if they were going to be

12   fairly valued with an arrange of 13.5 to 14 billion dollars,

13   that they would give up that right, because there's less risk

14   to being made whole in the TCC bondholder plan.  Remember, Your

15   Honor, what the made whole protection in California -- and I

16   contend under 509 does -- is it's an ultimate backstop against

17   risk for under-funding in a trust or elsewhere.

18         And so as long as the TCC -- as long as the victims --

19   have that made whole protection, and if twenty-five billion

20   dollars was put into a trust, it doesn't matter what the

21   estimation is because they're going to come first with respect

22   to most of the subrogation claims -- not all of them.  Right?

23   Some of the subrogation claims aren't subordinated, because

24   some of the victims didn't file claims.

25         THE COURT:  Well, we don't know that.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. JULIAN:  And it's their burden.  They haven't

2    given you the allocation.  They were supposed to give you an

3    allocation of which of the claims are subject to made whole

4    under state law or Section 509.  They lumped themselves

5    together.  They did this to you and us.

6    THE COURT:  When did all this happen?  When did

7    they --

8    MR. JULIAN:  In the term sheet.  Your Honor, that's

9    exactly what they did.  They lumped them together.  A truthful

10   and accurate legal way to do this would have been to break up

11   the fifteen billion dollars of subrogation claims in this case

12   into claims that relate to victim claims that filed, because

13   there's subordination there in a made whole protection.

14   And then with respect to subrogation claims that were

15   paid on the 15.8 billion dollars that relate to claims that

16   were not filed in this case, then the subrogation claimants

17   would not be subject to subordination.  They've lumped it

18   together and put themselves in a single class and subjected

19   themselves to subordination.  This would all have to be figured

20   out at a plan confirmation time.

21   But my overall point in answering your question is

22   this:  So long as the victims have the made whole rule

23   protecting them in a trust, at a reasonable amount, they were

24   fine giving up subordination.  I mean, if they think that

25   they're going to get a reasonable value in the trust for

(9723) operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    themselves and they settle for that, they're fine.  But in the

2    debtors' plan of 8.4 billion, they need the protection of

3    subordination.

4            THE COURT:  Okay, so that's --

5            MR. JULIAN:  So that's --

6            THE COURT:  That's your theory.

7            MR. JULIAN:  That's the rationale.  But the point is,

8    Your Honor, a settlement under 9019, we believe, cannot change

9    the priorities that exist under the law.  It has to be done at

10   plan confirmation.  I sat here for two hours listening to Your

11   Honor very appropriately telling everyone, these are important

12   plan confirmation issues that have to be briefed someday in the

13   context of getting up to a plan.

14           We have issues here that are the same thing: releases

15   under Lowenschuss, the wiping out of subordination or 509 or

16   state law priority rights.  It should be done in connection

17   with a plan for a couple reasons.  You remember when we argued

18   to you that a capped trust posed a risk of less than full

19   payment to the victims, and you said, all I know from reading

20   Judge Perris's decision, more or less, is I got to estimate

21   high.

22           THE COURT:  Well, I got a little help from the

23   California legislature, too, right?

24           MR. JULIAN:  Yes.

25           THE COURT:  Okay.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. JULIAN:  Yes.  But we don't know yet know whether

2  or not Judge Donato -- what he is going to do in estimation.

3    THE COURT:  That's right.

4    MR. JULIAN:  And I think that this issue as to whether

5  or not this settlement is fair needs to consider a bunch of

6  things, and let me go over them.  One is, how much money is in

7  the trust by virtue of the estimation proceeding?  Two, how

8  much of the money in the separate trust are the victims going

9  to have to share with the public entities?  We've just filed 4

10  billion dollars by FEMA, and I'm informed by the state, 2.5

11  billion dollars from the state -- 6.5 billion.

12    And I heard Your Honor many times saying a liquidated

13  claim is a liquidated claim, and if you don't change your

14  tentative ruling on that, and 6.5 comes into that 8.4-billion-

15  dollar trust --

16    THE COURT:  Well, I can't change the statute.

17    MR. JULIAN:  No, I know.  I'm not objecting.  I'm not

18  disagreeing with you.

19    THE COURT:  Okay.

20    MR. JULIAN:  I'm just saying we got a problem here.

21  And --

22    THE COURT:  So what you're -- well, let me stop there.

23  You're telling me that every liquidated claim that isn't

24  challenged will be a claim in the trust, if that's under the

25  debtors' plan?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. JULIAN:  If it's a fire claim, yes, and it's not a

2    subrogation claim, that's true.

3    THE COURT:  Yeah, right.

4    MR. JULIAN:  And so let me approach it this way.  The

5    debtors settled with some local state agency public entities

6    for a billion dollars.  They did not bring that to you for

7    approval under 9019.  They said that would be approved in the

8    context of a plan confirmation, where you'd know all the facts

9    to see if it's fair.

10    THE COURT:  Right.  I did approve -- did I -- I did

11    approve a billion-dollar settlement, didn't I?

12    IN UNISON:  No.

13    THE COURT:  Oh, the other settlement -- oh, maybe that

14    was the --

15    MR. JULIAN:  No.

16    THE COURT:  -- district attorney then.

17    MR. JULIAN:  No.

18    THE COURT:  That was the criminal charge.

19    MR. JULIAN:  Yeah.

20    THE COURT:  No.  It was the same amount, right?

21    MR. JULIAN:  No.

22    THE COURT:  No, sorry.  Okay.  I got you.

23    MR. JULIAN:  You approved a BYU settlement.

24    THE COURT:  Excuse me.  That's right.

25    MR. JULIAN:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  I'm just confused.

2          MR. JULIAN:  This is a billion dollars of state money

3    going out to a public entity so they -- they put it off to the

4    confirmation hearing for a reason, and I submit that's my best

5    evidence in this case of what's fair and reasonable.  We have

6    to view whether or not a settlement that impairs creditors'

7    rights is fair under all the provisions of the Bankruptcy Code

8    and plan confirmation, taking into account estimation -- how

9    much are the public entities in for?

10          And the reason is because these folks, with the

11   eleven-billion-dollar allowed claim under this settlement, are

12   going to get their own trust with eleven billion bucks of cash

13   in it.  And you don't know whether or not there's stock, future

14   rights, or what in the other pot, and whether or not the victim

15   claims are going to be unfairly diluted past the percentage

16   that they're getting, because of all the public entities coming

17   in.

18          And there's a rule in California, recognized by the

19   Ninth Circuit, which says -- Chandler (phonetic) case -- which

20   says, if the victim -- if the insured has sued the

21   tortfeasor --

22          THE COURT:  No, I know.  You've cited the Chandler

23   case, and I'm still mystified by your reliance on a case that

24   went the wrong way.

25          MR. JULIAN:  Well, because --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  But that's a different story.  It's the

2    only case you've cited.

3    MR. JULIAN:  Because the holding was that the subro

4    could settle.  But everyone's missing the last sentence of --

5    let me read it to Your Honor.  "California courts have not

6    squarely addressed the core issue presently before the court,

7    namely, whether an insurer must make the insured whole before

8    pursuing a subrogation claim against the third party's

9    tortfeasor insurer, where the insurer herself has not yet sued

10   the third-party tortfeasor."

11   That's what you focused on the last hearing we were

12   in.  You said it's against you.  In that case, the insurer had

13   not sued the third-party tortfeasor -- the tortfeasor.  Here,

14   our claimants have sued PG&E, and that's why, under California

15   law -- here's another certified issue, in my mind -- the

16   insurance companies may not settle and get their money before

17   the insureds try their cases to judge them or settle.  That is

18   black-letter law in California under the made-whole rule.  And

19   to say that Chandler said something differently is wrong, and

20   Chandler --

21   THE COURT:  Okay.

22   THE COURT:  It might have been wrong, but the case

23   went the wrong way.  It went the other way.  And then --

24   MR. JULIAN:  Because the tortfeasor hadn't --

25   THE COURT:  Okay, okay, but it still was a case that

PG&E Corp., Pacific Gas & Electric Co.

1    was cited for a proposition that wasn't the outcome of that

2    case.  Wasn't that --

3         MR. JULIAN:  Well, we don't cite it for the outcome.

4    We cite it for the statement of the rule.

5         THE COURT:  Oh, okay.  That --

6         MR. JULIAN:  They did discuss the California cases

7    under make-whole.

8         THE COURT:  Okay.

9         MR. JULIAN:  So Your Honor, the point is that all

10   these terms, the cash up front, giving them cash up front,

11   versus giving the victim something -- we don't know if it's

12   cash or stock or what -- it's discrimination, and

13   discrimination should be viewed in terms of a plan, not a 9019,

14   because again, the Ninth Circuit said the bankruptcy court is

15   obligated to preserve creditors' rights.  There's no exception

16   to that.

17        The RSA commits subro to vote for a plan that pays us

18   only 8.4 billion.  I know that everyone says with a stroke of a

19   pen, they can just change everything, but there's no evidence

20   in front of you that that's going to happen.  Your Honor, more

21   importantly, we've been around this stuff for forty years now,

22   practicing.  You, forty, me, thirty-nine, more.

23        THE COURT:  Well, I may act like I'm getting tired.

24        MR. JULIAN:  You know perfectly well -- I'm going to

25   paraphrase what Cecily Dumas said to me, why hasn't Weil

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Gotshal simply, with a stroke of the pen today, come in and

2    amended their term sheet to say that the victims will get 8.4

3    billion or whatever comes out in Judge Donato's estimation.

4         THE COURT:  Well, don't you think the law says that

5    for them?  I mean, Mr. Julian, if Judge Donato gives them a

6    higher number, Mr. Karotkin and his clients --

7         MR. JULIAN:  Because --

8         THE COURT:  -- have two choices, right?  Fold their

9    tent or come up.

10        MR. JULIAN:  Yeah, but I talking to you about today.

11        THE COURT:  Oh, okay.  I understand.

12        MR. JULIAN:  9019 looks at what today is.

13        THE COURT:  I understand you're talking -- you're

14   raising it today.

15        MR. JULIAN:  And the evidence -- that logical

16   inference is because the equity would wipe themselves out if

17   they allow that term to go in there.  And they don't -- and

18   they can't get the money.  That's the inference.

19        THE COURT:  Okay, well, that's another issue.  Let's

20   stick with whether I act on this motion today.

21        MR. JULIAN:  I think you ought to continue it to the

22   plan of confirmation hearing.  Not say yes; not say no.

23        I don't think this can be fairly evaluated without

24   knowing all the moving pieces in this case.  And there's too

25   much at stake here, to run the risk of a Wall Street Journal

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   article two years from now, saying, look what was rushed.  And

2   those insurance companies got exactly what they wanted on fifty

3   billion dollars of payments.  They almost settled for seventy

4   cents on the dollar in California.  That's what they did in

5   front of Judge Montali, and yet the victims here, as things

6   went out, had to share some money with some public entities,

7   FEMA, and California, and they got fifty cents on the dollar.

8       THE COURT:  Okay.  Mr. Feldman, before you respond, I

9   want to see if we got any of the other objectors who want to be

10  heard that -- because there were others, but some of them

11  have -- we've already gotten past them.

12      So Mr. -- oh, well.

13      MR. MARSHACK:  Just one sentence, Your Honor.  One

14  sentence.

15      THE COURT:  Mr. Marshack?  Just again --

16      MR. MARSHACK:  I'm going to follow up on something --

17      THE COURT:  -- state your name for the record, please.

18  Thank you.

19      MR. MARSHACK:  Richard Marshack, representative of SLF

20  Fire Claimants, 6,000 fire victims.  One comment.  Mr. Julian

21  proposed that we continue this hearing, and I fully support

22  that.

23      It seems to me, reading the tea leaves coming from

24  this Court, that you're going to ultimately migrate that we're

25  going to have a mediation in this case.  I think if you grant

PG&E Corp., Pacific Gas & Electric Co.

1  this motion, it makes mediation much more difficult.  If you

2  deny this motion, it makes it much more difficult.  We

3  disagree -- we think this Court should deny approval of this

4  settlement.  But having said that, there are so many -- so

5  many -- issues that come out of this settlement, that if this

6  Court is going to continue this hearing, and if -- I'm sorry --

7  if this Court is going to grant mediation, this would be

8  something that should not be resolved prior to the mediation.

9           THE COURT:  Okay.  Thank you, Mr. Marshack.

10          Mr. Bray?

11          MR. BRAY:  Good afternoon, Your Honor.  Sorry, Gregory

12  Bray, Milbank, LLP, counsel for the committee.

13          Your Honor, I want to go back, if I can, to the

14  initial colloquy you had with Mr. Feldman, when you asked about

15  insolvency, administrative claims, and so on.  That was our

16  pleading.  And --

17          THE COURT:  Yeah, but I didn't believe it.

18          MR. BRAY:  Well, it -- as Mr. Feldman said, it was an

19  unintended consequence of the way it was drafted, and they've

20  offered to fix that.  I'll accept him at his word, he's going

21  to fix it.  We haven't seen a restated RSA as you've asked for,

22  and we think that's appropriate.  But there's another

23  consequence if you sign the RSA.

24          And that is, if we're in April, May, June, whenever it

25  is, whenever we get to confirmation, if you decide that, as a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   legal matter, the appropriate plan to confirm is a plan other

2   than the debtors' plan, albeit the TCC plan, another plan, the

3   debtors and the subrogation claimants have the right in their

4   sole discretion to terminate the settlement agreement.  The

5   subrogation claimants can assert a claim for twenty billion

6   dollars, and you will be asked, best case, to estimate that

7   claim, that we all thought had been settled at a confirmation

8   hearing, when we could have estimated it months ago as part of

9   the estimation proceeding that's going on.

10          That's what the RSA says.  There are a number of what

11  I'll call anti-competitive covenants and termination provisions

12  in the document that take you to that exact spot.  And even

13  more so, not only will that be the result, no plan other than

14  the debtor plan can take advantage of the settlement.  Said in

15  another way, the only way the estate and the creditors benefit

16  from the settlement is if you confirm the debtor plan.  And

17  said another way, the subrogation claimants, who are a party to

18  it, are obliged to vote against any other plan, even if it

19  contains the exact same treatment, and arguably oppose

20  confirmation of that plan.

21          Under the circumstances, Your Honor, we think that's

22  inappropriate.  There's not enough benefit to the estate and

23  the creditors in confirming that type of a structure.  We have

24  no problem at all with an allowed claim for eleven billion

25  dollars.  A basic settlement, whoever -- whatever plan is

operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corp., Pacific Gas & Electric Co.

1   proposed, as long as it pays the eleven-billion-dollar claim,

2   however it's supposed to be paid, whatever plan it is, that

3   makes sense to us.  But the provisions that I'm referring to

4   are -- that are embedding in the document, section 2 and

5   section 5 -- I can walk you through them if you want, but --

6           THE COURT:  No, I don't want you to do that.

7           MR. BRAY:  All right.  Yeah, and I don't want to

8   either, but we think that that's an inappropriate settlement

9   and that actually does -- when we talk about confirmation

10  issues, and the argument that we shouldn't be talking about

11  these issues now, it's actually the reverse.  It's the RSA

12  that's really jumping into confirmation issues, and really has

13  the effect of tying your hands if you want to confirm a plan

14  other than the debtors' plan, and prejudicing creditors if they

15  vote for a plan other than the debtor plan, because there's no

16  benefit to the settlement, and we gave up the right to estimate

17  these claims --

18          THE COURT:  Well, what happened -- wait a minute.

19  What happens if the two plans that we've been talking about all

20  day today are both confirmed -- I mean, are both eligible to be

21  confirmed.

22          MR. BRAY:  Right.

23          THE COURT:  What happens to the subrogation eleven

24  billion?

25          MR. BRAY:  If you have the --

PG&E Corp., Pacific Gas & Electric Co.

1        THE COURT:  Is it gone or not?  It's not out the

2   window, is it?

3        MR. BRAY:  Yes.

4        THE COURT:  Why?

5        MR. BRAY:  If you confirm --

6        THE COURT:  Well, I didn't say if I confirm.  I said

7   we have two ready confirmable, and then I have to make a choice

8   under the statute.  The creditors -- we got a debtors' plan and

9   a senior debtor bondholder's plan, TCC's plan.  And they both

10  pass all the hoops to confirm, then I'm down to 1129(c), right?

11        MR. BRAY:  Right.

12        THE COURT:  So if I choose the debtors' plan, then Mr.

13  Feldman gets his eleven billion dollars, right?  And there's no

14  down -- there's no --

15        MR. BRAY:  Right, if you choose --

16        THE COURT:  -- the sky doesn't fall.

17        MR. BRAY:  Yes, but if you -- the creditors -- because

18  I'm going to view this in the perspective, what's the benefit

19  to the creditors in settling with the subrogation claimants

20  right now?  That's my job.  And --

21        THE COURT:  Yeah, that's right.

22        MR. BRAY:  -- the only benefit we get from that occurs

23  if you confirm the debtor plan and no other plan, which we're

24  opposed to.  Essentially, it basically thwarts the lifting of

25  exclusivity or puts a significant dent, and the whole purpose

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    of lifting exclusivity was to promote competition, because we

2    will be penalized.  In your scenario, both plans go to the end,

3    and you have to make a decision.  And argument will be made to

4    you, essentially, to the effect, if you confirm the creditor

5    plan, the subrogation claimants have the right to terminate the

6    settlement.  They don't have to accept the eleven-billion-

7    dollar treatment.

8         THE COURT:  Well, but wait a minute.  What would be

9    the consequence of the confirmation of the competing plan,

10   which treats them by giving them eleven billion dollars?

11        MR. BRAY:  We would have had -- we'll have a contested

12   confirmation hearing.

13        THE COURT:  Well, well.  But what I'm saying is --

14   and --

15        MR. BRAY:  They'll assert a claim for twenty billion

16   dollars.

17        THE COURT:  -- that I -- but I just go to the

18   question.  If I have two plans that are confirmable --

19        MR. BRAY:  Right.

20        THE COURT:  -- not if -- because if Mr. Feldman and

21   company object and persuade me that the competing plan is not

22   confirmable, then we don't have two confirmable plans.  So --

23        MR. BRAY:  But they're obliged -- they're actually

24   obliged to oppose the payment in receipt of the eleven billion

25   dollars that they've agreed to take from the debtors' plan.

PG&E Corp., Pacific Gas & Electric Co.

1  That's the problem with this.  They're under affirmative

2  obligation to oppose that plan structure, and essentially force

3  a contested confirmation on you, and will likely stand up in

4  front of you and say, my claim was filed for twenty billion

5  dollars, not eleven billion dollars; you haven't estimated my

6  claim.  I'm entitled to the twenty-billion dollars or we'll

7  estimate it later, reserve for the twenty billion dollars --

8         THE COURT:  Might not even --

9         MR. BRAY:  -- that we'll fight about.

10        THE COURT:  But it might not be estimatable.

11        MR. BRAY:  It's estimatable now; they've admitted it

12  is.  They've basically said the benefit of the settlement is we

13  don't have to estimate the claim.  That's undisputed.

14        THE COURT:  Well, what I'm getting at is if I -- well,

15  okay, I'm not sure I follow that, but listen, I'm getting to a

16  point where I just can't keep track of all this.

17        MR. BRAY:  I understand, Your Honor.

18        THE COURT:  So what I'm inclined to do is make sure

19  that any objection that I haven't given an opportunity to

20  speak, speaks.  And then I'm going to take Mr. Feldman up on

21  his offer to show me a revised document.  But I'm not going to

22  rule on it.  I'm going to put this over to the next hearing,

23  which I believe is our November 13th date.  And between now and

24  then, I'm going to study again the cases that both of the

25  opposing counsel were arguing.  I mean, I know -- I thought I

PG&E Corp., Pacific Gas & Electric Co.

1   knew ANC by heart, but I want to reread it, and Lowenschuss and

2   the Chandler case.

3           And Mr. Feldman, I'm not prepared to say that I'm

4   going to overrule these objections.  I'm not persuaded to --

5   persuaded that I'm not.  I'm just -- I'm reaching a point and I

6   can't be the only one that's just trying to absorb all this,

7   with so many things to keep track of.  And -- so I guess the

8   question for you, Mr. Feldman, is when are we likely to see a

9   revised RSA and document, so that one of us here in the room

10  can look at a clear head and read it?

11          MR. FELDMAN:  Your Honor, before I address that, the

12  question I want to ask you is, are you going to take argument

13  in November for --

14          THE COURT:  Yeah, I think so.  And I think I will.  I

15  think what I'd like to do -- that's the point.  I might --

16  unfortunately, the November calendar is starting to get pretty

17  crowded, and I know how important the motion to extend the

18  claims deadline is, but yes, I would certainly hope to perhaps

19  frame a couple of points that I'd like to focus on, before

20  that.  So if you tell me you can't get it for a while, I'll

21  understand that.  But I also -- I'm just trying to absorb it

22  all, so.

23          MR. FELDMAN:  Yeah, I believe we should be able to

24  file amended documents, Your Honor, by early next week.  I

25  think it should be Monday, but I'm going to say Tuesday.

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  I'm not going to hold you to it.  I mean,

2 if that's the time frame --

3    MR. FELDMAN:  Just because it's a lot of people.

4    I want to raise one other issue, Your Honor, and

5 again, this just is factually correct.  I don't anticipate a

6 problem, but the RSA itself has a drop-dead date that will

7 occur before that --

8    THE COURT:  I know.

9    MR. FELDMAN:  -- so we have to get our clients --

10    THE COURT:  And I don't --

11    MR. FELDMAN:  -- to agree to an extension.

12    THE COURT:  I don't feel terribly worried about that.

13    MR. FELDMAN:  I'm not -- I appreciate it.  I'm saying,

14 we may free up your calendar for November, if my clients are

15 not in agreement to go forward --

16    THE COURT:  Well, of course.

17    MR. FELDMAN:  -- but that'll be our issue.

18    THE COURT:  Of course.  But I will be surprised, and I

19 don't think any of you are in this for the short term.

20    So my point is that that I'm the one that has to sort

21 through all this with wonderful help that I've gotten from so

22 many capable and thorough lawyers and their arguments.  But it

23 would be helpful for them, as well as me, to see the restated

24 document, not that I'm going to invite more objections.  But

25 between now and November 13th, I'm going to give thought, not

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    only to the issues we've talked about here, but also the

2    question that Mr. Marshack touched on and other counsel talked

3    about, the mediation issue, and all that other things.

4            And so, I mean, that's really the best I can do.

5            MR. FELDMAN:  I appreciate it, Your Honor.  It's been

6    a long day.  It's hard to let some of the arguments that are

7    frankly very specious, that have been raised to go, but I will

8    let --

9            THE COURT:  How about the meritorious ones?  Are

10   they --

11           MR. FELDMAN:  I will let them go until a later date,

12   and I guess the only other point I would make, Your Honor, is

13   that we are here today, in part because of the direction that

14   this Court has taken these cases.  And so --

15           THE COURT:  Right.

16           MR. FELDMAN:  -- obviously --

17           THE COURT:  No, I'm --

18           MR. FELDMAN:  -- if we're going to go a different

19   direction, we're going to go a different direction.  The

20   estimation and Tubbs trial continue.  And we are continuing to

21   participate in them.  So there is some pressure to have this

22   heard one way or another --

23           THE COURT:  Oh, no, I understand that.

24           MR. FELDMAN:  -- sooner rather than later.

25           THE COURT:  I understand.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. FELDMAN:  And we understand the November date will

2  be the date.

3    THE COURT:  Well, I mean, that's the best I can do,

4  because there's just -- well, for all those reasons.

5    There's someone else standing up.  Did you want to be

6  heard?

7    MR. QURESHI:  Yes.

8    MR. FELDMAN:  I'm going to reserve the right to argue

9  against Mr. Qureshi, if he's going to argue the merits right

10  now, Your Honor.

11    THE COURT:  No merits, Mr. Qureshi.

12    MR. FELDMAN:  I'm not waiting until November for that.

13    THE COURT:  Mr. Qureshi, no merits.

14    MR. QURESHI:  Your Honor, Abid Qureshi, Akin Gump, on

15  behalf of the ad hoc noteholder group.

16    There is one provision that I think it would be

17  beneficial to have the Court aware of at this time, because it

18  is a provision in the RSA that Mr. Feldman, I believe, is of

19  the view he is bound by now, and it is having an impact.  And

20  the specific provision that I'm referring to, Your Honor, is

21  the provision that precludes the subrogation holders from --

22  and I now quote; it's paragraph 2(b)(2) -- "Directly or

23  indirectly, encouraging or participating in the formulation of

24  any alternative restructuring or settlement of the" --

25    THE COURT:  Oh, no, I had seen that before, yeah.

PG&E Corp., Pacific Gas & Electric Co.

1      MR. QURESHI:  -- "subrogation claims."  Right, so --

2 and --

3      THE COURT:  But I thought they backed off of that

4 already.

5      MR. QURESHI:  I don't think they have, Your Honor, so

6 they quasi backed off in the sense that they said if Your Honor

7 orders mediation --

8      THE COURT:  No, no.

9      MR. QURESHI:  -- the subrogation holders are free to

10 attend the mediation, although at that mediation, they are tied

11 at the hip with the debtors.

12      THE COURT:  That isn't the provision I --

13      MR. QURESHI:  The difficulty with that provision

14 present --

15      THE COURT:  I thought there was a provision that just

16 walked back the issue that the subrogation and the debtors

17 together aren't free to talk to other parties.  The together is

18 not ignored.  I know that's there.

19      MR. QURESHI:  It's the together part.

20      THE COURT:  It's the together --

21      MR. QURESHI:  So, Your Honor, where we presently are

22 with respect to the creditor plan and the subrogation holders

23 is we have said we will give them the same eleven-billion-

24 dollar allowed claim, and they have taken issue, as Your Honor

25 saw in connection with exclusivity.  They filed an objection,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   and they said, well, the treatment -- the form of consideration

2   is not the same.  And we have said, we would love to negotiate

3   with the subrogation holders, the form of consideration.  Under

4   the debtor plan, there is a provision that allows them either

5   to take eleven billion dollars in cash or, if they choose to

6   elect, equity.

7           THE COURT:  Right.

8           MR. QURESHI:  Now if we can't negotiate with them,

9   Your Honor, because of this provision, that should not be the

10  case.  We are prepared to offer eleven billion dollars in cash

11  to make it equivalent to what is in the debtor plan, but again,

12  we don't know what they want.  They have an election in the

13  debtor plan that allows them to take equity.  We have not been

14  able to engage substantively with them.

15          If Mr. Feldman is not bound by this provision, then it

16  would be helpful if he made that clear on the record, so that

17  we can, between now and November the 13th, have discussions

18  with the subrogation holders, to see if we can get to a

19  settlement that is the same as the one in the debtors' plan.

20          And Your Honor, frankly, the debtors should have no

21  objection to that.  If they are acting as a true fiduciary

22  here, they tout the benefits of the eleven-billion-dollar

23  settlement, it should be available under any plan, not solely

24  under theirs.

25          THE COURT:  So what do you want me to do?  Ask Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  Feldman if he's free to negotiate with you?

2          MR. QURESHI:  Yes.

3          THE COURT:  Mr. Feldman?  Are you free to negotiate?

4          MR. FELDMAN:  Your Honor, as I said in my letter, we

5  are free to participate with the debtors in negotiations --

6          THE COURT:  But it has to be jointly?

7          MR. FELDMAN:  Jointly.  And we're happy to do that.

8  It goes to the fundamental issue, Your Honor, you raised when

9  you terminated exclusivity.  Would this bring parties together

10  or would it push them apart?  Unfortunately, it's had the

11  latter reaction.  But I would also say, if it's eleven billion

12  dollars in cash, I accept.

13          THE COURT:  Anyone else want to be heard?

14          Are you standing up to leave?

15          MR. ZUMBRO:  No, just one housekeeping issue with --

16          THE COURT:  Yeah.

17          MR. ZUMBRO:  -- if we're done.

18          THE COURT:  Yeah, go ahead.

19          MR. ZUMBRO:  Paul Zumbro, for the record, Your Honor,

20  with apologies to your stomach and to everybody else's --

21          THE COURT:  No, my stomach's okay.  I'm --

22          MR. ZUMBRO:  Very quickly.  I am pleased and somewhat

23  surprised to report that the meet-and-confer process on the fee

24  examiner protocol issue was successful.

25          THE COURT:  All right.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. ZUMBRO:  I just wanted to let Your Honor know

2  that.  Tomorrow, the debtors will be filing a joint submission

3  on behalf of the debtors, the TCC, the UCC, and the fee

4  examiner, with the revised fee-examiner protocol that resolves

5  all of the parties' issues on the protocol, other than the

6  nonworking travel issue, which is under submission to the

7  Court.

8    I should note the U.S. Trustee's Office is still

9  finalizing its review, and they may have some changes they wish

10  to make, or they may wish to have some reservations read into

11  the record, but in any event, I don't believe any of those go

12  to the substantive -- the substance of the matters that are

13  covered by the protocol, which, as we discussed last time, in

14  any event, is a form of guidance for the case.  It is not a

15  court order.

16    And we will also be filing tomorrow, as Your Honor had

17  requested, a statement by Ms. Janet Loduca, who's the senior

18  vice president and general counsel of PG&E Corporation,

19  addressing the nonworking travel issue, as well as certain of

20  the other issues --

21    THE COURT:  Okay.

22    MR. ZUMBRO:  -- as requested by you, and we hope that

23  statement will aid the Court in resolving the open issues.

24    THE COURT:  Okay, so I'll look forward to that, and

25  then I'll take that, and it would be fully submitted at that

                  PG&E Corp., Pacific Gas & Electric Co.

1    point.

2              MR. ZUMBRO:  Correct.

3              THE COURT:  Okay, thank you everyone --

4              MR. ZUMBRO:  Thank you.

5              THE COURT:  -- for the long day, and the long morning,

6    and I will do my best to make some progress and let you all

7    know.  Thank you very much.

8              IN UNISON:  Thank you, Your Honor.

9              THE CLERK:  All rise.

10         (Whereupon these proceedings were concluded at 2:21 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

of 261
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                    C E R T I F I C A T I O N

2

3    I, Aliza Blumenfeld, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ ALIZA BLUMENFELD, CET-634

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  October 24, 2019

16

17

18

19

20

21

22

23

24

25

Case: 19-30088   Doc# 4467   Filed: 10/24/19   Entered: 10/24/19 14:35:11   Page 231
of 261   operations@escribers.net | www.escribers.net

## A

**A&C (6)**
201:9,10,22,24;
202:7;203:21
**AB (14)**
56:11;58:9;72:8;
76:16;131:24;133:5,
19;153:13;190:6,22;
193:21;199:5,11,14
**Abid (1)**
225:14
**abide (1)**
56:4
**abides (1)**
56:11
**ability (9)**
11:17;13:1;14:17;
59:6;82:19;114:20;
122:6;199:22;200:8
**able (21)**
17:18,20;20:25;
21:20;22:21;100:8;
114:12;149:12;154:24;
158:6,7,9;161:24;
167:5;169:18;185:25;
197:2;199:20;200:3;
222:23;227:14
**ably (1)**
30:4
**above (2)**
19:17;133:10
**Abram (4)**
103:13,15,17,19
**Abrams (19)**
101:18,18,22;102:3,
5,9,11,16,19,21,25;
103:2,8,11,14,16,18;
104:1,3
**absolute (6)**
38:3;126:8;127:18;
128:17;142:22;162:5
**absolute- (2)**
59:24;79:20
**absolutely (21)**
13:24;19:1;20:11,20,
20;31:5;35:9;39:10;
65:8;72:15;94:10;
115:3,18;123:13;
126:22;141:17;142:17;
144:12;148:1;152:6;
192:5
**absolute-priority (1)**
59:23;73:8;75:1,6
**absorb (4)**
90:13;124:19;222:6,
21
**accelerate (3)**
115:4;122:9;139:17
**accelerated (3)**
110:13,16,17
**accept (11)**

122:3;127:25;131:5;
133:21;189:15;196:18,
20;197:23;216:20;
220:6;228:12
**acceptable (2)**
28:23;48:20
**accepted (3)**
121:24;146:12;
160:23
**accepts (3)**
196:15,16;197:9
**accommodate (3)**
85:6;90:24;94:5
**accomplish (1)**
188:24
**accomplishment (1)**
30:8
**account (4)**
160:11;167:8,12;
211:8
**accurate (2)**
140:25;207:10
**accurately (2)**
146:2,3
**accustomed (1)**
35:1
**achieved (1)**
123:24
**across (3)**
124:21;162:9;184:7
**act (2)**
213:23;214:20
**acting (4)**
15:2;21:19;144:5;
227:21
**action (2)**
10:10;125:23
**active (5)**
13:14;17:12;18:21;
92:5;107:3
**activities (1)**
192:25
**actual (8)**
12:3;21:6;131:6;
132:9;139:4;155:10;
161:22,23
**actually (33)**
10:13;41:25;55:11;
64:3,7,9,10;65:14;
66:9;68:17;70:16,19;
73:19;105:17;122:7;
132:8;155:11;158:1;
161:15,21;166:14;
167:2,24;185:8;
188:13,21;192:18,21;
193:2;198:9;218:9,11;
220:23
**ad (26)**
39:3;55:23;57:9;
59:22;81:25;84:3;95:4,
5,17;122:25;126:2;
127:5;131:2,14;133:8,
8;135:5,11;147:20;

159:21;160:3,5;164:3;
165:3;166:18;225:15
**Adam (3)**
104:7;140:24;158:18
**add (1)**
25:9
**addition (2)**
21:1;160:3
**additional (4)**
20:17;84:3;115:25;
190:6
**address (41)**
23:15;25:4,5;32:7,
14,17;50:18,18;56:1;
57:10,10;69:2;71:16;
77:24,25;91:5;107:2;
116:22;117:10;118:25;
126:8;132:4;133:1,7;
144:2;161:12;165:20;
174:2,4;175:8,16,17;
178:7;179:7;188:11,
13,23;192:20;200:6;
201:17;222:11
**addressed (14)**
11:9;32:5,13;34:6;
37:13;94:6,16;130:19;
159:13;172:7;179:3,4;
182:4;212:6
**addresses (2)**
145:24;174:15
**addressing (5)**
144:20;161:13;
165:13;202:1;229:19
**adequate (2)**
135:9,16
**adhere (1)**
180:10
**adhering (1)**
200:23
**adjudication (1)**
198:24
**admin (3)**
178:15,18,24
**administered (2)**
135:25;136:2
**administrative (2)**
113:20;216:15
**admitted (1)**
221:11
**advance (4)**
62:4;64:15;74:12;
165:14
**advantage (2)**
146:15;217:14
**advantages (2)**
58:24;59:1
**Adventist (5)**
48:13,15;53:24;
190:4;192:9
**Adventist's (1)**
50:18
**adversaries (1)**
137:8

**adverse (2)**
14:6;120:4
**advertised (1)**
146:19
**advise (1)**
90:23
**advised (2)**
91:10;135:8
**advising (1)**
90:20
**affect (5)**
9:15;14:4;47:17;
93:24;94:1
**affected (1)**
150:19
**affecting (2)**
13:23;186:9
**affects (3)**
10:13,15;92:5
**affirmative (1)**
221:1
**affirmatively (1)**
14:5
**afforded (2)**
160:4,25
**afraid (1)**
44:11
**afternoon (6)**
31:9;106:17,18;
115:14;190:1;216:11
**again (69)**
12:13;22:13;23:8;
24:5;36:6;37:5;42:1;
43:12;44:17;45:6;
52:20;53:12;57:7;
61:17,25;68:9;69:10;
73:6,16;74:4;76:14;
78:5,12;79:11;80:17;
84:10;86:12;88:8,9;
91:18;94:25;108:25;
109:17;117:16;122:17,
22;123:3;126:6;130:4;
132:10;133:3,3;134:5;
137:16;141:8,11;
144:5,19;145:18;
153:7;155:12;156:4;
164:7;166:16;169:15;
170:22;173:10;174:9;
177:7,20;188:16;
189:16;190:16;197:4;
213:14;215:15;221:24;
223:5;227:11
**against (22)**
7:25;21:13;30:23;
150:22,22;151:4,7,11;
153:1;180:19;195:7,
15,25;200:8;204:21;
205:4,5;206:16;212:8,
12;217:18;225:9
**agencies (12)**
46:2,13;47:22;48:7;
50:11,17;52:18;53:23;
150:5;169:18;181:19;

195:18
**agency (2)**
48:16;210:5
**agenda (2)**
32:22;58:16
**agent (3)**
99:2;113:20;115:16
**aggregate (1)**
127:10
**aggressive (1)**
64:9
**aggrieving (1)**
30:5
**ago (10)**
42:20;67:2;72:22;
78:15;112:2;121:17;
137:11;158:25;159:3;
217:8
**agree (29)**
16:7;27:6;33:23;
36:12,19,23;39:4,6,9;
42:3;52:19;65:14;
69:18;71:11,13;73:1;
75:17;76:12;79:4,11;
110:14,14;163:17;
176:10;182:20;187:19;
193:10;195:13;223:11
**agreeable (1)**
116:10
**agreed (20)**
32:12;33:18,25;34:8,
20;35:15;36:5,15;
45:25;46:1,16;62:11;
63:13;71:10;79:5;
107:11;123:15;128:21;
189:19;220:25
**agreeing (3)**
55:6;114:25;182:23
**agreement (21)**
50:20;62:10;107:6;
114:13;137:4,7;
171:10;172:20;173:6;
174:6;176:21;183:9;
184:6,9,15;185:25;
186:4;192:12;198:25;
217:4;223:15
**agreements (1)**
186:14
**AH (1)**
203:7
**ahead (14)**
20:4,12;21:11;71:6;
72:18;125:1,4,18;
132:24;137:2;166:6;
171:2;185:8;228:18
**aid (2)**
21:12;229:23
**Airlines (2)**
14:13,21
**Akin (3)**
55:23;166:18;225:14
**albeit (1)**
217:2

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 232
of 261

**aligned (5)**
99:11;110:8;112:19,
23;113:3
**alignment (3)**
41:9;100:7;107:21
**aligns (2)**
28:10;30:1
**allegations (1)**
139:14
**alleged (1)**
95:18
**allocation (2)**
207:2,3
**allow (8)**
8:6;58:9;78:13;
106:12;156:22;165:15;
190:11;214:17
**allowable (2)**
137:13;152:16
**allowance (2)**
64:17;176:4
**allowed (11)**
14:20;21:1;34:23;
54:10;78:10;195:13;
201:13;202:7;211:11;
217:24;226:24
**allowing (2)**
69:25;202:2
**allows (3)**
13:1;227:4,13
**alluded (2)**
122:14;163:4
**almost (9)**
12:12;73:19;100:13;
120:4;138:25;139:3;
170:11,14;215:3
**along (3)**
87:15;108:23;195:3
**alternative (2)**
82:23;225:24
**alternatively (1)**
142:21
**although (3)**
17:1;71:19;226:10
**altruistic (1)**
135:6
**always (4)**
120:4;196:12;
197:14;198:22
**ambiguity (2)**
178:24;182:24
**amenable (1)**
24:4,5
**amend (2)**
60:24;133:16
**amended (4)**
71:22;104:17;
115:19;123:5;132:4;
133:7;214:2;222:24
**American (2)**
203:6,13
**amicus (1)**
189:13

**among (2)**
80:2;107:21
**amongst (1)**
108:8
**amount (22)**
57:21;62:10;76:6;
106:22;107:25;115:17;
127:10,24;137:13;
150:2;153:7;162:11;
179:14,17;190:10;
194:12,24;197:5;
198:14;201:13;207:23;
210:20
**amounts (1)**
57:17
**ample (1)**
133:18
**analysis (2)**
75:21;168:17
**ANC (10)**
176:23;177:7,22;
186:8,21;187:10,14,21;
188:3;222:1
**Anchorage (2)**
104:8;158:20
**and-forth (1)**
59:3
**Andrew (2)**
15:18;106:17
**announced (1)**
69:13
**anticipate (1)**
223:5
**anti-competitive (1)**
217:11
**anymore (2)**
198:1,6
**apart (2)**
82:11;228:10
**apologies (1)**
228:20
**apologize (4)**
67:18;76:14;102:17,
20
**appeal (1)**
195:24
**appealable (1)**
106:25
**appear (2)**
19:2;181:20
**appearances (1)**
94:25
**appearing (1)**
93:20
**appears (2)**
107:21;169:22
**applicable (2)**
96:14;177:22
**application (4)**
12:25;13:1;105:4;
109:15
**applied (1)**
97:24

**applies (2)**
97:22;204:9
**apply (13)**
25:22,24;26:1,14,19;
48:15;96:1,3,5;97:8,
10;188:21;194:2
**applying (1)**
96:22
**appoint (1)**
123:16
**appreciate (7)**
56:3;65:17;94:20;
169:14;192:20;223:13;
224:5
**approach (9)**
71:2;79:11;81:3;
149:4,6;192:2,3,3;
210:4
**appropriate (13)**
13:16,17;84:6;86:13;
95:16;96:12;103:16;
122:20;131:10;178:8;
182:15;216:22;217:1
**appropriately (3)**
122:19;132:4;208:11
**approval (5)**
74:10;193:6;197:9;
210:7;216:3
**approve (23)**
37:10;147:24;148:5;
152:21;162:16,22;
168:4;169:22;174:23;
176:1;177:8,21;
182:13;186:10;188:8;
195:1,9,10;196:14;
198:2;204:3;210:10,11
**approved (8)**
97:14;179:13;
182:16;184:4,21;
203:16;210:7,23
**approves (1)**
173:19
**approving (2)**
187:11;195:23
**April (1)**
216:24
**arbitrary (1)**
102:22
**area (2)**
24:9;68:7
**areas (1)**
173:15
**Arent (1)**
106:18
**arguably (1)**
217:19
**argue (9)**
31:25;59:21;167:13,
14;178:6;198:1;
200:20;225:8,9
**argued (4)**
28:15;30:3;44:12;
208:17

**argues (1)**
41:3
**arguing (7)**
31:25;121:10;
152:25;154:3;167:16;
191:4;221:25
**argument (39)**
12:15;26:21;27:15;
28:20;30:16,18;31:24;
42:11,19;43:10;64:22;
66:10;69:2;71:16;79:8;
80:17;88:8;103:6;
110:7;112:12;116:12;
119:4,7;120:2;121:17,
18;137:23;153:20;
160:16;167:7;172:14;
177:1;178:20;187:7;
198:2;205:23;218:10;
220:3;222:12
**arguments (15)**
7:1;21:24;22:4;29:4;
84:12;86:10;94:4;
96:10,11,25;111:1,11;
113:2;223:22;224:6
**arises (2)**
108:21;161:16
**arising (1)**
109:24
**arms' (3)**
137:8,14;140:22
**around (8)**
60:17,19;145:12;
169:6;193:12,18;
206:8;213:21
**arrange (2)**
90:23;206:12
**array (1)**
134:2
**Article (2)**
54:13;215:1
**aside (2)**
43:25;65:23;66:17;
84:3;125:10;138:15;
179:13;195:24
**aspect (1)**
162:17
**assert (4)**
82:1;195:25;217:5;
220:15
**assertion (2)**
140:1,3
**assertions (2)**
139:23,23
**asset (1)**
143:16
**associated (2)**
71:14;101:24
**Association (1)**
113:20
**assume (3)**
60:11;181:22;194:3
**assumed (1)**
47:18

**assumes (1)**
112:18
**assuming (5)**
15:14;114:13;
161:20;184:17;198:25
**assumption (1)**
63:3
**assumptions (1)**
139:20
**assure (3)**
123:22;127:21;
131:17
**attach (1)**
175:25
**attached (4)**
64:2;70:20;171:12;
175:2
**attachment (1)**
70:16
**attack (1)**
164:14
**attempts (2)**
175:16;201:16
**attend (1)**
226:10
**attention (1)**
106:9
**Attorney (2)**
52:17;210:16
**attorneys (1)**
93:16
**attractive (3)**
66:24;69:8;134:25
**authority (1)**
14:13
**authorize (1)**
177:24
**available (13)**
21:10;44:8;82:13;
85:5;149:6;150:2;
160:19;162:3;163:5;
167:12;194:16,20;
227:23
**avoid (5)**
126:24;130:17,18;
151:25;183:1
**awaiting (1)**
113:24
**aware (7)**
38:15;92:14,15;
131:23;172:1;197:3;
225:17
**away (5)**
54:16;126:17;142:3;
167:23;169:7

**B**

**baby (1)**
27:14
**back (49)**
11:6;28:7;31:3,6;
32:24;49:5;51:15,16;

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 233
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) aligned - back

54:18;63:19;64:10;
69:24;73:11;81:9,16;
82:10;92:19;94:22;
98:18;102:12,16;
106:4,4;115:6;117:24;
131:11;136:7;137:25;
138:9,11;148:14;
150:14;152:20;156:23;
165:1;166:13;170:22;
174:21;175:20;177:10;
183:25;190:13;192:7;
193:18;195:15;196:8;
198:15;216:13;226:16
**back-** (1)
59:2
**back-and-forth** (1)
59:2
**backburner** (2)
73:5;81:15
**backed** (5)
37:6,7;48:3;226:3,6
**backstop** (3)
160:8;162:5;206:16
**backup** (2)
130:5,10
**bad** (1)
179:19
**Baghdati** (1)
152:14
**BAILIFF** (8)
6:5,10;43:2,23;44:1,
4,7,9
**Baker** (4)
6:16;7:7;22:25;
93:20
**balanced** (2)
7:2;107:7
**bank** (3)
100:19;115:16;
179:16
**bankrupt** (1)
202:23
**Bankruptcy** (25)
10:7,12,22;11:23;
19:19;76:3,4;96:19,20;
103:23;120:7;123:10;
142:15;143:22;148:24;
155:6;156:7;159:22;
199:9,13,22;201:20;
203:21;211:7;213:14
**banks** (5)
47:23;99:11,16;
134:17;170:21
**BAP** (1)
187:21
**bar** (9)
46:3,5,7,8;47:4;48:1;
52:5;130:22,23
**based** (7)
26:24;41:14;76:23;
121:22;131:21;139:20;
161:16
**basic** (2)

27:15;217:25
**basically** (4)
28:7;113:7;219:24;
221:12
**basis** (6)
68:21;110:16;
132:18;137:14;162:21;
196:13
**bath** (1)
27:14
**Baupost** (1)
6:23
**Bay** (1)
26:3
**bear** (1)
159:5
**became** (1)
143:4
**become** (4)
34:25;122:25;
130:13;175:25
**becomes** (2)
26:20;166:2
**bef** (1)
30:23
**begin** (1)
136:20
**beginning** (1)
64:15
**behalf** (19)
7:7;15:19;18:8;
45:19;48:13;50:10;
55:23;93:20;95:3;99:1;
104:8;113:19;115:15;
147:20;158:19;166:18;
182:1;225:15;229:3
**behind** (3)
136:22;140:2,22
**belief** (2)
190:6,20
**believer** (2)
150:11,12
**believes** (4)
93:19;103:3;158:1;
198:21
**beneficial** (1)
225:17
**beneficiaries** (1)
47:21
**benefit** (11)
14:15;76:8;162:25;
185:1,11;217:15,22;
218:16;219:18,22;
221:12
**benefits** (3)
177:25;178:3;227:22
**Bennett** (57)
29:19;68:1;69:22;
114:24;115:1,2,8;
116:22;121:1,11;
126:13;135:17;136:10,
13,19,24;138:5,8,10,
15,18,22;140:7,9,11,

15,17,19;141:6,9,12,
17,19,22,24;142:12,14;
143:12,14;144:12,15,
24;145:5,7,10,16,18;
146:2,9,13,24;147:3,5;
159:8,9,11,15
**Bennett's** (4)
110:22;127:20;
166:24;167:14
**best** (18)
38:4;52:21;56:4;
57:7;64:20;110:2,6;
120:5;143:6;162:2,3;
168:22;186:21;211:4;
217:6;224:4;225:3;
230:6
**better** (10)
25:12;30:10;89:24;
110:4;135:10;141:12;
157:23;162:11;163:6;
170:6
**beyond** (5)
7:2;9:24;19:17;91:6;
159:6
**Bienert** (1)
104:7
**big** (9)
61:11,21;69:8;82:21;
143:7,16,17;151:22;
152:10
**bigger** (1)
68:19
**biggest** (2)
65:22,24
**bill** (1)
12:13
**billion** (79)
62:2,15;63:2;66:1,
19;68:4,4,6,11,13;
69:14;82:7;106:23;
122:2;124:15;131:4;
134:8;137:5,6;139:8,9,
10;142:10;149:11;
150:1,3,3,4,5,7,10;
152:21;153:7,10;
155:11,13,14,24;176:4;
178:15,19,24;179:1,2,
12,16;191:18;193:16,
17;195:14;202:3;
204:3;206:12,19;
207:11,15;208:2;
209:10,11,11;210:6;
211:2,12;213:18;
214:3;215:3;217:5,24;
218:24;219:13;220:10,
15,24;221:4,5,7;227:5,
10;228:11
**billion-dollar** (1)
210:11
**bills** (2)
13:9,11
**bind** (1)
202:10

bit (12)
6:19,21;7:2;22:6;
37:22;47:20;67:24;
72:12;86:19;147:6;
181:17;196:19
**black-letter** (1)
212:18
**blank** (1)
118:17
**blanks** (1)
118:20
**blast** (1)
145:19
**blended** (1)
32:2
**blocked** (1)
28:19
**blow** (2)
72:4;142:3
**blows** (1)
133:11
**board** (2)
36:25;124:21
**boil** (1)
157:22
**BOKF** (1)
106:19
**bond** (5)
39:23;57:15;104:23;
160:4,8
**bondholder** (8)
96:11;131:14;149:5;
151:15;167:2,9;181:2;
206:14
**bondholders** (13)
39:4;42:7;90:6;
100:2,21,24;117:3;
134:21;135:5,11;
143:5;161:2;167:13
**bondholder's** (1)
219:9
**bonds** (3)
40:17;58:2;99:11;
160:9
**bored** (1)
52:15
**both** (35)
11:9,17;22:8;26:6;
29:7;49:10;67:2;76:5;
80:14;83:15;90:2;92:4;
95:16;100:25;111:22;
117:17;132:3,6;
133:18;140:10,12;
141:13;144:21;146:12;
150:9;155:9;157:1;
198:25;204:19;205:3;
218:20,20;219:9;
220:2;221:24
**bothering** (1)
10:21
**bottom** (1)
73:13
**bottoms** (2)

75:20;168:16
**bound** (1)
225:19;227:15
**bounded** (1)
145:19
**brackets** (1)
129:8
**brains** (1)
38:4
**BRAY** (44)
89:8,10,10,12,13,14,
19,22;90:2,5,10,12,14;
91:12,14,16,21,24;
92:1,8,10,12;93:7,22;
216:10,11,12,18;218:7,
22,25;219:3,5,11,15,
17,22;220:11,15,19,23;
221:9,11,17
**break** (7)
25:16;33:1;39:5;
110:15;117:24;149:25;
207:10
**breakers** (1)
157:4
**breaking** (5)
91:20;147:1;149:13,
16;164:11
**breaks** (3)
72:3,3,12
**bridge** (1)
66:19
**brief** (54)
15:1;23:21;28:9,10;
29:5,7,7,16,17;30:3,9,
17;31:17,17;32:17;
41:1,2;43:14,14;44:25;
45:1;46:19;48:22,22;
49:3;50:12;52:15;53:3;
54:24;81:23;83:11;
84:5,7;86:15;93:2,5;
98:8,10,14;99:21;
100:22;101:4;107:14;
108:3,8;109:3;112:7,
10,16;113:12;114:2;
115:4;148:10;177:11
**briefed** (3)
44:12;107:8;208:12
**briefest** (1)
22:7
**briefing** (50)
6:19;22:16;23:1,5;
27:20;31:11,22;33:23;
34:19;35:17;36:14,20;
45:10;46:2,15;48:2,14;
49:21,22,22;54:22;
56:2,14;57:2;70:13;
71:21;81:16;82:20;
91:8;92:6;93:9;94:5;
98:20;99:10;102:11;
104:4;105:22;106:2,7,
14;113:16;118:6,8;
137:17;144:21;176:14

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 234
of 261

**briefly (5)**
99:10;116:6;136:14;
147:11;148:22
**briefs (51)**
12:12;14:21;27:16;
28:16;29:1,22;36:16;
37:25,25;38:1;41:23;
42:9,10;43:9;47:10;
49:19;50:21;52:9,20;
53:25;55:6;82:24;
87:25;89:1,4;92:3,25;
93:10;101:2;107:11,
12,17;108:4;109:10,
10;110:18;112:17,18;
114:15;116:24,25;
117:7,9,17;118:24,24;
119:3,4,22;120:6;
183:24
**brilliance (4)**
36:8,9,10,12
**brilliant (2)**
35:7,11
**bring (5)**
94:22;106:8;137:25;
210:6;228:9
**brings (1)**
152:20
**broader (1)**
10:11
**brought (1)**
66:6
**bucks (1)**
211:12
**buildup (1)**
12:17
**bulk (1)**
66:16
**bullish (5)**
27:4,9,10
**bunch (1)**
209:5
**bundle (2)**
82:21;172:22
**burden (6)**
59:6,12;76:22;
109:18;116:15;207:1
**business (6)**
68:11;81:6;142:23;
162:23;175:13;199:10
**Butte (2)**
25:23,25
**buy (2)**
142:18;161:21
**buying (1)**
27:14
**BYU (1)**
210:23

**C**

**calculating (2)**
100:11,16
**calculation (1)**

**181**:18
**calendar (7)**
6:10;46:16;85:25;
105:21;168:6;222:16;
223:14
**CALIFORNIA (20)**
6:1;26:7;46:1;49:11;
50:19;52:18;82:2;
96:14,17;109:15;
135:7;206:15;208:23;
211:18;212:5,14,18;
213:6;215:4,7
**Call (9)**
6:4;25:20;31:23;
37:25;54:1;126:10;
168:11;178:12;217:11
**called (6)**
59:17;60:10;82:17;
150:1;177:3,4
**calm (1)**
147:8
**came (5)**
22:21;87:25;163:20;
203:7,10
**camel (1)**
187:6
**can (144)**
12:13,15;16:23;20:4;
28:5,8;29:21;30:15;
33:3,11;35:13;36:19;
37:10,24;38:5;39:5,6;
40:13;41:3,4;42:14;
43:3,24;48:10;50:23,
24,25;51:4,8;52:3;
53:11,15;56:8;57:10,
10,11,12;61:22;62:5,5;
63:23;64:15;65:12,21;
69:16;73:3;74:12;76:3,
8;77:15,22;78:14;81:4;
83:11;84:6,11;85:6;
86:4;87:15;88:11,11,
15;89:17,24;90:3;
94:12;102:12,16;
103:1,21,22,23;105:5;
106:4,4;110:2,6;
114:18;118:7;120:23;
125:24;126:20;127:21;
128:20;130:21;131:7,
11;132:2,3,6,7,10,16,
17,21;133:7;137:3,19;
141:10;142:4;144:21;
146:14;152:21;156:7,
23;157:14;159:16;
161:5,12;164:11,14;
166:1,6;168:22;
172:15;174:2;178:13;
182:16,16,20;183:5,5;
185:1;187:23;189:5;
191:1;196:12;197:14,
22,24;198:15;199:17;
204:3;213:19;214:23;
216:13;217:5,14;
218:5;222:10;224:4;

**225**:3;227:17,18
**Cantu (9)**
24:16,18;25:1,13;
26:14,20,22;27:13;
30:24
**Cantu's (3)**
26:15,16,17
**cap (5)**
21:7;75:20;155:11,
11,22
**capabilities (1)**
162:4
**capable (2)**
11:23;223:22
**capacity (5)**
105:1;133:18;
134:13,17,19
**Capital (9)**
104:9,10;134:22;
135:9;142:21;158:19,
20;162:1;163:5
**Caplus (1)**
42:24
**capped (2)**
155:13;208:18
**capping (1)**
168:19
**Cardelucci (4)**
91:4;95:22,23;97:8
**care (3)**
41:13;175:6;182:19
**carrier (1)**
190:12
**carriers (3)**
190:11;192:6,8
**carry (3)**
61:6,8,19
**case (82)**
11:14,15,24;14:13,
21;27:13;39:17;45:23;
74:23;79:4;80:17;
89:17;93:23;95:8,11,
13;96:5,14;97:12,15,
25;120:7,23;121:18;
122:8;128:11;134:24;
137:15;138:23;139:5;
143:17;150:16,20;
151:23,24;153:13;
154:13;156:7;161:19,
23;162:21;167:10;
173:12;176:15,16,16,
17;177:22;179:9;
184:15;185:12,14,15;
186:18;188:8;193:1,
20,24;197:16;199:22;
202:2,21;203:8,14;
204:10;207:11,16;
211:5,19,23,23;212:2,
12,22,25;213:2;
214:24;215:25;217:6;
222:2;227:10;229:14
**cases (23)**
14:11;51:24;97:11;

**109**:9,11;117:17;
123:17,24;130:3,19,21;
131:15,17,25;135:25;
137:15;143:16;148:24;
185:4;212:17;213:6;
221:24;224:14
**cash (11)**
124:12,15;143:18;
179:2;211:12;213:10,
10,12;227:5,10;228:12
**catastrophic (1)**
138:20
**categories (2)**
31:11;145:20
**category (1)**
160:12
**cats (1)**
170:22
**caught (1)**
92:18
**causal (2)**
160:25;161:11
**causation (1)**
12:3
**Cecily (2)**
93:20;213:25
**center (4)**
134:17;153:8,9;
165:9
**Centerbridge (2)**
104:9;158:20
**cents (7)**
68:3;150:18;153:6;
167:15;180:7;215:4,7
**certain (6)**
53:17;76:20;86:1;
138:3;160:5;229:19
**certainly (11)**
17:7;24:3;36:12;
101:1;117:18;144:8;
170:4;173:20;175:22;
180:7;222:18
**certified (2)**
203:5;212:15
**cetera (3)**
33:9;115:20;175:19
**chain (1)**
143:6
**challenge (2)**
25:21;166:1
**challenged (1)**
209:24
**challenges (1)**
170:3
**chance (3)**
49:11;56:12;92:20
**chances (1)**
119:25
**Chandler (5)**
211:19,22;212:19,
20;222:2
**change (15)**
34:6,11,23;47:21;

**79**:25;88:23;138:3,4;
150:16;156:21;185:16;
208:8;209:13,16;
213:19
**changed (12)**
34:3,4,21;37:12,15;
42:20;56:6,7;88:2;
90:18;130:12;176:2
**changer (1)**
184:11
**changes (2)**
175:7;229:9
**changing (3)**
69:24;87:8;116:8
**Chapter (4)**
51:24;56:9;135:25;
193:1
**charge (1)**
210:18
**charged (1)**
112:24
**charity (1)**
79:17
**chart (3)**
70:18,19,20
**chart'd (1)**
72:21
**cheap (1)**
193:11
**check (2)**
69:6,8
**checked (1)**
7:21
**checklist (2)**
37:17;145:2
**choice (8)**
77:6;80:14,16;
109:20;190:9;195:23;
197:22;219:7
**choices (2)**
148:5;214:8
**choose (6)**
194:9;197:22,24;
219:12,15;227:5
**chosen (1)**
153:11
**Circuit (19)**
51:25;91:7;96:24;
97:4,12;177:22;
190:10;197:16;201:10,
16,19;203:5,8,11,15,
15,16;211:19;213:14
**circuits (1)**
109:7
**circulate (1)**
53:11
**circumstance (2)**
17:3;162:9
**circumstances (9)**
102:24;138:3;162:3;
164:23;165:2;169:21;
203:9,11;217:21
**cite (3)**

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 235
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) briefly - cite

51:24;213:3,4
**cited (5)**
14:11;137:16;
211:22;212:2;213:1
**Citibank (1)**
99:1
**Civil (4)**
50:9;56:4;96:14;
182:1
**civilized (1)**
7:2
**claim (79)**
7:24;9:15;14:14;
40:1;48:3,17,18;49:18;
50:14,14;61:25;62:24;
64:17;74:13;107:23;
128:5,6;176:4,19,22;
178:15,18,24;179:1,12;
180:11,12,14;182:7;
183:10,18;185:13,22;
190:10,18;192:4;
193:8,9;194:9,10;
195:13,25;196:3,22,24;
197:6,24;198:14,25;
199:22;201:13,17;
202:2,7;204:18,20,21,
24;205:2,5,6;206:3;
209:13,13,23,24;210:1,
2;211:11;212:8;217:5,
7,24;218:1;220:15;
221:4,6,13;226:24
**claimant (2)**
101:23;177:3
**claimants (45)**
7:8;8:7;13:25;14:8,
10,16,18,23;21:12;
29:11;32:20;36:21;
38:18;44:21;48:5,6,14;
56:10;61:9;62:10;
74:11;78:1;93:21;
124:8,14,17;150:3;
153:10;158:1,8,9;
171:16;180:23;181:4;
186:1;193:19;202:1;
207:16;212:14;215:20;
217:3,5,17;219:19;
220:5
**claimants' (2)**
121:23;124:11
**claimant's (2)**
122:6;126:24
**claims (99)**
7:20;8:1;12:5;21:12;
35:14,14;46:4,13,13,
17;47:5,5,12,23;48:15;
49:9,10,11;50:16,18,
19,22;51:22;53:13,22;
54:24;66:1;67:8;69:14;
75:20;78:2;90:20;95:4,
11,11,19;104:19;122:3,
8;126:4,25;128:15;
130:19,25,25;131:1,2,
3;137:14;138:6;142:1,

23;149:10;150:6,11,
12;152:12,16,18,22;
153:4;160:1,11;167:8,
12,25;168:1,6,7,20;
184:6;185:14;188:19,
19;190:19;192:7;
193:16;195:7,15;
200:8;202:23;204:19,
19;205:3;206:11,22,23,
24;207:3,11,12,12,14,
15;211:15;216:15;
218:17;222:18;226:1
**clam (1)**
155:24
**clarified (1)**
195:17
**clarify (1)**
189:7
**clarifying (2)**
191:13;200:11
**class (19)**
14:14,16,18;60:1,2;
61:6,8,19;73:9,10;
75:6;95:18;97:15;
127:24,25;157:25;
159:23;160:4;207:18
**classes (1)**
37:19
**classmates (1)**
180:19
**clean (1)**
106:24
**clear (22)**
10:4;24:25;25:2;
43:21;58:18;70:4;
73:15;99:13;116:16;
118:13;119:2;123:13,
13;126:22;131:21;
160:15;171:6;173:2;
189:17,20;222:10;
227:16
**clearly (5)**
19:13;59:20;129:22;
134:21;174:5
**CLERK (3)**
118:2,4;230:9
**client (16)**
51:8;85:17;101:21;
114:15;185:18;188:22;
195:22,25;196:12;
198:9,10,10;199:13,14,
15,20
**clients (21)**
13:10;68:16;93:24;
127:20;139:16;142:18;
148:1;156:21;157:10;
163:24;165:16;167:14;
178:1;184:4;189:11,
12,13;193:15;214:6;
223:9,14
**clients' (1)**
156:17
**client's (3)**

72:12;117:2;139:18
**close (4)**
68:11;142:1;201:21;
203:22
**closer (1)**
181:15
**clue (1)**
159:18
**co-counsel (3)**
21:19;52:17;104:7
**Code (18)**
10:7;19:19;20:22;
77:21,22;80:8;96:14;
109:23;120:7;123:10;
142:15;148:24;155:6;
159:22;162:19;204:6,
18;211:7
**co-debtors (1)**
205:14
**coerced (2)**
190:21;196:19
**cognizant (2)**
131:22,25
**collaborate (2)**
84:5;101:9
**colleague (1)**
31:4
**colleagues (5)**
12:11;29:4;30:15;
62:21;94:11
**collecting (1)**
193:23
**collective (1)**
37:23
**colloquially (1)**
203:14
**colloquy (1)**
216:14
**Colstro (1)**
115:16
**combination (1)**
124:12
**combine (1)**
101:2
**combined (1)**
112:18
**combining (2)**
112:16,22
**comfortable (2)**
76:24;132:19
**coming (10)**
28:3;66:16;103:11;
130:24;157:24;166:13;
195:2;196:8;211:16;
215:23
**commence (1)**
46:15
**comment (5)**
6:17;11:6;157:23;
199:5;215:20
**comments (6)**
28:8;56:3;89:14;
116:23;169:13;200:11

**commitment (5)**
123:18;134:14;
160:5,9;163:25
**commitments (7)**
86:11;133:11,25;
134:9,16;162:5;167:3
**commits (1)**
213:17
**committed (1)**
54:6
**committee (40)**
7:7;14:12,15,17;
15:19;18:12;20:25;
21:11;22:24;29:20;
55:24;57:9;82:1,5;
84:1;89:7,12,16;92:12;
93:21;95:4;100:25;
113:4;121:23;122:6;
131:13,14;133:8,9,9;
147:20;154:13;160:3,
6;164:3;165:3;166:19,
24;167:2;216:12
**committee's (1)**
20:23
**communicated (1)**
115:23
**companies (5)**
47:23;153:5;203:18;
212:16;215:2
**company (42)**
6:25;56:9,15;61:20;
67:3;73:16;76:15;81:2;
93:8;95:12;96:16;
100:13;104:10;134:3;
139:15;152:18;160:20;
162:10;174:24;175:18;
178:4,25;179:23;
188:21;193:9,12,20,24,
24;195:14;196:17,21,
21;197:1;198:20,21;
200:9,10;204:13;
205:1,6;220:21
**company's (4)**
64:8;113:21;180:15;
193:22
**competing (12)**
33:12;69:25;121:21;
136:1;163:8,10,11;
164:12;179:11;206:2;
220:9,21
**competition (1)**
220:1
**complain (2)**
40:19,20
**complained (1)**
12:14
**complaining (1)**
188:20
**complete (2)**
123:21;175:23
**completely (5)**
7:19;20:24;88:6;
122:21;167:24;172:18;

173:14
**complex (4)**
75:22;76:1;109:12,
12
**complexity (1)**
110:1
**compliance (1)**
133:5
**complicated (6)**
36:18;144:17;146:9;
171:9,11,18;188:17
**complimenting (1)**
174:10
**component (3)**
76:5,5;152:11
**comprehensive (3)**
75:18;76:9;170:23
**compromise (18)**
7:21;150:1,2;151:19;
152:8;153:9,15;
154:14;158:4,6,10;
177:3;183:14,14;
186:10;193:16;194:16;
195:13
**compromised (1)**
196:22
**compromises (2)**
8:2;9:1
**computer (1)**
68:17
**conceded (1)**
144:7
**concede's (1)**
144:8
**concept (1)**
195:10
**conception (1)**
180:10
**concern (1)**
89:19
**concerned (7)**
15:23;30:24;101:19,
24;102:19;150:8;
181:13
**concerning (1)**
137:13
**concerns (2)**
103:4;105:20
**concise (1)**
148:11
**conclude (1)**
147:9
**concluded (4)**
131:20;132:1;133:7;
230:10
**concludes (1)**
26:19
**conclusion (1)**
56:10
**concur (2)**
148:25;171:13
**concurrence (1)**
58:22

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 236
of 261

**concurrent (3)**
58:20;107:11,11
**condemnation (7)**
12:5;23:8;25:13,22;
30:10;42:19;120:15
**condition (6)**
78:4;182:6,14;
199:17,21,21
**conditioned (1)**
133:4
**conditions (1)**
160:22
**confer (2)**
44:19;49:12
**conference (1)**
59:4
**conferences (1)**
145:18
**confident (1)**
61:7;62:25
**confine (1)**
139:22
**confining (1)**
151:25
**confirm (22)**
45:9;59:22;75:19;
77:4,11;80:10;124:3;
127:15;140:14;144:6;
155:16,18;156:14,15;
217:1,16;218:13;
219:5,6,10,23;220:4
**confirmability (1)**
165:10
**confirmable (16)**
62:8,18;72:13;76:20;
78:6,8;80:13;146:5;
155:9;157:1,1;164:25;
219:7;220:18,22,22
**confirmation (80)**
7:20;8:25;32:23;
33:2,3,8,12,15;58:8;
60:7;62:3;64:15,16;
65:18,21;73:4,17;74:1;
78:4,14;79:12;81:16;
82:11;87:17,18;89:24,
25;90:7;91:16,19;92:1;
94:12;103:6;105:20;
115:4;116:23;117:25;
121:7;122:4;124:23;
130:16;136:4,25;
137:13;141:15;142:8;
144:21;154:16,20;
155:17,18;158:2,3;
159:5;163:9;164:24;
165:14,15,20;166:3;
176:8;180:8;185:7;
193:7;202:12;207:20;
208:10,12;210:8;
211:4,8;214:22;
216:25;217:7,20;
218:9,12;220:9,12;
221:3
**confirmed (17)**

37:18;63:23;77:8,23;
78:23,23;80:10;103:1,
21;125:10;156:7,14,
17;158:7;179:12;
218:20,21
**confirming (3)**
76:16;79:19;217:23
**conflict (3)**
21:4,5,6
**conflicts (1)**
21:2
**confused (3)**
7:16;54:9;211:1
**confusing (2)**
174:18;176:25
**confusion (1)**
192:23
**conglomeration (1)**
173:15
**Congress (1)**
120:7
**conjunction (1)**
180:8
**connection (11)**
8:14;40:16;57:8;
60:23;62:3;74:9;76:7;
130:16;136:22;208:16;
226:25
**consecutive (1)**
58:19
**consensual (8)**
67:12;184:2;196:19;
197:13,16,18;203:3,19
**consensus (5)**
122:25;123:19,23;
124:22;166:6
**consequence (5)**
164:10;199:12;
216:19,23;220:9
**consequences (2)**
137:21;178:23
**consider (9)**
22:16;24:25;81:12;
110:3;142:7;172:10;
176:3;182:15;209:5
**consideration (11)**
32:23;101:25;124:9,
10;156:9;164:25;
173:9;182:12;187:17;
227:1,3
**considerations (1)**
107:19
**considered (2)**
107:9;136:3
**consistent (9)**
34:8,20;36:6;118:15;
123:10;135:25;136:1;
172:18;177:5
**consolidate (1)**
120:5
**consolidated (1)**
84:7
**constituencies (1)**

164:3
**constituency (3)**
21:14;92:5;126:4
**constituent (2)**
21:10;149:2
**constituents (1)**
149:7
**constitutes (1)**
160:15
**constitutional (1)**
26:19
**construct (1)**
84:25
**constructed (1)**
26:25
**constructive (1)**
170:25
**consummated (1)**
162:7
**contacted (1)**
90:19
**contain (1)**
185:4
**contained (1)**
192:24
**contains (2)**
182:13;217:19
**contemplated (1)**
148:4
**contend (2)**
46:17;206:16
**contested (3)**
143:3;220:11;221:3
**context (8)**
25:4;89:15;109:17;
128:20;131:17;159:4;
208:13;210:8
**Continental (2)**
14:12,21
**contingent (1)**
51:19
**continue (6)**
133:1;143:20;
214:21;215:21;216:6;
224:20
**continuing (1)**
224:20
**contract (10)**
41:4;96:11,12,13,16;
97:15;100:17;204:19;
205:6,7
**contractual (4)**
96:15;97:17,19;
100:10
**contrary (1)**
193:13
**contrast (1)**
195:16
**contrasting (1)**
184:14
**contravention (1)**
123:21
**control (1)**

67:3
**controlling (1)**
186:7
**controversial (1)**
120:17
**controversies (1)**
7:21
**convenient (2)**
87:7;88:8
**conversations (1)**
56:15
**convince (6)**
12:16;26:13;73:3;
80:10;149:12;173:11
**cooperatively (2)**
101:3;115:23
**coordinate (7)**
29:8;108:7;113:8,9;
117:5;118:7;120:3
**coordinating (1)**
13:3;29:9
**coordination (3)**
11:13;108:1;113:11
**co-plaintiff (1)**
12:12
**copy (1)**
70:24
**core (6)**
64:16;76:4;100:7;
176:5;212:6
**Corning (2)**
205:15;206:1
**corollary (1)**
96:11
**Corporation (2)**
6:11;229:18
**correcting (2)**
163:18;183:1
**correctly (1)**
146:18
**correspondence (2)**
22:25;159:16
**corresponding (1)**
137:18
**cost (2)**
20:21;142:21
**costs (2)**
19:23;20:15
**co-trial (1)**
15:2
**counsel (24)**
6:21;15:3;21:20;
22:8,9;31:14;40:23;
44:19;50:4;61:6;89:12;
94:24;105:18;106:18;
111:15;120:3;169:24;
181:21;189:24,24;
216:12;221:25;224:2;
229:18
**count (2)**
74:3;184:13
**country (1)**
170:21

**couple (17)**
7:17;39:7,19;51:16;
82:10;108:16;121:5;
133:1;159:11;165:23;
166:15;169:13,24;
178:10,13;208:17;
222:19
**course (27)**
14:1,1;31:25;33:5,7;
34:13;52:5;68:22;71:4;
79:15;112:20;114:3;
115:21;122:4;134:14;
137:5,15,25;140:2;
142:1;143:2;144:4;
145:23;163:22;178:2;
216,18
**Court (1064)**
6:4,5,7,12,17;7:9,12,
14,16,19,24;8:7,9,13,
17,19,22,24;9:5,8,11,
17,17,20,21;10:5,7,9,
11,15,17,17,20,22,25;
11:4,19,22,23;12:7,11,
24;13:2,7,15,21;14:1,4,
17,24;15:4,10,13,25;
16:4,6,9,9,16,18,22,23;
17:6,11,14;18:1,3,7,12,
16,19,22,22,25;19:4,5,
7,12,15,16,20,25;20:5,
7,12,14,21;15,21,22,
25;22:5,18,20;23:17,
20;24:2,11,12,22;
25:10,12,15,23,23,25;
26:2,3,5,8,9,11,15,17,
23;27:1,3,8,12,19;28:2,
13,23,25,25;29:4,10,
13,23,25;30:9,20,22;
31:3,7,15,22;32:9,15,
18,21;33:14,19,21;
34:1,4,10,12,14,17,23;
35:2,4,6,10,17,19,24;
36:1,2,4,8,10,13,22,25;
37:3,8,14,16;38:7,9,11,
13,19,21,25;39:12,15,
23,25;40:3,6,8,10,12,
15,18;41:7,12,18,20,
22,24;42:2,5,15,22;
43:3,7,15,17,19,24;
44:3,5,8,10,17,23;45:4,
6,13,17,23;46:5,8,11,
24;47:1,8,18,25;48:11,
15,16,20,24;49:2,5,15,
17,24;50:1,8,23,25;
51:2,4,6,8,11,13,18,20,
24;52:2,4,6,16,19,21;
54:4,6,11,13,15,20;
55:3,5,10,13,15,18,21;
56:19,21,25;57:4,6,20,
23;58:1,3,5,10,12,14,
17,23;59:5,9,11,15,17,
19,20;60:1,3,5,8,18,20,
22;61:1,3,10,12,14,17,

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 237
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) concurrent - Court

23;62:14,16,20;63:6,9,
11,14,17,19;64:1,4,6,
19,21,24;65:2,6,9,16,
18;66:4,8,18,20,22,25;
67:2,10,17,20,22,25;
68:6,8,12,14,22,25;
69:10,13;70:3,8,14,17,
21,25;71:4,8,10;72:5,7,
9,11,16,25;73:14,23,
25;74:3,6,8,14,16,20,
25;75:2,5,9,12,17,23,
25;76:3,12,18,25;
77:11,14,16,19,21;
78:5,10,15,18,21;79:5,
9,15,17,22;80:19,23,
25;81:5,11,14,18,20,
22;82:15,17;83:2,4,6,8,
11,16,18,24;84:2,8,13,
16,19,21;85:4,6,8,11,
13,15,17,24;86:4,7,9,
15,19,24;87:13,19,21,
23;88:5,7,13,16,19,21;
89:6,9,11,13,18,20,21;
90:1,3,9,11,13,23;
91:11,13,15,18,23,25;
92:7,9,11;93:6,13,24;
94:2,7,8,11,19,23;95:5,
7,20,24;96:1,4,6,8,19,
22;97:1,5,7,10,13,14,
18,21,23;98:3,5,8,12,
15,18,20,23;99:3,6,15,
18,24;100:1,5,18,20;
101:6,12,14,16,21;
102:2,4,8,10,18,20,25;
103:3,10,13,15,17,19,
23;104:2,4,11,13,16,
18,21,24;105:2,5,8,11,
14,24;106:1,5,7,11,13,
16,21;107:5,16,24;
108:11,13,15,25;109:3,
8;110:19;111:2,4,6,8,
13,21,24;112:2,5,15,
20,22;113:10,13,15;
114:5,8,10,15,19,23;
115:6,9,13,24;116:2,5,
9,14;117:12,16,20,23;
118:4,5,22;119:1,16,
19,21,25;120:15,19,21,
23;121:10,17;122:11;
123:19,25;124:18,25;
125:3,5,8,16,19,21;
126:7,9,13,17,19,21;
127:1,3,9,12,14,19,22;
128:4,12,19,23;129:1,
3,9,18,20,25;130:7;
131:23;132:12,21;
133:4,12,14,17;134:18;
135:13,23;136:5,10,15,
23;138:2,7,9,14,17,19;
140:6,8,10,12,16,18,
20;141:4,7,11,13;143:9,
13,22;144:5,13,23;

145:1,6,9,13,17;146:1,
8,11,16,21,25;147:4,8,
12,16,21,22,24;148:3,
5,8,13,17,20;149:3,15,
18,21,24;150:21,25;
151:2,6,8,11,17,21;
152:1,3,5,18,25;
153:16,19,23,25;154:2,
6,8,10,12,15,19,23;
155:1,4,7,15,22;156:1,
3,8,12,19;157:7,9,14,
18,21;158:12,14;159:1,
3,8,10,14,18,25;
160:24;161:3,5,9,14;
163:7,11,14,16,22;
164:9,19;165:5,7,11,
18,25;166:8,10,12,17,
21,25;167:16,18,20;
168:10,14,18,24;169:1,
3,6,12;171:18,20,23;
172:1,5,8,10,13,24;
173:1,5,8,22,24;174:7,
16,23;175:1,4,7,12,14,
20,22;176:1,3,6,10,13,
15;177:15,18,21,23,24;
178:2,10,17,20;179:4,
6,8,10,19,21;180:1,5,
10,16,21,25;181:5,9,
12,17;182:3,8,18,23;
183:4,7,12,17,19,21,
23;184:9,16,20,23;
185:15,21;186:3,6,10,
16,20;187:1,5,7,11,14,
16,19,25;188:4,10,14,
25;189:3,9,12,16,21;
190:3,16,23;191:4,10,
12,17,22,25;192:9,12,
14,17;193:3,6,7;194:1,
3,9,19,22;195:1,10,11,
16,21;196:2,4,6,10,18,
23,25;197:3,12,18,21,
25;198:5,12,17;199:1,
2,4,8,25;200:15,21;
201:2,5,20,22,24;
202:17,19,21,25;
203:21,25;204:8,12,15,
23,25;205:10,12,14,16,
19,22;206:2,8,25;
207:6;208:4,6,22,25;
209:3,16,19,22;210:3,
10,13,16,18,20,22,24;
211:1,22;212:1,6,21,
22,25;213:5,8,14,23;
214:4,8,11,13,19;
215:8,15,17,24;216:3,
6,7,9,17;218:6,18,23;
219:1,4,6,12,16,21;
220:8,13,17,20;221:8,
10,14,18;222:14;223:1,
8,10,12,16,18;224:9,
14,15,17,23,25;225:3,
11,13,17,25;226:3,8,
12,15,20;227:7,25;

228:3,6,13,16,18,21,
25;229:7,15,21,23,24;
230:3,5
**courtroom (6)**
15:5;38:23;39:10;
47:15;92:17;138:1
**courts (1)**
212:5
**Court's (6)**
6:10;46:16;76:4;
145:24;177:19;182:12
**covenants (1)**
217:11
**covered (2)**
51:3;229:13
**CPUC (5)**
101:22;103:7;
132:15,18,20
**CPUC's (2)**
132:14,16
**cramdown (1)**
128:17
**cram-down (1)**
38:2
**Cravath (2)**
23:19;45:18
**crawl (1)**
139:18
**crazy (2)**
40:24;187:8
**create (4)**
175:24;177:16;
194:18;197:1
**created (1)**
17:2
**creates (1)**
17:3
**creating (1)**
20:1
**creative (1)**
32:25
**credit (3)**
113:21;139:24,25
**creditor (19)**
54:24;55:1;83:19;
97:24,25;125:11;
143:23;150:19;160:13;
176:18,22;185:17;
186:22;201:12,17,18;
203:22;220:4;226:22
**creditors (32)**
15:19;46:14,19;
55:10,13;76:15;90:22;
91:9;92:14,16;96:9,13;
98:1;104:13;131:18;
143:19,21,25;149:3;
150:14;159:23;160:18;
162:14;167:13;176:19;
186:18;217:15,23;
218:14;219:8,17,19
**creditors' (13)**
18:12;29:20;46:17,
20;84:1;89:7;100:24;

113:4;119:15;201:20;
203:16;211:6;213:15
**creditor's (1)**
119:18
**creep (1)**
58:16
**creeping (1)**
6:20
**criminal (1)**
210:18
**critical (1)**
37:23
**criticizing (1)**
141:10
**cross-designated (1)**
12:23
**cross-designating (1)**
12:23
**Crowded (2)**
6:7;222:17
**crushed (1)**
86:1
**Crutcher (1)**
95:3
**current (2)**
102:23;133:11
**currently (1)**
29:17
**customary (1)**
132:10
**cut (2)**
45:7;144:24
**cutoff (1)**
45:25
**cuts (3)**
196:7,9,10
**cutting (1)**
120:9

**D**

**damages (2)**
8:1;150:12
**data (3)**
8:10;9:3,5
**date (36)**
23:20;24:5;43:2,21,
22,23,24;44:1,5;46:3,5,
7;47:4;48:1;53:13;
82:12,14;85:3,9;87:7,9,
12;88:7,24;100:13;
108:5;116:11,11;
119:14;130:22,23;
221:23;223:6;224:11;
225:1,2
**dates (16)**
43:25;44:13;46:23;
86:25;87:4,5,8,11;88:2,
23;89:14,23;90:17;
92:13;119:2,8
**date's (1)**
46:8
**David (4)**

95:2;104:6;105:13;
113:18
**Davis (1)**
99:1
**day (15)**
13:11;28:19;42:25;
88:14;108:7;110:14,
24;111:20;135:16;
169:7;170:6;188:8;
218:20;224:6;230:5
**days (16)**
39:7;42:23;70:11,13,
15;71:22;89:21;
110:19;111:12;112:8;
116:9;134:6,9,9;
169:15,24
**dead (3)**
26:15,16;151:12
**deadline (6)**
56:11;76:16;79:7;
102:22;131:25;222:18
**deadlines (1)**
118:15
**deal (28)**
8:24;30:24;95:14;
102:14,25;103:22,23,
23;115:6;128:14;
143:16,17;147:6;
159:16;170:1,6,16;
173:2;175:13;185:17;
189:5;194:15;196:7,9,
10;197:23;198:21;
200:21
**dealing (8)**
10:12;53:9;91:19;
103:24;105:23;107:24;
115:8;120:9
**dealt (5)**
37:24;94:12;112:2;
145:3;187:21
**death (1)**
128:15
**debate (3)**
79:23;157:14,15
**debt (6)**
57:15;100:19;
104:23;133:18;142:6,6
**debtor (54)**
20:16;30:1,2;42:6;
53:13,21;54:2,25;78:7,
19;79:1,14;80:11,13;
93:8;109:18,22,23;
115:1;119:9;120:4;
142:17;144:9,10;
147:1;151:16,23;
161:24;169:17;177:2;
183:16;184:10;185:17;
186:1,12;190:23;
191:1;192:2;197:8;
201:12,25;204:13,21;
205:5,17,20;217:14,16;
218:15;219:9,23;
227:4,11,13

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 238
of 261

**debtors (53)**
6:14;8:14;14:11;
16:5;17:5;18:9,11;
22:14;23:19;28:10;
45:19;50:13;66:11;
69:4;70:5;75:19;76:24;
121:15;123:4,9;
131:13,16;133:25;
134:6,7,17,24;135:8;
140:2,23;141:10;
152:9;153:10;155:12,
12;163:4;171:13;
177:25;178:3;183:10;
184:4,7;185:3,8;
189:11;210:5;217:3;
226:11,16;227:20;
228:5;229:2,3

**debtors' (31)**
8:11;9:4,14;12:7;
13:15;14:24;15:21;
41:2;45:13;46:20;65:3,
12;71:15;78:2;81:14;
82:7;95:16,21;155:17;
156:23;163:18;164:1;
170:18;208:2;209:25;
217:2;218:14;219:8,
12;220:25;227:19

**debtor's (18)**
77:23;78:24;109:24;
114:19;119:11,14;
122:18,21;123:20;
124:4;130:10;133:20,
22;134:13;140:22;
143:6;144:17;204:20

**December (33)**
23:22;30:18;42:17,
19,21,21;43:10,21;
46:20,21,22;49:20,21;
54:25,25;55:1,8;84:14,
15,16;85:18;87:6,9;
110:25;112:11;116:11;
119:5,6,11,12,14,15,17

**decide (12)**
10:22;18:23;19:3;
37:19,20;103:20;
137:22;194:10,23;
200:13,14;216:25

**decided (7)**
11:16;25:8;26:7;
143:23;146:5;179:24;
206:11

**decides (2)**
138:11;200:9

**deciding (1)**
155:16

**decision (17)**
24:6;37:12;70:12;
71:20,21;109:22,23;
131:7,21;132:1,23;
163:20;164:8;168:20;
188:3;208:20;220:3

**declarations (1)**
134:11

**deem (1)**
117:13

**deeply (1)**
136:20

**Defendant (2)**
9:23;10:23

**defense (2)**
153:4;197:12

**defensed (1)**
152:15

**defer (1)**
79:23

**defined (1)**
188:19

**definition (5)**
171:16;188:16,17;
192:10;204:18

**definitive (2)**
132:23;134:14

**degree (1)**
62:22

**delay (4)**
56:24;86:6;117:6;
168:1

**delaying (1)**
156:9

**deliver (3)**
122:6;141:10,12

**demand (2)**
151:10;192:5

**demanded (1)**
183:15

**demonstrate (2)**
130:21;180:8

**demur (1)**
26:4

**denied (2)**
16:15;19:8

**Dennis (1)**
6:6

**dent (1)**
219:25

**deny (9)**
16:22;19:20;29:2;
90:18;154:3;155:16,
18;216:2,3

**depart (1)**
146:22

**Department (2)**
50:9;181:25

**dependent (1)**
140:5

**Depending (1)**
21:8

**depiction (1)**
73:15

**deposition (3)**
133:17;134:12;
136:21

**depositions (11)**
12:24;16:1,2,11,17;
17:19,21;18:13,16,17;
19:9

**deprive (1)**
156:5

**derived (1)**
152:22

**describe (3)**
19:21;132:7;150:25

**describing (1)**
154:11

**designate (3)**
46:17;50:13;53:22

**designated (1)**
50:22

**designation (1)**
54:23

**designed (1)**
162:24

**desire (1)**
105:2

**despite (2)**
122:11;130:3

**detail (1)**
56:18

**detailed (1)**
126:24

**details (1)**
135:14

**determination (1)**
61:14

**determine (11)**
126:11,14,16;
127:16,17;128:2,7;
129:23;138:5;162:2;
194:11

**determined (3)**
129:12;201:14;
202:11

**determines (1)**
128:22

**detriment (1)**
73:9

**devastated (1)**
157:10

**development (1)**
139:19

**diagram (1)**
172:19

**dialing (1)**
18:13

**dictate (1)**
151:15

**Diemer (1)**
45:6

**difference (4)**
65:22,24;68:18;
71:14

**different (37)**
17:15;32:22;36:20;
39:19;40:25;58:10,15,
21;59:15;66:11;75:13;
80:7;82:20;83:19;96:8;
111:12;113:11;117:2;
118:9;127:11,13;
137:22;144:2;147:23;

149:6;160:11;168:15;
180:22;191:22;197:19;
201:19;205:3,6,12;
212:1;224:18,19

**differentiate (1)**
192:22

**differently (5)**
34:22;156:12;
160:18,23;212:19

**difficult (7)**
112:16;117:4;158:4;
163:1;177:20;216:1,2

**difficulty (2)**
182:24;226:13

**digress (1)**
132:12

**diluted (1)**
211:15

**direction (5)**
33:23;108:1;224:13,
19,19

**Directly (1)**
225:22

**dirty (1)**
137:24

**disadvantage (1)**
79:14

**disagree (6)**
24:9;136:16;167:24;
168:10;187:19;216:3

**disagreeing (2)**
89:23;209:18

**disagreement (3)**
107:13,14;203:6

**disagrees (1)**
181:21

**disappear (2)**
66:4;140:2

**disappears (2)**
66:2;68:21

**disappointed (2)**
146:25;157:9

**disapprove (1)**
148:6

**disclosure (4)**
33:11;71:23;74:10;
132:6

**disclosures (1)**
125:10

**discovery (4)**
20:3,8,9;76:8

**discrete (6)**
33:2,10;37:11;50:14;
142:6;166:1

**discretion (3)**
140:23;141:1;217:4

**discrimination (2)**
213:12,13

**discuss (6)**
24:10;27:25;32:22;
45:22;49:13;213:6

**discussed (9)**
23:11;25:19;30:25;

42:17;46:23;76:2;
90:17;111:16;229:13

**discussing (1)**
124:3

**discussion (5)**
138:24;139:1;147:9;
158:23;170:3

**discussions (5)**
33:11;92:25;100:13;
121:23;227:17

**dispel (1)**
178:14

**dispute (5)**
27:5,10;57:18;109:5,
24;201:12,13

**disputed (1)**
51:19

**disputes (2)**
107:3;109:6

**distinct (1)**
36:16

**distinguish (1)**
40:13

**distinguishing (1)**
110:10

**distorted (1)**
65:10

**distress (1)**
150:12

**distribute (1)**
128:6

**distributed (1)**
132:10;152:2

**distribution (1)**
134:8

**distributions (2)**
160:10;167:8

**district (2)**
168:24;210:16

**divergent (1)**
93:4

**divides (1)**
31:10

**Division (2)**
50:10;182:1

**DOA (3)**
60:15,24;78:3

**doable (2)**
69:15;118:20

**docket (1)**
76:21

**doctrinal (1)**
26:20

**doctrine (1)**
26:22

**document (17)**
30:7;49:22;140:25;
148:11;170:19,23;
174:17;177:4,13,17;
188:17,18;217:12;
218:4;221:21;222:9;
223:24

**documents (7)**

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 239
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(8) debtors - documents

11:15;12:18;140:21;
141:4;169:23;173:16;
222:24
**dollar (16)**
91:8;137:5;142:10;
150:18;153:6;155:11;
178:24;179:1,12,16;
180:7;209:15;215:4,7;
220:7;226:24
**dollars (56)**
49:19;57:25;62:2,15;
63:2;66:1,19;68:11;
69:14;82:7;103:14;
106:23;115:17;124:15;
131:4;134:9;139:8,9,
10;160:9;176:4,19,20,
21;178:15,19;191:18;
193:16,17;195:14;
197:7,8;202:3;204:3;
206:12,20;207:11,15;
209:10,11;210:6;
211:2;215:3;217:6,25;
219:13;220:10,16,25;
221:5,5,6,7;227:5,10;
228:12
**dollars' (1)**
95:10
**domino (1)**
150:19
**Donato (56)**
9:16,18;11:2,5;12:1,
4;16:15;23:11;24:13,
23,25;30:4;33:5;47:19;
54:9;59:7;60:10;62:5;
65:25;66:12;68:2;69:3,
4,13;70:6,12;71:17,19,
25;76:10,21;81:3,6;
121:25;122:1;126:15,
25;128:10,22,24,25;
129:10;131:7,9,12,20;
133:10;135:3;149:9;
150:10;153:14;158:10;
169:6;194:11;209:2;
214:5
**Donato's (6)**
23:12;25:7;126:17;
149:17;157:2;214:3
**done (29)**
14:12;29:7;30:24;
31:13;33:5;51:21;
54:18;65:11,12;76:3,7;
80:11;91:8;112:8;
123:15;127:16,17;
132:5;142:18;147:23;
173:9;176:3;181:16;
198:8,9;199:3;208:9,
16;228:17
**doubt (4)**
15:3;48:7;134:22;
203:20
**Dow (2)**
205:15,25
**down (30)**

10:20;12:11;13:9;
16:9,12;33:11;35:6;
37:21;67:8,12;70:9;
72:3,3,13;84:23;86:21;
94:4;135:13;147:8;
157:22,24;184:4;
189:22;196:6;197:7;
202:14;203:7,12;
219:10,14
**downplay (1)**
6:21
**dozen (1)**
82:19
**draft (3)**
53:8;118:12;189:17
**drafted (3)**
116:16;193:5;216:19
**drafting (1)**
108:6
**dramatic (1)**
110:5
**dramatically (2)**
56:6;60:14
**drop-dead (1)**
223:6
**drops (1)**
69:23
**dual (1)**
87:16
**due (2)**
86:16;114:16
**dug (1)**
136:21
**Dumas (63)**
93:15,19,20;94:1,3,
10,18,20;129:22;
147:11,12,17;148:21,
22;149:16,19,23,25;
150:24;151:1,4,7,9,14,
18,22;152:2,4,6,20;
153:2,16,18,22,24;
154:1,5,7,9,11,18,22,
25;155:3,5,8,21,25;
156:2,4,8,11,18;157:6,
8,13,17,20,22;158:13;
179:23;191:17;213:25
**dump (2)**
77:22;122:18
**dumping (1)**
156:22
**Dunn (1)**
95:3
**duplicate (1)**
98:11
**during (2)**
39:5;192:25
**duties (1)**
20:23

**E**

**earlier (18)**
23:2,3,23,25;29:2;

32:8;34:9;37:24;44:24;
65:13,19;94:13;102:1,
5;130:13;147:7;
164:22;165:12
**early (3)**
32:13,25;222:24
**earn (1)**
160:9
**easier (4)**
63:20;107:20;
116:18;119:8
**easiest (2)**
121:16;188:22
**easily (2)**
165:15;189:17
**easy (11)**
32:3;108:14;110:3;
111:8;170:22;171:17;
181:18;188:13,14;
192:17;204:25
**economic (1)**
131:15
**educated (1)**
173:14
**effect (5)**
10:1;14:25;150:19;
218:13;220:4
**effective (1)**
162:7
**effectively (3)**
15:2;122:10;160:14
**effects (1)**
186:10
**efficacy (1)**
185:23
**efficiency (2)**
79:10;87:14
**efficient (8)**
25:16;33:1;52:21;
58:7,7;78:19;110:3;
168:23
**efficiently (4)**
57:11;62:6;72:17;
135:17
**effort (7)**
115:4;120:3;130:17,
18;135:7;139:17,19
**efforts (5)**
11:13;47:21;65:17;
98:11;139:4
**EFH (1)**
109:5
**eight (1)**
181:16
**eighty-five (1)**
180:17
**either (16)**
24:21;25:4;42:8;
60:10;73:9;77:5;79:17;
80:8;114:3;131:10;
152:18;154:17;158:3;
190:9;218:8;227:4
**elect (3)**

198:9;200:4;227:6
**election (4)**
109:19,24;200:1;
227:12
**elements (1)**
74:19
**eleven (31)**
62:13;68:4;124:15;
129:5;152:21;153:7;
176:4,18,20,21;178:15,
19,23;179:1,2,12,16;
193:16,17;195:13;
204:3;211:12;217:24;
218:23;219:13;220:10,
24;221:5;227:5,10;
228:11
**eleven-billion- (2)**
220:6;226:23
**eleven-billion-dollar (3)**
211:11;218:1;227:22
**eligible (1)**
218:20
**eliminate (1)**
100:8
**Elliott (2)**
6:23;134:21
**else (23)**
9:11;11:21;16:14;
25:9;31:16;43:8;45:7;
53:7;63:12;70:13;
79:13;103:3;113:15;
114:23;124:3;150:15,
17;160:12;179:15;
183:16;186:2;225:5;
228:13
**else's (1)**
228:20
**elsewhere (1)**
206:17
**embedded (1)**
192:22
**embedding (1)**
218:4
**emerging (1)**
76:16
**emotion (1)**
6:19
**emotional (1)**
150:12
**emphatic (1)**
15:15
**employment (1)**
12:25
**enables (1)**
107:8
**enacted (1)**
120:7
**encourage (1)**
126:1
**encouraging (2)**
166:5;225:23
**end (9)**
58:8;82:12;107:9;

152:8;170:6;178:14;
198:24;201:21;220:2
**ended (1)**
166:20
**endorsed (1)**
149:4
**energetic (1)**
149:13
**energy (1)**
6:21
**enforce (2)**
10:3;20:19
**enforces (1)**
108:24
**enforcing (1)**
199:11
**engage (2)**
123:14;227:14
**engaged (2)**
33:22;123:14
**engagement (1)**
12:8
**engineered (1)**
142:5
**enormous (2)**
138:16;139:11
**enough (11)**
44:24;47:19;72:2;
79:18;81:10;122:16;
138:6;141:5;151:22;
196:11;217:22
**entailed (1)**
144:22
**enter (2)**
177:25;195:12
**entire (1)**
84:11
**entirely (3)**
123:1;126:3;150:16
**entities (16)**
50:17,22;62:1,12;
155:14;184:18,25;
185:5,11;188:20;
191:14;209:9;210:5;
211:9,16;215:6
**entitled (10)**
16:10;67:7;83:12;
96:17;129:24;130:22;
139:11;154:4;190:14;
221:6
**entitlement (1)**
82:1
**entitlements (1)**
64:17
**entity (4)**
17:3;185:10;205:16;
211:3
**equally (2)**
27:10;35:11
**equitable (4)**
77:10;78:1;79:19;
168:21
**equitably (1)**

Min-U-Script®

Case: 19-30088   Doc# 4467   Filed: 10/24/19   Entered: 10/24/19 14:35:11   Page 240
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) dollar - equitably

131:18
**equity (29)**
29:19;66:16,21;
68:10,20,21;69:4,7,9;
73:10;78:3;128:7;
129:14;131:18;133:18,
23,24,25;134:1,9;
143:10;145:23;152:9;
160:7;167:2,3;214:16;
227:6,13
**equivalent (2)**
75:13;227:11
**error (1)**
64:12
**especially (1)**
11:9
**essential (1)**
11:17
**essentially (9)**
11:12,20;12:1;21:19;
73:4;123:8;219:24;
220:4;221:2
**establish (1)**
75:20
**estate (6)**
20:3;21:13;162:14,
25;217:15,22
**estimatable (3)**
53:23;221:10,11
**estimate (16)**
65:24;75:19;148:15;
149:10,17;150:11;
167:23,23,25;168:4,5;
208:20;217:6;218:16;
221:7,13
**estimated (6)**
49:7;53:16;69:14;
191:2;217:8;221:5
**estimates (1)**
133:10
**estimating (2)**
75:13;168:7
**estimation (65)**
7:20;8:2,10,25;9:15;
10:13;11:1,11,15,25;
12:18;14:14;17:22;
25:4;33:5,16;35:13;
46:3,14,18;50:15;59:7;
60:10;63:21;64:16;
71:18;73:6,18;75:13,
21;76:7;81:4;122:1;
126:5,7,10;127:6,16,
17,23;128:5,16;
129:23;130:2,15;
131:19;133:6;136:17;
137:22;138:9,10;
148:1,2;151:5;167:23;
168:11;191:5;194:13;
206:21;209:2,7;211:8;
214:3;217:9;224:20
**estimations (2)**
119:10;137:24
**et (3)**

33:9;115:19;175:19
**evade (2)**
139:4,19
**evaluate (2)**
130:25;164:2
**evaluated (2)**
177:6;214:23
**even (40)**
8:20;12:22;17:7,12;
19:8,8;22:22;27:13;
31:16;44:24;47:10;
78:7;79:1;88:1,5;
100:8;122:1,5;124:7,
21,23;125:6,8;133:5;
142:1;144:8;156:7;
169:15;171:23;173:18;
174:11;178:11;191:7;
196:19;197:18;198:16;
204:9;217:12,18;221:8
**evening (1)**
172:14
**event (4)**
121:12;164:3;
229:11,14
**events (2)**
184:25;185:1
**everybody (19)**
30:6,9,22;43:7;50:3,
13;51:11;62:2;63:12;
80:11;85:22;95:1;
150:15,17;158:5;
160:12;187:23;188:12;
228:20
**everybody's (4)**
33:4;54:6;74:13;
116:17
**everyone (8)**
6:8;79:3;83:1;
185:12;202:22;208:11;
213:18;230:3
**everyone's (1)**
212:4
**evidence (17)**
13:2;14:9;72:19;
74:21,22;122:4,5;
131:1,1;139:3;143:3;
163:3;202:4,6;211:5;
213:19;214:15
**exact (5)**
12:20;13:4,5;217:12,
19
**exacting (1)**
137:23
**exactly (25)**
14:12;33:17;36:3;
59:18;75:8;77:1;84:18;
91:21;113:3;126:15;
140:15,17;143:12;
146:13;150:24;159:4;
168:8;173:3;185:12;
191:15,16;202:14;
206:5;207:9;215:2
**examiner (2)**

228:24;229:4
**examining (1)**
13:5
**example (6)**
11:2;31:22;35:12;
149:9,11;197:5
**excellent (1)**
148:23
**except (2)**
6:18;145:15
**exception (2)**
201:21;213:15
**exceptional (3)**
203:9,11,14
**excess (5)**
63:2;78:2;106:22;
122:2;131:3
**exchange (1)**
199:1
**excludes (1)**
188:19
**exclusive (1)**
160:6
**exclusively (2)**
134:1;161:1
**exclusivity (21)**
34:2;37:6,12;60:24;
61:7;122:12,14,23,24;
123:12,15;136:24;
146:20;147:1;163:21;
164:12;180:25;219:25;
220:1;226:25;228:9
**excuse (7)**
21:16;38:17;41:14;
119:11;151:11;183:22;
210:24
**exercise (1)**
162:23
**exhibit (2)**
73:12;177:11
**exist (5)**
21:6;69:20;140:22;
195:8;208:9
**existence (1)**
17:2
**existing (5)**
21:20;25:8;133:23,
24;161:1
**exists (2)**
21:4;184:15
**exit (1)**
160:20
**expand (1)**
19:18
**expansion (1)**
20:23
**expansive (1)**
22:7
**expect (4)**
29:18;95:9;101:9;
120:2
**expeditiously (1)**
124:2

**expensive (1)**
75:24
**expert (5)**
19:23;20:1,2;76:5,9
**experts (2)**
11:16,21
**explain (3)**
42:14;71:14;149:3
**explanation (1)**
189:4
**exposed (1)**
192:7
**exposure (1)**
157:25
**express (1)**
97:19
**expressed (2)**
89:19;146:7
**extend (3)**
47:4;130:23;222:17
**extension (2)**
47:13;223:11
**extent (16)**
14:22;15:23;16:12;
23:5;40:19;84:11,11,
25;103:22;164:19;
166:1;169:16;171:21;
174:3;175:16;178:4
**extra (2)**
49:1;70:24
**extremely (1)**
93:22
**eye (1)**
187:6

---

## F

**face (2)**
131:10;161:21
**faced (2)**
190:8;206:9
**facilitate (1)**
160:20
**facility (1)**
113:21
**fact (30)**
12:22;14:11;27:3;
34:6;48:8;60:8,24;
61:18;68:21;69:2;73:8;
74:18;75:7;76:5;82:10;
100:6;130:3;132:19;
133:11,24;135:9;
136:2;140:1,6;143:5;
144:18;162:2;163:2;
179:9;192:7
**factors (2)**
187:23;188:3
**facts (10)**
13:2;26:24;27:5,10;
72:19;91:7;139:2,4,5;
210:8
**factual (11)**
65:7;126:11,12,14;

136:21;139:19,23;
140:3;143:2;161:10;
163:1
**factually (2)**
100:16;223:5
**fail (1)**
124:5
**failed (2)**
77:5,5
**fails (1)**
201:8
**failure (1)**
185:3
**faintest (1)**
140:3
**fair (12)**
77:9;78:1;79:18,19;
81:10;107:7;168:21;
180:24;209:5;210:9;
211:5,7
**fair-and-equitable (1)**
64:18
**fairly (5)**
131:18;188:13,14;
206:12;214:23
**fairness (2)**
201:14;202:11
**faith (1)**
122:9
**fall (2)**
138:11;219:16
**familiar (3)**
184:17,18,20
**fan (1)**
175:4
**far (4)**
22:4;30:24;63:1;
84:19
**fashion (2)**
92:2;132:10
**fast (5)**
89:15;125:8;130:2,
14;135:15
**faster (2)**
84:22;112:3
**fast-moving (1)**
155:1
**fast-track (6)**
56:9;89:24,25;149:4,
5;154:13
**fast-tracking (2)**
89:16;90:7
**fatal (1)**
182:19
**favor (3)**
180:15;190:8,12
**favorable (3)**
9:8,9;135:6
**favors (1)**
89:16
**feasibility (9)**
33:8;69:19,19;74:25;
75:1;101:25;102:3;

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 241
of 261

140:14;141:16
**feasible (1)**
    37:21
**February (1)**
    71:17
**federal (12)**
    17:7,7;41:4;46:12;
    50:10,10,25;109:16;
    150:4;170:13;195:16,
    17
**federally (1)**
    17:2
**fee (2)**
    228:23;229:3
**fee-examiner (1)**
    229:4
**feel (8)**
    20:22;145:20,21;
    155:22;181:1;190:13;
    198:14;223:12
**fees (2)**
    160:10;172:6
**FELDMAN (140)**
    95:2,3,6,8,23,25;
    96:2,5,7,10,20,23;97:3,
    6,9,11,14,19,22;98:2,4,
    7,9,13,16,19,21,22;
    147:13,19,20,21,22;
    148:4,7,12,14,18;
    168:3;170:10;172:22;
    173:24;174:13,19,20;
    175:2,5,8,13,15,21,23;
    176:7,11,14;177:11,14,
    16,19,24;178:3,16,18,
    22;179:5,7,9,18,20,22;
    180:4,6,13,20;181:7,
    10,14;182:20;183:25;
    188:11,16;189:1,19,22;
    192:14,16,18;193:4,15;
    194:2,7,20,23;195:6,
    12,20;196:1,3,5,8,12,
    14,20,24;197:1,3,11,
    17,20,22;200:6;215:8;
    216:14,18;219:13;
    220:20;221:20;222:3,
    8,11,23;223:3,9,11,13,
    17;224:5,11,16,18,24;
    225:1,8,12,18;227:15;
    228:1,3,4,7
**Feldman's (8)**
    171:11;174:2,8;
    183:2;185:18;189:8;
    199:15,20
**felt (3)**
    90:22;153:24;154:1
**FEMA (2)**
    209:10;215:7
**fencing (1)**
    145:12
**FERC (1)**
    17:8
**few (5)**
    42:20;57:17;116:19;

121:17;169:15
**Fidelity (2)**
    104:9;158:21
**fiduciaries (1)**
    131:14
**fiduciary (5)**
    61:8;90:21;162:8,12;
    227:21
**fifteen (4)**
    45:23;139:8;169:25;
    207:11
**Fifth (1)**
    171:7
**fifty (5)**
    68:2;109:11;206:10;
    215:2,7
**fight (3)**
    117:8;152:23;221:9
**figure (13)**
    33:1;38:4;73:2;
    117:20;127:9;128:6;
    146:4;151:2;169:22;
    170:15;173:17;177:9;
    198:1
**figured (2)**
    66:25;207:19
**file (28)**
    12:11;14:21;25:20;
    42:9;46:19;47:23;48:3;
    49:6,6;71:22;98:13;
    99:21;100:9,25;101:9;
    107:14;114:12;115:25;
    116:25;117:7,9;119:9,
    22;120:5;175:5,24;
    206:24;222:24
**filed (28)**
    15:13,20;35:14;
    46:13;47:20;50:17;
    63:25;95:8;101:4;
    104:15;105:3;120:8;
    122:7;123:6;134:18;
    150:5,6;155:14;166:3;
    171:23;174:25;175:18;
    177:12;207:12,16;
    209:9;221:4;226:25
**filing (11)**
    17:18;22:23;29:1;
    30:5;31:8;35:21;41:22;
    95:9;100:14;229:2,16
**fill (3)**
    72:2;118:19,19
**final (4)**
    25:4;63:23;157:23;
    174:11
**finalizing (1)**
    229:9
**finally (1)**
    130:24
**financial (3)**
    135:2,4,8
**financing (24)**
    33:9;66:2;68:19;
    78:4;133:11,22;134:6,

25;140:1,21,21,25;
    141:10,12;143:4,5;
    160:19,22,23;161:18,
    24,25;162:10;167:11
**find (10)**
    24:23;59:22;69:14;
    72:2;77:25;79:20;90:7;
    99:20;116:25;169:20
**finding (2)**
    62:3,6
**findings (1)**
    9:12
**fine (53)**
    7:1;14:19;18:18;
    20:10,11;28:24;31:15;
    35:19;42:3,4,21;43:5;
    44:16,20;45:22,24;
    49:4;50:12,12;52:8,9,
    20;53:3;54:3;55:15;
    78:24;82:25;83:1;
    88:17;91:25;92:7,12,
    23;100:18;101:16;
    106:15;111:5;112:4,
    14;114:18;115:1,3,18;
    116:13,21;140:7;
    153:12;166:2,4;177:6;
    189:14;207:24;208:1
**finish (8)**
    45:10;80:4,5;105:21;
    106:3,12,13;132:24
**finished (3)**
    63:23;132:8;197:9
**fire (9)**
    8:12;12:20;47:5;
    138:20;190:18;202:5;
    210:1;215:20,20
**fires (8)**
    8:1;9:15;12:2;25:3;
    26:21;113:24;139:7,14
**firm (2)**
    99:8;113:19
**firm's (1)**
    12:8
**first (28)**
    6:15;31:9;37:18;
    44:5;49:22;58:9;80:5;
    81:23;86:15;91:3;
    114:3;116:7;123:22;
    132:15;136:19;146:4;
    147:16;158:24;159:21;
    169:14;170:3;191:1;
    194:5;200:18;201:10;
    204:17;205:25;206:21
**fit (1)**
    25:13
**fits (1)**
    46:22
**five (2)**
    142:10;193:18
**five-page (1)**
    30:12
**five-year (1)**
    151:23

**fix (2)**
    216:20,21
**fixed (2)**
    49:18;189:17
**flag (1)**
    100:4
**flaw (2)**
    182:19;187:8
**flex (1)**
    86:18
**floor (1)**
    54:11
**focus (6)**
    7:17;51:22;83:6;
    137:11;144:25;222:19
**focused (5)**
    27:20;49:8;81:3;
    137:10;212:11
**focusing (3)**
    102:23;105:19;128:4
**fold (2)**
    68:2;214:8
**folks (2)**
    111:13;211:10
**follow (3)**
    17:22;215:16;221:15
**followed (2)**
    158:24;203:7
**following (10)**
    7:18;39:17;49:7;
    87:12;88:12,14;
    141:14;149:7,21;
    150:21
**football (1)**
    58:8
**footnote (2)**
    54:8,8
**footnotes (1)**
    54:10
**force (3)**
    149:13,16;221:2
**forced (1)**
    164:7,9;203:18
**forcing (1)**
    203:3
**forgo (1)**
    27:22
**forgot (3)**
    55:7;119:16;120:16
**form (5)**
    195:8,9;227:1,3;
    229:14
**formal (1)**
    137:16
**format (1)**
    170:19
**formed (1)**
    95:3
**former (1)**
    60:11
**formulation (1)**
    225:23
**forth (4)**

172:10;174:5;193:1;
    201:10
**forty (4)**
    152:21;206:10;
    213:21,22
**forty-five (1)**
    196:24
**forward (26)**
    37:10;75:21;78:13;
    102:21;103:11,18;
    114:2;122:17;123:1,
    17;124:3;130:10;
    132:18;134:16;135:4;
    136:18;163:19;164:4;
    165:4;166:22;188:7;
    200:3;223:15;229:24
**found (1)**
    77:9
**four (7)**
    38:1;45:10;73:19;
    83:19;118:10;166:24;
    187:22
**four-cornered (1)**
    170:24
**four-prong (1)**
    201:14
**fourteen (2)**
    13:23;131:4
**Fox (1)**
    106:18
**frame (3)**
    11:10;222:19;223:2
**framework (1)**
    48:21
**FRANCISCO (1)**
    6:1
**frankly (13)**
    34:19;95:13,14;
    99:21;131:10;137:11;
    139:15,23;144:19;
    147:6;176:7;224:7;
    227:20
**free (8)**
    16:23;76:21;223:14;
    226:9,17;228:1,3,5
**frequently (2)**
    130:7;173:5
**fresh (1)**
    88:3
**Friday (2)**
    25:20;27:21
**front (8)**
    114:21;131:9;165:9;
    213:10,10,20;215:5;
    221:4
**front-end (1)**
    81:4
**Fulbright (1)**
    48:13
**full (9)**
    56:10;74:18;110:19;
    150:16;167:10;168:16;
    194:6,8;208:18

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 242
of 261

**fully (4)**
107:8;190:19;
215:21;229:25
**functional (1)**
6:24
**fund (12)**
68:20;104:12;
124:11;133:19;134:3,
13,19;167:3;191:2,4,6;
203:1
**fundamental (8)**
60:6;63:3;66:14;
142:8,22;192:18;
194:15;228:8
**fundamentally (1)**
65:14
**funded (1)**
57:15
**funds (3)**
6:22;57:2;162:10
**further (4)**
15:12;21:22;76:22,
22
**future (3)**
100:16;125:24;
211:13

**G**

**game (4)**
78:25;147:2;184:11;
189:7
**gap (1)**
72:2
**gating (4)**
8:16;32:5,13;110:15
**gave (4)**
7:11;80:9;173:16;
218:16
**general (4)**
89:23;95:19;100:7;
229:18
**General's (1)**
52:17
**generate (1)**
138:6
**generis (1)**
154:12
**gentleman (2)**
105:11;121:3
**genuine (1)**
137:8
**gets (8)**
138:9;143:17;
156:16;164:4;174:18;
183:25;196:5;219:13
**ghost (2)**
19:22;20:18
**Gibson (1)**
95:3
**given (10)**
11:8,10;16:2;53:6;
102:23;109:25;186:15;

187:18;207:2;221:19
**gives (3)**
170:8;204:4;214:5
**giving (3)**
61:25;62:12;190:10;
207:24;213:10,11;
220:10
**glad (3)**
35:20;66:6;165:19
**global (2)**
123:23;202:15
**goal (3)**
80:20;81:5;113:25
**goes (19)**
21:8,11;27:13;32:24;
69:24;75:21;80:11;
136:18;153:3,14,14;
158:10;163:19,22;
164:4;175:18;183:16;
185:21;228:8
**Good (39)**
6:7,8,9,13;7:5,6,9;
14:5;18:4,5;23:18;
45:16;48:12;51:18,20;
52:16,16;55:22;67:6;
76:6;89:8;95:2;98:24,
25;101:17;104:6;
105:9;106:17;113:17,
18;115:14;122:16;
145:9;166:15;179:19;
190:1;196:11;200:2;
216:11
**goods (1)**
95:12
**Gotshal (5)**
6:14;18:8;22:14;
121:14;214:1
**government (12)**
35:14;46:1;47:12,17;
48:16;49:10;50:10;
169:18;184:6;191:13;
195:16,18
**governmental (5)**
47:22;48:7;49:9,10;
53:23
**government's (2)**
50:24;170:13
**Governor's (1)**
181:18
**grandchildren (1)**
177:9
**grant (5)**
29:2;170:18,18;
215:25;216:7
**granted (5)**
8:6,22;16:13,21;
17:25
**granting (1)**
8:23
**grapple (1)**
164:7
**GRAULICH (16)**
98:25;99:1,5,6,7,16,

19,25;100:3,6,19,23;
101:7,13,15,16
**G-R-A-U-L-I-C-H (1)**
99:5
**gray (1)**
68:7
**great (9)**
28:21;35:19;61:18;
82:21;100:15;142:6;
147:6;165:23,24
**Gregory (2)**
89:8;216:11
**ground (1)**
170:24
**group (20)**
7:24;29:19;32:1;
41:9;53:24;59:11;
67:23;82:4;83:9;104:9;
107:10;127:6;134:21;
135:5;158:20;167:2,
14;170:20;177:3;
225:15
**groups (6)**
82:20;83:19;84:4;
102:13;125:12;160:17
**guarantor (1)**
205:9
**guard (1)**
92:18
**guess (30)**
28:7;30:9;47:8;
72:23;78:10;83:20;
84:21;88:25;104:6,6,
12,14,17,20,22,25;
105:3,6,13,14;106:23;
110:16;119:21;120:19;
121:19;150:23;164:16,
22;222:7;224:12
**guidance (1)**
229:14
**guide (1)**
146:17
**guilty (1)**
10:23
**Gump (3)**
55:23;166:18;225:14
**guy (1)**
64:5
**guys (1)**
44:25

**H**

**hac (1)**
105:3
**half (9)**
82:19;122:2;129:6;
131:4;158:25;181:3,
15;191:19,20
**hamstrung (2)**
194:5,7
**hand (3)**
6:23;168:5;169:17

**handle (2)**
57:8,8
**hands (3)**
42:9;81:6;218:13
**handy (1)**
71:3
**hanging (1)**
186:13
**happen (14)**
69:6,17;73:3;77:6;
127:21;129:3,10;
138:13;140:18;150:22;
178:25;185:2;207:6;
213:20
**happened (6)**
74:12;92:17;123:7,7,
11;218:18
**happening (4)**
9:25;20:6;92:15;
185:12
**happens (10)**
121:21,25;124:4;
141:20;145:21;149:5;
195:1;205:3;218:19,23
**happily (1)**
184:6
**happy (20)**
15:8;22:3;25:5;
27:22;32:6,14,16;39:2;
45:2;52:1;106:10;
113:8;136:12;155:24;
156:16;159:20;166:7,
21;188:22;228:7
**hard (9)**
53:18;117:1,12;
119:23;144:25,25;
170:14;185:9;224:6
**harder (1)**
108:19
**Hardwoods (2)**
203:6,13
**Harris (46)**
104:7;105:3,9,10,13,
15,16,25;106:3,6,8,12,
15,16;121:5;144:2;
147:17;158:15,18,18;
159:2,4,9,11,15,20;
160:1;161:4,8,10,15;
163:10,13,15,17,24;
164:18,21;165:6,8,12,
24;166:7,9,20,23
**head (6)**
21:18;32:2;85:1;
139:18,19;222:10
**headed (1)**
24:13
**heads (1)**
37:23
**Health (2)**
48:15;192:9
**hear (28)**
29:3;35:7;20;39:13;
43:7;44:17;45:14;

52:20;54:2;56:19;
57:16;76:23;81:24;
83:20,22,25;87:1;89:1;
92:18;93:14;111:15;
116:7;121:11;143:3;
178:5;181:22;189:2,2
**heard (40)**
22:8;25:15;40:24;
45:7;50:6;51:15;53:7;
54:14,17,23;87:2,23;
89:6,21;91:10,22;
92:20,22;93:17;95:19,
25;96:2;102:13;105:5;
113:4,6,15;114:23;
121:2,5;129:14;
136:10;154:17;173:11;
182:20;209:12;215:10;
224:22;225:6;228:13
**hearing (47)**
23:13;24:5,10,12;
25:5;27:25;46:21,22;
55:1;61:7;69:19;73:4;
74:1;76:1;87:17,18,24;
107:10;119:12;122:3,
24;123:12;124:23;
125:23;129:22;130:6,
16;131:6;135:17,20;
136:17;137:1,13;
154:16,20;155:23;
165:14,15;177:12;
211:4;212:11;214:22;
215:21;216:6;217:8;
220:12;221:22
**hearings (8)**
23:21;32:25;51:15;
122:11;123:4;126:6;
133:4;180:17
**heart (2)**
94:21;222:1
**hedge (3)**
6:22;57:2;167:4
**heels (1)**
203:7
**help (9)**
25:10,12;35:10;
39:15;116:15;118:5;
136:15;208:22;223:21
**helped (1)**
47:23
**helpful (5)**
110:24;164:20;
169:19;223:23;227:16
**helping (1)**
120:12
**Here's (7)**
29:25;66:14;103:12;
115:9;138:23;151:14;
212:15
**herself (1)**
212:9
**hey (1)**
203:10
**hierarchy (1)**

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 243
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(12) fully - hierarchy

25:13
**high (8)**
69:23;135:12;138:6;
150:7;151:5,19;
179:25;208:21
**higher (2)**
135:3;214:6
**highest (2)**
142:20;143:5
**himself (1)**
28:5
**hinder (2)**
186:3,6
**hinders (2)**
185:23;186:11
**hip (1)**
226:11
**hit (1)**
21:18
**hmm (1)**
185:6
**Hobbesian (1)**
190:9
**hoc (24)**
39:3;55:23;57:9;
59:22;81:25;84:4;95:4,
5,17;126:2;127:5;
131:2,14;133:8,9;
135:5,11;159:21;
160:3,5;164:3;165:3;
166:19;225:15
**hocs (1)**
122:25
**hold (3)**
78:14;153:8;223:1
**holdco (1)**
160:7
**holder (1)**
107:23
**holders (23)**
66:16,21;95:4,11;
113:1,2;131:18;
133:23,24;134:2;
147:20;152:10;160:4;
181:2;182:7;183:10,
15;185:13;225:21;
226:9,22;227:3,18
**holding (3)**
153:9;183:18;212:3
**home (1)**
80:11
**homerun (1)**
179:23
**Honestly (2)**
162:12;163:25
**Honor (331)**
6:9,13;7:6;8:5,6;9:2;
11:9,25;12:5,17;13:24;
15:8,18,20;16:7,20,25;
17:18;18:2,5,10;20:21;
21:23;22:15;23:18,24;
24:8,20;25:5,11,19;
26:13,19;27:18,23;

28:1,12,22,24;29:17;
30:8;31:2,13;32:7;
33:18;34:8,25;35:9;
36:6,19;37:1,4;38:22;
39:8;42:13;43:12;
45:16;47:7,24;48:12;
50:7;52:10,16;53:5,17;
54:19,19,21;55:22,25;
56:13,18,23;57:5,14;
58:6,13;59:1,14,18;
60:2,21;61:16,24;62:3,
9,25;63:13,25;64:14,
18,23;65:15;66:6;67:6,
19;68:5;70:2;71:2,12;
72:2;73:11;76:6,13,19,
23;77:7;78:9,12,13;
79:3,11,20;81:1,2,3;
82:8,10;84:24;85:20;
86:5,17,18;87:10;89:8;
92:2;93:12,19;94:22;
95:2;98:22,25;99:7,7,8,
10;100:3;101:15,18;
102:17;103:2;104:1,6;
105:16,21;106:4,15,17;
107:7,9,9,25;110:2,2;
111:22;113:18,23;
114:7,21;115:11,12;
117:9;119:13;121:13,
20;122:9,10,22;123:3,
6,11,12,16,20,23;
124:5;125:14,17;
126:1,15,23;127:11;
129:7,17;130:4,5,11,
13,17,20,22;131:3,13,
16;133:3,3,8,22;134:5,
7,20;135:5,9,22;136:9,
13,14;137:10,21;
138:10,22;141:2;
142:7;143:3,12,15;
144:19,24;145:16;
146:20;147:3,11,13,15,
19,22;148:12,22;
157:20;158:13,18,22,
23;159:15,21,23;160:2,
10,16,21;161:11,15,20,
23;162:12,16,16,20,21;
163:18,20;164:4,21;
166:7,11;167:11;
168:9;169:11;171:8;
174:21,24;175:24;
176:3;177:16;178:7;
180:24;181:8,25;
182:2,11;183:8;188:6,
11,16;189:1,19;190:1,
5,25;191:7,15,16,21;
192:13,19,21;194:14;
196:1,15;197:20;
198:7;200:5,6,25;
203:24;204:2;205:4,
24;206:15;207:8;
208:8,11;209:12;
212:5;213:9,20;
215:13;216:11,13;

217:21;221:17;222:11,
24;223:4;224:5,12;
225:10,14,20;226:5,6,
21,24;227:9,20;228:4,
8,19;229:1,16;230:8
**Honorable (1)**
6:6
**Honor's (8)**
24:4;56:5;106:9;
108:2;110:14;138:1;
139:24;164:25
**hoops (2)**
37:17;219:10
**hope (8)**
29:11;30:7;52:25;
87:15;157:7;165:25;
222:18;229:22
**Hostetler (3)**
7:7;23:1;93:20
**hour (2)**
112:2;138:25
**hours (5)**
22:22;138:25;148:9;
158:25;208:10
**house (1)**
6:7
**housekeeping (1)**
228:15
**huge (3)**
60:15;85:25;126:4
**huger (1)**
60:20
**Huh (1)**
88:16
**hundred (4)**
95:10;167:15;180:7,
18
**hurdle (1)**
150:7
**hybrid (1)**
81:2
**hypothesize (1)**
165:2
**hypothetical (4)**
69:11;152:13,15;
153:3
**hypothetically (1)**
150:9
**hypotheticals (3)**
127:4;153:2;164:23

**I**

**idea (5)**
33:18;137:12,14;
140:4;148:15
**identification (2)**
74:13;76:8
**identified (2)**
165:19,22
**identifies (1)**
53:13
**identify (5)**

37:23;46:13;51:23;
159:5;164:19
**ignore (1)**
121:20
**ignored (3)**
125:21,22;226:18
**III (1)**
54:13
**illegal (2)**
203:20,22
**illuminate (1)**
184:13
**illustrate (1)**
109:5
**imagine (1)**
9:20
**immediate (1)**
81:9
**impact (2)**
188:7;225:19
**impacts (3)**
47:12;186:18;187:12
**impair (7)**
38:2,2;44:15;53:10;
118:10,11;119:5
**impair/not (3)**
44:15;53:10;119:5
**impaired (13)**
31:18,18;32:1;35:24;
36:21;37:19;38:18,18;
128:8;143:19,25;
180:11,13
**impaired/unimpaired (1)**
87:4
**impairment (4)**
31:21;39:5,21;44:21
**impairment/not (1)**
39:21
**impairs (2)**
203:16;211:6
**imperil (2)**
156:9;158:1
**implement (1)**
108:3
**implicated (2)**
109:17;199:14
**implicit (1)**
80:2
**implicitly (2)**
186:24;187:2
**implied (1)**
96:13
**imply (1)**
172:15
**importance (1)**
8:8
**important (14)**
6:25;24:8;25:3;29:5;
47:11;86:12;92:21;
93:12,22;103:21;
110:15;174:17;208:11;
222:17
**importantly (2)**

117:25;213:21
**imposed (2)**
189:10;199:23
**impossible (1)**
163:2
**impression (2)**
91:3;101:13
**improperly (1)**
143:11
**inappropriate (2)**
217:22;218:8
**incentive (2)**
68:20;69:8
**inclined (4)**
47:25;147:24;
173:12;221:18
**included (1)**
171:15
**includes (3)**
31:9;137:5;204:18
**including (5)**
22:25;48:5;62:11,12;
180:24
**incomprehensible (1)**
170:11
**inconsistencies (1)**
172:17
**inconsistency (1)**
170:9
**inconsistent (1)**
206:6
**incorporate (1)**
123:6
**incorporating (1)**
109:13
**incorrect (1)**
7:19
**incorrectly (1)**
26:7
**increase (1)**
134:8
**incredibly (1)**
75:22
**incumbent (1)**
90:23
**indenture (10)**
82:5;83:22;106:19;
108:21,22,22,23;
109:13;112:25;113:1
**indentured (4)**
108:21;112:24;
117:1,3
**indentures (3)**
109:13,14,16
**indicated (9)**
21:3;33:24;121:22;
129:22;130:16;133:16;
134:11;135:1;180:14
**indicator (1)**
181:1
**indirect (1)**
181:13
**indirectly (1)**

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 244
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(13) high - indirectly

225:23
**indiscernible (3)**
34:12;115:24;195:5
**individual (10)**
10:2;14:16,18;21:12,
16,17;48:6;74:13;
107:15;168:19
**individually (1)**
132:7
**inference (2)**
214:16,18
**infirmities (1)**
69:20
**influence (1)**
60:13
**influencers (1)**
157:4
**influential (1)**
156:21
**inform (1)**
12:4
**informally (1)**
53:10
**information (4)**
17:21;62:23;130:23,
25
**informed (1)**
209:10
**initial (2)**
87:17;216:14
**injuries (1)**
152:17
**injury (1)**
128:14
**inquiry (11)**
9:13;126:11,14,24;
128:7,9,10;129:11;
130:17,18;168:12
**insist (1)**
24:7
**insolvency (4)**
61:15;138:4,6;
216:15
**insolvent (5)**
61:20,20;151:23;
178:25;198:20
**instead (1)**
131:8
**institutions (4)**
135:2,4,8;166:24
**instructions (3)**
56:5;113:25;114:13
**insurance (18)**
40:3;47:22;152:18,
22;153:5;190:11,12;
192:6,8;198:21;200:2,
8;203:17;204:13;
205:1,6;212:16;215:2
**insured (10)**
40:4,4,5,7,7;193:13;
195:21;198:22;211:20;
212:7
**insured/insurer (1)**

200:13
**insureds (2)**
195:20;212:17
**insured's (1)**
200:8
**insurer (7)**
193:12,13;195:8;
212:7,9,9,12
**insurers (1)**
190:8
**intend (4)**
22:6;92:3;98:10;
125:23
**intended (2)**
175:11;188:24
**intent (2)**
51:16;52:7
**intention (2)**
101:3,11
**intentions (2)**
56:23,23
**interest (49)**
31:9,12,20;32:11;
38:1,16,24;41:1;56:2;
57:10,18;61:21;64:20;
65:23;67:7;82:2,4,18;
83:13;85:9,19;86:24;
90:24;95:14;96:12,13,
16,17;97:15,16,20;
99:14,19;100:11,17;
102:14;107:20;108:17;
110:10;111:11,18,19;
114:7,19;115:18;
124:5;135:12;138:16;
186:21
**interested (2)**
124:2;144:19
**interesting (1)**
185:6
**interests (7)**
14:8,10;93:4;112:5;
119:3;159:7;162:14
**internal (1)**
182:24
**interpreted (1)**
146:16
**interrogatories (1)**
9:24
**interrupt (1)**
124:18
**intervene (1)**
19:2
**into (36)**
25:16;31:11;33:2;
36:16;48:3;56:18;
91:20;96:24;101:25;
105:20;108:1;135:18;
136:21;139:18;142:6,
18;145:19;148:2,11;
161:21,24;164:1;
177:25;179:23;182:16;
191:9;192:1,2,3;
195:12;206:20;207:12;

209:14;211:8;218:12;
229:10
**intrigued (1)**
55:5
**intriguing (1)**
90:8
**introduced (1)**
103:8
**invalidity (1)**
165:22
**inverse (12)**
12:5;23:8,25;25:13,
21,21;26:13,19;30:10;
42:19;43:13;120:15
**invest (1)**
134:3
**investment (8)**
67:1,6;69:9;143:18,
20,24;160:7,8
**investments (2)**
143:17;162:6
**investor (2)**
25:22;160:19
**investors (2)**
134:2;135:6
**invitation (3)**
28:16;145:1,5
**invitation's (1)**
94:8
**invite (1)**
223:24
**involuntary (2)**
149:2;150:13
**involved (6)**
7:22;75:15;86:14;
91:9;107:10;205:9
**involvement (1)**
15:6
**involves (1)**
7:19
**IP (5)**
188:18;189:13;
193:8;194:17;196:15
**IPs (2)**
148:18;193:21
**irrelevant (1)**
145:20
**isolate (1)**
33:11
**issue (118)**
8:15;12:3,6;19:3;
22:6;23:11,16,25;25:1,
3,7;26:20;27:21,25;
31:21;32:5,19;38:24;
39:4,20;40:3,5,7;
41:15;44:14;46:3;
48:10,22,23;50:3,3,4;
53:7;54:14,17;56:1;
57:12,17;58:10,15,25;
59:3;60:6;61:22;67:5;
76:10,11;80:6;89:15;
91:6;92:4,4;93:10,12;
95:14,19;97:2;99:9,13;

100:4,7;102:14;
107:22;108:19,20,21;
109:12,12;110:1;
113:5,6;114:11;
115:17;118:6;120:25;
137:9;138:21;141:25;
142:3,6,10;143:2,7,7,8,
14;144:3;146:7;
147:14;158:16;159:21;
161:11;163:20;164:19;
167:21;168:11;172:11;
179:10;185:6,7;186:9;
200:24;203:5;204:1;
209:4;212:6,15;
214:19;223:4,17;
224:3;226:16,24;
228:8,15,24;229:6,19
**issues (114)**
7:20;8:16,25;10:12,
14,22,24;11:1,8,13,16;
12:18;13:5,5;24:11;
31:19;32:11,13;33:2,3,
8,9,12,24;34:6;35:8,11;
36:15;37:11,13,24;
38:3,15;39:11;44:12;
47:14;57:8,13,16;
60:13;64:16;70:12;
71:19;72:18;77:3;82:4,
6;85:1;86:12;89:24;
90:10;91:1,2,3,5,5,8;
92:4,16,23;93:5,9,11,
15,23,23;94:6,12,13;
98:16;99:12,13;
103:24;105:18;107:8,
22;110:15,16;111:18;
117:25;119:22;120:5,
10;121:6;125:11;
133:2;138:16;144:22;
157:3;159:5;163:19;
165:8,13;166:22;
169:19;170:4;172:4;
174:15;176:7,8,12;
190:5;200:22;201:2;
208:12,14;216:5;
218:10,11,12;224:1;
229:5,20,23
**item (2)**
32:22;119:10
**items (1)**
34:7

**J**

**Jackson (1)**
12:2
**Janet (1)**
229:17
**January (27)**
43:21;44:2,3,5;
73:17,18,21,23;74:17;
77:2;82:12;84:12;85:2,
8;87:6,6,7,12,17;88:7,
18,20,24;111:1;

112:13;116:12;119:7
**Jessica (1)**
18:6
**job (4)**
38:5;102:25;146:4;
219:20
**join (6)**
30:16;100:21,22;
112:6;181:11,11
**joinder (1)**
101:5
**joinders (2)**
29:21;30:12
**joining (1)**
30:5
**joint (4)**
61:25;108:3,8;229:2
**jointly (3)**
30:3;228:6,7
**Journal (1)**
214:25
**Judge (78)**
9:15,18,21;10:18;
11:2,5;12:1,2,4;14:20;
15:4;16:15,23;18:23;
19:3;23:11,12;24:5,13,
23,24;25:7;30:4;47:19;
54:9;59:7;60:10;62:4;
65:25;66:12;67:6;68:2;
69:4,13;70:6,12;71:17,
19,25;76:10,20;77:18;
79:19;81:3,6;89:5;
121:25;122:1;126:15,
17,25;128:10,24,24,25;
129:10;131:6,9,12,20;
133:10;135:3;149:9,
17;150:10;153:14;
157:2;158:10;164:11;
169:6;187:20;194:10;
208:20;209:2;212:17;
214:3,5;215:5
**judgement (2)**
10:3;196:5
**judges (1)**
11:17
**judging (1)**
56:25
**judgment (6)**
10:2;25:1;41:4,4;
139:20;162:24
**judicial (3)**
67:13,14;127:23
**juggle (1)**
47:14
**Julian (71)**
23:23;24:9;28:5,23,
24;29:1,8,11;30:13,15;
47:3,7;93:13;158:10;
193:13;200:5,17,20,25;
201:4,6,23,25;202:18,
20;203:2;204:1,10,14,
16,24;205:1,11,13,18,
21,24;206:7,9;207:1,8;

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(14) indiscernible - Julian

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 245
of 261

208:5,7,24;209:1,4,17,
20;210:1,4,15,17,19,
21,23,25;211:2,25;
212:3,24;213:3,6,9,24;
214:5,7,10,12,15,21;
215:20
**Julian's (4)**
23:10;28:8,14;154:9
**jump (1)**
37:17
**jumping (1)**
218:12
**June (2)**
131:24;216:24
**jurisdiction (3)**
59:21;76:4;168:25
**Justice (2)**
50:9;182:1

**K**

**Karotkin (184)**
6:12,13,14;22:12,13,
14,19;23:14,15;31:6,7,
13,19;32:6,10,16,19;
33:13,17,20,22;34:2,5,
11,13,15,18,25;35:3,5,
6,9,15,18,23,25;36:2,5,
9,11,14,24;37:1,4,9,15;
38:6,8,10,12,14,20,22;
39:2,14,22,24;40:2,4,7,
9,11,13,16,18;41:6,11,
16,19,21,23,25;42:3,
13,16;43:5,8,12,16,18;
44:2,11,16,20;45:2,5;
55:6;59:3;68:1;72:12;
81:20;82:17;86:5,8;
87:1;88:24;90:17;
108:5;115:11;116:5,6,
13,14,21;117:15,18,22;
118:5,21,23;119:24;
120:12,14,18,20,22;
121:9,13,14;124:1,24;
125:1,4,6,14,17,20,25;
126:12,14,19,20,22;
127:2,8,11,13,15,20;
128:2,9,18,20,24;
129:2,7,17,19,21;
130:1,9;131:24;
132:15;133:1,13,15;
135:21,24;136:9,16;
140:4;143:1;146:18;
158:24;171:2,7,19,21,
25;172:3,6,9,23,25;
173:3,7,13,20,23;
174:1,14;177:12;
196:7;214:6
**Karotkin's (6)**
69:15;70:20;90:16;
99:9;110:22;167:22
**Katzman (1)**
104:7
**keep (22)**

7:1;27:15;35:7;56:4;
57:1;87:4;89:2;91:18;
95:1;100:6;106:1;
117:12;119:23;120:12;
121:4;156:6;157:12;
166:12;169:15;178:11;
221:16;222:7
**keeping (2)**
100:14;146:17
**Kevin (1)**
23:18
**kill (1)**
173:11
**Kimberly (1)**
7:6
**kind (18)**
7:17;15:13;17:14;
81:2;84:10;104:11;
106:24;108:8;109:5,
17;124:20;137:12;
139:20;144:22;164:7;
170:2;181:12;189:16
**kinds (2)**
109:6;124:22
**knew (1)**
222:1
**knowing (2)**
132:13;214:24
**knows (5)**
76:13;118:13;
143:15;160:2;173:2
**Kornberg (2)**
132:16,21

**L**

**label (2)**
59:15;143:13
**labels (1)**
57:1
**lack (2)**
23:6;110:4
**laid (2)**
48:14;90:17
**land (1)**
29:18
**landscape (1)**
56:7
**language (2)**
109:13;201:24
**large (5)**
61:3,4;90:20;152:11;
157:25
**largely (3)**
33:25;34:8,20
**last (21)**
6:19;7:21;13:13;
22:22;24:14;39:9;
45:11;99:5;107:10;
135:21;143:22;148:8;
155:23;158:15;169:15,
24;198:7;200:6;212:4,
11;229:13

**late (2)**
22:23;172:14
**later (18)**
32:21;65:19;70:13,
15;71:18,22;73:19,19;
84:12,19;94:7;157:15;
189:2;195:9;200:20;
221:7;224:11,24
**latest (1)**
70:20
**latter (2)**
67:13;228:11
**Lavan (1)**
115:15
**law (22)**
78:25;80:16;96:19,
20;97:24;109:15,16,16,
16;121:20;128:15;
145:11,14;178:22;
186:7;197:16;207:4;
208:9,16;212:15,18;
214:4
**lawyers (15)**
11:20;12:21;13:3,4;
14:18,19,20;15:1;
36:23;49:13;59:11;
67:11;102:13;194:17;
223:22
**lay (1)**
144:21
**layers (1)**
58:21
**lays (1)**
118:8
**lead (1)**
79:24
**leads (1)**
138:18
**least (12)**
34:7;82:12,14;86:25;
90:22;107:22;108:8;
111:16;159:12;165:21;
169:22;187:17
**leave (8)**
38:22;39:10;62:21;
64:12;157:16;166:5;
200:15;228:14
**leaves (2)**
118:17;215:23
**leaving (4)**
84:3;125:10;179:13;
195:24
**LeBlanc (11)**
15:18,18;16:5,7,20,
25;17:10,13,17;18:2,11
**led (1)**
74:23
**left (3)**
120:25;162:14;172:9
**legal (23)**
12:3,18;64:21,24;
65:3,7;69:20;72:18;
86:10;99:13,13,20;

100:4,7,14;102:11;
107:22;157:3;161:6;
166:1;197:12;207:10;
217:1
**legally (1)**
186:7
**legislature (1)**
208:23
**legitimate (1)**
175:10
**legs (1)**
164:4
**lend (1)**
166:1
**length (4)**
29:22;137:8,14;
140:22
**less (12)**
21:9;57:12;62:19;
66:1;75:15,18;128:21,
22;197:8;206:13;
208:18,20
**letter (26)**
23:2,2,9,10;28:8,14;
31:7,10;33:24;90:15,
16;99:8,9;137:2;142:8;
145:8;171:11;175:15;
177:10;179:3,4;183:3,
25;193:2;200:12;228:4
**letters (7)**
134:18;148:9;
160:22;163:25;169:23;
170:9;172:21
**letting (2)**
36:22;123:22
**levels (1)**
134:4
**liability (5)**
8:12;9:4,14;12:3;
134:15
**liable (7)**
10:23;177:7;204:13,
21;205:1,16,20
**life (1)**
187:21
**lifting (2)**
219:24;220:1
**light (4)**
163:2,3,20;164:6
**likelihood (2)**
56:24;80:21
**likely (5)**
25:7;149:11;161:17;
221:3;222:8
**likewise (1)**
115:20
**limit (2)**
29:7;205:13
**limited (1)**
85:21
**limits (5)**
84:6;107:13;118:18;
120:10;200:7

**line (14)**
26:25;30:15;52:11;
65:10;71:18;77:1;80:4,
7;92:24;94:17;102:12;
121:8;132:13;196:12
**linear (1)**
165:20
**lines (2)**
6:20;20:2
**lining (1)**
42:7
**LIOU (20)**
18:5,6,7,8,17,21,24;
19:1,6,11,13,16,22;
20:1,6,10,13,20;21:18,
23
**liquidate (2)**
194:9,10
**liquidated (5)**
51:17;191:8;209:12,
13,23
**liquidation (3)**
168:1;191:9;192:3
**list (3)**
49:6;165:17;189:22
**listen (8)**
40:25;77:3;81:5;
121:3;135:13;136:12;
189:3;221:15
**listening (2)**
52:11;208:10
**literally (1)**
153:15
**litigate (2)**
64:16,17
**litigated (3)**
10:25;64:21;137:2
**litigates (5)**
64:18;196:3,4,6;
202:22
**litigating (2)**
11:1;190:9
**litigation (11)**
7:19;8:7;11:22;17:8;
20:3;21:21;57:9;73:20;
149:8;193:14;198:10
**little (28)**
6:19,21;7:1;17:1,15;
22:5;47:19;67:7,24;
72:11;76:14;79:23;
82:9;86:19;87:10;
91:20;101:19;108:9;
116:18;119:8;143:7;
147:6;149:21;174:18;
181:17;187:25;206:6;
208:22
**live (1)**
123:18
**LLP (2)**
89:10;216:12
**loan (2)**
66:19;115:16;205:9
**local (1)**

210:5
locked (2)
194:6,8
locks (3)
192:1,2,3
Loduca (1)
229:17
logical (1)
214:15
long (17)
52:8;67:2;100:6;
114:18,20;137:10;
138:24;144:7;169:25;
170:17;206:18,18;
207:22;218:1;224:6;
230:5,5
longer (2)
167:25;184:1
look (30)
23:12;25:18;49:9,12;
56:16;64:14;70:22;
71:12;78:19;79:3,22;
97:12;109:4,5;112:15,
15;115:9;120:2;
138:20;140:8;145:18;
174:12;176:13;182:23;
185:9;202:20,20;
215:1;222:10;229:24
looked (6)
64:6;68:17;118:18;
141:4;185:5;206:10
looking (16)
12:19,21;13:4;14:9;
28:2;35:20;41:17,18;
70:14,17;118:11;
142:22;162:13;167:4;
200:12;201:11
looks (2)
152:24;214:12
lose (2)
68:20;167:6
loss (6)
142:14;205:2,3,4,5,
18
losses (2)
139:10;205:4
lost (1)
137:11
lot (18)
7:12;22:24;23:25;
28:3;39:16;44:25,25;
65:11;68:19;91:7;
115:5;124:19;139:7,
20;169:14;178:6;
182:24;223:3
lots (1)
170:20
love (1)
227:2
Lowenschuss (10)
186:21,22;190:20;
201:9;202:14;203:4,
10,23;208:15;222:1

lower (1)
129:10
lowest (1)
142:21
luck (2)
77:14;144:9
lumped (3)
207:4,9,17

**M**

made-whole (3)
40:11,12;212:18
magically (1)
10:20
magnitude (3)
110:1;126:4;130:25
main (2)
93:7;121:12
maintain (1)
143:20
maintaining (1)
138:2
major (3)
120:9;144:3;187:22
majority (3)
12:2;57:15;151:6
make- (4)
32:11;39:18;53:9;
56:2
makes (14)
10:4;17:15;27:12,18;
45:5;109:22;132:1;
151:23;175:23;185:17;
197:10;216:1,2;218:3
make-whole (25)
22:19;31:12,20;
36:17;38:2,16,24;
39:18;40:12,16;43:20;
44:15,22;45:3;56:14;
57:11;64:17;65:23;
67:8;82:13;85:12;87:3;
91:6;99:17;213:7
making (11)
6:21;14:9;17:24;
72:17;81:3;109:19;
142:14;167:7,9;
174:10;190:24
man (1)
70:1
manage (1)
93:2
managed (2)
89:3;145:22
Management (2)
104:9;158:21
mandated (1)
162:5
Manges (4)
6:14;18:8;22:14;
121:14
manner (2)
12:13;75:4

many (19)
30:3;53:11;65:12;
89:23;116:19;122:7;
136:8;139:24;146:4,6;
148:23,23;150:13;
174:10;209:12;216:4,
5;222:7;223:22
map (1)
170:15
March (1)
71:22
margin (1)
64:12
mark (1)
102:23
market (4)
68:10;134:13;162:4;
163:3
markets (3)
133:18;162:2;163:5
MARSHACK (7)
215:13,15,16,19,19;
216:9;224:2
mass (1)
202:21
Master (1)
104:12
match (1)
44:14
material (2)
25:3;188:7
materially (3)
27:5;163:6;186:18
matrix (5)
194:18,24;196:16;
202:22;203:2
matter (15)
6:11,15;26:20;28:6;
48:1;80:8;89:23;94:17;
128:15;136:21;142:23;
144:13;197:14;206:20;
217:1
matters (5)
86:1;102:14;105:22;
106:9;229:12
Matthew (3)
50:7;147:19;181:25
max (1)
30:12
maximization (2)
21:12;142:24
maximize (3)
56:24;80:21;162:24
maximum (1)
53:25
may (49)
21:9,13;32:1;38:8;
54:22;62:23;69:6,20;
71:2;73:1,1;88:2;91:2;
92:15;99:8,22;100:8,9,
15,25;101:2,4,9;
111:18;114:11;125:10;
148:16;149:19;153:3;

158:1;163:17,19;
171:7;173:10;180:1,
18,19;188:6;192:7;
198:8,9;199:6,9;
212:16;213:23;216:24;
223:14;229:9,10
Maybe (27)
9:11;23:3,4;32:3;
38:2;41:9;51:11;58:25;
66:4,5;69:22;97:7;
108:4;113:8;118:7,7;
137:1,2,17;144:7;
157:3;172:18,18;
174:8;183:25;203:9;
210:13
mean (122)
8:3;13:9;14:4;15:15;
17:7,11;18:20,21,22;
20:21,23;22:20;25:15,
24;28:5,7,15;30:20;
43:3,13,24;44:23,23;
47:10;53:9;54:15;
58:16;60:3,4,15,20,22;
65:9;68:3,23;72:23;
82:19;85:25;86:8,10;
87:24;89:2;91:18;
94:15;95:20;97:23,25;
102:18;104:21;105:24;
111:24;112:9,15,22;
117:16;118:16;123:25;
127:9;132:23;134:20;
136:11,23;138:19;
144:23;146:22;147:18;
148:5,8;150:21,23;
152:1,3;154:2,16,17;
156:4,22;158:5;
164:10,10;165:25;
172:14,15;173:10,13,
24;175:22;176:3,24;
178:11,20;182:18;
186:22,24,24;187:2,2,
10;188:3;189:5,23;
191:12,17,25;192:1;
198:3,12,19,19;199:11,
16;200:19,21,23,24;
207:24;214:5;218:20;
221:25;223:1;224:4;
225:3
meaning (4)
16:1;150:2,22;202:5
meaningful (2)
15:24;155:10
means (3)
18:19;38:13;80:11
meant (1)
112:20
mediate (1)
123:19
mediated (1)
60:11
mediation (13)
62:4;123:14,14;
125:15,22;215:25;

216:1,7,8;224:3;226:7,
10,10
mediator (1)
123:16
meet (8)
49:12;102:22;132:3,
19;133:19;136:3;
153:13;193:21
meet-and-confer (2)
56:17;228:23
meeting (1)
132:17
member (1)
21:16
members (5)
21:10,13;61:5;160:5;
170:21
memorialize (1)
55:16
memorialized (1)
175:17
mention (2)
52:10;145:22
mentioned (6)
8:3;38:15;91:1;
122:22;139:5;146:1
meritorious (1)
224:9
merits (7)
26:10,11;167:16,18;
225:9,11,13
met (1)
160:16
metaphor (1)
58:8
microphone (2)
53:20;54:16
might (25)
26:11;67:14;69:17;
73:9;97:24;126:9;
138:13;142:7;143:25;
146:23,25;147:23;
148:10;166:3;180:2,4;
185:6;186:3,6;189:11;
197:18;212:22;221:8,
10;222:15
migrate (1)
215:24
Mike (2)
55:23;166:16
Milbank (3)
15:18;89:10;216:12
million (7)
49:19;57:24;68:3;
69:16;95:10;115:17;
160:9
MILLMAN (4)
115:12,14,14;116:4
mind (14)
27:16;34:24;53:18;
58:17,17;80:2;109:25;
125:4;129:10;136:7;
200:18;203:4,20;

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 247
of 261

212:15
**minds (2)**
34:21;94:22
**Mine (1)**
113:22
**mine's (1)**
80:5
**minimize (3)**
56:23;80:21;100:8
**minimum (1)**
126:7
**Minnick (8)**
113:17,18,19;114:7,
9,11,18,20
**minute (14)**
28:4;35:21;47:2;
67:10;72:7,7,9,21;
78:15;85:15;98:20;
119:2;218:18;220:8
**minutes (8)**
7:10,11;42:20;57:17;
116:19;117:23;121:17;
166:16
**misconception (1)**
133:21
**misread (1)**
203:13
**missed (1)**
144:23
**missing (6)**
35:22;39:17;72:23;
102:22;103:19;212:4
**misspoke (1)**
54:22;129:12
**mistake (1)**
133:21
**misunderstandings (1)**
137:19
**mitigate (1)**
103:12
**mitigation (1)**
102:7
**mixed (1)**
87:5
**Mizuho (1)**
115:16
**modified (5)**
92:24;122:16;
175:17,25;193:1
**moment (13)**
39:1;69:15;81:7;
101:13;102:11,15;
127:5;134:21;156:20;
157:11;163:12;184:3;
189:24
**Momentive (1)**
109:5
**moments (1)**
159:3
**Monday (4)**
22:23;56:17;172:14;
222:25
**money (28)**

57:23;66:13,16,23;
67:5;69:7;72:2;127:25;
134:17;135:1,6;
142:19;162:11;167:11;
191:9;193:23;194:13;
200:2,14,14;202:22;
203:18;209:6,8;211:2;
212:16;214:18;215:6
**money-grab (1)**
153:15
**monitor (2)**
19:9;20:6
**monitoring (6)**
18:12,17,19,19;
19:14;94:4
**Montali (3)**
6:6;169:8;215:5
**month (4)**
64:11;73:17;84:20;
109:3
**months (4)**
51:16;73:5;152:5;
217:8
**Moore (2)**
23:19;45:19
**moot (1)**
163:19
**mooting (1)**
59:7
**more (70)**
7:2;10:11;15:6;
20:15;21:9;28:4;29:5;
33:1;34:15;36:16,17,
18;39:2,16;48:3;53:10;
63:6;64:9;66:13;82:9;
87:18;88:7;90:5;92:15;
108:4,9,16;110:20;
113:22;117:9,13,25;
118:12;121:2;126:17;
134:2,12,16;135:16;
136:6;137:23,23;
139:8,9;140:19;
144:17;145:19;153:13;
155:17;165:15;166:3;
167:10,15;170:25;
180:2,6,7;181:2,14;
188:23;190:14;198:2,
16;208:20;213:20,22;
216:1,2;217:13;223:24
**morning (35)**
6:7,8,9,13;7:5,6,9;
18:4,5;23:18;45:16;
46:23;48:12;52:16;
55:22;89:8;94:21;95:2;
98:24,25;101:17,17;
103:24,25;104:6,17;
105:9,18;113:17,18;
133:6;138:24;163:4;
165:13;230:5
**morning's (1)**
158:23
**MORRIS (36)**
7:6,7,9,10,13,15,23;

8:5,10,14,18,21;9:2,7,
10,14,19;10:1,6,8,13,
16,19,24;11:8,25;
12:17;13:7,20,22;14:3,
7;15:8,11;21:25;22:3
**most (12)**
15:15;22:22;27:18;
58:6,7;110:13;149:11;
157:25;168:23;171:13;
174:17;206:22
**motion (35)**
6:16;7:4,18;8:4;
10:10;11:7;16:22;19:2,
8,9,20;29:3;31:23,24,
24;47:4;118:1;121:12;
145:15;153:1;154:3;
158:17;166:12,15;
169:10,14;170:18;
173:18,19;177:6;
195:24;214:20;216:1,
2;222:17
**motions (3)**
8:15;25:1;176:25
**move (34)**
36:18;37:10;44:12;
65:12;70:9,10;84:22;
85:2;86:3;87:11,12,15;
88:24;108:1;110:23,
23,24;122:4,13,17;
123:1,17;124:2,3;
125:18;130:2,10;
132:18;135:17;136:5;
166:22;169:10;196:12;
204:4
**moved (3)**
73:16;86:5;116:11
**moving (10)**
24:4;53:11;84:17;
102:21;103:18;112:3,
7;116:10;125:8;214:24
**much (30)**
20:15;25:1;29:15;
34:7;49:22;57:19;
65:10;75:15,16,18;
76:11;89:16;116:2;
128:3;129:14;139:2;
157:23;166:9;170:17,
25;172:15;174:18;
181:15;209:6,8;211:9;
214:25;216:1,2;230:7
**multiple (12)**
93:10,10;104:22;
105:17;116:24;117:7,
9;118:24,24;144:1;
145:24;146:3
**mundane (1)**
113:22
**municipal (1)**
137:6
**must (4)**
29:2;177:5;187:17;
212:7
**mutual (3)**

199:1,8,16
**mystified (1)**
211:23

**N**

**nail (1)**
21:18
**name (9)**
6:22,25;95:1;99:3,5;
101:18;105:12;168:15;
215:17
**namely (1)**
212:7
**names (1)**
121:4
**narrow (1)**
169:19
**narrower (1)**
76:11
**nation (1)**
204:10
**National (1)**
113:20
**natural (1)**
164:10
**nature (5)**
104:18;124:8,10;
180:5;190:21
**natures (1)**
104:22
**near (3)**
27:13;95:10;125:23
**nearby (1)**
189:23
**nearly (1)**
191:20
**necessarily (2)**
103:21;177:5
**necessary (9)**
14:22;32:17;57:4;
65:20;80:21;86:9;
126:8;135:9;145:20
**need (50)**
14:7;43:3;47:8,23;
50:18;52:19,25;59:22;
65:25;71:22,24;72:1;
75:19;76:9;79:20;
82:14,14;83:20;85:2;
87:14;88:9;89:1;92:15;
99:25;100:9;101:2;
106:9;108:4;110:16;
112:17;114:11;115:25;
117:7,8;127:6,23;
139:5;147:13,23;
148:1;153:24;166:23;
168:4,16,20;170:15;
171:4;173:18;194:25;
208:2
**needle (3)**
71:24;187:3,6
**needs (6)**
71:25;88:25;148:10;

173:1;176:2;209:5
**negatively (1)**
14:5
**negotiate (6)**
160:14;184:5;227:2,
8;228:1,3
**negotiated (3)**
140:22;183:15;
184:25
**negotiates (2)**
183:16;197:8
**negotiation (1)**
196:16
**negotiations (7)**
92:19;185:24;
186:11;189:10;194:5,
7;228:5
**neither (3)**
156:25,25;199:13
**new (12)**
47:25;81:24;106:19;
109:15;124:20;134:6;
143:17,18;160:7,7,8;
167:11
**newly (1)**
95:3
**news (1)**
76:6
**next (16)**
13:13;22:16;32:22;
39:6;52:5;58:16;71:6;
98:23;154:16;156:15,
15;168:6;189:24;
204:1;221:22;222:24
**nice (1)**
199:16
**nickel (1)**
11:19
**night (1)**
177:12
**nineteenth (1)**
54:11
**ninety- (1)**
181:15
**ninety-six (2)**
181:3,14
**Ninth (18)**
51:25;91:7;96:24;
97:3,4,12;177:22;
197:15;201:10,16,19;
203:5,8,11,15,16;
211:19;213:14
**nobody (3)**
30:5;134:15;145:22
**nobody's (1)**
147:14
**none (3)**
7:22;102:9;194:2
**nonparties (2)**
186:18;187:12
**nonsettling (1)**
62:1
**nonsubros (1)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Case: 19-30088   Doc# 4467   Filed: 10/24/19   Entered: 10/24/19 14:35:11   Page 248
of 261

**(17) minds - nonsubros**

62:1
**nonvoluntary (1)**
190:21
**non-wildfire (1)**
90:22
**nonworking (2)**
229:6,19
**nor (1)**
125:22
**normal (4)**
17:14;125:12,13,14
**normally (3)**
11:12;124:24;198:24
**North (2)**
26:3;82:7
**Norton (1)**
48:13
**note (3)**
89:16;100:10;
116:24;134:5;229:8
**noted (9)**
116:3;118:16;
121:20;122:19;123:3;
129:21;133:3;135:11;
136:2
**noteholder (3)**
95:17;166:19;225:15
**notes (7)**
106:19;108:20,24;
109:15,19;113:5,5
**notice (2)**
48:8;92:16
**noticed (2)**
6:18;7:11
**noticing (1)**
48:5
**notify (1)**
49:14
**notwithstanding (2)**
121:24,25
**novel (2)**
20:24;91:6
**November (43)**
23:22,22;28:6,19;
30:13,19,20;42:6,9,10;
43:20;46:18,19;49:6,
19,21;53:12,21,24;
54:23,24;84:14,14;
85:18,18;87:6,9;
110:18,25;114:16;
115:19;119:4,4,6,10;
221:23;222:13,16;
223:14,25;225:1,12;
227:17
**number (52)**
33:5;43:25;56:15;
60:10,12,15,20,25;
61:2,11,25;62:18;63:4,
5,24;66:3,15,15;67:14;
68:2;75:14;79:6,8,8,9;
80:17;86:14;90:19;
91:9;94:24;113:23;
119:10;121:18;129:11;

133:10;135:3,7;137:5;
139:11;140:1;150:17;
151:22;168:2,3;171:5;
176:16;179:25;180:24;
184:6;185:25;214:6;
217:10
**number-one (1)**
81:5
**numbers (7)**
62:24;69:23;129:4;
139:12,13;152:10;
180:21
**number's (2)**
60:13;63:1

## O

**object (5)**
15:6;103:5;127:21;
138:12;220:21
**objected (1)**
170:4
**objecting (1)**
209:17
**objection (16)**
13:21;46:20;119:14;
129:13;141:15;158:8;
166:3;170:13;172:17;
182:5;189:7,23;201:7;
221:19;226:25;227:21
**objections (13)**
95:15,16;170:5;
171:4,13,14,22;174:4;
177:7;182:4;200:18;
222:4;223:24
**objectors (3)**
175:9;178:12;215:9
**obligated (3)**
201:20;203:22;
213:15
**obligation (3)**
108:7;131:16;221:2
**obliged (3)**
217:18;220:23,24
**observation (1)**
149:1
**observe (3)**
16:1;17:21;20:8
**obtainable (1)**
143:6
**obtained (1)**
133:25
**obvious (8)**
8:19,20,22;33:4;
69:11;130:14,18;
142:18
**obviously (13)**
18:14;80:1;90:6;
95:21;113:5;124:19;
147:22;163:18;175:5;
182:21;191:25;197:14;
224:16
**OCC (6)**

15:13,16;30:2;41:9,
10,11
**occur (5)**
73:21;102:7;165:8,
16;223:7
**occurring (1)**
16:2
**occurs (1)**
219:22
**o'clock (1)**
30:18
**OCTOBER (10)**
6:1;23:2,9,21;33:25;
46:9;86:15;122:12;
129:22;130:6
**odd (1)**
17:3
**off (18)**
24:18;26:17;37:6,7;
45:8;59:6;67:24;92:18;
94:12;101:4;120:9;
193:25;196:12;198:21;
202:1;211:3;226:3,6
**offensive (1)**
167:5
**offer (4)**
125:9;162:10;
221:21;227:10
**offered (2)**
52:23;216:20
**offering (1)**
124:7;134:1
**office (3)**
52:17;181:18;229:8
**official (5)**
7:7;15:19;82:5;
83:25;93:21
**often (2)**
139:5;188:5
**of-the-pen (1)**
66:10
**omnibus (1)**
46:22
**once (4)**
49:11;80:9;133:6;
146:19
**one (163)**
6:23;7:14;8:16;9:8;
11:4;12:7,9;14:11,13;
17:15;18:10;22:25,25;
23:3;24:8,9;28:17;
29:4,5,7;30:3,7,9,10;
32:24;39:15;41:20;
42:6,22;43:14,14;
44:24;45:1,11;48:21,
22,22;50:12,13;53:8;
54:8;58:24,25;65:2,15;
66:14,15;67:11,13;
68:16;70:1,22;74:5;
80:3,15;81:23;82:21;
84:5,7,9;88:23;97:11,
24;100:16;103:4,5;
104:17;105:17;107:14,

20;108:23;110:7;
113:12;115:4;116:25;
118:7,16;119:13,16;
120:9,17,21;121:3,4,
18;123:22;125:17;
126:22;127:3,4;
130:20;132:6;135:21;
136:6,24;137:10;
138:22,23;139:24;
140:1,4,19;142:17,25;
144:2,17;146:14;
147:14;148:11,15;
149:1;156:25,25;
161:14;165:2;168:2,5;
169:3,7,8,17;170:19,
24;172:19,22;173:17;
174:9;176:16,25;
180:11,16;182:4;
185:3;187:25;188:2,5,
12,13,14;189:24;
192:17,23;193:15;
198:7;200:4,11;
201:17;202:10,12;
204:10;205:22;209:6;
215:13,13,20;222:6,9;
223:4,20;224:22;
225:16;227:19;228:15
**one-on-one (1)**
196:13
**ones (8)**
49:14;77:14;90:1;
106:8;144:24,25;
201:4;224:9
**one's (5)**
13:13;53:11;134:14;
205:7,7
**one-tenth (1)**
11:12
**one-way (1)**
190:7
**online (1)**
170:22
**only (51)**
12:10,10;13:23;
17:17;34:11;38:15;
45:1;47:5;48:2;56:11;
57:15;62:17;72:2;83:8;
85:2;87:16;102:8,10;
109:12;112:5;113:7;
115:18;118:23;123:13,
14;141:25;145:13,23;
149:1,5;153:16;
162:17;165:3;167:21;
172:15;183:13;185:16;
186:17;190:11,20,25;
192:2;204:10;212:2;
213:18;217:13,15;
219:22;222:6;224:1,12
**oOo- (1)**
6:3
**open (9)**
27:15;81:1;107:11;
125:11;163:5;166:22;

171:1;198:10;229:23
**opening (18)**
6:17;7:14;10:21;
11:6;23:21;28:9,9;
41:1,2;82:23;87:8;
110:18;112:7;114:15;
119:3,6;169:13;199:5
**operating (1)**
84:25
**operative (6)**
177:13,17;184:1,3;
195:3,4
**opinion (2)**
79:25;157:7
**opponents (4)**
6:22;27:5;75:5;
180:11
**opportunities (1)**
160:25
**opportunity (19)**
24:10;27:25;52:12;
53:2;56:9;80:12;98:10;
114:1;116:22;130:24;
143:20,24,25;160:6;
162:1,3,11;192:20;
221:19
**oppose (3)**
217:19;220:24;221:2
**opposed (5)**
16:5;18:11;19:14;
90:9;219:24
**opposing (1)**
221:25
**opposition (4)**
16:4;28:13;32:1;
119:10
**opposition's (1)**
32:2
**opt-in (1)**
193:2
**optional (5)**
57:11;108:19;
109:21;110:9,12
**oral (5)**
42:11;43:10;116:17;
119:4,6
**order (33)**
6:4;9:21;10:3;22:15;
47:4;53:8,8,12;118:8,
17;127:15;132:2;
134:3;145:3,4;147:23;
160:20;162:7,24;
169:25;170:10;172:21;
174:15,17;182:5;
190:8;195:23;199:17,
20,20;202:22;203:18;
229:15
**orders (2)**
22:7;226:7
**original (4)**
23:20;87:11;99:9;
111:17
**originally (9)**

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 249
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(18) nonvoluntary - originally

42:16,18,18;43:5;
111:7,9,16;172:17;
180:17
**Orsini (36)**
12:22;23:15,18,18,
24;24:3,20,24;25:11,
14,18,25;26:3,6,10,12,
16,18,24;27:2,7,9,17,
20;28:8,12,21;29:13,
17,24;30:7,19,21;31:2,
5;196:7
**Orsini's (1)**
15:4
**others (14)**
44:18;92:13;96:2;
98:11;101:1;103:4;
134:23;135:17;158:24;
159:6,13;169:18;
171:15;215:10
**otherwise (3)**
12:16;30:2;59:21
**ought (4)**
79:5;176:14;178:7;
214:21
**ours (2)**
45:22;141:20
**ourselves (1)**
151:25
**out (86)**
8:1;15:5;22:21;
24:23;27:13;28:19;
33:1;34:18;38:5;47:3;
48:14;56:9;57:1;63:5,
21;65:18;66:25;69:7,
23;73:3;76:25;81:6,6,
82:22;84:17;90:17;
92:16;101:8;110:12,
15;116:16;117:20;
118:8;124:21;127:9;
128:6;137:3;140:5;
141:24;143:10,15;
144:9,21,24;145:3,4,
10;146:4;148:16;
151:2;152:17;157:15;
161:6;162:1,8,13;
165:20;169:22;170:14,
16;172:17;173:17;
175:10;177:10;178:25;
183:21,23;186:13;
187:9;191:4,5;192:5;
193:24;195:14;198:1,
5;202:22;203:19;
207:20;208:15;211:3;
214:3,16;215:6;216:5;
219:1
**outcome (6)**
9:17;21:9;56:24;
160:24;213:1,3
**outcomes (2)**
149:8,9
**outline (2)**
172:19,19
**outlined (2)**

92:24;193:8
**outs (1)**
141:7
**outset (1)**
122:22
**outside (5)**
19:19;21:11;138:20;
197:15;199:1
**outstanding (1)**
174:4
**over (16)**
15:11;57:9;61:17;
73:20;111:14;115:5;
133:10;142:11;152:14;
158:8;168:25;170:21;
186:12;195:24;209:6;
221:22
**overall (2)**
183:14;207:21
**overlapping (1)**
11:8
**overlaps (1)**
23:6
**overpaid (2)**
198:14,21
**overpay (3)**
73:9;77:10;168:22
**overpaying (1)**
75:6
**overpayment (2)**
142:4,15
**overpays (2)**
60:1;142:11
**overrule (2)**
13:21;222:4
**overruled (1)**
177:8
**oversized (1)**
29:16
**oversubscribed (1)**
134:10
**own (15)**
28:2;30:6;88:1;
98:10,13;99:21;
106:10;119:22;123:2;
131:21;153:12;171:6;
178:13;180:19;211:12

**P**

**page (10)**
7:17;29:6;32:15;
52:6;71:6;84:6;107:13;
118:18;120:10;148:10
**pages (18)**
29:15,18;30:14,17;
43:15;45:20,21;52:21,
23,24;53:1,3,25;
109:11;117:10,13;
169:25;172:14
**paid (17)**
13:13;128:3;129:15;
130:21;139:8;150:15;

167:10,15;179:2;
180:2;190:19;191:8;
194:12,23;200:2;
207:15;218:2
**papers (10)**
7:16;15:5,9;19:13;
21:3,24;47:6;110:7;
130:8;154:6
**paperwork (1)**
136:22
**paragraph (1)**
225:22
**parallel (1)**
155:8
**paraphrase (3)**
140:24,25;213:25
**paraphrased (2)**
145:25;146:2
**pardon (2)**
54:15;173:23
**parent (1)**
7:25;113:21
**pari (1)**
204:4
**parochial (1)**
100:12
**parsing (1)**
182:25
**part (23)**
29:11;39:20;60:6;
76:3;82:11;93:8;102:5;
161:10,15;166:2;
175:13;178:4;183:14;
189:10;191:19;193:7,
9;195:3,18;204:4;
217:8;224:13;226:19
**participants (1)**
81:25
**participate (20)**
11:18;13:1;14:14,22;
15:24;16:10,24;17:4,8;
18:14;19:10;20:3,7,8;
90:21;91:10;160:7;
167:6;224:21;228:5
**participated (1)**
48:8
**participating (1)**
225:23
**participation (2)**
16:1;18:21
**particular (7)**
26:25;91:7;144:1;
160:17;162:4,13;
174:15
**particularly (3)**
48:6;142:4;163:3
**parties (43)**
33:22;35:16;42:17;
57:17;76:7;87:1;90:20,
25;93:2,3,11;94:5;
99:22;101:20;103:11;
107:21;108:8;110:8,
21;111:10,17;112:19;

113:8;120:3;137:8;
139:11;144:21;160:5;
161:22;169:17;174:10;
183:9,13;185:14,15;
186:9,11;198:25,25;
202:10;203:10;226:17;
228:9
**parties' (2)**
33:12;229:5
**parties-in-interest (1)**
162:25
**partly (1)**
182:25
**partners (3)**
61:5;104:9;158:20
**parts (2)**
23:7;25:17;53:11;
138:23
**party (12)**
19:3;101:22;112:22;
113:4;114:3;160:19;
161:24;185:5,11;
186:5,23;217:17
**party's (1)**
212:8
**Pascuzzi (15)**
49:17;51:2;52:11,13,
14,16,17;54:19,21,21;
55:4,9,14,18,20
**pass (3)**
19:23;28:16;219:10
**passed (3)**
46:4,10;130:23
**passionate (1)**
67:23
**passu (1)**
204:4
**past (3)**
146:14;211:15;
215:11
**patently (1)**
130:14
**patient (1)**
200:23
**Paul (4)**
45:18;52:17;54:21;
228:19
**pause (1)**
47:2
**pay (8)**
20:16;41:3,4;127:24;
134:15;176:18;193:18;
202:6
**paying (5)**
13:8,11;179:25;
180:2;192:5
**payment (6)**
182:6,14;194:6,8;
208:19;220:24
**payments (3)**
153:6;202:3;215:3
**payroll (1)**
11:21

**pays (4)**
56:10;176:21;
213:17;218:1
**PE (1)**
62:11
**pen (7)**
66:10,12;69:5,16;
72:1;213:19;214:1
**penalized (1)**
220:2
**pending (5)**
78:14;128:25;131:9,
11;170:3
**people (41)**
37:6,7;39:16;42:18;
48:1;49:7;50:21;53:17;
61:5;69:6;82:13;85:5;
86:14;88:22;89:1;
91:21;92:18;105:19;
112:6;116:19;119:22;
120:23;122:7;130:24;
132:10;145:19;149:12;
153:4;156:5;164:23;
166:21;171:1;173:10;
174:12;178:5;181:10;
194:21;195:5;199:13;
206:4;223:3
**per (1)**
108:6
**percent (9)**
96:18;152:22;
180:17,18;181:3,15,16;
196:24;206:10
**percentage (1)**
211:15
**perfect (2)**
156:25;166:21
**perfectly (1)**
213:24
**performed (1)**
200:10
**perhaps (11)**
9:6,23;32:22;39:6;
118:6;128:7;145:2;
156:10;178:13;196:19;
222:18
**Period (4)**
10:23;85:21;176:22;
201:21
**permission (1)**
105:6
**permissions (1)**
195:4
**permit (1)**
16:9
**permitted (2)**
15:23;194:24
**Perris's (1)**
208:20
**person (1)**
48:16
**personal (5)**
27:24;86:11;88:8,10;

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 250
of 261

128:14
**personally (2)**
67:22;156:20
**perspective (6)**
28:21;57:7;68:9;
69:4;168:16;219:18
**persuade (2)**
158:9;220:21
**persuaded (5)**
12:15;170:18;204:8;
222:4,5
**persuading (1)**
156:21
**PEs (1)**
150:4
**petition (4)**
82:18;83:13;110:10;
114:6
**PG&E (16)**
6:11;12:13;13:8,10;
25:22;26:14,20;28:19;
42:25;43:22;44:6;
68:10;115:24;139:14;
212:14;229:18
**PG&E's (1)**
11:19
**ph (1)**
115:16
**philosophy (1)**
69:24
**phone (4)**
18:13;54:15;68:17;
115:13
**phonetic (4)**
42:24;152:14;160:4;
211:19
**phrase (2)**
39:18;40:10
**PI (2)**
62:11;192:10
**pick (1)**
152:23
**picked (1)**
129:10
**picture (2)**
64:3,5
**pieces (2)**
91:20;214:24
**Pillsbury (1)**
113:19
**pin (2)**
33:11;35:6
**pitch (2)**
87:8;154:19
**place (4)**
120:21;162:6;
170:24;192:25
**places (2)**
39:19;141:3
**Plaintiff (2)**
9:22;21:17
**plaintiffs (10)**
7:24;10:2,23;11:23;

13:8;23;21:8,20;
149:13;152:15
**plaintiffs' (5)**
12:21;13:3,4;15:1;
168:19
**plan (257)**
21:7;23:5;36:21;
37:18,21;38:17;41:3;
57:9,10,13,18;58:9;
59:1,22;60:15,24;
61:25;62:8,9,17;63:20;
64:25;65:3,20;68:20;
69:15,20;70:6,10;
72:13,25;73:2,8;74:18;
75:6,19;76:20;77:4,4,8,
9,23,23;78:1,2,6,22,23;
79:1,2,19;80:12,13;
81:15;82:6,7;83:13,14;
84:22;85:1;95:16,17;
103:1,20;120:25;
121:24;122:3,9,17,18;
123:2,5,6,9,20,20,22;
124:2,4,4,7,14;125:9,9,
12,12,17,18;126:5;
127:5,15,18;128:20,21;
129:5,24;130:5,5,10,
11,14,15;131:5,17;
132:7,9,18;133:4,7,11,
16,19,20;134:3,8,13,
19;135:15,16,20;
136:18,19;140:14,22;
141:14;142:5,9,20;
143:1;144:3,6,7,9,17;
146:14;147:2,9;149:5,
6;150:22,23;151:7,12,
12,16,16;154:20;
155:17,18;156:9,13,13,
16,22,23;157:4,4,10;
158:2,7,7,16;159:21;
160:3,21,22;162:4,6,7,
13;163:18;164:1,4,12,
13,16,24;165:3,3;
167:3,6;168:1;173:6;
174:25;175:2,5,18;
176:1;177:5;178:5;
179:7,11,11,14,15;
180:15,19;181:2;
182:9;184:14;185:4,7,
8;192:24;195:3;
202:11,14,15;203:19;
206:4,6,14;207:20;
208:2,10,12,13,17;
209:25;210:8;211:8;
213:13,17;214:22;
217:1,1,2,2,2,13,14,16,
18,20,25;218:2,13,14,
15,15;219:8,9,9,12,23,
23;220:5,9,21,25;
221:2;226:22;227:4,
11,13,19,23
**plans (32)**
32:24;47:17;65:22;
69:25;71:14,23;80:2,

14;102:6;103:4;
121:21;122:13;124:20;
132:3,6,8;136:1,2;
145:25;146:3;155:9;
156:17,25;157:12;
163:8,10,11;165:1;
218:19;220:2,18,22
**plan's (2)**
78:7;166:20
**played (1)**
157:15
**pleading (5)**
70:20;100:9;171:12;
172:11;216:16
**pleadings (1)**
19:23
**please (6)**
8:24;24:22;181:22;
183:7;184:19;215:17
**pleased (1)**
228:22
**plenty (4)**
36:15;134:18;135:1;
138:14
**plug (1)**
60:12
**plugged (1)**
64:7
**pm (2)**
118:3;230:10
**PMK (1)**
12:24
**podium (1)**
56:13
**point (70)**
9:5;10:9,9;13:7;
16:8;20:25;23:4;25:11;
35:20;38:1;61:24;72:3,
25,25;77:1;78:25;
82:23;87:12,16;93:7;
103:20;104:10;108:20,
20;110:5;121:1;
125:24;126:13;129:17,
19;132:25;133:14;
135:14;137:1,10;
141:24;144:11;149:25;
150:8,9;152:20;153:5,
12;156:24;157:15;
158:11,20;165:21;
170:13;174:7,8,16;
179:14;180:9;183:8;
186:17;191:17;195:9;
198:3;199:5;200:9;
207:21;208:7;213:9;
221:16;222:5,15;
223:20;224:12;230:1
**pointed (2)**
140:4;175:10
**pointing (1)**
187:9
**points (9)**
8:10;9:3;118:19;
136:24;144:15;148:23;

172:17;175:10;222:19
**PointState (1)**
158:19
**polarized (2)**
37:7;123:1
**policy (3)**
200:2,3,11
**politically (1)**
158:8
**Polk (1)**
99:1
**portion (1)**
63:20
**posed (3)**
21:3;105:17;208:18
**posited (1)**
148:16
**position (26)**
13:15;14:24;15:14,
14,15,21,22,22;18:13;
47:13;79:25;92:11;
95:21;113:25;114:2,4;
119:9;132:14,16;
133:16;134:24;139:3;
156:22;162:15;164:2;
196:13
**positioned (1)**
160:13
**positions (1)**
12:12
**possible (3)**
110:6;142:20,21
**possibly (4)**
56:11;89:17;170:1;
178:21
**post (1)**
85:19
**post- (5)**
70:12;82:17;83:12;
110:9;114:5
**post-petition (33)**
31:9,11,20;32:11;
38:1,16,23;41:1;53:9;
56:2;57:10,18;61:21;
65:23;67:7;82:23;
84:13;85:19;86:24;
95:14;99:14,19;
107:20;108:17;111:11,
19;112:5;114:7;
115:18;118:10;119:3;
138:21;159:6
**post-petition- (1)**
85:8
**post-petition-interest (3)**
83:12;92:4;95:17
**post-trial (1)**
71:21
**pot (2)**
191:8;211:14
**potential (5)**
7:20;21:2,5;184:5;
186:12
**potentially (6)**

11:16;29:20;61:20;
79:4;157:1;179:25
**PPI (4)**
56:14;64:18;91:1;
92:4
**practical (4)**
10:1;149:1,3;152:7
**practicalities (1)**
151:19
**practicing (1)**
213:22
**precedent (5)**
20:22;26:8;78:4;
96:24;97:4
**precludes (1)**
225:21
**predicate (2)**
159:5;163:1
**predicted (5)**
37:6;69:21,22;
122:23,23
**prefer (2)**
36:22;170:17
**preference (5)**
13:23;80:9;84:4
**preferences (2)**
24:4;146:7
**prejudice (1)**
21:13
**prejudices (1)**
187:12
**prejudicing (1)**
218:14
**preliminary (1)**
62:23
**premise (2)**
185:24;194:15
**premised (2)**
126:3;136:20
**premium (11)**
31:12,20;36:17;
38:16,24;39:18;40:16;
43:20;85:14;116:8;
203:1
**prepared (9)**
25:20;36:18;77:3,4;
124:6;144:10;154:20;
222:3;227:10
**preparing (1)**
20:1
**prerequisite (2)**
79:14,18
**present (9)**
14:10;16:11,17;
17:19;74:8;107:6;
110:2,5;226:14
**presentation (4)**
7:3;74:18;139:4;
206:10
**presentations (1)**
24:15
**presented (6)**
14:9;56:8;106:25;

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 251
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(20) personally - presented

107:8;108:5;110:6

**presenting (1)**
13:2

**presently (3)**
64:25;212:6;226:21

**preserve (7)**
54:7;114:1;201:20;
202:23;203:22;204:5;
213:15

**president (1)**
229:18

**presiding (1)**
6:6

**pressing (1)**
86:11

**pressure (1)**
224:21

**presumably (6)**
42:6;50:15;83:13;
180:12;194:10,17

**presume (4)**
19:1;29:3;47:5;
197:6

**pretend (2)**
10:17;69:11

**pretending (1)**
127:4

**pretty (5)**
34:7;99:11;166:15;
171:16;222:16

**prevail (1)**
26:18

**prevent (2)**
178:8,9

**preview (4)**
95:20;97:1;159:20;
161:3

**previously (3)**
23:9;25:19;184:23

**prices (1)**
142:20

**primacy (1)**
164:5

**primarily (3)**
42:7;49:8;144:15

**principal (2)**
36:22;106:22

**principally (1)**
95:13

**principle (4)**
27:15;176:24;199:9;
202:15

**prior (10)**
23:21;24:12;30:4;
80:1;125:22;126:6;
133:4;180:16;187:21;
216:8

**priorities (1)**
208:9

**priority (7)**
38:3;59:25;79:21;
126:8;127:18;128:17;
208:16

**private (1)**
50:17

**prize (2)**
76:13,15

**pro (1)**
105:3

**probably (17)**
27:18;85:2;88:17;
93:1,8;95:9;99:11;
108:16,17,18;114:16;
116:15;121:16;132:22;
164:15;166:14;170:8

**problem (37)**
29:6;37:1,4;51:13;
72:16;81:18;84:9;
85:18;86:19;98:15;
108:25;112:8;122:3;
142:9;155:10,10;
162:18,19;173:22,24,
25;174:1,3,19,20;
190:23;199:15;204:7,
16;205:8,25;206:1,2;
209:20;217:24;221:1;
223:6

**problems (4)**
66:14;81:21;95:15;
181:19

**procedural (1)**
146:15

**proceed (6)**
8:7;34:21;56:7;
123:20;148:24;200:3

**proceeding (21)**
8:8,11,18;9:22;
10:25;11:11,11,25;
12:18,22;15:25;19:16;
48:9;81:4;92:23;129:2;
130:15;131:19;137:12;
209:7;217:9

**proceedings (14)**
11:2,9;12:24;17:22;
18:12,15;56:4;101:23,
25;128:25;131:11;
133:6;168:2;230:10

**process (23)**
24:1;32:14;33:15;
34:21;48:8;67:14;
81:25;84:23;86:14;
87:15;88:5;90:21;
108:3;131:8;132:24;
144:22;154:24;158:2;
172:15;193:7;194:10,
13;228:23

**program (1)**
48:5

**progress (8)**
36:23;37:2,5;123:4;
169:14,16;174:10;
230:6

**prohibit (1)**
20:17

**prohibited (2)**
142:15;186:7

**prolong (1)**
158:22

**promote (3)**
78:22;122:24;220:1

**promptly (2)**
22:10;123:16

**pronouncements (1)**
139:2

**proof (1)**
162:21

**proofs (1)**
50:14

**proofs-of- (1)**
62:23

**proper (1)**
48:8

**properly (3)**
21:11;145:3;200:10

**Properties (7)**
176:23;186:8,21;
187:11,21;201:10;
202:7

**Properties' (1)**
203:21

**property (1)**
143:16

**property-damage (1)**
48:18

**propo (1)**
111:7

**proponent (1)**
127:24

**proposal (7)**
42:12;43:9,19,20;
45:13;49:20;90:7

**propose (9)**
23:14,15;31:5;
122:13;135:24;178:4;
185:4,8;191:1

**proposed (21)**
34:7,19;41:16;64:13;
71:15;73:17;77:8;
95:18;102:6;110:19;
111:9,20;112:7;
118:17;124:11;169:24;
170:10;172:21;191:2;
215:21;218:1

**proposing (3)**
29:24;84:16;108:13

**proposition (1)**
213:1

**prospective (1)**
14:4

**protect (5)**
14:7,23;69:9;112:25;
134:23

**protecting (1)**
207:23

**protection (4)**
206:15,19;207:13;
208:2

**protects (1)**
14:10

**protocol (4)**
228:24;229:4,5,13

**Prove (7)**
69:19;72:20;139:11;
140:11,14;141:16;
202:8

**proved (2)**
142:25;143:2

**provide (3)**
20:23;134:22;162:21

**provided (4)**
95:12;99:12;100:14;
135:11

**provides (2)**
96:15;146:17

**providing (2)**
134:24;167:11

**proving (2)**
11:24;139:3

**provision (14)**
145:23;182:13,19;
188:20;225:16,18,20,
21;226:12,13,15;227:4,
9,15

**provisions (9)**
140:23;165:22;
178:5,6;184:17;206:5;
211:7;217:11;218:3

**PSA (1)**
185:1

**public (15)**
62:1,11;155:13;
184:18,25;185:5,10,11;
188:20;209:9;210:5;
211:3,9,16;215:6

**pull (1)**
65:18

**pulled (2)**
64:10;92:19

**punitive (1)**
150:11

**purpose (3)**
194:13;195:22;
219:25

**purposes (8)**
12:3;17:22;38:14;
40:22;168:17;182:12;
192:12;195:21

**pursuant (4)**
22:15;142:19;
202:14,15

**pursue (3)**
123:9;197:24;200:8

**pursuing (3)**
70:5;114:4;212:8

**purview (1)**
192:4

**push (3)**
85:21;110:12;228:10

**pushed (2)**
34:18;82:10

**put (41)**
37:22;38:4;48:25;

49:3;68:9;69:7;72:20;
73:5;74:21,22;80:12;
81:5,14;82:20;100:23;
105:20;106:10;109:17;
114:20;116:15;120:10,
21;124:7;135:6,15;
140:25;150:17;160:11;
162:20;164:1;170:24;
175:15;187:6;190:15;
191:9;202:4,5;206:20;
207:18;211:3;221:22

**puts (2)**
60:15;219:25

**putting (3)**
53:20;66:23;67:5;
113:12

---

## Q

**qualified (1)**
21:20

**qualifying (1)**
90:14

**quantification (1)**
75:4

**quasi (1)**
226:6

**queue (1)**
51:14

**quick (4)**
86:20,20,20;131:8

**quickly (5)**
36:18;87:15;102:21;
184:16;228:22

**quirk (1)**
17:2

**quite (7)**
11:23;21:15;30:4;
71:24;93:24;150:7;
171:8

**quota (1)**
52:6

**quote (4)**
201:19,21;203:22;
225:22

**QURESHI (14)**
225:7,9,11,13,14,16;
226:1,5,9,13,19,21;
227:8;228:2

---

## R

**race (1)**
146:14

**raise (6)**
66:13;103:6;141:15;
153:5;175:9;223:4

**raised (15)**
32:11;56:1;92:13;
133:2;142:19,20;
147:14;159:11;171:14;
172:3,11;201:1,3;
224:7;228:8

Min-U-Script®

Case: 19-30088    Doc# 4467    eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 252
of 261

**(21) presenting - raised**

**raises (2)**
23:10;68:2
**raising (1)**
214:14
**range (1)**
149:8
**ranges (1)**
150:9
**rate (15)**
41:4,5;95:17;96:12,
12,13,16;97:15,16,17,
19,24,25;100:10,17
**rates (21)**
82:4;134:25;135:12
**rather (12)**
22:9;31:8;65:19;
79:23;84:7;94:7;110:3;
118:10;129:16;131:2;
186:21;224:24
**rationale (1)**
208:7
**reach (2)**
184:6;185:25
**reached (2)**
137:7;184:9
**reaching (1)**
222:5
**reacting (1)**
164:22
**reaction (1)**
228:11
**read (17)**
22:21;24:15;27:16;
47:10;58:3,5;75:25;
87:25;93:1;94:25;
146:13;170:15;183:24;
204:17;212:5;222:10;
229:10
**reader (2)**
45:1;118:13
**reading (7)**
47:18,19;124:19;
204:12,16;208:19;
215:23
**reads (1)**
10:10
**ready (10)**
6:12;78:23,23;98:17,
17;125:9;135:4;
140:11;163:14;219:7
**real (9)**
69:17;111:3;139:12,
12;143:4,16;155:10;
184:16;202:20
**realistic (1)**
138:19
**realistically (1)**
108:9
**reality (1)**
161:20
**realize (6)**
13:9;47:10;56:13;
87:24;94:13;172:13

**realized (3)**
88:1;143:6;204:17
**really (28)**
49:21;60:13;61:21;
64:21;117:4;121:11;
126:23;129:7;141:1;
144:16,22;153:10;
157:23;163:20;166:11;
170:12;173:13;176:2,
5,8,19;196:18,19;
203:13;204:8;218:12,
12;224:4
**reason (21)**
6:25;15:20;17:17;
29:6;34:5;37:11,12;
42:13;101:8;117:7;
121:19;125:15,20;
130:12;146:21;150:13;
153:12;154:12;199:19;
211:4,10
**reasonable (12)**
12:15;36:14;37:9;
59:24;77:25;107:18;
110:21;162:23;168:21;
207:23,25;211:5
**reasons (8)**
21:4;142:18;149:3;
154:17;193:15;201:9;
208:17;225:4
**Rebecca (2)**
48:12;190:1
**recall (5)**
23:24;57:14;59:1;
99:8;129:25
**receipt (1)**
220:24
**receive (2)**
10:2;159:23
**received (1)**
190:14
**recent (1)**
65:2
**Recess (1)**
118:3
**recite (2)**
51:16;187:23
**recognize (1)**
99:4
**recognized (4)**
8:8;126:7;133:5;
211:18
**recommendation (2)**
150:15;169:3
**record (11)**
18:5;54:7;55:23;
80:12;111:14;147:19;
166:16;215:17;227:16;
228:19;229:11
**recover (1)**
198:22
**recovers (2)**
9:22,23
**recovery (7)**

21:8;193:11,22;
194:25;196:17,22;
198:16
**redemption (7)**
57:11;85:14;91:2;
108:19;109:21;110:9,
12
**refer (1)**
66:9
**reference (6)**
126:15;128:10,13,
13;168:23,24
**references (1)**
6:22
**referred (1)**
137:7
**referring (2)**
218:3;225:20
**refinance (2)**
109:19,20
**refinanced (1)**
57:16
**refinancing (1)**
40:17
**refine (1)**
72:11
**reflect (3)**
22:8;26:7;193:4
**reflected (2)**
134:12;174:14
**reflects (2)**
132:5;175:6
**regard (1)**
144:25
**regarding (3)**
56:15;105:20;163:5
**regardless (3)**
63:4;64:11;185:25
**reimbursed (1)**
198:13
**reimbursement (3)**
190:13;198:15,23
**reinstate (1)**
109:19
**reinstatement (2)**
135:12;142:4
**reinstating (3)**
57:14;142:11,14
**reinvent (3)**
52:22;54:6;120:6
**rejected (1)**
14:17
**relate (2)**
207:12,15
**related (3)**
6:18;85:19;191:25
**relates (5)**
56:2;58:2;65:20;
162:17;167:21
**relation (2)**
161:1;173:8
**relationship (4)**
96:15;160:25;

161:11;200:13
**relative (1)**
147:15
**release (40)**
182:6;183:19,20;
184:7,8;185:5,11,13,
18;186:2,23;188:18;
190:5,7,7,11,12,21;
192:6;193:2,5;195:2,4,
6,7,8,9;199:16,23,24;
200:12,20;201:1,6,18;
202:12,12,13,15;
203:19
**release/exculpation (1)**
192:25
**releases (9)**
175:19,20,22;
192:21;194:2;199:1;
201:8;203:17;208:14
**releasing (1)**
196:9
**relevance (1)**
16:2
**relevant (6)**
6:23;9:12;10:12;
46:4;121:6;180:22
**reliance (1)**
211:23
**relief (3)**
8:6,23;20:24
**relies (2)**
67:6;68:19
**reluctant (2)**
38:22;39:10
**rely (1)**
67:8
**relying (3)**
61:4;116:18;152:10
**remedies (1)**
200:1
**remember (10)**
24:22;94:16;140:21;
169:4;178:12;197:5;
202:16;203:6;206:14;
208:17
**remind (1)**
140:20
**render (2)**
79:12;151:22
**repeat (2)**
8:20;53:12
**repeated (2)**
55:3,5
**repeating (2)**
13:18;91:19
**repetitive (1)**
92:20
**rephrase (1)**
97:5
**replies (2)**
24:6;43:10
**reply (24)**
24:8;27:22,23;28:13,

16;30:17;42:10;46:20;
54:1;55:1,6;107:12;
112:10;114:17;116:10;
117:19;119:4,6,11,15,
18;129:21;172:11;
183:24
**reply-brief (1)**
87:8
**report (2)**
39:6;228:23
**represent (7)**
14:15,18;95:6,10;
122:7;149:2;181:2
**representation (3)**
19:19;189:9,15
**representations (1)**
171:6
**representative (1)**
215:19
**representatives (1)**
181:21
**represented (1)**
29:19
**representing (6)**
21:16;83:8;102:13;
104:25;122:11;189:12
**represents (2)**
166:23,23
**request (10)**
16:15;17:1,23;31:14;
36:16;113:22;117:10;
125:21;126:3;130:14
**requested (4)**
32:12;42:1;229:17,
22
**require (6)**
76:10;135:12;138:8;
160:22;193:8;202:5
**required (7)**
65:24;93:1;126:5;
129:23;130:3;143:18;
145:21
**requirement (4)**
133:23;186:13;
188:24;189:10
**requirements (3)**
80:22;133:19;136:3
**requires (9)**
114:2;159:23;162:6,
16;178:4;186:5;
188:18,18;190:18
**requiring (1)**
113:12
**reread (1)**
222:1
**Research (2)**
104:10;158:21
**reservation (1)**
16:8
**reservations (1)**
229:10
**reserve (10)**
7:10,13;15:12,16;

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 253
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.com

(22) raises - reserve

21:25;78:14;99:20;
114:12;221:7;225:8
**reserved (2)**
42:25;43:2
**reserving (1)**
15:16
**resolution (4)**
67:12;201:17;
202:13,21
**resolve (3)**
60:7;65:19;166:22
**resolved (13)**
9:3;125:11;165:14;
171:6,13,18,19;172:7;
181:20;182:7,8,9;
216:8
**resolves (2)**
201:12;229:4
**resolving (1)**
229:23
**respect (46)**
8:16;22:16;26:21;
32:19;36:20;44:21;
56:1,3,14;57:13,18;
74:7,9,11;82:4;99:10,
12,17;100:3,12;
105:22;107:2;108:17;
110:9;115:2,3,18;
116:24;118:23;131:1;
137:9;148:23;160:1;
161:11;164:5;168:8;
171:9,14,22;172:12;
190:5;202:9,10;
206:21;207:14;226:22
**Respectfully (1)**
101:19
**respond (7)**
15:7;49:20;54:1;
91:4;145:20,21;215:8
**responding (3)**
9:23;136:15;147:3
**responds (1)**
127:25
**response (5)**
54:25;90:16;99:9;
121:7;161:16
**responsible (1)**
139:14
**responsive (1)**
171:12
**rest (3)**
15:8;21:24,24
**restate (4)**
170:7;173:5,6,6
**restated (8)**
129:4;170:19;
173:17;174:5;182:20;
195:2;216:21;223:23
**restatement (2)**
143:9;173:8
**restating (1)**
183:1
**restructuring (2)**

183:9;225:24
**result (5)**
8:11;14:5,6;142:4;
217:13
**resulted (1)**
137:4
**results (2)**
47:21;137:25
**retention (2)**
13:1;95:13
**reverse (1)**
218:11
**review (3)**
23:20;181:10;229:9
**revise (1)**
134:7
**revised (6)**
174:15,17;201:8;
221:21;222:9;229:4
**revision (1)**
182:5
**revolver (1)**
99:2
**revolving (1)**
113:21
**reworded (1)**
182:10
**Richard (1)**
215:19
**rid (2)**
164:16;200:17
**ridiculous (1)**
86:8
**right (215)**
7:9;8:13;9:2,5,10;
10:6,24;15:3;17:24;
19:15,25;20:14;21:22;
24:2,24;25:24;26:2,5,
15;27:7,17;28:11;
33:19;36:10,13,13;
39:21;40:6,8;41:7,15;
42:24;43:1;44:4;45:2,
6;46:11;47:5;49:6;
50:1,6;51:6,7,12;
54:14;58:23;59:5,17,
18,19;60:8,8,9;61:19,
23;63:12,24;66:10;
67:9;68:8,10,13;70:7,8,
18,21;71:8;72:16;
73:10;74:3,25;75:2,7,8,
9;79:7;80:19;83:2,14,
16,17,18;89:6,11,13;
91:19;93:13,25;94:24;
97:9,13,21;98:5,8;
99:15,18,21;100:2;
103:5;104:4;106:21;
107:16;109:4,23;
112:17,19;113:6,14;
114:12,19;115:8,9;
116:1;117:19,23;
119:21;125:13;126:10,
11;127:7;128:17;
129:14;138:21;140:12,

17;141:23;142:2;
145:7;146:8;148:2;
149:25;151:9,13,16,17;
152:6,16,19,21,23;
159:3;161:3,4,8;
162:15;164:16;165:9,
11;167:19,19;169:13;
171:18;172:5,8,24;
173:19;174:12;175:1,
12,14;176:6;177:23;
178:21;179:6,8;180:1;
181:9;182:22;183:2,
17;184:22;185:20;
187:16,24;189:25;
190:3;191:19,20;
193:3;194:23;196:2,
13;198:13,18,22;
200:15,22;206:10,13,
22;208:23;209:3;
210:3,10,20,24;214:8;
217:3;218:7,16,22;
219:10,11,13,15,20,21;
220:5,19;224:15;
225:8,9;226:1;227:7;
228:25
**rights (24)**
15:16,17,25;16:8,12,
13;17:3,20;112:25;
113:1;122:21;123:9;
134:1;149:13;156:6;
186:11;201:21;203:17,
22;204:6;208:16;
211:7,14;213:15
**ripe (2)**
26:20;107:3
**rise (9)**
6:5;55:25,25;56:1;
105:19;118:2,4;
147:23;230:9
**risk (12)**
29:14;71:14;80:21;
102:7;103:12;120:9;
179:22,24;206:13,17;
208:18;214:25
**risky (1)**
153:13
**road (2)**
37:22;170:15
**Robins (1)**
203:7
**robust (1)**
48:5
**rocket (1)**
173:1
**role (6)**
10:11;13:14;14:25;
17:11;19:7;21:11
**roll (3)**
82:14;84:11;148:2
**room (4)**
59:12;158:5;160:13;
222:9
**Rose (1)**

48:13
**Roth (2)**
104:8;158:19
**rough (1)**
137:24
**round (2)**
6:19;170:22
**RSA (40)**
31:24;147:24;170:7,
9;171:9;172:20;
173:17,19;174:5,24;
175:3,25;177:4,5,25;
178:4,9;180:14,24;
181:11;182:13,15,20;
186:19;187:12;188:8;
192:22;195:2,4;197:9;
198:21;200:7;213:17;
216:21,23;217:10;
218:11;222:9;223:6;
225:18
**RSA's (1)**
184:3
**rub (1)**
67:24
**rule (15)**
33:14;59:23,25;73:8;
75:1,6;79:21;126:8;
127:18;171:4;207:22;
211:18;212:18;213:4;
221:22
**rules (2)**
170:24;201:11
**ruling (10)**
22:10;23:12;80:1;
110:6;132:4;135:19;
157:3,19;177:19;
209:14
**run (2)**
118:14;214:25
**running (2)**
144:14;185:13
**runs (1)**
185:11
**rush (1)**
139:20
**rushed (1)**
215:1

**S**

**safety (3)**
102:23;103:4,21
**same (51)**
11:1,15,15,16,16;
12:20;13:4,5;16:12,18;
17:1,19;19:12;21:16;
30:10,12;32:15;41:8;
44:14,22;48:21;65:12;
93:1;102:22;109:6;
111:20;128:7;135:2;
141:19;143:19,25;
146:18;153:11;159:23;
162:11;167:14;168:12;

179:13;190:4;199:19;
202:12;204:16;205:2,
8;206:5;208:14;
210:20;217:19;226:23;
227:2,19
**SAN (1)**
6:1
**sat (1)**
208:10
**satisfaction (1)**
58:9
**satisfied (1)**
189:4
**satisfies (2)**
74:18;127:18
**satisfy (4)**
62:10;72:6;73:8;
80:22
**satisfying (1)**
76:16
**save (1)**
135:7
**saw (2)**
64:4;226:25
**saying (45)**
16:16;32:3;35:5;
45:20;52:20;57:1;67:6;
70:5;80:5;81:12;86:20;
87:19;91:15,22;
103:11;110:12;117:14;
122:10;125:1;126:16;
127:25;145:13;154:11,
23;155:16;156:14;
163:23;164:5,16;
165:18;168:5;169:7;
170:17;172:16;187:7;
188:5;199:8;203:14;
204:2;205:21;209:12,
20;215:1;220:13;
223:13
**scenario (2)**
152:17;220:2
**schedule (93)**
22:16;23:5;28:3,18;
33:23,25;34:7,19;
35:15,17;36:15,20;
37:9;38:23;39:1,4,9,11,
12;40:21;41:17;44:14,
15,22;45:3,8,9;46:2;
48:2,14;50:12;52:8;
55:2;56:16;60:12;64:8,
12,14;69:18;70:11;
71:11,13,15,17;72:3,
12,20;73:12,21;77:8;
78:24;81:11,16;82:9;
84:11;86:18;87:20;
88:10;90:24;93:18;
98:15,17;101:19,24;
102:1,2,5;103:9,20;
105:22;106:7,13,14;
107:7,19;111:17;
112:3;113:16;115:19;
116:8;120:13;131:21;

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 254
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(23) reserved - schedule

132:5;135:20,24;
136:11;137:3;144:20,
21;148:15;154:19;
161:13;166:4
**scheduled (1)**
88:23
**schedules (9)**
27:22;28:4;31:4;
45:10;70:23;104:4;
106:2,10;115:2
**schedule's (1)**
46:15
**scheduling (12)**
23:5;53:8;107:2;
116:23;126:3;132:23;
135:14;147:9;153:21,
22;156:19;157:19
**Schiff (1)**
140:24
**Schulte (2)**
104:8;158:19
**science (1)**
173:1
**scope (2)**
12:8;19:18
**scramble (3)**
70:7,9,10
**screwed (1)**
164:11
**se (1)**
108:6
**second (10)**
14:15;28:17;100:15;
121:5;161:14,15,20;
193:5;195:2;203:15
**secondly (1)**
194:6
**seconds (2)**
147:13,16
**Section (9)**
122:20;123:10;
159:22;181:6;204:6,
18;207:4;218:4,5
**secure (1)**
142:11
**secured (3)**
142:6,14;160:8
**security (1)**
152:9
**seeing (1)**
93:16
**seek (1)**
198:22
**seeking (2)**
19:17,18
**seem (5)**
10:12;12:14;33:10;
47:22;63:22
**Seemed (1)**
159:3
**seems (10)**
7:18;27:12;65:10;
138:15;161:5;170:6,

23;171:5;189:17;
215:23
**segment (2)**
30:6;174:9
**segue (1)**
166:15
**self- (1)**
163:17
**self-correct (1)**
163:8
**semantics (1)**
128:4
**send (2)**
12:13;142:7
**senior (11)**
42:7;100:1,21,24;
106:19;108:20,23;
113:5,5;219:9;229:17
**sense (11)**
27:13,18;45:5;65:10;
108:18;127:7;175:24;
176:8;184:20;218:3;
226:6
**sent (2)**
22:20;99:8
**sentence (4)**
7:18;212:4;215:13,
14
**sentences (1)**
58:19
**separate (22)**
50:21;52:8,15,19;
82:11,20;83:19;85:10;
89:1,3;92:25;93:4,9;
99:21;100:9;101:2;
107:22;112:17;169:23;
170:7;173:18;209:8
**separately (6)**
25:6;53:3;61:22;
101:10;115:7;142:7
**September (4)**
32:10;59:2;76:2;
122:11
**sequence (2)**
81:12;118:9
**sequentially (1)**
145:3
**series (1)**
109:14
**serious (4)**
21:2;105:20;130:17,
18
**seriously (2)**
185:23;186:11
**serve (1)**
27:2
**services (1)**
95:12
**session (2)**
6:5;118:4
**set (10)**
38:24;43:25;48:2;
106:10;138:15;144:9,

20;172:10;193:1;
201:10
**sets (1)**
174:5
**setting (3)**
65:22;66:16;107:19
**settle (14)**
63:4;188:21;190:8;
192:4;193:8,11;
197:23;198:9;199:22;
200:9;208:1;212:4,16,
17
**settled (5)**
124:15;176:17;
210:5;215:3;217:7
**settlement (61)**
59:24;60:11;62:7;
63:3;77:9,25;123:5;
137:4,6,14;147:25,25;
168:4,20;171:10;
172:20;177:21;178:8;
179:17;180:3,5;182:6,
14;184:5,5;185:24;
186:3,6,12,14;187:13;
193:9;194:14;196:15,
16;197:23;198:20;
199:18;201:11,16;
204:4;208:8;209:5;
210:11,13,23;211:6,11;
216:4,5;217:4,14,16,
25;218:8,16;220:6;
221:12;225:24;227:19,
23
**settlements (1)**
201:11
**settling (4)**
150:4;168:7;176:20;
219:19
**seven (1)**
134:6
**seventeen-and-a-half (1)**
106:23
**seventeen-month (1)**
151:24
**seventy (2)**
30:17;215:3
**several (5)**
25:15;89:19;95:10;
133:6;158:24
**share (3)**
189:19;209:9;215:6
**shareholder (1)**
41:9
**shareholders (1)**
30:2
**shareholder's (1)**
114:25
**sheet (9)**
169:23;170:8;
172:20;174:25;175:6;
202:13,13;207:8;214:2
**sheets (1)**
175:4

**Sherry (1)**
115:14
**short (4)**
29:21;101:5;166:11;
223:19
**shorthand (1)**
67:18
**shortly (1)**
36:2
**shot (3)**
76:15;202:14;203:11
**show (7)**
35:10;42:9;69:19;
78:7;141:3;164:14;
221:21
**showing (1)**
46:24
**shows (2)**
7:17;39:19
**showstopper (1)**
184:12
**shriek (1)**
152:14
**shut (1)**
198:5
**sic (12)**
53:23;54:23;76:22,
24;88:1;103:13;107:1;
176:24;186:9,21;
187:11,22
**sic-up (1)**
75:21
**side (40)**
9:8,9;12:7;30:10,13;
31:14;39:13;40:20;
41:2,8;42:6;43:14,16;
48:22,23;49:13;50:13;
59:12;69:22;73:5;80:6;
81:24;87:23;100:1;
107:14;108:2,2,2;
113:7;114:4,17,25;
115:23;140:13,14;
151:9,20;162:13;
179:19,19
**side-by-side (2)**
64:9;70:11
**sides (2)**
29:7;67:2
**side's (1)**
156:9
**sign (6)**
9:21;29:5;101:4;
183:11;188:15;216:23
**signatory (1)**
108:23
**signed (3)**
154:13;180:24,25
**significant (7)**
82:6;91:2,8,9;
111:19;162:19;219:25
**significantly (2)**
57:12;62:19
**signup (1)**

**Silver (2)**
104:10;158:20
**similar (4)**
17:24;114:4;128:9;
159:24
**similarly (3)**
98:1;99:22;120:4
**simple (7)**
144:16;176:15,15,
16,17,21;202:2
**simplify (1)**
29:25
**simply (5)**
81:14;114:1;162:9;
164:21;214:1
**simultaneous (10)**
41:14,23;42:9,10;
43:9,10;83:1;107:11,
12;117:17
**single (4)**
143:16;150:19;
202:9;207:18
**sit (4)**
20:8;28:20;166:24;
184:4
**sits (3)**
122:5;196:6;197:7
**sitting (1)**
169:6
**situated (3)**
98:1;99:22;120:4
**situation (1)**
21:1
**six (10)**
70:11,13,15;71:22;
82:7;110:19;112:8;
116:9;155:23;191:18
**sixty (2)**
150:18;172:14
**size (2)**
142:1,9
**sized (1)**
142:9
**skip (1)**
28:16
**sky (1)**
219:16
**slack (2)**
82:9;87:18
**SLF (1)**
215:19
**slide (1)**
184:7
**slightly (5)**
132:12;144:2;

**SILFEN (27)**
106:17,18,22;107:6,
17,25;108:12,14,16;
109:2,4,10;110:20;
111:3,7,9,16,22;112:1,
4,10,18,21,24;113:11,
14;116:7

**Sherry (1)**
115:14

180:18

Min-U-Script®

Case: 19-30088 Doc# 4467 Filed: 10/24/19 Entered: 10/24/19 14:35:11 Page 255
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(24) scheduled - slightly

174:21;180:22;181:2
**slow (2)**
84:23;86:21
**small (2)**
60:25;144:24
**smaller (1)**
57:19
**so-called (2)**
137:4,4
**sole (4)**
140:23;160:6;
193:10;217:4
**solely (2)**
123:1;227:23
**soliciting (2)**
181:5,7
**solution (1)**
81:7
**solve (2)**
190:23;199:15
**solvency (4)**
138:3;149:14,16;
150:1
**solvent (7)**
193:20,23,24;194:3;
195:14;196:21;197:2
**somebody (11)**
69:23,25;84:22;
86:11;88:25;162:9;
173:2,14;178:20;
184:2;186:2
**somebody's (1)**
162:22
**someday (2)**
202:5;208:12
**somehow (4)**
126:5;130:3;137:22;
139:4
**someone (7)**
24:22;53:7;88:9;
103:3;114:24;173:16;
225:5
**sometime (1)**
111:1
**sometimes (2)**
137:6,24
**somewhat (2)**
27:4;228:22
**somewhere (4)**
70:6;71:25;109:11;
183:25
**soon (2)**
39:13;138:25
**sooner (2)**
94:7;224:24
**sorry (21)**
31:8;43:23;53:17,19;
71:5;79:1;84:24;85:10;
87:5;102:2;105:11;
107:23;119:13,19;
120:16;129:12;147:25;
167:17;210:22;216:6,
11

**sort (6)**
31:11;92:18;145:10;
170:14;192:24;223:20
**sorted (1)**
124:21
**sought (1)**
14:13
**sound (1)**
154:2
**sounding (1)**
67:10
**sounds (7)**
54:3;100:20;152:25;
154:2;161:6;199:11,16
**source (5)**
161:24;193:10,22;
196:17,21
**sources (1)**
161:18
**speak (16)**
28:5;30:23;53:15;
82:3;88:22;92:13;
93:15;101:1;105:7;
111:15;132:17,21;
160:23;181:22;201:4;
221:20
**SPEAKER (10)**
53:15;88:15,18;
111:5;112:12,13;
119:13,17,20;158:16
**speaking (5)**
85:17;115:15;
151:15;200:25;201:2
**speaks (1)**
221:20
**special (2)**
9:23;173:15
**specific (10)**
7:2;9:12;15:6;35:8;
56:1;106:8;139:22,23;
170:5;225:20
**specifically (7)**
45:22;63:6;67:4;
74:20;93:16,25;94:3
**specifics (3)**
85:24;106:5;189:6
**specified (1)**
124:13
**specify (1)**
96:16
**specious (1)**
224:7
**speed (1)**
65:20
**spell (1)**
99:3
**spirit (2)**
147:6;190:22
**splinter (1)**
167:1
**split (1)**
36:15
**spoken (1)**

80:6
**sponsored (1)**
78:3
**spot (1)**
217:12
**spring (1)**
156:16
**squarely (5)**
91:3,5;92:5;97:22;
212:6
**squishing (3)**
67:8,11,15
**stake (1)**
214:25
**stakeholders (1)**
131:15
**STAMER (219)**
45:12,14;50:2;54:18;
55:21,22,23;56:20,22,
25;57:3,5,7,22,24;58:2,
4,6,11,13,15,21,24;
59:6,10,14,16,18,20;
60:2,4,6,17,19,21,23;
61:2,4,11,12,13,16,18,
24;62:15,17,21;63:8,
10,12,15,18,25;64:2,5,
7,20,23;65:1,5,8,14,17;
66:6,9,19,21,23;67:1,4,
16,18,21,23,25;68:5,7,
9,13,16,24;69:1,12;
70:2,4,9,16,19,22;71:2,
7,9,12;72:6,8,10,15,23,
24;73:11,15,24;74:2,5,
7,9,15,17,22;75:1,3,8,
11,15,18,24;76:2,13,
19;77:7,13,15,17,20,
24;78:5,9,12,17,20;
79:3,7,10,16,18;80:17,
20,24;81:1,10,13,17,
19,21,23;82:16,25;
83:3,5,7,10,15,17,22,
25;84:3,10,15,18,20,
24;85:5,7,10,12,14,16,
20;86:3,9,12,17,23,24;
87:10,14,20,22;88:4,6,
11,14,17,20;89:5;90:6;
121:1;126:2;129:4;
133:2;134:5;136:17;
137:3,18;141:25;
142:8;144:3,5;145:8;
148:16;159:16;160:17;
161:12;166:10,11,14,
16,18;167:1,17,19,21;
168:13,15,19;169:2,5,
11,12
**Stamer's (9)**
106:25;115:4;
116:22;117:2;121:10,
17;139:18;141:14;
156:13
**stand (13)**
24:7;55:25,25;94:4;
110:22,23;124:5;

150:14;155:12;164:2;
180:21;189:9;221:3
**stand-alone (1)**
176:11
**standing (4)**
70:1;94:24;225:5;
228:14
**stands (1)**
78:21
**start (17)**
23:8;33:15;45:20;
61:19;73:17,18,21;
74:17;82:22;85:1;
87:24;125:15;137:17;
139:3;166:20;185:24;
186:14
**started (4)**
55:4;174:9;182:23;
202:1
**starting (3)**
27:21;61:15;222:16
**starts (2)**
71:17;174:17
**state (34)**
7:19;8:7;10:25;
11:22,23;12:24;15:14,
24;16:9,16;18:12;19:4,
16;21:21;29:3;46:1,12;
51:4;52:18;96:17;
97:16;109:16;135:7;
150:4,6;181:19;
195:18;207:4;208:16;
209:10,11;210:5;
211:2;215:17
**state-agency (2)**
49:11;50:19
**stated (6)**
19:13;43:13;64:25;
144:8;146:18;157:23
**statement (19)**
30:5;63:25;64:2;
73:12;74:10;104:15;
131:2,2;132:6;167:22;
181:23;182:2;
198:17;200:7;203:21;
213:4;229:17,23
**statements (2)**
18:10;71:23
**States (3)**
150:6;181:19;182:1
**stating (1)**
69:10
**status (3)**
59:3;145:18;160:13
**statute (9)**
96:17;123:21;
145:23;146:11;204:13,
17;205:13;209:16;
219:8
**statutorily (1)**
17:2
**statutory (4)**
82:2,2;97:16;122:21

**stay (5)**
8:6,23;189:5,22,23
**SteelMill (1)**
104:10
**Steven (3)**
6:13;22:13;121:14
**stick (14)**
6:24;28:8;29:15;
39:15;43:8;45:21;50:4,
4;62:7;82:15;86:25;
156:24;197:4;214:20
**sticking (1)**
45:8
**sticks (1)**
62:7
**still (39)**
24:16;27:4,9;28:18;
35:12;46:24;47:1;
57:20,20,21;59:13;
60:8;70:1;72:13;78:24;
86:1;94:8;97:21;
101:17;126:10;144:14;
147:2;156:16;157:11;
169:20;171:4;177:7;
178:12;179:2;180:10,
18,18;182:25;189:6;
191:5;200:23;211:23;
212:25;229:8
**stipulated (1)**
53:12
**stipulation (2)**
55:16;161:6
**stock (3)**
124:12;211:13;
213:12
**stomach (1)**
228:20
**stomach's (1)**
228:21
**stood (1)**
144:16
**stop (7)**
6:21;70:5;111:13;
145:13;184:19;201:21;
209:22
**story (1)**
212:1
**straight (1)**
87:4
**streamline (1)**
65:18
**street (3)**
10:20;12:11;214:25
**stretch (1)**
82:22
**stretching (1)**
165:20
**strike (1)**
112:15
**strikes (1)**
32:24
**strip (1)**
123:9

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 256
of 261

**Stroke (8)**
66:10,12;68:24;69:5,
16;72:1;213:18;214:1
**stroke- (1)**
66:9
**stroke-of-the-pen (2)**
69:2;71:16
**strong (4)**
79:25;144:8;146:17;
167:22
**strongest (1)**
203:12
**strongly (2)**
20:22;155:22
**Stroock (2)**
115:15,15
**struck (1)**
139:1
**structure (2)**
217:23;221:2
**struggling (1)**
170:2
**stuck (1)**
195:23
**studied (1)**
47:6
**study (1)**
221:24
**stuff (10)**
13:18;22:21,24;28:3;
57:15;63:15;65:23;
124:19;172:24;213:21
**subject (13)**
20:7;23:1;24:4;
46:14,15,18;50:14;
75:10;109:23;119:9;
177:19;207:3,17
**subjected (1)**
207:18
**submission (4)**
30:4;174:8;229:2,6
**submissions (1)**
115:19
**submit (12)**
22:1,3;29:21;50:20;
54:5;92:3;93:11;
118:17;123:11;174:5;
188:7;211:4
**submitted (3)**
22:10;28:14;229:25
**submitting (1)**
28:6
**subordinate (3)**
206:3,4,5
**subordinated (1)**
206:23
**subordination (10)**
170:4;200:23;204:2,
6;207:13,17,19,24;
208:3,15
**subro (6)**
29:11;129:5,5;150:3;
212:3;213:17

**subrogated (1)**
201:25
**subrogation (42)**
22:24;31:25;32:20;
36:21;38:17;40:1;
44:21;63:15;123:5;
124:8,14;147:20;
168:7;170:20;171:16;
177:3;180:23;181:3;
182:7;183:10,15;
185:13;206:22,23;
207:11,14,16;210:2;
212:8;217:3,5,17;
218:23;219:19;220:5;
225:21;226:1,9,16,22;
227:3,18
**subros (1)**
62:12
**subset (1)**
26:21
**substance (1)**
229:12
**substantial (3)**
76:21;123:4;197:6
**substantially (1)**
135:10
**substantive (2)**
188:23;229:12
**substantively (1)**
227:14
**subtle (2)**
188:5,6
**succeed (1)**
76:19
**success (1)**
87:10
**successful (3)**
56:10,24;228:24
**successfully (1)**
121:24
**successor (3)**
108:22;113:20,23
**successor's (1)**
108:22
**sudden (3)**
34:3;130:1,2
**sue (3)**
190:13;193:12;
198:15
**sued (4)**
211:20;212:9,13,14
**suffered (2)**
139:6,7
**sufficient (3)**
118:8;134:13;194:11
**suggest (3)**
110:18;159:10;
160:20
**suggested (8)**
42:21;87:1;111:10;
116:9;121:6;128:13;
143:1;179:23
**suggesting (6)**

28:6;36:6;110:11,25;
112:10;173:4
**suggestion (4)**
38:10;94:20;97:7;
110:14
**sui (1)**
154:12
**sum (1)**
49:18
**summarize (1)**
121:16
**summary (4)**
24:25;130:15;
137:12;156:13
**Superior (9)**
8:24;9:21;10:11,17;
12:11;13:15;15:4;
16:23;18:22
**supersedes (1)**
175:6
**supplement (2)**
108:4;148:9
**supplemental (1)**
95:9
**support (5)**
155:19;163:25;
183:9;184:14;215:21
**supported (1)**
137:15
**suppose (2)**
49:17;76:25
**supposed (13)**
73:18;139:24;
145:24;146:4;164:17;
170:8;191:8;192:5;
199:10,11;206:3;
207:2;218:2
**Supreme (1)**
26:7
**Sure (64)**
8:5;14:9;17:13;
24:18,19,20;25:14;
27:10;33:3;37:22;
39:17;40:20;45:12,12,
12;48:2;55:2;58:18;
61:13;63:18;68:23;
69:1,12;71:4;72:10,17,
24;73:3;80:3,7;82:16;
86:13,23;94:11;99:5;
101:22;103:5,12;
105:8;107:17;110:9;
113:9;117:6;118:15;
119:2;120:20;121:22,
22;123:24;129:19;
132:2;135:23;138:12;
139:18;151:1;157:9;
160:16;173:3;178:11;
189:20;194:22;198:8;
221:15,18
**sureties (1)**
205:14
**surety (3)**
205:8,9,10

28:6;36:6;110:11,25;
**surfaced (1)**
84:4
**surgically (1)**
57:12
**surprised (2)**
223:18;228:23
**survivor (1)**
101:23
**suspect (3)**
93:3;109:17;181:15
**suspend (1)**
161:20
**Swaine (2)**
23:19;45:18
**swing (1)**
152:10
**Sylmar (1)**
97:12
**sympathetic (1)**
15:21
**syndicate (2)**
113:21,24
**system (1)**
199:1

**T**

**table (5)**
24:18;26:17;127:5;
184:7;193:25
**talk (19)**
28:4;44:18;58:25;
61:22;62:22;77:15;
81:9;84:6;116:19;
117:24;144:22;145:11;
151:18;152:8;158:16;
166:21;168:22;218:9;
226:17
**talked (12)**
12:22;23:9;41:14;
43:6;60:23;65:13;
111:10;118:9;120:16;
195:6;224:1,2
**talking (37)**
12:19;17:16;23:5;
39:20;40:23;41:21;
53:6;55:2;56:13;72:19;
81:1;84:25;99:12,13;
102:10;103:10;109:3,
8;111:13;113:7;
117:16;118:13;139:10;
146:6;151:19;152:5,7;
153:20,22;156:19;
165:9;192:19;202:2;
214:10,13;218:10,19
**talks (2)**
144:4;167:1
**targeting (1)**
87:17
**TC (1)**
19:7
**TCC (57)**
7:4;11:20;15:23;

16:9,21,23;17:11;19:5,
9;20:17,25;21:3;29:1;
30:13;39:3;42:6;46:2;
47:20;57:9;59:22;61:5,
5,7;62:9,22,25;63:6,8;
74:24;76:24;90:6;
93:19;95:16;122:25;
123:12,18;126:3;
127:5;131:2;149:11;
150:8;157:24;158:1,9;
159:21;160:2;164:3;
165:3;170:4;172:11;
181:1;200:5;206:9,14,
18;217:2;229:3
**TCCs (2)**
60:4,5
**TCC's (4)**
79:24;126:4;150:15;
219:9
**tea (1)**
215:23
**tee (5)**
23:25;38:5;137:19;
161:6;166:6
**teed (1)**
11:5
**telling (11)**
35:7;82:18;83:18;
120:6;145:14;153:8;
157:18;160:17;202:24;
208:11;209:23
**tells (1)**
146:11
**ten (6)**
7:11;68:3;93:2;
96:18;117:23;152:5
**tenants (1)**
142:17
**tends (1)**
67:24
**ten-minute (1)**
117:24
**ten-percent (1)**
97:16
**tens (2)**
13:25;14:8
**tent (1)**
68:2;214:9
**tentative (1)**
209:14
**tentatively (1)**
44:10;45:8;86:25
**term (15)**
15:2;39:19;95:10;
115:16;169:23;170:8;
172:20;174:25;175:4,
6;202:13;207:8;214:2,
17;223:19
**terminate (1)**
37:12;123:15;
146:20;163:21;185:1;
217:4;220:5
**terminated (6)**

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 257
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(26) Stroke - terminated

34:2;37:6;122:12,16;
180:25;228:9
**termination (4)**
122:24;184:24,25;
217:11
**terminology (2)**
118:13;126:9
**terms (26)**
6:24;22:7;25:16;
27:21;101:19;102:23;
103:9,9;135:6,10,10;
143:18;160:2,21,21;
161:25;162:3,11;
163:5;164:25;165:10;
171:10;202:10,13;
213:10,13
**terrain (1)**
154:9
**terribly (1)**
223:12
**test (10)**
65:3;162:1,4;163:3;
165:21;177:7,22;
201:14,14,19
**tested (1)**
79:1
**testified (1)**
133:17
**testimony (2)**
134:12;136:21
**tests (1)**
65:3
**Thanks (2)**
116:4;158:14
**that'll (3)**
45:9;79:8;223:17
**theirs (2)**
141:1;227:24
**theory (9)**
149:22;151:12;
178:14,16,17;185:21;
205:3,7;208:6
**there'd (2)**
29:6;75:3
**therefore (6)**
57:15;68:23;78:7;
155:19;164:17;195:18
**there'll (1)**
70:7
**there're (2)**
97:3;105:18
**thinking (7)**
25:16;27:4;35:7;
42:18;88:1;117:18;
188:2
**third (3)**
161:22;179:15;212:8
**third- (5)**
160:18;161:23;
185:4,10;186:22
**third-party (6)**
161:18;182:6;184:8;
190:5;212:10,13

**thirteen (2)**
122:2;129:6
**thirteen-and-a-half (1)**
62:2
**thirty (2)**
147:13,16
**thirty- (1)**
30:11
**thirty-eight (1)**
57:24
**thirty-five (9)**
30:12,14;43:15,17;
45:20;109:11;117:10,
14;148:10
**thirty-nine (1)**
213:22
**thirty-plus (1)**
66:17
**thirty-six (1)**
22:22
**thorough (2)**
137:24;223:22
**thoroughly (1)**
118:12
**though (10)**
10:10;17:7;49:5;
93:25;112:16;126:9;
151:14;183:21;196:19;
197:18
**thought (20)**
22:6;37:5;50:20;
64:8,10;90:5;116:18;
147:21;153:20;156:8;
182:8,18;183:23;
187:20;198:7;217:7;
221:25;223:25;226:3,
15
**thousands (3)**
13:25;14:8;149:7
**thread (2)**
71:25;187:3
**three (19)**
12:1,9;22:9;37:25;
38:15;39:9;49:19;
53:25;71:19;73:5,18;
85:22;109:14;113:8;
118:9;134:8;138:25,
25;169:22
**three- (1)**
151:23
**three-billion-dollar-utility (1)**
99:2
**three-hour (2)**
138:24;139:1
**threshold (4)**
25:20;27:21;58:25;
94:6
**throughout (2)**
48:9;51:15
**throw (2)**
15:4;78:21
**thus (1)**
198:15

**thwarts (1)**
219:24
**ticked (1)**
94:12
**tie (1)**
106:24
**tied (3)**
148:11;182:6;226:10
**tight (1)**
28:18
**till (1)**
50:2
**time-consuming (1)**
75:24
**timeline (1)**
32:23
**timely (3)**
132:2,3;133:19
**times (6)**
7:17;25:15;89:19;
93:2;133:6;209:12
**time's (1)**
144:10
**timetable (4)**
84:9;132:3,20;
159:17
**timing (3)**
63:19;92:11;102:10
**Timothy (1)**
98:25
**tired (1)**
213:23
**titles (1)**
118:12
**today (50)**
10:10;13:12;19:17;
22:9;31:23;38:14,23;
39:5,10;41:13;42:20;
83:20;94:15,22;96:25;
107:18;114:1;121:3;
125:10;135:19,20;
136:11;145:2,15;
147:7,23;153:11;
155:20;157:19;164:8;
174:4,23;176:3;178:6;
180:21;182:13,16;
191:18;192:19;195:10;
196:15;202:1;204:3;
214:1,10,12,14,20;
218:20;224:13
**today's (4)**
11:7;16:22;19:8;
86:15
**together (21)**
37:23;38:4,4;43:14,
16;58:18;106:24;
116:25;118:11;122:13;
130:10;136:3;175:15;
207:5,9,18;226:17,17,
19,20;228:9
**told (7)**
52:2;73:7;122:25;
124:13;134:17;147:10;

155:23
**tomorrow (3)**
13:12;229:2,16
**took (4)**
79:24;183:21,23;
192:25
**top (3)**
7:18;73:12;159:19
**topic (1)**
31:17
**topics (1)**
40:22
**tort (30)**
7:8;56:10;61:8;
62:10;66:1;67:8;74:11;
78:1;93:21;121:23;
122:2,5;124:11,17;
126:24;131:13;133:9;
149:10;150:3;152:12;
153:10;154:13;158:8,
9;168:5;204:19,20,24;
205:5,7
**tort-claimant (1)**
67:11
**tortfeasor (8)**
204:20,22;211:21;
212:9,10,13,13,24
**torts (3)**
77:10;168:8,22
**toss (1)**
27:14
**total (1)**
181:3
**totally (1)**
153:12
**touched (1)**
224:2
**touchstone (1)**
186:14
**tout (1)**
227:22
**towards (1)**
107:9
**towel (1)**
78:22
**track (20)**
87:16;89:2,16;95:1;
106:1;117:12;119:23;
120:12;121:4;130:2,
14;135:15,16;146:18;
156:7;157:14,15;
178:11;221:16;222:7
**tracking (2)**
120:23;155:8
**trade (7)**
81:25;95:4,5,11;
96:9,13;113:24
**tradeoff (1)**
173:9
**traditional (5)**
127:6;128:5;145:4;
161:18;166:4
**transcript (5)**

23:12;25:2;75:25;
116:17,17
**transcripts (1)**
24:15
**transom (1)**
162:10
**trash (1)**
156:23
**travel (2)**
229:6,19
**traveling (1)**
23:4
**treat (2)**
22:10;92:1
**treated (2)**
131:18;161:17
**treatment (9)**
132:9,9;159:24;
160:3,12;204:5;
217:19;220:7;227:1
**treats (1)**
220:10
**tremendous (1)**
76:6
**trial (31)**
9:3;10:21;11:11,11,
18;13:23;14:22;18:16,
18,19;21:9;25:23,25;
26:3;64:16;70:13;
71:18;73:20;75:9;76:9;
85:25;129:2;137:25;
138:12,17;152:11,11;
157:3;158:2;187:20;
224:20
**tribunal (1)**
16:16
**tribunals (1)**
12:1
**tried (5)**
23:25;39:3;156:24;
172:10;178:11
**trigger (2)**
49:24;138:21;150:18
**triggering (1)**
109:20
**trouble (5)**
149:21;153:16;155:9
**Troy (61)**
48:10;50:7,7,8,9,24;
51:1,3,5,7,10,12,14,19,
21;52:1,3,5,7,19,24;
170:12;171:14;181:24,
25,25;182:4,11,22;
183:2,5,8,13,18,20,22;
184:3,11,22,24;185:20,
23;186:4,8,17,24;
187:2,6,10,15,17,24;
188:2,6,10,15;189:4,8,
14;194:4;195:17
**Troy's (3)**
47:15;172:16;177:1
**true (18)**
26:13;33:6;56:23;

Min-U-Script®

Case: 19-30088   Doc# 4467   Filed: 10/24/19   Entered: 10/24/19 14:35:11   Page 258
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(27) termination - true

58:23;123:25;136:16;
139:6,13,14,15,16,21;
143:6;144:18;191:13;
199:23;210:2;227:21
**truncated (3)**
11:10;74:23;75:4
**Trust (23)**
113:19;124:11;
191:10,11,19,20;192:3;
193:9;194:11,17,17;
202:21,23;206:17,20;
207:23,25;208:18;
209:7,8,15,24;211:12
**trustee (12)**
82:5;83:22;106:19;
108:21;112:24;113:23;
117:3;171:22,23;
172:3;176:17,21
**trustee's (2)**
117:1;229:8
**truth (1)**
140:4
**truthful (1)**
207:9
**try (23)**
11:13;37:23;39:2,9;
42:5;47:21;49:13;
65:18;90:23;93:2;
108:3;114:3;116:25;
145:15;166:22;173:16;
176:15;183:5;184:13,
13;189:5;200:17;
212:17
**trying (39)**
14:19,20;32:7;37:16,
22;45:7;47:14;56:3;
71:13,13;79:13;94:14;
95:1;102:12;103:20;
106:1;107:4;110:20;
111:17;121:4;126:23;
129:9;150:25;151:18,
24;152:8,23;153:8;
156:5,5,6;159:4;177:9;
187:3,3,8;201:18;
222:6,21
**Tubbs (30)**
8:7,8,12,15;9:15;
11:10,14;12:4,20,21;
13:22,25;21:9;33:5;
129:2;137:25;138:11,
17;152:11,11,15,17,22;
153:3,14;157:3;158:2;
179:22,24;224:20
**Tuesday (1)**
222:25
**turn (6)**
15:11;138:2;142:5;
148:16;193:12,18
**turned (1)**
178:25
**turning (1)**
179:22
**turns (3)**

101:8;193:24;195:14
**twelve (3)**
68:6;69:14,16
**twenty (5)**
176:20;217:5;
220:15;221:4,7
**twenty-billion (1)**
221:6
**twenty-five (12)**
29:15,18;45:21;
52:23,24,25;53:3,25;
109:14;149:11;150:10;
206:19
**twenty-five-and-a-half (1)**
63:2
**twenty-four (1)**
148:8
**twice (2)**
24:14,15
**two (65)**
7:10,13;12:8;14:13;
21:4;31:11,19;34:7,15;
36:16;37:25;38:16;
39:9,11;42:8;44:12;
53:23;66:15;71:14,18,
19;80:2;81:21;82:8;
84:3;85:22;86:3,5,16;
91:1;116:25;123:7,7;
134:8,9,9;139:11,13;
146:6;148:9;156:25;
157:11;158:25;159:12;
164:25;165:16;168:3;
169:23;170:9;172:21;
176:25;186:9;192:21,
23;199:12;201:9,11;
208:10;209:7;214:8;
215:1;218:19;219:7;
220:18,22
**two-million (2)**
197:7,8
**tying (1)**
218:13
**type (3)**
74:23;75:4;217:23
**typical (3)**
161:19;162:8;192:24

## U

**UCC (2)**
117:3;229:3
**ultimate (5)**
13:22;33:8;61:14;
167:4;206:16
**ultimately (3)**
175:25;187:10;
215:24
**Ultra (1)**
109:6
**Um-hum (8)**
7:15;8:21;9:7,19;
10:19;38:21;157:6;
159:25

**unconfirmable (2)**
164:14,15
**uncons (1)**
164:14
**Unconstitutional (1)**
164:15
**under (80)**
26:22;29:18;36:21;
38:17;49:20;57:9,13,
18;61:24;70:10,11;
71:17,18;73:21;80:12;
82:6,6;83:13,13;84:25;
108:21;112:25;121:23;
122:20;126:5;129:24;
132:13;142:15;143:1;
159:21,22;160:2;
162:19;164:24;165:2;
167:24,25;169:21;
176:23;177:2,6,21,21;
178:14,16;179:13;
186:7,8;194:24;195:3,
4;196:15;200:11;
201:9,14;202:7;
203:20,23;204:6,18;
206:5,16;207:4;208:8,
9,15;209:24;210:7;
211:7,11;212:14,18;
213:7;217:21;219:8;
221:1;227:3,23,24;
229:6
**under-funding (1)**
206:17
**undermine (1)**
122:21
**Understood (7)**
17:17;57:5;67:4;
148:12;157:20;185:16;
198:8
**underwrite (1)**
164:1
**undisputed (1)**
221:13
**unduly (1)**
168:1
**Unequivocally (1)**
65:25
**unfair (1)**
156:5
**unfairly (2)**
128:8;211:15
**unfortunately (3)**
113:22;222:16;
228:10
**unhelpful (1)**
169:20
**UNIDENTIFIED (9)**
53:15;88:15,18;
111:5;112:12,13;
119:13,17,20
**unilateral (4)**
190:7,12;199:6,21
**unimpaired (6)**
32:3;36:1;95:18;

97:15;143:21,23
**unintended (2)**
178:22;216:19
**unique (2)**
50:16;121:18
**uniquely (1)**
160:13
**UNISON (3)**
6:9;210:12;230:8
**United (3)**
150:6;181:18;182:1
**unknowns (1)**
157:2
**unless (15)**
9:11;12:15;16:21;
17:24,24;27:13;53:6;
56:17;127:20;130:21;
151:12;158:4,6;192:5;
197:25
**unlike (3)**
79:4;131:13,14
**unlimited (1)**
134:16
**unliquidated (2)**
46:18;50:16
**unnecessarily (1)**
158:22
**unnecessary (2)**
24:7;79:12
**unpleasant (2)**
56:16,17
**unprecedented (3)**
20:24;121:19;122:20
**unruly (1)**
157:25
**unsecured (11)**
15:19;18:11;29:20;
90:20,22;95:19;
104:14,23;142:5;
160:8;167:13
**unsecured-bank-debt (1)**
82:3
**up (103)**
7:17;18:22;23:25;
24:4,7,13;27:22;28:3,
16;30:15,16;31:6;32:7;
36:16;38:5;39:19;42:7;
44:14;49:5;51:14;52:6;
53:15;66:6,23;67:5;
68:17;70:6,10,25;72:4;
73:16;76:14;78:21;
87:5;102:12;103:6;
104:5;105:21;106:3,
12,24;110:22,23;
111:17;118:6;123:18;
124:5;133:11;135:6;
137:20;140:14,25;
141:14;144:10,16;
148:11;155:12,23;
159:17,22;161:6,13;
162:23;163:8,20;
164:8,11,23;165:1;
166:6;168:3,16;

169:16;170:22;178:14,
18,23;180:23,24,25;
181:22;188:5,12,15;
189:1,24;196:12;
200:9;203:10;206:13;
207:10,24;208:13;
213:10,10;214:9;
215:16;218:16;221:3,
20;223:14;225:5;
228:14
**updated (1)**
175:25
**updating (1)**
180:21
**upfront (1)**
85:1
**upon (12)**
34:8;36:5;61:4;67:6,
8;68:19;76:23;139:20;
143:23;147:5;161:16;
162:21
**urged (2)**
146:20;147:5
**use (9)**
15:2;36:11;40:22;
52:3,6;54:10;135:16;
149:10;153:9
**used (1)**
59:10
**useful (1)**
27:23
**using (1)**
164:9
**usually (1)**
187:22
**usurp (1)**
122:14
**utility (5)**
7:25,25;25:22;160:4,
8

## V

**valid (1)**
154:12
**validity (1)**
165:21
**validly (2)**
152:10;153:5
**valuation (8)**
59:17;73:7;126:10;
128:16;142:16;143:7;
168:11,11
**value (12)**
68:10,21;69:9;
126:24;130:18;142:23;
152:2;162:24;194:12;
197:1;206:11;207:25
**valued (1)**
206:12
**vaporize (1)**
133:20
**vaporizes (1)**

Min-U-Script®

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 259
of 261

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(28) truncated - vaporizes

133:13
**variation (1)**
38:3
**variations (1)**
144:1
**various (8)**
8:15;50:10;65:3;
90:25;92:23,24;
164:23;169:17
**vary (1)**
96:8
**vast (1)**
57:14
**verbatim (1)**
187:23
**verdict (4)**
9:6,21;13:22,25
**versa (3)**
50:19;158:11,11
**versus (4)**
40:5,7;108:2;213:11
**vet (1)**
165:21
**viable (3)**
56:11;76:15;178:13
**vice (4)**
50:19;158:11,11;
229:18
**victim (11)**
127:10;139:9;
150:11;152:16;192:6;
204:21;205:2;207:12;
211:14,20;213:11
**victims (15)**
12:20;90:22;139:6;
150:4;190:19;202:5;
204:5;206:18,24;
207:22;208:19;209:8;
214:2;215:5,20
**view (31)**
25:7;30:11;32:12;
47:16,16;50:15;66:11,
11;69:25;75:15;77:7;
83:11;99:16;126:3;
151:24;153:13,14,15;
156:6;157:11;159:12;
160:10;161:16;165:21;
170:13;186:8;197:15;
200:5;211:6;219:18;
225:19
**viewed (5)**
34:21;160:18;
161:18,22;213:13
**views (5)**
29:21;32:23;36:7;
117:1,2
**violate (3)**
59:23,24;79:20;
199:9
**violated (1)**
199:6
**violates (5)**
75:6;186:20;190:6,

20,21
**violation (3)**
160:15;181:6,8
**virtue (5)**
59:7;62:9,17;177:4;
209:7
**vis-à-vis (1)**
164:2
**vociferously (1)**
178:7
**volume (1)**
147:6
**voluntarily (1)**
199:3
**voluntary (7)**
183:24;185:17;
199:24;201:7;202:17,
18,19
**vomit (1)**
110:4
**vote (19)**
37:20;74:12;77:5;
80:13,14,15;125:2,4;
132:11;150:22,22;
151:4,7,11;180:12,14;
213:17;217:18;218:15
**voters (1)**
80:13
**votes (6)**
37:19;74:3;122:6;
180:19;181:5,7
**voting (4)**
74:9;125:7;132:9;
146:7
**vulnerable (1)**
62:18

**W**

**wait (18)**
35:21;49:18;50:2;
56:8;65:11;67:10;72:7,
7,9;73:6;76:25;84:13;
87:1;120:18;166:2;
182:17;218:18;220:8
**waiting (1)**
225:12
**waives (1)**
176:22
**walk (5)**
149:19;161:24;
183:5;184:16;218:5
**walked (1)**
226:16
**walking (1)**
156:15
**Wall (1)**
214:25
**wants (17)**
23:23;40:24;45:7;
53:7;54:16;55:7;56:18;
78:13;82:10;84:22;
111:22;113:4;132:22;

141:2;142:3;156:14;
188:21
**Wardwell (1)**
99:1
**warts (1)**
164:13
**wasted (1)**
34:15
**way (67)**
8:24,25;11:2;14:9;
15:24;16:10;19:12;
23:6;25:18;33:1;40:25;
42:5;57:8;58:7,7;
60:17,19;62:17;64:11;
66:15;69:17;77:24;
79:23;80:6;81:15;
86:21;100:23;110:2,3,
5;121:16;123:2,17,19;
132:5;140:4;145:7;
150:5;158:3;165:18,
20;167:7;168:22,23;
169:22;170:6,8,17;
171:12;180:22;181:13;
182:9;190:9,25;
197:19;201:8;202:3;
207:10;210:4;211:24;
212:23,23;216:19;
217:15,15,17;224:22
**ways (1)**
139:24
**WEDNESDAY (1)**
6:1
**week (9)**
13:13,13;85:22;
87:12;88:12,14;
154:16;156:15;222:24
**weekly (1)**
132:18
**weeks (16)**
34:16;39:9,9;71:18,
19;73:19,19;82:10;
85:22,22;86:3,6,16;
108:16;123:7,7
**weigh (1)**
115:22
**weighed (1)**
92:23
**weighing (2)**
115:21,22
**Weil (5)**
6:14;18:8;22:14;
121:14;213:25
**welcome (1)**
145:14
**Wells (1)**
133:17
**Wells' (1)**
134:11
**weren't (2)**
56:22;123:8
**what's (19)**
11:14,14;19:7;44:5;
72:16;90:18;92:14;

101:4;102:7;105:2;
110:19;120:25;169:20;
173:9;182:19;188:24;
194:16;211:5;219:18
**wheel (3)**
52:22;54:7;120:6
**whenever (2)**
216:24,25
**where's (1)**
177:10
**Whereupon (1)**
230:10
**whole (37)**
24:1;32:12;39:19;
56:3;59:11;107:3;
108:19;109:20;110:11;
111:11,20;112:8;
114:5;116:8;118:10;
119:5;143:9;147:25;
156:6;159:7;172:12;
173:11;190:24;191:2,
3;194:13,15;197:19;
198:20;206:14,15,19;
207:3,13,22;212:7;
219:25
**wholes (1)**
53:10
**Who's (7)**
7:3;24:6;28:5;48:17;
98:23;104:4;229:17
**whose (2)**
50:22;152:16
**wildfire (10)**
101:23;183:18;
188:19;204:5;205:2,2,
4,4,5,18
**willing (13)**
40:22;63:3;69:7;
100:21;134:2,22;
135:2,6;160:19;
175:16;181:11;189:8;
193:16
**Wilmington (1)**
113:19
**win (2)**
26:12;179:24
**wind (2)**
178:18,23
**window (2)**
138:20;219:2
**WINTHROP (33)**
48:12,13,18;50:5;
51:8;52:25;53:2,5;
189:25;190:1,2,4,18,
25;191:7,11,15,21,24;
192:1,11,13;194:4;
197:4,25;198:4,7,13,
24;199:3,7,19;200:1
**Winthrop's (2)**
195:22,23
**wipe (1)**
214:16
**wiping (1)**

208:15
**wish (3)**
90:20;229:9,10
**wishes (2)**
36:19;89:6
**withdraw (2)**
128:13;168:24
**withdrawal (1)**
168:23
**withdrawn (3)**
126:15;128:10,12
**within (5)**
30:12;59:20;171:15;
192:4,9
**without (8)**
19:8;38:23;39:10;
70:12;132:13;163:22;
196:8;214:23
**witnesses (9)**
11:15;12:19,20;
16:11;17:20;19:24;
20:1,2;76:9
**wizardry (1)**
203:15
**wonderful (1)**
223:21
**word (7)**
68:14;110:4;123:18;
144:8;164:14;190:17;
216:20
**words (17)**
6:20;11:19;20:16;
31:18;36:11;59:10;
60:9;63:20;64:24;
93:10;97:2;122:18;
129:11;153:19;164:9;
170:14;203:12
**work (20)**
13:12,12;20:17;
30:22;39:3;42:23;61:6;
66:15;76:6;86:2;101:3;
107:18;110:21;114:3;
115:22;123:2;132:13;
137:3;161:5;164:15
**workable (2)**
107:7;108:18
**worked (2)**
76:14;122:24
**working (3)**
81:7;99:22;115:3
**works (4)**
85:25;135:24;
158:10;194:22
**world (4)**
66:14;69:17;83:11;
202:20
**worried (1)**
223:12
**worry (4)**
122:3;131:3,4,5
**worth (3)**
95:11;180:20;191:13
**wrap (1)**

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 260
of 261

118:6
**write (8)**
19:23;20:18;69:5,8;
71:20;98:10;137:2;
145:8
**writers (1)**
44:25
**writing (2)**
15:1;137:18
**written (3)**
116:17;163:25;167:3
**wrong (12)**
48:10;76:23;133:15,
15;140:21;149:20;
164:14;199:12;211:24;
212:19,22,23
**wrongful (1)**
128:15

## Y

**years (2)**
213:21;215:1
**Yep (2)**
65:1;83:10
**yesterday (12)**
23:10,13;31:8;35:21;
41:22;47:19;68:11;
87:25;88:1;104:15;
105:4;169:24
**yesterday's (1)**
75:25
**York (2)**
106:19;109:15

## Z

**Zabel (2)**
104:8;158:19
**zone (1)**
58:8
**Zumbro (51)**
35:15;36:2;45:9,11,
15,16,18,18,24;46:7,9,
12,25;47:15,24;48:4,
14,21,25;49:2,3,5,8,16,
23,25;52:23;53:4,17,
20,22;54:3,5,9,12,23;
55:7,8,12,15,17;118:7;
228:15,17,19,19,22;
229:1,22;230:2,4
**Zumbro's (1)**
44:13

## 1

**1 (7)**
53:12;54:23;79:8,8,
9;80:17;150:3
**10 (3)**
6:10;30:18;119:5
**10/25 (2)**
28:20;30:11

**100 (1)**
62:6
**101 (1)**
204:18
**105 (1)**
153:6
**1054 (16)**
56:11;58:9;72:8;
76:17;131:24;133:5,
19;153:13;190:6,16,18,
22;193:21;199:6,11,14
**10th (1)**
71:21
**11 (7)**
56:10;84:16,16;
85:18;135:25;150:3;
193:1
**11/15 (1)**
28:20
**11/19 (1)**
28:20
**11:54 (1)**
118:3
**1121 (2)**
122:20;123:10
**1123a4 (3)**
159:22;160:15;
162:18
**1125 (1)**
181:6
**1129 (2)**
65:4;80:24
**1129a (2)**
73:20;74:19
**1129a3 (1)**
162:19
**1129b (1)**
168:25
**1129c (4)**
145:22,22;146:13;
219:10
**11-billion-dollar (1)**
202:2
**11th (9)**
23:22;42:17,19,21;
43:1,5,11;84:15;119:5
**12 (2)**
54:25;119:17
**12:08 (1)**
118:3
**12th (2)**
46:21;55:8
**13 (4)**
51:24;63:11;87:6,9
**13.5 (10)**
62:6;63:10,11;68:19;
70:7;72:1;137:7;150:4,
6;206:12
**13.6 (1)**
62:6
**134 (2)**
180:23;181:2
**13th (4)**

43:21;221:23;
223:25;227:17
**14 (4)**
44:7;88:18,20;
206:12
**14.5 (3)**
63:7;137:5;139:9
**14.5-billion-dollar (1)**
21:7
**14th (6)**
88:15,19,25;111:4;
116:12;119:7
**15 (3)**
49:21;54:24;119:10
**15.8 (3)**
202:3,4;207:15
**15th (7)**
23:22;28:6,14;30:13;
46:19;49:19;53:24
**16th (6)**
23:2,9;33:25;42:12,
21,22
**17th (5)**
46:22,24;54:2;55:1;
119:12
**18th (2)**
71:17;87:17
**19th (3)**
28:19;30:19,20
**1st (4)**
46:18;49:6;53:21;
119:10

## 2

**2 (1)**
218:4
**2.5 (1)**
209:10
**2:21 (1)**
230:10
**20 (3)**
62:6;119:6;202:3
**2019 (4)**
6:1;95:8,9;104:15
**20th (3)**
110:25;112:11;
116:11
**21 (2)**
43:21;87:9
**21st (8)**
46:9;73:18,18,22,23;
74:17;77:2;87:6
**22nd (6)**
23:22;42:10;43:10;
84:14;85:18;119:4
**23 (1)**
6:1
**23rd (1)**
86:15
**24th (3)**
59:2;76:2;122:12
**25.5 (6)**

62:19;63:4;78:2;
150:1,2;153:9
**25th (1)**
23:21
**27 (1)**
119:6
**27th (4)**
110:18,25;116:10;
122:12
**2b2 (1)**
225:22

## 3

**30 (1)**
139:10
**30b6 (1)**
12:23
**30th (1)**
131:24
**3289 (1)**
96:14
**350 (1)**
115:17
**363 (1)**
162:19

## 4

**4 (1)**
209:9
**4.3 (2)**
68:11,13
**40 (1)**
62:6

## 5

**5 (2)**
54:25;218:5
**502c (9)**
38:2;44:13;46:2;
51:17;54:17;89:3;
118:11;119:8;167:25
**509 (5)**
204:6,9;206:16;
207:4;208:15
**510 (1)**
147:18
**5b (1)**
160:4
**5th (6)**
46:20;49:20,21;54:2;
119:11,14

## 6

**6 (5)**
7:17;85:2;87:6,6,12
**6,000 (1)**
215:20
**6.5 (3)**
150:7;209:11,14

**6.9 (5)**
66:1;68:18;70:6;
71:25;155:11
**6-1/2 (2)**
150:5;155:14
**670 (1)**
160:9
**6b (1)**
160:4
**6th (7)**
43:21;44:2,3,8;
82:12;85:8;88:24

## 7

**7th (2)**
129:22;130:6

## 8

**8 (1)**
84:14
**8.4 (6)**
66:3;155:11,13;
208:2;213:18;214:2
**8.4-billion- (1)**
209:14
**8th (7)**
42:6,10;43:9;85:18;
114:16;115:19;119:4

## 9

**9019 (19)**
31:23;117:25;
121:12;145:15;147:18,
25;154:3;158:17;
176:24;177:2,21;
179:13;187:10;191:23;
195:24;208:8;210:7;
213:13;214:12

Case: 19-30088    Doc# 4467    Filed: 10/24/19    Entered: 10/24/19 14:35:11    Page 261
of 261