US Bankruptcy Court
Mailbox 36099
450 Golden Gate Ave.
San Francisco, CA, 94102

William B. Abrams
1519 Branch Owl Pl.
Santa Rosa, CA, 95409
(707) 397-5727



RE: Case Number 19-30088-DM    October 8, 2019

To the Honorable Judge Montali:

Unfortunately, it seems that wildfire survivors will commemorate this two-year anniversary of the PG&E north bay wildfires with a prolonged power outage. As communities scramble to prepare because PG&E has not successfully mitigated wildfire risks that might be caused by their grid, I want to provide some additional perspective given the recent developments in the bankruptcy proceeding. Specifically, I hope to describe some obstacles to claimant participation in this proceeding and propose remedies for Your Honor's consideration. While PG&E seeks handouts from everyone and anyone to pay for their future wildfire liabilities (ratepayers, taxpayers, etc.) and dilute their accountability through lobbying efforts and regulatory relaxation, wildfire survivors are concerned for other citizens in their community who might suffer as a result of the claim they make in this proceeding. This contrast in empathy and action dramatically impacts the participation rate and can be addressed in this proceeding.

Wildfire survivors worry that a dollar claimed to rebuild their lives and their homes is a dollar taken away from PG&E wildfire risk mitigation activities and/or a dollar taken away from future wildfire survivors that might be worse off. While far from factual, this sentiment is reinforced by PGE's lack of commitment to an effective wildfire mitigation strategy. PG&E has substituted a wildfire mitigation strategy to keep them out of future bankruptcies with a financial risk avoidance strategy on the backs of residents across the State of California. The bankruptcy process requires that PG&E demonstrate that they will not end up back in bankruptcy but instead of achieving this through measured risk mitigation they address this by exerting political pressure to establish a $21B wildfire fund with complementary reductions in safety regulations. Despite PG&E's safety record they somehow managed to successfully lobby to move from an annual wildfire mitigation planning process tied to performance in phase 2 to a triennial process with zero performance metrics required through the legislation. Given that the damages from 2017 and 2018 were more than double this fund amount, this should not suffice as a remedy in this bankruptcy proceeding. I urge Your Honor to consider the likelihood of PG&E ending up right back in bankruptcy with their next round of wildfires.

Additionally, please consider that the cornerstone of any corporate risk mitigation plan is the percent of risk reduction provided by proposed tactics. This key data point is nowhere

represented in the PG&E wildfire mitigation plan. Indeed, the PG&E plan has zero measured risk reduction and instead proposes activity metrics (trimming trees, replacing lines, etc.) in the hopes that these poor substitutes will suffice. Due to this apparent disconnect, I urge Your Honor to consider the following two metrics as the primary tools for evaluating whether any PG&E settlement agreement appropriately balances short-term payouts and long-term safety/security to avoid future bankruptcies:

- **Absolute Risk Reduction (ARR)** – The PG&E settlement agreement must indicate the specific amount of risk reduction their plan poses and this should be heavily weighted in your decision-making process. The reduction in risk provided by all PG&E proposed tactics (undergrounding, covered conductors, micro-grid, etc.) is the only measure to effectively evaluate whether or not PG&E will end up back in bankruptcy with the next round of wildfires.

- **Return on Safety (ROS)** - If PG&E takes on this type of metric to complement their other financial metrics (ROI, ROE, etc.), this could serve as a tool for executive compensation structure and provide assurances to stakeholders that PG&E is on the right path in terms of furthering a corporate safety culture. This measure can simply be demonstrated as a percent of incremental safety achieved through their proposed dollar value of safety investment.

If these types of metrics are employed through this proceeding to evaluate the efficacy of a proposed settlement agreement, it will provide greatly needed assurances to wildfire survivor claimants and all stakeholders that future wildfire survivors will not be left at greater risk due to the otherwise short-term dollar objectives associated with this proceeding. I respectfully request that Your Honor consider extending the October 21st deadline for claims to be submitted by two months to allow PG&E to formulate and communicate these metrics. If PG&E does not adequately meet these requirements, I suggest you consider alternative proposals like those offered by Elliott Management Corp. and Pacific Investment Management Co. and similarly require them to provide these metrics.

Certainly, I understand that as PG&E continues to falsify documents and balance the fine line between illegality and just poor management, it leaves Your Honor in a very difficult position particularly given the limited number of non-monetary issues that can be addressed within a bankruptcy case such as this. However, this issue of wildfire risk mitigation should be at the heart of the decision-making relative to any settlement agreement that is put forward.

Respectfully Submitted,

William B. Abrams
Sonoma County Resident
On Behalf of the Abrams Family