

Signed and Filed: October 28, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>     - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

ORDER APPOINTING MEDIATOR

    In March, 2003, in the first PG&E bankruptcy (by the Utility only), the court ordered mediation. In its order it made the following observation:

> The court has considered those requests and has reflected on the history of this case (which reaches its second anniversary on April 6th), the staggering expense to be incurred by all parties as a result of further delay, and the fact that the two competing plans pay creditors in full and

-1-

> that the proponents of those plans differ primarily about the environment within which the Debtor or the disaggregated entities will function in a post-confirmation world. The court is quite aware of the philosophical differences that separate Debtor and its parent from CPUC and the other non-private objectors in particular. (Case No. 01-30923, Doc. No. 12296, March 4, 2003, at 1-2)

A resolution followed with the help of an experienced mediator.

Now, more than sixteen years later in the Utility's second case (this time with parent company), the need for mediation is far more obvious and the stakes unbelievably higher. After presiding over every hearing in these chapter 11 cases over the past nine months, the court is convinced that mediation should be attempted once again.

Certain parties are polarized; the emotions are running higher and higher, the staggering costs (economic and otherwise) are multiplying daily and very recent events that need not be repeated here but are obvious to everyone in Northern California might make a successful reorganization even more of a challenge.

On top of that, the clock is ticking on AB 1054 while the Tubbs Fire trial looms in January and the district court estimation hearings follow right behind in February.

Meanwhile, as stated frequently by the court and others, thousands of wildfire victims, who stand before the court as involuntary creditors, await some resolution, albeit imperfect, to try to restore their economic losses, consistent not only with AB 1054, but more importantly, as compelled by the moral necessity of doing so.

Under the extraordinary exigencies of the situation and the expressed willingness of some of the principal parties to participate in mediation, the court will exercise its inherent authority under 11 U.S.C. § 105 and order the principal parties to make a good faith effort to mediate whatever issues can be identified with the help of the same experienced mediator. The obvious goal is to confirm a chapter 11 plan in order to set in place the next stage of the complex process of compensating those victims for their losses.

At the same time the numerous parties who chose to be creditors (in most instances unsecured creditors entitled to the same priority under the bankruptcy code), are equally entitled to what is due to them under applicable law.

Finally, based upon the current apparent state of things, equity owners are entitled to consideration of their rights under whatever alignment or realignment may follow as part of a chapter 11 plan.

For all of the forgoing reasons, and the myriad other reasons well-established in the complex record of these cases to date,

IT IS HEREBY ORDERED, that Retired Bankruptcy Judge Randall J. Newsome ("Mediator") is appointed Mediator in these cases.

Mediator shall serve at the expense of the estate beginning as of the date of this order. He is entitled to be paid at hourly or daily rates (as regularly adjusted in accordance with his normal practice) as charged by him through JAMS where he regular performs as a mediator, plus his reasonable and necessary expenses (including lodging and travel) and a JAMS

management fee (to be determined) as set forth in the attached schedule.

He is entitled to be paid by Debtors monthly upon his submission of monthly billings setting forth total time charges and a listing of his expenses, with copies provided to the United States Trustee and counsel for the two official committees. He is not required to submit detailed applications or otherwise comply with the procedures in place for professionals employed under Sections 327 or 1103 pursuant to this court's Guidelines For Compensation and Expense Reimbursements of Professionals, similar orders issued to date in these cases or the pending Fee Examiner protocols. He is required to maintain time records. His final compensation and allowance of expenses are subject to court approval upon completion of his services as Mediator.

The provisions of B.L.R. 9045-2(a), (b) and (c) regarding attendance at, or failure to attend, mediation sessions (whether in person, by video conference or telephone) as called by the Mediator shall be deemed to apply as to parties and their professionals and advisors. So too will the provisions of B.L.R. 9047-1 (a), (b) and (c) regarding confidentially. Other provisions of the civil and bankruptcy local rules apply as applicable, including B.L.R. 1001-2(b) and Civil. L.R. 16-8(b)(2) and ADR Local Rules 7-2 and 8-2).

Because of the time pressures on all parties, the Mediator and the court, all should understand that the court expects and directs all parties and their professionals and advisors to comply with any reasonable requests by the Mediator for active

-4-

attendance at and participation in any conferences or request by him for production of documents (as widely defined as possible). And because of limited resources of both the court and the Mediator, Debtors are directed to provide by overnight delivery hard copies of any items on the docket that he requests.

The court expects that once the Mediator has made initial contact with the principal parties and their professionals and advisers and has assessed the challenges he faces, he may decide (with or without their consent) to recommend the appointment of one or more additional mediators who possess needed requisite expertise and experience to join him in his efforts. He should do that on an expedited basis, with notice to the principal parties. The court expects to act promptly on any such recommendation.

**\*\*END OF ORDER\*\***



# Mediation Fee Schedule
*Hon. Randall J. Newsome (Ret.)*

**PROFESSIONAL FEES**

**Daily Rate.** ................................................................. $7,500
Includes up to 8 hours of session time on the scheduled day.

**Half Day Rate** ............................................................. $4,500
Includes up to 4 hours of session time on the scheduled day.

- Other professional time (including additional session time, pre- and post-session reading and research, and conference calls) will be billed at $750 per hour.
- All travel expense are billed at actual cost

**CASE MANAGEMENT FEE**

- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.

JAMS agreement to render services is with the attorney, the party, and/or other representatives of the party.

Sacramento • San Francisco • Santa Rosa • Silicon Valley • Walnut Creek
www.jamsadr.com • Updated 05/01/19

Case: 19-30088    Doc# 4499    Filed: 10/28/19    Entered: 10/28/19 16:24:27    Page 6 of 6