# Milbank

**ALAN J. STONE**

*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5285
astone@milbank.com  |  milbank.com

November 4, 2019

**VIA ECF**

Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

> Re: *In re PG&E Corporation*, Case No. 19-30088 (DM) (Jointly Administered)

Dear Judge Montali:

I write on behalf of the Official Committee of Unsecured Creditors (the "Creditors' Committee") of PG&E Corporation and its affiliated debtors (collectively, the "Debtors") to seek Your Honor's guidance on the Debtors' refusal to produce a key company witness and critical documents necessary for us to assess the propriety of and present need for the relief requested in the *Debtors' Motion for Entry of Orders (I) Approving Terms of, and Debtors' Entry Into and Performance Under, Exit Financing Commitment Letters and (II) Authorizing Incurrence, Payment, and Allowance of Related Fees and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims* (the "Motion") [Docket No. 4446].

The Debtors filed the Motion well past business hours on Wednesday, October 23, 2019, seeking authorization to enter into certain Exit Financing Commitments[1] and Debt Financing Commitment Letters (collectively, the "Financing Commitments") and to pay related fees, premiums, and other costs as administrative expenses. The fees associated with the Financing Commitments may amount to over $900 million, all payable by the estate, at a time where a credible, competing, and potentially confirmable plan remains on the table.

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

November 4, 2019
Page 2

On Monday morning, October 28, 2019, the Creditors' Committee issued document requests and notices of deposition to the Debtors.[2]  The Creditors' Committee noticed the depositions of (i) Jason P. Wells, Senior Vice President and Chief Financial Officer of PG&E Corporation, (ii) a Rule 30(b)(6) witness for the Debtors, and (iii) Kenneth S. Ziman, Managing Director at Lazard Freres & Co. LLC (and declarant here).  The Creditors' Committee also issued a set of requests for the production of documents to the Debtors.

On October 30, 2019, counsel to the Debtors stated that the Debtors would only make Mr. Ziman available for deposition in an individual and Rule 30(b)(6) capacity.  The Debtors refused to make company employee, Mr. Wells, available for deposition because doing so would be "unduly burdensome," "duplicative," and "unnecessary."  On October 31, 2019, the Debtors served responses and objections to the Creditors' Committee's document requests and deposition notices stating, in relevant part, that the Debtors would ***not*** produce documents related to, nor a witness to testify on, among other things, (i) the process by which the Debtors solicited potential financing parties or (ii) the Debtors' potential need for additional financing.

The Creditors' Committee objects to these positions and has repeatedly attempted to engage the Debtors, but has been unable to reach resolution.

### *Deposition Testimony of PG&E SVP and CFO Jason P. Wells*

The Debtors' Motion is premised on the notion that the Financing Commitments represent a sound exercise of the company's business judgment.  *See, e.g.*, Motion at 25.  Mr. Wells is the only witness noticed by the Creditors' Committee who is actually a company employee—making his testimony not only warranted, but essential.  The Debtors seek authority to commit potentially vast amount of fees from the estate under section 363(b)(1) of the Bankruptcy Code.  Determining whether to authorize a transaction, particularly of this magnitude, requires the Court to assess whether the Debtors exercised proper business judgment—that is, whether the Debtors acted on an informed basis and in good faith.  The testimony of a company employee is fundamental to such an inquiry.  *See In re Global Crossing Ltd.*, 295 B.R. 726 (Bankr. S.D.N.Y. 2003) (noting that courts will not interfere with the decisions "of corporate decision-makers" where a showing of the decision-makers' disinterestedness, due care, and good faith is made); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (explaining that the business judgment standard is satisfied where a corporation's decision-makers "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company").  It is not disputed that Mr. Ziman acts not as a corporate decision-maker for the Debtors, but "as advisor to the Debtors in their Chapter 11 Cases."[3]  The testimony of Mr. Ziman, both in an individual capacity as an advisor to

---

[2]   The Ad Hoc Committee of Unsecured Creditors (the "AHC") and Official Committee of Tort Claimants ("TCC") also issued discovery requests to the Debtors, incorporating in part the Creditors' Committee's requests.

[3]   *See Declaration of Kenneth S. Ziman in Support of the Debtors' Motion for Entry of Orders (I) Approving Terms of, and Debtors' Entry Into and Performance Under, Exit Financing Commitment*

the Debtors and as a Rule 30(b)(6) witness for the Debtors, does not satisfy the need for testimony from a company decision-maker who had a duty to exercise business judgment.

Counsel to the Debtors further noted that Mr. Wells' deposition would be unnecessary in part because Mr. Wells previously sat for a deposition in a Rule 30(b)(6) capacity on October 11, 2019, three weeks ago, in connection with the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of Settlement with Such Consenting Subrogation Claimholders, Including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* [Docket No. 3992].  That matter is separate and distinct from, and the deposition predated, the instant motion, and thus did not cover critical aspects of the Motion, including the negotiation and appropriateness of the Financing Commitments, the impact of the fees related to the Financing Commitments on the plan process, and analyses of alternative financing commitments.  Moreover, counsel to Mr. Wells repeatedly objected to questions relating to exit financing as outside the scope of the deposition and, on more than a few occasions, instructed Mr. Wells to not answer such questions.  But even the testimony that Mr. Wells was permitted to provide on this topic (over counsel's objection) appeared to conflict with certain representations in the Motion and in Mr. Ziman's declaration.[4]  The Creditors' Committee should be permitted to probe these topics with Mr. Wells.

Finally, and not insignificantly, the Debtors' circumstances have dramatically changed since October 11: PG&E has identified at least one large-scale post-petition fire to which its equipment may have contributed, which may impact certain rights and conditions precedent to parties' funding obligations under the Financing Commitments.  *See* Motion at 4 ("Given the length of the commitments, the Equity Backstop Parties required certain termination rights and conditions precedent to their funding obligations, principally regarding unexpected material adverse events such as pre-petition wildfire claims exceeding an agreed threshold, adverse regulatory determinations, significant post-petition wildfires and material non-ordinary course asserted administrative expense claims.").  Contemporaneous testimony from a company witness on these topics is warranted.  In sum, Mr. Wells' October 11 deposition testimony does not in any way render a deposition in connection with the Motion unnecessary or duplicative.

### *Documents and Testimony Regarding Solicitation Process and Additional Financing*

The Creditors' Committee further objects to the Debtors' apparent refusal to produce documents related to financing parties the Debtors solicited, pitch materials received from those parties, the process by which the Debtors solicited potential financing parties, and the Debtors'

---

*Letters and (II) Authorizing Incurrence, Payment, and Allowance of Related Fees and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims* [Docket No. 4447] at ¶ 6.

[4]  The Debtors have designated the relevant portions of the October 11 deposition transcript as professional eyes only.  The Creditors' Committee will present the relevant portions of that testimony to the Court under seal should it become necessary.

potential need for additional financing beyond that requested in the Motion.[5]  A movant under section 363(b) "must establish a business justification for the transaction and the bankruptcy court must conclude, ***from the evidence***, that the movant satisfied its fiduciary obligations and established a valid business justification."  *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 422 (Bankr. S.D. Tex. 2009) (emphasis added); *see In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (finding that in considering a motion under section 363(b), a court must "expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application").  In brief, the Debtors must provide evidence of good and sound business reasons for the proposed transaction.  Assessing this requires a deep understanding of the Debtors' solicitation process, including the amount of time and resources expended in seeking and reviewing alternative financing commitments, the number of potential alternative financing commitments reviewed, and the Debtors' process for conducting such review.[6]  Similarly, assessing whether the Debtors' decision to enter into the Financing Commitments constitutes a valid exercise of business judgment depends, in part, on whether and to what extent the Debtors may need additional financing on top of the financing contemplated in the Motion.

***

The Creditors' Committee has repeatedly attempted to meet and confer with the Debtors on these issues without success.  Because the Creditors' Committee's response to the Motion is due in short order, we respectfully request that the Court schedule a telephonic conference to allow the parties to be heard and the Court to determine an appropriate resolution of these issues.[7]

Sincerely,

*/s/ Alan J. Stone*

Alan J. Stone

---

[5]  The Creditors' Committee requested, in relevant part, (i) "all Documents and Communications concerning alternative financing commitments considered by the Debtors, including all potential financing parties the Debtors solicited, all pitch materials received from all potential financing parties, [and] the process by which the Debtors solicited all potential financing parties" and (ii) "[a]ll Documents and Communications concerning the Debtors' potential need for additional financing."

[6]  The Motion makes much ado of the Debtors' solicitation process, citing "extensive negotiations" (*see* Motion at 9, 12), evaluation of alternative proposals (*id.* at 11), and ultimate determinations regarding the "better course for the Debtors and their stakeholders" (*id.* at 9).  These representations purportedly support the reasonableness of the Financing Commitments of which the Debtors seek approval, and, in so doing, necessarily open the door for discovery on them.

[7]  Despite having the Creditors' Committee's document requests for a full week, the Debtors are yet to produce a single document, and have represented that their production may not be completed until Wednesday.  In light of this, the Creditors' Committee reserves the right to seek to adjourn the hearing on the Debtors' Motion.