WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and – <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> *\* All papers shall be filed in the Lead Case No. 19-30088 (DM).* | Bankruptcy Case <br> No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) (Jointly Administered) <br><br> **DECLARATION OF DANIEL BOWMAN IN SUPPORT OF DEBTORS' SUPPLEMENTAL APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY PRICEWATERHOUSECOOPERS LLP AS MANAGEMENT, TAX, INTERNAL ACCOUNTING, AND ADVISORY CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE** <br><br> **[No Hearing Requested]** |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Daniel Bowman, being duly sworn, state the following under penalty of perjury:

I am a principal at PricewaterhouseCoopers LLP ("**PwC**"), an accounting and financial services firm that maintains offices at Three Embarcadero Center, San Francisco, California 94111. I am duly authorized to make this declaration (this "**Supplemental Declaration**") on behalf of PwC and submit it (a) in support of the *Supplemental Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* (the "**Supplemental Application**") and (b) in compliance with the *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 2230] (the "**Retention Order**").[1] Unless otherwise stated in this Supplemental Declaration, I have personal knowledge of the facts set forth herein.[2]

More specifically, I submit this Supplemental Declaration in connection with the proposed continued and expanded retention of PwC as management, tax, and advisory consultants for PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") to perform those engagements summarized in the Supplemental Application (the "**Supplemental Engagements**").[3]

By way of background, on May 1, 2019, the Debtors filed the *Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, and Advisory Consultants to the Debtors Nunc Pro*

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Supplemental Application.

[2] Certain disclosures herein relate to matters within the personal knowledge of other professionals at PwC and are based on information provided by them.

[3] The summary of the Supplemental Engagements included in this Supplemental Declaration is provided for purposes of convenience only and is qualified in its entirety by reference to the Supplemental Engagements. To the extent that this Supplemental Declaration and the terms of a particular Supplemental Engagement are inconsistent, the terms of the Supplemental Engagement shall control.

*Tunc to Petition Date* [Docket No. 1791] (the "**Original Retention Application**"). In support of the Original Retention Application, the Debtors filed the *Declaration of Daniel Bowman in Support of Debtors' Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1792] (the "**Bowman Declaration**"). The various engagements described in the Original Retention Application and the Bowman Declaration (the "**Original Engagements**") included, but were not limited to various management, operations and legal support activities, strategic analysis services and bankruptcy tax and accounting advisory services.

On May 24, 2019, the Court entered the Retention Order approving the Original Retention Application and authorizing PwC to perform the Original Engagements *nunc pro tunc* to the Petition Date. Many of the Original Engagements were subject to work orders that, consistent with historical practice between PG&E and PwC, were for a set term of short duration (e.g., three to four months) and, by the terms of such agreements, required written extensions executed by the parties in order for such work to continue.

At various times following the Petition Date, the terms of the Original Engagements expired but the Debtors requested that PwC continue such work so that the various management, tax, and advisory consulting service projects that were the subject of the Original Engagements approved by the Retention Order could continue without interruption as any delay in the performance of such services would clearly be detrimental to the Debtors' estates. Additionally, following the Petition Date, the Debtors requested that PwC undertake several entirely new projects in connection with the Chapter 11 Cases that were consistent with PwC's core capabilities and expertise.

In an effort to ensure continued and uninterrupted provision to the Debtors of necessary services, PwC and the Debtors entered into agreements for several Supplemental Engagements described in greater detail below, recognizing that such agreements would ultimately need to be approved by the Court upon supplemental application.

The scope of the continuing and additional work contemplated by the Supplemental

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Engagements is summarized as follows:

Executed Extensions of Previously Approved Services. Pursuant to the terms and conditions of that certain Master Services Agreement, dated as of January 17, 2017 (previously attached to the *Bowman Declaration* [Docket No. 1792, Exhibit 1] (as amended June 3, 2019, the "**Master Services Agreement Amendment**", attached hereto as **Exhibit 1**), including eight expanded contracts and eight new contracts related thereto (the "**Supplemental MSA Contracts**") by and between the Debtors and PwC (such Supplemental MSA Contracts, collectively with the Master Services Agreement, and the Master Services Agreement Amendment, the "**MSA**"), attached hereto as **Exhibits 1-A through 1-U**, PwC continues to provide management and advisory services to the Debtors, to the extent expressly required by and as more particularly described in the applicable agreements.

    A.    <u>Fixed-Fee Engagements – Extensions of Previously Approved Services</u>

        (i)    Assist the Debtors with their corporate incident reporting processes related to the 2017 North Bay Fires and 2018 Camp Fire and other major events in the Debtors' service territory, including, operations and legal support activities (the "**North Bay Services**" and "**Camp Fire Services**", as described in **Exhibits 1-A through 1-F** hereto);

        (ii)    Assist the Debtors in implementing a digital contract management process, including, but not limited to: implementing a model to assist the Debtors with design recommendations, assisting with the data migration; testing, deployment and implementation of the new business processes (the "**IT Implementation Services**", as described in **Exhibit 1-G** hereto);

    B.    <u>Hourly Fee Engagements – Extensions of Previously Approved Services</u>

        (iii)    Perform forensic collection of data from electronic devices related to the 2017 North Bay Fires and 2018 Camp Fire (the "**E-Discovery Services**", as described in **Exhibits 1-H** and **1-I** hereto);

        (iv)    Provide assistance and support services related to the Debtor's general rate case, including certain administrative and logistical support tasks (the "**Rate Case Support Services**", as described in **Exhibit 1-J** hereto);

    C.    <u>Fixed Fee Engagements – Additional Services</u>

        (v)    Assist the Debtors in assessments of their compliance with Rule 21 of the California Public Utilities Commission ("**CPUC Rule 21**"), including but not limited to: readiness assessment and roadmap (the "**Rule 21 Readiness Services**", as described in **Exhibit 1-K** hereto);

(vi) Assist the Debtors in pilot assessment of their compliance with CPUC Rule 21, including assessment of their program, including, but not limited to: reviews of the compliance program elements, analyzing documentation, drafting results of assessment, and supporting its compliance (the "**Rule 21 Pilot Testing Services**", as described in **Exhibit 1-L** hereto);

(vii) Perform observations of data from third party vendors' e-discovery process and provide observations and project management supplemental support regarding the Debtors' vendors compliance, including, but not limited to: reviews of the underlying contractual requirements, perform interviews, observe work processes, and documenting observations related to the third party vendors for the Debtors' consideration (the "**Legal Observation Support Services**", as described in **Exhibit 1-M** and **Exhibit 1-N** hereto);

(viii) Assist the Debtors in response to compliance assessments with the Federal Energy Regulatory Commission Wholesale Distribution Tariff ("**WDT**"), including but not limited to: training and assist in the development of interim controls tracking dashboard (the "**WDT Support Services**", as described in **Exhibit 1-O** hereto);

(ix) Assist the Debtors with their approach and response reporting processes related to the Community Wildfire Safety Program through the Public Safety Power Shutoff ("**PSPS**") program, including but not limited to: process development of the program, documentation and training, and execution of the PSPS program (the "**PSPS Program Support Services**", as described in **Exhibit 1-P** hereto);

(x) Assist the Debtors with their approach and assessment of the organization of the Debtors' Chief Security Officer organization (the "**CSO**"), cybersecurity division, including but not limited to: recommendations regarding preliminary organization, governance, and operating model recommendations within the PG&E CSO organization (the "**Cybersecurity Assessment Services**", as described in **Exhibit 1-Q** hereto);

(xi) Assist the Debtors with their reorganization effort and coordinate all aspects relating to the Electric Business Operations ("**EBO**"), including, organizational design, governance model, reporting and program management support activities (the "**EBO Reorganization Support Services**", as described in **Exhibit 1-R** hereto);

(xii) Assist the Debtors with the implementation of a Governance Risk and Compliance ("**GRC**") software platform, including but not limited to: supporting procedures, job aids, training materials and user guides (the "**Metric Stream Implementation Services**", as described in **Exhibit 1-S** hereto);

(xiii) Assist the Debtors with the Major Projects and Programs ("**MPP**") organization stand-up support including aligning on 200 workplan execution, establishing execution governance and controls and benchmarking leading practices within utility and other capital-intensive industries (the "**EO MPP Org Standup Support Services**", as described in **Exhibit 1-T** hereto);

D. Hourly Fee Engagements – Additional Services

(xiv) Assist the Debtors in the assessment of the design roadmap to track and manage compliance of its Wildfire Mitigation Plan ("**WMP**"), including, but not limited to: development of roadmap, and documentation of compliance items and timeline for completion (the "**WMP Support Services**", as described in **Exhibit 1-U** hereto);

Bankruptcy Accounting Advisory Services. Pursuant to the terms and conditions of that certain Bankruptcy Accounting Advisory Services Engagement Letter (previously attached to the *Bowman Declaration* [Docket No. 1792, Exhibit 4], the Debtors and PwC have amended the Bankruptcy Accounting Services Engagement Letter, attached as **Exhibit 2** hereto, to disclose an expansion of the bankruptcy accounting advisory services requested by the Debtors (the "**Bankruptcy Accounting Advisory Services**").[4]

Regulatory Inquiry Assistance Services. Pursuant to the terms and conditions of that certain engagement letter dated as of April 12, 2019, by and between the Debtors and PwC (the "**Regulatory Inquiry Assistance Engagement Letter"**), attached hereto as **Exhibit 3**. PwC will assist the Debtors and their counsel in response to regulatory inquiries, including but not limited to: providing observations and advisory services at the direction of the Debtors' counsel (the "**Regulatory Inquiry Assistance Services**").

Tax Research & Development Tax Credit Services. Pursuant to the terms and conditions of that certain engagement letter dated as of July 31, 2019, by and between the Debtors and PwC (the "**Tax R&D Tax Credit Engagement Letter**", together with the Bankruptcy Accounting Advisory Services, the Regulatory Inquiry Assistance Engagement Letter, the "**Engagement Letters**"), attached hereto as **Exhibit 4**. PwC will assist the review of the Debtors' Credits for Increasing Research Activities

---

[4] For the avoidance of doubt, this Amendment does not seek to amend the Bankruptcy Accounting Advisory Services provided by PwC. Rather, the amendment is intended to provide disclosure of the new rate structure and expanded fee for such services authorized by the Debtors.

under Internal Revenue Code Section 41 and research tax credits under applicable U.S. and state authorities, including but not limited to: computation of the research credits and presentation of the results to Debtors' management (the "**Tax R&D Tax Credit Services**"). Based upon an estimated number of hours and a discount of rates, the Debtors and PwC have agreed to a fixed fee of $325,000.

PwC is well qualified and uniquely able to perform the aforementioned services and represent the Debtors in these Chapter 11 Cases in an efficient and timely manner. Therefore, PwC submits that continued employment and retention of PwC as management, tax, and advisory consultants to the Debtors as set forth in the agreements governing the Supplemental Engagements is in the best interests of the Debtors, their creditors and all parties in interest.

It is my understanding that the Debtors intend that the services of PwC described herein will complement and will not duplicate the services rendered by any other professional retained by the Debtors in these Chapter 11 Cases. PwC understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors and avoid the duplication of services being rendered by PwC and other professionals in these Chapter 11 Cases.

To the extent that the Debtors and PwC later determine that PwC will perform additional services deemed appropriate and necessary to benefit the Debtors' estates, PwC and the Debtors may enter into additional agreements with respect to such services and will seek separate retention orders with regard to any such additional agreements.

PwC intends to apply to the Court for allowance of compensation and reimbursement of expenses for the services performed for the Debtors, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any applicable Orders of the Court, both in connection with this Supplemental Application and any interim and final fee applications to be filed by PwC in these Chapter 11 Cases, in accordance with the terms and conditions of the MSA and the Engagement Letters. Moreover, PwC will make reasonable efforts to comply with the requests of the United States Trustee ("the **U.S. Trustee**") for information and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

additional disclosures as set forth in the Fee Guidelines or any other applicable Orders.

PwC's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms set forth in the MSA and the Engagement Letters. Subject to this Court's approval, PwC, in accordance with its customary terms and conditions of employment, including the proposed compensation arrangements set forth in the respective MSA Contracts and Engagement Letters (the "**Fee Structures**"), for (a) compensation for the E-Discovery Services, Rate Case Support Services, WMP Support Services, Bankruptcy Accounting Services, and Regulatory Inquiry Assistance Services, and on an hourly basis in accordance with PwC's ordinary and customary rates in effect on the date such services are rendered; (b) compensation for the North Bay Services, Camp Fire Services, IT Implementation Services, Rule 21 Readiness Services, Rule 21 Pilot Testing Services, Legal Observation Support Services, WDT Support Services, PSPS Program Support Services, Cybersecurity Assessment Services, EBO Reorganization Support Services, MetricStream Implementation Services, EOM PP Org Standup Support Services, and Tax R&D Tax Credit Services on a fixed-fee basis (summarized below) in accordance with the terms of each respective MSA Contract; and (c) reimbursement of actual and necessary costs and expenses incurred by PwC in connection with all services performed on behalf of the Debtors. I believe that these Fee Structures and compensation for each of the Supplemental Engagements are market-based and reasonable considering PwC's knowledge and experience.

Hourly Fee Engagements. The hourly rates set forth below are PwC's applicable hourly rates for the work of its professionals and staff members for the different engagements set forth in the applicable MSA Contracts and Engagement Letters. These hourly rates reflect PwC's normal and customary billing practices for engagements of this complexity and magnitude. PwC's hourly rates are subject to periodic adjustment from time to time in accordance with PwC's established billing practices and procedures. PwC will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| Billing Category | E-Discovery Services[5] | Rate Case Support Services | WMP Support Services | Bankruptcy Accounting Services[5] | Regulatory Inquiry Assistance Services |
|---|---|---|---|---|---|
| Partner / Principal | $499 | $500 | $500 | $839 - $994 | $780 - $909 |
| Managing Director | n/a | n/a | n/a | $757 - $898 | n/a |
| Director/ Senior Manager | $404 | $395 | $395 | $715 - $807 | $650 - $776 |
| Manager | $329 | $345 | $345 | $525 - $628 | $445 - $650 |
| Senior Associate/Staff | $267 | $260 | $260 | $460 - $517 | $348 - $497 |
| Associate | $172 | $100 | n/a | $415 - $450 | $287 - $433 |
| Administrative | n/a | n/a | n/a | $135 | n/a |

<u>Fixed-Fee Engagements</u>. The Debtors and PwC have agreed to fixed-fee compensation for several of the MSA Contracts. These fixed-fee estimates are based on the time required by the individuals assigned to the Debtors' engagements. In addition, the fee estimates are based on the assumption that the Debtors will provide certain information and assistance to PwC.

| Services | Fixed-Fee Amount |
|---|---|
| North Bay Services – Change Order No. 10 | $1,545,000 |
| Change Order No. 11 | $976,300 |
| Change Order No. 12 | $1,138,000 |
| Camp Fire Services – Change Order No. 1 | $2,065,000 |
| Change Order No. 2 | $1,548,100 |
| Change Order No. 3 | $995,000 |
| IT Implementation Services – Change Order No. 1 | $90,000 |
| Rule 21 Readiness Services | $98,000 |
| Rule 21 Pilot Testing Services | $98,000 |
| Legal Observation Support Services | $430,000 |
| – Change Order No. 1 | $390,000 |
| WDT Support Services | $58,000 |
| PSPS Program Support Services | $1,750,000 |
| Cybersecurity Assessment Services | $867,400 |
| EBO Reorganization Support Services | $625,000 |
| MetricStream Implementation Services | $95,000 |
| EOM PP Org Standup Support Services | $950,000 |
| Tax R&D Tax Credit Services | $325,000 |

---

[5] PwC's rates for these services are not different than those disclosed in the Bowman Declaration. However, pursuant to the change orders that were executed as part of the Supplemental Engagements, the Debtors agreed to raise the cap that was associated with the provision of these services in light of an increased scope of work. The disclosures made herein are intended to disclose such increases.

Expenses. Additionally, as was the case with the expenses described in the Original Retention Application and the Bowman Declaration (and approved by the Retention Order) PwC will continue to invoice the Debtors for its reasonable out-of-pocket expenses charged during the Chapter 11 Cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use or value added tax, as well as non-ordinary costs such as secretarial and other overtime.

It is PwC's intention to seek compensation for its services as described in the Supplemental Application and the MSA and Engagement Letters in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines and any and all rules and Orders of this Court. It is not the practice of PwC's professionals to keep detailed time records in one tenth-of-an-hour increments (i.e., six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of PwC's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5) increments. Thus, in the Supplemental Application, the Debtors request that this Court allow PwC's professionals to provide the following in its monthly, interim, and final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly, interim, and final fee application that PwC files in these Chapter 11 Cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in half hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

Given the nature of the services to be provided by PwC, such billing format and associated time details will be sufficient for the Debtors and other parties-in-interest to make informed judgments regarding the nature and appropriateness of PwC's services and fees.

As part of the overall compensation payable to PwC under terms of certain of the MSA Contracts and Engagement Letters, the Debtors have agreed to certain indemnification obligations as described in

such MSA Contracts and Engagement Letters. The terms of the MSA and Engagement Letters and the indemnification provisions contained therein were fully negotiated in good faith and at arm's length.

PwC should not be disqualified from acting as the Debtors' management, tax, internal accounting and advisory consultant merely because it represents the Debtors' creditors, equity holders or other parties in interests in matters unrelated to these Chapter 11 Cases.

To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of PwC's retention are discovered or arise, PwC will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

[*Signature on Next Page*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 7, 2019

By: _____
Daniel Bowman
Principal
PricewaterhouseCoopers LLP

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119