**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' PRELIMINARY OPPOSITION TO TIGER NATURAL GAS, INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**<br><br>Relates to Dkt. Nos. 4322, 4393<br><br>Date: November 13, 2019<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................3

II. FACTUAL BACKGROUND ......................................................................................4

III. ARGUMENT ................................................................................................................4

    A. The Relevant *Curtis* Factors Dictate that the Court Should Deny the Motion ..5

        1. The "Balance of Hurt" Tilts Entirely Toward the Debtors ....................5

            a. Litigation of the Tiger Action at This Time Risks Significant Harm to the Debtors' Reorganization Efforts ...........................6

            b. Denying the Motion Will Not Prejudice Tiger ........................10

        2. The Parties Are Not "Prepared for Trial" .............................................11

        3. Tiger's Claims Are Not Covered by Insurance....................................12

    B. The *Curtis* Factors Relied Upon by Tiger Are Unavailing..............................12

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*In re Am. Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D. Cal. 2015) ...........................................9

*In re Bailey*, 11 BR. 199 (Bankr. E.D. Va. 1981) ......................................................................10, 11

*In re Baleine, LP*, 2015 U.S. Dist. LEXIS 140145 (C.D. Cal. Oct. 13, 2015) ...................................9

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir. 1990).....2

*In re Columbia Ribbon & Carbon Mfg. Co.*, 13 B.R. 276 (Bankr. S.D.N.Y. 1981)...................11, 12

*Dampier v. Credit Invs., Inc. (In re Dampier)*, 2015 Bankr. LEXIS 3800 (B.A.P. 10th Cir. Nov. 5, 2015) .........................................................................................................................................9

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ................................................................. passim

*Kronemyer v. Am. Contrs. Indem. Co. (In re Kronemyer)*, 405 B.R. 915 (B.A.P. 9th Cir. 2009).....3

*In re Landmark Fence Co.*, 2011 U.S. Dist. LEXIS 150928 (C.D. Cal. Dec. 9, 2011)......................4

*Myles v. Xinergy, Ltd. (In re Xinergy Ltd.)*, 2015 Bankr. LEXIS 1908 (Bankr. W.D. Va. June 11, 2015) .......................................................................................................................................10

*In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551 (Bankr. C.D. Cal. 2004).........................2, 9

*In re Roger*, 539 B.R. 837 (C.D. Cal. 2015) ......................................................................................9

*In re Smith*, 389 B.R. 902 (Bankr. D. Nev. 2008)..............................................................................8

*In re Sunland, Inc.*, 508 B.R. 739 (Bankr. D. N.M. 2014)...............................................................10

**Statutes & Rules**

11 U.S.C. § 362(d) ..............................................................................................................................2

**Other Authorities**

3 Collier on Bankruptcy ¶ 362.10 (2019) ..........................................................................................2

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pacific Gas and Electric Company (the "**Utility**"), as a debtor and debtor in possession along with PG&E Corporation ("**PG&E Corp.**", together with the Utility, the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"), respectfully submits this opposition (the "**Opposition**") to the Motion for Relief from Stay Pursuant to 11 U.S.C. § 362(d)(1) (Dkt. No. 4322) filed by Tiger Natural Gas, Inc. ("**Tiger**"). Tiger seeks relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**") to prosecute its claims in the case pending in the United States District Court for the Northern District of California (the "**District Court**"), *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 4:16-CV-06711 (JSW) (the "**Tiger Action**"). In support of the Opposition, the Utility submits the Declaration of Elizabeth Collier (the **"Collier Decl."**), filed contemporaneously herewith.

## I. PRELIMINARY STATEMENT

Tiger seeks relief from the automatic stay to liquidate—right now—liability on and the dollar amount of what are, by its own repeated admission, highly complex business tort claims. Tiger has not met its burden to make a prima facie showing that cause exists for such relief. To the contrary, allowing the Tiger Action to proceed at this time would unduly burden the Debtors' relevant personnel, who are already at capacity attempting to resolve the wildfire claims, mitigate the risks of the 2019 wildfire season and address any wildfires that have already occurred, and work toward the approval, both by their regulators and the Court, of a viable reorganization plan. Any unnecessary diversion of the Debtors' personnel from these crucial issues risks hindering the Debtors' ability to successfully emerge from these Chapter 11 Cases, continue to service their millions of customers, and pay all creditors, including Tiger, any amounts they are owed.

On the other hand, maintaining the stay, a status quo that Tiger now submits without support would somehow cause it harm despite having sustained none in the over nine months since these Chapter 11 Cases began, would not in any way prejudice Tiger. At the March 27, 2019 hearing in *PG&E Corporation, et al. v. Public Employees Retirement Association of New Mexico, et al.* (Adv. Proc. No. 19-03006) (the "**March 27 Hearing**"), the Court remarked as follows with respect to a potential Tiger motion for relief from stay: "I will say, I probably would not grant relief from stay unless there's some important, significant reason, not -- I mean, this is a corporation. It's a

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

business." Transcript at 25:3-6. Counsel for Tiger responded to the Court succinctly: "Okay. Message Received." *Id.* at 25:9. Apparently, however, Tiger in fact did not receive the Court's message. Rather, instead of waiting alongside the thousands of individual wildfire victims who are also seeking to recover from the Debtors' estates, and whose claims the Debtors are currently addressing in multiple fora, Tiger filed its Motion in an effort to liquidate its monetary claims despite no pressing need to do so now.

For these reasons and others, and as more fully set forth below, the Debtors respectfully request that the Court deny the Motion.

## II. FACTUAL BACKGROUND

Tiger filed the Tiger Action on November 18, 2016. Its complaint alleges claims under RICO, the Sherman Act, and the California Unfair Competition Law, as well as causes of action under California State law for intentional and negligent misrepresentation, intentional interference with contract, breach of contract, and breach of fiduciary duty against the Utility and three individual Utility employees relating to the Debtors' billing practices. The Debtors and the Individual Defendants filed their answer, denying all allegations, on November 8, 2017 (District Court Dkt. No. 54).

The Debtors filed these Chapter 11 Cases on January 29, 2019 (the "**Petition Date**"). On February 4, 2019, the Debtors filed a *Notice of Bankruptcy Proceeding* (District Court Dkt. No. 123) in the Tiger Action based on these Chapter 11 Cases. On February 27, 2019, the District Court entered the *Order Staying Case and Requiring Joint Status Reports* (District Court Dkt. No. 123), staying the case as to both the Utility and the Individual Defendants.

## III. ARGUMENT

Section 362(d)(1) of the Bankruptcy Code authorizes a court to modify or terminate the automatic stay for "cause," which "has no clear definition and is determined on a case-by-case basis." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted). The party requesting stay relief bears the burden of making a *prima facie* showing of cause under section 362(d)(1). *See In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551, 553 (Bankr. C.D. Cal. 2004); 3 Collier on Bankruptcy ¶ 362.10 (2019) ("Failure to prove

a prima facie case requires denial of the requested relief."). In determining whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts analyze the twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984);[1] *see also Kronemyer v. Am. Contrs. Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.").

### A. The Relevant *Curtis* Factors Dictate that the Court Should Deny the Motion

The *Curtis* factors most relevant here are the impact of the stay and the "balance of hurt," (*Curtis* factor 12); whether the foreign proceedings have progressed to a point where the parties are prepared for trial (*Curtis* factor 11); and whether the debtor's insurance carrier has assumed full financial responsibility for defending the lawsuit (*Curtis* factor 5). The first two factors weigh heavily in favor of denying the Motion, and the third, while less weighty, plainly points in the same direction.

#### 1. The "Balance of Hurt" Tilts Entirely Toward the Debtors

As Tiger concedes, the "most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." Mot. at 8 (quoting *In re Curtis*, 40 B.R. at 806). And as the Curtis court further noted, "*even slight interference with the administration* may be enough

---

[1] The *Curtis* factors are: (1) whether the relief will result in partial or complete resolution of issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination; (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f); (10) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to a point where the parties are prepared for trial; and (12) the impact of the stay and the "balance of hurt." 40 B.R. at 799-800.

to preclude relief in the absence of a commensurate benefit." 40 B.R. at 806 (emphasis added). Indeed, "[i]t is not enough for the creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted." *In re Landmark Fence Co.*, 2011 U.S. Dist. LEXIS 150928, at *23 (C.D. Cal. Dec. 9, 2011). The Motion does not and cannot make this showing because, as detailed below, lifting the stay of the Tiger Action would have a deleterious impact on the Debtors' reorganization efforts, and leaving the stay in place will cause Tiger no prejudice at all.

        a. **Litigation of the Tiger Action at This Time Risks Significant Harm to the Debtors' Reorganization Efforts**

If the Tiger Action were to proceed at this time, it would impose a substantial and disruptive burden on the Utility and would meaningfully risk adverse consequences to the Debtors' reorganization efforts. *See* Collier Decl. ¶ 5.

The Tiger Action "presents complicated fact patterns over several different divisions within Debtor PG&E, a series of complex business torts, and a rubric of procedural and discovery wrangling." Mot. at 5; Collier Decl. ¶ 6. Indeed, CC&B, the Utility billing and collections system that is a primary focus of the Tiger Action, "is a complicated Oracle-based system modified by Debtor for its services" that "utilizes a complicated process for generating blue bills and allocating payments between Debtor PG&E and CTAs." Mot. at 4; Collier Decl. ¶ 6. As Tiger notes, "the course of discovery before the District Court reflects a complicated background" in which "the parties analyzed millions of transactions from tens of thousands of accounts from the CC&B system, itself a remarkably complex program." Mot. at 5; Collier Decl. ¶ 6. Moreover, the "interplay between the regulatory environment and the legal framework for many of the business torts alleged in the [Tiger Action] complaint create additional complexity." Mot. at 5; Collier Decl. ¶ 6.

Litigation of the Tiger Action is far from complete. The parties have not yet conducted expert discovery, submitted motions for summary judgment, filed Daubert motions, or undertaken any pre-trial briefing or otherwise prepared for trial. *See* Collier Decl. ¶ 7. In fact, as of January 29, 2019, expert discovery was not set to close for over three months (on May 6, 2019), the deadline for dispositive motions was nearly five months away (June 21, 2019), Daubert motions were not

due for six months (August 2, 2019), and trial was not scheduled to begin for over seven-and-a-half months (September 16, 2019). *See* Collier Decl. ¶ 7.

Permitting the Tiger Action to continue would require the Utility to engage repeatedly and fully in the various complex legal and factual issues presented by the matter. *See* Collier Decl. ¶ 8. Indeed, if *United Energy Trading LLC v. Pacific Gas and Electric Company, et al* ("**UET**"), Case No. 3:15-CV-02383 (RS) (N.D. Cal.) (the "**UET Action**"), a similar lawsuit commenced by the same law firm in which CC&B is also at issue, is any indication, the parties will fiercely litigate each remaining stage of the Tiger Action. *See* Collier Decl. ¶ 8. In the UET Action, which had progressed further than the Tiger Action as of the Petition Date, and regarding which UET brought motion for relief from stay (since taken off calendar), "the parties disclosed and deposed several forensic accountants, economists, and other experts," submitted "competing motions for summary judgment," and filed "dueling motions under Fed. R. Evid. 702 and Daubert." *See* United Energy Trading's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) (Dkt No. 4323) at 4.

Given the highly complex nature of the relevant legal and factual issues, and because significant litigation remains, allowing the Tiger Action to proceed would necessitate that the Debtors devote to the defense of the lawsuit significant resources from at least three separate Utility Departments: (i) the Law Department (specifically, the Litigation Group), (ii) the Information Technology Department (the "**IT Department**"), and (iii) the Customer Care Department. *See* Collier Decl. ¶¶ 9-13 (detailing the specific involvement of Litigation Group, IT Department, and Customer Care Department in the Tiger Action, and setting forth the reasons why such involvement is necessary). Involvement of these personnel in the Tiger Action at this time, however, would divert their attention from the numerous tasks on which they are currently focusing, as discussed below, that are vital to the Debtors' successful reorganization.[2]

The Litigation Group is currently operating beyond full capacity and simply cannot spare the

---

[2] These facts also demonstrates that, contrary to Tiger's assertion that "lifting the stay will not negatively affect the bankruptcy case," Mot. at 9, doing so in fact would interfere with these Chapter 11 Cases (*Curtis* factor 2).

resources that would be required to litigate the Tiger Action properly. As the Court is aware, in addition to these Chapter 11 Cases, the Debtors are currently participating in the following significant proceedings for which the Litigation Group is responsible, among others: (a) *In re PG&E Corporation and Pacific Gas and Electric Company*, Case No. 3:19-cv-05257 (N.D. Cal.), regarding the estimation of the Debtors' liability for claims arising from the 2017 and 2018 wildfires (the "**Estimation Proceedings**"); (b) a trial of certain Tubbs Fire preference plaintiffs' claims in the California North Bay Fire Cases, Judicial Council Coordination Proceedings 4955, proceeding in front of the Honorable Teri L. Jackson in the Superior Court of California, County of San Francisco (the "**Tubbs Action**"); (c) California Public Utilities Commission ("**CPUC**") Investigation No. I-19-06-015, regarding the October 2017 wildfires, which may be expended to include 2018 Camp Fire (the "**Wildfire OII**"), and (d) the Grand Jury investigation into the Camp Fire initiated by the Butte County District Attorney and California Attorney General (the "**Camp Fire Investigation**"). The Debtors are also currently participating in the following additional significant proceedings for which other groups within the Law Department are responsible: (a) CPUC Investigation No. 19-09-016, regarding the competing reorganization plans pursuant to which the Debtors may ultimately emerge from these Chapter 11 Cases; (b) the Utility's 2020 General Rate Case at the CPUC, No. A.18-12-009; (c) the CPUC's investigation into the Utility's locate and mark practices; and (d) the CPUC's upcoming investigation into the Utility's Public Safety Power Shutoff Program.

At the same time, the Debtors are addressing the ramifications of several wildfires, including the Kincade Fire, which have recently occurred in their territory and which the Litigation Group is responsible for investigating, and are engaged in significant efforts to prevent the occurrence of any additional wildfires during the 2019 wildfire season, including through the use of Public Safety Power Shutoffs ("**PSPS**") during times when high-risk weather conditions are forecasted. *See* Collier Decl. ¶ 15.

Given its familiarity with the Utility and experience in managing large, complex litigation matters, the Litigation Group is significantly involved in these Chapter 11 Cases, the Estimation Proceedings, the Tubbs Action, the Wildfire OII, and the Camp Fire Investigation, among other

responsibilities. *See* Collier Decl. ¶ 16.[3] Each of these matters is proceeding on a highly expedited timeframe, with the Estimation Proceedings, the Tubbs Action, and the CPUC OII scheduled to culminate via trial or similar hearings early in 2020, confirmation hearings in these Chapter 11 Cases to follow soon thereafter, and the Camp Fire Investigation proceeding apace. *See* Collier Decl. ¶ 16. The Litigation Group's involvement in these Chapter 11 Cases, the Estimation Proceedings, the Tubbs Action, the CPUC OII, and the Camp Fire Investigation is wide-ranging and includes, among other tasks: (a) coordinating and overseeing the significant discovery that is currently ongoing in each of these proceedings, including large-scale production of documents and regularly occurring depositions; (b) assisting the Debtors in preparing for hearings and trials; and (c) overseeing and reviewing multiple lengthy and complex documents for filing. *See* Collier Decl. ¶ 16.[4]

The burden associated with these activities cannot be overstated. In the Tubbs Action, there are 22 fact depositions scheduled to take place within the next 29 days, with an additional 50 fact depositions to be scheduled within that same time frame, and there is an unknown number of expert depositions that must be scheduled within the next 35 days. *See* Collier Decl. ¶ 17. In the Estimation Proceedings, the Debtors have produced approximately 3.3 million documents to date, the parties are expected to file at least 48 expert reports and take at least 73 depositions, and the hearing is set to estimate the Debtors' liability for at least 23 separate wildfires. *See id*.

The IT and Customer Care Departments are also currently handling numerous tasks in addition to their ordinary day-to-day responsibilities. *See* Collier Decl. ¶ 20. Specifically, the IT Department is significantly involved in the collection of information in connection with the ongoing and expedited discovery occurring in these Chapter 11 Cases, the discovery occurring in the Estimation Proceedings, and the discovery occurring in the Tubbs Action. *See* Collier Decl. ¶ 20.

---

[3] The Litigation Group is also devoting significant resources to addressing legal issues arising from and related to the 2019 wildfire season, including regarding the Kincade Fire and PSPS. *See* Collier Decl. ¶ 18.

[4] As but one specific example of the many conflicts that would arise if the Tiger Action were permitted to proceed, the attorney in the Litigation Group who is and has been primarily responsible for the Tiger Action since December 2016—Shari Hollis-Ross, Senior Counsel—is the Litigation Group attorney overseeing the Debtors' claims process in these Chapter 11 Cases. *See* Collier Decl. ¶ 19.

Moreover, the IT Department is addressing various ongoing technical issues relating to PSPS efforts, which, again, are crucial to public safety and the Debtors' ability to achieve a successful reorganization. *See* Collier Decl. ¶ 20. The Customer Care Department is responsible for all customer communication issues relating to PSPS and the Utility's efforts to support customers following the Kincade Fire. *See* Collier Decl. ¶ 20.[5]

The added burden associated with the Tiger Action would likely impair the ability of the Litigation Group, the IT Department, and the Customer Care Department to perform these existing responsibilities effectively. *See* Collier Decl. ¶ 21.[6] Given that such an outcome would impede the Debtors' ability to reorganize successfully, which would in turn harm not only the Debtors, but all of their stakeholders, including the wildfire victims ahead of whom Tiger seeks to liquidate its claims, the Court should deny the Motion.[7]

b. **Denying the Motion Will Not Prejudice Tiger**

In stark contrast to the significant risk of harm to the Debtors should the Tiger Action move forward at this time, no adverse consequences would befall Tiger if the stay remains in place. There is no urgency justifying moving forward with the Tiger Action so that Tiger can liquidate its claims now. That Tiger waited nearly nine months from the Petition Date to file the Motion underscores this fact. *See, e.g., In re Smith*, 389 B.R. 902, 920 (Bankr. D. Nev. 2008) (movant's three month wait from petition date to filing relief from stay motion "belies [his] stated desire for swift resolution . . . [a]gainst this background, the fact that trial was imminent in California when [Debtor] filed his

---

[5] For example, numerous employees from the Customer Care group who are key to the Tiger Action, including, among others, Matthew Workman (Manager, Complex Billing), Scott Sanford (VP, Customer Operations), and David Gutierrez, who manages the Utility's relationships with core transport agents, are currently focusing on the Debtors' PSPS efforts. *See* Collier Decl. ¶ 20.

[6] Moreover, given the complex and expedited nature of these tasks, it is not a viable option to reassign them to new personnel in hopes of creating additional capacity for the employees from Litigation Group, IT Department, and Customer Care Departments who are key to the defense of the Tiger Action. *See* Collier Decl. ¶ 21.

[7] Furthermore, multiple others creditors would likely view a decision granting the Motion as an invitation to seek stay relief themselves, further increasing the Debtors' burden. This result would compound the burden associated with the Tiger Action itself. To be sure, in addition to the Motion, the Debtors are currently responding to numerous other stay relief inquiries.

case recedes significantly in relevance."). Even if Tiger did liquidate its claims now, it would not be able to collect from the Debtors' estates until after a plan is confirmed. While Tiger will need to be liquidated at some point in the future, there is no justification for imposing the extreme burden on the Debtors that liquidating them *at this time* would require.

Tiger does not—and cannot—point to any other prejudice it will incur if the Court denies its Motion. Courts have determined that the "balance of hurt" supports lifting the stay where keeping the stay in place would force movants to endure piecemeal litigation, *In re Roger*, 539 B.R. 837, 852-853 (C.D. Cal. 2015), or where debtors were engaging in ongoing wrongful conduct, *see Plumberex*, 311 B.R. at 564. Such concerns are not present here. There is no threat of piecemeal litigation since the Debtors and their employees are the only defendants, and because the Tiger Action does not seek injunctive relief, but only money.

The next phase of these Chapter 11 Cases is crucial to the Debtors' reorganization, and the Court should not permit the Tiger Action to further burden the Debtors' personnel where the other option—leaving the stay in place—will cause Tiger no harm.

### 2. The Parties Are Not "Prepared for Trial"

The Motion posits that because the District Court had scheduled trial to begin on September 16, 2019, this factor somehow "heavily weighs in favor of" stay relief. Mot. at 12. That is plainly not the case. Rather, courts have generally only found readiness for trial to weigh in favor of lifting the stay where trial was imminent. *See, e.g., In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 742 (Bankr. C.D. Cal. 2015) (five weeks from petition date to scheduled trial date); *In re Baleine, LP*, 2015 U.S. Dist. LEXIS 140145, at *37-38 (C.D. Cal. Oct. 13, 2015) (three months); *Dampier v. Credit Invs., Inc. (In re Dampier)*, 2015 Bankr. LEXIS 3800, at *21 (B.A.P. 10th Cir. Nov. 5, 2015) (discovery completed and foreign proceeding set for trial less than three weeks after petition date).

As of the Petition Date, trial in the Tiger Action was over seven-and-a-half months away and the parties had not yet conducted expert discovery, submitted motions for summary judgment, filed Daubert motions, or undertaken any pre-trial briefing or otherwise prepared for trial. *See* Collier Decl. ¶ 7. Moreover, given the high likelihood of contentious litigation occurring during each of these pre-trial phases, *see* Collier Decl. ¶ 8, there exists a real possibility that, if the Tiger Action

were to resume, it would actually be much longer than seven-and-a-half months before trial actually commenced. The temporally distant nature of any trial in the Tiger Action, and the significant discovery and related litigation that must first occur, cuts strongly in favor of denying the Motion. *See, e.g., In re Sunland, Inc.*, 508 B.R. 739, 744-745 (Bankr. D. N.M. 2014) (no stay relief where trial scheduled for eight months from petition date and no dispositive motions filed).

### 3. Tiger's Claims Are Not Covered by Insurance

The Motion states that the Debtors' insurance coverage is "not relevant here." Mot. at 8. Tiger is correct only insofar as this *Curtis* factor does not *support* stay relief. Courts will lift the stay more readily where a debtor's insurance carrier has assumed financial responsibility and the impact on the estate of permitting the nonbankruptcy litigation to proceed is therefore minimized. *See, e.g., Myles v. Xinergy, Ltd. (In re Xinergy Ltd.)*, 2015 Bankr. LEXIS 1908, at *13 (Bankr. W.D. Va. June 11, 2015). Here, however, the Debtors do not have liability insurance coverage for the allegations set forth in the Tiger Action. *See* Collier Decl. ¶ 22. Courts have declined to lift the stay where the debtor's insurer has disputed coverage, because of the likelihood of burden to the estate resulting. *In re Sunland, Inc.*, 508 B.R. 739, 743-744 (Bankr. D. N.M. 2014). A similar rationale applies here: were the stay lifted, the Debtors' estates would bear the cost of defense and liability incurred in connection with the Tiger Action directly and exclusively, which, in addition to the reasons laid out in section III(A) above, would increase the burden on the Debtors.

### B. The *Curtis* Factors Relied Upon by Tiger Are Unavailing

Tiger states that *Curtis* factors 1, 3, 4, 6, 7, and 10 require this Court to lift the stay, but factors 3 and 6 in fact favor leaving the stay in place, and factors 1, 4, 7 and 10 do not materially support Tiger's request to allow the Tiger Action to proceed *at this time*, or come close to outweighing the factors that militate against stay relief *at this time*.

The rationale behind *Curtis* factor 3 (whether the foreign proceeding involves the debtor as a fiduciary) is that "proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." 40 B.R. at 799, relying solely on and quoting *In re Bailey*, 11 BR. 199, 201, 202 (Bankr. E.D. Va. 1981). In *Bailey*, an early Bankruptcy Code decision that offers little in the way of facts

or analysis, the court granted stay relief to permit discovery and an accounting from an individual chapter 7 debtor regarding the debtor's activities as an undisputed fiduciary (a director and officer of a dissolved corporation). The controlling principle appears to be that the litigation activity against the debtor/fiduciary permitted by stay relief had little or no impact on the administration of the debtor's bankruptcy estate, but instead sought to illuminate whether and how the fiduciary had met his fiduciary obligations. Here, on the other hand, Tiger is unabashedly seeking to establish a claim against the Utility (and its estate), through burdensome litigation that threatens to consume significant estate resources of money and time. Tiger forthrightly asserts that it is a creditor of the Utility. It has filed a proof of claim against the Utility, Claim No. 64095, and seeks monetary damages through the Tiger Action. Accordingly, the Tiger Action falls squarely within the automatic stay's purpose of protecting the Debtors (and their estates) from their creditors.[8]

Tiger also misunderstands *Curtis* factor 6 (whether "the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question) in claiming that it favors relief from stay because the Tiger Action involves three Individual Defendants and the Utility acts as an "intermediary billing agent." Mot. at 10-11. The critical point of this *Curtis* factor is *whether the debtor's role in the nonbankruptcy litigation is minimal* because it "*essentially* involves third parties, and the debtor functions *only* as a bailee or conduit for the goods or proceeds in question." 40 B.R. at 800 (emphasis added). For example, stay relief is appropriate where "the instant action is no more than a dispute between third parties and only incidentally involves the debtor, as an alleged bailee of the goods in issue." *In re Columbia Ribbon & Carbon Mfg. Co.*, 13 B.R. 276, 278 (Bankr. S.D.N.Y. 1981). This is not the situation in the Tiger Action, which is a multi-million dollar billing practices dispute between Tiger on the one hand and the Utility on the other. Tiger seeks a recovery of damages directly from the Utility based on

---

[8] Furthermore, contrary to Tiger's assertions, Mot. at 10, the Utility disputes that it is a fiduciary to Tiger; there has been no determination in the Tiger Action whether PG&E is Tiger's fiduciary. In the UET Action, a companion case with similar facts, Judge Seeborg stated that although UET *might* "be able to demonstrate the existence of a fiduciary relationship with PG&E to the limited extent of billing activities, its bid for summary judgment runs aground on the shoals of breach" because whether the Utility breached any duty is a triable issue of fact. (N.D. Cal. Case No. 3:15-CV-02383 (RS), Dkt. No. 222).

allegations of misconduct by the Utility, and the fact that Tiger alleges that the Utility acts an "intermediary billing agent" between Tiger's customers and Tiger—which the Utility disputes—does not render the Utility's role in the litigation "only" that of a bailee.[9]

In conclusion, the Court should deny this Motion fails to establish a prima facie basis for its requested relief from the automatic stay.

Dated: November 8, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVNUTTI LLP**

By:    */s/ Peter J. Benvenutti*
        Peter J. Benvenutti

*Attorneys for Debtors and Debtors in Possession*

---

[9] Furthermore, the presence of the three Individual Defendants is not at all analogous to the situation contemplated by *Curtis* and *Columbia Ribbon*, and it is manifest that the Tiger Action is not "essentially" between them and Tiger. At the March 27, 2019 Hearing, the Court asked counsel for Tiger "You don't really want to prosecute this lawsuit against one former and two current employees, do you?...I mean, that's crazy." Transcript at 23:2-5. The Court was referring to proceeding against the Individual Defendants in the absence of the Debtors, but the reverse is also true: the presence or absence of the Individual Defendants cannot dictate whether the stay should be lifted.