**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                     **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF ELIZABETH COLLIER IN SUPPORT OF DEBTORS' PRELIMINARY OPPOSITION TO TIGER NATURAL GAS, INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**<br><br>Date: November 13, 2019<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

I, Elizabeth Collier, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.  I am employed as Managing Counsel, Litigation, in the Law Department of Pacific Gas and Electric Company (the "**Utility**"), a wholly-owned subsidiary of PG&E Corporation ("**PG&E Corp.**" and together with Utility, the "**Debtors**" in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**")). In my current role, I am responsible for the development and successful implementation of strategy for the active and potential litigation facing the Debtors. I also supervise the eight (8) other lawyers in the Litigation Group (a component of the Law Department), oversee their assignments, and monitor their workloads. My responsibilities as Managing Counsel require me on a regular basis to assess, and attempt to balance, the demands on the lawyers in the Litigation Group, and to ensure that those lawyers have the capacity needed to satisfy those demands.

2.  I joined the Utility in 2001 and have held various positions of increasing responsibility working on litigation, regulatory, and commercial matters since that time. I obtained my Juris Doctorate from University of California, Hastings College of the Law in 1990 and was admitted to the State Bar of California that same year.

3.  I submit this declaration in support of the Utility's Opposition to the Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) (the "**Motion**") filed by Tiger Natural Gas, Inc. ("**Tiger**"), Dkt No 4322, which seeks to seeks to lift the automatic stay to pursue Tiger's claims in *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 4:16-CV-06711 (JSW) (N.D. Cal.) (the "**Tiger Action**"). I am authorized to submit this declaration on behalf of the Utility and, if called upon, would testify to the facts set forth herein.

4.  The facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors, or my opinion based upon experience, knowledge, and information concerning the matters discussed herein.

5.  As detailed below, if the Tiger Action were to proceed at this time, it would impose a substantial and disruptive burden on the Utility and would meaningfully risk adverse consequences to the Debtors' reorganization efforts.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**The Resources Implicated by the Tiger Action**

6.    I agree with Tiger's assertion that the Tiger Action "presents complicated fact patterns over several different divisions within Debtor PG&E, a series of complex business torts, and a rubric of procedural and discovery wrangling." Motion at 5. The following Tiger statements regarding the Utility billing and collections system—CC&B—that is a primary focus of the Tiger Action, are also accurate: "CC&B is a complicated Oracle-based system modified by Debtor for its services," *id.* at 4; "CC&B utilizes a complicated process for generating blue bills and allocating payments between Debtor PG&E and CTAs," *id.*; "the course of discovery before the District Court reflects a complicated background," *id.* at 5; "the parties analyzed millions of transactions from tens of thousands of accounts from the CC&B system, itself a remarkably complex program," *id.* Tiger is also correct in its statement that the "interplay between the regulatory environment and the legal framework for many of the business torts alleged in the [Tiger Action] complaint create additional complexity." *Id.* at 5.

7.    The parties in the Tiger Action have not yet conducted expert discovery, submitted motions for summary judgment, filed Daubert motions, or undertaken any pre-trial briefing or otherwise prepared for trial. As of January 29, 2019, expert discovery was not set to close for over three months (on May 6, 2019), the deadline for dispositive motions was nearly five months away (June 21, 2019), Daubert motions were not due for six months (August 2, 2019), and trial was not scheduled to begin for over seven-and-a-half months (September 16, 2019).

8.    Permitting the Tiger Action to continue would require the Utility to engage repeatedly and fully in the various complex legal and factual issues presented by the matter. Indeed, if *United Energy Trading LLC v. Pacific Gas and Electric Company, et al* ("**UET**"), Case No. 3:15-CV-02383 (RS) (N.D. Cal.) (the "**UET Action**"), a similar lawsuit commenced by the same law firm in which CC&B is also at issue, is any indication, the parties will fiercely litigate each remaining stage of the Tiger Action. In the UET Action, which had progressed further than the Tiger Action as of the Petition Date, and regarding which UET brought motion for relief from stay (since taken off calendar), "the parties disclosed and deposed several forensic accountants, economists, and other experts," submitted "competing motions for summary judgment," and filed "dueling motions under

Fed. R. Evid. 702 and Daubert." *See* United Energy Trading's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) (Dkt No. 4323) at 4. The Utility was also forced to file motions for summary judgment, which ultimately were successful, in order to dismiss UET's claims against individual Utility employees who are also named as defendants in the Tiger Action. I expect that any further litigation of the Tiger Action would be a similarly protracted undertaking. I also expect that any trial in the Tiger Action would be lengthy and complex, and likely involve dozens of witnesses and significant pre- and post-trial briefing.

9.      Given the highly complex nature of the relevant legal and factual issues, and because significant litigation remains, allowing the Tiger Action to proceed would necessitate that the Debtors devote to the defense of the lawsuit significant resources from at least three separate Utility Departments: (i) the Law Department (specifically, the Litigation Group), (ii) the Information Technology Department (the "**IT Department**"), and (iii) the Customer Care Department.

10.      The Litigation Group would be significantly involved in any continued litigation of the Tiger Action given the intricate legal and factual issues involved. Some of these issues have been raised by other core transport agents who have brought legal action against the Utility (e.g., UET), however each core transport agent, including Tiger, raises different theories requiring new discovery, new depositions, new expert analysis, and new briefing. The Litigation Group is most familiar with these complex, ever-evolving issues given the similar prior cases commenced against the Utility, and it is thus necessary that they be substantively involved in each of these phases of litigation. Moreover, the Utility has significant regulatory requirements concerning its relationship with core transport agents and the use of customer information. These regulatory requirements require a high degree of oversight from the assigned attorney in Litigation Group in order to avoid a compliance failure. In addition, the assigned attorney in the Litigation Group would be responsible for assisting outside counsel in accessing needed information and witnesses from the IT Department, the Customer Care Department, and third-party contractors previously engaged by the IT Department. Given the complexity of the database at issue, and the fact that many of the IT and Customer Care personnel involved to date have moved to other roles in the Utility or left the company, this coordination alone is a highly time-intensive undertaking. In effect, the assigned

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    Litigation Group attorney has become the subject-matter expert on the issues and a necessary

2    participant in the litigation.

3         11.    While there are other groups within the Law Department, those groups focus on, and

4    have experience and expertise in, other areas of the law.  Lawyers in these other Law Department

5    groups, even if they had excess capacity (which they do not), are not interchangeable with the

6    Litigation Group in terms of having the subject-matter expertise necessary to manage and support

7    the Tiger Action, or to otherwise augment the staffing of the Litigation Group to increase its

8    capacity.

9         12.    The IT Department would similarly be required to expend significant resources in

10   connection with the Tiger Action, should this Court allow it to move forward.  Specifically, the IT

11   Department would need to interface regularly with the third-party contractors familiar with CC&B

12   to pull and analyze large volumes of data from PG&E's system in a method that is inconsistent with

13   PG&E's daily operational CC&B practices.

14        13.    The Customer Care Department would also be involved in any further litigation of the

15   Tiger Action, as is underscored by the fact that two employees within the Customer Care

16   Department—Mr. William Chen and Ms. Tanisha Robinson Brown—are named as defendants in

17   the Tiger Action.  The Customer Care Department handles all communications with the Utility's

18   customers, including customer billing through CC&B, and its participation in the Utility's defense

19   of the Tiger Action would thus be crucial.  As with the IT Department, the Customer Care

20   Department would need to devote significant resources to assist with the multitude of difficult,

21   unresolved factual disputes at issue, including with the proper gathering and dissemination of

22   information related to CC&B.

23                **The Availability of the Resources Implicated by the Tiger Action**

24        14.    The Litigation Group is currently operating beyond full capacity and simply cannot

25   spare the resources that would be required to litigate the Tiger Action properly.  As the Court is

26   aware, in addition to these Chapter 11 Cases, the Debtors are currently participating in the following

27   significant proceedings for which the Litigation Group is responsible, among others: (a) *In re PG&E*

28   *Corporation and Pacific Gas and Electric Company*, Case No. 3:19-cv-05257 (N.D. Cal.),

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

regarding the estimation of the Debtors' liability for claims arising from the 2017 and 2018 wildfires (the "**Estimation Proceedings**"); (b) a trial of certain Tubbs Fire preference plaintiffs' claims in the California North Bay Fire Cases, Judicial Council Coordination Proceedings 4955, proceeding in front of the Honorable Teri L. Jackson in the Superior Court of California, County of San Francisco (the "**Tubbs Action**"); (c) California Public Utilities Commission ("**CPUC**") Investigation No. I-19-06-015, regarding the October 2017 wildfires, which may be expanded to include 2018 Camp Fire (the "**Wildfire OII**"), and (d) the Grand Jury investigation into the Camp Fire initiated by the Butte County District Attorney and California Attorney General (the "**Camp Fire Investigation**"). The Debtors are also currently participating in the following additional significant proceedings for which other groups within the Law Department are responsible: (a) CPUC Investigation No. 19-09-016, regarding the competing reorganization plans pursuant to which the Debtors may ultimately emerge from these Chapter 11 Cases; (b) the Utility's 2020 General Rate Case at the CPUC, No. A.18-12-009; (c) the CPUC's investigation into the Utility's locate and mark practices; and (d) the CPUC's upcoming investigation into the Utility's Public Safety Power Shutoff Program.

15.     At the same time, the Debtors are addressing the ramifications of several wildfires, including the Kincade Fire, which have recently occurred in their territory and which the Litigation Group is responsible for investigating. The Debtors are also engaged in significant efforts to prevent the occurrence of any additional wildfires during the 2019 wildfire season, including through the use of Public Safety Power Shutoffs ("**PSPS**") during times when high-risk weather conditions are forecasted.

16.     Given its familiarity with the Utility and experience in managing large, complex litigation matters, the Litigation Group is significantly involved in these Chapter 11 Cases, the Estimation Proceedings, the Tubbs Action, the Wildfire OII, and the Camp Fire Investigation, among other responsibilities. Each of these matters is proceeding on a highly expedited timeframe, with the Estimation Proceedings, the Tubbs Action, and the Wildfire OII scheduled to culminate via trial or similar hearings December 2019 or early in 2020, confirmation hearings in these Chapter 11 Cases to follow soon thereafter, and the Camp Fire Investigation proceeding apace. The Litigation Group's involvement in these Chapter 11 Cases, the Estimation Proceedings, the Tubbs Action, the

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

CPUC OII, and the Camp Fire Investigation is wide-ranging and includes, among other tasks: (a) coordinating and overseeing the significant discovery that is currently ongoing in each of these proceedings, including large-scale production of documents and regularly occurring depositions; (b) assisting the Debtors in preparing for hearings and trials; and (c) overseeing and reviewing multiple lengthy and complex documents for filing.

17.     In the Tubbs Action, there are 22 fact depositions scheduled to take place within the next 29 days, with an additional 50 fact depositions to be scheduled within that same time frame, and there is an unknown number of expert depositions that must be scheduled within the next 35 days.  In the Estimation Proceedings, the Debtors have produced approximately 3.3 million documents to date, the parties are expected to file at least 48 expert reports and take at least 73 depositions, and the hearing is set to estimate the Debtors' liability for at least 23 separate wildfires.

18.     The Litigation Group is also devoting significant resources to addressing legal issues arising from and related to the 2019 wildfire season, including regarding the Kincade Fire and PSPS.

19.     As but one specific example of the many conflicts that would arise if the Tiger Action were permitted to proceed, the attorney in the Litigation Group who is and has been primarily responsible for the Tiger Action since December 2016—Shari Hollis-Ross, Senior Counsel—is the Litigation Group attorney overseeing the Debtors' claims process in these Chapter 11 Cases.

20.     The IT and Customer Care Departments are also currently handling numerous tasks in addition to their ordinary day-to-day responsibilities.  Specifically, the IT Department is involved in the collection of information in connection with the ongoing and expedited discovery occurring in these Chapter 11 Cases, the discovery occurring in the Estimation Proceedings, and the discovery occurring in the Tubbs Action.  Moreover, the IT Department is addressing various ongoing technical issues relating to PSPS efforts, which, again, are crucial to public safety and the Debtors' ability to achieve a successful reorganization.  The Customer Care Department is responsible for all customer communication issues relating to PSPS and the Utility's efforts to support customers following the Kincade Fire.  For example, numerous employees from the Customer Care group who are key to the Tiger Action, including, among others, Matthew Workman (Manager, Complex

Gutierrez, who manages the Utility's relationships with core transport agents, are currently focusing on the Debtors' PSPS efforts.

21.     The added burden associated with the Tiger Action would likely impair the ability of the Litigation Group, the IT Department, and the Customer Care Department to perform these tasks effectively. Moreover, given the complex and expedited nature of these tasks, it is not a viable option to reassign them to new personnel in hopes of creating additional capacity for the employees from Litigation Group, IT Department, and Customer Care Departments who are key to the defense of the Tiger Action.

### The Debtors' Insurance Does Not Cover the Tiger Action

22.     The Debtors do not have liability insurance coverage for the allegations set forth in the Tiger Action.

Dated: November 8, 2019

/s/ Elizabeth A. Collier

Elizabeth Collier

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119