# EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE: PG&E CORPORATION and     )
PACIFIC GAS AND ELECTRIC        )
COMPANY,                        )
                                )
                Debtors.        )     **NO. 19-05257 JD**
                                )
                                )

San Francisco, California
Monday, October 28, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Creditor Committee Official Committee of Tort Claimants:

        BAKER & HOSTETLER LLP
        Levi's Plaza
        1160 Battery Street East - Suite 100
        San Francisco, California  94111
  **BY:  KIMBERLY S. MORRIS, ATTORNEY AT LAW**

For Ad Hoc Group of Subrogation Claim Holders:

        WILLKIE, FARR & GALLAGHER LLP
        878 Seventh Avenue
        New York, New York  10019
  **BY:  BENJAMIN P. MCCALLEN, ATTORNEY AT LAW**

For JCCP Plaintiffs:

        SKIKOS, CRAWFORD, SKIKOS & JOSEPH, LLP
        One Sansome Street - Suite 2830
        San Francisco, California  94104
  **BY:  STEVEN J. SKIKOS, ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Marla F. Knox, RPR, CRR
              Official Reporter

```
1    APPEARANCES:   (CONTINUED)

2

3    For 4000-Plus Fire Creditors:

4                        COREY, LUZAICH, DE GHETALDI & RIDDLE LLP
                         700 El Camino Real
5                        P. O. Box 669
                         Millbrae, California  94030
6                BY:  AMANDA L. RIDDLE, ATTORNEY AT LAW

7
     For Creditor Committee Official Committee of Unsecured
8    Creditors:

9                        MILBANK, TWEED, HADLEY & MCCLOY LLP
                         1850 K Street, N.W. Suite 100
10                       Washington, D.C.  20006
                 BY:  ANDREW LEBLANC, ATTORNEY AT LAW
11

12   For Fire Victims:
                         WALKUP, MELODIA, KELLY & SCHOENBERGER PC
13                       650 California Street - 26th Floor
                         San Francisco, California  94108
14               BY:  KHALDOUN BAGHDADI, ATTORNEY AT LAW

15
     For Ad Hoc Bondholder Committee:
16
                         AKIN, GUMP, STRAUSS, HAUER
17                       & FELD LLP
                         580 California Street
18                       San Francisco, California  94104
                 BY:  ASHLEY VINSON CRAWFORD, ATTORNEY AT LAW
19

20

21

22

23

24

25
```

Case: 19-30088   Doc# 4630-5   Filed: 11/08/19   Entered: 11/08/19 15:41:24   Page 3 of 11

| | |
|---|---|
| 1 | **APPEARANCES**: (CONTINUED) |
| 2 | |
| 3 | For Debtor-in-Possession PG&E Corporation: |
| 4 |                             CRAVATH, SWAINE & MOORE LLP<br>                            825 Eighth Avenue<br>                            New York, New York  10019 |
| 5 |                 BY:   **KEVIN ORSINI, ATTORNEY AT LAW**<br>                     **TIMOTHY G. CAMERON, ATTORNEY AT LAW** |

Case: 19-30088   Doc# 4630-5   Filed: 11/08/19   Entered: 11/08/19 15:41:24   Page 4 of 11

```
 1  Monday - October 28, 2019                           1:00 p.m.
 2                    P R O C E E D I N G S
 3                          ---oOo---
 4        THE CLERK:  Calling Civil 19-5257, In Re: PG&E
 5  Corporation and Pacific Gas & Electric Company.
 6      Counsel, please state your appearances for the record.
 7        MS. MORRIS:  Kimberly Morris --
 8        THE CLERK:  Please come forward to the microphones,
 9  thank you.
10        MS. MORRIS:  Kimberly Morris of Baker Hostetler on
11  behalf of the Official Committee of Tort Claimants.
12        MR. McCALLEN:  Good afternoon, Your Honor, Benjamin
13  McCallen, Willkie Farr & Gallagher on behalf of the Ad Hoc
14  Subrogation Group.
15        MR. BAGHDADI:  Good afternoon, Your Honor, Khaldoun
16  Baghdadi, co-liaison counsel in the State court JCCP
17  proceedings.  And with me in court is also Mr. Steven Skikos,
18  also co-liaison in the same proceedings.
19        MR. ORSINI:  Good afternoon, Your Honor, Kevin Orsini,
20  Cravath, Swaine & Moore, on behalf of debtors.  Also here with
21  me is my partner, Tim Cameron, who will handle a significant
22  portion of the argument today.
23        THE COURT:  I'm sorry.
24        MR. ORSINI:  He will handle a significant portion of
25  the discussion today.  I just have some preliminary remarks and
```

then I will cede the podium.

**THE COURT:** Well, let's see. Who is going to represent the Plaintiffs' side?

**MS. MORRIS:** I will, Your Honor.

**THE COURT:** Ms. Morris, okay. All right. Go ahead.

**MR. ORSINI:** So, Your Honor, I thought just at the outset -- and then I will cede the podium -- I just wanted to give the Court an update on a couple of the issues we discussed when we were here last week, where we stand with respect to claims coming in and the Bar Date because I do think it is relevant to the question of sampling.

We have been pleased to see that there has been a significant increase as we have processing -- been processing the claims above the participation rates that we were initially seeing.

Just to give the Court a sense as to where we are right now, as of October 21st, which was the Bar Date, there were approximately 45,000 claims related to the wildfires that have been processed by the vendor who is taking all these in under the Bankruptcy Court order. There is approximately 20- to 25,000 claims that were submitted in paper that are still being processed. So we don't quite know what is in those yet. We just know they exist. So our expectation is we will wind up with somewhere in the range of 70,000 to 80,000 wildfire claims. Now, that --

1   **THE COURT:** Well, that sounds good but out of how
2   many --
3   **MR. ORSINI:** Well, that begs the question, right, what
4   percentage participation is that? And there are different ways
5   to look at that because -- as I think Mr. Singleton was noting
6   when he was here last week -- there are some duplicates. There
7   are also circumstances where -- let's say that I had owned a
8   piece of property in the Town of Paradise, and I had a house
9   that burned down and I lived there with my wife and my child,
10  in some instances we will have three claims associated with
11  that piece of property.
12      So I think what all sides have been undertaking including
13  to prepare for estimation is to try and make heads or tails of
14  what we actually have in terms of participation. One way to
15  look at it is to try to map all of the claims that have come in
16  to pieces of property that have structures that Cal Fire
17  identified as being damaged or destroyed during the fires.
18      We still have 25,000 claims to process, but what we have
19  seen so far -- and these are rough numbers because it is a
20  rough analysis -- but what we have seen so far is there appear
21  in the Camp Fire, for example, to be claims associated with
22  roughly 70 percent of the addresses that Cal Fire identified as
23  having a damaged or destroyed property.
24      Now, I expect that number will go up as we process the
25  rest of the claims. I don't know by how much. Another way to

1  look at it is people.  We have done an analysis of how many --
2          **THE COURT:**  That's just for the Camp Fire?
3          **MR. ORSINI:**  That was for Camp.  For Tubbs we are
4  seeing numbers that are roughly in the same range.  For the
5  non-Tubbs North Bay fires it can fluctuate based on the
6  individual fire from a low of roughly 50 percent to one I think
7  is closer to 80 percent.
8      In terms of people, we looked at the Town of Paradise by
9  way of example.  Prior to the fires, the census count was
10  roughly 26,000 residents.  Our rough analysis so far -- and we
11  still haven't processed those claims I talked about -- so far
12  we see claims by roughly 20,000 people who say they lived in
13  the Town of Paradise prior to the Camp Fire.  So high
14  70 percent.
15      With all that in mind, we do agree with the Court that we
16  would like as many Claimants who have valid claims in their
17  mind to submit claims in time.  So we considered the issue
18  further.  We notified the TCC this morning that we are amenable
19  to an extension of the Bar Date by two months to bring it from
20  October 21st to December 20th, which I think is the Friday.  We
21  considered going longer.
22      The reason, candidly, we stuck with December 20th as a
23  proposal is we think that will already challenge our ability to
24  incorporate all of the data into the estimation process given
25  our schedule, but we have a lot of professionals.  We can make

```
 1  it happen.  Our concern is if you push it out too much further
 2  than that, it will challenge our ability for the experts to get
 3  that processed in time so that it can be included in rebuttal
 4  reports, in depositions, so each side has an opportunity to
 5  consider that.
 6       Of course, if claims come in after December 20th Bar
 7  Date -- just like if claims have come in since October 21st --
 8  we will consider those, and I can represent to the Court that
 9  from the Debtors' perspective, we will be very open to allowing
10  those untimely claims.  We don't intend to use the Bar Date
11  and --
12       THE COURT:  Let me just pause.  So, Ms. Morris, 12/20,
13  does that sound better?  Is everybody happy with that on
14  Plaintiffs' side?
15       MS. MORRIS:  Your Honor, we just received this
16  position of the Debtors just before this hearing today.  And so
17  we are still processing it internally.  We are happy to hear
18  that they are open to some extension, but we will discuss it on
19  our side; and I believe we are meeting and conferring on this
20  right after this hearing today.
21       MR. ORSINI:  Including to work out the logistics, Your
22  Honor.
23       THE COURT:  It is good news, right?
24       MS. MORRIS:  Yes, it is good news that they are
25  agreeing to an extension.  Our Bar Date motion had sought two
```

alternative dates for a Bar Date, and I think we are going to discuss all of the issues including --

**THE COURT:** Which dates did you propose?

**MS. MORRIS:** I believe the date was an alternative date was the December 20th date, which they have agreed to, and I believe the first date that we had asked for was a January date; but I would have to go back and look at that.

**THE COURT:** And there -- if you two agree, then bankruptcy court is not going to have a problem with that as far as you know.

**MR. ORSINI:** We wouldn't expect the Court would have a problem with that. That is part of the reason we will meet and confer. We have a motion that is calendared up for a hearing in mid-November, I believe; but hopefully we can stipulate to this.

**THE COURT:** It sounds like at a minimum it would be December 20th. You all may ask for something longer. I take it your next date is down the road from December 20th. But that's good news. Okay. I'm happy to hear that. I hope the percentage rate is as high as 70 as a base and will only go up. Time will tell.

I understand, Mr. Orsini, what you are saying; but I think we ought to be able to do 90 percent or more. That should be realistic in a case like this. So I hope we get to that point, and I think the extension of the deadline is going to help with

```
 1  that.
 2        Now, what about the new fires?  What are we thinking about
 3  in terms of estimation impact, Ms. Morris?
 4            MR. ORSINI:  So with respect to --
 5            THE COURT:  Let me start with Ms. Morris.
 6            MS. MORRIS:  Your Honor, the treatment of the claims
 7  that have arisen in connection with the Kincade and the other
 8  fires from this weekend, claims that have already arisen or
 9  that may arise in connection with those fires, their treatment
10  of the bankruptcy process, we need to confer with the various
11  constituents in the bankruptcy on that; the debtors, the UCC,
12  all the constituents in the case.  And so we intend to do that
13  and report back to Your Honor as to its effect on estimation
14  after we have had a chance to do that.
15            THE COURT:  But the more -- the baseline proposition
16  is that -- are you going to ask for that to be included in the
17  estimation?
18            MS. MORRIS:  I think there are a number of issues that
19  affect the bankruptcy case as a whole.  We are not prepared to
20  address that issue today.  It is under consideration, and we
21  will address it with all the parties and then come back to
22  Your Honor when we are prepared to address it after we have a
23  chance to consider it.
24            THE COURT:  Mr. Orsini?
25            MR. ORSINI:  We too are in the process of assessing
```