# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>   **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>           **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIRST INTERIM APPLICATION OF LINCOLN PARTNERS ADVISORS LLC FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 1, 2019 THROUGH MAY 31, 2019**<br><br>Objection Date: November 29, 2019 |

| | |
|---|---|
| To: | <u>The Notice Parties</u> |
| Name of Applicant: | <u>Lincoln Partners Advisors LLC</u> |
| Authorized to Provide Professional Services to: | <u>Financial Advisor to the Official Committee of Tort Claimants</u> |
| Date of Retention: | <u>March 1, 2019</u> |
| Period for which compensation and reimbursement are sought: | <u>March 1, 2019 through May 31, 2019</u> |
| Amount of compensation and reimbursement are sought: | <u>$3,005,418.88 (100%)</u> |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | <u>$82,943.80</u> |

## SUMMARY OF FIRST INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 6/24/19 (DE 2722) | 3/1/19-3/31/19 | $953,443.63 | $32,119.37 | $762,754.90 | $32,119.37 | $762,754.90 | $32,119.37 | $190,688.73 |
| 7/23/19 (DE 3160) | 4/1/19-4/30/19 | $949,683.25 | $24,289.37 | $759,746.60 | $24,289.37 | $759,746.60 | $24,289.37 | $189,936.65 |
| 8/28/19 (DE 3734) | 5/1/19-5/31/19 | $1,102,292.00 | $26,535.06 | $881,833.60 | $26,535.06 | $881,833.60 | $26,535.06 | $220,458.40 |
| **Total for First Interim Fee Application** | | **$3,005,418.88** | **$82,943.80** | **$2,404,335.10** | **$82,943.80** | **$2,404,335.10** | **$82,943.80** | **$601,083.78** |

Objections to Monthly Fee Statements:  No objections have been filed regarding the First, Second or Third Monthly Fee Statements for March 1, 2019 to May 31, 2019.

**SUMMARY OF HOURS INCURRED BY PROFESSIONAL DURING**

**THE APPLICATION PERIOD**

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Brent Williams | Managing Director | $ 1,195 | 601.1 | $ 718,254.75 |
| Alex Stevenson | Managing Director | 1,195 | 212.6 | 254,057.00 |
| Brendan Murphy | Managing Director | 1,095 | 738.2 | 808,329.00 |
| Troy Peters | General Counsel (In-House) | 1,195 | 10.1 | 12,069.50 |
| Sherman Guillema | Director | 895 | 44.2 | 39,559.00 |
| Peter Gnatowski | Vice President | 795 | 398.1 | 316,489.50 |
| Carl Comstock | Associate | 695 | 242.1 | 168,259.50 |
| Matt Merkel | Associate | 695 | 590.1 | 410,084.75 |
| Naeem Muscatwalla | Senior Analyst | 495 | 236.4 | 117,018.00 |
| Riley Jacobs | Analyst | 395 | 433.3 | 171,153.50 |
| Alex Gebert | Analyst | 395 | 98.8 | 39,026.00 |
| Rikki Maynard | Legal and Professional Support | 250 | 38.3 | 9,575.00 |
| Jane Su | Professional Support | 250 | 14.6 | 3,650.00 |
| Jackie Hurley | Professional Support | 250 | 16.5 | 4,125.00 |
| **Subtotal** | | | **3,674.3** | **$ 3,071,650.50** |
| Less: 50% Discount for Non-Working Travel Time | | | | (66,231.63) |
| **Grand Total** | | | | **$ 3,005,418.88** |

# SUMMARY OF HOURS INCURRED BY PROJECT CATEGORY DURING

# THE APPLICATION PERIOD

| Task Code | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 1 | DIP Financing and Related Analysis | 99.2 | $ 88,904.00 |
| 2 | First / Second Day Motions and SOFAs | 29.2 | 25,214.00 |
| 3 | Financial Analysis (Requested by Counsel, or Otherwise) | 345.9 | 273,580.50 |
| 4 | 13-Week Cash Flow / MOR / Liquidity Analysis | 102.7 | 74,136.50 |
| 5 | Due Diligence of Debtor's Assets and Liabilities | 402.9 | 303,285.50 |
| 6 | Due Diligence of Wildfire Safety Plan and Related Analysis | 421.0 | 364,255.00 |
| 7 | Debtor Professionals - Diligence / Meetings / Calls | 81.2 | 78,264.00 |
| 8 | UCC Professionals - Diligence / Meetings / Calls | 26.0 | 29,310.00 |
| 9 | Other Professionals / Interested Parties - Diligence / Meetings / Calls | 30.8 | 36,086.00 |
| 10 | Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls | 235.0 | 240,515.00 |
| 11 | Assist Counsel in Responses / Objections to Bankruptcy Court Motions | 187.1 | 168,754.50 |
| 12 | Committee Related Matters - Diligence / Meetings / Calls | 300.7 | 271,431.75 |
| 13 | Bankruptcy Filings and Document Review | 266.5 | 195,717.50 |
| 14 | Review of Executory Contracts and Related Analysis | 25.9 | 20,040.50 |
| 15 | Review of Employee-Related Matters, Including Retention Plans | 282.7 | 219,059.50 |
| 16 | Review of Claims and Related Analysis | 40.8 | 32,026.00 |
| 17 | Asset Sale(s), Strategic Alternatives, and Related Analysis | 143.2 | 107,254.00 |
| 20 | Benchmarking and Related Analysis [1] | 111.1 | 63,084.50 |
| 21 | Term Sheets, Plan, and Disclosure Statement Analysis | 56.9 | 52,495.50 |
| 23 | Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance | 78.7 | 85,626.50 |
| 24 | Travel Time - Non Working Travel | 117.4 | 132,463.25 |
| 25 | Project Administration | 164.5 | 129,257.50 |
| 26 | Professional Retention | 77.3 | 59,083.50 |
| 28 | Other/Miscellaneous | 23.9 | 6,244.50 |
| 29 | Fee Application Preparation | 23.8 | 15,561.00 |
| **Subtotal** | | **3,674.3** | **3,071,650.50** |
| | Less: 50% Discount for Non-Working Travel Time | | (66,231.63) |
| **Grand Total** | | **3,674.3** | **$ 3,005,418.88** |

---

[1] Task description #20 was updated in Lincoln's third monthly fee statement for the month of May to reflect a broader set of benchmarking-related tasks.

## SUMMARY OF EXPENSES INCURRED DURING THE APPLICATION PERIOD

| Expense Type | Amount |
|---|---|
| Airfare | $ 25,045.26 |
| Data Processing / Materials For Committee | 295.42 |
| Ground Transportation (Taxi/Uber/Car Service) | 7,733.05 |
| Hotel Stay (Traveling) | 22,952.73 |
| Internet/Online Fees | 494.66 |
| Meals - Clients / Interested Parties | 1,111.00 |
| Meals - In-Town Only | 811.86 |
| Meals - Out-of-Town Travel Only | 4,949.13 |
| Other / Miscellaneous | 219.76 |
| Parking | 799.60 |
| Printing/Photocopying (In-House) | 4,750.51 |
| Research (Databases) | 13,599.00 |
| Teleconferencing | 181.82 |
| **Total** | **$82,943.80** |

Lincoln Partners Advisors LLC ("**Lincoln**" or the "**Applicant**"), the financial advisor for the Official Committee of Tort Claimants (the "**TCC**"), representing the largest group of stakeholders in the jointly administered bankruptcy cases (the "**Cases**") of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**"), hereby submits its First Interim Fee Application (the "**Fee Application**") for allowance of compensation for professional services performed by Lincoln for the period commencing March 1, 2019 through and including May 31, 2019 (the "**Application Period**") and reimbursement of its actual and necessary expenses incurred during the Application Period. The applicant seeks interim approval of compensation and reimbursement of expenses totaling **$3,088,362.68,** which sum represents compensation for professional services rendered in the amount of **$3,005,418.88** and reimbursement for expenses incurred in the amount of **$82,943.80.** The Applicant is seeking entry of an order pursuant to sections 330, 331, and 1103 of title 11, United States Code (the "**Bankruptcy Code**"); Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); the Local Rules for the United States Bankruptcy Court for the Northern District of California (the "**Local Rules**"); the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"); the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014 (the "**Narrative Guidelines**"); and the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professional*s, entered on February 27, 2019 (the "**Interim Compensation Order**" and collectively, the "**Guidelines**").

This Application is based upon the contents hereof, together with the exhibits; the certification of Brent C. Williams filed concurrently herewith; the pleadings, papers, and records on file in the cases; and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Narrative Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit A.**

This Fee Application summarizes the services rendered by Lincoln on behalf of the TCC during the Application Period. A breakdown of the hours and fees by professional is attached hereto as **Exhibit B**. A breakdown of the hours and fees by task code is attached hereto as **Exhibit C**. A breakdown of expenses by expense type is attached hereto as **Exhibit D.** A detailed copy of the time records by professional and by task code is attached hereto as **Exhibit E**. A detailed copy of the expense records by professional and expense type is attached here to as **Exhibit F.**

## TERMS AND CONDITIONS OF EMPLOYMENT

1.      Lincoln is compensated on an hourly fee basis, plus reimbursement of actual and necessary expenses incurred. For further information regarding the terms and conditions of Lincoln's retention, please refer to the Retention Order (defined below).

## RELEVANT BACKGROUND

2.      On January 29, 2019 (the "**Petition Date**"), the Debtors filed the Cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

3.      On February 15, 2019, the Office of the United States Trustee ("**UST**") filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453]. Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530]. The current members of the TCC are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v) Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen M. Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson.

4. On March 30, 2019, the TCC filed its *Application to Employ Lincoln Partners Advisors LLC as Financial Advisor Effective as of March 1, 2019* [Docket No. 1134] (the "**Retention Application**"). On May 10, 2019, the Court entered its *Order Approving the Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. 2014 and 5002 to Retain and Employ Lincoln Partners Advisors LLC as Financial Advisors Effective as of March 1, 2019* [Docket No. 1976] (the "**Retention Order**").

5. On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("Fee Examiner") in the Cases [Docket No. 2267]. Lincoln has communicated with the Fee Examiner, and it has supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

## RELIEF REQUESTED AND BASIS FOR RELIEF

6. This Application is Lincoln's first interim request for allowance and payment of fees and expenses as financial advisor to the TCC.

7. Pursuant to Bankruptcy Code §§ 330 and 331, Lincoln respectfully requests entry of an order, on an interim basis, allowing and approving $3,088,362.68, which sum represents compensation for professional services rendered in the amount of $3,005,418.88 and reimbursement for expenses incurred in the amount of $82,943.80. The services and expenses for which interim compensation is sought herein were rendered for and on behalf of the TCC. Lincoln respectfully submits that the nature of the services has been necessary and beneficial to the TCC in maximizing their recoveries.

8. Lincoln's retention and corresponding engagement scope have been to serve as the financial advisor to the TCC during the pendency of the Cases. While the Official Committee of Unsecured Creditors ("**UCC**") retained FTI Consulting ("**FTI**") and Centerview Partners ("**Centerview**") to serve two separate financial advisory roles, the TCC's focus on efficiency and cost-effectiveness has required Lincoln to perform both functions (*emphasis added*) (e.g. investment banker and financial advisor to the TCC). The TCC and its counsel Baker & Hostetler LLP ("**Baker**" or "**Counsel**") required Lincoln to dedicate senior resources to many specific

assignments and case issues in these matters. This has also been reflected in the professionals involved and hours worked.

9. That said, in an effort to streamline and control professional fees and expenses where possible, Lincoln endeavored to minimize the expenditure of time by its senior members and to delegate responsibilities to junior members, associates, analysts, and other employees as appropriate.

10. Further, Lincoln has made every effort to ensure that this Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its team members, as well as with other retained professionals in these cases. Lincoln has supplied the Fee Examiner and the UST with Lincoln's monthly fee statements in an electronic format (Excel) Lincoln believes is acceptable to the Fee Examiner and the UST. Pursuant to Bankruptcy Code § 504, Lincoln has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Lincoln in the Bankruptcy Cases, other than as may be shared among the members of Lincoln.

<u>**SUMMARY OF PROFESSIONAL SERVICES RENDERED**</u>

11. The Debtors' Cases are among the largest and most complex cases in history. There are many issues and considerations impacting the TCC and tort claimants' potential recoveries. The services rendered by Lincoln include, but are not limited to, the following project billing categories. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below.

a. <u>DIP Financing and Related Analysis (001)</u>: Time in this category relates to matters involving the Debtors-in-Possession financing (the "**DIP**"). Lincoln analyzed the key terms, conditions, fees, credit documents, and related support of the DIP financing. Lincoln compared the DIP financing to other similar or relevant DIP financings observed in the market over the past many years. Lincoln analyzed the size of the DIP financing in conjunction with the corresponding DIP budget and forecasted cash flows to determine the reasonableness of the funding amount relative to the forecasted liquidity needs. Lincoln also reviewed the DIP budget, forecasted cash flows, and underlying assumptions supporting the budget to determine the reasonableness and

achievability of the projections. Lincoln considered the limited reporting requirements associated with the DIP financing in the context of timely and efficient communication of performance and liquidity updates. Lincoln participated in diligence calls with the Debtors to understand the forecasted cash flows and the underlying budget assumptions. Lincoln also prepared materials summarizing and analyzing the DIP terms and conditions for Counsel and the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **99.20 hours** and **$88,904.00** in fees.

b. <u>First / Second Day Motions and SOFAs (002):</u> Time billed to this category relates to review and analysis of the first and second day motions filed by the Debtors addressing various topics, including: (1) cash management system; (2) insurance; (3) taxes; (4) utilities, (5) reclamation claims; (6) employee wages and benefits; (7) prepetition obligations to lien claimants, operational integrity suppliers, and natural gas and electricity exchange operators; (8) procedures for interim compensation of professionals retained in the Cases; and (9) procedures for ordinary course professionals. Lincoln reviewed and evaluated the motions to ensure the reasonableness of the requested relief, the basis and amounts of the proposed vendor payments, and the associated reporting procedures. Lincoln also reviewed and analyzed the Debtors' Schedules and Statements of Financial Affairs ("**SOFAs**") to understand the Debtors' financial and operational position.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **29.20 hours** and **$25,214.00** in fees.

c. <u>Financial Analysis (Requested by Counsel, or Otherwise) (003):</u> Throughout the Application Period, Lincoln spent significant time evaluating the Debtors' financial performance and business operations, including reviewing historical results, operating metrics, earnings releases, outstanding assets and liabilities, and financial forecasts. Lincoln reviewed and analyzed information provided by the Debtors; public SEC filings, such as the Debtors' quarterly and annual financial statements; investor presentations; and regulatory filings such as the pending rate cases and the cost of capital requests with the CPUC and FERC. Lincoln created various models and analyses including an operating financial model, waterfall recovery model, and a bondholder make-whole analysis, among others. This assisted Counsel and the TCC in understanding the Debtors'

financials position, outstanding claims, assets and liabilities, and potential recoveries to tort claimants across various scenarios and assumptions.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **345.90 hours** and $**273,580.50** in fees.

d.     13-Week Cash Flow / MOR / Liquidity Analysis (004):  This category encompasses services rendered related to the Debtors' liquidity, cash flow, and monthly operating reports. Throughout the Application Period, Lincoln monitored the Debtors' liquidity position and cash flow results compared to initial DIP forecast and subsequent updated monthly cash flow forecasts. Lincoln reviewed and analyzed the bi-weekly actual to budgeted results, reviewed the assumptions driving the updated cash flow forecasts furnished by the Debtor, and compared original cash flow forecasts to updated forecasts to understand the key drivers of the variances and changes. Based on the review of the liquidity and cash flow results, Lincoln created diligence questions and made numerous requests to the Debtors in order to understand the variances, changes, and assumptions. The diligence requests were supplemented with diligence calls with the Debtor, when applicable. Lincoln frequently prepared presentations for Counsel and the TCC regarding the Debtors' liquidity and cash flow position, actual versus forecasted results, and future projections.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **102.70 hours** and **$74,136.50** in fees.

e.     Due Diligence of Debtor's Assets and Liabilities (005):  Time billed in this category relates to Lincoln's time spent reviewing, analyzing, and performing diligence in order to understand and evaluate the Debtors' comprehensive portfolio of assets and liabilities. Lincoln reviewed extensive public filings (quarterly reports, annual reports, earnings releases, etc.); regulatory filings (CPUC, FERC, etc.); relevant industry and research reports; and due diligence documents provided by the Debtors. Lincoln's diligence efforts included assessment of the Debtors' electrical generating assets including hydroelectric plants, electrical distribution and transmissions assets, natural gas assets, and corporate real estate assets. Lincoln created presentations for Counsel and the TCC to summarize and analyze the Debtors' operations, assets, and liabilities.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **402.90 hours** and **$303,285.50** in fees.

        f.   <u>Due Diligence of Wildfire Safety Plan and Related Analysis (006):</u>  During the Application Period, Lincoln spent time reviewing and analyzing the Debtors' wildfire mitigation and safety efforts, including the development and implementation of the Wildfire Safety Plan ("**WSP**"). Lincoln participated in meetings and calls with the Debtors' management and their advisors to discuss the development, implementation, and status of the WSP. Lincoln reviewed and evaluated metrics and targets of the WSP, including vegetation management, system hardening, inspections, power safety shutoff programs, and situational awareness, among others. Lincoln analyzed the Debtors' periodic status updates regarding the WSP, including plan progress, actual results to plan targets, and reasons for variances to plan. Lincoln also considered the many wildfire safety requirements and findings of the CPUC, Governor Gavin Newson's Strike Force report, Blue Ribbon Commission report, subsequent announcements, and subsequent monitoring reports. Lincoln considered the risks wildfires posed on effectuating a plan of emergence and maximizing value for the tort claimants. Lincoln also considered wildfire safety as it relates to partaking in future California legislative funding and/or insurance programs. Lincoln frequently created presentations for Counsel and the TCC detailing the WSP, status updates of the WSP, and legislative and regulatory updates related to the WSP.

Lincoln also spent substantial time analyzing the Debtors' motion to establish a $105 million Wildfire Assistance Fund for urgent needs of the fire victims who had been displaced by the fires. Lincoln analyzed the Debtors' filings and strategized with Counsel on a method to calculate an appropriate funding amount to support fire victims. Lincoln researched and analyzed various resources related to the areas affected by the fires, estimated the number of fire victims, analyzed the potential number of uninsured and underinsured victims, and estimated an appropriate funding amount to support the fire victims. Lincoln prepared various analyses and presentations for Counsel and the TCC to assist in preparing an objection to increase the Wildfire Assistance Fund.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **421.00 hours** and **$364,255.00** in fees.

g.      Debtor Professionals - Diligence / Meetings / Calls (007):  During the Application Period, Lincoln held calls and attended in-person meetings with the Debtors and the Debtors' advisors, including Alix Partners and Lazard Freres & Co. ("**Lazard**"), to discuss and negotiate matters related to the Cases including business diligence, liquidity forecasts, DIP budget, WSP, the Short-Term Incentive Plan ("**STIP**"), the two Quanta Energy Services contracts that provide inspection and repair services to the Debtors' electrical infrastructure, and other filed motions and matters.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **81.20 hours** are **$78,264.00** in fees.

h.      UCC Professionals - Diligence / Meetings / Calls (008):  During the Application Period, Lincoln held calls and attended in-person meetings with the UCC and professionals representing the UCC, including FTI and Centerview, to discuss matters related to the Cases and joint interests, including WSP, other professional retentions, the STIP, and other filed motions and matters.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **26.00 hours** and **$29,310.00** in fees.

i.      Other Professionals / Interested Parties - Diligence / Meetings / Calls (009): During the Application Period, Lincoln held confidential calls and attended in-person meetings with the other professionals and interested parties to the Cases to discuss case-related matters and potentially joint interests. Lincoln spent time preparing for and communicating via calls, meetings, and emails with these professionals and interested parties.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **30.80 hours** and **$36,086.00** in fees.

j.      Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls (010):  Time spent in this category is related to correspondence with Baker regarding strategy, approach, recommendations, and financial analyses of various filings by the Debtors and case-specific issues,

including many of the topics and issues addressed in this Fee Application. Lincoln also coordinated with Baker on TCC discussion topics for weekly meetings and related presentation materials.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **235.00 hours** and **$240,515.00** in fees.

k. <u>Assist Counsel in Responses / Objections to Bankruptcy Court Motions (011)</u>:  During the Application Period, Lincoln assisted Baker with financial analyses related to evaluating and/or responding to issues impacting the tort claimants and/or motions filed by the Debtors, including Lazard's retention application, STIP motion, Wildfire Assistance Fund, and other motions and matters.  Lincoln researched topics relevant to the motions and issues, prepared various analyses, and presented findings and recommendations to Counsel. In addition, Lincoln prepared declarations in support of its findings and the filings prepared by Counsel.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **187.10 hours** and **$168,754.50** in fees.

l. <u>Committee Related Matters - Diligence / Meetings / Calls (012)</u>:  This task code encompassed substantial time for services rendered to the TCC including preparation of presentations; attending regularly scheduled (typically weekly) committee meetings including physical fire site visits such as Ghost Ship, the Atlas Fire Zone, and Paradise; and participation in other regular communications with individual TCC members outside of the scheduled weekly meetings. Lincoln assisted the TCC with evaluating the numerous issues and topics covered in this Fee Application and assessing their potential financial impact to tort claimants and/or their eventual recovery.  Lincoln prepared and presented numerous analyses, presentations and recommendations to the TCC on various topics including the Debtors' financial and operational position, the proposed DIP, First Day motions, the Ad Hoc Committee of Unsecured Noteholders' term sheet, Wildfire Fund Recovery motion, STIP motion, and the Wildfire Safety Plan, among many others.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **300.70 hours** and **$271,431.75** in fees.

m. <u>Bankruptcy Filings and Document Review (013)</u>:  During the Application Period, Lincoln reviewed and evaluated various other documents, motions, and filings that are not

covered under a specific task code in this Fee Application. This includes the Debtors' motion and objections to extend the exclusivity period, bar date and notice procedures motion, TURN and equity committee motions and holdings, retention applications, and CPUC findings, among others. Lincoln reviewed the reasonableness of the requested relief, the impact the requested relief will have on the Debtors' operations and financial position, and the impact the requested relief may have on the tort claimants or their ultimate recovery. Lincoln also regularly reviewed the Debtors' and third-party media coverage to monitor and evaluate developments related to the Cases and the impact, if any, to the tort claimants.

One junior Lincoln professional daily reviewed the court dockets. This associate summarized and circulated important and relevant filings internally to ensure the engagement team stayed informed of key filings and case developments in a timely and cost-efficient manner. A separate Lincoln junior professional monitored, on a daily basis, the Debtors' and third-party media coverage, including news articles from regional and national media outlets, restructuring publications, subscription databases and regulatory websites. This associate monitored and analyzed developments, trends, and market sentiment related to the Debtors, regulators, third-parties, and tort victims. Similar to the key docket filings, key media coverage articles and/or publications were circulated to the engagement team and, in certain instances, Counsel and the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **266.50 hours** and **$195,717.50** in fees.

n.  <u>Review of Executory Contracts and Related Analysis (014)</u>:  During the Application Period, Lincoln reviewed and evaluated various executory contracts, including the power purchase agreements and the Quanta Energy Services contract(s). Lincoln's analysis included understanding the requirements under each contract; monetary considerations; cure costs, if any; business and operations impact of assuming and rejecting these contracts; and review of potential alternatives to these contracts. Lincoln also analyzed the scope and benefits of the contracts, if appropriate, as it relates to the Debtors' Wildfire Safety Plan.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **25.90 hours** and **$20,040.50** in fees.

o. <u>Review of Employee-Related Matters, Including Retention Plans (015)</u>: Time billed to this category primarily focused on the review and analysis of the proposed 2019 STIP and the retention of William Johnson as Chief Executive Officer of PG&E Corporation.

Lincoln evaluated and analyzed the Debtors' proposed STIP. This included a review of the plan terms; plan participants; performance metrics at threshold, target, and maximum levels; plan costs and the timing of plan payments. Lincoln performed various analyses to evaluate the proposed STIP relative to similar peers in the utility industry, comparable bankruptcy cases, and the Debtors' historical incentive plans. Lincoln prepared numerous presentations for Counsel and the TCC to summarize and analyze the proposed STIP that assisted Counsel in modifying and improving the STIP for greater weighting on safety performance.

Lincoln also analyzed Mr. Johnson's compensation package including the annual equity awards and the one-time performance-based stock options. Lincoln evaluated Mr. Johnson's compensation relative to similar peers in the industry and past CEOs at the Debtor. Lincoln considered the cost of Mr. Johnson's compensation package at various performance levels and at various share prices post-emergence. Lincoln prepared a presentation for Counsel and the TCC that summarized and analyzed Mr. Johnson's compensation package.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **282.70 hours** and **$219,059.50** in fees.

p. <u>Review of Claims and Related Analysis (016)</u>:  During the Application Period, Lincoln evaluated and analyzed various claims including the size, type, and expected treatment of the claims post-petition and upon emergence.  Lincoln reviewed and considered information provided by the Debtors, the Operational Integrity Supplier motion, the 503(b)(9) Procedures motion, the Lien Claimant motion, and other documents to understand the proposed size and validity of various claims. Lincoln assessed the reasonableness of the proposed treatment of the claims, the potential impact to the Debtors' operations, and the potential impact to the tort claimants and their ultimate recovery.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **40.80 hours** and **$32,026.00** in fees.

        q.    <u>Asset Sale(s), Strategic Alternatives, and Related Analysis (017):</u> Time billed to this category relates to evaluating various strategic alternatives available to the Debtors including potential sale(s) of core and non-core assets. Lincoln reviewed and evaluated the Debtors' comprehensive asset portfolio for identifying potential sale(s) of assets, including electrical generating, distribution and transmissions assets, natural gas transmission and distribution assets, and real estate assets. In reviewing the potential sale(s) of assets, Lincoln considered the nature of the Debtors' asset base, impact to operations from the sale(s), and the estimated recovery value, if any. Lincoln performed diligence on the assets based on publicly available information including the SEC, CPUC, and FERC and based on information supplied by the Debtors. Lincoln also evaluated the impact of the CPUC and other regulatory proceedings on any asset sale(s). Lincoln prepared presentations for Counsel and the TCC summarizing and analyzing the Debtors' asset portfolio and the potential impact of any asset sale(s).

The total hours and amount charged by Lincoln to this matter during the Application Period represents **143.20 hours** and **$107,254.00** in fees.

        r.    <u>Benchmarking and Related Analysis (020):</u> Time billed to this category includes analyzing the Debtors' business and operating performance relative to competitors and/or other similar utility companies. Lincoln performed significant research to identify a set of comparable companies with characteristics similar to the Debtors, considering such factors as nature and size of operations, operating history, geographic region, financial performance and regulatory oversight. Using similar characteristics, Lincoln also developed a list of precedent transactions involving companies similar to the Debtors. Lincoln compiled various operating metrics of the Debtors' business, including revenue, rate base and profitability, and Lincoln compared these operating metrics to those of the comparable public companies. These comparisons helped Lincoln understand the financial and operational performance of the Debtors relative to comparable companies and the potential impact to its enterprise value.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **111.1 hours** and **$63,084.50** in fees.

   s.  <u>Term Sheets, Plan, and Disclosure Statement Analysis (021):</u> Time billed to this category includes reviewing and evaluating term sheets, proposals, and plans submitted by the Debtors and other parties in interest including the Ad Hoc Committee of Unsecured Noteholders. Lincoln performed various analyses to understand, among other things, the consideration and potential recoveries to the tort claimants, plan funding, proposed capital structure, total enterprise value of the Debtors, and overall feasibility of the illustrative plans. Lincoln prepared numerous presentations to summarize and analyze the term sheets, proposals, and plans for Counsel and the TCC.

  The total hours and amount charge by Lincoln to this matter during the Application Period represents **56.9 hours** and **$52,495.50** in fees.

   t.  <u>Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance (023):</u> Time billed to this category includes preparation and attendance of court hearings, testimony and depositions – in person or by phone. Preparation included strategy discussions internally and with Counsel; reviewing hearing specific filings including motions, objections, and replies; and reviewing previously prepared work product by Lincoln or other advisors.

  The total hours and amount charged by Lincoln to this matter during the Application Period represents **78.70 hours** and **$85,626.50** in fees.

   u.  <u>Travel Time - Non Working Travel (024):</u>

  This task code encompassed the non-working travel time spent by Lincoln personnel travelling to and from court hearings. This task code also included depositions and meetings with the TCC, Counsel, and other professionals. Non-working travel time has been discounted by 50% from Lincoln's standard professional hourly rates.

  The total hours and amount charged by Lincoln to this matter during the Application Period represents **117.4 hours** and **$132,463.25** in fees.

1                v.     <u>Project Administration (025)</u>:  Time spent in this category related to Lincoln's planning, strategizing, and coordinating of case-related efforts, including the development of work streams, staffing of resources, and internal communication of project allocation(s) to avoid unnecessary duplication of efforts. Given the scope and complexities of the Cases, significant time in March was devoted to establishing an effective plan and approach to support Counsel and the TCC.  This code also includes the establishment of an internal work site to house the task and time tracking databases, key filings, and various work product prepared for Counsel and the TCC. To coordinate efforts, Lincoln held a weekly internal meeting to discuss outstanding deliverables, allocate new tasks between team members, and discuss new case developments that may have an impact to the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **164.50 hours** and **$129,257.50** in fees.

                w.     <u>Professional Retention (026)</u>:  Time billed to this category related to the professional retention of Lincoln by the TCC, including drafting retention papers,  negotiating the terms of engagement, preparing conflicts and disclosure statements, and developing a work plan along with Counsel that ensured no overlapping responsibilities between Lincoln and other advisors to the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **77.30 hours** and **$59,083.50** in fees.

                x.     <u>Other/Miscellaneous (028)</u>:  Time spent in this category related to the various miscellaneous case administration tasks including utilizing junior professional support members for cost-efficiency to prepare materials for TCC meetings, court hearings, and meetings with Counsel and other professionals.

The total hours and amount charged by Lincoln to this matter during the Application Period are **23.90 hours** representing **$6,244.50** in fees.

                y.     <u>Fee Application Preparation (029)</u>:  Lincoln's work in this task code consisted of preparing monthly fee statements to comply with local and federal rules including

reviewing timekeeping records for privileged, confidential, and work product issues; reducing time and expense entries; and working with Counsel to draft the fee application motion.

The total hours and amount charged by Baker to this matter during the Application Period represents **23.80 hours** and **$15,561.00** in fees.

### **CONCLUSION**

12. Lincoln believes that this Application appropriately sets forth the significant services Lincoln performed on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered. Thus, Lincoln respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient, and economical. Accordingly, Lincoln respectfully requests that this Application for allowance of fees and expenses, on an interim basis, be granted in all respects.

Dated: November 8, 2019

LINCOLN PARTNERS ADVISORS LLC
By: */s/ Brent C. Williams*

Financial Advisor to the Official Committee of Tort Claimants

**<u>CERTIFICATION</u>**

I, Brent C. Williams, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1.　　I am a Managing Director and Co-Head of Lincoln's Special Situations Group at Lincoln Partners Advisors LLC ("Lincoln"). I submit this certification in support of the *First Interim Application of Lincoln Partners Advisors LLC for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period March 1, 2019 through May 31, 2019* (the "Application").[2]

2.　　I have personally reviewed the information contained in the Application and believe its contents to be true to the best of my knowledge, information and belief.

3.　　The compensation and expense reimbursement sought in this Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330, 331, and 1103 of title 11, United States Code; Rule 2016 of the Federal Rules of Bankruptcy Procedure; the Local Rules for the United States Bankruptcy Court for the Northern District of California; the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professional*s, entered on February 27, 2019; the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013; and the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014.

---

[2] Capitalized terms not defined have the meanings used in the Application.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4.       The compensation and expense reimbursement requested in this Application are billed at rates, in accordance with practices, no less favorable than those customarily employed by Lincoln and generally accepted by Lincoln's clients.

Date:   November 8, 2019        LINCOLN PARTNERS ADVISORS LLC
BY: */s/ Brent C. Williams*

Financial Advisor to the Official Committee of Tort Claimants