Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*and*

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee
of Unsecured Creditors*

**STROOCK & STROOCK & LAVAN
LLP**
Mark A. Speiser (admitted *pro hac vice*)
(mspeiser@stroock.com)
Kenneth Pasquale (admitted *pro hac vice*)
(kpasquale@stroock.com)
Sherry J. Millman (admitted *pro hac vice*)
(smillman@stroock.com)
Harold A. Olsen (admitted *pro hac vice*)
(holsen@stroock.com)
180 Maiden Lane New York, NY 10038-
4982
Tel: (212) 806-5400
Facsimile: (212) 806-6006

*and*

**STROOCK & STROOCK & LAVAN
LLP**
David W. Moon (SBN 197711)
(dmoon@stroock.com)
2029 Century Park East
Los Angeles, CA 90067-3086
Tel: (310) 556-5800
Fax: (310) 556-5959

*Counsel for Mizuho Bank, Ltd., in its
capacity as HoldCo Term Loan
Administrative Agent*

Michael S. Stamer (admitted *pro hac vice*)
Ira S. Dizengoff (admitted *pro hac vice*)
David H. Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD
LLP**
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*and*

Ashley Vinson Crawford (SBN 257246)
**AKIN GUMP STRAUSS HAUER & FELD
LLP**
580 California Street
Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile: (415) 765-9501

*Counsel for the Ad Hoc Committee of Senior
Unsecured Noteholders of Pacific Gas and
Electric Company*

Andrew I. Silfen (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac vice*)
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*and*

Aram Ordubegian (SBN 185142)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105
Telephone: (415) 757-5500
Facsimile: (415) 757-5501

*Counsel for BOKF, NA, in its capacity as
Indenture Trustee for the Utility Senior Notes*

David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*and*

Michael S. Neumeister (SBN 274220)
Michelle Choi (SBN 313557)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

*and*

Matthew D. McGill (*pro hac vice*)
  mmcgill@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Counsel for the Ad Hoc Committee of
Holders of Trade Claims*

M. David Minnick (SBN 54148)
**PILLSBURY WINTHROP SHAW
PITTMAN LLP**
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94126-5998
(415) 983-1000
dminnick@pillsburylaw.com

*and*

Leo T. Crowley (*pro hac vice* pending)
**PILLSBURY WINTHROP SHAW
PITTMAN LLP**
31 West 52nd Street
New York, NY 10019-6131
(212) 858-1000
leo.crowley@pillsburylaw.com

*Counsel for Wilmington Trust, National
Association, in its capacity as Administrative
Agent for Holdco Revolver*


Timothy Graulich (admitted *pro hac vice*)
timothy.graulich@davispolk.com
David Schiff  (admitted *pro hac vice*)
david.schiff@davispolk.com
Daniel E. Meyer (*pro hac vice* application
pending)
daniel.meyer@davispolk.com
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:    (212) 701-5800

*and*

Andrew D. Yaphe (SBN 274172)
andrew.yaphe@davispolk.com
**DAVIS POLK & WARDWELL LLP**
1600 El Camino Real
Menlo Park, California 94025
Telephone:  (650) 752-2000
Facsimile:    (650) 752-2111

*Counsel for Citibank N.A., as
Administrative Agent for the
Utility Revolving Credit Facility*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

☐    Affects PG&E Corporation
☐    Affects Pacific Gas and Electric Company
☑    Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

**CONSOLIDATED OPENING BRIEF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND OTHER CREDITOR GROUPS AND REPRESENTATIVES REGARDING THE APPROPRIATE POSTPETITION INTEREST RATE PAYABLE ON UNSECURED CLAIMS IN A SOLVENT DEBTOR CASE**

Date:       December 11, 2019
Time:       10:00 a.m. (Pacific Time)
Place:      United States Bankruptcy Court
              Courtroom 17, 16th Floor
              450 Golden Gate Avenue
              San Francisco, CA 94102

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.    Unsecured Creditors Are Entitled to Postpetition Interest In a Solvent Debtor Case. ............................................................................................................ 5

    A.    Under Section 1124, Unimpaired Unsecured Creditors Are Entitled to Retain All of their Legal, Equitable and Contractual Rights Under Applicable State Law, Including the Right to Collect Interest at Contract or Otherwise Applicable State Law Rates. ........................................................................................................... 6

    B.    Unsecured Creditors in Rejecting Classes Are Entitled to Postpetition Interest at Contract or Otherwise Applicable State Law Rates Under the Fair and Equitable Test of Section 1129(b). ........................................................................................................ 9

    C.    Under Section 1129(a)(7), in Contrast, Unsecured Creditors in an Impaired Class Are Entitled to Receive Postpetition Interest at Least at the "Legal Rate" Before Any Distribution May Be Made to the Debtor's Equity Holders. ............................................................. 11

II.    In a Solvent Debtor Case, Contract or Other State Law Rates of Interest Presumptively Apply to the Payment of Postpetition Interest. ................. 13

    A.    The General Rule in the Ninth Circuit and Elsewhere Is that Contractual Rights to Interest in Solvent Debtor Cases Are Presumptively Enforced. ....................................................................................... 13

    B.    In the Absence of a Stated Contract Rate, California Law Imposes a Statutory Interest Rate for Contract-Based Claims Which Benefits from the Same Presumption in a Solvent Debtor Case. ................................................................................................................. 17

III.    Neither Ultra Petroleum Nor PPI Enterprises Compels a Different Result. ....................................................................................................................... 19

CONCLUSION ..................................................................................................................... 24

The Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the chapter 11 cases of the above-captioned debtors in possession (the "Debtors"), the Ad Hoc Committee of Senior Unsecured Noteholders (the "AHC"), BOKF, NA, in its capacity as Indenture Trustee for the Utility Senior Notes, the Ad Hoc Committee of Holders of Trade Claims (the "Trade Claims Committee"), Citibank, N.A., in its capacity as Utility Revolver Agent, and Mizuho Bank, in its capacity as Holdco Term Loan Agent (the "Term Loan Agent") and Wilmington Trust, National Association, in its capacity as the successor administrative agent for the Holdco Revolver ("Wilmington Trust" and, together with all of the foregoing, collectively, the "Creditor Groups")[1] hereby respectfully set forth the Creditor Groups' views on the appropriate rate of postpetition interest payable on unsecured claims under a chapter 11 plan in these cases, assuming for purposes of this brief that the Debtors prove to be solvent at the time any such plan is confirmed and becomes effective.[2]

## PRELIMINARY STATEMENT

1.      There is no question that unsecured creditors of a solvent debtor are entitled to postpetition interest.  Both plans presently on file in these cases recognize this and provide for

---

[1]   Wilmington Trust is a party to this brief solely with respect to the *Reservation of Rights Statement on Behalf of Wilmington Trust* below.  Furthermore, the Creditor Groups submit this joint brief pursuant to the Court's *Order Establishing Pre-Confirmation Briefing And Hearing Schedule For Certain Legal Issues* (the "Scheduling Order") [Docket No. 4540], and this brief should not be construed to set forth any individual Creditor Group's position on any matter other than the Postpetition Interest Issue (as defined in the Scheduling Order).  In particular, although certain of the Creditor Groups are proponents of the TCC/AHC Plan (as defined below) and other Creditor Groups may or may not have taken a position in support of a particular plan for the Debtors, this brief is not intended to indicate any Creditor Group's position on a particular plan other than with respect to the allowance of postpetition interest thereunder.  Further, this brief is not intended to constitute any Creditor Group's argument regarding the specific rate of interest payable on particular claims under state law or applicable contract terms. The Creditor Groups reserve all rights with respect to such matters.

[2]   The Scheduling Order provides that, for purposes of briefing and oral argument, "the parties shall presume the Debtors' estates are solvent."  This brief adopts this presumption, with a full reservation of rights by each Creditor Group in case this presumption proves to be inapplicable for any reason.

the payment of some amount of postpetition interest.  The crux of the dispute thus is not **whether** unsecured creditors are entitled to postpetition interest, but rather the **rate** at which such interest must be paid for either plan to be confirmed.

2.      On that question, it is a longstanding rule in the Ninth Circuit and other circuits that creditors of a solvent estate have a presumptive right to be paid postpetition interest at the "non-bankruptcy" rate before value can be distributed to a debtor's equity holders.  This rule has deep roots in bankruptcy law and finds its modern-day expression in both the "unimpairment" provisions of Bankruptcy Code section 1124 and the absolute priority rule embedded in the "fair and equitable" requirement of Bankruptcy Code section 1129(b).

3.      Pursuant to Bankruptcy Code section 1124, a class of claims is only unimpaired if, among other things, the plan "leaves unaltered the legal, equitable, and contractual rights" of the creditors holding claims in that class.  The Ninth Circuit has interpreted impairment broadly, finding that **any** alteration of the rights (even when permissible under the Bankruptcy Code) constitutes impairment.  As a result, creditors with contracts or other applicable state law rights must be paid postpetition interest at the rates stated in those contracts or established by the applicable state law in order to be deemed unimpaired.  A plan that pays creditors a lesser rate, such as by an arbitrary application of the federal judgment rate (the "FJR"), does not leave their rights "unaltered."  Creditors would get less than the amount for which they bargained or are otherwise entitled to under state law.

4.      Pursuant to Bankruptcy Code section 1129(b), a plan proponent seeking to cram down a plan on a non-consenting class of creditors must satisfy the "fair and equitable" requirement, embodying the absolute priority rule.  Courts, in solvent debtor cases, have also looked at the fair and equitable test to determine whether a class is unimpaired under section 1124.  In analyzing whether a plan meets the fair and equitable requirement with respect to the payment

of postpetition interest, courts presumptively enforce contract interest (including default rates), subject to a limited discretion only when there is a compelling equitable reason not to do so. This is essential to enforcement of the absolute priority rule: equity holders should not receive any recovery unless and until all creditors are truly "paid in full." Courts recognize that to do otherwise would be to create a windfall for equity at the expense of creditors.

5.      Here, to the extent there is an exception to the presumption described above as a matter of equity, none has been offered by the Debtors and none is apparent. Under the case law, any such exception would need to be based on a full factual record developed in connection with the confirmation hearing, and certainly not on the basis of legal briefing without any factual record whatsoever.

6.      Finally, Onink v. Cardelucci (In re Cardelucci), 285 F.3d 1231 (9th Cir.), cert. denied,  537 U.S. 1072 (2002) ("Cardelucci"), simply has no bearing on the question of which postpetition interest rate should be paid to make a class of unsecured claims unimpaired or a plan to be fair and equitable with respect to such class. In Cardelucci, the Ninth Circuit simply held that the term "legal rate" in section 726(a)(5) means FJR. Section 726(a)(5) governs distributions in a solvent chapter 7 case and applies to impaired claims in chapter 11 cases only derivatively through the "best interests" test of section 1129(a)(7) that requires a comparison with a hypothetical chapter 7 liquidation. Cardelucci does not address either section 1124 or section 1129(b).

7.      At most, Cardelucci establishes the *minimum* rate of interest an *impaired* creditor must be paid even when its class has *accepted* the plan in a solvent case. Cardelucci does not touch on the relevant issues at stake here—the interest rate to which a creditor is entitled when its class: (i) is either being "unimpaired" under section 1124 (which requires that creditors' legal, equitable and contractual rights remain unaltered), or (ii) has rejected the plan

and must be crammed down in compliance with the "fair and equitable" requirement contained in section 1129(b). On those issues, this Court should follow the well-established authority that creditors in a solvent debtor case are presumptively entitled to the contract or otherwise applicable state law rate for reasons having nothing to do with section 726(a)(5).

**RELEVANT BACKGROUND**

8. On November 4, 2019, the Debtors filed the most recent iteration of their plan, the *Joint Chapter 11 Plan of Reorganization* (the "Debtors' Plan") [Docket No. 4564].[3] The Debtors' Plan lists numerous classes of unsecured claims against each Debtor and states that unsecured Funded Debt Claims (Classes 3A and 3B) and General Unsecured Claims (Classes 4A and 4B) are unimpaired. Debtors' Plan § 3.2.

9. For Class 3A (Holdco Funded Debt Claims) and Classes 4A and 4B (General Unsecured Claims), the Debtors' Plan provides for the payment of those claims in full, in cash, including postpetition interest at the FJR. Debtors' Plan §§ 4.3, 4.4, 4.17. For Class 3B (Utility Funded Debt Claims), the Debtors' Plan provides for the same treatment, but further provides that "if it is determined that . . . postpetition interest is payable at a rate other than the [FJR], the treatment of such Claim shall be modified in a manner to render the Claim Unimpaired." Debtors' Plan § 4.16. The Debtors' Plan contains no such provision with respect to Class 3A, 4A or 4B, apparently seeking to deprive the holders of claims in those classes of recourse to contractual or any other interest rate that might be available under applicable law.

10. On October 9, 2019, the Court modified the Debtors' exclusivity and ordered that the Official Committee of Tort Claimants (the "TCC") and the AHC file their own

---

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Debtors' Plan.

plan of reorganization. In compliance therewith, they filed their *Joint Chapter 11 Plan* (the "TCC/AHC Plan") [Docket No. 4257] on October 17, 2019.

11.     The TCC/AHC Plan also lists numerous classes of unsecured claims and provides that all such claims are unimpaired (either by riding through, being reinstated or being paid in full). Unlike the Debtors' Plan, however, the TCC/AHC Plan provides that those unsecured claims will receive postpetition interest at applicable contract rates, with the FJR paid on claims where no contract rate exists.[4]

12.     Both plans set the FJR at 2.59%. Debtors' Plan § 1.69. TCC/AHC Plan § 1.67. Both plans provide that holders of Holdco's common stock will retain their equity interests (subject to dilution) and that the equity interests that Holdco holds in Pacific Gas and Electric Company will be reinstated. Debtors' Plan §§ 4.12, 4.13, 4.26, 4.27; TCC/AHC Plan §§ 4.12, 4.13, 4.29, 4.30.

## ARGUMENT

### I.     Unsecured Creditors Are Entitled to Postpetition Interest In a Solvent Debtor Case.

13.     There are three distinct independent legal grounds for the requirement to pay postpetition interest to unsecured creditors in a solvent debtor case. First, a plan may leave a class of unsecured claims "unimpaired" under section 1124, by either reinstating such claims or otherwise leaving all legal, equitable and contractual rights of their holders—including the right to receive interest through the date of payment—unaltered.

14.     Second, in a cramdown plan, where an impaired class of unsecured claims has rejected the plan, the "fair and equitable" test of Bankruptcy Code section 1129(b) likewise

---

[4]     The AHC takes no position in this brief with respect to the appropriate rate of interest where a claim is based on a contract that does not expressly provide for a particular rate, or is not based on a contract at all. The AHC reserves all rights on this issue.

requires that postpetition interest be paid to the holders of claims in such class before any distribution is made to the debtor's equity holders.

15.     <u>Third</u>, the "best interests of creditors" test in section 1129(a)(7) also requires that postpetition interest be paid to rejecting unsecured creditors (even if their class has accepted the plan) before any distribution is made to a debtor's equity holders.

16.     While each of these potential scenarios is discussed below, it is highly unlikely that the third scenario—the only scenario addressed by the Ninth Circuit in <u>Cardelucci</u>—will ever come to pass in these cases.  The Creditor Groups do not believe that, given the right to vote (<u>i.e.</u>, if designated "impaired"), unsecured creditors in any class would accept a plan that pays them postpetition interest at something less than they are entitled to under their contracts or state law, thereby providing a windfall to equity.  That  means that the Debtors would have to satisfy the cramdown requirement of section 1129(b), including the fair and equitable test, in order to confirm such a plan.

17.     Only the best interest of creditors test of section 1129(a)(7) is tied to payment of postpetition interest at the "legal rate" referred to in section 726(a)(5) and addressed in <u>Cardelucci</u>.  Neither unimpairment under section 1124 nor the fair and equitable test under section 1129(b) is tied in any way to section 726(a) and its "legal rate" prescription.  To the contrary, they are separate tests with distinct requirements.  As discussed in Section II below, in a solvent debtor case, there is a presumption that contract or otherwise applicable state law rate must be paid both in the context of unimpairment and for the satisfaction of the fair and equitable test.

> **A.**     **Under Section 1124, Unimpaired Unsecured Creditors Are Entitled to Retain All of their Legal, Equitable and Contractual Rights Under Applicable State Law, Including the Right to Collect Interest at Contract or Otherwise Applicable State Law Rates.**

18.     Section 1124 provides two ways for a plan to leave claims unimpaired: (i) under section1124(1), a claim is "unimpaired" under a plan when the plan "leaves unaltered the

legal, equitable, and contractual rights to which such claim . . . entitles the holder of such claim," and (ii) under section 1124(2), a claim is "unimpaired" if the plan: (a) reinstates the claim's maturity, (b) cures all existing defaults (with certain specified exceptions), (c) compensates the holder for any reliance damages, and (d) does not otherwise "alter the legal, equitable, or contractual rights" of the holder. 11 U.S.C. § 1124. A debtor seeking to prevent a class of creditors from voting on its plan (thereby avoiding the need to meet the cramdown section of 1129(b)) bears the burden of establishing that the class is not impaired under the plan. See id.

19.     Because statutory construction is a "holistic endeavor,"[5] these two provisions of section 1124 must be interpreted in harmony with each other, particularly as they use substantially the same language to describe the rights of a claimholder that the plan cannot alter without impairing: all "legal, equitable, or contractual rights" to which the holder of the claim is entitled.

20.     Courts interpreting section 1124(2) agree that the requirement to cure existing defaults without altering the claimholder's "legal, equitable, or contractual rights" means that the debtor must honor the terms of its contract with the claimholder, including any provisions relating to the payment of interest. See, e.g., Pacifica L 51 LLC v. New Invs., Inc. (In re New Invs., Inc.), 840 F.3d 1137, 1142 (9th Cir. 2016) (stating that "[f]or a debtor to render . . . a creditor 'unimpaired' and unable to object to the debtor's plan, the debtor must cure the default but may not 'otherwise alter the . . . contractual rights' of the creditor," including the contractual right to "post-default interest") (internal citations omitted); In re Moody Nat'l SHS Houston H, LLC, 426 B.R. 667, 676 (Bankr. S.D. Tex. 2010) (holding that a plan must provide for postpetition interest "in accordance with state law" to "cure" under section 1124(2)). In other words, the phrase "legal, equitable, or contractual rights" in subsection 1124(2) is understood to refer to the claimholder's

---

[5]     United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988).

Case: 19-30088    Doc# 4634    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 11 of 29

rights under state law. There can be no logical reason for substantially identical language in subsection 1124(1) to be interpreted differently.[6]

21. The Ninth Circuit reads section 1124 to mean that "Congress define[d] impairment in the broadest possible terms" and that "***any alteration*** of the rights constitutes impairment even if the value of the rights is enhanced." L& J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.), 995 F.2d 940, 942 (9th Cir. 1993) ("L & J Anaheim") (quoting In re Madison Hotel Assocs., 749 F.2d 410, 418 (7th Cir. 1984)) (emphasis added). See also Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1363 (9th Cir. 1986). In L & J Anaheim, the debtor proposed to sell a creditor's collateral under a plan of reorganization pursuant to court-approved procedures. The Ninth Circuit held that, because this plan provision deprived the creditor of its bargained-for remedies, the creditor was impaired under the plan even if its rights may have been actually enhanced: "any alteration of the rights constitutes impairment even if the value of the rights is enhanced." Id.

22. Viewed through this wide lens, it is crystal clear that depriving creditors of the interest rate they had bargained or are otherwise entitled to under state law for constitutes "impairment." Even a creditor who is paid "in full" will be deemed impaired by a plan that fails to preserve the creditor's prepetition state-law rights. See, e.g., In re Rexford Prop. LLC, 558 B.R. 352, 369 (Bankr. C.D. Cal. 2016) (trade creditor impaired by plan that paid 100% of claim conditioned on continuation of business relationship). Accordingly, to be considered unimpaired,

---

[6] Furthermore, the Debtors' Plan allows some classes of unsecured claims (the "Ride-Through Claims") to ride through these cases unaffected, allowing their holders to pursue their respective claims against the applicable reorganized Debtor(s) "as if the Chapter 11 Cases had not commenced." Clearly, when the Ride-Through Claims are pursued by their holders post-emergence, these holders will be entitled to all of their prepetition rights under applicable state law, including the right to be paid contract rate interest (or other interest payable under state law) that accrued during the pendency of these cases. Obviously, all unsecured claims that are deemed unimpaired under the Debtors' Plan should be treated equally. Thus, if the holders of the Ride-Through Claims will be entitled to all of their state-law rights, so should the holders of all other unimpaired unsecured claims.

Case: 19-30088    Doc# 4634    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 12 of 29

the Debtors' unsecured creditors are entitled to receive everything they would be entitled to under applicable state law, including the interest on their claims at the applicable rate.

**B. Unsecured Creditors in Rejecting Classes Are Entitled to Postpetition Interest at Contract or Otherwise Applicable State Law Rates Under the Fair and Equitable Test of Section 1129(b).**

23.     Another scenario in which unsecured creditors of a solvent debtor may be entitled to postpetition interest is where a class of unsecured impaired claims has voted to reject the plan, and the plan proponent seeks to confirm that plan *via* a cramdown under section 1129(b) of the Bankruptcy Code. In that circumstance, the plan proponent bears the burden of establishing, among other things, that the plan is "fair and equitable" to the rejecting class. See United States ex. rel. Farmers Home Admin. v. Arnold & Baker Farms (In re Arnold & Baker Farms), 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994), aff'd, 85 F.3d 1415 (9th Cir. 1996) (debtor has burden of proof to establish requirements of confirmation are met).

24.     By incorporating the "fair and equitable" standard into the Bankruptcy Code, Congress codified the "absolute priority" rule. Official Comm. Of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.), 456 F.3d 668, 672 (6th Cir. 2006) ("Dow III"); see also H.R. Rep. 103-835, 48, 1994 U.S.C.C.A.N. 3340, 3357 ("The words 'fair and equitable' are terms of art that have a well established meaning under the case law of the Bankruptcy Act as well as under the Bankruptcy Code."). The Supreme Court has invoked this rule in defense of creditors demanding postpetition interest at contract rate. See Consol. Rock Prod. Co v. Du Bois, 312 U.S. 510, 527 (1941) (stating that the plan "runs afoul" of the absolute priority rule where it provides for interest rate to the debtor's creditors at the rate that is lower than that provided for in the applicable instruments). The Supreme Court stated that, before equity could receive anything under the debtor's plan, creditors had to receive "full compensatory treatment," which included postpetition interest at contract rate. Id. at 529. See also Debentureholders v. Cont. Inv. Corp.,

Case: 19-30088    Doc# 4634    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 13 of 29

679 F.2d 264, 270 (1st Cir. 1982) (ruling, in a solvent debtor case, that the plan was "unfair and inequitable because [it] . . . does not provide in exchange for the creditor's contractual right [to interest] just compensation"); In re Dow Corning Corp., 244 B.R. 678, 695 (Bankr. E.D. Mich. 1999) ("Dow I") (holding that the "fair and equitable" test requires payment of postpetition interest at contract rate, stating that, in a solvent debtor case "the rationale for use of the contract rate of interest is straightforward:  A debtor with the financial wherewithal to honor its contractual commitments should be required to do so.").[7]  The Debtors assert in their plan that they do have the financial wherewithal to pay whatever interest rate is determined by this Court to be appropriate.

25.     In short, the Debtors should not be permitted to allege unimpairment as a way to both disenfranchise unsecured creditors from the right to vote and deprive them of the benefit of the "fair and equitable" requirement of section 1129(b).  Faced with this same scenario, the bankruptcy court in In re Energy Future Holdings Corp., 540 B.R. 109, 124 (Bankr. D. Del. 2015) ("EFH"), recognized the unsecured creditors' rights to be treated fairly and equitably, whether the plan treats them as impaired or unimpaired:  "In effect, the Court holds that the fair and equitable test as applied to [impaired] unsecured creditors in solvent debtor cases . . . must also be met in solvent debtor cases for such creditors to be unimpaired."

26.     Applying this sound reasoning, the Court's inquiry into the appropriate interest rate in these cases—whether it be the rate necessary to ensure that unsecured claims are

---

[7]     As the First Circuit noted in UPS Capital Bus. Credit v. Gencarelli, 501 F.3d 1, 7 (1st Cir. 2007) ("Gencarelli"), modern cases on point have deep roots in pre-Code and English law. See New York v. Saper, 336 U.S. 328, 330 n.7 (1949) (collecting precedents under English law for the proposition that "if the alleged 'bankrupt' proved solvent, creditors received post-bankruptcy interest before any surplus to the debtor"); Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 165 (1946); Am. Iron & Steel Mfg. Co. v. Seabord Air Line Ry., 233 U.S. 261, 267 (1914) ("[I]n the rare instances where the assets ultimately proved sufficient for the purpose, . . . creditors were entitled to interest after adjudication."); Matter of Chicago, Milwaukee, St. Paul and Pacific R. Co., 791 F. 2d 524, 530 (8th Cir. 1986) ("[W]hen the debtor is solvent the judicial task is to give each creditor the measure of [its] contractual claim, no more and no less.").

truly unimpaired under section 1124 or to ensure that unsecured claims, if impaired, are treated fairly and equitably in a cramdown plan—is effectively one and the same. And in the case of a solvent debtor, that inquiry begins with a presumption that interest should be payable at the contract or otherwise applicable state law rates.

**C.  Under Section 1129(a)(7), in Contrast, Unsecured Creditors in an Impaired Class Are Entitled to Receive Postpetition Interest at Least at the "Legal Rate" Before Any Distribution May Be Made to the Debtor's Equity Holders.**

27.  Finally, albeit not relevant here, there is yet a third scenario where even claims in an ***impaired accepting*** class are entitled to postpetition interest. Pursuant to section 1129(a)(7)(A) of the Bankruptcy Code, for a chapter 11 plan to be confirmed, each creditor in an impaired class must have either accepted the plan or be entitled, under the plan, to receive at least as much as it would have received in a hypothetical chapter 7 liquidation, even if the class as a whole has voted to accept the plan.

28.  The priority of distribution of estate property in a chapter 7 case is governed by section 726(a) of the Bankruptcy Code. Section 726(a)(5) provides that, before any distribution is made "to the debtor," payment must be made on account "of interest ***at the legal rate*** from the date of the filing of the petition" on allowed unsecured claims. 11 U.S.C. §726(a)(5) (emphasis added). The phrase "legal rate" is not defined in the Bankruptcy Code and it has been interpreted differently by different courts.

29.  In this way, section 726(a) of the Bankruptcy Code, and the "legal rate" provided therein, get "imported" to a limited extent into cases under chapter 11. By its own terms, however, section 1129(a)(7) only applies to ***impaired*** claims. See 11 U.S.C. § 1129(a)(7); see also Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra Petroleum Corp.), 913 F.3d 533, 546 (5th Cir. 2019) ("Ultra Petroleum") (affirming that section 726(a)(5)'s solvent-debtor exception "applies to all creditors in Chapter 7 cases, but only impaired

creditors in Chapter 11 cases. . . . Its plain text does not apply to ***unimpaired*** claims." (emphasis in original)).[8] Thus, whatever the phrase "the legal rate" may mean in section 726(a)(5), it does not provide any guidance as to: (i) the rate of postpetition interest payable in order to unimpair a claim as defined in section 1124(1), or (ii) the rate payable by a solvent debtor when impaired claims are being crammed down under section 1129(b). In the absence of section 1129(a)(7), which by its express terms only applies to impaired claims, section 726(a)(5) and its reference to "the legal rate" is simply not applicable. See 11 U.S.C. § 103(b) ("Subchapters I and II of chapter 7 of this title apply only in a case under such chapter.").

30. The Debtors no doubt will attempt to rely on the Ninth Circuit's decision in Cardelucci. But there the Ninth Circuit focused on a specific question: the meaning of the phrase "legal rate" in section 726(a)(5), which it held to mean FJR, as determined by 28 U.S.C. § 1961(a). 285 F.3d at 1233 ("We conclude that ***11 U.S.C. § 726(a)(5)*** mandates application of the federal interest rate.") (emphasis added). In reaching that conclusion, the Ninth Circuit relied heavily on Beguelin v. Volcano Vision, Inc. (In re Beguelin), 220 B.R. 94 (B.A.P. 9th Cir. 1998) ("Beguelin")—but that case also was expressly limited to section 726(a)(5). See id. at 101 ("We hold that 'interest at the legal rate' ***under § 726(a)(5)*** is measured by the federal judgment rate") (emphasis added).[9]

---

[8]  See also EFH, 540 B.R. at 123 (acknowledging that "neither section 726(a)(5) nor section 1129(a)(7) apply to unimpaired creditors").

[9]  In Cardelucci, the claim—for which the court was assessing the appropriate rate of postpetition interest—was in an accepting impaired class. See Cardelucci, *Appellee's Opening Brief*, 2001 WL 34091272, at 17 ("At the confirmation hearing, the [creditor] elected to rely solely on §726(a)(5) as made applicable by § 1129(a)(7)(ii) and, subject to a reservation of rights to appeal the bankruptcy court's determination on that issue, voted to accept the plan. Accordingly, ***the only issue preserved for appeal is the meaning of 'interest at the legal rate' as used in §726(a)(5)***. That meaning should not be distorted simply because the [creditor] failed to consider the potential benefit of forcing a cramdown under § 1129(b).") (emphasis added).

Case: 19-30088   Doc# 4634   Filed: 11/08/19   Entered: 11/08/19 17:57:56   Page 16 of 29

31.     The fact that <u>Cardelucci</u> does not require payment of postpetition interest at the FJR in all circumstances is exemplified by the Ninth Circuit's decision in <u>Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)</u>, 314 F.3d 1070, 1073 (9th Cir. 2002), entered only months after the Ninth Circuit's decision in <u>Cardelucci</u>.  In <u>Sylmar</u>, the Ninth Circuit affirmed confirmation of a chapter 11 plan that left a prepetition lender's unsecured deficiency claim unimpaired by paying the lender in full, with postpetition interest at the contract rate.  <u>Id</u>. at 1073.  Other general unsecured creditors were paid postpetition interest at a rate of 10%.  Thus, payment of postpetition interest on unimpaired claims at the contract rate, or otherwise consistent with state law, is supported by <u>Sylmar</u> and not barred by <u>Cardelucci</u>.

32.     <u>Cardelucci</u> makes one point worth considering here, though: the inequities of permitting a debtor (or its equity holders) to receive a windfall at the expense of creditors it is capable of paying in full.  The Ninth Circuit's parting note in <u>Cardelucci</u> was that courts are constrained from correcting such inequities on a case-by-case basis where there is a "statutory term with a definitive meaning that cannot shift depending on the interests invoked by the specific factual circumstances before the court."  <u>Cardelucci</u>, 285 F.3d at 1236.  The Ninth Circuit was referring to the term "legal rate" in section 726(a)(5) of the Bankruptcy Code, which has no application here.

**II.     In a Solvent Debtor Case, Contract or Other State Law Rates of Interest Presumptively Apply to the Payment of Postpetition Interest.**

**A.     The General Rule in the Ninth Circuit and Elsewhere Is that Contractual Rights to Interest in Solvent Debtor Cases Are Presumptively Enforced.**

33.     The general rule in the Ninth Circuit and elsewhere is that contractual rights to interest in solvent debtor cases are presumptively enforced, subject only to potential equitable considerations.  <u>See</u> <u>Gen. Elec. Capital Corp. v. Future Media Prods.</u>, 547 F.3d 956 (9th Cir. 2008); <u>Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp)</u>, 752 F.2d 1334, 1339 (9th Cir.

1984); Epicenter Partners, L.L.C. v. CPF Vaseo Ass'n (In re Epicenter Partners, L.L.C.), No. 17-1216, 2018 WL 1354330, at *7 (B.A.P. 9th Cir. Mar. 15, 2018). See also Gencarelli, 501 F.3d at 7 ("This is a solvent debtor case and, as such, the equities strongly favor holding the debtor to his contractual obligations as long as those obligations are legally enforceable under applicable non-bankruptcy law"); Ruskin v. Griffiths, 269 F.2d 827, 832 (2d Cir. 1959) ("[W]here there is no showing that the creditor entitled to the increased interest caused any unjust delay in the proceedings, it seems to us the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act."); Bradford v. Crozier (In re Laymon), 958 F.2d 72, 75 (5th Cir. 1992) (contract rate applies absent inequitable or unconscionable result); Dow III, 456 F.3d at 680 ("Courts in solvent debtor cases have overwhelmingly concluded that there is a presumption that the default interest rate should be allowed."); In re Terry Ltd. P'ship, 27 F.3d 241, 243 (7th Cir. 1994) (noting "presumption in favor of the contract rate subject to rebuttal based on equitable considerations").[10]

34.    When "a solvent debtor seeks confirmation of its plan, . . . equitable considerations operate differently" than when the debtor is insolvent. Dow III, 456 F.3d at 678. As courts of appeal have repeatedly held, solvency means that "the role that equitable principles play in the allocation of competing interest is significantly reduced" and gives way to "the presumption . . . that a bankruptcy court's role is merely to enforce the contractual rights of the parties." Id. at 679. In Dow III, a class of unsecured commercial debt holders objected to a solvent debtor's plan of reorganization on the ground that the court "should enforce their rights under the

---

[10]    "The Ninth Circuit applies applicable state law interest rates absent federal preemption. . . . Bankruptcy is no different." Shoen v. Shoen (In re Shoen), 1997 WL 1403808 (B.A.P. 9th Cir. 1997), aff'd 176 F.3d 1150, 1165 (9th Cir. 1999); Hamilton v. Elite of L.A., Inc. (In re Hamilton), 584 B.R. 310, 323 (B.A.P. 9th Cir. 2018); accord Sea Hawk Seafoods, Inc. v. Exxon Corp. (In re Exxon Valdez), 484 F.3d 1098, 1101 (9th Cir. 2007) ("[S]tate law applies to Plaintiff's claim for prejudgment interest under state law unless federal law preempts it."). There is no federal law that preempts application of state law interest when unsecured claims are unimpaired under a solvent debtor's chapter 11 plan.

contract, including their right to interest awarded at the default rate as set forth in the terms of their contract," because "[t]o do otherwise (i.e., to interpret the amended plan as not requiring the payment of default interest) . . . would violate § 1129(b)'s fair and equitable standard." Id. at 679. The Sixth Circuit "agree[d]," holding "like the other courts to have considered this issue . . . [we conclude] that there is a presumption that [contractual] default interest should be paid to unsecured claim holders in a solvent debtor case." Id. at 680.[11] Indeed, when the debtor is solvent, depriving creditors of the benefit of their bargain is "the opposite of equity." Ruskin, 269 F.2d at 832.

35.     When addressing the analogous question of equitable factors that might diminish an oversecured creditor's right to contract rate interest, courts have considered equitable factors to determine whether the presumption in favor of the contract rate has been rebutted, including the following: (i) whether the creditor engaged in misconduct or unjust delay; (ii) whether application of the contractual interest rate would harm unsecured creditors; (iii) whether the contractual interest rate constitutes a penalty; and (iv) whether an award of interest at the contract rate would impair the debtor's fresh start. See In re Gen. Growth Props., Inc., No. 09-11977, 2011 WL 2974305, at *4 (Bankr. S.D.N.Y. July 20, 2011). None of these factors are present here.

36.     First, there is no evidence of any misconduct or unjust delay. To the contrary, various creditors holding funded debt claims, together with the TCC, have filed the TCC/AHC Plan in an effort that they believe will foster a timely and fair resolution of these cases.

37.     Second, application of the contract or other state law rates will not harm other creditors. The Debtors are solvent and entirely capable of paying contract rates of interest to those unsecured creditors whose contracts specify contract rates, while still paying in full other

---

[11] The debtor in Dow III, like here, was solvent when it filed chapter 11, did not dispute its ability to pay all unsecured creditors and filed for bankruptcy protection to settle mass tort claims. Id. at 671.

unsecured creditors consistent with their state law rights. Indeed, the Debtors have repeatedly represented that they will have sufficient funds to pay postpetition interest at the contract rate in the event the Court determines that is the appropriate rate.

38.     <u>Third</u>, there is no evidence that any of the rates payable here is punitive.

39.     <u>Fourth</u>, payment of the contract or state law rates will not hinder the Debtors' reorganization. The TCC/AHC Plan demonstrates that the payment of bargained-for contract rates will not impair the fair treatment of all stakeholders and is fully consistent with the timely financial restructuring of the Debtors and their successful emergence from bankruptcy.

40.     In fact, the equities of these cases reinforce the presumption that unsecured creditors are entitled to their state law rights, including contract or state law rate of interest. As recently as August 2018, and while facing significant potential liability related to the 2017 Northern California wildfires, the Debtors agreed to the terms of new unsecured senior notes. The Debtors' ability to issue notes and continued access to revolving credit lines from their banks resulted in hundreds of millions of dollars (if not more) of liquidity that helped the Debtors extend the time during which they could remain a going concern and explore other, non-bankruptcy options. There are no countervailing equitable considerations at play; payment of contract or other state law rate interest will not have any punitive effect on the Debtors. The total amount of postpetition interest, while significant, is but a fraction of the overall value of the Debtors' estates, and there are no concerns that the payment will result in other creditors (including, importantly, wildfire victims) recovering less.

41.     The same is true with respect to trade claims, whose interest rates are set by Cal. Civ. Code § 3289, requiring payment of interest either at contract rate or, in the absence of a contract rate, 10% *per annum*. By the Debtors' own admission, as of the petition date, they had approximately $2.1 billion in outstanding trade payables which may not be paid until

approximately 18 months after the commencement of these cases as of the petition date.[12] It would be wholly inequitable for any constituency to increase its recoveries or stakes in the reorganized debtors by depriving trade claimants of their state law right to interest while they await repayment for the goods and services provided to the Debtors prepetition.

**B.** **In the Absence of a Stated Contract Rate, California Law Imposes a Statutory Interest Rate for Contract-Based Claims Which Benefits from the Same Presumption in a Solvent Debtor Case.**

42. California law provides statutory protections for creditors where a contract counterparty does not perform its obligations, by imposing a mandatory 10% interest rate for any breach of contract claim, where the contract does not contain a stated interest rate. Cal. Civ. Code § 3289. Specifically, for any claim based on contract, interest accrues either at the "legal rate of interest stipulated by a contract," or, in the absence of a contract rate, "at a rate of 10 percent per annum after a breach." Id.[13] In other words, if a contract governed by California law does not include a contract rate of interest, California Civil Code section 3289 fills that gap by inserting a 10% interest rate. In re McKean, No. 11-44932, 2012 WL 3074801, at *2 (Bankr. N.D. Cal. July 30, 2012) ("In the absence of a rate set forth in an agreement of the parties, the Court will apply the California state statutory rate of ten percent (10%) per annum to the unpaid debts, as set forth in Cal. Civ. Code § 3289, to the entire debt . . . .").

43. The 10% interest rate that section 3289(b) builds into California contracts applies both to express written contracts and to implied or oral contracts. See, e.g., JLG Enterprises, Inc. v. Excalibur Sires, Inc., No. 10-02138, 2011 WL 5526321, at *5 (E.D. Cal. Nov. 14, 2011), report and recommendation adopted, by 2011 WL 6260360 (E.D. Cal. Dec. 15, 2011)

---

[12] See Declaration of Jason P. Wells in Support of First Day Motions and Related Relief [Docket No. 28], p. 11.

[13] The interest rate under California Civil Code section 3289(b) is the same as California's 10% post-judgment interest rate. Cal. Civ. Proc. Code § 685.010.

(denying request for 18% pre-judgment interest in favor of the statutory 10% rate in an action for breach of an oral agreement to provide services where the plaintiff failed to substantiate statements that contract parties agreed to 18%); Avitan v. Arias, No. 12003654, 2012 WL 12949889, at *2 (C.D. Cal. Oct. 15, 2012) (awarding interest at Cal. Civ. Code § 3289(b)'s 10% rate where seller provided goods under an oral contract, and did not receive full payment).  This is because California recognizes "implied contracts" based on course of performance or course of dealing, and affords parties to such implied contracts the same substantive rights as to parties to express contracts.  See Foley v. Interactive Data Corp., 47 Cal. 3d 654, 677-78, 765 P.2d 373, 385, 254 Cal. Rptr. 211, 223 (1988) ("Such implied-in-fact contract terms ordinarily stand on equal footing with express terms.") (citation omitted); Div. of Labor Law Enf't v. Transpacific Transp. Co., 69 Cal. App. 3d 268, 275, 137 Cal. Rptr. 855, 859 (Ct. App. 1977) ("As to the basic elements, there is no difference between an express and implied contract.").

44.     Accordingly, creditors asserting contract-based claims against the Debtors, such as trade claimants, are entitled to postpetition interest imposed by statute, just as if it were set forth in a contract.  These are the rights the vendors had when they provided goods and services to the Debtors, which should not now be modified where the Debtors are presumed to be solvent. This is particularly critical in these chapter 11 cases, given that the Debtors' form contract for vendors did not include a contract interest rate in the event of the Debtors' failure to timely pay.[14] Even in the absence of a written contract, under California law, trade creditors' right to payment for goods and services constitute implied contracts, affording trade creditors the same rights as written contracts, including payment of interest in the event of a failure to timely perform.  In such

---

[14]  See, e.g., Ex. A, Proof of Claim No. 209-2, Part 2, pp. 18-35 (attaching Contract Work Authorization, reflecting no interest rate for missed payments, but including invoices specific to Authorization, reflecting no interest rate for missed payments, but including invoices specific to service provider with stated interest rate); Ex. B, Proof of Claim No. 2764 (attaching form PG&E vendor contract, reflecting no interest rate for missed payments).

circumstances, California's statutory interest rate in Cal. Civ. Code § 3289(b) fills the gap, and entitles trade claimants to 10% interest on their claims against the Debtors.

### III. Neither Ultra Petroleum Nor PPI Enterprises Compels a Different Result.

45. The Debtors may argue that the fact that unsecured creditors are treated as unimpaired in both plans currently before the Court does not override the general prohibition on the payment of postpetition interest under Bankruptcy Code section 502(b)(2), thus leaving their entitlement to postpetition interest solely to the Court's equitable powers. In support of this argument, the Debtors are likely to rely on a recent decision by the Fifth Circuit in Ultra Petroleum. In that case, the Fifth Circuit applied, and misinterpreted, a distinction drawn by an earlier Third Circuit case between "plan impairment" and "statutory impairment." Ignoring the statutory language of section 1124, which requires that rights must be left unaltered as to a creditor's "claim," not its "allowed claim," the Fifth Circuit held that the creditor's claim outside of bankruptcy was not "the relevant barometer for impairment," and that section 502(b)(2) that disallows unmatured interest, and not the plan, deprived unsecured creditors of their right to contract rate interest. 913 F.3d at 540.

46. The Ultra Petroleum ruling, however, is neither binding on this Court nor persuasive. The Fifth Circuit heavily relied on an erroneous interpretation of an earlier Third Circuit case, Solow v. PPI Enters. (U.S.) (In re PPI Enters. (U.S.)), 344 F.3d 197 (3d Cir. 2003) ("PPI Enterprises"), which dealt with the statutory cap on landlords' claims under section 502(b)(6), rather than the prohibition on postpetition interest under section 502(b)(2).[15] The Fifth

---

[15] The Third Circuit made an effort to explain why claims for which allowance may be limited by operation of section 502(b)(2) should be treated differently for purposes of determining impairment than claims the allowance of which is limited by section 502(b)(6). In contrast to section 502(b)(6), which imposes an "absolute" and "mandatory" limitation (PPI Enterprises, 324 F.3d at 204-05), such that no plan may be proposed that does not give effect to these limitations, the limitation of section 502(b)(2) is *not* absolute (indeed, while Bankruptcy Code section 726(a)(5) creates an express statutory exception to section 502(b)(2) in cases of solvent debtors, no statutory exception is found to section

Case: 19-30088   Doc# 4634   Filed: 11/08/19   Entered: 11/08/19 17:57:56   Page 23 of 29

Circuit called this "a distinction without a difference" (913 F.3d at 541), completely ignoring the fact that the plan in PPI Enterprises paid postpetition interest and that the ***PPI Enterprises court itself*** stated that the legislative history of section 1124 clearly indicates that Congress intended to overrule the effect of 502(b)(2) in the context of impairment. Id. at 207.

47. The legislative history of section 1124 confirms that Congress intended the impairment tests of section 1124 to be applied to the holder's state law rights, ***particularly with respect to interest***. Before the 1994 amendments, section 1124 had yet another sub-section, 1124(3), which provided that a class of claims was unimpaired if the plan provided that each claimholder in such class "receive[s], on account of such claim . . . cash equal to . . . the allowed amount of such claim." 11 U.S.C. § 1124(3), repealed by Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 (1994). But the 1994 amendments deleted subsection 1124(3) while leaving the rest of section 1124 intact. This deletion was in direct response to In re New Valley Corp., 168 B.R. 73 (Bankr. D.N.J. 1994), where a bankruptcy court held that a claim was unimpaired where the plan provided full payment of the allowed amount of the claim—after application of section 502(b)(2). Congress deleted former section 1124(3) for the express purpose of overruling that decision:

> In a recent Bankruptcy Court decision in In re New Valley Corp., 168 B.R. 73 (Bankr. D.N.J. 1994), unsecured creditors were denied the right to receive postpetition interest on their allowed claims even though the debtor was liquidation and reorganization solvent. The New Valley decision [held] that a class that is paid the allowed amount of its claims in cash on the effective date of a plan is unimpaired under section 1124(3), therefore is not entitled to vote, and is not entitled to receive postpetition interest. . . . In order to preclude this unfair result in the future, the Committee finds it appropriate to delete section 1124(3) from the Bankruptcy Code.

---

502(b)(6), regardless of the debtor's solvency) and a plan may have varying provisions with respect to postpetition interest, some causing impairment of a particular claim, and some—not. Thus, depending on the ***rate*** of postpetition interest set by the plan with respect to a given claim, the plan may or may not impair such claim.

140 Cong. Rec. H10,752-01, at H10,768 (daily ed. Oct. 4, 1994) (statement of Rep. Brooks).

48. Congress's rejection of <u>New Valley</u> shows that payment of only the "allowed" amount of a claim (<u>i.e.</u>, the amount limited by excluding unmatured interest per section 502(b)(2)) is insufficient to render that claim unimpaired. Congress expressly stated its intention that "[a]s a result of this change, if a plan proposed to pay a class of claims [only] in the full *allowed* amount of the claims [under, <u>e.g.</u>, section 1124(1)], the class would be *impaired* entitling creditors to vote." <u>Id</u>. (emphasis added).[16] <u>See also</u> <u>In re Empire Generating Co., LLC</u>, No. 19-23007-rdd (Bankr. S.D.N.Y. June 20, 2019), ECF No. 175 (Drain, J.) ("The Bankruptcy Code was amended many years ago to take out a third provision of unimpairment . . . Congress took it out. The legislative history to that provision, *which I wrote*, makes it clear that Congress meant 1124 to provide for post-petition interest. So you're not going to convince me . . . to the contrary. I wrote it.") (emphasis added).

49. Indeed, as the <u>EFH</u> court has acknowledged, there is "an irreconcilable conflict" between extending the logic of <u>PPI Enterprises</u> to section 502(b)(2) and the clear Congressional intent expressed in deleting section 1124(3). <u>EFH</u>, 540 B.R. at 123 (explaining that "[t]o strictly apply the reasoning of the <u>PPI Enterprises</u> cases as to statutory impairment to [postpetition interest] would result in exactly the same result that led Congress to delete section 1124(3) from the Bankruptcy Code"). 540 B.R. at 123.

50. Even under the flawed reasoning of <u>Ultra Petroleum</u>, payment of postpetition interest at a contract rate was found warranted if a court concludes it is equitable to do so. In the end, the Fifth Circuit in <u>Ultra Petroleum</u> circled back to the language of section 1124(1), finding that while the creditors might have "no *legal* right to post-petition interest at the

---

[16] Numerous courts have interpreted Congress's action this way. <u>See</u>, <u>e.g.</u>, <u>In re Introgen Therapeutics, Inc.</u>, 429 B.R. 570, 581 (Bankr. W.D. Tex. 2010) (acknowledging that, after 1994 amendments, payment in full of principal amount of unsecured claims is not sufficient to render them unimpaired); <u>In re Greate Bay Hotel & Casino, Inc.</u>, 251 B.R. 213 (Bankr. D.N.J. 2000) (same).

Case: 19-30088   Doc# 4634   Filed: 11/08/19   Entered: 11/08/19 17:57:56   Page 25 of 29

default rates" and no *contractual* right to such interest," the creditors "might have an *equitable* right to post-petition interest." Ultra Petroleum, 913 F.3d at 551 (emphasis in original). For support, the Fifth Circuit noted that the bankruptcy court in EFH had held that "[f]or creditors to be unimpaired the plan must provide that the Court may award post-petition interest at an appropriate rate if it determines to do so under its equitable power." Id. (quoting EFH, 540 B.R. at 124); see EFH, 540 B.R. at 123 (noting use of the word "equitable" in section 1124(1) and asking, after finding no impairment of legal or contractual rights: "what of the claimant's equitable rights?"). EFH, in turn, makes clear that the "appropriate rate under equitable principles" is tied to the "fair and equitable test" of section 1129(b). 540 B.R. at 124.[17]

51. In light of the Debtors' solvency, it makes no practical difference in these cases whether (for reasons just discussed) equitable impairment occurs under section 1124(1) or pursuant to the fair and equitable test under section 1129(b). Id. at 123; see Ultra Petroleum, 913 F.3d at 551 (explaining that "[b]ankruptcy courts have been thought of as courts of equity, especially when it comes to awarding interest," and that, because "by all accounts, the Code saying nothing about post-petition interest of unimpaired Chapter 11 claims . . . [,] equity might say something"); In re Beverly Hills Bancorp, 752 F.2d at 1339 ("An award of post-petition interest . . . may be allowed when the bankrupt later proves to be solvent. The award of postpetition interest is dependent on the equities of the case.") (internal citations omitted). Where the debtor is solvent,

---

[17] The Fifth Circuit's decision in Ultra Petroleum is also inconsistent with, and does not account for, the Ninth Circuit's application of state law interest rates in the absence of federal preemption. In Ultra Petroleum, the Fifth Circuit acknowledged that the "parties point to only one Code provision setting a rate for postpetition interest on awards, § 726(a)(5), but [because the class was unimpaired], it does not apply to the creditors here." 913 F.3d at 550. This led the court to "look outside the Code to see if a more general rule controls." Id. In such a situation, where the Bankruptcy Code does not apply a specific postpetition interest rate, binding Ninth Circuit precedent is unambiguous: "state law interest rates apply." Shoen, 176 F.3d at 1165.

payment of interest to unsecured creditors at any rate less than the contract rate or applicable state law rate impairs these creditors' *equitable* rights.

52.     In the end, the Debtors should not be permitted to allege unimpairment as a way both to disenfranchise unsecured creditor classes and to deprive them of the "fair and equitable" protections of section 1129(b).  This Court's inquiry into the appropriate postpetition interest rate in these circumstances—whether it be the rate necessary to ensure that unsecured creditor classes are truly unimpaired under section 1124 or to ensure that unsecured creditor classes, if impaired, are treated fairly and equitably—is effectively one and the same.

### Reservation of Rights Statement on Behalf of Wilmington Trust

53.     Wilmington Trust is the successor administrative agent to that certain Credit Agreement, dated as of April 27, 2015 (as amended, restated and otherwise supplemented, the "Holdco Revolver").  Wilmington Trust filed a proof of claim composed of (1) a liquidated amount of $300,398,500.00, which includes the principal amount of $300,000,000.00 and the pre-petition interest in the amount of $398,500.00, and (2) an unliquidated amount for the post-petition interest and all fees and expenses incurred, accrued up to the date of distribution, at the contract rate if legally available  [Claim No. 55147].

54.     The Scheduling Order directs the parties to assume that the Debtors are solvent.  With that assumption, there is no basis for differing treatment of Holdco Revolver and Utility funded debt with respect to whether the contract rate of interest applies.  Any plan that places the prepetition equity in the money cannot, consistent with the absolute priority rule, allow contract rate of interest at the Utility level but only the FJR of interest on the Holdco Revolver.  Or, put differently, "unimpaired" must have the same meaning in both estates.  The Debtors' Plan inexplicably provides a toggle for the benefit of the Utility funded debt so that if the Court rules the contract rate of interest applies, the Debtors' Plan would pay that, but makes

no similar provision for the Holdco Revolver. <u>See</u> Debtor's Plan, section 4.16(a) ("Notwithstanding the foregoing, if it is determined that any holder of a Utility Funded Debt Claim is entitled to payment of a make-whole or similar amount or that postpetition interest is payable at a rate other than the Federal Judgment Rate, the treatment of such Claim shall be modified in a manner to render the Claim Unimpaired."). Wilmington Trust reserves its rights as to the applicability and correct measure of contract rate of interest on the Holdco Revolver (<u>e.g.</u>, whether the Eurodollar rate applies and whether the post-default increment applies).

## <u>CONCLUSION</u>

WHEREFORE, based on the foregoing, the Creditor Groups respectfully submit that, to the extent the Debtors are determined to be solvent, postpetition interest on unsecured claims under any plan of reorganization that will be confirmed in these cases should be determined by the holders' state law rights; in the case of contract-based claims, this means the applicable contract rate or as otherwise required under state law.

DATED: November 8, 2019

**MILBANK LLP**

*/s/ Thomas R. Kreller*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of
Unsecured Creditors*

**STROOCK & STROOCK & LAVAN LLP**

*/s/ Mark A. Speiser*
MARK A. SPEISER

*Counsel for Mizuho Bank, Ltd., in its capacity
as HoldCo Term Loan Administrative Agent*

**ARENT FOX LLP**

*/s/ Aram Ordubegian*
ARAM ORDUBEGIAN
ANDREW I. SILFEN
BETH M. BROWNSTEIN

*Counsel for BOKF, NA, in its capacity as
Indenture Trustee for the Utility Senior Notes*

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

*/s/ M. David Minnick*
M. DAVID MINNICK
LEO T. CROWLEY

*Counsel for Wilmington Trust, National
Association, in its capacity as Administrative
Agent for the Holdco Revolver*

**AKIN GUMP STRAUSS HAUER &
FELD LLP**

*/s/ Ashley Vinson Crawford*
ASHLEY VINSON CRAWFORD
MICHAEL S. STAMER
IRA S. DIZENGOFF
DAVID H. BOTTER
ABID QURESHI

*Counsel for the Ad Hoc Committee of Senior
Unsecured Noteholders of Pacific Gas and
Electric Company*

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ David M. Feldman*
DAVID M. FELDMAN
MATTHEW D. MCGILL
MATTHEW K. KELSEY

*Attorneys for the Ad Hoc Committee of
Holders of Trade Claims*

**DAVIS POLK & WARDWELL LLP**

/s/ *Timothy Graulich*
TIMOTHY GRAULICH
DAVID SCHIFF
DANIEL E. MEYER
ANDREW D. YAPHE

*Counsel for Citibank N.A., as
Administrative Agent for the
Utility Revolving Credit Facility*