# **Exhibit B**

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)



RECEIVED

APR 2 3 2019

Prime Clerk LLC

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

S&L Engineers, Ltd. (d/b/a Sargent & Lundy Engineers, Ltd.)
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    **Sargent & Lundy Engineers, Ltd.**

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**Kimberly D. Hayden**
**Senior Associate Counsel**
**Sargent & Lundy Engineers, Ltd.**
**c/o Sargent & Lundy, L.L.C.**
**55 East Monroe Street**
**Chicago, Illinois 60603**

Where should payments to the creditor be sent? (if different)

**S&L Engineers, Ltd.**
**8063 Solutions Center**
**Chicago, Illinois 60677-8000**

Contact phone    **(312) 269-2393**

Contact email    **kimberly.d.hayden@sargentlundy.com**

Contact phone    **(312) 269-9675**

Contact email    **accounts.receivable@sargentlundy.com**

**4. Does this claim amend one already filed?**

☒ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes.  Who made the earlier filing? _____

[  ] Date Stamped Copy Returned
[  ] No Self-Addressed Stamped Envelope
[  ] No Copy Provided

Official Form 410            Proof of Claim            page 2

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
| 7. **How much is the claim?** | $ **2,405,027.71** . **Does this amount include interest or other charges?**<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>**Engineering services performed** |
| 9. **Is all or part of the claim secured?** | ☒ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br>**Amount of the claim that is secured:** $_____<br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |
| 11. **Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.  $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   **04/22/2019**
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | **Kimberly** First name | **Dawn** Middle name | **Hayden** Last name |
|---|---|---|---|
| Title | **Senior Associate Counsel** | | |
| Company | **S&L Engineers, Ltd. (d/b/a Sargent & Lundy Engineers, Ltd.)** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **55 East Monroe Street** Number        Street | | |
| | **Chicago** City | **IL** State | **60603** ZIP Code |
| Contact phone | **(312) 269-2393** | Email | **kimberly.d.hayden@sargentlundy.com** |



# Contract Change Order

This is Change Order ("CO") No. 26 to Contract No. C516 formerly 4400000925 dated 2/13/2006 between the below-named Contractor ("Contractor"), a Subchapter S Nevada Corporation and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this Contract, as amended by this Change Order, pursuant to and in accordance with the terms and conditions of the Contract.

| Contractor's Legal Name: | Sargent & Lundy Engineers, Ltd. | This Contract Change Order consists of 2 page(s). |
|---|---|---|
| Contractor's Address: | Mail Code 25F07, 55 E. Monroe Street | |
| | Chicago, IL 60603 | |
| Project Name: | Engineering & Technical Services | |
| Job Location: | Throughout PG&E Service Territory | |

**CHANGES: The Parties hereby modify the Contract referenced above as follows:**

Contract Change Order No. 25 is issued to:

Contractors' MSA is hereby extended from to December 11, 2018 to March 18, 2019.

The Parties specifically agree that this Contract and all Change Orders and CWAs shall be deemed to have been in effect continuously and without interruption since the original effective date of February 13, 2006.

All other terms and conditions remain unchanged.

**ATTACHMENTS: The following are attached to this Contract Change Order and incorporated herein by this reference.**

| PRICING CHANGES: | Previous Total Contract Value: | $Sum of duly authorized CWA's |
|---|---|---|
| | Addition or Deduction: | $Sum of duly authorized CWA's |
| | Revised Total Contract Value: | $Sum of duly authorized CWA's |

**All other terms and conditions of the Contract, as it may have been amended by previous Contract Change Order(s), if any, shall remain the same.**

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT CHANGE ORDER.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: SARGENT & LUNDY ENGINEERS, LTD. | |
|---|---|---|---|
| Signature | *DocuSigned by:* Arzu Ozbek F69AED348F8D4C0... | Signature | *DocuSigned by:* Brian C. Wood E3F1279058A74C0... |
| Name | Arzu Ozbek | Name | Brian C. Wood |
| Title | Sourcing Manager | Title | Senior Vice President |
| Date | 12/12/2018 | Date | 12/12/2018 |

DocuSign Envelope ID: 89317994-7328-4A84-93A5-036EFF04E9FB



| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | Roy Green | **Contractor Representative** | Brian Wood |
| **Phone** | 415-314-9702 | **Phone** | 312-269-2638 |
| **Email:** | rcgp@pge.com | **Email:** | Brian.C.Wood@SargentLundy.com |
| **Accounting Reference** | | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies** | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |

62-4675 (12-1-08)  Sourcing

**PG&E**

Contract Change Order

# Contract Change Order

| | |
|---|---|
| **CONTRACT CHANGE ORDER NO.** | CCO #4 |
| **PG&E CONTRACT NO. or PG&E PURCHASE ORDER NO.** | 4600016965 / 4400000925 |
| **DATE:** | April 10, 2008 |
| **TOTAL PAGE COUNT:** | Page 1 of 4 |
| **DEPARTMENT:** | Sourcing |
| **CONSULTANT OR CONTRACTOR LEGAL NAME:** **ADDRESS:** | Sargent & Lundy Engineers, LTD. Mail Code 25F07, 55 E. Monroe Street Chicago, IL 60603 |
| **REPRESENTATIVE'S NAME:** | Thomas R. Eisenbart |
| **LOCATION:** | PG&E Service Territory |
| **PROJECT NAME / CONTRACT FOR:** | Engineering and Technical Services |

The following changes are hereby authorized subject to the terms and conditions contained in the contract referred to above dated: 2/13/06.

| TYPE OF CONTRACT DOCUMENT: | ☒ Master Service Agreement (SRM Contract or Outline Agreement) | 4600016965 |
|---|---|---|
| | ☐ Contract Work Authorization | |
| | ☐ Project-Specific (Short or Long Form Contract) | |

| TYPE OF CHANGE: | ☐ Schedule | No Change in Contract Completion date 12/31/08 |
|---|---|---|
| | ☒ Administrative | Reassign Contract 4600016965 to Contract 4400000925. This change is necessitated by PG&E's newly adopted SRM Accounting System. |

☒ Scope (Work to be Performed): PG&E hereby modifies the WORK Scope for the contract document referenced above as follows:

1. Effective January 1, 2008, the attached Consultant 2008 Power Delivery Services Field/Home Office Hourly Billing Rates by Category shown on Page 3 thru 4 of this Contract shall be hereto and incorporated herein as Exhibit 1 dated February 13, 2008 to this Contract Change Order.

2. ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT SHALL REMAIN THE SAME.

| PRICING CHANGES: | Previous Total Contract Value: | Sum of all Duty-Signed CWA |
|---|---|---|
| | Addition or Deduction: | None |
| | Revised Total Contract Value: | Sum of all Duty-Signed CWA |

All other terms and conditions in the original contract document shall remain the same.

CHANGE ORDER SUMMARY

62-4675 (Revised 01/14/08)

Sourcing

Page 1 of 4

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 7 of 55

**PG&E**

| PG&E | | CONSULTANT OR CONTRACTOR | |
|---|---|---|---|
| | | Firm Name | Sargent & Lundy Engineers, LTD. |
| Name | *Christopher A. Snyder* | Name | *THOMAS R. EISENBART* |
| Title | *Manager* | Title | *SENIOR VICE PRESIDENT* |
| Signature | *[signature]* | Signature | *[signature]* |
| Date | *5/21/08* | Date | *5/16/2008* |
| PG&E Negotiator | April D. Titus | Consultant or Contractor Representative | |
| Phone | 415-973-7882 | Phone | *(312) 269-6478* |

---

**INTERNAL PG&E USE ONLY**

**Distribution Date**

PG&E ORIGINAL COPY TO:
☒ Requestor
☒ Sourcing/ Purchasing Contract File
☒ Other

ATTACHMENTS: The following are attached to this Contract Change Order are incorporated herein by reference.

Attachment: Exhibit 1 - Consultant 2008 Field/Home Office Hourly Billing Rates by Category

Attachment

Attachment

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 8 of 55

Exhibit 1
Rev. February 13, 2008

## PACIFIC GAS & ELECTRIC
## POWER DELIVERY SERVICES
### HOME OFFICE HOURLY BILLING RATES BY CATEGORY
### EFFECTIVE FOR THE CALENDAR YEAR 2008

| Billing Classification | PG&E Negotiated Rate | PG&E Negotiated Rate W/O Profit |
|---|---|---|
| Principal/Consultant | $167.48 | $154.08 |
| Project Associate | $127.50 | $117.28 |
| Senior Associate | $ 98.32 | $ 90.46 |
| Associate II | $ 79.96 | $ 73.56 |
| Associate I | $ 71.30 | $ 65.60 |
| Senior Manager | $149.12 | $137.18 |
| Manager | $136.14 | $125.26 |
| Senior Designer | $ 98.32 | $ 90.46 |
| Designer | $ 71.30 | $ 65.60 |
| Drafter | $ 50.76 | $ 46.72 |
| Administrative II | $ 58.34 | $ 53.68 |
| Administrative I | $ 50.76 | $ 46.72 |

Fee at Risk = 8%

NOTES:
1. PG&E negotiated rates include computer and reprographics usage charges as well as miscellaneous charges such as telephone, special mailing, etc
2. Travel expenses will be billed at actual cost.
3. With prior mutual concurrence from both Parties, Services classified as engineering consulting, such as: emergency response, highly compressed project schedules (all rates apply), tasks for highly qualified technical experts, power systems studies or analysis, and due diligence or asset valuations have applicable rates at 1.2 times the above rates for classification of principal, manager, project associate and senior associate.
4. Subcontractors will be billed with a 10% handling charge, or commensurate with their work scope.
5. Billing rates are subject to annual escalation.
6. Billing Classifications include one or more S&L position categories that are typically grouped under a classification on the basis of similarities in position function, experience factors, and/or wage levels. Acceptance of this schedule includes the rates shown, the period of time for which they are effective, and the combination of individual position categories that comprise each classification.
7. Billing rates are considered to be proprietary to S&L. Please treat them as confidential.

Exhibit 1
Rev. February 13, 2008

**PACIFIC GAS & ELECTRIC**
**POWER DELIVERY SERVICES**
**FIELD OFFICE HOURLY BILLING RATES BY CATEGORY**
**EFFECTIVE FOR THE CALENDAR YEAR 2008**

| Billing Classification | PG&E Negotiated Rate | PG&E Negotiated Rate W/O Profit |
|---|---|---|
| Principal/Consultant | $157.74 | $145.14 |
| Project Associate | $119.92 | $110.34 |
| Senior Associate | $ 91.84 | $ 84.48 |
| Associate II | $ 73.46 | $ 67.60 |
| Associate I | $ 65.92 | $ 60.62 |
| Senior Manager | $140.46 | $129.22 |
| Manager | $127.50 | $117.28 |
| Senior Designer | $ 91.84 | $ 84.48 |
| Designer | $ 65.92 | $ 60.62 |
| Drafter | $ 45.38 | $ 41.74 |
| Administrative II | $ 52.94 | $ 48.70 |
| Administrative I | $ 45.38 | $ 41.74 |

Fee at Risk = 8%

NOTES:
1. PG&E negotiated rates include computer and reprographics usage charges as well as miscellaneous charges such as telephone, special mailing, etc
2. Travel expenses will be billed at actual cost.
3. With prior mutual concurrence from both Parties, Services classified as engineering consulting, such as: emergency response, highly compressed project schedules (all rates apply), tasks for highly qualified technical experts, power systems studies or analysis, and due diligence or asset valuations have applicable rates at 1.2 times the above rates for classification of principal, manager, project associate and senior associate.
4. Subcontractors will be billed with a 10% handling charge, or commensurate with their work scope.
5. Billing rates are subject to annual escalation.
6. Billing Classifications include one or more S&L position categories that are typically grouped under a classification on the basis of similarities in position function, experience factors, and/or wage levels. Acceptance of this schedule includes the rates shown, the period of time for which they are effective, and the combination of individual position categories that comprise each classification.
7. Billing rates are considered to be proprietary to S&L. Please treat them as confidential.

**Pacific Gas and Electric Company**
**CONTRACT (LONG FORM)**

STRATEGIC SOURCING AND OPERATIONS SUPPORT

**SARGENT & LUNDY ENGINEERS, LTD.**

CONTRACT NO.

Mail Code 25F07, 55 E. Monroe Street, Chicago, IL 60603

**4600016965**

hereinafter called Consultant, and PACIFIC GAS AND ELECTRIC COMPANY, a California corporation, hereinafter called PG&E, hereby agree as follows:

**WORK:** Consultant shall perform the Work hereinafter described and, except as herein otherwise provided, shall furnish all labor and material required to perform:

Engineering and Technical Services in accordance with the terms and conditions of this Contract.

Any letters, drawings, specifications, PG&E legal terms, or other material annexed hereto or referred to herein shall be deemed a part hereof and incorporated herein.

**COMPLETION:** Consultant shall commence performance hereof when authorized to do so by PG&E. Unless otherwise authorized by Change Order, this Contract shall expire on the date set forth in Article 7, "CONTRACT TERM" of the Specific Conditions.

**INSURANCE:** Consultant shall maintain in effect during the performance hereof insurance in accordance with:
Part A: Article 4, "INSURANCE" of the Consulting General Conditions

**INDEMNITY:** Consultant shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, and employees in accordance with:
Part B: Article B-2, "INDEMNIFICATION, LIABILITY AND WITHHOLDING" of the Consulting General Conditions

**TERMS OF PAYMENT:** Consultant will be compensated for performance hereunder, as approved by PG&E, and in accordance with the provisions set forth in this Contract.

**PAYMENT:** As full consideration for the performance hereof, PG&E will pay Consultant as follows:

The total amount of this Contract and PG&E's total obligation for all Work provided hereunder, including all approved reimbursable expenses, shall not exceed the cumulative price of all duly-signed Contract Work Authorizations (CWAs) issued hereunder.

**INVOICE INSTRUCTIONS:** Consultant shall send invoices for each payment when due, showing the CWA Number, to:
**PACIFIC GAS AND ELECTRIC COMPANY**

ATTENTION
AS SPECIFIED IN EACH CONTRACT WORK AUTHORIZATION

ADDRESS
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

| CITY | STATE | ZIP |
|---|---|---|
| •••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••• | | |

APPROVED

| | CONTRACT COMPLETION DATE |
|---|---|
| | DECEMBER 31, 2008 |

WORK SUPERVISED BY

VARIOUS

WQR

| **P** | NAME (TYPE OR PRINT) |
|---|---|
| | Thomas B. King |
| **G** | SIGNATURE _Thomas B King_ | DATE 2-13-06 |

ACCOUNTING REFERENCE

VARIOUS

| **&** | TITLE |
|---|---|
| | President & CEO |

| **E** | PG&E NEGOTIATOR | PHONE |
|---|---|---|
| | JEFF MONTANA | (415) 973-0656 |

| | | | | |
|---|---|---|---|---|
| X | DOCUMENT SERVICES (PG&E COPY) | DISTRIBUTION DATE | **C** | |
| X | CONSULTANT | | **O** | FIRM NAME (TYPE OR PRINT) |
| X | WORK SUPERVISOR | Various | | SARGENT & LUNDY ENGINEERS, LTD. |
| | INVOICE APPROVER | | **N** | NAME (TYPE OR PRINT) |
| | V.P. IN CHARGE | | **S** | ROBERT BARNOWSKI |
| | MANAGER | | **U** | |
| | CLAIMS | | **L** | SIGNATURE _Robert Barnowski_  DATE 2/1/06 |
| X | PURCHASING | Jeff Montana | **T** | |
| | LAW | | **A** | TITLE |
| | DIRECTOR | | **N** | VICE PRESIDENT- COMMERCIAL MANAGER |
| | | | **T** | CONSULTANT'S REPRESENTATIVE  PHONE |
| | | | | THOMAS R. EISENBART  (312) 269-6478 |

# CONTRACT TABLE OF CONTENTS

**I – SPECIFIC CONDITIONS**.............................................................................**Pages SC1 – SC12**

- Attachment A – Consultant Core Contract Team
- Attachment B – Consultant Mapped Hourly Billing Rates/Fee Schedule
- Attachment C – Contract Work Authorization (CWA) Sample Form
- Attachment D – Performance Scorecard
- Attachment E – Sample Invoice

**II –GENERAL CONDITIONS**...........................................................................**Pages GC1 – GC23**

- Exhibit 1 –  PG&E's Supplier Diversity Purchase Policy and Equal Opportunity Diversity and Equal Opportunity
- Exhibit 1-A – List of Subcontractors and Disbursement Record
- Exhibit 2 – Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns
- Exhibit 3 – Injury and Illness Prevention Program Compliance Certificate
- Exhibit 4 – Drug and Alcohol Abuse and Testing Policy

I.     **SPECIFIC CONDITIONS**

**TABLE OF CONTENTS**

| | | PAGE |
|---|---|---|
| 1.0 | INTRODUCTION | SC-1 |
| 2.0 | DEFINITIONS | SC-1 |
| 3.0 | SCOPE OF WORK | SC-2 |
| 4.0 | CONTRACT WORK AUTHORIZATION (CWA) | SC-3 |
| 5.0 | CONSIDERATION | SC-4 |
| 6.0 | BILLING | SC-9 |
| 7.0 | CONTRACT TERM | SC-9 |
| 8.0 | CONTRACT PRICING | SC-9 |
| 9.0 | VOLUME OF SERVICE – HOURLY BILLING RATE REDUCTION | SC-9 |
| 10.0 | CONSULTANT STAFFING | SC-10 |
| 11.0 | WORK LOCATION | SC-10 |
| 12.0 | CONTROLLING ORDER | SC-10 |
| 13.0 | SUPPLIER DIVERSITY | SC-11 |
| 14.0 | CONTRACT INTERFACE | SC-11 |
| 15.0 | LIMITATION OF LIABILITY | SC-12 |
| 16.0 | ESTIMATES | SC-12 |

ATTACHMENT A – CONSULTANT CORE CONTRACT TEAM
ATTACHMENT B – CONSULTANT HOURLY BILLING RATES/FEE SCHEDULE
ATTACHMENT C – CONTRACT WORK AUTHORIZATION (CWA) SAMPLE FORM
ATTACHMENT D – PERFORMANCE SCORECARD
ATTACHMENT E – SAMPLE INVOICE

## SPECIFIC CONDITIONS

1.0    INTRODUCTION

1.1    PURPOSE

The purpose of this "Strategic Alliance" Contract is to establish the terms and conditions under which Consultant shall provide Engineering and Technical Services (Services) in support of various PG&E departments. It is the parties intent to develop a "Strategic Alliance" in which the scope of work, schedule, and cost may be developed through a collaborative effort.

This Contract alone does not authorize performance of Services. Consultant agrees that no funds have been committed or will be paid by PG&E upon execution of this Contract. Services shall be provided only as authorized by PG&E, on an as-requested basis, by issuance of a Contract Work Authorization (CWA).

The terms and conditions of this Contract shall apply independently to each CWA issued under this Contract. The terms and conditions of this Contract shall not be modified in whole, or part, in any way, by any CWA. The terms and conditions of this Contract shall be modified only as agreed in writing by PG&E and Consultant in a Contract Change Order.

THE PARTIES AGREE THAT THIS CONTRACT DOES NOT ESTABLISH AN EXCLUSIVE CONTRACT BETWEEN PG&E AND CONSULTANT NOR CONSTITUTE A COMMITMENT BY PG&E, WHETHER EXPRESS OR IMPLIED, TO CONTRACT WITH CONSULTANT TO PERFORM OR SUPPLY ANY WORK, NOR IS THERE ANY GUARANTEE AS TO THE VOLUME OF WORK OR THE DURATION OF THE CONTRACT. PG&E EXPRESSLY RESERVES ALL ITS RIGHTS, INCLUDING BUT NOT LIMITED TO THE FOLLOWING: THE RIGHT TO UTILIZE OTHERS TO PERFORM OR SUPPLY WORK OF THE TYPE CONTEMPLATED BY THE CONTRACT; THE RIGHT TO REQUEST PROPOSAL(S) FROM OTHERS WITH OR WITHOUT REQUESTING PROPOSALS FROM CONSULTANT FOR WORK OF THE TYPE CONTEMPLATED BY THE CONTRACT; AND THE UNRESTRICTED RIGHT BY PG&E TO BID OR PERFORM ANY SUCH WORK.

2.0    DEFINITIONS

The definitions in Part A: Consulting General Conditions, Article A-1, "Definitions," are supplemented with the terms defined below:

| | | |
|---|---|---|
| 2.1 | "Project": | The total Project planned by PG&E for which the Consultant will provide Services as described in a specific CWA issued under this Contract. |
| 2.2 | "PG&E Representative": | The PG&E employee authorized to sign a CWA on behalf of PG&E. |
| 2.3 | "PG&E Work Supervisor": | PG&E's employee supervising the Work in connection with a CWA. Each CWA issued will identify PG&E's Work Supervisor. |

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 14 of 55

3.0    SCOPE OF WORK

Consultant, as requested by PG&E, may provide Services, including but not limited to, furnishing all labor and materials for the Services as specified in any CWA issued under this Contract.

3.1    Type of Work:  Typical Projects may include, but not be limited to, the following services. This list is not intended to be all-inclusive or to otherwise limit the scope of work which may be developed under this Contract. Each CWA shall specify a scope of work.

- Job cost estimates
- Conceptual design
- Selection with PG&E of alternatives
- Final engineering
- Technical design reviews
- Field surveying
- Constructability reviews
- Procurement support of long lead-time or special equipment
- Meetings with government agency and non-government organizations (e.g., Federal Energy Regulatory Commission, Department of Safety of Dams, U.S. Fish and Wildlife Service, California Department of Fish and Game) and securing approvals and/or permits from these agencies/organization
- Engineering support during construction, including start-up testing, and
- As-built documentation

3.2    Development of Scope of Work for Each Project:  Depending upon the type of work, PG&E may specify the scope of work; or PG&E and Consultant may discuss a Project for problem identification and assessment, and jointly develop the Project's scope of work.

3.3    Work Schedules and Manpower Requirements/Costs:  For each separate Project, and as required by PG&E, Consultant shall submit to PG&E's Work Supervisor the activities required to perform the Project's scope of work in schedule format. The schedule shall be broken down by phases, tasks and sub-tasks. Consultant shall also submit its manpower requirements, listed by hours and billing rate per each employee required to accomplish each task of the Project.

3.4    Review of Consultant's Proposal:  PG&E will review Consultant's proposed work schedule, deliverables, key personnel, manpower requirements, and price for each Project's scope of work. PG&E will discuss with Consultant its proposal and, if necessary, will negotiate changes in schedule and/or cost. If PG&E and Consultant cannot agree upon schedule and/or cost, PG&E may decide to perform the work in-house or decide to have another consultant or contractor perform the work.

3.5    Authorization of Scope of Work for Each Project:  Once the Project's scope of work has been accepted by PG&E, the detailed scope of work, deliverables and schedule requirements, Estimated Price for services, and lump sum fee (if applicable) will be described in separate CWAs, prepared by PG&E's Authorized Representative for the specific Services and issued by PG&E to Consultant for acceptance. Services requested from PG&E's Diablo Canyon Power Plant may be issued under a similar authorizing document.

4.0    CONTRACT WORK AUTHORIZATION (CWA)

Services shall not be performed by Consultant prior to the execution of a CWA by Consultant and PG&E. Any performance of Services by Consultant shall be authorized upon execution of a CWA, a sample of which is entitled "Contract Work Authorization" and attached hereto as

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 15
of 55

Attachment C, by first, Consultant, and second, PG&E; PG&E shall not be liable for any Services performed by Consultant not so authorized. The CWA shall not be effective until signed by Consultant and PG&E. The terms and conditions of this Contract shall apply independently to each CWA. The issuance of any CWA shall not commit PG&E to any future services by Consultant. Services requested from PG&E's Diablo Canyon Power Plant may be issued under a similar authorizing document.

PG&E may issue a CWA to Consultant as a direct-award or through a competitive bidding process. PG&E SHALL NOT BE LIABLE FOR ANY COSTS INCURRED BY CONSULTANT IN PREPARATION OF A PROPOSAL OR FOR OTHER "MARKETING" EFFORTS PUT FORTH BY CONSULTANT.

4.1     AUTHORIZATION

Upon receipt of the CWA, Consultant shall review the CWA and verify that the terms of the CWA are accurate and complete, and shall determine whether Consultant has the capacity to perform the Services specified in compliance with all the requirements of this Contract and those specified in the CWA. Consultant shall indicate its acceptance by having an authorized representative sign the CWA and forward the signed CWA to PG&E. IF CONSULTANT CANNOT ACCEPT THE CWA, CONSULTANT SHALL IMMEDIATELY NOTIFY PG&E.

4.2     DELIVERABLES AND ACCEPTANCE

Deliverables provided by Consultant upon completion of Services shall be subject to PG&E review and acceptance. Unless otherwise specified in a CWA, Consultant shall submit preliminary deliverables to PG&E for review and comment. All final engineering documents shall be stamped and signed by a Professional Engineer registered in the state of California. Consultant shall also provide PG&E with an electronic file of all final engineering drawings. Specific CADD/Drafting requirements will be given to Consultant from the PG&E department issuing work and will be set forth in the CWA at the time the CWA is issued.

Consultant shall address any PG&E comments to the reasonable satisfaction of PG&E prior to submittal of final deliverables. ACCEPTANCE OF ANY DELIVERABLE PROVIDED BY CONSULTANT SHALL IN NO WAY LIMIT CONSULTANT'S OBLIGATIONS OR PG&E'S RIGHTS UNDER THIS CONTRACT.

4.3     WORK STATUS REPORT

Consultant shall on a monthly basis or as coincides with the invoicing period for a CWA, whichever is more often, report to the PG&E Work Supervisor for the CWA, the following information, at a minimum, with regard to the status of Work:

- PROGRESS:  Work performed or completed by Consultant, including significant progress, set-backs, or outstanding issues, for example, permitting, regulatory or PG&E approval.

- CHANGES:  Changes, additions or decreases, to the scope of Work.

- BUDGET:  Cumulative billings, including a brief analysis and discussion of the billings as compared to actual progress.

- SCHEDULE:  Review of the schedule for the Work as compared to actual progress.

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 16
of 55

Consultant shall immediately notify PG&E regarding any problems that may significantly affect the performance of Services by Consultant. For example, problems may include but are not limited to, significant change, additions or decreases, to the services specified in the CWA, including out-of-scope services, which may significantly affect the Estimated Cost, schedule, quality, or other factors; delay in submittal of a deliverable to PG&E; and, other circumstances which may warrant immediate notification to PG&E. Consultant shall report such problems to the PG&E Work Supervisor for the CWA, and as appropriate, to the PG&E Contract Administrator. If Services performed by Consultant are not in the scope of the CWA, Consultant shall immediately notify PG&E.

4.4    MODIFICATION

PG&E and Consultant will address changes to a CWA by issuance of a modified CWA. Modifications to a CWA shall be authorized in accordance with the same requirements set forth for authorizing a CWA. The modification will reference the CWA which it modifies and will clearly set forth the changes to the previously issued CWA. Unless expressly authorized in the modified CWA, all the terms of the original CWA and any previous CWA modifications shall remain in full force and effect.

4.5    PG&E LABOR AGREEMENT

PG&E's existing labor agreement with the Engineers and Scientists of California union has restrictions on the contracting of specific design and drafting services. Therefore, a CWA issued under this Contract may require Consultant to utilize PG&E's designers and/or drafters for specific services to be performed under one or more tasks of the CWA, and Consultant shall do so in such a manner as to minimize costs to PG&E while continuing to deliver the caliber of service expected by current good and sound professional procedures and practices.

If Consultant agrees to perform the scope of work of a CWA for which certain task(s) require the use of PG&E designers and/or drafters, Consultant's Professional Engineer, registered in California, shall stamp all disciplines' design documents.

If, during the performance of such a task, the task's schedule cannot be met, Consultant shall immediately notify PG&E's Authorized Representative and both Consultant and PG&E shall agree upon a corrective course of action and a new schedule, as appropriate.

5.0    CONSIDERATION

The process by which Consultant shall be compensated for Services performed under this Contract will be specified in each CWA. Compensation shall be based on one of the following methods: (1) a Fee and Performance Incentive Plan with payments equal to Consultant's actual labor and authorized expenses, with Consultant's fee at risk based upon Consultant's performance as determined by a "Performance Scorecard" attached hereto as Attachment D, or (2) a fixed price or time and materials amount performed without a Fee and Performance Incentive Plan, or (3) a combination of (1) and (2) above. The compensation methods are described in detail below. When using a fixed price amount for Work performed, defined deliverables with associated milestone payments on specified dates must be included in the CWA. When using a combination of pricing as set forth above, each pricing applicable to each portion of the Work shall be specified in the CWA.

Notwithstanding any provision to the contrary, the total amount of this Contract and PG&E's total obligation for all Services provided hereunder, including all approved reimbursable expenses,

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 17 of 55

shall not exceed the total dollar amount of all signed Contract Work Authorizations (CWAs) issued hereunder.

5.1 FEE AND PERFORMANCE INCENTIVE PLAN PERFORMANCE SCORECARD

5.1.1 OVERVIEW. In order to evaluate Consultant's performance of any CWA under this Plan, determine the amount of compensation for Consultant's percentage of fee at risk, and to move Consultant to a higher level of consistent performance, a Performance Scorecard will be administered as part of this Contract. The Performance Scorecard criteria and the Maximum Fee Margin have been mutually agreed upon by both Parties. Payment on percentage of fee for each CWA will be applied to the actual labor only, and determined by PG&E's final scoring of the Performance Scorecard for that applicable CWA. The percent of the Maximum Fee Margin paid may range from zero percent (0%) for unsatisfactory performance to one hundred ten percent (110%) for excellent performance based on criteria set in the Performance Scorecard.

5.1.2 DEFINITIONS

When used in this Contract, the following terms have the specified meaning:

- "Actual Fee" (AE): The Fee earned by Consultant on any specific CWA is calculated based on the formula provided in Section 5.1.3.4.

- "Hourly Billing Rate" (HBR): The hourly billing rate identified as "PG&E Negotiated Rate without Fee" in Attachment B, "Consultant Mapped Hourly Billing Rates".

- "Maximum Fee Margin" (MFM): The percentage identified in Section 5.1.3.5 is the agreed-upon maximum fee, stated as a percentage of total actual labor costs, that Consultant is eligible to receive for any given Project. The actual payment to Consultant is subject to PG&E's evaluation of the Performance Scorecard.

- "Quality of Service Rating" (QSR): Total evaluated score received on Performance Scorecard approved by PG&E, expressed as a percentage and with a possible range of 0 to 110%.

- "Estimated Cost" (EC): As defined in Section 5.1.3.1.

5.1.3 PAYMENT UNDER FEE AND PERFORMANCE INCENTIVE PLAN. When a CWA specifies that Consultant will be compensated under a Fee and Performance Incentive Plan, payments to the Consultant will be calculated as described in this Section. Payment will consist of a price component and a fee component, which includes fee-at-risk.

5.1.3.1 ESTIMATED PRICE

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 18
of 55

Each CWA issued hereunder shall state an Estimated Cost (exclusive of fee) for the subject CWA. The Estimated Price will be established on a project-by-project basis, prior to Services commencing on the subject CWA. PG&E will request that Consultant calculate an Estimated Price for each Project. The Estimated Price shall be calculated by multiplying the Hourly Billing Rate (HBR) of each employee working on the Project by the estimated man-hours (H) on the Project for each employee, plus the total authorized reimbursable expenses, subConsultants, and travel expenses (E). The formula is shown below:

$$EC = (HBR \times H) + E$$

This Estimated Price calculation shall be inclusive of all Consultant's prices for engineering, design, final design, procurement support, and permitting support. The Estimated Price calculation explicitly excludes Project scoping efforts and field support, which will be invoiced separately by Consultant and reimbursed by PG&E in accordance with Section 5.2. NO FEE SHALL BE PAID WHEN PERFORMING SCOPING EFFORTS OR FIELD SUPPORT WITHOUT THE PRIOR WRITTEN APPROVAL OF PG&E.

Estimated Price calculations for all work performed hereunder shall be in accordance with the pay rates shown in the Contractor Hourly Billing Rates/Fee Schedule provided as Attachment B to this Contract. The Estimated Price is used for budgeting purposes and Consultant will also be evaluated under the Performance Scorecard for the accuracy of its Estimated Price for each Project. However, payment for the price component of the Services will be for the Actual Price, as calculated in Section 5.1.3.2 below.

5.1.3.2 Consultant will be paid for the Actual Price to perform the work. The price component is calculated in accordance with the following formula:

$$Actual\ Price = (HBR \times H) + E$$

Where:

HBR = Hourly Billing Rate, specified in Attachment B, of each employee working on the Project,

H = actual hours worked by the employee

E = actual authorized reimbursable expenses, subConsultants, and travel expenses.

The calculation of HBR multiplied by H is repeated for each employee working on a given Project. In addition, Consultant will be paid a fee calculated in accordance with Section 5.1.3.4 below.

5.1.3.3 PERFORMANCE SCORECARD.

Within two (2) weeks of completing the Work issued under a CWA, Consultant will fill out the Performance Scorecard based on a self evaluation of its performance of Services and submit to the PG&E Representative for review. Upon receipt of the completed Performance

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 19
of 55

Scorecard and discussions with Consultant, PG&E will either accept the Consultant's Performance Scorecard or will make revisions based on PG&E's evaluation of the Consultant's performance. PG&E agrees not to unreasonably withhold or delay the completion of Consultant's performance scorecard or fee payment, if applicable. The Consultant must submit a completed List of Subcontractors and Disbursement Record, Exhibit 1-A of the Consulting General Conditions, with their self-evaluated Performance Scorecard to report Consultant's total spend with diverse suppliers for each CWA. PG&E's evaluation will be final.

5.1.3.4    FEE AND PERFORMANCE INCENTIVE PLAN CALCULATION FORMULA

As described in this section, Consultant's fee for any CWA issued hereunder will be dependent upon the Consultant's performance relative to the criteria shown in Attachment D, "Performance Scorecard." The final Performance Scorecard score will be multiplied by the MFM, and the resulting percentage amount will then be multiplied by the total actual labor billed to the CWA, as stated in the following formula:

Actual Fee = (HBR x total actual hours billed) x (MFM x QSR)

No fee is payable on reimbursable expenses, which shall be billed in accordance with Section 2.2. of the Consulting General Conditions.

The following sample calculations are provided to illustrate the application of the formula:

*Scenario A: Assume the following:*

Estimated Price (EC) (labor & reimbursables) = $100,000
Actual Price = $92,000, including $72,000 labor and $20,000 reimbursables
MFM = 10%
QSR = 100%

Actual Fee = Total Labor Billed x (MFM x QSR)
Actual Fee = $72,000 x (10% x 100%)
Actual Fee = $72,000 x (0.1)
Actual Fee = $7,200

**Total Payment = Total Labor Billed + Reimbursable Price + Actual Fee**
**Total Payment = $72,000 + $20,000 + $7,200**
**Total Payment = $99,200**

*Scenario B: Assume the following:*

Estimated Price (EC) (labor & reimbursables) = $100,000
Actual Price = $92,000, including $72,000 labor and $20,000 reimbursables
MFM = 10%
QSR = 80%

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 20
of 55

Actual Fee = Total Labor Billed x (MFM x QSR)
Actual Fee = $72,000 x (10% x 80%)
Actual Fee = $72,000 x (0.08)
Actual Fee = $5,760

**Total Payment= Total Labor Billed + Reimbursable Price + Actual Fee**
**Total Payment = $72,000 + $20,000 + $5,760**
**Total Payment = $97,760**

5.1.3.5    MAXIMUM FEE MARGIN

For the purpose of calculating the Actual Fee (as shown above) for any CWA issued hereunder, the Parties agree that the Maximum Fee Margin shall be 8%.

The Maximum Fee Margin(s) shall remain fixed for the entire term of this Contract, unless otherwise agreed by PG&E in a fully signed Contract Change Order.

Consultant shall not apply the Actual Fee earned to the reimbursable expense or SubConsultant portion of the Estimated Price. PG&E approved reimbursable expenses shall be billed to PG&E at cost, with no fee allocated. SubConsultant costs shall be billed to PG&E in accordance with Paragraph 2.5 of the Consulting General Conditions, with no fee allocated.

5.2    SERVICES FOR FIXED PRICE OR TIME AND MATERIALS WITHOUT A FEE AND PERFORMANCE INCENTIVE PLAN

In the event that PG&E determines that the Estimated Price and Fee and Performance Incentive Plan (described in Sections 5.1.3.1 and 5.1.3.4) is not appropriate for a specific CWA, Services may be performed on a fixed price or Time and Materials basis as follows:

5.2.1    FIXED PRICE:  Payments under a CWA for a fixed price with no Fee and Performance Incentive Plan shall be in accordance with Article 2.2, "Billing for Time and Materials, Unit Price, and Lump Sum Work" of the Consulting General Conditions.

5.2.2    TIME AND MATERIALS:  Payments under a CWA for time and materials with no Fee and Performance Incentive Plan shall be in accordance with Article 2.2, "Billing for Time and Materials, Unit Price, and Lump Sum Work" of the Consulting General Conditions, with the exception that a fixed fee shall be billed at the rate of 8%.  The fixed fee applies only to labor, and not to any subConsultants, expenses, or travel costs, as outlined in Sections 2.5, 2.6 and 2.7 of the Consulting General Conditions, respectively.  The not-to-exceed amount for CWAs with payments on a time and material basis shall be based on the following calculation:

CWA not to exceed amount = [(H) estimated man hours x (HBR) hourly billing rate x 8%] + reimbursable expenses.

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 21
of 55

### 6.0 BILLING

Consultant shall bill PG&E monthly based on the Contract billing rates, subcontractor amounts and reimbursable expenses for Services provided in the subject CWA during the previous calendar month. Actual Price includes labor (Hourly Billing Rates X hours worked) and any PG&E approved reimbursable expenses. In addition, as a separate line item, Consultant shall bill PG&E for 50% of the Consultant's Maximum Fee Margin for the Services performed during the previous calendar month. Payment of 50% of the Maximum Fee Margin shall not be interpreted to imply that Consultant has actually earned the fee paid. Rather, PG&E is making such fee payments to prevent Consultant from having to "float" the entire fee for a Project that takes a long time to complete. The Actual Fee is not determined until all Services authorized under the subject CWA are completed and the Actual Fee is calculated in accordance with Section 5.2 "Fee and Performance Incentive Plan." If the Actual Fee is calculated to be less than the fee already paid, the Consultant shall credit PG&E the difference, which PG&E will then use to off-set against any future invoices submitted for Projects covered by this strategic alliance Contract. In the event that the Actual Fee is calculated to be greater than the fee already paid to Consultant, In the event of a dispute regarding any invoice, the undisputed amounts will be paid and Consultant will be notified of the amounts in dispute and the basis of the dispute within such thirty (30) day period.

A sample of the information that PG&E expects Consultant to furnish on its monthly invoices, in terms of form and content, is provided as Attachment E, "Sample Invoice", to this Contract.

### 7.0 CONTRACT TERM

This Contract consists of a base term of three (3) years, which shall become effective upon the date of execution by PG&E. PG&E, at its sole discretion, shall have a firm option to extend the term of the Contract on a year-to-year basis not to exceed two (2) additional years extension.

Services performed under any CWA not completed within the effective term of this Contract shall terminate at the conclusion of the term specified in the CWA and any modifications thereto. This Contract shall govern Consultant's and PG&E's rights and obligations with respect to said CWA to the same extent as if the CWA was completed during the term of this Contract.

### 8.0 CONTRACT PRICING

Contract prices shall not change during the term of this Contract without prior written approval by PG&E. PG&E will accept requests by Consultant for review of billing rates in accordance with Article 2.3 Billing Rates and Conflicts, of the Consulting General Conditions of this Contract.

### 9.0 VOLUME OF SERVICE - HOURLY BILLING RATE REDUCTION

During the term of this Contract, upon achieving calendar year thresholds in the volume of Services that Consultant performs as requested by PG&E, Consultant shall reduce its hourly billing rates established in this Contract by the following:

| Annual Labor Revenue | Hourly Billing Rate Reduction |
| --- | --- |
| $0 - $500,000 | 0% |
| $500,001 - $750,000 | 1% |
| $750,001 - $2,000,000 | 2% |
| $2,000,001 - $3,000,000 | 3% |

Case: 19-30088   Doc# 4634-2   Filed: 11/08/19   Entered: 11/08/19 17:57:56   Page 22
of 55

This reduction in labor rates is based on Consultant labor revenue invoiced, and eventually paid, over a calendar year (January 1 through December 31) and not based on work authorized. Hourly billing rate reductions will go into effect the first day of the month following the month that the applicable Annual Labor Revenue threshold has been reached and will continue through the end of that calendar year. The hourly billing rate reduction applies to the volume of work performed in excess of the labor threshold only and is not applicable to Subcontractor services. This volume discount applies to work performed by Consultant's Power Delivery Services group only. Expansion of this volume of services billing rate reduction to include services provided in the nuclear and fossil areas will be addressed separately should PG&E decide to engage such services under this Contract.

10.0    CONSULTANT STAFFING

Contractor was awarded this Contract in part based upon the qualifications of Contractor's key individuals identified to perform Work under this Contract. PG&E has the assurance from Contractor to endeavor to maintain these key individuals as members of the Consultant Core Contract Team as identified in Attachment A of this Contract, "Consultant Core Contract Team", for providing services to PG&E. Contractor shall request prior approval from PG&E for removal of any key individual listed in Attachment A, "Consultant Core Contract Team." Such approval shall not be unreasonably withheld or delayed. Upon approval of such changes, Attachment A, Contractor Contract Team, shall be revised in a Contract Change Order to reflect the change in Contractor's key individuals assigned to Work under this Contract.

11.0    WORK LOCATION

Services may be performed at Consultant's place of business, various locations throughout the PG&E service territory, or as required for successful completion of Services.

12.0    CONTROLLING ORDER

All Works shall be performed in accordance with all the terms and conditions set forth in this Contract, including the specific terms set forth in a CWA. Should a conflict exist between the Specific Conditions and the General Conditions, the Specific Conditions shall control. Should a conflict exist between a CWA and the terms set forth in this Contract, the terms set forth in this Contract shall control. THE TERMS AND CONDITIONS OF THIS CONTRACT SHALL APPLY INDEPENDENTLY TO EACH CWA, AND SHALL NOT BE MODIFIED IN WHOLE OR PART, IN ANY WAY, BY ANY CWA.

All Work shall be performed in accordance with all the terms and conditions set forth in this Contract, including without limitation all applicable local, state and federal laws, rules, orders, codes and regulations, and all other current and applicable guidance and standards. Should a conflict exist between the terms in this Contract and applicable federal, state, or local law, rule, regulation, order or code, the law, rule, regulation, order or code shall control.

13.0    SUPPLIER DIVERSITY

PG&E is subject to CPUC General Order (GO) 156, which sets forth an overall goal to purchase a minimum of 21.5% of its goods and services from women, minority, and disabled veteran-owned business enterprises (WMDVBEs). GO 156 sub-goals are to purchase goods and services at a minimum of: 15% from minority-owned, 5% from women-owned, and 1.5% from disabled veteran-owned business enterprises. GO 156 requires each utility to establish and maintain a subcontracting program for the purpose of encouraging its prime contractors to utilize WMDVBE subcontractors. GO 156 does not authorize or permit a utility to utilize set-asides, preferences, or quotas in administration of its WMDVBE program.

Consultant's stated goal to subcontract with diverse suppliers, for the performance of work under this Contract which will contribute to the achievement of PG&E's goals of purchases with WMDVBEs is 22%. Consultant agrees to make maximum good faith efforts to assist PG&E in meeting its goals through the implementation of Consultant's subcontracting plan. Such good faith efforts will be measured via the service level agreement and performance scorecard of this Contract.

Consultant agrees to submit enrollment form and utilize PG&E's Supplier Diversity Management System (SDMS) for on-line reporting of spend with WMDVBEs for reporting periods as specified by PG&E. To assist Consultant in any diversity subcontracting efforts, the Consultant may contact PG&E's Supplier Diversity Representative, Tita Gray, at (415) 972-5997.

## 14.0 CONTRACT INTERFACE

### 14.1 FOR PG&E

In regard to matters relating to this Contract, Consultant shall provide notice to the below-listed PG&E representative(s):

| Work Supervisor | Contract Administrator |
|---|---|
| Various – to be identified on CWAs issued hereunder for each Project | Jeff Montana<br>Supervisor, Supply Chain<br>Pacific Gas and Electric Company<br>P.O. Box 770000, Mail Code H16F<br>San Francisco, CA 94177<br>Telephone: (415) 973-0656<br>Email: JMMO@pge.com |

### 14.2 CONSULTANT

For technical and commercial matters relating to this Contract, PG&E will provide notice to the below-listed Consultant representative:

Mr. Thomas Eisenbart
Senior Vice President
Sargent & Lundy Engineers, Ltd.
55 E. Monroe
Chicago, IL 60603
Telephone: (312) 269-6478
Email: thomas.r.eisenbart@sargentlundy.com

## 15.0 LIMITATION OF LIABILITY

Except for Consultant's liability under Section B-4.3, Infringement Protection and Article B 2.1 and B 2.2 of this Contract's Consulting General Conditions, Consultant's liability for any and all claims arising or allegedly arising as a result of Consultant's performance under this Contract shall be limited to the greater of the value of the CWA associated with the claim or $1,000,000, and Consultant's aggregate liability under this Contract for the term of this Contract shall not exceed $4,000,000.

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 24
of 55

16.0    ESTIMATES

Consultant shall endeavor to prepare cost estimates and project time schedules as accurately as possible based on current quotations and experience. It is understood, however, that such estimates and schedules are furnished as a guide only and do not constitute guarantees.

**END OF SPECIFIC CONDITIONS**

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 25 of 55

## CONTRACTOR CORE CONTRACT TEAM

### SUBSTATION

| NAME | S&L LABOR CLASSIFICATION | PG&E STANARDIZED LABOR CLASSIFICATION | LOCATION |
|------|--------------------------|----------------------------------------|----------|
| Tom Eisenbart | Principal/Consultant | Principal 1 | Chicago |
| Mark Zar | Senior Manager | Senior Project Manager | Chicago |
| Frank Gerleve | Project Associate | Senior Engineer | Chicago |
| Stan Houk | Project Associate | Senior Engineer | Chicago |
| Ken Malten | Project Associate | Senior Engineer | Chicago |
| Tom Amundsen | Project Associate | Senior Engineer | Chicago |
| | | | |

### TRANSMISSION

| NAME | S&L LABOR CLASSIFICATION | PG&E STANARDIZED LABOR CLASSIFICATION | LOCATION |
|------|--------------------------|----------------------------------------|----------|
| Tom Eisenbart | Principal/Consultant | Principal | Chicago |
| Brian Wood | Senior Manager | Senior Project Manager | Chicago |
| Cal Yanaga | Senior Manager | Senior Project Manager | Chicago |
| Jorge Viloria | Senior Associate | Engineer | Chicago |
| Peter Ziegler | Senior Associate | Engineer | Chicago |
| | | | |

**CONSULTANT HOURLY BILLING RATES - HOME OFFICE (CHICAGO)**

| S&L Labor Classification | PG&E Negotiated Rate | PG&E Standardized Classification | PG&E Negotiated Rate | PG&E Negotiated Rate-W/O Profit |
|---|---|---|---|---|
| Principal/Consultant | $ 155.00 | Principal 1 | $ 155.00 | $ 142.60 |
| Project Associate | $ 118.00 | Senior Engineer 1 | $ 118.00 | $ 108.56 |
| Senior Associate | $ 91.00 | Engineer 1 | $ 91.00 | $ 83.72 |
| Associate II | $ 74.00 | Associate Engineer 2 | $ 74.00 | $ 68.08 |
| Associate I | $ 66.00 | Associate Engineer 1 | $ 66.00 | $ 60.72 |
| Senior Manager | $ 138.00 | Senior Project Manager 1 | $ 138.00 | $ 126.96 |
| Manager | $ 126.00 | Project Manager 1 | $ 126.00 | $ 115.92 |
| Senior Designer | $ 91.00 | Design Engineer 2 | $ 91.00 | $ 83.72 |
| Designer | $ 66.00 | Design Engineer 1 | $ 66.00 | $ 60.72 |
| Drafter | $ 47.00 | Computer Aided Drafting and Design (CADD) Specialist 2 | $ 47.00 | $ 43.24 |
| Administrative II | $ 54.00 | Administrative 2 | $ 54.00 | $ 49.68 |
| Administrative I | $ 47.00 | Administrative 1 | $ 47.00 | $ 43.24 |



| Fee at Risk | 8% |
|---|---|

\* PG&E Negotiated Rates will apply to Services performed for a fixed price or time and materials without a Profit and Performance Incentive Plan outlined in Section 5.2 of the Specific Conditions

\*\* PG&E Negotiated Rates w/o profit will apply to Services performed under the Profit and Performance Incentive Plan outlined in Section 5.1 of the Specific Conditions

1. PG&E Negotiated Rate includes computer and reprographics usage charges as well as miscellaneous charges such as telephone, special mailings, etc.
2. Travel charges will be billed at actual cost.
3. Billing rates are considered to be proprietary to S&L. Please treat them as confidential.
4. With prior mutual concurrence from both Parties, Services classified as engineering consulting, such as: emergency response, highly compressed project schedules (all rates apply), tasks for highly qualified technical experts, power systems studies or analysis, and due diligence or asset valuations have applicable rates at 1.2 times the above rates for classification of principal, manager, project associate and senior engineer.

January, 2006

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 27 of 55

**CONSULTANT HOURLY BILLING RATES - FIELD OFFICE**

| S&L Labor Classification | PG&E Negotiated Rate | PG&E Standardized Classification | PG&E Negotiated Rate | PG&E Negotiated Rate-W/O Profit |
|---|---|---|---|---|
| Principal/Consultant | $ 146.00 | Principal 1 | $ 146.00 | $ 134.32 |
| Project Associate | $ 111.00 | Senior Engineer 1 | $ 111.00 | $ 102.12 |
| Senior Associate | $ 85.00 | Engineer 1 | $ 85.00 | $ 78.20 |
| Associate II | $ 68.00 | Associate Engineer 2 | $ 68.00 | $ 62.56 |
| Associate I | $ 61.00 | Associate Engineer 1 | $ 61.00 | $ 56.12 |
| Senior Manager | $ 130.00 | Senior Project Manager 1 | $ 130.00 | $ 119.60 |
| Manager | $ 118.00 | Project Manager 1 | $ 118.00 | $ 108.56 |
| Senior Designer | $ 85.00 | Design Engineer 2 | $ 85.00 | $ 78.20 |
| Designer | $ 61.00 | Design Engineer 1 | $ 61.00 | $ 56.12 |
| Drafter | $ 42.00 | Computer Aided Drafting and Design (CADD) Specialist 2 | $ 42.00 | $ 38.64 |
| Administrative II | $ 49.00 | Administrative 2 | $ 49.00 | $ 45.08 |
| Administrative I | $ 42.00 | Administrative 1 | $ 42.00 | $ 38.64 |



| Fee at Risk | 8% |
|---|---|

\* PG&E Negotiated Rates will apply to Services performed for a fixed price or time and materials without a Profit and Performance Incentive Plan outlined in Section 5.2 of the Specific Conditions

\*\* PG&E Negotiated Rates w/o profit will apply to Services performed under the Profit and Performance Incentive Plan outlined in Section 5.1 of the Specific Conditions

1. PG&E Negotiated Rate includes computer and reprographics usage charges as well as miscellaneous charges such as telephone, special mailings, etc.
2. Travel charges will be billed at actual cost.
3. Billing rates are considered to be proprietary to S&L. Please treat them as confidential.
4. With prior mutual concurrence from both Parties, Services classified as engineering consulting, such as: emergency response, highly compressed project schedules (all rates apply), tasks for highly qualified technical experts, power systems studies or analysis, and due diligence or asset valuations have applicable rates at 1.2 times the above rates for classification of principal, manager, project associate and senior engineer.

January, 2006


**Pacific Gas
and Electric
Company**

## Contract Work Authorization

| | |
|---|---|
| | **Contract No.** _____ |
| | **Contract Work Authorization No.** _____ |
| | **Modification No. (If applicable)** _____ |

Page 1 of 1

| CONSULTANT |
|---|

| STREET ADDRESS | | | PG&E PROCUREMENT SPECIALIST |
|---|---|---|---|
| **CITY** | **STATE** | **ZIP CODE** | PT&T PHONE |

| PROJECT TITLE: |
|---|

| PG&E WORK SUPERVISOR: | PT&T PHONE NUMBER: | DATE PREPARED: | PREPARED BY |
|---|---|---|---|
| **REQUIRED START DATE:** | | **REQUIRED COMPLETION DATE:** | |
| CWA: ☐ NOT TO EXCEED, or ☑ FIRM FIXED PRICE, TOTAL: | | INVOICES SHALL BE SENT TO: | |

| DESCRIPTION OF WORK TO BE PERFORMED: |
|---|

Consultant shall perform the following Work in accordance with the Contract identified by the above Contract Number.

[The following bullet points are intended as a guide to preparing a clear, detailed scope of work, budget and schedule]

- Project title and clear scope of work description, including deliverables, budget and schedule with final completion date
- Background information, introduction, and purpose for others not familiar with the work
- Clear identification of individual work tasks with corresponding deliverables, budget and schedule with task completion dates
- Reference list of documents, drawings or other information supplied by PG&E
- Identification of Consultant's and PG&E's responsibilities, especially for collaborative work arrangements
- PG&E and/or industry standards to be followed
- Location of work
- Key personnel for Consultant, including names of individuals to perform the work and associated roles
- Unique qualifications, licenses, certifications, or experience required for Consultant's personnel
- Special resources, equipment and/or software, or other special requirements to perform the Work
- Unique format requirements for deliverables, electronic or hard copy, drawings or reports
- Delivery instructions and review process for deliverables, including time for PG&E review, formal design and constructability reviews, and review by others as applicable
- Acceptance criteria for deliverables
- Performance criteria and/or guarantees or warranties, including duration of warranty period
- Time allowed for PG&E review of deliverables before final acceptance, and notification of final acceptance before final invoice
- Payment schedule linked to completion dates for individual work tasks, deliverables or final completion date
- Additional factors unique to the project

*[NOTE: ALL INFORMATION IN THIS AREA MUST BE REMOVED PRIOR TO COMPLETING THIS FORM]*

| **AUTHORIZED BY:** FOR PG&E | **ACCEPTED BY:** FOR CONSULTANT |
|---|---|
| _____ Signature    _____ Date | _____ Signature    _____ Date |
| _____ Type or Print Name | _____ Type or Print Name |

DISTRIBUTION: Document Services (Original) – Consultant (Original) – Work Supervisor (Copy) – Contract Administrator (Copy)

 **Pacific Gas and Electric Company**

**Performance Scorecard**

Rev 1/26/06

**Consultant:** _____     **Today's Date:** _____

**Project:** _____

**CWA/PO:** _____     **Amount:** _____

## Quality (35%)

**Quality of Work Products:** Provides work products (example: scope, studies, design criteria, calculations, drawings, specifications, procurement documents, Bill of Materials, cost estimates, etc.) that meet negotiated scope of work in the CWA. Work products contain the appropriate level of engineering expertise and judgment, meet PG&E Standards and industry/regulatory requirements for which they are intended, successfully address design and constructability review comments, and fully supports PG&E's needs. Assigning and maintaining quality core team members for PG&E work and notifying PG&E of any changes in personnel.

| ☐ Excellent – Met, and sometimes exceeded expectations, all criteria fully met | ☐ Good – Met all expectations, criteria fully met | ☐ Satisfactory – Expectations met most of the time, all key criteria met | ☐ Needs Improvement – Missed some key expectations or criteria | ☐ Unsatisfactory – Expectations and criteria seldom met. |
|---|---|---|---|---|
| (17 points) | (15 points) | (13 points) | (8 points) | (0 points) |

**Comments:**

---

**Quality of Communication:** Facilitates complete and timely communication through routine meetings/phone conversations, use of e-mail and audio/video conferencing, weekly/monthly status reporting, and personnel availability. Ensures timely stakeholder involvement (i.e., the right people at the right time). Notification to PG&E Work Supervisor, at the early stage of the project, for requests of retrieving drawings and drawing numbers to insure latest revisions of drawings. Listens to PG&E's comments and directions and acts on them in a timely manner. Provides early notification of potential problems with meeting scope, schedule, cost, and deliverable commitments of authorized CWA.

| ☐ Excellent (12 points) | ☐ Good (10 points) | ☐ Satisfactory (8 points) | ☐ Needs Improvement (5 points) | ☐ Unsatisfactory (0 points) |
|---|---|---|---|---|

**Comments:**

---

**Quality of Field Safety:** Fully complies with PG&E safety requirements when performing office or site visit to PG&E facilities (Personal Protective Equipment, Job Safety Assessments, safe work practices, etc) and has zero injuries defined as an OSHA reportable injury.

| ☐ Excellent – full compliance with zero injuries and first aid. (6 points) | ☐ Needs Improvement – less than full compliance or injury required just first aid. (2 points) | ☐ Unsatisfactory – poor compliance or OSHA reportable injury. (0 points) |
|---|---|---|

**Comments:**

## Supplier Diversity (5%)

**Supplier Diversity:** Subcontracts work to WMDVBE subcontractors in accordance with the agreed-upon goals in the Contract, as demonstrated by reporting of spend through PG&E's Supplier Diversity Management System.

| ☐ Excellent: 22% or > of the Total Project Cost for the CWA. (5 points) | ☐ Good : 15% - 21.99% of the Total Project Cost for the CWA. (4 points) | ☐ Satisfactory : 7.5% -14.99% of the Total Project Cost for the CWA. (3 points) | ☐ Needs Improvement: 1%-7.49% of the Total Project Cost for the CWA. (2 points) | ☐ Unsatisfactory: 0% of the Total Project Cost for the CWA. (0 point) |
|---|---|---|---|---|

**Comments:**

## Delivery (20%)

**Key Deliverable Milestones and Delivery Dates:** Measured as ability to meet key deliverable milestones and delivery dates as specified in the CWA. Where applicable, if, as identified in the CWA, this project is a pre-requisite for other PG&E projects (cascading effect will delay other projects), ability to meet actual key milestone dates for the specified CWA so as not to affect other projects being performed in the same or other locations.

| ☐ Excellent – Met all key milestones and delivery dates; positive impact on related projects (20 points) | ☐ Good – Met at least 90% of key milestones; neutral or positive impact on related projects (18 points) | ☐ Satisfactory –Met at least 80% of key milestones and delivery dates; minimal negative impact on related projects. (15 points) | ☐ Needs Improvement – Did not meet at least 80% of key milestones and delivery dates; significant negative impact on related projects. (7 points) | ☐ Unsatisfactory – – Did not meet at least 80% of key milestones and delivery dates; severe negative impact on related projects. (0 points) |
|---|---|---|---|---|

**Comments:**

## Cost & Service (50%)

**Price Targets:** Estimates and performs Services in a manner that demonstrates Contractor's understanding how their estimates and job performance affects the overall project costs and minimizes any negative impact on costs of overall project. PG&E to track benchmark-engineering man-hours for each assigned task as part of the Job Estimating data depository for each PG&E line of business. Adjustments to score will be made for specific engineering savings detailed in the Project Cost Savings section below. AC=Actual Cost, EC=Estimated Cost

| ☐ Excellent AC <5% of EC (20 points) | ☐ Good AC=5-10% of EC (18 points) | ☐ Satisfactory AC=10-15% of EC (6 points) | ☐ Needs Improvement AC=15-20% of EC (8 points) | ☐ Unsatisfactory AC>20% of EC (0 points) |
|---|---|---|---|---|

**Comments:**

**Project Cost Savings:** Implement specific methods by which overall project costs can be reduced through efficiencies, scope reduction, schedule reduction, more effective deliverables, leveraging similar type of projects completed, reducing the cost of equipment/services procured, development of cost-effective alternatives that meet PG&E's needs. Evaluates and provides feedback on appropriateness of "Industry standard" vs. "PG&E specifications" etc.   If this category is not applicable to a specific project (example: direct breaker replacement in kind), Consultant and PG&E shall consult in advance concerning the total points and applicability of this category and the CWA shall specify how the Consultant's performance will be evaluated.

| ☐ Excellent – High value improvements to overall project | ☐ Good – Significant value improvements to overall project | ☐ Satisfactory – Moderate value improvements to overall project | ☐ Needs Improvement – Minimal or low value improvements | ☐ Unsatisfactory – none proposed |
|---|---|---|---|---|
| (15 points) | (13 points) | (11 points) | (6 points) | (0 points) |

| Comments: |
|---|
| |

**Value of Services:** Provides cost-effective service for all tasks throughout the duration of the CWA.  Is fully responsive to PG&E's needs & requests, provides new ideas/solutions, develops good scope definition and control to minimize Change Orders (COs). Incorporates all appropriate PG&E comments in a timely manner before next review cycle, deliverables for design and constructability reviews are complete to agreed level, meets interim milestones, fully meets requested scope for each task, provides accurate cost estimates, appropriate mix of resources for tasks (Sr/Jr Engineers, familiar with PG&E project work (type of work, work processes, facilities, and people), performs work in a manner that minimizes negative impacts on overall aspects (procurement and start-up where applicable) of the project and the cascading affects on other projects caused by this project's delays, provides cost-effective engineering services compared with other PG&E contracting options & experience.

| ☐ Excellent | ☐ Good | ☐ Satisfactory | ☐ Needs Improvement | ☐ Unsatisfactory |
|---|---|---|---|---|
| (15 points) | (13 points) | (12 points) | (8 points) | (0 point) |

| Comments: |
|---|
| |

**Final Score:** _____ %

ATTACHMENT E
SAMPLE INVOICE

(THIS SAMPLE IS REPRESENTATIVE OF FORM AND
CONTENT FOR ALL INVOICES, AND DOES NOT IN
ANY WAY REFLECT REAL PAY RATES, FEES,
HOURS OR REIMBURSABLES.)

**INVOICE FOR JANUARY 2006**

Contract No. _____

Contract Work Authorization No. _____

**CONSULTANT'S NAME**

**STREET ADDRESS**

**PG&E PROJECT MANAGER / ENGINEER**

| CITY | STATE | ZIP CODE |
| --- | --- | --- |

**CONSULTANT'S PHONE NUMBER**

LABOR FOR JANUARY

| Consultant Employee Name | PG&E Standard Job Classification | PG&E Negotiated Rate | Billable Hours for January | TOTAL |
| --- | --- | --- | --- | --- |
| John Doe | Project Manager II | $100.00 | 25 | $2,500.00 |
| Jane Smith | Civil Engineer I | $92.00 | 100 | $9,200.00 |
| Michael Jones | Electrical Engineer II | $86.00 | 50 | $4,300.00 |
| Katie Meadows | Lead Mechanical Engineer | $78.00 | 35 | $2,730.00 |
| Tom Anderson | Principal | $125.00 | 5 | $625.00 |
| Laurie Wells | Lead Geotechnical Engineer | $110.00 | 25 | $2,750.00 |
| | | | TOTAL LABOR | $22,105.00 |

E APPROVED REIMBURSABLE EXPENSES FOR JANUARY

| Expense Description | Expense Amount |
| --- | --- |
| Hotel | $230.00 |
| Air Fare (Coach) | $135.00 |
| Rental Car | $54.00 |
| Meals and Incidentals | $28.00 |
| Company/Personal Car Mileage (IRS Rate) | $21.75 |
| **TOTAL REIMBURSABLE** | **$468.75** |

PG&E APPROVED SUBCONTRACTORS EXPENSES FOR JANUARY

| Subcontractor Names | WMDVBE? | Billing Amount |
| --- | --- | --- |
| ABC Drafting Company | Yes | $2,500.00 |
| XYZ Engineering Firm | Yes | $1,500.00 |
| **TOTAL SUBCONTRACTORS** | | **$4,000.00** |

FEE FROM JANUARY

| 50% of the Maximum Fee Margin (as a % of Total Labor) | CWA Total Labor this Billing Period | % of Project (CWA) Completed |
| --- | --- | --- |
| 5% | $22,105.00 | 30% |
| **TOTAL BILLABLE FEE AT 5% FOR THIS BILLING PERIOD** | **$1,105.25** | |

| TOTAL AMOUNT DUE FOR JANUARY 2006 | $27,679.00 |
| --- | --- |

Labor Recap for this CWA

| Previous Labor Billed | $15,000.00 |
| --- | --- |
| Current Labor Billing | $22,105.00 |
| Total Labor Billed to Date* | $37,105.00 |

*Amount to be considered for fee calculation. Final profit calculation for this CWA will be determined upon final review and approval of
Contractor's Scorecard, in accordance with Section 5.1 of the Specific Conditions.

## CONSULTING GENERAL CONDITIONS

## TABLE OF CONTENTS

PAGE

### PART A: CONSULTING GENERAL CONDITIONS:

| | |
|---|---|
| Article 1. Definitions | A-2 |
| Article 2. Billing and Payment | A-3 |
| Article 3. Certain Obligations and Responsibilities of Contractor | A-4 |
| Article 4. Insurance | A-5 |
| Article 5. Changed Conditions | A-6 |

### PART B: BASE GENERAL CONDITIONS:

| | |
|---|---|
| Article B-1. No Guarantee of Work | B-1 |
| Article B-2. Indemnification, Liability and Withholding | B-1 |
| Article B-3. Amendments, Subcontracts and Assignments | B-2 |
| Article B-4. Royalties, License Fees, Use Rights, Infringement Protection | B-2 |
| Article B-5. Conflict of Interest/Business Ethics | B-4 |
| Article B-6. Safety Precautions and Protection of Property | B-5 |
| Article B-7. Guarantees and Equipment Warranty | B-5 |
| Article B-8. PG&E's Operation | B-6 |
| Article B-9. Availability of Information | B-6 |
| Article B-10. Cancellation and Termination of Contract | B-7 |
| Article B-11. Legal Provisions | B-8 |

### EXHIBITS:

EXHIBIT 1:    PG&E's Supplier Diversity Purchase Policy and Equal Opportunity
EXHIBIT 1A:  List of Subcontractors and Disbursement Record
EXHIBIT 2:    Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged
                     Business Concerns
EXHIBIT 3:    Injury and Illness Prevention Program Compliance Certificate
EXHIBIT 4:    Drug and Alcohol Abuse and Testing Policy

A-1

## PART A: CONSULTING GENERAL CONDITIONS

### ARTICLE 1. DEFINITIONS

When used in this Contract, the following terms have the specified meaning:

*"As directed," "as required," "as permitted," "approved," "written approval," "approval," "acceptable," "satisfactory,"* or similar terms, whether appearing as capitalized or lower case words, shall mean by or to PG&E unless otherwise specified.

*"Change Order"*: A Contract document signed by both parties which modifies the price, schedule, or other terms of the Contract or a CWA.

*"Contract"*: This executed agreement, between PG&E and Contractor, including each CWA, the Specification and any other materials specifically incorporated therein.

*"Contractor"* or *"Consultant"*: Party or parties entering into this Contract with PG&E for the Work.

*"CWA"*: Contract Work Authorization, the document describing a specific Work assignment and pursuant to which Contractor will be authorized to perform Work under this Contract. The terms and conditions of this Contract will apply independently to each CWA.

*"Days"*: Shall mean calendar days unless otherwise specified.

*"Hazardous Materials"* and *"Hazardous Waste"*: Any material defined as such in any local, state or federal rule, regulation, law or code for the location in which the Work is performed. This includes, but is not limited to, the definition of Hazardous Material and Hazardous Waste set forth in the California Health and Safety Code, Division 20, Chapter 6.95.

*"Joint Parties"*: The additional party or parties, if any, for whom Contractor is performing Work under the Contract.

*"Party"* or *"Parties"*: PG&E or Contractor or both.

*"PG&E"*: Pacific Gas and Electric Company.

*"Proposal"*: The bid quotation and package to perform Work under this Contract or an individual CWA as submitted by Contractor to PG&E.

*"Specification"*: PG&E's documents and drawings including specific conditions and these General Conditions all of which set forth the requirements for performance of the Work and which shall become incorporated in the Contract.

*"Subcontract"*: An agreement between Contractor and Subcontractor or between Subcontractors at any level for a portion of the Work under this Contract.

*"Subcontractor"*: Party or parties entering into a Subcontract with Contractor or another Subcontractor to perform a portion of the Work covered by the Contract. The obligations of Contractor set forth in this contract shall also apply to Subcontractors regardless of tier or level.

*"Work"* or *"Services"*: All services (including but not limited to professional, engineering, analytical and other consulting services), labor, supervision, materials, equipment, actions and other requirements to be performed and furnished by Contractor under this Contract.

A-2

## ARTICLE 2. BILLING AND PAYMENT

2.1   INVOICES:   Contractor shall submit a monthly invoice to PG&E for compensation earned in the preceding calendar month.   Contractor shall submit invoices to PG&E in accordance with the instructions printed in the Contract or Change Order.   The Contractor shall include the Contract number, and if applicable the CWA number, on the invoice.   Should PG&E determine that Contractor's invoice does not meet the invoicing requirements of this Contract, Contractor shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Contractor, Contractor shall resubmit a corrected invoice.

    2.1.1   XIGN: Upon notification from PG&E and a reasonable implementation time period, Contractor shall commence submitting invoices and supporting documentation electronically using the Xign system. This Section does not apply if Contractor is already using Xign for invoice submittals.

    2.1.2   FINAL INVOICE: The final invoice shall be marked "FINAL" and must be received by PG&E within 60 calendar days after completion of the Work.   PG&E will not be liable for payment of any late invoices that are received by PG&E beyond the 60 days.

2.2   BILLING FOR TIME AND MATERIALS, UNIT PRICE, AND LUMP SUM WORK: Contractor's invoices shall be inclusive of all Contractor's overhead costs, administrative and general fees, and profit.   Invoices to PG&E for compensation earned and reimbursable expenses, when appropriate, shall be broken down by Contract tasks.   For each task the invoice shall include the following information: task description, estimated cost to complete, total cost incurred to date and percentage of Work completed and date completed.   Additionally, invoices for time and materials and unit price Work shall include: (i) labor: employee name, employer classification, number of hours spent and billing rate; and (ii) reimbursable expenses: unit cost and quantity of each item of expense.   When invoices include Work performed on a unit price basis, Contractor shall attach to the invoice a list stating the unit price item numbers, unit prices, quantities, dollar amounts and other information as required to identify the Work.

2.3   BILLING RATES AND CONFLICTS:   Contractor's billing rates or fees stated in the Contract fee schedule shall not change during the term of this Contract without prior written approval by PG&E, and such approval will not be unreasonably withheld.   PG&E will accept requests by Contractor for review of billing rates two months prior to the first anniversary date of the Contract and annually thereafter.   If PG&E accepts adjustments to the hourly billing rates, those adjustments shall be in a manner proportional to changes in the Bureau of Labor Statistics' Index entitled Employment Cost Index (ECI) for Professional, Specialty and Technical Occupations, Series 112, using the Third Quarter as the base, or by 4.0%, whichever is less.   In the event that the Base used for calculating ECI is changed by the Bureau of Labor Statistics or a major revision is made to how ECI is calculated, any annual adjustment amount requested by Contractor shall be agreed upon by both PG&E and Contractor, but in no event shall it be greater than 4.0% for that year. Billing rates and fees shall be inclusive of all Contractor's overhead costs, administrative and general fees.

2.4   OVERTIME:   Overtime hours shall be billed at straight-time rates, unless otherwise approved by PG&E prior to the use of overtime, and limited to those hours for which Contractor's employee is actually compensated.   If applicable, Contractor's overhead cost shall not be applied to the premium portion of the overtime cost.

2.5   SUBCONTRACTORS:   Subcontractors, outside consultants, agency personnel or other non-employees of Contractor retained by Contractor shall not be billed as Contractor's employees and shall be shown separately on the invoice.   Subcontractors shall be billed to PG&E at the cost charged to Contractor times 1.10.

2.6   EXPENSES:   All reimbursable expenses shall be reasonable, ordinary, and necessary and shall be billed at cost.   All reimbursable expenses, other than overhead costs which will not be reimbursed

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 36
of 55

as expenses, shall be authorized in writing by PG&E's authorized representative prior to expenditure by the Contractor; any expenses not so approved by PG&E shall not be reimbursed.

2.7 TRAVEL TIME AND COSTS: All air travel costs within or outside of the United States will be reimbursed only on a coach fare basis and all rental car costs will be reimbursed only on a subcompact or compact vehicle rate basis for one individual and a midsize or full size vehicle rate basis for 2 or more individuals. Travel time to and from the Work site shall be at Contractor's expense.

2.8 MILEAGE AND USE OF PERSONAL CAR: In the event Contractor uses its personal car in the performance of Work under the Contract and such use is included as a reimbursable expense, mileage shall be at the current IRS rate. Normal commuting such as trips from home to first business stop and from the last business stop to home represents personal use of car and shall not be reimbursed.

2.9 SUPPORTING DOCUMENTATION: For each expense item over $100, supporting data and documentation shall be furnished with the invoice and each item of expense chargeable to PG&E shall be highlighted or clearly delineated. Copies of detailed expense reports to support travel costs shall be attached to the invoice. Although travel receipts need not be attached, Contractor shall retain them for the term of the audit period.

2.10 PG&E PAYMENT: Payment by PG&E to Contractor for Work performed on a time and materials, unit price or lump sum basis will be monthly, in the full amount due for Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed during each month including reimbursable expenses, if any. All payments will be made, subject to PG&E approval, within 30 days after receipt of a correct, itemized invoice. Payment of any remaining balance of the amount due will occur at the end of the Contract after all Work is satisfactorily completed.

### ARTICLE 3. CERTAIN OBLIGATIONS
### AND RESPONSIBILITIES OF CONTRACTOR

3.1 INDEPENDENT CONTRACTOR: In assuming and performing the obligations of this Contract, Contractor is an independent contractor and shall not be eligible for any benefits which PG&E may provide its employees, except as expressly provided for in this Contract. All persons, if any, hired by Contractor shall be employees or Subcontractors of Contractor and shall not be construed as employees or agents of PG&E in any respect.

3.2 REPLACEMENT OF PERSONNEL: Contractor agrees not to remove, replace or reassign individuals initially assigned by Contractor to perform services under this Contract without the approval of PG&E. Such approval shall not be unreasonably withheld or delayed. Contractor will make reasonable efforts to maintain continuity in its staffing and will endeavor to provide PG&E with ample notification if any such changes are made. Contractor agrees not to charge PG&E for the time spent in familiarizing replacement personnel with the Work.

    3.2.1 BY PG&E: If PG&E finds Contractor's employee to be unsatisfactory, Contractor shall replace said employee immediately. This provision does not in any way require, endorse or approve (expressed or implied) the termination of employment by the Contractor of any employee replaced under the terms of this paragraph.

A-4

3.3   LAWFUL DISPOSAL OF SAMPLED AND OTHER WASTE: If the scope of Work under this Contract requires Contractor to perform hazardous waste site investigations, the following provisions shall apply: (i) PG&E will be responsible for disposal of onsite samples. Charges for disposal of samples taken offsite for testing are included in the Contractor's proposed rates; and (ii) Contractor shall lawfully dispose of all test samples after completion of the required tests, along with any residue or byproducts of the testing process. Contractor shall comply with all of the existing federal, state and local laws, rules, regulations, and/or ordinances applicable to the services to be performed, including but not limited to, to the extent applicable, the Code of Federal Regulations, Title 40, Part 260 et seq. and the California Health and Safety Code, Section 25, 100 et seq., and the Title 22, California Code of Regulations, Section 66,000 et seq.

## ARTICLE 4. INSURANCE

Contractor shall, at its sole cost and expense, procure and maintain the following insurance coverage and be responsible for its Subcontractors maintaining sufficient limits of the appropriate insurance coverage.

4.1   WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY: Workers' Compensation insurance indicating compliance with any applicable labor codes, acts, laws or statutes, state or federal, where Contractor performs Work.

    4.1.1   Employers' Liability insurance shall not be less than $1,000,000 for injury or death each accident.

4.2   COMMERCIAL GENERAL LIABILITY: Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" or "claims-made" form, with no alterations to the coverage form. If a claims made form is provided, upon cancellation, Contractor will agree to provide a "basic extended reporting tail" coverage, good for five years after the end of the policy period. The retroactive date should be the same as the policy inception date.

    4.2.1   The limit shall not be less than $1,000,000 per claim and $2,000,000 in the aggregate for bodily injury, property damage, personal injury and products/completed operations. Defense costs shall be provided as an additional benefit and not included within the limits of liability of this policy. Coverage limits may be satisfied using an umbrella or excess liability policy or an Owners Contractors Protective (OPC) policy.

    4.2.2   Coverage shall: a) by "Additional Insured" endorsement add as insureds PG&E, its directors, officers and employees with respect to liability arising out of the Work performed by or for the Contractor (ISO Form CG2010 1185, or equivalent form). In the event the CGL policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy our requirement: "PG&E, its directors, officers and employees with respect to liability arising out of the work performed by or for the Contractor has been endorsed by blanket endorsement."; b) be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; and c) include a severability of interest clause.

4.3   BUSINESS AUTO: Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage from Covering Automobile Liability, code 1 "any auto."

4.3.1.   The limit shall not be less than $1,000,000 each accident for bodily injury and property damage.

4.4   PROFESSIONAL LIABILITY INSURANCE: Errors and Omissions Liability insurance appropriate to the Contractor's profession. Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract, including coverage for bodily injury, property damage, and consequential financial loss.

A-5

4.4.1　The limit shall not be less than $1,000,000 per claim/$2,000,000 aggregate.

4.4.2　Coverage limits may be satisfied using an umbrella or excess liability policy.

4.5　ADDITIONAL INSURANCE PROVISIONS: Before commencing performance of the Work, Contractor shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Contractor.

4.5.1　The documentation shall state that coverage shall not be cancelled except after thirty (30) days prior written notice has been given to PG&E.

4.5.2　The documentation must be signed by a person authorized by that insurer to bind coverage on its behalf and shall be submitted to:

Pacific Gas and Electric Company
Insurance Department - Suite 2400
One Market, Spear Tower
San Francisco, CA  94105

4.5.3　PG&E may inspect the original policies or require complete certified copies, at any time. Upon request, Contractor shall furnish PG&E evidence of insurance for its Subcontractors.

4.6　FORM AND CONTENT: Except for Professional Liability and Workers' Compensation, all policies or binders with respect to insurance maintained by Contractor shall:

4.6.1　Waive any right of subrogation of the insurers hereunder against PG&E, its officers, directors, employees, agents and representatives of each of them, and any right of the insurers to any setoff or counterclaim or any other deduction, whether by attachment or otherwise, in respect of any liability of any such person insured under such policy; and

4.6.2　With respect to any additional insured, provide that such insurance will not be invalidated by any action or inaction of each insured and will insure each such insured regardless of any breach or violation of any warranty, declaration or condition contained in such insurance by the primary named.

### ARTICLE 5. CHANGED CONDITIONS

5.1　ADDITIONAL WORK OR CHANGES IN WORK: Before proceeding with any work involving possible claims for extra compensation not specified in the contract, Contractor shall submit in writing to PG&E a detailed estimate of the cost for such work. Contractor shall provide PG&E with a detailed breakdown and estimated cost of such anticipated contract work, including extensions and Change Orders, as follows: (i) description of work to be performed including detailed breakdown by identifiable tasks; (ii) estimated cost of each task; and (iii) expected date of completion of each task.

5.1.1　PG&E APPROVAL: Contractor shall not proceed with any such additional work prior to receiving written authorization or a Change Order issued to Contractor by PG&E. Contractor agrees that all costs for any such modification or change that is performed by Contractor without PG&E's prior written approval shall be at Contractor's sole risk and expense.

5.2　PG&E CHANGES TO WORK: PG&E reserves the right to make such changes in Work, specifications, or level of effort, as may be necessary or desirable and any difference in Contract price resulting from such changes shall be approved in writing by PG&E before the Work is begun.

A-6

5.3 CHANGES BEYOND PARTIES' CONTROL: Neither PG&E nor Contractor shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of the affected Party. In the event either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party shall promptly notify the other Party of that fact, and of the circumstances preventing or delaying performance. Such Party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

## PART B: BASE GENERAL CONDITIONS

### ARTICLE B-1. NO GUARANTEE OF WORK

THIS IS NOT AN EXCLUSIVE CONTRACT. THIS CONTRACT DOES NOT GUARANTEE CONTRACTOR ANY VOLUME OR DURATION OF WORK. PG&E EXPRESSLY RESERVES ALL OF ITS RIGHTS INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO CONTRACT WITH OTHER PARTIES FOR THE PERFORMANCE OF WORK OF THE TYPE CONTEMPLATED BY THIS CONTRACT, THE RIGHT TO REQUEST PROPOSALS FROM OTHERS WITH OR WITHOUT REQUESTING PROPOSALS FROM CONTRACTOR AND THE UNRESTRICTED RIGHT TO PERFORM THE WORK WITH PG&E'S OWN EMPLOYEES.

### ARTICLE B-2. INDEMNIFICATION, LIABILITY AND WITHHOLDING

B-2.1 PROFESSIONAL SERVICES INDEMNIFICATION: Contractor, in the performance of professional services under this Contract, shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; to the extent such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is connected with Contractor's negligent acts, errors or omissions under this Contract.

B-2.2 NON-PROFESSIONAL SERVICES INDEMNIFICATION: Contractor, other than in the performance of professional services covered in Section B-2.1 above, shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; to the extent such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is connected with Contractor's negligent acts, errors or omissions in the performance of, or failure to perform, this Contract.

B-2.3 Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity. Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

B-2.4 WITHHHOLDING: PG&E may withhold from the final payment due Contractor hereunder such amounts as, in PG&E's opinion, are sufficient to provide security against all loss, damage, expense, and liability covered by the foregoing indemnity provision for damage to property.

B-2.5 RISK OF LOSS OR DAMAGE TO WORK: Until the Work is completed and accepted by PG&E, the risk of loss or damage to the Work shall remain with Contractor. No damages or extras will be allowed for unforeseen difficulties or obstructions, except as explicitly set forth herein.

B-2.6 INCIDENTAL AND CONSEQUENTIAL DAMAGES: NEITHER PG&E NOR CONTRACTOR SHALL BE LIABLE TO EACH OTHER FOR ANY INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO, LOSS OF REVENUES OR PROFITS, RENTAL OR LEASE AGREEMENT(S), OR PERSONAL SERVICES CONTRACTS, UNLESS EXPRESSLY AUTHORIZED IN WRITING BY THE PARTY TO BE

SF\537339.2

CHARGED. PROVIDED, HOWEVER, THAT THE FOLLOWING SHALL BE CONSIDERED DIRECT DAMAGES TO THE EXTENT THEY RESULT DIRECTLY FROM CONTRACTOR'S MATERIAL FAILURE TO PERFORM IN ACCORDANCE WITH THIS CONTRACT.

B-2.6.1 Straight time or overtime incurred by PG&E, including overhead allocations for employees, wages or salaries of additional employees, travel expenses, and telecommunication charges;

B-2.6.2 Reasonable costs and expenses incurred to procure the services from an alternate source as a result of Contractor's breach of this Contract, to the extent in excess of Contractor's charges under this Agreement.

B-2.7   LIMITATION OF LIABILITY: Section 15.0 of the Specific Conditions of this Contract.

### ARTICLE B-3. AMENDMENTS, SUBCONTRACTS AND ASSIGNMENTS

B-3.1   AMENDMENT: No provision of the Contract will be deemed amended or waived by PG&E without prior written approval by Change Order. No oral statement will modify or otherwise affect the terms and conditions set forth herein.

B-3.2   SUBCONTRACTS: Contractor shall not enter into Subcontracts and no Subcontractor shall be permitted to perform Work without the prior written approval of PG&E. PG&E's approval of any Subcontract shall not relieve Contractor of its obligations to PG&E under this Contract. The provisions and obligations of this Contract shall apply to any Subcontract and Contractor shall be responsible to PG&E for any damages to PG&E arising out of Subcontracts not in accordance with this Contract. Nothing in the Contract shall create any contractual relations between a Subcontractor and PG&E.

B-3.3   ASSIGNMENT: Neither party may assign any of its rights, voluntarily or involuntarily, whether by operation of law or any other manner, or delegate any performance under this Contract, without the prior written consent of the other party. Any purported assignment or delegation of performance in violation of this provision is void. Subject to the foregoing, this Contract is binding upon and shall inure to the benefit of the successors and assigns of the parties.

### ARTICLE B-4. ROYALTIES, LICENSE FEES, USE RIGHTS, INFRINGEMENT PROTECTION

B-4.1   ROYALTIES AND LICENSE FEES: Royalties, license fees or other charges for patents, copyrights, licenses, or other intellectual property for designs, processes, machinery, equipment, technology, published or unpublished data, information or materials, including but not limited to, manuals, computer programs or other deliverables furnished by Contractor for the Work, or for processes or methods employed by Contractor in performing the Work, shall be included in the Contract price.

B-4.1.1 OWNERSHIP OF DELIVERABLES: PG&E shall own all data, drawings, designs, reports, information, manuals, computer programs or other written, recorded, photographic or visual materials, or other deliverables produced in the performance of this Contract. Contractor shall retain no ownership, interest, or title in them except as may otherwise be provided in this Contract.

B-4.1.2 PREEXISTING RIGHTS: If and to the extent that Contractor retains any preexisting rights in any materials furnished hereunder, Contractor hereby grants to PG&E the irrevocable, perpetual, non-exclusive, worldwide, royalty-free right and license to (1) make, use, execute, reproduce, display, perform, distribute copies of, and prepare derivative works based upon such preexisting rights and derivative works thereof in connection with PG&E's business, and (2) authorize others to do any or all of the foregoing in connection with PG&E's business. Any claims of Contractor to proprietary

B-2

Case: 19-30088   Doc# 4634-2   Filed: 11/08/19   Entered: 11/08/19 17:57:56   Page 42 of 55

rights in materials furnished hereunder must be expressly set forth in this Contract or shall have been previously disclosed to PG&E in writing.

B-4.1.3 COPYRIGHT REGISTRATION: Notice of PG&E copyright ownership shall be placed by Contractor on all reports, information or instructional manuals, computer programs or other written, recorded, photographic or visual materials or other deliverables to which PG&E has the right of such ownership as provided in this Contract. Such notice shall be placed on the materials in a manner and location as to give reasonable notice of the claim of copyright, and shall consist of the copyright symbol or the word "Copyright" followed by the year in which the material is produced and the words "Pacific Gas and Electric Company". Application for copyright registration shall be the responsibility of PG&E.

B-4.1.4 PROPRIETARY RIGHTS: PG&E shall own all proprietary rights, including, but not limited to, exclusive patent and copyright rights, in and to all inventions, software, works of authorship, designs or improvements of equipment, tools or processes conceived, developed, implemented or produced by Contractor in the performance of this Contract or CWA, and Contractor shall retain no ownership, interest or title in or to them except as otherwise provided in this Contract.

B-4.1.5 RETENTION OF RECORDS: To the extent PG&E does not otherwise specifically request delivery of records or results, Contractor agrees to retain all records and results of work performed under this Contract for a period of not less than two years from the date the Work is accepted by PG&E. At PG&E's request, Contractor will deliver a copy of any or all original field notes, investigative notes, tests, photographs, records, calculations, summaries, reports and records produced and collected in the course of the Work performed under this Contract.

B-4.1.6 PUBLIC RELEASE OF RESULTS: Contractor agrees not to release any information relating to the Work performed hereunder for publication, advertising, or for any other purpose, without first providing PG&E with the information sought to be released and a description of the publication for PG&E's prior approval. Contractor further agrees that no release shall present any material findings not reasonably inferable from the data. Any public release shall acknowledge PG&E's sponsorship of the Work.

B-4.1.7 CONTRACTOR'S USE OF PG&E PROPERTY: All records, reports, computer programs, written procedures and similar materials, documents or data, in whatever form, provided by PG&E for Contractor's use in the performance of Work under this Contract shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of Contractor's use for the performance of Work or earlier upon the written request of PG&E.

B-4.1.8 CONFIDENTIALITY: In the course of performing the Work under this Contract, Contractor may have access to confidential, commercial, business or personal information concerning, but not limited to, technological, financial, rate-making, legislative and personnel matters and practices of PG&E, its affiliates, subsidiaries, parent company or members of the public. Contractor agrees not to disclose any such confidential information or to otherwise make it available to any other person, including any affiliate of PG&E that provides energy or energy-related products or services, without the prior written approval of PG&E, except to Contractor's employees who need such information to properly perform their duties under this Contract.

B-4.1.9 PUBLIC TESTIMONY: It is further agreed between the Parties that, if requested by PG&E, Contractor shall provide testimony before any federal, state or local court, regulatory body or any other public agency to substantiate any Work performed or data,

B-3

SF\537339.2

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 43
of 55

reports, or materials supplied to PG&E. Reasonable fees for such testimony will be negotiated at that time.

B-4.2    USE AND REPRODUCTION RIGHTS: PG&E shall have the unrestricted right of use and reproduction of all documentation, including but not limited to, instructional manuals, and other materials related to the Work furnished hereunder. Such use and reproduction by PG&E or by contractors doing work for PG&E shall not require further permission by Contractor, nor shall it constitute infringement of Contractor's ownership rights, including copyright, to such materials. Any claims of Contractor to ownership in materials furnished hereunder must be expressly set forth in the Contract or shall be disclosed to PG&E in writing. All documents, including, but not limited to, drawings, specifications, and computer software prepared by Contractor pursuant to this Contract are instruments of service in respect to the Work. They are not intended or represented to be suitable for reuse by PG&E or others on any other project. Any reuse without prior written verification or adaptation by Contractor for the specific purpose intended will be at PG&E's sole risk and liability.

B-4.3    INFRINGEMENT PROTECTION: Contractor represents to PG&E that the Work to be performed, and the materials prepared or used, under this Contract will not infringe upon the copyright, patent or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. Contractor agrees to indemnify and hold PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, harmless from any suit, demand or claim alleging any such infringement or violation. In addition to the foregoing, if there is such a claim, Contractor agrees at PG&E's option to either procure for PG&E the right to continue using the material, replace the material with non-infringing material or modify it so it becomes non-infringing, or remove the item and refund the applicable portion of the Contract price; provided, however, that the replaced or modified material shall be equal to that contracted for hereunder and satisfactory to PG&E. Contractor further agrees to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorney's fees incurred by PG&E in defense against such suit.

### ARTICLE B-5.  CONFLICT OF INTEREST/BUSINESS ETHICS

B-5.1    REASONABLE CARE: Contractor shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest hereunder.

B-5.2    OTHER EMPLOYMENT: During the term of this Contract, Contractor or its employees will not knowingly accept any employment or engage in any work which creates a conflict of interest with PG&E or in any way compromises the Work to be performed under this Contract.

B-5.3    GIFTS: Contractor or its employees shall not offer or cause to be offered gifts, entertainment, payments, loans and/or other services, benefits or considerations of more than a nominal value to PG&E's employees, their families, vendors, Subcontractors and other third parties.

B-5.4    ACCURATE DOCUMENTATION: All financial statements, reports, billings, and other documents rendered shall properly reflect the facts about all activities and transactions handled for the account of PG&E.

B-5.5    NOTIFICATION: The Contractor shall immediately notify PG&E of any and all violations of this clause upon becoming aware of such violation.

### ARTICLE B-6.  SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY

B-6.1    REGULATIONS AND CONDUCT OF WORK: Contractor shall plan and conduct the Work to safeguard persons and property from injury. Contractor shall direct the performance of the Work in compliance with reasonable safety and work practices and with all applicable federal, state, and local laws, rules, and regulations, including but not limited to "Occupational Safety and

SF\537339.2

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 44
of 55

Health Standards" promulgated by the U.S. Secretary of Labor and the California Division of Occupational Safety and Health, including the wearing of the appropriate Personal Protective Equipment (PPE) at the worksite. Work in areas adjacent to electrically energized facilities and/or operating natural gas facilities shall be performed in accordance with said practices, laws, rules, and regulations. PG&E may designate safety precautions in addition to those in use or proposed by Contractor. PG&E reserves the right to inspect the Work and to halt construction to ensure compliance with reasonable and safe work practices and with all applicable federal, state, and local laws, rules, and regulations. Neither the requirement that Contractor follow said practices and applicable laws, rules, and regulations, nor adherence thereto by Contractor, shall relieve Contractor of the sole responsibility to maintain safe and efficient working conditions.

B-6.2    CALIFORNIA HEALTH AND SAFETY CODE: The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Work or services contemplated under this Contract, Contractor, its employees, agents and Subcontractors may be exposed to chemicals on the Governor's list. Contractor is responsible for notifying its employees, agents, and Subcontractors that Work performed hereunder may result in exposures to chemicals on the Governor's list.

B-6.3    CONTROLLED SITE ACCESS: A distinctive visible identification badge shall be furnished by Contractor and worn by its employees when on PG&E's property. Insofar as practicable, PG&E will require Contractor's employees to use one designated access in going to and from the worksite. Contractor's guests and visitors shall secure a permit from PG&E to enter the worksite, and will be logged in and out of the property with PG&E retaining the permit at the time of logging out. Contractor's employees shall not enter electrically energized equipment areas or other areas out of construction limits except with written permission.

B-6.4    ADDITIONAL PRECAUTIONS: If PG&E requests Contractor to provide certain safeguards not in use but considered necessary and if Contractor fails to comply with the request within a reasonable time, PG&E may provide the safeguards at Contractor's expense. Failure to comply with safety precautions required by PG&E may result in cancellation of the Contract in accordance with Article 9 of Part A.

B-6.5    DISCOVERY OF HAZARDOUS WASTES OR HAZARDOUS MATERIAL AND NOTICE TO PG&E: In the event that Contractor discovers Hazardous Waste or Hazardous Material on the job site during the performance of the Work, Contractor shall immediately notify PG&E of the situation.

### ARTICLE B-7. GUARANTEES AND EQUIPMENT WARRANTY

B-7.1    WARRANTY: Contractor warrants to PG&E that the Work under this Contract shall be performed with the degree of skill and care that is required by current, good and sound professional procedures and practices, and in conformance with generally accepted professional standards prevailing at the time the Work is performed so as to ensure that the services performed are correct and appropriate for the purposes contemplated in this Contract and related specifications. The obligations and representations contained in this Article are Contractor's sole warranty and guarantee obligations and PG&E's exclusive remedy in respect of quality of the Work. EXCEPT AS PROVIDED WITHIN THIS CONTRACT, THERE ARE NO WARRANTIES OR GUARANTEES, EXPRESS OR IMPLIED, RELATING TO THE WORK HEREUNDER, AND CONTRACTOR DISCLAIMS ANY IMPLIED WARRANTIES OR WARRANTIES IMPOSED BY LAW INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

SF\537339.2

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 45
of 55

B-7.2 GUARANTEE: Contractor shall reperform at its expense any part of the Work that develops defects due to faulty design, engineering or any failure to comply with or perform in accordance with the requirements of the Specification within a period of one year after the Work is delivered by Contractor to PG&E. Contractor shall promptly repair, at Contractor's expense, other Work, equipment or property damaged as a result of the defects, or as the result of the reperforming thereof, and hold PG&E harmless from PG&E's repair expenses. The warranty period for a reperformance shall be one year from the date of completion and delivery to PG&E of the reperformance.

B-7.3 REPAIRS BY PG&E: In the event PG&E determines that it is impractical for Contractor to replace the Work performed after Contractor was provided written notice by PG&E and given a reasonable cure period, PG&E reserves the right to undertake or have others undertake the replacement at Contractor's expense. PG&E's exercise of its rights under this Paragraph shall not waive any rights or remedies PG&E may have under this Contract.

### ARTICLE B-8. PG&E'S OPERATION

B-8.1 PG&E'S OPERATION: When working in the vicinity of PG&E's plant or offices, Contractor shall conduct the Work in a manner that will cause a minimum of inconvenience to PG&E's employees and the general public. Contractor shall not interfere with PG&E's business or other operations.

B-8.2 USE OF FACILITIES: PG&E shall have the use of constructed facilities during the Contract period whether facilities are completed or not. If PG&E makes use of an uncompleted facility, PG&E will reimburse Contractor for actual expense Contractor may incur as a result of such use.

B-8.3 ADVERTISING MATTER: Contractor shall neither advertise nor allow advertising at the worksite without written approval.

B-8.4 CLEANING UP: With respect to its own operation, Contractor shall maintain the worksite and related structures, equipment, and facilities in a clean, orderly condition during progress of the Work and clean up debris to the satisfaction of PG&E. If, in PG&E's opinion, the worksite is not being kept in a clean, orderly condition and if upon notice to correct the condition Contractor fails to so do, PG&E may shut down the Work until cleanup is performed or order others to perform cleanup work at Contractor's expense. Building surfaces, including glass, shall be left clean. Where more than one contractor is working at the worksite, and there is a disagreement in regard to the amount of cleanup each shall perform, PG&E will designate the amount of cleanup work each contractor shall perform. Upon completion of the Work, Contractor shall remove its tools, construction equipment, debris, and waste material from the worksite and leave the area in a clean and orderly condition to PG&E's satisfaction.

### ARTICLE B-9. AVAILABILITY OF INFORMATION

B-9.1 ACCESS: PG&E's duly authorized representatives, excluding direct competitors of the Contractor, shall have, during the term of the Contract and for three years thereafter, access at all reasonable times to all of the Contractor's and its Subcontractors' records of all description, including but not limited to computer files, pertaining to the Contract to verify or review the quantity, quality, work program and progress of the Work, reimbursable costs, amounts claimed by the Contractor, estimates of cost for fixed rates including those applicable to proposed changes, and for any other reasonable purposes including any and all records of the Contractor for the purpose of verifying compliance with Article B-5. This access does not extend to the audit of Contractor's indirect or overhead costs.

B-9.2 APPLICABILITY: This Article B-9 shall apply to all PG&E contracts but shall not apply to pricing for contracts performed solely on a lump-sum basis. However, where lump-sum and time and materials work (including unit price, reimbursable cost, fixed rates, etc.) are performed together,

SF\537339.2

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 46
of 55

either as a part of this Contract or as separate contracts, then the above audit right shall also extend to PG&E's access to all Contractor's records pertaining to all PG&E contracts, including the lump-sum, for assurance that the portions of the Work performed on a time and materials basis are not being charged with time, material or other units or cost which are intended to be covered by lump-sum or fixed rates, etc., provided under this Contract, including Change Orders, or other agreements.

B-9.3    ACCOUNTING: The Contractor's and its Subcontractors' accounts shall be kept in accordance with generally accepted accounting principles in the particular industry and shall be kept in such a manner and in sufficient detail to clearly disclose the nature and amounts of the different items of service and cost pertaining to the Contract and the basis for charges or allocations to the Contract.

B-9.4    SUBCONTRACTORS: The Contractor shall include the necessary provisions in its Subcontracts to ensure that its Subcontractors comply with this Article.

### ARTICLE B-10. CANCELLATION AND TERMINATION OF CONTRACT

B-10.1   CANCELLATION FOR CAUSE: PG&E may, at its option, cancel or suspend this Contract for cause upon, but not limited to, the: (i) failure, refusal or inability of the Contractor to perform the Work in accordance with this Contract for any reason (except for those reasons that are beyond Contractor's control) after receiving notice from PG&E and an opportunity to cure and Contractor has failed to do so; provided however, at PG&E's option, safety or security violations may result in immediate cancellation; (ii) Contractor's insolvency, failure to pay bills, or receipt of returned checks for payment of its bills due to insufficient funds; (iii) placement of a legal action against Contractor which, in PG&E's opinion, may interfere with the performance of the Work; or (iv) the determination by PG&E that the Work will not be completed in the specified time, request by PG&E that Contractor take steps necessary to accomplish the required progress and completion, and failure of Contractor to do so.

   B-10.1.1 PG&E will be the sole judge whether Contractor is substantially performing Work in accordance with this Specification. Contractor shall be liable for additional costs to PG&E arising from cancellation.

   B-10.1.2 If the Contract is canceled, Contractor shall vacate the worksite but shall not remove material, plant, or equipment without the approval of PG&E. In the event of such cancellation, PG&E shall pay Contractor for services satisfactorily performed prior to the date of cancellation which are of benefit to PG&E. In no event shall PG&E be liable for lost or anticipated profits or overhead on uncompleted portions of the Work. Any reports, drawings or other documents prepared for PG&E prior to the effective date of such cancellation shall be delivered to PG&E by Contractor. Contractor shall not enter into any agreements, commitments or Subcontracts which would incur significant cancellation costs without prior written approval of PG&E. Such written approval is a condition precedent to the payment of any cancellation charges by PG&E.

   B-10.1.3 In addition to other remedies, PG&E may at its option and without prejudice to its other rights, take over and complete all or part of the Work.

B-10.2   TERMINATION FOR PG&E'S REASONS: PG&E may suspend or terminate the Contract, without cause upon written notice to Contractor. Contractor thereupon shall take whatever action with respect to performance of the Work as will tend to minimize its claim against PG&E. In the event of termination, PG&E shall be liable to Contractor only for the compensation earned on the Work satisfactorily performed to the date of termination, plus direct costs reasonably incurred by Contractor in terminating its operation. Contractor shall not be entitled to any payment for lost or anticipated profits or overhead on uncompleted portions of the Work. Contractor shall not enter into any agreements, commitments or Subcontracts which would incur

B-7

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 47
of 55

significant cancellation costs without prior written approval of PG&E. Such written approval is a condition precedent to the payment of any cancellation charges by PG&E.

## ARTICLE B-11. LEGAL PROVISIONS

B-11.1 LEGAL REPRESENTATION: To the extent necessary, each Party was represented by counsel in the negotiation and execution of this Contract.

B-11.2 CHOICE OF LAWS: This Contract shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction. Any controversy or claim arising out of or in any way relating to this Contract which cannot be amicably settled without court action shall be litigated in a California State Court of competent jurisdiction; or if jurisdiction over the action cannot be obtained in a California State Court, in a Federal Court of competent jurisdiction situated in the State of California.

B-11.3 COMPLIANCE WITH LAWS: Contractor shall comply with all federal, state and local laws, rules and regulations applicable to the Work to be performed under this Contract and to all aspects of the employment relationships between Contractor and its employees assigned to this Contract. Unless prohibited by law, Contractor shall hold PG&E harmless from any liability, fine or penalty incurred as a result of Contractor's failure to comply with applicable legal and regulatory requirements.

B-11.4 DISPUTE RESOLUTION: The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Contract promptly by negotiations between a vice president of PG&E or his or her designated representative and an executive of similar authority of Contractor. Either Party may give the other Party written notice of any dispute. Within 20 days after delivery of said notice, the executives shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary to exchange information and to attempt to resolve the dispute. If the matter has not been resolved within 30 days of the first meeting, either Party may initiate a mediation of the controversy. Each Party is required to continue to perform its obligations under this Contract pending final resolution of any dispute arising out of or relating to this Contract.

B-11.5 CONFIDENTIALITY: All negotiations and any mediation conducted pursuant to this section are confidential and shall be treated as compromise and settlement negotiations, to which Section 1119 of the California Evidence Code shall apply, and Section 1119 is incorporated herein by reference.

B-11.6 PRELIMINARY INJUNCTION: Notwithstanding the foregoing provisions, a Party may seek a preliminary injunction or other provisional judicial remedy if in its judgment such action is necessary to avoid irreparable damage or to preserve the status quo.

B-11.7 NON-WAIVER: The waiver by either Party of any breach of any term, covenant or condition contained in this Contract, or any default in the performance of any obligations under this Contract, shall not be deemed to be a waiver of any other breach or default of the same or any other term, covenant, condition or obligation. Nor shall any waiver of any incident of breach or default constitute a continuing waiver of the same.

B-11.8 ENFORCEABILITY: In the event that any of the provisions, or application of any of the provisions, of this Contract are held to be illegal or invalid by a court of competent jurisdiction or arbitrator/mediator, PG&E and Contractor shall negotiate an equitable adjustment in the provisions of this Contract with a view toward effectuating the purpose of this Contract. The illegality or invalidity of any of the provisions, or application of any of the provisions, of this Contract will not affect the legality or enforceability of the remaining provisions or application of any of the provisions of the Contract.

B-8

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 48
of 55

B-11.9   INTEGRATION: This Contract constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous communications, representations, or agreements, whether oral or written, with respect to the subject matter hereof and has been induced by no representations, statements or agreements other than those herein expressed. No provision of this Contract may be modified or waived unless in writing and executed by both Parties.

B-11.10  THIRD PARTY BENEFICIARIES: To the extent the scope of Work under the Contract requires Contractor to perform Work for both PG&E and Joint Parties, Contractor and PG&E hereby agree that the Joint Parties are express third party beneficiaries to the Contract.

B-11.11  PRIOR WORK: Work performed prior to execution of Contract pursuant to PG&E's authorization shall be performed in accordance with, and shall be subject to, the provisions of this Contract.

B-11.12  SURVIVAL: The provisions entitled Article B-2 "Indemnification, Liability and Withholding," Section B-3.3 "Assignment," Section B-4.3 "Infringement Protection," Article B-7 "Guarantees and Equipment Warranty" as well as Article B-9 "Availability of Information", shall survive termination, cancellation or expiration of this Contract.

B-11.13  NOTICES: Notices provided by either Party to the other under this Contract shall be deemed to have been given when stated in writing and deposited in a sealed envelope in a United States Post Office, registered, postage prepaid, addressed, if to Contractor, at the address given in its Proposal and, if to PG&E, as set forth in the Contract.

B-11.14  REPORTING: In accordance with Section 7912 of the California Public Utilities Code, Contractor agrees to report annually to PG&E the number of California residents employed by Contractor, calculated on a full-time or full-time equivalent basis, who are personally providing services to PG&E.

SF\537339.2

Case: 19-30088    Doc# 4634-2    Filed: 11/08/19    Entered: 11/08/19 17:57:56    Page 49 of 55

**EXHIBIT 1**
PG&E'S SUPPLIER DIVERSITY PURCHASE POLICY AND EQUAL OPPORTUNITY

**PG&E'S SUPPLIER DIVERSITY PURCHASING POLICY:** It is PG&E's policy that Women, Minority, and Disabled Veteran Business Enterprises (WMDVBEs) shall have the maximum practicable opportunity to participate in providing the products and services PG&E purchases. [1]

1. For all PG&E contracts, the Contractor agrees to comply, and to require all Subcontractors and sub-subcontractors to comply, with the requirements of PG&E's Supplier Diversity Purchasing Policy, as set forth below. The Contractor shall provide to each prospective Subcontractor a copy of this policy.
2. Contractor shall provide, along with its proposal, a separate, signed Subcontracting Plan consisting of either: (i) a specific list of Subcontractors (including sub-subcontractors) that will participate in the performance of the Work, on the form attached as Exhibit 1-A; or (ii) a statement setting forth the Contractor's goals for WMDVBE subcontracting of all tiers and setting forth such additional good faith efforts Contractor and Subcontractors will employ to increase the participation of WMDVBE in the performance of the Work.
3. In the event Contractor has not submitted a list of Subcontractors with its proposal, prior to requesting bids for any Subcontract, Contractor and Subcontractor shall submit to PG&E's Procurement Specialist or Contract Administrator, on the form attached as Exhibit 1-A, a list of prospective WMDVBEs that will be invited to compete for such Subcontracts.
4. Additionally, Contractor and Subcontractors must provide to PG&E's Supplier Diversity Office, no later than the 15th of each month, an updated "List of Subcontractors and Disbursement Record" with a current accounting of actual Subcontractor payments for the previous month (Exhibit 1-A, column 8).
5. In addition, for contracts exceeding $500,000 (or $1 million for construction contracts), the Contractor must comply with the Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, as described in Exhibit 2. The Subcontracting Plan for these contracts must include provisions for implementing the terms prescribed in Exhibit 2.
   a. Small Business and Small Disadvantaged Business Subcontracting Plans are not required for small business contractors, personal service contracts, contracts that will be performed entirely outside of the United States and its territories, or modifications to existing contracts which do not contain subcontracting potential.
   b. For all PG&E contracts, the Contractor shall act in accordance with the Subcontracting Plan in the performance of the Work and in the award of all Subcontracts.
6. These requirements and the Contractor's response will be incorporated into the Contract.

**FEDERAL EQUAL OPPORTUNITY REGULATIONS:** During the performance of this Contract and to the extent they may be applicable to this Contract, the Contractor agrees to comply with all laws, orders, and regulations included by summary or reference in the following Paragraphs:

1. EQUAL EMPLOYMENT OPPORTUNITY -- Executive Order No. 11246, 41 CFR Part 60-1: (Contracts of $10,000 or more) Provides that Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin and further that Contractor shall take affirmative action to ensure that applicant and employees are treated without regard to their race, color, religion, sex, or national origin.
2. CERTIFICATION OF NONSEGREGATED FACILITIES -- 41 CFR 60-1.8: (Contracts of $10,000 or more) Contractor hereby certifies that Contractor will not maintain or provide segregated facilities for its employees and will not permit its employees to perform their services at any location under Contractor's control, where segregated facilities are maintained.
3. CONSTRUCTION CONTRACTORS-AFFIRMATIVE ACTION REQUIREMENTS -- 41 CFR Part 60-4: (Contracts exceeding $10,000) Establishes procedures for soliciting and awarding federal or federally assisted construction contracts.

---

[1] WMDVBEs must be verified pursuant to the procedures prescribed in Section 2 of CPUC General Order 156.

SF\537339.2

4. LISTING OF EMPLOYMENT OPENINGS -- Executive Order 11701: (Contracts of $10,000 or more) Contractor will list employment openings with the Employment Development Department in accordance with the Vietnam Era Veterans Readjustment Assistance Act of 1974 and Executive Order 11701. The affirmative action clause set forth in 41 CFR 60-250.4 is incorporated herein by reference.

5. EMPLOYMENT OF THE HANDICAPPED -- Rehabilitation Act of 1973, 41 CFR Part 60-741: (Contracts of $2,500 or more) The affirmative action clause and the regulations contained in 41 CFR 60-741.4, and Section 504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. Section 794), which prohibits discrimination on the basis of handicaps, are incorporated by reference in this Contract.

6. FILING PROGRAM SUMMARIES AND PREPARING AFFIRMATIVE ACTION PLANS -- Executive Order 11246, 41 CFR Part 60-2: (Contracts of $50,000 or more) If the value of this Contract is $50,000 or more and the Contractor has 50 or more employees, the Contractor agrees to file appropriate affirmative action program summaries in accordance with existing regulations and develop and maintain a current written affirmative action compliance program at each of its establishments.

7. VIETNAM ERA VETERANS READJUSTMENT ASSISTANCE -- Act of 1974, Title 41, Chapter 60, Part 250: (Contracts of $10,000 or more) The affirmative action clause and the regulations pertaining to the employment of disabled veterans and veterans of the Vietnam era are incorporated by reference in this Contract.

8. AMERICANS WITH DISABILITIES ACT -- 42 U.S.C. Section 12101, et seq.: Contractor agrees that, to the extent it may be applicable to this Contract, Contractor shall comply with the Americans with Disabilities Act.

SF\537339.2

01-5873 (Rev 1/00)
Purchasing

Page 1 of 2

**Pacific Gas
and Electric
Company**

List of Subcontractors and Disbursement Record

**EXHIBIT 1-A**

| Prime Contractor: | Name of Preparer: | Report Period: | |
|---|---|---|---|
| PG&E Contract Number (if any): | Telephone: ( ) | | |
| PG&E Project/Product: | Fax: | Month | Year |
| | E-Mail: | | |

| Name of Subcontractor (1) | WMDVBE Status Code* (2) | V** (3) | NV*** (4) | Address (5) | Description of Work (6) | Estimated Amount to be Paid to Subcontractors (7) | Actual Amount Paid to Successful Subcontractors (8) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Please send form to:

Supplier Diversity Office, Purchasing Department
Pacific Gas and Electric Company
245 Market Street, Mail Code N5D
P.O. Box 770000
San Francisco, CA 94177
(415) 973-0888      (415) 973-2553 (fax)

| | | Total Amount Paid to Subcontractor(s) | | |

Signature: _____ / Date

I hereby verify that the information in this report is true
and accurate to the best of my knowledge

\* Refer to Instructions/Codes/Definitions on back.

\*\* V = Subcontractor is a *verified* WBE, MBE certified by the CPUC Clearinghouse, or a *verified* DVBE certified by the Office of Small Business Certification and Resource.

\*\*\* NV = Subcontractor is *not verified*.

SEI527220 2

# STEP-BY-STEP INSTRUCTIONS

01-5873 (Rev 1/00)
Page 2 of 2

1. Complete column numbers 1-7 and return this form with your bid proposal.
2. Please attach copies of WMDVBE Subcontractors certifications with your bid proposal.
3. Complete column number 8 with the actual payments to WMDVBE Subcontractors for the PG&E work that was performed.
4. Send a copy of this form no later than the 15th day of each month for the previous month to: Supplier Diversity Office, Purchasing Department, Pacific Gas & Electric Company,

   245 Market Street, Mail Code N5D, P.O. Box 770000, San Francisco, California, 94177, or (415) 973-2553 (fax).

## DEFINITIONS AND CODES

WBE ----- Women Business Enterprise: A business enterprise that is at least 51 percent owned by a woman or women, or, in the case of any publicly-owned business, at least 51 percent of the stock of which is owned by one or more women, and whose management and daily business operations are controlled by one or more of those individuals. Must be certified by the California Public Utilities Commission (CPUC) Clearinghouse. For more information call the WMBE Clearinghouse, (800) 359-7998.

MBE ----- Minority Business Enterprise: A business enterprise that is at least 51 percent owned by a minority group or groups, or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more minority-group individuals, and whose management and daily business operations are controlled by one or more of those individuals. Must be certified by the California Public Utilities Commission (CPUC) Clearinghouse. For more information call the WMBE Clearinghouse, (800) 359-7998.

| Minority Status: | | | |
|---|---|---|---|
| 001 | African American Male | 008 | Hispanic American Female |
| 002 | African American Female | 009 | Caucasian Male |
| 003 | Asian Pacific American Male | 010 | Caucasian Female |
| 004 | Asian Pacific American Female | 011 | Multi- Status |
| 005 | Native American Male | 012 | Other Groups |
| 006 | Native American Female | 013 | Small Business Enterprise |
| 007 | Hispanic American Male | 014 | Service Disabled Veteran Business Enterprise |

**African Americans** Persons having origins in any black racial groups of Africa.

**Asian Pacific Americans** Persons having origins in Asia or the Indian Subcontinent, including, but not limited to, persons from Japan, China, the Philippines, Vietnam, Korea, Samoa, Guam, the U.S. Trust Territories of the Pacific, Northern Marianas, Laos, Cambodia, Taiwan, India, Pakistan, and Bangladesh.

**Native Americans** Persons having origin in any of the original peoples of North America or the Hawaiian Islands, in particular, American Indians, Eskimos, Aleuts, and Native Hawaiians.

**Hispanic Americans** All persons of Mexican, Puerto Rican, Cuban, South or Central American, Caribbean, or other Spanish culture or origin.

**Caucasian** Includes all people of European and North African descent.

**Multi-Status** An enterprise that is wholly owned and controlled by a combination of minorities or women but whose majority ownership (at least 51%) is not vested with any one of these individuals.

**Other Groups** Groups whose members are found to be socially and economically disadvantaged by the Small Business Administration pursuant to Section 8 (d) of the Small Business Act as amended (15 U.S.C. 637 (d), or by the Secretary of Commerce pursuant to Section 5 of Executive Order 11625.

**Small Business Enterprise (SBE)** A business defined pursuant to Section 3 of the Small Business Act (SBA) and relevant regulations pursuant thereto. If unsure, please contact your local Small Business Administration office for clarification.

**Service Disabled Veterans Business Enterprise (DVBE)** Has the same meaning as defined in subdivision (g) of the Military and Veterans Code and must meet the "Control" and "Operate" criteria. An enterprise which is 51 percent owned, or the stock is 51 percent owned, by one or more disabled veterans.

SFI537339.2

The supporting documents for this claim are too voluminous to include in the proof of claim PDF. They are available upon request by emailing pgeinfo@PrimeClerk.com or by calling 844.339.4217.

