REBECCA J. WINTHROP (CA Bar No. 116386)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com

Attorneys for Creditors ADVENTIST HEALTH SYSTEM/WEST and FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtors<br><br>.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19 - 30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**THE ADVENTIST CLAIMANTS' RENEWED OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE CONSENTING SUBROGATION CLAIMHOLDERS, ETC. [DE # 3992], AND OBJECTION TO DEBTOR'S NOTICE OF FILING OF AMENDED AND RESTATED RESTRUCTURING SUPPORT AGREEMENT [DE # 4554]**<br><br>**Hearing Date and Time:**<br>Date: November 13, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA 94102 |

Creditors Adventist Health System/West, a California religious non-profit corporation ("<u>Adventist Health</u>"), and Feather River Hospital, a California religious non-profit corporation,

d/b/a Adventist Health Feather River ("AHFR" and, collectively with Adventist Health, the "Adventist Claimants"), hereby renew their *Objection* (the "Original Objection") [DE # 4239] to the Debtors' *Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter Into the Restructuring Support Agreement with the Consenting Subrogation Claimholders; (II) Approving the Terms of Settlement With Such Consenting Subrogation Claimholders, Including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* (the "Original RSA Motion") [DC # 3992], and submit the following additional objections to the new *Amended and Restated Restructuring Support Agreement*, filed on November 2, 2019 [the New RSA Agreement") [DE # 4554].

## I. ADDITIONAL OBJECTIONS

The New RSA Agreement fails to address the following fundamental inequities of the Debtors' settlement with the Subordination Claimants:

1. It continues to demand third party releases that are not within the Court's power to impose, and would result in the Subrogation Claimants being guaranteed priority payment in cash in violation of made-whole and subordination principles. This continues to violate 11 U.S.C. §§ 524(e) and 509, as well as California state law. [*See* Original Objection, pp. 8-9.]

2. The third party releases are <u>not</u> consensual. While the Debtors' Joint Chapter 11 Plan of Reorganization Dated November 4, 2019 [DE # 4564] implements an "opt-in" release (*see* § 10.9(c)), the New RSA Agreement continues to impose a third party release *as a condition* to any settlement reached with either the Debtors or any settlement trust. [New RSA Agreement, § 3(a)(iii).] This leaves wildfire claimants with the same Hobson's choice as before—litigate without end at huge cost to each claimant in order to obtain full payment, OR settle for less <u>and</u> be forced to sign the required release. That is not the "purely" consensual release envisioned by *Billington v. Winograde (In re Hotel Mt. Lassen, Inc.)*, 207 B.R. 935, 941 (Bankr. E.D. Cal. 1997), the one reported bankruptcy case in the Ninth Circuit acknowledging (in *dicta*) that a third party release may be permissible notwithstanding 11 U.S.C. § 524(e), but only if it is "*purely voluntary* on the part of the releasing parties." *Id.* (emphasis added).

Such a release further unfairly discriminates against the wildfire claimants, who are the

DOCUMENT PREPARED
ON RECYCLED PAPER

only parties subject to such an unfair condition. No other tort claimants, be they members of the $1 billion "Public Entities" tort settlement, a "Governmental Unit" with tort claims (now carved out of the release requirement), or any other non-wildfire claimant with tort claims, is forced to give this release in order to settle with the estates.

3  The form of third party release set forth in the New RSA Agreement (attached as Exhibit "B" to the Agreement) (the "Form Release") continues to require settling wildfire claimants to give up valuable rights against third parties (not just the settling Subrogation Claimants). Wildfire claimants must expressly agree that:

- "payment of the Claim Amount constitutes *payment in full* on the Claim" [defined as the claim filed against the estates, not the claim being settled]; and

- "the payment of the Claim Amount . . . *fully satisfies the Releasor's losses* resulting or arising from the Wildfires." [New RSA Agreement, Ex. "B" (emphasis added).]

These admissions could be used to deprive wildfire claimants of valuable rights to pursue third parties (such as FEMA or third parties who may have acted negligently with respect to the fires) for damages above the settled amount. In other words, third parties (and non-consenting insurers) could try to use the acknowledgements required of all settling wildfire claimants in the Form Release as an admission by the same claimants that they have no further losses to pursue, and thus are now not entitled to any further recovery from any source whatsoever. Such language is entirely unnecessary given the release of the Subrogation Claimants already built into the Form Release, and unduly punitive to the interests of wildfire claimants.

The Adventist Claimants have asked the Subrogation Claimants to remove the offending language, but so far the Subrogation Claimants have refused.[1]

4. The Form Release remains completely unilateral. All that is offered is a promise to include a provision in the order confirming the Debtors' plan deeming "each holder of a subrogation claim that is a third party beneficiary of this release to have released Releasor from any claim to Releasor's recovery from the Debtors on account of the Claim." [New RSA

---

[1] It also should be noted that the language acknowledging that Releasors are releasing all insurers from only make-whole claims and nothing more in the Form Release (the "Acknowledgement") is itself deficient. The Form Release releases all "actions, causes of action, claims, demands, damages, costs, expenses, compensation and other amounts." The Acknowledgement preserves only "claims."

98879996.3                                  - 3 -

Agreement, § 3(a)(iii).]

Nothing in the New RSA Agreement, however, conditions the effectiveness of the Form Release upon the entry of a final order containing this language. Nothing conditions the effectiveness of the Form Release upon the claimant's insurer (who may not be a party to the New RSA Agreement) agreeing to be bound by the terms of the Form Release and thus accepting of an order imposing the release on them. As set forth in detail in both the Original Objection and the Tort Creditors Committee's original opposition [DE # 4232], this Court has no power to enforce an order imposing a release on any non-debtor party, third-party beneficiary or otherwise.[2] Thus, the Adventist Claimants remain in the same untenable position that they held before—giving a release without getting one in return.

Furthermore, the scope of this "protection" is impermissibly narrow. By its terms, the language to be included in the Debtors' confirmation order only protects the Releasor's recovery "*from the Debtors* on account of the Claim." [New RSA Agreement, Ex. "B" (emphasis added).] Nothing protects the Adventist Claimants from attempts to claw back any recoveries that the Adventist Claimants may obtain from non-insurer third parties.

Finally, the unilateral nature of the Form Release also files in the face of the intent of AB 1054. Section 3291(a) of California Public Utilities Code requires any insolvency proceeding to provide funding to satisfy "any prepetition wildfire claims . . . in the amounts agreed upon in any post-insolvency settlement agreements." Leaving wildfire claimants open to lawsuits from non-settling insurers via the one-way release imposed by the New RSA Agreement could expose wildfire claimants to potential claims that they must give back prior payment(s) received under their policies or from third parties. While the Adventist Health Parties do not believe that such claims should ever be successful, insurers should never get a release until they all give a release, and the terms of those releases should be mutual in <u>all respects.</u>

---

[2] *See Resorts Int'l Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995) ("This court has repeated held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors."); *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.)*, 885 F.2d 621, 626 (9th Cir. 1989) (finding that "the bankruptcy court was powerless to discharge" nondebtor claims in a plan).

DOCUMENT PREPARED
ON RECYCLED PAPER

## II. RESERVATION OF RIGHTS/REMAINING ISSUES

The Adventist Claimants reserve the right to join in objections to the Original RSA Motion filed by other parties, and to raise and be heard on those objections at the hearing. Additionally, the Adventist Claimants renew their objection to any waiver of Bankruptcy Rule 6004. Neither the Original RSA Motion and extensive replies offered in support thereof nor any aspect of the New RSA Agreement demonstrates that cause exists to waive the 14 day appeal period.

Dated: November 8, 2019

Respectfully submitted:

REBECCA J. WINTHROP
NORTON ROSE FULBRIGHT US LLP

By: */s/ Rebecca J. Winthrop*
REBECCA J. WINTHROP
Attorney for Creditors ADVENTIST HEALTH SYSTEM/WEST and FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER