| | |
|---|---|
| JACOB T. BEISWENGER (S.B. #321012) <br> jbeiswenger@omm.com <br> O'MELVENY & MYERS LLP <br> 400 South Hope Street <br> Los Angeles, California 90071-2899 <br> Telephone: (213) 430-6000 <br> Facsimile: (213) 430-6407 | NANCY A. MITCHELL (*pro hac vice*) <br> nmitchell@omm.com <br> MATTHEW L. HINKER (*pro hac vice*) <br> mhinker@omm.com <br> O'MELVENY & MYERS LLP <br> 7 Times Square <br> New York, New York 10036 <br> Telephone: (212) 326-2000 <br> Facsimile: (213) 326-2061 |

*Attorneys for Governor Gavin Newsom*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: <br> PG&E CORPORATION, <br>    -and- <br> PACIFIC GAS & ELECTRIC COMPANY, <br><br>                        Debtors. <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas & Electric Company <br> ☒ Affects both Debtors <br><br> **All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) <br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **OBJECTION OF GOVERNOR GAVIN NEWSOM TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(B) AND 105(A) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE CONSENTING SUBROGATION CLAIMHOLDERS, (II) APPROVING THE TERMS OF SETTLEMENT WITH SUCH CONSENTING SUBROGATION CLAIMHOLDERS, INCLUDING THE ALLOWED SUBROGATION CLAIM AMOUNT, AND (III) GRANTING RELATED RELIEF** <br><br> [Docket Nos. 3992 and 4554] <br><br> Date: November 13, 2019 <br> Time: 10:00 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br>         Courtroom 17, 16th Floor <br>         San Francisco, CA 94102 |

Governor Gavin Newsom, by and through his counsel, O'Melveny & Myers LLP, respectfully submits this objection (the "**Objection**") in response to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of Settlement with Such Consenting Subrogation Claimholders, Including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* [Docket No. 3992] (the "**Subrogation Settlement and RSA Motion**").[1] Governor Newsom files this Objection in his official capacity as Governor of the State of California, but not on behalf of any agency, department, unit or entity of the State of California.[2] In support of the Objection, Governor Newsom respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Approval of the Subrogation Settlement and RSA Motion is premature and this Court should further adjourn the hearing on the settlement until the Court can review it, and its terms, in the context of a broader resolution of these chapter 11 cases. In addition, the Amended and Restated Restructuring Support Agreement (the "**Amended RSA**") [Docket No. 4554] undermines the competitive plan process created just weeks ago by this Court when it terminated the Debtors' exclusivity, and the Amended RSA must be modified if it is to be approved at any point.

2. The Amended RSA is yet another example of legal maneuvering by parties apparently more focused on securing procedural advantages for their own pecuniary interests than on reaching a fair and expeditious resolution of this bankruptcy. Many of the holders of Subrogation Claims are sophisticated financial institutions that bought the claims at a discount after the insurers paid out claims. Certain of those institutions also hold equity in PG&E and may be seeking to leverage the settlement of Subrogation Claims to better position those holdings. These tactics may

---

[1] Capitalized terms used but not defined herein have the meaning given to such terms in the Subrogation Settlement and RSA Motion.

[2] The Attorney General has appeared in these proceedings on behalf of certain agencies and departments of the State of California.

be commonplace in bankruptcy proceedings, but they are unacceptable in these chapter 11 cases, which are causing ongoing harm to California, its residents, and economy.

3. The adjournment of the Subrogation Settlement and RSA Motion will not adversely affect compensation for insured fire victims, who already should have received payment from their insurance companies. Instead, adjournment will force the financial institutions holding Subrogation Claims to continue to negotiate and facilitate a global resolution of PG&E's chapter 11 cases.

4. AB 1054, the wildfire safety bill signed into law on July 12, 2019, required PG&E to make fundamental changes to gain access to the Wildfire Fund and to resolve these chapter 11 cases in a manner consistent with that statute. California's expectations for PG&E are clearly set out in statute:

    a. PG&E must be restructured to provide safe, reliable, and affordable electric service to its customers;

    b. Wildfire claims must be paid in the full amount authorized by this Court;

    c. The restructuring must be consistent with California's climate goals; and

    d. The plan of reorganization must be neutral, on average, to PG&E's ratepayers.

PG&E previously represented to this Court that it intends to meet the requirements of AB 1054 as part of its resolution of these chapter 11 cases and the financing required for any party to exit these chapter 11 cases is likely contingent on PG&E obtaining access to the Wildfire Fund.

5. AB 1054 also requires PG&E to resolve this bankruptcy proceeding by June 30, 2020—before next fire season—to access the Wildfire Fund. PG&E's poorly executed and overly broad use of power shut offs in recent weeks starkly demonstrates how critical the June 30 deadline is for the state, its residents, and its economy. The power shut offs plunged millions of Californians into darkness for days and imperiled the lives of thousands of elderly and medically vulnerable residents. These power shut offs forced hundreds of thousands of children to miss nearly a week of school and negatively impacted state and local economies by disrupting businesses. This bankruptcy—voluntarily filed by PG&E—must be resolved so the state of California can get on with the urgent business of fundamentally transforming this utility into one that can provide safe, affordable and reliable power.

6. The seemingly incessant litigation and stalling tactics undertaken by the financial stakeholders in these chapter 11 cases—often at the expense of involuntary creditors (e.g. the wildfire victims)—inspires little confidence that they can achieve resolution of these cases on a schedule and in a manner that meets the expectations of California. In the event they cannot or will not do so, the state of California will present its own plan for resolution of these cases.

7. In light of the uncertainty regarding PG&E's path to exit these chapter 11 cases, it is premature to approve a settlement engineered to hinder the viability of a plan proposed by any party other than the Debtors. In addition, the Amended RSA must be modified to prevent Subrogation Claim holders from impeding confirmation of a competing plan if such a plan provides the best resolution of these chapter 11 cases.

**OBJECTION**

8. The proposed settlement embodied in the Amended RSA irrevocably obligates the Debtors to pay the Allowed Subrogation Claim Amount ($11 billion), but allows holders of Subrogation Claims to terminate the Amended RSA and pursue a higher claim in circumstances that are adverse to the interests of other potential plan proponents. Given the uncertainty related to the plan that will resolve these chapter 11 cases, and the possibility that the state will need to pursue its own plan, the Allowed Subrogation Claim Amount may be an impediment to confirmation of a plan of reorganization.[3] It is simply too early to tell.

9. In addition, the Amended RSA contains provisions that render the settlement embodied in the Amended RSA unfair and inequitable, unreasonable, not in the best interests of the estate, anti-competitive or otherwise objectionable. If the Amended RSA is to be considered at any point in these chapter 11 cases, those provisions should be modified. Certain of those provisions are addressed below.

### A. *The Allowed Subrogation Claim Amount is Not Binding*

10. The Allowed Subrogation Claim Amount purports to be binding in these chapter 11 cases. However, the Amended RSA contains multiple provisions that allow the Requisite

---

[3] The Official Committee of Tort Claimants also raises serious intercreditor issues in its Complaint for Declaratory Judgment Subordinating and Disallowing Claims and for an Accounting [Docket No. 4628] that cast further doubt on whether the Subrogation Settlement and RSA Motion can be approved at this point in these chapter 11 cases.

- 4 -

Consenting Creditors to elect to terminate the Amended RSA and seek payment in full of the previously compromised Subrogation Claims. This could empower the Subrogation Claim holders, some of whom hold other substantial financial stakes in the company, to obstruct an alternative settlement—even when their Subrogation Claims are treated the same. Any settlement approved by this Court should require Consenting Creditors to vote for any plan, or deem the Subrogation Creditors unimpaired by any plan, that provides Subrogation Claims with $11 billion in cash.

### B. Prohibitions on voting against any Alternative Restructuring

11. The Amended RSA requires Consenting Creditors to vote their RSA Claims against any plan, plan proposal, restructuring proposal, offer of dissolution, winding up, liquidation, sale or disposition, reorganization, merger or restructuring of the Company other than Plan. *See* Amended RSA § 2(a)(iii). Any settlement approved by this Court should require the Consenting Creditors to support any Alternative Restructuring, or deem the Subrogation Creditors unimpaired, so long as the Subrogation Claims receive $11 billion in cash.

### C. Requirement that Ad Hoc Subrogation Group and Debtors Negotiate Together

12. The Amended RSA precludes the Debtors and the Ad Hoc Subrogation Group from negotiating with any other creditor constituencies unless the Debtors and Ad Hoc Subrogation Group negotiate together. *See* Amended RSA §2(b)(ii). This provision is inappropriate and inconsistent with the Bankruptcy Court's orders terminating the Debtors' exclusive periods. It should be stricken. Moreover, to the extent the state of California proposes its own plan, all parties must be free to discuss issues with the State.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

## CONCLUSION

13. The Subrogation Settlement and RSA Motion should be further adjourned given the uncertainty related to the resolution of these chapter 11 claims and the serious issues raised by the Official Committee of Tort Claimants in its recent filings or denied.

Dated: November 9, 2019

**O'MELVENY & MYERS LLP**

By: */s/ Jacob T. Beiswenger*

JACOB T. BEISWENGER

By: */s/ Nancy A. Mitchell*

NANCY A. MITCHELL
MATTHEW HINKER

*Attorneys for Governor Gavin Newsom*