Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*and*

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' SUBROGATION SETTLEMENT AND RSA MOTION**<br><br>Date: November 13, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket Nos. 3992 & 4554 |

The Official Committee of Unsecured Creditors (the "UCC") hereby submits this supplemental objection (the "Supplemental Objection") to the *Motion Pursuant to 11 U.S.C.*

*§§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of Settlement with Such Consenting Subrogation Claimholders, Including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* (the "<u>RSA Motion</u>") [Docket No. 3992] as it applies to the *Amended and Restated Restructuring Support Agreement* dated as of November 1, 2019 (the "<u>Amended RSA</u>").[1] In support of its Supplemental Objection, the UCC respectfully states as follows:

## SUPPLEMENTAL OBJECTION

As the Court is aware, the proposed treatment of the Subrogation Claims in the *Debtors' Joint Chapter 11 Plan of Reorganization Dated November 1, 2019* (the "<u>Debtors' Plan</u>") [Docket No. 4563] is premised on a settlement in the amount of $11 billion that is required to be paid in cash, is not subordinated to payments to the Other Wildfire Claimants and is coupled with third party releases for the Subrogation Claimants.[2]

As an initial matter, while the UCC previously had no objection to a straight forward settlement of all Subrogation Claims for $11 billion dollars, given that the Kincade and other postpetition fires are not included in the settlement, the Amended RSA no longer serves as a global resolution of the claims of the Consenting Creditors.[3] This change in circumstances raises the question as to whether the settlement is now premature and should be reconsidered. The UCC reserves it rights to further address this issue at the hearing.

In addition, the UCC continues to object to many of the "plan related" provisions that remain embedded in the Amended RSA. Such provisions go well beyond providing the

---

[1] The UCC filed its initial objection to the RSA Motion on October 16, 2019 [Docket No. 4236] (the "<u>Initial Objection</u>" and, together with this Supplemental Objection, the "<u>Objection</u>"). Capitalized terms used but not defined herein have the meanings ascribed to them in the RSA Motion.

[2] The UCC leaves the issues related to the priority and releases largely to the TCC.

[3] The definition of "Wildfires" only covers prepetition fires. Amended RSA § 1.

Subrogation Claimants with an allowed claim for $11 billion dollars and instead act as a "poison pill" that ties the Court's hands with respect to confirming any plan of reorganization other than the Debtors' Plan, including the plan proposed by the TCC and the AHG (the "<u>TCC/AHG Plan</u>") and economically punishes other creditors that would prefer to vote for the TCC/AHG Plan.

Accordingly, because the relief sought in the RSA Motion, if granted, improperly tilts the balance in favor of the Debtors' Plan, the UCC continues to oppose the RSA Motion as not being in the best interests of the Debtors' unsecured creditors.

**A.     <u>The RSA Motion Improperly Favors the Debtors' Plan Over the TCC/AHG Plan</u>.**

The Amended RSA, like the original RSA, contains a combination of lock-up covenants and termination provisions intended to permit the proposed $11 billion settlement to be consummated only pursuant to the Debtors' Plan, even if a competing plan, such as the TCC/AHG Plan, provides for the same treatment to the Subrogation Claimants, *i.e.* $11 billion dollars. The Consenting Creditors must vote in favor of the Debtors' Plan (Amended RSA § 2(a)(ii)), vote against any alternative plan (Amended RSA § 2(a)(iii)), including the TCC/AHG Plan, and may not take any action directly or indirectly to support any other plan (Amended RSA § 2(b)(ii)). The Amended RSA further restricts the Consenting Creditors by not allowing them even to negotiate with other creditor constituencies or participate in mediation unless it is "together" with the Debtors (Amended RSA § 2(b)(ii)).

Moreover, the Amended RSA requires the Consenting Creditors to affirmatively "[s]upport and cooperate with the Debtors['] [efforts] to obtain confirmation of the [Debtors'] Plan" (Amended RSA § 2(a)(i)), and not "delay, impede, or take any other action to interfere with the acceptance or implementation of the [Debtors'] Plan . . . ." Amended RSA § 2(b)(i).

The Consenting Creditors presumably would be required to take such actions in support of the Debtors' Plan, and against the TCC/AHG Plan (and any other plan), regardless of whether

(a) the Court were to determine that the TCC/AHG Plan should be confirmed instead of the Debtors' Plan (either out of necessity because the Debtors' Plan has failed, or based on the creditors' preference and the Court's consideration of various confirmation issues), or (b) the TCC/AHG Plan (or some other plan) offers the same treatment to the Subrogation Claims as does the Debtors' Plan.

Moreover, to the extent that the Debtors' Plan is not allowed either to be solicited or confirmed by the Court, the termination provisions in the Amended RSA allow the Consenting Creditors unilaterally to walk away from the $11 billion settlement and assert the full $20 billion in damages that they have previously claimed. See Amended RSA § 5(a)-(d). Thus, even if they are given the same treatment in any plan other than the Debtors' Plan, the Consenting Creditors are not locked into having the Subrogation Claims allowed at $11 billion, and they could well be in front of this Court again seeking their full recovery notwithstanding the Amended RSA.

That the $11 billion settlement only applies in the context of the Debtors' Plan is especially problematic given that the Amended RSA effectively terminates any estimation proceeding with respect to the Subrogation Claims. See Amended RSA §§ 2(a)(iv)–(v); § 2(b)(iii). In fact, the Amended RSA expressly requires that the Subrogation Claims not be estimated. Amended RSA § 2(a)(v). As a result, to the extent that the Debtors' Plan cannot or should not be confirmed, the Court and creditors could be forced by the Consenting Creditors to have the Subrogation Claims estimated in the context of a cram down under section 1129 of the Bankruptcy Code under an extremely tight timeline given the June 30, 2020 deadline imposed by A.B. 1054.

Taken together, these provisions of the Amended RSA fly in the face of the Court's decision to lift exclusivity and allow both the Debtors' Plan and the TCC/AHG Plan to proceed on parallel paths. By design, the Amended RSA seeks to foreclose any attempt to have the TCC/AHG

Plan confirmed. It would also make negotiations among the parties, including with the Mediator, that much more difficult.

These restrictions also run counter to the statements made by the Consenting Creditors' counsel at the October 23, 2019 hearing that they would accept $11 billion in cash, regardless of what party offered it. As counsel recognized:

> MR. FELDMAN: It goes to the fundamental issue, Your Honor, you raised when you terminated exclusivity. Would this bring parties together or would it push them apart? Unfortunately, it's had the latter reaction. But I would also say, **if it's eleven billion dollars in cash, I accept.**

10/23/19 Hr'g Tr. at 228:4–12 (emphasis added).

Given the dual track on which the Debtors' cases are proceeding, any settlement of claims approved by the Court should be for the benefit of creditors and the estates as a whole, and not just for the benefit of a single plan proponent. This is especially true when so many material issues remain unresolved.[4]

**B.     The Amendments to the RSA Are Cumbersome and Vague**.

The amendments made to the original RSA were supposed to resolve the problem raised in the Initial Objection that would arise if the Debtors prove to be insolvent but the estates nonetheless remain obligated to pay the Subrogation Claimants $11 billion in cash, even if such payment would exceed their pro rata recovery and subject the estates to an administrative claim for damages. This problem was said to be an "unintended consequence." 10/23/19 Hr'g Tr. at 178:22. Rather than clearly and unconditionally resolving this apparent "glitch", the Amended RSA only adds confusion and complexity: before any of the insolvency exception provisions apply in favor of the Debtors, the Amended RSA requires the Court to make a finding of the

---

[4]   See In re Smart World Techs., LLC, 423 F.3d 166, 175 (2d Cir. 2005) (concluding that while Debtors may seek to enter into settlements under Bankruptcy Rule 9019, the Code "requires the debtor to [manage the estate's legal claims] in a way that maximizes the estate's value" and that such duty "is implicit in the debtor's role as the estate's only fiduciary").

Debtors' insolvency, presumably through a contested valuation hearing. Moreover, the Subrogation Claimants continue to require that potential rights to subrogate their claims be waived. Specifically, the Amended RSA states that:

> provided that if the Bankruptcy Court determines the Debtors are insolvent, the Debtors may file a revised plan that does not pay subrogation claimants $11 billion in cash on $11 billion of allowed claims, provided, however, that such revised plan shall not subordinate the class of Subrogation Claims to the class of IP Claims (an "<u>Insolvent Plan</u>");

Amended RSA § 3(a)(i). And this is notwithstanding that the Subrogation Claimants have the unilateral right to terminate their settlement if the Debtors are insolvent. Amended RSA § 5(c). It is unclear how such a process would fit into the currently proposed confirmation timeline. Regardless of its form and timetable, the process would likely be contentious, drawn out and give the Consenting Creditors undue leverage in the face of the June 30, 2020 deadline imposed by A.B. 1054.

## **CONCLUSION**

The Debtors have stated repeatedly that they aspire to act as a fiduciary for all constituents: "Your Honor, the debtors, unlike the tort committee, and unlike the ad hoc bondholder committee are fiduciaries for all economic stakeholders in these cases." 10/23/19 Hr'g Tr. at 131:13-15).

As set forth above, the proposed settlement and Amended RSA are inconsistent with this aspiration. The terms described above were negotiated by stakeholders solely seeking to advance the confirmation of the Debtors' Plan without regard to the Court's decision to terminate exclusivity, the possibility that the Debtors' Plan cannot or should not be confirmed, or the preference of creditors in respect of the two competing plans. Rather than serve as a means to streamline the confirmation process by facilitating a settlement for the benefit of all economic stakeholders in the cases, the Amended RSA only serves to further complicate it.

For the reasons set forth in this Objection, the UCC respectfully requests that the Court: (i) sustain the Objection; (ii) deny the RSA Motion; and (iii) grant such other relief as may be appropriate.

Dated: November 11, 2019

          **MILBANK LLP**

          */s/ Gregory A. Bray*
          DENNIS F. DUNNE
          SAMUEL A. KHALIL
          GREGORY A. BRAY
          THOMAS R. KRELLER

          *Counsel for the Official Committee of Unsecured Creditors*