**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
       jminias@willkie.com
       bmccallen@willkie.com
       dforman@willkie.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Chapter 11<br>Bankr. Case No. 19-30088 (DM)<br>(Jointly Administered)<br><br>**STATEMENT OF THE AD HOC GROUP OF SUBROGATION CLAIM HOLDERS**<br><br>Date:    November 13, 2019<br>Time:   10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

The Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**") in the above-captioned chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company (collectively, "**Debtors**"), by its attorneys Willkie Farr & Gallagher LLP and Diemer & Wei, LLP, hereby submits this statement in advance of the omnibus hearing set for November 13, 2019, when the Court will continue the hearing on the Debtors' motion to approve the Restructuring Support Agreement ("**RSA**") [Dkt. No. 3992] (the "**Motion**"). In response to feedback provided by the Court at the status conference on October 23, 2019, the Ad Hoc Subrogation Group and the Debtors prepared and filed an amended Restructuring Support Agreement on Saturday, November 2, 2019 [Dkt. No. 4554] ("**Amended RSA**").

Late on the Friday before the continued hearing, the Official Committee of Tort Claimants ("**TCC**") filed another objection styled as a response to the Amended RSA [Dkt. No. 4629] ("**Supplemental TCC Objection**"). The Supplemental TCC Objection mostly repeats the objections filed prior to the last hearing and mischaracterizes the language of the Amended RSA (or ignores the amended language altogether). To assist the Court's review of the Amended RSA and all outstanding objections made before and after the first hearing on the Motion, the Ad Hoc Subrogation Group prepared the chart attached hereto as Exhibit A. The chart identifies for the Court (i) those objections that are fully resolved by the revisions in the Amended RSA, and (ii) why the Court should overrule the remaining objections.

As a companion to the Supplemental TCC Objection, the TCC also filed a *Complaint for Declaratory Judgment Subordinating and Disallowing Claims and for an Accounting* [Dkt. No. 4628] against the Ad Hoc Subrogation Group (the "**Complaint**"). The commencement of the adversary proceeding is nothing more than a "smoke screen" and is not a basis to deny the Motion or delay its consideration. Putting aside its numerous procedural and substantive defects, which will be fully addressed by the Ad Hoc Subrogation Group in a forthcoming motion to dismiss or responsive pleading, the TCC's tactical lawsuit has no bearing on whether the Court can consider the Motion and approve the most substantial progress to date in these cases on November 13. The Complaint does not implicate the Debtors' business judgment in determining to settle $20 billion of

1

subrogation claims for an $11 billion allowed claim. If any of the plan confirmation-related issues raised in the Complaint survive a motion to dismiss, they can be decided at a confirmation hearing, or even in advance of one as the Court has elected to do with respect to several other legal issues subject to Court-ordered briefing schedules. Indeed, the TCC's filing of the Complaint should encourage this Court to grant the Motion; the adversary proceeding will provide the TCC an additional avenue to obtain relief alongside the confirmation hearing, neither of which requires this Court to leave $20 billion in claims undecided throughout the pendency of these chapter 11 cases.

Moreover, in light of the fact that the estimation litigation must proceed without delay, postponing a ruling on the Motion would be the equivalent of denying it, because the Ad Hoc Subrogation Group would be required to continue litigating estimation instead of settling its claims. This would effectively double the stakes of the estimation, as the $20 billion in subrogation claims would remain at issue. While the TCC may be motivated to maintain that pressure point, the Debtors have opted to build consensus by settling claims where possible; this Court should support the latter track as the most expeditious way to resolve these chapter 11 cases. The mere possibility that the TCC might prevail on its claims is also no reason to further continue the Motion. As all of the parties currently pursuing plans, including the Debtors, the Ad Hoc Committee of Senior Unsecured Noteholders (the "**Bondholders**"), and the TCC, have acknowledged, future rulings in this Court and the District Court may necessitate plan revisions. The mere possibility that the plan attached to the Amended RSA might have to be revised is not a sufficient reason to foreclose progress in these cases, discourage parties from settling their claims, and impede the Debtors' efforts to build towards a consensual exit.

The TCC's argument that the Amended RSA "locks up" $11 billion in cash that could otherwise be used to compensate wildfire victims should also be rejected. (*See* Supplemental TCC Objection at 5.) No facts in the record support this position. Indeed, the TCC's only purported basis for this argument is the conclusory statement of its financial advisor (submitted via declaration two business days in advance of the hearing) that "it is likely that a significant portion of the total consideration to Other Wildfire Claims would be provided in the form of equity and other non-cash

2

consideration." (*Declaration of Brent C. Williams in Support of Response of Official Committee of Tort Claimants to Debtors' Restated Restructuring Support and Settlement Agreement With the Consenting Subrogation Shareholders* ¶ 5 [Dkt. No. 4631].) If the TCC were truly concerned about the amount of cash available to its constituents, it should look to the co-proponents of its own plan, the Bondholders—who stand to receive more cash than any other party when their debt is refinanced. Significantly, the aggregate claims of the Bondholders exceed $20 billion (*see Second Amended Verified Statement of the Ad Hoc Committee of Senior Unsecured Noteholders Pursuant to Bankruptcy Rule 2019* [Dkt. No. 4369]); the Bondholders (unlike the subrogation claimants) are not reducing their claims at all, and, under their joint plan with the TCC, the Bondholders stand to receive reinstated notes with an above market interest rate. The Debtors' plan could easily be modified to provide the Bondholders with equity or take-back paper, freeing up sufficient cash to enable the Debtors to pay the TCC's allowed claims in cash. Nothing in the Amended RSA would prevent the Debtors from so amending their plan; and the TCC should welcome and encourage such an amendment.

Ultimately, when evaluating the Motion, the relevant legal inquiry is whether the Debtors soundly exercised their business judgment by entering into the Amended RSA and whether the settlement is at or above the lowest point in the range of reasonableness. The issue is not whether the Debtors should pursue a settlement that is more to the liking of one constituency or another. Here, the settlement of subrogation claims followed months of hard fought litigation and arm's length negotiations between the Debtors and Ad Hoc Subrogation Group (as well as difficult multilateral negotiations within the Ad Hoc Subrogation Group). The remorse apparently felt by the TCC for not moving more quickly and settling their claims is ultimately irrelevant to whether the Debtors exercised sound business judgment. That is particularly true where, as here, nothing in the Amended RSA precludes the Ad Hoc Subrogation Group from continuing to engage in negotiations and mediation with the Debtors even *after* the Amended RSA is approved.

In addition to the Supplemental TCC Objection, the other late-filed pleadings either reiterate existing objections, misapprehend the terms of the Amended RSA, or are otherwise addressed in the

3

chart. None of these warrant deferral or rejection of the Amended RSA. As noted above, the Ad Hoc Subrogation Group opposes any further delay. The purpose of the settlement was to eliminate the expense and uncertainties for the members of the Ad Hoc Subrogation Group and the Debtors from the estimation litigation as it relates to the subrogation claims. That litigation is proceeding apace, as it must in light of the absence of any settlement with the TCC and the AB 1054 deadline. It has been nearly two months since the RSA was signed and the Motion was filed, and in the absence of approval, the Ad Hoc Subrogation Group must shift its focus to the estimation proceedings, as the RSA will expire, pursuant to the Amended RSA, on Thursday, November 14. (Amended RSA §§ 1, 27.) Adjourning decision on the Motion is tantamount to rejection.

When this Court terminated the Debtors' exclusive periods, it did so hoping to "facilitate negotiations for a global resolution and narrow the issues which are in legitimate dispute." (*Order Granting Joint Motion of the Official Committee of Tort Claimants and the Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the Bankruptcy Code* at 3 [Docket No. 4167].) The desire to resolve the complicated issues in these chapter 11 cases is irreconcilable with the rejection of a settlement between the Debtors and more than 100 insurers and other institutions; a settlement that the equity holders support and that other creditors have either embraced or not rejected, at least as to its magnitude. Instead, this Court should take the subrogation claims at issue in these cases and "put [them] aside," allowing the remaining parties to negotiate with a significant constituency's claims resolved. (October 7, 2019 Hearing Tr. 81: 3-12.)

*[Remainder of Page Intentionally Left Blank]*

Dated: November 11, 2019

**WILLKIE FARR & GALLAGHER LLP**

*/s/ Matthew A. Feldman*
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
  jminias@willkie.com
  bmccallen@willkie.com
  dforman@willkie.com

**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: (408) 971-6270
Facsimile: (408) 971-6271
Email: kdiemer@diemerwei.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*