Andrew I. Silfen (*pro hac vice*)
Beth M. Brownstein (*pro hac vice*)
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: andrew.silfen@arentfox.com
beth.brownstein@arentfox.com

Aram Ordubegian (SBN 185142)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105
Telephone: (415) 757-5500
Facsimile: (415) 757-5501
Email: aram.ordubegian@arentfox.com

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| – and – | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **SUPPLEMENTAL AND UPDATED OBJECTION OF BOKF, NA, INDENTURE TRUSTEE, TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) & 105(a), FED. R. BANKR. P. 6004 & 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH CONSENTING SUBROGATION CLAIMHOLDERS, (II) APPROVING TERMS OF SETTLEMENT WITH CONSENTING SUBROGATION CLAIMHOLDERS, INCLUDING ALLOWED SUBROGATION CLAIM AMOUNT, AND (III) GRANTING RELATED RELIEF** |
| ☐ Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☑ Affects both Debtors * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

|  | **Hearing** |
|---|---|
|  | Date: November 13, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

BOKF, NA ("BOKF"), in its capacity as successor indenture trustee (the "Trustee") under the Indentures dated as of (i) April 22, 2005 Supplementing, Amending and Restating the Indenture of Mortgage Dated March 11, 2004 (ii) November 29, 2017 and (iii) August 6, 2018, each as supplemented or amended, pursuant to which Pacific Gas and Electric Company issued the senior notes (the "Senior Notes"), by and through its counsel, Arent Fox LLP, hereby submits this Supplemental and Updated Objection to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter Into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of the Settlement with Such Consenting Subrogation Claimholders, including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* [Docket No. 3992] (the "RSA Lock-Up Motion").[1] BOKF submits this Supplemental and Updated Objection in light of the *Notice of Filing of Amended and Restated Restructuring Support Agreement* [Docket No. 4554] (the "Restated RSA"). In support of its Supplemental and Updated Objection, BOKF states as follows:

## SUPPLEMENTAL OBJECTION

Unfortunately, the Restated RSA fails to address the core defects of the original RSA. The RSA and its revisions also ignore the current state of these cases, which are in flux, changing and uncertain. The Restated RSA continues to undermine the goals of the dual plan process established by this Court, transforms a potentially productive $11 billion settlement into an impediment to a global consensual resolution, and creates a substantial risk of a potentially $20 billion claim in the event it is terminated for certain reasons, such as confirmation of an alternative plan. The RSA Lock Up Motion should be denied or the hearing continued to no earlier than the commencement of the confirmation hearing of the Debtors' Plan

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion.

AFDOCS/21266015.2

- 2 -

Arent Fox LLP
Attorneys At Law
Los Angeles

The Restated RSA requires Subrogation Claimholders to vote <u>against</u> any plan other than the Debtors' Plan.  Restated RSA, § 2(a)(iii). This is both unproductive and unsupported by caselaw from the Ninth Circuit. The sole case from the Ninth Circuit primarily relied upon by the Debtors in their original Motion was this Court's decision in the Utility's prior chapter 11 case. In that case, the Utility removed similar voting restrictions after numerous objections before it obtained approval of its plan support agreement. A true and correct copy of the amendment removing those restrictions is attached hereto as **Exhibit A**. The circumstances of the present case weigh even more heavily against the proliferation of such harmful and prejudicial anti-cooperation clauses.

The Debtors had no substantive response to these points in their Reply.  Instead, they simply acknowledged the distinction in a footnote and cited to other cases that are likewise inapposite. For example, although *In re SeraCare Life Sciences*, Case No. 06-00510 LA11 (Bankr. S.D. Cal. Dec. 21, 2006), involved a plan support agreement with a lock-up provision, it pertained to a restriction on ***joint plan proponents*** opposing their own joint plan. In its Order, the court specifically found that this provision did not impinge on the termination of exclusivity because it did not impose an undue burden on the filing of a plan by any other party in interest. Indeed, there were no other competing plans in *SeraCare Life Sciences*.

Here, the facts are quite different. The Subrogation Claimholders are not filing a joint plan with the Debtors. They are being locked in to supporting the Debtors' Plan in a way that does unduly burden the efforts of the TCC and Ad Hoc Noteholder Committee to confirm their Alternative Plan. The Debtors' proposal to ameliorate the lock-up provision is to allow the Subrogation Claimholders to negotiate with other parties—so long as they remain loyally tethered to the Debtors. That is not a meaningful stride towards cooperation and compromise. Rather, it simply reinforces that the Subrogation Claimholders will be locked down by the Debtors in any mediation, precluding them from engaging in meaningful negotiations with other parties.

The Debtors also have, under the pretense of preserving a fair and balanced dual plan process, repeatedly opposed and objected to any so-called attempts by the TCC and Ad Hoc

Noteholder Committee to gain an advantage over the Debtors. Yet the Debtors have no compunction about their own attempt to gain a highly prejudicial, unfair and destructive advantage over the TCC, Ad Hoc Noteholder Committee, and other constituencies thereby precluding all parties in interest the opportunity to consider alternative plans. The Debtors should not be permitted to insist on equality in the dual plan process, while using the Restated RSA to place their thumbs on the scale.

The Court has already determined that the termination of exclusivity, dual plan process and mediation are in the best interests of the estates. The Debtors' approach to circumvent those decisions cannot be in the best interest of the estates and should not be countenanced by this Court. The parties need the flexibility to negotiate and amend their plans to account for changing circumstances and the achievement of compromise. The Restated RSA constrains this flexibility and thereby short-circuits the dual-track plan process and undermines the ability of the Court to "consider the preferences of creditors and equity security holders in determining which plan to confirm." 11 U.S.C. § 1129(c). There is no basis or reason to grant the relief requested by the RSA Lock Up Motion.

In the event mediation and a global compromise fails, and the Debtors' Plan is not confirmed, the Restated RSA poses the additional problem that Subrogation Claimholders cannot be held to $11 billion claim amount in the event the Alternative Plan proposes the same treatment as the Debtor Plan. In other words, even if the treatment among plans is <u>identical</u>, the Subrogation Claimholders may still assert a $20+ billion claim, which will require restarting the estimation process next year and delay emergence. This provision provides no benefit to the estates.

For these and the other reasons stated in their Objection, BOKF respectfully requests that the RSA Lock Up Motion and request to approve the Restated RSA be denied, or in the alternative, that the RSA Lock Up Motion be continued and heard no earlier than the commencement of the confirmation hearing of the Debtors' Plan.

*[signature on next page]*

| | | |
|---|---|---|
| Dated: November 11, 2019 | | **ARENT FOX LLP** |
| | By: | /s/ Aram Ordubegian |
| | | Aram Ordubegian (SBN 185142)<br>Andrew I. Silfen (*pro hac vice*)<br>Beth M. Brownstein (*pro hac vice*) |
| | | *Counsel for BOKF, NA, solely in its capacity as Indenture Trustee* |

# EXHIBIT A

JAMES L. LOPES (No. 63678)
JEFFREY L. SCHAFFER (No. 91404)
JANET A. NEXON (No. 104747)
WILLIAM J. LAFFERTY (No. 120814)
HOWARD, RICE, NEMEROVSKI, CANADY,
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4065
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY

FILED
MAR 2 6 2002
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

PACIFIC GAS AND ELECTRIC
COMPANY, a California corporation,

Debtor.

Federal I.D. No. 94-0742640

Case No. 01-30923 DM

Chapter 11 Case

Date: March 25, 2002
Time: 9:30 a.m.
Place: 235 Pine Street, 22nd Floor
San Francisco, California

SUMMARY OF MODIFICATIONS TO
SETTLEMENT AND SUPPORT AGREEMENT

On March 5, 2002, Pacific Gas and Electric Company, debtor and debtor-in-possession herein ("PG&E"), filed a Motion seeking approval of a Settlement and Support Agreement by and among PG&E and PG&E Corporation (collectively, the "Plan Proponents") dated February 12, 2002 (the "Original Agreement"). On March 26, 2002, PG&E and the Senior Debtholders agreed to modify certain of the terms and conditions set forth in the Original Agreement, pursuant to an Amended and Restated Settlement and Support Agreement (the "Amended Agreement"). A blacklined copy of the Amended

Agreement is attached hereto as Exhibit A, and a "clean" version of the Amended Agreement is attached hereto as Exhibit B. The blacklined and clean versions have been served upon the Office of the United States Trustee and counsel to the California Public Utilities Commission, Wilmington Trust Company and the Official Committee of Unsecured Creditors.

The following is a summary of the material changes made to the Original Agreement:

a. The support provisions in the Original Agreement have been amended to: (i) delete the voting restrictions with respect to alternative plans of reorganization; (ii) allow the Senior Debtholders to meet and confer with other parties, discuss, negotiate, consider and vote for alternative plans of reorganization; and (iii) delete the requirement that the Senior Debtholders "fully support" the Plan. See Section 9 of the Amended Agreement.

b. A condition to effectiveness of the settlement has been deleted. Specifically, it is no longer a condition to effectiveness that holders of at least $3 billion in Class 5 Claims become parties to the Amended Agreement or a substantially similar agreement, and all references to the term "Required Holders" have been deleted. See, e.g.,Sections 9 and 17 of the Amended Agreement.

c. Under the Amended Agreement, interest rates will not be fixed as part of the Senior Debtholders' Allowed Claims. Rather, any payment of Pre-Petition Interest and Post-Petition Interest made to the Senior Debtholders at the agreed upon rates in the Amended Agreement can be recharacterized under the following additional circumstances:

(i) If Class 5 does not vote in acceptance of the Plan, any payments of interest made to Senior Debtholders prior to confirmation may be recharacterized by the Plan Proponents as a partial payment of principal, to the extent such payments exceed the amount of interest otherwise required to be paid to the holders of Senior Indebtedness under the terms of the Plan; and

(ii) If the Plan is not confirmed and another plan of reorganization is confirmed, any payments of interest made to Senior Debtholders prior to confirmation may be recharacterized by the proponent of such confirmed plan of reorganization as a partial

SUMMARY OF MODIFICATIONS TO SETTLEMENT AND SUPPORT AGREEMENT
-2-
Case: 01-30923   Doc# 5549   Filed: 03/26/02   Entered: 03/28/02 12:34:00   Page 2 of 3

Case: 19-30088   Doc# 4657   Filed: 11/11/19   Entered: 11/11/19 15:19:14   Page 8 of 9

payment of principal to the extent such pre-confirmation payments exceed the amount of interest otherwise required to be paid to the holders of the Senior Indebtedness under the terms of the confirmed plan. In such event, the Senior Debtholders reserve their right to object to any such plan of reorganization and the treatment of their Claims thereunder. See Sections 1 and 5 of the Amended Agreement.

Accordingly, although the parties believe that the settlement with respect to interest rates is fair and equitable, the parties' agreement with respect to interest rates is limited to the Plan and does not bind the Plan Proponents or any other plan proponent in the event that the Plan is not confirmed.

DATED: March 26, 2002.

HOWARD, RICE, NEMEROVSKI, CANADY, FALK & RABKIN
A Professional Corporation

By: /s/ Janet Nexon
JANET A. NEXON

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY

WD 032602/1-1419903/984045/v1

SUMMARY OF MODIFICATIONS TO SETTLEMENT AND SUPPORT AGREEMENT
-3-