WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DEBTORS' MOTION PURSUANT TO 11 U.S.C §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 9019 FOR AN ORDER (I) APPROVING SETTLEMENT AGREEMENT RESOLVING SERVICE DISCONNECTION OII AND (II) GRANTING RELATED RELIEF ("DISCONNECTION OII SETTLEMENT MOTION")**<br><br>Date: December 11, 2019<br>Time: 10:00 am (Pacific Time)<br>Place: United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br>**Objection Deadline: December 4, 2019, 4:00 pm (PT)** |

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1    PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company

2  (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the

3  above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"),

4  pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**")

5  and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for an order

6  (i) approving the amended settlement agreement, dated May 9, 2019 (the "**Settlement Agreement**"), by

7  and among the Utility and the Utility Enforcement Branch of the Consumer Protection and Enforcement

8  Division ("**CPED**") of the California Public Utilities Commission ("**CPUC**") resolving the

9  Disconnection OII (as defined below), and (iii) granting related relief.  The Settlement Agreement was

10  submitted to the CPUC for approval on April 15, 2019 and subsequently approved by the administrative

11  law judge ("**Presiding Officer**") presiding over the Disconnection OII on August 6, 2019 in a Presiding

12  Officer Decision, which became a final CPUC decision on September 5, 2019.  Following an additional

13  30-day review period, during which no parties filed any objections or responses, the Presiding Officer

14  Decision was approved on a final basis by the CPUC as Decision 19-09-037, issued on September 18,

15  2019 (the "**CPUC Order**").

16    In support of the Motion, the Debtors submit the Declaration of Rakesh Nigam, Director

17  of Credit and Collection for the Utility (the "**Nigam Declaration**"), filed contemporaneously

18  herewith.  A true and correct copy of the Presiding Officer Decision, along with a copy of the Settlement

19  Agreement, is annexed to the Nigam Declaration at **Annex 1**.

20    A proposed form of order granting the relief requested herein is annexed hereto as

21  **Exhibit A** (the "**Proposed Order**").

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in either of the Chapter 11 Cases.  The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III.   DISCONNECTION OII PROCEEDING AND ITS RESOLUTION

On July 12, 2018, the CPUC issued an Order Instituting Investigation 18-07-008, commencing a proceeding to determine whether the Utility violated the Public Utilities Code or any of the CPUC's General Orders, Decisions, Rules of Practice and Procedures or other applicable laws or requirements pertaining to certain power shutoffs (the "**Disconnection OII**").  The Disconnection OII relates to the Utility's inadvertent failure to provide at least 24 hours' advance telephone notice to 6,255 customers of disconnections occurring between July 1, 2016 and July 18, 2016, as required by PG&E's

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1    Electric Rule No. 8 A.2 Tariff.[1]  In addition, in error, the Utility disconnected 217 customers on Saturday,

2    October 20, 2018.[2]  The Utility self-reported these violations to the CPUC on August 30, 2016 and October

3    29, 2018, respectively.

4           The CPUC held a prehearing conference on the Disconnection OII on October 30, 2018

5    and shortly thereafter the Utility and CPED commenced the settlement process.  Subsequent negotiations

6    culminated in a settlement of all issues in the proceeding.  The Utility and CPED initially filed a Motion

7    for CPUC approval of the settlement on April 15, 2019.  Following this filing, certain interested

8    stakeholders provided informal comments to the initial settlement agreement.  In response, the parties

9    agreed to revise the settlement agreement for added clarity.  The Utility and CPED then filed a Motion for

10   CPUC approval of the amended Settlement Agreement on May 9, 2019.  No parties filed any objections

11   or responses to the motion and amended Settlement Agreement.  On August 6, 2019, the Presiding Officer

12   adopted the Settlement Agreement in a Presiding Officer Decision.  Following a 30 day review period,

13   during which no parties filed any objections or responses, the Presiding Officer Decision was approved

14   on a final basis by the CPUC as Decision 19-09-037, issued on September 18, 2019.

15   **IV.     MATERIAL TERMS OF THE SETTLEMENT AGREEMENT**

16          The Settlement Agreement fully resolves the Disconnection OII and any disputed claims,

17   allegations or outstanding issues related thereto.  The key terms and provisions of the Settlement

18   Agreement, as modified by the CPUC Order, are summarized below.[3]

19        **A.     Customer Account Credits**

20          Pursuant to the Settlement Agreement, PG&E will provide a bill credit of $100 to each of

21   the 6,371 affected customer accounts that have not already received such a credit (the "**Customer**

22   **Account Credits**").  Prepetition, 101 affected customers received a $100 credit through PG&E's Quality

23

---

[1] Rule 8 A.2 provides in pertinent part that "[i]f the past due balance still remains unpaid, PG&E will make a reasonable attempt to contact an adult residing at the customer's residence either by telephone or in person at least 24 hours prior to terminating service."

[2] Rule 11.b. prohibits disconnection for nonpayment on Saturdays.

[3] This summary is qualified in its entirety by reference to the provisions of the CPUC Order and of the Settlement Agreement.  To the extent that any discrepancies exist between the summary described in this Motion and the terms of the CPUC Order and Settlement Agreement, the CPUC Order and Settlement Agreement shall govern.

Assurance Standard Provision #10[4] and, therefore, will not receive any additional credit under the Settlement Agreement. The value of the Customer Account Credits total $637,100 and are to be borne by the Utility's shareholders. Any Customer Account Credits that are undeliverable will escheat to the State of California consistent with the Utility's current practices.

**B.     Contribution to the REACH Program**

The Utility shall owe a contribution to the Relief for Energy Assistance through Community Help Program (the "**REACH Program**") in the amount of $637,100 (the "**REACH Claim**"), to be paid by the Utility's shareholders. The REACH Program provides support to Utility customers facing difficulties in paying their bills.

**C.     No Penalties**

Pursuant to the Settlement Agreement, the CPED and the Utility agree a penalty is not warranted in this proceeding, in large part due to the Utility's self-reporting and subsequent corrective actions. Absent the Settlement Agreement, the Utility could be subject to penalties of up to $50,000 per violation per day.[5] With over 6,000 customers affected over multiple days, such penalties could potentially be in the millions.

**D.     Releases**

Upon the CPUC's adoption of the Settlement Agreement, subject to approval thereof by this Court, the Utility and the CPED fully, finally and forever release, waive, and discharge the other party and their respective representatives, agents, officers and directors, heirs, subsidiaries, affiliates, successors and assigns of any claims that were raised or could have been raised as part of the Disconnection OII proceeding or the facts giving rise to that proceeding. The parties further agree that the releases contained in the Settlement Agreement will remain in effect and will be fully binding notwithstanding the discovery or existence of any additional or different facts; provided, however, that nothing in the Settlement Agreement shall be deemed to release the parties from any obligation thereunder.

---

[4] PG&E's Quality Assurance Standard Provision #10 provides that customer accounts may be credited for disconnections for non-payment when a customer was actually current with payments.

[5] At the time of the disconnections at issue, California Public Utility Code sections 2107 and 2108 provided for penalties of up to $50,000 per violation per day.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

### E. Bankruptcy Court Approval and Timing of Payments

Pursuant to the CPUC Order, the Utility is required to seek Bankruptcy Court approval of the Settlement Agreement. *See* CPUC Order at 11, ¶2. Moreover, the CPUC Order requires that the Utility request the Bankruptcy Court grant it authority to satisfy the Customer Account Credits and the REACH Claim within 90 days of the date the Bankruptcy Court authorizes the payment of such claim. *Id.* at 11-12, ¶¶5 & 11.

Once the Bankruptcy Court approves the Settlement Agreement, the Utility intends to issue the Customer Account Credits in accordance with the authority granted to it pursuant to this Court's prior order, entered March 12, 2019 [Docket No. 843] (the "**Public Purpose Programs Order**"), which granted the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507(a)(7) and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Orders (I) Authorizing Debtors to (A) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (B) Honor Any Prepetition Obligations Relating Thereto; and (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [Docket No. 16] (the "**Public Purpose Programs Motion**"). Under the Public Purpose Programs Motion, the Debtors sought authority from this Court to provide credits to its Customers for any number of reasons, including to address "Customer concerns and issues." Public Purpose Programs Motion at 15. Accordingly, the Debtors believe they already have authority to provide the Customer Account Credits to its Customers to address the disconnection of service that occurred prepetition. As indicated above, 101 customers impacted by the prepetition disconnection have already received account credits prepetition resulting from the Utility's ordinary course resolution of customer complaints. Out of an abundance of caution and to comply with the CPUC Order, however, the Debtors request authority to issue the Customer Account Credits to the remaining 6,371 customers, as previously authorized under the Public Purpose Programs Order, within 90 days after the entry of an order approving this Motion.

With respect to the REACH Claim, the Debtors have agreed with the CPED that the Utility will satisfy such claim in accordance with the terms of a Bankruptcy Court order authorizing payment in full or in part of the REACH Claim. *See* Settlement Agreement ¶3 ("PG&E may satisfy the REACH Claim in accordance with the terms of an order entered by the Bankruptcy Court granting PG&E authority to pay the REACH Claim in full or in part."). This authority would be in the form of an order of the

Bankruptcy Court approving a chapter 11 plan of reorganization. Accordingly, the Debtors herein request approval to satisfy the REACH Claim within 90 days of the entry of the Bankruptcy Court's order confirming a chapter 11 plan or such date as may otherwise be provided by the terms of such confirmed chapter 11 plan.

## V. BASIS FOR RELIEF REQUESTED

### A. The Settlement Agreement is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019.

The Debtors submit that the Settlement Agreement is in the best interests of the Debtors' estates and all stakeholders and should be approved under Bankruptcy Rule 9019. Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. R. 9019(a). This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation over contentious issues and expedite the administration of the bankruptcy estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (hereafter, "*TMT Trailer Ferry*"); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The decision to approve a particular compromise lies within the sound discretion of the Court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable" and "in the best interest of the [debtor's] estate." *In re A&C Properties*, 784 F.2d at 1381. The court must apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *TMT Trailer Ferry*, 390 U.S. at 424.

Courts in this jurisdiction typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties, if any, to be encountered in the matter of collecting any

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (iv) the paramount interest of the creditors and the proper deference to their reasonable views in the premises. *See In re Woodson,* 839 F.2d at 620 (quoting *A&C Props*., 784 F.2d at 1380). It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, those conclusions must favor the approval of the settlement. *See In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citing *In re WCI Cable, Inc*., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

The standard courts apply for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below the lowest point in the range of reasonableness in terms of potential benefits to the debtor. *See Allied Waste Serves. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Shugrue*, 165 B.R. at 123 (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness.'"); *see also, In re Pacific Gas and Elec. Co.*, 304 B.R. at 417; *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) (same).

While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair),* 538 F.2d 849, 851 (9th Cir. 1976), or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. As one court explained in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) (emphasis added).

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

1    Here, the terms of the Settlement Agreement are fair and reasonable and in the best interest

2   of the Utility, its estate, creditors and other stakeholders, and should be approved.  The Settlement

3   Agreement is the result of months of extensive, good faith, and informed negotiations among sophisticated

4   parties with a thorough understanding of the underlying issues.  The Settlement Agreement fully resolves

5   the Disconnection OII, eliminates the costs and uncertainties associated with further litigation, including

6   the possible costs of rehearing, appeal, and potential penalties, and ultimately benefits the Utility's

7   affected customers as well as similarly situated customers.

8           Following months of arms'-length negotiations with the CPED beginning in November,

9   2018, the parties ultimately agreed to the terms of the Settlement Agreement.  In entering into the

10  Settlement Agreement, the Utility considered many factors, including the benefit to the affected customers

11  and similarly situated customers, the potential costs and risks associated with continued litigation of the

12  Disconnection OII, and the potential penalties that could otherwise be levied.  Further, the Settlement

13  Agreement clearly does not fall below the lowest point in the range of reasonableness.  Indeed, the CPUC

14  has already determined that the terms of the Settlement Agreement are "reasonable in light of the whole

15  record, consistent with law, and in the public interest."  CPUC Order at 6.  As described above, the CPUC

16  Order provides that a penalty is not warranted in the proceeding, a finding that is not certain absent

17  settlement, without which the Utility could face potentially millions of dollars in penalties that would be

18  payable to the California General Fund.  By entering into the Settlement Agreement, the Utility is capping

19  its liability in connection with the Disconnection OII at $1,274,200 (the aggregate amount of the Customer

20  Account Credits and REACH Claims) and ensures it pays no penalties.  Further, rather than making a

21  contribution to the California General Fund that is not guaranteed to benefit the Utility's customers, the

22  Settlement Agreement contemplates a contribution to the REACH Program.  As stated above, the REACH

23  Program is a non-profit program that provides funds to qualifying Utility customers who need assistance

24  paying their bills and avoiding disconnection.  Unlike contributions to the California General Fund, the

25  REACH Program contribution will directly benefit the Utility's customers who are the most at-risk for

26  disconnection.  In light of the above, the Debtors assert that the Settlement Agreement is fair and

27  reasonable and should be approved.

28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

**B.** **Satisfaction of the Customer Account Credits is a Sound Exercise of the Utility's Business Judgment and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code.**

The Court may authorize the Debtors to satisfy the Customer Account Credits pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the requested relief herein. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification."); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief, the action was in the best interest of the company. *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). *See also*, *In re AWTR Liquidation Inc.*, 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) (referencing the Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C); *In re Johns-Manville Corp.*, 60 B.R. at 615–16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Thus, if, as here, a debtor's actions satisfy

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1  the business judgment rule, then the transaction in question should be approved under section 363(b)(1)

2  of the Bankruptcy Code.

3  Here, satisfaction of the Customer Account Credits is within the authority already granted

4  to the Debtors under the Public Purpose Programs Order and is consistent with the Utility's ordinary

5  course business operations, and therefore is a sound exercise of the Utility's business judgment. As stated

6  in the Public Purpose Programs Motion and the Nigam Declaration, the Utility often provides credits to

7  customers to address various concerns and issues, including improper disconnections. Indeed, as indicated

8  above, 101 customers impacted by the 2016 and 2018 disconnection already received account credits in

9  connection with the Utility's ordinary course resolution of customer complaints. Moreover, the Customer

10  Account Credits reflect modest amounts. Accordingly, providing the Customer Account Credits now is a

11  prudent and sound exercise of the Debtors' business judgment and should be authorized.

12  **VI.    NOTICE**

13  Notice of this Motion will be provided to (i) the Office of the United States Trustee for

14  Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee;

15  (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the

16  Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public

17  Utilities Commission; (viii) Consumer Protection and Enforcement Division; (ix) the Nuclear Regulatory

18  Commission; (x) the Federal Energy Regulatory Commission; (xi) the Office of the United States

19  Attorney for the Northern District of California; (xii) counsel for the agent under the Debtors' debtor in

20  possession financing facility; and (xiii) those persons who have formally appeared in these Chapter 11

21  Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no

22  further notice is required.

23  No previous request for the relief sought herein has been made by the Debtors to this or

24  any other court.

25

26

27

28

1    WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief

2 requested herein as a sound exercise of the Utility's business judgment, appropriate under section 105(a)

3 of the Bankruptcy Code and Bankruptcy Rule 9019, and in the best interests of the Utility's estate, its

4 creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court

5 may deem just and appropriate.

6

7 Dated: November 11, 2019

                                     **WEIL, GOTSHAL & MANGES LLP**

8

                                     **KELLER & BENVENUTTI LLP**

9

10                                      By: _*/s/  Jessica Liou*_
                                             Jessica Liou

11

12                                      *Attorneys for Debtors*
                                     *and Debtors in Possession*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119