WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF RAKESH NIGAM IN SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENT AGREEMENT RESOLVING SERVICE DISCONNECTION OII AND (II) GRANTING RELATED RELIEF**<br><br>Date:   December 11, 2019<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court,<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102<br>**Objection Deadline**: **December 4, 2019, 4:00 p.m. (PT)** |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Rakesh Nigam, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

I am the Director of Credit and Collection for Pacific Gas and Electric Company (the "**Utility**"). The Utility is a wholly-owned subsidiary of PG&E Corporation ("**PG&E Corp.**" and, together with the Utility, the "**Debtors**"). In 2001, I joined the Utility's Customer Care department and held various leadership and analyst roles with increased responsibilities. In 2011, I became a Principal Project Manager in Credit Policy and Operations at the Utility and was promoted to Manager, Business Analysis in 2013. I was appointed to my current position at the Utility in 2018. I have a bachelor's degree in business administration from California State University, Sacramento.

I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Approving Settlement Agreement Resolving Service Disconnection OII and (II) Granting Related Relief* (the "**Motion**"), filed contemporaneously herewith.[1] The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or information provided to me by other members of my team working under my supervision and direction. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

As described in the Motion, the Utility has reached a settlement with the Utility Enforcement Branch of the Consumer Protection and Enforcement Division ("**CPED**") of the California Public Utilities Commission ("**CPUC**") that resolves a proceeding commenced by the CPUC to determine whether the Utility violated the Public Utilities Code or any of the CPUC's General Orders, Decisions, Rules of Practice and Procedures or other applicable laws or requirements pertaining to certain power shutoffs (the "**Disconnection OII**").

**A. The Disconnection OII Proceeding and its Resolution**

On July 12, 2018, the CPUC issued an Order Instituting Investigation 18-07-008, commencing the Disconnection OII. The Disconnection OII relates to the Utility's inadvertent failure

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

to provide at least 24 hours' advance telephone notice to 6,255 customers of disconnections occurring between July 1, 2016 and July 18, 2016, as required by PG&E's Electric Rule No. 8 A.2 Tariff. In addition, in error, the Utility disconnected 217 customers on Saturday, October 20, 2018. The Utility self-reported these violations to the CPUC on August 30, 2016 and October 29, 2018, respectively.

The CPUC held a prehearing conference on the Disconnection OII on October 30, 2018 and shortly thereafter, the Utility and CPED commenced the settlement process. Subsequent negotiations culminated in a settlement of all issues in the proceeding. The Utility and CPED initially filed a Motion for CPUC approval of the settlement on April 15, 2019. Following this filing, certain interested stakeholders provided informal comments to the initial settlement agreement. In response, the parties agreed to revise the settlement agreement for added clarity. The Utility and CPED then filed a Motion for CPUC approval of the amended settlement agreement on May 9, 2019 (the "**Settlement Agreement**"). No parties filed any objections or responses to the motion and Settlement Agreement. On August 6, 2019, the Presiding Officer adopted the Settlement Agreement in a Presiding Officer Decision. A true and correct copy of the Presiding Officer Decision is attached hereto as **Annex 1**. A copy of the Settlement Agreement is attached thereto as **Attachment A**. Following an additional 30-day review period, during which no parties filed any objections or responses, the Presiding Officer Decision was approved on a final basis by the CPUC as Decision 19-09-037, issued on September 18, 2019 (the "**CPUC Order**").

**B. The Material Terms of the Settlement Agreement**

The key terms and provisions of the Settlement Agreement, as modified by the CPUC Order, are summarized below.[2]

**i.    Customer Account Credits**

Pursuant to the Settlement Agreement, PG&E will provide a bill credit of $100 to each of the 6,371 affected customer accounts that have not already received such a credit (the "**Customer Account Credits**"). Prepetition, 101 affected customers received a $100 credit through PG&E's Quality

---

[2] This summary is qualified in its entirety by reference to the provisions of the CPUC Order and of the Settlement Agreement. To the extent that any discrepancies exist between the summary described in this Declaration and the terms of the CPUC Order and Settlement Agreement, the CPUC Order and Settlement Agreement shall govern.

Assurance Standard Provision #10[3] and, therefore, will not receive any additional credit under the Settlement Agreement. The value of the Customer Account Credits total $637,100 and are to be borne by the Utility's shareholders. Any Customer Account Credits that are undeliverable will escheat to the State of California consistent with the Utility's current practices.

### ii. Contribution to the REACH Program

The Utility shall owe a contribution to the Relief for Energy Assistance through Community Help Program (the "**REACH Program**") in the amount of $637,100 (the "**REACH Claim**"), to be paid by the Utility's shareholders. The REACH Program provides support to Utility customers facing difficulties in paying their bills.

### iii. No Penalties

Pursuant to the Settlement Agreement, the CPED and the Utility agree a penalty is not warranted in this proceeding, in large part due to the Utility's self-reporting and subsequent corrective actions. Absent the Settlement Agreement, the Utility could be subject to penalties of up to $50,000 per violation per day.[4] With over 6,000 customers affected over multiple days, such penalties could potentially be in the millions.

### iv. Releases

Upon the CPUC's adoption of the Settlement Agreement, subject to approval thereof by this Court, the Utility and the CPED fully, finally and forever release, waive, and discharge the other party and their respective representatives, agents, officers and directors, heirs, subsidiaries, affiliates, successors and assigns of any claims that were raised or could have been raised as part of the Disconnection OII proceeding or the facts giving rise to that proceeding. The parties further agree that the releases contained in the Settlement Agreement will remain in effect and will be fully binding notwithstanding the discovery or existence of any additional or different facts; provided, however, that nothing in the Settlement Agreement shall be deemed to release the parties from any obligation

---

[3] PG&E's Quality Assurance Standard Provision #10 provides that customer accounts may be credited for disconnections for non-payment when a customer was actually current with payments.

[4] At the time of the disconnections at issue, California Public Utility Code sections 2107 and 2108 provided for penalties of up to $50,000 per violation per day.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

thereunder.

   **v.**   **Bankruptcy Court Approval and Timing of Payments**

   Pursuant to the CPUC Order, the Utility is required to seek Bankruptcy Court approval of the Settlement Agreement and authority to satisfy the Customer Account Credits and the REACH Claim within 90 days of the date the Bankruptcy Court authorizes the payment of such claim. Upon the Bankruptcy Court's approval of the Settlement Agreement, the Utility intends to issue the Customer Account Credits in accordance with the authority granted to it pursuant to the Public Purpose Programs Order. With respect to the REACH Claim, the Debtors have agreed with the CPED that the Utility will satisfy such claim in accordance with the terms of a Bankruptcy Court order authorizing payment in full or in part of the REACH Claim. This authority would be in the form of an order of the Bankruptcy Court approving a chapter 11 plan of reorganization.

**C. The Settlement Agreement Should Be Approved**

   I actively participated in the negotiations with the CPED, the subsequent discussions with the Utility's senior management in evaluating the potential benefits of the Settlement Agreement, and the Utility's decision to enter into the Settlement Agreement.

   The Settlement Agreement is the product of extensive good faith, arms'-length negotiations between the Utility and the CPED. Other Utility representatives and I attended multiple settlement conferences with the CPED, first in November 2018 and again in December 2018. Following these settlement conferences, the parties continued to correspond and hold teleconferences and meetings to finalize the Settlement Agreement. These efforts culminated in the filing of a motion for approval of the settlement with the CPUC on April 15, 2019, followed by a motion to approve the amended Settlement Agreement on May 9, 2019, which reflected informal comments received from interested parties.

   I believe that entry into the Settlement Agreement represents a sound exercise of the Utility's business judgment and that the terms of the Settlement Agreement are fair and reasonable and in the best interests of the Utility, its estate, creditors, and other stakeholders. The Settlement Agreement fully resolves the Disconnection OII, eliminates the costs and uncertainties associated with further

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

litigation, including the possible costs of rehearing, appeal, and potential penalties that could otherwise be levied, and ultimately benefits the Utility's affected customers as well as other similarly situated customers.

Entry into the Settlement Agreement allows the Utility to avoid the risks and uncertainties of a continued CPUC proceeding, including the potential for penalties. At the time of the underlying disconnections, California Public Utility Code sections 2107 and 2108 provided for penalties of up to $50,000 per violation per day. As stated above, with over 6,000 customers affected over multiple days, such penalties could potentially be in the millions. By entering into the Settlement Agreement, the Utility is capping its liability in connection with the Disconnection OII at $1,274,200 (the aggregate amount of the Customer Account Credits and REACH Claims) and ensures it pays no penalties. Notably, the CPUC Order specifically provides that a penalty is not warranted in the OII proceeding, a finding that is not certain absent settlement and without which the Utility could face the risk of potentially substantial penalties in the millions of dollars. In addition, the Utility avoids the additional costs associated with further litigation of the Disconnection OII, including incremental costs associated with pursuing a rehearing or appeal of any adverse decision from the CPUC.

Furthermore, the Settlement Agreement benefits the Utility's affected customers as well as other similarly situated customers because it contemplates a refund to the Utility's existing customers, consistent with the Utility's ordinary course business practices, and a contribution to the REACH Program. The Utility often provides account credits to customers to resolve customer complaints and issues, including those resulting from improper disconnections. Further, the Customer Account Credits proposed in the Settlement Agreement are modest in amount and will directly benefit the customers affected by the disconnections at issue. Likewise, the contribution to the REACH Program also benefits the Utility's customers. As discussed above, the REACH Program provides funds to qualifying Utility customers who need assistance paying their bills and avoiding disconnection. Without the Settlement Agreement, any penalties payable by the Utility as a result of the Disconnection OII would be directed to the California General Fund and is not guaranteed to benefit the Utility's customers. With the Settlement Agreement, the REACH Program contribution will directly benefit the Utility's customers

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

who are the most at-risk for disconnection.

For the above reasons, and because the CPUC has already approved the Settlement Agreement and determined it to be "reasonable in light of the whole record, consistent with law, and in the public interest," I believe the Settlement Agreement, as modified by the CPUC Order, should be approved.

1    Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is

2  true and correct to the best of my knowledge, information, and belief.

4    Dated: November 11, 2019 _
          San Francisco, California

6                                                          Rakesh Nigam

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119