1  WEIL, GOTSHAL & MANGES LLP
   Stephen Karotkin (*pro hac vice*)
2  (stephen.karotkin@weil.com)
   Ray C. Schrock, P.C. (*pro hac vice*)
3  (ray.schrock@weil.com)
   Jessica Liou (*pro hac vice*)
4  (jessica.liou@weil.com)
   Matthew Goren (*pro hac vice*)
5  (matthew.goren@weil.com)
   767 Fifth Avenue
6  New York, NY 10153-0119
   Tel: 212 310 8000
7  Fax: 212 310 8007

8  KELLER & BENVENUTTI LLP
   Tobias S. Keller (#151445)
9  (tkeller@kellerbenvenutti.com)
   Jane Kim (#298192)
10 (jkim@kellerbenvenutti.com)
   650 California Street, Suite 1900
11 San Francisco, CA 94108
   Tel: 415 496 6723
12 Fax: 650 636 9251

13 *Attorneys for Debtors and Debtors in Possession*

14          **UNITED STATES BANKRUPTCY COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
15              **SAN FRANCISCO DIVISION**

16 **In re:**                              Bankruptcy Case No. 19-30088 (DM)

17 **PG&E CORPORATION,**                   Chapter 11 (Lead Case) (Jointly Administered)

18          **- and -**                    **OBJECTION TO CLASS REPRESENTATIVE'S**
                                           **MOTION TO EXTEND APPLICATION OF FEDERAL**
19 **PACIFIC GAS AND ELECTRIC**            **RULE OF CIVIL PROCEDURE 23 TO CLASS PROOF**
   **COMPANY,**                            **OF CLAIM**
20

21
   ☐ Affects PG&E Corporation             [Related to Dkt. No. 4370]
22 ☐ Affects Pacific Gas and Electric
   Company                                Date:   November 19, 2019
23 ☒ Affects both Debtors                 Time:   10:00 a.m. (Pacific Time)
                                          Place:  United States Bankruptcy Court
24 *\* All papers shall be filed in the Lead*          Courtroom 17, 16th Floor
   *Case, No. 19-30088 (DM).*                     San Francisco, CA 94102
25

26

27

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Page**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND .......................................................................................................4

    A.    The Chapter 11 Cases .....................................................................4

    B.    The Putative Class Action...............................................................8

ARGUMENT ..........................................................................................................10

I.     IT IS INAPPROPRIATE TO APPLY BANKRUPTCY RULE 7023 HERE .........................11

    A.    There Is No Pre-Petition Certified Class ......................................12

    B.    All Putative Class Members, Including Mr. Alonzo, Received Actual or Constructive Notice of the Bar Date ...........................................................12

    C.    Class Actions Are Not Superior to the Proof of Claim Process and Granting the Motion Would Adversely Affect the Administration of These Estates .......................16

II.    MOVANT DOES NOT SATISFY THE BASIC REQUIREMENTS OF CIVIL RULE 23.............................................................................................................19

    A.    The Movant Will Not Adequately Represent the Putative Class.................................19

    B.    Questions of Fact Affecting Individual Members of the Putative Class Predominate Over Any Common Questions of Fact ....................................................21

CONCLUSION.......................................................................................................25

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Nordstrom, Inc.*,
No. CV 08-05856-AHM, 2011 WL 7982552 (C.D. Cal. May 24, 2011) .......................................23

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................................20

*In re Aughney*,
No. 10-12666, 2011 WL 479010 (Bankr. N.D. Cal. Feb. 4, 2011) ...............................11

*In re Bally Total Fitness of Greater New York, Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ........................*passim*

*In re Bicoastal Corp.*,
133 B.R. 252 (Bankr. M.D. Fla. 1991) ....................................................................................12

*In re Blockbuster Inc.*,
441 B.R. 239 (Bankr. S.D.N.Y. 2011) ..............................................................................15, 16

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp. 3d 924 (N.D. Cal. 2016) ...................................................................................24

*In re Comput. Learning Ctrs.*,
344 B.R. 79 (Bankr. E.D. Va. 2006) ................................................................................18, 19

*In re Craft*,
321 B.R. 189 (Bankr. N.D. Tex. 2005) ............................................................................10, 12

*Daniels v. AMERCO*,
No. 81 Civ. 3801 (RLC), 1982 WL 1856 (S.D.N.Y. June 7, 1982) .....................................19, 20

*In re DDI Corp.*,
304 B.R. 626 (Bankr. S.D.N.Y. 2004) ...................................................................................16

*In re Dewey & LeBoeuf LLP*,
487 B.R. 169 (Bankr. S.D.N.Y. 2013) ...................................................................................11

*In re Ephedra Prod. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005) ....................................................................................11, 17, 18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

ii

*Falkowski v. Imation Corp.*,
 33 Cal. Rptr. 3d 724 (Ct. App. 2005) ........................................................22

*General Tel. Co. v. Falcon*,
 457 U.S. 147 (1982)........................................................................................19

*Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement*,
 192 Cal. App. 4th 75 (2011) ........................................................................24

*Int'l Bhd. of Boilermakers v. NASSCO Holdings Inc.*,
 226 Cal. Rptr. 3d 206 (Ct. App. 2017) ......................................................22

*In re Jamesway Corp.*,
 No. 95 B 44821 (JLG), 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997).........................*passim*

*In re Literary Works in Elec. Databases Copyright Litig.*,
 654 F.3d 242 (2d Cir. 2011).........................................................................20

*Mennonite Bd. of Missions v. Adams*,
 462 U.S. 791 (1983) .......................................................................................14

*In re Motors Liquidation Co.*,
 447 B.R. 150 (Bankr. S.D.N.Y. 2011) ........................................................15

*In re Musicland Holding Corp.*,
 362 B.R. 644 (Bankr. S.D.N.Y. 2007) ...................................................*passim*

*Nishiki v. Meredith*,
 25 Cal. App. 5th 883 (2018) .........................................................................24

*Oritz v. Fibreboard Corp.*,
 527 U.S. 815 (1999).......................................................................................20

*In re Pac. Sunwear of Cal.*,
 Case No. 16-10882 (LSS), 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016).................11, 12, 20

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
 827 F.3d 223 (2d Cir. 2016)........................................................................20

*In re Sacred Heart Hosp. of Norristown*,
 177 B.R. 16 (Bankr. E.D. Pa. 1995) ..........................................12, 13, 17, 19

*Sansone v. Charter Commc'ns, Inc.*,
 Case No. 17 cv 1880-WQH-JLB, 2019 WL 4468174 (S.D. Cal. Sept. 18, 2019).........................21

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

iii

*In re Taco Bell Wage & Hour Actions*,
    No. 1:07-cv-01314-OWW-DLB, WL 4479730 (E.D. Cal. Sept. 26, 2011) .................................. 24

*In re Verity Health Sys. of Cal., Inc.*,
    No. 2:18-BK-20151-ER, 2019 WL 2903269 (Bankr. C.D. Cal. May 28, 2019) ......................... 10

*In re Verity Health Sys. of Cal., Inc.*,
    No. 2:18-BK-20151-ER, 2019 WL 2461688 (Bankr. C.D. Cal. June 11, 2019) ..................... 10, 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. 19, 21, 22

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    No. C 06-2069 SBA, 2008 WL 413749 (N.D. Cal. Feb. 13, 2008) ................................... 23

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) ........................................................................... 18

**Statutes**

11 U.S.C. § 362(a) ................................................................................................................ 8

California Labor Code § 201(a) ....................................................................... 8, 9, 19, 20, 21

California Labor Code § 203(a) ................................................................................. 8, 19, 21

California Labor Code § 227.3 ......................................................................................... 20, 21

**Other Authorities**

Federal Rule of Bankruptcy Procedure 7023 ....................................................... 10, 11, 15, 16

Federal Rule of Civil Procedure 23 ......................................................................... *passim*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

iv

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this objection (the "**Objection**") to the *Class Representative's Motion to Extend Application of Federal Rule of Civil Procedure 23 to Class Proofs of Claim* [Dkt. No. 4370] (the "**Motion**").

In support of the Motion, the Debtors submit (i) the *Declaration of Robb McWilliams in Support of Debtors' Objection to Class Representative's Motion to Extend Application of Federal Rule of Civil Procedure 23 to Class Proof of Claim* (the "**McWilliams Declaration**"), (ii) the *Declaration of Richard W. Slack in Support of Debtors' Objection to Class Representative's Motion to Extend Application of Federal Rule of Civil Procedure 23 to Class Proof of Claim* (the "**Slack Declaration**"), (iii) the *Declaration of Benjamin P.D. Schrag (I) Regarding Implementation of the Debtors' Notice Procedures and Supplemental Notice Plan and (II) In Support of the Debtors' Objection to Class Representative's Motion to Extend Application of Federal Rule of Civil Procedure 23 to Class Proof of Claim* (the "**Schrag Declaration**"), and (iv) the *Declaration of Jeanne C. Finegan (I) Regarding Implementation of the Debtors' Notice Procedures and Supplemental Notice Plan and (II) In Support of the Debtors' Objection to Class Representative's Motion to Extend Application of Federal Rule of Civil Procedure 23 to Class Proof of Claim* (the "**Finegan Declaration**").

### PRELIMINARY STATEMENT

By the Motion, Mr. Alonzo (the "**Movant**") seeks permission to file a class proof of claim on behalf of certain of the Debtors' former, salaried employees, from June 18, 2016 onward, who (i) were paid once per month and (ii) had earned and vested vacation pay at the time of their separation of employment. Although Courts have discretion to extend Federal Rule of Civil Procedure 23 to allow for class proofs of claim, Courts generally prohibit them where, as here, there was no pre-petition certified class and the notice procedures were deemed adequate by the Court. Thus, the Court should decline the Movant's invitation to do so here. *First*, the Movant has failed to carry his burden to demonstrate that the benefits derived from the use of the class claim device are consistent with the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

goals of chapter 11, which already provides a mechanism for individuals to submit claims at near-zero cost to the claimant. *Second*, even if Mr. Alonzo could clear that high hurdle, he still falls short of satisfying the requirements of Rule 23 of the Federal Rules of Civil Procedure (the "**Civil Rules**") for proper class certification and representation.

Allowing Movant's class proof of claim to stand would contravene the goals of the Bankruptcy Code. Mr. Alonzo, whose employment was terminated in March 2019, filed his putative class action complaint *after* the Petition Date—in violation of section 362's automatic stay. Importantly, there has been no certified class. Further, the Debtors served robust notice of the Bar Date to their current and former employees—a subset of which Mr. Alonzo purports to represent in his putative class action. As the Court is aware, the Debtors' Notice Procedures (as defined below), including their multifaceted media plan for providing supplemental and constructive notice to known and unknown claimants, comprised one of the largest and most comprehensive notice and media campaigns implemented in chapter 11 history. Over 6.5 million Bar Date Notices were mailed by the Debtors to potential creditors and parties in interest. Every individual employed by the Debtors as of the Petition Date, like Mr. Alonzo, received actual notice of the Bar Date. Likewise, every individual employed by the Debtors between January 1, 2017 and the Petition Date received actual notice of the Bar Date. In fact, notwithstanding that Movant filed his action after the Petition Date and the putative members of that class were all unknown to the Debtors as of the Petition Date, 92.4% of those former employees whose termination occurred after June 18, 2016—and might be considered part of Mr. Alonzo's proposed class—received actual notice of the Bar Date. Any remaining putative claimant received constructive notice from the Debtors' Notice Procedures—which included widespread publication through both traditional and non-traditional means—that were carefully calculated to reach all potential claimants, known and unknown. Indeed, as set forth in the Finegan Declaration, the reach and frequency achieved by the Debtors actually exceeded their projected results or the results typically achieved in class actions or other chapter 11 cases and, on average, notice of the Bar Date reached between 88–98% of adults

- 2 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

over the age of 18 located within the State of California, an average of 11 to 16 times depending on their geographic location.

Finally, allowing these individuals to proceed as a class puts at risk the Debtors' ability to confirm a chapter 11 plan of reorganization in time to meet the June 30, 2020 deadline established under AB 1054. The Debtors are in the midst of estimation proceedings currently pending before three separate courts, they are engaged in a highly contested competing chapter 11 plan process with significant confirmation-related issues about to be litigated before the Court that will have a material impact on both proposed plans, they are engaged in regulatory proceedings before the California Public Utility Commission regarding their proposed plan, and they have just recently commenced mediation under the auspices of Retired Bankruptcy Judge Newsome. This is in addition to maintaining the Debtors' normal day-to-day operations, managing their vast network of vendors, suppliers, and contract counterparties, and focusing on delivering power to their 16 million customers in a safe and reliable manner. Diverting the Debtors' limited resources away from the work required to accomplish these goals, despite actual or constructive notice of the Bar Date and its consequences, would be inequitable and adversely affect the Debtors' reorganization.

Because Mr. Alonzo has not (and cannot) demonstrate that it would be appropriate to apply Bankruptcy Rule 7023 in this contested matter, his Motion should be denied for this reason alone. Moreover, Mr. Alonzo also fails to satisfy the requirements of Civil Rule 23. Because he was terminated after the Petition Date, Mr. Alonzo cannot adequately represent the general unsecured claimants in his purported class—*e.g.*, former employees with non-priority pre-petition claims. Further, neither Mr. Alonzo nor his counsel have made any effort to identify any potential members of the putative class or its possible size. In fact, a cursory investigation into the circumstances surrounding Mr. Alonzo's termination reveal that he may not even be a class member himself. Finally, because the facts related to the claims of individual potential members are unique and claimant specific, the claims are not suitable for class treatment.

- 3 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# BACKGROUND

## A.    The Chapter 11 Cases

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### 1.    The Bar Date Order

On May 1, 2019, the Debtors filed their motion [Dkt. No. 1784] (the "**Bar Date Motion**") requesting entry of an order (i) establishing October 21, 2019 as the last date to file proofs of claim in the Chapter 11 Cases (the "**Bar Date**"), (ii) establishing the form and manner thereof, and (iii) approving the Debtors' plan for providing notice (the "**Notice Procedures**") of the Bar Date and other important deadlines and information to all creditors and potential creditors, including publication and other supplemental noticing procedures (the "**Supplemental Notice Plan**"). *See* Bar Date Order at 2; *see also generally* Schrag Declaration; Finnegan Declaration.

The Bar Date Motion and Notice Procedures were heavily litigated; this Court heard extensive briefing and argument from the various constituencies on, among other things, the length of the proposed Bar Date, the various proof of claim and notice forms, and the proposed procedures for providing notice of the Bar Date and related procedures to known and unknown claimants. Among others, the TCC, the U.S. Trustee, certain wildfire claimants, certain public entities, and the ad hoc group of subrogation claimholders filed objections, limited objections, joinders, or other related pleadings. *See* Dkt. Nos. 2043, 2238, 2239, 2240, 2242, 2248, 2256, 2306, 2307, 2308, 2316, 2321, 2324, 2326, 2346, and 2453. Neither Mr. Alonzo, nor his attorney, nor any other self-described member of the putative class raised any objections to entry of the Bar Date Order or approval of the

- 4 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Debtors' Notice Procedures. After hearing all the evidence and arguments, the Court approved the Bar Date Motion and the Debtors' Notice Procedures, as modified prior to and at the hearing, by order dated July 1, 2019 [Dkt. No. 2806] (the "**Bar Date Order**").

### 2. *The Notice Procedures*

At the Debtors' direction, and consistent with the Bar Date Order, over 6.5 million Bar Date Notices were directly mailed to potential claimants, which included notice of the deadline for filing claims and related procedures as well as an applicable proof of claim form. *See* Schrag Decl. ¶ 7; *Certificate of Service of Herb Baer* [Dkt. No. 3159].

Direct-mail recipients included, among others, the Debtors' approximately 6.2 million customers and 141,000 potential creditors, contract counterparties, and other parties in interest. *See* Schrag Decl. ¶ 7. Included in the latter group, and relevant here, are the Debtors' current and former employees. *See* McWilliams Decl. ¶¶ 3–10. Before the Petition Date, at the direction of AlixPartners LLP ("**AlixPartners**") and Weil, Gotshal & Manges LLP, the Debtors' Human Resources department generated a list of current employees as of January 1, 2019. *See id.* ¶ 4. As he was a PG&E employee on January 1, 2019, Mr. Alonzo was among the individuals on this list. The Debtors also created a separate list of (i) former employees between January 1, 2017 and December 31, 2018 and (ii) pensioners as of January 11, 2019. *See id.* ¶¶ 5–6.[1] Prior to the Bar Date, the Debtors re-ran the current and former employee rosters through the Petition Date to capture any additional potential employee-claimants. *See id.* ¶¶ 4–6. Affidavits certifying direct service, in accordance with the Bar Date Order, the Bankruptcy Code, and otherwise applicable law, and the method of such service, of a Claims Package that included: (i) Standard Bar Date Notice, and (ii) the Standard Proof of Claim Form, were filed by Prime Clerk on July 23, 2019 [Docket No. 3159], July 30, 2019 [Docket No. 3262],

---

[1] Unlike employees, who may be hired or terminated on a day-to-day basis, an individual will only appear on the Debtors' pension roll on the first of a month. *See id.* ¶ 6. Accordingly, the list of the Debtors' pensioners as of January 11, 2019 is coextensive with the same list as of the Petition Date. *See id.*

- 5 -

and August 8, 2019 [Docket No. 3474]. Prime Clerk directly served the Claims Package upon Mr. Alonzo. *See Certificate of Service of Herb Baer* [Dkt. No. 3159], Ex. E at 41 of 1456.

Given the nature of these Chapter 11 Cases, in addition to actual notice, the Debtors also implemented their Supplemental Notice Plan to provide extensive constructive notice to known and unknown claimants using both traditional and non-traditional means. *See generally* Finegan Decl. The Supplemental Notice Plan included publication in, among others, print, online, social, radio, and television media outlets. *See id.* ¶ 6. Ultimately, the program resulted in over 730,000,000 impressions, *i.e.*, opportunities to see the Bar Date Notice.[2] *See id.* ¶¶ 6–7.

The Finegan Declaration describes these efforts in exacting detail. But the Debtors take this opportunity to highlight some of the most salient aspects of the Supplemental Notice Plan. In accordance with the Bar Date Order, the Debtors published the Bar Date Notice in (i) three nationally distributed magazines—*People*, *Sports Illustrated*, and *Sunset Magazine*, (ii) two nationally circulated newspapers—*Wall Street Journal* and *USA Today*,[3] and (iii) three separate times in twenty-seven local newspapers.[4] *See id.* ¶¶ 11–14. Proof of publication affidavits are attached as Exhibits A and B to the Finegan Declaration. Additionally, the Debtors placed banner advertisements in English and Spanish across approximately 4,000 websites—including top-tier news, local news, Spanish language, and other websites. *See id.* ¶¶ 15–17. The Debtors also launched social media campaigns on Twitter,

---

[2] As set forth in the Finegan Declaration, an impression translates into an opportunity to see a message in a given medium. Here, it measures each time the Bar Date Notice is displayed and potentially viewed by claimants. For example, each direct mailing of the Bar Date Notice sent out to Known Claimants constitutes one impression. Every time, the Bar Date was displayed in a television advertisement similarly constitutes one impression for each person estimated to be viewing the advertisement at the time of airing. *See id.* ¶ 7.

[3] The Bar Date Notice was published once, on July 17, 2019, in the *Wall Street Journal* and three times, on July 17, 2019, August 22, 2019, and September 26, 2019, in *USA Today*.

[4] *Los Angeles Times*, *San Francisco Chronicle*, *The Bakersfield Californian*, *The Fresno Bee*, *The Modesto Bee*, *The Sacramento Bee*, *The Santa Rosa Press Democrat*, *The San Jose Mercury News*, *The East Bay Times*, *The Stockton Record*, *The Paradise Post*, *The Chico Enterprise-Record*, *The San Francisco Examiner*, *The Redding Record Searchlight*, *The Red Bluff Daily News*, *The Eureka Times Standard*, *The Ukiah Daily Journal*, *The Grass Valley Union*, *The Napa Valley Register*, *The Trinity Journal in Weaverville*, *The Mad River Union in Arcata*, *The Del Norte Triplicate in Crescent City*, *The Mount Shasta Herald in Mount Shasta*, *The Siskiyou Daily News in Yreka*, *The Modoc County Record in Alturas*, *The Ferndale Enterprise in Fortuna*, and *The Lassen County Times in Susanville*.

- 6 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Facebook, Instagram, and YouTube that included the engagement of social influencers to further reach potential claimants. *See id.* ¶¶ 18–23. Moreover, the Debtors also provided notice via television, radio, billboards, and other non-traditional means. *See id.* ¶¶ 25–43. As set forth above, the Notice Procedures were one of the largest, most comprehensive notice and media campaigns implemented in chapter 11 history and has been a resounding success, exceeding the estimated and projected results and the results typically achieved in class actions or chapter 11 cases. Thus, any former employee who wished to file an action against the Debtor had notice and opportunity to file such a claim during the Bar Date period.

### 3. Progress Toward Confirmation

The Court is well aware of the complexity of these Chapter 11 Cases as well as the good-faith progress the Debtors have made toward confirmation of a plan in time to meet the deadline established under AB 1054. Some of the highlights of these efforts include:

- After extensive negotiations, the Debtors filed their chapter 11 plan of reorganization, dated September 9, 2019 [Dkt. No. 3841] (as thereafter amended on September 23 and November 4, 2019, the "**Plan**"), that was structured and designed to enable the Debtors to (i) fairly and expeditiously treat pre-petition wildfire claims in full compliance with AB 1054, (ii) achieve a rate-neutral solution, on average, for customers, (iii) meet the AB 1054 June 30, 2020 timeline for confirmation of the Plan, (iv) achieve required CPUC approvals, (v) support California's clean energy goals, and (vi) ensure that the Reorganized Debtors have access to sufficient liquidity upon chapter 11 emergence.

- As the Court is aware, the Debtors have achieved two critical settlements of their wildfire liabilities to be satisfied and discharged pursuant to their Plan. The first settlement fully resolves all of the wildfire claims held by the 18 settling Public Entities for the aggregate amount of $1 billion. The second settlement fully resolves all of the claims held by Subrogation Claimants in the asserted amount of approximately $20 billion for consideration in the amount of $11 billion, representing a 45% reduction.

- The Debtors have established pre-confirmation briefing schedules for several plan confirmation-related issues, including with respect to (i) whether the doctrine of inverse condemnation applies to the Utility, (ii) whether certain public entity claims are liquidated or subject to estimation, (iii) whether the holders of unsecured bond claims are entitled to any make-whole premiums, and (iv) whether the holders of allowed unsecured claims are entitled to post-petition interest at the federal judgment rate or some other rate.

- Although establishing the Bar Date and Notice Procedures took several months, and despite the immense complexity of these Chapter 11 Cases, the Debtors are still on track to meet the June 30, 2020 deadline imposed by AB 1054.

While the Debtors have accomplished much in the months since the Petition Date, there is still much more to be done that will require additional resources and tremendous efforts. With respect to a key issue of these Chapter 11 Cases—namely, a determination of the underlying liability owed to individual wildfire claimants—estimation proceedings are currently pending before the District Court, the California State Superior Court, and this Court that involve complicated issues relating to causation, liability, and damages involving not less than 22 separate wildfires and thousands of underlying individual loss claims. Because this Court terminated the Debtors' exclusive periods, there are two chapter 11 plans currently on file—the Debtors' Plan and the TCC/Ad Hoc Noteholder Plan.

The outcome of the estimation proceedings is fundamental to the consideration of solicitation of both plans and neither realistically can go forward prior to a determination of the magnitude of the TCC's constituency's claims. Relatedly, as stated, this Court recently set a briefing schedule to address certain issues relating to the confirmation of both chapter 11 plans (including, without limitation, issues relating to impairment, applicable post-petition interest rates, and make-whole premiums) to be briefed by the parties between now and January 2020.

The Debtors have also dedicated substantial resources to securing necessary governmental approvals in connection with their Plan, including the recently opened CPUC OII proceeding in connection with the Debtors' Plan. Furthermore, on October 28, this Court directed the parties in interest to mediation before Retired Bankruptcy Judge Newsome to see if a consensual resolution of the cases could be achieved. This is in addition to maintaining the Debtors' normal day-to-day operations, managing their vast network of vendors, suppliers, and contract counterparties, and focusing on delivering power to their 16 million customers in a safe and reliable manner.

**B.    The Putative Class Action**

*1.    Mr. Alonzo's Allegations*

On June 18, 2019, nearly five months after the commencement of these cases and in clear violation of the automatic stay, Movant filed a putative class action complaint in the Superior Court of the State of California for the County of San Francisco. *See* Mot., Ex. 1. The same day, PG&E sent a

- 8 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    Notice of Bankruptcy Filing and Imposition of Automatic Stay, notifying him that the proceeding was

2    stayed pursuant to section 362(a) of the Bankruptcy Code.  *See* Slack Decl., Ex. A (Notice of Stay).

3    No other activity has taken place in the State Court case and (obviously) Mr. Alonzo's putative class

4    was not certified before the Petition Date.

5        In his complaint, Mr. Alonzo seeks, on behalf of himself and the putative class, recovery of

6    unpaid wages and penalties under California Labor Code §§ 201–203 and 227.3, among other things.

7    *See* Mot., Ex. 1.  He alleges that PG&E terminated his employment on March 24, 2019, but that he did

8    not receive his final payroll check until April 4, 2019.  *See* Mot. at 4.  Notably, Mr. Alonzo does not

9    allege that he is owed any unpaid wages.  His claim is entirely for statutory penalties.  *See* Mot. at 4.

10        Movant defines the putative class as "All of [Debtors'] former salaried employees in California

11    who were paid once per month and who had earned and vested vacation pay at the time of their

12    separation of employment and whose [*sic*] during the three years immediately prior to the filing of the

13    Complaint."  *See id.*  In other words, Mr. Alonzo—whose separation occurred after the Petition Date—

14    seeks to represent a class of individuals whose final date of employment occurred anywhere between

15    June 18, 2016 (before the Petition Date) and June 18, 2019 (after the Petition Date).  Assuming Mr.

16    Alonzo himself has a valid claim (which the Debtors' dispute) and to the extent Mr. Alonzo's putative

17    class is more than just a party of one (which is unknown), the proposed class would contain both pre-

18    and post-petition claims.  Moreover, neither the proof of claim nor the Motion itself provides any facts

19    that there are any class members whatsoever—especially, as discussed below, given the fact that there

20    is even a dispute whether Movant himself falls within the proposed class.

21            2.  *Mr. Alonzo May Not Be a Member of the Class He Purports to Represent*

22        According to the Debtors' records, several of Mr. Alonzo's factual allegations are demonstrably

23    false.  As demonstrated by (i) Movant's final wage check, (ii) his vacation payout check, (iii) PG&E's

24    payroll check request ("**PCR**"), and (iv) awards he received through a short-term incentive plan

25    ("**STIP**"), Movant was indeed employed through March 31, 2019.

26

27                                        - 9 -

28

Movant was issued two separate checks in March 2019 as a result of his termination. On March 22, 2019, Debtors issued Movant's final wage check, representing payment through the end of the month, and not March 24, 2019 as Movant claims. *See* Slack Decl., Ex. B (March Wage Statement). On March 26, 2019, pursuant to PG&E's consistent practice of paying discharged employees all final wages on or before their discharge effective date and in accordance with California Labor Code Section 201(a), PG&E submitted a PCR via email directing the timekeeper to enter all of Movant's time through March 31, 2019. *See* Slack Decl., Ex. C (PCR). The final check, dated March 29, 2019, reflects a floating holiday payout and a vacation payout. *See* Slack Decl., Ex. D (Vacation Payoff at Term Statement). The PCR lists Movant's "Date of Separation" as April 1, 2019—not March 24, 2019 as Movant purports. *Compare See* Slack Decl., Ex. C (PCR) *with* Mot. at 13. In other words, Mr. Alonzo's final check pre-dates his separation date, consistent with California law.

The PCR also provides "Final Check Instructions," directing delivery to Movant's superintendent/supervisor, identified as Steve Watson. *See* Slack Decl., Ex. C (PCR). The UPS shipping confirmation shows that Movant's final check was issued a day earlier on March 28, 2019 and sent overnight as instructed, arriving at 7:28 a.m. on Friday March 29, 2019 at Steve Watson's office in Rocklin, CA. *See* Slack Decl., Ex. E (Shipping Confirmation).[5]

## ARGUMENT

The Movant's burden here is two-fold to support a class proof of claim. *See In re Verity Health Sys. of Cal., Inc.*, No. 2:18-BK-20151-ER, 2019 WL 2461688, at *7 (Bankr. C.D. Cal. June 11, 2019). *First*, he must establish that "it is appropriate to apply Bankruptcy Rule 7023 to the claims administration process" under the three-factor framework set forth in *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007). *See In re Verity*, 2019 WL 2461688, at *7. *Second*, he must satisfy the requirements of Federal Rule of Civil Procedure 23. *See id.* Failure to carry the burden

---

[5] Further, Mr. Alonzo received a STIP payment for Q1 2019 on May 15, 2019. *See* Slack Decl., Ex. G (STIP Payment). Under PG&E policy, employees are not eligible for a quarter-end STIP payment *unless they remained an employee throughout the entire quarter*. *See* Slack Decl., Ex. F (STIP Policy).

on the first prong, however, ends the inquiry. *See In re Musicland*, 362 B.R. at 654; *In re Craft*, 321 B.R. 189, 198–99 (Bankr. N.D. Tex. 2005) ("[T]he court need not reach the second issue" after declining to invoke Bankruptcy Rule 7023). Here, Movant has failed to carry his burden on the first prong of the analysis such that the Court need not even consider whether Civil Rule 23 has been satisfied to deny the Motion, which he also fails to establish.

## I.      IT IS INAPPROPRIATE TO APPLY BANKRUPTCY RULE 7023 HERE

There is no absolute right to file a class proof of claim under the Bankruptcy Code. *See In re Pac. Sunwear of Cal.*, Case No. 16-10882 (LSS), 2016 WL 4250681, at *13 (Bankr. D. Del. Aug. 8, 2016); *In re Aughney*, No. 10-12666, 2011 WL 479010, at *1 (Bankr. N.D. Cal. Feb. 4, 2011); *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 619–20 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re Musicland*, 362 B.R. at 650 (application of Federal Civil Rule 23 is not automatic). In fact, a Bankruptcy Court should use "caution" before granting a 7023 motion and do so sparingly. *In re Dewey & LeBoeuf LLP*, 487 B.R. 169, 179 (Bankr. S.D.N.Y. 2013). Because "class certification may be 'less desirable in bankruptcy than in ordinary civil litigation,'" *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005), Bankruptcy Courts have developed a three-factor framework to guide the exercise of this discretion. *See In re Verity*, 2019 WL 2461688, at *6. The *Musicland* factors—as they have come to be known—ask whether: (i) the class was certified pre-petition, (ii) the putative class members received notice of the bar date, and (iii) class certification will adversely affect the administration of the estate. *See id*. While no single factor is dispositive, the first two are "critical." *In re Musicland*, 362 B.R. at 655; *see also In re Verity Health Sys. of Cal., Inc.*, No. 2:18-BK-20151-ER, 2019 WL 2903269, at *5 (Bankr. C.D. Cal. May 28, 2019) (quoting *Musicland*, 362 B.R. at 655). Indeed, in *In re Bally*, the Court found that the "filing of a class proof of claim is consistent with the Bankruptcy Code generally in two principal situations: (i) where a class has been certified pre-petition by a non-bankruptcy court; and (ii) where there has been no actual or constructive notice to the class members of the bankruptcy case and the Bar Date." 402 B.R. at 630. Here, all three factors mandate denial of the Motion.

- 11 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**A.** **There Is No Pre-Petition Certified Class**

The Motion does not even acknowledge, let alone address, the first of the two "critical" *Musicland* factors: whether a non-bankruptcy forum certified the proposed class before the Petition Date. *See generally* Mot. Presumably, this is because in circumstances similar to these—where pre-petition certification is lacking—putative class members lack "any reasonable expectation that they need not comply with the Bar Date Order." *In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997). But ignoring the factor does not make it go away. Where there has been no pre-petition certified class, Bankruptcy Courts are reluctant to extend Bankruptcy Rule 7023 to allow the filing of class proofs of claim. *See In re Pac. Sunwear of Cal.*, 2016 WL 4250681, at *18 (declining to approve class proof of claim for a proposed class *lacking* pre-petition certification); *In re Craft*, 321 B.R. at 199 (declining to apply Bankruptcy Rule 7023 for a proposed class that was "not yet certified"). The first *Musicland* factor supports denying the Motion because no non-bankruptcy forum has certified Mr. Alonzo's putative class before the Petition Date, or since.

**B.** **All Putative Class Members, Including Mr. Alonzo, Received Actual or Constructive Notice of the Bar Date**

Movant also fails the second *Musicland* factor, as the filing of a class proof of claim is only permissible where there has been no actual *or* constructive notice to the class members of the bankruptcy case and bar date. *See In re Pac. Sunwear of Cal.*, 2016 WL 4250681, at *12; *In re Bally*, 402 B.R. at 630; *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (denial of class proof of claim is warranted if putative class members received actual or constructive notice of the chapter 11 case and bar date). In fact, Courts view the type of end-around Mr. Alonzo is attempting here as "unwarranted, unfair, and possibly [a] violat[ion of] the due process rights of other creditors." *In re Jamesway Corp.*, 1997 WL 327105, at *10 (purported class members should not have and could not "have had any reasonable expectation that they need not comply with the Bar Date Order"); *see In re Bicoastal Corp.*, 133 B.R. 252, 255 (Bankr. M.D. Fla. 1991) ("[T]o permit the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Claimants to file a claim as members of a class would enable them to accomplish indirectly what they could not accomplish directly."). Here, because each member of the putative class received actual or constructive notice of the Chapter 11 Cases and the Bar Date, the Motion should be denied.

Courts disfavor claimants who received actual notice of the bar date, but did not heed its warning. "[P]utative members of an uncertified class who received actual notice of the bar date but did not file timely claims are the least favored candidates for class action treatment." *In re Musicland*, 362 B.R. at 655 (debtor sent a copy of the Bar Date Notice to all persons employed by Musicland during 2005); *see In re Jamesway Corp.*, 1997 WL 327105, at *8 (rejecting challenges to sufficiency of notice where debtor mailed Claims Packages to over 11,700 former employees). Known claimants of all kinds who have received actual notice of the bar date "must proceed through the claims process on a level playing field." *In re Sacred Heart*, 177 B.R. at 22–24 ("[M]ost, if not all, of the unnamed class members have had unusually stark, clear, and hence effective notice of the Debtor's bankruptcy case as a result of the abrupt loss of their employment, followed by intense media publicity surrounding the filing itself."). An action that "expands the bar date for notified creditors may itself violate due process." *Id.* at 23–24. Indeed, it is "manifestly clear that it would be unwarranted, unfair, and possibly violate the due process of other creditors of the Debtor to effectively extend the bar date to benefit (1) the members of the putative class who failed to exercise vigilance; and (2) the pocketbook of the putative class's counsel, who obviously will seek a contingency fee from all unnamed class members who fail to opt out of the putative class." *Id.* at 24.

Relying on nothing but baseless speculation—in other words entirely without any evidence whatsoever—Mr. Alonzo contends "it is likely that most Class members have not received actual notice of the General Bar Date." Mot. at 10. The facts are to the contrary, as the Debtors sent a Claims Package to *every* current employee, including Mr. Alonzo.[6] In addition, the Debtors sent the Claims

---

[6] For purposes of Bar Date noticing, "current employees" are those individuals employed by the Debtors as of January 28, 2019—*i.e.*, the day before the Petition Date—including Mr. Alonzo. *See* McWilliams Decl. ¶ 4. It is undisputed that Mr. Alonzo's employment was not terminated before January 29, 2019.

- 13 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Package to *every* former employee—not just the subset of former employees who might be members of the putative class, but every single one—whose termination date occurred between January 1, 2017 and January 28, 2019. *See* McWilliams Decl. ¶¶ 5, 7–10. In other words, only those former employees whose terminations occurred between June 18 and December 31, 2016 would not have received actual notice of the Bar Date in their capacity as former employees. Many of these potential claimants, however, received actual notice in other capacities—*i.e.*, as pensioners or customers. In fact, over 92% of former employees, terminated on or after June 18, 2016 that Mr. Alonzo hopes to represent received *actual* notice of the Bar Date. *See id.* ¶ 9; *Certificate of Service of Herb Baer* [Dkt. No. 3159] ¶ 15.

Thus, a substantial majority of Debtors' former employees—including those Mr. Alonzo purports to represent—received actual, physical copies of the Bar Date Notice. The Bar Date Notice instructed all recipients of the deadline for submitting a proof of claim, as well as the legal consequences of failing to do so. *See Certificate of Service of Herb Baer* [Dkt. No. 3159], Ex. B.

It is undisputed that Mr. Alonzo received actual notice of the Bar Date. *See* Mot. at 10 ("PG&E provided notice of the General Bar Date Order to Class Representative after he filed the Class Action."). Thus, contrary to Movant's claim, this is not a situation where "there has been no actual . . . notice to the class members of the bankruptcy case or the applicable bar date." *Id.* (quoting *In re Bally*, 402 B.R. at 620). Here, the Debtors mailed a Claims Package to over 48,000 pensioners and current and former employees, like Mr. Alonzo. None of them had "any reasonable expectation that they need not comply with the Bar Date Order." *In re Jamesway Corp.*, 1997 WL327105, at *10.

The remaining putative class members received sufficient constructive notice as approved by the Court. An action that threatens to deprive an individual of property, like the Bar Date, must satisfy due process. Therefore, notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at *8; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983). In the bankruptcy context, the "proper inquiry" is *not* whether each claimant received *actual* notice. *Id.* Actual notice is "irrelevant as a matter of due process." *Id.* Rather, it is whether the debtor "acted

- 14 -

reasonably in selecting means likely to inform persons affected by the Bar Date and these chapter 11 proceedings." *Id.* ("complying with the terms of the Bar Date Order, mailing a Claim Package to every known creditor and publishing notice of the Bar Date" satisfied due process); *see also In re Bally*, 402 B.R. at 620 (mailing formal bar date notices and publishing notice in nationally circulated periodicals "was reasonably calculated . . . to apprise interested parties of the bankruptcy case and was of such nature as to convey the required information") (internal citations omitted).

In large, complex bankruptcies such as this one, Courts have routinely held that a combination of actual and constructive notice is sufficient to satisfy due process. For example, in *Bally*, the debtors mailed formal bar date notices to all present employees as well as former employees whose employment terminated between January 1, 2004 and the petition date (December 3, 2008). *See* 402 B.R. at 620. In addition, the debtors supplemented their mailing campaign with "published notice of the Bar Date in the national editions of the Chicago Tribune and USA Today." *Id.*; *see In re Jamesway Corp.*, 1997 WL 327105, at *8 (claim packages mailed to thousands of potential claimants and publication notice appeared in multiple widely-circulated periodicals); *In re Blockbuster Inc.*, 441 B.R. 239, 242 (Bankr. S.D.N.Y. 2011) (same); *In re Motors Liquidation Co.*, 447 B.R. 150, 168 (Bankr. S.D.N.Y. 2011) ("[N]o class has ever been certified in a bankruptcy court by reason of deficiencies in notice to prospective members of the putative class.").

Here, in addition to the actual notice provided to the vast majority of the potential class members, the Debtors implemented perhaps the most robust noticing campaign ever imagined. Specifically, the Debtors published notice of the Bar Date in (i) three nationally distributed magazines (*People*, *Sports Illustrated*, and *Sunset Magazine*), (ii) two nationally circulated newspapers (*Wall Street Journal* on July 17, 2019 and *USA Today* on July 17, 2019, August 22, 2019, and September 26, 2019), and (iii) three times in twenty-seven local newspapers distributed throughout Northern California (*see* Bar Date Order [Dkt. No. 2806] ¶ 13 for complete list). *See* Finegan Decl. ¶¶ 13–14.

In addition, the Debtors generated geo-targeted online advertisements across 4,000 different websites, pushed notifications through social media—*i.e.*, Facebook, Instagram, Twitter, and

- 15 -

Case: 19-30088    Doc# 4684    Filed: 11/12/19    Entered: 11/12/19 15:43:07    Page 20 of 30

YouTube, engaged social influencers to post and share information about the Bar Date on Instagram and Facebook, sponsored advertisements on Google for related keyword searches, purchased billboards, streaming video rights, and airtime on television and radio (terrestrial and satellite), among other things, to inform as many potential claimants as possible of the pending Bar Date. *See id.* ¶¶ 15–23. These comprehensive efforts resulted in more than 730,000,000 opportunities to see the Bar Date Notice. *See id.* ¶¶ 4–8. In addition to the 6.5 million Bar Date Notices directly mailed to potential claimants, the Debtors' Noticing Procedures were more than reasonably calculated to provide notice of the Bar Date to both known and unknown creditors, like Mr. Alonzo and his putative class.[7]

### C. Class Actions Are Not Superior to the Proof of Claim Process and Granting the Motion Would Adversely Affect the Administration of these Estates

Movant has failed to establish either of the two "critical" *Musicland* factors. This failure alone dooms his Motion and the Court need not even consider the third factor. But even if the Court were to consider the third factor—effect on the administration of the estates—it also favors denying the Motion.

*First*, class actions are not superior to the proof of claim process, chapter 11's mechanism for distributing assets of the estates to creditors and other economic stakeholders. *See, e.g.*, *In re Blockbuster Inc.*, 441 B.R. at 241 (the "superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows [Plaintiffs] to file proofs of claim without counsel and at virtually no cost. In efficiency, bankruptcy is superior to a class action because in practice small claims are often 'deemed allowed' under § 502(a) for want of objection, in which case discovery and fact-finding are avoided altogether"). The proof of claim process is intended

---

[7] The Movant's attempt to challenge the sufficiency of Debtors' notice on due process grounds misconstrues the concept of "known" creditors. *See* Mot. at 10. *In re DDI Corporation*, which the movant parenthetically quotes, describes two scenarios under which a class could be considered a "known" creditor: (i) "if a class was *certified* prior to the bar date," or (ii) "the class action was commenced against the debtor *prior to* the petition date." *See* Mot. at 10 (quoting *In re DDI Corp.*, 304 B.R. 626, 629 (Bankr. S.D.N.Y. 2004)). Mr. Alonzo's putative class does not fit into either category. As previously discussed, class certification is lacking. More importantly, however, Mr. Alonzo filed the class action complaint on June 18, 2019—in violation of the automatic stay—nearly five months *after* the Petition Date. *See* Mot. at 3. In any event, over 92% of the potential members of the proposed class, whether known or unknown, received actual notice of the Bar Date.

- 16 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to be a straightforward procedure to permit creditors, including unsophisticated creditors, to obtain a chapter 11 distribution without undue costs and delay, thus eliminating the ordinary hurdles that individual litigants face in an ordinary lawsuit. *See In re Musicland*, 362 B.R. at 650–51 n.8 ("Bankruptcy provides the same procedural advantages as a class action. In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice.").

The Bankruptcy proof of claim process is intended to be more efficient and less costly precisely by having the estate and claimants address smaller claims that make sense to settle without the need for lawyers or litigation. *See In re Ephedra*, 329 B.R at 5. If the Court were to grant this Motion, the primary beneficiaries would not be putative class members, but rather Movant's attorneys, to the detriment of all other parties. *See In re Bally*, 402 B.R. at 621 n.4 ("Were [Movants] to prevail, their attorneys could seek payment of their fees from the Debtors' estates, necessarily diminishing the already limited distributions available to other creditors."); *In re Ephedra*, 329 B.R. at 10 ("The only real beneficiaries of applying Rule 23 would be the lawyers representing the class."); *In re Jamesway Corp.*, 1997 WL 327105, at *6 (citing *In re Sacred Heart*, 177 B.R. at 24 (effectively extending the bar date would only benefit (i) "putative class members who failed to exercise vigilance" and (ii) "the pocketbooks of their lawyers, who would obviously seek a contingency fee from all putative class members who failed to opt out of the class.")).

*Second*, given the June 2020 deadline under AB 1054 and the expedited timeframe required to conduct the fact-intensive, individual-specific inquiries that Mr. Alonzo's putative class raises, the Debtors would have to divert resources—time, money, and effort—from pressing confirmation, estimation, and related proceedings that require prompt resolution. At present, the Debtors have already made substantial progress in the administration of these Chapter 11 Cases and toward the timely and successful confirmation of a chapter 11 plan or reorganization. If Movant's class proof of claim is allowed to go forward, it could undermine the extraordinary effort the various stakeholders have

- 17 -

1   already committed to meeting the June 2020 deadline. The Court acknowledged this very real risk in

2   connection with a recent tentative ruling to continue a pending motion to lift the automatic stay when

3   the Court wisely observed that the "Debtors and their litigation counsel have very full plates in the

4   coming weeks dealing with claims filed up to the to-be-extended deadline, the Tubbs trial, and the

5   USDC Estimation proceedings….While [the Lift Stay Movant] no doubt wants to press for trial, the

6   overall interests of a successful reorganization are more compelling." Docket Order (Nov. 10, 2019).

7       *Third*, allowing these class proofs of claim under Bankruptcy Rule 7023 would create precisely

8   the undue delay that Courts have long sought to avoid in resolving the proof of claim process, and

9   would be entirely adverse to and disrupt the administration of these estates. *See, e.g.*, *In re Woodward*

10  *& Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) ("[A] bankruptcy case can

11  proceed no faster than its slowest matter and a class action may 'gum up the works' because until

12  complete, the bankruptcy court cannot determine the entitlement of the other creditors.") (internal

13  citation omitted). Contrary to the Movant's unsupported assertion that a class action would promote

14  efficiency, granting the Motion would add numerous procedural hurdles, such as whether to grant class

15  certification itself and would impose significantly higher discovery cost—a reality that Courts have

16  repeatedly recognized. *See In re Bally Total*, 402 B.R. at 621 n.5 ("[T]he parties have yet to undertake

17  the significant amount of discovery that will be required to litigate a class certification motion. After

18  the completion of class certification discovery and the inevitable briefing, the Court will conduct a

19  hearing on class certification. If the Court ultimately certifies a class, class members will need to be

20  noticed and given an opportunity to 'opt out' under Civil Rule 23. The parties will then engage in

21  merits discovery, which, in turn, will be followed by a complex and lengthy trial."); *In re Ephedra*, 329

22  B.R. at 5 ("Applying Rule 23 to the class claims now would initiate protracted litigation that might

23  delay distribution of the estate for years. Pre-certification discovery would be needed for three putative

24  class claims with three putative class attorneys, two of whom are competing to represent the same

25  consumers. If the classes were then certified, notice to class members followed by discovery on the

26  merits and the bankruptcy equivalent of a trial would further delay distribution.").

27                                                           - 18 -

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Finally*, Mr. Alonzo never objected to the Bar Date or the Notice Procedures at any time during this Court's consideration of those issues. Not only should Mr. Alonzo have moved for class certification *before* the Bar Date was established, he instead waited until the 11th hour to do so and, therefore, the class proof of claim should not be permitted to go forward. *In re. Comput. Learning Ctrs.*, 344 B.R. 79, 89 (Bankr. E.D. Va. 2006) ("A Rule 7023 motion should be filed as soon as practicable and should be denied if it comes so late as to prejudice any party."); *In re Sacred Heart*, 177 B.R. at 23 ("Timing is also significant. The most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors.").

The Court should deny the Motion because the claims administration process is superior to class actions and allowing Movant's proof of claim to proceed as a class would prejudice the Debtors, as well as other creditors, and adversely affect the administration of these estates.

## II. MOVANT DOES NOT SATISFY THE BASIC REQUIREMENTS OF CIVIL RULE 23

Although Movant's failure to satisfy any of the *Musicland* factors alone warrants denial of the Motion, he also fails to establish that the requirements of Civil Rule 23 could be satisfied here.

### A. The Movant Will Not Adequately Represent the Putative Class

Although the Motion attaches the declaration of Mr. Alonzo's attorney, it is merely a numbered cut-and-paste from the Motion and offers no evidence that class certification is appropriate, including whether the class representatives or class counsel are adequate to represent the class. *See generally* Declaration of John E. Lattin ("**Lattin Declaration**"). This alone renders the attempt at class certification fatally deficient. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc") (emphasis in original). A Court deciding whether to certify a class must engage in "rigorous analysis" of a Movant's claims and consider whether they are amenable to adjudication on a class-wide basis. *See General Tel. Co. v.*

- 19 -

*Falcon*, 457 U.S. 147, 161 (1982) ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."). It is therefore improper to certify a class without knowing how the claims can and likely will be tried. *See Daniels v. AMERCO*, No. 81 Civ. 3801 (RLC), 1982 WL 1856 (S.D.N.Y. June 7, 1982) (denying class certification because the evidentiary record was inadequate to demonstrate that the requirements of Civil Rule 23 were met).

*First*, Mr. Alonzo fails to adequately plead any facts that his class is so numerous and that the putative class is so large that joinder of all members is impracticable. Indeed, Movant merely speculates "a large estimate of potential members, numbering into the hundreds, if not thousands," and states that "PG&E reports having 24,000 employees." Mot. at 5. There is no evidence of a single class member—especially since there is a dispute whether even Movant falls into this class. These basic estimations are woefully inadequate to warrant class certification.

*Second*, Mr. Alonzo purports to represent individuals who may claim to have differing priority status. Numerous courts have held that such representation creates a "fundamental intra-class conflict" and is plainly improper. *In re Pac. Sunwear of Cal.*, 2016 WL 4250681, at *11–12. ("Interpreting Rule 23, the Second Circuit, citing United States Supreme Court decisions as well as its own, specifically rejects the argument that class representatives who hold claims in more than one subgroup can adequately represent any one of those subgroups. It explains: such class representatives will have the incentive to maximize their own total recovery rather than the recovery of any single group.") (citing *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997), *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011)). In *Pacific Sunwear*, the Bankruptcy Court refused to allow a general unsecured claimant to serve as a representative for holders of priority claims. *See id.* at *11–12.

Here, like the proposed representative in *Pacific Sunwear*, Mr. Alonzo—whose termination occurred post-petition and may be entitled to administrative expense status under the Bankruptcy

- 20 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Code—cannot adequately represent *all* members of the proposed class, which also holders of pre-petition general unsecured claims.  Moreover, any claimant who actually filed a proof of claim would be in conflict with class counsel here to the extent that this counsel seeks to take a piece of any recovery to creditors who actually filed a proof of claim.

**B.    Questions of Fact Affecting Individual Members of the Putative Class Predominate Over Any Common Questions of Fact**

An individualized factual inquiry will also be necessary to determine whether PG&E is liable to the purported class members.  Because there is no common or class-wide answer to any of the relevant liability-determinative questions, these individualized factual inquiries will need to be repeated, over and over again in a vast array of mini-trials, for every putative class member, thus rendering class treatment inappropriate.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 ("what matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original).

The timing of Movant's final paycheck (including all accrued and unused vacation) is governed by California Labor Code Section 201(a), which provides in relevant part:  "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Here, Movant does not dispute the amount of his final paycheck; he merely disputes whether he received it on a timely basis.  His sole claim for relief is under section 203, which provides, in relevant part:  "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [...], any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Thus, under the governing legal standard, the following questions must be answered to determine whether the Debtors are liable to Movant (or to any other member of the putative class that Movant seeks to represent):

- 21 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- What was the date of Movant's discharge, *i.e.*, by what date was PG&E obligated to pay all final wages under Labor Code Section 201(a)? *See Sansone v. Charter Commc'ns, Inc.*, Case No. 17 cv 1880-WQH-JLB, 2019 WL 4468174, *7 (S.D. Cal. Sept. 18, 2019) ("To prevail on claims brought pursuant to [Labor Code] § 201 and § 203, a plaintiff must prove that employment was terminated, which may be satisfied by proving that plaintiff was discharged or quit.").

- Did PG&E issue a final check that was "payable" on or before the date of Movant's discharge? *See* Labor Code Section 201(a).

- Even assuming that PG&E issued Movant's final check as "payable" later than Movant's discharge date, did PG&E do so *willfully*? *See* California Labor Code Section 203(a).

The answers to these questions are (i) in dispute as to Movant, and (ii) differ between and among each putative class member. *See Wal-Mart Stores, Inc.*, 564 U.S. at 349-50. Therefore, class certification should be denied.

### 1. Movant's Discharge Date Is Disputed

Movant's termination effective date was March 31, 2019; he remained on active and paid status through and including that date. *See* Slack Decl., Ex. C (PCR). Mr. Alonzo's final check request demonstrates that his discharge was effective March 31, 2019 and contains "Final Check Instructions" for delivery to Movant's superintendent/supervisor, identified as Steve Watson. *See id.* The PCR for Movant was made on March 26, 2019—several days before Movant's termination effective date— pursuant to both PG&E's consistent practice of paying discharged employees all final wages on or before their discharge effective date and California Labor Code Section 201(a). Additionally, as shown in his March 22, 2019 wage statement, Movant was paid for the full period ending March 31, 2019. *Compare* Slack Decl., Ex. B (March Wage Statement) *with* Slack Decl., Ex. H (February Wage Statement)[8]; *see also* Slack Decl., Ex. G (STIP Payment).[9]

Termination, for the purpose of triggering an employer's duty to payout all remaining vacation wages (under California Labor Code Section 227.3), requires an actual cessation of the underlying employment relationship. *See Int'l Bhd. of Boilermakers v. NASSCO Holdings Inc.*, 226 Cal. Rptr. 3d

---

[8] Movant was paid the same full monthly rate for February as he was for March. His pay for February is correspondingly lower than his pay for March because February has fewer days than March.

[9] Movant could not have received Q1 STIP payment had he not continued to be an active employee of PG&E through and including March 31, 2019.

- 22 -

206, 217 (Ct. App. 2017) ("[T]he term 'termination' means the permanent cessation of the employment relationship."); *Falkowski v. Imation Corp.*, 33 Cal. Rptr. 3d 724, 731–32 (Ct. App. 2005) ("[The ordinary meaning of the phrase 'interruption or termination' of employment . . . requires a severance of the employee's underlying employment relationship."). Because (i) PG&E's business records show the effective date of Movant's termination as March 31, 2019, (ii) Movant was paid through and including March 31, 2019, and (iii) Movant was paid a STIP incentive payment for the first quarter of 2019, for which a minimum eligibility requirement is employment on the last day of the quarter (namely, March 31, 2019), Movant cannot prove that he was terminated until that very date, March 31, 2019.

Movant alleges, without supporting evidence, that he was terminated on March 24, 2019. *See* Mot. at 3. PG&E is unaware of what evidence, if any, Movant may eventually rely on to support this assertion. Therefore, it is clear that an individualized factual inquiry will be needed to resolve the critical liability-related dispute of Movant's precise termination date, thus rendering class treatment inappropriate.

### 2. Whether Movant's Final Paycheck Was "Payable" Is In Dispute

Movant's final paycheck was "payable" on or before the date of Movant's discharge, March 31, 2019. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. C 06-2069 SBA, 2008 WL 413749, *3 (N.D. Cal. Feb. 13, 2008) ("The employer has a statutory obligation to tender or deliver final pay . . . Tender is to occur at the workplace premises . . . The employer is not to tender elsewhere[.]") (internal citations omitted). Movant's final paycheck was printed and shipped on (Thursday) March 28, 2019, and was actually delivered to the PG&E office at which Steve Watson (listed in the PCR as Movant's superintendent/supervisor who was based in Rocklin, California) at 7:28 a.m. on (Friday) March 29, 2019. Slack Decl., Ex. E (Shipping Confirmation).

Movant alleges, again without any supporting evidence, that he did not receive the final paycheck until April 4, 2019. *See* Mot. at 4. PG&E disputes this allegation for the reasons discussed immediately above. In any event, whatever the true facts, they are specific to Mr. Alonzo, and

- 23 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

completely undeveloped in the factual record (no discovery has taken place, and Movant himself has submitted no evidence showing either when he was terminated or when he actually received his paycheck). Given the need for a Court to determine these hotly disputed factual issues before a finding of liability (or non-liability) can be made, Movant's claim is unsuitable for class treatment. *See Alvarez v. Nordstrom, Inc.*, No CV 08-05856-AHM, 2011 WL 7982552, \*5–6 (C.D. Cal. May 24, 2011) (denying class certification, reasoning in relevant part: "the waiting time penalties [Movant] seeks under the Labor Code are not imposed merely because a terminated employee does not timely receive her final pay. Instead, both employer and employee must meet certain obligations, including the employer tendering final pay when due and the employee being present to receive that tender . . . . Assuming these obligations are met, an employer is subject to liability if its failure to pay is willful . . . . Late payment alone does not impose liability on the employer and there may be any number of factual circumstances underlying the tardiness . . . . [I]t is possible that the terminated employee herself could be responsible for the late payment."); *In re Taco Bell Wage & Hour Actions*, No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730, at \*4 (E.D. Cal. Sept. 26, 2011) (denying class certification, reasoning in relevant part: "The California final pay statutes (Lab. Code §§ 201, 202) are triggered not only by termination of employment, but by the associate performing his or her duty to be at the store to receive tender of final pay or to give [the employer] specific mailing instructions").

### 3. Whether Any Late Payment Was "Willful" Is Also In Dispute

A late payment that results from a clerical error or mistake is not "willful" for the purposes of section 203(a). *See Nishiki v. Meredith*, 25 Cal. App. 5th 883, 892 (2018) (citing *Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement*, 192 Cal. App. 4th 75, 84 (2011) ("Like inadvertence, clerical error denotes behavior that is accidental, not deliberate")); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 959–60 (N.D. Cal. 2016) (holding that where an employer's failure to pay employee's wages when those wages are due is a result of a "mistake," such failure was not "willful").

- 24 -

Here, Debtors also dispute whether the paycheck was late—Debtors contend it was not—and, if late, whether any such late payment was willful. For example, a late payment of final wages is not "willful"—and thus does not trigger section 203 penalties—if the late payment was the result of a clerical error or mistake. *See Nishiki*, 25 Cal. App. 5th at 892; *Heritage Residential Care*, 192 Cal. App. 4th at 84; *Cleveland*, 200 F. Supp. 3d at 959–60. There are many fact-specific and individualized possibilities that could account for when Mr. Alonzo received his paycheck—even assuming it was late—that do not rise to the level of a willful violation of California law, *e.g.*, Mr. Watson was not at the office on March 29, 2019, the mail-room clerk or front desk receptionist at the Rocklin office failed to route the shipment containing Movant's check appropriately, and so on.

Regardless of how the ultimate facts emerge as to Movant's individual circumstances, the facts relevant to the resolution of the "willful" dispute under section 203 have absolutely nothing to do with the resolution of a "willful" dispute as to any other member of the putative class who may claim to have received their final paycheck a few days late. Thus, answering the question of whether any late payments were "willful" presents yet another individualized factual inquiry, making this case completely unsuitable for class treatment.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Movant's Motion under Bankruptcy Rule 7023 be denied and that the Court grant the Debtors such other and further relief as is just and proper.

Dated: November 12, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: */s/ Richard W. Slack*
     Richard W. Slack

*Attorneys for Debtors*
*and Debtors in Possession*

- 25 -