WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF BENJAMIN P.D. SCHRAG (I) REGARDING IMPLEMENTATION OF THE DEBTORS' NOTICE PROCEDURES AND SUPPLEMENTAL NOTICE PLAN AND (II) IN SUPPORT OF THE DEBTORS' OBJECTION TO CLASS REPRESENTATIVE'S MOTION TO EXTEND APPLICATION OF FEDERAL RULE OF CIVIL PROCEDURE 23 TO CLASS PROOF OF CLAIM**<br><br>Related Docket Nos.: 4370<br>Date:  November 19, 2019<br>Time:  10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102 |

Pursuant to 28 U.S.C. § 1746, I, Benjamin P.D. Schrag, hereby declare as follows under penalty of perjury:

1. I am the Chief Business Development Officer of Prime Clerk LLC ("**Prime Clerk**"),[1] a chapter 11 administrative services firm whose headquarters are located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165. Except as otherwise noted, this Declaration is based upon my personal knowledge of the matters set forth herein, my review of relevant documents, and information provided to me by PG&E Corporation and Pacific Gas and Electric Company (collectively, the "**Debtors**") and their agents and professionals, including professionals at Weil, Gotshal & Manges LLP, Cravath, Swaine & Moore LLP, AlixPartners LLP, and Prime Clerk, and my prior experience in bankruptcy noticing, and if called and sworn as a witness, I could and would testify competently thereto.

2. I submit this declaration (the "**Declaration**") (i) to provide the Court with a report regarding the successful and timely implementation of the Debtors' robust multi-faceted plan and procedures for providing notice of the Bar Date and the procedures for filing proofs of claims to known and unknown claimants in the Debtors' Chapter 11 Cases, including Known and Unknown Fire Claimants (the "**Notice Procedures**"), and (ii) in support of the Debtors' objection, filed contemporaneously herewith, to the *Class Representative's Motion to Extend Application of Federal Rule of Civil Procedure 23 to Class Proof of Claim* [Docket No. 4370].

3. As detailed both in my prior declaration [Docket No. 1787] (the "**Initial Declaration**") and the declarations of Shai Y. Waisman, Chief Executive Officer of Prime Clerk [Docket Nos. 1786 and 2643] (the "**Waisman Declarations,**" and together with my Initial Declaration, the "**Prior Declarations**") filed in connection with the Debtors' motion seeking to establish a deadline for filing proofs of claim in the Chapter 11 Cases and to approve related noticing procedures [Docket No. 1784] (the "**Bar Date Motion**"), Prime Clerk is authorized by the Clerk of the Court to act as a claims and noticing agent and has significant experience acting in such capacity. On February 1, 2019, the Court entered an order appointing Prime Clerk as claims and noticing agent in these Chapter 11 Cases [Docket

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Bar Date Motion or Bar Date Order (each as defined below), as applicable.

No. 245]. A comprehensive description of my background, Prime Clerk's retention in these Chapter 11 Cases, and Prime Clerk's extensive qualifications, experience, and expertise acting as claims and noticing agents in other chapter 11 cases is set forth in the Prior Declarations.

## I. IMPLEMENTATION OF THE NOTICE PROCEDURES

4. By Order dated July 1, 2019 [Docket No. 2806] (the "**Bar Date Order**"), the Bankruptcy Court established October 21, 2019 at 5:00 p.m. (Pacific Time) (the "**Bar Date**") as the deadline for filing proofs of claim on account of any prepetition claim in the Chapter 11 Cases. In addition to establishing the Bar Date, the Bar Date Order, among other things, approved: (i) three different proof of claim forms, including a customized Fire Claimant Proof of Claim Form that was designed and agreed to by the TCC; (ii) three separate forms of Bar Date Notice to be mailed out to potential claimants and other parties in interest, including customized notices for the Debtors' Customers and Fire Claimants; and (iii) the Debtors' robust, multi-faceted Notice Procedures for providing notice of the Bar Date to known and unknown claimants, including Known and Unknown Fire Claimants. In accordance with the Bar Date Order, the Debtors commenced implementation of their Notice Procedures on July 1, 2019 and continued their efforts through the Court-approved Bar Date of October 21, 2019 at 5:00 p.m. Pacific Time.

5. As set forth in the Prior Declarations, the Debtors' Notice Procedures were broad and robust, and included both extensive direct mailings to known claimants, including approximately 50,000 Known Fire Claimants and the Debtors' millions of Customers, as well as a multi-faceted supplemental noticing campaign (the "**Supplemental Notice Plan**") that was designed to maximize reach to all unknown claimants, including Unknown Fire Claimants, in a variety of different ways, including through (i) multiple local and national newspaper and magazine publication notices, (ii) digital advertising, including social media, social influencers, and other paid Internet search listings, (iii) television and radio advertising, (iv) press releases, and (v) extensive community and boots on the grounds outreach efforts. The summary below focuses on the results of the Debtors' extensive direct noticing efforts and also includes a discussion of the claims filed and received by Prime Clerk prior to the Bar Date.[2] In

---

[2] An in-depth discussion of the results of the Debtors' Supplemental Notice Plan is set forth in the Declaration of Jeanne C. Finegan, submitted contemporaneously herewith.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

total, the Debtors expended more than $11 million on Bar Date Notice mailings and noticing efforts, including approximately $7.2 million on direct mailings, approximately $440,000 on publication notices, and approximately $2.9 million on the other aspects of the Supplemental Notice Plan.[3]

6. As set forth in further detail below, implementation of the Notice Procedures has been, in my opinion, an absolute success and far exceeded the anticipated results as described to the Court in connection with approval of the Bar Date Motion or the results typically achieved in other high-profile chapter 11 cases, including chapter 11 cases involving mass tort claims.

***Direct Mailings***

7. At the direction of the Debtors, Prime Clerk mailed over 6.5 million copies of the Bar Date Notices and Proof of Claim Forms to potential claimants in these Chapter 11 Cases. More specifically, Bar Date Notices were served on the following categories of known claimants:

- In accordance with the Bar Date Order, Prime Clerk served the Fire Claim Bar Date Notice and Fire Claimant Proof of Claim Form on approximately 50,000 Known Fire Claimants – these are individuals who, prior to the Petition Date, had already commenced actions against the Debtors or provided actual notice of their intent to commence actions. Prime Clerk also served the Fire Claimant Bar Date Notice and related proof of claim form on approximately 17,000 additional potential Fire Claimants that were sourced from proprietary satellite data information provided by a third party satellite data expert retained by the Debtors.

- At the direction of the Debtors and in accordance with the Bar Date Order, Prime Clerk served the Standard Proof of Claim Form and Customer Bar Date Notice on all of the Debtors' approximately 6.2 million Customers, which I understand also included many potential Fire Claimants.

- In accordance with the Bar Date Order, Prime Clerk served the Standard Proof of Claim Form and Standard Bar Date Notice on approximately 141,000 potential creditors, contract counterparties, and other parties in interest. Prime Clerk additionally served the Standard Bar Date Notice on approximately 11,300 funded debt claimants and approximately 111,000 holders of the equity interests in PG&E Corp.

8. A chart summarizing the direct mailings completed by Prime Clerk at the direction of the

---

[3] Although the Debtors' have approximately 16 million customers, that equates to approximately 6.2 million unique customer accounts to which the Debtors provided actual notice of the Bar Date. The corresponding decrease in cost from sending fewer mailers than anticipated accounts for the difference in the estimated cost versus the final cost of the Notice Procedures.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Debtors is set forth below:

| Category | Approximate Number of Direct Mailings | Notice(s)/Form(s) Received |
|---|---|---|
| Customer List | 6,200,000 | A) Customer Bar Date Notice<br>B) Standard Proof of Claim Form |
| Known Fire Claimants | 50,000 | A) Fire Claim Bar Date Notice<br>B) Fire Claimant Proof of Claim Form |
| Potential Fire Claimants Identified from GIS Data | 17,000 | A) Fire Claim Bar Date Notice<br>B) Fire Claimant Proof of Claim Form |
| Creditor Matrix | 50,000 | A) Standard Bar Date Notice<br>B) Standard Proof of Claim Form |
| Schedule D/E/F Parties | 75,000 | A) Standard Bar Date Notice<br>B) Standard Proof of Claim Form |
| Schedule G Contract Counterparties | 16,000 | A) Standard Bar Date Notice<br>B) Standard Proof of Claim Form |
| Subrogation Claimants | 225 | A) Fire Claim Bar Date Notice<br>B) Wildfire Subrogation Claimant Proof of Claim Form |
| Noteholders | 11,300 | A) Standard Bar Date Notice |
| Equity Holders | 111,000 | A) Standard Bar Date Notice |
| Brokerage Nominees | 1,352 | A) Standard Bar Date Notice |
| **Total:** | **6,531,877** | |

9. Affidavits certifying that service on the aforementioned parties was carried out at the Debtors' direction and in accordance with the Bar Date Order, the Bankruptcy Code, and otherwise applicable law, and the method of such service, were filed by Prime Clerk on July 23, 2019 [Docket No. 3159], July 30, 2019 [Docket No. 3262], and August 8, 2019 [Docket No. 3474].

10. As the Court is aware, due to the destruction of homes and the displacement of certain Known and Unknown Fire Claimants, returned and undeliverable mail was of particular concern to the Debtors in these Chapter 11 Cases. To reach claimants who had changed their address, Prime Clerk used the U.S. Postal Service Change of Address Database. For mail that was returned with a forwarding address, Prime Clerk forwarded notice to the new address. For mail that was returned and marked

undeliverable, Prime Clerk engaged the TransUnion Skip Tracing Database to search for alternative addresses, where Prime Clerk then sent notice. Through this process, Prime Clerk was able to forward approximately 69% of returned mail to an alternative address. An affidavit of service certifying that these supplemental remailings occurred was filed on October 31, 2019 [Docket No. 4543].

11. As set forth in the Bar Date Order, email notice was used by the Debtors to supplement hard-copy notice. I understand the Debtors sent email notice to approximately 4.2 million customer accounts for which the Debtors have email information.

*Claim Centers*

12. In accordance with the Bar Date Order, Claim Centers were created as places where members of the affected communities could go during normal business hours to ask general questions about the claims process, obtain Proof of Claim Forms, and hand deliver Proofs of Claim and receive a date-stamped receipt. In addition, the Bar Date Notices were posted in all of the Debtors' billing service centers (approximately seventy (70) service centers in total). Approximately 3,900 individuals visited and talked to an agent at the Claim Centers, and a total of approximately 19,200 proofs of claim were filed in-person at the Claims Centers, as detailed in the following chart:

| Location | Total Visitors as of 10/21/19 | Total Claims Received as of 10/21/19 |
|---|---|---|
| Redding | 267 | 57 |
| Chico | 763 | 6,859 |
| Oroville | 723 | 191 |
| Marysville | 448 | 1,110 |
| Napa | 752 | 5,195 |
| Santa Rosa | 952 | 5,792 |
| **TOTAL** | **3,905** | **19,204** |

*Case Website, Call Centers and Email Notification*

13. As described in the Bar Date Motion, the Debtors, through Prime Clerk, have established a dedicated Case Website and Call Center reachable by toll-free numbers. The Case Website and toll-free numbers have been prominently displayed in all printed notice documents and other paid advertising. The Case Website provided notice of the Bar Date and all requirements to comply therewith, and other relevant information relating to the Chapter 11 Cases and call center operators conveyed this

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

information to inquiring callers. In addition to the main Case Website, Prime Clerk also maintained a page specifically tailored to, and designed for, the holders of Fire Claims (the "**Fire Claimant Website**"), which, among other things, informed them of certain key dates and deadlines, allowed them to view certain key documents in the Chapter 11 Cases free of charge, and allowed holders of Fire Claims and other creditors to register their email addresses and consent to e-mail service of certain notices required to be sent during the Chapter 11 Cases, as well as a website with similar information designed specifically for the Debtors' Customers (the "**Customer Website**" and, together with the Case Website and the Fire Claimant Website, the "**Case Websites**"). Copies of the various Proof of Claim Forms were posted and made available for download on the Case Website, which also were linked to the Fire Claim Website and Customer Website. Translations of the Customer Bar Date Notice in Spanish, Mandarin, Tagalog, Vietnamese, and Korean language were made available for download on the Customer Website. Prime Clerk estimates that there were in excess of 14,000 individual downloads of the Bar Date Notices and Proof of Claim Forms from the Case Website.

14. The Case Websites collectively received over 784,255 page views, of which 475,073 occurred after July 1, 2019, when this Court approved the Bar Date and Notice Procedures. Additionally, Prime Clerk responded to 1,390 email inquiries submitted via the Case Websites.

15. The Call Center received over 8,190 calls, voicemails, and live chats. When Prime Clerk received a voicemail or live chat after hours, Prime Clerk reached out the next day to follow up whenever possible. Approximately 2,000 of these calls, voicemails, and live chats came from Fire Claimants.

## II.  CLAIMS RECEIVED AS OF THE BAR DATE

16. As a result of the Debtors' extensive Notice Procedures, including the Supplemental Notice Plan, over 85,000 claims were received prior to the Bar Date, of which an estimated nearly 72,000 are fire-related. Claims have been received online, by mail, in person at Claim Centers, and through the Debtors' efforts to coordinate uploading and claims sharing from the BrownGreer database maintained by certain of the attorneys for the individual Fire Claimants.

17. Below is a breakdown of the total number of claims that were filed before the Bar Date:

| Vehicle | Claims Received |
|---|---|
| Online (via the Case Websites / | 17,210 |

| Vehicle | Claims Received |
|---|---|
| Court Website) | |
| Mail | 7,752 |
| In Person at Claim Centers | 19,204 |
| BrownGreer | 41,604 |
| **Total** | 85,770 |

18. Based on my experience, the 85,000 claims filed in these Chapter 11 Cases exceeds the absolute number of claims filed in most recent, high-profile bankruptcies including other chapter 11 cases involving mass torts. For example:

- Takata's chapter 11 cases, *In re TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del. 2017), had 58,257 claims filed, despite mailing 88 million notices directly to claimants.
- Lehman Brothers' chapter 11 cases, *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (SCC) (Bankr. S.D.N.Y.), had 68,263 claims filed, despite being the largest chapter 11 case in history and having a global creditor base.
- General Motors' chapter 11 cases, *In re Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y.), had approximately 71,000 claims filed.
- Toys 'R' Us' chapter 11 cases, *In re Toys "R" Us, Inc.* Case No. 17-34665 (KLP) (Bankr. E.D. Va.), had 22,924 claims filed.
- RadioShack's chapter 11 cases, *In re RS Legacy Corp.*, Case No. 15-10197 (BLS) (Bankr. D. Del.), had 19,121 claims filed.
- PG&E's 2001 chapter 11 case, *In re Pacific Gas & Elec. Co.*, Case No. 01-30923 (DM) (Bankr. N.D. Cal.), had approximately 13,500 claims filed.
- Residential Capital's (ResCap) chapter 11 cases, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.), had 7,500 claims filed.
- Washington Mutual's chapter 11 cases, *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del.) had 4,100 claims filed.

### III. CONCLUSION

19. The Noticing Procedures in these Chapter 11 Cases, as implemented, have exceeded projected and anticipated results contemplated when they were approved on July 1, 2019, achieving a broad reach that is virtually unmatched in my experience in chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 11, 2019

New York, New York

/s/ Benjamin P.D. Schrag
Benjamin P.D. Schrag

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119