



November 7, 2019

Honorable Dennis Montali
United States Federal Bankruptcy Court
Northern District of California
Phillip Burton Federal Building and U.S. Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Judge Montali:

Case Number 19-30088-DM

**We are experiencing a Malthusian Trap**

PG&E's responsibilities have grown to the point that is can no longer feed itself or withstand the natural threats to business survival.

**PG&E was once a "good company."**

PG&E pre-1995 was an all-in-one electric IOU; it was a "good company." PG&E post-1995 removed the generation assets and created a Transmission Owner and a Distribution company. PG&E post-2001 was a re-emergent post-bankruptcy company. PG&E post-2004 added renewables advocacy. All under the watch of the CPUC and legislature.

In the context of being a well-regulated IOU, the pre-bankruptcy #1 PG&E delivered a commodity essential to health and welfare, reliably and at a reasonably least cost. This performance of service was done in the context of the constitutional compact put in place with the adoption of the federal Public Utility Holding Act of 1932.

**PG&E today**

In the past two decades (post-electrical restructuring), PG&E has been forced to become more of a reluctant tax collector, suffering under disjointed directives that forced them to seek protection under the federal bankruptcy court for the second time in so many decades. In this current bankruptcy, special interest groups, coastal municipalities, and counties, debtors, and sophisticated investors seek to game the court proceedings and the CPUC proceedings to maximize their gain, leaving Central Valley Ratepayers on the hook due to their captive situation. These sophisticated classes would "put" burdens on the Central Valley Ratepayers bound by contract. The only alternatives are: be a captive price taker or be a victim of some scheme to pick off the premium rate base, or one could conceivably exit their contract by some expensive arrangement, all alternatives lead to increasing PG&E customer rates. Most of the current liabilities flow from limitations on tree cutting imposed by ordinances and other legislative fiat (not from within PG&E's boardroom). The CPUC and the bankruptcy court should give significant weight to our plea seeking a reasonable outcome that can prevent both economic failure of the Central Valley Ratepayers and future business failure of our energy provider.

Our primary interest is to return some focus to the court (and ultimately CPUC and other governing bodies) concerning fairness and balance in this steady shift: from the rational single average rate (which served us until 2001) to the various synthetic sliding scale pricing structures (TOU and Tiers), all of which disproportionally punish the Central Valley Ratepayers whose disposable income is far below the PG&E service territory average. Central Valley Ratepayers will suffer health risks due to future erosion of reliable service at the expense of poor decisions, including those of the CPUC and other governing decision-makers who are answerable to parties other than the Central Valley Ratepayer-the bankruptcy court can set rational boundaries to this process. We fear that the random entanglements stemming from further unbound efforts to transform PG&E, using outdated regulatory methods, will lead back to failure, the cost of which Central Valley Ratepayers disproportionately bear.

We want to see a robust utility service that can meet our current needs and prepare well in advance for future challenges while providing reasonable costs.

**Was this problem the result of climate change, a stack of poor policies, or false economy of scale?**

Malthus would argue that growth will eventually lead to collapse. PG&E experienced an increase in regulation and fund collection and reallocation, like some evolutionary misfire. With PG&E's size one would reasonably expect that PG&E rates would still reflect the economy of scale (if such a concept is valid), yet other smaller utilities seem to be able to maintain system integrity and deliver energy reliably and at least cost. SMUD has a winter off-peak rate of 9.69 ¢/kWh, and its peak is 16.11¢/kWh and is solvent and whole. Turlock Irrigation District, as another example, has an off-peak rate of 10.16¢/kWh, and its peak rate is 14.36¢/kWh; yet they remain solvent and whole. How is it that the climate does not adversely affect them too? It seems service territory size and regulatory burden may be the factor. In a natural world of business risk and survival, PG&E's board and employees are regularly tasked with adjusting to Sacramento's confounding experimental social engineering and are still tasked with meeting the increasingly canard-like obligations to continue operations by consent of the public it serves under a constitutional compact allowing for certain critically needed monopolies.

**The CPUC, acting on behalf of special interests, CARB, CEC, CAISO, and the legislature, has redefined what was once an IOU into <u>what they believe is a</u> "good company"; performing to their whims concerning social good but failing in all truly critical aspects. The Office of Ratepayer Advocates has effectively left the scene of this crime.**

The politically easy path is to accept the finger-pointing at PG&E as if they are the sole source of this problem plaguing the state. What roles do the CPUC, CEC, and CAISO (not to mention the legislature and local governing bodies) have in this; have they no obligation of responsible oversight?[1] Politically expedient solutions (such as finger-pointing) will not solve this very technically nuanced legal, physical, and social problem, nor will more of the same poor planning. Each party having management and oversight duty failed at every step of the way since the CPUC-led electrical restructuring in 1995. Any particular interest group that lobbied and schemed to erode PG&E's infrastructure line items earmarked for new construction, reinforcement, and maintenance are equally culpable in this disaster. After the first bankruptcy the CPUC supposedly moved to ensure no other IOU would go bankrupt. However, in the following 15 years, PG&E's business resiliency was eroded to such a point by non-utility burdens that 0.01% of PG&E's residential rate base took out the entire company. These fire victims deserve compensation; the question is not who can pay, but who should ultimately pay?

---

[1] Note that Sonoma county like many other northern tier counties has a tree ordinance that restricts a utility from the wholesale removal of nuisance tress. It is reasonable to assume the fires are not set by the 230kV or 500 kV system and most likely are due to issues with sub-transmission to distribution voltages at the community frontier. There has been no explanation as to how much this type of tree management created the fire conditions that destroyed many acres of northern tier counties. We should study the fires in the context of voltages of wires causing the fires and work to correct the deficiencies in General Order 95.

We all deserve a company that is allowed to function at a higher level of performance, reflecting each geographic area's needs and Willingness-to-Pay for the nature of the service they desire.

Central Valley residents' "wealth" will be confiscated via PG&E as it is forced to act as the state's idea of a "good company."[2] Can the average Central Valley resident survive the Ponzi-like cash flow solution to the "gordian knot" area-wide planning under so many conflicting instructions? The northern tier counties should not have any tree trimming ordinances more restrictive than the rest of the service territory unless they are willing to live with the risk and long-term cost that they create.

**PG&E should be five or six good companies.**

PG&E should be allowed to reemerge from bankruptcy as a group of geographically separate business units, an independent generation contract holding company, and a different transmission company, each having distinct rate-making criteria and hearings. This new company would be similar in structure to the California Water Service.

We believe that the CPUC has itself become a taxing authority, and it has forced IOUs to become defacto tax collectors. We believe the best solution in this second bankruptcy is for PG&E to compensate the victims fairly(clear the books), then separate the entire service territory into a variety of rational business units (each with its own shares and ratepayers, subject to locally-focused rate making and management while allowing all to remain under the PG&E umbrella servicing its overarching obligations to the various groups of ratepayers and shareholders.

PG&E is our service company, and we have to take charge of our destiny and work together to restore this good company, or we will be facing more significant issues in the future during our peak summer heat while ratepayers in the more comfortable climate regions enjoy the benefits afforded them through our high bills and our energy generation. Like Alexander the Great, we need the CPUC and the bankruptcy court to cut the Gordian Knot. We request that the bankruptcy court grant us time to organize into a representative group of concerned ratepayers, who are captive customers by our contracts, and the nature of the constitutionally derived monopoly power at stake, and not merely have us moved about as chattels.

Respectfully,

*Michael Turnipseed*

Michael Turnipseed
Executive Director

---

[2] This would apply to any other large service territory agency that includes the northern tier with the southern central valley.

Kern County Taxpayers Association 1401 19th Street, Ste 200, Bakersfield, CA 93301 (661)322-2973