# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                              **Debtors.**<br><br>□ Affects PG&E Corporation<br><br>□ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**SECOND INTERIM APPLICATION OF LINCOLN PARTNERS ADVISORS LLC FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019**<br><br>Hearing Date: TBD<br><br>Objection Date: December 4, 2019 |

| | |
|---|---|
| To: | The Notice Parties |
| Name of Applicant: | Lincoln Partners Advisors LLC |
| Authorized to Provide Professional Services to: | Financial Advisor to the Official Committee of Tort Claimants |
| Date of Retention: | March 1, 2019 |
| Period for which compensation and reimbursement are sought: | June 1, 2019 through September 30, 2019 |
| Amount of compensation and reimbursement are sought: | $4,867,813.00 (100%) |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $98,444.49 |

# SUMMARY OF SECOND INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 9/19/19 (DE 3938) | 6/1/19-6/30/19 | $938,498.75 | $20,845.23 | $750,799.00 | $20,845.23 | $750,799.00 | $20,845.23 | $187,699.75 |
| 10/15/19 (DE 4211) | 7/1/19-7/31/19 | $1,027,310.50 | $18,427.10 | $821,848.40 | $18,427.10 | - | - | $1,045,737.60 |
| 11/07/19 (DE 4596) | 8/1/19-8/31/19 | $1,440,444.75 | $27,960.64 | $1,152,355.80 | $27,960.64 | - | - | $1,468,405.39 |
| 11/14/19 (DE 4719) | 9/1/19-9/30/19 | $1,461,559.00 | $31,211.52 | $1,169,247.20 | $31,211.52 | - | - | $1,492,770.52 |
| **Total for Second Interim Fee Application** | | **$4,867,813.00** | **$98,444.49** | **$3,894,250.40** | **$98,444.49** | **$750,799.00** | **$20,845.23** | **$4,194,613.26** |

Objections to Monthly Fee Statements:  No objections have been filed regarding the Fourth and Fifth Monthly Fee Statements for June and July 2019. The objection deadline for the Sixth and Seventh Monthly Fee Statements for August and September 2019 remain outstanding.

# SUMMARY OF HOURS INCURRED BY PROFESSIONAL DURING

# THE APPLICATION PERIOD

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Brent Williams | Managing Director | $    1,195 | 878.2 | $  1,049,449.00 |
| Alex Stevenson | Managing Director | 1,195 | 278.0 | 332,210.00 |
| Brendan Murphy | Managing Director | 1,095 | 983.0 | 1,076,385.00 |
| Sherman Guillema | Director | 895 | 162.8 | 145,706.00 |
| Peter Gnatowski | Vice President | 795 | 1,084.0 | 861,780.00 |
| Matt Merkel | Associate | 695 | 612.7 | 425,826.50 |
| Erik Ellingson | Associate | 695 | 244.7 | 170,066.50 |
| Naeem Muscatwalla | Senior Analyst | 495 | 333.1 | 164,859.75 |
| Riley Jacobs | Analyst | 395 | 691.8 | 273,261.00 |
| Alex Gebert | Analyst | 395 | 842.7 | 332,866.50 |
| Zack Stone | Analyst | 395 | 234.2 | 92,509.00 |
| Jane Su | Professional Support | 250 | 10.7 | 2,675.00 |
| **Subtotal** | | | **6,355.9** | **$  4,927,594.25** |
| Less: 50% Discount for Non-Working Travel Time | | | | (59,781.25) |
| **Grand Total** | | | | **$  4,867,813.00** |

# SUMMARY OF HOURS INCURRED BY PROJECT CATEGORY DURING

# THE APPLICATION PERIOD

| Task Code | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 3 | Financial Analysis (Requested by Counsel, or Otherwise) | 530.7 | $ 360,796.50 |
| 4 | 13-Week Cash Flow / MOR / Liquidity Analysis | 164.1 | 107,669.50 |
| 5 | Due Diligence of Debtor's Assets and Liabilities | 314.8 | 220,606.00 |
| 6 | Due Diligence of Wildfire Safety Plan and Related Analysis | 321.5 | 250,882.50 |
| 7 | Debtor Professionals - Diligence / Meetings / Calls | 100.5 | 89,547.50 |
| 8 | UCC Professionals - Diligence / Meetings / Calls | 10.5 | 9,707.50 |
| 9 | Other Professionals / Interested Parties - Diligence / Meetings / Calls | 112.2 | 128,179.00 |
| 10 | Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls | 197.0 | 212,625.00 |
| 11 | Assist Counsel in Responses / Objections to Bankruptcy Court Motions | 99.5 | 80,272.50 |
| 12 | Committee Related Matters - Diligence / Meetings / Calls | 444.8 | 459,046.00 |
| 13 | Bankruptcy Filings, Motions and Other Document Review | 471.9 | 319,065.75 |
| 14 | Review of Executory Contracts and Related Analysis | 156.7 | 102,776.50 |
| 15 | Review of Employee-Related Matters, Including Retention Plans | 182.5 | 126,627.50 |
| 16 | Review of Claims and Related Analysis | 178.3 | 138,548.50 |
| 17 | Asset Sale(s), Strategic Alternatives, and Related Analysis | 112.3 | 85,088.50 |
| 18 | Analysis of New Debt or Equity Capital | 159.6 | 118,262.00 |
| 19 | Analysis of Pro-Forma Capital Structure, and Related Analysis | 161.6 | 103,972.00 |
| 20 | Benchmarking and Related Analysis | 311.8 | 183,851.00 |
| 21 | Term Sheets, Plan, and Disclosure Statement Analysis | 1,087.4 | 886,123.00 |
| 22 | Review of Discovery Documents and Deposition Preparation (Witnesses) | 39.5 | 39,932.50 |
| 23 | Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance | 131.2 | 123,284.00 |
| 24 | Business Plan | 119.1 | 100,874.50 |
| 25 | Regulatory and Legislative Matters, and Related Financial Analysis | 347.8 | 239,651.00 |
| 26 | Travel Time - Non Working Travel | 107.5 | 119,562.50 |
| 27 | Project Administration | 183.3 | 143,492.00 |
| 31 | Fee Application Preparation | 309.8 | 177,151.00 |
| **Subtotal** | | **6,355.9** | **4,927,594.25** |
| | Less: 50% Discount for Non-Working Travel Time | | (59,781.25) |
| **Grand Total** | | **6,355.9** | **$ 4,867,813.00** |

Note: Task codes were modified between June 2019 and July 2019 fee applications to account for additional work streams

**SUMMARY OF EXPENSES INCURRED DURING**

**THE APPLICATION PERIOD**

| Expense Type | Amount |
|---|---:|
| Airfare | $35,342.39 |
| Car Rental | $842.08 |
| Data Processing / Materials For Committee | $69.35 |
| Ground Transportation (In-Town - Taxi/Uber/Car Service) | $3,119.34 |
| Ground Transportation (Out-of-Town - Taxi/Uber/Car Service) | $4,576.44 |
| Hotel Stay (Traveling) | $21,703.83 |
| Internet/Online Fees | $436.70 |
| Meals - In Town Only | $1,689.27 |
| Meals - Out-of-Town Travel Only | $4,670.51 |
| Other / Miscellaneous | $660.32 |
| Parking | $1,245.80 |
| Printing/Photocopying (In-House) | $3,284.20 |
| Research (Databases) | $18,000.00 |
| Teleconferencing | $1,324.76 |
| Transcripts | $1,479.50 |
| **Total** | **$98,444.49** |

Lincoln Partners Advisors LLC ("**Lincoln**" or the "**Applicant**"), the financial advisor for the Official Committee of Tort Claimants (the "**TCC**"), representing the largest group of stakeholders in the jointly administered bankruptcy cases (the "**Cases**") of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**"), hereby submits its Second Interim Fee Application (the "**Fee Application**") for allowance of compensation for professional services performed by Lincoln for the period commencing June 1, 2019 through and including September 30, 2019 (the "**Application Period**") and reimbursement of its actual and necessary expenses incurred during the Application Period. The applicant seeks interim approval of compensation and reimbursement of expenses totaling **$4,966,257.49,** which sum represents compensation for professional services rendered in the amount of **$4,867,813.00** and reimbursement for expenses incurred in the amount of **$98,444.49.** The Applicant is seeking entry of an order pursuant to sections 330, 331, and 1103 of title 11, United States Code (the "**Bankruptcy Code**"); Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); the Local Rules for the United States Bankruptcy Court for the Northern District of California (the "**Local Rules**"); the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"); the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014 (the "**Narrative Guidelines**"); and the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professional*s, entered on February 27, 2019 (the "**Interim Compensation Order**" and collectively, the "**Guidelines**").

This Application is based upon the contents hereof, together with the exhibits; the certification of Brent C. Williams filed concurrently herewith; the pleadings, papers, and records on file in the cases; and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Narrative Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit A.**

This Fee Application summarizes the services rendered by Lincoln on behalf of the TCC during the Application Period. A breakdown of the hours and fees by professional is attached hereto as **Exhibit B**. A breakdown of the hours and fees by task code is attached hereto as **Exhibit C**. A breakdown of expenses by expense type is attached hereto as **Exhibit D.** A detailed copy of the time records by professional and by task code is attached hereto as **Exhibit E**. A detailed copy of the expense records by professional and expense type is attached here to as **Exhibit F.**

## TERMS AND CONDITIONS OF EMPLOYMENT

1.      Lincoln is compensated on an hourly fee basis, plus reimbursement of actual and necessary expenses incurred. For further information regarding the terms and conditions of Lincoln's retention, please refer to the Retention Order (defined below).

## RELEVANT BACKGROUND

2.      On January 29, 2019 (the "**Petition Date**"), the Debtors filed the Cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

3.      On February 15, 2019, the Office of the United States Trustee ("**UST**") filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453]. Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530]. The current members of the TCC are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v) Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen M. Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson.

4.     On March 30, 2019, the TCC filed its *Application to Employ Lincoln Partners Advisors LLC as Financial Advisor Effective as of March 1, 2019* [Docket No. 1134] (the "**Retention Application**").   On May 10, 2019, the Court entered its *Order Approving the Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. 2014 and 5002 to Retain and Employ Lincoln Partners Advisors LLC as Financial Advisors Effective as of March 1, 2019* [Docket No. 1976] (the "**Retention Order**").

5.     On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("Fee Examiner") in the Cases [Docket No. 2267]. Lincoln has communicated with the Fee Examiner, and it has supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

## RELIEF REQUESTED AND BASIS FOR RELIEF

6.     This Application is Lincoln's second interim request for allowance and payment of fees and expenses as financial advisor to the TCC.

7.     Pursuant to Bankruptcy Code §§ 330 and 331, Lincoln respectfully requests entry of an order, on an interim basis, allowing and approving $4,966,257.49, which sum represents compensation for professional services rendered in the amount of $4,867,813.00 and reimbursement for expenses incurred in the amount of $98,444.49. The services and expenses for which interim compensation is sought herein were rendered for and on behalf of the TCC. Lincoln respectfully submits that the nature of the services has been necessary and beneficial to the TCC in maximizing their recoveries.

8.     Lincoln's retention and corresponding engagement scope have been to serve as the financial advisor to the TCC during the pendency of the Cases. While the Official Committee of Unsecured Creditors ("**UCC**") retained FTI Consulting ("**FTI**") and Centerview Partners ("**Centerview**") to serve two separate financial advisory roles, the TCC's focus on efficiency and cost-effectiveness has required Lincoln to perform both functions (e.g. investment banker and financial advisor to the TCC). The TCC and its counsel Baker & Hostetler LLP ("**Baker**" or "**Counsel**") required Lincoln to dedicate senior resources to many specific assignments and case

issues in these matters. This has also been reflected in the professionals involved and hours worked.

9. That said, in an effort to streamline and control professional fees and expenses where possible, Lincoln endeavored to minimize the expenditure of time by its senior members and to delegate responsibilities to junior members, associates, analysts, and other employees as appropriate.

10. Further, Lincoln has made every effort to ensure that this Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its team members, as well as with other retained professionals in these cases. Lincoln has supplied the Fee Examiner and the UST with Lincoln's monthly fee statements in an electronic format (Excel) Lincoln believes is acceptable to the Fee Examiner and the UST. Pursuant to Bankruptcy Code § 504, Lincoln has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Lincoln in the Bankruptcy Cases, other than as may be shared among the members of Lincoln.

### SUMMARY OF PROFESSIONAL SERVICES RENDERED

11. The Debtors' Cases are among the largest and most complex cases in history. There are many issues and considerations impacting the TCC and tort claimants' potential recoveries. The services rendered by Lincoln include, but are not limited to, the following project billing categories. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below.

a. <u>Financial Analysis (Requested by Counsel, or Otherwise) (003)</u>: Throughout the Application Period, Lincoln spent significant time evaluating the Debtors' financial performance and business operations, including reviewing historical results, operating metrics, earnings releases, outstanding assets and liabilities, and financial forecasts. Lincoln reviewed and analyzed information provided by the Debtors; public SEC filings, such as the Debtors' quarterly and annual financial statements; investor presentations; and other public sources. Lincoln created various models and analyses, including an operating financial model, a waterfall recovery model, and analyses related to the Debtors' historical and projected capital expenditures, outstanding

make-whole premiums, and other financial and operational analyses. This assisted Counsel and the TCC in understanding the Debtors' financials position, outstanding claims, assets and liabilities, and potential recoveries to tort claimants across various scenarios and assumptions.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **530.70 hours** and $**360,796.50** in fees.

        b.    <u>13-Week Cash Flow / MOR / Liquidity Analysis (004)</u>: This category encompasses services rendered related to the Debtors' liquidity, cash flow, and monthly operating reports. Throughout the Application Period, Lincoln monitored the Debtors' liquidity position and cash flow results compared to initial DIP forecast and subsequent updated monthly cash flow forecasts. Lincoln reviewed and analyzed the bi-weekly actual to budgeted results, reviewed the assumptions driving the updated cash flow forecasts furnished by the Debtors, and compared original cash flow forecasts to updated forecasts to understand the key drivers of the variances and changes. Based on the review of the liquidity and cash flow results, Lincoln created diligence questions and made numerous requests to the Debtors in order to understand the variances, changes, and assumptions. The diligence requests were supplemented with diligence calls with the Debtors, when applicable. Lincoln also reviewed the Debtors' May through August monthly operating results to assess and evaluate the Debtors' monthly financial performance, account balances of certain assets and liabilities, including wildfire-related claims and reserves, and payments on pre-petition obligations, among others. Lincoln frequently advised Counsel and the TCC regarding the Debtors' liquidity and cash flow position, actual versus forecasted results, and future projections.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **164.10 hours** and $**107,669.50** in fees.

        c.    <u>Due Diligence of Debtor's Assets and Liabilities (005)</u>: Time billed in this category relates to Lincoln's time spent reviewing, analyzing, and performing diligence in order to understand and evaluate the Debtors' comprehensive portfolio of assets and liabilities. Lincoln's diligence efforts during the Applicable Period focused on reviewing and evaluating the Debtors' insurance policies; corporate, gas and electrical assets; liabilities related to fire claims; and other

financial and operational due diligence requests. Lincoln's analysis included assisting Counsel with researching and evaluating the Debtors' historical disclosures for wildfire and non-wildfire liabilities, including the 2015 Butte Fires, 2017 North Bay Fires, and the 2018 Camp Fire. Lincoln created presentations for Counsel and the TCC to summarize and analyze the Debtors' operations, assets, and liabilities.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **314.80 hours** and **$220,606.00** in fees.

d. <u>Due Diligence of Wildfire Safety Plan and Related Analysis (006):</u> During the Application Period, Lincoln spent time reviewing and analyzing the Debtors' wildfire mitigation and safety efforts, including reviewing and evaluating regular updates to the Wildfire Safety Plan ("**WSP**"). Lincoln participated in meetings and calls with the Debtors' management and their advisors to discuss the development, implementation, and status of the WSP. In August 2019, Lincoln attended an in-person wildfire safety meeting and toured the Wildfire Safety Operations Center.

Lincoln reviewed and evaluated various metrics and targets of the WSP, including vegetation management, system hardening, inspections, power safety shutoff programs (including de-energizations occurring during the Application Period), and situational awareness, among others. Lincoln analyzed the Debtors' periodic status updates regarding the WSP and the Wildfire Assistance Fund, including plan progress, actual results to plan targets, and reasons for variances to plan. Lincoln closely monitored WSP categories that were behind plan, including enhanced vegetation management, and the Debtors' plans for the upcoming fire season. Lincoln also considered the many wildfire safety requirements and findings of the CPUC, Governor Gavin Newson's Strike Force report, Blue Ribbon Commission report, the Federal Monitor's Report, and various requests from Judge Alsup, among others.

Lincoln considered the risks wildfires posed on effectuating a plan of emergence and maximizing value for the tort claimants. Lincoln also considered wildfire safety as it relates to partaking in future California legislative funding and/or insurance programs. Lincoln frequently

created presentations for Counsel and the TCC detailing the WSP, status updates of the WSP, and legislative and regulatory updates related to the WSP.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **321.50 hours** and **$250,882.50** in fees.

        e.      <u>Debtor Professionals - Diligence / Meetings / Calls (007)</u>:  During the Application Period, Lincoln held calls and attended in-person meetings with the Debtors and the Debtors' advisors, including Alix Partners and Lazard Freres & Co., to discuss and negotiate matters related to the Cases including business diligence, liquidity forecasts, the business plan, monthly operating reports, WSP, Key Employee Incentive Plan ("KEIP") and other filed motions and matters.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **100.50 hours** are **$89,547.50** in fees.

        f.      <u>UCC Professionals - Diligence / Meetings / Calls (008)</u>:  During the Application Period, Lincoln held calls and attended in-person meetings with the UCC and professionals representing the UCC, including FTI and Centerview, to discuss matters related to the Cases and joint interests, including WSP, KEIP, other filed motions and matters.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **10.50 hours** and **$9,707.50** in fees.

        g.      <u>Other Professionals / Interested Parties - Diligence / Meetings / Calls (009)</u>: During the Application Period, Lincoln held confidential calls and attended in-person meetings with the other professionals and interested parties to the Cases to discuss case-related matters and potentially joint interests. Lincoln spent time preparing for and communicating via calls, meetings, and emails with these professionals and interested parties.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **112.20 hours** and **$128,179.00** in fees.

        h.      <u>Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls (010)</u>:  Time spent in this category is related to correspondence with Baker regarding strategy, approach,

recommendations, and financial analyses of various filings by the Debtors and case-specific issues, including many of the topics and issues addressed in this Fee Application. Lincoln also coordinated with Baker on TCC discussion topics for weekly meetings and related presentation materials.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **197.00 hours** and **$212,625.00** in fees.

        i.    <u>Assist Counsel in Responses / Objections to Bankruptcy Court Motions (011)</u>:  During the Application Period, Lincoln assisted Baker with financial analyses related to evaluating and/or responding to issues impacting the tort claimants and/or motions filed by the Debtors including the proposed KEIP and the termination of exclusivity. At Counsel's request, Lincoln researched and analyzed support materials related to the requested relief and presented its findings and recommendations to Counsel. If requested by Counsel, Lincoln prepared declarations in support of its recommendations and findings.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **99.50 hours** and **$80,272.50** in fees.

        j.    <u>Committee Related Matters - Diligence / Meetings / Calls (012)</u>:  This task code encompassed substantial time for services rendered to the TCC including preparation of presentations, attending regularly scheduled (typically weekly) committee meetings, and participation in other regular communications with individual TCC members and sub-committees outside of the scheduled weekly meetings. Lincoln assisted the TCC with evaluating the numerous issues and topics covered in this Fee Application and assessing their potential financial impact to tort claimants and/or their eventual recovery.  Lincoln prepared and presented numerous analyses, presentations and recommendations to the TCC on various topics including the Debtors' financial and operational position, WSP, waterfall and recovery analysis, term sheets and proposals, plans of reorganization, negotiations with the Debtors and interested parties, and regulatory and legislative updates, among many others.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **444.80 hours** and **$459,046.00** in fees.

k.　　Bankruptcy Filings and Document Review (013):　During the Application Period, Lincoln reviewed and evaluated various other documents, motions, and filings that are not covered under a specific task code in this Fee Application. Lincoln also regularly reviewed the Debtors' and third-party media coverage to monitor and evaluate developments related to the Cases and the impact, if any, to the tort claimants.

One junior Lincoln professional daily reviewed, summarized, and circulated all relevant court dockets internally to ensure the engagement team stayed informed of key filings and case developments in a timely and cost-efficient manner. Additional Lincoln junior professionals daily monitored the Debtors' and third-party media coverage, including news articles from regional and national media outlets, restructuring publications, subscription databases and regulatory websites. A Lincoln professional (junior or senior depending on underlying topic) monitored and analyzed developments, trends, and market sentiment related to the Debtors, regulators, third parties, and tort victims. Similar to the key docket filings, key media coverage articles and/or publications were circulated to the engagement team and, in certain instances, Counsel and the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **471.90 hours** and **$319,065.75** in fees.

l.　　Review of Executory Contracts and Related Analysis (014):　During the Application Period, Lincoln reviewed and evaluated various filings and motions to assume leases or executory contracts. Lincoln also evaluated the power purchase agreements, power charge indifference adjustments and the community choice aggregators and assessed their impact to the Debtors operations. Lincoln's analysis included understanding the requirements under each contract; monetary considerations; cure costs, if any; business and operations impact of assuming and rejecting these contracts; and review of potential alternatives to these contracts. Lincoln also analyzed the scope and benefits of the contracts, if appropriate, as it relates to the Debtors' Wildfire Safety Plan.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **156.70 hours** and **$102,776.50** in fees.

m.    Review of Employee-Related Matters, Including Retention Plans (015): Time billed to this category primarily focused on the review and analysis of the proposed KEIP, the retention of William Johnson as Chief Executive Officer of PG&E Corporation, and retention of Andrew Vesey as Chief Executive Officer and President of the Utility.

Lincoln evaluated and analyzed the Debtors' proposed KEIP including the plan terms; plan participants; performance metrics at threshold, target, and maximum levels; standards compared to the previously approved STIP; plan costs and the timing of plan payments. Lincoln performed various analyses to evaluate the proposed KEIP relative to similar peers in the utility industry, comparable bankruptcy cases, and the Debtors' historical incentive plans. Lincoln prepared numerous presentations for Counsel and the TCC and assisted Counsel in preparation of the objection and for the Court hearing.

Lincoln also analyzed Mr. Johnson's and Mr. Vesey's compensation package including the annual equity awards and the one-time performance-based stock options. Lincoln evaluated Mr. Johnson's and Mr. Vesey's compensation relative to similar peers in the industry and past CEOs at the Debtors. Lincoln considered the cost of Mr. Johnson's and Mr. Vesey's compensation packages at various performance levels and at various share prices post-emergence. Lincoln prepared presentations for Counsel and the TCC that summarized and analyzed Mr. Johnson's and Mr. Vesey's compensation packages.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **182.50 hours** and **$126,627.50** in fees.

n.    Review of Claims and Related Analysis (016):    During the Application Period, Lincoln evaluated and analyzed various claims including the size, type, and expected treatment of the claims pre-petition, post-petition and upon emergence. Lincoln considered information provided by the Debtors, various motions such as the Operational Integrity Supplier and the 503(b)(9) Procedures motions, and other documents to understand the proposed size and validity of various claims. Lincoln's claims analysis considered the filings and relief from stay on the Tubbs claims and estimation conferences.

Lincoln reviewed and evaluated the Debtors' $1 billion public entity settlement and the accruals related to wildfire liabilities for the 2015 Butte Fire, 2017 North Bay Fires and the 2018 Camp Fire. Lincoln also researched and evaluated bankruptcy and settlement precedents surrounding claims from FEMA, CAL Fire, and other various state or federal agencies.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **178.30 hours** and **$138,548.50** in fees.

       o.    <u>Asset Sale(s), Strategic Alternatives, and Related Analysis (017)</u>: Time billed to this category relates to evaluating various strategic alternatives available to the Debtors including potential sale(s) of core and non-core assets. Lincoln reviewed and evaluated the Debtors' comprehensive asset portfolio for identifying potential sale(s) of assets. In reviewing the potential sale(s) of assets, Lincoln considered the nature of the Debtors asset base, impact to operations from the sale(s), and the estimated recovery value, if any. Lincoln performed diligence on the assets based on publicly available information including the SEC, CPUC, and FERC and based on information supplied by the Debtors. Lincoln also assessed and evaluated the Debtors' De Minimis Asset Sales motion and regular reporting on Real Estate Transactions.

Lincoln reviewed and performed analysis on the asset sale proposal by the city of San Francisco including an overview of the proposed financing, targeted assets, required transaction conditions, divestiture impact on the Debtor, and implied rate base valuation, among others.

Lincoln evaluated the impact of the CPUC and other regulatory proceedings on any asset sale(s) including the impact of AB 1054 and CPUC restrictions on proceeds of asset sales, among many others. Lincoln prepared presentations for Counsel and the TCC summarizing and analyzing the Debtors' asset portfolio, offers to acquire assets, requested motions to sell assets, and the potential impact of any asset sale(s) for recoveries to tort claimants.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **112.30 hours** and **$85,088.50** in fees.

       p.    <u>Analysis of New Debt or Equity Capital (018)</u>: Time billed to this category includes analyzing new debt or equity capital financing proposals as part of the Debtors and/or the Ad Hoc Committee of Unsecured Noteholders plans of reorganization. Lincoln analyzed and

compared the related debt commitment letters, confident letters, and equity backstop commitment letters in accordance with the respective plans of reorganization. Lincoln reviewed and evaluated the key terms and conditions, termination rights, feasibility and the cost of capital, among other terms. Lincoln advised Counsel and the TCC regarding the debt commitment letters, confident letters, and equity backstop commitment letters under both plans and the potential impact to tort claimants and their recovery.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **159.60 hours** and **$118,262.00** in fees.

q.     Analysis of Pro-Forma Capital Structure, and Related Analysis (019):  Time billed to this category includes analyzing the pro-forma capital structure under the Debtors and/or Ad Hoc Committee of Unsecured Noteholders plans of reorganization. Lincoln analyzed the pre-petition interest expense, post-petition interest expense, and proposed interest expense under each plan of reorganization. Lincoln analyzed the interest rate impact between the Federal Judgment Rate and the contract rates on pre-petition debt. Lincoln also researched and evaluated the expected credit rating for the Debtors upon emergence under various plan scenarios. As part of the illustrative S&P credit rating analysis, Lincoln performed diligence on the business plan assumptions provided by the Debtor, analyzed the funds-from-operations-to-debt ratio and reviewed the comparable company S&P Ratings Direct credit rating metrics.

Lincoln advised Counsel and the TCC regarding the pro-forma capital structure under both plans and outlined the potential impact to tort claimant recoveries. The total hours and amount charged by Lincoln to this matter during the Application Period represents **161.60 hours** and **$103,972.00** in fees.

r.     Benchmarking and Related Analysis (020):  Time billed to this category includes analyzing the Debtors' business and operating performance relative to competitors and/or other similar companies. Lincoln performed significant research to identify and refine a set of comparable companies with characteristics similar to the Debtors, considering such factors as nature and size of operations, operating history, geographic region, financial performance and regulatory oversight. Using similar characteristics, Lincoln also developed and refined a list of

precedent transactions involving companies similar to the Debtors. Lincoln spent significant time analyzing and reviewing public filings and relevant investor presentations of the selected public companies to compile and compare various operating metrics of the Debtors' business, including total operating revenue, rate base and profitability. Lincoln compared these operating metrics to those of the comparable public companies. These comparisons helped Lincoln understand the financial and operational performance of the Debtors relative to comparable companies and the potential impact to its enterprise value and equity value. Lincoln also reviewed and compared similar analyses from third-party advisors. Lincoln regularly updated the benchmarking analysis to assist in evaluating the Debtors' potential enterprise value in conjunction with new proposals, terms sheets and plans of reorganization.

Lincoln also reviewed and benchmarked other comparable securities offered under various term sheets and plans of reorganization including bonds and preferred equity instruments. Lincoln evaluated key terms of the proposed bonds such as principal, term, conditions and coupon, among others. Lincoln also researched and evaluated other bankruptcy precedents for comparable mandatory preferred equity structures and terms, including PIK rates, conversion periods, and discounts for converting to common equity. Lincoln compared the results of the bond and preferred equity analysis to the proposed capital structures in the term sheets and plans of reorganization to assess the reasonableness of the requested securities.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **311.80 hours** and **$183,851.00** in fees.

        s.    <u>Term Sheets, Plan, and Disclosure Statement Analysis (021):</u> Time billed to this category includes devoting significant time to reviewing and evaluating term sheets, proposals, and plans submitted by the Debtors and other interested parties including the Ad Hoc Committee of Unsecured Noteholders and the Ad Hoc Group of Subrogation Claim Holders. Lincoln performed various analyses to understand the potential recoveries to tort claimants including, among other things, the total consideration, form of consideration, plan funding, proposed capital structure, total enterprise value, equity value, and overall feasibility of the illustrative plans. Lincoln spent significant time comparing and evaluating the various plans of reorganization including all

amendments to term sheets, iterations and the supplemental materials prepared by the Debtors, interested parties and their advisors. Lincoln prepared numerous presentations and recovery and waterfall analyses to assist Counsel and the TCC in evaluating the proposals. Lincoln also assisted in drafting revised term sheets and proposals to assist Counsel, Lincoln and the TCC in the negotiations with the Debtors and interested parties.

The total hours and amount charge by Lincoln to this matter during the Application Period represents **1,087.40 hours** and **$886,123.00** in fees.

t. <u>Review of Discovery Documents and Deposition Preparation (Witnesses) (022):</u> Time billed to this category includes assisting Counsel in preparation of depositions including reviewing, analyzing, and summarizing discovery documents and preparing deposition questions related to financial topics. Discovery documents were typically loaded onto a third-party data site by Baker for Lincoln to review.

The total hours and amount charge by Lincoln to this matter during the Application Period represents **39.50 hours** and **$39,932.50** in fees.

u. <u>Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance (023):</u> Time billed to this category includes preparation and attendance of court hearings, testimony and depositions – in person or by phone. Attendance of depositions included various interested parties and advisors from the Debtors, Ad Hoc Committee of Unsecured Noteholders, Ad Hoc Group of Subrogation Claim Holders, and the TCC. Preparation included strategy discussions internally and with Counsel; reviewing hearing specific filings including motions, objections, and replies; and reviewing previously prepared work product by Lincoln or other advisors.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **131.20 hours** and **$123,284.00** in fees.

v. <u>Business Plan (024):</u> Time billed to this category encompasses the review and analysis of the Debtors' updated business plan. Lincoln attended an in-person business plan meeting hosted by the Debtors' management team and their advisors. Lincoln reviewed and analyzed all the information provided at the meeting and subsequently requested additional follow-

up materials to fully evaluate the Debtors' financial and operational projections including operating revenues, operating expenses, capital expenditures, and profitability, among others. Lincoln also reviewed and evaluated the Debtors' plans for infrastructure and wildfire safety investments, cost savings initiatives, anticipated cost recovery and the impact to customer rates. These analyses allowed Lincoln to evaluate and assess the potential impact that the business plan will have on the Debtors' future enterprise value, proforma capital structure at emergence, and the potential distributable value to tort claimants.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **119.10 hours** and **$100,874.50** in fees.

w. <u>Regulatory and Legislative Matters, and Related Financial Analysis (025)</u>: Time billed to this category includes all regulatory and legislative matters and analyses related to the Cases. Lincoln reviewed and evaluated Assembly Bills No. 1054 and No. 235 and various CPUC and FERC applications, proceeding and decisions to assess the potential impact that these regulatory and legislative matters may have on the Debtors' current and future operations, business plan, reorganization efforts and any potential impact on the recovery to the tort claimants. Lincoln's review and analysis included the Power Charge Indifference Adjustments Correction, 2020 Cost of Capital application, Safety Culture and Governance Order Instituting Investigation, 2020 General Rate Case Proceedings, Locate and Mark OII, and the Gas and Transmission and Storage rate cases, among many others. Lincoln also reviewed and monitored the expected timelines and milestones of Debtors' regulatory cases and participated in select conferences.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **347.80 hours** and **$239,651.00** in fees.

x. <u>Travel Time - Non Working Travel (026)</u>: Time billed to this category encompasses the non-working travel time spent by Lincoln personnel travelling to and from court hearings. This task code also included depositions and meetings with the TCC, Counsel, and other professionals. Non-working travel time has been discounted by 50% from Lincoln's standard professional hourly rates.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **107.50 hours** and **$119,562.50** in fees.

y.    Project Administration (027):    Time billed to this category relates to Lincoln's planning, strategizing, and coordinating of case-related efforts, including the development of work streams, staffing of resources, and internal communication of project allocation(s) to avoid unnecessary duplication of efforts. This code includes establishing and maintaining an internal work site to house the task and time tracking databases, key filings, and various work product prepared for Counsel and the TCC. To coordinate efforts, Lincoln holds a weekly internal meeting to discuss outstanding deliverables, allocate new tasks between team members, and discuss new case developments that may have an impact to the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **183.30 hours** and **$143,492.00** in fees.

z.    Fee Application Preparation (031):    Time billed to this category consists of communications relating to and preparing monthly and interim fee statements to comply with local and federal rules including reviewing timekeeping records for privileged, confidential, and work product issues; reducing time and expense entries; and working with Counsel to draft the fee application motion.

The total hours and amount charged by Baker to this matter during the Application Period represents **309.80 hours** and **$177,151.00** in fees.

## **CONCLUSION**

12.    Lincoln believes that this Application appropriately sets forth the significant services Lincoln performed on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered.  Thus, Lincoln respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient, and economical.  Accordingly, Lincoln respectfully requests that this Application for allowance of fees and expenses, on an interim basis, be granted in all respects.

Dated: November 14, 2019

1

2     LINCOLN PARTNERS ADVISORS LLC
      By: _/s/ Brent C. Williams_
3

4     Financial Advisor to the Official Committee of Tort
      Claimants
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION**

I, Brent C. Williams, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1.    I am a Managing Director and Co-Head of Lincoln's Special Situations Group at Lincoln Partners Advisors LLC ("Lincoln"). I submit this certification in support of the *Second Interim Application of Lincoln Partners Advisors LLC for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period June 1, 2019 through September 30, 2019* (the "Application").[1]

2.    I have personally reviewed the information contained in the Application and believe its contents to be true to the best of my knowledge, information and belief.

3.    The compensation and expense reimbursement sought in this Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330, 331, and 1103 of title 11, United States Code; Rule 2016 of the Federal Rules of Bankruptcy Procedure; the Local Rules for the United States Bankruptcy Court for the Northern District of California; the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professional*s, entered on February 27, 2019; the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013; and the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014.

---

[1] Capitalized terms not defined have the meanings used in the Application.

1    4.    The compensation and expense reimbursement requested in this Application are

2  billed at rates, in accordance with practices, no less favorable than those customarily employed by

3  Lincoln and generally accepted by Lincoln's clients.

4        Date:   November 14, 2019

5

6                                          LINCOLN PARTNERS ADVISORS LLC
                                           BY: */s/ Brent C. Williams*
7

8                                          Financial Advisor to the Official Committee of Tort
                                           Claimants
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28