Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:     628.208.6434
Facsimile:      310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.442.8875
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for the Official
Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | |
| **- and -** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **SECOND INTERIM APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | Date: TBD Time: TBD |
| ■ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Objection Date: December 4, 2019 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**COVERSHEET FOR SECOND INTERIM APPLICATION OF THE LAW FIRM OF BAKER & HOSTETLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019**

| | |
|---|---|
| Name of Applicant: | Baker & Hostetler LLP |
| Name of Client: | Official Committee of Tort Claimants |
| Time period covered by this application: | 6/1/2019-9/30/2019 |
| Total fees originally sought this period: | $11,494,553.25** |
| Total expenses sought this period: | $1,899,103.14 |
| Total reduction in fees for non-working travel time | $164,989.75 |
| Total reduction in fees due to billing error | $9,773.00 |
| Petition Date: | 1/29/2019 |
| Retention Date: | *Effective* 2/15/2019 |
| Date of order approving employment | 4/10/2019 |
| Total compensation approved by interim order to date: | $0 |
| Total expenses approved by interim order to date: | $0 |
| Total allowed compensation paid to date: | $0 |
| Total allowed expenses paid to date: | $0 |
| Blended rate in this application for all attorneys | $715.63 |
| Blended rate in this application for all timekeepers | $650.56 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $6,638,738.20 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $1,259,546.07 |
| Number of professionals included in this application | 73 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | 0 |
| If applicable, difference between fees/costs budgeted and compensation sought for this period | Revised Actual: $13,218,893.64 Budget Range: $10,173,740 - $13,916,740 |
| Number of professionals billing fewer than 15 hours to the case during the period | 8 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No |

**In each of the four months covered by this Second Interim Application, Applicant reduced the amount of fees sought prior to generating its monthly fee statement. For the months of June, July, August, and September, Applicant voluntarily wrote off a grand total of fees in the amount of $446,226.

# SUMMARY OF SECOND INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 7/31/19 (DE 3314) (5th) | 6/1/19-6/30/19 | $1,952,741.75 | $132,601.66 | $1,562,193.40 | $132,601.66 | $1,562,193.40 | $132,601.66 | $390,548.35 |
| 8/30/19 (DE 3769) (6th) | 7/1/19-7/31/19 | $2,982,435.50 | $442,618.03 | $2,385,948.40 | $442,618.03 | $2,385,948.40 | $442,618.03 | $596,487.10 |
| 9/30/19 (DE 4037) (7th) | 8/1/19-8/31/19 | $3,363,245.50 | $684,326.38 | $2,690,596.40 | $684,326.38 | $2,690,596.40 | $684,326.38 | $672,649.10 |
| 10/30/19 (DE 4513) (8th) | 9/1/19-9/30/19 | $3,196,130.50 | $639,557.07 | $2,556,904.40 | $639,557.07 | $0 | $0 | $3,835,687.57 |
| **Total for Second Interim Fee Application** | | **$11,494,553.25** | **$1,899,103.14** | **$9,195,642.60** | **$1,899,103.14** | **$6,638,738.20** | **$1,259,546.07** | **$5,495,372.12**\*\* |

Objections to Monthly Fee Statements: No objections have been filed regarding the Fifth, Sixth or Seventh Monthly Fee Statements. The deadline for objections to the Eighth Monthly Fee Statement is November 20, 2019.

Holdback Amount Requested by Applicant: $5,495,372.12 minus: 1) a reduction in fees for non-working travel time in the amount of $164,989.75; and 2) a reduction in fees due to a billing error in the amount of $9,773.00, for a total holdback amount of **$5,320,609.37**.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**SECOND INTERIM APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019**

TO THE HONORABLE DENNIS MONTALI,
UNITED STATES BANKRUPTCY JUDGE

Baker & Hostetler, LLP ("**Baker**" or "**Applicant**"), counsel to the Official Committee of Tort Claimants ("**TCC**") appointed in the above-captioned voluntary Chapter 11 bankruptcy cases (the "**Bankruptcy Cases**"), hereby submits its *Second Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period June 1, 2019 through September 30, 2019* (the "**Application**") seeking entry of an order, on an interim basis, pursuant to sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules**"), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"), the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**") for interim allowance of compensation for professional services and reimbursement of actual and necessary expenses in connection with Baker's representation of the TCC in the above captioned cases.

The Applicant seeks interim approval of compensation and reimbursement of expenses from June 1, 2019 through September 30, 2019 (the "**Application Period**") totaling

**$13,218,893.64** which sum represents compensation for legal services rendered in the amount of $11,494,553.25 and reimbursement for expenses incurred in the amount of $1,899,103.14, minus: 1) a reduction in fees for non-working travel time in the amount of $164,989.75, and 2) a reduction in fees due to a specific billing error in the amount of $9,773.00.

This Application is based upon the contents hereof, together with the exhibits, the declaration of Cecily A. Dumas filed concurrently herewith, the pleadings, papers, and records on file in these cases, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit G**.

## RELEVANT BACKGROUND

1. On January 29, 2019 (the "**Petition Date**") the Debtors filed the Bankruptcy Cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Bankruptcy Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2. On February 15, 2019, the Office of the United States Trustee ("**UST**") filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453]. Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530]. The current members of the TCC are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v)

Case: 19-30088    Doc# 4733    Filed: 11/14/19    Entered: 11/14/19 15:47:34    Page 5 of 49

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen M. Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson.

3. The TCC represents the interests of fire claimants, whose claims arose as a result of the Debtors' long history of unsafe operations.

4. As permitted in the Guidelines, Baker incorporates by reference the narrative history furnished in the contemporaneous applications filed by the Debtors' professionals.

5. On March 17, 2019, the TCC filed its *Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket No. 934] (the "**Retention Application**"). On April 10, 2019, the Court entered its *Order Granting the Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket No. 1331] (the "**Retention Order**"). A true and correct copy of the Retention Order is attached hereto as **Exhibit E**. Baker is not holding, and has not held, any retainer in connection with the Bankruptcy Cases or the work performed on behalf of the TCC.

6. As specifically detailed and set forth below, Baker worked with the TCC, its financial advisors, the Official Committee of Unsecured Creditors (the "**OCUC**"), its financial advisors, the Debtors, and their financial advisors to address the numerous critical issues arising in the Bankruptcy Cases during the Application Period.

7. On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("**Fee Examiner**") in the Bankruptcy Cases. [Docket No. 2267]. Baker has communicated with the Fee Examiner and has supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

## RELIEF REQUESTED AND BASIS FOR RELIEF

8.      This Application is Baker's second interim request for allowance and payment of fees and expenses as counsel to the TCC.

9.      Pursuant to Bankruptcy Code §§ 330 and 331, Baker respectfully requests entry of an order, on an interim basis, allowing and approving **$13,218,893.64** which sum represents compensation for legal services rendered in the amount of $11,494,553.25 and reimbursement for expenses incurred in the amount of $1,899,103.14 minus: 1) the reduction in fees for non-working travel time in the amount of $164,989.75, and 2) the reduction in fees due to an billing error in the amount of $9,773.00.  Copies of Baker's invoices detailing the services rendered and expenses incurred during the Application Period have been filed on the docket as attachments to Baker's monthly fee statements and have been furnished to the Debtors, counsel for the OCUC, the UST and the Fee Examiner (see Docket Nos. 3314, 3769, 4037 and 4513).

10.      Baker has made every effort to ensure that this Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its attorneys and paraprofessionals, as well as with other retained professionals in these cases. Baker has supplied the Fee Examiner with Baker's monthly fee statements in an electronic LEDES format Baker believes is acceptable to the Fee Examiner.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

11.      Baker's attorneys spent 14,976.50 hours in performing the services described in the Application, at an average billing rate of $715.63 per hour.  Baker's blended hourly rate for all timekeepers in this Application is $650.56.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED

12.     In addition to the requirement that a description of the general services rendered by a professional be provided in a fee application, the Guidelines also require that applications for compensation should:

> "…categorize by subject matter and separately discuss, each project or task. With respect to each project or task, the number of hours spent, the results obtained, and the amount of compensation and expenses requested should be set forth at the conclusion of the discussion of that project or task."

13.     Accordingly, Baker established separate project billing categories for its representation of the TCC during the Application Period, as follows:

| CODE | DESCRIPTION |
|------|-------------|
| 001 | Administrative Expense Claims |
| 002 | Asset Sales/363 Sales |
| 003 | Automatic Stay |
| 004 | Bankruptcy Litigation |
| 005 | Bar Date Motion/Claims Noticing |
| 006 | Case Administration (docket updates, WIP, and calendar) |
| 008 | Chapter 11 Plan/Plan Confirmation |
| 009 | Committee Meetings and Preparation |
| 010 | Corporate and Board Issues |
| 012 | DIP Financing/Cash Mgmt./Hedging Transactions |
| 013 | Disclosure Statement |
| 014 | Employee Issues |
| 015 | Equity Security Holders |
| 016 | Exclusivity |
| 017 | Executory Contract/Lease Issues |
| 018 | General Case Strategy (includes communication with Committee) |
| 019 | Hearings and Court Matters |
| 020 | Legislative Issues |
| 021 | Non-Bankruptcy Litigation |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| CODE | DESCRIPTION |
|------|-------------|
| 022 | Non-Working Travel |
| 023 | FERC Adversary Proceeding |
| 024 | District Court Litigation |
| 025 | Regulatory Issues including CPUC and FERC |
| 026 | Retention Applications |
| 027 | Fee Application: Baker |
| 028 | Fee Application: Other Professionals |
| 029 | Schedules/Statement of Financial Affairs |
| 031 | U.S. Trustee/Fee Examiner Issues |
| 032 | Unsecured Creditor Issues/ Communications/ Meetings |
| 033 | Utility Issues/Adequate Assurance/Insurance |
| 034 | Withdraw Reference |
| 035 | Real Estate and Real Property Issues |
| 036 | Avoidance Action Analysis/Lien Avoidance Analysis |
| 037 | Investigations |
| 038 | Financial Advisors |
| 039 | Other Contested Matters |
| 040 | Operations |
| 041 | KEIP Issues |
| 042 | Subrogation |
| 043 | Securities |
| 044 | Wildfire Assistance Program |
| 045 | Asset Analysis and Recovery |
| 046 | Tort Claims Estimation |
| 047 | Class Claims Issues |

14. These distinct, numbered project billing categories[*] enabled Baker to monitor its activities and appropriately account for the time expended by its professionals and

---

[*] In certain instances, where more than one category of issues might have been addressed during the course of a meeting or telephone conference, Baker's time records may include that time in only one billing category.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

paraprofessionals. This procedure enables Baker to better inform the TCC, the Court, the UST and the Fee Examiner regarding the nature of the services provided and time expended by its professionals and paraprofessionals. The project billing categories adopted by Baker are consistent with those used by the Debtors in order to ease the burden of the Fee Examiner's review. To the extent the project billing categories are not identical to those used by the Debtors, it is because representing the TCC requires services somewhat different than those the Debtors' professionals are providing to the Debtors, so Baker tailored certain task code descriptions and may have added task codes as necessary to more accurately reflect the nature of the work being performed by Baker on the TCC's behalf.

15. In an effort to streamline and control legal fees and expenses, Baker endeavored to minimize the expenditure of time by its senior partners and to delegate responsibilities to junior partners, associates and other paraprofessional employees as appropriate. In addition, because Baker does not charge national rates, Baker has endeavored to minimize fees and expenses by staffing the matter with partners and associates from a cross-section of its offices, in order to take advantage of lower rates charged in certain markets. The blended hourly rate for all Baker professionals and paraprofessionals who provided services during the Application Period is $650.56. Attached hereto as **Exhibit B** is a Summary of the Timekeepers included in this Application, including the name and billing rate of each Baker professional and paraprofessional who provided services to the TCC.

16. In compliance with the Guidelines, a description of the people employed by Baker who rendered services to the TCC in the Bankruptcy Cases during the Application Period and whose time entries appear in the invoices is included in **Exhibit F**, attached hereto.

17. Pursuant to Bankruptcy Code § 504, Baker has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Baker in the Bankruptcy Cases, other than as may be shared among the members of the Baker firm.

18. Set forth below is a summary description, by project billing category, of the services rendered by Baker during the Application Period. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below and are detailed in the invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos. 3314, 3769, 4037 and 4513).

    a.    <u>Administrative Expense Claims (001)</u>: The work performed in this category focused on reviewing a motion and notice filed by the Debtors regarding treatment of certain administrative claims and reclamation claims. Applicant's professionals conducted an analysis of relevant issues to determine what, if any, position the TCC should take concerning the Debtors' plans for treatment of such claims and prepared a memorandum detailing same.

The total hours and amount charged by Baker to this matter during the Application Period represents **15.20 hours** and **$8,942.50** in fees.

    b.    <u>Asset Sales/363 Sales (002)</u>: This task category includes time spent by Baker addressing the Debtors' motion for entry of an order authorizing them to sell *de minimus* assets and to establish procedures for same, including preparation of a draft objecting to the relief sought by the Debtors. Baker conferred with securities plaintiffs regarding their concerns with the *de minimus* sale motion, addressed issues concerning preservation of evidence relating to assets proposed to be sold, and had conferences with the UST and counsel for the OCUC regarding the application of proceeds from any asset sales.

The total hours and amount charged by Baker to this matter during the Application Period represents **46.70 hours** and **$36,586.50** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

c.    <u>Automatic Stay (003)</u>: Baker professionals performed substantial work in this task category preparing the TCC's motion for relief from the automatic stay as necessary to litigate the claims arising from the Tubbs fire before a jury in state court.  In addition, Baker reviewed and analyzed all motions for relief from stay and related exhibits, joinders, and oppositions, including but not limited to those filed by the subrogation committee, Valero Refining Company, Sun, Luo and Mester, Zelmer, NextEra, and FERC, as necessary to inform, advise, and protect the interests of the TCC.

In addition, Baker performed substantial analysis of stay relief in analogous mass tort cases and researched and analyzed complex issues intertwined with stay relief in the Debtors' cases. These issues included inverse condemnation, constitutional and legislative issues including AB 1054, plan trust structures, abstention, and the preemptive scope of the bankruptcy code concerning relief from stay. Baker drafted significant memoranda on these issues in order to educate and advise the TCC.  When necessary to protect the interests of the TCC, Baker drafted joinders and prepared oppositions to various pleadings relating to stay relief filed by other parties.

The total hours and amount charged by Baker to this matter during the Application Period represents **480.30 hours** and **$393,827.50** in fees.

d.    <u>Bankruptcy Litigation (004)</u>:  Baker performed extensive work during the Application Period in the area of efficiently developing, executing, and coordinating all litigation-related activities. Baker spent substantial time on discovery related to the causes of the fires causing grave harm to the TCC and its constituency. This massive undertaking was complicated by the Debtors' failures to produce information, requiring Baker to draft motions to compel discovery or alternatively to exclude evidenced not produced.  Baker's work encompassed meet and confers regarding discovery disputes, attendance at discovery conference hearings, addressing protective orders and related objections, attending hearings on motions to compel discovery responses from

the Debtors and motions to compel third-party discovery, reviewing issues related to papers filed under seal, and tracking, analyzing, and summarizing hundreds of thousands of pages of incoming discovery for use in litigation focused on protecting the interests of the TCC and recovery on victim's claims.

In addition, Baker researched and evaluated potential experts, and worked with experts on assumptions, modeling, and causation analysis. Baker drafted interrogatories and requests for production and prepared for and attended depositions and prepared summaries of deposition testimony. Baker researched issues and drafted memoranda related to whether a settlement between the Debtors and an agency requires bankruptcy court approval. Regarding causation, Baker researched and analyzed negligence and per se negligence, and bankruptcy court jurisdictional issues, and reviewed claims for damages analysis. With respect to Baker's litigation and settlement strategy, Baker analyzed mediation privilege and confidentiality issues and prepared related memoranda, as well as analyzing attorney client privilege and work product issues and preparation of related memoranda.

Baker communicated with individual committee members and their separate counsel, as well as counsel of record in the bankruptcy case regarding all aspects of litigation including adversary proceedings, discovery disputes, and protective orders. In addition, Baker worked on issues concerning each fire caused or allegedly caused by the Debtors and gathered and analyzed background facts in various state court cases as necessary to develop and execute a strategy most effective to the TCC in the Bankruptcy Cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **2,002.20 hours** and **$1,122,697.50** in fees.

e.    Bar Date Motion/Claims Noticing (005):    This category includes time spent by Baker professionals preparing for and attending the June 26th hearing to consider the

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

competing bar date and notice procedures, including drafting additional briefing, responding to the Debtors' discovery requests, and efforts to reach settlement. The Debtors agreed to adopt the TCC's model claim form and revised their notice program in order to address issues raised by the TCC in pleadings filed with the Court. The Court, however, ultimately adopted the Debtors' notice program (as amended) and proposed bar date.

This category includes time spent by Baker professionals monitoring the implementation of the Debtors' notice program and preparing a memorandum for the TCC regarding the Debtors' implementation of their notice program. This category also encompasses time spent by Baker professionals assisting the TCC with its media strategy and outreach to increase participation in the Chapter 11 cases by tort claimants, including time spent working with and addressing the TCC's engagement of Trident DMG LLC, and time spent addressing the logistics of submitting fire claims using the Court-approved claim form. This category includes time spent by Baker professionals reviewing filed proofs of claims and working with DSI and Lincoln and other professionals regarding valuation data, and analysis of the Debtors' SEC filings related to valuation of fire liability.

The total hours and amount charged by Baker to this matter during the Application Period represents **787.00 hours** and **$553,361.50** in fees.

       f.    Case Administration (docket updates, WIP, and calendar) (006): Baker's work in this category encompasses ongoing docket review for maintenance of a master service list and the receipt, review, and tracking of statutory deadlines in the firm's docketing system for all pleadings filed in the bankruptcy court and in related cases pending in other forums. In addition, this work includes ongoing: (i) discussions, planning, and strategizing regarding the client communication platform for sharing of documents and information; (ii) maintaining the workspace layout, daily updates to the Magnum tool, and managing account access; (iii) collaboration on case

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

management and administration; (iv) updates and maintenance of protocols and procedures regarding review and evaluation of pleadings filed to assess potential impacts upon the TCC; (v) distribution of e-filing notices, document management protocols, e-filing procedures and team calendars; (vi) maintaining and updating case-specific discovery management protocols; and (vii) preparation of a weekly Critical Dates Memo for communications with the TCC and core team.

The total hours and amount charged by Baker to this matter during the Application Period represents **467.40 hours** and **$192,163.00** in fees.

g.    Chapter 11 Plan/Plan Confirmation (008): The work performed in this task code included discussions with and advisement of the TCC regarding the potential framework and plan structures available and the development of potential plan terms. In addition, this task code encompassed significant plan-related research and analysis concerning the types of assets available to tort claimants, exclusivity issues, possible plan trust terms, structures, and implementation, issues concerning third-party releases, issues particular to tort claimants and plan treatment of mass tort claimants, and issues regarding a potential Chapter 11 Trustee appointment. This task code also reflects research conducted and memoranda drafted concerning plan confirmation issues and standards in the Ninth Circuit and the potential impacts of channeling injunctions. Further encompassed in this task code are negotiations with other constituencies regarding potential plan terms and discussions with the TCC's financial advisors regarding valuation issues as relevant to plan development.

In addition, services performed in this category includes time for meetings, analysis, and negotiation regarding the terms of a potential plan of reorganization, including meeting with the Ad Hoc Group of Bondholders to negotiate a term sheet for a consensual plan. Further, the time spent in this category includes formation of a subcommittee to assist with plan of reorganization issues and subcommittee work reviewing and analyzing the Debtors' proposed plan and related

issues. The task code also includes time for reviewing and objecting to various elements of the Debtors' settlement with subrogation insurers.

The total hours and amount charged by Baker to this matter during the Application Period represents **999.20 hours** and **$810,618.50** in fees.

   h. <u>Committee Meetings and Preparation (009)</u>: This task code generally reflects three categories of work. First, attendance at and preparation for (generally weekly) meetings of the TCC, including identification of important topics for presentation to the TCC requiring a TCC vote. Second, this task code reflects conferring with and/or advising the TCC membership and their individual counsel on issues of general strategy and advice concerning new case developments. Third, senior members of the Baker core PG&E team participate in weekly teleconferences to (i) coordinate activities and strategy in advance of the TCC meetings; (ii) ensure that all Baker professionals are aware of key priorities and overall strategies; and (iii) strategize on how to efficiently and effectively implement TCC directives, gather specific information important to TCC objectives, and educating the TCC about facets of the case.

In addition, the time spent in this category includes: (i) ongoing population of the TCC website; (ii) advising TCC members of their rights and duties as committee members; (iii) reporting to the TCC on various regulatory and legislative issues including AB 1054; (iv) working with the TCC's financial advisors to coordinate reporting to the TCC; (v) drafting required TCC meeting agendas, minutes, and reports; (vi) coordinating the TCC site visit to Ghost Ship; (vii) reporting on the status of retention applications; (viii) advising the TCC on insurance issues; and (ix) informing and educating the TCC in regards to the Ad Hoc Bondholder plan.

The total hours and amount charged by Baker to this matter during the Application Period represents **930.20 hours** and **$769,288.50** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

i. <u>Corporate and Board Issues (010)</u>: The work performed by Baker in this task category concerned review of the Debtors' business plan, capital structure and equity percentages, review of the Debtor's motion to retain a new CEO and President, and issues concerning resignation of a PG&E director, as necessary to apprise the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **8.90 hours** and **$7,162.50** in fees.

j. <u>DIP Financing/Cash Mgmt./Hedging Transactions (012)</u>: Time billed to this category includes analysis of the effects of DIP financing terms, review of the Debtors' hedging and exchange motion reporting and public filings, as relevant to the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **2.60 hours** and **$1,984.00** in fees.

k. <u>Employee Issues (014)</u>: As relevant to executive compensation and the Debtors' motion to approve the terms of William Johnson's employment, Baker reviewed AB 1054 and Lincoln International's analysis on proposed compensation. Baker formulated possible grounds for objections to Johnson's employment with Lincoln and the Debtors' KEIP.

The total hours and amount charged by Baker to this matter during the Application Period represents **7.10 hours** and **$6,782.00** in fees.

l. <u>Equity Security Holders (015)</u>: This task code encompasses the time Baker spent reviewing the Debtors' equity holders' public securities filings and filings in the chapter 11 cases and conferring with other professionals regarding same.

The total hours and amount charged by Baker to this matter during the Application Period represents **3.20 hours** and **$3,040.00** in fees.

m. <u>Exclusivity (016)</u>: This task category includes time spent by Baker addressing the Debtors' motion to extend the exclusivity period. Baker analyzed the Debtors'

Case: 19-30088    Doc# 4733    Filed: 11/14/19    Entered: 11/14/19 15:47:34    Page 17 of 49

motion and performed extensive research and drafted an objection to the extension. In addition, Baker analyzed all responses to the motion, including those of CPUC and the Ad Hoc Bondholders, and conferred with multiple professionals in the case regarding the potential impacts of the requested extension. Baker met with the TCC plan subcommittee regarding the Debtors' request to extend the exclusive period and developed a discovery and deposition strategy concerning the Debtors' request to extend the exclusive period. Further, Baker prepared for and attended court relating to the Debtor's requested extension.

The total hours and amount charged by Baker to this matter during the Application Period represents **266.70 hours** and **$208,182.50** in fees.

n. <u>Executory Contracts/Lease Issues (017)</u>: During the Application Period, Baker assisted the TCC by analyzing certain contracts to ascertain whether assumption or rejection would be more beneficial to the TCC. Baker reviewed the Debtors' Third, Fourth, and Fifth Omnibus Motions to Assume, and performed related research and drafted memoranda on the requested relief as necessary to protect the interests of the TCC. The analysis performed by Baker specifically related to non-residential lease agreements, power purchase agreements, and mutual assistance agreements with other utilities. Baker also communicated with Debtors' counsel and the TCC's professionals regarding issues concerning assumption. Baker anticipates providing further assistance to the TCC on matters relating to the assumption and rejection of executory contracts and unexpired leases throughout the course of the Bankruptcy Cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **32.10 hours** and **$18,943.50** in fees.

o. <u>General Case Strategy (includes communication with Committee) (018)</u>:

Time spent in this category encompasses a broad range of services, including but not limited to, communications with members of the TCC and their counsel, monitoring various proceedings

Case: 19-30088   Doc# 4733   Filed: 11/14/19   Entered: 11/14/19 15:47:34   Page 18 of 49

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

impacting the TCC, internal tasks regarding case assignments, working with TCC subcommittees to prioritize tasks and achieve TCC goals, and addressing discovery matters.

Communications with the TCC and its counsel include drafting summaries of hearings, and analysis of pleadings and other documents filed in the bankruptcy court, district court and in proceedings before the California Public Utilities Commission ("**CPUC**"). Baker also communicated with the TCC and its members regarding strategic action and progress in the cases. Baker advised the TCC regarding its financial advisors, methods of providing victim outreach, drafting op-eds and press releases, and other media coverage concerning case developments. Communications in this task category also include maintaining an efficient system for tracking and responding to TCC member requests and maintaining and expanding the Magnum database and data room.

Baker also provided monitoring of litigation and administrative proceedings in which the TCC is not a direct party, including adversary proceedings, the criminal proceedings pending before Judge Alsup, appeals of bankruptcy court decisions, proceedings before the CPUC and legislative developments. Work performed in this task code also reflects services provided by Baker in connection with undertaking discovery.

The total hours and amount charged by Baker to this matter during the Application Period represents **184.90 hours** and **$149,004.00** in fees.

p. <u>Hearings and Court Matters (019)</u>: Services performed by Baker in this category include preparing for and attending hearings, in person or by phone, and drafting summaries of the hearings for distribution internally and to the TCC. In addition, this task code encompasses Baker's meetings with members of the TCC before and after hearings, and internal team meetings to discuss research needed for hearings and hearing coverage among team members.

During the Application Period, Baker prepared for and attended hearings on pleadings relating to establishment of a claims bar date and notice programs, retention of professionals, protective orders, exclusivity, claims estimation, discovery, and lifting the automatic stay to allow the Tubbs case to proceed to a jury trial.

The total hours and amount charged by Baker to this matter during the Application Period represents **278.30 hours** and **$224,626.00** in fees.

        q.    <u>Legislative Issues (020):</u>  Baker performed substantial services for the TCC during the Application Period in the area of legislative tracking and analysis of proposed bills in both the California State Legislature and the United States Congress, including AB 111, AB 235, SP 901, with extensive analysis of AB 1054 and its potential impact upon the various pending aspects of the Chapter 11 cases of importance to the TCC. Specifically, Baker analyzed whether legislation would affect the timing or substantive resolution of bankruptcy issues concerning abstention, withdrawal of the reference, relief from the automatic stay, estimation of claims and preemption of state law, inverse condemnation, and the interplay between the state legislation, the U.S. Constitution, and federal law. Baker researched and prepared substantial memoranda and briefing for the TCC on the complicated legislative issues involved in the Chapter 11 cases as necessary to advise the TCC with respect to strategic concerns.

Baker also monitored and attended multiple hearings before the California Legislature and California State Assembly, as well as hearings of the House Energy and Commerce Subcommittee on Energy, and the U.S. Senate Energy and Natural Resources Committee hearing concerning the Wildland Fire and Management Programs for 2019. Baker addressed matters relating to Governor Newsom's wildfire legislative proposals, prepared for and met with the Governor, and analyzed the Governor's competing plan protocol and the potential impacts on fire claimants. Baker drafted a response to the Debtors' motion to participate in the wildfire assistance fund, and drafted substantial

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

memoranda analyzing the Debtors' position on inverse condemnation and Cantu-related issues as necessary to advise the TCC.

The total hours and amount charge by Baker to this matter during the Application Period represents **880.80 hours** and **$1,011,516.00** in fees.

r. <u>Non-Bankruptcy Litigation (021)</u>: Baker has been monitoring filings and hearings from other legal proceedings involving the Debtors to consider their possible effect on the TCC's interests in the bankruptcy cases, and on the bankruptcy cases as a whole. Baker prepared for and monitored discovery related to the Tubbs fire. Baker's work on this matter included discussions with plaintiffs' counsel and a detailed review of videos, photographs, depositions, CalFire Reports, and other documents related to the causation and damages associated with the Tubbs fire.

Baker also analyzed materials relevant to active civil and criminal investigations of PG&E by various federal and state agencies, with special focus on filings and information relevant to potential litigation. Further, Baker researched and analyzed legal issues concerning potential implications of a post-petition criminal judgment against the Debtors by government entity on priority of claims and/or potential recovery of pre-petition claims as necessary to evaluate TCC ability to recover on claims.

The total hours and amount charged by Baker to this matter during the Application Period represents **225.80 hours** and **$132,882.50** in fees.

s. <u>Non-Working Travel (022)</u>:

This task code encompassed the time spent by Baker personnel travelling to and from hearings, depositions, meetings with the TCC, meetings with experts, and meetings with bondholders concerning plan development.

Case: 19-30088    Doc# 4733    Filed: 11/14/19    Entered: 11/14/19 15:47:34    Page 21 of 49

The total hours and amount charged by Baker to this matter during the Application Period represents **801.50 hours** and **$445,921.75** in fees. Pursuant to the bankruptcy court's docket text order and tentative ruling entered on October 6, 2019 authorizing a two-hour allowance for non-working travel, Applicant is entitled to be paid for **461.50 hours** (for a reduction of 340 hours allocated to travel) representing **$280,932.00 in fees** (for a reduction of $164,989.75 in fees for time Baker's professionals spent travelling for this engagement).

t.    <u>FERC Adversary Proceeding (023):</u>  Baker continued to monitor Federal Energy Regulatory Commission ("FERC") dockets in which the FERC has asserted concurrent jurisdiction over any rejection by the Debtors of wholesale power purchase agreements in bankruptcy. In addition, Baker monitored the status of the Debtors' motion for preliminary injunction against FERC in the Bankruptcy Cases and advised the TCC with respect to the Bankruptcy Court's ruling on FERC jurisdiction.

The total hours and amount charged by Baker to this matter during the Application Period represents **2.60 hours** and **$2,114.00** in fees.

u.    <u>District Court Litigation (024):</u> During the Application Period, Baker continued to actively monitor criminal and civil matters involving the Debtors as relevant to ascertaining possible impacts upon the TCC. Baker identified and examined multiple discovery issues, including preservation of evidence and remedies for spoliation as necessary to protect the rights of the TCC. Baker further identified and analyzed materials concerning the federal monitoring of PG&E as a condition of its criminal probation, with a focus on the Federal Monitor team, examining filings, pleadings, transcripts and/or other publicly available information relevant to potential future litigation. Baker analyzed materials pertaining to the 2018 Camp Fire, and requested access to documents filed under seal in the criminal case, U.S. v. Pacific Gas and Electric Company, 3:14-cr-000175-WHA.  In addition, Baker drafted a synopsis and substantive analysis

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of all significant filings in the criminal case, providing the TCC with an ongoing analysis of specific publicly filed responses to requests for information, along with related exhibits and attachments, as well as specific orders, responses, memoranda, hearing transcripts, requests for information, exhibits, admissions, and declarations as relevant to preparation for trial on estimation of damages and/or future litigation by the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **197.70 hours** and **$125,399.00** in fees.

v.     Regulatory Issues including CPUC and FERC (025):    Baker performed extensive monitoring and review of proceedings pending before the California Public Utilities Commission ("CPUC") and FERC to identify those which could have a material direct or indirect effect on the timing and amount of recoveries by the tort claimants.  This important work required Baker to become familiar with the procedural posture of numerous pending proceedings and the filings, rulings, and decisions made in each to date. Baker monitored and tracked ongoing developments and upcoming deadlines and events in spreadsheet form for the TCC's discussion and planning purposes.  This work included a daily review of filings, issuances, and transcripts and occasional attendance at prehearing conferences as necessary to the frequent meetings scheduled with the TCC in order to inform them of relevant developments.  In addition, Baker monitored CPUC and FERC filings and issuances generally to identify any new proceedings, and reported to the TCC, both orally and in written memoranda, with respect to such new proceedings.

Specifically, Baker drafted memoranda regarding Wildfire Commission Workgroup reports, responded to questions from Baker team members and the TCC regarding PG&E's de-energization program and General Rate Case, and monitored the U.S. House of Representatives floor debate and vote concerning the disaster supplemental appropriations bill. Additionally, Baker monitored the House Energy and Commerce Energy Subcommittee hearing on FERC oversight

and monitored and summarized the California Assembly Utilities and Energy Committee hearing and the hearing of the California Senate Select Committee on the Governor's 2019 Report concerning Wildfires and Climate Change. Baker met with Administrative Law Judge Allen on the "Locate and Mark" and "Safety Culture" proceedings, and analyzed the Final 901 Commission Report sent to the Legislature.

Baker actively analyzed all legislative, gubernatorial, and regulatory developments of significance to the TCC as necessary to guide the TCC in its strategic decisions, preparing presentations for the TCC as relevant. Baker analyzed and drafted extensive memoranda to the TCC concerning: (i) amendments to and implementation of AB 1054; (ii) the CPUC OII on possible imposition of penalties on PG&E related to the wildfires; (iii) PG&E securitization; (iv) allocation of proceeds from a sale of PG&E assets under CPUC rules and precedent; (v) whether PG&E can make incentive payments to homeowners to rebuild in other locations without prior CPUC approval; (vi) possible intervention by the TCC in the CPUC OII; (vii) summarizing PG&E's request for rehearing of CPUC's order on the criteria and methodology for wildfire cost recovery; and (viii) CPUC as a creditor of Debtor for fines and penalties levied against a regulated utility.

The total hours and amount charged by Baker to this matter during the Application Period are **939.00 hours** representing **$657,354.50** in fees.

w.    Retention Applications (026):    During the Application Period, Baker continued to perform substantial assisting the TCC in seeking and obtaining the professional representation desired by the TCC, and evaluating whether the retention of certain professionals by other interested parties, including the Debtors, was necessary and appropriate.  With respect to the TCC's financial advisors, Baker prepared an application to employ Dundon Advisers LLC ("Dundon") and assisted Dundon with the related disclosures and declaration.  Additionally, Baker prepared an application to employ Trident DMG LLC ("Trident") as the TCC's Communications

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

Consultant, and assisted Trident with its related disclosures and declaration. Baker further drafted a reply to the Debtors' objection to the TCC's application to retain Trident. Orders have been entered by the Court approving the retentions of both Dundon and Trident. Baker also prepared and filed an application to clarify or amend the scope of Baker's representation of the TCC.

With respect to experts, Baker prepared an application for entry of an order supplementing the Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 701] in order to address expert retention. Baker withdrew the application after an agreement was reached between the UST, the Debtors, the OCUC and the TCC regarding expert retention procedures.

During the first Application Period, Baker also pursued the retention of Angeion Group, and worked to resolved objections to their retention filed and set for hearing during the second (instant) Application Period. Although the TCC did not ultimately retain Angeion, pursuing Angeion's retention aided Baker in negotiating improvements to the Debtors' proposed noticing programs.

With respect to other retention applications, Baker reviewed the Debtors' applications to retain Morrison & Foerster LLP, Coblentz Patch Duffy & Bass LLP ("Coblenz"), Willis Towers Watson US LLC, and KPMG LLP and advised the TCC with respect to relevant considerations. In the case of Coblenz, Baker prepared a limited objection to retention. In addition, Baker analyzed issues concerning 2014 disclosures of the professionals the Debtors sought to retain as necessary to advise the TCC regarding connections between applicants and other parties in interest.

The total hours and amount charged by Baker to this matter during the Application Period represents **230.60 hours** and **$178,543.00** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

x.      Fee Application – Baker (027):   During the Application Period, Baker reviewed all expenses and billing entries for the months of June, July, August, and September as necessary to prepare monthly fee statements and to confirm that billing for both fees and costs substantially complied with UST guidelines, the Revised Protocol, and Judge Montali's rules in terms of the adequacy of task descriptions and to confirm tasks were properly categorized consistent with the task codes established for use by professionals in the Bankruptcy Cases. Baker made discretionary downward adjustments in fees for the benefit of the estate each month, and prepared certificates of no objection for each month for which no objection was filed to Baker's fee statement. Baker also conferred with TCC chair regarding Baker's monthly fee statements and billing protocols.

In addition, Baker continued to communicate with the Fee Examiner and/or his team regarding preferences for receiving billing data and billing protocols. Baker evaluated certain inconsistences between various papers governing fee applications including the Order appointing the Fee Examiner, the Order on Case Management Procedures, and the Order on Compensation and conferred with the Fee Examiner and other estate professionals in reconciling same.

Baker also drafted and filed its First Interim Fee Application. This work included reviewing all work performed during the Application Period, and drafting narrative summaries for activities in each particular billing task code, drafting responses to additional questions from the UST Guidelines for larger Chapter 11 cases, a staffing plan and budget, and all exhibit attachments to Baker's First Interim Fee Application.

The total hours and amount charged by Baker to this matter during the Application Period represents **236.60 hours** and **$130,603.00** in fees.

y.      Fee Application – Other Professionals (028):   Baker's work this task code consisted of assisting the TCC's professionals in preparing their fee statements in accordance with

established protocols in the Chapter 11 Cases and in preparing certificates of no objection. In addition, Baker reviewed fee statements filed by other professionals including those for Weil, Gotshal & Manges LLP, Cravath, Swaine & Moore LLP, Munger Tolles & Olson LLP, and KPMG LLP, as necessary to advise the TCC as to the amounts sought. Baker spent time drafting and revising a motion amending compensation procedures for experts, and consulted with the Fee Examiner and/or his professionals as well as other case professionals to address expert billing procedures and protocols.

The total hours and amount charged by Baker to this matter during the Application Period represents **61.60 hours** and **$46,120.50** in fees.

z.  Schedules/Statement of Financial Affairs (029):  During the Application Period, Baker analyzed the Debtors' schedules, in particular, Schedules A/B relating to the Debtors' real property assets. Baker was required to devote attention to issues concerning the Debtors' insufficient disclosures of real property, and Baker conferred with the TCC's experts on this issue. Baker researched, drafted and ultimately filed a motion for an order directing the Debtors to supplement their real property schedules, which the Debtors eventually did. Baker analyzed the Debtors amended Schedules A/B, and prepared a withdrawal of the motion to compel.

The total hours and amount charged by Baker to this matter during the Application Period represents **62.70 hours** and **$36,667.50** in fees.

aa.  U.S. Trustee/Fee Examiner Issues (031): During the Application Period, Baker prepared a motion detailing the powers of the office of the UST and the powers of the OCUC under the Bankruptcy Code for the TCC. With respect to the Fee Examiner, Baker's professionals familiarized themselves with the Fee Examiner's proposed procedures, assessed implications on the fee application process, and communicated with Debtors' counsel and counsel to the OCUC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

regarding mutual concerns with the procedures as proposed, particularly in instances where they differed from the procedures established by Judge Montali.

Baker received and reviewed the Fee Examiner's initial report on Baker's First Interim Fee Application, supplied all backup information requested, and prepared for and attended a Skype meeting with the Fee Examiner and his professionals. In addition, Baker responded to questions of the UST regarding billing rates, analyzed the Fee Examiner's Motion to Approve Fee Procedures and the UST's position statement in support, and considered options for responding to same. Baker's professionals worked with the Fee Examiner to resolve disputed issues concerning fees and/or costs, and reached an agreement with the Fee Examiner as to the fees and costs in Baker's First Interim Fee Application.

The total hours and amount charged by Baker to this matter during the Application Period represents **60.70 hours** and **$28,822.00** in fees.

bb.    Unsecured Creditor Issues/ Communications/ Meetings (032):  During the Application Period, Applicant spent significant time establishing and coordinating its communications outreach plan to holders of unsecured claims against the Debtors, including efforts to educate potential claimants about the claims bar date, the wildfire assistance program, significant events in the bankruptcy cases, and important issues facing holders of tort claims. Applicant also spent time negotiating and drafting non-disclosure agreements with the Official Committee of Unsecured Creditors and the Ad Hoc Committee of Noteholders. Applicant negotiated and analyzed potential terms of a joint plan with the Ad Hoc Committee of Noteholders and actively communicated with members of the TCC regarding the analysis and negotiations. Applicant reviewed issues related the TCC's obligations under Section 1103 and communicated with the TCC regarding the same. Finally, Applicant researched, analyzed, and reviewed issues related to committee composition and eligibility and selection.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The total hours and amount charged by Baker to this matter during the Application Period represents **44.70 hours** and **$34,509.50** in fees.

cc. <u>Utility Issues/Adequate Assurance/Insurance (033)</u>: During the Application Period, Baker's professionals performed an analysis of make-whole premiums, including a comprehensive review of the Debtors' bond indentures and research of relevant pleadings. Baker attorneys also comprehensively analyzed utility provider customer personal information rules, regulations, and case law as necessary to evaluate and apply these rules to the Debtors' Chapter 11 Cases, drafting memoranda analyzing restrictions on the disclosure of customer information to third parties. Baker also analyzed the Debtors' insurance policies, researched insurance issues, and reported to the TCC concerning same.

The total hours and amount charged by Baker to this matter during the Application Period represents **83.20 hours** and **$48,783.00** in fees.

dd. <u>Withdraw Reference (034)</u>: Baker performed legal research and drafting as necessary to development of a strategy concerning withdrawal of the reference matters, in particular with respect to which court has authority to hear ongoing estimation proceedings and which claims can be included in such proceedings. Baker analyzed the bankruptcy court's decision on withdrawal of the reference and the district court order adopting the recommendation, and communicated with the TCC regarding potential impacts upon Ghost Ship claims and overall case strategy.

The total hours and amount charged by Baker to this matter during the Application Period represents **29.70 hours** and **$21,519.00** in fees.

ee. <u>Real Estate and Real Property Issues (035)</u>: Baker assisted the TCC with issues concerning the Debtors' real estate disclosures and analyzing the potential sale of certain PG&E real estate. Baker researched PUC strictures on the allocation of proceeds from the sale of

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

the Debtors' real estate, and advised the TCC on this issue. Baker reviewed information from Lincoln regarding real estate issues as necessary to best advise the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **19.70 hours** and **$14,263.00** in fees.

ff. <u>Avoidance Action Analysis/Lien Avoidance Analysis (036)</u>: During the relevant period, Baker assisted the TCC by reviewing pleadings filed in the Herndon adversary proceeding and the Debtors' adversary proceeding against the Public Employees Retirement Association of New Mexico and York County. various adversary proceedings. Baker also drafted internal analyses of issues potentially impacting the TCC related to these two adversary proceedings.

The total hours and amount charged by Baker to this matter during the Application Period represents **2.90 hours** and **$1,924.50** in fees.

gg. <u>Investigations (037)</u>: During the Application Period, Baker investigated various factual matters critical to effectively representing the TCC and maximizing value to the Debtors' estates. Among other services provided in this category, Baker conducted comprehensive background research on expert witnesses, investigated claims, reviewed and analyzed investigative reports, and issues related to inverse condemnation defenses. In addition, Baker attended the Ghost ship Warehouse fire inspection. Baker has continued to review investigatory materials on a rolling basis as received as necessary to evaluating case strategy and analyzing potential causes of action that may benefit the estates.

The total hours and amount charged by Baker to this matter during the Application Period represents **42.40 hours** and **$26,957.00** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

hh.　　Financial Advisors (038):　This task code reflects time Baker spent working with the TCC's Financial Advisors in connection with plan negotiations, the plan process, enterprise valuation and valuation of tort claims, and evaluating the Debtors' financial performance.

The total hours and amount charged by Baker to this matter during the Application Period represents **10.50 hours** and **$10,087.50** in fees.

ii.　　Other Contested Matters (039):　Baker's work in this task category encompassed several different issues that arose in the course of the Debtors' Chapter 11 Cases during the Application Period, but which do not lend themselves to placement into other task categories.　Baker examined filings as they came in in order to remain apprised of developments in the Bankruptcy Cases and to determine whether there was a need for the TCC to respond to a filing, either formally or informally.　Baker's work for the TCC in these areas included drafting reply briefing regarding CCA and AG objection regarding future claims, consideration and drafting of discovery motions and Rule 2004 requests, analysis of the declarations of the Debtors' representatives, discussions and strategy regarding potential claims against the Debtors' former officers and directors, and research of claims by the state of California. In addition, Baker addressed a motion to compel and a protective order on the TCC's behalf. Baker also engaged in communications and negotiations with the Debtors' counsel, counsel for the OCUC and the UST regarding the TCC's position with respect to certain motions/requests of the Debtors, performing related legal research and analysis of Federal Rules of Bankruptcy Procedure as the need arose, and negotiating terms and language for proposed orders. In addition, Baker researched drafting, and analyzed issues related a 9019 motion filed by the Debtors as necessary to protect the interests of the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **156.30 hours** and **$118,518.50** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

jj. <u>Operations (040)</u>: During the Application Period, Baker facilitated TCC operations by regularly sharing and uploading relevant information to the TCC's website as necessary for the TCC to efficiently communicate with its constituency and TCC subcommittees. Baker analyzed and evaluated all needs for periodic website revision updates and coordinated intake and uploading of all relevant information to the website for the TCC's use. In addition, Baker continued to advise the TCC with respect to committee bylaws, confidentiality protocols, expense reimbursement, press releases and media interactions.

The total hours and amount charged by Baker to this matter during the Application Period represent **101.60 hours** and **$65,241.50** in fees.

kk. <u>KEIP Issues (041)</u>: During the Application Period, Baker: (i) reviewed the Debtors' motion and supporting declarations for approval of a KEIP; (ii) reviewed other constituents' opposition to the Debtors' KEIP motion; (iii) conducted communications with Lincoln International regarding due diligence on, and comparative analysis of, the proposed KEIP and Debtors' responses to due diligence requests; (iv) reviewed relevant filings regarding the Debtors' STIP motion and order for insights regarding KEIP; (v) researched factual and legal issues regarding KEIP participant status and plan components; (vi) conducted factual and legal analyses and exchanged internal communications regarding basis of opposition to the proposed KEIP; (vii) drafted and revised a brief on the TCC's behalf opposing KEIP approval; (viii) prepared for and participated in the hearing on Debtors' KEIP motion; (ix) and reported to TCC on denial of Debtors' motion.

The total hours and amount charged by Baker to this matter during the Application Period represent **119.00 hours** and **$89,681.50** in fees.

ll. <u>Subrogation (042)</u>: This category includes time spent by Baker professionals analyzing the treatment of subrogation claims against the Debtors and the impact such

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

claims could have on recoveries for the TCC, and drafting extensive related memoranda. Baker, among other things, thoroughly researched and analyzed case law regarding the treatment of subrogation claims under California law and the Bankruptcy Code. This included an analysis of case law applying California's made-whole rule, the collateral source doctrine and section 509 of the Bankruptcy Code. As necessary to protect the TCC's interests, Baker analyzed and then drafted an opposition to the Debtors' motion for the entry of an order authorizing the Debtors to enter into a Restructuring Support Agreement with certain subrogation claim holders and approving the terms of a settlement. In addition, Baker professionals analyzed insurance carriers with subrogation claims against the Debtors in comparison to the insurance carriers that have potential liability under the Debtors' insurance policies.

The total hours and amount charged by Baker to this matter during the Application Period represent **626.90 hours** and **$361,990.00** in fees.

mm.     Securities (043):  Baker's work for the TCC in this task category consisted of a review of SEC filings and other public statements by the Debtors and providing securities advice to the TCC related to an amended and restated equity and debt commitment letter filed by a bondholder group, as well as a confidentiality agreement negotiated by the committee. In addition, Baker performed work necessary to advising the TCC as to relevant disclosure requirements applicable to PG&E, and reviewed PG&E's historical SEC disclosures related to liabilities.

The total hours and amount charged by Baker to this matter during the Application Period represent **25.20 hours** and **$7,381.50** in fees.

nn.     Wildfire Assistance Fund (044):      During the Application Period, Baker professionals assisted the Administrator of the Wildfire Assistance Program (the "**Administrator**") with the development of eligibility criteria for participation in and receipt of funds from the Wildfire Assistance Program. Baker drafted briefing on the issue, met with the Administrator, the Debtors'

professionals, and counsel for the OCUC regarding the Wildfire Assistance Program and fire victims eligible to participate, communicating with the TCC at each step along the way. Baker analyzed safety issues concerning the Debtors, reviewed SEC documents filed by the Debtors in 2016 - 2018 related to characterization of wildfire liabilities, monitored the Commission on Catastrophic Wildfire and Recovery meetings, monitored related regulatory developments of potential significance, and outlined a litigation plan and strategy for plan negotiations and resolution of wildfire claims for discussion with the TCC's financial advisor. In addition, Baker reviewed and recommended revisions to the order establishing a qualified settlement fund ("QSF") for the Wildfire Assistance Program and authorizing a QSF administrator.

The total hours and amount charged by Baker to this matter during the Application Period represent **134.50 hours** and **$101,257.00** in fees.

oo.     Asset Analysis and Recovery (045):  In asset analysis and recovery, Baker's primary focus during the Application Period was to ascertain the amount and scope of available insurance coverage to use as a mechanism to fund a plan of reorganization in a way that would ensure maximum recovery for fire victims.

To achieve that goal, Baker issued discovery to obtain the Debtors' commercial general liability, punitive damages, and directors and officers insurance policies. Upon receipt of the policies, Baker's professionals engaged in a thorough and complete analysis of the Debtors' various towers of insurance coverage for policy years 2015, 2016, 2017, and 2018.  To confirm whether and to what extent coverage proceeds might or might not be available, Baker analyzed, among other things, policy limits with respect to wildfire coverage, the status of excess policies in a given coverage layer, the extent to which the Debtors placed carriers on notice for liability claims, the availability of punitive damages insurance coverage, and the potential for ongoing defense costs to erode available policy limits to fund a reorganization plan.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Through this analysis, Baker determined the approximate amount of potential general liability proceeds available to fund a plan of reorganization, subject to properly establishing a mechanism to access the proceeds as part of a plan. Baker employed this analysis to create a plan of reorganization in conjunction with efforts to terminate the Debtors' exclusivity rights. Based on Baker's analysis of the policies it obtained through discovery, Baker's professionals were able to draft language for the plan of reorganization that ensures that the Fire Victim Trust is fully funded and that insurance proceeds are available. Drafting in this regard included separate funding agreements for each insurance carrier within the Debtors' various coverage towers, with reference to each carrier's policy, coverage position, and policy limits.

In addition to determining potential insurance proceeds available for plan funding, Baker's asset analysis and recovery work included serving third-party discovery on the Debtors' contractors and reviewing multiple volumes of production from third-party contractors based on those discovery requests.

The total hours and amount charged by Baker to this matter during the Application Period represent **1,444.20 hours** and **$671,914.00** in fees.

pp.    <u>Tort Claims Estimation (046)</u>: Baker's work in this category during the Application Period encompasses all preparations for the estimation trial, including responses to the Debtors' motion to estimate claims, analysis and determination of an estimation trial structure, creation of discovery and trial plans, meetings with the Debtors and the Subrogation Claimants regarding all facets of the estimation trial, preparation for and hearings before Judge Donato on estimation, discovery related to estimation, including reviewing documents, investigating , vetting and hiring liability and damages experts for use in the estimation trial, conferences with retained experts regarding their work, analysis of the experts' work in the estimation trial, analysis of fact witnesses for depositions and for use at trial, conferences with potential fact witnesses and/or their

counsel with regard to their testimony, drafting briefs and memoranda on the various legal and factual issues related to estimation, including inverse condemnation and negligence, and analysis of discovery and pleadings in other PG&E liability cases, such as the North Bay JCCP 4995.

The total hours and amount charged by Baker to this matter during the Application Period represent **4,605.20 hours** and **$2,611,888.00** in fees.

        qq.    <u>Class Claims Issues (047)</u>: This category includes time spent by Baker Hostetler professionals reviewing and analyzing class proofs of claim filed in the Chapter 11 Cases and time spent meeting with certain class action lawyers regarding their claims and potential certification.

The total hours and amount charged by Baker to this matter during the Application Period represent **11.00 hours** and **$5,484.00** in fees.

19.    <u>Costs and Expenses:</u> Baker requests allowance and reimbursement of actual, reasonable, and necessary out-of-pocket expenses in the amount of $1,899,103.14 incurred while rendering professional services on behalf of the TCC during the Application Period.

20.    Expenses incurred by Baker during the Application Period are set forth in detail on the invoices found on the docket as attachments to Baker's monthly fee statements (see Docket Nos. 3314, 3769, 4037 and 4513) and are summarized in **Exhibit D-2.**

21.    Baker submits that all expenses incurred during the Application Period were reasonable and necessary, are sought in compliance with the Guidelines, and should be allowed on an interim basis by the Court.

## THE FEES AND EXPENSES REQUESTED
## SHOULD BE AWARDED BASED UPON APPLICABLE LAW

22.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330 provides that a Court may award a professional employed under

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)   the time spent on such services;
>
> (B)   the rates charged for such services;
>
> (C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

23.     In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988).

24. In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974, a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F 2d. 67, 70 (9th Cir. 1975), *cert denied*, 425 U.S. 951 (1976): (a) the time and labor required, (b) the novelty and difficulty of the questions, (c) the skill requisite to perform the service properly, (d) the preclusion of other employment by the professional due to acceptance of the case, (e) the customary fee, (f) whether fee is fixed or contingent, (g) time limitations imposed by client or the circumstances, (h) the amount involved and the results obtained, (i) the experience, reputation and ability of the professionals, (j) the undesirability of the case, (k) the nature and length of the professional relationship with the client, and (l) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F. 2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases):

(a) <u>the time and labor required</u>: Baker and the TCC represent the interests of the most vulnerable and important constituency in these cases. Unlike the Debtors and other creditors, the TCC had no relationship with PG&E pre-petition. The time required to protect the interests of the victims the TCC represents is substantial, and the labor is complicated and multifaceted.

Baker meets with the TCC in person on a monthly basis, and weekly by phone. Multiple attorneys frequently attend these meetings to field questions from the eleven [11] members of the TCC and sometimes also from counsel for individual TCC members. These meetings cover numerous agenda items, and involve a broad area of topics and expertise, often including claims estimation, financial analysis, updates on pending motions and objections, corporate governance, criminal issues, committee operations, website updates, legislative updates, and Chapter 11 plan analysis. Baker has different attorneys working on different issues and each attorney briefs the TCC on the issues for which they are responsible.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

In addition, Baker has a weekly "core" PG&E team meeting that lasts approximately one hour. These meetings always include a number of attorneys (more than four), each of whom leads a particular project or work team and/or specializes in a particular practice area. These meetings involve high-level and substantive strategy considerations and are essential to avoid duplication of effort. The meetings are critical to coordination of case strategy and are where the core team communicates on how best to achieve the objectives of the TCC. For example, Baker's professionals working on claims estimation need to communicate with Baker's professionals working on Chapter 11 plan issues, and each need to be apprised of legislative developments. The weekly calls are where ideas and information are shared among Baker's work teams so strategic decisions can be made.

Finally, a number of attorneys (more than four) frequently attend hearings that involve multiple or complex issues. The TCC's lead counsel, generally Ms. Dumas and Mr. Julian, attend hearings together with other litigation counsel and/or the attorneys on the team responsible for working on the matter being heard. Given the number of firms and professionals employed by the Debtors, and the complicated issues the Debtors' cases present, representation of the TCC requires the attendance of multiple attorneys at hearings.

(b) the novelty and difficulty of the questions: Many of the issues related to this case are novel, due to the significant issues presented regarding the fire victims' claims and the nature of the Debtors' business.

(c) the skill requisite to perform the service properly: The skill to perform the representation of the TCC properly is significant. There are numerous complex issues presented by these cases, as evidenced by the number of professionals the Debtors have employed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(d)     the preclusion of other employment by the professional due to acceptance of the case:  Other employment of Baker has been precluded due to conflict issues created by this representation.

(e)     the customary fee:  Baker is charging its customary hourly fees in this matter.

(f)     whether fee is fixed or contingent:  Baker's fee is an hourly fee.

(g)     time limitations imposed by client or the circumstances:  There have been constrained time limitations in this representation due to the pace of legislation enacted pertaining to the Debtors' cases and the need to evaluate volumes of critical information to the TCC's interests on an expedited basis.

(h)     the amount involved and the results obtained:  The blended rate of Baker is lower than the other professionals in these cases, and the TCC has been instrumental in issues related to the DIP, the claim form for fire claimants, the victims' compensation fund, and other matters.

(i)     the experience, reputation and ability of the professionals:  Baker is well known for its experience and expertise in bankruptcy matters. Cecily Dumas and Elizabeth Green are fellows in the American College of Bankruptcy, and Baker's team is comprised of seasoned litigators and well-respected lawyers in every diverse aspect of Baker's representation of the TCC.

(j)     the undesirability of the case:  Representing the TCC in the Debtors' cases is not undesirable, but the representation is multi-faceted, time-consuming, and complicated.

(k)     the nature and length of the professional relationship with the client:  Baker had no professional relationship with the TCC prior to these cases.

(l)     awards in similar cases:  Baker's fee application is comparable with other awards in similar cases involving representation of a committee of tort victims.

25.     The time for which compensation is sought is detailed in Baker's professional fee invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3314, 3769, 4037 and 4513). Baker's services and time expenditures are reasonable considering the labor required and outcome achieved to date in these complicated cases. Baker charges for its professional services based upon the time, nature, extent and value of such services and the cost of comparable services in the San Francisco bay area, other than in a case under the Bankruptcy Code. The compensation Baker seeks by way of this Application is the customary compensation commonly sought by the Baker and other professionals representing trustees, committees, and debtors in similar circumstances.

26. Further, the Debtors spent in excess of $80 million preparing to file the Bankruptcy Cases, and Baker was not appointed as counsel to the TCC until several weeks after the Bankruptcy Cases were filed. The Debtors' cases draw on a number of specialties as evidenced by the Debtors' employment of a number of firms, including firms to handle fire claims and criminal issues. The specialties required for the complex issues presented by the Debtors' wrongdoing and circumstances include constitutional law, white collar criminal practice, and regulatory issues involving FERC and CPUC, and are at the higher end of Baker's rate structure due to the skill and experience associated with these specialties.

27. To wit, Mr. Rivkin ($1,600) is a nationally known constitutional lawyer in Baker's Washington, D.C. office. Mr. Dettelbach ($1,015) is the former U.S. Attorney for the Northern District of Ohio and is a leader of Baker's white-collar practice. Jerry Bloom ($1,145), based in Los Angeles, California, and Elizabeth Foley ($1,100), based in Washington D.C., are of counsel to Baker in the Debtors' Chapter 11 Cases. Mr. Bloom is one of very few of lawyers in the United States who specializes in CPUC matters, and is nationally recognized in Chambers as Band One in the field of energy and regulatory matters. Ms. Foley is a nationally recognized constitutional lawyer and a Professor of Law at Florida International University, where she teaches constitutional law. The two specialties in which Mr. Bloom and Ms. Foley practice are essential to representation

of the TCC and the rates these specialties command are significantly higher than the rates Baker's other attorneys of Counsel, who practice in less specialized areas, enjoy.

28.     Simply put, Baker has staffed the Debtors' Chapter 11 Cases with its best and brightest lawyers because the complexities of the cases demand it. It is worth noting that Baker's blended rate for all timekeepers in Baker's First Interim Application, including Baker's partners and counsel, was approximately $53 less than Debtors' counsel's blended rate for just its associates.

### ADDITIONAL QUESTIONS FROM THE
### UST GUIDELINES FOR LARGER CHAPTER 11 CASES

29.     Pursuant to Appendix B of the UST Guidelines, Applicant answers the questions below as follows:

30.     Did Applicant agree to any variations from, or alternatives to, Applicants' standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

*ANSWER: No.*

31.     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher than 10% or more, did Applicant discuss the reasons for the variation with the client?

*ANSWER: The fees sought in Baker's Application fell in line with those budgeted as a whole. On occasion, fees associated with one particular task code may have exceeded the fees budgeted for that task code.  For other task codes, however, Baker's fees were less than the amount budgeted, bringing the total amount of fees sought by Baker in this Application in line to the fees budgeted for at the inception of this engagement. As such, the fees sought did not exceed the fees budgeted by 10% or more in the period covered by this Application.*

32.     Have any of the professionals in this fee application varied their hourly rate based on the geographic location of the bankruptcy cases?

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***ANSWER:*** *No.*

33.     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices?  (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.)  If so, please quantify by hours and fees.

***ANSWER****: Baker reviewed each time entry in the billing records submitted with this Application in connection with preparation of the required monthly fee statements for the TCC as necessary to confirm tasks were allocated to an appropriate task code by each timekeeper and that each task was adequately described as required by the Guidelines and as necessary to facilitate the Fee Examiner's evaluation of the reasonableness of the fees requested by this Application. On occasion during this review, time entries may have been moved from one task code to another task code as appropriate or divided up and apportioned between two or more task codes[†] where the time entry clearly reflected work performed that impacted more than one area of Baker's representation of the TCC, as necessary to adhere to the budget. Baker estimates that between eight [8] to twelve [12] hours each month for the period covered by this Application was spent performing such work. The Application does not include time or fees related to preparing, reviewing, or revising invoices.*

34.     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

***ANSWER:*** *As stated above, Baker reviewed each time entry in the Application to confirm tasks were allocated to an appropriate task code by each timekeeper and that each task was adequately described as required by the Guidelines and as necessary to facilitate the Fee*

---

[†] For instance, a time entry reflecting 1.5 hours may have been broken down into smaller increments and spread between two or more task code categories. For example, where a task described research performed that could impact both Chapter 11 plan structure and the treatment of particular claims, the 1.5 hour entry may have been apportioned so that .7 was allocated to Task Code 008 (concerning Chapter 11 Plan/Plan Confirmation) and .8 was allocated to Task Code 005 (concerning, among other things, claims).

*Examiner's evaluation of the reasonableness of the fees requested by this Application. Each of Applicant's timekeepers have been instructed to consider issues of confidentiality contemporaneously with drafting his or her time entries so that a further subsequent review of time records in connection with an assessment of privilege or confidentiality is, for the most part, unnecessary. Baker's billing records submitted with this Application contain very few redactions, and Baker has submitted unredacted invoices to the Fee Examiner and believes the Fee Examiner possesses sufficient information with which to evaluate the reasonableness of fees charged. Baker estimates no more than three [3] hours were spent evaluating confidentiality of time entries for this Application Period.*

35.     If this fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

***ANSWER***: *The Application and proposed order accompanying the Application do not request any rate increases since Baker was retained as counsel to the TCC. However, there was an erroneous increase in the hourly rates of two timekeepers on Baker's First Interim Fee Application due to a programming error for which Baker is filing an amendment reducing the hourly rates. Specifically, Elizabeth Green was reflected as having an hourly rate of $720, however, her standard hourly billing rate is $690. In addition, Andrew Layden was reflected as having an hourly rate of $550, however, his standard hourly billing rate is $410. As such, the amendment to Baker's First Interim Fee Application being filed by Baker will reduce the fees attributed to the work performed by Elizabeth Green and Andrew Layden by $4,327 for the First Interim Application Period, and*

*the instant application is reducing the fees attributed to the work performed by Elizabeth Green*

*and Andrew Layden by $9,773 for the Second Interim Application Period.*

Otherwise, prior to any decision to increase rates for the engagement as counsel to the
TCC, Baker will discuss the matter with the TCC and will advise the TCC they need not agree to
modified rates or terms in order for Baker to continue representing the TCC. Baker typically adjusts
rates at the beginning of each calendar year, and this is routinely disclosed in Baker's engagement
letters to clients.

36.     Pursuant to the UST Guidelines, required exhibits are attached as:

(a)     **Exhibit A** – "Customary and Comparable Compensation Disclosure with
Fee Applications"

(b)     **Exhibit B** – "Summary of Timekeepers Included in this Application".

(c)     **Exhibit C-1** – "Budget"

(d)     **Exhibit C-2** – "Staffing Plan"

(e)     **Exhibit D-1** – "Summary of Compensation Requested by Project Category"

(f)     **Exhibit D-2** – "Summary of Expense Reimbursement Requested by
Category"

## AVAILABLE FUNDS

37.     Baker understands that the Debtors have sufficient funds available for the payment
of interim fees and costs requested herein.

## CONCLUSION

38.     Baker believes that this Application appropriately sets forth the significant matters
handled on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors'
creditors, and other interested parties with an insightful overview of the scope of services rendered.
Thus, Baker respectfully submits that the fees and expenses sought herein are reasonable and that
the services rendered were necessary, effective, efficient and economical.  Accordingly, Baker

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

respectfully requests that this Application for allowance of fees and expenses, on an interim basis, be granted in all respects.

WHEREFORE, Baker respectfully seeks entry of an order, essentially in the form as attached **Exhibit H**:

1.     Awarding interim allowance of compensation for professional services rendered during the Application Period in the amount of **$13,218,893.64**, consisting of $11,494,553.25 in reasonable fees incurred and $1,899,103.14 in actual and necessary expenses, minus: 1) a reduction in fees for non-working travel time in the amount of $164,989.75; and 2) a reduction in fees due to a billing error in the amount of $9,773.00.

2.     Authorizing and directing the Debtors to make prompt payment to Baker in the total amount of **$5,320,609.37**, which is the difference between the amount requested and the amount already paid by the Debtors pursuant to the Interim Compensation Order, minus: 1) the reduction in fees for non-working travel time in the amount of $164,989.75; and 2) the reduction in fees due to a billing error in the amount of $9,773.00.

3.     Granting such other and further relief as the Court may deem just and proper.

Dated: November 14, 2019                    BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
Cecily A. Dumas
Counsel to the Official Committee of Tort Claimants

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**CERTIFICATION**

I, Cecily A. Dumas, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1.　I am a partner in the law firm of Baker & Hostetler LLP ("**Baker**"). I submit this certification in support of the *Second Interim Application of Baker & Hostetler LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period June 1, 2019 through September 30, 2019* (the "**Application**").‡

2.　I have personally reviewed the information contained in the Application and believe its contents to be true to the best of my knowledge, information and belief.

3.　The compensation and expense reimbursement sought in this Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules'**), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**), and the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the revised

---
‡ Capitalized terms not defined have the meanings used in the Application.

Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**").

4.      The compensation and expense reimbursement requested in this Application are billed at rates, in accordance with Baker's practices, no less favorable than those customarily charged by Baker and generally accepted by Baker's clients.

Date:   November 14, 2019          BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
Cecily A. Dumas
Counsel to the Official Committee of Tort Claimants

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**Notice Parties**

| | |
|---|---|
| PG&E Corporation<br>c/o Pacific Gas & Electric Company<br>Attn:  Janet Loduca, Esq.<br>77 Beale Street<br>San Francisco, CA 94105 | Keller & Benvenutti LLP<br>Attn:   Tobias S. Keller, Esq.<br>         Jane Kim, Esq.<br>650 California Street, Suite 1900<br>San Francisco, CA 94108 |
| The Office of the United States Trustee for Region 17<br>Attn:   James L. Snyder, Esq.<br>         Timothy Laffredi, Esq.<br>450 Golden Gate Avenue, 5th Floor, Suite #05-0153<br>San Francisco, CA 94102 | Milbank LLP<br>Attn:   Dennis F. Dunne, Esq.<br>         Sam A. Khalil, Esq.<br>55 Hudson Yards<br>New York, NY 10001-2163 |
| Milbank LLP<br>Attn:   Paul S. Aronzon, Esq.<br>         Gregory A. Bray, Esq.<br>         Thomas R. Kreller, Esq.<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067 | Weil, Gotshal & Manges LLP<br>Attn:   Stephen Karotkin, Esq.<br>         Jessica Liou, Esq.<br>         Matthew Goren, Esq.<br>767 Fifth Avenue<br>New York, NY 10153-0119 |
| Bruce A. Markell<br>Fee Examiner<br>541 N. Fairbanks Court<br>Suite 2200<br>Chicago, IL 60611-3710 | Scott H. McNutt<br>Attorney for the Fee Examiner<br>324 Warren Road<br>San Mateo, CA 94402 |

BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES