XAVIER BECERRA, SBN 118517
Attorney General of California
MARGARITA PADILLA, SBN 99966
Supervising Deputy Attorney General
JAMES POTTER, SBN 166992
Deputy Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0815
Fax: (510) 622-2270
Margarita.Padilla@doj.ca.gov
James.Potter@doj.ca.gov

XAVIER BECERRA, SBN 118517
Attorney General of California
DANETTE VALDEZ, SBN 141780
ANNADEL ALMENDRAS, SBN 192064
Supervising Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3367
Fax: (415) 703-5480
Danette.Valdez@doj.ca.gov
Annadel.Almendras@doj.ca.gov

STEVEN H. FELDERSTEIN, SBN 059678
PAUL J. PASCUZZI, SBN 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Fax: (916) 329-7435
sfelderstein@ffwplaw.com
ppascuzzi@ffwplaw.com

Attorneys for California Department of Forestry
and Fire Protection, et al.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br> - and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered) |
| ☐    Affects PG&E Corporation<br>☐    Affects Pacific Gas and Electric Company<br>☑    Affects both Debtors | Date:    December 17, 2019<br>Time:    10:00 a.m.<br>Ctrm:    17<br>Judge:    Dennis Montali |

**RESPONSE OF THE CALIFORNIA STATE AGENCIES TO DEBTORS' NOTICE OF DESIGNATION OF CLAIMS FILED BY THE STATE OF CALIFORNIA AS UNLIQUIDATED AND SUBJECT TO ESTIMATION UNDER SECTION 502(c) OF THE BANKRUPTCY CODE [DOCKET NO. 4553]**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

RESPONSE.............................................................................................................................3

    A.    Designated Claims Not Related to the Wildfires Subject to the Estimation
           Motion Are Not Subject to Estimation .....................................................................3

    B.    Section 502(c) Estimation is Applicable to Unliquidated Claims Only ..................5

    C.    The California State Agencies' Liquidated Claims are Known with
           Precision or are Readily Ascertainable ...................................................................6

           1.    CAL FIRE. .....................................................................................................6

           2.    DTSC ...........................................................................................................10

           3.    Cal State University. ...................................................................................11

           4.    DDS...............................................................................................................12

           5.    State Parks ...................................................................................................13

    D.    The Liquidated Portion of the Claims of Cal OES, CalVet and Caltrans Are
           Not Subject to the Estimation Procedures..............................................................13

           1.    Cal OES.........................................................................................................13

           2.    CalVet ...........................................................................................................15

           3.    Caltrans ........................................................................................................16

    E.    For Purposes of the Estimation Motion Only, State Parks Does Not Object
           to the Debtors' Designation of Its Claims with Respect to the Nuns Fire as
           Subject to the Estimation Procedures.....................................................................17

RESERVATION OF RIGHTS ..............................................................................................18

CONCLUSION......................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*In re Audre, Inc.*
  202 B.R. 490 (Bankr. S.D. Cal. 1996) ...............................................................5, 6

*In re Fostvedt*
  823 F.2d 305 (9th Cir. 1987).................................................................................5

*FDIC v. Wenberg (In re Wenberg)*
  94 B.R. 631 (B.A.P. 9th Cir. 1988).......................................................................2

*Nicholes v. Johnny Appleseed (In re Nicholes)*
  184 B.R. 82 (B.A.P. 9th Cir. 1995).....................................................................5, 6

*People v. S. Cal. Edison Co.*
  56 Cal. App. 3d 593 (1976)....................................................................................9

*People v. S. Pac. Co.*
  139 Cal. App. 3d 627 (1983)..................................................................................9

*People ex rel. Grijalva v. Superior Court*
  159 Cal. App. 4th 1072 (2008)...............................................................................9

*Reading Co. v. Brown*
  391 U.S. 471 (1968)...............................................................................................4

*Slack v. Wilshire Ins. Co. (In re Slack)*
  187 F.3d 1070 (9th Cir. 1999)................................................................................5

## STATUTES

11 U.S.C. § 109 ..................................................................................................2, 5

11 U.S.C. § 502 .............................................................................................*passim*

28 U.S.C. § 959 .......................................................................................................4

California Civil Code § 3287 ...................................................................................9

California Health & Safety Code § 13009 .....................................................7, 9, 11

California Health & Safety Code § 25354 .............................................................10

California Public Resources § 713 ..........................................................................7

California Public Resources § 714 ..........................................................................7

California Water Code § 80000 ...............................................................................3

California Water Code § 80106 ...............................................................................4

California Water Code § 80112 ...............................................................................4

The California Department of Forestry and Fire Protection ("CAL FIRE"), California Department of Toxic Substances Control ("DTSC"), California Governor's Office of Emergency Services ("Cal OES"), California Department of Veterans Affairs ("CalVet"), California State University, Chico ("Cal State University"), California Department of Parks and Recreation ("State Parks"), California Department of Transportation ("Caltrans"), California Department of Developmental Services ("DDS") and California Department of Water Resources ("DWR") (collectively, the "California State Agencies") hereby file this response to the Notice of Debtors' Designation of Claims Filed by the United States of America, the State of California and Adventist Health System as Unliquidated and Subject to Estimation Under Section 502(c) of the Bankruptcy Code ("Notice") [Docket No. 4553] based on the following:

**INTRODUCTION**

The California State Agencies oppose the Debtors' designations in the Notice on the following grounds:

1.      The claim filed by DWR, and the claims of CAL FIRE with respect to the 415, Almond, Benson, Bissett, Cienega, Corrine, Country, Harney, Northridge, Parkfield, Saddle, Sawmill, Soda, Table and Zenon fires, do not relate to any of the wildfires that are the subject of the Debtors' Estimation Motion (defined below), should not have been included in the Notice, and cannot be estimated pursuant to the Debtors' Estimation Motion.   The California State Agencies reserve all rights with respect to whether those claims are unliquidated or otherwise subject to estimation under Section 502(c).  And like the Debtors, the California State Agencies reserve all rights related to those claims, including allowance, disallowance and the determination of the amounts thereof.[1]

2.      The remaining designated CAL FIRE claims, the DTSC claim, the Cal State University claim, the DDS claim, the five claims filed by State Parks with respect to the Camp

---

[1] Only claims of the California State Agencies related to wildfires and the Debtors' Notice are addressed in this response.  For example, State Parks filed thirteen proofs of claim, of which only nine relate to wildfires.  Similarly, Claim No. 77351 ("DTSC's Wildfire Claim") is one of ten proofs of claim DTSC filed in this matter.  DTSC's Wildfire Claim seeks reimbursement of specific costs that DTSC has incurred or will incur responding to the wildfires.  DTSC's other proofs of claim are unrelated to the wildfires.  Other California State Agencies also may have filed proofs of claim that are unrelated to the wildfires.

Fire and the amended State Parks claim filed with respect to staff costs related to the Nuns Fire (collectively, the "Liquidated Claims") are each for specific amounts that have already been spent by the respective state agency and are liquidated for purposes of section 502(c).[2] As such, the Liquidated Claims are not subject to estimation under section 502(c).

3.     For purposes of the Estimation Motion only (and reserving all other rights), the designated claims of Cal OES, CalVet and Caltrans include liquidated and unliquidated portions as explained below and, to the extent that the claims are liquidated, such claims cannot be estimated under section 502(c).[3] For purposes of the Estimation Motion only, Cal OES, CalVet and Caltrans calculate the liquidated and unliquidated portions of their respective claims as follows:

| Entity | Liquidated Portion | Unliquidated Portion | Total Claim |
|---|---|---|---|
| Cal OES | $409,612,244.00 | $2,284,452,726.00 | $2,694,064,970.00 |
| CalVet | $4,385,193.55 | $6,493,553.86 | $10,878,747.41 |
| Caltrans | $21,270,374.95 | $203,360,053.00 | $224,630,427.95 |
| **Grand Total** | **$435,267,812.50** | **$2,494,306,332.86** | **$2,929,574,145.36** |

4.     Each of the four claims filed by State Parks with respect to the Nuns and Tubbs Fires were amended to exclude amounts for the Tubbs Fire or will be withdrawn. Of the three amended claims, the claim relating to staff costs associated with the Nuns Fire (Claim No. 77009, as amended) is fully liquidated and included in the Liquidated Claims, as noted above. State Parks is not objecting to the Debtors' designation that its claims, as amended, relating to lost revenue and property damage with respect to the Nuns Fire (Claim Nos. 60322 and 79781, as amended) are unliquidated solely for purposes of the Estimation Motion and without waiving any other rights with respect thereto.

[2] While the Notice lists six claims for State Parks with respect to the Camp Fire, the $14,914.95 claim for supplies was not filed, so there are only five proofs of claims filed by State Parks with respect to the Camp Fire. For the convenience of the Court, a chart of the 43 claims of the California State Agencies listed in the Notice along with a reference to the filed proof of claim number is attached to this brief as Exhibit A. Each of the proofs of claim listed in Exhibit A, as amended, are incorporated into this response as if filed herewith.

[3] *See, e.g., FDIC v. Wenberg (In re Wenberg)*, 94 B.R. 631 (B.A.P. 9th Cir. 1988) (where the bankruptcy court determined portions of the FDIC's claim were liquidated and unliquidated for purposes of section 109(e)). With respect to the Debtors' designation of unliquidated claims in connection with the Estimation Motion only, the California State Agencies do not object to certain designations solely as set forth in this response. The California State Agencies reserve all rights with respect to such claims, including related to the allowance or disallowance and the determination of the amounts thereof.

Case: 19-30088    Doc# 4774    Filed: 11/15/19    Entered: 11/15/19 15:57:51    Page 5 of 32

**RESPONSE**

**A.    Designated Claims Not Related to the Wildfires Subject to the Estimation Motion Are Not Subject to Estimation**

As set forth in the Notice, the motion filed by the Debtors on July 18, 2019 [Dkt. No. 3091] (the "Estimation Motion") "sought to establish the framework under which the Debtors aggregate liability for all contingent and/or unliquidated claims arising out of the 2015, 2017 and 2018 Northern California Wildfires (the '**Wildfires**' and the '**Wildfire Claims**')." Notice at 2:8-10 (footnote omitted). As specified in footnote 1 of the Notice, the Wildfires that are subject to the Estimation Motion are "the 2015 Butte Fire, the 2018 Camp Fire and the following 2017 North Bay Wildfires: (1) Adobe; (2) Atlas; (3) Blue; (4) Cascade; (5) Cherokee; (6) Highway 37; (7) Honey; (8) La Porte; (9) Lobo; (10) Maacama; (11) McCourtney; (12) Norrbom; (13) Nuns; (14) Oakmont/Pythian; (15) Partrick; (16) Pocket; (17) Point; (18) Potter/Redwood; (19) Pressley; (20) Sullivan; (21) Sulphur and (22) Tubbs." Notice at p.2, n.1; see also Estimation Motion at p.iii, n1.

Notwithstanding that the Debtors' Estimation Motion limits the scope of the estimation to certain Wildfires, the Notice includes a protective claim (which has since been amended as Claim No. 66196) filed by DWR, by and through its California Energy Resources Scheduling Division (CERS), that does not relate to any wildfire. Rather, this claim relates to charges that PG&E is required to bill and collect from its ratepayers pursuant to California Water Code Section 80000 et seq. and applicable orders of the California Public Utilities Commission (CPUC). The charges pay for the $11.2 billion in bonds that CERS issued to pay for the power it purchased on behalf of the State's investor-owned utilities during the California Energy Crisis. Because this claim does not relate to any wildfire, counsel for the Debtors admit that it is not subject to estimation covered by the Estimation Motion.

Debtors nevertheless contend that the CERS's claim is subject to estimation. CERS disagrees. PG&E is required to segregate and hold in trust all bond charges collected from its

///

///

ratepayers for the benefit of CERS pursuant to section 80112 of the California Water Code.[4] Pursuant to the same section of the Water Code and related CPUC orders, PG&E must then remit the collected bond charge to CERS. These state law obligations continue notwithstanding that PG&E filed for bankruptcy. 28 U.S.C. § 959(b) (requiring debtor in possession of comply with applicable state law). And a debtor in possession's compliance with state law is a fundamental condition to its continued operation. Thus, section 502(c) cannot be used, and should not be allowed to be used, by a debtor to potentially avoid its ongoing state law obligations, even when those obligations have not yet been liquidated.[5]

Finally, and equally important, estimation of the amount of CERS's claim, even if proper, is not necessary to prevent undue delay in the administration of this case. First, CERS expressly acknowledged in its proof of claim that PG&E is current in its remittance obligations to CERS, and that its claim is filed solely as a precautionary measure in case additional remittance amounts are determined to be due down the line. Second, for nearly two decades, including during the pendency of this case, CERS and PG&E have regularly and successfully engaged in an internal true-up process to ensure that bond remittances that were made based on forecasted energy needs of PG&E's customers lined up with the actual power used.[6] Given this process and the fact that no additional prepetition amounts have been identified as due in the ten months since PG&E filed this case, it is difficult to imagine how estimation of the amount of CERS's claim is necessary to prevent undue delay in the administration of this case. In short, a process exists, and has successfully operated for nearly twenty years, to finally determine the amount of PG&E's bond charge remittances to CERS, and there is no reason to believe that, as they have in the past, the

---

[4] Section 80112 of the California Water Code provides, in relevant part, that "[t]o the extent any moneys are received by an electrical corporation pursuant to Section 80106 in the process of collection, and pending their transfer to the department, they shall be segregated by the electrical corporation on terms and conditions established by the department and shall be held in trust for the benefit of the department."

[5] As set forth in its amended proof of claim, CERS reserves all rights to assert that its claim set forth in Claim No. 66196 is entitled to administrative priority. See *Reading Co. v. Brown*, 391 U.S. 471 (1968) (post-petition tort liabilities of a business that continues to operate in bankruptcy qualify for administrative expense priority as actual and necessary expenses for the preservation of the estate). Conversion by PG&E of funds statutorily held in trust for CERS would satisfy this standard.

[6] Pursuant to this Court's Customer Program Order entered on March 12, 2019 [Docket No. 843], CERS and PG&E have operated "business as usual" during this case.

parties will not in the ordinary course of business be able to determine the extent to which, if at all, any further amounts are due.

The Notice also includes the claims filed by CAL FIRE with respect to the following fires: 415, Almond, Benson, Bissett, Cienega, Corrine, Country, Harney, Northridge, Parkfield, Saddle, Sawmill, Soda, Table and Zenon. None of these wildfires are included in the definition of "Wildfire" in the Estimation Motion and, therefore, are not subject estimation by the very terms of the Estimation Motion. The Debtors acknowledge such in the Notice. *See* Notice at 9:15-21.

**B.    Section 502(c) Estimation is Applicable to Unliquidated Claims Only**

Bankruptcy Code section 502(c) permits the bankruptcy court to, among other things, estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case [.]" 11 U.S.C. § 502(c)(1).

Under Ninth Circuit authority, "whether a debt is liquidated turns on whether it is subject to 'ready determination and precision in computation of the amount due.'" *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (referring to the term "liquidated" as used in section 109(e)) (citations omitted). That same definition has been used in the context of interpreting "unliquidated" for section 502(c) purposes. *In re Audre, Inc.*, 202 B.R. 490 (Bankr. S.D. Cal. 1996). Moreover, a debt is liquidated even if liability has not been adjudicated or it is disputed. *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1074-75 (9th Cir. 1999) (section 109(e) case).

"[A] contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *Fostvedt*, 823 F.2d at 306 (citations omitted). "[A] debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *Nicholes v. Johnny Appleseed (In re Nicholes)*, 184 B.R. 82, 88 (B.A.P. 9th Cir. 1995) (citing *Fostvedt*). As the *Nicholes* court explained:

> A tort claim ordinarily is not contingent as to liability; the events that gave rise to liability to the tort claim usually have occurred and liability is not dependent on some future event that may never happen. It is immaterial that the tort claim is not adjudicated or liquidated, or that the claim is disputed, or indeed that it has any of the many other characteristics of claims under the Code.

*Nicholes*, 184 B.R. at 88 n.7 (citation omitted). The *Nicholes* analysis has been applied with respect to interpreting "contingent" for section 502(c) purposes. *Audre, Inc.*, 202 B.R. at 492. As this Court has previously noted in open court, each of the Wildfires subject to the Estimation Motion has occurred, so each of the California State Agencies' claims involving those Wildfires is not contingent.

**C.     The California State Agencies' Liquidated Claims are Known with Precision or are Readily Ascertainable**

As set forth in the filed proofs of claims, the Liquidated Claims of CAL FIRE, DTSC, Cal State University, and DDS as well as the claims of State Parks with respect to the Camp Fire, are NOT contingent (as noted above) or unliquidated and thus are NOT subject to estimation pursuant to the express language of section 502(c). Simply by reviewing the various Liquidated Claims, the Court can determine that the amount of each such claim represents funds that have already been spent and are specified in detail in each of the Liquidated Claims. The sole exception to this is the DDS claim, which is based on funds that are obligated, as discussed below and are therefore readily determinable and liquidated.

1.     CAL FIRE:  CAL FIRE filed seven separate proofs of claim related to the Wildfires that are included in the Estimation Motion: (a) Atlas, Adobe, Norrbom, Nuns, Partrick, Pocket, Pressley and Pythian/Oakmont Fires (Claim No. 77897), (b) Blue Fire (Claim No. 75665), (c) Butte Fire (Claim No. 79729), (d) Camp Fire (Claim No. 78467), (e) Cascade, La Porte, Lobo and McCourtney Fires (Claim No. 77727), (f) Honey Fire (Claim No. 77667) and (g) Sulphur Fire (Claim No. 79752) (collectively, the "CAL FIRE Claims"). Each CAL FIRE Claim includes, *inter alia*, a supplemental statement describing the specific fire(s) and the grounds for CAL FIRE's right to recovery.

Each CAL FIRE Claim also attaches an Activity Reporting and Costs Summary that sets forth the specific amounts for: (a) Ground Resources, including personnel activity (subdivided into straight time, overtime, incidental differentials and emergency workers), equipment activity, and operating expenses, (b) Air Resources, including fixed wing, rotary wing, and other aircraft costs, and (c) administrative charges already spent by CAL FIRE in connection with the specific

Wildfire(s) that are the subject of that CAL FIRE Claim. In addition to the CAL FIRE Claims, CAL FIRE filed a separate proof of claim for a specific amount of post-petition attorneys' fees incurred by CAL FIRE through October 16, 2019 (Claim No. 65505).

While a review of the CAL FIRE Claims is enough for the Court to rule that the CAL FIRE Claim are liquidated and not subject to estimation, a review of California law regarding the basis for the CAL FIRE Claims bolsters this conclusion. Under California law, CAL FIRE is charged with "fire protection, fire prevention . . . of the state's forest, range, and brushland resources . . . associated emergency services, and assistance in civil disasters and other nonfire emergencies" and "[e]nforcing forest and fire laws" in California. Cal. Pub. Res. Code §§ 713, 714. CAL FIRE's fire protection responsibilities include regularly responding to fire emergencies throughout the state. CAL FIRE also bears responsibility for investigating the origin and cause of fires that occur in its jurisdiction.

California Health and Safety Code sections 13009 and 13009.1 authorize CAL FIRE to recover certain costs from persons who, negligently or in violation of the law, "set[] a fire, allow[] a fire to be set, or allow[] a fire kindled or attended by him or her to escape onto any public or private property." Cal. Health & Safety Code §§ 13009, 13009.1. Recoverable costs include costs incurred in fighting and suppressing the fire, costs of rescue and emergency medical services, investigation costs, and administrative and accounting costs. *Id.* §§ 13009(a), 13009.1(a). While CAL FIRE's claim for cost recovery is statutory, the costs are recoverable from the responsible party "in the same manner as . . . an obligation under a contract, express or implied." *Id.* §§ 13009(a), 13009.1(e). Each of CAL FIRE's claims for cost recovery arising out of the Wildfires is liquidated because each claim is both readily determinable and is a precise computation of the amount due to CAL FIRE based on the respective Wildfire.

It is CAL FIRE's practice to complete internal processes that precisely compute the amount of CAL FIRE's cost recovery claims with respect to each fire incident at issue. After CAL FIRE has suppressed a fire, if CAL FIRE determines that the fire was caused by negligence and/or violation of law (and/or for other reasons not relevant here), a CAL FIRE employee initiates the Activity Reporting Costs (ARC) Report for the fire, which is prepared using a CAL

FIRE internal ARC software program.

The ARC software program imports qualifying, recoverable costs associated with the incident from various accounting programs and processes at CAL FIRE. Once all appropriate costs have been imported, CAL FIRE personnel begin a review and audit of the imported costs associated with the fire. During this review, CAL FIRE personnel collect finance documents related to the incident, confirm those documents correspond to the charges in the ARC, and adjust the costs claimed in the ARC to ensure compliance with CAL FIRE's cost recovery policies. If a cost is not supported by back-up financial documents or not incurred in relation to the particular fire, CAL FIRE personnel make the cost "not billable," manually removing it from the ARC. In this way, CAL FIRE personnel review and analyze each line-item charged to a specific fire.

Once finished, the ARC package, generally consisting of the ARC Report and supporting finance documents, becomes CAL FIRE's report of recoverable costs related to a specific incident. The first page of the ARC Report is the ARC Summary, which is divided into sections relating to suppression and investigation: Ground Resources – and further divided by personnel activity (subdivided by straight time, overtime, and emergency workers), equipment activity, and operating expenses – and Air Resources (fixed wing, rotary wing, and other); and a further section for the administrative charge, which covers CAL FIRE's costs of administering a suppression, investigation, and cost recovery program. Subsequent pages of the ARC detail information including the name, class, hours, and rate of each individual who worked on a fire; a line item entry for each piece of equipment used, including the type of equipment, its rate, and amount of time it was used; line items for each operating expense claimed; and line items for each piece of aircraft used, including the type of aircraft, time in use, crew, and rates for both crew personnel and the aircraft.

As noted above, this information is supported and has been audited to ensure that it reflects actual expenses that have been documented by CAL FIRE with respect to each particular fire. These numbers are calculated based on CAL FIRE's records and are not subject to change, unless, for example, a new invoice is submitted by a cooperating agency or vendor, a new receipt is located to back-up an item that was manually written off the ARC for lack of documentary

8

support, or further review identifies an error in previous calculations. The potential for errors when one is working with a large volume of documents is true in any case and such a possibility does not undermine the fact that each CAL FIRE claim is certain to the penny, is based on concrete financial supporting documentation, and is calculated consistent with governing statutes, case law, and its fire cost recovery policy, as discussed in more detail below.

Under California Health and Safety Code section 13009, "the proper measure for determining 'expense' incurred for fighting fires . . . requires that (1) the expense claimed be incurred in fighting the fire, (2) that said expense be the proximate result of defendant's wrongful conduct, and (3) that said expense be reasonably incurred." *People v. S. Cal. Edison Co.*, 56 Cal. App. 3d 593, 605 (1976). A complete ARC package lays the foundation for both the reasonableness and amount of CAL FIRE's costs, as required under Section 13009, and California courts have held that CAL FIRE's ARC "conclusively established" the amount CAL FIRE expended in recoverable fire suppression and investigation activities. *Id*. at 602-607. Moreover, the costs incurred in fighting a fire are deemed reasonable if they were actually incurred. *See People ex rel. Grijalva v. Superior Court*, 159 Cal. App. 4th 1072, 1077-78 (2008) (holding that based on the statutory immunities in the Government Code, arguments that CAL FIRE used "unreasonable or inefficient methods to fight the fire" are "foreclosed by the Government Code"). As a result, the costs described in CAL FIRE's ARCs generally are not subject to substantial revision at trial because defendants opposing CAL FIRE's cost recovery claims cannot make arguments of comparative fault or mitigation of damages to reduce CAL FIRE's costs described in the ARC. *Id.*

CAL FIRE's normal procedure for fires caused negligently or in violation of the law is to send a Letter of Demand to the responsible party, identifying CAL FIRE's recoverable costs, as described in its ARC. CAL FIRE's transmission of its demand letter to the responsible party triggers prejudgment interest at a rate of ten percent per annum on the amount due. Cal. Civ. Code § 3287; *People v. S. Pac. Co.*, 139 Cal. App. 3d 627, 640-41 (1983). This is because the fire suppression costs identified in the ARC are "certain, or capable of being made certain by calculation." Cal. Civ. Code § 3287(a).

Case: 19-30088   Doc# 4774   Filed: 11/15/19   Entered: 11/15/19 15:57:51   Page 12 of 32

The weight of authority above supports the conclusion that CAL FIRE's claims are readily determinable and liquidated for purposes of Bankruptcy Code section 502(c). Because the ARCs identify each specific recoverable expense that CAL FIRE incurred in suppressing, investigating, and accounting for a fire, because CAL FIRE calculates these expenses mathematically down to the penny, and because the amounts sought are not subject to determination through an evidentiary hearing under California law, CAL FIRE's ARC-backed cost recovery claims are liquidated. In addition, the specific amount of post-petition attorneys' fees already incurred by CAL FIRE through October 16, 2019, with respect to the Debtors' bankruptcy case also are liquidated. The CAL FIRE Claims cannot be estimated.

2. <u>DTSC</u>: DTSC has authority to take "immediate corrective action necessary to remedy or prevent an emergency resulting from a fire or an explosion of, or human exposure to, hazardous substances caused by the release or threatened release of a hazardous substance." Cal. Health & Safety Code §§ 25354. As demonstrated in DTSC's Wildfire Claim (Claim No. 77351), DTSC exercised that authority to locate and remove hazardous wastes or other hazardous substances in individual burned structures, following the Butte, Sulphur, Cascade, McCourtney and Lobo, Redwood Valley, Laporte and Camp Fires. The task is well-defined and limited in time. After receiving a mission task from OES, DTSC directs a contractor to inspect each burned structure and remove and legally dispose of any hazardous substances it locates. Primarily, DTSC and its contractors inspect burned residential structures, but occasionally other agencies will call on DTSC to remove substances from individual non-residential structures.

DTSC employs a detailed process to track costs and employee time for responding to cleanup of hazardous substances at each site. Exhibit C to DTSC Claim No. 77351 sets forth the specific amounts DTSC has already expended for contractor costs as well as travel and personal service costs related to the Butte, Sulphur, Cascade, McCoutney & Lobo, Redwood Valley and La Porte Fires. As to the Camp Fire, DTSC's claim includes contractor costs incurred through February 28, 2019 and all travel and personal service costs through June 30, 2019. Like CAL FIRE, DTSC's response costs have already been spent, are determinable and are therefore

-10-

Case: 19-30088    Doc# 4774    Filed: 11/15/19    Entered: 11/15/19 15:57:51    Page 13
of 32

liquidated. The DTSC Claim cannot be estimated.[7]

Health and Safety Code section 13009.6 provides that a public agency, such as DTSC, may recover emergency response expenses it incurs "to confine, prevent, or mitigate the release, escape, or burning of *hazardous substances*" from a person whose negligence causes the incident, where the incident results in a fire that spreads beyond where it originated. Cal. Health & Safety Code § 13009.6(a)(1)(B) (Emphasis added). Crucially, the "charge created against the person . . . is also a charge against the person's employer if the negligence causing the incident occurs in the course of the person's employment" *id.,* § 13009.6(a)(3) and the "expenses reimbursable to a public agency under this section are a debt of the person liable therefor, and shall be collectible in the same manner as in the case of an obligation under contract, express or implied." *Id.,* § 13009.6(a)(2).

3. <u>Cal State University</u>: As described in its proof of claim (Claim No. 79746), as a result of the Camp Fire, the California State University, Chico campus was enveloped in smoke resulting in an emergency closure of the campus from November 9 to November 23, 2018. In addition, students, faculty and staff were required to evacuate their homes. Athletic events were cancelled, business property was destroyed, and Cal State University was required to staff and supply its Emergency Operation Center and Critical Response Unit.

Claim No. 79746 sets forth the specific amount of funds Cal State University has expended as a result of the Camp Fire. These include specific amounts spent to (a) preserve its building and real property damaged by the Camp Fire, (b) replace computers and other business property destroyed in the Camp Fire (including business property located in various homes in Paradise and surrounding communities), (c) purchase food and other supplies for the Emergency Operation Center and Critical Response Unit operated in response to the Camp Fire, (d) refund tickets for three basketball games cancelled as a result of the Camp Fire, and (e) pay overtime to non-exempt and student employees called to work during the emergency closure period. Physical

---

[7] DTSC has continued to incur costs after the cut-off dates specified in Claim No. 77351 for contractor costs and travel and personal service costs. These additional costs are certain and DTSC will amend its Wildfire Claim accordingly. Additionally, in the event DTSC receives additional requests to remove hazardous substances from non-residential properties burned in the Camp Fire, it will amend DTSC's Wildfire Claim to incorporate those costs as well.

receipts and reports back up each dollar spent. As shown in the Cal State University proof of claim, each of these costs are determinable and liquidated. The Cal State University claim cannot be estimated.

4. <u>DDS</u>: DDS provides services to individuals with developmental disabilities. DDS was impacted by the Nuns-Norrbom Fire and Camp Fire.[8] As described in its proof of claim (Claim No. 73262, as amended), the Nuns-Norrbom Fire in October 2017 caused DDS to evacuate all of its approximately 241 consumers housed in its Sonoma Developmental Center and resulted in extensive damage to that center. DDS has received over $10 million in funds from the Federal Emergency Management Agency ("FEMA") as a result of Nuns-Norrbom Fire and asserts a claim for $4,124,246.85, which is comprised of the non-FEMA portion of the FEMA funds obligated on behalf of DDS. As discussed in more detail in Section D.1 below in connection with the Cal OES claims, funds are "obligated" when FEMA has approved the requested expenditure of funds and, whether or not the FEMA and non-FEMA portions have been fully expended, entities receiving those funds are obligated to spend the approved funds in accordance with the approved application. Accordingly, the DDS claim based on the Nuns-Norrbom Fire is liquidated for purposes of the Estimation Motion since non-FEMA portion of the obligated funds is readily determinable whether or not DDS has already expended the non-FEMA funds.

With respect to the Camp Fire, DDS was required to house and care for approximately 16 individuals with developmental disabilities evacuated from areas affected by the Camp Fire at DDS' Porterville Developmental Center. The DDS proof of claim seeks reimbursement for $967,182.80 DDS spent on labor costs and supplies in doing so and as a direct result of the Camp Fire. Because these costs are readily determinable and already spent, the DDS claim is liquidated and cannot be estimated.

///

///

---

[8] The original proof of claim filed by DDS did not include a breakdown of its asserted claim (Claim No. 73262). DDS has filed an amended Claim No. 73262 to set forth the two components of its claim and attaching spreadsheets in further support of its proof of claim.

5.      State Parks:  State Parks filed five proofs of claim with respect to the Camp Fire (Claim Nos. 60117, 61514, 77696, 77861 and 79533).[9]   Each of these proofs of claim seek reimbursement for specific, actual costs incurred by State Parks as a result of the Camp Fire. Four of the proofs of claim seek reimbursement for specific expenses already incurred for (a) labor to clean up and remove debris resulting from the Camp Fire (Claim No. 77861), (b) travel expenses for State Parks employees to respond to the Camp Fire (Claim No. 60117), (c) voyager costs for fuel used in mitigation after the Camp Fire (Claim No. 61514), and (d) labor costs (including overtime) for evacuation assistance, fueling vehicles, picking up supplies, archaeological monitoring and aiding law enforcement as a result of the Camp Fire (Claim No. 77696).  The fifth proof of claim (Claim No. 79533) with respect to the Camp Fire seeks recovery of permit fees for the use of Lake Oroville State Recreational Area as a staging area for the Camp Fire.

State Parks also filed a proof of claim related to its staff costs with respect to the Nuns Fire (Claim No. 77009, as amended).  This claim is fully liquidated, as set forth in the spreadsheets attached to the claim setting forth amounts owed to State Parks for staff costs attributable to the Nuns Fire.[10]

Each of these costs are determinable and liquidated, and none of the State Park claims filed with respect to the Camp Fire can be estimated.

**D.      The Liquidated Portion of the Claims of Cal OES, CalVet and Caltrans Are Not Subject to the Estimation Procedures**

1.      Cal OES:  Cal OES filed three proofs of claim, one each for the Butte Fire (Claim No. 79429,[11] as amended), Camp Fire (Claim No. 79398, as amended) and North Bay Fires

---

[9] While the Notice lists six claims for State Parks with respect to the Camp Fire, the $14,914.95 claim for supplies was not filed, so there are only five proofs of claims filed by State Parks with respect to the Camp Fire.

[10] Although the seasonal employees ATO amounts are not included in the total amount for that spreadsheet, when all amounts on each of the spreadsheets are totaled, the amount equals $748,321.64.  The amount listed on the proof of claim rounds down this number to a whole dollar amount.

[11] It appears that the Cal OES proof of claim with respect to the Butte Fire was filed twice by Prime Clerk, once as Claim No. 79429 and once as Claim No. 78463.

(Claim No. 77624,[12] as amended). These claims arise out of Cal OES' coordinating and providing public assistance in response to each of the referenced fires. In a catastrophic disaster, federal resources may be mobilized through FEMA and Cal OES to pay part of emergency work and the costs of rebuilding a community's damaged infrastructure. Such assistance may include funding for fire abatement, debris removal, emergency protective measures and public services, repair or replacement of damaged public property, and grants for public schools and non-profit entities.

To be eligible for funding under FEMA's public assistance program, a state agency, territory, tribe, local government or private nonprofit organization must apply for funding to provide emergency or permanent work required as a result of a declared incident, located within the designated disaster area. Funding is tied directly to eligible work and must be adequately documented, authorized, necessary and reasonable.

Once an application is approved by FEMA, the federal government and Cal OES enter into an arrangement called an "obligation." Once funds are "obligated," the federal government and Cal OES have promised to spend the money – either immediately or in the future – on the project approved in the application. This obligation is a legally binding agreement that will result in outlays, immediately or in the future. Because all entities receiving those funds are obligated to spend the approved funds on the approved project, the claims based on "obligated" amounts are readily determinable and are liquidated for purposes of section 502(c).

All amounts listed in the proof of claim for the Butte Fire (Claim No. 79429, as amended) represent "obligated" funds, most or all of which have already been spent, so all funds asserted in that proof of claim are liquidated. With respect to the proofs of claim filed by Cal OES for the Camp Fire (Claim No. 79398, as amended) and the North Bay Fires (Claim No. 77624, as amended), the "PW Inventory" spreadsheet attached to the respective proofs of claim (divided into two spreadsheets labeled "Small Projects Obligated" and "Large Projects Obligated" in the amended proofs of claim) lists projects for which FEMA has approved funding and are

---

[12] It appears that the Cal OES proof of claim with respect to the North Bay Fires was filed twice by Prime Clerk, once as Claim No. 77624 and once as Claim No. 78495.

considered "obligated," and thus are liquidated. The amounts on the "Project" and "Damage Item" spreadsheets for both proofs of claim (labeled as "Projects Not Obligated" and "Pending Projects Not Yet Written To A Project Worksheet" in the amended proofs of claim) are for projects for which FEMA funding has not yet been approved and, consequently, Cal OES is not opposing the Debtors' designation as unliquidated for purposes of the Estimation Motion only (while reserving all other rights). The following chart sets forth the liquidated and unliquidated (for purposes of the Estimation Motion only) portions of Cal OES' claims per fire:

| Fire | Liquidated Portion | Unliquidated Portion | Total Claim |
|------|-------------------|---------------------|-------------|
| Butte (DR-4240) | $99,354,738.00 | $ -0- | $99,354,738.00 |
| Camp (DR-4407) | $82,032,551.00 | $2,231,447,091.00 | $2,313,479,642.00 |
| North Bay (DR-4344) | $228,224,955.00 | $53,005,635.00 | $281,230,590.00 |
| **Total** | **$409,612,244.00** | **$2,284,452,726.00** | **$2,694,064,970.00** |

The liquidated portion of the Cal OES proofs of claim set forth above are funds that Cal OES has either already spent or have been approved (i.e. "obligated") to be spent on a particular project, are readily determinable in precise amounts. As such, these portions of the Cal OES claims need not be estimated. The Court should order that the Butte Fire claim and the liquidated portion of the North Bay Fires proof of claim are not subject to the estimation proceeding. However, because the majority of the amounts for the Camp Fire are unliquidated, to avoid confusion, Cal OES does not object to the designation of the entirety of its claim relating to the Camp Fire as being treated as unliquidated—for purposes of the Estimation Motion only and reserving all other rights.

2.    CalVet:   CalVet helps veterans buy homes and farms by lending to them. However, the loan is best described as an installment sales contract: Cal Vet has legal title to the property and the veteran has an equitable interest in the property. CalVet self-insures its property, subject to reinsurance.

In its proof of claim (Claim No. 79878), CalVet asserts liquidated damages related to the Butte Fire and the Nuns Fire for amounts paid for damaged property and displaced temporary housing. In addition, CalVet asserts liquidated and unliquidated claims (for purposes of the Estimation Motion only while reserving all other rights) as a result of the Camp Fire including amounts (i) already paid to veterans for their property losses (liquidated), (ii) already paid to

veterans for discrete property damage to property owned by CalVet (liquidated), or (iii) expected to be paid (for purposes of the Estimation Motion only, unliquidated). The following chart sets forth the liquidated and unliquidated portions of CalVet's claim per fire:

| Fire | Liquidated Portion | Unliquidated Portion[13] | Total Claim |
|---|---|---|---|
| Camp | $4,256,328.47 | $6,493,553.86 | $10,749,882.33 |
| Butte | $108,546.99 | $ -0- | $108,546.99 |
| Nuns | $20,318.09 | $ -0- | $20,310.09 |
| **Total** | **$4,385,193.55** | **$6,493,553.86** | **$10,878,747.41** |

The liquidated portion of the CalVet proof of claim are specific amounts CalVet has already spent as of October 4, 2019 based on checks paid to the veterans and related costs. The liquidated portion of CalVet's proof of claim is readily determinable in precise amounts and cannot be estimated.

3. <u>Caltrans</u>: Caltrans filed two proofs of claim, one for District 3 (Camp Fire) (Claim No. 68782) and one for District 4 (Nuns, Atlas and Highway 37 Fires) (Claim No. 72321), for property damage and emergency response costs in connection with Camp, Nuns, Atlas and Highway 37 Fires.

As set forth in the proof of claim for Caltrans District 3 (Camp Fire) (Claim No. 68782), Caltrans responded to the Camp Fire by providing emergency traffic control and deploying a mobile satellite communication in the aftermath of the Camp Fire. Caltrans also incurred costs for labor and materials to, *inter alia*, replace damaged traffic control and advisory signs, remove fire debris and damaged trees and vegetation, repair damage to asphalt/concrete pavement, slabs and slide and slip, and inspect and examine roadways to detect hazards. The Caltrans District 3 proof of claim contains attachments setting forth expended and projected Caltrans' labor costs, operating expenses and emergency contacts with respect to the Camp Fire. As set forth in section 4 of Claim No. 68782, from November 2018 through June 30, 2019, Caltrans has expended $13,683,195.98 in labor costs, operating expenses and emergency contacts with respect

---

[13] The Unliquidated Portion is calculated by adding up the columns labeled "Est Dwelling", "Est 5% Debris Removal Expense", Est Bldg Code Upgrade, Incr Cost to Constr. @25%", "Est Displaced Temp Housing" and "Est Future Adj Costs" as set forth in the spreadsheet at page 8 of the CalVet proof of claim (Claim No. 79878).

to the Camp Fire.  These sums are liquidated and cannot be estimated.  Caltrans expects to spend an additional $203,360,053.00, which Caltrans does not object to the Debtors' designation as unliquidated for purposes of the Estimation Motion only and reserving all other rights.

As set forth in the proof of claim for Caltrans District 4 (Nuns, Atlas and Highway 37 Fires) (Claim No. 72321), Caltrans expended specific amounts for labor and materials to, *inter alia*, provide traffic control, replace damaged traffic control and advisory signs, remove fire debris and damaged trees and vegetation, reconstruct metal beam guardrails that were destroyed or compromised by the Nuns, Atlas and Highway 37 Fires and repair damage to drainage systems.  Caltrans generally records damage to its property on a Caltrans Damage Assessment Forms (DAFs) and then enters into agreements with independent contractors to repair and replace the road.  Under these contracts, Caltrans is obligated to pay independent contactors the specified amounts in the DAFs.  These are not estimates but obligations of Caltrans under contracts with third parties for remediation and repair of fire damage.  Based on the same analysis as set forth above with respect to Cal OES, because any unspent amounts with respect to the DAFs must be spent on approved projects, Caltrans' damages for the Nuns, Atlas, and Highway 37 Fires are completely liquidated.

Accordingly, Caltrans' proof of claim for District 4 (Nuns, Atlas and Highway 37 Fires) (Claim No. 72321) is fully liquidated and cannot be estimated.  The liquidated portion of Caltrans' proof of claim for District 3 (Camp Fire) (Claim No. 68782) is readily determinable in precise amounts and cannot be estimated.

**E.    For Purposes of the Estimation Motion Only, State Parks Does Not Object to the Debtors' Designation of Its Claims with Respect to the Nuns Fire as Subject to the Estimation Procedures**

While State Parks filed four proofs of claim that included both the Tubbs and Nuns Fires, each of the four claims filed by State Parks with respect to the Nuns and Tubbs Fires were amended to exclude amounts for the Tubbs Fire or will be withdrawn.  For purposes of the Estimation Motion only and reserving all other rights, State Parks does not object to the Designation of its claims, as amended, relating to lost revenue and property damage with respect to the Nuns Fire (Claim Nos. 60322 and 79781, as amended) as unliquidated and subject to

estimation under the Estimation Motion.

## RESERVATION OF RIGHTS

Neither this objection nor any subsequent appearance, pleading, proof of claim, claim or suit is intended or shall be deemed or construed as:

a.      a consent by the California State Agencies to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the California State Agencies;

b.      a waiver of any right of the California State Agencies to (i) have an Article III judge adjudicate in the first instance any case, proceeding, matter or controversy as to which a Bankruptcy Judge may not enter a final order or judgment consistent with Article III of the United States Constitution, (ii) have final orders in non-core matters entered only after de novo review by a District Court Judge, (iii) trial by jury in any proceeding so triable in the Chapter 11 Cases or in any case, controversy, or proceeding related to the Chapter 11 Cases, (iv) have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (v) any and all rights, claims, actions, defenses, setoffs, recoupments or remedies to which the California State Agencies are or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved hereby; or

c.      a waiver of any objections or defenses that the State of California, the California State Agencies or any other agency, unit or entity of the State of California may have to this Court's jurisdiction over the State of California, the California State Agencies or such other agency, unit or entity based upon the Eleventh Amendment to the United States Constitution or related principles of sovereign immunity or otherwise, all of which objections and defenses are hereby reserved.

## CONCLUSION

For the reasons set forth above, the California State Agencies request the Court to enter an order for purposes of the Estimation Motion only as follows:

///

Case: 19-30088   Doc# 4774   Filed: 11/15/19   Entered: 11/15/19 15:57:51   Page 21 of 32

(a) the claim filed by DWR (Claim No. 78143, as amended by 66196) and the filed claims of CAL FIRE with respect to the 415 Fire (Claim No. 77581), Almond Fire (Claim No. 77030), Benson Fire (Claim No. 77538), Bissett Fire (Claim No. 79403), Cienega Fire (Claim No. 76888), Corrine Fire (Claim No. 77661), Country Fire (Claim No. 78866), Harney Fire (Claim No. 79602), Northridge Fire (Claim No. 77586), Parkfield Fire (Claim No. 77745), Saddle Fire (Claim No. 77564), Sawmill Fire (Claim No. 79338), Soda Fire (Claim No. 77678), Table Fire (Claim No. 77595) and Zenon Fire (Claim No. 77572) do not relate to any of the Wildfires that are the subject of the Estimation Motion and shall not be estimated pursuant thereto;

(b) the (i) claims of CAL FIRE with respect to the *(a)* Atlas, Adobe, Norrbom, Nuns, Partrick, Pocket, Pressley and Pythian/Oakmont Fires (Claim No. 77897), *(b)* Blue Fire (Claim No. 75665), *(c)* Butte Fire (Claim No. 79729), *(d)* Camp Fire (Claim No. 78467), *(e)* Cascade, La Porte, Lobo and McCourtney Fires (Claim No. 77727), *(f)* Honey Fire (Claim No. 77667), *(g)* Sulphur Fire (Claim No. 79752) and *(h)* post-petition attorneys' fees (Claim No. 65505); (ii) claim of DTSC (Claim No. 77351); (iii) claim of Cal State University (Claim No. 79746); (iv) DDS (Claim No. 73262, as amended); (v) five claims filed by State Parks with respect to the Camp Fire (Claim Nos. 60117, 61514, 77696, 77861 and 79533); and (vi) amended claim of State Parks for staff costs with respect to the Nuns Fire (Claim No. 77009, as amended) are fully liquidated pursuant to section 502(c) and are not subject to estimation;

(c) the claim filed by Cal OES with respect to the Butte Fire (Claim No. 79429, as amended) is fully liquidated pursuant to section 502(c) and is not subject to estimation;

(d) the claim filed by Cal OES with respect to the Camp Fire (Claim No. 79398, as amended) is subject to estimation under the Estimation Motion;

(e) only the unliquidated portion of the claim filed by Cal OES with respect to the North Bay Fires (Claim No. 77624, as amended) in the amount of $53,005,635 is subject to estimation under the Estimation Motion;

(f) only the unliquidated portion of the claim filed by CalVet (Claim No. 79878) in the amount of $6,493,553.86 is subject to estimation under the Estimation Motion;

(g)     the claim filed by Caltrans District 4 (Claim No. 72321) is fully liquidated pursuant to section 502(c) and is not subject to estimation;

(h)     only the unliquidated portion of the claim filed by Caltrans District 3 (Claim No. 68782) in the amount of $203,360,053.00 is subject to estimation under the Estimation Motion;

(i)     the amended claims of State Parks filed with respect to the Nuns Fire (Claim Nos. 60322 and 79781, as amended) are subject to estimation under the Estimation Motion; and

(j)     all other rights of the claimants and the Debtors are reserved with respect to the claims addressed herein.

Dated: November 15, 2019                Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARGARITA PADILLA
Supervising Deputy Attorney General

By: */s/ Paul J. Pascuzzi*
STEVEN H. FELDERSTEIN
PAUL J. PASCUZZI
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
Attorneys for California Department of Forestry and Fire Protection, California Department of Toxic Substances Control, California Governor's Office of Emergency Services, California Department of Veterans Affairs, California State University, California Department of Parks and Recreation, California Department of Transportation, California Department of Developmental Services and California Department of Water Resources

Case: 19-30088    Doc# 4774    Filed: 11/15/19    Entered: 11/15/19 15:57:51    Page 23 of 32

# EXHIBIT A

Exhibit A – California State Agency Claims in Listed in Notice with Proof of Claim Numbers

| Entity | Fire(s) | Alleged Damages | Alleged Claim Amount | Proof of Claim Number | Status of Claim Re Estimation |
|---|---|---|---|---|---|
| California Department of Developmental Services | Camp, Nuns Norrbom | Evaluation and care of individuals with developmental disabilities and property damage | $5,091,429.65 | 73262, as amended | Fully Liquidated |
| California Department of Forestry and Fire Protection | 415*[1] | Suppression, administrative, accounting and investigation costs | $6,043.70 (actual claim amount is $6,043.75) | 77581 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Almond* | Suppression, administrative, accounting and investigation costs | $20,546.16 | 77030 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Atlas, Adobe, Norrbom, Nuns, Partrick, Pocket, Pressley, Pythian/Oakmont | Suppression, administrative, accounting and investigation costs | $117,504,408.91 | 77897 | Fully Liquidated |
| California Department of Forestry and Fire Protection | Benson* | Suppression, administrative, accounting and investigation costs | $125,730.70 | 77538 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Bissett* | Suppression, administrative, accounting and investigation costs | $1,685.80 | 79403 | Not subject to Estimation Motion |

---

[1] Fires marked with an "*" are not included in the definition of "Wildfires" that are subject to the Estimation Motion.

1

| Entity | Fire(s) | Alleged Damages | Alleged Claim Amount | Proof of Claim Number | Status of Claim Re Estimation |
|---|---|---|---|---|---|
| California Department of Forestry and Fire Protection | Blue | Suppression, administrative, accounting and investigation costs | $172,621.03 | 75665 | Fully Liquidated |
| California Department of Forestry and Fire Protection | Butte | Suppression, administrative, accounting and investigation costs | $104,545,284.20 | 79729 | Fully Liquidated |
| California Department of Forestry and Fire Protection | Camp | Suppression, administrative, accounting and investigation costs | $109,506,276.63 | 78467 | Fully Liquidated |
| California Department of Forestry and Fire Protection | Cascade, La Porte, Lobo and McCourtney | Suppression, administrative, accounting and investigation costs | $11,224,238.65 | 77727 | Fully Liquidated |
| California Department of Forestry and Fire Protection | Cienega* | Suppression, administrative, accounting and investigation costs | $29,000,000.00 (actual claim amount is $2,900,000.00) | 76888 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Corrine* | Suppression, administrative, accounting and investigation costs | $9,222,550.71 | 77661 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Country* | Suppression, administrative, accounting and investigation costs | $79,985.64 | 78866 | Not subject to Estimation Motion |

2

Exhibit A – California State Agency Claims in Listed in Notice with Proof of Claim Numbers

| Entity | Fire(s) | Alleged Damages | Alleged Claim Amount | Proof of Claim Number | Status of Claim Re Estimation |
|---|---|---|---|---|---|
| California Department of Forestry and Fire Protection | Harney* | Suppression, administrative, accounting and investigation costs | $5,162.11 | 79602 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Honey | Suppression, administrative, accounting and investigation costs | $1,104,743.07 | 77667 | Fully Liquidated |
| California Department of Forestry and Fire Protection | N/A | Post-petition attorney fees | $82,857.25 (actual claim amount is $82,857.00) | 65505 | Fully Liquidated |
| California Department of Forestry and Fire Protection | Northridge* | Suppression, administrative, accounting and investigation costs | $4,235.29 | 77586 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Parkfield* | Suppression, administrative, accounting and investigation costs | $578,375.16 | 77745 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Saddle* | Suppression, administrative, accounting and investigation costs | $28,347.48 | 77564 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Sawmill* | Suppression, administrative, accounting and investigation costs | $3,524,693.08 | 79338 | Not subject to Estimation Motion |

3

| Entity | Fire(s) | Alleged Damages | Alleged Claim Amount | Proof of Claim Number | Status of Claim Re Estimation |
|---|---|---|---|---|---|
| California Department of Forestry and Fire Protection | Soda* | Suppression, administrative, accounting and investigation costs | $40,426.77 | 77678 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Sulfur | Suppression, administrative, accounting and investigation costs | $2,925,443.59 | 79752 | Fully Liquidated |
| California Department of Forestry and Fire Protection | Table* | Suppression, administrative, accounting and investigation costs | $109,753.52 | 77595 | Not subject to Estimation Motion |
| California Department of Forestry and Fire Protection | Zenon* | Suppression, administrative, accounting and investigation costs | $174,341.81 | 77572 | Not subject to Estimation Motion |
| California Department of Parks and Recreation | Camp | Supplies | $14,914.95 | NOT FILED | Not Filed |
| California Department of Parks and Recreation | Camp | Event permit for power restoration | $4,900.00 | 79533 | Fully Liquidated |
| California Department of Parks and Recreation | Camp | Mitigation labor | $5,691.33 | 77861 | Fully Liquidated |
| California Department of Parks and Recreation | Camp | Voyager cost for fuel used for mitigation | $235.62 | 61514 | Fully Liquidated |

Exhibit A – California State Agency Claims in Listed in Notice with Proof of Claim Numbers

| Entity | Fire(s) | Alleged Damages | Alleged Claim Amount | Proof of Claim Number | Status of Claim Re Estimation |
|---|---|---|---|---|---|
| California Department of Parks and Recreation | Camp | Labor costs | $122,102.52 | 77696 | Fully Liquidated |
| California Department of Parks and Recreation | Camp | Travel expenses for employees | $3,407.08 | 60117 | Fully Liquidated |
| California Department of Parks and Recreation | Nuns and Tubbs | Loss of revenue at State Parks that were closed as a result of the fires | $225,000.00 | 60322, as amended | Unliquidated[2] |
| California Department of Parks and Recreation | Nuns and Tubbs | Fire rehabilitation | $1,025,000.00 | 60103 | Claim to be Withdrawn |
| California Department of Parks and Recreation | Nuns and Tubbs | Property damage | $8,580,898.00 | 79781, as amended | Unliquidated |
| California Department of Parks and Recreation | Nuns and Tubbs | Staff costs for property protection, safety, staffing and field patrols | $1,029,600.00, amended to $748,321.00 | 77009, as amended | Fully Liquidated |
| California Department of Toxic Substances Control | Butte, Camp, Cascade, Laporte, Lobo, McCourtney, Redwood Valley and Sulphur | Environmental obligations and liabilities | $7,166,391.29 | 77351 | Fully Liquidated |

---

[2] With respect to the Debtors' designation of unliquidated claims in connection with the Estimation Motion only, the California State Agencies do not object to certain designations solely as set forth in this response. The California State Agencies reserve all rights with respect to such claims, including related to the allowance or disallowance and the determination of the amounts thereof.

5

| Entity | Fire(s) | Alleged Damages | Alleged Claim Amount | Proof of Claim Number | Status of Claim Re Estimation |
|---|---|---|---|---|---|
| California Department of Transportation | Camp | Emergency response, cleanup and repairs of infrastructure | $217,044,048.00 | 68782 | Liquidated for $13,683,195.98; Unliquidated for $203,360,053.00 |
| California Department of Transportation | North Bay Fire | Emergency response, cleanup and repairs of infrastructure | $7,587,178.97 | 72321 | Fully Liquidated |
| California Department of Water Resources | N/A**[3] | Bond costs charged to PG&E customers | Additional Funds | 78143, as amended by 66196 | Not subject to Estimation Motion |
| California Governor's Office of Emergency Services | Butte | Public assistance | $107,737,360 | 79429, as amended | Fully Liquidated |
| California Governor's Office of Emergency Services | Camp | Public assistance | $2,313,479,642 | 79398, as amended | Unliquidated |
| California Governor's Office of Emergency Services | North Bay Fires | Public assistance | $281,230,588 | 77624, as amended | Liquidated for $228,224,955; Unliquidated for $53,005,635 |
| California State University, Chico | Camp | Property damage, loss of income, emergency operation center costs and labor | $273,460.26 | 79746 | Fully Liquidated |

---

[3] This proof of claim does not relate to Wildfires.

6

Exhibit A – California State Agency Claims in Listed in Notice with Proof of Claim Numbers

| Entity | Fire(s) | Alleged Damages | Alleged Claim Amount | Proof of Claim Number | Status of Claim Re Estimation |
|---|---|---|---|---|---|
| Department of Veterans Affairs of the State of California | Camp, Butte and Nuns | Property damage and debris removal | $10,878,747.41 | 79878 | Liquidated for $4,385,193.55; Unliquidated for $6,493,553.86 |

7

1                                                       **<u>PROOF OF SERVICE</u>**

2        I, Sabrina M. Cisneros, declare:

3        I am a resident of the State of California and over the age of eighteen years, and not a

4  party to the within action; my business address is 500 Capitol Mall, Suite 2250, Sacramento, CA

5  95814.  On November 15, 2019, I served the within document:

6
        **RESPONSE OF THE CALIFORNIA STATE AGENCIES TO DEBTORS' NOTICE**

7        **OF DESIGNATION OF CLAIMS FILED BY THE STATE OF CALIFORNIA AS**
        **UNLIQUIDATED AND SUBJECT TO ESTIMATION UNDER SECTION 502(c)**

8        **OF THE BANKRUPTCY CODE [DOCKET NO. 4553]**

9  By Electronic Service only via CM/ECF.

10
                                            */s/ Sabrina M. Cisneros*

11                                         Sabrina M. Cisneros

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28