# EXHIBIT A

FILED / ENDORSED

JUN 22 2017

By _____ Deputy Clerk

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO

**BUTTE FIRE CASES**

Case No.: JCCP 4853

**RULING ON SUBMITTED MATTER: INVERSE CONDEMNATION MOTIONS**

On June 16, 2017, hearing was held on the court's tentative ruling on the competing motions seeking seek a legal determination on whether Pacific Gas and Electric Company ("PG&E") is liable for inverse condemnation for damages caused by the Butte Fire. The parties appeared and presented oral argument, after which the court took the motions under submission.

The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence submitted, now affirms its tentative ruling, as supplemented concerning the court's discussion of causation, as follows:

Plaintiffs and defendants, PG&E and Pacific Gas and Electric Corporation, bring competing motions pursuant to Code of Civil Procedure section 1260.040, seeking a legal determination whether PG&E is liable for inverse condemnation for damages caused by the Butte Fire. For the reasons set forth below, the court grants Plaintiffs' motion as to PG&E, denies Plaintiffs' motion as to Pacific Gas & Electric Corporation, and denies PG&E's motion.

The court finds PG&E may be held liable for inverse condemnation under California law even though it is a privately owned public utility. The court further finds, based upon the

1

Case: 19-30088    Doc# 4775-1    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 2 of 28

admissible evidentiary record, the Butte Fire was caused by a public improvement as deliberately designed and constructed by PG&E.

# I.
## Preliminary Matters

### A.     Code of Civil Procedure section 1260.040

Plaintiffs allege several causes of action against PG&E relating to the Butte Fire, including inverse condemnation pursuant to Article I, section 19, of the California Constitution. (Individual Plaintiffs' Master Complaint ¶¶ 51-58.)

The parties agree the court has authority pursuant to Code of Civil Procedure section1260.040[1] to rule upon the question of liability for inverse condemnation presented by their competing motions. (PG&E, Memo. ISO Motion for Legal Determination of Inverse Condemnation Liability ["PG&E MPA"], p. 3:18-4:20; Plaintiffs' Memo. ISO Motion for Determination of Inverse Condemnation Liability ["Plaintiffs' MPA"], p. 7:10-8:3.)

Section 1260.040(a) provides if there is "a dispute between plaintiff and defendant over an evidentiary or other legal issue affecting the determination of compensation, either party may move the court for a ruling on the issue...." Subdivision (c) states it "supplements, and does not replace any other pretrial or trial procedure otherwise available to resolve an evidentiary or other legal issue affecting the determination of compensation."

The court may determine the legal issue of liability pursuant to the procedures set forth in section 1260.040. (*Dina v. People ex rel. Dept. of Transportation* (2007) 151 Cal.App.4th 1029.) Specifically, a party may move for a ruling on liability because that is a legal issue affecting the determination of compensation. The Court in *Dina* construed section 1260.040 broadly as

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise indicated.

2

RULING ON SUBMITTED MATTER: INVERSE CONDEMNATION MOTIONS (CCP 485)

consistent with the Legislative purpose to "facilitate resolution of condemnation cases without trial." (*Id.* at 1043.) The Court characterized section 1260.040 as "a powerful statute, unique to eminent domain law, which allows evidentiary issues and issues affecting compensation to be adjudicated by motion." (*Id.* at pp. 1043-1044.)

The Court in *Dina* analogized section 1260.040's proceedings as similar to a motion for a nonsuit, which may be granted "only when, disregarding conflicting evidence, viewing the record in the light most favorable to the plaintiff and indulging in every legitimate inference which may be drawn from the evidence, it determines there is no substantial evidence to support a judgment in the plaintiff's favor." (*Id.* at 1047.) Applying that stringent standard of review, the Court concluded the trial court properly ruled the evidence offered by plaintiffs was insufficient to support their claims.

Here the parties' competing motions on liability are more akin to motions for summary adjudication than a motion for nonsuit or judgment on the pleadings. Although the parties have not adhered to the procedural requirements of a motion for summary adjudication under section 437c, they acknowledge the court may reach the issue of liability through this special eminent domain law procedure based upon their evidentiary record.

### B. PG&E and the Pacific Gas and Electric Corporation

PG&E's Opposition to Plaintiffs' motion contends the motion does not clearly indicate whether it is brought against the Pacific Gas & Electric Corporation in addition to PG&E the utility entity. PG&E argues Plaintiffs failed to meet their burden as to the Pacific Gas & Electric Corporation (a private corporation), because there is no evidence the Pacific Gas & Electric Corporation is a public entity that can be liable for inverse condemnation, citing *Bach v. County of Butte* (1989) 215 Cal. App. 3d 294, 306-307 (1989). PG&E asserts the Pacific Gas & Electric

3

1    Corporation neither owns nor operates any electrical transmission and distribution facilities.

2    (PG&E Opp., p. 1, fn 1.) Plaintiffs produce no evidence to the contrary.

3           PG&E's position appears correct.  Accordingly, the court's finding of inverse

4    condemnation liability extends to the public utility entity, PG&E.

5

6    ### C.    Damage Stipulation

7           For purposes of these competing motions, to expedite the court's determination of

8    Plaintiffs' inverse condemnation claim alleged through their Master Motion, the parties agreed to

9    avoid the necessity of individual declarations of damages for each moving plaintiff. Instead, the

10   parties agreed only those plaintiffs scheduled for the initial trial commencing August 11, 2017,

11   would submit evidence their property was damaged in the Butte Fire:  Plaintiffs Larry and Karen

12   Carr, Florencio and Martha Garcia, Robert and Barbara Garibaldi, Edward and Laura Miser,

13   Ronald and Darunee Rogers, and Barbara Rose (collectively "August 11th Plaintiffs").  These

14   damage declarations have been submitted.

15         The parties further stipulated if the court determines PG&E is liable for inverse

16   condemnation, this determination will be binding as between PG&E and all Moving Plaintiffs

17   presently in the Coordination Proceeding.  The August 11th Plaintiffs would still have to prove

18   the amount of their damages, and the remaining Moving Plaintiffs would have to prove both that

19   their property was damaged in the Butte Fire and the amount of such damages.

20         The court has accepted the parties' stipulation as described above and will execute the

21   order accompanying the stipulation.

22

23

24

25                             4

26   RULING ON SUBMITTED MATTER: INVERSE CONDEMNATION MOTIONS [GP 485]

### D. Judicial Notice

Plaintiffs filed a Request for Judicial Notice asking the court take judicial notice of the deed for the power line right-of-way on the Kirk property in Amador County dated September 2, 1902, recorded in Book 23 of Deeds, page 564, Amador County Records, a copy of which is attached to the request as Exhibit 1. Plaintiffs' request is made upon the ground judicial notice of deeds is proper under Evidence Code section 452, subdivisions (c) and (h). This includes the existence of the recorded document, as well as the truth of the facts recited in it. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754-761.)

The request is granted.

Plaintiffs additionally request the court take judicial notice of pleadings PG&E filed in other, unrelated cases which also involved the issue of inverse condemnation. These filings are irrelevant, and thus that request is denied.

### E. Evidentiary Objections

#### 1. Plaintiffs' Objections

Plaintiffs interposed 94 objections to the evidence initially submitted by PG&E in support of its motion. Plaintiffs also objected to the supplemental declaration of Mari Henderson filed June 2, 2017.

##### a) Mari Henderson Declaration

Plaintiffs object the Henderson declaration was not timely served, as required by sections 1005 and 1010, and therefore consideration of the late declaration would violate Plaintiffs' right to due process, citing *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal. App. 4th 308, 316. Plaintiffs liken the competing motions brought here under section 1260.040 as motions for summary adjudication, and therefore contend late submission of this substantial

5

evidence denied them the right to be fully advised of the issues to be addressed and to be given adequate notice of what facts they must rebut to prevail.

Although a motion under section 1260.040 is not subject to the specific procedural requirements of section 437c, or California Rules of Court, rule 3.1350, the general demands of due process and fair notice underlying those procedures do apply with equal force to this special motion. Accordingly, the objection to the late declaration is sustained.

### b) Amended Objection Nos. 1-94

Plaintiffs' evidentiary objections are ruled upon as follows: Sustained as to Objection Nos. 1-74, 76-85, 87-94. Overruled as to Objection Nos. 75 and 86.

### 2. PG&E's Objections

PG&E interposed five evidentiary objections to Plaintiffs' evidence.

### a) Cal Fire Report

PG&E first objects to the *California Department of Forestry and Fire Protection Investigation Report*, Case Number 15CA-AEU-00249918 ("Cal Fire Report") submitted as Exh. A to the Simon Declaration. PG&E argues the Cal Fire Report constitutes inadmissible hearsay, citing *Box v. Cal. Date Growers Ass'n* (1976) 57 Cal. App. 3d 266, 270-71. PG&E contends the Cal Fire Report does not meet the requirements of the hearsay exception for a record by a public employee (Evid. Code § 1280) because: (1) Cal Fire Battalion Chief Gianni Muschetto signed his report on April 25, 2016, more than seven months after the fire on September 9, 2015; (2) the sources of information, and the method and time of preparation do not indicate trustworthiness because the Cal Fire Report relies extensively on hearsay statements of others; and (3) the report consists of expressions of opinion and conclusions which do not come within the public records exception.

6

Plaintiffs argue PG&E's objections should be overruled because: (1) PG&E admitted in four separate discovery responses the Butte Fire was caused by contact between its line and a tree as concluded by the Cal Fire Report; (2) PG&E itself referenced and relied upon the Cal Fire Report in the Woodyard and Kennedy Declarations PG&E submitted in support of its Motion for a Legal Determination of Inverse Condemnation Liability; and (3) the report satisfies the public employee record exception in Evidence Code section 1280 because the report was made at or near the time of the act, condition, or event despite its final publication, and the report is not comprised of hearsay or opinions.

PG&E's objection is sustained. PG&E's discovery responses, particularly its admissions, may constitute evidence supporting the evidentiary facts Plaintiffs seek to establish here with the Cal Fire Report. But PG&E's discovery responses do not convert the Cal Fire Report itself into admissible evidence. For purposes of these motions, the court does not find the Cal Fire Report is subject to the public employee record exception under Evidence Code section 1280.

### b) Arborist Report

PG&E similarly objects to Michael T. Mahoney's *Arborist Report: Butte Fire Incident* ("Arborist Report") on the same grounds: It is inadmissible hearsay. Plaintiffs give the same response. The court makes the same ruling: The objection is sustained.

### c) Testimony of Mahoney, Cole and Felling

PG&E's objections as to the testimony of Mahoney, Cole and Felling, are overruled

## II.
## The Material Facts

The court finds the following facts:

7

## A.    PG&E is a public utility

PG&E is a privately-owned public utility providing natural gas and electric service throughout a 70,000-square-mile service area statewide, comprising nearly 135,000 miles of overhead powerlines. (Tankersley Decl. ¶3.)

## B.    The Butte Fire was caused by contact between a tree and PG&E's power line

As to evidence of the cause of the Butte Fire, Plaintiffs rely in substantial part upon the testimony of Mark J. Felling, Michael T. Cole, Michael Mahoney, PG&E's discovery responses and the absence of controverting evidence.

Mark J. Felling is a registered professional electrical engineer who has observed, investigated and reported on numerous fires involving contact between energized power lines and vegetation in his fifty-year career. In this case Felling inspected the power line, vegetation and other environmental influences in the area of origin of the Butte Fire. He also reviewed pertinent documents, photographs and reports. (Felling Dec., ¶¶ 1-8.) In his declaration Felling states, "[T]here are no other plausible explanations for the damage exhibited by the Subject Conductor and the Subject Tree other than direct mutual contact" and that contact ignited the Butte Fire. (Felling Dec., ¶¶ 8-15.)

Michael T. Cole spent 37 years with Cal Fire, and has a private career spanning 10 years as a fire investigation consultant and licensed/certified fire investigator. Cole also determined the Butte Fire was caused by the "Subject Tree" making contact with the "Subject Conductor" and first igniting the Butte Fire. (Cole Dec., ¶¶ 1-10.)

PG&E produced no evidence contradicting the findings of Felling or Cole as to the cause of the Butte Fire. Just the opposite. PG&E admitted in at least four discovery responses that contact between a tree and its lines was "a cause" of the Butte Fire.

First, PG&E responded to Plaintiffs' Special Interrogatory No. 17 in part as follows: "At this time, PG&E does not contend that tree-line contact was not a cause of the fire. PG&E accepts Cal Fire's finding that a tree made contact with a power line, but PG&E does not believe it is clear what caused the tree to fail." (Simon Dec., ¶ 10, Ex.I.)

Second, PG&E stated it "accepts and admits the Cal Fire report's finding that the tree described by Plaintiffs as the Subject Tree made contact with a power line…." (Simon Dec., ¶ 9, Ex. H, pp. 2:12-13, 23-25; 3:3-5, 18-20.)

Third, PG&E stated it "does not contend that tree-line contact was not a cause of the fire." (Simon Dec., ¶ 11, Ex. J.)

Finally, and most clearly, PG&E stated, "PG&E accepts Cal Fire's finding that a tree made contact with a power line and that tree-line contact was a cause of the fire." (Simon Dec., ¶ 10, Ex. I, p. 20:6-8.)

Accordingly, for purposes of these motions, the court finds Plaintiffs established a tree made contact with PG&E's power line, and that contact was a cause of the Butte fire.

## C. PG&E constructed, maintained and operated the power line

PG&E admits it had an easement on the Kirk property for its Electra 1101 Circuit. (Simon Dec., ¶ 12, Ex. K, RFA No. 113.)

The original deed for the power line right-of-way on the Kirk property was recorded in 1902. That instrument, dated September 2, 1902, recorded in Book 23 of Deeds, page 564, Amador County Records, calls for a forty (40) foot right-of-way, twenty (20) feet on each side of the centerline of poles.

The deed requires PG&E "to cut down and keep clear said lands of brush and trees, a distance of twenty (20) feet on each side of said centerline of poles, also to cut down any trees

9

standing outside of said twenty (20) foot limit on each side of said centerline of poles that may endanger said line of poles and wires." (Curtis Dec., ¶¶ 3 & 4; Plaintiffs' Request for Judicial Notice, Ex. 1 [1902 deed granting right-of-way].)

PG&E admits the Butte Fire originated on a PG&E right-of-way on the Kirk property. (Simon Dec., ¶ 12, Ex. K, RFA Nos. 112 and 114; ¶ 14, Ex. M, p. 40:8-15; ¶ 15, Ex. N; and ¶ 16, Ex. O, pp. 12:12-17, 14:7-19, 14:24-25, 18:6-8, 21:17-25, 54:19-55:6.)

PG&E admits it owns the utility poles on the Electra 1101 circuit that crossed the property, and it operated and maintained the Electra 1101 circuit. PG&E also admits it determined the placement and configuration of the utility poles on the Electra 1101 circuit that crossed the property. (Simon Dec., ¶ 17, Ex. P highlighted portions on pp. 3-5.) And PG&E admits it installed the conductors and power poles on the Kirk property. (Simon Dec., ¶ 12, Ex. K, RFA Nos. 117 and 118.)

PG&E identified on its pole-mapping diagram when it constructed each pole in and around the area of the fire's origin. Pole #099651, Object ID #13632446, was installed by PG&E in 1963. This was the pole immediately to the east of the area of the fire's origin. A pole without a number, but bearing Object ID #13632919, was also installed by PG&E in 1963. This pole was immediately to the west of the area of the fire's origin. The Electra substation splits into two circuits, Electra 1101 and Electra 1102. (Simon Dec., ¶ 22, Ex. U, p. 50:24-51:6.)

PG&E's "Unplanned Outage Report" for the loss of electricity due to the Butte Fire shows 3,643 customers on these circuits. (Simon Dec., ¶¶ 21 & 22, Ex. T, and Ex. U, p. 176:14-18.)

## III.
### Analysis and Decision

PG&E succinctly frames the core questions presented by these competing motions: First, should this court find PG&E, a privately-owned public utility, to be subject to inverse

10

Case: 19-30088    Doc# 4775-1    Filed: 11/15/19    Entered: 11/15/19 15:59:54    Page 11 of 28

condemnation liability?  Second, was the Butte Fire caused by a public improvement as deliberately designed and constructed? (PG&E, MPA, p. 5:2-6.)

The court concludes the answer to both is yes.

## A.    A Privately-Owned Public Utility May Be Liable For Inverse Condemnation

### 1)    Private Utilities

California courts have long found public and quasi-public entities responsible for damages under inverse condemnation. (See, e.g., *Eachus v. Los Angeles Consolidated Elec. Ry. Co.* (1894) 103 Cal. 614 [railroad liable for cutting off access to a public road.].)

Courts have repeatedly classified utilities as "public entities." (*Barham v. Southern Cal. Edison Co.* (1999) 74 Cal. App. 4th 744, 752 (1999); *Gay Law Students Assn. v. Pac Tel. & Tel. Co.* (1979) 24 Cal. 3d 458, 470; *Pac. Bell Tel. Co. v. Pac. Gas and Electric  Co.* (2012) 208 Cal. App. 4th, 1400 ["*Pacific Bell*"]; *Sheffet v. City of Los Angeles* (1970) 3 Cal. App. 3d 720, 732.)

More specifically, under California law the proposition a privately-owned public utility such as PG&E may be held liable for inverse condemnation is now solidly established. (*Barham v. Southern California Edison Co.*, *supra*, 74 Cal.App.4th 744, 753; *Pacific Bell*, *supra*, 208 Cal. App. 4th 1400.)

The Court in *Barham* found no "significant differences" between a privately held public utility and a publicly held utility for the purpose of inverse condemnation liability. (*Barham*, *supra*, 74 Cal.App. 4th at 753.)  Rather, the Court cited the California Supreme Court's holding in *Gay Law Students Assn. v. Pac Tel. & Tel. Co.*, *supra*, 24 Cal. 3d 458 that a public utility is a "state actor" when hiring its employees. (*Barham* at 753.)  In *Gay Law Students*, the Supreme Court found "…the breadth and depth of governmental regulation of a public utility's business

11

Case: 19-30088    Doc# 4775-1    Filed: 11/15/19    Entered: 11/15/19 15:59:54    Page 12 of 28

practices inextricably ties the state to a public utility's conduct..." (*Gay Law Students*, *supra*, 24 Cal.3d at 470.)[2]

The Fourth District is not alone in this line of reasoning. In *Pacific Bell*, the Second District adopted *Barham*'s reasoning in finding the quasi-monopolistic nature of Southern California Edison rendered it a public entity. (*Pac. Bell*, *supra*, 208 Cal. App. 4th at 1405.) The Court explained: "[A] public utility's monopolistic or quasi-monopolistic authority … derives directly from its exclusive franchise provided by the state."(*Id*. at 1406.)

PG&E argues repeatedly the California Supreme Court itself has not found a privately held public utility liable under inverse condemnation. This is true, but not dispositive.

PG&E argues the appellate courts in *Barham* and *Pacific Bell* improperly extended the holding of *Gay Law Students* beyond the employment context. PG&E cites *Automatic Sprinkler Co. v. Southern Cal. Edison Co.* (1989) 216 Cal. App. 3d 627, 633 for its argument. However, *Automatic Sprinkler* ultimately turned on a specific statutory scheme, not application of *Gay Law Students*. (*Automatic Sprinkler* at 633.) Furthermore, the very same Court of Appeals declined to extend the conclusions in *Automatic Sprinkler* to *Barham*. (*Barham*, *supra*, 74 Cal. App. 4th at 753.)

PG&E also cites language from the Third District Court of Appeal's decision in *Bach v. County of Butte*, *supra*, 215 Cal.App. 3d at 307: "…it is elementary that an inverse condemnation action … requires state action and, therefore, cannot be asserted against private parties." The court does not find this general statement controlling.

---

[2] Plaintiffs and PG&E both presented arguments as to whether PG&E is a "state actor" for purposes of inverse condemnation. While such a finding would certainly fulfill the public entity requirement, it not necessary. (See *Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal 3d 862, 867; *Barham*, *supra*, 74 Cal. App. 4th at 752-754; *Breidert v. Southern Pac. Co.* (1964) 61 Cal. App. 2d, 659; *Eachus, supra*,103 Cal. at 614; *Pacific Bell, supra*, 208 Cal. App. 4th at 1405; *Pacific Gas & Electric Co. v. Parachini* (1972) 29 Cal. App. 3d 159; *Slemons v. Southern Cal. Edison Co*. (1967) 252 Cal. App. 2d 1022; *Uniwill v. City of Los Angeles* (2004124 Cal. App. 4th, 537, 544). It is only required that a public entity, not a state actor, damage property for public use.

Case: 19-30088    Doc# 4775-1    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 13 of 28

Plaintiffs in *Bach* sought to sue their **neighbors** in inverse condemnation for the neighbors' complaint to the county the Bachs were operating a law practice out of their home in violation of zoning regulations. The Court of Appeal's summary dismissal of Bachs' "ill-conceived, frivolous" argument (*Bach*, supra, 215 Cal.App.3d at 307) is of little guidance in assessing PG&E's liability for damages resulting from operation of its power lines.

### 2)    Risk Sharing

Over 70 years ago Justice Roger Traynor explained the fundamental public policy underlying the principle of liability for inverse condemnation:

> The construction of the public improvement is a deliberate operation of the state or its agency in furtherance of public purposes. In erecting a structure that is inherently dangerous to private property, the state or its agency undertakes by virtue of its constitutional provision to compensate property owners for injury to their property arising from the inherent dangers of public improvement .... The decisive consideration is the effect of the public improvement on the property and whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking. It is irrelevant whether or not the injury to the property is accomplished by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property, but the loss to the owner.

(*House v. Los Angeles Co. Flood Control Dist. (*1944) 25 Cal.2d 384,396-397 [conc. opn. of Traynor, J.)

The Butte Fire occurred when a tree came into contact with a power line PG&E operates providing electrical service to over 3,640 customers on that line. The court finds if the individual property owners damaged here were to absorb that loss, they would be contributing more than their "proper share" to the cost of this undertaking. As the Court explained in *Pacific Bell, supra*, 208 Cal. App. 4th at 1408:

13

For an owner whose property is damaged by the operation of a utility, he or she suffers a disproportionate share of the cost of the public improvement regardless of whether the utility is governmentally or privately owned. We do not believe the happenstance of which type of utility operates in an area should foreclose a property owner's right to just compensation under inverse condemnation for the damage, interest and attorney fees and should limit the property owner to traditional tort remedies.

### 3) Public Improvement

Plaintiffs stress PG&E's electrical system is an improvement for public use. The court agrees.

Determining whether a use is public or private is a question of law. (*Barham, supra*, 74 Cal.App.4th at 752.) Courts have consistently held the public use requirement is satisfied when the improvement is used for the delivery of a utility service. (*Id.* at 751 ["transmission of electrical power is a public use and inverse condemnation will apply"]; accord *Slemons v. Southern California Edison Co., supra,* 252 Cal.App.2d at 1026-1027 [electric distribution lines serving three customers is a public use].)

PG&E's Electra circuits here serve 3,643 customers. (Simon Dec., ¶¶ 21 & 22, Ex. T, and Ex. U, p. 176:14-18.) PG&E cannot reasonably dispute its electrical distribution lines are not installed and maintained for a public use.

Although there was no dispute in the parties' submissions that PG&E's electrical system was an improvement for public use, the court makes this inevitable finding based upon the essential service provided and the substantial segment of the public receiving or dependent upon the service. (*Barham, supra*, 74 Cal.App.4th at 752; *Slemons v. Southern California Edison Co., supra,* 252 Cal.App.2d at 1026-1027.)

14

### 4) Public Policy

PG&E is subject to inverse condemnation liability despite the fact it is a privately-owned public utility. The policy reasons underlying the just compensation right in inverse condemnation do not dictate a different conclusion.

PG&E argues because it is a privately-owned utility, the traditional policy justifications for inverse condemnation should not apply in this case because: (1) PG&E did not obtain the land upon which its line is located through eminent domain or joint action with the state; (2) PG&E does not enjoy sovereign immunity; and (3) PG&E does not have authority to spread the cost of any award to all its customers.

The court is not persuaded.

### 5) Eminent Domain

The fact PG&E did not acquire its easement through eminent domain or joint action with the government is not material to its liability as a utility for inverse condemnation. A public entity may be held liable even if it cannot legally exercise eminent domain.

Inverse condemnation does not derive from any statutory eminent domain power, but directly from the Constitution. (*Baker v. Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal. 3d at 867-868.) As such, inverse condemnation liability does not depend on the mechanism by which defendant acquired the land where the damage occurred. It only depends on whether a public entity damaged the property of another for public use. (See also *Barham, supra,* Cal. App. 4th at 754 ["A landowner whose property has been invaded by a public entity that lacks eminent domain power suffers no less a taking merely because the defendant was not authorized to take."].)

PG&E cites *Cantu v. Pacific Gas and Electric Co.* (1987) 189 Cal. App. 3d 160, 165, in

15

arguing inverse condemnation liability only lies where a defendant has used eminent domain or joint action to obtain the land where its instrumentality was housed. This assessment of *Cantu* misses the mark, as only the holding of a case is authoritative. (*Consumer's Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal. 3d 891, 902 ["The doctrine of stare decisis applies only to judicial precedents, i.e., to the ratio decidendi or actual ground of decision of a case cited as authority."].)

In *Cantu*, the Court stated it had found no case imposing liability without a finding of eminent domain or joint action. However, immediately afterwards it stated "[the] connection from these homes to a distribution line is a *private service* to which eminent domain and inverse liability principles do not apply." (*Cantu* at 165 [emphasis added.].)

In *Cantu*, the central question was whether the use was private, not whether the defendant used eminent domain or joined in government action. As such, further statements in *Cantu* regarding eminent domain and joint action are not controlling.

### 6) Cost Spreading

The court also rejects PG&E's argument the cost-sharing policy underlying inverse condemnation does not apply because it lacks the power to spread the cost of condemnation across the benefitted public.

In *Pacific Bell*, Southern California Edison ("SCE") similarly argued the loss-spreading rationale underpinning inverse condemnation liability did not apply to it because as a public utility it did not have taxing authority and could only raise rates with the approval of California's Public Utilities Commission. But the Court noted the government's delegation to SCE the right and obligation to provide a vital public interest (electricity) did "not remove the policy justifications underlying inverse condemnation liability: that individual property owners should

16

RULING ON SUBMITTED MATTERS INVERSE CONDEMNATION MOTIONS CCP 463

not have to contribute disproportionately to the risks from public improvements made to benefit the community as a whole. (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 558)." (*Pacific Bell, supra*, 208 Cal. App. 4th at p. 1407.)

The court also noted SCE had not pointed to any evidence supporting its implication the PUC would not allow it adjustments to pass on damage liability during its periodic reviews. (*Pacific Bell*, *supra*, 208 Cal. App. 4th at p. 1407.)

Such evidence is similarly lacking here.

### 7) Sovereign Immunity

PG&E argues the doctrine of inverse condemnation exists, in part, to overcome sovereign immunity, which would otherwise bar recovery in takings cases. This may be true, but overcoming sovereign immunity is not the only justification for imposing liability under inverse condemnation. (See *House*, *supra*, 25 Cal. 2d at 396-397; *Barham*, *supra*, 74 Cal. App. 4th at 752.)

Furthermore, the sole case PG&E cites is inapposite on the facts. In *Customer Co*. the Supreme Court declined to extend inverse condemnation liability to police officers who damaged property in their efforts to enforce the law. (*Customer Co. v. City of Sacramento* (1995) 10 Cal. 4th 368, 404-405.) Indeed, in declining to apply inverse condemnation to police activities, the Court recognized inverse condemnation typically deals with "the taking or damaging of private property in connection with public improvement projects," which is precisely the subject at issue here. (*Id* at 377.)

For all these reasons, the court finds PG&E may be held liable under a claim of inverse condemnation for the damages alleged here, notwithstanding the fact it is a privately-owned utility.

17

**B. The Butte Fire Was Caused By A Public Improvement As Deliberately Designed And Constructed By PG&E**

Without conceding it may be liable as a privately held utility, PG&E also argues Plaintiffs fail to show the Butte Fire was caused by a public improvement as deliberately designed and constructed.

PG&E contends California's appellate courts have imposed inverse condemnation liability in only a handful of scenarios where the harm was caused by: (1) the public improvement's intended design or operation; (2) its construction; or (3) deliberate failure to maintain the improvement. PG&E argues none of these limited scenarios is present here. PG&E argues Plaintiffs at best allege only negligence by PG&E, which alone is insufficient to support inverse condemnation liability.

Again the court is not persuaded.

PG&E argues Plaintiffs fail to show the deliberate design and construction of PG&E's electrical lines caused any harm. (PG&E Opp. p.3:17-25.) In this respect, PG&E contends Plaintiffs must show PG&E deliberately designed its power lines with a deficiency that inevitably would lead to a fire. This is not the correct or applicable standard.

PG&E alternatively relies upon the reasonableness and thorough execution of its Vegetation Management Program, as an implicit component of its design of the improvement. PG&E essentially contends that since its Vegetation Management Program is reasonable, and that program has not been deliberately abandoned or discontinued, that component of the design also did not cause the fire. This alternative proposition is also not persuasive on the issue of causation and deliberate design.

18

### 1) Causation Standard

Inverse condemnation is a species of eminent domain actions created by article 1, section 19 of the California Constitution, which states in relevant part: "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." "In the landmark case of *Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 263-264 . . . [the California Supreme Court] construed this provision to mean that, with [certain] exceptions, 'any actual physical injury to real property proximately caused by [a public] improvement as deliberately designed and constructed is compensable under article I, section 14, of our Constitution whether foreseeable or not.'" (*Belair, supra,* 47 Cal.3d at 558.) However, the deliberateness requirement is satisfied by a public improvement that, as designed and constructed presents inherent risks of damage to private property, and the inherent risks materialize and cause damage. [Citation.]" (*Pacific Bell, supra,* 81 Cal.App.4th at 607.)

The Supreme Court "defined and clarified the element of proximate causation" in *Belair.* (*California State Auto. Ass'n Inter-Ins. Bureau v. City of Palo Alto ("CSAA")* (2006) 138 Cal.App.4th 474, 480.) The Supreme Court explained:

> [I]n order to establish [the requisite] causal connection between the public improvement and the plaintiff's damages, there must be a showing of "'a substantial cause-and-effect relationship excluding the probability that other forces alone produced the injury.' [Citations.]" [Citation.] Where independently generated forces not induced by the public . . . improvement . . . contribute to the injury, proximate cause is established where the public improvement constitutes a substantial concurring cause of the injury, i.e., where the injury occurred in substantial part because the improvement failed to function as it was intended.

19

Case: 19-30088    Doc# 4775-1    Filed: 11/15/19    Entered: 11/15/19 15:39:54    Page 20 of 28

(*Belair, supra,* 47 Cal.3d at 559-560.) Stated similarly in *CSAA*, "[a] public improvement is a 'substantial concurring cause' if other forces alone would not have caused the damage and the public improvement failed to function as intended." (*CSAA, supra,* 138 Cal.App.4th 508.)

Plaintiffs argue here, "the function of PG&E's Electra 1101 Circuit is to transmit electrical power to members of the public in a safe manner, without causing a fire. Under these circumstances, when the subject tree (even a green healthy one, maintained under the PG&E Vegetation Management Program) made contact with PG&E's power line and started the Butte Fire, the power line clearly failed to function as it was intended." (Plaintiffs' Opp., p. 12:1-10.) Plaintiffs note one of PG&E's "persons most qualified" testified if the Electra 1101 circuit was not there, the falling of the Subject Tree would not have caused a fire. (Simon Decl., ¶ 24, Ex. W, pp. 37:12-38:24.) This conclusion seems inescapable.

The court finds the deliberateness requirement is satisfied by PG&E's electrical system because, as designed and constructed, the public improvement presented inherent risk of damage to private property by fire on the easement and beyond. Further, the court also finds the risk inherent in the system's design and construction materialized, proximately causing the Butte fire.

PG&E installed and operated electric distribution lines serving over 3,600 customers, spanning miles of forest lands. The system as designed had the inherent risk trees could come into contact with the power lines and initiate a fire – hence the Vegetation Management Program. Given the placement of the system, and its vulnerability to contact with vegetation, the risk of fire was inherent. In the fullness of time, contact between the lines and a tree was inevitable. That risk materialized as the Butte Fire.

Alternatively, to the extent liability also depends upon the system failing to function as intended (which is not clear), the system is also found to have failed to function as intended: It was intended to transmit electricity without starting a fire.

### 2) The Reasonableness Standard for Inverse Condemnation Applied In Flood Control Cases Is Not Applicable

Much of the evidence PG&E proffered goes to its Vegetation Management Program. PG&E argued the reasonable efforts it takes to manage vegetation near its improvements to reduce the risk of fire should be considered in determining whether it is liable for inverse condemnation for damage caused by a fire occurring despite its efforts. (PG&E MPA, p.8:1-11:1, and fn. 11.)

However, the reasonableness of PG&E's maintenance of the natural environment surrounding its improvement is not a consideration for inverse condemnation liability in this context. Instead, as Plaintiffs argue, the strict liability standard applies here.

In *Pacific Bell*, SCE relied upon the long evolving line of ***flood-control*** inverse condemnation cases to argue a reasonableness standard should apply to its operation of privately owned high voltage power lines. The Court rejected this argument, explaining the special reasonableness standard applicable to flood-control cases does not apply outside that special context. (*Pacific Bell, supra,* 208 Cal. App. 4th at pp 1409-1411, citing *Pacific Bell Telephone Co. v. City of San Diego* (2000) 81 Cal.App.4[th] 596, 614-615.)

After reviewing the genesis of the flood-control standard and the reasoning of the seminal authorities, the Court in *Pacific Bell* concluded the "concerns that animated the rejection of the strict liability rule in the context of public flood control projects has no counterpart here" where the risk to Pacific Bell's facility of injury from ground faults was not a risk it was exposed to in the absence of Edison's electrical facility." (*Pacific Bell, supra,* 208 Cal. App. 4th at pp 1409-1411 citing *Pacific Bell Telephone Co. v. City of San Diego, supra,* 81 Cal.App.4[th] at 614-615.)

The same reasoning holds here. Unlike the common enemy of flood waters, the risk of wildfire from falling trees was not a risk Plaintiffs were exposed to in the absence of PG&E's

21

electrical improvements.

## IV.
## Conclusion

For the foregoing reasons, Plaintiffs' motion for a finding that PG&E is liable in inverse condemnation is granted. Plaintiffs' motion for a similar finding as to the Pacific Gas & Electric Corporation is denied.

PG&E's competing motion for a legal determination that it is not liable in inverse condemnation is denied.

Plaintiffs' counsel shall prepare an order for the court's signature pursuant to California Rules of Court, rule 3.1312.

DATED:    June 22, 2017

Judge Allen Sumner
Superior Court of California,
County of Sacramento

22

RULING ON SUBMITTED MATTER - INVERSE CONDEMNATION MOTIONS; CCP 437c

Case: 19-30088    Doc# 4775-1    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 24 of 28

1   Steven M. Campora (SBN 110909)
    **DREYER BABICH BUCCOLA**
2   **WOOD & CAMPORA LLP**
    20 Bicentennial Circle
3   Sacramento, CA 95826
    Telephone: (916) 379-3500
4   scampora@dbbwc.com

5   Dario de Ghetaldi (SBN 126782)
    Amanda L. Riddle (SBN 215221)
6   **COREY, LUZAICH, DE GHETALDI,**
    **NASTARI & RIDDLE LLP**
7   700 El Camino Real, Millbrae, CA 94030-0669
    deg@coreylaw.com; alr@coreylaw.com
8   **Co-Liaison Counsel for Individual Plaintiffs**

9   Kenneth R. Chiate (SBN 39554)           Gayle L. Gough (SBN 154398)
    Jeffrey N. Boozell (SBN 199507)         Joel B. Crane (SBN 271699)
10  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**   **GOUGH & HANCOCK, LLP**
    865 South Figueroa Street, 10th Floor   Two Embarcadero Center, , Suite 640
11  Los Angeles, CA 90017                   San Francisco, CA 94111 Telephone:
    Telephone: (213) 443-3000               (415) 848-8900
12  kenchiate@quinnemanuel.com              gayle.gough@ghcounsel.com
    jeffboozell@quinnemanuel.com            joel.crane@ghcounsel.com
13  **Counsel for Defendants Pacific Gas and**
    **Electric Company and PG&E Corporation**

14

15              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16                  **FOR THE COUNTY OF SACRAMENTO**

17  Coordination Proceeding Special Title   ) Assigned to the Honorable Allen H. Sumner
18  (Rule 3.550)                            ) Case No. JCCP 4853
                                            )
19       BUTTE FIRE CASES.                  ) **STIPULATION AND [PROPOSED]**
                                            ) **ORDER REGARDING PLAINTIFFS'**
20                                          ) **PROPOSED MOTION FOR**
                                            ) **DETERMINATION OF INVERSE**
21  _____   ) **CONDEMNATION LIABILITY (C.C.P. §**
                                            ) **1260.040)**
22

23

24

25

26

27

28

_____
        STIP AND ORDER RE PLAINTIFFS' MOTION RE INVERSE CONDEMNATION    Butte Fire Cases
                                                                        JCCP 4853

**WHEREAS:**

1. Individual Plaintiffs and Defendant PG&E (the "Parties") are parties to a Judicial Counsel Coordination Proceeding pursuant to Code of Civil Procedure § 404, *et seq.*, known as the *Butte Fire Cases*, JCCP 4853 (the "Coordination Proceeding"); and

2. The Coordination Proceeding includes numerous common issues that were alleged in the Individual Plaintiffs' Master Complaint and the Parties desire to have the Court make certain legal determinations in advance of any trial of any of the claims in the Coordination Proceeding, which determinations will apply to any and all claims currently made in the Coordination Proceeding; and

3. One common issue is whether Defendant PG&E is subject to inverse condemnation liability based on allegations in Individual Plaintiffs' Master Complaint that damage to their property allegedly was caused by the conduct of Defendant PG&E and that, as a result, Plaintiffs are entitled to damages according to proof; and

4. Certain individual plaintiffs have adopted the Cause of Action for Inverse Condemnation as stated in the Individual Plaintiffs' Master Complaint by way of their respective Adoption Complaints (the "Moving Plaintiffs")[1]; and

5. The Moving Plaintiffs intend to bring in the Coordination Proceeding a Motion for Determination of Inverse Condemnation Liability pursuant to Code of Civil Procedure § 1260.040 seeking a determination from this Court that Defendant PG&E is liable for inverse condemnation (the "Master Motion"); and

6. To prevail on such motion, each Moving Plaintiff must establish that their real and/or personal property was damaged in the Butte Fire, and;

7. Absent this stipulation, in order to establish such damage, each Moving Plaintiff

---

[1] The Subrogation Plaintiffs are in the process of finalizing their settlement with Defendants and will not be Moving Plaintiffs in this instance.

STIP AND ORDER RE PLAINTIFFS' MOTION RE INVERSE CONDEMNATION

1  would be required to present evidence in the form of declarations of specific damages to that

2  Plaintiff's property, and;

3      8.  In order to expedite the Court's determination of Plaintiff's entitlement or lack of

4  entitlement to recover damages under the Cause of Action for Inverse Condemnation through the

5  Master Motion, the Parties wish to avoid the necessity of individual declarations concerning

6  damages from each of the Moving Plaintiffs.

7      Accordingly, the Parties agree as follows:

8      1.  In support of the Master Motion, only Plaintiffs Larry and Karen Carr,

9  Florencio and Martha Garcia, Robert and Barbara Garibaldi, Edward and Laura Miser, Ronald

10  and Darunee Rogers, and Barbara Rose (collectively "August 11th Plaintiffs") will submit

11  evidence that their real and/or personal property was damaged in the Butte Fire;

12      2.  If the Court determines that Defendant PG&E is liable for inverse

13  Condemnation, that determination pursuant to the Master Motion will be binding as between

14  PG&E and all Moving Plaintiffs presently in the Coordination Proceeding;

15      3.  If the Court determines that Defendant PG&E is liable for inverse condemnation and

16  notwithstanding the fact that such determination of liability shall be binding as between the

17  Moving Plaintiffs and PG&E presently in the Coordination Proceeding, August 11th Plaintiffs

18  still have the burden of proving the amount of their damages, and the remaining Moving

19  Plaintiffs still have the burden of proving that their real and/or personal property was damaged in

20  the Butte Fire and the amount of their damages, and;

21      4.  This Stipulation and [Proposed] Order shall not affect any party's rights to move

22  for reconsideration, to appeal, to challenge any rulings, or to seek any subsequent orders as may

23  be permitted by law, all of which are preserved.

25  /  /  /

26  /  /  /

27  /  /  /

28

Case: 19-30088    Doc# 4775-1    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 26 of 28

5. The Stipulation may be executed in counter-parts and facsimile signatures may be deemed original signatures.

Dated: May 22, 2017

By: _____
Steven M. Campora

Dreyer Babich Buccola Wood & Campora, LLP
Co-Liaison Counsel for Individual Plaintiffs

Dated: May 22, 2017

By: _____
Amanda L. Riddle

Corey, Luzaich, de Ghetaldi, Nastari & Riddle LLP
Co-Liaison Counsel for Individual Plaintiffs

Dated: May 22, 2017

By: _____
Kenneth R. Chiate

Quinn Emanuel Urquhart & Sullivan LLP
Counsel for Defendant PG&E

Dated: May 22, 2017

By: _____
Gayle L. Gough

Gough & Hancock LLP
Counsel for Defendant PG&E

IT IS SO ORDERED.

DATED: __6/22/17__

By _____
HON. ALLEN H. SUMNER
Judge of the Superior Court

-3-
STIP AND ORDER RE PLAINTIFFS' MOTION RE INVERSE CONDEMNATION

1    **ELECTRONIC PROOF OF SERVICE**

2    I, Diana Prisk, hereby declare as follows:

3         I am employed by Corey, Luzaich, de Ghetaldi, Nastari & Riddle LLP, 700 El Camino

4    Real, Millbrae, California, 94030. I am over the age of 18 years and am not a party to this

5    action. On May 22, 2017, I caused service of true and correct copies of the following:

6    **STIPULATION AND [PROPOSED] ORDER REGARDING PLAINTIFFS'**

7    **PROPOSED MOTION FOR DETERMINATION OF INVERSE CONDEMNATION**

8    **LIABILITY (C.C.P. § 1260.040)**

9         On the interested parties in this action pursuant to the most recent Omnibus Service List

10   by submitting an electronic version of the document(s) via file transfer protocol (FTP) to

11   CaseHomePage through the upload feature at www.casehomepage.com.

12        I declare under penalty of penalty of perjury pursuant to the laws of the State of

13   California that the foregoing is true and correct.

14        Executed at Millbrae, California, on May 22, 2017.

15

16

17

18                                    Diana Prisk

19

20

21

22

23

24

25

26

27

28

-4-