# EXHIBIT B

FILED
ENDORSED
MAY - 1 2018
By M. GARCIA
Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

# COUNTY OF SACRAMENTO

BUTTE FIRE CASES

Case No.: JCCP 4853

**RULING ON SUBMITTED MATTER: PG&E'S RENEWED MOTION FOR A LEGAL DETERMINATION OF INVERSE CONDEMNATION LIABILITY PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 1260.040**

On April 26, 2018, the court heard the Renewed Motion by Pacific Gas and Electric Company ("PG&E") for a Legal Determination of Inverse Condemnation Liability. PG&E renews its motion for a legal determination of inverse condemnation liability under Code of Civil Procedure section 1008, subdivision (b), "on the ground that new facts have materialized since the Court's ruling on [its] previous motion." (PG&E's Renewed Mot. ("Mot.") 1:3-6.)[1] PG&E also requests the court sua sponte reconsider and deny plaintiffs' cross-motion. (*Id.* at 1:6-8.)

The parties appeared and presented oral argument.

The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence submitted, affirms its tentative ruling, as supplemented concerning the parties' requests for judicial notice and evidentiary objections. The court also denies PG&E's request to certify its order to the Court of Appeal under section 166.1.[2]

---

[1] All statutory references are to the Cod of Civil Procedure unless otherwise specified.

[2] Additional minor changes have been made to the tentative ruling, including correcting the two errors discussed during the April 26, 2018 hearing.

1

RULING ON SUBMITTED MATTER

## Introduction

Whether PG&E, a privately owned public utility, ***should*** be liable under the doctrine of inverse condemnation for damages caused by the Butte Fire is a question of public policy to be addressed to the Legislature. Whether PG&E ***is*** liable for inverse condemnation damages under present controlling appellate case law is a question of law this court must decide. (See *People v. McGuire* (1872) 45 Cal. 56, 57-58 ["*Nisi prius* Courts are not at liberty to set aside or disregard the decisions of [a court of superior jurisdiction] because it may seem to them that the decisions are unsound. Until reversed or modified . . . , [a] decision[] must be accepted by all inferior tribunals."].)

## Factual Background

### A. Procedural History

Plaintiffs and PG&E filed competing motions under section 1260.040 seeking a legal determination on whether PG&E is liable for inverse condemnation damages caused by the Butte Fire. Hearing on the competing motions was held June 16, 2017.

On June 22, 2017, the court issued its Ruling on Submitted Matter: Inverse Condemnation Motions ("Ruling"), granting plaintiffs' motion for a finding PG&E is liable in inverse condemnation and denying PG&E's competing motion for a legal determination it is not liable.[3] Specifically, the court found (1) PG&E may be held liable for inverse condemnation under California law even though it is a privately owned public utility, and (2) the Butte Fire was caused by a public improvement as deliberately designed and constructed by PG&E. The June 22, 2017 Ruling, attached hereto as Exhibit A, states in relevant part:

---

[3] The court denied plaintiffs' motion as to the Pacific Gas & Electric Corporation.

2

## A. A Privately Owned Public Utility May Be Liable For Inverse Condemnation

### 1) Private Utilities

California courts have long found public and quasi-public entities responsible for damages under inverse condemnation. (See, e.g., *Eachus v. Los Angeles Consolidated Elec. Ry. Co.* (1894) 103 Cal. 614 [railroad liable for cutting off access to a public road.].)

Courts have repeatedly classified utilities as "public entities." (*Barham v. Southern Cal. Edison Co.* (1999) 74 Cal. App. 4th 744, 752 (1999); *Gay Law Students Assn. v. Pac Tel. & Tel. Co.* (1979) 24 Cal. 3d 458, 470; *Pac. Bell Tel. Co. v. Pac. Gas and Electric Co.* (2012) 208 Cal. App. 4th, 1400 ["*Pacific Bell*"]; *Sheffet v. City of Los Angeles* (1970) 3 Cal. App. 3d 720, 732.)

More specifically, under California law the proposition a privately-owned public utility such as PG&E may be held liable for inverse condemnation is now solidly established. (*Barham v. Southern California Edison Co., supra*, 74 Cal.App.4th 744, 753; *Pacific Bell, supra*, 208 Cal. App. 4th 1400.)

The Court in *Barham* found no "significant differences" between a privately held public utility and a publicly held utility for the purpose of inverse condemnation liability. (*Barham, supra*, 74 Cal.App. 4th at 753.) Rather, the Court cited the California Supreme Court's holding in *Gay Law Students Assn. v. Pac Tel. & Tel. Co., supra*, 24 Cal. 3d 458 that a public utility is a "state actor" when hiring its employees. (*Barham* at 753.) In *Gay Law Students*, the Supreme Court found "...the breadth and depth of governmental regulation of a public utility's business practices inextricably ties the state to a public utility's conduct..." (*Gay Law Students, supra*, 24 Cal.3d at 470.)

The Fourth District is not alone in this line of reasoning. In *Pacific Bell*, the Second District adopted *Barham's* reasoning in finding the quasi-monopolistic nature of Southern California Edison rendered it a public entity. (*Pac. Bell, supra*, 208 Cal. App. 4th at 1405.) The Court explained: "[A] public utility's monopolistic or quasi-monopolistic authority ... derives directly from its exclusive franchise provided by the state."(*Id.* at 1406.)

PG&E argues repeatedly the California Supreme Court itself has not found a privately held public utility liable under inverse condemnation. This is true, but not dispositive.

PG&E argues the appellate courts in *Barham* and *Pacific*

3

*Bell* improperly extended the holding of *Gay Law Students* beyond the employment context. PG&E cites *Automatic Sprinkler Co. v. Southern Cal. Edison Co.* (1989) 216 Cal. App. 3d 627, 633 for its argument. However, *Automatic Sprinkler* ultimately turned on a specific statutory scheme, not application of *Gay Law Students*. (*Automatic Sprinkler* at 633.) Furthermore, the very same Court of Appeals declined to extend the conclusions in *Automatic Sprinkler* to *Barham*. (*Barham, supra*, 74 Cal. App. 4th at 753.)

PG&E also cites language from the Third District Court of Appeal's decision in *Bach v. County of Butte, supra*, 215 Cal.App. 3d at 307: "…it is elementary that an inverse condemnation action … requires state action and, therefore, cannot be asserted against private parties." The court does not find this general statement controlling.

Plaintiffs in *Bach* sought to sue their neighbors in inverse condemnation for the neighbors' complaint to the county the Bachs were operating a law practice out of their home in violation of zoning regulations. The Court of Appeal's summary dismissal of Bachs' "ill-conceived, frivolous" argument (*Bach, supra*, 215 Cal.App.3d at 307) is of little guidance in assessing PG&E's liability for damages resulting from operation of its power lines.

### 2) Risk Sharing

Over 70 years ago Justice Roger Traynor explained the fundamental public policy underlying the principle of liability for inverse condemnation:

> The construction of the public improvement is a deliberate operation of the state or its agency in furtherance of public purposes. In erecting a structure that is inherently dangerous to private property, the state or its agency undertakes by virtue of its constitutional provision to compensate property owners for injury to their properly arising from the inherent dangers of public improvement …. The decisive consideration is the effect of the public improvement on the property and whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking. It is irrelevant whether or not the injury to the property is accomplished by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property, but the loss to the owner.

4

RULING ON SUBMITTED MATTER
Case: 19-30088    Doc# 4775-2    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 5 of 19

(*House v. Los Angeles Co. Flood Control Dist.* (1944) 25 Cal.2d 384, 396-397 [conc. opn. of Traynor, J.])

The Butte Fire occurred when a tree came into contact with a power line PG&E operates providing electrical service to over 3,640 customers on that line. The court finds if the individual property owners damaged here were to absorb that loss, they would be contributing more than their "proper share" to the cost of this undertaking. As the Court explained in *Pacific Bell, supra,* 208 Cal. App. 4th at 1408:

> For an owner whose property is damaged by the operation of a utility, he or she suffers a disproportionate share of the cost of the public improvement regardless of whether the utility is governmentally or privately owned. We do not believe the happenstance of which type of utility operates in an area should foreclose a property owner's right to just compensation under inverse condemnation for the damage, interest and attorney fees and should limit the property owner to traditional tort remedies.

**3)  Public Improvement**

. . . .

**4)  Public Policy**

PG&E is subject to inverse condemnation liability despite the fact it is a privately-owned public utility. The policy reasons underlying the just compensation right in inverse condemnation do not dictate a different conclusion.

PG&E argues because it is a privately-owned utility, the traditional policy justifications for inverse condemnation should not apply in this case because: (1) PG&E did not obtain the land upon which its line is located through eminent domain or joint action with the state; (2) PG&E does not enjoy sovereign immunity; and (3) PG&E does not have authority to spread the cost of any award to all its customers.

The court is not persuaded.

**[(a)]  Eminent Domain**

5

. . . .

### [(b)] Cost Spreading

The court also rejects PG&E's argument the cost-sharing policy underlying inverse condemnation does not apply because it lacks the power to spread the cost of condemnation across the benefitted public.

In *Pacific Bell*, Southern California Edison ("SCE") similarly argued the loss-spreading rationale underpinning inverse condemnation liability did not apply to it because as a public utility it did not have taxing authority and could only raise rates with the approval of California's Public Utilities Commission [("PUC")]. But the Court noted the government's delegation to SCE the right and obligation to provide a vital public interest (electricity) did "not remove the policy justifications underlying inverse condemnation liability: that individual property owners should not have to contribute disproportionately to the risks from public improvements made to benefit the community as a whole. (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 558)." (*Pacific Bell, supra*, 208 Cal. App. 4th at p. 1407.)

The court also noted SCE had not pointed to any evidence supporting its implication the PUC would not allow it adjustments to pass on damage liability during its periodic reviews. (*Pacific Bell, supra*, 208 Cal. App. 4th at p. 1407.)

Such evidence is similarly lacking here.

### [(c)] Sovereign Immunity

. . . .

For all these reasons, the court finds PG&E may be held liable under a claim of inverse condemnation for the damages alleged here, notwithstanding the fact it is a privately-owned utility.

(June 22, 2017 Ruling at pp. 11-17.)

**B.   San Diego Gas & Electric Company's PUC Application**

In September 2015, San Diego Gas & Electric Company applied for approval from the California Public Utilities Commission ("PUC") to recover as rate increases its costs and legal fees incurred in settling damage claims arising from three wildfires, collectively referred to as the

6

"2007 Southern California Wildfires." Inverse condemnation was a cause of action alleged against San Diego Gas & Electric Company in the San Diego County coordinated proceedings arising out of those fires.

In a Decision issued November 30, 2017, the PUC denied San Diego Gas & Electric Company's application ("Decision"), holding the company "did not reasonably manage and operate its facilities prior to the 2007 Southern California Wildfires." (PUC Decision 17-11-033, at p. 2, attached as Ex. G to the Decl. of Jeffrey N. Boozell ("Boozell Decl.").) In its Decision the PUC stated "Inverse Condemnation principles are not relevant to a Commission reasonableness review under the prudent manager standard." (*Id.* at p. 65.)

PG&E contends the Decision was the first time the PUC "announced . . . that the cost spreading rational for inverse condemnation has no bearing" on the PUC's approval of rate increases. PG&E argues this declaration by the PUC is a new fact coming after this court's Ruling, which "unambiguously establishes that the fundamental policy underlying the doctrine of inverse condemnation has no application to private utilities such as PG&E." (Mot. 2:9-13.)

### Legal Standard

Section 1008, subdivision (b), permits a party "who originally made an application for an order which was refused in whole or part . . . [to] make a subsequent application for the same order upon new or different facts, circumstances, or law." Unlike a motion for reconsideration under section 1008, subdivision (a), there is no time limit for PG&E to renew its previous motion. (*Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 816.)

### Discussion

**A. Deciding Inverse Condemnation Liability under Section 1260.040**

As discussed in the court's June 22, 2017 Ruling, in their initial motions the parties agreed the court had authority pursuant to section 1260.040 to rule upon the question of liability for

7
RULING ON SUBMITTED MATTER

inverse condemnation presented by their competing motions. (June 22, 2017 Ruling at p. 2.) At that time, only one Court of Appeal had addressed the application of section 1260.040. In *Dina v People ex rel. Department of Transportation* (2007) 151 Cal.App.4th 1029 ("*Dina*"), the Second Appellate District held the trial court properly determined the legal issue of liability for inverse condemnation pursuant to the motion procedure afforded by section 1260.040. (*Dina* at 1047.)

However, after this court's June 22, 2017 Ruling and PG&E filed its renewed motion, the Fourth Appellate District expressly disagreed with *Dina*, stating "we part company with *Dina* in interpreting section 1260.040 to authorize pretrial liability determinations" in an inverse condemnation action. (*Weiss v. People ex rel. Dep't of Transp.* (2018) 20 Cal.App.5th 1156, 1175 ["*Weiss*"].) The Court stated, "Code of Civil Procedure section 1260.040 does not provide for a nonsuit or other dispositive motion to resolve liability in limine in inverse condemnation actions, and we decline to judicially create such a procedure." (*Id.* at 1166.)

In light of the recent split of authority on whether the issue of inverse condemnation liability may be decided under section 1260.040, the court allowed the parties to file supplemental briefing on the issue.

Plaintiffs maintain *Weiss* correctly interpreted the application of section 1260.040 and argue the court may not hear PG&E's renewed motion because using section 1260.040 to determine inverse condemnation liability "is improper and a violation of due process." (Pls.' Supp. Br. 1:9-14, 5:17-19.) Although plaintiffs contend utilizing section 1260.040 to determine inverse condemnation liability is improper, they say nothing concerning the continued validity of the court's June 22, 2017 Ruling in their favor – rendered pursuant to section 1260.040 at their urging.

In contrast, PG&E argues the court should continue to view this case as controlled by *Dina* in light of the parties' representations and the court's "reliance and substantial investment of

8
RULING ON SUBMITTED MATTER

time and resources on the assumption that *Dina* controls."[4] (PG&E's Supp. Br. 2:6-13.)

Alternatively, PG&E argues if the court follows *Weiss* rather than *Dina* to deny PG&E's renewed motion, the court must then vacate its June 22, 2017 Ruling. (*Id.* at 2:14-17.)

Assuming, arguendo, the *Dina* court correctly decided section 1260.040 can be used to decide inverse condemnation liability pre-trial, the court nevertheless finds PG&E loses on the merits of its renewed motion. Therefore, the court need not decide which Court of Appeal decision to follow regarding section 1260.040.[5]

**B. Requests for Judicial Notice**

Plaintiffs and PG&E filed Requests for Judicial Notice in support of their briefing.

PG&E's requests the court take judicial notice of the PUC's Decision and the December 26, 2017 Concurrence of Commissioners Picker and Aceves are GRANTED. (See *People ex rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132, 1143, fn.4.)

The parties' remaining requests are denied as irrelevant to the court's decision.

**C. Evidentiary Objections**

The court rules on plaintiffs' evidentiary objections as follows:

Plaintiffs' Objection No. 9 to Exhibit G to the Boozell Declaration (the PUC Decision)

---

[4] In its supplemental brief, PG&E "reserve[d] the right to argue in another case . . . that the conflicting view of law[, i.e., *Weiss*,] represents the better-reasoned decision." (PG&E Supp. Br. 2:10-13.)

[5] Further, the court finds the due process concerns plaintiffs raise in their supplemental brief are not at issue here given the circumstances and procedural history of this coordinated proceeding.
  PG&E's renewed motion does not concern disputed facts, nor does it require the court to weigh evidence. Thus, the Court of Appeal's concern in *Weiss* with the impropriety of using section 1260.040 to resolve disputed factual issues does not apply here. Rather, the court is deciding a legal issue - whether under existing California law a privately owned public utility can be held liable for inverse condemnation.
  Additionally, plaintiffs cannot argue they are now prejudiced by using the very procedure they initially requested.

9

RULING ON SUBMITTED MATTER

and Objection No. 10 to Exhibit H to the Boozell Declaration (the December 26, 2017 Concurrence) are OVERRULED.

The court does not rule on plaintiffs' remaining evidentiary objections since they concern evidence not considered or otherwise material to this motion.

### D. PG&E's Renewed Motion

#### 1) The PUC's Decision

PG&E argues renewal of its motion for a legal determination of inverse condemnation liability is permitted given the PUC's announcement for the first time in its November 2017 Decision that the cost-spreading rational for inverse condemnation has "no bearing" on the PUC's obligation to allow utilities to recover only reasonably and prudently incurred costs. (Mot. 2:6-8.) PG&E argues:

> On June 22, 2017, the Court concluded that the doctrine of inverse condemnation applies to PG&E with respect to the Butte Fire. The Court rejected PG&E's argument that inverse condemnation is not properly applied to a private utility such as PG&E because, unlike a public utility, PG&E lacks the power unilaterally to spread the costs of inverse condemnation across the benefitted public. The Court relied on two intermediate court decisions that found that private utilities could be held liable for inverse condemnation because, in the view of those courts, there is no salient difference between a public utility (which can automatically pass on inverse damages to the public) and a private utility (which cannot). Critically, this Court held that PG&E had failed to put forth any evidence to support its contention that the [PUC]—the regulatory agency charged with reviewing and approving any rate increases proposed by PG&E—would not allow PG&E to pass on its inverse condemnation liability through rate increases.
>
> Such evidence now exists and forms the basis for this Motion. . . .
>
> Because the [PUC] must approve private utility rate increases, [its] declaration that it will not automatically allow such utilities to spread inverse losses through rate increases to the customers that benefit from the public improvement unambiguously establishes that the fundamental policy underlying the doctrine of

10

RULING ON SUBMITTED MATTER
Case: 19-30088    Doc# 4775-2    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 11 of 19

inverse condemnation has no application to private utilities such as PG&E. Inverse is premised on automatic cost spreading and this new fact—which did not exist at the time of this Court's decision (or the prior decisions on which this Court relied)—refutes the assumption that a private utility can spread inverse costs in the same way that a public utility can. As a result, PG&E respectfully submits that, in light of this new fact, the prior decisions upon which this Court relied were incorrectly decided and that inverse condemnation cannot apply to a private utility such as PG&E under California law.

(Mot. 1:15-2:18.) PG&E also argues that PUC's declaration inverse condemnation is irrelevant to its rate-making process causes continued application of inverse condemnation to private utilities to violate the California and United States Constitutions. (*Id.* at 10:6-8.)

Plaintiffs argue PG&E's renewed motion fails for seven reasons:[6]

    1)    The court lacks jurisdiction to hear the motion because Public Utilities Code section 1759 vests exclusive jurisdiction to review decisions of the PUC with the Court of Appeal and Supreme Court;

    2)    The only proper procedure to review the PUC Decision is via a writ of review as provided in Public Utilities Code section 1759;

    3)    PG&E's renewed motion is not ripe for adjudication because the PUC's Decision is advisory;

    4)    The PUC's Decision is "not final" and therefore not ripe for review because multiple utilities have applied for rehearing and the PUC has not ruled on those applications;

    5)    PG&E has not presented any "new law" or "new facts," and thus there are no grounds supporting a renewed motion under section 1008;

---

[6] The County of Calaveras filed a Joinder in Opposition to PG&E's renewed motion. The joinder was not considered since the County of Calaveras is not currently a party to the coordinated proceeding.

11

RULING ON SUBMITTED MATTER

Case: 19-30088    Doc# 4775-2    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 12 of 19

      6)      PG&E's renewed motion is unsupported by competent evidence; and

      7)      There has been no change in the controlling appellate case law, and therefore, the doctrine of stare decisis compels this court to continue to follow it.

(Pls.' Opp'n 1:2-18.)

The court need not address plaintiff's first six arguments because the court concludes two decisions of the Court of Appeal holding privately owned public utilities can be liable under the doctrine of inverse condemnation are still controlling authority this court must follow.[7] (*Barham v. Southern California Edison Company* (1999) 74 Cal.App.4th 744 ["*Barham*"] and *Pacific Bell Telephone Company v. Southern California Edison Company* (2012) 208 Cal.App.4th 1400 ["*Pacific Bell*"].) The PUC's statement in its Decision that inverse condemnation principles "are not relevant" to the PUC's rate review does not "fairly distinguish" this case from the facts or rulings in *Barham* and *Pacific Bell*. Accordingly, PG&E's renewed motion is DENIED.

### 2) Stare decisis

Under the doctrine of stare decisis, tribunals exercising "inferior jurisdiction" must follow decisions of courts exercising superior jurisdiction. Our Supreme Court directs: "Decisions of every division of the District Courts of Appeal are binding upon . . . all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court." (*Auto Equity Sales, Inc. v. Super. Ct.* (1962) 57 Cal.2d 450, 455.) "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (*Ibid.;* accord *Lafferty v. Wells Fargo Bank*

---

[7] The court recognizes the jurisdiction and independence of the PUC and a superior court's inability to "review" a PUC decision. (Pub. Util. Code, § 1759, subd. (a).) However, PG&E's renewed motion does not call upon the court to review the PUC's November 2017 Decision in violation of the Public Utilities Code. (See, e.g., *Breidert v. S. Pacific Co.* (1964) 61 Cal.2d 659, 662 [discussing the respective jurisdiction of the PUC and courts]; *San Diego Gas & Elec. Co. v. Super. Ct.* (1996) 13 Cal.4th 893, 916-920.)

(2013) 213 Cal. App. 4th 545, 569.)

In *Barham* the Court of Appeal (Fourth Appellate District) held a privately owned public utility could be liable for inverse condemnation. The Court rejected the utility's argument that inverse condemnation principles should not apply because Southern California Edison ("SCE") is a privately owned public utility, not a public entity. (*Barham* at p. 752.) The Court of Appeal explained:

> Were we to adopt SCE's position, we would be required to differentiate between damage resulting from the operation of a utility based solely upon whether the utility is operated by a governmental entity or by a privately owned public utility. Publicly owned electric utilities have been held liable in inverse condemnation in situations virtually identical to this case. [Citations.] We are not convinced that any significant differences exist regarding the operation of publicly versus privately owned electric utilities as applied to the facts in this case and find there is no rational basis upon which to found such a distinction. We conclude, under the factual scenario here present, SCE may be liable in inverse condemnation as a public entity. Further, article I, section 19 of the California Constitution and the cases which interpret and apply it have as their principal focus the concept of public use, as opposed to the nature of the entity appropriating the property.

(*Id.* at p. 753.)

Thirteen years later, the Court of Appeal (Second Appellate District) in *Pacific Bell* agreed with the conclusion reached in *Barham* that a privately owned public utility could be liable under inverse condemnation. (*Pacific Bell* at p. 1404.) The Court of Appeal reasoned:

> On appeal [SCE] contends that the central case relied upon by the trial court in finding [SCE] liable for inverse condemnation, *Barham, supra*, . . . wrongly interpreted Supreme Court precedent to hold a privately owned public utility like [SCE] may be liable for inverse condemnation as a public entity. [Citation.] . . . .
>
> We find [SCE's] reading of the Supreme Court cases to be overly limited and agree with the conclusion reached in *Barham* and by the trial court that [SCE] may be liable under inverse condemnation for the damage to Pacific Bell's property.

13

. . . .

The *Barham* court found . . . support for its conclusion that [SCE] may be liable for inverse condemnation in the Supreme Court's decision in *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 . . . . In *Gay Law Students Assn.*, the California Supreme Court held that the defendant, "a privately owned public utility, which enjoys a state-protected monopoly or quasi-monopoly," violates the California constitutional equal protection guarantee in article I, section 7 of the state Constitution, when it utilizes its authority arbitrarily to exclude a class of individuals from employment opportunities. [Citation.] The Supreme Court reasoned that the utility was "in many respects more akin to a governmental entity than to a purely private employer" and "the breadth and depth of governmental regulation of a public utility's business practices inextricably ties the state to a public utility's conduct, both in the public's perception and in the utility's day-to-day activities. [Citations]." [Citation.] Of particular significance in this case is that "a public utility's monopolistic or quasi-monopolistic authority ... derives directly from its exclusive franchise provided by the state." [Citations.] A public utility's monopoly "is guaranteed and safeguarded by the state Public Utilities Commission, which possesses the power to refuse to issue certificates of public convenience and necessity to permit potential competition to enter" the market. (*Gay Law Students Assn., supra*, 24 Cal.3d at p. 471.)

In the instant appeal, we find that [SCE's] monopolistic or quasi-monopolistic authority, deriving directly from its exclusive franchise provided by the state (see *Gay Law Students Assn., supra*, 24 Cal.3d at p. 471), distinguishes [SCE's] action from the cases it cites rejecting inverse condemnation cases against private parties who do not have such monopolistic authority from the state. [Citation.]

We find further support in *Eachus v. Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614 . . . . [L]ike *Gay Law Students Assn.* the dispositive factor in *Eachus* appears to be the quasi-monopolistic authority and delegated power given to the defendant by the grant of a franchise. In *Eachus, supra*, 103 Cal. 614, the Supreme Court affirmed the award to the plaintiff landowners of inverse condemnation damages under the former takings clause of the California Constitution against a defendant, a railway company that had "received a franchise from the city of Los Angeles to construct a railroad" along the street in front of the plaintiffs' property and, in

14

preparation for construction of the railroad, excavated the middle of the street to its official grade and thereby cut off the plaintiffs' access to the street. (*Eachus, supra*, 103 Cal. at pp. 615–616.) . . . .

"The term 'franchise' ordinarily refers to those services and functions that government itself is obligated to furnish to its citizens, and usually concerns matters of vital public interest such as water, gas, electricity, or telephone services, and the right to use the public streets and ways to bring them to the general public." [Citation.] Here, the government has chosen to grant a franchise and delegate the furnishing of electricity to [SCE] rather than operating the utility itself. Such a delegation does not remove the policy justifications underlying inverse condemnation liability: that individual property owners should not have to contribute disproportionately to the risks from public improvements made to benefit the community as a whole. [Citation.] [SCE] argues that this loss-spreading rationale does not apply because as a public utility it does not have taxing authority and may raise rates only with the approval of California's Public Utilities Commission. We note that in this case the judgment was for $123,841.95 and that [SCE] has not pointed to any evidence to support its implication that the commission would not allow [SCE] adjustments to pass on damages liability during its periodic reviews. [fn.]

As the *Barham* court noted, if we were to adopt [SCE's] position, "we would be required to differentiate between damage resulting from the operation of a utility based solely upon whether the utility is operated by a governmental entity or by a privately owned public utility" but we are "not convinced that any significant differences exist." (*Barham, supra*, 74 Cal.App.4th at p. 753.) For an owner whose property is damaged by the operation of a utility, he or she suffers a disproportionate share of the cost of the public improvement regardless of whether the utility is governmentally or privately owned. We do not believe the happenstance of which type of utility operates in an area should foreclose a property owner's right to just compensation under inverse condemnation for the damage, interest and attorney fees and should limit the property owner to traditional tort remedies. We therefore conclude that [SCE] may be liable for inverse condemnation and affirm the judgment.

(*Id.* at pp. 1404-1408.)

### 3) Distinguishing *Barham* and *Pacific Bell*

The language of *Barham* and *Pacific Bell* must be construed in light of the facts of each

15

RULING ON SUBMITTED MATTER
Case: 19-30088    Doc# 4775-2    Filed: 11/15/19    Entered: 11/15/19 15:59:34    Page 16 of 19

case because "an opinion's authority is no broader than its factual setting." (*San Diego Cnty. Employees Retirement Ass'n v. Cnty of San Diego* (2007) 151 Cal.App.4th 1163, 1183.) Cases do not stand for propositions never considered by the court. (*People v. Frazier* (2005) 128 Cal.App.4th 807, 825.)

But this court is bound by the holdings of *Barham* and *Pacific Bell* unless the facts here are "fairly distinguishable" from the facts before those Courts. (See, e.g., *People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1613.) PG&E has not shown the PUC's Decision renders this coordinated proceeding fairly distinguishable from the facts of *Barham* and *Pacific Bell* such that those cases are no longer binding on this court.

Although both decisions discuss the cost-spreading policy behind inverse condemnation, the court is not persuaded either decision rested on the assumption that the utility would automatically be able to pass on its losses as rate increases to its customers. For example, in *Barham* the Court discusses as a "principal focus" of cases interpreting inverse condemnation under article 1, section 19 of the California Constitution, the "concept of public use." (*Barham, supra,* 74 Cal.App.4th at 753.) Here, like in *Barham*, the plaintiffs' property was taken "for a public use, i.e., the transmission of electric power to the public." (*Id.* at p. 754.)

In *Pacific Bell,* the Court highlights the privately owned public utility's "monopolistic or quasi-monopolistic authority, deriving directly from its exclusive franchise provided by the state" as a factor influencing its decision to hold SCE liable for inverse condemnation. (*Pacific Bell, supra,* 208 Cal.App.4th at 1406-1407.) The *Pacific Bell* Court explained someone whose property is damaged by operation of a public utility "suffers a disproportionate share of the cost of the public improvement regardless of whether the utility is governmentally or privately owned." (*Id.* at p. 1408.)

These premises for finding a privately owned utility liable for inverse condemnation are

16

unaffected by the PUC's intervening Decision. Moreover, the *Pacific Bell* Court indicated in a footnote it did "not believe" a municipally owned utility's potential future inability "to spread the cost of public improvements" would "immunize" the utility from inverse condemnation. (*Pacific Bell, supra,* 208 Cal.App.4th at 1407, fn. 6.) Even if considered dicta, this statement suggests a utility's ability to pass on its losses as rate increases was not essential to the *Pac Bell* Court's decision. Merely characterizing the Court of Appeal's observation on this point as dicta does not mean its reasoning is wrong, unreasonable, or should not be considered. (*Sarguy v. Resolution Trust. Corp.* (1992) 8 Cal.App. 4th 1039, 1045-1046.)

### 4) PG&E's Constitutional Arguments

PG&E additionally argues if inverse condemnation continues to apply to a privately held public utility after the PUC's Decision, such liability would constitute an uncompensated taking in violation of the Fifth Amendment of the United States Constitution and Article I, Section 19 of the California Constitution or, in the alternative, would be arbitrary and irrational, and therefore violate PG&E's substantive due process rights under the California Constitution and the Fourteenth Amendment of the United States Constitution. (Mot. 2:18-23.)

These constitutional arguments should be made to the appellate courts. This court remains bound to follow *Barham* and *Pacific Bell*. To the extent PG&E raises public policy implications of the PUC's Decision, these arguments should be addressed to the Legislature or PUC.

### 5) PG&E's Request for Certification under Code of Civil Procedure section 166.1

In its reply brief, PG&E requests the court certify this order for appellate review under section 166.1 in the event its renewed motion is denied. PG&E's request is DENIED.

The parties represent that the question of whether privately owned utilities may be liable under the doctrine of inverse condemnation is also presently before trial courts in Los Angeles and San Francisco Counties, as well as the California Legislature. Given the PUC's recent

17

RULING ON SUBMITTED MATTER

Decision, there are certainly "substantial grounds for difference of opinion" on this question within the meaning of section 166.1. However, this court cannot represent that an interlocutory ruling from a third Court of Appeal "may materially advance the conclusion" of this litigation. (§ 166.1.)

## Conclusion

For these reasons, PG&E's Renewed Motion for a Legal Determination of Inverse Condemnation Liability is DENIED.

Plaintiffs' counsel shall prepare an order for the court's signature pursuant to California Rules of Court, rule 3.1312.

DATED: April 30, 2018

Judge Allen H. Sumner
Superior Court of California,
County of Sacramento