**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
    jminias@willkie.com
    dforman@willkie.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>    -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case,*<br>*No. 19-30088 (DM)* | Ch. 11 Bankr. Case No. 19-30088 (DM) (Jointly Admin.)<br><br>**JOINDER IN THE RESPONSE BRIEF OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS CONCERNING THE APPLICABILITY OF INVERSE CONDEMNATION**<br><br>Date:  November 19, 2019<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>    Courtroom 17, 16th Floor<br>    San Francisco, CA 94102 |

The Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**"), by and through their undersigned counsel, submit this Joinder (the "**Joinder**") in support of the *Response Brief of the Official Committee of Tort Claimants Concerning the Applicability of Inverse Condemnation* [Dkt. No. 4773] (the "**TCC Opposition**"), filed in opposition to the *Joint Brief of Debtors and the Official Committee of Unsecured Creditors and Supplemental Statement of the PG&E Shareholders Concerning the Applicability of Inverse Condemnation* [Dkt. No. 4485] (the "**Joint Brief**").

PG&E seeks to summarily dispose of billions of dollars in claims arising from fires PG&E concededly started based on the contention that California's inverse condemnation doctrine should not apply to investor-owned utilities ("**IOUs**"). The short answer to PG&E's argument is that it is irreconcilable with decades of California precedent on inverse condemnation, and has been rejected by every California court to consider it. Two decisions of the California Court of Appeals have squarely held that inverse condemnation applies to IOUs. *Barham v. S. Cal. Edison Co.*, 74 Cal. App. 4th 744 (Cal. Ct. App. 1999); *Pac. Bell Tel. Co. v. S. Cal. Edison Co.*, 208 Cal. App. 4th 1400 (Cal. Ct. App. 2012). Three times in the last two years, including twice on the motion of PG&E, the California Supreme Court has declined to disturb those holdings. PG&E's arguments that this Court may reconsider that binding precedent are not well-taken. California law on the question whether inverse condemnation applies to IOUs is settled, and forecloses the relief PG&E seeks. The Ad Hoc Subrogation Group thus joins in the TCC Opposition.

The Ad Hoc Subrogation Group writes separately to highlight the procedural impropriety of the request for relief as presented in the Joint Brief. When the Court agreed to hear PG&E's inverse condemnation argument as an element of the claims estimation process, PG&E assured the Court that it would present the issue in the context of estimation and would not rely on disputed facts to support its arguments. Nevertheless, the Joint Brief ignores principles of estimation and is laden with contested factual matters that are largely designed to distract the Court from the insurmountable array of precedent dictating that PG&E's request for relief be denied. Although the Court may—and should—determine that those disputed facts are irrelevant and do not lead to a different result than

every California court to consider this issue, in this procedural posture, it may not credit PG&E's assertions of fact as a basis to grant the relief PG&E seeks.

PG&E asks this Court to do something unprecedented—estimate billions of dollars of inverse condemnation claims as worthless pursuant to 11 U.S.C. § 502(c), under the guise of disallowing them as a matter of law under 11 U.S.C. § 502(b). The whole premise of this briefing exercise, as PG&E presented it, was that it was supposed to occur in the "context of estimation" under 11 U.S.C. 502(c), based on an issue that could be decided as a matter of law without "any fact issues that will be in dispute or relevant." (Transcript of August 14, 2019 Hearing 11:3-16; Transcript of August 27, 2019 Hearing 92:8-10.) However, that is not what PG&E has done. Remarkably, the Joint Brief entirely fails to set out or discuss the standard of review under 11 U.S.C. § 502(c). Instead, invoking 11 U.S.C. § 502(b) (Joint Br. at 9), PG&E asks the Court to disallow all inverse condemnation claims based on numerous, contested facts, with no opportunity to adjudicate those contested facts, or any of the procedural requirements that come with a motion for disallowance under section 502(b). *See* 11 U.S.C. § 502(b) ("[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim[.]"); *see also Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530 (9th Cir. 1998) (noting that upon objection to a claim "the court *must hold a hearing*") (emphasis added). PG&E provides no authority that would permit such a ruling, and claims objections have never been the purpose of this briefing process.

The very premise of PG&E's argument is a contested fact—that PG&E faces an untenable "whipsaw" because it will be unable to "automatically" spread the costs of inverse condemnation liability through rate increases, even though inverse condemnation imposes strict liability, regardless of whether PG&E's conduct leading to that liability was negligent. (*See* Joint Br. at 2, 5.) PG&E grounds this argument in a decision by the California Public Utilities Commission ("**CPUC**") in another case involving a different IOU, San Diego Gas & Electric Company ("**SDG&E**"). (See Joint Br. at 5, citing Decision Denying Application of San Diego Gas & Electric Company, Public Utilities Commission of the State of California at 2, 11 (December 6, 2017).) PG&E then attaches and references hundreds of pages of exhibits, from which it draws numerous contested "facts" on which it

2

premises its theory of "whipsaw," including:

- "Until recently, private utilities assumed that if they incurred costs related to strict inverse condemnation liability, those costs could be recouped via rate increases, which would be approved by the CPUC," Joint Br. at 5;
- The North Bay Fires and Camp Fire were caused by "a confluence of unprecedented weather events," *id.* at 7;
- The CPUC's approach to inverse condemnation is "new," *id.* at 10;
- "[T]he application of inverse condemnation creates a considerable financial burden on PG&E by requiring the company to absorb inverse condemnation costs without any guarantee of recovery from its customers," *id.* at 18;
- The CPUC's refusal to consider inverse condemnation liability "has already caused PG&E to lose billions of dollars of market value," *id.* at 19; and
- "The uncertainty inherent in whether a private utility will be able to recover billions of dollars in inverse condemnation costs affects that company's ability to develop a sound business plan and raise the much-needed capital on which it depends" *id.* at 20.[1]

Each and every one of these assertions is contested. Most fundamentally, as thoroughly discussed in the TCC's brief (TCC Opp. at 23-27), the "whipsaw" PG&E bemoans does not exist. There has been no CPUC rate decision with respect to PG&E's liability for the fires at issue in these proceedings; the CPUC decision denying SDG&E's request for a rate increase was based on detailed findings of fact that SDG&E's conduct leading to the fires was not "reasonable and prudent," *i.e.* SDG&E was, in fact, negligent; and any potential, future CPUC decision not to grant PG&E's request for rate increases in connection with one or another fire does not mean that PG&E has no way to "socialize" those costs.

---

[1] The PG&E shareholders go even further in seeking disallowance of claims based on disputed facts, to the point of "highlight[ing]" what they characterize "market forces that are likely to factor heavily in the California Supreme Court's consideration of the issue," *id.* at 24, which amounts to pure speculation derived entirely from self-serving interpretations of financial news and commentary.

3

It is not surprising that the Joint Brief is a procedural bait and switch, because viewed from the perspective of section 502(c), it is inconceivable that the Court could conclude that the inverse condemnation claims have no value. In an estimation under 11 U.S.C. § 502(c), a bankruptcy court must value claims against the debtors "on the basis of what would have been a fair resolution of the claims in the absence of bankruptcy." *Owens Corning v. Credit Suisse First Boston*, 322 B.R. 719, 721-22 (D. Del. 2005). The estimation process "contemplates that the bankruptcy court will, in effect, put itself in the place of a nonbankruptcy court or jury to estimate whether a debtor is liable to the claimant[.]" *In re Keenan*, 201 B.R. 263, 266 (Bankr. S.D. Cal. 1996).

Had there been no bankruptcy, the inverse condemnation claims would have been litigated in California Superior Court. As the Joint Brief admits, the California Superior Court would have been "bound by the California Court of Appeals decisions in *Barham* and *Pacific Bell*" to determine that inverse condemnation applies to PG&E, allowing those claims to proceed to trial. (Joint Br. at 14-15.) In the context of estimation under section 502(c), a bankruptcy court may not disregard the precedent that concededly would have bound the trial courts outside of bankruptcy. This case is exactly the opposite of a case involving claims that have "no basis in law or fact and have been repeatedly rejected by every court in which they have been asserted." *See In re Granite Broad. Corp.*, 385 B.R. 41, 49 (S.D.N.Y. 2008) (estimating claims under section 502(c) at zero on that basis). The inverse condemnation claims asserted here are firmly grounded in two decades of California precedent and have been affirmed by every court in which they have been asserted.

Controlling California law dictates that inverse condemnation applies to PG&E. But in any event, the Debtors' request for relief, as presented in the Joint Brief, is inconsistent with the Debtors' representations that the Court could find as a matter of law that PG&E is not subject to inverse condemnation; is inconsistent with the fundamental approach to valuing a disputed claim under section 502(c) estimation; and improperly invites the Court to make factual determinations to support disallowance of billions of dollars of claims without any form of evidentiary process. The relief

requested in the Joint Brief should be denied.

Dated: November 15, 2019

**WILLKIE FARR & GALLAGHER LLP**

/s/ Benjamin P. McCallen
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
jminias@willkie.com
bmccallen@willkie.com
dforman@willkie.com

**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: (408) 971-6270
Facsimile: (408) 971-6271
Email: kdiemer@diemerwei.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*

5