REBECCA J. WINTHROP (CA Bar No. 116386)
ROBIN BALL (CA Bar No. 159698)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com
robin.ball@nortonrosefulbright.com

Attorneys for Creditors ADVENTIST HEALTH SYSTEM/WEST and FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19 - 30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**THE ADVENTIST CLAIMANTS' OBJECTION TO THE NOTICE OF DEBTORS' DESIGNATION OF CLAIMS FILED BY THE UNITED STATES OF AMERICA, THE STATE OF CALIFORNIA AND ADVENTIST HEALTH SYSTEM AS UNLIQUIDATED AND SUBJECT TO ESTIMATION UNDER SECTION 502(c) OF THE BANKRUPTCY CODE [DE # 4553]**<br><br>**Hearing Date and Time:**<br>Date: December 17, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA 94102 |

Creditors Adventist Health System/West, a California religious non-profit corporation ("Adventist Health"), and Feather River Hospital, a California religious non-profit corporation, d/b/a Adventist Health Feather River ("AHFR" and, collectively with Adventist Health, "Adventist"), hereby file this objection (the "Objection") to the Debtors' *Notice of Debtors' Designation of Claims Filed by the United States of America, the State of California and Adventist Health System as Unliquidated and Subject to Estimation Under Section 502(c) of the Bankruptcy Code* (the "Designation of Claims") [ECF No. 4553].

Dated: November 15, 2019

REBECCA J. WINTHROP
ROBIN BALL
NORTON ROSE FULBRIGHT US LLP

By: /s/ Rebecca J. Winthrop
REBECCA J. WINTHROP
Attorney for Creditors ADVENTIST HEALTH SYSTEM/WEST and FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LIQUIDATED CLAIMS SUBJECT TO ADVENTIST'S OBJECTION | 2 |
| | A. Costs to Clean Up, Secure, Repair, and Remediate Facilities (To Date) | 3 |
| | B. Loss of Inventory/Equipment/Contents of AHFR Locations | 4 |
| | C. System-Wide Charges That Cannot Be Avoided | 4 |
| | D. Operating Losses and Lost Profits Already Incurred | 4 |
| | E. Other Miscellaneous Damages | 5 |
| |     1. Professional Fees and Expenses | 5 |
| |     2. Miscellaneous Out-of-Pocket Expenses | 5 |
| |     3. Additional Employee Health Plan Costs | 5 |
| |     4. Assistance to Camp Fire Assistance Fund | 6 |
| |     5. Unemployment Insurance Claims | 6 |
| |     6. Impact on Insurance Premiums and Coverage | 6 |
| III. | ARGUMENT | 6 |
| | A. Applicable Legal Standards | 6 |
| | B. Adventist Objects to Debtors' Designation of Its Entire Claim as "Unliquidated" and Subject to Section 502(c) Estimation | 8 |
| IV. | CONCLUSION | 10 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Audre, Inc.*,
 202 B.R. 490 (Bankr. S.D. Cal. 1996) .................................................................................6

*Barcal v. Laughlin (In re Barcal)*,
 213 B.R. 1008 (8th Cir. BAP 1997) ....................................................................................7

*In re Enriquez*,
 315 B.R. 112 (Bankr. N.D. Cal. 2004) ................................................................................9

*FDIC v. Wenberg (In re Wenberg)*,
 94 B.R. 631 (9th Cir. BAP 1988), *aff'd,* 902 F.2d 768 (9th Cir. 1990) ........................7, 8, 9

*Fostvedt v. Dow (In re Fostvedt)*,
 823 F.2d 305 (9th Cir. 1987) ...............................................................................................6

*Loya v. Rapp (In re Loya)*,
 123 B.R. 338 (9th Cir. BAP 1991) ......................................................................................7

*Mazzeo v. United States (In re Mazzeo)*,
 131 F.3d 295 (2d Cir. 1997) ................................................................................................7

*In re Pearson*,
 773 F.2d 751 (6th Cir. 1985) ...............................................................................................8

*In re Ristic*,
 142 B.R. 856 (Bankr. E.D. Wisc. 1992) ..........................................................................8, 9

*Scovis v. Henrichsen (In re Scovis)*,
 249 F.3d 975 (9th Cir. 2001) ...............................................................................................8

*Slack v. Wilshire Ins. Co. (In re Slack)*,
 187 F.3d 1070 (9th Cir. 1999) .....................................................................................6, 7, 8

*In re Smith*,
 325 B.R. 498 (Bankr. D.N.H. 2005) ....................................................................................8

**Rules and Statutes**

11 U.S.C. § 502(c) ........................................................................................................1, 6, 8, 10

11 U.S.C. § 109(e) ....................................................................................................................8, 9

**Cases**

*In re Audre, Inc.*,
 202 B.R. 490 (Bankr. S.D. Cal. 1996) .................................................................................6

*Barcal v. Laughlin (In re Barcal)*,
 213 B.R. 1008 (8th Cir. BAP 1997) ....................................................................................7

*In re Enriquez*,
 315 B.R. 112 (Bankr. N.D. Cal. 2004) ................................................................................9

*FDIC v. Wenberg (In re Wenberg)*,
 94 B.R. 631 (9th Cir. BAP 1988), *aff'd,* 902 F.2d 768 (9th Cir. 1990) ........................7, 8, 9

*Fostvedt v. Dow (In re Fostvedt)*,
 823 F.2d 305 (9th Cir. 1987) ...............................................................................................6

*Loya v. Rapp (In re Loya)*,
 123 B.R. 338 (9th Cir. BAP 1991) ......................................................................................7

*Mazzeo v. United States (In re Mazzeo)*,
 131 F.3d 295 (2d Cir. 1997) ................................................................................................7

*In re Pearson*,
 773 F.2d 751 (6th Cir. 1985) ...............................................................................................8

*In re Ristic*,
 142 B.R. 856 (Bankr. E.D. Wisc. 1992) ..........................................................................8, 9

*Scovis v. Henrichsen (In re Scovis)*,
 249 F.3d 975 (9th Cir. 2001) ...............................................................................................8

*Slack v. Wilshire Ins. Co. (In re Slack)*,
 187 F.3d 1070 (9th Cir. 1999) .....................................................................................6, 7, 8

*In re Smith*,
 325 B.R. 498 (Bankr. D.N.H. 2005) ....................................................................................8

**Rules and Statutes**

11 U.S.C. § 502(c) ........................................................................................................1, 6, 8, 10

11 U.S.C. § 109(e) ....................................................................................................................8, 9

# I. INTRODUCTION

Adventist Health is a faith-based, nonprofit integrated health system headquartered in Roseville, California. AHFR is part of the Adventist Health hospital system. Prior to the Camp Fire, AFHR had extensive operations in Paradise, California, including its Feather River Hospital, which was a 100-bed acute care, community hospital in Paradise, California. The hospital was then the largest employer in Paradise, with in excess of 1200 employees. The Camp Fire devastated the main campus of that hospital, rendering it incapable of operation since then, and also severely damaged several other AFHR facilities in Paradise.

Last month, Adventist went to great effort to submit a detailed Proof of Claim in these bankruptcy cases that itemized losses from the Camp Fire totaling well over half a billion dollars. In response, Debtors' Designation of Claims takes a one-size-fits-all approach, asserting that ***every penny*** of Adventists' claim is unliquidated and subject to estimation under Section 502(c). This approach cannot be squared with either the law of this Circuit or Adventist's detailed Proof of Claim.

As set forth below, Adventist objects to any attempt by Debtors to designate certain losses or expenses that Adventist has already incurred (which total $142,888,153) as unliquidated. Adventist tallied each component of that amount down to the dollar, mindful of this Court's direction that "[w]hen a claimant state's what it's owed, that is the liquidation of the claim," and "if [the claimant's] got a claim down to the penny, it can be disputed, but it's liquidated." Aug. 27, 2019 Hearing Tr. at 118:16-17, 127:7-9 (ECF No. 13-5) (the "Aug. 27 Tr.").

Adventist does not object to the lion's share of its claim—projected future losses and expenses, including hundreds of millions of dollars for future rebuilding of facilities damaged or destroyed by the Camp Fire and projected future lost profits and operating losses—being subject to estimation under Section 502(c) of the Bankruptcy Code.[1] But the $142,888,153 in out-of-pocket expenses and other losses identified in Table 1 on page 3 below (the "Liquidated Amount") –

---
[1] Adventist also does not object to the inclusion of its claim for punitive damages in the estimation proceeding. While Adventist does not object to the inclusion of certain portions of its Proof of Claim (other than the Liquidated Amount) in the estimation proceedings pursuant to Section 502(c), it otherwise reserves all rights with respect to those portions of its Proof of Claim, including with respect to their treatment in the estimation proceedings and with respect to the allowance or disallowance of any portion thereof.

expenses and losses that Adventist had *already* incurred when it filed its claim – should not be subject to estimation as part of the proceedings now before Judge Donato.

These incurred expenses are not the sort of non-economic damages that typically are suffered by an individual wildfire tort claimant (e.g., pain and suffering and emotional distress) and then liquidated by a factfinder after a trial. To the contrary, the Liquidated Amount consists entirely of out-of-pocket expenses (e.g., facility remediation and repair costs, professional fees, employee health plan costs, unemployment insurance claims), historical (already incurred) lost profits and operating losses, and losses of equipment and supplies damaged or destroyed by the fire. All of these categories of expenses/losses meet the Ninth Circuit's definition of "liquidated" because they are, as this Court explained, "readily ascertainable as a sum certain" (Aug. 27 Tr. at 118:7-8), including from Adventist's records (e.g., invoices and expense records, financial statements), and can be fixed without an overly complex hearing (or any hearing). Indeed, Adventist has calculated those expenses "down to the penny" and "state[d] what it's owed." Aug. 27 Tr. at 118:16-17, 126:20-22. For these reasons the Liquidated Amount should not be included in Judge Donato's estimation proceeding.

## II. LIQUIDATED CLAIMS SUBJECT TO ADVENTIST'S OBJECTION

On October 18, 2019, Adventist filed identical proofs of Claim against each of Debtors PG&E Corporation and Pacific Gas and Electric Company, which have been assigned Claim Nos. 59459 (against PG&E Corporation) and 59996 (against Pacific Gas and Electric Company), respectively (together, the "Proof of Claim"). A copy of Claim No. 59459 is attached hereto as Exhibit 1 for the Court's convenience and reference. The Proof of Claim asserts a claim against Debtors for $1,012,061,204 that includes a total of $506,030,602 in itemized damages, an equal amount of punitive damages, and a few additional categories of damages in amounts to be determined. The Proof of Claim sets forth an itemized table of damages in Addendum "B" thereto. *See* Ex. 1 at Addendum B.

Adventist objects to Debtors' Designation of Claims to the extent that it purports to treat as "unliquidated" $142,888,153 in claims (the "Liquidated Amount"), a subset of the damages Adventist has asserted. In Table 1 below, Adventist excerpts from Addendum "B" to the Proof of

Claim those loss/expense categories that are liquidated and thus do not belong in any estimation proceeding:

**TABLE 1**

| Liquidated Loss/Expense Category | Amount |
|---|---|
| Costs to Clean-Up, Secure, Repair and Remediate Facilities After Fire (To Date): | |
| • Clean-up, immediate repairs and securing sites | $ 3,198,557 |
| • Construction and further repairs completed to date | $ 3,449,136 |
| Loss of Inventory/Equipment/Contents of AHFR Locations | $ 14,433,149 |
| Operating Losses and Lost Profits Already Incurred: | |
| • Loss of surplus (profit) (11/8/18 to 10/31/19) | $ 16,223,272 |
| • Operating losses (11/8/18 to 10/31/19) | $ 39,868,262 |
| System-Wide Charges That Cannot Be Avoided (11/8/18 to 10/31/19) | $ 25,463,291 |
| Other Miscellaneous Damages: | |
| • Professional fees and expenses as of October 16, 2019 (attorneys, consultants and other professionals) | $ 1,210,412 |
| • Miscellaneous Out-of-Pocket Expenses | $ 337,239 |
| • Additional employee health plan costs (11/8/18 to 10/31/19) | $ 824,453 |
| • Assistance to Camp Fire Assistance Fund (for employees) | $ 500,000 |
| • Unemployment insurance claims (2/6/19 to 9/16/19) | $ 1,215,722 |
| • Impact on insurance premiums and coverage on policy from 10/1/19 to 9/30/20 | $ 36,164,660 |
| **Total** | **$142,888,153** |

As further described below and in Adventist's Proof of Claim, each category of expenses/losses set forth in Table 1 is a historical (already incurred) expense or loss that has been quantified by Adventist down to the dollar:

**A.** *Costs to Clean Up, Secure, Repair, and Remediate Facilities (To Date)*

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist incurred expenses totaling $6,647,693 ($3,198,557 + $3,449,136) for labor and materials for remediation and repair activities at the main campus of AHFR's Feather River Hospital (the "Main Hospital Campus") and other facilities maintained by Adventist in the town of Paradise. As further described in the Proof of Claim, such activities included temporary repairs to mitigate further damage (e.g., roof patches, septic system patches, and segregating the seriously damaged upper hospital from the essentially destroyed lower hospital), smoke remediation, debris removal, disposing of medical

biohazards (e.g., medications, sharp containers) and perishables, erosion control, supplying compressed gas for generators and potable drinking water, and installing and monitoring fencing and a security station. *See* Ex. 1 at Addendum "A," pp. 4-5, and Addendum "B."

This loss/expense category does not include any of at least $110,622,586 in losses/expenses to Adventist for future repair, rebuilding, or replacement of facilities damaged or destroyed by the Camp Fire. *See* Ex. 1 at Addendum "B."

### B. *Loss of Inventory/Equipment/Contents of AHFR Locations*

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist incurred expenses/losses totaling $14,433,149 for the loss of medical equipment, medical supplies, furniture, office equipment, and maintenance equipment and supplies that were destroyed or damaged within the Main Hospital Campus or other facilities maintained by Adventist in the town of Paradise. *See* Ex. 1 at Addendum "A," pp. 4-5, and Addendum "B."

### C. *System-Wide Charges That Cannot Be Avoided*

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist Health incurred expenses/losses totaling $25,463,291 for existing system-wide obligations (e.g., pursuant to existing contracts for the system-wide billing and claims services) that, but for the Camp Fire, would have been reimbursed by AHFR. *See* Ex. 1 at Addendum "A," p. 3, and Addendum "B."

This expense/loss category does not include any of the at least $99,386,397 in future losses for system-wide obligations that will remain unreimbursed by AHFR and thus will be suffered by Adventist Health as a result of the Camp Fire. *See* Ex. 1 at Addendum "B."

### D. *Operating Losses and Lost Profits Already Incurred*

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist incurred expenses/losses totaling $56,091,534 from the loss of their business operations at the Main Hospital Campus and each of AHFR's other locations. *See* Ex. 1 at Addendum "A," p. 3, and Addendum "B." Those expenses/losses are comprised of already incurred operating losses ($39,868,262) and lost profits ($16,223,272). *Id*.

This loss/expense category does not include any of the at least $132,033,173 in future operating losses and future loss of profits that Adventist will suffer as a result of the Camp Fire.

DOCUMENT PREPARED
ON RECYCLED PAPER

*See* Ex. 1 at Addendum "B."

### E. *Other Miscellaneous Damages*

This loss/expense category includes a total of $40,252,486 in expenses/losses incurred by Adventist, and comprises the following:

#### 1. **Professional Fees and Expenses**

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist incurred expenses/losses totaling $1,210,412 for fees and expenses for professional services, principally counsel (including health care regulatory counsel), as well as other professionals such as consulting engineers, necessitated by the Camp Fire. *See* Ex. 1 at Addendum "A," p. 6, and Addendum "B."

#### 2. **Miscellaneous Out-of-Pocket Expenses**

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist incurred expenses/losses totaling $337,239 for different types of miscellaneous out-of-pocket expenses necessitated by the Camp Fire, including additional labor (such as temporary workers staffing a call center handling fire-related calls, e.g., about patients who had to be relocated or whose care had been disrupted) and storage costs (storing equipment and supplies that could no longer be maintained or stored in facilities damaged or destroyed by the fire). *See* Ex. 1 at Addendum "A," p. 6, and Addendum "B."

#### 3. **Additional Employee Health Plan Costs**

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist, which self-insures a health plan for employees, incurred expenses/losses totaling $824,453 in additional costs when the cessation of health care services at Feather River Hospital and its related facilities forced its employees to go to other facilities for health care services that Adventist then had to pay for. *See* Ex. 1 at Addendum "A," p. 6, and Addendum "B."

This loss/expense category does not include any of the at least $936,493 in projected expenses/losses that Adventist may incur to cover additional employee health plan costs in the future. *See* Ex. 1 at Addendum "B."

#### 4. **Assistance to Camp Fire Assistance Fund**

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist incurred

DOCUMENT PREPARED ON RECYCLED PAPER

expenses/losses totaling $500,000 for payments to the Camp Fire Assistance Fund, through which Adventist subsidized certain essential housing, transportation, or other expenses for employees whose homes or vehicles were damaged or destroyed by the Camp Fire. *See* Ex. 1 at Addendum "B."

### 5. Unemployment Insurance Claims

From the date of the Camp Fire through the filing of its Proof of Claim, Adventist, which is self-insured for unemployment benefits, incurred expenses/losses totaling $1,215,722 for payments on unemployment insurance claims submitted by former employees as a result of the Camp Fire. *See* Ex. 1 at Addendum "A," p. 6, and Addendum "B."

This loss/expense category does not include any expenses/losses to Adventist from the $1,579,826 of Adventist's remaining unemployment insurance liability on such claims. *See* Ex. 1 at Addendum "B."

### 6. Impact on Insurance Premiums and Coverage

Prior to filing its Proof of Claim, Adventist incurred expenses/losses totaling $36,164,660 when it renewed its liability insurance policy for the period from October 1, 2019 to September 30, 2020, as a direct result of the losses it suffered from the Camp Fire. This amount consists of a $1,164,660 premium increase from the prior year for a policy providing less coverage, and the $35,000,000 in additional premiums that it would have cost Adventist to purchase the same coverage as it had before the fire. *See* Ex. 1 at Addendum "A," p. 6, and Addendum "B."

## III. ARGUMENT

### A. *Applicable Legal Standards*

Adventist's claims may be subjected to an estimation proceeding only to the extent that they are "unliquidated." *See* 11 U.S.C. § 502(c). The Ninth Circuit has held that "whether a debt is liquidated 'turns on whether it is subject to ready determination and precision in computation of the amount due." *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1073 (9th Cir. 1999) (quoting *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1987)); *see also In re Audre, Inc.*, 202 B.R. 490, 492 (Bankr. S.D. Cal. 1996) (applying same definition of "liquidated" to section 502(c) analysis); Aug. 27 Tr. at 118:7-8 (The Court: "The Ninth Circuit has told us what

[liquidated] means. It's a sum readily ascertainable as a sum certain."). "The definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." *In re Slack*, 187 F.3d at 1073-74 (quoting *FDIC v. Wenberg (In re Wenberg)*, 94 B.R. 631, 634 (9th Cir. BAP 1988), *aff'd,* 902 F.2d 768 (9th Cir. 1990)). Although "[i]t is not entirely clear where the line must be drawn between a simple hearing and a complex one," *Loya v. Rapp (In re Loya)*, 123 B.R. 338, 341 (9th Cir. BAP 1991), the need to hear live testimony does not itself render a hearing "overly extensive," or a claim otherwise capable of "ready determination" unliquidated. *See In re Wenberg*, 94 B.R. at 635 (accounting fees and legal fees still "subject to ready determination" even though fixing claim required live testimony).

That Adventist's claims sound in tort does not mean that they are unliquidated: "[W]hether a debt is liquidated or not . . . does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation." *In re Loya*, 123 B.R. at 340. Nor does the mere fact that the Debtors may dispute their liability preclude Adventist's claims from being liquidated. Rather, "if [Adventist's] got a claim down to the penny, it can be disputed, but it's liquidated." *See* Aug. 27 Tr. at 118:16-17; *see also In re Slack*, 187 F.3d at 1075 ("[A] debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided."); *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 305 (2d Cir. 1997) ("[T]he concept of a liquidated debt relates to the amount of liability, not the existence of liability.") (quotation marks omitted); *Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1013 (8th Cir. BAP 1997) ("Bankruptcy courts have consistently held that a debt which is 'readily calculable,' or 'readily determinable' is a liquidated debt, regardless of whether the debtor disputes the obligation.").

Whether Adventist's claims are "liquidated" is "an issue involving interpretation of the Bankruptcy Code and is therefore a question of law." *See In re Wenberg*, 94 B.R. at 633; *see also* Aug. 27 Tr. at 127:7-9 (The Court: "[T]hat determination of what should be included or excluded from the estimation in that category, . . . that's a legal issue."). The Court should rely on Adventist's

Proof of Claim for purposes of that determination.  *See Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001) ("[T]he rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith.").  This approach "is similar in nature to the subject matter jurisdiction context for purposes of determining diversity jurisdiction," *id.* (citing *In re Pearson*, 773 F.2d 751, 756-57 (6th Cir. 1985)), where "the amount [in controversy] claimed in good faith by the plaintiff controls unless it appears to a legal certainty that the claim is for less than the jurisdictional amount or the amount claimed is merely colorable." *In re Pearson*, 773 F.2d at 757.  Or, as this Court aptly put it, "[w]hen a claimant states what it's owed, that is the liquidation of the claim."  Aug. 27 Tr. at 126:21-22.

**B.** *Adventist Objects to Debtors' Designation of Its Entire Claim as "Unliquidated" and Subject to Section 502(c) Estimation*

Adventist objects to Debtors' Designation of Claims to the extent it designates as "unliquidated" the Liquidated Amount (the $142,888,153 in expenses/losses listed in Table 1, at p. 4, *supra*).

The majority of the Liquidated Amount loss/expense categories that are the subject of Claimant's objection—including facility remediation and repair costs, system-wide charges, fees for attorneys and other professionals, employee health plan costs, unemployment insurance claims, insurance premium increases, employee transportation and housing expenses via the Camp Fire Assistance Fund, and other miscellaneous expenses—are all in the nature of historical, out-of-pocket expenses <u>already incurred</u> by Adventist as a result of the Camp Fire.  Such expenses are quintessential examples of claims "subject to ready determination and precision in computation of the amount due," *In re Slack*, 187 F.3d at 1073, because their amount can be computed by simple arithmetic from invoices and expense records.  *See In re Wenberg*, 94 B.R. at 635 (accounting fees and legal fees "subject to ready determination"); *In re Smith*, 325 B.R. 498, 504-05 & n.6 (Bankr. D.N.H. 2005) ("actual costs" for hazardous waste clean-up "will, of necessity, be a liquidated claim because it can be readily determined with precision through simple arithmetic computation" of invoices for contractors, consultants, law firms, and labor and administrative costs); *In re Ristic*,

142 B.R. 856, 862 (Bankr. E.D. Wisc. 1992) (insurance carrier's claim against arsonist was liquidated in the amount already paid to the insured for fire damage). Indeed, that is exactly what Adventist has done in its Proof of Claim to precisely determine the total amounts of each of those loss/expense categories in line with this Court's guidance that "if he's got a claim down to a penny, it can be disputed, but it's liquidated." *See* Aug. 27 Tr. at 118:16-17.

Even assuming the possibility that certain invoices or expense records might hypothetically fall short of being self-explanatory, no overly extensive evidentiary hearing will be needed to quantify them. The Ninth Circuit Bankruptcy Appellate Panel addressed precisely this scenario in *In re Wenberg*, where it considered the section 109(e) eligibility of out-of-pocket accounting and attorney's fees recorded in "billing statements [that] lumped together fees . . . which did not involve the underlying adversary proceeding and were thus outside the scope of the award of attorneys' fees and costs." 94 B.R. at 635. That witness testimony may have been required to clarify the size of the out-of-pocket expense claim was no obstacle to the Bankruptcy Appellate Panel (and subsequently, the Ninth Circuit) affirming the bankruptcy court's conclusion that "the claim for fees was subject to ready determination" and thus liquidated. *See id*. That ruling should be dispositive here.

The other loss/expense categories that constitute the Liquidated Amount also are liquidated because they likewise are subject to ready determination including by reference to Adventist's own records, and do not inevitably require an overly extensive evidentiary hearing. Adventist's claims for its operating losses and lost profits, for example, can be readily ascertained by comparison of Adventist's pre- and post-Camp Fire financial statements. Adventist's claim for its loss of equipment and supplies that were destroyed or damaged in the Camp Fire can in turn be ascertained from invoice, expense, and other records evidencing their replacement cost. And as this District previously held, in light of the availability of appraisal, "determining the value" of "used equipment" does not require "an extensive and contested evidentiary hearing in which substantial evidence may be necessary." *In re Enriquez*, 315 B.R. 112, 122 (Bankr. N.D. Cal. 2004).

For all of these loss/expense categories, Adventist followed this Court's instructions to "state[] what it's owed" down to the dollar, and "that is the liquidation of the claim." *See* Aug. 27

Tr. at 126:21-22. Accordingly, none of the $142,888,153 in expenses/losses listed in Table 1 should be subject to any further estimation before Judge Donato pursuant to section 502(c).

## IV. CONCLUSION

For the foregoing reasons, Adventist objects to the Debtors' designation of the entirety of Adventist's Proof of Claim as "unliquidated" and requests that this Court (a) hold that Adventist's Proof of Claim is "liquidated" to the extent set forth in Table 1 herein and thus the components of Adventist's Proof of Claim constituting the Liquidated Amount may not be subject to estimation under section 502(c), and (b) grant such other and further relief as the Court deems just and proper.

Dated: November 15, 2019

REBECCA J. WINTHROP
ROBIN BALL
NORTON ROSE FULBRIGHT US LLP

By: */s/ Rebecca J. Winthrop*
REBECCA J. WINTHROP
Attorney for Creditors ADVENTIST HEALTH SYSTEM/WEST and FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER