WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

**In re:**

**PG&E CORPORATION,**

- and -

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**DEBTORS' BRIEF IN OPPOSITION TO CONSOLIDATED OPENING BRIEF OF UNSECURED CREDITORS AND OTHER CREDITOR GROUPS AND REPRESENTATIVES REGARDING THE APPROPRIATE POSTPETITION INTEREST RATE PAYABLE ON UNSECURED CLAIMS IN A SOLVENT DEBTOR CASE; JOINDER OF PG&E SHAREHOLDERS**

Date:   December 11, 2019
Time:   10:00 a.m. Pacific Time
Place:  United States Bankruptcy Court
        Courtroom 17, 16th Floor
        San Francisco, CA 94102

**Opposition Deadline**: November 22, 2019

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# **<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION ............................................................................................1

II.  UNDER *CARDELUCCI*, POSTPETITION INTEREST ON UNSECURED CLAIMS
AGAINST A SOLVENT CHAPTER 11 DEBTOR IS PAYABLE AT THE
FEDERAL JUDGMENT RATE.............................................................................3

III.  THE UNSECURED CREDITORS' EFFORTS TO AVOID THE FEDERAL
JUDGMENT RATE FAIL...................................................................................5

    A.  Section 1124 Of The Bankruptcy Code Does Not Provide For Postpetition
Interest At A Rate Other Than The Federal Judgment Rate....................................6

    B.  Section 1129 Of The Bankruptcy Code Does Not Provide For Postpetition
Interest At A Rate Other Than The Federal Judgment Rate....................................9

IV.  THERE IS NO PRESUMPTION THAT UNSECURED CREDITORS ARE
ENTITLED TO CONTRACTUAL OR STATE LAW RATES OF POSTPETITION
INTEREST......................................................................................................10

V.  THE UNSECURED CREDITORS' REMAINING ARGUMENTS ARE WITHOUT
MERIT ..........................................................................................................12

    A.  Equitable Considerations Do Not Support Postpetition Interest At Contract Or
State Law Rates....................................................................................................12

    B.  The Legislative History Of The 1994 Amendment To Section 1124 Of The
Bankruptcy Code Does Not Support Postpetition Interest At A Rate Other
Than The Federal Judgment Rate .........................................................................13

VI.  CONCLUSION..............................................................................................16

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

**Cases**                                                                                                                    **Page(s)**

*Acequia, Inc. v. Clinton (In re Acequia, Inc.),*
    787 F.2d 1352 (9th Cir. 1986) ...............................................................................8, 10,

*In re Art & Architecture Books of the 21st Century,*
    No. 13-BK-14135-RK, 2016 WL 1118743 (Bankr. C.D. Cal. Mar. 18, 2016) ..............................8

*In re Cardelucci,*
    285 F.3d 1231 (9th Cir. 2002) ................................................................................. *passim*

*City of New York v. Saper,*
    336 U.S. 328 (1949)...............................................................................................11

*Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp),*
    752 F.2d 1334 (9th Cir. 1984) ................................................................................11

*Consolidated Rock Products Co. v. Du Bois,*
    312 U.S. 510 (1941).............................................................................................9, 11

*Debentureholders Protective Committee of Continental Inv. Corp. v. Continental Inv. Corp.,*
    679 F.2d 264 (1st Cir. 1982) .................................................................................5, 11

*In re Dow Corning Corp.,*
    456 F.3d 668 (6th Cir. 2006) ................................................................................11

*In re Energy Future Holdings,*
    540 B.R. 109 (Bankr. D. Del. 2015) ....................................................................5, 13, 14

*In re Epicenter Partners, L.L.C.,*
    No. 16-BK-05493, 2018 WL 1354330 (B.A.P. 9th Cir. Mar. 15, 2018).......................................11

*In re Exxon Valdez,*
    484 F.3d 1098 (9th Cir. 2007) ..................................................................................9

*Gen. Elec. Capital Corp. v. Future Media Prods.,*
    547 F.3d 956 (9th Cir. 2008) ..................................................................................10

*Gencarelli v. UPS Capital Business Credit,*
    501 F.3d 1 (1st Cir. 2007)........................................................................................1

*In re Great Bay Hotel & Casino, Inc.,*
    251 B.R. 213 (Bankr. D.N.J. 2000) .........................................................................14

*In re Hamilton,*
    584 B.R. 310 (B.A.P. 9th Cir. 2018).........................................................................9

*In re Introgen Therapeutics, Inc.,*
    429 B.R. 570 (Bankr. W.D. Texas 2011) ...................................................................14

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

*In re L & J Anaheim Assocs.*,
    995 F.2d 940 (9th Cir. 1993) ..................................................................................7, 8

*Law v. Siegel*,
    571 U.S. 415 (2014) ...............................................................................................13

*Matter of Laymon*,
    958 F.2d 72 (5th Cir. 1992) ....................................................................................11

*In re Manchester Gas Storage, Inc.*,
    309 B.R. 354 (Bankr. N.D. Okla. 2004) ...........................................................12, 13

*In re New Valley Corp.*,
    168 B.R. 73 (Bankr. D.N.J. 1994) ..........................................................................15

*In re PPI Enters.(US), Inc.*,
    324 F.3d 197 (3d Cir. 2003).............................................................................. *passim*

*Pacifica L 51 LLC v. New Invs., Inc. (In re New Investments, Inc.*)
    840 F.3d 1137 (9th Cir. 2016) ..................................................................................6

*In re Rexford Properties LLC*,
    558 B.R. 352 (Bankr. C.D. Cal. 2016) ......................................................................8

*In re Robinson*,
    567 B.R. 644 (Bankr. N.D. Ga. 2017) .......................................................................8

*Ruskin v. Griffiths*,
    269 F.2d 827 (2d Cir. 1959).....................................................................................11

*In re Shoen*,
    No. 97-17369, 1997 WL 1403808 (B.A.P. 9th Cir. 1997), *aff'd* 176 F.3d 1150
    (9th Cir. 1999)............................................................................................................9

*In re Sylmar Plaza, L.P.*,
    314 F.3d 1070 (9th Cir. 2002) ...............................................................................4, 5

*Matter of Terry Ltd. P'ship*,
    27 F.3d 241 (7th Cir. 1994) ....................................................................................11

*Travelers Cas. & Sur. Co. of Am. V. Pac. Gas & Elec. Co.*,
    549 U.S. 443 (2007)...................................................................................................2

*U.S. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988)..................................................................................................11

*In re Ultra Petroleum*,
    913 F.3d 533 (5th Cir. 2019) ...............................................................................8, 14

**Statutes**

11 U.S.C. § 502.................................................................................................... *passim*

11 U.S.C. § 506(b)..................................................................................................... 10-11

11 U.S.C. § 726.................................................................................................... *passim*

11 U.S.C. § 1123(d)..................................................................................................7, 10

11 U.S.C. § 1124.................................................................................................... *passim*

11 U.S.C. § 1129(b).................................................................................................... *passim*

**Other Authorities**

H.R. Rep. No. 103-835 (1994)..............................................................................15

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# I. INTRODUCTION[1]

The Ninth Circuit in *In re Cardelucci* squarely addressed the question before the Court: what rate of postpetition interest is payable to an unsecured creditor in a solvent-debtor chapter 11 case? The unequivocal and unqualified answer, which is binding here, was: "[w]here a debtor in bankruptcy is solvent, an unsecured creditor is entitled to 'payment of interest at the legal rate from the date of the filing of the petition' prior to any distribution of remaining assets to the debtor." 285 F.3d 1231, 1234 (9th Cir. 2002). The Ninth Circuit further held—and the Official Committee of Unsecured Creditors and other creditor groups and representatives (the **"Unsecured Creditors"**)[2] all agree—that the "legal rate" means the Federal Judgment Rate. *Id.* at 1233; Creditors' Br. ¶ 30, ECF No. 4634.

Under *Cardelucci*, the Federal Judgment Rate is payable on an allowed unsecured claim against a solvent chapter 11 debtor regardless of whether the claim is impaired or unimpaired. *Cardelucci* states its holding in the broadest possible terms, making no distinction between unimpaired and impaired claims. In arguing to the contrary, the Unsecured Creditors seek to limit *Cardelucci*'s reach by hypothesizing limitations and rationales found nowhere in the decision itself. Those efforts fail, as they must, given *Cardelucci*'s direct and unambiguous holding, and the Unsecured Creditors offer no plausible grounds for this Court to take the extraordinary step of rejecting that binding and controlling precedent.

Further, the Unsecured Creditors' futile effort to evade *Cardelucci* and the Federal Judgment Rate is founded on an unsupportable premise. They argue that their claims will be impaired unless they are paid every dollar they might have received outside of bankruptcy. But it is black letter law that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive

---

[1] The PG&E Shareholders join this brief. The PG&E Shareholders are the entities identified on Exhibit A to the *Fourth Amended Verified Statement Of Jones Day Pursuant To Federal Rule Of Bankruptcy Procedure 2019*, ECF 4366. The PG&E Shareholders are acting in their individual capacities but authorized the filing of this single submission for the purpose of administrative efficiency. Each of the PG&E Shareholders is expressing its independent views, and counsel does not have the actual or apparent authority to obligate any one entity to act in concert with any other entity with respect to PG&E equity securities. The PG&E Shareholders have not agreed to act in concert with respect to their respective interests in PG&E equity securities.

[2] All capitalized terms not otherwise defined in this brief shall have the meaning set forth in *Debtors' Brief Regarding Applicable Rate of Postpetition Interest on Allowed Unsecured Claims and Joinder of PG&E Shareholders*, ECF No. 4624.

law creating the debtor's obligation, *subject to any qualifying or contrary provisions of the Bankruptcy Code*." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007) (quoting *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000) (emphasis added); *see also In re PPI Enters.(US), Inc.*, 324 F.3d 197, 204 (3d Cir. 2003). Thus, "a creditor's claim outside of bankruptcy is not the relevant barometer for impairment; we must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights." *PPI*, 324 F.3d at 204.

In asserting that they are impaired because the Debtors' Plan does not pay postpetition interest at contractual or state law rates, the Unsecured Creditors put the cart before the horse. They assume an entitlement to those rates and then claim impairment because the Plan does not provide satisfaction of what they say they are owed. But there is no right to contractual or state law rates of postpetition interest in solvent-debtor chapter 11 cases in the Ninth Circuit. The Debtors' Plan recognizes all of the rights the Unsecured Creditors do have by providing for payment in full—of all principal *plus all* postpetition interest at the Federal Judgment Rate, as required by *Cardelucci*.

There is no impairment where, as here, it is the Bankruptcy Code—and not the Debtors' Plan—that modifies alleged non-bankruptcy entitlements. The Unsecured Creditors' claims for postpetition interest are disallowed under section 502(b)(2) of the Bankruptcy Code. As a consequence, they have no right under the Bankruptcy Code to include such interest *as part of* their allowed claims. If, like most debtors in chapter 11 cases, the Debtors were insolvent, that would be the end of the story. Here, however, because of the presumed solvency of the Debtors and pursuant to *Cardelucci*, the Unsecured Creditors have the right to postpetition interest *on* their allowed claims solely at the Federal Judgment Rate, and nothing more.

Finally, *Cardelucci* also forecloses the assertion that the Unsecured Creditors somehow are entitled to a higher rate of postpetition interest on account of nebulous equitable considerations. *Cardelucci* unequivocally held that equitable considerations *require* an across-the-board application of the Federal Judgment Rate for postpetition interest on allowed unsecured claims in solvent-debtor chapter 11 cases. The Ninth Circuit left no room for a case-by-case exercise of discretion like that now urged by the Unsecured Creditors.

## II. UNDER *CARDELUCCI*, POSTPETITION INTEREST ON UNSECURED CLAIMS AGAINST A SOLVENT CHAPTER 11 DEBTOR IS PAYABLE AT THE FEDERAL JUDGMENT RATE

The Ninth Circuit's holding in *Cardelucci* is unequivocal and dispositive here. In a solvent-debtor case, an unsecured creditor is entitled to "payment of interest at the legal rate from the date of the filing of the petition." *Cardelucci*, 285 F.3d at 1234 (quoting 11 U.S.C. § 726(a)(5)). The "legal rate" means interest at the Federal Judgment Rate. *Id*. at 1233.

The Unsecured Creditors ask the Court to disregard this binding precedent. Surprisingly, given the drastic nature of that request, and despite the fact that *Cardelucci* has been front and center in discussions with the Court related to postpetition interest, the Unsecured Creditors relegate *Cardelucci* to an after-thought and then give it short shrift. *See* Creditors' Br. ¶¶ 30-32. Ultimately, the Unsecured Creditors contend that the Court should disregard *Cardelucci* because, they assert, (1) the case is limited to the meaning of the "legal rate" in section 726(a)(5); and (2) section 726(a)(5) only applies to impaired claims and not to unimpaired claims like those at issue in this case. Creditors' Br. ¶ 30.

*Cardelucci* cannot be read so narrowly. Without question, the Ninth Circuit looked to section 726 in determining that postpetition interest at "the legal rate" was required in a solvent debtor chapter 11 case. But its broad holding that, "[w]here a debtor in bankruptcy is solvent, an unsecured creditor is entitled to 'payment of interest at the legal rate from the date of the filing of the petition' prior to any distribution of remaining assets to the debtor'" is not in any way limited to cases in which section 726 directly applies. *Cardelucci*, 285 F.3d at 1234 (quoting 11 U.S.C. § 726(a)(5)). Rather, *Cardelucci* articulated a general, unqualified rule that postpetition interest is payable to *every* unsecured creditor of a solvent chapter 11 debtor at the uniform Federal Judgment Rate. In so holding, the Ninth Circuit drew from the only Bankruptcy Code provision that discusses the rate of postpetition interest payable on unsecured claims—section 726(a)(5)—and issued a ruling to be followed consistently in *all* cases where there is a solvent debtor.

Contrary to the Unsecured Creditors' assertions, Creditors' Br. ¶ 29, *Cardelucci* is not limited to impaired claims. *Cardelucci* says no such thing. Indeed, the holding in *Cardelucci* draws no distinction whatsoever between impaired and unimpaired claims. Nor did the Ninth Circuit indicate anywhere that its decision would be applicable only to impaired claims. The supposed distinction

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

between impaired and unimpaired claims simply did not factor into the Court's analysis regarding the appropriate rate of interest to be paid on an unsecured claim in a solvent-debtor chapter 11 case.

Like the Debtors' Plan here, the plan in *Cardelucci* "provided for payment in full" of the unsecured claim at issue. *Cardelucci*, 285 F.3d at 1233. The Ninth Circuit never suggested any exceptions or limitations, equitable or otherwise, to its clear rule that the Federal Judgment Rate is the rate of postpetition interest that must be paid on such a claim. Rather, the Ninth Circuit adopted a simple, broadly-applicable rule to promote uniformity, efficiency, and fairness in bankruptcy cases. *Cardelucci*, 285 F.3d at 1236 ("[A]pplication of the federal judgment rate is the most judicially efficient and practical manner of allocating remaining assets.").[3]

The Unsecured Creditors' reliance on *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1073 (9th Cir. 2002), is misplaced. *See* Creditors' Br. ¶ 31. There, for reasons unstated, the debtors proposed a plan that paid postpetition interest on unsecured claims at two different rates. *Sylmar Plaza*, 314 F.3d at 1075. With respect to one claim, the debtors invoked section 1124(2) of the Bankruptcy Code to unimpair the debt by curing defaults and reinstating it, thereby entitling the creditor to a contract rate of interest that was lower than the rate the debtor proposed to pay to other unsecured creditors. Not a single word of *Sylmar Plaza* addresses the appropriate postpetition interest rate payable on an unsecured claim in a solvent debtor case. That issue was not before the Court. Rather, the issue before the Ninth Circuit was whether the debtors lacked good faith in proposing a plan "solely to permit the debtors to take advantage of the Bankruptcy Code to profit personally at the expense of a creditor." *Id.* at 1074. The Ninth Circuit affirmed the Bankruptcy Court's determination that the debtors had proposed the plan in good faith, *id.*, and rejected the creditor's argument that it was subject to unfair treatment because other creditors received interest at a higher rate under the plan, *id.* at 1075. Notably,

---

[3] The Court should reject the Unsecured Creditors' invitation to distort *Cardelucci*'s holding by looking beyond the four corners of the published opinion in an effort to divine the Ninth Circuit's supposed intent. Creditors' Br. 12 n.9. This Court is bound by what the Ninth Circuit actually said, not by what the parties wrote in their briefs. In any event, the fact that the appellee in *Cardelucci* described the case as being limited to an application of the best interests test under section 1129(a)(7)(ii) *undermines* the Unsecured Creditors' position, as it demonstrates that the Ninth Circuit was aware of the argument now advanced by the Unsecured Creditors but nevertheless chose to set forth the broad, categorical rule that the Federal Judgment Rate applies across the board in solvent-debtor chapter 11 cases.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

even though *Sylmar Plaza* was issued eight months after *Cardelucci*, it did not even mention *Cardelucci*. That is because the solvent-debtor issues addressed in *Cardelucci* and relevant here were not at issue in *Sylmar Plaza*. Nothing in *Sylmar Plaza* even remotely suggests that an unsecured creditor is entitled to postpetition interest at any rate other than the Federal Judgment Rate in a solvent debtor case.

Finally, to the extent courts in other circuits may have reached differing views on payment of postpetition interest to creditors of a solvent debtor, those decisions are not binding here and do not warrant this Court ignoring the binding precedent of the Ninth Circuit. Indeed, the Unsecured Creditors' marquee case—*In re Energy Future Holdings ("EFH")*, 540 B.R. 109, 124 (Bankr. D. Del. 2015), in which the Bankruptcy Court for the District of Delaware relied on "equitable principles" in holding that the rate of interest payable to an unsecured creditor "may be the contract rate or such other rate as the Court deems appropriate"—did not even acknowledge the existence of *Cardelucci*, much less attempt to distinguish it, nor did it even hold that the contract rate applied. In any event, *EFH* and other similar cases simply are not the law in this Circuit.[4]

## III. THE UNSECURED CREDITORS' EFFORTS TO AVOID THE FEDERAL JUDGMENT RATE FAIL

Disregarding *Cardelucci,* the Unsecured Creditors argue that sections 1124 and 1129(b) of the Bankruptcy Code require payment of postpetition interest at contract rates or rates under state statutes. These contentions conflict with *Cardelucci* and are wrong.

---

[4] The Unsecured Creditors also rely on First Circuit authority interpreting the Bankruptcy Act to support their assertion that they entitled to postpetition interest at a contract or state law rate. *See* Creditors' Br. ¶ 24 (citing *Debentureholders Protective Committee of Continental Inv. Corp. v. Continental Inv. Corp.*, 679 F.2d 264, 270 (1st Cir. 1982). The relevance of *Debentureholders* to an analysis under the Bankruptcy Code is tenuous at best given that it is a pre-Bankruptcy Code case, and to the extent its holding is at odds with *Cardelucci*, it is simply not the law in this Circuit.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### A. Section 1124 Of The Bankruptcy Code Does Not Provide For Postpetition Interest At A Rate Other Than The Federal Judgment Rate

The Unsecured Creditors first cite section 1124 of the Bankruptcy Code as a basis for the claim that they are entitled to postpetition interest at either contract or statutory rates. Section 1124 provides in relevant part that:

> a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, ***the plan*** —
>
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
>
> (2) . . . after the occurrence of a default—
>
>> (A) cures any such default . . .
>>
>> (B) reinstates the maturity of such claim or interest
>>
>> (C) compensates the holder . . . for any [reliance] damages . . .
>>
>> (D) . . . compensates the holder . . . for any pecuniary loss [resulting from failure to perform a nonmonetary obligation] . . . and
>>
>> (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124 (emphasis added).

The Unsecured Creditors initially ask that the Court look to case law interpreting section 1124(2) of the Bankruptcy Code, a provision that authorizes a debtor to cure and reinstate defaulted debt. Creditors' Br. ¶ 18-20. There is no question that, to "unimpair" a claim under reinstatement circumstances, the debtor is obligated to pay postpetition interest at the contract rate. *Pacifica L 51 LLC v. New Invs., Inc. (In re New Investments, Inc*.), 840 F.3d 1137, 1142 (9th Cir. 2016). This makes sense because "the debtor can return to pre-default conditions, which can include a lower, pre-default interest rate, only by fulfilling the obligations of the underlying loan agreement and applicable state law." *Id*. But the issue here has nothing to do with reinstatement. The Debtors have not proposed to cure and reinstate the applicable claims of the Unsecured Creditors. Rather, the Debtors will pay those claims in their full amounts *plus* postpetition interest at the Federal Judgment Rate, as mandated by *Cardelucci*.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Undaunted, the Unsecured Creditors (citing no authority whatsoever) assert that, because language in section 1124(2)(E) of the Bankruptcy Code resembles language in section 1124(1), section 1124(1) similarly should be read to require interest at the contract rate.  *See* Creditors' Br. ¶¶ 18-20.  This is a non-sequitur.  Curing a contractual default under section 1124(2) necessarily requires compliance with the terms of the contract to be reinstated.[5]  In contrast, honoring "the legal, equitable, and contractual rights" associated with an unsecured claim to be paid in full in accordance with section 1124(1) requires compliance with the bundle of rights the claim affords its holder, but nothing more.  In the Ninth Circuit, this includes the right to statutory postpetition interest at the Federal Judgment Rate in cases involving a solvent chapter 11 debtor.  But, because section 502(b)(2) disallows *claims* for postpetition interest, section 1124(1) does not afford the creditor any right to postpetition interest at the contract rate.  The rights a creditor may have when a debtor reinstates and cures a default under section 1124(2) have no bearing on the proper rate of interest to be paid on an unsecured claim that is being paid in full and is not being reinstated.

The Unsecured Creditors emphasize that the "Ninth Circuit reads section 1124 to mean that 'Congress define[d] impairment in the broadest possible terms' and that 'any alteration of the rights constitutes impairment even if the value of the rights is enhanced.'"  Creditors' Br. ¶ 21 (quoting *In re L & J Anaheim Assocs.*, 995 F.2d 940, 943 (9th Cir. 1993)).  But the Unsecured Creditors again fail to appreciate that this refers to any alteration of a creditor's rights by a *plan*—as opposed to an alteration by the statute.  *See L & J Anaheim*, 995 F.2d at 943 ("In any event, the plain language of section 1124 says that a creditor's claim is 'impaired' unless its rights are left 'unaltered' ***by the Plan***.")(emphasis added).

Claims are not impaired where the plan satisfies a creditor's rights as defined by and circumscribed by the Bankruptcy Code.  If a creditor receives exactly that to which the Bankruptcy

---

[5] In fact, section 1123(d) of the Bankruptcy Code provides that, "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C § 1123(d).  The Bankruptcy Code thus expressly provides that a creditor is entitled to its full contractual or state law rights in a case where the debt is cured and reinstated.  As *Cardelucci* demonstrates, there is no such prescription for claims that are to be paid and not cured and reinstated.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Code entitles it, by definition there is no impairment. As a consequence, the Unsecured Creditors can only point to cases in which courts found that claims were impaired by *a plan* that modified creditor rights. *See id.* (plan modified creditor's right to exercise "all rights and remedies" of a secured party under the California Uniform Commercial Code); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1363 (9th Cir. 1986) (plan modified shareholder's right to vote for directors); *In re Rexford Properties LLC*, 558 B.R. 352, 368-69 (Bankr. C.D. Cal. 2016) (plan modified creditor's right to cease doing business with the debtor). The opposite is true here. The Bankruptcy Code (and controlling Ninth Circuit precedent) provide and circumscribe the Unsecured Creditors' rights to postpetition interest, and the Debtors' Plan satisfies those rights in full.

Although the Unsecured Creditors claim that "[t]he Ninth Circuit has interpreted impairment broadly, finding that **any** alteration of the rights (even when permissible under the Bankruptcy Code) constitutes impairment," Creditors' Br. ¶ 3 (emphasis in original), they cite no case for that proposition. That is not surprising, because the law is to the contrary. A chapter 11 plan does not "impair" a class of claims where the plan merely enforces a modification of rights arising from the Bankruptcy Code itself. *See PPI*, 324 F.3d at 204 (no impairment where amount of creditor's claim capped pursuant to section 502(b)(6)); *In re Art & Architecture Books of the 21st Century*, No. 13-BK-14135-RK, 2016 WL 1118743, at *9 (Bankr. C.D. Cal. Mar. 18, 2016) ("[I]n connection with Section 1124(1), courts have held that impairment does not result where a claimant's rights are altered by statute (including the Bankruptcy Code) with such changes merely reflected in a plan of reorganization."); *In re Ultra Petroleum*, 913 F.3d 533, 541 (5th Cir. 2019). Simply put, a plan cannot "impair" rights that do not exist under the Bankruptcy Code. *Ultra Petroleum*, 913 F.3d at 542 ("Where a plan refuses to pay funds disallowed by the Code, the Code—not the plan—is doing the impairing.").

Relevant to this case, the Bankruptcy Code expressly disallows unsecured claims for unmatured (postpetition) interest on unsecured claims. *See* 11 U.S.C. § 502(b)(2); *In re Robinson*, 567 B.R. 644, 649-50 (Bankr. N.D. Ga. 2017) ("Post-petition interest is not *part of the allowed claim* pursuant to Section 502(b)(2), but the Code provides when and at what rate that post-petition interest can be paid *on* the allowed claim pursuant to Section 726(a)(5).") (emphases added). What the

Unsecured Creditors theoretically might have received outside of bankruptcy, either under their contracts or state law, makes no difference because once the Debtors "filed for Chapter 11 protection, that hypothetical recovery became irrelevant." *See PPI*, 324 F.3d at 205.[6]

*Cardelucci* provides that postpetition interest on an allowed claim (not as part of an allowed claim) is payable when a chapter 11 debtor is solvent, but only at the Federal Judgment Rate. That is the entirety of "the legal, equitable, and contractual rights to which" the Unsecured Creditors are entitled, and that is exactly what the Unsecured Creditors will receive under the Debtors' Plan. The Debtors' Plan therefore leaves those rights—as defined and modified by the Bankruptcy Code— unaltered, and the Unsecured Creditors are not "impaired" under section 1124(1).

## B. Section 1129 Of The Bankruptcy Code Does Not Provide For Postpetition Interest At A Rate Other Than The Federal Judgment Rate

The Unsecured Creditors also assert that they are entitled to postpetition interest at contract or state law rates under the "fair and equitable" test of section 1129(b) of the Bankruptcy Code. *See* Creditors' Br. ¶¶ 23-26.[7] As an initial matter, section 1129(b) is irrelevant because, as just demonstrated, the claims of the Unsecured Creditors are not impaired under the Debtors' Plan. Because their claims are not impaired, the Unsecured Creditors are deemed to accept the Debtors' Plan and, therefore, cannot invoke section 1129(b), which only applies to *impaired* dissenting classes.

Moreover, even if section 1129(b) were considered, binding Ninth Circuit authority forecloses the argument that section 1129(b) requires a different rate of postpetition interest than that applicable to claims not subject to the fair and equitable test. In *Acequia*, the Ninth Circuit concluded that the

---

[6] Section 502(b)(2) thus amounts to the preemption of state law rights that the Unsecured Creditors acknowledge is legitimate and permissible. *See* Creditors' Br. ¶ 33 n.10 (citing *In re Shoen*, 1997 WL 1403808 (B.A.P. 9th Cir. 1997), *aff'd* 176 F.3d 1150, 1165 (9th Cir. 1999) (state law interest rates can be preempted by federal law); *In re Hamilton*, 584 B.R. 310, 323 (B.A.P. 9th Cir. 2018) (same); *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) ("[S]tate law applies to Plaintiff's claim for prejudgment interest under state law unless federal law preempts it.").

[7] The Unsecured Creditors mistakenly claim that the holding in *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510 (1941), supports their demand for postpetition interest at contract rates. *See* Creditors' Br. ¶ 24. In fact, that case did not address postpetition interest whatsoever. In *Consolidated Rock*, the debtors' plan did not provide bondholders with accrued and unpaid interest they were owed as part of their claims, but instead provided bondholders with inferior securities. 312 U.S. at 527. Nowhere did the Supreme Court consider the applicable rate of postpetition interest *on* the bondholders' allowed claims.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

fair and equitable test did not provide a license for a free-roving equitable examination of every provision in the proposed plan. Rather, where an issue is governed by another provision of the Bankruptcy Code, it is not subject to reexamination under section 1129(b). *See In re Acequia,* 787 F.2d at 1364. The Ninth Circuit, therefore, declined to apply the fair and equitable analysis to a plan provision that modified a creditor's rights concerning voting and management of the debtor because voting and management are addressed elsewhere in the Bankruptcy Code—namely by subsections (a)(6) and (a)(7) of section 1123. *Id.* The Ninth Circuit concluded that an application of section 1129's fair and equitable test to such provisions would be inappropriately redundant. *See id.* (noting "our disinclination to find redundancy in the Code").

Here, the fair and equitable test is irrelevant to issues of postpetition interest because the subject is governed by another provision of the Bankruptcy Code. Postpetition interest "[w]here a debtor in bankruptcy is solvent" is expressly addressed by section 726(a)(5) of the Bankruptcy Code as "the legal rate." *See Cardelucci*, 285 F.3d at 1234 (quoting 11 U.S.C. § 726(a)(5)). Therefore, under *Acequia*, section 1129's fair and equitable test cannot be applied to alter the result prescribed by section 726(a)(5), which the Ninth Circuit has held determines the amount of postpetition interest in solvent-debtor chapter 11 cases.

## IV. THERE IS NO PRESUMPTION THAT UNSECURED CREDITORS ARE ENTITLED TO CONTRACTUAL OR STATE LAW RATES OF POSTPETITION INTEREST

Contrary to the assertion by the Unsecured Creditors, *see* Creditors' Br. ¶¶ 33-44, there is no presumption in the Ninth Circuit that contract or other state law rates of interest apply to postpetition interest on an *unsecured* claim in a solvent-debtor chapter 11 case. All of the cases cited by the Unsecured Creditors involve *oversecured* claims, which are governed by an entirely different analysis and an entirely different provision of the Bankruptcy Code (section 506(b)). *See Gen. Elec. Capital Corp. v. Future Media Prods.*, 547 F.3d 956, 961 (9th Cir. 2008) (analyzing whether *oversecured* creditor is entitled to "contracted for default rate"); *Gencarelli v. UPS Capital Business Credit*, 501 F.3d 1, 4 (1st Cir. 2007) (analyzing whether "*oversecured* creditor is entitled to collect a contractually-based prepayment penalty from a solvent debtor") (emphasis added); *Matter of Terry*

*Ltd. P'ship*, 27 F.3d 241, 243 (7th Cir. 1994) (finding a "presumption in favor of the contract rate subject to rebuttal based upon equitable considerations" for interest payable to an *oversecured* creditor under section 506(b)); *Matter of Laymon*, 958 F.2d 72, 75 (5th Cir. 1992) ("[W]e hold that when an *oversecured* creditor's claim arises from a contract, the contract provides the rate of post-petition interest.") (emphasis added); *In re Epicenter Partners, L.L.C.*, No. 16-BK-05493, 2018 WL 1354330, at *7 (B.A.P. 9th Cir. Mar. 15, 2018) (explaining that "*[o]versecured* creditors are entitled to interest at the contractual rate so long as that rate is enforceable under nonbankruptcy law") (emphasis added).[8] There is nothing in any of those cases remotely supporting a presumption that *unsecured* creditors are entitled to postpetition interest at a contract rate or state statutory rates.

This is an important distinction, because section 506(b) of the Bankruptcy Code allows for postpetition interest on a secured claim *at the applicable contract rate* where the value of the collateral "is greater than the amount of the claim." 11 U.S.C. § 506(b). Section 506(b) thus allows contract rate interest to accrue on an oversecured claim to fill the "security cushion." *See U.S. Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988). In contrast, unsecured creditors, like the Unsecured Creditors here, "ha[ve] no such cushion," and therefore can never recover unmatured interest as part of their claims. *See id.* at 372-73 (citing 11 U.S.C. § 502(b)(2)); *see also In re Manchester Gas Storage, Inc.*, 309 B.R. 354, 382 (Bankr. N.D. Okla. 2004) ("There is no statutory exception to Section 502(b) that mandates or even *allows* postpetition interest to be paid by the estate to creditors other than oversecured creditors under Section 506(b) in a chapter 11 case.").

---

[8] In other instances, the Unsecured Creditors rely on authority that is irrelevant because it is predicated on the precursor to the Bankruptcy Code, i.e., the Bankruptcy Act, which had no analog to sections 502(b)(2), 506(b) or 726(a)(5) of the Bankruptcy Code—all of the provisions that address the subject of postpetition interest in chapter 11 cases. *See, e.g.*, *City of New York v. Saper*, 336 U.S. 328 (1949) (tracing historical origins of solvent debtor exception under Bankruptcy Act); *Consol. Rock Prod. Co. v. Du Bois*, 312 U.S. 510, 527 (1941) (evaluating, under Bankruptcy Act, whether debtors' plan violated absolute priority rule); *Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp)*, 752 F.2d 1334 (9th Cir. 1984) (analyzing whether creditor entitled to interest under Bankruptcy Act); *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264 (1st Cir. 1982) (analyzing whether creditor entitled to interest under Bankruptcy Act); *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959) (analyzing whether secured creditor entitled to interest under Bankruptcy Act); *see also In re Dow Corning Corp.*, 456 F.3d 668, 679 (6th Cir. 2006) (relying on Bankruptcy Act caselaw in concluding that section 1129(b)'s fair and equitable test requires payment of default interest).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

V.    THE UNSECURED CREDITORS' REMAINING ARGUMENTS ARE WITHOUT MERIT

   A.    **Equitable Considerations Do Not Support Postpetition Interest At Contract Or State Law Rates**

The Unsecured Creditors argue at various points that equitable considerations warrant postpetition interest at the contract or state law rates in a solvent-debtor case.  *See* Creditors' Br. ¶¶ 35-41.  But they again ignore *Cardelucci*, where the Ninth Circuit specifically considered the equities in determining that the Federal Judgment Rate uniformly applies in solvent-debtor chapter 11 cases.  In *Cardelucci*, the Ninth Circuit thoroughly analyzed the equitable considerations that could warrant application of a rate of postpetition interest other than the Federal Judgment Rate and ultimately held that "using the [Federal Judgment Rate] promotes uniformity within federal law," *Cardelucci*, 285 F.3d at 1235, promotes fairness among creditors, *id*. at 1236, and is "the most judicially efficient and practical manner of allocating remaining assets." *id*.    The Ninth Circuit recognized a countervailing interest, *i.e.*, that its holding—an across the board application of the Federal Judgment Rate—could result in certain instances where "a debtor may receive a windfall."  *Id*.  But that countervailing interest was insufficient to support an ad hoc, case-by-case equitable analysis like that advocated by the Unsecured Creditors because the "legal rate" in section 726(a)(5) of the Bankruptcy Code is a "statutory term with a definitive meaning that cannot shift depending on the interests invoked by the specific circumstances before the court."  *Id*.  Accordingly, the Ninth Circuit has already analyzed the equitable considerations urged by the Unsecured Creditors, including the alleged "windfall" in favor of equity holders, and found that they mandate a uniform application of the Federal Judgment Rate in all chapter 11 cases.

Disregarding this, the Unsecured Creditors cite the Delaware Bankruptcy Court's decision in *EFH* to argue that payment of interest at a rate less than the contract or state law rate somehow impairs their "equitable" rights.  Creditors' Br. ¶ 50.  In *EFH*, the Bankruptcy Court found that the debtor's plan must pay unimpaired unsecured claims postpetition interest "at an appropriate rate under equitable principles" in order to protect their "equitable rights."  *See* 540 B.R. at 123-24.  The Court's primary concern was that "unimpaired creditors might receive *inferior* treatment than that accorded

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

impaired creditors." *Id.* at 123. This comparison has no force here because all unsecured claims are to receive the same rate of postpetition interest under the Debtors' Plan.

More fundamentally, *EFH* overstated the court's "equitable power" to "award post-petition interest at an appropriate rate" at its discretion. "It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting 2 Collier on Bankruptcy ¶ 105.01[2] (16th ed. 2013)). The Supreme Court has "long held that 'whatever equitable powers remaining must and can only be exercised within the confines of' the Bankruptcy Code." *See id.* (collecting cases). As the Ninth Circuit recognized in *Cardelucci*, the Bankruptcy Code speaks directly to the treatment of postpetition interest on unsecured claims. In doing so, "Congress eliminated the subjectivity of pre-Code discretion . . . and specifically mandated allowance of such interest" in accordance with section 726(a)(5). *Manchester Gas*, 309 B.R. at 385. "The concept that postpetition interest is a matter of the bankruptcy court's equitable discretion has been superseded by statute." *Id*.

In any event, the analysis of the Delaware bankruptcy court in *EFH* does not bind this Court. *Cardelucci* does. In this regard, it is somewhat remarkable and very telling that, even though *Cardelucci* is a Circuit Court decision that addressed the very same issues, *EFH* never mentions *Cardelucci*—even in an effort to distinguish it. No matter. Given that the Ninth Circuit has already ruled on this issue, *EFH* has no bearing on what rate of interest is payable to the Unsecured Creditors.

### B. The Legislative History Of The 1994 Amendment To Section 1124 Of The Bankruptcy Code Does Not Support Postpetition Interest At A Rate Other Than The Federal Judgment Rate

As explained above, a claim is unimpaired where it is the Bankruptcy Code, and not the debtor's plan, that alters a creditor's contractual, legal, or equitable rights. The text of section 1124 could not be more clear. It provides that a claim "is impaired *under a plan* unless . . . *the plan* leaves unaltered the legal, equitable, and contractual rights to which such claim . . . entitles the holder of such claim." 11 U.S.C. § 1124(1). As a consequence, a claim that is modified by the Bankruptcy Code rather than the plan is not impaired within the meaning of the statute.

The Third Circuit in *PPI* specifically recognized this distinction between impairment under a plan and impairment by operation of the Bankruptcy Code itself. *PPI*, 324 F.3d at 204. In broad

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

terms, the court explained that a "creditor's rights must be ascertained with regard to applicable statutes" and concluded that, as a result, a plan that paid a landlord's claim that had been limited and capped by section 502(b)(6) of the Bankruptcy Code was not impaired because it was the statute, not the plan, that limited the claim amount. *Id.* "Impairment results from what the *plan* does, not what the statute does." *Id.*

In *Ultra Petroleum*, the Fifth Circuit took the uncontroversial step of finding that the reasoning in *PPI* "applies with equal force to § 502(b)(2)." *Ultra Petroleum*, 913 F.3d at 542. In an attempt to undermine that logical conclusion, the Unsecured Creditors assert that the Fifth Circuit neglected PPI's conclusion that "the legislative history of section 1124 clearly indicates that Congress intended to overrule the effect of 502(b)(2) in the context of impairment." Creditors' Br. ¶ 46 (emphasis omitted). They are mistaken. *PPI* never made such a pronouncement. Rather, in *PPI* the Third Circuit simply recognized that Congress had repealed section 1124(3) of the Bankruptcy Code in 1994 in response to a bankruptcy case that permitted a solvent debtor to unimpair unsecured claims through payment in full of the allowed claim amounts *without any postpetition interest at all*. *PPI* considered this legislative history to demonstrate that Congress's repeal of 1124(3) did not alter the meaning of section 1124(1). *PPI*, 324 F.3d at 207 ("§ 1124(1) and § 1124(3) were different exceptions to the presumption of impairment, and the repeal of one should not affect the other"). In fact, contrary to what the Unsecured Creditors assert, *PPI* said *nothing* about section 502(b)(2), nor did it express any view on what rate of interest a solvent debtor owes to its creditors.[9]

The Unsecured Creditors are clearly wrong in their assessment of this legislative history. Prior to the 1994 amendment, section 1124(3) provided that a plan could unimpair class of claims by making a cash payment "equal to—(A) with respect to a claim, the allowed amount of such claim." In 1994, one court construed this provision to mean that if each member of a class of claims received "full payment of its pre-petition allowed claim in cash, on the effective date of the plan, the class is

---

[9] The other authority cited by the Unsecured Creditors similarly does not specify the rate of postpetition interest to be paid on unimpaired unsecured claims. *See In re Introgen Therapeutics, Inc.*, 429 B.R. 570 (Bankr. W.D. Texas 2011) (finding that postpetition interest is owed, in light of the repeal of section 1124(3), but not addressing specific rate of postpetition interest); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213 (Bankr. D.N.J. 2000) (same).

15

unimpaired" and that, as a result, a solvent chapter 11 debtor did not need to pay postpetition interest because section 502(b)(2) disallowed claims for unmatured interest. *In re New Valley Corp.*, 168 B.R. 73, 79 (Bankr. D.N.J. 1994). In response, Congress repealed subsection 1124(3), stating:

> In order to preclude this unfair result in the future, the Committee finds it appropriate to delete section 1124(3) from the Bankruptcy Code.

> As a result of this change, if a plan proposed to pay a class of claims in cash in the full allowed amount of the claims, the class would be impaired, entitling creditors to vote for or against the plan of reorganization.

H.R. Rep. No. 103-835, at 48 (1994).

This legislative history simply shows that Congress intended for creditors to receive interest *on* an unsecured claim where the debtor is solvent, which is what the Debtors' Plan provides. Indeed, Congress took no issue with *New Valley*'s conclusion that postpetition interest at the contract rate was not part of an allowed unsecured claim, because that is exactly what section 502(b)(2) provides. It merely concluded that, if an unsecured creditor of a solvent debtor receives *no* interest on its allowed claim, the claim is impaired. H.R. Rep. No. 103-835, at 48 (1994).

The legislative history says nothing about the *rate* of postpetition interest that must be paid in order for an unsecured claim to be unimpaired. It merely demonstrates that Congress intended for a solvent debtor to pay *some amount* of postpetition interest on unsecured claims if it seeks to render them unimpaired in a plan. The most logical assessment of this historical development is that Congress corrected the anomalous result in *New Valley* by extending the protections of section 726(a)(5) to unimpaired creditors, thereby providing a consistent rate of postpetition interest across the board, applicable not only in chapter 7 cases but also in chapter 11 cases to both impaired and unimpaired claims. Payment of postpetition interest *on* a creditor's allowed claim at the "legal rate" set forth in section 726(a)(5) fully rectifies the "inequitable" result that Congress intended to avoid by repealing section 1124(3).

Accordingly, the legislative history provides absolutely no support for the Unsecured Creditors' assertion that Congress "intended the impairment tests of section 1124 to be applied to the holder's state law rights, particularly with respect to interest." Creditors' Br. ¶ 47. Congress certainly did not indicate that, despite the clear mandate of sections 502(b)(2) and 726(a)(5), unsecured creditors

Case: 19-30088    Doc# 4849    Filed: 11/22/19    Entered: 11/22/19 14:25:21    Page 20 of 21

should receive contract or state rates of interest. If Congress intended such a stark departure from the Bankruptcy Code's explicit statutory regime respecting postpetition interest, it could and would have said so.

## VI.    CONCLUSION

All parties here agree that unsecured creditors of a solvent debtor are entitled to postpetition interest on their allowed claims. The dispute relates to the rate of such interest. On that issue the Ninth Circuit has spoken loud and clear: postpetition interest is payable to the unsecured creditors of a solvent chapter 11 debtor at the Federal Judgment Rate.

Thus, for all the foregoing reasons, and those set forth in the Debtors' Moving Brief, the Court should reject the Unsecured Creditors' invitation to ignore this Circuit's binding precedent and instead should hold, consistent with *Cardelucci*, that the Federal Judgment Rate is the only appropriate rate in calculating postpetition interest on allowed unsecured claims under the Debtors' Plan.

Dated:  November 22, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**


By:    *Theodore E. Tsekerides*
　　　　Theodore E. Tsekerides

*Attorneys for Debtors and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119