MORGAN, LEWIS & BOCKIUS LLP
William D. Kissinger (SBN 135276)
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1480
Fax: +1.415.442.1001
william.kissinger@morganlewis.com

-and-

MORGAN, LEWIS & BOCKIUS LLP
Richard W. Esterkin (SBN 70769)
300 South Grand Ave.
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501
richard.esterkin@morganlewis.com

*Attorneys for Henrietta D Energy Storage LLC*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| **In re** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **NOTICE OF MOTION AND MOTION OF HENRIETTA D ENERGY STORAGE LLC FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT CONTRACT TERMINATION** |
| Debtors. | |
| ☐ Affects PG&E Corporation | **Hearing Date:** December 17, 2019<br>Time: 10:00 a.m. (PST) |
| ☒ Affects Pacific Gas and Electric Company | Courtroom: Hon. Dennis Montali<br>450 Golden Gate Avenue<br>16th Floor, Courtroom 17<br>San Francisco, CA 94102 |
| ☐ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |

To: The parties hereto and their attorneys of record:

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Please take notice that, on December 17, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Dennis Montali, located at 450 Golden Gate Avenue, Courtroom 17, San Francisco, California, Henrietta D Energy Storage LLC ("Movant" or "Henrietta") will, and hereby does, move the Court for the entry of an order modifying the automatic stay to permit Movant to terminate that certain Energy Storage Agreement ("ESA") dated November 4, 2015, by and between Movant and Pacific Gas and Electric Company (the "Debtor" or "PG&E").

The foregoing motion will be based upon this notice of motion and motion, the attached Memorandum of Points and Authorities, the Declaration of Christopher Streeter in Support of Motion of Henrietta D Energy Storage, LLC for an Order Modifying the Automatic Stay to Permit Contract Termination ("Streeter Decl.") filed concurrently herewith, the Relief from Stay Cover Sheet filed concurrently herewith, and such other and further evidence and argument as may be presented in filings in connection with this motion or at the hearing of this motion.

Although not required to do so, any party wishing to respond to this motion may file responsive pleadings, points and authorities, and declarations in advance of the hearing date set forth above and may appear, personally or by counsel, at that hearing.

Dated: November 22, 2019        **MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Richard W. Esterkin*
William D. Kissinger (SBN 135276)
Richard W. Esterkin (SBN 70769)

*Attorneys for Henrietta D Energy Storage LLC*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

2

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088    Doc# 4850    Filed: 11/22/19    Entered: 11/22/19 15:15:58    Page 2 of 16

## Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 5

PRELIMINARY STATEMENT.......................................................................................................... 5

I. INTRODUCTION ............................................................................................................................. 5

II. JURISDICTION ............................................................................................................................... 6

III. STATEMENT OF FACTS ............................................................................................................. 7

IV. ARGUMENT ................................................................................................................................. 10

    A.    Modification of the Stay to Allow Movant to Terminate the ESA is Proper........ 10

V. NOTICE ........................................................................................................................................... 13

VI. CONCLUSION.............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Carroll v. Tri-Growth Centre City, Ltd. (In re Carroll),*
   903 F.2d 1266 (9th Cir. 1990) ..................................................................................................11

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),*
   912 F.2d 1162 (9th Cir. 1990 ....................................................................................................11

*Griffel v. Murphy (In re Wegner),*
   839 F.2d 533 (9th Cir. 1988) ....................................................................................................11

*In re Computer Communications, Inc.,*
   824 F.2d 725 (9th Cir. 1987) ....................................................................................................11

*In re Curtis, 40 B.R. 795*
   (Bankr. D. Utah 1984) ........................................................................................................11, 12

*In re MacDonald,*
   755 F.2d 715 (9th Cir. 1985) ....................................................................................................11

*In re Plumberex Specialty Prods., Inc.,*
   311 B.R. 551 (Bankr. C.D. Cal. 2004) .....................................................................................12

*In re Roger,*
   539 B.R. 837 (Bankr. C.D. Cal. 2015) .....................................................................................12

*Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer),*
   405 B.R. 915 (B.A.P. 9th Cir. 2009) ........................................................................................12

*N. L. R. B. v. Bildisco and Bildisco,*
   465 U.S. 513 (1984) ..................................................................................................................11

*Robert L. Helms Constr. and Dev. Co., Inc. v. Southmark Corp.,*
   *(In re Robert L. Helms Constr. & Dev. Co., Inc.),*
   139 F.3d 702 (9th Cir. 1998) ....................................................................................................11

**Statutes**

11 U.S.C. § 362(d)(1)………………………………………………………………..……*passim*

28 U.S.C. § 157………………………………………………………………………………….6

28 U.S.C. § 157(b)……………………………………………………………………………...6

28 U.S.C. § 1334………………………………………………………………………...……6

28 U.S.C. § 1408………………………………………………………………………………..6

28 U.S.C. § 1409………………………………………………………………………………..6

**Other Authorities**

Bankr. Local R. for the U.S. Dist. Ct. for the N. D. of Cal. 4001-1……………………………6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

4

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088    Doc# 4850    Filed: 11/22/19    Entered: 11/22/19 15:15:58    Page 4 of 16

# MEMORANDUM OF POINTS AND AUTHORITIES

Henrietta D Energy Storage LLC respectfully submits the following Memorandum of Points and Authorities in support of the instant motion:

## PRELIMINARY STATEMENT

On November 4, 2015, Movant and Debtor entered into the ESA pursuant to which Movant agreed to construct a 10 megawatt battery storage facility (the "Facility"). Under the ESA, once constructed and in operation, Debtor would have the right to dispatch the Facility's battery to either discharge or charge energy to or from its grid over a twenty-year period. The ESA requires the Facility to be capable of operating at certain levels of minimum daily storage and discharge.

Following the execution of the ESA, however, Debtor concluded that its then-existing grid could not accommodate the Facility as contracted but refused to identify what system upgrades were required to enable the Facility to meet the ESA's operational requirements. After months of discussions, Debtor recently informed Movant that it would not accept delivery of the Facility. Consequently, Movant now seeks an order modifying the automatic stay to permit it to terminate the ESA.

## I. INTRODUCTION

1. As detailed below, Debtor's course of conduct has made it impossible for Movant to deliver the project Movant agreed to build and operate for Debtor. Specifically, Debtor has imposed material limitations on the Facility's operations that *both parties* agree will prevent it from meeting the ESA's requirements. These charging restrictions stem from the physical limitations of Debtor's local grid, which Debtor is unwilling or unable to remedy, or to advise Movant as to how Movant could do so.

2. In an effort to address this problem, Movant pursued commercial discussions with Debtor for many months. Movant advanced proposals for ESA amendments that might remedy the limitations on the project imposed by the Debtor's grid, but the Debtor rejected those proposals, even as it continued discussions with Movant, giving it reason to believe the parties would eventually find a solution.

3. On September 24, 2019, however, Debtor wrote a letter to Movant in which it declared for the first time that the charging restrictions imposed by its grid would not permit the Facility to perform within the parameters specified in the ESA and that it would not accept the Facility "if there are any conditions in place, including charging restrictions, which would prevent the [Facility] from performing pursuant to the parameter outlined [in the ESA]."

4. Movant will not be able to deliver as required under the ESA by reason of the these limitations. This letter and Debtor's course of conduct will prevent achievement of the core purpose of the ESA. Because Debtor has been unwilling to adjust its conduct, or to discuss amendments to the ESA that are acceptable to Movant, Debtor has now breached the ESA in a fundamental way post-petition and created a basis under which Movant has a right to terminate the ESA limited only by the automatic stay currently in effect.

5. Without the stay relief sought herein, Movant would be left in the untenable position of otherwise having to expend substantial additional sums of capital to complete a project Debtor declared in its September 24 letter it will not accept nor want given the limitations of its grid. Even if the Facility is constructed, Debtor would be unable to fulfil its own obligations under the ESA due to the same limitations. Under these circumstances, relief from stay is appropriate.

## II.
## JURISDICTION

6. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.), and 5011-l(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules").

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for this motion are 11 U.S.C. § 362(d)(1), Rule 4001(a)(l) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Bankruptcy Local Rule 4001-1.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

6

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088   Doc# 4850   Filed: 11/22/19   Entered: 11/22/19 15:15:58   Page 6 of 16

## III.
## STATEMENT OF FACTS

8. Movant is a Delaware limited liability company and a subsidiary of Convergent Energy and Power LP, a Delaware limited partnership, headquartered in New York City and a leading developer of energy storage solutions in North America.[1]

9. Debtor and Movant are parties to the ESA.[2] The ESA generally provides that Movant will construct a four hour 10 megawatt ("MW") battery energy storage facility. Once constructed, the ESA provides PG&E the right to dispatch the Facility to either discharge or charge energy to or from the grid for a twenty-year period beginning on May 1, 2020.[3]

10. Since entering into the ESA, Movant has invested over $500,000 in development expenses for site control and land payments, interconnection studies, permit applications (and related consulting costs including engineering, environmental, entitlements and architecture). As required by Debtor, Movant also posted Project Development Security to PG&E in the sum of $600,000.[4]

11. The ESA contemplates that the Facility will be capable of a certain level of minimum storage and daily discharge throughput. Specifically, Appendix II of the ESA specifies that run hour limitations could be up to 79MWh of Maximum Delivered Discharge Energy per day. Movant had initially planned to comply with the requirements under Appendix II of the ESA by charging and discharging the batteries two full cycles per day, based on the agreed batteries'

---

[1] Streeter Decl. at ¶ 2.

[2] PG&E requires that the nonstandard terms in the ESA along with the studies conducted by PG&E on how to interconnect the Facility be kept confidential. The ESA contains a provision stating that throughout the term of the agreement, "neither Party shall disclose the non-public terms or conditions of this Agreement (the 'Confidential Information') to a third party." Rather than file these documents under seal, Movant files the Streeter Decl. in support of the instant motion. Mr. Streeter is familiar with the terms of the ESA and the FAS and could testify competently as to these matters. *See id*. at ¶ 1. ESA provisions that are publicly available as part of PG&E's pro forma ESA form of contract are quoted in this motion. *See* Pro-Forma Energy Storage Agreement, last updated Mar. 24, 2017, available at https://www.pge.com/includes/docs/word_xls/b2b/wholesaleelectricsupplierssolicitation/Energy_Storage/AppendixF1a_PGE_FormESA.doc .

[3] Streeter Decl. at ¶ 3.

[4] *Id*. at ¶ 4.

performance limits. The planned charging capability is essential to Movant achieving the proposed 79 MWh of daily discharge throughput.[5]

12. In order to develop the project, as required by the ESA, Debtor conducted a study regarding its existing electric distribution system to determine what interconnection facilities and what system upgrades would be required to enable the Facility to safely and reliably interconnect to Debtor's grid while also enabling the Facility to meet the ESA's stringent performance requirements. In April 2017, Debtor provided Movant with an incomplete Facilities Study (the "FAS").[6] While the FAS assessed how the Facility would interconnect with Debtor's local grid, it did not, as required by the ESA, identify the upgrades required, and, importantly, the associated costs, to enable the Facility to meet the operational requirements provided for in the ESA.[7]

13. Instead, the FAS identified a number of limitations on the system that would curtail operations of the Facility once constructed, including when and how much the Facility could charge its batteries. Specifically, Debtor specified that the Facility's batteries (a) could not be charged whenever the load on the local grid exceeds 20MW and (b) could only be charged with up to 5MW from April 1 through July 15 of each year. The parties agree that these limitations, if unaddressed, would prevent Movant from meeting the performance requirements of the ESA.[8]

14. Following Movant's receipt of the FAS, over many months, Movant and Debtor engaged in extensive discussions regarding possible modifications of the ESA to take into account the performance restrictions Debtor had imposed on the Facility as a result of its grid as well as other possible solutions to the problem posed by the limited capabilities of Debtor's local grid. Throughout these discussions, Debtor never identified what the upgrades or the costs would be to overcome these limitations. Instead, until two months ago, the parties continued to discuss whether there was a solution to the problem. [9]

---

[5] *Id*. at ¶ 5.

[6] *See* note 2, *supra*.

[7] Streeter Decl. at ¶¶ 6, 7.

[8] *Id.*. at ¶ 7.

[9] *Id*. at ¶¶ 9-11.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

8

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088    Doc# 4850    Filed: 11/22/19    Entered: 11/22/19 15:15:58    Page 8 of 16

15. Then, on September 24, 2019, Movant received a letter from Debtor stating that the charging restrictions Debtor had imposed on the Facility would prevent it from achieving the performance requirements prescribed in the ESA and that Debtor would not accept Movant's delivery of the Facility.[10] Those restrictions were the same restrictions that Debtor had previously identified based on its local grid's limitations, and as to which it had failed to provide any information to Movant as to how to mitigate the restrictions, including, as required under the ESA, the cost to do so.[11]

16. Debtor's September 24 letter makes clear that: (a) Debtor is no longer willing to accept any performance that Movant may tender, (b) Movant is excused from performing its obligations and (c) Movant is entitled to terminate the ESA. Among other bases for termination, Movant is entitled to terminate the ESA in accordance with ESA Section 5.2(e), which provides as follows:

> <u>Distribution Upgrades or Interconnection Facilities associated with Charging Energy.</u> Within thirty (30) days of the date on which the final System Impact Study or equivalent study per PG&E's Wholesale Distribution Tariff ("Interconnection Study") is completed, Seller will make available to Buyer the results of the Interconnection Study. If the Interconnection Study results indicate constraints that may limit the Project's ability to charge <u>and identifies mitigations required to alleviate that constraint</u>, the Seller shall elect either to fund any and all Distribution Upgrades or Interconnection Facilities sufficient to eliminate the charging constraints as required via the interconnection study process ("Charging Energy Interconnection Investment") as described in Section 5.2(e)(i) <u>or proceed to a no fault termination as described in Section 5.2(e)(ii)</u>.[12]

17. Although Debtor delivered the initial FAS in April 2017, it never identified the mitigations "required to alleviate the constraint" imposed by Debtor's charging restrictions. During the months of discussions between the parties, Movant sought, without success, to identify and address the constraints created by the charging restrictions imposed by Debtor's grid. Debtor's

---

[10] *Id.* at ¶ 12. In the September 24 letter, Debtor stated it "will <u>not</u> consider the project to have achieved the Initial Delivery Date if there are any conditions in place, including charging restrictions, which would prevent the Project from performing pursuant to the parameters outlined in Appendix II of the ESA." *See id.*, Ex. A (emphasis in original).

[11] *Id.* at ¶ 8.

[12] *Id.* at ¶ 13. (emphasis added).

September 24 letter makes plain for the first time that PG&E has no intention or ability to find a solution to those constraints, entitling Movant to exercise its right to a no fault termination of the ESA as provided for in Section 5.2(e)(ii).[13]

18. The September 24 letter also makes plain that Debtor will breach its obligation under ESA section 6.1(a) to "be responsible for delivering <u>all</u> of the Charging Energy for the [Facility] . . . for the Scheduled Operations." (emphasis added). "Scheduled Operations" includes a reference to the operational requirements set forth in ESA Appendix II, requirements which the September 24 letter now makes plain that Debtor will be unable to support because of those same limitations on its grid.[14]

19. Debtor's post-petition breaches of the ESA and other actions in this matter have imposed – and continue to impose – hardship on Movant and render performance by Movant under the ESA impossible. Movant has expended material sums and devoted substantial time and resources to fulfill its obligations under the ESA, and Movant would have to continue to do so absent the relief sought herein. That is so even though Debtor now asserts categorically that the Facility will not be acceptable and that it does not even want it.

## IV.
## ARGUMENT

### A. Modification of the Stay to Allow Movant to Terminate the ESA is Proper.

20. The Court should modify the automatic stay to permit Movant to terminate the ESA. Debtor does not wish to proceed with the Facility, so Debtor's ability to reorganize in chapter 11 would not be prejudiced or suffer any harm at all by termination of the ESA. In fact, it would appear Debtor's ability to reorganize would be enhanced by such a termination, which it apparently desires commercially. Accordingly, Movant seeks leave of the Court to lift the automatic stay to permit Movant to terminate the ESA.

---

[13] The no fault termination right set forth in Section 5.2(e)(ii) of the ESA becomes available when the costs to mitigate the constraint exceed a particular financial threshold. *See id*. at ¶ 8. Debtor's September 24 letter indicates no amount of mitigation will alleviate the constraint. *See id*., Ex. A.

[14] *Id*. at ¶ 15. ESA Section 6.1(c) provides that PG&E "shall be responsible for the Energy costs associated with providing the Charging Energy . . . for the Scheduled Operations" The September 24, 2019 letter indicates that PG&E is unwilling to bear the costs necessary to provide the Charging Energy. *See id*., Ex. A.

21.    An executory contract can only be terminated after a grant of relief from the stay. *Carroll v. Tri-Growth Centre City, Ltd. (In re Carroll)*, 903 F.2d 1266, 1271 (9th Cir. 1990) (citing *In re Computer Communications, Inc.*, 824 F.2d 725, 129-30 (9th Cir. 1987)).

22.    There is no dispute that the ESA is an executory contract. An executory contract is one "on which performance remains due to some extent on both sides." *Robert L. Helms Constr. and Dev. Co., Inc. v. Southmark Corp., (In re Robert L. Helms Constr. & Dev. Co., Inc.)*, 139 F.3d 702, 710 (9th Cir. 1998) (quoting *N. L. R. B. v. Bildisco and Bildisco*, 465 U.S. 513, 522-23 n. 6 (1984). More precisely, a contract is executory if "the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *Id*. (quoting *Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir. 1988). Here, the ESA requires Movant to construct the Facility – which has not yet been completed – and for PG&E to pay for the capacity from the Facility once in operation – which has not yet begun. Accordingly, because both Movant and PG&E have unperformed obligations, the ESA is indisputably an executory contract.

23.    Section 362(d)(1) of the Bankruptcy Code states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause . . . ." 11 U.S.C. § 362(d)(1). Because the Bankruptcy Code does not define "cause," courts conduct a case-by-case inquiry and look into the totality of the circumstances to determine whether sufficient cause exists to grant relief from the automatic stay. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)).

24.    To determine whether cause exists to lift the automatic stay, courts in the Ninth Circuit often use the twelve factors set forth in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (the "*Curtis* Factors").[15] The Bankruptcy Appellate Panel for the Ninth Circuit has

---

[15] The *Curtis* Factors are: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor

recognized that the "*Curtis* [f]actors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay". *See Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009).

25. Not all of the *Curtis* Factors are relevant in every case and courts are not required to give each factor equal weight. *In re Roger*, 539 B.R. 837, 845 (Bankr. C.D. Cal. 2015) (citing *In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 560 (Bankr. C.D. Cal. 2004). The most important *Curtis* Factor is whether granting relief from stay would interfere with the bankruptcy. *Id.* at 846 (citing *Curtis*, 50 B.R. at 806).

26. Here, the relevant *Curtis* Factors are numbers two and twelve – both of which demonstrate that ample cause exists to lift the automatic stay to permit Movant to terminate the ESA. As to the second (and most important) *Curtis* Factor, termination of the ESA will not interfere with the PG&E chapter 11 bankruptcy because Debtor has indicated that it too desires to terminate the ESA and will not accept the Facility, if constructed.

27. As to the twelfth *Curtis* Factor, the balance of the "hurt" strongly favors granting relief. Since entering into the ESA, Movant has invested, and continues to invest, in development expenses for site control and land payments, interconnection studies, permit applications (and related consulting costs including engineering, environmental, entitlements and architecture) and posted Project Development Security in cash. On the other hand, Debtor will not have any obligation under the ESA until the Facility has been constructed and Debtor has accepted initial delivery of the Facility. Absent ESA termination, Movant will be required to continue expending additional material time and money on a project that Debtor has said it does not want, and has confirmed it will not accept. The large continued expense imposes a significant burden upon

---

functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The impact of the stay on the parties and the "balance of hurt." *Curtis*, 40 B.R. at 799-800.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

12

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088   Doc# 4850   Filed: 11/22/19   Entered: 11/22/19 15:15:58   Page 12 of 16

Movant; ESA termination would impose no harm to Debtor in light of Debtor's refusal to accept the Facility, if constructed.

28. For these reasons, sufficient cause exists for this Court to modify the automatic stay to permit Movant to exercise its contractual right to terminate the ESA.

## V.
## NOTICE

29. Notice of this Motion is being provided in accordance with the *Second Amended Order Implementing Certain Notice and Case Management Procedures*, entered on May 14, 2019 [Docket No. 1996].

## VI.
## CONCLUSION

For the foregoing reasons, the Court should issue an order modifying the automatic stay to permit Movant to exercise its contractual right to terminate the ESA.

Dated: November 22, 2019          **MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Richard W. Esterkin*
William D. Kissinger (SBN 135276)
Richard W. Esterkin (SBN 70769)

*Attorneys for Henrietta D Energy Storage LLC*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

13

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088    Doc# 4850    Filed: 11/22/19    Entered: 11/22/19 15:15:58    Page 13 of 16

# EXHIBIT A
# PROPOSED ORDER

```
MORGAN, LEWIS & BOCKIUS LLP
William D. Kissinger (SBN 135276)
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:   +1.415.442.1480
Fax:   +1.415.442.1001
william.kissinger@morganlewis.com

-and-

MORGAN, LEWIS & BOCKIUS LLP
Richard W. Esterkin (SBN 70769)
300 South Grand Ave.
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501
richard.esterkin@morganlewis.com
```

*Attorneys for Henrietta D Energy Storage LLC*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| **In re** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **[PROPOSED] ORDER GRANTING THE MOTION OF HENRIETTA D ENERGY STORAGE LLC FOR RELIEF FROM THE AUTOMATIC STAY** |
| Debtors. | |
| ☐ Affects PG&E Corporation | |
| ☒ Affects Pacific Gas and Electric Company | |
| ☐ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

15

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088    Doc# 4850    Filed: 11/22/19    Entered: 11/22/19 15:15:58    Page 15 of 16

Upon the motion of Henrietta D Energy Storage LLC ("Henrietta"), for Entry of an Order Granting Relief from the Automatic Stay (the "Motion");[1] and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.) and Bankruptcy Local Rule 5011-l(a); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having determined that cause exists to modify the automatic stay under 11 U.S.C. § 362(d)(1); and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.
2. The automatic stay is hereby modified so that Henrietta is authorized, but not directed, to exercise its contractual right to terminate the ESA.
3. Notwithstanding Bankruptcy Rule 4001(a)(3), or any other Bankruptcy Rule, this Order shall be immediately effective and enforceable upon its entry.
4. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**\*\*END OF ORDER\*\***

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Morgan, Lewis & Bockius LLP
Attorneys at Law
New York

16

MOTION AND MEMORANDUM OF
HENRIETTA D ENERGY STORAGE LLC

Case: 19-30088    Doc# 4850    Filed: 11/22/19    Entered: 11/22/19 15:15:58    Page 16 of 16