| | |
|---|---|
| 1 | |
| 2 | Dennis F. Dunne (admitted *pro hac vice*)<br>Samuel A. Khalil (admitted *pro hac vice*)<br>**MILBANK LLP** |
| 3 | 55 Hudson Yards<br>New York, New York 10001-2163 |
| 4 | Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219 |
| 5 | |
| 6 | *and* |
| 7 | Gregory A. Bray (SBN 115367)<br>Thomas R. Kreller (SBN 161922) |
| 8 | **MILBANK LLP**<br>2029 Century Park East, 33rd Floor |
| 9 | Los Angeles, CA 90067<br>Telephone: (424) 386-4000<br>Facsimile: (213) 629-5063 |
| 10 | |
| 11 | *Counsel for the Official Committee*<br>*of Unsecured Creditors* |
| 12 | **STROOCK & STROOCK & LAVAN**<br>**LLP** |
| 13 | Mark A. Speiser (admitted *pro hac vice*) |
| 14 | (mspeiser@stroock.com)<br>Kenneth Pasquale (admitted *pro hac vice*) |
| 15 | (kpasquale@stroock.com)<br>Sherry J. Millman (admitted *pro hac vice*) |
| 16 | (smillman@stroock.com) |
| 17 | Harold A. Olsen (admitted *pro hac vice*)<br>(holsen@stroock.com) |
| 18 | 180 Maiden Lane New York, NY 10038-<br>4982 |
| 19 | Tel: (212) 806-5400<br>Facsimile: (212) 806-6006 |
| 20 | |
| 21 | *and* |
| 22 | **STROOCK & STROOCK & LAVAN**<br>**LLP** |
| 23 | David W. Moon (SBN 197711)<br>(dmoon@stroock.com) |
| 24 | 2029 Century Park East |
| 25 | Los Angeles, CA 90067-3086<br>Tel: (310) 556-5800 |
| 26 | Fax: (310) 556-5959 |
| 27 | *Counsel for Mizuho Bank, Ltd., in its* |
| 28 | *capacity as HoldCo Term Loan*<br>*Administrative Agent* |

Michael S. Stamer (admitted *pro hac vice*)
Ira S. Dizengoff (admitted *pro hac vice*)
David H. Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER &**
**FELD LLP**
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*and*

Ashley Vinson Crawford (SBN 257246)
**AKIN GUMP STRAUSS HAUER &**
**FELD LLP**
580 California Street
Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile: (415) 765-9501

*Counsel for the Ad Hoc Committee of Senior*
*Unsecured Noteholders of Pacific Gas and*
*Electric Company*

Andrew I. Silfen (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac*
*vice)*
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*and*

Aram Ordubegian (SBN 185142)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105
Telephone: (415) 757-5500
Facsimile: (415) 757-5501

*Counsel for BOKF, NA, in its capacity as*
*Indenture Trustee for the Utility Senior*
*Notes*

1

2    David M. Feldman (admitted *pro hac vice*)     Timothy Graulich (admitted *pro hac vice*)
     Matthew K. Kelsey (admitted *pro hac vice*)    timothy.graulich@davispolk.com
3    **GIBSON, DUNN & CRUTCHER LLP**               David Schiff  (admitted *pro hac vice*)
     200 Park Avenue                                david.schiff@davispolk.com
4    New York, NY 10166-0193                        Daniel E. Meyer (*pro hac vice* admission
     Telephone: (212) 351-4000                      pending)
5    Facsimile: (212) 351-4035                      daniel.meyer@davispolk.com
                                                    **DAVIS POLK & WARDWELL LLP**
6    *and*                                          450 Lexington Avenue
                                                    New York, New York 10017
7    Michael S. Neumeister (SBN 274220)             Telephone:  (212) 450-4000
8    Michelle Choi (SBN 313557)                     Facsimile:    (212) 701-5800
     **GIBSON, DUNN & CRUTCHER LLP**
9    333 South Grand Avenue                         *and*
     Los Angeles, CA 90071-3197
10   Telephone: (213) 229-7000                      Andrew D. Yaphe (SBN 274172)
11   Facsimile: (213) 229-7520                      andrew.yaphe@davispolk.com
                                                    **DAVIS POLK & WARDWELL LLP**
12   *and*                                          1600 El Camino Real
                                                    Menlo Park, California 94025
13   Matthew D. McGill (*pro hac vice*)             Telephone:  (650) 752-2000
       mmcgill@gibsondunn.com                       Facsimile:    (650) 752-2111
14   **GIBSON, DUNN & CRUTCHER LLP**
     1050 Connecticut Avenue, N.W.
15   Washington, DC 20036-5306                      *Counsel for Citibank N.A., as*
     Telephone:  202.955.8500                       *Administrative Agent for the*
16   Facsimile:  202.467.0539                       *Utility Revolving Credit Facility*

17   *Counsel for the Ad Hoc Committee of*
18   *Holders of Trade Claims*

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

Beguelin v. Volcano Vision, Inc. (In re Beguelin),
5
    220 B.R. 94 (B.A.P. 9th Cir. 1998) .......................................................................... 4, 5

6
Biggs v. Sec'y of the Cal. Dep't of Corrections & Rehabilitations,
7
    717 F.3d 678 (9th Cir. 2013) ................................................................................. 6

8
In re Dow Corning Corp.,
    244 B.R. 678 (Bankr. E.D. Mich. 1999) ................................................................ 2, 5
9

10
In re Energy Future Holdings, Inc.,
    540 B.R. 109 (Bankr. D. Del. 2013) ...................................................................... 6

11
Epicenter Partners, L.L.C. v. CPF Vaseo Ass'n (In re Epicenter Partners,
12
    L.L.C.),
    2018 WL 1354330 (B.A.P. 9th Cir. Mar. 15, 2018) .............................................. 7
13

14
Gen. Elec. Capital Corp. v. Future Media Prods.,
    547 F.3d 956 (9th Cir. 2008) ................................................................................. 8
15

16
Hamilton v. Elite of L.A., Inc. (In re Hamilton),
    584 B.R. 310 (B.A.P. 9th Cir. 2018) ..................................................................... 7

17
L& J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J
18
    Anaheim Assocs.),
    995 F.2d 940 (9th Cir. 1993) ................................................................................. 8
19

20
In re Martin,
    2003 WL 25273864 (Bankr. D. Idaho Feb. 28, 2003) ........................................... 5

21
Onink v. Cardelucci (In re Cardelucci),
22
    285 F.3d 1231 (9th Cir.), cert. denied, 537 U.S. 1072 (2002) .............................. *passim*

23
Pacifica L 51 LLC v. New Invs., Inc. (In re New Invs., Inc.),
24
    840 F.3d 1137 (9th Cir. 2016) ............................................................................... 8

25
Platinum Capital, Inc. v Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.),
    314 F.3d 1070 (9th Cir. 2002) ............................................................................... 7, 8
26

27
In re Robinson,
    567 B.R. 644 (Bankr. N.D. Ga. 2017) ................................................................... 4

28

Shoen v. Shoen (In re Shoen),
  1997 WL 1403808 (B.A.P. 9th Cir. 1997), aff'd, 175 F.3d 1150 (9th
  Cir. 1999) ................................................................................................... 3, 7

In re Wallace,
  2007 WL 321402 (Bankr. E.D. Wash. Jan. 29, 2007) .................................................. 4

In re Williams, Love, O'Leary & Powers, P.C.,
  2013 WL 4786322 (D. Or. Sept. 3, 2013) ............................................... 3, 4

In re Williams, Love, O'Leary & Powers, P.C.,
  Case No. 11-37021 (D. Or. Aug. 31, 2012), Docket No. 421 ...................................... 3

**Statutes**

11 U.S.C. § 103(b).................................................................................................. 2

11 U.S.C. § 506(b).................................................................................................. 2

11 U.S.C. § 726(a)(5) ........................................................................... *passim*

11 U.S.C. § 1124 .............................................................................................. 6, 7

11 U.S.C. § 1129 ........................................................................................ 5, 6, 7

11 U.S.C § 1325(a)(4) ........................................................................................ 4

28 U.S.C. § 1961(a).............................................................................................. 6

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

☐    Affects PG&E Corporation
☐    Affects Pacific Gas and Electric Company
☑    Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

**CONSOLIDATED REPLY BRIEF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND OTHER CREDITOR GROUPS AND REPRESENTATIVES REGARDING THE APPROPRIATE POSTPETITION INTEREST RATE PAYABLE ON UNSECURED CLAIMS IN A SOLVENT DEBTOR CASE**

Date:      December 11, 2019
Time:      10:00 a.m. (Pacific Time)
Place:      United States Bankruptcy Court
               Courtroom 17, 16th Floor
               450 Golden Gate Avenue
               San Francisco, CA 94102

The Creditor Groups[1] hereby respectfully reply[2] to the *Debtors' Brief Regarding Applicable Rate of Postpetition Interest on Allowed Unsecured Claims and Joinder of PG&E Shareholders* [Docket No. 4624] (the "<u>Debtors' Opening Brief</u>") as follows:

## <u>REPLY</u>

1.  The Debtors' Opening Brief relies entirely on the assertion that the Ninth Circuit's ruling in <u>Onink v. Cardelucci (In re Cardelucci)</u>, 285 F.3d 1231 (9th Cir.), <u>cert. denied</u>, 537 U.S. 1072 (2002) ("*Cardelucci*"), is an all-encompassing, controlling precedent governing ***any*** dispute regarding the rate of interest payable on unsecured claims in a solvent-debtor case. It is not, and it cannot be applied, as the Debtors suggest, without regard for the underlying facts or the direct applicability of other Bankruptcy Code provisions that were neither at issue in, nor mentioned (let alone considered) by, the Ninth Circuit in <u>Cardelucci</u>.

2.  The Debtors make no attempt to explain the remarkable proposition that the Ninth Circuit's narrow interpretation of section 726(a)(5) can be expanded to negate other provisions of the Bankruptcy Code, such as sections 103(b), 1124, and 1129(b), and the well-developed caselaw thereunder. Instead, the Debtors simply repeat, half a dozen times, that <u>Cardelucci</u> is "controlling" and "dispositive." This is a gross overstatement of the scope and the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the *Consolidated Opening Brief of the Official Committee of Unsecured Creditors and other Creditor Groups and Representatives Regarding the Appropriate Postpetition Interest Rate Payable on Unsecured Claims in a Solvent Debtor Case* [Docket No. 4634] (the "<u>Creditors' Opening Brief</u>").

[2] The Creditor Groups submit this *Consolidated Reply Brief* jointly pursuant to the Court's *Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues* [Docket No. 4540] (the "<u>Scheduling Order</u>"), and incorporate herein the reservations of rights made in their Opening Brief. The Creditor Groups and the Debtors agreed to the briefing schedule set forth in the Scheduling Order and to forego formal adversary proceedings in order to facilitate an early resolution of certain legal issues that may otherwise delay confirmation. The Creditor Groups however did not uniformly agree to joint briefing of the postpetition interest issue or to the relinquishment of individual appellate rights. Although the Scheduling Order recognizes certain appellate rights of "any aggrieved party," the Creditor Groups in an abundance of caution wish to expressly reserve the entirety of each constituent Creditor Group's individual appellate rights.

import of Cardelucci that ignores the facts at issue and the statutory context of the dispute in that case, and the express language that the Ninth Circuit employed in its decision.

3. The Debtors' sweeping assertion that Cardelucci "squarely" addresses the "very same" issues that confront this Court (Debtors' Br. at 6:14) is demonstrably incorrect, as is their contention that the Creditor Groups' arguments are "a disguised effort to overrule" Cardelucci (Debtors' Br. at 13:9-10). To the contrary, as explained in the Creditors' Opening Brief, the issues on which the Ninth Circuit ruled in Cardelucci are clearly distinct from those presented here. See Debtors' Opening Brief at ¶¶ 6-7, 30-32. The Creditor Groups merely ask the Court to recognize the limited ambit of the holding in Cardelucci – where the court interpreted the phrase "legal rate" in section 726(a)(5) and did not pronounce a sweeping new rule governing every circumstance in every bankruptcy case – by harmonizing it with other binding Ninth Circuit precedent.

4. The Debtors are also incorrect when they assert that there are but "two limited exceptions" to section 502(b)(2)'s disallowance of claims for unmatured interest[3]: section 506(b) and section 726(a)(5) (Debtors' Br. at 9:1-8). This is an entirely false construct. The first of these exceptions applies solely to oversecured claims,[4] while the second applies directly only in cases under chapter 7.[5] As the case law cited in the Creditors' Opening Brief makes abundantly

---

[3] Section 502(b)(2) is not applicable here. "While section 502(b)(2) provides that an allowed claim does not include interest unmatured as of the petition date, it does not prohibit the award of interest to creditors in all circumstances." See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 343 (Bankr. D. Del. 2004). This is made clear, particularly with respect to unimpaired claims, as a result of Congress's repeal of section 1124(3) of the Bankruptcy Code. In repealing section 1124(3), Congress explained that "[a]s a result of this change, if a plan proposed to pay a class of claims in cash in the full amount of the claims," without post-petition interest, "the class would be impaired, entitling creditors to vote for or against the plan of reorganization." Committee Report, 1994 U.S.C.C.A.N. at 3356-56.

[4] See 11 U.S.C. § 506(b) (providing for postpetition interest "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim . . . .").

[5] See In re Dow Corning Corp., 244 B.R. 678, 686 (Bankr. E.D. Mich. 1999) ("§ 726(a)(5) . . . applies *exclusively* to chapter 7 proceedings") (emphasis added); see also 11 U.S.C. § 103(b) ("Subsection I and II of chapter 7 of this title apply *only* in a case under such chapter" (emphasis added)). In chapter 11 cases, this provision applies only indirectly by reference to a hypothetical chapter 7 liquidation in section 1129(a)(7)(ii).

clear, however, these are not the only contexts in which payment of postpetition interest comes into play. The entitlement to postpetition interest in solvent **chapter 11** cases emanates from other provisions of the Bankruptcy Code. As set forth in the Creditors' Opening Brief, there are three separate (and independent) Bankruptcy Code provisions that require payment of postpetition interest to confirm a plan in a solvent-debtor chapter 11 case: section 1124 for **unimpaired** unsecured claims; section 1129(b) for **impaired** unsecured claims in a class that **rejects** a plan; and section 1129(a)(7) for **impaired** unsecured claims of rejecting creditors (even if they are in an **accepting** class). Creditors' Opening Brief at ¶¶ 13-15, 18-32. The Debtors' Opening Brief fails to distinguish among the statutory bases for the entitlement to postpetition interest in different circumstances, claiming, without analysis, that the <u>Cardelucci</u> decision does not mean what it says but instead provides an exclusive, unlimited "be all, end all."

5.     The Debtors themselves acknowledge that <u>Cardelucci</u> and its (limited) progeny do not address either section 1124 or section 1129(b) in any way.[6] In their brief, the Debtors state that neither <u>Cardelucci</u> nor <u>In re Williams, Love, O'Leary & Powers, P.C.</u>, 2013 WL 4786322 (D. Or. Sept. 3, 2013) ("<u>WLOP</u>") "relied in any way on provisions of the Bankruptcy Code **other than section 726(a)(5)**." Debtors' Opening Brief at 13:12-13 (emphasis added). While the Debtors' characterization is not entirely accurate,[7] the holdings in these cases are undoubtedly expressly limited to that single Bankruptcy Code provision. See <u>Cardelucci</u>, 285 F.3d at 1233 ("We conclude that **11 U.S.C. § 726(a)(5)** mandates application of the federal interest rate." (emphasis added)); *Letter Opinion re Debtor's Proposed Third Amended Chapter 11 Plan* at 5, <u>In re Williams, Love, O'Leary & Powers, P.C.</u>, Case No. 11-37021 (D. Or. Aug. 31, 2012), Docket No. 421, attached hereto as **Exhibit A** (the "<u>WLOP Letter-Decision</u>") (explaining that the

---

[6]     Section 1129(a)(7) is not applicable to the facts of these cases.

[7]     <u>See</u> *infra* ¶ 7.

sole issue before the court was "the meaning of 'the legal rate' of interest *as used in § 726(a)(5)*." (emphasis added)).

6.     Moreover, in reaching its decision in Cardelucci, the Ninth Circuit relied heavily on Beguelin v. Volcano Vision, Inc. (In re Beguelin), 220 B.R. 94 (B.A.P. 9th Cir. 1998) ("Beguelin"), which is *also* expressly limited to section 726(a)(5).  See id. at 101 ("We hold that 'interest at the legal rate' *under § 726(a)(5)* is measured by the federal judgment rate" (emphasis added)).[8]  That is not surprising as all three cases (Beguelin, Cardelucci, and WLOP) dealt with *impaired* claims and thus the only way that the creditors in those cases could be entitled to postpetition interest – other than by forcing a cramdown under section 1129(b), which the creditor neglected to argue in Cardelucci[9] – was through the application of section 1129(a)(7) and its "importation" of the "legal rate" prescribed by section 726(a)(5).

7.     The Debtors assert that section 726(a)(5) prescribes the interest rate in *all* circumstances, simply ignoring the clear statutory scheme and attempting to de-couple sections 1129(a)(7) and 726(a)(5) by alleging that neither Cardelucci nor WLOP "made any mention of the best interest test" (Debtors' Br. at 13:13) – supposedly applying section 726(a)(5) in a chapter 11 case directly.  That, however, is not the case.  As discussed above, the Cardelucci court heavily relied on Beguelin, in fact, going as far as explicitly "adopt[ing]" its "reasoning."  285 F.3d at 1234.  And Beguelin court did, in fact, expressly base its "reasoning" on the best interest of creditors test as set forth in section 1325(a)(4) of the Bankruptcy Code, noting that it is "virtually

---

[8]     Similarly, the language the Debtors cite to in Collier (Debtors' Br. at 9:14-16) is expressly limited to section 726(a)(5).  None of the other cases cited by the Debtors is to the contrary: In re Robinson, 567 B.R. 644 (Bankr. N.D. Ga. 2017), is a chapter 7 case, while In re Wallace, 2007 WL 321402 (Bankr. E.D. Wash. Jan. 29, 2007), was decided based on the "best interest of creditors" test.

[9]     See Cardelucci, *Appellee's Opening Brief*, 2001 WL 34091272, at * 17 ("At the confirmation hearing, the [creditor] elected to rely solely on §726(a)(5) as made applicable by § 1129(a)(7)(ii) and, subject to a reservation of rights to appeal the bankruptcy court's determination on that issue, voted to accept the plan.  Accordingly, *the only issue preserved for appeal is the meaning of 'interest at the legal rate as used in §726(a)(5)*.  That meaning should not be distorted simply because the [creditor] failed to consider the potential benefit of forcing a cramdown under § 1129(b)." (emphasis added)).

identical" to section 1129(a)(7). <u>Beguelin</u>, 220 B.R. at 99. Furthermore, the WLOP court *expressly* based its decision on section 1129(a)(7). <u>See</u> WLOP Letter-Decision at 3. These cases illustrate the statutory link between section 726(a)(5) and 1129(a)(7) – the best interests test of section 1129(a)(7) assures that dissenting creditors receive no less under a chapter 11 plan than what they would receive under chapter 7, including, in a solvent chapter 7 case, interest "at the legal rate." However, neither the statute nor applicable case law invokes section 726(a)(5) in evaluating entitlement to postpetition interest under sections 1124 or 1129(b). Unlike section 726(a)(5), sections 1124 and 1129(b) do not reference an applicable interest rate. Under such circumstances, Ninth Circuit law requires application of state law interest, either by contract or statute. <u>See, e.g.</u>, <u>Shoen v. Shoen (In re Shoen)</u>, 1997 WL 1403808 (B.A.P. 9th Cir. 1997), <u>aff'd</u>, 175 F.3d 1150, 1165 (9th Cir. 1999).

8. This limited reach of <u>Cardelucci</u> has been recognized by other courts. For instance, in <u>In re Martin</u>, 2003 WL 25273864, *5-6 (Bankr. D. Idaho Feb. 28, 2003), the court flatly rejected an attempt to extend <u>Cardelucci</u> to other confirmation requirements of section 1129, stating that, while "[s]ection 726(a)(5) addresses the allowance of interest to unsecured creditors in . . . solvent chapter 7 cases," it cannot be used as "controlling" the interpretation of other Bankruptcy Code provisions, including section 1129(b).

9. Indeed, <u>Cardelucci</u>'s mandate that, to satisfy section 726(a)(5), postpetition interest must be paid at the federal judgment rate does not negate the fact that a chapter 11 plan must satisfy *all* Bankruptcy Code requirements for confirmation, including section 1124 and, in a cramdown, section 1129(b). Thus, the <u>Dow Corning</u> court acknowledged that, although "[s]ection 726(a)(5) is pertinent to chapter 11 . . . for purposes of determining compliance with 11 U.S.C. § 1129(a)(7)(A)(ii)'s 'best interest of creditors' test, . . . it does not necessarily follow from this that the creditor loses whatever right it may have to contract-rate interest" because such right is

"*independent*" as evidenced by section 1129(b). 270 B.R. at 405-06 (emphasis added). To the contrary, "a proposed plan's compliance with §§ 1129(a)(7)(A)(ii)/726(a)(5) does not vitiate a creditor's right to interest at the contract rate. Such a right is preserved until such time as the plan is confirmed pursuant to § 1129(b)." Id. at 406 (internal citations omitted).[10] Therefore, creditors have an *independent* entitlement to having all plans comply with all applicable confirmation requirements – such an entitlement in no way undermines Cardelucci's holding.

10.     The Debtors' blanket assertion that Cardelucci's holding "is not in any way limited to impaired claims, contingent on application of the best interests, or qualified in any other respect" (Debtors' Br. at 13:18-19) is fundamentally incorrect and nothing short of astonishing. Clearly, every holding is necessarily limited by the exact legal issues before the court. Had it been otherwise, the important distinction between a "holding" and "*dicta*" would disappear. That would be unacceptable under clear Ninth Circuit precedent. See, e.g., Biggs v. Sec'y of the Cal. Dep't of Corrections & Rehabilitations, 717 F.3d 678, 692 (9th Cir. 2013) (explaining that where issues in a prior case were different from those confronting the court, any language that may appear to apply to the case before the court was mere *dicta* and thus not binding).

11.     The Debtors are asking the Court to make wholly unwarranted inferences about the meaning of Cardelucci in relation to sections 1124 and 1129(b) of the Bankruptcy Code based on the fact that the Cardelucci court never mentioned either of them. This conclusion is starkly illogical, since such omissions denote solely the lack of applicability of those provisions to the precise legal question before the Ninth Circuit. The only issue before the Ninth Circuit in

---

[10]  See also In re Energy Future Holdings, Inc., 540 B.R. 109, 113-114, 123 (Bankr. D. Del. 2013) (acknowledging that "neither section 726(a)(5) nor 1129(a)(7) apply to unimpaired creditors" and stating that neither section "either singularly or in tandem serve to create a universal limitation on the payment of post-petition interest on unsecured debt" and that section 726(a)(5) "does not create a general rule establishing the appropriate rate of post-petition interest").

6

Cardelucci was the rate of interest to be paid *under section 726(a)(5)*.[11]  Cardelucci did not mention section 1124 or 1129(b) because neither was at issue in that case.

12.     The Debtors also mistakenly rely on Cardelucci to assert that "[i]n bankruptcy, an allowed claim becomes a federal judgment and therefore entitles the holder of the judgment to an award of interest pursuant to federal statute."  Debtors' Opening Brief at 6.  Treating an allowed claim in bankruptcy as "akin to" a federal judgment conflicts with principles of federal preemption.  In the Ninth Circuit, absent federal preemption, *state law* governs the accrual of interest on a claim.  See, e.g., Hamilton v. Elite of L.A., Inc. (In re Hamilton), 584 B.R. 310, 323 (B.A.P. 9th Cir. 2018); Shoen, 1997 WL 1403808 ("The Ninth Circuit applies applicable state law interest rates absent federal preemption . . . .  Bankruptcy is no different.").[12]  As discussed above, section 726(a)(5) is only applicable in chapter 11 for the purposes of the "best interests of creditors" test with respect to impaired claims.  As a result, section 726(a)(5) cannot possibly provide a ground for federal preemption in the context of *unimpaired* claims.[13]

13.     The Creditor Groups are not inviting this Court to write on a blank slate when determining the applicable postpetition interest rate under sections 1124 and 1129(b).  The Ninth Circuit had many occasions to outline the rights of unimpaired creditors, as well as the rights of creditors generally, to postpetition interest in solvent-debtor chapter 11 cases outside the context

---

[11]  "Appellants Willem and Marsha Onink appeal the district court's application of the federal interest rate as defined by 28 U.S.C. § 1961(a) to an award of post-petition interest pursuant to 11 U.S.C. § 726(a)(5)."  285 F.3d at 1233.

[12]  The AHC, and BOKF, NA, in its capacity as Indenture Trustee for the Utility Senior Notes, take no position with respect to the appropriate rate of interest where a claim is based on a contract that does not expressly provide for a particular rate, or is not based on a contract at all, and reserve all rights on that issue.

[13]  Notably, even after Cardelucci, the Ninth Circuit affirmed confirmation of a plan that awarded postpetition interest on allowed unsecured claims at rates greater than the federal judgment rate.  See Platinum Capital, Inc. v Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1073 (9th Cir. 2002).  By so doing, the Ninth Circuit, at least implicitly, rejected the mistaken notion that an allowed claim in a bankruptcy case is akin to a federal judgment (and, therefore, must receive postpetition interest at the federal judgment rate).

7

of the best interests test – without ever holding that the federal judgment rate should apply.  See, e.g., Epicenter Partners, L.L.C. v. CPF Vaseo Ass'n (In re Epicenter Partners, L.L.C.), 2018 WL 1354330, at *7 (B.A.P. 9th Cir. Mar. 15, 2018) (allowing negotiated rate of postpetition interest); Pacifica L 51 LLC v. New Invs., Inc. (In re New Invs., Inc.), 840 F.3d 1137, 1142 (9th Cir. 2016) (stating that "[f]or a debtor to render . . . a creditor 'unimpaired' and unable to object to the debtor's plan, the debtor must cure the default but may not 'otherwise alter the . . . contractual rights' of the creditor," including the contractual right to "post-default interest" (internal citations omitted)); Gen. Elec. Capital Corp. v. Future Media Prods., 547 F.3d 956 (9th Cir. 2008) (holding that nothing prohibited a creditor from collecting interest at default rate specified in contract); Platinum Capital v. Sylmar Plaza, 314 F.3d at 1073 (affirming confirmation of a chapter 11 plan that paid unimpaired lender postpetition interest at contract rate); L& J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.), 995 F.2d 940, 942 (9th Cir. 1993)  (finding that Congress defined impairment "in the broadest possible terms" and "any alternation of rights constitutes impairment").  Viewed together, and as explained more extensively in the Creditors' Opening Brief, the implications of these decisions are crystal clear.  First, the federal judgment rate does *not* apply universally to awards of postpetition interest.  Second, unimpairment should be strictly construed to require interest to be paid to unsecured creditors at rates established by state law whether by contract or statute.

## **CONCLUSION**

WHEREFORE, based on the foregoing, the Creditor Groups respectfully request that the Court enter an Order requiring that, to the extent the Debtors are determined to be solvent, postpetition interest on unsecured claims under any plan of reorganization that will be confirmed in these cases must be determined by the holders' state law rights.

8

DATED: November 22, 2019

**MILBANK LLP**

 /s/ Thomas R. Kreller
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*

**STROOCK & STROOCK & LAVAN LLP**

/s/ Mark A. Speiser
MARK A. SPEISER

*Counsel for Mizuho Bank, Ltd., in its capacity as HoldCo Term Loan Administrative Agent*

**ARENT FOX LLP**

/s/ Aram Ordubegian
ARAM ORDUBEGIAN
ANDREW I. SILFEN
BETH M. BROWNSTEIN

*Counsel for BOKF, NA, in its capacity as Indenture Trustee for the Utility Senior Notes*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

/s/ Ashley Vinson Crawford
ASHLEY VINSON CRAWFORD
MICHAEL S. STAMER
IRA S. DIZENGOFF
DAVID H. BOTTER
ABID QURESHI

*Counsel for the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ David M. Feldman
DAVID M. FELDMAN
MATTHEW D. MCGILL
MATTHEW K. KELSEY

*Attorneys for the Ad Hoc Committee of Holders of Trade Claims*

**DAVIS POLK & WARDWELL LLP**

/s/ Timothy Graulich
TIMOTHY GRAULICH
DAVID SCHIFF
DANIEL E. MEYER
ANDREW D. YAPHE

*Counsel for Citibank N.A., as Administrative Agent for the Utility Revolving Credit Facility*

# **Exhibit A**

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
BETHANY COLEMAN-FIRE, LAW CLERK

August 31, 2012

**VIA ECF**

Albert N. Kennedy
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Ave.
Portland, OR  97204

Heather A. Brann
Gary U. Scharff
521 SW Morrison St. Ste. 1300
Portland, OR  97205

> Re: <u>Williams, Love, O'Leary, & Powers, P.C.</u>,
>     Case No. 11-37021-elp11
>     Objection to Confirmation

Dear Counsel:

At the close of the August 10, 2012, hearing on confirmation of debtor's proposed chapter 11 plan, I indicated that I would rule in writing.  The objecting creditor, Heather Brann, advised the court that she had two objections remaining after certain amendments to the plan and confirmation order language were worked out before and during the hearing.  The purpose of this letter is to give you my ruling on those two remaining issues: (1) debtor's failure to provide for alternative treatment for Brann's claims for Tier 2 and Tier 3 fees in the event she prevails on appeal or in the pending adversary proceeding, and (2) debtor's use of the federal judgment interest rate rather than the contract rate for Brann's contract claims.  For the reasons explained below, Brann's objections are overruled and debtor's plan will be confirmed as modified per the discussion at the confirmation hearing.

The court shall confirm a chapter 11 plan if the requirements of § 1129(a) are met.  Although Brann raised various objections to confirmation based on a number of different provisions in § 1129(a), by the end of the confirmation hearing

her objections were reduced to the two mentioned above.  I will discuss each in turn.

1.  <u>Debtor's failure to provide for alternative treatment of Brann's claims for Tier 2 and Tier 3 fees in the event of her success on appeal or in the pending adversary proceeding</u>

Brann asserts that her claims for payment for work she did on Pain Pump cases are secured by an attorney's lien.  Following a hearing, I held that Brann does not have an attorney's lien for those fees.  Thus, her claims for fees on Pain Pump cases are unsecured.

Brann has appealed the judgment resulting from the attorney's lien ruling, and has asserted claims in Adversary Proceeding No. 11-3279 that, if successful, will in Brann's view require reclassification of her unsecured claims as secured.

Debtor's plan treats Brann's claims for fees as general unsecured claims.  The plan does not provide for any alternative treatment of the claims in the event Brann is successful on appeal or in the adversary proceeding.

Brann argues that debtor's failure to provide for alternative treatment (or to allow for modification of the plan) is fatal to confirmation of the plan.  She asserts that debtor's failure to preserve her right to alternative treatment demonstrates that debtor's plan has not been proposed in good faith as required by § 1129(a)(3).

Brann does not point to any provision of the Bankruptcy Code that requires debtor to preserve rights she is pursuing on appeal or through litigation to obtain secured status, and I am not aware of any such requirement.  This court has ruled that Brann does not have an attorney's lien on the proceeds of settlements from Pain Pump cases.  Debtor's treatment of Brann's claims asserting her right to payment for the Pain Pump cases as unsecured is consistent with that ruling.

The fact that a final judgment adjudicating particular issues is on appeal, or that a creditor has asserted alternative theories for transforming an unsecured claim into a secured claim, does not mean that a debtor must provide for alternative treatment of the claim in the event of the creditor's success.

Albert N. Kennedy
Heather A. Brann
Gary U. Scharff
August 31, 2012
Page 3

There is no provision of the Bankruptcy Code, in particular in
§ 1129(a), that includes such a requirement.

Further, the fact that the debtor's plan treats claims as
unsecured that this court has determined to be unsecured is not
demonstrative of lack of good faith.

I overrule Brann's objection to the plan that is based on
debtor's failure to provide for alternative treatment of Brann's
fee claims in the event of success on appeal or in the adversary
proceeding.[1]  That treatment does not violate the Code or
demonstrate lack of good faith.

2.    Interest rate on unsecured claims

Second, Brann argues that the plan violates
§ 1129(a)(7)(A)(ii), the best interest of creditors test,[2] by
providing that postpetition interest will be paid on her contract
claims at the federal judgment interest rate rather than at the
rate provided in her contract with debtor, which is the state
judgment interest rate of 9 percent.

In chapter 11, a non-accepting holder of an impaired claim
is entitled to receive a value not less than what the creditor
would receive in a chapter 7 liquidation.  § 1129(a)(7)(A)(ii).
In a chapter 7 liquidation, the general rule is that unsecured
creditors are not entitled to postpetition interest on their

---

[1]    Sterling Savings Bank voted in favor of debtor's
proposed plan.  Any requirement that debtor must provide Brann
with alternative treatment in case she prevails on appeal or in
the adversary proceeding would directly impact Sterling Savings
Bank.  Although this impact does not provide a basis for
overruling Brann's objection, it demonstrates the complexity
debtor would face if it were required to accommodate Brann's
"what if" objection.  Providing for such a contingency might
cause Sterling Savings Bank to change its vote in favor of the
plan, thereby raising a new set of legal and factual issues for
debtor.

[2]    Brann may also be arguing that use of the federal
judgment interest rate shows a lack of good faith.  Because
debtor is correct about the interest rate, its use in the plan
cannot demonstrate lack of good faith.

Albert N. Kennedy
Heather A. Brann
Gary U. Scharff
August 31, 2012
Page 4

claims.  See § 502(b)(2) (disallow claim to extent it is for
unmatured interest).  An exception to that rule applies when the
debtor is solvent.  § 726(a)(5).  In that case, an unsecured
creditor is entitled to postpetition interest "at the legal
rate[.]"  Id.  "At the legal rate" means the federal judgment
interest rate, not the contract or state judgment interest rate.
In re Cardelucci, 285 F.3d 1231 (9th Cir. 2002).

      Brann argues that Cardelucci does not apply to her contract
claims because that case involved a prepetition tort judgment,
not a contract claim.  Because Brann's contract calls for
interest at the state judgment interest rate, which is 9 percent,
she argues that she is entitled to postpetition interest at 9
percent.

      Cardelucci did involve a prepetition tort judgment.  The
judgment debtor filed chapter 11, and sought to pay postpetition
interest at the federal judgment interest rate rather than the
state judgment interest rate.  However, the court considered the
more general question of what interest rate applies to the claim
of an unsecured creditor when the debtor is solvent:

      Where a debtor in bankruptcy is solvent, an unsecured
      creditor is entitled to "payment of interest at the legal
      rate from the date of the filing of the petition" prior to
      any distribution of remaining assets to the debtor.  11
      U.S.C. § 726(a)(5).  The question presented by this appeal
      is whether "interest at the legal rate" means a rate fixed
      by federal statute or a rate determined either by the
      parties' contract or state law.

285 F.3d at 1234.

      After considering the statutory language, the court
concluded that "the legal rate" as used in § 726(a)(5) means the
federal judgment interest rate.  The court also noted that using
this rate "promotes uniformity within federal law," explaining
that "[a]s of the date of the filing of the petition, creditors
hold a claim, similar to a federal judgment, against the estate,
the payment of which is only dependent upon completion of the
bankruptcy process."  Id. at 1235.  "In bankruptcy, an allowed
claim becomes a federal judgment and therefore entitles the
holder of the judgment to an award of interest pursuant to
federal statute."  Id.  Section 726(a)(5) applies to unsecured

claims in general, whether those claims arise out of contract or
tort.

Brann further argues that <u>Cardelucci</u> is inconsistent with
<u>United Savings Assoc. of Texas v. Timbers of Inwood Forest
Assocs., Ltd.</u>, 484 U.S. 365 (1988), which said that, when a
debtor is solvent, "§ 726(a)(5) provides that postpetition
interest is allowed on unsecured claims."  484 U.S. at 379.  The
fact that the statute requires payment of postpetition interest
does not tell us what the rate of interest to be paid should be.
That question is answered by the language of § 726(a)(5),
requiring payment at "the legal rate."  Nothing in <u>Timbers of
Inwood</u> interprets "the legal rate."  It simply did not address
the issue addressed in <u>Cardelucci</u> and that is the subject of
Brann's objection here.

Brann also argues that <u>Cardelucci</u> has been overruled by
<u>Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.</u>, 549
U.S. 443 (2007), and <u>Gen'l Elec. Capital Corp. v. Future Media
Productions, Inc.</u>, 536 F.3d 969 (9th Cir. 2008).  I disagree.
The issues in those cases differ from the one here, which is the
meaning of "the legal rate" of interest as used in § 726(a)(5).
The point of both of those cases, as relevant here, is that
creditors' rights are determined under state law, unless some
provision of the Bankruptcy Code provides otherwise.  With regard
to the postpetition interest rate on the claims of unsecured
creditors, the Bankruptcy Code provides otherwise.  Unsecured
creditors are generally denied unmatured interest on their
claims, § 502(b)(2), unless the debtor is solvent, in which case
unsecured creditors are entitled to interest "at the legal rate."
§ 726(a)(5).  Nothing in the cases Brann cites supports a
definition of "the legal rate" as other than the federal judgment
interest rate.

Therefore, I will overrule Brann's interest rate objection
to debtor's plan.

3.   <u>Other confirmation requirements</u>

Brann's other objections to debtor's proposed plan were
resolved before or at the confirmation hearing.  However, even in
the absence of an objection to confirmation, the court is
required to satisfy itself that the requirements of confirmation
have been met.  <u>In re Ambanc La Mesa Ltd. P'ship</u>, 115 F.3d 650,

Albert N. Kennedy
Heather A. Brann
Gary U. Scharff
August 31, 2012
Page 6

653 (9th Cir. 1997); <u>In re Perez</u>, 30 F.3d 1209, 1213 (9th Cir. 1994).

The court has considered the requirements for confirmation set out in § 1129(a) and finds that all requirements have either been met or do not apply.

Brann spent a good deal of her briefing and confirmation hearing challenging debtor's good faith in proposing the plan, seeking to support her objection under § 1129(a)(3). I am not convinced by either Brann's argument or the testimony elicited in the hearing that debtor's plan was not proposed in good faith. Therefore, to the extent Brann's good faith objection is based on something other than the issues discussed in paragraphs 1 and 2 above, the objection is overruled.

4.    <u>Conclusion</u>

Brann's objections to confirmation are overruled. Debtor's Third Amended Plan, as modified by language discussed at the confirmation hearing, will be confirmed. Mr. Kennedy should submit the confirmation order after presenting it to Brann and her counsel for approval as to form.

Very truly yours,

*Elizabeth L Perris*

ELIZABETH L. PERRIS
Bankruptcy Judge