

Signed and Filed: November 26, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br><br>Date: December 4, 2019<br>Time: 10:00 AM<br>Place: Courtroom 17<br>       450 Golden Gate Ave.<br>       16th Floor<br>       San Francisco, CA |

**TENTATIVE CONSIDERATIONS ON OBJECTIONS TO AMENDED AND RESTATED RESTRUCTURING SUPPORT AGREEMENT**

On December 4, 2019, the court will conduct a continued hearing on the proposed Amended and Restated Restructuring Support Agreement ("RSA"). At that hearing the court will consider further oral argument in support of or opposition to the RSA. The Debtors, the Ad Hoc Group of Subrogation Claim Holders ("Subro Group"), and others supporting the RSA will have

-1-

one hour to be divided as their counsel agree, including time for rebuttal. The Official Committee of Tort Claimants ("TCC"), the Official Committee of Unsecured Creditors and others opposing the RSA will also have one hour for oral argument, to be divided as their counsel agree.

In anticipation of that hearing the court has identified significant issues that should be addressed by the parties. The court has relied on the Subro Group's Statement of the Ad Hoc Group of Subrogation Claim Holders (Dkt. No. 4644), and in particular the Objection Response Chart filed concurrently therewith (Dkt. No. 4644-1).

The court sets forth its present views about several of those objections using the same categories and same definitions.

I. *Issues Addressed by Amended and Restated RSA*

> #1 and #2 - Appear to be resolved satisfactorily.
>
> #3 - The Subro Group and the Debtors appear duty bound to negotiate "together" with other creditor constituencies or in mediation. The court does not believe that is a constructive approach and believes that portion of the RSA should be disapproved.
>
> #4 - This portion of the RSA addresses a situation that may exist "provided…the Bankruptcy Court determines Debtors are insolvent…." As a practical matter the court may not be able to make such a determination without the initiation of a contested matter, opposition thereto, etc. The court believes the more appropriate outcome would be that the Debtors, if they concede that they are insolvent, would terminate the RSA. Following any such

-2-

determination, there would be no precondition that any such revised plan would not – or would – subordinate the Subro Group claims to the IP Claims.

#5 and #6 - Appear to be satisfactory resolutions of the pending objections.

#7 - Comments regarding Bankruptcy Court determination of insolvency are much the same as indicated above in #4.

#8 - A five business day notice procedure for an amendment to the RSA appears to be too short.

#9 - The parties should address what would happen if a submitter of a ballot did not indicate either an opt-in or an opt-out to the release provisions. Is "opt-out" the default?

In that same objection, the explanation appearing at page 7 of 19 appears satisfactory.

II. *Objections Unaddressed by Clarifying Changes to the Amended RSA and Revised Plan*

   **I. Why Approval of the Amended RSA Should Not Be Delayed due to Cash Considerations or Other Proceedings**

#1 - The court is of the view that the question of whether the $11 billion payment to the Subro Group would force the IP parties to take non-cash consideration is a plan issue that need not be dealt with in consideration of the RSA.

#2 - The court does not share the view that approval of the RSA will undermine the mediation process.

#3 and #4 - The court is satisfied with the explanation provided by the Subro Group.

-3-

### II. Why the Amended RSA Does Not Violate the Rights of Individual Insured Parties

#5 - The court will not address the question of whether the TCC is estopped as the Subro Group's explanation is argumentative. It is correct, however, that the RSA is predicated upon confirmation of a plan that must comply with AB 1054. Further, the made-whole doctrine should be considered on a claim-by-claim basis and perhaps needs to be resolved independently of the RSA determination through AP 19-3053.

#6 and #7 - The court agrees with the Subro Group that insurers can pursue and settle claims independently of those of their insureds. Further, 11 U.S.C. § 509 does not appear to be implicated although applicable state law does.

#8 - The court rejects the contention that the RSA violates the Subro Group's obligations and duties of good faith under California law or California insurance regulations.

### III. Why the Amended RSA Releases are Permissible

#9 - The court agrees with the Subro Group. It makes no comment regarding TCC proposed plan's inclusion of third party releases. It also agrees with the Subro Group that the Settlement Payment Condition is not coercive and essentially does leave the parties the same choice absent approval of the RSA. Hard choices are still choices, not coercion.

//

### IV. Why Specific Amended RSA and Form of Release Provisions are Permissible

#10 - See comment above (I, #4) regarding the consequence of Debtors being determined to be insolvent.

#11 - The court agrees that the Subro Group can make a strategic decision about voting for or against the plan. Either way, AB 1054 says what it says if Debtors are unable to emerge by its deadline. The consequences of a $20 billion claim asserted by the Subro Group need not be addressed at this point.

#12 - The court agrees with the Subro Group that the RSA can include common features found in other restructuring support agreements.

#13 and #14 - The RSA releases appear to be symmetrical and reciprocal and need not be disapproved.

#15 - The notion of including consents by fire victims as part of a confirmation order implicates the adequacy of any disclosure statement. The court prefers a simple statement included in any ballot submitted to and returned by the fire victims.

#16 – The court has no comment.

### V. The Applicable Standard of Review is Deferential to the Debtors' Business Judgment

#17 - While *A & C Properties* is generally the authority to test the reasonability of a settlement under Fed. R. Bankr. P. 9019, the court is inclined to agree with the TCC that scrutiny under the "fair and equitable" test appears appropriate in this case.

//

-5-

### VI. Remaining Objections Should be Overruled

#18 and #19 - The exigencies of this complex case are such that the court is not worried that approval of the RSA constitutes an impermissible *sub rosa* plan, nor does it constitute impermissible solicitation under 11 U.S.C. § 1125.

**END OF TENTATIVE CONSIDERATIONS**