1 | ESTELA O. PINO, SBN 112975
(epino@epinolaw.com)
2 | **PINO & ASSOCIATES**
1520 Eureka Rd., Suite 101
3 | Roseville, CA 95661
Telephone: (916) 641-2288
4 |
5 | Attorneys for the Plaintiffs' Executive Committee appointed by the Superior Court of the
State of California, in and for the County of Alameda, in Case No. RG16843631 and
6 | related cases.
7 |
8 | THE UNITED STATES BANKRUPTCY COURT
IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
9 | SAN FRANCISCO DIVISION

| | |
|---|---|
| 10  **In re:** | ) Case Nos. 19-30088 (DM) |
| 11  **PG&E CORPORATION,** | )<br>) Chapter 11 |
| 12 | )<br>) **MEMORANDUM OF POINTS AND** |
|   -and- | ) **AUTHORITIES IN SUPPORT OF** |
| 13 | ) **MOTION FOR RELIEF FROM** |
| 14  **In re:** | ) **AUTOMATIC STAY TO PERMIT THE**<br>) **COURTS OF THE STATE OF** |
| **PACIFIC GAS AND ELECTRIC** | ) **CALIFORNIA TO CONDUCT A JURY** |
| 15  **COMPANY,** | ) **TRIAL AND RELATED PRETRIAL AND** |
| ☐ | ) **POST TRIAL MATTERS IN** |
| 16         Debtors. | ) **CONNECTION WITH THE GHOST** |
| ☒ | ) **SHIP FIRE CASES** |
| 17        Affects PG&E Corporation | ) |
|         Affects Pacific Gas and Electric | ) DATE: December 17, 2019 |
| 18        Company | ) TIME: 10:00 a.m. |
|         Affects both Debtors | ) PLACE: Courtroom 17 |
| 19 | )         450 Golden Gate Avenue, |
| 20  *\* All papers shall be filed in the lead case,* | )         16th Fl. |
| *No. 19-30088(DM)* | )         San Francisco, California |
| 21 | )<br>) JUDGE: Hon. Dennis Montali |
| 22 | ) |
| 23 | ) OBJECTION DEADLINE: **December**<br>) **12, 2019 (4:00 P.M. Prevailing Pacific** |
| 24 | ) **Time)** |
| 25 | |
| 26 | |

**TABLE OF CONTENTS**

I. JURISDICTION AND VENUE.................................................................5

II. RELIEF SOUGHT.............................................................................5

III. EVIDENTIARY SUPPORT FOR THE MOTION....................................6

IV. STATEMENT OF FACTS..................................................................6

      A. GHOST SHIP FIRE....................................................................6

      B. STATE COURT LITIGATION.......................................................6

      C. PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY'S

      BANKRUPTCY CASE AND EVENTS THEREAFTER...........................9

      D. CURRENT STATUS..................................................................10

V. ARGUMENT...................................................................................11

      A. PRELIMINARY STATEMENT......................................................11

      B. BURDEN OF PROOF................................................................12

      C. CURTIS FACTORS...................................................................13

            1. WHETHER THE RELIEF WILL RESULT IN A PARTIAL OR COMPLETE RESOLUTION OF THE ISSUES.........................................14

            2. THE LACK OF ANY CONNECTION WITH OR INTERFERENCE WITH THE BANKRUPTCY CASE......................................................15

            3. WHETHER THE FOREIGN PROCEEDING INVOLVES THE DEBTORS AS A FIDUCIARY..................................................................16

            4. WHETHER A SPECIALIZED TRIBUNAL HAS BEEN ESTABLISHED TO HEAR THE PARTICULAR CAUSE OF ACTION AND WHETHER THAT TRIBUNAL HAS THE EXPERTISE TO HEAR SUCH CASES.....16

            5. WHETHER THE DEBTORS' INSURANCE CARRIER HAS ASSUMED FULL FINANCIAL RESPONSIBILITY FOR DEFENDING THE LITIGATION...........................................................................16

            6. WHETHER THE ACTION ESSENTIALLY INVOLVES THIRD PARTIES, AND THE DEBTORS FUNCTION ONLY AS A BAILEE OR CONDUIT FOR THE GOODS OR PROCEEDS IN QUESTION...........17

            7. WHETHER THE LITIGATION IN ANOTHER FORUM WOULD PREJUDICE THE INTERESTS OF OTHER CREDITORS, THE CREDITORS' COMMITTEE AND OTHER INTERESTED PARTIES....17

8. WHETHER THE JUDGMENT CLAIM ARISING FROM THE FOREIGN ACTION IS SUBJECT TO EQUITABLE SUBORDINATION UNDER *SECTION 510(c)*....................................................................................18

9. WHETHER MOVANTS' SUCCESS IN THE FOREIGN PROCEEDING WOULD RESULT IN A JUDICIAL LIEN AVOIDABLE BY THE DEBTOR UNDER *SECTION 522(f)*....................................................................18

10. THE INTERESTS OF JUDICIAL ECONOMY AND THE EXPEDITIOUS AND ECONOMICAL DETERMINATION OF LITIGATION FOR THE PARTIES.............................................................................18

11. WHETHER THE FOREIGN PROCEEDINGS HAVE PROGRESSED TO THE POINT WHERE THE PARTIES ARE PREPARED FOR TRIAL...................................................................................................18

12. THE IMPACT OF THE STAY ON THE PARTIES AND THE "BALANCE OF HURT."...........................................................................19

VI. CONCLUSION........................................................................................20

TABLE OF AUTHORITY

CASE LAW

*Truebro, Inc. V. Plumberex Speciality Prods., Inc. (In re Plumberex Speciality Prods., Inc.),* 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004)...................................................12, 19

*In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984)...................................................13, 14

*In re Roger,* 539 B.R. 837, 852-853 (C.D. Cal. 2015)...................................................19

*In re Westwood Broadcasting, Inc.,* 35 B.R. 47, 48 (Bankr. D. Haw 1983).................19


FEDERAL STATUTORY AUTHORITY

28 U.S.C. § 1334(b)...................................................5

28 U.S.C. § 157(b)(2)(G)...................................................5

28 U.S.C. § 1409 (a)...................................................5

11 U.S.C. § 362(d)(1)...................................................11

11 U.S.C. § 362(g)...................................................12

The Plaintiffs' Executive Committee appointed by the Superior Court of the State of California, County of Alameda, in Case No. RG16843631 and related cases (the "Ghost Ship Executive Committee"), by and through its attorneys of record, does hereby respectfully submits the following Memorandum of Points and Authorities in Support of Motion for Relief from the Automatic Stay to Permit the Courts of the State of California to Conduct a Jury Trial and Related Pretrial and Post Trial Matters in Connection with the Ghost Ship Fire Cases (the "Motion"), pursuant to 11 U.S.C. Section 362(d)(1), for cause.

## I.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).

2. This Motion, which seeks relief from the automatic stay, is a core matter pursuant to 28 U.S.C. § 157(b)(2)(G).

3. Venue is proper before this Court pursuant to 28 U.S.C. Section § 1409(a).

## II.

## RELIEF SOUGHT

The Motion seeks the entry of an order granting relief from the automatic stay to allow the Ghost Ship Plaintiffs to proceed on their wrongful death, survival, personal injury, and related property damage claims (collectively the "Ghost Ship Litigation") against PG&E Corporation and Pacific Gas and Electric Company (collectively the "Debtors"), arising from the fire which occurred on December 2, 2016, at the real property located on 31st Avenue in the City of Oakland, County of Alameda, State of California, bearing Assessor's Parcels Numbers 25-690-10 and 25-690-11, which is commonly referred to as the "Ghost Ship." The fire is commonly referred to as the "Ghost Ship Fire."

The Motion seeks an order to allow the Ghost Ship Litigation to proceed against the Debtors, in order to establish the liability of the Debtors, obtain judgment(s) against the Debtors, and collect any judgment(s) obtained against the Debtors to the extent of available insurance proceeds.

**III.**

**EVIDENTIARY SUPPORT FOR THE MOTION**

The Motion is supported by the Declaration of Mary E. Alexander, filed concurrently herewith and the exhibits thereto ("Alexander Declaration").

**IV.**

**STATEMENT OF FACTS**

**A. GHOST SHIP FIRE**

1.      On December 2, 2019, a catastrophic fire occurred at real property located on 31st Avenue in the City of Oakland, County of Alameda, State of California, bearing Assessor's Parcels Numbers 25-690-10 and 25-690-11, commonly known as the "Ghost Ship." The fire is commonly known as the "Ghost Ship Fire." See *Alexander Declaration* ¶ 4.

2.      The Ghost Ship Fire resulted in thirty-six (36) deaths. Other victims suffered personal injuries, including catastrophic life altering injuries. See *Alexander Declaration* ¶ 6.

**B. STATE COURT LITIGATION**

3.      On December 23, 2016, the first action arising from the Ghost Ship Fire was filed by prominent plaintiff's attorney Mary E. Alexander of Mary Alexander & Associates, P.C. ("Ms. Alexander") on behalf of David Gregory and Kimberly Gregory, the parents of Michela Angelina Gregory who was born on March 14, 1996, and perished in the Ghost Ship Fire On December 2, 2016. That case was filed in the Superior Court of the State of California, County of Alameda (the "Superior Court"), and was assigned Case No. RG16843631. See *Alexander Declaration* ¶ 4 and 5.

4. The families of thirty-three (33) decedents have filed civil actions. See *Alexander Declaration* ¶ 6.

5. Ms. Alexander alone represents twenty-five (25) wrongful death claimants for 13 decedents and eight (8) personal injury claimants in connection with Ghost Ship Litigation pending in the Superior Court, including, but not limited to, A.G. and L.G., minors, through Lesley Moran, their mother and guardian ad litem. See *Alexander Declaration* ¶ 4 and 7.

6. Alex Ghassan perished in the Ghost Ship Fire leaving behind A.G. and L.G., his twin daughters, who were four (4) years old at the time their father died on December 2, 2016. The twin girls have been severely impacted by their father's death almost three (3) years ago, but have yet to receive any redress for their grievous loss. See *Alexander Declaration* ¶ 7 and 8.

7. The Ghost Ship Litigation consists of fifty-three (53) civil lawsuits pending in the Superior Court, brought by seventy (70) individual Ghost Ship Plaintiffs asserting claims for wrongful death and personal injury. The 53 civil actions have been consolidated. The plaintiffs in the Ghost Ship Litigation are represented by various law firms. The plaintiffs shall be hereinafter collectively referred to as the "Ghost Ship Plaintiffs." A list of Ghost Ship Plaintiffs, their respective case numbers, the date their respective cases were filed with the Superior Court, and their respective counsel is attached to the *Declaration of Mary E. Alexander* and incorporated herein by reference as **Exhibit 2**. Three (3) cases listed and crossed out within **Exhibit 2** have been dismissed. See *Alexander Declaration* ¶ 9.

8. On February 14, 2017, almost three (3) years ago, the Superior Court issued an Order regarding complex determination (the "Order Re Complex Determination"), pursuant to which the Ghost Ship Litigation has been designated as a "Complex Case" before the Honorable Brad Seligman ("Judge Seligman"), Superior Court Judge. A true

and correct copy of the Order Re Complex Determination is attached to the *Declaration of Mary E. Alexander* and incorporated herein by reference as **Exhibit 3**. See *Alexander Declaration* ¶ 10.

9.     Judge Seligman has presided over at least 15 Case Management Conferences, at least 13 Informal Discovery Conferences, and heard and determined at least 9 pretrial motions during the course of the Ghost Ship Litigation. See *Alexander Declaration* ¶ 10.

10.     Judge Seligman has appointed the Ghost Ship Executive Committee in connection with the Ghost Ship Litigation. Ms. Alexander is a member of the Ghost Ship Executive Committee and has been designated by Judge Seligman as Plaintiffs' Liaison Counsel in the Ghost Ship Litigation. The following are also the members of the Ghost Ship Executive Committee: Thomas Brandi of the Brandi Law Firm; W. Gordon Kaupp of Kaupp & Feinberg LLP; Chris Dolan of the Dolan Law Firm, PC; and Robert L. Bale of Dreyer Babich Buccola Wood Campora, LLP. See *Alexander Declaration* ¶11.

11.     The Ghost Ship Litigation has been designated as *In Re Ghost Ship Fire Litigation*, Case No. RG16843631 (And Related Cases). David Gregory and Kimberly Gregory, who are represented by Mary Alexander & Associates, P.C., are the lead plaintiffs in the Ghost Ship Litigation. See *Alexander Declaration* ¶ 13.

12.     A number of persons and entities are named as defendants in the Ghost Ship Litigation, including, but not limited to the following:

- Chor Nar Siu Ng, individually and as Trustee of the Chor Nar Siu Ng Revocable Trust Dated September 28, 2007; and
- Eva Ng; and
- Kai Ng; and
- Yee Lo Ng; and
- The City of Oakland; and

1            •     PG&E Corporation; and

2            •     Pacific Gas & Electric Company.

3   See *Alexander Declaration* ¶ 14.

4      13.    On May 16, 2017, PG&E Corporation and Pacific Gas & Electric Company

5   were added as defendants to the Ghost Ship Litigation, pursuant to a Master Complaint

6   filed with the Superior Court. See *Alexander Declaration* ¶ 15.

7      14.    On June 28, 2017, PG&E Corporation and Pacific Gas & Electric Company

8   appeared in the Ghost Ship Litigation, by and through Clarence Dyer & Cohen LLP and

9   Steptoe & Johnson LLP (collectively the "Defense Counsel"). PG&E Corporation and

10   Pacific Gas & Electric Company have been ably represented by their experienced Defense

11   Counsel, including Kate Dyer of Clarence Dyer & Cohen LLP and Laurie Edelstein of

12   Steptoe & Johnson LLP, who are their lead attorneys in connection with the Ghost Ship

13   Litigation. See *Alexander Declaration* ¶ 16.

14      15.    The Second Amended Master Complaint against PG&E Corporation and

15   Pacific Gas & Electric Company and the other defendants was filed on January 19, 2018,

16   in the Superior Court. This is the operative Complaint against PG&E Corporation and

17   Pacific Gas & Electric Company. A true and correct copy of the Second Amended Master

18   Complaint is attached to the *Declaration of Mary E. Alexander* and incorporated by

19   reference herein as **Exhibit 4**. See *Alexander Declaration* ¶ 17.

20      16.    Thereafter, the Ghost Ship Plaintiffs filed Notices of Adoption of Second

21   Amended Master Complaint. All the Ghost Ship Plaintiffs have requested a jury trial. See

22   *Alexander Declaration* ¶ 17.

23   **C. PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY'S BANKRUPTCY CASE AND EVENTS THEREAFTER**

24

25      17.    On January 29, 2019, PG&E Corporation and Pacific Gas & Electric

26   Company (collectively the "Debtors") filed petitions for relief under Chapter 11 of Title 11

of the United States Code. Since that time the Ghost Ship Litigation has been stayed against the Debtors pursuant to the automatic stay. See *Alexander Declaration* ¶ 18.

18. A Third Amended Master Complaint was filed in the Superior Court on April 24, 2019, to amend allegations against the City of Oakland, another defendant in the Ghost Ship Litigation. Due to the automatic stay, the Third Amended Complaint has not been served on the Debtors. The Defense Counsel, however, have been provided courtesy copies of the Third Amended Complaint. See *Alexander Declaration* ¶ 19.

19. The Ghost Ship Litigation was scheduled for jury trial on October 7, 2019. That trial date has been vacated. The jury trial has been rescheduled to commence on **May 26, 2020**, at 9:00 A.M. in Department 23 of the Superior Court. See *Alexander Declaration* ¶ 20.

20. During the pendency of the automatic stay, Ms. Alexander continued to send courtesy copies of all pleadings, discovery requests, and discovery responses to the Debtors' Defense Counsel. See *Alexander Declaration* ¶ 18. It appears that the other parties to the Ghost Ship Litigation and the Superior Court have done the same. Thus, the Defense Counsel has been kept abreast of the developments in the Ghost Ship Litigation.

**D. CURRENT STATUS**

21. The Ghost Ship Plaintiffs' claims against the Debtors have not been liquidated. The Debtors dispute their liability to the Ghost Ship Plaintiffs. See *Alexander Declaration* ¶ 22.

22. Based on discovery to date and available public information, it appears that ample insurance is available to cover indemnity and defense of the Debtors regarding the Ghost Ship Litigation. See *Alexander Declaration* ¶ 23. Since the Ghost Ship Fire occurred in 2016, the Ghost Ship Plaintiffs are not competing for coverage with the victims of the 2017 or 2018 wildfires. See *Alexander Declaration* ¶ 23.

23. Based on the admissions made by the Debtors in the "Preliminary Response

in Opposition to Valero Refining Company-California's Motion for Relief from Stay" filed
with this Court on February 22, 2019 (ECF 601), it appears that there is a ten (10) million
dollar self-insured retention that applies to both defense costs and damages. It, however,
is not clear how much of the self-insured retention has already been exhausted in
connection with the vigorous defense of the Debtors by Defense Counsel. See *Alexander
Declaration* ¶ 23.

24.     There are currently no mediations scheduled between the Ghost Ship
Plaintiffs and the Debtors and their multiple insurance carriers, and none are anticipated
in the coming weeks or months. See *Alexander Declaration* ¶ 25.

25.     The Ghost Ship Executive Committee has requested, by and through its
bankruptcy counsel, that the Debtors stipulate to relief from the automatic stay.  This
request has been rejected. See *Alexander Declaration* ¶ 29.

26.     The third year anniversary of the Ghost Ship Fire, December 2, 2019, is fast
approaching, and will have passed by the date this Motion is heard.  Accordingly, relief is
being sought from this Court. See *Alexander Declaration* ¶ 27.

## V.

## ARGUMENT

**A. PRELIMINARY STATEMENT:**

The Ghost Ship Executive Committee seeks relief from the automatic stay

pursuant to 11 U.S.C. § 362(d)(1), which provides as follows:

> [o]n request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying, or conditioning such
> stay—
>           (1) for cause, including the lack of adequate protection of an
>           interest in property of such party in interest; . . ..

It is respectfully submitted that causes exist in this case to grant relief from the

Automatic Stay.  The Ghost Ship Litigation has been pending in the Superior Court for

1 almost three (3) years. The Debtors have ample insurance proceeds for the defense of
2 the claims and to satisfy the claim if a judgment(s) is rendered in favor of the Ghost
3 Ship Plaintiffs. The Debtors have been and will continue to be ably represented by their
4 experienced Defense Counsel, who do not represent the Debtors in these Chapter 11
5 cases.

6 The Ghost Ship Executive Committee, on behalf of the Ghost Ship Plaintiffs, is
7 seeking relief from stay so that the Ghost Ship Litigation may be tried against the
8 Debtors at the same time as it is tried against the other defendants. Unless relief is
9 granted, the Ghost Ship Plaintiffs will be prejudiced by having to litigate in a piecemeal
10 fashion, which could lead to inconsistent results and will further delay adjudication of
11 their civil claims.

12 **B. BURDEN OF PROOF**

13 As explained by the Bankruptcy Court for the Central District of California,

14     [t]he burden of proof on a motion to modify the automatic stay is a shifting
    one. *Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax*
15     *Indus., Inc.)*, 907 F.2d 1280, 1285 (2nd Cir. 1990). To obtain relief from
    the automatic stay, the party seeking relief must first establish a prima
16     facie case that "cause" exists for relief under § 362(d)(1). *Mazzeo v.*
    *Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2nd Cir. 1999); *Duvar Apt.,*
17     *Inc. v. Fed. Deposit Ins. Corp. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200
    (9th Cir. BAP 1996); *FSFG Serv. Corp. v. Kim (In re Kim)*, 71 B.R. 1011,
18     1015 (Bankr. C.D. Cal. 1987). Once a prima facie case has been
    established, the burden shifts to the debtor to show that relief from the
19     stay is unwarranted. *Sonnax*, 907 F.2d at 1285; *Duvar Apt.*, 205 B.R. at
    200.
20 *Truebro, Inc. V. Plumberex Speciality Prods., Inc. (In re Plumberex Speciality Prods.,*
*Inc.)*, 311 B.R. 551, 557 (2004).
21
22 Pursuant to 11 U.S.C. Section 362(g),

23     [i]n any hearing under subsection (d) or (e) of this section concerning
    relief from the stay of any act under subsection (a) of this section—
        (1) the party requesting such relief has the burden of proof on the
24     issue of the debtor's equity in property; and
        (2) **the party opposing such relief has the burden of proof on**
25     **all other issues.**[1] Emphasis added.

26 Accordingly, any party opposing relief from automatic stay bears the ultimate burden of

---

[1] Equity in property is not an issue in this contested matter.

proof and of persuasion.

## C. CURTIS FACTORS

There are twelve (12) non-exclusive factors, which courts analyze in order to determine if cause exists to grant relief to allow continued litigation in a non-bankruptcy forum. See *In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984). The non-exclusive factors have been summarized as follows:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under *Section 510(c)*;

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under *Section 522(f)*;

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

1    12. The impact of the stay on the parties and the "balance of hurt."

2    See *In re Curtis,* 40 B.R. at 806.

3        The *Curtis* factors will be discussed seriatim. It is respectfully submitted that the

4    *Curtis* factors, which apply, warrant granting relief from stay to allow the Ghost Ship

5    Plaintiffs access to justice and to obtain final resolution of their claims.

6    **1. WHETHER THE RELIEF WILL RESULT IN A PARTIAL OR COMPLETE
     RESOLUTION OF THE ISSUES.**

7
         Granting relief from the automatic stay will allow Judge Seligman and the Courts

8    of the State of California to proceed to judgement and resolution of all claims pending in

9    the Ghost Ship Litigation, through a jury trial against the Debtors and the other non-

10   debtor defendants, at the same time. Granting relief from the automatic stay will also

11   allow the parties to complete post trial and appellate matters. The nature and extent of

12   the Debtors' liability to the Ghost Ship Plaintiffs will be adjudicated, liquidated, and

13   finalized.

14       It is respectfully submitted that this factor weighs in favor of granting relief from

15   the automatic stay.

16   **2. THE LACK OF ANY CONNECTION WITH OR INTERFERENCE WITH THE
17   BANKRUPTCY CASE.**

18       "The most important factor in determining whether to grant relief from the

19   automatic stay to permit litigation against the debtor in another forum is the effect of

20   such litigation on the administration of the estate." *Id.* It would be disingenuous to

21   allege that granting relief from the automatic stay is not connected to these Chapter 11

22   cases.

23       Granting relief from the automatic stay, however, will allow disputed claims

24   against the Debtors to be liquidated and resolved. Moreover, the Debtors are

25   represented by able and experienced Defense Counsel, who are not representing the

26   Debtors in the Chapter 11 cases. Granting relief from the automatic stay **now**, will

1  allow Defense Counsel sufficient time to prepare for the jury trial scheduled to
2  commence on May 26, 2020.

3      The movants are aware that "[d]uring the initial stages of these Chapter 11
4  Cases, the Debtors' resources were devoted to successfully assuring a smooth
5  transition into chapter 11 and minimizing the business disruptions normally attendant
6  thereto, and maintaining relationships with the Debtors' business partners." *Motion of*
7  *Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend the Exclusive Solicitation Period*
8  (ECF 4825), filed with the Court on November 20, 2019, Pg. 13, ln. 9-11.  Accordingly,
9  movants refrained from seeking relief from automatic stay for a reasonable time.

10     The initial period is now behind the Debtors.  As admitted by the Debtors, in a
11  recent filing,

12          . . . [they] have made substantial progress in the plan process. As stated
            and as the Court is aware, there are currently two competing plans on file
13          with the Court: the Debtors' Plan and the TCC/Noteholder Plan. With
            respect to the Debtors' Plan, the Debtors have achieved two critical
14          settlements of their wildfire liabilities to be satisfied and discharged
            pursuant to their Plan. The first settlement fully resolves all of the wildfire
15          claims held by the 18 settling Public Entities for the aggregate amount of
            $1 billion. The second settlement fully resolves all of the claims held by
16          Subrogation Claimants in the asserted amount of approximately $20
            billion for consideration in the amount of $11 billion, representing a 45%
17          reduction. In addition to the two settlements discussed above, the
            Debtors' Plan also is backed by equity commitments which serve as the
18          foundation for the equity portion of a comprehensive financing package
            that will fund the Plan and the Debtors' timely emergence from chapter 11.
19          With the CPUC review process also underway, the Debtors' Plan is on
            track to meet the June 30, 2020 deadline imposed by AB 1054.
20  *Id.* at Pg. 13(ln. 17-27) and 14(ln. 1).

21     Given the fact that the Debtors have progressed from the initial stages of this
22  case, stabilized their operations, and made substantial progress with various creditor
23  constituencies, no reason exists for delaying adjudication of the Ghost Ship Litigation by
24  Judge Seligman and the Courts of the State of California.

25     It is respectfully submitted that even this factor weighs in favor of granting relief
26  from the automatic stay.

**3. WHETHER THE FOREIGN PROCEEDING INVOLVES THE DEBTORS AS A FIDUCIARY.**

This factor is not applicable to the current proceeding.

**4. WHETHER A SPECIALIZED TRIBUNAL HAS BEEN ESTABLISHED TO HEAR THE PARTICULAR CAUSE OF ACTION AND WHETHER THAT TRIBUNAL HAS THE EXPERTISE TO HEAR SUCH CASES.**

The claims and defenses asserted in the Ghost Ship Litigation arise under the laws of the State of California. The Ghost Ship Litigation is currently pending in the Superior Court, a California Court of general jurisdiction, which is well equipped to adjudicate cases based on California wrongful death and personal injury claims.

As attested by Ms. Alexander within her declaration, all the Ghost Ship Plaintiffs have demanded jury trials. The Superior Court routinely conducts jury trials.

Moreover, Judge Seligman has presided over the consolidated civil actions since their inception, spending substantial time and judicial resources coordinating the Ghost Ship Litigation, hearing and determining numerous pretrial motions, conducting numerous case management conferences, and conducting numerous informal discovery conferences. Judge Seligman, therefore, has gained unquestionable insight, expertise, and even sensitivity about the Ghost Ship Litigation. It would be duplicative, expensive, time consuming, and ultimately unproductive for another tribunal to hear and determine the claims of the Ghost Ship Plaintiffs.

It is respectfully submitted that this factor weighs in favor of granting relief from the automatic stay.

**5. WHETHER THE DEBTORS' INSURANCE CARRIER HAS ASSUMED FULL FINANCIAL RESPONSIBILITY FOR DEFENDING THE LITIGATION.**

Ms. Alexander, the Plaintiffs' Liaison Counsel, is informed and believes that there is ample insurance to cover indemnity and defense of the Debtors regarding the Ghost Ship Litigation.

There is no indication that the Debtors' insurer(s) have not assumed full financial

1  responsibility for defense and indemnity.

2       Based on the admissions made by the Debtors in the "Preliminary Response in

3  Opposition to Valero Refining Company-California's Motion for Relief from Stay" filed

4  with this Court on February 22, 2019 (ECF 601), it appears that there is a $10 million

5  self-insured retention that applies to both defense costs and damages.  It must be

6  assumed, however, that a substantial portion of the self-insured retention was

7  exhausted pre-petition by the Debtors' vigorous defense of the Ghost Ship Litigation,

8  through two prominent law firms.

9       Moreover, given the assets of the Debtors, given the amounts being spent by the

10  Debtors in the Chapter 11 cases, and in defense of other claims, any remaining self-

11  insured retention can be funded by the Debtors.[2]

12       Finally, it should be noted that the Ghost Ship Fire occurred in 2016, thus, the

13  Ghost Ship Plaintiffs are not competing for insurance proceeds with the victims of the

14  2017 and 2018 wildfires.

15       It is respectfully submitted that this factor weighs in favor of granting relief from

16  the automatic stay.

17  **6. WHETHER THE ACTION ESSENTIALLY INVOLVES THIRD PARTIES, AND THE**
18  **DEBTORS FUNCTION ONLY AS A BAILEE OR CONDUIT FOR THE GOODS OR**
   **PROCEEDS IN QUESTION.**

19       This factor does not apply.

20  **7. WHETHER THE LITIGATION IN ANOTHER FORUM WOULD PREJUDICE THE**
21  **INTERESTS OF OTHER CREDITORS, THE CREDITORS' COMMITTEE AND OTHER**
   **INTERESTED PARTIES.**

22       Since the Ghost Ship Fire occurred in 2016, the Ghost Ship Plaintiffs are not

23

24     [2] It is respectfully requested that ths Court take judicial notice of the Monthly Operating Report
filed by the Debtor on November 26, 2019, for the month ended October 31, 2019 (ECF 4865).  The
25  Monthly Operating Report reflects that as of October 31, 2019, the Debtors had available **cash** in the total
amount of $2,677,306,880.  The same Monthly Operating Report reflects that during the month of October
26  2019, the Debtors paid $14,662,641, in professional fees, including $5,550,796 to one of the firms
representing them in these Chapter 11 cases and related litigation.  It is respectfully submitted that even if
none of the self-insured retention has been, the self-insured retention can easily be absorbed by the
Debtors.

competing for coverage with any of the victims of the 2017 or 2018 wildfires. If relief from stay is granted, the Ghost Ship Litigation will be resolved through final judgment and the Ghost Ship Plaintiffs will be able to collect from available insurance, in excess of the self-insured retention.

It is respectfully requested that even this factor weighs in favor of granting relief from the automatic stay.

**8. WHETHER THE JUDGMENT CLAIM ARISING FROM THE FOREIGN ACTION IS SUBJECT TO EQUITABLE SUBORDINATION UNDER *SECTION 510(c)*.**

This factor does not apply.

**9. WHETHER MOVANTS' SUCCESS IN THE FOREIGN PROCEEDING WOULD RESULT IN A JUDICIAL LIEN AVOIDABLE BY THE DEBTOR UNDER *SECTION 522(f)*.**

This factor is not applicable since the Debtors are not individuals.

**10. THE INTERESTS OF JUDICIAL ECONOMY AND THE EXPEDITIOUS AND ECONOMICAL DETERMINATION OF LITIGATION FOR THE PARTIES.**

As discussed above, the claims and defenses asserted in the Ghost Ship Litigation are based on the laws of the State of California. The Ghost Ship Litigation has been pending in the Superior Court for almost three (3) years, through consolidated civil actions over which Judge Seligman is presiding. A jury trial has been scheduled in the Superior Court for May 26, 2020. Judge Seligman is well positioned to continue to preside over the Ghost Ship Litigation through pretrial, trial, and post-trial phases. If relief is granted the jury trial can proceed as to all defendants, as scheduled. If relief is not granted, a jury trial against the Debtors could be delayed for years.

This factor dictates granting relief from the automatic stay.

**11. WHETHER THE FOREIGN PROCEEDINGS HAVE PROGRESSED TO THE POINT WHERE THE PARTIES ARE PREPARED FOR TRIAL.**

The trial for the Ghost Ship Litigation is scheduled to commence on May 26, 2020, which is more than six (6) months in the future. Therefore, if relief from the automatic stay is granted at this time, the Debtors and their Defense Counsel will have

ample time to prepare for trial, so that the Ghost Ship Litigation can be tried to a jury against all defendants, as scheduled.

It is respectfully submitted that this factor weighs in favor of granting relief from the automatic stay.

**12. THE IMPACT OF THE STAY ON THE PARTIES AND THE "BALANCE OF HURT."**

As admitted by the Debtors in the "Debtors' Preliminary Opposition to Tiger Natural Gas, Inc.'s Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)" (ECF 4622), filed with this Court on November 8, 2019, "**[c]ourts have determined that the 'balance of hurt' supports lifting the stay where keeping the stay in place would force movants to endure piecemeal litigation,** *In re Roger*, 539 B.R. 837, 852-853 (C.D. Cal. 2015), or where debtors were engaging in ongoing wrongful conduct, see *Plumberex*, 311 B.R. at 564." Pg. 12, ln. 6-9. Emphasis added.

Keeping the stay in place, will force the Ghost Ship Plaintiffs to litigate against the non-debtor defendants and then subsequently litigate against the Debtor. As succinctly noted by the Bankruptcy Court for the District of Hawaii "[t]o force the Plaintiffs to proceed first only against the nondebtor defendants in the state court, then subsequently to proceed against the Debtors would result in a multiplicity of suits, involving unnecessary time and expense on the part of Plaintiffs." *In re Westwood Broadcasting, Inc.,* 35 B.R. 47, 48 (1983).

Thirty-six (36) individuals lost their lives under horrific circumstances in the Ghost Ship Fire. Many others have survived but endured catastrophic, life altering personal injures. Forcing the Ghost Ship Plaintiffs and their loved ones to piecemeal and duplicative litigation would also result in unnecessary emotional hardship and turmoil. The Ghost Ship Plaintiffs have suffered enough. They should not be compelled to endure multiple trials and further delays. The Ghost Ship Plaintiffs, including the minors who were dependents of the decedents and the Ghost Ship Plaintiffs with catastrophic

personal injuries need to obtain recovery from the defendants as soon as possible in order to help to cover necessary daily living expenses that were precipitated by the harm caused by the Ghost Ship Fire.

It is respectfully submitted that this factor overwhelmingly weighs in favor of granting relief from the automatic stay.

Factors 3, 6, 8, and 9 of the *Curtis* factors do not apply in this case. It is respectfully submitted that, in this case, factors 1, 4, 7, 10, and 11 of the *Curtis* factors support the granting of the Motion. Factor 12 of the *Curtis* factors dealing with the balance of hurts overwhelmingly supports the granting of the Motion. Even factors 2 and 5 of the *Curtis* factors support the granting of the Motion.

## VI.

## CONCLUSION

The granting of the Motion, is consistent with the proposed treatment of the Ghost Ship Plaintiffs by the Debtors in their own Joint Chapter 11 Plan of Reorganization Dated November 4, 2019 (ECF 4563), which provides that upon the effective date, each holder of a Ghost Ship Fire claim shall be entitled to pursue its claim against the reorganized Debtors, as if the Chapter 11 case had not commenced.

///

///

///

///

///

///

///

1
2
3
4
5
6

Under the best of circumstances, the effective date is months in the future, and most likely after the May 26, 2020, the date on which the jury trial is scheduled to commence in the Superior Court. The adjudication of the Ghost Ship Litigation should not be delayed and the Ghost Ship Plaintiffs should not be exposed to duplicative, expensive, piecemeal litigation, and further delays.

7
8
9
10
11
12
13

Dated: November 26, 2019

Respectfully submitted,

**PINO & ASSOCIATES**

By:_____
Estela O. Pino, Attorneys for Plaintiffs'
Executive Committee appointed by the
Superior Court of the State of California, in
and for the County of Alameda, in Case No.
RG16843631 and related cases.

14
15
16
17
18
19
20
21
22
23
24
25
26