WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310-8000
Fax: 212 310-8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496-6723
Fax: 650 636-9251

*Attorneys for Debtors*
*and Debtors in Possession*

WILLKIE FARR & GALLAGHER LLP
Matthew A. Feldman (*pro hac vice*)
(mfeldman@willkie.com)
Joseph G. Minias (*pro hac vice*)
(jminias@willkie.com)
Benjamin P. McCallen (*pro hac vice*)
(bmccallen@willkie.com)
Daniel I. Forman (*pro hac vice*)
(dforman@willkie.com)
787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728-8000
Fax:  212 728-8111

DIEMER & WEI, LLP
Kathryn S. Diemer (#133977)
(kdiemer@diemerwei.com)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Tel: 408 971-6270
Fax: 408 971-6271

*Counsel for Ad Hoc Group of Subrogation*
*Claim Holders*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>☒  Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' AND AD HOC SUBROGATION GROUP'S JOINT BRIEF IN SUPPORT OF THE SUBROGATION WILDFIRE CLAIMS AS IMPAIRED CLASSES FOR ALL PURPOSES UNDER THE DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**<br><br>Date:  January 14, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102<br>**Opposition Deadline:** December 20, 2019 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), and the Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**") respectfully submit the *Debtors' and Ad Hoc Subrogation Group's Joint Brief in Support of the Subrogation Wildfire Claims as Impaired Classes for All Purposes Under the Debtors' Joint Chapter 11 Plan of Reorganization*.  As demonstrated below, the classes of Subrogation Wildfire Claims (as defined below), which consist of asserted claims in excess of $20 billion that are to be settled and allowed under the Subrogation Claims Settlement (as defined below) at an approximately 45% discount, and are to be treated in accordance with the terms and subject to confirmation and consummation of the *Debtors' Joint Chapter 11 Plan of Reorganization Dated November 4, 2019* (as may be further amended, modified, or supplemented from time to time, the "**Debtors' Plan**")[1] are "impaired" within the meaning of sections 1123(a)(3) and 1124 of title 11 of the United States Code (the "**Bankruptcy Code**") for all purposes under the Debtors' Plan. As impaired classes, the Subrogation Wildfire Claimants (as defined below), among other things, are entitled to vote on the Debtors' Plan.

---

[1] Capitalized terms used but not otherwise herein defined have the meanings ascribed to such terms in the Debtors' Plan.

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................6

I.    PRELIMINARY STATEMENT ........................................................................................6

II.   JURISDICTION ................................................................................................................7

III.  BACKGROUND ...............................................................................................................7

IV.  THE SUBROGATION WILDFIRE CLAIMS ARE IMPAIRED AND THE
     SUBROGATION WILDFIRE CLAIMANTS ARE ENTITLED TO VOTE. .....................10

     A.    The Subrogation Wildfire Claims Are Impaired Because the Settlement and
          Treatment of the Allowed Claim Amount are Tied to Confirmation and
          Consummation of the Debtors' Plan. ...........................................................................12

     B.    The Subrogation Classes are Impaired Because the Debtors' Plan Channels
          Distributions for Allowed Subrogation Wildfire Claims to the Subrogation Wildfire
          Trust. .............................................................................................................................14

     C.    The Debtors' Plan Impairs the Subrogation Classes Because the Plan Does Not
          Provide For the Payment of Postpetition Interest on the Allowed Claim Amount to
          the Holders of Subrogation Wildfire Claims. ..............................................................15

     D.    The Subrogation Classes are Impaired by the Post-Effective Date Delay in
          Distributions to Holders of Subrogation Wildfire Claims Under the Debtors' Plan. 16

V.    CONCLUSION ................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Art & Architecture Books of the 21st Century*,
No. 2:13-bk-14135-RK, 2016 WL 1118743 (Bankr. C.D. Cal. March 18, 2016)......................12

*Bustop Shelters of Louisville v. Classic Homes, Inc.*,
914 F.2d 810 (6th Cir. 1990) ............................................................................... 14-15

*In re Carolina Tobacco Co.*,
Case No. BR 05-34156-ELP11, 2006 WL 7074335 (Bankr. D. Or. March 14, 2006) *aff'd*, 360
B.R. 702 (D. Or. 2007), *and vacated on consent*, No. APPEAL 06-1170-KI, 2012 WL
12527885 (D. Or. Feb. 22, 2012)..................................................................... 12-13

*Conn. Gen. Life Ins. Co. v. Hotel Assocs. of Tucson (In re Hotel Assocs. of Tucson)*,
165 B.R. 470 (B.A.P. 9th Cir. 1993).............................................................................16

*In re Great Barrington Oaks Gen. P'ship*,
15 B.R. 952 (Bankr. D. Utah 1981) ...........................................................................14

*Great W. Bank & Tr. v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply,
Inc.)*,
850 F.2d 1338 (9th Cir. 1988) ..................................................................................10

*In re Julian Servs. Indus., Inc.*,
220 B.R. 613 .....................................................................................................12, 13

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
843 F.2d 636 (2d Cir. 1988)......................................................................................15

*L & J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.)*,
995 F.2d 940 (9th Cir. 1993) ...........................................................................11, 12, 14

*In re Lower Bucks Hosp.*,
471 B.R. 419 (Bankr. E.D. Penn. 2012) ...................................................................12

*In re NNN 3500 Maple 26, LLC*,
No. 13-30402-HDH-22 2014, WL 1407320 (Bankr. N.D. Tex. 2014) ......................14

*Onink v. Cardelucci (In re Cardelucci)*,
285 F.3d 1231 (9th Cir. 2002) ..............................................................................16

*Oxford Life Ins. Co. v. Tucson Self-Storage (In re Tucson Self-Storage)*,
166 B.R. 892 (B.A.P. 9th Cir. 1994)........................................................................16

*In re Rexford Prop. LLC*,
558 B.R. 352 (Bankr. C.D. Cal. 2016)...................................................................11

*In re Save Our Springs (S.O.S.) Alliance, Inc.*,
388 B.R. 202 (Bankr. W.D. Tex. 2008), *aff'd*, 2009 WL 8637183 (W.D. Tex. Sept. 29, 2009),
*aff'd*, 632 F.3d 168 (5th Cir. 2011).............................................................12, 13, 14

*In re SM 104 Ltd.*,
   160 B.R. 202 (Bankr. S.D. Fla. 1993)...................................................................11

*In re Smith*,
   123 B.R. 863 (Bankr. C.D. Cal. 1991)...................................................................11

*Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*,
   324 F.3d 197 (3d Cir. 2003).................................................................... 11-12, 16

*Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra Petroleum Corp.)*,
   No. 17-20793 (5th Cir. Nov. 26, 2019).................................................................11

*In re Vill. at Camp Bowie I, L.P.*,
   454 B.R. 702, 708 & n.13 (Bankr. N.D. Tex. 2011), *aff'd,* 710 F.3d 239 (5th Cir. 2013).........16

*In re Wabash Valley Power Ass'n*,
   72 F.3d 1305 (7th Cir. 1995), *abrogated on other grounds by, Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999), *as recognized by, In re Castleton Plaza, LP*, 707 F.3d 821, 824 (7th Cir. 2013)...........................................12, 13, 14

**Statutes**

11 U.S.C. § 1107(a) ........................................................................................7

11 U.S.C. § 1108 ...........................................................................................7

11 U.S.C. § 1123 .......................................................................................2, 10

11 U.S.C. § 1124 ...........................................................................2, 10, 11, 12

11 U.S.C. § 1126 ..........................................................................................10

28 U.S.C. § 157 ............................................................................................7

28 U.S.C. § 1334 ..........................................................................................7

28 U.S.C. § 1408 ..........................................................................................7

28 U.S.C. § 1409 ..........................................................................................7

**Other Authorities**

B.L.R. 5011-1(a) ..........................................................................................7

Fed. R. Bankr. P. 1015(b) ................................................................................7

Hr'g Tr. (Sept. 24, 2019).................................................................................7

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.)...................................................................................................7

## I. PRELIMINARY STATEMENT

Any theory that the classes of Subrogation Wildfire Claims are not impaired by the Debtors' Plan is based on the overly simplistic argument that the aggregate amount of Allowed Subrogation Wildfire Claims are being paid in full by the $11 billion to be distributed to the Subrogation Wildfire Trust (as defined below) under the Debtors' Plan. This characterization, however, ignores key features of the Subrogation Claims Settlement that are inextricably intertwined with, and conditioned on, confirmation and consummation of the Debtors' Plan. Courts consistently have held that a class of settled claims is impaired if there is any alteration of a creditor's rights pursuant to a settlement agreement that is conditioned on, and implemented through, a chapter 11 plan even if the settlement is approved prior to confirmation.

Moreover, notwithstanding the distribution of $11 billion to treat and discharge Subrogation Wildfire Claims, the Debtors' Plan alters the legal, equitable, or contractual rights of holders of Subrogation Wildfire Claims in at least three ways, each of which alone is sufficient under Ninth Circuit law to preclude treating the classes of such claims as unimpaired. First, the Debtors' Plan substitutes a different party—the Subrogation Wildfire Trust, to which a limited subset of the Debtors' assets will be transferred—as the new obligor on the Subrogation Wildfire Claims, without any recourse against the Debtors.

Second, the fact that all other holders of unsecured claims are to be paid postpetition interest on their allowed claims, where the holders of Subrogation Wildfire Claims have substantially reduced their claims and will receive no postpetition interest thereon, conclusively demonstrates impairment, and, itself, is dispositive of the issue.

Third, distributions on Subrogation Wildfire Claims will be delayed well beyond the Debtors' Plan Effective Date. For years following the Effective Date, only partial distributions from the Subrogation Wildfire Trust will be made on Subrogation Wildfire Claims—even those arising from payments already made by insurers to insured parties—as a result of reserves that will be held back to address Subrogation Wildfire Claims relating to future insurer payments to their insureds.

Recognizing that there can be no serious dispute as to whether the classes of Subrogation Wildfire Claims are impaired under the Debtors' Plan, this Court correctly made the following observation at a hearing held on September 24, 2019:

> MR. KAROTKIN: We expect that - it's our view they are clearly - that class [of Subrogation Wildfire Claims] is clearly impaired under the plan, and they will vote -
>
> THE COURT: *Oh, I don't doubt that, either.*
>
> MR. KAROTKIN: Okay.
>
> THE COURT: My point is that -- and you made it clear in the original plan -- I can't keep track of all your classes -- *but clearly it was an impaired class before the settlement. Now, it's still an impaired class.*

Hr'g Tr. (Sept. 24, 2019) at 10:17-25 (emphasis supplied).

For these reasons, the Court should enter an order determining that the classes of Subrogation Wildfire Claims are impaired and entitled to vote on the Debtors' Plan.

## II. JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

On January 29, 2019, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors' Committee**"). On February 15, 2019, the U.S.

Trustee appointed the Official Committee of Tort Claimants (the "**TCC**" and, together with the Creditors' Committee, the "**Committees**").

Following the Petition Date, the holders of insurance subrogation claims arising out of or relating to the 2017 and 2018 Northern California Wildfires (the "**Subrogation Wildfire Claims**" and the holders thereof, the "**Subrogation Wildfire Claimants**") timely filed and asserted claims against the Debtors totaling more than $20 billion in the aggregate. In connection therewith, and after months of arms' length negotiations, the Debtors and the holders of approximately 97% in dollar amount of the Subrogation Wildfire Claims (the "**Consenting Creditors**") have agreed (the "**Subrogation Claims Settlement**") to settle the more than $20 billion of asserted liabilities for an $11 billion allowed claim (the "**Allowed Claim Amount**"), a roughly 45% reduction in the total amount of the Subrogation Wildfire Claims asserted in the Chapter 11 Cases, to be treated and discharged as provided in, and subject to confirmation and consummation of, the Debtors' Plan. To document the terms of the Subrogation Claims Settlement, the Debtors and the Consenting Creditors entered into that certain Restructuring Support Agreement, dated as of September 22, 2019 (as thereafter amended and restated on November 1, 2019, and subsequently amended on November 13, 2019 and November 18, 2019 and as may be further amended, modified, or supplemented from time to time, the "**RSA**"). On September 24, 2019, the Debtors filed a motion to approve the RSA [Docket No. 3992] (the "**RSA Motion**"), which is scheduled for hearing before the Court on December 4, 2019.[2]

Pursuant to the RSA, if it is determined that the Debtors are insolvent, the Debtors are not required to file a chapter 11 plan that pays the Subrogation Wildfire Claimants $11 billion in cash. In addition, the RSA has various rights of termination and, under certain circumstances, the Allowed Claim Amount is no longer binding on the Subrogation Wildfire Claimants, the Debtors, or any other party in interest in these Chapter 11 Cases. *See* RSA §§ 3(a)(i), 5.

The Debtors' Plan establishes two separate classes of Subrogation Wildfire Claims, one against each of the Debtors: Class 5A - II (Holdco Subrogation Wildfire Claims) and Class 5B - II

---

[2] Any description of the RSA herein is qualified in its entirety by reference to the RSA.

(Utility Subrogation Claims) (collectively, the "**Subrogation Classes**"). Each of the Subrogation Classes are designated as impaired under the Debtors' Plan and the holders of Holdco Subrogation Claims and Utility Subrogation Claims are entitled to vote on the Debtors' Plan. *See* Debtors' Plan §§ 4.6(b), 4.19(g). All Holdco Subrogation Wildfire Claims (Class 5A - II) will be deemed satisfied, settled, released, and discharged through the treatment provided to Utility Subrogation Wildfire Claims under the Debtors' Plan. *Id.* at § 4.6(a). In relevant part, the Debtors' Plan provides the following with respect to the claims in the Subrogation Classes:

- On the Effective Date, the Debtors will establish a trust (the "**Subrogation Wildfire Trust**") to which the Debtors will pay $11 billion in cash on account of the Allowed Claim Amount. Pursuant to the Channeling Injunction to be implemented under Section 10.7 of the Debtors' Plan, each holder of a Subrogation Wildfire Claim will have its Claim permanently channeled to the Subrogation Wildfire Trust, and such Wildfire Subrogation Claim will be asserted exclusively against the Subrogation Wildfire Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties. *Id.* at § 4.19(e). Under Section 6.4 of the Debtors' Plan, the Subrogation Wildfire Trust will administer, process, settle, resolve, liquidate, satisfy, and pay all Subrogation Wildfire Claims. *Id.* at § 6.4(a).

- Distributions from the Subrogation Wildfire Trust to the holders of Allowed Subrogation Wildfire Claims will be made by the Subrogation Wildfire Trustee to be selected and appointed as set forth in Section 1.182 of the Debtors' Plan, and in accordance with the terms of the Debtors' Plan, the Subrogation Wildfire Claim Allocation Agreement, and the Subrogation Wildfire Trust Agreement. *Id.* at §§ 1.182, 6.4(c). Pursuant to Section 6.5 of the Debtors' Plan, the powers and duties of the Subrogation Wildfire Trustee include, without limitation, those necessary and proper to (i) make distributions to holders of Allowed Subrogation Wildfire Claims in accordance with the terms of the Debtors' Plan, the Wildfire Subrogation Trust Agreement, and Subrogation Wildfire Claim Allocation Agreement, and (ii) carry out the provisions of the Debtors' Plan relating to the Subrogation Wildfire Trust and the Subrogation Wildfire Claims. *Id.* at § 6.5.

- In addition to the Subrogation Wildfire Trustee, the Debtors' Plan provides for the establishment and appointment on the Effective Date of the Subrogation Wildfire Advisory Board, which will consist of three (3) initial members selected by the holders of Subrogation Wildfire Claims in accordance with the Subrogation Trust Agreement and the Subrogation Wildfire Claim Allocation Agreement. The Subrogation Wildfire Advisory Board is to consult with and advise the Subrogation Wildfire Trustee as to the administration and management of the Subrogation Wildfire Trust in accordance with the terms of the Debtors' Plan, the Confirmation Order, and/or the Subrogation Wildfire Trust Agreement. *Id.* at §§ 1.180, 6.6.

- Notwithstanding the fact that holders of other Allowed Unsecured Claims will be paid postpetition interest on such claims under the Debtors' Plan, no postpetition, and pre-Effective Date, interest is to be paid with respect to the Subrogation Wildfire Claims under the Debtors' Plan. *Id.* at § 4.19(b).

Following the announcement of the Subrogation Claims Settlement, at a hearing in connection with their then-pending motion to terminate the Debtors' exclusive periods to file and solicit a chapter 11 plan, the TCC and the Ad Hoc Committee of Senior Unsecured Noteholders (the "**Ad Hoc Noteholder Committee**") announced that they would adopt the terms of the Subrogation Claims Settlement, and thereafter modified the terms of their proposed competing chapter 11 plan (the "**TCC/Noteholder Plan**") to do so. Notwithstanding the fact that they adopted the terms of the Subrogation Claims Settlement to convince the Court to terminate the Debtors' exclusive periods, the Ad Hoc Noteholder Committee now suggests that the Subrogation Classes do not constitute impaired classes and the holders of Allowed Subrogation Wildfire Claims do not have the right to vote on the Debtors' Plan. As discussed below, the Subrogation Classes are clearly impaired under, and are entitled to vote on, the Debtors' Plan.

## IV. THE SUBROGATION WILDFIRE CLAIMS ARE IMPAIRED AND THE SUBROGATION WILDFIRE CLAIMANTS ARE ENTITLED TO VOTE.

A claimant is entitled to vote on a plan of reorganization if it holds an allowed claim and that claim is impaired under the plan of reorganization. 11 U.S.C. §§ 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."). Except as otherwise set forth in section 1123(a)(4) of the Bankruptcy Code,[3] a class of claims is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124. Unimpaired claims are "conclusively presumed to have accepted the plan" under section 1126(f) of the Bankruptcy Code, which leads to the general rule that "[o]nly impaired parties have the right to vote on the reorganization plan." *Great W. Bank & Tr. v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply, Inc.)*, 850 F.2d 1338, 1340 n.3 (9th Cir. 1988) (superseded by statute on other grounds).

---

[3] Section 1123(a)(4) of the Bankruptcy Code provides that, "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).

The Ninth Circuit has adopted a broad definition of impairment. *See L & J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.)*, 995 F.2d 940, 942-43 (9th Cir. 1993) ("It is well established that, with this language, Congress defined impairment in the *broadest possible terms . . . any alteration of the rights constitutes impairment even if the value of the rights is enhanced. . . .* There is no suggestion here that only alterations of a particular kind or degree can constitute impairment.") (emphasis supplied); *see also In re Rexford Prop. LLC*, 558 B.R. 352, 368 (Bankr. C.D. Cal. 2016) (holding class of trade claims was "clearly impaired" where claims were to be paid an amount equal to 100% but on the condition that such claimants agree to provide the debtor with beneficial credit terms post-emergence); *In re Smith*, 123 B.R. 863, 866 (Bankr. C.D. Cal. 1991) ("Courts have consistently interpreted the term 'impairment' very broadly; and the great weight of authority and reason lead me to the conclusion that if a plan alters *any* of a claimant's rights *in any respect*, a plan does not leave that claim 'unimpaired.'") (emphasis in original). Courts also have held that the Bankruptcy Code "creates a presumption of impairment so as to enable a creditor to vote on acceptance of the plan." *Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 203 (3d Cir. 2003).

Courts have held that impairment under section 1124 must result from a claimholder's treatment under the proposed chapter 11 plan and not out of any treatment imposed by the Bankruptcy Code or other applicable law. *See Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra Petroleum Corp.)*, No. 17-20793, at 8 (5th Cir. Nov. 26, 2019) (collecting cases supporting the proposition that "[a]ll agree that impairment results from what the *plan* does, not what the bankruptcy statute does") (quotation marks and other modifications omitted) (emphasis in the original); *In re SM 104 Ltd.*, 160 B.R. 202, 215 n.25 (Bankr. S.D. Fla. 1993) (finding a party unimpaired whose rights were modified by a prepetition agreement that was assumed postpetition, because the rights, although modified by prepetition agreement of the parties, "were not altered by the plan"); *In re PPI Enters.*, 324 F.3d at 204 ("In other words, a creditor's claim outside of bankruptcy is not the relevant barometer for impairment; we must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or

contractual rights."); *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2016 WL 1118743, at *9 (Bankr. C.D. Cal. March 18, 2016) ("Although the Ninth Circuit interpreted Section 1124(1)'s 'impairment' concept broadly, to include even positive alterations of creditor rights, the court repeatedly referred to changes made 'by the plan.'") (referring to *In re L & J Anaheim Assocs.*, 995 F.2d 940).

**A.  The Subrogation Wildfire Claims Are Impaired Because the Settlement and Treatment of the Allowed Claim Amount are Tied to Confirmation and Consummation of the Debtors' Plan.**

An alteration of rights pursuant to a settlement results in impairment of the applicable class of creditors under a chapter 11 plan when the settlement is inextricably bound up in confirmation of the plan. *See In re Wabash Valley Power Ass'n*, 72 F.3d 1305, 1321 (7th Cir. 1995), *abrogated on other grounds by, Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999), *as recognized by In re Castleton Plaza, LP*, 707 F.3d 821, 824 (7th Cir. 2013); *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202 (Bankr. W.D. Tex. 2008), *aff'd*, 2009 WL 8637183 (W.D. Tex. Sept. 29, 2009), *aff'd*, 632 F.3d 168 (5th Cir. 2011); *cf. In re Lower Bucks Hosp.*, 471 B.R. 419, 457-58 (Bankr. E.D. Penn. 2012) (settlement did not result in third party's claim being rendered unimpaired because, in part, the settlement "was not a stand-alone agreement that was complete and enforceable upon court approval.  The Settlement Stipulation was linked inextricably to confirmation of the Plan.  The enforceability of the material provisions of the Settlement Stipulation were contingent upon the occurrence of the effective date of a plan with provisions consistent with those described in the Settlement Stipulation.").

Courts previously have held that where a claimant enters into a pre-confirmation settlement with a debtor, the settling party maintains an allowed, impaired claim for voting purposes when, as here, payment on account of the settled claim is to occur after confirmation of the chapter 11 plan. *See In re Wabash Valley Power Ass'n*, 73 F.3d 1305; *In re Julian Servs. Indus., Inc*, 220 B.R. 613, 617-18 (Bankr. N.D. Ill. 1998); *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202; *In re Carolina Tobacco Co.*, Case No. BR 05-34156-ELP11, 2006 WL 7074335 (Bankr. D. Or. March 14, 2006) *aff'd*, 360 B.R. 702 (D. Or. 2007), *and vacated on consent*, No. APPEAL 06-1170-KI,

2012 WL 12527885 (D. Or. Feb. 22, 2012) ("I do not think that [the settling party's] agreement to settle its claim against debtor for substantially less than the $105 million it asserted it was owed make it unimpaired for purposes of voting on the plan.").

For example, in *Wabash Valley*, the Court of Appeals for the Seventh Circuit was asked to review the prior decisions of the Bankruptcy Court and District Court approving a settlement between a creditor and the debtor, pursuant to which the creditor was to receive an allowed claim of approximately $460,000, but with any distribution on account of the allowed claim "*contingent upon confirmation of the Wabash Plan*." 72 F.3d at 1310 (emphasis in original). The Court of Appeals held that the creditor's claim, which was fixed and allowed prior to confirmation of the plan, was nevertheless properly found to be impaired under the debtor's plan because the settlement was "inextricably intertwined with and dependent on the reorganization plan. [The creditor's] recovery under the settlement will depend on whether the Wabash Plan is approved." *Id.* at 1321.

Similarly, in *Save Our Springs*, the Bankruptcy Court for the Western District of Texas approved an agreement between the debtor and a litigation counterparty, Mak Foster Ranch, L.P., to settle their dispute for a "fixed and liquidated" amount to be paid pro rata from a settlement fund. 388 B.R. at 213-14, 236. Mak Foster's settlement was expressly conditioned upon confirmation of the plan, permitting both parties to exercise their rights on appeal of the litigation claim if confirmation was denied. *Id.* at 213. Accordingly, the Bankruptcy Court held that "Mak Foster's claim, *because its settlement is contingent upon confirmation, is impaired*." *Id.* at 239 (emphasis supplied). In reaching its conclusion, the Court contrasted the Mak Foster settlement with a settlement between the debtor and another claimant, Cypress-Hays, L.P., which resulted in an immediate dismissal with prejudice of the debtor's appeal—an agreement that "is not dependent on the Court's approval of the Debtor's Plan but rather is a full and unconditional resolution of all claims against each other and a liquidation of Cypress-Hays['] claim against the Debtor." *Id.* at 213, 233. *See also In re Julian Servs*., 220 B.R. at 617-18 & n.10 (holding a creditor lost its right to vote on the debtor's plan of reorganization following a settlement where the creditor was paid "in cash immediately," leaving it with at most an administrative expense claim).

Like the claims that were at issue in the settlements in *Wabash Valley* and *Save Our Springs*, the Subrogation Claims Settlement is plainly conditioned on, and inextricably intertwined with, confirmation and consummation of the Debtors' Plan. The Subrogation Claims Settlement terminates automatically if the Debtors' Plan is not confirmed, and no distributions will be made to any Subrogation Wildfire Claimants on the Allowed Claim Amount unless and until the Debtors' Plan is confirmed and becomes effective. Additionally, under certain circumstances, there is no requirement to pay the $11 billion Allowed Claim Amount in cash, and/or the Allowed Claim Amount no longer would be binding on anyone in the Chapter 11 Cases. *See* RSA §§ 2(a)(ii)-(iii), 3(a)(i), 4, 5(c). Moreover, the mechanism for treating and satisfying any Allowed Subrogation Wildfire Claims is effectuated solely through the Debtors' Plan. All Subrogation Wildfire Claims are to be channeled to, administered by, and paid from, the Subrogation Wildfire Trust to be established pursuant to the Debtors' Plan, which the Debtors will fund with $11 billion in cash on the Effective Date. *See* Debtors' Plan § 6.4(a).

Accordingly, consistent with the applicable authority and the Court's prior statements, the Subrogation Classes are impaired under the Debtors' Plan and entitled to vote thereon.

### B. The Subrogation Classes are Impaired Because the Debtors' Plan Channels Distributions for Allowed Subrogation Wildfire Claims to the Subrogation Wildfire Trust.

As set forth above, impairment is broadly defined to include any alteration of a claimant's legal rights as a result of the treatment under a plan. *See In re L & J Anaheim Assocs*., 995 F.2d at 943. This includes the obvious alteration of rights that occurs when a plan substitutes or replaces the entity to which a party may seek recourse on account of its claims. *See In re Great Barrington Oaks Gen. P'ship*, 15 B.R. 952, 956 (Bankr. D. Utah 1981) ("The bank is impaired because the sale to BMP, even without a due on restriction, changes obligors and therefore alters rights under the instruments memorializing the loan."); *In re NNN 3500 Maple 26, LLC*, No. 13-30402-HDH-22, 2014 WL 1407320, at *5 (Bankr. N.D. Tex. 2014) (finding a creditor was impaired when a different borrower was substituted for the debtor); *Bustop Shelters of Louisville v. Classic Homes, Inc.*, 914 F.2d 810, 814-15 (6th Cir. 1990) (stating a creditor would have been impaired by a substitute obligor

on a loan if the debtor's "obligation to pay the loan was extinguished and a different party substituted to assume the payments"); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 642 (2d Cir. 1988) (noting that a creditor had standing to challenge a plan because the creditor "has economic interests that are directly impaired by the Plan," which included, among other reasons, that "[h]is recourse to the courts to pursue damages for his injuries is limited by the settlement procedures mandated by the Trust").

Pursuant to the Channeling Injunction under Sections 4.19(e) and 10.7 of the Debtors' Plan, each holder of a Subrogation Wildfire Claim will have its Claim permanently channeled to the Subrogation Wildfire Trust, and such Wildfire Subrogation Claim can be asserted exclusively against the Subrogation Wildfire Trust and satisfied solely from the assets of the Subrogation Wildfire Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties. *Id.* at § 4.19(e). Consequently, the Debtors' obligations to the holders of Subrogation Wildfire Claims will be extinguished immediately upon the Debtors' payment of the Allowed Claim Amount to the Subrogation Wildfire Trust in accordance with the Debtors' Plan.

With recourse to only the Subrogation Wildfire Trust—a completely separate entity from the Debtors and Reorganized Debtors—the Subrogation Classes are plainly impaired by the Debtors' Plan.

C.   **The Debtors' Plan Impairs the Subrogation Classes Because the Plan Does Not Provide For the Payment of Postpetition Interest on the Allowed Claim Amount to the Holders of Subrogation Wildfire Claims.**

As formulated, the Debtors' Plan presumes that the Debtors are solvent and, as the Court is aware, there currently is litigation ongoing to determine the appropriate postpetition rate of interest to be paid to the holders of Allowed Unsecured Claims. Nevertheless, the Debtors' Plan expressly provides that no postpetition, and pre-Effective Date, interest will be paid with respect to the Subrogation Wildfire Claims. *See id.* at § 4.19(b).

Numerous courts have held that a party holding an allowed claim against a solvent debtor has a right to receive postpetition interest and, if that right is altered, the party will be impaired. *See*

*Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002) (holding that when a debtor in bankruptcy is solvent, an unsecured creditor is entitled to postpetition interest on its claim at the federal judgment rate); *In re PPI Enters., Inc.*, 324 F.3d at 206 (agreeing with the Bankruptcy Court that Congress "intended that to be unimpaired, the claim must receive postpetition interest" in the context of a solvent debtor); *In re Vill. at Camp Bowie I, L.P.* 454 B.R. 702, 708 & n.13 (Bankr. N.D. Tex. 2011), *aff'd,* 710 F.3d 239 (5th Cir. 2013) (noting in a solvent debtor case that to be unimpaired, a class of unsecured creditors must receive payment in full with interest).

Accordingly, the failure to pay postpetition interest to holders of Subrogation Wildfire Claims in and of itself constitutes impairment of the Subrogation Classes under the Debtors' Plan.

**D.      The Subrogation Classes are Impaired by the Post-Effective Date Delay in Distributions to Holders of Subrogation Wildfire Claims Under the Debtors' Plan.**

The rights of holders of Subrogation Wildfire Claims will be further altered and impaired under the Debtors' Plan because a portion of the distributions to Subrogation Wildfire Claimants from the Subrogation Wildfire Trust will be delayed due to the need to establish reserves to address potential future payments to insureds. This delay will undoubtedly be far longer than the relatively minor (30-60 day) delays in payment of the full amount of creditors' allowed claims that Courts within the Ninth Circuit have previously found to constitute impairment. *See Conn. Gen. Life Ins. Co. v. Hotel Assocs. of Tucson (In re Hotel Assocs. of Tucson)*, 165 B.R. 470, 475 (B.A.P. 9th Cir. 1993) (payment to general unsecured creditors 30 days after the effective date is impairment); *Oxford Life Ins. Co. v. Tucson Self-Storage (In re Tucson Self-Storage)*, 166 B.R. 892, 895 n.5 (B.A.P. 9th Cir. 1994) (A 60 day delay in payment after the effective date is impairment). This delay in payment to holders of Allowed Subrogation Wildfire Claims thus constitutes further impairment by the Debtors' Plan.

## V.    CONCLUSION

For the foregoing reasons, this Court should find the Subrogation Classes are impaired for all purposes under the Debtors' Plan.

Dated:  November 27, 2019

 /s/ Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310-8000
Fax: 212 310-8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496-6723
Fax: 650 636-9251

*Attorneys for Debtors*
*and Debtors in Possession*

 /s/ Matthew A. Feldman
WILLKIE FARR & GALLAGHER LLP
Matthew A. Feldman (*pro hac vice*)
(mfeldman@willkie.com)
Joseph G. Minias (*pro hac vice*)
(jminias@willkie.com)
Benjamin P. McCallen (*pro hac vice*)
(bmccallen@willkie.com)
Daniel I. Forman (*pro hac vice*)
(dforman@willkie.com)
787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728-8000
Fax:  212 728-8111

DIEMER & WEI, LLP
Kathryn S. Diemer (#133977)
(kdiemer@diemerwei.com)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Tel: 408 971-6270
Fax: 408 971-6271

*Counsel for Ad Hoc Group of Subrogation*
*Claim Holders*