1  Dennis F. Dunne (admitted *pro hac vice*)
   Samuel A. Khalil (admitted *pro hac vice*)
2  MILBANK LLP
   55 Hudson Yards
3  New York, New York 10001-2163
   Telephone: (212) 530-5000
4  Facsimile: (212) 530-5219

5  and

6  Gregory A. Bray (SBN 115367)
   Thomas R. Kreller (SBN 161922)
7  MILBANK LLP
   2029 Century Park East, 33rd Floor
8  Los Angeles, CA 90067
   Telephone:  (424) 386-4000
9  Facsimile:  (213) 629-5063

10 *Counsel for the Official Committee
   of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STATEMENT AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING SUBROGATION CLAIM IMPAIRMENT ISSUE**<br><br>Date: January 14, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 4540 |

Pursuant to the Bankruptcy Court's *Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues* (the "Briefing Order") [Docket No. 4540], the Official Committee of Unsecured Creditors (the "UCC") appointed in the chapter 11 cases of the above-

captioned debtors (the "Debtors"), hereby respectfully submits this statement and reservation of rights with respect to the following issue: "whether HoldCo Subrogation Wildfire Claims or Utility Subrogation Wildfire Claims that are settled and allowed as provided in the Subrogation Claims Settlement . . . are impaired for chapter 11 plan purposes." See Briefing Order ¶ 10.

When the Briefing Order was entered, the hearing on the RSA Motion[1] was set for November 13, 2019. The sequence of events thus would have provided the parties with the benefit of a ruling on the RSA Motion prior to the submission of briefs on the Subrogation Claims impairment issue. This timing was logical, because the outcome of the RSA Motion directly impacts whether and how the proposed settlement of the Subrogation Claims will work, in the context of the Debtors' Plan and otherwise—issues that are directly germane to the Subrogation Claims impairment issue.

Subsequent to the entry of the Briefing Order, the Court, at the request of the Debtors, has several times continued the hearing on the RSA Motion. The RSA Motion is now scheduled to be heard on December 4, 2019. This development has inverted the originally contemplated sequence of events, such that the deadline for briefing the Subrogation Claims impairment issue now precedes the hearing on the RSA Motion. The problem this creates is that, without knowing the actual terms on which the Court may approve the RSA Motion, if at all, it is speculative at this time to engage in arguments with respect to the impairment of the Subrogation Claims. Indeed, the Court has already indicated in its *Tentative Considerations on Objections to Amended and Restated Restructuring Support Agreement* [Docket No. 4872] that it is not inclined to approve the RSA Motion without certain material revisions. The UCC therefore reserves it rights to more fully

---

[1] See *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of Settlement with such Consenting Subrogation Claimholders, Including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* [Docket No. 3992] (the "RSA Motion"). Capitalized terms not defined herein shall have the meanings ascribed to them in the RSA Motion.

address this issue in its reply brief after the Court has ruled on the RSA Motion and after there is more certainty as to the impact of the various terms of the RSA on the proposed settlement and plan treatment of the Subrogation Claims.

Nonetheless, as a preliminary matter, the UCC maintains that the RSA (at least as presently proposed), not the Debtors' plan of reorganization (the "Debtors' Plan"), acts in all material respects to resolve the claims of the Subrogation Claimants, such that the Subrogation Claims are not impaired under the Debtors' Plan, which would merely implement that prior resolution. For example:

- The settlement would immediately grant the Subrogation Claimants an allowed $11 billion claim for all purposes in these cases, unless the Subrogation Claimants opt out of the settlement (RSA § 5(f)(iii)(D));
- The RSA determines the treatment of this allowed claim—payment in full in cash (RSA § 4); and
- The settlement compels the Subrogation Claimants' acceptance of the Debtors' Plan. (RSA § 2(a)(ii)).

In analogous circumstances, courts have recognized that where plan treatment merely consists of satisfaction of claims in a manner agreed to under a pre-plan settlement of those claims, the class in which those claims reside is not impaired. See, e.g., In re Drexel Burnham Lambert Grp., 960 F.2d 285, 290 (2d Cir. 1992) (explaining that where a postpetition settlement agreement established the rights of the members of the class of security litigation plaintiffs and the plan satisfied their claims in accordance with such settlement, "the class members were unimpaired within the meaning of 11 U.S.C. § 1124(1)."). Moreover, in In Matter of Wabash Valley Power Ass'n., 72 F.3d 1305, 1321 (7th Cir. 1996), the Seventh Circuit made a distinction between claims subject to a settlement that is contingent on plan confirmation and claims that have been finally settled prior to confirmation. Specifically, the Seventh Circuit held that where "a claim has been settled prior to confirmation of a reorganization plan . . . confirmation therefore leaves the parties'

rights unaffected."

The treatment of the Subrogation Claims is a foregone conclusion if the Court approves the RSA Motion. See RSA §5(f)(iii)(D) ("absent delivery of an Allowance Termination Notice, the occurrence of an Insolvency Termination, or termination by the Debtors of this Agreement in accordance with Section 5(e)(i) hereof, the Allowed Subrogation Claim Amount, and each holder's share thereof, shall remain an allowed claim and binding in these Chapter 11 Cases even if a Debtor is in breach of this Agreement.").

Given applicable law, the UCC continues to challenge the position that the Subrogation Claims are impaired. As stated above, however, this issue is intertwined with the ultimate form of the RSA as approved by the Court. As such, the UCC believes that the issue of whether the Subrogation Claims are impaired is not yet ripe, and expressly reserves its rights to further brief the issue presented following the Court's final decision with regard to the RSA Motion.

Dated: November 27, 2019

**MILBANK LLP**

*/s/ Gregory A. Bray*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*