WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**SUPPLEMENTAL DECLARATION OF GENO ARMSTRONG IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 AMENDING THE SCOPE OF THE RETENTION OF KPMG LLP AS INFORMATION TECHNOLOGY, RISK, AND LEGAL SUPPORT CONSULTANTS TO THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO APRIL 8, 2019**<br><br>[No Hearing Date Requested] |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Geno Armstrong, being duly sworn, deposes and says:

I am a principal at KPMG LLP ("**KPMG**"), a professional services firm ("**KPMG**"). I am duly authorized to make this supplemental declaration (this "**First Supplemental Armstrong Declaration**") on behalf of KPMG and submit it (i) in support of the *Supplemental Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 Amending the Scope of the Retention of KPMG LLP as Information Technology, Risk, and Legal Support Consultants to the Debtors Nunc Pro Tunc to Petition Date* (the "**Supplemental Application**"); and (ii) in compliance with the *Order Pursuant to 11 U.S.C. Sections 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ KPMG LLP as Information Technology, Risk, and Legal Support Consultants to the Debtors Nunc Pro Tunc to Petition* Date (the "**Initial KPMG Retention Order**") [Docket No. 2171].[1] Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. On May 21, 2019, the Debtors filed the *Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Employ and Retain KPMG LLP as Information Technology, Risk and Legal Support Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 2171] (the "**KPMG Retention Application**"). Thereafter, on June 11, 2019, the Bankruptcy Court entered an order approving the Retention Application on a final basis [Docket No. 2503] (the "**KPMG Retention Order**"). Pursuant to the KPMG Retention Order, the Debtors are required to seek Bankruptcy Court approval to the extent they request KPMG to perform any service other than those set forth therein.

This First Supplemental Armstrong Declaration is a supplement to the original declaration dated May 21, 2019 [Docket No.2172] (the "**Original Armstrong Declaration**") in connection with the retention of KPMG as information technology, risk, and legal support consultants for PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") to perform those services (the "**Supplemental Services**") each as summarized in the Supplemental Application upon the terms and conditions more specifically set forth in that certain

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Supplemental Application.

Master Services Agreement dated as of January 17, 2017, together with the change order dated as of November 20, 2018 (both attached as **Exhibit 1-A** to the Original Armstrong Declaration) and the extension dated as of June 10, 2019 attached hereto as **Exhibit 1-I**, and nine distinct contracts and three change orders to previously-approved contracts by and between the Debtors and KPMG, attached hereto as **Exhibits 1-J** through **1-T** (the "**Supplemental MSA Contracts**"). I hereby incorporate by reference the Original Armstrong Declaration as if its contents were set forth fully herein.

In an effort to ensure continued and uninterrupted provision to the Debtors of necessary services, KPMG and the Debtors entered into agreements for several Supplemental MSA Contracts described in greater detail below, recognizing that such agreements would ultimately need to be approved by the Court upon supplemental application. KPMG will provide additional information technology, risk, and consulting services to the Debtors including, without limitation, the following services as more particularly described in the applicable designated agreements:

a) Continue to assist the Debtors with their migration from Siteminder to Ping (information technology software platforms) (the "**IT Software Services – Phase II**") as described in **Exhibit 1-J** to the Supplemental Armstrong Declaration), including a change order to extend services to the Debtors by 17 weeks (the "**IT Software Services – Phase III**") as described in **Exhibit 1-K** to the Supplemental Armstrong Declaration);

b) Perform an analysis of the Quanta Service Inc. payment applications related to the performance of construction management services, which have been submitted to the Debtors (the "**Quanta Invoice Review**", as described in **Exhibit 1-L** to the Supplemental Armstrong Declaration);

c) Assist with the Debtors' Endpoint Security Strategy Assessment and development of a plan to implement changes to that strategy (the "**Endpoint Security Strategy Assessment**"), as described in **Exhibit 1-M** to the Supplemental Armstrong Declaration);

d) Provide the Debtors with staff members to support the Debtors' personnel with respect to their security initiatives (the "**Data Security Loan-Staff Services**", as described in **Exhibit 1-N** to the Supplemental Armstrong Declaration);

e) Provide tax and accounting advice in response to inquiries from the Debtors (the "**Tax and Accounting On-Call Services**", as described in **Exhibit 1-O** to the Supplemental Armstrong Declaration);

f) Assist the Debtors' Cybersecurity Risk and Strategy organization in performing scanning and data protection, including providing on-premise structured data repositories (the "**Data Security Services**", as described in **Exhibit 1-P** to the Supplemental Armstrong Declaration);

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

g) Assist Debtors' Cybersecurity Risk and Strategy organization in performing data protection activities as they relate to CCPA compliance activities (the "**Data Security CCPA Support Staff**", as described in **Exhibit 1-Q** to the Supplemental Armstrong Declaration);

h) Assist the Debtors in analyzing payments to certain authorities related to notices of violation for non-conformance with encroachment permit requirements (the "**Permitting Spend Analysis**" as described in the two agreements included as **Exhibit 1-S** to the Supplemental Armstrong Declaration);

i) Continue to support Debtors' internal counsel in connection with Debtors' development of certain aspects of its transmission, distribution and substation inspection programs (the "**Asset Management Services – Change Order 1**" including a change order to extend the scope as described in **Exhibit 1-R** to the Supplemental Armstrong Declaration); and

j) Continue to support the Debtors' internal counsel in connection with Debtors' development of certain aspects of its transmission, distribution and substation inspection programs, in relation to repair work (the "**Asset Management Services – Change Order 2**" including a change order to extend the scope as described in **Exhibit 1-T** to the Supplemental Armstrong Declaration).

In addition to the foregoing, KPMG, at the request of the Debtors, may provide additional services deemed appropriate and necessary to benefit the Debtors' estates. Should KPMG agree in its discretion to undertake any such matter, KPMG and the Debtors may enter into additional agreements and will seek separate retention orders with regard to any such additional agreements. As set forth in the Original Armstrong Declaration, KPMG intends to apply to the Court for allowance of compensation and reimbursement of expenses for the information technology, and risk support services performed for the Debtors, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701], and any further Orders of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**"), both in connection with this Application and any interim and final fee applications to be filed by KPMG in these Chapter 11 Cases, in accordance with the terms and conditions of the Supplemental MSA Contracts. Moreover, the Debtors are advised that KPMG intends to make a reasonable effort to comply with the requests of the United States Trustee ("the **U.S. Trustee**") for information and additional disclosures as set forth in the Fee Guidelines or any other applicable Orders.

KPMG's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms set forth in the Supplemental MSA Contracts. Subject to this Court's approval, KPMG requests compensation, in accordance with its customary terms and conditions of employment, including the proposed compensation arrangements.

A. **Fixed Fee Arrangements:**

The Debtors and KPMG have agreed to fixed-fee compensation for the Data Security Services and Endpoint Security Strategy Assessment. Payment of the fixed fee is dependent on an iterative process by which stages of the project go through a formal review, including a detailed walkthrough, modifications (if required) and formal acceptance. In addition, the fee estimates are based on the assumption that the Debtors will provide the information and assistance necessary for KPMG to complete each assignment.

| Services | Fixed-Fee Amount | Fees Paid Prepetition | Fees Sought Postpetition |
|---|---|---|---|
| **Endpoint Security Strategy Assessment** | $172,500.00[2] | $0 | $172,500 |
| **Data Security Services** | $2,705,013.50 | $0 | $2,705,013.50 |

B. **Hourly Arrangements:**

The hourly rates set forth below are KPMG's applicable hourly rates for the work of its professionals and staff members to be provided to the Debtors other than with respect to the fixed fee engagements described above. These hourly rates reflect KPMG's normal and customary billing practices for engagements of this complexity and magnitude. KPMG's hourly rates are subject to periodic adjustment and/or increase from time to time in accordance with KPMG's established billing practices and procedures. The Debtors have agreed to compensate KPMG for professional services rendered at its normal and customary hourly rates, subject to the reductions discussed below. To the extent such hourly rates are increased, KPMG will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

---

[2] The fixed-fee amount is capped at $150,000. Expenses are capped at $22,500.

| Billing Category | IT Software Services – Phase II/III[3] | Quanta Invoice Review[4] | Data Security Loan Staff[5] | Tax and Accounting On-Call Services[6] | Data Security CCPA Support Staff[7] | Permitting Spend Analysis[8] | Asset Management Services - Change Order 1/II[9] |
|---|---|---|---|---|---|---|---|
| Partner / Managing Director | N/A | $500/$475 | N/A | $850 | N/A | $625 | $500/$475 |
| Director | N/A | $435 | N/A | $750 | N/A | $550 | $435 |
| Manager | N/A | $400 | $224 | $620 | $224 | $475 | $400 |
| Senior Associate | $225 | $325 | N/A | $525 | N/A | $425 | $325 |
| Associate | N/A | $275 | N/A | N/A | $135 | $325 | $275 |
| Paraprofessional | N/A | $235 | N/A | N/A | N/A | N/A | N/A |

Additionally, KPMG will invoice the Debtors for its reasonable out-of-pocket expenses charged during these Chapter 11 Cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use or value-added tax, as well as non-ordinary costs such as secretarial and other overtime.

---

[3] The majority of fees to be charged in the IT Software Services engagement reflect a reduction of approximately 70% - 74% from KPMG's normal and customary rates, depending on the types of services to be rendered. Fees are billed to a cap of $635,085 (inclusive of a $57,735 cap on expenses). A rate of $225 per hour was included for Lead Specialist in the Original Armstrong Declaration, **Exhibit 1-E**.

[4] The majority of fees to be charged for the Quanta Invoice Review reflect a reduction of approximately 39% - 56% from KPMG's normal and customary rates, depending on the types of services to be rendered and the services are billed at a cap of $207,900 (inclusive of a $18,900 cap on expenses). The specific hourly rates do not appear in the Supplemental MSA Contract.

[5] The majority of fees to be charged for the Data Security Loan Staff reflect a reduction of approximately 75% from KPMG's normal and customary rates, depending on the types of services to be rendered and the services are billed at a cap of $262,528.

[6] The majority of fees to be charged for the Tax and Accounting On-Call Services reflect a reduction of approximately 24% - 36% from KPMG's normal and customary rates, depending on the types of services to be rendered and the services are billed at a cap of $90,000.

[7] The majority of fees to be charged for the CCPA Loan Staff reflect a reduction of approximately 51%-75% from KPMG's normal and customary rates, depending on the types of services to be rendered and the services are billed at a cap of $219,584 (inclusive of a $40,000 cap on expenses).

[8] The majority of fees to be charged for the Permitting Spend Analysis reflect a reduction of approximately 10% - 44% from KPMG's normal and customary rates. The services for the initial phase of the project are billed at a cap of $335,019 (inclusive of a $24,769 cap on expenses), and the services for the second phase of the project are billed at a cap of $1,290,000 (inclusive of a $90,000 cap on expenses).

[9] The majority of fees to be charged for the Asset Management Services reflect a reduction of approximately 39% - 56% from KPMG's normal and customary rates, depending on the types of services to be rendered and the services are billed at a cap of $8,805,000.

It is not the practice of KPMG's professionals to keep detailed time records in one-tenth-of-an-hour increments (*i.e.*, six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of KPMG's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5) increments. Thus, consistent with the KPMG Retention Application, KPMG requests that this Court allow KPMG's professionals to provide the following in its monthly, interim, and final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly, interim, and final fee application that KPMG files in these Chapter 11 Cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in half-hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

Given the nature of the services to be provided by KPMG, such billing format and associated time details will be sufficient for the Debtors and other parties-in-interest to make informed judgments regarding the nature and appropriateness of KPMG's services and fees.

I believe that these fee structures and compensation arrangements for each of the Supplemental MSA Contracts are market-based and reasonable considering KPMG's vast knowledge and experience.

It is my understanding that the Debtors intend that the services of KPMG will complement and not duplicate the services rendered by any other professional retained in these Chapter 11 Cases. KPMG understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

As part of the overall compensation payable to KPMG under the terms of the Supplemental MSA Contracts, the Debtors have agreed to certain indemnification obligations. The terms of the Supplemental MSA Contracts and the indemnification provisions therein were negotiated in good faith and at arm's length.

To the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, KPMG neither holds nor represents an interest adverse to the Debtors' estates that would impair KPMG's ability to objectively perform professional services for the Debtors, in accordance with section 327 of the Bankruptcy Code. To the best of my knowledge, KPMG continues to be a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that, KPMG:

a) Is not a creditor, an equity security holder, or an insider of the Debtors;

b) Is not and was not, within two years before the date of filing of these Chapter 11 Cases, a director, officer, or employee of the Debtors; and

c) Does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

KPMG has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these Chapter 11 Cases.

KPMG is the United States member firm of KPMG International, a Swiss cooperative of member firms, each a separate legal entity, located worldwide. Only KPMG is being retained in these matters. KPMG cannot assure that an engagement will not be accepted by a foreign member firm of KPMG International for another party that may bear upon KPMG's engagement by the Debtors. However, to the extent KPMG is aware of such engagement and believes such engagement may bear upon KPMG's engagement by the Debtors, KPMG will file a supplemental declaration with the Bankruptcy Court.

From time to time, KPMG may use the services of certain professionals from the other member firms of the KPMG network of independent firms and firms and entities controlled by, or under common control with, one or more such member firms (collectively, "**KPMG Parties**") when necessary to the performance of its professional duties and services to the Debtors. The use of such professionals allows KPMG to maximize resources and minimize costs to the Debtors' estates. KPMG will pay such KPMG Parties directly for the use of such professionals, and will include such amounts in its fee application at KPMG cost without any mark-up or increase.

In addition, from time to time, KPMG may use independent contractors, such as software providers. However, KPMG will not profit from the use of such persons.

As part of its practice, KPMG appears in many cases, proceedings, and transactions involving many different law firms, financial consultants, and investment bankers in matters unrelated to these bankruptcy cases. KPMG has not identified any material relationships or connections with any law firm, financial consultant or investment banker involved in these Chapter 11 Cases that would cause it to be adverse to the Debtors, the Debtors' estates, any creditor or any other party-in-interest. If and when additional information becomes available with respect to any other relationships which may exist between KPMG, foreign member firms of KPMG International, or their partners and professionals and the Debtors, creditors, or any other Potential Parties-In-Interest which may affect these cases, supplemental declarations describing such information shall be filed with this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated November 27, 2019

/s/ _____
Geno Armstrong
KPMG LLP
55 Second Street, Suite 1400
San Francisco, CA 94105

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119