# EXHIBIT 1-J



Contract Work Authorization

# Contract Work Authorization (CWA)

This Contract Work Authorization ("CWA") No. C14760 is issued under and pursuant to the Blanket Agreement or Master Service Agreement No. C73-V6 – (4400011340) dated January 19, 2017 (the "MSA") between the below-named Contractor ("Contractor"), a Delaware limited liability partnership, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

| | | |
|---|---|---|
| Contractor's Legal Name: | KPMG LLP DEPT 0922 | Total Number of Pages: 11 |
| Contractor's Address: | P.O. Box 120001<br>DALLAS, TX 75312 | |

| | |
|---|---|
| Project Name: | SiteMinder to Ping Migration Initiatives |
| Job Location: | PG&E Designated Locations – 77 Beale Street, San Francisco, CA 94105 |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract Work Authorization and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Statement of Work

The contractor will be providing professional services to support the SiteMinder to Ping Migration Initiative as fully defined in the attached Statement of Work.

**ATTACHMENTS**: Each of the following documents are attached to this CWA and are incorporated herein by this reference:
Attachment 1: Statement of Work, (Pages 3 to 11)

**CWA TERM**: This CWA is effective upon signature by both parties and expires on 07/26/2019. Time is of the essence.

**CWA COMPLETION**: Contractor shall commence performance hereof when directed to do so by PG&E and Work shall be completed by the completion date of 07/26/2019.

**CONSIDERATION**: As full consideration for satisfactory performance of the Work under this CWA by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E CWA Change Order, fully executed by both PG&E and Contractor.

**TOTAL**: $635,085 ($577,350 Labor and $57,735 Travel Expense)

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**," and, together with PG&E Corp., the "**Debtors**"), are debtors-in-possession in a proceeding pending under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of California. Nothing herein shall be deemed to constitute an assumption of the Contract or this Change Order, or a waiver or modification of the Debtors' rights to assume, assume and assign, or reject the Contract or this Change Order pursuant to section 365 of the Bankruptcy Code. The Debtors hereby reserves all rights available to them under such proceedings. Any amounts paid by the Debtors pursuant to this Contract or Change Order must be applied to services provided to the Debtors on or after January 29, 2019 (the "**Petition Date**") and shall not be applied to satisfy Claims (as defined in the Bankruptcy Code) arising prior to the Petition Date.

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT WORK AUTHORIZATION.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: KPMG LLP DEPT 0922 | |
|---|---|---|---|
| Signature | *Herbert Sien* (DocuSigned) | Signature | *Michael Gomez* (DocuSigned) |
| Name | Herbert Sien | Name | Michael Gomez |
| Title | Supervisor, Sourcing Operations | Title | Principal |
| Date | 4/19/2019 | Date | 4/19/2019 |

1

DocuSign Envelope ID: FB02672C-77AF-4CC5-897E-ACFAB910B557



### ADMINISTRATION

| | | | |
|---|---|---|---|
| **PG&E Negotiator** | Adrienne Lee | **Contractor Represent** | Michael Gomez |
| **Phone** | 415.973.5104 | **Phone** | 209.999.9383 |
| **Email** | Axl5@pge.com | **Email** | Michael Gomez@kpmg.com |

| | |
|---|---|
| **Accounting Reference** | PR311658 C14760 CW2287695 by Tom Leserman - LAW |
| **PG&E Work Supervisor:** | Shan Hunt    **Phone:** 925.459.6170 |

| | |
|---|---|
| **INVOICE INSTRUCTIONS:** As described in more detail in the Invoicing section of the Terms and Conditions, Contractor shall send invoices for each payment when due, showing the Purchase Order Number (starts with "27" or "35") and the Line Item number, if applicable. | The default submission system for invoices to PACIFIC GAS AND ELECTRIC COMPANY should be through the Taulia electronic invoicing portal, which also provides real-time invoice payment status.<br><br>In rare cases that it is infeasible for a supplier to use this system, please send paper invoices to the address below. Invoice payment status for paper invoices can be accessed through the automated PG&E Paid Help Line at (800) 756-PAID (7243) or by emailing APPaidline@pge.com |
| | **Send ORIGINAL Invoice to:** PG&E Accounts Payable*<br>PO Box 7760<br>San Francisco, CA 94120-7760 |
| | **Send COPY of Invoice to:** Send the itemized copy of the invoice via email directly to Shan Hunt at L3h2@pge.com |

### INTERNAL PG&E USE ONLY

| | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies:** | ☐ ARIBA Contracts ("CXXXX" series): Buyer uploads an executed copy in Ariba. | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |



Attachment 1

# Statement of Work – SiteMinder to Ping Migration

This Statement of Work ("SOW") outlines the engagement between Pacific Gas and Electric Company ("PG&E," "Company," or "Client") with KPMG LLP ("KPMG" or "Contractor") to perform the services described below.

The governing Master Services Agreement for this work is **#4400011340**, executed January 19, 2017 and supersedes all other oral and written representations, understandings, or agreements relating to the subject matter hereof, as amended and as supplemented by the Systems Implementation Addendum in Appendix A.

## 1.0 SCOPE OF WORK

KPMG's services will include, but are not limited to, the activities listed below in support of the SiteMinder to Ping Migration Initiatives ongoing at PG&E. The bulleted tasks detail where these activities will be in continuation of the existing SiteMinder to Ping Migration project ("Project").

| Activities | Tasks |
|---|---|
| Project Management Support | <ul><li>Contribute to scoping of Project requirements and objectives</li><li>Provide weekly Project status reports, detailing the current activities, issues, and risks identified by the KPMG team</li><li>Manage KPMG team members and coordinate Project tasks between KPMG and PG&E team members</li></ul> |
| Subject Matter Support | <ul><li>Provide subject-matter support for the following activities:<ul><li>Application Integration Support<ul><li>KPMG will work with application teams to define integration requirements and implement Ping platform components in DEV and/or TEST</li><li>KPMG will move the policies and configurations from the DEV to TEST environments (assuming the application has a TEST environment)</li><li>Deployment guides will be created for each application (or set of applications) detailing how to migrate policies and configurations from the lower environment(s) [DEV and/or TEST] to the upper environments [QA and/or PROD]</li><li>Troubleshooting and testing support of application integrations</li></ul></li></ul></li><li>Assist with troubleshooting Ping-related issues and/or integration activities</li></ul> |

### 1.1 ACTIVITIES NOT IN SCOPE

The following activities are not in scope for the Project:
- Re-writing firewall rules
- Re-writing Layer7 logic/rules
- Building individual custom non-PingFederate hosted login pages per application
- Any custom build requirements for application integration
    - Example: impersonation/Layer7/EUM
- Any other activity or deliverable not specifically mentioned in Section 1.0 or Section 2.0



## 2.0 DELIVERABLES

KPMG will be responsible for producing the deliverables listed in the tables below for each of the activities scoped into this engagement.

| Project-Specific Deliverables | |
|---|---|
| **Activities** | **Deliverables /Configured System** |
| Subject Matter Support | <ul><li>Ping configurations and Ping policies for application integration in the DEV and TEST environments</li><li>Design document detailing integration architecture</li><li>Documentation related to integration of applications with the Ping platform</li></ul> |
| Project Management Support | <ul><li>Weekly Project status reports</li></ul> |

## 3.0 KEY PERSONNEL

**Engagement Partner: Michael Gomez, Principal,** will be responsible for contracts and relationship management, and is available as a source of escalation as needed.

**Engagement Manager: Robert Villegas**, Senior Associate, will be the primary resource for coordinating KPMG's services. He also will serve as the Project Manager, leading all of the KPMG services and associated tasks delivered under this SOW.

**Engagement Staff:** Will be responsible for supporting in KPMG's overall service delivery, and will consist of **Matthew Rice, Rama Bhaskara, and Rohit Nagdeo.**

## 5.0 ENGAGEMENT FEES and EXPENSES

KPMG's professional fees are based upon the specified skill level of the professionals providing the services and the amount of time and materials required to complete the engagement.

**Fees.** Based upon the engagement scope, assumptions, and estimated hours, KPMG anticipates total fees of **$577,350.** Our professional fees in this SOW are further discounted from the professional fee hourly rates outlined in the MSA. As such, the professional fees included in this SOW are not subject to further discounting, and both the volume rebate and early pay provisions included in the MSA does not apply. Execution of this SOW shall satisfiy the requirement of the MSA Exhibit C regarding hourly rates.

**Expenses.** KPMG team members' out-of-pocket expenses will be capped at 10 percent of total fees, or **$57,735.** These expenses will cover the travel costs of non-local professionals to and from the Client's primary office of 77 Beale St, San Francisco, CA, or other location as deemed necessary by Client. Meals will be covered for non-local professionals based upon a per diem rate of $76 per day. KPMG will bill its actual cost for hotel at a rate not to exceed $300 per night, which shall satisfy the provisions of section 5.1.7 of Exhibit A of Attachment 1 to the MSA.



The table below shows the estimated fees and expenses for the period of 3/18/2019 through 7/26/2019.

| KPMG Professional | Level | Duration | Hours | Fee |
|---|---|---|---|---|
| Michael Gomez | Principal | March – July 2019 | 40 | $0 |
| Robert Villegas | Senior Associate | March – July 2019 | 334 | $225.00 |
| Matt Rice | Lead Specialist | March – July 2019 | 744 | $225.00 |
| Rohit Nagdeo | Lead Specialist | March – July 2019 | 744 | $225.00 |
| Rama Bhaskara | Senior Associate | March – July 2019 | 744 | $225.00 |
| Sub-total of hours and fees | | | 2,566 | $577,350 |
| *Expenses (Cap = 10% of fees) | | | $57,735 | |
| Total fees and expenses | | | | $635,085 |

## 6.0  ENGAGEMENT ASSUMPTIONS

The success of this Project is highly dependent on Project coordination and support from PG&E:

- PG&E will work with KPMG to resolve any and all issues related to the Project in a timely fashion
- PG&E will identify a program manager and technical architect to work with KPMG. The PG&E program maanger will assist in identifying appropriate resources to engage to help obtain relevant technical information, actively participate in technical analysis and performing Project management and status reporting tasks. PG&E will also identify a Project owner for this project. KPMG will transfer the information and knowledge of the Project to the identified Project owner.
- The PG&E program manager will oversee the conduct of this project, including coordination of PG&E resources needed and review of draft deliverables. PG&E personnel assigned to the Project will review draft deliverables on a timely basis.
- PG&E and KPMG will conduct this Project collaboratively, whereby PG&E will assign representatives to work with KPMG professionals throughout the project. Should PG&E be unable to assign representatives to work with KPMG, KPMG and the Project sponsor would agree to meet and determine the impact and the appropriate course of action.
- PG&E personnel will perform the actual migration of policies and configurations to the upper environments with KPMG providing assistance/support to PG&E personnel should issues arise
- 
- PG&E management is responsible for establishing and maintaining an effective internal communication and control structure.
- PG&E will provide appropriate workspace for the KPMG resources on-site, including, but not limited to, telephones, workstations, printers, whiteboards, office supplies, photocopiers, internet access, and fax machines.
- PG&E will provide timely sign-off for each Project phase. Deliverable sign-off will occur within five working days from the submission of deliverables.
- PG&E will provide resources, including hardware, software, and personnel
- PG&E will be responsible for the purchase and acquisition of hardware and software necessary to complete the scope of this engagement

DocuSign Envelope ID: FB02672C-77AF-4CC5-897E-ACFAB910B557

- PG&E will be responsible for the hardening of operating systems on the in-scope servers, according to PG&E's information security and support standards
- PG&E will provide all necessary software, hardware, and resources necessary for testing activities
- PG&E will assign resources for the purpose of user acceptance testing. Applicable acceptance criteria and acceptance testing protocols will be developed in conjunction with the identification of the business, functional, and technical requirements, and in the development of the testing plans
- Any enhancements or requirement changes after implementation will require additional KPMG hours and effort
- KPMG will not be directly responsible to fix any product defects, but will work with product vendor to resolve the defects under PG&E's vendor support contract
- The first level of operational support will be provided by PG&E
- Authorized support activities may include:
  o Completion of items identified on the issue log
  o Assigned KPMG resource will work with the KPMG engagement manager to complete all necessary issue tracking and resolution documentation
- KPMG will not be responsible for cleansing of inaccurate data within the current directories or data sources
- KPMG will not be responsible for technical troubleshooting non-production and production system
- While KPMG is being selected as the business integrator of the Ping implmentation, KPMG will not be responsible for activities related to technical support of production solutions after deployment is complete
- The responsibility for establishing and maintaining adequacy of the controls in place over security and directing activities related to the assessment of business processes and controls rests with management of PG&E. With regard to KPMG's services, PG&E is responsible for:
  o Designating a management-level individual who will have responsibility to oversee, along with the KPMG team, the Project progress and address issues as they arise
- KPMG efforts and timelines were created based on assumptions of PG&E maintaining Project deliverable timeline commitments. Should PG&E delay in delivery of Project commitments, KPMG timelines will be impacted and may result in the need for additional time, effort and budget.
  o This effort outlined in this SOW is based on PG&E's timeline commitments:
    - Big Bang/Wave 1 applications being deployed to QA environment by 5/3/19
      - Big Bang/Wave 1 consists of:
        - MyAccount (with proxy app)
        - ExpressConnect (with proxy app and legacy version)
        - ShareMyData (all portals)
        - 
        - DownloadMyData
        - Mobile Home Park
        - Vegitation Management
        - EIMP
    - Big Bang/Wave 1 applications being deployed to PROD environment by 5/31/19
    - Wave 2 applications deployed to QA environment by 7/12/19
      - Wave 2 consists of:
        - Mapping Apps
        - Gen Ref
        - eTransDataFileShare
        - Property Management Portal (with proxy app)
        - Building Benchmarking (with proxy app)
        - Outage Tool
        - GTS/CGTS
    - Wave 2 applications deployed to PROD by 7/26/19
    - Wave 3 applications deployed to QA by 8/23/19
      - Wave 3 consists of:
        - External TIL Viewer
        - ESFT/SFT
        - ODMS
        - PGE Connect NPS
        - eStar/AUDI
    - Wave 3 applications deployed to PROD by 8/30/19
    - Remaining internal applications will be deployed no later than the completion of Wave 3 applications 8/30/19
  o PG&E gives KPMG the right to use PG&E's logo on documents prepared for PG&E internally (e.g., internal presentations, etc.) and for no other purpose.

DocuSign Envelope ID: FB02672C-77AF-4CC5-897E-ACFAB910B557

## 7.0 OTHER MATTERS

KPMG will act as an independent contractor in providing the services as set out in this SOW and does not undertake to perform obligations of PG&E, whether regulatory or contractual. In carrying out our work hereunder:

- KPMG will not act in the capacity equivalent to a member of management or as an employee of PG&E
- KPMG will provide observations to PG&E management during this engagement. PG&E management is solely responsible for evaluating such observations and then determining what changes/improvements (if any) PG&E should implement in light of PG&E's objectives in carrying out the "SiteMinder to Ping Migration" Project to which KPMG's services hereunder relate (the "Project")
- KPMG will not form part of the PG&E's internal control structure
- KPMG will not assume overall responsibility for the Project
- KPMG will not supervise Client or other third-party personnel performing activities in the areas of technical design, coding, and/or configuration of the Ping platform (Ping Access and Ping Federate)

- Agreeing to a written management framework that identifies Client managers responsible for approvals and judgments and for approving key milestones and interim and final deliverables as defined by PG&E
- Evaluating the adequacy of the procedures performed by KPMG
- Evaluating the observations and recommendations arising from KPMG's services contemplated by this SOW

PG&E is responsible for ensuring that appropriate internal or third-party resources are available to execute those areas of the Project that KPMG will not supervise or execute, including, but not limited to, technical systems design, coding, and configuration.

Contractor will provide our services in accordance with the terms and conditions of this SOW. Contractor's services as outlined in this SOW constitute an Advisory Engagement conducted under the American Institute of Certified Public Accountants ("AICPA") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report, or agreed-upon procedures engagement as those services are defined AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by Contractor directly reporting on financial data or internal control or expressing a conclusion or any form of assurance.

The deliverables presented as part of this engagement are for the internal use of PG&E management, the Audit Committee, and Board of Directors and are not to be distributed externally to third parties, in whole or in part, without prior written consent from Contractor in each instance, or used for any other purpose. Contractor disclaims any intention or obligation to update or revise the observations whether as a result of new information, future events or otherwise. Should additional documentation or other information become available which impacts upon the observations described in the Deliverables, Contractor reserves the right to amend its observations and summary documents accordingly.

KPMG acknowledges that the Bankruptcy Court must approve the terms of this SOW and its fees in order for KPMG to be compensated. In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. The Company acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. The expense required by this effort was not included in the estimated fees described above. The Company agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for up to 3% of fees associated with professional time incurred.

To the extent that the services involve procedures in connection with the Company's restructuring activities or emergence from bankruptcy, such work will be considered out-of-scope services under the engagement letters ("Out-of-Scope Services"). Such Out-of-Scope Services also include professional time required to prepare detailed applications in accordance with the Bankruptcy Code (described above). To the extent that changes in circumstances, such as the loss of Company personnel during the bankruptcy process, increase the effort required to deliver the services, this additional effort also will be billed as Out-of-Scope Services. Out-of-Scope Services will be billed in addition to the estimated fees described above, at [100% of] our standard professional hourly rates. In its fee applications, KPMG will identify and describe any Out-of-Scope Services.

The provisions in this "Engagement Fee Schedules" will apply with respect to this SOW notwithstanding anything in the MSA to the contrary. Without limiting the generality of the foregoing, the Statement of Work Template

Requirements set forth in Exhibit B, the Sample Resource and Scheduling Budget set forth in Exhibit B-1, and Exhibit C of Attachment 1 to the MSA will not apply to this SOW or the services provided under this SOW.

## 8. SYSTEMS IMPLEMENTATION

The systems implementation terms attached in Appendix A: Systems Implementation Addendum to Master Professional Services Agreement are incorporated into this SOW by this reference.

## Appendix A

## Systems Implementation Addendum to

## Master Professional Services Agreement

This SI Addendum ("**SI Addendum**") is made and entered into by and between PG&E ("**PG&E**") and KPMG LLP ("**Consultant**") and, for purposes of the SOW (as defined below), amends the Master Professional Services Agreement ("**Agreement**"), incorporated by reference into the statement of work executed by and between PG&E and Consultant (the "**SOW**"). In the event of a conflict between (on the one hand) the provisions of this SI Addendum and (on the other hand) the provisions of the SOW and Agreement, this SI Addendum will govern with respect to the system implementation services described in the SOW ("**SI Services**"). Any capitalized term not otherwise defined in this SI Addendum will have the meaning ascribed to it in the SOW or the Agreement (as applicable).

1. **Definitions.** "**PG&E Materials**" shall mean any and all materials, facilities, network, hardware, systems, software, data and other equipment or information, owned by or licensed or leased to PG&E (including any Third Party Materials (as defined in Paragraph 3(d) below)), to which Consultant is provided with access in connection with the SI Services and which may be used by Consultant in providing the SI Services, Deliverables and/or Configured System pursuant to the SOW. "**Configured System**" means the Third Party Materials as configured by the SI Services. "**Consultant Knowledge**" includes, in addition to the items enumerated in Section 16 of the Agreement, the following materials and Project tools: (i) components, programs, systems, analysis, frameworks, documentation, drawings, configuration techniques and specifications, owned by or licensed or leased to Consultant or any of the other Consultant Parties, and (ii) any modifications, enhancements, improvements or derivative works of any Consultant Knowledge, irrespective of their date of creation.

2. **Use of PG&E Materials and Acceptance.**

    a. With respect to any PG&E Materials to which Consultant is provided with access in connection with the SI Services, PG&E hereby grants to Consultant a non-exclusive, transferable, sublicensable, paid-up, royalty-free right and license to use, copy, modify and make derivative works of, and transmit such PG&E Materials to the extent necessary for Consultant to provide the SI Services to PG&E.

    b. Upon delivery of a Deliverable or Configured System to PG&E, PG&E shall review the Deliverable or Configured System in accordance with the acceptance procedure and within the acceptance period specified in the SOW, or where no such acceptance period is specified, within ten (10) business days of delivery. PG&E may reject the Deliverable or Configured System within the applicable acceptance period by providing to Consultant a notice of rejection ("**Rejection Notice**") specifying a list of material non-conformities with the specifications set forth in the SOW (the "**Specifications**"). To be effective, the Rejection Notice shall be in writing (email being acceptable) and sent to the Consultant Project Manager specified in the SOW or otherwise identified to PG&E in writing by Consultant. Consultant shall then conform the Deliverable or Configured System to the Specifications and resubmit it to PG&E for review and acceptance in accordance with this Paragraph 2(b). This process will continue until the Deliverable or Configured System is accepted under this Paragraph 2(b). The Deliverable or Configured System will be accepted when the applicable acceptance period has expired without Consultant receiving an effective Rejection Notice, or when PG&E uses such Deliverable or Configured System (notwithstanding any rejection of such Deliverable or Configured System) in a production environment, whichever occurs first.

3. **Warranties and Disclaimers.**

    a. Consultant warrants to PG&E that (i) Consultant will provide the SI Services using reasonable care and skill, and (ii) for a period of ninety (90) days after acceptance thereof, each Deliverable or Configured System as delivered by Consultant will conform to its Specifications in all material respects. Any claim for breach of Consultant's warranties in this Paragraph 3(a) with respect to any SI Service, Deliverable or Configured System must be made by written notice to Consultant within thirty (30) days of provision of such SI Service or within ninety (90) days of acceptance of such Deliverable or Configured System (as applicable). For any such breach, PG&E's exclusive remedies, and Consultant's entire liability, shall be, at Consultant's option, (i) the re-provision of such SI Service, or the repair and replacement of the Deliverable or Configured System (as applicable), or (ii) the refund to PG&E of the amount paid to Consultant for the specific SI Service, Configured System or Deliverable.

b. PG&E represents, warrants and covenants to Consultant that (i) PG&E has obtained all consents, permits, licenses and other approvals required (if any) to grant Consultant the rights under Paragraph 2(a) of this SI Addendum, (ii) Consultant's exercise of its rights under Paragraph 2(a) will not infringe, misappropriate or otherwise violate the rights of any third party (including the rights of any owner of Third Party Materials), or violate any applicable law, rule, regulation or other official government release and (iii) PG&E will use the Configured System in accordance with applicable law.

c. **PG&E UNDERSTANDS THAT CONTRACTOR IS PROVIDING THE SI SERVICES HEREUNDER IN RELATION TO PG&E MATERIALS (INCLUDING THIRD PARTY MATERIALS) FOR WHICH CONTRACTOR HAS NO RESPONSIBILITY. EXCEPT AS EXPRESSLY STATED IN PARAGRAPH 3(a) ABOVE, CONTRACTOR EXPRESSLY DISCLAIMS AND MAKES NO WARRANTIES OF ANY KIND OR NATURE WITH RESPECT TO THE SI SERVICES, PG&E MATERIALS (INCLUDING THIRD PARTY MATERIALS), DELIVERABLES, CONFIGURED SYSTEM OR OTHERWISE, WHETHER EXPRESSLY IN THE SOW OR OTHERWISE EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR USE, OR NON-INFRINGEMENT, OR THE APPROPRIATENESS OF PG&E OR THIRD-PARTY SPECIFICATIONS. IN ADDITION, CONTRACTOR EXPRESSLY DISCLAIMS ANY WARRANTY OR LIABILITY WITH RESPECT TO DESIGN OR LATENT DEFECTS OR COMPLIANCE WITH LAWS, RULES, REGULATIONS, OR OTHER OFFICIAL GOVERNMENT RELEASES APPLICABLE TO PG&E, WHICH SHALL BE THE SOLE RESPONSIBILITY OF PG&E.**

d. The SI Services may include providing assistance to PG&E with PG&E's procurement of third-party hardware, software or other items which will be identified in the SOW (such items, together with all other third party items used or provided in connection with the Work and/or Deliverables provided pursuant to the SOW shall be referred to as the "**Third Party Materials**"). Unless otherwise expressly stated in the SOW, PG&E will license or purchase such Third Party Materials directly from the vendor or reseller (which may be an affiliate of Consultant). PG&E retains sole responsibility for compliance with the license terms governing such Third Party Materials, the selection of such Third Party Materials, and, unless the SOW expressly specifies otherwise, the payment therefor. If Consultant agrees in the SOW or otherwise to provide any Third Party Materials, such THIRD PARTY MATERIALS ARE PROVIDED ON AN "AS IS" "AS AVAILABLE" BASIS WITHOUT WARRANTY FROM CONSULTANT, with the exception of any manufacturers' or licensors' warranties which Consultant is able to arrange for PG&E's benefit. Consultant, its Member Firms, and its and their subcontractors, reserve the right to retain ancillary benefits, including credits, rebates or referral fees, they may receive relating to such Third Party Materials, regardless of whether PG&E pays for such Third Party Materials directly, on a pass-through basis, or otherwise. PG&E agrees that the retention of such benefits shall not constitute a conflict of interest.

4. **Deliverables.** Upon full and final payment by PG&E of all amounts due under the SOW, Consultant hereby grants to PG&E a perpetual, non-exclusive, non-transferable, paid-up, royalty-free right and license to use, copy, modify, make derivative works of, distribute, display and perform the Deliverables or Configured System, and any Consultant Knowledge to the extent embedded therein, solely for PG&E's own internal business purposes and subject to any other restrictions specifically set forth in the SOW; provided that PG&E may provide the Deliverables or Configured System to an affiliate or third party (each, an "**Approved Sublicensee**") solely for purposes of operating, maintaining and enhancing PG&E's internal use of the Deliverables or Configured System in PG&E's business. PG&E shall ensure that each such Approved Sublicensee complies with all applicable terms of this SI Addendum and shall be liable to Consultant for any damages caused by an Approved Sublicensee's failure to do so. Except as expressly provided in this Paragraph 4, PG&E may not sell or license, in whole or in part, the Deliverables or Configured System. Consultant shall own all right, title and interest in and to any Deliverables or Configured System produced under this SI Addendum, including any modifications, enhancements, improvements or derivative works of any PG&E Materials (including modifications, enhancements, improvements or derivative works of any Third Party Materials), whether developed by or on behalf of Consultant solely or both parties jointly, other than any PG&E Materials incorporated therein, the rights in which shall remain in PG&E (subject to the license to Consultant granted under Paragraph 2(a) above).

5. **Indemnification.** Without limiting Section 28.2 of the Agreement, PG&E shall indemnify, hold harmless and defend the Consultant from and against any and all Liabilities incurred or suffered by or asserted against the Consultant in connection with a third party claim to the extent resulting from (a) the PG&E Materials and/or any other materials provided by or on behalf of any of the PG&E Parties, (b) Consultant's compliance with any designs, specifications, or instructions provided by or on behalf of any of the PG&E Parties, (c) PG&E's breach or alleged breach of Paragraph 3(b) or Paragraph 4 hereof, (d) use by or on behalf of PG&E of any Deliverables or Configured System other than as provided or updated by Consultant, and (e) any unauthorized use of any Deliverables or Configured System in the possession or control of PG&E or any Approved Sublicensee.

6. **Changes and Adjustment Events.**

DocuSign Envelope ID: FB02672C-77AF-4CC5-897E-ACFAB910B557

a. The parties acknowledge and agree that the occurrence of any of the following events (each, an **"Adjustment Event"**) may require an extension in the schedule set forth in the SOW and/or an increase in the fees and expenses and/or a change to the nature of the SI Services: (i) a change to, deficiency in, or retraction of information or materials supplied to Consultant by or on behalf of any of PG&E; (ii) a failure by PG&E and/or its vendors to perform any of their respective responsibilities in a timely manner, including the supply to Consultant of adequate resources and information; (iii) the failure of any PG&E Materials provided by or on behalf of PG&E to perform in accordance with applicable specifications; (iv) circumstances beyond the reasonable control of Consultant, including actual or potential force majeure events; (v) any assumption in the SOW not being fully realized; or (vi) PG&E's failure to timely obtain pursuant to Paragraph 3(b) above all of the consents, permits, licenses and other approvals necessary for Consultant to provide the SI Services in the manner, and accordance with the schedule, set forth in the SOW.

b. In the event an Adjustment Event occurs or the parties agree on a change to the scope of SI Services, Consultant may prepare and provide to PG&E a proposed change order identifying the impact and setting forth any applicable adjustments in the schedule and/or payments to Consultant. An authorized representative of each party shall promptly sign each such proposed change order to acknowledge the impact and to indicate that party's agreement to the adjustments.

c. Notwithstanding Paragraph 6(a) above, if any delays or deficiencies in the SI Services, or with respect to the Deliverables or Configured System, occur as a result of Adjustment Events, the scheduled completion date under the SOW for the affected SI Services, Deliverables and/or Configured System shall be extended to the extent of any such delays or deficiencies, and Consultant shall not incur any liability to PG&E as a result of such delays or deficiencies.