# EXHIBIT 1-O



KPMG LLP
1350 Avenue of the Americas
New York, NY 10019

Telephone  +1 212 997 0500
Fax            +1 212 730 6892
Internet     www.us.kpmg.com

June 26 2019

**PRIVATE**

Mr. David Thomason
Vice President and Controller
PG&E Corporation
77 Beale Street
San Francisco, CA  94105

Dear David:

This letter and the attached appendices, which are an integral part of this letter (collectively, the "**Engagement Letter**"), confirm the terms of the engagement of KPMG LLP ("**KPMG**" or "**we**") by PG&E Corporation ("**PG&E**", the "**Company**," or "**you**") to provide you with certain accounting advisory services and tax consulting advice as requested by you from the date signed by the parties through March 31, 2021.  If work under any amendments to this Engagement Letter that provide for additional services hereunder (any such amendments, "**Change Orders**") is outstanding at the expiration of the term of this Engagement Letter, this Engagement Letter shall then continue to remain in full force and effect with respect to such Change Orders until the completion or termination of such Change Orders.

**Objective**

Our assistance will include addressing certain accounting and tax inquiries made by you and your professionals related to various transactions and other topics.  As mutually agreed upon, we will also meet with Company management on a regular basis to share relevant KPMG thought leadership, information, insights, and potentially provide training.

**Scope of Services**

The initial scope and extent of our work depends on the inquiry and needs of your request for assistance.  Some deliverables may involve a single phone call or question, whereas others may involve research, preparation of presentation materials or executive summaries, analysis of issues, assistance in drafting schedules, attendance at meetings, and preparation of memoranda.  The initial scope of work that may be covered under this letter includes accounting advisory services and tax consulting advice only. The types of services may include:

- Provide technical advice to the Company on interpretation and application of accounting standards including identification of options, offering suggestions for management's consideration to improve disclosure and financial statement quality and giving updates on recent developments with accounting standard-setters

- Assist management with their revision and/or documentation of policy elections

- Provide technical assistance for accounting considerations before finalizing transaction structures and terms

- Make observations and recommendations with respect to the Company's drafted materials

© 2019 KPMG LLP, a Delaware limited liability partnership and the U.S. member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity. All rights reserved.



Mr. David Thomason
PG&E Corporation
June 26, 2019
Page 2

- At your discretion, discuss with the appropriate members of management our accounting analysis observations regarding the Company's accounting for the transactions, including explanation on how applicable accounting principles apply to the transaction, offering sample journal entries, and providing observations and recommendations on management's preliminary conclusions

- Participate in the conduct of follow-up interviews with selected individuals regarding the identified transactions

In the event that an inquiry develops into a project outside the initial scope of accounting advisory services (e.g., design, controls analysis, corporate governance, etc.) and tax consulting advice, the additional services, fees and expenses will be documented and agreed to by KPMG and PG&E using a separate engagement letter or Change Order further detailing the scope of our services, fees, and other pertinent matters, as agreed upon between KPMG and the Company. Each Change Order will be subject to the terms and conditions of this Engagement Letter (including, without limitation, the Standard Terms and Conditions (as defined below)) and will be considered a separate and independent engagement. An individual Change Order may further specify or modify terms and conditions applicable to the services to be performed. In the event of a conflict between the provisions of this Engagement Letter and the specific provisions in a Change Order, the provisions in the Change Order shall control. An outline of some of the additional available services that may be performed under this Engagement Letter (subject to agreement in a Change Order) is included as EXHIBIT 1.

We will communicate the results of our accounting advisory and tax consulting services in the format you request, which may consist of (i) our comments on your white papers or other documentation drafted by you, (ii) our memorandums or presentations to you, accompanied by summaries based on your accounting records, or (iii) discussions with you.

We will provide tax consulting services with respect to such matters that may arise for which you seek our advice, both written and oral, and that are not the subject of a separate engagement letter. However, we will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

If matters exceed the scope of this Engagement Letter or an individual Change Order, we will issue a separate engagement letter, a clarifying addendum, or a separate Change Order to confirm the scope and related terms of any additional engagements. Furthermore, a separate engagement letter will be issued for each discrete tax consulting project not specified in this Engagement Letter (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation.

When, in the course of providing general consulting services, it is determined that the services would exceed the scope of this Engagement Letter or an existing Change Order, preliminary engagement planning activities undertaken prior to the issuance of a separate Change Order or an engagement letter for the discrete consulting project are intended to be covered by this Engagement Letter.

KPMG's ability to complete services under this Engagement Letter or an applicable Change Order by agreed upon dates will be subject to our ability to obtain necessary PG&E information and timely responses to inquiries.



Mr. David Thomason
PG&E Corporation
June 26, 2019
Page 3

KPMG will advise PG&E as soon as possible if such services cannot be completed within the agreed-upon time frame.

To be of greatest assistance to PG&E, we should be advised in advance of proposed transactions.

**Engagement Team**

I will have overall responsibility for the conduct of the engagement, along with Scott Moresco, Tax Partner. Donald Thomas, Director, and Matt Reiter, Tax Director, will be actively involved in the performance of the engagement and will use such other staff for assistance as deemed necessary. We will be assisted by other members of the firm, including members of KPMG's Department of Professional Practice, as necessary.

KPMG is available to begin providing these services once this Engagement Letter has been executed by you.

**Fee and Expenses**

Our professional fees for the initial services and or inquiries will be billed on a time and materials basis. The fees for the initial services to be provided under this Engagement Letter (which, for the avoidance of doubt, does not include services provided under any Change Orders) shall not exceed $90,000.00, based upon the hours we spend at the following rates for our personnel:

| Level | Rate/Hour |
|---|---|
| Partner/Managing Director | $850 |
| Director | $750 |
| Manager | $620 |
| Senior Associate | $525 |

In addition to professional fees, you agree to reimburse KPMG for our reasonable out-of-pocket expenses incurred in connection with our services, such as travel, meals, lodging, reproduction, telephone, postage, typing and printing. There will be no travel related expenses for "in-town" consultants. Expenses will be billed at KPMG actual cost and may not include a mark-up, burden or uplift (subject to Paragraph 16(d) of the Standard Terms and Conditions). Air travel, when incurred, will be by means other than first or business class. Hotel expenditures are not subject to a maximum per night limit, however each person working under this Engagement Letter must exercise discretion and prudence in connection with hotel expenses.

We will invoice to you our hours and fees incurred, plus out-of-pocket expenditures, on a monthly basis. Payment Terms shall be Net 30 days. Neither the amount of our fees nor the payment of our fees and expenses will depend upon the results of our work.

An individual Change Order may provide further details regarding our fees and expenses, and may specify alternate fee arrangements from those specified above.



Mr. David Thomason
PG&E Corporation
June 26, 2019
Page 4

**Progress Meetings and Reporting**

All oral and written communications by KPMG to you with respect to this engagement, including drafts and those communications occurring prior to the execution of this Engagement Letter or an applicable Change Order (collectively, "Reports"), will be subject to the terms and conditions of this Engagement Letter and, if applicable, such Change Order. During the course of the engagement, we will communicate our observations and recommendations directly to David Thomason and/or his designee within Company management.

We do not anticipate preparation of a formal report following completion of our work.

**Project Leadership by Management**

Our understanding is that the Company has designated David Thomason as the management level individual to oversee the conduct of this project, including coordination of Company resources required and reviews of draft deliverables. Management agrees that Company personnel will review draft deliverables on a timely basis and provide us with their comments and revisions and will approve and accept final deliverables as meeting the objectives that you have established for those deliverables.

**Other Terms**

KPMG will provide our services in accordance with the terms and conditions of this Engagement Letter. Our accounting advisory services as outlined in this letter constitute an Advisory Engagement conducted under the American Institute of Certified Public Accountants ("**AICPA**") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report or agreed-upon procedures engagement as those services are defined in AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by KPMG directly reporting on financial data or internal control or expressing a conclusion or any other form of assurance.

The procedures KPMG will perform are limited to those referred to in this Engagement Letter and are limited in nature and extent to those that the Company has determined meets its needs. Consequently, we make no representation regarding the sufficiency of the procedures for the purpose for which our advice and/or discussion documents is being prepared or for any other purpose.

In rendering accounting advice, whether written or oral, we will consider the applicable technical literature, laws and regulations. Financial reporting authoritative guidance is subject to change or modification, retroactively or prospectively, by varying interpretation and by subsequently issued pronouncements, legislation, and regulatory, administrative, or judicial decisions. Subsequent to the completion of this engagement we will not update our advice, recommendations or work product for such changes or modifications to financial reporting authoritative guidance, or for subsequent events or transactions, unless the Company separately engages us to do so in writing after such changes or modifications, interpretations, events or transactions.

The Company acknowledges ultimate responsibility for the accounting treatment of any particular transaction. In addition, the Company will always have the advice provided by KPMG considered by an appropriate individual within the organization who has the requisite skills and knowledge to assess the advice given. Furthermore, you agree that any financial statements or other related financial information will not be associated with KPMG to any third party, that the scope of our services thereupon does not constitute a compilation of financial statements,



Mr. David Thomason
PG&E Corporation
June 26, 2019
Page 5

and that we will not be providing any such report, audit, review, or compilation on the financial statements you prepare.

Accounting positions determined by PG&E through the course of this engagement are considered to be PG&E's proprietary information and as such PG&E may share this information with third parties without reference to KPMG. However, notwithstanding anything to the contrary set forth in Paragraph 4(c) of the Standard Terms and Conditions for Advisory and Tax Services attached to this letter as Appendix 1, any technical accounting and financial reporting advice, information, recommendations or work product provided by KPMG to you under this Engagement Letter, whether verbally or in writing, may not be attributed to KPMG by you to any third parties without KPMG's express written permission, except that you may disclose to your independent external audit firm the nature and results of this engagement.[1]  The provisions in this paragraph do not apply to any tax consulting services which may be provided under this Engagement Letter.

In this engagement, KPMG assumes no responsibility for auditing information provided by the Company or for expressing an opinion on any part of the Company's financial statements, nor for management's analysis or decision-making with respect to accounting positions taken, related financial statement disclosures, and balance sheet accounts.  Those responsibilities belong to you and your independent auditor.

**Technical Accounting and Financial Reporting Advisory Services**

Our advice will generally be communicated to you via oral discussions, possibly supplemented by written materials to document/clarify salient matters and/or the results of our research.

You have advised, and we acknowledge, that we are not being asked to prepare report(s), written or oral, on the application of accounting principles to specified transactions, either completed or proposed, nor on the type of opinion that may be rendered on the financial statements of other third parties.  Additionally, you acknowledge the decision on the ultimate application of the accounting standards to third-party financial statements is the responsibility of third-party management in conjunction with their external auditors.

**Tax Services**

Any written tax advice will be covered under the tax advice standards described in Appendix 3.

**Debriefing**

On completion of the engagement, as part of our commitment to the quality of our service, we would welcome the opportunity to receive your comments on our work and the service delivered.

---

[1] Should any other third party request you to disclose our accounting advice to them, we will consider giving our permission after discussing with you the appropriate terms and details.



Mr. David Thomason
PG&E Corporation
June 26, 2019
Page 6

**Standard Terms and Conditions**

The Standard Terms and Conditions for Advisory and Tax Services attached as Appendix 1 (the "**Standard Terms and Conditions**") are made a part of this Engagement Letter.

**Appendices**

The following appendices are attached and considered an integral part of this Engagement Letter:

Appendix 1: Standard Terms and Conditions for Advisory and Tax Services

Appendix 2: Accounting Advice Standards

Appendix 3: Tax Advice Standards



Mr. David Thomason
PG&E Corporation
June 26, 2019
Page 7

**Confirmation**

If the terms of this Engagement Letter are acceptable to you, please indicate your acceptance and authorization for KPMG to proceed with the related work by signing a copy of this letter in the appropriate space and returning to me.

We look forward to working with PG&E. If we can provide you with any additional information or respond to questions you have with regard to any aspect of this letter, please feel free to contact me at 212-872-6654 or Scott Moresco at 312-665-3483.

Very truly yours,

KPMG LLP

Erik Lange
*Partner*

Enclosures

ACCEPTED

PG&E Corporation

_David Thomason_
Authorized Signature

_Vice President & Controller_
Title

_8/19/19_
Date

Appendix 1

**STANDARD TERMS AND CONDITIONS FOR ADVISORY AND TAX SERVICES**

March 27, 2017 Release

Case: 19-30088    Doc# 4901-7    Filed: 11/27/19    Entered: 11/27/19 16:12:26    Page 9 of 20

1. **Services; Client Responsibilities**.

(a) References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached or incorporated (the "Engagement Letter") and references herein to KPMG shall refer to KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network"). Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents are collectively referred to herein as the "Client Parties." KPMG, the other member firms of the KPMG Network and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Member Firms"), and their affiliates, and their respective partners, principals, employees, and agents are collectively referred to herein as the "KPMG Parties." Any work performed in connection with the engagement described in the Engagement Letter before its execution is also governed thereby and by these Standard Terms and Conditions.

(b) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client.

(c) If KPMG audits the financial statements of Client or provides any other attestation services to Client, the rules of the American Institute of Certified Public Accountants ("AICPA") require Client to agree to the following provisions of this Paragraph 1(c). In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) assume all management responsibilities and perform all management functions; (ii) oversee such services, by designating an individual, preferably within senior management, who possesses suitable skill, knowledge and/or experience; (iii) evaluate the adequacy and results of such services; (iv) accept responsibility for the results of such services; and (v) establish and maintain internal controls over the processes with which such services are concerned, including performing ongoing evaluations of Client's internal control as part of its monitoring activities.

(d) Subsequent to the completion of this engagement, KPMG will not update its Advice (as defined below) for changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added, income or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination, provided that either party may terminate the Engagement Letter upon written notice to the other party if laws, rules, regulations or professional standards applicable to a party preclude it from continuing to perform or receive the Services thereunder.

4. **Ownership and Use of Deliverables**.

(a) Upon full and final payment to KPMG under the Engagement Letter, KPMG assigns and grants to Client, title in the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") and any copyright interest in the Deliverables; provided that if and to the extent that any KPMG property is contained in any of the Deliverables ("KPMG Property"), KPMG hereby grants Client, under KPMG's intellectual property rights in such KPMG Property, a royalty-free, non-exclusive, non-transferable, perpetual license to use such KPMG Property solely in connection with Client's use of the Deliverables. KPMG acknowledges that it shall obtain no ownership right in Confidential Information (as defined below) of Client.

(b) Should Client make a Deliverable bearing the "KPMG" name or logo available to a third party, it must be made available only in its entirety. KPMG may retain for its files copies of each of the Deliverables, subject to the provisions of Paragraph 11 below.

(c) Client acknowledges and agrees that notwithstanding Paragraph 4(a), any advice, recommendations, information, Deliverables or other work product ("Advice") provided by KPMG in connection with the services under the Engagement Letter is intended for Client's sole benefit and KPMG does not authorize any party other than Client to benefit from or rely upon such Advice, or make any claims against KPMG relating thereto. Any such benefit or reliance by another party shall be at such party's sole risk. Client agrees that if such Advice is made available to any third party other than as expressly permitted by the Engagement Letter, the provisions of Paragraph 8(b) shall apply unless Client has a written notice substantially in the form of Appendix A hereto (the "Notice") acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the Notice acknowledged by such third party. Notwithstanding the foregoing, in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) below, no acknowledgement of the Notice shall be required to avoid application of Paragraph 8(b). For the avoidance of doubt, no Notice or acknowledgement shall be required to avoid application of Paragraph 8(b) with respect to disclosures expressly authorized by the Engagement Letter

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with AICPA and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages**. Except for the respective indemnification obligations of Client and KPMG set forth herein, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter shall be limited to the amount of fees paid or

Case: 19-30088   Doc# 4901-7   Filed: 11/27/19   Entered: 11/27/19 16:12:26   Page 10 of 20

owing to KPMG under the Engagement Letter. In no event shall any of the Client Parties or any of the KPMG Parties be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). For avoidance of doubt, any damages awarded against any of the Client Parties or the KPMG Parties based on a third party claim subject to indemnification hereunder shall not be subject to the disclaimer in the previous sentence. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, rule, regulation or tort (including but not limited to negligence) or otherwise.

7. **Infringement**.

(a) KPMG hereby agrees to indemnify, hold harmless and defend the Client Parties from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued in the United States as of the date the Deliverables are delivered to Client, trademarks or copyrights. Such KPMG obligations shall not apply to any infringement to the extent arising out of (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than for Client's internal business purposes; (ii) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (iii) the combination or operation of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of the options described in clauses (i) or (ii) above, Client shall return the allegedly infringing item to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification**.

(a) KPMG agrees to indemnify, hold harmless and defend the Client Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the Client Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the KPMG Parties. Client agrees to indemnify, hold harmless and defend the KPMG Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or

destruction of any tangible property, which any of the KPMG Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the Client Parties.

(b) Subject to Paragraph 4(c), Client agrees to indemnify, defend and hold harmless the KPMG Parties from and against any and all Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third party claim arising from KPMG's Advice. The foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute, rule, regulation or tort (including without limitation negligence) by the KPMG Parties.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

9. **Cooperation; Use of Information**.

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, systems, equipment, data and information necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional details regarding KPMG's access to and use of personnel, facilities, equipment, data and information.

(b) The Engagement Letter may set forth additional obligations of Client in connection with the services under the Engagement Letter necessary for KPMG to perform its obligations under the Engagement Letter. Client acknowledges that its failure to satisfy these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(c) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material adverse effect on KPMG's conclusions.

10. **Independent Contractor**. It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

March 27, 2017 Release

**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

11. **Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) is permitted to be disclosed by Paragraphs 18(a) or (b); or (5) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

(b) The Receiving Party will deliver to the Disclosing Party or destroy all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata. Except as otherwise set forth in this Paragraph 11 or Paragraph 15 below, the Receiving Party shall not disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required or necessary to be disclosed pursuant to a statutory or regulatory provision or court or administrative order, or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process an insurance claim.

(c) The KPMG Parties, with the assistance of third parties outlined in Paragraph 15, may use all Client's Confidential Information provided to the KPMG Parties for other purposes, such as improving the delivery or quality of services or technology to Client and other clients, thought leadership projects, to allow Client and other clients to evaluate various business transactions and opportunities, and for use in presentations to Client, other clients and non-clients. When Client's Confidential Information is used outside of the KPMG Parties or such third parties assisting them, Client will not be identified as the source of the information.

(d) Each party shall exercise the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(e) If the Receiving Party receives a subpoena or other validly issued administrative, judicial, government or investigative regulatory demand or request or other legal process ("Legal Demand") requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law or such Legal Demand, provide prompt written notice to the Disclosing Party of such Legal Demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such Legal Demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event that KPMG is requested or authorized by Client, or is required by law, rule, regulation or Legal Demand in a proceeding or investigation to which KPMG is not a named party or respondent, to produce KPMG's documents or personnel as witnesses or for interviews, or otherwise to make information relating to the services under the Engagement Letter available to a third party, or Client, Client shall reimburse KPMG for its professional time, at its then-current standard hourly rates, and expenses, including reasonable attorneys' fees and expenses, incurred in responding to such requests, authorizations or requirements.

12. **Assignment.** Subject to Paragraph 15 below, neither party may assign, transfer or delegate any of its rights or obligations, claims or proceeds from claims arising under or relating to this Engagement Letter (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance written notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld. Any assignment, transfer or delegation in violation hereof shall be null and void.

13. **Governing Law; Severability.** All disputes between the parties (whether based in contract, tort, statute, rule, regulation or otherwise and whether pending in court or in an arbitral forum) shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York, including without limitation its statutes of limitations, without regard to the conflict of laws provisions of New York or any other state or jurisdiction. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

(a) Any dispute or claim between the parties shall be submitted first to non-binding mediation and, if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation shall take place at a location to be designated by the parties using the Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator).

March 27, 2017 Release

Case: 19-30088   Doc# 4901-7   Filed: 11/27/19   Entered: 11/27/19 16:12:26   Page 12 of 20

(c) Arbitration shall take place in New York, New York and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. Party-selected arbitrators shall be selected from the lists of neutrals maintained by either the IICPR or by JAMS, Inc., but the chair of the arbitration panel does not have to be selected from those specific lists. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties (including Paragraph 6 above), that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm, enforce or vacate any final award entered in arbitration, in any court of competent jurisdiction, provided that any party moving to enforce, confirm or vacate any such agreement or award, as the case may be, will file such motion under seal unless prohibited under applicable court rules.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**15 Use of Member Firms and Third Parties.**

(a) Client acknowledges and agrees that the services under the Engagement Letter, including any applicable tax advice, may be performed by a Member Firm located outside of the United States. Client understands that each Member Firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of KPMG and KPMG is not a partner, principal, agent or affiliate of any other Member Firm.

(b) Client further acknowledges and agrees that in connection with the performance of services under the Engagement Letter, KPMG and Member Firms, in their discretion or at Client's direction, may utilize the services of third parties within and outside of the United States to complete the services under the Engagement Letter or analyze Client information.

(c) Client further acknowledges and agrees that KPMG Parties may have access to Confidential Information from offshore locations, and that KPMG uses third parties within and outside of the United States to provide at KPMG's direction administrative, clerical or analytical services to KPMG. These third parties may in the performance of such services have access to Client's Confidential Information. KPMG represents to Client that with respect to each Member Firm and third party, KPMG has technical, legal and/or other safeguards, measures and controls in place to protect Confidential Information of Client from unauthorized disclosure or use. KPMG shall be responsible to Client for their failure to comply.

(d) Accordingly, Client's agreement above extends to disclosure, ability to access, and use of its Confidential Information by the parties and for the purposes set forth in Paragraph 11 and this Paragraph 15.

(e) Any services performed by a Member Firm or third party shall be performed in accordance with the terms of the Engagement Letter and these Standard Terms and Conditions, including Paragraph 11 (Confidentiality), but KPMG shall remain responsible to Client for the performance of such services. Client agrees that any claim relating to the services under the Engagement Letter may only be made against KPMG and not any other Member Firm or third party referred to above.

16. **Miscellaneous.**

(a) **Sarbanes-Oxley.** Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) **Electronic Communications.** KPMG and Client may communicate with one another by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Each party accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices). Client agrees that the final hardcopy or electronic version of a document, including a Deliverable, or other written communication that KPMG transmits to Client shall supersede any previous versions transmitted by KPMG to Client.

(c) **California Accountancy Act.** For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) **Volume Rebates.** Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) **Use of Names and Logos.** Except as permitted by law or as set forth in the Engagement Letter or this Paragraph 16(e), neither party shall

Case: 19-30088    Doc# 4901-7    Filed: 11/27/19    Entered: 11/27/19 16:12:26    Page 13 of 20

acquire hereunder any right to use the name or logo of the other party or any part thereof, and any such use shall require the express written consent of the owner party. Client agrees that KPMG may list Client as a customer in KPMG's internal and external marketing materials, including KPMG websites and social media, indicating the general services rendered (e.g., "Client is an Audit, Advisory and/or Tax client of KPMG LLP."). In addition, Client gives KPMG the right to use Client's logo on the Deliverables and documents prepared for Client internally (e.g., internal presentations, etc.) or for internal KPMG presentations and intranet sites.

(f)  **Export Control.** KPMG and Client acknowledge and agree that each shall comply with all applicable United States export control laws and regulations in the performance of each party's respective activities under the Engagement Letter. Client shall not provide KPMG, or grant KPMG access to, (a) information (including technical data or technology), verbally, electronically, or in hardcopy, (b) software or (c) hardware, that is controlled for export by the United States government under the Arms Export Control Act of 1976, Export Administration Act of 1979, the International Traffic in Arms Regulations ("ITAR"), Export Administration Regulations ("EAR"), Department of Energy Part 810 Regulations or Nuclear Regulatory Commission Part 110 Regulations, except information, software or hardware that is classified as EAR99 under the EAR.

(g)  **Active Spreadsheets and Electronic Files.** KPMG may use models, electronic files and spreadsheets with embedded macros created by KPMG to assist KPMG in providing the services under the Engagement Letter. If Client requests a working copy of any such model, electronic file or spreadsheet, KPMG may, at its discretion, make such item available to Client for its internal use only on an as-is basis and such item shall be considered a Deliverable subject to Paragraph 4 above; provided that Client is responsible for obtaining the right to use any third party products necessary to use or operate such item.

(h)  **Non-Solicitation.** During the term of the Engagement Letter and for one year thereafter, neither party shall solicit for hire as an employee, consultant or otherwise any of the other party's personnel who have had direct involvement with the services under the Engagement Letter, without such other party's express written consent. This prohibition shall not apply to any offers of employment which result from a general solicitation for employment, including without limitation, through the Internet, newspapers, magazines and radio.

17.  **Entire Agreement.** The Engagement Letter and these Standard Terms and Conditions, and any exhibits, attachments, addenda and appendices hereto and thereto, and amendments to any of the foregoing that are agreed in writing between the parties, shall constitute the final, complete and exclusive agreement between the parties with respect to the subject matter of the foregoing, and supersede all other previous and contemporaneous oral and written representations, understandings or agreements relating to that subject matter.

18.  **Additional Terms for Engagements Involving Tax Services.**

(a)  Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the scope of the Internal Revenue Code of 1986

(the "IRC") section 6011 as implemented through Treasury Regulation 1.6011-4(b)(iii)(ii) (without regard to references to payment or receipt of a minimum fee) or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client, its directors, officers, employees and agents may disclose to any and all persons, without limitation of any kind, tax information KPMG provides to Client, including all materials such as tax opinions, memoranda, or other written tax advice that describes or otherwise relates to, either or both of the tax treatment and tax structure of any transaction on which KPMG's services are provided. Client agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG's services are requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b)  Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance with IRC section 6011. IRC section 6111 and the laws of various states require a material advisor with respect to a reportable transaction to make a return containing specified information concerning the transaction to the IRS or a designated state tax authority by a prescribed date, and IRC section 6707 imposes penalties for noncompliance with IRC section 6111. IRC section 6112 and the laws of various states require the material advisor to maintain, and make available to the IRS or designated state tax authority upon request, a list containing prescribed information with respect to persons advised and other information with respect to the reportable transaction, and IRC section 6708 imposes penalties for noncompliance with IRC section 6112. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions to IRC section 6011. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state tax authority or other jurisdiction adopting similar or analogous provisions thereto.

(c)  Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(d)  In rendering tax advice, KPMG may consider, for example, the applicable provisions of the IRC, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state, local and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

March 27, 2017 Release

**APPENDIX A**
**[FORM OF NOTICE AND ACKNOWLEDGEMENT]**

[Name of Third Party]

Address

The advice, recommendations, information, deliverables and other work product ("KPMG Advice") being made available to you in connection with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG LLP's engagement for [Name of Client]. It has been made available to you for informational purposes only. You acknowledge and agree that KPMG does not authorize any party other than [Name of Client] to benefit from or rely upon it, or make any claims against KPMG relating thereto, and any such reliance by you or anyone else shall be at your or their own risk. Accordingly, KPMG accepts no responsibility or liability in respect of such KPMG Advice and you shall have no right to make it available to anyone else without including a copy of this notice and, unless disclosure is required by law or to fulfill a professional obligation required under applicable professional standards, obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.*

Very truly yours,


[Name of Client]


By: _____

   Name:

   Title:



**Accepted and Agreed to on this ___ day of ____, 20__ by:***



[Name of Third Party


By: _____

   Name:

   Title:


1

**Appendix 2**

**Accounting Advice Standards**

There are unique requirements when providing oral or written advice on the application of U.S. GAAP or IFRS. Such an advice is subject to the professional standards we follow in these circumstances, namely Statement of Auditing Standard No. 50, *Reports on the Application of Accounting Principles*, as amended by Statement of Auditing Standard No. 97, *Amendment of SAS 50, Reports on the Application of Accounting Principles* ("SAS 50" requirements), or section 230 of the International Federation of Accountants' Handbook, *Code of Ethics for Professional Accountants* ("IFAC"). The following are types of accounting services that we may provide to you that would generally not be within the scope of SAS 50 or IFAC:

- Researching and summarizing industry practice relating to the application of accounting principles for various types of transactions;

- Educational or training sessions regarding the content and potential ramifications of new accounting pronouncements;

- Summarizing and discussing the potential ramifications to companies relating to FASB, IASB or other accounting standard-setting bodies meetings as they pertain to proposed and existing accounting literature;

- Communications such as position papers prepared for the purpose of presenting views on a general issue (not related to a specific transaction or event that you request) involving the application of accounting principles. Position papers include newsletters, articles, speeches and texts thereof, lectures and other forms of public presentations, and letters for the public record to professional and governmental standard-setting bodies.

However, if any of the services you request are to provide guidance on the application of accounting principles to a specific transaction or event, SAS 50 or IFAC is applicable and we will be required to follow the protocols described below.

Should you ask KPMG to provide written or oral advice on the application of accounting principles to specific transactions involving facts and circumstances specific to the Company or its related parties, any such request that would meet these criteria would fall within the scope of SAS 50 or IFAC since we are not your audit firm. When you request advisory services that fall within the scope of SAS 50 or IFAC, we must consult with your audit firm to ascertain all the relevant available facts that are applicable to the specific request so as to form a professional judgment. We recognize that there is room for legitimate disagreement between KPMG and your audit firm, as well as between you and either your audit or another non-audit firm, but it is not our objective to challenge another accounting firm's professional judgment.

If you request a KPMG opinion letter to be written in accordance with SAS 50 or IFAC, we will issue a separate engagement letter to confirm the scope, extent and terms of that engagement. Because of the requirements of SAS 50, SAS 97, IFAC and KPMG internal policies, we will follow our internal approval process for our involvement on specific transactions as they arise. This process will include the following:

- Obtaining information about the principals' involvement in each transaction and performing our engagement acceptance process;

- Communicating with the independent auditors' for one or more of the principals to discuss such matters as:

  - the substance of the transaction versus the form of the transaction;

2

- – whether there is a dispute between you and the continuing accountants; or

- – whether the continuing accountants have reached a conclusion that differs from ours.

- Obtaining indemnifications and/or hold harmless agreements from one or more of the principals or other third-party users; and,

- Internal investigations within KPMG to determine the presence of potential possible conflicts of interest.

.

3

## Tax Advice Standards

Written advice provided to you under this engagement letter will be based on facts, representations, assumptions, and other information you provide to us, the completeness, accuracy and timeliness of which are critical factors in our ability to timely and accurately complete our services. Unless you request and we agree under a separate writing (a newly issued engagement letter or addendum to this engagement letter) after our advice has been issued in final form to you, KPMG will not update our advice to take into account your updating the facts you provide to us through your discovery of new or additional facts, or your updating any information that may have formed the basis of any assumptions we made in developing our advice. In rendering advice, we will consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the advice we issue to you.

If KPMG is considered to be a tax return preparer under Treasury Regulation § 301.7701-15, we will apply elevated standards in providing tax advice. These standards are dependent on certain characteristics of the entity to which our services will be directed as follows:

1. For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more): We must be able to determine that (1) there is "substantial authority" for an undisclosed return position and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits. The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For advice pertaining to a "Tax Shelter" (as defined in IRC § 6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, the return positions must be at least "more likely than not" to be sustained on the merits; if the taxpayer is advised regarding potential taxpayer penalties, there must be "substantial authority" for our advice.

2. For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity): The return position must be at least "more likely than not" sustained on the merits.

3. If a return position relates to a transaction that is a "principal purpose transaction," we must arrive at a "should" confidence level with respect to the position.

4. We will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

## EXHIBIT 1

Future services that may be covered under this Engagement Letter subject to a Change Order

1) **Establish Accounting/Finance PMO:**
   a) Support in the development of an overall project plan
   b) Support in coordinating status meetings and reporting
   c) Coordination of issues, including progress chasing and problem solving
   d) Handling of technology and tools utilized in handling the emergence accounting and reporting process (our KART tool)
   e) Manage consistency and governance

2) **Accounting advisory assistance related to Accounting and financial reporting during the period while in bankruptcy. Areas may include:**
   a) Impairment assessment
   b) Financial reporting during reorganization
      i) Financial statement presentation
      ii) Additional disclosures
   c) Proforma financial statements reflecting:
      i) Plan effects
      ii) Class settlements
      iii) Liabilities subject to compromise allocations
      iv) Modeling and gain calculation
   d) Impact of the application of Fresh Start Accounting:
      i) Valuation to determine reorganization value and pushed down reporting units (may also be pushed to legal entities for tax purposes)
      ii) Fixed asset valuation
      iii) Expected intangible asset valuation
      iv) Balance sheet valuation review
      v) Financial statements and footnotes
      vi) Accounting policy evaluation
   e) Emergence disclosure and reporting

3) **Tax Accounting**
   a) Tax valuation analysis
   b) Fresh Start Accounting deferred items
   c) Case Initiation
      i) Review 1st day orders
      ii) Pre vs. post-petition taxes
      iii) Prudential Lines Defense
      iv) Other procedural matters
      v) DIP financing considerations
      vi) Status of Federal & state filings
      vii) Status of Federal & state examinations
      viii) Outstanding refunds
      ix) Interaction with other interested parties
   d) Case Administration
      i) Deduction of interest on unsecured debt
      ii) Tax treatment of professional fees
      iii) Recourse vs. non-recourse debt

2

   iv) Lease rejections
   v)  Contract rejections
   vi) Abandonment losses
   vii) Obligation as guarantor
   viii) Subsidiary stock basis analysis
   ix) Bankruptcy Code Sec 363 sales
   x)  Net operating losses
   xi) Legal entity tax basis balance sheets
   xii) International tax implications related to inter-company debt
   xiii) State & local tax implications
   xiv) Requests for prompt determination

  e) Emergence
    i)  Stand-alone debt restructuring
      (1) Debt-for-debt exchanges
      (2) Equity-for-debt
      (3) Calculation of cancellation of debt income ("COD")
    ii) Attribute reduction
    iii) Contract cancellation & lease rejections
    iv) Ownership change issues
    v) Taxable vs. carryover basis transaction
    vi) Tax provision considerations—ASC 852

## 4) Data and Technology

  a) Issues and process for high volume data

  b) Data Management (acquisition, utilization, cleansing, correcting, storage, etc.)

  c) Best practice system considerations for potential changes needed

3

Case: 19-30088  Doc# 4901-7  Filed: 11/27/19  Entered: 11/27/19 16:12:26  Page 20
of 20