# EXHIBIT 1-Q

# Contract Work Authorization (CWA) - PG&E Law Dept.

This Contract Work Authorization (this "**CWA**") No. XXXXXXXX  is issued under and pursuant to the Master Service Agreement No. 4400011340 (C73), dated January 19, 2017, as amended (the "**MSA**"), between KPMG LLP ("**Contractor**"), a Delaware limited liability partnership, and Pacific Gas and Electric Company ("**PG&E**"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

This CWA is effective as of the last date set forth in the signature blocks below upon signature and delivery by both parties and expires as of the "End Date" set forth below.

| | |
|---|---|
| **MATTER NO.** | KPMG – CCPA Support Staff - 15928 <br> (PG&E Law Department) |
| **TOTAL PAGE COUNT:** | Page 1 of 8 |
| **CONSULTANT or CONTRACTOR LEGAL NAME:** | KPMG LLP |
| **ADDRESS:** | PO Box 120001 <br> Dallas, Texas 75312-0922 |
| **CONSULTANT REPRESENTATIVE NAME:** | |
| **PG&E CONTRACT ADMINISTRATOR:** | Law Department Finance Group and Sharif Kayum |
| **PHONE:** | |
| **PROJECT TITLE:** | |
| **PG&E WORK SUPERVISOR:** | Tyler Howe |
| **PHONE:** | |
| **DATE PREPARED:** | August 19, 2019 |
| **PREPARED BY:** | PG&E Law Department |
| **REQUIRED START DATE:** | Upon the parties' entry into this CWA <br><br> Contractor shall commence performance hereof when authorized to do so by PG&E. |
| **END DATE:** | November 29, 2019 |
| **CWA PRICING:** <br> ☒ NOT TO EXCEED <br> ☐ FIRM FIXED PRICE <br> ☐ | **TOTAL:** $219,584.00 (subject to the terms of the SOW) |

**Internal**

**Send ORIGINAL Invoice to**     GenlCnslLawPaymentProcessingGroup@pge.com **or mail to:**

**PG&E Law Department**
**PO Box 7133**
**San Francisco, CA 94120-7133**

---

**DESCRIPTION OF WORK SUMMARY:**

All related work and information associated with the project is detailed in Attachment A, Statement of Work.

FOR THE AVOIDANCE OF DOUBT, THE WORK PERFORMED UNDER THIS CONTRACT IS NOT BEING PERFORMED AT THE DIRECTION OF THE PG&E LAW DEPARTMENT OR OTHER LEGAL COUNSEL AND COMMUNICATIONS REGARDING THIS WORK ARE NOT INTENDED TO BE COVERED BY ATTORNEY-CLIENT OR OTHER PRIVILEGE.

CONTRACTOR'S WORK UNDER THIS CWA IS SUBJECT TO THE APPLICABLE PROCEDURES AND/OR PROCESSES APPROVED BY THE BANKRUPTCY COURT IN PG&E'S BANKRUPTCY PROCEEDING (BANKRUPTCY CASE NO. 19-30088 (DM)) IN THE UNITED STATES BANKRUPTCY COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION FOR THE RETENTION OF COUNSEL [OUTSIDE PROFESSIONALS] AND THOSE PROCEDURES AND PROCESSES ARE EXPRESSLY INCORPORATED HEREIN, AS THEY MAY BE CHANGED FROM TIME TO TIME BY THE BANKRUPTCY COURT.

**DESCRIPTION OF WORK:**
See Attachment A – STATEMENT OF WORK.

---

| Authorized by: For PG&E | | Accepted by: For Consultant or Contractor | |
|---|---|---|---|
| Signature | Date | Signature | Date |
| DocuSigned by: | 8/22/2019 | Michal Gomez | 8/19/19 |
| PG&E Signoff F9... | | | |
| Title    Sourcing Specialist, Senior | | Title    Principal | |
| Type or Print Name  Adrienne Lee | | Type or Print Name  Michal Gomez | |

Herbert Sien

HS    Supervisor, Sourcing Operations 8/21/2019

Notwithstanding any other payment terms in the MSA, (a) all invoices for work performed hereunder shall be submitted directly to the PG&E Law Department (as set forth above) for payment and (b) the PG&E Billing Requirements and Procedures set forth below will apply to this CWA.

**Internal**

Page **2** of **8**

DocuSign Envelope ID: 91F97E20-60D9-4241-AE26-62166B69F7D0

## PG&E BILLING REQUIREMENTS AND PROCEDURES

(References herein to "we" are to PG&E and references to "you" herein are to Contractor.)

**Billing Requirements:**

1.  We agree to reimburse you for your out-of-pocket expenses at your actual net cost. All disbursements (including lodging, travel, out-of-pocket copying service, transcripts, and the like) must be included with your statements with supporting documentation for all lodging and travel expenses (other than nominal amounts) and for each individual item the cost of which is $75.00 or greater.

2.  All expenses shall be reasonable, ordinary, actual net cost incurred and paid by you. All expenses shall be billed at cost. Please note that air travel must be at coach rates and all rental car costs must be at subcompact rates unless otherwise expressly authorized in writing. We agree that expenses for lodging, meals, and transportation shall be at reasonable rates and that you will exercise prudence in incurring such expenses. Mileage will be paid at the Internal Revenue Service's current year approved standard rate.

3.  Normal overheads shall be considered a bundled component of your hourly fees and not charged or invoiced to PG&E. If any such charge appears, we will automatically deduct it from your invoice. Normal overheads for purposes of this Contract are secretarial services, administrative, library services, clerical support, office supplies, postage, routine office copying, telecopying or "fax," local telephone, filing, file indexing, bill preparation, staff overtime, word processing, and meals or snacks (unless while travelling or otherwise approved in advance). Time spent in the preparation of fee applications to the bankruptcy court is not considered normal overhead, except to the extent the activities are substantially similar to Contractor's routine bill preparation outside of bankruptcy proceedings.

4.  When photocopying jobs, other than routine office copying, are required, you must use the least expensive service available. In any event, we will pay no more than $0.10 per page other than for unusually sized documents or color photocopying. Any job, whether by you, a vendor, or a service, exceeding $1,000 requires advance approval confirmed in writing.

5.  Travel time shall not be considered as actual time worked unless approved, in advance, by the principal PG&E attorney assigned to the matter. In the event you or your employee works during travel time, such efforts shall not be considered travel time for the purpose of this Contract. Air travel time shall be billed at one-half the hourly rate of straight time rates unless you work during air travel.

**Billing Procedures:**

Case: 19-30088   Doc# 4901-9   Filed: 11/27/19   Entered: 11/27/19 16:12:26   Page 4 of 9

In order to process your statements, PG&E must have the following information with *every* monthly statement:

1. <u>A cover summary sheet on your letterhead that includes</u>:
   - Your remittance address if different than your letterhead address;
   - Your taxpayer ID number;
   - The project name;
   - The calendar period covered by the statement; and,
   - A summary statement of the professional fees and disbursements together with the invoice total.

2. <u>A separate statement of supporting detail on your letterhead with</u>:
   - The Project Name;
   - Name and job title (e.g., consultant) of each worker on each date work is done;
   - Time worked on each date work is done, separated by function;
   - Description of work done on each date;
   - Hourly rates for each worker;
   - Disbursements;
   - Total amount billed; and,

3. <u>Additional materials to include with your statement</u>:
   - You should attach receipts or other documentation for individual items costing $75 or greater, including photocopying and lodging.

**Internal**

## Attachment A
# Statement of Work
# Data Security CCPA Support Loaned Staff

This Statement of Work (this "**SOW**") outlines the engagement between Pacific Gas and Electric Company ("**PG&E**") and KPMG LLP ("**KPMG**") to perform the services described below.

The governing master services agreement for this SOW and the work hereunder is Master Services Agreement #4400011340, dated January 19, 2017, as amended (the "**MSA**").

## 1. DESCRIPTION OF SERVICES

The staff assistance services to be performed by KPMG for PG&E (such services, the "**Services**") will support PG&E's Cybersecurity Risk and Strategy organization in performing scanning and data protection activities using PG&E's instance of Symantec Data Loss Prevention ("DLP") software as they relate to PG&E's California Consumer Privacy Act ("**CCPA**") compliance activities.

## 2. SCOPE

This SOW covers the current understanding between the parties of the Services to be provided under this SOW; however, the parties will work together if PG&E requests changes to the scope of Services to be provided hereunder to document any such changes in an addendum to or Change Order with respect to the Contract Work Authorization to which this SOW is attached (the "**CWA**"), subject to agreement between the parties.

## 3. APPROACH

KPMG will provide PG&E with two (2) KPMG personnel resources who will perform the Services. KPMG's assistance will be under the direction and supervision of the Data Security Program Principal, Tyler Howe (the "**PG&E Supervisor**"), who will be responsible for communicating the tasks and requirements of the project to personnel KPMG supplies and for reviewing their work. KPMG will not be considered the preparer or developer of Data Security CCPA Support project outputs or artifacts and will not sign or use the KPMG name on any deliverable(s).

In connection with this engagement, KPMG will not assist the KPMG personnel that KPMG provides under this SOW by:

- providing any management oversight of KPMG personnel in connection with the project;
- participating in the determination of the scope and objectives of the project;
- assisting in the development of the project plan;
- providing any manager or partner review of the work or deliverable(s); or
- providing any comments or input on the work or deliverable(s) from this engagement during meetings with management.

During this engagement KPMG's personnel provided under this SOW will work at PG&E's direction, but will not be expected to:

- function as an employee or make business decisions for PG&E,
- prepare or approve journal entries,
- prepare financial statements,

**Internal**

Page **5** of **8**

- perform management functions, including final review or approval of project artifacts such as policy, strategy, roadmap or framework
- approve journal entries,
- supervise other employees, or
- make employment decisions such as hiring or terminating employees.

PG&E has requested that KPMG use third-party technologies in order to perform this engagement. PG&E is responsible for obtaining any licenses to such technology required for KPMG's use and PG&E takes full responsibility for all security, privacy risks, and related liability related to KPMG's use of the technology and for any information uploaded thereto during the engagement. Any access to any KPMG documents uploaded to or stored in the technology by third parties shall be deemed a disclosure by PG&E.

## 4. SCHEDULE

KPMG will begin work on August 12, 2019 or after receiving a signed copy of the CWA, whichever occurs later, and will end work on November 29, 2019.

If KPMG and PG&E agree on the need to adjust the project schedule, it will require submission and processing of a Change Order to the CWA.

## 5. ENGAGEMENT RESOURCE

The following KPMG professionals will provide the Services as needed by the PG&E Supervisor for the duration of the CWA, as outlined below -

- **Josh Conkel:** DLP Technical Lead
  - o Under the direction of PG&E, this position will be responsible for defining and revising the standard operating procedures used by the DLP consultants for enrolling new data repositories in PG&E's instance of the Symantec DLP system and applying scan policies to those targets. The DLP Technical Lead will also provide first-line technical support and troubleshooting for scanning operations. If escalation to internal PG&E support staff is required this position will serve as the intermediary.

- **Yuming Zhang:** DLP Consultant
  - o Under the direction of PG&E, this position will be responsible for creating and monitoring data scanning jobs within the PG&E DLP environment referencing existing process and instructional documents. Part of the monitoring process tasks will include interpreting and reporting established scanning metrics. This position will be the first line of support for troubleshooting failed scanning jobs. If he is unable to resolve the issue, he will be responsible for escalation to the DLP Technical Lead.

## 6. ENGAGEMENT FEES

KPMG's professional fees are based upon the specified skill level of the professionals providing the Services and the amount of time and materials required to complete the engagement. KPMG engagement resources are prepared to begin work upon receipt of a signed copy of the CWA.

KPMG will invoice its professional fees for Services rendered using the following hourly rates for the level of personnel as indicated below:

**Internal**

DocuSign Envelope ID: 91F97E20-60D9-4241-AE26-62166B69F7D0

| Employee Name | Employee Category | Hourly Rate |
|---|---|---|
| Josh Conkel | Manager | $224 |
| Yuming Zhang | Associate | $135 |

KPMG estimates that its personnel will devote 40 hours per week to the engagement, except for Mr. Conkel, who it estimates will devote 32 hours per week during the months of August and September and 20 hours per weeks during the following months. Based upon the level of the professionals and the estimated amount of time devoted to the Services between August 12, 2019 and November 29, 2019, KPMG anticipates that its professional fees and expenses for providing the Services for 16 weeks to be $219,584.00 ($179,584.00 in Service fees and $40,000 in expenses).

- KPMG will not exceed the above estimated Service fees or expenses without PG&E's permission and will stop performing the Services before doing so.
- Estimated expenses assume that Yuming will travel to PG&E's San Francisco headquarters four (4) days per week for two (2) weeks, followed by one (1) week remote and that this travel pattern will repeat for the duration of the term of this SOW. Estimated expenses also assume that Josh Conkel will travel to PG&E's San Francisco headquarters one (1) week per month for four (4) days. Expenses will be billed at actual cost (subject to Section 43.0(k) of Attachment 2 to the MSA), including meals and hotels, provided that (i) daily meal expenses will not exceed $76.00 per day and (ii) hotel expenditures are not subject to a maximum per night limit, however each person must exercise discretion and prudence in connection with hotel expenses.
- Throughout the engagement, KPMG will be responsible for performing invoicing under the CWA and will submit progress bills monthly for fees and expenses incurred, with payment due upon receipt.
- Should PG&E require additional hours, more professionals or a change in the current anticipated staff for this engagement, fees for such additional hours or professionals will be commensurate with the experience levels requested and utilized. KPMG will require that PG&E sign an addendum to or Change Order with respect to the CWA in the event that the parties seek to modify the duration of this engagement or the scope of Services.
- The aforementioned fees include a significantly discounted hourly rate which shall satisfy the "Volume Rebate," "Tenure Discount", "Early Pay Discount" and "No Bid Discount" provisions set forth in the MSA, such that the fees set shall not be recalculated in the rebate calculations.
- The provisions in this "Engagement Fees" section will apply with respect to this SOW notwithstanding anything in the MSA to the contrary. Without limiting the generality of the foregoing, the Statement of Work Template Requirements set forth in Exhibit B, the Sample Resource and Scheduling Budget set forth in Exhibit B-1, and Exhibit C of Attachment 1 to the MSA will not apply to this SOW or the Services provided under this SOW.

KPMG acknowledges that the Bankruptcy Court must approve the terms of this SOW and its fees in order for KPMG to be compensated. In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. PG&E acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. The expense required by this effort was not included in the hourly or estimated fees described above. PG&E agrees that, subject to Bankruptcy Court approval, KPMG's fees for

**Internal**

such applications will be capped at 3% of the professional fees on this engagement.

To the extent that the services involve procedures in connection with PG&E's restructuring activities or emergence from bankruptcy, such work will be considered out-of-scope services under this SOW ("**Out-of-Scope Services**"). Such Out-of-Scope Services also include professional time required to prepare detailed applications in accordance with the Bankruptcy Code (described above). To the extent that changes in circumstances, such as the loss of PG&E personnel during the bankruptcy process, increase the effort required to deliver the services, this additional effort also will be billed as Out-of-Scope Services. Out-of-Scope Services will be billed in addition to the estimated fees described above, at our standard professional hourly rates. In its fee applications, KPMG will identify and describe any Out-of-Scope Services.