# EXHIBIT 1-S

# Contract Work Authorization (CWA)

This Contract Work Authorization (this "**CWA**") No. XXXXXXXXX is issued under and pursuant to the Master Service Agreement No. 4400011340 (C73), dated January 19, 2017, as amended (the "**MSA**"), between KPMG LLP ("**Contractor**"), a Delaware limited liability partnership, and Pacific Gas and Electric Company ("**PG&E**"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

This CWA is effective as of the last date set forth in the signature blocks below upon signature and delivery by both parties and expires as of the "End Date" set forth below.

| | |
|---|---|
| **MATTER NO.** | KPMG – Gas and Electric Permitting Support |
| **TOTAL PAGE COUNT:** | Page 1 of 9 |
| **CONSULTANT or CONTRACTOR LEGAL NAME:** | KPMG LLP |
| **ADDRESS:** | PO Box 120001 Dallas, Texas 75312-0922 |
| **CONSULTANT REPRESENTATIVE NAME:** | Clay Gilge |
| **PG&E CONTRACT ADMINISTRATOR:** | |
| **PHONE:** | |
| **PROJECT TITLE:** | Gas and Electric Permitting Support |
| **PG&E WORK SUPERVISOR:** | Cliff Gleicher, Senior Director, Ethics and Compliance |
| **PHONE:** | |
| **DATE PREPARED:** | September 19, 2019 |
| **PREPARED BY:** | |
| **REQUIRED START DATE:** | Upon the parties' entry into this CWA<br><br>Contractor shall commence performance hereof when authorized to do so by PG&E. |
| **END DATE:** | January 15, 2020 |
| **CWA PRICING:**<br>☒ NOT TO EXCEED<br>☐ FIRM FIXED PRICE<br>☐ | **TOTAL:** $355,019 (subject to the terms of the SOW) |
| **Send ORIGINAL Invoice to** | <u>GenlCnslLawPaymentProcessingGroup@pge.com</u> or mail to:<br><br>**PG&E Law Department**<br>**PO Box 7133**<br>**San Francisco, CA 94120-7133** |

Case: 19-30088    Doc# 4901-12    Filed: 11/27/19    Entered: 11/27/19 16:12:26    Page 2 of 17

| **DESCRIPTION OF WORK SUMMARY**: | All related work and information associated with the project is detailed in Attachment A, Statement of Work. |
|---|---|

**FOR THE AVOIDANCE OF DOUBT, THE WORK PERFORMED UNDER THIS CONTRACT IS NOT BEING PERFORMED AT THE DIRECTION OF THE PG&E LAW DEPARTMENT OR OTHER LEGAL COUNSEL AND COMMUNICATIONS REGARDING THIS WORK ARE NOT INTENDED TO BE COVERED BY ATTORNEY-CLIENT OR OTHER PRIVILEGE.**

**CONTRACTOR'S WORK UNDER THIS CWA IS SUBJECT TO THE APPLICABLE PROCEDURES AND/OR PROCESSES APPROVED BY THE BANKRUPTCY COURT IN PG&E'S BANKRUPTCY PROCEEDING (BANKRUPTCY CASE NO. 19-30088 (DM)) IN THE UNITED STATES BANKRUPTCY COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION FOR THE RETENTION OF COUNSEL [OUTSIDE PROFESSIONALS] AND THOSE PROCEDURES AND PROCESSES ARE EXPRESSLY INCORPORATED HEREIN, AS THEY MAY BE CHANGED FROM TIME TO TIME BY THE BANKRUPTCY COURT.**

**DESCRIPTION OF WORK:**

See Attachment A – STATEMENT OF WORK.

| **Authorized by: For PG&E** | | **Accepted by: For Consultant or Contractor** | |
|---|---|---|---|
| Signature | Date | Signature | 9/18/19 Date |
| PG&E Signor Title  DIRECTOR | | Title:  Principal | |
| **Type or Print Name** RONNIE CURRISS | | **Type or Print Name:  Clay Gilge** | |

Notwithstanding any other payment terms in the MSA, (a) all invoices for work performed hereunder shall be submitted directly to the PG&E Law Department (as set forth above) for payment and (b) the PG&E Billing Requirements and Procedures set forth below as Attachment B will apply to this CWA (subject to Section 43.0(k) of Attachment 2 to the MSA).

Case: 19-30088    Doc# 4901-12    Filed: 11/27/19    Entered: 11/27/19 16:12:26    Page 3 of 17

## Statement of Work

This Statement of Work (this "SOW") outlines the engagement between Pacific Gas and Electric Company ("PG&E") and KPMG LLP ("KPMG" or "Consultant") to perform the services described below.

The governing master services agreement for this SOW and the work hereunder is Master Services Agreement #4400011340, dated on January 19, 2017 (as amended, the "**MSA**"). Capitalized terms used but not defined in this SOW have the respective meanings given to them in the MSA.

### 1) Engagement Objectives and Scope

KPMG will assist PG&E with analyzing payments made in 2018 to the City of San Francisco, Santa Clara County and Marin County (referenced as Authorities Having Jurisdiction or "AHJ") related to encroachment permit citations, penalties, fines and/or notices of violation (collectively "NOVs") issued to PG&E for nonconformance of AHJ encroachment permit requirements. The objectives for this engagement will be to:

- Work with PG&E to identify potential sources of information related to NOVs, including PG&E's accounting system cost codes, cost centers and financial accounts used by the PG&E Enterprise Permit team, information related to project cost reporting and payments from the project teams, information available from PG&E's finance team, and information available from the AHJs.

- Attempt to identify payments made by PG&E to the AHJs related to NOVs and attempt to reconcile those payments to PG&E's SAP cost accounts.

- Attempt to identify and memorialize any issues and challenges currently precluding PG&E's quantification and reconciliation of NOV payments.

- Aggregate the results of the identification and reconciliation of NOV payments and document any findings and observations.

- Provide observations and recommendations to PG&E regarding potentially expanding the scope of this analysis to additional AHJs.

### 2) Work Plan

a. Kick-off engagement, including the following topics and agenda items:

   i. Identify key stakeholders and points of contact for this engagement, and review/confirm engagement objectives.
   ii. Identify key process owners and stakeholders for preliminary interviews and potential sources of information and data.
   iii. Prepare data and information requests including identifying requested data, files and documents to be provided by PG&E and other constituents.
   iv. Review timeline for completing the analysis and other tasks.
   v. Develop and finalize work and resource plan as needed.

b. Analysis preparation

   i. Read and review all information received from PG&E related to NOV payments based on preliminary interviews, data and information requests.

1

    ii.  Conduct interviews and workshops with PG&E stakeholders to understand data and information received.

    iii.  Request and review additional PG&E documents, potentially including policies, standards, and procedures related to capital project accounting, project management, and encroachment permitting.

    iv.  Request and review PG&E project-level documentation in order to substantiate or provide information related to NOV payments, including:
- Contractor and/or vendor records
- Sub-contractor records
- SAP detailed cost codes and accounts
- Information generated from enterprise permitting tools
- Accounting and other payment systems and records

c.  Identify and reconcile NOV payments by performing the following tasks:

    i.  Reconcile payment transactions from PG&E's accounting system to the corresponding cost accounts and/or PG&E project account codes

    ii.  Review project-level documentation obtained from PG&E in support of each transaction

    iii.  Review supporting documentation received by PG&E from AHJs in support of each transaction

    iv.  Identify and document the amount of each payment attributable to encroachment permit related NOVs, if any

d.  PG&E stakeholder review and final deliverables

    i.  Provide preliminary findings and observations in spreadsheet format for each NOV payment

    ii.  Review and obtain comments and feedback on preliminary findings and observations with PG&E stakeholders

    iii.  Provide final list of findings and observations in spreadsheet format to PG&E

    iv.  Prepare and deliver final deliverables to PG&E

**3) Deliverables**

Deliverables for this SOW are:
- Final work plan, data and document request lists and a summary of all information provided by PG&E stakeholders during the course of this engagement.
- Summary of final NOV payments including reconciliations in a spreadsheet format.
- A PowerPoint document summarizing work performed, the results of the analysis including NOV payments and reconciliations and any observations, recommendations, or suggested next steps

**4) Schedule**

Work is to be performed over the course of approximately two weeks and will begin immediately following full execution of this CWA.

Case: 19-30088   Doc# 4901-12   Filed: 11/27/19   Entered: 11/27/19 16:12:26   Page 5 of 17

**Attachment A**

## 5) PG&E Responsibilities

PG&E is responsible for the following:

- PG&E Stakeholders will be available for interviews and working sessions consistent with the two-week expected time duration of this engagement.
- PG&E will provide, or cause to provide, responses to data and information requests within 1-2 days.
- PG&E will provide KPMG complete, accurate and timely information from which to conduct our analysis and will confirm there are no other sources of relevant information prior to completion of KPMG's analysis.
- PG&E will be responsible for distributing all communication to PG&E employees, Stakeholders, vendors and AHJs related to workshops, meetings, interviews and deliverables.
- PG&E will identify and schedule all interviews.
- PG&E will provide security badge access, dedicated conference room space, individual work space, internet connections, printer access, and phone access for KPMG for the duration of the project.

## 6) Professional Fees and Expenses

The fees for this engagement will be invoiced on a time and material basis, plus expenses to be reimbursed by PG&E in an amount up to 7.5% of KPMG's professional fees for travel, lodging, meals, etc., which will be passed through to PG&E at cost, without markup (subject to Section 43.0(k) of Attachment 2 to the MSA). The total fees and expenses under this agreement will not exceed $355,019.

KPMG's current hourly rates by professional level for this engagement are:

| | |
|---|---|
| Analyst (off-shore) | $ 125 |
| Associate | $ 325 |
| Senior Associate | $ 425 |
| Manager | $ 475 |
| Director | $ 550 |
| Managing Director | $ 625 |
| Principal | $ 625 |

KPMG's estimated professional fees and expenses for this SOW are summarized below:

| | Phase Description | Estimated Hours | Estimated Fees |
|---|---|---|---|
| 1 | Permitting Spend Analysis | 718 | $330,250 |
| | Fee (sub-total) = | | $330,250 |
| | Expenses (7.5% of professional fees) = | | $24,769 |
| | Estimated Fee + Expenses (total) = | | $355,019 |

3

**Attachment A**

KPMG acknowledges that the Bankruptcy Court must approve the terms of this CWA and its fees in order for KPMG to be compensated. In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. PG&E acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. The expense required by this effort was not included in the estimated fees described above. PG&E agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

To the extent that the services involve procedures in connection with PG&E's restructuring activities or emergence from bankruptcy, such work will be considered out-of-scope services under this SOW ("Out-of-Scope Services"). Such Out-of-Scope Services also include professional time required to prepare detailed applications in accordance with the Bankruptcy Code (described above). To the extent that changes in circumstances, such as the loss of PG&E personnel during the bankruptcy process, increase the effort required to deliver the services, this additional effort also will be billed as Out-of-Scope Services. Out-of-Scope Services will be billed in addition to the estimated fees described above, at 100% of our standard professional hourly rates. In its fee applications, KPMG will identify and describe any Out-of-Scope Services.

The provisions in this Section 6 will apply with respect to this SOW notwithstanding anything in the MSA to the contrary. Without limiting the generality of the foregoing, the Statement of Work Template Requirements set forth in Exhibit B, the Sample Resource and Scheduling Budget set forth in Exhibit B-1, and Exhibit C of Attachment 1 to the MSA will not apply to this SOW or the services provided under this SOW.

7) **Invoicing**

We will submit our billings on a monthly basis according to the MSA and this SOW. We reserve the right to halt further services under this SOW until payment is received on past-due invoices.

In the event Consultant is unable to have access to resources, data or other information required for the project, or if PG&E determines, at its sole discretion, that Consultant should not continue with the work, then PG&E and Consultant agree that Consultant is not required to perform further services hereunder and Consultant shall be paid for hours and expenses incurred to date and no further obligation from PG&E to Consultant for services provided by Consultant hereunder shall be due.

Consultant's invoices shall be submitted to PG&E Law Department as noted on the CWA and a copy provided to the PG&E Work Supervisor at the address listed on the CWA. Payment will be made pursuant to date of receipt of invoice by PG&E Law Department.

8) **PG&E and Consultant Work Supervisor Name, Number and email address**

Cliff Gleicher
Senior Director, Ethics and Compliance
CJGF@pge.com

9) **Work Location(s)**

The majority of work is expected to occur at PG&E's General Office. From time to time, KPMG may be conducting meetings at other PG&E offices, such as those in San Ramon, Concord, or other regional offices, depending on the location and schedule of PG&E resources involved in this effort.

**10)    Other Matters**

KPMG's services as described in this SOW constitute an Advisory engagement conducted under the American Institute of Certified Public Accountants ("AICPA") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report or agreed-upon procedures engagement as those services are defined in AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by KPMG directly reporting on financial data or internal control or expressing a conclusion or any other form of assurance.

KPMG's role is limited to providing the services articulated in this SOW. In so doing, KPMG will undertake no role or view that could be fairly interpreted as public policy advocacy, lobbying, or otherwise be perceived as impairing our independence or objectivity; the firm's work is not intended to be used as a public policy advocacy document or in that context. The deliverable report will be on client letterhead, provided as a holistic work and should be read and interpreted only in its entirety.

Additionally, the scope of work does not require that KPMG make any legal interpretations or render any legal advice, and the parties hereby agree that KPMG's performance of the services under this SOW shall not include or be construed to include the provision by KPMG of legal advice or legal services.

**Attachment B**

**PG&E BILLING REQUIREMENTS AND PROCEDURES**

(References herein to "we" are to PG&E and references to "you" herein are to Contractor.)

**Billing Requirements:**

1.  We agree to reimburse you for your out-of-pocket expenses at your actual net cost. All disbursements (including lodging, travel, out-of-pocket copying service, transcripts, and the like) must be included with your statements with supporting documentation for all lodging and travel expenses (other than nominal amounts) and for each individual item the cost of which is $75.00 or greater.

2.  All expenses shall be reasonable, ordinary, actual net cost incurred and paid by you. All expenses shall be billed at cost. Please note that air travel must be at coach rates and all rental car costs must be at subcompact rates unless otherwise expressly authorized in writing. We agree that expenses for lodging, meals, and transportation shall be at reasonable rates and that you will exercise prudence in incurring such expenses. Mileage will be paid at the Internal Revenue Service's current year approved standard rate.

3.  Normal overheads shall be considered a bundled component of your hourly fees and not charged or invoiced to PG&E. If any such charge appears, we will automatically deduct it from your invoice. Normal overheads for purposes of this Contract are secretarial services, administrative, library services, clerical support, office supplies, postage, routine office copying, telecopying or "fax," local telephone, filing, file indexing, bill preparation, staff overtime, word processing, and meals or snacks (unless while travelling or otherwise approved in advance). Time spent in the preparation of fee applications to the bankruptcy court is not considered normal overhead, except to the extent the activities are substantially similar to Contractor's routine bill preparation outside of bankruptcy proceedings.

4.  When photocopying jobs, other than routine office copying, are required, you must use the least expensive service available. In any event, we will pay no more than $0.10 per page other than for unusually sized documents or color photocopying. Any job, whether by you, a vendor, or a service, exceeding $1,000 requires advance approval confirmed in writing.

5.  Travel time shall not be considered as actual time worked unless approved, in advance, by the principal PG&E attorney assigned to the matter. In the event you or your employee works during travel time, such efforts shall not be considered travel time for the purpose of this Contract. Air travel time shall be billed at one-half the hourly rate of straight time rates unless you work during air travel.

**Billing Procedures:**

In order to process your statements, PG&E must have the following information with *every* monthly statement:

1.  A cover summary sheet on your letterhead that includes:
    *   Your remittance address if different than your letterhead address;

1

- Your taxpayer ID number;

- The project name;

- The calendar period covered by the statement; and,

- A summary statement of the professional fees and disbursements together with the invoice total.

2. <u>A separate statement of supporting detail on your letterhead with</u>:
   - The Project Name;

   - Name and job title (e.g., consultant) of each worker on each date work is done;

   - Time worked on each date work is done, separated by function;

   - Description of work done on each date;

   - Hourly rates for each worker;

   - Disbursements;

   - Total amount billed; and,

3. <u>Additional materials to include with your statement</u>:
   - You should attach receipts or other documentation for individual items costing $75 or greater, including photocopying and lodging.

2



# Contract Work Authorization (CWA)

This Contract Work Authorization ("CWA") No. 57640001 is issued under and pursuant to the Blanket Agreement or Master Service Agreement No. 4400011340 (C73) dated January 19, 2017, as amended (the "MSA") between the below-named Contractor ("Contractor"), KPMG LLP, a Delaware limited liability partnership, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions

| | | |
|---|---|---|
| Contractor's Legal Name: | KPMG LLP | **Total Number of Pages:** 7 |
| Contractor's Address: | 55 2nd Street<br>Suite 1400<br>San Francisco, CA 94105 | |
| Project Name: | Gas and Electric Permitting Support Phase 2 | |
| Job Location: | San Francisco, CA | |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract Work Authorization and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Scope of Work.

1. FOR THE AVOIDANCE OF DOUBT, THE WORK PERFORMED UNDER THIS CONTRACT IS NOT BEING PERFORMED AT THE DIRECTION OF THE PG&E LAW DEPARTMENT OR OTHER LEGAL COUNSEL AND COMMUNICATIONS REGARDING THIS WORK ARE NOT INTENDED TO BE COVERED BY ATTORNEY-CLIENT OR OTHER PRIVILEGE.

2. Your work under this Agreement is subject to the applicable procedures and/or processes approved by the Bankruptcy Court in PG&E's bankruptcy proceeding (Bankruptcy Case No. 19-30088 (DM)) in the United States Bankruptcy Court, Northern District of California, San Francisco Division for the retention of counsel [outside professionals] and those procedures and processes are expressly incorporated herein, as they may be changed from time to time by the Bankruptcy Court.

**ATTACHMENTS**: Each of the following documents are attached to this CWA and are incorporated herein by this reference:
Attachment A: Scope of Work, page 3 through 7

| | |
|---|---|
| **CWA TERM:** | This CWA is effective upon signature by both parties and expires on 12/31/2021. Time is of the essence. |
| **CWA COMPLETION:** | Contractor shall commence performance hereof when directed to do so by PG&E and shall be completed by the estimated completion date of January 15, 2020 (targeted) |

**CONSIDERATION**: As full consideration for satisfactory performance of the Work under this CWA by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E CWA Change Order, fully executed by both PG&E and Contractor.

**TOTAL:** 1,290,000 (subject to the terms of the SOW)

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT WORK AUTHORIZATION.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: KPMG, LLP | |
|---|---|---|---|
| Signature | | Signature | |
| Name | R. CHRIS | Name | Geno Armstrong |
| Title | DIRECTOR | Title | Principal |
| Date | 11 / 7 / 2019 | Date | 11/6/2019 |

62-4229 CWA (9/26/11)          Sourcing



## ADMINISTRATION

| PG&E Negotiator | [enter Name] | | Contractor Represent | Geno Armstrong |
|---|---|---|---|---|
| Phone | [enter #] | | Phone | (415) 963-7301 |
| Email | [enter Address] | | Email | garmstrong@kpmg.com |

| Accounting Reference | [enter Account # if known or Delete] |
|---|---|

| PG&E Work Supervisor: | Cliff Gleicher | Phone: (415) 971-2678 |
|---|---|---|

| INVOICE INSTRUCTIONS: Contractor shall send invoices for each payment when due, showing the CWA number, to: PACIFIC GAS AND ELECTRIC COMPANY | Send ORIGINAL Invoice to: | Invoices should be sent to PG&E Law Department Finance Group, P. O. Box 7133, San Francisco, CA 94120 or emailed to GenlCnslLawPaymentProcessingGroup@pge.com. |
|---|---|---|
| | | |
| | For information regarding invoice status, call PG&E's Paid Help Line at (800) 756-PAID (7243) or go to AP Web Reporting site at www.pge.com/actpay. <br> **Note:** Contractors using PG&E's electronic invoicing system do not need to mail a copy of the invoice to PG&E Accounts Payable. |

Notwithstanding any other payment terms in the MSA, all invoices for work performed hereunder shall be submitted directly to the PG&E Law Department (as set forth above) for payment (subject to Section 43.0(k) of Attachment 2 to the MSA). PG&E approval of this CWA shall satisfy the Hourly Personnel Rates rate approval requirements set forth in Attachment C to the MSA.

## INTERNAL PG&E USE ONLY

| Distribution Date | |
|---|---|

| Distribution of Copies: | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
|---|---|---|
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |

Case: 19-30088    Doc# 4901-12    Filed: 11/27/19    Entered: 11/27/19 16:12:26    Page 12 of 17

Attachment A

## Statement of Work

This Statement of Work (this "SOW") outlines the engagement between Pacific Gas and Electric Company ("PG&E") and KPMG LLP ("KPMG" or "Consultant") to perform the services described below.

The governing master services agreement for this SOW and the work hereunder is Master Services Agreement #4400011340, dated on January 19, 2017 (as amended, the "**MSA**"). Capitalized terms used but not defined in this SOW have the respective meanings given to them in the MSA.

## 1) Engagement Objectives and Scope

PG&E seeks to analyze a random sample of payments made in 2018 and 2019 to entities that issue encroachment permits (referenced as Authorities Having Jurisdiction or "AHJ") related to encroachment permit citations, penalties, fines and/or notices of violation (collectively "NOVs") issued to PG&E for nonconformance of AHJ encroachment permit requirements. KPMG will help PG&E to select sample, test the sample, and estimate/understand the financial impact of the test results. As part of its testing support, KPMG will test the viability of using computer-aided testing techniques.

The objectives for this engagement will be to:

- Work with PG&E to identify potential sources of information related to NOVs, including PG&E's accounting system cost codes, cost centers and financial accounts used by the PG&E Enterprise Permit team, information related to project cost reporting and payments from the project teams, information available from PG&E's finance team, and information available from the AHJs.

- Attempt to identify payments made by PG&E to the AHJs related to NOVs and identify how those payments were originally recorded in PG&E's SAP general ledger accounts.

- Attempt to identify and memorialize any issues and challenges currently precluding PG&E's quantification and reconciliation of NOV payments.

- Aggregate the results of the identification and analysis of NOV payments, and document findings and observations.

- Provide observations and recommendations to PG&E regarding potentially expanding the scope of this analysis to additional time periods.

## 2) Work Plan

a. Kick-off engagement, including the following topics and agenda items:

  i. Identify key stakeholders and points of contact for this engagement, and review/confirm engagement objectives.
  ii. Identify key process owners and stakeholders for preliminary interviews and potential sources of information and data.
  iii. Prepare data and information requests including identifying requested data, files and documents to be provided by PG&E and other constituents.
  iv. Review timeline for completing the analysis and other tasks.
  v. Develop and finalize work and resource plan as needed.

b. Analysis

    i.   Read and review information received from PG&E related to NOV payments based on preliminary interviews, data and information requests.

    ii.   Conduct interviews and workshops with PG&E stakeholders to understand data and information received.

    iii.   Request and review additional PG&E documents, potentially including policies, standards, and procedures related to capital project accounting, project management, and encroachment permitting.

    iv.   Agree with PG&E on sampling approach and modifications thereto.

    v.   Request and review PG&E payment documentation in order to substantiate or provide information related to NOV payments, including but not limited to:
- Contractor and/or vendor records
- Sub-contractor records
- SAP detailed cost codes and accounts
- Information generated from enterprise permitting tools
- Accounting and other payment systems and records

    vi.   Evaluate computer-aided testing techniques.

    vii.   Review supporting documentation received by PG&E from AHJs in support of each transaction.

    viii.   Identify and document the amount of each payment attributable to encroachment permit related NOVs, if any.

    ix.   Use test results to estimate population parameters and corresponding confidence intervals.

c.   PG&E stakeholder review and final deliverables

    i.   Provide preliminary findings and observations in spreadsheet format for each NOV payment

    ii.   Review and obtain comments and feedback on preliminary findings and observations with PG&E stakeholders

    iii.   Provide final list of findings and observations in spreadsheet format to PG&E

    iv.   Prepare and deliver final deliverables to PG&E

## 3) Deliverables

Deliverables for this SOW are:

- Final work plan, data and document request lists and a summary of information provided by PG&E stakeholders during the course of this engagement.
- Summary of final NOV payments including reconciliations in a spreadsheet format.
- A PowerPoint document summarizing work performed, the results of the analysis including NOV payments and reconciliations and observations, recommendations, or suggested next steps

## 4) Schedule

Work is to be performed over the course of approximately ten weeks and will begin immediately following full execution of this CWA.

## 5) PG&E Responsibilities

PG&E is responsible for the following:

- PG&E will designate a qualified management-level individual to be responsible and accountable for overseeing the engagement.
- PG&E will establish and monitor the performance of the engagement to ensure that it meets management's objectives.
- PG&E will make any decisions that involve management functions related to the engagement and accept full responsibility for such decisions.
- PG&E will evaluate the adequacy of the services performed and any findings that result.
- PG&E Stakeholders will be available for interviews and working sessions consistent with the ten-week expected time duration of this engagement.
- PG&E will provide, or cause to provide, responses to data and information requests within 1-2 days.
- PG&E will provide KPMG complete, accurate and timely information from which to conduct our analysis and will confirm there are no other sources of relevant information prior to completion of KPMG's analysis.
- PG&E will be responsible for providing complete data from its systems for KPMG's sample selection; KPMG is not assuring the completeness of PG&E's data extraction.
- PG&E will be responsible for distributing all communication to PG&E employees, Stakeholders, vendors and AHJs related to workshops, meetings, interviews and deliverables.
- PG&E will identify and schedule all interviews.
- PG&E will provide security badge access, dedicated conference room space, individual work space, internet connections, printer access, and phone access for KPMG for the duration of the project.
- PG&E will review and approve the sampling approach and modifications thereto.

## 6) Professional Fees and Expenses

The fees for this engagement will be invoiced on a time and material basis, plus expenses to be reimbursed by PG&E in an amount up to 7.5% of KPMG's professional fees for travel, lodging, meals, etc., which will be passed through to PG&E at cost, without markup (subject to Section 43.0(k) of Attachment 2 to the MSA). The total fees and expenses under this agreement will not exceed $1,290,000.

KPMG's current hourly rates by professional level for this engagement are:

| | |
|---|---|
| Analyst (off-shore) | $ 150 |
| Associate | $ 325 |
| Senior Associate | $ 425 |
| Manager | $ 475 |
| Director | $ 550 |
| Managing Director | $ 625 |
| Principal | $ 625 |

KPMG's estimated professional fees and expenses for this SOW are summarized below:

Attachment A

| | Phase Description | Estimated Hours | Estimated Fees |
|---|---|---|---|
| 1 | Analyze a random sample of 2018 and 2019 permitting spend | 1,930 | $ 700,000 |
| 2 | Test viability of using computer aided testing techniques | 650 | $ 500,000 |
| | Fee (sub-total) = | | $1,200,000 |
| | Expenses (7.5% of professional fees) = | | $    90,000 |
| | Estimated Fee + Expenses (total) = | | $1,290,000 |

KPMG's fees and expenses are not contingent upon the final results, nor does KPMG guarantee any result or legal/regulatory outcome as a result of our efforts.

KPMG acknowledges that the Bankruptcy Court must approve the terms of this CWA and its fees in order for KPMG to be compensated. In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. PG&E acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. The expense required by this effort was not included in the estimated fees described above. PG&E agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

To the extent that the services involve procedures in connection with PG&E's restructuring activities or emergence from bankruptcy, such work will be considered out-of-scope services under this SOW ("Out-of-Scope Services"). Such Out-of-Scope Services also include professional time required to prepare detailed applications in accordance with the Bankruptcy Code (described above). To the extent that changes in circumstances, such as the loss of PG&E personnel during the bankruptcy process, increase the effort required to deliver the services, this additional effort also will be billed as Out-of-Scope Services. Out-of-Scope Services will be billed in addition to the estimated fees described above, at 100% of our standard professional hourly rates. In its fee applications, KPMG will identify and describe any Out-of-Scope Services.

The provisions in this Section 6 will apply with respect to this SOW notwithstanding anything in the MSA to the contrary. Without limiting the generality of the foregoing, the Statement of Work Template Requirements set forth in Exhibit B, the Sample Resource and Scheduling Budget set forth in Exhibit B-1, and Exhibit C of Attachment 1 to the MSA will not apply to this SOW or the services provided under this SOW.

Case: 19-30088    Doc# 4901-12    Filed: 11/27/19    Entered: 11/27/19 16:12:26    Page 16 of 17

## 7) Invoicing

We will submit our billings on a monthly basis according to the MSA and this SOW. We reserve the right to halt further services under this SOW until payment is received on past-due invoices.

In the event Consultant is unable to have access to resources, data or other information required for the project, or if PG&E determines, at its sole discretion, that Consultant should not continue with the work, then PG&E and Consultant agree that Consultant is not required to perform further services hereunder and Consultant shall be paid for hours and expenses incurred to date and no further obligation from PG&E to Consultant for services provided by Consultant hereunder shall be due.

Consultant's invoices shall be submitted to PG&E Law Department as noted on the CWA and a copy provided to the PG&E Work Supervisor at the address listed on the CWA. Payment will be made pursuant to date of receipt of invoice by PG&E Law Department.

## 8) PG&E and Consultant Work Supervisor Name and email address

| | |
|---|---|
| Cliff Gleicher | Juan González III |
| Senior Director, Ethics and Compliance | Principal |
| CJGF@pge.com | juangonzalez@kpmg.com |

## 9) Work Location(s)

The majority of work is expected to occur at PG&E's General Office. From time to time, KPMG may be conducting meetings at other PG&E offices, such as those in San Ramon, Concord, or other regional offices, depending on the location and schedule of PG&E resources involved in this effort.

## 10)    Other Matters

KPMG's services as described in this SOW constitute an Advisory engagement conducted under the American Institute of Certified Public Accountants ("AICPA") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report or agreed-upon procedures engagement as those services are defined in AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by KPMG directly reporting on financial data or internal control or expressing a conclusion or any other form of assurance.

Sampling entails certain risks. Correspondingly KPMG cannot guarantee that all NOVs will be identified.

KPMG's role is limited to providing the services articulated in this SOW. In so doing, KPMG will undertake no role or view that could be fairly interpreted as public policy advocacy, lobbying, or otherwise be perceived as impairing our independence or objectivity; the firm's work is not intended to be used as a public policy advocacy document or in that context. The deliverable report will be on client letterhead, provided as a holistic work and should be read and interpreted only in its entirety.

Additionally, the scope of work does not require that KPMG make any legal interpretations or render any legal advice, and the parties hereby agree that KPMG's performance of the services under this SOW shall not include or be construed to include the provision by KPMG of legal advice or legal service.