1  Andrew I. Silfen (*pro hac vice*)
   Beth M. Brownstein (*pro hac vice*)
2  **ARENT FOX LLP**
   1301 Avenue of the Americas, 42nd Floor
3  New York, New York 10019
   Telephone:  (212) 484-3900
4  Facsimile:  (212) 484-3990
   Email:      andrew.silfen@arentfox.com
5              beth.brownstein@arentfox.com

6  Aram Ordubegian (SBN 185142)
   **ARENT FOX LLP**
7  55 Second Street, 21st Floor
   San Francisco, CA  94105
8  Telephone:  (415) 757-5500
   Facsimile:  (415) 757-5501
9  Email:      aram.ordubegian@arentfox.com

10 *Counsel for BOKF, NA, solely in its capacity as*
   *Indenture Trustee for the Utility Senior Notes*
11
   Dennis F. Dunne (admitted *pro hac vice*)
12 Samuel A. Khalil (admitted *pro hac vice*)
   **MILBANK LLP**
13 55 Hudson Yards
   New York, New York 10001-2163
14 Telephone:  (212) 530-5000
   Facsimile:  (212) 530-5219
15
   *and*
16
   Gregory A. Bray (SBN 115367)
17 Thomas R. Kreller (SBN 161922)
   **MILBANK LLP**
18 2029 Century Park East, 33rd Floor
   Los Angeles, CA 90067
19 Telephone:  (424) 386-4000
   Facsimile:  (213) 629-5063
20
   *Counsel for the Official Committee*
21 *of Unsecured Creditors*

Michael S. Stamer (admitted *pro hac vice*)
Ira S. Dizengoff (admitted *pro hac vice*)
David H. Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002

*and*

Ashley Vinson Crawford (SBN 257246)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street
Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile:  (415) 765-9501

*Counsel for the Ad Hoc Committee of Senior*
*Unsecured Noteholders of Pacific Gas and*
*Electric Company*

22
23
24
25
26
27
28

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| **- and –** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☑ Affects both Debtors
*All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

**CONSOLIDATED OPENING BRIEF OF CERTAIN CREDITOR GROUPS AND REPRESENTATIVES REGARDING THE ENTITLEMENT OF HOLDERS OF UTILITY FUNDED DEBT CLAIMS TO OPTIONAL EARLY REDEMPTION, MAKE-WHOLE, OR SIMILAR AMOUNTS IN A SOLVENT DEBTOR CASE**

<u>Hearing</u>
Date: January 14, 2020
Time: 10:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
   Courtroom 17
   450 Golden Gate Ave, 16th Floor
   San Francisco, CA 94102

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 2

BACKGROUND ..................................................................................................... 3

I.      Debtors' Wildfire Litigation Exposure Leads to Bankruptcy Filing .............. 3

II.     The Senior Notes ........................................................................................ 4

     A.     Certain Terms Are Common to All Senior Notes ................................ 5

     B.     The Optional Redemption Provisions Vary Across Senior Notes .......... 6

          1.     The Fixed Date Optional Redemption Provisions ..................... 6

          2.     The Any Time Optional Redemption Provisions...................... 8

          3.     The 2034 Notes Optional Redemption Provision ..................... 9

III.    Treatment of the Senior Notes in the Proposed Plans ............................... 9

ARGUMENT ........................................................................................................ 10

I.      The Noteholders Are Entitled to Optional Redemption Premiums, Under Applicable Non-Bankruptcy Law, If the Debtors Elect to Discharge the Senior Notes Pursuant to the Debtor Plan ......................................................... 12

     A.     The Debtors' Choice to Satisfy the Senior Notes Pursuant to the Debtor Plan is "Optional." .............................................................. 12

     B.     The Debtors' Choice to Satisfy the Senior Notes Under the Debtor Plan Constitutes a "Redemption" Entitling Noteholders to the Optional Redemption Premium .............................................. 15

          1.     The Proposed Plans' Treatment of the Senior Notes Constitutes a "Redemption" Under The Note Documents' Plain Terms...................... 15

               a.     Fixed Date Notes................................................... 17

               b.     Any Time Notes ................................................... 17

               c.     2034 Notes ........................................................... 18

          2.     Redemption Can Occur After a Bankruptcy-Induced Acceleration as a Matter of Law ..................................................... 20

          3.     The Second Circuit's *Momentive* Decision Does Not Counsel a Contrary Result ................................................................. 24

II.     The Optional Redemption Premiums Are Not Disallowed by the Bankruptcy Code....... 26

     A.     The Optional Redemption Premiums Are "Charges," or "Liquidated Damages," Not "Interest." ............................................................. 27

     B.     The Optional Redemption Premiums Are Fully Matured, and Cannot Constitute "Unmatured" Interest ................................................ 28

     C.     The Solvent Debtors Must Honor the Note Documents In Any Event ................. 29

STATEMENT OF CREDITORS' COMMITTEE .................................................. 31

CONCLUSION .................................................................................................... 31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 1141 Realty Owner LLC*,
598 B.R. 534 (Bankr. S.D.N.Y. 2019) ...........................................................25, 27

*In re 360 Inns, Ltd.*,
76 B.R. 573 (Bankr. N.D. Tex. 1987) .................................................................29

*In re 433 S. Beverly Drive*,
117 B.R. 563 (Bankr. C.D. Cal. 1990) ...................................................13, 27, 28

*In re AMR Corp*,
730 F.3d 88 (2d Cir. 2013) ................................................................................26

*Balsam v. Tucows Inc.*,
627 F.3d 1158 (9th Cir. 2010) ...........................................................................23

*Carman v. Alvord*,
644 P.2d 192 (Cal. 1982) ...................................................................................20

*In re Chemtura Corp.*,
439 B.R. 561 (Bankr. S.D.N.Y. 2010) ...................................................... *passim*

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*,
773 F.3d 110 (2d Cir. 2014) ...............................................................................16

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*,
791 F.2d 524 (7th Cir. 1986) .......................................................................14, 30

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch,
Pierce, Fenner & Smith Inc.*,
232 F.3d 153 (2d Cir. 2000) ...............................................................................16

*Crosby v. HLC Properties, Ltd.*,
167 Cal. Rptr. 3d 354 (Cal. App. 2014) ............................................................18

*Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*,
679 F.2d 264 (1st Cir. 1982) ..............................................................................30

*In re Dow Corning Corp.*,
244 B.R. 678 (Bankr. E.D. Mich. 1999) ............................................................15

*In re Dow Corning Corp.*,
456 F.3d 668 (6th Cir. 2006) .......................................................................14, 30

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

*In re Energy Future Holdings Corp.*,
    842 F.3d 247 (3d Cir. 2016)...................................................................... *passim*

*Fed. Nat. Mortg. Ass'n v. Miller*,
    473 N.Y.S.2d 743 (N.Y. Sup. Ct. 1984) ...................................................20

*Felin v. Kyle*,
    102 F.2d 349 (3d Cir. 1939)......................................................................16

*Gen. Elec. Capital Corp. v. Future Media Prods., Inc.*, 547 F.3d 956 (9th Cir.
    2008) ........................................................................................................13

*Heine v. Signal Cos.*,
    No. 74 Civ. 3036, 1977 WL 930 (S.D.N.Y. Mar. 4, 1977)........................16

*In re Imperial Coronado Partners, Ltd.*,
    96 B.R. 997 (B.A.P. 9th Cir. 1989)....................................................... *passim*

*Johnson v. Norris*,
    190 F. 459 (5th Cir. 1911).........................................................................30

*L&J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc.*,
    995 F.2d 940 (9th Cir 1993).........................................................................2

*In re Lappin Elec. Co., Inc.*,
    245 B.R. 326 (Bankr. E.D. Wis. 2000) ..............................................27, 28

*In re Los Angeles Dodgers LLC*,
    465 B.R. 18 (D. Del. 2011) ..................................................................14, 30

*Matter of MPM Silicones, L.L.C.*,
    874 F.3d 787 (2d Cir. 2017)............................................................24, 25, 26

*In re MPM Silicones, LLC*,
    No. 14-22503-RDD, 2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014) ............25

*NML Capital v. Republic of Arg.*,
    952 N.E.2d 482 (N.Y. 2011)...........................................................21, 22, 23

*Nw. Mut. Life Ins. Co. v. Uniondale Realty Assocs.*,
    816 N.Y.S.2d 831 (N. Y. Sup. Ct. 2006) ..................................................25

*Olin Corp. v. Am. Home Assurance Co.*,
    704 F.3d 89 (2d Cir. 2012)........................................................................16

*In re Outdoor Sports Headquarters*,
    161 B.R. 414 (Bankr. S.D. Ohio 1993).....................................................29

*Perez-Encinas v. AmerUs Life Ins. Co.*,
    468 F. Supp. 2d 1127 (N.D. Cal. 2006).....................................................16

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

*In re Planvest*,
94 B.R. 644 (Bankr. D. Ariz. 1988)................................................................................28

*In re Premier Entm't Biloxi LLC*,
445 B.R. 582 (Bankr. S.D. Miss. 2010).....................................................................11, 24

*Quadrant Structured v. Vertin*,
16 N.E. 3d 1165 (N.Y. 2014).......................................................................................16

*In re Read-Rite Corp.*,
No. 03-43576 RN7, 2005 WL 2210659 (Bankr. N.D. Cal. Aug. 11, 2005) .........................27

*Ridgley v. Topa Thrift & Loan Ass'n*,
17 Cal. 4th 970 (1998) .................................................................................................12

*Roden v. AmerisourceBergen Corp.*,
113 Cal. Rptr. 3d 20 (Cal. Ct. App. 2010) .......................................................................18

*Ruskin v. Griffiths*,
269 F.2d 827 (2d Cir. 1959) ..........................................................................................29

*In re S. Side House, LLC*,
451 B.R. 248 (Bankr. E.D.N.Y. 2011) ............................................................................12

*In re School Specialty, Inc.*,
No. 13-10125, 2013 Bankr. LEXIS 1897 (Bankr. D. Del. Apr. 22, 2013) .............................28

*SDC/Pullman Partners v. Tolo Inc.*,
70 Cal. Rptr. 2d 62 (Cal. Ct. App. 1997) ........................................................................18

*In re Skyler Ridge*,
80 B.R. 500 (Bankr. C.D. Cal. 1987)..........................................................................21, 28

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
549 U.S. 443 (2007)......................................................................................................11

*Treasurer of N.J. v. U.S. Dep't of Treasury*,
684 F.3d 382 (3d Cir. 2012)...........................................................................................20

*In re Trico Marine Servs., Inc.*,
450 B.R. 474 (Bankr. D. Del. 2011) ...........................................................................27, 28

*U.S. Bank Nat. Ass'n v. S. Side House, LLC*,
No. 11-CV-4135 ARR, 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012) ...................................10

*Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res.,
Inc. (In re Ultra Petroleum Corp.)*,
913 F.3d 533 (5th Cir. 2019)..........................................................................................27

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

*Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res.,
Inc. (In re Ultra Petroleum Corp.),*
No. 17-20793, 2019 WL 6318074 (5th Cir. Nov. 26, 2019) ..............................................27, 28

*UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli),*
501 F.3d 1 (1st Cir. 2007) ..........................................................................................30

*In re Vanderveer Estates Holdings, Inc.,*
283 B.R. 122 (Bankr. E.D.N.Y. 2002) ..............................................................................12

*Wells Fargo Bank, N.A. v. Cabazon Band of Mission Indians,*
No. E060447, 2016 WL 3438920 (Cal. Ct. App. June 15, 2016) ..................................4, 12, 16

*Wilmington Sav. Fund Soc., FSB v. Cash America Int'l, In*c.,
No. 15-cv-5027 (JMF), 2016 WL 5092594 (S.D.N.Y. Sept. 19, 2016)...................................25

**Statutes**

11 U.S.C. § 363 ...........................................................................................................13

11 U.S.C. § 502(b)(2)................................................................................3, 27, 28, 29

11 U.S.C. § 506(b).......................................................................................................27

11 U.S.C. § 1121(d)(1)..................................................................................................9

11 U.S.C. § 1124(2) .............................................................................................13, 14

Cal. Civ. Code § 1636 ..................................................................................................16

Civ. Code § 1638 .........................................................................................................18

Cal. Civ. Code § 1639 ..................................................................................................16

Cal. Civ. Code § 1641 ..................................................................................................18

Cal. Civ. Code § 1644 ..................................................................................................16

Civ. Code § 1653 .........................................................................................................18

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

BOKF, NA ("BOKF"), solely in its capacity as successor indenture trustee under the Indentures dated as of (i) April 22, 2005 Supplementing, Amending and Restating the Indenture of Mortgage Dated March 11, 2004; (ii) November 29, 2017 and (iii) August 6, 2018, each as supplemented or amended, pursuant to which Pacific Gas and Electric Company (the "Utility") issued the senior notes (the "Senior Notes") to investors (the "Noteholders"), by and through its counsel, Arent Fox LLP, and the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company (the "AHC"), by and through its counsel Akin Gump Strauss Hauer & Feld LLP, hereby submit this Brief pursuant to the Court's October 31, 2019 Order [Docket No. 4540] (the "Scheduling Order") in which the Court ordered briefing on certain discrete, threshold legal issues, with the potential to impact creditors' rights and generate appellate activity, prior to confirmation proceedings. In particular, the Debtors' proposed chapter 11 plan treats the Noteholders' claims as "unimpaired," despite the fact that it proposes to pay the Noteholders cash in "full and final satisfaction, settlement, release and discharge" of the Senior Notes *without* including the optional early redemption premiums owed to the Noteholders under the terms of the applicable documents governing the Senior Notes.

This brief is intended to address only the discrete issue of optional early redemption premiums. Acknowledging the importance of this threshold issue, the parties and the Court agreed to forgo formal adversary proceedings and brief it in advance of plan confirmation to facilitate its early resolution. Through this brief, BOKF and the AHC respectfully move for an order declaring that (i) the Noteholders are entitled to Optional Redemption Premiums (as defined below) if the Senior Notes are satisfied (without reinstatement) and/or cancelled, and (ii) should any plan proponent propose to satisfy principal and interest due on the Senior Notes without paying the Noteholders the Optional Redemption Premiums, the Noteholders will be impaired and entitled to vote to accept or reject the applicable chapter 11 plan. This brief is submitted pursuant to the Scheduling Order, and should not be construed to set forth BOKF's or the AHC's position on any matter other than the Optional Redemption Premium issue, as ordered by the Court.

The Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"Creditors' Committee") is a party to this brief solely with respect to the Creditors' Committee's Reservation of Rights and Statement set forth below (the "UCC Statement").

**PRELIMINARY STATEMENT[1]**

The Utility filed for chapter 11 protection to address tort claims based on the Utility's alleged culpability in connection with the Wildfires that ripped through Northern California in 2015, 2017, and 2018. At issue here are the Utility's obligations to pay contractually-owed optional early redemption premiums due under the plain terms of three Indentures and their Supplements should the Utility decide to redeem $17.525 billion in Senior Notes it issued over the past ten years, some even *following* the 2017 Fires.

The Utility and its parent company, HoldCo, are solvent debtors for purposes of this brief. As such, the Debtors are presumed able to satisfy their debts, including paying the Noteholders in full, inclusive of the contractual Optional Redemption Premium. Alternatively, the Debtors are free to reinstate the Senior Notes and continue to honor their contractual obligations to pay the Noteholders principal and interest. Either of the two options available to the Debtors would leave intact the Noteholders' legal and contractual rights, which is the touchstone of unimpairment. But if the Debtors seek to alter those rights, they cannot take the position that no impairment results.[2] The plain language of the Indentures and related instruments contractually requires the payment of the Optional Redemption Premium under the circumstances here, and the Debtors' proposal to redeem the Senior Notes *without* the Optional Redemption Premium impairs the Noteholders' claims.

Optional redemption premiums must be paid in chapter 11 unless (1) state law and the language of the applicable documents specifies a different result, or (2) the Bankruptcy Code otherwise disallows such claims. The applicable state law governing the Indentures—New York and California—and fundamental rules of contract interpretation demonstrate that the Optional

---

[1] Capitalized terms in this Preliminary Statement have the meanings given below.

[2] "Congress define[d] impairment in the broadest possible terms," such that "any alteration of rights constitutes impairment." *L&J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc.*, 995 F.2d 940, 942 (9th Cir 1993) (internal citation and quotation omitted); *see also* Consol. Opening Br. of the Official Comm. of Unsecured Creditors & Other Creditor Groups & Representatives Regarding the Appropriate Postpetition Interest Rate Payable on Unsecured Claims in a Solvent Debtor Case [Docket No. 4634] ¶¶ 13–21.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

Redemption Premiums would be due and owing if the Debtors elect to satisfy the Senior Notes prior to the schedules specified in the applicable Note Documents. Under the Note Documents, these payments are due if the Debtors (1) voluntarily (2) redeem the Senior Notes prior to the dates specified therein, including stated maturity.

Both elements are satisfied here. First, there can be no question that, as a matter of law, the Debtors, who voluntarily chose (i) to file for chapter 11 bankruptcy protection despite claiming to be solvent, (ii) not to reinstate the Senior Notes, and (iii) to propose a plan that prepays the Senior Notes, are acting "voluntarily." The Utility is not, by virtue of the bankruptcy filing, required to redeem the Senior Notes. Its proposal to do so is "optional."

Second, the Debtors' proposed action would constitute a "redemption" under the Note Documents. A redemption occurs when a company pays off its debts before the relevant stated maturity dates. This can, as a matter of law, occur before, on, *or after*, a bankruptcy-triggered acceleration. That interpretation is reflected in the Note Documents' Optional Redemption Provisions. Though the specific language of these provisions varies somewhat, they uniformly provide that an Optional Redemption Premium is due if the Utility elects to satisfy the Senior Notes, in full or in part, prior to either the fixed dates specified in the Indentures or the Indentures' defined stated maturity dates.

Nothing in the Bankruptcy Code disallows the Optional Redemption Premiums. Such premiums are not "unmatured interest," disallowed under 11 U.S.C. § 502(b)(2), but are rather charges or liquidated damages. Cases in the Ninth Circuit have repeatedly recognized the validity of optional redemption premiums in chapter 11. Accordingly, because the Optional Redemption Provisions are recognized by state law, and because the Bankruptcy Code does not disallow them, as recognized by the Ninth Circuit, the Noteholders are entitled to Optional Redemption Premiums should the Debtors satisfy the Senior Notes during these bankruptcy cases.

## **BACKGROUND**

### I. **DEBTORS' WILDFIRE LITIGATION EXPOSURE LEADS TO BANKRUPTCY FILING.**

The Utility is one of the largest combined natural gas and electric energy companies in the

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

United States. Based in San Francisco, the Utility is a subsidiary of PG&E Corporation ("HoldCo" and, together with the Utility, the "Debtors"). The Utility's power infrastructure is alleged to have caused or been a contributing factor in the catastrophic wildfires in Northern California in 2015 (the "Butte Fire"), 2017 (the "2017 Fires") and 2018 (the "Camp Fire" and, collectively, the "Wildfires"). The Wildfires and related litigation have left the Debtors with a potential liability in excess of $30 billion. *See Decl. of Jason P. Wells in Supp. of First Day Motions and Related Relief* [Docket No. 28] pp. 11-16. Accordingly, on January 29, 2019 (the "Petition Date"), the Utility and HoldCo filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## II. The Senior Notes

The Utility issued Senior Notes before, during, and after the Wildfires with an aggregate principal balance of $17.525 billion. There are 29 series of Senior Notes outstanding, issued by the Utility under three indentures and their supplements.[3] New York law governs the 2017 and

---

[3] The applicable indentures are: (1) the *Indenture Dated as of April 22, 2005 Supplementing, Amending and Restating the Indenture of Mortgage, dated as of March 11, 2004, as supplemented by a First Supplemental Indenture, dated as of March 23, 2004, and a Second Supplemental Indenture, dated as of April 12, 2004* (as amended or supplemented, the "2005 Indenture"), attached as Exhibit A to the *Declaration of Andrew I. Silfen in Support of the Consolidated Opening Brief of Certain Creditor Groups and Representatives Regarding the Entitlement of Holders of Utility Funded Debt Claims to Optional Early Redemption, Make-Whole, or Similar Amounts in a Solvent Debtor Case* (the "Silfen Decl."); (2) the *Indenture Dated as of November 29, 2017 between Pacific Gas and Electric Company, Issuer and the Bank of New York Mellon Trust Company, N.A., Trustee* (as amended or supplemented, the "2017 Indenture"), Silfen Decl. Exhibit B; and (3) the *Indenture Dated as of August 6, 2018 between Pacific Gas and Electric Company, Issuer and the Bank of New York Mellon Trust Company, N.A., Trustee*, Silfen Decl. Exhibit C (as amended or supplemented, the "2018 Indenture", together with the 2005 Indenture and the 2017 Indenture, the "Indentures").

The Senior Notes can be broken down into three categories:

1. The "2005 Notes," comprised of (i) the 6.05% Senior Notes due 2034 (the "2034 Notes"), issued under the 2005 Indenture's predecessor document, continued by the 2005 Indenture, and are subject to the 2005 Indenture as if issued thereunder; and (ii) twenty-four (24) series issued under Supplements to the 2005 Indenture (collectively, the "Supp. 2005 Indentures" and individually, the "1st Supp. Indenture," "3rd Supp. Indenture"; etc. ). The Supp. Indentures are attached to the Silfen Decl. as Exhibits A-1 – A-29.

2. The "2017 Notes," comprised of the 3.30% Senior Notes due 2027 and the 3.95% Senior Notes due 2047, issued pursuant to the 2017 Indenture.

3. The "2019 Notes," comprised of the 4.25% Senior Notes due 2023 and the 4.65% Senior Notes due 2028, issued pursuant to the supplement to the 2018 Indenture (the "Supp. 2018 Indenture" and, together with the Supp. 2005 Indentures, the "Supp. Indentures"). The Supp. 2018 Indenture is attached to the Silfen Decl. as Exhibit C-1.

Collectively, the Indentures, Supplemental Indentures and any ancillary documents and agreements are referred to as the "Note Documents."

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

2018 Indentures; California law governs the 2005 Indenture.  *See* Indentures[4] § 1.12.  BOKF is the successor trustee under the Note Documents.

### A.    Certain Terms Are Common to All Senior Notes.

Although the interest rates, stated maturity dates, and other terms may vary from series to series, certain defined terms and general provisions apply to, and are common among, all Senior Notes.[5]

Each of the three Indentures defines "maturity" and "stated maturity" virtually identically:

> <u>Maturity</u>:  when used with respect to any Bond, means the date on which the principal of such Bond [or an installment of principal or any sinking fund payment[6]] becomes due and payable as provided in such Bond or in this Indenture, whether at Stated Maturity, by declaration of acceleration, upon call for redemption or otherwise.
>
> <u>Stated Maturity</u>:  when used with respect to any obligation (including any Bond of any series) or any installment of principal thereof or interest thereon, means the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension).

Indentures § 101.

The Indentures' "Events of Default provisions (Indentures § 9.01) and Acceleration provisions (Indentures § 9.02) are also substantively identical.  Where an Event of Default has occurred and is continuing:

> [T]he Trustee or the Holders of not less than thirty-three percent (33%) in aggregate principal amount of Bonds then Outstanding, considered as one class, may declare the principal amount . . . of all Bonds then Outstanding to be due and payable immediately, by a notice in writing to the Company . . . and upon such declaration such principal amount . . . together with premium, if any, and accrued interest, if any, thereon, shall become immediately due and payable; provided, however, that with respect to [a bankruptcy-

---

[4] Citations to a specific section in the Indentures (plural) herein indicates that the section cited appears in all three Indentures.

[5] A schedule categorizing the Senior Notes by the Indenture or Supp. Indenture under which they were issued and their specific interest rates, stated maturity dates, and certain other variable terms is attached hereto as **Exhibit 1** (the "<u>Senior Note Schedule</u>").

Certain of the Senior Notes were issued pursuant to Supp. Indentures, and in those cases, to the extent the terms or provisions in the Supp. Indentures conflict with the terms or provisions in the Indentures, the language in the Supp. Indentures control.  *See, e.g.*, 1st Supp. Indenture § 401.

[6] The bracketed portion appears in the 2005 and 2018 Indentures, but not the 2017 Indenture.

Arent Fox LLP
Attorneys At Law
San Francisco

related Event of Default], the principal amount . . . of all Bonds then Outstanding shall be due and payable immediately without further action by the Trustee or Holders.

*Id.* § 9.02.

**B.     The Optional Redemption Provisions Vary Across Senior Notes.**

The Senior Notes are subject to optional early redemption provisions (the "Optional Redemption Provisions") that obligate the Debtors to pay a premium if they voluntarily redeem a particular series prior to the date specified in the applicable Note Document.  The Optional Redemption Provision applicable to each series of Senior Notes is, generally, located in the Note Document under which that series was first issued.[7]

While each series has its own Optional Redemption Provision, these provisions largely follow the same structure.  The Debtors may, at their option, redeem the Senior Notes at a redemption price that is equal to the greater of either (a) 100% of the principal amount of the Senior Notes in question to be redeemed, plus accrued and unpaid interest; or (b) the sum of the present values of the remaining scheduled payments of principal and interest on the Senior Notes to be redeemed, discounted to the redemption date on a semi-annual basis at the Adjusted Treasury Rate, plus accrued and unpaid interest.  The premium charged to the Debtors for optionally redeeming the Senior Notes early is the amount by which (b) exceeds (a) (the "Optional Redemption Premium").

The Optional Redemption Provisions can be broken down into three categories:  (1) the Fixed Date Optional Redemption Provisions, (2) the Any Time Optional Redemption Provisions, and (3) the 2034 Notes Optional Redemption Provision (described below).

**1.     The Fixed Date Optional Redemption Provisions**

Fixed Date Notes—the largest category of Senior Notes—contain provisions setting out a fixed date in the future (the "Fixed Date Variable"), generally three or six months prior to the

---

[7] The Optional Redemption Provisions for the 2017 Senior Notes, first issued directly under the 2017 Indenture, however, are not contained in the 2017 Indenture itself.  Rather, they are contained in the Reverse of Senior Note included in the form of senior notes that are attached to the 2017 Indenture as Exhibit 1 to the Rule 144A/Regulation S Appendix (the "Model 2017 Senior Notes").  The terms of the Model 2017 Senior Notes are "incorporated and expressly made part of [the 2017 Indenture]" and likewise include language incorporating the corresponding Reverse of Senior Note's contract terms.  *See* 2017 Indenture § 3.02 & Ex. 1–15.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

series' "Stated Maturity" date, where an Optional Redemption Premium is incurred if the applicable Senior Notes are optionally redeemed by the Utility. These Optional Redemption Provisions apply to the Senior Notes first issued pursuant to the 10th Supp. Indenture (dated September 15, 2010) through the most recent 2018 Senior Notes first issued in the Supp. 2018 Indenture (dated August 6, 2018) (collectively, the "Fixed Date Notes"). Fixed Date Notes account for approximately $11.825 billion of the $17.525 billion outstanding principal balance, and include all Short-Term Notes (defined below). Since Fixed Date Notes were issued under all three Indentures, *see* Senior Notes Schedule, New York law governs certain of the Fixed Date Notes and California law governs others.[8]

Subject to certain immaterial differences,[9] the Fixed Date Optional Redemption Provisions for these Senior Notes provide as follows:

(a) Subject to the terms and conditions of the [applicable Indenture], **at any time prior to [the Fixed Date Variable], the [applicable Senior Notes] are redeemable at the option of the Company** in whole or in part at any time at a redemption price equal to the greater of:

(i) 100% of the principal amount of the [applicable Senior Notes] to be redeemed; or

(ii) as determined by the Quotation Agent, the sum of the present values of the Remaining Scheduled Payments of principal and interest on the [applicable Senior Notes] to be redeemed (not including any portion of payments of interest accrued as of the Redemption Date)[10] discounted to the Redemption Date on a semi-annual basis at the Adjusted Treasury Rate, plus [the Basis Points Variable][11];

plus, in either event of the above cases, accrued and unpaid interest thereon to but not including the Redemption Date.

(b) subject to the terms and conditions of the Indenture, at any time on or after [the Fixed Date Variable], the [applicable Senior Notes] are redeemable at the option of the Company in whole or in part at

---

[8] New York law applies to those Fixed Date Notes issued under the 2017 and 2018 Indentures; California Law applies to those issued under the 2005 Indenture.

[9] For example, the Optional Redemption Provisions applicable to the 2018 Senior Notes replace the Fixed Date Variable with the defined terms "[2023 or 2028] Par Call Date" which are defined as July 1, 2023 and May 1, 2028.

[10] The Fixed Date Optional Redemption Provisions applicable to Senior Notes first issued under the 23rd Supp. 2005 Indenture (dated August 18, 2014) and later include the following additional language: ". . . as of the Redemption Date), **calculated as if the Maturity Date of [the notes in question] was [the Fixed Date Variable] (the date that is [three/six] months prior to the Maturity Date),** discounted to the . . . ." *See, e.g.*, 23rd Supp. Indenture § 301 (emphasis added).

[11] The "Basis Point Variable" supplies a basis point between 15 and 40 to add to the present value of the remaining scheduled payments to calculate the Optional Redemption Premium.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

1           100% of the principal amount of the [applicable Senior Notes] to
2           be redeemed plus accrued and unpaid interest thereon to but not
            including the Redemption Date.

3   *See*, *e.g.*, 10th Supp. Indenture § 301 (emphasis added).

4         In sum, the applicable Note Documents provide unambiguously that if the Debtors

5   voluntarily redeem the Fixed Date Notes before the Fixed Date Variable relevant to the applicable

6   series of Senior Notes, they will owe the Noteholders the Optional Redemption Premium.

7                 **2.**     **The Any Time Optional Redemption Provisions**

8         The Any Time Optional Redemption Provisions provide that the applicable Senior Notes

9   are redeemable "at any time." The Any Time Optional Redemption Provisions apply to the Senior

10  Notes first issued pursuant to the 1st Supp. Indenture (dated March 13, 2007) through the 8th

11  Supp. Indenture[12] (dated November 18, 2009) (collectively, the "Any Time Notes"). The Any

12  Time Notes account for $2.7 billion of the $17.525 billion outstanding principal balance. All Any

13  Time Notes were issued under 2005 Supp. Indentures, *see* Senior Notes Schedule, thus California

14  law governs.

15        The Any Time Notes provide as follows:

16          Subject to the terms and conditions of the [2005 Indenture], the
17          [notes in question] **are redeemable at the option of the**
            **Company in whole or in part** *at any time* at a redemption price
18          equal to the greater of:

19          (a) 100% of the principal amount of the [notes in question] to be
                redeemed; or
20
21          (b) as determined by the Quotation Agent, the sum of the present
                values of the Remaining Scheduled Payments of principal and
22              interest on the [applicable Senior Notes] to be redeemed (not
                including any portion of payments of interest accrued as of the
23              Redemption Date) discounted to the Redemption Date on a
                semi-annual basis at the Adjusted Treasury Rate, plus [the
24              Basis Points Variable];

25          plus, in either event of the above cases, accrued and unpaid interest
            thereon to but not including the Redemption Date (the
26          "Redemption Price"). The Redemption Price shall be calculated

27  _____

28  [12] The 9th Supp. Indenture does not include an Optional Redemption Provision because no Senior Notes were first issued under it. Rather, it merely reopened an offering of earlier issued Senior Notes, the 5.80% Senior Notes due March 1, 2037, first issued under the 1st Supp. Indenture. *See* 9th Supp. Indenture at art. 2.

1    assuming a 360-day year consisting of twelve 30-day months.

2    *See*, *e.g.*, 1st Supp. Indenture § 301 (emphasis added).

3              3.    **The 2034 Notes Optional Redemption Provision**

4        The 2034 Notes Optional Redemption Provision—which applies only to one series of

5    Notes—replaces "are redeemable . . . at any time" with "are redeemable . . . at any time after the

6    Initial Issuance Date and prior to Maturity[.]"   2005 Indenture § 4.03(d).   This category of

7    Optional Redemption Provisions only applies to the 2034 Notes, accounting for approximately

8    $3.0 billion out of the $17.525 billion outstanding principal balance.   Because the 2034 Notes

9    were issued under the 2005 Indenture, *see* Senior Notes Schedule, California law applies.

10   **III.    Treatment of the Senior Notes in the Proposed Plans**

11       On September 23, 2019, the Debtors filed their *First Amended Joint Chapter 11 Plan of*

12   *Reorganization* [Docket No. 3966] (as amended on November 4, 2019 [Docket No. 4563], the

13   "Debtor Plan").   Under the Debtor Plan, the Senior Notes claims are treated as "unimpaired."   The

14   Debtors contemplate paying the Noteholders cash in "full and final satisfaction, settlement,

15   release and discharge" of the Senior Notes; but the Debtor Plan specifically excludes from the

16   allowed amount of the Noteholders claims "any Claim for make-whole or similar amounts."

17   Debtor Plan § 4.16(a).   Should the Court find that the Noteholders are entitled to the Optional

18   Redemption Premiums, however, the Debtor Plan provides that it "shall be modified in a manner

19   to render the [Noteholders'] Claim Unimpaired."   *Id*.   The Debtor Plan also proposes to cap the

20   claims of individual wildfire victims while permitting HoldCo's common interest claimants to

21   retain their interests, subject to dilution, and reinstating HoldCo's equity interests in the Utility.

22   Debtor Plan §§ 1.124, 4.12, 4.13, 4.20, 4.26–4.27, 4.37.   The Debtor Plan therefore seeks a

23   windfall for equity holders by paying the Senior Notes early—presumably by refinancing them at

24   lower interest rates—while evading the bargained-for Optional Redemption Premiums, estimated

25   at $5.8 billion if the Debtors redeem the Senior Notes on June 1, 2020.

26       On October 9, 2019, the Court entered its *Order Granting Joint Motion of the Official*

27   *Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders to*

28   *Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the Bankruptcy Code*

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

[Docket No. 3940] modifying the Debtors' exclusivity to file, solicit and confirm plans in these chapter 11 cases. Shortly thereafter, the Official Committee of Tort Claimants and Ad Hoc Noteholder Group filed an alternative *Joint Chapter 11 Plan of Reorganization of Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders* [Docket No. 4257] (the "Alternative Plan" and, together with the Debtor Plan, the "Proposed Plans"). The Alternative Plan also treats the Noteholders' claims as unimpaired; but unlike the Debtor Plan, it contemplates (1) paying in full certain short-term Senior Notes with maturity dates earlier than December 31, 2022 (the "Short Term Notes"), including Optional Redemption Premiums, and (2) reinstating the Senior Notes with maturity dates after December 31, 2022, leaving all of the Noteholders' legal, equitable and contractual rights unaltered.

## ARGUMENT

The Noteholders are entitled to Optional Redemption Premiums under the plain terms of the Note Documents in the event that the Debtors elect to redeem the Senior Notes or otherwise attempt to cancel them prior to the dates specified in the applicable Note Documents. Optional early redemption premiums, sometimes called "make-whole" premiums, safeguard the bargain struck by lenders and debtors: when debtors are permitted to repay a loan early, make-whole premiums "protect lenders' rights to the yield that was expected at the time that they made their loans." *In re Chemtura Corp.*, 439 B.R. 561, 596 (Bankr. S.D.N.Y. 2010); *see In re Energy Future Holdings Corp.* ("*EFH*"), 842 F.3d 247, 261 (3d Cir. 2016). Make-whole early redemption premiums are rooted in the "rule of perfect tender in time," which "prohibits early payment of a loan under the rationale that the 'lender or mortgage investor has the absolute right to rely upon the income stream contracted for over the life of the loan.'" *U.S. Bank Nat. Ass'n v. S. Side House, LLC*, No. 11-CV-4135 ARR, 2012 WL 273119 at *4 (E.D.N.Y. Jan. 30, 2012) (quoting *Nw. Mut. Life Ins. Co. v. Uniondale Realty Assocs.*, 816 N.Y.S.2d 831, 835 (N. Y. Sup. Ct. 2006)). Notwithstanding this "absolute right," contracting parties may agree to permit early repayment of the loan. In exchange, the contract may provide for a "make-whole premium," which "serve[s] to memorialize the rule of perfect tender by essentially agreeing ahead of time upon a cost of prepayment." *U.S. Bank*, 2012 WL 273119 at *4.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Make-whole early redemption premiums also alleviate the noteholders' interest-rate risk. If not for make-wholes, noteholders would bear the risk that the issuers would refinance the notes when interest rates are lower, forcing the noteholders to acquire new notes at now lower rates. *See, e.g.*, *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 641 (Bankr. S.D. Miss. 2010) (quoting Am. Bar Foundation Corp. Debt. Fin. Project, *Commentaries on Model Debenture Indenture Provisions* 475 (1971)). Make-whole premiums therefore ensure that both sides are held to their bargain.

Here, the Noteholders are entitled to allowed claims for the Optional Redemption Premiums under the Proposed Plans. The Debtors are obligated to pay the Optional Redemption Premiums so long as (1) the Noteholders are entitled to the premiums under applicable non-bankruptcy (state) law, and (2) the Bankruptcy Code does not expressly disallow such claims. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 452 (2007) (claims enforceable under non-bankruptcy law are allowable in bankruptcy unless the Bankruptcy Code expressly disallows them); *see also, e.g.*, *In re Imperial Coronado Partners, Ltd.* ("*Imperial Coronado*"), 96 B.R. 997, 999–1000 (B.A.P. 9th Cir. 1989) (claims for prepayment premium are enforceable in bankruptcy); *In re Chemtura Corp.*, 439 B.R. at 600 (analyzing allowability of make-whole provision under state and bankruptcy law).

The conditions for the Noteholders' entitlement to Optional Redemption Premiums are satisfied here. **First**, applicable state law requires payment of the optional redemption premiums. Under the plain meaning of the Note Documents, a premium is owed when the Debtors engage in an "optional" (*i.e.*, voluntary) "redemption." The Debtor Plan's treatment of all of the Senior Notes and the Alternative Plan's treatment of the Short Term Notes are both optional redemptions. **Second**, no provision of the Bankruptcy Code disallows optional redemption premiums. Therefore, and especially in light of the Debtors' assumed solvency, *see EFH*, 842 F.3d at 253 n.1, no basis exists for denying Optional Redemption Premiums. The Noteholders are therefore entitled to an order declaring that, to the extent the Senior Notes are satisfied prior to the dates specified in the applicable Note Documents, absent the payment of these premiums, their claims are impaired, and they are entitled to vote on the Proposed Plans.

Case: 19-30088    Doc# 4902    Filed: 11/27/19    Entered: 11/27/19 16:50:52    Page 18 of 41

**I. The Noteholders Are Entitled to Optional Redemption Premiums, Under Applicable Non-Bankruptcy Law, If the Debtors Elect to Discharge the Senior Notes Pursuant to the Debtor Plan.**

As a threshold matter, courts in both New York[13] and California[14] enforce optional redemption provisions, like those at issue here. Courts enforce optional redemption provisions according to their plain terms, "giving effect to the intent of the parties as revealed by the language in their agreement[s]." *EFH*, 842 F.3d at 256 (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113 (2d Cir. 2014)) (interpreting New York law); *see also, e.g.*, *Wells Fargo Bank, N.A. v. Cabazon Band of Mission Indians* ("*Cabazon*")*,* No. E060447, 2016 WL 3438920, at *7 (Cal. Ct. App. June 15, 2016) (same under California law). The Optional Redemption Provisions allow the Debtors, at their option, to redeem the Senior Notes at a specified redemption price. *Supra* p. 6. The Optional Redemption Premiums are therefore triggered if there is an (1) "optional," (2) "redemption." *See, e.g.*, *EFH*, 842 F.3d 254–55.

Any attempt by the Debtors to cancel or refinance the Senior Notes prior to the dates upon which they may be repaid or the stated maturity under the Note Documents, constitutes an "optional" "redemption" entitling the Noteholders to Optional Redemption Premiums. *See id.*; *Imperial Coronado*, 96 B.R. 999–1000.

**A. The Debtors' Choice to Satisfy the Senior Notes Pursuant to the Debtor Plan is "Optional."**

The Debtors' decision to satisfy the Senior Notes prior to the dates specified in the Note Documents is "optional," even when that choice is made after their bankruptcy filing. *See Imperial Coronado*, 96 B.R. 999–1000; *EFH*, 842 F.3d at 255. The Debtors have the wherewithal to pay the Optional Redemption Premiums that are due in the event that the Noteholders are paid early. Alternatively, the Debtors can choose to reinstate the Senior Notes and leave their

---

[13] Pursuant to New York law, prepayment or optional redemption provisions are typically treated as liquidated damages clauses, and are presumptively enforceable. *See, e.g.*, *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 130 (Bankr. E.D.N.Y. 2002) ("finding that the Yield Maintenance Premium provision is an enforceable liquidated damages clause under New York law."); *see also In re S. Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011); *In re Chemtura Corp.*, 439 B.R. at 601-02.

[14] Pursuant to California law, "contractual charges for prepayment of the loan principal are generally considered valid provisions for alternative performance, rather than penalties or liquidated damages for breach." *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 978 (1998).

Arent Fox LLP
Attorneys At Law
San Francisco

Case: 19-30088    Doc# 4902    Filed: 11/27/19    Entered: 11/27/19 16:50:52    Page 19 of 41

obligations thereunder intact after the Debtor Plan's proposed effective date. To the extent that the Debtors chose not to reinstate, the redemption of the Senior Notes on the effective date is clearly "optional."

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") held in *Imperial Coronado* that a chapter 11 debtor's satisfaction of a note that allowed for prepayment at "any time" only if the debtor paid a make-whole premium, triggered the note's make-whole provision. 96 B.R. at 999–1000. There, the BAP considered the allowance of a claim for a make-whole premium that arose from a prepayment penalty provision in a note secured by the debtor's apartment building. *Id.* at 998. Before bankruptcy, the debtor defaulted on the note, the note accelerated, and the lender initiated foreclosure proceedings. *Id.* A month before the scheduled foreclosure sale, the debtor filed for chapter 11 protection and subsequently sold the building under section 363 of the Bankruptcy Code, using the proceeds to satisfy the defaulted note. *Id.*

The BAP determined that, notwithstanding the note's acceleration or the pendency of the bankruptcy case, the satisfaction of the note with the proceeds of the sale prior to the note's stated maturity date constituted a prepayment that triggered the make-whole provision. *Id.* at 999-1000. The debtor's payment was optional because the debtor "had the right to deaccelerate the due date of the loan as part of a plan of reorganization . . . [under] 11 U.S.C. § 1124(2)." 96 B.R. at 1000. That the debtor was insolvent, and could not afford to pay arrearages and reinstate the loan was immaterial to the BAP's reasoning: "[T]he question is not whether [the debtor] could, as a practical matter, afford to exercise its right, but whether it had the right to reinstate the loan." *Id.* Therefore the debtor's "decision . . . to pay off the loan" rather than to "reinstate the loan" was "voluntary, and the prepayment penalty [was] enforceable." *Id.*; *see also In re 433 S. Beverly Drive*, 117 B.R. 563, 568–69 (Bankr. C.D. Cal. 1990) (allowing a prepayment premium despite the borrower's bankruptcy filing).[15]

Similarly, the Third Circuit in *EFH* found the solvent debtor's refinancing of certain notes through debtor-in-possession financing to be "optional." 842 F.3d 255–56. The court rejected

---

[15] Abrogated on other grounds by *Gen. Elec. Capital Corp. v. Future Media Prods., Inc.*, 547 F.3d 956 (9th Cir. 2008) (abrogating *433 S. Beverly Drive*'s decision with respect to postpetition interest).

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case: 19-30088   Doc# 4902   Filed: 11/27/19   Entered: 11/27/19 16:50:52   Page 20 of 41

the debtor's argument that the notes' acceleration provision, which rendered the notes "due and payable immediately without further action or notice," negated the voluntariness of the proposed redemption; indeed, the debtor "filed for Chapter 11 protection voluntarily." *Id.* at 255. Additionally, while in bankruptcy the debtor was not forced to repay the notes immediately: it "had the option . . . to reinstate the accelerated Notes' original maturity date under Bankruptcy Code § 1124(2) . . . [but] chose not to do so." *Id.* Because the chapter 11 filing was voluntary, and because the debtor had the choice of different treatment of the notes once in bankruptcy, its actions were "optional" as a matter of law and therefore triggered the redemption premium payment under the notes' terms. *See id.*

That the debtor in *EFH* was solvent further underscored the voluntary nature of the redemption. *See id.* "[A] chapter 11 debtor that has the capacity to refinance secured debt on better terms . . . outside of bankruptcy . . . cannot reasonably assert that its repayment of debt is not 'voluntary.'" *Id.* (quoting Scott K. Charles & Emil A. Kleinhaus, *Prepayment Clauses in Bankruptcy*, 15 AM. BANKR. INST. L. REV. 537, 552 (2007)).[16] Moreover, the redemption of the notes was done over the noteholders' objection; there, the noteholders were contractually permitted to deaccelerate the notes, but they were blocked by the automatic stay from doing so. *Id.*[17]

Here, as in *Imperial Coronado* and *EFH*, the Debtors voluntarily filed for chapter 11 protection. The Utility is not, by virtue of the bankruptcy filing, or sections 9.01(e) and 9.02 of the Indentures, *required* to redeem the Senior Notes. To the contrary, the Debtors could very well seek to reinstate the Senior Notes' original maturity dates under 11 U.S.C. § 1124(2) to avoid

---

[16] The equities counsel even more strongly in favor of honoring a solvent debtor's contractual obligations such as the payment of optional redemption premiums in bankruptcy than they do when the debtor is insolvent. *See, e.g.*, *In re Dow Corning Corp.*, 456 F.3d 668, 678–79 (6th Cir. 2006) ("[W]hen a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights."); *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986) (where debtor is solvent, "the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights"); *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 32–33 (D. Del. 2011) (where debtor is solvent, "the equities strongly favor holding the debtor to his contractual obligations so long as those obligations are legally enforceable under applicable non-bankruptcy law").

[17] Because the Third Circuit found that the applicable noteholders were entitled to the make-whole premiums, it did not reach the alternative argument that the noteholders would have an allowed claim for damages arising from the denial of their bargained-for contractual rights. *EFH*, 842 F.3d at 261 n.4. BOKF and the AHC reserve all rights in connection with such argument.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

triggering the Optional Redemption Provisions. *See Imperial Coronado*, 96 B.R. at 1000; *EFH*, 842 F.3d at 255–56. But they are choosing not to do so.

The Debtors here are presumed solvent. *See* Scheduling Order ¶ 9. And, as in *EFH*, the Debtors are strategically utilizing the chapter 11 process to refinance voluntarily the terms of the Senior Notes, $4.4 billion of which were issued in the years after the Butte Fire (including $2.8 billion issued after the 2017 Fires) and as recently as August 2018. *See EFH*, 842 F.3d at 253 n.1, 255. The Debtor Plan underscores this intent. In it, the Debtors concede their ability to satisfy the Senior Notes in full, including the Optional Redemption Premiums, but only *if the Court so requires*. *See* Debtor Plan § 4.16(a) (the Plan "shall be modified in a manner to render the [Noteholders'] Claim Unimpaired")). Under these circumstances, the Debtors must be held to honor the contractual bargain struck as recently as *last year* to pay the Optional Redemption Premiums where their decision to redeem the Senior Notes is voluntary. *Cf. In re Dow Corning Corp.*, 244 B.R. 678, 695 (Bankr. E.D. Mich. 1999) ("A debtor with the financial wherewithal to honor its contractual commitments should be required to do so.").

**B.    The Debtors' Choice to Satisfy the Senior Notes Under the Debtor Plan Constitutes a "Redemption" Entitling Noteholders to the Optional Redemption Premium.**

The Debtors' decision to satisfy the Senior Notes prior to the Senior Notes' stated maturity, in addition to being "optional," also constitutes a "redemption." *See, e.g.*, *EFH*, 842 F.3d at 254–55. Any satisfaction of the Senior Notes that is consistent with the Optional Redemption Provisions constitutes a "redemption" under the Note Documents' plain terms. And the fact of the Debtors' bankruptcy filing does not destroy the Noteholders' rights under the Optional Redemption Provisions: "redemption" can, as a matter of law, occur before or after a bankruptcy-triggered acceleration.

**1.    The Proposed Plans' Treatment of the Senior Notes Constitutes a "Redemption" Under The Note Documents' Plain Terms.**

The Debtors' satisfaction of the Senior Notes prior to stated maturity under either of the Proposed Plans is a "redemption" under the Note Documents' plain terms. Under both New York and California law, which govern the Note Documents, the interpretation of indentures is a matter

Case: 19-30088    Doc# 4902    Filed: 11/27/19    Entered: 11/27/19 16:50:52    Page 22 of 41

of basic contract law. *See*, *e.g.*, *EFH*, 842 F.3d at 256 (applying New York contract interpretation principles to determine the validity of an optional redemption premium provision); *Cabazon,* 2016 WL 3438920, at *6–7 (same, applying California law). The primary objective in contract interpretation is to "give effect to the intent of the parties as revealed by the language in their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc*., 232 F.3d 153, 157 (2d Cir. 2000); *see also EFH*, 842 F.3d at 261 (same) (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co*., 773 F.3d 110, 113 (2d Cir. 2014)); *Perez-Encinas v. AmerUs Life Ins. Co*., 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (same); Cal. Civ. Code § 1636 (same). "[T]he words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Olin Corp. v. Am. Home Assurance Co*., 704 F.3d 89, 99 (2d Cir. 2012) (internal quotations omitted; second alteration in original); *see also* Cal. Civ. Code §§ 1639, 1641.

The Note Documents do not define the term "redemption," so this Court must construe this term in accordance with its plain meaning. *See, e.g.*, *Quadrant Structured v. Vertin*, 16 N.E. 3d 1165, 1171–72 (N.Y. 2014); Cal. Civ. Code § 1644. "In ordinary corporate parlance, a 'redemption' refers to a corporation's contractual right to compel holders of a certain class of securities . . . to return or exchange them for cash or property on a date specified in the investment contract or otherwise determined by the corporation." *Heine v. Signal Cos*., No. 74 Civ. 3036, 1977 WL 930, at *14 (S.D.N.Y. Mar. 4, 1977). Thus, a redemption occurs where "a corporation redeems certain outstanding bonds or notes for the purpose of cancelling them" and "satisfying [its] indebtedness." *See Felin v. Kyle*, 102 F.2d 349, 350 (3d Cir. 1939); *see also Chesapeake Energy*, 957 F. Supp. 2d at 335 n.15 (defining "redemption" as "[t]he reacquisition of a security by the issuer").

Applying the plain meaning of "redemption" and the basic rules of contract construction, the Optional Redemption Provisions provide that all of the Senior Notes—the Fixed Date Notes, Any Time Notes, and the 2034 Notes—may be redeemed prior to the dates specified in the applicable Note Documents only if the Debtors pay the Optional Redemption Premiums. This point is crystal clear with respect to 28 of the 29 series of Senior Notes (the Fixed Date Notes and

Case: 19-30088    Doc# 4902    Filed: 11/27/19    Entered: 11/27/19 16:50:52    Page 23
of 41

the Any Time Notes), but it applies equally with respect to the 2034 Notes.

a. ***Fixed Date Notes***

The Fixed Date Notes contain virtually indistinguishable Optional Redemption Provisions to those the Third Circuit validated in *EFH*. 842 F.3d at 254 ("At any time prior to December 1, 2015, the Issuer may redeem all or a part of the Notes at a redemption price . . . ."). As in *EFH*, the Fixed Date Optional Redemption Provisions provide that "***at any time prior to the [Fixed Date Variable]***, the [Senior Notes] are redeemable at the option of the Company in whole or in part at a redemption price equal to" the Optional Redemption Premium formula. *See, e.g.*, 18th Supp. Indenture § 401(a) (emphasis added).[18]

In sum, any attempt by the Debtors to satisfy the Fixed Date Notes prior to the applicable Fixed Date Variable constitutes a "redemption" that, under the express terms of the Note Documents, triggers the Optional Redemption Premium. *See id.*; *see also EFH*, 842 F.3d at 254–56.[19]

b. ***Any Time Notes***

The Noteholders' entitlement to the Optional Redemption Premiums is just as clear with respect to the Any Time Notes, which require premium payments if redeemed at any time—even one day—prior to stated maturity. The Debtors' satisfaction of the Any Time Notes prior to the stated specified maturity dates also constitutes a redemption under the applicable Note Documents' plain terms.

Any Time Notes "are redeemable at the option of the Company in whole or in part *at any time*," subject to the Optional Redemption Premium. *See, e.g.*, 1st Supp. Indenture § 301 (emphasis added).[20] As noted, the 2005 Indenture supplies redemption procedures to be followed

[18] The 18th Supp. Indenture includes a Fixed Date Variable of May 15, 2022. The Note Documents applicable to the remaining Fixed Date Notes contain substantively identical terms, with different Fixed Date and Basis Point Variables. *See, e.g.*, 19th Supp. Indenture §§ 401-02; *see also* Senior Notes Schedule (identifying each Fixed Date Notes' variable terms).

[19] The Fixed Date Notes can also be redeemed *after* the Fixed Date Variable, *see, e.g.*, 18th Supp. Indenture § 401(b), but before the date of Stated Maturity (which generally occurs three or six months after the Fixed Date Variable), *see, e.g.*, Indentures § 6.01 & Art. VI (providing procedures to be followed when the Company redeems bonds prior to their "Stated Maturity"). In those instances, the Debtors owe no Optional Redemption Premiums. *See e.g.*, 18th Supp. Indenture § 401(b).

[20] The language in the 1st through 8th Supp. Indentures—under which the Any Time Notes were issued—are

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

if the Debtors redeem the Senior Notes prior to the date of "Stated Maturity." 2005 Indenture §

6.01 & Art. VI. Accordingly, any attempt by the Debtors to satisfy the Any Time Notes prior to

their date of "Stated Maturity" constitutes a "redemption" under the applicable Note Documents.

### c. *2034 Notes*

Finally, satisfaction of the 2034 Notes prior to the date of their stated maturity also

constitutes a "redemption" pursuant to the rules of contract construction of governing California

law.[21] The 2034 Notes Optional Redemption Provision deviates from the Any Time Optional

Redemption Provision in only one material way: it replaces "**are redeemable . . . at any time**"

with "**are redeemable . . . at any time after the Initial Issuance Date and prior to Maturity**[.]"

2005 Indenture § 4.03(d). This provision, if read literally, would lead to an absurd result and

render the Optional Redemption Provisions a nullity; therefore, "Maturity" must be reconciled

with the intent of the contract as a whole to mean "Stated Maturity."

An indenture's "literal language . . . does not control if it leads to absurdity (Civ. Code,

§ 1638) or if it is wholly inconsistent with the main intention of the parties (Civ. Code, § 1653)."

*SDC/Pullman Partners v. Tolo Inc*., 70 Cal. Rptr. 2d 62, 67 (Cal. Ct. App. 1997) (citations in

original); *see also*, *e.g.*, *Roden v. AmerisourceBergen Corp.*, 113 Cal. Rptr. 3d 20, 46 (Cal. Ct.

App. 2010) (finding an absurd outcome where the plaintiff's interpretation of a provision in the

contract would result in an $8.25 billion windfall contrary to the purpose of the contract).

Interpretations that render contract provisions superfluous should likewise be avoided.

*See* Cal. Civ. Code § 1641; *see also, e.g.*, *Crosby v. HLC Properties, Ltd*., 167 Cal. Rptr. 3d 354,

359–60 (Cal. App. 2014). Further, "contract terms cannot be read in isolation" and "must be read

as a consistent whole, so that some effect will be given to all clauses consistent with the general

intent and purpose of the instrument[.]" *SDC/Pullman*, 70 Cal. Rptr. 2d at 67 (*citing* Cal. Civ.

Code §§ 1641, 1652).

Requiring redemption to occur "prior to Maturity," as opposed to "prior to Stated

---

substantively identical. California law applies to the Any Time Notes, which were all issued under the 2005 Indenture. *See* 2005 Indenture § 1.12; *see also* Senior Notes Schedule (identifying the Any Time Notes' Supp. 2005 Indentures and Optional Redemption Provisions).

[21] The 2005 Indenture (and therefore California law) governs the 2034 Notes. *See* Senior Note Schedule.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Maturity," renders the 2034 Notes Optional Redemption Provision superfluous. "Maturity" is defined in the Indentures as "the date on which the principal of such Bond . . . becomes due and payable . . . whether at Stated Maturity, by declaration of acceleration, upon call for redemption or otherwise." Indentures § 1.01. Upon a "call for redemption," the Utility is to give at least forty-five (45) days' notice of the "Redemption Date," *see* Indentures § 6.02, *i.e.*, the date the principal becomes due and payable. *See* Indentures §§ 1.01, 6.05. Therefore, upon a "call for redemption," the "Redemption Date" becomes the Maturity Date. As a consequence, redemptions *can never occur "prior to Maturity*," but only *at* or *after* Maturity, by definition. The provision of the 2034 Notes Optional Redemption Provision seeming to require redemption "prior to Maturity", therefore, renders the entire Optional Redemption Provision meaningless. That absurd result runs contrary to the parties' intent to condition early redemption on the payment of the Optional Redemption Premium. That result also leads to an unjust windfall to the Debtors of nearly $1.6 billion in Optional Redemption Premium owed on the 2034 Senior Notes.

By contrast, reading the 2034 Optional Redemption Provision to require redemption prior to "Stated Maturity"—a date fixed by that term's definition in the Indenture— gives effect to the provision consistent with the 2005 Indenture as a whole. The 2005 Indenture contemplates that redemption will occur prior to *Stated Maturity* (not *Maturity*) by providing procedures for the Debtors to redeem the 2034 Notes before their "Stated Maturity." *See* 2005 Indenture § 6.01. Likewise, section 9.05 of the 2005 Indenture contemplates that the Trustee will file bankruptcy proofs of claim that include premiums. Were the 2034 Notes' Optional Redemption Provision to preclude Optional Redemption Premiums in the event of a bankruptcy, this right to include premiums in proofs of claim would also be superfluous. The proposed reading of "Maturity" to mean "Stated Maturity" in the 2005 Indenture is likewise consistent with the bargain embodied in optional redemption provisions generally and the role make-whole premiums play in leveling the interest-rate risk between issuers and noteholders. *See supra* pp. 10–11. The Debtors' ability to trigger "Maturity" by declaring bankruptcy and evade the bargain they struck with the Any Time Noteholders—who agreed to lend the Debtors $2.7 billion in principal capital for approximately 30 years at fixed rates of interest—would entirely undermine the purpose of the

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Optional Redemption Provisions and the Note Documents as a whole.

In sum, the only permissible interpretation, under these circumstances, is to read the 2034 Notes Optional Redemption Provision in harmony with the definition of Maturity and other provisions of the 2005 Indenture contemplating redemption after Maturity but before Stated Maturity. *See* 2005 Indenture §§ 1.01, 4.03(d), 6.01 & Art. VI.

\* \* \*

In sum, an attempt by the solvent Debtors to satisfy the Senior Notes prior to the applicable fixed dates or the dates of stated maturity constitutes an "optional" "redemption," entitling the Noteholders to Optional Redemption Premiums.

### 2. Redemption Can Occur After a Bankruptcy-Induced Acceleration as a Matter of Law.

The acceleration of debt under a separate and independent contractual provision in the Note Documents does not alter the conclusion that the Optional Redemption Provisions are triggered in this case. This is because a redemption can occur, according to "New York and federal courts," "both pre- and post-maturity" of the debt. *EFH*, 842 F.3d at 255*; see also Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 388 (3d Cir. 2012) (noting that regulations allow bondholders to "present . . . long-matured savings bond[s] for redemption"); *Fed. Nat. Mortg. Ass'n v. Miller*, 473 N.Y.S.2d 743, 744 (N.Y. Sup. Ct. 1984)) (declaring that "debtor may redeem" mortgage by "pay[ing] . . . accelerated debt"); *Carman v. Alvord*, 644 P.2d 192, 196 (Cal. 1982) (because indebtedness includes "obligations which are yet to become due as [well as] those which are already matured," the timing of a repayment does not affect its characterization as a "redemption").

A redemption can occur before or after acceleration of the debt caused by a bankruptcy filing. The Ninth Circuit BAP in *Imperial Coronado* expressly recognized a secured creditor's contractual right to a prepayment premium following acceleration of the debt and the debtor's bankruptcy filing. 96 B.R. 999–1000. And the Third Circuit in *EFH* held enforceable an optional redemption provision triggered by the debtors' satisfaction of the debt, despite the fact that the notes in question accelerated when the debtors filed for bankruptcy. 842 F.3d at 252, 254–56.

This result makes sense: "if automatic acceleration of a debt defeats" an optional redemption clause, "such a clause could never be enforced in a bankruptcy case," and a debtor could "always avoid the effect of a prepayment premium clause by filing a bankruptcy case." *In re Skyler Ridge*, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987).

In *EFH*, the court rejected the debtor's argument that the applicable indentures' acceleration provision—which stated that "all outstanding Notes shall be due and payable immediately" upon a bankruptcy filing—foreclosed the noteholders' entitlement to optional redemption premiums owed if the debtors satisfied the notes "[a]t any time prior to December 15, 2015." *Id.* at 254 (quoting Indentures §§ 3.07, 6.02). The debtor there argued that the court should limit "redemption" to mean "only repayments of debt that pre-date the debt's maturity" upon bankruptcy. *Id.* at 254–55. To the contrary, the Third Circuit stated, "redemption . . . include[s] both pre- and post-maturity repayments of a debt." *Id.* at 255 (citing, *e.g.*, *Chesapeake Energy Corp. v. Bank of N.Y. Mellon*, 773 F.3d 110, 116 (2d Cir. 2014) ("redeem" is to "repay[] . . . a debt security . . . at or before maturity" (alterations in original))).

The presence of a discrete and separate acceleration provision in an indenture does not negate an otherwise triggered optional redemption provision; "the two sections simply address different things." *EFH*, 842 F.3d at 255. While acceleration provisions do advance maturity, they do not provide a basis for reading other provisions out of an agreement. *See NML Capital* v. *Republic of Arg.*, 952 N.E.2d 482, 487, 492 (N.Y. 2011) (rejecting the debtor's argument that acceleration terminates the obligation to make interest payments because there is no rule that "terms of a contract not necessarily impacted by acceleration . . . automatically cease to be enforceable after acceleration."). In *NML Capital*, the New York Court of Appeals held that had the debtor intended that other provisions, such as the interest payment provision, become ineffective upon acceleration or maturity, "it could easily have clarified that intent in any number of ways." *Id.* at 490.

Applying *NML Capital*, the Third Circuit in *EFH* likewise refused to "choose between" the redemption provision and the acceleration provision and, instead, read them as operating together, based on the same logic that acceleration did not void the debtor's interest payment. The

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Third Circuit explained that any contrary position would render other provisions superfluous. *See* 842 F.3d at 257; *see also In re Chemtura Corp.*, 439 B.R. at 601, 603 (bankruptcy acceleration did not negate make-whole provision tied to a fixed maturity date).

*EFH* speaks directly to the current case. The Indentures governing 24 of the 29 series of the Senior Notes (the Fixed Date Notes), worth an aggregate $11.85 billion, state that the Senior Notes are redeemable at the option of the Debtors at any time prior to specific dates. For example, the 3.75% Senior Notes due 2024 are optionally redeemable until November 15, 2023. *See* 21st Supplement to the 2005 Indenture Art. IV Section 401 (February 21, 2014). Moreover, the acceleration provision does not state that the Noteholders forfeit their right to the premium otherwise provided for in the contract upon a bankruptcy event of default.[22] Thus, for the same reasons as in *EFH*, acceleration of the maturity of the Fixed Date Notes is not pertinent to the triggering of the Optional Redemption Premium. *See* 842 F.3d at 257 ("[T]he result is the same no matter the Indenture—there were optional redemptions before a date certain, thereby triggering make-whole premiums."). The same is true of four other series of Senior Notes (the Any Time Notes) that give the Debtors the option to redeem "at any time," subject to the payment of the Optional Redemption Premium. *See In re Imperial Coronado*, 96 B.R. at 999 (awarding make-whole despite acceleration based on provision involving "prepay[ment] . . . in full or in part at any time").

The acceleration clause also has no contractual effect on the entitlement to a make-whole with respect to the 2034 Notes. Just as in *NML Capital* and *EFH*, nothing in the Optional Redemption Provisions or any other provision of the Note Documents indicates that the parties intended for acceleration to supersede any other provision. *See EFH*, 842 F.3d at 257 ("It surpasses strange to hold that silence in [the acceleration provision] supersedes [the optional redemption provisions'] simple script."). To the contrary, the Note Documents make clear that

---

[22] The omission of a reference to any "premium" concerning certain bankruptcy related events of default does not evince an intent to deny such premium in bankruptcy. Indeed, section 9.05 of the Indentures expressly permits the Trustee to include "premium, if any" among the amounts asserted in bankruptcy proofs of claim; a right that would be superfluous were premiums denied in bankruptcy. In fact, the omission of "premium" in connection with automatic acceleration in bankruptcy makes practical sense. It is not certain at the outset of a bankruptcy case whether the Debtors would elect to cash out or reinstate the Senior Notes and thus, in most circumstances, no Optional Redemption Premium is triggered immediately on the filing of the petition.

section 9.02 and article VI in the Indentures and the Optional Redemption Provisions, and the concepts of "acceleration" (one remedy) and "redemption" (a separate remedy), are not mutually exclusive, but rather are explicitly permissive and cumulative. *See* Indentures § 9.10 ("every right and remedy shall . . . be cumulative and in addition to every other right and remedy given hereunder"); *EFH*, 842 F.3d at 259 ("The takeaway for us is that [the optional redemption provision] applies no less following acceleration of the Notes' maturity than it would to a pre-acceleration redemption."). Under these circumstances, as in *Imperial Coronado*, *NML*, and *EFH*, an automatic acceleration caused by a bankruptcy filing does not negate the remedies provided in the Optional Redemption Provisions.

There are still other reasons why acceleration of the debt does not obviate the debtor's obligation to pay a make-whole premium. Most fundamentally, key provisions of the Indentures would be rendered nonsensical or superfluous under the Debtors' assumed interpretation. The Trustee, as noted, is empowered to file a bankruptcy claim for the Optional Redemption Premium. 2005 Indenture § 9.05. The Indentures also state that "notwithstanding any other provision in [the] Indenture, the Holder of any Bond shall have the right, which is *absolute and unconditional*, to receive payment of . . . premium, if any." *See, e.g.*, 2018 Indenture Art. IX § 9.08 ("Unconditional Right of Holders to Receive Principal, Premium, and Interest") (August 6, 2018) (emphasis added). Those provisions would be meaningless if the acceleration clause defeated the express provisions requiring the Debtors to pay a make-whole premium.

Under New York and California law, courts interpreting contracts have a duty "to give full meaning and effect to all of [an] Indenture's provisions." *EFH*, 842 F.3d at 256; *see also Balsam v. Tucows Inc.*, 627 F.3d 1158, 1162 (9th Cir. 2010) ("The whole of a contract is to be taken together, so as to give effect to every part"). The correct interpretation of the Indenture is that an acceleration clause that is silent as to premium leaves all other provisions intact; any other interpretation would read key terms out of the contract. If a debtor wishes to disclaim the obligation to pay a premium upon a bankruptcy filing, it can plainly provide for that contingency. The Debtors here did not do so, and they owe the Optional Redemption Premium as a result.

What is more, the Debtors themselves, and not the lenders, are prompting the acceleration

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and refraining from de-acceleration on their own volition. "[S]o long as the lender refrains from taking overt action, any acceleration triggered by bankruptcy will not defeat the right to a prepayment premium." *Premier Entm't Biloxi LLC v. U.S. Bank Nat'l Assoc. (In re Premier Entm't Biloxi LLC)*, 445 B.R. 582, 631 (Bankr. S. D. Miss. 2010) (citing *In re LHD Realty Corp*, 726 F.2d 327, 332 (7th Cir. 1984)). Therefore, the Noteholders' right to make-whole premiums is unaffected by the acceleration clause.

### 3. The Second Circuit's *Momentive* Decision Does Not Counsel a Contrary Result.

The Debtors will presumably rely on the Second Circuit's decision in *Matter of MPM Silicones, L.L.C.* ("*Momentive*"), 874 F.3d 787 (2d Cir. 2017) to argue that the Optional Redemption Provisions cannot be triggered following a bankruptcy. However, *Momentive* is contrary to Ninth Circuit BAP precedent, *see Imperial Coronado*, 96 B.R. 999–1000 (post-bankruptcy satisfaction of note constituted optional prepayment), and runs contrary to the New York state law upon which it relies. *See EFH*, 874 F.3d at 257, 259–60 (rejecting reasoning from *Momentive* lower court opinions as contrary to New York law).

In *Momentive*, the Second Circuit rejected noteholders' contention that their optional redemption premiums were triggered when the debtor issued replacement notes under chapter 11, thereby redeeming the notes "at its option" prior to the notes' stated, fixed-date maturity terms. 874 F.3d at 802. At the outset, *Momentive* has no impact on the make-whole analysis for the Fixed Date or Any Time Notes. The relevant indentures in *Momentive* "called for the recovery of a 'make-whole' premium if [the debtor] opted to redeem the notes prior to maturity." *Id.* at 792. Though the indentures mentioned the date October 15, 2020, this date simply happened to be the indentures' "maturity date," *id.*, unlike the dates specified in the Fixed Date Notes at issue here. For the Fixed Date or Any Time Notes, the Debtors owe a make-whole premium upon optional redemption either prior to a fixed date or at "any time." The analysis in *Momentive* is therefore inapposite to the large majority of Senior Notes and only relevant, if at all, with respect to the 2034 Notes.

In any event, with respect to all of the Senior Notes, *Momentive* is also distinguishable

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and precluded by the "Intentional Evasion" doctrine. In *Momentive*, the debtors were not solvent; they were "substantially overleveraged" and "faced serious financial problems" prior to their chapter 11 filings. 874 F.3d at 791; *see also In re MPM Silicones, LLC*, No. 14-22503-RDD, 2014 WL 4436335, at *17 (Bankr. S.D.N.Y. Sept. 9, 2014). In *EFH*, by contrast, the debtors were solvent—a factor *EFH* explicitly noted was potentially relevant to its analysis. *See* 842 F.3d at 253 n.1. As in *EFH*, the Debtors here are presumed to be solvent. Prior to filing for bankruptcy, the Debtors had not yet defaulted on any of the Senior Notes. And they have acknowledged their financial capacity to modify the Debtor Plan so that the Noteholders are unimpaired if the Court determines that Optional Redemption Premiums are owed. *See* Debtor Plan § 4.16(a).

In light of the Debtors' asserted solvency, they are precluded from using bankruptcy to evade their obligation to pay the Optional Redemption Premiums. Courts recognize that it is fundamentally inequitable to allow a borrower to evade payment of a premium by causing the default, regardless of whether the borrower had subjective intent to evade payment, because allowing such evasion would "place [the borrower] in a better position by breaching the [agreement] than it would have occupied had it honored the parties' contract." *See Wilmington Sav. Fund Soc., FSB v. Cash America Int'l, In*c., No. 15-cv-5027 (JMF), 2016 WL 5092594, at *6–8 (S.D.N.Y. Sept. 19, 2016); *see also Nw. Mut. Life Ins. Co.*, 816 N.Y.S.2d at 839 (borrowers should not be allowed "to intentionally trigger acceleration in order to secure the benefits of prepayment in a favorable market while at the same time avoiding the bargained for premium").

Under this "intentional evasion" rule, a borrower cannot default to trigger acceleration and "evade" associated premiums. *See In re 1141 Realty Owner LLC*, 598 B.R. 534, 541 (Bankr. S.D.N.Y. 2019). The *Momentive* bankruptcy court acknowledged the intentional evasion rule,[23] before declaring it undisputedly factually inapplicable under the circumstances present in that case. *Id.* But the Debtors here, as noted, differ from the *Momentive* debtors, particularly in that they are solvent and have affirmed the ability to make the Optional Redemption Premiums (or

---

[23] *In re MPM Silicones, LLC*, No. 14-22503-RDD, 2014 WL 4436335, at *13 (Bankr. S.D.N.Y. Sept. 9, 2014), aff'd in part, 874 F3d 787 (2d Cir. 2017) ("when the debtor intentionally defaults in order to trigger acceleration and evade the prepayment premium or make-whole, the debtor will remain liable for the make-whole notwithstanding acceleration of the debt").

otherwise modify the Debtor Plan).  Thus, the Debtors should not inappropriately use these chapter 11 cases as an opportunity to enhance equity holders' position by choosing to redeem the Senior Notes without paying the bargained for Optional Redemption Premiums.

In addition to being inapposite and distinguishable, *Momentive* is wrong.  In that case, the Second Circuit relied on a single decision, *In re AMR Corp*, 730 F.3d 88 (2d Cir. 2013), in holding that "a payment made mandatory by operation of an automatic acceleration clause is not one made at MPM's option."  *MPM Silicones*, 874 F.3d at 802–03.  But *AMR's* acceleration provision *explicitly disclaimed* the availability of the make-whole amounts otherwise due under the note if the issuer voluntarily filed for bankruptcy. 730 F.3d at 99 (following voluntary bankruptcy filing, acceleration provision provided "unpaid principal amount of the [notes] . . . [plus] accrued but unpaid interest thereon and all other amounts due thereunder (*but for the avoidance of doubt, without Make-Whole Amount*), shall be immediately due" (emphasis added)).  The plain text of the applicable provision in *AMR* expressly disclaimed the availability of make-whole premiums following a bankruptcy-triggered acceleration; thus "*AMR* is the easy case; just follow the text." *EFH*, 842 F.3d at 256.  The same is not true here.

As in *EFH*, the Note Documents' plain language (i) provides procedures for the Senior Notes to be "redeemable before their Stated Maturity" (*see* Indentures § 6.01), and (ii) permits the accrual of Optional Redemption Premiums prior to either fixed dates or stated maturity irrespective of any bankruptcy default or accelerations.  The Debtors could have chosen to cut off Optional Redemption Premiums upon filing of a bankruptcy (as was the case in *AMR*); they did not.  *See* Indentures § 9.02 (no mention of Optional Redemption Provisions).  The reasoning in *EFH*, and not *Momentive*, should apply here.

In sum, the plain language of the Senior Notes demonstrates that Optional Redemption Premiums are available, regardless of the Debtors' bankruptcy filing, under applicable state law should the Debtors satisfy principal and interest due on the Senior Notes prior to the dates specified in the Note Documents.

## II.    The Optional Redemption Premiums Are Not Disallowed by the Bankruptcy Code

Nor are the Optional Redemption Premiums disallowed by the Bankruptcy Code.  The

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Optional Redemption Premiums are not "interest," but rather one-time "charges" purposed to compensate the Noteholders for the additional costs they will incur as a result of the Senior Notes being satisfied early. Even if the Optional Redemption Premiums are viewed as interest (and they should not be), they are fully matured and, therefore, not subject to section 502(b)(2) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b)(2) (disallowing claims for "unmatured interest").

### A. The Optional Redemption Premiums Are "Charges," or "Liquidated Damages," Not "Interest."

It is well-settled in the Ninth Circuit that make-whole premium claims are allowable under the Bankruptcy Code. *See Imperial Coronado*, 96 B.R. at 106 (finding a make-whole allowable as a secured claim under section 506(b) of the Bankruptcy Code); *see also In re Read-Rite Corp.*, No. 03-43576 RN7, 2005 WL 2210659 (Bankr. N.D. Cal. Aug. 11, 2005); *433 S. Beverly Drive*, 117 B.R. at 568 ("Nothing in the [Bankruptcy Code] automatically invalidates a provision for a Prepayment Premium which is otherwise enforceable under applicable non-bankruptcy law . . . .").

Likewise, the vast majority of courts outside of the Ninth Circuit have held, either expressly or implicitly (through allowance of a claim), that the Bankruptcy Code does not disallow make-whole premiums or similar charges. *See*, *e.g.*, *EFH*, 842 F.3d at 255; *1141 Realty*, 598 B.R. at 543–44; *In re Trico Marine Servs., Inc.*, 450 B.R. 474, 480 (Bankr. D. Del. 2011) (make-whole was not subject to disallowance under section 502(b)(2)); *In re Lappin Elec. Co., Inc.*, 245 B.R. 326, 331 (Bankr. E.D. Wis. 2000) (allowing a claim for a termination fee).

To be sure, a panel of the Fifth Circuit in *Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra Petroleum Corp.)*, 913 F.3d 533 (5th Cir. 2019), *withdrawn*, No. 17-20793, 2019 WL 6318074 (5th Cir. Nov. 26, 2019), initially held that make-whole premiums constitute "unmatured interest" disallowed under 11 U.S.C. § 502(b)(2). But on rehearing, the same Fifth Circuit panel vacated its initial opinion and jettisoned its characterization of prepayment premiums as unmatured interest in order to allow the bankruptcy court to address this issue, as well as the solvent-debtor exception, in the first instance. *See Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra*

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Petroleum Corp.)*, No. 17-20793, 2019 WL 6318074, at *1, 5–6 (5th Cir. Nov. 26, 2019). In addition, the Fifth Circuit went out of its way to note that its "review of the record reveals no reason why the solvent-debtor exception could not apply" and expressly instructed the bankruptcy court to "consider . . . the applicability of the solvent-debtor exception on remand." *Id.* at *6. Conducting that analysis harmonized with "other circuits hav[ing] recognized" that, "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditor's contractual rights." *Id.* (quoting *In re Dow Corning*, 456 F.3d 668, 679 (6th Cir. 2006)) (citing *In re Chi., Milwaukee, St. Paul & Pac. R. R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986)); *see supra* p. 14–15 & n.16.

The Fifth Circuit was right to abandon its minority view. Courts in the Ninth Circuit, including the *Imperial Coronado* decision, treat prepayment premium claims as "charges" or "liquidated damages"—both allowable under the Bankruptcy Code. *See Imperial Coronado*, 96 B.R. at 1000-01; *433 S. Beverly Drive*, 117 B.R. 569 ; *In re Planvest*, 94 B.R. 644, 645 (Bankr. D. Ariz. 1988); *Skyler Ridge*, 80 B.R. at 506–07. An overwhelming majority of courts in other circuits also view make-wholes as charges or liquidated damages and not as unmatured interest. *See In re School Specialty, Inc.*, No. 13-10125, 2013 Bankr. LEXIS 1897, at *18 (Bankr. D. Del. Apr. 22, 2013) (agreeing with majority that make-whole premiums are not unmatured interest); *Trico Marine Servs.*, 450 B.R. at 480 (stating that "substantial majority of courts considering this issue have concluded that make-whole or prepayment obligations are in the nature of liquidated damages rather than unmatured interest") (internal citations omitted); *Chemtura*, 439 B.R. at 604 (acknowledging "majority view" is that prepayment premium claims are not unmatured interest); *Noonan v. Fremont Fin. (In re Lappin Elec. Co.)*, 245 B.R. 326, 330 (Bankr. E.D. Wis. 2000) (agreeing "with a majority of courts that view a prepayment charge as liquidated damages, not as unmatured interest").

### B. The Optional Redemption Premiums Are Fully Matured, and Cannot Constitute "Unmatured" Interest.

Even if the Optional Redemption Premiums constituted interest (which they do not), they still would not be disallowed by section 502(b)(2) of the Bankruptcy Code because they are fully

"matured."  Courts hold that where optional redemption provisions that are grounded in pre-petition contracts become due by reason of repayment of debt under a plan, they are not unmatured interest.  *See, e.g.*, *In re 360 Inns, Ltd.*, 76 B.R. 573, 576 (Bankr. N.D. Tex. 1987) ("prepayment penalty was not unmatured interest as contemplated in § 502(b)(2), inasmuch as the prepayment penalty was activated and matured once the plan of reorganization proposed to prepay UNUM's debt"); *In re Outdoor Sports Headquarters*, 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993) (prepayment premiums fully mature "pursuant to the provisions of a contract").

The Optional Redemption Premiums are rooted in agreements entered into well before the Petition Date.  And the Noteholders have fully performed their side of the bargain by investing in the Senior Notes, which the Debtors promised not to pay prematurely without the Optional Redemption Premiums.  By filing for bankruptcy, however, the Debtors elected to temporarily stop making payments under the Note Documents and to make all amounts due thereunder immediately due and owing.  The Debtors could reverse this election by reinstating the Senior Notes.  But in deliberately deciding *not* to reinstate or otherwise unimpair the Senior Notes, the Debtors have confirmed that their original bargain with the Noteholders will not be honored, leaving the Noteholders to liquidate their positions and procure substitute investments.  The parties no doubt have negotiated the Optional Redemption Provisions to compensate the Noteholders in precisely these circumstances.

**C.     The Solvent Debtors Must Honor the Note Documents In Any Event**

Courts overwhelmingly recognize that a plan of reorganization for a solvent debtor generally must satisfy all amounts due unimpaired creditors pursuant to any underlying contracts, even where such amounts may be disallowed in an insolvent debtor case.  Even if the Court does rule that the Optional Redemption Premiums constitute unmatured interest—and they do not—the presumed-solvent Debtors nevertheless must pay the Optional Redemption Premiums to the extent required in the relevant agreements.

In cases involving solvent debtors, courts have held that creditors are entitled to the full benefit of their prepetition bargain, as it is "the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act."  *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1959); *see also UPS Capital Bus. Credit v. Gencarelli* (*In re Gencarelli*), 501 F.3d 1, 7 (1st Cir. 2007) (explaining that, in a solvent debtor case, "the equities strongly favor holding the debtor to his contractual obligations as long as those obligations are legally enforceable under applicable non-bankruptcy law"); *In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986) ("[I]f the bankrupt is solvent the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights. . . ."); *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264, 268 (1st Cir. 1982) (same); *Johnson v. Norris*, 190 F. 459, 466 (5th Cir. 1911) ("Whether we are governed by the apparent intention of Congress as shown by the general purpose of the bankruptcy law, or by the general principles of equity, the result would be the same. The bankrupts should pay their debts in full, principal and interest to the time of payment, whenever the assets of their estates are sufficient.").

Indeed, courts have repeatedly held that, in solvent-debtor cases, typical equitable concerns for the allocation of a debtor's "limited pie" give way to "the presumption . . . that a bankruptcy court's role is merely to enforce the contractual rights of the parties." *In re Dow Corning*, 456 F.3d at 678–79; *see also In re Chemtura Corp.*, 439 B.R. at 605 ("With a solvent debtor, issues as to fairness amongst creditors, in sharing a limited pie, no longer apply . . . ."). In *Dow*, the Court of Appeals for the Sixth Circuit considered the plan objections of commercial creditors of a solvent debtor reorganizing under chapter 11 in order to resolve mass tort claims, like the Debtors' situation here. The Sixth Circuit held that "the legislative history of the Bankruptcy Code makes clear" that when "a solvent debtor seeks confirmation of its plan, . . . equitable considerations operate differently" than when the debtor is insolvent and require a presumption in favor of enforcing contracts in accordance with applicable non-bankruptcy law. *Id.*; *see also In re Los Angeles Dodgers LLC*, 465 B.R. 18, 32–33 (D. Del. 2011) (holding that for solvent debtors, "the equities strongly favor holding the debtor to his contractual obligations so long as those obligations are legally enforceable under applicable non-bankruptcy law").

Here, the same principles apply—to the extent the Debtors are solvent, and the Optional Redemption Premiums are valid and enforceable under applicable law outside of bankruptcy, all

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    such claims must be satisfied under any plan that may be confirmed in these cases. To do

2    otherwise would be contrary both to the preponderance of precedent and to the longstanding

3    equitable principles enforcing all of creditors' state law rights against solvent debtors.

4                          **STATEMENT OF CREDITORS' COMMITTEE**

5         The Creditors' Committee acts as a fiduciary for a broad constituency of unsecured

6    creditors' interests, which includes but is not limited to the Noteholders. As a result, the Creditors'

7    Committee's sole position with respect to the Optional Redemption Premiums is that, to the extent

8    they are enforceable and payable under applicable non-bankruptcy law, any plan that purports to

9    render the Noteholders unimpaired must necessarily provide for payment in full of those Optional

10   Redemption Premiums. The Creditors' Committee takes no position on any other views

11   expressed herein. Further, if the Debtors' estates prove to be insolvent, the Creditors' Committee

12   reserves all rights with respect to these issues.

13                                        **CONCLUSION**

14        Should the Debtors elect to satisfy the Senior Notes prior to the dates including the

15   maturity dates specified in the Note Documents rather than reinstate them, the Debtors will owe

16   the Noteholders the Optional Redemption Premiums under the plain language of the Note

17   Documents and applicable bankruptcy law. That these Debtors, who claim to be solvent, have

18   sought relief under chapter 11 of the Bankruptcy Code is insufficient, as a matter of law, to avoid

19   triggering the Optional Redemption Premiums. The Debtors filed for chapter 11 protection to

20   relieve themselves of massive tort liabilities. But they are attempting to use chapter 11 improperly

21   to enhance the value of existing equity by (i) capping the maximum amount individual wildfire

22   victims can receive on account of their tort claims; and (ii) redeeming the Senior Notes

23   (presumably through refinancing at lower interest rates) without paying the Optional Redemption

24   Premiums. The Debtors' bankruptcy does not relieve them of their obligations under the Note

25   Documents—some of which were incurred as little as one year ago, and *after* the first bout of

26   Wildfires.

27        Accordingly, BOKF and the AHC respectfully request that this Court enter an Order

28   declaring that (i) the Noteholders are entitled to Optional Redemption Premiums if the Senior

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

31

Notes are satisfied and/or cancelled, and (ii) should any plan proponent propose to satisfy principal and interest due on the Senior Notes without paying the Noteholders the Optional Redemption Premiums, the Noteholders will be impaired and entitled to vote to accept or reject any plan incorporating such a proposal.

Dated:     November 27, 2019          **ARENT FOX LLP**

By: */s/ Aram Ordubegian*
        ARAM ORDUBEGIAN  (SBN 185142)
        ANDREW I. SILFEN (*pro hac vice*)
        BETH M. BROWNSTEIN (*pro hac vice*)

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee for the Utility Senior Notes*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/ Ashley Vinson Crawford*
ASHLEY VINSON CRAWFORD
MICHAEL S. STAMER
IRA S. DIZENGOFF
DAVID H. BOTTER
ABID QURESHI

*Counsel for the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company*

**MILBANK LLP**

*/s/ Thomas R. Kreller*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

32

# EXHIBIT 1

# Exhibit 1

## Senior Notes Schedule

| Senior Notes | Optional Redemption Provision Category | Long- or Short-Term Notes | Outstanding Principal ($ millions) | Base Indenture | Initial Issuing Document | Optional Remption Provision: Section of Initial Issuing Document | Initial Issuance Date | Interest Rate | Stated Maturity Date | Basis Point Variable | Fixed Date Variable (if any) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **2034 Notes** | | | | | | | | | | | |
| 1. 6.05% Senior Notes due 2034 | 2034 Notes | Long-Term | $3,000 | 2005 Indenture | 2005 Indenture | § 4.03(d) | 3/23/2004[1] | 6.05% | 3/1/2034 | 25 | N/A |
| **2034 Notes Subtotal:** | | | **$3,000** | | | | | | | | |
| **Any Time Notes** | | | | | | | | | | | |
| 2. 5.80% Senior Notes due March 1, 2037 | Any Time | Long-Term | $950 | 2005 Indenture | 1st Supp. Indenture | § 301 | 3/13/2007 | 5.80% | 3/1/2037 | 25 | N/A |
| 3. 6.35% Senior Notes due February 15, 2038 | Any Time | Long-Term | $400 | 2005 Indenture | 3rd Supp. Indenture | § 401 | 3/3/2008 | 6.35% | 2/15/2038 | 30 | N/A |
| 4. 6.25% Senior Notes due March 1, 2039 | Any Time | Long-Term | $550 | 2005 Indenture | 6th Supp. Indenture | § 301 | 3/6/2009 | 6.25% | 3/1/2039 | 40 | N/A |
| 5. 5.40% Senior Notes due January 15, 2040 | Any Time | Long-Term | $800 | 2005 Indenture | 8th Supp. Indenture | § 301 | 11/18/2009 | 5.40% | 1/15/2040 | 20 | N/A |
| **Any Time Notes Subtotal:** | | | **$2,700** | | | | | | | | |
| **Fixed Date Notes** | | | | | | | | | | | |
| 6. 3.50% Senior Notes due October 1, 2020 | Fixed Date | Short-Term | $800 | 2005 Indenture | 10th Supp. Indenture | § 301 | 9/15/2010 | 3.50% | 10/1/2020 | 15 | 7/1/2020 |
| 7. 4.25% Senior Notes due May 15, 2021 | Fixed Date | Short-Term | $300 | 2005 Indenture | 13th Supp. Indenture | § 301 | 5/13/2011 | 4.25% | 5/15/2021 | 15 | 2/15/2021 |
| 8. 3.25% Senior Notes due September 15, 2021 | Fixed Date | Short-Term | $250 | 2005 Indenture | 14th Supp. Indenture | § 301 | 9/12/2011 | 3.25% | 9/15/2021 | 20 | 6/15/2021 |
| 9. 2.45% Senior Notes due August 15, 2022 | Fixed Date | Short-Term | $400 | 2005 Indenture | 18th Supp. Indenture | § 401 | 8/16/2012 | 2.45% | 8/15/2022 | 15 | 5/15/2022 |
| 10. 4.50% Senior Notes due December 15, 2041 | Fixed Date | Long-Term | $250 | 2005 Indenture | 16th Supp. Indenture | § 301 | 12/1/2011 | 4.50% | 12/15/2041 | 25 | 6/15/2041 |
| 11. 4.45% Senior Notes due April 15, 2042 | Fixed Date | Long-Term | $400 | 2005 Indenture | 17th Supp. Indenture | § 301 | 4/16/2012 | 4.45% | 4/15/2042 | 20 | 10/15/2041 |
| 12. 3.75% Senior Notes due August 15, 2042 | Fixed Date | Long-Term | $350 | 2005 Indenture | 18th Supp. Indenture | § 402 | 8/16/2012 | 3.75% | 8/15/2042 | 20 | 2/15/2042 |
| 13. 3.25% Senior Notes due June 15, 2023 | Fixed Date | Long-Term | $375 | 2005 Indenture | 19th Supp. Indenture | § 401 | 6/14/2013 | 3.25% | 6/15/2023 | 20 | 3/15/2023 |
| 14. 4.60% Senior Notes due June 15, 2043 | Fixed Date | Long-Term | $375 | 2005 Indenture | 19th Supp. Indenture | § 402 | 6/14/2013 | 4.60% | 6/15/2043 | 20 | 12/15/2042 |
| 15. 3.85% Senior Notes due November 15, 2023 | Fixed Date | Long-Term | $300 | 2005 Indenture | 20th Supp. Indenture | § 401 | 11/12/2013 | 3.85% | 11/15/2023 | 20 | 8/15/2023 |
| 16. 5.125% Senior Notes due November 15, 2043 | Fixed Date | Long-Term | $500 | 2005 Indenture | 20th Supp. Indenture | § 402 | 11/12/2013 | 5.125% | 11/15/2043 | 25 | 5/15/2043 |
| 17. 3.75% Senior Notes due February 15, 2024 | Fixed Date | Long-Term | $450 | 2005 Indenture | 21st Supp. Indenture | § 401 | 2/21/2014 | 3.75% | 2/15/2024 | 20 | 11/15/2023 |
| 18. 4.75% Senior Notes due February 15, 2044 | Fixed Date | Long-Term | $675 | 2005 Indenture | 21st Supp. Indenture | § 402 | 2/21/2014 | 4.75% | 2/15/2044 | 20 | 8/15/2043 |
| 19. 3.40% Senior Notes due August 15, 2024 | Fixed Date | Long-Term | $350 | 2005 Indenture | 23rd Supp. Indenture | § 301 | 8/18/2014 | 3.40% | 8/15/2024 | 15 | 5/15/2024 |
| 20. 4.30% Senior Notes due March 15, 2045 | Fixed Date | Long-Term | $600 | 2005 Indenture | 24th Supp. Indenture | § 301 | 11/6/2014 | 4.30% | 3/15/2045 | 20 | 9/15/2044 |
| 21. 3.50% Senior Notes due June 15, 2025 | Fixed Date | Long-Term | $600 | 2005 Indenture | 25th Supp. Indenture | § 301 | 6/12/2015 | 3.50% | 6/15/2025 | 20 | 3/15/2025 |
| 22. 4.25% Senior Notes due March 15, 2046 | Fixed Date | Long-Term | $450 | 2005 Indenture | 26th Supp. Indenture | § 401 | 11/5/2015 | 4.25% | 3/15/2046 | 25 | 9/15/2045 |
| 23. 2.95% Senior Notes due March 1, 2026 | Fixed Date | Long-Term | $600 | 2005 Indenture | 27th Supp. Indenture | § 301 | 3/1/2016 | 2.95% | 3/1/2026 | 20 | 12/1/2025 |
| 24. 4.00% Senior Notes due December 1, 2046 | Fixed Date | Long-Term | $600 | 2005 Indenture | 28th Supp. Indenture | § 308 | 12/1/2016 | 4.00% | 12/1/2046 | 20 | 6/1/2046 |
| 25. 3.30% Senior Notes due March 15, 2027 | Fixed Date | Long-Term | $400 | 2005 Indenture | 29th Supp. Indenture | § 208 | 3/10/2017 | 3.30% | 3/15/2027 | 15 | 12/15/2026 |
| **2005 Indenture Subtotal:** | | | **$14,725** | | | | | | | | |
| 26. 3.30% Senior Notes due December 1, 2027 | Fixed Date | Long-Term | $1,150 | 2017 Indenture | 2017 Indenture | Reverse of Note | 11/29/2017 | 3.30% | 12/1/2027 | 15 | 9/1/2027 |
| 27. 3.95% Senior Notes due December 1, 2047 | Fixed Date | Long-Term | $850 | 2017 Indenture | 2017 Indenture | Reverse of Note | 11/29/2017 | 3.95% | 12/1/2047 | 20 | 6/1/2047 |
| **2017 Indenture Subtotal:** | | | **$2,000** | | | | | | | | |
| 28. 4.25% Senior Notes due August 1, 2023 | Fixed Date | Long-Term | $500 | 2018 Indenture | Supp. 2018 Indenture | § 208 | 8/6/2018 | 4.25% | 8/1/2023 | 25 | 7/1/2023 |
| 29. 4.65% Senior Notes due August 1, 2028 | Fixed Date | Long-Term | $300 | 2018 Indenture | Supp. 2018 Indenture | § 308 | 8/6/2018 | 4.65% | 8/1/2028 | 30 | 5/1/2028 |
| **2018 Indenture Subtotal:** | | | **$800** | | | | | | | | |
| **Fixed Date Notes Subtotal:** | | | **$11,825** | | | | | | | | |

| | |
|---|---|
| Short-Term Notes Subtotal: | $1,750 |
| Long-Term Notes Subtotal: | $15,775 |
| Senior Notes Total: | $17,525 |

[1] The 6.05% Senior Notes due 2034 were initially issued under the 2005 Indenture's predecessor document, were continued under the 2005 Indenture and are subject to the 2005 Indenture as if issued thereunder.