*I.    Issues Addressed by Amended and Restated RSA*

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|---|---|---|---|---|
| 1 | The RSA definition of "IP Claims" could be interpreted to include claims held by Government Units (as defined in section 101(27) of the Bankruptcy Code). | U.S. Department of Justice, Civil Division [Dkt. No. 4237 (pp. 3-5)] | • The definition of "IP Claims" in the Amended RSA now provides: ○ "'IP Claims' means any Wildfire Claim that is not a Public Entities Wildfire Claim ~~or~~, a Subrogation Claim **or any Wildfire Claim asserted by any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code)**." ▪ *See* Amended RSA p. 4. [3] | #1 and #2 - Appear to be resolved satisfactorily. | Clarification to be made on the record at RSA Approval Motion hearing: "For the avoidance of doubt, the RSA's definition of 'IP Claims' does not include (i) Wildfire Claims held by Governmental Units, or (ii) Public Entities Wildfire Claims." |
| 2 | Claims of Governmental Units should not be included as Subrogation Claims. | California Governor's Office of Emergency Services and California Department of Veterans Affairs [Dkt. No. 4220 (p. 2)] | • The definition of "Subrogation Claim" in the Amended RSA now provides: ○ "'Subrogation Claims' means…. **For the avoidance of doubt, Subrogation Claims shall not include the claims of any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) and any such claims shall not be the subject of, or compromised under, this Agreement.**" ▪ *See* Amended RSA p. 6. | #1 and #2 - Appear to be resolved satisfactorily. | Clarification to be made on the record at RSA Approval Motion hearing: "For the avoidance of doubt, the RSA's definition of 'Subrogation Claims' does not include (i) Wildfire Claims held by Governmental Units, or (ii) Public Entities Wildfire Claims." |

---

[1]    This chart has been prepared for administrative convenience to set forth the changes made in the Amended and Restated RSA ("Amended RSA") filed by the Debtors in the *Notice of Filing of Amended and Restated Restructuring Support Agreement* [Dkt. No. 4554] ("Notice of Amended RSA"), and sets forth the changes the Debtors and Ad Hoc Subrogation Group are prepared to make in response to Judge Montali's *Tentative Considerations on Objections to Amended and Restated Restructuring Support Agreement* [Dkt. No. 4872].

[2]    As set forth in the *Tentative Considerations on Objections to Amended and Restated Restructuring Support Agreement* [Dkt. No. 4872].

[3]    Citations to the Amended RSA are to pages numbers in the blackline copy of the Amended RSA filed in the Notice of Amended RSA unless otherwise specified.

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|---|---|---|---|---|
| 3 | The RSA prohibits the Ad Hoc Subrogation Group ("AHG") from negotiating with other creditor constituencies to achieve global consensus. | TCC, UCC, Bondholder Group, Governor Newsom [Dkt. Nos. 4232 (p. 5), 4236 (pp. 6-7), 4241 (pp. 3-4), 4640 (p. 5)] | • Section 2(b)(ii) of the Amended RSA now provides:<br>   o "Subject to the terms and conditions hereof, for the duration of the Support Period, each Consenting Creditor shall not…(ii) **subject to the proviso in Section 2(a)(iii) hereof as to voting,** directly or indirectly, file, propose, support, solicit, assist, encourage, or participate in the formulation of or vote for any Alternative Restructuring or settlement of the Subrogation Claims other than as set forth herein, **provided that nothing herein precludes the Debtors and the Ad Hoc Subrogation Group from negotiating together with any other creditor constituencies or participating in mediation to achieve global consensus;**"<br>      ▪ *See* Amended RSA p. 8. | #3 - The Subro Group and the Debtors appear duty bound to negotiate "together" with other creditor constituencies or in mediation. The court does not believe that is a constructive approach and believes that portion of the RSA should be disapproved. | • Section 2(b)(ii) shall be further amended to now provide:<br>   o "Subject to the terms and conditions hereof, for the duration of the Support Period, each Consenting Creditor shall not…(ii) subject to the proviso in Section 2(a)(iii) hereof as to voting, directly or indirectly, file, propose, support, solicit, assist, encourage, or participate in the formulation of or vote for any Alternative Restructuring or settlement of the Subrogation Claims other than as set forth herein, provided that nothing herein precludes ~~the Debtors and~~ the Ad Hoc Subrogation Group from negotiating ~~together~~ with any other creditor constituencies or participating in mediation to achieve global consensus;" |
| 4 | The RSA obligates the Debtors[4] to file a plan that pays | UCC, TCC [Dkt. Nos. 4236 (p. 7), | • Section 3(a)(i) of the Amended RSA now provides: | #4- This portion of the RSA addresses a | • Each instance in the prior version of the RSA that was conditioned on a Bankruptcy Court |

---

[4]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Amended RSA.

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|-----------|-----------------|-------------------------------------------------------|----------------------------------|----------|
| | subrogation claimants 100% of their allowed claims, even if the Debtors are insolvent. | 4629 (pp.5-6)] | ○ "Subject to the terms and conditions hereof, for the duration of the Support Period, the Company shall…(i) use commercially reasonable efforts to propose and pursue the Plan and seek the entry of a Confirmation Order, which incorporate the terms of the Settlement including any conditions thereto (including all of the terms hereof relating to the treatment of, and distributions on Subrogation Claims and the Aggregate Subrogation Recovery)**, provided that if the Bankruptcy Court determines the Debtors are insolvent, the Debtors may file a revised plan that does not pay subrogation claimants $11 billion in cash on $11 billion of allowed claims, provided, however, that such revised plan shall not subordinate the class of Subrogation Claims to the class of IP Claims (an "Insolvent Plan");**" <br> ▪ *See* Amended RSA p. 9. | situation that may exist "provided…the Bankruptcy Court determines Debtors are insolvent…." As a practical matter the court may not be able to make such a determination without the initiation of a contested matter, opposition thereto, etc. The court believes the more appropriate outcome would be that the Debtors, if they concede that they are insolvent, would terminate the RSA. Following any such determination, there would be no precondition that any such revised plan would not – or would – subordinate the | determination is now conditioned on the Debtors making an "Insolvency Determination." <br> • A new Section 5(c)(ii) shall be added to the RSA, which will allow the Debtors to terminate the RSA if the Debtors make an Insolvency Determination: "**The Debtors may terminate this Agreement if, upon the advice of the Debtors' professionals (after consultation with the Ad Hoc Professionals), the Debtors reasonably determine in good faith at any time prior to confirmation of the Plan, that the Debtors are insolvent for all purposes in the Chapter 11 Cases as of the time such determination is made (whether as a result of judicial findings arising from the Estimation Proceedings, litigation related to the IP Claims, the incurrence of post-petition wildfire liabilities or otherwise) (such determination, subject to the Requisite Consenting Creditors' right to promptly contest any such determination with the dispute to be determined by the Bankruptcy Court whose determination shall be binding for purposes of this Agreement,** |

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|-----------|-----------------|------------------------------------------------------|---------------------------------|----------|
| | | | | Subro Group claims to the IP Claims. | **an "Insolvency Determination"). If the Debtors make an Insolvency Determination and elect to terminate this Agreement (a "Debtor Insolvency Termination"), the Allowed Subrogation Claim Amount shall be binding in the Chapter 11 Cases, and shall survive termination of this Agreement unless the Requisite Consenting Creditors elect to pursue a higher claim amount as set forth below [Section 5(d) of the RSA].**"<br>• The definition of Insolvent Plan in Section 3(a)(i) of the RSA shall be revised as follows: "…provided that if the ~~Bankruptcy Court determines the~~ Debtors ~~are insolvent~~ **make an Insolvency Determination**, the Debtors may file a revised plan that does not pay subrogation claimants $11 billion in cash on $11 billion of allowed claims, ~~provided, however, that such revised plan shall not subordinate the class of Subrogation Claims to the class of IP Claims~~ (an "Insolvent Plan");"<br>• The Consenting Creditors' rights in section 2(a)(ii) with regard to an Insolvent Plan shall be revised as |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 4 of 30

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|---|---|---|---|---|
| | | | | | follows: "<u>provided further that</u> if the Debtors make an Insolvency Determination and the Debtors file an Insolvent Plan, the Consenting Creditors shall be free to vote for or against such Insolvent Plan, **object to confirmation of (and/or solicitation of votes for) such Insolvent Plan on any grounds,** and, subject to the Consenting Creditors' rights to terminate the RSA and seek a higher claim amount as set forth below, the Subrogation Claims will continue to be allowed in the Allowed Subrogation Claim Amount;" |
| 5 | Under section 3(a)(iii) of the RSA, if an insured individual plaintiff settles with the Debtors, such party is required to release ordinary course insurance claims against their insurer. | TCC, Adventist Claimants [Dkt. Nos. 4232 (pp. 19-20), 4239 (pp. 5-8)] | • Section 3(a)(iii) of the Amended RSA was modified to narrow the scope of the release as follows, and the draft form of release is now attached to the Amended RSA:<br>○ "Subject to the terms and conditions hereof, for the duration of the Support Period, the Company shall . . .(iii) upon entry into any settlement with any holder or holders of IP Claims that fixes the amount or terms for satisfaction of an IP Claim, including with respect to rights against a post-Effective Date trust established for the resolution and payment of such Claims, require, as a condition to payment or other | #5 and #6 - Appear to be satisfactory resolutions of the pending objections. | No solution required. |

Case: 19-30088   Doc# 4921-1   Filed: 12/02/19   Entered: 12/02/19 11:31:05   Page 5 of 30

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|-----------|-----------------|-------------------------------------------------------|--------------------------------|----------|
| | | | distribution to or for the benefit of such holder pursuant to such settlement or other agreement, that the holder of the IP Claim contemporaneously execute and deliver a release and waiver of any ~~and all claims to the fullest extent permitted by law against all parties in interest in the Chapter 11 Cases, including any~~ potential made-whole claims against present and former holders of Subrogation Claims~~, which release shall be in form and substance reasonably acceptable to the Debtors the Requisite Consenting Creditors~~ **substantially in the form attached hereto as Exhibit B** (the "Settlement Payment Condition")…"<br>  ▪ *See* Amended RSA pp. 9-10.<br>• The Form of Release attached as Exhibit B to the Amended RSA provides:<br> o "Releasor is not releasing any claims Releasor may have against any Releasee other than the Releasor's foregoing release of made-whole claims."<br>  ▪ *See* ¶ 4, Ex. B to Amended RSA.<br>• The scope of release is consistent with releases entered into between insured | | |

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|-----------|-----------------|-------------------------------------------------------|---------------------------------|----------|
| | | | individual plaintiffs and the Debtors in comparable prepetition incidents, copies of which have been filed with the Bankruptcy Court under seal. <br><br> o Exhibit A (Butte Fire Release) Sample Language: "The subrogation claims, if any, of Plaintiff's property insurers, if any, are excepted from this release and the [PLAINTIFFS] agree that they will not submit any further claim or receive any further benefit from their property insurers that may give rise to any additional or further subrogation claims for any property loss caused directly or indirectly by the Fire." <br><br> o Exhibit B (San Bruno Release) Sample Language: "The subrogation claims, if any, of the undersigned's property insurer is excepted from this release and the undersigned agrees that they will not submit any further claim or receive any further benefit from their property insurer that may give rise to any additional or further subrogation claims for any property loss caused directly or indirectly by the Accident." | | |
| 6 | If an insured individual plaintiff settles with the | Adventist Claimants [Oct. 23 | • Section 3(a)(iii) of the Amended RSA clarifies that the releases will be mutual and now provides: | #5 and #6 - Appear to be satisfactory | No solution required. |

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|-----------|-----------------|------------------------------------------------------|------------------------------|----------|
| | Debtors, such plaintiff must release its insurer, but the insurer is not required to provide a "mutual release" to the insured. | Hr'g Tr. at 198:7-200:4, Dkt. No. 4637 (p. 4)] | o "... **provided that the Confirmation Order shall deem each holder of a Subrogation Claim that is a beneficiary of a release and waiver of made-whole claims executed by a holder of an IP Claim as set forth herein to have released such holder of an IP Claim from any claim to such holder's recovery from the Debtors on account of such settled IP Claim;**" <br> ▪ *See* Amended RSA pp. 9-10. | resolutions of the pending objections | |
| 7 | If the Debtors are insolvent, the Debtors are required to pursue a plan that finds prepetition wildfire claims are satisfied, which may not be possible. | UCC [Dkt. No. 4236 (pp. 7-8)] | • Section 3(a)(v) of the Amended RSA clarifies that if the Bankruptcy Court determines that the Debtors are insolvent, then the Debtors shall not be obligated to seek the finding set forth in Section 3(a)(v)(A): <br> o "Subject to the terms and conditions hereof, for the duration of the Support Period, the Company shall . . . <br> (v) propose and pursue the Plan and seek entry of a Confirmation Order that contain (and ~~the Plan and Confirmation Order~~ **any plan and confirmation order pursued by the Debtors** shall contain) the following provisions, findings and orders, as applicable in substantially the form set forth | #7 - Comments regarding Bankruptcy Court determination of insolvency are much the same as indicated above in #4. | See discussion on item I.4 |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 8 of 30

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|---|---|---|---|---|
| | | | below (the "<u>Findings and Orders</u>"), **provided that, if the Bankruptcy Court determines the Debtors are insolvent, the Debtors will not be required to pursue a plan or confirmation order with the finding set forth in Section 3(a)(v)(A) below**…(A) the Bankruptcy Court 'has determined that the resolution of the insolvency proceeding provides funding or establishes reserves for, provides for assumption of, or otherwise provides for satisfying any prepetition wildfire claims asserted against the electrical corporation in the insolvency proceeding in the amounts agreed upon in any pre-insolvency proceeding settlement agreements or any post-insolvency settlement agreements, authorized by the court through an estimation process or otherwise allowed by the court;'" <br> ▪ *See* Amended RSA p. 10. | | |
| 8 | The RSA would allow the Debtors and AHG to amend the RSA without further Bankruptcy Court approval. | Bondholder Group [Dkt. No. 4241 p. 4-5)] | • Section 9 of the Amended RSA now provides: <br> ○ ". . . **Notwithstanding anything herein to the contrary, any material modifications or amendments to this Agreement shall be subject to Bankruptcy** | #8 - A five business day notice procedure for an amendment to the RSA appears to be too short. | Amend section 9 of the RSA to provide: "…this Agreement shall be subject to Bankruptcy Court approval on not less than ~~five~~ twenty-one (~~5~~21) ~~Business Days~~ days' notice, **subject to the right of any Party to move for shortened notice**." |

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|---|---|---|---|---|
| | | | **Court approval on not less than five (5) Business Days' notice**." <br> ▪ *See* Amended RSA pp. 18-19. | | |
| 9 | The release in the plan is not a consensual third-party release. | TCC [Dkt. No. 4232 (pp. 19-20)] | • The newly filed Plan's definition of "Releasing Parties" now requires claimants to opt-in to releases, consistent with the Bondholders/TCC's plan: <br> ○ "**Releasing Parties** means, collectively, and, in each case, in their capacities as such… (c) any holder of a Claim that is ~~Unimpaired under the Plan that does not file a timely objection to the releases provided for in Section 10.9(b) of the Plan; (d) any holder of a Claim (i) who votes to accept or reject the Plan, or (ii) whose vote to accept or reject the Plan is solicited but that does not vote either to accept or to reject the Plan and, in each case, does not indicate~~ **solicited and voluntarily** indicates on a duly completed ~~b~~**B**allot submitted on or before the Voting Deadline that such holder opts ~~out of~~ **into** granting the releases set forth in Section ~~10.9(b)~~ **10.9(b)** of the Plan **to the extent permitted by applicable law, provided that such holder's opt-in, opt-out, or failure to complete that portion** | #9 - The parties should address what would happen if a submitter of a ballot did not indicate either an opt-in or an opt-out to the release provisions. Is "opt-out" the default? <br><br> In that same objection, the explanation appearing at page 7 of 19 appears satisfactory. | Plan to be revised to clarify that an "opt out" of plan releases is the default for a party that fails to indicate a choice on its ballot. |

Case: 19-30088   Doc# 4921-1   Filed: 12/02/19   Entered: 12/02/19 11:31:05   Page 10 of 30

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|---|---|---|---|---|
| | | | **of the Ballot shall not in any way affect the classification or treatment of such Claim**…"<br><br>• Section 10.9(b) of the Plan was amended to clarify the limited scope of the release being given by Other Wildfire Claim Holders—a defined term which includes insured individual plaintiffs—to holders of "Subrogation Wildfire Claims':<br>    o "…**and nothing herein shall be deemed to impose a release by holders of Other Wildfire Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.19(f)(ii) hereof.**"<br><br>• In addition section 10.9(c) of the Plan was added to clarify that the Plan does not impose any non-consensual releases:<br>    o "*Only Consensual Non-Debtor Releases*. **Except as set forth under Section 4.19(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor** | | |

Case: 19-30088   Doc# 4921-1   Filed: 12/02/19   Entered: 12/02/19 11:31:05   Page 11 of 30

| # | Objection | Objecting Party | Clarifying Changes to the RSA/ Plan of Reorganization | Judge Montali Considerations[2] | Solution |
|---|---|---|---|---|---|
| | | | **of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.  The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**" | | |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 12 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|-----------------------------|----------|
| | | | _**I.      Why Approval of the Amended RSA Should Not Be Delayed due to Cash Considerations or Other Proceedings**_ | | |
| 1 | The settlement is unfair because it provides $11 billion in cash to holders of Subrogation Claims and would force individual plaintiffs ("IPs") to take non-cash consideration. | TCC Dkt. No. 4629 (p. 5)] | • The Amended RSA does not "force" the IP's to take any particular form of consideration. Approval of the Amended RSA will not result in the confirmation of any particular plan, and any plan filed pursuant to the Amended RSA will have to satisfy the Bankruptcy Code's requirements for confirmation. The form of consideration that IPs will ultimately receive will be determined by the plan of reorganization, as confirmed by the Bankruptcy Court, not any restructuring support agreement.<br>• The settlement embodied in the Amended RSA is predicated on a solvent debtor case, where claims of IPs would be satisfied in full.<br>• The issue of consideration can be dealt with even if the Amended RSA is approved via mediation, or negotiations between the Debtors, TCC and Bondholder Group. For example, a plan under which the Bondholder Group receives take back paper or equity at plan value on account of their claims would free up billions of dollars in cash that could be used to pay wildfire victims. | #1 - The court is of the view that the question of whether the $11 billion payment to the Subro Group would force the IP parties to take non-cash consideration is a plan issue that need not be dealt with in consideration of the RSA. | No solution required. |
| 2 | Approving the Amended RSA and its $11 billion cash claim now would | SLF Fire Victims [Oct. 23 Hr'g Tr. at | • The Amended RSA is a major building block in the development of a consensual plan of reorganization. Settlements are encouraged in bankruptcy and the AHG is | #2- The court does not share the view that approval of the | No solution required. |

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|-----------------------------|----------|
| | undermine the mediation order. | 215:19-216:9] | the largest creditor constituency to make a deal with the Debtors to date.<br>• Approving the Amended RSA would increase the odds of a successful mediation because it will eliminate a key issue—the valuation of Subrogation Claims. No party in interest has seriously challenged the reasonableness of allowing the Subrogation Claims in the substantially reduced amount of $11 billion; but no one should assume that the AHG would accept this multi-billion reduction in the context of an attempted retrade of other components of the Amended RSA that are an integral part of this settlement.<br>• Rejecting the settlement will set the case back months by injecting a major new variable into the mediation, causing parties to become further entrenched in their positions and jeopardizing the resolution of these cases on the needed timeline. The Bankruptcy Court should be facilitating deal making not discouraging it. | RSA will undermine the mediation process. | |
| 3 | Motion to approve the Amended RSA should be delayed until the resolution of the estimation proceeding because it guarantees the payment of $11 billion in cash to insurers without regard to other | TCC [Dkt. No. 4629 (pp. 5-6)] | • Section 3(a)(i) of the Amended RSA clarifies that the AHG would not receive an $11 billion cash payment under all plan scenarios.<br>• The Amended RSA does not "guarantee" the receipt of $11 billion in cash—any plan filed pursuant to the Amended RSA must still meet the Bankruptcy Code's tests for confirmation and be confirmed by the Bankruptcy Court. | #3 and #4- The court is satisfied with the explanation provided by the Subro Group. | No solution required. |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 14 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|-----------------------------|----------|
| | potential obligations (*e.g.* estimated IP claims, Kincade Fire claims, etc.). | | • The Debtors have reasonably exercised their business judgment that the multi-billion dollar reduction in the amount of Subrogation Claims under the Amended RSA is a reasonable quid pro quo for the Debtors' commitment to file and pursue a plan that provides for this form of consideration. Any eventual plan that incorporates the terms of the Amended RSA will still need Bankruptcy Court approval.<br>• The issue of consideration can still be dealt with in mediation, or negotiations between the Debtors, Equity Group, TCC and Bondholder Group even if the Amended RSA is approved. For example, a plan could provide for the Bondholder Group (who are not discounting their claims) to receive some take back paper or equity at plan value, that would free up billions of dollars in cash that could be used to pay wildfire victims. | | |
| 4 | Compromise should not be approved until after the Tubbs trial verdict because a victory on Tubbs for the Debtors may mean AHG is getting more than 100 cents on Subrogation Claims. | TCC [Oct. 23 Hr'g Tr. at 153:2-8] | • The very purpose of a settlement is to weigh litigation risk and come to a reasonable resolution. The flip side of the TCC's argument is that in the event of a victory for the plaintiffs in the Tubbs trial, the AHG likely would insist on a far higher aggregate allowed claim to settle its claims.<br>• In any event, in all scenarios, AHG will be able to establish that it is not getting more than 100 cents on their claims, as $15.1 billion has already been paid to victims with billions more to come (before | #3 and #4- The court is satisfied with the explanation provided by the Subro Group. | No solution required. |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 15 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| | | | accounting for any interest or attorneys' fees, both of which are routinely awarded in state court subrogation litigation). | | |
| | _II.    Why the Amended RSA Does Not Violate the Rights of Individual Insured Parties_ | | | | |
| 5 | The Amended RSA impairs insured IPs' rights under the made whole doctrine to be paid in full before subordinated Subrogation Claims. | TCC [Dkt. Nos. 4232 (pp. 10-15), 4629 (p. 5)] | • The TCC is estopped from making class-wide subordination arguments given its previous representations to the Bankruptcy Court, and the TCC/Bondholder plan provides for the same $11 billion allowed claim.  The TCC's backtracking on its agreement to not litigate the subordination issue—a position that now contradicts its own plan—is further evidence of its role as an unreliable negotiation counter party.  Rewarding the TCC's about-face would only further embolden it to continue taking unrealistic bargaining positions and further polarize parties in these cases.<br>• In any event, the TCC's made whole arguments fail on the merits for reasons including:<br> ○ The made whole rule does not dictate the order in which subrogation claimholders and underlying insureds must settle—_Chandler_ is explicit on this point— and subrogation claimholders historically settle before IPs. _See Chandler v. State Farm Mut. Auto. Ins. Co._, 598 F.3d 1115 (9th Cir. 2010).<br> ○ The Amended RSA is predicated on the eventual confirmation of a plan that pays wildfire victims in full | #5- The court will not address the question of whether the TCC is estopped as the Subro Group's explanation is argumentative. It is correct, however, that the RSA is predicated upon confirmation of a plan that must comply with AB 1054. Further, the made-whole doctrine should be considered on a claim-by-claim basis and perhaps needs to be resolved independently of the RSA determination through AP 19-3053. | The RSA and the order approving the RSA would not determine any claimant's made whole rights, if any.  Such parties can assert made whole claims on a claim-by-claim basis, except to the extent such individuals voluntarily agree to settle their claims and execute a release.  Adjudication of the Adversary Proceeding can proceed on its own timeline and does not impact RSA approval.  The Ad Hoc Group will respond to the Complaint by the applicable deadline. |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 16 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| | | | (*i.e.*, pursuant to the absolute priority rule and AB 1054).<br>• California made whole law does not support class wide subordination of Subrogation Claims because (i) the application of the made whole doctrine must be analyzed on a claim by claim basis, and (ii) the insurer participation exception to the made whole rule applies here given the AHG members' participation in the Tubbs trial and estimation proceeding. | | |
| 6 | Insured IP claims and Subrogation Claims are a single and indivisible claim. | TCC [Dkt. Nos. 4232 (pp. 7-8), 4629 (p. 6)] | • The Ninth Circuit's decision in *Chandler* confirms that insurers can pursue and settle Subrogation Claims independently of their insureds.<br>• Insurers may settle first so long as the insureds, in the end, get paid in full, which is fully expected in this case. | #6 and #7- The court agrees with the Subro Group that insurers can pursue and settle claims independently of those of their insureds. Further, 11 U.S.C. § 509 does not appear to be implicated although applicable state law does. | No solution required. |
| 7 | If AHG members claim rights under Bankruptcy Code Section 509, then they are subordinated as co-debtors. If the AHG's members | TCC [Dkt. Nos. 4232 (pp. 10-15), 4629 (p. 5)] | • This argument is based on the false premise that subrogation claimants can seek subrogation only under Bankruptcy Code Section 509 and not under applicable California law. The subrogation claimants are entitled to pursue rights of subrogation under Section 509 *and* under state law. In other words, Section 509 does not | #6 and #7- The court agrees with the Subro Group that insurers can pursue and settle claims independently of those of their | No solution required. |

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|------------------------------|----------|
| | are not co-debtors, then they have no rights under Section 509. | | necessarily define the scope of the AHG's claims, or even necessarily apply to those claims.<br>• Members of the AHG are not co-debtors of PG&E whose claims are subordinated pursuant to Section 509(c) because, under Ninth Circuit case law, codebtor status is reserved for "a limited class of creditors, namely, true co-debtors" such as a "surety, guarantor, or comaker" who are "liable with the debtor on the obligation owed to the creditor." *See Hamada v. Far East Nat'l Bank (In re Hamada)*, 291 F.3d 645, 650 (9th Cir. 2002). Like the issuer of the letter of credit in *Hamada*, the contractual obligation of an insurer to its insured under an insurance policy is the primary obligation of the insurer which exists independently of, and does not depend on, the liability of any third party tortfeasor to the insured. | insureds. Further, 11 U.S.C. § 509 does not appear to be implicated although applicable state law does. | |
| 8 | The proposed settlement violates insurers' and hedge funds' duties of good faith and California insurance regulations. | TCC [Dkt. No. 4232 (pp. 17-18)] | • Insurers' duty of good faith is satisfied by paying what the insured is due under the insurance policy. There is no authority suggesting that an insurer's settlement of a Subrogation Claim can amount to bad faith.<br>• Under the plain terms of the Amended RSA and proposed plan, the AHG will be unable to enforce any releases to the extent they violate California insurance regulations. | #8- The court rejects the contention that the RSA violates the Subro Group's obligations and duties of good faith under California law or California | No solution required. |

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| | | | | insurance regulations. | |
| III. *Why the Amended RSA Releases are Permissible* | | | | | |
| 9 | The Settlement Payment Condition in the Amended RSA would require IPs to give impermissible third-party releases or coerce them into granting such releases. | TCC, U.S. Department of Justice, Civil Division, Adventist Claimants, [Dkt. Nos. 4232, (pp.19-20), 4237 (pp. 3-5), 4239 (pp. 5-8), 4629 (pp. 6-7), 4637 (pp. 2-3)] | • The Settlement Payment Condition does not implicate Ninth Circuit case law, such as *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995), that relies on Section 524(e) of the Bankruptcy Code to prohibit the non-consensual discharge of claims against non-debtors under a plan, or a non-consensual release of the liability of non-debtors by way of a permanent injunction or other Bankruptcy Court order. This is because the Debtors' plan involves neither. Confirmation of the Debtors' plan will not discharge any potential made whole claim, and the Confirmation Order will not enjoin the prosecution of any such claim. *Lowenschuss* and similar cases do not address consensual third party releases that a creditor can choose to provide (or not provide) as part of a settlement. <br> ○ A ruling in the prior PG&E chapter 11 case found a non-debtor release to be permissible, where a claimant *consents* to the release of his or her claims against a non-debtor. *See In re Pac. Gas and Elec. Co.*, 304 B.R. 395, 418 n.26 (Bankr. N.D. Cal. 2004) (finding the legal principle set forth in *Lowenschuss* to be "inapplicable" because "the Plan | #9- The court agrees with the Subro Group. It makes no comment regarding TCC proposed plan's inclusion of third party releases. It also agrees with the Subro Group that the Settlement Payment Condition is not coercive and essentially does leave the parties the same choice absent approval of the RSA. Hard choices are still choices, not coercion. | No solution required. |

Case: 19-30088   Doc# 4921-1   Filed: 12/02/19   Entered: 12/02/19 11:31:05   Page 19 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|------------------------------|----------|
| | | | does not discharge or release nondebtors from claims that belong to others (except the Commission, *which has consented to the release*)") (emphasis added).<br>• This objection mischaracterizes the Amended RSA. The Amended RSA requires that a voluntary settlement of an IP's claim with the Debtor or a plan trust (as applicable) and payment of such a claim be pursuant to a settlement conditioned on the release. If the individual believes that the settlement amount offered by the Debtors or plan trust is inadequate, it can litigate with the Debtors or plan trust (as applicable) for the excess and, in the event it obtains a judgment that the Debtors or plan trust cannot fully satisfy, proceed with any made whole claim it may have against the applicable insurer for the deficiency.<br>    o TCC's own proposed plan includes third-party releases that are granted by electing creditors.<br>• The purpose of subrogation claims is to "prevent the insured from obtaining a double recovery (and thus being unjustly enriched) and to place the responsibility for paying the loss on the party who caused the loss." *See Chandler* 598 F.3d at 1117.<br>    o The Amended RSA release achieves this purpose, and therefore is expressly supported by *Chandler* which permits an insurer to recover | | |

- 20 -

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|------------------------------|----------|
| | | | from the tortfeasor even if the injured party has yet to recover.<br><br>    o  The construct provided under the Amended RSA places the primary responsibility for losses caused by the Debtors on the Debtors, by essentially requiring the IPs first to seek a fully compensatory recovery from the Debtors or plan trust. If the IP is not satisfied with the settlement amount offered by the Debtors or plan trust, rather than absolving the Debtors of liability, the IP may proceed against both the Debtors and underlying insurer to recover the shortfall.<br><br>    o  Indeed, this scenario was expressly addressed in the *Chandler* decision, where the Ninth Circuit said that it "is not convinced that an insured could circumvent the rule espoused by the Court" by simply suing the tortfeasor and settling for $1.00. *Chandler* at 1121. In other words, an insured has no right under the made whole rule to choose to pursue its claim, in whole or in part, against its insurer instead of the tortfeasor.<br><br>•  The release would not extinguish insureds' claims against their insurers for ordinary-course insurance claims by insureds arising under their insurance policies. | | |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 21 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| | | | • In the context of a "paid in full" plan (*i.e.*, the plan contemplated by the Amended RSA), IPs will not have made whole claims in any event (and certainly not on a class-wide basis).<br>    ○ The release comports with the language of AB 1054 and is therefore "belt and suspenders."<br>• The made whole release is needed so that there is not an incentive for the trustee of the individual wildfire trust, or individual lawyers that represent both insured and uninsured claimants, to *overpay* an uninsured claimant because they can *underpay* an insured claimant who retains the right to proceed against his or her insurer, and to prevent the claims from being settled for less than fair value because of the perceived ability to pursue the insurers.<br>• The objection that the Settlement Payment Condition is "coercive" because it "forces" IPs to either settle with the plan trust or take his or her chances litigating against the Debtors or the plan trust ignores that IPs would have essentially the same choice absent the proposed settlement. That is, the individual would have to choose between settling with or litigating against the Debtors to recover his or her losses. If forcing the individual to choose between settlement and litigation is unacceptably coercive, there is no settlement framework that would survive scrutiny. | | |

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| | | | • The Settlement Payment Condition is equitable—the AHG is giving up approximately $9 billion in claims. | | |
| **IV.** | **Why Specific Amended RSA and Form of Release Provisions are Permissible** | | | | |
| 10 | The Allowed aggregate subrogation claim is potentially non-binding in the event the Debtors are insolvent. Thus, the AHG has a one-way option to pursue a higher claim amount, and the proposed settlement does not benefit the Debtors' estates or creditors. | UCC, Bondholder Group, Governor Newsom [Dkt. Nos. 4236 (pp. 3-5), 4241 (p. 4), 4640 (pp. 4-5)] | • Termination provisions, triggered by circumstances that frustrate a party's purpose in entering into the agreement and are beyond its control, are routine contractual terms. Such provisions are often structured as "one way options" because individual parties have divergent purposes for entering into the agreement, and one party's purpose may be frustrated by a development that is of little significance to the other party.<br><br>• The Debtors also have "one way" options in certain circumstances under the Amended RSA—*e.g.*, in the event of a default by Consenting Creditors holding at least 5% of RSA claims, the Debtors can elect to terminate and eliminate the Allowed aggregate subrogation claim in favor of litigating the claim amount or not terminate and hold the Consenting Creditors to the $11 billion allowed claim.<br><br>• The AHG negotiated a "one-way" option in the insolvency context (just as the Debtors negotiated a one-way option in other contexts) because the $11 billion settlement is premised on receiving $11 billion in value from a solvent debtor. If the Debtors are insolvent—which is outside the control of the AHG—then, in addition to the risk of | #10- See comment above (I, #4) regarding the consequence of Debtors being determined to be insolvent.<br><br>*Comment I, #4*: "This portion of the RSA addresses a situation that may exist "provided…the Bankruptcy Court determines Debtors are insolvent…." As a practical matter the court may not be able to make such a determination without the initiation of a contested matter, opposition thereto, etc. The court believes the | See discussion on item I.4 |

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|-----------------------------|----------|
| | | | not receiving the bargained for $11 billion in value, the Consenting Creditors (i) would be subject to potential further reduction from made whole claims asserted by insured IPs, and (ii) would be able to seek a higher claim amount, but subject to challenges by parties in interest. The circumstances that would permit the Consenting Creditors to seek a higher claim amount are all outside of their control. | more appropriate outcome would be that the Debtors, if they concede that they are insolvent, would terminate the RSA. Following any such determination, there would be no precondition that any such revised plan would not – or would – subordinate the Subro Group claims to the IP Claims." | |
| 11 | Amended RSA approval would give AHG ability to assert $20 billion claim on eve of confirmation in insolvent case thereby causing undue delay | UCC [Oct. 23 Hr'g Tr. at 216:18-217:9] | • The AHG will make a strategic choice when it comes to voting for or against an insolvent plan, whether it wants to keep its claim or pursue a higher claim. Practically speaking this can't happen on the eve of confirmation.<br>• The objectors have offered no explanation of how the Debtors could satisfy AB 1054 in a scenario where they are insolvent; and, if insolvency would in any event render the Debtors unable to satisfy AB 1054, the Debtors will not need to emerge by the end | #11- The court agrees that the Subro Group can make a strategic decision about voting for or against the plan. Either way, AB 1054 says what it says if Debtors are unable to emerge by its deadline. The | No solution required. |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 24 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| | | | of June 2020. The June 30 deadline would therefore be irrelevant.<br>• This argument is entirely speculative. If the Amended RSA terminates, the most likely scenario is a renegotiated claim amount or a litigated confirmation fight that will determine an appropriate reserve. That process need not unduly delay anything. | consequences of a $20 billion claim asserted by the Subro Group need not be addressed at this point. | |
| 12 | Amended RSA requirement that the AHG vote against the TCC/Bondholder plan is unreasonable. | TCC, UCC, Bondholder Group, Governor Newsom [Dkt. Nos. 4232 (p. 24), 4236 (pp. 6-7), 4241 (p. 3), 4640 (p. 5)] | • This provision is a common feature in other restructuring support agreements. Indeed, many of the objecting parties and their counsel have negotiated or participated in restructuring support agreements involving similar provisions in other cases. Such a provision does not prevent a global resolution with other parties in interest.<br>• The termination of exclusivity does not make this provision unreasonable. It is a common term in restructuring support agreements; it is meaningless except in a context where exclusivity has been lifted; and the existence of competing plans is the fact pattern where it is particularly relevant (in fact, this is the *only* circumstance where such a provision is relevant at all). | #12 - The court agrees with the Subro Group that the RSA can include common features found in other restructuring support agreements. | No solution required. |
| 13 | Release language should not require acknowledgment that releasing party is "paid in full" | Adventist Claimants [Dkt. No. 4637 (p. 3)] | • The Amended RSA's form of release ("Form of Release") was filed to narrow concerns.<br>• The Form of Release has been narrowly tailored to release only made whole claims, and the AHG remains willing to work with objectors on further refinements on this point ahead of confirmation. | #13 and #14 - The RSA releases appear to be symmetrical and reciprocal and need not be disapproved. | No solution required. |

Case: 19-30088   Doc# 4921-1   Filed: 12/02/19   Entered: 12/02/19 11:31:05   Page 25 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| 14 | Release language should not be limited to insurers releasing victims for claims to amounts recovered "from the Debtors" | Adventist Claimants [Dkt. No. 4637 (pp. 3-4)] | • The Amended RSA's Form of Releases was designed to be purely symmetrical. Said differently, the injured party is asked to release made whole claims against its insurer (*i.e.* claims to the insurer's recovery from the Debtors), and in return the insurers will be deemed to release any claims to the amounts injured parties recover from the debtors. | #13 and #14 - The RSA releases appear to be symmetrical and reciprocal and need not be disapproved. | No solution required. |
| 15 | Releases should be signed, not ordered through a confirmation order. | Adventist Claimants [Dkt. No. 4637 (pp. 3-4)] | • The AHG did not want to hold up payments to insureds while insurers were tracked down to sign individual mutual releases. So the confirmation order mechanism in the Amended RSA was born out of convenience and a desire to facilitate swift payments to victims from a plan trust.<br>• Currently holders of an estimated 96% in dollar amount of Subrogation Claims and over 80% in number of all claimants have signed up to the Amended RSA. The mutual release is unquestionably consensual as to those parties. | #15 - The notion of including consents by fire victims as part of a confirmation order implicates the adequacy of any disclosure statement. The court prefers a simple statement included in any ballot submitted to and returned by the fire victims. | To be addressed in the proposed ballots. Does not impact approval of the RSA. |
| 16 | Why are government entities not required to sign similar releases? | Adventist Claimants [Dkt. No. 4637 (p. 3)] | • Most government agencies have settled their Subrogation Claims.<br>• Insurance carriers are less concerned about made whole risk associated with such claims. | #16 – The court has no comment. | No solution required. |
| V. | *The Applicable Standard of Review is Deferential to the Debtors' Business Judgment* | | | | |
| 17 | The proposed settlement and | TCC [Dkt. Nos. 4232 | • *In re A & C Props.*, 784 F.2d 1377 (9th Cir. 1986) establishes the test for evaluating a | #17 - While *A & C Properties* is | The TCC cites to *In re AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984) |

Case: 19-30088   Doc# 4921-1   Filed: 12/02/19   Entered: 12/02/19 11:31:05   Page 26 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|---|---|---|---|---|
| | entry into the Amended RSA should be subject to a heightened version of the "fair and equitable" standard rather than the more deferential business judgment standard because it was negotiated between the Debtors and an insider. | (pp. 5-7), 4629 (pp. 5-7)] | Rule 9019 settlement motion in the Ninth Circuit.<br> ○ When evaluating a 9019 motion, "[i]t has been held that the court's proper role is "'to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004) (internal citations omitted).<br>• The Debtors are authorized to use estate property outside of the ordinary course of business upon a showing that the Debtors have exercised their business judgment. *See In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification.").<br>• There is no factual basis for applying a different test here. Baupost is not an "insider" as defined by Section 101(31) of the Bankruptcy Code for reasons including: (i) it is not an officer, director, affiliate, managing agent or partner of the Debtors, and (ii) it is not a "person in control" of the Debtors as evidenced by Baupost (a) holding less than 5% of the currently traded common shares, and (b) not being part of the Jones Day-represented shareholder group. | generally the authority to test the reasonableness of a settlement under Fed. R. Bankr. P. 9019, the court is inclined to agree with the TCC that scrutiny under the "fair and equitable" test appears appropriate in this case. | for the proposition that the court should review the proposed settlement under the "fair and equitable" standard. The *AWECO* court applied the "fair and equitable" standard because that settlement contemplated a *distribution* to junior creditors prior to confirmation of any plan over the objection of senior creditors. Approving the RSA does not result in any immediate distribution. Whether the distributions in this case are ultimately fair and equitable can be determined at the Confirmation Hearing.<br><br>Even if the "fair and equitable" standard applies, the RSA settlement satisfies the four relevant factors set forth in *A&C Properties*: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. As explained in the Debtors' original motion seeking approval of the RSA [Dkt. No. 3992] and its |

Case: 19-30088 Doc# 4921-1 Filed: 12/02/19 Entered: 12/02/19 11:31:05 Page 27 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|-----------------------------|----------|
| | | | • Baupost is one member of a group that contains over 100+ institutions, the overwhelming majority of which are the insurance companies that acquired their claims by compensating victims of the fires. | | reply in support of the motion [Dk. No. 4339], the RSA settlement is fair and equitable for multiple reasons, including it (a) resolves highly complex, uncertain and highly fact specific litigation involving twenty-two separate fires and thousands of claims, and (b) represents an approximately 45% reduction in the value of the claims being asserted by the Ad Hoc Subrogation Group, thereby benefiting all estate creditors. Under the "fair and equitable" standard the court's role is "'to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004); *see also In re College Properties, Ltd.*, 2007 WL 7540957 (9th Cir. B.A.P. Aug. 14, 2007) (implying fair and equitable standard applies to evaluation of settlement involving insider); *In re Pac. Gas and Elec. Co.*, 304 B.R. 395, 404 (Bankr. N.D. Cal. 2004) (approving settlement under fair and equitable standard that provided release of insiders). Accordingly, applied |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 28

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|-----------------------------|----------|
| | | | | | here, the RSA settlement satisfies the fair and equitable standard. |
| **VI.** ***Remaining Objections Should be Overruled*** | | | | | |
| 18 | The settlement is an impermissible *sub rosa* plan | TCC [Dkt. No. 4232 (pp. 24-25). | • Establishing the existence of a *sub rosa* plan in the context of a settlement is a high burden that is satisfied only in "extreme circumstances." *See In re Tower Auto. Inc.*, 241 F.R.D. 162, 169 (S.D.N.Y. 2006) (internal citations omitted); *In re McClure*, 2015 WL 1607365, at *8 (Bankr. C.D. Cal. Apr. 2, 2015) ("First, it is not clear that the *sub rosa* plan objection applies to anything other than § 363 sales, and ***possibly*** settlement agreements.") (emphasis added). <br>• Chapter 11's requirements are not being "short circuited"—the effectiveness of the Debtors' Plan contemplated by the settlement is contingent on a yet to come plan confirmation process and confirmation order. Distributions to the various classes of creditors set forth in the Debtors' plan will not be made until the Bankruptcy Court confirms such plan. | #18 and #19 - The exigencies of this complex case are such that the court is not worried that approval of the RSA constitutes an impermissible *sub rosa* plan, nor does it constitute impermissible solicitation under 11 U.S.C. § 1125. | No solution required. |
| 19 | Impermissible solicitation pursuant to Section 1125 | BOKF, U.S. Department of Justice, Civil Division [Dkt. Nos. 4231 (p. 6); 4237 (p.5)] | • No violation of Bankruptcy Code Section 1125(b) exists here because there was no specific request for an official vote to either accept or reject a plan. In fact, Section 2(a)(ii) of the Amended RSA requires each Consenting Creditor to covenant to "vote or cause to be voted (when solicited to do so in accordance with this Agreement after receipt of a Disclosure Statement approved | #18 and #19 - The exigencies of this complex case are such that the court is not worried that approval of the RSA constitutes an impermissible | No solution required. |

Case: 19-30088   Doc# 4921-1   Filed: 12/02/19   Entered: 12/02/19 11:31:05   Page 29 of 30

| # | Objection | Objecting Party | AHG Brief Response | Judge Montali Considerations | Solution |
|---|-----------|-----------------|--------------------|------------------------------|----------|
| | | | by the Bankruptcy Court and by the applicable deadline for doing so)…" <br>• The first words on the Amended RSA are in bold and capitalized: "This Agreement is not, and shall not be deemed, a solicitation for consents to any chapter 11 plan of reorganization pursuant to sections 1125 and 1126 of the Bankruptcy Code…" <br>• Post-petition RSAs are allowed in the Ninth Circuit, so long as the agreements are not actually requests for an official vote. See In re Nesbitt Portland Property LLC, 2013 WL 4401333 at *2 (Bankr. C.D. Cal. June 19, 2019);  In re Art and Architecture Books of the 21st Century, (Bankr. C.D. Cal.), Case No. 2:13-bk-14135-RK, Dkt. No. 1807 (approving post-petition plan support agreement barring party to vote in favor of alternate transaction). | *sub rosa* plan, nor does it constitute impermissible solicitation under 11 U.S.C. § 1125. | |

Case: 19-30088    Doc# 4921-1    Filed: 12/02/19    Entered: 12/02/19 11:31:05    Page 30 of 30