Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email:  rjulian@bakerlaw.com
Email:  cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:  esagerman@bakerlaw.com
Email:  drichardson@bakerlaw.com
Email:  lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>　　　-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>　　　　　　　　　　　**Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS (SUBSTANTIVE) TO NO LIABILITY CLAIMS FILED BY THE DEPARTMENT OF HOMELAND SECURITY / FEDERAL EMERGENCY MANAGEMENT AGENCY (CLAIM NOS. 59692, 59734 & 59783)**<br><br>Date:　　　January 14, 2020<br>Time:　　　10:00 a.m. (Pacific Time)<br>Place:　　　United States Bankruptcy Court<br>　　　　　　Courtroom 17, 16th Floor<br>　　　　　　San Francisco, CA 94102<br><br>Objection Deadline: December 31, 2019 |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.   JURISDICTION ................................................................................................. 2

III.   RELIEF REQUESTED ...................................................................................... 2

IV.   BACKGROUND ................................................................................................ 2

    A.   The Wildfires and the Disaster Declarations ......................................... 2

    B.   The Wildfire Claims .............................................................................. 4

    C.   The FEMA Claims ................................................................................. 4

V.   BASIS FOR RELIEF REQUESTED .................................................................. 6

    A.   Section 317 of the Stafford Act ............................................................ 6

        1.   Free Public Services Doctrine .................................................... 6

        2.   Statutory Exception .................................................................. 10

    B.   Public Nuisance and Unjust Enrichment Claims ................................. 12

        1.   Reference to Definitions and Unjust Enrichment Are Not Claims .......... 12

        2.   State Law Claims are Precluded Under the Free Public Services Doctrine ............................................................................................. 13

        3.   FEMA's Common Law Claims are Displaced or Preempted by Federal Law ...................................................................................... 13

    C.   Void as Against Federal Policy ............................................................ 15

VI.   RESPONSES TO THIS OBJECTION ............................................................. 15

VII.   RESERVATION OF RIGHTS .......................................................................... 15

VIII.   COMPLIANCE WITH BANKRUPTCY LOCAL RULE 3007-1 ................... 16

IX.   NOTICE ........................................................................................................... 16

X.   NO PREVIOUS REQUEST ............................................................................. 16

XI.   CONCLUSION ................................................................................................. 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

Page(s)

**Cases**

*Allenton Volunteer Fire Dep't v. Soo Line R.R.*,
  372 F. Supp. 422 (E.D. Wis. 1974) ................................................................................7, 9, 11

*Baldwin v. United States*,
  921 F.3d 836 (9th Cir. 2019) ........................................................................................10

*In re Baldwin*,
  249 F.3d 912 (9th Cir. 2001) ........................................................................................11

*Berkely v. Dowds*,
  152 Cal. App. 4th 518, 61 Cal. Rptr. 3d 304 (Cal. Ct. App. 2007) ...........................12

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
  719 F.2d 322 (9th Cir. 1983) .................................................................................. *passim*

*County of Lassen v. State of Cal.*,
  4 Cal. App. 4th 1151, 6 Cal. Rptr. 2d 359 (Cal. Ct. App. 1992)......................7, 9, 13

*County of San Luis Obispo v. Abalone Alliance*,
  178 Cal. App. 3d 848, 223 Cal. Rptr. 846 (Cal. Ct. App. 1986)......................7, 9, 13

*Dist. of Columbia v. Air Fla., Inc.*,
  750 F.2d 1077 (D.C. Cir. 1984) ...................................................................................7, 9

*Fla. Farm Bureau Gen. Ins. Co. v. Voncille Jernigan*,
  No. 3:09cv145, 2010 WL 3927816 (N.D. Fla. Sept. 30, 2010) ................................13

*State of Hawaii ex rel. Attorney General v. FEMA*,
  294 F.3d 1152 (9th Cir. 2002) ......................................................................................12

*In re King Street Invs., Inc.*,
  219 B.R. 848 (B.A.P. 9th Cir. 1998) ...............................................................................6

*Koch v. Consol. Edison Co. of New York, Inc.*,
  468 N.E.2d 1 (N.Y. 1984) ...............................................................................................7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

*Estate of Kramme v. Kramme*,

    20 Cal. 3d 567, 573 P.2d 1369 (Cal. 1978)............................................................................11

*Mason v. Witt*,

    74 F. Supp. 2d 955 (E.D. Cal. 1999)...................................................................................13

*Montalov v. Spirit Airlines*,

    508 F.3d 464 (9th Cir. 2007)........................................................................................13, 15

*Native Village of Kivalina v. ExxonMobil Corp.*,

    696 F.3d 849 (9th Cir. 2012)........................................................................................13, 15

*Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*,

    954 F.2d 1279 (7th Cir. 1992)...........................................................................................7

*People v. Wilson*,

    240 Cal. App. 2d 574, 49 Cal. Rptr. 792 (Cal. Ct. App. 1966)........................................7, 9, 13

*In re Pugh*,

    157 B.R. 898 (B.A.P. 9th Cir. 1993)....................................................................................6

*Town of Freetown v. New Bedford Wholesale Tire, Inc.*,

    423 N.E.2d 997 (Mass. 1981)........................................................................................8, 9

*Town of Howard v. Soo Line R.R.*,

    217 N.W.2d 329 (Wis. 1974)..........................................................................................8, 9

*United States v. Standard Oil Co. of Cal.*,

    332 U.S. 301 (1947).....................................................................................................7, 9

*Walker County v. Tri-State Crematory*,

    643 S.E.2d 324 (Ga. Ct. App. 2007)....................................................................................8

*Webb v. Smart Document Solutions, LLC*,

    499 F.3d 1078 (9th Cir. 2007)..........................................................................................10

*Wright v. Holm (In re Holm)*,

    931 F.2d 620 (9th Cir. 1991)............................................................................................6

**Statutes**

11 U.S.C. § 502...........................................................................................................1, 2, 6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

1   28 U.S.C. § 157 ...................................................................................................................2

2   28 U.S.C. § 1334 ...............................................................................................................2

3   28 U.S.C. § 1408 ...............................................................................................................2

4   28 U.S.C. § 1409 ...............................................................................................................2

5   31 U.S.C. § 9701 ...............................................................................................................9

6   42 U.S.C. § 5121(b) .........................................................................................................14

7   42 U.S.C. § 5155(c) ....................................................................................................12, 14

8   Cal. Civ. Code § 3479 ....................................................................................................5, 12

9   Cal. Civ. Code § 3480 ....................................................................................................5, 12

10   **Other Authorities**

11   134 Cong. Rec. H10840-02 ...............................................................................................10

12   134 Cong. Rec. H938-03 ...................................................................................................10

13   Fed. R. Bankr. P. 3007 ...........................................................................................1, 2, 6, 16

14   Local Bankr. Rule 3007-1(a) .............................................................................................16

15   Local Bankr. Rule 5011-1(a) ...............................................................................................2

16   Local Bankr. Rule 3007-1 .......................................................................................1, 2, 16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**THIS OBJECTION SEEKS TO DISALLOW AND/OR MODIFY CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION.**

The Official Committee of Tort Claimants (the "**TCC**") in the chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors (collectively, the "**Debtors**"), hereby files this Objection, pursuant to section 502 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), to each of the claims listed on <u>**Exhibit A**</u> hereto (the "**FEMA Claims**"). For the reasons set forth below, the Debtors have no liability to the Department of Homeland Security / Federal Emergency Management Agency ("**FEMA**") for each of the FEMA Claims. In support of the Objection, the TCC relies on the Declaration of Eric Goodman attached hereto as <u>**Exhibit B**</u>, and respectfully represents as follows:

## I.    <u>INTRODUCTION</u>

The Debtors are liable for the death and destruction caused by the Butte Fire, the North Bay Fires and the Camp Fire. The individuals and businesses impacted by these wildfires have filed over 72,000 proofs of claim. The Debtors are liable to these individuals and businesses for the physical injuries and real property damage proximately caused by their faulty electric lines and equipment. But it does not follow from this that the Debtors are also liable to FEMA.

FEMA has filed claims for over $3.9 billion in the Chapter 11 Cases based on federal assistance provided in response to the Butte Fire, the North Bay Fires and the Camp Fire. FEMA asserts three legal theories of recovery. First, FEMA invokes Section 317 of the Stafford Act, a statute that creates liability when a person intentionally causes a major disaster. Second, FEMA invokes the definitions of "nuisance" and "public nuisance" under California law. Finally, FEMA asserts the right to "restitution" for "unjust enrichment." The assertion of these legal theories is flawed. While the Debtors are convicted felons and are liable to the fire victims, FEMA does not allege that the Debtors intended to cause the fires at issue. Nor does FEMA offer any explanation

Baker & Hostetler llp
Attorneys at Law
San Francisco

as to how the Debtors are liable to FEMA under California law. The FEMA Claims lack sufficient factual allegations, are not *prima facie* valid, and should be disallowed and expunged.

The TCC objects to the FEMA Claims at this time because doing so is necessary to advance the Chapter 11 Cases. The wildfire victims will eventually be asked to vote on a plan of reorganization. FEMA's claims purport to be based on federal statutory and executive authorities and policies whose object is to assist the public and the wildfire victims. The FEMA Claims, if successful, would take money from the wildfire victims in contravention of such framework. For these reasons, and the reasons set forth below, the FEMA Claims are ripe for adjudication and should be disallowed prior to plan confirmation.

**II.  JURISDICTION**

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). The TCC consents to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**III.  RELIEF REQUESTED**

By this Objection, the TCC seeks the entry of an Order, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Bankruptcy Local Rule 3007-1, disallowing and expunging the FEMA Claims listed on **Exhibit A** hereto. A proposed form of order granting the relief requested herein on a final basis is attached hereto as **Exhibit C**.

**IV.  BACKGROUND**

**A.  The Wildfires and the Disaster Declarations**

Butte Fire. On September 9, 2015, a wildfire that became known as the "Butte Fire" started in Amador County, California and quickly spread to Calaveras County, California. *See* Goodman Decl. at Ex. 1. On September 11, 2015, Governor Edmund G. Brown, Jr. issued an emergency proclamation for Amador and Calaveras Counties due to the effects of the Butte Fire. *Id.* at Ex. 2.

2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

On September 22, 2015, the President issued a major disaster declaration under the Robert T. Stafford Disaster Assistance and Emergency Relief Act (the "**Stafford Act**"), 42 U.S.C. §§ 5121 *et seq.*, (FEMA-4240-DR-CA) and authorized FEMA to provide individual assistance for Calaveras County. *Id.* at Ex. 3. On September 24, 2015 and October 8, 2015, the major disaster declaration was amended to authorize public assistance for Calaveras County.

The destruction caused by the Butte Fire affected thousands of people. The Butte Fire burned 70,868 acres, resulted in 2 fatalities, destroyed 965 structures (including 549 homes, 368 outbuildings and 4 commercial properties), and damaged 44 structures. *Id.* at Ex. 4, Part 1, p. 22. The California Department of Forestry and Fire Protection ("**Cal Fire**") found that PG&E and/or its contractors failed to identify potential hazards during its vegetation management program, which led to a tree contacting PG&E's electric line, igniting the Butte Fire. *Id.*

North Bay Fires. On October 8 through October 10, 2017, over a dozen wildfires that became known as the "North Bay Fires" started in Butte, Lake, Mendocino, Napa, Nevada, Solano, Sonoma and Yuba Counties, California. *Id.* at Ex. 5, pp. 27-28. On October 9, 2017, Governor Edmund G. Brown, Jr. issued an emergency proclamation for Napa, Sonoma and Yuba Counties due to the effects of the North Bay Fires. *Id.* at Ex. 6.

On October 10, 2017, the President issued a major disaster declaration under the Stafford Act (FEMA-4344-DR-CA) and authorized FEMA to provide public assistance for Butte, Lake, Mendocino, Napa, Nevada, Sonoma and Yuba Counties. *Id.* at Ex. 7. On October 12, 2017, the major disaster declaration was amended to authorize individual assistance for Sonoma County. *Id.* at Ex. 8. From October 13 to October 15, 2017, the major disaster declaration was amended three more times to authorize public assistance for Solano County and individual assistance for Butte, Lake, Mendocino, Napa, Nevada and Yuba Counties. *Id.* at Exs. 9-11. On November 28, 2017, the major disaster declaration was further amended to authorize additional categories of public assistance for Butte, Lake, Mendocino, Napa, Sonoma and Yuba Counties. *Id.* at Ex. 12.

The destruction caused by the North Bay Fires was unprecedented at the time. The North Bay Fires burned over 245,000 acres, damaged or destroyed 14,700 homes, 3,600 vehicles, and 728 businesses, and resulted in 44 fatalities and hospitalized over 185 others. *See* Debtors' Request for

3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Judicial Notice, *Herndon v. PG&E Corp.*, Adv. Pro. No. 19-03005 (Bankr. N.D. Cal. Mar. 18, 2019), Dkt. No. 10-2, at ¶ J. Cal Fire found that PG&E's faulty equipment and its failure to identify hazards during its vegetation management program ignited 19 of the 21 North Bay Fires. *Id.* at Ex. I, 43. A trial on the Debtors' liability for the Tubbs Fire is scheduled to begin in January 2020.

Camp Fire. On November 8, 2018, what became known as the "Camp Fire" started in Butte County, California. *See* Goodman Decl. at Ex. 13. On November 12, 2018, the President issued a major disaster declaration under the Stafford Act (FEMA-4407-DR-CA) and authorized FEMA to provide public assistance and individual assistance to Butte County. *Id.* at Ex. 14.

The destruction caused by the Camp Fire was unprecedented. The Camp Fire consumed 153,336 acres, caused 85 civilian fatalities, and destroyed 13,972 residences, 528 commercial structures and 4,293 other buildings. *Id.* at Ex. 15, 41. The Camp Fire was caused by unsafe electrical infrastructure owned, operated, and improperly maintained by PG&E. *Id.* at Ex. 13. PG&E has estimated damage claims from the Camp Fire at over $10.5 billion. *Id.* at Ex. 15, 47.

## B.    The Wildfire Claims

The Debtors caused the Butte Fire, the North Bay Fires and the Camp Fire. Individuals and businesses impacted by these fires have filed over 72,000 proofs of claim. The total value of the fire victims' claims is the subject of a contested estimation proceeding.

Government entities also filed proofs of claim in the Chapter 11 Cases. FEMA's claims exceed $3.9 billion. Certain California State Agencies filed claims, including the California Governor's Office of Emergency Services ("**Cal OES**"). Cal OES' claims total $2.8 billion, of which $2.5 billion is for the recovery of amounts paid by FEMA and is, therefore, duplicative of the FEMA Claims. Various public entities also filed claims, including the public entities that purportedly settled with the Debtors for $1 billion. The government claims compete with and have the potential to diminish the funds available to pay individual fire victims and businesses.

## C.    The FEMA Claims

FEMA filed three proofs of claim to recover costs incurred by FEMA in providing assistance to individuals, state and local governments and private non-profits. The first proof of claim (Claim No. 59692) asserts that the Debtors are liable to FEMA for $2.55 billion in funds

4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

expended as a result of the Camp Fire. The second proof of claim (Claim No. 59734) asserts that the Debtors are liable to FEMA for $1.22 billion in funds expended as a result of the North Bay Fires. The third proof of claim (Claim No. 59783) asserts that the Debtors are liable to FEMA for $160 million in funds expended as a result of the Butte Fire.

All three proofs of claim seek to recover costs that fall into three broad categories: (1) *public assistance*—direct assistance and financial assistance to state and local governments, tribal governments, and certain private non-profits for debris removal, emergency protective measures, and permanent repair/replacement of damaged infrastructure; (2) *individual assistance*—financial assistance to individuals and householders for repair/replacement of damaged housing, temporary housing, and other needs, direct temporary housing assistance to individuals and households, and financial assistance to government agencies or non-profits to provide community services for disaster unemployment, crisis counseling, case management, and legal services; and (3) *administrative costs*—FEMA's direct costs incurred in administering its major disaster assistance programs, including wages, travel, support from other federal agencies, support from contractors, temporary facility expenses, and supplies and equipment.

FEMA alleges three bases for why the Debtors are liable for these costs. First, FEMA invokes Section 317 of the Stafford Act (42 U.S.C. § 5160(a)), a statute that creates liability where a person intentionally causes a major disaster. Second, FEMA invokes the definitions of "nuisance" and "public nuisance" under California law (Cal. Civ. Code §§ 3479 & 3480). Finally, FEMA asserts the right to "restitution" for "unjust enrichment" under California law.

Critically, FEMA does not allege that the Debtors intentionally caused the wildfires. FEMA asserts that its assistance was required "by a condition caused by the Debtors," namely, the Debtors' failure to maintain their equipment. But negligence is not the equivalent of intentionally causing a fire or committing arson, which is something FEMA does not allege. Nor does FEMA offer any explanation as to how the definitions of "nuisance" and "public nuisance" or the invocation of the doctrine of "unjust enrichment" provide FEMA with claims against the Debtors.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## V.    BASIS FOR RELIEF REQUESTED

Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).  When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  *See In re King Street Invs., Inc.*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  *See Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 COLLIER ON BANKRUPTCY § 502.02, at 502-22 (Lawrence King, 15th ed. 1991)).

A party wishing to dispute a claim afforded *prima facie* validity must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.*  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  *See In re Pugh*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993).  Ultimately, the burden of persuasion is on the claimant.  *See Holm*, 931 F.2d at 623.

Pursuant to Bankruptcy Rule 3007(d), a party in interest is permitted to file omnibus objections to more than one claim on the bases enumerated therein, which include, among other things, where the "claims were filed by the same entity." Fed. R. Bankr. P. 3007(d).  Here, the FEMA Claims, each of which was filed by the same entity, lack *prima facie* validity because FEMA failed to allege facts that, if true, would support a finding that the Debtors are liable to FEMA.  Because the FEMA Claims lack *prima facie* validity, no affirmative evidence must be offered by the TCC for the Court to disallow and expunge the FEMA Claims.

### A.    Section 317 of the Stafford Act

As to FEMA's first legal theory of liability, FEMA has failed to allege facts sufficient to support legal liability under Section 317 of the Stafford Act (42 U.S.C. § 5160(a)).

#### 1.    Free Public Services Doctrine

Consideration of FEMA's Section 317 claim must begin with the "free public services doctrine," which provides that a governmental entity cannot recover the costs of carrying out public

6

services, including response to fires, from a tortfeasor whose conduct caused the need for the services, absent specific statutory authorization or damage to government-owned property. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 314-17 (1947) (holding that the federal government has no federal common law right to recover costs of medical care and sick pay from tortfeasors who injure soldiers absent legislative action); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (municipality that committed police, fire and other relief measures to major emergency cannot recover from tortfeasor where recovery is not authorized by statute or regulation); *County of Lassen v. State of Cal.*, 4 Cal. App. 4th 1151, 1156-57, 6 Cal. Rptr. 2d 359, 362 (Cal. Ct. App. 1992) (government entity could not recover costs and attorneys' fees incurred in defending class action lawsuit from the State of California absent statutory authorization); *County of San Luis Obispo v. Abalone Alliance*, 178 Cal. App. 3d 848, 858-59, 223 Cal. Rptr. 846, 851 (Cal. Ct. App. 1986) (government entity could not recover costs of abating public nuisance through exercise of police power absent specific statutory authorization); *People v. Wilson*, 240 Cal. App. 2d 574, 576-77, 49 Cal. Rptr. 792, 794 (Cal. Ct. App. 1966) ("No case has been cited, and we have found none, which permits, in the absence of a statute, the recovery of fire suppression expenses by one not protecting his own property. … Thus, recovery for fire suppression expenses by a state or other public agency is a creature of statute."); *accord Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1310 (7th Cir. 1992) (finding costs incurred by public agencies in responding to an oil spill could be recovered from tortfeasor because, even though "courts decline to require tortfeasors to compensate the government for the cost of services" absent statutory authorization under the "free public services doctrine," statute authorized recovery making doctrine inapplicable); *Dist. of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (absent statutory authorization, expenses or extraordinary emergency services District of Columbia expended in cleaning up after a plane crash could not be recovered from airline, alleged negligent tortfeasor); *Allenton Volunteer Fire Dep't v. Soo Line R.R.*, 372 F. Supp. 422, 424 (E.D. Wis. 1974) (fire department could not recover costs of extinguishing fire involving trains from railroad absent statutory authorization); *Koch v. Consol. Edison Co. of New York, Inc.*, 468 N.E.2d 1, 8 (N.Y. 1984) ("The general rule is that public

7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

expenditures made in the performance of governmental functions are not recoverable."); *Town of Freetown v. New Bedford Wholesale Tire, Inc.*, 423 N.E.2d 997, 997-98 (Mass. 1981) (finding that there is "no authority for common law recovery by a town of its expenses in fighting a fire" and that "the right of the town to recover firefighting expenses depends on statute."); *Town of Howard v. Soo Line R.R.*, 217 N.W.2d 329, 330 (Wis. 1974) (liability of railroad for setting grass fire could not be imposed in favor of town absent statutory authorization); *Walker County v. Tri-State Crematory*, 643 S.E.2d 324, 327 (Ga. Ct. App. 2007) ("Georgia, like many jurisdictions, has adopted the common-law free public services doctrine," which provides "that absent specific statutory authorization or damage to government-owned property, a county cannot recover the costs of carrying out public services from a tortfeasor whose conduct caused the need for the services.").

In *City of Flagstaff*, the Ninth Circuit considered whether a municipality—the City of Flagstaff—could recover the cost of police, fire and other relief measures incurred as a result of a major emergency—namely, the derailment of railroad cars carrying petroleum gas—from the tortfeasor who caused the accident. 719 F.2d at 323. The City sued the railroad company on the theory that the city's expenditures were compensable damages, "arising from either or both the railroad's negligence or its conduct of an ultrahazardous activity." *Id.*

The Ninth Circuit held that the "identify of the claimant"—a governmental entity—and "the nature of the cost"—fire-related expenditures incurred as a result of a major disaster—precluded recovery on the theory of the tort presented. *Id.* at 324. The Ninth Circuit found that the "cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service." *Id.* at 323. The Ninth Circuit explained that when "such services are provided by the government and the costs are spread by taxes, the tortfeasor does not expect a demand for reimbursement. This is so even though the tortfeasor is fully aware that private parties injured by its conduct, who cannot spread their risk to the general public, will have a cause of action against it for damages proximately or legally caused." *Id.* Accordingly, under *City of Flagstaff*, for the government to have a cause of action for its damages, "the legislature and its public deliberative process, rather than the court, is

8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the appropriate forum to address such fiscal concerns." *Id.* at 324 (following *Standard Oil*). Thus, recovery is permitted when it is "authorized by statute or regulation." *Id.*

In *City of Flagstaff*, the Ninth Circuit purported to apply "Arizona law," although it did not cite a single Arizona decision. *Id.* at 323 ("having the case before us, we must decide it as we think the Arizona courts would"). As noted above, the free public services doctrine is more firmly rooted in California law. *See County of Lassen*, 4 Cal. App. 4th at 1156-57; *County of San Luis Obispo*, 178 Cal. App. 3d at 858-59; *Wilson*, 240 Cal. App. 2d at 576-77. In fact, the California Court of Appeals' decision in *Wilson* is frequently cited as a foundational decision for the doctrine. *See*, *e.g.*, *Air Fla.*, 750 F.2d at 1080 (citing *Wilson* in support of the "common-law rule" that "absent authorizing legislation, the cost of public services for protection from fire or safety is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service."); *Allenton Volunteer Fire Dep't*, 372 F. Supp. at 423 (citing *Wilson* and finding that "only two cases on the topic of charging for fire suppression expenses have been discussed by the parties, and both have rejected plaintiff's position in the absence of a statute authorizing recovery."); *Town of Freetown*, 423 N.E.2d at 997-98 (citing *Wilson* and finding that there is "no authority for common law recovery by a town of its expenses in fighting a fire."); *Town of Howard*, 217 N.W.2d at 330 (citing *Wilson* to support the proposition that "any liability for the cost of extinguishing a negligently set fire must be imposed by statute as there is no common-law liability permitting a town to charge a railroad for such services or to recover for fire suppression expenses.").

Here, the "identify of the claimant"—the United States or FEMA—and "the nature of the cost"—public assistance, individual assistance and administrative costs resulting from a major disaster—generally preclude recovery. *See City of Flagstaff*, 719 F.2d at 324. The United States, like the City of Flagstaff, has the right to collect revenue through taxation and spread the costs of major disasters. In addition, FEMA, as a federal agency, can adopt user fees for a "service or things of value." *See* 31 U.S.C. § 9701(a) ("It is the sense of Congress that each service or thing of value provided by an agency … to a person … is to be self-sustaining to the extent possible."); 31 U.S.C. § 9701(b) ("The head of each agency … may prescribe regulations establishing the charge for a

9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

service or thing of value provided by the agent."). The *City of Flagstaff* is, therefore, directly on point, which means that the costs FEMA seeks to recover through the FEMA Claims are not recoverable unless expressly "authorized by statute or regulation." *Id.* at 324.

## 2. Statutory Exception

Thus, the key to evaluating FEMA's Section 317 claim is whether Section 317 provides a statutory basis for recovery against the Debtors. Section 317 of the Stafford Act provides:

> Any person who intentionally causes a condition for which Federal assistance is provided under this Act or under any other Federal law as a result of a declaration of a major disaster or emergency under this Act shall be liable to the United States for the reasonable costs incurred by the United States in responding to such disaster or emergency to the extent that such costs are attributable to the intentional act or omission of such person which caused such condition. Such action for reasonable costs shall be brought in an appropriate United States district court.

42 U.S.C. § 5160(a). Section 317 makes a person liable to the United States for disaster-response costs if that person "intentionally" causes a major disaster. *Id.*

The legislative history for Section 317 of the Stafford Act shows that Congress considered, and rejected, a version of Section 317 that would have permitted FEMA to recover based on negligence. *Compare* 134 Cong. Rec. H938-03, 1988 WL 1084748 (Mar. 17, 1988) (language in Section 317 created liability for any "person who negligently or intentionally causes or contributes to a condition …"); *with* 134 Cong. Rec. H10840-02, 1988 WL 182206 (Oct. 21, 1988) (language in Section 317 creates liability for any "person who intentionally causes a condition …").

Further, under the *expressio unius* interpretive canon, Congress' grant of authority for FEMA to recover from a person who intentionally causes harm precludes recovery based on lesser theories of negligence or recklessness. *See Baldwin v. United States*, 921 F.3d 836, 843 (9th Cir. 2019) ("[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (quoting *Hillman v. Maretta*, 569 U.S. 483, 496 (2013)); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1084 (9th Cir. 2007) ("The canon of statutory construction *expressio unius est exclusio alterius* ... 'creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'")

10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(quoting *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)); *Allentown Volunteer Fire Dep't*, 372 F. Supp. at 423 ("[T]he fact that the legislature specifically authorized recovery of fire-fighting expenses in special aggravated circumstances strongly suggests that a right of recovery was not contemplated as a general rule.").

In the FEMA Claims, FEMA points to the fact that Cal Fire found that the Debtors' electrical transmission lines and/or equipment caused the wildfires at issue—the 2015 Butte Fire, the 2017 North Bay Fires and the 2018 Camp Fire. FEMA then quotes Section 317 of the Stafford Act as its statutory authorization and asserts that the costs FEMA expended were required "by a condition caused by the Debtor." 42 U.S.C. § 5160(a). FEMA maintains that this means that Section 317 of the Stafford Act gives it the right to recover $3.9 billion from the Debtors, thus jeopardizing the ability of individual victims and businesses to recover from the Debtors.

Section 317 of the Stafford Act, however, requires that the person "intentionally causes a condition *for which Federal assistance is provided under this Act or under any other Federal law as a result of a declaration of a major disaster or emergency under this Act.*" *Id.* (emphasis added). The "condition" resulting in the provision of assistance and/or the declaration of a major disaster was a wildfire, not the faulty state of the Debtors' transmission lines and/or equipment. *Id.* The conduct required under Section 317 of the Stafford Act is intentionally causing a wildfire, which was the "condition for which Federal assistance" was provided. *Id.*

The phrase "intentionally caused" limits the application of Section 317 of the Stafford Act to intentional torts. Under California law, for a result to be caused "intentionally," the actor must "either desire the result or know, to a substantial certainty, that the result will occur." *Estate of Kramme v. Kramme*, 20 Cal. 3d 567, 572-73, 573 P.2d 1369, 1372 (Cal. 1978). Thus, the actor must intend to produce the harms that ensues and "not simply the act itself." *In re Baldwin*, 249 F.3d 912, 918 (9th Cir. 2001) ("Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'") (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)); 5 Witkin, Summary 11th Torts § 24 (2019) ("An intentional tort is "one in which the actor intends to produce the harm that ensues; it is not enough that he intends to perform the act."). "Willful misconduct" is not an intentional tort, but simply "an aggravated form of

11

Case: 19-30088   Doc# 4943   Filed: 12/02/19   Entered: 12/02/19 16:07:12   Page 16 of 21

negligence, differing in quality rather than degree from ordinary lack of care." *Berkely v. Dowds*, 152 Cal. App. 4th 518, 526, 61 Cal. Rptr. 3d 304, 310-11 (Cal. Ct. App. 2007).

The FEMA Claims simply do not allege that the Debtors intended to cause the wildfires at issue or committed arson. Rather, the FEMA Claims are based on Cal Fire's findings that the Debtors caused the wildfires, which findings do not include that the Debtors acted with the requisite intent necessary to trigger Section 317 of the Stafford Act. FEMA is attempting to twist the statute's language to permit it to recover based on negligence, which, again, is the very standard Congress considered and rejected.

FEMA also invokes Section 312 of the Stafford Act. *See* 42 U.S.C. § 5155(c). But, as the Ninth Circuit's decision in *State of Hawaii ex rel. Attorney General v. FEMA* shows, Section 312 of the Stafford Act gives FEMA the right to seek reimbursement from state agencies and public entities that received assistance from FEMA when benefits are "available" from another source. 294 F.3d 1152, 1165 (9th Cir. 2002). Liability arising under Section 312 of the Stafford Act does not give rise to a direct claim against the Debtors. FEMA has no right to recover from the Debtors under the Stafford Act absent a showing that the Debtors intentionally caused the wildfires, which, again, is a fact that FEMA does not allege in the FEMA Claims.

### B.  Public Nuisance and Unjust Enrichment Claims

FEMA's second and third bases for liability—"public nuisance" and "unjust enrichment" under California law—also fail. These bases for liability are unintelligible as asserted by FEMA in its proofs of claim and are precluded under the "free public services doctrine" as applied by California courts. These bases for liability are also preempted by federal law.

#### 1.  Reference to Definitions and Unjust Enrichment Are Not Claims

The FEMA Claims refer generally to the definitions of "nuisance" and "public nuisance" in Sections 3479 and 3480 of California's Civil Code and principles of "restitution" and "unjust enrichment." FEMA, however, offers no explanation as to why or how the Debtors are liable to FEMA under California law. As a threshold matter, FEMA's general reference to definitions and legal principles is not a cause of action.

12

2. <u>State Law Claims are Precluded Under the Free Public Services Doctrine</u>

To the extent that FEMA is asserting common law claims against the Debtors, such claims fail under the "free public services doctrine," as applied by California courts. As noted above, this doctrine is more firmly rooted in California law than Arizona law—the state law the Ninth Circuit applied in *City of Flagstaff*. 719 F.2d at 322; *see County of Lassen*, 4 Cal. App. 4th at 1156-57; *County of San Luis Obispo*, 178 Cal. App. 3d at 858-59; *Wilson*, 240 Cal. App. 2d at 576-77.

This means that under California law FEMA cannot recover costs of carrying out public services from a tortfeasor whose conduct caused the need for the services absent specific statutory authorization. But, again, FEMA fails to cite any statutory authority supporting its right to recover from the Debtors under California law, relying instead on the definition of "public nuisance" and the doctrine of "unjust enrichment." Neither constitutes a statutory authorization that permits FEMA to recover $3.9 billion from the Debtors' estates.

3. <u>FEMA's Common Law Claims are Displaced or Preempted by Federal Law</u>

Finally, FEMA's claims, to the extent based on federal or state common law, are displaced or preempted by the Stafford Act. Federal common law claims are "displaced" when federal legislation occupies a field that has been made the "subject of comprehensive legislation." *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 856-57 (9th Cir. 2012) (quoting *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981), and finding that right to assert federal common law public nuisance claim was displaced by federal legislation). Such displacement extends to "all remedies" based on such federal common law claims, leaving the claimant with the rights and remedies available under the federal legislation. *Id.* at 857.

Preemption of state law claims exists "when a state law actually conflicts with federal law" or "when federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Montalov v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007); *see Mason v. Witt*, 74 F. Supp. 2d 955, 962-63 (E.D. Cal. 1999) (state law tort claims asserted by insured against insurer under flood insurance policy preempted by provision in national flood insurance program allowing claims for breach of contract); *Fla. Farm Bureau Gen. Ins. Co. v. Voncille Jernigan*, No. 3:09cv145, 2010 WL 3927816, at *5 (N.D. Fla. Sept. 30,

13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2010) (insurer's cause of action for unjust enrichment against insureds that received benefits under a flood insurance policy barred because remedy was not included in national flood insurance program, which established comprehensive regulatory scheme that precluded additional remedies not authorized thereunder).

The Stafford Act is a comprehensive statute. When the Stafford Act was enacted, Congress stated its intent "to provide an orderly and continuing means of assistance by the Federal Government to State and local governments in carrying out their responsibilities to alleviate the suffering and damage" which result from disasters. 42 U.S.C. § 5121(b). Congress stated that it wanted to encourage "the development of comprehensive disaster preparedness and assistance plans, programs, capabilities, and organizations by the States and local governments." *Id.* Congress stated that it wanted to encourage "hazard mitigation measures and reduce losses from disaster, including development of land use and construction regulations." *Id.*

The Stafford Act includes two mechanisms through which FEMA can hold parties "liable" for disaster payments and reduce losses. The first is Section 317 of the Stafford Act, which makes persons who intentionally cause a major disaster or emergency liable to the United States for the costs of responding to such disaster or emergency. *See* 42 U.S.C. § 5160(a). The second is Section 312 of the Stafford Act, which makes persons who receive assistance for a major disaster or emergency liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source. *See* 42 U.S.C. § 5155(c).

The framework established by these provisions presumes that FEMA, absent an intentional tort, will not seek to recover directly from a tortfeasor, but will instead allow parties that received assistance and that can assert claims against a tortfeasor to do so, and then seek reimbursement from those parties rather than competing with them. If FEMA could recover directly from a tortfeasor at common law, there would be no point in authorizing FEMA to seek reimbursement from parties that received assistance, as such recovery would be duplicative. Permitting FEMA to assert claims against a tortfeasor would also place FEMA in direct competition with parties from whom it is entitled to seek reimbursement under Section 312 of the Stafford Act. And, permitting

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FEMA to assert common law claims based on negligent or reckless conduct would render Section 317 of the Stafford Act superfluous.

The Stafford Act comprehensively governs FEMA's recovery of disaster payments. It follows under *Native Village of Kivalina* and *Montalov* that FEMA cannot rely on common law theories of recovery—federal or state—in order to circumvent the sections of the Stafford Act governing the circumstances under which a person is liable to FEMA for disaster-related costs. To hold otherwise would eviscerate the statutory scheme by permitting FEMA to recover under common law doctrines when it cannot recover under the Stafford Act.

## C. Void as Against Federal Policy

The FEMA Claims, as asserted in the Chapter 11 Cases, also fail on policy grounds. FEMA's claims arise from federal statutory and executive authorities and policies whose object is to assist the public and the wildfire victims. FEMA's claims, if successful, would take money from the wildfire victims in contravention of such framework and are thereby not enforceable.

## VI. RESPONSES TO THIS OBJECTION

To contest this Objection, the claimant, here FEMA, must file and serve a written response (a "**Response**") so that it is received no later than December 31, 2019 at 4:00 p.m. (Pacific Time) (the "**Response Deadline**"). Such Response must be filed and served on all "Standard Parties" as defined in, and in accordance with, the *Amended Order Implementing Certain Notice and Case Management Procedures* entered on May 14, 2019 (EFC No. 1996) ("**Case Management Order**"), so as to be received by no later than the Response Deadline. If a claimant fails to timely file and serve a Response by the Response Deadline, the TCC may present to the Court an appropriate Order disallowing and expunging the FEMA Claims without further notice to the claimant or a hearing. The TCC may file and serve a reply to any Response to this Objection. The TCC reserves the right to seek an adjournment of the hearing on any Response to this Objection, which adjournment will be noted on the notice of agenda for the hearing.

## VII. RESERVATION OF RIGHTS

The TCC hereby reserves the right to object in the future to any of the proofs of claim listed in this Objection on any ground, and to amend, modify, and/or supplement this Objection to the

15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  extent an objection to a claim is not granted.  The TCC further reserves the right to respond to any

2  new legal theories advanced by FEMA in any response to this Objection, including legal theories

3  not set forth in the FEMA Claims.  The TCC further reserves the right to commence a proceeding

4  to subordinate any allowed claim held by FEMA or any other governmental entity.

5  **VIII.   COMPLIANCE WITH BANKRUPTCY LOCAL RULE 3007-1**

6           In accordance with Bankruptcy Local Rule 3007-1(a), true and correct copies of the claims

7  that are the subject of this Objection are attached hereto as **Exhibit D**.  To the best of the TCC's

8  knowledge and belief, this Objection and **Exhibit A** comply with Bankruptcy Local Rule 3007-1

9  and Bankruptcy Rule 3007(e).

10  **IX.   NOTICE**

11          Notice of this Objection has been provided to:  (a) the Office of the United States Trustee

12  for the Northern District of California; (b) the parties listed on **Exhibit A** annexed hereto under the

13  heading "Claimant"; (c) the "Standard Notice Parties" as defined in the Case Management Order;

14  and (d) the "Rule 2002 Notice Parties" as defined in the Case Management Order.  The TCC

15  respectfully submits that such notice is sufficient under the circumstances.

16  **X.   NO PREVIOUS REQUEST**

17          No previous request for the relief sought herein has been made by the TCC to this or any

18  other court.

19  **XI.   CONCLUSION**

20          WHEREFORE, the TCC respectfully requests entry of an order, substantially in the form

21  attached hereto as **Exhibit C**, disallowing and expunging the claims listed on **Exhibit A** and

22  granting such other and further relief as this Court deems just and proper.

23  Dated:  December 2, 2019                    BAKER & HOSTETLER LLP

24                                              By:  /s/  Robert A. Julian

25                                              *Attorney for The Official Committee of Tort*
                                                *Claimants*

26

27

28

16