Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:    415-659-2900
Facsimile:    415-659-2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.820.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **-and-** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** **Debtors.** | **ADDITIONAL RESPONSE OF OFFICIAL COMMITTEE OF TORT CLAIMANTS TO DEBTORS' RESTATED RESTRUCTURING SUPPORT AND SETTLEMENT AGREEMENT WITH THE CONSENTING SUBROGATION CLAIMHOLDERS [DKT NO. 4554-1]** |
| □ Affects PG&E Corporation | |
| □ Affects Pacific Gas and Electric Company | |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Date:    December 4, 2019 Time:    10:00 a.m. (Pacific Time) Place:   United States Bankruptcy Court           Courtroom 17, 16th Floor           San Francisco, CA 94102 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The Official Committee of Tort Claimants ("**TCC**") respectfully files this additional response to the Restated Restructuring Support Agreement (the "**Settlement**") [Dkt. No. 4554-1] filed by PG&E Corporation and Pacific Gas & Electric Company ("**PG&E**" and collectively, the "**Debtors**"), and the Ad Hoc Group of Subrogation Claim Holders ("**Subrogation Claimants**"), the Court's Tentative Considerations [Dkt. No. 4872] and the responsive Statement of the Subrogation Claimants [Dkt. No. 4921]. In support of this response, the TCC is filing contemporaneously herewith the Declaration of Xavier Oustalniol (the "**Oustalniol Decl.**").

This response addresses two of the Court's tentative considerations: First, the Court stated that it would consider subordination of Subrogation Claims on a claim-by-claim basis. Second, the Court stated that an insured victim's release of the insurer of made whole claims as a condition of receiving a settlement payment from the trust is legal, because the insured has a choice of consenting to the release or trying his or her claims to judgment (along with the 70,000 other victim trials that would take place over a 10-12 year period of time, if each victim takes this Court up on its solution of trying all claims to preserve the rights against the insurers.)

In response, the Subrogation Claimants filed a "Solution" that says that the insured victims "can assert made whole claims on a claim-by-claim basis, except to the extent such individuals voluntarily agree to settle their claims and execute a release." In other words, the Subrogation Claimants' "Solution" is that this Court will enter a judgment subordinating Subrogation Claims on a claim-by-claim basis in the pending adversary proceeding or at confirmation, and when the victims accept their settlements years later from the resolution trust, they will voluntarily consent to execute releases which would retroactively, years later, undo the subordination judgment entered in the adversary proceeding or at plan confirmation.

This response explains why such a "consensual release" is illegal in the Ninth Circuit, and analyzes the billions of dollars involved in this dispute, which the Subrogation Claimants argue could be reversed retroactively years later in trust administration.

**Releases**

To be clear, there are two distinct releases at issue: (i) an "opt-in" release on the ballot that would release all claims held by fire victims against insurers/subrogation claimholders if it is

- 1 -

checked; and (ii) a second release, only of made whole rights, before any fire victim can receive payment from the estate under any settlement. Ninth Circuit case law is clear that a bankruptcy court lacks jurisdiction to approve the latter, and may lack jurisdiction to approve the former.

In *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985), the Ninth Circuit held that, under Bankruptcy Code section 524(e), a bankruptcy court lacks jurisdiction to approve a plan that contains a release between two non-debtor parties, and **a creditor's consent to the release, as a condition of receiving a payment under the plan, does not cure the court's lack of jurisdiction.** In *Underhill,* the plan released creditors' securities claims against non-debtor insiders. *Id.* at 1431-32. The bankruptcy court approved the plan over the creditors' objection that the court lacked jurisdiction to approve a plan that contained a release between non-debtor parties. On appeal to the Ninth Circuit, the debtor argued that the infirmity in the plan release was cured because the creditors had consented to the release *by accepting payment under the plan*. The Ninth Circuit held that the creditor's consent to the release by accepting a payment under the plan did not cure the court's lack of jurisdiction:

> When a bankruptcy court discharges the debtor, it does so by operation of the bankruptcy laws, not by consent of the creditors. . . .
>
> Consequently, "the **payment** which effects a discharge is not consideration for any promise by the creditors, much less for one to release non-party obligors." . . .
>
> The bankruptcy court "has no power to discharge the liabilities of a bankrupt's guarantors."

769 F.2d at 1432 (emphasis added) *citing Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir. 1982) (per curiam).

The Ninth Circuit cited the Seventh Circuit's decision in *Union Carbide,* which struck down a consent mechanism in a settlement arrangement that is similar to PG&E's settlement release in this case:

> Acceptance and confirmation of this Arrangement shall constitute a full settlement, satisfaction and discharge of all claims, demands, actions, causes of action or otherwise against not only the Debtor, but also against any other persons or entities who have entered into guaranty or indemnity agreements with unsecured creditors or who have endorsed commercial paper for the benefit of the Debtor.

686 F.2d at 594.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

With respect to the idea that creditors, like the victims here, have a "choice" to consent to the release, the Seventh Circuit provided this analysis, which seems appropriate for this PG&E case also:

> A creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings, simply because the gamesmanship importuned from state contract law into the bankruptcy proceedings would be intolerable.

In summary, in three separate decisions the Ninth Circuit has held that this rule is "jurisdictional," and that a bankruptcy court's inability to approve a third-party release in a plan is not a matter of a creditor's consent or choice, but of *the court's lack of authority to approve a non-debtor release*. *See In re Lowenschuss,* 67 F.3d 1394, 1401-02 (9th Cir. 1995) (holding that the bankruptcy court "lacks the power" to discharge liabilities of non-debtors); *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621, 626 (9th Cir. 1989) ("no power"); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985) ("no power").

This issue is an important one that involves billions of dollars of recoveries for the victims, as we will explain in the next section. *See*, *e.g.*, Order on Applicability of Inverse Condemnation; Rule 54(b) Certification, at 3 [Dkt No. 4949] ("this issue determines Debtors' liability for billions of dollars and shapes the outline of a Chapter 11 plan and this case in general."). Accordingly, if this Court concludes the Court has the power to approve a plan term that creates a release between non-debtor parties, the insured victims and their insurers, the TCC requests that the Court certify that decision to the Ninth Circuit now so the victims do not need to delay their settlements with the Resolution Trust until the dispute is resolved.

Both the settlement release, and the opt-in ballot release, are also both unfair because they are not mutual:  the insurers have a claim against the insureds for recovery of payments made by PG&E to the insureds, and the insureds have claims against the insurers under the made whole rule, among other claims.  Any fair release would be mutual.  But the plan and RSA settlement set up two separate one-sided releases—one in the ballot, and one in any settlement for payment—which subjects the victims to more uncertainty and financial impairment, here from the very insurers who are supposed to put the insured victims' rights first.  The one-sided aspect of both releases renders

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

them unfair by definition, and unworthy of the imprimatur of this Honorable Court. Moreover, no release should be permitted to release open insurance claims, ongoing coverage disputes, or any claims that are not related to the Debtors' liability to insureds.

**Made Whole**

The TCC's financial consultants have begun reviewing the attachments recently filed by each Subrogation Claimant to its proof of claim, as well as files prepared by the Debtors' experts that were recently made available. This analysis is ongoing and is not complete. *See* Oustalniol Decl. at ¶¶ 8-10. Pursuant to the Wildfire Subrogation Claimant Proof of Claim Form, which is Exhibit A-3 to the Court's bar date order dated July 1, 2019 [Dkt. No. 2806], the Subrogation Claimants were required to submit detailed information on the "Attachment 1s" to support their proofs of claim by November 21, 2019, 30 days after the Bar Date. The TCC's financial consultants have been able to determine, as a preliminary manner, that of the 59,877 records included in the Subrogation Claims, 27,993 have unique IDs that correspond to records that can be found in Prime Clerk. *Id.* at ¶ 16. This indicates that potentially $10.8 billion or more of the Subrogation Claimants' claims correspond on a claim-by-claim basis to individual wildfire claims filed against the Debtors and thus are subject to mandatory subordination under California law. *See id.* It appears that the Debtors have failed to undertake any analysis on this issue. *Id.* at ¶ 7.

In support of the Debtors' original motion to approve the Settlement [Dkt. No. 3992] ("**Motion**"), the Debtors submitted the Declaration of Jason P. Wells [Dkt. No. 3993] ("**Wells Declaration**"), which stated that "[t]he aggregate amount of Subrogation Claims that may be asserted in these Chapter 11 Cases are likely in excess of $20 billion," and does not contain an analysis of whether any of those claims are subject to California's subordination law. Mr. Wells did not set forth any evidence showing that these claims were actually filed.

The TCC objected to the Motion [Dkt. No. 4232], arguing on page 21 that the Wells Declaration did not provide any fact specific analysis of the Rule 9019 factors. The Adventist Claimants, in their opposition to the Motion [Dkt. No. 4239], argued on page 4 that the Wells Declaration lacks evidence to demonstrate personal knowledge of the facts, and that no evidence was presented to show the amount of current claims. These objections remain unresolved.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## **CONCLUSION**

Wherefore, for all of the reasons argued herein and in the TCC's oppositions to the 9019 Motion, the TCC respectfully requests that this Court deny the Motion. If the Court approves the Motion, the TCC requests that the Court certify the decision to the Ninth Circuit.

Dated: December 3, 2019

BAKER & HOSTETLER LLP

By:  _/s/ Robert A. Julian_
       Robert A. Julian

_Counsel to the Official Committee of Tort Claimants_

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO