WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' RESPONSE TO THE OPPOSITIONS FILED BY THE UNITED STATES OF AMERICA, THE STATE OF CALIFORNIA AND ADVENTIST HEALTH ON CERTAIN CLAIMS SUBJECT TO ESTIMATION UNDER SECTION 502(c) OF THE BANKRUPTCY CODE**<br><br>Date: December 17, 2019<br>Time: 10:00 a.m. PST<br>Place: United States Bankruptcy Court<br>　　　　Courtroom 17, 16th Floor<br>　　　　San Francisco, CA 94102 |

| | |
|---|---|
| 1 | PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company |
| 2 | (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in |
| 3 | the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), filed a notice on November 1, |
| 4 | 2019, that designated certain claims filed by the United States of America (including any |
| 5 | department, agency or instrumentality thereof, the "**U.S.A.**"), the State of California (including any |
| 6 | department, agency or instrumentality thereof, the "**State**"), and Adventist Health System/West and |
| 7 | Feather River Hospital d/b/a Adventist Health Feather River ("**Adventist**") (collectively, the |
| 8 | "**Opposing Parties**"), are unliquidated and subject to estimation under Section 502(c) of Title 11 |
| 9 | of the United States Code (the "**Bankruptcy Code**"), (Dkt. 4553), (the "**Notice**"). |
| 10 | The Debtors hereby submit this response to the *Opposition of the United States of* |
| 11 | *America to Notice of Debtors' Designation of Claims Filed by the United States of America, the* |
| 12 | *State of California and Adventist Health System as Unliquidated and Subject to Estimation under* |
| 13 | *Section 502(c) of the Bankruptcy Code*, (Dkt. 4771), (the "**U.S.A. Opposition**"); *Response of the* |
| 14 | *California State Agencies to Debtors' Notice of Designation of Claims Filed by the State of* |
| 15 | *California as Unliquidated and Subject to Estimation under Section 502(c) of the Bankruptcy Code* |
| 16 | *[Docket No. 4553]*, (Dkt. 4774), (the "**State Opposition**"); and *The Adventist Claimants' Objection* |
| 17 | *to the Notice of Debtors' Designation of Claims Filed by the United States of America, the State of* |
| 18 | *California and Adventist Health System as Unliquidated and Subject to Estimation under Section* |
| 19 | *502(c) of the Bankruptcy Code [DE # 4553]*, (Dkt. 4783), (the "**Adventist Opposition**", and |
| 20 | collectively with the U.S.A. Opposition and the State Opposition, the "**Oppositions**"). |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. IV

MEMORANDUM AND POINTS OF AUTHORITIES ........................................................... 1

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 3

    A. The Northern California Wildfires ................................................................. 3

    B. The Estimation Motion. ................................................................................. 4

    C. The Estimation Decision and Withdrawal of Reference ............................... 4

    D. Proceedings Following the Withdrawal of Reference ................................... 4

    E. The Debtors' Designation and the Oppositions ............................................ 5

III. ARGUMENT ............................................................................................................... 7

    A. Legal Standards ............................................................................................ 7

    B. Because there is a bona fide dispute as to the Debtors' liability, the Contested Claims are not subject to ready determination. ................................................ 9

    C. The nature of the dispute here renders the claims unliquidated and subject to estimation. .................................................................................................... 12

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*F.D.I.C. v. Wenberg (In re Wenberg)*, 94 B.R. 631 (B.A.P. 9th Cir. 1988),
  *aff'd*, 902 F.2d 768 (9th Cir.1990) ............................................................................1, 8, 11

*Graves v. Arpaio,* 623 F.3d 1043 (9th Cir. 2010) ..................................................................9

*In re A & B Assocs., L.P.*, No. 17-40185-EJC, 2019 WL 1470892
  (Bankr. S.D. Ga. Mar. 29, 2019) ..........................................................................................7

*In re Audre, Inc.*, 202 B.R. 490 (Bankr. S.D. Cal. 1996), *aff'd*, 216 B.R. 19
  (B.A.P. 9th Cir. 1997) .........................................................................................................13

*In re Audre, Inc.*, 216 B.R. 19 (B.A.P. 9th Cir. 1997) ..........................................................13

*In re Duque*, No. CC-05-1069-MaMcB, 2005 WL 6960181
  (B.A.P. 9th Cir. Dec. 30, 2005) .......................................................................................9, 4

*In re Enriquez*, 315 B.R. 112 (Bankr. N.D. Cal. 2004) .........................................................9

*In re Ho*, 274 B.R. 867 (B.A.P. 9th Cir. 2002) ............................................................. passim

*In re Keenan* 201 B.R. 263 (Bankr. S.D. Cal. 1996) .....................................................12, 13

*In re Lane*, 68 B.R. 609 (Bankr. D. Hawaii, 1986) ............................................................7, 8

*In re Lionel, L.L.C.*, No. 04-17324, 2007 WL 2261539
  (Bankr. S.D.N.Y. Aug. 3, 2007) .........................................................................................13

*In re N. Am. Health Care, Inc.*, 544 B.R. 684 (Bankr. C.D. Cal. 2016) ...............................8

*In re Nicholes*, 184 B.R. 82 (B.A.P. 9th Cir. 1995) ....................................................8, 9, 12

*In re Nova Real Estate Inv. Tr.*, 23 B.R. 62 (Bankr. E.D. Va. 1982) ...................................8

*In re Slack*, 187 F.3d 1070 (9th Cir. 1999) .................................................................. passim

*In re Sylvester*, 19 B.R. 671 (B.A.P. 9th Cir. 1982) .......................................................8, 12

*Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999) ...................................................................10

**Statutes & Rules**

11 U.S.C. § 502(c) ........................................................................................................ passim

11 U.S.C. § 502(b) ...............................................................................................................2, 7

Pub. Util. Code § 2106 ............................................................................................................3

**Other Authorities**

6 Witkin, Summary 11th Torts § 1912 (2019)........................................................................................1

House Report No. 95–595 95th Cong., 1st Sess. 354 (1977) ................................................................8

Senate Report No. 95–989, 95th Cong., 2nd Sess. 65 (1978)................................................................8

CAL FIRE, Butte Fire Report (Apr. 28, 2016) .....................................................................................3

# MEMORANDUM AND POINTS OF AUTHORITIES

## I. INTRODUCTION

The Debtors filed these Chapter 11 Cases mainly because of the tragic wildfires that occurred in Northern California in 2015, 2017 and 2018. PG&E filed these cases with the goal of establishing an orderly, fair and expeditious process to resolve PG&E's liabilities resulting from those Wildfires,[1] while preserving and maximizing the value of PG&E's business enterprise for the benefit of all of its economic stakeholders. In furtherance of that goal, this Court determined that estimating the Wildfire Claims pursuant to Section 502(c) of the Bankruptcy Code is appropriate—in fact necessary—because liquidating all of the Wildfire Claims would unduly delay the administration and resolution of these Chapter 11 Cases. (Dkt. 3648 at 4.) The Opposing Parties, however, contend that a subset of their claims are liquidated and not subject to estimation.

Under Ninth Circuit law, claims are unliquidated when they are not subject to "ready determination". *In re Ho*, 274 B.R. 867, 875 (B.A.P. 9th Cir. 2002) (quoting *In re Wenberg*, 94 B.R. 631, 634 (B.A.P. 9th Cir. 1988)). Whether a debt is subject to ready determination "depend[s] on whether the amount is easily calculable or *whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor*." *Id.* at 874 (emphasis added) (quoting *In re Slack*, 187 F.3d 1070, 1074 (9th Cir. 1999)). The Debtors contest their legal liability for the Wildfire Claims, including the subset of claims the Opposing Parties contend are liquidated. Resolving the Debtors' liability with respect to the Wildfire Claims involves a number of complex issues including, but not limited to, the recoverability of certain categories of damages (such as the cost of rebuilding damaged structures, rather than the accepted standard of diminution in value, *see* 6 Witkin, Summary 11th Torts § 1912 (2019) ("the basic and normal rule uses diminution in value as the measure; *i.e.*, the difference between the market value of the land before and after the injury")), and the reasonableness of the Debtors' business practices with respect to vegetation management and electrical maintenance.

---

[1] As used herein, the terms "**Wildfires**" and "**Wildfire Claims**" refer to the 2015 Butte Fire, the 2018 Camp Fire and the following 2017 North Bay Wildfires: (1) Adobe; (2) Atlas; (3) Blue; (4) Cascade; (5) Cherokee; (6) Highway 37; (7) Honey; (8) La Porte; (9) Lobo; (10) Maacama; (11) McCourtney; (12) Norrbom; (13) Nuns; (14) Oakmont/Pythian; (15) Partrick; (16) Pocket; (17) Point; (18) Potter/Redwood; (19) Pressley; (20) Sullivan; (21) Sulphur and (22) Tubbs.

It cannot be disputed that an extensive hearing—involving months of pre-trial preparation and 10 scheduled trial days before Judge Donato—is required to resolve the liability of the Debtors for the Wildfire Claims of all parties. The Opposing Parties' Wildfire Claims are no different from the Wildfire Claims of any other party: they are unliquidated and subject to estimation.[2] Moreover, because the Opposing Parties' Wildfire Claims are no different from other Wildfire Claims, the same issues of liability will be heard in the Wildfire Claims estimation process. Therefore, estimating the Opposing Parties' Wildfire Claims along with other Wildfire Claims is the most efficient means to administer the estate, serving the purpose of Bankruptcy Code Section 502(c).[3]

The Opposing Parties misconstrue Ninth Circuit law, and put undue emphasis on certain statements the Court made without having the benefit of briefing from the parties on the issue. The ability to calculate an alleged claim to the dollar—or even to the penny—is a red herring. The Ninth Circuit Bankruptcy Appellate Panel put it well: "[w]hile a dispute as to liability will not 'necessarily render a debt unliquidated' . . . the nature of this dispute does." *In re Ho,* 274 B.R. at 875 (quoting *In re Slack*, 187 F.3d 1070, 1074 (9th Cir. 1999)). The fact that there has been no determination of the Debtors' liability for the Wildfire Claims is what is legally relevant here, not the reams of backup documentation nor any "to the penny" calculations. The nature of the dispute as to liability in these Chapter 11 Cases compels the result that the Wildfire Claims of the U.S.A, the State and Adventist must be estimated in the Section 502(c) proceedings before the United States District Court for the Northern District of California (the "**District Court**"), just like all other Wildfire Claims.[4]

---

[2] In addition to contending that the Contested Claims (as defined below) are unliquidated and subject to estimation, the Debtors reserve all rights to object to any and all of the Opposing Parties' claims (including the Contested Claims) on any ground contemplated by Section 502(b) of the Bankruptcy Code or any other applicable law.

[3] To the extent the Opposing Parties' real issue is the degree to which they are entitled to participate in the District Court estimation proceedings, the Debtors do not object to the full participation of the U.S.A. and the State (Adventist's interests are sufficiently represented by the TCC).

[4] As explained in the Notice, the Debtors included in the list of claims in the Notice all claims asserted against the Debtors that arise from a wildfire, including claims that do not arise from the Wildfires that are subject to the estimation proceedings before the District Court (the "**Additional Wildfire Claims**"). (Dkt. 4553 at 9.) The Debtors are *not* seeking to estimate the Additional

## II. BACKGROUND

### A. The Northern California Wildfires

On September 9, 2015, a wildfire started in Amador County, California (the "**Butte Fire**"). According to CAL FIRE, the Butte Fire burned over 70,800 acres within Amador and Calaveras counties, destroyed approximately 965 structures and resulted in two fatalities and one injury.[5] Beginning on October 8 and 9, 2017, multiple wildfires spread through Northern California, including the counties of Napa, Sonoma, Butte, Humboldt, Mendocino, Lake, Nevada and Yuba (collectively the "**North Bay Fires**"). According to CAL FIRE, the North Bay Fires consisted of 21 major fires that burned over 245,000 acres, destroyed an estimated 8,900 structures, and resulted in 44 fatalities.[6] (Am. Decl. of Jason P. Wells in Support of First Day Motions and Related Relief [Dkt. 263] (the "**Wells Declaration**") at 13-14.) On November 8, 2018, a wildfire began near the city of Paradise in Butte County, California (the "**Camp Fire**"). According to CAL FIRE, the Camp Fire consumed 153,336 acres and resulted in 86 fatalities and the destruction of 13,972 residences, 528 commercial structures and 4,293 other buildings. (Wells Decl. at 11.)

To date, thousands of Wildfire Claims have been filed in these Chapter 11 Cases. For each fire, claimants allege causes of action for, *inter alia,* inverse condemnation, negligence (causing bodily harm, loss of profits/income and property damage), private nuisance, public nuisance, premises liability, trespass, violation of Public Utility Code § 2106, wrongful death, survival actions and/or negligent infliction of emotional distress. The Debtors have conceded causation, but not liability, for all of the Wildfires except the Tubbs Fire for purposes of estimation.

---

Wildfire Claims in the estimation proceedings before the District Court, but reserve all rights related to the allowance or disallowance of the Additional Wildfire Claims and the determination of the amounts thereof. (*Id.*) The Additional Wildfire Claims are therefore not at issue in this brief.

[5] *See* CAL FIRE Report at 4, dated April 28, 2016, https://www.fire.ca.gov/media/5443/butte-15-ca-aeu-024918_redacted.pdf.

[6] An additional fire, the Maacama fire, was not initially separately reported by CAL FIRE.

B.     **The Estimation Motion.**

On January 29, 2019, the Debtors commenced with this Court voluntary cases under Chapter 11 of the Bankruptcy Code. On July 18, 2019, the Debtors filed *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures*, (Dkt. 3091), (the "**Estimation Motion**"). The Estimation Motion sought to establish the framework under which the Debtors' aggregate liability for all contingent and/or unliquidated claims arising out of the Wildfires could be determined. (Dkt. 3091 at iii.) The Debtors moved for estimation of the Wildfire Claims because, *inter alia*, as soon as practicable "[t]ens of thousands of California residents whose lives have been affected by the Wildfires need to know whether, and how much, they will recover from PG&E so they can continue the hard but necessary work of rebuilding lives that have been devastated by the Wildfires." (Dkt. 3091 at 1.)

C.     **The Estimation Decision and Withdrawal of Reference**

On August 21, 2019, the Court found that "[the Debtors] need[] to implement the bankruptcy procedure for estimation of its unliquidated claims for its reorganization purposes" and recommended withdrawal of the reference with respect to the estimation proceedings. (Dkt. 3648 at 3, 7.) The Court reasoned that the Wildfire Claims must be estimated "[b]ecause it would be impossible to liquidate thousands of tort claims in a matter of months, or possibly years". (*Id.* at 3.) The District Court accepted the Court's recommendation and ordered the partial withdrawal of the reference of the estimation proceedings for the Wildfire Claims. (Dist. Ct. Dkt. 2 at 1.)

D.     **Proceedings Following the Withdrawal of Reference**

On August 27, 2019, the Court held a status conference regarding the estimation proceedings. The State asserted that its Wildfire Claims were liquidated and therefore not subject to the estimation proceedings before the District Court. (Aug. 27 Hr'g Tr. 113:13-114:8.) The U.S.A. took the same position. (*Id.* at 123:11-14.) The Court, the U.S.A., the State and the Debtors then engaged in a discussion about the standards for what constitutes an unliquidated claim that is subject to estimation under section 502(c) of the Bankruptcy Code. (*Id.* at 114:9-123:25.) The Court did not reach a determination on the 502(c) issue during the hearing. (*See id.*) Instead, at the October 23,

2019 Omnibus Hearing, the Court set a briefing schedule and hearing date for the 502(c) "liquidated/unliquidated" issue. (Oct. 23, 2019 Hr'g Tr. at 45:18-55:20; *see also* Dkt. 4540 at 2-3.)

In the District Court, the estimation proceedings have begun to move forward. The District Court set a ten-day hearing and discovery has commenced. To date, the Debtors have produced over 3.3 million documents to the other parties to the estimation proceedings. The parties have disclosed fact witness lists that include 45 individuals and the parties have scheduled 28 depositions. The parties have also disclosed a potential of 27 expert witnesses. There will be expert reports, discovery related to the experts' sources, rebuttal reports and expert depositions prior to the start of the proceedings. During the estimation proceedings, the District Court will have to resolve complex issues such as the liability of the Debtors for some or all of the Wildfires (the Debtors have conceded causation (other than for the Tubbs Fire) for purposes of estimation but not liability), the proper method of damages loss calculation and the reasonableness of PG&E's vegetation management and electric maintenance programs. Because of the vast and complex issues involved in the estimation proceedings, the District Court scheduled bi-weekly status conferences to take place until the proceedings begin.

E.   **The Debtors' Designation and the Oppositions**

On November 1, 2019, the Debtors filed the Notice. (Dkt. 4553.) The Notice designated certain claims filed by the U.S.A., the State and Adventist as unliquidated and subject to the estimation proceedings before the District Court. (*Id.*) The U.S.A., the State and Adventist filed the Oppositions in response to the Notice on November 15, 2019. The Oppositions argue that certain claims filed by the U.S.A., the State and Adventist are liquidated and not subject to estimation because those claims are specified to the exact dollar amount or the specific dollar amount allegedly can be determined in a simple hearing. (U.S.A. Opp. at 5-7; State Opp. at 6-17; Adventist Opp. at 6-10.[7])

---

[7] Adventist in particular also latches on to certain statements made by the Court during hearings. (*See, e.g.*, Adventist Opp. at 1.) While statements of the Court are always relevant, statements from the bench are different in kind from a reasoned opinion following briefing on the issues and are not determinative of the issues presented. The Debtors believe that the Court, after having reviewed the briefing, will agree that the Wildfire Claims of the Opposing Parties are, in fact, subject to

6

Each of the Opposing Parties contend that a subset of their claims actually are liquidated and thus not subject to the estimation proceedings. According to publicly available data on Prime Clerk's website, the Opposing Parties have submitted 68 Wildfire Claims, totaling approximately $8.6 billion. Out of the 68 Wildfire Claims, the Opposing Parties are contending that 28 Wildfire Claims are liquidated either in full or in part (the "**Contested Claims**").[8]

The U.S.A. has submitted 24 Wildfire Claims for amounts totaling approximately $4.2 billion. The U.S.A. contends that five of its claims are liquidated—three claims from the National Park Service related to the Atlas, Butte and Tubbs Fires, and two claims from the Federal Emergency Response Agency (FEMA) for costs related to the Butte Fire and the North Bay Fires. (U.S.A. Opp. at 5-7.) The U.S.A. concedes that five of its claims are unliquidated—one claim from FEMA related to the Camp Fire, two claims from the Bureau of Land Management (BLM) related to the Camp and Butte Fires, and two claims from the Small Business Administration (SBA) related to the Camp and North Bay Fires. (U.S.A. Opp. at 3-4.)

The State has submitted 43 Wildfire Claims for amounts totaling approximately $3.5 billion. The State contends that 22 of its Wildfire Claims are unliquidated either in full or in part. The claims are from numerous state agencies and relate to the all of the Wildfires except the Tubbs Fire. (State Opp. at 5-17.) The State does not contend that any of the State's claims related to the Tubbs Fire are liquidated. (*Id.*)

Adventist has submitted one Wildfire Claim for an amount totaling approximately $1.0 billion.[9] Adventist apportions its Wildfire Claim into amounts that are unliquidated and amounts

---

estimation because they are "unliquidated" under applicable Ninth Circuit precedent properly applied to the facts of these Chapter 11 Cases.

[8] A summary chart of the Contested Claims is attached hereto as Exhibit A. Notably, the Opposing Parties do not explain in the Oppositions why they are contending that certain of their Wildfire Claims are liquidated in nature while others are not. For example, the U.S.A. concedes that FEMA's claim with respect to the Camp Fire (Claim No. 59692) in unliquidated and should be subject to estimation, (U.S.A. Opp. at 3-4), while it contends that FEMA's claims with respect to the North Bay Fires (Claim No. 59734) and Butte Fire (Claim No. 59783) are liquidated, (*id.* at 6), but provides no reasoning or explanation for the concession and contentions.

[9] While Adventist has filed one Wildfire Claim against PG&E Corp., (Claim No. 59459), and one Wildfire Claim against the Utility, (Claim No. 59996), because the claims seek exactly the same

that are liquidated. Adventist contends that slightly under $143 million of its Wildfire Claim is liquidated and concedes that over $850 million out of the $1.0 billion of its asserted Wildfire Claim damages are unliquidated. (Adventist Opp. at 1-3.)

As discussed further below, the arguments in the Oppositions ignore binding precedent and do not support a finding that the Contested Claims should be excluded from the estimation proceedings.

### III. ARGUMENT

The Contested Claims are subject to estimation because there is a bona fide dispute as to the Debtors' liability, which dispute will require extensive hearings to resolve. Therefore, this Court should enter an order to the effect that the Contested Claims of the Opposing Parties are subject to and included in the estimation proceedings pending before the District Court.

#### A. Legal Standards

Section 502(c) of the Bankruptcy Code provides that the Court "shall" estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). Courts have explained that:

> Estimation serves two purposes: First, it is designed to avoid the need to await the resolution of outside disputes or lawsuits to determine the amount owed by means of anticipating and estimating the likely outcomes of those disputes/lawsuits. Second, it is designed to promote fair distribution to creditors through a realistic assessment of uncertain claims.

*In re A & B Assocs., L.P.*, No. 17-40185-EJC, 2019 WL 1470892, at *34-35 (Bankr. S.D. Ga. Mar. 29, 2019) (citation omitted). All decisions concerning whether a claim should be included in the estimation process ultimately work from this proposition: efficiency in administering the estate.[10] As a

---

recovery for alleged damages suffered from the Camp Fire, the Debtors are treating Adventist's Wildfire Claims as one claim for the purposes of this Response. (*See* Adventist Opp. at 2.) The Debtors hereby reserve all rights to object to any and all of Adventist's claims on any ground contemplated by Section 502(b) of the Bankruptcy Code or any other applicable law.

[10] As explained in *In re Lane*:

> The legislative history of Section 502(c) supports this interpretation and makes it clear that Congress, in drafting Section 502(c), intended that the Court should estimate any claim, actual liquidation of which would

8

court in this Circuit acknowledged, "[i]mportantly, the principal consideration in estimating unliquidated claims must be an accommodation to the underlying purposes of the Bankruptcy Code", and "Congress has subordinated the goal of accuracy with respect to determining the value of unliquidated claims to the overarching goal of avoiding undue delay in a case's administration— because it has made such estimation mandatory under section 502(c)". *In re N. Am. Health Care, Inc.*, 544 B.R. 684, 688, 689 (Bankr. C.D. Cal. 2016).

Because the Bankruptcy Code does not define "unliquidated", *In re Sylvester*, 19 B.R. 671, 672-73 (B.A.P. 9th Cir. 1982), courts must interpret the meaning of the term. In the Ninth Circuit, the question of whether a claim is liquidated turns on whether it "is subject to ready determination *and precision in computation of the amount due*". *In re Ho*, 274 B.R. at 874 (emphasis added) (quoting *In re Nicholes*, 184 B.R. 82, 90-91 (B.A.P. 9th Cir. 1995)). The "ready determination" inquiry turns "on whether the amount is easily calculable or *whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor*." *In re Slack*, 187 F.3d 1070, 1074 (9th Cir. 1999) (emphasis added) (citing *F.D.I.C. v. Wenberg (In re Wenberg)*, 94 B.R. 631, 633 (B.A.P. 9th Cir. 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990)).

The Ninth Circuit Bankruptcy Appellate Panel (the "**B.A.P.**") has clarified that this means where liability is disputed, "if the dispute itself . . . prevents the ready determination of the

---

> unduly delay closing of the estate. The Senate and House reports on this subsection contain identical language as follows: "Subsection (c) requires the estimation of any claim liquidation of which would unduly delay the closing of the estate, such as a contingent claim, or any claim for which applicable law provides only an equitable remedy, such as specific performance. This subsection requires that all claims against the debtor be converted into dollar amounts."

*In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) (quoting *In re Nova Real Estate Inv. Tr.*, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982) (first citing H.R. Rep. No. 95–595, at 354 (1977); and then citing S. Rep. No. 95–989, at 65 (1978))). The fact that in this case the estimation proceedings will convert all Wildfire Claims into an aggregate dollar amount rather than estimating individual claims on a claims-by-claims basis does not change the analysis—efficiency in administering the Debtors' estates requires that the Contested Claims be included in the District Court estimation proceedings.

amount due, the debt is unliquidated". *In re Ho*, 274 B.R. at 874 (quoting *In re Nicholes*, 184 B.R. 82, 90-91 (B.A.P. 9th Cir. 1995)). The Opposing Parties rely heavily on certain dicta in *Slack* that suggest that issues of liability are not relevant for purposes of the liquidated/unliquidated issue. But the B.A.P. in *Ho* expressly states that "*Slack* should not be read to remove that issue [*i.e.*, the issue of liability for purposes of the determination of whether a debt is liquidated or unliquidated] from the analysis." *Id.* at 874. Courts in the Ninth Circuit therefore must look at "the nature of the dispute" in determining whether the dispute renders a claim unliquidated. *In re Duque*, No. CC-05-1069-MaMcB, 2005 WL 6960181, at *4 (B.A.P. 9th Cir. Dec. 30, 2005).

        **B.**       **Because there is a bona fide dispute as to the Debtors' liability, the Contested Claims are not subject to ready determination.**

The Opposing Parties rely on a reading of *Slack* that has been clarified by more recent Ninth Circuit precedent, which makes it clear that the Debtors' position that the Contested Claims are not subject to ready determination is the correct one under controlling Ninth Circuit law. The Opposing Parties argue that the Contested Claims are liquidated because they have submitted proofs of claims showing the exact dollar amounts of the Contested Claims and take the position that the Debtors disputing liability as to the Contested Claims is not relevant to the analysis. (U.S.A. Opp. at 4-6; State Opp. at 5-6; Adventist Opp. at 6-7.) The Opposing Parties rely heavily on *Slack* to support their position that "a debt is liquidated even if liability . . . is disputed." (U.S.A. Opp. at 5; State Opp. at 5 (both citing *In re Slack*, 187 F.3d at 1075); *see also* Adventist Opp. at 7 (asserting that "the mere fact that the Debtors may dispute their liability [does not] preclude Adventist's claims from being liquidated" (citing *In re Slack*, 187 F.3d at 1075).[11]) The Opposing Parties read *Slack*'s holding in an

---

[11] The Opposing Parties do not put forth any arguments that the Contested Claims are liquidated because the Debtors' *liability dispute* will be decided at a simple hearing. (*See, e.g.*, Adventist Opp. at 9 (arguing that certain costs are liquidated because determining the amount of loss "does not require 'an extensive and contested evidentiary hearing'" (quoting *In re Enriquez*, 315 B.R. 112, 122 (Bankr. N.D. Cal. 2004))).) The legal issue is not whether the math is easily computed; it is whether the liability is subject to ready determination. And the answer to that question here is "no". If the Opposing Parties raise arguments in their forthcoming reply briefs that the Debtors' liability dispute can be resolved at a simple hearing, the Court should not consider such arguments as arguments raised for the first time in a reply brief are waived and may not be considered by the Court. *See Graves v. Arpaio,* 623 F.3d 1043, 1048 (9th Cir. 2010) (holding that "arguments raised for the first

unduly broad manner and overlook case law from the B.A.P. that rejects such a broad interpretation of *Slack*. The Opposing Parties focus exclusively on the "precision in computation" prong of the Slack holding, and ignore entirely the "ready determination" prong.

In *Slack*, the Ninth Circuit held that "a dispute regarding liability *will not necessarily* render a debt unliquidated", but a debt may be rendered unliquidated when "an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor". 187 F.3d at 1074 (emphasis added). The debtor in *Slack* filed for relief under Chapter 13 of the Bankruptcy Code. *Id.* at 1072. Prior to the debtor filing for Chapter 13 relief, a creditor filed an action against him in state court under various tort-based causes of action. *Id.* The state court entered a tentative ruling that found the debtor liable, but the state court did not issue a final judgment until after the debtor filed for Chapter 13 relief. *Id.* In the Chapter 13 proceeding, the creditor filed a proof of claim in the amount of the damages from the pending state court action. *Id.* The debtor argued that the creditor's claim was unliquidated because the state court's final judgment came down after the debtor filed his bankruptcy petition. *Id.*

The court rejected the debtor's argument. The court held that "the mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated", but instead the inquiry is "[w]hether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor." *Id.* at 1074. In rejecting the debtor's argument that a debt is not liquidated until "amount and actual liability" are established, the court made note of the state court's tentative decision finding the debtor liable, which illustrated that no extensive hearing was required to determine the debtor's liability. *Id.* at 1075.

The Opposing Parties attempt to craft *Slack*'s holding into a broad rule that disputes as to liability have no bearing on whether a claim is liquidated. But that is not what *Slack* holds, as the later-decided *Ho* makes clear. There, the B.A.P. held that, post-*Slack*, the law of the Ninth Circuit remains that "whether a debt is liquidated . . . turns on the distinction between a simple hearing to

---

time in a reply brief are waived"); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]s an argument raised for the first time in a reply brief, it is not an argument that we may consider here.").

determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts *or liability*". *In re Ho*, 274 B.R at 874-75 (emphasis in original) (citing *In re Wenberg*, 94 B.R. 631, 634 (B.A.P. 9th Cir. 1988)); *see also In re Sugg*, No. 14-60916-fra13, 2014 WL 3671421, at *2 (Bankr. D. Or. July 22, 2014) (finding that a claim was unliquidated because the debtor's liability could not be determined "absent an extensive hearing or trial" (citing *In re Ho*, 274 B.R. at 873, 875)).

*Ho* makes clear that the dicta the Opposing Parties cite from *Slack* "must be tempered by prior Ninth Circuit precedent (which *Slack* did not overrule) and the facts of that case." *In re Ho*, 274 B.R. at 873. Because the underlying facts in *Slack*—the state court's tentative liability ruling—demonstrated that the debtor's liability was not seriously in dispute, the court explained that *Slack* should not be read to establish a broad rule that "liability disputes *never* play a role in determining whether a debt is unliquidated." *Id.* at 875. Instead, the appropriate analysis is whether or not the dispute as to liability keeps the claim from being readily determinable. *Id*. In *Ho,* the B.A.P. found that the dispute as to liability concerning a contractual claim rendered the debt unliquidated even though debt allegedly owed to a creditor could be "*ascertained to the penny*". *Id.* (emphasis added). As the court explained:

> [I]n this case, there would need to be allegations of liability and an extensive hearing to determine Debtor's liability for the Great Tone contract debt. The amount of the open book account debt allegedly owed to Great Tone *can be ascertained to the penny*. But not even Great Tone contends that Debtor is personally liable. Therein lies the rub. This is not a case where all that is lacking is a final determination as to the debtor's liability. In addition, even if Debtor is liable, it is not self evident that she is liable for the entire amount of the debt. *While a dispute as to liability will not "necessarily render a debt unliquidated,"* Slack, 187 F.3d at 1074, *the nature of this dispute does*.

*In re Ho*, 274 B.R. at 875 (emphasis added) (footnotes omitted). Therein lies the rub indeed. Based on this precedent, the Court must look at the nature of the dispute in this particular case, and not just on the precision with which the Opposing Parties can calculate their asserted claims.

The Opposing Parties' focus on the *calculation* of the amount of their asserted claims misses the key issue here. The ability to produce a number—even one "ascertained to the penny" in

1. the words of *Ho*—does not render the amount of the claim readily determinable. It would fly in the face of Ninth Circuit precedent to find that simply because the Opposing Parties can produce specific amounts for their asserted claims from spreadsheets and accounting entries that automatically makes those claims liquidated for purposes of Section 502(c). While the Debtors' may contest the amounts specified in the Contested Claims, the primary dispute at issue here concerns the Debtors' liability for the Contested Claims, not the amount of the asserted claims. As explained below, the liability dispute at issue here requires an extensive hearing, making the Contested Claims not subject to ready determination and therefore unliquidated and subject to estimation.

      **C.     The nature of the dispute here renders the claims unliquidated and subject to estimation.**

Because an extensive hearing is required to resolve the dispute as to the Debtors' liability, the Contested Claims are unliquidated and subject to estimation.

As explained above, courts must look at "the nature of the dispute" in determining whether the dispute renders a claim unliquidated, *In re Nicholes*, 184 B.R. at 90, and disputes requiring "extensive hearing[s]" are the types of disputes that render claims unliquidated, *In re Ho*, 274 B.R. at 874. Courts in the Ninth Circuit have held that liability disputes involving unlitigated tort claims, including negligence actions, are unliquidated because of the extensive hearings required to resolve such disputes. *In re Nicholes*, 184 B.R. at 89; *In re Sylvester*, 19 B.R. at 673.

The Opposing Parties cite to *In re Keenan* for the proposition that courts have adopted the definition of "unliquidated" from the 109(e) context to apply in Chapter 11 matters as well. (*See, e.g.*, U.S.A. Opp. at 5 (citing *In re Keenan*, 201 B.R. 263, 265 (Bankr. S.D. Cal. 1996).) In *Keenan*, the court found that a tort claim asserted against a Chapter 11 debtor was subject to ready determination and thus liquidated where "the state court case [concerning the tort claim] did proceed to judgment based on a jury verdict, and as of the date of the filing of the bankruptcy was readily calculable." *In re Keenan*, 201 B.R. 263, 266 (Bankr. S.D. Cal. 1996). The court noted that the process of estimation "contemplates that the bankruptcy court will, in effect, put itself in the place of a nonbankruptcy court or jury to estimate whether a debtor is liable to the claimant and, if so, to estimate the amount of the debt". *Id.* Therefore, estimation is inappropriate where "a case has already

proceeded to judgment". *Id.* Similarly, in *Audre*, another case cited by the U.S.A. in defining a liquidated claim for purposes of Chapter 11, (U.S.A. Opp. at 5), the Court found a claim to be subject to ready determination where the claim had been determined by a state court judgment. *In re Audre, Inc.*, 216 B.R. 19, 30 (B.A.P. 9th Cir. 1997) ("[T]he amount of the claim is not unliquidated because, as of the date of the filing of the [C]hapter 11 case, it was easily subject to ready determination—the Family Court had already determined the amount of the claim to be $11.5 million."). The B.A.P. affirmed its agreement with the lower court's assessment that "even if the Court were to estimate the claims based upon the Family Court judgment, the claims would be estimated in the amount of the judgment." *In re Audre, Inc.*, 202 B.R. 490, 498 (Bankr. S.D. Cal. 1996), *aff'd*, 216 B.R. at 30-31.

On the contrary, where, like here, there is no pre-petition judgment or settlement of the claims, estimation is appropriate. *See In re Lionel, L.L.C.*, No. 04-17324, 2007 WL 2261539, at *2 (Bankr. S.D.N.Y. Aug. 3, 2007) ("[W]hen the liquidation of a claim is premised on litigation pending in a non-bankruptcy court, and the final outcome of the matter is not forthcoming, the bankruptcy court should estimate the claim."). Here, there has been no judgment that has determined a fixed amount of the damages of the Opposing Parties. Unlike the claims in *Keenan* and *Audre*, the Wildfire Claims of the Opposing Parties (like all other Wildfire Claims in these cases) are not susceptible to ready determination because the Debtors' liability has not been determined and because the damages calculations has multiple components. Indeed, the bankruptcy court in *Keenan* found that "[h]ad the case not proceeded to trial and judgment, it might have been difficult to conclude that the amount of the claim was susceptible to ready determination because of the multiple components of the damages portion of the fraud claims." *In re Keenan*, 201 B.R. at 266.

In the estimation proceedings, the Debtors are contesting their legal liability for any claims arising out of the Wildfires, including the Contested Claims. Resolving the Debtors' liability dispute as to the Contested Claims will require extensive hearings. In the estimation proceedings in the District Court, the Debtors have produced over 3.3 million documents to the other parties in the estimation proceedings. The parties have disclosed fact witness lists that include 45 individuals and the parties have scheduled 31 depositions. The parties have also disclosed a potential of 27 expert witnesses. There will be expert reports, discovery related to the experts' sources, rebuttal reports and

1  expert depositions prior to the start of the proceedings.  During the estimation proceedings, the District

2  Court will have to resolve complex issues such as liability of the Debtors for some or all of the

3  Wildfires (the Debtors have conceded causation (other than for the Tubbs Fire) for purposes of

4  estimation, but not liability), the proper method of damages loss calculation and the reasonableness of

5  PG&E's vegetation management and electric maintenance programs.  The complexity of resolving the

6  Debtors' liability is precisely why this Court found that estimation was necessary, and the District

7  Court agreed.  (*See* Dkt. 3648 at 4-7 (explaining that there are "several complex issues" that "are

8  inexorably intertwined" in resolving these Chapter 11 Cases).)  Notably, the foregoing facts show how

9  extensive the estimation proceedings will be, and the District Court has streamlined the estimation

10 proceedings to the greatest extent possible to resolve the Debtors' liability and estimated damages in

11 a prompt manner.  A separate full blown litigation over the Debtors' liability for the Contested Claims

12 would be at least as extensive, not to mention redundant.

13         Courts have found that tort claims often involve bona fide disputes with respect to

14 liability and damages that render claims unliquidated.  In *Duque*, the debtor "maintain[ed] that there

15 [wa]s a bona fide dispute as to his liability in [a] civil tort action" that was the basis of the claim at

16 issue and that "extensive hearings w[ould] be required to resolve the issues of liability and damages".

17 2005 WL 6960181, at *7.  The claimant in *Duque* "contend[ed] that her claim for special damages

18 was readily ascertainable from the spreadsheet, itemizations, medical bills, invoices, and other

19 documentation, which she provided to both [the debtor] and the court." *Id*.  The B.A.P. determined

20 that the claims at issue were unliquidated because, *inter alia*, "a resolution of the liability and damages

21 issues would require extensive hearings and evidence from both parties." *Id.* at *8.  The B.A.P.

22 explained that "[t]he fact that [the debtor] did not provide rebuttal evidence in bankruptcy court was

23 irrelevant, as that action must be tried in state court, and [the claimant] did not request an evidentiary

24 hearing in bankruptcy court." *Id.*  In so finding, the court noted that "[c]laims that are not capable of

25 ready and precise determination without an extensive evidentiary hearing, because of a bona fide

26 dispute, frequently involve pending tort or personal injury litigation." *Id*. (citations omitted).

27         So too here, the determination of the Debtors' liability will not come after a simple

28 hearing, but rather will require a complicated, extensive hearing that resolves numerous issues on the

applicability of complex legal doctrines and reasonableness of the Debtors' business practices. The nature of this dispute renders the Contested Claims unliquidated under Ninth Circuit law.

## CONCLUSION

WHEREFORE the Debtors respectfully request that the Court find that the Contested Claims are unliquidated and subject to estimation and order further relief as the Court may deem just and appropriate.

Dated: December 5, 2019

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER & BENVENUTTI LLP**

/s/ *Paul H. Zumbro*

Paul H. Zumbro

*Attorneys for Debtors and Debtors in Possession*