WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Ch. 11 Lead Case No. 19-30088 (DM) (Jointly Admin.)<br><br>**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS AND TCC TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE TCC, CONSENTING FIRE CLAIMANT PROFESSIONALS, AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF**<br><br>**(THE "TORT CLAIMANTS RSA MOTION")**<br><br>Date: December 17, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: U.S. Bankruptcy Court, Courtroom 17, 16th Fl.<br>San Francisco, CA 94102<br>**Objection Deadline: December 13, 2019, 4:00 p.m. (PT)** |

Case: 19-30088    Doc# 5038    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 1 of 25

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) authorizing the Debtors and the Official Committee of Tort Claimants (the "**TCC**") to enter into and perform under that certain Restructuring Support Agreement, dated as of December 6, 2019 (the "**Tort Claimants RSA**"), among the Debtors, the TCC, the Consenting Fire Claimant Professionals (as defined below), and the Shareholder Proponents (as defined below) parties thereto, a copy of which is annexed hereto as __**Exhibit A**__, and (ii) granting related relief.

In support of the Motion, the Debtors submit the Declaration of Jason Wells (the "**Wells Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as __**Exhibit B**__ (the "**Proposed Order**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF CONTENTS

Page

I.  Preliminary Statement ..................................................................................................8

II.  Jurisdiction ..............................................................................................................10

III.  Background ..............................................................................................................10

IV.  Material Terms of the Tort Claimants RSA and Term Sheet ....................................11

V.  Basis for Relief Requested .......................................................................................16

    1.  The Tort Claimants RSA and Term Sheet Represent a Substantial Achievement and Milestone in the Chapter 11 Cases, Are a Sound Exercise of the Debtors' Business Judgment, and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code. ....................................................................................16

    2.  Entry into the Tort Claimants RSA is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019. ...............................20

    3.  The Plan Support Terms of the Tort Claimants RSA are Reasonable and Customary...23

    4.  Conclusion .......................................................................................................24

VI.  Notice ......................................................................................................................24

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*,
  156 B.R. 414 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) ...............................21-22

*In re ASARCO, L.L.C.*,
  650 F.3d 593 (5th Cir. 2011) ...........................................................................................17

*In re AWTR Liquidation Inc.*,
  548 B.R. 300 (Bankr. C.D. Cal. 2016)..............................................................................17

*In re CHC Grp. Ltd.*,
  Case No. 16-31854 (BJH) (Bankr. N.D. Tex. Dec. 20, 2016)..........................................22

*City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*,
  656 F.3d 82 (1st Cir. 2011)...............................................................................................21

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
  60 B.R. 612 (Bankr. S.D.N.Y. 1986)................................................................................17

*In re Drexel Burnham Lambert Group, Inc.*,
  134 B.R. 499 (Bankr. S.D.N.Y. 1991).........................................................................20, 21

*Energy Future Holdings Corp. v. Del. Trust Co.*,
  648 F. App'x 277 (3d Cir. 2016) ......................................................................................21

*In re Exide Techs*,
  Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015).........................................18, 24

*In re Federal-Mogul Global Inc., T&N Limited*,
  Case No. 01-10578 (JFK) (Bankr. D. Del. Feb. 7, 2007) ................................................22

*In re Fiddler's Creek, LLC*,
  Case No. 10-3846 (CPM) (Bankr. M.D. Fla. Feb. 25, 2011) ..........................................22

*In re Indianapolis Downs, LLC.*,
  486 B.R. 286 (Bankr. D. Del. 2013) .................................................................................23

*In re Integrated Resources, Inc.*,
  147 B.R. 650 (Bankr. S.D.N.Y. 1992) ..............................................................................17

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
  2009 Bankr. LEXIS 2846 (Bankr. D.P.R. Mar. 31, 2009)...............................................22

*In re Lionel Corp.*,
  722 F.2d 1063 (2d Cir. 1983)............................................................................................17

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Manuel Mediavilla, Inc.*,
568 B.R. 551 (B.A.P. 1st Cir. 2017) ............................................................................23

*Martin v. Kane (In re A&C Properties)*,
784 F.2d 1377 (9th Cir. 1986) ..............................................................................20, 21

*In re Montgomery Ward Holding Corp.*,
242 B.R. 147 (D. Del. 1999) ......................................................................................17

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
478 F.3d 452 (2d Cir. 2007) .......................................................................................22

*Myers v. Martin (In re Martin)*,
91 F.3d 389 (3d Cir. 1996) ........................................................................................20

*In re Nautilus Holdings Ltd.*,
Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Oct. 3, 2014) .......................................22

*Nellis v. Shugrue*,
165 B.R. 115 (S.D.N.Y. 1994) ..............................................................................20, 21

*In re Pacific Gas and Elec. Co.*,
304 B.R. 395 (Bankr. N. D. Cal. 2004) ......................................................................21

*In re Pacific Gas and Electric Company*,
Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) ........................... 17-18, 21

*In re Planned Protective Servs., Inc.*,
130 B.R. 94 (Bankr. C.D. Cal. 1991) .........................................................................21

*Port O'Call Invest. Co. v. Blair (In re Blair)*,
538 F.2d 849 (9th Cir. 1976) .....................................................................................21

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) ............................................................................................20, 21

*In re Residential Capital, LLC*,
2013 Bankr. LEXIS 2601 (Bankr. S.D.N.Y. Jun. 27, 2013) .........................................22

*In re SeraCare Life Sciences*,
Case No. 06-00510 LA11 (Bankr. S.D. Cal. Dec. 21, 2006) .......................................24

*Smith v. Van Gorkom*,
488 A.2d 858 (Del. 1985) ...........................................................................................17

*In re Thompson*,
965 F.2d 1136 (1st Cir. 1992) ....................................................................................21

*In re TK Holdings Inc.*,
Case No. 17-11375 (BLS) (Bankr. D. Del. Dec. 13, 2017) ..........................................18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Trans World Airlines, Inc. v. Texaco Inc. (In re Texaco Inc.)*,
   81 B.R. 813 (Bankr. S.D.N.Y. 1988)................................................................23

*In re Tronox Inc.*,
   Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Dec. 23, 2009)........................18

*In re Walter*,
   83 B.R. 14 (B.A.P. 9th Cir. 1988)..................................................................17

*In re WCI Cable, Inc.*,
   282 B.R. 457 (Bankr. D. Or. 2002)................................................................21

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
   839 F. 2d 610 (9th Cir. 1988) ...............................................................20, 21

**Statutes**

11 U.S.C. § 105(a) ...............................................................2, 16, 17, 18, 25

11 U.S.C. § 363................................................................2, 16, 17, 18, 22, 25

11 U.S.C. § 1107(a) ........................................................................................10

11 U.S.C. § 1108 .............................................................................................10

28 U.S.C. §§ 157 .............................................................................................10

28 U.S.C. § 1334 .............................................................................................10

28 U.S.C. § 1408 .............................................................................................10

28 U.S.C. § 1409 .............................................................................................10

AB 1054 .............................................................8, 9, 10, 11, 14, 15, 16

California Code of Civil Procedure § 36.5(f) ..................................................14

Internal Revenue Code Section 382..................................................................13

**Other Authorities**

B.L.R. 5011-1(a) .............................................................................................10

Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C............................17

Fed. R. Bankr. P. 1015(b) ...............................................................................10

Fed. R. Bankr. P. 2002 ...................................................................................24

Fed. R. Bankr. P. 9019..........................................................2, 19, 20, 21, 22, 25

Fed. R. Bankr. P. 6004 .....................................................................................2

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

*Memorandum of Points and Authorities in Support of the Motion of the TCC for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims* ..................................................................................................................8

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 ..........................................................................................................10

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    PRELIMINARY STATEMENT[1]

The Debtors filed these Chapter 11 Cases with the goal of achieving a fair, equitable, and expeditious resolution of billions of dollars in liabilities arising from the 2017 and 2018 Northern California fires (including Tubbs) and the 2015 Butte Fire.  Today, the Debtors are significantly closer to realizing this goal, having reached, with the assistance of the Court-appointed mediator, a third, fundamentally important settlement to compromise previously unresolved claims of the last key constituency in these Chapter 11 Cases—the individual fire claimants.

Pursuant to the Tort Claimants RSA among the Debtors, the TCC, the law firms representing individuals holding approximately 70% in number of prepetition fire claims filed against the Debtors (the "**Consenting Fire Claimant Professionals**," as defined in the Tort Claimants RSA), and certain funds and accounts managed by Abrams Capital Management, LP and Knighthead Capital Management, LLP (the "**Shareholder Proponents**"), the parties have resolved, among other things, the treatment and discharge of individual fire claims under the Debtors' chapter 11 plan in compliance with AB 1054.  Pursuant to the Tort Claimants RSA, under the Debtors' chapter 11 plan, over $36 billion[2] in asserted prepetition fire liabilities will be resolved through the contribution of cash and stock with an aggregate value of $13.5 billion and assignment of certain rights and causes of action to a trust established for the benefit of the fire claimants.  The settlement is embodied in the Tort Claimants RSA and term sheet annexed thereto as <u>**Exhibit A**</u> (the "**Term Sheet**"), and will be implemented pursuant to, and incorporated in, an amendment to the *Debtors' Joint Chapter 11 Plan of Reorganization*, dated November 4, 2019 [Docket No. 4564] (as further amended, modified, or supplemented in accordance with the terms of the Tort Claimants RSA and Term Sheet, the "**Amended Plan**").  The Debtors intend to file the Amended Plan on or prior to December 12, 2019.  The Term Sheet summarizes the treatment

---

[1] Capitalized terms used but not herein defined in the preliminary statement shall have the meanings ascribed to them in the Tort Claimants RSA, the Term Sheet, or the Plan, as applicable.

[2] *See Memorandum of Points and Authorities in Support of the Motion of the TCC for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims*, at 4 [Docket No. 2843] (TCC alleges total insured and uninsured wildfire losses in excess $54 billion, of which $36 billion are alleged to be underinsured and uninsured claims).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

of prepetition fire claims that will be set forth in the Amended Plan. The Debtors and the Shareholder Proponents will be co-proponents of the Amended Plan.

The Tort Claimants RSA and Term Sheet are the product of extensive, good faith, arm's-length negotiations and mediation involving multiple parties spanning multiple weeks. Both the Tort Claimants RSA and Term Sheet reflect the heavily negotiated resolution of a number of critical, substantive issues among the Debtors, the TCC, the Consenting Fire Claimant Professionals, and the Shareholder Proponents. These include the following:

- The Tort Claimants RSA and Term Sheet fully resolve the chapter 11 plan's treatment of all prepetition fire claims[3] for consideration having a value of approximately $13.5 billion. This represents a settlement and resolution of the over $36 billion in such claims previously asserted by the TCC and its constituency.

- The Tort Claimants RSA eliminates any reason or basis to continue the protracted competing chapter 11 plan process. Under the Tort Claimants RSA, the TCC and the Consenting Fire Claimant Professionals will support the Amended Plan. The TCC will recommend holders of Fire Victim Claims vote to accept the Amended Plan, and the Consenting Fire Claimant Professionals will use all reasonable efforts to encourage their clients (holding approximately 70% of the prepetition fire claims) to support and vote in favor of the Amended Plan, thereby greatly facilitating the Debtors' ability to successfully and timely emerge from chapter 11 by the June 30, 2020 confirmation deadline established in AB 1054. Further, upon approval of the Tort Claimants RSA, the TCC will withdraw its support and cease to be a co-proponent of the *Joint Chapter 11 Plan of Reorganization of Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders* (including any amended or modified version thereof, the "**Alternative Plan**"). As a result, four major constituencies (the TCC and individual fire claimants, the Subrogation Claimants, the Public Entities, and the Shareholder Proponents), which represent all the impaired classes in these cases, will be fully supportive of one plan— the Debtors' Amended Plan.

- The Tort Claimants RSA eliminates the substantial costs, risks, and uncertainties attendant to the estimation of the Fire Victim Claims and the Tubbs Cases.

- With all other classes of claims under the Debtors' Amended Plan being unimpaired, approval of the Tort Claimants RSA will expedite the

---

[3] This excludes the previously settled Subrogation Wildfire Claims and Public Entities Wildfire Claims, but includes federal and state claims asserted by the DOJ, FEMA, and certain California State agencies (including Cal OES and CAL FIRE).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

successful conclusion of the Chapter 11 Cases and distributions to holders of Fire Claims.

The importance of what has been achieved in the Tort Claimants RSA cannot be overstated. Having reached a settlement with the TCC and law firms representing an overwhelming number of the individual fire claimants, no real obstacles remain to a swift confirmation of the Amended Plan and a successful exit from these chapter 11 cases well within the June 30, 2020 deadline established under AB 1054. With this third and last critical milestone, and the Debtors' previously negotiated settlements with the holders of Public Entities Wildfire Claims and the Subrogation Wildfire Claims, the Debtors' Amended Plan has the full support and consensus of every necessary constituency to ensure the success of these cases, the benefits of the go-forward wildfire fund under AB 1054, and expeditious distributions to holders of Fire Claims.

For all these reasons and as demonstrated below, entry into the Tort Claimants RSA represents a sound exercise of the Debtors' business judgment and easily satisfies all the standards and requirements for approval under the Bankruptcy Code. Accordingly, the Tort Claimants RSA should be approved.

## II.  JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells First Day Declaration**").

## IV. MATERIAL TERMS OF THE TORT CLAIMANTS RSA AND TERM SHEET

The treatment and satisfaction of the Fire Victim Claims provided in the Term Sheet will be effectuated pursuant to the Amended Plan and, of course, the Amended Plan is subject to confirmation and consummation in accordance with the provisions of the Bankruptcy Code. The settlement contemplated in the Tort Claimants RSA of the individual Tubbs preference plaintiffs' claims will be effected through negotiated settlement agreements, subject to separate approval by the Bankruptcy Court, with any payments with respect to such settled claims to be made after the Amended Plan Effective Date by the Fire Victim Trust to be established under the Amended Plan. Likewise, the settlement of the estimation proceedings contemplated by the Tort Claimants RSA will be subject to approval through a separate motion. The following is a summary of the salient terms of the Tort Claimants RSA and Term Sheet:[4]

| Parties to the Tort Claimants RSA | (i) the Debtors; (ii) the TCC; (iii) the Consenting Fire Claimant Professionals representing holders of approximately 70% in number of Fire Victim Claims; and (iv) the Shareholder Proponents. |
|---|---|
| **Treatment of Fire Victim Claims under the Amended Plan (Term Sheet)** | **Fire Victim Claims Channeled to a Fire Victim Trust** <br><br> In accordance with the requirements of section 3292 of AB 1054, on the Effective Date or as soon as reasonably practicable thereafter the Reorganized Debtors shall establish and fund a Fire Victim Trust with the Aggregate Fire Victim Consideration described below. <br><br> All claims (other than the Subrogation Wildfire Claims and Public Entities Wildfire Claims) arising from the 2017 and 2018 Northern California wildfires, the 2015 Butte Fire, and the Ghost Ship Fire will be permanently channeled to the Fire Victim Trust, to be satisfied solely from the Fire Victim Trust's assets, without further recourse to the Debtors and Reorganized Debtors (except as discussed below with respect to the obligations under the Tax Benefits Payment Agreement). Each holder of a |

---

[4] This summary is qualified in its entirety by reference to the provisions of the Tort Claimants RSA and the Term Sheet. To the extent that any discrepancies exist between the summary described in this Motion and the terms of the Tort Claimants RSA or the Term Sheet, the Tort Claimants RSA and the Term Sheet shall govern.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Fire Victim Claim shall receive payment as determined in accordance with the Fire Victim Claims Resolution Procedures.

The administration of the Fire Victim Trust and settlement and payment of the Fire Victim Claims will be determined by the holders of such Claims, without any involvement of the Debtors.

The Class of Fire Victim Claims is impaired and entitled to vote on the Amended Plan.

**Fire Victim Trust Funding**

The Fire Victim Trust shall be funded with an aggregate of $13.5 billion in value of cash and stock of reorganized PG&E Corp., and will be assigned certain rights and causes of action (described below).

- **Cash**: $5.4 billion in cash on the Amended Plan Effective Date, plus another $1.35 billion in cash payable pursuant to a Tax Benefits Payment Agreement (described below).

- **Stock**: $6.75 billion in Common Stock of reorganized PG&E Corp. (valued at 14.9x Normalized Estimated Net Income), which shall represent not less than 20.9% share ownership of the reorganized PG&E Corp., assuming the Utility's current allowed return on equity.

- **Assigned Rights and Causes of Action**: (i) the Debtors' rights, claims, causes of action, and defenses related to the Fires that they may have against vendors, suppliers, third party contractors and consultants (including those who provided services regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management), former directors and officers of the Debtors (solely to the extent of any directors and officers Side B insurance coverage), and others as mutually agreed upon by the Debtors and the Shareholder Proponents; and (ii) the Debtors' rights under its 2015 and 2016 insurance policies to resolve any claims related to the Fires in those policy years.

**Summary of Tax Benefits Payment Agreement and $1.35 billion Cash Payment to be Made Post-Effective Date**

The post-Effective Date cash consideration payable reflects the tax savings of the Reorganized Utility as a result of net operating losses and any deductions arising from the payment of Fire Victim Claims and Subrogation Wildfire Claims. This cash consideration is payable as follows:

- $1.35 billion in cash payable in two installments: (i) $650 million paid on January 15, 2021 (for 2020 fiscal year Tax Benefits) and (ii) $700 million paid on or before January 15, 2022 (for 2021 fiscal year Tax Benefits).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| | • In the event the Tax Benefits for 2020 exceed $650 million, the excess shall be used as a prepayment of a portion of the $700 million due January 15, 2022.<br><br>• In the event the Tax Benefits for 2020 are less than $650 million, or for 2021 less than $700 million, (i) the shortfall shall be payable on January 15, 2022, and (ii) the Debtors shall deliver to the Fire Victim Trust an unconditional, standby letter of credit covering the shortfall for the 2020 Tax Benefits, payable at sight, naming the Fire Victim Trust as the beneficiary, within 15 days after January 15, 2021 (the "**LOC Issuance Date**"), which may be presented to the issuing bank for payment on February 9, 2022 to the extent any amounts remain owing on that date. If the Reorganized Utility fails to deliver the letter of credit within 10 days after the LOC Issuance Date, the Fire Victim Trust shall have the right to file a stipulated judgment against the Reorganized Utility for the amount of the shortfall.<br><br>• In the event that payments received on or before January 15, 2022 are less than $1.35 billion for any reason, then on February 9, 2022 the Fire Victim Trust shall have the right to file a stipulated judgment against the Reorganized Utility in the amount of the shortfall.<br><br>• In the event of a post-emergence change in control (within the meaning of Section 382 of the Internal Revenue Code), all payments shall become automatically due and payable within 15 days thereof (and the letter of credit, if issued, may be drawn).<br><br>• In the event any post-emergence financing uses or is otherwise secured by the Tax Benefits, the Reorganized Utility shall use the first $1.35 billion in proceeds from the financing to pay the full amount due under the Tax Benefits Payment Agreement to the Fire Victim Trust on January 15, 2021. |
| **Agreement to Support the Amended Plan (RSA Provisions)** | Each party to the Tort Claimants RSA (a "**Party**") shall use commercially reasonable efforts to support and cooperate with the Debtors to obtain confirmation of the Amended Plan and any regulatory or other approvals necessary for confirmation or effectiveness of the Amended Plan, and each Party shall not support, propose, file, or vote for any plan other than the Amended Plan nor otherwise take any action that would interfere with, delay, impede, or postpone the solicitation of acceptances, consummation, or implementation of the Amended Plan.<br><br>**Debtors**<br><br>Upon execution of the Tort Claimants RSA, the Debtors shall: (i) deliver a draft of the Amended Plan to the Governor of the State of California (the "**Governor**") on or prior to December 6, 2019 at 7 p.m. (PT);[5] (ii) provide |

[5] The Debtors delivered the draft Amended Plan on December 6 prior to the 7 p.m. (PT) deadline.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the Governor and his counsel and advisors on a timely basis with all information necessary to evaluate whether in his judgment the Amended Plan and the restructuring transactions provided therein comply with AB 1054; (iii) file the Amended Plan with the Bankruptcy Court by December 12, 2019; and (iv) use commercially reasonable efforts to obtain confirmation of the Amended Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and the Bankruptcy Rules and on terms consistent with the Tort Claimants RSA.

**TCC**

Upon entry of an order approving the Tort Claimants RSA, the TCC shall file a notice of withdrawal as a proponent of the Alternative Plan and the Parties shall immediately suspend all pending discovery regarding the Subrogation Claimants RSA Motion [Docket No. 3992] and the Financing Motion [Docket No. 4446].

**Consenting Fire Claimant Professionals**

Each Consenting Fire Claimant Professional shall use all reasonable efforts to advise and recommend to its existing and future clients' (who hold Fire Victim Claims) to (i) support and vote to accept the Amended Plan, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Amended Plan. As provided in Section 3(b)(iv) of the Tort Claimants RSA, if on or before the hearing on this Motion, Section 4.19(f)(ii) of the Amended Plan (and any related provisions) has not been modified to the satisfaction of the TCC and the Requisite Consenting Fire Claimant Professionals, the TCC or the Requisite Consenting Fire Claimant Professionals may terminate the Tort Claimants RSA as provided therein.

The Requisite Consenting Fire Claimant Professionals shall provide to counsel, who are not Consenting Fire Claimant Professionals, written information to facilitate the holders of Fire Victim Claims not represented by a Consenting Fire Claimant Professional and their counsel making a meaningful and informed participation and voting decision on the Amended Plan, and each holder of a Fire Victim Claim shall have the right to make his or her own decision regarding voting on the Amended Plan after receiving the advice of his or her individual counsel.

**Shareholder Proponents**

Each Shareholder Proponent shall, subject to the receipt of the Disclosure Statement and other solicitation materials in respect of the Amended Plan, vote or cause to be voted all of its Interests to accept the Amended Plan.

| | |
|---|---|
| **Stay and Resolution of Tubbs Trials** | The Debtors shall promptly enter into discussions (which the Debtors have done) for the settlement of all the preference cases arising out of the Tubbs fire pending in the Superior Court for the State of California (the "**Tubbs Cases**"), and upon the filing of this Motion, the Parties agree to seek a 15 day continuance of the Tubbs Cases pursuant to California Code of Civil Procedure § 36.5(f), which shall be made no later than December 10, 2019. |
| | Upon approval of the Tort Claimants RSA, the Debtors are required to have entered into one or more settlement agreements settling all of the Tubbs |

| | |
|---|---|
| | Cases, which shall (i) allow such claims subject to payment solely from the Fire Victims Trust (as defined in the Term Sheet and provided in the Amended Plan), (ii) be in form and substance satisfactory to the parties thereto, (iii) be confidential and sealed, (iv) not be admissible or introduced into evidence for any purpose in any proceeding, and (v) have filed a motion seeking approval of such settlements on shortened notice. |
| **Stay and Resolution of Estimation Proceedings** | Upon filing this Motion, the Parties agree to seek a stay of the estimation proceedings until an order has been entered resolving the estimation proceedings or the Tort Claimants RSA is terminated pursuant to Section 3 of the Tort Claimants RSA.

The Debtors shall file a motion seeking entry of an order resolving the estimation proceedings within three (3) days of the entry of an order by the Bankruptcy Court approving the Disclosure Statement with respect to the Amended Plan, to be heard at or before the beginning of the Confirmation Hearing. The order approving such motion shall also provide for the aggregate estimation and aggregate allocation of the Fire Victim Claims in the amount of the Aggregate Fire Victims Consideration for all purposes in the Chapter 11 Cases. |
| **Key Termination Rights** | **Automatic Termination Events**

The Tort Claimants RSA will terminate automatically upon the occurrence of certain events, including:

- The failure to satisfy certain milestones, requiring that:
  - An order granting this Motion is entered by December 20, 2019.
  - The Disclosure Statement for the Amended Plan is approved by March 30, 2020.
  - The motion to approve the settlement of the estimation proceedings is filed by March 30, 2020.
  - The Amended Plan is confirmed by June 30, 2020.
  - The Amended Plan's Effective Date occurs prior to August 29, 2020.
- The requisite number of votes of individual fire claimants to accept the Amended Plan is not obtained by the later of (i) the voting deadline for the Amended Plan and (ii) June 30, 2020.
- The Governor advises the Debtors on or before December 13, 2019 that the Amended Plan and the restructuring transactions provided therein do not in his sole judgment comply with AB 1054 and the Debtors have not modified the Amended Plan in a manner acceptable to the Governor by the earlier of a hearing of this Motion and December 17, 2019. The Parties have agreed not to challenge in the Bankruptcy Court the Governor's exercise of his judgment as to these matters. |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| | **TCC / Requisite Consenting Fire Claimant Professionals Termination Events** |
| | The Tort Claimants RSA may be terminated if on or before the hearing on this Motion Section 4.19(f)(ii) of the Amended Plan (and any related provisions) has not been modified to the satisfaction of the TCC and Requisite Consenting Fire Claimant Professionals. |
| | If the TCC exercises its termination right pursuant to its fiduciary duty (as described below), such termination shall only terminate the TCC as a party to the Tort Claimants RSA and shall not terminate the Tort Claimants RSA for any other Party. |
| | **Debtor / Shareholder Proponent Termination Event** |
| | The Debtors or either Shareholder Proponent may terminate the Tort Claimants RSA upon breach by the TCC or Consenting Fire Claimant Professionals that represent, in aggregate, more than 8,000 holders of Fire Victim Claims. |
| | **Other Termination Events** |
| | In addition to the preceding termination rights, the parties have customary termination rights they can exercise in the event of a breach of the Tort Claimants RSA by another party. |
| **Effect of Termination** | Upon termination of the Tort Claimants RSA: <br> • The Parties are released from their prospective obligations, and all prior agreements between the Parties are null and void. <br> • Estimation proceedings shall recommence in District Court. <br> • Obligations relating to settlement of the Tubbs Cases remain enforceable, to the extent that the Tort Claimants RSA is approved. <br> • Tubbs fire liability and damages will be resolved through estimation in District Court instead of state court. |
| **Fiduciary Duty** | Solely as to the TCC, nothing in the Tort Claimants RSA or Amended Plan shall require the TCC to take any action that it determines in good faith to be inconsistent with its fiduciary duties, but the TCC acknowledges that its entry into the Tort Claimants RSA is consistent with its fiduciary duties. |

## V. BASIS FOR RELIEF REQUESTED

1. **The Tort Claimants RSA and Term Sheet Represent a Substantial Achievement and Milestone in the Chapter 11 Cases, Are a Sound Exercise of the Debtors' Business Judgment, and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code.**

The Tort Claimants RSA and Term Sheet encompass a comprehensive settlement resulting from extensive, good faith negotiations and mediation among the Debtors and the other Parties. The Tort Claimants RSA not only reflects a substantial compromise of the asserted Fire Victim Claims, but also expedites the successful resolution of these Chapter 11 Cases by dispensing with the pending

estimation proceedings and the costs, expenses, and uncertainty associated therewith, and paving the way toward confirmation of the Amended Plan well in keeping with the June 30, 2020 deadline established under AB 1054. The importance of this achievement cannot be overstated. Indeed, as stated above, the Amended Plan has the support of all impaired classes and plainly represents the best path for the Debtors' successful emergence from chapter 11 and the expeditious payment of Fire Victim Claims.

The Court may authorize the Debtors to enter into, and perform under, the Tort Claimants RSA pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the requested relief herein. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification."); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief, the action was in the best interest of the company. *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). *See also, In re AWTR Liquidation Inc.,* 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) (referencing the Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C); *In re Johns-Manville*

Case: 19-30088    Doc# 5038    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 17 of 25

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Corp.*, 60 B.R. at 615–16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions").  Thus, if, as they clearly do here, a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

Courts have relied on both sections 363(b) and 105(a) when approving plan support agreements such as the Tort Claimants RSA, routinely finding that such relief is entirely consistent with the applicable provisions of the Bankruptcy Code.  *See, e.g., In re Pacific Gas and Electric Company*, Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) [Docket No. 5558] (order approving proposed settlement of approximately $2 billion in asserted unsecured claims against the debtor as part of plan support agreement under sections 363(b) and 105(a) of the Bankruptcy Code); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Dec. 13, 2017) [Docket No. 1359] (order approving postpetition plan support agreement pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *see also In re Exide Techs*, Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015) [Docket No. 3087] (order authorizing debtor to enter into plan support agreement pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Dec. 23, 2009) [Docket No. 1030] (same).

The Tort Claimants RSA and Term Sheet are the product of substantial arm's-length, good faith negotiations and formal mediation under the auspices of former Bankruptcy Judge Randall Newsome, that were successful in building a consensus with the Debtors' largest creditor constituency and resolving unliquidated and contested liabilities that are critical to the chapter 11 plan process and the successful administration of these cases.  Pursuant to the Tort Claimants RSA, the TCC and Consenting Fire Claimant Professionals who represent approximately 70% in number of holders of Fire Victim Claims have agreed to support the Amended Plan and to recommend that their respective constituencies vote to accept the Amended Plan.  This represents an overwhelming amount of consensus and support in favor of the Amended Plan, with now all three wildfire claim constituencies (the Public Entities, the Subrogation Claimants, and the TCC) committing to support the Amended Plan.

As this Court is well aware, the TCC and its constituency have asserted that they have claims against the Debtors well in excess of $36 billion.  Pursuant to the Tort Claimants RSA, those

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

claims will be fully resolved and discharged under the Amended Plan for consideration having a value of approximately $13.5 billion. This represents a significant resolution given the magnitude of the asserted claims, the pending estimation proceedings, and the substantial costs, risks, and uncertainties attendant thereto.

After assessing the asserted Fire Victim Claims, the Debtors concluded that entry into the Tort Claimants RSA is in the best interests of the Debtors and their estates. The Debtors, with the assistance and advice of their retained professionals, have fully evaluated the Fire Victim Claims and the assertions of the TCC and of the firms representing the individual claimants regarding the value of such claims, as well as the risks of ongoing litigation. As stated, the Fire Victim Claims represent an uncertain but potentially large exposure that the TCC has alleged could exceed $36 billion. The Debtors have weighed this potential exposure against the costs, burdens, and uncertainties of further litigation and determined that resolving the Fire Victim Claims as provided in the Tort Claimants RSA is a prudent exercise of business judgment on behalf of the Debtors.

The negotiations culminating in the Tort Claimants RSA and Term Sheet were discussed with management and the Debtors' Board of Directors (the "**Board**") during the negotiation process. The Board and management have been presented with data, information, and analysis pertaining to the Debtors' estimation of the Debtors' potential liability with respect to the Fire Victim Claims on multiple occasions and thoroughly evaluated, with the assistance of outside counsel and advisors, all aspects of the Tort Claimants RSA and Term Sheet. The result of those deliberations was the decision to enter into the Tort Claimants RSA.

If the Tort Claimants RSA is not approved, the Fire Victim Claims would be subject to the pending estimation proceedings before the District Court and this Court, and a jury trial in the California State Superior Court. As the Court is aware, estimation of the Fire Victim Claims will be a time consuming, expensive, and highly uncertain process involving complicated issues of state and federal law and fact-specific issues relating to causation, liability, and damages involving not less than twenty-two separate wildfires and literally thousands of individual loss claims. The Tort Claimants RSA avoids the risks and uncertainties of the estimation proceedings to the Debtors and their other economic stakeholders with respect to a major claims constituency, providing greater certainty to the

plan process and the Debtors' ability to timely emerge from chapter 11. Moreover, as stated, approval of the Tort Claimants RSA will result in the support of the Amended Plan by all impaired classes, paving the way to the successful conclusion of these Chapter 11 Cases.

In view of the magnitude of the asserted Fire Victim Claims, the risks, uncertainties and expense attendant to litigation of such claims and other factors noted above, the Debtors believe entry into the Tort Claimants RSA is fair and reasonable and represents a sound exercise of the Debtors' business judgment.

### 2. Entry into the Tort Claimants RSA is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019.

The Debtors further submit that entry into the Tort Claimants RSA is in the best interests of the Debtors' estates and all stakeholders and should be approved under Bankruptcy Rule 9019, in the event such rule is applicable. Notably, as indicated, distributions will be made to the Fire Victim Trust only upon confirmation and consummation of the Amended Plan.

Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. R. 9019(a). This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation over contentious issues and expedite the administration of the bankruptcy estate. *See Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The decision to approve a particular compromise lies within the sound discretion of the Court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F. 2d 610, 620 (9th Cir. 1988). A proposed compromise and settlement should be approved when it is "fair and equitable" and "in the best interest of the [debtor's] estate." *In re A&C Properties*, 784 F.2d at 1381. The court must apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Courts in this jurisdiction typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties, if any, to be encountered in the matter of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (iv) the paramount interest of the creditors and the proper deference to their reasonable views in the premises. *See In re Woodson,* 839 F. 2d at 620 (quoting *A&C Props.,* 784 F.2d at 1380). It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, the conclusions must favor the approval of the settlement. *See In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004) (citing *In re WCI Cable, Inc*., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

The standard Courts apply for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below the lowest point in the range of reasonableness in terms of benefits to the estate. *See City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Shugrue*, 165 B.R. at 123 (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness.'"); *see also, In re Pacific Gas and Elec. Co.*, 304 B.R. at 417; *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) (same).

While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair),* 538 F.2d 849, 851-52 (9th Cir. 1976), or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 505. As one court explained in assessing a global settlement of claims, "[t]he

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

appropriate inquiry is whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) (emphasis added).

Many courts have approved support agreements similar to the Tort Claimants RSA under Bankruptcy Rule 9019. *See, e.g., In re Pacific Gas and Electric Company*, Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) [Docket No. 5558] (approving a settlement, as part of plan support agreement with senior debtholders, pursuant to Bankruptcy Rule 9019); *Energy Future Holdings Corp. v. Del. Trust Co.*, 648 F. App'x 277, 285 (3d Cir. 2016) (affirming approval under Bankruptcy Rule 9019 of holistic settlement of secured creditors' claims); *In re Residential Capital, LLC*, 2013 Bankr. LEXIS 2601 (Bankr. S.D.N.Y. Jun. 27, 2013) (order approving plan support agreement under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019); *In re CHC Grp. Ltd.*, Case No. 16-31854 (BJH) (Bankr. N.D. Tex. Dec. 20, 2016) [Docket No. 1381] (order approving plan support agreement under Bankruptcy Rule 9019); *In re Federal-Mogul Global Inc., T&N Limited*, Case No. 01-10578 (JFK) (Bankr. D. Del. Feb. 7, 2007) [Docket No. 11508] (same); *In re Fiddler's Creek, LLC*, Case No. 10-3846 (CPM) (Bankr. M.D. Fla. Feb. 25, 2011) [Docket No. 702] (order approving plan support agreement and related settlement under Bankruptcy Rule 9019); *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Oct. 3, 2014) [Docket No. 165] (approving a restructuring support agreement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019); *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 467 (2d Cir. 2007) (approving settlement of lien challenge and claims of secured creditors pursuant to Bankruptcy Rule 9019 as it "cleared the way for implementation of a reorganization plan.").

As demonstrated above, the terms of the Tort Claimants RSA and Term Sheet are fair and reasonable and in the best interest of the Debtors, their estates, creditors and other stakeholders, and should be approved. The Tort Claimants RSA and Term Sheet are the result of protracted, good faith, arms' length negotiations among sophisticated principals and competent and experienced retained professionals who effectively and efficiently represented the interests of their respective clients.

Further, as stated, the Tort Claimants RSA eliminates the costs, litigation, and risks associated with the estimation of the Fire Victim Claims currently pending before three separate Courts.

These proceedings involve complex and uncertain areas of state and federal law as well as highly fact specific issues involving twenty-two separate fires and thousands of underlying individual claims. Indeed, with respect to the Tubbs fire, the most severe 2017 fire, although the Debtors believe, as confirmed by Cal FIRE, that their equipment was not involved, there can be no certainty that a jury in California Superior Court would not reach a different conclusion. As to the Fire Victim Claims, the Tort Claimants RSA and Term Sheet completely mitigate this risk. Courts have routinely acknowledged that uncertainty of litigation and federal policy weigh in favor of approval of settlements. *See In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at \*9-10 (Bankr. D.P.R. Mar. 31, 2009) ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily in favor of the approval of the Settlement Agreement."); *In re Manuel Mediavilla, Inc.*, 568 B.R. 551, 567 (B.A.P. 1st Cir. 2017) (recognizing "federal policy encouraging settlement of bankruptcy litigation.").

Additionally, the settlement, as embodied in the Tort Claimants RSA, under any scenario clearly does not fall below the lowest point in the range of reasonableness. The TCC has asserted that the prepetition fire liabilities associated with the Fire Victim Claims exceed $36 billion. The Aggregate Fire Victim Consideration having a value of $13.5 billion is a reasonable compromise between the Debtors' current estimate of accrued liabilities on account of uninsured and underinsured fire claims of $8.4 billion and the TCC's asserted $36 billion of such claims. Entry into the Tort Claimants RSA avoids the risks of an adverse litigated outcome that could be severely detrimental to the recoveries of the other creditor constituencies, and it serves to expedite the administration of these cases and distributions to holders of allowed claims.

**3.  The Plan Support Terms of the Tort Claimants RSA are Reasonable and Customary.**

The provisions in the Tort Claimants RSA that require the Parties to support the Amended Plan are standard and routine and are not inconsistent with this Court's decision to terminate exclusivity. They are consistent with this Court's order instituting mediation and largely achieve a global consensus that will be reflected in the Amended Plan. Absent these routine and customary plan support provisions, the Debtors', the TCC's, and the other Parties' substantial efforts and hard-fought negotiations would be meaningless. Courts have stated as much when presented with challenges to approval of plan support

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

agreements and voting lock-up provisions. *See*, *e.g.*, *In re Indianapolis Downs, LLC.*, 486 B.R. 286, 296 (Bankr. D. Del. 2013) (refusing to designate votes over an RSA provision that "predictably" contained a commitment to vote for the plan embodied in the deal, when "the record clearly reflects that the Restructuring Support Parties were acting at all times to maximize their own recoveries and to advance the Debtors' reorganization process to facilitate a prompt and substantial return on their respective claims"); *see also Trans World Airlines, Inc. v. Texaco Inc. (In re Texaco Inc.)*, 81 B.R. 813, 815 (Bankr. S.D.N.Y. 1988) ("If Pennzoil were free to support another plan while Texaco's plan was still capable of being approved, the negotiation between Texaco and Pennzoil would be meaningless."). Restructuring support agreements have been utilized and found to be entirely appropriate in similar circumstances where other Courts have made the decision to terminate a debtor's exclusive periods. *See*, *e.g.*, *In re Exide Technologies*, Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 2, 2015) [Docket Nos. 2893, 3087] (approving, after exclusivity had been terminated, a plan support agreement where certain supporting creditors agreed not to support or vote for any other plan); *In re SeraCare Life Sciences*, Case No. 06-00510 LA11 (Bankr. S.D. Cal. Dec. 21, 2006) [Docket Nos. 837, 961] (approving, after exclusivity had been terminated, a plan support agreement pursuant to which the signing parties agreed not to support any other plan).

### 4. Conclusion

The Tort Claimants RSA represents a major milestone and achievement in these Chapter 11 Cases. It is supported by the TCC and law firms representing approximately 70% in number of the in excess of 70,000 Fire Victim Claims that have been filed to date in these cases. Approval of the Tort Claimants RSA, which is fully warranted by the applicable undisputed facts and applicable law, will expedite the successful conclusion of these cases and, just as importantly, distributions to the victims of the prepetition wildfires.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the TCC; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) the Consenting Fire Claimant Professionals; (xiii) counsel for the Shareholder Proponents; and (xiiv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment, appropriate under section 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) the Debtors such other and further relief as the Court may deem just and appropriate.

Dated: December 9, 2019

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER & BENVENUTTI LLP**

By: __/s/ Jessica Liou_____
     Jessica Liou

*Attorneys for Debtors and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119