| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                  **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF JASON P. WELLS IN SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS AND TCC TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE TCC, CONSENTING FIRE CLAIMANT PROFESSIONALS, AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF**<br><br>Date: December 17, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court,<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br>**Objection Deadline**: **December 13, 2019, 4:00 p.m. (PT)** |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Jason P. Wells, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

I am the Executive Vice President and Chief Financial Officer of PG&E Corporation ("**PG&E Corp.**"). Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corp., the "**Debtors**") is a wholly-owned subsidiary of PG&E Corp. In 2007, I joined PG&E Corp. as the Director of Technical Accounting and was promoted to Senior Director of Corporate Accounting and Assistant Controller in 2008. I became Vice President, Finance of PG&E Corp. in October 2011, and became Vice President, Business Finance of PG&E Corp. in August 2013, and became Senior Vice President and Chief Financial Officer in January 2016. I was appointed to my current position at PG&E Corp. in June 2019. I have a bachelor's degree and a master's degree in accounting from the University of Florida and I am a Certified Public Accountant in the State of Florida.

I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors and TCC to Enter into Restructuring Support Agreement with the TCC, Consenting Fire Claimant Professionals and Shareholder Proponents, and (II) Granting Related Relief* (the "**Motion**"), filed contemporaneously hereto.[1] The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information reviewed by me in the course of my duties and responsibilities. If called upon to testify, I would testify to the facts set forth in this Declaration.

The Debtors filed these Chapter 11 Cases with the goal of achieving a fair, equitable, and expeditious resolution of billions of dollars in liabilities arising from the 2017 and 2018 Northern California fires (including Tubbs) and the 2015 Butte Fire. Today, I believe the Debtors are significantly closer to realizing this goal, having reached, with the assistance of the Court-appointed mediator, a third, fundamentally important settlement to compromise previously unresolved claims of, in my view, the last

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

key constituency in these Chapter 11 Cases—the individual fire claimants. Pursuant to that certain Restructuring Support Agreement dated December 6, 2019 (the "**Tort Claimants RSA**") among the Debtors, the TCC, the law firms that I understand represent individuals holding approximately 70% in number of prepetition fire claims filed against the Debtors (the "**Consenting Fire Claimant Professionals,**" as defined in the Tort Claimants RSA), and certain funds and accounts I understand are managed by Abrams Capital Management, LP and Knighthead Capital Management, LLP (the "**Shareholder Proponents**"), the parties have resolved, among other things, the treatment and discharge of individual fire claims under the Debtors' Amended Plan (as defined below) in compliance with AB 1054. Pursuant to the Tort Claimants RSA, under the Debtors' Amended Plan, over $36 billion in prepetition fire liabilities that I understand have been asserted by the TCC and its constituency in these Chapter 11 Cases will be resolved through the contribution of cash and stock with an aggregate value of $13.5 billion and the assignment of certain rights and causes of action to a trust established for the benefit of the fire claimants. The settlement is embodied in the Tort Claimants RSA and term sheet annexed thereto as **Exhibit A** (the "**Term Sheet**"), and will be implemented pursuant to, and incorporated in, an amendment to the *Debtors' Joint Chapter 11 Plan of Reorganization*, dated November 4, 2019 [Docket No. 4564] (as further amended, modified, or supplemented in accordance with the terms of the Tort Claimants RSA and Term Sheet, the "**Amended Plan**"). The Tort Claimants RSA (including the Term Sheet) is attached as **Exhibit A** to the Motion. The Debtors intend to file the Amended Plan on or prior to December 12, 2019. The Term Sheet summarizes the treatment of prepetition fire claims that will be set forth in the Amended Plan. The Debtors and the Shareholder Proponents will be co-proponents of the Amended Plan.

The principal terms of the Tort Claimants RSA and Term Sheet are summarized in the Motion and I am familiar with such terms and provisions. The Tort Claimants RSA and Term Sheet are the product of extensive, good faith, arm's-length negotiations and mediation involving multiple parties spanning multiple weeks. Both the Tort Claimants RSA and Term Sheet reflect the heavily negotiated resolution of a number of critical, substantive issues among the Debtors, the TCC, the Consenting Fire Claimant Professionals, and the Shareholder Proponents. These include the following:

- The Tort Claimants RSA and Term Sheet fully resolve the Amended Plan's treatment of all prepetition fire claims for consideration having a value of approximately $13.5 billion.[2] This represents a settlement and resolution of the over $36 billion in such claims previously asserted by the TCC and its constituency.

- I believe the Tort Claimants RSA eliminates any reason or basis to continue the protracted competing chapter 11 plan process. Under the Tort Claimants RSA, the TCC and the Consenting Fire Claimant Professionals will support the Amended Plan. The TCC will recommend holders of Fire Victim Claims vote to accept the Amended Plan, and the Consenting Fire Claimant Professionals will use all reasonable efforts to encourage their clients (who, it has been represented to me, hold approximately 70% of the prepetition fire claims, which the Debtors' professionals have informed me total in excess of 70,000 claims) to support and vote in favor of the Amended Plan, which I believe will greatly facilitate the Debtors' ability to successfully and timely emerge from chapter 11 by the June 30, 2020 confirmation deadline established in AB 1054. Further, upon approval of the Tort Claimants RSA, the TCC will withdraw its support and cease to be a co-proponent of the *Joint Chapter 11 Plan of Reorganization of Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders* (including any amended or modified version thereof, the "**Alternative Plan**"). As a result, I expect four major constituencies (the TCC and individual fire claimants, the Subrogation Claimants, the Public Entities, and the Shareholder Proponents) will be fully supportive of one plan—the Debtors' Amended Plan.

- The Tort Claimants RSA eliminates the substantial costs, risks and uncertainties attendant to the estimation of the Fire Victim Claims and the Tubbs Cases.

- I understand all other classes of claims under the Debtors' Amended Plan will be unimpaired, so I expect approval of the Tort Claimants RSA will expedite the successful conclusion of the Chapter 11 Cases and distributions to holders of Fire Claims.

The Debtors have already complied with the provisions of the Tort Claimants RSA requiring the Debtors to provide the Governor with a draft of the Amended Plan by December 6, 2019 at 7:00 p.m. (PT), and with the information necessary for the Governor and his counsel and advisors to

---

[2] This excludes the previously settled Subrogation Wildfire Claims and Public Entities Wildfire Claims, but includes federal and state claims asserted by the DOJ, FEMA, and certain California State agencies (including Cal OES and CAL FIRE).

evaluate the Amended Plan and the restructuring transactions provided therein. Additionally, the Debtors have commenced discussions to settle the Tubbs Cases.

I believe that entry into the Tort Claimants RSA represents a sound exercise of the Debtors' business judgment and that the terms of the Tort Claimants RSA and Term Sheet are fair and reasonable and in the best interests of the Debtors, their estates, creditors, and all other stakeholders. I believe the Tort Claimants RSA not only reflects a substantial compromise of the asserted Fire Victim Claims, but will also expedite the successful resolution of these Chapter 11 Cases by dispensing with the pending estimation proceedings and the costs, expenses, and uncertainty associated therewith, and paving the way toward confirmation of the Amended Plan well in keeping with the June 30, 2020 deadline established under AB 1054.

Prior to entering into the Tort Claimants RSA, the Debtors' management and Board of Directors (the "**Board**"), with the assistance and advice of their retained professionals, fully evaluated the Fire Victim Claims and the assertions of the TCC and of the firms representing the individual claimants regarding the value of such claims, as well as the risks of ongoing litigation. The Fire Victim Claims represent an uncertain but potentially large exposure that the TCC has alleged could exceed $36 billion. The Debtors' Board and management have weighed this potential exposure against the costs, burdens, and uncertainties of further litigation and determined that resolving the Fire Victim Claims as provided in the Tort Claimants RSA is a prudent exercise of business judgment on behalf of the Debtors.

The negotiations culminating in the Tort Claimants RSA and Term Sheet were discussed with management and the Board during the negotiation process. The Board and management have been presented with data, information, and analysis pertaining to the estimation of the Debtors' potential liability with respect to the Fire Victim Claims on multiple occasions and thoroughly evaluated, with the assistance of outside counsel and advisors, all aspects of the Tort Claimants RSA and Term Sheet. The result of those deliberations was the decision to enter into the Tort Claimants RSA.

If the Tort Claimants RSA is not approved, the Fire Victim Claims would be subject to the pending estimation proceedings before the District Court and this Court, and a jury trial in the California State Superior Court. It is my understanding that estimation of the Fire Victim Claims will

be a time consuming, expensive, and highly uncertain process involving complicated issues of state and federal law and fact-specific issues relating to causation, liability, and damages involving not less than twenty-two separate wildfires and literally thousands of individual loss claims. With respect to the Tubbs fire, the most severe 2017 fire, although I and the Debtors' Board believe, as confirmed by Cal FIRE, that the Debtors' equipment was not involved, I have been advised that there can be no certainty that a jury in California Superior Court would not reach a different conclusion. Additionally, as stated, I also believe the Tort Claimants RSA avoids the risks and uncertainties of the estimation proceedings to the Debtors and their other economic stakeholders with respect to a major claims constituency, providing greater certainty to the plan process and the Debtors' ability to timely emerge from chapter 11.

In view of the magnitude of the asserted Fire Victim Claims, the risks, uncertainties and expense attendant to litigation of such claims and other factors noted above, I believe, and the Debtors' Board also concluded, that entry into the Tort Claimants RSA is fair and reasonable and represents a sound exercise of the Debtors' business judgment. I believe, and the Debtors' Board agrees, that the Aggregate Fire Victim Consideration to be paid under the Tort Claimants RSA and Term Sheet having a value of $13.5 billion is a reasonable compromise between the Debtors' current estimate of accrued liabilities on account of uninsured and underinsured fire claims of $8.4 billion and the TCC's asserted $36 billion of such claims. Entry into the Tort Claimants RSA avoids the risks of an adverse litigated outcome that could be severely detrimental to the recoveries of the other creditor constituencies, and it serves to expedite the administration of these cases and distributions to holders of allowed claims.

As stated above, I believe the Tort Claimants RSA represents a major milestone and achievement in these Chapter 11 Cases. It is a major achievement critical to advancing these Chapter 11 Cases to a timely and successful conclusion. Accordingly, I believe that the Tort Claimants RSA and Term Sheet should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: December 9, 2019
San Francisco, California

_____
Jason P. Wells

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119