| | |
|---|---|
| **LABATON SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |
| Thomas A. Dubbs | Michael S. Etkin (*pro hac vice*) |
| Louis Gottlieb | Andrew Behlmann (*pro hac vice*) |
| Carol C. Villegas | One Lowenstein Drive |
| Jeffrey A. Dubbin (SBN 287199) | Roseland, New Jersey 07068 |
| 140 Broadway | |
| New York, New York 10005 | |
| | |
| *Lead Counsel to Lead Plaintiff and the Class* | *Bankruptcy Counsel to Lead Plaintiff and the Class* |
| | |
| **MICHELSON LAW GROUP** | |
| Randy Michelson (SBN 114095) | |
| 220 Montgomery Street, Suite 2100 | |
| San Francisco, California 94104 | *(additional counsel on Exhibit A)* |
| | |
| *Bankruptcy Counsel to Lead Plaintiff and the Class* | |

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>    - and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                      Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br>Chapter 11<br>(Jointly Administered)<br><br>**SECURITIES LEAD PLAINTIFF'S MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS PROOF OF CLAIM**<br><br>Date:       January 14, 2020<br>Time:      10:00 a.m. (Pacific Time)<br>Before:   Hon. Dennis Montali,<br>             United States Bankruptcy Court<br>             Courtroom 17, 16th Floor<br>             450 Golden Gate Avenue<br>             San Francisco, California 94102<br><br>**Objection Deadline:** December 23, 2019 at 4:00 p.m. (Pacific Time) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................4

PRELIMINARY STATEMENT .........................................................................................8

BACKGROUND ................................................................................................................9

    A.    The Securities Litigation ...............................................................................9

    B.    The Chapter 11 Cases ....................................................................................9

    C.    Consolidation with the *York County* action ...............................................9

    D.    The Third Amended Complaint ...................................................................10

        1.    Exchange Act Claims........................................................................10

        2.    Securities Act Claims .......................................................................10

        3.    The Class ..........................................................................................11

        4.    Motions to Dismiss the TAC ............................................................11

    E.    The Bar Date and Bar Date Notices ............................................................11

        1.    Mailed Bar Date Notices..................................................................13

        2.    Publication Notice............................................................................13

    F.    The Class Claims .........................................................................................14

ARGUMENT .....................................................................................................................15

I.    THE COURT SHOULD EXERCISE ITS DISCRETION TO APPLY
    BANKRUPTCY RULE 7023 TO THE CLASS CLAIMS...................................15

    A.    Class proofs of claim are permitted in Chapter 11 bankruptcy proceedings. ..............15

    B.    Standard for application of Bankruptcy Rule 7023 to class proofs of claim ...............16

    C.    The relevant *Musicland* Factors weigh strongly in favor of applying
        Bankruptcy Rule 7023 to the Class Claims. ...............................................17

        1.    The fact that the Class was not certified before the Petition Date does not
            preclude application of Bankruptcy Rule 7023 (Musicland Factor No. 1)........17

        2.    Members of the Class did not receive constitutionally mandated actual
            notice of the Bar Date (Musicland Factor No. 2)................................18

            (a)    Known creditors were entitled to actual notice of the Bar Date. .............18

        (b)     Members of the Class are known creditors and thus were entitled to actual notice of the Bar Date. ...............................................................20

        (c)     The Debtors did not provide adequate notice of the Bar Date to the Class. ...............................................................................21

    3.    Certification of the Class will not adversely affect the administration of the Debtors' estates (Musicland Factor No. 3). ...................................22

CONCLUSION ........................................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Apparel Shareholder Litig.*,
    2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) ...................................................20

*In re Amdura Corp.*,
    170 B.R. 445 (D. Col. 1994) ...................................................................................................21

*In re American Reserve Corp.*,
    840 F.2d 487 (7th Cir. 1988) ............................................................................................15, 22

*In re Argonaut Fin. Servs., Inc.*,
    164 B.R. 107 (N.D. Cal. 1994) ................................................................................19, 20, 21

*In re ATD Corp.*,
    278 B.R. 758 (Bankr. N.D. Ohio 2002) .................................................................................18

*Birting Fisheries v. Lane (In re Birting Fisheries)*,
    92 F.3d 939 (9th Cir. 1996) ...................................................................................................15

*In re Chaparral Energy, Inc.*,
    571 B.R. 642 (Bankr. D. Del. 2017) ..........................................................................16, 17, 18

*Chemetron Corp. v. Jones*,
    72 F.3d 341 (3d Cir. 1995) ...............................................................................................19, 21

*City of New York v. New York, N.H. & H.R. Co.*,
    344 U.S. 293 (1953) ..........................................................................................................18, 20

*Destefano v. Zynga, Inc.*,
    2016 U.S. Dist. LEXIS (N.D. Cal. Dec. 11, 2016) ...............................................................20

*Eisen v. Carlisle & Jacquelin et al.*,
    417 U.S. 156 (1974) ...............................................................................................................20

*In re First Alliance Mortgage Co.*,
    269 B.R. 428 (C.D. Cal. 2001) ..............................................................................................17

*In re Freedom Commc'ns Holdings, Inc.*,
    472 B.R. 257 (Bankr. D. Del. 2012) ......................................................................................19

*Gentry v. Siegel*,
    668 F.3d 83 (4th Cir. 2012) ..............................................................................................16, 17

*In re Kaiser Group Int'l, Inc.*,
    278 B.R. 58 (Bankr. D. Del. 2002) ...............................................................15, 16

*Levin v. Maya Constr. Co. (In re Maya Constr. Co.)*,
    78 F.3d 1395 (9th Cir. 1996) ...........................................................................19

*In re MF Global Inc.*,
    512 B.R. 757 (Bankr. S.D.N.Y. 2014)..............................................16, 17, 18, 22

*Mortland v. Certified Parking Attendants, LLC (In re Certified Parking
    Attendants, LLC)*,
    2012 U.S. Dist. LEXIS 19775 (N.D. Cal. Feb. 16, 2012) .......................................15

*Mullane v. Central Hanover Bank & Trust, Co.*,
    339 U.S. 306 (1950)....................................................................................20, 21

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007).............................................................17, 18, 22

*Palmdale Hills Prop., LLC v. Lehman Comm'l Paper, Inc. (In re Palmdale Hills
    Prop., LLC)*,
    457 B.R. 29 (B.A.P. 9th Cir. 2011).....................................................................15

*Reid v. White Motor Corp.*,
    886 F.2d 1462 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990)........................15

*Richmond v. United States*,
    172 F.3d 1099 (9th Cir. 1999) .........................................................................19

*In re Salomon Analyst Litig.*,
    373 F.Supp.2d 252 (S.D.N.Y. 2005)...................................................................18

*Teva Pharm. USA, Inc. v. Abbott Labs.*,
    252 F.R.D. 213 (D. Del. 2008) ..........................................................................8

*The Certified Class in the Chartered Securities Litig. v. The Charter Co. (In re
    The Charter Co.)*,
    876 F.2d 866 (11th Cir. 1989), *pet. for cert. dismissed*, 496 U.S. 944 (1990) ............... *passim*

*In re Verity Health Sys. Of Cal.*,
    2019 Bankr. LEXIS 1818 (Bankr. C.D. Cal. June 11, 2019) .................................17

**Statutes**

11 U.S.C. § 510(b) ..............................................................................................23

15 U.S.C. § 78u-4(b)(3)(B)....................................................................................18

**Other Authorities**

Fed. R. Bankr. P. 7023 ................................................................................................ *passim*

Fed. R. Bankr. P. 9014 ..............................................................................................7, 15, 16

Fed. R. Civ. P. 23 ..............................................................................................8, 14, 15, 16, 22

Public Employees Retirement Association of New Mexico ("**Lead Plaintiff**" or "**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**") pending in the U.S. District Court for the Northern District of California (the "**District Court**") on behalf of itself and the proposed class it represents in the Securities Litigation (the "**Class**"), together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (collectively, the "**Securities Act Plaintiffs**" and together with Lead Plaintiff, the "**Securities Plaintiffs**"), hereby submit this motion (the "**Motion**") for entry of an order, pursuant to Rules 9014(a) and (c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), substantially in the form submitted herewith (the "**Proposed Order**") as **Exhibit A**:

- directing that Bankruptcy Rule 7023 applies to the class proofs of claim filed by Lead Plaintiff on behalf of itself and the Class against each of the Debtors (the "**Class Claims**") [Claim Nos. 72193, 72273] and,

- if the Court directs that Bankruptcy Rule 7023 applies to the Class Claims, establishing a briefing schedule for and scheduling a hearing, if necessary, on certification of the Class for all purposes in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of the above-captioned debtors in possession (the "**Debtors**" or "**PG&E**"), including but not limited to (a) voting on and, if applicable, opting out of and/or objecting to any releases contained in, any chapter 11 plan or plans filed in the Chapter 11 Cases, (b) allowance of the Class Claims, and (c) receiving any distributions on account of the Class Claims on behalf of the entire Class, subject to allocation and distribution as may be ordered by the District Court in the Securities Litigation.

For the reasons set forth below, the Motion should be granted.

# PRELIMINARY STATEMENT[1]

*"The Supreme Court has noted that the dominant purpose behind certifying Rule 23(b)(3) cases is to vindicate the rights of people who individually would be without the strength to bring their opponents into court; it overcomes the problem of small recoveries, which do not provide enough incentive for individual actions to be prosecuted."* [2]

Known creditors of a chapter 11 debtor, such as the members of the Class, are entitled, as a matter of Constitutional Due Process, to actual notice of a claims bar date. Attempting to reach known creditors through publication or other forms of constructive notice is tantamount to giving them no notice at all. Such is the case here. The identities and potential claims of Class members were readily and reasonably ascertainable by the Debtors using well-established procedures commonly used by claims administrators in all securities class action cases, yet the Debtors made no effort whatsoever to provide members of the Class with the constitutionally mandated actual notice of the Bar Date.

The Debtors' efforts, however extensive, to provide constructive notice of the Bar Date to their *unknown* creditors – efforts that, in any event, primarily targeted wildfire victims – were fundamentally insufficient and of no effect whatsoever with respect to the Class. Constructive notice (through publication or otherwise) is constitutionally inadequate with respect to *known* creditors such as the Class. Moreover, the Debtors' publication notice, even if any Class members happened to see or read it, was completely inadequate to give Class members notice of the Bar Date or the fact that they hold claims against the Debtors based on violations of the federal securities laws. The most effective and efficient remedy for the Debtors' failure to provide actual notice of the Bar Date to the Class is through the application of Bankruptcy Rule 7023 to the Class Claims and certification of the Class for purposes of these Chapter 11 Cases pursuant to Fed. R. Civ. P. 23. Application of Bankruptcy Rule 7023 and certification of the Class will protect and preserve the rights and claims of thousands of absent Class members, while saving the estate potentially millions of dollars of noticing costs and sparing the Court and

---

[1] Capitalized terms used in this Preliminary Statement but not previously defined have the meanings given thereto below.

[2] *Teva Pharm. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 224 (D. Del. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

the estate the monumental administrative burden of administering tens of thousands of individual Class members' claims. That is the very reason the class action device was created and Bankruptcy Rule 7023 exists.

## BACKGROUND

### A. The Securities Litigation

The initial complaint in the Securities Litigation was filed on June 12, 2018 [DC ECF No. 1]. On September 10, 2018, the District Court consolidated the Securities Litigation and appointed PERA as Lead Plaintiff and Labaton Sucharow LLP as lead counsel for the Class [DC ECF No. 62]. Pursuant to that order, Lead Plaintiff filed a second amended complaint [DC ECF No. 95] on December 14, 2018.

### B. The Chapter 11 Cases

On January 29, 2019, the Debtors filed these Chapter 11 Cases. As a result, the Securities Litigation was, and currently remains, automatically stayed solely with respect to the Debtors pursuant to 11 U.S.C. § 362(a). On February 15, 2019, the Debtors filed an adversary proceeding, Adv. Pro. No. 19-03006, seeking to enjoin continued prosecution of the Securities Litigation and other lawsuits against various non-Debtor defendants. The Court entered an agreed order on May 1, 2019 (the "**May 1 Consent Order**"), dismissing Lead Plaintiff from that adversary proceeding and establishing a timeline for the Debtors to file a new adversary proceeding solely against the Securities Plaintiffs and renew their request to enjoin the continued prosecution of the Securities Litigation against the non-Debtor defendants therein after Lead Plaintiff filed its Third Amended Complaint (the "**TAC**").

### C. Consolidation with the *York County* action

On February 22, 2019, the Securities Act Plaintiffs filed a class action styled as *York County v. Rambo*, Case No. 19-994 (N.D. Cal.) (the "**York County Action**"), asserting claims under the Securities Act of 1933 (the "**Securities Act**") against certain of the Debtors' current and former directors and officers, as well as the underwriters of certain of the Debtors' notes offerings. On May 7, 2019, the District Court consolidated the York County Action with the Securities Litigation and authorized Lead Plaintiff to file the TAC [DC ECF No. 117].

**D. The Third Amended Complaint**

On May 28, 2019, Lead Plaintiff, with the Securities Act Plaintiffs, filed the TAC [DC ECF No. 121]. The TAC asserts claims against eighteen of the Debtors' current and former directors and officers (the "**Individual Defendants**") and twenty-four investment banks that underwrote the Notes Offerings (the "**Underwriter Defendants**" and together with the Individual Defendants, the "**Non-Debtor Defendants**"). But for the imposition of the automatic stay in these Chapter 11 Cases, the Securities Litigation would proceed against the Debtors, alongside the Non-Debtor Defendants, with respect to both the Exchange Act Claims and the Securities Act Claims (as defined below). The Class Claims are based solely on the allegations in the TAC.

**1. *Exchange Act Claims***

The TAC asserts claims under Section 10(b) of the Exchange Act, SEC Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act (the "**Exchange Act Claims**"). Among other things, the TAC alleges that from April 29, 2015 through November 15, 2018 (the "**Class Period**"), the Debtors and the Non-Debtor Defendants intentionally or recklessly misled investors about the Debtors' wildfire safety practices, including representations that the Debtors were in full legal compliance and continuing to invest in safety (as a prudent manager), notwithstanding their numerous and widespread violations of safety regulations and inadequate safety practices. . As information regarding the impact of the Debtors' deficient safety practices emerged between October 12, 2017 and November 15, 2018, investors were surprised, given the Debtors' and Non-Debtor Defendants' numerous public statements during the Class Period touting the Debtors' compliance, safety measures, and intertwined financial health. As a result, the Debtors' artificially inflated share price dropped significantly. Thus, as a result of the Debtors' and Non-Debtor Defendants' fraudulent statements and material omissions set forth in detail in the TAC, Lead Plaintiff and other Class members have suffered significant damages.

**2. *Securities Act Claims***

The TAC also asserts claims under Sections 11 and 15 of the Securities Act (the "**Securities Act Claims**"), arising from the Debtors' four public senior notes offerings on March

1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018 (the "**Notes Offerings**"), in which the Debtors offered and sold approximately $4.35 billion of registered senior notes (the "**Senior Notes**"). The TAC alleges that the offering documents for the Notes Offerings contained thirty-four materially misleading statements.

### 3. *The Class*

As the true nature and extent of PG&E's responsibility for the Northern California wildfires materialized, investors holding PG&E's publicly traded securities suffered significant compensable losses under the federal securities laws. The Class is comprised of investors who acquired the Debtors' securities during the Class Period (unlike the speculators that have purchased PG&E stock immediately prior to and during the bankruptcy) and suffered losses as a result of the Debtors' and the Non-Debtor Defendants' alleged false statements and omissions and other conduct, which inflated the price of the Debtors' securities. The Class is ***not*** defined as, or with any reference to, persons who were physically injured or whose property was damaged or destroyed by the Northern California wildfires.

### 4. *Motions to Dismiss the TAC*

On October 4, 2019, after this Court denied the Debtors' motion to extend the automatic stay to the Non-Debtor Defendants [Adv. Pro. No. 19-03039, ECF No. 23], the Non-Debtor Defendants filed motions to dismiss the TAC [DC ECF No. 148, 155]. Lead Plaintiff's opposition is due on December 6, 2019, the Non-Debtor Defendants' reply, if any, is due on January 10, 2020, and oral argument is scheduled in the District Court for February 6, 2020.

### E. The Bar Date and Bar Date Notices

On July 1, 2019, the Court entered an order (the "**Bar Date Order**") [ECF No. 2806] that, among other things, (a) established October 21, 2019 at 5:00 p.m. (Pacific Time) as the last date for holders of claims against the Debtors to file proofs of claim in respect thereof (the "**Bar Date**"), (b) approved various forms of notice of the Bar Date (collectively, the "**Bar Date Notices**"), including the "**Standard Bar Date Notice**" [ECF No. 2806 Ex. B-1] for creditors other than customers and wildfire victims, along with specialized notices for wildfire victims and customers [ECF No. 2806 Exs. B-2 and B-3]. The Bar Date Order directed the Debtors to mail

the Bar Date Notices to the categories of creditors listed in paragraphs 8, 9, and 10 of the Bar Date Order and to post each of the Bar Date Notices on the Debtors' website. Bar Date Order, ¶¶ 8-11. Members of the Class were not among the categories of creditors who were to receive the Bar Date Notices pursuant to the Bar Date Order. *Id.* Indeed, although Class Members include investors who purchased PG&E stock during the Class Period and still hold that stock, the Bar Date Order expressly excluded "any person or entity that holds an equity security interest in the Debtors" from the categories of individuals and entities to whom the Debtors were required to mail the Standard Bar Date Notice. *Id.* ¶ 8(b).

The Standard Bar Date Notice did not mention the Securities Litigation, the Class, or the Class Period at all, nor did it provide any indication that members of the Class might hold claims against the Debtors and therefore need to file proofs of claim (although doing so would have had little if any effect because, as discussed below, the Debtors did not mail the Standard Bar Date Notice to members of the Class). The only language in the Standard Bar Date Notice that even tangentially suggested a need for members of the Class to file proofs of claim was the ambiguous statement – under the boldfaced heading of "**WHO NEED <u>NOT</u> FILE A PROOF OF CLAIM**" – that

> You do **<u>not</u>** need to file a Proof of Claim on or before the bar date if you are:
> . . .
> any person or entity that holds an equity security interest in the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants, options, or rights to purchase, sell, or subscribe to such a security or interest; *provided, however,* that if any such holder asserts a claim (as opposed to an ownership interest) against the Debtors (including a claim relating to an equity interest or the purchase or sale of such equity interest), a Standard Proof of Claim must be filed on or before the Bar Date . . . .

Standard Bar Date Notice at 7-8. Even the proviso at the end of that statement is vague and potentially misleading, because it refers only to *current holders* of equity interests, not *prior*

*purchasers* such as the members of the Class, many of whom had likely sold their securities before the Debtors mailed the Bar Date Notices.

### 1. Mailed Bar Date Notices

The Bar Date Order directed the Debtors to mail the Standard Bar Date Notice to, among other categories of creditors, "all parties actually known to the Debtors as having claims or potential claims against either of the Debtors (but excluding holders of Fire Claims) which, for the avoidance of doubt, ***excludes any person or entity that holds an equity security interest in the Debtors*. . . ." and "all parties to pending litigation against the Debtors as of the date of entry of this Order (other than holders of Fire Claims) . . . ." *Id.* ¶¶ 8(b), (e) (emphasis added). Although Lead Plaintiff and the Class were known prepetition creditors of the Debtors, the Bar Date Order did not direct the Debtors to undertake, nor does it appear the Debtors ever undertook, any efforts whatsoever to identify the members of the Class and provide the Standard Bar Date Notice (or any other Bar Date Notice) to them. Moreover, as to members of the Class who were current holders of the Debtors' equity securities at the time the Bar Date Notices were mailed, but had no other prepetition claims against the Debtors, the Bar Date Order expressly provided that the Debtors were *not* required to serve the Standard Bar Date Notice on them.

### 2. Publication Notice

The Bar Date Order also approved a "**Supplemental Notice Plan**" pursuant to which the Debtors sought to provide notice to unknown creditors via newspaper publication, digital advertising, television and radio advertising, e-mail, and claim service centers.   *See* Bar Date Order, ¶¶ 2, 12-14; Bar Date Motion [ECF No. 1784] at 23-26; Reply [ECF No. 2646] at 15-20. The Debtors admit that the Supplemental Notice Plan was, as with any publication notice, effective at most only as to unknown creditors, primarily wildfire victims. *See, e.g.*:

- Reply [ECF No. 2646] at 15 ("The Debtors' Supplemental Notice Plan is reasonably calculated to provide adequate notice of the Bar Date ***to unknown claimants***, including Unknown Wildfire Claimants . . . .") (emphasis added);

- Declaration of Shai Y. Waisman [ECF No. 1786], at 5 ("In addition to serving the Bar Date Notices, the Debtors intend to ***provide supplemental notice of the Bar***

*Date [through the Supplemental Notice Plan] to unknown creditors*, including Unknown Wildfire Claimants. . . .") (emphasis added);

- Declaration of Benjamin P.D. Schrag [ECF No. 1787], at 5 (same);

- Declaration of Jeanne C. Finnegan [ECF No. 2642], at 3 (referring to the "multi-faceted and robust Supplemental Notice Plan *to provide notice of the Bar Date to unknown creditors*") (emphasis added); and

- Bar Date Motion [ECF No. 1784] at 23 (describing the Supplemental Notice Plan as a "noticing strategy that *aims to reach individuals impacted by the Northern California Wildfires* in . . . all of the counties impacted by the Northern California Wildfires") (emphasis added).

In addition to acknowledging that the Supplemental Notice Program was intended to reach only unknown creditors, the Debtors' motion to establish the Bar Date and their reply in further support thereof, and the various supporting declarations filed in connection therewith [ECF Nos. 1786, 1787, 2642, 2643] say *absolutely nothing* about (i) the Securities Litigation, (ii) mailing the Bar Date Notices to the members of the Class, or (iii) any other efforts by the Debtors, their claims and noticing agent, or anyone else to provide notice of the Bar Date to the members of the Class – because there were none.

## F. The Class Claims

The Securities Plaintiffs timely filed proofs of claim asserting the Class Claims on behalf of themselves and the Class [Claim Nos. 72193, 72273] on October 21, 2019. The Class Claims incorporate by reference, and assert claims against each of the Debtors based upon, the allegations in the TAC. Through this Motion, Lead Plaintiff respectfully requests that the Court (a) exercise its discretion to apply Bankruptcy Rule 7023 to the Class Claims and, if the Court does so, (b) establish a briefing and hearing schedule in connection with certification of the Class pursuant to Fed. R. Civ. P. 23 for all purposes in the Chapter 11 Cases.

# <u>ARGUMENT</u>

## I. THE COURT SHOULD EXERCISE ITS DISCRETION TO APPLY BANKRUPTCY RULE 7023 TO THE CLASS CLAIMS.

### A. Class proofs of claim are permitted in Chapter 11 bankruptcy proceedings.

It is well-settled that class proofs of claim are permitted in bankruptcy proceedings. *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002) ("The vast majority of courts have concluded that class proofs of claim are permissible in bankruptcy proceedings, pursuant to Bankruptcy Rules 7023 and 9014.). The Ninth Circuit has adopted this majority rule. *Birting Fisheries v. Lane (In re Birting Fisheries)*, 92 F.3d 939, 939-40 (9th Cir. 1996) (holding that the Bankruptcy Code "should be construed to allow class claims" and noting that three other circuits had so held as of that time); *Palmdale Hills Prop., LLC v. Lehman Comm'l Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 457 B.R. 29 (B.A.P. 9th Cir. 2011) (same); *Mortland v. Certified Parking Attendants, LLC (In re Certified Parking Attendants, LLC)*, 2012 U.S. Dist. LEXIS 19775, at *7 (N.D. Cal. Feb. 16, 2012) ("Class claims, pursuant to FRCP 23, are permissible in bankruptcy court."). Several other circuits have adopted the rule as well. *See, e.g.*, *The Certified Class in the Chartered Securities Litig. v. The Charter Co. (In re The Charter Co.)*, 876 F.2d 866, 873 (11th Cir. 1989) ("[i]n light of Congress' inclusion of Rule 23 in bankruptcy proceedings [and] the clear congressional intent that the Bankruptcy Code encompass every type of claim . . . we conclude that class proofs of claim are allowable in bankruptcy"), *pet. for cert. dismissed*, 496 U.S. 944 (1990); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1469 (6th Cir. 1989) (allowing class proofs of claim pursuant to Bankruptcy Rules 7023 and 9014 is the more "equitable resolution"), *cert. denied*, 494 U.S. 1080 (1990); *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988) ("The class proof of claim may be essential to discover what the bankrupt's entire debts are, and therefore who should be paid what."). These courts have recognized that the class action device is consistent with the fundamental goals and objectives of the bankruptcy process:

> [T]he bankruptcy statute has the goal of facilitating creditor compensation. It would be incongruous for this bedrock policy to be thwarted by reading a procedural limitation into the Code. Bankruptcy also seeks to achieve equitable distribution of the estate. Persons holding small claims, who absent class procedures

> might not prosecute them, are no less creditors under the Code than someone with a large, easily filed claim. Applying Rule 23 to filing procedures will bring all claims forward, as contemplated by the Bankruptcy Code.

*Charter Co.*, 876 F.2d at 871.

Notwithstanding the majority rule permitting class proofs of claim in bankruptcy cases, the decision whether to certify a class claim is "within the discretion of the bankruptcy court." *Kaiser Group*, 278 B.R. at 62. Courts may decline to apply Rule 23 if doing so would "'gum up the works' of distributing the estate." *In re MF Global Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014). Here, however, Class treatment of the Class Claims does not in any way threaten to delay administration of the Debtors' estates or "gum up the works," but rather, will help to inform the plan process and facilitate the orderly and efficient administration of the Debtors' estates by "bring[ing] all claims forward, as contemplated by the Bankruptcy Code" without the need to expend additional estate funds remedying the Debtors' failure to provide notice of the Bar Date to the Class, or to individually administer potentially tens of thousands of Class members' claims. *See Charter Co.*, 876 F.2d at 871.

**B.    Standard for application of Bankruptcy Rule 7023 to class proofs of claim**

Courts apply a two-step analysis to determine whether to certify a class in the context of a bankruptcy case. *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017). First, the Court must make the threshold decision of whether it is beneficial to apply Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process. *Id.* at 646. Second, if the Court determines in the first step that applying Bankruptcy Rule 7023 is appropriate, the Court then must determine whether the class certification requirements of FRCP 23 have been satisfied. *Id.*; *see also Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012) ("Civil Rule 23 factors do not become an issue until the bankruptcy court determines that Rule 7023 applies by granting a Rule 9014 motion.").

The first step of the Bankruptcy Rule 7023 analysis is a discretionary decision. *Chaparral Energy*, 571 B.R. at 646. That discretionary analysis focuses on "whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures." *Gentry*, 688 F.3d at 93. In making that determination, courts generally

consider three factors (the "*Musicland* Factors"):

> 1) whether the class was certified pre-petition;
>
> 2) whether members of the putative class received notice of the bar date, and
>
> 3) whether class certification will adversely affect the administration of the estate.

*In re Verity Health Sys. Of Cal.*, 2019 Bankr. LEXIS 1818, at *19-*20 (Bankr. C.D. Cal. June 11, 2019) (quoting *Chaparral*, 571 B.R. at 646 and *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007)).  The weight of each factor is determined on a case-by-case basis.  *Verity*, 2019 Bankr. LEXIS 1818, at *19-*20; *Chaparral*, 571 B.R. at 646 ("No one factor is dispositive; a factor may take on more or less importance in any given case.").

**C.**  **The relevant *Musicland* Factors weigh strongly in favor of applying Bankruptcy Rule 7023 to the Class Claims.[3]**

**_1._**  **The fact that the Class was not certified before the Petition Date does not preclude application of Bankruptcy Rule 7023 (*Musicland* Factor No. 1).**

Because the Securities Litigation is still at the motion to dismiss stage, certification of the Class prior to the Petition Date was impossible.  However, that is not a bar to application of Bankruptcy Rule 7023.  *See, e.g.*, *In re First Alliance Mortgage Co.*, 269 B.R. 428, 442-43, 447-48 (C.D. Cal. 2001) ("*Charter Co.* similarly dispels the notion that class procedures should only be used where a class was certified in a non-bankruptcy context."); *see also In re MF Global Inc.*, 512 B.R. 757, 763-65 (Bankr. S.D.N.Y. 2014) (where class members' claims arose in tandem with the conduct leading to the debtors' insolvency proceedings, "***the issue of prepetition certification loses its relevance, since there will seldom be time to file a class action complaint and certify a class before the petition date***") (emphasis added); *Gentry*, 668 F.3d at 91 (rejecting argument that application of Bankruptcy Rule 7023 was inappropriate where class was not certified prepetition).

The *Chaparral* court exercised its discretion to apply Bankruptcy Rule 7023 to a class

---

[3]  The Court's recent denial of a motion seeking application of Bankruptcy Rule 7023 to putative class claims filed by certain of the Debtors' former employees has no bearing on this Motion primarily because, among other reasons, and as the Court noted, most or all of those claimants were provided with actual notice of the Bar Date.

claim even though the class action had been pending for nearly five years before the bankruptcy filing without a class being certified. 571 B.R. at 644, 646-47. Here, as in *MF Global*, the Debtors' path into bankruptcy occurred based on certain of the events underlying the Securities Litigation. The Debtors commenced their Chapter 11 Cases less than five months after the consolidation of the Securities Litigation and just two and a half months after the end of the class period. Under the Private Securities Litigation Reform Act, all discovery and other proceedings in the Securities Litigation are stayed until the District Court has denied motions to dismiss. 15 U.S.C. § 78u-4(b)(3)(B); *In re Salomon Analyst Litig.*, 373 F.Supp.2d 252, 256 (S.D.N.Y. 2005) (noting that the PSLRA stay applies broadly "until a complaint has been authoritatively sustained by the court."). Certifying the Class prior to the Petition Date was impossible, but that does not impact application of Bankruptcy Rule 7023 to the Class Claim.

### 2. Members of the Class did not receive constitutionally mandated actual notice of the Bar Date (*Musicland* Factor No. 2).

The second *Musicland* factor, whether the members of the Class received notice of the Bar Date, is of critical importance here because the Debtors failed to provide constitutionally mandated actual notice of the Bar Date to members of the Class. *See, e.g.*, *Chaparral*, 571 B.R. at 646 ("The second *Musicland* factor weighs in favor of applying Bankruptcy Rule 7023 to the Class Claims as not all putative class members were served with notice of the Bar Date."). Here, the Debtors made no effort whatsoever to provide actual notice of the Bar Date to members of the Class. The Supplemental Notice Program did not cure that failure because members of the Class are known creditors who were entitled to actual notice, not merely constructive notice, of the Bar Date.

### (a) Known creditors were entitled to actual notice of the Bar Date.

Constitutional Due Process requires that notice of any bankruptcy claims bar date "be fundamentally fair and reasonably calculated to apprise interested parties." *In re ATD Corp.*, 278 B.R. 758, 763 (Bankr. N.D. Ohio 2002) (collecting cases). A creditor who does not receive proper notice of a claims bar date is not bound thereby. *See City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953). In the face of a challenge to the receipt of a bar date

notice, the burden rests with the debtor to show that it satisfied the notice requirements.  *See In re Freedom Commc'ns Holdings, Inc.*, 472 B.R. 257, 261 (Bankr. D. Del. 2012) (citing *Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 57 (Bankr. S.D.N.Y. 1992)).

For purposes of notice, bankruptcy law differentiates between "known" and "unknown" creditors, each of which is entitled to a different level of notice.  *In re Argonaut Fin. Servs., Inc.*, 164 B.R. 107, 112 (N.D. Cal. 1994).  Known creditors are

> creditors that a debtor knew of, or should have known of, when serving notice of the bar date. . . . A known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it.
> . . .
> Because constitutional due process requires that actual notice be given a creditor who is "reasonably ascertainable," such a creditor must by necessity qualify as a "known" creditor under this line of cases.

*Id.* (quoting *In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993)); *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (a known creditor "is one whose identity is either known or 'reasonably ascertainable by the debtor.'") (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490 (1988)).  A creditor's identity is reasonably ascertainable (and thus the creditor is a known creditor) if "that creditor can be identified through reasonably diligent efforts[.]".  *Chemetron*, 72 F.3d at 346-47 (internal quotation marks and citations omitted).

By contrast, an unknown creditor "is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'"  *Chemetron*, 72 F.3d at 346 (quoting *Mullane v. Central Hanover Bank & Trust, Co.,* 339 U.S. 306, 317 (1950)).

Known creditors "must be provided with actual written notice of a debtor's bankruptcy filing and [claims bar] date."  *Id.* at 346; *see also Richmond v. United States*, 172 F.3d 1099, 1103 (9th Cir. 1999) ("'***Actual notice is a minimum constitutional precondition*** to a proceeding which will adversely affect the liberty or property interests' of a creditor in bankruptcy.") (quoting *Tulsa Prof'l*, 485 U.S. at 485) (emphasis added); *Levin v. Maya Constr. Co. (In re Maya Constr. Co.)*, 78 F.3d 1395, 1399 (9th Cir. 1996) ("The burden is on the debtor to cause formal

notice to be given; the creditor who is not given notice, **even if he has actual knowledge of reorganization proceedings**, does not have a duty to investigate and inject himself into the proceedings.") (emphasis added); *Argonaut*, 164 B.R. at 112 ("[I]n bankruptcy cases, courts have found that known creditors are deserving of actual notice while unknown creditors are owed only publication notice."). Providing known creditors with only publication notice of a bankruptcy claims bar date is akin to giving them no notice at all. *See City of New York*, 344 U.S. at 296 (holding that newspaper publication of a bar date order "cannot be considered 'reasonable notice' to" a known creditor).

Only for unknown creditors, whose identity and whereabouts cannot be reasonably ascertained, can constructive notice by publication ever suffice. *Argonaut*, 164 B.R. at 112. Constructive notice, such as the Supplemental Notice Program, sometimes can be sufficient for unknown creditors because, by definition, there is no other feasible alternative means of reaching them. *Mullane*, 339 U.S. at 317; *City of New York*, 344 U.S. at 296 (1953) ("[W]hen the names, interests and addresses of persons are unknown, plain necessity may resort to publication."). However, for *known* creditors, such as the members of the Class, constructive notice – no matter how extensive – is always constitutionally inadequate.

        **(b)**    **Members of the Class are known creditors and thus were entitled to actual notice of the Bar Date.**

The identities of the members of the Class were reasonably ascertainable by the Debtors. No protracted search was necessary to identify investors who purchased the Debtors' securities during the Class Period. All the Debtors needed to do was follow the same straightforward procedures that are used to provide actual notice to prior purchasers of publicly traded securities in securities class action cases. *See, e.g.*, *Eisen v. Carlisle & Jacquelin et al.*, 417 U.S. 156, 166-67, 166 n.5 (1974) (describing procedure for providing actual notice to over two million stock purchasers by obtaining their names and addresses from their intermediary brokers); *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS, at *19-*20 (N.D. Cal. Dec. 11, 2016) (describing court-ordered process for providing actual notice to absent members of class of securities purchasers based on issuer's transfer records and through "street name" nominee brokers); *In re Am.*

*Apparel Shareholder Litig.*, 2014 U.S. Dist. LEXIS 184548, *19-*20 (C.D. Cal. July 28, 2014) (same).

### (c)    The Debtors did not provide adequate notice of the Bar Date to the Class.

Rather than providing the constitutionally required actual notice to the Class, the Debtors apparently chose to rely exclusively on constructive notice through the Supplemental Notice Program.  From a Due Process standpoint, that was akin to providing no notice at all.  *See, e.g.*, *Chemetron*, 72 F.3d at 346 ("Known creditors ***must be provided with actual written notice*** of a debtor's bankruptcy filing and bar claims date.") (emphasis added); *Argonaut*, 164 B.R. 107 (noting that "constitutional due process requires that actual notice be given [to] a creditor who is 'reasonably ascertainable'"); *see also In re Amdura Corp.*, 170 B.R. 445, 450-452 (D. Col. 1994). The *Amdura* court rejected a debtor's argument that actual notice to absent securities fraud class members was unduly cumbersome and expensive, holding instead that

> publication alone as to members who no longer held securities[] was insufficient to satisfy due process, where representatives had taken all necessary steps to file class proof of claim in bankruptcy case, both debtor and bankruptcy court were aware of existence of individual creditors, and ***debtor could have obtained list of creditors' names and addresses from representatives*** . . . .

*Amdura*, 170 B.R. at 450-52 (emphasis added).  As the Supreme Court found in *Mullane*,

> It would be idle to pretend that publication alone . . . is a reliable means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. ***The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract***, and does not inform acquaintances who might call it to attention.

*Mullane* 339 U.S. at 315 (emphasis added).

Despite being well aware of the claims in the Securities Litigation and the Class, the Debtors did not undertake reasonably diligent efforts – or *any* efforts, for that matter – to identify members of the Class or provide them with actual written notice of the Bar Date.  The Supplemental Notice Program was not intended to reach the members of the Class and was

constitutionally inadequate with respect to the Class.

As discussed above, even if a member of the Class happened to receive one of the Bar Date Notices or encounter one of the notices published through the Supplemental Notice Program, those notices made no mention of the Securities Litigation or the need for members of the Class to file proofs of claim. The Standard Bar Date Notice told then-current interest holders that they need not file proofs of claim, subject only to a vague exception for a "claim relating to an equity interest or the purchase or sale of such equity interest" that made no reference to the Securities Litigation, the Class, the Class Period, the Class Claims, or any other information that might have informed Class members that they had claims and should assert them.

Simply put, the Debtors failed to provide *any* notice of the Bar Date to absent Class members, except to the extent any of them happened to hold other, entirely unrelated claims (and even in that very narrow and purely fortuitous circumstance, the notice provided was inadequate with respect to those Class members' securities fraud claims). Applying Bankruptcy Rule 7023 to the Class Claims and, thereafter, certifying the Class for purposes of the Chapter 11 Cases is the best – and perhaps only – possible means of protecting the due process rights of absent Class members. *Matter of Am. Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988) (particularly where individuals may not identify claims as those they are entitled to pursue, "the effort needed to decide whether to pursue an identified claim means that *for many small claims, it is class actions or nothing*") (emphasis added). Thus, this factor weighs heavily in favor of applying Bankruptcy Rule 7023.

### 3.    Certification of the Class will not adversely affect the administration of the Debtors' estates (*Musicland* Factor No. 3).

The third *Musicland* factor, impact of class certification on the administration of the estate, also supports applying Bankruptcy Rule 7023 to the Class Claims. Pursuant to this factor, courts may decline to apply Rule 23 if doing so would "'gum up the works' of distributing the estate." *In re MF Global Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014). Here, class treatment of the Class Claims does not threaten to delay administration of the Debtors' estates or "gum up the works." To the contrary, class certification will "bring all claims forward, as contemplated

by the Bankruptcy Code[,]" *see Charter Co.*, 876 F.2d at 871, informing the plan process and helping to facilitate the orderly and efficient administration of potentially tens of thousands of Class members' claims through just two Class Claims without any additional cost to or administrative burden on the Debtors' estates. Moreover, the Class Claims are subordinated pursuant to section 510(b) of the Bankruptcy Code and thus will not dilute or otherwise impact wildfire victims or any other class of creditors. Accordingly, this factor also weighs strongly in favor of applying Bankruptcy Rule 7023.

## <u>CONCLUSION</u>

Application of Bankruptcy Rule 7023 to the Class Claims will promote the fundamental goals of bankruptcy and is the sole method by which a Class comprised of defrauded investors can obtain any recovery from these Debtors for their losses. This is truly a case in which, "[i]f the class proof of claim process is not utilized, justice may be denied." *In re CommonPoint Mortg. Co.*, 283 B.R. 469, 480 (Bankr. W.D. Mich. 2002). For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant this Motion and enter the Proposed Order.

[ *signature page follows* ]

Dated: December 9, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**
**MICHELSON LAW GROUP**

By: _/s/ Randy Michelson_
Randy Michelson (SBN 114095)

*Bankruptcy Counsel to Lead Plaintiff and the Class*

- and -

**LABATON SUCHAROW LLP**

*Lead Counsel to Lead Plaintiff and the Class*

- and -

**WAGSTAFFE, VON LOEWENFELDT, BUSCH
& RADWICK, LLP**

*Liaison Counsel for the Class*

- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**

*Counsel for the Securities Act Plaintiffs*

- and -

**VANOVERBEKE, MICHAUD & TIMMONY,
P.C.**

*Additional Counsel for the Securities Act Plaintiffs*

**EXHIBIT A**
**COUNSEL**

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin *(Pro Hac Vice)*
Andrew Behlmann
Scott Cargill
Gabriel Olivera
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone   973-597-2500
Facsimile    973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone   415-512-8600
Facsimile    415-512-8601
randy.michelson@michelsonlawgroup.com

*Bankruptcy Counsel to Lead Plaintiff and the Class*

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Louis Gottlieb
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
Aram Boghosian
140 Broadway
New York, New York 10005
Telephone   212-907-0700
tdubbs@labaton.com
lgottlieb@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone   415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

*Lead Counsel to Lead Plaintiff and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone  619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone   415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone  313-578-1200
tmichaud@vmtlaw.com

*Additional Counsel for the Securities Act Plaintiffs*

# EXHIBIT B
## RESERVATION OF RIGHTS

The Motion and any subsequent pleading, appearance, argument, claim, or suit made or filed by Lead Plaintiff, either individually or for the Class or any member thereof, do not, shall not, and shall not be deemed to:

    a.    constitute a submission by Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

    b.    constitute consent by Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order or judgment, or any other order having the effect of a final order or judgment, in any non-core proceeding, which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter or proceeding;

    c.    waive any substantive or procedural rights of Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment, or any other order having the effect of a final order or judgment, on any matter; (b) the right to have final orders and judgments, and any other order having the effect of a final order or judgment, in non-core matters entered only after de novo review by a United States District Court judge; (c) the right to trial by jury in any proceedings so triable herein, in the Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, the Chapter 11 Cases, any Related Proceedings, or the Securities Litigation; (d) the right to seek withdrawal of the bankruptcy reference by a United States District Court in any matter subject to mandatory or discretionary withdrawal; or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

For the avoidance of doubt, Lead Plaintiff, on behalf of itself and the Class, does not, and will not impliedly, consent to this Court's adjudication of the claims asserted against any Non-Debtor Defendants now or hereafter named in the Securities Litigation.