1     UNITED STATES BANKRUPTCY COURT

2     NORTHERN DISTRICT OF CALIFORNIA

3     -oOo-

4   In Re:                          ) Case No. 19-30088
                                    ) Chapter 11
5   PG&E CORPORATION AND PACIFIC    )
    GAS AND ELECTRIC COMPANY,       ) San Francisco, California
6                                   ) Wednesday, December 11, 2019
                         Debtor.    ) 10:00 AM
7   _____
                                    ORAL ARGUMENT ON POST-
8                                   PETITION INTEREST ON
                                    UNSECURED CLAIMS
9
                                    STATUS CONFERENCE REGARDING
10                                  SCHEDULING OF THE CONTINUED
                                    HEARING ON MOTION OF DEBTORS
11                                  FOR ENTRY OF ORDERS (I)
                                    APPROVING TERMS OF, AND
12                                  DEBTORS' ENTRY INTO AND
                                    PERFORMANCE UNDER, EXIT
13                                  FINANCING COMMITMENT LETTERS
                                    AND (II) AUTHORIZING
14                                  INCURRENCE, PAYMENT, AND
                                    ALLOWANCE OF FEE AND/OR
15                                  PREMIUMS, INDEMNITIES, COSTS
                                    AND EXPENSES AS
16                                  ADMINISTRATIVE EXPENSE
                                    CLAIMS, FILED BY DEBTOR PG&E
17                                  CORPORATION [4446]

18          TRANSCRIPT OF PROCEEDINGS
          BEFORE HONORABLE DENNIS MONTALI
19          UNITED STATES BANKRUPTCY JUDGE

20  APPEARANCES:
    For the Debtors:            STEPHEN KAROTKIN, ESQ.
21                              THEODORE E. TSEKERIDES, ESQ.
                                Weil, Gotshal & Manges LLP
22                              767 Fifth Avenue
                                New York, NY 10153
23                              (212) 310-8000

24

25

| | | |
|---|---|---|
| 1 | For the Official Committee | DENNIS F. DUNNE, ESQ. |
| | of Unsecured Creditors: | Milbank LLP |
| 2 | | 55 Hudson Yards |
| | | New York, NY 10001 |
| 3 | | (212) 530-5000 |

```
 1   For the Official Committee  DENNIS F. DUNNE, ESQ.
     of Unsecured Creditors:     Milbank LLP
 2                               55 Hudson Yards
                                 New York, NY 10001
 3                               (212) 530-5000

 4   For the Ad Hoc Committee    ABID QURESHI, ESQ.
     of Senior Unsecured         Akin Gump Strauss Hauer & Feld LLP
 5   Noteholders:                One Bryant Park
                                 New York, NY 10036
 6                               (212) 872-8027

 7   For the Ad Hoc Committee    MATTHEW MCGILL, ESQ.
     of Holders of Trade         Gibson, Dunn & Crutcher LLP
 8   Claims:                     200 Park Avenue
                                 New York, NY 10166
 9                               (212) 351-4000

10   For PG&E Shareholders:      JAMES O. JOHNSTON, ESQ.
                                 Jones Day
11                               555 S. Flower Street
                                 50th Floor
12                               Los Angeles, CA 90071
                                 (213) 243-2431
13
     For Adventist Health        REBECCA J. WINTHROP, ESQ.
14   System/West and Feather     Norton Rose Fulbright US LLP
     River Hospital:             555 South Flower Street
15                               41st Floor
                                 Los Angeles, CA 90071
16                               (213) 892-9200

17

18

19

20   Court Recorders:            LORENA PARADA AND ANKEY THOMAS

21   Transcriber:                CLARA RUBIN
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (973)406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

PG&E Corp., Pacific Gas & Electric Co.

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, DECEMBER 11, 2019,

2    10:00 AM

3    -oOo-

4    (Call to order of the Court.)

5    THE CLERK:  All rise.  Court is now in session, the

6    Honorable Dennis Montali presiding.

7    THE COURT:  Good morning.

8    IN UNISON:  Good morning, Your Honor.

9    THE COURT:  Please be seated.

10    THE CLERK:  Matter of PG&E Corporation.

11    THE COURT:  Mr. Tsekerides, you're in the first chair

12    today.

13    MR. TSEKERIDES:  Yes, I am.

14    THE COURT:  So my sources tell me you and your

15    colleagues have been a little busy lately.  Right?

16    MR. TSEKERIDES:  That's correct.

17    THE COURT:  I've got a couple of housekeeping chores.

18    We have -- wait a minute; see if this is working.  This

19    microphone's about to fall apart.

20    On the docket, we have the status conference on the

21    exit-financing motion.  Has that been resolved?  Mr. Karotkin?

22    It's -- all we're doing is picking a date, I believe.

23    MR. KAROTKIN:  Stephen Karotkin, Weil, Gotshal &

24    Manges, for the debtors.

25    Yes, I think we've resolved it.  And if we could move

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   it, Your Honor, to the 14th of January?

2          THE COURT:  Sure.

3          MR. KAROTKIN:  And then we've spoken with the Milbank

4   firm and we'll know a little more details next week.  And if it

5   needs to be moved further, we'll be in contact with --

6          THE COURT:  Right.  Well, I realize --

7          MR. KAROTKIN:  -- your chambers.

8          THE COURT:  -- there're a log of things --

9          MR. KAROTKIN:  Yes.

10         THE COURT:  -- lot of balls in the air right now.  So,

11  okay.  So we'll put it then, and I'll just -- we won't worry

12  about anything else for now.

13         MR. KAROTKIN:  Okay.

14         THE COURT:  And on -- stay up here, because on that

15  same subject, this morning, as -- if you don't know -- some of

16  your co-counsel know -- I saw a stipulation between the debtor

17  and the three parties to the disputed interest, the liquidated-

18  versus-unliquidated question.  And you've taken that off

19  calendar.

20         So here's my question:  Originally your -- maybe it

21  was your office or your local counsel; I forget.  Someone asked

22  that -- or had set the hearing on the TCC RSA for next week at

23  10, and my only reservation at the time was because it looked

24  like we were already jammed up for other matters, and

25  particularly that latter motion.  But then when I heard that

PG&E Corp., Pacific Gas & Electric Co.

1    Judge -- the district court --

2          MR. KAROTKIN:  Donato.

3          THE COURT:  Judge Donato, yes.  -- Judge Donato's

4    hearing was going to be at 1, I put ours over to 2.  But now in

5    view of the -- in view of the continuance of the liquidated-

6    claim issue, would you like me to go back to 10 o'clock so we

7    don't have a situation where the lawyers up in Judge Donato's

8    court can't tell him what the bankruptcy court did with the

9    motion?

10          MR. KAROTKIN:  That'd be fine.  As you know, we

11   noticed it for 2 o'clock already.

12          THE COURT:  Well, we can do it electronically.  I

13   mean, I --

14          MR. KAROTKIN:  We're happy to do that.  I mean, we --

15          THE COURT:  Well, the question is whether it makes

16   sense.

17          MR. KAROTKIN:  I think it does.

18          THE COURT:  It seems to me it makes sense.  If it

19   turns out there's a battle and we have hours and hours,

20   somebody'll have to -- we'll have to send Mr. Orsini up to the

21   nineteenth floor to offer up his body to get more time.  But on

22   the --

23          MR. KAROTKIN:  I don't think anyone would accept that

24   body.

25          (Laughter.)

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

| | |
|---|---|
| 1 | THE COURT:  But if -- yeah.  But if the -- but if the |
| 2 | RSA motion is resolved, it might be easier for everybody -- |
| 3 | MR. KAROTKIN:  Yes. |
| 4 | THE COURT:  -- doing that. |
| 5 | MR. KAROTKIN:  We agree.  So -- |
| 6 | THE COURT:  Okay. |
| 7 | MR. KAROTKIN:  -- we're happy to do that, and we're |
| 8 | happy to take whatever -- |
| 9 | THE COURT:  We -- |
| 10 | MR. KAROTKIN:  -- action we can, to get notice out as |
| 11 | quickly as we can. |
| 12 | THE COURT:  Ms. Parada will put a docket entry on the |
| 13 | docket that will move the time from 10 o'clock -- 2 o'clock |
| 14 | back to 10 o'clock. |
| 15 | MR. KAROTKIN:  Very well. |
| 16 | THE COURT:  Right, Ms. Parada? |
| 17 | THE CLERK:  Yes. |
| 18 | THE COURT:  That's all you really need to do. |
| 19 | And that will automatically give -- |
| 20 | MR. KAROTKIN:  Okay. |
| 21 | THE COURT:  -- everybody on the ECF list -- |
| 22 | MR. KAROTKIN:  Notice. |
| 23 | THE COURT:  -- notice.  And we'll just see what |
| 24 | happens. |
| 25 | MR. KAROTKIN:  Okay.  And then we will not commit to |

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    do anything in addition to that.

2         THE COURT:  And also, the docket will reflect that the

3    exit motion is simply continued to January 14th, and nothing

4    else about that for now.  And I assumed that that was what

5    we're going to do.  Okay.

6         MR. KAROTKIN:  Very well.  Thank you, sir.

7         THE COURT:  Great.  Thank you very much.

8         Okay, Mr. Tsekerides, on the post-petition-interest

9    question, have you and others worked out a time allocation?

10        MR. TSEKERIDES:  We have, Your Honor.

11        THE COURT:  Which?  Okay.

12        MR. TSEKERIDES:  Ted Tsekerides from Weil Gotshal, for

13   the debtors.

14        I'm going to take fifteen minutes on the affirmative

15   and the -- Mr. Johnston for the equity holders is going to

16   reserve five, and then we're going to reserve the balance for

17   the rebuttal.

18        THE COURT:  Okay.  All right, one second.

19        (Court and clerk confer.)

20        THE COURT:  Okay, well, I've -- I presume everybody

21   took a look at what I sent out, so you're up.

22        MR. TSEKERIDES:  We did.  Well, Your Honor, it's not

23   often that a bankruptcy court grappling with an issue has a

24   circuit-court decision directly on point, but --

25        THE COURT:  Oh, come on.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1        MR. TSEKERIDES:  -- that's --

2        THE COURT:  Happens all the time.  And I just --

3        MR. TSEKERIDES:  No.  Almost never.

4        THE COURT:  Come on.  I got reversed by the United

5 States Supreme Court because I followed a Ninth Circuit

6 decision.  9 --

7        MR. TSEKERIDES:  Hopefully this doesn't go that far.

8        THE COURT:  9-0, I got reversed in Travelers.  You

9 know?  I didn't take it personally, though.

10       MR. TSEKERIDES:  Well, here I think everyone agrees

11 that post-petition interest should be paid.  And the question

12 is at what rate.  And as you saw from our papers, Cardelucci,

13 in the Ninth Circuit almost twenty years ago, resolved that

14 issue, and it said that the rate -- post-petition interest in a

15 solvent-debtor case is the federal judgment rate.  And it's

16 really not more complicated than that.

17      And I think because the other side has no answer for

18 Cardelucci, basically their argument boils down to, just forget

19 about it, Judge; forget about Cardelucci, ignore it.  They

20 claim it has no bearing on the issue, which was somewhat

21 puzzling.  But this Court can't forget about Cardelucci.

22       THE COURT:  Well, I could distinguish it, I guess,

23 right?

24       MR. TSEKERIDES:  Well, I don't know.  You could try.

25 But I'm going to tell you why you can't.  There's nothing, in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   almost twenty years, in this circuit that says Cardelucci

2   should be limited in any way, that it doesn't apply across the

3   board.  I think your words in the order were "one size fits

4   all".  Their words (sic) was "uniformly".  And I think the

5   reason why they did that was to avoid the hodgepodge of

6   different rates.  You have a state rate, a contract rate that

7   could be below the federal judgment rate.

8           THE COURT:  Which --

9           MR. TSEKERIDES:  Again, I think you pointed out --

10          THE COURT:  Which we have here.

11          MR. TSEKERIDES:  We do.  And --

12          THE COURT:  I tried to check the federal rate this

13  morning.  Do you know what it is today?

14          MR. TSEKERIDES:  I don't.

15          THE COURT:  I --

16          MR. TSEKERIDES:  2.59, in that area?

17          THE COURT:  I didn't get there, but it obviously moves

18  every month a little bit, I think.  Might have gone up.  Might

19  have gone down.

20          MR. TSEKERIDES:  But I think that's why -- I mean, if

21  you look at -- if you look at Cardelucci -- and I'm going to

22  quote a few times today.  But it said squarely, this appeal

23  presents the narrow but important issue of whether such post-

24  petition interest is to be calculated using the federal

25  judgment interest rate or is determined by the parties'

PG&E Corp., Pacific Gas & Electric Co.

1  contract or state law.

2  We conclude that 11 U.S. Code Section 726(a)(5)

3  mandates application of the federal interest rate.  No

4  equivocation nowhere in that case; only for impaired, not

5  impaired.  And I'll get to that, because I know that was one of

6  your questions.

7  THE COURT:  Well, it's one of their questions.  I

8  mean, I --

9  MR. TSEKERIDES:  But --

10  THE COURT:  -- I didn't make it up.  But it's their --

11  MR. TSEKERIDES:  Well, but you asked us --

12  THE COURT:  They're looking for an out.

13  MR. TSEKERIDES:  Right, and you asked us to address

14  it.  They don't have an out, Your Honor.

15  THE COURT:  Right.

16  MR. TSEKERIDES:  And I think, again, if you read the

17  decision, which I know you have, that what the court was

18  getting at is we need uniformity, we can't have a situation

19  where we're looking at potentially fifteen, twenty different

20  types of rates.  And I think, at the end of the day, it

21  considered whatever equities there might be.  And I think it's

22  important, because one of the things you might hear:  well,

23  it's a solvent debtor, that should change everything.  But the

24  court spoke to that, and it said, even if there is a windfall,

25  even if there is a windfall, we still have to apply this,

escribers
(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   because we can't shift -- and I'm quoting, "cannot shift

2   depending on the interests invoked by the specific factual

3   circumstances before the court".

4           THE COURT:  Well, but there's also some circularity

5   there, because if it weren't a solvent debtor, the question

6   wouldn't have been -- it wouldn't have been asked.  Right?

7           MR. TSEKERIDES:  Well, but in this circuit --

8           THE COURT:  The creditor in Cardelucci was paid in

9   full.  It was -- I went back and read the Cardelucci lower

10  court, and it was a -- I don't know if you're familiar with it;

11  it was a knock-down-drag-out just between a man and his wife,

12  who had a --

13          MR. TSEKERIDES:  It was.

14          THE COURT:  -- business dispute with the debtor.  And

15  they litigated forever.

16          MR. TSEKERIDES:  They did.

17          THE COURT:  But the point, Mr. -- a creditor, Mr.

18  Onink, I believe it was, he said, they're solvent, I should

19  be -- I should get my judgment rate.

20          MR. TSEKERIDES:  Right, but -- and the Ninth Circuit

21  said no.

22          THE COURT:  Right.

23          MR. TSEKERIDES:  The Ninth Circuit said solvency

24  doesn't change -- solvency means you get post-petition

25  interest.  If they weren't solvent, they'd get no interest.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  Well, that was the point that struck me

2    is, strange, the other side says, well, the judge -- the court

3    was wrong by looking to Section 7 -- Chapter 7.  Well, fine,

4    take it out, and then you're out of luck.

5    MR. TSEKERIDES:  Then you get nothing.

6    THE COURT:  Right.

7    MR. TSEKERIDES:  So the Ninth Circuit's already done

8    whatever balancing needed to be done and determined, using the

9    Code provision -- and again, our plan uses the Code, and I

10   think it's important when we get to the impairment, but I'll

11   preview it in a second.  The plan is not changing anything.

12   The plan is providing what we think the Ninth Circuit and the

13   Code mandate.  So if we're giving them what they're entitled to

14   under the Code and the law in this circuit, they cannot, by

15   definition, be impaired.

16   And I think it's important.  Cardelucci wasn't sort of

17   pulled out of a hat and never happened before.  They relied on

18   some lower -- some BAP decisions --

19   THE COURT:  Well, the BAP case.

20   MR. TSEKERIDES:  But also, one thing I did over the

21   weekend -- they cited a Shoen case for some proposition that

22   we're wrong.  But it's interesting; in Shoen, the court used

23   contract rate, but for a very particular reason.  It was a

24   stock purchase, and the court ordered essentially that someone

25   had to buy stock.  But there's a footnote in Shoen, relating to

PG&E Corp., Pacific Gas & Electric Co.

1  the lower-court decision that the Ninth Circuit adopted.  And

2  I'm going to quote it because I think it's important here.  The

3  court there said, "As we discuss later in this Memorandum, the

4  bankruptcy court could reasonably have concluded that the

5  debtors were all solvent as a result of AMERCO's

6  indemnification obligation.  If the debtors were solvent, then

7  (even if the bankruptcy court were to be held to have erred in

8  concluding that there was a judicially-mandated sale of stock,

9  or if the debts were to be found to be dischargeable) interest

10  would accrue at the federal judgment interest rate pursuant to

11  11 U.S.C. 726(a)(5)."  Cardelucci didn't make it up out of thin

12  air.  So even in Shoen the Ninth Circuit, adopting that BAP

13  decision, recognized:  solvent debtor, federal judgment rate.

14        THE COURT:  Well, the BAP and the Ninth Circuit

15  started with a statute, and the statute says "the legal

16  rate" --

17        MR. TSEKERIDES:  Correct.

18        THE COURT:  -- the words "legal rate".

19        MR. TSEKERIDES:  I agree.

20        THE COURT:  So the question is what's the legal rate.

21  That's the whole question.

22        MR. TSEKERIDES:  And Cardelucci says the legal rate is

23  the federal judgment rate.

24        So -- I mean, I was --

25        THE COURT:  But do you think -- but what do you think

PG&E Corp., Pacific Gas & Electric Co.

1  might have been the case if the Ninth Circuit focused on the

2  question that it's a Chapter 11?  Which of course it was, and

3  this one is.  So why -- what's the point of invoking Chapter 7

4  in a Chapter 11?

5          MR. TSEKERIDES:  Well, I think Cardelucci was looking

6  for why would a solvent debtor be able to get interest.  What

7  Code provision talks about interest?  726(a)(5).  The Ninth

8  Circuit's decided that, even in a Chapter 11 case, they can

9  rely on 726(a)(5), in a solvent-debtor case, to provide

10  interest where there normally would be no interest.

11          THE COURT:  But doesn't that implicate the best-

12  interest test, and that's the outcome?  So that a plan will

13  fail if it's not as favorable as the best-interest outcome in

14  7.  So, for example, if in Cardelucci the plan offered no

15  interest or one percent or whatever, something lower than Fed.,

16  then I would think that the court would have said that's not

17  good enough, because the best-interest test is implicated.

18          MR. TSEKERIDES:  Well, I think the court would have

19  said that's not good enough, because the Code provided for

20  post-petition interest in the solvent-debtor case.  And so --

21  like our plan here.  Let --

22          THE COURT:  Well, no, no, but I'm giving you that too.

23  I'm saying we're going back in time and you're the lawyer --

24          MR. TSEKERIDES:  Okay.

25          THE COURT:  -- for Cardelucci and you say, "Look, Mr.

(973)406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   Cardelucci, we got to" -- "we got to come up with a way" -- "we

2   got to avoid this federal judgment" -- I mean, "this state-

3   court judgment of Tan (ph.)" or whatever it was, "so let's put

4   one percent in the plan."  And I would think the objection

5   would be, if we now analyze it as a Chapter 7, there would be

6   at least the federal judgment rate --

7               MR. TSEKERIDES:  If we -- yes, if we --

8               THE COURT:  -- which is more than one -- might not

9   have been, but it --

10               MR. TSEKERIDES:  Whatever it was at the time.

11               THE COURT:  Let's assume it was.  So that would be --

12   therefore, your plan would be flawed if it didn't at least

13   match the federal judgment rate.

14               MR. TSEKERIDES:  Right.  And here too, I think.  If

15   our plan said we're not going to pay them any post-petition

16   interest, we would be impairing them.  Our plan would not work,

17   because Cardelucci says, no, you got to pay them post-petition

18   interest in a solvent-debtor case.  And that's exactly what

19   we're doing.

20               THE COURT:  So what are my choices?  Seriously.  I

21   mean --

22               MR. TSEKERIDES:  Yeah.

23               THE COURT:  -- I am bound by it.  And I was reversed,

24   I know, because I had no choice; I had to follow the Ninth

25   Circuit law on that subject.  Do I have an option here?

PG&E Corp., Pacific Gas & Electric Co.

1      MR. TSEKERIDES:  You have no option.  You have to

2  apply the federal judgment rate, Your Honor.

3      THE COURT:  Well, do I have an option of saying the --

4  you know, pink-Cadillac defense; that was a pink Cadillac, this

5  is a blue Cadillac?  I mean, is it different because in

6  Cardelucci the creditor was impaired?  I actually went back and

7  looked at the original plan, and clearly Mr. Onink was

8  impaired.

9      MR. TSEKERIDES:  Onink, yeah.

10      THE COURT:  Here, that's not the case.

11      MR. TSEKERIDES:  We're putting the cart before the

12  horse and, frankly, I think we're flipping things.  You can

13  only determine impairment if the plan doesn't provide what

14  you're entitled to.  The Ninth Circuit has said

15  unequivocally -- the last twenty years, not one Ninth Circuit

16  decision has gone the other way -- that says it's federal

17  judgment rate.

18      So we're not even talking about impairment until we

19  figure out, well, what is the plan doing?  Okay, the plan's

20  giving them exactly what the Ninth Circuit says.  There can't

21  be impairment.  You don't start with impairment first and then

22  decide what they're entitled to.  Impairment doesn't tell you

23  what you're entitled to.  The law tells you what you're

24  entitled to.  And --

25      THE COURT:  Well, but if you want to -- excuse me.  If

PG&E Corp., Pacific Gas & Electric Co.

1  you want to --

2          MR. TSEKERIDES:  Yeah.

3          THE COURT:  -- if you want to take away their vote,

4  you just leave them unimpaired.

5          MR. TSEKERIDES:  But they are unimpaired.  We're

6  paying them in full --

7          THE COURT:  But that takes away their vote.

8          MR. TSEKERIDES:  Well, I understand that but, I

9  mean -- well, we're paying them in full, so creditors who get

10 paid in full don't get to vote.  So here the question is what

11 are they entitled to, and Cardelucci says what they're entitled

12 to.

13         THE COURT:  Are you going to answer my other question

14 about --

15         MR. TSEKERIDES:  I am.

16         THE COURT:  -- the post-gap?  And I mean --

17         MR. TSEKERIDES:  Well, I was --

18         THE COURT:  -- I use the term -- the term -- I didn't

19 make it up.  Some other court has used that notion of that word

20 "gap".  You know what we're talking about here.

21         MR. TSEKERIDES:  Well, just to be clear, because I was

22 a little confused by it, but I want to make sure we're on the

23 same page; the gap you're talking about is the post-petition

24 through the effective date --

25         THE COURT:  Well, that's your --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      MR. TSEKERIDES:  Right.

2      THE COURT:  You didn't -- in your papers, you didn't

3  use the word "gap", but you bracketed the time frame.

4      MR. TSEKERIDES:  I agree.

5      THE COURT:  Okay.

6      MR. TSEKERIDES:  And I just want to make sure we're on

7  the same page.

8      THE COURT:  Yeah.

9      MR. TSEKERIDES:  When you're saying "beyond gap",

10  you're talking about post-effective date, right?

11      THE COURT:  Well, that's what's going to happen to one

12  of the classes.

13      MR. TSEKERIDES:  Well, I'm not so sure.  And I think

14  that's why there might have been some misunderstanding.

15      THE COURT:  Okay.

16      MR. TSEKERIDES:  So again, this only comes into play

17  if we lose.  If you agree with me there is no post-gap period,

18  they're going to be paid on the effective date --

19      THE COURT:  Well, no, I'm not -- I want to make

20  sure --

21      MR. TSEKERIDES:  Yeah.

22      THE COURT:  -- we're clear on that.

23      MR. TSEKERIDES:  Yeah.

24      THE COURT:  Look, in a Chapter 7 there is -- nobody

25  cares about what happens after there's been a distribution.  So

PG&E Corp., Pacific Gas & Electric Co.

1    if you had a -- if you had a solvent Chapter 7, 726 would work.

2            MR. TSEKERIDES:  Okay.

3            THE COURT:  The trustee would pay the creditors, pay

4    the statutory rate of interest, and give what's left over to

5    the debtor.  Right?  And --

6            MR. TSEKERIDES:  Yes.

7            THE COURT:  And if it were a corporate debtor that

8    was -- I mean a human-being debtor in Chapter 7 and he or she

9    would go on about his business and, if there were

10   nondischargeable debts or tax debts, that interest rate would

11   apply under nonbankruptcy law.

12           So, to me, what I'm saying is that the analysis in

13   Chapter 7 stops at some point when there's nothing more to

14   distribute in the 7. But in a Chapter 11, there is this

15   question of, well, what about claims that survive and exist

16   after the effective date of the plan.

17           MR. TSEKERIDES:  And my point is, Your Honor, I don't

18   believe that any of these claims in the classes that are

19   identified will be surviving after the effective date.  They

20   all will be paid on the effective date.  The language --

21           THE COURT:  Well, then I -- excuse me.  Then I misread

22   something in your brief.

23           MR. TSEKERIDES:  Okay.

24           THE COURT:  What does 3B -- how does 3 --

25           MR. TSEKERIDES:  Are you talking about the language

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    that said, if we -- if the Court were to find a different

2    rate --

3              THE COURT:  No.

4              MR. TSEKERIDES:  -- would apply, then --

5              THE COURT:  No.  I'll tell you when I'm --

6              MR. TSEKERIDES:  Okay.

7              THE COURT:  -- going to -- so I have the -- I'm

8    looking at your opening brief, which is --

9              MR. TSEKERIDES:  Okay.

10             THE COURT:  -- Doc. 4624.  And in that -- on the very

11   first page, which -- right after the preliminary statement, and

12   it's -- and so for footer purposes, it's page 6 of 14.

13             MR. TSEKERIDES:  I have it.

14             THE COURT:  On line 8 it says creditors "are to

15   receive payment in full of their claims in cash, plus interest

16   from the commencement of these Chapter 11 Cases through the

17   effective date of the Debtors' Plan, at the Federal Judgment

18   Rate."

19             MR. TSEKERIDES:  Right.

20             THE COURT:  And then later we end up with three of the

21   classes being paid on the effective date, and the fourth one --

22   it's still out there, out in space somewhere; 3B.

23             MR. TSEKERIDES:  Well, no, the fourth one would still

24   be paid on the effective date.  I think what might have caused

25   the confusion -- it might have only been with the 3B, which is

PG&E Corp., Pacific Gas & Electric Co.

1　the utility-funded --

2　　　　　THE COURT:  Yeah.

3　　　　　MR. TSEKERIDES:  -- debt claims that are going to be

4　the subject --

5　　　　　THE COURT:  Yes.

6　　　　　MR. TSEKERIDES:  -- of the make-whole.  Well, we had

7　some language that said, if the Court finds a different rate,

8　then we would be applying a different rate.  That might have

9　caused the confusion.  But --

10　　　　　THE COURT:  Well, what I read from that is --

11　　　　　MR. TSEKERIDES:  Yeah.

12　　　　　THE COURT:  -- if I buy the creditors' argument, then

13　you've got to go back and take out the federal rate and put in

14　something.  Now, for one group of creditors, they're going to

15　get less.

16　　　　　MR. TSEKERIDES:  Right.

17　　　　　THE COURT:  For some, they're going to get a lot more.

18　And for some, they're going to get in between.  And I realize

19　there's a lot of money at stake here, but it's the analysis.

20　　　　　And so what you're telling me -- and I want to make

21　sure this is clear.  And we're going to see a new plan from the

22　debtor tomorrow, I guess.  So that plan will say that 3A, 3B,

23　4A, 4B, are all getting paid in full on the effective date.

24　　　　　MR. TSEKERIDES:  Correct.

25　　　　　THE COURT:  Well, that's not --

PG&E Corp., Pacific Gas & Electric Co.

1          MR. TSEKERIDES:  It should.

2          THE COURT:  -- what I read earlier, because I thought

3    3B passed through.  Okay.  Nonissue.

4          MR. TSEKERIDES:  Nonissue.

5          THE COURT:  I mean, because the gap -- but think about

6    it.  In --

7          MR. TSEKERIDES:  I agree.

8          THE COURT:  In the world of an ongoing 11, there are

9    three temporal periods of time --

10          MR. TSEKERIDES:  Um-hum.

11          THE COURT:  -- pre-petition, what I call gap --

12          MR. TSEKERIDES:  What -- called the gap.

13          THE COURT:  -- but, as I say, I recall a BAP decision

14    of a few years ago that talked about it; and then there's the

15    post --

16          MR. TSEKERIDES:  Um-hum.

17          THE COURT:  -- effective date, when you're out back in

18    the real world --

19          MR. TSEKERIDES:  I mean, it should be academic here.

20    I mean, I --

21          THE COURT:  Yeah.  Okay.

22          MR. TSEKERIDES:  I don't need to get into -- I mean, I

23    have a theory of what would happen, but I don't need to go

24    there.

25          THE COURT:  No, we don't have to.  You've clarified

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    it.  And if the creditors' counsel believe that that's not

2    true, they can tell me.  But I read it as though it passed

3    through; thus, that's why I put the question the way I did.

4    Okay.

5          MR. TSEKERIDES:  I mean, the other question that I

6    think you asked here says both sides need to explain why it

7    matters whether a class is impaired or unimpaired.  My response

8    to that is it doesn't matter for determining what rate of post-

9    petition interest they're entitled to.  It might matter if we

10   gave them the wrong rate.  If you decided that it should be a

11   different rate and our plan has a rate other than what you

12   think it should be, then --

13         THE COURT:  Well --

14         MR. TSEKERIDES:  -- we have an impairment.

15         THE COURT:  -- I don't think there's any dispute about

16   what is the applicable rate, because it's whatever -- the

17   petition-date rate is what it is.  I mean, if the company filed

18   bankruptcy today rather than January 29th, we'd go to the

19   Federal Reserve website and say, what's the federal judgment

20   rate on December 11th, and that's what we'd find.  And that's

21   what federal courts do all the time when they issue federal

22   civil judgments:  they plug in whatever the rate is.

23         MR. TSEKERIDES:  I agree.

24         THE COURT:  And so I assume that, if I reject your

25   theory and believe that somehow Cardelucci is not applicable --

(973)406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    I'm not sure what you do, but I assume, for most of them, it'll

2    be whatever their contract rate is.  And for some, I don't

3    know, it'll be state law.

4         MR. TSEKERIDES:  I mean, it would depend on how you

5    approached it.  But, I mean, one -=- if you completely ignored

6    our arguments in Cardelucci, then presumably you'd say, the

7    contracts, or ten-percent it, or California Code section, or,

8    if somebody had a contract that even had a lower rate, that

9    rate, and then --

10        THE COURT:  But that's my point.  Your classification

11   says that there are some people that have a lower rate.  So

12   they're --

13        MR. TSEKERIDES:  There are.

14        THE COURT:  -- they're going to be losers by

15   winning --

16        MR. TSEKERIDES:  Exactly.

17        THE COURT:  -- today.

18        MR. TSEKERIDES:  And I think that's why, again, going

19   back to Cardelucci, I said, look, uniform "one size fits all",

20   this is the rate, solvent debtor, post-petition interest,

21   because it makes the most sense --

22        THE COURT:  No, but what I'm -- I'm saying something

23   differently (sic).  If I disagree with you and say Cardelucci

24   doesn't apply, therefore the plan cannot plug in the federal

25   rate from Jan. 29, I don't pick a number, because they're all

PG&E Corp., Pacific Gas & Electric Co.

1   over the lot; they're -- it'll be no "one size fits all" --

2           MR. TSEKERIDES:  Right.  Well, you don't pick --

3           THE COURT:  -- because it could be zero, ten, seven.

4           MR. TSEKERIDES:  You don't pick a number but,

5   respectfully, hopefully you'll give us direction that would

6   say, for those who have a contract, do this and, for those who

7   don't --

8           THE COURT:  Yeah.

9           MR. TSEKERIDES:  -- do that.

10          THE COURT:  Well, I would think that's --

11          MR. TSEKERIDES:  Yeah.

12          THE COURT:  -- that's what I would have to do and I'll

13  do.

14          MR. TSEKERIDES:  Yeah.  So those are our arguments.

15  And I don't think that -- any arguments we heard from the other

16  side, again, basically, forget about Cardelucci is their point.

17  And relying on 1124 and 1129 sort of missed the point about

18  whether -- none of those sections tell us what rate they're

19  entitled to.

20          THE COURT:  Well, my point about -- in my tentative,

21  or whatever you want to call it --

22          MR. TSEKERIDES:  Um-hum.

23          THE COURT:  -- wasn't quite a tentative, but it might

24  have been like a tentative -- the -- I don't think we even get

25  to 1129 --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. TSEKERIDES:  Right.

2          THE COURT:  -- if they're unimpaired.

3          MR. TSEKERIDES:  If they're unimpaired --

4          THE COURT:  Unimpaired, because if you're unimpaired,

5    1129 isn't available to you.

6          MR. TSEKERIDES:  Correct.

7          THE COURT:  You can object to confirmation under some

8    other theory, but you can't say, "I'm not being treated fairly

9    and equitably," because by statute you are being treated --

10   you're unimpaired.

11         MR. TSEKERIDES:  Right.  So --

12         THE COURT:  Well, you didn't say anything about Ultra,

13   but it seemed to me that the principle --

14         MR. TSEKERIDES:  Well --

15         THE COURT:  -- from Ultra is, as I tried to say, blame

16   it on the plan, don't blame -- I mean blame it on --

17         MR. TSEKERIDES:  On the Code.

18         THE COURT:  -- Congress --

19         MR. TSEKERIDES:  Yeah.

20         THE COURT:  -- don't blame it on the drafter of the

21   plan.  And it might sound callous and unforgiving, but it is

22   the law.  And if the interest rates change and suddenly a lot

23   of these contracts were below the federal interest rate, we'd

24   have everybody on the other side of the table here.

25         MR. TSEKERIDES:  And I think, on Ultra, Your Honor, I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   mean, you saw from the letter briefing -- to the extent it was

2   even appropriate. But at the end of the day, whatever the

3   Fifth Circuit did in its new decision, the principle that we

4   cited it for stayed exactly the same, which is basically, if

5   it's the Code -- and I know I'm beating a dead horse here but,

6   if it's the Code that is, quote, "impairing" you, you're not

7   impaired.

8         THE COURT: Well, I was thinking about the -- I mean,

9   of course the interesting tone of the author of Ultra II and

10   Ultra I. But I was also thinking about the bankruptcy judge in

11   that case, who I happen to know. And he got reversed and he

12   got remanded, and one of his instructions on remand is, figure

13   out the right interest rate.

14         MR. TSEKERIDES: Well, they don't have Cardelucci.

15         THE COURT: I don't have that task.

16         MR. TSEKERIDES: You don't have that problem.

17         THE COURT: Right. I mean, I guess that's --

18         MR. TSEKERIDES: You've got the --

19         THE COURT: I mean, that seems to be the case. In

20   other words, if I were to blame it on Congress, they've already

21   answered the question. So the judge in Texas doesn't have that

22   option; he's got to figure it out. But --

23         MR. TSEKERIDES: Yeah, well, he can be guided by

24   Cardelucci, too.

25         THE COURT: They don't like the Ninth Circuit --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. TSEKERIDES:  Yeah.

2          THE COURT:  -- in Texas.

3      (Laughter.)

4          THE COURT:  We have to straighten them out

5   periodically, but --

6          MR. TSEKERIDES:  Unless Your Honor has any questions

7   for me, I think that's --

8          THE COURT:  No questions.

9          MR. TSEKERIDES:  -- that's it for -- thank you.

10          THE COURT:  Mr. Johnston?

11          MR. JOHNSTON:  Good morning, Your Honor.  Jim Johnston

12   of Jones Day, on behalf of certain PG&E shareholders.

13          Your Honor, the unsecured creditors say that

14   Cardelucci is narrow and applies only in cases involving the

15   best-interest test.  Think Mr. Tsekerides did a good job

16   explaining why that's wrong.

17          I understand what happened with Fobian (ph.) and

18   Travelers, but you did what you had to do in that case; you

19   followed binding Ninth Circuit precedent.  And the Supreme

20   Court didn't criticize you for it.  I think that was --

21          THE COURT:  Hey, they reversed me 9-0.

22          MR. JOHNSTON:  I prefer to think of it as them

23   reviewing the -- reversing the Ninth Circuit 9-0.

24          THE COURT:  Said well.  Yeah, I like to think of it,

25   too.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. JOHNSTON:  This morning I wanted to take a moment

2    to reflect on why Cardelucci says what it says, and I want to

3    start by looking at the truly bizarre alternative universe

4    proposed by the creditors.  What they're saying to you is that

5    the Bankruptcy Code requires you to apply three different rules

6    of decision, three completely different analyses, to determine

7    the rate of post-petition interest on an unsecured claim

8    against a solvent Chapter 11 debtor.  They would have you apply

9    a different analysis to identical unsecured claims, depending

10   solely on the happenstance of whether a particular claim was in

11   an unimpaired class, as to which they say Section 1124 applies

12   the rule of decision, an impaired consenting class, as to which

13   they say Section 1129(a)(7) provides the rule of decision, or

14   an impaired dissenting class, as to which they say Section

15   1129(b) provides the rule of decision.  Same claim, three

16   different rules.  That, I submit, is suspect right off the bat.

17        And of course you can search high and low in

18   Cardelucci for three different rules, and you won't find them.

19   In fact, you won't see any mention of the best-interest test,

20   any distinction between impaired and unimpaired classes, or any

21   citation to Sections 1124 --

22        THE COURT:  Well, I believe, historically, Cardelucci

23   and the creditor stipulated around all that, and we had a

24   confirmed plan and they reserved that narrow issue; right?  I

25   mean, maybe you didn't go back into it, but I did, and that's

PG&E Corp., Pacific Gas & Electric Co.

1  what happened.  That was this -- it took four tries at the

2  plan, but it got confirmed because the various objections were

3  withdrawn, and they just reserved the --

4          MR. JOHNSTON:  Yeah --

5          THE COURT:  -- interest issue.

6          MR. JOHNSTON:  -- the issue was reserved for the Ninth

7  Circuit.

8          THE COURT:  Yeah.  Right.

9          MR. JOHNSTON:  And in --

10         THE COURT:  Well, it was reserved for the trial court,

11 and then obviously it -- there's a long -- when you think about

12 it, the Cardelucci bankruptcy started in 1993, and the circuit

13 didn't deal with it until 2002.  So they duked it out for a

14 long time.

15         MR. JOHNSTON:  That's a lot of post-petition interest,

16 too.

17         THE COURT:  Yeah.

18         MR. JOHNSTON:  Faced with that stipulation, though,

19 the Ninth Circuit didn't say, okay, here's the analysis that

20 applies to an impaired dissenting class, or here's the analysis

21 that applies to an unimpaired class.

22         THE COURT:  But I'm trying to say they didn't have to,

23 because it was never teed up to them, because Mr. Onink never

24 ever was told that he's in an unimpaired class.

25         MR. JOHNSTON:  I think they did have to, because what

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    the Ninth Circuit did was write broadly and unequivocally.  And

2    the creditors basically described that as sloppy; right?  They

3    say that the Ninth Circuit couldn't have meant what it wrote;

4    it wrote so broadly.  But the Ninth Circuit's not dumb.  Chief

5    Judge Schroeder isn't dumb.  Judge McKeown, Judge Zilly,

6    they're not dumb.

7            THE COURT:  Judge Zilly is a --

8            MR. JOHNSTON:  And --

9            THE COURT:  -- district judge, actually, and he's a

10   district judge --

11           MR. JOHNSTON:  I know that.

12           THE COURT:  -- in Seattle and has had some bankruptcy

13   experience.  I knew him in practice as a bankruptcy lawyer.

14           MR. JOHNSTON:  He was sitting by designation --

15           THE COURT:  Right.

16           MR. JOHNSTON:  -- and he wrote the opinion.

17           THE COURT:  Right.

18           MR. JOHNSTON:  And as the creditors acknowledge in the

19   reply briefs, as you said this morning, those judges knew about

20   the best-interest test, they knew about Section 726(a)(5) and

21   how it works its way into Chapter 11.  It was in the briefing

22   to them.  But despite that, the panel wrote as broadly and

23   unequivocally and with as much purpose as possible, and it

24   didn't, not once, hint that the decision was limited to --

25           THE COURT:  But seriously --

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      MR. JOHNSTON:  -- the best-interest test.

2      THE COURT:  -- if Judge Zilly decided to go off on a

3  toot and write the definitive law-review article and said,

4  "Let's talk about impaired/unimpaired," somebody might have

5  said, "Oh, that's not our job here."  His only question to

6  decide for the panel was what is the right rate of interest,

7  not whether there're different rules for impaired versus

8  unimpaired, because he never had the -- it wasn't presented.  I

9  mean, courts aren't supposed to write law-review articles;

10 they're supposed to write -- resolve decision --

11     MR. JOHNSTON:  No, there --

12     THE COURT:  -- or disputes.

13     MR. JOHNSTON:  -- there certainly -- you certainly

14 would have expected a treatise on impaired and unimpaired, or

15 the --

16     THE COURT:  Well, some of my --

17     MR. JOHNSTON:  -- best-interest test.

18     THE COURT:  -- brothers and sisters like to write that

19 way.

20     MR. JOHNSTON:  But --

21     THE COURT:  I would never admit to doing that.

22     MR. JOHNSTON:  -- I submit that, if the rule was as

23 limited as the creditors say it was, you would have expected at

24 least a sentence that would say so.  And so --

25     THE COURT:  No, but again, I don't want to beat this

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  to death but, if Mr. Onink's lawyer started arguing that his

2  clients should be treated as unimpaired, Judge Zilly might have

3  said, "But he wasn't unimpaired."

4            MR. JOHNSTON:  Correct.

5            THE COURT:  "End of story.  What are you arguing?"  I

6  mean, it would be a frivolous argument, it seems to me, for a

7  lawyer to argue that his client is treated in a manner that

8  isn't the way he was treated.

9            MR. JOHNSTON:  No, there would have been no point of

10  arguing that.

11            THE COURT:  Right.  Right.

12            MR. JOHNSTON:  My point is in the explication of the

13  rule of the decision.

14            THE COURT:  Okay.

15            MR. JOHNSTON:  And so let me approach it a different

16  way.  You might ask, well, why; why didn't the panel narrow its

17  decision to the best-interest test.  And I think you can find

18  that in the opinion, where Judge Zilly told us, fully -- the

19  last third of the opinion explains why a uniform application of

20  the federal judgment rate makes good sense.  The court didn't

21  want a piecemeal ad hoc result like what the creditors are

22  asking for here, so it laid down a rule applicable to all

23  solvent Chapter 11 debtors, and it did it for three separate

24  reasons:  First and foremost, as Your Honor noted in the

25  tentative, is the equitable treatment of creditors, which is

PG&E Corp., Pacific Gas & Electric Co.

1    fostered by a single uniform rate across the board.  The court

2    also held that a uniform rate is the most judicially efficient

3    and practical manner of allocating remaining assets, and it

4    promotes uniformity within federal law.

5              THE COURT:  Yeah, but what if somebody -- a bug -- a

6    little -- somebody whispered in Judge Zilly's ear and said,

7    "The shareholders are going to get a half-a-billion-dollar

8    windfall"?  What do I do about that?

9              MR. JOHNSTON:  He told us that in the opinion.

10             THE COURT:  Well, he said "windfalls".  There --

11             MR. JOHNSTON:  Right.

12             THE COURT:  There could be windfalls.

13             MR. JOHNSTON:  And he said --

14             THE COURT:  He didn't say he didn't know it was a half

15   a billion dollars.

16             MR. JOHNSTON:  It's --

17             THE COURT:  And it wasn't in this -- that case.

18             MR. JOHNSTON:  It's all relative, Your Honor.  I

19   mean --

20             THE COURT:  Right.

21             MR. JOHNSTON:  -- the creditors were looking for a

22   similar amount in contract rate post -- rate of interest over

23   federal judgment --

24             THE COURT:  Right.

25             MR. JOHNSTON:  -- rate of interest.  And so I submit

PG&E Corp., Pacific Gas & Electric Co.

1    that consideration was taken into account and outweighed or

2    rejected.

3            And so you think about what -- the mishmash proposed

4    by the creditors here, with the different rules and different

5    rates applicable to really the very same or similar claims, and

6    it runs just directly counter to all three of the

7    considerations set forth in Cardelucci.  Those -- the rule or

8    rules, plural, proposed by the creditors fostered disparity,

9    not uniformity, they resulted in unequal treatment among

10   similarly situated creditors, and they create a truly

11   administrative nightmare.

12           You'll hear about how strange it is that the Ninth

13   Circuit took a Chapter 7 provision and made it broadly

14   applicable to Chapter 11.  But it's not strange at all that the

15   Ninth Circuit looked to Section 726(a)(5) in this context.

16   Section 726(a)(5) is the only provision in the entire

17   Bankruptcy Code that addresses --

18           THE COURT:  Right.

19           MR. JOHNSTON:  -- the subject of post-petition

20   interest.

21           THE COURT:  Well, that was my point:  what if we just

22   say, "Okay, we won't consider it"?  Then what?

23           MR. JOHNSTON:  Then as you noted, Section 502(b)(2)

24   says --

25           THE COURT:  It's the culprit.

(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. JOHNSTON:  -- no post-petition once no interest.

2    THE COURT:  Then it's the culprit, right?

3    MR. JOHNSTON:  Right.

4    THE COURT:  Okay.

5    MR. JOHNSTON:  So 726(a)(5), being the only provision

6 that addresses the subject, is the logical source for a rule of

7 decision for what could be characterized really as a gap in the

8 statute, for how to deal with unsecured claims against a

9 solvent Chapter 11 debtor.  Ninth Circuit looked to that

10 statute to develop the rule it laid down.  It makes perfect

11 sense.

12    So I'll leave you with that.  I did want to address

13 two cleanup issues, before I sit down, that came up in your

14 discourse with Mr. Tsekerides.  First, the federal judgment

15 rate is determined as of the petition date.

16    THE COURT:  No, I know that.

17    MR. JOHNSTON:  Okay, you --

18    THE COURT:  But they adjust it every month, I believe.

19 Don't they?

20    MR. JOHNSTON:  They adjust -- it's adjusted --

21    THE COURT:  So as you'll see --

22    MR. JOHNSTON:  -- every month --

23    THE COURT:  So if the company filed -- if the debtor

24 filed today --

25    MR. JOHNSTON:  Correct.

(973)096-5290   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT: -- we would look to see what the December

2    rule (sic) is. It wouldn't be later in the year. It's in

3    effect, right, today, per the Federal Reserve Board; right?

4    MR. JOHNSTON: Correct.

5    THE COURT: Okay.

6    MR. JOHNSTON: It changes over time but, for

7    purposes --

8    THE COURT: Yeah.

9    MR. JOHNSTON: -- of a bankruptcy case, you look to

10   the rate that was in effect on the petition date.

11   THE COURT: No, I know that.

12   MR. JOHNSTON: And then in terms of the Class 3B

13   issue, I think the confusion lies in the provision, of the

14   plan, that says that the treatment of Class 3B will change if

15   you determine that a rate other than the federal judgment rate

16   applies.

17   THE COURT: Well --

18   MR. JOHNSTON: And --

19   THE COURT: Yes, that's true, and that's what Mr.

20   Tsekerides said, but somehow I read that it gets treated a

21   different way, going forward. But he's resolved it. I mean --

22   MR. JOHNSTON: Okay.

23   THE COURT: -- to me, all four classes are either in

24   or out of the federal judgment rate here. And if I choose and

25   take the view of the creditors, then I'll leave for another day

PG&E Corp., Pacific Gas & Electric Co.

1   what you do with it or what the proponents do with it.  Okay.

2           MR. JOHNSTON:  Okay.

3           THE COURT:  You and Mr. Tsekerides have plenty of time

4   to reserve.

5           MR. JOHNSTON:  Great.  Thank you, Your Honor.

6           THE COURT:  Okay.  Mr. Dunne, are you the --

7           MR. DUNNE:  I don't know what the right adjective is.

8           THE COURT:  The duty guy?

9           MR. DUNNE:  But yes, I am.

10          THE COURT:  The victim here?

11          MR. DUNNE:  Yes --

12          THE COURT:  Okay.

13          MR. DUNNE:  -- Your Honor.  I'll --

14          THE COURT:  And are you sharing the time with anyone

15  else?

16          MR. DUNNE:  I'm going to take up about twenty minutes.

17  I'd like to reserve five, if possible, for rebuttal, and then

18  there'll be --

19          THE COURT:  Well, you don't get a rebuttal.  The

20  question is are you sharing the time with other counsel.

21          MR. DUNNE:  Well, I raise one point on the rebuttal,

22  only because I was recently in the circuit court where, if you

23  reserve more than a third of your time as opening, you can't do

24  that -- reserve more than a third for rebuttal.

25          THE COURT:  Well, but I'm -- this is a trial court,

PG&E Corp., Pacific Gas & Electric Co.

1    and I --

2            MR. DUNNE:  I understand.  I'm asking for five

3    minutes.  Asking for five minutes.  I'm just saying --

4            THE COURT:  I just want to know if any -- if you're

5    sharing with any of the other --

6            MR. DUNNE:  Yes.

7            THE COURT:  -- counsel.

8            MR. DUNNE:  Akin will go next after me, and then

9    there's another counsel thereafter.

10           THE COURT:  Just give me who and time estimates.

11           MR. DUNNE:  Five for Akin, and for Gibson Dunn --

12           THE COURT:  For whom?  Oh.

13           UNIDENTIFIED SPEAKER:  Fifteen minutes, Your Honor.

14           THE COURT:  Okay.  Thanks.

15           All right.  So, Mr. Dunne, your time is starting.

16   I've got a question for you, on a Post-It.  No, I thought about

17   what you probably were thinking about, and that is that, well,

18   what about -- look at this situation as in Sylmar and, I

19   believe, the case in -- maybe it wasn't Ultra, but in PPI, is

20   what about a lease termination.  So -- but in lease

21   termination, by definition, you have a breach.

22           502(a)(4) -- there's no one in this room who would

23   ever act as an attorney and seek fees that were in excess of

24   reasonable.  But if a lawyer filed -- if a creditor of this

25   debtor filed a claim for fees for services and sought an

PG&E Corp., Pacific Gas & Electric Co.

1    unreasonable amount, would that lawyer get his unreasonable --

2    or her unreasonable fees if unimpaired under 1124, or would

3    502(a)(4) trump whatever implication that 1124 would have?  It

4    seems to me I know the answer.  What do you think is the

5    answer?

6            MR. DUNNE:  Well, I think that you would be able to

7    knock those fees down to whatever the Court deemed to be

8    reasonable --

9            THE COURT:  Right.

10           MR. DUNNE:  -- but you're going to do it under the

11   contract and applicable law --

12           THE COURT:  But what if the --

13           MR. DUNNE:  -- with respect to --

14           THE COURT:  -- what if the plan -- by the way, I

15   forgot to tell you; this lawyer also is representing a creditor

16   who files a creditors plan.  And the creditors plan says, my

17   attorneys' fees are unimpaired under 1124.

18           MR. DUNNE:  You're going to say that --

19           THE COURT:  So then --

20           MR. DUNNE:  You're going to say that -- well, that is

21   easy.

22           THE COURT:  Right.

23           MR. DUNNE:  That's easy.  That's not imposed in good

24   faith, Your Honor, because that --

25           THE COURT:  Well, but what I'm getting at is the

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    lawyer says, "Well, I'm entitled to a jillion dollars of fees,

2    and that's because I'm allowed under nonbankruptcy law."  It

3    would seem to me the bankruptcy court and Code, 502(a)(4), will

4    say, no, that doesn't get you anywhere, because 502(a)(4)

5    overrides whatever leaves you in 1124 as unimpaired.  You're

6    still affected by the Code, which is what Ultra says.  It

7    doesn't say 502(a)(4), but it's the concept.

8            MR. DUNNE:  Well, let me jump right into statutory

9    impairment, Your Honor, because that --

10           THE COURT:  Okay.

11           MR. DUNNE:  -- that is a big issue here, because I do

12   think -- and I'll start with the statutory canon for you, which

13   is -- and we have a couple of cites for it, which is that a

14   court shouldn't interpret -- it should be loath to interpret a

15   statute in a way that effectuates an outcome that Congress had

16   previously amended the statute to avoid.

17           So let me go back to statutory impairment.  And I'll

18   give you a cite there.  It's Eastern District, California,

19   Spence v. Mendoza, 993 F.Supp. 785.  And the reason I'm

20   bringing that up is that Congress knew how to legislate

21   statutory impairment.  If we go back to the way the Code

22   existed in 1978, 1124 in three subclauses --

23           THE COURT:  Yeah.  I know.

24           MR. DUNNE:  -- (1), (2), and (3).

25           THE COURT:  Um-hum.

(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. DUNNE:  (3) said you get paid -- a creditor gets

2   paid in cash the allowed amount of its claim.  They used the

3   word "allowed amount" --

4          THE COURT:  Right.

5          MR. DUNNE:  -- because what does "allowed" do?  It

6   sends us, unsurprisingly, to Section 502, whose heading is

7   "Allowance of claims and (sic) interests".  With respect to

8   1124(1), they did not use the word "allowed claim".  They used

9   "claim"; you get all your legal, contractual, equitable rights

10  associated with the claim.

11          So now we know a couple things:  Congress knew how to

12  make a distinction between "allowed claim" and "claim".

13  "Allowed claim" is statutory impairment.  And when that was

14  used to basically disenfranchise a creditor and to not pay them

15  post-petition interest as their contract required, Congress

16  acted immediately, within the same calendar year, to abrogate

17  that --

18          THE COURT:  Well, and everybody knows -- we know it

19  was the New Horizon (sic) case, and that's what was --

20          MR. DUNNE:  The New Valley case, yes.  And --

21          THE COURT:  -- that triggered it.  Or New Valley.

22  Excuse me.

23          MR. DUNNE:  And so Your Honor should be very -- when

24  the tentative ruling and the question said, well, maybe you get

25  no interest rate, that's exactly what New Valley said, is you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    get nothing, because it's not the plan doing it, it's the

2    allowed claim under 502.

3           THE COURT:  But what if the -- what if the contract

4    doesn't provide for any interest?

5           MR. DUNNE:  But then that's -- Your Honor, I said that

6    before, meaning -- let me just deal with the one point.  To the

7    extent you have a contract rate and it's lower than FJR, you

8    get the contract rate, under our view of the law.  We have a

9    principal position.  We're not looking to say winners or losers

10   here, Your Honor.  And if you don't, then you could go to see

11   what the outcome would have been under applicable state law.

12   Maybe that's the federal judgment rate.  Maybe it's the state

13   judgment rate.

14          THE COURT:  Well, I don't know how state law could be

15   federal rate, but -- okay, but --

16          MR. DUNNE:  Well, and that -- I'm not principally --

17          THE COURT:  I mean --

18          MR. DUNNE:  -- focused on it.  Gibson will address

19   that.

20          THE COURT:  But it seems to me that if we look at the

21   mass of -- the universe of unsecured creditors who are impacted

22   and are your constituents generally, most of them are above the

23   interest rate and federal rate.  And so they're -- maybe

24   they're here for a matter of principal, but they're also here

25   for a matter of --

of 129
escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. DUNNE:  I'm here for principal.  I don't have

2     anybody else, Your Honor.

3          THE COURT:  They're here for a matter of money.

4          MR. DUNNE:  Yeah.

5          THE COURT:  But there is one small sliver of number of

6     creditors in your constituency who are going to get a -- do

7     better by the federal judgment rate.  Right?

8          MR. DUNNE:  Right, some will do better and some will

9     do worse.

10          THE COURT:  Right.

11          MR. DUNNE:  And we're just -- we're trying to call

12     balls and strikes, as the fiduciary for that, on the law.  And

13     I think, to be fair, most of them have a higher rate than

14     the --

15          THE COURT:  No, and the --

16          MR. DUNNE:  Yeah.

17          THE COURT:  -- briefs make that very clear.

18          MR. DUNNE:  And so with respect to the history of the

19     statute, Your Honor -- and Judge Isgur got it right -- I'll

20     talk about the Fifth Circuit in a second, because they actually

21     have two decisions that came out -- is that he found --

22          THE COURT:  Well, they only told me about the current

23     one, Ultra II.

24          MR. DUNNE:  Yeah, Ultra II replaced Ultra --

25          THE COURT:  Ultra I.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. DUNNE:  -- Ultra I, which was --

2    THE COURT:  Right.

3    MR. DUNNE:  The panel ruled in January and then --

4    THE COURT:  No, I understand.  But --

5    MR. DUNNE:  Right, right.  Right.

6    THE COURT:  But are you saying there's another circuit

7  decision?

8    MR. DUNNE:  No, no, no --

9    THE COURT:  Okay.

10    MR. DUNNE:  I'm not saying that.  I'm saying --

11    THE COURT:  Okay.  Well --

12    MR. DUNNE:  -- it's the January and --

13    THE COURT:  But then Ultra I is --

14    MR. DUNNE:  -- November decision.

15    THE COURT:  -- history; it's on the cutting-room

16  floor.  It's replaced by Ultra II.  Right?

17    MR. DUNNE:  Agreed --

18    THE COURT:  Okay.

19    MR. DUNNE:  -- though, to the point Your Honor was

20  making, Ultra I was basically saying, we don't think there's

21  any interest due and owing at all.  And the solvent-debtor

22  corollary to the absolute-priority rule, which, under Du Bois

23  and Dow Corning, gets you contract rate, didn't -- they were

24  dubious that it applied.  They said almost the exact opposite

25  to Judge Isgur this time, that, in a footnote, we do believe it

PG&E Corp., Pacific Gas & Electric Co.

1   survived the enactment of the Code and that you would subvert

2   the absolute-priority rule if you don't pay interest at the

3   contract rate.

4           So -- but all of this -- I'm going to take a step

5   back, because what's surprising to me is why don't they -- why

6   don't they impair the unsecured creditors?  If you want

7   Cardelucci to more directly apply, impair them --

8           THE COURT:  Well --

9           MR. DUNNE:  -- because at what price

10  disenfranchisement, Judge?

11          THE COURT:  Well --

12          MR. DUNNE:  That's the point.  At what --

13          THE COURT:  Well, I mean, that's a funny theory here.

14  We'll impair them by making them -- everybody gets to vote, for

15  one thing.  That's a good thing not to do, right?  And

16  secondly, if you've got a case on point that is controlling,

17  why would you ever not take advantage of that?  I mean, it's --

18          MR. DUNNE:  Well --

19          THE COURT:  I mean, obviously, the debtors' lawyers

20  would be crazy not to take advantage of it.

21          MR. DUNNE:  Well, let -- there's a couple points

22  there.  Obviously, we don't believe Cardelucci is

23  controlling --

24          THE COURT:  I know.

25          MR. DUNNE:  -- unless we were impaired and we're

PG&E Corp., Pacific Gas & Electric Co.

1   talking about the same fact pattern, where -- so they could

2   make it more on point.  It's not on point now.  But let's go

3   through that.  But let's -- I think it's worth --

4          THE COURT:  Well --

5          MR. DUNNE:  -- taking a step back --

6          THE COURT:  Mr. Dunne, you can make it even more on

7   point by having an insolvent debtor, in which case you can sit

8   down.  I mean, the point is you want the debtor to -- you want

9   the plan to deal with insolvency.  I mean, obviously the

10  shareholders wouldn't appreciate that.  But from the --

11         MR. DUNNE:  No, no --

12         THE COURT:  -- debtors' point of view, that solves --

13  saves a lot of interest.

14         MR. DUNNE:  No, what I'm saying is we believe

15  unimpairment requires post-petition interest.

16         THE COURT:  Right.

17         MR. DUNNE:  If our world was right -- well, let me

18  take a step back.  You could do -- creditors can find

19  themselves in one of three positions; right?  You could end up

20  being impaired in a class that has voted to accept.

21         THE COURT:  No, I know.

22         MR. DUNNE:  And if the class has voted to accept, all

23  you get is the best-interest test.

24         THE COURT:  I know.

25         MR. DUNNE:  Right?  1129(a)(7).  That's the world

PG&E Corp., Pacific Gas & Electric Co.

1    Cardelucci was in, because that gets you to 726(a)(5) and the

2    legal rate.

3            And I don't know what opposing counsel's talking

4    about.  The Ninth Circuit was quite clear; they were addressing

5    only, and they called it, the narrow issue presented by what's

6    the appropriate interest rate under 726(a)(5), the term, "the

7    legal rate".

8            THE COURT:  But that's because, as I said -- and I

9    went back and read the underlying plan -- there was one

10   creditor and he was -- and his wife; they were impaired.  So

11   there was nothing to talk about, about what do we do if he had

12   an unimpaired creditor.  Just wasn't the issue.

13           MR. DUNNE:  Oh, I agree.

14           THE COURT:  But the --

15           MR. DUNNE:  It wasn't the issue.

16           THE COURT:  But the question is, and Mr. Tsekerides

17   makes the point, that the statute still is there; it is what it

18   is.  1124 might have been amended, but 502(b)(2) didn't get

19   amended.  So what am I supposed to make a 502(b)(2) -- no

20   unmatured interest, period.  Doesn't say, if you're unimpaired;

21   I mean, except when you're unimpaired.  It could have done

22   that.  It could have said, 502(b)(2) except if you're

23   unimpaired.

24           MR. DUNNE:  But this is exactly where I think is the

25   slippery ice that we're skating on, which is now we're saying

escribers
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Congress, who clearly knew how to deal with statutory

2    impairment, they didn't do it.  The words "the plan", which is

3    not actually just in 1124(1), it's in the lead-in to all the

4    subclauses of 1124.

5            THE COURT:  That's right.

6            MR. DUNNE:  We are now trying to make those two words

7    do such a heavy lift that when it says the plan leaves

8    unaltered all the legal contractual equitable rights, when we

9    know they just deleted the statutory impairment, subclause 3,

10   it means you've got to put us in the world we were right before

11   the bankruptcy.  That is the price of disenfranchisement.

12           And I wanted to make a finer point on this with the

13   9th Circuit precedent, so let me just say I think that there's

14   a better precedent that proves the point than Cardelucci.  And

15   let me just turn to it.  And it's the Pacifica New Investments

16   case that came out in 2016.

17           Let me just set this up, because it proves the point,

18   both in terms of amendments and how despite congressional

19   actions in 1994, people make the same arguments and hope the

20   banks and you judges do the same thing, which is pre-1994 there

21   was the Entz-White principle.

22           THE COURT:  Right.

23           MR. DUNNE:  And this is dealing not with 1124(1).  And

24   you're going to hear from the other side on rebuttal that that

25   makes all the difference in the world, that you're in 1124(2)

(970) 381-1120 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    and not 1124(1).  So the Pacifica case is in 1124(2).  The

2    question was, the Entz-White doctrine from the eighties allowed

3    you to cure defaults at the non-contractual default rate of

4    interest.

5            THE COURT:  Right.

6            MR. DUNNE:  Congress, then, in 1994, like they did

7    with respect to 1124(3), they corrected that, too.  And they

8    added Section 1123(d), which says you have to provide them

9    everything due and owing under applicable law in their

10   documents in order to cure.  Notwithstanding that amendment, we

11   go back up to the 9th Circuit to see whether a debtor can

12   unimpair them and reinstate them by not paying at the default

13   rate, by paying at the lower, non-default contract rate.

14           The 9th Circuit overruled for two reasons.  The first

15   one, obviously, was the congressional action of Section

16   1123(d).  We have that, too, in terms of the aggregation of

17   1124(3).  But the second reason is the one I want to spend time

18   with, Judge.  They said even if Congress hadn't done so, the

19   words of Section 1124(2)(e) would require the full default rate

20   of interest and --

21           THE COURT:  This is Pacifica New Investments?

22           MR. DUNNE:  Yes, this is Pacifica New Investments and

23   so I'm just going to quote -- I'll give you a cite for it.

24           THE COURT:  Well, I think -- isn't it in your brief?

25           MR. DUNNE:  Yes, it's in the brief.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  Yeah, okay.  The quote is for a debtor to

2   render such a creditor unimpaired and unable to object to the

3   debtor's plan, the debtor must cure the default, but may not

4   "otherwise alter the legal, equitable, or contractual rights"

5   of the creditor.

6    I'm continuing with the quote.  "Here, one of those

7   rights is post-default interest and New Investments cure may

8   not alter that right."  This is 840 F.3d at 1142.  And, Your

9   Honor, this is why the Cardelucci conversation befuddles me.

10  Because you know what's not in Section 1124 is the legal rate

11  of Section 726(a)(5) that Cardelucci was talking about.

12    You know what is in 1124(1)?  The same language that

13  the 9th Circuit was interpreting in Pacifica.  If you look at

14  1124(1), it says that the plan, "leaves unaltered the legal,

15  equitable and contractual rights to which such claim or

16  interest entitles the holder of such claim or interest."

17    Now we go to the 9th Circuit, Pacifica, 2016, three

18  years ago.  It focuses on 1124(2)(e).  And I'm quoting

19  identical language, "does not otherwise alter the legal,

20  equitable, or contractual rights to which such claim or

21  interest entitles the holder of such claim or interest."  The

22  9th Circuit then goes on to say one of the interests -- one of

23  the rights that's embedded in that language is post-default

24  interest at the contract rate.  And the ability to cure doesn't

25  alter that.

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      They dismiss it in their brief because they say, well,

2  look, 1124(2) kind of makes my head spin.  It's got

3  (a),(b),(c),(d) and only (e), so maybe the right to pay it at

4  the contract rate is embedded in (a) or (b) or something else.

5  The 9th Circuit said no.  It's embedded in subclause (e), which

6  is the identical language to what we have in 1124(1).

7      And that, Your Honor, is why -- if you want the 9th

8  Circuit precedent, I think it's a mistake to follow Cardelucci,

9  because it's too easy --

10      THE COURT:  No, I got it.  So go back and say what you

11  just said again, that 1124(2)(e) circles us back to the

12  preamble?  I mean --

13      MR. DUNNE:  No, let me say --

14      THE COURT:  I mean, I read the case and I'll read it

15  again, but I'm just looking at 1124(2)(e).

16      MR. DUNNE:  Yes, so let me --

17      THE COURT:  I'm reading it like you are.

18      MR. DUNNE:  So let me go through it.

19      THE COURT:  Okay.

20      MR. DUNNE:  What I want to point out is obviously

21  statutory construction, Supreme Court Gustafson 513 US 561 at

22  570.  "The normal rule of statutory construction is that

23  identical words used in different parts of the same act are

24  intended to have the same meaning."  We have the identical

25  words in Section 1124(2)(e) and Section 1124(1).

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  Okay.  Now just stop there.  Which

2  phrasing are you focusing on?  I'm looking at them right

3  together, 1124(1) and 1124(2)(e).  It's just that whole phrase,

4  right?

5      MR. DUNNE:  It's the whole phrase.  It's the whole

6  phrase.

7      THE COURT:  I mean, the whole phrase.

8      MR. DUNNE:  And what the 9th Circuit said is the

9  debtor must cure the default, but may not "otherwise alter the

10  legal, equitable, or contractual rights of the creditor."

11      THE COURT:  But --

12      MR. DUNNE:  One of those rights, the 9th Circuit said,

13  is post-default interest at the contract rate.

14      THE COURT:  But let's go back to Ultra II.  Ultra II

15  says you look to see where is the problem?  Is it the statute

16  or in the plan?  And the preamble, as you pointed out, 1124,

17  the preamble talks about impaired under a plan unless, and then

18  it says the plan does these things.

19      And I think what Mr. Tsekerides is arguing is the plan

20  isn't doing what you're blaming, the code is doing it.  So --

21  so isn't -- how do I resolve that?  Is that -- how do you get

22  to statutory interest rules with 502(b)(2) saying no post-

23  petition interests?  It doesn't anything about impaired or

24  unimpaired.  And we both know that it's not limited to solvent

25  or insolvent debtors.  It says no post-petition interest,

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1  period.

2        And so how do I get around that with the message from

3  Ultra, at least -- and I understand it's not controlling -- but

4  it tells us look to see what the cause is.  Is it in the plan

5  or in the statute?

6        MR. DUNNE:  So let me go through this, because we're

7  mixing and matching.

8        THE COURT:  Okay.

9        MR. DUNNE:  I think I'd win under Ultra and I'd win

10  under Pacifica.  But let's not kind of cross streams here,

11  because see, if we look at just the 9th Circuit precedent, the

12  9th Circuit in Pacifica didn't talk about Cardelucci being an

13  applicable rate or having anything to do with the same language

14  that I'm talking about, despite the words "the plan" in the

15  lead-in.

16        So we can say, now, maybe the 9th Circuit adopts

17  statutory impairment, but they haven't yet.  All we have is

18  what we have from the Pacifica.  If they adopted Ultra II whole

19  hog, Ultra -- the two Ultra decisions said, A -- because the

20  same argument about 726(a)(5) was made to the 5th Circuit, that

21  726(a)(5), in the best-interest test, is irrelevant to

22  unimpairment.  And were going to remand for a finding of the

23  solvent debtor, corollary to the absolute-authority rule.

24        THE COURT:  Well, but --

25        MR. DUNNE:  Which gets you back to payment in full

(972) 406-3290 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   before the equity gets anything.  It's a huge windfall for old

2   equity.  It's a violation of the absolute-priority rule.

3   That's why --

4          THE COURT:  Well, wait a minute.  The last time I

5   checked, the absolute-priority rule applies for voting classes,

6   not unimpaired classes.  So where do you get to invoke

7   absolute-priority rule for a class that doesn't get to vote?

8          MR. DUNNE:  Well, there's two ways, Your Honor, though

9   I --

10          THE COURT:  And by the way, absolute-priority rule is

11   1129(b)(2), as you know, in 1129(b), which kicks in only when

12   you don't have the votes of the impaired classes.

13          UNIDENTIFIED SPEAKER:  Which is why they're

14   disenfranchising us, Your Honor.

15          THE COURT:  Well, I know -- look, look --

16          MR. DUNNE:  Think about the --

17          THE COURT:  I know they're disenfranchising you, but

18   you're not a voter to begin with if you're unimpaired.

19          MR. DUNNE:  But the --

20          THE COURT:  So franchise and enfranchise of voting

21   concept and non-impaired people don't get to vote.  So you

22   can't blame somebody who relies on the statute for

23   disenfranchising you.

24          MR. DUNNE:  Your Honor, what I'm saying is it should

25   give all of us pause if we think Congress intended, after the

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    deletion of 1124(3), for the outcome for a disenfranchised,

2    unimpaired creditor to be worse than if you were crammed down

3    upon.

4          THE COURT:  I know.

5          MR. DUNNE:  And so --

6          THE COURT:  I got the sense of it.  You make a very

7    persuasive argument, except I'm bound by a statute.  I mean, a

8    case, unless you persuade me that I can ignore it because of

9    New Horizon -- I'm sorry, of Pacifica, excuse me.

10         MR. DUNNE:  And, Your Honor, I do think you should

11   spend some time with that, because I think that's --

12         THE COURT:  Well, I already have.

13         MR. DUNNE:  But that's directly on point, in terms of

14   the language.  They didn't get hung up by the plan.  They

15   didn't get hung up by Cardelucci.  They didn't view it as

16   applied.  Now I read -- I think the better textual read, post-

17   deletion of the statutory impairments, sub-section 1124(3) is

18   that the plan wasn't intended to do it.

19         What the language doesn't say, Your Honor, is it

20   doesn't say the plan doesn't impair you.  It says the plan

21   shall leave you unaltered, meaning it's asking you to go back

22   in time and leave you unaltered of all your legal, contractual,

23   and equitable rights.  It would be actually a stronger argument

24   if it says the plan doesn't otherwise impair you.  That's not

25   what it says, because then you say, oh, the statute's impairing

PG&E Corp., Pacific Gas & Electric Co.

1   me, but not the plan.  It says you have to go and give them

2   everything they were entitled to under their contract, equity,

3   and the law.  And that's where I think Your Honor should come

4   out and there's nothing in the 9th Circuit that says otherwise.

5   And frankly, it's consistent with the Pacifica case.

6           THE COURT:  Remind me, because I don't remember the

7   facts of Pacifica.  What was the issue that specifically teed

8   up the argument?  Was it a post-petition interest question?

9           MR. DUNNE:  It related to 1124(2), which is

10  reinstatement.  And by the way, the reinstatement is the gap

11  questions that Your Honor was asking about before, so it may be

12  relevant here.  But they said that they tried to reinstate a

13  creditor.  And the question was what was the appropriate

14  interest rate between the petition date and the effective date?

15          THE COURT:  For reinstatement, though?

16          MR. DUNNE:  For reinstatement.

17          THE COURT:  So the amount of interest wasn't relevant.

18  It was what to reinstate.

19          MR. DUNNE:  No.  It was the amount -- it was the rate

20  of interest, whether it was at the contract rate --

21          THE COURT:  Contract rate or default rate.

22          MR. DUNNE:  -- or default rate.

23          THE COURT:  Yeah, okay, but that -- so it's a default

24  or non-default and you get to -- and so the critical lynchpin

25  would seem to be, you know, the cure default concept, which

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   gets you back to Entz-White and so on, right?

2           MR. DUNNE:  Correct.

3           THE COURT:  Okay.

4           MR. DUNNE:  But this is the point I want to make,

5   because the argument that they make is it's the cure concept

6   that actually bolted on something additional than you would

7   have if it was just 1124(1), right?  Because 1124(1) is

8   identical to 1124(2)(e).  But then you have (a),(b),(c) and

9   (d).

10          THE COURT:  No, I know.

11          MR. DUNNE:  Right.  What the 9th Circuit said is it's

12  the opposite, is that previously we thought the cure concept

13  would allow you to pay less than the default rate.  But the

14  catch-all, the (e) -- and it's conjunctive.  You have to get

15  all --

16          THE COURT:  I need someone to turn a phone off there

17  in the courtroom, please.  Go ahead.

18          MR. DUNNE:  That embedded in the plan does not

19  otherwise alter your legal, contractual, or equitable rights.

20  And it says directly, one of those rights is post-default

21  interest.

22          THE COURT:  So my hypothetical avaricious, greedy

23  lawyer, who has an unreasonable claim for fees, is unimpaired

24  by every other definition.  Does that lawyer get away with

25  unreasonable fees or not under 502(b)(4)?  And so, what's --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   how do I get around this statutory construction rule?

2           MR. DUNNE:  Well, there's two answers.  And I'll talk

3   about PPI in a second.

4           THE COURT:  No, but I want -- PPI's a breach lease

5   thing.  My hypothetical lawyer didn't breach anything.  He just

6   charged a lot of money.

7           MR. DUNNE:  Right.  Which means the debtors -- and we

8   see it today.  Somebody referred to unimpairment and impairment

9   as happenstance.  It actually is not.  It's a volitional choice

10  by the debtors to either unimpair or impair.

11          THE COURT:  But in my hypothetical, I told you the

12  creditor proposed the plan.

13          MR. DUNNE:  Right.  But in this case -- so let me deal

14  with -- our debtor should have --

15          THE COURT:  Or somebody else proposed the plan and

16  says, oh, we're going to pay this lawyer his unconscionable fee

17  because that's what he's entitled to.  So why do I get -- what

18  would we do if that were the case before me?  Would I say

19  sorry?

20          MR. DUNNE:  I think you have to impair him, Judge.

21  And I think that Your Honor would say it's not a plan proposed

22  in good faith, unless you impair them.

23          THE COURT:  But that's so fact-driven.  I mean --

24          MR. DUNNE:  Or you say, under 1124(1), that

25  unconscionable is the word you just used, is not a set of their

PG&E Corp., Pacific Gas & Electric Co.

1    legal, contractual, or equitable rights associated with the

2    case.

3        THE COURT:  Okay.  I'm going to change the word

4    unconscionable to the statute reasonable.  Now suppose under

5    state law, repo or unlawful detainer or some -- whatever some

6    state law that allows some large number of dollars for a lawyer

7    to collect, so we have where your hypothetical, where under

8    state law the lawyer is entitled to a --

9        MR. DUNNE:  If it's lawful under state law, Your

10   Honor --

11       THE COURT:  But 502 lets the bankruptcy court limit it

12   to reasonable, insiders and lawyers.  Okay, so I'm pinning you

13   down.  I'm not going to -- the only thing this lawyer did was

14   charge fees that were legally permissible under state law, but

15   the bankruptcy judge thought they were unreasonable.  He didn't

16   propose the plan.  Somebody else proposed it.  And he didn't

17   choose to leave himself unimpaired.  The proponent of the plan

18   did.  My issue is, we are now at the confirmation hearing and

19   that lawyer says, judge, you can't reduce my fees to what you

20   think is reasonable because the plan unimpairs me.  Now what's

21   the outcome?  I'm sorry, I can't limit your fees to a

22   reasonable amount?

23       MR. DUNNE:  Well, I'm struggling with the space

24   between reasonable.  Meaning, you're positing a world where

25   it's lawful under state court and the proponent of the plan

PG&E Corp., Pacific Gas & Electric Co.

1   said in order to confirm this plan, we're willing to pay them

2   whatever is lawful under state court.

3           THE COURT:  Yeah.

4           MR. DUNNE:  Let's assume they stood up and said that,

5   Judge.

6           THE COURT:  I am.  I'm doing that because the

7   proponent of the plan didn't want to -- or chose not to invoke

8   the unreasonable standard, the unreasonable cap under

9   502(b)(4).

10          MR. DUNNE:  Well, that would be a determination that

11  the parties made that they wanted to pay them the amount that

12  was under state law.  I mean, it's no difference than PG&E I,

13  right?  PG&E I, the contract rate and the interest --

14          THE COURT:  But I'm trying --

15          MR. DUNNE:  Cardelucci was alive and well then.

16          THE COURT:  But if the proponent of the plan in my

17  hypothetical proposes leaving this lawyer unimpaired, but

18  someone else, U.S. Trustee or another creditor, someone else

19  objects and says that fee is unreasonable, are you -- you're

20  saying that -- well, I don't know how you would reconcile.  If

21  the bankruptcy court could limit that lawyer's fees to

22  reasonable, could it do it at the same time, while leaving that

23  lawyer creditor unimpaired?

24          MR. DUNNE:  Look, I think you could do that under

25  state court, but you're positing a world that it's somehow not

eScribers
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    unconscionable but not reasonable.  And I think you're either

2    doing it under state law, Your Honor, or you're telling them

3    you're not finding it in good faith, if it's such a quantum.

4            THE COURT:  Okay.  All right, well that's -- let's

5    stick with the -- actually with the real case.  Go ahead and

6    tell me what else to do.

7            MR. DUNNE:  Your Honor, so the -- I do think that we

8    should talk a little bit about the -- there was some discussion

9    about, you know, it's really equitable to just have one rate

10   that should apply to everybody.  And I think that that is not

11   right, because then we're mixing and matching again between

12   class concepts and unimpairment.

13           THE COURT:  Well, we might be mixing and matching, but

14   that's one of the problems.  Isn't that exactly what Cardelucci

15   tells us about?  If we have a rule that says everyone in the

16   class must be treated alike, how do we have different people in

17   the same class get different rates of interest?

18           MR. DUNNE:  Right.  And the lead in in 1124 says with

19   respect to each creditor, you're going to have to do this

20   unimpairment analysis.  And if you're going to give everybody

21   their separate legal, contractual, and equitable rights, by

22   definition they're different.  They were the day before --

23           THE COURT:  Well, then what do we do?  Different

24   classes?  We put them all in different class?

25           MR. DUNNE:  Well, unimpairment is close to that, Your

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   Honor.  We're not voting.  I mean, it's kind of like the DIP

2   order because they didn't vote and they --

3           THE COURT:  Well, no, but -- I know, but we have a

4   principle of bankruptcy law that says everyone in the class has

5   to be treated the same.  And if you have a class that says I'm

6   going to give Joe one amount and Sally another amount, that

7   violates the treat them in the same way in the class rule.

8   Now, one way around it is to have two different classes, but

9   that invites voting and all sorts of other issues.

10          MR. DUNNE:  All I'm saying is you keep -- there, you

11  can treat them all as unimpaired under 1124.  And everyone's

12  going to have to see different outcomes that they would've had

13  under -- if we had all gone to state court on our particular

14  claims, with either contract rate or otherwise.

15          But two points on this, just to get it out.  One is

16  there's cases that have said -- and this is the Kheel case --

17  equality among creditors who have lawfully bargained for

18  different treatment is not equity, but it's opposite.

19          THE COURT:  Which case?

20          MR. DUNNE:  It's Kheel, K-H-E-E-L, 369 F.2d 845 at

21  851.  The other point is I think that the Court should be

22  concerned also about the equities between the classes.  The

23  Court should be concerned about --

24          THE COURT:  How can I do that?  How can I do that?

25          MR. DUNNE:  Well, A --

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  The proponent of the plan puts people in

2 classes and chooses to impair them or unimpair them.  And if

3 somebody objects to what class he or she is in or it -- then we

4 deal with it.  I don't independently sit there and say, that's

5 bad classing, Mr. Tsekerides.  You've got to change the

6 classes.  That's not --

7      MR. DUNNE:  Well, part of this is that I'm not sure

8 where the Court is going, because I think that you don't need

9 to get there because I think the text says that we get it at

10 the contract rate and Pacifica New Investments says that.  If

11 you say, well, no, we think the words, "the plan", which

12 qualifies all the subclauses, actually means that 502(b)(2)

13 chops the head off of all the interest, then Your Honor is

14 right.  Then maybe the answer is no, that you don't get any

15 interest.

16      So what's the basis for applying it, other than the

17 fact that there's been no court that has done that since it was

18 repealed in 1994 with the express intention of providing

19 unsecured creditors with their contract rate of interest

20 after -- if they're unimpaired?

21      So if we're talking about equities -- because you've

22 got to say, well maybe, Your Honor -- which was what I thought

23 Your Honor was saying -- is that the legal, contractual, and

24 equitable rights of claim includes the equitable rights under

25 the bankruptcy code.  That, of course, would be more 1129,

PG&E Corp., Pacific Gas & Electric Co.

1    because that's the only place where equitable shows up.  It

2    doesn't show up in 1129(a)(7).  And then you could get into the

3    maxims that equity apports a windfall and we're trying to

4    reallocate value, hundreds of millions of dollars, from the

5    unsecured creditors to the old equity.

6           And that's what -- I mean, that's the violation of the

7    absolute-priority rule, which Your Honor should be concerned

8    about, that they're trying to back into by getting an extreme

9    reading of unimpairment.  They're trying to ask you to go

10    farther than any court has done.

11           THE COURT:  I don't -- listen, you can put all sorts

12    of motives on them.  To me, the issue is if you start with a

13    solvent debtor, which we're starting with, and we believe that

14    the Cardelucci controls, then the answer is simple.  You get

15    interest, but it's not your choice.  It's not the contract

16    choice.  It's the federal rate, end of story.  If you say,

17    well, let's ignore the federal rate, then Mr. Tsekerides would

18    argue, as I was questioning, then you get nothing.  Your

19    argument is you get it because of your interpretation and the

20    way you want me to read 1124.  And that's -- those are the

21    choices.

22           MR. DUNNE:  And I think that Your Honor, on that,

23    that, Your Honor should look at the kind of evolution and

24    maturation of 1124.

25           THE COURT:  Yeah, I understand.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. DUNNE:  And the deletion of 1124(3) and the use of

2  allowed amounts and the statutory canons that go with it, that

3  we have to assume -- using the word "allowed amount" was

4  unnecessary, if the plan meant what they mean.

5    THE COURT:  Well, but really, what you're telling me

6  is, I guess, that Cardelucci came -- well, let's say -- remind

7  me again, you've said it here -- Cardelucci came before sub 3

8  was removed, right?

9    MR. DUNNE:  No, Cardelucci came after, because --

10    THE COURT:  Okay, okay.

11    MR. DUNNE:  -- sub 3 was --

12    THE COURT:  Okay, so let's -- so therefore, okay,

13  that's right.  We know that's right.  So sub 3 got eliminated.

14    MR. DUNNE:  In '94, yeah.

15    THE COURT:  So Congress changed the law to where it

16  was.  Then Cardelucci decided what it decided.  And the only

17  question, it seems to me, at the trial level is do I -- am I

18  bound by Cardelucci?  If so, end of story.  If not, what's the

19  rule?  And maybe Pacifica is the rule.  I don't know.

20  Pacifica, obviously -- if your argument is Cardelucci doesn't

21  control because Pacifica does?

22    MR. DUNNE:  It's two --

23    THE COURT:  Let me state it differently.  Would we be

24  having this discussion if Pacifica had never been issued?  I

25  don't -- would I have any choice at all, as a trial court in

PG&E Corp., Pacific Gas & Electric Co.

1  the 9th Circuit?

2          MR. DUNNE:  Yes, because --

3          THE COURT:  Nothing changed.  In other words, you

4  corrected me that the statute got changed, then Cardelucci came

5  down.  So unless I could distinguish it, which I don't know how

6  I would do, I'm bound by it.  But if --

7          MR. DUNNE:  So the question is -- what you're asking,

8  Your Honor, is let's assume Pacifica doesn't exist for a

9  second.  And all we had was Cardelucci from the 9th Circuit.

10 I think you answered the question, now that I think about it.

11 If the Court said in the tentative that, forget about fair and

12 equitable, that's an 1129 concept.  We never get there unless

13 you're an impaired class.  That's Cardelucci.  You never get to

14 the best-interest test of 1129(a)(7) unless you're an impaired

15 class.

16         The answer to 1129(b) -- and Your Honor's right on

17 that -- can't be different than 1129(a)(7).  And yet, we're --

18 somehow people have convinced the Court that it's broader.

19 When you read the first paragraph and the last paragraph, they

20 said it's a narrow issue presented.  And then at the end, they

21 say all we're dealing with is definitive meaning for a precise

22 statutory term, the legal rate.  You know what doesn't appear

23 anywhere in 1124?  Is the legal rate.  The very words --

24         THE COURT:  So what you want me to do is be persuaded

25 that -- this is what we started half an hour ago -- 724 doesn't

PG&E Corp., Pacific Gas & Electric Co.

1    apply?  1124 finishes the start -- controls.

2            MR. DUNNE:  Right, can't control.  That's the price of

3    disenfranchisement is we don't talk about all the 1129 --

4    that's what I'm saying, Your Honor.

5            THE COURT:  Okay.

6            MR. DUNNE:  And I would be making the same argument

7    about the language that I just happened to have with luck that

8    the 9th Circuit had addressed three years ago about that

9    language including the right to contract rate --

10           THE COURT:  And it seems to me that -- well, never

11   mind.  You need to let the other counsel do it.  And you said

12   you wanted to reserve a few minutes.  I guess I'll let you do

13   it.  Let's go ahead and let the other counsel --

14           MR. DUNNE:  I appreciate that, Your Honor.  Thank you

15   very much.

16           THE COURT:  Thank you.

17           MR. QURESHI:  Good morning, Your Honor.

18           THE COURT:  Hi.

19           MR. QURESHI:  For the record, Abid Qureshi, Akin Gump

20   on behalf of the ad hoc no vote committee.

21           THE COURT:  Yes, sir.  Good to see you again.

22           MR. QURESHI:  Your Honor, I won't retread the ground

23   that Mr. Dunne plowed.  I want to talk about the absolute-

24   priority rule.  But I do want to address just one question that

25   came up in the colloquy toward the end of Mr. Dunne's argument.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    If Pacifica didn't exist, the Court then asked the

2   question, well, am I then stuck with Cardelucci?  Answer: no.

3   Our argument is not dependent upon Pacifica, because the thrust

4   of the argument is that Cardelucci does not address either 1124

5   and what is impairment, or 1129(b).

6    THE COURT:  Okay, I agree.  It doesn't.

7    MR. QURESHI:  Right --

8    THE COURT:  But why am I not bound by it anyway,

9   unless Pacifica can be read to interpret or to change the

10   ground rules?  I mean, don't I have to follow by any precedent,

11   unless I can persuade it that it's not binding?

12    MR. QURESHI:  Unless you are persuaded that it's not

13   binding.  And our position --

14    THE COURT:  Right.  But the narrow issue -- the narrow

15   issue is insolvent cases, you get the federal rate of interest,

16   period.

17    MR. QURESHI:  What --

18    THE COURT:  That's the narrow issue.

19    MR. QURESHI:  The thrust of the debtors' argument is

20   to take Cardelucci, that as Mr. Dunne explained, was designed

21   to interpret a narrow provision in a section of the code that

22   is not relevant here, and apply it across the board, and in

23   doing so, functionally read out 1124 and 1129(b).  And that

24   allows Cardelucci to do much more than it was intended.

25    THE COURT:  But whatever the author Judge Zilly

PG&E Corp., Pacific Gas & Electric Co.

1    intended, it is what it is and to me.  And because Mr. Onink

2    was impaired, at least the question of the absolute-priority

3    rule might have applied.  If you're unimpaired, don't you agree

4    with me, absolute-priority rule is a non-issue?  It's a non-

5    issue, right?  You don't even get to invoke it, do you?  If

6    you're unimpaired?

7              MR. QURESHI:  I agree.

8              THE COURT:  You agree?  Okay, so if Cardelucci is a

9    narrow issue, to me, the narrow issue is in a solvent case,

10   what's the proper rate of interest?  What could be more narrow

11   than that?  I mean, is it -- well, it's a little broader if we

12   have unimpairment versus impairment?  I mean, to me, it's a

13   narrow question.

14             And that's why -- listen, I don't have a stake in the

15   outcome.  I'm not rooting for one side or the other.  I have to

16   follow controlling law.  And if the controlling law doesn't

17   give me any options, I don't have a choice.  So you need to

18   tell me why I have a choice.  And I'm not persuaded that 1129

19   is a choice, as long as the plan has your class unimpaired.

20             MR. QURESHI:  So if Your Honor looks at the equitable

21   considerations that are referred to in the Cardelucci decision,

22   where Cardelucci talks about where there are only a few

23   unsecured creditors that are seeking post-petition interest and

24   there are sufficient assets to play -- to pay all claims for

25   all interests, then Cardelucci says there will be no concerns

PG&E Corp., Pacific Gas & Electric Co.

1  regarding the equity among creditors.

2          THE COURT:  Where do you --

3          MR. QURESHI:  It's the penultimate paragraph.

4          THE COURT:  Excuse me, you're reading it right at the

5  end there?  Okay.

6          MR. QURESHI:  It's the penultimate paragraph of the

7  decision.

8          THE COURT:  Okay.

9          MR. QURESHI:  And so, in those instances, the court

10  says that the concern is a different one, that the debtor may

11  receive a windfall.  And, Your Honor, that's why solvency

12  matters.  That's the situation here.  Here, the debtor has said

13  to the Court they have the ability to pay contract rate

14  interest to all creditors without reducing the recovery to any

15  creditors, importantly, including the wildfire victims.

16          THE COURT:  Did Mr. Cardelucci have the ability to pay

17  the higher rate of interest?

18          MR. QURESHI:  That I don't know, Your Honor.

19          THE COURT:  Well, I just told you I know, because they

20  stipulated around and confirmed a plan and reserved this one

21  issue.  So I'm reading -- and look, we're back to the

22  fundamental question, here.  If Cardelucci was insolvent, would

23  the case have ever even happened?

24          MR. QURESHI:  If Cardelucci was insolvent, no.

25          THE COURT:  And God forbid, if PG&E is insolvent,

PG&E Corp., Pacific Gas & Electric Co.

1 we're finished with this argument also, aren't we?

2         MR. QURESHI: Agreed. If PG&E were insolvent, that's

3 right.

4         THE COURT: So therefore, whether it's a big case or a

5 little case or whether they have the ability to pay or not

6 doesn't matter. The question is, if they're solvent and if

7 your class is unimpaired or impaired, either way, solvent

8 debtors don't pay post-petition interest. Why? Because

9 502(b)(2) says they don't.

10         MR. QURESHI: All right. So let's start with that.

11 That's not what 502(b)(2) says. 502(b)(2) says you're not

12 entitled to unmatured interest. Post-petition interest is not

13 unmatured interest. It's interest on an allowed claim. So

14 it's not --

15         THE COURT: Well, the day after petition date the

16 interest for the future is still unmatured, isn't it? Doesn't

17 it mature each day, that each day goes by?

18         MR. QURESHI: Your Honor, yes. If the bonds were

19 reinstated, then of course, interest would continue to accrue.

20 But the prohibition in 502(b)(2) on unmatured interest cannot

21 be read to say that it prohibits contract rate interest on a

22 claim or post-petition interest of any other rate by a claim.

23         THE COURT: Well, if the case were liquidated in

24 Chapter 7, what would the trustee pay?

25         MR. TSEKERIDES: If the case were liquidated in

(971) 406-2290 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Chapter 7, Your Honor, then you're back to legal rate. And

2    legal rate is what Cardelucci interprets.

3            THE COURT: Which --

4            MR. TSEKERIDES: Which is FJR.

5            THE COURT: But it interprets it in a case where

6    Cardelucci's case was not liquidated. So the Ninth Circuit

7    says, here is a Chapter 11 debtor, post confirmation. We're

8    dealing with an issue, Cardelucci's case was not liquidated in

9    Chapter 7, never was in Chapter 7, and we're applying a rule,

10   that's better than not applying a rule, instead going to

11   502(b)(2), which means Onink would get nothing.

12           Anyway, I'd like you -- we're going around in circles.

13   Go ahead, tell me what I should do, but --

14           MR. TSEKERIDES: Well --

15           THE COURT: -- your colleague also has already told

16   me.

17           MR. TSEKERIDES: Yeah, so, Your Honor, I want to go

18   back and talk about Ultra II because I think what the court did

19   there is obviously -- could not be more recent, and what --

20           THE COURT: That's for sure.

21           MR. TSEKERIDES: That's for sure. And what the court

22   did is it upheld this distinction of code impairment v. plan

23   impairment. But that clearly cannot be, and was not in Ultra,

24   the end of the analysis --

25           THE COURT: No. I know that.

PG&E Corp., Pacific Gas & Electric Co.

1        MR. TSEKERIDES:  -- right?  Because what Ultra did, is

2   Ultra nonetheless sent it back down to the bankruptcy court and

3   said you now need --

4        THE COURT:  Figure out these two things.

5        MR. TSEKERIDES:  Figure out these equitable

6   considerations.

7        THE COURT:  What would that panel of judges done if

8   they were hearing Ultra in the Ninth Circuit?

9        MR. TSEKERIDES:  I'm sorry?

10       THE COURT:  What would those three judges have done if

11  they had been graciously redeemed from Texas and placed down at

12  7th and Mission and said despite your progeny and your

13  provenance, you are Ninth Circuit judges today, apply the rule.

14  They wouldn't send it back to figure out their interest rate,

15  would they?

16       MR. TSEKERIDES:  Well, I don't think that they would

17  have looked at Cardelucci and said well, that's the result,

18  it's FJR.

19       THE COURT:  Well, they would have said, well, are we

20  bound by Cardelucci, yes or no?  And if the answer --

21       MR. TSEKERIDES:  Right.

22       THE COURT:  -- and if they concluded they were not,

23  obviously they would do something different.

24       MR. TSEKERIDES:  Right.

25       THE COURT:  But it struck me as that -- because the

PG&E Corp., Pacific Gas & Electric Co.

1    bankruptcy judge went the way the creditors want, the Ultra II

2    says under Fifth Circuit, there is no controlling precedent on

3    post-petition interest, so send it back to the judge to

4    determine it.

5           And this notion of a solvent exception, how could

6    there be a solvent exception in this case, when the only way

7    you ever get to the post-petition interest is if you're

8    solvent, unless your theory is correct?

9           MR. TSEKERIDES:  Well, again there's two ways in the

10   solvent-debtor universe, right to get to post-petition

11   interest.  First is, you get unimpaired under 1124(1),

12   unimpaired the way we read, and we thinks it's appropriate to

13   read 1124, which is in a solvent case, you're entitled to your

14   contract rate, or through 1129(b) and the application of the

15   fair and equitable test.

16          And fundamentally, Your Honor, what I think it boils

17   down to is 1129(b), as we all know, embodies the absolute-

18   priority rule, right and in case of a solvent debtor, I think

19   it's important to step back a minute and talk about what that

20   rule means.

21          What are they trying to do here?  What the debtors are

22   trying to do is take hundreds of millions of dollars and give

23   it to equity before creditors are --

24          THE COURT:  I --

25          MR. TSEKERIDES:  You obviously --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  I'm well aware of the consequences.

2    MR. TSEKERIDES:  Right, and so, Your Honor, what I

3  think we're fundamentally saying is whether you look at this

4  through the lens of 1124 and what does unimpairment truly mean,

5  or 1129(b) and what is fair and equitable, is -- you get to the

6  same principle, and it's what the Fifth Circuit in Ultra II

7  says.  It says, "Absent compelling equitable considerations,

8  when a debtor is solvent, it is the role of the bankruptcy

9  court to enforce the creditor's contractual rights."

10    Two paths to do it.  A proper reading of unimpairment

11  under 1124(1) or if they impair us, which they should, 1129(b)

12  and the fair and equitable test.

13    THE COURT:  Well, you say if -- which they should.  I

14  mean I -- this is the first time I recall a creditor's lawyer

15  asking to be impaired.  But you're a creditor's lawyer whose

16  client would like hundreds of millions of dollars of interest

17  that it believes it's entitled to, and so I'm not faulting you

18  for making the argument.

19    I'm saying that's a great argument, but what do we do

20  about it and so I don't know how, as long as the plan proponent

21  has chosen to take the view that your claims are unimpaired, I

22  don't know how you can play the 1129(b) card, because I don't

23  think it's in your hand, it wasn't dealt to you.

24    MR. TSEKERIDES:  Your Honor, I understand that, and

25  fundamentally what I'm saying is I don't need to in this

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    circumstance, because a proper application of 1124 gets me to

2    the same place.

3          THE COURT:  Okay, fair enough.

4          MR. TSEKERIDES:  That's the answer, okay.

5          THE COURT:  Fair enough.

6          MR. TSEKERIDES:  And the Ninth Circuit, in the L&J

7    case talks about --

8          THE COURT:  No, I know.

9          MR. TSEKERIDES:  -- the broadest possible reading of

10   unimpairment and what it means, so I think --

11         THE COURT:  Well, and maybe the L&J panel would have

12   said to the Cardelucci panel, that guy is impaired, but nobody

13   raised the issue, it wasn't within the narrow issue.

14         I mean, I can't sit here and get Sixth Circuit judges

15   to reconcile their views.  I grant you, L&J says what it says,

16   you can impair by a little checkmark, but -- well, your view is

17   really no different from Mr. Dunne's, I mean, you're telling me

18   that I should feel that I'm not bound by Cardelucci because

19   1124, at the minimum, offers an outlet that -- well, I don't

20   know how, even if I am of that view, I'm still stuck unless I'm

21   of the view that Pacifica changes the rules.

22         Again, do you agree with that?  I mean, what are my

23   choice -- if you said if there's no Pacifica, so I'll put it

24   back to you again.  If Pacifica didn't exist, how would I have

25   any option to get around the outcome of Cardelucci?

PG&E Corp., Pacific Gas & Electric Co.

1    MR. TSEKERIDES:  If Pacifica doesn't exist, Cardelucci

2 still does not govern the proper interpretation of 1124.

3    THE COURT:  But see, you believe, I'm sure, that

4 Cardelucci is wrong, and I may believe it's wrong, but I don't

5 have a choice.

6    MR. TSEKERIDES:  No, actually, Your Honor, I don't

7 believe that Cardelucci is wrong.

8    THE COURT:  Okay.

9    MR. TSEKERIDES:  I believe that Cardelucci is simply

10 inapplicable to the circumstances here.

11    THE COURT:  Okay, but I'll go back --

12    MR. TSEKERIDES:  Because Cardelucci --

13    THE COURT:  -- to the same question.  All right, so

14 what are the factual differences -- I mean the legal

15 differences?

16    Cardelucci is an impaired creditor on a solvent estate

17 who wants contract rate of interest.  Here we have unimpaired

18 creditors of a solvent estate who want contract interest.  So

19 that's the only difference, isn't it?  Isn't that the only

20 difference, that impaired -- one class of one -- PG&E here or

21 you're unimpaired and Cardelucci, unimpaired.

22    MR. TSEKERIDES:  Well --

23    THE COURT:  I'm sorry, excuse me, reverse.

24    MR. TSEKERIDES:  No, because in Cardelucci, you get to

25 the application of 726(a)(5) and therefore --

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  No, but that --

2          MR. TSEKERIDES:  -- the question of what the legal

3    rate means.

4          THE COURT:  But what are the facts that make the

5    alignment?  In other words, if you were teaching a law school

6    class and I said -- your opening lecture is, today we're going

7    to learn about what is the applicable rate of interest in a

8    solvent estate.  You might then say, that has an impaired class

9    of creditor, or you might just stop at the way I stated it,

10   but -- or you might have said, but I'm also going to teach you

11   what's the same rule in an estate that has an unimpaired class.

12          Isn't that the only difference really, in the

13   analysis?  Not the 726 says what it says, or not.  It's -- as I

14   said, if we ignore 726, you're worse off unless the 1124

15   argument carries the day.

16          MR. TSEKERIDES:  Right, it, well -- and only worse

17   off, again, if 502(b)(2) is read as a bar for any kind of post-

18   petition interest, which, in light of the history that Mr.

19   Dunne took the Court through, I don't think can be the case.

20   You --

21          THE COURT:  Okay.

22          MR. TSEKERIDES:  Your Honor, let me just wrap up

23   with --

24          THE COURT:  Yeah.

25          MR. TSEKERIDES:  -- this thought, which is, I think

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    that what the debtors are doing through their proposal to this

2    Court to apply Cardelucci far more broadly than we think it

3    stands for, is functionally to read out of the Code the

4    absolute-priority rule.

5            THE COURT:  Well, again, you keep saying that.

6            MR. TSEKERIDES:  Yeah.

7            THE COURT:  And I don't know how we do it, since you

8    can't invoke it.  Again, am I wrong on that?  If your

9    argument -- you, you as counsel representing a member of an

10   unimpaired class, can you make me 1129 argument?

11           MR. TSEKERIDES:  What I am saying to be very clear,

12   Your Honor, is that the standard is the same whether you are

13   looking at 1124 and what constitutes impairment, or 1129(b),

14   and what is fair and equitable.

15           THE COURT:  Okay.

16           MR. TSEKERIDES:  Because in the case of a solvent

17   debtor, the equitable considerations are different and those

18   equitable considerations are the same, whether in the 1124

19   analysis, or in the 1129(b) analysis.  So functionally, it

20   collapses to one test, that's what I'm saying.

21           THE COURT:  Okay, I got you.  Thank you very much, Mr.

22   Tsekerides.

23           MR. TSEKERIDES:  Thank you.

24           THE COURT:  All right, and I'm sorry, whose going to

25   make the argument?  I just didn't hear your name.

PG&E Corp., Pacific Gas & Electric Co.

1          MR. MCGILL:  Your Honor, my name is Matthew McGill.

2          THE COURT:  Oh, Mr. McGill.

3          MR. MCGILL:  Gibson, Dunn & Crutcher, and I'm here for

4     the ad hoc committee of trade claims.

5          THE COURT:  Okay, good morning, Mr. McGill.

6          MR. MCGILL:  Good morning.  I have just three points I

7     want to make, Your Honor.  First to your question about the

8     application of Cardelucci.  You are bound, of course, by

9     holdings of the Ninth Circuit.

10         The holdings of the Ninth Circuit are defined by the

11    question presented to it.  And the question presented, as

12    stated by the Ninth Circuit in Cardelucci is as follows, and

13    this is at page 1234 of the opinion.

14         "The question presented by this appeal is whether

15    interest at the legal rate means a rate fixed by federal

16    statute, or rate determined by the parties' contract or state

17    law."

18         That was the only issue before the court in Cardelucci

19    because as you noted, and I also went into the Cardelucci case

20    file and looked at the plan, they had stipulated to resolve all

21    disputes but that one.  What is the interest rate to apply,

22    because they acknowledged, because they were an impaired class,

23    the application of 726(a)(5) through the best-interests-of-the-

24    creditors test.

25         THE COURT:  Right.

PG&E Corp., Pacific Gas & Electric Co.

1  MR. MCGILL:  And that is why 726(a)(5) applied there,

2  because the Oninks were impaired.  They are not impaired

3  here -- these creditors here are being asserted to be

4  unimpaired, and because they are unimpaired, 1129(a)(7) and the

5  best-interest-of-the-creditor test does not apply.

6  THE COURT:  Right.

7  MR. MCGILL:  Cannot apply.  So the question then

8  becomes, did Cardelucci resolve the question as to an

9  unimpaired class, as to whom the best-interest-of-creditors

10  test cannot apply?

11  And the answer to that is no.  And we know that for at

12  least two reasons.  First is the Ninth Circuit's decision in

13  Sylmar, which comes just eight months after Cardelucci, awards

14  contract rate post-petition interest and makes no mention of

15  the legal rate and that was, unlike Cardelucci, an unimpaired

16  class -- contract rate for the unimpaired class.

17  But the even more powerful point here is that the

18  plain text of the Bankruptcy Code prohibits application of

19  726(a)(5) to an unimpaired class.  As I think everyone here --

20  THE COURT:  And why is that so?

21  MR. MCGILL:  Section 103(b) of the Code says, "Chapter

22  7 can apply only to Chapter 7."

23  And Section 1129(a)(7), then imports Chapter 7

24  concepts, but only as to an impaired class.

25  THE COURT:  But the Cardelucci case didn't do that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   kind of fine tuning.

2           MR. MCGILL:  Well, but it had -- the issue before it

3   was only to define what is the legal rate.

4           THE COURT:  Yeah, but what I'm saying is, would you

5   have been happy as a creditor's lawyer if Cardelucci said we

6   can't impose Chapter 7 at all?

7           MR. MCGILL:  Yes.

8           THE COURT:  And then you'd go to Chapter 5 for 503 --

9           MR. MCGILL:  Yes, and in fact --

10          THE COURT:  -- 502(b)(2), and all interest is gone.

11          MR. MCGILL:  So no, Your Honor, and this is the third

12  and maybe the most important point.

13          THE COURT:  Okay.

14          MR. MCGILL:  Which is that 502(b)(2) is not, as you

15  said, the culprit in your tentative order.

16          THE COURT:  Okay.

17          MR. TSEKERIDES:  So when the Code was enacted, in

18  1978, 502(b)(2) took the place of Section 63 of the old

19  Bankruptcy Act.  Under Section 63 of the old act, it had been

20  the law maybe since 1911 when the Fifth Circuit decided Norris,

21  and certainly by 1949 when the Supreme Court of the United

22  States decided Saper vs. City of New York, it had been the law

23  that Section 63 does not bar the payment of post-petition

24  interest, as against a solvent debtor.

25          That had been the consistent application of Section 63

(972) 406-5468   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    as confirmed in Saper, and then if you want something more

2    recent, you look to the Supreme Court's 1989 decision in Ron

3    Pair Enterprises.

4         THE COURT:  Well, Ron Pair -- did Ron Pair deal with

5    that issue though?

6         MR. MCGILL:  Ron -- no, Ron Pair doesn't deal -- but

7    Ron Pair notes what Saper said, that Sa- -- that Ron Pair said

8    that the Code practice, I mean, the practice under the Act had

9    been to allow post-petition interest as against a solvent

10   debtor.  So then you go -- so the question becomes, does

11   502(b)(2) change that well-established bankruptcy practice of

12   payment of post-petition interest as against a solvent debtor,

13   and that answer is provided by the Supreme Court's decision in

14   Cohen v. De La Cruz, where the Supreme Court said we're not

15   going to ascribe to the Act an intention to upend settled

16   bankruptcy practice unless Congress has clearly intended that.

17        And I think if you look as -- and there is no such

18   clear expression of intent to upend that clearly settled

19   practice of payment of post-petition interest as against a

20   solvent debtor.  There is no such expression anywhere.

21        THE COURT:  Well, Cohen, I mean, Cohen is cited for

22   the proposition that we take congressional changes in with some

23   history, but it has nothing to do with the issue, obviously; it

24   has to do with the non-dischargeability of --

25        MR. MCGILL:  But that was the --

(971) 406-1220 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  -- of the wrongdoer, that has nothing to

2  do with anything; but it has to do with what carries on from

3  the prior law to the current law, right?

4    MR. MCGILL:  That is the interpretive principle --

5    THE COURT:  Right.

6    MR. MCGILL:  -- I am urging upon you --

7    THE COURT:  Right.  Okay.

8    MR. MCGILL:  -- is that what carries over.  So the

9  Section 63 Act practice carries over under 502(b)(2).  That is

10  why it is not the culprit.  502(b)(2) permits the payment of

11  interest, post-petition interest, in a solvent-debtor case.

12  That's been the law since 1911.  So this --

13    THE COURT:  So, excuse me.  What you want me to do is

14  say the law's been since 1911, but in 1979 when the new Code

15  went into effect, you want me to say therefore notwithstanding

16  502(b)(2), that principle carried over from a hundred years

17  earlier?

18    MR. MCGILL:  It's not notwithstanding, Your Honor.

19    THE COURT:  Well --

20    MR. MCGILL:  Because a careful reading of the text --

21    THE COURT:  Let's say it a different way.  That

22  principle survives to this day.

23    MR. MCGILL:  It absolutely does.

24    THE COURT:  And then what -- has any court under the

25  Code said that?

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          MR. MCGILL:  Yeah, Dow Corning, certainly.

2          THE COURT:  Any -- any court that's controlling

3    precedent, Supreme or Circuit Court?

4          MR. MCGILL:  Well, I think the Supreme Court

5    acknowledges it in Ron Pair that this is what the pre-Act

6    practice was -- pre-Code practice was, so -- and there's

7    certainly no indication to upset it, to upset that pre-Code

8    practice.  And if you look at the text of the statute again, I

9    think our argument is firmly rooted in the text of the statute.

10   Their argument has no textual mooring at all.

11         THE COURT:  Their argument has a Ninth Circuit case on

12   point, unless --

13         MR. MCGILL:  No --

14         THE COURT:  -- it's not on point --

15         MR. MCGILL:  Right --

16         THE COURT:  -- because of somehow the -- this concept

17   that --

18         MR. MCGILL:  Your Honor --

19         THE COURT:  But the concept of impaired and non-

20   impaired didn't exist under the Act either.

21         MR. MCGILL:  That's --

22         THE COURT:  So --

23         MR. MCGILL:  But --

24         THE COURT:  -- what you want me to do is to say that

25   based upon the history, the concept of interest to a -- in a

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    solvent case, post-petition interest in a solvent case, is

2    still alive and well, but there isn't a lot of case law to

3    support that.  I'll take your word for it that Dow Corning

4    might --

5              MR. MCGILL:  But --

6              THE COURT:  -- have said it and I don't remember --

7              MR. MCGILL:  Well, that --

8              THE COURT:  -- I'll believe you, I don't question

9    that.

10             MR. MCGILL:  Dow Corning actually has a great

11   explication of this precise issue, of why 502(b)(2) does not

12   prohibit the payment of post-petition interest, and why it --

13    the Sec- -- the old pre-Code practice --

14             THE COURT:  Mr. McGill, there are a lot of Dow Corning

15   cases, is this the Court of Appeals decision or the bankruptcy

16   court?

17             MR. MCGILL:  No, this is the Bank- -- I'm talking

18   about the bankruptcy court decision.

19             THE COURT:  Okay.  Can you -- but there's several of

20   them, would you --

21             MR. MCGILL:  Yes --

22             THE COURT:  -- is that --

23             MR. MCGILL:  It's 244 Bankruptcy Reporter --

24             THE COURT:  Okay.

25             MR. MCGILL:  -- 678.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  678.  Okay.

2    MR. MCGILL:  And the main discussion starts, you know,

3  around page 682.

4    THE COURT:  Okay.  So you believe that that stands

5  for -- whether it's binding or not, we know it isn't, but it

6  stands for the proposition that the pre-Code practice is still

7  alive and well, at least in that court.

8    MR. MCGILL:  The pre-Code practice --

9    THE COURT:  Fine.

10   MR. MCGILL:  -- is alive and well.  My point to you

11  though, Your Honor, is that under 1129(a)(7) -- well, let me

12  take -- the only way to apply 726(a)(5), the only way, is under

13  the best-interests-of-the-creditor test.  And that, as

14  1129(a)(7) says, it applies only with respect to each impaired

15  class.  You cannot apply the best-interest test, as you noted,

16  to an unimpaired class.

17   THE COURT:  Right.

18   MR. MCGILL:  So if we are unimpaired, there is no

19  textual vehicle through which the Court can apply 726(a)(5).

20  They are urging that you just reach out and grab it and say

21  that Cardelucci mandates that you do so, and I'm saying that is

22  contrary to Section 103(b) of the Code.  You can't do that, the

23  Ninth Circuit would not have told you that you must because the

24  text of 103(b) is absolutely plain on this point.  You can't

25  apply provisions of Chapter 7 in a Chapter 11 case.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  I know, but that proves too much because

2  if we know that the Chapter 11 rule is that you don't get to

3  confirm a plan if creditors would do better in Chapter 7.  So

4  it doesn't -- it isn't as though you're importing the statutory

5  test, you're doing -- you're pulling up a mirror to say if we

6  liquidated this debtor --

7    MR. MCGILL:  Yes.

8    THE COURT:  -- would creditors do better than if we

9  leave this debtor in Chapter 11?  That doesn't apply --

10    MR. MCGILL:  But --

11    THE COURT:  No, come on.  That doesn't mean the

12  Section itself applies, it means we test.  Will this Chapter 11

13  be better or equal to what this Chapter 7 test would be?

14    MR. MCGILL:  But you can only do that, Your Honor,

15  because Section 1129(a)(7)(A)(ii) explicitly says that you have

16  to examine whether such holder would receive or retain if the

17  debtor were liquidated under Chapter 7.

18    THE COURT:  I know, we have it all the time in

19  dischargeability and Chapter 13 cases.  I mean, I'm quite

20  familiar with the principle.

21    MR. MCGILL:  Right.  So it is only where the Code

22  explicitly brings in Chapter 7 that you can do it.  There is no

23  explicit bringing in of Chapter 7 with respect to an --

24    THE COURT:  No --

25    MR. MCGILL:  -- unimpaired class.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1        THE COURT:  Mr. McGill, we just differ with whether it

2  brings it in or it makes a -- takes a snapshot and compares it,

3  you know, compare this picture with this picture.  But anyway,

4  go ahead with the rest of your argument.

5        MR. MCGILL:  Well, that --

6        THE COURT:  No, I need to move it along.  I promised

7  the other side, so just make your point.

8        MR. MCGILL:  Yeah, so --

9        THE COURT:  I got the point.

10       MR. MCGILL:  That -- that's it, Your Honor.  The plain

11  text of the Code provides no application of 726(a)(5) to an

12  unimpaired class of creditors.

13       THE COURT:  So I'll ask you the same question I asked

14  Mr. Dunne and Mr. Qureshi.  How do I as a trial judge in the

15  Ninth Circuit ignore the holding of Cardelucci?

16       MR. MCGILL:  The holding of Cardelucci is that the

17  legal rate --

18       THE COURT:  But how do I articulate, if I were to

19  issue a ruling in your favor --

20       MR. MCGILL:  Yes.

21       THE COURT:  -- how would I say it?  Say it for me.

22       MR. MCGILL:  The --

23       THE COURT:  Make -- give me the first three sentences

24  of the ruling, so --

25       MR. MCGILL:  It'd --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  -- I'll hear how I would articulate it

2  because remember, I get my paycheck from the Ninth Circuit.

3  No, I really don't, but they appointed me.  But seriously --

4      MR. MCGILL:  Yes.

5      THE COURT:  If I told you in three sentences,

6  articulate how I have the nerve or the chutzpah, if I could use

7  that term, to ignore what might be a controlling precedent

8  otherwise.

9      MR. MCGILL:  I would say it as follows, Your Honor.

10  In Cardelucci, the Ninth Circuit confronted the question of

11  whether the legal rate under 726(a)(5) is the federal judgment

12  rate or the contract rate.  That case, however, does not apply,

13  or applies only where 726(a)(5) applies.

14      THE COURT:  Well, but it didn't apply to Mr.

15  Cardelucci, and he wasn't in Chapter 7.

16      MR. MCGILL:  It abso- -- well, it did apply.

17      THE COURT:  Okay.  So that's how you would say --

18      MR. MCGILL:  Said through the best-interests-of-the-

19  creditor test.

20      THE COURT:  That's how you would have me articulate

21  the distinction to come out with a different result.  Okay.

22      MR. MCGILL:  The distinction is that the Oninks were

23  impaired, and therefore the best-interests-of-the-creditor test

24  applied.

25      THE COURT:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. MCGILL:  We are unimpaired, so the best-interests-

2    of-the-creditor test cannot apply.

3    THE COURT:  Okay.  Got it.

4    MR. MCGILL:  Thank you, Your Honor.

5    THE COURT:  Thank you very much, Mr. McGill.

6    Okay, Mr. Tsekerides --

7    Oh, wait, Mr. Dunne, do you want to follow him?  You

8    were promised five minutes.

9    MR. DUNNE:  Five, yeah, yeah.

10   THE COURT:  Okay, Mr. Tsekerides, I'm going to let

11   you --

12   MR. TSEKERIDES:  If he's going to go, I'll just --

13   THE COURT:  No, I'm going to let him close after you,

14   so --

15   MR. TSEKERIDES:  Okay.

16   THE COURT:  -- go ahead.

17   MR. TSEKERIDES:  And Mr. Johnston's going to reserve

18   five minutes.

19   THE COURT:  Well, you know what, I'm not going to do

20   that.

21   MR. TSEKERIDES:  Well, we had forty-five to start

22   with, so he can't -- he shouldn't be able to cut into our time.

23   THE COURT:  I --

24   MR. TSEKERIDES:  All right.  It's your courtroom.

25   THE COURT:  Thanks.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. TSEKERIDES:  I've never seen so many gyrations to

2    avoid a decision.

3        THE COURT:  Well, I'm surprised there aren't more.

4        MR. TSEKERIDES:  Let me -- let me read, there was a

5    quote read but they missed the beginning sentence of what

6    Cardelucci said.  It said where a debtor in bankruptcy is

7    solvent, an unsecured creditor is entitled to quote payment of

8    interest at the legal rate from the date of filing of the

9    petition, and then it cites 726.  So yes, they were trying to

10   figure out what legal rate meant, but first, what they said was

11   where a debtor in bankruptcy is solvent, they're only entitled

12   to payment at the legal rate.  That's what it said.  The only

13   Ninth Circuit cases to deal with post-petition interest say in

14   a solvency case is federal judgment rate, that, and Shoen which

15   I mentioned earlier in the note.

16       Now, you should go back and read the Pacifica case,

17   and you'll see that it has nothing to with the situation we're

18   dealing with here.  That case dealt with reinstatement.  We mu-

19    -- if we reinstated, we must pay them the contract rate.

20   That's not this case, it's got nothing to do with this.  The

21   only Ninth Circuit decisions relevant here, Cardelucci among

22   them and Shoen, say post-petition interest, federal judgment

23   rate.

24       I'll just deal with a couple other points that were

25   raised.  A lot of discussion about impairment, but again, if

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1   the law tells us that they're entitled to only the federal

2   judgment rate and we're paying them what they're entitled to,

3   then they're not impaired by definition, and we would be

4   irresponsible as debtors -- they're saying we should just

5   impair them -- why would we do that?  If we're giving them

6   exactly what the law says, it's our obligation, it's our

7   fiduciary duty to apply the law, this is all you get.  Why

8   should we impair you to try to take advantage of a situation

9   where the law already says you're not entitled to it?  This is

10   what you're getting; that's what we're giving you.  So you're

11   not impaired because of Cardelucci.

12         THE COURT:  Shoen is a BAP decision --

13         MR. TSEKERIDES:  Shoen, Your Honor, is --

14         THE COURT: -- affirmed by the circuit, but --

15         MR. TSEKERIDES:  Right, so if I can walk you through?

16         THE COURT:  Well, remind me if you would, was the

17   circuit -- the affirmance was just a published affirmance

18   without an analysis though, right?

19         MR. TSEKERIDES:  So I have -- so Shoen, it's the Ninth

20   Circuit, and in the decision by the Ninth Circuit, which is at

21   176 F.3d 1150.

22         THE COURT:  Yeah.

23         MR. TSEKERIDES:  There's a reference where in a

24   footnote, we attached the decision as Appendix A to this

25   opinion, and the decision they're attaching is the one that

(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    they adopted.  Then when you got to the Attachment A, and if

2    you don't have it, we can provide this to you.

3              THE COURT:  No, no, I -- I have it, I --

4              MR. TSEKERIDES:  The court goes through a discussion

5    there.  And I will note, it's interesting and kind of curious

6    that the dissenting judge in that case, in Shoen, who didn't

7    think any post-petition interest should be paid was a judge who

8    sat on the panel of Cardelucci, McKeown I believe his name --

9              THE COURT:  Is that McKeown?

10             MR. TSEKERIDES:  Yeah.

11             THE COURT:  Her.  Her name.

12             MR. TSEKERIDES:  Her name.  So she obviously knew how

13   to deal with post-petition interest in a solvent-debtor case.

14   I think at the end of the day, Your Honor --

15             THE COURT:  No, but wait a minute.

16             MR. TSEKERIDES:  Yeah?

17             THE COURT:  Cardelucci came later.

18             MR. TSEKERIDES:  Yeah, exactly.  She sat on the panel

19   in '99 --

20             THE COURT:  Right.

21             MR. TSEKERIDES:  -- where it referenced in the

22   underlying decision that a solvent debtor only has to pay post-

23   petition at federal judgment rate.  Then she sat on a panel

24   again in Cardelucci, and made the statement even more

25   affirmative is my point.

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  But I don't remember, because I obviously

2  read Cardelucci and a number of other cases, is that I didn't

3  remember Cardelucci -- I mean, excuse me, Shoen, if it's

4  published, it binds subsequent panels.  If it's unpublished, it

5  does not.  And because I haven't re-read the case recently, I'm

6  just looking at your table of cases, and the BAP decision

7  appears to have not been published.  But if the circuit

8  published its decision, then the question is whether it has any

9  precedential value in terms of binding precedent versus

10  persuasive.

11    MR. TSEKERIDES:  And we're not relying on Shoen for

12  the post-petition at federal judgment rate.  Obviously, we're

13  relying on Cardelucci, but the other side cited it, and I want

14  to bring to your attention in the BAP panel decision that the

15  Ninth Circuit adopted, the footnote that says in the Ninth

16  Circuit, the federal judgment rate is the rate in a solvent-

17  debtor case.  It's only to underscore the point, Your Honor,

18  that Cardelucci didn't go off on a limb, some tangent, they

19  went rogue.  They didn't.  They held what's always been the law

20  in this circuit when it comes to post-petition interest in a

21  solvent-debtor case; it's the federal judgment rate.

22    THE COURT:  Well, but I'm looking at your reply brief,

23  and in your reply brief on page 9, Shoen is only cited in the

24  footnote and the footnote is discussing PPI.  And then in the

25  footnote you say -- you mention the creditors citing Shoen.

PG&E Corp., Pacific Gas & Electric Co.

1    MR. TSEKERIDES: Right. We didn't run -- we did not

2  rely on it. I think the point I made earlier, we did not rely

3  on that decision, but in reading it again over the weekend, I

4  came across that note in the attachment and I wanted to bring

5  it to the Court's attention.

6    THE COURT: No, I appreciate that, and that's perhaps

7  why I didn't bother reading ab -- reading it, because I didn't

8  think I needed to read it. All right. I'll take them -- I'll

9  take a look.

10    MR. TSEKERIDES: All right. So, again, Your Honor, I

11  think we've beat to death these points. I will invite you to

12  go back and look at that Pacifica case. It doesn't stand for

13  anything relevant to this discussion.

14    THE COURT: Well, it's distinguishable.

15    MR. TSEKERIDES: Well, for a very important reason.

16    THE COURT: Because of what you said, because of the

17  cure.

18    MR. TSEKERIDES: Yeah.

19    THE COURT: What about what Mr. McGill said, do I --

20  do I -- you know, some of us did practice under the Bankruptcy

21  Act, we'll admit to it. And does it -- do we go back to Act

22  cases and say they -- that they carry through and this whole

23  question of --

24    MR. TSEKERIDES: We don't, and we did brief that

25  position, but again I would say, and that might become more of

PG&E Corp., Pacific Gas & Electric Co.

1  an issue for the make whole discussion, but here the Ninth

2  Circuit's already said when you have a solvent debtor they will

3  allow post-petition interest, but it's at the federal judgment

4  rate.

5       THE COURT:  Yeah, I know, and we've gone through that.

6  We've said that.  We've all -- both -- everybody's seen it.

7       MR. TSEKERIDES:  Right, so I mean, getting --

8       THE COURT:  We know what it says.

9       MR. TSEKERIDES:  I mean, so we know -- we would argue

10 and we will argue that the 502(b) means they don't get it.  But

11 here, you don't even have to go down that road because you have

12 a decision right on point that says, all right, look, they're

13 solvent, we're going to give them post-petition interest at the

14 federal judgment rate.  So we're not arguing that they're not

15 entitled.

16      THE COURT:  Well, let's try a different approach.

17      MR. TSEKERIDES:  Sure.

18      THE COURT:  You know, I got -- a couple weeks ago, I

19 got to speculate on what other courts might decide, so I wasn't

20 bashful about trying that one, so I'll try it here.  Would the

21 Ninth Circuit Cardelucci panel or today's version of it apply

22 the same principle to an unimpaired class in a solvent case?  I

23 mean, because we know that Onink there was an impaired class,

24 and whether the analysis addresses that it is a relevant fact

25 or not, it's just a fact; it was an impaired class.  Here, we

PG&E Corp., Pacific Gas & Electric Co.

1    have three, four unimpaired classes.

2           MR. TSEKERIDES:  Let --

3           THE COURT:  So my speculation, so you tell me how I

4    could be confident that the Ninth Circuit panel today would

5    follow Cardelucci in an impaired class -- excuse me, in an

6    unimpaired-class situation, everything else the same.

7           MR. TSEKERIDES:  Sure.  I think they would absolutely

8    follow it because their approach was when a debtor in

9    bankruptcy is solvent -- that's what they said, when a debtor

10   in bankruptcy is solvent -- the impairment would come into play

11   if we didn't give them the federal judgment rate like they told

12   us, and if we did not pay on the underlying claim, because this

13   is, remember, interest on the claim.  If their underlying claim

14   was not being paid in full, they'd be impaired.  They're being

15   paid in full, they're unimpaired.

16          But we're talking about the interest on that claim.

17   Cardelucci doesn't care about, in our view, respectfully,

18   whether it was impaired or unimpaired below, because what they

19   said, and the Shoen footnote as well, but what Cardelucci says

20   where a debtor in bankruptcy is solvent; that's what it said.

21   It didn't say oh, because they're impaired or not impaired.

22   And it makes sense, when the debtor in bankruptcy is solvent,

23   we're going to let them -- we're going to make them pay post-

24   petition interest, so I don't think they get hung up on the

25   underlying claim being impaired or not.  And here, they're

PG&E Corp., Pacific Gas & Electric Co.

1  putting a rabbit in the hat by claiming they're impaired

2  because we're not giving them the post-petition interest rate

3  they think they're entitled to, but Cardelucci tells us what

4  they're entitled to.  So that you can't be impaired because I'm

5  giving you something that the court said I'm supposed to give

6  you, so it's a circular argument on their part.  So,

7  absolutely, the Ninth Circuit would follow Cardelucci even in

8  this case.

9         THE COURT:  Yeah, I was just looking at the

10  historic -- history and refreshing one question.  L & J Anaheim

11  pre-dates Cardelucci by several years, and so L & J set the

12  tone for how easy it is to impair, or how, you know, how

13  delicate non-impairment is and easily changed.  And I don't

14  recall, but I don't think solvency and post-petition interest

15  was an issue at all.

16         MR. TSEKERIDES:  It wasn't.  And also --

17         THE COURT:  Yeah.

18         MR. TSEKERIDES:  I would point out that L & J dealt

19  with plans, again, plans doing the impairment.  The plan is not

20  doing any impairment.

21         THE COURT:  Yeah.

22         MR. TSEKERIDES:  And that point was made there in that

23  case as well.

24         THE COURT:  Okay.

25         MR. TSEKERIDES:  Thank you, Your Honor.

PG&E Corp., Pacific Gas & Electric Co.

1    THE COURT:  And now, Mr. Johnston, you get a couple

2  minutes and then Mr. Dunne, then we're going to be finished.

3    MR. JOHNSTON:  Thank you, Your Honor.  I've got five

4  quick points.  First, an observation.  Like you, I've never

5  heard a creditor say before impairment, that's -- that's --

6    THE COURT:  Throw me in the briar patch.

7    MR. TSEKERIDES:  Yeah.  Your Honor, I thought your

8  Section 502(b)(4) hypothetical was frankly brilliant.

9    THE COURT:  It wasn't brilliant, I just looked around

10  for something where it was a good example, and the breached

11  leases are not good examples, because by definition you've got

12  impairment, so --

13    MR. JOHNSTON:  And I think --

14    THE COURT:  Okay it's brilliant.  How it carry the day

15  for you?

16    MR. JOHNSTON:  I think Mr. Dunne's semi-concession or

17  refusal to answer, depending on how you want to characterize it

18  is really fatal, because it leads to, I think, their argument

19  leads to an absurd result, which is that the unreasonable

20  lawyers' fees in your case would have to be paid if -- by

21  virtue of that creditor being unimpaired.  And I submit, Your

22  Honor, of course you could limit those fees through

23  reasonableness.  And the --

24    THE COURT:  Well, do you think if this guy's in my

25  courtroom now, and I say Mr. Unreasonable Lawyer, your fees are

PG&E Corp., Pacific Gas & Electric Co.

1 unreasonable, therefore, I'm reducing them.  Would he say okay,

2 now I'm impaired, so I get to submit a vote?

3    MR. JOHNSTON:  If he was sitting over there, he would,

4 and the implication of Cardelucci is that he could not.

5    THE COURT:  But my question really is more serious.

6 To be faithful to the statute, to be faithful to what the rules

7 are, how could I say to this lawyer, you're unimpaired, but

8 by -- I'm reducing your fees, but you don't even get to vote

9 against -- vote for the plan or against the plan.  I mean,

10 you're saying that that's the breaks, you're unimpair- --

11    MR. JOHNSTON:  Because --

12    THE COURT:  -- your fees are unreasonable, therefore,

13 they must be reduced as a matter of federal bankruptcy law.

14    MR. JOHNSTON:  As a matter of the Bankruptcy Code, not

15 the plan at issue.  And that is, writ large, the point that the

16 debtors and we are making in this case.

17    THE COURT:  What if -- now to take my hypothetical

18 further, what if this avaricious, greedy, unreasonable lawyer

19 is also the plan drafter and proponent, and he puts -- he un-

20 impairs himself?

21    MR. JOHNSTON:  I think I dis --

22    THE COURT:  And some poor old creditor in the back

23 says, Your Honor, those fees are unreasonable, can I -- can I

24 then throw him and say bad faith or some other thing to do or?

25    MR. JOHNSTON:  I suspect that you could, but that's

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    not the question.  You would have an easier route.  You would

2    say apply Section 502(b)(4); that's exactly what the Code does

3    to that claim.

4          The emphasis on Pacifica new investments was kind of

5    surprising and odd.  If you look at the creditors' opening and

6    reply brief, that case is cited exactly once in each -- in a

7    string cite -- and I know you will, but I urge Your Honor to go

8    back and read that case carefully, because it has nothing to do

9    with this case.  But Pacifica involved an over-secured creditor

10   that was being cured and reinstated under 1123(a)(5)(G) and the

11   court then referenced 1124, too.  In that case, there was a

12   piece of property that the creditor had a deed of trust on.

13         THE COURT:  Right.

14         MR. JOHNSTON:  The property was sold during the

15   bankruptcy case for 6.9 million dollars.  The deed of trust was

16   2.8 million dollars.  Because of the lenders' secured property

17   right in that property, the court held that being cured and

18   reinstated, in order to be unimpaired, you have to protect that

19   property right.  That's just not this case where we have an

20   unsecured claim that's --

21         THE COURT:  How about protecting your contract right?

22         MR. JOHNSTON:  It's not a --

23         THE COURT:  It fits right in.

24         MR. JOHNSTON:  It's not an interest in property like

25   was the case in Pacifica.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1      THE COURT:  Pink Cadillac.

2      MR. JOHNSTON:  They'd like you to make a distinction

3  between pink Cadillacs and black Cadillacs, and there is just

4  no basis for doing that.

5      And so let's go back to, actually, Cardelucci.  Mr.

6  Qureshi said that, well, Cardelucci's, you know, policy

7  considerations really only apply in the case where there's a

8  few unsecured creditors seeking post-petition interest; he read

9  that passage.  The very next passage says -- rejected the

10  argument that says that a debtor may receive a windfall from

11  the application of a lower federal interest rate to an award of

12  post-petition interest.  Nonetheless, interest at the legal

13  rate is a statutory term with a definitive meaning that cannot

14  shift depending on the interest invoked by the specific --

15      THE COURT:  Right.

16      MR. JOHNSTON:  -- factual circumstances of the case,

17  but --

18      THE COURT:  No, that -- that was very loud and clear.

19      MR. JOHNSTON:  -- the specific factual circumstances.

20  It doesn't matter how many creditor rates you have.  And by the

21  way, there's a lot of creditors in this case, so all of the

22  considerations seem to apply in spades.

23      THE COURT:  During PG&E 1, the Cardelucci case came

24  down, and I remember at a hearing there was a discussion about

25  the debtor just got handed several million dollars by the Ninth

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Circuit.  And that's what it did.

2            MR. JOHNSTON:  That's --

3            THE COURT:  Okay.  Let's go ahead and finish.

4            MR. JOHNSTON:  Okay.  So with respect to Cardelucci,

5    again, the fundamental point is there is absolutely no mention

6    in that decision as to whether the creditor was impaired or

7    unimpaired, and I think the only reason why you know that the

8    creditor in fact was impaired, because you went back to the

9    record and read the lower court decision.  But the court didn't

10   make the rule of decision turn on that fact at all.  I go back,

11   in order to distinguish Cardelucci, you really have to conclude

12   what the creditors are telling you to conclude, which is that

13   the Ninth Circuit was either dumb or sloppy.  And I submit that

14   you just can't assume that.  So that is --

15           THE COURT:  I would never assume that.

16           MR. JOHNSTON:  Right.  I don't think that's a good

17   practice for anyone to do here in the great State of

18   California.

19           THE COURT:  Okay.  Thank you.

20           MR. JOHNSTON:  Unless you have any other questions --

21           THE COURT:  I don't.

22           MR. JOHNSTON:  -- that's all that I have for you.

23   Thank you.

24           THE COURT:  Mr. Dunne, you are in fact the closer

25   under my new rule, until the clock hits 12.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    MR. DUNNE:  Great, thanks, Your Honor, I appreciate

2    it.  But I'm going to bounce around here to just address some

3    things that came up.

4    One is I'm not requesting that you just impair us.  I

5    want to take -- I want to be meaningful and thoughtful on this

6    for a second, which is what the debtor's plan seeks to do is to

7    pay in cash the full amount of the allowed claims of the

8    various --

9    THE COURT:  Right.

10    MR. DUNNE:  -- (indiscernible) classes.

11    THE COURT:  Right.  Right.

12    MR. DUNNE:  This is the kind of obverse of what I was

13    arguing before, but what Congress did in 1994, said there is a

14    way to do that.  If you want to -- if you want to both pay them

15    a lump sum of cash and run it through 502, and limit it to the

16    allowed amount of their claim, fine, do that.  They're just not

17    unimpaired, meaning they -- they expressly took the category

18    out.

19    Congress' will couldn't have been clearer that you can

20    still do that, plan proponent, pay these creditors a lump sum

21    in cash in the full amount of their allowed claim, but that's

22    no longer unimpairment.  That's all I'm saying on that is that

23    you can't -- you can't have it both ways.

24    And I want to talk about Cardelucci for a second.  I

25    think, Your Honor, if you ruled in our favor, you start off by

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    saying I'm bound by Cardelucci, it's good law, and it doesn't

2    address this situation.  Why?  There are three ways to get

3    post-petition interest, one is under Section 1124, we talked

4    about that.

5           The other is under 1129(a)(7).  And what's interesting

6    about Cardelucci is that you had a class, as Your Honor pointed

7    out previously, that voted to accept.  So they intentionally

8    went without access to 1129(b) and the fair and equitable.

9    They say I kind of like it.  I don't want to get in the way of

10   confirmation.

11          THE COURT:  Yeah, but it looks like --

12          MR. DUNNE:  And let's reserve --

13          THE COURT:  It looks like more of a central -- it

14   looked like the more practical result to get to.  Get to a

15   result and to tee up the issue very narrowly.  Admittedly

16   narrow one.

17          MR. DUNNE:  Right.  I mean, reading the Cardelucci

18   case, I don't know why we think it's any broader than it says.

19   They keep saying it's a "narrow but important issue".  What is

20   the legal rate under Section 726(a)(5)?  That, as we know, is

21   the bare minimum.  It's now flipped into the bare maximum. It's

22   the bare minimum.  We all know that the best-interests test

23   gets you less than the fair and equitable test in a solvent --

24   solvent estate, and there's no doubt, or there's no evidence

25   that the Ninth Circuit meant to address the fair and equitable

PG&E Corp., Pacific Gas & Electric Co.

1  rules coming out of the Supreme Court cases about solvent

2  debtors in Cardelucci because they didn't have to.  It was a

3  narrow issue presented to them.

4        The -- so if you want to use Section 1124 to

5  disenfranchise creditors, and you take away 1129(b), which I

6  think is correct, you don't also get then to graft on

7  1129(a)(7) to 1124.  That's just -- there's no basis to do

8  that.

9        With respect to Pacifica, I think Your Honor should

10 spend some time with that because the objectors would be right

11 if what the Ninth Circuit said was this, and they didn't, that

12 I think reinstatement is different because Section 1124(2)(a)

13 says you have to cure the default.  And that -- those

14 additional words mean you have to pay interest at the default

15 rate.  The Ninth Circuit said the opposite in the language I

16 quoted before, that even if you have a cure right, it doesn't

17 matter whether the cure right is less or equal to, the catch-

18 all language, which is identical to our language, required

19 payment at the full contract rate.

20       Your Honor, one last -- one last point, which is in

21 the Ultra II case, this is one of the -- this is not how I get

22 to interest under 1124, but it's how the Fifth Circuit did --

23 is that you have legal, contractual, and equitable rights.  And

24 in footnote 2, they said a bankruptcy court's equitable power

25 to enforce the solvent-debtor rule is moored in 11 U.S.C.

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1    Section 1124's command that quote, a plan leave unaltered ...

2    equitable ... rights.  So they were focusing on the equitable.

3    And then in the text, they then quote cases that say when a

4    debtor is solvent, it is the role of the bankruptcy court to

5    enforce the creditor's contractural rights under equitable

6    notions of 1129(b).  That how the -- that's how Ultra got to

7    1129(b).  I wanted to address that because, while I'm not

8    adopting the Fifth Circuit's view, I think it's a more direct

9    read that the text simply says lower case C for claim, you give

10   me everything that is -- I'm due and owing under that claim.

11            And with that Your Honor, I think we should prevail.

12            THE COURT:  Okay.  I think we should conclude.  I'll

13   thank you all for the spirited argument.

14            I will try to make the same commitment that I made in

15   a couple of other cases recently to try to be quick about this.

16   If I -- I realize the importance of the issue, but I also --

17   the only thing that I'm debating apart from everything else is

18   whether some of the other events that we have to deal with in

19   the coming days and the coming weeks, they certainly get

20   extreme attention and priority in whether I want to take a

21   longer time or a shorter time, and I'll just make my own

22   decision on that.  So I will thank you all for you time, and

23   wish you a good day.

24            MS. WINTHROP:  Your Honor, if I may have thirty

25   seconds of your time?

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Thirty seconds of my time?

2          MS. WINTHROP:  I'm looking at the clock.  Since this

3    is a week of new developments, I want to --

4          THE COURT:  You have to state your appearance.  I know

5    who you are, but --

6          MS. WINTHROP:  Pardon me, Your Honor.  Rebecca

7    Winthrop, Norton Rose Fulbright.

8          THE COURT:  Yes, I've got your -- I have your

9    stipulation, if that's what you're telling me about.

10         MS. WINTHROP:  No.

11         THE COURT:  Okay.

12         MS. WINTHROP:  I actually have one more development to

13   tell Your Honor on behalf of the Adventist complainants.  We've

14   had -- at the end of the last hearing we -- Mr. Feldman, on

15   behalf of the ad hoc subro committee agreed to work with

16   Adventist to work out the issues on the release.

17         THE COURT:  On the release.

18         MS. WINTHROP:  We've had very productive discussions

19   with them and we have a construct for resolution of our

20   disputes over the release, and we are working with them to

21   implement the mechanism in light of all of the recent

22   developments this week.

23         THE COURT:  Okay.

24         MS. WINTHROP:  So we wanted to let you know the good

25   news.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas & Electric Co.

1          THE COURT:  Thank you very much, Ms. Winthrop, I

2     appreciate the news.

3          All right.  Thank you, everyone.  Have a good day.

4          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

5          THE COURT:  I'll see many of you at 10 o'clock on next

6     Tuesday.

7        (Whereupon these proceedings were concluded at 12:01 PM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                     C E R T I F I C A T I O N

2

3    I, Clara Rubin, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8

9

10

11   _____

12   /s/ CLARA RUBIN

13

14   eScribers

15   7227 N. 16th Street, Suite #207

16   Phoenix, AZ 85020

17

18   Date:  December 12, 2019

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

**=**

**=- (1)**
24:5

**A**

**ab (1)**
97:7
**abc (1)**
58:8
**abcd (1)**
52:3
**Abid (1)**
68:19
**ability (4)**
51:24;71:13,16;72:5
**able (3)**
14:6;40:6;92:22
**above (1)**
43:22
**abrogate (1)**
42:16
**Absent (1)**
76:7
**abso- (1)**
91:16
**absolute- (2)**
68:23;75:17
**absolute-authority (1)**
54:23
**absolutely (5)**
85:23;88:24;99:7;
100:7;105:5
**absolute-priority (10)**
45:22;46:2;55:2,5,7,
10;65:7;70:2,4;80:4
**absurd (1)**
101:19
**academic (1)**
22:19
**accept (4)**
5:23;47:20,22;107:7
**access (1)**
107:8
**account (1)**
35:1
**accrue (2)**
13:10;72:19
**acknowledge (1)**
31:18
**acknowledged (1)**
81:22
**acknowledges (1)**
86:5
**across (4)**
9:2;34:1;69:22;97:4
**act (2)**
39:23;52:23;83:19,
19;84:8,15;85:9;86:20;
97:21,21
**acted (1)**

42:16
**action (2)**
6:10;50:15
**actions (1)**
49:19
**actually (13)**
16:6;31:9;44:20;
49:3;56:23;58:6;59:9;
62:5;64:12;78:6;87:10;
104:5;110:12
**ad (4)**
33:21;68:20;81:4;
110:15
**added (1)**
50:8
**addition (1)**
7:1
**additional (2)**
58:6;108:14
**address (9)**
10:13;36:12;43:18;
68:24;69:4;106:2;
107:2,25;109:7
**addressed (1)**
68:8
**addresses (3)**
35:17;36:6;98:24
**addressing (1)**
48:4
**adjective (1)**
38:7
**adjust (2)**
36:18,20
**adjusted (1)**
36:20
**administrative (1)**
35:11
**admit (2)**
32:21;97:21
**Admittedly (1)**
107:15
**adopted (4)**
13:1;54:18;95:1;
96:15
**adopting (2)**
13:12;109:8
**adopts (1)**
54:16
**advantage (3)**
46:17,20;94:8
**Adventist (2)**
110:13,16
**affected (1)**
41:6
**affirmance (2)**
94:17,17
**affirmative (2)**
7:14;95:25
**affirmed (1)**
94:14
**Again (26)**
9:9;10:16;12:9;
18:16;24:18;25:16;

32:25;52:11,15;62:11;
66:7;68:21;75:9;77:22,
24;79:17;80:5,8;86:8;
93:25;95:24;97:3,10,
25;100:19;105:5
**against (8)**
29:8;36:8;83:24;
84:9,12,19;102:9,9
**aggregation (1)**
50:16
**ago (6)**
8:13;22:14;51:18;
67:25;68:8;98:18
**agree (12)**
6:5;13:19;18:4,17;
22:7;23:23;48:13;69:6;
70:3,7,8;77:22
**Agreed (3)**
45:17;72:2;110:15
**agrees (1)**
8:10
**ahead (7)**
58:17;62:5;68:13;
73:13;90:4;92:16;
105:3
**air (2)**
4:10;13:12
**Akin (3)**
39:8,11;68:19
**alignment (1)**
79:5
**alike (1)**
62:16
**alive (4)**
61:15;87:2;88:7,10
**allocating (1)**
34:3
**allocation (1)**
7:9
**allow (3)**
58:13;84:9;98:3
**Allowance (1)**
42:7
**allowed (15)**
41:2;42:2,3,5,8,12,
13;43:2;50:2;66:2,3;
72:13;106:7,16,21
**allows (2)**
60:6;69:24
**Almost (4)**
8:3,13;9:1;45:24
**along (1)**
90:6
**alter (6)**
51:4,8,19,25;53:9;
58:19
**alternative (1)**
29:3
**always (1)**
96:19
**amended (3)**
41:16;48:18,19
**amendment (1)**

50:10
**amendments (1)**
49:18
**AMERCO's (1)**
13:5
**among (4)**
35:9;63:17;71:1;
93:21
**amount (14)**
34:22;40:1;42:2,3;
57:17,19;60:22;61:11;
63:6,6;66:3;106:7,16,
21
**amounts (1)**
66:2
**Anaheim (1)**
100:10
**analyses (1)**
29:6
**analysis (12)**
19:12;21:19;29:9;
30:19,20;62:20;73:24;
79:13;80:19,19;94:18;
98:24
**analyze (1)**
15:5
**answered (2)**
27:21;67:10
**apart (2)**
3:19;109:17
**appeal (2)**
9:22;81:14
**Appeals (1)**
87:15
**appear (1)**
67:22
**appearance (1)**
110:4
**appears (1)**
96:7
**Appendix (1)**
94:24
**applicable (10)**
23:16,25;33:22;35:5,
14;40:11;43:11;50:9;
54:13;79:7
**application (11)**
10:3;33:19;75:14;
77:1;78:25;81:8,23;
82:18;83:25;90:11;
104:11
**applied (5)**
45:24;56:16;70:3;
82:1;91:24
**applies (10)**
28:14;29:11;30:20,
21;37:16;55:5;88:14;
89:12;91:13,13
**apply (33)**
9:2;10:25;16:2;
19:11;20:4;24:24;29:5,
8;46:7;62:10;68:1;
69:22;74:13;80:2;

81:21;82:5,7,10,22;
88:12,15,19,25;89:9;
91:12,14,16;92:2;94:7;
98:21;103:2;104:7,22
**applying (4)**
21:8;64:16;73:9,10
**appointed (1)**
91:3
**apports (1)**
65:3
**appreciate (5)**
47:10;68:14;97:6;
106:1;111:2
**approach (3)**
33:15;98:16;99:8
**approached (1)**
24:5
**appropriate (4)**
27:2;48:6;57:13;
75:12
**area (1)**
9:16
**argue (3)**
33:7;65:18;98:9,10
**arguing (6)**
33:1,5,10;53:19;
98:14;106:13
**argument (30)**
8:18;21:12;33:6;
54:20;56:7,23;57:8;
58:5;65:19;66:20;68:6,
25;69:3,4,19;72:1;
76:18,19;79:15;80:9,
10,25;86:9,10,11;90:4;
100:6;101:18;104:10;
109:13
**arguments (4)**
24:6;25:14,15;49:19
**around (10)**
29:23;54:2;59:1;
63:8;71:20;73:12;
77:25;88:3;101:9;
106:2
**article (1)**
32:3
**articles (1)**
32:9
**articulate (4)**
90:18;91:1,6,20
**ascribe (1)**
84:15
**asserted (1)**
82:3
**assets (2)**
34:3;70:24
**associated (2)**
42:10;60:1
**assume (8)**
15:11;23:24;24:1;
61:4;66:3;67:8;105:14,
15
**assumed (1)**
7:4

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 113
of 129

**attached (1)**
94:24
**attaching (1)**
94:25
**Attachment (2)**
95:1;97:4
**attention (3)**
96:14;97:5;109:20
**attorney (1)**
39:23
**attorneys' (1)**
40:17
**author (2)**
27:9;69:25
**automatically (1)**
6:19
**available (1)**
26:5
**avaricious (2)**
58:22;102:18
**avoid (4)**
9:5;15:2;41:16;93:2
**award (1)**
104:11
**awards (1)**
82:13
**aware (1)**
76:1
**away (4)**
17:3,7;58:24;108:5

**B**

**back (40)**
5:6;6:14;11:9;14:23;
16:6;21:13;22:17;
24:19;29:25;41:17,21;
46:5;47:5,18;48:9;
50:11;52:10,11;53:14;
54:25;56:21;58:1;65:8;
71:21;73:1,18;74:2,14;
75:3,19;77:24;78:11;
93:16;97:12,21;
102:22;103:8;104:5;
105:8,10
**bad (2)**
64:5;102:24
**balance (1)**
7:16
**balancing (1)**
12:8
**balls (2)**
4:10;44:12
**Bank- (1)**
87:17
**bankruptcy (41)**
5:8;7:23;13:4,7;
23:18;27:10;29:5;
30:12;31:12,13;35:17;
37:9;41:3;49:11;60:11,
15;61:21;63:4;64:25;
74:2;75:1;76:8;82:18;
83:19;84:11,16;87:15,

18,23;93:6,11;97:20;
99:9,10,20,22;102:13,
14;103:15;108:24;
109:4
**banks (1)**
49:20
**BAP (8)**
12:18,19;13:12,14;
22:13;94:12;96:6,14
**bar (2)**
79:17;83:23
**bare (3)**
107:21,21,22
**bargained (1)**
63:17
**based (1)**
86:25
**bashful (1)**
98:20
**basically (6)**
8:18;25:16;27:4;
31:2;42:14;45:20
**basis (3)**
64:16;104:4;108:7
**bat (1)**
29:16
**battle (1)**
5:19
**bearing (1)**
8:20
**beat (2)**
32:25;97:11
**beating (1)**
27:5
**become (1)**
97:25
**becomes (2)**
82:8;84:10
**befuddles (1)**
51:9
**begin (1)**
55:18
**beginning (1)**
93:5
**behalf (4)**
28:12;68:20;110:13,
15
**believes (1)**
76:17
**below (3)**
9:7;26:23;99:18
**best- (1)**
14:11
**best-interest (12)**
14:13,17;28:15;
29:19;31:20;32:1,17;
33:17;47:23;54:21;
67:14;88:15
**best-interest-of-creditors (1)**
82:9
**best-interest-of-the-creditor (1)**
82:5
**best-interests (1)**

107:22
**best-interests- (1)**
92:1
**best-interests-of-the- (1)**
81:23;91:18
**best-interests-of-the-creditor (1)**
88:13;91:23
**better (8)**
44:7,8;49:14;56:16;
73:10;89:3,8,13
**beyond (1)**
18:9
**big (2)**
41:11;72:4
**billion (1)**
34:15
**binding (5)**
28:19;69:11,13;88:5;
96:9
**binds (1)**
96:4
**bit (2)**
9:18;62:8
**bizarre (1)**
29:3
**black (1)**
104:3
**blame (6)**
26:15,16,16,20;
27:20;55:22
**blaming (1)**
53:20
**blue (1)**
16:5
**board (4)**
9:3;34:1;37:3;69:22
**body (2)**
5:21,24
**boils (2)**
8:18;75:16
**Bois (1)**
45:22
**bolted (1)**
58:6
**bonds (1)**
72:18
**both (6)**
23:6;49:18;53:24;
98:6;106:14,23
**bother (1)**
97:7
**bounce (1)**
106:2
**bound (9)**
15:23;56:7;66:18;
67:6;69:8;74:20;77:18;
81:8;107:1
**bracketed (1)**
18:3
**breach (3)**
39:21;59:4,5
**breached (1)**
101:10

**breaks (1)**
102:10
**briar (1)**
101:6
**brief (9)**
19:22;20:8;50:24,25;
52:1;96:22,23;97:24;
103:6
**briefing (2)**
27:1;31:21
**briefs (2)**
31:19;44:17
**brilliant (3)**
101:8,9,14
**bring (2)**
96:14;97:4
**bringing (2)**
41:20;89:23
**brings (2)**
89:22;90:2
**broader (3)**
67:18;70:11;107:18
**broadest (1)**
77:9
**broadly (5)**
31:1,4,22;35:13;80:2
**brothers (1)**
32:18
**bug (1)**
34:5
**business (2)**
11:14;19:9
**busy (1)**
3:15
**buy (2)**
12:25;21:12

**C**

**Cadillac (3)**
16:4,5;104:1
**Cadillacs (2)**
104:3,3
**calculated (1)**
9:24
**calendar (2)**
4:19;42:16
**CALIFORNIA (4)**
3:1;24:7;41:18;
105:18
**Call (4)**
3:4;22:11;25:21;
44:11
**called (2)**
22:12;48:5
**callous (1)**
26:21
**came (12)**
36:13;44:21;49:16;
66:6,7,9;67:4;68:25;
95:17;97:4;104:23;
106:3
**can (36)**

5:12;6:10,11;14:8;
16:12;23:2;26:7;27:23;
29:17;33:17;47:6,7,18;
50:11;54:16;56:8;
63:11,24,24;65:11;
69:9,11;76:22;77:16;
79:19;80:10;82:22;
87:19;88:19;89:14,22;
94:15;95:2;102:23,23;
106:19
**canon (1)**
41:12
**canons (1)**
66:2
**cap (1)**
61:8
**card (1)**
76:22
**Cardelucci (119)**
8:12,18,19,21;9:1,
21;11:8,9;12:16;13:11,
22;14:5,14,25;15:1,17;
16:6;17:11;23:25;24:6,
19,23;25:16;27:4;24:4;
28:14;29:2,18,22;
30:12;35:7;46:7,22;
48:1;49:14;51:9,11;
52:8;54:12;56:15;
61:15;62:14;65:14;
66:6,7,9,16,18,20;67:4,
9,13;69:2,4,20,24;70:8,
21,22,25;71:16,22,24;
73:2;74:17,20;77:12,
18,25;78:1,4,7,9,12,16,
21,24;80:2;81:8,12,18,
19;82:8,13,15,25;83:5;
88:21;90:15,16;91:10,
15;93:6,21;94:11;95:8,
17,24;96:2,3,13,18;
98:21;99:5,17,19;
100:3,7,11;102:4;
104:5,23;105:4,11;
106:24;107:1,6,17;
108:2
**Cardelucci's (3)**
73:6,8;104:6
**care (1)**
99:17
**careful (1)**
85:20
**carefully (1)**
103:8
**cares (1)**
18:25
**carried (1)**
85:16
**carries (4)**
79:15;85:2,8,9
**carry (2)**
97:22;101:14
**cart (1)**
16:11
**case (84)**

Min-U-Script®

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 114
of 129

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) attached - case

8:15;10:4;12:19,21;
14:1,8,9,20;15:18;
16:10;27:11,19;28:18;
34:17;37:9;39:19;
42:19,20;46:16;47:7;
49:16;50:1;52:14;56:8;
57:5;59:13,18;60:2;
62:5;63:16,19;70:9;
71:23;72:4,5,23,25;
73:5,6,8;75:6,13,18;
77:7;79:19;80:16;
81:19;82:25;85:11;
86:11;87:1,1,2;88:25;
91:12;93:14,16,18,20;
95:6,13;96:5,17,21;
97:12;98:22;100:8,23;
101:20;102:16;103:6,
8,9,11,15,19,25;104:7,
16,21,23;107:18;
108:21;109:9
**Cases (13)**
20:16;28:14;63:16;
69:15;87:15;89:19;
93:13;96:2,6;97:22;
108:1;109:3,15
**cash (5)**
20:15;42:2;106:7,15,
21
**catch- (1)**
108:17
**catch-all (1)**
58:14
**category (1)**
106:17
**cause (1)**
54:4
**caused (2)**
20:24;21:9
**central (1)**
107:13
**certain (1)**
28:12
**certainly (6)**
32:13,13;83:21;86:1,
7;109:19
**chair (1)**
3:11
**chambers (1)**
4:7
**change (8)**
10:23;11:24;26:22;
37:14;60:3;64:5;69:9;
84:11
**changed (4)**
66:15;67:3,4;100:13
**changes (3)**
37:6;77:21;84:22
**changing (1)**
12:11
**Chapter (40)**
12:3;14:2,3,4,8;15:5;
18:24;19:1,8,13,14;
20:16;29:8;31:21;

33:23;35:13,14;36:9;
72:24;73:1,7,9,9;82:21,
22,23;83:6,8;88:25,25;
89:2,3,9,12,13,17,19,
22,23;91:15
**characterize (1)**
101:17
**characterized (1)**
36:7
**charge (1)**
60:14
**charged (1)**
59:6
**check (1)**
9:12
**checked (1)**
55:5
**checkmark (1)**
77:16
**Chief (1)**
31:4
**choice (10)**
15:24;59:9;65:15,16;
66:25;70:17,18,19;
77:23;78:5
**choices (2)**
15:20;65:21
**choose (2)**
37:24;60:17
**chooses (1)**
64:2
**chops (1)**
64:13
**chores (1)**
3:17
**chose (1)**
61:7
**chosen (1)**
76:21
**chutzpah (1)**
91:6
**circles (2)**
52:11;73:12
**Circuit (87)**
8:5,13;9:1;11:7,20,
23;12:12,14;13:1,12,
14;14:1;15:25;16:14,
15,20;27:3,25;28:19,
23;30:7,12,19;31:1,3;
35:13,15;36:9;38:22;
44:20;45:6;48:4;49:13;
50:11,14;51:13,17,22;
52:5,8;53:8,12;54:11,
12,16,20;57:4;58:11;
67:1,9;68:8;73:6;74:8,
13;75:2;76:6;77:6,14,
81:9,10,12;83:20;86:3,
11;88:23;90:15;91:2,
10;93:13,21;94:14,17,
20,20;96:7,15,16,20;
98:21;99:4;100:7;
105:1,13;107:25;
108:11,15,22

**circuit-court (1)**
7:24
**Circuit's (6)**
12:7;14:8;31:4;
82:12;98:2;109:8
**circular (1)**
100:6
**circularity (1)**
11:4
**circumstance (1)**
77:1
**circumstances (4)**
11:3;78:10;104:16,
19
**citation (1)**
29:21
**cite (3)**
41:18;50:23;103:7
**cited (6)**
12:21;27:4;84:21;
96:13,23;103:6
**cites (2)**
41:13;93:9
**citing (1)**
96:25
**City (1)**
83:22
**civil (1)**
23:22
**claim (34)**
5:6;8:20;29:7,10,15;
39:25;42:2,8,9,10,12,
12,13;43:2;51:15,16,
20,21;58:23;64:24;
72:13,22,22;99:12,13,
13,16,25;103:3,20;
106:16,21;109:9,10
**claiming (1)**
100:1
**claims (13)**
19:15,18;20:15;21:3;
29:9;35:5;36:8;42:7;
63:14;70:24;76:21;
81:4;106:7
**clarified (1)**
22:25
**class (44)**
23:7;29:11,12,14;
30:20,21,24;37:12,14;
47:20,22;55:7;62:12,
16,17,24;63:4,5,7;64:3;
67:13,15;70:19;72:7;
78:20;79:6,8,11;80:10;
81:22;82:9,16,16,19,
24;88:15,16;89:25;
90:12;98:22,23,25;
99:5;107:6
**classes (15)**
18:12;19:18;20:21;
29:20;37:23;55:5,6,12;
62:24;63:8,22;64:2,6;
99:1;106:10
**classification (1)**

24:10
**classing (1)**
64:5
**cleanup (1)**
36:13
**clear (8)**
17:21;18:22;21:21;
44:17;48:4;80:11;
84:18;104:18
**clearer (1)**
106:19
**clearly (5)**
16:7;49:1;73:23;
84:16,18
**CLERK (4)**
3:5,10;6:17;7:19
**client (2)**
33:7;76:16
**clients (1)**
33:2
**clock (2)**
105:25;110:2
**close (2)**
62:25;92:13
**closer (1)**
105:24
**co-counsel (1)**
4:16
**Code (33)**
10:2;12:9,9,13,14;
14:7,19;24:7;26:17;
27:5,6;29:5;35:17;
41:3,6,21;46:1;53:20;
64:25;69:21;73:22;
80:3;82:18,21;83:17;
84:8;85:14,25;88:22;
89:21;90:11;102:14;
103:2
**Cohen (3)**
84:14,21,21
**collapses (1)**
80:20
**colleague (1)**
73:15
**colleagues (1)**
3:15
**collect (1)**
60:7
**colloquy (1)**
68:25
**coming (3)**
108:1;109:19,19
**command (1)**
109:1
**commencement (1)**
20:16
**commit (1)**
6:25
**commitment (1)**
109:14
**committee (3)**
68:20;81:4;110:15
**company (2)**

23:17;36:23
**compare (1)**
90:3
**compares (1)**
90:2
**compelling (1)**
76:7
**complainants (1)**
110:13
**completely (2)**
24:5;29:6
**complicated (1)**
8:16
**concept (9)**
41:7;55:21;57:25;
58:5,12;67:12;86:16,
19,25
**concepts (2)**
62:12;82:24
**concern (1)**
71:10
**concerned (3)**
63:22,23;65:7
**concerns (1)**
70:25
**conclude (4)**
10:2;105:11,12;
109:12
**concluded (3)**
13:4;74:22;111:7
**concluding (1)**
13:8
**confer (1)**
7:19
**conference (1)**
3:20
**confident (1)**
99:4
**confirm (2)**
61:1;89:3
**confirmation (4)**
26:7;60:18;73:7;
107:10
**confirmed (4)**
29:24;30:2;71:20;
84:1
**confronted (1)**
91:10
**confused (1)**
17:22
**confusion (3)**
20:25;21:9;37:13
**Congress (13)**
26:18;27:20;41:15,
20;42:11,15;49:1;50:6,
18;55:25;66:15;84:16;
106:13
**Congress' (1)**
106:19
**congressional (3)**
49:18;50:15;84:22
**conjunctive (1)**
58:14

Case: 19-30088   Doc# 5085   Filed: 12/12/19   Entered: 12/12/19 13:04:07   Page 115 of 129

**consenting (1)**
29:12
**consequences (1)**
76:1
**consider (1)**
35:22
**consideration (1)**
35:1
**considerations (8)**
35:7;70:21;74:6;
76:7;80:17,18;104:7,
22
**considered (1)**
10:21
**consistent (2)**
57:5;83:25
**constituency (1)**
44:6
**constituents (1)**
43:22
**constitutes (1)**
80:13
**construct (1)**
110:19
**construction (3)**
52:21,22;59:1
**contact (1)**
4:5
**context (1)**
35:15
**continuance (1)**
5:5
**continue (1)**
72:19
**continued (1)**
7:3
**continuing (1)**
51:6
**contract (39)**
9:6;10:1;12:23;24:2,
8;25:6;34:22;40:11;
42:15;43:3,7,8;45:23;
46:3;50:13;51:24;52:4;
53:13;57:2,20,21;
61:13;63:14;64:10,19;
65:15;68:9;71:13;
72:21;75:14;78:17,18;
81:16;82:14,16;91:12;
93:19;103:21;108:19
**contracts (2)**
24:7;26:23
**contractual (13)**
42:9;49:8;51:4,15,
20;53:10;56:22;58:19;
60:1;62:21;64:23;76:9;
108:23
**contractural (1)**
109:5
**contrary (1)**
88:22
**control (2)**
66:21;68:2
**controlling (8)**

46:16,23;54:3;70:16,
16;75:2;86:2;91:7
**controls (2)**
65:14;68:1
**conversation (1)**
51:9
**convinced (1)**
67:18
**Corning (5)**
45:23;86:1;87:3,10,
14
**corollary (2)**
45:22;54:23
**corporate (1)**
19:7
**Corporation (1)**
3:10
**corrected (2)**
50:7;67:4
**counsel (8)**
4:21;23:1;38:20;
39:7,9;68:11,13;80:9
**counsel's (1)**
48:3
**counter (1)**
35:6
**couple (8)**
3:17;41:13;42:11;
46:21;93:24;98:18;
101:1;109:15
**course (7)**
14:2;27:9;29:17;
64:25;72:19;81:8;
101:22
**Court (547)**
3:4,5,7,9,11,14,17;
4:2,6,8,10,14;5:1,3,8,8,
12,15,18;6:1,4,6,9,12,
16,18,21,23;7:2,7,11,
18,19,20,23,25;8:2,4,5,
8,21,22;9:8,10,12,15,
17;10:7,10,12,15,17,
24;11:3,4,8,10,14,17,
22;12:1,2,6,19,22,24;
13:3,4,7,14,18,20,25;
14:11,16,18,22,25;
15:3,8,11,20,23;16:3,
10,25;17:3,7,13,16,18,
19,25;18:2,5,8,11,15,
19,22,24;19:3,7,21,24;
20:1,3,5,7,10,14,20;
21:2,5,7,10,12,17,25;
22:2,5,8,11,13,17,21,
25;23:13,15,24;24:10,
14,17,22;25:3,8,10,12,
18,20;27:8,15,17,19,
25;28:2,4,8,10,20,21,
24;29:22;30:5,8,10,10,
17,22;31:7,9,12,15,17,
25;32:2,12,16,18,21,
25;33:5,11,14,20;34:1,
5,10,12,14,17,20,24;

35:18,21,25;36:2,4,16,
18,21,23;37:1,5,8,11,
17,19,23;38:3,6,8,10,
12,14,19,22,25,25;
39:4,7,10,12,14;40:7,9,
12,14,19,22,25;41:3,
10,14,23,25;42:4,18,
21;43:3,14,17,20;44:3,
5,10,15,17,22,25;45:2,
4,6,9,11,13,15,18;46:8,
11,13,19,24;47:4,6,12,
16,21,24;48:8,14,16;
49:5,22;50:5,21,24;
51:1;52:10,14,17,19,
21;53:1,7,11,14;54:8,
24;55:4,10,15,17,20;
56:4,6,12;57:6,15,17,
21,23;58:3,10,16,22;
59:4,11,15,23;60:3,11,
11,25;61:2,3,6,14,16,
21,25;62:4,13,23;63:3,
13,19,21,23,24;64:1,8,
17;65:10,11,25;66:5,
10,12,15,23,25;67:3,
11,18,24;68:5,10,16,
18,21;69:1,6,8,14,18,
25;70:8;71:2,4,8,9,13,
16,19,25;72:4,15,23;
73:3,5,15,18,20,21,25;
74:2,4,7,10,19,22,25;
75:24;76:1,9,13;77:3,5,
8,11;78:3,8,11,13,23;
79:1,4,19,21,24;80:2,5,
7,15,21,24;81:2,5,18,
25;82:6,20,25;83:4,8,
10,13,16,21;84:4,14,
21;85:1,5,7,13,19,21,
24,24;86:2,2,3,4,11,14,
16,19,22,24;87:6,8,14,
15,16,18,19,22,24;
88:1,4,7,9,17,19;89:1,
8,11,18,24;90:1,6,9,13,
18,21,23;91:1,5,14,17,
20,25;92:3,5,10,13,16,
19,23,25;93:3,9,4:12,
14,16,22;95:3,4,9,11,
15,17,20;96:1,22;97:6,
14,16,19;98:5,8,16,18;
99:3;100:5,9,17,21,24;
101:1,6,9,14,24;102:5,
12,17,22;103:11,13,17,
21,23;104:1,15,18,23;
105:3,9,9,15,19,21,24;
106:9,11;107:11,13;
108:1;109:4,12;110:1,
4,8,11,17,23;111:1,5
**courtroom (3)**
58:17;92:24;101:25
**courts (3)**
23:21;32:9;98:19
**Court's (4)**
84:2,13;97:5;108:24
**crammed (1)**

56:2
**crazy (1)**
46:20
**create (1)**
35:10
**creditor (31)**
11:8;17:16:6;29:23;
39:24;40:15;42:1,14;
48:10,12;51:2,5;53:10;
56:2;57:13;59:12;
61:18,23;62:19;78:16;
79:9;91:19;93:7;101:5,
21;102:22;103:9,12;
104:20;105:6,8
**creditors (43)**
17:9;19:3;20:14;
21:14;28:13;29:4;31:2,
18;32:23;33:21,25;
34:21;35:4,8,10;37:25;
40:16,16;43:21;44:6;
46:6;47:18;63:17;
64:19;65:5;70:23;71:1,
14,15;75:1,23;78:18;
81:24;82:3;89:3,8;
90:12;96:25;104:8,21;
105:12;106:20;108:5
**creditors' (3)**
21:12;23:1;103:5
**creditor's (5)**
76:9,14,15;83:5;
109:5
**critical (1)**
57:24
**criticize (1)**
28:20
**cross (1)**
54:10
**Crutcher (1)**
81:3
**Cruz (1)**
84:14
**culprit (4)**
35:25;36:2;83:15;
85:10
**cure (13)**
50:3,10;51:3,7,24;
53:9;57:25;58:5,12;
97:17;108:13,16,17
**cured (2)**
103:10,17
**curious (1)**
95:5
**current (2)**
44:22;85:3
**cut (1)**
92:22
**cutting-room (1)**
45:15

**D**

**date (18)**
3:22;17:24;18:10,18;

56:2

19:16,19;20:10;17,21,
24;21:23;22:17;36:15;
37:10;57:14,14;72:15;
93:8
**day (14)**
10:20;27:2;28:12;
37:25;62:22;72:15,17,
17;79:15;85:22;95:14;
101:14;109:23;111:3
**days (1)**
109:19
**De (1)**
84:14
**dead (1)**
27:5
**deal (13)**
30:13;36:8;43:6;
47:9;49:1;59:13;64:4;
84:4,6;93:13,24;95:13;
109:18
**dealing (4)**
49:23;67:21;73:8;
93:18
**dealt (3)**
76:23;93:18;100:18
**death (2)**
33:1;97:11
**debating (1)**
109:17
**debt (1)**
21:3
**debtor (49)**
4:16;10:23;11:5,14;
13:13;14:6;19:5,7,8;
21:22;24:20;29:8;36:9,
23;39:25;47:7,8;50:11;
51:1,3;53:9;54:23;
59:14;65:13;71:10,12;
73:7;75:18;76:8;80:17;
83:24;84:10,12,20;
89:6,9,17;93:6,11;
95:22;96:17;98:2;99:8,
9,20,22;104:10,25;
109:4
**debtors (14)**
3:24;7:13;13:5,6;
33:23;53:25;59:7,10;
72:8;75:21;80:1;94:4;
102:16;108:2
**Debtors' (4)**
20:17;46:19;47:12;
69:19
**debtor's (2)**
51:3;106:6
**debts (3)**
13:9;19:10,10
**DECEMBER (3)**
3:1;23:20;37:1
**decide (3)**
16:22;32:6;98:19
**decided (7)**
14:8;23:10;32:2;
66:16,16;83:20,22

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 116
of 129

**decision (41)**
7:24;8:6;10:17;13:1,
13;16:16;22:13;27:3;
29:6,12,13,15;31:24;
32:10;33:13,17;36:7;
45:7,14;70:21;71:7;
82:12;84:2,13;87:15,
18;93:2;94:12,20,24,
25;95:22;96:6,8,14;
97:3;98:12;105:6,9,10;
109:22
**decisions (4)**
12:18;44:21;54:19;
93:21
**deed (2)**
103:12,15
**deemed (1)**
40:7
**default (12)**
50:3,12,19;51:3;
53:9;57:21,22,23,25;
58:13;108:13,14
**defaults (1)**
50:3
**defense (1)**
16:4
**define (1)**
83:3
**defined (1)**
81:10
**definition (6)**
12:15;39:21;58:24;
62:22;94:3;101:11
**definitive (3)**
32:3;67:21;104:13
**deleted (1)**
49:9
**deletion (3)**
56:1,17;66:1
**delicate (1)**
100:13
**Dennis (1)**
3:6
**depend (1)**
24:4
**dependent (1)**
69:3
**depending (4)**
11:2;29:9;101:17;
104:14
**described (1)**
31:2
**designation (1)**
31:14
**designed (1)**
69:20
**despite (4)**
31:22;49:18;54:14;
74:12
**details (1)**
4:4
**detainer (1)**
60:5

**determination (1)**
61:10
**determine (4)**
16:13;29:6;37:15;
75:4
**determined (4)**
9:25;12:8;36:15;
81:16
**determining (1)**
23:8
**develop (1)**
36:10
**development (1)**
110:12
**developments (2)**
110:3,22
**didn't (1)**
80:25
**differ (1)**
90:1
**difference (5)**
49:25;61:12;78:19,
20;79:12
**differences (2)**
78:14,15
**different (35)**
9:6;10:19;16:5;20:1;
21:7,8;23:11;29:5,6,9,
16,18;32:7;33:15;35:4,
4;37:21;52:23;62:16,
17,22,23,24;63:8,12,
18;67:17;71:10;74:23;
77:17;80:17;85:21;
91:21;98:16;108:12
**differently (2)**
24:23;66:23
**DIP (1)**
63:1
**direct (1)**
109:8
**direction (1)**
25:5
**directly (5)**
7:24;35:6;46:7;
56:13;58:20
**dis (1)**
102:21
**disagree (1)**
24:23
**dischargeability (1)**
89:19
**dischargeable (1)**
13:9
**discourse (1)**
36:14
**discuss (1)**
13:3
**discussing (1)**
96:24
**discussion (8)**
62:8;66:24;88:2;
93:25;95:4;97:13;98:1;
104:24

**discussions (1)**
110:18
**disenfranchise (2)**
42:14;108:5
**disenfranchised (1)**
56:1
**disenfranchisement (3)**
46:10;49:11;68:3
**disenfranchising (3)**
55:14,17,23
**dismiss (1)**
52:1
**disparity (1)**
35:8
**dispute (2)**
11:14;23:15
**disputed (1)**
4:17
**disputes (3)**
32:12;81:21;110:20
**dissenting (1)**
29:14;30:20;95:6
**distinction (6)**
29:20;42:12;73:22;
91:21,22;104:2
**distinguish (3)**
8:22;67:5;105:11
**distinguishable (1)**
97:14
**distribute (1)**
19:14
**distribution (1)**
18:25
**district (4)**
5:1;31:9,10;41:18
**Doc (1)**
20:10
**docket (4)**
3:20;6:12,13;7:2
**doctrine (1)**
50:2
**documents (1)**
50:10
**dollars (9)**
34:15;41:1;60:6;
65:4;75:22;76:16;
103:15,16;104:25
**don't (3)**
76:22;78:4,6
**Donato (2)**
5:2,3
**Donato's (2)**
5:3,7
**done (8)**
12:7,8;48:21;50:18;
64:17;65:10;74:7,10
**doubt (1)**
107:24
**Dow (5)**
45:23;86:1;87:3,10,
14
**down (15)**
8:18;9:19;33:22;

36:10,13;40:7;47:8;
56:2;60:13;67:5;74:2,
11;75:17;98:11;104:24
**drafter (2)**
26:20;102:19
**Du (1)**
45:22
**dubious (1)**
45:24
**due (3)**
45:21;50:9;109:10
**duked (1)**
30:13
**dumb (4)**
31:4,5,6;105:13
**Dunn (2)**
39:11;81:3
**Dunne (131)**
38:6,7,9,11,13,16,21;
39:2,6,8,11,15;40:6,10,
13,18,20,23;41:8,11,
24;42:1,5,20,23;43:5,
16,18;44:1,4,8,11,16,
18,24;45:1,3,5,8,10,12,
14,17,19;46:9,12,18,
21,25;47:5,6,11,14,17,
22,25;48:13,15,24;
49:6,23;50:6,22,25;
52:13,16,18,20;53:5,8,
12;54:6,9,25;55:8,16,
19,24;56:5,10,13;57:9,
16,19,22;58:2,4,11,18;
59:2,7,13,20,24;60:9,
23;61:4,10,15,24;62:7,
18,25;63:10,20,25;
64:7;65:22;66:1,9,11,
14,22;67:2,7;68:2,6,14,
23;69:20;70:19;90:14;
92:7,9;101:2;105:24;
106:1,10,12;107:12,17
**Dunne's (3)**
68:25;77:17;101:16
**during (2)**
103:14;104:23
**duty (2)**
38:8;94:7

**E**

**ear (1)**
34:6
**earlier (4)**
22:2;85:17;93:15;
97:2
**easier (2)**
6:2;103:1
**easily (1)**
100:13
**Eastern (1)**
41:18
**easy (4)**
40:21,23;52:9;
100:12

**ECF (1)**
6:21
**effect (3)**
37:3,10;85:15
**effective (11)**
17:24;18:18;19:16,
19,20;20:17,21,24;
21:23;22:17;57:14
**effectuates (1)**
41:15
**efficient (1)**
34:2
**eight (1)**
82:13
**eighties (1)**
50:2
**either (8)**
37:23;59:10;62:1;
63:14;69:4;72:7;86:20;
105:13
**electronically (1)**
5:12
**eliminated (1)**
66:13
**else (12)**
4:12;7:4;38:15;44:2;
52:4;59:15;60:16;
61:18,18;62:6;99:6;
109:17
**embedded (4)**
51:23;52:4,5;58:18
**embodies (1)**
75:17
**emphasis (1)**
103:4
**enacted (1)**
83:17
**enactment (1)**
46:1
**end (13)**
10:20;20:20;27:2;
33:5;47:19;65:16;
66:18;67:20;68:25;
71:5;73:24;95:14;
110:14
**enforce (3)**
76:9;108:25;109:5
**enfranchise (1)**
55:20
**enough (4)**
14:17,19;77:3,5
**Enterprises (1)**
84:3
**entire (1)**
35:16
**entitled (24)**
12:13;16:14,22,23,
24;17:11,11;23:9;
25:19;41:1;57:2;59:17;
60:8;72:12;75:13;
76:17;93:7,11;94:1,2,
9;98:15;100:3,4
**entitles (2)**

Min-U-Script®

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 117
of 129

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) decision - entitles

51:16,21
**entry (1)**
6:12
**Entz-White (3)**
49:21;50:2;58:1
**equal (2)**
89:13;108:17
**equality (1)**
63:17
**equitable (33)**
33:25;42:9;49:8;
51:4,15,20;53:10;
56:23;58:19;60:1;62:9,
21;64:24,24;65:1;
67:12;70:20;74:5;
75:15;76:5,7,12;80:14,
17,18;107:8,23,25;
108:23,24;109:2,2,5
**equitably (1)**
26:9
**equities (3)**
10:21;63:22;64:21
**equity (9)**
7:15;55:1,2;57:2;
63:18;65:3,5;71:1;
75:23
**equivocation (1)**
10:4
**erred (1)**
13:7
**essentially (1)**
12:24
**estate (5)**
78:16,18;79:8,11;
107:24
**estimates (1)**
39:10
**even (20)**
10:24,25;13:7,12;
14:8;16:18;24:8;25:24;
27:2;47:6;50:18;70:5;
71:23;77:20;82:17;
95:24;98:11;100:7;
102:8;108:16
**events (1)**
109:18
**everybody (8)**
6:2,21;7:20;26:24;
42:18;46:14;62:10,20
**everybody's (1)**
98:6
**everyone (5)**
8:10;62:15;63:4;
82:19;111:3
**everyone's (1)**
63:11
**evidence (1)**
107:24
**evolution (1)**
65:23
**exact (1)**
45:24
**exactly (11)**

15:18;16:20;24:16;
27:4;42:25;48:24;
62:14;94:6;95:18;
103:2,6
**examine (1)**
89:16
**example (2)**
14:14;101:10
**examples (1)**
101:11
**except (3)**
48:21,22;56:7
**exception (2)**
75:5,6
**excess (1)**
39:23
**excuse (9)**
16:25;19:21;42:22;
56:9;71:4;78:23;85:13;
96:3;99:5
**exist (6)**
19:15;67:8;69:1;
77:24;78:1;86:20
**existed (1)**
41:22
**exit (1)**
7:3
**exit-financing (1)**
3:21
**expected (2)**
32:14,23
**experience (1)**
31:13
**explain (1)**
23:6
**explained (1)**
69:20
**explaining (1)**
28:16
**explains (1)**
33:19
**explication (2)**
33:12;87:11
**explicit (1)**
89:23
**explicitly (2)**
89:15,22
**express (1)**
64:18
**expression (2)**
84:18,20
**expressly (1)**
106:17
**extent (2)**
27:1;43:7
**extreme (2)**
65:8;109:20

---

**F**

**F2d (1)**
63:20
**F3d (2)**

51:8;94:21
**Faced (1)**
30:18
**fact (9)**
29:19;47:1;64:17;
83:9;98:24,25;105:8,
10,24
**fact-driven (1)**
59:23
**facts (2)**
57:7;79:4
**factual (4)**
11:2;78:14;104:16,
19
**fail (1)**
14:13
**fair (11)**
44:13;67:11;75:15;
76:5,12;77:3,5;80:14;
107:8,23,25
**fairly (1)**
26:8
**faith (4)**
40:24;59:22;62:3;
102:24
**faithful (2)**
102:6,6
**fall (1)**
3:19
**familiar (2)**
11:10;89:20
**far (2)**
8:7;80:2
**farther (1)**
65:10
**fatal (1)**
101:18
**faulting (1)**
76:17
**favor (2)**
90:19;106:25
**favorable (1)**
14:13
**Fed (1)**
14:15
**federal (49)**
8:15;9:7,12,24;10:3;
13:10,13,23;15:2,6,13;
16:2,16;20:17;21:13;
23:19,19,21,21;24:24;
26:23;33:20;34:4,23;
36:14;37:3,15,24;
43:12,15,23;44:7;
65:16,17;69:15;81:15;
91:11;93:14,22;94:1;
95:23;96:12,16,21;
98:3,14;99:11;102:13;
104:11
**fee (2)**
59:16;61:19
**feel (1)**
77:18
**fees (18)**

39:23,25;40:2,7,17;
41:1;58:23,25;60:14,
19,21;61:21;101:20,22,
25;102:8,12,23
**Feldman (1)**
110:14
**few (5)**
9:22;22:14;68:12;
70:22;104:8
**fiduciary (2)**
44:12;94:7
**fifteen (3)**
7:14;10:19;39:13
**Fifth (7)**
27:3;44:20;75:2;
76:6;83:20;108:22;
109:8
**figure (7)**
16:19;27:12,22;74:4,
5,14;93:10
**file (1)**
81:20
**filed (5)**
23:17;36:23,24;
39:24,25
**files (1)**
40:16
**filing (1)**
93:8
**find (5)**
20:1;23:20;29:18;
33:17;47:18
**finding (2)**
54:22;62:3
**finds (1)**
21:7
**fine (5)**
5:10;12:3;83:1;88:9;
106:16
**finer (1)**
49:12
**finish (1)**
105:3
**finished (2)**
72:1;101:2
**finishes (1)**
68:1
**firm (1)**
4:4
**firmly (1)**
86:9
**first (14)**
3:11;16:21;20:11;
33:24;36:14;50:14;
67:19;75:11;76:14;
81:7;82:12;90:23;
93:10;101:4
**fits (4)**
9:3;24:19;25:1;
103:23
**five (9)**
7:16;38:17;39:2,3,
11;92:8,9,18;101:3

39:23,25;40:2,7,17;
**fixed (1)**
81:15
**FJR (3)**
43:7;73:4;74:18
**flawed (1)**
15:12
**flipped (1)**
107:21
**flipping (1)**
16:12
**floor (2)**
5:21;45:16
**Fobian (1)**
28:17
**focused (2)**
14:1;43:18
**focuses (1)**
51:18
**focusing (1)**
53:2;109:2
**follow (8)**
15:24;52:8;69:10;
70:16;92:7;99:5,8;
100:7
**followed (2)**
8:5;28:19
**follows (2)**
81:12;91:9
**footer (1)**
20:12
**footnote (9)**
12:25;45:25;94:24;
96:15,24,24,25;99:19;
108:24
**forbid (1)**
71:25
**foremost (1)**
33:24
**forever (1)**
11:15
**forget (6)**
4:21;8:18,19,21;
25:16;67:11
**forgot (1)**
40:15
**forth (1)**
35:7
**forty-five (1)**
92:21
**forward (1)**
37:21
**fostered (2)**
34:1;35:8
**found (2)**
13:9;44:21
**four (3)**
30:1;37:23;99:1
**fourth (2)**
20:21,23
**frame (1)**
18:3
**franchise (1)**
55:20

Min-U-Script®

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 118
of 129

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) entry - franchise

**FRANCISCO (1)**
3:1
**frankly (1)**
16:12;57:5;101:8
**frivolous (1)**
33:6
**FSupp (1)**
41:19
**Fulbright (1)**
110:7
**full (13)**
11:9;17:6,9,10;
20:15;21:23;50:19;
54:25;99:14,15;106:7,
21;108:19
**fully (1)**
33:18
**functionally (3)**
69:23;80:3,19
**fundamental (2)**
71:22;105:5
**fundamentally (3)**
75:16;76:3,25
**funny (1)**
46:13
**further (2)**
4:5;102:18
**future (1)**
72:16

**G**

**gap (9)**
17:20,23;18:3,9;
22:5,11,12;36:7;57:10
**gave (1)**
23:10
**generally (1)**
43:22
**gets (10)**
37:20;42:1;45:23;
46:14;48:1;54:25;55:1;
58:1;77:1;107:23
**Gibson (3)**
39:11;43:18;81:3
**giving (7)**
12:13;14:22;16:20;
94:5,10;100:2,5
**God (1)**
71:25
**goes (3)**
51:22;72:17;95:4
**Good (22)**
3:7,8;14:17,19;
28:11,15;33:20;40:23;
46:15;59:22;62:3;
68:17,21;81:5,6;
101:10,11;105:16;
107:1;109:23;110:24;
111:3
**Gotshal (2)**
3:23;7:12
**govern (1)**

78:2
**grab (1)**
88:20
**graciously (1)**
74:11
**graft (1)**
108:6
**grant (1)**
77:15
**grappling (1)**
7:23
**Great (6)**
7:7;38:5;76:19;
87:10;105:17;106:1
**greedy (2)**
58:22;102:18
**ground (2)**
68:22;69:10
**group (1)**
21:14
**guess (5)**
8:22;21:22;27:17;
66:6;68:12
**guided (1)**
27:23
**Gump (1)**
68:19
**Gustafson (1)**
52:21
**guy (2)**
38:8;77:12
**guy's (1)**
101:24
**gyrations (1)**
93:1

**H**

**half (2)**
34:14;67:25
**half-a-billion-dollar (1)**
34:7
**hand (1)**
76:23
**handed (1)**
104:25
**happen (3)**
18:11;22:23;27:11
**happened (5)**
12:17;28:17;30:1;
68:7;71:23
**happens (3)**
6:24;8:2;18:25
**happenstance (2)**
29:10;59:9
**happy (4)**
5:14;6:7,8;83:5
**hat (2)**
12:17;100:1
**head (2)**
52:2;64:13
**heading (1)**
42:6

hear (5)
10:22;35:12;49:24;
80:25;91:1
**heard (3)**
4:25;25:15;101:5
**hearing (6)**
4:22;5:4;60:18;74:8;
104:24;110:14
**heavy (1)**
49:7
**held (4)**
13:7;34:2;96:19;
103:17
**here's (3)**
4:20;30:19,20
**Hey (1)**
28:21
**Hi (1)**
68:18
**high (1)**
29:17
**higher (2)**
44:13;71:17
**himself (1)**
60:17;102:20
**hint (1)**
31:24
**historic (1)**
100:10
**historically (1)**
29:22
**history (6)**
44:18;45:15;79:18;
84:23;86:25;100:10
**hits (1)**
105:25
**hoc (4)**
33:21;68:20;81:4;
10:15
**hodgepodge (1)**
9:5
**hog (1)**
54:19
**holder (3)**
51:16,21;89:16
**holders (1)**
7:15
**holding (2)**
90:15,16
**holdings (2)**
81:9,10
**Honor (91)**
3:8;4:1;7:10,22;
10:14;16:2;19:17;
26:25;28:6,11,13;
33:24;34:18;38:5,13;
39:13;40:24;41:9;
42:23;43:5,10;44:2,19;
45:19;51:9;52:7;55:8,
14,24;56:10,19;57:3,
11;59:21;60:10;62:2,7;
63:1;64:13,22,23;65:7,
22,23;67:8;68:4,14,17,

22;70:20;71:11,18;
72:18;73:1,17;75:16;
76:2,24;78:6;79:22;
80:12;81:1,7;83:11;
85:18;86:18;88:11;
89:14;90:10;91:9;92:4;
94:13;95:14;96:17;
97:10;100:25;101:3,7,
22;102:23;103:7;
106:1,25;107:6;108:9,
20;109:11,24;110:6,
13;111:4
**Honorable (1)**
3:6
**Honor's (1)**
67:16
**hope (1)**
49:19
**Hopefully (2)**
8:7;25:5
**Horizon (2)**
42:19;56:9
**horse (2)**
16:12;27:5
**hour (1)**
67:25
**hours (2)**
5:19,19
**housekeeping (1)**
3:17
**huge (1)**
55:1
**human-being (1)**
19:8
**hundred (1)**
85:16
**hundreds (3)**
65:4;75:22;76:16
**hung (3)**
56:14,15;99:24
**hypothetical (7)**
58:22;59:5,11;60:7;
61:17;101:8;102:17

**I**

**ice (1)**
48:25
**identical (7)**
29:9;51:19;52:6,23,
24;58:8;108:18
**identified (1)**
19:19
**ignore (6)**
8:19;56:8;65:17;
79:14;90:15;91:7
**ignored (1)**
24:5
**II (11)**
27:9;44:23,24;45:16;
53:14,14;54:18;73:18;
75:1;76:6;108:21
**immediately (1)**

42:16
**impacted (1)**
43:21
**impair (15)**
46:6;7,14;56:20,24;
59:10,20,22;64:2;
76:11;77:16;94:5,8;
100:12;106:4
**impaired (51)**
10:4,5;12:15;16:6,8;
23:7;27:7;29:12,14,20;
30:20;32:7,14;46:25;
47:20;48:10;53:17,23;
55:12;67:13,14;70:2;
72:7;76:15;77:12;
78:16,20;79:8;81:22;
82:2,2,24;86:19,20;
88:14;91:23;94:3,11;
98:23,25;99:5,14,18,
21,21,25;100:1,4;
102:2;105:6,8
**impaired/unimpaired (1)**
32:4
**impairing (3)**
15:16;27:6;56:25
**impairment (26)**
12:10;16:13,18,21,
21,22;23:14;41:9,17,
21;42:13;49:2,9;54:17;
59:8;69:5;70:12;73:22,
23;80:13;93:25;99:10;
100:19,20;101:5,12
**impairments (1)**
56:17
**impairs (1)**
102:20
**implement (1)**
110:21
**implicate (1)**
14:11
**implicated (1)**
14:17
**implication (2)**
40:3;102:4
**importance (1)**
109:16
**important (9)**
9:23;10:22;12:10,16;
13:2;75:19;83:12;
97:15;107:19
**importantly (1)**
71:15
**importing (1)**
89:4
**imports (1)**
82:23
**impose (1)**
83:6
**imposed (1)**
40:23
**inapplicable (1)**
78:10
**includes (1)**

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 119
of 129

64:24
**including (2)**
68:9;71:15
**indemnification (1)**
13:6
**independently (1)**
64:4
**indication (1)**
86:7
**indiscernible (1)**
106:10
**insiders (1)**
60:12
**insolvency (1)**
47:9
**insolvent (7)**
47:7;53:25;69:15;
71:22,24,25;72:2
**instances (1)**
71:9
**instead (1)**
73:10
**instructions (1)**
27:12
**intended (6)**
52:24;55:25;56:18;
69:24;70:1;84:16
**intent (1)**
84:18
**intention (2)**
64:18;84:15
**intentionally (1)**
107:7
**interest (126)**
4:17;8:11,14;9:24,
25;10:3;11:25,25;13:9,
10;14:6,7,10,10,12,15,
20;15:16,18;19:4,10;
20:15;23:9;24:20;
26:22,23;27:13;29:7;
30:5,15;32:6;34:22,25;
35:20;36:1;42:15,25;
43:4,23;45:21;46:2;
47:13,15;48:6,20;50:4,
20;51:7,16,16,21,21,
24;53:13,22,25;57:8,
14,17,20;58:21;61:13;
62:17;64:13,15,19;
65:15;69:15;70:10,23;
71:14,17;72:8,12,12,
13,13,16,19,20,21,22;
74:14;75:3,7,11;76:16;
78:17,18;79:7,18;
81:15,21;82:14;83:10,
24;84:9,12,19;85:11,
11;86:25;87:1,12;93:8,
13,22;95:7,13;96:20;
98:3,13;99:13,16,24;
100:2,14;103:24;
104:8,11,12,12,14;
107:3;108:14,22
**interesting (4)**
12:22;27:9;95:5;

107:5
**interests (5)**
11:2;42:7;51:22;
53:23;70:25
**interpret (4)**
41:14,14;69:9,21
**interpretation (2)**
65:19;78:2
**interpreting (1)**
51:13
**interpretive (1)**
85:4
**interprets (2)**
73:2,5
**into (13)**
18:16;22:22;29:25;
31:21;35:1;41:8;65:2,
8;81:19;85:15;92:22;
99:10;107:21
**Investments (6)**
49:15;50:21,22;51:7;
64:10;103:4
**invite (1)**
97:11
**invites (1)**
63:9
**invoke (4)**
55:6;61:7;70:5;80:8
**invoked (2)**
11:2;104:14
**invoking (1)**
14:3
**involved (1)**
103:9
**involving (1)**
28:14
**irrelevant (1)**
54:21
**irresponsible (1)**
94:4
**Isgur (2)**
44:19;45:25
**issue (41)**
5:6;7:23;8:14,20;
9:23;23:21;29:24;30:5,
6;37:13;41:11;48:5,12,
15;57:7;60:18;65:12;
67:20;69:14,15,18;
70:5,9,9;71:21;73:8;
77:13,13;81:18;83:2;
84:5,23;87:11;90:19;
98:1;100:15;102:15;
107:15,19;108:3;
109:16
**issued (1)**
66:24
**issues (3)**
36:13;63:9;110:16

**J**

**jammed (1)**
4:24

**Jan (1)**
24:25
**January (5)**
4:1;7:3;23:18;45:3,
12
**jillion (1)**
41:1
**Jim (1)**
28:11
**job (2)**
28:15;32:5
**Joe (1)**
63:6
**Johnston (71)**
7:15;28:10,11,11,22;
29:1;30:4,6,9,15,18,25;
31:8,11,14,16,18;32:1,
11,13,17,20,22;33:4,9,
12,15;34:9,11,13,16,
18,21,25;35:19,23;
36:1,3,5,17,22,25;
37:4,6,9,12,18,22;38:2,
5;101:1,3,13,16;102:3,
11,14,21,25;103:14,22,
24;104:2,16,19;105:2,
4,16,20,22
**Johnston's (1)**
92:17
**Jones (1)**
28:12
**Judge (32)**
5:1,3,3,7;8:19;12:2;
27:10,21;31:5,5,5,7,9,
10;32:2;33:2,18;34:6;
44:19;45:25;46:10;
50:18;59:20;60:15,19;
61:5;69:25;75:1,3;
90:14;95:6,7
**judges (6)**
31:19;49:20;74:7,10,
13;77:14
**judgment (34)**
8:15;9:7,25;11:19;
13:10,13,23;15:2,3,6,
13;16:2,17;20:17;
23:19;33:20;34:23;
36:14;37:15,24;43:12,
13;44:7;91:11;93:14,
22;94:2;95:23;96:12,
16,21;98:3,14;99:11
**judgments (1)**
23:22
**judicially (1)**
34:2
**judicially-mandated (1)**
13:8
**jump (1)**
41:8

**K**

**Karotkin (21)**
3:21,23,23;4:3,7,9,

13;5:2,10,14,17,23;6:3,
5,7,10,15,20,22,25;7:6
**keep (3)**
63:10;80:5;107:19
**Kheel (2)**
63:16,20
**K-H-E-E-L (1)**
63:20
**kicks (1)**
55:11
**kind (10)**
52:2;54:10;63:1;
65:23;79:17;83:1;95:5;
103:4;106:12;107:9
**knew (7)**
31:13,19,20;41:20;
42:11;49:1;95:12
**knock (1)**
40:7
**knock-down-drag-out (1)**
11:11
**knows (1)**
42:18

**L**

**L&J (3)**
77:6,11,15
**La (1)**
84:14
**laid (2)**
33:22;36:10
**language (15)**
19:20,25;21:7;51:12,
19,23;52:6;54:13;
56:14,19;68:7,9;
108:15,18,18
**large (2)**
60:6;102:15
**last (7)**
16:15;33:19;55:4;
67:19;108:20,20;
110:14
**lately (1)**
3:15
**later (4)**
13:3;20:20;37:2;
95:17
**latter (1)**
4:25
**Laughter (1)**
5:25;28:3
**law (42)**
10:1;12:14;15:25;
16:23;19:11;24:3;
26:22;34:4;40:11;41:2;
43:8,11,14;44:12;50:9;
57:3;60:5,6,8,9,14;
61:12;62:2;63:4;66:15;
70:16,16;79:5;81:17;
83:20,22;85:3,3,12;
87:2;94:1,6,7,9;96:19;
102:13;107:1

**lawful (3)**
60:9,25;61:2
**lawfully (1)**
63:17
**law-review (2)**
32:3,9
**law's (1)**
85:14
**lawyer (24)**
14:23;31:13;33:1,7;
39:24;40:1,15;41:1;
58:23,24;59:5,16;60:6,
8,13,19;61:17,23;
76:14,15;83:5;101:25;
102:7,18
**lawyers (3)**
5:7;46:19;60:12
**lawyers' (1)**
101:20
**lawyer's (1)**
61:21
**lead (1)**
62:18
**lead-in (2)**
49:3;54:15
**leads (2)**
101:18,19
**learn (1)**
79:7
**lease (3)**
39:20,20;59:4
**leases (1)**
101:11
**least (7)**
15:6,12;32:24;54:3;
70:2;82:12;88:7
**leave (8)**
17:4;36:12;37:25;
56:21,22;60:17;89:9;
109:1
**leaves (3)**
41:5;49:7;51:14
**leaving (2)**
61:17,22
**lecture (1)**
79:6
**left (1)**
19:4
**legal (35)**
13:15,18,20,22;42:9;
48:2,7;49:8;51:4,10,14,
19;53:10;56:22;58:19;
60:1;62:21;64:23;
67:22,23;73:1,2;78:14;
79:2;81:15;82:15;83:3;
90:17;91:11;93:8,10,
12;104:12;107:20;
108:23
**legally (1)**
60:14
**legislate (1)**
41:20
**lenders' (1)**

103:16

**lens (1)**
76:4

**less (4)**
21:15;58:13;107:23;
108:17

**lets (1)**
60:11

**letter (1)**
27:1

**level (1)**
66:17

**lies (1)**
37:13

**lift (1)**
49:7

**light (2)**
79:18;110:21

**limb (1)**
96:18

**limit (5)**
60:11,21;61:21;
101:22;106:15

**limited (4)**
9:2;31:24;32:23;
53:24

**line (1)**
20:14

**liquidated (6)**
72:23,25;73:6,8;
89:6,17

**liquidated- (2)**
4:17;5:5

**list (1)**
6:21

**listen (2)**
65:11;70:14

**litigated (1)**
11:15

**little (9)**
3:15;4:4;9:18;17:22;
34:6;62:8;70:11;72:5;
77:16

**loath (1)**
41:14

**local (1)**
4:21

**log (1)**
4:8

**logical (1)**
36:6

**long (4)**
30:11,14;70:19;
76:20

**longer (2)**
106:22;109:21

**look (28)**
7:21;9:21,21;14:25;
18:24;24:19;37:1,9;
39:18;43:20;51:13;
52:2;53:15;54:4,11;
55:15,15;61:24;65:23;
71:21;76:3;84:2,17;

86:8;97:9,12;98:12;
103:5

**looked (8)**
4:23;16:7;35:15;
36:9;74:17;81:20;
101:9;107:14

**looking (15)**
10:12,19;12:3;14:5;
20:8;29:3;34:21;43:9;
52:15;53:2;80:13;96:6,
22;100:9;110:2

**looks (3)**
70:20;107:11,13

**lose (1)**
18:17

**losers (2)**
24:14;43:9

**lot (12)**
4:10;21:17,19;25:1;
26:22;30:15;47:13;
59:6;87:2,14;93:25;
104:21

**loud (1)**
104:18

**low (1)**
29:17

**lower (10)**
11:9;12:18;14:15;
24:8,11;43:7;50:13;
104:11;105:9;109:9

**lower-court (1)**
13:1

**luck (2)**
12:4;68:7

**lump (2)**
106:15,20

**lynchpin (1)**
57:24

## M

**main (1)**
88:2

**makes (11)**
5:15,18;24:21;33:20;
36:10;48:17;49:25;
52:2;82:14;90:2;99:22

**make-whole (1)**
21:6

**making (5)**
45:20;46:14;68:6;
76:18;102:16

**man (1)**
11:11

**mandate (1)**
12:13

**mandates (2)**
10:3;88:21

**Manges (1)**
3:24

**manner (2)**
33:7;34:3

**many (3)**

93:1;104:20;111:5

**mass (1)**
43:21

**match (1)**
15:13

**matching (3)**
54:7;62:11,13

**Matter (11)**
3:10;23:8,9;43:24,
25;44:3;72:6;102:13,
14;104:20;108:17

**matters (3)**
4:24;23:7;71:12

**Matthew (1)**
81:1

**maturation (1)**
65:24

**mature (1)**
72:17

**maxims (1)**
65:3

**maximum (1)**
107:21

**may (8)**
51:3,7;53:9;57:11;
71:10;78:4;104:10;
109:24

**maybe (15)**
4:20;29:25;39:19;
42:24;43:12,12,23;
52:3;54:16;64:14,22;
66:19;77:11;83:12,20

**McGill (63)**
81:1,1,2,3,5,6;82:1,7,
21;83:2,7,9,11,14;84:6,
25;85:4,6,8,18,20,23;
86:1,4,13,15,18,21,23;
87:5,7,10,14,17,21,23,
25;88:2,8,10,18;89:7,
10,14,21,25;90:1,5,8,
10,16,20,22,25;91:4,9,
16,18,22;92:1,4,5;
97:19

**McKeown (2)**
31:5;95:8,9

**mean (65)**
5:13,14;9:20;10:8;
13:24;15:2,21;16:5;
17:9,16;19:8;22:5,19,
20,22;23:5,17;24:4,5;
26:16;27:1,8,17,19;
29:25;32:9;33:6;34:19;
37:21;43:17;46:13,17,
19;47:8,9;48:21;52:12,
14;53:7;56:7;59:23;
61:12;63:1;65:6;66:4;
69:10;70:11,12;76:4,
14;77:14,17,22;78:14;
84:8,21;89:11,19;96:3;
98:7,9,23;102:9;
107:17;108:14

**meaning (7)**
43:6;52:24;56:21;

60:24;67:21;104:13;
106:17

**meaningful (1)**
106:5

**means (11)**
11:24;49:10;59:7;
64:12;73:11;75:20;
77:10;79:3;81:15;
89:12;98:10

**meant (4)**
31:3;66:4;93:10;
107:25

**mechanism (1)**
110:21

**member (1)**
80:9

**Memorandum (1)**
13:3

**Mendoza (1)**
41:19

**mention (4)**
29:19;82:14;96:25;
105:5

**mentioned (1)**
93:15

**message (1)**
54:2

**microphone's (1)**
3:19

**might (27)**
6:2;9:18,18;10:21,
22;14:1;15:8;18:14;
20:24,25;21:8;23:9;
25:23;26:21;32:4;33:2,
16;48:18;62:13;70:3;
79:8,9,10;87:4;91:7;
97:25;98:19

**Milbank (1)**
4:3

**million (3)**
103:15,16;104:25

**millions (3)**
65:4;75:22;76:16

**mind (1)**
68:11

**minimum (3)**
77:19;107:21,22

**minute (4)**
3:18;55:4;75:19;
95:15

**minutes (9)**
7:14;38:16;39:3,3,
13;68:12;92:8,18;
101:2

**mirror (1)**
89:5

**mishmash (1)**
35:3

**misread (1)**
19:21

**missed (2)**
25:17;93:5

**Mission (1)**

74:12

**mistake (1)**
52:8

**misunderstanding (1)**
18:14

**mixing (3)**
54:7;62:11,13

**moment (1)**
29:1

**money (3)**
21:19;44:3;59:6

**Montali (1)**
3:6

**month (3)**
9:18;36:18,22

**months (1)**
82:13

**moored (1)**
108:25

**mooring (1)**
86:10

**more (26)**
4:4;5:21;8:16;15:8;
19:13;21:17;38:23,24;
46:7;47:2,6;64:25;
69:24;70:10;73:19;
80:2;82:17;84:1;93:3;
95:24;97:25;102:5;
107:13,14;109:8;
110:12

**morning (10)**
3:7;8:4;15:9;13;
28:11;29:1;31:19;
68:17;81:5,6

**most (6)**
24:1,21;34:2;43:22;
44:13;83:12

**motion (5)**
3:21;4:25;5:9;6:2;
7:3

**motives (1)**
65:12

**move (3)**
3:25;6:13;90:6

**moved (1)**
4:5

**moves (1)**
9:17

**mu- (1)**
93:18

**much (8)**
7:7;31:23;68:15;
69:24;80:21;89:1;92:5;
111:1

**must (6)**
51:3;53:9;62:16;
88:23;93:19;102:13

## N

**name (5)**
80:25;81:1;95:8,11,
12

Min-U-Script®

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 121
of 129

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) lens - name

**narrow (18)**
9:23;28:14;29:24;
33:16;48:5;67:20;
69:14,14,18,21;70:9,9,
10,13;77:13;107:16,
19;108:3
**narrowly (1)**
107:15
**need (12)**
6:18;10:18;22:22,23;
23:6;58:16;64:8;68:11;
70:17;74:3;76:25;90:6
**needed (2)**
12:8;97:8
**needs (1)**
4:5
**nerve (1)**
91:6
**new (17)**
21:21;27:3;42:19,20,
21,25;49:15;50:21,22;
51:7;56:9;64:10;83:22;
85:14;103:4;105:25;
110:3
**news (2)**
110:25;111:2
**next (5)**
4:4,22;39:8;104:9;
111:5
**nightmare (1)**
35:11
**nineteenth (1)**
5:21
**Ninth (55)**
8:5,13;11:20,23;
12:7,12;13:1,12,14;
14:1,7;15:24;16:14,15,
20;27:25;28:19,23;
30:6,19;31:1,3,4;35:12,
15;36:9;48:4;73:6;
74:8,13;77:6;81:9,10,
12;82:12;86:11;88:23;
90:15;91:2,10;93:13,
21;94:19,20;96:15,15;
98:1,21;99:4;100:7;
104:25;105:13;107:25;
108:11,15
**nobody (2)**
18:24;77:12
**non- (2)**
70:4;86:19
**nonbankruptcy (2)**
19:11;41:2
**non-contractual (1)**
50:3
**non-default (2)**
50:13;57:24
**non-dischargeability (1)**
84:24
**nondischargeable (1)**
19:10
**none (1)**
25:18

**nonetheless (2)**
74:2;104:12
**non-impaired (1)**
55:21
**non-impairment (1)**
100:13
**Nonissue (2)**
22:3,4
**non-issue (1)**
70:4
**normal (1)**
52:22
**normally (1)**
14:10
**Norris (1)**
83:20
**Norton (1)**
110:7
**note (3)**
93:15;95:5;97:4
**noted (4)**
33:24;35:23;81:19;
88:15
**notes (1)**
84:7
**notice (3)**
6:10,22,23
**noticed (1)**
5:11
**notion (2)**
17:19;75:5
**notions (1)**
109:6
**Notwithstanding (3)**
50:10;85:15,18
**November (1)**
45:14
**nowhere (1)**
10:4
**number (5)**
24:25;25:4;44:5;
60:6;96:2

**O**

**object (2)**
26:7;51:2
**objection (1)**
15:4
**objections (1)**
30:2
**objectors (1)**
108:10
**objects (2)**
61:19;64:3
**obligation (2)**
13:6;94:6
**observation (1)**
101:4
**obverse (1)**
106:12
**obviously (15)**
9:17;30:11;46:19,22;

47:9;50:15;52:20;
66:20;73:19;74:23;
75:25;84:23;95:12;
96:1,12
**o'clock (6)**
5:6,11;6:13,13,14;
111:5
**odd (1)**
103:5
**off (9)**
4:18;29:16;32:2;
58:16;64:13;79:14,17;
96:18;106:25
**offer (1)**
5:21
**offered (1)**
14:14
**offers (1)**
77:19
**office (1)**
4:21
**often (1)**
7:23
**of-the-creditor (1)**
92:2
**old (6)**
55:1;65:5;83:18,19;
87:13;102:22
**once (1)**
31:24;36:1;103:6
**one (57)**
7:18;9:3;10:5,7,22;
12:20;14:3,15;15:4,8;
16:15;18:11;20:21,23;
21:14;24:5,19;25:1;
27:12;38:21;39:22;
43:6;44:5,23;46:15;
47:19;48:9;50:15,17;
51:6,22,22;53:12;
58:20;62:9,14;63:6,8,
15;68:24;70:15;71:10,
20;78:20,20;80:20;
81:21;94:25;98:20;
100:10;106:4;107:3,
16;108:20,20,21;
110:12
**ongoing (1)**
22:8
**Onink (7)**
11:18;16:7,9;30:23;
70:1;73:11;98:23
**Oninks (2)**
82:2;91:22
**Onink's (1)**
33:1
**only (43)**
4:23;10:4;16:13;
18:16;20:25;28:14;
32:5;35:16;36:5;38:22;
44:22;48:5;52:3;55:11;
60:13;65:1;66:16;
70:22;75:6;78:19,19;
79:12,16;81:18;82:22,

24;83:3;88:12,12,14;
89:14,21;91:13;93:11,
12,21;94:1;95:22;
96:17,23;104:7;105:7;
109:17
**oOo- (1)**
3:3
**opening (4)**
20:8;38:23;79:6;
103:5
**opinion (6)**
31:16;33:18,19;34:9;
81:13;94:25
**opposing (1)**
48:3
**opposite (4)**
45:24;58:12;63:18;
108:15
**option (5)**
15:25;16:1,3;27:22;
77:25
**options (1)**
70:17
**order (8)**
3:4;9:3;50:10;61:1;
63:2;83:15;103:18;
105:11
**ordered (1)**
12:24
**original (1)**
16:7
**Originally (1)**
4:20
**Orsini (1)**
5:20
**others (1)**
7:9
**otherwise (8)**
51:4,19;53:9;56:24;
57:4;58:19;63:14;91:8
**ours (1)**
5:4
**out (40)**
5:19;6:10;7:9,21;
9:9;10:12,14;12:4,4,
17;13:11;16:19;20:22,
22;21:13;22:17;27:13,
22;28:4;30:13;37:24;
44:21;49:16;52:20;
53:16;57:4;63:15;
69:23;74:4,5,14;80:3;
88:20;91:21;93:10;
100:18;106:18;107:7;
108:1;110:16
**outcome (8)**
14:12,13;41:15;
43:11;56:1;60:21;
70:15;77:25
**outcomes (1)**
63:12
**outlet (1)**
77:19
**outweighed (1)**

24;83:3;88:12,12,14;
89:14,21;91:13;93:11,
12,21;94:1;95:22;
96:17,23;104:7;105:7;
109:17

35:1
**over (12)**
5:4;12:20;19:4;25:1;
34:22;37:6;85:8,9,16;
97:3;102:3;110:20
**overrides (1)**
41:5
**overruled (1)**
50:14
**over-secured (1)**
103:9
**owing (3)**
45:21;50:9;109:10
**own (1)**
109:21

**P**

**Pacifica (31)**
49:15;50:1,21,22;
51:13,17;54:10,12,18;
56:9;57:5,7;64:10;
66:19,20,21,24;67:8;
69:1,3,9;77:21,23,24;
78:1;93:16;97:12;
103:4,9,25;108:9
**page (7)**
17:23;18:7;20:11,12;
81:13;88:3;96:23
**paid (14)**
8:11;11:8;17:10;
18:18;19:20;20:21,24;
21:23;42:1,2;95:7;
99:14,15;101:20
**Pair (7)**
84:3,4,4,6,7,7;86:5
**panel (13)**
31:22;32:6;33:16;
45:3;74:7;77:11,12;
95:8,18,23;96:14;
98:21;99:4
**panels (1)**
96:4
**papers (2)**
8:12;18:2
**Parada (2)**
6:12,16
**paragraph (4)**
67:19,19;71:3,6
**Pardon (1)**
110:6
**part (2)**
64:7;100:6
**particular (3)**
12:23;29:10;63:13
**particularly (1)**
4:25
**parties (2)**
4:17;61:11
**parties' (2)**
9:25;81:16
**parts (1)**
52:23

Min-U-Script®
Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 122
of 129
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(10) narrow - parts

**passage (2)**
104:9,9

**passed (2)**
22:3;23:2

**patch (1)**
101:6

**paths (1)**
76:10

**pattern (1)**
47:1

**pause (1)**
55:25

**pay (8)**
15:15,17;19:3,3;
42:14;46:2;52:3;58:13;
59:16;61:1,11;70:24;
71:13,16;72:5,8,24;
93:19;95:22;99:12,23;
106:7,14,20;108:14

**paycheck (1)**
91:2

**paying (5)**
17:6,9;50:12,13;94:2

**payment (10)**
20:15;54:25;83:23;
84:12,19;85:10;87:12;
93:7,12;108:19

**penultimate (2)**
71:3,6

**people (6)**
24:11;49:19;55:21;
62:16;64:1;67:18

**per (1)**
37:3

**percent (2)**
14:15;15:4

**perfect (1)**
36:10

**perhaps (1)**
97:6

**period (4)**
18:17;48:20;54:1;
69:16

**periodically (1)**
28:5

**periods (1)**
22:9

**permissible (1)**
60:14

**permits (1)**
85:10

**personally (1)**
8:9

**persuade (2)**
56:8;69:11

**persuaded (3)**
67:24;69:12;70:18

**persuasive (2)**
56:7;96:10

**petition (11)**
9:24;23:9;36:15;
37:10;53:23;57:14;
72:15;79:18;93:9;

**95:23;99:24**

**petition-date (1)**
23:17

**PG&E (8)**
3:10;28:12;61:12,13;
71:25;72:2;78:20;
104:23

**ph (2)**
15:3;28:17

**phone (1)**
58:16

**phrase (4)**
53:3,5,6,7

**phrasing (1)**
53:2

**pick (3)**
24:25;25:2,4

**picking (1)**
3:22

**picture (2)**
90:3,3

**piece (1)**
103:12

**piecemeal (1)**
33:21

**pink (3)**
16:4;104:1,3

**pink-Cadillac (1)**
16:4

**pinning (1)**
60:12

**place (3)**
65:1;77:2;83:18

**placed (1)**
74:11

**plain (3)**
82:18;88:24;90:10

**plan (74)**
12:9,11,12;14:12,14,
21;15:4,12,15,16;16:7,
13,19;19:16;20:17;
21:21,22;23:11;24:24;
26:16,21;29:24;30:2;
37:14;40:14,16,16;
43:1;47:9;48:9;49:2,7;
51:3,14;53:16,17,18,
19;54:4,14;56:14,18,
20,20,24;57:1;58:18;
59:12,15,21;60:16,17,
20,25;61:1,7,16;64:1,
11;66:4;70:19;71:20;
73:22;76:20;81:20;
89:3;100:19;102:9,9,
15,19;106:6,20;109:1

**plans (2)**
100:19,19

**plan's (1)**
16:19

**play (4)**
18:16;70:24;76:22;
99:10

**Please (2)**
3:9;58:17

**plenty (1)**
38:3

**plowed (1)**
68:23

**plug (2)**
23:22;24:24

**plural (1)**
35:8

**plus (1)**
20:15

**PM (1)**
111:7

**point (48)**
7:24;11:17;12:1;
14:3;19:13,17;24:10;
25:16,17,20;33:9,12;
35:21;38:21;43:6;
45:19;46:12,16;47:2,2,
7,8,12;48:17;49:12,14,
17;52:20;56:13;58:4;
63:21;82:17;83:12;
86:12,14;88:10,24;
90:7,9;95:25;96:17;
97:2;98:12;100:18,22;
102:15;105:5;108:20

**pointed (3)**
9:9;53:16;107:6

**points (6)**
46:21;63:15;81:6;
93:24;97:11;101:4

**policy (1)**
104:6

**poor (1)**
102:22

**positing (2)**
60:24;61:25

**position (3)**
43:9;69:13;97:25

**positions (1)**
47:19

**possible (3)**
31:23;38:17;77:9

**post (3)**
22:15;34:22;73:7

**post- (7)**
9:23;23:8;53:22;
56:16;79:17;95:22;
99:23

**post-default (4)**
51:7,23;53:13;58:20

**post-effective (1)**
18:10

**post-gap (2)**
17:16;18:17

**Post-It (1)**
39:16

**post-petition (44)**
8:11,14;11:24;14:20;
15:15,17;17:23;24:20;
29:7;30:15;35:19;36:1;
42:15;47:15;53:25;
57:8;70:23;72:8,12,22;
75:3,7,10;82:14;83:23;

**84:9,12,19;85:11;87:1,
12;93:13,22;95:7,13;
96:12,20;98:3,13;
100:2,14;104:8,12;
107:3**

**post-petition-interest (1)**
7:8

**potentially (1)**
10:19

**power (1)**
108:24

**powerful (1)**
82:17

**PPI (3)**
39:19;59:3;96:24

**PPI's (1)**
59:4

**practical (2)**
34:3;107:14

**practice (15)**
31:13;84:8,8,11,16,
19;85:9;86:6,6,8;
87:13;88:6,8;97:20;
105:17

**pre-1994 (1)**
49:20

**pre-Act (1)**
86:5

**preamble (3)**
52:12;53:16,17

**precedent (10)**
28:19;49:13,14;52:8;
54:11;69:10;75:2;86:3;
91:7;96:9

**precedential (1)**
96:9

**precise (2)**
67:21;87:11

**pre-Code (2)**
86:6,7;87:13;88:6,8

**pre-dates (1)**
100:11

**prefer (1)**
28:22

**preliminary (1)**
20:11

**pre-petition (1)**
22:11

**presented (7)**
32:8;48:5;67:20;
81:11,11,14;108:3

**presents (1)**
9:23

**presiding (1)**
3:6

**presumably (1)**
24:6

**presume (1)**
7:20

**prevail (1)**
109:11

**preview (1)**
12:11

**previously (3)**
41:16;58:12;107:7

**price (1)**
46:9;49:11;68:2

**principal (3)**
43:9,24;44:1

**principally (1)**
43:16

**principle (10)**
26:13;27:3;49:21;
63:4;76:6;85:4,16,22;
89:20;98:22

**prior (1)**
85:3

**priority (3)**
68:24;75:18;109:20

**probably (1)**
39:17

**problem (2)**
27:16;53:15

**problems (1)**
62:14

**proceedings (1)**
111:7

**productive (1)**
110:18

**progeny (1)**
74:12

**prohibit (1)**
87:12

**prohibition (1)**
72:20

**prohibits (2)**
72:21;82:18

**promised (2)**
90:6;92:8

**promotes (1)**
34:4

**proper (4)**
70:10;76:10;77:1;
78:2

**property (6)**
103:12,14,16,17,19,
24

**proponent (8)**
60:17,25;61:7,16;
64:1;76:20;102:19;
106:20

**proponents (1)**
38:1

**proposal (1)**
80:1

**propose (1)**
60:16

**proposed (7)**
29:4;35:3,8;59:12,
15,21;60:16

**proposes (1)**
61:17

**proposition (3)**
12:21;84:22;88:6

**protect (1)**
103:18

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 123
of 129

**protecting (1)**
103:21
**provenance (1)**
74:13
**proves (3)**
49:14,17;89:1
**provide (5)**
14:9;16:13;43:4;
50:8;95:2
**provided (2)**
14:19;84:13
**provides (3)**
29:13,15;90:11
**providing (2)**
12:12;64:18
**provision (7)**
12:9;14:7;35:13,16;
36:5;37:13;69:21
**provisions (1)**
88:25
**published (4)**
94:17;96:4,7,8
**pulled (1)**
12:17
**pulling (1)**
89:5
**purchase (1)**
12:24
**purpose (1)**
31:23
**purposes (2)**
20:12;37:7
**pursuant (1)**
13:10
**put (10)**
4:11;5:4;6:12;15:3;
21:13;23:3;49:10;
62:24;65:11;77:23
**puts (2)**
64:1;102:19
**putting (2)**
16:11;100:1
**puzzling (1)**
8:21

## Q

**qualifies (1)**
64:12
**quantum (1)**
62:3
**quick (2)**
101:4;109:15
**quickly (1)**
6:11
**quite (3)**
25:23;48:4;89:19
**quote (10)**
9:22;13:2;27:6;
50:23;51:1,6;93:5,7;
109:1,3
**quoted (1)**
108:16

**quoting (2)**
11:1;51:18
**QURESHI (20)**
68:17,19,19,22;69:7,
12,17,19;70:7,20;71:3,
6,9,18,24;72:2,10,18;
90:14;104:6

## R

**rabbit (1)**
100:1
**raise (1)**
38:21
**raised (2)**
77:13;93:25
**rate (146)**
8:12,14,15;9:6,6,7,
12,25;10:3;11:19;
12:23;13:10,13,16,18,
20,22,23;15:6,13;16:2,
17;19:4,10;20:2,18;
21:7,8,13;23:8,10,11,
11,16,17,20,22;24:2,8,
9,11,20,25;25:18;
26:23;27:13;29:7;32:6;
33:20;34:1,2,22,22,25;
36:15;37:10,15,15,24;
42:25;43:7,8,12,13,15,
23,23;44:7,13;45:23;
46:3;48:2,6,7;50:3,13,
13,19;51:10,24;52:4;
53:13;54:13;57:14,19,
20,21,21,22;58:13;
61:13;62:9;63:14;
64:10,19;65:16,17;
67:22,23;68:9;69:15;
70:10;71:13,17;72:21,
22;73:1,2;74:14;75:14;
78:17;79:3,7;81:15,15,
16,21;82:14,15,16;
83:3;90:17;91:11,12,
12;93:8,10,12,14,19,
23;94:2;95:23;96:12,
16,16,21;98:4,14;
99:11;100:2;104:11,
13;107:20;108:15,19
**rates (6)**
9:6;10:20;26:22;
35:5;62:17;104:20
**rather (1)**
23:18
**reach (1)**
88:20
**read (29)**
10:16;11:9;21:10;
22:2;23:2;37:20;48:9;
52:14,14;56:16,16;
65:20;67:19;69:9,23;
72:21;75:12,13;79:17;
80:3;93:4,5,16;96:2;
97:8;103:8;104:8;
105:9;109:9

**reading (11)**
52:17;65:9;71:4,21;
76:10;77:9;85:20;97:3,
7,7;107:17
**real (2)**
22:18;62:5
**realize (3)**
4:6;21:18;109:16
**reallocate (1)**
65:4
**really (13)**
6:18;8:16;35:5;36:7;
62:9;66:5;77:17;79:12;
91:3;101:18;102:5;
104:7;105:11
**reason (6)**
9:5;12:23;41:19;
50:17;97:15;105:7
**reasonable (5)**
39:24;40:8;60:4,12,
20,22,24;61:22;62:1
**reasonableness (1)**
101:23
**reasonably (1)**
13:4
**reasons (3)**
33:24;50:14;82:12
**Rebecca (1)**
110:6
**rebuttal (6)**
7:17;38:17,19,21,24;
49:24
**recall (3)**
22:13;76:14;100:14
**receive (4)**
20:15;71:11;89:16;
104:10
**recent (3)**
73:19;84:2;110:21
**recently (3)**
38:22;96:5;109:15
**recognized (1)**
13:13
**reconcile (2)**
61:20;77:15
**record (2)**
68:19;105:9
**recovery (1)**
71:14
**redeemed (1)**
74:11
**reduce (1)**
60:19
**reduced (1)**
102:13
**reducing (3)**
71:14;102:1,8
**reference (1)**
94:23
**referenced (2)**
95:21;103:11
**referred (2)**
59:8;70:21

**reflect (2)**
7:2;29:2
**refreshing (1)**
100:10
**refusal (1)**
101:17
**regarding (1)**
71:1
**reinstate (3)**
50:12;57:12,18
**reinstated (4)**
72:19;93:19;103:10,
18
**reinstatement (6)**
57:10,10,15,16;
93:18;108:12
**reject (1)**
23:24
**rejected (2)**
35:2;104:9
**related (1)**
57:9
**relating (1)**
12:25
**relative (1)**
34:18
**release (3)**
110:16,17,20
**relevant (6)**
57:12,17;69:22;
93:21;97:13;98:24
**relied (1)**
12:17
**relies (1)**
55:22
**rely (3)**
14:9;97:2,2
**relying (3)**
25:17;96:11,13
**remaining (1)**
34:3
**remand (2)**
27:12;54:22
**remanded (1)**
27:12
**remember (7)**
57:6;87:6;91:2;96:1,
3;99:13;104:24
**Remind (3)**
57:6;66:6;94:16
**removed (1)**
66:8
**render (1)**
51:2
**repealed (1)**
64:18
**replaced (2)**
44:24;45:16
**reply (4)**
31:19;96:22,23;
103:6
**repo (1)**
60:5

**Reporter (1)**
87:23
**representing (2)**
40:15;80:9
**requesting (1)**
106:4
**require (1)**
50:19
**required (2)**
42:15;108:18
**requires (2)**
29:5;47:15
**re-read (1)**
96:5
**reservation (1)**
4:23
**reserve (11)**
7:16,16;23:19;37:3;
38:4,17,23,24;68:12;
92:17;107:12
**reserved (5)**
29:24;30:3,6,10;
71:20
**resolution (1)**
110:19
**resolve (4)**
32:10;53:21;81:20;
82:8
**resolved (5)**
3:21,25;6:2;8:13;
37:21
**respect (9)**
40:13;42:7;44:18;
50:7;62:19;88:14;
89:23;105:4;108:9
**respectfully (2)**
25:5;99:17
**response (1)**
23:7
**rest (1)**
90:4
**result (7)**
13:5;33:21;74:17;
91:21;101:19;107:14,
15
**resulted (1)**
35:9
**retain (1)**
89:16
**retread (1)**
68:22
**reverse (1)**
78:23
**reversed (5)**
8:4,8;15:23;27:11;
28:21
**reversing (1)**
28:23
**reviewing (1)**
28:23
**Right (133)**
3:15;4:6,10;6:16;
7:18;8:23;10:13,15;

Min-U-Script®

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 124
of 129

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(12) protecting - Right

11:6,20,22;12:6;15:14;
18:1,10;19:5;20:11,19;
21:16;25:2;26:1,11;
27:13,17;29:16,24;
30:8;31:2,15,17;32:6;
33:11,11;34:11,20,24;
35:18;36:2,3;37:3,3;
38:7;39:15;40:9,22;
41:8;42:4;44:7,8,10,
19;45:2,5,5,5,16;46:15;
47:16,17,19,25;49:5,
10,22;50:5;51:8;52:3;
53:2,4;58:1,7,11;59:7,
13;61:13;62:4,11,18;
64:14;66:8,13,13;
67:16;68:2,9;69:7,14;
70:5;71:4;72:3,10;
74:1,21,24;75:18,18;
76:2;78:13;79:16;
80:24;81:25;82:6;85:3,
5,7;86:15;88:17;89:21;
92:24;94:15,18;95:20;
97:1,8,10;98:7,12,12;
103:13,17,19,21,23;
104:15;105:16;106:9,
11,11;107:17;108:10,
16,17;111:3

**rights (20)**
42:9;49:8;51:4,7,15,
20,23;53:10,12;56:23;
58:19,20;60:1;62:21;
64:24,24;76:9;108:23;
109:2,5

**rise (1)**
3:5

**road (1)**
98:11

**rogue (1)**
96:19

**role (2)**
76:8;109:4

**Ron (8)**
84:2,4,4,6,6,7,7;86:5

**room (1)**
39:22

**rooted (1)**
86:9

**rooting (1)**
70:15

**Rose (1)**
110:7

**route (1)**
103:1

**RSA (2)**
4:22;6:2

**rule (38)**
29:12,13,15;32:22;
33:13,22;35:7;36:6,10;
37:2;45:22;46:2;52:22;
54:23;55:2,5,7,10;
59:1;62:15;63:7;65:7;
66:19,19;68:24;70:3,4;
73:9,10;74:13;75:18,

20;79:11;80:4;89:2;
105:10,25;108:25

**ruled (2)**
45:3;106:25

**rules (11)**
29:5,16,18;32:7;
35:4,8;53:22;69:10;
77:21;102:6;108:1

**ruling (3)**
42:24;90:19,24

**run (2)**
97:1;106:15

**runs (1)**
35:6

## S

**Sa- (1)**
84:7

**sale (1)**
13:8

**Sally (1)**
63:6

**same (30)**
4:15;17:23;18:7;
27:4;29:15;35:5;42:16;
47:1;49:19,20;51:12;
52:23,24;54:13,20;
61:22;62:17;63:5,7;
68:6;76:6;77:2;78:13;
79:11;80:12,18;90:13;
98:22;99:6;109:14

**SAN (1)**
3:1

**Saper (3)**
83:22;84:1,7

**sat (3)**
95:8,18,23

**saves (1)**
47:13

**saw (3)**
4:16;8:12;27:1

**saying (32)**
14:23;16:3;18:9;
19:12;24:22;29:4;39:3;
45:6,10,10,20;47:14;
48:25;53:22;55:24;
61:20;63:10;64:23;
68:4;76:3,19,25;80:5,
11,20;83:4;88:21;94:4;
102:10;106:22;107:1,
19

**school (1)**
79:5

**Schroeder (1)**
31:5

**search (1)**
29:17

**seated (1)**
3:9

**Seattle (1)**
31:12

**Sec- (1)**

87:13

**second (8)**
7:18;12:11;44:20;
50:17;59:3;67:9;106:6,
24

**secondly (1)**
46:16

**seconds (2)**
109:25;110:1

**Section (36)**
10:2;12:3;24:7;
29:11,13,14;31:20;
35:15,16,23;42:6;50:8,
15,19;51:10,11;52:25,
25;69:21;82:21,23;
83:18,19,23,25;85:9;
88:22;89:12,15;101:8;
103:2;107:3,20;108:4,
12;109:1

**sections (2)**
25:18;29:21

**secured (1)**
103:16

**seek (1)**
39:23

**seeking (2)**
70:23;104:8

**seeks (1)**
106:6

**seem (3)**
41:3;57:25;104:22

**seemed (1)**
26:13

**seems (7)**
5:18;27:19;33:6;
40:4;43:20;66:17;
68:10

**semi-concession (1)**
101:16

**send (3)**
5:20;74:14;75:3

**sends (1)**
42:6

**sense (7)**
5:16,18;24:21;33:20;
36:11;56:6;99:22

**sent (2)**
7:21;74:2

**sentence (2)**
32:24;93:5

**sentences (2)**
90:23;91:5

**separate (2)**
33:23;62:21

**serious (1)**
102:5

**Seriously (3)**
15:20;31:25;91:3

**services (1)**
39:25

**session (1)**
3:5

**set (5)**

4:22;35:7;49:17;
59:25;100:11

**settled (2)**
84:15,18

**seven (1)**
25:3

**several (3)**
87:19;100:11;104:25

**shall (1)**
56:21

**shareholders (3)**
28:12;34:7;47:10

**sharing (3)**
38:14,20;39:5

**shift (3)**
11:1,1;104:14

**Shoen (15)**
12:21,22,25;13:12;
93:14,22;94:12,13,19;
95:6;96:3,11,23,25;
99:19

**shorter (1)**
109:21

**show (1)**
65:2

**shows (1)**
65:1

**sic (5)**
9:4;24:23;37:2;42:7,
19

**side (8)**
8:17;12:2;25:16;
26:24;49:24;70:15;
90:7;96:13

**sides (1)**
23:6

**similar (2)**
34:22;35:5

**similarly (1)**
35:10

**simple (1)**
65:14

**simply (3)**
7:3;78:9;109:9

**single (1)**
34:1

**sisters (1)**
32:18

**sit (4)**
36:13;47:7;64:4;
77:14

**sitting (2)**
31:14;102:3

**situated (1)**
35:10

**situation (8)**
5:7;10:18;39:18;
71:12;93:17;94:8;99:6;
107:2

**Sixth (1)**
77:14

**size (3)**
9:3;24:19;25:1

**skating (1)**
48:25

**slippery (1)**
48:25

**sliver (1)**
44:5

**sloppy (2)**
31:2;105:13

**small (1)**
44:5

**snapshot (1)**
90:2

**sold (1)**
103:14

**solely (1)**
29:10

**solvency (5)**
11:23,24;71:11;
93:14;100:14

**solvent (49)**
10:23;11:5,18,25;
13:5,6,13;14:6;19:1;
24:20;29:8;33:23;36:9;
53:24;54:23;65:13;
70:9;72:6,7;75:5,6,8,
13,18;76:8;78:16,18;
79:8;80:16;83:24;84:9,
12,20;87:1,1;93:7,11;
95:22;98:2,13,22;99:9,
10,20,22;107:23,24;
108:1;109:4

**solvent- (1)**
96:16

**solvent-debtor (10)**
8:15;14:9,20;15:18;
45:21;75:10;85:11;
95:13;96:21;108:25

**solves (1)**
47:12

**somebody (9)**
24:8;32:4;34:5,6;
55:22;59:8,15;60:16;
64:3

**somebody'll (1)**
5:20

**somehow (5)**
23:25;37:20;61:25;
67:18;86:16

**Someone (5)**
4:21;12:24;58:16;
61:18,18

**somewhat (1)**
8:20

**somewhere (1)**
20:22

**sorry (6)**
56:9;59:19;60:21;
74:9;78:23;80:24

**sort (2)**
12:16;25:17

**sorts (2)**
63:9;65:11

**sought (1)**

Min-U-Script®

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 125
of 129

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(13) rights - sought

39:25
**sound (1)**
  26:21
**source (1)**
  36:6
**sources (1)**
  3:14
**space (1)**
  20:22;60:23
**spades (1)**
  104:22
**SPEAKER (3)**
  39:13;55:13;111:4
**specific (3)**
  11:2;104:14,19
**specifically (1)**
  57:7
**speculate (1)**
  98:19
**speculation (1)**
  99:3
**Spence (1)**
  41:19
**spend (3)**
  50:17;56:11;108:10
**spin (1)**
  52:2
**spirited (1)**
  109:13
**spoke (1)**
  10:24
**spoken (1)**
  4:3
**squarely (1)**
  9:22
**stake (2)**
  21:19;70:14
**stand (1)**
  97:12
**standard (2)**
  61:8;80:12
**stands (3)**
  80:3;88:4,6
**start (8)**
  16:21;29:3;41:12;
  65:12;68:1;72:10;
  92:21;106:25
**started (4)**
  13:15;30:12;33:1;
  67:25
**starting (2)**
  39:15;65:13
**starts (1)**
  88:2
**state (21)**
  9:6;10:1;24:3;43:11,
  12,14;60:5,6,8,9,14,25;
  61:2,12,25;62:2;63:13;
  66:23;81:16;105:17;
  110:4
**state- (1)**
  15:2
**stated (2)**

79:9;81:12
**statement (2)**
  20:11;95:24
**States (2)**
  8:5;83:22
**status (1)**
  3:20
**statute (19)**
  13:15,15;26:9;36:8,
  10;41:15,16;44:19;
  48:17;53:15;54:5;
  55:22;56:7;60:4;67:4;
  81:16;86:8,9;102:6
**statute's (1)**
  56:25
**statutory (18)**
  19:4;41:8,12,17,21;
  42:13;49:1,9;52:21,22;
  53:22;54:17;56:17;
  59:1;66:2;67:22;89:4;
  104:13
**stay (1)**
  4:14
**stayed (1)**
  27:4
**step (4)**
  46:4;47:5,18;75:19
**Stephen (1)**
  3:23
**stick (1)**
  62:5
**still (11)**
  10:25;20:22,23;41:6;
  48:17;72:16;77:20;
  78:2;87:2;88:6;106:20
**stipulated (1)**
  29:23;71:20;81:20
**stipulation (3)**
  4:16;30:18;110:9
**stock (3)**
  12:24,25;13:8
**stood (1)**
  61:4
**stop (2)**
  53:1;79:9
**stops (1)**
  19:13
**story (3)**
  33:5;65:16;66:18
**straighten (1)**
  28:4
**strange (3)**
  12:2;35:12,14
**streams (1)**
  54:10
**strikes (1)**
  44:12
**string (1)**
  103:7
**stronger (1)**
  56:23
**struck (2)**
  12:1;74:25

**struggling (1)**
  60:23
**stuck (2)**
  69:2;77:20
**sub (3)**
  66:7,11,13
**subclause (2)**
  49:9;52:5
**subclauses (3)**
  41:22;49:4;64:12
**subject (5)**
  4:15;15:25;21:4;
  35:19;36:6
**submit (6)**
  29:16;32:22;34:25;
  101:21;102:2;105:13
**subro (1)**
  110:15
**sub-section (1)**
  56:17
**subsequent (1)**
  96:4
**subvert (1)**
  46:1
**suddenly (1)**
  26:22
**sufficient (1)**
  70:24
**sum (2)**
  106:15,20
**support (1)**
  87:3
**suppose (1)**
  60:4
**supposed (4)**
  32:9,10;48:19;100:5
**Supreme (10)**
  8:5;28:19;52:21;
  83:21;84:2,13,14;86:3,
  4;108:1
**Sure (13)**
  4:2;17:22;18:6,13,
  20;21:21;24:1;64:7;
  73:20,21;78:3;98:17;
  99:7
**surprised (1)**
  93:3
**surprising (2)**
  46:5;103:5
**survive (1)**
  19:15
**survived (1)**
  46:1
**survives (1)**
  85:22
**surviving (1)**
  19:19
**suspect (2)**
  29:16;102:25
**Sylmar (2)**
  39:18;82:13

**T**

**table (2)**
  26:24;96:6
**talk (11)**
  32:4;44:20;48:11;
  54:12;59:2;62:8;68:3,
  23;73:18;75:19;106:24
**talked (2)**
  22:14;107:3
**talking (12)**
  16:18;17:20,23;
  18:10;19:25;47:1;48:3;
  51:11;54:14;64:21;
  87:17;99:16
**talks (4)**
  14:7;53:17;70:22;
  77:7
**Tan (1)**
  15:3
**tangent (1)**
  96:18
**task (1)**
  27:15
**tax (1)**
  19:10
**TCC (1)**
  4:22
**teach (1)**
  79:10
**teaching (1)**
  79:5
**Ted (1)**
  7:12
**tee (1)**
  107:15
**teed (2)**
  30:23;57:7
**telling (6)**
  21:20;62:2;66:5;
  77:17;105:12;110:9
**tells (5)**
  16:23;54:4;62:15;
  94:1;100:3
**temporal (1)**
  22:9
**ten (1)**
  25:3
**ten-percent (1)**
  24:7
**tentative (7)**
  25:20,23,24;33:25;
  42:24;67:11;83:15
**term (6)**
  17:18,18;48:6;67:22;
  91:7;104:13
**termination (2)**
  39:20,21
**terms (5)**
  37:12;49:18;50:16;
  56:13;96:9
**test (27)**

14:12,17;28:15;
  29:19;31:20;32:1,17;
  33:17;47:23;54:21;
  67:14;75:15;76:12;
  80:20;81:24;82:5,10;
  88:13,15;89:5,12,13;
  91:19,23;92:2;107:22,
  23
**Texas (3)**
  27:21;28:2;74:11
**textual (1)**
  56:16;86:10;88:19
**Thanks (3)**
  39:14;92:25;106:1
**That'd (1)**
  5:10
**theory (5)**
  22:23;23:25;26:8;
  46:13;75:8
**thereafter (1)**
  39:9
**therefore (9)**
  15:12;24:24;66:12;
  72:4;78:25;85:15;
  91:23;102:1,12
**there'll (1)**
  38:18
**there're (2)**
  4:8;32:7
**thin (1)**
  13:11
**thinking (3)**
  27:8,10;39:17
**third (4)**
  33:19;38:23,24;
  83:11
**thirty (2)**
  109:24;110:1
**though (10)**
  8:9;23:2;30:18;
  45:19;55:8;57:15;84:5;
  88:11;89:4;94:18
**thought (7)**
  22:2;39:16;58:12;
  60:15;64:22;79:25;
  101:7
**thoughtful (1)**
  106:5
**three (19)**
  4:17;20:20;22:9;
  29:5,6,15,18;33:23;
  35:6;41:22;47:19;
  51:17;68:8;74:10;81:6;
  90:23;91:5;99:1;107:2
**Throw (2)**
  101:6;102:24
**thrust (1)**
  69:3,19
**thus (1)**
  23:3
**times (1)**
  9:22
**today (11)**

Min-U-Script®
Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 126 of 129
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(14) sound - today

3:12;9:13,22;23:18;
24:17;36:24;37:3;59:8;
74:13;79:6;99:4
**today's (1)**
98:21
**together (1)**
53:3
**told (10)**
30:24;33:18;34:9;
44:22;59:11;71:19;
73:15;88:23;91:5;
99:11
**tomorrow (1)**
21:22
**tone (2)**
27:9;100:12
**took (6)**
7:21;30:1;35:13;
79:19;83:18;106:17
**toot (1)**
32:3
**toward (1)**
68:25
**trade (1)**
81:4
**Travelers (2)**
8:8;28:18
**treat (2)**
63:7,11
**treated (8)**
26:8,9;33:2,7,8;
37:20;62:16;63:5
**treatise (1)**
32:14
**treatment (4)**
33:25;35:9;37:14;
63:18
**trial (5)**
30:10;38:25;66:17,
25;90:14
**tried (3)**
9:12;26:15;57:12
**tries (1)**
30:1
**triggered (1)**
42:21
**true (2)**
23:2;37:19
**truly (3)**
29:3;35:10;76:4
**trump (1)**
40:3
**trust (2)**
103:12,15
**trustee (3)**
19:3;61:18;72:24
**try (6)**
8:24;94:8;98:16,20;
109:14,15
**trying (11)**
30:22;44:11;49:6;
61:14;65:3,8,9;75:21,
22;93:9;98:20

**Tsekerides (186)**
3:11,13,16;7:8,10,12,
12,22;8:1,3,7,10,24;
9:9,11,14,16,20;10:9,
11,13,16;11:7,13,16,
20,23;12:5,7,20;13:17,
19,22;14:5,18,24;15:7,
10,14,22;16:1,9,11;
17:2,5,8,15,17,21;18:1,
4,6,9,13,16,21,23;19:2,
6,17,23,25;20:4,6,9,13,
19,23;21:3,6,11,16,24;
22:1,4,7,10,12,16,19,
22;23:5,14,23;24:4,13,
16,18;25:2,4,9,11,14,
22;26:1,3,6,11,14,17,
19,25;27:14,16,18,23;
28:1,6,9,15;36:14;
37:20;38:3;48:16;
53:19;64:5;65:17;
72:25;73:4,14,17,21;
74:1,5,9,16,21,24;75:9,
25;76:2,24;77:4,6,9;
78:1,6,9,12,22,24;79:2,
16,22,25;80:6,11,16,
22,23;83:17;92:6,10,
12,15,17,21,24;93:1,4;
94:13,15,19,23;95:4,
10,12,16,18,21;96:11;
97:1,10,15,18,24;98:7,
9,17;99:2,7;100:16,18,
22,25;101:7
**Tuesday (1)**
111:6
**tuning (1)**
83:1
**turn (3)**
49:15;58:16;105:10
**turns (1)**
5:19
**twenty (5)**
8:13;9:1;10:19;
16:15;38:16
**two (14)**
36:13;44:21;49:6;
50:14;54:19;55:8;59:2;
63:8,15;66:22;74:4;
75:9;76:10;82:12
**types (1)**
10:20

**U**

**Ultra (31)**
26:12,15,25;27:9,10;
39:19;41:6;44:23,24,
24,25;45:1,13,16,20;
53:14,14;54:3,9,18,19,
19;73:18,23;74:1,2,8;
75:1;76:6;108:21;
109:6
**Um-hum (4)**
22:10,16;25:22;

41:25
**un- (1)**
102:19
**unable (1)**
51:2
**unaltered (5)**
49:8;51:14;56:21,22;
109:1
**unconscionable (4)**
59:16,25;60:4;62:1
**under (53)**
12:14;19:11;26:7;
40:2,10,17;41:2;43:2,8,
11;45:22;48:6;50:9;
53:17;54:9,10;57:2;
58:25;59:24;60:4,7,9,
14,25;61:2,8,12,24;
62:2;63:11,13;64:24;
75:2,11;76:11;83:19;
84:8;85:9,24;86:20;
88:11,12;89:17;91:11;
97:20;103:10;105:25;
107:3,5,20;108:22;
109:5,10
**underlying (5)**
48:9;95:22;99:12,13,
25
**underscore (1)**
96:17
**unequal (1)**
35:9
**unequivocally (3)**
16:15;31:1,23
**unforgiving (1)**
26:21
**UNIDENTIFIED (1)**
39:13;55:13;111:4
**uniform (4)**
24:19;33:19;34:1,2
**uniformity (3)**
10:18;34:4;35:9
**uniformly (1)**
9:4
**unimpair (3)**
50:12;59:10;64:2
**unimpair- (1)**
102:10
**unimpaired (66)**
17:4,5;23:7;26:2,3,4,
4,10;29:11,20;30:21,
24;32:8,14;33:2,3;
40:2,17;41:5;48:12,20,
21,23;51:2;53:24;55:6,
18;56:2;58:23;60:17;
61:17,23;63:11;64:20;
70:3,6,19;72:7;75:11,
12;76:21;78:17,21,21;
79:11;80:10;82:4,4,9,
15,16,19;88:16,18;
89:25;90:12;92:1;
98:22;99:1,15,18;
101:21;102:7;103:18;
105:7;106:17

**unimpaired-class (1)**
99:6
**unimpairment (12)**
47:15;54:22;59:8;
62:12,20,25;65:9;
70:12;76:4,10;77:10;
106:22
**unimpairs (1)**
60:20
**UNISON (1)**
3:8
**United (2)**
8:4;83:21
**universe (3)**
29:3;43:21;75:10
**unlawful (1)**
60:5
**Unless (17)**
28:6;46:25;53:17;
56:8;59:22;67:5,12,14;
69:9,11,12;75:8;77:20;
79:14;84:16;86:12;
105:20
**unlike (1)**
82:15
**unmatured (5)**
48:20;72:12,13,16,
20
**unnecessary (1)**
66:4
**unpublished (1)**
96:4
**unreasonable (15)**
40:1,1,2;58:23,25;
60:15;61:8,8,19;
101:19,25;102:1,12,18,
23
**unsecured (12)**
28:13;29:7,9;36:8;
43:21;46:6;64:19;65:5;
70:23;93:7;103:20;
104:8
**unsurprisingly (1)**
42:6
**up (31)**
4:14,24;5:7,20,21;
7:21;9:18;10:10;13:11;
15:1;17:19;20:20;
30:23;36:13;38:16;
41:20;47:19;49:17;
50:11;56:14,15;57:8;
61:4;65:1,2;68:25;
79:22;89:5;99:24;
106:3;107:15
**upend (2)**
84:15,18
**upheld (1)**
73:22
**upon (4)**
56:3;69:3;85:6;
86:25
**upset (2)**
86:7,7

**unimpaired-class (1)**

**urge (1)**
103:7
**urging (2)**
85:6;88:20
**USC (2)**
13:11;108:25
**use (6)**
17:18;18:3;42:8;
66:1;91:6;108:4
**used (7)**
12:22;17:19;42:2,8,
14;52:23;59:25
**uses (1)**
12:9
**using (3)**
9:24;12:8;66:3
**utility-funded (1)**
21:1

**V**

**Valley (3)**
42:20,21,25
**value (2)**
65:4;96:9
**various (2)**
30:2;106:8
**vehicle (1)**
88:19
**version (1)**
98:21
**versus (3)**
32:7;70:12;96:9
**versus-unliquidated (1)**
4:18
**victim (1)**
38:10
**victims (1)**
71:15
**view (12)**
5:5,5;37:25;43:8;
47:12;56:15;76:21;
77:16,20,21;99:17;
109:8
**views (1)**
77:15
**violates (1)**
63:7
**violation (2)**
55:2;65:6
**virtue (1)**
101:21
**volitional (1)**
59:9
**vote (11)**
17:3,7,10;46:14;
55:7,21;63:2;68:20;
102:2,8,9
**voted (3)**
47:20,22;107:7
**voter (1)**
55:18
**votes (1)**

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 127
of 129

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

55:12
**voting (4)**
55:5,20;63:1,9
**vs (1)**
83:22

## W

**wait (4)**
3:18;55:4;92:7;
95:15
**walk (1)**
94:15
**wants (1)**
78:17
**way (28)**
9:2;15:1;16:16;23:3;
31:21;32:19;33:8,16;
37:21;40:14;41:15,21;
55:10;57:10;63:7,8;
65:20;72:7;75:1,6,12;
79:9;85:21;88:12,12;
104:21;106:14;107:9
**ways (4)**
55:8;75:9;106:23;
107:2
**website (1)**
23:19
**WEDNESDAY (1)**
3:1
**week (4)**
4:4,22;110:3,22
**weekend (2)**
12:21;97:3
**weeks (2)**
98:18;109:19
**Weil (2)**
3:23;7:12
**well-established (1)**
84:11
**weren't (2)**
11:5,25
**what's (16)**
13:20;14:3;18:11;
19:4;23:19;46:5;48:5;
51:10;58:25;60:20;
64:16;66:18;70:10;
79:11;96:19;107:5
**Whereupon (1)**
111:7
**whispered (1)**
34:6
**whole (8)**
13:21;53:3,5,5,7;
54:18;97:22;98:1
**whose (3)**
42:6;76:15;80:24
**wife (2)**
11:11;48:10
**wildfire (1)**
71:15
**willing (1)**
61:1

**win (2)**
54:9,9
**windfall (7)**
10:24,25;34:8;55:1;
65:3;71:11;104:10
**windfalls (2)**
34:10,12
**winners (1)**
43:9
**winning (1)**
24:15
**WINTHROP (9)**
109:24;110:2,6,7,10,
12,18,24;111:1
**wish (1)**
109:23
**withdrawn (1)**
30:3
**within (3)**
34:4;42:16;77:13
**without (3)**
71:14;94:18;107:8
**word (8)**
17:19;18:3;42:3,8;
59:25;60:3;66:3;87:3
**words (15)**
9:3,4;13:18;27:20;
49:2,6;50:19;52:23,25;
54:14;64:11;67:3,23;
79:5;108:14
**work (4)**
15:16;19:1;110:15,
16
**worked (1)**
7:9
**working (2)**
3:18;110:20
**works (1)**
31:21
**world (8)**
22:8,18;47:17,25;
49:10,25;60:24;61:25
**worry (1)**
4:11
**worse (4)**
44:9;56:2;79:14,16
**worth (1)**
47:3
**wrap (1)**
79:22
**writ (1)**
102:15
**write (5)**
31:1;32:3,9,10,18
**wrong (8)**
12:3,22;23:10;28:16;
78:4,4,7;80:8
**wrongdoer (1)**
85:1
**wrote (4)**
31:3,4,16,22

## Y

**year (2)**
37:2;42:16
**years (8)**
8:13;9:1;16:15;
22:14;51:18;68:8;
85:16;100:11
**York (1)**
83:22

## Z

**zero (1)**
25:3
**Zilly (6)**
31:5,7;32:2;33:2,18;
69:25
**Zilly's (1)**
34:6

## 1

**1 (3)**
5:4;41:24;104:23
**10 (5)**
4:23;5:6;6:13,14;
111:5
**103b (3)**
82:21;88:22,24
**11 (20)**
3:1;10:2;13:11;14:2,
4,8;19:14;20:16;22:8;
29:8;31:21;33:23;
35:14;36:9;73:7;88:25;
89:2,9,12;108:25
**1123a5G (1)**
103:10
**1123d (2)**
50:8,16
**1124 (33)**
25:17;29:11,21;40:2,
3,17;41:5,22;48:18;
49:4;51:10;53:16;
62:18;63:11;65:20,24;
67:23;68:1;69:4,23;
75:13;76:4;77:1,19;
78:2;79:14;80:13,18;
103:11;107:3;108:4,7,
22
**11241 (14)**
42:8;49:3,23;50:1;
51:12,14;52:6,25;53:3;
58:7,7;59:24;75:11;
76:11
**11242 (4)**
49:25;50:1;52:2;
57:9
**11242a (1)**
108:12
**11242e (7)**
50:19;51:18;52:11,

15,25;53:3;58:8
**11243 (5)**
50:7,17;56:1,17;66:1
**1124's (1)**
109:1
**1129 (8)**
25:17,25;26:5;64:25;
67:12;68:3;70:18;
80:10
**1129a7 (11)**
29:13;47:25;65:2;
67:14,17;82:4,23;
88:11,14;107:5;108:7
**1129a7Aii (1)**
89:15
**1129b (16)**
29:15;55:11;67:16;
69:5,23;75:14,17;76:5,
11,22;80:13,19;107:8;
108:5;109:6,7
**1129b2 (1)**
55:11
**1142 (1)**
51:8
**1150 (1)**
94:21
**11th (1)**
23:20
**12 (1)**
105:25
**12:01 (1)**
111:7
**1234 (1)**
81:13
**13 (1)**
89:19
**14 (1)**
20:12
**14th (2)**
4:1;7:3
**176 (1)**
94:21
**1911 (3)**
83:20;85:12,14
**1949 (1)**
83:21
**1978 (2)**
41:22;83:18
**1979 (1)**
85:14
**1989 (1)**
84:2
**1993 (1)**
30:12
**1994 (4)**
49:19;50:6;64:18;
106:13

## 2

**2 (5)**
5:4,11;6:13;41:24;
108:24

15,25;53:3;58:8
**2.59 (1)**
9:16
**2.8 (1)**
103:16
**2002 (1)**
30:13
**2016 (2)**
49:16;51:17
**2019 (1)**
3:1
**244 (1)**
87:23
**29 (1)**
24:25
**29th (1)**
23:18

## 3

**3 (7)**
19:24;41:24;42:1;
49:9;66:7,11,13
**369 (1)**
63:20
**3A (1)**
21:22
**3B (7)**
19:24;20:22,25;
21:22;22:3;37:12,14

## 4

**4624 (1)**
20:10
**4A (1)**
21:23
**4B (1)**
21:23

## 5

**5 (1)**
83:8
**502 (4)**
42:6;43:2;60:11;
106:15
**502a4 (5)**
39:22;40:3;41:3,4,7
**502b (1)**
98:10
**502b2 (20)**
35:23;48:18,19,22;
53:22;64:12;72:9,11,
11,20;73:11;79:17;
83:10,14,18;84:11;
85:9,10,16;87:11
**502b4 (4)**
58:25;61:9;101:8;
103:2
**503 (1)**
83:8
**513 (1)**
52:21

**561 (1)**
  52:21
**570 (1)**
  52:22
**5th (1)**
  54:20

---
### 6
---

**6 (1)**
  20:12
**6.9 (1)**
  103:15
**63 (5)**
  83:18,19,23,25;85:9
**678 (2)**
  87:25;88:1
**682 (1)**
  88:3

---
### 7
---

**7 (26)**
  12:3,3;14:3,14;15:5;
  18:24;19:1,8,13,14;
  35:13;72:24;73:1,9,9;
  82:22,22,23;83:6;
  88:25;89:3,13,17,22,
  23;91:15
**724 (1)**
  67:25
**726 (4)**
  19:1;79:13,14;93:9
**726a5 (23)**
  10:2;13:11;14:7,9;
  31:20;35:15,16;36:5;
  48:1,6;51:11;54:20,21;
  78:25;81:23;82:1,19;
  88:12,19;90:11;91:11,
  13;107:20
**785 (1)**
  41:19
**7th (1)**
  74:12

---
### 8
---

**8 (1)**
  20:14
**840 (1)**
  51:8
**845 (1)**
  63:20
**851 (1)**
  63:21

---
### 9
---

**9 (2)**
  8:6;96:23
**9-0 (3)**
  8:8;28:21,23
**94 (1)**

  66:14
**99 (1)**
  95:19
**993 (1)**
  41:19
**9th (18)**
  49:13;50:11,14;
  51:13,17,22;52:5,7;
  53:8,12;54:11,12,16;
  57:4;58:11;67:1,9;68:8

Case: 19-30088    Doc# 5085    Filed: 12/12/19    Entered: 12/12/19 13:04:07    Page 129
of 129