**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' PRELIMINARY LIMITED OPPOSITION TO VLAZAKIS DEFENDANTS' MOTION AS TO THE INAPPLICABILITY OF STAY, AND IN THE ALTERNATIVE FOR RELIEF FROM STAY**<br><br>Relates to Dkt. Nos. 4846, 4847<br><br>Date: December 17, 2019<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Pacific Gas and Electric Company (the "**Utility**"), as a debtor and debtor in possession along with PG&E Corporation ("**PG&E Corp.**", together with the Utility, the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"), respectfully submits this opposition (the "**Opposition**") to the *Motion as to Inapplicability of Stay, and in the Alternative, for Relief from Stay* (Docket No. 4846) filed by Athanasia Vlazakis, George Vlazakis, John Barbis, and Maria Barbis (collectively, the "**Vlazakis Defendants**"). The Vlazakis Defendants seek relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**") to file an affirmative cross-complaint (the "**Cross-Complaint**") against the Utility in the case pending in the Superior Court for the State of California, County of Alameda (the "**State Court**"), *Pacific Gas and Electric Company v. Vlazakis, et al.*, Case No. RG19021463 (the "**State Court Action**"). In support of the Opposition, the Utility submits the Declaration of Kenyon Mark Lee (the "**Lee Declaration**") and the Request for Judicial Notice (the "**RJN**"), filed contemporaneously herewith.

## I. PRELIMINARY STATEMENT

The Utility opposes the Motion insofar as claims asserted in the Cross-Complaint are predicated on an unconsummated November 22, 2017 settlement agreement between the Utility and the Vlazakis Defendants, a copy of which is attached as Exhibit 1 to the Declaration of Ronald F. Beretska, Jr. in support of the Motion (the "**Contract**").[1] The Utility does not oppose relief from stay as to other elements of the Cross-Complaint, reflected in the Fourth through Seventh Causes of Action.

The Utility's position here, as in the State Court Action, is motivated by important public safety considerations that will be served by obtaining a determination, as expeditiously as possible, of Utility's request for declaratory and injunctive relief in the State Court. The Utility seeks to construct a new natural gas regulation station on Utility's property at 225 Brush Street in Oakland, to meet current applicable safety standards and code requirements and enhance the inspection of gas transmission lines and the safe management of the lines in an emergency. RJN Ex. A at para. 3. To

---

[1] These are the First through Third Causes of Action in the proposed Cross-complaint.

do this, Utility must demolish the existing building on the Utility-owned property. RJN Ex. A at para. 4. The Utility's ability to do this so it can move forward with the new station has been frustrated for several years by an encroachment from the Vlazakis Defendants' property. Specifically, the old building on the Vlazakis property, immediately adjacent to the Utility's property and building, is supported by the exterior wall of the Utility's adjoining building, which functions as the exterior wall of the Vlazakis building as well. RJN Ex. A at para. 4. Demolition of the Utility's building will leave the Vlazakis building without an exterior wall or support for its roof and perpendicular walls. *Id*.

After several years of unsuccessful efforts—including the Contract—to resolve the situation with the Vlazakis Defendants consensually, the Utility filed the State Court Action on June 4, 2019, seeking a determination permitting it to demolish its building, including the wall that adjoins the Vlazakis property and supports the Vlazakis building. Lee Decl. at para. 3. The Utility promptly sought a preliminary injunction. Lee Decl. at para. 4. The State Court denied the Utility's request for an injunction but set an expedited case management schedule and an early date for a bench trial on May 12, 2020. Lee Decl. at para. 5.

Five months after State Court Action was filed, and after the expedited trial date had been set, the Vlazakis Defendants belatedly requested leave from the State Court to file the proposed Cross-Complaint. Lee Decl. at para. 7. The State Court properly declined to consider that request until the Vlazakis Defendants obtained a ruling from this Court that the stay does not prevent the Vlazakis Defendants from making it. *Id*., Ex. A The State Court, on November 4, directed the Vlazakis Defendants to bring a motion "forthwith" in this Court. *Id*. The Motion was filed on November 22, 2019.

The Proposed Cross-Complaint contains two categories of claims. The first three causes of action (the "**Contract Claims**") are based on the Contract. The First Cause of Action is for Specific Performance of the Contract, the Second is for damages for alleged breach of it, and the Third is for damages for alleged negligence in its performance. Causes of Action Four through Seven are based

on traditional real estate principles and doctrines (the "**Title Claims**"): adverse possession (Fourth), prescriptive easement (Fifth), implied easement (Sixth) and easement by necessity (Seventh).[2]

For the reasons explained below, the Court should not grant relief from stay as to the Contract Claims—claims as to which the automatic stay unquestionably applies under Bankruptcy Code §362(a)(1) and (6), and as to which the Vlazakis Defendants have timely filed a proof of claim for $500,000 in the Utility's bankruptcy case (Claim No. 71712) (the "**Proof of Claim**"). The Utility does not oppose relief as to the Title Claims, so it is unnecessary to determine whether the form of that relief is a modification of the stay or a determination that it does not apply.[3]

## II.   FACTUAL BACKGROUND

The crux of the issue for Utility is the virtual certainty that litigation of the Contract Claims in the State Court Action will postpone—probably materially—the determination by the State Court of the Utility's right to demolish its building and proceed with construction of the gas regulation station. The safety consequences of such a delay include (1) gas-line inspections not being carried out pursuant to CPUC regulatory requirements and Utility commitments; (2) unacceptable levels of risk arising from delayed inspections of the 24" high-pressure gas lines; and (3) compromise of the Utility's ability to utilize the critical shut-off valves to speed the response to reported gas leaks or related risks. RJN Ex. A at para. 11.

The Vlazakis Defendants assert, and the Utility does not dispute, that the proposed claims for damages for breach of contract, and for negligence in performance of the contract (assuming

---

[2] The Eighth Cause of Action is not substantive; it seeks a declaration of rights predicated on the preceding seven causes of action. Analytically it is a Contract Claim to the extent the declaration it seeks is based on any of the first three causes of action, and a Title Claim to the extent based on any of the others.

[3] Bankruptcy Code §362(a)(3) applies to the Title Claims because they seek to exercise possession or control over property of the estate – namely, the Utility's real property located at 225 Brush Street, and the Utility's building located on that property. The Title Claims are also likely subject to §362(a)(1), because the claims to establish rights in the Utility's property, to the extent they are valid, arose prepetition and could have been the subject of a prepetition action independent of the action filed by the Utility. Nevertheless, because the Utility does not oppose the assertion or litigation of the Title Claims, whether by answer or Cross-Complaint, this memorandum does not address them further.

this is a claim at all), carry a right to jury trial, which the Vlazakis Defendants have stated to this Court they will demand. Motion at 5. The State Court has informed the parties that, if there is a jury trial, the trial will not proceed on the currently scheduled date; and the need for broader discovery and trial preparation will likely contribute further to the delay, especially given that the Vlazakis Defendants have identified fourteen witnesses (or categories of witnesses) that they contend needed to be deposed in connection with the Contract Claims. Lee Decl. at paras. 22-23.

The Contract Claims are based on the Contract that the Utility and the Vlazakis Defendants entered into in November 2017, in an effort to resolve the issues between them. RJN Ex. A at para. 5. The Contract calls for the transfer to the Vlazakis Defendants of the Utility's wall and the four-foot strip of land on which it is located, and for Utility to reinforce the wall. The agreement has not been consummated. The parties dispute whether the Utility breached the Contract and whether the Utility remains obligated to perform it.[4] The Vlazakis Defendants seek, as part of their proposed Cross-Complaint, specific performance of this agreement.

The Utility disputes that specific performance is available to the Vlazakis Defendants for a variety of reasons, including that Utility is not obligated under the terms of the Contract to perform it. However, having to litigate over the contract would significantly complicate the trial and contribute materially to reasons to delay it. Under bankruptcy law, the Utility can eliminate its exposure to specific performance and the risks and burdens associated with it by rejecting the contract. *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306 n. 5 (9th Cir. 1989). Accordingly, the Utility has authorized, and intends to file shortly, a motion for authority to reject the Contract and thereby remove specific performance as a possible subject for the State Court trial.

### III. ARGUMENT

The Vlazakis Defendants argue in the alternative that: (1) the automatic stay does not apply to the Cross-Complaint and (2) cause exists to lift the stay. Motion at 6-10. Both arguments are unavailing.

---

[4] *See* RJN Ex. B at paras. 3-6 for additional information about the Contract dispute and the Utility's position about it.

### A. The Automatic Stay Applies to the Contract Claims

The Vlazakis Defendants argue that the stay does not apply to "proposed cross-claims in a lawsuit filed after PG&E's bankruptcy petition." Motion at 6. With respect to the Contract Claims, the fact that the State Court Action itself was filed after the Petition Date is immaterial. The Vlazakis Defendants' pursuit of specific performance or damages for an alleged prepetition breach of a prepetition agreement constitutes "commencement or continuation . . . of . . . an action or proceeding against the debtor that could have been commenced before the [petition date]." 11 U.S.C. § 362(a)(1). With respect to the Title Claims, the stay applies because this is an action "to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). However, the Debtors do not contest the State Court Action moving forward with respect to the Title Claims, recognizing that fairness and efficiency call for litigation of those matters as part of the same proceeding with the Utility's Complaint.

### B. The Vlazakis Defendants Are Not Entitled to Stay Relief on the Contract Claims

Section 362(d)(1) of the Bankruptcy Code authorizes a court to modify or terminate the automatic stay for "cause," which "has no clear definition and is determined on a case-by-case basis." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted). The party requesting stay relief bears the burden of making a *prima facie* showing of cause under section 362(d)(1). *See In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551, 553 (Bankr. C.D. Cal. 2004); 3 Collier on Bankruptcy ¶ 362.10 (2019) ("Failure to prove a prima facie case requires denial of the requested relief."). In determining whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts analyze the twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984);[5] *see also Kronemyer v. Am. Contrs. Indem. Co.*

---

[5] The *Curtis* factors are: (1) whether the relief will result in partial or complete resolution of issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination;

*(In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.").

The applicable *Curtis* factors here weigh against lifting the stay. Factor 10, the interests of judicial economy and the expeditious and economical determination of litigation for the parties and factor 12, the impact of the stay and the "balance of hurt" both demonstrate that the Utility would be harmed if the May 2020 trial date slipped because of a jury trial associated with the Contract Claims. There would be no judicial economy associated with trying the Contract Claims together with the Title Claims, because they do not overlap and thus are easily severable.

### 1. Judicial Economy Is Not Served by Litigating the Contract Claims and Title Claims Together (*Curtis* Factor 10)

Regardless of whether or not the automatic stay applies to the Title Claims, the Debtors do not oppose permitting them to move forward as part of the State Court Action toward trial in May 2020. However, the Contract Claims can and should be bifurcated from the Title Claims, and the Debtors respectfully submit that relief from stay is not appropriate with respect to them because moving forward with the State Court Action would be judicially inefficient.

#### a. The Contract Claims Are Severable from the Title Claims

The Contract Claims are factually distinct and severable from the Title Claims. To the extent the Contract has any relevance to the Vlazakis Defendants' defense to the Utility's encroachment claims and request for an injunction, it would be due only to the Vlazakis Defendants' estoppel-type arguments. The Vlazakis Defendants' claims for breach of contract, negligence and resulting damages, all of which are based on conduct and events that post-date the Utility's discovery of the

---

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f); (10) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to a point where the parties are prepared for trial; and (12) the impact of the stay and the "balance of hurt." 40 B.R. at 799-800.

encroachment and the formation of the Contract, are entirely separate and distinct from any issues that are potentially relevant to an adjudication of the Utility's claims. Lee Decl. at para. 16.

While there might be an argument to the contrary with regard to the proposed claim for specific performance, the Debtors will move to reject the Contract. Upon rejection, specific performance of the Contract no longer will be available to the Vlazakis Defendants. *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306 n. 5 (9th Cir. 1989) ("Specific performance of a rejected executory contract cannot be required."); *In re A.J. Lane & Co.*, 107 B.R. 435, 439 (Bankr. D. Mass. 1989) (right of specific performance subordinate to debtor's rejection rights).

Post-rejection, the Vlazakis Defendants only will have a claim for (money) damages against the Utility. *See, e.g.*, *Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 407 (7th Cir. 1995) (holding that "rejection avoids specific performance" and results only in a claim for damages); *In re CB Holding Corp.*, 448 B.R. 684, 690 (Bankr. D. Del. 2011) (where no right to specific performance, only a pre-petition claim for rejection damages). The Proof of Claim seeks $500,000 in damages for breach of the Contract, which can be adequately addressed through the bankruptcy claims process.

Several other claims the Vlazakis Defendants seek to bring, for prescriptive easement and adverse possession, may also carry the right to a jury trial. The Utility plans to bring a summary adjudication motion in the State Court Action to remove these. Lee Decl. at para. 20. The Utility believes such a motion is meritorious and would have a reasonable prospect of success. *Id*.

        b.    <u>It Would Be Inefficient to Litigate the Contract Claims and Title Claims Together</u>

If the Contract Claims are eliminated from the Superior Court Action and Utility's summary adjudication motion as to the prescriptive easement and related claims is successful, there would be no need for a jury trial in the State Court Action. The remaining Title Claims then can be adjudicated by the State Court in the bench trial scheduled for May 2020. This approach will conserve judicial

resources: the Vlazakis Defendants' damage claims can be resolved through the claims process in this Court, and the State Court can proceed with a bench trial on the Title Claims.

### 2. The "Balance of Hurt" Weighs in Favor of Maintaining the May 2020 Trial Date (*Curtis* Factor 12)

This factor ordinarily looks at the impact of the requested stay relief on the administration of the estate, and precludes such relief where there would be even slight interference with the administration of the estate absent commensurate benefit. *Curtis*, 40 B.R. at 806. Here, the interference at issue would be less with the administration of the Debtors' estates and more with the negative effects of further delays to the project should a jury trial be necessary, such as: (1) the health and safety impact when the scheduled gas-line inspections are not carried out pursuant to CPUC regulatory requirements and Utility commitments; (2) unacceptable levels of risk arising from delayed inspections of the 24" high-pressure gas lines; and (3) compromise of the Utility's ability to utilize the critical shut-off valves to speed the response to reported gas leaks or related risks. RJN Ex. A at para. 11. The Utility already has had to delay the project for more than two years. *Id*. Any further delay would magnify these negative effects.

On the other hand, there is no commensurate benefit to the Vlazakis Defendants to delaying the State Court Action for a jury trial. The Vlazakis Defendants allege that if they are not permitted to file the Cross-Complaint now, the claims therein will be forever barred. Motion at 9. This is demonstrably not correct. The Proof of Claim was timely filed and is based upon "[b]reach of written agreement to undertake structural upgrades to common wall at 751 Third Street, Oakland, CA 94607." The Contract Claims are not barred at all; they can be through the normal bankruptcy claims process. Furthermore, as outlined above, the Vlazakis Defendants have delayed at every stage of this dispute, delaying the project in the face of a strong public safety motive to proceed expeditiously. They should not be allowed to cause further delay when a complete remedy exists before this Court. See, e.g., In re Smith, 389 B.R. 902, 920 (Bankr. D. Nev. 2008) (movant's three-month wait from petition date to filing stay relief motion "belies [his] stated desire for a swift resolution.").

In conclusion, the Debtors respectfully request that the Court deny the Motion and decline to modify the automatic stay with respect to the Contract Claims.

Dated: December 12, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVNUTTI LLP**

By:    */s/ Peter J. Benvenutti*
       Peter J. Benvenutti

*Attorneys for Debtors and Debtors in Possession*