**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' PRELIMINARY OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT THE COURTS OF THE STATE OF CALIFORNIA TO CONDUCT A JURY TRIAL AND RELATED PRETRIAL AND POST TRIAL MATTERS IN CONNECTION WITH THE GHOST SHIP FIRE CASES**<br><br>Relates to Dkt. Nos. 4875-4879, 4945, 5036<br><br>Date: December 17, 2019<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102 |

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..................................................................................1

II. FACTUAL BACKGROUND....................................................................................3

III. ARGUMENT ............................................................................................................4

    A. The "Balance of Hurt" Necessitates Maintaining the Stay (*Curtis* Factor 12)..5

        1. Lifting the Stay is Inappropriate Given the Tort Claimant RSA and the Treatment of the Ghost Ship Plaintiffs' Claims under the Amended Plan ..........................................................................................................5

        2. Litigation of the Ghost Ship Action Risks Harm to the Debtors' Reorganization Efforts .............................................................................6

        3. Denying the Motion Will Not Prejudice the Ghost Ship Plaintiffs .......8

    B. The Other *Curtis* Factors upon Which Movant Relies are Unavailing..............9

        1. No Specialized Tribunal is Adjudicating the Ghost Ship Action (*Curtis* Factor 4)........................................................................................9

        2. The Debtors' Insurance Has Not Yet Assumed Full Financial Responsibility for the Ghost Ship Action (*Curtis* Factor 5) ................10

        3. The Interests of Judicial Economy Favor Maintaining the Stay (Curtis Factor 11) ...............................................................................................11

        4. The Parties are Not Ready for Trial (Curtis Factor 12) ........................11

IV. CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*In re Am. Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D. Cal. 2015) ...........12

*In re Baleine, LP*, 2015 U.S. Dist. LEXIS 140145 (C.D. Cal. Oct. 13, 2015) ...............12

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) .................. passim

*In re Dampier*, 2015 WL 6756446 (10th Cir. BAP Nov. 5, 2015) ..................12

*In re Kronemyer*, 405 B.R. 915 (B.A.P. 9th Cir. 2009) ..................4

*In re Landmark Fence Co.*, 2011 U.S. Dist. LEXIS 150928 (C.D. Cal. Dec. 9, 2011) ...............5, 10

*In re MBF Inspection Servs., Inc.*, 2018 WL 6584286 (Bankr. D. N.M. Dec. 12, 2018) ................12

*In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551 (Bankr. C.D. Cal. 2004) ...........................4

*In re Sunland, Inc.*, 508 B.R. 739 (Bankr. D. N.M. 2014)..................12

*In re Torres-Montoya*, 2017 WL 5713198 (Bankr. D. N.M. Nov. 21, 2017) ..............10

*In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir. 1990)..................4

**Statutes & Rules**

11 U.S.C. § 362(d) ...................... passim

**Other Authorities**

3 Collier on Bankruptcy ¶ 362.10 (2019) ...................4

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pacific Gas and Electric Company (the "**Utility**") and PG&E Corporation ("**PG&E Corp.**", and together with the Utility, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully submit this Preliminary Opposition (the "**Opposition**") to the Motion for Relief from Automatic Stay to Permit the Courts of the Stay of California to Conduct a Jury Trial and Related Pretrial and Post Trial Matters in Connection with the Ghost Ship Fire Cases, filed on November 26, 2019 [Docket No. 4875] (the "**Motion**"), by the Plaintiffs' Executive Committee appointed by the Superior Court of the State of California, in and for the County of Alameda, in Case No. RG16843631 (DM) and related cases (the "**Ghost Ship Executive Committee**" or "**Movant**").[1] The Ghost Ship Executive Committee seeks relief from the automatic stay, pursuant to section 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), to prosecute against the Debtors the claims of plaintiffs (the "**Ghost Ship Plaintiffs**") pending in the Superior Court of the State of California, in and for the County of Alameda (the "**State Court**"), in the matter of *In re Ghost Ship Fire Litigation,* Case No. RG16843631 (and Related Cases) (the "**Ghost Ship Action**"). In support of the Opposition, the Debtors submit the Declaration of Elizabeth Collier (the **"Collier Declaration"**), filed contemporaneously herewith.

## I. PRELIMINARY STATEMENT

The Court should deny the Motion because allowing the Ghost Ship Action to go forward would significantly prejudice the Debtors and would undermine the significant settlement the Debtors have reached with the TCC and other stakeholders to resolve the Debtors' aggregate wildfire liability to individual claimants, as well as the broad consensus the Debtors have achieved in these Chapter 11 Cases. Moreover, modification of the stay as requested is completely antithetical to the intent and purpose of section 362 of the Bankruptcy Code and the orderly administration of these Chapter 11 Cases. As the Court is aware, the Debtors recently entered into

---

[1] This Opposition also responds to the Joinder of the Official Committee of Tort Claimants (the "**TCC**") to Ghost Ship Plaintiffs' Motion for Relief from Stay, filed Dec. 2, 2019 [Dkt. No. 4945] (the "**TCC Joinder**"), and the Joinder in Motion for Relief from Automatic Stay in Connection with the Ghost Ship Fire Claims, filed Dec. 9, 2019 [Dkt. No. 5036].

a settlement agreement (the "**Tort Claimant RSA**") with the TCC, law firms representing individuals holding approximately 70% in number of prepetition fire claims filed against the Debtors, and certain funds and accounts managed by Abrams Capital management, LP, and Knighthead Capital Management, LLP (the "**Shareholder Proponents**"). The Tort Claimant RSA will resolve over $36 billion in asserted prepetition fire liabilities (the "**Fire Victim Claims**"), including the Ghost Ship Plaintiffs' claims, through the Debtors' contribution of approximately $13.5 billion in cash and stock and the assignment of certain rights and causes of action to a trust established for the benefit of the fire claimants (the "**Fire Victim Trust**"). The settlement, which is embodied in the Tort Claimant RSA and the term sheet annexed thereto, will be implemented pursuant to, and incorporated in, the amended plan of reorganization to be filed shortly by the Debtors and Shareholder Proponents (the "**Amended Plan**"). The significance of what has been achieved in the Tort Claimant RSA cannot be overstated. Having reached a settlement with the TCC and law firms representing an overwhelming number of the individual fire claimants, no real obstacles remain to a swift confirmation of the Amended Plan and a successful exit from these Chapter 11 Cases well within the June 30, 2020 deadline established under AB 1054.

The requested stay relief is flatly inconsistent with the Amended Plan, pursuant to which the Ghost Ship Plaintiffs' claims and all other Fire Victim Claims will be channeled to a Fire Victim Trust, to be satisfied solely from the Fire Victim Trust's assets, without further recourse to the Debtors. If the stay is lifted, the Debtors will be forced to bear the burden, cost, and expense of litigating the Ghost Ship Plaintiffs' claims, which is completely contrary to the terms of the Amended Plan and to the manner in which claims such as those of the Ghost Ship Plaintiffs are addressed and resolved in cases under chapter 11 of the Bankruptcy Code.

Permitting the Ghost Ship Action to proceed at this critical juncture would unduly burden the Debtors and their employees, who are dedicating their time and resources on a variety of fronts to accomplish all that is necessary to confirm the Amended Plan by June 30, 2020, as required by AB 1054. Any unnecessary diversion of the Debtors' personnel from these matters would be detrimental to all parties in interest.

Additionally, as discussed further below, lifting the stay and compelling the Debtors to proceed to a trial on the same schedule as the other parties to the Ghost Ship Action, who have been litigating that matter for nearly a year while the Debtors have been administering these Chapter 11 Cases, would place the Debtors at a significant disadvantage in the underlying proceedings.

In the Court's recent decision in which it continued a motion to lift the stay, it acknowledged that the "Debtors and their litigation counsel have very full plates."[2] The burden on the Debtors at this critical juncture of these Chapter 11 Cases is even more apparent, and as such, the Court should reach the same conclusion here.

In sum, lifting the stay and allowing the Ghost Ship Action to proceed would be inconsistent with the Amended Plan, would unnecessarily and detrimentally burden the Debtors, and perhaps most importantly, would be at odds with the intent and purpose of section 362. Leaving the stay in place, however, would not harm the Ghost Ship Plaintiffs, as doing so would simply allow for the liquidation and treatment of their claims in the orderly manner contemplated by the Amended Plan.

For these reasons, and as more fully set forth below, the Debtors respectfully request that the Court deny the Motion.

## II. FACTUAL BACKGROUND

On December 2, 2019, a fire broke out during an event at a warehouse known as the "Ghost Ship" in Oakland, California (the "**Ghost Ship Fire**"). As of October 16, 2019, 53 individual lawsuits have been filed arising out the Ghost Ship Fire.[3] The State Court consolidated these lawsuits into what is now the Ghost Ship Action and designated the matter as a "Complex Case." *See id.* ¶¶ 9-10. Numerous entities and individuals are defendants in the Ghost Ship Action, including, among others, the Debtors, the City of Oakland, and the owners of the warehouse. *See id.* ¶ 14. The current operative complaint against the Debtors is the Second Amended Master Complaint, filed on January 19, 2019 (the "**Operative Complaint**"). *See id.* ¶ 17. The Operative

---

[2] *See* Docket Text Order, dated Nov. 10, 2019, regarding Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1), filed by Tiger Natural Gas, Inc. [Dkt No 4322].

[3] *See* Declaration of Mary E. Alexander in Support of Motion, dated November 26, 2019 [Dkt. No. 4877] (the "**Alexander Declaration**"), ¶ 9.

Complaint is 121 pages long and asserts the following claims against the Debtors: (1) negligence; (2) premises liability; (3) negligent hiring, supervision, training, and/or retention; (4) public nuisance; (5) strict liability; (6) survival; (7) negligent infliction of emotional distress; and (8) intentional infliction of emotional distress. *See id.*, Ex. 4.

The Debtors filed these Chapter 11 Cases on January 29, 2019 (the "**Petition Date**"). As a result, the Ghost Ship Action is currently stayed as against the Debtors pursuant to section 362(a) of the Bankruptcy Code. The Ghost Ship Action is currently scheduled to proceed to trial on May 26, 2020, against the remaining defendants in the Ghost Ship Action. The City of Oakland has filed a motion, scheduled to be heard on December 20, 2019, requesting that the State Court continue the trial until September 2020.[4]

### III. ARGUMENT

Section 362(d)(1) of the Bankruptcy Code authorizes a court to modify or terminate the automatic stay for "cause," which "has no clear definition and is determined on a case-by-case basis." *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted). The party requesting stay relief bears the burden of making a *prima facie* showing of cause under section 362(d)(1). *See In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551, 553 (Bankr. C.D. Cal. 2004); 3 Collier on Bankruptcy ¶ 362.10 (2019) ("Failure to prove a prima facie case requires denial of the requested relief."). In determining whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts analyze the twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984);[5] *see also In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree

---

[4] *See* Ghost Ship Executive Committee's Supplement to Motion, dated December 3, 2019 [Dkt. No. 4962].

[5] The *Curtis* factors are: (1) whether the relief will result in partial or complete resolution of issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination;

that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum."). As discussed below, the most relevant *Curtis* factors mandate keeping the stay in place and denying the Motion.

### A. The "Balance of Hurt" Necessitates Maintaining the Stay (*Curtis* Factor 12)

As the Ghost Ship Plaintiffs concede, the "most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." Mot. at 14 (quoting *In re Curtis*, 40 B.R. at 806). And as the Curtis Court further noted, "*even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit.*" 40 B.R. at 806 (emphasis added). Indeed, "[i]t is not enough for the creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted." *In re Landmark Fence Co.*, No. 11-00934, 2011 WL 6826253, at *9 (C.D. Cal. Dec. 9, 2011). The Motion does not and cannot make this showing.

#### 1. Lifting the Stay is Inappropriate Given the Tort Claimant RSA and the Treatment of the Ghost Ship Plaintiffs' Claims under the Amended Plan

Lifting the stay runs directly counter to the process that the Debtors and the TCC (of which certain Ghost Ship Plaintiffs are members) have agreed to for resolving the Ghost Ship Plaintiffs' claims. Under the Amended Plan, the Debtors' funding of the Fire Victim Trust with $13.5 billion in cash and stock will satisfy all Fire Victim Claims, including the Ghost Ship Plaintiffs' claims.[6] Those claims will be channeled to, and liquidated and resolved by, the Fire Victim Trust. *See id.*

---

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f); (10) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to a point where the parties are prepared for trial; and (12) the impact of the stay and the "balance of hurt." 40 B.R. at 799-800.

[6] *See* Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors and TCC to Enter into Restructuring Support Agreement with the TCC, Consenting Fire Claimant Professionals, and Shareholder Proponents, and (II) Granting Related Relief, dated Dec. 9, 2019 [Dkt. No. 5038], Ex. A..

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Under these circumstances, there is no reason to modify the stay. Indeed, under any circumstances, the Ghost Ship Plaintiffs' claims should be addressed in a chapter 11 plan rather than liquidated in separate proceedings.

### 2. Litigation of the Ghost Ship Action Risks Harm to the Debtors' Reorganization Efforts

If the Ghost Ship Action were to proceed against the Debtors, it would impose a significant and inappropriate burden on the administration of these Chapter 11 Cases.

The Ghost Ship Action is a highly complex litigation comprised of fifty-three (53) individual lawsuits commenced by more than 70 plaintiffs, including representatives of 33 decedents, against more than 10 defendants. *See* Collier Decl. ¶ 6. The Ghost Ship Action involves a complicated fact pattern that spans a number of years. *See id*. The Ghost Ship Plaintiffs assert various theories of legal liability against the numerous Ghost Ship Action defendants. *See id*. These theories and the facts on which they are premised differ significantly depending on the defendant. *See id*. Highlighting the complex and burdensome nature of the Ghost Ship Action is the fact that, as the Ghost Ship Executive Committee notes, litigation of the case to date has required at least 15 Case Management Conferences and 13 Informal Discovery Conferences. *See* Alexander Decl. ¶ 10. Lifting the stay would require the Debtors to parachute into the middle of the case, get up to speed on a year of discovery and other activities, and otherwise fully engage in this complex litigation.

If the Ghost Ship Action were to proceed to trial against the Debtors in 2020, the Debtors would be at a significant disadvantage because they have not been active participants in the case since January 29, 2019. *See* Collier Decl. ¶ 7. During the past year, the other parties to the Ghost Ship Action have been conducting discovery, filing pleadings, and proceeding with other aspects of litigation that are customary to a complex, multi-party matter. *See id*.

With respect to discovery specifically, and as it relates to just one Ghost Ship Action defendant—the City of Oakland ("**Oakland**")—since January 29, 2019, the Ghost Ship Plaintiffs have deposed at least seven Oakland police officers, several Oakland fire department employees, and one Oakland planning and building department employee. *See* Collier Decl. ¶ 8. They also have served numerous additional deposition notices of Oakland employees to take place shortly.

*See id.* In addition, the Ghost Ship plaintiffs have requested and Oakland has produced a significant number of documents. *See id.* Moreover, in recent months, the other Ghost Ship Action defendants have taken depositions of Ghost Ship Plaintiffs who suffered personal injuries, and have begun taking depositions of Ghost Ship Plaintiffs who are decedents' representatives. *See id.*

It is self-evident from the significant amount of litigation activity that has occurred since the implementation of the automatic stay nearly a year ago that the other parties to the Ghost Ship Action have had the opportunity to develop their relevant their legal claims and defenses, while the Debtors have not. As a result of the stay, however, neither the Debtors nor their counsel have participated in any depositions or document discovery during this extensive pre-trial discovery period. Nor have Debtors' counsel extensively reviewed any pleadings, discovery requests or responses, or documentary or testimonial evidence that the parties have filed, served or produced since January 29, 2019. *See* Collier Decl. ¶ 9. The burden associated with the in-depth study, on an expedited timeframe, of these materials would be significant, s*ee id.*, and should not fall on the Debtors, particularly at this juncture of these Chapter 11 Cases and because these claims should be addressed under the Amended Plan in a manner similar to other Fire Claims.

In addition to analyzing the significant developments in the factual record and the evolution of the parties' legal theories since January 29, 2019, the Debtors would need to begin or complete these same litigation tasks for themselves, and do so within a highly compressed timeframe. *See* Collier Decl. ¶ 10. Among other activities, the Debtors would need to respond to inevitable further discovery requests from the Ghost Ship Plaintiffs, who prior to the implementation of the automatic stay had sought wide-ranging information, through document requests, interrogatories, and depositions. *See id.* The Debtors also would need to undertake their own affirmative fact discovery efforts, conduct expert discovery and related Daubert briefing, submit and potentially defend motions for summary judgment, and prepare for and participate in what would likely be a lengthy and complex trial, which would likely involve dozens of witnesses, as well as significant pre- and post-trial briefing. *See id.*

Given the highly complex nature of the relevant legal and factual issues and the accelerated timeframe within which the Debtors would need to prepare for trial, allowing the Ghost Ship Action

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to proceed would force the Debtors, their senior management, and their Law Department to devote significant resources to the defense of the lawsuit that otherwise would be devoted to the successful administration of these Chapter 11 Cases. *See* Collier Decl. ¶ 11. Diversion of such resources at this critical time during which the Debtors are focused squarely on tasks that will further their successful reorganization, to the ultimate benefit of all their stakeholders, should not be permitted and is antithetical to the automatic stay provisions of the Bankruptcy Code.[7]

In these Chapter 11 Cases alone, the Debtors are currently or will soon be fully engaged in the following work streams with respect to the Amended Plan, among many others: (i) briefing and arguing the Plan-related issues currently before the Court; (ii) preparing and filing a disclosure statement; (iii) soliciting votes on the Plan from 100,000 plus creditors and interest holders; (iv) negotiating and finalizing the exit financing documents; (iv) drafting, negotiating and filing all of the other plan transaction documents, including documents necessary to establish and govern the various trusts; and (v) reviewing the Debtors' thousands of executory contracts and leases and preparing schedules of those executory contracts and leases to be assumed and rejected, and dealing with related cure objections. *See* Collier Decl. ¶ 12.

The added burden associated with the Ghost Ship Action would distract the Debtors from the tasks. *See* Collier Decl. ¶ 13. Furthermore, multiple others creditors undoubtedly would view a decision granting the Motion as an invitation to seek stay relief themselves, further increasing the Debtors' burden. This result would compound the burden associated with the Ghost Ship Action itself.

### 3. Denying the Motion Will Not Prejudice the Ghost Ship Plaintiffs

In stark contrast to the significant risk of harm to the Debtors should the Ghost Ship Action move forward, no adverse consequences would befall the Ghost Ship Plaintiffs if the stay remains in place. Consistent with the manner in which other similar claims are to be treated, the Ghost Ship Plaintiffs' claims will be channeled to the Fire Victim Trust and resolved pursuant to the trust

---

[7] Contrary to the Ghost Ship Executive Committee's assertion, *see* Mot. 14-15, these facts demonstrate that Curtis factor 2, *i.e.*, the degree to which the Ghost Ship Action would interfere with these Chapter 11 Cases, weighs against lifting the stay.

procedures.  There is no reason why the Ghost Ship Plaintiffs' claims should be treated differently than other Fire Claims.

Even putting aside the Amended Plan, the Ghost Ship Plaintiffs would not incur any prejudice if the Court denies the Motion, and certainly not enough to outweigh the harm that the Debtors would incur.  The Movant contends that Ghost Ship Action must proceed against the Debtors at the same time as the other defendants to avoid the risk of piecemeal litigation.  *See* Mot. at 19-20.  However, even if the Ghost Ship Plaintiffs someday had to proceed separately against the Debtors in State Court, they would not be significantly burdened, as their theories of legal liability against Debtors, and the facts on which those theories are premised, differ significantly from their claims as to other defendants.  *See* Collier Decl. ¶ 6.  Indeed, if piecemeal litigation would in fact result in significant harm to the Ghost Ship Plaintiffs, they would surely have sought to lift the stay at some point prior to ten months after the Petition Date.  Courts have found that such delay is a significant factor that points toward leaving the stay in place.  *See, e.g., In re Smith*, 389 B.R. 902, 920 (Bankr. D. Nev. 2008) (movant's three month wait from petition date to filing relief from stay motion "belies [his] stated desire for swift resolution . . . [a]gainst this background, the fact that trial was imminent in California when [Debtor] filed his case recedes significantly in relevance.").

### B. The Other *Curtis* Factors upon Which Movant Relies are Unavailing

The Ghost Ship Executive Committee states that *Curtis* factors 1, 4, 5, 7, 10 and 11 dictate granting relief from the stay, but factors 4, 5, 10 and 11, in fact, favor leaving the stay in place, and factors 1 and 7 do not come close to outweighing the factors that militate against stay relief.[8]

#### 1. No Specialized Tribunal is Adjudicating the Ghost Ship Action (*Curtis* Factor 4)

The Ghost Ship Executive Committee contends that this factor weighs in favor of granting relief from the automatic stay because the State Court has been presiding over the Ghost Ship Action since its inception.  *See* Mot. at 16.  The analysis that must be undertaken with respect to this factor, however, is not whether the State Court has previously presided over the Ghost Ship Action,  but

---

[8] The Debtors agree with Movant that *Curtis* factors 3, 6, 8 and 9 do not apply to the Motion.

whether the State Court is a "specialized tribunal." Several Ninth Circuit courts have ruled that state courts do not constitute "specialized tribunals." *See, e.g.*, *In re Landmark Fence Co.*, 2011 WL 6826253, at *6 (holding that the bankruptcy court did not clearly err in finding that "the state court is a court of general jurisdiction" and "not a specialized tribunal"); *In re Torres-Montoya*, No. 17-11823, 2017 WL 5713198, at *3 (Bankr. D.N.M. Nov. 21, 2017) ("The state court is not a specialized tribunal."). The fact that State Courts may try more mass tort cases than federal courts does nothing to tilt this factor in Movant's favor. *See Landmark Fence*, 2011 WL 6826253, at *6 (holding that it was not clear error to find that state courts are not "specialized tribunals" even if they have more expertise in trying certain claims). Indeed, the District Court here was set to estimate certain wildfire claims in the estimation proceedings. In any event, the relevant comparison for this purpose is not between the State Court and this Court, but between the State Court and the Fire Victim Trust procedures, which will produce an efficient and cost-effective resolution of the claims of all Fire Victims, including the Ghost Ship Plaintiffs. As such, this factor counts against granting the requested relief.

### 2. The Debtors' Insurance Has Not Yet Assumed Full Financial Responsibility for the Ghost Ship Action (*Curtis* Factor 5)

The Ghost Ship Executive Committee is correct in its assertion that "there is ample insurance to cover . . . the Ghost Ship Litigation," however it is wrong in its supposition that "a substantial portion of the self-insured retention was exhausted pre-petition." *See* Mot. at 16-17. The retention here is not exhausted and the Debtors will have to expend millions of dollars before accessing the insurance. While the Debtors have general liability insurance ("**GL Insurance**") that they expect will provide coverage for their losses, including attorneys' fees, that are incurred in connection with the Ghost Ship Action, in order to recover for such losses the Debtors must first satisfy an applicable $10 million self-insured retention. *See* Collier Decl. ¶ 14. To date, the Debtors have incurred approximately $1.6 million in losses in connection with the Ghost Ship Action. *See id*. Thus, were the Ghost Ship Action to proceed against the Debtors, the next approximately $8.6 million in losses which the Debtors incur would be borne directly by the Debtors' estates.

This factor therefore weighs in favor of leaving the stay in place.[9]

### 3. The Interests of Judicial Economy Favor Maintaining the Stay (Curtis Factor 11)

The Ghost Ship Executive Committee argues that the Court should lift the stay because the State Court "is well positioned to continue to preside over the Ghost Ship Litigation" and because, if the Court maintains the stay, "a jury trial against the Debtors could be delayed for years." *See* Mot. at 18. These considerations are not relevant in light of the settlement with the TCC and the Amended Plan. As discussed above, upon the Debtors' funding of the Fire Victim Trust contemplated by the Amended Plan, the Ghost Ship Plaintiffs will release the Debtors from their claims and channel those claims to the trust for resolution in accordance with the streamlined and efficient trust procedures. As such, the most "expeditious and economical determination of litigation for the parties," *In re Curtis*, 40 B.R. at 800, will be for the Ghost Ship Plaintiffs to resolve their claims under the procedures contemplated by the Amended Plan. This factor thus militates in favor of denying the requested relief.

### 4. The Parties are Not Ready for Trial (Curtis Factor 12)

The Ghost Ship Executive Committee submits that, "because the trial for the Ghost Ship Litigation is scheduled to commence on May 26, 2020," the Debtors "will have ample time to prepare for trial." Mot. at 18-19. As discussed at length above, however, the Debtors are nowhere near ready for trial in the Ghost Ship Action, and forcing them to prepare for one in such an expedited timeframe, amidst the various other matters to which they are attending, would significantly disadvantage them in the underlying proceeding. Indeed, the Debtors would have to catch up on nearly a year of active litigation and discovery, including re-taking a significant number of depositions to which they were not able to participate. *See id.*

Courts have regularly found this factor to weigh against lifting the stay in situations where

---

[9] The TCC contends that the Ghost Ship Action should proceed because the "Court has granted relief from stay for Valero to proceed against the same 2016 insurance [Dkt. No. 3819]." TCC Joinder at 2. The continuation of the Valero litigation has no relevance here, however, as Valero's claims are not being channeled to the Fire Victim Trust, and the underlying Valero matter is not nearly as complex or burdensome as the Ghost Ship Action.

significant pre-trial litigation activity remains as of the bankruptcy filing, as it does for the Debtors in the Ghost Ship Action. *See, e.g., In re Sunland, Inc.*, 508 B.R. 739, 744-745 (Bankr. D. N.M. 2014) (no stay relief where trial where no dispositive motions filed); *In re MBF Inspection Servs., Inc.*, No. 18-11579-T11, 2018 WL 6584286, at *5 (Bankr. D.N.M. Dec. 12, 2018) (pending cross motions for partial summary judgment weighs against stay relief). Moreover, courts have generally only found readiness for trial to weigh in favor of lifting the stay where trial was imminent as of the Debtors' filing for bankruptcy. *See, e.g., In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 742 (Bankr. C.D. Cal. 2015) (five weeks from petition date to scheduled trial date); *In re Baleine*, LP, No. 13-27610, 2015 WL 5979948, at *12 (C.D. Cal. Oct. 13, 2015) (three months); *In re Dampier*, No. BAP CO-15-006, 2015 WL 6756446, at *7 (10th Cir. BAP Nov. 5, 2015) (discovery completed and foreign proceeding set for trial less than three weeks after petition date). This is because the Debtors would then have participated in all of the discovery and pre-trial proceedings, which is not the case here.

This factor weighs against lifting the stay.

### IV. CONCLUSION

The Debtors respectfully submit that the Court should deny the Motion.

Dated: December 12, 2019     **WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:  */s/ Theodore E. Tsekerides*
      Theodore E. Tsekerides

*Attorneys for Debtors and Debtors in Possession*