**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF ELIZABETH COLLIER IN SUPPORT OF DEBTORS' PRELIMINARY OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT THE COURTS OF THE STATE OF CALIFORNIA TO CONDUCT A JURY TRIAL AND RELATED PRETRIAL AND POST TRIAL MATTERS IN CONNECTION WITH THE GHOST SHIP FIRE CASES**<br><br>Date: December 17, 2019<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

I, Elizabeth Collier, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am employed as Managing Counsel, Litigation, in the Law Department of Pacific Gas and Electric Company (the "**Utility**"), a wholly-owned subsidiary of PG&E Corporation ("**PG&E Corp.**" and together with Utility, the "**Debtors**" in the above-captioned proceedings (the "**Chapter 11 Cases**")). In my current role, I am responsible for the development and successful implementation of strategy for the active and potential litigation facing the Debtors. I also supervise the eight (8) other lawyers in the Litigation Group (a component of the Law Department), oversee their assignments, and monitor their workloads. My responsibilities as Managing Counsel require me on a regular basis to assess, and attempt to balance, the demands on the lawyers in the Litigation Group, and to ensure that those lawyers have the capacity needed to satisfy those demands.

2. I joined the Utility in 2001 and have held various positions of increasing responsibility working on litigation, regulatory, and commercial matters since that time. I obtained my Juris Doctorate from University of California, Hastings College of the Law in 1990 and was admitted to the State Bar of California that same year.

3. I submit this declaration in support of the Debtors' Preliminary Opposition to the Motion for Relief from Automatic Stay to Permit the Courts of the Stay of California to Conduct a Jury Related Pretrial and Post Trial Matters in Connection with the Ghost Ship Fire Cases, dated Nov. 26, 2019 [Docket No. 4875], filed by the Plaintiffs' Executive Committee appointed by the Superior Court of the State of California, in and for the County of Alameda, in Case No. RG16843631 (DM) and related cases (the "**Ghost Ship Executive Committee**"). The Ghost Ship Executive Committee seeks relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code to prosecute claims of plaintiffs (the "**Ghost Ship Plaintiffs**") against the Debtors in the case pending in the Superior Court of the State of California, in and for the County of Alameda, in the matter of *In re Ghost Ship Fir Litigation,* Case No. RG16843631 (and Related Cases) (the "**Ghost Ship Action**").

4. I am authorized to submit this declaration on behalf of the Debtors and, if called upon, would testify to the facts set forth herein.

5. The facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors, or my opinion based upon experience, knowledge, and information concerning the matters discussed herein.

6. The Ghost Ship Action is a highly complex litigation comprised of fifty-three (53) individual lawsuits commenced by more than 70 plaintiffs, including representatives of 33 decedents, against more than 10 defendants. The Ghost Ship Action involves a complicated fact pattern that spans a number of years. The Ghost Ship Plaintiffs assert various theories of legal liability against the numerous Ghost Ship Action defendants. These theories and the facts on which they are premised differ significantly depending on the defendant.

7. If the Ghost Ship Action were to proceed to trial against the Debtors in 2020, the Debtors would be at a significant disadvantage because they have not been active participants in the case since January 29, 2019. During the past year, the other parties to the Ghost Ship Action have been conducting discovery, filing pleadings, and proceeding with other aspects of litigation that are customary to a complex, multi-party matter.

8. With respect to discovery specifically, and as it relates to just one Ghost Ship Action defendant—the City of Oakland ("**Oakland**")—since January 29, 2019, the Ghost Ship Plaintiffs have deposed at least seven Oakland police officers, several Oakland fire department employees, and one Oakland planning and building department employee. They also have served numerous additional deposition notices of Oakland employees to take place shortly. In addition, the Ghost Ship plaintiffs have requested and Oakland has produced a significant number of documents. Moreover, in recent months, the other Ghost Ship Action defendants have taken depositions of Ghost Ship Plaintiffs who suffered personal injuries, and have begun taking depositions of Ghost Ship Plaintiffs who are decedents' representatives.

9. The Debtors' counsel have not extensively reviewed any pleadings, discovery requests or responses, or documentary or testimonial evidence that the parties have filed, served or

produced since January 29, 2019. The burden associated with the in-depth study, on an expedited timeframe, of these materials would be significant.

10. In addition to analyzing the significant developments in the factual record and the evolution of the parties' legal theories since January 29, 2019, the Debtors would need to begin or complete these same litigation tasks for themselves, and do so within a highly compressed timeframe. Among other activities, the Debtors would need to respond to inevitable further discovery requests from the Ghost Ship Plaintiffs, who prior to the implementation of the automatic stay had sought wide-ranging information, through document requests, interrogatories, and depositions. The Debtors also would need to undertake their own affirmative fact discovery efforts, conduct expert discovery and related Daubert briefing, submit and potentially defend motions for summary judgment, and prepare for and participate in what would likely be a lengthy and complex trial, which would likely involve dozens of witnesses, as well as significant pre- and post-trial briefing.

11. Given the highly complex nature of the relevant legal and factual issues and the accelerated timeframe within which the Debtors would need to prepare for trial, allowing the Ghost Ship Action to proceed would force the Debtors, their senior management, and their Law Department to devote significant resources to the defense of the lawsuit that otherwise would be devoted to the successful administration of these Chapter 11 Cases.

12. In these Chapter 11 Cases alone, the Debtors are currently or will soon be fully engaged in the following work streams with respect to the Amended Plan, among many others: (i) briefing and arguing the Plan-related issues currently before the Court; (ii) preparing and filing a disclosure statement; (iii) soliciting votes on the Plan from 100,000 plus creditors and interest holders; (iv) negotiating and finalizing the exit financing documents; (iv) drafting, negotiating and filing all of the other plan transaction documents, including documents necessary to establish and govern the various trusts; and (v) reviewing the Debtors' thousands of executory contracts and leases and preparing schedules of those executory contracts and leases to be assumed and rejected, and dealing with related cure objections.

13. The added burden associated with the Ghost Ship Action would distract the Debtors from the tasks.

14. While the Debtors have general liability insurance ("**GL Insurance**") that they expect will provide coverage for their losses, including attorneys' fees, that are incurred in connection with the Ghost Ship Action, in order to recover for such losses the Debtors must first satisfy an applicable $10 million self-insured retention. To date, the Debtors have incurred approximately $1.6 million in losses in connection with the Ghost Ship Action.

Dated: December 12, 2019     */s/ Elizabeth Collier*
                              Elizabeth Collier

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119