**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' PRELIMINARY**<br>**OPPOSITION TO TODD HEARN'S**<br>**MOTION FOR RELIEF FROM**<br>**AUTOMATIC STAY**<br><br>Relates to Dkt. Nos. 4820, 4821<br><br>Date:  December 17, 2019<br>Time:  10:00 a.m.<br>Place:  United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

1    Pacific Gas and Electric Company (the "**Utility**"), and PG&E Corporation ("**PG&E Corp.**",

2    and together with the Utility, the "**Debtors**" in the above-captioned Chapter 11 Cases (the "**Chapter**

3    **11 Cases**")), respectfully submit this preliminary opposition (the "**Opposition**") to the Motion for

4    Relief from Automatic Stay [Docket No. 4820] (the "**Motion**"), filed by Todd Hearn ("**Hearn**").

5    Hearn seeks relief from the automatic stay pursuant to section 362(d) of title 11 of the United States

6    Code (the "**Bankruptcy Code**") to commence a lawsuit (the "**Proposed Lawsuit**") against the

7    Utility and twenty-five (25) unnamed defendants in the Superior Court of California in and for the

8    County of Napa (the "**State Court**").  In support of the Opposition, the Utility submits the

9    Declarations of Stacy Campos (the "**Campos Declaration**") and Theodore E. Tsekerides (the

10   "**Tsekerides Declaration**"), filed contemporaneously herewith.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ............................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

III.  ARGUMENT .....................................................................................................4

      A.    The Salient Curtis Factors Dictate that the Court Should Deny the Motion .................5

      B.    The Curtis Factors That Hearn Relies on Are Unavailing ...........................................10

IV.   CONCLUSION..................................................................................................11

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Am. Spectrum Realty, Inc.*,
540 B.R. 730 (Bankr. C.D. Cal. 2015)................................................................9

*In re Baleine, LP*,
No. 13-27610, 2015 WL 5979948 (C.D. Cal. Oct. 13, 2015).........................9

*In re Chestnut Hill Rehab Hosp., LLC*,
387 B.R. 285 (Bankr. M.D. Fla. 2008) ............................................................6

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*,
912 F.2d 1162 (9th Cir. 1990) .........................................................................5

*In re Curtis*,
40 B.R. 795 (Bankr. D. Utah 1984) ........................................................... *passim*

*In re Dampier*,
No. BAP CO-15-006, 2015 WL 6756446 (10th Cir. BAP Nov. 5, 2015)........9

*Klepsky v. United Parcel Serv., Inc.*,
489 F.3d 264 (6th Cir. 2007) ...........................................................................6

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
832 F.3d 1024 (9th Cir. 2016) .........................................................................8

*Kronemyer v. Am. Contrs. Indem. Co. (In re Kronemyer)*,
405 B.R. 915 (B.A.P. 9th Cir. 2009)................................................................4

*In re Landmark Fence Co.*,
No. 11-00934, 2011 WL 6826253 (C.D. Cal. Dec. 9, 2011)......................8, 10

*In re Plumberex Specialties Prods., Inc.*,
311 B.R. 551 (Bankr. C.D. Cal. 2004) ............................................................4

*Shugrue v. Airline Pilots Association (In re Ionosphere Clubs, Inc.)*,
922 F.2d 984 (2d. Cir. 1990).............................................................................6

*In re Smith*,
389 B.R. 902 (Bankr. D. Nev. 2008) ...............................................................7

*Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.*,
823 F.3d 524 (9th Cir. 2016) ..........................................................................10

*In re Sunland, Inc.*,
508 B.R. 739 (Bankr. D. N.M. 2014) ..............................................................9

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Torres-Montoya*,
   No. 17-11823, 2017 WL 5713198 (Bankr. D.N.M. Nov. 21, 2017) ............................10

**Statutes**

11 U.S.C. § 362(d) .................................................................................................2, 4

11 U.S.C. §105 .............................................................................................................6

Utility Code § 854.2(a)(7).............................................................................................7

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## I.    PRELIMINARY STATEMENT

The Motion seeks relief from the automatic stay to allow a former employee, Todd Hearn, to file a new state court employment action while a grievance proceeding under a collective bargaining agreement is already pending.  The Motion fails to make a *prima facie* case for relief from the automatic stay because, among other reasons, Hearn has been engaged in grieving his dismissal since January 2019 under a contractually-mandated dispute resolution procedure provided for in the current collective bargaining agreement ("**CBA**") between the Utility and the International Brotherhood of Electrical Workers, Local 1245 ("**IBEW**" or "**Union**"), and because granting his requested relief is antithetical to the intent and purpose of the automatic stay and would represent and improper imposition on the Debtors' estates.

Hearn would incur no harm if the Court denies this Motion.  Hearn was terminated from his employment as a lineman with the Utility on January 22, 2019, prior to the commencement of these Chapter 11 Cases, for violating the Utility's Employee Code of Conduct.  That same day, January 22, 2019, the IBEW filed a grievance on Hearn's behalf pursuant to the dispute resolution process outlined in the CBA, alleging that the Utility lacked just and sufficient cause for his termination.  As discussed further below, the Utility denies Hearn's allegations and contends that Hearn was terminated for serious misconduct.  In any event, Hearn and the Utility are currently processing the grievance according to the steps provided in the CBA and the Utility has not sought to stay that proceeding.  If the grievance is successful, the possible remedies include reinstatement of Hearn's employment, along with compensation for lost wages, overtime opportunities and benefits.  The Ninth Circuit recognizes the extreme deference that the courts give to parties' grievance machinery in resolving disputes as a bedrock of national labor policy essential to stable bargaining relationships.  *See Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc*., 823 F.3d 524 (9th Cir. 2016).  Accordingly, allowing Hearn's grievance to run its course is the appropriate way for the parties to resolve Hearn's claims.  Nowhere in the Motion does Hearn mention the ongoing grievance proceeding.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Meanwhile, the Debtors would incur significant prejudice if the Court grants the Motion. As the Court is aware, this is a critical time in the Debtors' restructuring, and the Debtors and their professionals are involved in a multitude of proceedings so as to ensure that a plan is confirmed by June 30, 2020. The Court should not force the Debtors to litigate Hearn's individual claims in the State Court during this time, as the Debtors are already expending significant resources to address Hearn's claims in the grievance process.

The Court previously determined that stay relief was not appropriate for a similar employment claim seeking relief from the automatic stay. *See* Or. Denying Cronin's Mot. for Relief, ECF No. 3241. The Court should treat Hearn's employment claims no differently, particularly given that he is currently exercising rights contesting his termination in an ongoing grievance proceeding.

For these reasons, among many others detailed below, the Debtors respectfully request that the Court deny the Motion.

## II.     FACTUAL BACKGROUND

Hearn is a former employee of the Utility. *See* Campos Decl. ¶ 5. He worked as a lineman until June 20, 2018, when the Utility placed him on paid leave while investigating allegations of employee misconduct relating to timecard fraud and misreporting of work activities in the Utility's Napa, California yard. *See id*. The Utility first learned of Hearn's potential misconduct while investigating his crew foreman for related timecard falsification. As a result of findings in the Utility's investigation of the foreman, the Utility expanded its investigation to include the time records of the entire crew working the same shifts. *See id*. After a thorough investigation, the Utility terminated Hearn on January 22, 2019 for serious violations of the Employee Code of Conduct. *See id*. As a result of the investigation, the Utility also terminated four other employees for similar misconduct. *See id*. As the Utility explained in Hearn's termination letter, the Utility "determined that [Hearn] violated the Employee Code of Conduct by misusing company time, misstating work activities, and fraudulent submissions of timecards for overtime compensation

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

resulting in all day rest periods, and delayed service time to customers in violation of the Labor Contract (Title 3.3)." Tsekerides Decl., Ex. A.

The IBEW filed a grievance on Hearn's behalf pursuant to procedures set forth in the current CBA asserting that he was "terminated without just and sufficient cause." *See* Campos Decl. ¶ 6. The processing of Hearn's grievance is ongoing. *See id.* In the Proposed Lawsuit, Hearn contends he was terminated in retaliation for alleged safety concerns he raised over the Utility's use of TripSavers. *See id.* TripSaver devices can be used to automatically de-energize power lines when a problem is detected and re-energize the lines when the problem is cleared. *See id.*[1] The Utility maintains that Hearn was terminated as a result of his egregious and repeated violations of the Employee Code of Conduct. *See* Campos Decl. ¶ 8.

Section 102.6 of the current CBA sets forth five steps for resolving disputes between the Union and the Utility, including terminations. *See* Campos Decl. ¶ 9. Disputes over termination, generally bypass Step One and proceed to Step Two for adjudication before a Local Investigating Committee. *See id.* The Local Investigating Committee consists of a Utility Labor Relations Representative, an IBEW Business Representative, the Supervisor whose decision is the subject of the grievance, and the Union Shop Steward representing the department involved. *See id.* If no resolution occurs at that stage, the grievance is referred to the Fact Finding Committee at Step Three. *See id.* If the grievance is not resolved at Step Three, the Fact Finding Committee may refer the grievance to Step Four, the Review Committee. *See id.* If the grievance is not resolved at any of these four steps it may be referred to binding arbitration. *See id.* ¶ 10. Once submitted to

---

[1] Hearn's allegations concerning the Utility's use of TripSaver devices were set forth in a June 25, 2019 letter submitted to the Debtors' Board of Directors. *See* Campos Decl. ¶ 7. Utility Vice President, Sumeet Singh responded directly to Hearn's letter on July 17, 2019, explaining that the Utility has addressed concerns regarding TripSaver devices by implementing a Wildfire Reclosing Disable Program which disables the automatic reclosing (re-energizing) capability of TripSaver and other devices located in high fire threat areas during fire season. *See* Tsekerides Decl. Ex. B. Mr. Singh also invited Hearn to provide him with information about specific locations where he believed the devices were installed incorrectly or were malfunctioning. *See id.* Mr. Hearn has not responded to Mr. Singh's letter. *See* Campos Decl. ¶ 7.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

arbitration, the Utility and IBEW each appoint two members to form the Arbitration Board. *See id.* The parties must make a good-faith effort to agree mutually on a fifth member to serve as Chairman of the Arbitration Board, and if they cannot agree, they must select a Chairman from a panel of ten arbitrators chosen annually by the Utility and IBEW. *See id.* The Arbitration Board has discretion to issue an award that binds the Utility, the Union and the grievant. *See id.*

Hearn's grievance seeks reinstatement of his employment with the Utility, along with compensation for lost wages, overtime opportunities and benefits. *See* Campos Decl. ¶ 11. The grievance is currently reaching the end of Step Two and the IBEW and Utility are preparing the Local Investigating Committee Report. *See id.* Notwithstanding those ongoing proceedings, Mr. Hearn now seeks to commence a lawsuit, even though it has been a year since he was terminated and even though he may receive relief through the grievance process if he prevails there. *See* Costin Decl., Ex. A.

### III.    ARGUMENT

Section 362(d)(1) of the Bankruptcy Code authorizes a court to modify or terminate the automatic stay for "cause," which "has no clear definition and is determined on a case-by-case basis." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted). The party requesting stay relief bears the burden of making a *prima facie* showing of cause under section 362(d)(1). *See In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551, 553 (Bankr. C.D. Cal. 2004); 3 Collier on Bankruptcy ¶ 362.10 (2019) ("Failure to prove a prima facie case requires denial of the requested relief."). In determining whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts analyze the twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984);[2] *see also Kronemyer v. Am. Contrs. Indem. Co. (In*

___

[2] The *Curtis* factors are:  (1) whether the relief will result in partial or complete resolution of issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether the litigation in another forum

Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119

*re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.").

A.    **The Salient *Curtis* Factors Dictate that the Court Should Deny the Motion**

The *Curtis* factors most relevant here are the impact of the stay and the "balance of hurt" (*Curtis* factor 12); whether a lift of the stay will harm the Debtors' reorganization efforts (*Curtis* factor 2); whether the foreign proceedings have progressed to a point where the parties are prepared for trial (*Curtis* factor 11); and whether lift of the stay will serve the interests of judicial economy (*Curtis* factor 10). Each factor weighs heavily in favor of denying the Motion.

1.    **The "Balance of Hurt" Tilts Entirely Toward the Debtors**

In evaluating whether to lift of the automatic stay, courts consider the "impact of the stay on the parties and the 'balance of the hurt.'" *Curtis*, 40 B.R. at 800 (collecting cases). As the *Curtis* Court noted, "*even slight interference with the administration* [of the debtor's estate] may be enough to preclude relief in the absence of a commensurate benefit." *Id.* at 806 (emphasis added). Here, this factor weighs heavily in favor of denying the Motion. As detailed below, Hearn will not be harmed in any way if the Court denies his Motion. On the other hand, allowing Hearn to proceed with the Proposed Lawsuit would interfere with the Debtors' reorganization efforts at a critical time and is particularly unnecessary given his pending union grievance proceeding.

Hearn has failed to bear his burden to show that denial of the Motion will cause him any prejudice. As stated, since he was discharged on January 22, 2019, Hearn has been contesting his termination through the contractual grievance process. His grievance is currently making its way

would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination; (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f); (10) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to a point where the parties are prepared for trial; and (12) the impact of the stay and the "balance of hurt." 40 B.R. at 799–800.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

through the grievance steps and, if he prevails, it could result in reinstatement of Hearn's employment and the award of lost wages and benefits. *See* Campos Decl. ¶ 11.[3] Notably, the CBA compels Hearn to pursue his claims solely though the grievance process. Section 102.1 of the CBA provides that "apart from those matters that the parties have specifically excluded by way of Section 102.2, all disagreements shall be resolved within the scope of the grievance procedure," and section 102.2(b) states that disputes involving "[d]ischarge, demotion, suspension or discipline of an individual employee" "shall be determined by the grievance procedures established herein." *See* Campos Decl. ¶ 12. Hearn's Proposed Lawsuit may also be preempted by federal law, leaving the grievance process as the sole means through which he may seek redress for his claims. *See Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 270 (6th Cir. 2007) ("In addition to seeking compensatory damages, punitive damages, attorneys' fees, and costs and expenses, [plaintiff's] complaint requests 'reinstatement.' We find that this single request is enough to support preemption here, as it would require interpretation of the terms of the CBA, and implicates a right created under the CBA.").

It is difficult to conceive of any prejudice to Hearn if his Motion is denied. His requests for lost compensation and reinstatement are being addressed fairly in the grievance process, and he has filed a proof of claim in these Chapter 11 Cases. *See* Claim Nos. 9913 and 81516. He has not demonstrated and cannot demonstrate any circumstances justifying why he should be permitted to commence a completely new and separate lawsuit. Additionally, Hearn waited ten months following his termination and the Debtors' filing these Chapter 11 Cases on January 29, 2019, before filing his

---

[3] In fact, Hearn may receive a disposition of his alleged claims faster through the contractual grievance process than through any state court or bankruptcy proceeding. The automatic stay in bankruptcy does not apply to labor grievance proceedings arising under collective bargaining agreements, and therefore permits continued adjudication of Hearn's grievance. *See Shugrue v. Airline Pilots Association, (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 990 (2d. Cir. 1990) ("Congress intended that the collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of § 1113."); *In re Chestnut Hill Rehab Hosp., LLC*, 387 B.R. 285, 291 (Bankr. M.D. Fla. 2008) (same). And the Debtors have not sought to stay that proceeding under section 105 of the Code.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Motion for stay relief. This considerable delay plainly demonstrates the lack of prejudice, and that denial of Hearn's Motion will not cause him harm. *See, e.g., In re Smith*, 389 B.R. 902, 920 (Bankr. D. Nev. 2008) (movant's *three month wait* from petition date to filing relief from stay motion "belies [his] stated desire for swift resolution").

Hearn's assertion that he has "lost his ability to earn [a] living as a lineman," Mot. 7, is simply incorrect. Although the Utility has designated Hearn as ineligible to work on any Utility projects, this restriction in no way prevents Hearn from obtaining employment with a contractor, another utility, or a municipality. *See* Campos Decl. ¶ 13.

Moreover, contrary to Hearn's assertion that "PG&E monopolizes the entire power industry in the area," Mot. 4, the Utility is not the only utility operating in California as a whole or the Bay Area. *See* Campos Decl. ¶ 14. Several local municipal governments operate their own utility services and require linemen to operate. In addition, cable companies need and regularly employ linemen. *See id.* Linemen are in short supply in California, putting individuals with Hearn's background and training in high demand. *See id*; Utility Code § 854.2(a)(7) (stating that "[t]here is a nationwide shortage of the qualified utility line workers" and that "[c]urrent efforts to hire enough qualified people to perform these functions have fallen short even though exceptional compensation packages are being offered"). In any event, there is nothing in the record to suggest that beginning a State Court action nearly a year after Hearn's termination will bring a quicker resolution than the existing grievance process and/or the Bankruptcy claims process to any of these issues.

In contrast, and as further set forth below with respect to *Curtis* factor 2, if the Court allows the Proposed Lawsuit to proceed now, it would impose an improper burden on the Debtors and their reorganization efforts. The "balance of hurt" thus weighs strongly in favor of denying the Motion.

### 2. The Filing and Prosecution of the Litigation Would Interfere with the Debtors' Restructuring

In addressing *Curtis* factor 2, the Motion offers only the conclusory assertion that the Proposed Lawsuit "would not interfere with this Court's bankruptcy case in any matter." Mot. 5. This contention is plainly wrong. Relief from the stay will improperly burden the Debtors and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

needlessly waste estate assets. Indeed, "*even slight interference with the administration* [of the debtor's estate] may be enough to preclude relief in the absence of a commensurate benefit." *Curtis*, 40 B.R. at 806 (emphasis added). Moreover, "[i]t is not enough for the creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted." *In re Landmark Fence Co.*, No. 11-00934, 2011 WL 6826253, at *9 (C.D. Cal. Dec. 9, 2011). Here, Hearn cannot even show that he will be hurt by the continuation of the stay.

As an initial matter, the Proposed Lawsuit overlaps with the ongoing contractual grievance process and the Utility continues to expend significant resources in that proceeding. *See* Campos Decl. ¶ 15. If the Proposed Lawsuit goes forward, it will require the Utility to commit further estate assets and resources to adjudicate similar issues to those raised in the grievance. *See id*. The language of the CBA makes clear that Mr. Hearn's dispute over his discharge is arbitrable and the grievance process is the proper forum for that claim. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1034 (9th Cir. 2016) (explaining that under a CBA, an employee must vindicate personal contract-based rights through the contractual grievance-arbitration procedure unless the union violates its duty of fair representation). Accordingly, the grievance process is the only appropriate forum for adjudicating Hearn's dispute over his termination at this time. There is no need to modify the stay even if Hearn could demonstrate a basis to do so.

Granting relief from the stay will also invite additional stay relief requests from individual plaintiffs. This result would further distract from the Debtors' reorganization. *See Landmark Fence*, 2011 WL 6826253, at *3 ("The purpose of the stay is not just to protect debtors but also creditors by preventing a race among creditors to assert claims against the debtor."). This Court has already denied stay relief to individual tort claimants and to a former employee who also sought to lift the stay to pursue wrongful termination claims. *See, e.g.*, Mem. Decision on Mots. for Relief from Stay, ECF No. 1982 (denying Gelman and Valero Motions for Stay Relief); Or. Denying Cronin's Mot. for Relief, ECF No. 3241. Nothing here distinguishes Hearn's situation, particularly where he is pursuing the contractual grievance procedure.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### 3. The Parties Are Not "Prepared for Trial" Because the Underlying Action Has Not Even Commenced

Courts have generally only found readiness for trial to weigh in favor of lifting the stay where trial in the underlying litigation was imminent. *See, e.g.*, *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 742 (Bankr. C.D. Cal. 2015) (five weeks from petition date to scheduled trial date); *In re Baleine, LP*, No. 13-27610, 2015 WL 5979948, at *12 (C.D. Cal. Oct. 13, 2015) (three months); *In re Dampier*, No. BAP CO-15-006, 2015 WL 6756446, at *7 (10th Cir. BAP Nov. 5, 2015) (discovery completed and foreign proceeding set for trial less than three weeks after petition date). Here, the litigation that Hearn wishes to pursue has *not even commenced*. Hearn seeks relief from the stay so he may file a complaint in the Napa County Superior Court of California and initiate a new lawsuit against the Utility. The significant discovery and related litigation that must occur before the parties reach the point of trial cuts strongly in favor of denying the Motion—even assuming any such action were permitted to proceed given the pending grievance process. *See, e.g.*, *Plumberex Specialty Prods.*, 311 B.R. at 563–64 (Bankr. C.D. Cal. 2004) (denying relief from stay, noting that "[the plaintiff] has yet to commence this new action against [the debtor]"); *In re Sunland, Inc.*, 508 B.R. 739, 744–45 (Bankr. D. N.M. 2014) (no stay relief where trial scheduled for eight months from petition date and no dispositive motions filed).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1

2

3

4.     **The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties Weigh in Favor of Denying the Motion**

4     Additionally, the Court should deny Hearn's Motion because, under *Curtis* factor 10, relief

5 from the stay will only invite duplicative and wasteful litigation. As explained above, the parties are

6 addressing the same questions raised in the Proposed Lawsuit through a collectively-bargained

7 grievance process, to which the Ninth Circuit gives extreme deference for resolving disputes because

8 of its role in preserving labor management peace. *See Southwest Regional Council of Carpenters*

9 823 F.3d at 530. The interests of judicial economy clearly favor denial of the Motion.

10     B.     **The *Curtis* Factors That Hearn Relies on Are Unavailing**

11     Hearn suggests in conclusory fashion that *Curtis* factors 1 and 4 weigh in favor of lifting the

12 stay, but in fact, neither factor supports Hearn's request to allow the Proposed Lawsuit to commence

13 *now*, at this stage of these Chapter 11 Cases.

14     Hearn suggests that *Curtis* factor 4 (whether a specialized tribunal has been established to

15 hear the cause of action at issue) weighs in his favor because the "Napa Superior Court is better

16 suited" to adjudicate his claims. Mot. 6. But courts have consistently held that, for purposes of this

17 factor, state courts are not specialized tribunals. *See, e.g.*, *Landmark Fence*, 2011 WL 6826253, at

18 *6 (holding that the bankruptcy court did not clearly err in finding that "the state court is a court of

19 general jurisdiction" and "not a specialized tribunal"); *In re Torres-Montoya*, No. 17-11823, 2017

20 WL 5713198, at *3 (Bankr. D.N.M. Nov. 21, 2017) ("The state court is not a specialized tribunal.").

21 Thus, the assertion that state courts hear more employment disputes than federal courts does nothing

22 to tilt this factor in Hearn's favor. *See Landmark Fence*, 2011 WL 6826253, at *6 (holding that it

23 was not clear error to find that state courts are not "specialized tribunals" even if they have more

24 expertise in trying certain claims).

25     As for *Curtis* factor 1 (whether relief will result in a partial or complete resolution of the

26 issues), Hearn states only that the relief he seeks requires a judge or jury to "determine whether

27 PG&E violated California's whistleblower statutes" and to consider whether "PG&E is subject to

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

punitive damages." Mot. 5. But Hearn makes no effort to show how the Proposed Lawsuit will bring a final resolution to the issues raised in the Proposed Lawsuit, nor can he. In fact, he fails to mention that even if the stay is lifted, the grievance process will continue and need to be resolved separately. Thus, relief from the stay to allow Hearn to file the Proposed Lawsuit at best risks inconsistent rulings in different tribunals.

### IV.   CONCLUSION

The Court should deny the Motion.

Dated: December 12, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:     _/s/     Theodore E. Tsekerides_
Theodore E. Tsekerides

*Attorneys for Debtors and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119