Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:    415.659.2600
Facsimile:    415.659.2601
Email:  rjulian@bakerlaw.com
Email:  cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:  esagerman@bakerlaw.com
Email:  drichardson@bakerlaw.com
Email:  lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>       **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                          **Debtors.**<br><br>□ Affects PG&E Corporation<br><br>□ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS (SUBSTANTIVE) TO CLAIMS FILED BY CALIFORNIA GOVERNOR'S OFFICE OF EMERGENCY SERVICES (CLAIM NOS. 87748, 87754, & 87755)**<br><br>Date:      January 14, 2020<br>Time:      10:00 a.m. (Pacific Time)<br>Place:     United States Bankruptcy Court<br>               Courtroom 17, 16th Floor<br>               San Francisco, CA  94102<br><br>Objection Deadline:  December 31, 2019 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     JURISDICTION.................................................................................................... 2

III.    RELIEF REQUESTED .......................................................................................... 2

IV.     BACKGROUND .................................................................................................... 3

        A.    The Wildfires and the Disaster Declarations ................................................ 3

        B.    The Wildfire Claims................................................................................. 4

        C.    The Cal OES Claims ................................................................................ 5

V.      BASIS FOR RELIEF REQUESTED..................................................................... 6

        A.    The Free Public Services Doctrine............................................................ 7

        B.    Statutory Exceptions ............................................................................... 11

              1.   Section 2106 of the California Public Utilities Code............................... 11

              2.   Sections 4421 and/or 4422 of the California Public Resources Code ...... 12

              3.   Sections 13001, 13007, 13009 and 13009.1 of the California Health
                   and Safety Code ............................................................................ 12

              4.   Section 13009.6 of the California Health and Safety Code .................... 14

              5.   Public Nuisance ............................................................................. 15

        C.    Lack of Standing to Recover Federal Share and Demand for Accounting........... 16

        D.    Statute of Limitations .............................................................................. 16

VI.     RESPONSES TO THIS OBJECTION................................................................... 17

VII.    RESERVATION OF RIGHTS .............................................................................. 17

VIII.   COMPLIANCE WITH BANKRUPTCY LOCAL RULE 3007-1 ................................ 18

IX.     NOTICE ............................................................................................................ 18

X.      NO PREVIOUS REQUEST ................................................................................. 18

XI.     CONCLUSION ................................................................................................... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allenton Volunteer Fire Dep't v. Soo Line R.R.*,
  372 F. Supp. 422 (E.D. Wis. 1974) ........................................................................8, 10

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
  719 F.2d 322 (9th Cir. 1983) .........................................................................7, 9, 10, 11

*City of Los Angeles v. Shpegel-Dimsey, Inc.*,
  198 Cal. App. 3d 1009, 244 Cal. Rptr. 507 (Cal. Ct. App. 1988) ........................8, 10

*County of Lassen v. State of Cal.*,
  4 Cal. App. 4th 1151, 6 Cal. Rptr. 2d 359 (Cal. Ct. App. 1992) ..........................8, 10

*County of San Luis Obispo v. Abalone Alliance*,
  178 Cal. App. 3d 848, 223 Cal. Rptr. 846 (Cal. Ct. App. 1986) ....................8, 10, 15

*Dep't of Forestry & Fire Protection v. Howell*,
  18 Cal. App. 5th 154, 226 Cal. Rptr. 3d 727 (Cal. Ct. App. 2017) ................. *passim*

*Dist. of Columbia v. Air Fla., Inc.*,
  750 F.2d 1077 (D.C. Cir. 1984) ..........................................................................8, 10

*In re King Street Invs., Inc.*,
  219 B.R. 848 (B.A.P. 9th Cir. 1998) ..............................................................................7

*Koch v. Consol. Edison Co. of New York, Inc.*,
  468 N.E.2d 1 (N.Y. 1984) ................................................................................................8

*Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*,
  954 F.2d 1279 (7th Cir. 1992) .........................................................................................8

*People v. Wilson*,
  240 Cal. App. 2d 574, 49 Cal. Rptr. 792 (Cal. Ct. App. 1966) ......................8, 10, 16

*In re Pugh*,
  157 B.R. 898 (B.A.P. 9th Cir. 1993) ..............................................................................7

ii

*Town of Freetown v. New Bedford Wholesale Tire, Inc.*,

   423 N.E.2d 997 (Mass. 1981) ...............................................................................9, 10

*Town of Howard v. Soo Line R.R.*,

   217 N.W.2d 329 (Wis. 1974)................................................................................9, 10

*United States v. Standard Oil Co. of Cal.*,

   332 U.S. 301 (1947)..............................................................................................7, 10

*United States v. State of Cal.*,

   655 F.2d 914 (9th Cir. 1980)......................................................................................14

*Vander Lind v. Superior Court*,

   146 Cal. App. 3d 358, 194 Cal. Rptr. 209 (Cal. Ct. App. 1983)................................11

*Walker County v. Tri-State Crematory*,

   643 S.E.2d 324 (Ga. Ct. App. 2007) ...........................................................................9

*Wright v. Holm (In re Holm)*,

   931 F.2d 620 (9th Cir. 1991)......................................................................................7

**Statutes**

11 U.S.C. § 502.................................................................................................1, 2, 6

28 U.S.C. § 157............................................................................................................2

28 U.S.C. § 1334..........................................................................................................2

28 U.S.C. § 1408..........................................................................................................2

28 U.S.C. § 1409..........................................................................................................2

42 U.S.C. § 5160(a) .....................................................................................................4

Cal. Civ. Code. § 3494 (West 2019) .........................................................................15

Cal. Civ. Proc. § 731 (West 2019) ......................................................................15, 16

Cal. Health & Safety Code § 13001 (West 2019)...................................................6, 12

Cal. Health & Safety Code § 13007 (West 2019).............................................6, 12, 13

Cal. Health & Safety Code § 13009 (West 2019).............................................. *passim*

Cal. Health & Safety Code § 13009.1 (West 2019)........................................... *passim*

Cal. Health & Safety Code § 13009.6 (West 2019)......................................6, 14, 15, 16

Baker & Hostetler LLP
Attorneys at Law
San Francisco

iii

Cal. Pub. Res. Code § 4421 (West 2019)..................................................6, 12

Cal. Pub. Res. Code § 4422 (West 2019)..................................................6, 12

Cal. Pub. Util. Code § 2106 (West 2019) ................................................6, 11

**Other Authorities**

Fed. R. Bankr. P. 3007 .............................................................1, 2, 7, 18

34 Cal. Jur. 3d Fires and Fire Protection § 48 (2019)..............................17

Bankr. Local Rule 3007-1(a)....................................................1, 2, 18

Bankr. Local Rule 5011-1(a)...............................................................2

6 Miller & Starr Cal. Real Est. § 19:33 (4th ed. 2019)..........................16

Baker & Hostetler LLP
Attorneys at Law
San Francisco

iv

1
2
3

> **THIS OBJECTION SEEKS TO DISALLOW AND/OR MODIFY CERTAIN FILED PROOFS OF CLAIM.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION.**

The Official Committee of Tort Claimants (the "**TCC**") in the chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors (collectively, the "**Debtors**"), hereby files this Objection, pursuant to section 502 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), to each of the claims listed on <u>**Exhibit A**</u> hereto (the "**Cal OES Claims**").  For the reasons set forth below, the Debtors have no liability to the California Governor's Office of Emergency Services ("**Cal OES**") for each of the Cal OES Claims.  In support of the Objection, the TCC relies on the Declaration of Eric Goodman filed on December 2, 2019 (Dkt. No. 4943-2), and respectfully represents as follows:

**I.    <u>INTRODUCTION</u>**

The Debtors are liable for the death and destruction caused by the Butte Fire, the North Bay Fires and the Camp Fire.  The individuals and businesses impacted by these wildfires have filed over 73,000 proofs of claim.  The Debtors are liable to these individuals and businesses for the physical injuries and real property damage proximately caused by their faulty electric lines and equipment.  But it does not follow from this that the Debtors are also liable to Cal OES.

Cal OES has filed claims seeking approximately $2.7 billion based on disaster assistance provided in response to the Butte Fire, the North Bay Fires and the Camp Fire.  Cal OES asserts that Cal OES and Federal Emergency Management Agency ("**FEMA**") paid or assumed a share of the costs—or anticipate paying a share of the costs—of providing emergency services necessitated by these fires.  But Cal OES does not allege that Cal OES itself performed any emergency services in response to the Butte Fire, the North Bay Fires or the Camp Fire.  The Cal OES Claim is for money Cal OES and FEMA contributed to approved projects that were undertaken by other state agencies and other entities.  Cal OES acknowledges that the lion's share of its claim—

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

approximately $2.4 billion—is for funds provided by FEMA or other federal government agencies. Only $289,214,773 of the Cal OES Claim is attributable to California's share of the purported costs.

Cal OES asserts multiple legal theories of recovery against the Debtors. Cal OES asserts claims based on various common law doctrines, including negligence and negligence *per se*, which claims are not cognizable under the "free public services doctrine." Under this doctrine, as adopted in California and by the Ninth Circuit, a government entity cannot recover the costs of carrying out public services, including response to fires, from a tortfeasor whose conduct caused the need for the services, absent statutory authorization. None of the statutes cited by Cal OES permit Cal OES to recover the amounts set forth in the Cal OES Claims from the Debtors.

The Cal OES Claims are not *prima facie* valid, lack adequate factual support, and should be disallowed and expunged. The TCC objects to the Cal OES Claims at this time because doing so is necessary to advance the Chapter 11 Cases. The tort victims will be asked to vote on a plan of reorganization. The Cal OES Claims, if allowed, could materially reduce the amount available to pay fire victims and threatens their recovery. For these reasons, and the reasons set forth below, the Cal OES Claims are ripe for adjudication and should be disallowed prior to plan confirmation.

## II.  JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). The TCC consents to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  RELIEF REQUESTED

By this Objection, the TCC seeks the entry of an Order, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Bankruptcy Local Rule 3007-1, disallowing and expunging the State Agency Claims listed on **Exhibit A** hereto. A proposed form of order granting the relief requested herein on a final basis is attached hereto as **Exhibit B**.

2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## IV. BACKGROUND

### A. The Wildfires and the Disaster Declarations

Butte Fire. On September 9, 2015, a wildfire that became known as the "Butte Fire" started in Amador County, California and quickly spread to Calaveras County, California. *See* Goodman Decl. at Ex. 1. On September 11, 2015, Governor Edmund G. Brown, Jr. issued an emergency proclamation for Amador and Calaveras Counties due to the effects of the Butte Fire. *Id.* at Ex. 2. On September 22, 2015, the President issued a major disaster declaration under the Robert T. Stafford Disaster Assistance and Emergency Relief Act (the "**Stafford Act**"), 42 U.S.C. §§ 5121 *et seq.*, (FEMA-4240-DR-CA) and authorized FEMA to provide individual assistance for Calaveras County. *Id.* at Ex. 3. On September 24, 2015 and October 8, 2015, the major disaster declaration was amended to authorize public assistance for Calaveras County.

The destruction caused by the Butte Fire affected thousands of people. The Butte Fire burned 70,868 acres, resulted in 2 fatalities, destroyed 965 structures (including 549 homes, 368 outbuildings and 4 commercial properties), and damaged 44 structures. *Id.* at Ex. 4, Part 1, p. 22. The California Department of Forestry and Fire Protection ("**Cal Fire**") found that PG&E and/or its contractors failed to identify potential hazards during its vegetation management program, which led to a tree contacting PG&E's electric line, igniting the Butte Fire. *Id.*

North Bay Fires. On October 8 through October 10, 2017, over a dozen wildfires that became known as the "North Bay Fires" started in Butte, Lake, Mendocino, Napa, Nevada, Solano, Sonoma and Yuba Counties, California. *Id.* at Ex. 5, pp. 27-28. On October 9, 2017, Governor Edmund G. Brown, Jr. issued an emergency proclamation for Napa, Sonoma and Yuba Counties due to the effects of the North Bay Fires. *Id.* at Ex. 6.

On October 10, 2017, the President issued a major disaster declaration under the Stafford Act (FEMA-4344-DR-CA) and authorized FEMA to provide public assistance for Butte, Lake, Mendocino, Napa, Nevada, Sonoma and Yuba Counties. *Id.* at Ex. 7. On October 12, 2017, the major disaster declaration was amended to authorize individual assistance for Sonoma County. *Id.* at Ex. 8. From October 13 to October 15, 2017, the major disaster declaration was amended three more times to authorize public assistance for Solano County and individual assistance for Butte,

3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Lake, Mendocino, Napa, Nevada and Yuba Counties. *Id.* at Exs. 9-11. On November 28, 2017, the major disaster declaration was further amended to authorize additional categories of public assistance for Butte, Lake, Mendocino, Napa, Sonoma and Yuba Counties. *Id.* at Ex. 12.

The destruction caused by the North Bay Fires was unprecedented at the time. The North Bay Fires burned over 245,000 acres, damaged or destroyed 14,700 homes, 3,600 vehicles, and 728 businesses, and resulted in 44 fatalities and hospitalized over 185 others. *See* Debtors' Request for Judicial Notice, *Herndon v. PG&E Corp.*, Adv. Pro. No. 19-03005 (Bankr. N.D. Cal. Mar. 18, 2019), Dkt. No. 10-2, at ¶ J. Cal Fire found that PG&E's faulty equipment and its failure to identify hazards during its vegetation management program ignited 19 of the 21 North Bay Fires. *Id.* at Ex. I, 43. A trial on the Debtors' liability for the Tubbs Fire is scheduled to begin in January 2020.

Camp Fire. On November 8, 2018, what became known as the "Camp Fire" started in Butte County, California. *See* Goodman Decl. at Ex. 13. On November 12, 2018, the President issued a major disaster declaration under the Stafford Act (FEMA-4407-DR-CA) and authorized FEMA to provide public assistance and individual assistance to Butte County. *Id.* at Ex. 14.

The destruction caused by the Camp Fire was unprecedented. The Camp Fire consumed 153,336 acres, caused 85 civilian fatalities, and destroyed 13,972 residences, 528 commercial structures and 4,293 other buildings. *Id.* at Ex. 15, 41. The Camp Fire was caused by unsafe electrical infrastructure owned, operated, and improperly maintained by PG&E. *Id.* at Ex. 13. PG&E has estimated damage claims from the Camp Fire at over $10.5 billion. *Id.* at Ex. 15, 47.

**B.    The Wildfire Claims**

The Debtors caused the Butte Fire, the North Bay Fires and the Camp Fire. Individuals and businesses impacted by these fires have filed over 72,000 proofs of claim. The TCC estimates that the total value of the fire victims' claims is at least $13.5 billion, as reflected in the Restructuring Support Agreement signed by the Debtors dated December 6, 2019.

Government entities also filed proofs of claim in the Chapter 11 Cases. Cal OES' claims total approximately $2.7 billion, of which over $2.4 billion is for the recovery of amounts paid by FEMA. FEMA's own claims exceed $3.9 billion and are based Section 317 of the Stafford Act (42

4

U.S.C. § 5160(a)), which imposes liability where a person intentionally causes a major disaster. The TCC has already objected to the FEMA Claims. *See* Dkt. No. 4943.

Cal Fire also filed 23 proofs of claim related to several fires totaling approximately $363 million. Cal Fire seeks to recover costs for fighting and suppressing fires, rescue and emergency medical services, investigation, accounting expenses and collections costs, including attorneys' fees. Various public entities filed claims, including the public entities that purportedly settled with the Debtors for $1 billion. The government claims compete with and have the potential to diminish the funds available to pay individual fire victims.

**C.    The Cal OES Claims**

Cal OES filed three proofs of claim related to the Butte Fire, Camp Fire, and North Bay Fires totaling $2.4 billion. Cal OES' alleged share, however, is only $289,215,773.

The first claim (Claim No. 87748) asserts that the Debtors are liable to Cal OES for $99,354,738 as a result of the Butte Fire—the "Federal Share" being $75,478,618 and Cal OES' share being $23,876,120. The second claim (Claim No. 87754) asserts that the Debtors are liable to Cal OES for $281,230,590 as a result of the North Bay Fires—the "Federal Share" being $257,154,858 and Cal OES' share being $24,075,732. The third claim (Claim No. 87755) asserts that the Debtors are liable to Cal OES for $2,313,479,642 as a result of the Camp Fire—the "Federal Share" being $2,072,215,721 and Cal OES' share being $241,263,921.

Cal OES does not allege that Cal OES itself performed any emergency services in response to the wildfires. The Cal OES Claims are for funds FEMA and Cal OES contributed or may contribute to projects undertaken by other state agencies and entities. As set forth in the Cal OES Claims, in a disaster event, if California's governor so requests, as he did for the wildfires at issue, federal resources are mobilized through FEMA for federal assistance. Such assistance includes funding for "public assistance"—direct and financial assistance to state and local governments, tribes, and private non-profits for debris removal, emergency protective measures, and permanent repair/replacement of damaged infrastructure. To be eligible for such funding, state agencies and other entities must apply. After approving applications, the Federal government and Cal OES enter into an "obligation," which is a legally binding agreement to outlay funds.

5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The cost to implement approved activities is funded by a combination of Federal and non-Federal sources. The "cost share" or "match" is the portion of the cost of a federally assisted project not borne by the Federal government. FEMA's public assistance program is a cost-sharing program that reimburses applicants at least 75% of eligible costs. The state is usually the formal recipient of FEMA's assistance. The remaining 25% is covered by the State of California and local agencies. Once funds are obligated, Cal OES provides money to applicants directly based upon its policies, procedures and regulations. Cal OES determines how the non-Federal share is split with the sub-recipients (*i.e.*, eligible applicants) based on regulations.

In its proofs of claim, Cal OES explains that various California state and local agencies provided emergency services necessitated by the wildfires at issue. And, Cal OES explains that these services included fire abatement, a variety of emergency protective measures, repair and rebuilding of damaged public property and infrastructure, cleanup and disposal of debris and hazardous materials, and the administration of such services. The Cal OES Claims are not predicated on any allegation that Cal OES performed such services, but that FEMA and Cal OES "paid or assumed" a share of the costs incurred by applicants that performed these services.

Cal OES asserts multiple bases for why the Debtors are liable to Cal OES for funds provided by FEMA and Cal OES to state and local governments, tribes, and private non-profits. First, Cal OES asserts the right to recover under the doctrines of negligence and negligence *per se*. Second, Cal OES cites Section 2106 of the California Public Utilities Code. Third, Cal OES cites Sections 4421 and/or 4422 of the California Public Resources Code. Fourth, Cal OES cites Sections 13001, 13007, 13009 and 13009.1 of the California Health and Safety Code. Fifth, Cal OES cites Section 13009.6 of the California Health and Safety Code. Finally, Cal OES argues that the Debtors created a public nuisance. As explained below, Cal OES has not alleged facts that would permit it to recover in light of the "free public services doctrine." Its claims should be disallowed.

## V.      BASIS FOR RELIEF REQUESTED

Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). When asserting a claim

6

Case: 19-30088    Doc# 5096    Filed: 12/12/19    Entered: 12/12/19 15:58:14    Page 11 of 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *See In re King Street Invs., Inc.*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998). Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity. *See Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 COLLIER ON BANKRUPTCY § 502.02, at 502-22 (Lawrence King, 15th ed. 1991)).

A party wishing to dispute a claim afforded *prima facie* validity must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.* Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *See In re Pugh*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993). Ultimately, the burden of persuasion is on the claimant. *See Holm*, 931 F.2d at 623.

Pursuant to Bankruptcy Rule 3007(d), a party in interest is permitted to file omnibus objections to more than one claim on the bases enumerated therein, which include, among other things, where the "claims were filed by the same entity." Fed. R. Bankr. P. 3007(d). Here, the Cal OES Claims, each of which was filed by the same entity, lack *prima facie* validity because Cal OES failed to allege facts that, if true, would support a finding that the Debtors are liable to Cal OES. Because the Cal OES Claims lack *prima facie* validity, no affirmative evidence must be offered by the TCC for the Court to disallow and expunge the Cal OES Claims.

### A.      The Free Public Services Doctrine

Consideration of the Cal OES Claims must begin with the "free public services doctrine," which provides that a governmental entity cannot recover the costs of carrying out public services, including response to fires, from a tortfeasor whose conduct caused the need for the services, absent specific statutory authorization or damage to government-owned property. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 314-17 (1947) (holding that the federal government has no federal common law right to recover costs of medical care and sick pay from tortfeasors who injure soldiers absent legislative action); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (municipality that committed police, fire and other relief measures to major emergency cannot recover from tortfeasor where recovery is not authorized by statute or

7

regulation); *Dep't of Forestry & Fire Protection v. Howell*, 18 Cal. App. 5th 154, 176, 226 Cal. Rptr. 3d 727, 746 (Cal. Ct. App. 2017) (government entity's ability "to recover its fire suppression costs is strictly limited to the recovery afforded by statute"); *County of Lassen v. State of Cal.*, 4 Cal. App. 4th 1151, 1156-57, 6 Cal. Rptr. 2d 359, 362 (Cal. Ct. App. 1992) (government entity could not recover costs and attorneys' fees incurred in defending class action lawsuit from the State of California absent statutory authorization); *City of Los Angeles v. Shpegel-Dimsey, Inc.*, 198 Cal. App. 3d 1009, 1018, 244 Cal. Rptr. 507, 510 (Cal. Ct. App. 1988) ("[I]n the absence of a statute expressly authorizing recovery of public expenditures … the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service."); *County of San Luis Obispo v. Abalone Alliance*, 178 Cal. App. 3d 848, 858-59, 223 Cal. Rptr. 846, 851 (Cal. Ct. App. 1986) (government entity could not recover costs of abating public nuisance through exercise of police power absent specific statutory authorization); *People v. Wilson*, 240 Cal. App. 2d 574, 576-77, 49 Cal. Rptr. 792, 794 (Cal. Ct. App. 1966) ("No case has been cited, and we have found none, which permits, in the absence of a statute, the recovery of fire suppression expenses by one not protecting his own property. … Thus, recovery for fire suppression expenses by a state or other public agency is a creature of statute."); *accord Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1310 (7th Cir. 1992) (finding costs incurred by public agencies in responding to an oil spill could be recovered from tortfeasor because, even though "courts decline to require tortfeasors to compensate the government for the cost of services" absent statutory authorization under the "free public services doctrine," statute authorized recovery making doctrine inapplicable); *Dist. of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (absent statutory authorization, expenses or extraordinary emergency services District of Columbia expended in cleaning up after a plane crash could not be recovered from airline, alleged negligent tortfeasor); *Allenton Volunteer Fire Dep't v. Soo Line R.R.*, 372 F. Supp. 422, 424 (E.D. Wis. 1974) (fire department could not recover costs of extinguishing fire involving trains from railroad absent statutory authorization); *Koch v. Consol. Edison Co. of New York, Inc.*, 468 N.E.2d 1, 8 (N.Y. 1984) ("The general rule is that public expenditures made in the performance of governmental functions

8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

are not recoverable."); *Town of Freetown v. New Bedford Wholesale Tire, Inc.*, 423 N.E.2d 997, 997-98 (Mass. 1981) (finding that there is "no authority for common law recovery by a town of its expenses in fighting a fire" and that "the right of the town to recover firefighting expenses depends on statute."); *Town of Howard v. Soo Line R.R.*, 217 N.W.2d 329, 330 (Wis. 1974) (liability of railroad for setting grass fire could not be imposed in favor of town absent statutory authorization); *Walker County v. Tri-State Crematory*, 643 S.E.2d 324, 327 (Ga. Ct. App. 2007) ("Georgia, like many jurisdictions, has adopted the common-law free public services doctrine," which provides "that absent specific statutory authorization or damage to government-owned property, a county cannot recover the costs of carrying out public services from a tortfeasor whose conduct caused the need for the services.").

In *Howell*, the California Court of Appeals considered whether Cal Fire could recover fire suppression and investigation costs and monetary damages stemming from 2007 Moonlight Fire. 18 Cal. App. 5th at 162-63. Cal Fire asserted common law claims and claims under Sections 13009 and 13009.1 of the California Health and Safety Code. *Id.* at 165. In rejecting Cal Fire's ability to assert common law claims, the California Court of Appeals found that at common law "there is no recovery of government-provided fire suppression costs; that recovery is purely a creature of statute." *Id.* at 176. Thus, "Cal Fire's ability to recover its fire suppression costs is strictly limited to the recovery afforded by statute." *Id.* The Ninth Circuit's decision in *City of Flagstaff* is in accord with *Howell*.

In *City of Flagstaff*, the Ninth Circuit considered whether a municipality—the City of Flagstaff—could recover the cost of police, fire and other relief measures incurred as a result of a major emergency—namely, the derailment of railroad cars carrying petroleum gas—from the tortfeasor who caused the accident. 719 F.2d at 323. The City sued the railroad company on the theory that the city's expenditures were compensable damages, "arising from either or both the railroad's negligence or its conduct of an ultrahazardous activity." *Id.*

The Ninth Circuit held that the "identify of the claimant"—a governmental entity—and "the nature of the cost"—fire-related expenditures incurred as a result of a major disaster—precluded recovery on the theory of the tort presented. *Id.* at 324. The Ninth Circuit found that the "cost of

9

public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service." *Id.* at 323. The Ninth Circuit explained that when "such services are provided by the government and the costs are spread by taxes, the tortfeasor does not expect a demand for reimbursement. This is so even though the tortfeasor is fully aware that private parties injured by its conduct, who cannot spread their risk to the general public, will have a cause of action against it for damages proximately or legally caused." *Id.* Accordingly, under *City of Flagstaff*, for the government to have a cause of action for its damages, "the legislature and its public deliberative process, rather than the court, is the appropriate forum to address such fiscal concerns." *Id.* at 324 (following *Standard Oil*). Thus, recovery is permitted when it is "authorized by statute or regulation." *Id.*

In *City of Flagstaff*, the Ninth Circuit purported to apply "Arizona law," although it did not cite a single Arizona decision. *Id.* at 323 ("having the case before us, we must decide it as we think the Arizona courts would"). As noted above, the free public services doctrine is more firmly rooted in California law. *See Howell*, 18 Cal. App. 5th at 176; *County of Lassen*, 4 Cal. App. 4th at 1156-57; *City of Los Angeles*, 198 Cal. App. 3d at 1018; *County of San Luis Obispo*, 178 Cal. App. 3d at 858-59; *Wilson*, 240 Cal. App. 2d at 576-77. In fact, the California Court of Appeals' decision in *Wilson* is frequently cited as a foundational decision for the doctrine. *See*, *e.g.*, *Air Fla.*, 750 F.2d at 1080 (citing *Wilson* in support of the "common-law rule" that "absent authorizing legislation, the cost of public services for protection from fire or safety is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service."); *Allenton Volunteer Fire Dep't*, 372 F. Supp. at 423 (citing *Wilson* and finding that "only two cases on the topic of charging for fire suppression expenses have been discussed by the parties, and both have rejected plaintiff's position in the absence of a statute authorizing recovery."); *Town of Freetown*, 423 N.E.2d at 997-98 (citing *Wilson* and finding that there is "no authority for common law recovery by a town of its expenses in fighting a fire."); *Town of Howard*, 217 N.W.2d at 330 (citing *Wilson* to support the proposition that "any liability for the cost of extinguishing a negligently set fire must be imposed by statute as there is no common-law liability permitting a town to charge a railroad for such services or to recover for fire suppression expenses.").

10

Here, the "identify of the claimant"—Cal OES—and "the nature of the cost"—public assistance and administrative costs resulting from a major disaster—generally preclude recovery. *See City of Flagstaff*, 719 F.2d at 324. The State of California, like the City of Flagstaff, has the right to collect revenue through taxation and spread the costs of major disasters. The *City of Flagstaff* is directly on point, which means that the costs Cal OES seeks to recover through the Cal OES Claims are not recoverable unless expressly "authorized by statute or regulation." *Id.* at 324.

## B. **Statutory Exceptions**

Thus, the key to evaluating the Cal OES Claims is whether any of the statutes cited by Cal OES afford it the right to recover from the Debtors. As explained below, none of the statutes cited by Cal OES support its right to recover from the Debtors based on the facts pled.

### 1. Section 2106 of the California Public Utilities Code

First, Cal OES cites Section 2106 of the California Public Utilities Code, which provides:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom.

Cal. Pub. Util. Code § 2106 (West 2019).

This statute permits recovery only by persons or corporations who are themselves "direct victims" of a utility's willful act or omission. *See Vander Lind v. Superior Court*, 146 Cal. App. 3d 358, 367, 194 Cal. Rptr. 209, 215 (Cal. Ct. App. 1983). The California Court of Appeals found in *Vander Lind* that a "contrary conclusion" would expand the class of plaintiffs eligible to recover under Section 2106 "beyond precedent and reason" and would create the potential for "double punishment for the same wrongful conduct"—*i.e.*, one claim by the "direct victim" and a second claim by a party that is "remotely affected." *Id.* Here, Cal OES does not allege that any of its property was damaged by the wildfires or any other facts indicating that it is a direct victim of the wildfires. Cal OES acting as a conduit for FEMA, or funding part of the costs incurred by other state agencies, does not give rise to a direct claim. Section 2106 of the California Public Utilities Code does not support the Cal OES Claims.

11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.     <u>Sections 4421 and/or 4422 of the California Public Resources Code</u>

Second, Cal OES cites Sections 4421 and 4422 of the California Public Resources Code. Section 4421 provides:  "A person shall not set fire or cause fire to be set to any forest, brush, or other flammable material which is on any land that is not his own, or under his legal control, without the permission of the owner, lessee, or agent of the owner or lessee of the land."  Cal. Pub. Res. Code § 4421 (West 2019).  Section 4422 provides:

> A person shall not do any of the following:  (a) Willfully or knowingly allow fire to burn uncontrolled on land which he owns or controls, or to escape to the lands of any person other than that of the owner.  (b) Allow any fire kindled or attended by him to escape from his control or to spread to the land of any person other than from the land from which the fire originated.

Cal. Pub. Res. Code § 4422 (West 2019).  Neither of these statutes provides Cal OES or any other governmental entity with the right to recover from a party that violates either statute.  And, neither statute purports to make the Debtors liable for any damages caused by a fire.  Sections 4421 and 4422 of the California Public Resources Code do not support the Cal OES Claims.

3.     <u>Sections 13001, 13007, 13009 and 13009.1 of the California Health and Safety Code</u>

Third, Cal OES cites Sections 13001, 13007, 13009 and 13009.1 of the California Health and Safety Code.  None of these statutes support the Cal OES Claims.

<u>Section 13001</u> provides:

> Every person is guilty of a misdemeanor who, through careless or negligent action, throws or places any lighted cigarette, cigar, ashes, or other flaming or glowing substance, or any substance or thing which may cause a fire, in any place where it may directly or indirectly start a fire, or who uses or operates a welding torch, tar pot or any other device which may cause a fire, who does not clear the inflammable material surrounding the operation or take such other reasonable precautions necessary to insure against the starting and spreading of fire.

Cal. Health & Safety Code § 13001 (West 2019).  This statute does not provide Cal OES or any other governmental entity with the right to recover from a party that causes a fire.  And, this statute does not purport to make the Debtors liable for any damages caused by a fire.  Section 13001 does not support the Cal OES Claims.

12

Section 13007 provides: "Any person who personally or through another wilfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable *to the owner of such property* for any damages to the property caused by the fire." Cal. Health & Safety Code § 13007 (West 2019) (emphasis added). Cal OES does not allege that any of its property was damaged by the wildfires. Thus, Section 13007 does not support the Cal OES Claim.

Section 13009 provides:

> (a) Any person … who negligently, or in violation of the law, sets a fire, allows a fire to be set, or allows a fire kindled or attended by him or her to escape onto any public or private property … *is liable* for the fire *suppression costs* incurred in fighting the fire and for the *cost of providing rescue or emergency medical services*, and those costs shall be a charge against that person. The charge shall constitute a *debt* of that person, and is *collectible* by the person, or by the *federal, state, county, public, or private agency, incurring those costs* in the same manner as in the case of an obligation under a contract, expressed or implied.

Section 13009.1 provides:

> (a) Any person … who negligently, or in violation of the law, sets a fire, allows a fire to be set, or allows a fire kindled or attended by him or her to escape onto any public or private property … *is liable* for both of the following: (1) The *cost of investigating* and making any reports with respect to the fire. (2) The *costs relating to accounting* for that fire and the collection of any funds pursuant to Section 13009, including, but not limited to, the administrative costs of operating a fire suppression cost recovery program. The liability imposed pursuant to this paragraph is limited to the actual amount expended which is attributable to the fire.

> * * *

> (e) The liability constitutes a debt of that person and is *collectible* by the person, or by the *federal, state, county, public, or private agency, incurring those costs* in the same manner as in the case of an obligation under a contract, expressed or implied.

Cal. Health & Safety Code §§ 13009 & 13009.1 (emphasis added).

In contrast to the statutes discussed above, Sections 13009 and 13009.1 purport to make a person "liable" for negligently causing a fire and, importantly, they purport to make such liability a "debt" that is "collectible" by a governmental entity. *See Howell*, 18 Cal. App. 5th at 176 (finding that "Cal Fire's ability to recover its fire suppression costs is strictly limited to the recovery afforded by statute," and discussing "sections 13009 and 13009.1" as possible exceptions to this rule);

13

1   *see also United States v. State of Cal.*, 655 F.2d 914, 917 (9th Cir. 1980) (finding that Section 13009

2   of the California Health and Safety Code "supersede[s] state common law negligence liability.").

3   However, neither statute provides Cal OES with the right to recover from the Debtors based on the

4   facts alleged by Cal OES in the Cal OES Claims.

5          Assuming, *arguendo*, that Cal OES can sustain its burden of proving that the Debtors were

6   negligent or violated applicable law, Cal OES does not allege that it engaged or participated in any

7   fire suppression, rescue, or emergency medical services.  Nor does Cal OES allege that it

8   investigated the wildfires or made any reports.  Other state agencies may have performed such

9   services and incurred those costs.  Cal Fire, the agency that brought the lawsuit in *Howell*, has filed

10  23 proofs of claim against the Debtors, which claims include, among other things, fire suppression

11  costs.  Cal Fire is the California state agency responsible for fire protection.

12         But Cal OES does not purport to be bringing an action on behalf of Cal Fire or any other

13  public agencies that performed fire suppression, rescue, or emergency medical services in response

14  to the wildfires.  Cal OES acting as a conduit for FEMA, or funding part of the costs incurred by

15  other state agencies, does not give Cal OES a claim against the Debtors under Sections 13009 and

16  13009.1.  The TCC's research has not located a single case where Cal OES, as opposed to Cal Fire,

17  has asserted a claim under Sections 13009 or 13009.1.  These Chapter 11 Cases should not be the

18  testing grounds for novel legal theories, particularly where, as here, Cal OES' claims have the

19  potential to substantially diminish the recoveries available to the wildfire victims.

20              4.    Section 13009.6 of the California Health and Safety Code

21         Fourth, Cal OES cites Section 13009.6 of the California Health and Safety Code.

22  Section 13009.6 provides:

23              (1)    Those expenses of an emergency response necessary to protect the
                public from a real and imminent threat to health and safety by a public
24              agency to confine, prevent, or mitigate the release, escape, or burning of
                hazardous substances described in subdivision (c) are a charge against any
25              person whose negligence causes the incident, if either of the following
                occurs:
26
                        (A)    Evacuation from the building, structure, property, or public
27              right-of-way where the incident originates is necessary to prevent
                loss of life or injury.
28

14

> (B)    The incident results in the spread of hazardous substances or fire posing a real and imminent threat to public health and safety beyond the building, structure, property, or public right-of-way where the incident originates.
>
> (2)    Expenses reimbursable to a public agency under this section are a debt of the person liable therefor, and shall be collectible in the same manner as in the case of an obligation under contract, express or implied.

Cal. Health & Safety Code § 13009.6.

Sections 13009.6 also purports to give a public agency the right to recover expenses necessary to confine, prevent, or mitigate the release, escape, or burning of hazardous substances. But this statute does not provide Cal OES with the right to recover from the Debtors given the facts alleged by Cal OES. Cal OES has not identified any hazmat abatement services or other services within the scope of Section 13009.6 that it performed. Nor has Cal OES alleged that it has the authority to bring hazmat abatement claims on behalf of other agencies that may have performed such services. Section 13009.6 does not support the Cal OES Claims.

5.    Public Nuisance

Finally, Cal OES alleges that the Debtors created a public nuisance. In support of this theory of recovery, Cal OES cites Section 3494 of the California Civil Code and Section 731 of the California Civil Procedure Code.

Section 3494 provides:  "A public nuisance may be abated by any public body or officer authorized thereto by law." Cal. Civ. Code. § 3494 (West 2019). Section 731 provides:

> An action may be brought by any person *whose property is injuriously affected*, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor. A civil action may be brought in the name of the people of the State of California *to abate a public nuisance*, as defined in Section 3480 of the Civil Code, *by the district attorney or county counsel of any county in which the nuisance exists, or by the city attorney of any town or city in which the nuisance exists*.

Cal. Civ. Proc. § 731 (West 2019) (emphasis added).

As a threshold matter, public nuisance claims are not an exception to the free public services doctrine. *See County of San Luis Obispo v. Abalone Alliance*, 178 Cal. App. 3d 848, 858-59, 223 Cal. Rptr. 846, 851 (Cal. Ct. App. 1986) (government entity could not recover costs of abating

15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   public nuisance through exercise of police power absent specific statutory authorization); 6 MILLER

2   & STARR CAL. REAL EST. § 19:33 (4th ed. 2019) ("[I]n absence of a specific ordinance, the

3   abatement of a public nuisance is a public expense, and the public authorities cannot recover the

4   costs of abatement from the property owner").

5         Assuming, *arguendo*, that Section 731 provides an exception, Cal OES does not allege that

6   any of its property was damaged by the wildfires. Moreover, any civil action brought under

7   Section 731 to abate a public nuisance would need to be commenced by the district attorney or the

8   county counsel of the county in which the nuisance exists. Section 731 only authorizes such district

9   attorney or county counsel to seek abatement and not damages. Cal OES does not have standing

10  to assert such action. In sum, none of the statutes cited by Cal OES permit it to recover from the

11  Debtors based on the facts alleged in the Cal OES Claims. Cal OES' remaining common law

12  claims—*i.e.*, negligence and negligence *per se*—are barred under the free public services doctrine.

13  The Cal OES Claims simply have no place in these Chapter 11 Cases.

14        **C.      Lack of Standing to Recover Federal Share and Demand for Accounting**

15        Assuming, *arguendo*, that Cal OES has the right to assert claims against the Debtors under

16  Sections 13007, 13009, 13009.1 and 13009.6 of the California Health and Safety Code based on

17  amounts paid to other entities that performed work or suffered damages, the Cal OES Claims must

18  be limited to the amounts it actually funded—*i.e.*, $289,214,773. Cal OES offers no explanation

19  as to how it suffered damages by functioning as a conduit for FEMA. At minimum, the portion of

20  the Cal OES Claims attributable to the "Federal Share" should be disallowed.

21        The TCC further demands an accounting for all amounts funded by Cal OES, including all

22  amounts that are the subject of proofs of claim filed by the recipients of such funds, the allowance

23  of which could result in duplicative recoveries from the Debtors.

24        **D.      Statute of Limitations**

25        The TCC objects on all applicable statutes of limitations under California law, including

26  but not limited, the statute of limitations for asserting a claim for fire suppression expenses under

27  Section 13009 of the California Health and Safety Code. *See* Cal. Health & Safety Code § 13009(a)

28  (West 2019); *Wilson*, 240 Cal. App. 2d at 576-578 (recovery of fire suppression expenses by the

                                                    16

proper state agency pursuant to Section 13009 of the California Health and Safety Code must be brought within two years after the fire); 34 CAL. JUR. 3D FIRES AND FIRE PROTECTION § 48 (2019) (noting "legislative intent to impose contractual liability which is governed by the two-year statute of limitations relating to contract actions" for "the expenses of fire suppression").

The facts Cal OES pled indicate that the claims related to the 2015 Butte Fire (Claim No. 87748) are untimely. The attachment to that claim, at page 4, pleads that the Butte Fire "began on September 9, 2015, and lasted for several days[.]" The two-year statute of limitations ran out, at the latest, "several days" after September 9, 2017. Cal OES does not assert that it initiated litigation or otherwise acted to toll the statute of limitations by that date. Accordingly, Claim No. 87748 for the 2015 Butte Fire should be disallowed as untimely.

## VI.    **RESPONSES TO THIS OBJECTION**

To contest this Objection, the claimant, here Cal OES, must file and serve a written response (a "**Response**") so that it is received no later than December 31, 2019 at 4:00 p.m. (Pacific Time) (the "**Response Deadline**"). Such Response must be filed and served on all "Standard Parties" as defined in, and in accordance with, the *Amended Order Implementing Certain Notice and Case Management Procedures* entered on May 14, 2019 (EFC No. 1996) ("**Case Management Order**"), so as to be received by no later than the Response Deadline. If a claimant fails to timely file and serve a Response by the Response Deadline, the TCC may present to the Court an appropriate Order disallowing and expunging the Cal OES Claims without further notice to the claimant or a hearing. The TCC may file and serve a reply to any Response to this Objection. The TCC reserves the right to seek an adjournment of the hearing on any Response to this Objection, which adjournment will be noted on the notice of agenda for the hearing.

## VII.    **RESERVATION OF RIGHTS**

The TCC hereby reserves the right to object in the future to any of the proofs of claim listed in this Objection on any ground, and to amend, modify, and/or supplement this Objection to the extent an objection to a claim is not granted. The TCC further reserves the right to respond to any new legal theories advanced by Cal OES in any response to this Objection, including legal theories

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

not set forth in the Cal OES Claims. The TCC further reserves the right to commence a proceeding

to subordinate any allowed claim held by Cal OES or any other governmental entity.

## VIII. COMPLIANCE WITH BANKRUPTCY LOCAL RULE 3007-1

In accordance with Bankruptcy Local Rule 3007-1(a), true and correct copies of the claims that are the subject of this Objection are attached hereto as **Exhibit C**. To the best of the TCC's knowledge and belief, this Objection and **Exhibit A** comply with Bankruptcy Local Rule 3007-1 and Bankruptcy Rule 3007(e).

## IX. NOTICE

Notice of this Objection has been provided to: (a) the Office of the United States Trustee for the Northern District of California; (b) the parties listed on **Exhibit A** annexed hereto under the heading "Claimant"; (c) the "Standard Notice Parties" as defined in the Case Management Order; and (d) the "Rule 2002 Notice Parties" as defined in the Case Management Order. The TCC respectfully submits that such notice is sufficient under the circumstances.

## X. NO PREVIOUS REQUEST

No previous request for the relief sought herein has been made by the TCC to this or any other court.

## XI. CONCLUSION

WHEREFORE, the TCC respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit B**, disallowing and expunging the claims listed on **Exhibit A** and granting such other and further relief as this Court deems just and proper.

Dated: December 12, 2019

BAKER & HOSTETLER LLP

By: /s/ Robert A. Julian

*Attorney for The Official Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18