**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF STACY CAMPOS IN SUPPORT OF DEBTORS' PRELIMINARY OPPOSITION TO TODD HEARN'S MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:  December 17, 2019<br>Time:  10:00 a.m.<br>Place: United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA  94102 |

1. I, Stacy Campos, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am employed as a Managing Counsel, Employment, Labor and Workers' Compensation, in the Law Department of Pacific Gas and Electric Company (the "**Utility**"), a wholly-owned subsidiary of PG&E Corporation ("**PG&E Corp.**") and together with Utility, the "**Debtors**" in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). In my current role, I am responsible for supervising two employment and labor attorneys, and advising leaders on human resource and labor issues. My team is responsible for the arbitration step of the Utility/International Brotherhood of Electrical Workers ("IBEW") Local 1245 collective bargaining agreement.

2. I joined the Utility in 1995. I obtained my Juris Doctorate from University of California, Hastings College of Law in 1991 and was admitted to the State Bar of California the same year. Prior to working at the Utility, I was an associate at Littler, a national employment and labor law firm.

3. I submit this declaration in support of the Debtors' Opposition to the Motion for Relief from the Automatic Stay filed by Todd Hearn ("**Hearn**"), filed on the date hereof, which Motion seeks to commence a lawsuit (the "**Proposed Lawsuit**") against the Utility and twenty-five (25) unnamed defendants in the Superior Court of California in and for the County of Napa. I am authorized to submit this declaration on behalf of the Debtors and, if called upon, would testify to the facts set forth herein.

4. The facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors, or my opinion based upon experience, knowledge, and information concerning the matters discussed herein.

5. Hearn is a former employee of the Utility. He worked as a lineman until June 20, 2018, when the Utility placed him on paid leave while investigating allegations of employee misconduct relating to timecard fraud and misreporting of work activities in the Utility's Napa,

1  California yard.  The Utility first learned of Hearn's potential misconduct while investigating his
2  crew foreman for related timecard falsification.  As a result of findings in the Utility's investigation
3  of the foreman, the Utility expanded its investigation to include the time records of the entire crew
4  working the same shifts.  After a thorough investigation, the Utility terminated Hearn on January
5  22, 2019 for serious violations of the Employee Code of Conduct.  As a result of the investigation,
6  the Utility also terminated four other employees for similar misconduct.

7        6.     The IBEW then filed a grievance on Hearn's behalf pursuant to procedures set forth
8  in the Collective Bargaining Agreement (the "**CBA**") between the Utility and the IBEW asserting
9  that he was "terminated without just and sufficient cause."  The grievance proceeding is ongoing.
10 In the Proposed Lawsuit, Hearn contends he was terminated in retaliation for alleged safety concerns
11 he raised over the Utility's use of TripSavers.  TripSaver devices can be used to automatically de-
12 energize power lines when a problem is detected and re-energize the lines when the problem is
13 cleared.

14       7.     Hearn's allegations concerning the Utility's use of TripSaver devices were set forth
15 in a June 25, 2019 letter submitted to the PG&E Board of Directors.  Mr. Hearn has not responded
16 to Mr. Singh's July 17, 2019 letter in response.

17       8.     The Utility maintains that Hearn was terminated as a result of his egregious and
18 repeated violations of the Employee Code of Conduct, and contends that Hearn's accusations of
19 retaliatory termination are without any merit.

20       9.     Section 102.6 of the current CBA sets forth five steps for resolving disputes between
21 the Union and the Utility, including terminations.  Disputes over termination, generally bypass Step
22 One and proceed to Step Two for adjudication before a Local Investigating Committee.  The Local
23 Investigating Committee consists of a Utility Labor Relations Representative, an IBEW Business
24 Representative, the Supervisor whose decision is the subject of the grievance, and the Union Shop
25 Steward representing the department involved.  If no resolution occurs at that stage, the grievance

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

is referred to the Fact Finding Committee at Step Three. If the grievance is not resolved at Step Three, the Fact Finding Committee may refer the grievance to Step Four, the Review Committee.

10. If the grievance is not resolved at any of these four steps it may be referred to binding arbitration. Once submitted to arbitration, the Utility and IBEW each appoint two members to form the Arbitration Board. The parties must make a good-faith effort to agree mutually on a fifth member to serve as Chairman of the Arbitration Board, and if they cannot agree, they must select a Chairman from a panel of ten arbitrators chosen annually by the Utility and IBEW. The Arbitration Board has discretion to issue an award that binds the Utility, the Union and the grievant.

11. Through the grievance process, Hearn seeks reinstatement of his employment with the Utility, along with compensation for lost wages, overtime opportunities and benefits. The grievance process for Hearn is currently at the end of Step Two and the IBEW and Utility are finishing the Local Investigating Committee Report that will be forwarded to Step Three, Fact Finding. If he prevails, the grievance could result in reinstatement of Hearn's employment and the award of lost wages and benefits

12. Section 102.1 of the CBA provides that "apart from those matters that the parties have specifically excluded by way of Section 102.2, all disagreements shall be resolved within the scope of the grievance procedure," and section 102.2(b) states that disputes involving "[d]ischarge, demotion, suspension or discipline of an individual employee" "shall be determined by the grievance procedures established herein."

13. Although the Utility has designated Hearn as ineligible to work on any Utility properties/projects, this restriction in no way prevents Hearn from obtaining employment with one of many contractors, municipalities or other utilities. The Utility imposes no restrictions on the hiring practices of its contractors.

14. PG&E is not the only utility operating in California. Several municipal governments operate their own utility services and rely on linemen to maintain infrastructure. In addition, cable

companies need and regularly employ linemen. Linemen are also in short supply in California, putting individuals with Hearn's background and training in high demand.

15. The Utility has already expended significant time and resources in the grievance process for Hearn's grievance. If the Proposed Lawsuit goes forward, it will require the Utility to commit further estate assets to adjudicate similar issues raised in the grievance proceeding.

Dated: December 12, 2019   /s/   *Stacy Campos*
                                Stacy Campos

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119