1   XAVIER BECERRA, SBN 118517
    Attorney General of California
2   MARGARITA PADILLA, SBN 99966
    Supervising Deputy Attorney General
3   JAMES POTTER, SBN 166992
    Deputy Attorney General
4   1515 Clay Street, 20th Floor
    P.O. Box 70550
5   Oakland, CA 94612-0550
    Telephone: (510) 879-0815
6   Fax: (510) 622-2270
    Margarita.Padilla@doj.ca.gov
7   James.Potter@doj.ca.gov

    XAVIER BECERRA, SBN 118517
    Attorney General of California
    DANETTE VALDEZ, SBN 141780
    ANNADEL ALMENDRAS, SBN
    192064
    Supervising Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
    Telephone: (415) 510-3367
    Fax: (415) 703-5480
    Danette.Valdez@doj.ca.gov
    Annadel.Almendras@doj.ca.gov

8   STEVEN H. FELDERSTEIN, SBN 059678
    PAUL J. PASCUZZI, SBN 148810
9   FELDERSTEIN FITZGERALD
    WILLOUGHBY PASCUZZI & RIOS LLP
10  500 Capitol Mall, Suite 2250
    Sacramento, CA  95814
11  Telephone: (916) 329-7400
    Fax: (916) 329-7435
12  sfelderstein@ffwplaw.com
    ppascuzzi@ffwplaw.com
13
    Attorneys for California Department of Forestry
14  and Fire Protection, et al.

15              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
16                 SAN FRANCISCO DIVISION

17  In re:                          Bankruptcy Case
                                    No.  19-30088 (DM)
18  PG&E CORPORATION
                                    Chapter 11
19      - and –
                                    (Lead Case)
20  PACIFIC GAS AND ELECTRIC
    COMPANY,                        (Jointly Administered)
21
                Debtors.
22  ☐       Affects PG&E Corporation        Date:   December 17, 2019
                                            Time:   10:00 a.m.
23  ☐       Affects Pacific Gas and         Ctrm:   17
            Electric Company                Judge:  Dennis Montali
24  ☑       Affects both Debtors
25
26          STATEMENT OF THE CALIFORNIA STATE AGENCIES IN
         RESPONSE TO THE COURT'S MEMORANDUM REGARDING
            CONFIRMATION ISSUES [DOCKET NO. 4760]
27
28

The California Department of Forestry and Fire Protection, California Department of Toxic Substances Control, California Governor's Office of Emergency Services, California Department of Veterans Affairs, California State University, California Coastal Commission, California Department of Parks and Recreation, California Department of Fish and Wildlife, California Department of Transportation, California Department of Developmental Services, California Department of Conservation, Division of Oil, Gas and Geothermal Resources, California Regional Water Quality Control Boards, California State Water Resources Control Board, California Air Resources Board and California Department of Water Resources (collectively, the "California State Agencies") hereby file this response to the Court's *Memorandum Regarding Confirmation Issues* ("Memorandum") [Docket No. 4760] as follows:

1.      Among other things, the Memorandum requested principal counsel for the Debtors, the two official committees and the Ad Hoc Noteholders Committee, and the Ad Hoc Subrogation Claim Holders meet and confer as to whether the Court "should fix an early deadline for confirmation objections based on the requirements of 11 U.S.C. § 1129(a)(1), (2), (3), (4), (5) and (13)" and identify any other confirmation related issues that the Court could address through briefing and argument prior to final approval of a disclosure statement.  Memorandum at 3-4.

2.      While not included in the named principal counsel, the California State Agencies file this statement to address their issues of concern with the Court.  The California State Agencies assert approximately $3.3 billion in wildfire-related claims, as well as many other non-wildfire-related claims that must be properly dealt with under any chapter 11 plan.

3.      The California State Agencies are generally not opposed to the Court setting an early deadline for confirmation objections based on 11 U.S.C. § 1129(a)(4), (5) and (13), so long as the identifications and disclosures required by 11 U.S.C. § 1129(a)(5) are contained in the solicitation materials.  To the extent such information is not provided at the time of solicitation, an early deadline for confirmation objections is not appropriate.

4.      The California State Agencies are aware that the Debtors have filed their Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an

-1-

Order (I) Authorizing the Debtors and TCC to Enter into Restructuring Support Agreement with the TCC, Consenting Fire Claimant Professionals, and Shareholder Proponents, and (II) Granting Related Relief (Dkt. No. 5038) (the "Tort Claimants RSA Motion"), in which they seek approval of a restructuring support agreement (the "RSA") between them and, among others, the Official Committee of Tort Claimants ("TCC"). The Debtors also filed their *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated December 12, 2019* (Dkt. No. 5101) ("Amended Plan"). The California State Agencies reserve all rights with respect to the Tort Claimants RSA Motion and confirmation of the Amended Plan contemplated by the RSA (or any other chapter 11 plan). As of the filing of this statement, however, the California State Agencies have not thoroughly reviewed the Amended Plan.

5.     With respect to 11 U.S.C. § 1129(a)(1), (2) and (3), any early deadline for confirmation objections should not be imposed so long as critical elements required for a determination of those subsections are missing. For example:

a.     Potential Unequal Treatment of Claims. The proposed *Joint Chapter 11 Plan of Reorganization of Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders* [Dkt. No. 4257] ("Noteholders/TCC Plan") and the proposed Debtors' and Shareholder Proponents' Amended Plan do not adequately explain whether there will be one wildfire trust or multiple trusts "to administer, process, settle, resolve, liquidate, satisfy, and pay" wildfire claims. *See* Noteholders/TCC Plan, Art. 1, § 1.79; RSA Term Sheet page 3; Amended Plan Art. 1, § 1.78. The possibility of more than one trust raises the possibility of wildfire trusts funded in different amounts with different wildfire claims channeled to unequally funded trusts with different claims resolution procedures. This potential difference in the treatment of wildfire claims implicates several subsections of section 1129, including possibly (a)(1), (2) and (3). The plan proponents must clarify whether their respective plans will create one or more wildfire trusts before the Court sets an early deadline with respect to plan confirmation as suggested in its Memorandum.

b.     Trust Governance and Operation. Neither plan attaches or provides any meaningful description of the trust agreements or the claims resolution procedures that will

-2-

govern the resolution, liquidation, and payment of claims from their respective wildfire trusts. *See* Noteholders/TCC Plan, Art. 1, §§ 1.78, 1.79, and 1.80; Amended Plan, Art. 1, §§ 1.76, 1.78 and 1.81. Nor does either plan provide the identities of the trustee(s) for the wildfire trust or the members of the committee or board to oversee the trusts. *See* Noteholders/TCC Plan, Art 1, §§ 1.81 and 1.82; Amended Plan, Art. 1, §§ 1.80 and 1.81. Under the two plans, the plan proponents will provide this critical information just fourteen days before the confirmation objection deadline (when they file their respective Plan Supplements). *See* Noteholders/TCC Plan, Art 1, § 1.154; Amended Plan, Art. 1, 1.142.

Such short notice may be justified where a supplement includes only schedules of rejected contracts, debtor-retained causes of action, new organizational documents, and the identity of new officers. Here, however, that document will contain detailed information regarding the treatment of wildfire creditors' claims, including (i) how creditors may assert wildfire claims against the trust(s), (ii) procedures for resolving those claims, (iii) who will decide how claims are resolved, and (iv) what is the form of consideration for satisfaction of those claims. Fourteen days is clearly insufficient for wildfire creditors, like the California State Agencies, to review a likely lengthy and detailed trust agreement and claims resolution procedures to assess the treatment of its claims and decide whether to object to that treatment. In particular, given the size of the California State Agencies' claims, they are entitled to ensure that the trust is governed fairly by a neutral and experienced trustee(s).

Accordingly, the Court should not impose a plan confirmation objection deadline in the absence of such necessary information. If the Court is nevertheless inclined to set an early objection deadline for those Code subsections, then the Court should also require the plan proponents to file the trust agreements, claim resolution procedures, and the identities of the trustee(s) and members of the oversight committee at least thirty (30) days before that early objection deadline.

6. In addition to the foregoing, the California State Agencies have preliminarily identified a few issues of concern that are not addressed fully in either of the proposed plans. The California State Agencies intend to meet and confer with the plan proponents to address these and

any other subsequently identified deficiencies, and reserve all rights to identify other issues and make other objections at the appropriate time. The California State Agencies are not suggesting that these are issues that need to be briefed in advance of confirmation. Three of these areas of concern are the following:

        a.      Specification of Treatment of Unimpaired Environmental Claims. The utility Debtor ("Utility") has significant environmental obligations and liabilities to multiple state agencies under various state and federal environmental laws. These include pre- and post-petition "Claims," statutory, regulatory and injunctive obligations, and obligations under permits, orders and agreements. The Utility has environmental obligations and liabilities at many sites, including its fossil fuel-fired and nuclear power-plants, its compressor stations (Hinkley and Topock), scores of old manufactured gas plants (also known as town gas sites), miscellaneous service locations and six large closed commercial hazardous waste landfills. In its 2018 Annual Hazardous Substance Mechanism ("HSM") Report to the California Public Utilities Commission ("CPUC"), the Utility reported that it had recorded $105,808,224 in total HSM costs in connection with environmental remediation at numerous sites for 2018 alone.

        Neither plan sets forth in specific detail the treatment for California State Agencies' respective environmental Claims as well as the Utility's injunctive, permit, order and agreement obligations. The only specific reference to environmental liability is in Section 10.13 of each plan and only provides that the discharge does not affect "any environmental liability to a Governmental Unit that the Debtors, the Reorganized Debtors, any successors thereto, or any other Person or Entity may have as an owner or operator of real property after the Effective Date[.]" *See* Noteholders/TCC Plan, Art. 10, § 10.13; Amended Plan, Art. 10, § 10.13.

        The California State Agencies request that any proposed plan specify that the California State Agencies' respective environmental Claims, as well as the Utility's injunctive, permit, order and agreement obligations, pass through unimpaired as if no bankruptcy had been filed, and that the determination, adjudication, payment, compliance and resolution of any disputes regarding these matters shall occur in the appropriate non-bankruptcy forum as if no bankruptcy had been filed. This was the treatment accorded to such claims in the 2001

bankruptcy case of the Utility. Since most of the Utility's regulatory and environmental obligations are paid for through rates, this treatment should not be a significant additional financial commitment for the Reorganized Debtor. However, if there is not a pass-through provision, the estate will incur substantial expenses resolving (through settlement or litigation) and then paying its environmental Claims.

b. <u>Unfulfilled Obligations under First PG&E Chapter 11 Plan</u>. The confirmed chapter 11 plan in the Utility's first bankruptcy case obligated PG&E to transfer certain watershed lands. These transactions were still in process at the time these bankruptcy cases were filed and the watershed lands were carved out from the DIP loan collateral. Neither plan sets forth in specific detail what is to happen with these transfers. The California State Agencies request that any current chapter 11 plan specifically provide that these transfers proceed to completion.

c. <u>Department of Water Resources/CERS Issues</u>. The Department of Water Resources ("DWR") filed protective claims arising out of the Utility's ongoing regulatory obligations that relate to the delivery of water and other services critical to management of the State's water supply for the benefit of the public and to protect fish and wildlife habitat. In addition, DWR is entitled to refunds in the Utility's transmission rate cases pending before FERC for 2018 and 2019. Neither plan sets forth in specific detail what is to happen with the Utility's ongoing regulatory obligations owed to the DWR or FERC refunds for 2018 and 2019. DWR requests that any chapter 11 plan specifically preserves these rights.

In addition, DWR, by and through its California Energy Resources Scheduling Division ("CERS"), filed a protective claim regarding the Utility's obligation to bill and collect charges from its customers that pay for the $11.5 billion in bonds that CERS issued to purchase power on behalf of the investor-owned utilities, including the Utility, during the California energy crisis. The funds that the Utility collects are held in trust for the benefit of CERS.

Since 2000, the Utility and dozens of other parties, including CERS, have engaged in complex regulatory proceedings and appellate litigation arising out of the 2000-2001 California energy crisis. Over the years, funds have been set aside in various qualified settlement funds and

in one or more accounts held by the California Power Exchange pursuant to the terms of over 60 settlement agreements approved by the CPUC and the Federal Energy Regulatory Commission. These settlement funds were carved out of the DIP collateral. DWR requests that the resolution of such funds should continue through these proceedings as if no bankruptcy had been filed, as currently provided for in section 4.21 of the Amended Plan. Any chapter 11 plan should specifically so provide.

## RESERVATION OF RIGHTS

Neither this statement nor any subsequent appearance, pleading, proof of claim, claim or suit is intended or shall be deemed or construed as:

a. a consent by the California State Agencies to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the California State Agencies;

b. a waiver of any right of the California State Agencies to (i) have an Article III judge adjudicate in the first instance any case, proceeding, matter or controversy as to which a Bankruptcy Judge may not enter a final order or judgment consistent with Article III of the United States Constitution, (ii) have final orders in non-core matters entered only after de novo review by a District Court Judge, (iii) trial by jury in any proceeding so triable in the Chapter 11 Cases or in any case, controversy, or proceeding related to the Chapter 11 Cases, (iv) have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (v) any and all rights, claims, actions, defenses, setoffs, recoupments or remedies to which the California State Agencies are or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved hereby; or

c. a waiver of any objections or defenses that the State of California, the California State Agencies or any other agency, unit or entity of the State of California may have to this Court's jurisdiction over the State of California, the California State Agencies or such other agency, unit or entity based upon the Eleventh Amendment to the United States

///

-6-

Constitution or related principles of sovereign immunity or otherwise, all of which objections and

defenses are hereby reserved.

Dated: December 13, 2019    Respectfully submitted,

          XAVIER BECERRA
          Attorney General of California
          MARGARITA PADILLA
          Supervising Deputy Attorney General

By: */s/ Paul J. Pascuzzi*
    STEVEN H. FELDERSTEIN
    PAUL J. PASCUZZI
    FELDERSTEIN FITZGERALD
    WILLOUGHBY PASCUZZI & RIOS LLP
    Attorneys for California Department of Forestry and
    Fire Protection, California Regional Water Quality
    Control Boards, California Department of Toxic
    Substances Control, California Governor's Office of
    Emergency Services, California Department of Veterans
    Affairs, California State University, California State
    Water Resources Control Board, California Air
    Resources Board, California Coastal Commission,
    California Department of Fish and Wildlife, California
    Department of Parks and Recreation, California
    Department of Transportation, California Department of
    Developmental Services, California Department of
    Conservation, Division of Oil, Gas and Geothermal
    Resources and California Department of Water
    Resources

1

2 **<u>PROOF OF SERVICE</u>**

3      I, Sabrina M. Cisneros, declare:

4      I am a resident of the State of California and over the age of eighteen years, and not a

5 party to the within action; my business address is 500 Capitol Mall, Suite 2250, Sacramento, CA

6 95814.  On December 13, 2019, I served the within documents:

7      **STATEMENT OF THE CALIFORNIA STATE AGENCIES IN**
     **RESPONSE TO THE COURT'S MEMORANDUM REGARDING**
8      **CONFIRMATION ISSUES [DOCKET NO. 4760]**

9 By Electronic Service only via CM/ECF.

10

11                                  */s/ Sabrina M. Cisneros*
                                 Sabrina M. Cisneros

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28