Northern California Law Group, PC.
Joseph Feist - SBN 249447
Jonathan J. Griffith – SBN 266891
2611 Esplanade
Chico, CA 95973
Telephone: (530)433-0233
Fax: (530) 345-2103

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY<br><br><br><br><br><br><br><br>Affects:<br>Both Debtors | Case No.: 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**OBJECTION TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS AND TCC TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE TCC, CONSENTING FIRE CLAIMANT PROFESSIONALS, AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF [DOCKET NO. 5038]**<br><br>DATE: DECEMBER 17, 2019<br>TIME: 10:00 A.M.<br>CTRM: 17<br>JUDGE: DENNIS MONTALI |

///

///

Camp Fire Claimants, as specified in the Bankruptcy Rule 2019 disclosure filed contemporaneously with this objection ("Camp Fire Claimants" hereafter), by and through their attorney, Joseph Feist, hereby Object to Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and FED. R. BANKR. P. 6004 and 9019 for entry of an order (I) Authorizing the Debtors and TCC to enter into restructuring support agreement ("RSA" hereafter) with the TCC, consenting fire claimant professionals, and shareholder proponents, and (II) Granting related relief.

## INTRODUCTION

Camp Fire Claimants object to the current motion because the RSA calls for a plan that would violate 11 U.S.C§ 1123(a)(4) and thus endangers the Debtors' ability to timely exit bankruptcy. The RSA fails to provide the same treatment for each claim of the Wildfire Claimants Class without justification and prevents affected class members from being able to make an informed decision on whether to agree to less favorable terms.

## 11 USC SECTION 1123(a)(4)

11 USC Section 1123(a)(4) states that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Equal treatment and the principle of equitable distribution between similarly situated creditors is a pillar of the Bankruptcy Code. Pre-plan settlements generally must treat similarly situated creditors similarly but may deviate from this rule by presenting to the Court specific and credible grounds for doing so. This effectively creates a two-step analysis: 1) does the settlement provide for disparate treatment

between similarly situated creditors, and 2) if so, are there specific and credible grounds for doing so.

The RSA specifies that the parties to the RSA will "promptly enter into discussions for the settlement of all preference cases arising out of the Tubbs fire...".  The RSA further states that "upon entry of the RSA approval order, the Debtors shall (i) have entered into one or more settlement agreements settling all of the Tubbs cases (the "Tubbs Settlements").  which shall (A) allow such claims subject to payment solely from the Fire Victims Trust (as defined in the term sheet and provided in the amended plan) (B) be in form and substance satisfactory to the parties thereto.  (C) be confidential and sealed, and (D) not be admissible or introduced into evidence for any purpose and any proceeding, including without limitation estimation matters or in any other case of proceeding in or related to the chapter 11 cases and have filed a motion with the bankruptcy court seeking approval of the Tubbs Settlements on short notice:".

The RSA calls for disparate treatment among similarly situated creditors by preferencing Tubbs Claimants over all other claimants in the same class.  The RSA calls for all Tubbs Claimants to have their claims settled separately and apparent from others prior to confirmation of a plan.  This creates a scenario where once the Wildfire Claimants Trust ("TRUST" hereafter) is created, Tubbs Claimants can be paid out almost immediately.

Conversely, all other remaining fire claimants will be subject to procedures determined at a future date. Remaining claimants will have to wait until the TRUST is created then submit and potentially litigate claims, while Tubbs Claimants would be able to receive funds immediately after the TRUST is formed for their pre confirmation settlement agreements.

Further unknown is what will be covered by the TRUST as it relates to damages.  The RSA does not indicate what damages will be accounted for, such as pain and suffering or

emotional distress. The language in the RSA gives rise to the TRUST potentially litigating these issues against Camp Fire Claimants but Tubbs Claimants would not have to endure such litigation as their claims would already be settled. This will make receipt of TRUST funds for Tubbs Claimants more certain and timelier than all other members of the class.

While the TRUST calls for $13.5 Billion in total, only a $5.4 will be available immediately through cash while the balance will be contributed later and on contingent circumstances. Based on the RSA, the full amount of available funds upon creation could already be accounted for by Tubbs Claimants Settlements resulting in other class members having to wait years before funds are even available for them

## INHERENT INABILITY TO AGREE TO LESS FAVORABLE TREATMENT

The RSA if approved would establish the formation of secret deals for Tubbs Claimants that no other claimants in the same class will be made aware of. Debtors are asserting that Wildfire Claimants will be voting on approval of a $13.5 billion settlement but that isn't the case. They will be voting on $13.5 billion minus whatever is already accounted for to Tubbs Claimants, which could be all the funds available upon creation of the TRUST. This isn't an issue of every claimant sharing in the unknown and uncertainty of the TRUST procedures as the plan calls for settlement of Tubbs Claims ahead of confirmation. The actual amount of the trust that will be available when it is created will only be known to Tubbs Claimants thus preventing the other members of the class from being able to make an informed decision.

By withholding this essential information from the class, it prevents them from agreeing to take less by withholding the very information that would determine if the amount agreed upon

is in fact less or not.  This would cause any plan based on the RSA to not comply with 11 U.S.C§ 1123(a)(4) thus preventing confirmation and a timely exit from bankruptcy.

While applicable Bankruptcy law does not guarantee equal results for all members of a class the basic premise is to ensure equal process.  Members of a class can agree to accept less than other members of the same class voluntarily, but they cannot be denied equal process.  The RSA will deny every class member, but Tubbs Claimants, the valuable and necessary information needed to make an informed decision and potentially waive their rights protected by 11 U.S.C§ 1123(a)(4).

## CONCLUSION

Approval of the RSA would lead to a Plan proposal that would be unconfirmable due to violations of 11 U.S.C§ 1123(a)(4) and thus endangering the ability of the Debtors to timely exit bankruptcy.  Continuation of this matter is also warranted as the potential irreparable harm to tens of thousands of fire victims if the motion is granted outweighs the urgency in which the Debtors want the current motion granted.

Respectfully Submitted,

Dated: _____12/15/2019_____        _/s/ Joseph Feist_____

Joseph Feist

Northern California Law Group, PC.