TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
GREG M. ZIPES (NY SBN 2478014)
Trial Attorney
CAMERON M. GULDEN (MN SBN 310931)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA  94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: marta.villacorta@usdoj.gov

Attorneys for Andrew R. Vara,
Acting United States Trustee for Region 3[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**,<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors**.<br>☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>☒  Affects both Debtors<br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 DM (Lead Case)<br><br>No. 19-30089 DM<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>Date:   December 17, 2019<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  Hon. Dennis Montali<br>           450 Golden Gate Avenue<br>           16th Floor, Courtroom 17<br>           San Francisco, CA  94102 |

**UNITED STATES TRUSTEE'S RESPONSE**
**TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) and FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS AND TCC TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE TCC, CONSENTING FIRE CLAIMANT PROFESSIONALS, AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF**

---

[1] Andrew R. Vara, Acting United States Trustee for Region 3, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

1

Andrew R. Vara, Acting United States Trustee for Region 3 (the "**United States Trustee**"), by and through his undersigned counsel, submits this objection and response (the "**Response**") to the Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors and the Official Committee of Tort Claimants (the "**TCC**") to enter into and perform under that certain Restructuring Support Agreement, dated as of December 6, 2019 (the "**Tort Claimant RSA**"), among the Debtors, the TCC, the Consenting Fire Claimant Professionals,[2] and Shareholder Proponents (the "**RSA Motion**") (ECF No. 5038).

## I. RESPONSE

As a preliminary matter, the United States Trustee acknowledges the difficult challenges the Debtors face in trying to fashion a settlement with tens of thousands of claimants while trying to meet the plan confirmation deadline of June 30, 2020. The United States Trustee requests further information before the Court approves the wide-ranging relief sought in the RSA Motion:

(a) The Court has emphasized the need to provide due process, particularly for the fire victims. The Debtors must explain why the RSA Motion, which proposes to cap the Debtors' liability to these victims at $13.5 billion, must be heard on shortened notice over the holiday season. The parties to the RSA appear to have arbitrarily chosen December 20, 2019 as the termination date of the RSA and have used that deadline to argue for an expedited hearing. *See* RSA at 6. The Debtors should explain why this matter cannot be adjourned.

(b) Relatedly, the RSA should not usurp the plan process. The Debtors should confirm that the RSA is not intended to circumvent the requirements of 11 U.S.C. § 1129, including, as appropriate, the absolute priority rule and the best interest of creditors test.

(c) The RSA Motion describes an opt-in procedure for releases under any plan. The Debtors should clarify that the proposed releases will not violate the Ninth Circuit prohibition of third-party releases.

Absent adequate explanations relating to the above concerns, the RSA Motion should not be approved at this time with such short and limited notice.

---

[2] Unless otherwise indicated, all capitalized terms in this Response have the meanings defined in the RSA Motion.

### A. Background

1. On January 29, 2019, the Debtors commenced the above-captioned cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. ECF No. 1.

2. No trustee has been appointed in the Debtors' cases. *See generally* Case Dockets.

3. On February 12, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors. ECF No. 409. On February 15, 2019, the United States Trustee appointed the TCC. ECF No. 453.

4. The Debtors' latest monthly operating report for the month of October 2019 ("**October MOR**") shows an unaudited balance sheet of over $85 billion in assets and total shareholder equity of close to $9 billion. Copies of the relevant pages of the October MOR are attached as Exhibit A.

### B. The RSA Motion

5. The movants filed the RSA Motion on December 9, 2019, ECF No. 5038, as well as a motion to shorten time (the "**Motion to Shorten**"). ECF No. 5040.

6. On December 9, 2019, the Court entered an order granting the Motion to Shorten Time, requiring objections by December 16, 2019, at 12:00 p.m. PST, and setting a hearing for December 17, 2019, to consider the RSA Motion. ECF No. 5046.

7. The RSA Motion announces a global settlement among the Debtors, the TCC, and the law firms, which the Debtors state represent individuals holding approximately 70% in number of prepetition fire claims filed against the Debtors (the "**Consenting Fire Claimant Professionals**"), and certain funds and accounts managed by Abrams Capital Management, LP and Knighthead Capital Management, LLP (the "**Shareholder Proponents**"). RSA Motion at 8 (unless otherwise noted, the page numbers are generated by the Court's filing system).

8. The parties have resolved, among other things, the treatment and discharge of individual fire claims under the Debtors' chapter 11 plan. Over $36 billion in asserted prepetition fire liabilities will be resolved through the contribution by the Debtors of cash and stock with an aggregate value of $13.5 billion and assignment of certain rights and causes of action (the "**Settlement Payment**") to a trust established for the benefit of the fire claimants. The settlement is embodied in the Tort Claimants RSA and term sheet annexed thereto as Exhibit A (the "**Term Sheet**").

9. Specifically, "each holder of a HoldCo Fire Victim Claim shall have its Claim permanently channeled to the Fire Victim Trust, and such Claim shall be asserted exclusively against the Fire Victim Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties." *See* RSA Motion, Ex. A (Term Sheet) at 5 (Article II-Classification of Claims and Interests).

10. According to the RSA Motion, the TCC represents a diverse group of over 70,000 claimants. However, only those "who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002" will receive notice of the settlement. Therefore, the vast majority of the claimants are not receiving notice of a motion that will impact their rights.

11. In the declaration of Jessica Liou in support of the Motion to Shorten (ECF No. 5041), Ms. Liou states that an expedited hearing is necessary because "if the Tort Claimants RSA is not approved by this Court by December 20, 2019, it automatically terminates. The Tubbs trial is scheduled to begin with jury selection on January 7, 2020, with the estimation proceedings to commence before the District Court shortly thereafter on February 18, 2020." *See* Liou Declaration at ¶ 7.

**C. Argument**

**1. The Debtors Should Explain Why Notice Is Sufficient.**

The Certificate of Service has confirmed that a limited group was served with the RSA Motion. ECF No. 5103. Most of the listed "Consenting Fire Claimant Professionals" have not filed Bankruptcy Rule 2019 statements, but it appears obvious that many of the fire claimants are not receiving individual notice of a motion that will impact their rights.[3] *See In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) (agreement outside a plan that attempts "to specify the terms whereby a reorganization plan is to be adopted, the parties . . . must scale the hurdles erected in Chapter 11").

The only reason for a hearing on December 17, 2019 appears to be because the parties have set December 20, 2019 as the date the RSA terminates by its own terms. *See* RSA at 6. The Tubbs trial is scheduled for February, and that trial by itself will not fix the rights of all the fire victims. *See* Liou Declaration at ¶ 7. The Debtors should explain whether the hearing on the RSA Motion can be adjourned.

**2. The RSA Should Not Usurp the Plan Process.**

At a global level, any plan needs to meet the priority scheme and the best interest test as codified under 11 U.S.C. § 1129 of the Bankruptcy Code. In this case (absent universal agreement by creditors to some other treatment), all unsecured claims must receive payment in full before equity receives anything. As the Supreme Court stated in *Czyzewski v. Jevic Holding Corp.*, the Bankruptcy Code "sets forth a basic system of priority, which ordinarily determines the order in which the bankruptcy court will distribute assets of the estate." 137 S. Ct. 973, 979

---

[3] Of the tort victims, only those "who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002" will receive notice. RSA Motion at 25-26. The TCC represents a diverse group of over 70,000 claimants. RSA Motion at 24.

5

(2017). The Chapter 11 process is more flexible than the Chapter 7 process, which must follow the prescribed order of priority under 11 U.S.C. §§ 507 and 726. However, "a bankruptcy court cannot confirm a plan that contains priority-violating distributions over the objection of an impaired creditor class." *Id.* Further, 11 U.S.C. § 105(a) does not authorize the approval of a non-plan priority-skipping distribution, as this Court cannot "alter the balance struck by the statute*.*" *Id*. at 987 (quoting *Law v. Siegel*, 134 S. Ct. 1188, 1198 (2014)); *see also Braniff*, 700 F.2d at 939-40 (analyzing and ultimately overruling a bankruptcy court approved agreement that "thwart[ed] the Code's carefully crafted scheme for creditor enfranchisement where plans of reorganization are concerned").

The Debtors must explain the purpose of the RSA. If the purpose is to commit a group of consenting fire claimants to a certain course of action, that is one matter. If the RSA is to be used as a cudgel at the plan confirmation stage to argue that fire claimants' rights are predetermined before the plan process has played out, with its intricate panoply of creditor protections, that is another.

### 3. The Releases May Be Overly Broad

The RSA states that "each Consenting Fire Claimant Professional shall use all reasonable efforts to advise and recommend to its existing and future clients (who hold Fire Victim Claims) to (i) support and vote to accept the Amended Plan, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Amended Plan . . . ." RSA at 5. The Amended Plan has now been filed and retains the following as additional released parties:

> [S]uch entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and

6

such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

Amended Plan, Redline Version, ECF No. 5102, Section 1.161.

Third party releases are generally prohibited in the Ninth Circuit. *Resorts International, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir.1995). The Debtors should describe the effect on the RSA of a subsequent finding by the Court that the releases are overly broad or invalid.

**WHEREFORE,** for the reasons set forth above, the RSA Motion should be denied or adjourned.

Dated: December 16, 2019

Andrew R. Vara
Acting United States Trustee, Region 3

By: /s/ Timothy S. Laffredi
Timothy S. Laffredi
Assistant United States Trustee
Greg M. Zipes
Trial Attorney
Cameron M. Gulden
Trial Attorney

7

# EXHIBIT A

UNAUDITED BALANCE SHEETS
AS OF OCTOBER 31, 2019

| (in millions) | Reference | Pacific Gas & Electric Company | PG&E Corporation | PG&E Corporation Consolidated |
|---|---|---:|---:|---:|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| Cash and cash equivalents | Items 10 and 11 | $ 2,240 | $ 444 | $ 2,684 |
| Accounts receivable | | | | |
|   Customers (net of allowance for doubtful accounts of $40) | Item 4 | 1,240 | — | 1,240 |
|   Accrued unbilled revenue | | 807 | — | 807 |
|   Regulatory balancing accounts | | 2,291 | — | 2,291 |
|   Other | | 2,598 | 86 | 2,588 |
| Regulatory assets | | 285 | — | 285 |
| Inventories | Item 3 | | | |
|   Gas stored underground and fuel oil | | 111 | — | 111 |
|   Materials and supplies | | 530 | — | 530 |
| Income taxes receivable | | 262 | 1 | 263 |
| Other | | 646 | 11 | 658 |
| **Total current assets** | | **11,010** | **542** | **11,457** |
| **Property, Plant, and Equipment** | | | | |
| Electric | | 62,093 | — | 62,093 |
| Gas | | 22,950 | — | 22,950 |
| Construction work in progress | | 2,679 | — | 2,679 |
| Other Plant in Service | | 18 | 2 | 20 |
| **Total property, plant, and equipment** | | **87,740** | **2** | **87,742** |
| Accumulated depreciation | | (26,094) | (2) | (26,096) |
| **Net property, plant, and equipment** | Item 7 | **61,646** | — | **61,646** |
| **Other Noncurrent Assets** | | | | |
| Regulatory assets | | 5,650 | — | 5,650 |
| Nuclear decommissioning trusts | | 3,106 | — | 3,106 |
| Operating lease right of use asset | | 2,378 | 8 | 2,386 |
| Income taxes receivable | | 67 | 84 | 151 |
| Other | | 1,205 | 12,896 | 1,349 |
| **Total other noncurrent assets** | | **12,406** | **12,988** | **12,642** |
| **TOTAL ASSETS** | | $ **85,062** | $ **13,530** | $ **85,745** |

Case: 19-30088   Doc# 5124   Filed: 12/26/19   Entered: 12/26/19 13:07:07   Page 9 of 14

UNAUDITED BALANCE SHEETS
AS OF OCTOBER 31, 2019

| (in millions) | Reference | Pacific Gas & Electric Company | PG&E Corporation | PG&E Corporation Consolidated |
|---|---|---:|---:|---:|
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | | | |
| **Current Liabilities** | | | | |
| Short-term borrowings | | $ — | $ — | $ — |
| Long-term debt, classified as current | | — | — | — |
| Accounts payable | Item 5 | | | |
| Trade creditors | | 1,833 | 5 | 1,838 |
| Regulatory balancing accounts | | 1,662 | — | 1,662 |
| Other | | 699 | 18 | 621 |
| Operating lease liabilities | | 552 | 3 | 555 |
| Disputed claims and customer refunds | | — | — | — |
| Interest payable | | 4 | — | 4 |
| Other | | 2,160 | (8) | 2,152 |
| **Total current liabilities** | | **6,910** | **18** | **6,832** |
| **Noncurrent Liabilities** | | | | |
| Long-term debt | | — | — | — |
| Debtor-in-possession financing | Item 6 | 1,500 | — | 1,500 |
| Regulatory liabilities | | 9,293 | — | 9,293 |
| Pension and other postretirement benefits | | 1,928 | — | 1,928 |
| Asset retirement obligations | | 6,279 | — | 6,279 |
| Deferred income taxes | Item 8 | 1,796 | (118) | 1,678 |
| Operating lease liabilities | | 1,826 | 5 | 1,831 |
| Other | | 2,304 | 59 | 2,335 |
| **Total noncurrent liabilities** | | **24,926** | **(54)** | **24,844** |
| **Liabilities Subject to Compromise** | Item 9 | **44,296** | **784** | **45,080** |
| **Shareholders' Equity** | | | | |
| Preferred stock | | 258 | — | — |
| Common stock | | 1,322 | 13,046 | 13,026 |
| Additional paid-in capital | | 8,550 | — | — |
| Reinvested earnings | | (1,200) | (255) | (4,280) |
| Accumulated other comprehensive (loss) income | | — | (9) | (9) |
| **Total shareholders' equity** | | **8,930** | **12,782** | **8,737** |
| Noncontrolling Interest - Preferred Stock of Subsidiary | | — | — | 252 |
| **TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY** | | **$ 85,062** | **$ 13,530** | **$ 85,745** |

1.  **BASIS OF PRESENTATION**

**General**

On January 29, 2019, PG&E Corporation (the "Corporation") and its subsidiary, Pacific Gas and Electric Company (the "Utility") (together with the Corporation, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). The Debtors' Chapter 11 cases are being jointly administered under the caption *In re: PG&E Corporation and Pacific Gas and Electric Company*, Case No. 19-30088 (DM) (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases.

On February 12, 2019, the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "UCC"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "TCC").

**Debtor-in-Possession Financial Statements**

Financial Accounting Standards Board Accounting Standards Codification 852 (Reorganizations) ("ASC 852"), which is applicable to companies in Chapter 11, requires that financial statements for periods after the filing of a Chapter 11 petition distinguish transactions and events that are directly associated with the reorganization from the ongoing operations of the business. The financial statements have been prepared in accordance with ASC 852. The accompanying financial statements have been prepared solely for purposes of complying with the monthly operating requirements applicable in the Debtors' Chapter 11 Cases (the "Monthly Operating Reports"). The Debtors caution investors and potential investors not to place undue reliance upon the information contained in the Monthly Operating Reports, which was not prepared for the purpose of providing the basis for an investment decision relating to any securities of the Debtors.

The financial information contained in the Monthly Operating Reports is unaudited, limited in scope, and as such, has not been subject to procedures that would typically be applied to financial statements in accordance with accounting principles generally accepted in the United States of America. The Monthly Operating Reports should not be relied upon by any persons for information relating to current or future financial condition, events, or performance of the Corporation and the Utility and any of their non-debtor subsidiaries, as the results of operations contained in the Monthly Operating Reports are not necessarily indicative of results which may be expected for any other period or for the full year, and may not necessarily reflect the combined results of operations, financial position, and schedule of receipts and disbursements in the future. These unaudited financial statements were prepared using certain assumptions and estimates. These assumptions and estimates are subject to revision. Further, the amounts shown in this statement may differ materially due to adjustments in accruals, changes in facts and circumstances, changes in estimates, further analysis, and other factors.

The Utility's unaudited financial statements reflected under the column "Pacific Gas and Electric Company" are presented on a consolidated basis and include the accounts of the Utility and the following subsidiaries of the Utility that individually and in aggregate are immaterial: Eureka Energy Company, Midway Power, LLC, Pacific Energy Fuels Company, and Standard Pacific Gas Line Incorporated.

The Corporation's unaudited financial statements reflected under the column "PG&E Corporation" are presented on a consolidated basis and include the accounts of the following subsidiaries of the Corporation that individually and in aggregate are immaterial: PCG Capital, Inc., PG&E Corporation Support Services, Inc., and PG&E Corporation Support Services II, Inc. The Corporation's unaudited financial statements reflected under the column "PG&E Corporation" exclude the accounts of the Utility.

The Corporation's unaudited financial statements reflected under the column "PG&E Corporation, Consolidated" are presented on a consolidated basis and include the accounts of the Corporation, the Utility, and other wholly owned and controlled subsidiaries.

These unaudited financial statements differ from the requirements of generally accepted accounting principles in that they exclude certain financial statements (statements of cash flows, shareholders' equity, and other comprehensive income), relevant footnotes and certain reclassifications.

**Liabilities Subject to Compromise**

As a result of the Chapter 11 Cases, the payment of pre-petition indebtedness is subject to compromise or other treatment under a plan of reorganization. The determination of how liabilities will ultimately be settled or treated cannot be made until the Bankruptcy Court confirms a Chapter 11 plan of reorganization and such plan becomes effective. Accordingly, the ultimate amount of such liabilities is not determinable at this time. ASC 852 requires pre-petition liabilities that are subject to compromise to be reported at the amounts expected to be allowed, even if they may be settled for lesser amounts. The amounts currently classified as liabilities subject to compromise are preliminary and may be subject to future adjustments depending on the Bankruptcy Court actions, further developments with respect to disputed claims, determinations of the secured status of certain claims, the values of any collateral securing such claims, rejection of executory contracts, continued reconciliation or other events.

**Reorganization Items**

ASC 852 requires expenses and income directly associated with the Chapter 11 Cases to be reported separately in the income statement. Reorganization items are reported net and include expenses related to legal advisory and representation services, other professional consulting and advisory services, debtor-in-possession financing fees and changes in liabilities subject to compromise recognized as there are changes in amounts expected to be allowed, net of interest income.

**Post-Petition Liabilities**

Post-petition liabilities reflected in the Monthly Operating Report include Accounts payable – trade creditors, Accounts payable – other, and Other current liabilities, excluding amounts pertaining to regulatory liabilities.

**2.  CHAPTER 11 FILING**

On January 29, 2019, the Debtors filed the Chapter 11 Cases with the Bankruptcy Court. The Debtors continue to operate their businesses as debtors in possession under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court.

On January 31, 2019, the Bankruptcy Court approved, on an interim basis, certain motions (the "First Day Motions") authorizing, but not directing, the Debtors to, among other things, (a) secure $5.5 billion of debtor-in-possession financing; (b) continue to use and the Debtors' cash management system; and (c) pay certain pre-petition claims relating to (i) certain safety, reliability, outage, and nuclear facility suppliers; (ii) shippers, warehousemen, and other lien claimants; (iii) taxes; (iv) employee wages, salaries, and other compensation and benefits; and (v) customer programs, including public purpose programs. The First Day Motions were subsequently approved by the Bankruptcy Court on a final basis at hearings on February 27, 2019, March 12, 2019, March 13, 2019, and March 27, 2019.

On July 1, 2019, the Bankruptcy Court entered an order approving a deadline of October 21, 2019, at 5:00 p.m. (Pacific Time) (the "Bar Date") for filing claims against the Debtors relating to the period prior to the Petition Date. The Bar Date is subject to certain exceptions, including for claims arising under section 503(b)(9) of the Bankruptcy Code, the Bar Date for which occurred on April 22, 2019. The Bankruptcy Court also approved the Debtors' plan to provide notice of the Bar Date to parties in interest, including potential wildfire-related claimants and other potential creditors. On November 11, 2019 the Bankruptcy Court entered an order [Docket No. 4672] approving a stipulation between the Debtors and the TCC to extend the Bar Date for unfiled, non-governmental fire claimants to December 31, 2019, at 5:00 p.m. (Pacific Time).

For additional information regarding the Chapter 11 Cases, refer to the website maintained by Prime Clerk, LLC, the Company's claims and noticing agent, at http://restructuring.primeclerk.com/pge, as well as to the Debtors' annual report on Form 10-K for the year ended December 31, 2018, their joint quarterly reports on Form 10-Q for the quarters ended March 31, 2019, June 30, 2019 and September 30, 2019, and other reports filed with the SEC, which are available on PG&E Corporation's website at www.pgecorp.com and on the SEC website at www.sec.gov. The Debtors also routinely post or provide links to certain documents and information related to the Chapter 11 Cases at http://investor.pgecorp.com, under the "Chapter 11" tab.

**3.  INVENTORY**

Inventories are carried at weighted-average cost and include natural gas stored underground as well as materials and supplies. Natural gas stored underground is recorded to inventory when injected and then expensed as the gas is withdrawn for distribution to customers or to be used as fuel for electric generation. Materials and supplies are recorded to inventory when purchased and expensed or capitalized to plant, as appropriate, when consumed or installed.

4. **ACCOUNTS RECEIVABLE**

The following reflects the balance of the Utility's Accounts receivable – Customers as of October 31, 2019:

| (in millions)<br>Receivables Aging | Accounts Receivable<br>– Customers (Pre<br>and Post-Petition) |
|---|---:|
| 0 -30 Days | $ 752 |
| 31-60 Days | 155 |
| 61-90 Days | 62 |
| 91+ Days | 162 |
| Unmailed invoices | 115 |
| **Total accounts receivable – Customers** | **1,246** |
| Other [1] | 34 |
| Allowance for doubtful accounts | (40) |
| **Accounts receivable – Customers (net)** | **$ 1,240** |

[1] Represents Department of Water Resources bond charge, credit balance reclassification, and unidentified receipts.

5. **ACCOUNTS PAYABLE**

To the best of the Debtors' knowledge, all undisputed, validated post-petition accounts payable have been and are being paid under agreed-upon payment terms.

In the ordinary course, in most instances the Debtors' process for validating items for payment to suppliers requires the matching of a vendor invoice with a purchase order and, additionally, with a goods receipt (reflecting the Debtors' acknowledgment of the delivery of goods or completion of services). That matching process extends the timeline for a vendor invoice to be cleared for payment until such time as the validation operation is fully complete. The Debtors are actively engaged on an ongoing basis with its supplier base to minimize the invoice matching and validation time frame. To the best of the Debtors' knowledge, in all instances where the invoice matching process has been satisfactorily completed for post-petition vendor activity, the Debtors do not have any past due post-petition accounts payable as of October 31, 2019.

6. **DEBTOR-IN-POSSESSION ("DIP") FINANCING**

The following table summarizes the Corporation's and the Utility's outstanding borrowings and availability under their DIP credit facilities at October 31, 2019:

| (in millions) | Aggregate<br>Limit | Term Loan<br>Borrowings | Revolver<br>Borrowings | Letters of<br>Credit<br>Outstanding | Aggregate<br>Availability |
|---|---:|---:|---:|---:|---:|
| PG&E Corporation | $ — | $ — | $ — | $ — | $ — |
| Utility | 5,500 [1] | 1,500 | — | 713 | 3,287 |
| **Total DIP credit facilities** | **$ 5,500** | **$ 1,500** | **$ —** | **$ 713** | **$ 3,287** |

[1] Includes $1.5 billion of letter of credit subfacility.

Case: 19-30088    Doc# 4865    Filed: 11/26/19    Entered: 11/26/19 13:58:07    Page 9 of 91

## 7. PROPERTY, PLANT, AND EQUIPMENT

Property, plant, and equipment are reported at the lower of their historical cost less accumulated depreciation or fair value. Historical costs include labor and materials, construction overhead, and allowance for funds used during construction. PG&E Corporation Consolidated balances of its property, plant, and equipment were as follows at October 31, 2019:

| (in millions) | PG&E Corporation Consolidated |
|---|---|
| Electric [1] | $ 62,093 |
| Gas | 22,950 |
| Construction work in progress | 2,679 |
| Other Plant in Service | 20 |
| **Total property, plant, and equipment** | **87,742** |
| Accumulated depreciation | (26,096) |
| **Net property, plant, and equipment** | **$ 61,646** |

[1] Balance includes nuclear fuel inventories. Stored nuclear fuel inventory is stated at weighted-average cost. Nuclear fuel in the reactor is expensed as it is used based on the amount of energy output.

## 8. PAYMENT OF TAXES

To the best of the Debtors' knowledge, the Corporation and the Utility are current on all taxes payable.

## 9. LIABILITIES SUBJECT TO COMPROMISE

The following reflects the balance of liabilities subject to compromise ("LSTC") as of October 31, 2019:

| (in millions) | Pacific Gas & Electric Company | PG&E Corporation | PG&E Corporation Consolidated |
|---|---|---|---|
| Financing Debt [1] | $ 21,813 | $ 650 | $ 22,463 |
| Wildfire-related Claims [2] | 20,560 | — | 20,560 |
| Trade creditors | 1,240 | 5 | 1,245 |
| Non-qualified benefit plan | 18 | 127 | 145 |
| 2001 bankruptcy disputed claims | 221 | — | 221 |
| Customer deposits & advances | 279 | — | 279 |
| Others | 165 | 2 | 167 |
| **Total Liabilities Subject to Compromise** | **$ 44,296** | **$ 784** | **$ 45,080** |

[1] At October 31, 2019, the Debtors had $650 million and $21,526 million in aggregate principal amount of pre-petition indebtedness, respectively. Utility pre-petition financing debt also includes $287 million of accrued contractual interest to the Petition Date.

[2] Wildfire-related claims include aggregate liability accruals of $12.9 billion for the 2018 Camp fire, $7.5 billion for the 2017 Northern California wildfires and $212 million for the Butte fire and is shown net of $100 million deposited into the Wildfire Assistance Fund on August 2, 2019 in connection with potential liabilities related to the 2018 Camp fire and the 2017 Northern California wildfires. For additional information on pre-petition wildfire-related claims reported as LSTC, please see Note 10 of the Notes to the Condensed Consolidated Financial Statements in the Debtors' joint quarterly report on Form 10-Q for the three months ended September 30, 2019.

## 10. RECAPITULATION OF FUNDS HELD AT END OF MONTH

The following reflects the bank balances of the Corporation and the Utility as of October 31, 2019:

| Legal Entity | Bank | Account No. | Balance, End of Month (in ones) |
|---|---|---|---|
| PG&E Corporation | The Bank of New York Mellon | 8400 | $ 444,500,000 |
| PG&E Corporation | The Bank of New York Mellon | 9023 | 429,120 |
| PG&E Corporation | Bank of America | 7107 | — |
| PG&E Corporation | The Bank of New York Mellon | 4558 | — |
| PG&E Corporation | Union Bank of California | 9557 | 737 |