RICHARD DOYLE, City Attorney (88625)
ED MORAN, Assistant City Attorney (86992)
ELISA T. TOLENTINO, Sr. Deputy City Attorney (228726)
LUISA F. ELKINS, Sr. Deputy City Attorney (286703)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone Number: (408) 535-1900
Facsimile Number: (408) 998-3131
E-Mail Address: cao.main@sanjoseca.gov

*Attorneys for The City San Jose*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br> -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> Debtors. | Bankruptcy Case No. 19 - 30088 (DM) <br><br> Chapter 11 (Lead Case) (Jointly Administered) <br><br> **STATEMENT AND RESERVATION OF RIGHTS OF THE CITY OF SAN JOSE IN RESPONSE TO (I) THE DEBTORS' MOTION TO APPROVE THE TORT CLAIMANTS RSA MOTION, AND (II) THE COURT'S MEMORANDUM REGARDING CONFIRMATION ISSUES** <br><br> **Related to: Docket Nos. 4760 and 5038** |
| ☐ **Affects PG&E Corporation** <br><br> ☐ **Affects Pacific Gas and Electric Company** <br><br> ☒ **Affects both Debtors** <br><br> **\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)** | Hearing Date: December 17, 2019 <br> Time: 10:00 a.m. (P.T.) <br><br> Courtroom: Hon. Dennis Montali <br> 450 Golden Gate Avenue <br> 16th Floor, Courtroom 17 <br> San Francisco, CA 94102 <br><br> Objections Due: December 16, 2019, <br> 12:00 p.m. (P.T.) |

The City of San Jose, California, submits this Statement and Reservation of Rights (i) in response to the Motion of the Debtors to approve the Tort Claimants RSA (the "Motion"), and (ii) in

response to the Court's Memorandum Regarding Confirmation Issues (the "<u>Memorandum</u>") [Docket No. 4760], and respectfully state as follows:[1]

## I. INTRODUCTION

The Tort Claimants RSA Motion and the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated December 12, 2019 [ECF No. 5101] (the "<u>Plan</u>") contemplate a reorganization of the Debtors that is detrimental to the residents of California, including PG&E's 16 million customers.[2] In addition, the Debtors' proposed Plan (i) poses unacceptable risks to the health and safety of residents that live and work within PG&E's service area, and (ii) exposes both the wildfire victims and the residents of California to insupportable financial risk.

## II. STATEMENT AND RESERVATION OF RIGHTS

### A. The Motion and Plan Fail to Address Critical Health and Safety Issues

The Debtors have chosen to ignore critical health and safety issues in favor of reaching a financial resolution. But PG&E's problems are not the result of an overburdened financial structure. PG&E's issues are *operational*. Without a plan that resolves the operational health and safety issues, PG&E's plan will inevitably be followed by a third bankruptcy, and therefore the Plan is not feasible and violates section 1129(a)(11).

In connection with eligibility to participate in the new wildfire fund to be established pursuant to Assembly Bill 1054, on November 14, 2019, the California Public Utilities Commission (the "<u>CPUC</u>") issued the Assigned Commissioner's Scoping Memo and Ruling (the "<u>Scoping Memo</u>").[3] The Scoping Memo outlined that the Debtors should address certain health and safety issues, including the following:

- steps to be taken to improve PG&E's delivery of power in a safe and reliable manner;
- steps to improve accountability of management for health and safety issues;
- a corporate governance structure with respect to public safety on a going forward basis,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2] Although the Court indicated that parties should file statements with respect to confirmation issues on December 12, 2019, the Debtors waited until late that same day to file their proposed Plan. Accordingly, the ability of parties to review the proposed Plan and determine whether any confirmation issues had been addressed was hamstrung.

[3] http://docs.cpuc.ca.gov/SearchRes.aspx?DocFormat=All&DocID=319526476.

both short term and long term, particularly in light of PG&E's criminal probation; and

- a reorganization plan that is consistent with the State's climate goals;

The Tort Claimants' RSA Motion and the Debtors' proposed Plan filed on December 12, 2019 fails to address *any* of these critical health and safety issues. Indeed, the redline of the proposed Plan filed by the Debtors on December 12, 2019 against the prior plan filed on November 4, 2019 [ECF No. 5102] shows that no changes were made to address critical health and safety issues identified by the CPUC in the Scoping Memo that was filed in the interim.

### B. The Motion and Plan Pose an Insupportable Financial Risk

The Motion and the Debtors' proposed Plan pose an egregious financial risk for both wildfire victims and the residents of the State of California. With respect to wildfire victims, the Plan provides that the Fire Victim Trust shall be funded with the Aggregate Fire Victim Consideration, which in relevant part includes: (i) "$6.75 billion in New HoldCo Common Stock (issued at Fire Victim Equity Value" (Plan § 1.6); (ii) "Fire Victim Equity Value means 14.9 multiplied by the Normalized Estimated Net Income as of a date to be agreed upon [among the parties to the Tort Claimants RSA]" (Plan § 1.77); and (iii) "Normalized Estimated Net Income" has a complex definition that can be easily manipulated by PG&E to substantially reduce compensation to fire victims (Plan § 1.130).[4] The total amount that will be placed in the Fire Victim Trust could well prove to be illusory. Indeed, the definition of "Normalized Estimated Net Income" brings to mind the definition of "adjusted box office receipts" used by studios in contracts with actors.

In addition, it appears that the Debtors ultimately intend to seek state backed tax exempt financing to pay wildfire victims. The Plan provides in relevant part that:

> If the State of California enacts legislation authorizing the issuance of Wildfire Victim Recovery Bonds or other securitized bonds, this would provide a source of low cost financing for expediting payment and satisfaction of Fire Claims following estimation or settlement.

---

[4] The Plan provides that "Normalized Estimated Net Income" shall mean, in each case with respect to the estimated year 2021, (a) on a component-by-component basis (e.g., distribution, generation, gas transmission and storage, and electrical transmission), the sum of (i) the Utility's estimated earning rate base for such component, times (ii) the equity percentage of the Utility's authorized capital structure, times (iii) the Utility's authorized rate of return on equity for such component, less (b) the projected post-tax difference in interest expense or preferred dividends for the entire company and the authorized interest expense or preferred dividends expected to be collected in rates based on the capital structure in the approved Plan, if any, less (c) the amount of the Utility's post-tax annual contribution to the Go-Forward Wildfire Fund.

Plan § 6.17.

If PG&E were to be reorganized as a public benefits corporation, it may well be a laudable goal to issue such financing to properly compensate wildfire victims, but not where PG&E is contemplated to be a private enterprise benefitting hedge funds that are the Debtors' co-Plan Proponents without regard to health and safety. In the corporate structure contemplated by the Debtors, this is nothing more than a bailout at taxpayers' expense.

### III. RESERVATION OF RIGHTS AND CONCLUSION

For the foregoing reasons, the Court should defer consideration of the Motion to allow for further negotiations and to allow for a further review of the recently filed Plan. In addition, confirmation of the Plan on an expedited basis is inappropriate. The City of San Jose reserves its rights to object to confirmation of the Plan on additional grounds that may be discovered upon further review of the Plan.

Dated: December 16, 2019

Respectfully submitted,

RICHARD DOYLE, City Attorney

By: /s/ Elisa T. Tolentino
ELISA T. TOLENTINO
Sr. Deputy City Attorney

*Attorneys for The City San Jose*