REBECCA J. WINTHROP (CA Bar No. 116386)
ROBIN D. BALL (CA Bar No. 159698)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com
robin.ball@nortonrosefulbright.com

Attorneys for Creditors ADVENTIST HEALTH SYSTEM/WEST, FEATHER RIVER HOSPITAL d/b/a ADVENTIST HEALTH FEATHER RIVER, and PARADISE RETIREMENT RESIDENCE LIMITED PARTNERSHIP d/b/a FEATHER CANYON

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

In re:

PG&E CORPORATION,

- and -

PACIFIC GAS AND ELECTRIC COMPANY

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

** All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Case No. 19 - 30088 (DM)

Chapter 11
(Lead Case)
(Jointly Administered)

**THE ADVENTIST CLAIMANTS' AND FEATHER CANYON'S RESPONSE TO AND RESERVATION OF RIGHTS RE: DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS AND TCC TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE TCC, CONSENTING FIRE CLAIMANT PROFESSIONALS, AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF**

**<u>Hearing Date and Time:</u>**
Date: December 17, 2019
Time: 10:00 a.m. (Pacific Time)
Place: Courtroom 17
450 Golden Gate Ave., 16th Floor
San Francisco, CA 94102

DOCUMENT PREPARED ON RECYCLED PAPER

PLEASE TAKE NOTICE that Creditors Adventist Health System/West ("Adventist Health"), Feather River Hospital d/b/a Adventist Health Feather River ("AHFR"), each a California religious non-profit corporation (together, the "Adventist Health Claimants"), [and Paradise Retirement Residence Limited Partnership d/b/a Feather Canyon ("Feather Canyon")] hereby respectfully submit this Response to and Reservation of Rights regarding *Debtors' Motion Pursuant to 11 U.S.C.. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of An Order (I) Authorizing the Debtors and TCC to Eventer Into Restructuring Support Agreement with the TCC, Consenting Fire Claimant Professionals, and Shareholder Proponents, and (ii) Granting Related Relief* [Dkt. # 5038] (the "Motion").

1. Adventist Health is a faith-based, nonprofit integrated health system headquartered in Roseville, California. AHFR is part of the Adventist Health hospital system. Prior to the Camp Fire, AHFR had extensive operations in Paradise, California, including its Feather River Hospital, which was a 100-bed acute care, community hospital. The hospital was then the largest employer in Paradise, with in excess of 1200 employees. The Camp Fire devastated the main campus of the hospital, rendering it incapable of operation since the fire, and also severely damaged several other AHFR facilities in Paradise. Feather Canyon was a senior, independent living facility located near the hospital in Paradise, and was made up of one three-story building with 116 residential units and three cottages with a total of eleven units. Before the fire, Feather Canyon had at least a 95% occupancy rate. The Camp Fire burned large portions of Feather Canyon's campus, heavily damaging the main building and completely destroying the three cottages and assorted outbuildings. Feather Canyon is now closed and may never reopen.

2. The Adventist Health Claimants have filed Proofs of Claim asserting a total claim against Debtors for $1,012,061,204, including a total of $506,030,602 in itemized damages, an equal amount of punitive damages, and some additional categories of damages in amounts to be determined. Accordingly, the Adventist Health Claimants hold most likely the largest Fire Victim Claims in these cases. Feather Canyon similarly filed a substantial claim against the Debtors' estates—its claims total more than $95 million in actual compensatory damages, economic business losses and punitive damages, plus additional losses.

3. Notwithstanding the Debtors' assertion that the Tort Claimants RSA (and the Term Sheet attached thereto) is "the product of substantial . . . negotiations" that "were successful in building a consensus with the Debtors' largest creditor constituency", neither the Adventist Health Claimants nor Feather Canyon were involved in any aspect of the Tort Claimants RSA, and had never seen the Debtors' Amended Plan until it was filed on December 12, 2019. [Motion, p. 18, ll. 17-19.] While the Debtors may well have been successful in "building a consensus" in *number* of wildfire victims, no attempt appears to have been made to build consensus among those victims with large property damage and business loss claims. The Adventist Health Claimants and Feather Canyon have had barely three days in which to review the Debtors' Amended Plan before being obligated to file this response. Therefore, each reserves any and all rights with respect the Debtors' Amended Plan, including without limitation the right to file any and all objections relating to whether the Debtors' Amended Plan treats the Fire Victim Claimants fairly as required by AB 1054, whether there is disparate treatment among classes of Fire Victim Claimants, whether there is unfair discrimination and improper classification as between the Fire Victim Claimants and the Public Entities Wildfire Claimants, and with respect to any further actions that may be taken before Judge Donato .

4. The Adventist Health Claimants and Feather Canyon also file this Response to alert the Court of several particularly troubling provisions of the Tort Claimants RSA and Term Sheet that appear to dictate how the Debtors' Amended Plan will move forward in the future:[1]

a. Under the Tort Claimants RSA, the Debtors must amend their plan to include all terms and conditions of the RSA with the modifications in the Term Sheet. [Tort Claimants RSA, p. 3.] Article III of the Term Sheet requires all Fire Victim Claims to be satisfied solely from the Fire Victim Trust, which shall administer and pay all Fire Victim Claims in accordance with the "Fire Victim Trust Agreement" and the "Firm Victim Claims Resolution Procedures." [Term Sheet, § 6.6, p. 6-7.] Section 6.6(b) of the Term Sheet then states that "[e]ach trust comprising the Fire Victim Trust is intended to be treated" as a qualified settlement fund, thereby clearly

[1] Under Section 2(o) of the Tort Claimants RSA, each party shall not "object to, delay, impede, or take any other action to interfere with the . . . implementation of the Amended Plan."

Case: 19-30088 Doc# 5129 Filed: 12/16/19 Entered: 12/16/19 11:48:49 Page 3 of 6

providing for multiple trusts to be created under the Debtors' Amended Plan. [Term Sheet, p. 7 (emphasis added).]

Yet, no meaningful description of the terms of the "Fire Victim Trust Agreement" or the number or type of Fire Victim Trusts are provided, much less the "Fire Victim Resolution Procedures" that will govern the resolution, liquidation, and payment of claims. Instead, the Tort Claimants RSA gives the "Requisite Consenting Fire Claimant Professionals" sole authority to provide the Debtors with "all terms of the Fire Victim Trust not specified in the Term Sheet no later than January 20, 2020." [Tort Claimants RSA, § 2(i).] Thus, a simple majority of members of the TCC (almost all of which are individual personal injury claimants) and a simple majority of the Consenting Fire Claimant Professional Group (all of which appear to be counsel to individual personal injury claimants) will be able to dictate <u>all</u> of the terms of the Fire Victim Trust, apparently without input of any other constituencies holding property damage and business losses. This is particularly troubling if such counsel are compensated on a contingency basis, thereby putting their own pecuniary interests in potential conflict with the interests of the rest of the creditor body.

The Adventist Health Claimants and Feather Canton suggest that the Court direct that the TCC, acting as a fiduciary to all holders of Fire Victim Claims, be given the primary responsibility to develop the terms of the Fire Victim Trust Agreement and the Fire Victim Claims Procedures, subject to <u>equal</u> input from the Consenting Fire Claimant Professionals and holders of property damage and business loss claims. Then, such procedures should be subject to approval from this Court on adequate notice. Additionally, the agreements and procedures should be worked out well in advance of confirmation so that parties have an adequate opportunity to comment, as opposed to on an expedited basis on shortened time as has been the case with this Motion.

b. While the Adventist Health Claimants and Feather Canyon have only had a few days to examine the Debtors' Amended Plan, several other provisions of the Debtors' Amended Plan appear to suffer from the same inherent bias in favor of the Consenting Fire Claimant Professionals and what appears to be their individual personal injury clients, rather than treating

Case: 19-30088 Doc# 5129 Filed: 12/16/19 Entered: 12/16/19 11:48:49 Page 4 of 6

the interests of all individual and property damage and business loss fire victims equally. Section 6.8(e) of the Debtors Amended Plan, for example, appoints a Fire Victim Trust Oversight Committee, but includes only those who are Consenting Fire Claimant Professionals (i.e., the 13 firms who represent individual claimants who signed onto the Tort Claimant RSA), and the TCC. Large property damage and business loss claimants such as the Adventist Health Claimants and Feather Canyon are given no voice, even though they constitute a significant portion of the damages to be compensated from the Fire Claims Trust.

Similarly, Section 7.1 of the Plan – entitled Objections to Claims – signals voting metrics in favor of individual personal injury claimants. Section 7.1 deems all Fire Victim Claims as disputed and unliquidated, designating the Plan itself a global objection to all Fire Victim Claims except for (i) claims arising out of the 2015 Butte fires that were the subject of fully executed pre-petition settlement agreements with the Debtors and (ii) any other Fire Victim Claim that is settled or allowed by order of the Bankruptcy Court. While the actual voting metrics are not spelled out at this point (and they should be), Section 7.1 appears to signal that all Fire Victim Claims will be assigned the same amount for voting, regardless of the type of damage claim or the amount asserted, when considering whether Class 5A-III and Class 5B-III have voted to accept the Debtors' Amended Plan. This puts all of the voting power in the hands of blocks of plaintiffs' lawyers with many individual claimants, and disenfranchises large single claims for property damages and business losses, including the Adventist Health Claimants and Feather Canyon claims.[2]

Thus, the Debtors and the TCC should immediately be required by the Court to involve (through mediation or otherwise) not only the plaintiffs' lawyer groups but other constituencies of property damage, business and economic loss fire victims in formulating more appropriate objection to claims and voting methodologies that take into account the differing types and amounts of claims. In addition to trying to reach a broad consensus on voting methodologies, the Debtors, the TCC and these other constituencies should ensure as a backstop that there is a

[2] The Adventist Health Claimants and Feather Canyon appreciate the logistics and costs of filing objections in a case with so many claims, but accommodation must be made to allow fair voting.

streamlined process for fire victims and the TCC to attempt to stipulate to the temporary allowance of their claims for voting purposes. Otherwise, this Court will be overwhelmed at some point with multiple motions to estimate claims for voting purposes under Bankruptcy Rule 3018, as claimants come forward and seek estimation just to avoid disenfranchisement and preserve the basic voting protections guaranteed by Section 1126. These matters all should be addressed sooner rather than later in order to ensure efficiency and avoid as many disputes as possible surrounding voting.

c. The Adventist Health Claimants note that the TCC Claimants RSA may be terminated if Section 4.19(f)(ii) of the Amended Plan has not been modified to the satisfaction of the TCC and the Requisite Consenting Fire Claimants, and that a new form of release has been attached as an exhibit to the Debtors' Amended Plan. Without waiving any objection of the Adventist Claimants' to the latest form of release, the Adventist Health Claimants have come to closure with the Ad Hoc Subrogation Committee on the form of a stipulation evidencing the resolution of its objections to Section 4.19(f)(ii), and are waiting to hear of the Debtors' consent to that resolution.

5. In conclusion, while the Adventist Health Claimants and Feather Canyon do not oppose in concept the $13.5 billion settlement that will fund wildfire victims, the Adventist Health Claimants and Feather Canyon respectfully request that the Court take into account the matters raised above in connection with consideration of the Tort Claimants RSA in order to ensure that, if approved, the Tort Claimants RSA does not lead to an unbalanced restructuring that favors one group of wildfire victims over others.

Dated: December 16, 2019

Respectfully submitted:

REBECCA J. WINTHROP
NORTON ROSE FULBRIGHT US LLP

By: */s/ Rebecca J. Winthrop*
REBECCA J. WINTHROP
Attorney for Creditors ADVENTIST HEALTH SYSTEM/WEST, FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER, and PARADISE RETIREMENT RESIDENCE LIMITED PARTNERSHIP

Case: 19-30088 Doc# 5129 Filed: 12/16/19 Entered: 12/16/19 11:48:49 Page 6 of 6