# EXHIBIT A



# OFFICE OF THE GOVERNOR

December 13, 2019

William D. Johnson
Chief Executive Officer
PG&E Corporation
77 Beale Street
San Francisco, CA 94177

RE: Draft Amended Plan of Reorganization for PG&E Corporation ("Corp") and Pacific Gas and Electric Company (the "Utility" and, collectively with Corp, "PG&E") dated as of December 6, 2019 (the "Amended Plan")

Dear Mr. Johnson:

Since the day PG&E decided to file for bankruptcy protection, I have been clear about the state's objectives. Californians must have access to safe, reliable, and affordable service. Victims and employees must be treated fairly. And California must continue to make forward progress on our climate change goals. These objectives were codified into law in Assembly Bill 1054 (Holden, Chapter 79, Statutes of 2019) and must be satisfied as part of any emergence from bankruptcy.

To facilitate an expeditious resolution of the chapter 11 cases that achieves the state's objectives, my office has undertaken a review of the Amended Plan and the materials submitted in support of such plan to determine whether, in my sole judgment, the Amended Plan and the restructuring transactions contemplated therein comply with AB 1054. I appreciate the efforts of the management team to provide my office information to assist in that review.

I have determined that the Amended Plan and the restructuring transactions contemplated therein do not comply with AB 1054. In my judgment, the Amended Plan and the restructuring transactions do not result in a reorganized company positioned to provide safe, reliable, and affordable service to its customers, as required by AB 1054.

GOVERNOR GAVIN NEWSOM • SACRAMENTO, CA 95814 • (916) 445-2841

PG&E's chapter 11 cases punctuate more than two decades of mismanagement, misconduct, and failed efforts to improve its safety culture. PG&E caused the devastating San Bruno gas pipeline explosion, which killed 8 people, caused 58 injuries, and destroyed approximately 38 homes. PG&E has caused multiple catastrophic wildfires in the last three years, including the Camp Fire, which we know killed 85 people, destroyed the town of Paradise and resulted in billions of dollars in economic losses to the region.

PG&E's recent management of the public safety power shutoffs did not restore public confidence. Instead, PG&E caused extreme uncertainty and harm for Californians who rely on power for their health care and for their livelihoods. For too long, PG&E has been mismanaged, failed to make adequate investments in fire safety and fire prevention, and neglected critical infrastructure. PG&E has simply violated the public trust.

It is against this backdrop that compliance with AB 1054 must be measured. To access the state's wildfire fund, AB 1054 requires:

- PG&E to resolve its insolvency proceeding by June 30, 2020;

- The bankruptcy court to determine that the plan of reorganization fairly satisfies pre-petition wildfire claims;

- The California Public Utilities Commission (the "CPUC") to determine that the reorganization plan and other documents are consistent with the state's climate goals and neutral, on average, to ratepayers; and

- The CPUC to determine that the plan of reorganization, other plan documents, and the resulting governance structure be acceptable to the CPUC taking into account PG&E's safety history, criminal probation, recent financial condition, and other relevant factors in order for the reorganized company to access the wildfire fund.

The CPUC's review of the plan of reorganization is not a rubber stamp – it is a critical component of AB 1054.

To be approved under AB 1054, any plan of reorganization must position the emerging new entity for transformation. Such plan should include stringent governance and management requirements, enforcement mechanisms, and a capital structure that allows the company to make critical safety investments. In addition to the feedback set forth below, my team will provide your advisors with additional information to further clarify my views on specific features of the plan.

## Governance and Management Requirements

The resolution of this bankruptcy must yield a radically restructured and transformed utility that is responsible and accountable. To that end, my office previously informed you that any acceptable plan under AB 1054 must provide for major changes in governance and incorporate enforcement mechanisms. PG&E has failed to address most of the issues we previously raised on governance.

The governance and enforcement mechanisms that I believe are necessary include the following:

1. Changes that will result in a more qualified and independent board of directors that understands its obligation to achieve the goals of AB 1054. A transformed company should be governed by a board of directors selected based on a pre-determined set of qualifications, include members with extensive safety experience, and be comprised of a majority of Californians. To facilitate transformation, the board that will lead the reorganized company should be acceptable to me and approved by the CPUC and identified in the Amended Plan. I do not expect that the post-confirmation board of directors will include the current directors.

2. Strict, clearly defined operational and safety metrics to which the reorganized company will be held accountable.

3. An escalating enforcement process that provides for greater oversight of the reorganized company if it fails to meet the defined operational and safety metrics. Because of this company's history, the license to operate should be conditioned on it agreeing to this process. This should also include a streamlined process for transferring the license and the operating assets to the state or a third-party when circumstances warrant.

4. Escalating enforcement should include governance changes that protect California in the event that the reorganized company fails to meet the operational and safety metrics or commits other bad acts including a subsequent bankruptcy filing.

The Amended Plan does not incorporate any mechanisms to address these issues. Thus, I believe the Amended Plan falls woefully short of the requirements of AB 1054.

The Amended Plan must provide, as a non-waivable condition, that the confirmation order is entered by June 30, 2020 and the effective date occur by August 29, 2020. In the event either of these dates are not met, the Bankruptcy Court should appoint a chapter 11 trustee acceptable to the CPUC to manage the debtors and dispose of their assets and/or operations.

**Capital Structure**

To achieve safe and reliable service and make critical safety and infrastructure investments, the emerging company's capital structure must be stable, flexible, and position the company to attract long-term capital. Based on the financial information provided by PG&E, the reorganized company would not compare favorably to its peers on critical financial metrics. The Amended Plan also leaves the company with limited ability to withstand future financial and operational headwinds.

These issues arise, in part, because the Amended Plan contemplates using a combination of holdco debt, secured debt, securitization, and monetization of the net operating losses in order to make plan distributions – leaving the reorganized entity with limited tools to finance itself when it needs to access capital to make billions of dollars in safety investments. I am also concerned that the Amended Plan relies on expensive and short-term bridge financing. All of this contributes to a reorganized company that, in my judgment, will not be positioned to provide safe, reliable, and affordable electric service.

---

Without providing an exhaustive list of other issues, the Amended Plan must meet the AB 1054 requirements to treat victims fairly, including providing for the assumption of any pre-petition settlement agreements related to Fire Claims including the Butte Fire settlement. The Amended Plan should also provide that all environmental obligations and related agreements, all obligations and agreements related to the Diablo Canyon project, and all state tax obligations be assumed by the reorganized entity and be unimpaired.

The state remains focused on meeting the needs of Californians including fair treatment of victims – not on which Wall Street financial interests fund an exit from bankruptcy.

PG&E's current plan is not feasible without access to the wildfire fund established under AB 1054. PG&E's board of directors and management have a responsibility to immediately develop a feasible plan. Anything else is irresponsible, a breach of fiduciary duties, and a clear violation of the public trust.

Sincerely,

Gavin Newsom
Governor of California