1    Andrew I. Silfen (*pro hac vice*)
     Beth M. Brownstein (*pro hac vice*)
2    **ARENT FOX LLP**
     1301 Avenue of the Americas, 42nd Floor
3    New York, New York 10019
     Telephone:   (212) 484-3900
4    Facsimile:   (212) 484-3990
     Email:       andrew.silfen@arentfox.com
5                 beth.brownstein@arentfox.com

6    Aram Ordubegian (SBN 185142)
     **ARENT FOX LLP**
7    55 Second Street, 21st Floor
     San Francisco, CA  94105
8    Telephone:  (415) 757-5500
     Facsimile:   (415) 757-5501
9    Email:       aram.ordubegian@arentfox.com

10   *Counsel for BOKF, NA, solely in its capacity as*
     *Indenture Trustee for the Utility Senior Notes*
11
     Dennis F. Dunne (admitted *pro hac vice*)
12   Samuel A. Khalil (admitted *pro hac vice*)
     **MILBANK LLP**
13   55 Hudson Yards
     New York, New York 10001-2163
14   Telephone:   (212) 530-5000
     Facsimile:   (212) 530-5219
15
     *and*
16
     Gregory A. Bray (SBN 115367)
17   Thomas R. Kreller (SBN 161922)
     **MILBANK LLP**
18   2029 Century Park East, 33rd Floor
     Los Angeles, CA 90067
19   Telephone:   (424) 386-4000
     Facsimile:   (213) 629-5063
20
     *Counsel for the Official Committee*
21   *of Unsecured Creditors*

Michael S. Stamer (admitted *pro hac vice*)
Ira S. Dizengoff (admitted *pro hac vice*)
David H. Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002


*and*


Ashley Vinson Crawford (SBN 257246)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street
Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile:  (415) 765-9501


*Counsel for the Ad Hoc Committee of Senior*
*Unsecured Noteholders of Pacific Gas and*
*Electric Company*

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| **- and –** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☑ Affects both Debtors
*All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

**CONSOLIDATED OPPOSITION BRIEF OF CERTAIN CREDITOR GROUPS AND REPRESENTATIVES REGARDING THE ENTITLEMENT OF HOLDERS OF UTILITY FUNDED DEBT CLAIMS TO OPTIONAL EARLY REDEMPTION, MAKE-WHOLE, OR SIMILAR AMOUNTS IN A SOLVENT DEBTOR CASE**

<u>Hearing</u>
Date:  January 14, 2020
Time: 10:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
       Courtroom 17
       450 Golden Gate Ave, 16th Floor
       San Francisco, CA 94102

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................................ 1

ARGUMENT ..................................................................................................... 3

I.    The Optional Redemption Premiums Are Enforceable By Their Plain Terms.................. 3

    A.    The Vast Majority of Senior Notes Tether the Utility's Obligation to Pay Optional Redemption Premiums to Fixed Dates or Any Time Prior to Stated Maturity Regardless of Acceleration of "Maturity" by a Bankruptcy Filing. ................................................................................................ 4

    B.    The Acceleration Clause Does Not Nullify—But Rather Supports—the Noteholders' Right to Optional Redemption Premiums After Bankruptcy. ........... 7

        1.    Both the Optional Redemption Provisions' Terms and Applicable Law Allow For Redemption Following Bankruptcy. ................................ 8

        2.    Section 9.02 and the Optional Redemption Provisions Function Independently.......................................................................... 10

    C.    The Debtors' Redemption of the Senior Notes Is Optional. ................................ 12

II.    The Optional Redemption Premiums Are Not Disallowed By The Bankruptcy Code. ................................................................................................... 13

    A.    Optional Redemption Premiums Are Not Unmatured Interest. ........................... 13

    B.    The Debtors' Solvency Underscores Their Obligation to Fulfill Contractual Commitments. ...................................................................................... 15

CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 360 Inns, Ltd.*,
76 B.R. 573 (Bankr. N.D. Tex. 1987) ..................................................................15

*In re 433 S. Beverly Drive*,
117 B.R. 563 (Bankr. C.D. Cal. 1990) ...................................................................9

*In re AMR Corp.*,
730 F.3d 88 (2d Cir. 2013) .............................................................................9, 12

*Balsam v. Tucows Inc.*,
627 F.3d 1158 (9th Cir. 2010) ............................................................................11

*Banga v. First USA, NA*,
29 F. Supp. 3d 1270 (N.D. Cal. 2014) ..................................................................5

*In re Beverly Hills Bancorp*,
752 F.2d 1334 (9th Cir. 1984) ............................................................................16

*Biancalana v. Fleming*,
53 Cal. Rptr. 2d 47 (Ct. App. 1996) .....................................................................9

*In re Chemtura Corp.*,
439 B.R. 561 (Bankr S.D.N.Y 2010) ..................................................................12

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*,
773 F.3d 110 (2d Cir. 2014) ...............................................................................12

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch,
Pierce, Fenner & Smith Inc.*,
232 F.3d 153 (2d Cir. 2000) .................................................................................4

*In re Doctors Hosp. of Hyde Park, Inc.*,
508 B.R. 697 (Bankr. N.D. Ill. 2014) .................................................................14

*In re Dow Corning*,
456 F.3d 668 (6th Cir. 2006) ..............................................................................16

*In re Dow Corning*,
456 F.3d at 678–79 ..............................................................................................17

*In re Energy Future Holdings Corp.*,
540 B.R. 109 (Bankr. D. Del. 2015) ...................................................................17

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*In re Energy Future Holdings Corp.*,
    842 F.3d 247 (3d Cir. 2016) ................................................................ *passim*

*In re Epicenter Partners, L.L.C.*,
    No. 17-1216, 2018 WL 1354330 (B.A.P. 9th Cir. Mar. 15, 2018) ......................... 16

*G3-Purves St., LLC v. Thomson Purves, LLC*,
    953 N.Y.S.2d 109 (2012) ................................................................... 14

*Gen. Elec. Capital Corp. v. Future Media Prods.*,
    547 F.3d 956 (9th Cir. 2008) .............................................................. 16

*Gencarelli v. UPS Capital Bus. Credit*,
    501 F.3d 1 (1st Cir. 2007) ................................................................. 16

*Golden Forest Props., Inc. v. Columbia Sav. & Loan Assn.*,
    248 Cal. Rptr. 316 (Ct. App. 1988) ........................................................ 9

*HSBC Bank USA, Nat. Ass'n v. Calpine Corp.*,
    No. 07 CIV 3088 GBD, 2010 WL 3835200 (S.D.N.Y. Sept. 15, 2010) .................. 14

*In re Imperial Coronado Partners, Ltd.*,
    96 B.R. 997 (B.A.P. 9th Cir. 1989) .................................................. 9, 12, 13

*In Re LHD Realty Corp.*,
    726 F.3d at 330 ........................................................................... 14

*Matter of MPM Silicones, L.L.C.*,
    874 F.3d 787 (2d Cir. 2017) .............................................................. 9, 10

*NML Capital v. Republic of Arg.*,
    952 N.E.2d 482 (N.Y. Ct. App. 2011) .................................................. 11, 12

*Olin Corp. v. Am. Home Assurance Co.*,
    704 F.3d 89 (2d Cir. 2012) .................................................................. 8

*In re Outdoor Sports Headquarters, Inc.*,
    161 B.R. 414 (S.D. Ohio 1993) ............................................................ 15

*Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Assn.*,
    229 Cal. Rptr. 269 (Ct. App. 1986) ........................................................ 9

*Pacifica L 51 LLC v. New Invs., Inc. (In re New Invs., Inc.)*,
    840 F.3d 1137 (9th Cir. 2016) ............................................................. 17

*Perez-Encinas v. AmerUs Life Ins. Co.*,
    468 F. Supp. 2d 1127 (N.D. Cal. 2006) .................................................... 4

*In re Premier Entm't Biloxi LLC*,
    445 B.R. 582 (Bankr. S.D. Miss. 2010) ................................................... 12

Arent Fox LLP
Attorneys At Law
San Francisco

iii

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996)..................................................................................5

*In re Ridgewood Apartments of DeKalb Cty., Ltd.*,
    174 B.R. 712 (Bankr. S.D. Ohio 1994)...................................................................14

*Ridgley v. Topa Thrift & Loan Ass'n*,
    953 P.2d 484 .................................................................................................................9

*In re Sidrian*,
    No. 08-42959 ...............................................................................................................16

*In re Solutia Inc.*,
    379 B.R. 473 (Bankr. S.D.N.Y. 2007) .....................................................................9

*Tan v. Cal. Fed. Sav. & Loan Ass'n*,
    189 Cal. Rptr. 775 (Ct. App. 1983).........................................................................9

*Thrifty Oil Co. v. Bank of Am. Nat'l Tr. and Savs. Ass'n*,
    322 F.3d 1039 (9th Cir. 2003).................................................................................15

*In re Trico Marine Servs., Inc.*,
    450 B.R. 474 (Bankr. D. Del. 2011) .......................................................................13

*Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra Petroleum Corp.)*,
    No. 17-20793, 2019 WL 6318074 (5th Cir. Nov. 26, 2019) ..........................14, 16

**Statutes**

11 U.S.C. § 502 ....................................................................................................13, 15

11 U.S.C. § 1124 ..................................................................................................13, 17

11 U.S.C. § 1129 ..........................................................................................................17

Cal. Civ. Code § 1639 ..................................................................................................8

Cal. Civ. Code § 1641 ..................................................................................................8

Arent Fox LLP
Attorneys At Law
San Francisco

## **SUMMARY OF ARGUMENT**[1]

The Utility issued 29 series of Senior Notes totaling $17.525 billion of debt—some issued in the wake of the devastating Wildfires that led to the Debtors' chapter 11 filing. The Debtors are presumed solvent, and therefore able and expected to satisfy their debts and honor their pre-petition contractual obligations. Despite their ability to pay the Senior Notes when due, the Debtors have decided to satisfy principal and interest on those Senior Notes early.

The issue is whether the refinancing of the Senior Notes for the express purposes of repaying those notes early is an optional redemption entitling the holders to an allowed claim for the Optional Redemption Premium. The short answer is yes.

The holders' entitlement to the early Optional Redemption Premium stems from the plain language of the Note Documents. The Indentures governing 28 of the 29 series of Senior Notes require the Utility to pay Optional Redemption Premiums if the Utility decides to pay off the Senior Notes before either (a) fixed dates specified in the Note Documents (the Fixed Date Notes), or (b) "any time" before Stated Maturity (the Any Time Notes), in each case, irrespective of the acceleration of "maturity" as a result of filing chapter 11. The remaining Senior Notes require the payment of Optional Redemption Premiums if the notes are redeemed "prior to Maturity." The Indentures' Optional Redemption Provisions operate independently from their acceleration clauses. The acceleration clauses do not mention the Optional Redemption Provisions nor do they alter the timing fixed by such provisions or make them "inoperative" as the Debtors' suggest.

The Utility has an option to either: (1) reinstate the Senior Notes and continue to pay principal and interest when due, or (2) pay principal and interest due on the Senior Notes, plus Optional Redemption Premiums triggered by the Utility's early satisfaction of the Senior Notes. Anything less is an impairment of the Noteholders' properly allowed claims, entitling them to vote to accept or reject a plan.

---

[1] Capitalized terms not defined in this brief defined in the Consolidated Opening Brief of Certain Creditor Groups & Representatives Regarding the Entitlement of Holders of Utility Funded Debt Claims to Optional Early Redemption, Make-Whole, or Similar Amounts In a Solvent Debtor Case [Docket No. 4092] (the "Creditors' Br.").

The Debtors' Brief Regarding Utility Funded Debt Claims' Entitlement to Make-Whole Premiums & Joinder of PG&E Shareholders [Docket No. 4896] is referred to herein as the "Debtor Br.".

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

The Debtors suggest a different outcome:  that the Senior Notes be satisfied early *without* paying the Optional Redemption Premiums *and* that, despite such obvious degradation of the Noteholders' legal entitlements, the Noteholders should not be afforded the right to vote on the Debtor Plan.  This path, however, is not available to the Debtors.[2]  Whether the Debtors owe the Optional Redemption Premiums is controlled by contract.  And by their terms, the Optional Redemption Provisions require payment of an Optional Redemption Premium upon an early redemption of the Senior Notes.  For 28 out of the 29 series of Senior Notes, the Utility must pay Optional Redemption Premiums if it satisfies the Senior Notes "at any time," or at any time prior to a Fixed Date.

The Debtors claim that payment of the Optional Redemption Premiums for *all* 29 series of Senior Notes is controlled by language found solely in the 2005 Indenture tying payment of the Optional Redemption Premium to "Maturity."  But the language cited by the Debtors applies *only* to the 2034 Notes.  It has no bearing whatsoever on the 28 other series of Any Time Notes and Fixed Date Notes.  And in any event, the interpretation of the "Maturity" reference in the 2034 Notes urged by the Debtors leads to an absurd result.  That reference must be read in the context of the 2005 Indenture as a whole, which requires Optional Redemption Premiums to be paid if the Utility satisfies the 2034 Notes prior to *Stated Maturity*.  The Debtors cannot cherry-pick the language they perceive to better support their argument while ignoring the actual language of the Note Documents that embodies the parties' intent.

Unable to surmount the plain language of the Optional Redemption Provisions, the Debtors invoke the Note Documents' acceleration provision, found in section 9.02 of the Indentures.  The Debtors find significant the fact that section 9.02 requires "premiums, if any" to be paid immediately upon non-bankruptcy-induced Events of Default, but does not have the same language for a bankruptcy-induced acceleration.  But that supposed "omission" does not evince the parties' agreement to override the Optional Redemption Provisions in bankruptcy.  To the

---

[2] The Debtors' decision to litigate with unsecured creditors and deprive them of their legal and contractual rights is fundamentally inconsistent with their repeatedly stated purpose of these cases—to address Wildfire liability and leave all other unsecured creditors unaffected to the point of challenging unsecured creditors' participation in the chapter 11 plan process at all.

Arent Fox LLP
Attorneys At Law
San Francisco

2

contrary, the omission of "premium, if any" from the bankruptcy acceleration provision is consistent with, and supports, the Noteholders' entitlement to the premium under the circumstances here. The key to understanding the impact of the "premium, if any" language is the operation of the Bankruptcy Code. In bankruptcy (unlike after other Events of Default) the Debtors can choose to (a) redeem the Senior Notes, in which case Optional Redemption Premiums would be due, *or* (b) reinstate the Senior Notes and adhere to the notes' contractual obligations going forward (with no premiums being due unless the Debtors redeem the reinstated notes early). Therefore, it would make no sense to make the premiums due immediately upon a bankruptcy filing since under the Bankruptcy Code, the Debtors may choose to reinstate the Senior Notes, in which case no premium would be due.

Nor is the Noteholders' contractual right to Optional Redemption Premiums disallowed by the Bankruptcy Code. For starters, the vast majority of courts—including those in the Ninth Circuit—treat make-whole premiums as charges or liquidated damages, not disallowed claims for unmatured interest. The Debtors' disingenuous conflation of the concepts of "unmatured interest" and "unmatured premium" is an attempt to side-step that precedent should not be countenanced by the Court.

But even assuming *arguendo* that the Optional Redemption Premiums were unmatured interest, the Debtors' solvency commands payment of the contractual early redemption obligations. In solvent-debtor cases, courts are loath to allow debtors to use bankruptcy to evade their pre-petition contractual obligations. Rather, courts presumptively enforce the terms of the contracts. Creditors are not battling for a "slice of the pie" in such cases; solvent debtors (like the Debtors) are held to their obligations.[3]

## **ARGUMENT**

### I. **The Optional Redemption Premiums Are Enforceable By Their Plain Terms.**

The plain language of the Note Documents and applicable state law make clear that the Utility must pay Optional Redemption Premiums if it chooses to redeem the Senior Notes prior to

---

[3] The Creditors' Committee is a party to this brief solely with respect to Section II.B. and reserves all rights as set forth in the UCC Statement of the Creditors' Brief.

the dates specified in the Note Documents—whether on a Fixed Date, at "any time," or prior to Stated Maturity. *See* Creditors' Br. at 15–25. The Debtors, however, argue that Optional Redemption Premiums are *unavailable* to the Noteholders under the Note Documents' plain terms because the Note Documents' acceleration clause (Indentures § 9.02) automatically accelerates the Senior Notes upon the Utility's bankruptcy filing and renders the Optional Redemption Provisions moot. The Debtors are wrong, and overlook the plain language of the Optional Redemption Provisions, which require the Utility to pay the Optional Redemption Premiums if the Utility satisfies the Senior Notes prior to the dates specified in the Note Documents. This Court must "give effect to the intent of the parties as revealed by the language in their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc*., 232 F.3d 153, 157 (2d Cir. 2000); *see also, e.g.*, *Perez-Encinas v. AmerUs Life Ins. Co*., 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (same); Creditors' Br. at 16 (collecting cases).

> **A.** **The Vast Majority of Senior Notes Tether the Utility's Obligation to Pay Optional Redemption Premiums to Fixed Dates or Any Time Prior to Stated Maturity Regardless of Acceleration of "Maturity" by a Bankruptcy Filing.**

The Note Documents require the payment of Optional Redemption Premiums if the Utility chooses to redeem the Senior Notes prior to the dates specified in the Note Documents, even after a bankruptcy-induced acceleration. *See* Creditors' Br. at 15–20. As described in detail in the Creditors' Brief, the Senior Notes are subject to one of three applicable Optional Redemption Provisions: (1) provisions relating to the **Fixed Date Notes**, under which Optional Redemption Premiums are due if the Utility chooses to redeem those notes "at any time prior to [the Fixed Date]," *e.g.*, 10th Supp. Indenture § 301; (2) provisions relating to the **Any Time Notes**, providing for Optional Redemption Premium payments if the Utility chooses to redeem those notes "at any time," *e.g.* 1st Supp. Indenture § 301; and (3) provisions in the 2005 Indenture governing the **2034 Notes**, which, read in context of the 2005 Indenture as a whole, require payment of an Optional Redemption Premium if the Senior Notes are redeemed at any time before Stated Maturity, Creditors' Br. at 18–20. None of these provisions "make clear that Optional Redemption Premiums can *only occur prior to the Maturity of the Notes*," as the Debtors contend. Debtors' Br. at 9 (emphasis added).

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

The Debtors claim that the Optional Redemption Provisions "uniformly address circumstance where the Notes are voluntarily paid off . . . before maturity . . . ." Debtors' Br. at 6. But that characterization is specious. *Only* the 2005 Indenture, which governs *only* the 2034 Notes, ties payment of the Optional Redemption Premium for that single series of Senior Notes to "Maturity." The vast majority of the Senior Notes (28 out of 29 series of the Senior Notes at issue) establish that the Optional Redemption Premiums are owed if the redemption occurs prior to a Fixed Date, *see* Creditors' Br. at 17, or at "any time," *see id.* at 17–18, regardless of any bankruptcy induced acceleration. The Debtors' "Maturity" argument thus rests on a false premise for those other 28 series of Senior Notes. And there can be no question that satisfaction of those 28 series of Senior Notes under the Debtors' Plan would occur prior to the applicable Fixed Dates or at "any time."[4]

As for the final series of Senior Notes—the 2034 Notes—the reference to "Maturity" in the Optional Redemption Provision requires a different analysis, but ultimately leads to the same result. As explained in the Creditors' Brief, the parties' use of the word "Maturity," in the context of the 2005 Indenture as a whole, must be read to mean prior to "*Stated Maturity*" to avoid absurd results. Creditors' Br. 18–20.

In their opening brief, the Debtors suggest that for the Any Time Notes, the "any time" language in the associated Optional Redemption Provisions is actually limited to "any time . . . prior to Maturity." Debtors' Br. at 6. This argument fails for at least four reasons. *First*, the Optional Redemption Provisions in the Any Time Notes require payment of the Optional Redemption Premiums if redemption is made at "any time"—full stop and without limitation. The reference to "prior to Maturity" in the Any Time Notes appears solely on the Form of Senior Note (the "Model Note") attached as an exhibit to each Supp. 2005 Indenture. But the documents make

---

[4] Because the Debtors failed to address the plain-language differences between the three categories of Optional Redemption Provisions at issue here, the Noteholders have been deprived of any opportunity to respond to any arguments that are specific to each category of Senior Notes. To the extent the Debtors raise such arguments in their response to the Creditors' Brief, BOKF and the AHC should be permitted to file a sur-reply to counter the Debtors' latent position. *See, e.g.*, *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1276 (N.D. Cal. 2014) ("If a party raises a new argument or presents new evidence in a reply brief, a court may consider these matters only if the adverse party is given an opportunity to respond." (citing *El Pollo Loco v. Hashim*, 316 F.3d 1032, 1040–41 (9th Cir. 2003)); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)).

clear that the indentures control, as the redemption language in the Model Note expressly provides that redemption is "[s]ubject to the terms and conditions of the Indenture."

*Second*, the Model Note itself defines "MATURITY DATE" as a fixed date in the future. *See, e.g.*, 1st Supp. Indenture, Ex. A at 1 ("MATURITY DATE: March 1, 2037") (capitalization in original). Thus, the Any Time Notes Model Note actually supports that the Optional Redemption Premium is due if there is any redemption prior to the specified maturity dates.

*Third*, the Debtors' arguments would lead to absurd results and render the Any Time Notes' Optional Redemption Provisions superfluous. *See, e.g.*, Cal. Civ. Code § 1641 (contract provisions cannot be interpreted in a way that renders other provisions superfluous); *Crosby v. HLC Properties, Ltd.*, 167 Cal. Rptr. 3d 354, 359–60 (Cal. App. 2014) (same). "Maturity" is defined in the 2005 Indenture[5] as "the date on which the principal of such Bond . . . becomes due and payable . . . whether at Stated Maturity, by declaration of acceleration, upon call for redemption or otherwise." 2005 Indenture § 1.01. If there is a call for redemption, the "Redemption Date" then becomes the Maturity. 2005 Indenture §§ 1.01, 6.05. Accordingly, an early redemption could *never* occur prior to Maturity, but only prior to Stated Maturity. Any contrary interpretation would render the Optional Redemption Provisions meaningless and must be rejected under well-settled principles of contract construction.[6]

*Finally*, the Debtors' incorrect interpretation of the Model Note language must be rejected because it would directly contradict the "any time" language in the Any Time Note Indentures' Optional Redemption Provision. These provisions are "repugnant" to one another under applicable California law. *See* Cal. Civ. Code § 1652 ("Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract."); *see also Fernandez v. K-M Industries Holding Co., Inc.*, 646 F.Supp.2d 1150, 1160 (N.D. Cal. 2009) ("repugnant" terms are "contradictory or inconsistent terms"). Where the court is unable to harmonize the repugnant

---

[5] All of the Any Time Notes were issued under supplements to the 2005 Indenture. *See* Creditors Br. Ex. 1  Each supplement under which the Any Time Notes were issued adopts the definitions in the 2005 Indenture "unless context suggests otherwise." *See, e.g.*, 1st Supp. Indenture, Art. I ("Definitions").

[6] The Debtors' arguments with respect to the 2034 Notes must also fail for the same reason. *See* Creditors' Br. at 18–20.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

provision, then "the first [clause in the agreement] shall be received and the latter [clause in the agreement] rejected[]." *Hobson*, 221 P.2d at 764–65. The Optional Redemption Provisions, which are set forth in the indentures before the Model Notes, clearly require payment of the Optional Redemption Premiums if the Any Time Notes are redeemed "any time" prior to *Stated* Maturity. That language controls and, as set forth above, would be the only logical interpretation of the Note Documents.[7] Thus, the Debtors' satisfaction of the Any Time Notes prior to their dates of *Stated Maturity*—as with the Fixed Date Notes and the 2034 Notes—constitutes a "redemption" under the applicable Note Documents.[8]

## B. The Acceleration Clause Does Not Nullify—But Rather Supports—the Noteholders' Right to Optional Redemption Premiums After Bankruptcy.

Ignoring the unequivocal language in the Optional Redemption Provisions, the Debtors promote a bright-line rule that Optional Redemption Premiums can never be due after a bankruptcy-induced acceleration. Debtors' Br. at 7–10. The Debtors' interpretation is wrong as a matter of law and is foreclosed by the terms of the vast majority of the Optional Redemption Provisions, which tether redemption not to "maturity," but to fixed dates or "stated maturity." Further, the acceleration provisions do not mention, and therefore operate independently from, the Optional Redemption Provisions. In fact, section 9.02 recognizes that, following a bankruptcy-induced acceleration, premiums may or may not become due depending on the Debtors' choice to either (1) redeem the Senior Notes, or (2) reinstate them. If the Debtors reinstate the Senior Notes, no

---

[7] This proposed reconciliation is likewise consistent with the bargain embodied in the Optional Redemption Provisions and the general intent and purpose of the Note Documents. Make-whole provisions, in general, protect lenders' rights to the stream of interest for which they bargained and help to tether the interest-rate risk between issuers and noteholders. If not for make-wholes, noteholders would bear risk of their issuers refinancing the notes when interest rates lower, forcing the noteholders to acquire new notes at these now lower rates. *See, e.g.*, *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 641 (Bankr. S.D. Miss. 2010) (quoting Am. Bar Foundation Corp. Debt. Fin. Project, *Commentaries on Model Debenture Indenture Provisions* 475 (1971)). The Debtors' ability to intentionally trigger "Maturity" and evade the bargain they struck with the Any Time Noteholders—who agreed to lend the Debtors $2.7 billion in principal capital for approximately 30 years at fixed rates of interest—undermines the purpose of the Optional Redemption Provisions and the Note Documents as a whole.

[8] In the end, the fact that the Debtors—not the Noteholders—drafted the Indentures provides a further reason that the inconsistencies in the Model Note's "prior to maturity" language must be interpreted against them. This further supports the Noteholders' interpretation. *See* Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."); *DPR Constr. v. Shire Regerative Med., Inc.*, 204 F. Supp. 3d 1118, 1130 (S.D. Cal. 2016) (same).

Arent Fox LLP
Attorneys At Law
San Francisco

premium becomes due. Thus, the Debtors' reliance on § 9.02 is misplaced.

### 1. Both the Optional Redemption Provisions' Terms and Applicable Law Allow For Redemption Following Bankruptcy.

As discussed above, the vast majority of the Optional Redemption Provisions expressly require payment of Optional Redemption Premiums should the Utility redeem the Senior Notes prior to the Fixed Dates or "any time," not prior to "Maturity." *See supra* § I.A. Whether bankruptcy advances the maturity date of those 28 series of Senior Notes therefore has no bearing on whether the Optional Redemption Premiums are due.

Moreover, even though the Optional Redemption Provision found in the 2005 Indenture, governing only the 2034 Notes, uses the word "Maturity," that term must be read in context to require payment prior to Stated Maturity to avoid absurdity. *See id.* The Note Documents also provide the procedures for the Senior Notes to be "redeemable before their Stated Maturity" (*see* Indentures § 6.01). A bankruptcy-induced acceleration leading to "Maturity" would not impact whether the 2034 Notes are redeemed prior to Stated Maturity. Thus, even assuming the definition of "redemption" the Debtors espouse is correct—*i.e.*, a "redemption" in the technical sense must occur before maturity—the plain language of the Note Documents still requires payment of the Optional Redemption Premiums under the circumstances here. The parties in this instance chose to define "redemption" in terms that do not change depending on Maturity. This Court must give meaning to the language and provisions the parties chose to include in the Note Documents (*see, e.g.*, *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012); Cal. Civ. Code §§ 1639, 1641), *not* to the language the Debtors' would now prefer to have used when negotiating the Note Documents.

In any event, redemption can, as a matter of law, occur after a bankruptcy-induced acceleration. *See* Creditors' Br. at 20–22. *In re Energy Future Holdings Corp.* ("*EFH*"), 842 F.3d 247 (3d Cir. 2016), applying New York law, so held. *Id.* at 255 (citing *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 388 (3d Cir. 2012) (noting that regulations allow bondholders to "present . . . long-matured savings bond[s] for redemption"); *Fed. Nat. Mortg. Ass'n v. Miller*, 473 N.Y.S.2d 743, 744 (N.Y. Sup. Ct. 1984)) (declaring that "debtor may redeem" mortgage by

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"pay[ing] . . . accelerated debt")). *EFH* is also in accord with precedent from the Ninth Circuit BAP, *In re Imperial Coronado Partners, Ltd.*, 96 B.R. 997 (B.A.P. 9th Cir. 1989), holding that prepayment premiums are available after a bankruptcy-induced acceleration, *id.* at 999–1000; *see also In re 433 S. Beverly Drive*, 117 B.R. 563, 565 (Bankr. C.D. Cal. 1990) (same), and with California state court decisions, holding that prepayments may follow acceleration generally.[9] The Debtors, who do not even cite *Imperial Coronado*, ignore Ninth Circuit authority on this issue.

Instead, the Debtors highlight cases cited in the Second Circuit's *Momentive* decision, *Matter of MPM Silicones, L.L.C.* ("*Momentive*"), 874 F.3d 787 (2d Cir. 2017), that they contend establish that make-wholes are not available after a bankruptcy-induced acceleration. Debtors' Br. at 8. As described in the Creditors' Brief, the *Momentive* decision is factually distinguishable with respect to the majority of the Senior Notes, *see* Creditors' Br. at 24, precluded by the "Intentional Evasion" doctrine, *id.* at 25–26, and wrongly decided, *id.* at 26. The cases that the *Momentive* court relied upon—and the additional cases the Debtors cite —found only that *prepayment* premiums were foreclosed following maturity.[10] *See In re Solutia Inc.*, 379 B.R. 473, 488 (Bankr. S.D.N.Y. 2007) ("Prepayment can only occur *prior* to the maturity date"); *In re AMR Corp.*, 730 F.3d 88, 103 (2d Cir. 2013) (same); *Tan v. Cal. Fed. Sav. & Loan Ass'n*, 189 Cal. Rptr. 775, 781–82 (Ct. App. 1983) (addressing prepayment penalties following acceleration).[11] The *EFH* court recognized the importance of the distinction between a prepayment and redemption: "Once a maturity date is accelerated to the present, it is no longer possible to *prepay* the debt before maturity." *EFH*, 842

---

[9] *See Golden Forest Props., Inc. v. Columbia Sav. & Loan Assn.*, 248 Cal. Rptr. 316, 318 (Ct. App. 1988); *Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Assn.*, 229 Cal. Rptr. 269, 274 (Ct. App. 1986); *Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484. 489–90 & n.3 (Cal. 1998); *Biancalana v. Fleming*, 53 Cal. Rptr. 2d 47, 49–50 (Ct. App. 1996).

[10] *Momentive* is also factually distinguishable because in that case, the debtors treated noteholder claims with the issuance of replacement notes to the existing noteholders, not by payment of cash proceeds raised by a refinancing intended to save interest expense. Here, the Debtors are proposing to treat the Senior Note claims through the payment of cash, which is undoubtedly a redemption within the meaning of the Note Documents. *Momentive* also relies on *AMR*, a Second Circuit decision where the relevant indentures explicitly forbade payment of the redemption premium following a bankruptcy filing. *Momentive*, 874 F.3d at 802–03.

[11] Of course, the Ninth Circuit has held that even prepayment clauses can be redeemed following bankruptcy, *see supra* at 9. The *Tan* court, applying California law, did not defy the weight of authority in California on this issue by finding prepayments are foreclosed as a matter of law following maturity; rather, it held that the specific language in the prepayment premium provision made it clear that the prepayment penalty was only available upon the borrower's decision to prepay the debt. 189 Cal. Rptr. at 781–82.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

F.3d at 260. By contrast, a "redemption" can even occur, under common understanding, simultaneously with maturity, *id.* at 259 (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 116 (2d Cir. 2014)), or after under the provision's terms, *id.* at 257–58. The same logic that applies to "pre-" payments does not apply to redemptions. *EFH*, 842 F.3d at 260. The fact that the Third Circuit decided *EFH* while the Second Circuit decided *Momentive* (*see* Debtors' Br. at 8) is of no moment: both Circuits interpreted and applied New York Law. The Debtors' reliance on *Momentive* is thus unavailing.

### 2. Section 9.02 and the Optional Redemption Provisions Function Independently.

The Debtors argue that § 9.02 *implicitly* disclaims payment of the Optional Redemption Premiums following bankruptcy by providing that (a) principal, accrued interest, and "premiums, if any" are due following non-bankruptcy acceleration, but (b) only "the principal amount" is due and owing following a bankruptcy-induced acceleration. Indentures § 9.02; *see* Debtors' Br. at 4, 11. The absence of the "premium, if any" language from the acceleration clause lacks the import the Debtors attempt to assign to it. To the contrary, it sensibly allows for the possibility that Optional Redemption Premiums may or may not be due following bankruptcy, depending on the Utility's choices.

The omission of a reference to any "premium" concerning certain bankruptcy-related events of default simply recognizes a critical distinction between bankruptcy and non-bankruptcy defaults. When the debt is accelerated by other Events of Default outside of bankruptcy, it necessarily follows that the Utility would have no option to reinstate the Senior Notes, making any Optional Redemption Premiums due immediately.[12]

The same is not true following a bankruptcy filing, since the Bankruptcy Code permits the Debtors to elect to satisfy *or* reinstate the Senior Notes. If the Senior Notes are reinstated, the obligations under the Senior Notes are due on their original terms. But if the Senior Notes are not reinstated but instead repaid, the Optional Redemption Provisions require payment of the Option

---

[12] The Debtors' position that Optional Redemption Premiums are never due after "Maturity," moreover, would render meaningless the "premium if any" language in section 9.02. Once a debt is accelerated, Maturity occurs, and no "premiums" could ever be due, according to the Debtors.

Redemption Premium. The fact that the Debtors have a choice readily explains why section 9.02 does not specify what occurs with respect to a "premium" in the event of a bankruptcy filing. On top of that, the omission of "premiums" from the section 9.02 is immaterial given the Noteholders' ability to file a proof of claim including the Optional Redemption Premiums in the bankruptcy.

Notably, the Debtors' interpretation of the acceleration clause would conflict directly with other provisions of the Note Documents that allow for post-bankruptcy collection of Optional Redemption Premiums. In particular, section 9.05 permits the Indenture Trustee to include "premium, if any" among the amounts asserted in bankruptcy proofs of claim. The Indentures also state that "notwithstanding any other provision in [the] Indenture, the Holder of any Bond shall have the right, which is absolute and unconditional, to receive payment of . . . premium, if any." *E.g.*, 2018 Indenture Art. IX § 9.08 ("Unconditional Right of Holders to Receive Principal, Premium, and Interest") (August 6, 2018) (emphasis added). Those provisions would be rendered meaningless under the Debtors' interpretation of section 9.02. *See EFH*, 842 F.3d at 257 (court must afford all provisions in contract full effect); *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1162 (9th Cir. 2010) (same).

Section 9.02's silence with respect to "premiums" following a bankruptcy means simply that the Optional Redemption Premiums are not triggered automatically upon a bankruptcy filing. No language in the acceleration clause precludes Optional Redemption Premiums after bankruptcy; to the contrary, other sections of the Note Documents expressly permit it. The Debtors' interpretation does not withstand examination of the Note Documents as a whole.

Further, section 9.02 does not mention the Optional Redemption Provisions—it addresses acceleration. *See* Indentures § 9.02. "The two sections simply address different things: § [9.02] causes the maturity of [the Utility's] debt to accelerate on its bankruptcy, and [the Optional Redemption Provisions] cause[] a make-whole to become due when there is an optional redemption before [a date fixed in Note Documents]." *EFH*, 842 F.3d at 256. These provisions exist in harmony. *See id.* There is no reason to read the acceleration clauses to render other provisions of the contract null and void in the event of a bankruptcy. *See id.*; *see also NML Capital v. Republic of Arg.*, 952 N.E.2d 482, 487 (N.Y. Ct. App. 2011) (there is no rule that "terms of a contract not

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  necessarily impacted by acceleration . . . automatically cease to be enforceable after acceleration.");

2  Creditors' Br. at 20–23. That is especially true for the Optional Redemption Provisions applicable

3  to the Any Time Notes and Fixed Date Notes, given that they say nothing about Maturity and thus

4  are not impacted by acceleration. *See EFH*, 842 F.3d at 256–57 ("It surpasses strange to hold that

5  silence in [the acceleration clause] supersedes [the optional redemption clause's] simple script.").

6         The Debtors nowhere discuss the holdings of *EFH*, *NML Capital*, and other cases that say

7  that an acceleration clause, otherwise silent with respect to the availability of make-whole

8  premiums, does not negate the holders' entitlement to make-wholes after a bankruptcy-induced

9  acceleration. *See In re Chemtura Corp*., 439 B.R. 561, 601, 603 (Bankr S.D.N.Y 2010) (bankruptcy

10  acceleration did not negate make-whole provision tied to a fixed maturity date); *In re Premier*

11  *Entm't Biloxi LLC*, 445 B.R. at 631. ("[A]ccelertaion will not defeat the right to a prepayment

12  premium.") (citing *In re LHD Realty Corp*, 726 F.2d 327, 332 (7th Cir. 1984)). Instead, they rely

13  on *AMR* to argue that the acceleration clause forecloses Optional Redemption Premiums. Debtors'

14  Br. at 11.

15         The clause at issue in *AMR*, however, unlike section 9.02, explicitly disclaimed make-whole

16  premiums after a bankruptcy-induced acceleration. *In re AMR Corp.*, 730 F.3d at 99 (acceleration

17  provision stated that principal and interest, "but for the avoidance of doubt, without Make-Whole

18  Amount" would be due following bankruptcy-induced acceleration). Reading section 9.02's

19  silence with respect to Optional Redemption Premiums to foreclose their availability following

20  bankruptcy defies the rules of contract construction, to "giv[e] effect to the intent of the parties as

21  revealed by the language in their agreement[s]." *Chesapeake Energy Corp.*, 773 F.3d at 113–14.[13]

22      **C.**     **The Debtors' Redemption of the Senior Notes Is Optional.**

23         The Debtors' decision to satisfy the Senior Notes prior to the dates specified in the Note

24  Documents is entirely "optional," even when made after their bankruptcy filing. *See Imperial*

25  *Coronad*o, 96 B.R. 999–1000; *EFH*, 842 F.3d at 255. The Debtors elected to file for protection

26  under chapter 11. The Debtors have the ability to reinstate the Senior Notes and leave their

27

28

---

[13] The *EFH* court held that the "rule of explicitness" sometimes applicable to prepayment premiums does not apply in the context of an optional redemption clause because the term "prepayment" is indicative of a pre-maturity payment of debt. *EFH*, 842 F.3d at 259.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

obligations thereunder intact after the Debtor Plan's proposed effective date. Section 1124 provides that "notwithstanding any contractual provision or applicable law" entitling holders of a claim in bankruptcy to "demand or receive accelerated payment" of their claims, the debtors can "reinstate the maturity [of debt] as such maturity existed before such default." 11 U.S.C. § 1124(2)(B). Therefore, to the extent that the Debtors choose not to reinstate the Senior Notes, the redemption of the Senior Notes on the effective date is clearly "optional." *See Imperial Coronado*, 96 B.R. at 999–1000 (debtor "had the right to deaccelerate the due date of the loan as part of a plan of reorganization . . . [under] 11 U.S.C. § 1124(2)," so its decision to pay it off rather than reinstate it was "voluntary"); *EFH*, 842 F.3d at 255 (same); *see also* Creditors' Br. at 12–15.

Once again, the Debtors embrace an argument to the contrary that would require the Court to gloss over important nuances. The Debtors' argument that "after maturity, the Utility is obligated to repay all of the debt under the terms of the Indentures [so] payment is no longer optional," *see* Debtors' Br. at 8, ignores the reinstatement option available to the Debtors under Bankruptcy Code section 1124. Their decision to pay off the Senior Notes is optional, as *Imperial Coronado* and *EFH* held.

Accordingly, any attempt by the Debtors to satisfy the Senior Notes prior to the dates specified in the Note Documents constitutes a "redemption" that is "optional," entitling Noteholders to Optional Redemption Premiums under the terms of the Note Documents.

**II.      The Optional Redemption Premiums Are Not Disallowed By The Bankruptcy Code.**

**A.      Optional Redemption Premiums Are Not Unmatured Interest.**

The vast majority of courts nationwide—including the *Imperial Coronado* court within the Ninth Circuit—have found that make-whole premium claims are not unmatured interest disallowed under section 502(b)(2) of the Bankruptcy Code. *See* Creditors' Br. at 27–28 (collecting cases); *see also In re Trico Marine Servs., Inc.*, 450 B.R. 474, 480 (Bankr. D. Del. 2011) ("[T]he substantial majority of courts considering the issue have concluded that make-whole or prepayment obligations are in the nature of liquidated damages rather than unmatured interest, whereas courts taking a contrary approach are in the distinct minority."). Rather, make-whole premium claims are treated as liquidated damages or charges. Creditors' Br. at 27–28. Notwithstanding the Debtors' citation

to *In re Ridgewood Apartments of DeKalb Cty., Ltd.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) (cited in Debtors' Br. at 13, 14, 15), that is the better view. And the Fifth Circuit's recent about-face in *Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra Petroleum Corp.)*, No. 17-20793, 2019 WL 6318074 (5th Cir. Nov. 26, 2019), in which the panel vacated a prior decision that characterized prepayment premiums as unmatured interest, demonstrates the dubious grounding of the Debtors' position. *See id.* at *1, *5–6.

The debtors argue that the Optional Redemption Premiums are the economic equivalent of interest. That point is immaterial. As noted, the Optional Redemption Premiums are charges—akin to liquidated damages—intended to compensate the Noteholders' for their economic losses in the event of an early redemption of the Senior Notes. *See* Creditors' Br. at 27–28. Liquidated damages are legally required to mimic the contracting party's economic losses; otherwise, they are unenforceable penalties. *See, e.g.*, *G3-Purves St., LLC v. Thomson Purves, LLC*, 953 N.Y.S.2d 109, 113 (2012) (liquidated damages provisions must affix an amount that "reasonabl[y] measure[s] . . . the probably actual loss in the event of a breach" (quotation omitted)). The Optional Redemption Premium must therefore resemble the Noteholders' actual economic losses to be enforceable contract provisions. That this figure mimics an interest calculation is both unsurprising (to be enforceable at all, it must), and legally immaterial under the majority of cases finding such calculations to be enforceable in bankruptcy.

The remaining cases upon which the Debtors rely either (1) do not address the unmatured interest question,[14] or (2) evaluate whether a make-whole is akin to unmatured interest on a case-by-case basis.[15] Thus, even if this Court were to deviate from Ninth Circuit precedent and the overwhelming weight of authority, it would be required to conduct a factual analysis of the Optional Redemption Premiums to determine whether they are designed to compensate for unmatured interest in the context of the "dynamics of the individual case." *In re Ultra Petroleum Corp.*, 2019

---

[14] *HSBC Bank USA, Nat. Ass'n v. Calpine Corp.*, No. 07 CIV 3088 GBD, 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) (court did not find that the prepayment premium was disallowed by 502(b)(2) as unmatured interest; the prepayment premiums were not triggered because the premium was only owed if the notes were repaid on or after April 1, 2007 and 2008, the Notes were repaid on March 29, 2007); *In Re LHD Realty Corp.*, 726 F.3d at 330 (discussing purpose of make-whole premiums)..

[15] *In re Doctors Hosp. of Hyde Park, Inc.*, 508 B.R. 697, 701–02 (Bankr. N.D. Ill. 2014).

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

WL 6318074 at *5 (espousing no position on whether make-wholes constitute unmatured interest and remanding for the bankruptcy court to determine this question in the first instance). The record is not ripe for such a review, and further discovery on this point would be necessary.

In addition, even if the Optional Redemption Premiums were "interest" (and they are not), such interest would not be "unmatured" because the Optional Redemption Premiums are grounded in prepetition contracts that would become due by reason of repayment of debt under a plan. *See In re 360 Inns, Ltd.*, 76 B.R. 573, 576 (Bankr. N.D. Tex. 1987) ("prepayment penalty was not unmatured interest as contemplated in § 502(b)(2), inasmuch as the prepayment penalty was activated and matured once the plan of reorganization proposed to prepay UNUM's debt"); *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 424 (S.D. Ohio 1993) ("Prepayment amounts . . . do not constitute unmatured interest because they fully mature pursuant to the provisions of the contract."); *see also* Creditors' Br. at 27–28. The Debtors attempt to conflate "interest" with "premium" by relying on *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. and Savs. Ass'n*, 322 F.3d 1039, 1047 (9th Cir. 2003). Debtors' Br. at 14. *Thrifty Oil* is not only factually inapplicable—the court there examined whether damages due upon termination of a swap agreement constituted "interest"—but it also found that such damages "merely provide[d] the replacement cost of the lost swap payments and [did not] represent interest, unmatured or otherwise." *Thrifty Oil Co.,* 322 F.3d at 1048.

Thus, no provision of the Bankruptcy Code disallows the Optional Redemption Premiums. The Debtors must therefore (1) pay the Optional Redemption Premiums under the terms of the Note Documents if they elect to satisfy the Senior Notes, or (2) treat the Noteholders' claims as impaired.

**B.      The Debtors' Solvency Underscores Their Obligation to Fulfill Contractual Commitments.**

Finally, even if the Court rules that the Optional Redemption Premiums are unmatured interest (they are not), the presumed-solvent Debtors must still pay Optional Redemption Premiums as required under the Note Documents. *See* Creditors' Br. at 29–30. This presumption that creditors are entitled to the full benefit of their prepetition bargain—even including amounts that are disallowed by the Bankruptcy Code—is widely recognized because it is generally the "opposite

1   of equity to allow the debtor to escape the expressly-bargained-for result of its act."  Creditors' Br.

2   at 29 (quoting *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959)).

3          Contrary to the Debtors' position, this solvent debtor-exception is not a "relic of the past."

4   Debtors' Br. at 15.  True, the concept pre-dates the Bankruptcy Code.  But cases that post-date the

5   enactment of the Bankruptcy Code continue to hold that creditors are entitled to the full benefit of

6   their prepetition bargain in solvent debtor cases, as equitable considerations for the allocation of

7   the debtors' "limited pie" give way to "the presumption . . . that a bankruptcy court's role is merely

8   to enforce the contractual rights of parties."  *In re Dow Corning*, 456 F.3d 668, 678–79 (6th Cir.

9   2006); *see also Gencarelli v. UPS Capital Bus. Credit*, 501 F.3d 1 (1st Cir. 2007) ("This is a solvent

10  debtor case and, as such, the equities strongly favor holding the debtor to his contractual obligations

11  as long as those obligations are legally enforceable under applicable non-bankruptcy law");

12  Creditors' Br. at 29–31 (collecting cases).

13         Just last month the Fifth Circuit joined the uninterrupted line of case law preserving the

14  solvent debtor exception in *In re Ultra Petroleum Corp.* when it went out of its way to note that its

15  "review of the record reveals no reason why the solvent-debtor exception could not apply" and

16  expressly instructed the bankruptcy court, on remand, to "consider . . . the applicability of the

17  solvent-debtor exception."  *Id*. at *6.  Conducting that analysis harmonized with "other circuits

18  hav[ing] recognized" that, "absent compelling equitable considerations, when a debtor is solvent,

19  it is the role of the bankruptcy court to enforce the creditor's contractual rights."  *Id*. (quoting *In re

20  Dow Corning*, 456 F.3d at 679) (citing *In re Chi., Milwaukee, St. Paul & Pac. R. R. Co.*, 791 F.2d

21  524, 528 (7th Cir. 1986)).  These cases are consistent with existing Ninth Circuit precedents that

22  pre- and post-date the Bankruptcy Code.  *See*, *e.g.*, *Gen. Elec. Capital Corp. v. Future Media

23  Prods.*, 547 F.3d 956 (9th Cir. 2008); *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1339 (9th Cir.

24  1984) ; *Epicenter Partners, L.L.C. v. CPF Vaseo Ass'n (In re Epicenter Partners, L.L.C.*, No. 17-

25  1216, 2018 WL 1354330, at * 7 (B.A.P. 9th Cir. Mar. 15, 2018).  Indeed, Courts within the Ninth

26  Circuit continue to apply the solvent-debtor exception in the post-Code era, *e.g.*, *In re Sidrian*, No.

27  08-42959 T, 2009 WL 3627932 (Bankr. N.D. Cal. Feb. 25, 2009) (ECF No. 169), and there is no

28  basis to stray from this firmly entrenched principle of bankruptcy law.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

To the contrary, courts have recognized that the solvent-debtor exception is now embedded in the provisions of the Bankruptcy Code. For example, the Sixth Circuit has explained that the solvent debtor exception is bound with the fair and equitable test under § 1129(b) and the absolute priority rule: equity cannot be paid in bankruptcy before impaired classes of creditors are paid in full if the debtor is solvent. *In re Dow Corning*, 456 F.3d at 678–79. Moreover, under section 1124, creditors are only "unimpaired" and thus precluded from voting if their legal, equitable, or contractual rights are left unaltered in any way by operation of the plan. In *In re Energy Future Holdings Corp.*, 540 B.R. 109, 120 (Bankr. D. Del. 2015), the bankruptcy court held that, notwithstanding section 502(b), in order for a solvent debtor to leave a creditor unimpaired, the plan must preserve the creditor's equitable right to certain interest, effectively importing the "fair and equitable test" of section 1129(b) into section 1124(1). *Id.* at 120. A recent Ninth Circuit case applying the identical "rights" language of section 1124(2) holds that "one of those rights is post-default interest." *Pacifica L 51 LLC v. New Invs., Inc. (In re New Invs., Inc.)*, 840 F.3d 1137, 1142 (9th Cir. 2016). The solvent debtor exception is therefore embedded in concepts written in the Bankruptcy Code. Moreover, the date the interest might become due (whether pre or post-effective date) is irrelevant because payment of the Optional Redemption Premium is due as of the Effective Date. Therefore contrary to the Debtors' assertion, such payments are captured by the solvent debtor exception.

Because the Debtors are solvent, they are obligated to pay Optional Redemption Premiums by virtue of their solvency and the plain language of the Note Documents *even if* such premiums are deemed to be "unmatured interest." *See EFH*, 842 F.3d at 255; *see* Creditors' Br. at 29–30 (collecting cases).

## CONCLUSION

The Debtors offer a strained interpretation of the Note Documents and applicable state law, and rely upon minority decisions directly contradicted by precedent in the Ninth Circuit and courts around the country to deprive the Noteholders of their valuable rights: either (1) the amount they are owed by virtue of the Optional Redemption Provisions, or (2) the right to vote to accept or reject the Debtor Plan as impaired creditors. The Debtors' position is contradicted by the Note

1  Documents' plain language and applicable precedent.

2       Accordingly, BOKF and the AHC respectfully request that this Court enter an order

3  declaring that (i) the Noteholders are entitled to a claim for the Optional Redemption Premiums

4  if the Senior Notes are paid or satisfied, and (ii) should any plan proponent propose to satisfy

5  principal and interest due on the Senior Notes without paying the Noteholders the Optional

6  Redemption Premiums, the Noteholders will be impaired and entitled to vote to accept or reject

7  any plan incorporating such a proposal.

8

9

10

11                                     **ARENT FOX LLP**

    Dated:   December 20, 2019

12

                                   By: */s/ Aram Ordubegian*

13                                       ARAM ORDUBEGIAN  (SBN 185142)
                                     ANDREW I. SILFEN (*pro hac vice*)

14                                       BETH M. BROWNSTEIN (*pro hac vice*)

15                                     *Counsel for BOKF, NA, solely in its capacity as*

16                                     *Indenture Trustee for the Utility Senior Notes*

17                                 **AKIN GUMP STRAUSS HAUER & FELD LLP**

18                                     */s/ Ashley Vinson Crawford*
                                   ASHLEY VINSON CRAWFORD

19                                     MICHAEL S. STAMER
                                   IRA S. DIZENGOFF

20                                     DAVID H. BOTTER
                                   ABID QURESHI

21                                     *Counsel for the Ad Hoc Committee of Senior*

22                                     *Unsecured Noteholders of Pacific Gas and Electric*
                                   *Company*

23

24                                   **MILBANK LLP**

25                                   */s/ Thomas R. Kreller*
                                   DENNIS F. DUNNE

26                                   SAMUEL A. KHALIL
                                 GREGORY A. BRAY

27                                   THOMAS R. KRELLER

28                                   *Counsel for the Official Committee of Unsecured*
                                   *Creditors*

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO