Yosef Peretz (SBN 209288)
yperetz@peretzlaw.com
Shane Howarter (SBN 311970)
showarter@peretzlaw.com
PERETZ & ASSOCIATES
22 Battery Street, Suite 200
San Francisco, CA 94111
Telephone: (415) 732-3777
Facsimile: (415) 732-3791

Attorneys for Claimant Cara Feneis

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PG&E CORPORATION and<br>PACIFIC GAS AND ELECTRIC<br>COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>■ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br>*All papers shall be filed in the Lead Case,<br>　　No. 19-30088 (DM) | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case)<br>(Jointly Administered)<br><br>**CLAIMANT CARA FENEIS' MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT STATE COURT JURY TRIAL OF CARA FENEIS V. PACIFIC GAS AND ELECTRIC COMPANY (CASE NO. RG17866484)** |

I.　**INTRODUCTION**

　　Claimant CARA FENEIS ("Claimant") brought suit in the Superior Court of California, County of Alameda ("Alameda Superior"), Case No. RG17866484, against Debtor PACIFIC GAS AND ELECTRIC COMPANY ("PG&E") in connection with whistleblower retaliation and wrongful termination claims arising from Claimant's employment with PG&E. Claimant was hired as a Business Finance Analyst by PG&E in March 2015, and as part of her job duties was required to report key departmental performance metrics in the areas of budgeting, monitor costs, and plan future budgeting strategies. By May 2015, in the course of her financial monitoring, Claimant had observed improper expenditures by several high-level employees at PG&E for personal, non-work-related items, resulting in overruns of millions of dollars. In the following months, Claimant reported her findings to her direct supervisors multiple times and was

repeatedly ignored or told to do nothing. As Claimant continued to report the problems to higher ups and to whistleblower agencies, her supervisors and upper management personnel harassed her endlessly. On November 18, 2015, Claimant was terminated as a result of her disclosure of illegal and fraudulent financial activities on the part of PG&E's employees.

Now, Claimant seeks relief from the automatic stay of proceedings to continue her case in Alameda Superior against PG&E for the wrongful termination, discrimination, and retaliation that she faced as a result of PG&E's internal corruption and misuse of corporate funds. Claimant's case has been ongoing in Alameda Superior since July 2017, long before the automatic stay was put in place as a result of the initiation of PG&E's bankruptcy proceedings. Just before the automatic stay was imposed in January 2019, the parties were preparing for a scheduled mediation, and a trial date had already been set for September 2019. Thus, the parties had made significant progress in litigating and resolving Claimant's action, which was only interrupted by the automatic stay. Furthermore, allowing PG&E to avoid the action would only continue to reward the company for covering up its misuse of corporate funds and its wrongful termination of Claimant for blowing the whistle on these activities.

Moreover, Claimant's lawsuit should proceed in Alameda Superior rather than remaining under the jurisdiction of the bankruptcy court. Claimant's causes of action stem entirely from California employment law, and are brought exclusively against a California employer. Substantial discovery has already taken place, and Claimant anticipates that significant Court intervention and oversight will be required, even before trial. Therefore, the case would be most efficiently venued in Alameda Superior.

As such, Claimant requests that the Court release her from the automatic stay of proceedings and allow her case to continue in Alameda Superior.

## II. FACTUAL BACKGROUND

Claimant is a finance analyst who first began her employment with PG&E on April 6, 2015. [A copy of the Complaint at ¶ 11a is attached to the Request for Judicial Notice ("RJN") as Exhibit ("Exh.") "A".] Claimant worked within the Business Finance Gas Operations Department, which provided "operating finance support to PG&E's various lines of business in order to guide business decisions, capitalize on investment opportunities, reduce costs, and enhance operational effectiveness." [*Id.* at ¶ 11b.] Claimant's job duties included supporting initiatives related to business planning; developing and reporting key departmental performance metrics in the areas of budgeting, planning and forecasting; performing budget planning and forecasting; operational performance analyses; strategic planning and analysis; and monitoring, controlling and accounting costs. [*Id.* at ¶ 11c.] By May of 2015, Claimant's immediate

supervisor, Gregory Malman ("Malman"), had told Claimant that he intended to promote her within nine to twelve months of her date of hire. [*Id.* at ¶ 11e.]

In May 2015, Claimant observed that significant cost overruns were present in several categories, including overruns of millions of dollars for some departments. [*Id.* at ¶ 11f.] In or around mid-June of 2015, Claimant pulled the SAP PCC230 report for May 2015 and performed a more refined analysis of the data contained in the report. [*Id.* at ¶ 11g.] Pursuant to her forensic accounting training, Claimant first segregated out the ten employees with the highest expenditures and then focused on the top three employees who consistently charged the most expenses, Senior Manager Amy Barsnick, Supervisor Jesse Jennings, and Business Analyst Nahida Bahir. [*Id.* at ¶ 11g.] Claimant observed not only excessive expenditures, but expenditures that appeared to be for personal, non-work-related items. [*Id.* at ¶ 11g.]

From there, Claimant continued to present her analysis to her supervisors, only to be ignored or rebuked. [*Id.* at ¶ 11h, i, j & m.] Claimant was repeatedly given excuses by her direct supervisors, either for why the inappropriate non-business charges were deemed to be okay, or simply blatantly ignored. [*Id.*] In one instance, Claimant was stopped when she attempted to escalate the issue to her Senior Manager, and actually interrupted in the middle of her sentence by Malman, who simply stated that their group had already worked out the issue. [*Id.* at ¶ 11m.]

Because Claimant's superiors remained indifferent to her disclosures, on August 24, 2015, she contacted Principal Internal Auditor James Moore ("Moore"), and disclosed her reasonable belief that employees were making unauthorized purchases with their company credit cards, and requested that he review her findings. [*Id.* at ¶ 11n.] On September 9, 2015, Moore spoke with Claimant in private and informed her that her finds and suspicions of illegality had been correct regarding Nahida Bahir. [*Id.* at ¶ 11q.]

Furthermore, on August 26, 2015, Principal Internal Auditor Larissa Ionin ("Ionin") contacted Claimant and requested that she forward her the information that Claimant had accumulated detailing financial illegalities, assuring Claimant that she would remain anonymous. [*Id.* at ¶ 11o.] In response, on September 10, 2015, Claimant provided her with her findings, including her fears that her supervisors were directly implicated in the illegalities because their approval was necessary for many of these purchases, and her concern that there were no licenses, service contracts, invoices, or paper trails, in violation of Sarbanes-Oxley requirements. [*Id.* at ¶ 11r.]

Now that it was clear that Claimant had focused her investigation on the misconduct of middle and upper management, Ionin changed her tone, and began rationalizing or blatantly ignoring some of the

charges that Claimant had disclosed, such as trips for management personnel and their family to Hollywood, California and Orlando, Florida, including airline tickets and Disneyland resort tickets. [*Id.* at ¶ 11w, x.]

By October of 2015, Claimant began to suffer from severe harassment at work from her supervisors, including threats that she would be terminated, placing her on a Performance Improvement Plan ("PIP"), implying to others that she had mental health or addiction issues, and berating Claimant in front of others in person and over email implying that she was incapable of having basic interactions without "falling apart." [*Id.* at ¶ 11bb, cc, hh, ii, nn.] On October 19, 2015, only 12 days after Claimant had been placed on the 30-day PIP, her position was posted by PG&E in a Job Opening Requisition. [*Id.* at ¶ 11ll.] Finally, on November 18, 2015, Claimant was terminated on the basis that her job performance "ha[d] not met PG&E's expectations." [*Id.* at ¶ 11tt.] Instead, Claimant had been terminated by PG&E as a way of silencing her and punishing her for reporting its financial illegalities.

### III. PROCEDURAL BACKGROUND

The complaint in this action was filed on July 5, 2017, in Alameda County Superior Court. PG&E filed an answer on September 25, 2017. [RJN, Exh, A.] Over the following months, the parties engaged in extensive written discovery. [Declaration if Yosef Peretz in Support of Motion for Relief of Stay ("Peretz Dec"), ¶3.] On May 11, 2018, PG&E served responses to form and special interrogatories, requests for admission, and requests for production of documents. [Peretz Dec, ¶4.] After the parties' met and conferred regarding those responses, PG&E provided supplemental responses on July 27, 2018. [Peretz Dec, ¶5.] To date, PG&E has produced nearly 4,000 pages of documents in response to Claimant's requests. [Peretz Dec, ¶6.] Additionally, PG&E issued document subpoenas to various of Claimant's healthcare providers, who subsequently produced hundreds of pages of medical records. [Peretz Dec, ¶6.] As such, while the case was pending in the Alameda Court, the parties were close to be done with all written discovery, and were in the process of setting up and taking depositions in this case. [Peretz Dec, ¶7.] Moreover, three depositions have already been noticed, and Claimant estimates that at least ten more are likely to proceed to complete the discovery process altogether. [Peretz Dec, ¶8.]

The Alameda Court initially set the case for a jury trial on January 14, 2019, which was later continued to September 30, 2019 so that the parties could participate in private mediation. Said mediation was scheduled for May 9, 2019, and was only vacated upon PG&E's filing of bankruptcy and the automatic stay on Claimant's action. [Peretz Dec, ¶9.]

//

//

CLAIMANT CARA FENEIS' MOTION FOR RELIEF FROM AUTOMATIC STAY
4
Case: 19-30088   Doc# 5207-1   Filed: 12/26/19   Entered: 12/26/19 16:55:40   Page 4 of 10

## IV. LEGAL STANDARD

A bankruptcy filing imposes an automatic stay of all litigation against the PG&E, where the bankruptcy court may lift the automatic stay for cause. 11 U.S.C.S. § 362(a); §362(d)(1). "Cause" is determined by the court based on the facts of the particular case at issue. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). "Where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial." *Id*.

When determining whether cause exists, bankruptcy courts often look at twelve factors set forth in *In re Curtis*, 40 B.R. 795, 800 (Bankr. D.Utah 1984). The factors are: 1) whether the relief will result in a partial or complete resolution of the issues; 2) the lack of any connection with or interference with the bankruptcy case; 3) whether a foreign proceeding involves the PG&E as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; 5) whether the PG&E's insurance carrier has assumed full financial responsibility for defending the litigation; 6) whether the action essentially involves third parties, and the PG&E functions only as a bailee or conduit for the goods or proceeds in question; 7) whether the litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the foreign action is subject to equitable subordination; 9) whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the PG&E under Section 522(f); 10) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; 11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; 12) the impact of the stay on both parties and the balance of hurt. *Id*. at 800.

Additionally, outside of the *Curtis* factors, a bankruptcy court may abstain from hearing the claim in favor of state court adjudication whenever the court finds that the interests of justice or the interests of comity would be served by abstaining. 28 U.S.C.S. § 1334(c)(2).

## V. LEGAL ARGUMENT

### A. The Nature and Procedural History of Claimant's Action in State Court Weigh in Favor of the *Curtis* Factors

Here, the relevant factors heavily weigh in Claimant's favor to allow her case to proceed in state court. The relevant factors are as follows: 1) whether the relief will result in a partial or complete resolution of the issues; 2) the lack of any connection with or interference with the bankruptcy case; 3) whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; 4) whether the litigation in another forum would prejudice the interests of

other creditors; 5) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; 6) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; 7) the impact of the stay on both parties and the balance of hurt. *In re Tucson Estates, Inc.* at 800. The above relevant *Curtis* factors all weigh significantly in Claimant's favor, and as such, on that basis alone this Court should lift the stay.

> 1. **Claimant's California Employment Law Case Will Not Resolve or Interfere With PG&E's Bankruptcy, as it Lacks Any Connection with The Company's Bankruptcy**

Granting Claimant's requested relief from the stay will not result in a partial or complete resolution of any of the issues presented in this bankruptcy case, because resolution of her employment claims will have no bearing on PG&E's bankruptcy. Claimant's case presents narrowly confined issues resting completely on issues of California employment law.

While Claimant's whistleblower case does relate to PG&E's mismanagement of funds, her claims do not rest on the company's financial situation, but rather, on its retaliatory treatment towards her once Claimant reported what she believed to be financial illegalities. In fact, in proving her retaliation claim, Claimant need not prove that PG&E *actually did* mismanage funds, but simply that it engaged in an adverse employment action against Claimant for her protected activity of whistleblowing. Because Claimant's causes of action are all California employment law claims, the resolution of her action will have no bearing on the result of this bankruptcy case.

For the same reasons, Claimant can continue to litigate her claims in Alameda Superior without making any interference in the bankruptcy case. Claimant originally filed her case against PG&E in 2017, years before the company filed for bankruptcy. Considering the case was brought so long before the bankruptcy case existed, there is no connection between the two cases, other than that Claimant's case is currently stayed as a result of the bankruptcy filing. As such, Claimant's state court case presents narrow and discrete issues with no effect on the bankruptcy case heard by this Court.

> 2. **A California State Court is the Proper Tribunal for Claimant's Case Because It Has the Expertise to Analyze Claimant's Claims, Which Are Entirely Based in State Law**

Claimant's claim is in its entirety, a state law claim that does not belong in bankruptcy court. While the state courts are not a "specialized tribunal" for the purpose of hearing employment law cases specifically, Claimant's causes of action do stem entirely from California law, and are exclusively against a California employer. The state courts have a sovereign interest in hearing Claimant's case, distinct from any proceedings that occur in this Court. Moreover, Claimant's case has already been pending in Alameda

Superior for over two years, and was at a very advanced stage of the litigation when the automatic stay took place. *See In re Cloud Nine, Ltd.*, 3 B.R. 202, 204 (Bankr. D.N.M. 1980) ("[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result.") The California state court has the most expertise to hear California state law claims, and the case has already been pending in Alameda Superior for some time. As such, it is the proper venue for Claimant's action.

Additionally, while Claimant's case in state court is inconsequential compared to the considerable size of the Bankruptcy action, the discovery in Claimant's case so far is likely best suited to a state court rather than the Bankruptcy Court. PG&E has already produced nearly 4,000 pages of documents in response to Claimant's written discovery requests, and written discovery was close to be completed when the automatic stay was put in place. [Peretz Dec, ¶6, 7.] Moreover, three depositions have already been noticed, and Claimant estimates that at least ten more are likely to proceed to complete the discovery process altogether. [Peretz Dec, ¶8.] Employment whistleblower claims of this nature often rely on witness testimony, and as such, the type of evidence necessary in Claimant's case will likely need to be closely monitored by the Court. Considering how massive PG&E's Bankruptcy action is, it is likely that a state court will have more attention to dedicate to the ongoing discovery in Claimant's action, if the case does not settle successfully in mediation.

Claimant's case in state court is a state law-based claim that involves extensive discovery that a state court is likely best suited to handle, and as such, a state court is the proper tribunal for Claimant's action.

### 3. Litigation in Another Forum Would Not Prejudice the Interests of Other Creditors

For many of the same reasons, there is no indication that Claimant's state court claim would prejudice other creditors. Claimant's case has been going on since 2017, before the bankruptcy action, and so Claimant's claims are unrelated to the bankruptcy action entirely.

Furthermore, Claimant is an individual, not a company-creditor, who is seeking what amounts to lost wages from being wrongfully terminated from her job with PG&E. In comparison to the other creditors, even those who suffered property damage or other injuries from the PG&E wildfires, Claimant's damages are minimal. PG&E is a company responsible for managing billions of dollars, and while Claimant's wages are negligible in comparison, to her, this is her livelihood. The potential money damages that Claimant seeks in her state court suit would not impact PG&E's other creditors, because the amount that Claimant seeks is too minor compared to other Creditors or to PG&E itself to prejudice them in any meaningful way.

### 4. Claimant's State Court Action Has Progressed to the Point Where the Parties are Prepared for Mediation, And Thus Lifting the Stay Would Be in the Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

Permitting Claimant's case to be lifted from the stay would promote judicial economy and avoid stagnating Claimant's action. Prior to the stay, the parties intended to go to mediation, and Claimant and PG&E had actually scheduled mediation for May 9, 2019. In fact, mediation was only taken off calendar due to the automatic stay. On February 13, 2019, PG&E notified Claimant in an email that, "Given PG&E's bankruptcy proceeding, PG&E cannot participate in the mediation in good faith. As such, we will need to cancel the mediation." [Peretz Dec, ¶10.] By lifting the stay, PG&E would have a chance to engage in mediation in good faith with Claimant, allowing her to expeditiously settle her claims while promoting judicial efficiency, potentially avoiding having to go to court entirely, and at minimal economic detriment to PG&E by utilizing an alternative dispute resolution.

Similarly, while Claimant's case prior to the stay had not yet reached the point of trial, this case has already been engaged in lengthy litigation for two years, and parties were hoping to avoid trial entirely by engaging in good faith mediation. If the mediation were successful as both parties had hoped, this would reach a settlement which wouldn't require going to trial and would allow the parties to stipulate to settling the case in its entirety. Claimant and PG&E had been engaged in litigation and settlement negotiations for months before PG&E filed for bankruptcy and may have been at trial by this point had this case not been subject to the automatic bankruptcy stay. In fact, the automatic stay in January 2019 came just before the parties' scheduled mediation, with a trial date already set for September 2019. Thus, due to the case's lengthy history and the parties' progress toward settlement, lifting the stay would promote judicial economy and efficiency.

### 5. The Impact of the Stay on Claimant is Significant, While the Impact to PG&E is De Minimis

Claimant has been significantly impacted by the stay, both financially and emotionally. Having been harassed, berated and ostracized in front of coworkers, and eventually terminated for attempting to report financial illegalities, Claimant is now unable to proceed with her claims and recover her wages from PG&E. Furthermore, while PG&E will not be significantly impacted by lifting the stay. Claimant is an individual plaintiff in state court who was previously an employee of PG&E, a billion-dollar company with tens of thousands of employees, who is seeking what amounts to lost wages. When looking at Claimant's claims, especially in contrast to the scale of PG&E's operations, Claimant's case is relatively insignificant. Furthermore, Claimant's claims have been going on long before PG&E declared bankruptcy, and PG&E

has been aware of its potential legal liability towards Claimant for years now due to the ongoing litigation. Compared to the assets that PG&E is responsible for and the claims of other creditors, Claimant's case is an incredibly minor one for PG&E, resulting in minimal hurt. While this case means very little to PG&E by way of its potential debts, to Claimant, her potential recovery means everything — including years of livelihood and justice for the discrimination, harassment, and retaliation that she has faced.

In sum, the majority of the relevant factors weigh heavily in Claimant's favor. Given the totality of the circumstances in Claimant's case when analyzed through the factors laid out in *In re Curtis*, this Court should lift the stay to allow Claimant to continue with her case and mediation.

### B. Outside of the *Curtis* Factors, Lifting the Stay is in the Interests of Comity and Justice Given the Nature of Claimant's Claims as a Whistleblower for Financial Illegalities

In addition to the *Curtis* factors, the Court should not allow PG&E to avoid its responsibility in for retaliating against and terminating Claimant for blowing the whistle on its financial misdeeds. In fact, PG&E's behavior of retaliatorily firing employees who reported its mismanagement of funds and pecuniary illegalities is one of the reasons for PG&E's bankruptcy proceedings. Forcing Claimant to abide by the stay in the interim only serves as a punishment to Claimant for reporting these illegalities in the first place, which is not within the interests of justice nor comity.

PG&E offered Claimant a job as a financial analyst on March 19, 2015 for the purpose of analyzing the company's spending to straighten out its finances. Instead, when Claimant actually found instances of personal, non-company spending to the tune of millions of dollars, PG&E's internal management harassed and silenced Claimant for months until eventually terminating her. Rather than analyze its own internal corruption and pecuniary mismanagement, PG&E refused to do anything in regard to Claimant's concerns, and instead terminated her all while continuing to allow upper and middle management personnel to use company funds for personal, non-work related expenses like family trips to Disneyland and stays in upscale hotels in Tiburon. If PG&E had actually utilized Claimant for her financial analyst skills, it could have avoided years of upper and middle management abusing company funds and creating the state of the company in the current Bankruptcy action.

Rather, allowing the stay to continue and forcing Claimant to halt her claims would essentially allow PG&E to benefit from its retaliatory firing of Claimant for reporting its mismanagement of funds. Had PG&E actually utilized Claimant for her skills and position as its financial analyst, PG&E would likely be in a much better financial position today, if only by being able to halt future company spending by employees for their own personal use. Instead, this Court should promote justice and comity by lifting the

stay and allowing Claimant to continue her case in state court so that she can proceed to mediation and hopefully settle this case with PG&E.

## VI. CONCLUSION

The nature and procedural history of Claimant's action in state court against PG&E weighs heavily in favor of the majority of the relevant *Curtis* factors, and due to the nature of Claimant's claim as a whistleblower for PG&E's financial illegalities, it is within the interests of justice and comity for this Court to lift the stay. This is a long-standing case, seeking a small claim in comparison to the big picture of PG&E and its liabilities. Given the nature of this action as a whistleblower case, the interests of justice and comity strongly weigh in favor of allowing Claimant's case to proceed. Based on the foregoing reasons, the Court should grant Claimant's motion for Relief from the Stay and allow Claimant's case to continue in Alameda Superior.

Dated: December 26, 2019              PERETZ & ASSOCIATES

By: _____
Yosef Peretz
Shane Howarter
Attorneys for Claimant
CARA FENEIS