Anne Costin (SBN 260126)
**COSTIN LAW INC.**
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Tel: (415) 977-0400
Email: anne@costinlawfirm.com
Attorney for Creditor TODD HEARN

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br><br>&<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>Debtors | Bankruptcy Case No. 19-30088<br><br>Chapter 11<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Dept: Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |
| TODD HEARN<br><br>Creditor and Moving Party<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY<br><br>Debtor & Responding Party | |

## SUPPLEMENTAL BRIEF ISO MOTION FOR RELIEF FROM STAY

Moving party and creditor TODD HEARN submits this supplemental brief pursuant to this Court's November 17, 2019 order at hearing.

## I. INTRODUCTION.

As the Court will recall, HEARN is a former PG&E lineman who was fired after he made numerous complaints to PG&E about unsafe and illegal activities and conditions which posed severe fire hazards in Napa. HEARN filed a motion for relief from the automatic stay in this action so that he may pursue his California State statutory whistleblower employment claims (i.e., his Labor Code 1102.5 and 6310 claims) in the Napa County Superior Court.

In response to HEARN's motion, PG&E argued that there was no need to lift the stay, because HEARN already has a pending union grievance related to his termination. Specifically, PG&E argued that: (1) the collective bargaining agreement ("CBA") between PG&E and the Union[1] requires that HEARN pursue his claims solely through the CBA's grievance process; and (2) that HEARN's state whistleblower claims are preempted by the Labor Management Relations Act.

Because these claims by PG&E are legally unsupported, HEARN requested this opportunity to provide further briefing. As set forth below, the CBA here does not even reference, let alone bar, HEARN's ability to pursue his statutory Labor Code claims in State court. Moreover, given that the Union grievance process does not provide HEARN with the same procedural rights (a lawyer, discovery, a jury trial) and substantive remedies (full compensatory damages, punitive damages, attorneys fees) that a State Court action would, cause absolutely exists to lift the stay.

California's whistleblower statutes were designed to protect both employees _and_ the members of the public that those whistleblowers stood up for. PG&E fired HEARN in an attempt to silence his safety complaints, but the company does not now have the ability to force his statutory retaliation claims into a private arbitration. HEARN has the statutory right to bring his claims in a

---

[1] The International Brotherhood of Electrical Workers Local 1245 (i.e. "the Union")

public court before a jury of his peers in State court. He requests that the automatic stay be lifted so that he may do so.

## II. LEGAL ARGUMENT.

PG&E cannot force Hearn to adjudicate his California Labor Code claims (his statutory whistleblower employment claims) as part of the union grievance process. In fact, Hearn may actually be unable to present such claims during any union arbitration. (See Pacheco Declaration, Paragraph 7.)

Despite PG&E's unsupported assertion to the contrary, Hearn's State law claims are not preempted by Federal law, nor by any private collective bargaining agreement ("CBA"): they are statutory rights that do not arise out of, nor require, interpretation of the CBA.

Cause, including significant and ongoing financial harm to Hearn, exists to support the lifting of the automatic stay to allow Hearn to pursue his State statutory employment claims in State court.

### A. The CBA Between PG&E and the Union does Not Waive Hearn's Right to File a State Statutory Whistleblower Case.

PG&E argues that "the CBA compels Hearn to pursue his claims solely through the grievance process" because the contract with the Union has broad language stating that "all disagreements" and "all disputes involving discharge" shall be determined under the grievance procedures. (PG&E Objection Page 11 of 16, citing Campos Declaration Paragraph 12).

PG&E's argument is directly contradicted by California State and Federal law. In 1998, the United States Supreme Court decided *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70. In *Wright,* an employer attempted to force an employee's statutory ADA discrimination clams into a union grievance procedure, based on a CBA clause which required arbitration of all "matters under dispute." (*Wright* at 80.) The high Court refused to force the case into the union grievance system, holding that, "In order for a union to waive employees' rights to a federal judicial forum for statutory antidiscrimination claims, the agreement to arbitrate such claims must be clear and unmistakable." (*Id*.) *Wright* explained that the CBA's arbitration clause was "very general" and "contains no explicit incorporation of statutory antidiscrimination requirements." (*Id*.) Here, as in

*Wright,* the CBA between PG&E and Hearn's Union contains <u>no mention of or reference to</u> California's statutory anti-discrimination and retaliation provisions.

Since *Wright* was decided 20 years ago, numerous Federal and California cases have confirmed that without a "clear and unmistakable waiver," a CBA does not operate to compel an employee to arbitrate statutory employment claims:

In *Carmago v. California Portland Cement Company* (2001) 86 Cal.App.4th 995, 1008, an employer claimed that its CBA barred a former employee from pursuing her Title VII discrimination and harassment claims in State court. *Carmago* rejected the employer's argument, explaining that "A union cannot waive its employee's statutory rights through a private contract/CBA with an employer because of the "paramount" purpose behind Title VII. (*Carmago* at 1008, citing *Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36.) Following the precedent set forth in *Wright, supra,* the *Carmago* court explained that "if the FEHA [statutory] claims of a union member are to be finally resolved by arbitration (with the concomitant loss of a jury of one's peers), the agreement to do so in a CBA must be "clear and unmistakable." (*Carmago, Id.,* citing *Wright, supra* at 80.) The *Carmago* court stressed that the CBA at issue did not contain such a waiver, because it did not expressly provide for the arbitration of statutory employment claims "and its antidiscrimination clause does not explicitly incorporate statutory requirements." (*Id.*)

In *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, an employee sued for disability discrimination under State and Federal statute, but the trial court ordered the case to arbitration pursuant to a CBA clause. On appeal, the decision was overturned, with the court holding, "We conclude that the CBA does not contain a clear and unmistakable waiver of these statutory rights." (*Id.*) Notably, the CBA at issue in the *Vasquez* case not only had a clause stating that "all disputes …. Including discharges" should be subject to the grievance process, but also contained a general anti-discrimination provision stating that the employer would not discriminate "under applicable federal and state law." (*Id.*) Even with that reference to external law contained in the CBA, the court refused to compel the case to union arbitration. It explained, "Broad, general language is not sufficient to meet the level of clarity required to effect a waiver in a [collective bargaining

agreement]. In the collective bargaining context, the parties 'must be particularly clear' about their intent to arbitrate statutory discrimination claims." … "A simple agreement not to engage in acts violative of a particular statute will not suffice; the agreement must establish the intent of the parties to incorporate "in their entirety" the discrimination statutes." And: "Neither disability discrimination, the FEHA, nor the ADA is mentioned in the CBA. Thus, we cannot conclude that the union clearly and unmistakably waived Vasquez's right to a judicial forum for his statutory disability discrimination claim. The general language of the CBA is simply insufficient." (*Vasquez* at 436.)

In *Zavala v. Scott Brothers Dairy* (2006) 143 Cal. App. 4th 585, employees sued for Labor Code (wage) violations.  The employer moved to compel the claims into a union grievance process a based on a CBA.  The trial court denied the motion, and the appellate court affirmed:  "We conclude that regardless of whether the CBA includes a broad arbitration provision, that clause is not binding on plaintiffs because the Union could not waive plaintiffs' right to bring statutory labor-rights claims in court and because such claims did not arise under the CBA." (*Zavala* at 592.)  The *Zavala* court stressed that "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." (*Zavala* at 593.)

Also of note, the *Zavala* court explained that an employee's prior presentation of a grievance regarding the same or a similar issue does not affect the ability to proceed in court when based on a statutory right:  "Moreover, courts have repeatedly held that the prior submission of certain statutory claims to final and binding arbitration does not bar a subsequent lawsuit where the employees have not waived their statutoriy protected rights to a judicial resolution." (*Zavala* at 595-596, citing *Barrantine v. Arkansas-Best Freight System* (1981) 450 US 728, 740.)   Here, the grievance filed by the Union on Hearn's behalf does not include allegations of whistleblower retaliation, nor does it allege any violations of the California Labor Code.  (Pacheco Declaration, Paragraph 7.)

In *Volpei v. County of Ventura* (2013) 221 Cal.App. 4th 391, an employee filed suit for a statutory discrimination claim, and the employer moved to compel arbitration pursuant to a CBA. Again rejecting the attempt, the *Volpei* decision explained that the CBA "does not provide for a clear

and unmistakeable waiver of Volpei's right to a judicial forum for his statutory discrimination claim." (*Volpei* at 393.) Notably, the CBA at issue in *Volpei* went so far as to define a grievance to include a dispute regarding "a complaint of illegal discrimination"; even this was not sufficient to constitute a waiver, because the CBA "does not refer to the FEHA or any other statute." (*Volpei* at 395)

Finally, in the recent case of *Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, an employer tried to force an employee's California Labor Code claims into a union grievance arbitration pursuant to a broad CBA clause. The *Vasserman* court rejected the attempt, explaining that the CBA "did not include an explicitly stated, clear and unmistakable waiver of the right to a judicial forum for claims based on statute." (*Id*) The *Vasserman* decision explained that a union may not prospectively waive an individual employee's right to a judicial forum to hear his or her statutory discrimination claims, because "a collective bargaining agreement, by its very nature, may address only the common, contractual rights of the members of the bargaining unit." (*Vasserman,* citing *Torrez v. Consolidated Freightways.* (1997) 58 Cal.App.4th 1247, 1259.)

As the Court can see, PG&E's argument that the CBA's broad reference to "discharges" being subject to the CBA grievance procedure does not mean that Hearn's statutory whistleblower claims must be brought through the union grievance process. Two decades of law confirm just the contrary.

**B.    Hearn Is Unable to Adjudicate his Statutory Claims through the Union Grievance Process.**

As set forth above, PG&E cannot force Hearn to bring his State Labor Code retaliation claims through the grievance process set forth in the CBA between the company and the Union. But in reality, Hearn actually may be unable to present such claims during any union arbitration.

As set forth in the concurrently filed Declaration of Alexander Pacheco, general counsel for The International Brotherhood of Electrical Workers Local 1245 (i.e. "the Union"), labor arbitrators (i.e., arbitrators appointed to hear grievances like Hearn's) are typically not vested with authority to determine matters of "external law" (e.g. State or Federal law). (Pacheco Declaration Paragraph 7.)

Labor arbitrators are tasked solely with determining whether the terms of the written contract – in this case, the CBA between IBEW 1245 and PG&E – have been violated. (Pacheco Declaration Paragraph 7.)

Labor arbitrators cannot step into the shoes of a civil court judge or jury and adjudicate statutory whistleblower claims. (Pacheco Declaration Paragraph 7.) Accordingly, the grievance filed on behalf of Hearn does not include allegations of whistleblower retaliation, nor does it allege any violations of the California Labor Code. (Pacheco Declaration Paragraph 7.) The grievance that the Union filed on Hearn's behalf asserts only that Hearn was "terminated without just and sufficient cause," which is a requirement for termination of Union members under the CBA. (Pacheco Declaration Paragraph 6.)

As such, despite PG&E's unfounded assertion to the contrary, the CBA does not compel Hearn to pursue his statutory Labor Code retaliation claims through the Union grievance; in fact he cannot do so.

### C. Hearn's Claims are Not Preempted by Federal Law.

PG&E argues that Hearn's proposed lawsuit "may be" preempted by the Federal Law, i.e., the Labor Management Relations Act ("LMRA"). (PG&E Objection Page 11 of 16). It is not. Plaintiff's claims are not based on any rights contained within the CBA and are not dependent on any analysis or interpretation of the CBA.

#### 1. Plaintiff's Claims do Not Arise from a Right or Duty of the CBA.

When determining whether LMRA preemption exists, courts conduct a two-step inquiry. (*Burnside v. Kiewit Pac. Corp.* (9th Cir. 2007) 491 F.3d 1053, 1060; *Alaska Airlines Inc. v. Schurke* (9th Cir. 2018) 898 F.3d 904, 915 (en banc), cert. denied, 139 S. Ct. 1445 (2019).) The first step is to ask whether a claim "rises entirely from a right or duty of the CBA," that is, whether the CBA is the "only source of the right the plaintiff seeks to vindicate." (*Schurke* at 920-21, see also *Wright, supra.*) Here, none of Plaintiff's claims arise from a right or duty of the CBA. They are independent California law claims. The CBA is not even referenced in Plaintiff's Complaint.

PG&E cites to *Kobold v. Good Samaritan Reg'l Med. Ctr.* (9th Cir 2016) 832 F. 3d 1024 for the

assertion that an employee must vindicate personal "contract-based rights" through the grievance process. (PG&E Objection, Page 13 of 16.) Hearn agrees. But state law whistleblower rights are not based in contract, i.e., the CBA. When state statutory claims are at issue, the 9th Circuit (i.e., the same court which decided *Kobold*) has expressly stated that *Kobold*'s reasoning does not apply and should not be relied on to "limit the enforcement of state law employment discrimination protections." (*Matson v. United Parcel Service* (2016) 840 F. 3d 1126, 1136.)

**2.      Interpretation of the CBA is Not Required.**

The second step of the preemption inquiry is to ask "whether litigating the state law claim nonetheless requires interpretation of a CBA." (*Schurke* at 921, *emphasis added*.) Notably, merely "referring to", "considering," or "consulting" a CBA does not constitute "interpretation" of the CBA for preemption purposes. (*Id.*, quoting *Balcorta v. Twentieth Century-Fox Film Corp*. (9th Cir. 2000) 208 F.3d 1102, 1108; see also *Dent v. National Football League* (9th Cir. 2018) 902 F.3d 1109, 111. "Claims are only preempted to the extent that there is an active dispute over the meaning of contract terms." *Id., quotations omitted, emphasis added*). No such dispute is present here.

PG&E cites to only one case in support of its argument that preemption is required here because "interpretation" of the CBA is required – a 6th Circuit case from 2006: *Klepsky v. United Parcel Service* (2006) 489 F. 3d. 264. *Klepsky* of course is not binding. It is also wrongly decided. In *Klepsky,* the court examined Ohio law, said that merely by seeking "reinstatement" in his state court action that an employee somehow had triggered "interpretation" of the CBA and implicated a right created under the CBA. The *Klepsky* court completely ignores the fact that injunctive relief, i.e. reinstatement, is not only a right based in a CBA, but also a remedy given by State law.

For example, the very Labor Code claims that Hearn has alleged here contain express statutory language providing for reinstatement. Labor Code Section 1102.5 and 6310 both provide that any employee who is discharged in retaliation for making complaints "shall be entitled to reinstatement" (Labor Code 6310(b) and Labor Code 98.6(b)(1), *referring to* Labor Code "commencing with Section 1101, see Labor Code 98.6(a).) Reinstatement is statutory right in California, not a "right created under the CBA" as claimed in *Klepksy.*

In further support of the argument that the 6th Circuit case of *Klepsky v. United Parcel Service* (2006) 489 F. 3d. 264 was wrongly decided: in 2016, the 9th Circuit examined the <u>same</u> CBA at issue in *Matson v. United Parcel Service* (2016) 840 F. 3d 1126, and found that LMRA preemption was <u>not</u> warranted, because adjudication of state law statutory harassment and discrimination claims did <u>not</u> require interpretation of the CBA. (*Matson* at 1136.)

PG&E's attempts to force Hearn's whistleblower claims out of a public state court and into private arbitration must fail. Courts should focus on the contents of a plaintiff's complaint and not allow a <u>defense</u> to trigger preemption. (*Peters v. RFI Enterprises, Inc.* (N.D. Cal. Aug. 15, 2018) No. 18-CV-01187-BLF, 2018 WL 3869564, at *4; see *also Lopez v. Rosendin Electric, Inc.* (C.D. Cal., June 26, 2018) No. CV185074FMOJEMX, 2018 WL 3154935, at *3, ("It is well-settled that if a plaintiff's claims are 'plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.'")

California State Labor standards are not preempted by the LMRA, as demonstrated by both California and Federal cases:

In *Paige v. Henry J. Kaiser Co.* (9th Cir. 1987) 826 F.2d 857, employees sued for wrongful termination (based on the public safety policies set forth in Labor Code Section 6310 and 6400, as in this case), claiming that they were fired after they refused to fill generators with gasoline under unsafe conditions. On appeal, the Ninth Circuit held, "The resolution of appellants' wrongful discharge claim therefore depends upon an analysis of Cal/OSHA and California tort law. Since it is not intertwined or substantially dependent upon consideration of the terms of the labor contract, it is not preempted by section 301." (*Paige* at 863.)

In *Haney v. Aramark Uniform Services* (2004) 121 Cal.App.4th 623, a former employee sued for retaliatory discharge, alleging he had been fired for complaining about fraudulent billing practices. The trial court granted summary adjudication based on LMRA preemption. On appeal, that decision was reversed, finding that "resolution of the wrongful discharge claim is <u>not</u> dependent upon an interpretation of the collective bargaining agreement." (*Id.* at 629, *emphasis added*.) Explaining its ruling, the court stated, "If the claim is plainly based on state law, § 301 preemption is not mandated

simply because the defendant refers to the CBA in mounting a defense." (*Id.* at 641; see also *Matson v United Parcel Service* (9th Cir. 2016) 840 F.3d 1126, 1133, employment claim not preempted by LMRA simply because UPS defended against case by referring to CBA language.)

In *Germann v. Vulcan Materials Co.* (S.D. Cal. 2000) 106 F.Supp.2d 1010, 1011, a truck driver sued his former employer for wrongful termination in violation of public policy, claiming that he was fired in retaliation for reporting violations of state safety laws; the employer tried to dismiss the case based on LMRA preemption. The court found that there was no preemption, holding that "plaintiff's action for wrongful termination in violation of California's public policy is sufficiently independent of the CBA such that section 301 preemption does not apply." (*Id.* at 1014.)

The claims that PG&E claims are preempted are all California State law claims, and do not require interpretation of the CBA.

> **D.** **The Limited Remedies and Lack of Discovery in the Union Grievance Process Make Enforcement of the CBA Unconscionable.**

PG&E argues that because reinstatement and backpay are possible remedies to Hearn in the CBA grievance process, the Court should just let it "run its course." (PG&E Objection Page 6 of 16.)However in order to be enforceable in California, arbitration agreements in the employer-employee context must provide for: (1) neutral arbitrators, **(2) more than minimal discovery**, (3) a written award, **(4) all types of relief that would otherwise be available in court**, and (5) no additional costs for the employee beyond what the employee would incur if he or she were bringing the claim in court. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 4th 83, 102, 110-111.)

Here, as confirmed by the Union's general counsel, the PG&E grievance process does <u>not</u> provide for <u>any</u> depositions, does <u>not</u> provide for general nor punitive damages, does <u>not</u> allow Hearn to retain his own counsel to represent him during any step of the grievance process, and does <u>not</u> provide for attorney's fees to be awarded to the prevailing employee. (Pacheco Declaration Paragraphs 9-13.) As guaranteed by the statute at issue here, all of these rights and remedies would be available to Hearn during the State court adjudication process. As would, of course, a Jury. It

should also be noted that in State Court, as opposed to Federal Court, Hearn would only have to obtain 9 of 12 jurors vote on each claim and element in order to prevail in his retaliation action.

    E.  **Significant and Ongoing Harm Support Lifting of the Stay.**

  In his moving papers, Hearn asserted that "Because PG&E monopolizes the entire power industry in the area, this termination by PG&E effectively ended HEARN's career: there are no non-PG&E affiliated lineman positions within hours of HEARN's home." In response, PG&E's Objection argued that that "Although the Utility has designated Hearn as ineligible to work on any Utility projects, this restriction *in no way prevents Hearn from obtaining employment with a contractor*, another utility, or a municipality." (PG&E Objection, Page 12 of 16, *emphasis added*.)

  This statement by PG&E is misleading at best. In August of 2019 PG&E directly informed Hearn, in writing, that he was "ineligible for rehire" with PG&E including as a hiring hall employee, or as an agency worker, *contractor, or subcontractor* working on PG&E projects." (see Exhibit A to concurrently submitted Hearn Declaration).

  PG&E argues that it does <u>not</u> have a monopoly over the power industry in Northern California; the "Company Profile" on their public website provides otherwise: "Service area stretches from Eureka in the north to Bakersfield in the south, and from the Pacific Ocean in the west to the Sierra Nevada in the east." (See https://www.pge.com/en_US/about-pge/company-information/profile/profile.page).

  PG&E argues that Hearn cannot show severe harm because he could just obtain employment with another utility or with a municipality. As set forth in Hearn's Declaration, there are not any other utilities within several hours of his home in Napa, and as such he can't work as a lineman for a utility unless I commuted to Bakersfield, Nevada, or up north past Mt. Shasta. (Hearn Declaration Paragraph 5.) While there are municipalities in Sacramento, Santa Clara, and Ukiah, they are also far from (at least an hour away from) Hearn's home in Napa. (Hearn Declaration Paragraph 6.) Because of Hearn's family responsibilities (he has two minor children who live at home with me) it would be extremely difficult for him to commute several hours each day. (Hearn Declaration

Paragraph 6.) Despite this, he have applied for work with these municipalities, but has not received any job offer. (Hearn Declaration Paragraph 6.)

When PG&E fired Hearn in January, he stopped receiving income and lost my health benefits for me and for my family. (Hearn Declaration Paragraph 7.) He have exhausted all of my savings, and has been forced to withdraw money early from my 401K in order to cover his mortgage payments. (Hearn Declaration Paragraph 7.) He sold my truck and a family car to try to keep up with his financial obligations, but is severely behind on the payments for his children's school, and am becoming increasingly concerned about how his family will make ends meet. (Hearn Declaration Paragraph 7.)

The harm that Hearn continues to suffer is grave and specific. In contrast, PG&E makes only a conclusory claim that defending a single plaintiff lawsuit would interfere with the Debtors' reorganization efforts. It is hard to imagine how this is the case, given that PG&E has several in-house lawyers dedicated specifically to employment litigation. (See Paragraph 1 of Declaration of PG&E attorney Stacy Campos).

### III. CONCLUSION.

As set forth above and in the underlying moving papers previously submitted, cause exists for immediate relief from stay so as to allow moving party and creditor TODD HEARN to pursue his California Labor Code claims in the Napa County Superior Court.

Respectfully Submitted,

DATED: December 31, 2019         **COSTIN LAW INC.**

By:    //s//  Anne Costin
       ANNE COSTIN
       Attorney for Creditor/Moving Party HEARN