WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Ch. 11 Lead Case No. 19-30088 (DM) (Jointly Admin.)<br><br>**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO SETTLE THE CLAIMS OF TUBBS PREFERENCE CLAIMANTS AND (II) GRANTING RELATED RELIEF**<br><br>(THE "TUBBS SETTLEMENT MOTION")<br><br>Date: January 21, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: U.S. Bankruptcy Court, Courtroom 17, 16th Fl.<br>San Francisco, CA 94102<br><br>**Objection Deadline: January 15, 2020, 4:00 p.m. (PT)** |

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) authorizing the Debtors to enter into settlement agreements, copies of which will be filed under seal, settling and liquidating the claims asserted against the Debtors by the 18 elderly or infirm individual plaintiffs for whom the Court granted relief from the stay to pursue their claims relating to the Tubbs fire (including the 32 indispensable parties associated with such individuals' claims, the "**Tubbs Preference Claimants**"), and (ii) granting related relief.

In support of the Motion, the Debtors submit the Declaration of Janet Loduca (the "**Loduca Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 7 |
| II. | JURISDICTION | 8 |
| III. | BACKGROUND | 8 |
| IV. | THE TORT CLAIMANTS RSA | 9 |
| V. | THE TUBBS SETTLEMENTS | 10 |
| VI. | BASIS FOR RELIEF REQUESTED | 11 |
| | A. Entry into the Tubbs Settlements is in the Best Interests of the Debtors' Estates and Should be Approved under Bankruptcy Rule 9019. | 11 |
| |     1. The Probability of Success in Litigation | 13 |
| |     2. The Difficulties to be Encountered in Collecting Any Litigated Judgment | 14 |
| |     3. The Complexity and Expense of Any Litigation | 14 |
| |     4. The Interests of Creditors | 15 |
| | B. Entry into the Tubbs Settlements is a Sound Exercise of the Debtors' Business Judgment and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code. | 16 |
| VII. | NOTICE | 17 |

# TABLE OF AUTHORITIES

Page

**Cases**

*In re ASARCO, L.L.C.*,
   650 F.3d 593 (5th Cir. 2011) ..................................................................................................16

*In re AWTR Liquidation Inc.*,
   548 B.R. 300 (Bankr. C.D. Cal. 2016)......................................................................................17

*City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*,
   656 F.3d 82 (1st Cir. 2011).......................................................................................................12

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   60 B.R. 612 (Bankr. S.D.N.Y. 1986).................................................................................16, 17

*In re Cresta Tech. Corp.*,
   No. 16-50808 MEH, 2018 WL 2422415 (Bankr. N.D. Cal. May 29, 2018) ............................15

*In re Drexel Burnham Lambert Grp., Inc.*,
   134 B.R. 499 (Bankr. S.D.N.Y. 1991)................................................................................11, 13

*In re Equa-Chlor LLC*,
   No. 08-40599, 2008 WL 1927066 (Bankr. W.D. Wash. Apr. 29, 2008)...................................14

*In re Integrated Resources, Inc.*,
   147 B.R. 650 (Bankr. S.D.N.Y. 1992).......................................................................................17

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
   Nos. 04–10585 (GAC), 04–12634 (GAC), 07–00067 (GAC), 2009 WL 2913685 (Bankr. D.P.R. Mar. 31, 2009)..............................................................................................................................13

*In re Lionel Corp.*,
   722 F.2d 1063 (2d Cir. 1983)....................................................................................................16

*Martin v. Kane (In re A&C Properties)*,
   784 F.2d 1377 (9th Cir. 1986) ............................................................................................11, 12

*In re Montgomery Ward Holding Corp.*,
   242 B.R. 147 (D. Del. 1999).....................................................................................................16

*Myers v. Martin (In re Martin)*,
   91 F.3d 389 (3d Cir. 1996)..................................................................................................11, 14

*Nellis v. Shugrue*,
   165 B.R. 115 (S.D.N.Y. 1994)............................................................................................12, 14

*In re Pacific Gas and Elec. Co.*,
   304 B.R. 395 (Bankr. N. D. Cal. 2004) ..............................................................................12, 13

*In re Planned Prot. Servs., Inc.*,
   130 B.R. 94 (Bankr. C.D. Cal. 1991)..................................................................................12

*Port O'Call Invest. Co. v. Blair (In re Blair)*,
   538 F.2d 849 (9th Cir. 1976) .................................................................................................13

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968).........................................................................................................11, 13

*In re SK Foods, L.P.*,
   No. 09-29162-D-11, 2011 WL 10715382 (Bankr. E.D. Cal. Jan 27, 2011) .................................13

*Smith v. Van Gorkom*,
   488 A.2d 858 (Del. 1985) .....................................................................................................17

*In re Thompson*,
   965 F.2d 1136 (1st Cir. 1992).................................................................................................12

*In re W.T. Grant Co.*,
   699 F.2d 599 (2d Cir.).............................................................................................................12

*In re Walter*,
   83 B.R. 14 (B.A.P. 9th Cir. 1988)...........................................................................................16

*In re WCI Cable, Inc.*,
   282 B.R. 457 (Bankr. D. Or. 2002)..........................................................................................2

**Statutes**

11 U.S.C. § 105(a) ...............................................................................................................11, 16, 17

11 U.S.C. § 363(b) ..........................................................................................................................16, 17

11 U.S.C. § 1107(a) .............................................................................................................................9

11 U.S.C. § 1108 ..................................................................................................................................9

28 U.S.C. § 157 ....................................................................................................................................8

28 U.S.C. § 1334 ..................................................................................................................................8

28 U.S.C. § 1408 ..................................................................................................................................8

28 U.S.C. § 1409 ..................................................................................................................................8

California Code of Civil Procedure § 36.5(f)......................................................................................10

**Other Authorities**

B.L.R. 5011-1(a) ..................................................................................................................................8

Fed. R. Bankr. P. 1015(b) .....................................................................................................................9

Fed. R. Bankr. P. 2002 ...................................................................................................................7

Fed. R. Bankr. P. 9018 .................................................................................................................11

Fed. R. Bankr. P. 9019 .............................................................................................................. *passim*

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 ......8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT[1]

After a lengthy hearing and considered deliberation, this Court, by Order dated December 19, 2019 [Docket No. 5174], approved that certain Restructuring Support Agreement, dated as of December 6, 2019 (as amended on December 16, 2019, the "**Tort Claimants RSA**"), among the Debtors, the TCC, the Consenting Fire Claimant Professionals, and the Shareholder Proponents (each as defined in the Tort Claimants RSA). The Tort Claimants RSA reflects a comprehensive settlement by and among the Debtors, the TCC, representatives of individuals holding over 70% in number of Fire Victim Claims, and certain shareholders of the treatment of Fire Victim Claims under the Debtors' Amended Plan. The entry into and approval of the Tort Claimants RSA represents a monumental step toward the Debtors achieving a fair, equitable, and timely resolution of the billions of dollars in liabilities arising from the 2017 and 2018 Northern California fires (including the Tubbs fire) and the 2015 Butte fire, and a successful resolution of the Debtors' Chapter 11 Cases by June 30, 2020.

An integral part of the heavily negotiated Tort Claimants RSA and the global settlement embodied therein and, indeed, a precondition to its execution, was that the parties agree to resolve, pursuant to the Amended Plan, the pending wildfire claims estimation proceedings before the District Court for the Northern District of California and, relatedly, the state court cases of the Tubbs Preference Claimants (the "**Tubbs Cases**"). Absent the Tort Claimants RSA and a satisfactory resolution of the Tubbs Cases as required therein, a jury trial in the Tubbs Cases was set to begin imminently, with jury selection scheduled for January 7, 2020.

As the Debtors have noted to the Court in connection with their motion to approve the Tort Claimants RSA, not only does the Tort Claimants RSA encompass a comprehensive resolution of the Fire Victim Claims, it eliminates the risks, costs, and uncertainties attendant to the Tubbs Cases. And, although the Debtors believe, based upon CAL FIRE's investigation of the Tubbs fire and

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to them in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated December 12, 2019* [Docket No. 5101] (the "**Amended Plan**").

other matters, that they are not responsible for the Tubbs fire, the Tubbs Preference Claimants have other theories. Accordingly, there could be no assurance of a favorable outcome if the Tubbs Cases were to proceed, particularly in the context of a jury trial.

With these considerations in mind, and as provided in the Tort Claimants RSA, the Debtors have engaged in good faith, arm's-length negotiations with the attorneys for the Tubbs Preference Claimants and have reached settlements (the "**Tubbs Settlements**") of all of the claims asserted in the Tubbs Cases for an aggregate liquidated and allowed claim in the Aggregate Claim Amount (as defined in the Loduca Declaration). Consistent with the Tort Claimants RSA, the Tubbs Settlements do not require the Debtors make any payments to the Tubbs Preference Claimants now; rather, the settled claims will be channeled like all other Fire Victim Claims to the Fire Victim Trust pursuant to and upon the Effective Date of the Amended Plan, and will be paid, satisfied, and resolved solely by the Fire Victim Trust from the Aggregate Fire Victim Consideration, in accordance with the terms and procedures of the Fire Victim Trust to be established pursuant to the Amended Plan.

Obtaining Court approval of the Tubbs Settlements is an integral component of the Tort Claimants RSA and to the successful administration of these cases. Moreover, the Tubbs Settlements themselves represent an appropriate exercise of the Debtors' business judgment and satisfy all of the requirements of Bankruptcy Rule 9019. Accordingly, the Tubbs Settlements should be approved.

**II.    JURISDICTION**

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**III.    BACKGROUND**

On January 29, 2019, the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed the TCC (together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief [Docket No. 263] (the "**Wells First Day Declaration**").

On August 21, 2019, this Court entered an order granting the TCC's motion seeking to lift the automatic stay to allow certain pending litigation filed prepetition by individuals who hold claims arising out of the Tubbs fire and are elderly or infirm, or otherwise deserving of special accommodation, to proceed to trial in Superior Court for the State of California. Since then, the Debtors and the Tubbs Preference Claimants have engaged in extensive discovery and preparation for trial, which was set to begin January 7, 2020, but has been stayed pursuant to the Tort Claimants RSA.

**IV.   THE TORT CLAIMANTS RSA**

On December 9, 2019, the Debtors filed a motion seeking approval of the Tort Claimants RSA. On December 17, 2019, the Court held a hearing to consider the Debtors' motion to approve the Tort Claimants RSA and granted the motion. The Court issued a formal order authorizing the Debtors to enter into the Tort Claimants RSA and approving the terms of the Tort Claimants RSA on December 19, 2019 [Docket No. 5174].

Among other things, the Tort Claimants RSA requires the Debtors to "promptly enter into discussions for the settlement of all the preference cases arising out of the Tubbs fire pending in the Superior Court for the State of California" with the Tubbs Preference Claimants. Tort Claimants RSA § 2(a). The Tort Claimants RSA also provides that upon the filing of the Tort Claimants RSA

Motion, the parties to the Tort Claimants RSA would seek a 15-day continuance of the Tubbs Cases pursuant to California Code of Civil Procedure § 36.5(f). *Id.* at § 2(d). The Tort Claimants RSA additionally provides that the Debtors shall (i) enter "into one or more settlement agreements settling all of the Tubbs Cases . . . which shall (A) allow such claims subject to payment solely from the Fire Victim[] Trust . . . (C) be confidential and sealed, and (D) not be admissible or introduced into evidence for any purpose in any proceeding, including without limitation the Estimation Matters or in any other case or proceeding in or related to the Chapter 11 Cases," and (ii) file a motion with the Bankruptcy Court on shortened notice seeking approval of the Tubbs Settlements. *Id.* at § 2(h).

Upon their entry into the Tort Claimants RSA, the Debtors promptly entered into settlement discussions with the Tubbs Preference Claimants and sought a stay of the Tubbs Cases. On December 17, 2019, the State Court granted a 15-day continuance of the Tubbs Cases, which runs through January 22, 2020. The settlement discussions culminated in the Debtors and each of the Tubbs Preference Claimants entering into settlement agreements to resolve the Tubbs Cases and the claims asserted against the Debtors. On December 26, 2019, in light of the Tort Claimants RSA and the Tubbs Settlements, the State Court entered a further order vacating the existing Tubbs trial dates and setting a hearing to show cause regarding dismissal of the Tubbs Cases for March 2, 2020.

## V. THE TUBBS SETTLEMENTS

The Tubbs Settlements settle and liquidate the claims asserted against the Debtors by the Tubbs Preference Claimants by allowing each of the claims at the agreed-upon settlement amount reflected in the relevant agreement, for the Aggregate Claim Amount (and each individual claimant's allowed claim as reflected in the relevant settlement agreement, the "**Settled Claim Amount**"). Each of the settled claims is to be channeled to, paid, and resolved solely by the Fire Victim Trust, in accordance with the terms and procedures of the Fire Victim Trust to be established pursuant to the Amended Plan. The Tubbs Settlements do not increase the consideration to be funded by the Debtors to the Fire Victim Trust under the Amended Plan. Pursuant to the Amended Plan, the Tubbs Preference Claimants will have no recourse against the Debtors or the reorganized Debtors, or their respective assets and properties. In exchange for their respective Settled Claim Amount, each of the Tubbs Preference Claimants release the Debtors and all other persons or entities

who may have caused or contributed to the damages alleged in the Complaints from any claims that arise out of those made in the Tubbs Cases. The Tubbs Preference Claimants also agree to sign the Made Whole Waiver appended to the Amended Plan.

In addition, as stated, pursuant to the terms of the Tort Claimants RSA and the Tubbs Settlements, the parties have agreed to keep the terms of the Tubbs Settlements strictly confidential, providing access to certain limited parties as discussed more fully in the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 107(b) and Fed. R. Bankr. P. 9018 for Entry of an Order Authorizing the Redaction and Sealing of Confidential Information from Tubbs Settlement Documents*, filed contemporaneously herewith.

Upon the effective date of the Tubbs Settlements, counsel for the Tubbs Preference Claimants will execute a request for dismissal with prejudice of the Tubbs Cases and deliver the executed request to the Debtors, which the Debtors will file with the State Court.

## VI. BASIS FOR RELIEF REQUESTED

### A. Entry into the Tubbs Settlements is in the Best Interests of the Debtors' Estates and Should be Approved under Bankruptcy Rule 9019.

Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).

Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation over contentious issues and expedite the administration of the bankruptcy estate. *See Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The decision to approve a particular compromise lies within the sound discretion of the Court. *In re A&C Properties*, 784 F.2d at 1380-81. A proposed compromise and settlement should be approved when it is "fair and equitable" and "in the best interest of the [debtor's] estate." *Id.* at 1381.

The standard for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below the lowest point in the range of reasonableness in terms of benefits to the estate. *See City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim;" rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness'") (*quoting In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.)); *see also In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004); *In re Planned Prot. Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) (same).

Courts in this jurisdiction typically consider four factors in determining whether a settlement should be approved: (1) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (2) the difficulties, if any, to be encountered in the matter of collecting any litigated judgment; (3) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and the proper deference to their reasonable views. *In re A&C Properties*, 784 F.2d at 1380. It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, the conclusions must favor the approval of the settlement. *See In re Pacific Gas and Elec. Co.*, 304 B.R. at 417 (citing *In re WCI Cable, Inc*., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

The Tubbs Settlements represent a reasonable compromise among the Debtors and the Tubbs Preference Claimants, and obviate the expense, delay, inconvenience, and uncertainty that would attend further litigation of those claims in State Court. Moreover, the Tubbs Settlements are an integral element of the Tort Claimants RSA and the comprehensive settlement of the Fire Victim

Claims embodied in the Tort Claimants RSA. *See In re SK Foods, L.P.*, No. 09-29162-D-11, 2011 WL 10715382, at *5 (Bankr. E.D. Cal. Jan 27, 2011) (approving a settlement under Bankruptcy Rule 9019 because "the compromise is far preferable to estimation, at least in this case, because it will avoid the need for, if not a trial, at least a certain amount of discovery and an evidentiary hearing that would likely be required for the court to be in a position to estimate the claims"). Analyzing the Tubbs Settlements in light of the Ninth Circuit's four factors for approving a settlement under Bankruptcy Rule 9019 only confirms that the Court should approve the Tubbs Settlements.

### 1. The Probability of Success in Litigation

The Tubbs Settlements fully and finally resolve the disputes between the Tubbs Preference Claimants and the Debtors without the need for a trial before a jury. A jury trial in Superior Court presents significant risk and uncertainty, which favors approval of the Tubbs Settlements. *See In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, Nos. 04–10585 (GAC), 04–12634 (GAC), 07–00067 (GAC), 2009 WL 2913685, at *3 (Bankr. D.P.R. Mar. 31, 2009) ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily in favor of the approval of the Settlement Agreement."). While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851-52 (9th Cir. 1976), or conduct a full independent investigation, *In re Drexel Burnham Lambert Group*, 134 B.R. at 505. *See also In re Pacific Gas and Elec. Co.*, 304 B.R. at 417.

As the Debtors have stated, and as CAL FIRE concluded, the Debtors' equipment was not involved in the Tubbs fire. However, there can be no certainty a jury in California Superior Court would reach the same conclusion. Although the Debtors believe the CAL FIRE conclusion has significant evidentiary value, it is not binding on the Tubbs Preference Claimants. Further, the Tubbs Preference Claimants have expressed a high degree of confidence that a jury would find compelling their theory that CAL FIRE overlooked evidence and, therefore, reached the wrong conclusion regarding PG&E's role in the Tubbs fire. The Debtors also anticipate that the Tubbs Preference Claimants would vigorously fight to exclude entirely or severely limit the admissibility

of the CAL FIRE conclusion. The outcome of any such dispute presents yet another uncertainty. Thus, in addition to the risk that a jury would find in the Tubbs Preference Claimants' favor even after hearing evidence of CAL FIRE's conclusion, there exists the additional risk that the Debtors would not even be permitted to present the favorable CAL FIRE evidence to the jury if the Tubbs trial were to proceed.

The special circumstances of the Tubbs Preference Claimants that allowed their trials to be heard on an expedited basis, and the nature of the claims asserted, also magnify the risks associated with a jury trial and serve as further justification for the Tubbs Settlements.

Furthermore, the size of the Tubbs fire amplifies the risk an adverse ruling would have on the Debtors' ability to achieve a global resolution of these cases and proceed expeditiously to confirmation of the Amended Plan by June 30, 2020. The Tort Claimants RSA and the Tubbs Settlements that are a fundamental part thereof completely obviate this risk and uncertainty and militate in favor of prompt approval of the Tubbs Settlements.

### 2. The Difficulties to be Encountered in Collecting Any Litigated Judgment

The difficulties of collection inherent to the litigation at issue are not a relevant consideration here, as the Debtors are seeking to settle claims asserted against them, not claims for recovery they may have against another party. *See In re Equa-Chlor LLC*, No. 08-40599, 2008 WL 1927066, at *6 (Bankr. W.D. Wash. Apr. 29, 2008) ("The Court places little weight on this factor. The proposed settlement involves a claim that the Debtor is defending against rather than seeking any affirmative relief. Collectability is therefore irrelevant.").

### 3. The Complexity and Expense of Any Litigation

The Tubbs Settlements also minimize any further cost in time, resources, and money associated with fully litigating the claims of the Tubbs Preference Claimants. The complexity and costs associated with litigation can erode stakeholder recoveries—separate and apart from the risk generally inherent in the pursuit of uncertain litigation and its impact on the expeditious administration of these cases. *See Nellis*, 165 B.R. at 124. Compromises are favored precisely to "minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F.3d at 393.

This rule applies with particular force here. The Tubbs Cases involve 18 different damages claims and 50 individual claimants. Fact and expert discovery has not yet been completed and the parties anticipated an 8-week trial. Resources that otherwise would have been consumed by the trial can now be devoted to ensuring an orderly and expedient path to confirmation of the Amended Plan and the Debtors' successful emergence from chapter 11 well prior to June 30, 2020.

4. *The Interests of Creditors*

The last criterion considered by Courts reviewing a proposed settlement is the interest of the creditors, with deference to their reasonable views. Here, the Tubbs Preference Claimants, who are represented by skilled professionals who negotiated the settlements at arm's-length, obviously favor the approval of the Tubbs Settlements.

Furthermore, the TCC as a fiduciary for all Fire Claimants, and the representatives of individuals holding over 70% in number of Fire Victim Claims also support approval of the Tubbs Settlements.

The compromises reached in the Tubbs Settlements will benefit the holders of Fire Victim Claims and, indeed, all other parties in interest in these cases, by ensuring the Tort Claimants RSA remains in effect. *See In re Cresta Tech. Corp.*, No. 16-50808 MEH, 2018 WL 2422415, at *5 (Bankr. N.D. Cal. May 29, 2018) ("This interest [of the creditors] reflects the desire of creditors to obtain the maximum possible recovery but also their competing desire that recovery occur in the least amount of time.") (quotation marks omitted).

Beyond promoting the expeditious resolution of these chapter 11 cases, the Tubbs Settlements also benefit other creditors, because they, too, benefit from avoiding the risks and uncertainties of the trial of the Tubbs Cases. The Tubbs Settlements not only eliminate these risks and uncertainties, but also assure the continued vitality of the Tort Claimants RSA and the comprehensive settlement embodied therein.

The Debtors have carefully considered the risks, complexity, and expense associated with litigating the claims of the Tubbs Preference Claimants, and the potential delays that would be occasioned by such litigation. In the Debtors' sound business judgment, these factors anchor the

Tubbs Settlements as fair, reasonable, and equitable, and in the best interests of their estates. For these reasons, the Tubbs Settlements should be approved.

**B. Entry into the Tubbs Settlements is a Sound Exercise of the Debtors' Business Judgment and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code.**

As stated, the Tubbs Settlements eliminate significant risk and uncertainty, and are a key element of the recently approved settlement incorporated in the Tort Claimants RSA. Furthermore, the Aggregate Claim Amount represents an eminently fair compromise between the Debtors and the Tubbs Preference Claimants, reached through good faith, arm's-length negotiations. The Court may authorize the Debtors to enter into the Tubbs Settlements pursuant to sections 363(b) and 105(a) of the Bankruptcy Code because entry into the Tubbs Settlements clearly falls within the Debtors' sound business judgment.

Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the relief requested herein. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification."); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company. *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also, In re AWTR Liquidation Inc.,* 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) (referencing the Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C); *In re Johns-Manville Corp.*, 60 B.R. at 615–16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Thus, if, a debtor's actions satisfy the business judgment rule, as they do here for the reasons described above, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

**VII. NOTICE**

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the TCC; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) counsel to the Tubbs Preference Claimants; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment, appropriate under section 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, and in the best interests of

their estates, creditors, shareholders, and all other parties in interest, and (ii) the Debtors such other and further relief as the Court may deem just and appropriate.

Dated: January 6, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: ___/s/ Jessica Liou_____
       Jessica Liou

*Attorneys for Debtors and Debtors in Possession*