WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Ch. 11 Lead Case No. 19-30088 (DM) (Jointly Admin.)<br><br>**DECLARATION OF JANET LODUCA IN SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO SETTLE THE CLAIMS OF TUBBS PREFERENCE CLAIMANTS AND (II) GRANTING RELATED RELIEF**<br><br>Date: January 21, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: U.S. Bankruptcy Court, Courtroom 17, 16th Fl.<br>San Francisco, CA 94102 |

I, Janet Loduca, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Senior Vice President and General Counsel of PG&E Corporation and Pacific Gas and Electric Company (collectively, "**PG&E**" or the "**Debtors**"). Through these roles, I supervise and coordinate litigation strategy on behalf of PG&E.

2. I submit this Declaration in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(b) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (i) Authorizing the Debtors to Settle the Claims of Tubbs Preference Claimants and (ii) Granting Related Relief* (the "**Tubbs Settlement Motion**"), filed contemporaneously herewith.[1] Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, information provided to me by the Debtors' employees or advisors, or my opinion based upon my knowledge and experience as Senior Vice President and General Counsel. I am authorized to submit this Declaration on behalf of the Debtors.

### A. The Pending Tubbs Cases

3. On August 21, 2019, this Court entered an order granting the TCC's motion seeking to lift the automatic stay to allow a jury trial to proceed in San Francisco Superior Court with respect to the claims of certain plaintiffs arising from the Tubbs fire. Shortly thereafter, on September 16, 2019, the State Court granted 18 elderly or infirm individual plaintiffs and their 32 associated indispensable parties' motion for an expedited, preference jury trial pursuant to California law (the individual plaintiffs and indispensable parties, collectively, the "**Tubbs Preference Claimants**"). The Debtors and Tubbs Preference Claimants have since engaged in extensive discovery and preparation for trial, which was set to begin January 7, 2020, but has been stayed pursuant to the Tort Claimants RSA.

4. Under the Tort Claimants RSA, the Debtors are required to "promptly enter into discussions for the settlement of all the preference cases arising out of the Tubbs fire pending in the Superior Court for the State of California" with the Tubbs Preference Claimants. Tort Claimants RSA

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Tubbs Settlement Motion.

§ 2(a). Specifically, the Tort Claimants RSA provides that the Debtors shall (i) enter "into one or more settlement agreements settling all of the Tubbs Cases . . . which shall (A) allow such claims subject to payment solely from the Fire Victim[] Trust . . . (C) be confidential and sealed, and (D) not be admissible or introduced into evidence for any purpose in any proceeding, including without limitation the Estimation Matters or in any other case or proceeding in or related to the Chapter 11 Cases," and (ii) file a motion with the Bankruptcy Court on shortened notice seeking approval of the Tubbs Settlements. *Id.* at § 2(h). The Tort Claimants RSA also provides that upon the filing of the Tort Claimants RSA Motion, the parties to the Tort Claimants RSA would seek a 15-day continuance of the Tubbs Cases pursuant to California Code of Civil Procedure § 36.5(f). *Id.* at § 2(d).

5. Upon their entry into the Tort Claimants RSA, the Debtors promptly entered into settlement discussions with the Tubbs Preference Claimants and sought a stay of the Tubbs Cases. On December 17, 2019, the State Court granted a 15-day continuance of the Tubbs Cases, which runs through January 22, 2020. The settlement discussions culminated in the Debtors and each of the Tubbs Preference Claimants entering into settlement agreements to resolve the Tubbs Cases and the claims asserted against the Debtors. On December 26, 2019, in light of the Tort Claimants RSA and the Tubbs Settlements, the State Court entered a further order vacating the existing Tubbs trial dates and setting a hearing to show cause regarding dismissal of the Tubbs Cases for March 2, 2020.

**B. The Tubbs Settlements**

6. After good faith, arm's-length negotiations, the Debtors and the Tubbs Preference Claimants, represented by their professionals, have agreed to settle and liquidate the claims asserted against the Debtors by the Tubbs Preference Claimants by allowing each of the claims at the agreed-upon settlement amount reflected in the relevant agreement, for an aggregate allowed amount of ███ ███ (the "**Aggregate Claim Amount**, and each individual claimant's allowed claim as reflected in the relevant settlement agreement, the "**Settled Claim Amount**"). Each of the settled claims is to be channeled to, paid, and resolved solely by the Fire Victim Trust, in accordance with the terms and procedures of the Fire Victim Trust to be established pursuant to the Amended Plan. The Tubbs Settlements do not increase the consideration to be funded by the Debtors to the Fire Victim Trust under the Amended Plan. Pursuant to the Amended Plan, the Tubbs Preference Claimants will have no

recourse against the Debtors or the reorganized Debtors, or their respective assets and properties. In exchange for their respective Settled Claim Amount, each of the Tubbs Preference Claimants release the Debtors and all other persons or entities who may have caused or contributed to the damages alleged in the Complaints from any claims that arise out of those made in the Tubbs Cases. The Tubbs Preference Claimants also agree to sign the Made Whole Waiver appended to the Amended Plan.

7. Upon the effective date of the Tubbs Settlements, counsel for the Tubbs Preference Claimants will execute a request for dismissal with prejudice of the Tubbs Cases and deliver the executed request to the Debtors, which the Debtors will file with the State Court.

8. Copies of the executed Tubbs Settlements are annexed hereto as Exhibits 1 through 16. Pursuant to the terms of the Tort Claimants RSA and the Tubbs Settlements, the parties have agreed to keep the terms of the Tubbs Settlements strictly confidential, providing access to certain limited parties as discussed more fully in the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 107(b) and Fed. R. Bankr. P. 9018 for Entry of an Order Authorizing the Redaction and Sealing of Confidential Information from Tubbs Settlement Documents*, filed contemporaneously herewith.

9. The Debtors believe that in view of the risks, uncertainty, and costs of proceeding with the Tubbs Cases and the integral role of the Tubbs Settlements in maintaining the viability of the Tort Claimants RSA and the global settlement embodied therein, the Tubbs Settlements represent a reasonable compromise among the Debtors and the Tubbs Preference Claimants. It is my understanding that the TCC and representatives of individuals holding over 70% in number of Fire Victim Claims also support approval of the Tubbs Settlements.

10. If the parties had not reached a satisfactory settlement of the Tubbs Cases and the claims of the Tubbs Preference Claimants, the jury trial for the Tubbs Preference Claimants was set to begin imminently, with jury selection scheduled for January 7, 2020. The Debtors believe they are not responsible for the Tubbs fire and CAL FIRE concluded that private, customer-owned equipment was the cause of the Tubbs fire. However, I understand that CAL FIRE's conclusion is not binding on the Tubbs Preference Claimants. I further understand that counsel for the Tubbs Preference Claimants are highly confident that a jury would find compelling their theory that CAL FIRE reached the wrong conclusion about the role of the Debtors' equipment in the Tubbs fire because investigators overlooked

certain evidence. Moreover, if the Tubbs Cases were to proceed to trial, I believe it is likely that the Tubbs Preference Claimants would vigorously fight to exclude entirely or severely limit the admissibility of the CAL FIRE conclusion. Thus, in my opinion, there was a risk that a jury would find in the Tubbs Preference Claimants' favor and award damages, notwithstanding CAL FIRE's conclusion.

11. Indeed, I believe the special circumstances of the Tubbs Preference Claimants that allowed their trials to be heard on an expedited basis, and the nature of the claims asserted, magnify the risks associated with a jury trial. Additionally, I believe the size of the Tubbs fire amplifies the risk an adverse ruling would have on the Debtors' ability to achieve a global resolution of these cases and proceed expeditiously to confirmation of the Amended Plan by June 30, 2020.

12. The Tubbs Settlements also minimize any further cost in time, resources, and money associated with fully litigating the claims of the Tubbs Preference Claimants. I believe that the complexity and costs associated with litigation could erode stakeholder recoveries—separate and apart from the risk generally inherent in the pursuit of uncertain litigation and its impact on the expeditious administration of these cases. The Tubbs Cases involve 18 different damages claims and 50 individual claimants. Fact and expert discovery has not yet been completed and the parties anticipated an 8-week trial. Resources that otherwise would have been consumed by the trial can now be devoted to ensuring an orderly and expedient path to confirmation of the Amended Plan and the Debtors' successful emergence from chapter 11 well prior to June 30, 2020.

13. Additionally, as discussed above, resolution of the pending claims of the Tubbs Preference Claimants pursuant to the Amended Plan is an integral element of the Tort Claimants RSA. Approval of the Tubbs Settlements, therefore, is critical to the continued vitality of the Tort Claimants RSA and to the successful and timely emergence of the Debtors from Chapter 11. The Debtors believe the compromises reached in the Tubbs Settlements will benefit the holders of Fire Victim Claims and, indeed, all other parties in interest in these cases, by ensuring the Tort Claimants RSA remains in effect.

14. Thus, after careful consideration of the above factors, including the risks, complexity, and expense associated with litigating the claims of the Tubbs Preference Claimants, the Debtors believe, in their sound business judgment, that the settlement with the Tubbs Preference Claimants is fair, reasonable, equitable, and in the best interests of the Debtors' estates.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this Declaration was executed in San Francisco, CA, on January 6, 2020.

/s/ *Janet C. Loduca*
Janet Loduca

**Exhibits Withheld Pursuant to Motion to Redact**