Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:    415.659.2600
Facsimile:    415.659.2601
Email:   rjulian@bakerlaw.com
Email:   cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:   esagerman@bakerlaw.com
Email:   drichardson@bakerlaw.com
Email:   lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>     -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                              Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**SUPPLEMENT TO OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS (SUBSTANTIVE) TO CLAIMS FILED BY CALIFORNIA GOVERNOR'S OFFICE OF EMERGENCY SERVICES (CLAIM NOS. 87748, 87754, & 87755)**<br><br>Date:     February 11, 2020<br>Time:    10:00 a.m. (Pacific Time)<br>Place:    United States Bankruptcy Court<br>             Courtroom 17, 16th Floor<br>             San Francisco, CA 94102<br><br>Objection Deadline: January 28, 2020 |

The Official Committee of Tort Claimants (the "**TCC**") in the above-captioned chapter 11 cases, hereby files this Supplement to the *Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to Claims Filed by California Governor's Office of Emergency Services (Claim Nos. 87748, 87754, & 87755)* (Dkt. No. 5096) (the "**Objection**").[1] In addition to the arguments set forth in the Objection, the TCC asserts the following additional arguments and objections to the Cal OES Claims.

**SUPPLEMENTAL OBJECTIONS**

First, the Court should disallow the Cal OES Claims under the equitable doctrine of marshaling. The Debtors' chapter 11 plan (Dkt. No. 5101) (the "**Plan**") currently channels the victims' wildfire claims into the same trust as Cal OES' claims. This means that every dollar Cal OES receives is one less dollar available to pay victims. The trust is the victims' only source of recovery under the Plan. Cal OES, however, has other sources of recovery available to it.

Cal OES has informed the TCC that it can recover its wildfire-related costs from public entities and local governments that received funds from Cal OES. On this basis, the TCC asserts that public entities and local governments that received disaster or public assistance from Cal OES in connection with the wildfires are liable to Cal OES to the extent that such assistance duplicates funds recoverable from the Debtors. Certain public entities have entered into a settlement with the Debtors and stand to recover $1 billion in the Chapter 11 Cases. Upon information and belief, these public entities are liable to Cal OES for some portion of this money.

Because Cal OES can recover its losses from other sources, Cal OES should be required to exhaust those sources before seeking to take money away from the victims. The doctrine of marshaling is an equitable remedy that may be invoked by a bankruptcy court. *St. Paul Fire & Marine Ins. Co. v. Fort Vancouver Plywood Co. (In re Brazier Forest Prods., Inc.)*, 921 F.2d 221, 223 (9th Cir. 1990) ("Marshaling is an equitable remedy and the decision to grant or deny marshaling of assets rests within the discretion of the trial court."); *Victor Gruen Assocs., Inc. v. Glass*, 338 F.2d 826, 829 (9th Cir. 1964) (bankruptcy courts, as courts of equity, are empowered to invoke and order marshaling).

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given them in the Objection.

The California Civil Code requires marshalling in two instances: Section 2899 applies to instances in which creditors have competing liens; whereas, Section 3433 applies to instances in which two competing creditors have competing claims to funds, irrespective of whether or not they have liens on the funds. Section 3433 of the California Civil Code provides as follows:

> Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons.

Cal. Civ. Code § 3433 (West 2019).

Assuming, *arguendo*, that Cal OES can recover from the Debtors' estate, Cal OES can also seek satisfaction from certain public entities—*i.e.*, several funds are available to Cal OES. The fire victims' recovery, in contrast, is limited to the trust. Therefore, Section 3433 of the California Civil Code which, unlike Section 2899 of the California Civil Code, makes no reference to competing liens, compels that Cal OES' claims against the Debtors be disallowed or suspended until Cal OES has exhausted all sources of recovery that are unavailable to the fire victims. *Compare* Cal. Civ. Code § 3433 *with* Cal. Civ. Code § 2899 (West 2019).[2]

Second, the TCC objects to the Cal OES Claims on the grounds that Cal OES is attempting to recover over $2.4 billion for FEMA and FEMA failed to exercise an appropriate level of care in providing services. Discovery on the Cal OES Claims and the FEMA Claims has begun. When discovery is completed, the TCC believes that it will be able to prove that the Cal OES Claims should be disallowed and/or substantially reduced to reflect the damage FEMA and its contractors caused. As a sample of the testimony and evidence to come, the TCC offers the following letter from Sharon Zimmerman, a wildfire victim:

---

[2] *See also Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1089–90 (9th Cir. 2011) ("[W]here [the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.") Case law involving competing lienholders or a lienholder and the doctrine of marshaling is inapposite here because neither FEMA nor the fire victims purport to hold liens on the funds in question. *See*, *e.g.*, *Pac. Coast Joint Stock Land Bank of San Francisco v. Jones*, 14 Cal. 2d 8, 92 P.2d 390 (Cal. 1939).

To The Honorable Judge Montali:

I'm writing to express my opposition to FEMA receiving a portion of the Wildfire Victims settlement with PG&E as part of the bankruptcy process. My husband and I lost two homes in Santa Rosa in the Tubbs Fire. We opted to use FEMA to do the debris removal for both our properties, in spite of hearing significant issues caused by FEMA experienced by past wildfire victims who used them for debris removal. We were assured by local and Federal government officials in community meetings that the FEMA debris removal process would be well supervised and that any damage caused by FEMA in the process of debris removal would be remediated.

Our experience with the FEMA contractors in the process of their performance of debris removal of our 3926 St Andrews Drive, Santa Rosa home confirmed all our worst fears of using FEMA for debris removal. The FEMA contractor (Ashbritt in our case) damaged our driveway, damaged site walls we didn't want removed, damaged retaining walls, removed a planter for no apparent reason, over excavated our lot and buried concrete debris from our house in the middle of the building site. FEMA/Ashbritt drove two massive excavators down our driveway with no attempt at mitigating damage to the driveway. The dump trucks continued to mar the surface of the driveway and due to the extreme weight of the trucks the driveway was cracked beyond repair in several places. The over excavation of the property required significant rock and aggregate to be brought onto the property to rebuild the foundation and added significantly to the cost of the project.

The damage to the driveway and site walls and over excavation were noticeable during the week in December 2017 that the FEMA contractor was performing debris removal. I called Congressman Mike Thompson's office to report the damage and his office arranged for an onsite inspection by the US Army Corps of Engineers. On December 13th 2017, while the FEMA contractor was still on site, I met with Tasha Alexander, QA Inspector for the US Army Corps of Engineers, and the manager of Ashbritt Construction to show them the damage that the FEMA contractor was causing to our property. They told me that remediating the damage was not part of their contract. Then in May of 2018 while digging the footings our builder discovered that the FEMA contractor had buried large sections of the concrete walls from our Insulated Concrete Form (ICF) house in the middle of our building envelope rather than removing them from the property as they were required to do as part of the debris removal process. I reported the damage by FEMA to Congressman Thompson's office, Supervisor Zane's office, Cal OES and FEMA and Army Corps of Engineers. I was later provided a letter signed by Cal OES and FEMA stating I could use the debris removal funds in our insurance policy to remediate the damage caused by the FEMA contractor.

The estimated additional costs to remediate the damage caused by FEMA to our property totaled over $197,000 and the breakdown is:

- $136,800 to repair the driveway
- $26,000 for rock and aggregate plus labor and equipment for over excavation
- $19,000 to repair damage to site walls and retaining walls
- $15,288 to remove the debris buried by the FEMA contractor

An apparent cause of some of the issues with the FEMA debris removal process from the Wine Country 2017 wild fires was the change in the FEMA contract during the debris removal process. Initially contractors were paid by the ton for the amount of the debris that they removed. This clearly incentivized the contractors

to remove the maximum amount of debris which resulted in significant over excavation. When FEMA realized this was causing not only significant over excavation but also excessively high costs, they renegotiated the contract with the FEMA contractors to a per lot rate for debris removal. This amount per lot exceeded $250,000, which in most cases was far in excess of what private debris removal estimates were for the same work. In the case of the debris removal for 3926 St Andrews Drive the FEMA contract was being renegotiated while the contractor was working on debris removal of our property. This resulted in the worst of both situations for our property; the over excavation of the property but also burial of some concrete walls from our house when the contractor realized that the cost to remove our ICF walls exceeded this negotiated flat rate.

FEMA's management of the debris removal process in the Wine Country 2017 wild fires was clearly flawed and lead to cost overruns for FEMA. However, it is not the fault nor should [it] be the responsibility of Wild Fire victims to reimburse FEMA for their own negligence in managing their contracts with their contractors. To allocate $4.5 billion of the long negotiated settlement with PG&E for wild fire victims to FEMA will serve to victimize them yet again. The Wild Fire victims need and deserve the settlement funds from PG&E to rebuild their homes and lives.

As a matter of equity, FEMA's unclean hands preclude Cal OES' recovery for FEMA's benefit.

## **RESERVATION OF RIGHTS**

The TCC reserves the right to raise further and other objections to the Cal OES Claims, including, but not limited to, objections discovered as a result of ongoing discovery against Cal OES and FEMA. The TCC submits that the Cal OES Claims can be disallowed on legal grounds because Cal OES has failed to allege facts that, if proven true, would support a claim under California law. Should Cal OES survive the Objection, the TCC intends to submit further evidence in support of the objections set forth herein.

WHEREFORE, the TCC respectfully requests entry of an order disallowing and expunging the Cal OES Claims and granting such other and further relief as this Court deems just and proper.

Dated: January 9, 2020　　　　　　　　　　BAKER & HOSTETLER LLP

　　　　　　　　　　　　　　　　　　　　　By: */s/ Robert A. Julian*
　　　　　　　　　　　　　　　　　　　　　　　　Robert A. Julian

　　　　　　　　　　　　　　　　　　　　　*Counsel to the Official Committee of Tort Claimants*