Bruce S. Bennett (SBN 105430)
Joshua M. Mester (SBN 194783)
James O. Johnston (SBN 167330)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2300
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
E-mail: bbennett@jonesday.com
jmester@jonesday.com
jjohnston@jonesday.com

*Attorneys for PG&E Shareholders*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OBJECTION OF CERTAIN PG&E SHAREHOLDERS TO MOTION OF THE AD HOC COMMITTEE OF UNSECURED NOTEHOLDERS FOR RECONSIDERATION OF ORDERS APPROVING TCC AND SUBROGATION CLAIMANT RSAS; JOINDER IN DEBTORS' OBJECTION**<br><br>Date: January 21, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 5241 |

Certain owners of common stock of PG&E Corporation (the "PG&E Shareholders")[1] hereby object to the *Motion Of The Ad Hoc Committee Of Senior Unsecured Noteholders For Reconsideration And Relief From Orders Pursuant To Federal Rules Of Civil Procedure 59(e) And 60(b)* [ECF 5241] (the "Motion"), by which the Ad Hoc Committee of Senior Unsecured Noteholders (the "Bondholder Group") requests that the Court vacate its orders approving the TCC RSA and the Subro RSA.[2] The PG&E Shareholders join the Debtors' objection to the Motion and submit this Objection to highlight several important points.

## I.  THE MOTION IS BASED ON A FALSE PREMISE

The Bondholder Group says that the Court terminated exclusivity to promote competition between the Debtors and the Bondholder Group, and it argues that the orders approving the RSAs "short-circuit this competitive process." Mot. ¶ 5. This is wrong twice over.

*First*, the Court terminated exclusivity because "the parties most deserving of consideration, speaking through the TCC, have . . . spoken loudly and clearly that they want their and the Senior Noteholders' proposed plans to be considered." [ECF 4167 at 2] Those parties – the TCC and attorneys representing over seventy percent of the wildfire claimants – have now made up their mind. They support the Debtors' amended plan. As established by the TCC RSA, they do not support the Bondholder Group's plan, and the TCC has withdrawn as a sponsor of it. [ECF 5177]

In terminating exclusivity, the Court noted that "[a] dual-track plan course going forward may facilitate negotiations for a global resolution and narrow the issues which are in legitimate dispute." [ECF 4167 at 3] Far from being "undermined" as the Bondholder Group claims, Mot. ¶ 6, that goal has been achieved. The mediated negotiations between the TCC, wildfire claimants, Debtors and shareholders produced a global resolution. The Debtors' plan is now

---

[1] The PG&E Shareholders are the entities identified on Exhibit A to the *Fifth Amended Verified Statement Of Jones Day Pursuant To Federal Rule Of Bankruptcy Procedure 2019* [ECF 5142]. The PG&E Shareholders are acting in their individual capacities but authorized the filing of this single submission for the purpose of administrative efficiency. Each of the PG&E Shareholders is expressing its independent views, and counsel does not have the actual or apparent authority to obligate any one entity to act in concert with any other entity with respect to PG&E equity securities. The PG&E Shareholders have not agreed to act in concert with respect to their respective interests in PG&E equity securities.

[2] Capitalized terms not defined here have the meanings given in the Motion.

supported by overwhelming numbers of wildfire claimants, while the Bondholder Group's plan is supported by no one but a constituency of unimpaired unsecured creditors who will be paid in full, with postpetition interest, under the Debtors' plan.

The Bondholder Group has no remaining legitimate voice as to the future direction of this case. But it condescendingly claims to know what's best for the TCC and its constituents, asserting that "the TCC should never have been made to bear the burden" of the obligations it voluntarily shouldered in the TCC RSA. Mot. ¶ 32. In terminating exclusivity, the Court declined to "second-guess the informed decision" of the "well-counseled" TCC when it was "willing to take the attendant risks that go with competing plan disputes." [ECF 4167 at 3] The TCC's decision to settle similarly should not be second guessed.

*Second*, the Motion proceeds from the premise that termination of exclusivity guaranteed that "wildfire victims [w]ould not be foreclosed from voting for more favorable plans that may be proposed later on." Mot. ¶ 32. This too is wrong. When exclusivity is lifted, a party is authorized to file a plan and attempt to build support for it. Exclusivity termination does not disable others from building support for their own plan. As the Court recognized in approving the RSAs here, a restructuring support agreement is an accepted device for developing a coalition of plan support. Every RSA that coalesces support for one plan necessarily includes a critical complement: the prohibition of support for a competing plan.

No authority supports the Bondholder Group's implicit premise that the termination of exclusivity precludes a plan proponent from negotiating an RSA. Indeed, as a method for negotiating and implementing consensus, RSAs are most useful and important after exclusivity has been terminated. Without the ability to bind parties to support one plan and oppose another, no deals would be struck in a bankruptcy case, as stakeholders would be free to re-trade and renegotiate at will. That surely is not what the Court envisioned when it terminated exclusivity at the request of the TCC and the wildfire claimants who now have agreed to support the Debtors' plan.

## II. THERE IS NO NEW EVIDENCE

Independently, the Bondholder Group has not satisfied its burden of proving that the extraordinary remedy of reconsideration is warranted. "Motions for reconsideration must be narrowly construed and the standard strictly applied to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court, to ensure finality, and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 130 F. Supp. 2d 440, 443 (S.D.N.Y. 2000) (citations omitted); *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.") (quotations and citations omitted).

In the Motion, the Bondholder Group does nothing more than reargue what it argued previously – specifically, the alleged unfairness of "anticompetitive" provisions of the RSAs. The law has not changed since the Court rejected that argument several weeks ago. And, notwithstanding the Bondholder Group's assertions to the contrary, there is no "newly discovered evidence" or even "new factual developments" that otherwise might warrant reconsideration.

The Bondholder Group cites no "newly discovered evidence." And the *only* "new development" cited by the Bondholder Group is the Bondholder Group's "newly disclosed plan." Mot. ¶ 28. In other words, the Bondholder Group says that the Court should vacate its prior orders – to which it objected and against which it argued strenuously – because *the Bondholder Group* decided to change *its own proposal* after its objections were overruled. Even if that "plan" represented a *bona fide* alternative proposal for a restructuring (it does not), this development is insufficient to warrant reconsideration of the Court's prior orders as a matter of law.

In order to merit reconsideration of a motion, a litigant is "obliged to show not only that [the] evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963).

"Evidence is not new when the facts on which it is based had been in the moving party's possession since the start of the litigation." *Rischer v. Banlavoura I, Inc.*, 376 F. App'x 778, 778 (9th Cir. 2010). Thus, for example, "the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also Frederick S. Wyle Prof. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) ("as a matter of law . . . the trustee was not entitled to reconsideration based on" alleged "new" evidence consisting of declarations of counsel for plaintiff trustee and employees of debtor on whose behalf trustee acted); *Waltman v. International Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989) (materials available at time of initial decision will not be considered on motion for reconsideration).[3]

Here, the Bondholder Group's "new" plan proposal is not new evidence. It is not embodied in a plan filed with the Court. It is not supported by financing commitments. It does not even specify the treatment of $11 billion in wildfire subrogation claims. It can charitably be described as ephemeral. Less charitably, it represents a bad faith effort to leverage a settlement now that the TCC has withdrawn as the Bondholder Group's co-plan proponent and the Bondholder Group has failed in its effort to recover postpetition interest at rates greater than that allowed by the Bankruptcy Code.

More importantly for purposes of the Motion, the Bondholder Group's proposal was entirely within its control at all times, and could have been made at any time before the Court approved the RSAs. Indeed, the Bondholder Group unveiled its proposal (in the political arena, not before the Court) *one day* after the Court entered its orders approving the RSAs. The Motion cites no new evidence or developments other than the Bondholder Group's own purported change of heart. That is a woefully insufficient ground for the reconsideration the Bondholder Group seeks.

---

[3] Similarly, evidence is not "new" when it could have been discovered with reasonable diligence. *See, e.g.*, *Yalter v. Endocare, Inc.*, No. CV 03-80 DOC (MLGx), 2008 U.S. Dist. LEXIS 126930, at *6-7 (C.D. Cal. May 19, 2008) (reconsideration not warranted where there was no indication that plaintiffs could not have discovered purportedly newly discovered e-mail that served as basis for their motion).

Case: 19-30088    Doc# 5367    Filed: 01/14/20    Entered: 01/14/20 15:29:57    Page 5 of 7

## III. THE DEBTORS HAVE RELIED ON THE RSA APPROVAL ORDERS

Finally, because the Debtors and other stakeholders have relied on the RSA approval orders, reconsideration would be inappropriate even had the Bondholder Group proffered newly discovered evidence. The "power to set aside its orders, while broad, is not unlimited." *See Matter of CADA Investments, Inc.*, 664 F.2d 1158, 1161-62 (9th Cir. 1981). Reconsideration is available only where "rights ha[ve] not vested on faith of the order." *Id.* Simply put, "bankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate their previous orders *so long as no intervening rights have become vested in reliance* on the orders." *In re Lenox*, 902 F.2d 737, 739-40 (9th Cir. 1990) (emphasis added) (citations omitted); *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) (the court "can modify or vacate its order so long as no intervening right has become vested in reliance thereon.").

A critical component of the RSAs approved by the Court was adjournment of the looming Tubbs trial and estimation proceedings. At the Debtors' request, the state court vacated the Tubbs trial and Judge Donato took the estimation hearing dates off calendar after the Court entered the RSA approval orders. As the Bondholder Group acknowledges, it is possible that those proceedings will not be restarted in sufficient time to enable the Debtors to achieve plan confirmation by the June 30, 2020, deadline established by AB 1054. Mot. ¶ 32 n.2 ("all future hearing dates in both the district court estimation proceedings and state court Tubbs litigation have been vacated, and Judge Donato has made clear that his calendar cannot accommodate estimation until after June 30"). As a consequence, reconsideration and vacation of the RSA approval orders – which would upend the global settlement among the Debtors, shareholders, the TCC, the vast majority of wildfire claimants, and the wildfire subrogation claimants – might imperil the entire reorganization.[4]

---

[4] Another critical component of the TCC RSA was the requirement that the Debtors settle the wildfire claims asserted by the eighteen individual preference plaintiffs who were granted priority to pursue their Tubbs fire claims. After the Court approved the TCC RSA, the Debtors reached settlements with all of those plaintiffs (and the thirty-two indispensable parties associated with those plaintiffs). [ECF 5282] The Debtors would not have engaged in piecemeal settlement with individual wildfire claimants absent approval of the TCC RSA.

Rights therefore have vested in reliance on the RSA approval orders, and reconsideration of those orders could prejudice the Debtors (and all their stakeholders) who changed positions as a result of the consummated RSAs. Given that reliance, the Court is without power to rescind approval of the RSAs.

## IV. CONCLUSION

There is no basis for reconsideration of the RSA approval orders. The PG&E Shareholders request that the Court deny the Motion.

Dated: January 14, 2020　　　　　　　　　　　　　　JONES DAY

By: */s/ James O. Johnston*
　　James O. Johnston

*Attorneys for PG&E Shareholders*