WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

Attorneys for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DEBTORS' OBJECTION TO CLASS REPRESENTATIVE'S MOTION TO EXTEND APPLICATION OF FEDERAL RULE OF CIVIL PROCEDURE 23 TO PROOF OF CLAIM**<br><br>**[Related to Dkt. No. 5042]**<br><br>Date: January 29, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..........................................................................................................................4

    A.    The Chapter 11 Cases ...............................................................................4

    B.    The Putative Class Actions .......................................................................8

ARGUMENT ..............................................................................................................................10

I.     IT IS INAPPROPRIATE TO APPLY BANKRUPTCY RULE 7023 HERE .........................10

    A.    There Is No Pre-Petition Certified Class ...................................................11

    B.    Putative Class Members Received Adequate Notice of the Bar Date After Movant Had the Opportunity to Be Heard on the Bar Date Motion............................13

    C.    Granting the Motion Would Adversely Affect the Administration of these Estates and Class Actions Are Not Superior to the Proof of Claim Process ...............19

II.    MOVANT DOES NOT ADDRESS THE BASIC REQUIREMENTS OF CIVIL RULE 23.........................................................................................................22

CONCLUSION...........................................................................................................23

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amdura Corp.*,
170 B.R. 445 (D. Colo. 1994) ................................................................17

*In re Aughney*,
No. 10-12666, 2011 WL 479010 (Bankr. N.D. Cal. Feb. 4, 2011) ............10

*In re Bally Total Fitness of Greater New York, Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ...............................*passim*

*In re Blockbuster Inc.*,
441 B.R. 239 (Bankr. S.D.N.Y. 2011) ...............................13, 16, 17, 21

*In re Chaparral Energy, Inc.*,
571 B.R. 642 (Bankr. D. Del. 2017) ................................................................17

*In re Charter Co.*,
876 F.2d 866 (11th Cir. 1989) ................................................................12

*Chemetron Corp. v. Jones*,
72 F.3d 341 (3d Cir. 1995) ................................................................14, 15

*In re Comput. Learning Ctrs.*,
344 B.R. 79 (Bankr. E.D. Va. 2006) ................................................................20

*In re Connaught Grp., Ltd.*,
491 B.R. 88 (Bankr. S.D.N.Y. 2013) ................................................................13

*In re Craft*,
321 B.R. 180 (Bankr. N.D. Tex. 2005) ................................................................11

*In re Dewey & LeBoeuf LLP*,
487 B.R. 169 (Bankr. S.D.N.Y. 2013) ................................................................10

*In re Ephedra Prod. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005) ................................................................10, 21, 22

*Fogel v. Zell*,
221 F.3d 955 (7th Cir. 2000) ................................................................15

*In re GAC Corp.*,
681 F.2d 1295 (11th Cir. 1982) ................................................................16

*Gentry v. Siegel*,
668 F.3d 83 (4th Cir. 2012) ................................................................12

*In re Jamesway Corp.*,
No. 95 B 44821 (JLG), 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) ........................*passim*

*In re MF Glob. Inc.*,
512 B.R. 757 (Bankr. S.D.N.Y. 2014) ................................................................12, 13

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

ii

*In re Motors Liquidation Co.*,
    447 B.R. 150 (Bankr. S.D.N.Y. 2011) ................................................................. 17

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................... 14, 18

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ......................................................... *passim*

*In re Pac. Sunwear of Cal.*,
    Case No. 16-10882 (LSS), 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016) .............. 10, 11

*In re Placid Oil Co.*,
    753 F.3d 151 (5th Cir. 2014) ........................................................................ 18

*In re Sacred Heart Hosp. of Norristown*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ........................................................... *passim*

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) ............................................................ 21

**Statutes**

Bankruptcy Code Chapter 11 ......................................................................... *passim*

Bankruptcy Code Sections 1107(a) and 1108 ............................................................ 4

**Other Authorities**

Bankruptcy Rule 7023 ......................................................................... 10, 11, 20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

iii

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this objection (the "**Objection**") to the *Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* [Dkt. No. 5042] (the "**Motion**").

In support of the Objection, the Debtors submit (i) the *Declaration of Christina Pullo (I) Regarding Implementation of the Debtors' Notice Procedures and (II) in Support of the Debtors' Objection to Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Proof of Claim* (the "**Pullo Declaration**"), (ii) the *Declaration of Benjamin P.D. Schrag (I) Regarding Implementation of the Debtors' Notice Procedures and Supplemental Notice Plan and (II) In Support of the Debtors' Objection to Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Proof of Claim* (the "**Schrag Declaration**"), (iii) the *Declaration of Jeanne C. Finegan (I) Regarding Implementation of the Debtors' Notice Procedures and Supplemental Notice Plan and (II) In Support of the Debtors' Objection to Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Proof of Claim* (the "**Finegan Declaration**"), and (iv) the *Debtors' Request for Judicial Notice in Support of Debtors' Objection to Class Representative's Motion to Extend Application of Federal Rule of Civil Procedure 23 to Proof of Claim* (the "**Request for Judicial Notice**").

## PRELIMINARY STATEMENT

In its Motion, Public Employees Retirement Association of New Mexico (the "**Movant**" or "**PERA**") seeks permission to file a class proof of claim on behalf of purchasers of the Debtors' debt and equity securities from April 29, 2015 through November 15, 2018 (the "**Class Period**") who purport to have suffered losses as a result of alleged misstatements and omissions made by the Debtors. Although Courts have discretion to extend Rule 23 of the Federal Rules of Civil Procedure ("**Civil Rule 23**"), pursuant to Rule 7023 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to allow for the use of class proofs of claim in chapter 11 cases, Courts generally prohibit them where, as here, there is no pre-petition certified class and adequate bar date notice procedures were approved and implemented after extensive hearings and the opportunity for all interested parties to be heard. The reasons to deny the Motion are even stronger where, as here, Movant delayed in filing

- 1 -

Case: 19-30088    Doc# 5369    Filed: 01/14/20    Entered: 01/14/20 15:39:49    Page 5 of 27

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the Motion until late in these Chapter 11 Cases—waiting nearly 11 months since the Petition Date and approximately 50 days after the passage of the Bar Date to bring this Motion.

The Motion raises the same arguments that the Court recently rejected in the motion brought by David Alonzo to treat a proof of claim as a claim on behalf of a putative class of former employees. *See Tentative Ruling on Class Representative Motion to Extend FRCP 23* (Nov. 14, 2019) (the "**Alonzo Ruling**"). Alonzo argued, as does Movant here, that the Debtors were aware of the existence of the putative class at the time of the Bar Date Notice and, therefore, the Debtors had a duty to serve actual (as opposed to constructive) notice on each of the absent class members. Consistent with well-established precedent, the Court denied Alonzo's motion: "The persuasive arguments of debtors re robust noticing, absence of pre-petition class certification and lateness in motion well-after the bar date notice alone justify denial." *Id.*

This Motion should likewise be denied. Importantly, there has been no pre-petition certified class. Further, as the Court has recognized, the Debtors provided "robust" notice of the Bar Date. *Id.* The Debtors' Notice Procedures, including their multifaceted media plan for providing supplemental and constructive notice to unknown claimants and other parties in interest, comprised one of the largest and most comprehensive notice and media campaigns implemented in chapter 11 history. Over 6.5 million Bar Date Notices were mailed to potential creditors and parties in interest—including mailing over 100,000 Bar Date Notices to holders of the Debtors' notes and equity. The Debtors provided actual notice of the Bar Date to all holders of the Debtors' securities based on a "**Record Date**" of July 1, 2019, which likely included most, if not virtually all, of the record holders of securities Movant purports to represent.

Moreover, this Court held extensive Bar Date notice hearings and ultimately determined that the procedures for providing actual and constructive notice were "robust" and constitutionally appropriate. Movant, which is on the master service list, received copies of all notices and other pleadings since appearing in these cases back in March 2019 [Dkt. No. 1126], and was actively engaged in litigation with the Debtors before this Court while the Debtors sought approval of the Bar Date notice, had ample opportunity to appear and be heard on the adequacy of the Bar Date and notice but did not object or raise any concerns. Nonetheless, Movant now seeks at this late date to make a

collateral attack on the adequacy of the Court's noticing procedures. If Movant truly had concerns about the adequacy of the Bar Date Notice, it should have timely raised any concerns prior to approval of the Bar Date, and it is now long past the appropriate time for any such objection.

In any event, the argument that notice to the absent class members here needed to be actual rather than constructive is wholly unsupported. Movant concedes that Courts now routinely apply the standard in *Musicland* in determining whether to allow a class proof of claim in chapter 11. Yet, *Musicland* itself recognized that the second factor—whether notice was sufficient—is met by constructive notice. *See In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007) ("[I]f the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the . . . class proof of claim device appears advisable." (quoting *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995)).

In addition, the Motion was not filed until December 9, 2019, long after the Bar Date, and long after Alonzo's motion was filed. *See Motion to Allow Claims – to Extend Application of Federal Rule of Civil Procedure 23 to Class Proofs of Claim filed by Creditor David Alonzo* [Dkt. No. 4370] (filed October 21, 2019). Just as with the motion by Alonzo, denial of the Motion also is justified by the "lateness" of the filing of the Motion "well after the bar date." *See* Alonzo Ruling.

Allowing Movant to proceed with a class proof of claim at this late stage of the Chapter 11 Cases may undermine the Debtors' ability to confirm a chapter 11 plan of reorganization in time to meet the June 30, 2020 deadline established under AB 1054. The Debtors are engaged in a highly contested competing chapter 11 plan process with significant confirmation-related issues being litigated before the Court that will have a material impact on both proposed plans. They are also engaged in regulatory proceedings involving numerous stakeholders before the California Public Utility Commission regarding their proposed plan. This is in addition to maintaining the Debtors' normal day-to-day operations, managing their vast network of vendors, suppliers, and contract counterparties, and focusing on delivering power to their 16 million customers in a safe and reliable manner. Allowing this class claim would add further complexity and potential delay.

The Motion also fails by not even arguing that a class should be certified under Civil Rule 23. Establishing that the class meets Civil Rule 23 is a required element of Movant's Bankruptcy

- 3 -

7023 Motion.  That Movant has not even attempted to meet that burden is yet another independent basis for denying the Motion.  Accordingly, the Motion should be denied.

## BACKGROUND

### A.    The Chapter 11 Cases

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in either of the Chapter 11 Cases.  The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

### 1.    The Bar Date Order

On May 1, 2019, the Debtors filed their motion [Dkt. No. 1784] (the "**Bar Date Motion**") requesting entry of an order (i) establishing October 21, 2019 as the last date to file proofs of claim in the Chapter 11 Cases (the "**Bar Date**"), (ii) establishing the form and manner thereof, and (iii) approving the Debtors' plan for providing notice (the "**Notice Procedures**") of the Bar Date and other important deadlines and information to all creditors and potential creditors, including publication and other supplemental noticing procedures (the "**Supplemental Notice Plan**").[1] *See* Bar Date Order [Dkt. No. 2806] at 2; *see also generally* Schrag Declaration; Finegan Declaration; Pullo Declaration.

The Bar Date Motion and Notice Procedures were heavily litigated; this Court heard extensive briefing and argument from the various constituencies on, among other things, the length of the proposed Bar Date, the various proof of claim and notice forms, and the proposed procedures for providing notice of the Bar Date and related procedures to known and unknown claimants.  Among others, the Tort Claimants Committee ("**TCC**"), the U.S. Trustee, certain wildfire claimants, certain state and public entities, and the Ad Hoc Group of Subrogation Claimholders filed objections, limited objections, joinders, or other related pleadings.  *See* Dkt. Nos. 2043, 2238, 2239, 2240, 2242, 2248, 2256, 2306, 2307, 2308, 2316, 2321, 2324, 2326, 2346, and 2453.  As noted above, Movants first

---

[1] On November 11, 2019, the Bar Date was extended by the Court for unfiled, non-governmental Fire Claimants (as defined in the Bar Date Order) to December 31, 2019 [Dkt. No.  4672].

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

appeared in these cases on March 29, 2019 [Dkt. No. 1126] and requested notice and service of all notices and pleadings filed in the Chapter 11 Cases.  As a result, Movants were added to the Master Service List and received actual notice of the Bar Date Motion.  Despite Movant's active participation in these Chapter 11 Cases, as explained more fully below, Movant did not raise any objections to entry of the Bar Date Order or approval of the Debtors' Notice Procedures.   After extensive hearings, including the opportunity to object and cross-examine witnesses, the Court approved the Bar Date Motion and the Debtors' Notice Procedures, as modified prior to and at the hearing, by order dated July 1, 2019 [Dkt. No. 2806] (the "**Bar Date Order**").

> 2.    *The Notice Procedures*

At the Debtors' direction, and consistent with the Bar Date Order, over 6.5 million Bar Date Notices were directly mailed to potential claimants and interest holders, which included notice of the deadline for filing claims and related procedures as well as an applicable proof of claim form.  *See* Schrag Decl. ¶ 7; *Certificate of Service of Herb Baer* [Dkt. No. 3159].

Direct-mail recipients included, among others, the Debtors' approximately 6.2 million customers and 141,000 potential creditors, contract counterparties, and other parties in interest.  *See* Schrag Decl. ¶ 7.  Included in this group were 111,000 holders of the Debtors' common equity, 11,300 noteholders, and 1,352 brokerage nominees, including all record holders of the Debtors' securities based on the Record Date.  *See id.* ¶ 8; Pullo Decl. ¶ 5.

Service of the Bar Date Notice on holders of the Debtors' securities followed ordinary and customary noticing procedures for the noticing of public securities holders in chapter 11.  Pullo Decl. ¶ 6.  The Debtors' noticing agent, Prime Clerk LLC ("**Prime Clerk**"), received a listing of all entities ("**Nominees**") holding the Debtors' securities on behalf of beneficial owners based on the Record Date. *Id.* ¶¶ 11–12.  Prime Clerk then delivered to a mailing agent or to the Nominees the number of paper copies of the Bar Date Notice needed to provide notice by mail to beneficial holders.  *Id.* ¶ 13.  The Nominees or mailing agent, in turn, forwarded the Bar Date Notice to beneficial owners.  *Id.* ¶ 14. Prime Clerk also requested that the Bar Date Notice be published on the electronic notification system of the Depository Trust Company.  *Id.* ¶ 16.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Bar Date Notice was also served directly on all registered holders of the Debtors' securities. *Id.* ¶¶ 8–10. Although not expressly required under the terms of the Bar Date Order, the Debtors took the additional step of serving registered holders of PG&E Corp. common equity to ensure that all parties received notice and the opportunity to file claims. Affidavits certifying direct service in accordance with the Bar Date Order, the Bankruptcy Code, and otherwise applicable law, and the method of such service, of a Claims Package that included: (i) the Standard Bar Date Notice, and (ii) the Standard Proof of Claim Form, were filed by Prime Clerk on July 23, 2019 [Dkt. No. 3159], July 30, 2019 [Dkt. No. 3262], and August 8, 2019 [Dkt. No. 3474]. Prime Clerk directly served the Claims Package upon Movant's counsel. *See Certificate of Service of Herb Baer* [Dkt. No. 3159], Ex. A at 7, 13; Ex. D at 706; Ex. Q at 8.

Given the nature of these Chapter 11 Cases, in addition to actual notice, the Debtors also implemented their Supplemental Notice Plan to provide extensive and robust constructive notice to known and unknown claimants and interest holders using both traditional and non-traditional means. *See generally* Finegan Decl. The Supplemental Notice Plan included publication in, among others, print, online, social, radio, and television media outlets. *See id.* ¶ 6. As has been previously reported to the Court, the program ultimately resulted in over 730,000,000 impressions, *i.e.*, opportunities to see the Bar Date Notice.[2] *See id.* ¶¶ 6–7.

The Finegan Declaration describes these efforts in detail and some of the most salient features are highlighted below. In accordance with the Bar Date Order, the Debtors published the Bar Date Notice in (i) three nationally distributed magazines—*People*, *Sports Illustrated*, and *Sunset Magazine*, (ii) two nationally circulated newspapers—*Wall Street Journal* and *USA Today*, and (iii) three separate times in twenty-seven local newspapers, including the *Los Angeles Times* and *San Francisco Chronicle*. *See id.* ¶¶ 11–14. Proof of publication affidavits are incorporated by reference into the Finegan Declaration. Additionally, the Debtors placed banner advertisements across approximately

---

[2] As set forth in the Finegan Declaration, an impression translates into an opportunity to see a message in a given medium. Here, it measures each time the Bar Date Notice is displayed and potentially viewed by claimants. For example, each direct mailing of the Bar Date Notice sent out to Known Claimants constitutes one impression. Every time, the Bar Date was displayed in a television advertisement similarly constitutes one impression for each person estimated to be viewing the advertisement at the time of airing. *See* Finegan Decl. ¶ 7.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

4,000 websites—including top-tier news and other websites. *See id.* ¶¶ 15–17. The Debtors also launched social media campaigns on Twitter, Facebook, Instagram, and YouTube that included the engagement of social influencers to further reach potential claimants and interest holders, including those outside of California. *See id.* ¶¶ 18–23. Moreover, the Debtors also provided notice via television, radio, billboards, and other non-traditional means, including nationwide cable television commercials aired across CNN, FOX NEWS, History Channel, and TNT networks. *See id.* ¶¶ 25–43. As set forth above, the Notice Procedures were one of the largest, most comprehensive notice and media campaigns implemented in chapter 11 history. Any former security holder who wished to file a claim against the Debtors had notice and opportunity to do so during the Bar Date period. Movant does not provide any evidence that any securities holder did not receive actual or constructive notice of the existence of the Chapter 11 Cases and the Bar Date.

### 3. Progress Toward Confirmation

The Court is well aware of the complexity of these Chapter 11 Cases, as well as the substantial progress the Debtors have made toward confirmation of a plan in time to meet the deadline established under AB 1054. Some highlights of these efforts include:

- After extensive negotiations, the Debtors filed their chapter 11 plan of reorganization on September 9, 2019 [Dkt. No. 3841] (as thereafter amended on September 23, 2019 [Dkt. No. 3966], November 4, 2019 [Dkt. No. 4563], and December 12, 2019 [Dkt. No. 5101], and as may be further modified, amended, or supplemented from time to time, the "**Plan**") that was structured and designed to enable the Debtors to (i) fairly and expeditiously treat pre-petition wildfire claims in full compliance with AB 1054, (ii) achieve a rate-neutral solution, on average, for customers, (iii) meet the AB 1054 June 30, 2020 timeline for confirmation of the Plan, (iv) achieve required CPUC approvals, (v) support California's clean energy goals, and (vi) ensure that the Reorganized Debtors have access to sufficient liquidity upon chapter 11 emergence. Since filing the Plan, the Debtors have actively engaged with the Governor's Office to address any concerns and ensure that the Plan will be AB 1054 compliant.

- The Debtors have now achieved settlements with all three of the critical wildfire claim constituencies to be satisfied and discharged pursuant to their Plan. The first settlement fully resolves all of the wildfire claims held by the 18 settling Public Entities for the aggregate amount of $1 billion. The second settlement fully resolves all of the claims held by Subrogation Claimants in the asserted amount of approximately $20 billion for consideration in the amount of $11 billion, representing a 45% reduction. Pursuant to the third settlement, with the assistance of the Court-appointed mediator, the Debtors, certain funds and accounts managed or advised by Knighthead Capital Management, LLC and Abrams Capital Management, L.P. (together, the "**Shareholder Proponents**"), the TCC, and certain professionals representing approximately 70% in number of the holders of Fire Victim Claims have entered into an agreement to settle the total aggregate amount of the Debtors' pre-petition liabilities to individual Fire

Victims for $13.5 billion in cash and stock to support confirmation of the Debtors' Plan, as amended to incorporate the terms of that settlement. As a result, four major constituencies (the TCC and individual fire claimants, the Subrogation Claimants, the Public Entities, and the Shareholder Proponents), which represent all the impaired classes in these cases, will be fully supportive of one plan—the Debtors' Plan.

- The Court has now approved Restructuring Support Agreements, embodying the settlements with both the Subrogation Claimants and the TCC.

- The Court has recently decided that the holders of unsecured claims are entitled to post-petition interest at the federal judgment rate and the parties have briefed issues relating to make-whole premiums.

While the Debtors have accomplished much in the months since the Petition Date, there is still much more to be done that will require additional resources and tremendous efforts. First and foremost, the Debtors are in the process of preparing, and will shortly be filing, a disclosure statement and seeking authority to commence solicitation of votes from over 100,000 impaired creditors and interest holders.

The Debtors are also in the process of seeking approval of their backstopped debt and equity commitments, which serve as the foundation for the comprehensive financing package that will fund the Plan and the Debtors' timely emergence from chapter 11. The Debtors will be drafting, negotiating, and filing all of the other plan transaction documents, including documents necessary to establish and govern the various trusts and reviewing the Debtors' thousands of executory contracts and leases and preparing schedules of those executory contracts and leases to be assumed or rejected, and addressing related cure objections. The Debtors have also dedicated substantial resources to securing necessary governmental approvals in connection with their Plan, including the CPUC OII proceeding in connection with the Debtors' Plan. The extended Bar Date has now passed and the Debtors are beginning the process of reviewing and reconciling the tens of thousands of claims that have been filed in these Chapter 11 Cases. This is in addition to maintaining the Debtors' normal day-to-day operations, managing their vast network of vendors, suppliers, and contract counterparties, and focusing on delivering power to their 16 million customers in a safe and reliable manner.

### B. The Putative Class Actions

Movant is the named plaintiff in a securities class action lawsuit pending in the U.S. District Court for the Northern District of California, Case No. 18-03509 (the "**Securities Litigation**"). The Securities Litigation was initially filed in June 2018 and was later consolidated with a related class

- 8 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

action. *See* Case No. 18-03509 (N.D. Cal.) [Dkt. No. 117], Request for Judicial Notice Ex. A.[3] The action asserts claims against the Debtors, along with a number of the Debtors' current and former directors and officers and investment-bank underwriters of certain of the Debtors' notes offerings.

Movant's Third Amended Complaint asserts claims under the Securities Act of 1933, and the Exchange Act of 1934 and SEC Rule 10b-5. *See id.* [Dkt. No. 121], Request for Judicial Notice Ex. B. The claims under the Exchange Act allege that during the Class Period the defendants misled investors about the state of their wildlife safety practices. The claims under the Securities Act relate to four public notes offerings made between March 1, 2016 and April 2, 2018, alleging that the offering documents for those notes contained misleading statements. The putative class comprises investors who acquired the Debtors' notes and equity securities during the Class Period.

The Securities Litigation has been and remains stayed with respect to the Debtors pursuant to the automatic stay. Movant continues to pursue the Securities Litigation against the non-Debtor defendants. On February 15, 2019, a mere two weeks after the Petition Date, the Debtors filed an adversary proceeding seeking to enjoin continued prosecution of the Securities Litigation against various non-Debtor defendants. *See Debtors' Complaint for Preliminary and Permanent Injunctive Relief as to Actions Against Non-Debtors* [Dkt. No. 470]. Movant actively contested this motion, which was denied on August 28, 2019. *See* Adv. Pro. No. 19-03039 [Dkt. No. 23], Request for Judicial Notice Ex. C. The non-Debtor defendants have filed motions to dismiss the complaint in the District Court, with briefing currently underway and argument scheduled in the District Court for February 6, 2020.

On October 21, 2019, Movant filed proofs of claim asserting a claim on behalf of itself. Claim Nos. 72193, 72273. The claim attached and referred to its Third Amended Complaint. Despite being on the Master Service List and, as noted above, actively participating in the Chapter 11 Cases, it was not until December 9, 2019 that the Movant filed this Motion to treat its proof of claim as a class proof of claim. *See* Motion [Dkt. No. 5042].

---

[3] The Request for Judicial Notice includes all cited case documents from related adversary proceedings and District Court litigation.

- 9 -

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## ARGUMENT

A Movant's burden is two-fold to support a class proof of claim. *See In re Pac. Sunwear of Cal.*, Case No. 16-10882 (LSS), 2016 WL 4250681, at *15 (Bankr. D. Del. Aug. 8, 2016). *First*, a Movant must establish that it is beneficial to apply Bankruptcy Rule 7023 to the claims administration process under the three-factor framework set forth in *In re Musicland*, 362 B.R. at 654. *See In re Pac. Sunwear of Cal.*, 2016 WL 4250681, at *15. *Second*, a Movant must satisfy the requirements of Civil Rule 23. *See id.* at *17. Failure to carry the burden on the first prong ends the inquiry. *See In re Musicland*, 362 B.R. at 654. Here, Movant has not only failed to meet its burden on the first prong of this analysis but has offered no attempt to establish that the requirements of Civil Rule 23 are satisfied.

## I. IT IS INAPPROPRIATE TO APPLY BANKRUPTCY RULE 7023 HERE

There is no absolute right to file a class proof of claim under the Bankruptcy Code. *See In re Aughney*, No. 10-12666, 2011 WL 479010, at *1 (Bankr. N.D. Cal. Feb. 4, 2011); *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 619–20 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re Musicland*, 362 B.R. at 650 (application of Civil Rule 23 is not automatic). In fact, a Bankruptcy Court should use "caution" before granting a Bankruptcy Rule 7023 motion and should do so sparingly. *In re Dewey & LeBoeuf LLP*, 487 B.R. 169, 179 (Bankr. S.D.N.Y. 2013).

Because "class certification may be 'less desirable in bankruptcy than in ordinary civil litigation,'" *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005), Bankruptcy Courts have developed a three-factor framework to guide the exercise of this discretion. *See In re Musicland*, 362 B.R. at 654. The so-called *Musicland* factors ask whether: (i) "the class was certified pre-petition," (ii) the putative class members received "actual or constructive notice" of the bar date, and (iii) "class certification will adversely affect the administration" of the estate. *See id.* (internal quotations omitted). While no single factor is dispositive, the first two are "critical." *Id.* at 655. Indeed, in *In re Bally*, the Court found that the "filing of a class proof of claim is consistent with the Bankruptcy Code generally in two principal situations: (i) where a class has been certified pre-petition by a non-bankruptcy court; and (ii) where there has been no *actual or constructive notice* to the class members of the bankruptcy case and Bar Date." 402 B.R. at 620 (emphasis added); *see also In re Sacred Heart*, 177 B.R. at 22 ("[I]f the putative unnamed class members have clearly received actual or constructive notice of the

- 10 -

bankruptcy case and the bar date, denial of the . . . class proof of claim device appears advisable.").
Here, all three factors mandate denial of the Motion.

### A.    There Is No Pre-Petition Certified Class

Not surprisingly, the Motion glosses over the first of the two "critical" *Musicland* factors: whether a non-bankruptcy forum certified the proposed class before the Petition Date. *See* Mot. at 17–18 ("[T]hat is not a bar to application of Bankruptcy Rule 7023"). Where, as here, pre-petition certification is lacking, putative class members lack "any reasonable expectation that they need not comply with the Bar Date Order." *In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997). As a result, where there has been no pre-petition certified class, Bankruptcy Courts are reluctant to allow the filing of class proofs of claim. *See In re Pac. Sunwear of Cal.*, 2016 WL 4250681, at *18 (declining to approve class proof of claim for a proposed class *lacking* pre-petition certification); *In re Craft*, 321 B.R. 189, 198–99 (Bankr. N.D. Tex. 2005) (declining to apply Bankruptcy Rule 7023 for a proposed class that was "not yet certified"). The first *Musicland* factor alone supports denying the Motion.

Movant attempts to sidestep this initial hurdle by claiming that "certification of the Class prior to the Petition Date was impossible" because "the Securities Litigation is still at the motion to dismiss stage." Mot. at 17. This argument misses the point. The first *Musicland* factor does not concern a party's ability or efforts to pursue class certification, but instead whether putative class members may have been induced by the fact that a class had been certified to not file an individual proof of claim. In circumstances where a class has been certified and class members have received notice of being represented by lead counsel, some class members might believe that they need not file a proof of claim on their own behalf on the assumption that would be done by class counsel. However, where no pre-petition class has been certified, as here, putative class members cannot reasonably assert that they were relieved of their obligation to file an individual proof of claim. This factor accordingly weighs against class treatment of a proof of claim regardless of how far along a putative class action is when it is stayed, and regardless of whether the lead plaintiff diligently pursued, or could have pursued, class certification prior to imposition of the stay.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

This same issue was present in Alonzo.  Although pre-petition certification of Mr. Alonzo's putative class action was *actually impossible* because the complaint was not filed until *after* the Petition Date, the Court still found that failure to have a class certified pre-petition was fatal to that motion.  *See* Alonzo Order [Dkt. No. 4925] ("No non-bankruptcy forum certified the proposed class before the Petition Date."); *see also* Alonzo Ruling ("The persuasive arguments of debtors re noticing, *absence of a pre-petition class certification* and lateness in motion well-after the bar date notice *alone* justify denial." (emphasis added)).

None of the cases Movant cites justifies departing from the Court's reasoning in the Alonzo Order.  In fact, in *Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012), the Fourth Circuit affirmed the Bankruptcy Court's and District Court's decisions to deny the very relief sought here.  *Id.* at 94 ("Indeed, the court could discern no substantial benefit in allowing the claimants to proceed through a class action process in this case, and we find no reason to find this to be an abuse of discretion.").  Moreover, *In re Charter Co.*, 876 F.2d 866, 869 (11th Cir. 1989), is plainly distinguishable.  *See* Mot. at 17 ("*Charter Co.* similarly dispels the notion that class procedures should only be used where a class was certified in a non-bankruptcy context.") (citing *In re First Alliance Mortgage Co.*, 269 B.R. 428, 444 (C.D. Cal. 2001)).  First, *Charter Co.* was an early case that focused on whether a class proof of claim should be permitted at all; it did not apply the *Musicland* factors or any similar factors and instead remanded the issue to the bankruptcy court to decide "whether or not to apply Bankruptcy Rule 7023." *Charter Co.*, 876 F.2d at 876–77.  And second, *Charter Co.* is factually distinguishable because there, unlike here, at the time of the bar date notice the district court had *already certified* a class in the action against the officers and directors.  *Id.* at 869.  Indeed, the *Charter Co.* court based its determination that a class proof of claim should be permitted upon its findings that it "seemed backwards" to require individual class members to file separate proofs of claim after the class had already been certified by the district court.  *See id.* at 870–74.  Moreover, the *Charter Co.* court reasoned that it would have been unfair to refuse a class claim because the purported representative sought class certification under Civil Rule 23 at the earliest possible opportunity, *see id.*, unlike here, where Movant had ample opportunity to seek relief under Bankruptcy Rule 7023 or to object to the Bar Date Notice.

- 12 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Finally, Movant misconstrues *MF Global*, which provides an exception in WARN Act cases, where the putative class is created by the bankruptcy itself. *See* Mot. at 17 (citing *In re MF Global Inc.*, 512 B.R. 757, 763–65 (Bankr. S.D.N.Y. 2014)). In that case, the employees who were bringing claims under the WARN Act lost their jobs "for the same reasons that precipitated the bankruptcy" and therefore under those circumstances there will seldom be time even to file a class action complaint before the petition date. *In re MF Glob. Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); *see also In re Connaught Grp., Ltd.*, 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013) ("Connaught discharged the class members a few days before the bankruptcy cases were commenced and before litigation could have occurred . . . . In essence, this is a class created by the bankruptcy itself."). The WARN Act cases provide no basis to depart from the general rule in cases such as here.

**B.      Putative Class Members Received Adequate Notice of the Bar Date After Movant Had the Opportunity to Be Heard on the Bar Date Motion**

Movant also fails the second *Musicland* factor, as the filing of a class proof of claim is only permissible where there has been no actual *or* constructive notice to the class members of the chapter 11 case and bar date. *See*, *e.g.*, *In re Bally*, 402 B.R. at 620 ("Actual or constructive notice has been given to these putative class members."); *In re Blockbuster Inc.*, 441 B.R. 239, 242 (Bankr. S.D.N.Y. 2011) ("[T]he Debtors provided adequate notice to members of the putative class by publishing notice . . . ."); *In re Sacred Heart*, 177 B.R. at 22 (approving of "actual or constructive notice of the bankruptcy case and the bar date"). Here, just as with the Court's rejection of the Alonzo Motion, the Debtors' "robust noticing" of potential claimants "justif[ies] denial." *See* Alonzo Ruling.

As Movant acknowledges, the touchstone of the notice analysis is *reasonableness*: Notice must "be fundamentally fair and reasonably calculated to apprise interested parties." Mot. at 18 (quoting *In re ATD Corp.*, 278 B.R. 758, 763 (Bankr. N.D. Ohio 2002)). In the Bankruptcy Rule 7023 context, the "proper inquiry" is *not* whether each and every claimant received *actual* notice. *In re Jamesway Corp.*, 1997 WL 327105, at *8. Actual notice is "irrelevant as a matter of due process." *Id.* Rather, the only question is whether the debtor "acted reasonably in selecting means likely to inform persons affected by the Bar Date and these chapter 11 proceedings." *Id.*; *see*, *e.g.*, *In re Bally*, 402 B.R. at 620 (mailing formal bar date notices and publishing notice in nationally circulated periodicals "was reasonably

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

calculated . . . to apprise interested parties of the bankruptcy case and was of such nature as to convey the required information") (internal citations omitted).

Movants argue that the notice approved by the Court was inadequate as it relates to absent class members because these absent class members (even though no class was certified pre-petition) are known creditors who should have been served with actual notice. Mot. at 18. This argument fails for two reasons. First, absent class members are not "known" creditors for purposes of this analysis. If it were otherwise, then all Bankruptcy Rule 7023 motions would require that notice be actual and that constructive notice would never suffice—which is directly contrary to the standard set forth in *Musicland* and other cases expressly permitting that absent class members can be served with constructive notice in appropriate circumstances. Second, if Movant—who was actively participating in the bankruptcy—truly had concerns about the adequacy of the Bar Date Notice, they should have been raised at the time of the Bar Date notice hearing. The Court should not allow a collateral attack on its Bar Date Order and approved Notice Procedures by a party who had actual notice of the Bar Date Motion and consciously chose not to raise these issues, perhaps for tactical reasons.

While "[k]nown creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date," Courts define this group narrowly. *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). A debtor "does not have a 'duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.'" *Id.* Rather, a known creditor is only one "whose identity is either known" to the debtor or "can be identified through reasonably diligent efforts." *Id.* (quotation omitted). And reasonable diligence does not require "a vast, open-ended investigation." *Id.* Instead, "[t]he requisite search instead focuses on the debtor's own books and records" and requires nothing beyond "a careful examination of these documents." *Id.* at 347. An unknown creditor, by contrast, is "one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Id.* at 346 (alteration in original) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)). For such creditors, actual notice is not required and, as Movant acknowledges, notice by publication can suffice. Mot. at 20.

- 14 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Far from being readily ascertainable from the Debtors' own books and records, Debtors' records could not identify all members of the putative class. *See Chemetron*, 72 F.3d at 347–46 (requiring actual notice only to those creditors who can be identified through "a careful examination" of the "debtor's own books and records"). The Debtors would have to rely on the voluntary participation and records-management practices of the nominees holding securities on behalf of beneficial owners and the transfer agent responsible for maintaining the register of direct holders, not a search of the Debtors' own records. Pullo Decl. ¶ 6. Such putative class members are thus unknown creditors, whose names and addresses "do not in due course of business come to [the Debtors'] knowledge." *Chemetron*, 72 F.3d at 346. Given the impossibility of identifying all putative class members, the Debtors engaged in industry-standard practice in providing actual notice to current holders of the Debtors' securities. Pullo Decl. ¶ 6. Any attempt to engage nominees in the process of noticing former securities holders would have delayed Debtors' noticing procedures and would have been costly and incomplete. *See id.* ¶ 19. As the Seventh Circuit has explained, "[n]otice by publication may thus be entirely appropriate when potential claimants are numerous, unknown, or have small claims." *Fogel v. Zell*, 221 F.3d 955, 963 (7th Cir. 2000).

Examining the notice the Debtors provided to members of the putative class—a combination of actual notice and constructive notice—confirms that it was robust and more than reasonable.

The Debtors provided actual notice to all record holders of the Debtors' securities based on the Record Date, July 1, 2019. *See* Pullo Decl. ¶ 5. This included all banks, brokers, dealers, and other financial institutions that hold securities on behalf of beneficial holders, as well as all of the registered holders of the Debtors' securities. *Id.* ¶¶ 6–17. This likely included most of the record holders of the Debtors' securities in the putative class, *id.* ¶ 21—as Movant explains, the putative class "include[s] investors who purchased [the Debtors'] stock during the Class Period and still hold that stock." Mot. at 12. The Debtors also had the Bar Date Notice published on the electronic notification system of the Depository Trust Company, allowing holders of the Debtors' securities to readily access it. Pullo Decl. ¶ 16.

Any remaining putative class members received constructive notice as approved by the Court. The Debtors implemented perhaps the most robust noticing campaign in any chapter 11 case.

- 15 -

Specifically, the Debtors published notice of the Bar Date in (i) three nationally distributed magazines, (ii) two nationally circulated newspapers, and (iii) three times in twenty-seven local newspapers. *See* Finegan Decl. ¶¶ 13–14. In addition, the Debtors generated geo-targeted online advertisements across 4,000 different websites, pushed notifications through social media, engaged social influencers to post and share information about the Bar Date on Instagram and Facebook, sponsored advertisements on Google for related keyword searches, purchased billboards, streaming video rights, and airtime on television (including nationwide cable television) and radio (terrestrial and satellite), among other things, to inform as many potential claimants as possible of the pending Bar Date. *See id.* ¶¶ 15–23. These comprehensive efforts resulted in more than 730,000,000 opportunities to see the Bar Date Notice. *See id.* ¶¶ 4–8.

This combination of 6.5 million Bar Date Notices directly mailed to potential claimants and a robust Supplemental Noticing Campaign was reasonably calculated to provide notice of the Bar Date to both known and unknown creditors, like the members of the putative class. Courts, including this Court, have found that constructive notice to absent class members is sufficient to satisfy the second prong of the *Musicland* factors. *See In re Bally*, 402 B.R. at 620; *In re Blockbuster Inc.*, 441 B.R. at 242. Indeed, as this Court explained in denying Alonzo's similar motion where claimant argued that not all absent "known" class members were served with actual notice—after considering these same noticing procedures—this "robust noticing" campaign "justif[ies] denial" of the Motion. *See* Alonzo Ruling.

In *In re GAC Corp.*, 681 F.2d 1295 (11th Cir. 1982), the Eleventh Circuit confronted a situation just like this one and rejected the very argument Movant makes here. There, a debtor provided actual notice of the claims bar date to all holders of its debentures as of a certain date and constructive notice by publication to all prior holders of the debentures. *Id.* at 1300. The appellant—who had filed a claim on behalf of purchasers of the debentures in a four-year period leading up to the debtor's chapter 11 case—contended that notice to prior holders by publication was insufficient and denied members of the class due process. *Id.* at 1297, 1300. The Eleventh Circuit rejected this argument. The Court started from the proposition that actual notice is required only "where the trustee has actual knowledge of the existence of a claim and the name and address of the claimant is easily ascertainable." *Id.* at

- 16 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1300. And it added that "it would have been extremely burdensome and costly to determine the names and addresses of all persons who had purchased but no longer held debentures." *Id.* The court concluded that "[u]nder the circumstances of this case . . . the publication notice . . . was reasonably calculated to apprise non-holding debenture purchasers of the necessity to file individual proofs of claim . . . and thus the notice complied with the requirements of due process." *Id.* So too here.

The Debtors here provided actual notice to current securities holders and robust constructive notice to former holders. This notice was "reasonably calculated to apprise non-holding [securities] purchasers of the necessity to file individual proofs of claim." *Id.* Nothing more is required. Courts have routinely held that a combination of actual and constructive notice is sufficient to satisfy the bar date requirements that are sufficient to support the rejection of a class proof of claim. *See In re Bally*, 402 B.R. at 620 (approving the "[a]ctual or constructive notice" given to a putative class comprising "any former employees" where actual notice was provided only to former employees within five years of the petition date); *see In re Jamesway Corp.*, 1997 WL 327105, at *8 (claim packages mailed to thousands of potential claimants and publication notice appeared in multiple widely circulated periodicals); *In re Blockbuster Inc.*, 441 B.R. at 242 (finding publication in several newspapers and service on the movants adequate to provide notice to a putative class comprising all "customers of the Debtors' who were unlawfully charged penalties when they breached oral rental agreements"); *In re Motors Liquidation Co.*, 447 B.R. 150, 168 (Bankr. S.D.N.Y. 2011) ("[N]o class has ever been certified in a bankruptcy court by reason of deficiencies in notice to prospective members of the putative class.").

The cases that Movant cites are not to the contrary. Movant principally relies on *In re Amdura Corp.*, 170 B.R. 445 (D. Colo. 1994), to argue that "actual notice to absent securities fraud class members" was required. Mot. at 21. But *Amdura* involved a class that had already been certified. Here, in the absence of a certified class, putative class members lacked such representation, and there was no straightforward way for the Debtors to obtain their names and addresses. As the Court in *Amdura* acknowledged, "[c]onstructive notice would suffice" for "members of the group whose identity and whereabouts could not be so easily ascertained." *Id.* at 452. Movant's reliance on *In re Chaparral Energy, Inc.*, 571 B.R. 642 (Bankr. D. Del. 2017), is likewise misplaced. There, the putative class comprised royalty interest holders whose actual identities were known to the debtors based on its

- 17 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

own internal records, *see id.* at 647 n.15 (describing the debtors' own records of putative class members), making the debtors' decision to notify only some of those holders unreasonable, *id.* at 648. Similarly, Movant cannot rely on cases addressing procedures employed to provide notice in securities class actions. *See* Mot. at 20–21 (collecting cases). Critically, Movant's cases all concern notice to members of a class *already certified* under Civil Rule 23, not the reasonableness of notice to unknown putative class members in the context of a Bankruptcy Rule 7023 motion in a chapter 11 case.

Finally, Movant objects in passing that the Bar Date Notices "made no mention of the Securities Litigation or the need for members of the Class to file proofs of claim." Mot. at 22. But Courts consistently reject any requirement of claim-specific notice. *See*, *e.g.*, *In re Placid Oil Co.*, 753 F.3d 151, 158 (5th Cir. 2014) ("We have never required bar date notices to contain information about specific potential claims. . . . Furthermore, neither the Bankruptcy Code nor Rules require bar date notices to apprise creditors of potential claims."). The Notices, which this Court approved, apprised all individuals that they needed to file proofs of claim by the Bar Date. As the portion quoted by Movant explains: "[I]f any [security] holder asserts a claim (as opposed to an ownership interest) against the Debtors (including a claim relating to an equity interest or the purchase or sale of such equity interest), a Standard Proof of Claim must be filed on or before the Bar Date." Mot. at 12 (quoting Standard Bar Date Notice at 8). This language unambiguously informs potential claimants of the need to file a Proof of Claim.

The clarity of the Court-approved Bar Date Notices coupled with their broad distribution confirms that the Debtors' robust noticing was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. The second "critical" *Musicland* factor—"whether the members of the putative class received notice of the bar date"—thus likewise supports denying the Motion. *In re Musicland*, 362 B.R. at 654–55.

Ultimately, Movant mounts a late-in-the-day attack on the Bar Date Notice, but Movant's opportunity to do so has long since passed. Given that Movant's dispute is with the adequacy of the Bar Date Notice, Movant could have and should have objected to the Debtors' Noticing Procedures or the Bar Date Motion after being served in July of 2019. *See Certificate of Service of Herb Baer* [Dkt.

- 18 -

No. 3159], Ex. A at 7, 13 (certifying service by e-mail); *id.* Ex. D at 706 (certifying service by first class mail); *id.* Ex. Q at 8 (certifying service by first class mail). Movant has been an active and continued participant in this bankruptcy proceeding from the very beginning.[4] Any delay—and especially one this long—in challenging the adequacy of the notice provided should not be permitted.

### C.  Granting the Motion Would Adversely Affect the Administration of these Estates and Class Actions Are Not Superior to the Proof of Claim Process

Movant has failed to establish either of the two "critical" *Musicland* factors. This failure requires rejection of the Motion and the Court need not even consider the third factor.

But even if the Court were to consider the third factor—effect on the administration of the estates—the third factor strongly supports denial of the Motion. *See In re Musicland*, 362 B.R. at 654. "The [third factor] often centers on (a) the timing of the motion for certification" and "(b) whether a plan has been negotiated, voted on or confirmed." *Id.* (collecting cases) (internal citations omitted). Rather than address the considerations articulated in *Musicland*, Movant simply asserts, in a conclusory fashion, that applying Civil Rule 23 will not "gum up the works" of the Debtors' Chapter 11 Cases; therefore, the Court should deny the Motion. Mot. at 22.

*First*, Movant filed the Motion on December 9, 2019—nearly two months after the October 21, 2019 Bar Date and more than *five months* after the Court entered the Bar Date Order. In the Alonzo Ruling, the Court found that although Mr. Alonzo filed his motion *on* the Bar Date, in part,

---

[4] Movant has been an active participant in these Chapter 11 Cases from February 2019 through the present. Movant is the named defendant in two adversary proceedings in these Chapter 11 Cases. *See* Adv. Pro. No. 19-03006; Adv. Pro. No. 19-03039. The Debtors filed the Complaint in the first adversary proceeding on February 15, 2019, a mere 17 days into these Chapter 11 Cases. The Debtors and Movant entered into a stipulation in the first adversary proceeding on April 3, 2019, *see* Adv. Pro. No. 19-03006 [Dkt. No. 34], Request for Judicial Notice Ex. D, which this Court so-ordered the following day. *See id.* [Dkt. No. 37], Request for Judicial Notice Ex. E. On May 1, 2019 the parties further agreed to dismiss Movant with leave for the Debtors to initiate a second adversary proceeding seeking injunctive relief, which this Court approved on May 3, 2019. *See id.* [Dkt. No. 42], Request for Judicial Notice Ex. F (stipulation); *id.* [Dkt. No. 44], Request for Judicial Notice Ex. G (order). The Debtors initiated the second adversary proceeding seeking injunctive relief against the Movant on June 18, 2019. *See* Adv. Pro. No. 19-03039 [Dkt. Nos. 1–3], Request for Judicial Notice Ex. H, I, J. Movant opposed on July 18, 2019, *see id.* [Dkt. No. 12], Request for Judicial Notice Ex. K, participated in the preliminary injunction hearing on August 27, 2019, and successfully defeated the Debtors' motion on August 28, 2019. *See id.* [Dkt. No. 23], Request for Judicial Notice Ex. C. Counsel for Movant also filed a notice of appearance on the main bankruptcy docket on March 29, 2019. *See* [Dkt. No. 1126]. Less than three weeks later, Movant objected to the fee application of Simpson Thatcher, counsel to the independent directors, *see* [Dkt. No. 1479], which Movant has continued to do over the subsequent months. *See* [Dkt. Nos. 4349 & 4822].

Mr. Alonzo's "lateness" in filing the motion "well-after the bar date notice" justified denying that nearly identical motion. *See* Alonzo Ruling. Crucially, unlike Mr. Alonzo, the Debtors made the Movant and the putative class it purports to represent well aware of these Chapter 11 Cases by bringing an adversary proceeding on February 15, 2019—*i.e.*, just over two weeks after the Petition Date. Yet, despite successfully overcoming the Debtors' attempt to enjoin the Movant's claims against non-Debtor defendants, the Movant declined to object to the Bar Date or the Notice Procedures. It is only now—months after the Bar Date Notice—that Movant first raised its supposed concerns about the adequacy of the notice that it received in July. Movant had plenty of opportunity to seek class treatment earlier in the case, or, as noted above, to object to and seek more robust noticing as part of the Bar Date motion. Instead, Movant did nothing. This delay alone requires denial of the Motion. *In re Comput. Learning Ctrs.*, 344 B.R. 79, 89 (Bankr. E.D. Va. 2006) ("A Rule 7023 motion should be filed as soon as practicable and should be denied if it comes so late as to prejudice any party."); *In re Sacred Heart*, 177 B.R. at 23 ("Timing is also significant. The most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors.").

   *Second*, as set forth above, the Debtors have already made substantial progress in the administration of these Chapter 11 Cases and toward the timely and successful confirmation of a chapter 11 plan of reorganization. Specifically, the Debtors have obtained the full support of the four constituencies that represent all the impaired classes under the Debtors' Amended Plan. If Movant's proof of claim is allowed to go forward as a class claim, it could undermine the extraordinary efforts the various stakeholders have already made to meet the June 2020 deadline.

   Importantly, awarding a class proof of claim will also significantly impact the claims reconciliation process and impose substantial burden on the Debtors to address a class claim in the context of their proposed Plan. Moreover, allowing a class proof of claim would potentially expand the claims pool at this late date to encompass individuals who expressly chose not to file individual claims. As the Court in *Jamesway* held: "[T]his is not a case justifying an exception to the enforcement of the Bar Date Order in accordance with its express and unequivocal terms. To do so would be unwarranted, unfair, and possibly violate the due process rights of other creditors." *In re Jamesway*

- 20 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Corp.*, 1997 WL 327105, at *10 (internal quotation marks omitted); *see also In re Sacred Heart*, 177 B.R. at 24 ("In any event, it is manifestly clear that it would be unwarranted, unfair, and possibly violate the due process rights of other creditors of the Debtor to effectively extend the bar date to benefit (1) the members of the putative class who failed to exercise vigilance; and (2) the pocketbook of the putative class's counsel, who obviously will seek a contingency fee from all unnamed class members who fail to opt out of the putative class.").

In fact, allowing these proofs of claim to be treated as class claims under Bankruptcy Rule 7023 might create precisely the undue delay that Courts have long sought to avoid in resolving the proof of claim process. *See*, *e.g.*, *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) ("[A] bankruptcy case can proceed no faster than its slowest matter and a class action may 'gum up the works' because until complete, the bankruptcy court cannot determine the entitlement of the other creditors." (internal citation omitted)).

Given this posture and the June 2020 deadline under AB 1054, granting the Motion would impose significantly higher costs to conduct, on an expedited timeframe, fact-intensive proceedings—which Courts have repeatedly recognized as a proper justification for denying relief under Bankruptcy Rule 7023. *See In re Bally*, 402 B.R. at 621 n.5 ("[T]he parties have yet to undertake the significant amount of discovery that will be required to litigate a class certification motion. After the completion of class certification discovery and the inevitable briefing, the Court will conduct a hearing on class certification. If the Court ultimately certifies a class, class members will need to be noticed and given an opportunity to 'opt out' under [Civil] Rule 23. The parties will then engage in merits discovery, which, in turn, will be followed by a complex and lengthy trial."); *In re Ephedra*, 329 B.R. at 5 ("Applying Rule 23 to the class claims now would initiate protracted litigation that might delay distribution of the estate for years.").

*Finally*, class actions are not superior to the proof of claim process, chapter 11's mechanism for distributing assets of the estates to creditors and other economic stakeholders. *See*, *e.g.*, *In re Blockbuster Inc.*, 441 B.R. at 241 ("[The] superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows [Plaintiffs] to file proofs of claim without counsel and at virtually no cost."). The proof of claim process is intended

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to be a straightforward procedure to permit creditors, including unsophisticated creditors, to obtain a chapter 11 distribution without undue costs and delay, thus eliminating the ordinary hurdles that individual litigants face in an ordinary lawsuit. *See In re Musicland*, 362 B.R. at 650–51 n.8 ("Bankruptcy provides the same procedural advantages as a class action. In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice.").

The Bankruptcy proof of claim process is intended to be more efficient and less costly precisely by having the estate and claimants address smaller claims that make sense to settle without the need for lawyers or litigation. *See In re Ephedra*, 329 B.R at 5. If the Court were to grant this Motion, the primary beneficiaries would not be putative class members, but rather Movant's attorneys, to the detriment of all other stakeholders in the Debtors' Chapter 11 Cases. *See In re Bally*, 402 B.R. at 621 n.4 ("Were [Movants] to prevail, their attorneys could seek payment of their fees from the Debtors' estates, necessarily diminishing the already limited distributions available to other creditors."); *In re Ephedra*, 329 B.R. at 10 ("The only real beneficiaries of applying Rule 23 would be the lawyers representing the class."); *In re Jamesway Corp.*, 1997 WL 327105, at *6 (effectively extending the bar date would only benefit (i) "putative class members who failed to exercise vigilance" and (ii) "the pocketbooks of their lawyers, who would obviously seek a contingency fee from all putative class members who failed to opt out of the class." (citing *In re Sacred Heart*, 177 B.R. at 24)).

The Court should deny the Motion because the claims administration process is superior to class actions and allowing Movant's proof of claim to proceed as a class would prejudice the Debtors, as well as other parties in interest, and adversely affect the administration of these estates.

## II. MOVANT DOES NOT ADDRESS THE BASIC REQUIREMENTS OF CIVIL RULE 23

Movant's failure to satisfy any of the *Musicland* factors alone warrants denial of the Motion. Movant does not argue that the requirements of Civil Rule 23 could be satisfied here. Given Movant's failure to address the Civil Rule 23 factors in the Motion and the further delay that would be required in doing so at a later date, the Motion should be denied on this separate ground alone.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that Movant's Motion under Bankruptcy Rule 7023 be denied and that the Court grant the Debtors such other and further relief as is just and proper.

Dated: January 14, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: _____/s/ Richard W. Slack_____
       Richard W. Slack

*Attorneys for Debtors
and Debtors in Possession*