WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF CHRISTINA PULLO (I) REGARDING IMPLEMENTATION OF THE DEBTORS' NOTICE PROCEDURES AND (II) IN SUPPORT OF THE DEBTORS' OBJECTION TO SECURITIES LEAD PLAINTIFF'S MOTION TO APPLY BANKRUPTCY RULE 7023 TO PROOF OF CLAIM**<br><br>Related Docket. Nos.: 5042.<br>Date: January 29, 2020<br>Time: 10:00 am (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

Pursuant to 28 U.S.C. § 1746, I, Christina Pullo, hereby declare as follows under penalty of perjury:

## I. INTRODUCTION

1. I am Vice President of the Global Corporate Actions Department of Prime Clerk LLC ("**Prime Clerk**"), the Debtors' court-appointed claims and noticing agent in these chapter 11 cases. Except as otherwise noted, this Declaration is based upon my personal knowledge of the matters set forth herein, my review of relevant documents and information and my prior experience in bankruptcy and class action noticing in the bankruptcy context. If called and sworn as a witness, I could and would testify competently thereto as follows.

2. I submit this Declaration (i) to provide the Court with a report regarding the successful and timely implementation of the Debtors' robust multi-faceted plan and procedures for providing notice of the Bar Date and the procedures for filing proofs of claims to known and unknown claimants in the Debtors' Chapter 11 Cases, including holders of the Debtors' securities (the "**Notice Procedures**"), and (ii) in support of the Debtors' objection, filed contemporaneously herewith, to the *Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* [Docket No. 5042]. In accordance with the Bar Date Order, the Debtors commenced implementation of their Notice Procedures on July 1, 2019 and continued their efforts through the Court-approved Bar Date of October 21, 2019 at 5:00 p.m. Pacific Time.

## II. NOTICE EXPERTISE AND QUALIFICATIONS

3. I have more than ten (10) years of experience in the field of noticing and soliciting holders of public securities, and administering corporate events targeting holders of public securities. My practice focuses on assisting clients with complex claims and securities noticing and balloting, pre-packaged plan solicitations, out-of-court restructurings and similar corporate events, such as rights offerings, tender offers and treatment elections. I have supervised and coordinated bankruptcy plan and other distributions to public and private securities, and have certified official ballot results in support of chapter 11 plans.

4. My curriculum vitae is attached as Exhibit A.

### III. SUMMARY OF THE DEBTORS' NOTICE PROCEDURES FOR SECURITIES HOLDERS

5. As set forth in the Declaration of Benjamin P.D. Schrag, the Standard Bar Date Notice was served on all record holders of the Debtors' securities based on a "**Record Date**" of July 1, 2019. In addition, Debtors served approximately 111,000 beneficial holders of the Debtors' equity and 11,300 beneficial noteholders, among others.

6. Prime Clerk followed customary procedures for the noticing of public securities holders in connection with service of chapter 11 bar date notices. These customary procedures reflect the inability of companies to know and/or identify the ultimate beneficial holders of their public securities due to the confidential nature of beneficial holder identities and the complex chain of intermediary entities through which public securities are held. Generally, beneficial holders hold their public securities through banks, brokers, dealers, and other financial institutions ("**Nominees**"). The Nominees hold the securities in "street name" on behalf of such beneficial holders (as well as other brokerage institutions that hold them on behalf of underlying beneficial holders). As a general matter, beneficial holders' identities are held confidentially by such Nominees, and there may be multiple levels of ownership, including several Nominees, between the direct holder of record and the ultimate beneficial holders, which further adds complexity to the noticing process. Throughout the noticing process, the names and addresses of the beneficial holders remain unknown to the Debtors. Stated differently, Debtors do not have information in their possession that allows them to know the identities of beneficial owners.

7. Accordingly, Prime Clerk provided notice to all known holders—the record holders—of Debtors' securities based on the Record Date.

8. Prime Clerk followed customary procedures for the direct noticing of registered holders of the Debtors' equity securities.[1]

9. Service on registered equity holders is ordinarily effectuated based on a register provided by the transfer agent, an institution that maintains the records of registered holders of the

---

[1] Based on Prime Clerk's understanding, DTC is the only registered holder of the Debtors' debt securities and service to DTC is effectuated through the noticing process to beneficial holders described below.

Debtor's equity securities. As the identities of the registered holders can be known, service is made directly on parties appearing on the register using the contact information contained therein as provided by the transfer agent, which usually includes each registered holder's name and address.

10. In addition, Prime Clerk printed approximately 55,000 copies of the Bar Date Notice and provided them to a vendor that the Debtors have previously utilized to distribute information regarding the Debtors' equity securities to registered holders. Such vendor received the registered holder list from the transfer agent and, upon information and belief, on or around July 26, 2019, the vendor mailed such notice to approximately 55,000 directly registered holders.

11. Prime Clerk then provided notice of the Bar Date to absent or beneficial holders of the Debtors' public securities by utilizing information obtained from (i) The Depository Trust Company ("**DTC**"), which is the depository through which all of the Debtors' public securities are held, and (ii) Broadridge Financial Solutions ("**Broadridge**"), which is the primary mailing agent contracted by at least 90% of Nominees to distribute materials to beneficial holders on behalf of such Nominees. Specifically, Prime Clerk utilized security position reports obtained from DTC that list the Nominees directly holding the relevant securities through DTC on behalf of one or more beneficial holders as of certain record dates ("**DTC Participants**").

12. On or around June 27, 2019, Prime Clerk set the Record Date with Broadridge, which initiated the process for Broadridge to reach out to its client Nominees (which include both the direct DTC Participants and any applicable underlying Nominees) for beneficial holder information needed by Broadridge to distribute the Standard Bar Date Notice to such beneficial holders.

13. On or around July 9, 2019, Prime Clerk delivered (i) the requisite number of paper copies of the Standard Bar Date notice by next day business service to Broadridge, (ii) a courtesy copy of the Standard Bar Date Notice by overnight courier directly to all Nominees that utilize Broadridge for their information and internal records, and (iii) one or more copies of the notice by overnight courier to other mailing agents and the Nominees that otherwise do not utilize Broadridge's noticing services (with instructions, including notification of the Record Date, and contact information for the Nominees to request from Prime Clerk additional copies of the materials, as needed, to fulfill such other mailing

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

agents' or Nominees' obligation to notify their underlying beneficial holders of the Bar Date). Any requests for printed or electronic copies of the Standard Bar Date Notice by other Nominees or mailing agents were promptly responded to and fulfilled by Prime Clerk.

14. Based on my experience, it takes approximately five (5) to seven (7) business days for Broadridge, the Nominees or other mailing agents to send notices to the beneficial holders of public securities. Unfortunately, Debtors have no ability to ensure that these notices are actually delivered to these unknown holders as it must rely on the Nominees and other mailing agents to accurately send the materials to their customers.

15. In addition to the extensive paper copy service described above, Prime Clerk distributed the Standard Bar Date Notice via electronic mail to DTC, Broadridge, other mailing agents and certain major international depositories, including Euroclear, Clearstream and SIS Clear. In accordance with the customary procedures of these international depositories, Prime Clerk only sends materials to these international depositories via electronic mail. In turn, it is my understanding based on my experience that these international depositories solely distribute materials electronically to Nominees holding the Debtors' public securities through such depositories and their underlying beneficial holders. Moreover, the international depositories will not provide Prime Clerk or the Debtors with a listing of the Nominees holding the Debtors' public securities through such depositories due to strict confidentiality reasons. Accordingly, Prime Clerk does not know and is unable to directly contact Nominees holding through such international depositories.

16. Lastly, Prime Clerk directed DTC to post the Standard Bar Date Notice on DTC's legal electronic notification system in order to provide electronic notification to DTC Participants. In addition, Prime Clerk posted the Standard Bar Date Notice on the Debtors' restructuring website maintained by Prime Clerk.

17. This procedure is essentially the same procedure used when Prime Clerk distributes materials to and solicits votes from beneficial holders of public securities for a plan of reorganization or adjustment, and by Prime Clerk and other solicitation agents in general when soliciting votes with respect to non-bankruptcy events, such as proxy votes or other corporate action events (although many

Nominees opt to handle corporate action events, such as rights offerings, exchange offers or tender offers directly with their beneficial holders, rather than utilize the services of Broadridge or other mailing agents).

### IV.   FORMER SECURITIES HOLDERS

18.     As explained above, notice of the Bar Date was provided to beneficial and registered holders of the Debtors' securities based on the Record Date, which is consistent with typical bar date notice procedures.  In my experience, including in numerous bankruptcy cases involving potential securities class action litigations, it is not customary to provide notice to former holders of debtors' securities in bankruptcy cases that were not holders as of a single record date used for mailing purposes to then-current holders, and I am not aware of any instances where notice was effectuated to former holders utilizing a potential securities class date range.

19.     To the best of my knowledge, providing notice to former securities holders would be time intensive and impossible to complete on an accurate and thorough basis.  Moreover, in my experience, Broadridge has declined to process such notices in the bankruptcy context in the rare instance that Prime Clerk has requested to distribute bankruptcy notices to beneficial holders holding equity securities over a certain period of time.  Consequently, providing such notice would instead require an active outreach campaign to Nominees and such Nominees either voluntarily providing beneficial holder information to Prime Clerk or coordinating distribution of such notice (which voluntary participation is subject to each  Nominee's unique internal practices regarding class actions and confidential beneficial holder records management).  There would be no reliable way to verify whether such notice had been completed accurately and thoroughly by each Nominee, who often do not respond to such requests.  Such a process would require a significantly longer period of time— likely months—to compile all of the relevant information.

20.     Based on my experience, it is my belief that it would not be possible to accurately and comprehensively determine which holders of the Debtors' securities during a specified class period received the Standard Bar Date Notice.  Any such analysis would depend on voluntary information that

Nominees may or may not provide, and in my experience, Nominees commonly refuse to provide such information.

21. In my experience, the Nominees as of the Record Date would be unlikely to materially differ from Nominees who held the Debtors' securities during the class period proposed by the Securities Lead Plaintiffs. It is therefore likely that the Nominees holding securities during the proposed class period received the Standard Bar Date Notice by continuing to hold such securities on the Record Date. Moreover, Prime Clerk did not limit service of the Standard Bar Date Notice to only Nominees appearing on the applicable security position reports utilized to effectuate service, but also distributed the Standard Bar Date Notice to all Nominees utilizing information contained in Prime Clerk's extensive proprietary database. Additionally, DTC, which is the ultimate record holder of the Debtors' securities above the Nominees, has remained the constant holder of record during the entire class period.

## V. CONCLUSION

22. In my opinion, based on my experience, the notice provided to holders of the Debtors' securities complied with customary procedure for noticing securities holders in bankruptcy, including in situations where there is a pending securities action involving a potential class.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on January 13, 2020, in New York, New York.

_____
Christina Pullo

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119