Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:     628.208.6434
Facsimile:     310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.442.8875
Facsimile:     310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for the Official Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 (Lead Case)<br>(Jointly Administered) |
| **- and -** | |
| **PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.** | **OPPOSITION OF OFFICIAL COMMITTEE OF TORT CLAIMANTS' TO SECURITIES LEAD PLAINTIFF'S MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS PROOF OF CLAIM (Dkt. No. 5042)** |
| □ Affects PG&E Corporation<br>□ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date:          January 29, 2020<br>Time:          10:00 a.m.<br>Before:       Hon. Dennis Montali<br>United States Bankruptcy Court<br>Courtroom 17, 16th Fl.<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

(sidebar) BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT .................................................................................................. 2

    A.    The Securities Claims, at Their Core, Are Derivative Claims Owned by the Estates ........................................................................................................... 2

    B.    Derivative D&O Claims Have Been Assigned to the Fire Victim Trust, Which Has Priority ..................................................................................................... 7

    C.    The Requested Relief Requires a Finding that the TAC Pleads Direct Claims ...... 8

    D.    Even if the Securities Action Asserted Direct Claims, They Are Subordinated..... 9

    E.    The Motion Fails to Satisfy the Rule 23 and *Musicland* Standards ..................... 13

        1.    Rule 23 and the *Musicland* Standards ............................................. 13

        2.    The Motion Fails to Satisfy the First *Musicland* Factor, as It Precedes Class Certification .............................................................. 14

        3.    The Motion Fails to Satisfy the Second *Musicland* Factor, as the Debtors' Notice Program Was Sufficient ................................... 17

        4.    The Motion Fails to Satisfy the Third *Musicland* Factor, as Class Certification Would Adversely Affect Administration of these Bankruptcy Cases .......................................................................... 18

III. CONCLUSION ............................................................................................. 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Broadcasting Systems, Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*,
    240 F.3d 823 (9th Cir. 2001).................................................................................. 9, 10

*In re American Reserve Corp.*,
    840 F.2d 487 (7th Cir. 1988) .................................................................................. 13

*In re Associated Cmty. Servs.*,
    520 B.R. 650 (Bankr. E.D. Mich. 2014) ............................................................... 16

*Bader v. Anderson*,
    179 Cal. App. 4th 775 (2009)................................................................................ 7, 8

*Bailey v. Jamesway Corp. (In re Jamesway Corp.)*,
    1997 Bankr. LEXIS 825, 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997)..................... 15

*In re Bally Total Fitness of Greater N. Y.*,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009) *aff'd* 411 B.R. 142 (S.D.N.Y. 2009) .................. 13, 19

*In re Casimiro*,
    2007 Bankr. LEXIS 1926 (Bankr. E.D. Cal. May 31, 2007)................................. 16

*In re Chaparral Energy, Inc.*,
    571 B.R. 642 (Bankr. D. Del. 2017) ..................................................................... 14

*In re Computer Learning Centers, Inc.*,
    344 B.R. 79 (Bankr. E.D. Va. 2006)............................................................. 13, 18, 20

*Cottonwood P'ship, L.L.P. v. Kivisto (In re SemCrude L.P.)*,
    2012 U.S. Dist. LEXIS 163236, 2012 WL 5554819 (D. Del. November 15,
    2012) ...................................................................................................................... 12

*In re Craft*,
    321 B.R. 189 (Bankr. N.D. Tex. 2005) ...................................................... 13, 15, 18

*In re Enron Corp.*,
    341 B.R. 141 (Bankr. S.D.N.Y. 2006) .................................................................. 10

*In re Ephedra Prods. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) 329 B.R. ..................................................... 13, 18, 19, 20

*Federal Land Bank v. Stiles*,
    700 F. Supp. 1060 (D. Mont. 1988) ....................................................................... 3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Fisher v. Apostolou,*
  155 F.3d 876 (7th Cir. 1998)............................................................................ 12

*Fox v. Picard (In re Madoff),*
  848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd Marshall v. Picard (In re Bernard
  L. Madoff Inv. Secs. LLC),* 740 F.3d 81 (2d Cir. 2014) ...................................... 3, 12

*Gagnon Co., Inc. v. Nevada Desert Inn, Inc.,*
  45 Cal.2d 448 (1955) ................................................................................................ 3

*Geer v. Cox,*
  242 F.Supp. 2d 1009 (D. Kan. 2003) ........................................................................ 3

*Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.),*
  439 B.R. 652 (E.D. Va., Oct. 29, 2010) ................................................................. 13

*In re Granite Partners,*
  L.P., 208 B.R. 332 (Bankr. S.D.N.Y. 1997) ......................................................... 10

*In re Ionosphere Clubs, Inc.,*
  17 F.3d 600 (2d Cir. 1994).......................................................................................... 8

*J.I. Case Co. v. Borak,*
  377 U.S. 426, 84 S. Ct. 1555, 12 L. Ed. 2d 423 (1964) .......................................... 4

*Jackson v. Fischer,*
  2013 U.S. Dist. LEXIS 179233, 2013 WL 6732872 (N.D. Cal. December 20,
  2013) ..................................................................................................................... 3, 6

*In re Jasmine,*
  Ltd., 258 B.R. 119 (D. N.J. 1999)........................................................................... 11

*Jones v. H. F. Ahmanson & Co.,*
  1 Cal.3d 93 (1969) ............................................................................................ 3, 4, 5

*Klopstock v. Superior Court,*
  17 Cal.2d 13 (1941) ................................................................................................... 8

*LaSala v. Bordier et Cie,*
  519 F.3d 121 (3d Cir. 2008)...................................................................................... 7

*Liquidating Trust Comm. of the Del Biaggio Liquidating Trust v. Freeman (In re
  Del Biaggio),*
  834 F.3d 1003 (9th Cir. 2016)................................................................................... 9

*Louisiana World Exposition, Inc. v. Fed. Insurance Co.(In re Louisiana World
  Exposition, Inc.),*
  832 F.2d 1391 (5th Cir. 1987) ................................................................................ 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Lucas v. Dynergy Inc. (In re Dynegy Inc.)*,
    2013 U.S. Dist. LEXIS 78479, 2013 WL 2413482 (S.D.N.Y. June 4, 2013) ....................... 19

*Meglolia v. Maxwell*,
    293 B. R. 443 (N. D. Ill. 2003) ............................................................................................ 12

*Metro. Inv. Sec., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.)*,
    325 B.R. 851 (Bankr. E.D. Wash. 2005) ......................................................................... 11, 12

*Mieuli v. DeBartolo*,
    2001 U.S. Dist. LEXIS 22519, 2001 WL 777091 (N.D. Cal. May 7, 2001) ......................... 6

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ......................................................................... *passim*

*Neathery v. Rench*,
    2010 U.S. Dist. LEXIS 71192, 2010 WL 2803984 (S.D. Ill. July 15, 2010) ......................... 7

*Nelson v. Anderson*,
    72 Cal. App. 4th 111 (1999) ................................................................................................ 5

*New York City Employees' Ret. Sys. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010) ............................................................................................ 4

*Orange County Nursery, Inc. v. Minority Voting Trust (In re Orange County Nursery Inc.)*,
    523 B.R. 692 (C.D. Cal. 2014) ........................................................................................... 9

*Pareto v. FDIC*,
    139 F.3d 696 (9th Cir. 1998) ..................................................................................... 5, 6, 7

*Pensco Trust Co. v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*,
    782 F.3d 492 (9th Cir. 2015) .............................................................................................. 9

*PHP Healthcare Corp. v. HIP Foundation, Inc. (In re PHP Healthcare Corp.)*,
    1999 Bankr. LEXIS 2047 (Bankr. D. Del. March 31, 1999) ............................................... 11

*In re Quick Cash, Inc.*,
    2015 Bankr. LEXIS 3852 (Bankr. D. N.M. November 10, 2015) ......................................... 20

*Rodriguez v. Tarragon Corp. (In re Tarragon Corp.)*,
    2010 Bankr. LEXIS 3410 (Bankr. D. N.J. September 24, 2010) ......................................... 17

*In re Sacred Heart Hosp.*,
    182 B.R. 413 (Bankr. E.D. Pa. 1995) ................................................................................ 11

*In re Sacred Heart of Norristown*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ............................................................................ 16, 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

*Sax v. World Wide Press, Inc.*,
   809 F.2d 610 (9th Cir. 1986) ................................................................ 2, 3, 7

*Schuster v. Gardner*,
   127 Cal.App.4th 305 (2005) ................................................................ 4, 5

*Smith v. Waste Mgmt. Inc.*,
   407 F.3d 381 (5th Cir. 2005) ................................................................ *passim*

*In re THC Financial Corp.*,
   679 F.2d 784 (9th Cir. 1982) (Bankruptcy Act) ................................ 10

*In re Thomson McKinnon Secs., Inc.*,
   150 Bankr. 98 (Bankr. S.D.N.Y. 1992) ................................................ *passim*

*In re VeriSign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. September 14, 2007) ...................... 4

*In re Verity Health Sys. of Cal.*,
   2019 Bankr. LEXIS 1818, 2019 WL 2461688 (Bankr. C.D. Cal. June 11,
   2019) ...................................................................................................... 14, 15, 17

*In re Vitek*,
   51 F.3d 530 (5th Cir. 1995) .................................................................. 11

*Wade v. Kirkland*,
   118 F.3d 667 (9th Cir. 1997) ................................................................ 14

*In re Wash. Mut., Inc. Sec.*,
   2010 U.S. Dist. LEXIS 152260, 2010 WL 11591389 (W.D. Wash. February
   17, 2010) ................................................................................................ 10

*Williams v. McGreevey (Touch Am. Holdings, Inc.)*,
   401 B.R. 107 (Bankr. D. Del. 2009) .................................................... 7

*Woods v. Google LLC*,
   2018 U.S. Dist. LEXIS 143879, 2018 WL 4030570 (N.D. Cal. August 23,
   2018) ...................................................................................................... 14

*In re Woodward & Lothrop Holdings, Inc.*,
   205 B.R. 365 (Bankr. S.D.N.Y. 1997) ................................................ 15, 18

**Statutes**

11 U.S.C. § 105(a) ........................................................................................ 15

11 U.S.C. § 502(b)(9) ................................................................................... 15

11 U.S.C. § 510(b) ........................................................................... 1, 9, 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

**Rules**

Fed. R. Bankr. P. 2002 ........................................................................................... 15

Fed. R. Bankr. P. 3003(c)(3) ................................................................................. 15

Fed. R. Bankr. P. 5005 ........................................................................................... 15

Fed. R. Bankr. P. 7023 ........................................................................................ *passim*

Fed. R. Bankr. P. 7023.1 ...................................................................................... 8, 9

Fed. R. Bankr. P. 7023.1(b) ...................................................................................... 9

Fed. R. Bankr. P. 9007 ........................................................................................... 15

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 23(c)(1)(A) ..................................................................................... 14

Fed. R. Civ. P. 23.1 .................................................................................................. 8

L.B.R. 3003-1 ......................................................................................................... 15

Rule 7023 and Rule 23 .............................................................................................. 9

**Other Authorities**

12 B W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 5911 (rev.
    perm. ed. 1984) .................................................................................................. 3

*Cal. Practice Guide: Corporations*, ¶ 6:604 ........................................................... 4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Official Tort Claimants' Committee ("TCC") hereby files this opposition to the motion [Dkt. 5042] (the "Motion") filed by the purported Securities Lead Plaintiffs ("Movants") to apply Bankruptcy Rule 7023 to a class proof of claim asserted on behalf of a class of shareholders (the "Putative Class") of PG&E Corporation and Pacific Gas & Electric Company (collectively, the "Debtors").

## I.

## <u>INTRODUCTION</u>

Under the terms of the Restructuring Support Agreement ("RSA") between the TCC and the Debtors, and the Debtors' related draft plan of reorganization (the "Plan"), claims against the Debtors' former directors and officers are being assigned to the future Fire Victim Trust as part of the consideration that will fund payments to fire victims. This assignment will include claims such as those alleging that the negligence and breaches of fiduciary duties of the Debtors' officers and directors caused substantial injury to the Debtors in the form of liabilities to injured fire victims and a reduction in the Debtors' corporate value.

The Motion seeking certification of the Putative Class concerns the same claims, which are property of the Debtors' estates, and assigned to the Fire Victim Trust.

Under unanimous California law, where the gravamen of a claim pursued by shareholders is injury to the corporation, or to the whole body of its stock, rather than discrete injury to individual holders of stock, the claim is a derivative claim that is property of the corporation. Such are the claims asserted by Movants in their District Court Action, styled *In re PG&E Corporation Securities Litigation*, Case No. 3:18-cv-03509-EJD (the "Securities Action"). Even if a direct claim could be found within Movants' pending complaint, such a claim would be subject to mandatory subordination under the Debtors' plan of reorganization and 11 U.S.C. § 510(b), to the level of other equity interests.

The law is simple and unambiguous. Claims such as the derivative claims pleaded in the Securities Action, and the D&O insurance policies that cover such claims, are property of the estates. Any recoveries on account of such claims must be received by or for the benefit of the Debtors. The Fire Victim Trust, as the Debtors' assignee of such claims, has a right to recover on

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

such claims that is superior to the subordinated claims of shareholders. The Motion should be denied because class certification would improperly permit a subordinated class to pursue for their own benefit claims that must be litigated for the benefit of a senior class.

Further, the Motion fails to satisfy the standards that apply to a Rule 23 motion in bankruptcy. The Motion has been filed before Movants have obtained class certification in the Securities Action. Yet even though it is premature by that standard, it is late-filed by bankruptcy standards, as it was filed seven weeks after the claims bar date expired, despite vigorous and contested proceedings concerning the Debtors' notice program. Movants received notice of all pleadings filed in connection with noticing procedures, had already appeared in these cases, and had filed pleadings, yet chose to remain silent on noticing procedures that were designed to reach their constituency. Movants' claims that the noticing procedures were insufficient to reach their Putative Class do not state grounds for class certification, particularly given their own silence while those noticing procedures were determined. The Motion does not satisfy the requirements for class certification in bankruptcy, and should be denied.

## II.

## ARGUMENT

### A.     The Securities Claims, at Their Core, Are Derivative Claims Owned by the Estates

Under the Restructuring Support Agreement (the "RSA") between the Debtors, the TCC, and Consenting Creditors [Dkt. 5038], the Debtors are assigning to the Fire Victim Trust claims against former officers and directors.

The Debtors have the authority to assign such claims to the Fire Victim Trust because claims against a debtor's directors and officers for damage to a corporation, including a loss of value that results in a drop in stock value, are derivative claims that are property of the debtor's estate. It is a general principle adopted across jurisdictions, including California and the Ninth Circuit, that a claim is derivative if the gravamen of the claim is damage to the corporation as a whole, and affects all stockholders in the same manner. *See Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613-14 (9th Cir. 1986) (shareholder claims for damage to corporate value were derivative claims, based on general rule that an action enforces a corporate right "if the gravamen of the complaint is injury to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders.") (*quoting* 12B W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 5911 (rev. perm. ed. 1984)); *Jones v. H. F. Ahmanson & Co.*, 1 Cal.3d 93, 106 (1969) ("the action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.") (*quoting Gagnon Co., Inc. v. Nevada Desert Inn, Inc.*, 45 Cal.2d 448, 453 (1955); *Jackson v. Fischer*, 2013 U.S. Dist. LEXIS 179233 *48, 2013 WL 6732872 (N.D. Cal. December 20, 2013) ("A suit must be maintained derivatively if the injury falls equally upon all stockholders"); *Federal Land Bank v. Stiles*, 700 F. Supp. 1060, 1066 (D. Mont. 1988) (following *Sax* to conclude that "Ordinarily, a shareholder may not bring a direct action for recovery of diminished stock value"); *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 481 (S.D.N.Y. 2012) ("Because the claims asserted in the Florida Actions are general claims common to all BLMIS investors that are substantively duplicative of the Trustee's fraudulent transfer action, the Bankruptcy Court correctly found that the claims asserted in the Florida Actions were the property of the estate."), *aff'd Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81 (2d Cir. 2014); *Geer v. Cox*, 242 F.Supp. 2d 1009, 1018 (D. Kan. 2003) (Delaware law) ("The gravamen of plaintiff's complaint is injury to the corporation … which must be asserted derivatively").

The Third Amended Complaint filed in the Securities Action (the "TAC")[1] purports to assert direct claims against the Debtors' directors and officers under the Securities Exchange Act of 1934. The ultimate damage described in the TAC, however, is damage to PG&E's corporate value due to devastating wildfires that were the result of "numerous and widespread violations of California safety regulations" and "PG&E's failure to comply with even minimal legal requirements." (TAC, ¶ 23). These violations, once allegedly discovered following devastating wildfires, lowered PG&E's overall value, and correspondingly lowered the value of all shareholders' interests, including the interests of Movants.

---

[1] A copy of the TAC is attached to the Declaration of David J. Richardson filed herewith as <u>Exhibit A</u>.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The TAC may cite to federal statutes as the basis for the pleaded claims, but citation to a statute within a pleading is not controlling as to its nature.  "A claim asserted under § 14(a) of the SEA may be brought either as a direct or a derivative claim," and whether that claim is "direct or derivative is governed by the law of the state of incorporation."  *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (*citing J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S. Ct. 1555, 12 L. Ed. 2d 423 (1964)); *see also In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1188 (N.D. Cal. September 14, 2007) (noting that "[a]ll plaintiffs' claims in the present action," including claims under Section 10(b) of the Securities Act alleging failure to disclose information in proxy statements, "are derivative" claims).

Because the Debtors are California corporations, California law determines whether the claims asserted by Movants are direct or derivative.  *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d at 1022.  California law confirms that where the true nature of such claims is injury to the corporation, which results in a decline in equity value, the claims are derivative claims that are owned by the company:

> Under California law, 'a shareholder cannot bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth). The corporation itself must bring such an action, or a derivative suit may be brought on the corporation's behalf.' …
>
> An action is derivative if 'the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' Shareholders may bring a derivative suit to, for example, enjoin or recover damages for breaches of fiduciary duty directors and officers owe the corporation. An individual cause of action exists only if damages to the shareholders were not incidental to damages to the corporation. Examples of direct shareholder actions include suits brought to compel the declaration of a dividend, or the payment of lawfully declared or mandatory dividends, or to enjoin a threatened ultra vires act or enforce shareholder voting rights.

*Schuster v. Gardner*, 127 Cal.App.4th 305, 313 (2005) (*quoting H. F. Ahmanson & Co.*, 1 Cal.3d at 106-07, and Friedman, *Cal. Practice Guide: Corporations*, ¶ 6:604, p. 6-128.2).  By contrast, "[a] cause of action is individual, not derivative, only where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origins in

circumstances independent of the plaintiff's status as a shareholder." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126-27 (1999).

The alleged damage to the Securities Plaintiffs in this case is "billions of dollars of economic value in the Company's stocks and bonds" (TAC, ¶ 7), just as the damage to shareholders in *Schuster* was "diminution in stock value" that "was incidental to the injury to" the corporation, and therefore a derivative claim. *Id.*, at 313. This is not a case where minority shareholders were denied rights by the majority shareholders, or where a Board of Directors deprived shareholders of a right to vote on a potential merger. This is an ordinary stock-drop case where negligence and breaches of fiduciary duty damaged the corporation's overall net worth. Where a shareholder's damages are "incidental" to damage to the company, "any recovery should go to the company." *Id.* at 314. The TAC filed in the Securities Action alleges that "all purchasers of PG&E securities during the Class Period suffered similar injury …" TAC, ¶ 461. The common nature of the shared injury is indicative of a derivative claim. *See Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("Pareto's claims were for injury to Barbary Coast itself, which ultimately reduced the value of the stock. In other words, the action was 'derivative, i.e., in the corporate right, [because] the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders.' ") (*quoting H. F. Ahmanson & Co., supra*).

The Securities Plaintiffs allege in their TAC that the Debtor's officers and directors misrepresented facts or failed to inform shareholders or the general public about facts that would have affected the price of the Debtors' stock, or affected investment decision. For example:

- "PG&E's above statement on May 31, 2017 gave investors a false impression that concealed safety risks would not imperil the Company's dividend, which is precisely what occurred on December 20, 2017" (TAC, ¶ 243);

- "On this news that PG&E would likely bear at least some responsibility for the fires, PG&E's stock dropped $4.65 per share …" (TAC, ¶ 330);

- "The article … continued to note that PG&E's share price decline occurred 'on concerns its power lines may have started the massive wildfires that have ravaged California recently.' The article also repeated market commentary that the decline

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

in PG&E's share price reflected investors' understanding that PG&E was financially responsible for the North Bay Fires" (TAC, ¶ 331);

- "Though PG&E had previously intertwined safety, fires, and its dividend (see ¶232), investors were shocked by this unexpected suspension of the dividends due to Defendants' intervening false reassurances of progress on safety and compliance with safety regulations" (TAC ¶ 341).

Merely styling allegations in the form "shareholders' understanding" does not create a direct right of action, where the injury was felt by all shareholders, and therefore by the corporations. *See Jackson v. Fischer*, 2013 U.S. Dist. LEXIS 179233 at *50-51, 2013 WL 6732872 (allegations that directors failed to report to "shareholders the material events impacting the companies, thereby concealing their mishandling of company assets" related to "mismanagement of corporate assets and to failure to comply with duties owed to the shareholders generally," and therefore any "claim must be asserted derivatively.").

The derivative nature of the claims pleaded in the TAC is determined by the "pivotal question" which asks "whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property." *Pareto*, 139 F.3d at 699. The loss experienced by the Securities Plaintiffs arose because they were told the same misstatements that were communicated to the CPUC and the general public, and therefore they were unable to sell their stock before the truth was known. This is a derivative claim under Ninth Circuit and California authority. *Pareto*, 139 F.3d at 699 ("If a corporation suffers a direct injury to the whole of its assets, any corresponding injury to the value of an individual stockholder's shares (assuming the stockholder suffers no truly independent injury), is merely incidental to, or an indirect result of, the direct injury to the corporation's assets. An action by stockholders for that injury must be brought derivatively if at all.").

Just like the shareholder plaintiffs in *Pareta*, the Securities Plaintiffs allege "an injury that fell on every stockholder, majority and minority alike, and fell on each on a per share basis," which is "clearly derivative." *Pareta,* 139 F.3d at 700. *See also Mieuli v. DeBartolo*, 2001 U.S. Dist. LEXIS 22519, 2001 WL 777091 (N.D. Cal. May 7, 2001) (following *Pareta* on test for derivative

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

claims, finding injury was to the partnership where claims were "based on alleged mismanagement, conversion and self-dealing."); *Bader v. Anderson*, 179 Cal. App. 4th 775, 788 (2009) ("In light of the directors' role in the operation of the business affairs of the corporation, where conduct, including mismanagement by corporate officers, causes damage to the corporation, it is the entity that must bring suit; the individual shareholder may not bring an action for indirect personal losses (i.e., decrease in stock value) sustained as a result of the overall harm to the entity."); *Smith v. Waste Mgmt. Inc.*, 407 F.3d 381, 385 (5th Cir. 2005) ("when a corporation, through its officers, misstates its financial condition, thereby causing a decline in the company's share price when the truth is revealed, the corporation itself has been injured."); *Neathery v. Rench*, 2010 U.S. Dist. LEXIS 71192 *10, 2010 WL 2803984 (S.D. Ill. July 15, 2010) ("The shareholder must show, however, that the fraudulent inducement caused more harm than just devaluation in order to bring an individual suit. This is because the devaluation of stock is an indirect injury to the shareholders caused by a direct injury to the corporation and thus is derivative in nature.") (internal citation to *Pareto*, *supra*, omitted).

Even if the alleged misstatements were intentional, the damage is still to the corporation, felt by all shareholders, and the resulting claim is derivative. *Sax*, 809 F.2d at 614 ("Even if the defendants depleted World Wide's assets with the sole purpose of decreasing the value of Sax's stock and destroying his return on his investment, the action would nonetheless be derivative"); *see also LaSala v. Bordier et Cie*, 519 F.3d 121, 129-30 (3d Cir. 2008) (When injury to the corporation is at issue, shareholders may not directly pursue a claim for aiding and abetting a breach of a fiduciary duty).

Thus, the Motion asks this Court to certify a class of shareholders to pursue derivative claims that are property of the Debtors' estates.

**B.**   **Derivative D&O Claims Have Been Assigned to the Fire Victim Trust, Which Has Priority**

Because the claims asserted in the Securities Action are derivative claims, any recovery that could be obtained from the defendants or their insurance policies must be paid to or for the benefit of the Debtors' estates. *Williams v. McGreevey (Touch Am. Holdings, Inc.)*, 401 B.R. 107, 121 fn.

26 (Bankr. D. Del. 2009) ("The alleged harm here - - loss of stock value - - is suffered by the corporation, and any recovery of that value should be for the benefit of the corporation."); *Bader v. Anderson*, 179 Cal. App. 4th at 789 ("[T]he corporation is the ultimate beneficiary of such a derivative suit …") (*quoting Klopstock v. Superior Court*, 17 Cal.2d 13, 16–17 (1941)).

The Debtors' right to recover such damages has been assigned by the Debtors' estates to the Fire Victim Trust under the RSA, subject to confirmation of the Debtors' proposed Plan of Reorganization. For this reason, any prosecution of the Securities Action by the Movants necessarily competes with the Fire Victim Trust for a recovery that must be paid in accordance with the terms of a confirmed Plan. And any request to accord class certification to all similarly situated equityholders presupposes a right of such equityholders to recover their damages <u>from</u> the Debtors, their directors and officers, or their respective insurers, when in fact their damages must be sought derivatively as a recovery <u>for the benefit of</u> the Debtors and their estates—assigned to the Fire Victim Trust. Class certification would improperly validate the incorrect claim that the Putative Class has a right to recover damages in their own right rather than derivatively on behalf of the estates.

Derivative claims may be prosecuted only once. Prosecution or settlement of these claims by the Fire Victim Trust will extinguish the same claims brought by Movants in the Securities Action. *In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 604 (2d Cir. 1994) (finding that the bankruptcy estate representative's settlement of derivative claims with directors and officers "extinguishes" the shareholders' similar claims). Such successful prosecution or settlement of the estate's derivative claims will maximize the value of such claims for the benefit of unsecured creditors whose claims are senior to the Putative Class, erasing any purpose that could be served by certification of the Putative Class.

## C.   <u>The Requested Relief Requires a Finding that the TAC Pleads Direct Claims</u>

The Motion seeks relief under Fed. R. Bankr. P. 7023, and corresponding F.R.C.P. 23. It does not request any relief under Fed. R. Bankr. P. 7023.1, nor corresponding F.R.C.P. 23.1. The former rules pertain to direct claims held by each member of the putative class, while the latter pertain to derivative claims. *See* F.R.C.P. 23 and 23.1.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

If this Court concludes that the claims pleaded in the TAC are derivative claims, then the Motion must be denied, as it was brought solely under Rule 7023 and Rule 23. The requirements for certification of a class under Rule 23.1 to pursue derivative claims are strict. The Complaint initiating the action "must be verified," among other requirements, including a statement describing with particularity all of the efforts taken to induce the corporation to pursue the action on the company's behalf. *See* Rule 23.1(b). Movants' TAC is not a verified complaint, does not state any efforts taken to induce the Debtors to pursue the stated claims, and does not state that the Movants are seeking derivative relief, even though the claims themselves state classic stock-drop derivative claims (as briefed above). Thus, the Motion and the TAC fail on their face to satisfy any requirements, or request for relief, for class certification under Rule 23.1.

Because the Motion is based solely upon Rule 23, and upon the assertion that the Movants' hold direct claims against the Debtors' estate, the relief requested by Movants requires a finding that such claims are direct rather than derivative. For all of the reasons briefed above, the claims pleaded in the TAC are classic derivative claims that are property of the Debtors' estates, and certification of a class under Rule 23 would be improper.

**D.**     <u>**Even if the Securities Action Asserted Direct Claims, They Are Subordinated**</u>

Even if the claims asserted in the TAC could be characterized as direct claims against the Debtors, rather than derivative claims brought on behalf of the Debtors, subordination of such claims to the same level as other equity interests is mandatory under Section 510(b). *See Liquidating Trust Comm. of the Del Biaggio Liquidating Trust v. Freeman (In re Del Biaggio)*, 834 F.3d 1003 (9th Cir. 2016) (applying broad definition to claims "arising from the purchase or sale of such a security" language in Section 510(b)); *American Broadcasting Systems, Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 829-31 (9th Cir. 2001) (claims for breach of agreement for sale of securities were subject to mandatory subordination to level of other equity interests, even if equity interest was never acquired); *Pensco Trust Co. v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*, 782 F.3d 492 (9th Cir. 2015) (following *Betacom*, claim for breach of contract arising from agreement for sale of securities was subordinated below unsecured claims by Section 510(b)); *Orange County Nursery, Inc. v. Minority Voting Trust (In re*

<br>

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Orange County Nursery Inc.)*, 523 B.R. 692 (C.D. Cal. 2014) (following *Betacom*, explaining that what matters is the "type of claim possessed," as opposed to the type of claimant); *In re Enron Corp.*, 341 B.R. 141, 159 (Bankr. S.D.N.Y. 2006) (claim brought under Securities Exchange Act of 1934 for retention of overvalued stock based on misrepresentations and fraud was subject to mandatory subordination).

This outcome is the same regardless of whether the Movants argue that their claims arise from the acquisition of overvalued stock, or the retention of overvalued stock based upon misrepresentations. *See In re Enron Corp.*, 341 B.R. at 157-58 ("The Claimants have not offered, nor has the Court discovered elsewhere, a cogent argument that would justifiably distinguish between fraudulent inducement and fraudulent retention claims for the purposes of section 510(b). As just suggested, these are functionally, even if not formally, identical claims that both arise in connection with the performance of the Debtor's stock.").

Such a rule is necessary to protect the interests of unsecured creditors, and uphold the intent of the absolute priority rule. *In re THC Financial Corp.*, 679 F.2d 784, 785-87 (9th Cir. 1982) (Bankruptcy Act) (claims of equityholders were subject to subordination as "required" by absolute priority rule); *In re Granite Partners*, L.P., 208 B.R. 332 (Bankr. S.D.N.Y. 1997) (following *THC Financial*, subordinating shareholder claims that debtors fraud induced them to retain overvalued equity interests, as an "contrary ruling would eviscerate the absolute priority rule, and shift to creditors the investment risk assumed by the [equityholders]").

Even if this Court were to find that the Movants have alleged direct claims against the Debtors' directors and officers for actions and omissions that specifically targeted and injured the stock of the Putative Class, those direct claims must be subordinated. Yet the primary recovery that is likely to be realized from such claims will be insurance proceeds that are property of the estate—the same insurance proceeds that should be paid in satisfaction of claims of unsecured creditors such as fire victims before reaching subordinated equityholders.

Most courts concur that a debtor's D&O insurance policies, and the proceeds to be recovered therefrom, are property of a debtor's estate, just like the derivative claims that give rise to such a recovery of damages. *See In re Wash. Mut., Inc. Sec.*, 2010 U.S. Dist. LEXIS 152260

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*45, 2010 WL 11591389 (W.D. Wash. February 17, 2010) (policies and proceeds of D&O policies are property of debtor's estate); *Metro. Inv. Sec., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.)*, 325 B.R. 851, 857 (Bankr. E.D. Wash. 2005) (debtor's D&O policies and proceeds are property of the estate, enjoining litigation against the proceeds); *PHP Healthcare Corp. v. HIP Foundation, Inc. (In re PHP Healthcare Corp.)*, 1999 Bankr. LEXIS 2047 *5-8 (Bankr. D. Del. March 31, 1999) (finding that policy that provides "entity coverage in addition to director and officer coverage" is property of the estate); *In re Vitek*, 51 F.3d 530 (5th Cir. 1995) (where "a debtor corporation's liability policies provide the debtor and thus the estate with direct coverage against third party claims, virtually every court to have considered the issue has concluded that the policies -- and clearly the proceeds of those policies -- are part of debtor's bankruptcy estate, irrespective of whether those policies also provide liability coverage for the debtor's directors and officers."); *Louisiana World Exposition, Inc. v. Fed. Insurance Co.(In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1399-1400 (5th Cir. 1987) (where policies provide "coverage for judgments against or losses of the bankrupt corporation itself … the estate owns not only the policies, but also the proceeds designated to cover corporate losses or liability"); *In re Sacred Heart Hosp.*, 182 B.R. 413, 419-20 (Bankr. E.D. Pa. 1995) ("the Debtor's own liability exposure is also covered by the D&O Policy … the Debtor is indeed an insured and has a sufficient interest in the Proceeds as a whole to bring them into the estate").

Even where a debtor is not named as an Insured, the existence of a duty to indemnify insured officers and directors is sufficient to bring the proceeds of the policies into the estate. *In re Jasmine*, Ltd., 258 B.R. 119, 128 (D. N.J. 1999) ("Jasmine had an indemnification interest in the proceeds, and the proceeds are property of the estate and subject to the authority of the trustee under these circumstances"); *In re Sacred Heart Hosp.*, 182 B.R. at 420 ("an indemnification interest in proceeds is sufficient to bring those proceeds into the estate"); *In re PHP,* 1999 Bankr. LEXIS 2047 *5-6 (obligation to indemnify officers and directs supports finding that policy proceeds are property of estate).

Although this Opposition brief does not request injunctive relief at this time, and the Motion would not be the proper proceeding in which such relief would be considered, its should be noted

that the TCC or future Fire Victim Trust has grounds to seek injunctive relief to bar the Securities Action from proceeding in any manner that could deplete the Debtors' D&O insurance policies unless and until the Fire Victim Trust has recovered all funds that it may obtain from successful prosecution or settlement of its assigned D&O claims. *See Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 488 (S.D.N.Y. 2012) (affirming injunction of derivative investor litigation that was duplicative of claims belonging to trustee), *aff'd Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81 (2d Cir. 2014); *Cottonwood P'ship, L.L.P. v. Kivisto (In re SemCrude L.P.)*, 2012 U.S. Dist. LEXIS 163236 *22, 2012 WL 5554819 (D. Del. November 15, 2012) (confirming court's jurisdiction to consider motion to enjoin shareholder claims against debtor's accounting firm where injuries were to the corporation, and claims belonged to bankruptcy estate); *In re Metro. Mortg. & Sec. Co.,* 325 B.R. at 857 (enjoining litigation to recover from debtor's D&O policy proceeds); *Meglolia v. Maxwell*, 293 B. R. 443, 449 (N. D. Ill. 2003) (enjoining shareholders to permit trustee to first pursue derivative claims and recover from insurance policies). This would be the proper outcome even if this Court were to find that the claims pleaded in the TAC are direct claims. *See Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) ("In limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently 'related to' her own work on behalf of the estate."). Where, as here, the purpose of the Debtors' assignment of derivative D&O claims is to provide value to a class of unsecured creditors under a plan of reorganization, the absolute priority rule would compel the enjoining of shareholder litigation that seeks to recover the same insurance proceeds.

The Motion demonstrates that the Movants seek to form a Putative Class that will assert classwide derivative claims against the Debtors' estates, covered by insurance that is property of the Debtors' estates, and in competition with identical claims assigned to the Fire Victim Trust. Even if the Motion were granted on the understanding that any Putative Class would be subordinate to the claims of fire victims, the resulting competition for insurance proceeds would harm unsecured creditors and improperly benefit equityholders, in violation of the absolute priority rule.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Motion seeks relief that is contrary to the terms of the Debtor's draft plan of reorganization, contrary to federal bankruptcy law, and contrary to California law. It should be denied.

**E.      The Motion Fails to Satisfy the Rule 23 and *Musicland* Standards**

Even if the claims asserted in the TAC could be deemed direct, and even if such shareholder litigation did not compete with the interests of unsecured creditors in violation of the absolute priority rule, the Motion is untimely and fails to satisfy the standards that apply to a motion for class certification in bankruptcy.

**1.      Rule 23 and the *Musicland* Standards**

The authority to permit a class proof of claim in a bankruptcy case falls within the discretion of the court, and there is no right to such certification. *See Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, 439 B.R. 652, 658 fn. 6 (E.D. Va., Oct. 29, 2010) ("Hence, it is well within the discretion of the bankruptcy judge to determine whether or not to apply Rule 7023."); *In re Computer Learning Centers, Inc.*, 344 B.R. 79, 85-86 (Bankr. E.D. Va. 2006) ("although class proofs of claim may be permitted, they are not a matter of right."); *In re Bally Total Fitness of Greater N. Y.*, 402 B.R. 616, 619 (Bankr. S.D.N.Y. 2009) ("There is no absolute right to file a class proof of claim under the Bankruptcy Code") *aff'd* 411 B.R. 142, 145 (S.D.N.Y. 2009).

Class certification in bankruptcy does not parallel the process in ordinary civil litigation. Rather, "bankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and … class certification may be 'less desirable in bankruptcy than in ordinary civil litigation.'" *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) (*quoting In re American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988)). One court has held that, in order to address "concerns peculiar to bankruptcy law" that are raised by a Rule 23 motion filed before class certification in the underlying action, a court should consider "prejudice to the debtor or its other creditors, prejudice to putative class members, efficient estate administration, the conduct in the bankruptcy case of the putative class representatives, and the status of proceedings in other courts." *In re Craft*, 321 B.R. 189, 198-99 (Bankr. N.D. Tex. 2005).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Courts have since developed a three-factor framework to guide the exercise of this discretion:

> 1) whether the class was certified pre-petition;
>
> 2) whether the members of the putative class received notice of the bar date; and
>
> 3) whether class certification will adversely affect the administration of the estate.

*In re Verity Health Sys. of Cal.*, 2019 Bankr. LEXIS 1818 *23, 2019 WL 2461688 (Bankr. C.D. Cal. June 11, 2019) (*quoting In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017). These factors are often referred to as the *Musicland* factors, derived from the case *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007), and they are widely applied by courts.

### 2. The Motion Fails to Satisfy the First *Musicland* Factor, as It Precedes Class Certification

The Motion fails to satisfy the first *Musicland* factor. Movants filed the Securities Action eighteen months ago, but they have neither sought nor obtained class certification in the District Court, even though Rule 23 requires that a class action determination must be made at "an early practicable time." *See* Fed. R. Civ. P. 23(c)(1)(A).

Movants claim in the Motion that it "was impossible" to seek certification before the District Court because a motion to dismiss is pending. Motion at p. 17:14-15. But the Ninth Circuit has held the opposite, holding that while "in some cases, it may be appropriate in the interest of judicial economy to resolve a motion for summary judgment or motion to dismiss prior to ruling on class certification," the District Court "should decide the class certification motion before proceeding further." *Wade v. Kirkland*, 118 F.3d 667, 671 (9th Cir. 1997); *Woods v. Google LLC*, 2018 U.S. Dist. LEXIS 143879 *32, 2018 WL 4030570 (N.D. Cal. August 23, 2018) (following Wade, and noting "courts routinely hear class certification motions first"). Even if a pending motion to dismiss in the District Court somehow prevented Movants from seeking class certification in that court, it did not prevent them from seeking certification in this Court, as demonstrated by the simple fact

that they have now filed their Motion in this Court while the motion to dismiss remains pending in the Securities Action.

Movants waited until after the passage of the Claims Bar Date to file their first class-certification Motion—in this Court rather than in District Court—at a time when the Debtors are ensconced in plan negotiations and attempting to address a strict legislative deadline. Such conduct favors denial of the Motion. *In re Verity Health Sys. of Cal.*, 2019 Bankr. LEXIS 1818 at *23 ("The putative class was not certified prepetition, so the first *Musicland* factors weighs against applying Civil Rule 23 to the claims administration process"); *In re Craft*, 321 B.R. at 191 and 199 (denying Rule 7023 motion filed by claimants without prior class certification, and filed while debtor was busily "negotiating with various parties in an effort to formulate a plan or plans of reorganization").

Delay is not a minor issue, particularly in a case such as these which are being driven by an unforgiving legislated deadline. *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997) (In bankruptcy, a "delay may impact the entire case – not just the affected claim – and provides grounds for a bankruptcy court to refuse to make Rule 23 applicable to the claims process. As the case in chief moves toward its conclusion, it is more likely that a delay in resolving the certification issue will interfere with the administration of the estate.") (*citing In re Thomson McKinnon Secs., Inc.*, 150 Bankr. 98, 101 (Bankr. S.D.N.Y. 1992)); *see also Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, 1997 Bankr. LEXIS 825, 1997 WL 327105, *10 (Bankr. S.D.N.Y. June 12, 1997) (noting that in the absence of pre-petition certification, class members lacked "reasonable expectation" that they did not have to comply with the bar date).

There is no cause to justify the lateness of the Motion, nor the failure to seek prior class certification in the Securities Action. Counsel for Movants filed an initial notice of appearance in these cases on March 29, 2019 [Dkt. No. 1126]. Movants filed their first substantive brief on April 17, 2019 [Dkt. No. 1479] in connection with a fee application filed counsel for the Debtors' insider defendants in the Securities Action. Movants were active participants in these cases, and on notice of all pleadings filed, by April 2019.

On May 1, 2019, the Debtors filed their Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Order (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors [Dkt. No. 1784] (the "Bar Date Motion"). The Bar Date Motion, among other relief requested, asked this Court to establish a bar date of October 21, 2019 (the "Claims Bar Date"), and to establish rigorous notice procedures to ensure that creditors received notice of the Claims Bar Date.

At least sixteen objections, joinders, or other such pleadings were filed in response to the Bar Date Motion. *See* Dkt. Nos. 2043, 2238, 2239, 2240, 2242, 2248, 2256, 2306, 2307, 2308, 2316, 2321, 2324, 2326, 2346, and 2453. Movants did not file any response to the Bar Date Motion, and took no position on the sufficiency of the Debtors' proposed noticing program to reach the members of their purported constituency. Movants were aware of the Claims Bar Date from the moment it was established by this Court. They were aware of the Debtors' notice program the moment it was approved, and while it was debated. They knew that their putative class had not yet been certified in the Securities Action. And they waited until now, after passage of the Claims Bar Date, as the case is hurtling towards plan confirmation, to seek certification of a class proof of claim. Movants have been dilatory in filing the Motion in this Court. *See In re Associated Cmty. Servs.*, 520 B.R. 650, 658 (Bankr. E.D. Mich. 2014) ("The time to get class certification was before filing the proof of claim on behalf of the putative class. And there was ample time for him to do so. A timely filed motion could have been heard, responded to and adjudicated by the Court in sufficient time to inform Pepper as to whether he had the requisite authority to even file a class action proof of claim."); *In re Sacred Heart of Norristown*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) ("The most propitious time for filing a motion for class recognition is before a bar date is established"); *In re Casimiro*, 2007 Bankr. LEXIS 1926 *16 (Bankr. E.D. Cal. May 31, 2007) ("The named claimants must timely move for certification of the class.").

The first *Musicland* factor is not met, both because the Movants failed to obtain class certification prior to filing their Motion in this Court, and because they have filed their Motion in an untimely manner.

**3.**     **The Motion Fails to Satisfy the Second *Musicland* Factor, as the Debtors'**
           **Notice Program Was Sufficient**

The second *Musicland* factor looks to whether members of the Putative Class received notice of the Claims Bar Date. *In re Verity Health Sys. of Cal.*, 2019 Bankr. LEXIS 1818 at *23.

As briefed above, the Debtors' Bar Date Motion was heavily litigated before this Court. Despite receiving notice of the Bar Date Motion and each objection/joinder thereto, Movants did not file any brief in this Court requesting changes to the Debtors' proposed noticing program in order to increase the likelihood that notice would be received by all members of their Putative Class. Now, by their Motion, Movants complain that the Debtors' noticing program was insufficient to reach current or former equityholders who purportedly form part of the Putative Class.

In an earlier proceeding, the Debtors filed evidence demonstrating that their supplemental notice plan provided constructive notice that reached over 730,000,000 impressions (i.e., opportunities to see the notice of the Claims Bar Date). *See* Dkt. No. 4684, pp. 6-7. Movants argue, however, that this reach was insufficient because the Debtors' noticing program did not provide actual notice of the purported securities claims that current or former equityholders might assert against the Debtors' estate. But notice of the bar date, alone, is sufficient for due process requirements. There is no requirement that such notice include specific notice of potential claims that might be held by a creditor, such as the claims asserted in the Securities Action. Notice of the existence of a bar date places the onus on creditors to investigate their potential claims. *See Rodriguez v. Tarragon Corp. (In re Tarragon Corp.)*, 2010 Bankr. LEXIS 3410 (Bankr. D. N.J. September 24, 2010) (mere notice of claims bar date was sufficient notice for putative class members, "they had an opportunity to investigate and pursue potential individual claims and did not do so.").

The Debtors' notice program was more than sufficient to reach potential equityholders who might believe that they hold securities claims against the Debtors. To whatever extent equityholders have not filed such claims, it is likely due to a recognition by such equityholders that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a loss in stock value felt equally by all equityholders does not create an individual claim for recovery from the Debtors' estate.

The second *Musicland* factor is not satisfied by the Motion.

**4.      The Motion Fails to Satisfy the Third *Musicland* Factor, as Class Certification Would Adversely Affect Administration of these Bankruptcy Cases**

The third *Musicland* factor—whether class certification would adversely affect administration of the cases—involves many issues.  One addressed frequently by courts is the timeliness of the Rule 23 motion, or lack of timeliness, with respect to the proceedings in the bankruptcy case, as adverse effects to the administration of the case are "exacerbated" by a delayed motion.  *Musicland*, 363 B.R. at 656.  A bankruptcy court "may decline to apply Rule 23 if doing so would . . . gum up the works of distributing the estate." *In re Ephedra,* 329 B.R. at 5 (internal citation omitted).

As has been briefed above, Movants have been on notice since May 1, 2019, that the Debtors intended a notice program of the scope that was subsequently approved by this Court, and Movants did nothing.  Movants have been able to pursue the Securities Action against the non-debtor and individual defendants, unhindered by the automatic stay, but have failed to seek class certification from the District Court.  Movants were aware since May 2019 that the Claims Bar Date in this case was October 21, 2019, but they failed to file their Motion until after passage of the Claims Bar Date.  And, most critically, Movants have been aware for at least six months of AB 1054's timing requirements for confirmation of the Debtors' plan of reorganization, yet they have failed to pursue timely relief in this Court, or in the District Court.  The delay in filing the Motion until after the Claims Bar Date and after substantial proceedings in these cases favors denial of the Motion.  *In re Computer Learning Centers, Inc.*, 344 B.R. 79, 86 (Bankr. E.D. Va. 2006) ("A Rule 7023 motion should be filed as soon as practicable and should be denied if it comes so late as to prejudice any party"); *Craft*, 321 B.R. at 199 (allowing class claim would delay plan process and claim objection process); *Woodward & Lothrop*, 205 B.R. at 370 ("As the case moves toward its conclusion, it is more likely that a delay in resolving the certification issue will interfere with the administration of the estate"); *In re Sacred Heart of Norristown*, 177 B.R. at 24 (granting the motion would "effect

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

very substantial and apparently unwarranted disruption to the administration of the Debtor's bankruptcy case, in which there is presently a plan before us for imminent confirmation").

The Debtors' have filed several versions of their proposed plan of reorganization, and will shortly file a proposed disclosure statement in an effort to meet the fast-approaching deadline of AB 1054.  The administration of these cases is no ordinary matter, but involves the administration of tens of billions of dollars in claim value, on behalf of nearly a hundred thousand creditors.  The added complication of a securities class proof of claim, and the necessary proceedings that it will entail prior to plan confirmation, will adversely affect the plan confirmation process.  *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 621 (Bankr. S.D.N.Y. 2009) (denying Rule 7023 motion where "class certification would adversely affect the administration of these cases adding layers of procedural and factual complexity that accompany class-based claims, siphoning the Debtors' resources and interfering with the orderly progression of the reorganization."); *In re Ephedra*, 329 B.R. at 5 ("[A] bankruptcy case can proceed no faster than its slowest matter . . . and a class action may gum up the works because until complete, the bankruptcy court cannot determine the entitlement of other creditors.") (internal citation omitted).

Movants cannot point to the order entered by the District Court according them status as Lead Plaintiff and claim that it rescues them from dilatory behavior in these cases, as such an order has no meaning or effect in this Court.  *See Lucas v. Dynergy Inc. (In re Dynegy Inc.)*, 2013 U.S. Dist. LEXIS 78479 *20, 2013 WL 2413482 (S.D.N.Y. June 4, 2013) ("Lead Plaintiff Order" entered in putative class action case "did not provide the appellant with standing in the Bankruptcy Court" to represent the putative class, and "would not bind the Bankruptcy Court to allow the appellant to represent the same putative class in the Bankruptcy Court.").

Dilatory behavior in any chapter 11 case will often deprive a party of rights that it might otherwise enjoy.  But in these cases, where extraordinary efforts have been made to bridge substantial differences, address nearly a hundred thousand claims seeking tens of billions of dollars, and cobble together support for a complex plan of reorganization that must be confirmed by a fixed deadline, the delays of Movants in filing their Motion cannot be overlooked.  The adverse effects on administration of these cases are not addressed by resolution of the Motion.  The relief that is

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

sought by the Motion would only be the beginning. *In re Ephedra*, 329 B.R. at 5 ("since class litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters, class litigation would have to be commenced at the earliest possible time to have a chance of being completed in the same time frame as the other matters that must be resolved before distributing the estate.").

Any prejudice that equityholders could claim upon denial of the Motion is a product of Movants' delay. But such prejudice would be illusory given that the claims of the Putative Class are, at their core, derivative claims that must be pursued for the benefit of the estate. Every dollar that Securities Plaintiffs may manage to recover from the Debtors' D&O insurance policies through their Securities Action is a dollar that will not be recovered by the Fire Victim Trust for the benefit of fire victims, as intended by the Debtors' proposed plan of reorganization, and as required by applicable law. A balancing of such prejudice leans in favor of fire victims, as class certification would violate the absolute priority rule, violate California law, and violate the intended purpose of Rule 23/7023. *See In re Quick Cash, Inc.*, 2015 Bankr. LEXIS 3852 *31 (Bankr. D. N.M. November 10, 2015) (requiring a balancing of "the potential prejudice to other creditors and potential benefit to members of the class or putative class"); *In re Computer Learning*, 344 B.R. at 94 (concluding that delayed filing of untimely Rule 23 motion "unduly prejudices the estate and its other creditors").

The Motion fails to satisfy the third *Musicland* factor.

### III.

### <u>CONCLUSION</u>

It is without dispute that the value of PG&E stock declined after the devastating wildfires of 2017 and 2018. And while the TCC and Movants may disagree on much, they appear to agree that negligence and breaches of fiduciary duties by the Debtors' directors and senior officers played a direct role in the causation of such fires. The primary disagreement is whether the corporations' value as a whole, or the value of stock held by certain individual equity holders in particular, were damaged by the actions and omissions of such defendants.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    The claims alleged by Movants in their TAC are classic derivative claims for a stock drop
2    experienced equally by all shareholders, which occurred as a result of fires that devastated the lives
3    and assets of fire victims.  Un the Debtor's draft plan of reorganization and principles of federal
4    bankruptcy law, those fire victims have a superior right to recover assets of the estate—including
5    insurance proceeds—before equityholders may obtain a recovery on their claims.  The relief sought
6    by the Motion would violate that prior right, and violate the absolute priority rule, by furthering the
7    efforts of Movants to reach insurance proceeds that are property of the Debtors' estates and are
8    being assigned to the Fire Victim Trust under the Debtors' proposed plan of reorganization.

9    Even absent such issues of equity, the Motion fails to satisfy the *Musicland* standards for
10   approval of a class in a bankruptcy case, and should be denied for that reason alone.

11   For all of the reasons argued herein, the TCC respectfully requests that this Court deny the
12   Motion.

14   Dated: January 14, 2020                    BAKER & HOSTETLER LLP

16                                              By:  */s/ David J. Richardson*
                                                    Robert A. Julian
17                                                  Cecily A. Dumas
                                                    David J. Richardson

18                                              *Counsel to the Official Committee of Tort Claimant*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES