# EXHIBIT I

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Plaintiffs (Debtors and Debtors in Possession)*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.** | Case Nos. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br><br>Adv. Pro. No. 19-03039 (DM) |
| **PG&E CORPORATION and PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO and YORK COUNTY**<br><br>**Defendants.** | **DEBTORS' MOTION FOR A PRELIMINARY INJUNCTION AS TO *IN RE PG&E CORP. SECURITIES LITIG.*, 18-CV-03509 (N.D. CAL.) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: TBD<br>Time: TBD<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Opposition Deadline**: July 18, 2019 |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), and as plaintiffs in the above-captioned adversary proceeding (the "**Adversary Proceeding**"), respectfully submit this memorandum of points and authorities in support of the Debtors' Motion for a Preliminary Injunction (the "**Motion**") as to *In re PG&E Corp. Securities Litigation*, Civ. No. 18-03509 (N.D. Cal.) (the "**Wildfire Securities Action**"), an action commenced by the Lead Plaintiff Public Employees Retirement Association of New Mexico ("**PERA**"), and York County, acting on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund ("**York**", and together with PERA, the "**Securities Plaintiffs**"). The Debtors respectfully request that this Court exercise its authority under section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") to enjoin further prosecution of the Wildfire Securities Action against those of the Debtors' current and former directors and officers that are named as defendants (the "**Individual Defendants**"), and the underwriters of certain of the Debtors' notes offerings (the "**Underwriter Defendants**" and collectively with the Individual Defendants, the "**Non-Debtor Defendants**"), with the same effect and to the same extent as would be the case if section 362(a) of the Bankruptcy Code applied.

This Motion is supported by the *Debtors' Complaint for Preliminary and Permanent Injunctive Relief as to In re PG&E Corp. Securities Litig., 18-cv-03509 (N.D. Cal.)*; the *Memorandum of Points and Authorities in Support of Debtors' Motion for a Preliminary Injunction as to In re PG&E Corp. Securities Litig., 18-cv-03509 (N.D. Cal.)*; and *the Declaration of Elizabeth Collier in Support of Debtors' Motion for a Preliminary Injunction as to In re PG&E Corp. Securities Litig., 18-cv-03509 (N.D. Cal.)*, as well as supporting documents thereto.

A proposed form of order granting the relief requested herein is annexed hereto as Exhibit 1 (the "**Proposed Order**")

# **TABLE OF CONTENTS**

I.     Preliminary Statement ................................................................................................ 1

II.    Background .................................................................................................................. 1

III.   Jurisdiction ................................................................................................................. 3

IV.   This Court Should Enjoin Further Prosecution of the Wildfire Securities Action ............ 4

     A.     The Debtors Have A Reasonable Likelihood of Successful Reorganization ......... 4

     B.     Continued Prosecution of the Wildfire Securities Action Will Cause Irreparable Harm to the Debtors ................................................................... 5

           1.     The Wildfire Securities Action Directly Interferes with the Debtors' Reorganization ............................................................................. 6

           2.     Further Prosecution of the Wildfire Securities Action Would Risk Recovery Against the Debtors' Estates Outside the Claims Resolution Process and in Contravention of the Bankruptcy Code ........................... 11

           3.     The Wildfire Securities Action Risks Prejudicial Adjudications of Factual and Legal Issues to the Debtors' Detriment, But Without Their Participation ..................................................................................... 16

           4.     The Wildfire Securities Action Will Materially Divert the Debtors' Attention Away From Their Reorganization Efforts ................................ 18

     C.     A Balance of the Harms Clearly Favors the Issuance of a Preliminary Injunction ......................................................................................... 20

     D.     An Injunction Advances the Public Interest ................................................. 22

V.    Conclusion ................................................................................................................. 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ...........................................................................13, 15

*In re Am. Film Techs., Inc.*,
175 B.R. 847 (Bankr. D. Del. 1994) ........................................................................17

*In re Am. Hardwoods, Inc.*,
885 F.2d 621 (9th Cir. 1989) ...................................................................................3

*In re Associated Vintage Grp., Inc.*,
283 B.R. 549 (B.A.P. 9th Cir. 2002) .........................................................................9

*In re Barnes*,
310 B.R. 209 (Bankr. D. Colo. 2004) ......................................................................10

*Boucher v. Shaw*,
572 F.3d 1087 (9th Cir. 2009) ................................................................................11

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ................................................................................................6

*In re Circle K Corp.*,
121 B.R. 257 (Bankr. D. Ariz. 1990) .........................................................15, 16, 18, 20

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ...................................................................................10

*In re Conejo Enterprises, Inc.*,
96 F.3d 346 (9th Cir. 1996) .....................................................................................9

*Essex Ins. Co. v. Kut Sui*,
No. 3:12-cv-5773 RJB, 2012 WL 5258858 (W.D. Wash. Oct. 23, 2012) ......................18

*In re Excel Innovations, Inc.*,
502 F.3d 1086 (9th Cir. 2007) ......................................................................4, 5, 11, 15

*In re Fabtech Indus., Inc.*,
Adv. No. 10-1294, 2010 WL 6452908 (B.A.P. 9th Cir. July 19, 2010) .....................4, 18, 22

*In re Family Health Servs., Inc.*,
105 B.R. 937 (Bankr. C.D. Calif. 1989) .............................................................. *passim*

*Hawaii Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*,
2006 WL 3755175 (S.D.N.Y. Dec. 20, 2006) ........................................................17, 18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Ionosphere Clubs, Inc.*,
111 B.R. 423 (Bankr. S.D.N.Y. 1990) ...................................................................20

*In re Jefferson Cty., Ala.*,
491 B.R. 277 (Bankr. N.D. Ala. 2013) .................................................................17

*In re Johns-Manville Corp.*,
33 B.R. 254 (Bankr. S.D.N.Y. 1983) ...............................................15, 17, 18, 20

*In re Kenoyer*,
489 B.R. 103 (Bankr. N.D. Cal. 2013) ...............................................................19

*In re Leslie Fay Cos., Inc.*,
207 B.R. 764 (Bankr. S.D.N.Y. 1997) ................................................................14

*In re Linda Vista Cinemas, LLC*,
No. 4-10-BK-14551-JMM, 2010 WL 2105613 (Bankr. D. Ariz. May 25, 2010) ......................4, 5

*In re Lomas Fin. Corp.*,
117 B.R. 64 (S.D.N.Y. 1990).........................................................12, 13, 18, 20

*In re MacDonald/Assocs., Inc.*,
54 B.R. 865 (Bankr. D.R.I. 1985) .......................................................................17

*In re Marley Orchards Income Fund I, Ltd. P'ship*,
120 B.R. 566 (Bankr. E.D. Wash. 1990) .............................................................22

*In re Minoco Grp. of Cos., Ltd.*,
799 F.2d 517 (9th Cir. 1986) ...............................................................................13

*Nordhorn v. Ladish Co., Inc.*,
9 F.3d 1402 (9th Cir. 1993) ................................................................................16

*In re Pac. Gas & Elec. Corp. Sec. Litig.*,
Civ. No. 5:18-3509 (N.D. Cal.), Dkt. No. 1 ........................................................2

*Pac. Gas & Elec. Corp. v. Public Emp. Ret. Ass'n of N.M.*,
Adv. No. 19-03006 (Bankr. N.D. Cal.), Dkt. Nos. 1-2 .......................................2

*In re Pac. Lifestyle Homes, Inc.*,
No. 08-45328, 2009 WL 688606 (Bankr. W.D. Wash. Mar. 16, 2009) ...............22

*Pedrina v. Chun*,
97 F.3d 1296 (9th Cir. 1996) ..............................................................................16

*In re Philadelphia Newspapers LLC*,
410 B.R. 404 (Bankr. E.D. Pa. 2009) ...................................................................5

*In re PTI Holding Corp.*,
346 B.R. 820 (Bankr. D. Nev. 2006) ...................................................................19

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Rocky Mountain Farmers Union v. Corey*,
   913 F.3d 940 (9th Cir. 2019) .................................................................................18

*In re Sacred Heart Hosp.*,
   182 B.R. 413 (Bankr. E.D. Pa. 1995) ....................................................................14

*In re Schwartz-Tallard*,
   803 F.3d 1095 (9th Cir. 2015) ..................................................................................6

*Secombe v. Steele*,
   61 U.S. 94 (1857)....................................................................................................10

*Tuller v. Tintri, Inc.*,
   Civ. No. 17-05714-YGR, 2018 WL 4385652 (N.D. Cal. Sept. 14, 2018) ........7, 17, 18

*In re Union Tr. Philadelphia, LLC*,
   465 B.R. 765 (Bankr. E.D. Pa. 2011) ....................................................................21

*United States v. ITT Rayonier, Inc.*,
   627 F.2d 996 (9th Cir. 1980) ..................................................................................16

*Matter of Vitek, Inc.*,
   51 F.3d 530 (5th Cir. 1995) ....................................................................................13

*In re W. Asbestos Co.*,
   313 B.R. 859 (Bankr. N.D. Cal. 2004) ...................................................................13

*In re W.R. Grace & Co.*,
   386 B.R. 17 (Bankr. D. Del. 2008) ...................................................................12, 13

**Statutes**

11 U.S.C. § 105 ..........................................................................................4, 9, 10, 15, 20

11 U.S.C. § 362 ......................................................................................................... 4, 19

15 U.S.C. § 77k ..................................................................................................................7

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Other Authorities**

*Amended Declaration of Jason P. Wells in Support of First Day Motions and Related
Relief*, No. 19-30088 ........................................................................................................1

*Reservation of Rights of the Public Employees Retirement Association of New Mexico
With Respect to Debtors' Motion to Pay the Fees and Expenses of Simpson
Thatcher & Bartlett as Counsel to the Independent Directors*, No. 19-30088 ...........................14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

The Securities Plaintiffs seek to avoid the automatic stay by transmuting the thousands of wildfire claims currently stayed against the Debtors into the Wildfire Securities Action, which ostensibly seeks to proceed only against non-debtors. In so doing, the Securities Plaintiffs' 228-page Third Amended Complaint ("**TAC**") attempts to initiate a parallel proceeding based entirely on *the very issues* that led to, and are the primary focus of, the Debtors' Chapter 11 Cases.

This end-run around the Bankruptcy Code's automatic stay flouts its very purpose and obstructs the Debtors' ability to pursue a negotiated resolution to these Chapter 11 Cases in general, and the wildfire claims in particular. The Debtors filed for chapter 11 protection precisely so that they could fairly and efficiently resolve their potential wildfire liabilities through a consolidated claims resolution process, rather than via piecemeal litigation against the Debtors. The Wildfire Securities Action would irreparably harm the Debtors by, among other things: interfering with their reorganization efforts and the administration of their estates; triggering indemnification obligations; threatening the Debtors' insurance coverage; risking issue preclusion and record taint; and distracting the Debtors and their key personnel at a time when all efforts should be focused on their reorganization and safely providing service to their customers. For all of these reasons, this Court should enjoin further prosecution of the Wildfire Securities Action.

## II.    BACKGROUND

The Debtors commenced these Chapter 11 Cases on January 29, 2019, in response to a confluence of factors resulting from the separate, catastrophic and tragic wildfires that occurred in Northern California in 2017 and 2018. *See Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief*, No. 19-30088, Dkt. No. 263, at 3 (the "**Wells Declaration**"). The single most important issue in the Debtors' Chapter 11 Cases is the ultimate resolution of the thousands of wildfire-related claims against the Debtors. Addressing these claims in a piecemeal manner in state or federal court proceedings while continuing to serve over 16 million customers was not feasible, and was the primary factor precipitating the Debtors' need to seek relief under chapter 11.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The subject of this Adversary Proceeding is the Wildfire Securities Action, a securities lawsuit that was filed after the scope of the Debtors' potential liabilities for the wildfire claims became clear. PERA, as lead plaintiff, initiated the Wildfire Securities Action on June 12, 2018, asserting claims against the Debtors and certain of the Individual Defendants under the Securities Exchange Act of 1934 (the "**Exchange Act**"). *See In re Pac. Gas & Elec. Corp. Sec. Litig.*, Civ. No. 5:18-3509 (N.D. Cal.), Dkt. No. 1. After commencing these Chapter 11 Cases, the Debtors initiated an adversary proceeding on February 15, 2019 and sought to preliminarily and permanently enjoin PERA's prosecution of the Wildfire Securities Action as against all non-debtor defendants named at that time. *See Pac. Gas & Elec. Corp. v. Public Emp. Ret. Ass'n of N.M.*, Adv. No. 19-03006 (Bankr. N.D. Cal.), Dkt. Nos. 1-2. York then filed a separate complaint, based on similar allegations, asserting claims under the Securities Act of 1933 (the "**Securities Act**") against more of the Debtors' current and former directors and officers as well as the Underwriter Defendants. The Debtors, the Non-Debtor Defendants, and the Securities Plaintiffs then stipulated that the Debtors would dismiss their pending adversary proceeding without prejudice; that PERA and York would consolidate York's action with the Wildfire Securities Action; that the Securities Plaintiffs would file a TAC in the Wildfire Securities Action; that the Debtors would commence this Adversary Proceeding, and that the Non-Debtor Defendants' deadline to respond to the TAC would be tolled pending the outcome of this Adversary Proceeding. *See id.*, Dkt. No. 42; *In re Pac. Gas & Elec. Corp. Sec. Litig.*, Civ. No. 5:18-3509 (N.D. Cal.), Dkt No. 117. The Securities Plaintiffs filed the TAC on May 28, 2019. *See* Declaration of Elizabeth Collier in Support of Debtors' Motion for Preliminary Injunction as to *In re PG&E Corp. Securities Litig.*, 18-cv-03509 (N.D. Cal.), dated June 18, 2018 (the "**Collier Declaration**"), Ex. A.

The Wildfire Securities Action is, by its own terms, an action against the Debtors. The TAC names the Debtors themselves as defendants on the Exchange Act claims, *see* TAC ¶¶ 42–44, 472, 482, 493, 495, which were filed before these Chapter 11 Cases were commenced, and alleges that "[b]ut for the automatic stay of proceedings, the [Debtors] would be named as a defendant" on the subsequently added Securities Act claims as well. TAC ¶¶ 509–10; *see also id.* ¶ 697 (same). The

228-page TAC broadly alleges that the Debtors, acting through the Individual Defendants,[1] made false and misleading statements during the period from April 29, 2015 through November 15, 2018 with the intent to conceal deficiencies in the Debtors' wildfire safety practices, including numerous and widespread violations of California safety regulations related to power lines. *See, e.g.*, TAC ¶¶ 16, 503. The Securities Plaintiffs further allege that these allegedly deficient wildfire safety practices caused the 2017 wildfire and 2018 wildfires, which, in turn, caused significant financial losses to the Debtors' security holders. *See, e.g.*, TAC ¶¶ 18, 498.

The Securities Plaintiffs' allegations thus concern the exact same events—the 2017 wildfires and 2018 wildfires—that precipitated the Debtors seeking protection under chapter 11, and involve issues of causation that are at the core of the Debtors' reorganization efforts.

## III. JURISDICTION

The Court has "related to" jurisdiction over the Wildfire Securities Action because it is beyond doubt that, if it continues, it "could conceivably have any effect on the estate[s] being administered in bankruptcy," principally because "the outcome could alter the [Debtors'] rights, liabilities, options, or freedom of action (either positively or negatively)." *See In re Am. Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir. 1989) (quoting *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988)). The TAC's allegations against both the Debtors and the Non-Debtor Defendants involve the very facts that led the Debtors to file for chapter 11. The Wildfire Securities Action falls within this Court's "related to" jurisdiction because of, among other things, the strains that the non-bankruptcy litigation of the wildfire claims would impose on the Debtors' reorganization process; the threats that the Wildfire Securities Action could drain the Debtors' assets by one means or another; the potential preclusive or prejudicial effects it could have on the Debtors; and the distractions that it would impose on the Debtors and their key personnel.

---

[1] Current directors and officers that are named as Individual Defendants include Julie M. Kane, Senior Vice President, Chief Ethics and Compliance Officer, and Deputy General Counsel; Dinyar B. Mistry, Senior Vice President, Human Resources and Chief Diversity Officer; David S. Thomason, Vice President and Chief Financial Officer of the Utility and Controller of PG&E; Fred J. Fowler, Director; and Eric D. Mullins, Director.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## IV. THIS COURT SHOULD ENJOIN FURTHER PROSECUTION OF THE WILDFIRE SECURITIES ACTION

Bankruptcy Courts may, pursuant to their equitable powers under section 105(a), enjoin "actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but threaten the integrity of a bankrupt's estate." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007) (internal quotations, citations and footnote omitted). To grant such an injunction under section 105, the Bankruptcy Court must apply the "usual preliminary injunction standard." *Id.* at 1094; *see also In re Family Health Servs., Inc.*, 105 B.R. 937, 942 (Bankr. C.D. Calif. 1989) ("[An] 'identity of interests' provides the special or 'unusual circumstances' which justify an order that stays proceedings against non-debtor parties.").

A debtor seeking to extend the automatic stay under section 105 of the Bankruptcy Code must demonstrate: (1) a reasonable likelihood of successful reorganization; (2) absent an injunction, the debtor will suffer irreparable harm; (3) a balance of the hardships favors the issuance of an injunction; and (4) an injunction advances the public interest. *See Excel*, 502 F.3d at 1095–96. The Debtors establish each of these elements here, and submit that their Motion should be granted.

### A. The Debtors Have A Reasonable Likelihood of Successful Reorganization

A debtor seeking to enjoin a non-debtor action "must show a reasonable likelihood of a successful reorganization." *Excel*, 502 F.3d at 1095. To do so, the debtor must show that it has engaged in activities geared towards reorganization, describe what those "activities are [and explain] how [those activities] could meaningfully contribute to [the debtor's prospects] for reorganization." *Id.* at 1097. This is "not a high burden," and does not require the debtor to produce a specific plan of reorganization or speculate as to the likelihood of that plan's confirmation. *In re Fabtech Indus., Inc.*, Adv. No. 10-1294, 2010 WL 6452908, at *4 (B.A.P. 9th Cir. July 19, 2010) (quoting *Excel*, 502 F.3d at 1097). Rather, in order to obtain an injunction under section 105, a debtor must merely demonstrate that "tangible progress . . . in the reorganization process" is being made. *In re Linda Vista Cinemas, LLC*, No. 4-10-BK-14551-JMM, 2010 WL 2105613, at *2 (Bankr. D. Ariz. May 25, 2010).

The Debtors have made "tangible progress . . . in the[ir] reorganization." *See id.* They have secured the Court's approval of $5.5 billion in debtor-in-possession financing; stabilized business operations and relationships with suppliers, vendors and other key business partners; engaged in ongoing mediation to resolve wildfire claims pursuant to a plan of reorganization; obtained a Court order extending the plan filing exclusivity periods; and, more recently, filed a motion seeking to establish a bar date and approving related procedures for providing notice to all known and unknown creditors, including the Debtors' 16 million customers and any current or potential wildfire claimants. Simply put, the Debtors' reorganization is proceeding apace. "[G]iven that the Debtors have provided no sign that they will *not* emerge from this Chapter 11," the Debtors respectfully submit that this Court should "allow them any possible breathing room." *See In re Philadelphia Newspapers LLC*, 410 B.R. 404, 415 (Bankr. E.D. Pa. 2009) (emphasis added).

**B.    Continued Prosecution of the Wildfire Securities Action Will Cause Irreparable Harm to the Debtors**

Because it is absolutely clear that under all circumstances the Debtors' business operations will continue, and that a successful reorganization is accordingly not only reasonably likely, but a near certainty, the Debtors need only make a minimal showing that the Wildfire Securities Action will irreparably harm their reorganization efforts. *See Excel*, 502 F.3d at 1093 (the likelihood of success and irreparable injury prongs "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases"). The Debtors easily carry that burden here.

Although non-debtors are also defendants in the Wildfire Securities Action, the action effectively seeks damages from the Debtors, for conduct allegedly undertaken by the Debtors, provable only with discovery from the Debtors, with consequences that directly impact the Debtors, all at a time when all wildfire-related actions are stayed against the Debtors. Such an action would proceed, in function and in all but name, against the Debtors. The automatic stay, however, paused all litigation among the Debtors and their creditors, including with respect to wildfire claims. Permitting the Securities Plaintiffs to repackage the wildfire claims as securities claims purportedly brought against the Debtors' directors, officers, and underwriters undermines the Debtors' protections

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

under the Bankruptcy Code while actively harming their ability to bring these Chapter 11 Cases to an equitable and prompt negotiated resolution.

Continued prosecution of the Wildfire Securities Action would further implicate the Debtors' indemnification obligations, impact the Debtors' insurance coverage, risk preclusive rulings regarding the Debtors' alleged responsibility for the wildfires, and burden and distract the Debtors as they strive toward an efficient resolution and administration of their estates. Each of these harms alone are sufficient to extend the stay to the Non-Debtor Defendants.

### 1. The Wildfire Securities Action Directly Interferes with the Debtors' Reorganization

As this Court is well aware, a primary driver for the Chapter 11 Cases is the Debtors' need to avail themselves of a single, consolidated forum that will enable them to address and resolve fairly and expeditiously the thousands of wildfire claims that they are facing. Seeking relief under chapter 11 provides the Debtors with "a 'breathing spell,' and serves to protect the interests of all creditors by preventing 'dismemberment' of the debtor's assets before the debtor can formulate a repayment plan." *See In re Schwartz-Tallard*, 803 F.3d 1095, 1100 (9th Cir. 2015) (citing 3 Collier on Bankruptcy ¶ 362.03 at 362–23 & n.6 (16th ed. 2015)). These purposes are implemented by the Bankruptcy Court's "comprehensive jurisdiction" and permit it to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate" in a consolidated proceeding that gives all interested parties an opportunity to be heard. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

The continued prosecution of the Wildfire Securities Action, which would proceed outside the supervision of the Bankruptcy Court, threatens to undermine that goal. Virtually *all* of the allegations concern actions allegedly taken by the Debtors, their agents, or certain of their current or former directors and officers. The Individual Defendants are sued in their official capacities as instrumentalities of the Debtors. *See, e.g.*, TAC ¶¶ 48, 206, 220, 230, 257, 285, 295, 298, 302, 308, 313, 316, 432, 436, 475, 490. The allegations against the Individual Defendants, and the consequences that flow from them, are coterminous with those brought against the Debtors. The Individual Defendants, for example, are alleged to have exercised "their high-level positions of control and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

authority as senior executive officers of PG&E" over a vast spectrum of corporate activities, a degree of supervision interchangeable with that of the entire PG&E corporate form.  *See* TAC ¶ 52.

As for the Underwriter Defendants, their potential liability too flows entirely from alleged misstatements and omissions made by the Debtors.  *See* 15 U.S.C. § 77k(a)(5), (b)(3).  Therefore, proving any claim against the Underwriter Defendants necessarily requires first establishing alleged misstatements or omissions by the Debtors concerning, among other things, the Debtors' wildfire safety practices in place in 2017 and/or 2018.  *See Tuller v. Tintri, Inc.*, Civ. No. 17-05714-YGR, 2018 WL 4385652, at *2 (N.D. Cal. Sept. 14, 2018) (extending the automatic stay to non-debtor defendants because "[t]here can be no determination as to the liability of the Individual Defendants or Underwriter Defendants without first resolving whether [the debtor-issuer] has made a material misrepresentation in violation of the securities laws at issue").  Thus, the TAC devotes pages to alleged misstatements in the Debtors' offering documents regarding the Debtors' safety practices and response to the 2017 wildfires, but just one paragraph to the Underwriter Defendants' role in making those statements, alleging principally that they "fail[ed] to conduct an adequate due diligence investigation."  *See id.* ¶ 555.

Indeed, even a cursory review of the TAC makes clear that the Debtors are its real targets. Allegations against the Non-Debtor Defendants amount to a mere fraction of the TAC.  Counting the relevant terminology in the TAC, the word "director" appears 81 times; "officer" yields 63 hits; "individual" garners 79 mentions; and "underwriter" turns up 40 times.  But the big bull's eye—the focus of the Wildfire Securities Action—is "PG&E," which appears 2,088 times, *nearly ten times per page*, a sum that increases by 258 once the alternative moniker "Utility" is factored in, and by an additional 384 once "Company" is tallied.  In sum, roughly 91% of the references to the defendants in the TAC are actually references to the Debtors:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119



Mentions of the Defendants in the TAC

81 63 40 79

2,730

☐ "PG&E" + "Utility" + "Company"   ☐ "Director"   ☐ "Officer"   ☐ "Underwriter"   ☐ "Individual"

In reality, the Debtors are the only *real* party in interest here. The central issue in the Wildfire Securities Action is the same one at the heart of the thousands of wildfire claims subject to the automatic stay, *i.e.*, whether Debtors caused the 2017 wildfires and/or the 2018 wildfires. *See, e.g.*, TAC ¶ 236 ("The false and misleading nature of this statement was further revealed in a series of events from November 8–15, 2018, as evidence emerged that PG&E's safety violations caused the Camp Fire."); ¶ 240 (same); ¶ 245 (same); ¶ 322 ("PG&E caused the North Bay Fires."); ¶ 659 ("The Offering Documents for the April 2018 Notes Offering . . . misled investors by insinuating that PG&E may not have caused and might not be liable for the destruction of life and property resulting from fires that PG&E caused, or the costs associated with wildfires."); ¶ 660 ("[The Debtors' 10-K] misleadingly represented that it was only a possibility that PG&E caused or would face liability for the fires."); *passim* ("[T]his statement materially omitted the true risk that PG&E would cause wildfires serious enough to imperil the Company's financial condition.").

Likewise, the cause of the alleged stock drops—*i.e.*, loss causation—cannot be divorced from the cause of the wildfires. To prove loss causation, the Securities Plaintiffs must establish, among other things, their allegation that the wildfires were a "materialization of [the] concealed risk." *See* TAC, *passim*. But the wildfires did not reveal anything about a "concealed risk" of allegedly deficient wildfire safety practices; what they revealed, and what the post-wildfires reports revealed, was that



there was a risk that PG&E would be held liable *if* PG&E in fact caused any of the wildfires. It is for this reason that nearly the entirety of the Securities Plaintiffs' "Loss Causation" section of the TAC focuses on whether PG&E caused the Northern California wildfires. *See id.* at 95 ("PG&E's Safety Violations Caused the Devastating North Bay Fires") *id.* ("PG&E's Safety Violations Caused the Devastating Camp Fire."); *id.* ¶ 328 ("It was not until Thursday, October 12, 2017 that the market began to understand that PG&E's safety regulation violations were likely a proximate cause of the North Bay Fires."); *id.* ¶ 246 ("This was the first disclosure indicating that PG&E caused any of the North Bay Fires. In response to this news, PG&E's share price declined 6.7%."); *id.* ¶ 330 ("On this news that PG&E would likely bear at least some responsibility for the fires, PG&E's stock dropped $4.65 per share.").

Allowing some of the most important issues of the Chapter 11 Cases to be resolved in a forum other than the Bankruptcy Court, and one where the Debtors would not be participating as a defendant, would undermine the Debtors' efforts to achieve a comprehensive resolution of claims arising from the 2017 wildfires and 2018 wildfires. "Chapter 11 is essentially a structured negotiation conducted under rules prescribed by the Bankruptcy Code. Those negotiations take a variety of forms. Some chapter 11 plans need only resolve a few discrete disputes. Others must deal with a plethora of problems." *In re Associated Vintage Grp., Inc.*, 283 B.R. 549, 560 (B.A.P. 9th Cir. 2002). The Ninth Circuit has accordingly concluded that the continuation of parallel, non-bankruptcy proceedings merits imposition of the stay when it would "promote[] judicial economy by minimizing the duplication of litigation in two separate forums and promoting the efficient administration of the estate," and would "preserve[] a level playing field for negotiation of a consensual reorganization plan." *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 352 (9th Cir. 1996). Parallel litigation of the Wildfire Securities Action in a different forum, when the action involves issues of causality that are central to the Chapter 11 Cases, could significantly impair the Debtors' chapter 11 process.

Under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As has long been recognized, this Court's powers of equity are not limited by the mere fact that the Non-Debtor Defendants do not fall directly within the protections of the automatic stay:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

> [C]ourts of equity make a distinction in all cases between that which is matter of substance and that which is matter of form; and if it find[s] that, by insisting on form, the substance will be defeated, it holds it to be inequitable to allow a person to insist on such form, and thereby defeat the substance.

*Secombe v. Steele*, 61 U.S. 94, 104 (1857) (citation omitted). Section 105 accordingly "gives the Bankruptcy Court the authority to fill in gaps in the statutory mandates of Congress in an efficient manner." *In re Barnes*, 310 B.R. 209, 212 (Bankr. D. Colo. 2004) (citations omitted). A fundamental purpose of the Debtors' Chapter 11 Cases is to ensure that the wildfire claims "obtain[] appropriate compensation without undue cost and undue delay" and that the Bankruptcy Court presides over the "just and efficient resolution of these claims" so that none "elude[s] our standard legal process." *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 200 (3d Cir. 2004) (citing Fed. R. Civ. P. 1 (noting the goal "to secure the just, speedy and inexpensive determination of every action")). All of these purposes would be undermined by further prosecution of the Wildfire Securities Action.

This Court has previously recognized the unique status of the wildfire claims in the Debtors' Chapter 11 Cases and the paramount importance of confirming a plan. "[The] Debtors' many challenging tasks include figuring out the structure and implementation methods of any viable reorganization, not the least of which task is the liquidation or aggregate estimation of countless claims from the recent wildfires, other tort liabilities and billions of dollars of contractual liabilities of all types." *See* No. 19-30088, Dkt. No. 1982, at 4. "[T]here is too much at stake in needing to craft the contours of the reorganization than to require a debtor this soon to tackle specific individual cases." *Id.* The Court's concerns, expressed in connection with relatively minor, non-wildfire related disputes, are even more applicable here. Permitting the Wildfire Securities Action to proceed at this time would not only contravene the fundamental purposes of the automatic stay, but also would undermine a comprehensive resolution of the wildfire claims by favoring the Securities Plaintiffs over all other wildfire claimants, all at the expense of the Debtors' comprehensive reorganization and all economic stakeholders.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### 2. Further Prosecution of the Wildfire Securities Action Would Risk Recovery Against the Debtors' Estates Outside the Claims Resolution Process and in Contravention of the Bankruptcy Code

Not only are the Debtors the true targets of the Wildfire Securities Action, but they also will ultimately bear, directly or indirectly, attorneys' fees and other losses associated with the claims against the Non-Debtor Defendants due to the Debtors' indemnification obligations. Thus, if allowed to proceed, any recovery obtained by the Securities Plaintiffs outside of the claims administration process may ultimately be paid from the estates' assets, or from insurance coverage in which the Debtors have an interest. This threatened indirect exploitation of the Debtors' assets would irreparably harm their reorganization efforts. *See Excel*, 502 F.3d at 1098 (observing that harm may exist where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor") (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); *Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009) (internal citations omitted) ("[I]f the liability of the non-debtor party were to affect the property of the bankruptcy estate, such as by a requirement that the debtor indemnify the non-debtor or by payment of the liability from a director's and officer's insurance policy, it may be necessary for the plaintiff in such a case to proceed against the non-debtor party through bankruptcy proceedings.").

The Securities Plaintiffs' continued prosecution of the Wildfire Securities Action will irreparably harm the Debtors by further implicating their indemnification obligations to the Non-Debtor Defendants. The Ninth Circuit has repeatedly noted that a debtor's indemnification obligations support enjoining proceedings against non-debtors. *See Excel*, 502 F.3d at 1098 (quoting *A.H. Robins Co.*, 788 F.2d at 999) (harm may exist where a non-debtor "has a right to indemnity from [a debtor] and the [action sought to be enjoined] creates liability that [the non-debtor] can pass on to [the debtor]"); *Boucher*, 572 F.3d at 1093 (internal citations omitted) ("[A] requirement that the debtor indemnify the non-debtor" may necessitate that it "proceed through bankruptcy proceedings."). Indeed, courts in this Circuit and elsewhere have enjoined actions against non-debtors on this basis. *See, e.g.*, *Family Health Servs.*, 105 B.R. at 942–43 (issuing injunction as to proceeding against non-debtors to prevent "claims against the debtor for reimbursement or indemnification" that

would render "the debtor [] the real party defendant" in the non-debtor actions); *In re W.R. Grace & Co.*, 386 B.R. 17, 34 (Bankr. D. Del. 2008) (enjoining lawsuit and finding irreparable harm where debtors "ha[d] an obligation to defend, which create[d] an immediate effect on the[ir] estates, and face[d] the possibility of liability on the contractual indemnity"); *In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (internal quotations omitted) (affirming injunction against a debtor's directors on basis they were owed "indemnity by the debtor").

The Debtors' indemnification obligations here are real. Pursuant to Resolutions of the Debtors' Boards of Directors, the Debtors must indemnify their current and former directors and officers for any "costs, charges, expenses, liabilities, and losses (including, without limitation, attorneys' fees [and] judgments)" incurred "by reason of the fact that he or she . . . is or was a director or officer" of the Debtors. *See* Collier Decl. ¶ 6. Pursuant to these obligations, the Debtors are reimbursing the Individual Defendants for any attorneys' fees they incur in connection with the Wildfire Securities Action. *See id.* The Debtors will also reimburse the Individual Defendants for any other losses they incur in connection with the Wildfire Securities Action, subject to applicable law. *See id.* Similarly, the underwriting agreements require that for each of the Debtors' relevant notes offerings require the Debtors to indemnify the Underwriter Defendants for "any and all losses, claims, damages or liabilities, joint or several, to which they or any of them may become subject under the [Securities] Act, the Exchange Act or other Federal or state statutory law or regulation," as well as "for any legal or other expenses reasonably incurred by them in connection with investigating or defending any such loss, claim, damage, liability or action." *See* Collier Decl. ¶ 10. The Debtors expect that, if the Wildfire Securities Action is permitted to proceed, the Underwriter Defendants will seek to avail themselves of these indemnification rights for the claims asserted against them in that action. *See id.* The Non-Debtor Defendants' indemnity claims have already begun to accrue, and, in light of the vast scope of the allegations set forth in the TAC, they will grow substantially if the Court allows the Wildfire Securities Action to proceed.

These indemnification obligations alone are sufficient to merit a finding of irreparable harm. *See Family Health Servs.,* 105 B.R. at 942 (citing *A.H. Robins Co.*, 788 F.2d at 999) ("[A]ny suit against a third party who is entitled to absolute indemnity by the debtor . . . is the proper subject

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

for application or extension of the statutory stay."). Continuation of the Wildfire Securities Action—an action that includes pre-petition claims indisputably aimed at the Debtors—risks further losses by the Non-Debtor Defendants that would ultimately be borne by the Debtors' estates. Courts routinely prohibit such efforts to "end run the automatic stay." *See, e.g.*, *Lomas Fin. Corp.*, 117 B.R. at 68 (relying on bankruptcy court's statement that action against debtor's directors was a "transparent attempt . . . to end run the automatic stay" to affirm injunction). Moreover, "allowing [the action] to proceed could subject the Debtors to . . . fixed and liquidated indemnity claims." *See W.R. Grace*, 386 B.R. at 34; *see also A.H. Robins Co.*, 788 F.2d at 1000 (concluding indemnity was sufficient grounds to warrant extension of the automatic stay because, if the claim for indemnity is not allowed in full by the bankruptcy court, the "contract of indemnity [will] in effect [be] nullified").

The continuation of the Wildfire Securities Action would also threaten to deplete assets of the Debtors' estates in other ways. The Debtors maintain insurance policies to help cover any indemnification obligations that arose in 2017 or 2018 to their current and former directors and officers, as relates to, among other things, actions such as the Wildfire Securities Action (the "**D&O Policies**"). *See* Collier Decl. ¶ 7. It is settled law that policies that protect a debtor against liability it may incur are property of its estate, because a "debtor's estate is worth more with them than without them." *In re. Minoco Grp. of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986) (citation omitted); *see also In re W. Asbestos Co.*, 313 B.R. 859, 864 (Bankr. N.D. Cal. 2004) ("Insurance contracts . . . are included in [the definition of property of the estate], and can even be the estate's most valuable asset."); *Matter of Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995) (emphasis in original) (citing cases) ("[W]hen a debtor corporation owns an insurance policy that covers its own liability *vis-a-vis* third parties . . . both the policy *and the proceeds* of that policy are property of the debtor's bankruptcy estate."). This is true even where such liability may result from indemnification claims by a debtor's directors or officers. *See Minoco*, 799 at 518–20 ("[W]e see no significant distinction between a liability policy that insures the debtor against claims by *consumers* and one that insures the debtor against

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

[indemnification] claims by *officers* and *directors*. In either case, the insurance policies protect against diminution of the value of the estate.") (emphasis in original).[2]

The D&O Policies provide coverage both to the Individual Defendants, and to the Debtors themselves, up to specified amounts. *See* Collier Decl. ¶ 7.[3] The portion of this coverage that is shared amongst the Debtors and the Individual Defendants—which constitutes the majority of the coverage available under the D&O Policies—provides coverage: (i) to the Individual Defendants for any non-indemnified losses incurred in their capacity as officers or directors of the Debtors (the "**Side A Coverage**"); (ii) to the Debtors for any losses arising from their indemnification obligations owed to the Individual Defendants (the "**Side B Coverage**"); and (iii) to the Debtors for any direct losses the Debtors incur as a result of securities claims made directly against them (the "**Side C Coverage**"). *See id*. Importantly, the shared coverage available under the D&O Policies is subject to an aggregate limit of liability, such that when proceeds are paid out under any one coverage part, the remaining available shared coverage is reduced. *See id*. Once the Debtors' payment to or on behalf of the Individual Defendants for or of losses (including defense costs) incurred by the Individual Defendants in connection with the Wildfire Securities Action reaches a self-insured retention applicable to the Side B Coverage of the D&O Policies, the Debtors will be entitled to payment under the Side B Coverage for further payment by the Debtors to or on behalf of the Individual Defendants for or of losses (including defense costs) incurred by the Individual Defendants in connection with the Wildfire Securities Action, above that self-insured retention. *See* Collier Decl. ¶ 8. The Debtors' recovery of

---

[2] *See also In re Leslie Fay Cos., Inc.*, 207 B.R. 764, 785 (Bankr. S.D.N.Y. 1997) ("[A] shared interest in the insurance proceeds was sufficient to bring those proceeds into the estate, irrespective of whether those policies also provided liability coverage for the debtor's directors and officers."); *In re Sacred Heart Hosp.*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) (indemnification interest in policy proceeds is sufficient to bring those proceeds into the estate).

[3] The Securities Plaintiffs have already evidenced their intent to recover by seeking access to the proceeds of the D&O Policies. *See Reservation of Rights of the Public Employees Retirement Association of New Mexico With Respect to Debtors' Motion to Pay the Fees and Expenses of Simpson Thatcher & Bartlett as Counsel to the Independent Directors*, No. 19-30088, Dkt. 1479 ("The Debtors' D&O policies, and the interest of the independent directors in the proceeds of those policies, may provide the primary source of recovery for the Class.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

insurance proceeds under the Side B Coverage would reduce the coverage available to the Debtors under the D&O Policies. *See id*.

Courts regularly enjoin actions, like the Wildfire Securities Action, that threaten to deplete insurance assets in which a debtor has an interest. *See, e.g.*, *A.H. Robins*, 788 F.2d at 1008 (finding that "irreparable harm would be suffered by the debtor" where the suits at issue, "if successful, would reduce and diminish the insurance fund or pool . . . in favor of [the debtor] to the detriment of the debtor's creditors as a whole," and because "hardships . . . would be suffered irreparably by the debtor and by its creditors generally in permitting the[] plaintiffs to secure as it were a preference in the distribution of the insurance pool [] to which all creditors were entitled"); *In re Circle K Corp.*, 121 B.R. 257, 261 (Bankr. D. Ariz. 1990) (exercising section 105 authority to enjoin securities action against debtor's directors and officers where "the policies protect[ed] the debtor from diminution of estate assets"); *In re Johns-Manville Corp.*, 33 B.R. 254, 263 (Bankr. S.D.N.Y. 1983) (extending the stay to securities action in part because of its potential for "immediate and irreparable impact on the pool of insurance assets and other financial drain caused to the [debtor's] estate"); *see also Excel*, 502 F.3d at 1098 (suggesting that "evidence that [the debtor] has an insurance policy or other assets that would be immediately dissipated to cover a duty to defend and indemnify [a non-debtor]" could demonstrate harm).

This is not a theoretical exercise. Should the Court decline to issue the requested injunction, it will result in a real, immediate and continuing harm to the Debtors. Given that the potential exposure in the Wildfire Securities Action far exceeds the limits of liability in the D&O Policies, *see* Collier Decl. ¶ 9, losses incurred by the Individual Defendants in connection therewith may completely exhaust the proceeds available under the D&O Policies. And the concern that the Debtors may ultimately need to rely on this coverage is particularly acute here, where the Securities Plaintiffs' claims against the Debtors implicate the Side C Coverage. *See Circle K*, 121 B.R. at 262 (citation omitted) ("To the extent expenditures exhaust policy limits, an estate asset is diminished and debtor's exposure in [] litigation increases."). Moreover, depletion of this coverage could force the Debtors to satisfy the remainder of their indemnification obligations using funds of their estates. *See id.* at 261 (citation omitted) (noting concern that "[i]f the insurer fails to provide coverage, the officers will look

to debtor's assets for reimbursement").  Further, depletion of the D&O Policies' coverage, in which the Debtors have an interest, could further harm them by impacting their "ability to retain management and the willingness of managers to make strong decisions if they lack insurance protection."  *See id.* ("[T]he relationship between a company and its directors and officers is fostered by such insurance coverage.").

In sum, allowing the Securities Plaintiffs' claims to proceed would thus directly and immediately cause irreparable harm to the Debtors' estates.

### 3. The Wildfire Securities Action Risks Prejudicial Adjudications of Factual and Legal Issues to the Debtors' Detriment, But Without Their Participation

The Wildfire Securities Action also raises the risk of irreparably injuring the Debtors through issue preclusion, adverse collateral orders, law of the case, and record taint—without the Debtors' participation in the litigation.

Judgments entered against the Individual Defendants—all alleged to be acting in their official capacities on behalf of the Debtors—risk the possibility of binding PG&E itself.  "[W]hen two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other."  *Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1405 (9th Cir. 1993) (internal citations omitted); *see also United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980) (the "doctrine of privity extends the conclusive effect of a judgment to nonparties who are in privity with parties to an earlier action").  Another court could find that the Wildfire Securities Action, if litigated to conclusion against the Individual Defendants, precludes the Debtors from relitigating important issues in cases against the Debtors, when the Debtors were deprived of the opportunity to defend themselves.  *See, e.g., Pedrina v. Chun*, 97 F.3d 1296, 1302-03 (9th Cir. 1996) (finding that a judgment in favor of a corporation had *res judicata* effect on subsequent litigation against the corporation's officers because they were in privity with the corporation).

Regardless of whether such judgments would be binding on the Debtors, a judgment against the Non-Debtor Defendants—including the Underwriter Defendants, who are facing the same set of allegations and who may be held jointly liable for any misstatements that the Securities Plaintiffs can prove—risks severely prejudicing the Debtors in later litigation.  "There can be no determination as

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to the liability of the Individual Defendants or Underwriter Defendants without first resolving whether [the Debtors] ha[ve] made a material misrepresentation in violation of the securities laws at issue," and thus "any judgment against the [Non-Debtor Defendants] will in effect be a judgment or finding against the debtor." *Tuller*, 2018 WL 4385652, at *2 (quoting *Duval*, No. C-90-0242-DLJ, 1990 WL 261364, at *3 (N.D. Cal. Oct. 19, 1990)); *see also Hawaii Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*, 2006 WL 3755175, at *5 (S.D.N.Y. Dec. 20, 2006) (declining to "decide whether [the Debtor] faces a risk of colleratel estoppel," but affirming extension of stay to non-debtors in securities litigation because "a prudent debtor would devote managerial and financial resources to assisting the defense . . . because of the potential impact upon a claim or suit against the debtor"). It follows that the Debtors—who are entitled to, and currently benefit from, the protections of the automatic stay—should not have to concern themselves with the consequences of continued prosecution of the Wildfire Securities Action against the Non-Debtor Defendants at this time. *See, e.g., In re Jefferson Cty., Ala.*, 491 B.R. 277, 294–95 (Bankr. N.D. Ala. 2013) (finding that under New York law, there was a "potential preclusive effect" of allowing a non-debtor action to proceed and that the debtor "cannot be a bystander to a suit which may have a preclusive effect on claims for [] hundreds of millions of dollars against it by a pre-petition creditor"); *In re Am. Film Techs., Inc.*, 175 B.R. 847, 850 (Bankr. D. Del. 1994) (staying prosecution of fraud action against defendant directors because if they were found liable, "[s]uch liability exposes the corporation to both vicarious liability" and "the risk of being collaterally estopped from denying liability for its directors' actions"); *Johns-Manville*, 26 B.R. at 429 (noting that "there is a risk that [the debtor] could be found to be a controlling nonparty" in an action and that "[i]t thus could be collaterally estopped in subsequent suits from relitigating issues determined against its officers and directors"); *In re MacDonald/Assocs., Inc.*, 54 B.R. 865, 869 (Bankr. D.R.I. 1985) (finding that the "liability of the individual defendants is inseparable from that of the debtor"). Because continued litigation of the Wildfire Securities Action could prejudice the Debtors, it presents a risk of irreparable harm to them.

This risk of prejudice arises from every phase of the proceedings in the Wildfire Securities Action. For example, an adverse ruling against the Non-Debtor Defendants at the pleading stage raises the risk that the court will later find that those rulings are "the law of the case," a doctrine that

"generally precludes reconsideration of an issue that has already been decided by the same court." *See Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019) (citation and internal quotation marks omitted). Thus, even at the pleading stage, "it is not possible for [a debtor] to be a bystander to a suit which may have a [multi-] million [dollar] issue preclusion effect against it in favor of a pre-petition creditor." *Lomas*, 117 B.R. at 67 (citation omitted).

Similarly, discovery in the Wildfire Securities Action exposes the Debtors to record taint, as "[t]he deposition or trial testimony of its senior executives may be used against the Company in [subsequent] actions." *Johns-Manville*, 26 B.R. at 429; *see also Hawaii Structural Ironworkers*, 2006 WL 3755175, at *5 (concluding discovery in securities action against non-debtors would have a "potential impact upon a claim or suit against the debtor"); *Circle K*, 121 B.R. at 262 ("[T]he deposition or trial testimony of [] senior executives may be used against the company subsequently."). The Wildfire Securities Action thus puts the Debtors in the untenable position of either sitting on the sidelines and risking the development of a legal and factual record that could prejudice them in future proceedings, or abandoning the benefits granted by section 362 of the Bankruptcy Code. To avoid this result, this Court should enjoin further prosecution of the Wildfire Securities Action.[4]

### 4. The Wildfire Securities Action Will Materially Divert the Debtors' Attention Away From Their Reorganization Efforts

In the bankruptcy context, "[i]rreparable harm may be found if an action would 'so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort[s].'" *Fabtech*, 2010 WL 6452908, at *5 (quoting *In re Cont'l Airlines*, 177 B.R. 475, 481 n.6 (D. Del. 1993)). Specifically, "key participants" in a debtor's reorganization efforts must be free to focus their full attention on those efforts. *See id.* (quoting *In re PTI Holding Corp.*, 346 B.R. 820, 827 (Bankr. D. Nev. 2006)). To that end, numerous courts have "easily" found that "[a]ny

---

[4]   Regardless of whether the rulings and evidentiary record developed in the Wildfire Securities Action would prejudice the Debtors, the same issues still would need to be adjudicated twice. The resulting waste of judicial resources and risk of inconsistent findings are sufficient on their own to justify a stay. *See Tuller*, 2018 WL 4385652, at *3 (internal citations omitted) ("Moreover, a stay of the instant action as it applies to Non-Debtors is in the interest of efficiency and will avoid relitigation of the issues presented."); *Essex Ins. Co. v. Kut Sui*, No. 3:12-cv-5773 RJB, 2012 WL 5258858, at *4 (W.D. Wash. Oct. 23, 2012) (granting stay because "the risk of inconsistent results is significant").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

material diversion" of a key participant's "time or energies . . . constitute[s] irreparable harm to the estate[s] and to the [Debtors'] reorganization effort[s]." *See, e.g.*, *PTI Holding Corp.*, 346 B.R. at 827 (Bankr. D. Nev. 2006) (internal citations omitted).

The Wildfire Securities Action presents a unique burden to the Debtors across all aspects of their business. If allowed to go forward, the Wildfire Securities Action will draw the Debtors' employees, at all levels of the company, away from the administration of the Chapter 11 Cases and related issues. The Debtors, their directors, officers, and other employees currently are already engaged in the following tasks, among others, that are critical to their reorganization effort: (i) stabilizing the Debtors' business, which requires managing relationships with and responding to innumerable inquiries from employees, the public, vendors, regulators, the official committees, and other key parties in interest, as well as attending to their day-to-day ordinary course responsibilities; (ii) assisting the Debtors' advisors in preparing for bi-weekly hearings, many of which are contested, and overseeing and reviewing, on expedited timeframes, multiple lengthy and complex documents for filing with the Court; (iii) responding to various demands from the Official Committee of Unsecured Creditors and the Tort Claimants' Committee; (iv) conducting ongoing negotiations with multiple constituencies with respect to various matters related to the successful prosecution of these Chapter 11 Cases; (v) managing the wildfire safety programs key to the Debtors' ongoing operations; and (vi) fulfilling obligations related to *United States v. Pac. Gas & Elec. Co.*, Crim. No. 14-00175-WHA (N.D. Cal.). *See* Collier Decl. ¶ 11.

Should it proceed, the Wildfire Securities Action will materially divert the Debtors and their directors, officers, and employees from these tasks in numerous ways. *See* Collier Decl. ¶ 12. Prosecution of the Wildfire Securities Action against the Non-Debtor Defendants will likely force the Debtors to respond to broad and burdensome discovery. *See id.*; *see also In re Kenoyer*, 489 B.R. 103, 121–22 (Bankr. N.D. Cal. 2013) (noting "the generally accepted view is that § 362(a) does not prevent third-party discovery from a debtor which is directed to the claims asserted against non-debtor parties"). The allegations contained in the Securities Plaintiffs' 228-page TAC implicate potentially millions of pages of documents relating to transactions and events that span decades, and involve many of the Debtors' current directors, officers, and employees, several of whom would likely be deposed.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*See* Collier Decl. ¶ 12. Moreover, given the Debtors' indemnification obligations, and because the Securities Plaintiffs' claims are ultimately directed at the Debtors, the Debtors' in-house legal team would need to monitor the Wildfire Securities Action closely, and would potentially be required to intervene to protect their interests, *see* Collier Decl. ¶ 12, again undermining the automatic stay. Courts have regularly found these considerations sufficient to establish irreparable harm. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) (citation omitted) (enjoining securities action against debtor's co-defendants where "[t]he massive drain on [key officers'] time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan or reorganization"); *Circle K*, 121 B.R. at 262 (enjoining securities claims against non-debtors based, in part, upon the fact that if those proceedings were to continue, the "debtor expects to have to divert personnel and management to respond to discovery and monitor this litigation to protect its interests"); *Johns-Manville Corp*., 26 B.R at 428–30 (same because, in part, the Court concluded that the debtor "face[d] more pressing obligations in the bankruptcy proceedings [that commanded] the attention of its officers, directors, counsel, financial analysts, and administrative personnel").

These concerns are only heightened here, where the Debtors are already engaged in discovery in the Chapter 11 Cases regarding wildfire-related issues. Now is not the time for the Debtors to address further—and potentially conflicting—discovery demands in a separate forum. Given the substantial overlap between the Wildfire Securities Action and the subject matter of the Debtors' reorganization, there is a very real risk that its prosecution and attendant discovery "would ultimately divert the debtor's resources and attention from the bankruptcy process, and possibly deprive this Court of control over issues central to its administration of the [estates]." *Ionosphere Clubs*, 111 B.R. at 435. Continuation of the Wildfire Securities Action would result in "both immediate and irreparable harm" to the Debtors by causing their personnel to be "distracted from participating in the reorganization process." *Lomas*, 117 B.R. at 67.

### C. A Balance of the Harms Clearly Favors the Issuance of a Preliminary Injunction

The balance of harms strongly favors granting injunctive relief for the Debtors. In issuing an injunction under section 105, "the court must balance the relative harm as between the debtor and the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

creditor who would be restrained." *In re Union Tr. Philadelphia, LLC*, 465 B.R. 765, 771 (Bankr. E.D. Pa. 2011) (citation omitted).

As an initial matter, there is no prejudice to the Securities Plaintiffs from applying the stay to the Non-Debtor Defendants. Any information in the Debtors' possession that may be relevant to the Securities Plaintiffs' claims is already being preserved, and is not subject to deterioration. Moreover, the Securities Plaintiffs have not expended significant resources to date in prosecuting the Wildfire Securities Action, with the case still at the pleadings stage and no discovery undertaken. To the extent that any injury can be attributed to delaying the Wildfire Securities Action, "the unquestioned public interest in promoting a viable reorganization of the debtor can be said to outweigh any contrary hardship to the plaintiffs" in the Wildfire Securities Action. *See Family Health Servs.*, 105 B.R. at 945 (quoting *A.H. Robins*, 788 F.2d at 1008).

In stark contrast, harm to the Debtors and their economic stakeholders is readily apparent. As demonstrated above, continuation of the Wildfire Securities Action would, among other things, hinder the Debtors' reorganization efforts and ability to address how the wildfire claims will be resolved in these Chapter 11 Cases; deplete the Debtors' assets in contravention of the Bankruptcy Code; subject the Debtors to serious risks of preclusion, collateral estoppel, and record taint; and distract the Debtors and their key personnel from the administration of these cases and the Debtors successful emergence from chapter 11.

The risk of destabilizing the Debtors' important reorganization efforts far outweighs the minimal prejudice, if any, the Securities Plaintiffs would incur by having to wait alongside all other claimants to pursue their purely pecuniary claims until the reorganization is completed.[5] For these reasons, on balance, the harm to the Debtors that is likely to arise from the continuation of the Wildfire Securities Action far outweighs the minimal harm of a delay in the Wildfire Securities Action.

---

[5] It is also entirely likely that the Securities Plaintiffs' claims—both against the Debtors and the Non-Debtor Defendants—will be addressed either in the context of any plan of reorganization or through a mediation process that can take place after a plan has been proposed.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### D. An Injunction Advances the Public Interest

Public policy also compels extending the stay to the Non-Debtor Defendants. In the Ninth Circuit, "courts have [long] recognized that . . . the public interest lies in promoting successful reorganization." *Family Health Servs.*, 105 B.R. at 945; *see also In re Marley Orchards Income Fund I, Ltd. P'ship*, 120 B.R. 566, 570 (Bankr. E.D. Wash. 1990) ("[T]he public interest is served by issuance of the injunction for it affords the debtor its continued opportunity to reorganize under the provisions of Chapter 11.").

The public interest in a successful reorganization is particularly prevalent here, where the claims of those injured by the wildfires and the provision of safe electricity to the Debtors' customers must take precedence to the Securities Plaintiffs' attempts to recover for purported investment losses. A fair and equitable resolution of the wildfire claims is most likely to be achieved in a single forum, this Court, and not through fragmented litigation across the country. That the Debtors are a utility that provides electricity and natural gas to approximately 16 million customers further demonstrates the public interest in a successful reorganization here. *See* Wells Decl. at 7. The Debtors also employ over 24,000 employees and provide work for countless contractors, who go on to incorporate additional people and resources into the state's workforce. *See id.*; *see also In re Pac. Lifestyle Homes, Inc.*, No. 08-45328, 2009 WL 688606, at *4 (Bankr. W.D. Wash. Mar. 16, 2009) ("Certainly there is an interest in keeping the Debtor, who employs over 20 employees and who provides work for countless contractors, in business."). As a result, "[t]he public interest in successful reorganization is significant." *See Fabtech*, 2010 WL 6452908, at *6 (quoting *PTI Holding Corp.*, 346 B.R. at 832) (alteration in original).

## V. CONCLUSION

For all the foregoing reasons, the Court should grant the Debtors' Motion and enter the Proposed Order.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

23

Dated: June 18, 2019

WEIL, GOTSHAL & MANGES LLP

KELLER & BENVENUTTI LLP

By: _/s/ Theodore E. Tsekerides_
      Theodore E. Tsekerides

*Attorneys for Plaintiffs (Debtors and Debtors in Possession)*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

Attorneys for Plaintiffs (Debtors and Debtors
in Possession)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br><br>**Debtors.** | Case Nos. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br><br><br>Adv. Pro. No. 19-03039 (DM) |
| **PG&E CORPORATION and PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO and YORK COUNTY**<br><br>**Defendants.** | **[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION AS TO *IN RE PG&E CORP. SECURITIES LITIG.*, 18-CV-03509 (N.D. CAL.)**<br><br>Date:<br>Time:<br>Place:  United States Bankruptcy Court<br>            Courtroom 17, 16th Floor<br>            San Francisco, CA 94102 |

*Weil, Gotshal & Manges LLP*
*767 Fifth Avenue*
*New York, NY 10153-0119*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The *Debtors' Motion for Preliminary Injunction as to In re PG&E Corp. Securities Litig., 18-CV-03509 (N.D. Cal.)* (the "**Motion**"), brought by PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), and as plaintiffs in the above-captioned adversary proceeding, came before this Court for a hearing at the above-captioned date and time. Appearances of counsel were as stated on the record.

By the Motion, the Debtors seek to enjoin *In re PG&E Corp. Securities Litig.,* 18-CV-03509 (N.D. Cal.) (the "**Wildfire Securities Action**") commenced by the Public Employees Retirement Association of New Mexico ("**PERA**"), and York County, acting on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund ("**York**", and together with PERA, the "**Defendants**" or the "**Securities Plaintiffs**").

Having fully considered the Motion, *Debtors' Complaint for Preliminary and Permanent Injunctive Relief as to In re PG&E Corp. Securities Litig., 18-cv-03509 (N.D. Cal.)*; the *Memorandum of Points and Authorities in Support of Debtors' Motion for a Preliminary Injunction as to In re PG&E Corp. Securities Litig., 18-cv-03509 (N.D. Cal.)*; *the Declaration of Elizabeth Collier in Support of Debtors' Motion for a Preliminary Injunction as to In re PG&E Corp. Securities Litig., 18-cv-03509 (N.D. Cal.)*, as well as supporting documents thereto; the pleadings and other papers filed by Defendant(s), all other evidence in the record, and the arguments presented by counsel, the Court finds and concludes as follows:

### Findings of Fact and Conclusions of Law

A.     This Court has jurisdiction over this adversary proceeding and the Chapter 11 Cases to which it is related, and has jurisdiction to consider the Motion and the relief requested therein, pursuant to 28 U.S.C. §§ 157 and 1334, and the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 and Rule 5011-1(a) of the Bankruptcy Local Rules; and consideration of the Motion and the requested relief are a core proceeding pursuant to 28 U.S.C. § 157(b).

B.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

C.      Notice of the Motion and of the hearing thereon was properly given to the Defendants as shown by the proof of service on file herein, and notice of the hearing on the Motion was fair, reasonable and appropriate under the circumstances.

D.      This Court is authorized to grant the injunctive and other relief requested by the Debtors under section 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), Federal Rule of Civil Procedure 65 and Rule 65-2 of the Civil Local Rules for the United States District Court for the Northern District of California (the "**Civil Local Rules**"), as made applicable in these proceedings pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and 1001-2(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").

E.      The automatic stay of section 362 of the Bankruptcy Code applies to, and restrains the continuation or prosecution of, any action or proceeding against the Debtors.

F.      This Court has "related to" jurisdiction over the Wildfire Securities Action under 28 U.S.C. §§ 157 and 1334.

G.      Section 105 of the Bankruptcy Code vests this Court with the power and authority to issue the injunctive relief requested by the Motion.

H.      The Debtors have demonstrated that they are likely to reorganize successfully.

I.      The injunctive relief sought by the Motion is necessary to prevent irreparable harm to the Debtors and their estates, and to protect the reorganizational goals of the Bankruptcy Code.

J.      The balance of hardships weighs heavily in favor of granting the injunctive relief requested by the Debtors.  By comparison, the Defendants would not suffer any hardship or injury from the granting of such relief.

K.      Granting the relief requested is in the public interest.

L.      The Court adopts as part of its findings of fact and conclusions of law any additional statement of reasons for granting this relief made by the Court on the record at the conclusion of the hearing.

Accordingly, for good cause,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      As of the Petition Date, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of proceedings against the Debtors.

3.      The Wildfire Securities Action, including any and all upcoming deadlines in that proceeding, is preliminarily enjoined under section 105 of the Bankruptcy Code with the same effect and to the same extent as would be the case if section 362(a) of the Bankruptcy Code applied, and the Defendants are hereby enjoined from taking any action to pursue their claims against the Non-Debtor Defendants[1] in the Wildfire Securities Action or in any other action or proceeding.

4.      The Debtors shall serve this Order, as well as all supporting pleadings and papers, on the Defendants, their counsel within two business days of its entry.

5.      The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

6.      Nothing contained in this Order is intended to be or shall be construed as (a) a determination as to the validity or invalidity of any claims or defenses asserted in the Wildfire Securities Action, or (b) a limitation on the Debtors' or any other appropriate party's right to dispute any claims or defenses in the Wildfire Securities Action.

7.      Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

8.      This Order shall be immediately effective and enforceable upon its entry.

9.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**\*\* END OF ORDER \*\***

---

[1] Capitalized terms herein shall have the meaning ascribed to them in the Motion.