**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors
and Debtors in Possession*

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re:

**PG&E CORPORATION,**

- and -

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☑ Affects Pacific Gas and Electric Company
☐ Affects both Debtors

* *All papers shall be filed in the Lead Case,
No. 19-30088 (DM).*

Case No. 19-30088 (DM)
Chapter 11
(Lead Case) (Jointly Administered)

**DEBTORS' SUPPLEMENTAL
BRIEF IN FURTHER OPPOSITION
TO TODD HEARN'S MOTION FOR
RELIEF FROM AUTOMATIC STAY**

Relates to Dkt. Nos. 4820, 5095, 5097,
5098, 5239

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1        Pacific Gas and Electric Company (the "**Utility**"), and PG&E Corporation (together with the

2    Utility, the "**Debtors**" in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**")),

3    respectfully submit this supplemental brief in opposition (the "**Supplemental Opposition**") to the

4    Motion for Relief from Automatic Stay [ECF No. 4820] (the "**Motion**"), filed by Todd Hearn

5    ("**Hearn**"), and in response to Hearn's Supplemental Brief in Support of Motion [ECF No. 5239]

6    (the "**Supplemental Brief**").  In support of the Supplemental Opposition, the Utility submits the

7    Supplemental Declaration of Stacy Campos (the "**Supplemental Campos Declaration**"), filed

8    contemporaneously herewith.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

# I. PRELIMINARY STATEMENT

Hearn seeks relief from the automatic stay to commence an unfiled employment lawsuit against the Utility. He seeks this relief despite having already chosen to commence a grievance proceeding in which his termination is being adjudicated, and by which he may, if successful, be entitled to reinstatement of his employment and, in his own declarant's words, be "made whole for all lost wages and benefits."[1] In this regard, the reasons to lift the stay for Hearn are even less compelling than those involved in another motion for relief from the stay, which the Court denied, filed by Adam Cronin, a former Utility employee who sought to challenge his own termination and who did not have a separate grievance proceeding already pending.

At the December 17 hearing (the "**Hearing**"), the Court invited Hearn to file supplemental briefing in support of the Motion. In his filing, Hearn posits numerous arguments in support of his requested relief, including, among others, that: (1) he will incur significant harm if the stay remains in place, and the Debtors will not incur harm if it is lifted, (2) the grievance process will not provide a fair adjudication of his claims for reinstatement and lost wages, and (3) federal law does not preempt his statutory claims. None of these arguments, however, alter the conclusion here: the relevant *Curtis* factors clearly dictate that the Court should not lift the stay. *See* Opp. at 5–11.

At the Hearing, the Court asked Hearn's counsel a straightforward question: "Why would I grant relief here, when you've got this whole resolution process in place?" *See* Hearing Tr. 61:22–23. Hearn has no good answer to this question because his grievance allows him to seek reinstatement and lost wages—remedies that would fully alleviate the financial hardship he says he currently faces. Moreover, contrary to Hearn's attempts to now criticize the grievance proceeding that he himself commenced, his entitlement to those remedies will be determined through a fair process that was negotiated at arm's length between the Utility and Hearn's Union.[2] Indeed, Hearn's Union has already sought and obtained significant discovery of the Utility in his grievance

---

[1] *Declaration of Alexander Pacheco Submitted with Supplemental Brief in Support of Motion for Relief from Automatic Stay* ¶ 11, ECF No. 5239-1 ("**Pacheco Declaration**").

[2] Capitalized terms not defined herein have the meaning ascribed in Debtors' Preliminary Opposition to Todd Hearn's Motion for Relief from Automatic Stay, ECF No. 5095 (the "**Opposition**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

proceeding.  Further, as Hearn now concedes, an experienced Union attorney will represent him at any grievance arbitration, during which that attorney will be able to question witnesses under oath. Moreover, while an arbitration panel would not rule on whether the Utility violated any State of California whistleblower statutes, Hearn will be able to present (and already has introduced) his theory that his termination was a retaliatory act and thus not for the just cause required by the IBEW/Utility collective bargaining agreement (the "**CBA**").[3]

Lifting the stay to allow Hearn to file the Proposed Lawsuit in the face of these facts would be inconsistent with the purpose of section 362 of the Bankruptcy Code.  The Court is well aware of the complexity of these Chapter 11 Cases as well as the good-faith progress the Debtors have made toward confirmation of a plan.  There is still much more to be done, however, in order to meet the deadline established under AB 1054.  The Debtors should not be required to divert attention to matters unrelated to timely confirmation of their plan, which will inure to the benefit of all creditors, absent compelling justification not present here.  Many other plaintiffs are waiting to liquidate their claims against the Debtors.  There is no reason why Hearn should be provided special treatment.

In addition, while the Debtors do not dispute Hearn's assertion that he is not required to assert his statutory whistleblower claims in the grievance proceeding, it is not a foregone conclusion that the state court would be the proper forum to resolve those causes of action, as the Court has already recognized.  *See* Hearing Tr. 65:10–11 ("[W]hy couldn't [Hearn's claims] be adjudicated as part of the claims objections process?").

For these reasons and as set forth more fully herein, the Court should deny the Motion.

---

[3] As stated in the Opposition, the Utility strongly maintains that it had just cause to terminate Hearn, including for misusing company time, misstating work activities, fraudulent submissions of timecards, and delayed service time to customers.  *See* Opp. at 1–3.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

## II.   ARGUMENT

As discussed below, the arguments Hearn sets forth in his Supplemental Brief are either incorrect or irrelevant to the question of whether the Court should lift the stay.

### A.   Lifting the Stay is Not Necessary to Cure the Harm Hearn Alleges, and Would Interfere with the Debtors' Restructuring

Hearn has failed to demonstrate that leaving the stay in place would cause him any prejudice. As explained in the Opposition, the grievance proceeding offers Hearn a forum in which he may pursue reinstatement and compensation for lost wages, overtime opportunities and benefits. *See* Opp. at 3–4. Indeed, as Hearn's own declarant, IBEW attorney Alex Pacheco states, through the grievance proceeding Hearn could be: "(1) reinstated to his former position, (2) *made whole* for all lost wages and benefits, and (3) ha[ve] all other emoluments of his position restored." Pacheco Decl. ¶ 11 (emphasis added). These potential remedies would eliminate the alleged financial harm Hearn claims he would continue to incur if the Court declines to lift the stay. *See* Supp. Br. at 11–12 (contending that Hearn is unable to find new employment, and that relief from stay is thus necessary to avoid the continued loss of income and benefits he had received from the Utility).[4]

Given that Hearn is able to seek reinstatement and recovery of lost wages in the grievance proceeding, the only detriment he could even arguably incur from a decision by the Court to leave the stay in place would be having to wait to pursue emotional harm and punitive damages.[5] But

---

[4] As previously noted, the Utility contests Hearn's allegation that he is unable to find employment as a lineman in Northern California. *See* Opp. at 7. The Utility also disputes Hearn's allegation that the Utility has somehow prohibited him from working for any contractors in Northern California. *See id.* Even Mr. Hearn's own declaration makes clear that he is only ineligible to work on projects for PG&E; nothing prevents a contractor from hiring Mr. Hearn to work on projects for other entities. *See Declaration of Todd Hearn Submitted with Supplement Brief in Support of Motion for Relief from Automatic Stay*, ECF No. 5239-2, Ex. A (stating only that Hearn is ineligible to work "on PG&E projects").

[5] Hearn notes that the grievance process does not provide for attorneys' fees, *see* Supp. Br. at 2, 10, but this does not support relief from stay. If the stay remains in place, Hearn should not incur any attorneys' fees, because the IBEW, not Hearn, is responsible for the cost of attorneys' fees during the grievance proceeding, *see* Supp. Campos Decl. ¶ 5, and because he would not incur any attorneys' fees in connection with a separate statutory whistleblower case.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Hearn has no need to pursue these damages to avoid the financial hardship he alleges to be incurring as a result of his unemployment.  *See* Supp. Br. at 12.

In contrast to the lack of harm to Hearn, and as more fully discussed in the Opposition, relief from the stay would interfere with the Debtors' restructuring.  *See* Opp. at 7–8.  Hearn asserts in his Supplemental Brief that it is "hard to imagine" how forcing the Debtors to defend the Proposed Lawsuit "would interfere with the Debtors' reorganization efforts."  *See* Supp. Br. at 12.  This contention is wholly unsupported and wrong.  The Debtors are in the process of preparing and will shortly be filing a disclosure statement seeking authority to commence solicitation of votes to accept or reject their chapter 11 plan.  Additionally, the parties and the Court are in the process of addressing certain issues relating to the confirmation of both chapter 11 plans (including, without limitation, issues relating to impairment and make-whole premiums).  The Debtors will be seeking approval of their backstopped debt and equity commitments, drafting, negotiating, and filing all of the other plan transaction documents, and reviewing and preparing schedules of the Debtors' thousands of executory contracts and leases to be assumed or rejected (and addressing related cure objections).  The Debtors are also beginning the process of reviewing and reconciling the tens of thousands of claims that have been filed.  This is in addition to maintaining the Debtors' normal day-to-day operations, managing their vast network of vendors, suppliers, and contract counterparties, and focusing on delivering power to their 16 million customers in a safe and reliable manner.  Consistent with the very purpose of the automatic stay, the Debtors should not be required to divert attention from the timely confirmation of a plan.[6]

Hearn further speculates in his Supplemental Brief that allowing him to seek largely overlapping remedies against the Utility in two separate forums at this time will not harm the Debtors because "PG&E has several in-house lawyers dedicated specifically to employment litigation."  *See* Supp. Br. at 12.  The Utility has only three in-house employment attorneys to handle all labor and employment related issues that arise in a company that employs over 24,000 people.

---

[6] Moreover, even if the litigation of any one case might not substantially interfere with the Debtors' restructuring, that is not the point.  The purpose of the automatic stay is also to prevent the Debtor suffering death by a thousand cuts.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

*See* Supp. Campos Decl. ¶ 6.  In addition to their usual day-to-day tasks, which include addressing

human resource matters and ongoing grievances like Hearn's, as well as preparing for arbitration

hearings on matters already referred to arbitration by the IBEW and Utility (which are not

automatically stayed), the Utility's employment attorneys are also currently under significant time

pressure to assess the over 130 employment-related proofs of claim that were recently filed in these

Chapter 11 Cases.  *See id*.  The Proposed Lawsuit would distract from these efforts.  *See id*.

Furthermore, if the Court grants the Motion, it would invite dozens of other plaintiffs to pursue

employment claims against the Utility, further impeding the ability of the Debtors' employment

team to complete its tasks with respect to the Debtors' reorganization efforts.

B. <u>**The Grievance Proceeding Will Provide Hearn with a Fair Adjudication of**</u>
<u>**Whether he is Entitled to Reinstatement and Lost Wages**</u>

Hearn also argues in his Supplemental Brief that the Court should lift the stay because the

grievance procedure does not afford him "the same procedural rights (a lawyer, discovery, a jury

trial) . . . that a State Court Action would."  Supp. Br. at 2.  These assertions, and others made by

Hearn's counsel at the Hearing,[7] are misleading at best.  As an initial matter, Hearn's argument fails

to acknowledge an undisputed and important fact:  Hearn *chose* to initiate his grievance proceeding,

the parameters of which were negotiated for at arms-length by Hearn's Union, the IBEW.

Moreover, to date the IBEW has not complained to the Utility on Hearn's behalf of any procedural

inequities in Hearn's grievance proceeding.  *See* Supp. Campos Decl. ¶ 7.

The grievance proceeding provides a procedurally fair forum and process through which

Hearn may pursue reinstatement and lost wages.  *See* Opp. at 3–4.  Under the National Labor

Relations Act (the "**NLRA**"), the IBEW is obligated to handle Hearn's grievance fairly, and with

care.  *See Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1395 (9th Cir. 1985) ("The

union must exercise special care in handling a grievance which concerns a discharge . . . .").  Hearn

---

[7] *See* Hearing Tr. 67:7–10 (asserting that the grievance proceeding is a "private, secret arbitration, where Mr. Hearn doesn't have a lawyer, doesn't have discovery"); 70:21–25 (confirming to the Court that Hearn does not "have a right to counsel at the arbitration stage," and that Hearn does not have a right to counsel "all the way through the arbitration").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

also now concedes that an attorney provided by the IBEW would represent him in any arbitration, should the grievance process progress to that stage. *See* Pacheco Decl. ¶ 9; *see also* Campos Decl. ¶ 8.[8] In addition to the NLRA, the rules of the California Bar further obligate such counsel to represent Hearn fairly and diligently. *See* Cal. R. Prof'l Cond. 1.3.

Hearn also has ample opportunity to seek discovery from the Utility in the grievance proceeding. The NLRA's mandate requires the Union to request and obtain relevant discovery during the grievance process. *See, e.g.*, *Service Employees Local 579 (Convacare of Decatur)*, 229 NLRB 692 (1977). Moreover, the NLRA requires the Utility to disclose relevant information in response to information requests from the IBEW. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303 (1979) ("The duty to bargain collectively, imposed upon an employer by § 8(a)(5) of the National Labor Relations Act, includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative.").

In keeping with these requirements, the grievance process affords Hearn significant discovery rights. *See* Supp. Campos Decl. ¶ 9. Indeed, the IBEW has already undertaken substantial discovery of the Utility on Hearn's behalf in his grievance proceeding. During the recently completed Step Two of the grievance proceeding—adjudication before the Local Investigating Committee—the Union and the Utility heard statements from seventeen witnesses, including Hearn, over the course of seven days. *See id*. The Union also served the Utility with information requests and, acting through the Local Investigating Committee, the parties submitted 107 exhibits to the next grievance step. *See id*.[9] Moreover, at the arbitration stage, the IBEW attorney representing Hearn

---

[8] In the Utility's experience, the Union either uses its own in-house counsel (such as Alexander Pacheco) to represent its members during the arbitration stage of the grievance proceeding, or retains outside counsel, most often attorneys from the respected Bay Area labor law firm Leonard Carder LLP. *See* Supp. Campos Decl. ¶ 8.

[9] Hearn states in his Supplemental Brief that the "limited remedies and lack of discovery in the Union grievance process make enforcement of the CBA unconscionable." *See* Supp Br. at 10 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 102 (2000)). This contention is odd since *Hearn* initiated the grievance proceeding, and because both the Utility and the Union regularly engage in such grievances and have done so for decades. *See* Supp. Campos Decl. ¶ 10.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

will be able to issue arbitration subpoenas to compel production of documents and witnesses, who will then be required to testify under oath and be subject to penalties of perjury. *See id*.

Further underscoring the lack of prejudice that Hearn will incur by continuing through the grievance process is that, in that proceeding, he is able to his raise any factual allegations he believes to be true regarding his termination. Hearn contends that his grievance is not the proper forum for adjudication of the merits of any statutory claims, *see* Supp. Br. at 3–7, and the Utility does not dispute that point. However, this does not mean that in the grievance process Hearn cannot set forth his allegations, albeit contested, that the Utility terminated him in retaliation for raising safety concerns. Indeed, he already expressly raised this theory to the Local Investigating Committee during Step Two of the grievance proceeding. *See* Supp. Campos Decl. ¶ 11. The ultimate question facing any arbitration panel in a grievance regarding employee termination is whether the employee was terminated without just cause. *See id*. In order to answer that question, an arbitration panel would necessarily have to consider an employee's alternative theories as to the reasons for his or her termination. *See id*.[10]

In sum, the grievance process, which Hearn initiated nearly a year ago, will provide him a procedurally and substantively fair adjudication of whether he is entitled to reinstatement and lost wages. The Court should deny the Motion on this basis alone.

C.    **The Possibility of Preemption Provides a Basis for Denying the Motion**

Further weighing in favor of denying the Motion is that section 301 of the Labor Management Relations Act (the "**LMRA**") may preempt Hearn's whistleblower claims. If the Court lifts the stay, the parties will likely engage in extensive litigation on the issue of LMRA preemption before they even reach the merits of the Proposed Lawsuit. A tribunal could very well find, after the

---

[10] For this same reason, and as argued in the Opposition, the interests of judicial economy favor denial of the Motion. *See* Opp. at 10. If allowed to proceed in parallel with the ongoing grievance proceeding, the Proposed Lawsuit will waste judicial resources by requiring two separate forums to adjudicate issues arising from the same alleged prepetition conduct of the Utility—namely, whether the Utility terminated Hearn for just cause. There is no reason for two, separate tribunals to adjudicate the same issues now, particularly given the remedies available to Hearn through the grievance, and where the Utility has already committed significant resources to adjudicating Hearn's grievance.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1 required fact-intensive, claim-by-claim inquiry, that Hearn's whistleblower claims are preempted,

2 leaving the grievance process as Hearn's sole avenue for seeking redress. While this Court need not

3 decide this issue, the possibility of Hearn's statutory claims being preempted provides an additional

4 ground for denial of this Motion.

5       The Utility has significant preemption arguments that it intends to assert if the stay is lifted to

6 allow Hearn to file his whistleblower claims in state court. As courts have recognized, "[w]here

7 resolution [of a claim] requires interpretation of a collective bargaining agreement, Section 301

8 preemption applies and the claims at issue must be dismissed." *See De'Sart v. PG&E*, 2018 WL

9 3545927, *3 (C.D. Cal. Jul. 18, 2018) (finding state law wrongful termination and FEHA claims

10 preempted under Section 301); *Greer v. PG&E*, 2015 WL 9473415 at *11, (E.D. Cal. Dec. 28,

11 2015). Under this standard, courts have found that, where the central issue to a claim is whether the

12 employer's decision to terminate a union-represented employee under a collective bargaining

13 agreement was either legitimate—and therefore non-discriminatory or non-retaliatory—or pretext

14 for discrimination or retaliation, the claim requires interpretation of the CBA, and is therefore

15 preempted by Section 301. *See Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir.

16 1996) (finding that discrimination claim was preempted by Section 301 because "[the employer] will

17 undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for [plaintiff's] treatment"

18 and "[w]hen [plaintiff] then attempts to show that [employer's] stated reason is pretextual, the CBA

19 would have to be interpreted because [plaintiff] would have to challenge [employer's] rights under

20 the CBA"); *De'Sart*, 2018 WL 3545927, at *4 ("To determine if these alleged adverse actions were

21 based on legitimate non-discriminatory/non-retaliatory factors or otherwise violated the law, the

22 Court must 'determine whether [the company] was acting consistently with its duties under the CBA

23 . . . by interpreting [its] provisions.'"); *Madison v. Motion Picture Set Painters & Sign Writers Local

24 729*, 132 F. Supp. 2d 1244, 1253–55 (C.D. Cal. 2000) (discrimination claims were preempted

25 because the framework for a prima facie case of discrimination required resort to the collective

26 bargaining agreement); *Audette v. I.L.W.U.*, 195 F.3d 1107, 1113 (9th Cir. 1999) (sex

27 discrimination/harassment claims preempted by Section 301); *Perugini v. Safeway Stores, Inc.*, 935

28 F.2d 1083, 1088 (9th Cir. 1991) (finding emotional distress claim preempted because resolution

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

required the court to "determine whether [the company] was acting consistently with its duties under the CBA").

Hearn concedes that in order to prevail in the Proposed Lawsuit he must show that the Utility's stated reasons for terminating him are pretextual. *See* Mot. at 6 ("HEARN's claims . . . involve complex issues of motive and pretext . . . . Given PG&E's expected defense (i.e., HEARN deserved to be fired for inaccurately reporting his work time), the allegations against HEARN will also have to be proven to be false."). Consistent with the numerous decisions discussed above, Hearn's whistleblower claims thus require a tribunal to interpret the CBA, and are in turn likely preempted by Section 301.[11]

### III.    CONCLUSION

For the reasons stated above and in the Opposition, the Motion should be denied.

Dated: January 14, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: */s/ Richard W. Slack*
      Richard W. Slack

*Attorneys for Debtors and Debtors in Possession*

---

[11] Hearn's arguments that his whistleblower claims are not preempted, *see* Supp. Br. at 7–10, buttress the fact that the parties will undoubtedly engage in significant litigation over preemption issues if the Court lifts the stay.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119