**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)|
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**SUPPLEMENTAL DECLARATION OF STACY CAMPOS IN SUPPORT OF DEBTORS' SUPPLEMENTAL OPPOSITION TO TODD HEARN'S MOTION FOR RELIEF FROM AUTOMATIC STAY** |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Stacy Campos, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am employed as a Managing Counsel, Employment, Labor and Workers' Compensation, in the Law Department of Pacific Gas and Electric Company (the "**Utility**"), a wholly-owned subsidiary of PG&E Corporation ("**PG&E Corp.**", and together with Utility, the "**Debtors**" in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**")). In my current role, I am responsible for supervising two employment and labor attorneys, and advising leaders on human resource and labor issues. My team is also responsible for the arbitration step of the Utility/International Brotherhood of Electrical Workers (the "**IBEW**" or "**Union**") Local 1245 collective bargaining agreement (the "**CBA**").

2. I joined the Utility in 1995. I obtained my Juris Doctorate from University of California, Hastings College of Law in 1991 and was admitted to the State Bar of California the same year. Prior to working at the Utility, I was an associate at Littler, a national employment and labor law firm.

3. I submit this declaration in support of the Debtors' Supplemental Brief in Further Opposition to Todd Hearn's ("**Hearn**") Motion for Relief from Automatic Stay ("**Motion**") filed, filed on the date hereof. Through his Motion, Hearn seeks to commence a lawsuit (the "**Proposed Lawsuit**") against the Utility and twenty-five (25) unnamed defendants in the Superior Court of California in and for the County of Napa. I am authorized to submit this declaration on behalf of the Debtors and, if called upon, would testify to the facts set forth herein.

4. The facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors, or my opinion based upon experience, knowledge, and information concerning the matters discussed herein.

5. The IBEW, not Hearn, is responsible for the cost of attorneys' fees during his grievance proceeding.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

6. The Utility has only myself and the two other in-house employment attorneys that report to me to handle all labor and employment related issues that arise in a company that employs over 24,000 people. In addition to our usual day-to-day tasks, which include addressing human resource matters and ongoing grievances like Hearn's, as well as preparing for arbitration hearings on matters already referred to arbitration by the IBEW and Utility (which are not automatically stayed), we are also currently under significant time pressure to assess the over 130 employment-related proofs of claim that were recently filed in these Chapter 11 Cases. The Proposed Lawsuit would distract from these efforts.

7. To date, the IBEW has not complained to the Utility on Hearn's behalf of any procedural inequities in Hearn's grievance proceeding.

8. In any arbitration in his grievance proceeding, Hearn would be represented by an attorney provided by the IBEW. In the Utility's experience, the Union either uses its own in-house counsel (such as Alexander Pacheco) to represent its members during the arbitration stage of the grievance proceeding, or retains outside counsel, most often attorneys from the respected Bay Area labor law firm Leonard Carder LLP.

9. The grievance process affords Hearn significant discovery rights. Indeed, the IBEW has already undertaken substantial discovery of the Utility on Hearn's behalf in his grievance proceeding. During the recently completed Step Two of the grievance proceeding—adjudication before the Local Investigating Committee—the Union and the Utility heard statements from seventeen witnesses, including Hearn, over the course of seven days. The Union also served the Utility with information requests and, acting through the Local Investigating Committee, the parties submitted 107 exhibits to the next grievance step. At the arbitration stage, the IBEW attorney representing Hearn will be able to issue arbitration subpoenas to compel production of documents and witnesses, who will then be required to testify under oath and be subject to penalties of perjury.

10. The Utility and the Union regularly engage in grievance proceedings under the CBA, and have done so for decades.

11.     Hearn expressly raised to the Local Investigating Committee during Step Two of the grievance proceeding his theory that the Utility terminated him in retaliation for raising safety concerns. The ultimate question facing any arbitration panel in a grievance regarding employee termination is whether the employee was terminated without just cause. In order to answer that question, an arbitration panel would necessarily have to consider an employee's alternative theories as to the reasons for his or her termination.

Dated: January 14, 2020                 /s/ _____
                                         Stacy A. Campos