COLETTE F. STONE, ESQ. (SBN: 129773)
RONALD F. BERESTKA, JR. ESQ. (SBN: 155707)
STONE & ASSOCIATES
A Professional Corporation
2125 Ygnacio Valley Road, Suite 101
Walnut Creek, CA 94598
Telephone: (925) 938-1555
Facsimile: (925) 938-2937
Email: cstone@stonelawoffice.com
rberestka@stonelawoffice.com

Attorneys for Defendants,
GEORGE M. VLAZAKIS; MARIA BARBIS; JOHN BARBIS;
and ATHANASIA V. VLAZAKIS

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re:<br><br>PG&E CORPORATION,<br><br>And<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors,<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects Both Debtors<br><br>*All papers shall be filed in the Lead Case, no. 19-30088 (DM)* | CASE NO. 19-30088 (DM)<br><br>Chapter 11<br><br>**DEFENDANTS' OPPOSITION TO DEBTORS' MOTION TO REJECT VLAZAKIS CONTRACT AND GRANT RELATED RELIEF**<br><br>Date: February 11, 2020<br>Time: 10:00 a.m.<br>Dept.: 17<br>    450 Golden Gate Ave<br>    San Francisco, CA 94102<br>Judge: Dennis Montali |

# TABLE OF CONTENTS

I. INTRODUCTION/SUMMARY OF ARGUMENT ..........................................................................4

II. FACTUAL BACKGROUND ...........................................................................................................6

    A. The PG & E and Vlazakis Properties ...........................................................................................6

    B. PG & E and Vlazakises Enter a Contract to Give the Vlazakises Ownership of the Common Wall and Adjacent Strip of Land...................................................................................6

    C. The Vlazakises Perform All of Their Material Obligations Under the Contract............7

    D. PG & E Seeks to Avoid Contract Obligations .................................................................8

    E. PG & E's Lawsuit in California State Court....................................................................9

III. LEGAL DISCUSSION ...................................................................................................................10

    A. The Contract is Non=Executory and Cannot be Rejected as the Vlazakises Have Performed All Material Obligations................................................................................................10

    B. PG & E's Effort to Reject the Contract is a Bad Faith Litigation Strategy to Win its Case in the State Court by Striping the Vlazakises of Contractual Rights that Would Defeat PG & E's State Court Claim .......................................................................................................13

    C. Relief From Stay as to Contract Claims is Warranted as Claims Are Compulsory, and Necessary to a Determination of the Trespass and Nuisance Claims Raised by PG & E in its State Court Action............................................................................................................................16

    D. Bankruptcy Stay Inapplicable to Proposed Cross-Complaint in a Lawsuit Filed by PG & E After its Bankruptcy Petition.........................................................................................18

IV. CONCLUSION ...............................................................................................................................19

# TABLE OF AUTHORITIES
Cases

*Agarwal v. Pomona Valley Med. Grp., Inc., (In re Pomona Valley Med. Grp., Inc.,*
476 F.3d 665 .................................................................................................................. 5, 14

*In re Audra-John Corp.,* 140 B.R. 752 (Bankr. D. Minn. 1992) .................................................. 14

*In re Aslan,* 909 F.2d 367 (9th Cir. 1990) ................................................................................... 11

*In re Barrows,* 15 B.R. 338 (Bankr. M.D. Pa. 1981) .................................................................. 16

*In re Chi-Feng Huang,* 23 B.R. 798 (Bankr. 9th Cir. 1982) ....................................................... 13

*In re G Survivor Corp.,* 171 B.R. 755 (Bankr. S.D.N.Y. 1994) ................................................... 14

*Hall v. Perry (In re Cochise Coll. Park, Inc.),* 703 F.2d 1339 (9th Cir. 1983) ..................... 10, 11

*Johnson v. Righetti (In re Johnson),* 756 F.2d 738 (9th Cir. 1985) ............................................ 10

*In re Kong,* 162 B.R. 86 (Bankr. E.D.N.Y. 1993) ...................................................................... 13

*In re Lawson,* 146 B.R. 663 (Bankr. E.D. Va. 1992) .................................................................. 14

*In re Orion Pictures Corp.,* 4 F.3d 1095 (2d Cir. 1993) .............................................................. 13

*In re Santa Clara County Fair Ass'n,* 180 B.R. 564 (B.A.P. 9th Cir.(Cal.) 1995) ..................... 16

*In re Sentry Park Ltd.,* 87 B.R. 427 (BK. W.D. Tex. 1988) ....................................................... 16

*In re Tuscan Estates, Inc.,* 912 F2d 1162 (9th Cir. 1990) ........................................................... 16

*Unsecured Creditors' Comm. V. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.)*
139 F.3d 702 (9th Cir. 1998) ................................................................................... 5, 10, 11

Statutes & Rules

11 U.S.C. § 362 .............................................................................................................................. 18

# I. INTRODUCTION/SUMMARY OF ARGUMENT

Debtor in possession Pacific Gas & Electric Company (PG & E) filed a state court lawsuit alleging nuisance and trespass to its premises, and now seeks to bar the Vlazakis family defendants, in that action, from asserting their contractual right to use of those very premises which would in effect bar PG & E's claim. PG & E seeks to gut the Vlazakis family's contractual property rights through the guise of "rejecting" the Contract under section 365(a) of the Bankruptcy Code, something this code section was not designed to do. Aside from the fact that the Contract is non-executory and therefore not subject to rejection, PG & E seeks to abuse the bankruptcy process through its bad faith efforts—not to protect the assets of PG & E as debtor, or other creditors—but instead as a litigation strategy to strip the Vlazakis family of legal contractual rights critical to the defense of a lawsuit brought by PG & E as a plaintiff, so PG & E can demolish a family-owned building.

The gist of the current dispute arises from a November 2017 contract between PG & E and the Vlazakises, by which PG & E agreed to shore up an existing common wall bordering the PG & E and Vlazakis properties, for the benefit of the Vlazakis building and to free up additional space on PG & E's premises so that PG & E could construct a natural gas substation. Under the terms of the Contract, a lot line adjustment was to be performed by which a 4-foot by 50-foot strip of property owned by PG & E, including the common wall, would be deeded to the Vlazakises. The Vlazakises complied with all terms of the Contract—they provided all documents required of them, allowed PG & E virtually unfettered access to their premises, cooperated in the construction process when needed, and signed all joint permit applications that PG & E submitted to the City of Oakland. Thereafter PG & E indicated that it would not perform its obligations under the contract.

Several months after PG & E breached the Contract, on June 4, 2019, PG & E filed a lawsuit entitled *Pacific Gas & Electric Company v. Vlazakis, et al.*, California Superior Court, County of Alameda, Case number RG19021463. In that action PG & E alleged that the Vlazakises are trespassing and maintaining a nuisance by continuing to utilize the common party wall attached to PG & E's building to support the roof structure of Vlazakis' adjoining building. PG & E also

seeks injunctive relief to tear down the common wall which will cause the Vlazakis' building to collapse. Significantly, these adjoining structures have been in place for more than 50 years.

The Vlazakis family sought relief from the bankruptcy stay to file a compulsory state law cross-complaint in the action instituted by PG & E. The Vlazakis defendants' motion for relief from automatic stay was argued on December 17, 2019 before this court. Included in the proposed cross-complaint are contract causes of action, by which the Vlazakises seek to establish their *contractual* rights to the common wall for the continued support of their building at 751 Third Street. If proven, the Vlazakises contract claims would bar PG & E's claim for damages and injunctive relief based on trespass and nuisance.

PG & E opposed the motion for relief from stay only as to the contract claims included within the Vlazakis' proposed cross-complaint stating—for the very first time—that it intended to reject the Contract.[1] The instant motion followed.

As set forth more fully herein, the Contract cannot be rejected because it is not executory since the Vlazakises have performed all material obligations required under the agreement. *Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.),* 139 F.3d 702, 705, 706 (9th Cir. 1998) (en banc). Further, even if the Contract were deemed executory, which it is not, the rejection sought here—one year after PG & E's bankruptcy petition—is being requested in bad faith. PG & E is not seeking to reject the contract as an exercise of business judgment, rather it is a litigation strategy to support PG & E's effort for affirmative relief in the state court action. *See Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (bad faith is cause to refuse request to reject contract). Here, PG & E seeks to use bankruptcy law to strip the Vlazakises of their ability to establish contractual rights to use of the common wall, which if proven, would bar PG & E's state court action.

---

[1] PG & E attempts to obfuscate the issues presented by claiming there is a distinction between the proposed claims contained in the cross-complaint by labelling them either "Contract" claims or "Title" Claims; this is a distinction without a difference. All claims seek to establish legal and/or equitable rights to use of the wall.

## II. FACTUAL BACKGROUND

### A. The PG & E and Vlazakis Properties

In 2015, plaintiff, PG & E purchased property in Oakland, California, with street addresses of 205-209 Brush Street (parcel APN 001-0111-005) (Exhibits 1 attached to the Declaration of Ronald F. Berestka)[2]  PG & E alleges that it purchased this property in 2015 in order to construct a natural gas pipeline substation. (Exhibit 1)  PG & E's "L" shaped property that takes up more than ¾ of a city block and is adjacent to property owned by the Vlazakises, which have street addresses of 225-229 Brush Street and 751 Third Street (APN 001-0111-001 and 001-0111-002). (Exh. 1 Complaint with attached Exh. A to Complaint; Berestka Decl., ¶8 [clarifying PG & E property borders in Exh.1]; Declaration of Maria Barbis ¶2)

Located on PG & E's property is a long-standing brick building that is fronted on Third Street roughly to the north. (M. Barbis Decl., ¶3)  The eastern-facing wall of PG & E's brick building runs along the property line with the Vlazakis' property and is adjacent to the Vlazakis' 751 Third Street building. (M. Barbis Decl., ¶3)  The 751 Third Street building has a series of three vertical support I-beams, all on the Vlazakis' property, which are bolted to the brick wall of PG & E's building, and act to support the Vlazakis' building. (Exh. 1)  These braces have been in place for more than 50 years, and pre-date the Vlazakis' parents purchase of the property in 1960. (M. Barbis Decl., ¶3)

### B. PG & E and Vlazakises Enter a Contract to Give the Vlazakises Ownership of the Common Wall and Adjacent Strip of Land

At some point in time, PG & E determined that it would be necessary to demolish its brick building in order to construct its substation.  Given that the east-facing wall of the brick building acts to support the Vlazakis' 751 Third Street building, PG & E approached the Vlazakises and proposed a solution which essentially required a lot line adjustment extending the Vlazakis' property to include the entire subject brick wall, with PG & E agreeing to shore up that wall, at PG & E's sole expense, so that it would continue to support the Vlazakis' 751 Third Street

---

[2] Hereinafter all references to numerical Exhibits shall be to those attached to Mr. Berestka's declaration unless otherwise noted.

building. (Exh. 1 Complaint with Contract attached thereto as Exhibit B; Exh. 3) This agreement was reduced to a written contract that was signed by PG & E and the Vlazakis defendants. (*Id*.)

**C. The Vlazakises Perform All of Their Material Obligations Under the Contract**

After the Contract was entered, the Vlazakises performed all material obligations required of them under the Contract. (Declaration of George Vlazakis ¶¶5-9; M. Barbis Decl. ¶4, Exhibit 4 attached thereto) The Vlazakis' obligations under the agreement were largely ministerial in nature (e.g., allow access to the premises, sign off on permit applications, and generally cooperate), and required no significant affirmative conduct—indeed there was no reason for the Vlazakis' to not cooperate as the work was being performed to benefit their property at no cost to them. (Exh. 3) The specific Contract terms relating to the obligations of the Vlazakises are contained in paragraphs 1, 3, 5 and 8. (Exh. 3; Motion to Reject Contract pp.10-11)

Paragraph 1 of the Contract required the Vlazakises to provide written "documentation/deeds to verify how the title was acquired" for their adjoining lots. (Exh. 3, para. 1) The Vlazakises complied with this term of the contract by providing the required documents to PG & E's Project Manager from Craig Communications, Evelyn Soto, on November 20, 2017, with Ms. Soto acknowledging that this was "the grant deed that PG & E needed". (M. Barbis Decl. ¶4, Exhibit 4 attached thereto).[3]

The Vlazakis' also owed obligations under the Contract in paragraphs 3 and 5, which required the Vlazakises to sign off on the application for the lot line adjustment necessary for PG & E to complete its work and to "cooperate" by signing any documentation needed for approvals from the City of Oakland and the CPUC. (Exh. 3, para. 3 and 5). The Vlazakises did so and the design to shore the wall and the lot line adjustment were ultimately approved by the City of Oakland.[4] (B. Garber Declaration in Support of Motion to Reject Contract ¶5 referencing

---

[3] Relying on the declaration of Mr. Garber, PG & E claims that the Vlazakises did not deliver these required documents, however this is simply untrue, and Mr. Garber has no foundation for making such a statement. (Compare Garber Decl. ¶15 with M. Barbis Decl., ¶4, Exh. 4 attached thereto)

[4] It is important to note that the Contract did not specify how PG & E would shore up the common wall, only that is was PG & E's responsibility to do so. (Exh. 3, Contract)

Exhibit C thereto entitled "Garber Supplemental Declaration" ¶5; Exh 5, City of Oakland record history for PG & E's property at 205 Brush Street in Oakland indicating lot line adjustment approval; G. Vlazakis Decl., ¶4, 5, 8, 9). PG & E presents no evidence that the Vlazakises either failed to cooperate or that further specific cooperation was required of them under these clauses. (See generally Motion to Reject Contract)

Finally, paragraph 8 required the Vlazakises to "agree" to provide access to their premises so that the construction work could be accomplished. (Exh 3, para. 8). Not only did the Vlazakises agree to allow access, they in fact did allow repeated and virtually unfettered access to their premises, including to the interior of 751 Third Street, to examine the wall at issue, in compliance with the terms of the Contract. (G. Vlazakis Decl., ¶¶6, 7). In fact, PG & E had its own key to allow PG & E to access an open yard owned by the Vlazakises to the rear of and adjacent to 751 Third Street to facilitate PG & E's work. (G. Vlazakis Decl., ¶6).) PG & E offers no evidence that the Vlazakises did not allow access at any time.

Finally, contrary to PG & E's assertion, the Vlazakises were not required to bring their property into ADA compliance under the approved plans, and PG & E's suggestion that this was required as part of the plan is disingenuous. (G. Vlazakis Decl., ¶¶8, 9). PG & E offers no evidence that the design approved by the City of Oakland required ADA compliance as the revised design was not conditioned on ADA compliance.[5] (See generally Motion to Reject Contract; G. Vlazakis Decl., ¶¶8, 9). Again, under the Contract, the Vlazakises had no further material obligations to perform. (Exh. 3; G. Vlazakis Decl., ¶¶5-9).

### D. PG & E Seeks to Avoid Contract Obligations

At some point in time after PG & E had obtained approval of the lot line adjustment and its revised design to shore the common wall under the Contract, PG & E decided that its own shoring

---

[5] PG & E states that the City of Oakland rejected its *first* design proposal, which they allege required ADA compliance by the Vlazakises. Aside from the fact that this is inadmissible hearsay, PG & E fails to mention that the *revised* design that PG & E submitted was not conditioned on ADA compliance and it was in fact approved by the City of Oakland. (Garber Declaration attached to PG & E Motion to Reject Contract, ¶5 referencing Exhibit C thereto entitled "Garber Supplemental Declaration" ¶5; G. Vlazakis Decl. ¶¶8, 9)

design plan would not suit its needs and sought to back out of the contract.[6] PG & E claims that it failed to honor the agreement because it miscalculated the amount of space that it would need to construct the vault to house its natural gas substation, i.e., PG & E either did not account for size of, or miscalculated the space necessary for, the substation vault or the footing required to shore up the wall that supports the Vlazakis' building.  (Berestka Declaration ¶10)

PG & E offers no explanation as to why it could not have adjusted its gas substation design to use the remainder of its rather large lot—three quarters of a city block—to complete the substation project and to accommodate structural work on the wall, which was the primary purpose of the Contract to begin with.  Instead, PG & E merely states that it was "infeasible", with no further explanation.

**E.  PG & E's Lawsuit in California State Court**

On June 4, 2019, PG & E sued the Vlazakis family defendants alleging that the support I-beams attached to the brick wall constituted a nuisance and a trespass, and PG & E sought injunctive relief to permit the demolition of the common party brick wall, which would cause the collapse of the Vlazakis' 751 Third Street building.  (Exh. 1)

The Vlazakises answered plaintiff's complaint denying PG & E's claims and asserting various affirmative defenses.  (Exh. 2)  In addition, the Vlazakises assert legal and equitable rights to continued use of the common wall in a proposed cross-complaint that contains several contract-based causes of action. (Exh. 6)  Through these contract-based causes of action the Vlazakises seek to establish a legal right to continued use of the wall.  Of critical importance is the fact that if the Vlazakises succeed on the contract theory, their contract-based rights would effectively defeat PG & E's nuisance and trespass claims.  Accordingly, the contract-based claims are not solely to

---

[6] PG & E attempts to paint itself as the "good guy" going beyond the call of duty due to its submission of revised plans for the shoring of the wall after the first plans were rejected (Motion to Reject Contract, p.6 fn.1), however the first set of plans did not comply with the contract requirements.  (Exh. 3 requiring lot line adjustment)  PG & E admits that its original design plan would have required "fasteners [] would have crossed property lines. The City of Oakland refused to issue a permit…because the wall bracing system" was impermissibly designed to include encroachments that cross property lines.  (PG & E Motion to Reject Contract, p.8:3-6).  Given that the Contract required that PG & E deed the wall to the Vlazakises along with a 4-foot wide 50-foot long strip of land on the common border, no cross-border fasteners would be required in a design that complied with the Contract.  Accordingly, the requirement for a new set of shoring plans was due to PG & E's error, not some laudable or extraordinary effort on its part.

recover damages or to force performance by PG & E, rather if successful they provide a complete defense to PG & E's state court action because they would be entitled to continued use the wall.

Significantly, the Vlazakises will be entitled to a jury trial on the breach of contract cause of action, something PG & E is looking to avoid, as this would vacate the current bench trial set for May 13, 2020.

### III. LEGAL DISCUSSION

**A. The Contract is Non-Executory and Cannot Be Rejected as the Vlazakises Have Performed All Material Obligations**

The question whether a particular contract is "executory" under § 365 is a question of fact, *Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.),* 139 F.3d 702, 706 n.13 (9th Cir. 1998) (en banc). The Ninth Circuit has adopted Professor Countryman's definition of an executory contract: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973); *see In re Helms Constr.*, 139 F.3d at 705 ("An executory contract is one 'on which performance remains due to some extent on both sides.'"). The materiality of the parties' remaining obligations depends on whether, under applicable state law, one party's nonperformance would excuse the other party's obligation to perform. *Hall v. Perry (In re Cochise Coll. Park, Inc.)*, 703 F.2d 1339, 1348 n.4 (9th Cir. 1983).

Whether a contract is "executory" is a question of fact, both under the Bankruptcy Code, and California law. *In re Helms Constr.*, 139 F.3d at 706 n.13. Where the bankruptcy court, such as here, is making this decision in ruling in the context of a stay relief motion, the bankruptcy courts refrain from making merits decisions, including the validity of a contract. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740-41 (9th Cir. 1985) ("The validity of the claim or contract underlying the claim is not litigated during the hearing.")).

The Court in analyzing whether a contract is executory

> Look[s] to outstanding obligations at the time the petition for relief is filed and ask whether both sides must still perform. The question thus becomes: At the time of filing, does each party have something it must do to avoid materially breaching the contract?

*See In re Helms Constr.*, 139 F.3d at 706.

State law controls the definition of "material" terms under the contract (i.e., when failure of performance would constitute a material breach). *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 (9th Cir. 1983); *In re Aslan*, 909 F.2d 367, 369 (9th Cir. 1990). Under California law, failure to fully perform an obligation under a contract results in a material breach "if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract." *Aslan*, 909 F.2d at 370 (citations omitted).

Contrary to PG & E's argument here, the Vlazakises had completed all material terms of the agreement and merely awaited performance by PG & E, pursuant to PG & E's own plans and proposals as set forth in the Contract. (Exhs. 3, 5; G. Vlazakis Decl., ¶¶5-9; M. Barbis Decl., ¶4, Exh. 4 attached thereto). An examination of the Contract terms relating to the obligations of the Vlazakises and the evidence of their satisfaction of these obligations is dispositive here.

Paragraph 1 of the Contract required the Vlazakises to provide written "documentation/deeds to verify how the title was acquired" for their adjoining lots. (Exh. 3, para. 1) The Vlazakises complied with this term of the contract by providing the required documents to PG & E representatives on November 20, 2017 (M. Barbis Decl. ¶4, Exh. 4 attached thereto).

The Vlazakis' next obligation under the Contract is contained in paragraphs 3 and 5, which required the Vlazakises to sign off on the application for the lot line adjustment necessary and the permit application for shoring of the wall. (Exh. 3, paras. 3, 5). This too was completed by the Vlazakises and the lot line adjustment and the plans for shoring up the wall were approved by the City of Oakland. (Exh. 5; G. Vlazakis Decl., ¶¶ 8, 9; B. Garber Decl. in Support of Motion to Reject Contract, ¶10, and Exh. C attached thereto entitled "Garber Supplemental Declaration" ¶5). PG & E fails to offer any evidence that the Vlazakises either failed to cooperate or that further

specific cooperation was even required of them *under the Contract*. (Exh. 3; G. Vlazakis Decl. ¶¶4-9).

Finally, paragraph 8 required the Vlazakises to "agree" to provide access to their premises so that the construction work could be accomplished. (Exh. 3, para. 8). Not only did the Vlazakises agree to allow access, they in fact did allow repeated and virtually unfettered access to the premises at 751 Third Street, including to the interior of the building to examine the wall at issue, in compliance with the terms of the Contract. (G. Vlazakis ¶¶5, 6, 7)

Noticeably absent from PG & E's motion to reject the contract is any evidence that the Vlazakises owed any material obligations to complete performance under the Contract. Indeed, no evidence is presented that additional permits or approvals were required that necessitated the Vlazakises consent or approval and PG & E offers no evidence of any lack of cooperation regarding any terms of the Contract itself. Contrary to PG & E's argument, the Vlazakises had no further material obligations to perform.

PG & E argues that if it had continuing obligations, so too did the Vlazakises because the Vlazakises would have to continue to grant access to their premises. (Debtor's Motion pp.10-11) This argument is specious because PG & E's continuing obligations under the Contract do not require further material obligations of the Vlazakises. In effect, PG & E's attempt to set up a straw man to knock down fails as its argument is a non sequitur.

As set forth above, the Vlazakises provided all required documents, signed off on all required permit applications, and provided unfettered access to the premises—even going to far as to allow PG & E its own key to access portions of the adjacent yard at will. (G. Vlazakis Decl. ¶¶5-9) Essentially all that is left for the Vlazakises to do is to not interfere with PG & E's work. If this constitutes a continuing material obligation, then no contract could ever be deemed non-executory.

PG & E also complains that the Vlazakises were not cooperative, suggesting that this was an impediment to performance of the Contract and that such conduct would have materially thwarted the Contract, making it executory. This is misleading at best as the alleged "unwillingness" to cooperate did not relate to the Vlazakis' performance under the Contract, rather it describes the Vlazakises unwillingness to agree to PG & E's demands *after* PG & E refused to honor the

agreement and *after* the City of Oakland had already approved the permits of the shoring project and the lot line adjustment.[7] (See Motion to Reject Contract p.8:21-27; B. Garber Decl. ¶¶11, 12 (referencing *post* City approval conduct). It was only then, when PG & E made alternative proposals unrelated to the Contract that would significantly burden the Vlazakises, that the Vlazakises declined to agree.

The claimed remaining obligations amount to mere perfunctory consent to allow PG & E to perform the work it agreed to perform under the Contract; the Vlazakises had no continuing obligations of significance or materiality. Moreover, PG & E's argument is nonsensical, considering that the Vlazakises cooperated pursuant to the terms of the Contract throughout, and there is no indication that the Vlazakises would somehow suddenly act against their own interest to sabotage the project by refusing to let PG & E improve the Vlazakis property at no cost to the Vlazakises. Absurd hypothetical "what-ifs" hardly constitute evidence in this instance.

In short, the evidence here is irrefutable that Vlazakises performed all of their obligations under the Contract and no evidence is offered nor would it be reasonable, much less plausible, that the Vlazakises would somehow interfere with PG & E completing its work. Simply put, PG & E has failed to identify any material obligation yet to be performed by the Vlazakises, hence the contract is non-executory—the only remaining material obligations under the Contract were those assigned to PG & E. Under the Countryman standard adopted by the 9th Circuit, this renders the Contract non-executory and prevents its rejection under 11 U.S.C. §365(a).

**B. PG & E's Effort to Reject the Contract is a Bad Faith Litigation Strategy to Win its Case in the State Court by Stripping the Vlazakises of Contractual Rights that Would Defeat PG & E's State Court Claim**

Even if we assume that the contract was an executory contract—which it is not—it may only be rejected if the proponent satisfies the business judgment test. *In re Chi-Feng Huang*, 23 B.R. 798, 800 (Bankr. 9th Cir. 1982). The primary issue is whether the rejection of the contract would benefit general unsecured creditors. E.g., *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993), cert. dismissed, 114 S. Ct. 1418 (1994); *In re Kong*, 162 B.R. 86, 94 (Bankr. E.D.N.Y.

---

[7] E.g., PG & E proposed purchasing the Vlazakis' property so that it could tear the wall down *after* PG & E sought to back out of the Contract.

1993); *In re Lawson*, 146 B.R. 663, 664-65 (Bankr. E.D. Va. 1992); *In re Audra-John Corp.*, 140 B.R. 752, 755 (Bankr. D. Minn. 1992). Other factors that the court may consider include whether (a) the contract burdens the estate financially; (b) rejection would result in a large claim against the estate; (c) the debtor showed real economic benefit resulting from the rejection; and (d) upon balancing the equities, rejection will do more harm to the other party to the contract than to the debtor if not rejected. "Generally, absent a showing of bad faith, or an abuse of business discretion, the debtor's business judgment will not be altered." *In re G Survivor Corp.*, 171 B.R. 755, 757-58 (Bankr. S.D.N.Y. 1994) Bad faith by the debtor in seeking to reject a contract is grounds to deny such a request. *See Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (citing *Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985).)

The issue before this court is not addressed in any of the case law discussed in the briefing as it is factually unique. The question presented is whether a debtor who sues a party in state court can reject a contract in bankruptcy to prevent the state party defendant from asserting contractual rights that would, if proven, defeat the debtor's state court lawsuit. The answer to this question should be an unequivocal no, as such conduct would be by definition, bad faith, and manifestly unjust.

Here, PG & E's efforts to reject the subject Contract are being undertaken in bad faith as a state court litigation strategy, in order to deprive the Vlazakises of legal remedies that would defeat PG & E's state law claims and to avoid a jury trial in the ongoing state court action. It is important to note that PG & E made no effort to reject the Contract until it was faced with the Vlazakis' motion for relief from stay to assert the contract claims, despite filing its petition to reorganize one year ago, and despite being aware of the Vlazakis' potential contract claims which could bar PG & E's state court action since at least August of 2019. (Exh. 7, Hearing Transcript for Preliminary Injunction, pp.12:18-13:18; Berestka Decl. ¶7). The existence of the contract at issue was well-known, indeed the agreement was and is at the center of the dispute giving rise to PG & E's state court action—namely whether the Vlazakises possess any right to use of the subject wall, in law or equity, and more specifically here, pursuant to contract.

PG & E sat on its rights and made no effort to reject the contract for nearly a year until the Vlazakises sought to defend themselves by asserting that PG & E breached the Contract, which if proven, would defeat PG & E's state court claims. This motion to reject the contract is nothing short of a bad faith effort by PG & E to deprive the Vlazakises of their property rights under both state law and the Fourteenth Amendment to the United States Constitution. If the issue were merely to avoid any contractual obligations for the benefit of the debtor, this motion would have been filed long ago. Instead it is now being used as a sword by PG & E to advance its lawsuit in state court and to hamstring the Vlazakises efforts to defend themselves in that action.

Next, PG & E again offers no evidence as to how rejection of the Contract would benefit general unsecured creditors, it fails to offer evidence of the purported financial burden, it fails to explain the size of the claim against it, and PG & E provides no evidence of the economic benefit of the rejection. PG & E speaks only in generalities and quantifies nothing in terms of burden to it, while upon examination of the actual facts reveals that the equities heavily favor the Vlazakises.

The Vlazakises are mere owners of a building that contained I-beams prior to their family's purchase of the property in 1960—the Vlazakises did not create the condition that PG & E complains of here. (M. Barbis Decl. ¶3) The beams were installed over 50-60 years ago, likely by a common owner of the two properties, or with the knowledge and/or consent of the prior owner of the current PG & E property, as one cannot imagine a situation where these steel I-beams were brought onto what is now the Vlazakis property and then bolted to the common brick wall without the adjacent neighbor being aware. PG & E offers no evidence that the Vlazakises in any way have unclean hands with regard to the I-beams and the wall—which was an existing condition in 1960 when the family purchased the building. PG & E in effect came to the claimed nuisance, and it is PG & E who seeks to change the status quo by destroying the Vlazakis building. While PG & E's intentions in constructing the substation may be good, good intentions are not evidence of burden, and they do not destroy the Vlazakises claimed right to use the wall to support the 751 Third Street building, much less warrant destruction of this family owned structure.

Finally, PG & E fails to explain exactly why it cannot complete the project under the Contract and also construct its substation.[8]  Instead PG & E again argues in generalities that the substation project would become infeasible *as designed*.  (Motion to Reject Contract, p.8:15-20).  Nowhere does PG & E indicate that it considered, much less undertook, any effort to alter its design in order to allow both the shoring of the wall under the Contract and the construction of the substation in order to achieve the common goals of safety for this project for the benefit of the parties' interests as well as those of the neighboring properties.  Significantly, PG & E offers no evidence as to any possible cost or burden to PG & E in altering its substation plans; the only evidence of burden before this court is that of the Vlazakis family, which as set forth herein, is substantial.

### C. Relief From Stay as to Contract Claims is Warranted as Claims Are Compulsory, and Necessary to a Determination of the Trespass and Nuisance Claims Raised by PG & E in its State Court Action

"Cause" warranting relief from the automatic stay is an intentionally broad and flexible concept, made so in order to permit courts to respond in equity to inherently fact-sensitive situations.  *In re Sentry Park Ltd.,* 87 B.R. 427, 430 (BK. W.D. Tex. 1988).  In determining whether "cause" exists to terminate and vacate the automatic stat requires an inquiry into the totality of the facts and circumstances of a particular case and a balancing of the equities between the parties.  *In re Barrows*, 15 B.R. 338, 341 (Bankr. M.D. Pa. 1981) ("[a]s a court of equity, the Bankruptcy Court must consider the impact of the stay on the parties and the 'balance of hurt' in fashioning relief").  A judge may determine cause on a case-by-case basis, and may grant relief from stay on any basis, including but not limited to statutory causes.  *In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir. 1990); *In re Santa Clara County Fair Ass 'n,* 180 B.R. 564 (B.A.P. 9th Cir. (Cal.) 1995).

If ever a case presented "cause: for relief from stay, this is it.  Without relief from stay PG & E will be permitted to run roughshod over the Vlazakises in PG & E's state court lawsuit,

---

[8] PG & E withheld material information from the Vlazakises about PG & E own error in PG & E's design and layout. PG & E had ample time in order to correct its own mistake in the design of its own gas project, but never made the effort.

depriving the Vlazakises of their right to have a judicial determination as to whether they possess contractual rights that defeat PG & E's claims.

PG & E does not dispute the fact that the entire proposed cross-complaint, including the contract claims, are compulsory and these contract claims are inextricably intertwined with the issues tendered by PG & E's complaint in the state court action. By way of example, should the Vlazakises succeed on the proposed contract claims, the Vlazakises would either take ownership of the wall at issue (via specific performance), which would bar PG & E's claim for nuisance and trespass damages, and request for injunctive relief or, due to PG & E's breach of contract, the Vlazakises would be entitled to damages *and* PG & E would be prohibited from recovering damages for nuisance or trespass, or from obtaining injunctive relief, because the Vlazakises would have established contractual rights to the wall. Excising the contract claims for supposed later resolution in the bankruptcy court as PG & E suggests would rob the Vlazakises of these crucial affirmative claims, which if proven, would defeat PG & E's state court lawsuit.

In effect, refusal to lift the stay as to the contract claims, as noted above, deprives the Vlazakises of *non-monetary* relief and other *adjudicative benefits* such as estoppel, that would otherwise not affect the Debtor's estate. For example, if the Vlazakises did succeed in the state court action on their contract claims as noted, PG & E's right to injunctive relief and damages would be defeated as a matter of law. While the bankruptcy court may have concerns and/or possibly intervene to prevent actual collection of damages against PG & E, or to prevent the enforcement of an order of specific performance, the Vlazakises are unaware of any authority that would prohibit them from asserting their success on the contract claims via estoppel as a bar to PG & E's trespass and nuisance causes of action which would have no effect on the bankruptcy estate.

PG & E brought the state court action, dragging the Vlazakises into court. Requiring PG & E to litigate the contract claims is no more burdensome than requiring PG & E to litigate the Vlazakises affirmative defenses. Indeed, the contract claims are akin to affirmative defenses for if proven, PG & E's claims would be barred. Excising the contract claims therefore would then have the same effect as this Court stripping the Vlazakises of a dispositive legal defense.

If PG & E wants to pursue the state court action, it then must litigate the Vlazakises state court contract claims simultaneously or agree to stay the state court action until the bankruptcy is resolved. There is no other remedy to this situation, as PG & E's proposed course of action, namely excising the contract claims from the state court action will deprive the Vlazakises of substantive legal rights as well as due process rights under both state and federal law.

**D. Bankruptcy Stay Inapplicable to Proposed Cross-Complaint in a Lawsuit Filed by PG & E After its Bankruptcy Petition**

Title 11 USC 362 (a) states that the filing of a bankruptcy petition operates as an automatic stay of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

Simply put, the stay does not apply to the present action and the proposed cross-complaint.

Here, PG & E filed its bankruptcy petition on January 29, 2019. Four months later, on June 4, 2019, PG & E initiated suit against the Vlazakises in California state court. The Vlazakises now seek to file a compulsory cross-complaint against PG & E in the state court action filed after PG & E declared bankruptcy. Clearly the Vlazakises did not commence or continue an action before PG & E's bankruptcy petition.

First, prior to PG & E initiating its state court lawsuit—months after it had petitioned for bankruptcy—the Vlazakises had no reason to sue PG & E. There simply was no reason to assert the claims contained in the cross-complaint until after PG & E had declared bankruptcy. There was no reason to assert a breach of contract claim, or the other causes of action now contained in the proposed cross-complaint given that these potential claims were not factually ripe—the Vlazakises had no reason to file suit until events developed indicating that PG & E was wrongly breaching the contract and that PG & E may have engaged in bad faith conduct to support its claim that the agreement was not feasible, which in this instance, was the result of PG & E's own failure to properly calculate the space required for its substation. Certainly, it is not the policy of our

judicial system to encourage that lawsuits be filed before one has determined actual cause to assert a claim.

Second, there was no complaint against the Vlazakises by PG & E to which they could have filed a cross-complaint (which by definition, requires a complaint in the first instance), until PG & E's state court lawsuit which, as shown above, was several months post-bankruptcy petition.

In sum, the Vlazakis' claims in its proposed cross-complaint were not commenced before PG & E's bankruptcy petition, nor "could" they have been. Anyone "could" file a lawsuit at any time, even without good cause, or a good faith belief in a claim. Here, the cause to file a claim against PG & E was not apparent and the Vlazakises had no good faith basis to file a lawsuit until after the bankruptcy petition. As such, the automatic stay is inapplicable.

## IV.   CONCLUSION

PG & E'S Motion to Reject Contract should be denied. First the contract is non executory as the Vlazakises have performed all material terms under the agreement, and PG & E fails to offer any evidence of further material obligations required to be met. Further, PG & E is seeking to reject the contract in bad faith as a litigation strategy in the state court action to prevent the Vlazakises from establishing their contractual right to use of the wall which would defeat PG & E's state court action; in effect PG & E is attempting to strip the Vlazakises of the right to defend themselves. In addition, PG & E has failed to offer any evidence as to what if any burden it would suffer from simply altering its substation plans to allow for both the shoring of the common wall and the construction of its substation.

For the reasons stated herein, the Vlazakises are entitled to relief from the bankruptcy stay in its entirety. All causes of action in their proposed cross-complaint are critical to a fair and just determination as to whether they are entitled to continued use of the wall, whether that right be in equity or in law, and whether that be pursuant to an easement or a contractual right.

Again, PG & E picked this fight by filing a lawsuit in state court, and it now seeks to abuse it bankrupt status to obtain affirmative relief against the Vlazakises while depriving the Vlazakises of due process.

DATED: January 20, 2020     STONE & ASSOCIATES

By _____
COLETTE F. STONE
RONALD F. BERESTKA, JR.
Attorneys for Defendants
GEORGE M. VLAZAKIS; MARIA A. BARBIS; JOHN A. BARBIS; and ATHANASIA V. VLAZAKIS