COLETTE F. STONE, ESQ. (SBN: 129773)
RONALD F. BERESTKA, JR. ESQ. (SBN: 155707
LYDIA V. KO, ESQ. (SBN: 272588)
STONE & ASSOCIATES
A Professional Corporation
2125 Ygnacio Valley Road, Suite 101
Walnut Creek, CA 94598
Telephone: (925) 938-1555
Facsimile: (925) 938-2937
Email: cstone@stonelawoffice.com
rberestka@stonelawoffice.com

Attorneys for Defendants,
GEORGE M. VLAZAKIS; MARIA BARBIS; JOHN BARBIS;
and ATHANASIA V. VLAZAKIS

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re:<br><br>PG&E CORPORATION,<br><br>And<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors,<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects Both Debtors<br><br>*All papers shall be filed in the Lead Case, no. 19-30088 (DM)* | CASE NO. 19-30088 (DM)<br><br>Chapter 11<br><br>**DECLARATION OF RONALD F. BERESTKA, JR. IN SUPPORT OF OPPOSITION TO DEBTOR'S MOTION TO REJECT CONTRACT AND GRANT RELATED RELIEF**<br><br>Date: February 11, 2020<br>Time: 10:00 a.m.<br>Dept.: 17<br>450 Golden Gate Ave<br>San Francisco, CA 94102<br>Judge: Dennis Montali |

I, Ronald F. Berestka, Jr., declare:

1.    I am an attorney licensed to practice law in the State of California and am an associated with the law firm Stone & Associates, A Professional Corporation, attorneys of record for Defendants GEORGE M. VLAZAKIS; MARIA BARBIS; JOHN BARBIS; and ATHANASIA V. VLAZAKIS (hereinafter collectively as "Defendants") in this matter. I have personal knowledge of the facts contained in this declaration and if called to testify thereto could competently do so.

2. Attached hereto as Exhibit 1 is a true and correct copy of Pacific Gas & Electric Company's (PG & E) complaint filed in the California Superior Court, County of Alameda, Case number RG19021463, with attached exhibits, including the Contract identified as a "Letter Agreement" dated November 22, 2017. This is the contract that PG & E seeks to reject by the instant motion.

3. Attached hereto as Exhibit 2 is a true and correct copy of the answer to PG & E's complaint filed by George Vlazakis, in the California Superior Court, County of Alameda, Case number RG19021463. The answers of the other defendants in that action as substantively identical.

4. Attached hereto as Exhibit 3 is a true and correct copy of the terms portion of the Contract "Letter Agreement" between PG & E and the Defendants. This portion is identical to that contained as an exhibit to PG & E's Complaint attached as Exhibit 1, however the terms portion is being provided for ease of use and reference given the length of Exhibit 1.

5. Attached hereto as Exhibit 5 is a true and correct copy of the City of Oakland record history for PG & E's property at 205 Brush Street in Oakland. The record indicates that the lot line adjustment which would have extended the Vlazakis' property line to include the whole of the east facing brick wall, was approved by the City of Oakland on May 11, 2018.

6. Attached hereto as Exhibit 6 is a true and correct copy of the Vlazakis' proposed cross-complaint against PG & E in in the California Superior Court, County of Alameda, Case number RG19021463. This version of the cross-complaint is different than what was originally presented in the Motion for Relief From Stay in that it is now to be a verified proposed cross-complaint to comply with California law since it contains quiet title claims. The causes of action are also re-ordered, however the only substantive change is that the cause of action for adverse possession has been removed.

7. Attached hereto as Exhibit 7 is a true and correct copy of relevant portions of the transcript of the hearing on PG & E's motion for preliminary injunction argued on August 13, 2019 which discusses PG & E's breach of the contract at issue in the present motion. Despite attaching the contract to the complaint and being aware of a potential claim for breach of the

1  contract, PG & E took no action to reject the contract until the Vlazakises filed their motion for
2  relief from stay and PG & E realized that if the contract claims were successful, they would lose
3  their state court action.

4      8.    The properties at issue in the underlying state court lawsuit are depicted on
5  PG & E's deed documents, page 5 of Exhibit A to PG & E's Complaint, attached as Exhibit 1
6  noted above.  PG & E's property is a large "L" shaped portion of the city block outlined in a solid
7  bold line.  The Vlazakis properties are the small portions in the upper right corner of the city block.

8      9.    PG & E's lawsuit, Alameda, Case number RG19021463 is set for a bench trial to
9  commence on May 13, 2020.  The trial court has determined that the current pleadings, which
10 excludes the Vlazakis' proposed cross-complaint, permit trial of the "equitable" issue of the
11 permanent injunction sought by PG & E, first.

12     10.   At a hearing in the state court action on October 1, 2019, counsel for PG & E
13 represented to the court that the lot line adjustment and construction of the PG & E substation
14 could not be accomplished as agreed to in the November 17, 2018 letter agreement because the
15 need to shore up the brick wall adjacent to the Vlazakis property would not leave enough room for
16 the PG & E substation to be built.

17     I declare under penalty of perjury under the laws of the State of California and the United
18 States of America that the foregoing is true and correct.

19     Executed on this 20th  day of January, 2020, at Walnut Creek, California.

20
21                                          _____
22                                          RONALD F. BERESTKA
23
24
25
26
27
28

# EXHIBIT 1

1  ANN H. KIM (CSBN 167104)
2  CESAR V. ALEGRIA, JR. (CSBN 145625)
   PACIFIC GAS AND ELECTRIC COMPANY
3  P.O. Box 7442
   San Francisco, CA 94120
4
   **DIRECT CORRESPONDENCE TO:**
5
6  KENYON MARK LEE, SBN 94102
   MONIKA PLEYER LEE, SBN 117019
7  **LEE LAW OFFICES**
   1700 South El Camino Real, Suite 450
8  San Mateo, California 94402
9  Telephone: (650) 212-3400
   Facsimile: (650) 212-3414
10
   Attorneys for Plaintiff
11 PACIFIC GAS AND ELECTRIC COMPANY
12
13              SUPERIOR COURT OF THE STATE OF CALIFORNIA
14                      COUNTY OF ALAMEDA
15
16 PACIFIC GAS AND ELECTRIC                ) Case No.:
   COMPANY,                                )
17                                         ) COMPLAINT FOR PRELIMINARY AND
18          Plaintiff,                     ) PERMANENT INJUNCTION,
                                           ) ABATEMENT OF NUISANCE, TRESPASS,
19     vs.                                 ) DECLARATORY RELIEF
                                           ) (REMOVAL OF ENCROACHMENT)
20 ATHANASIA V. VLAZAKIS, GEORGE M.        )
21 VLAZAKIS, JOHN A. BARBIS, MARIA A.      )
   BARBIS, and DOES I through XX,          )
22                                         )
23          Defendants.                    )
                                           )
24 _____)
25      Plaintiff PACIFIC GAS AND ELECTRIC COMPANY ("PG&E") alleges as follows:
26      1.      Plaintiff is a public utility corporation duly organized and existing under and by
27 virtue of the laws of the State of California and has its principal place of business in the City and
28 County of San Francisco, California.

Complaint - 1

FILED BY FAX
ALAMEDA COUNTY
June 04, 2019
CLERK OF
THE SUPERIOR COURT
By Shabra Iyamu, Deputy
CASE NUMBER:
RG19021463

1    2. At all times since September 22, 2015, plaintiff has owned in fee the real property
2    commonly referred to as 225 Brush Street, Oakland, California (APN 001-0111-005), pursuant
3    to a grant contained in a deed from the City of Oakland of the same date, recorded in the Official
4    Records of the County of Alameda, Instrument Number 2015263914, on September 28, 2015, a
5    copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.

6    3. Plaintiff is informed and believes and thereon alleges that defendants Athanasia
7    V. Vlazakis, George M. Vlazakis, John A. Barbis, and Maria A. Barbis ("DEFENDANTS") are
8    owners in fee of the subject property commonly known as 229 Brush Street, Oakland, California,
9    (APN 001-0111-001, and 001-0111-002) and that DEFENDANTS presently are in possession
10   and control of the subject property.

11   4. The true names or capacities, whether individual, corporate or other, of
12   defendants DOE I through DOE XX are unknown to plaintiff, who therefore sues such
13   defendants by such fictitious names, and will amend this complaint to show their true names and
14   capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of
15   the defendants designated as a DOE is responsible in some manner for the matters alleged herein
16   and thereby proximately caused injuries and damages to plaintiff.

17   5. Plaintiff is informed and believes and thereon alleges that at all times mentioned
18   herein defendants and each of them were owners, or the agents, servants, or employees of the
19   owners, of some right, title, or interest in or to the subject property commonly known as 229
20   Brush Street, Oakland, California.

21   6. Plaintiff is informed and believes and thereon alleges that at all times mentioned
22   herein each of the defendants was the agent and employee of each other of the remaining
23   defendants, and in doing the things herein alleged, was acting in the course and scope of such
24   agency and employment and with the permission and consent of each other of the other
25   remaining defendants.

26   7. Defendants own and maintain an office building and other structures on their
27   property, one of which abuts the PG&E structure bordering the property line between Plaintiff
28   and Defendants. In particular, a structure owned by Defendants was constructed in a manner

such that it relies upon PG&E's unreinforced brick wall for separation between the properties. Defendants, ~~or their predecessors-in-interest~~, have also installed five steel "I-beams" on their property, physically and permanently affixed to the PG&E wall in order to support their roof and two perpendicular walls.

8.     Plaintiff PG&E acquired its subject real property from the City of Oakland for the purpose of constructing a new natural gas regulation station that will be integrated into the East Bay Gas Transmission system. This system includes what PG&E refers to as Lines 105N, 105C, and L-153 and is part of a larger L-153 and L-105N pipe replacement and upgrade program. When complete, the new station will include remotely controlled valves which can be closed during an emergency, pressure regulation and metering between three large diameter gas transmission lines, and traditional and nontraditional internal line inspection access points.

9.     The construction of the new gas regulation station requires the demolition of existing improvements on PG&E's property, including its unreinforced brick structure adjacent to Defendant's property line. In about August 2016, PG&E determined that its brick wall was being used by Defendants, who relied upon the integrity of the PG&E wall for the support of their own building. Defendants' building along the shared property line does not have any exterior or interior walls of its own, and the steel I-beams which defendants rely upon for support of their roof and perpendicular walls are bolted, or otherwise permanently fastened, to PG&E's wall. PG&E's structural engineers have determined that the removal of PG&E's brick wall would leave Defendants' structure without sufficient support unless Defendants took appropriate action on their property to shore up its roof and perpendicular walls as well as any sub-surface soil and foundation.

10.     On November 22, 2017, PG&E agreed with Defendants to convey title to a four-foot-by-fifty-foot (4' x 50') strip of real property along their common border that included the PG&E brick wall (the "Lot Line Adjustment Agreement"), conditioned upon local and regulatory approval of the transaction. Key conditions precedent to the agreement were not met, however, and the Lot Line Agreement could not be consummated when Defendants could not, or would

1 | not, meet the City of Oakland permit requirements. Attached hereto as Ex. B is a true and
2 | correct copy of the Lot Line Adjustment Agreement dated November 22, 2017.

3 |      11.     On January 15, 2019, PG&E offered in writing to purchase defendants' interests
4 | in the subject property at price determined by an independent, state-licensed real property
5 | appraiser consistent with the provisions of Gov. Code Section 7267.2 (offers of just
6 | compensation). Defendants rejected the offer.

7 |      12.     From August 2016 to June 2019, PG&E has continued to seek alternative
8 | solutions to the issue presented by the encroaching wall attachments. PG&E has requested that
9 | Defendants remove its beams and bolts/fasteners from PG&E's wall, and construct their own
10 | wall and foundation, on their own property, in order to provide the necessary structural support
11 | for Defendants' building so that PG&E can safely remove its brick wall and proceed with the gas
12 | regulation station development project. To date, Defendants have failed and refused to remove
13 | its encroachments from PG&E's structure, or to provide a satisfactory alternative solution.

14 |      13.     Defendants' encroachment has impeded PG&E's project, and PG&E has been
15 | required to delay its gas regulation station project repeatedly in an effort to resolve the
16 | encroachment problem presented by Defendants' attachments. PG&E has incurred unwarranted
17 | additional engineering, construction, and delay costs as a consequence of the defendant's
18 | encroachment.

19 |      14.     Defendants' maintenance of the structural attachments to PG&E's improvements
20 | constitutes an encroachment of its property and property rights. The structure maintained by
21 | Defendants unduly interferes with PG&E's full enjoyment of its property, including the critical
22 | and timely completion of its gas regulation station project, which is intended to allow for the
23 | implementation of the gas line inspection protocol per U.S. Department of Transportation's
24 | Pipeline and Hazardous Materials Safety Administration ("PHMSA"), as delegated to the
25 | California Public Utilities Commission ("CPUC"). These inspection protocols are part of
26 | PG&E's regulatory requirements for the safe operation and maintenance of its gas transmission
27 | lines.

28 |

15. Defendants' continuing violation of PG&E's property rights unlawfully interferes with PG&E's right to full enjoyment of its property. By maintaining a major encroachment on PG&E's property Defendants are preventing PG&E's unhindered use and access to PG&E's property, delaying its construction project, and ultimately impeding PG&E's ability to carry out its gas line improvement project and planned inspections as required by December, 2019. Defendants' interference with PG&E's land rights also is detrimental to the public and PG&E's customers.

## FIRST CAUSE OF ACTION

(Abatement of Nuisance - Civil Code §3479 et seq.)

16. Plaintiff re-alleges and incorporates by reference as though fully set forth herein paragraphs 1 through 15, above.

17. The attachments to the PG&E building by Defendants, and reliance upon PG&E's building for support constitute a nuisance within the meaning of Section 3479 of the Civil Code in that it constitutes an obstruction to the free use of PG&E's property interests and interferes with the comfortable enjoyment of PG&E's real property interest at 225 Brush Street, Oakland.

18. The nuisance created by defendants' maintenance of the encroaching structure is a public and private nuisance. It affects, at the same time, a considerable number of persons in that it makes more burdensome and expensive, and may hinder, the safe and reliable delivery of natural gas services to the residential and commercial customers in the City of Oakland, and to the greater East Bay region.

19. The nuisance is specially injurious to PG&E in that it has been prevented from proceeding with its gas regulator station project, the completion of which would allow for compliance with regulatory requirements for the inspection and maintenance of its gas pipelines, and thus impedes PG&E's ability to respond to emergencies that would be available with the installation of shut-off valves, and access points for automated pipeline inspection equipment.

20. On or about August 2016, and on numerous occasions through May 31, 2019, plaintiff gave written and oral notice to defendants of the nuisance, and requested its abatement, but defendants have refused and continue to refuse to abate the nuisance.

1    21.    Civil Code §3501 provides that the remedies against a private nuisance are a civil

2    action or abatement.

3    22.    Civil Code §§ 3495 and 3502 provide that a person injured by private nuisance or

4    a public nuisance that is specially injurious to the person may abate the nuisance "by removing,

5    or if necessary destroying, the thing which constitutes" the nuisance.

6    23.    Defendants, and each of them, have threatened to and will continue to maintain

7    the nuisance and continue the acts complained of.  Plaintiff is entitle to an order from this court

8    requiring that defendants promptly abate the nuisance or, failing such abatement, pay for the cost

9    of such abatement as plaintiff undertakes to enforce plaintiff's rights under Civil Code §§ 3495

10   and 3502.

11   24.    Civil Procedure Code §731 expressly authorize injunctive relief and abatement of

12   the nuisance as well as damages.  Plaintiff has suffered damages as a result of delays and re-

13   design work incurred in the completion of its gas regulation station.

14   WHEREFORE, plaintiff prays for judgment against defendants and each of them as set

15   forth below.

16                              **SECOND CAUSE OF ACTION**

17                                   (Trespass)

18   25.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein

19   paragraphs 1 through 15, above.

20   26.    Defendants, without plaintiff's consent, have wrongfully and unlawfully

21   trespassed and encroached upon the portions of the subject property owned by PG&E.

22   27.    In causing or permitting said building or structure to encroach upon plaintiff's

23   property, defendants and each of them have acted negligently and carelessly and in complete

24   disregard of plaintiff's rights and interest in the subject real property and in the lawful enjoyment

25   thereof.

26   28.    Plaintiff has no adequate remedy at law for the injuries currently being suffered in

27   that defendants will maintain its trespass over plaintiff's property and maintain the building or

28

---

Complaint - 6

1    structure unless enjoined, and plaintiff would be required to maintain a multiplicity of judicial

2    proceedings to protect its interests in the property.

3        29.    Plaintiff has suffered damages as a result of delays and re-design work incurred in

4    the completion of its gas regulation station.

5        WHEREFORE, plaintiff prays for judgment against defendants and each of them as set

6    forth below.

7                              **THIRD CAUSE OF ACTION**

8                                  (Declaratory Relief)

9        30.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein

10   paragraphs 1 through 15, 17 through 25, and 27 through 29, above.

11       31.    An actual controversy has arisen and now exists between plaintiff and defendants

12   concerning their respective rights and duties with respect to plaintiff's easements in that plaintiff

13   contends that defendants have no right to erect, construct or maintain a building or structure

14   within the portions of the subject property owned by plaintiff, and that defendants and each of

15   them have the obligation and duty to remove all such buildings or structures completely and

16   permanently from the area of plaintiff's property and to restore the property to its original

17   condition prior to the introduction of any such building or structure. Plaintiff is informed and

18   believes and thereon alleges that defendants and each of them dispute these contentions and

19   contend that defendants have the right to maintain the building or structure on the portion of the

20   property that is owned by PG&E, and do not have an obligation to remove such building or

21   structure and to restore the property to its original condition prior to the introduction of any such

22   structure.

23       32.    A judicial declaration is necessary and appropriate at this time in order that

24   plaintiff may ascertain the relative rights and duties of plaintiff and defendants. Plaintiff's

25   present inability to use and enjoy the real property free from obstruction and interference

26   subjects plaintiff to a continuous threat of injury by virtue of defendants' maintenance of the

27   encroaching structure.

28

Complaint - 7

**1**  33. Plaintiff is entitled to a declaration that the encroaching structure promptly must

**2** be removed at defendants' expense and that, failing such prompt removal, plaintiff may abate the

**3** encroachment and remove the structure at defendants' expense.

**4**  WHEREFORE, plaintiff prays for judgment against defendants and each of them as set

**5** forth below.

**6**  ## ON THE FIRST AND SECOND CAUSES OF ACTION

**7**  1. For a preliminary and permanent injunction requiring defendants to refrain from

**8** interfering in any way with plaintiff's rights in the subject property including its plan to remove

**9** the PG&E building from its property and confirming plaintiff's right to remove the Defendants'

**10** encroaching structure and attachments at defendants' expense failing immediate removal by

**11** defendants;

**12**  2. For an order sustaining and enforcing the rights of plaintiff in the lawful use and

**13** enjoyment of the real property to the fullest extent expressly provided in the grant deed;

**14**  3. For damages in an amount to be proven at trial;

**15**  4. For costs of suit incurred herein; and

**16**  5. For such other and further relief as the court may deem proper.

**17**

**18**  ## ON THE THIRD CAUSE OF ACTION

**19**  1. For a declaration that plaintiff is entitled to the use and enjoyment of the PG&E

**20** property to the fullest extent provided in the grant deeds, and without undue interference or

**21** obstruction, and that defendants and each of them (a) have the obligation to remove all such

**22** buildings or structures in or on plaintiff's property and to restore the subject property to its

**23** original condition prior to the introduction of any such building or structure, (b) are joint and

**24** severally liable for all costs associated with the removal of the unauthorized building or structure

**25** from plaintiff's property; and (c) that, failing timely removal by defendants, plaintiff has the

**26** right to remove the encroaching structure at defendants' expense;

**27**  2. For damages in an amount to be proven at trial;

**28**  3. For costs of suit incurred herein;

---

Complaint - 8

4.    For such other and further relief as the court may deem proper.

Dated: June 3, 2019               LEE LAW OFFICES

By: _____
          Kenyon Mark Lee
          Attorneys for Plaintiff
          PACIFIC GAS AND ELECTRIC COMPANY

# EXHIBIT A

2 .  .  .

2015263914        09/28/2015 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:           37.00
COUNTY TAX:             825.00
CITY TAX:            11250.00

5    PGS

**RECORDING REQUESTED BY**
North American Title Company, Inc.

**MAIL TAX STATEMENT**
**AND WHEN RECORDED MAIL DOCUMENT TO:**
PG&E
245 Market Street N10A, Room 1015P.O. Box
770000
San Francisco  CA 94177

SW-1
5
CN
NS
NS P2

Space Above This Line for Recorder's Use Only

(Portion of)
A.P.N.: 001-0111-005-01                    File No.: 54606-1204049-12 (NAT)

# GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX **$825.00**; CITY TRANSFER TAX **$11,250.00**;
SURVEY MONUMENT FEE $

[  **x**  ]    computed on the consideration or full value of property conveyed, OR

[     ]    computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,

[     ]    unincorporated area;  [ **x** ] City of **Oakland**, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **City of Oakland, a municipal corporation, acting by and through its Board of Port Commissioners**

hereby GRANTS to **Pacific Gas and Electric Company, a California corporation**

the following described property in the City of **Oakland**, County of **Alameda**, State of **California**:

**A PORTION OF BLOCK 101, ACCORDING TO KELLERSBERGER'S MAP OF OAKLAND, FILED IN BOOK 7 OF MAPS AT PAGE 3, ALAMEDA COUNTY RECORDS, STATE OF CALIFORNIA, BEING A PORTION OF THE RANCHO OF VICENTE AND DOMINGO PERALTA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**COMMENCING AT THE POINT OF INTERSECTION OF THE SOUTHERLY BOUNDARY LINE OF 3RD STREET AND THE WESTERLY BOUNDARY LINE OF BRUSH STREET, AS SHOWN ON SAID MAP (7 M 3), FROM WHICH A FOUND CITY OF OAKLAND STREET MONUMENT DESIGNATED 16NE50 BEARS NORTH 56°14'14" EAST 60.67 FEET, THENCE**

**(A) NORTH 62°35'19" WEST 85.00 FEET ALONG SAID SOUTHERLY BOUNDARY LINE OF 3RD STREET TO THE POINT OF BEGINNING; THENCE CONTINUING ALONG LAST SAID LINE**

**(1) NORTH 62°35'19" WEST 110.74 FEET TO THE POINT OF INTERSECTION OF THE SOUTHERLY BOUNDARY LINE OF 3RD STREET AND THE EASTERLY BOUNDARY LINE OF MARKET STREET; THENCE LEAVING LAST SAID LINE**

**(2) SOUTH 17°06'44" WEST 203.28 FEET ALONG THE EASTERLY BOUNDARY LINE OF MARKET STREET; THENCE LEAVING LAST SAID LINE**

**(3) SOUTH 62°35' 19" EAST 159.32 FEET TO A POINT ON THE WESTERLY LINE OF BRUSH STREET; THENCE LEAVING LAST SAID LINE**

**(4) NORTH 27°26'04" EAST 100.00 FEET ALONG THE WESTERLY BOUNDARY LINE OF BRUSH STREET TO A POINT MARKING THE SOUTHEAST CORNER OF THE PARCEL OF LAND DESCRIBED AND DESIGNATED PARCEL ONE IN THE DEED FROM EMMANUEL P. VLAZAKIS, AND OTHERS TO EMMANUEL P. VLAZAKIS, AND OTHERS DATED DECEMBER 16, 2003 AND RECORDED AS DOCUMENT NO. 2004-070318, ALAMEDA COUNTY RECORDS; THENCE LEAVING LAST SAID LINE**

SEE EXHIBIT B

(5) NORTH 62°35'19" WEST 85.00 FEET ALONG THE SOUTHWESTERLY BOUNDARY LINE OF SAID PARCEL ONE; THENCE LEAVING LAST SAID LINE

(6) NORTH 27°26'04" EAST 100.00 FEET ALONG THE NORTHWESTERLY BOUNDARY LINE OF SAID PARCEL ONE AND PARCEL TWO AS DESCRIBED AND DESIGNATED IN SAID DEED TO THE POINT OF BEGINNING;

CONTAINING 27,006 SQUARE FEET OF LAND, MORE OR LESS.

THE BEARINGS USED IN THE FOREGOING DESCRIPTION ARE ON THE CALIFORNIA COORDINATE SYSTEM (CCS83), ZONE 3, NORTH AMERICAN DATUM OF 1983 AS SHOWN ON RECORD OF SURVEY 990 FILED IN BOOK 18 OF RECORDS OF SURVEYS AT PAGES 50-60 ALAMEDA COUNTY RECORDS AND ARE BASED ON GLOBAL POSITIONING SYSTEM (GPS) OBSERVATIONS. THE BEARING OF THE LINE BETWEEN FOUND CITY OF OAKLAND STREET MONUMENTS AT THE INTERSECTION OF 3RD STREET AND BRUSH STREET AND THE INTERSECTION OF 2ND STREET AND BRUSH STREET, AS ESTABLISHED BY THESE OBSERVATIONS IS NORTH 27°26'04" EAST, SAID BEARING BEING SHOWN ON THE ATTACHED HERETO EXHIBIT "B". ALL UNITS ARE U.S. SURVEY FEET. TO OBTAIN GROUND LEVEL DISTANCES MULTIPLY DISTANCES BY 1.0000705. THE FOREGOING DESCRIPTION IS BASED ON A SURVEY MADE BY PG&E IN AUGUST, 2014.

A.P.N.: 001-0111-005-01

File No.: 54606-1204049-12 (NAT)

Dated: September 22, 2015

City of Oakland, a municipal corporation, by
and through its Board of Port commissioners

By: _Chris Chan_
Name: Chris Chan,
Title: Director of Engineering

for
**Name: J.C.Lytle**
**Title: Executive Director**

> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.

STATE OF _California_ )SS

COUNTY OF _Almeda_ )

On _September 23, 2015_ before me, _John Betterton_ , Notary Public, personally appeared
_Chris Chungmeng Chan_ _A.K.A. Chris Chan_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

THIS AREA FOR OFFICIAL NOTARIAL SEAL

This area

J. BETTERTON

Case: 19-30088    Doc# 5417    Filed: 01/20/20    Entered: 01/20/20 17:21:57    Page 17
of 60

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _California_ )SS

COUNTY OF _Alameda_ )

On _9.23.2015_ , before me, _John Betterton_ , Notary Public, personally appeared _Chris Chinn_ _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

J. BETTERTON
COMM. # 1990580
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Exp. Jan. 2, 2016

_This area for official notarial seal_



**BOUNDARY INFORMATION** (100)

| PORTION OF APN 001-0111-005-01 | AREA = 27,006 SQ. FT. |
|---|---|

S62°35'19"E 287.53'

*3rd STREET*

N62°35'19"W 110.74' — **POB** 195.74'

N56°14'14"E 60.67' (tie)

85.00'

15

APN 001-0111-001 VLAZAKIS — **POC**

16

(101)

17

APN 001-0111-002 VLAZAKIS

18

N62°35'19"W 85.00'

N17°06'44"E 304.22'

*MARKET STREET*

S17°06'44"W 203.28'

N27°26'04"E 100.00'

50.00' 50.00' 50.00' 50.00'

N27°26'04"E 306.35' BASIS OF BEARINGS

*BRUSH STREET*

| 11 | 12 | 13 | 14 |
|---|---|---|---|
| 26 | 25 | 24 | 23 |

19

20

PORTION OF APN 001-0111-005-01

21

N27°26'04"E 100.00'

22

159.32'
S62°35'19"E

*2nd STREET (VACATED) CITY OF OAKLAND*

S62°35'19"E 231.71'

## Map Legend

—··—··— LAND BOUNDARY

☐ SUBJECT PROPERTY

— — OLD LOT LINE (KELLERSBERGER'S BK.7 PG.3)

— — STREET MONUMENT LINE

—·—·— CENTER LINE OF RIGHT-OF-WAY

(102)

| ABBREVIATIONS | |
|---|---|
| **POB** | POINT OF BEGINNING |
| **POC** | POINT OF COMMENCEMENT |

| AUTHORIZATION 30980841 | |
|---|---|
| BY | D. MACHADO |
| DR | D. MACHADO |
| CH | T. KELLY |
| O.K. | T. KELLY |
| DATE | 9/21/2015 |

# EXHIBIT "B"
### CITY OF OAKLAND
3rd STREET and BRUSH STREET
APN: 001-0111-005-01
ALAMEDA COUNTY, CA
**PACIFIC GAS AND ELECTRIC COMPANY**
San Francisco          California

PG&E

| JCN | |
|---|---|
| AREA | 2 |
| COUNTY | ALAMEDA |
| SCALE | 1" = 50' |
| SHEET NO. | 1 OF 1 |
| DRAWING NUMBER | CHANGE |
| 001-0111-005-01 | 0 |

Case: 19-30088   Doc# 5417   Filed: 01/20/20   Entered: 01/20/20 17:21:57   Page 19 of 60

# EXHIBIT B

 **Pacific Gas and Electric Company**

6111 Bollinger Canyon Road
San Ramon, CA 94583

## LETTER AGREEMENT

November 22, 2017

Athanasia V. Vlazakis
George M. Vlazakis
Maria A. Barbis
225 Brush Street
Oakland, CA 94607

**Re: Letter Agreement Pertaining to 225 Brush Street, Oakland**

Dear Ms. Vlazakis, Mr. Vlazakis, and Ms. Barbis:

At Pacific Gas and Electric Company ("PG&E"), we're committed to strengthening our natural gas transmission system to better serve our communities. As part of that commitment, we are moving forward with our **Oakland Regulator Station Project S0-81**. This letter is to memorialize the discussion of our meeting held on November 17, 2018 in which we discussed PG&E's proposal to address the attachment of the adjoining owner's roof and attachments to PG&E's property located at 225 Brush Street, more specifically the property at the corner of 3rd and Market Street. This Letter Agreement ("Agreement"), when countersigned, will serve to memorialize the agreement by and between you as the owners of the 229 Brush Street property (collectively "Owners") and PG&E as to the specific actions that will be undertaken to informally resolve this matter so that the roof may remain attached to the wall and to cooperate with the construction of PG&E's Oakland Regulator Station Project S0-81.

Now therefore for good and valuable consideration, the receipt of which are acknowledged the Parties agree to the following:

1. Owners will provide the written documentation/deeds to verify how title was acquired for APNs 001-0111-001 and 001-0111-002 prior to transfer of fee title.

2. PG&E will reinforce the existing masonry wall on its property located at the Southeast corner of 3rd and Market Street, which constitutes the easterly wall of the existing building and immediately adjacent to the easterly property line. PGE to solidify and stabilize the subgrade soil beneath around the shared wall. PGE shall install wall bracings to stabilize the wall. All work will conform to standards and codes of applicable engineering and local state and federal codes.

3. Subject to obtaining all required regulatory approvals described in sections 4, 5, and 6 below, PG&E will convey to Owners, by grant deed the strip of land currently occupied by the wall and its supporting foundation, the approximate area of which is 4' in width x 50' in length. Prior to conveying the this strip of land, PG&E must obtain approval from City of Oakland ("City") for a lot line adjustment and from the California Public Utilities Commission ("CPUC") under Public Utilities Code Section 851.

PG&E and Owners will apply jointly to the City for approval of a lot line adjustment. PG&E will be responsible for the preparation of the application for the lot line adjustment and all necessary supporting documents. PG&E will provide the draft application to Owners for their review and approval prior to submittal to the City. The City's approval of the lot line adjustment ("City Approval") is a condition precedent to the conveyance.

4. Upon obtaining the City Approval, PG&E will apply to the CPUC for its approval of the conveyance of this strip of land pursuant to Public Utilities Code Section 851. The CPUC's approval of the conveyance ("CPUC Approval") is a condition precedent to the conveyance. Owners acknowledge and agree that CPUC Approval shall not be deemed to have occurred for purposes of this Letter Agreement unless and until the CPUC approves the conveyance of the strip of land to Owners in a form that is final, unconditional and unappealable, including exhaustion of all administrative appeals or remedies before the CPUC, and such CPUC Approval is approved by PG&E in its sole and absolute discretion, including PG&E's approval of the proposed accounting and ratemaking treatment of the conveyance. Owners further acknowledge and agree that PG&E makes no representation or warranty with respect to the likelihood of, or timing of, CPUC Approval, and Owners waive all claims against PG&E for losses, expenses or damages suffered or incurred by Owner as a direct and sole result of the need for CPUC Approval, any delay in receipt of CPUC approval or the failure of the CPUC to approve the conveyance to Owners.

5. Owners will cooperate in the effort to obtain City Approval and CPUC Approval, including signing any related documents that may be necessary for such approvals.

6. Upon obtaining the CPUC Approval, PG&E will convey by Grant Deed that strip of land on which the shared wall is located to Owners. PG&E will prepare the Grant Deed and legal description, which will be recorded with the County Recorder's Office. The conveyance of the strip of land and the wall shall be to the maximum extent of the law, on an **"As-Is"** and **"With All Faults"** basis, and Owners agree that they will accept the strip of land and wall in such condition. PG&E does not make and specifically disclaims any representations or warranties, promises, covenants or guarantees of any kind or character whatsoever, whether express or implied, oral or written as to, concerning or with respect to the strip of land or wall.

7. The Owners acknowledge and agree that PG&E no longer owes any further payments.

8. Owner agrees to provide PG&E and subcontractors required access to parcels 001-0111-001 and 001-0111-002 for the stabilization of the masonry wall and construction of the concrete block wall; including the right to work, laydown and stage construction materials and equipment during the work.

9. This Agreement supersedes all previous oral and written agreements between and representation by or on behalf of the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof.

10. Authority of Signatory - Each party to this Agreement warrants to the other that it has the sole right and authority to enter into and consummate this Agreement and all related documents.

11. Successors, Heirs, and Assigns -The Rights provided for herein shall inure to successors, heirs and assigns of the respective parties hereto, and all covenants shall apply to and run with the land.

PG&E's signature on this Agreement constitutes PG&E's agreement to the terms and conditions set forth herein. Thus, if the terms of this Agreement are acceptable to Owners, please signed this Agreement in the places provided below and return the signed letter to me. We will construe this Agreement as being executed upon our receipt of either signed original or the transmittal of electronic pdf version of the signed letter.

Sincerely,

Emad Gholami
Supervisor, Land Acquisition

ACKNOWLEDGED AND ACCEPTED:

Signature: _____     Date: _____
Name: Maria Barbis
Title: Trustee of the 2017 John and Maria
Barbis Revocable Trust

Signature: _____     Date: _____
Name: Athanasia V. Vlazakis

Signature: _____     Date: _____
Name: George M. Vlazakis

PG&E's signature on this Agreement constitutes PG&E's agreement to the terms and conditions set forth herein. Thus, if the terms of this Agreement are acceptable to Owners, please signed this Agreement in the places provided below and return the signed letter to me. We will construe this Agreement as being executed upon our receipt of either signed original or the transmittal of electronic pdf version of the signed letter.

Sincerely,

Emad Gholami
Supervisor, Land Acquisition


ACKNOWLEDGED AND ACCEPTED:

Signature:
Name:    Maria Barbis
Title:    Trustee of the 2017 John and Maria Barbis Revocable Trust

Date: 1/2/2018

Signature:
Name:    Athanasia V. Vlazakis

Date:

Signature:
Name:    George M. Vlazakis

Date:

PG&E's signature on this Agreement constitutes PG&E's agreement to the terms and conditions set forth herein. Thus, if the terms of this Agreement are acceptable to Owners, please signed this Agreement in the places provided below and return the signed letter to me. We will construe this Agreement as being executed upon our receipt of either signed original or the transmittal of electronic pdf version of the signed letter.

Sincerely,

Emad Gholami
Supervisor, Land Acquisition

ACKNOWLEDGED AND ACCEPTED:

Signature: _____     Date: _____
Name:      Maria Barbis
Title:     Trustee of the 2017 John and Maria
           Barbis Revocable Trust

Signature: *Athanasia V. Vlazakis*          Date: _12/5/17_
Name:      Athanasia V. Vlazakis

Signature: _____     Date: _____
Name:      George M. Vlazakis

PG&E's signature on this Agreement constitutes PG&E's agreement to the terms and conditions set forth herein. Thus, if the terms of this Agreement are acceptable to Owners, please signed this Agreement in the places provided below and return the signed letter to me. We will construe this Agreement as being executed upon our receipt of either signed original or the transmittal of electronic pdf version of the signed letter.

Sincerely,

Emad Gholami
Supervisor, Land Acquisition

ACKNOWLEDGED AND ACCEPTED:

Signature: _____        Date: _____
Name:      Maria Barbis
Title:     Trustee of the 2017 John and Maria
           Barbis Revocable Trust

Signature: _____        Date: _____
Name:      Athanasia V. Vlazakis

Signature: _George M. Vlazakis_             Date: _12/2/17_
Name:      George M. Vlazakis



EXHIBIT A

# EXHIBIT 2



1  GEORGE M. VLAZAKIS, S.B. #88237
   Attorney at Law
2  225 Brush Street
   Oakland, CA 94607
3  Telephone: (510) 836-4437
   Facsimile: (510) 836-4464
4
   Defendant, in pro per
5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF ALAMEDA, UNLIMITED JURISDICTION

10

11  PACIFIC GAS AND ELECTRIC              CASE NO. RG 19021463
    COMPANY,
12                                        Assigned for All Purposes to
              Plaintiff,                  Judge Noel Wise
13                                        Department 24
    v.
14                                        **ANSWER OF DEFENDANT
    ATHANASIA V. VLAZAKIS, GEORGE M.      GEORGE M. VLAZAKIS TO
15  VLAZAKIS, JOHN A. BARBIS, MARIA A.    PLAINTIFF PACIFIC GAS AND
    BARBIS, and DOES I through XX,        ELECTRIC COMPANY'S COMPLAINT
16                                        FOR PRELIMINARY AND
              Defendants.                 PERMANENT INJUNCTION,
17                                        ABATEMENT OF NUISANCE,
                                          TRESPASS, DECLARATORY RELIEF
18  _____/        (REMOVAL OF ENCROACHMENT)**

19       1.    This answering Defendant George M. Vlazakis (hereinafter "Defendant") denies

20  generally and specifically each of the allegations contained in the unverified Complaint for

21  Preliminary and Permanent Injunction, Abatement of Nuisance, Trespass, Declaratory Relief

22  (Removal of Encroachment) (hereinafter "Complaint") and also denies each of the allegations

23  contained in the prayer for judgment and relief. Defendant alleges that Plaintiff is not entitled to

24  any of the relief requested on its first, second, and third causes of action of the Complaint.

25       2.    Defendant admits that he is a co-owner in possession of the property located at

26  APN 001-011-001 commonly known as 225-229 Brush Street and 751 Third Street, Oakland,

27  California and APN 001-0111-002 (a vacant lot with no address assigned).

28  //

3.    Defendant admits that on or about November 22, 2017, Plaintiff PG&E and Defendant agreed that PG&E would convey title to a four foot by fifty foot strip of real property along their common border that includes PG&E's brick wall and that this letter of agreement was reduced to writing and signed by the parties, as included in Exhibit B attached to the Complaint.

4.    Defendant denies that key condition precedents to the agreement were not met and that the Defendants, including this answering Defendant, could not or would not meet the City of Oakland permit requirements.

5.    This answering Defendant denies all other allegations contained in Plaintiff's Complaint, including the prayer for relief contained therein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

As and for a first separate and distinct affirmative defense, Plaintiff's lawsuit should be dismissed and/or stayed because it violates fundamental fairness and due process under the Fourteenth Amendment of the U.S. Constitution, which is applicable to the states by its terms and Article VI, Clause 2 of the United States Constitution, under the Supremacy Clause. Defendants are prevented from seeking affirmative relief against Plaintiff under the automatic stay of the U.S. Bankruptcy Code, giving Plaintiff an unfair advantage in this lawsuit.

### SECOND AFFIRMATIVE DEFENSE

As and for a second separate and distinct affirmative defense, Plaintiff's Complaint and each cause of action for relief alleged is barred by the doctrine of laches since Plaintiff unreasonably delayed in the bringing of this action, all to Defendant's prejudice and detriment.

### THIRD AFFIRMATIVE DEFENSE

As and for a third separate and distinct affirmative defense, Plaintiff and its agents voluntarily assumed all risks of the undertaking, including agreeing to structurally upgrade the

//

common party wall at its sole cost and expense and to solidify and stabilize the soils beneath the common party wall and is estopped from failing to go forward with this work as agreed.

## FOURTH AFFIRMATIVE DEFENSE

As and for a fourth separate and distinct affirmative defense, this Defendant is entitled to specific performance of Plaintiff's agreement to go forward with structural upgrades of the common party wall since a binding contract supported by considerations was entered into by the parties to perform a specific undertaking enforceable by the Court.

## FIFTH AFFIRMATIVE DEFENSE

As and for a fifth separate and distinct affirmative defense, Plaintiff has unclean hands by failing to take timely and reasonable steps to relocate it's pipes, equipment, and infrastructure away from the subject property boundary line and the common wall separating the subject properties.

## SIXTH AFFIRMATIVE DEFENSE

As and for a sixth separate and distinct affirmative defense, Plaintiff has failed to allege sufficient facts to state a cause of action for monitory and/or injunctive relief against this answering Defendant and the other named Defendants in this case.

## SEVENTH AFFIRMATIVE DEFENSE

As and for a seventh separate and distinct affirmative defense, Plaintiff breached the covenant of good faith and fair dealing by refusing to undertake the structural upgrades to the common party wall after agreeing orally and in writing to do so, as represented to Defendants, including this answering Defendant, over an extended period of time.

//

//

//

## EIGHTH AFFIRMATIVE DEFENSE

As and for a eighth separate and distinct affirmative defense, Plaintiff is contributorily negligent and at fault by failing to plan and design the second phase of the project by placing pipes above and below ground away from the existing common party wall.

## NINTH AFFIRMATIVE DEFENSE

As and for a ninth separate and distinct affirmative defense, this Defendant and the co-Defendants are innocent property owners, and the balancing of hardships are in Defendants' favor because the common party wall was in existence, along with the building at 751 Third Street and its component parts for decades before Plaintiff acquired its property in 2015 and contemplated its project.

## TENTH AFFIRMATIVE DEFENSE

As and for a tenth separate and distinct affirmative defense, Plaintiff, through its agents, withheld material information and misrepresented material facts by failing to provide copies of written engineering reports, correspondence, and notes requested by Defendants to support the conclusion that upgrading the common party wall and solidifying and stabilizing the soil beneath this wall were allegedly no longer feasible as of approximately January 15, 2019 to the present.

## ELEVENTH AFFIRMATIVE DEFENSE

As and for a eleventh separate and distinct affirmative defense, Plaintiff and it's agents breached the written agreement entered into in December of 2017 and signed by the parties in December 2017 and January 2018 since under Paragraph 9 of the agreement it constitutes the entire agreement of the parties and PG&E's covenants to perform under the agreement under Paragraph 2, reinforcing the existing masonry wall and to solidify and stabilize the subgrade below the wall, which was a covenant running with PG&E's land under Paragraph 11 of the agreement, thereby binding PG&E and its successors and assigns.

//

## TWELFTH AFFIRMATIVE DEFENSE

As and for a twelfth separate and distinct affirmative defense, Plaintiff PG&E has unclean hands in the undertaking by failing to take reasonable steps to shore up and protect the existing common party at PG&E's expense as previously agreed and represented to Defendants over an extended period of time of their direct dealings.

## THIRTEENTH AFFIRMATIVE DEFENSE

As and for a thirteenth separate and distinct affirmative defense, Plaintiff PG&E is estopped by its conduct in failing to maintain and to protect the existing common party wall as previously represented to Defendants.

## FOURTEENTH AFFIRMATIVE DEFENSE

As and for a fourteenth separate and distinct affirmative defense, the common wall separating the parties' property is a common party wall, based on the facts and law of this case, including but not limited to California Civil Code § 801(12), which results in this answering Defendant and the other co-Defendants having an easement in this common party wall, which allows Defendants to continue to use the wall for support and protection of their building.

## FIFTEENTH AFFIRMATIVE DEFENSE

As and for a fifteenth separate and distinct affirmative defense, this answering Defendant alleges that the Complaint, and each purported cause of action therein fails to state facts sufficient to constitute a cause of action against this answering Defendant and in fact fails to allege any cause of action against this answering Defendant.

## SIXTEENTH AFFIRMATIVE DEFENSE

As and for a sixteenth separate and distinct affirmative defense, this answering Defendant alleges that any other injuries, if any, sustained or suffered by the Plaintiff, were proximately and substantially caused and contributed to by the negligence of the Plaintiff and/or other third parties

1   other than this answering Defendant, in that Plaintiff failed to exercise ordinary and reasonable
2   care and diligence in this matter.

4                           SEVENTEENTH AFFIRMATIVE DEFENSE
5           As and for a seventeenth separate and distinct affirmative defense, this answering
6   Defendant alleges that this answering Defendant is not legally responsible in any fashion with
7   respect to alleged damages and injuries claimed by the Plaintiff, if any. However, if this
8   answering Defendant is found to be legally responsible, which he fully disputes, then this
9   answering Defendant alleges that his legal responsibility, if any, is not the sole and proximate
10  cause of the injuries alleged by the Plaintiff, and that the damages awarded to Plaintiff, if any, are
11  to be apportioned according to the respective fault and legal responsibility of the agents, servants,
12  and employees of Plaintiff who contributed to and/or caused any alleged injury, according to
13  proof presented at the time of trial.

15                          EIGHTEENTH AFFIRMATIVE DEFENSE
16          As and for a eighteenth separate and distinct affirmative defense, this answering
17  Defendant alleges that the Complaint and each purported cause of action therein is barred by the
18  applicable statute of limitations, including but not limited to § 338(b) of the California Code of
19  Civil Procedure.

21                          NINETEENTH AFFIRMATIVE DEFENSE
22          As and for a nineteenth separate and distinct affirmative defense, this answering
23  Defendant alleges that as between the Plaintiff and this answering Defendant the equities do not
24  preponderate in favor of the Plaintiff, and accordingly, the Plaintiff is barred from any recovery
25  against this answering Defendant.
26  //
27  //
28  //

6

## TWENTIETH AFFIRMATIVE DEFENSE

As and for a twentieth separate and distinct affirmative defense, this answering Defendant alleges the Defendant claims an equitable right of recoupment against any alleged claim by Plaintiff, based on Plaintiff's savings of costs, expenses, fees, and time in failing to perform under the terms of the agreement entered into by the parties on or about December of 2017 to structurally upgrade the common wall.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

As and for a twenty-first separate and distinct affirmative defense, Plaintiff and its agents were negligent in this matter, and Plaintiff's negligence bars any claimed recovery for damages and/or injunctive relief against this answering Defendant and the other co-Defendants.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

As and for a twenty-second separate and distinct affirmative defense, Plaintiff failed to mitigate its damages, if any, and accordingly is not entitled to the relief sought in said Complaint against this answering Defendant.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

As and for a twenty-third separate and distinct affirmative defense, Plaintiff's knowledge and acceptance of conditions found on the real property purchased and owned by Plaintiff and it's location and proximity to the estuary was with full knowledge of these conditions and thus constitutes a waiver of objections to these conditions and any alleged claims and/or causes of action alleged against this answering Defendant and the other co-Defendants.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

As and for a twenty-fourth separate and distinct affirmative defense, the Complaint and each cause of action therein is stated in conclusory terms, and therefore Defendant cannot fully anticipate all affirmative defenses that may be applicable to this action. Accordingly, Defendant

1   reserves the right to add additional affirmative defenses to Defendant's answer by way of

2   amendment, if any, to the extent such affirmative defenses are applicable to this action.

3

4         WHEREFORE, this answering Defendant prays that:

5         1.     Plaintiff take nothing by way of its unverified Complaint on file with the Court.

6         2.     Plaintiff not be awarded any injunctive relief against this or any other Defendant

7   in this action.

8         3.     The Court determine that the adjoining wall constitutes a common party wall,

9   thereby establishing an easement in the continued use of the wall by this and the other

10   co-Defendants.

11         4.     Alternatively, that the Court find that this Defendant has an equitable easement in

12   the common wall requiring its continued use and support for Defendants', including this

13   answering Defendant's, property.

14         5.     For costs of suit incurred in this case, and

15         6.     For such other and further relief, including equitable relief, that the Court may

16   deem just and proper.

17

18

19   Dated: __7 | 5 | 19__               _George m. Vlazakis_

20                         GEORGE M. VLAZAKIS

                            Defendant, in pro per

21

22

23

24

25

26

27

28

# PROOF OF SERVICE BY MAIL

I am employed in the County of Alameda. I am not a party to the within above-entitled action. My business address is 225 Brush Street, Oakland, California 94607.

On July 8, 2019, I served the following:

**ANSWER OF DEFENDANT GEORGE M. VLAZAKIS TO PLAINTIFF PACIFIC GAS AND ELECTRIC COMPANY'S COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, ABATEMENT OF NUISANCE, TRESPASS, DECLARATORY RELIEF (REMOVAL OF ENCROACHMENT)**

on the below listed party(ies) in said action, by

<u>X</u>    placing a true copy thereof enclosed in a sealed envelope, with proper postage affixed, addressed to the party(ies) below, into the outgoing mail system in our office, understanding that the regular procedures in this office will be followed in order to mail the document through the United States mail at Oakland, California on said date:

**Ann H. Kim**
**Cesar V. Alegria, Jr.**
**Pacifc Gas and Electric Company**
**P.O. Box 7442**
**San Franciso, CA 94120**

**Kenyon Mark Lee**
**Monika Pleyer Lee**
**Lee Law Offices**
**1700 South El Camino Real, Suite 450**
**San Mateo, CA  94402**

**Athanasia V. Vlazakis**
**1201 California St., Suite 605**
**San Francisco, CA 94109**

**Maria A. Barbis**
**400 No. Middlefield Court**
**Visalia, CA 93291**

**John A. Barbis**
**400 No. Middlefield Court**
**Visalia, CA 93291**

Executed on July 8, 2019, at Oakland, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Diane Reiner

c:\wpdocs\vlazakis\brush.st\pg&e.v.vlazakis.injunctive.relief\pleadings\pos.mail.answer

# EXHIBIT 3



**Pacific Gas and Electric Company**™

6111 Bollinger Canyon Road
San Ramon, CA 94583

## LETTER AGREEMENT

November 22, 2017

Athanasia V. Vlazakis
George M. Vlazakis
Maria A. Barbis
225 Brush Street
Oakland, CA 94607

### Re: Letter Agreement Pertaining to 225 Brush Street, Oakland

Dear Ms. Vlazakis, Mr. Vlazakis, and Ms. Barbis:

At Pacific Gas and Electric Company ("PG&E"), we're committed to strengthening our natural gas transmission system to better serve our communities. As part of that commitment, we are moving forward with our **Oakland Regulator Station Project S0-81**. This letter is to memorialize the discussion of our meeting held on November 17, 2018 in which we discussed PG&E's proposal to address the attachment of the adjoining owner's roof and attachments to PG&E's property located at 225 Brush Street, more specifically the property at the corner of 3rd and Market Street. This Letter Agreement ("Agreement"), when countersigned, will serve to memorialize the agreement by and between you as the owners of the 229 Brush Street property (collectively "Owners") and PG&E as to the specific actions that will be undertaken to informally resolve this matter so that the roof may remain attached to the wall and to cooperate with the construction of PG&E's Oakland Regulator Station Project S0-81.

Now therefore for good and valuable consideration, the receipt of which are acknowledged the Parties agree to the following:

1. Owners will provide the written documentation/deeds to verify how title was acquired for APNs 001-0111-001 and 001-0111-002 prior to transfer of fee title.

2. PG&E will reinforce the existing masonry wall on its property located at the Southeast corner of 3rd and Market Street, which constitutes the easterly wall of the existing building and immediately adjacent to the easterly property line. PGE to solidify and stabilize the subgrade soil beneath around the shared wall. PGE shall install wall bracings to stabilize the wall. All work will conform to standards and codes of applicable engineering and local state and federal codes.

3. Subject to obtaining all required regulatory approvals described in sections 4, 5, and 6 below, PG&E will convey to Owners, by grant deed the strip of land currently occupied by the wall and its supporting foundation, the approximate area of which is 4' in width x 50' in length. Prior to conveying the this strip of land, PG&E must obtain approval from City of Oakland ("City") for a lot line adjustment and from the California Public Utilities Commission ("CPUC") under Public Utilities Code Section 851.

PG&E and Owners will apply jointly to the City for approval of a lot line adjustment. PG&E will be responsible for the preparation of the application for the lot line adjustment and all necessary supporting documents. PG&E will provide the draft application to Owners for their review and approval prior to submittal to the City. The City's approval of the lot line adjustment ("City Approval") is a condition precedent to the conveyance.

4. Upon obtaining the City Approval, PG&E will apply to the CPUC for its approval of the conveyance of this strip of land pursuant to Public Utilities Code Section 851. The CPUC's approval of the conveyance ("CPUC Approval") is a condition precedent to the conveyance. Owners acknowledge and agree that CPUC Approval shall not be deemed to have occurred for purposes of this Letter Agreement unless and until the CPUC approves the conveyance of the strip of land to Owners in a form that is final, unconditional and unappealable, including exhaustion of all administrative appeals or remedies before the CPUC, and such CPUC Approval is approved by PG&E in its sole and absolute discretion, including PG&E's approval of the proposed accounting and ratemaking treatment of the conveyance. Owners further acknowledge and agree that PG&E makes no representation or warranty with respect to the likelihood of, or timing of, CPUC Approval, and Owners waive all claims against PG&E for losses, expenses or damages suffered or incurred by Owner as a direct and sole result of the need for CPUC Approval, any delay in receipt of CPUC approval or the failure of the CPUC to approve the conveyance to Owners.

5. Owners will cooperate in the effort to obtain City Approval and CPUC Approval, including signing any related documents that may be necessary for such approvals.

6. Upon obtaining the CPUC Approval, PG&E will convey by Grant Deed that strip of land on which the shared wall is located to Owners. PG&E will prepare the Grant Deed and legal description, which will be recorded with the County Recorder's Office. The conveyance of the strip of land and the wall shall be to the maximum extent of the law, on an **"As-Is"** and **"With All Faults"** basis, and Owners agree that they will accept the strip of land and wall in such condition. PG&E does not make and specifically disclaims any representations or warranties, promises, covenants or guarantees of any kind or character whatsoever, whether express or implied, oral or written as to, concerning or with respect to the strip of land or wall.

7. The Owners acknowledge and agree that PG&E no longer owes any further payments.

8. Owner agrees to provide PG&E and subcontractors required access to parcels 001-0111-001 and 001-0111-002 for the stabilization of the masonry wall and construction of the concrete block wall; including the right to work, laydown and stage construction materials and equipment during the work.

9. This Agreement supersedes all previous oral and written agreements between and representation by or on behalf of the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof.

10. Authority of Signatory - Each party to this Agreement warrants to the other that it has the sole right and authority to enter into and consummate this Agreement and all related documents.

11. Successors, Heirs, and Assigns -The Rights provided for herein shall inure to successors, heirs and assigns of the respective parties hereto, and all covenants shall apply to and run with the land.

PG&E's signature on this Agreement constitutes PG&E's agreement to the terms and conditions set forth herein. Thus, if the terms of this Agreement are acceptable to Owners, please signed this Agreement in the places provided below and return the signed letter to me. We will construe this Agreement as being executed upon our receipt of either signed original or the transmittal of electronic pdf version of the signed letter.

Sincerely,

Emad Gholami
Supervisor, Land Acquisition

ACKNOWLEDGED AND ACCEPTED:

Signature: _____     Date: _____
Name:      Maria Barbis
Title:     Trustee of the 2017 John and Maria
           Barbis Revocable Trust

Signature: _____     Date: _____
Name:      Athanasia V. Vlazakis

Signature: _____     Date: _____
Name:      George M. Vlazakis

# EXHIBIT 5



CITY OF OAKLAND

# Address History (Beginning ≈ 1987)

## 205, BRUSH, ST

| APN | Unit # | Record ID | Date Opened ▼ | Status | Status Date | Description |
|---|---|---|---|---|---|---|
| 001 011100503 | | FDB19-00667 | 4/24/2019 | | | |
| 001 011100503 | | OB1900220 | 2/4/2019 | Permit Expired | 2/20/2019 12:09:59 AM | Reserve 30 (750') NON-METERED parking space(s) in front of parcel only for dumpster, construction vehicle, moving van or storage pod. Post No-parking signs 72 hours prior in residential areas. No impact on traffic lane or sidewalk allowed. No-parking signs picked up by applicant after payment, 4TH FLOOR. To Have Illegally Parked Vehicle Ticketed Call 510-777-3333. Applicant arranges towing. Comply with terms set forth in CVC Section 22651 (m). For Towed Vehicle: Call 510-238-3021. Utility PG&E |
| 001 011100503 | | E1900357 | 1/31/2019 | Permit Inactive | 8/23/2019 12:05:13 AM | 100amp main service for PG&E gas regulation station. |
| 001 011100503 | | X1900073 | 1/25/2019 | Permit Expired | 3/14/2019 12:04:25 AM | PG&E PM 84005201 Location A: Strength test for line 105-C. Mile Point 0.00-2.03 and 10'X20'excavation wirth PG&E Station For Test Head. If working within 25' feet of a monument you must comply with State Law 8771, contact the Inspector prior to starting excavation: minimum $5,800.00 fine for non-compliance. Comply with all terms of City of Oakland Public Works Standards, Street Excavation Rules, Revised March 2015 and City Council Ordinance No. 13300 C.M.S. Five day prior notice required for work lasting five days or less in business/commercial districts; 72 hour notice in residential districts. Ten day prior notice required for work lasting six days or more in all districts. Call PWA INSPECTION prior to start: 510-238-3651. email PWA_inspections@oaklandnet.com. |
| 001 011100501 | | X1800770 | 8/14/2018 | Application Inactive | 2/20/2019 12:21:33 AM | Mastec Of North America Pm ES 2000002, Place 1322Lf fiber Cable into existing Underground Structure in Public Right of Way. If working within 25' feet of a monument you must comply with State Law 8771, contact the Inspector prior to starting excavation: minimum $5,800.00 fine for non-compliance. Comply with all terms of City of Oakland Public Works Standards, Street Excavation Rules, Revised March 2015 and City Council Ordinance No. 13300 C.M.S. Five day prior notice required for work lasting five days or less in business/commercial districts; 72 hour notice in residential districts. Ten day prior notice required for work lasting six days or more in all districts. USA # and date must be provided in order to have a permit issued. Permit valid 30 days. Call PWA INSPECTION prior to start: 510-238-3651. 4th FLOOR. USA # |
| 001 011100501 | | SL1801523 | 5/30/2018 | Created | 5/30/2018 12:21:07 PM | ABANDON SEWER W813700689 dATE: 6/14/18 |
| 001 011100501 | | AMR1800085 | 3/14/2018 | Application Inactive | 9/13/2018 12:26:04 AM | Grant of Modification to Install a steel support structure to retrofit existing unreinforced masonry wall on adjacent property |

For real-time, direct access to information via the Internet, 24 hours a day - https://aca.accela.com/oakland

## 205, BRUSH, ST

| APN | Unit # | Record ID | Date Opened ▼ | Status | Status Date | Description |
|---|---|---|---|---|---|---|
| 001 011100501 | | PLN18130 | 3/7/2018 | Approved | 5/11/2018 12:00:00 AM | Parcel Map Waiver to adjust lot lines between two parcels associated with the necessity to shore-up an existing wall. APN#'s: 001-0111-001-00 & 001-0111-005-02. NOTE: parcel 005-02 was sold by the City of Oakland to PG&E with a previous PMW. The old APN# was 005-01 (shown below, not yet updated). |
| 001 011100100 | | PLN18130 | 3/7/2018 | Approved | 5/11/2018 12:00:00 AM | Parcel Map Waiver to adjust lot lines between two parcels associated with the necessity to shore-up an existing wall. APN#'s: 001-0111-001-00 & 001-0111-005-02. NOTE: parcel 005-02 was sold by the City of Oakland to PG&E with a previous PMW. The old APN# was 005-01 (shown below, not yet updated). |
| 001 011100501 | | RB1705226 | 11/14/2017 | Reinstated | 2/19/2019 12:00:00 AM | Demolish total 17,240 sq. brick commercial building (3 attached structure). Wall bracing work on remaining wall under B1705229 |
| 001 011100501 | | B1705229 | 11/14/2017 | Permit Inactive | 3/29/2019 12:03:27 AM | Installation of a steel support structure support unreinforced masonry wall after existing PG&E office buildings demoed under RB1705226. ZW1700417 (To be cerified on property prior to final). |
| 001 011100100 | | B1705229 | 11/14/2017 | Permit Inactive | 3/29/2019 12:03:27 AM | Installation of a steel support structure support unreinforced masonry wall after existing PG&E office buildings demoed under RB1705226. ZW1700417 (To be cerified on property prior to final). |
| 001 011100501 | | ZW1700417 | 7/19/2017 | Complete | 7/19/2017 12:00:00 AM | *Update 11/14/17: OK to demo per admin. ABR Applicant will provide written project scope in addition to existing and proposed dimensioned site plans, floor plans, elevations, and landscape plans describing the project. Authorization needed from property owner for 229 brush st. due to work on their building, which possibly crosses the property line. Applicant will provide survey. Project needs review by historic preservation planner for demolition of potentially historic structures. Driveway curb cut relocation dimensions/details needed. Required landscaping and street tree plan needed for removal/replacement of trees. Plan showing style, location, and height of proposed fencing needed. Need color photographs of existing buildings. Provided zone and parking chapter handouts and specified zone as CIX-1B/T |
| 001 011100501 | | X1501840 | 8/13/2015 | Expired | 1/1/2016 1:09:48 AM | Replace 30' gas main & remove vault. If working within 25' feet of a monument you must comply with State Law 8771, contact the Inspector prior to starting excavation: minimum $5,800.00 fine for non-compliance. PG&E PM 31133776 Permit valid 90 days. Separate Obstruction permit required to reserve/block parking lane. Set up PWA PRE-CON prior to start work: 510-238-3651. |
| 001 011100501 | | PLN15056 | 3/5/2015 | Approved | 4/16/2015 12:00:00 AM | Parcel Map Waiver per 16.24.020 (B)(1)(a) division of land between a governmental agency (Port of Oakland) and a Public Utility (PG&E) |
| 001 011100501 | | X1402136 | 8/22/2014 | Expired | 12/12/2015 1:07:57 AM | Remove joint pole from service across from this address; repair concrete as needed. Loc 4. AT&T Job 9619601 Permit valid 90 days. Separate Obstruction permit required to reserve/block parking lane. Set up PWA PRE-CON prior to start work: 510-238-3651. |
| 001 011100501 | | 1301989 | 4/18/2013 | Open | | GRAFFITI AND A HOMELESS ENCAMPMENT ON PROPERTY |
| 001 011100501 | | X0802125 | 10/22/2008 | Permit Issued | 11/24/2008 12:00:00 AM | permit to place new power pole and anchor and ground rods part of package including X0801887,X0801888 & X0801889. |
| 001 011100501 | | ENMI08199 | 10/22/2008 | Fully Executed | 11/25/2008 12:00:00 AM | permit to place new power pole and anchor and groun rods |
| 001 011100501 | | E0702350 | 7/10/2007 | Expired | 2/7/2008 12:00:00 AM | Electrical TO ENERGIZE GATE FOR 6' HIGH FENCE |
| 001 011100501 | | E0701552 | 5/7/2007 | Final | 9/5/2007 12:00:00 AM | Electrical/1000 amps/Comp natural gas vehicle fueling system |
| 001 011100501 | | M0700889 | 5/7/2007 | Expired | 2/7/2008 12:00:00 AM | Mechanical/gas tests/Comp natural gas vehicle fueling system 2 med pipe |
| 001 011100501 | | B0700564 | 2/7/2007 | Expired | 2/7/2008 12:00:00 AM | Compressed natural gas vehicle fueling system |
| 001 011100501 | | M8633060 | 4/28/1986 | Final | 7/26/1988 12:00:00 AM | |

For real-time, direct access to information via the Internet, 24 hours a day - https://aca.accela.com/oakland

# EXHIBIT 6

COLETTE F. STONE, ESQ. (SBN: 129773)
RONALD F. BERESTKA JR., ESQ. (SBN: 155707)
STONE & ASSOCIATES
A Professional Corporation
2125 Ygnacio Valley Road, Suite 101
Walnut Creek, CA 94598
Telephone: (925) 938-1555
Facsimile: (925) 938-2937
Email: cstone@stonelawoffice.com

Attorneys for Defendants,
GEORGE M. VLAZAKIS; MARIA BARBIS; JOHN BARBIS; and ATHANASIA V.
VLAZAKIS

## SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF ALAMEDA

## UNLIMITED JURISDICTION

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>ATHANASIA V. VLAZAKIS, GEORGE M. VLAZAKIS, JOHN A. BARBIS, MARIA A. BARBIS, and DOES 1 to xx,<br><br>Defendants. | CASE NO. RG 19021463<br><br>**VERIFIED CROSS COMPLAINT OF GEORGE M. VLAZAKIS, MARIA BARBIS, AND JOHN BARBIS AND ATHANASIA V. VLAZAKIS FOR:**<br>**1) QUITE TITLE (IMPLIED EASEMENT BY EXISTING USE);**<br>**2) QUITE TITLE (PRESCRIPTIVE EASEMENT);**<br>**3) QUITE TITLE (EASEMENT BY NECESSITY);**<br>**4) BREACH OF CONTRACT;**<br>**5) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**6) NEGLIGENCE; and**<br>**7) DECLARATORY RELIEF**<br><br>Complaint filed: June 4, 2019<br>Assigned for all purposes to Judge Jenna Whitman, Dept. 507 |
| GEORGE M. VLAZAKIS, JOHN A. BARBIS, MARIA A. BARBIS and ATHANASIA V. VLAZAKIS<br><br>Cross-Complainant,<br><br>vs.<br><br>PACIFIC GAS AND ELECTRIC COMPANY and ZOES 1 to 100,<br><br>Defendants. | |

-1-

VERIFIED CROSS-COMPLAINT OF GEORGE M. VLAZAKIS, MARIA BARBIS, JOHN BARBIS, AND ATHANASIA V. VLAZAKIS

COMES NOW CROSS-COMPLAINANTS GEORGE M. VLAZAKIS; MARIA BARBIS; JOHN BARBIS and ATHANASIA V. VLAZAKIS (hereinafter collectively "CROSS-COMPLAINANTS") and allege as follows:

1.     CROSS-COMPLAINANTS GEORGE M. VLAZAKIS; MARIA BARBIS; JOHN BARBIS and ATHANASIA V. VLAZAKIS are and were at all times herein mentioned residents of the County of Alameda and owners of real property and improvements located at APN 001-0111-001 commonly known as 225-229 Brush Street and 751 Third Street, Oakland, California and APN 002-0111-002 (a vacant lot with no address assigned) (hereinafter collectively the "the CROSS-COMPLAINANTS' Properties").

2.     CROSS-COMPLAINANTS are informed and believe that CROSS-DEFENDANT PACIFIC GASS AND ELECTRIC COMPANY (hereinafter PG&E) is a public utility corporation duly organized and existing under and by virtue of the laws of the State of California and has its principle place of business in the City and County of San Francisco, California.

3.     ZOES 1 through 100 were and now are individuals or entities residing, doing business in, or having legal significance in the State of California.

4.     CROSS-COMPLAINANTS do not know the true names and capacities, whether individual, corporate or otherwise, of the CROSS-DEFENDANTS named herein as ZOES 1 through 100, inclusive. CROSS-COMPLAINANTS therefore sues these CROSS-DEFENDANT by fictitious names and will amend this CROSS-COMPLAINT in accordance with Code of Civil Procedure section 474 to reflect the Zoe CROSS-DEFENDANTS' true names and capacities when they have been ascertained. CROSS-COMPLAINANTS are informed and believes and thereon alleges that each of the Zoe CROSS-DEFENDANTS is at fault in some manner for the acts and omissions alleged below and caused and/or is otherwise legally responsible for CROSS-COMPLAINANTS' alleged injuries and damages. CROSS-COMPLAINANTS are further informed and believe and thereon alleges that whenever and wherever in this CROSS-COMPLAINT any of the CROSS-DEFENDANTS are the subject of any charging allegations by CROSS-COMPLAINANTS, said ZOES 1 through 100 are also responsible in some manner for the

-2-

events and happenings alleged herein, and it shall be deemed that said Zoe CROSS-DEFENDANTS, and each of them, are likewise the subject of said charging allegations herein.

5. CROSS-COMPLAINANTS are informed and believe and thereon allege that PG&E and ZOES 1 through 50 are the owners of real property located at APN 001-0111-005 and commonly known as 205-209 Brush Street, Oakland, California and which is adjacent to the CROSS-COMPLAINANTS' Properties (hereinafter the "Subject Property"). Besides PG&E and ZOES 1 through 50, CROSS-COMPLAINANTS are not aware of any other person(s) or entity(ies) that have any claim to title to the Subject Property.

6. Hereinafter CROSS-DEFENDANTS PG&E and ZOES 1 through 100 will be collectively referred to as CROSS-DEFENDANTS.

7. CROSS-COMPLAINANTS are informed and believe and thereon allege that at all times mentioned herein CROSS-DEFENDANTS and each of them were owners or the agents, servants, or employees of the owners of some right, title, or interest in or to the Subject Property.

8. CROSS-COMPLAINANTS are informed and believe and thereon allege that at all times mentioned herein each of the CROSS-DEFENDANTS was the agent and employee of each other of the remaining CROSS-DEFENDANTS, and in doing the things herein alleged, was acting in the course and scope of such agency and employment and with the permission and consent of each other of the other remaining CROSS-DEFENDANTS.

**FIRST CAUSE OF ACTION**

**(Quite Title – Implied Easement by Existing Use Against PG&E and ZOES 1 through 50)**

9. CROSS-COMPLAINANTS refer to and incorporate herein by reference each and every preceding paragraph as through fully set forth at this point.

10. CROSS-COMPLAINANTS are informed and believe, and thereon allege, that the CROSS-COMPLAINANTS' Properties and the Subject Property had, at one point in time, the same, concurrent owner.

11. CROSS-COMPLAINANTS are informed and believe, and thereon allege, that while the CROSS-COMPLAINANTS' Properties and the Subject Property had the same,

-3-

1  concurrent owner, that this owner came to have five steel I-beams permanently affixed to a brick
2  wall on what is now the Subject Property on the boarder between what is now the Subject Property
3  and the CROSS-COMPLAINANTS' Properties.

4      12.     CROSS-COMPLAINANTS are informed and believe, and thereon allege, that these
5  five steel I-beams were installed for the benefit of what is now the CROSS-COMPLAINANTS'
6  Properties as these five steel I-beams were used to support the roof of a structure on what is now
7  the CROSS-COMPLAINANTS' Properties.

8      13.     CROSS-COMPLAINANTS are informed and believe, and thereon allege, that these
9  five steel I-beams were in place at the time that these properties were subdivided and continue to
10 be in place to the present day.

11     14.     CROSS-COMPLAINANTS are informed and believe, and thereon allege, that
12 continued use of the five steel I-beams permanently affixed to the brick wall of the Subject
13 Property was intended by this original single owner when these parcels were subdivided and sold
14 to the predecessors in interest of the Subject Property and the CROSS-COMPLAINANTS'
15 Properties.

16     15.     CROSS-COMPLAINANTS are informed and believe, and thereon allege, that
17 based on the above, an implied easement by prior existing use exists as a burden to the Subject
18 Property for the benefit of the CROSS-COMPLAINTS' Properties related to the alleged
19 encroachments onto the Subject Property from the five steel I-beams permanently affixed to the
20 brick wall on the border between the Subject Property and the CROSS-COMPLAINANTS'
21 Properties  and thus bring this action to Quite Title thereto.

22                          **SECOND CAUSE OF ACTION**

23         **(Quite Title – Prescriptive Easement Against PG&E and ZOES 1 through 50)**

24     16.     CROSS-COMPLAINANTS refer to and incorporate herein by reference each and
25 every preceding paragraph as through fully set forth at this point.

26

27

28                                    -4-

1    17.    The five steel I-beams that are physically bolted to the wall separating the CROSS-
2 COMPLAINANTS' Properties and the Subject Property have been in place since their
3 predecessors in interest (their parents) first purchased the property in or about 1960.

4    18.    CROSS-COMPLAINANTS are informed and believe, and thereon allege, that the
5 presence of these five steel I-beams constituted actual, open, hostile, and continuous use of these
6 alleged encroachments by their predecessors in interest.

7    19.    CROSS-COMPLAINANTS are informed and believe, and thereon allege, that as a
8 result of this actual, open, hostile, and continuous use, that a prescriptive easement burdening the
9 Subject Property for the benefit to the CROSS-COMPLAINANTS' Property relating to the five
10 steel I-beams permanently affixed to the brick wall on the border between the Subject Property and
11 the CROSS-COMPLAINANTS' Properties existed by December 31, 1967 at the latest and thus
12 bring this action to Quite Title thereto based on that date.

13                    **THIRD CAUSE OF ACTION**

14       **(Quite Title – Easement by Necessity Against PG&E and ZOES 1 through 50)**

15    20.    CROSS-COMPLAINANTS refer to and incorporate herein by reference each and
16 every preceding paragraph as through fully set forth at this point.

17    21.    CROSS-COMPLAINANTS are informed and believe, and thereon allege, that, as
18 an alternative to the above, an easement by necessity must exist for the benefit of the CROSS-
19 COMPLAINANTS' Properties as any finding otherwise would result in CROSS-
20 COMPLAINANTS' Properties being deprived of an absolute necessity for the use and enjoyment
21 of the CROSS-COMPLAINANTS' Properties: physical support for the roof of a structure on those
22 properties.

23    22.    CROSS-COMPLAINANTS are informed and believe, and thereon allege, that there
24 therefore must exist such an easement by necessity burdening the Subject Property for the benefit
25 of the CROSS-COMPLAINTS' Properties with respect to these five steel I-beams and thus bring
26 this action to Quite Title thereto.

27

28                                              -5-

## FOURTH CAUSE OF ACTION

### (Breach of Contract against PG&E and ZOES 1 through 100)

23.     CROSS-COMPLAINANTS refer to and incorporate herein by reference each and every preceding paragraph as though fully set forth at this point.

24.     On or about November 22, 2017, PG&E and CROSS-COMPLAINANTS agreed that CROSS-DEFENDANTS would convey title to a four-foot by fifty-foot (4' x 50') strip of real property along their common border that includes the brick wall in question and that this agreement was reduced to a writing which was signed by the parties, which is attached hereto as Exhibit A.

25.     CROSS-COMPLAINANTS agreed to this contract as they did not previously have an ownership right to this real property, and this agreement would result in full title of this wall and several feet of additional land underpinning this wall, which was a greater property interested than previously possessed.

26.     CROSS-DEFENDANTS breached this contract by failing to convey the 4' x 50' strip of real property to them per the terms of the agreement.

27.     CROSS-COMPLAINANTS are informed and believe, and thereon allege, that at all times mentioned herein CROSS-COMPLAINANTS either fully performed their obligations under this contract, were excused from performing them, or were prevented by CROSS-DEFENDANTS from performing them.  CROSS-COMPLAINANTS are informed and believe, and thereon allege, that this included fulfilling any and all required condition precedents to this contract.

28.     CROSS-COMPLAINANTS are informed and believe, and thereon allege, that as a result, they are entitled to specific performance of the contract attached hereto as Exhibit A transferring the 4' x 50' strip of real property pursuant to its terms, provisions, covenants and conditions, and upon such other conditions as the Court deems equitable, including but not limited to an award of consequential and incidental damages.

-6-

1   29.   CROSS-COMPLAINANTS are informed and believe, and thereon allege, that as a
2   direct and proximate result of the aforementioned breaches, CROSS-COMPLAINANTS have
3   alternatively been damaged in an amount according to proof at trial. Such damages include not
4   only general damages but also special damages including loss of use of portions of the CROSS-
5   COMPLAINANTS Properties.

6                                  **FIFTH CAUSE OF ACTION**

7   **(Breach of Covenant of Good Faith and Fair Dealing Against PG&E and ZOES 1 through**
8                                          **100)**

9   30.   CROSS-COMPLAINANTS refer to and incorporate herein by reference each and
10  every preceding paragraph as through fully set forth at this point.

11  31.   California law implies a covenant of good faith and fair dealing in all contracts
12  between parties entered into in the State of California.

13  32.   CROSS-COMPLAINANTS are informed and believe, and thereon allege, that
14  CROSS-DEFENDANTS breached the covenant of good faith and fair dealing found in the written
15  contract attached hereto as Exhibit A by failing to make a good faith effort to uphold their end of
16  the bargain thereby frustrating CROSS-COMPLAINANTS rights to receive the benefits of the
17  contract attached hereto as Exhibit A.

18  33.   As a direct and proximate result of the breaches of the covenant of good faith and
19  fair dealing by CROSS-DEFENDANTS described above, CROSS-COMPLAINANTS have been
20  damaged in an amount according to proof at trial.

21                                  **SIXTH CAUSE OF ACTION**

22                     **(Negligence Against PG&E and ZOES 1 through 100)**

23  34.   CROSS-COMPLAINANTS refer to and incorporate herein by reference each and
24  every preceding paragraph as through fully set forth at this point.

25  35.   CROSS-DEFENDANTS owed CROSS-COMPLAINANTS a duty of care
26  regarding the development, inspection, and planning for the conveyance of the 4' x 50' strip of real
27
28                                          -7-

1 property that is the subject of the written contract attached hereto as Exhibit A by virtue of that
2 agreement.

3     36.    CROSS-DEFENDANTS negligently, careless, and wrongfully failed to use
4 reasonable care in the development, inspection, and planning of the work they agreed to perform
5 per the written contract attached hereto as Exhibit A.

6     37.    CROSS-COMPLAINANTS are informed and believe, and thereon allege, that
7 CROSS-DEFENDANTS negligently and carelessly failed to exercise reasonable care and
8 diligence to avoid loss and to minimize and mitigate damages that could have been prevented by
9 reasonable efforts or by expenditures that should have been made in the exercise of due care.

10     38.    As a direct and proximate result of the negligence of CROSS-DEFENDANTS that
11 CROSS-COMPLAINANTS have incurred and will continue to incur costs and expenses, including
12 but not limited to, litigation costs, loss of use of CROSS-COMPLAINTS' Properties, attorneys'
13 fees, consultant fees, and other expenses relating to the damages caused by CROSS-
14 DEFENDANTS negligence in an amount according to proof at trial.

15 **SEVENTH CAUSE OF ACTION**

16 **(Declaratory Relief Against PG&E and ZOES 1 through 100)**

17     39.    CROSS-COMPLAINANTS refer to and incorporate herein by reference each and
18 every preceding paragraph as through fully set forth at this point.

19     40.    CROSS-COMPLAINANTS herein assert multiple claims for relief against CROSS-
20 DEFENDANTS, and each of them, based on various legal and equitable theories.

21     41.    CROSS-COMPLAINANTS are informed and believe, and thereon allege, that they
22 have suffered damages as a result of actions and/or inactions on the part of CROSS-
23 DEFENDANTS and/or as the result of their failure to comply with he legal, contractual, and/or
24 equitable obligations to CROSS-COMPLAINANTS.

25     42.    CROSS-COMPLAINANTS are informed and believe, and thereon allege, that
26 disputes have arisen and an actual controversy now exists between CROSS-COMPLAINANTS
27 and CROSS-DEFENDANTS in that CROSS-COMPLAINANTS content that they are entitled to

28

-8-

1 certain forms of relief from CROSS-DEFENDANTS, which CROSS-COMPLAINANTS are
2 informed and believes is disputed by CROSS-DEFENDANTS. Such controversies include, but are
3 not limited to, a determination by the Court and/or the jury that an equitable easement exists in
4 favor of the CROSS-COMPLAINANTS or that an implied easement exists under California Civil
5 Code section 801(12) since this is a common party wall. CROSS-COMPLAINANTS therefore
6 seek a declaration by the Court as to the respective rights and duties of CROSS-DEFENDANTS,
7 and each of them, as to CROSS-COMPLAINANTS.

8 **PRAYER FOR RELIEF**

9 WHEREFORE CROSS-COMPLAINANTS pray for Judgement against CROSS-
10 DEFENDANTS, including ZOES 1 through 100, and each of them, as follows:

11 1. For judgement that an easement exists burdening the Subject Property for the
12 benefit of the CROSS-DEFENDANTS' Properties as described in the First Cause of Action,
13 Second Cause of Action, and/or Third Cause of Action.

14 2. For quite title of the Subject Property and the CROSS-COMPLAINANTS'
15 Properties, as necessary, as to the easement(s) described in the First Cause of Action, Second
16 Cause of Action, and Third Cause of Action as of December 31, 1967 or earlier.

17 3. A permanent injunction barring CROSS-DEFENDANTS from removing the brick
18 wall between the Subject Property and the CROSS-COMPLAINANTS' Properties.

19 4. For specific performance of the written contract attached hereto as Exhibit A.

20 5. For money damages in an amount to be proven at trial as to the Fourth Cause of
21 Action, Fifth Cause of Action, and Sixth Cause of Action.

22 6. For a declaration of rights, duties, and responsibilities of the parties, including but
23 not limited to a finding of equitable easement in favor of CROSS-COMPLAINANTS and/or an
24 implied easement under California Civil Code section 801(12) herein related to the Subject
25 Property and the CROSS-COMPLAINANTS' Properties.

26
27
28

-9-

1    7.    For attorney's fees and costs of suit incurred herein by contract or available at law.

2    8.    For such further and other relief as the Court deems just and proper.

3    DATED:                                    STONE & ASSOCIATES

4                                              By _____
                                                  RONALD F. BERESTKA JR
5                                                 Attorneys for Defendants/Cross-Complainants
                                                  GEORGE M. VLAZAKIS; MARIA A. BARBIS;
6                                                 JOHN A. BARBIS; and ATHANASIA V.
7                                                 VLAZAKIS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              -10-

1    I, George M. Vlazakis, declare as follows:

2    I am a Defendant/Cross-Complainant in the above-entitled matter. I have read the

3    foregoing **VERIFIED CROSS-COMPLAINT OF GEORGE M. VLAZAKIS, MARIA**

4    **BARBIS, JOHN BARBIS, AND ATHANASIA V. VLAZAKIS** and know the contents thereof.

5    The same is true of my own knowledge, except as to those matters which are therein stated on

6    information and belief, and, as to those matters, I believe them to be true.

7    I declare under penalty of perjury under the laws of the State of California that the

8    foregoing is true and correct. Executed on December ___, 2019, at _____,

9    California.

10

                                                    _____
11
                                                    GEORGE M. VLAZAKIS
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              -11-

**VERIFIED CROSS-COMPLAINT OF GEORGE M. VLAZAKIS, MARIA BARBIS, JOHN BARBIS, AND ATHANASIA V. VLAZAKIS**

# EXHIBIT 7

```
                    SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

                        HAYWARD HALL OF JUSTICE, DEPARTMENT 507

                      24405 AMADOR STREET, HAYWARD, CALIFORNIA

                      BEFORE THE HONORABLE JENNA M. WHITMAN, JUDGE


PACIFIC GAS AND ELECTRIC      )
COMPANY,                      )
              Plaintiff,      )
                              )
         vs.                  )  No. RG19021463
                              )
ATHANASIA V. VLAZAKIS,        )
GEORGE M. VLAZAKIS, JOHN      )
A. BARBIS, MARIA A.           )
BARBIS, and DOES 1 to xx,     )
                              )
              Defendants.     )


              REPORTER'S TRANSCRIPT OF MOTION FOR ORDER

            TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

                      Tuesday, August 13, 2019




MARIA CALDER                              JOHN MORRIS
Clerk of Court                      Courtroom Attendant


         Reported By CHARLOTTE C. ROCHE, RDR, CRR
       Certified Shorthand Reporter License No. 4486
              BAY AREA COURT REPORTERS
            22320 Foothill Boulevard, Suite 210
                 Hayward, California  94541
                      510-889-9400



         BAY AREA COURT REPORTERS 510-889-9400
```

1 TUESDAY, AUGUST 13, 2019 - LAW AND MOTION DEPARTMENT 507

2          2:44 P.M.

3          P R O C E E D I N G S

4          THE COURT: Okay, on the Motion Calendar,

5 calling "Pacific Gas & Electric Company versus Vlazakis

6 et al.," RG19021463.

7          MS. LEE: Good afternoon, Your Honor,

8 Monika Lee for P.G.&E.

9          MR. VLAZAKIS: George Vlazakis for myself.

10          MS. STONE: Good morning, Your Honor,

11 Colette Stone for the defendants.

12          I have a formal association pending for

13 Athanasia -- I always pronounce her name wrong --

14 Athanasia Vlazakis; but Mr. Vlazakis is here as her

15 brother, and he's spoken with her, and she's consented

16 to the association -- I'm sorry, to the "substitution"

17 on her behalf.

18          THE COURT: Okay. I have a couple of diclosures

19 to make before we get started this afternoon.

20          One is you should know that at the beginning of

21 my legal career, I did represent P.G.&E. I was outside

22 counsel, one of hundreds possibly, working on the prior

23 bankruptcy that was filed, I believe in 2001 or 2002.

24          And so, I did perform a variety of litigation

25 services on behalf of P.G.&E.

---

1          APPEARANCES OF COUNSEL

2

3 For the Plaintiff PACIFIC GAS AND ELECTRIC COMPANY:

4     MONIKA PLEYER LEE, Attorney at Law
      LEE LAW OFFICES

5     1700 South El Camino Real
      San Mateo, California  94402

6     650-212-3400  monikalee@leelawllp.com

7

8 For the Defendants ATHANASIA V. VLAZAKIS,
  GEORGE M. VLAZAKIS, JOHN A. BARBIS and MARIA A. BARBIS:

9

10    COLETTE F. STONE, Attorney at Law
      STONE & ASSOCIATES

11    2125 Ygnacio Valley Road, Suite 101
      Walnut Creek, California  94598

12    925-938-1555  cstone@stonelawoffice.com

13

14 Co-Counsel For The Defendants ATHANASIA V. VLAZAKIS and
   GEORGE M. VLAZAKIS:

15

16    GEORGE M. VLAZAKIS, Attorney at Law
      Law Offices of GEORGE M. VLAZAKIS

17    225 Brush Street
      Oakland, California  94607

18    Phone & email 510-836-4437

19

20

21          ---oOo---

22

23

24

25

---

1          I don't view it as any issue, and I don't intend

2 to recuse; but I am obligated to disclose that to you.

3          I also did formally also have an association

4 with the City of Oakland. I recognize they're not a

5 party in this case, but they are somewhat involved in the

6 underlying facts.

7          As a private citizen I served on the Public

8 Ethics Commission as a participant of the Planning

9 Department. I did not receive any compensation or

10 provide any legal advice; I worked simply as a volunteer

11 position as a Commissioner, and that was 2010 to 2013.

12          We are here today on Plaintiff's Motion For

13 Preliminary Injunction.

14          Did the parties have an opportunity to review

15 the short, substantive Tentative Ruling that I posted

16 late last night?

17          MS. LEE: I did not, Your Honor. I'm sorry.

18          MS. STONE: No, Your Honor, we weren't aware of

19 it.

20          THE COURT: Okay.

21          MS. STONE: Did you see it, George?

22          MR. VLAZAKIS: No.

23          MS. LEE: We got it.

24          MS. STONE: Your Honor, I think we just saw the

25 Notice to Appear and didn't look again.

Case: 19-30088    Doc# 5417    Filed: 01/20/20    Entered: 01/20/20 17:21:57    Page 58 of 60

1     And it also will require special equipment,
2 extensive work, dangerous work, because some of these
3 steel beams are several tons.
4     Second, Defendants are not raising the defenses
5 of prescriptive easement or adverse possession.
6     Defendants are not claiming any ownership
7 interest in P.G.&E.'s land or common wall. Only an
8 easement right under California Civil Code Section 801,
9 Subparagraph 12.
10     Third, the case is distinguishable that
11 Plaintiffs have cited, "Harrison versus Welch," 2001,
12 116 Cal. App. 4th 1084, because at no time did the
13 defendants Vlazakis exclusively occupy Plaintiff's
14 land or any building.
15     No wood shed was built entirely on Plaintiff's
16 land, as the case cited by Plaintiff.
17     P.G.&E. still had use of its common walls at all
18 times and can show no injuries or loss of use of property
19 based on the steel "I" beams' presence, which are located
20 entirely in the defendant's air space, based on my
21 Declaration, which is uncontroverted based on any
22 evidence submitted by P.G.&E.
23     All of the alleged encroachments are within the
24 air space of the Vlazakises.
25     Plaintiff knew or had reason to know that the

1 "I" beam's presence in the May 18th, 2016 inspection,
2 with its agents also present, when they came to 751 - 3rd
3 Street, when I gave them access.
4     It's an objective standard. P.G.&E. had a duty
5 to investigate once it saw the steel "I" beams attached
6 to the common wall.
7     That's "Jefferson versus Pietroroia,"
8 P-i-e-t-r-o-r-o-i-a, 1936, 5 Cal. 2d 222.
9     The five-year statute of limitations of
10 Sections 318 and 321 in the Code of Civil Procedure
11 don't apply in this case because we're not claiming any
12 entitlement to P.G.&E.'s entire property by adverse
13 possession or prescriptive easement.
14     The three vertical and horizontal beams were
15 clearly visible when P.G.&E. and its bidder did their
16 first walk-through inspection.
17     Mr. Garber was wrong, that inspection was before
18 August of 2016.
19     They filed their lawsuit after three years,
20 which means that under the law and under justice, this
21 case should not go forward in any event, as to all three
22 causes of action.
23     Also, as to Mr. Garber's understanding that the
24 defendants would not agree to its property because of
25 A.D.A., a compliance requirement is not correct; he

1 admits that the City of Oakland approved the second
2 design for shoring up the wall, which he now admits in
3 his Supplemental Declaration, at Page 2, Line 28.
4     This is an admission because once you submit
5 a Permit Application, the City Planners review it
6 thoroughly; they want to see if it meets Code
7 requirements, they want to see if it's feasible,
8 et cetera.
9     That is proof.
10     It contradicts Mr. Brian Garber's assessments
11 that the project was not feasible. He contradicted
12 himself.
13     And also he was The Senior Project Manager.
14 He admits that in his Declaration at Page 2, Line 1. He
15 should have known: Exactly what are the requirements for
16 the design?
17     He should have been aware that there was going
18 to be 10 feet of grout going into their property, and
19 that you would have to have applicable setbacks to be
20 able to design the project.
21     P.G.&E. was negligent and should not be able to
22 recover any alleged delay damages in this case.
23     So, it's my position that the case has no merit,
24 procedurally or on the merits whatsoever, and should be
25 dismissed summarily even without an opportunity to

1 re-set, re-file the case because it's been more than
2 three years.
3     They filed June 4th of 2019.
4     They should have calendared the issue when they
5 first knew or had reason to know of these steel beams in
6 question.
7     Their entire case, Your Honor, should be
8 dismissed in the interests of justice.
9     THE COURT: Miss Stone?
10     MS. STONE: Thank you, Your Honor. Just a few
11 additional points.
12     We may have to file a Dispositive Motion, and we
13 recognize that, so, I want to point that out.
14     But you do have the ability to deny this request
15 by P.G.&E. simply because it is untimely, it is a
16 question of law, and it is an issue that we believe is
17 properly put before you with the opposition.
18     I think one of the more critical points that I
19 would like to focus on is that this was an uncontested,
20 preexisting condition on the property, that was readily
21 observable and acknowledged by P.G.&E.
22     Not only did they know about it, they negotiated
23 a written agreement with the Vlazakis family to address
24 the issue and have not properly or in any way explained
25 why that agreement was breached.

1        Feasibility is not an appropriate standard here,
2  for not honoring the agreement.
3        They had many opportunities, before they began
4  Phases 1 and 2, to consider alternatives or, as
5  Mr. Vlazakis said, create a setback that they needed.
6        So, they chose. This is of their own making.
7        I mean, we are here because of P.G.&E.'s
8  decision when they concede they knew of the conditions
9  between the properties.
10        This was open, it was obvious, there was no
11  secret here, it was discussed, and it was negotiated.
12        I mean, what P.G.&E. is asking for is for
13  forgiveness and an excuse for its own conduct.
14        And we would ask that you deny this with
15  prejudice, the request, and that you consider the legal
16  grounds and the basis of whether there's even an
17  opportunity for P.G.&E. to sustain an action in this
18  case against my clients.
19        MR. VLAZAKIS: Just I would like to add that
20  before the Court currently you have evidence, Exhibit 12
21  to my Declaration. It's an extensive Geotechnical
22  Engineering Report that was commissioned by P.G.&E.
23        And in that report it's stated, if they follow
24  the recommendations of doing the shoring and doing the
25  work on the soils, that they could successfully do the

1  structural upgrade and repairs.
2        That's evidence before the Court.
3        Mr. Garber had two opportunities, a Senior Lead
4  Engineer, and he failed to state any specific factual
5  evidence of unfeasibility.
6        In fact, the opposite is true, that you have the
7  evidence before the Court.
8        And even the agreement that was negotiated was
9  entirely drafted by P.G.&E.'s Legal Department.
10        The Vlazakises cooperated and satisfied each and
11  every one of those conditions.
12        The only remaining condition was to get the
13  C.P.U.C. approval, which it appears that P.G.&E. made no
14  attempt in good faith.
15        And under the Doctrine of Unclean Hands, that
16  can be a complete defense if you can show bad faith on
17  the other side, or if you can show it shocks the
18  conscience to go forward with any relief, or if you can
19  show a question of legal ethics, in this case breaching
20  an agreement that they presented back in November that
21  was signed by the parties in December of 2017 and January
22  of 2018, as with Maria Barbis.
23        This case should not have been brought. It
24  should be dismissed summarily. And the appropriate award
25  of costs be rendered. Because P.G.&E. has shown no good

1  faith towards the Vlazakises in bringing this action.
2        MS. STONE: Your Honor, there's one point I just
3  wanted to add.
4        We're talking about a condition that we also
5  know existed at least as early as the 1960s, if not
6  earlier.
7        So, this is a condition that came with the
8  land when the Port of Oakland acquired it.
9        So, it's not something new, it's not something
10  that was created or came to the property. This was
11  something that's been there between neighbors, without
12  complaint and without problem, until P.G.&E. took its
13  position here.
14        If it's economics, that doesn't warrant the
15  relief they're seeking here.
16        And they haven't articulated that. I think
17  that's reading between the lines, is what we conclude, is
18  that it's too expensive for them, that they don't want to
19  change their position.
20        But none of this was unknown to P.G.&E. And in
21  no way can they state that they can't proceed with this
22  project.
23        And the City was ready to approve it. The last
24  step was within P.G.&E., and they haven't told you that
25  they can't achieve that last step.

1        Thank you for letting me just add that.
2        MS. LEE: And if I can --
3        MR. VLAZAKIS: And just to add, under the
4  Court's equitable powers, you can decree an equitable
5  easement because the Vlazakis family in this case is
6  innocent.
7        There's no proof that the Vlazakises or their
8  deceased parents actually placed the alleged
9  encroachments in question, the horizontal and the
10  vertical "I" beams.
11        And the doctrine of latches applies because it's
12  now very difficult; both of my parents are deceased; you
13  can't go back and try to interview material witnesses as
14  to what was, who placed the "I" beams there in the first
15  place, and what oral agreements may have existed of the
16  prior owners.
17        And you don't even have to have common ownership
18  to have a common party wall.
19        I would just request that the Court carefully
20  look at the opposition that I filed, and my siblings
21  joined in, to show that this case basically really has no
22  merit and should be dismissed in the interests of
23  justice.
24        MS. LEE: If I may, I have something to say.
25  Your Honor, when I responded first to your