Heinz Binder (SBN 87908)
Robert G. Harris (SBN 124678)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com

Attorneys for TURN, the Utility Reform Network

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br>PG&E CORPORATION<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                      Debtors. | Case Nos. 19-30088 DM (Lead Case)<br>              19-30089 DM<br><br>Chapter 11<br>*Jointly Administered* |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>* All papers shall be filed in the Lead Case No. 19-30088 DM. | **OPPOSITION BY TURN TO DEBTORS' AMENDED MOTION FOR ENTRY OF ORDERS (I) APPROVING TERMS OF, AND DEBTORS' ENTRY INTO AND PERFORMANCE UNDER, EXIT FINANCING COMMITMENT LETTERS AND (II) AUTHORIZING INCURRENCE, PAYMENT AND ALLOWANCE OF RELATED FEES AND/OR PREMIUMS, INDEMNITIES, COSTS AND EXPENSES AS ADMINISTRATIVE EXPENSE CLAIMS**<br><br>Date: January 29, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br><br>**OBJECTION DEADLINE: January 22, 2019**<br>**[Re Docket nos. 4446 & 5267]** |

The Debtors seek authority to (1) pay $210 million in cash to the Backstop Debt Commitment Parties without proof that market conditions warrant incurrence of this cost, (2) incur up to an allowed $764 million administrative expense to the Equity Backstop Parties payable in New PG&E Corp. Common Stock only if the Debtors' plan is confirmed but in cash if any other plan is confirmed, and (3) pay additional professional fees and expenses associated with these transactions (capped at $36 million for the Equity Backstop Parties, but without apparent limit otherwise. Should a competing plan of reorganization be confirmed, a real possibility given the position of the Governor that the current plan does not comply with AB 1054, some and perhaps all of these expenses might not benefit the estate. The Utility Reform Network ("TURN") questions whether the Debtors are exercising proper business judgment and opposes the Amended Motion[1] as follows:

**1. The Amended Motion Would Result in Large Costs That Will Not Benefit the Estate If A Plan Other Than the Debtors' Is Confirmed.**

    **a.    Fees and Costs.**

Though the Debtors have provided no firm estimate of the fees and other costs and expenses associated with the "Exit Financing Obligations" that are the subject of the Amended Motion, the total figure is admitted by the Debtors to be upwards of nearly billion dollars. According to the Debtors, the aggregate fees associated with the "Exit Financing Obligations" subset of the financing subject to the Amended Motion could amount to at least $210 million payable in cash to the "Backstop Debt Commitment Parties," and approximately $764 million payable in stock to the "Equity Backstop Parties," plus associated professional fees which, for just the legal and financial advisor fees for the Equity Backstop Parties alone, could total $36 million. (*See* Amended Motion, 7:18-19, 7:25-26). These fees are payable by the estate at a time where a credible, competing, and

---

[1] Debtors' Amended Motion for Entry of Orders (i) Approving Terms of, And Debtors' Entry into And Performance Under, Exit Financing Commitment Letters and (ii) Authorizing Incurrence, Payment and Allowance of Related Fees and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims [Dkt. #5267] (the "Amended").

potentially confirmable plan remains on the table; should the alternative plan be confirmed, the financing that is the subject of the Amended Motion may be never be needed. The fees for this potentially unnecessary financing would be paid primarily to the Debtors' equity holders."[2]  Thus, if granted, the Amended Motion would add as much as $1 billion of allowed administrative expense to the estate, without sufficient demonstration that the underlying financing mitigates a risk warranting such incurrence even if the Debtors' plan is confirmed, and without addressing the prospect that the underlying financing would likely be rendered largely and perhaps entirely unnecessary if a competing plan is confirmed.

### b. Impact on Competing Plans.

The Debtors would have the Court allow the Exit Financing Obligations as an administrative expense "whether or not the Exit Financing Commitments are funded" and none of such amounts are subject to change under "any chapter 11 Plan."  (*See,* Amended Motion, 28:16-18).  One outcome that would appear to trigger these provisions is confirmation of the plan of reorganization sponsored by the Ad Hoc Committee.  And should the Ad Hoc Committee's plan be confirmed instead of the plan sponsored by Debtors, a substantial portion of the costs of these Exit Financing Obligations will be associated with financing that has been rendered irrelevant or unnecessary.

The relief sought in the Amended Motion would unduly advantage the Debtors' plan over the Ad Hoc Committee's plan.  If the Exit Financing Obligations are given administrative expense priority, the Ad Hoc Committee would, if its plan is confirmed, effectively be required to supply funding for not only the financing instruments associated with its own plan, but also the Exit Financing Obligations costs.  If the roles were reversed and the Debtors' plan were confirmed rather than the Ad Hoc Committee's plan, there would be no corresponding opportunity for the Ad Hoc

---

[2] Letter to the Court dated November 4, 2019 by Attorney David J. Richardson [Dkt. #4575].

Committee to recover any portion of the costs of obtaining their unconfirmed plan's financing. This Court should consider how the massive costs of the Amended Motion might serve to block or hinder confirmation of any other plan since they must be paid in cash (not stock as the Debtors' plan permits) if another plan is confirmed.[3]

> **2. The Debtors' Should Not Receive Bankruptcy Court Authority to Bind Themselves to Exit Financing Until Both Plan Sponsors Have Submitted Supporting Material Necessary for The PUC To Assess Whether Either of The Competing Plans Satisfies the Requirements of AB 1054.**

The California Public Utilities Commission (PUC) has initiated an investigation proceeding to review the two plans of reorganization (the "PG&E Plan" and the plan of the "Ad Hoc Committee," now referred to as the "AHC Plan"). The PUC "will review the Plans for their consistency with state law (particularly Pub. Util. Code section 3292) and related issues," including "financial and operational issues over both the short term and the longer term." *Assigned Commissioner's Scoping Memo and Ruling ("Scoping Memo")* (November 14, 2019), p. 2. Pub. Util. Code section 3292(b) sets forth the conditions that PG&E, as an electrical corporation that is the subject of an insolvency proceeding, must meet in order to take advantage of the Wildfire Fund, and the determinations the PUC must make in its review and approval of the reorganization plan and other documents resolving the insolvency proceeding. *See*, Pub. Util. Code section 3292(b)(1)(A) through (E).

In mid-November, the PUC initially adopted a bifurcated approach to the review, with an earlier review of "non-financial issues," followed by later consideration of "financial issues when there may be greater certainty." *Id.* In late-December, the PUC revised its approach in light of

---

[3] "Additionally, in the event that a plan of reorganization other than the Debtors' Plan is confirmed, the Commitment Premiums shall be paid in cash if elected by the applicable Equity Backstop Party." Motion, 14:12-13.

"subsequent developments," including PG&E's having presented an Amended Plan of Reorganization. There will now be "one phase addressing both financial and non-financial issues" of each of the competing plans. *Administrative Law Judge's Ruling Modifying Schedule* (December 27, 2019), p. 3. Under the most recently-revised schedule, on January 31, 2020, each plan's proponents will serve testimony and other supporting material addressing financial issues as necessary to permit the PUC to determine compliance with AB 1054. *Id.*, p. at 4, *E-Mail Ruling Granting in Part Motion To Modify Schedule of Pacific Gas & Electric Company* (January 16, 2020), and *Scoping Memo*, pp. 6-7. Responding parties will provide their own evidence and testimony two weeks later.

TURN expects that the testimony and other materials provided by the Debtors on January 31 to the PUC can reasonably be expected to supply at last some of the detail and justification that the Amended Motion and its supporting declaration lack. And if the PUC, in conducting the review required under Pub. Util. Code section 3292, were to determine that the Debtors' plan fails to satisfy the statutory conditions, the Bankruptcy Court's forbearance on the Debtors' Exit Financing requests here could serve to avoid adding nearly $1 billion of administrative expense to the estate. TURN respectfully requests that the Court deny the Amended Motion for the reasons set forth above or continue it until after the PUC determines whether the Debtors' plan meets the state law standards, rather than permit the Debtors to obligate the estate to bear up to $1 billion of costs associated with exit financing that may prove unnecessary.

Dated: January 22, 2020            BINDER & MALTER, LLP

By: /s/ *Robert G. Harris*
      Robert G. Harris
Attorneys for TURN, the Utility Reform Network

4