| | |
|---|---|
| **LABATON SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |
| Thomas A. Dubbs | Michael S. Etkin (*pro hac vice*) |
| Carol C. Villegas | Andrew Behlmann (*pro hac vice*) |
| Jeffrey A. Dubbin (SBN 287199) | Scott Cargill |
| Aram Boghosian | Nicole Fulfree |
| 140 Broadway | Colleen Maker |
| New York, New York 10005 | One Lowenstein Drive |
| | Roseland, New Jersey 07068 |
| | |
| *Lead Counsel to Lead Plaintiff and the Class* | *Bankruptcy Counsel to Lead Plaintiff and the Class* |

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

| | |
|---|---|
| *Bankruptcy Counsel to Lead Plaintiff and the Class* | *(additional counsel on Exhibit A)* |

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**SECURITIES LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS PROOF OF CLAIM**<br><br>Date: January 29, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Before: Hon. Dennis Montali<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, California 94102 |

# **<u>TABLE OF CONTENTS</u>**

ADDITIONAL BACKGROUND ......................................................................9

    A.   The Motion..........................................................................9

    B.   The Plan and Disclosure Statement ............................................9

ARGUMENT ....................................................................................10

I.    THE COURT SHOULD EXERCISE ITS BROAD DISCRETION UNDER RULE 9014 TO APPLY BANKRUPTCY RULE 7023 TO THE CLASS CLAIMS.......................10

    A.   The *Musicland* Factors weigh strongly in favor of applying Bankruptcy Rule 7023 to the Class Claims.............................................................11

        1.   The fact that the Class was not yet certified prepetition does not preclude application of Rule 7023 (Musicland Factor No. 1). ...........................11

        2.   Members of the Class did not receive constitutionally mandated actual notice of the Bar Date (Musicland Factor No. 2).................................13

        3.   Certification of the Class will not adversely affect the administration of the Debtors' estates (Musicland Factor No. 3). .................................23

    B.   The Objectors' Remaining Arguments are Meritless. .................................26

        1.   Class members hold direct claims against the Non-Debtor Defendants that are not property of the estate.........................................................26

        2.   The Alonzo Motion is inapposite to the Motion................................29

        3.   Bifurcation of relief under Bankruptcy Rule 7023 and Class certification under Fed. R. Civ. P. 23 is appropriate and in the interest of judicial economy.................................................................................29

CONCLUSION...................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Apparel Shareholder Litig.,* No. CV 10-06352 MMM, 2014 U.S. Dist.
LEXIS 184548 (C.D. Cal. July 28, 2014)..................................................................15

*In re Amdura Corp.*,
170 B.R. 445 (D. Col. 1994)..........................................................................19, 20, 23

*Matter of American Reserve Corp.*,
840 F.2d 487 (7th Cir. 1988) ................................................................................11, 12

*In re ATD Corp.*,
278 B.R. 758 (Bankr. N.D. Ohio 2002) .....................................................................21

*Bailey v. Jamesway Corp. (In re Jamesway Corp.)*,
1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997)..................................................13

*In re Chaparral Energy, Inc.*,
571 B.R. 642 (Bankr. D. Del. 2017) .....................................................................13, 19

*In re Charter Co.*,
876 F.2d 866 (11th Cir. 1989) ..............................................................................26, 27

*In re Chateaugay Corp.*,
104 B.R. 626 (S.D.N.Y. 1989).....................................................................................26

*Chemetron Corp. v. Jones*,
72 F.3d 341 (3d Cir. 1995)......................................................................................14, 15

*In re CommonPoint Mortg. Co.*,
283 B.R. 469 (Bankr. W.D. Mich. 2002)..............................................................13, 26

*In re Craft*,
321 B.R. 189 (Bankr. N.D. Tex. 2005).......................................................................24

*Dependable Ins. Co. v. Horton (In re Horton)*,
149 B.R. 49 (Bankr. S.D.N.Y. 1992)..........................................................................14

*Destefano v. Zynga, Inc.,* No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196
(N.D. Cal. Dec. 11, 2016) ......................................................................................15, 20

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..........................................................................................15, 18, 22

*In re Ephedra Prods. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005)..........................................................................................24

*In re First Alliance Mortg. Co.*,
269 B.R. 428 (C.D. Cal. 2001) ....................................................................................13

*In re First Interregional Equity Corp.*,
227 B.R. 358 (Bankr. D.N.J. 1998) .............................................................................14

*Fogel v. Zell*,
221 F.3d 955 (7th Cir. 2000) ......................................................................................23

*In re GAC Corporation*,
681 F.2d 1295 (11 Cir. 1982) ......................................................................................23

*In re Kaiser Group Int'l, Inc.*,
278 B.R. 58 (Bankr. D. Del. 2002) ..........................................................................12, 13

*In re KLA-Tencor Corp. Securities Litigation*
(N.D. Cal., Aug. 29, 2008), ECF No. 217-1 ................................................................17

*Larson v. AT&T Mobility LLC*,
687 F.3d 109 (3d Cir. 2012)...................................................................................15, 22

*In re Mortg. & Realty Tr.*,
125 B.R. 575 (Bankr. C.D. Cal. 1991)..........................................................................21

*In re Musicland Holding Corp.*,
362 B.R. 644 (Bankr. S.D.N.Y. 2007)................................................................... *passim*

*New York City Employees' Ret. Sys. v. Jobs*,
593 F.3d 1018 (9th Cir. 2010) .....................................................................................29

*Pareto v. F.D.I.C.*,
139 F.3d 696 (9th Cir. 1998) ......................................................................................28

*In re Sacred Heart Hospital of Norristown*,
177 B.R. 16 (Bankr. E.D. Pa. 1995) .........................................................................13,24

*In re Salomon Analyst Litig.*,
373 F.Supp.2d 252 (S.D.N.Y. 2005)............................................................................12

*Sax v. World Wide Press, Inc.*,
809 F.2d 610 ..............................................................................................................28

*Schuster v. Gardner*,
127 Cal.App.4th 305 (2005) .......................................................................................28

*In re Semtech Corp. Sec. Litig.*,
   2008 WL 111333471 (C.D. Cal. Dec. 15, 2008) ..............................................28, 29

*Tulsa Prof'l Collection Serv., Inc. v. Pope*,
   485 U.S. 478 (1988) ...........................................................................................15

*In re Verity Health Sys. of Cal.*,
   2019 Bankr. LEXIS 1818 (Bankr. C.D. Cal. June 11, 2019) ..................................13

*In re Woodward & Lothrop Holdings, Inc.*,
   205 B.R. 365 (Bankr. S.D.N.Y. 1997)....................................................................24

*In re Zenith Labs., Inc.*,
   104 B.R. 659 (D.N.J. 1989) ..................................................................................13

**Statutes**

15 U.S.C. § 78u–4(b)(3)(B) ........................................................................................12

11 U.S.C. § 510(b) ............................................................................................. *passim*

**Other Authorities**

Fed. R. Bankr. P. 7023 ....................................................................................... *passim*

Fed. R. Civ. P. 23 ......................................................................................................30

Fed. R. Bankr. P. 3001(b) ..........................................................................................12

Fed. R. Bankr. P. 9014 ...............................................................................................11

Lead Plaintiff,[1] on behalf of itself and the Class, together with the Securities Act Plaintiffs, hereby submit this reply (the "**Reply**") (i) in further support of their *Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* [ECF No. 5042] (the "**Motion**") and (ii) in response to the objections (the "**Objections**") to the Motion filed by the Debtors (the "**Debtors' Objection**") [ECF No. 5369] and the Official Committee of Tort Claimants (the "**TCC Objection**") [ECF No. 5373] as well as the Declarations submitted therewith.  In further support of the Motion, the Securities Plaintiffs also rely on the *Declaration of Andrew D. Behlmann in Support of Securities Lead Plaintiff's Reply in Further Support of Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* (hereinafter the "**Behlmann Declaration**"), and the *Declaration of Adam D. Walter of A.B. Data, Ltd. Regarding Standard Procedures and Methods Utilized In Securities Class Action Notice Programs* dated January 22, 2020 (hereinafter, the "**Walter Declaration**") submitted herewith and respectfully state as follows:

## PRELIMINARY STATEMENT

At their core, the Motion and the Objections present the Court with a single question:  *Is the class claim mechanism superior to the bankruptcy claims process with respect to the class of defrauded investors under the circumstances of these Chapter 11 Cases?*  As discussed in the Motion and below, the only appropriate answer to that question given the established analytical framework under Bankruptcy Rule 7023, as well as issues of fundamental fairness, is yes.

In their Objections, the Debtors and the Official Committee of Tort Claimants (the "**TCC**" and together with the Debtors, the "**Objectors**") expend significant effort trying to obfuscate the lone determinative issue – whether the Debtors gave members of the Class constitutionally adequate notice of the Bar Date.  The Debtors admit that they took no steps whatsoever to try to identify members of the Class or provide them with actual notice of the Bar Date.  Instead, the Debtors attempt to rely on the conclusory and demonstrably false assertion that holders of their common stock as of the Record Date (July 1, 2019), to whom the Debtors may have provided notice of the Bar Date, probably comprised "most, if not virtually all" of the members of a Class

---

[1]     Capitalized terms used but not defined herein have the meanings given thereto in the Motion.

defined by a Class Period that began four years before, and ended nearly nine months before, the Record Date. That assertion is soundly refuted by the fact that ***2.4 billion shares*** of the Debtors' common stock, or 4.8 times their total public float, changed hands from the end of the Class Period to the Record Date, more than double the entire trading volume of the preceding three years. *See* Behlmann Decl. **Ex. 1.**

The Debtors then claim that their Supplemental Notice Program, which targeted only fire victims, not defrauded investors, provided adequate notice to the Class by publication. In their efforts to convince the Court that their Bar Date notice program (which, upon implementation, completely ignored an entire subset of stakeholders) was nevertheless adequate with respect to the Class, the Debtors even acknowledge the existence of a customary and straightforward protocol used to identify and provide actual notice to classes of securities purchasers in every securities class action case, while claiming that they used effectively the same methodology to provide holders of the Debtors' securities on the Record Date with actual notice. *See* Debtors' Obj. at 5 (detailing outreach to nominees that would forward notices to beneficial holders); s*ee also* Walter Decl., ¶¶ 7-13. That well-settled protocol provided a means for the Debtors to reasonably identify Class members and give them actual notice of the Bar Date – making the Class members the very definition of known creditors. By implementing that protocol through the Bar Date Order, the Debtors could have provided actual notice to most or all of the members of the Class with minimal additional effort. The responsibility to follow that protocol lay squarely with the Debtors, not with the Securities Plaintiffs, and the Debtors' failure to fulfill that constitutional mandate deprived the Class of adequate due process notice of the Bar Date.

While the Objectors would have this Court believe that the Securities Plaintiffs seek to collaterally attack the Bar Date Order, it is the *implementation* of that order, solely as it relates to the Class, that is being called into question. The class claim mechanism, through Bankruptcy Rule 7023 and Rule 23 of the Federal Rules of Civil Procedure ("**FRCP 23**"), provides an effective and efficient remedy for the Debtors' failure to provide the Class with constitutionally adequate, actual notice of the Bar Date. Class treatment of the Class Claims is not only superior to the bankruptcy

claims process under the circumstances, it is the *only* effective means of remedying the Debtors' due process failure and protecting the rights of defrauded investors. Otherwise, securities fraud victims would effectively be disenfranchised despite having valid claims against the Debtors.

The TCC Objection is, at best, perplexing. At the outset, the TCC raises issues entirely unrelated to the Motion, asserting that the claims of the Class against the Non-Debtor Defendants somehow belong to the Debtors' estates. First, that argument has no merit and the issues invented by the TCC are unrelated to the Motion. Any issues pertaining to the Non-Debtor Defendants are not before the Court, which has already ruled that the Securities Plaintiffs can proceed with their litigation against the Non-Debtor Defendants in the District Court. The Motion addresses only the Class Claims, which, by definition, are claims *against the Debtors*. Thus, the Court can and should simply disregard Points II.A, B, and C of the TCC Objection, which relate exclusively to the Securities Plaintiffs' claims against the Non-Debtor Defendants.[2] Putting aside those meritless arguments, which appear to be little more than a shot across the bow in advance of Plan confirmation, the remainder of the TCC Objection should be rejected for the same reasons the Debtors' Objection should be. Even more fundamentally, though, it is entirely unclear why the TCC filed an objection at all. The Securities Plaintiffs have conceded that all of the Class Claims are subordinated to each and every wildfire-related claim of the TCC's constituents pursuant to section 510(b) of the Bankruptcy Code, and thus the relief sought in the Motion has no potential impact whatsoever on distributions to the TCC's constituents.

Application of Bankruptcy Rule 7023 and, following briefing and a hearing, certification of the Class, will protect and preserve the rights and claims of thousands of absent Class members,

---

[2]     The TCC raises additional arguments, not addressed in this Reply, that are neither relevant to the Motion nor properly before the Court in connection with the Motion. *See* TCC Obj. at 2-13. To the extent the Court determines that additional briefing on those issues would be necessary or helpful, the Securities Plaintiffs will brief those issues on the schedule that the Court directs. The Securities Plaintiffs reserve all rights with respect to any future motion or proceeding brought by the TCC or any other party seeking any relief that would impact the Class or the Class Claims in any manner. With respect to the TCC's baseless assertion that the Fire Victim Trust somehow has priority over the independent, direct claims of the Class against the Non-Debtor Defendants with respect to access to D&O insurance proceeds, the Securities Plaintiffs previously briefed that issue at length in their opposition to the Debtors' motion to enjoin the continued prosecution of the Securities Litigation against the Non-Debtor Defendants, a copy of which is annexed to the Behlmann Declaration as **Exhibit 6**.

while saving the estate potentially millions of dollars of noticing costs and sparing the Court and the estate the monumental administrative burden of administering thousands of individual Class members' claims. That is the very reason Bankruptcy Rule 7023 exists.

**ADDITIONAL BACKGROUND**

**A.     The Motion**

The Motion, filed on December 9, 2019, requests that the Court (a) exercise its discretion to apply Bankruptcy Rule 7023 to the Class Claims and (b) establish a briefing and hearing schedule in connection with certification of the Class pursuant to FRCP 23 for all purposes in the Chapter 11 Cases. On December 27, 2019, the Court entered an order [ECF No. 5211] (the "**Scheduling Order**") approving a stipulation pursuant to which the Debtors and the Securities Plaintiffs agreed to a modified briefing schedule on the Motion. The Objectors filed the Objections on January 14, 2020, the objection deadline established by the Scheduling Order.

**B.     The Plan and Disclosure Statement[3]**

On September 9, 2019, the Debtors filed a Chapter 11 Plan of Reorganization [ECF No. 3841]. Since then, the Debtors have filed three amended drafts of the Plan on September 23, November 4, and most recently, on December 12 [ECF No. 5101] (as may be further amended, modified, and/or supplemented, the "**Plan**"). The Plan classifies section 510(b) claims based on debt purchases in Class 8A, and section 510(b) claims based on equity purchases in Class 9A alongside HoldCo common stock, and provides for the subordination of the Class Claims to all general unsecured claims against the Debtors pursuant to section 510(b) of the Bankruptcy Code. Thus, the Plan recognizes the existence of these claims and provides for their treatment.

On January 16, 2020, the Debtors filed a motion requesting that the administrative law judge overseeing the CPUC proceeding with respect to the Plan modify the current Plan approval schedule (the "**Extension Motion**").[4] Significantly, in their Extension Motion, the Debtors note they anticipate their ongoing discussions with both the Ad Hoc Committee of Bondholders (the

---

[3]     Capitalized terms used but not defined in this section have the meanings given thereto in the Plan.
[4]     A copy of the Extension Motion is annexed to the Behlmann Declaration as **Exhibit 2**.

"**AHC**") and representatives of the Governor's Office will lead to amendments to the current Plan. *See* Behlmann Decl. **Ex. 2** at 3 ("the financing of the PG&E Plan likely would materially change if there is a settlement between PG&E and the AHC . . . . [and] ongoing discussions with the Governor's Office will lead to material changes to certain nonfinancial terms of the PG&E Plan, such as governance"). The January 16, 2020 order granting the Extension Motion established a schedule for regulatory approval of the Plan by the CPUC involving testimony and evidentiary hearings through February 28, 2020, and a briefing schedule closing on March 20, 2020.

As the Debtors themselves point out, "there is still much more work to be done that will require additional resources and tremendous effort." They are still "in the process of seeking approval of their backstopped debt and equity commitments, which serve as the foundation for the financing package that will fund the Plan," (Debtors' Obj. at 8), and will soon be starting the process of "drafting, negotiating, and filing all of the other plan transaction documents," (Behlmann Decl. **Ex. 2**), and reviewing "thousands of executory contracts and leases to prepare" their Plan schedules. *Id*.

The Debtors have not filed a disclosure statement or sought approval of solicitation procedures for the Plan, and recently received an extension of the exclusive period in which to solicit acceptances of their Plan to March 20, 2020. *See* ECF No. 5069. A confirmation hearing has not yet been scheduled.

## **ARGUMENT**

### I.     THE COURT SHOULD EXERCISE ITS BROAD DISCRETION UNDER RULE 9014 TO APPLY BANKRUPTCY RULE 7023 TO THE CLASS CLAIMS.

The Objectors would have the Court believe that the establishment of the Bar Date and the accompanying notice procedures automatically ends the Bankruptcy Rule 7023 inquiry. *See, e.g.*, Debtors' Obj. at 14. That proposition is incorrect. The notion that the establishment of a claims bar date and notice procedures automatically precludes the application of Bankruptcy Rule 7023 to permit class proofs of claim flies directly in the face of the substantial body of case law that has emerged in the thirty years since the Seventh Circuit's decision in *Matter of American Reserve Corporation,* 840 F.2d 487, 489 (7th Cir. 1988), established the now-majority rule that class proofs

of claim are permissible (subject, of course, to a timely motion to apply Bankruptcy Rule 7023, such as the Motion). The case law that has developed since *American Reserve* requires a two-step process for seeking class treatment of a proof of claim: file a motion seeking application of Bankruptcy Rule 7023 to a timely filed class proof of claim and, if that relief is granted, seek certification of a class for purposes of that proof of claim. The Securities Plaintiffs have followed that protocol to the letter, and all of the relevant facts and circumstances of these Chapter 11 Cases necessitate the relief requested in the Motion. Even the Debtors' Objection acknowledges that process, (Debtors' Obj. at 10), yet simultaneously criticizes the Securities Plaintiffs for not briefing the general FRCP 23 standards before the Court has made the threshold determination that would make those standards relevant.

### A. The *Musicland* Factors weigh strongly in favor of applying Bankruptcy Rule 7023 to the Class Claims.

#### 1. The fact that the Class was not yet certified prepetition does not preclude application of Rule 7023 (*Musicland* Factor No. 1).

The Objectors take the position that the mere fact that the Class was not certified prepetition is fatal to the Motion. (Debtors' Obj. at 11-12; TCC Obj. at 16). Their assertion mischaracterizes the law. Although prepetition certification of a class can be persuasive with respect to the application of Bankruptcy Rule 7023, the absence thereof is not dispositive, especially where prepetition class certification was not possible due to the procedural posture of the litigation. *See In re Kaiser Group Int'l, Inc.,* 278 B.R. 58, 62-63 (Bankr. D. Del. 2002).[5]

As discussed in the Motion, the Debtors commenced these Chapter 11 Cases less than five months after the initial consolidation of the Securities Litigation, less than three months after the end of the class period, and before the ultimate consolidation with the Securities Act Plaintiffs was approved by the District Court. Therefore, prepetition class certification was essentially impossible. The *Kaiser* court rejected the notion that filing a class claim on behalf of an uncertified

---

[5] Early class certification was not feasible in the Securities Litigation because the PSLRA stays all discovery and other proceedings in the Securities Litigation until the District Court has denied, at least in part, motions to dismiss (which are pending). 15 U.S.C. § 78u–4(b)(3)(B); *In re Salomon Analyst Litig.,* 373 F.Supp.2d 252, 256 (S.D.N.Y. 2005) (noting that the PSLRA stay applies broadly "until a complaint has been authoritatively sustained by the court.").

class is categorically impermissible, holding that "[Bankruptcy] Rule 3001(b) does not prohibit the filing of class claims by a putative class representative. 278 B.R. at 63. To hold otherwise 'would effectively prohibit the use of class actions in bankruptcy altogether' unless the class action had proceeded to a stage where a class representative had been appointed pre-petition." *Id.* at 62-63 (citing *In re Zenith Labs., Inc.,* 104 B.R. 659, 663 (D.N.J. 1989)). Put differently, the entire body of Rule 7023 jurisprudence would not exist at all if the Objectors' argument had merit.

Relying on *Bailey v. Jamesway Corp. (In re Jamesway Corp.),* 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997), the Debtors assert that "where no prepetition class has been certified, as here, putative class members cannot reasonably assert that they were relieved of their obligation to file an individual proof of claim." Debtors' Obj. at 11; *see also* TCC Obj. at 15. What this faulty logic ignores is that, as discussed below, regardless of whether Class members were somehow aware that they had claims (a dubious proposition at best), the Debtors failed to give them actual notice of the Bar Date. By contrast, in *Jamesway* and similar cases cited by the Objectors with respect to prepetition certification which did not involve violations of the federal securities laws, all or a substantial portion of the absent class members ***received actual notice*** of the bar date. *See Jamesway*, 1997 WL 327105, at *8 (actual notice provided to 11,700 employees); *In re Sacred Heart Hospital of Norristown*, 177 B.R. 16, 24 (Bankr. E.D. Pa. 1995) (debtor provided individual notice to all known employee class members).

The Objectors conveniently ignore the fact that courts routinely apply Bankruptcy Rule 7023 where no class was certified prepetition. *See, e.g.*, *In re Verity Health Sys. of Cal.*, 2019 Bankr. LEXIS 1818 at *23 (Bankr. C.D. Cal. June 11, 2019) (applying Rule 7023 to class claim even when class was not certified prepetition, noting that courts have exercised their discretion to do the same); *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017) (same); *In re Kaiser Group Int'l*, 278 B.R. at 63 (applying Rule 7023 to class claim although securities class was not certified prepetition); *In re CommonPoint Mortg. Co.*, 283 B.R. 469, 482 (Bankr. W.D. Mich. 2002) (certifying a class where class action had never been certified by a federal court under Rule 23, class representative timely filed proofs of claim and nine months later filed for class

treatment); *In re First Alliance Mortg. Co.,* 269 B.R. 428, 442-43, 447-48 (C.D. Cal. 2001) (bankruptcy court erred in denying application of Rule 7023 although class was not previously certified and Rule 7023 motion was filed after objection); *In re First Interregional Equity Corp.,* 227 B.R. 358, 371 (Bankr. D.N.J. 1998) (class treatment appropriate though securities class was not certified prepetition). For these reasons, the fact that the Class was not certified in the Securities Litigation before the Petition Date is under no circumstances controlling with respect to the Rule 7023 analysis. Indeed, under the circumstances here, it is not relevant.

### 2. Members of the Class did not receive constitutionally mandated actual notice of the Bar Date (*Musicland* Factor No. 2).

#### (a) The Motion is not a collateral attack on the Bar Date Order.

Contrary to the Debtors' erroneous assertion that the Motion is a collateral attack on the Bar Date Order, *see* Debtors' Obj. at 14, the Securities Plaintiffs seek no relief whatsoever with respect to the Bar Date or the Bar Date Order. The only link between the Motion and the Bar Date Order is the fact that the Debtors' implementation of the Bar Date notice program did not include a mechanism for providing actual notice of the Bar Date to an entire class of known creditors. It is entirely possible for the Debtors to have complied fully with the Bar Date Order while simultaneously failing to provide adequate notice to certain creditors. *See, e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 345-46 (3d Cir. 1995) (holding that a debtor complied with a bar date order, then analyzing separately whether the bar date notice, as implemented, comported with due process). This is an issue of due process, nothing more and certainly nothing less.

The burden rested with the Debtors to implement a Bar Date notice program that provided appropriate notice to creditors, and the burden now rests with the Debtors to show that they did so. *See Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 57 (Bankr. S.D.N.Y. 1992). The fact that the Securities Plaintiffs did not object to the Debtors' motion to establish the Bar Date does not fix the due process problem that the Debtors themselves created by failing to provide the Class constitutionally mandated actual notice of the Bar Date. The Motion seeks an efficient and effective mechanism specifically authorized by the Bankruptcy Code to remedy the failure of the Debtors' Bar Date notice program to provide adequate due process notice to the Class: class

treatment of the Class Claim. To do otherwise would effectively disenfranchise the Debtors' defrauded investors.

### (b) Members of the Class did not receive adequate notice of the Bar Date.

Scrambling to find a means of kicking absent Class members to the curb, the Debtors argue simultaneously that Class members are unknown creditors, and thus giving them actual notice of the Bar Date was not necessary, but that the Debtors nevertheless – and essentially by accident – provided "most, if not virtually all" Class members with actual notice of the Bar Date. *See* Debtors' Obj. at 6-7. Each of these arguments is utterly meritless.

#### (i) Members of the Class are known creditors and were entitled to (but did not receive) actual notice of the Bar Date.

As discussed in the Motion, members of the Class are known creditors and were entitled to actual notice of the Bar Date. *See* Motion at 20. There is a well-settled, straightforward process employed in securities class actions to identify and provide actual notice to absent class members. *See* Walter Decl., ¶¶ 7-20. The existence of that process, and the relative ease with which the Debtors could have identified Class members and provided them with the constitutionally mandated actual notice of the Bar Date, make clear that Class members are known creditors.

The Debtors do not, as they cannot, dispute that ***actual*** notice of the Bar Date is mandatory for all known creditors. *See* Debtors' Obj. at 14; *see also Chemetron*, 72 F.3d 341, 346 (a known creditor is "one whose identity is either known or reasonably ascertainable by the debtor") (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)); *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 124 (3d Cir. 2012) ("[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case.") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

Courts routinely hold that a class of purchasers of securities during a certain time period is reasonably ascertainable and that methods for providing them with actual notice are reasonably available. *See, e.g.*, *Eisen, 417 U.S. 156*; *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *19-*20 (N.D. Cal. Dec. 11, 2016); *In re Am. Apparel Shareholder*

*Litig.*, No. CV 10-06352 MMM, 2014 U.S. Dist. LEXIS 184548, *19-*20 (C.D. Cal. July 28, 2014).

The Debtors argue that they could not identify all members of the Class. *See* Debtors' Obj. at 15. However, their supporting declarations reveal that no attempts were made to identify the Class members. *See* Pullo Decl. ¶¶ 18-20. Instead, the Debtors assert in conclusory fashion that they would not be able to obtain such information by requesting it from the nominees, *see id.* ¶¶ 18-19, despite case law demonstrating the possibility of voluntary compliance by the nominees, and the ability for the Court to direct nominees and others to comply.

Tellingly, the Debtors' noticing consultant, Heffler Claims Group[6] ("**Heffler**"), admits on its marketing website that it has the ability to "reach securities shareholders in a timely and efficient manner" in securities class action cases such as the Securities Litigation:

**Advanced Notice Practices for Securities Class Action Administration**

Layers of confidentiality make reaching class members in securities class actions challenging. Heffler Claims Group maintains a proprietary database of brokers, financial institutions, transfer agents, and other professional entities **to reach securities shareholders in a timely and efficient manner**. Further, HF Media, our in-house media company and the most experienced legal notice team in the class action industry, is able to develop customized notice programs for each securities class action settlement. Additionally, our team is uniquely skilled at communicating with various compliance departments to ensure compliance with all parties involved.

**Proprietary Technology Enhances Administration and Distribution**

Securities class action cases often present many obstacles when it comes to administering notices and contacting prospective class members. **Our industry knowledge and state-of-the-art technology enable communication with shareholders** while ensuring full compliance with all aspects of the case.

*See* Heffler Claims Group, *Securities Class Action Claims Administration*, *available at* https://www.hefflerclaims.com/securities-settlement-administration/(emphasis added).[7] In its illustrative case studies, Heffler boasts of having "arranged to have over 381,000 Notices mailed

---

[6] *See* Finegan Decl. ¶ 1 (noting Finegan's positions as Vice President of Notice Media Solutions at Prime Clerk LLC and Chief Media Officer of HF Media LLC, an affiliate of Prime Clerk, and explaining that "[i]n July 2019, Heffler Claims Group, including its media division HF Media LLC, was acquired by Prime Clerk's parent company.")

[7] Copies of the relevant pages of Heffler's website are annexed to the Behlmann Declaration as **Exhibit 3**.

to potential class members" in one securities litigation that "Notice and Claim Forms were mailed to over 29,000 potential class members" in another. *See* Behlmann Decl., **Ex. 3.** Heffler also touts the class member response rates in such cases, noting that it received "over 14,500 claims" in a case where it mailed over 29,000 notices – a response rate of approximately 50% - and received over 60,000 proofs of claim in a case where it mailed 381,000 notices. *Id.* Clearly, Heffler is familiar with the industry-standard process for providing actual notice to classes of securities purchasers.

In one of the securities class action cases mentioned on its website, the *KLA-Tencor Securities Litigation*, a Heffler employee submitted a declaration with respect to a notice program that followed the customary process for providing actual notice to a class of securities purchasers. *See* Decl. of Michael T. Bancroft, CPA Regarding Dissemination of Notice to the Class, *In re KLA-Tencor Corp. Securities Litigation*, (N.D. Cal., Aug. 29, 2008), ECF No. 217-1 (hereinafter, the "**Bancroft Declaration**").[8] According to the Bancroft Declaration, in *KLA-Tencor*, Heffler obtained an excel file from the defendants with names and addresses of shareholders that were issued shares during two relevant class periods, forwarded that information to a licensee of the United States Postal Service to request updated mailing addresses, and cross-checked that updated shareholder information with a listing of institutional shareholders of KLA Tencor from Vickers Stock Research Corp. *See* Behlmann Decl., **Ex. 4 ¶¶** 3-5. Heffler then sent a notice via postage prepaid, first class mail to the 265 brokerage firms and other nominees in its contact file, requesting that each nominee research their files for the applicable class members and provide Heffler with the names and addresses of potential class members. *See* Behlmann Decl., **Ex. 4 ¶** 7 (noting Heffler's nominee file is a compilation of brokerage firms and banks "from which [Heffler] expects a response"). In short, the Debtors and their consultants ***indisputably*** knew how to reach members of the Class. They simply failed to do so. Irrespective of the reasons for that failure, the end result is that Class members were deprived of due process and constitutionally required actual notice of the Bar Date.

---

[8] A copy of the Bancroft Declaration is annexed to the Behlmann Declaration as **Exhibit 4**.

The Debtors complain that an inquiry into the identity of the Class members would be time-consuming, likely taking months, and would be extremely burdensome and costly. *See* Debtors' Obj. at 17; Pullo Decl. ¶ 19. Those are conclusions, not proof. Moreover, the Heffler website, the Bancroft Declaration, and the Walter Declaration demonstrate otherwise. In any event, the length of time required to identify creditors is no excuse for ignoring an entire class of claims, particularly since the Debtors have been aware of the existence of the Class since before the Petition Date and filed their Bar Date motion nearly nine months ago.

Similarly, the mere fact that providing actual notice would have created additional cost does not turn the Class into unknown creditors or entitle the Debtors to avoid providing the Class actual notice of the Bar Date – particularly given what the Debtors claim to have spent on their Bar Date notice program overall. *See Eisen*, 417 U.S. at 176.

### (ii) *Notice to Record Date holders of the Debtors' common stock was not adequate notice with respect to the Class.*

The Debtors claim that providing actual notice of the Bar Date to the holders of the Debtors' securities as of July 1, 2019 (the "**Record Date**") was sufficient notice to the Class because the security holders on the Record Date "likely included most, if not virtually all, of the record holders of securities Movant purports to represent." *See* Debtors' Obj. at 6-7; *see also* Pullo Decl. ¶ 21 ("It is therefore likely that the Nominees holding securities during the proposed class period received the Standard Bar Date Notice by continuing to hold such securities on the Record Date."). That conclusory argument is not only devoid of factual support, but is based on the false premise that Record Date security holders received actual notice. *See* Bar Date Order ¶ 8(b) (the Bar Date Order expressly excluded "any person or entity that holds an equity security interest in the Debtors" from the categories of individuals and entities to whom the Debtors were required to mail the Standard Bar Date Notice).

The Class, as currently proposed, is comprised of investors who acquired the Debtors' securities between April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**").[9]

---

[9] The Securities Plaintiffs, for themselves and the Class and its members, reserve the right to amend, supplement, and or modify from time to time, the definition of the Class and/or the

The Class Period ended nearly nine months before the Record Date. During that nine-month period, trading volume in the Debtors' stock totaled *2.4 billion shares*, the equivalent of the Debtors' entire public float of 550.55 million shares changing hands 4.8 times. *See* Behlmann Decl., **Ex. 1.** Thus, the notion that any – much less "virtually all" – members of the Class still held the Debtors' common stock as of the Record Date is utterly unfounded. Even if the Debtors had provided actual notice to current holders of the Debtors' common stock (which the Bar Date Order suggests they did not), that notice would have done absolutely nothing to provide notice to former purchasers who had already sold their shares (i.e., most, if not all, Class members). *Cf. Chaparral Energy*, 2017 WL 2292765, at *4 (rejecting an argument that providing notice only to then-current owners of royalty interests was sufficient notice to former owners).

The Pullo Declaration asserts that "[t]here would be no reliable way to verify whether such notice had been completed accurately and thoroughly by each Nominee, who often do not respond to such requests." This assertion lacks credibility, however, when viewed alongside (i) Heffler's marketing materials, which highlight various illustrative case studies in securities class action cases to advertise its communication with shareholders utilizing its "industry knowledge and state-of-the-art technology" and the substantial response rates of such notice programs, and (ii) the Bancroft Declaration, which demonstrates that Heffler utilizes the exact methodology decried in the Pullo Declaration and detailed in the Walter Declaration. *See* Behlmann Decl. **Exs. 3** and **4**. It is unclear why Heffler's "industry knowledge and state-of-the-art technology" could not be applied to identify and provide actual notice of the Bar Date to members of the Class in this case. *See also*, Walter Decl. ¶ 18.

The Pullo Declaration also asserts "providing notice to former securities holders would be time intensive and impossible to complete on an accurate and thorough basis" Pullo Decl. ¶19. Under similar circumstances, the court in *In re Amdura Corp.,* 170 B.R. 445, 450-452 (D. Col. 1994), rejected an argument that actual notice did not need to be provided to the members of the class in a securities fraud litigation who were no longer record owners because such service "would

---

Class Period to identify additional members of the Class, to reflect any updated definition of the Class or the Class Period, and/or for any other appropriate purpose.

have been impracticable and expensive and they received notice by publication in the Wall Street Journal and seven other regional newspapers[.]" The *Amdura* court held that:

> publication alone as to members who no longer held securities, ***was insufficient to satisfy due process***, where representatives had taken all necessary steps to file class proof of claim in bankruptcy case, both debtor and bankruptcy court were aware of existence of individual creditors, and debtor could have obtained list of creditors' names and addresses from representatives . . . ."

*Id.* (emphasis added). The *Amdura* court held that if Rule 7023 was not applied, actual notice of the bar date would have to be provided to all members of the class. Here, that means the Debtors' protestations regarding the costs and delays of providing actual notice at this stage of the Chapter 11 Cases weigh *in favor of* granting the Motion. Moreover, the assertion that the usual securities class notice protocol would have been expensive and might not have achieved absolute coverage is belied by the Walter Declaration and, in any event does not relieve the Debtors from their obligation to comply with constitutional notice and due process requirements.

Ms. Pullo adds that she is "not aware of any instances where notice was effectuated to former holders utilizing a potential securities class date range," and that "it is not customary to provide notice to former holders of debtors' securities in bankruptcy cases that were not holders as of a single record date used for mailing purposes to then-current holders," Pullo Decl. ¶ 18. While that may be true as a general proposition (especially where, as in most chapter 11 cases, no securities class action is pending as of the petition date), most public company chapter 11 cases involving concurrent securities litigation do not yield value to any class junior to general unsecured creditors, including equity interest holders and holders of claims subordinated under section 510(b) of the Bankruptcy Code such as the Class. Under these circumstances, the claims bar date is a relative nonevent for such out-of-the-money constituencies in the typical chapter 11 bankruptcy case. That is not the case here.

Indeed, as set forth in more detail in the Motion, many courts have identified sufficient and reasonable methods for identifying securities litigation class members for noticing purposes. *See* Mot. at 20; *see also Destefano*, 2016 U.S. Dist. LEXIS 17196, at *20-*21 (court-approved notice plan to securities litigation class members which requested that nominees either send a copy of the

notice packet to the beneficial owner of the stock within ten days or provide the names and addresses of the beneficial owners within ten days after receipt of the notice packet); *In re Mortg. & Realty Tr.*, 125 B.R. 575, 581 (Bankr. C.D. Cal. 1991) (class of purchasers of common stock certified under Rule 7023 where debtor's efforts to contact its members through non-reimbursed mailings to record owners and publication notice were inadequate as "[t]he discharge of a claim without reasonable notice of a confirmation hearing violates due process."). *See also* Walter Decl. ¶¶ 7-20.

### (iii) *The Supplemental Notice Program did not provide adequate notice to the Class because constructive notice is ineffective with respect to known creditors.*

The Debtors admit that they did not provide actual notice to Class members (with the possible exception of those Class members who also happened to be holders of securities as of the Record Date), leaving the Debtors to rely exclusively on the Publication Notice to reach most if not all of the Class members. However, the Debtors cannot rely on the Publication Notice to salvage their failure to provide actual notice of the Bar Date to Class members because (a) constructive notice is constitutionally inadequate with respect to known creditors and (b) even assuming, *arguendo*, that Class members are unknown creditors (which they are not), the Publication Notice was designed to reach wildfire victims in Northern California, not securities purchasers throughout the country and the world. The Objectors argue that even though the Class members did not receive actual notice of the Bar Date, the "robust Supplemental Noticing Campaign" nevertheless was sufficient to provide constructive notice to the Class members. *See* Debtors' Obj. at 15-16. Constructive notice, when appropriate and permitted, must be reasonably calculated to apprise interested parties. *In re ATD Corp.*, 278 B.R. 758, 763 (Bankr. N.D. Ohio 2002). Publication notice that is not designed to reach a class of purchasers of securities, most of whom no longer hold those securities, is not reasonably calculated to give notice to that class of interested parties.

The Debtors claim to have conducted a "robust and multi-faceted" publication noticing campaign, and there is no doubt that it was robust – *with respect to the wildfire victims who were*

*actually targeted by that campaign.*  *See* Schrag Decl. ¶ 5.  However, the fact that the Debtors spent significant funds and effort in their noticing procedures tailored to reach wildfire victims does not automatically mean they have fulfilled their obligation with respect to other interested parties in other locations and with claims of a vastly different nature.

Notice by publication has "long been recognized as a poor substitute for actual notice." *Larson*, 687 F.3d at 123-24 (citing *Eisen*, 417 U.S. at 175).  Here, it was no substitute at all, because the Publication Notice was very specifically tailored to reach a specific audience consisting of wildfire victims and customers.  As such, the Publication Notice was concentrated almost exclusively in California, with a heavy emphasis on Northern California, leaving national and international publication notice largely ignored.  *See* Finegan Decl. ¶ 4 (noting that the target audience was Northern California, California, and those who moved from California within the last four years).  Any Publication Notice geographically targeted to the Class members, who are located around the globe, was scarce in comparison.

For example, local efforts included notice in twenty-seven *local* newspapers, 2,010 television commercials across 14 *local* broadcast networks and 2,025 television commercials on *local* cable channels, *local* radio stations, community outreach to over 230 groups in *Northern California*, and billboards in *Northern California*.  Finegan Decl. ¶¶ 9-27.  In stark contrast, publication notice outside of Northern California was provided in press releases, three national magazines, two national newspapers, and only fifty-nine television commercials across four networks.  The Publication Notice did not attempt to reach creditors internationally, and barely attempted to provide notice nationwide.

Unfortunately, a majority of the Class members do not fall within the geographically targeted area, and the "robust and multi-faceted" notice efforts likely did not reach them.  For example, the vast majority of the current equity holders are not located in Northern California, or California at all for that matter.[10] By way of example, about twice as many of the current equity

---

[10] *See* Bloomberg L.P., PG&E Corporation Security Ownership Summary View, Retrieved January 16, 2020 from Bloomberg database (hereinafter the "**PG&E Ownership Summary**").  A copy of the PG&E Ownership Summary is annexed to the Behlmann Declaration as **Ex. 5**.

holders are located outside the United States than are located in California. *Id.* Because the Class members fall outside the target audience geographically, the efforts to reach them were extremely limited and insufficient to provide notice and afford Class members with constitutional due process. Even if a member of the Class happened to encounter one of the Publication Notices, those notices made no mention of the Securities Litigation or the need for members of the Class to file proofs of claim. Mere receipt is meaningless where the notice itself fails to communicate sufficient information to inform the recipients why they received it and the nature of their potential claims.

The Debtors' attempt to distinguish the notice standards described in *In re Amdura Corp.*, 170 B.R. 445 (D. Colo. 1994) from those described in the Motion mischaracterizes the court's holding in that case. First, Debtors correctly note that the *Amdura* court found "[c]onstructive notice would suffice" for "members of the group whose identity and whereabouts could not be so easily ascertained." Debtors' Obj at 17. Securities Plaintiffs do not disagree with this statement, which is simply a regurgitation of the general rule that constructive notice is sufficient for unknown creditors. Although the Debtors attempt to engineer a meaningful distinction by arguing that the movants in *Amdura* (unlike Securities Plaintiffs, here) had obtained prepetition class certification, this fact was not, and ***is not*** determinative of the issue of actual versus constructive notice. Regardless of the absence of prepetition class certification, the Class members here, like in *Amdura*, are known creditors entitled to actual notice.

The Debtors rely on *dicta* in *Fogel v. Zell*, 221 F.3d 955 (7th Cir. 2000), which is not precedential and, in any event, inapplicable, in an attempt to bolster their argument that notice by publication may be permitted "when potential claimants are numerous, unknown, or have small claims." Debtors' Obj. at 15. However, just as the Court held with respect to the creditors in *Fogel*, notice by publication is ***not*** appropriate. Similarly, the Debtors' reliance on *In re GAC Corporation*, 681 F.2d 1295 (11 Cir. 1982) is misleading. Although the *GAC* court did find that notice by publication to prior holders was sufficient because identifying the names and addresses of prior holders would be burdensome and costly, (Debtors' Obj. at 16-17), the case is

distinguishable for several reasons. The decision in *GAC* which was issued in 1982, before the substantial body of case law with respect to Rule 7023 was developed. Additionally, it appears the debentures at issue were not publicly traded, and the Debtors were not aware the previous debenture purchasers had claims. Finally, the Publication Notice to the Class members, as discussed further herein, pales in comparison to that in *GAC*, where notice was published in fifty-three leading newspapers around the world as opposed to only two national newspapers and no international newspapers at all.

As known creditors, members of the Class were entitled to, but did not receive, actual notice of the Bar Date. Constructive notice is constitutionally inadequate with respect to known creditors such as Class members. Clearly, the Publication Notice program was not reasonably calculated to reach them. The Debtors failed to fulfill their obligation to provide the Class with due process and constitutionally adequate notice of the Bar Date, and thus the Securities Plaintiffs have satisfied the second *Musicland* factor.

### 3. Certification of the Class will not adversely affect the administration of the Debtors' estates (*Musicland* Factor No. 3).

When considering the application of FRCP 23 to a bankruptcy case, a "pervasive theme is avoiding undue delay in the administration of the case" and preventing a class proof of claim from "'gum[ming] up the works.'" *In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997). In support of their conclusory argument that granting the Motion "may" or "could" adversely impact the administration of the estates, the Debtors attempt to obfuscate the issue by emphasizing that they have "made substantial progress in the administration of these Chapter 11 Cases and toward the timely and successful confirmation of a chapter 11 plan of reorganization" (Debtors' Obj. at 20), and then by attempting to liken the present facts to those in *In re Musicland Holding Corp.*, 362 B.R. 644, 656 (Bankr. S.D.N.Y. 2007), where the court found that granting the Motion at a late stage in the case would substantially disrupt the administration of the estate. However, the facts present in this case are starkly distinguishable from *Musicland* and other cases relied upon by the Debtors.

Importantly, *Musicland* stands for the proposition that a motion for class certification may

"gum up the works" where "a plan has been negotiated, voted on or confirmed." The decision offers a slew of examples where such circumstances might occur. *See Musicland* at 654–55 (citing *Ephedra Prods.,* 329 B.R. at 5 (potential interference with timely distribution is grounds for denying motion where plan has already been submitted for creditor vote); *Craft,* 321 B.R. at 199 (allowing class claim would delay plan process and claim objection process); *Sacred Heart,* 177 B.R. at 24 (granting the motion would "effect very substantial and apparently unwarranted disruption to the administration of the Debtor's bankruptcy case, in which there is presently a plan before us for imminent confirmation")). Moreover, in *Musicland,* when the certification motion was filed, ***creditors had already voted and a confirmation hearing had begun***. *Id.*

The circumstances contemplated by *Musicland* are fundamentally different here, where the landscape of these bankruptcy cases continues to change, and unlike the facts in *Musicland,* confirmation here is, by the Debtors' own admission, months away at best. As noted above, just last week, the Debtors filed request for a second delay of the regulatory approval schedule for the Plan, citing ***ongoing negotiations with multiple parties that Debtors anticipate will result in material changes to both financial and nonfinancial terms of the Plan.*** *See* Behlmann Decl. **Ex. 2** at 3. Moreover, the Extension Order provides for a Plan approval schedule including evidentiary hearings through the end of February, and a briefing schedule closing at the end of March. A hearing for the Court's consideration of approval of the Plan has not yet been scheduled. Indeed, by the Debtors' own admission, "there is still much more to be done that will require additional resources and tremendous efforts," (Debtors' Obj. at 8), in these Chapter 11 Cases. It is difficult, under these circumstances, to argue that confirmation is so imminent that a Class Claim will amount to a substantial disruption. Indeed, no creditors receiving distributions will be impacted by applying Rule 7023 to the Class Claim since such a claim, if allowed, will be statutorily subordinated to such recoveries pursuant to section 510(b) of the Bankruptcy Code.

Incredulously, the Objectors also argue that "awarding a class proof of claim will also significantly impact the claims reconciliation process and impose substantial burden on the Debtors to address a class claim in the context of their proposed Plan." (Debtors' Obj. at 20).

Notwithstanding the Objectors' purported concerns, the scope of the impact of the Motion on other parties in interest is, as a function of the terms of the Plan, significantly insulated. As set forth in the Plan, and in the lengthy (yet puzzling) four-page argument in the TCC Objection, the Class Claims will not dilute or otherwise impact wildfire victims or any other general unsecured creditor. The Securities Plaintiffs do not seek to reopen the Bar Date or slow down the chapter 11 process. Rather, the Motion simply seeks the most efficient and effective remedy for the Debtors' failure to provide adequate due process notice to the Class—the class claim mechanism.

Finally the Debtors argue that "allowing a class proof of claim would potentially expand the claims pool at this late date to encompass individuals who expressly chose not to file individual claims." (Debtors' Obj. at 20). Putting aside the flawed assumption that Securities Plaintiffs, *who did not receive actual notice of the Bar Date*, somehow deliberately chose not to file individual claims, this argument again ignores that a Class claim will have no impact on the size of the unsecured claims pool given section 510(b) subordination. This argument is also severely undercut by the fact that the Court, upon motion by the TCC, recently entered an order (the "**TCC Bar Date Extension Order**") [ECF No. 4672] extending the Bar Date for the TCC's fire victim constituents to December 31, 2019.

In its motion seeking entry of the TCC Bar Date Extension Order (the "**TCC Bar Date Extension Motion**") [ECF No. 4293], the TCC decried the Debtors' Bar Date notice program, arguing that many of the TCC's constituents "do not recall ever receiving" a Bar Date Notice in the mail, that "[a]ssuming the notice was received in the mail, it may have been discarded as junk mail, not trusted, or considered a scam[,]" and that "[i]n a time when most delivered mail is junk mail, the notice was not sufficiently identifiable as an important legal notice." TCC Bar Date Extension Motion at 11-12. Thus, by the TCC's own admission, *even if members of the Class had received actual notice of the Bar Date*, which they did not, that notice nevertheless was not reasonably calculated to attract their attention and inform them of the need to file a proof of claim.

More importantly, and as noted in the *Commonpoint* decision, any administrative inconvenience resulting from class procedures must be balanced against the "interests of justice"

and the policies of the Bankruptcy Code. *Commonpoint*, 283 B.R. at 480-481. The fact that it is simply easier and perhaps cheaper to cast the Class Claim aside, and leave defrauded investors with no remedy against the Debtors, that is not a legitimate basis to deprive defrauded investors of the right to assert their claims like all other creditors and, if proven, to recover their fair share from the Debtors' bankruptcy estates. *See In re Chateaugay Corp.,* 104 B.R. 626, 632 (S.D.N.Y. 1989) ("any potential marginal increase in delay or difficulty of valuation of claims would be justified in order to protect the rights of small claimants . . . to be represented by the filing of a class proof of claim."). A fundamental goal of the bankruptcy process is "facilitating creditor compensation," *In re Charter Co.,* 876 F.2d 866, 871 (11th Cir. 1989), and the concept of a class proof of claim furthers that goal. *Id.* ("Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large easily filed claim.

Thus, applying Bankruptcy Rule 7023 does not threaten to delay the administration of the Chapter 11 Cases or "gum up the works." To the contrary, class certification will "bring all claims forward, as contemplated by the Bankruptcy Code[,]" *see Charter Co.*, 876 F.2d at 871, informing the plan process and helping to facilitate the orderly and efficient administration of potentially thousands of Class members' claims through a Class Claim without any additional cost to or administrative burden on the Debtors' estates. Indeed, although preferable to resolve the Class Claim through negotiation as the Debtors appear to have done with other stakeholders, the Class Claim need not even be resolved prior to confirmation of the Debtors' Plan. Thus, the class claim mechanism furthers one of the fundamental goals of the Bankruptcy Code by fostering complete and efficient relief for both debtors and creditors alike without any demonstrable disruption to the administration of the Debtors' estates. For the reasons set forth in the Motion and herein, this factor also weighs strongly in favor of applying Bankruptcy Rule 7023.

**B.    The Objectors' Remaining Arguments are Meritless.**

**1.    *Class members hold direct claims against the Non-Debtor Defendants that are not property of the estate.***

The TCC argues that the claims the Securities Plaintiffs are pursuing against the Debtors' officers and directors, claims that are not the subject of the Motion and not even before this Court,

are derivative in nature and inure to the benefit of the Debtors' estates only, and that they have been assigned to the Fire Victim Trust (as defined in the TCC Objection). Not only is this argument unsupported by applicable case law, but that potential assignment has not occurred and is subject to confirmation of the Plan. In addition, the Debtors, who still own the claims, have never taken that position and this Court has already ruled that the Securities Plaintiffs can continue to prosecute these claims in the District Court. Through the Motion, the Lead Plaintiff seeks entry of an order from this Court directing that Bankruptcy Rule 7023 applies to the class proofs of claim filed by the Lead Plaintiff on behalf of itself and on behalf of the Class *against each of the Debtors*. Accordingly, consideration of the nature of the claims asserted against the Debtors' officers and directors is wholly irrelevant to the relief requested by the Motion.

On the merits, the TCC's position is baseless and likely sanctionable because the Securities Plaintiffs are asserting direct and individualized claims against the Debtors' officers and directors based upon specific violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder; and for violations of Sections 11 and 15 of the Securities Act. The TCC mischaracterizes and attempts to recast the Securities Plaintiffs claims as violations that "… lowered PG&E's overall value, and correspondingly lowered the value of all shareholders' interests, including the interests of the Movants." TCC Obj. at 3. By contrast, the Securities Plaintiffs assert claims grounded in federal securities law against the Debtors' officers and directors on behalf of investors who acquired the Debtors' securities and suffered their own damages as a direct result of alleged false statements and omissions, which inflated the price of the Debtors' securities.

The Securities Litigation is not premised upon a broad assertion that the Debtors' officers and directors breached their fiduciary duty to the Debtors, causing a depletion of corporate assets, claims equally applicable to all shareholders. *Cf. Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998) (dismissing shareholders' breach of duty of care and breach of duty of loyalty claims as derivative); *Sax v. World Wide Press, Inc.,* 809 F.2d 610, 614 (holding depletion and diversion of corporate assets through mismanagement are injuries suffered by the corporation and must be

brought as derivative claims); *Schuster v. Gardner¸* 127 Cal.App.4th 305, 316-17 (2005) (dismissing sole claim of breach of fiduciary duty premised on corporate mismanagement as a derivative claim belonging to the corporation).

Rather, the present case is most analogous to *In re Semtech Corp. Sec. Litig.*, 2008 WL 111333471 (C.D. Cal. Dec. 15, 2008), where the lead plaintiff in a securities class action brought claims for, *inter alia*, violations of Section 10(b) of the Exchange Act and Rule 10b-5 relating to an alleged scheme by senior management to backdate corporate stock options, resulting in a negative impact on the company's stock price. Notably, the same district court that was considering the plaintiff's direct claims based upon § 10(b) and Rule 10b-5 was also overseeing the consolidated derivative claim proceeding involving the same corporation. *Id.* at *3. In denying defendants' motion to dismiss the Rule 10(b) claims, as derivative claims belonging to the corporation, the *Semtech* court held:

> The Court concludes that plaintiff has properly alleged a direct claim against Semtech. Plaintiff is alleging a claim under Rule 10(b) and therefore federal law applies to determine whether plaintiff's claim is direct or derivative. ***Here, plaintiff, and not Semtech, purchased securities at an allegedly inflated price and therefore suffered a direct injury.*** Even if state law applies, the Court concludes that plaintiff's claim is direct. ***Plaintiff's claim is for a distinct injury suffered by the shareholders—overpaying for artificially inflated Semtech stock. Therefore, any resulting damages from this claim belong to the shareholders who purchased stock during the class period and not Semtech. The fact that Semtech also suffered an injury is irrelevant*** to this case because plaintiff's claims are distinct and any injury to Semtech from the backdating is being addressed in the parallel derivative action.

*Id.* at *8 (internal citations omitted) (emphasis added); *see also New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (holding that a claim under Section 14(a) of the Exchange Act was direct, and not derivative, where it was independent of any injury to the corporation and implicated a duty of disclosure that was owed to shareholders).

Here, the Securities Plaintiffs have alleged damages that *members of the Class* suffered as a direct result of the Non-Debtor Defendants' violations of the Exchange Act and the Securities Act. Notwithstanding the TCC's attempts to totally mischaracterize the actual claims asserted, the Securities Plaintiffs do not make a general allegation of breaches of fiduciary duty, or a generalized

claim of diminution in the Debtors' stock price. Rather, the Securities Plaintiffs assert direct claims for their distinct independent injuries under the federal securities laws that are compensable, if proven, regardless of any injury that may have been suffered by the Debtors. Accordingly, the Securities Plaintiffs have asserted direct, not derivative, claims against the Debtors' former officers and directors. Had the Debtors thought otherwise, that issue would have previously been raised in the context of the Adversary Proceeding where the Debtors attempted to enjoin the prosecution of the Securities Plaintiffs' claims against the Non-Debtor Defendants. This Court refused to grant such relief.

### 2. *The Alonzo Motion is inapposite to the Motion.*

The Debtors attempt to analogize the present Motion with a motion seeking application of Bankruptcy Rule 7023 to putative class claims filed by certain of the Debtors' former employees that was recently denied by the Court (the "**Alonzo Motion**"). The Alonzo Motion has no bearing on the Motion. Notwithstanding the Debtors' gross mischaracterization that "failure to have a class certified pre-petition was fatal" to the Alonzo Motion, (Debtors' Obj. at 12), the key distinguishing factor was that the claimants at issue in the Alonzo Motion – employees of the Debtors – *were provided with actual notice of the Bar Date. See* Debtors' Objection to the Alonzo Motion, ECF No. 4684, at 13 ("[T]he Debtors sent a Claims Package to *every* current employee, including Mr. Alonzo. In addition, the Debtors sent the Claims Package to *every* former employee – not just the subset of former employees who might be members of the putative class . . . .").

### 3. *Bifurcation of relief under Bankruptcy Rule 7023 and Class certification under Fed. R. Civ. P. 23 is appropriate and in the interest of judicial economy.*

The Debtors argue that the Motion also fails "by not even arguing that a class should be certified under Civil Rule 23" [since] "[e]stablishing that the class meets FRCP 23 is a required element of Movant's Bankruptcy Rule 7023 Motion." Debtors' Obj at 3-4. This argument misses the mark. As stated in the Motion, the Securities Plaintiffs have requested bifurcation of the issue of application of Bankruptcy Rule 7023 to the Class Claims and the issue of certification of the Class under FRCP 23. *See* Mot. at 1 ("if the Court directs that Bankruptcy Rule 7023 applies to the Class Claims, establishing a briefing schedule for and scheduling a hearing, if necessary, on

certification of the Class for all purposes in the chapter 11 bankruptcy cases"). Bifurcation enables the Court to consider only the threshold issue of the application of Bankruptcy Rule 7023 first, and then to consider the FRCP 23 factors only if it decides the threshold issue in the affirmative. As the Debtors acknowledge, "Failure to carry the burden in the first prong ends the inquiry." Debtors' Obj. at 10. It is curious that the Debtors, who claim to be interested in efficiency, would want the parties and the Court to deal with the rather standard FRCP 23 issues in securities litigation before this Court Rules on the bankruptcy specific threshold question of the application of Rule 7023.

<u>**CONCLUSION**</u>

Application of Bankruptcy Rule 7023 to the Class Claims will promote the fundamental goals of bankruptcy and is the sole method by which a Class comprised of defrauded investors can obtain any recovery from these Debtors for their losses. This is truly a case in which, "[i]f the class proof of claim process is not utilized, justice may be denied." *CommonPoint Mortg.*, 283 B.R. at 480. For the reasons set forth in the Motion and herein, Lead Plaintiff respectfully requests that the Court grant the Motion and enter the Proposed Order.

Dated: January 22, 2020

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**
**MICHELSON LAW GROUP**

By: _/s/ Randy Michelson_
Randy Michelson (SBN 114095)

*Bankruptcy Counsel to Lead Plaintiff and the Class*

- and -

**LABATON SUCHAROW LLP**

*Lead Counsel to Lead Plaintiff and the Class*

- and -

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**

*Liaison Counsel for the Class*

- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**

*Counsel for the Securities Act Plaintiffs*

- and -

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**

*Additional Counsel for the Securities Act Plaintiffs*

**EXHIBIT A**
**COUNSEL**

| | |
|---|---|
| **LOWENSTEIN SANDLER LLP** | **MICHELSON LAW GROUP** |
| Michael S. Etkin *(pro hac vice)* | Randy Michelson, Esq. (SBN 114095) |
| Andrew Behlmann *(pro hac vice)* | 220 Montgomery Street, Suite 2100 |
| Scott Cargill | San Francisco, CA 94104 |
| Nicole Fulfree | Telephone  415-512-8600 |
| Colleen Maker | Facsimile  415-512-8601 |
| One Lowenstein Drive | randy.michelson@michelsonlawgroup.com |
| Roseland, New Jersey 07068 | |
| Telephone  973-597-2500 | |
| Facsimile  973-597-2333 | |
| metkin@lowenstein.com | |
| abehlmann@lowenstein.com | |

*Bankruptcy Counsel to Lead Plaintiff and the Class*

| | |
|---|---|
| **LABATON SUCHAROW LLP** | **WAGSTAFFE, VON LOEWENFELDT,** |
| Thomas A. Dubbs | **BUSCH & RADWICK, LLP** |
| Carol C. Villegas | James M. Wagstaffe (SBN 95535) |
| Jeffrey A. Dubbin (SBN 287199) | Frank Busch (SBN 258288) |
| Aram Boghosian | 100 Pine Street, Suite 725 |
| 140 Broadway | San Francisco, California 94111 |
| New York, New York 10005 | Telephone  415-357-8900 |
| Telephone  212-907-0700 | wagstaffe@wvbrlaw.com |
| tdubbs@labaton.com | busch@wvbrlaw.com |
| cvillegas@labaton.com | |
| jdubbin@labaton.com | |
| aboghosian@labaton.com | |

| | |
|---|---|
| *Lead Counsel to Lead Plaintiff and the Class* | *Liaison Counsel for the Class* |

| | |
|---|---|
| **ROBBINS GELLER RUDMAN & DOWD LLP** | **ROBBINS GELLER RUDMAN & DOWD LLP** |
| Darren J. Robbins (SBN 168593) | Willow E. Radcliffe (SBN 200089) |
| Brian E. Cochran (SBN 286202) | Kenneth J. Black (SBN 291871) |
| 655 West Broadway, Suite 1900 | Post Montgomery Center |
| San Diego, California 92101 | One Montgomery Street, Suite 1800 |
| Telephone  619-231-1058 | San Francisco, California 94104 |
| darrenr@rgrdlaw.com | Telephone  415-288-4545 |
| bcochran@rgrdlaw.com | willowr@rgrdlaw.com |
| | kennyb@rgrdlaw.com |
| **VANOVERBEKE, MICHAUD &** | |
| **TIMMONY, P.C.** | |
| Thomas C. Michaud | |
| 79 Alfred Street | |
| Detroit, Michigan 48201 | |
| Telephone  313-578-1200 | |
| tmichaud@vmtlaw.com | |

*Additional Counsel for the Securities Act Plaintiffs*

**EXHIBIT B**
**RESERVATION OF RIGHTS**

The Motion, this Reply, and any subsequent pleading, appearance, argument, claim, or suit made or filed by Lead Plaintiff, either individually or for the Class or any member thereof, do not, shall not, and shall not be deemed to:

    a.    constitute a submission by Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

    b.    constitute consent by Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order or judgment, or any other order having the effect of a final order or judgment, in any non-core proceeding, which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter or proceeding;

    c.    waive any substantive or procedural rights of Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment, or any other order having the effect of a final order or judgment, on any matter; (b) the right to have final orders and judgments, and any other order having the effect of a final order or judgment, in non-core matters entered only after de novo review by a United States District Court judge; (c) the right to trial by jury in any proceedings so triable herein, in the Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, the Chapter 11 Cases, any Related Proceedings, or the Securities Litigation; (d) the right to seek withdrawal of the bankruptcy reference by a United States District Court in any matter subject to mandatory or discretionary withdrawal; or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

For the avoidance of doubt, Lead Plaintiff, on behalf of itself and the Class, does not, and will not impliedly, consent to this Court's adjudication of the claims asserted against any Non-Debtor Defendants now or hereafter named in the Securities Litigation.