**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005

*Lead Counsel to Lead Plaintiff and the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Nicole Fulfree
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068

*Bankruptcy Counsel to Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Lead Plaintiff and the Class*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br>Chapter 11<br>(Jointly Administered)<br><br>**DECLARATION OF ADAM D. WALTER OF A.B. DATA, LTD. REGARDING STANDARD PROCEDURES AND METHODS UTILIZED IN SECURITIES CLASS ACTION NOTICE PROGRAMS**<br><br>Date: January 29, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Before: Hon. Dennis Montali<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, California 94102 |

Adam D. Walter, hereby declares as follows, pursuant to 28 U.S.C. § 1746:

1. I am a Senior Project Manager of A.B. Data, Ltd.'s Class Action Administration Division ("**A.B. Data**"), whose Corporate Office is located in Milwaukee, Wisconsin. At the request of Lead Counsel to Lead Plaintiff and the proposed Class in *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (N.D. Cal.)("**Securities Litigation**"), I am providing this declaration to give the Court and the parties to this proceeding information about the standard procedures and methods that are available to timely and efficiently provide actual notice to members of a proposed class in this proceeding who have securities claims against the Debtors. I make this declaration based on personal knowledge and, if called to testify, I could and would do so competently.

2. A.B. Data has been a court-appointed administrator and has successfully implemented notification and claims administration programs in hundreds of class actions. Members of our team have administered many of the most noteworthy securities class action settlements in recent years, including *In re AIG Securities Litigation*, No. 04 Civ. 8141 (S.D.N.Y.); *In re Countrywide Financial Corp. Securities Litigation*, No. 07 Civ. 05295 (C.D. Cal.); *In re Fannie Mae 2008 Securities Litigation*, No. 08 Civ. 7831 (S.D.N.Y.); *In re General Electric Co. Securities Litigation*, No. 09 Civ. 1951 (S.D.N.Y.); and *In re Facebook, Inc., IPO Securities & Derivative Litigation*, MDL No. 12-2389 (S.D.N.Y.).

3. I have personally overseen the administration of more than 75 securities class action settlements. Several of those settlements involved issuers that were in bankruptcy, and A.B. Data recently provided notice of a settlement to class members in connection with a bankruptcy proceeding. More information on A.B. Data's qualifications and experience can be found on our website at www.abdataclassaction.com. A detailed description of A.B. Data's background and capabilities, including lists of representative cases and clients, is attached as Exhibit A.

4. I have read the *Declaration of Christina Pullo (I) Regarding Implementation of the Debtors' Notice Procedures and (II) in Support of the Debtors' Objection to Securities Lead

*Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Proof of Claim*, dated January 13, 2020 (the "**Pullo Declaration**") (Dkt No. 5370).

5. My understanding is that the proposed Class in the Securities Litigation, as well as the proposed class in this bankruptcy proceeding, consists of all persons and entities that purchased or otherwise acquired PG&E securities during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), and were allegedly damaged thereby. Certain persons and entities are excluded from the Class by definition.

6. I believe, based on my extensive class action administration experience, that each of the methods and procedures discussed below could have been used successfully and efficiently to provide direct and actual notice of the bankruptcy claims bar date in the PG&E Chapter 11 cases to members of the proposed Class.

**Standard Procedures Relating to Noticing Beneficial Owners of Securities**

7. Over the years, class action administrators have developed certain customary and well-tested procedures that have been regularly approved by courts and are designed to provide actual and direct notification to all investors that are members of a proposed class of securities purchasers and who can be identified with reasonable effort.

8. In securities class actions, the vast majority of members of a proposed class are beneficial purchasers whose securities were purchased in "street name." That is, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominees, on behalf of the beneficial purchasers. The names and contact information for investors holding in "street name" is considered confidential by the nominees.

9. A necessary first step in the class action notice process is to obtain an order from a court with jurisdiction, directing, among other things, nominees, under penalty of contempt, to provide a claims administrator, such as A.B. Data, specific names and addresses of the relevant investors so they can be contacted. Sometimes the nominees will undertake compliance with the court direction by sending out the relevant notice to their customers holding in "street name," together with any material provided to them by the claims administrator. Often such orders are requested as part of the approval process of any notice program overseen by the Court. Once

nominees receive such an order, confidentiality concerns are satisfied and actual, traceable, notice by mail becomes relatively simple. Likewise, with an appropriate court order, nominees will send notice material provided to them to their customers in a timely fashion. Based on my review of the materials cited above, no such order was sought, and actual notice to the vast majority of Class shareholders holding in "street name" was not achieved, nor was a court order obtained that would alleviate a nominee's confidentiality obligations and concerns so that actual notice could be sent directly by an agent it contracted with to its customers.

10. In addition, in order to provide actual notice to class investors holding in "street name" via nominees, A.B. Data, like other class action administrators, maintains a proprietary database with names and mailing addresses, and in some instances email addresses, of approximately 4,000 banks, brokers, and other nominees that have been active in class action administrations (the "**Nominee List**"). Broadridge Financial Solutions ("**Broadridge**"), the so-called "mailing agent" identified in the Pullo Declaration is on the Nominee List.[1]

**Standard Procedures Relating to Noticing Record Owners of Securities**

11. In tandem with identifying beneficial owners of securities through nominees, a class action administrator will obtain the relevant issuer's list of registered record owners from its transfer agent (**"Transfer List"**).[2] The Transfer List provides name and address information for each directly registered record owner of the issuer's debt and equity securities – typically a very small percentage of actual beneficial owners of a security.

12. The compiling of lists of registered holders from information provided by Transfer Agents permits actual notice to come from a claims administrator for this small group,

---

[1] To the extent Broadridge notified other nominees of the bankruptcy notice, there was no assurance, absent a court order, that the nominees would either transmit the notice to their customers who held in "street name", that they would give name and contact information to the Debtors or their agents, who could then send notice, or that notice was in fact transmitted.

[2] As explained by the U.S. Securities and Exchange Commission, transfer agents perform three main functions: (1) "issue and cancel certificates to reflect changes in ownership"; (2) "act as an intermediary for the company"; and (3) "handle lost, destroyed, or stolen certificates." *See* https://www.sec.gov/fast-answers/answerstransferagenthtm.html. As an intermediary, transfer agents regularly "act as proxy agent (sending out proxy materials), exchange agent (exchanging a company's stock or bonds in a merger), tender agent (tendering shares in a tender offer), and mailing agent (mailing the company's quarterly, annual, and other reports)." *Id*.

rather than from a nominee, and is not subject to nominee confidentiality concerns over securities held in "street name" attributable to individual, identifiable accounts.

13. Transfer agents compile Transfer Lists using search parameters provided to them by the issuer, counsel, or the administrator. Our standard practice in securities class actions is to request record owner data for the entirety of a class period, which is readily provided to us by transfer agents. This is preferable to obtaining data on only one date (which is all the Pullo Declaration indicates that Prime Clerk did), as class members who sold or bought before or after each search date might not be captured by a limited search.

**Standard Methods and Procedures for Providing Actual Notice to
Beneficial and Record Owners of Publicly Traded Securities**

14. As described above, and similar to the noticing procedures that I understand are used in Chapter 11 cases, a court overseeing a securities class action will enter an order, *inter alia*, approving the forms of notice to be provided to the class, setting a schedule for the mailing of notice, and setting a schedule governing nominees' actions in furtherance of notice (the "**Notice Order**"). Notice Orders are an important tool for directing nominees to act in response to a notification from a class action administrator.

15. Once a Notice Order is entered, A.B. Data will then mail the approved notice to its Nominee List and the Transfer List within the required time period (the "**Notice Date**").

16. In addition, pursuant to the governing provisions set forth in a Notice Order, class notices, and often transmittal emails or letters accompanying class notices, typically instruct nominees to either (1) provide the names and addresses of their clients who may have purchased the relevant security during the Class Period, *i.e.,* class members, to the administrator within a short period of time (typically seven to fourteen calendar days)[3] or (2) request copies of the court-approved notice for forwarding to their clients who may have purchased during the class period, again within a short period of time (typically seven to ten calendar days). Outreach to nominees that do not respond to initial requests to facilitate notice is also conducted by class action administrators.

---

[3] The provision of name and address data to an administrator is preferable, so that we can ensure that (i) notices are actually mailed to a nominee's clients and (ii) track their delivery.

17. As information is received from nominees and other sources, A.B. Data then either mails a notice directly to an identified beneficial owner or mails "bulk" notice packets to nominees that desire to mail to their customers.

18. I note that the Pullo Declaration states, "Throughout the noticing process, the names and addresses of the beneficial holders remain unknown to the Debtors" and that "Debtors have no ability to ensure that these notices are actually delivered to these unknown holders as it must rely on the Nominees and other mailing agents to accurately send the materials to their customers." *See* Pullo Declaration, ¶6, ¶14. My understanding is that the Debtors argue that they never actually knew the names of investors that held in "street name," however through the Pullo Declaration, they contend their agent Broadridge knew or could have known such information. As set forth above, mechanisms exist to assure that actual notice was actually given to an actually known set of creditors. The fact that the Debtors do not know the same information about the shareholders as is known by the nominees about their customers is not relevant to the provision of notice. (At this point, an issuer is not involved and any issues are handled by the claims administrator and the nominee or the claims administrator and the shareholder who has received actual notice.) It my experience, once nominees are aware of a court's order to participate in a notice program to provide actual notice to their customers, a very high level of compliance occurs, pursuant to the practices developed over many years.

19. All name and address data obtained by A.B. Data is reviewed to identify and eliminate exact duplicates and incomplete data prior to mailing. Addresses are checked against the United States Postal Service's National Change of Address database to identify address changes and obtain current mailing addresses where available.

20. Each notice that is returned as undeliverable mail is reviewed to determine if an alternative or updated address is available from the Postal Service and, if such an address is available, is re-mailed to the updated or alternative address. In any instance where no such address is available from the Postal Service, A.B. Data attempts to obtain updated or alternative address information from private databases and then re-mails the notice if such information is available.

21. Overall, the above-described notice procedure is typically conducted in a securities class action over a period of 30 to 60 calendar days.

**The Content of the Notice of the Bar Date**

22. My understanding is that the Debtors' position is that notice of the Bar Date is sufficient notice to a shareholder of his, her or its membership in a class with potential securities claims against the Debtors. However, without a class definition being in any such notice, it is unclear how the investor would know he, she or it is a member of the Class or not. Without such knowledge, based on my experience, information about the Bar Date would have no context for a recipient of the notice.

**Conclusion**

23. In my experience, the reasonable and customary procedures outlined here have proven highly effective at compiling lists of potential class members for purposes of providing actual direct notice to class members in hundreds of cases, in a timely manner and at reasonable cost. Substantially similar notice plans have been approved by numerous courts as being the best notice practicable under the circumstances. The PG&E debtors could have used this same approach to provide timely, actual notice of the bankruptcy claims bar date in their Chapter 11 cases to Class members in the Securities Litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of January, 2020

_____
Adam D. Walter