VIA U.S. MAIL

January 14, 2020

Hon. Dennis Montali
U.S. Bankruptcy Court
Northern District of California
450 Golden Gate Avenue
Mailbox 36099
San Francisco, CA 94102

FILED

JAN 16 2020

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Case # 19-30088

Re: PG&E Restructuring – Hearing Scheduled for February 11, 2020 Regarding FEMA Claims

Dear Judge Montali:

My elderly parents and I lost our family home in the Tubbs Fire that devastated Santa Rosa, California in October 2017. We are among the many wildfire victims that are claimants in the PG&E bankruptcy case.

I write because a hearing is scheduled before you on February 11, 2020 to address whether and/or to what extent FEMA claims related to the 2017 and 2018 Northern California wildfires shall be included within a proposed settlement between PG&E and wildfire victims.

My family utilized the FEMA program for debris removal on our property after assurances of local and federal government officials, also their stated "incentives" for doing so (i.e. that lots cleared privately would be held to a different less expeditious standard for "satisfactory completion" than those cleared through the FEMA program, also that private contractors would have great difficulty in sourcing qualified labor and landfill space due to the sheer magnitude of the FEMA program thereby causing unpredictable delay and expense). Regrettably, several significant issues arose and remain unresolved with respect to the debris removal work conducted on our property through the FEMA program, as follows:

- A total of 1,271.35 tons or 2,542,700 pounds of debris was removed from our property between January 31 and February 4, 2018. This included two hauling trucks of metal, 16 hauling trucks of concrete, and 72 hauling trucks of ash/soil. On March 21, 2018, the U.S. Army Core of Engineers deemed the property "cleared" of fire-related debris as tested in accordance with the Background Sampling and Cleanup Goals for the Napa, Sonoma, Lake, and Mendocino County fires.

- In my visits to the property after FEMA debris removal, I was very concerned about the huge "crater" where our family home used to be, also the presence of concrete footings and other features of the original foundation that should have been removed. Prior to that time I had seen and heard reports that contractors hired under the FEMA program were paid by the ton for the debris they removed. This gave rise to concerns that our property had been over-excavated. In late May 2018, I contacted CAL-OES and asked its representatives to assess FEMA debris removal and determine if we would qualify for CAL-OES remediation.

- Geo-Logic Associates was hired by CAL-OES to conduct an assessment of our property before remediation. After several site visits it submitted recommendations for site preparation and soil fill replacement to CAL-OES in a report dated July 14, 2018. It found that our house footprint (40 feet by 30 feet, 45 by 100 feet, and 15 feet by 40 feet) was over-excavated by between one and five feet. (Figure 1, below) In addition, it found a moderate amount of fire debris on the property (Figures 3 and 4, below) together with concrete footings at the northwest and southwest sides of the excavation (Figure 2, below), all of which should have been previously removed through the FEMA program.

- Geo-Logic Associates began its site work at our property on July 27, 2018. Between August 18 and 29, 2018, they arranged for the removal of 29.84 tons or 59,680 pounds of additional fire debris. This included the footing at the northwest corner of the excavation that was left by FEMA, the size of which was comparable to the bulldozer used to remove it. (Figures 5 and 6, below) A total of 629.96 tons or 1,259,920 pounds of fill soil was then imported and subsequently compacted on our property over several iterations before work was finally completed. Note that the amount of fill soil required to remediate the over-excavation caused by FEMA contractors is almost exactly half of what they removed. This illustrates either a significant technical error or a calculated decision to profit from insurance proceeds allocated under our family's policy.

- Unfortunately, CAL-OES could neither remove the footings at the southwest of the excavation area nor completely remediate the extent of over-excavation. As a result we still anticipate private expenses in the range of $100,000 to $150,000 (per our contractor) to prepare a suitable building pad in order for any reconstruction to begin.

- On October 2, 2019, our family was finally given access by Sonoma County to documents related to the FEMA program and CAL-OES remediation. This included the invoice for work completed under the FEMA program, which totals a whopping $444,972.50. Our contractor has advised us that our next-door neighbors private debris removal costs were about one-quarter of the amount of our FEMA invoice for a comparable house footprint and similar grade lot.

- To date our insurer has still not paid FEMA's invoice. The claims supervisor says that our insurer has requested certain documentation from Sonoma County regarding the scope of work on our property and the expenses charged by FEMA under its program. Once our insurer pays the covered amount, we expect to have the opportunity to petition Sonoma County for reimbursement and/or use of some of those funds to cover private expenses required to further remediate the property and complete debris removal. But until then we cannot schedule the necessary work or make additional progress to ready our home site.

My family's participation in the FEMA program has detrimentally impacted our recovery from the wildfire and only complicated efforts to begin our lives anew. I am frustrated and angry to learn that FEMA views itself as entitled to tap into the wildfire victims settlement proposed by PG&E in order to remunerate its own expenses when its oversight of the program has been poor and the quality of work performed by its contractors has been poor, let alone wrongfully overcharged. Wildfire victims need these settlement funds to compensate our legitimate losses. Our claims should not be deprioritized or further diluted by the participation of government entities like FEMA or CAL-OES in the proposed settlement.

Respectfully,

*[signature]*

Jason C. Meek
Santa Rosa, California

Attachments: Photographs

cc: Rep. Mike Thompson
Rep. Jared Huffman

Attachments



Figure 1: Area of over-excavation showing size of house footprint left by FEMA.



Figure 2: Site diagram prepared by Geo Logic Associates showing footings left by FEMA.



Figure 3: Fire debris left by FEMA.



Figure 4: Fire debris left by FEMA.



Figure 5: Bulldozer equipment and visible concrete footing at northwest of excavation area.



Figure 6: Bulldozer removing concrete footing at northwest of excavation area.