WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Chapter 11 Case No. 19-30088 (DM) |
| | (Lead Case) (Jointly Administered) |
| **PG&E CORPORATION,** | **DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH CONSENTING NOTEHOLDERS AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF** |
| **- and -** | |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | |
| ☐ Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☑ Affects both Debtors | **(THE "NOTEHOLDER RSA MOTION")** |
| | Date: February 4, 2020 Time: 10:00 a.m. (Pacific Time) Place: United States Bankruptcy Court Courtroom 17, 16th Floor San Francisco, CA 94102 |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **Proposed Objection Deadline: January 31, 2020 4:00 p.m (PT)** |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Noteholder RSA Motion**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) approving and authorizing the Debtors to enter into, and perform under, that certain Restructuring Support Agreement, dated as of January 22, 2020 (with the Term Sheet attached thereto as Exhibit A and the letter agreement dated January 22, 2020 (the "**Noteholder RSA Letter Agreement**") executed in connection therewith, the "**Noteholder RSA**") among the Debtors, the Consenting Noteholders (as defined below), and the owners of certain funds and accounts managed by Abrams Capital Management, LP and Knighthead Capital Management, LLP (the "**Shareholder Proponents**, together with the Debtors, the "**Plan Proponents**"), a copy of which is annexed hereto as **Exhibit A**, and (ii) granting related relief.

In support of the Motion, the Debtors submit the Declaration of Jason Wells (the "**Wells Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................7

I. PRELIMINARY STATEMENT ...................................................................7

II. JURISDICTION .......................................................................................10

III. BACKGROUND .....................................................................................10

    A. The Ad Hoc Noteholder Committee's Alternative Plan and Reconsideration Motion ........................................................................................................11

    B. The Make-Whole Premium and Postpetition Interest Disputes...............................11

IV. MATERIAL TERMS OF THE NOTEHOLDER RSA .................................................12

V. BASIS FOR RELIEF REQUESTED .....................................................................20

    A. The Noteholder RSA Represents a Substantial Achievement and Milestone in the Chapter 11 Cases, Is a Sound Exercise of the Debtors' Business Judgment, and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code. ..........................................................................20

    B. Entry into the Noteholder RSA is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019. ................................23

    C. Conclusion ........................................................................................26

VI. NOTICE ...............................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*,
   156 B.R. 414 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) ...............................................24

*In re ASARCO, L.L.C.*,
   650 F.3d 593 (5th Cir. 2011) .....................................................................................................20

*In re AWTR Liquidation Inc.*,
   548 B.R. 300 (Bankr. C.D. Cal. 2016).........................................................................................21

*In re CHC Grp. Ltd.*,
   Case No. 16-31854 (BJH) (Bankr. N.D. Tex. Dec. 20, 2016)......................................................25

*City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*,
   656 F.3d 82 (1st Cir. 2011).........................................................................................................24

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   60 B.R. 612 (Bankr. S.D.N.Y. 1986).......................................................................................20-21

*In re Drexel Burnham Lambert Grp., Inc.*,
   134 B.R. 499 (Bankr. S.D.N.Y. 1991).........................................................................................23

*Energy Future Holdings Corp. v. Del. Trust Co.*,
   648 F. App'x 277 (3d Cir. 2016) .................................................................................................24

*In re Exide Techs*,
   Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015)............................................................21

*In re Federal-Mogul Global Inc.*,
   Case No. 01-10578 (JFK) (Bankr. D. Del. Feb. 7, 2007) ...........................................................25

*In re Fiddler's Creek, LLC*,
   Case No. 10-3846 (CPM) (Bankr. M.D. Fla. Feb. 25, 2011) ......................................................25

*In re Integrated Resources, Inc.*,
   147 B.R. 650 (Bankr. S.D.N.Y. 1992).........................................................................................21

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
   2009 Bankr. LEXIS 2846 (Bankr. D.P.R. Mar. 31, 2009)...........................................................25

*In re Lionel Corp.*,
   722 F.2d 1063 (2d Cir. 1983).....................................................................................................20

*In re Manuel Mediavilla, Inc.*,
   568 B.R. 551 (B.A.P. 1st Cir. 2017) ........................................................................................25-26

*Martin v. Kane (In re A&C Props.)*,
  784 F.2d 1377 (9th Cir. 1986) ................................................................................23

*In re Montgomery Ward Holding Corp.*,
  242 B.R. 147 (D. Del. 1999) ...................................................................................20

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
  478 F.3d 452 (2d Cir. 2007) ....................................................................................25

*Myers v. Martin (In re Martin)*,
  91 F.3d 389 (3d Cir. 1996) ......................................................................................23

*In re Nautilus Holdings Ltd.*,
  Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Oct. 3, 2014) ...................................25

*Nellis v. Shugrue*,
  165 B.R. 115 (S.D.N.Y. 1994) .................................................................................24

*In re Pac. Gas & Elec. Co.*,
  304 B.R. 395 (Bankr. N.D. Cal. 2004) .............................................................23, 24

*In re Pac. Gas & Elec. Co.*,
  Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) ............................21, 24

*In re Planned Prot. Servs., Inc.*,
  130 B.R. 94 (Bankr. C.D. Cal. 1991) .......................................................................24

*Port O'Call Invest. Co. v. Blair (In re Blair)*,
  538 F.2d 849 (9th Cir. 1976) ...................................................................................24

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ...........................................................................................23, 24

*In re Residential Capital, LLC*,
  2013 Bankr. LEXIS 2601 (Bankr. S.D.N.Y. Jun. 27, 2013) ............................. 24-25

*In re TK Holdings Inc.*,
  Case No. 17-11375 (BLS) (Bankr. D. Del. Dec. 13, 2017) .......................................21

*In re Tronox Inc.*,
  Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Dec. 23, 2009) ..................................21

*In re Walter*,
  83 B.R. 14 (B.A.P. 9th Cir. 1988) .............................................................................20

**Statutes**

11 U.S.C. § 105(a) ...................................................................................................9, 20, 21, 27

11 U.S.C. § 107(b) ...................................................................................................................9

11 U.S.C. § 363(b) ...................................................................................................20, 21, 25, 27

11 U.S.C. § 1107(a) .................................................................................................................10

11 U.S.C. § 1108 .....................................................................................................................10

28 U.S.C. § 157 .......................................................................................................................10

28 U.S.C. § 1334 .....................................................................................................................10

28 U.S.C. § 1408 .....................................................................................................................10

28 U.S.C. § 1409 .....................................................................................................................10

**Rules**

B.L.R. 5011-1(a) ....................................................................................................................10

Fed. R. Bankr. P. 1015(b) ........................................................................................................10

Fed. R. Bankr. P. 2002 ............................................................................................................26

Fed. R. Bankr. P. 9018 ............................................................................................................10

Fed. R. Bankr. P. 9019 .............................................................................................23, 24, 25, 27

**Other Authorities**

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 ....10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT[1]

On the heels of this Court's recent approval of two critically important settlements that the Debtors previously secured with key wildfire constituents, the Debtors have now built a comprehensive consensus around their Amended Plan (as defined below) by accomplishing another major achievement: a settlement with key members of the Ad Hoc Committee of Senior Unsecured Noteholders of the Utility (the "**Ad Hoc Noteholder Committee**") regarding all issues relating to the treatment of the Utility's prepetition funded debt under the Debtors' Amended Plan. Among other significant benefits of the settlement, which are discussed further below, the Debtors' cost of long-term borrowing will be reduced by over $1 billion, which will benefit ratepayers and all stakeholders. In addition, pursuant to the Noteholder RSA, the Ad Hoc Noteholder Committee will withdraw its Alternative Plan upon the entry of an order approving the Noteholder RSA, allowing all constituencies in these cases to work collaboratively toward the all-important goal of timely confirming a plan that will allow PG&E to expeditiously compensate wildfire victims and emerge as a healthy company best-positioned to provide the safe, reliable service that its customers and communities expect and deserve.

The Noteholder RSA is the product of extensive, good faith, arm's-length negotiations. Pursuant to the Noteholder RSA, the Debtors, the Shareholder Proponents, and the Consenting Noteholders (comprised of all noteholders who executed commitment letters in support of the Alternative Plan proposed by the Ad Hoc Noteholder Committee) have agreed to a global resolution of *all* issues relating to the Amended Plan's treatment of the Utility's prepetition funded debt, including the disputes between the parties regarding the appropriate rate of postpetition interest and entitlement to claims for make-whole premiums, which together implicate over $5 billion in potential claims. The Debtors will further amend their Plan to reflect the settlement embodied in the Noteholder RSA (such plan, the "**Amended Plan**") not later than February 1, 2020. The

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to them in the Noteholder RSA (including Exhibit A annexed thereto) or the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated December 12, 2019* (the "**Plan**"), as applicable.

Amended Plan will provide that holders of the Utility's prepetition funded debt claims shall have their claims satisfied through a combination of:

- Issuance of new senior secured notes in satisfaction of the principal amount of existing high-coupon, long-term senior notes, near-term senior notes, and funded bank debt (including revolving loans, term loans, and pollution control bonds) and the payment of prepetition interest at the contract rate and postpetition interest at the Federal Judgment Rate in cash;

- Reinstatement of existing low-coupon long-term senior notes; and

- Payment of $63 million in debt placement fees and reimbursement of up to $36 million in professionals' fees and expenses.[2]

In addition, pursuant to the Noteholder RSA, the Debtors have agreed to use their best efforts to provide certain Consenting Noteholders an opportunity to participate in up to $2.0 billion of the $12.0 billion equity backstop.

Notably, as a result of the settlement and the new financings embodied therein, the Debtors will reduce the weighted average cost of debt on their prepetition funded debt from approximately 4.28% to approximately 4.10% and reduce the cost of the Utility's long-term debt by over $1 billion—savings that will benefit the Utility's customers and all stakeholders.

Furthermore, the settlement reflected in the Noteholder RSA provides the Debtors certainty regarding their cost of capital for almost 80% of the Utility debt financing needed to fund the Debtors' emergence from chapter 11. This certainty, in turn, benefits the Debtors by facilitating access to the capital markets for placing the incremental $5.825 billion in new Utility debt contemplated under the Amended Plan.

The Noteholder RSA further provides all parties in these Chapter 11 Cases greater certainty through its resolution of several major disputes between the Debtors and the Ad Hoc Noteholder Committee. Importantly, the Noteholder RSA:

- Requires all Consenting Noteholders to vote all of their Claims against and Interests in the Debtors to accept the Amended Plan;

- Eliminates the competing plan process before both this Court and the CPUC by requiring the Ad Hoc Noteholder Committee to withdraw its Alternative Plan within

---

[2] The expense reimbursement is limited to Consenting Noteholders that have incurred professional fees as a member of the Ad Hoc Noteholder Committee.

one (1) business day after entry of an order approving the Noteholder RSA and withdraw its participation in proceedings before the CPUC that involve the Debtors;

- Resolves the Consenting Noteholders' opposition to the Debtors' Exit Financing Motion[3] by requiring each Consenting Noteholder to withdraw all discovery requests, file a statement in support of the Debtors' Exit Financing Motion, and oppose any and all efforts and procedures to object to, undermine, or delay approval of the relief sought by the Exit Financing Motion;

- Suspends the Ad Hoc Noteholder Committee's Reconsideration Motion for the duration of the Support Period, and requires each Consenting Noteholder to oppose any and all efforts and procedures to terminate, vacate or modify the Tort Claimants RSA, Subrogation Claims RSA, or the Public Entities Plan Support Agreements, and, upon the effective date of the Amended Plan, withdraw with prejudice the Reconsideration Motion; and

- Precludes the Consenting Noteholders from taking any action to impede or interfere with approval of the Disclosure Statement with respect to the Amended Plan or confirmation or implementation of the Amended Plan.

In connection with the parties' entry into and execution of the Noteholder RSA, the Debtors, the Shareholder Proponents, and certain of the Consenting Noteholders (the "**Specified Consenting Noteholders**") simultaneously entered into the Noteholder RSA Letter Agreement, which sets forth certain sensitive and confidential terms with respect to the parties' commitments regarding public and private communications about the Amended Plan, the Alternative Plan, and the Debtors' reorganization. A breach of any of the agreements set forth in the Noteholder RSA Letter Agreement constitutes a material breach of the Noteholder RSA. The terms of the Noteholder RSA Letter Agreement are non-economic and do not impact or concern distributions to the Consenting Noteholders, the Specified Consenting Noteholders, or any other creditors or interest holders under the Debtors' Amended Plan, and do not impact any other substantive provision of the Debtors' Amended Plan.[4]

---

[3] The Debtors anticipate further amending the relief sought in the Exit Financing Motion [Docket No. 4446] to reduce the amount of Utility debt financing commitments contemplated under the terms of the Amended Plan.

[4] These commitments and undertakings are highly sensitive to the Specified Consenting Noteholders and, therefore, the parties to the Noteholder RSA have agreed to keep the terms of the Noteholder RSA Letter Agreement strictly confidential and to seek to file the Noteholder RSA Letter Agreement under seal as set forth in the Debtors' *Motion Pursuant to 11 U.S.C. §§ 105(a) and 107(b) and Fed. R. Bankr. P. 9018 for Entry of an Order Authorizing the Sealing of the Noteholder RSA Letter Agreement*.

By resolving all these issues, the Noteholder RSA streamlines the Debtors' path toward timely confirmation of the Amended Plan well within the June 30, 2020 deadline established by AB 1054, expedites distributions to holders of Fire Victim Claims, and allows the Debtors to emerge as a stronger, more financially sound utility.

The Noteholder RSA represents a significant breakthrough in these Chapter 11 Cases, and for these reasons and as further demonstrated below, the Debtors' entry into the Noteholder RSA is a sound exercise of business judgment and easily satisfies all the standards and requirements for approval under the Bankruptcy Code. Accordingly, the Noteholder RSA should be approved.

## II. JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

On January 29, 2019, the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed the Official Committee of Tort Claimants (the "**TCC**" and together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth

in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells First Day Declaration**").

A.     **The Ad Hoc Noteholder Committee's Alternative Plan and Reconsideration Motion**

On October 9, 2019, this Court entered an order terminating exclusivity to allow the Ad Hoc Noteholder Committee and the TCC to file a competing plan of confirmation [Docket No. 4167]. On October 17, 2019, the Ad Hoc Noteholder Committee and the TCC filed the *Joint Chapter 11 Plan of Reorganization of Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders* [Docket No. 4257] (as amended, the "**Alternative Plan**").

On December 19, 2019, the Court entered orders (the "**RSA Approval Orders**") approving the Debtors' entry into a Restructuring Support Agreement with the Consenting Subrogation Claimholders and separately with, among others, the TCC and the lawyers representing over 70% of individuals holding Fire Victim Claims, pursuant to which those parties agreed to support the Debtors' Amended Plan and the TCC withdrew as a co-plan proponent of the Alternative Plan.

On December 31, 2019, the Ad Hoc Noteholder Committee filed a Motion to Reconsider the RSA Approval Orders (the "**Reconsideration Motion**") and to vacate those Orders in their entirety or condition approval on removing the provisions requiring the parties to support the Debtors' Amended Plan.  The Debtors, the Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**"), and the Shareholder Proponents filed pleadings in opposition to the Reconsideration Motion.

B.     **The Make-Whole Premium and Postpetition Interest Disputes**

On October 31, 2019, the Bankruptcy Court entered an order [Docket No. 4540] (the "**Pre-Confirmation Scheduling Order**") establishing briefing and hearing schedules for several key issues related to plan confirmation, including (i) the appropriate postpetition interest rate for unsecured claims in a solvent debtor case, and (ii) whether holders of the Utility Senior Notes (as defined in the Plan) are entitled to Allowed Claims for make-whole premiums or similar amounts.

On December 30, 2019, following briefing and oral argument on the issue, this Court issued a memorandum decision holding that postpetition interest in these Chapter 11 Cases was to be paid

at the Federal Judgment Rate [Docket No. 5226]. With respect to the claims for make-whole premiums, the parties have fully briefed the issue in accordance with the Pre-Confirmation Scheduling Order and oral argument was scheduled for January 29, 2020.

## IV. MATERIAL TERMS OF THE NOTEHOLDER RSA

The settlement with the Consenting Noteholders, as provided in the Noteholder RSA, regarding the treatment of the Utility's prepetition funded debt will be reflected in and effectuated through the Amended Plan to be filed by the Debtors.

The following is a summary of the salient terms of the Noteholder RSA:[5]

| Parties to the Noteholder RSA | (i) the Debtors; (ii) the Shareholder Proponents; and (iii) the noteholders that have, as of the date of this filing, executed the Noteholder RSA, including Apollo Global Management LLC, Elliott Management Corporation, Oaktree Capital Management L.P., Farallon Capital Management LLC, Capital Group, Värde Partners Inc., Davidson Kempner Capital Management LP, Canyon Capital Advisors LLC, Third Point LLC, Pacific Investment Management Company LLC, Citadel Equity Fund Ltd., and Sculptor Capital Investments, LLC, and the funds and accounts managed by them or that hold Utility funded debt claims (collectively, the "**Consenting Noteholders**").[6] |
|---|---|
| **Classification and Treatment of the Utility Funded Debt Claims under Amended Plan** | The Noteholder RSA reflects a settlement whereby the claims arising from the Utility's prepetition funded debt shall be classified into four different classes of Claims under the Debtors' Amended Plan, each to be provided their own treatment: |
| | **Utility Impaired Senior Note Claims**<br>• Comprised of Claims arising from the 6.05% Senior Notes due March 1, 2034, the 5.8% Senior Notes due March 1, 2037, the 6.35% Senior Notes due February 15, 2038, the 6.25% Senior Notes due March 1, 2039, the 5.4% Senior Notes due January 15, 2040, and the 5.125% Senior Notes due November 15, 2043.<br>• **Treatment**: On the Effective Date, holders of Utility Impaired Senior Note Claims will receive:<br>    ○ cash equal to the sum of (i) the prepetition accrued interest calculated using the applicable non-default contract rate on the outstanding principal amount of such notes as of the Petition Date, and (ii) interest at the Federal Judgment Rate on the outstanding principal and prepetition accrued interest |

---

[5] This summary is qualified in its entirety by reference to the provisions of the Noteholder RSA. To the extent that any discrepancies exist between the summary described in this Noteholder RSA Motion and the terms of the Noteholder RSA, the Noteholder RSA shall govern.

[6] The list of Consenting Noteholders is current as of the Agreement Effective Date.

amounts on such notes for the period commencing on the day after the Petition Date and ending on the Effective Date;

- o New Utility Long-Term Notes: equal amounts of the following New Utility Long-Term Notes equal to the Utility Impaired Senior Note Claim Principal Amount:
  - $3.1 billion in senior secured 4.55% Notes due in 2030
  - $3.1 billion in senior secured 4.95% Notes due in 2050.
- **Voting**: The Utility Impaired Senior Note Claims are impaired and holders of Utility Impaired Senior Claims are entitled to vote to accept or reject the Debtors' Amended Plan.

**Utility Short-Term Senior Note Claims**

- Comprised of Claims arising from the 3.5% Senior Notes due October 1, 2020, the 4.25% Senior Notes due May 15, 2021, the 3.25% Senior Notes due September 15, 2021, and the 2.45% Senior Notes due August 15, 2022.
- **Treatment**: On the Effective Date, holders of Utility Short-Term Senior Note Claims shall receive:
  - o cash equal to the sum of (i) the prepetition accrued interest calculated using the applicable non-default contract rate on the outstanding principal amount of such notes as of the Petition Date, and (ii) interest at the Federal Judgment Rate on the outstanding principal and prepetition accrued interest amounts on such notes for the period commencing on the day after the Petition Date and ending on the Effective Date;
  - o New Utility Short-Term Notes: equal amounts of the following New Utility Short-Term Notes equal to the Utility Short-Term Senior Note Claim Principal Amount:
    - $875 million in senior secured 3.45% Notes due in 2025
    - $875 million in senior secured 3.75% Notes due in 2028.
- **Voting**: The Utility Short-Term Senior Note Claims are impaired and holders of Utility Short-Term Senior Note Claims are entitled to vote to accept or reject the Debtors' Amended Plan.

**Utility Reinstated Senior Note Claims**

- Comprised of Claims arising from all bonds issued by the Utility that will not have matured in accordance with their terms as of September 30, 2020 and are not Utility Impaired Senior Note Claims or Utility Short-Term Senior Note Claims.
- **Treatment**: On the Effective Date, each holder of a Utility Reinstated Senior Note Claim shall have such claim reinstated. All obligations related to the Utility Reinstated Senior Note Documents shall be secured on the Effective Date pursuant to the equal and ratable clauses in the applicable indentures to the same extent and

against the same collateral as granted to new indebtedness issued by the Utility pursuant to the Amended Plan.
- **Voting**: The Utility Reinstated Senior Note Claims are unimpaired and holders of Utility Reinstated Senior Note Claims are presumed to accept the Debtors' Amended Plan.

### Utility Funded Debt Claims
- Comprised of Claims arising from the Utility Revolver Documents, the Utility Term Loan Documents, and the PC Bond Documents.[7]
- **Treatment**: On the Effective Date, holders of Utility Funded Debt Claims shall receive:
  - cash equal to (i) the prepetition accrued interest calculated using the applicable non-default contract rate on the outstanding principal amount of such debt (which includes the PC Bond Loan Documents and PC Bond LOC Documents[8]) as of the Petition Date, (ii) reasonable fees and charges and other obligations owed as of the Petition Date to the extent provided in the applicable Utility Funded Debt Document, (iii) reasonable attorneys' fees and expenses of counsel to the agents and certain lenders under the Utility Revolver Documents and Utility Term Loan Documents and certain holders of claims under PC Bond LOC documents solely to the extent provided in the applicable Utility Funded Debt Document, not to exceed $7 million in the aggregate, and (iv) postpetition accrued interest at the Federal Judgment Rate on the outstanding principal plus the amounts in clauses (i) and (ii) for the period commencing on the day after the Petition Date (or with respect to a Utility Funded Debt Claim based upon a PC Bond LOC Document, the later of the day after the Petition Date and the date on which such reimbursement obligation was actually paid) and ending on the Effective Date;
  - New Utility Funded Debt Exchange Notes: equal amounts of the following New Utility Funded Debt Exchange Notes equal to the Utility Funded Debt Claim Principal Amount:
    - $1,999 million in senior secured 3.15% Notes due on the 66 month anniversary of the Effective Date
    - $1,999 million in senior secured 4.50% Notes due in 2040.
  - On the Effective Date, any outstanding Utility Letters of Credit shall be replaced, returned, or collateralized as applicable.

---

[7] Approximately $100 million of the Claims arising under the PC Bond Documents are in the form of tax exempt bonds. The Amended Plan will be further amended to treat these Claims separately from the other Claims arising under the PC Bond Documents.

[8] The principal amount under a PC Bond LOC Document consists of the reimbursement obligation actually paid under such PC Bond LOC Document.

| | |
|---|---|
| | • **Voting**: The Utility Funded Debt Claims are impaired and holders of Utility Funded Debt Claims are entitled to vote to accept or reject the Debtors' Amended Plan. |
| **Backstop Commitment Letters** | The Debtors shall use their best efforts, which shall not require the Debtors to pay any consideration, breach any obligations, or otherwise violate the terms of any Backstop Commitment Letter, to cause various Backstop Parties to transfer to Consenting Noteholders that were parties to the AHC Commitment Letter and any Consenting Noteholders that were offered the opportunity to participate in any subsequent commitment in connection with the Alternative Plan, their rights and obligations under applicable Backstop Commitment Letters relating to up to $2 billion of commitments. |
| **Support for Debtors' Amended Plan and Withdrawal of Alternative Plan** | Each Consenting Noteholder agrees to:<br>• Upon entry of an order approving the Noteholder RSA (the "**RSA Approval Order**"), withdraw any participation in and support for the Alternative Plan;<br>• After the Agreement Effective Date, direct counsel for the Ad Hoc Noteholder Committee to file a notice of withdrawal of the Alternative Plan within one (1) business day of the entry of an RSA Approval Order;<br>• Subject to the receipt by such Consenting Noteholder of the Disclosure Statement, as approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code, and other solicitation materials in respect of the Amended Plan, vote or cause to be voted all of its Claims against and Interests in the Debtors to accept the Debtors' Amended Plan;<br>• Act in good faith and take (and cause its agents, representatives and employees to take) all actions as may be requested by the Debtors or the Shareholder Proponents that are reasonably necessary or appropriate and all actions required by the Bankruptcy Court to support and achieve confirmation of the Amended Plan and consummation of all transactions and implementation steps provided for or contemplated in the Noteholder RSA and the Amended Plan; and<br>• Not object to, delay, impede, or take any other action to interfere with approval of the Disclosure Statement, solicitation of votes to accept the Debtors' Amended Plan, confirmation, or implementation of the Debtors' Amended Plan.<br>• Not solicit approval or acceptance of, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout, or plan of reorganization for the Debtors other than the Amended Plan, including the Alternative Plan or any other plan of reorganization, or propose or provide financing for any restructuring, sale of assets, merger, workout, or plan of reorganization for the Debtors (other than as expressly authorized in writing by any Plan Proponent). |

| | |
|---|---|
| **Exit Financing Motion** | Each Consenting Noteholder agrees to immediately withdraw all discovery issued in connection with the Exit Financing Motion, file a statement (in form and substance reasonably satisfactory to the Debtors) supporting the relief requested in the Exit Financing Motion, and oppose any and all efforts to object to or undermine or delay the relief sought therein. |
| **Reconsideration Motion Suspended Pending Effective Date of Debtors' Amended Plan** | Each Consenting Noteholder agrees to:<br>• Immediately direct counsel for the Ad Hoc Noteholder Committee to suspend the Reconsideration Motion for the duration of the Support Period and, upon the Effective Date, withdraw the Reconsideration Motion with prejudice; and<br>• Oppose any and all efforts to terminate, vacate, or modify the Tort Claimants RSA, the Subrogation Claims RSA, or the Public Entities Plan Support Agreements. |
| **Plan Confirmation Related Disputes** | The Consenting Noteholders agree to take the following actions with respect to the make-whole premium and postpetition interest disputes:<br><br>**Make-Whole Premiums**<br>Promptly after the Agreement Effective Date, direct their counsel and direct each Utility Senior Note Indenture Trustee (for which they hold the requisite amount of notes to issue such direction) to request the Bankruptcy Court hold in abeyance any decision on the make-whole issues during the Support Period, provided, that such direction to a Utility Senior Note Indenture Trustee shall not be required in the event that such Utility Senior Note Indenture Trustee agrees in writing to take such action.<br><br>**Postpetition Interest**<br>Promptly after the Agreement Effective Date, direct their counsel and direct each Utility Senior Note Indenture Trustee (for which they hold the requisite amount of notes to issue such direction) to consent to deferral of the entry of a final order on the Bankruptcy Court's decision on the postpetition interest issues to the entry of the Confirmation Order. |
| **Other Key Commitments of the Consenting Noteholders** | • Immediately file motion(s) for leave to withdraw all filings submitted in any proceeding before the CPUC involving the Debtors and cease participation in any proceeding before the CPUC involving the Debtors, other than observing as a party in interest, and diligently prosecute such motion(s).<br>• Not submit or file any pleading in the Chapter 11 Cases or any proceeding before the CPUC or FERC involving the Debtors unless such submission has been previously authorized in writing by counsel to the Debtors and counsel to the Shareholder Proponents, other than a filing required by a Consenting Noteholder to enforce its rights (A) under the Noteholder RSA, and (B) with respect to the liquidation and/or allowance of a General Unsecured Claim or Fire Victim Claim in the Chapter 11 Cases.<br>• Not file, publish, circulate or otherwise distribute any pleading or make, issue, publish, or communicate any critical, disparaging, |

| | | |
|---|---|---|
| | | derogatory, defamatory, or negative statement to anyone relating to the Debtors, a Shareholder Proponent (only with respect to a Shareholder Proponent in the context of the Debtors and their affairs), the Noteholder RSA, the Amended Plan, the Alternative Plan, the Tort Claimants RSA, the Subrogation Claims RSA, the Public Entities Plan Support Agreements, and the Exit Financing Motion without prior written authorization from counsel to the Debtors and counsel to the Shareholder Proponents. |
| **Key Commitments of the Debtors and Shareholder Proponents** | | • File a motion seeking approval of the Noteholder RSA and entry of the RSA Approval Order not later than three business days after the Agreement Effective Date,[9] and use commercially reasonable efforts to obtain entry of the RSA Approval Order, including requesting an order shortening time to hold a hearing on this motion no later than February 5, 2020.<br>• Use commercially reasonable efforts to file the Debtors' Amended Plan no later than February 1, 2020.<br>• Use commercially reasonable efforts to obtain confirmation of the Amended Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and the Bankruptcy Rules and on terms consistent with the Noteholder RSA.<br>• Not ask the Court to reinstate the Debtors' exclusive periods to file and solicit a plan of reorganization, provided that the Debtors may seek to extend current exclusive periods for plans with respect to which the Debtors are a proponent (but excluding a reinstatement of the exclusive periods with respect to the Ad Hoc Noteholder Committee).<br>• On the Effective Date, so long as the Noteholder RSA has not been terminated, (i) pay each Consenting Noteholder that holds Utility Impaired Senior Notes and has executed the Noteholder RSA prior to entry of the RSA Approval Order and remains a party to the Noteholder RSA as of the Effective Date, its pro rata share of a $63 million underwriting fee, and (ii) pay each Consenting Noteholder that has incurred professional fees as a member of the Ad Hoc Noteholder Committee, the lesser of (A) the amount of professional fees and expenses it has incurred as a member of the Ad Hoc Noteholder Committee or (B) its pro rata share of the Expense Reimbursement Cap not to exceed $36 million based upon the amount of professional fees actually paid by such Consenting Noteholder as of the Effective Date.<br>• Not file, publish, circulate or otherwise distribute any pleading or make, issue, publish, or communicate any critical, disparaging, derogatory, defamatory, or negative statement to anyone relating to the Noteholder RSA, the Amended Plan or any Consenting Noteholder (only with respect to a Consenting Noteholder in the context of the Debtors and their affairs) without prior written authorization from counsel to the Ad Hoc Noteholder Committee. |

---

[9] The filing of this Motion satisfies this requirement.

| | |
|---|---|
| | • Not propose, pursue, or support any other plan or confirmation order that does not incorporate the treatment for the Utility Senior Note Claims as provided in the Noteholder RSA. |
| | • Not propose, support, solicit, encourage, or participate in any chapter 11 plan or settlement of the Utility Senior Note Claims other than as set forth in the Noteholder RSA. |
| **Termination Rights** | **Automatic Termination**<br>The Noteholder RSA terminates automatically if the Effective Date of the Amended Plan does not occur on or prior to (i) September 30, 2020 or (ii) such later date approved by the Bankruptcy Court but in no event later than December 31, 2020.<br><br>**Plan Proponent Termination Rights**<br>The Debtors or the Shareholder Proponents may terminate the Noteholder RSA if, among other things:<br>• The Consenting Noteholders do not hold, in the aggregate, more than 66.7% of the aggregate principal amount of Utility Impaired Senior Note Claims and 66.7% of the aggregate principal amount of Utility Short-Term Senior Note Claims, in each case, by 5:00 p.m. PT on January 28, 2020;<br>• Any Consenting Noteholder materially breaches the provisions of the Noteholder RSA;<br>• The issuance, promulgation, or enactment by any governmental entity, including any regulatory or licensing authority or court of competent jurisdiction (including, without limitation, an order of the Bankruptcy Court which has not been stayed) of any statute, regulation, ruling or order declaring the Amended Plan or any material portion thereof (in each case, to the extent it relates to the terms of the Noteholder RSA) to be unenforceable or enjoining or otherwise restricting the consummation of any such material portion of the Amended Plan, and such ruling, judgment, or order has not been stayed, reversed, or vacated within 15 calendar days after issuance;<br>• A trustee under section 1104 of the Bankruptcy Code or an examiner with expanded powers shall have been appointed in the Chapter 11 Cases; or<br>• An order for relief under chapter 7 of the Bankruptcy Code shall have been entered in the Chapter 11 Cases, or the Chapter 11 Cases shall have been dismissed, in each case by order of the Bankruptcy Court.<br><br>**Consenting Noteholder Termination Rights**<br>A majority of the Consenting Noteholders may terminate the Noteholder RSA if:<br>• The treatment of any Utility Senior Note Claim or Utility Funded Debt Claim in the Amended Plan is, or is modified to be, inconsistent in any material respect with the terms of the |

Noteholder RSA and the Term Sheet (it being acknowledged that any change to the interest rate, maturity or security with respect to the New Utility Funded Debt Exchange Notes, the New Utility Long-Term Notes or the New Utility Short-Term Notes, the payment of the Underwriting Fee and the Expense Reimbursement Cap, and the payment of other reasonable fees and expenses to the extent provided in the Noteholder RSA or the Term Sheet shall be deemed material);

- Backstop Commitment Letters representing a majority of the Aggregate Backstop Commitment Amount outstanding are terminated;
- An order confirming the Amended Plan is not entered on or before June 30, 2020;
- The Debtors fail to achieve an investment grade rating on the New
- Utility Funded Debt Exchange Notes, the New Utility Long-Term Notes, the New Utility Short-Term Notes and the notes related to the Utility Reinstated Senior Note Claims from at least one of Standard & Poor's or Moody's on the Effective Date;
- The Debtors or the Shareholder Proponents breach any of their material obligations, representations, warranties, or covenants set forth in the Noteholder RSA;
- The issuance of a preliminary or permanent injunction by a court of competent jurisdiction (including, without limitation, an order of the Bankruptcy Court which has not been stayed) declaring the Amended Plan or any material portion thereof (in each case, to the extent it relates to the terms of the Noteholder RSA) to be unenforceable or otherwise restricting the consummation of any such material portion of the Amended Plan, and such ruling, judgment, or order has not been stayed, reversed, or vacated within 15 calendar days after issuance;
- A final and non-appealable order has been entered by the Bankruptcy OII that rejects the Amended Plan;
- The Bankruptcy Court has entered a final and non-appealable order authorizing a sale of the Debtors' gas and electric assets to the State of California or its designee;
- The CPUC has revoked or terminated the Utility's Certificate of Public Convenience and Necessity;
- A trustee under section 1104 of the Bankruptcy Code or an examiner with expanded powers shall have been appointed in the Chapter 11 Cases; or
- An order for relief under chapter 7 of the Bankruptcy Code shall have been entered in the Chapter 11 Cases, or the Chapter 11 Cases shall have been dismissed, in each case by order of the Bankruptcy Court.

## V. BASIS FOR RELIEF REQUESTED

### A. The Noteholder RSA Represents a Substantial Achievement and Milestone in the Chapter 11 Cases, Is a Sound Exercise of the Debtors' Business Judgment, and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code.

The Noteholder RSA encompasses a comprehensive settlement that resolves all disputes between the Debtors and the Consenting Noteholders, including the treatment of over $21 billion in prepetition Utility funded debt and disputed claims of over $5 billion for postpetition interest and make-whole premiums, while reducing the Debtors' cost of long-term borrowing by over $1 billion on a net present value basis. The Noteholder RSA coalesces support of all constituencies in these Chapter 11 Cases around one plan, the Debtors' Amended Plan, which will smooth the path toward a timely and successful resolution of these Chapter 11 Cases and will expedite payment of Fire Victim Claims.

The Court may approve, and authorize the Debtors to enter into and perform under, the Noteholder RSA pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the relief requested herein. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification."); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions

(as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief, that the action was in the best interest of the company. *In re Integrated Resources, Inc*., 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re AWTR Liquidation Inc.,* 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) (referencing the Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C); *In re Johns-Manville Corp.*, 60 B.R. at 615–16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Thus, if, as they clearly do here, a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

Courts—including this Court in entering the RSA Approval Orders with respect to the Subrogation Claims RSA and the Tort Claimants RSA—have relied on both sections 363(b) and 105(a) when approving plan support agreements such as the Noteholder RSA, routinely finding that such relief is entirely consistent with the applicable provisions of the Bankruptcy Code. *See also, e.g., In re Pac. Gas & Elec. Co.*, Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) [Docket No. 5558] (order approving proposed settlement of approximately $2 billion in asserted unsecured claims against the debtor as part of plan support agreement under sections 363(b) and 105(a) of the Bankruptcy Code; *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Dec. 13, 2017) [Docket No. 1359] (order approving postpetition plan support agreement pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *see also In re Exide Techs*, Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015) [Docket No. 3087] (order authorizing debtor to enter into plan support agreement pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Dec. 23, 2009) [Docket No. 1030] (same).

The Noteholder RSA is the product of substantial arm's-length, good faith negotiations among sophisticated and well-represented parties. It further paves the way for the expeditious confirmation of the Debtors' Amended Plan well within the AB 1054 June 30, 2020 deadline. And

with the Noteholder RSA, combined with the Public Entities Plan Support Agreements, the Subrogation Claims RSA, and the Tort Claimants RSA, the Debtors have now achieved a global consensus behind one plan, the Debtors' Amended Plan.

The Noteholder RSA also eliminates the ongoing disputes related to the Debtors' Amended Plan, including over the appropriate rate of postpetition interest, entitlement to make-whole premiums, the Reconsideration Motion, and certain objections to the Exit Financing Motion.

In addition, the Noteholder RSA provides the Debtors with favorable financing upon emergence. As a result of the Noteholder RSA, the Debtors will refinance a significant portion of the prepetition Utility debt in their Amended Plan with notes that have a weighted average interest rate of approximately 4.10%, well below the prepetition rates. The new notes that will be issued under the Amended Plan also aid in obtaining competitive interest rates on the incremental Utility debt to be issued to fund the Debtors' emergence from chapter 11.

The Debtors also will save a net present value of over $1 billion of interest on long-term debt, savings which will benefit the Debtors' customers and stakeholders. Additionally, because the Debtors are able to refinance or reinstate notes equal to nearly 80% of the anticipated Utility funding needed to finance the Debtors' emergence from these Chapter 11 Cases, the Debtors will only need bridge financing for $5.825 billion of Utility debt, instead of $27.35 billion, thereby saving fees on the bridge and exit financing facilities.

After assessing and, with the assistance of counsel, fully evaluating all aspects of the Noteholder RSA, including the substantial economic and plan process benefits attendant thereto as described herein, the Debtors concluded that entry into the Noteholder RSA is in the best interests of the Debtors and their estates. The Debtors' Boards of Directors were provided with regular updates on the negotiations leading to the execution of the Noteholder RSA and have been fully advised and briefed by management and retained professionals as to its terms and provisions and its impact on the administration of these Chapter 11 Cases.

In view of all the benefits described above, and, in particular, the global consensus that has now been achieved, the Debtors believe entry into the Noteholder RSA is fair and reasonable and represents a sound exercise of the Debtors' business judgment.

**B.      Entry into the Noteholder RSA is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019.**

Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement."  Fed. R. Bankr. P. 9019(a).  This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).  Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation over contentious issues and expedite the administration of the bankruptcy estate.  *See Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986).  The decision to approve a particular compromise lies within the sound discretion of the Court.  *See In re A&C Props.*, 784 at 1380.  A proposed compromise and settlement should be approved when it is "fair and equitable" and "in the best interest of the [debtor's] estate." *Id.* at 1381.  The court must apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

Courts in this jurisdiction typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties, if any, to be encountered in the matter of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (iv) the paramount interest of the creditors and the proper deference to their reasonable views.  *A&C Props.*, 784 F.2d at 1380.  It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, the conclusions must favor the approval of the settlement.  *See In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

The standard for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below

the lowest point in the range of reasonableness in terms of benefits to the estate.  *See City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim;" rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness.") (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.)); *see also, In re Pac. Gas & Elec. Co.*, 304 B.R. at 417; *In re Planned Prot. Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) (same).

While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851-52 (9th Cir. 1976), or conduct a full independent investigation.  *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505; *see also In re Pac. Gas & Elec. Co.*, 304 B.R. at 417.  As one court explained in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate."  *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) (emphasis added).

Many courts have approved support agreements similar to the Noteholder RSA under Bankruptcy Rule 9019.  *See, e.g., In re Pac. Gas & Elec. Co.*, Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) [Docket No. 5558] (approving a settlement, as part of plan support agreement with senior debtholders, pursuant to Bankruptcy Rule 9019); *Energy Future Holdings Corp. v. Del. Trust Co.*, 648 F. App'x 277, 285 (3d Cir. 2016) (affirming approval under Bankruptcy Rule 9019 of holistic settlement of secured creditors' claims); *In re Residential Capital, LLC*, 2013 Bankr. LEXIS 2601 (Bankr. S.D.N.Y. Jun. 27, 2013) (order approving plan support agreement

under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019); *In re CHC Grp. Ltd.*, Case No. 16-31854 (BJH) (Bankr. N.D. Tex. Dec. 20, 2016) [Docket No. 1381] (order approving plan support agreement under Bankruptcy Rule 9019); *In re Federal-Mogul Global Inc.*, Case No. 01-10578 (JFK) (Bankr. D. Del. Feb. 7, 2007) [Docket No. 11508] (same); *In re Fiddler's Creek, LLC*, Case No. 10-3846 (CPM) (Bankr. M.D. Fla. Feb. 25, 2011) [Docket No. 702] (order approving plan support agreement and related settlement under Bankruptcy Rule 9019); *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Oct. 3, 2014) [Docket No. 165] (approving a restructuring support agreement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019); *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 467 (2d Cir. 2007) (approving settlement of lien challenge and claims of secured creditors pursuant to Bankruptcy Rule 9019 as it "cleared the way for implementation of a reorganization plan.").

As demonstrated above, the terms of the Noteholder RSA are fair and reasonable and in the best interest of the Debtors, their estates, creditors, shareholders, and other stakeholders, and should be approved. Entry into the Noteholder RSA streamlines the path to confirmation and the Debtors' successful emergence from these Chapter 11 Cases, ensures expeditious distributions to holders of Fire Victim Claims, and adds stability to the Debtors' capital structure upon emergence. The Noteholder RSA is the result of good faith, arm's-length negotiations among sophisticated principals and competent and experienced retained professionals who effectively and efficiently represented the interests of their respective clients.

Further, as stated, the Noteholder RSA eliminates the costs and risks associated with the ongoing disputes over treatment of the Utility Senior Note Claims and Utility Funded Debt under the Debtors' Amended Plan. Courts have routinely acknowledged that uncertainty of litigation and federal policy weigh in favor of approval of settlements. *See In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9-10 (Bankr. D.P.R. Mar. 31, 2009) ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily in favor of the approval of the Settlement Agreement."); *In re Manuel Mediavilla, Inc.*, 568 B.R. 551,

567 (B.A.P. 1st Cir. 2017) (recognizing "federal policy encouraging settlement of bankruptcy litigation.").

Lastly, the Noteholder RSA clearly is in the best interests of all creditors and stakeholders. As stated, with the Noteholder RSA, the Debtors have achieved a global consensus for their Amended Plan that will expedite the timely and successful conclusion of these Chapter 11 Cases. These factors, along with those discussed above, easily favor finding the compromise embodied in the Noteholder RSA is fair and reasonable and in the best interests of the Debtors and their estates, creditors, shareholders, and all other parties in interest.

### C.    Conclusion

The Debtors have achieved yet another major milestone in their Chapter 11 Cases.  After settling with all wildfire claimant constituencies, the Debtors have now resolved all disputes with the Ad Hoc Noteholder Committee.  The Noteholder RSA eliminates the Alternative Plan, results in the support of all constituencies in these cases for the Debtors' Amended Plan, and will ensure the successful resolution of these Chapter 11 Cases well within the June 30, 2020 deadline, and the expeditious resolution of Fire Victim Claims.  The Noteholder RSA should be approved.

## VI.    NOTICE

Notice of this Noteholder RSA Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the TCC; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) counsel for the Ad Hoc Noteholder Committee; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment, appropriate under section 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) the Debtors such other and further relief as the Court may deem just and appropriate.

Dated: January 27, 2020

WEIL, GOTSHAL & MANGES LLP

KELLER & BENVENUTTI LLP

By: /s/ Jessica Liou
        Jessica Liou

*Attorneys for Debtors and Debtors in Possession*