| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF JASON P. WELLS IN SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH CONSENTING NOTEHOLDERS AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF**<br><br>Date: February 4, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court,<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Proposed Objection Deadline**: January 31, 2020, 4:00 p.m. (PT) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Jason P. Wells, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

I am the Executive Vice President and Chief Financial Officer of PG&E Corporation ("**PG&E Corp.**"). Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corp., the "**Debtors**") is a wholly-owned subsidiary of PG&E Corp. In 2007, I joined PG&E Corp. as the Director of Technical Accounting and was promoted to Senior Director of Corporate Accounting and Assistant Controller in 2008. I became Vice President, Finance of PG&E Corp. in October 2011, and became Vice President, Business Finance of PG&E Corp. in August 2013, and became Senior Vice President and Chief Financial Officer in January 2016. I was appointed to my current position at PG&E Corp. in June 2019. I have a bachelor's degree and a master's degree in accounting from the University of Florida and I am a Certified Public Accountant in the State of Florida.

I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (i) Approving and Authorizing the Debtors to Enter into Restructuring Support Agreement with Consenting Noteholders and Shareholder Proponents, and (ii) Granting Related Relief* (the "**Noteholder RSA Motion**"), filed contemporaneously herewith.[1] The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information reviewed by me in the course of my duties and responsibilities. If called upon to testify, I would testify to the facts set forth in this Declaration.

On January 22, 2020, the Debtors entered into a settlement with key members of the Ad Hoc Committee of Senior Unsecured Noteholders of the Utility (the "**Ad Hoc Noteholder Committee**") and the Shareholder Proponents regarding all issues relating to the treatment of the Utility's over $21 billion in prepetition funded debt under the Debtors' Amended Plan, embodied in that certain Restructuring Support Agreement of the same date (with the Term Sheet attached thereto as Exhibit A

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in the Noteholder RSA Motion.

and the letter agreement dated January 22, 2020 (the "**Noteholder RSA Letter Agreement**") executed in connection therewith, the "**Noteholder RSA**"). With the Noteholder RSA, the Debtors have achieved a global consensus around their Amended Plan. Among other significant benefits of the Noteholder RSA, which I discuss below, I expect the Debtors' cost of long-term borrowing will be reduced by over $1 billion on a net present value basis, which will benefit ratepayers and all stakeholders. In addition, pursuant to the Noteholder RSA, the Ad Hoc Noteholder Committee will withdraw its Alternative Plan upon the entry of an order approving the Noteholder RSA, which I believe will allow all constituencies in the Chapter 11 Cases to work collaboratively toward the all-important goal of timely confirming the Debtors' Amended Plan that will allow PG&E to expeditiously compensate wildfire victims and emerge as a healthy company best-positioned to provide the safe, reliable service that its customers and communities expect and deserve.

The Noteholder RSA is the product of extensive, good faith, arm's-length negotiations. Pursuant to the Noteholder RSA, the Debtors, the Shareholder Proponents, and the Consenting Noteholders (comprised of all noteholders who executed commitment letters in support of the Alternative Plan proposed by the Ad Hoc Noteholder Committee) have agreed to a global resolution of all issues relating to the Amended Plan's treatment of the Utility's prepetition funded debt, including the disputes between the parties regarding the appropriate rate of postpetition interest and entitlement to claims for make-whole premiums, which together implicate over $5 billion in potential claims. In addition, I believe the Noteholder RSA provides the Debtors with favorable financing upon emergence and that the new notes that will be issued under the Amended Plan also aid in obtaining competitive interest rates on the incremental Utility debt to be issued to fund the Debtors' emergence from chapter 11.

The Debtors will further amend their Plan to reflect the settlement embodied in the Noteholder RSA (such plan, the "**Amended Plan**") not later than February 1, 2020. The Amended Plan will provide that holders of the Utility's prepetition funded debt claims shall have their claims satisfied through a combination of:

- Issuance of new senior secured notes in satisfaction of the principal amount of existing high-coupon, long-term senior notes, near-term senior notes, and funded bank debt (including revolving loans, term loans, and pollution control bonds) and the payment of prepetition interest at the contract rate and postpetition interest at the Federal Judgment Rate in cash;

- Reinstatement of existing low-coupon long-term senior notes; and

- Payment of $63 million in debt placement fees and reimbursement of up to $36 million in professionals' fees and expenses. The expense reimbursement is limited to Consenting Noteholders that have incurred professional fees as a member of the Ad Hoc Noteholder Committee.

In addition, pursuant to the Noteholder RSA, the Debtors have agreed to use their best efforts to provide certain Consenting Noteholders an opportunity to participate in up to $2.0 billion of the $12.0 billion equity backstop.

As a result of the settlement and the new financings embodied therein, the Debtors will reduce the weighted average cost of debt on their prepetition funded debt from approximately 4.28% to approximately 4.10% and reduce the cost of the Utility's long-term debt by over $1 billion—savings that will benefit the Utility's customers and all stakeholders.

Furthermore, the settlement reflected in the Noteholder RSA provides the Debtors certainty regarding their cost of capital for almost 80% of the Utility debt financing I expect will be needed to fund the Debtors' emergence from chapter 11. This certainty, in turn, benefits the Debtors by facilitating access to the capital markets for placing the incremental $5.825 billion in new Utility debt contemplated under the Amended Plan. Additionally, because the Debtors will only need bridge financing for $5.825 billion of Utility debt, instead of $27.35 billion, they will save fees on the bridge and exit financing facilities.

I believe the Noteholder RSA further provides all parties in these Chapter 11 Cases greater certainty through its resolution of several major disputes between the Debtors and the Ad Hoc Noteholder Committee. Importantly, the Noteholder RSA:

- Requires all Consenting Noteholders to vote all of their Claims against and Interests in the Debtors to accept the Amended Plan;

- Eliminates the competing plan process before both this Court and the CPUC by requiring the Ad Hoc Noteholder Committee to withdraw its Alternative Plan within one (1) business day after entry of an order approving the Noteholder RSA and withdraw its participation in proceedings before the CPUC that involve the Debtors;

- Resolves the Consenting Noteholders' opposition to the Debtors' Exit Financing Motion (which the Debtors anticipate amending to reduce the amount of Utility debt financing commitments contemplated under the terms of the Amended Plan) by requiring each Consenting Noteholder to withdraw all discovery requests, file a statement in support of the Debtors' Exit Financing Motion, and oppose any and all efforts and procedures to object to, undermine, or delay approval of the relief sought by the Exit Financing Motion;

- Suspends the Ad Hoc Noteholder Committee's Reconsideration Motion for the duration of the Support Period, and requires each Consenting Noteholder to oppose any and all efforts and procedures to terminate, vacate or modify the Tort Claimants RSA, Subrogation Claims RSA, or the Public Entities Plan Support Agreements, and, upon the effective date of the Amended Plan, withdraw with prejudice the Reconsideration Motion; and

- Precludes the Consenting Noteholders from taking any action to impede or interfere with approval of the Disclosure Statement with respect to the Amended Plan or confirmation or implementation of the Amended Plan

In connection with the parties' entry into and execution of the Noteholder RSA, the Debtors, the Shareholder Proponents, and certain of the Consenting Noteholders (the "**Specified Consenting Noteholders**") simultaneously entered into the Noteholder RSA Letter Agreement, which sets forth certain sensitive and confidential terms with respect to the parties' commitments regarding public and private communications about the Amended Plan, the Alternative Plan, and the Debtors' reorganization. A breach of any of the agreements set forth in the Noteholder RSA Letter Agreement constitutes a material breach of the Noteholder RSA. The terms of the Noteholder RSA Letter Agreement are non-economic and do not impact or concern distributions to the Consenting Noteholders, the Specified Consenting Noteholders, or any other creditors or interest holders under the Debtors' Amended Plan, and do not impact any other substantive provision of the Debtors' Amended Plan.

By resolving all these issues, I believe the Noteholder RSA streamlines the Debtors' path toward timely confirmation of the Amended Plan well within the June 30, 2020 deadline established by AB 1054, expedites distributions to holders of Fire Victim Claims, and allows the Debtors to emerge as a stronger, more financially sound utility.

After assessing and, with the assistance of counsel, fully evaluating all aspects of the Noteholder RSA, including the substantial economic and plan process benefits attendant thereto as described herein, and in particular, the global consensus that has now been achieved, I believe, and the Debtors' Boards of Directors (the "**Boards**") concluded, that entry into the Noteholder RSA is in the best interests of the Debtors, their estates, creditors, shareholders, and other stakeholders. I also believe, and the Debtors' Boards also concluded, that the terms of the Noteholder RSA are fair and reasonable and entry into the Noteholder RSA represents a sound exercise of the Debtors' business judgment. The Debtors' Boards were provided with regular updates on the negotiations leading to the execution of the Noteholder RSA and have been fully advised and briefed by management and retained professionals as to its terms and provisions and its impact on the administration of these Chapter 11 Cases.

As stated, entry into the Noteholder RSA streamlines the Debtors' path to confirmation and the Debtors' successful emergence from these Chapter 11 Cases, ensures expeditious distributions to holders of Fire Victim Claims, and adds stability to the Debtors' capital structure upon emergence. The Noteholder RSA is the result of good faith, arm's-length negotiations among sophisticated principals and competent and experienced retained professionals who effectively and efficiently represented the interests of their respective clients. Further, as stated, the Noteholder RSA eliminates the costs and risks associated with the ongoing disputes over treatment of the Utility Senior Note Claims and Utility Funded Debt under the Debtors' Amended Plan.

Accordingly, I believe the Noteholder RSA should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: January 27, 2020
San Francisco, California

_____
Jason P. Wells