WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

MUNGER, TOLLES & OLSON LLP
Fred A. Rowley, Jr. (#192298)
(fred.rowley@mto.com)
Mark R. Yohalem (#243596)
(mark.yohalem@mto.com)
350 South Grand Ave
Los Angeles, CA 90071-3426
Tel: 213 683 9100

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**NOTICE OF APPEAL AND STATEMENT OF ELECTION TO HAVE APPEAL HEARD BY DISTRICT COURT IN THE EVENT UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT DOES NOT AUTHORIZE DIRECT APPEAL PURSUANT TO 28 U.S.C. § 158(d)** |

NOTICE IS HEREBY GIVEN that PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby appeal, pursuant to 28 U.S.C. § 158(a)(1), from the *Order on Applicability of Inverse Condemnation; Rule 54(b) Certification* entered on December 3, 2019 [Docket No. 4949] (the "**Order**") and the related *Memorandum Decision on Inverse Condemnation* entered on November 27, 2019 [Docket No. 4895] (the "**Memorandum**"). Copies of the foregoing are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

The Debtors intend to file a petition for a direct appeal pursuant to 28 U.S.C. § 158(d) with the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"). As set forth in the *Memorandum Regarding Certification for Direct Appeal to Court of Appeals* [Docket No. 4953], the *Certification for Direct Appeal to Court of Appeals* [Docket No. 4954], the *Amended Memorandum Regarding Certification for Direct Appeal to Court of Appeals* [Docket No. 4965], and the *Amended Certification for Direct Appeal to Court of Appeals* [Docket No. 4967], all entered on December 3, 2019, this Court has certified a direct appeal of the Order to the Ninth Circuit. The Debtors submit that there are bases under 28 U.S.C. § 158(d) for direct certification to the Ninth Circuit. If permission to appeal is denied by the Ninth Circuit, then, pursuant to 28 U.S.C. § 158(c)(1), the Debtors elect to have the appeal heard by the United States District Court for the Northern District of California rather than by the Bankruptcy Appellate Panel for the Ninth Circuit.

The names of all parties to the Order and Memorandum other than the Debtors, and the names, addresses, and telephone numbers of their attorneys, are:

| Party | Counsel |
|---|---|
| Certain PG&E Shareholders* | JONES DAY<br>Bruce S. Bennett (SBN 105430)<br>Joshua M. Mester (SBN 194783)<br>James O. Johnston (SBN 167330)<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, CA 90071.2300<br>Telephone: (213) 489-3939<br>Facsimile: (213) 243-2539<br>E-mail: bbennett@jonesday.com, jmester@jonesday.com, jjohnston@jonesday.com |
| Official Committee of Unsecured Creditors | MILBANK LLP<br>Gregory A. Bray (SBN: 115367)<br>Thomas R. Kreller (SBN: 161922)<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067<br>Telephone: (424) 386-4000<br>Facsimile: (213) 629-5063<br>E-mail: gbray@milbank.com, tkreller@milbank.com,<br><br>MILBANK LLP<br>Dennis F. Dunne (admitted pro hac vice)<br>Samuel A. Khalil (admitted pro hac vice)<br>55 Hudson Yards<br>New York, NY 10001-2163<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br>E-mail: ddunne@milbank.com, skhalil@milbank.com |

| | |
|---|---|
| Official Committee of Tort Claimants | BAKER & HOSTETLER LLP<br>Robert A. Julian (SBN 88469)<br>Cecily A. Dumas (SBN 111449)<br>600 Montgomery Street, Suite 3100<br>San Francisco, CA 94111<br>Telephone: (415) 659-2600<br>Facsimile: (415) 659-2601<br>Email: rjulian@bakerlaw.com, cdumas@bakerlaw.com<br><br>BAKER & HOSTETLER LLP<br>Eric E. Sagerman (SBN 155496)<br>Lauren T. Attard (SBN 320898)<br>11601 Wilshire Boulevard, Suite 1400<br>Los Angeles, CA 90025<br>Telephone: 310.820.8800<br>Facsimile: 310.820.8859<br>Email: esagerman@bakerlaw.com, lattard@bakerlaw.com<br><br>BAKER & HOSTETLER LLP<br>David B. Rivkin, Jr. (SBN 394446)<br>1050 Connecticut Ave., NW, Suite 1100<br>Washington, DC 20036<br>Telephone: 202.861.1731<br>Facsimile: 202.861.1783<br>Email: drivkin@bakerlaw.com |
| Becky Christensen et al. | DREYER BABICH BUCOLA WOOD CAMPORA LLP<br>Steven M. Campora (SBN 110909)<br>20 Bicentennial Cir.<br>Sacramento, CA 95826<br>Telephone: (916) 379-3500<br>Facsimile: (916) 379-3500<br>Email: scampora@dbbwc.com |
| Member of Official Committee of Tort Claimants and Other Individual Fire Victims | EDELSON P.C.<br>Rafey S. Balabanian (SBN 315962)<br>123 Townsend St., Ste. 100<br>San Francisco, CA 94107<br>Telephone: (415) 212-9300<br>Facsimile: (415) 373-9435<br>Email: rbalabanian@edelson.com |
| Adventist Health System/West and Feather River Hospital D/B/A Adventist Health Feather River | NORTON ROSE FULBRIGHT US LLP<br>Rebecca J. Winthrop (SBN 116386)<br>555 South Flower Street Forty-First Floor<br>Los Angeles, California 90071<br>Telephone: (213) 892-9200<br>Facsimile: (213) 892-9494<br>rebecca.winthrop@nortonrosefulbright.com |

| | |
|---|---|
| Eighty-one individual, business, commercial, family trust and personal injury victims of the Camp Fire | RICHARDS LAW FIRM<br>John T. Richards, Esq.<br>Evan Willis, Esq.<br>101 West Broadway, Suite #1950<br>San Diego, CA 92101<br>john@jrtlaw1.com<br>evan@jrtlaw1.com |
| Ad Hoc Group of Subrogation Claim Holders* | WILLKIE FARR & GALLAGHER LLP<br>Matthew A. Feldman (pro hac vice)<br>Joseph G. Minias (pro hac vice)<br>Benjamin P. McCallen (pro hac vice)<br>787 Seventh Avenue<br>New York, NY 10019-6099<br>Telephone: (212) 728-8000<br>Facsimile: (212) 728-8111<br>Email: mfeldman@willkie.com, jminias@willkie.com, bmccallen@willkie.com<br><br>DIEMER & WEI LLP<br>Kathryn S. Diemer (#133977)<br>100 West San Fernando Street, Suite 555<br>San Jose, CA 95113<br>Telephone: (408) 971-6270<br>Facsimile: (408) 971-6271<br>Email: kdiemer@diemerwei.com |
| Attorneys for Creditor, City and County of San Francisco | GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP<br>Edward J. Tredinnick (SBN 84033)<br>Four Embarcadero Center, Suite 4000<br>San Francisco, CA 94111-4106<br>Telephone: (415) 981-1400<br>Facsimile: (415) 777-4961<br>E-mail: etredinnick@greeneradovsky.com<br><br>GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP<br>Edward J. Tredinnick (SBN 84033)<br>One Front Street, Suite 3200<br>San Francisco, 94111<br>Telephone: (415) 981-1400<br>Facsimile: (415) 777-4961<br>E-mail: etredinnick@greeneradovsky.com |

| Individual Wildfire Victims | COREY, LUZAICH, |
|---|---|
| Barbara Thompson, John Thompson, Matthew Thompson, Peter Thompson, Raymond Breitenstein, and Stephen Breitenstein | DE GHETALDI & RIDDLE LLP<br>Dario de Ghetaldi – Bar No. 126782<br>Amanda L. Riddle – Bar No. 215221<br>Steven M. Berki – Bar No. 245426<br>700 El Camino Real, P.O. Box 669<br>Millbrae, CA 94030-0669<br>Telephone: (650) 871-5666<br>Facsimile: (650) 871-4144<br>Email:  deg@coreylaw.com, alr@coreylaw.com, smb@coreylaw.com<br><br>DANKO MEREDITH<br>Michael S. Danko – Bar No. 111359<br>Kristine K. Meredith – Bar No. 158243<br>Shawn R. Miller – Bar No. 238447<br>333 Twin Dolphin Drive, Suite 145<br>Redwood Shores, CA 94065<br>Telephone: (650) 453-3600<br>Facsimile: (650) 394-8672<br>Email: mdanko@dankolaw.com, kmeredith@dankolaw.com, smiller@dankolaw.com<br><br>GIBBS LAW GROUP<br>Eric Gibbs – Bar No. 178658<br>Dylan Hughes – Bar No. 209113<br>505 14th Street, Suite 1110<br>Oakland, CA 94612<br>Telephone: (510) 350-9700<br>Facsimile: (510) 350-9701<br>Email:  ehg@classlawgroup.com, dsh@classlawgroup.com |

For group parties denoted with "*", please see **Exhibit C** hereto for a detailed list identifying members of the group.

Dated:  December 17, 2019

**CRAVATH, SWAINE & MOORE LLP**
**WEIL, GOTSHAL & MANGES LLP**
**MUNGER, TOLLES & OLSON LLP**
**KELLER & BENVENUTTI LLP**


By: */s/Kevin J. Orsini*
          Kevin J. Orsini

*Attorneys for Debtors and Debtors in Possession*

# EXHIBIT A



Signed and Filed: December 3, 2019

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

In re:

PG&E CORPORATION,

    - and -

PACIFIC GAS AND ELECTRIC COMPANY,

      Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Bankruptcy Case
No. 19-30088-DM

Chapter 11

Jointly Administered

## ORDER ON APPLICABILITY OF INVERSE CONDEMNATION; RULE 54(b) CERTIFICATION

### I.    INTRODUCTION

For the reasons stated in this court's Memorandum Decision on Inverse Condemnation filed on November 27, 2019 (Dkt. #4895), the doctrine of inverse condemnation applies to Debtors as a matter of law.

-1-

This order is issued pursuant to this court's Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues (Dkt. #4540), Rule 54(b) of the Federal Rules of Civil Procedure ("FRCP") and Rules 7054, 9014 and 9021 of the Federal Rules of Bankruptcy Procedure.

## II.     BACKGROUND

The court's concurrent Memorandum Decision concludes that the doctrine of inverse condemnation applies to Debtors. The Memorandum Decision is based purely on the legal issue with no factual findings. Although there was no motion or request formally filed to obtain this order, this court's Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues (Dkt. #4540) sets the stage for orders being deemed final and being certified for direct appeal if it appeared appropriate at the time of the decision. At the hearing on inverse condemnation, the court asked the parties whether they wished to pursue this issue on direct appeal to the Ninth Circuit. The parties answered in the affirmative.

## III.    FINAL JUDGMENT

FRCP 54(b) provides that, when more than one claim for relief is presented in an action, a court may direct entry of final judgment upon an express determination that there is no just reason for delay. As laid out by the United States Supreme Court, a court must first determine it is dealing with a final judgment. *Curtiss-Wright Corporation v. General Electric Company*, 446 U.S. 1, 7 (1980). The judgment must be "a decision upon a cognizable claim for relief" and must be final in the sense that "it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.*, *quoting Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956). The court must then determine whether there is any just reason for delay. *Curtiss-Wright*, 446 U.S. at 8.

Here, this court is dealing with a final judgment. The issue of whether inverse condemnation applies to Debtors has been fully briefed and disposed of in the context of this proceeding. Nothing further needs to be adjudicated on this topic and no sub-issues remain. The issue of whether inverse condemnation will not be called into question by further proceedings in this case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In addition, there is no just reason for delay. In making this determination, this court must take into account judicial administrative interest as well as equities, particularly to preserve federal policy against piecemeal appeals. *See Curtiss-Wright*, 446 U.S. at 8. Here, the issue of inverse condemnation in this case is separable from other issues of Debtors' liability in wildfires, as this issue pertains to just one theory of liability, one without regard to fault or negligence, only causation. An appellate court will not be faced with deciding this discrete issue more than once: this court has ruled on the issue of inverse condemnation, which shall not be disturbed unless an appellate court overturns it. *See In Re Pacific Gas and Electric Company*, 275 B.R. 1, 3 (Bankr. N.D. Cal. 2002) (where court's definitive ruling on discrete issue was a factor in favor of finding no just reason for delay).

Finally, equity favors certification. As laid out in the Memorandum Decision, this issue determines Debtors' liability for billions of dollars and shapes the outline of a Chapter 11 plan and this case in general. The California Supreme Court has not ruled on this issue directly and the parties to this case require answers before a legislative deadline of June 30, 2020. Due to the dearth of California Supreme Court authority on this issue of public importance and the weight of an impending legislative deadline, this court sees no just reason for delay.

**\*\*\* END OF ORDER \*\*\***

# EXHIBIT B



**Signed and Filed: November 27, 2019**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br>Date:  November 19, 2019<br>Time:  10:00 AM<br>Place:  Courtroom 17,<br>       450 Golden Gate Ave., 16th Floor,<br>       San Francisco, CA |

### MEMORANDUM DECISION ON
### INVERSE CONDEMNATION

## I.    INTRODUCTION

      PG&E Corporation and Pacific Gas & Electric Company ("Debtors"), joined by the Official Committee of Unsecured Creditors and certain Shareholders of PG&E Corporation, challenge the application of the doctrine of inverse condemnation in connection with the 2015,

-1-

2017, and 2018 California wildfires (the "Wildfires").  The Official Committee of Tort

Claimants, the Ad Hoc Group of Subrogation Claim Holders, and other parties aligned with

them support the continued application of the doctrine.   While Debtors take issue with a long-

standing principle of strict no-fault liability applied to private utilities, they focus their primary

attack on a 2017 change in policy by their regulator that they contend undermines their ability

to spread liabilities from causes such as the Wildfires to their customers, the California rate

payers.  They stress repeatedly that the underlying policy of inverse condemnation as reflected

in numerous cases is the distribution of losses throughout the community. [1]

For the reasons explained below, the court concludes that the doctrine of inverse

condemnation applies to Debtors in these Chapter 11[2] cases.  The court also predicts that the

California Supreme Court would reject the Debtors' pleas and reach the same conclusion.

## II.      PROCEDURAL BACKGROUND

Debtors filed these chapter 11 cases on January 29, 2019.  Over the months since, the

court has dealt with several scheduling matters, including proceedings for estimation of

unliquidated claims arising from the Wildfires under § 502(c).  A portion of the estimation will

be handled in the San Francisco Superior Court in connection with the Tubbs Fire litigation.

Another portion of the estimation will be handled in the District Court (Case No. 3:19-cv-

05257-JD) dealing with the personal injury and wrongful death claims and property claims

apart from those arising solely under inverse condemnation.  By Order Establishing Pre-

Confirmation Briefing and Hearing Schedule for Certain Legal Issues (Dkt. 4540), the court

retained for itself a decision on the legal question of the applicability of inverse condemnation.

The court and all parties expect the District Court to take that ruling into account in its

February, 2020 scheduled estimation proceedings.

---

[1]    Joint Brief of Debtors and The Official Committee of Unsecured Creditors, etc., (Dkt. 4485), at 11.

[2]    Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

## III.    DISCUSSION

A. Inverse Condemnation Rooted in the California Constitution

The California Constitution provides that private property may be taken or damaged for a public use as long as just compensation is paid to the owner. Cal. Const. Art. 1, § 19.[3] This section does not mention liable parties, cost recovery, or socialization of costs. In short, the California Constitution imposes strict liability in favor of the owner of property that has been taken or damaged through a public use or purpose and does not concern itself with the rights or liabilities of whom or what did the damage. It is a form of strict liability imposed on the party causing, or whose equipment caused, the damage. Inverse condemnation does not require any breach of a standard of care, a finding of negligence, foreseeability, or other similar factual finding. *See Aetna Life & Casualty Co. v. City of Los Angeles*, 170 Cal. App. 3d 865, 873 (1985). Instead, the operative inquiry is merely whether there was "actual physical injury to real property proximately caused by a public improvement as deliberately designed and constructed." *Id.*[4] Debtors have admitted that their equipment was the <u>cause</u> of all the Wildfires except the Tubbs Fire; they have not admitted <u>liability</u> for any of them.

B. Inverse Condemnation Not Limited to Public Entities

Since at least 1894, Californian courts have not limited the application of inverse condemnation to public entities. The California Supreme Court in *Eachus v. Los Angeles Consolidated Electric Railway Co.* held that, because the plaintiff's property was damaged for "public use" by a privately-owned railroad company, he was entitled to just compensation pursuant to the doctrine of inverse condemnation under the former takings clause of the California Constitution. 103 Cal. 614, 621 (1894). Little consideration was given to the defendant's status as a private entity in that case. In 1911, the same court reached a similar

---

[3]    Section 19 provides, in part:

(a) Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner.

[4]    A thorough overview of inverse condemnation can be found at Van Alstyne, *Inverse Condemnation: Unintended Physical Damage*, 20 Hastings L.J. 431 (1969).

-3-

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

result in *Gurnsey v. Northern California Power Co.*, 160 Cal. 699 (1911), when it decided that a land owner was entitled to compensation after a private power company misused an easement over his land. In both cases, the California Supreme Court recognized a property owner's right to be compensated for property damage caused by private entities that provided a public utility service. Although not dispositive, these cases shed light on the California Supreme Court's policy objectives and its treatment of inverse condemnation as a doctrine focused on public use.

More recent cases have continued to emphasize this as the doctrine's purpose. *See Barham v. Southern California Edison Co.*, 74 Cal. App. 4th 744, 753 (1999) ("*Barham*") and *Pacific Bell Telephone Co. v. Southern California Edison Co.*, 208 Cal. App. 4th 1400 (2012) ("*Pac. Bell*").

C. Limitation of Extent of Strict Liability under Inverse Condemnation

Inverse condemnation does not extend beyond property damage and is subject to some limitations, including a police power exception and some exceptions for flooding. *See* 8 Witkin Sum. Cal. Law Const Law § 1272. In some cases, damage to personal property may be recoverable. *Id*. The effect of the damage is also relevant. For example, real property damage can said to have been sustained "only when the market value of property is diminished by the public use." *Eachus*, 103 Cal. at 620. None of these limitations on inverse condemnation is relevant here.[5]

D. Cost Recovery

Central to Debtors' argument against applying inverse condemnation to them is the role played by the California Public Utilities Commission ("CPUC"). The CPUC regulates private utilities such as Debtors. *See* Cal. Const. Art. XII. The CPUC has broad regulatory authority, including the power to fix rates, establish and enforce rules, hold hearings, etc.[6] To raise rates, private utilities must apply to the CPUC for approval of the rate increase.

---

[5]  Attorneys' fees and costs are recoverable by the parties successfully prosecuting inverse condemnation actions. *See* Cal. Civ. Pro. § 1036.

[6]  Cal. Pub. Util. Code §§ 701-853.

-4-

When fixing rates, the CPUC is bound by the Public Utilities Code. Section 451 of the Public Utilities Code provides, in relevant part:

> "[a]ll charges demanded or received by any public utility, or by any two or more public utilities, for any product or commodity furnished or to be furnished or any service rendered or to be rendered shall be just and reasonable. Every unjust or unreasonable charge demanded or received for such product or commodity or service is unlawful." (*Emphasis added*).

As such, a private utility's ability to spread costs by increasing rates is governed by a reasonableness standard. Through case law, the CPUC has developed this standard to be a 'prudent manager' standard, by which a private utility's ability to raise rates to reimburse it for losses incurred through inverse condemnation is judged by whether the utility acted as a prudent manager. *See e.g. Re S. California Edison Co.*, 24 CPUC 2d 476 (June 15, 1987) (stating the need for the utility to behave as a prudent manager); *Decision Denying Application of San Diego Gas & Elec. Co. (U902E) for Authorization to Recover Costs Related to the 2007 S. California Wildfires Recorded in the Wildfire Expense Memorandum Account (Wema).*, (the "SDG&E Decision").[7] Essentially, the CPUC evaluates a private utility's behavior to ensure that it has comported with best practices before it is able to pass on costs to the ratepayers.

Debtors assert that this regulatory process now severely prejudices them because the SDG&E Decision deemed inverse condemnation "not relevant" to rate setting, and thus Debtors are not guaranteed the ability to pass on their inverse condemnation losses by recovery from ratepayers. *Id.* at 20-21. Nothing has been submitted to show that Debtors have ever been denied cost recovery under this principle when they have been found prudent.

E. Controlling Law

The California Supreme Court has yet to rule whether inverse condemnation applies to a privately-owned utility. Two intermediate appellate court decisions are directly relevant. First, *Barham* held that inverse condemnation was applicable to a privately-owned utility, stating that the inverse condemnation portion of the California Constitution and case law "have as their

---

[7] Found at:
http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M200/K045/200045020.PDF.

-5-

principal focus the concept of public use, as opposed to the nature of the entity appropriating the property." 74 Cal. App. 4th at 753. There, the plaintiffs' home was damaged after the utility's power line broke in high Santa Ana winds, resulting in a fire. *Id*. at 748. The court explained that adopting the utility's position would require it to "differentiate between damage resulting from the operation of a utility based solely upon whether the utility is operated by a governmental entity or by a privately owned public utility." *Id*. The court found no significant differences between the two for purposes of inverse condemnation damages. *Id*. The issue, the court iterated, was whether the plaintiffs' property had been taken for public use. *Id.* at 754.

Second, *Pac. Bell* substantially relied on *Barham* to hold the same privately-owned utility liable for inverse condemnation. 208 Cal. App. 4th 1400 (2012). There the plaintiff sued a utility after a large bird came into contact with an energized power line and several telephone cables were subsequently damaged. *Id*. at 1403. The court clarified that the utility's state-derived monopolistic or quasi-monopolistic authority distinguished the utility's action from cases against private parties that did not have monopolistic authority from the state. *Id*. at 1406. Both cases are unequivocal that inverse condemnation may apply to privately-owned utilities. Debtors do not appear to contest this interpretation of the holdings. Instead, they claim that the decisions were incorrectly decided then and "even more obviously wrong" in light of the SDG&E Decision.

Finally, although they are not intermediate court decisions, other courts have denied Debtors' attempts to revisit the applicability of inverse condemnation within the context of the Wildfires. In 2017, a trial court ruled that Debtors may be held liable for inverse condemnation in connection with the 2015 fire in Butte county. *Butte Fire Cases*, 2017 WL 9832289, at *1 (June 22, 2017). In 2018, in response to a renewed motion by Debtors after the SDG&E Decision, the same court again confirmed that Debtors are liable for inverse condemnation damages. *See* Rivkin Decl. Ex. B, *Butte Fire Cases*, No. JCCP 4853 (Cal. Super. Ct. Sacramento County May 1, 2018) (Dkt. 4775). That court scrutinized the SDG&E Decision and held that the CPUC's statement in the decision that inverse condemnation principles are "not relevant" to its review did not distinguish the case from *Barham* or *Pac. Bell*. *Id*. The

-6-

court also stated that it was not persuaded that either *Barham* or *Pac. Bell* rested on the assumption that the utility there would be able to spread costs and found that the SDG&E Decision did not affect its inverse condemnation analysis. *Id.* Debtors petitioned the California Court of Appeal and California Supreme Court and both petitions were denied. *See* Joint Brief of Debtors and The Official Committee of Unsecured Creditors, etc., (Dkt. 4485), at 9.

In 2018, a trial court in San Francisco in the North Bay Fires proceeding overruled Debtors' demurrer, concluding that Debtors could not dismiss that case based on inapplicability of inverse condemnation. *Harrison v PG&E Corp.*, 2018 WL 2447104 (May 21, 2018). Debtors again petitioned the California Court of Appeal and California Supreme Court and both petitions were denied. *See* Joint Brief of Debtors and The Official Committee of Unsecured Creditors, etc., (Dkt. 4485), at 8.

F.   Role of Federal Court

In the absence of a controlling California Supreme Court decision, this court must predict how the California Supreme Court would decide the issue using intermediate appellate court decisions, statutes, decisions from other jurisdictions, and treatises and restatements as guidance. *See Security Pac. Nat'l Bank v. Kirkland et al. (In re Kirkland)*, 915 F.2d 1236, 1239 (9th Cir. 1990). It must follow the state's intermediate appellate decisions. *Id.* (citations omitted). Further, as discussed by the United States Supreme Court in *West v. American Telephone & Telegraph. Co.*, in directing how a federal court should act in the absence of a decision from the highest state court, an intermediate appellate state court decision is a "datum" for ascertaining state law. That decision is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. 311 U.S. 223, 237 (1940).[8]

---

[8] *West* also emphasized that a state supreme court's refusal to review a lower court's decision fortifies the lower court's decision. *Id.* *West* was specific that the refusal was in the context of a phase of the same litigation that was being decided there, but this line of reasoning could be extended here, where the California Supreme Court has twice declined Debtors' petitions to review this issue, albeit in different cases.

-7-

1  Debtors maintain that *West* means that an appellate court's ruling is one datum, which

2  means this court may look at other data that could override the appellate court decision and

3  control the outcome. For this, Debtors cite *American Tower Corp. v. City of San Diego*, 763

4  F.3d 1035, 1047 (9th Cir. 2014), where the court decided to disregard an appellate court

5  decision. In that case, the Ninth Circuit acknowledged a California Court of Appeal decision on

6  point but determined that the court had incorrectly interpreted and applied the applicable statute.

7  *Id.* at 1047-48. The court faulted the state court for its very obvious error—a powerful datum:

8          By reading out the qualifying phrase "[i]f the applicant chooses to provide
9      public notice," the California Court of Appeal violated the "fundamental canon of
       statutory construction that a statute should not be construed so as to render any of
10     its provisions mere surplusage." (citations omitted) (restating "the settled
       principle of statutory construction that we must give effect ... to every word of the
11     statute"). We do not believe the California Supreme Court would do the same and
       therefore reject *Mahon's* interpretation of "public notice required by law.".
12

13     At oral argument, Debtors urged a similar analysis of *Barham* and *Pac. Bell*.

14  Specifically, Debtors assert that, as the appellate court cited in *American Tower* misinterpreted

15  a statute, the *Barham* and *Pac. Bell* courts misapplied case law when they cited to *Gay Law*

16  *Students Ass'n v. Pacific Telephone & Telegraph Co*., 24 Cal. 3d 458 (1979). The alleged

17  misapplication stems from the fact that *Gay Law Students* dealt primarily with whether a private

18  entity should be treated as public for the purposes of applying hiring and anti-discrimination

19  laws.

20     As a preliminary matter, neither *Barham* nor *Pac. Bell* relied exclusively on *Gay Law*

21  *Students* for their holdings. Unlike the misreading of a key statute, all that is at issue here is

22  whether one case, partially relied upon, was correctly interpreted. Both *Barham* and *Pac. Bell*

23  cited *Gay Law Students* for the proposition that a public utility's monopolistic authority derives

24  directly from its exclusive franchise provided by the state. *See Pac. Bell*, 208 Cal. App. 4th at

25  1406; *see also* Barham, 74 Cal. App. 4th at 753 ("[w]ere we to adopt SCE's position, we would

26  be required to differentiate between damage resulting from the operation of a utility based

27  solely upon whether the utility is operated by a governmental entity or by a privately owned

28  public utility."). This analysis helped the courts distinguish between private parties without

-8-

state-granted monopolies and private parties with those monopolies. *Pac. Bell*, 208 Cal. App. 4th at 1406. The *Barham* and *Pac. Bell* courts did not deal with the anti-discrimination aspect of the *Gay Law Students* decision. They simply echoed the philosophical underpinnings of relevant case law—that a private utility can be tied to the state. *See Gay Law Students*, 24 Cal. 3d at 469 ("the breadth and depth of governmental regulation of a public utility's business practices inextricably ties the state to a public utility's conduct, both in the public's perception and in the utility's day-to-day activities.") (language also quoted by *Pac. Bell*). Because they did not misapply the case law or misread a statute, this court has no reason to discount those two decisions.

G. Markers to Guide Court's Decision

Debtors do not appear to contest seriously the legal landscape of inverse condemnation, which is soundly against them. Instead, they argue that the SDG&E Decision renders prior decisions incorrect and that the policy considerations of inverse condemnation demand a result in their favor. The SDG&E Decision was issued on November 30, 2017, approximately five years after *Pac. Bell* and eighteen years after *Barham*.

In 2015, San Diego Gas & Electric Company applied to the CPUC to recover costs incurred in settling damage claims arising from three wildfires that occurred in 2007. The CPUC denied this application in 2017, finding that the utility did not "reasonably manage and operate its facilities" prior to the 2007 fires. In other words, the CPUC found that the utility had failed the prudent manager standard applied to all private utilities seeking rate increases for reimbursement of inverse condemnation losses.

San Diego Gas & Electric Company also asked the CPUC to consider inverse condemnation, and argued that, because the utility would be held strictly liable for the costs it sought to be reimbursed, the CPUC should approve the costs regardless of whether the utility met the prudent manager standard. In response, the CPUC stated that inverse condemnation principles were not relevant to its reasonableness review under that standard. Debtors interpret this to mean that the CPUC will never pass on inverse condemnation costs to the ratepayers, and that this inability mandates a result in their favor.

-9-

First, Debtors seem to misread the SDG&E Decision regarding inverse condemnation. The case merely restates that the prudent manager standard operates without regard to inverse condemnation or traditional tort negligence. It does not state that inverse condemnation costs will never be passed on to ratepayers. In fact, the prudent manager standard virtually guarantees cost spreading if the utility acted prudently, which is a far more lenient standard than strict liability. Thus, Debtors are likely guaranteed cost spreading if they act prudently. In any case, as Debtors have yet to ask the CPUC for permission to raise rates as a result of the Wildfires, this amounts to speculation of how the CPUC will act. Debtors' argument does not offer a datum to predict a California Supreme Court decision here.

Second, there is nothing to show that *Barham* or *Pac. Bell* were decided on principles of cost spreading. Both cases focused primarily on the concept of public use. Therefore, any statement by the CPUC about its cost spreading analysis in the SDG&E Decision would not serve to undermine or call into question the holdings of those cases.

Finally, the remainder of Debtors' argument boils down to their contention that they *should* not be treated as public entities for these purposes. However, this court is not tasked to determine what the law should be and is merely tasked with interpreting what the law is and has been for one hundred twenty-five years. The California legislature has not taken up Debtors' cause to their satisfaction, and this court will not attempt to take its place.[9]

## IV. CONCLUSION

What Debtors advocate here is to set aside a well-seasoned principle of strict liability. Failing that, they are seeking a solution, fire cost reimbursement, in search of a problem, CPUC's refusal or unwillingness to allow recovery by a blameless (prudent) investor-owned utility. As noted, they cite no instance when the CPUC denied inverse condemnation cost reimbursement to a prudent operator. And it is the role of the legislative branch, not the judicial

---

[9]    *See* Governor Newsom's Strike Force, *Wildfires And Climate Change: California's Energy Future* (Apr. 12, 2019) (Orsini Declaration, Ex. A) (Dkt. 4486). The report recommends a change to the inverse condemnation rules, but the legislature has yet to act. Notably, the California legislature did not change the law in its recently enacted Assembly Bill No. 1054.

-10-

1   branch, to fix problems in advance.  As recently as this past July, the California legislature

2   refused Debtors' request to restrict inverse condemnation.  There is simply no reason to suggest

3   that this court can expect the California Supreme Court to step up and do it.  If the problem

4   could be alleviated or eliminated by an amendment to the Public Utilities Code to relax or

5   eliminate the prudent operator standard, that too is for the legislature not the court.

6          Debtors have not provided persuasive data to justify deviation from the intermediate

7   appellate court cases discussed above.  Nor have they shown how this court could predict that

8   the California Supreme Court would either narrow the reach of inverse condemnation or impose

9   on the CPUC a different standard for reimbursement of related costs.  Thus, this court

10  concludes that the doctrine of inverse condemnation is applicable to Debtors and the California

11  Supreme Court would likewise leave it in place.

12         The court will issue an order consistent with this Memorandum Decision in the coming

13  days and will include its determination that the order be deemed final for the purposes of

14  Federal Rule of Civil Procedure 54(b), made applicable by Federal Rule of Bankruptcy

15  Procedure 7054.   At the same time, it will certify this decision for direct appeal to the Ninth

16  Circuit Court of Appeals.

17                          **END OF MEMORANDUM DECISION**

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

Case: 19-30088   Doc# 5546-3   Filed: 01/29/20   Entered: 01/29/20 11:57:43   Page 1
of 25
Case: 19-30088   Doc# 5156-3   Filed: 12/17/19   Entered: 12/17/19 21:06:56   Page 1
23 of 51

**Exhibit C-1 – Certain PG&E Shareholders**

| Name and Address of PG&E Shareholder | Disclosable Economic Interests | |
|---|---|---|
| 683 Capital Partners, LP<br>3 Columbus Circle, Suite 2205<br>New York, NY 10019 | PG&E Common Shares: | 375,000 |
| Anchorage Capital Group, L.L.C., on behalf of certain funds and accounts<br>610 Broadway, 6th Floor<br>New York, NY 10012 | PG&E Common Shares: | 25,000,000 |
| | Utility Bonds: | $56,500,000 |
| BlueMountain Capital Management, LLC, on behalf of certain funds and accounts<br>280 Park Avenue, 12th Floor,<br>New York, NY 10017 | PG&E Common Shares: | 0 |
| Centerbridge Partners, L.P., on behalf of certain funds and accounts<br>375 Park Avenue, 11th Floor<br>New York, NY 10152 | PG&E Common Shares: | 1,450,000 |
| | PG&E Swaps (Long Position): | 6,288,233 |
| | Utility Preferred Shares: | 80,884 |
| | Utility Bonds: | $281,979,000 |
| | Utility Revolver: | $4,935,725 |
| | Subrogation Claims: | $208,703,491 |
| CSS, LLC<br>175 W. Jackson Blvd., Suite 440<br>Chicago, IL 60604 | PG&E Common Shares: | 1,279,967 |
| | Utility Preferred Shares: | 190,771 |
| | Utility Bonds: | $12,458,000 |
| | Net Option Exposure:[1] | (143,360) |
| Cyrus Capital Partners, L.P., on behalf of certain funds and accounts<br>65 E 55th St.,<br>New York, NY 10022 | PG&E Common Shares: | 1,000,000 |

---

[1] CSS has various long and short call and put options, with various strike prices and expirations.

| Name and Address of PG&E Shareholder | Disclosable Economic Interests | |
|---|---|---|
| D.E. Shaw Galvanic Portfolios, L.L.C., D.E. Shaw Kalon Portfolios, L.L.C., and D.E. Shaw Orienteer Portfolios, L.L.C., 1166 Ave. of the Americas, 9th Floor New York, NY 10036 | PG&E Common Shares: | 5,859,960 |
| Empyrean Capital Partners, LP, on behalf of certain funds and accounts 10250 Constellation Blvd., Suite 2950 Los Angeles, CA 90067 | PG&E Common Shares: | 1,800,000 |
| | Short Call Options:[2] | 300,000 |
| | Long Put Options: | 300,000 |
| | Utility Revolver: | $14,126,000 |
| | Utility Bonds: | $98,589,000 |
| First Pacific Advisors, LP, on behalf of certain funds and accounts 11601 Wilshire Blvd #1200 Los Angeles, CA 90025 | PG&E Common Shares: | 5,112,058 |
| Golden Tree Asset Management LP, on behalf of certain funds and accounts 300 Park Avenue, 21st Floor New York, NY 11201 | PG&E Common Shares: | 5,367,019 |
| | Utility Bonds: | $29,680,000 |
| | PG&E Revolver and Term Loan: | $24,758,874 |
| Governors Lane LP, on behalf of certain funds and accounts 510 Madison Avenue New York, NY 10022 | PG&E Common Shares: | 723,000 |
| | Utility Bonds: | $38,465,000 |
| HBK Master Fund L.P., c/o HBK Services LLC 2300 North Field Street, Suite 2200 Dallas, TX 75201 | PG&E Common Shares: | 1,000,000 |
| | Short Call Options: | 75,000 |
| | Short Put Options: | 25,0000 |
| | Utility Bonds: | $28,235,000 |
| | Utility Revolver: | $465,820,950 |
| | Utility L/C Reimbursement: | $154,585,869 |

---

[2] Options are shown herein as exercisable shares.

| Name and Address of PG&E Shareholder | Disclosable Economic Interests | |
|---|---|---|
| Latigo Partners, LP, on behalf of certain funds and accounts 450 Park Avenue, 12th Floor New York, NY 10022 | PG&E Common Shares: | 777,062 |
| | Utility Bonds: | $7,000,000 |
| Meadowfin, L.L.C. 299 Park Avenue, 40th Floor New York, NY 10171 | PG&E Common Shares: | 2,500,000 |
| | Utility Bonds: | $455,769,000 |
| | Utility Revolver: | $50,050,000 |
| Monarch Alternative Capital LP, on its own behalf and on behalf of its advisory clients 535 Madison Ave. New York, NY 10022 | PG&E Common Shares: | 3,000,000 |
| Newtyn Management, LLC, on behalf of certain funds and accounts 60 East 42nd Street, 9th Floor, New York, NY 10165 | PG&E Common Shares: | 3,050,000 |
| | Call Options: | 3,934,200 |
| | Call Options (Sold): | 800,000 |
| Nut Tree Master Fund, LP, by its investment advisor, Nut Tree Capital Management, LP Two Penn Plaza, 24th Floor New York, NY 10121 | PG&E Common Shares: | 3,000,000 |
| Owl Creek Asset Management, L.P., on behalf of certain funds and accounts 640 Fifth Avenue, 20th Floor New York, NY 10019 | PG&E Common Shares: | 7,282,840 |
| | Subrogation Claims:[3] | $24,008,927.56 |
| Pentwater Capital Management LP, on behalf of certain funds and accounts 614 Davis Street Evanston, IL 60201 | PG&E Common Shares: | 20,734,100 |
| | Utility Bonds: | $51,115,000 |
| | Net Exposure Equity Derivatives:[4] | (12,777,600) |

---

[3] Amount is on account of claims paid to underlying insured parties affected by various California wildfires. Owl Creek holds additional claims against the Debtors based on undisclosed internal reserves and future unknown amounts that have neither been paid nor reserved for.

[4] Represents equity derivatives (long and short options and swaps) with various maturities and strike prices, net exposure if executed, whether or not contracts have any intrinsic value presently.

| Name and Address of PG&E Shareholder | Disclosable Economic Interests | |
|---|---|---|
| Redwood Capital Management, LLC, on behalf of certain funds and accounts<br>910 Sylvan Ave<br>Englewood Cliffs, NJ 07632 | PG&E Common Shares: | 12,333,752 |
| | Utility Bonds: | $74,842,000 |
| | Subrogation Claims: | $9,869,354.06 |
| Sachem Head Capital Management LP, on behalf of certain funds and accounts<br>250 West 55th St., 34th Floor<br>New York, NY 10019 | PG&E Common Shares: | 3,500,000 |
| Serengeti Asset Management LP, on behalf of certain funds and accounts<br>632 Broadway, 12th Floor<br>New York, NY 10012 | PG&E Common Shares: | 865,000 |
| Silver Point Capital, L.P., on behalf of certain funds and accounts<br>Two Greenwich Plaza<br>Greenwich, CT 06830 | PG&E Common Shares: | 24,937,000 |
| | Utility Bonds: | $287,937,630.54 |
| | Subrogation Claims: | $76,200,175.78 |
| | Trade Vendor Claims: | $19,556,048.53 |
| Steadfast Capital Management LP ("SCM"), on behalf of certain funds, whether advised directly by SCM or an affiliate thereof<br>450 Park Avenue, 20th Floor<br>New York, NY 10022 | PG&E Common Shares: | 5,318,492 |
| SteelMill Master Fund LP<br>c/o PointState Capital LP<br>40 West 57th Street, 25th Floor<br>New York, NY 10019 | PG&E Common Shares: | 6,978,743 |
| | Utility Bonds: | $166,964,000 |
| Stonehill Capital Management LLC, on behalf of certain funds<br>885 Third Ave., 30th Floor<br>New York, NY 10022 | PG&E Common Shares: | 10,524,776 |
| | Utility Preferred Shares: | 796,633 |
| | Utility Bonds: | $28,464,000 |
| Warlander Asset Management, LP, on behalf of certain funds and accounts<br>250 West 55th Street, 33rd Floor<br>New York, NY 10019 | PG&E Common Shares: | 325,000 |

**Exhibit C-2 – Ad Hoc Committee of Noteholders**

| NAME | ADDRESS | NATURE AND AMOUNT OF DISCLOSABLE ECONOMIC INTEREST |
|---|---|---|
| Apollo Global Management LLC | 9 West 57th Street<br>43rd Floor<br>New York, NY 10019 | $505,996,000 in Senior Utility Notes[1]<br>$93,000,000 in DIP Term Loans[2]<br>$31,000,000 in Delayed DIP Term Loans[3]<br>$98,000,000 in Wildfire Subrogation Claims |
| Aurelius Capital Management, LP | 535 Madison Avenue<br>31st Floor<br>New York, NY 10022 | $43,000,000 in Senior Utility Notes |

---

[1] "Senior Utility Notes" means the senior notes issued by Pacific Gas and Electric Company (the "Utility") under (a) that certain Indenture, dated as of April 22, 2005, between Utility and The Bank of New York Company, as trustee (in such capacity, the "Trustee"), which amends and restates that certain Indenture of Mortgage, dated as of March 11, 2004, relating to the issuance of certain notes which are no longer outstanding, other than $3,000M principal amount of 6.05% senior notes due March 1, 2034, and (i) 1st Supplemental Indenture, dated as of March 13, 2007, relating to $700M principal amount of 5.80% senior notes due March 1, 2037 (ii) 3rd Supplemental Indenture, dated as of March 3, 2008, relating to $400M principal amount of 6.35% senior notes due Feb 15, 2038, (iii) 6th Supplemental Indenture, dated as of March 6, 2009, relating to $550M principal amount of 6.25% senior notes due March 1, 2039, (iv) 8th Supplemental Indenture, dated as of November 18, 2009, relating to $550M principal amount of 5.40% senior notes due January 15, 2040, (v) 9th Supplemental Indenture, dated as of April 1, 2010, relating to $250M principal amount of 5.80% senior notes due March 1, 2037, (vi) 10th Supplemental Indenture, dated as of September 15, 2010, relating to $550M principal amount of 3.50% senior notes due October 1, 2020, (vii) 12th Supplemental Indenture, dated as of November 18, 2010, relating to

$250M principal amount of 3.50% senior notes due October 1, 2020 and $250M principal amount of 5.40% senior notes due January 15, 2040, (viii) 13th Supplemental Indenture, dated as of May 13, 2011, relating to $300M principal amount of 4.25% senior notes due May 15, 2021, (ix) 14th Supplemental Indenture, dated as of September 12, 2011, relating to $250M principal amount of 3.25% senior notes due September 15, 2021, (x)16th Supplemental Indenture, dated as of December 1, 2011, relating to $250M principal amount of 4.50% senior notes due December 15, 2041, (xi) 17th Supplemental Indenture, dated as of April 16, 2012, relating to $400M principal amount of 4.45% senior notes due April 15, 2042, (xii) 18th Supplemental Indenture, dated as of August 16, 2012, relating to $400M principal amount of 2.45% senior notes due August 15, 2022 and $350M principal amount of 3.75% senior notes due August 15, 2042, (xiii) 19th Supplemental Indenture, dated as of June 14, 2013, relating to $375M principal amount of 3.25% senior notes due June 15, 2023 and $375M principal amount of 4.60% senior notes due June 15, 2043, (xiv) 20th Supplemental Indenture, dated as of November 12, 2013, relating to $300M principal amount of 3.85% senior notes due November 15, 2023 and $500M principal amount of 5.125% senior notes due November 15, 2043, (xv) 21st Supplemental Indenture, dated as of November 12, 2013, relating to $450M principal amount of 3.75% senior notes due February 15, 2024 and $450M principal amount of 4.75% senior notes due February 15, 2044, (xvi) 23rd Supplemental Indenture, dated as of August 18, 2014, relating to $350M principal amount of 3.40% senior notes due August 15, 2024 and $225M principal amount of 4.75% senior notes due February 15, 2044,

(xvii) 24th Supplemental Indenture, dated as of November 6, 2014, relating to $500M principal amount of 4.30% senior notes due March 15, 2045, (xviii) 25th Supplemental Indenture, dated as of June 12, 2015, relating to $400M principal amount of 3.50% senior notes due June 15, 2025 and $100M principal amount of 4.30% senior notes due March 15, 2045, (xix) 26th Supplemental Indenture, dated as of November 5, 2015, relating to $200M principal amount of 3.50% senior notes due June 15, 2025 and $450M principal amount of 4.25% senior notes due March 15, 2046, (xx) 27th Supplemental Indenture, dated as of March 1, 2016, relating to $600M principal amount of 2.95% senior notes due March 1, 2026, (xxi) 28th Supplemental Indenture, dated as of December 1, 2016, relating to $400M principal amount of 4.00% senior notes due December 1, 2046, (xxii) 29th Supplemental Indenture, dated as of March 10, 2017, relating to $400M principal amount of 3.30% senior notes due March 15, 2027 and $200M principal amount of 4.00% senior notes due December 1, 2046, (b) that certain Indenture, dated as of March 10, 2017, between Utility and the Trustee, relating to $1,150M principal amount of 3.30% senior notes due December 1, 2027 and $850M principal amount of 3.95% of senior notes due 2047 and (c) that certain Indenture, dated as of August 6, 2018, between Utility and the Trustee, as supplemented by 1st Supplemental Indenture, dated as of August 6, 2018, relating to $500M principal amount of 4.25% senior notes due 2023 and $300M principal amount of 4.65% senior notes due 2028.

[2] "DIP Term Loans" means the term loans under that senior secured, superpriority debtor-in-possession new money credit, guaranty and security agreement (the "DIP Credit Agreement") in an aggregate principal amount of $1,500,000,000.

[3] "Delayed DIP Term Loans" means the delayed draw term loans under the DIP Credit Agreement in an aggregate principal amount of $500,000,000.

| | | |
|---|---|---|
| Canyon Capital Advisors LLC | 2000 Avenue of the Stars<br>11th Floor<br>Los Angeles, CA 90067 | $280,355,000 in Senior Utility Notes<br>$159,103,460.37 in Utility Revolver Loans[4]<br>$103,113,595 in Utility L/C Reimbursement<br>$15,000,000 in HoldCo Revolver Loans[5]<br>$60,000,000 in HoldCo Term Loans[6] |
| Capital Group | 333 South Hope Street<br>55th Floor<br>Los Angeles, CA 90071 | $393,920,000 in Senior Utility Notes<br>$32,365,000 in Municipal Bonds |
| CarVal Investors, LLC | 461 Fifth Avenue<br>New York, NY 10017 | $215,059,000 in Senior Utility Notes<br>$95,000,000 in Utility L/C Reimbursement |
| Castle Hook Partners LP | 250 West 55th Street<br>New York, NY 10019 | $117,750,000 in Senior Utility Notes<br>$10,000,000 in Utility Revolver Loans<br>1,315,448 shares of PG&E Stock |
| Citadel Advisors LLC | 520 Madison Avenue<br>New York, NY 10022 | $657,010,000 in Senior Utility Notes<br>6,232,306 shares of PG&E Stock<br>Short Positions in 1,024 Call Option Contracts on PG&E Stock |
| Davidson Kempner Capital Management LP | 520 Madison Avenue<br>30th Floor<br>New York, NY 10022 | $767,000,000 in Senior Utility Notes<br>$135,000,000 in Utility Revolver Loans<br>4,650,000 shares of PG&E Stock<br>$2,666,000 in Trade Claims |
| Deutsche Bank Securities Inc. | 60 Wall Street<br>4th Floor<br>New York, NY 10005 | $209,197,000 in Senior Utility Notes<br>$33,409,563 in Utility Revolver Loans<br>$43,188,253 in Utility L/C Reimbursement<br>$41,907,390 in HoldCo Term Loans<br>717,000 shares of PG&E Stock<br>17,320 Put Option Contracts on PG&E Stock<br>$130,041,997 in Wildfire Subrogation Claims |

---

[4] "Utility Revolver Loans" means loans under that certain Second Amended and Restated Credit Agreement, dated as of April 27, 2015 by and between the Utility and Citibank, N.A. as administrative agent (in such capacity, the "Revolving Agent").

[5] "HoldCo Revolver Loans" means loans under that certain Second Amended and Restated Credit Agreement, dated as of April 27, 2015 by and between PG&E and the Revolving Agent.

[6] "HoldCo Term Loans" means loans under that certain Term Loan Credit Agreement, dated as of April 16, 2018, by and between PG&E and Mizuho Bank, Ltd., as administrative agent.

| | | |
|---|---|---|
| Diameter Capital Partners LP | 24 West 40th Street<br>5th Floor<br>New York, NY 10018 | $145,000,000 in Senior Utility Notes<br>$100,106,502 in Utility Revolver Loans<br>1,065,522 shares of PG&E Stock<br>$17,000,000 in a Bilateral Utility Loan<br>$17,972,746 in Trade Claims |
| Elliott Management Corporation | 40 West 57th Street<br>New York, NY 10019 | $1,622,905,000 in Senior Utility Notes |
| Farallon Capital Management, L.L.C. | One Maritime Plaza<br>Suite 2100<br>San Francisco, CA 94111 | $446,870,000 in Senior Utility Notes<br>$177,480,000 in Utility Revolver Loans<br>$44,650,000 in Trade Claims |
| Fir Tree Partners | 55 West 46th Street<br>29th Floor<br>New York, NY 10036 | $75,000,000 in Senior Utility Notes |
| Marathon Asset Management | One Bryant Park<br>38th Floor<br>New York, NY 10036 | $79,317,000 in Senior Utility Notes<br>$45,100,692 in HoldCo Revolver Loans<br>$30,885,409 in HoldCo Term Loans |
| Oak Hill Advisors, L.P. | 1114 6th Avenue<br>New York, NY 10036 | $101,100,000 in Senior Utility Notes |
| Oaktree Capital Management, L.P. | 333 South Grand Avenue<br>28th Floor<br>Los Angeles, CA 90071 | $158,747,000 in Senior Utility Notes<br>$3,750,000 in DIP Term Loans<br>$24,900,869 in Utility Revolver Loans<br>$10,000,000 in Utility Term Loans[7] |
| Pacific Investment Management Company LLC | 650 Newport Center Drive<br>Newport Beach, CA 92660 | $2,782,519,000 in Senior Utility Notes<br>$230,000,000 in Utility Term Loans<br>$76,093,636.57 in HoldCo Term Loans<br>$745,293,750 in DIP Term Loans<br>$248,431,250 in Delayed DIP Term Loans |
| Pacific Life Insurance Company | 700 Newport Center Drive<br>Newport Beach, CA 92660 | $61,287,000 in Senior Utility Notes |
| P. Schoenfeld Asset Management LP | 1350 Avenue of the Americas<br>21st Floor<br>New York, NY 10019 | $170,465,000 in Senior Utility Notes |

---

[7] "Utility Term Loans" means loans under that certain term loan agreement dated as of February 23, 2018 by and among the Utility, The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") and U.S. Bank National Association, as lenders, joint lead arranger and joint bookrunners and BTMU as administrative agent.

| | | |
|---|---|---|
| Sculptor Capital Investments, LLC | 9 West 57th Street<br>39th Floor<br>New York NY 10019 | $331,841,000 in Senior Utility Notes<br>$9,997,190.48 in Utility Revolver Loans<br>$11,250,000 in DIP Term Loans<br>$3,750,000 in Delayed DIP Term Loans<br>3,779,670 shares of PG&E Stock<br>Short Positions in 2,168 Call Option Contracts on PG&E Stock<br>2,168 Put Option Contracts on PG&E Stock<br>$105,000,000 in Municipal Bonds |
| Senator Investment Group LP | 510 Madison Avenue<br>Suite 28<br>New York, NY 10022 | $194,985,000 in Senior Utility Notes<br>$24,551,419 in Utility Revolver Loans |
| Silver Rock Financial LP | 12100 Wilshire Blvd.<br>Suite 1000<br>Los Angeles, CA 90025 | $110,500,000 in Senior Utility Notes |
| Taconic Capital Advisors LP | 280 Park Avenue<br>5th Floor<br>New York, NY 10017 | $124,810,000 in Senior Utility Notes<br>$10,000,000 in Utility Revolver Loans<br>$25,000,000 in Utility L/C Reimbursement<br>374,300 shares of PG&E Stock |
| Third Point LLC | 390 Park Avenue<br>New York, NY 10022 | $582,000,000 in Senior Utility Notes |
| Värde Partners, Inc. | 901 Marquette Avenue South<br>Minneapolis, MN 55402 | $990,018,000 in Senior Utility Notes |

**Exhibit C-3 – Ad Hoc Committee of Subrogation Claimants**

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Ace American Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $12,000,000.00 | |
| AIG Europe Limited | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $112,404.50 | |
| Allianz Global Corporate & Specialty | 1 Progress Point Parkway, Ste. 200 O'Fallon, MO 63368 | $98,459,917.87 | $5,390,500.00 in Senior Notes[2] |
| Allied World Assurance Company | 199 Water Street 24th Flr. New York, NY 10038 | $10,966,215.44 | |
| Allstate Insurance Company and certain affiliates | 2775 Sanders Road, Suite A2E Northbrook, IL 60062 | $843,319,682.58 | $31,285,000.00 in Senior Notes |
| Alternative Insurance Corporation | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $235,035.80 | |

---

[1] Amounts listed herein are on account of claims paid to underlying insured parties affected by various California wildfires. Every member of the Ad Hoc Subrogation Group holds additional claims against the Debtors based on undisclosed internal reserves and future unknown amounts that have neither been paid or reserved for.

[2] "Senior Notes" shall have the meaning ascribed to it in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Dkt. No. 263].

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| American National Property & Casualty Company DBA ANPAC | 1949 E. Sunshine Springfield, MO 65899 | $4,964,141.99 | |
| American Guarantee and Liability Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | TBD[3] | |
| Certain affiliates of American International Group, Inc. ("AIG")[4] | 175 Water Street New York, NY 10038 | $333,299,328.37 | |
| American Modern Insurance Group | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $198,558.45 | |
| American National Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $15,680.88 | |
| Amica Mutual Insurance Company | 100 Amica Way Lincoln, RI 02865 | $35,014,454.00 | |
| AmTrust North America | P.O. Box 650872 Dallas, TX 75265 | $10,074,129.00 | |

---

[3] Where a party's only wildfire related subrogation claims is listed as "TBD", such party's claims are based on undisclosed internal reserve amounts.

[4] Members of the Ad Hoc Subrogation Group include: AIG Europe Limited; AIG Property Casualty Company; AIG Specialty Insurance Company; American Home Assurance Company; Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; and New Hampshire Insurance Company.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| AmTrust Syndicate 1206 | 1 Great Tower Street London EC3R 5AA | TBD | |
| Arch Specialty Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $11,240.45 | |
| American Reliable Insurance Company | P.O. Box 6099 Scottsdale, AZ 85261 | $11,075,372.63 | |
| ArgoGlobal London | c/o Peninsula Insurance Bureau 2832 Lent Road Apopka, FL 32712 | $2,216,346.42 | |
| ASI Select Insurance Corp. | 1 ASI Way N St. Petersburg, FL 33702 | $14,167,681.01 | |
| Aspen Insurance | 155 Federal Street, Suite 602 Boston, MA 02110 | $6,769,491.09 | |
| Aspen Specialty Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $1,601,164.38 | |
| "Assurant" Group of Carriers[5] | 260 Interstate North Circle SE Atlanta, GA 30339 | $8,550,064.48 | |

---

[5] Members of the Ad Hoc Subrogation Group include: American Bankers Insurance Company; American Bankers Insurance Company of Florida; American Security Insurance Company; Standard Guaranty Insurance Company; Voyager Indemnity Insurance Company.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Attestor Capital LLP | 7 Seymour Street, Fourth Floor London, XO W1H 7JW | $822,755,406.00[6] | 8,038,514 shares of PG&E Corporation Common Stock $20,500,000.00 in Senior Notes |
| The Baupost Group, L.L.C.[7] | 10 St. James Avenue Suite 1700 Boston, Massachusetts 02116 | $6,061,916,356.40[8][9] | 24,500,000 shares of PG&E Corporation Common Stock $850,000.00 in other unsecured wildfire-related claims $33,691,700.00 in other rights[10] |
| Berkley National Insurance Company | 222 South 9th Street, Suite 2700 Minneapolis, MN 55402 | $5,074,959.96 | |
| Berkley Regional Insurance Company | 222 South 9th Street, Suite 2700 Minneapolis, MN 55402 | $99,226.51 | |
| Berkshire Hathaway Guard Ins. | P.O. Box 1368 Wilkes Barre, PA 18703 | $5,298,837.50 | |

---

[6] Includes indirect exposure to subrogation claims, which provide economic interest to the subrogation claims arising from payments made (or to be made) by insurers to underlying insured parties affected by various California wildfires.

[7] Disclosed information reflects funds and investment vehicles controlled by The Baupost Group, L.L.C.

[8] The amounts reflected herein are based on information received from the insurers who were the original holders of these claims and who have made or will make payments to their respective insured policyholders that give rise to, or are otherwise related to, these claims. The Baupost Group L.L.C. has not independently verified such information which remains subject to change based on information subsequently received. The Baupost Group L.L.C. expressly reserves the right to amend or modify the information set forth in this Bankruptcy Rule 2019 Statement, whether based on information that is subsequently received, or for any other reason.

[9] $3,349,123,407.47 of the claims included in the above amount are subject to a potential right of payment to a contractual counterparty, the value of which depends on the value of such claims.

[10] Represents membership interest in a Delaware limited liability company that holds contractual rights arising out of an indirect economic exposure to subrogation rights.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Berkshire Hathaway Specialty Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $722,900.00 | |
| Brit Global Specialty | The Leadenhall Building 122 Leadenhall Street London EC3V 4AB | $23,820,342.45 | |
| California Casualty Indemnity Exchange | 1875 S. Grant Street, Ste. 800 P.O. Box M San Mateo, CA 94402 | $44,534,274.67 | |
| California Fair Plan Association | 3425 Wilshire Boulevard, Suite 1200 Los Angeles CA 90010 | $40,668,908.36 | |
| California Insurance Guarantee Association | 101 North Brand Boulevard, 6th Floor Glendale, CA 91203 P.O. Box 29066 Glendale, CA 91209 | $69,984,665.00 | |
| California Mutual Insurance Company | 650 San Benito Street Ste. 250 Hollister, CA 95023 | $4,068,507.04 | |
| Century National | P.O. Box 628 Cypress, CA 90630 | $100,000.00 | |

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Certain Underwriters at Lloyds (Novae) | | $6,457,579.00 | |
| Certain Underwriters at Lloyds (Atrium) | | $14,243,608.00 | |
| Chubb Custom Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $5,931,468.33 | |
| Chubb Group[11] | 436 Walnut Street, 4th Floor Philadelphia, PA 19106 | $28,828,529.59 | $1,025,000.00 in Senior Notes Insurance policies: unliquidated and contingent[12] |
| Church Mutual Insurance | PO Box 342 Merrill, WI 54452 | $18,440,546.12 | |
| CNA Insurance Company | 801 West Warrenville Road, Ste 700 Lisle, IL 60532 | $47,849,920.82 | |
| Continental Casualty Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | TBD | |

---

[11]     Members of the Ad Hoc Subrogation Group include: Bankers Standard Insurance Company; Chubb Custom Insurance Company; Chubb Insurance Company of New Jersey; Chubb National Insurance Company; Federal Insurance Company; Great Northern Insurance Company; Illinois Union Insurance Company; Indemnity Insurance Company of North America; Pacific Indemnity Company; Vigilant Insurance Company; Westchester Fire Insurance Company (Apa); and ACE American Insurance Company (collectively, the "**Chubb Group**").

[12]     Certain Chubb entities are party to various insurance policies and agreements with PG&E and its affiliates.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Crestmont Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $1,000,000.00 | |
| Crusader Insurance Company | 26050 Mureau Road Calabasas, CA 91302-3171 | $423,717.00 | |
| The Dentists Insurance Company | 1201 K Street Sacramento, CA 95814 | $6,701,480.86 | |
| Employers Mutual Casualty Company | 717 Mulberry Des Moines, IA 50306 P.O. Box 712 Des Moines, IA 50306 | $308,468.00 | |
| Endurance American Specialty Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | TBD | |
| Endurance Specialty Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $16,860.68 | |
| Essentia Ins. Co. | 141 Rivers Edge Dr. Ste 200 Traverse City, MI 49684 | TBD | |
| Everest Indemnity Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $363,185.10 | |

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Everest National Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $3,000,000.00 | |
| Fairfax Co / Riverstone; MS Amlin | No. 2 Minster Ct. Mincing Ln., London, UK 122 Leadenhall St London, UK | $1,106,637.33 | |
| Certain affiliates of Farmers Insurance Exchange | 6301 Owensmouth Woodland Hills, CA 91367 | $50,256,707.69 | |
| Federated Insurance | P.O. Box 486 Owatonna, MN 55060 | $1,758,448.24 | |
| First Specialty Insurance Corporation | 1200 Main Street Kansas City, MO 64105 | TBD | |
| GCube Insurance Services, Inc. | 100 Bayview Circle, Ste. 505 Newport Beach, CA 92660 | TBD | |
| General Security Indemnity Company of Arizona | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $6,849,746.71 | |
| Generali U.S. Branch | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $22,480.90 | |
| Grange Insurance Association | 200 Cedar St. Seattle, WA 98121 | $32,399,064.52 | |

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Great American Insurance Company and certain affiliates[13] | Great American Insurance Group P.O. Box 5425 Cincinnati, OH 45201-5425 | $81,098,617.90 | |
| Great Lakes Reinsurance (UK) SE | | $726,937.00 | |
| Government Employees Insurance Company and certain affiliates | 5260 Western Avenue Chevy Chase, MD 20815 | $11,276,719.68 | |
| GuideOne Insurance | PO Box 14543 Des Moines, IA 50306-3543 | $6,430,911.42 | |
| The Hanover Insurance Group | 440 Lincoln Street Worcester, MA 01653 | $19,196,114.00 | |
| Hartford Accident & Indemnity Company and certain affiliates[14] | 1 Hartford Plaza, Hartford, CT 06155 | $335,882,101.00 | $4,549,000.00 in Senior Notes |
| HDI Global SE | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $12,000,000.00 | |
| Horace Mann Insurance | | TBD | |

---

[13]    Members of the Ad Hoc Subrogation Group include: Great American Spirit Insurance Company; Great American Assurance Company; Great American Alliance Insurance Company; Great American Insurance Company; Great American Insurance Company of New York; and Great American E&S Insurance Company.

[14] Members of the Ad Hoc Subrogation Group include: Hartford Casualty Insurance Company; Hartford Fire Insurance Company; Hartford Underwriters Insurance Company; Property & Casualty Ins. Company of Hartford; Sentinel Insurance Company Ltd.; Trumbull Insurance Company; and Twin City Fire Insurance Company.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| International Insurance Company of Hannover SE | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $44,961.80 | |
| Ironshore Insurance Ltd. | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $713,186.34 | |
| Ironshore Specialty Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $22,480.90 | |
| KBIC Insurance Company | 55 Challenger Road, Suite 302 Ridgefield Park, NJ 07660 | $1,304,991.34 | |
| Kemper Auto \| Alliance United | 8260 LBJ Freeway, Suite 400 Dallas, Texas 75243 | $26,348,619.34 | |
| Landmark American Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $213,186.34 | |
| Certain Affiliates of Liberty Mutual Insurance Company ("Liberty") | 175 Berkeley Street Boston, MA 02117 | $678,063,568.00 | $122,860,717.00 in surety bonds, unliquidated and contingent[15] Insurance policies: unliquidated and contingent[16] |

---

[15] Liberty continues to write new bonds in the ordinary course of business post-petition.

[16] Liberty is party to various surety bonds, insurance policies and related agreements with PG&E and its affiliates.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Certain Underwriters of Lloyd's of London, UK Subscribing to Certain Policies[17] | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $21,325,851.00 | |
| Certain Underwriters at Lloyd's London Subscribing to Policy No. HTB-002381-002 c/o Raphael and Associates | 301 Route 17 North, Suite 401 Rutherford, NJ 07070 | $7,498,230.85 | |
| Lloyds of London Novae 2007 Syndicate | 777 Main St. Fort Worth, TX 76102 | $903,745.13 | |
| Mapfre USA | 11 Gore Road Webster, MA 01570 | $8,747,210.34 | 4,000 shares of PG&E Corporation Common Stock |
| Markel Service, Incorporated[18] | 4521 Highwoods Parkway Glen Allen, VA 23060 | $26,706,285.00 | |
| Maxum Indemnity Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $106,593.17 | |

---

[17] Members of the Ad Hoc Subrogation Group include underwriters to policy numbers: 10492-04, 10942-01, 16463W18, B0507L16360-521, B1230AP56189A17, B1230AP01428A18-16247, B128415509W18, B1353DG1700356000, B57635DAA, H3X000266, H3X000540, H3X000606, H3X000642, H3X000697, H3X000826, H3X000910, LSI100402-05, LSI100966-04, LSI103618-01, N17NA10020, P17A1770A001, PG1700158, PIV105114, PIV105143, PIV105626, PIV105719, PIV106514, PIV106864, PIV110301, PIV119634, PLNMBLV00001318, PN1600673AGA, PN1700079, PN1700089, PN1700157, PN1700364, PRPNA1701511, PSLPL106107, PTNAM1701507, PTNAM1701688, PTNAM1802877, PTNAM1802878, PTNAM1802879, PTNAM1802896, W1D52B160101, and W1DC80180201.

[18] On behalf of its affiliated insurers, Evanston Insurance Company, Markel American Insurance Company, and Markel Insurance Company.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Maxum Specialty Insurance Group | 3655 North Point Parkway Suite 600 Alpharetta, GA 30005 | $167,036.14 | |
| Mercury Insurance and certain affiliates | 555 W. Imperial Highway Brea, CA 92821 | $63,489,833.00 | |
| Metropolitan Direct Property & Casualty | 500 MetLife Way Freeport, IL 61032 | $6,812,891.97 | |
| National Fire & Marine Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | TBD | |
| Nationwide Mutual Insurance Company and certain affiliates | One Nationwide Plaza, Columbus, Ohio 43215 | $845,423,014.00 | |
| Nautilus Insurance Company | 600 Las Colinas Blvd., Ste. 1400 Irving, TX 75039 | $20,896.00 | |
| Nonprofits Insurance Alliance | P.O. Box 8507 Santa Cruz, CA 95061-8507 | $4,258,177.00 | |
| OneBeacon / Atlantic Specialty Ins. Co. | 188 Inverness Dr. West, Ste. 600 Englewood, CO 80112 | $384,885.46 | |
| Oregon Mutual Insurance Company | PO Box 808 McMinnville, Oregon 97128 | $4,307,975.81 | $140.88 derivative interest in Pacific Gas and Electric Company Preferred Stock |
| Pacific Specialty Insurance Co. | 2200 Geng Road Palo Alto, CA 94303 | $45,259,283.34 | |

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Pharmacists Mutual Insurance Company | P.O. Box 360, Algona, Iowa 50511 | $652,000.00 | |
| Philadelphia Indemnity Insurance Company | One Bala Plaza, Suite 100 Bala Cynwyd, PA 19004 | $22,785,967.27 | |
| The Princeton Excess and Surplus Lines Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $290,848.35 | |
| The Progressive Corporation | 6300 Wilson Mills Road Mayfield Village, OH 44143 | $11,852,398.08 | 63,500 shares of PG&E Corporation Common Stock |
| PURE Insurance | 44 S. Broadway, Suite 301 White Plains, NY 10601 | $10,545,017.55 | |
| QBE Americas, Inc. | One QBE Way Sun Prairie, WI 53596 | $80,403,727.00 | |
| Rite Aid Corporation and Thrifty Payless, Inc. | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $2,750,000.00 | |
| RSA Insurance Co PLC | 20 Fenchurch St. London EC3M 3AV | £6,481,751.56 | |
| RSUI Group, Inc. | 945 East Paces Ferry Road, Suite 1800 Atlanta, GA 30326 | $48,354.38 | |
| RSUI Indemnity Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | TBD | |

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Selective Insurance Company of America; Mesa Underwriters Specialty Insurance Company | 40 Wantage Ave. Branchville, NJ 07826 | $1,188,619.06 | |
| Sentry Select Insurance Company | P.O. Box #8043 Stevens Point, WI 54481 | TBD | |
| Star Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $15,419.67 | |
| Starr Surplus Lines Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $745,392.18 | |
| Starr Technical Risks | 5151 San Felipe Suite #200 Houston, TX 77056 | $241,771.89 | |
| State Farm Mutual Automobile Insurance Company and certain affiliates | One State Farm Plaza Bloomington, IL 61710 | $2,514,705,805.00 | $86,000,000.00 in Senior Notes $5,000,000.00 in Non-Wildfire Subrogation Claims $530,000.00 in Contractual Obligations under Prepetition Settlement Agreement |
| Stillwater Insurance Group | 12500 I St., Ste. 100 Omaha, NE 68137 | $8,964,358.14 | |

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Strategic Value Partners, LLC acting strictly as agent on behalf of its managed funds and accounts | 100 West Putnam Ave Greenwich, CT 06830 | $127,081,229.25 | $118,250,000.00 in Senior Notes $15,000,000.00 in Revolving Credit Facility principal[19] |
| Sutter Insurance Company | 1301 Redwood Way, Suite 200 Petaluma, CA 94954 | $838,200.00 | |
| Tokio Marine American Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $14,224.00 | |
| TOPA Insurance Co. | 24025 Park Sorrento, Suite 300 Calabasas, CA 91302 | $631,000.00 | |
| TPG Sixth Street Partners, LLC[20] | 3100 McKinney Ave., Suite 1030 Dallas, TX 75201 | $416,190,548.68[21] | 1,000,000 shares of PG&E Corporation Common Stock $152,124,000.00 in Senior Notes $9,884,083.91 in Revolving Credit Facility principal |

---

[19] "Revolving Credit Facility" shall have the meaning ascribed to it in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Dkt. No. 263].

[20] Disclosed information reflects funds and investment vehicles controlled by affiliates of TPG Sixth Street Partners, LLC.

[21] The amounts reflected herein are based on information received from the insurers who hold legal title to and issued the policies relating to these claims, and who have made or will make payments to their respective insured policyholders that give rise to, or are otherwise related to, these claims. TPG Sixth Street Partners, LLC has not independently verified such information which remains subject to change based on information subsequently received. TPG Sixth Street Partners, LLC expressly reserves the right to amend or modify the information set forth in this Bankruptcy Rule 2019 Statement, whether based on information that is subsequently received, or for any other reason.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| The Travelers Indemnity Company and certain of its property casualty insurance affiliates[22] | 1 Tower Square, 0000-08MS Hartford, CT 06183 | $664,857,946.00 | $40,000,000.00 in Senior Notes |
| TWE Insurance Company Pte. Ltd. | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $3,641,450.00 | |
| United Fire & Casualty Financial Pacific | PO Box 73909 Cedar Rapids, IA 52407 | $4,526,457.00 | |
| Certain affiliates of United Services Automobile Association[23] | 9800 Fredericksburg San Antonio, TX 78288 | $532,829,646.00 | $20,000,000.00 in Senior Notes $38,000 in other claims |
| United Specialty Insurance Company | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $1,518,656.34 | |
| United States Liability Insurance Company | 1190 Devon Park Drive Wayne, PA 19087 | $401,790.00 | |

[22] Members of the Ad Hoc Subrogation Group include: Travelers Casualty Insurance Company of America; Travelers Indemnity Company of Connecticut; Travelers Property Casualty Company of America; The Travelers Indemnity Company of America; St Paul Fire and Marine, The Travelers Indemnity Company; Travelers Commercial Insurance Company; The Standard Fire Insurance Company; The Travelers Home and Marine Insurance Company; Travelers Property Casualty Insurance Company; Fidelity and Guaranty Insurance Underwriters Inc.; The Northfield Insurance Company; Northland Insurance; Constitution State Services, LLC.

[23] Members of the Ad Hoc Subrogation Group include: United Services Automobile Association; USAA Casualty Insurance Company; USAA General Indemnity Company; Garrison Property and Casualty Company, and affiliates companies.

| NAME | ADDRESS | WILDFIRE RELATED SUBROGATION CLAIMS[1] | OTHER DISCLOSABLE ECONOMIC INTERESTS |
|---|---|---|---|
| Tudor Insurance Company and certain affiliates[24] | 300 Kimball Drive, Suite 500 Parsippany NJ 07054 | $3,913,658.23 | |
| Wawanesa General Insurance Co. | 9050 Friars Rd. San Diego, CA 92108 | $1,926,522.57 | |
| XL America Insurance, Inc. | c/o Denenberg Tuffley, PLLC 28411 Northwestern Hwy, Suite 600 Southfield, MI 48034 | $13,084,303.38 | |
| Zenith Insurance Company | P.O. Box 619083 Roseville, CA 95661-9083 | $3,987,318.25 | |
| Zurich American Insurance Company | 1299 Zurich Way Schaumburg, IL 60196 | $43,971,489.13 | |

---

[24] Members of the Ad Hoc Subrogation Group include: Western World Insurance Company.