<pre>
 1                   UNITED STATES BANKRUPTCY COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3                             -oOo-

 4   In Re:                      ) Case No. 19-30088
                                 ) Chapter 11
 5   PG&E CORPORATION AND PACIFIC )
     GAS AND ELECTRIC COMPANY     ) San Francisco, California
 6                                ) Wednesday, January 29, 2020
                        Debtors.  ) 10:00 AM
 7   _____  )
                                    STATUS CONFERENCE RE:
 8                                  CONFIRMATION

 9                                  SECURITIES LEAD PLAINTIFF'S
                                    MOTION TO APPLY BANKRUPTCY
10                                  RULE 7023 TO CLASS PROOF OF
                                    CLAIM [5042]
11
                         TRANSCRIPT OF PROCEEDINGS
12                 BEFORE THE HONORABLE DENNIS MONTALI
                     UNITED STATES BANKRUPTCY JUDGE
13

14   APPEARANCES:
     For the Debtors:            STEPHEN KAROTKIN, ESQ.
15                               RICHARD W. SLACK, ESQ.
                                 Weil, Gotshal & Manges LLP
16                               767 Fifth Avenue
                                 New York, NY 10153
17                               (212) 310-8000

18                               GEORGE E. ZOBITZ, ESQ.
                                 (Telephonically)
19                               Cravath, Swaine & Moore LLP
                                 825 Eighth Avenue
20                               New York, NY 10019
                                 (212) 474-1996
21
     Special Counsel to the      ERIC R. TODDERUD, ESQ.
22   Debtors:                    (Telephonically)
                                 Berman and Todderud LLP
23                               3502 Fremont Avenue North
                                 Suite 2
24                               Seattle, WA 98103
                                 (206) 279-3272
25
</pre>

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1    For the Official Committee   GREGORY A. BRAY, ESQ.
      of Unsecured Creditors:      Milbank LLP
 2                                 2029 Century Park East
                                   33rd Floor
 3                                 Los Angeles, CA 90067
                                   (424) 386-4000
 4
      For PG&E Holdco Group:       AMY CATON, ESQ.
 5                                 (Telephonically)
                                   Kramer Levin Naftalis & Frankel
 6                                 LLP
                                   1177 Avenue of the Americas
 7                                 New York, NY 10036
                                   (212) 715-7772
 8
      For Group of Creditors:      MARK E. FELGER, ESQ.
 9                                 (Telephonically)
                                   Cozen O'Connor
10                                 1201 North Market Street
                                   Suite 1001
11                                 Wilmington, DE 19801
                                   (302) 295-2087
12
                                   THOMAS A. REGAN, ESQ.
13                                 (Telephonically)
                                   Cozen O'Connor
14                                 501 West Broadway
                                   Suite 1610
15                                 San Diego, CA 92101
                                   (619) 685-1757
16
      For the Ad Hoc Committee     DAVID M. FELDMAN, ESQ.
17    of Holders of Unsecured      (Telephonically)
      Trade Claims:                MATTHEW K. KELSEY, ESQ.
18                                 (Telephonically)
                                   200 Park Avenue
19                                 New York, NY 10166
                                   (212) 351-4000
20
                                   MATTHEW D. MCGILL, ESQ.
21                                 Gibson, Dunn & Crutcher LLP
                                   1050 Connecticut Avenue, N.W.
22                                 Washington, DC 20036
                                   (202) 955-8500
23

24

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For the Official Committee   DAVID J. RICHARDSON, ESQ.
     of Tort Claimants:           Baker & Hostetler LLP
 2                                11601 Wilshire Boulevard
                                  Suite 1400
 3                                Los Angeles, CA 90025
                                  (310) 442-8858
 4
                                  CECILY A. DUMAS, ESQ.
 5                                Baker & Hostetler LLP
                                  600 Montgomery Street
 6                                Suite 3100
                                  San Francisco, CA 94111
 7                                (415)659-2600

 8   For the Ad Hoc Group of      MATTHEW A. FELDMAN, ESQ.
     Subrogation Claim Holders:   (Telephonically)
 9                                Willkie Farr & Gallagher LLP
                                  787 Seventh Avenue
10                                New York, NY 10019
                                  (212) 728-8651
11
     For Plaintiffs Aceves, et    BRENDAN M. KUNKLE, ESQ.
12   al.:                         (Telephonically)
                                  Abbey, Weitzenberg, Warren & Emery
13                                PC
                                  100 Stony Point Road
14                                Suite 200
                                  Santa Rosa, CA 95401
15                                (707) 542-5050

16   For Adventist Health         REBECCA J. WINTHROP, ESQ.
     System/West and Feather      Norton Rose Fulbright US LLP
17   River Hospital:              555 South Flower Street
                                  41st Floor
18                                Los Angeles, CA 90071
                                  (213) 892-9200
19
     For Board of Directors of    SANDEEP QUSBA, ESQ.
20   PG&E:                        (Telephonically)
                                  MICHAEL H. TORKIN, ESQ.
21                                (Telephonically)
                                  Simpson Thacher & Bartlett LLP
22                                425 Lexington Avenue
                                  New York, NY 10017
23                                (212) 455-2000

24

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For California State Agencies: | PAUL J. PASCUZZI, ESQ. |
| 2 | | Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP |
| | | 500 Capitol Mall |
| 3 | | Suite 2250 |
| | | Sacramento, CA 95814 |
| 4 | | (916) 329-7400 |
| 5 | For Calpine: | AMENEH BORDI, ESQ. |
| | | (Telephonically) |
| 6 | | Kirkland & Ellis LLP |
| | | 601 Lexington Avenue |
| 7 | | New York, NY 10022 |
| | | (212) 909 3264 |
| 8 | | |
| | For Creditor Agajanian: | SEAN T. HIGGINS, ESQ. |
| 9 | | (Telephonically) |
| | | Andrews & Thornton, Attorneys at |
| 10 | | Law, A Law Corporation |
| | | 4701 Von Karman Avenue |
| 11 | | Suite 300 |
| | | Newport Beach, CA 92660 |
| 12 | | (800) 664-1734 |
| 13 | For CPUC: | BRIAN S. HERMANN, ESQ. |
| | | (Telephonically) |
| 14 | | ALAN W. KORNBERG, ESQ. |
| | | (Telephonically) |
| 15 | | Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| 16 | | 1285 Avenue of the Americas |
| | | New York, NY 10019 |
| 17 | | (212) 373-3000 |
| 18 | For Ghost Ship Plaintiffs' Ex. Committee: | ESTELA O. PINO, ESQ. |
| | | (Telephonically) |
| 19 | | Pino & Associates |
| | | 1520 Eureka Road |
| 20 | | Suite 101 |
| | | Roseville, CA 95661 |
| 21 | | (916) 641-2288 |
| 22 | For International Brotherhood of Electrical Workers Local Union 1245: | W. STEVEN BRYANT, ESQ. |
| | | (Telephonically) |
| 23 | | Locke Lord LLP |
| | | 600 Congress Avenue |
| 24 | | Suite 2200 |
| | | Austin, TX 78701 |
| 25 | | 512-305-4726 |

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
1    For JPMorgan Chase:        EREZ E. GILAD, ESQ.
                                (Telephonically)
2                               KRISTOPHER M. HANSEN, ESQ.
                                (Telephonically)
3                               SHERRY J. MILLMAN, ESQ.
                                (Telephonically)
4                               Stroock & Stroock & Lavan LLP
                                180 Maiden Lane
5                               New York, NY 10038
                                (212) 826-8853
6
                                FRANK A. MEROLA, ESQ.
7                               (Telephonically)
                                Stroock & Stroock & Lavan LLP
8                               2029 Century Park East
                                Los Angeles, CA 90067
9                               (310) 556-5959

10   For Liberty Mutual         KEVIN D. BUSH, ESQ.
     Insurance:                 (Telephonically)
11                              Cozen O'Connor
                                501 West Broadway
12                              Suite 1610
                                San Diego, CA 92101
13                              (619) 685-1716

14   For Public Employees       MICHAEL S. ETKIN, ESQ.
     Retirement Association of  ANDREW BEHLMANN, ESQ.
15   New Mexico:                Lowenstein Sandler LLP
                                One Lowenstein Drive
16                              Roseland, NJ 07068
                                (973) 597-2500
17
                                RANDY MICHELSON, ESQ.
18                              Michaelson Law Group
                                220 Montgomery Street
19                              Suite 2100
                                San Francisco, CA 94104
20                              (415) 512-8600

21                              CAROL C. VILLEGAS, ESQ.
                                JEFFREY A. DUBBIN, ESQ.
22                              NICOLE ZEISS, ESQ.
                                Labaton Sucharow LLP
23                              140 Broadway
                                New York, NY 1005
24                              (212) 907-0700

25
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Public Entity Impacted   CLIFF I. TAYLOR, ESQ.
     by the Wildfire:             (Telephonically)
 2                                Stutzman, Bromberg, Esserman &
                                  Plifka
 3                                2323 Bryan Street
                                  Suite 2200
 4                                Dallas, TX 75201
                                  (214) 969-4990
 5
     For South San Joaquin        PAUL R. GLASSMAN, ESQ.
 6   Irrigation District:         (Telephonically)
                                  Stradling, Yocca, Carlson & Rauth,
 7                                P.C.
                                  100 Wilshire Boulevard
 8                                Fourth Floor
                                  Santa Monica, CA 90401
 9                                (424)214-7021

10   For Southern Power           HARRIS B. WINSBERG, ESQ.
     Company:                     (Telephonically)
11                                Troutman Sanders LLP
                                  600 Peachtree Street NE
12                                Suite 3000
                                  Atlanta, GA 30308
13                                (404) 885-3348

14   For State Farm:              ALLAN S. BRILLIANT, ESQ.
                                  (Telephonically)
15                                Dechert LLP
                                  Three Bryant Park
16                                1095 Avenue of the Americas
                                  New York, NY 10036
17                                (212) 698-3600

18   For Travelers Ins. Co. and   A. SCOTT LOEWE, ESQ.
     Hartford Ins. Co.:           (Telephonically)
19                                Bauman Loewe Witt & Maxwell, PLLC
                                  8765 East Bell Road
20                                Suite 210
                                  Scottsdale, AZ 85260
21                                (480)502-4664

22                                PETER D. WOLFSON, ESQ.
                                  (Telephonically)
23                                Dentons US LLP
                                  1221 Avenue of the Americas
24                                New York, NY 10020
                                  (212) 768-6840

25
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For TURN: | ROBERT G. HARRIS, ESQ. |
| | | (Telephonically) |
| 2 | | Binder & Malter LLP |
| | | 2775 Park Avenue |
| 3 | | Santa Clara, CA 95050 |
| | | (408) 295-1700 |
| 4 | | |
| | For the United States of | MATTHEW J. TROY, ESQ. |
| 5 | America: | (Telephonically) |
| | | United States Department of |
| 6 | | Justice |
| | | Ben Franklin Station |
| 7 | | P.O. Box 875 |
| | | Washington, DC 20044 |
| 8 | | (202) 514-9038 |
| 9 | ALSO PRESENT: | WILLIAM B. ABRAMS, Pro Se |
| 10 | | ADAM GOLDBERG (Telephonically), |
| | | Trident DMG |
| 11 | | |
| | | BENJAMIN SCHRAG (Telephonically), |
| 12 | | Prime Clerk |
| 13 | | SAMUEL STARR (Telephonically), FTI |
| | | Consulting |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| | Court Recorder: | ANKEY THOMAS |
| 18 | | United States Bankruptcy |
| | | Court |
| 19 | | 450 Golden Gate Ave. |
| | | San Francisco, CA 94102 |
| 20 | | |
| 21 | Transcriber: | CLARA RUBIN |
| | | eScribers, LLC |
| 22 | | 7227 N. 16th Street |
| | | Suite #207 |
| 23 | | Phoenix, AZ 85020 |
| | | (973) 406-2250 |
| 24 | | |
| | Proceedings recorded by electronic sound recording; | |
| 25 | transcript provided by transcription service. | |

PG&E Corp., Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JANUARY 29, 2020,

2                          10:00 AM

3                           -oOo-

4    (Call to order of the Court.)

5         THE COURT:  Good morning, everyone.

6         IN UNISON:  Good morning, Your Honor.

7         THE COURT:  Please be seated.

8         THE CLERK:  The PG&E Corporation.

9         THE COURT:  Mr. Karotkin, good morning.  If you're

10   okay, I'm going to take the Rule 7023 motion and then deal with

11   the Chapter 11 status matter.  Is that okay with you?

12        MR. KAROTKIN:  Yes, sir, whatever --

13        THE COURT:  Anything else on your agenda for this

14   morning?

15        MR. KAROTKIN:  I don't believe so.

16        THE COURT:  Okay.  All right, well, let's proceed.  I

17   gave you the docket text on the Rule 7023 motion, so who's got

18   the watch?  Who's got the duty?

19        Good morning.

20        MR. ETKIN:  Good morning, Your Honor.  Michael Etkin,

21   Lowenstein Sandler, on behalf of the Public Employees

22   Retirement System of New Mexico.

23        THE COURT:  All right.  Mr. Etkin.

24        MR. ETKIN:  If I can just take a moment to introduce

25   my colleagues who are --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      THE COURT:  Sure.

2      MR. ETKIN:  -- here today.

3      THE COURT:  Please.

4      MR. ETKIN:  My partner, Andrew Behlmann --

5      THE COURT:  Good morning.

6      MR. ETKIN:  -- Randy Michelson, our --

7      THE COURT:  I know Ms. Michelson.

8      MR. ETKIN:  -- California counsel.

9      MS. MICHAELSON:  Good morning, Your Honor.

10     MR. ETKIN:  And from the Labaton law firm, which is

11  lead counsel in the underlying class action, we have Carol

12  Villegas --

13     THE COURT:  Good morning.

14     MR. ETKIN:  -- Nicole Zeiss --

15     UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

16     MR. ETKIN:  -- and Jeff Dubbin.

17     THE COURT:  Thank you for coming to court.

18     MR. DUBBIN:  Good morning, Your Honor.

19     THE COURT:  You all have seats?  There's a couple

20  seats on the side if you -- folks coming in late or --

21     MR. ETKIN:  We'll try to squeeze in --

22     THE COURT:  Okay, so --

23     MR. ETKIN:  -- somewhere, Your Honor.

24     THE COURT:  -- you've got my docket order about

25  timing?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. ETKIN:  I do.  And --

2          THE COURT:  Okay.

3          MR. ETKIN:  -- again, preliminarily, Your Honor, my

4    colleague, Mr. Behlmann, and I are going to split the argument,

5    and Mr. Behlmann's going to handle the notice issue and I'll

6    handle everything else.  We've talked about trying to reserve

7    ten minutes --

8          THE COURT:  Okay.

9          MR. ETKIN:  -- for rebuttal, but --

10         THE COURT:  Well, my --

11         MR. ETKIN:  -- lawyers and timing is always

12   aspirational, Your Honor.

13         THE COURT:  You know, we're running parallel with the

14   United States Senate this morning at this exact moment, but I

15   don't have the rigid timetable that the chief justice does.

16         MR. ETKIN:  That's --

17         THE COURT:  But I do have a couple of preliminary

18   questions, so -- again, I don't think you've been here before,

19   but I'm a notorious questioner.

20         MR. ETKIN:  Oh, no, I've --

21         THE COURT:  Can you imagine presiding over fifty

22   senators and they can't talk?

23         MR. ETKIN:  I had a tough-enough time representing a

24   group of lawyers who couldn't agree whether it was day or

25   night, so --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  My question is rather obvious, I think.

2  You made the point in your papers and in response, particularly

3  to the TCC:  this is not about the nondebtor defendants; your

4  claims here that you're asserting and talking about are only

5  against the corporate debtors.  And I guess -- does it really

6  matter whether they are derivative or direct?  Either way,

7  510(b) disposes of them in a sense; isn't that right?

8    MR. ETKIN:  Well, I think, as long as those are claims

9  in connection with the purchase or sale of a security, --

10    THE COURT:  But isn't that what this is --

11    MR. ETKIN:  -- 510(b) disposes of it.  And that's what

12  our claims are.

13    THE COURT:  Well, that's right.  So --

14    MR. ETKIN:  So we have conceded that 510(b) --

15    THE COURT:  Right, but what I'm getting at --

16    MR. ETKIN:  -- applies to our claims.

17    THE COURT:  -- is I went and read in the papers your

18  dispute that I think is a nondispute for today's purposes,

19  about claims against the nondebtor officers and directors.

20  Whether those are direct or directive is for another day or

21  another court; it's not relevant to today.

22    MR. ETKIN:  Absolutely correct, Your Honor.  I think

23  that's --

24    THE COURT:  And so do I care or do you care whether

25  the members of the class that you want to represent actively

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp., Pacific Gas and Electric Company

1    here assert derivative claims or direct claims against the

2    corporate debtors?  Does it matter?

3            MR. ETKIN:  Well, it only matters to the extent that,

4    if we're asserting derivative claims, that brings into play

5    another issue that's not before the Court.

6            THE COURT:  Right.

7            MR. ETKIN:  The other point is that, if they were

8    derivative claims against the debtor, that means the debtor

9    would own the claims against itself.  So by --

10           THE COURT:  Well, I understand, but isn't that the

11   nature of all derivative claims?

12           MR. ETKIN:  Correct, Your Honor --

13           THE COURT:  Yeah.

14           MR. ETKIN:  -- but these are -- the claims asserted

15   against the debtor in the proofs of claim are securities-fraud

16   claims.  But for purposes of today, I don't know that it

17   matters.  But certainly we dispute the fact that our claims

18   against the debtors are derivative claims as well.

19           THE COURT:  It seems to me angels on a pin, unless I'm

20   missing something, because you acknowledge that the 510(b)

21   operates and therefore the fire survivors are not impacted by

22   this.  The only people that are impacted, I guess, on an

23   adverse outcome, not on today's motion but on the merits, are

24   the equity holders.

25           MR. ETKIN:  That's correct, Your Honor --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  Okay.  Okay.  I mean, without --

2          MR. ETKIN:  -- because that's where our claims fall.

3          THE COURT:  -- without getting into the nuances of

4    what kind of equity holders and securities -- I mean equity

5    versus debt, I don't care about that today.

6          So here's my next question:  A lot is spent -- a lot

7    of time is spent on the debtors' side, about the notice and the

8    class -- the class notice and the supplemental notices.  If an

9    individual -- let's say Mr. A -- Mr. A held equity in the

10   parent company all the way through the record date and the

11   petition date and was therefore given notice.  Isn't that

12   person going to be -- that Individual A, isn't he affected by

13   the consequences if he hasn't filed a timely claim?

14         In other words -- let me state it more specifically.

15   Do you speak here today on behalf of every single person who

16   might have been defrauded in the four years that we're talking

17   about, or only those who didn't have the proper notice and

18   therefore could have, or either did or didn't, file proofs of

19   claim?  That's what I -- because that's what I'm a little

20   unclear on.  And --

21         MR. ETKIN:  I understand the question.

22         THE COURT:  And that gets to proof of claim or proof

23   of interest, because proofs of interest didn't have to be

24   filed.  And the notice says you don't have to file a proof of

25   interest but, if you have a claim, you have to -- you have to

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    do so.

2            MR. ETKIN:  Correct.  Well, that begs the question of

3    whether a particular current holder or a holder on the record

4    date understood that distinction and even knew that they had a

5    claim.

6            THE COURT:  Well, Mr. A on my hypothetical got the

7    notice anyway.  Whether he knew what to do about it we'll leave

8    for another day.

9            MR. ETKIN:  Correct.

10           THE COURT:  My question is do you speak for Mr. A

11   today?

12           MR. ETKIN:  We speak for all putative class members,

13   Your Honor, whether they're current holders or not.

14           THE COURT:  And whether they got actual notice or not?

15           MR. ETKIN:  And whether they got actual notice or not.

16           THE COURT:  Okay, the next question --

17           MR. ETKIN:  Mr. Behlmann'll get into that issue in a

18   little more detail --

19           THE COURT:  Okay, well, all right.

20           MR. ETKIN:  -- but --

21           THE COURT:  And the last question on that subject is

22   what do we do if this gets to the class situation and A has

23   filed a claim?  What happens in a class-action matter of this

24   nature in the bankruptcy court when a member of the class filed

25   a claim?  Because, obviously --

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    MR. ETKIN:  What --

2    THE COURT:  -- unless -- I didn't go look at the

3    claims docket.

4    MR. ETKIN:  Right.

5    THE COURT:  Maybe you did.  But I suspect some people

6    did.

7    MR. ETKIN:  We didn't look at the claims docket, nor

8    does anybody indicate how many of those types of claims were

9    actually filed, if any, other than our client.

10    But here's what happens:  If the class is ultimately

11    certified --

12    THE COURT:  Right.

13    MR. ETKIN:  -- and there's a claim that is either

14    resolved by settlement or litigation, class members, under Rule

15    23 incorporated into Rule 7023, have the option to opt out if

16    they want.

17    THE COURT:  Well, as they do in all class -- most

18    class actions.

19    MR. ETKIN:  Correct.

20    THE COURT:  But most class actions aren't in

21    bankruptcy with claims bar dates.

22    MR. ETKIN:  That's correct.  So if somebody did file,

23    how that's been handled in -- I've been involved in a lot of

24    these over the years, and how it's been handled in the past is

25    the individual claim is deemed duplicative of the class claim,

PG&E Corp., Pacific Gas and Electric Company

1    and the distribution process with respect to a classwide

2    distribution, to the extent there's anything to distribute at

3    the end of the day, would take precedence over that, unless

4    that individual decided to opt out of the class and pursue its

5    own claim.  Frankly, from the standpoint of reality, Your

6    Honor, that would be highly unlikely.

7         THE COURT:  Okay.  And I realize that I'm a little bit

8    ahead of myself, too.  You're here today to tell me that I

9    should permit the class claim and, if I answer that question in

10   the affirmative, then at some other day we'll deal with the

11   more traditional Rule 23 matters.  But --

12        MR. ETKIN:  As well as the merits.

13        THE COURT:  But they stay in this court, right?

14        MR. ETKIN:  They stay in this court, Your Honor.

15        THE COURT:  Because it's a proof-of-claim issue.

16        MR. ETKIN:  That's --

17        THE COURT:  Okay.

18        MR. ETKIN:  That's exactly right.  I mean, in all

19   candor, and based upon some of the things Your Honor has done

20   already in this case, it may make more practical sense to have

21   one court deal with the class-certification issue.  But again,

22   all of that is for another day.

23        THE COURT:  You know, I'm going to get a reputation

24   among the district judges if I keep trying to shift stuff off

25   on them.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    MR. ETKIN:  No -- I think it's just the practical

2   approach --

3    THE COURT:  Okay.

4    MR. ETKIN:  -- that Your Honor takes.

5    THE COURT:  Those are my preliminary questions.  So

6   why don't you go ahead and use the time as you wish on your

7   argument.  I have read the briefs.  I am familiar with the

8   issues.  But you're up.

9    MR. ETKIN:  Okay.  Thank you, Your Honor.  Your Honor,

10  what the parties do agree about is that there are three primary

11  factors considered by the courts that have addressed the

12  threshold question of whether to apply Rule 7023 --

13    THE COURT:  Right.

14    MR. ETKIN:  -- to a timely-filed class proof of claim,

15  whether the class was certified pre-petition, the propriety of

16  the notice provided to the class members, and the impact on the

17  administration of the estate.

18    THE COURT:  You can save some of your remaining time.

19  I got issue 1.  I mean, it's --

20    MR. ETKIN:  Right.

21    THE COURT:  If in my discretion there should have been

22  something done that were done and my discretion is to say

23  that's not a fatal flaw by it not having happened, there's

24  nothing else to talk about.

25    MR. ETKIN:  I didn't intend to go into the pre-

PG&E Corp., Pacific Gas and Electric Company

1    petition class-cert issue too much; I think that's covered by

2    the papers.

3          I think the debtors and the TCC adhere to an overly

4    rigid analysis, Your Honor, of these factors, without

5    consideration of the facts and circumstances here.  Frankly,

6    Your Honor, the arguments advanced by the TCC and the debtors

7    would effectively neutralize the very purpose of Rule 7023 that

8    is obviously in the books for a reason.

9          While the debtors appear to analyze these factors

10   somewhat in a vacuum along with the TCC, they ignore the

11   admonition in the case law, including the Musicland case, which

12   is cited often by both the debtors and the TCC, that the weight

13   of each of these three factors must be determined on a case-by-

14   case basis, that no one factor is dispositive, and any factor

15   may become more or less important, depending on the facts of

16   the case.  And we submit, Your Honor, that whether this class

17   was certified pre-petition or not is a nonfactor, especially

18   since the operative complaint was filed post-petition in the

19   district court.  And that was pursuant to a stipulation with

20   the debtors and others, that was so-ordered by this Court, in

21   terms of the timing of the filing of the third --

22          THE COURT:  Okay, actually I realize that --

23          MR. ETKIN:  -- amended complaint.

24          THE COURT:  -- there was another question that's maybe

25   not related exactly.  And if you want to pass it to Mr.

eScribers
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    Behlmann, you can.  But forgive me for forgetting one of my

2    hypotheticals.  We talked about Mr. A who might file a claim.

3    Now I want to talk about Mr. B, Mr. B who did not get anything.

4    Mr. B sold his -- bought his stock in 2016, sold it in 2018,

5    and never got on anybody's service list.  If I deny the motion

6    today, is Mr. B out of luck?

7              MR. ETKIN:  Correct.

8              THE COURT:  Completely?

9              MR. ETKIN:  Well, unless this Court adopts the

10   reasoning of the MF Global case and the Connaught case in New

11   York, where those courts took the position that the American

12   Pipe -- the Supreme Court case, American Pipe -- the tolling

13   that exists in class actions, where individual claims are

14   tolled for statute-of-limitations purposes, if the class is not

15   certified --

16             THE COURT:  Well, but I'm not -- but not even not

17   certified.  If the motion to file the claim is denied --

18             MR. ETKIN:  That's correct.

19             THE COURT:  -- and again, assuming it's not appealed,

20   Mr. B is out of luck, I guess, unless, as a matter of due

21   process, his claim would pass through.  1141 says confirmation

22   and discharge is everything, but the case law has said due

23   process still means something.

24             MR. ETKIN:  That's correct, Your Honor.

25             THE COURT:  So --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. ETKIN:  That's correct.

2          THE COURT:  -- what happens to Mr. B in my

3    hypothetical if he never got --

4          MR. ETKIN:  Well, there are two --

5          THE COURT:  -- notice of anything?

6          MR. ETKIN:  Likely he is -- as well as thousands of

7    others, would be out of luck.  The exception is, number one, if

8    there was a ruling that -- like in those cases I mentioned,

9    that American Pipe applies and you need to give these absent

10   class members, where certification was not ordered by this

11   Court, an opportunity to come in and file their own claim

12   again --

13         THE COURT:  Okay.

14         MR. ETKIN:  -- or if that individual class member

15   decided to come in and say that the discharge is not applicable

16   because they never got notice -- constitutionally appropriate

17   notice of the bar date.

18         THE COURT:  Well, that might invite a new class action

19   on behalf of everybody who didn't get any notice at all, which

20   is sort of a subset of what you're here for today.  I mean,

21   aren't you --

22         MR. ETKIN:  Yeah, I think about -- I think about that,

23   Your Honor, and, frankly, my head comes closer to exploding.  I

24   don't know what would happen or what could happen down the

25   road.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  Well, but this case is unlike the cases

2    where notice is never given because there's no way the person

3    could have even known that a claim existed.  This is not like

4    the abuse cases or the latent toxic-tort cases.  This is -- the

5    allegations are that something was misstated during a four-year

6    period before bankruptcy, and the facts are, as alleged, some

7    people bought securities during that period, and some stayed on

8    and still held them, and some got rid of them.  And the

9    question is, in that second category -- we're back to the point

10   that I'm struggling with and what happens to those people.

11         MR. ETKIN:  I think they're potentially

12   disenfranchised, Your Honor --

13         THE COURT:  Okay.

14         MR. ETKIN:  -- if they don't have an opportunity for

15   representation through the class-claim process.

16         Your Honor, the debtors and the TCC seem to also

17   believe that the timing of the filing of the 7023 motion here

18   and the fact that lead plaintiff did not object to the bar-date

19   motion are fatal to the application of Rule 7023.  And again,

20   when the facts and context are taken into consideration, as

21   well as the relevant case law set forth in our motion and the

22   reply, those arguments don't impact the necessary conclusion

23   that the class mechanism embodied in the Bankruptcy Rules is

24   appropriate and essentially, really -- and the Court just

25   touched upon it -- to preserve the opportunity for thousands of

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    defrauded investors to have their claims against the debtor

2    resolved on the merits.

3              THE COURT:  Well, aren't we back to my poor Mr. B?

4    Mr. B doesn't even know that there's a hearing on whether

5    there's going to be a bar date, so I can hardly say he should

6    have come and objected to the bar date, if he didn't know about

7    the thing in the first place.

8              MR. ETKIN:  We're back to your poor Mr. B.

9              THE COURT:  Right?

10             MR. ETKIN:  That's correct, Your Honor.

11             THE COURT:  Okay.

12             MR. ETKIN:  And in our papers there's an indication --

13   and Mr. Behlmann'll touch on it as well -- as to the amount of

14   shares that traded in the nine-month period between the end of

15   the class period set forth in the class-action complaint and

16   the class proof of claim, and the record date, which was

17   utilized for purposes of determining holders.  Billions of

18   shares were traded.  So --

19             THE COURT:  No; I understand.

20             MR. ETKIN:  -- the idea that notifying holders

21   notified the entire class of purchasers during the class period

22   is just, frankly, an absurd notion.

23             Your Honor, I'd like to talk briefly about the timing

24   of the Rule 7023 motion, to the extent the Court believes that

25   filing less than two months after the bar date was not undue

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    delay.  It's really a function, Your Honor, of whether granting

2    the relief requested will negatively impact the administration

3    of this case.  And we maintain, it clearly won't here.

4         This is not Musicland or its progeny, the Fedra (ph.)

5    case in the Southern District, where a disclosure statement was

6    approved, votes on the plan were being or had been solicited.

7    And indeed, in Musicland the confirmation hearing had already

8    started.  Nor has the prospect of a class claim by defrauded

9    investors come out of the woodwork.  The debtors were very much

10   on top of it by filing the adversary proceeding that they filed

11   two weeks after the petition date.

12        There are no compelling circumstances here mandating

13   denial of the motion based upon the timing of its filing.  The

14   class claim itself was timely filed.  The debtors were

15   defendants in the securities litigation pre-petition.  The

16   securities-litigation claims, Your Honor, are even classified

17   in every iteration of the plan that's been filed before this

18   Court; yes, as 510(b) subordinated claims, a classification

19   that we don't dispute.  And the treatment afforded those claims

20   as subordinated claims appear (sic) in the waterfall

21   anticipated by at least the currently filed plan.

22        THE COURT:  Well, not -- I mean, 510(b), AB 1054, the

23   whole dynamic, leaves no choice.  I mean, as I say, there's no

24   way, as I see it, that your constituents can do anything other

25   than be in that position, no better than their fellow

eScribers
(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    securities claimants.

2           MR. ETKIN:  That is -- that's absolutely correct, Your

3    Honor.

4           THE COURT:  Okay.

5           MR. ETKIN:  And frankly, in ninety-nine percent of the

6    cases --

7           THE COURT:  It's --

8           MR. ETKIN:  -- equity is out of the money altogether.

9           THE COURT:  I know.

10          MR. ETKIN:  So I wouldn't be standing up and talking

11   to you about this.  It would be irrelevant.

12          THE COURT:  You wouldn't even be here.

13          MR. ETKIN:  Well, I might be here on the 105

14   injunction, and I might be here on the plan, but I certainly

15   wouldn't be here on this.

16          The debtors concede, really, that there's much more

17   work to be done in advance of confirmation.  And even Musicland

18   states that delay, assuming it even exists here, does not

19   automatically disqualify a class proof of claim.

20          THE COURT:  Well, hold on.  Again, if I were to grant

21   your motion, is there any reason why we have to do anything in

22   any kind of a fast track for the next phase of the Rule 23

23   matter?  Would seem to me, all these other things that are

24   driven by AB 1054 and the need to take care of the survivors,

25   and all the obvious things -- it would seem to me your folks

eScribers
(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   could easily be back-of-the-line for priority purposes, in

2   terms of dealing with --

3           MR. ETKIN:  Well, we are back-of-the-line for --

4           THE COURT:  Well, I know, but I mean --

5           MR. ETKIN:  -- priority purposes.

6           THE COURT:  -- in terms of -- in terms of motions

7   and --

8           MR. ETKIN:  Right.

9           THE COURT:  -- determinations.  I understand your --

10          MR. ETKIN:  What does that -- being back-of-the-line

11  for priority purposes, what does that translate into, Your

12  Honor?

13          THE COURT:  I meant for scheduling purposes.

14          MR. ETKIN:  It translates into:  there's no rush.

15          THE COURT:  Right.

16          MR. ETKIN:  And we make a point that, number one,

17  certification, pure Rule 23 certification, of securities cases

18  is not complicated, to begin with.  And number two, to the

19  extent the claim needs to get resolved through litigation, that

20  can easily await confirmation and happen after confirmation of

21  the --

22          THE COURT:  And then --

23          MR. ETKIN:  -- of the plan.

24          THE COURT:  And then whether it's in this court or

25  some other court, there will be a -- if there is no settlement,

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    it'll be a determination:  either recovery or no recovery.

2            MR. ETKIN:  That's right.

3            THE COURT:  I mean, plaintiffs do lose class actions

4    sometimes; right?

5            MR. ETKIN:  It does happen.

6            THE COURT:  Okay.

7            MR. ETKIN:  It does happen.  In fact, there's what we

8    talked about during the argument on the 105 injunction.  The

9    motions to dismiss have been fully briefed, and oral argument

10   is scheduled for February 6th.

11           THE COURT:  Well, I understand, but those are

12   different.  I mean, do you think, if Judge Davila grants those

13   motions to dismiss, that moots the case here?

14           MR. ETKIN:  I think that it will have an impact on

15   the --

16           THE COURT:  It might affect people's motivation,

17   but --

18           MR. ETKIN:  I think it will have an impact.

19           THE COURT:  Okay.

20           MR. ETKIN:  I'm not going to conjecture on the actual

21   impact, but --

22           THE COURT:  You don't need to.

23           MR. ETKIN:  -- it will certainly have an impact.

24           In fact, Your Honor, granting this threshold motion

25   with respect to the application of Rule 7023, from our

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    perspective, is not only appropriate and necessary; it also can

2    provide an impetus for discussions.  I mean, the debtor has

3    managed to talk to most of the constituency.  We're not

4    claiming our constituency is more significant or less

5    significant, but I think the debtor has made that

6    determination, and that's fine.

7         But there is the possibility -- and even Mr.

8    Tsekerides, during the course of oral argument on the 105

9    motion, mentioned several times that securities cases --

10        THE COURT:  I know.

11        MR. ETKIN:  -- ultimately are either (sic) mediated --

12        THE COURT:  I know they do.

13        MR. ETKIN:  -- and settled.

14        THE COURT:  And we might be able to accommodate them

15   too.

16        Anyway, you want to reserve some time for Mr. --

17        MR. ETKIN:  I do, Your Honor.  I just want to go over

18   a couple more things.

19        THE COURT:  Okay.

20        MR. ETKIN:  I don't know how much time I have left.

21        THE COURT:  He's your colleague.  Well, you're cutting

22   into --

23        MR. ETKIN:  He's my -- and I don't want him to scream

24   at me.

25        But one thing about impact on the estate, Your Honor,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    and the Musicland -- the impact on the administration of the

2    estate and the Musicland case, which I think is important, is,

3    when you dive into Musicland a little bit, you understand what

4    was at stake.  The class action there was in connection with

5    claims that would be either priority or administrative claims.

6    The Musicland plan, which was up for confirmation, and

7    confirmation had actually started, had a cap on administrative

8    and priority claims.

9                So allowing 7023 at that very late stage of the case

10   would have put feasibility --

11               THE COURT:  Right.  Right.

12               MR. ETKIN:  -- of that plan --

13               THE COURT:  No.  I understand.

14               MR. ETKIN:  -- into question.  So that's gumming up

15   the works, Your Honor; this isn't, as we've discussed.

16               THE COURT:  Well, I might use that phrase, though.

17   It's a good phrase to hang onto --

18               MR. ETKIN:  I know.  I know.  And --

19               THE COURT:  -- "gumming up the works".

20               MR. ETKIN:  And that's what Judge Bernstein said.  And

21   interestingly enough, in his -- in Judge Bernstein's Connaught

22   opinion, which was decided several years later, he actually

23   utilized the American Pipe holding for the proposition that, if

24   a class wasn't certified in that case, individual class members

25   should still have the opportunity to file claims because of the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    tolling in a class-action context.  Certification -- granting

2    of this motion will deal with that issue.  And it was elegantly

3    dealt with by Judge Glenn in MF Global, and it's an elegant

4    solution to the prospect of having to re-notice or deal with

5    all of that.  That's basically what the class-action mechanism

6    is all about.

7           Your Honor, we talked about, in our papers, the

8    fundamental distinctions between the Alonzo motion, which the

9    Court --

10          THE COURT:  Yeah, I --

11          MR. ETKIN:  -- denied for a tentative.

12          THE COURT:  You don't have to explain that.  I know

13   the --

14          MR. ETKIN:  And I'm not going to --

15          THE COURT:  I mean --

16          MR. ETKIN:  -- get into that.

17          THE COURT:  If the other side wants to convince me

18   that I should stick -- be consistent, they can do so.  But I

19   find the factual predicate in Alonzo --

20          MR. ETKIN:  And --

21          THE COURT:  -- are (sic) quite different.

22          MR. ETKIN:  -- I'm not going to get into TCC's

23   separate argument about whether the claims against the

24   directors and officers are derivative or direct claims.

25          THE COURT:  They don't need to.  I mean --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. ETKIN:  That's for another day.  And to the extent

2     we feel we have to deal with that in the few minutes of

3     rebuttal we have, that's fine.

4          THE COURT:  Okay.

5          MR. ETKIN:  So I'm getting back -- so getting back to

6     the fundamental question we ask in our reply, which is, is the

7     class-claim mechanism superior to the proof-of-claim process

8     with respect to this class -- putative class of defrauded

9     investors under the circumstances of these Chapter 11 cases, I

10    think the answer is yes.

11         Your Honor, it should be noted that class members,

12    during the class period -- if you look at the average price of

13    PG&E stock during the class period, which we did in Bloomberg,

14    the average price was fifty-five dollars per share.  So at the

15    end of the day, there was a loss.  Whether on the merits the

16    class claims are sustained in this court or in the district

17    court is another question.  But they paid, on the average,

18    fifty-five dollars a share.  They need an opportunity to be

19    able to vet those claims, despite the fact that they're

20    subordinated claims and the recovery at this point is unknown.

21         THE COURT:  Okay.

22         MR. ETKIN:  And with that, I'll yield to Mr. Behlmann.

23         THE COURT:  Thank you, Mr. Etkin.

24         MR. ETKIN:  Thank you.

25         THE COURT:  Well, I think you have five to ten

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   minutes.  I mean, again, I'm not going to be precise on the

2   time, but --

3           MR. BEHLMANN:  Understood.  Thank you, Your Honor.

4           THE COURT:  Yeah.

5           MR. BEHLMANN:  And I will endeavor to keep my remarks

6   brief, and --

7           THE COURT:  Okay, Mr. Behlmann.

8           MR. BEHLMANN:  -- I will speak quickly but not so

9   quickly that the court reporter cannot understand.

10          THE COURT:  It's all done electronically.  The court

11  reporter is a computer.

12          MR. BEHLMANN:  Your Honor, you and the --

13          THE COURT:  If she got -- if that one doesn't

14  understand you, I can't help you.

15          MR. BEHLMANN:  Well, either way, I'll speak as quickly

16  and clearly as possible, Your Honor.

17          Your Honor, you and Mr. Etkin had some colloquy about

18  Mr. A and Mr. B and what notice that Mr. A and Mr. B may have

19  gotten or not gotten.  I think it might be helpful to talk

20  about what notice Mr. A and Mr. B were actually entitled to

21  get.  There's a fair amount of ink spilled in all of the

22  parties' papers on this issue, but I think it would be helpful

23  to crystallize some of that as we're here today.  So the --

24          THE COURT:  Well, in my hypothetical, Mr. A got a

25  notice -- there's no question about that, right -- because, in

PG&E Corp., Pacific Gas and Electric Company

1    my hypothetical, A is still on board as an equity holder.

2         MR. BEHLMANN:  Understood.

3         THE COURT:  And he happened to receive it and he knew

4    about it.  But we'll talk about what notice Mr. B in

5    particular, as an absent class member, who's truly absent, not

6    a holder, was actually entitled to get, because --

7         THE COURT:  Again, so we're --

8         MR. BEHLMANN:  -- I think --

9         THE COURT:  -- so we're on the same page, I regard Mr.

10   B as somebody who bought his shares during the window and sold

11   them.  Whether he bought public debt or public equity is not

12   relevant.  He bought them in 2016, sold them in 2018, and was

13   off on a Hawaiian cruise when he learned of the bankruptcy in

14   January of 2019.  Okay?

15        MR. BEHLMANN:  A true absent class member, Your Honor.

16        THE COURT:  Okay.  Okay.

17        MR. BEHLMANN:  With respect to Mr. B, the operative

18   question is, was Mr. B a, quote, "known creditor" of the

19   debtors?  Was he a party that they reasonably should have been

20   able to identify and provide actual notice of the bar date to?

21   If the answer to that is yes, then there's two things that we

22   know to be true and that I don't think the parties necessarily

23   dispute would be true; one is that Mr. B would be entitled, as

24   a matter of constitutional due process, to actual notice of the

25   bar date.  If he was a known creditor under the rubric

(970) 221-2800   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    established in pretty much every case to address the issue

2    since Mullane, he was entitled to actual notice.

3         The debtors admit, in their papers and in the various

4    certifications, they did not provide actual notice to the Mr.

5    Bs of the world.  They try to rely on publication notice and

6    assert that that was good enough.  We'll talk about why that

7    wasn't good enough, in a little bit.

8         The debtors go to pretty great lengths to describe the

9    actual notice they did provide.  They did provide notice to

10   lots of other people.

11        THE COURT:  Yeah.

12        MR. BEHLMANN:  I think there's talk of six-and-a-half

13   million mailed notices.  The problem is, most of those 6.2

14   million, as we see in the Schrag declaration, were mailed to

15   customers.  Little under a quarter million went to fire

16   claimants, scheduled creditors, vendors, and subrogation

17   claimants.  A hundred and eleven thousand went to the Mr. As of

18   the world:  the current holders of the debtors' equity

19   securities as of one specific point in time:  the record date

20   of July 1st.  But nowhere in that list do we see purchasers of

21   the debtors' securities during the class period.  The Mr. Bs of

22   the world are just sort of left as though they're not --

23   they're not known, they couldn't be known, they're not entitled

24   to actual notice, in the debtors' view.

25        THE COURT:  Well, they -- again, let's break down to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  simple terms.

2          MR. BEHLMANN:  Sure.

3          THE COURT:  And let's pretend Mr. B is an equity

4  holder.  I guess corporate entities should know who, at some

5  point in the past, was a shareholder.  Maybe he doesn't know

6  when that person is no longer a shareholder.

7          MR. BEHLMANN:  That is --

8          THE COURT:  Right?

9          MR. BEHLMANN:  That is absolutely correct and

10 absolutely --

11         THE COURT:  Okay.

12         MR. BEHLMANN:  -- our position, Your Honor.  And I'll

13 explain why in about thirty seconds.

14         The second thing that's true, if they were known

15 creditors, if it was possible for the debtors, as Your Honor

16 just asked, to identify those folks, was publication notice in

17 any quantity good as to them?  If the debtors, instead of

18 essentially dropping leaflets on the entire Northern

19 California -- if they had blanketed the country in publication

20 notice, would that ever be good enough?  As a matter of law,

21 the answer is no, that's never good enough.  And we'll talk

22 about why in a moment.

23         The touchstone for determining whether these folks --

24 whether the Mr. Bs of the world were known creditors is whether

25 they were reasonably ascertainable; could the debtors have done

PG&E Corp., Pacific Gas and Electric Company

1 something to reach them, and is that "something" reasonable.

2 Yes.  There are customary procedures that are used in every

3 securities class action.  So in any securities class-action

4 case in the country --

5    THE COURT:  You've established a basis for it.

6    MR. BEHLMANN:  Yep.  -- there is a set of procedures

7 that are used.  And parties, lead plaintiffs in those cases,

8 for instance, when there are settlements -- if a settlement

9 contains a bar order or some other provision that's going to

10 bind people, before district courts can bind those people, they

11 send out notice.

12    THE COURT:  Well, are you suggesting that the people

13 who are making the decisions on how to send out the bar-date

14 notice should have known what these established securities

15 procedures were, because of the pendency of the action in the

16 district court?  I mean, it wasn't something like -- nothing

17 was pending here.

18    MR. BEHLMANN:  Well, that's part of it, Your Honor.

19    THE COURT:  Right?  So, I mean, where would they go to

20 look to see the "good book" that says how we're supposed to do

21 it in this case?

22    MR. BEHLMANN:  That's a perfect question, Your Honor,

23 and a wonderful segue.  There are firms that specialize in

24 that.  The debtors happened to use one of those firms --

25    THE COURT:  Right.

PG&E Corp., Pacific Gas and Electric Company

1          MR. BEHLMANN:  -- in this case:  Heffler.

2          THE COURT:  Yeah.

3          MR. BEHLMANN:  Heffler specializes in sending notice

4     to securities class members.  There's another firm.  We

5     submitted the Walter declaration.

6          THE COURT:  No, no, but I understand that.

7          MR. BEHLMANN:  Yeah.

8          THE COURT:  I read those papers.

9          MR. BEHLMANN:  Sure.

10          THE COURT:  But what about -- this actual case was a

11    bankruptcy and there was, of course, a pending district-court

12    action.  Are you saying that Heffler and the company's

13    decision-makers should have put that together, said, because

14    this action is pending against the officers and directors and,

15    I guess, originally the company, they should have followed, in

16    bankruptcy-notice rules, the procedures that might have been

17    applied if there never had been a bankruptcy?

18          In other words, I think -- to state it differently,

19    what you're telling me is all this authority for, and precedent

20    for, what happens outside of bankruptcy.  But this is inside a

21    bankruptcy.  So what were the bankruptcy people supposed to do

22    to know -- to import the U.S. District Court federal securities

23    class-action procedures?

24          MR. BEHLMANN:  It's like you're reading ahead in my

25    notes, Your Honor.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  The answer is yes. I'm saying that they should have

2  known that they should have used those procedures, because they

3  were aware the class action existed. They took steps at the

4  very outset of the case. As Mr. Etkin noted, two weeks into

5  the bankruptcy, the debtors filed an adversary proceeding

6  seeking to put the entire securities class action on hold

7  against all of the other defendants. So they knew that they

8  were out there; they knew --

9  THE COURT: Well, but remember --

10  MR. BEHLMANN: -- the claims were out there.

11  THE COURT: -- they were trying to get a stay for

12  those people who weren't automatically protected by the stay.

13  MR. BEHLMANN: Understood, but the --

14  THE COURT: So --

15  MR. BEHLMANN: -- the debtors were defendants in that

16  case. The debtors were defendants in the securities class

17  action at that time.

18  THE COURT: And I guess nominally still are, but still

19  protected by the stay.

20  MR. BEHLMANN: Correct. So there is no way for the

21  debtors to stand before Your Honor and say, "Your Honor, we had

22  no idea these people had claims."

23  THE COURT: Well, I'll try it a different way. Is

24  there any guidance in the authorities or the literature or the

25  expertise in the class-action world, of importing procedures to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  use in class actions at a time when the very defendant is

2  protected by the stay?  In other words, what -- if I go to the

3  "good book" on how to serve properly in securities litigation,

4  is there a subsection on "this applies even when you're

5  protected by the automatic stay"?

6         MR. BEHLMANN:  It is rare, Your Honor, and I will tell

7  you why it's rare.  It's rare for the exact reason Mr. Etkin

8  mentioned a little while ago, which is, typically a securities-

9  fraud claimant has a claim that's subordinated under Section

10 510(b) with respect to their claim against the debtor.

11        THE COURT:  Correct.

12        MR. BEHLMANN:  Typically, equity, in the average

13 Chapter 11 case of a publicly traded company, is anticipated to

14 be out of the money.  So debtors do not typically serve, in a

15 case where equity is anticipated to be out of the money, and

16 usually well out of the money, bar-date notices on those folks.

17        THE COURT:  Right.

18        MR. BEHLMANN:  But here, from the --

19        THE COURT:  I agree.  I mean --

20        MR. BEHLMANN:  -- from the --

21        THE COURT:  -- I've done it on little cases, but

22 public companies that are insolvent from day one.

23        MR. BEHLMANN:  Sure.  And from the outset of this

24 case, it was clear to presumably everybody in the room that

25 equity was very likely to be in the money, which means the

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    debtors knew, or at least should have known -- and presumably

2    they did know, because they classified and treated the 510(b)

3    claims in the plan --

4          THE COURT:  Well, I don't think you can start to fault

5    what was being done earlier in the case and what shows up in a

6    plan later.  I mean, they didn't file a plan on the petition

7    date that showed we had a 10(b) (sic) --

8          MR. BEHLMANN:  No, but at the -- fair point.  But from

9    the very outset of the case, the stock was still trading --

10         THE COURT:  Well, that --

11         MR. BEHLMANN:  -- in the double digits.

12         THE COURT:  I agree with you.  I mean, look, we had

13   discussions from the very outset, and the premise, to this day,

14   has been solvency.  Everything's been premised on that, and

15   hopefully it's still a legitimate premise.

16         MR. BEHLMANN:  Sure.  So to build on that, Your Honor,

17   from our standpoint, the debtors knew that there were claims

18   out there that had been asserted against them.  These weren't

19   just inchoate hypothetical claims.  These were claims that had

20   been asserted against the debtors in a complaint -- actually,

21   in several complaints filed in the district court.

22         So the debtors knew the claims existed.  They knew the

23   scope of the class period that was asserted against them.  All

24   they had to do was take the exact same procedures they used, to

25   give notice of the bar date to current holders as of the July 1

PG&E Corp., Pacific Gas and Electric Company

1    record date and apply those procedures to the class period.

2    That is the procedure that is used and that their consultant

3    Heffler actually touts on their website, as we mentioned in our

4    reply brief; hey, this is how we do it.  They talk about cases

5    where they gave notice to tens, or even hundreds of thousands,

6    of prospective class members, under these exact same

7    circumstances; not in bankruptcy, but publicly traded

8    shareholders that had to be given actual notice of something.

9    In those cases, I believe they were settlements in the class

10   action.  But here it's -- from a due-process standpoint, the

11   reality is no different.

12        THE COURT:  Do you have any other cases that are

13   equivalent to this one, public debtor, class action,

14   bankruptcy, solvency, a given?  Do we have a counterpart in

15   other bankruptcies that --

16        MR. BEHLMANN:  Very few that I can recall, Your Honor.

17   And frankly, in the few that I've dealt with, we've actually

18   reached a consensual resolution of this issue and allowed class

19   claims on a stipulated basis --

20        THE COURT:  Well --

21        MR. BEHLMANN:  -- after a motion like this.

22        THE COURT:  Maybe that'll happen here; right?

23        MR. BEHLMANN:  Which may happen here.

24        THE COURT:  But -- no, but I'm not making light of the

25   problem on both sides.  But I'm going back to what could

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1     somebody on the other side have done to go to the book, to go

2     to the -- where do I look to see what's been done in other

3     clearly solvent public companies in bankruptcy, with a class

4     action pending against officers and directors down the street?

5              MR. BEHLMANN:  There's --

6              THE COURT:  I don't remember if we had a class action

7     in the bankruptcy -- well, PG&E number I.  Maybe we did.  I

8     don't remember.

9              MR. BEHLMANN:  And frankly, Your Honor, there's not a

10    lot of precedent on that, for the reason --

11             THE COURT:  Okay.

12             MR. BEHLMANN:  -- I mentioned before.  But that

13    doesn't mean that the procedures don't exist.  That doesn't

14    mean that the debtors, in conjunction with their advisors who

15    specialize in giving actual notice to members of securities

16    class actions -- that they're simply excused from their

17    obligation to provide due-process notice.  Those due-process

18    obligations still exist.

19             The debtors attempt to explain away in their papers,

20    well, we may not have had any guarantee that the nominees would

21    have forwarded the notices on.  But they didn't have that

22    guarantee with respect to the current holders.  They gave them

23    notice anyway.  The --

24             THE COURT:  Well, we're back to Mullane, "reasonable

25    under the circumstances"; right?  Your point is --

(971)596-1552 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. BEHLMANN:  Sure.

2          THE COURT:  -- it's not -- they didn't pass that

3     reasonable-minimum test that, given -- had they done what you

4     think Heffler could have done, maybe that would be different.

5     Right?

6          MR. BEHLMANN:  Yeah.  Absolutely.  I mean --

7          THE COURT:  And maybe Mr. B would be out of luck

8     because he was on the cruise in the South Seas and didn't get

9     whatever attempt to give him notice that could have been done.

10         MR. BEHLMANN:  Absolutely.  And frankly --

11         THE COURT:  Okay.

12         MR. BEHLMANN:  -- they didn't do anything with respect

13    to the Mr. Bs of the world.  Either -- we could stand here and

14    speculate as to why that is, whether they didn't think about

15    the Mr. Bs, they didn't -- they just didn't follow the

16    procedure from every other publicly traded case that's out --

17    where equity is out of the money.  I don't know why they did

18    it.  But the reality is, as we stand here today, there are

19    tens, or even hundreds, of thousands, of class members that

20    didn't receive notice of the bar date that we assert they were

21    entitled to, because there was a reasonable procedure that the

22    debtors even refer to as ordinary and customary --

23         THE COURT:  Okay.

24         MR. BEHLMANN:  -- for reaching out and getting mail in

25    the hands of these folks.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  Do you want to -- again, I told you I'm

2  not going to hold you exactly to the time, but I want to let

3  you reserve some time also with your colleagues.  So unless

4  there's something really critical, maybe we'd be better off

5  letting you come back in final.  Is that all right, or do you

6  want to make --

7    MR. BEHLMANN:  That's all right.  I could spend --

8    THE COURT:  I mean, I --

9    MR. BEHLMANN:  -- thirty seconds --

10    THE COURT:  -- I promise you, I've read the briefs.

11  Okay, go ahead and do a --

12    MR. BEHLMANN:  There's one point I wanted to spend

13  thirty seconds highlighting, Your Honor, and then I will --

14    THE COURT:  Okay.

15    MR. BEHLMANN:  -- I will step down and cede the podium

16  to the debtors, and that is, the point that I made at the very

17  outset of this discussion, which is that publication notice was

18  not good enough.  The Ninth Circuit has referred to actual

19  notice as a, quote, "minimum constitutional precondition to a

20  proceeding which will ... affect the liberty or property

21  interests of" a creditor in bankruptcy.

22    The Ninth Circuit has also held that the burden is on

23  the debtor to cause actual notice to be given to known

24  creditors.  And if they don't, even if that known creditor has

25  notice of the reorganization proceedings -- so somebody

PG&E Corp., Pacific Gas and Electric Company

1   actually learns about PG&E's bankruptcy, they happen to see one

2   of the publication notices the debtors targeted at fire

3   victims -- that person -- the onus is not on him to run into

4   the bankruptcy case and file --

5           THE COURT:  So somebody who lives --

6           MR. BEHLMANN:  -- a proof of claim.

7           THE COURT:  -- in San Francisco or, better yet, lives

8   in Santa Rosa or in Paradise, if they weren't -- if they didn't

9   get the notice as an equity holder -- or former equity holder,

10  the fact that they knew of the bankruptcy -- well, that's a bad

11  example, I mean, because of the attempts to let the people from

12  Paradise and the other fire areas know the extent of notice.

13  But somebody who is even local, if that person wasn't served

14  with the actual notice, the notion that everybody in Northern

15  California knows that PG&E's in bankruptcy is not enough.

16          MR. BEHLMANN:  Correct.

17          THE COURT:  Okay.

18          MR. BEHLMANN:  From a constitutional due-process

19  standpoint, that's not good enough, Your Honor.

20          THE COURT:  Okay.

21          MR. BEHLMANN:  Thank you.

22          THE COURT:  Okay.  So we'll reserve ten minutes for

23  your side.

24          Mr. Slack, right?  Are you going to make the argument?

25          MR. SLACK:  Yes, I am, Your Honor.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  Are you going to share that with someone

2     on the other side, with TCC?  Do you have a sharing arrangement

3     with --

4          MR. SLACK:  Yes.  Mr. Richardson is going to --

5          THE COURT:  Okay.

6          MR. SLACK:  -- is going to argue for the TCC, and --

7          THE COURT:  Okay.

8          MR. SLACK:  -- we're going to split it thirty and ten,

9     Your Honor.

10         THE COURT:  Thank you.  Good morning, Mr. Slack.

11         MR. SLACK:  Good morning, Your Honor.  Richard Slack

12    for the debtors.

13         And I'd like to accept your invitation to start with

14    the Alonzo case --

15         THE COURT:  Okay.

16         MR. SLACK:  -- and tell you why there's no daylight

17    between the situation here and in Alonzo.

18         So, Your Honor, in Alonzo, plaintiff there was a

19    terminated employee who sought to bring a proof of claim on

20    behalf of a class of former employees, from June of 2016

21    forward.  Like here, Alonzo did not have a class certified pre-

22    petition and, indeed, his pre-petition certification was

23    theoretically impossible under the same terms that the

24    plaintiffs suggest, because his complaint was not filed until

25    shortly before or just after the petition date.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    The 7023 motion was made in October.  That's two

2  months before the movants here filed.  And the debtors in that

3  case had served notice on employees prior to the petition date,

4  back to January 1, 2017, meaning that there was a six-month

5  period in the Alonzo matter, Your Honor, where the debtors

6  relied on constructive notice.  And as you recall, Mr. Alonzo,

7  made the exact same argument in his papers that the PERA

8  movants do here, is that his class did not get -- entirely get

9  actual notice.

10    Now, the movants don't deal with Alonzo at all until

11  the last paragraph on the last page.  And they only make one

12  argument as to why they say it's different, in that paragraph.

13  And they say it's different because -- they say that the

14  debtors admitted that every absent class member got actual

15  notice.

16    THE COURT:  Well --

17    MR. SLACK:  And they cite to our papers when they make

18  (sic) that.  And they say -- here, reading from their papers,

19  "The facts are to the contrary, and the debtors" -- this is our

20  papers, what we say -- "the debtors sent a claims package to

21  every current employee, including Mr. Alonzo.  In addition, the

22  debtors sent the claims package to every former employee, not

23  just the subset of former employees who might be members of the

24  putative class", and they have ellipsis, ellipsis, ellipsis.

25    And if you look at what they take out, Your Honor, it

escribers
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    changes the entire meaning, because what it says, that they

2    ellipsis out, is -- and reading it fully, it says, "not just a

3    subset of former employees who might be members of the putative

4    class, but every single one whose termination date occurred

5    between January 1, 2017 and January 28, 2019."  And the next

6    paragraph goes on to say that therefore six months' of people

7    in the class did not get actual notice and were relying on

8    constructive notice in order to satisfy the Musicland factor.

9    So --

10          THE COURT:  Does the fact that -- well, first of all,

11   you'll recall that there never was a ruling on the merits, see.

12   Mr. Alonzo accepted a tentative ruling, and the tentative

13   ruling, in part, was based upon that he himself had a post-

14   petition claim.  So he was out of the money to begin with, from

15   my point of view.  But also, even if Mr. Alonzo had asserted a

16   claim, it wouldn't have been 510(b)-related.  Does that make a

17   difference or not?

18          MR. SLACK:  No, it doesn't make a difference for the

19   Musicland factors, in the sense that, if anything, Your Honor,

20   not having a 510(b) claim there is irrelevant here because it's

21   a 510(b) claim.  And as we'll get to when we talk about the

22   administration of the estate, this Court is going to have to

23   decide -- if you certify this class, it's going to have to

24   decide in some way or another what the value is, because we

25   have equity holders who are --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  No, I --

2          MR. SLACK:  -- both taking equity as part of the

3    financing, as well as they're voting.  And they're going to

4    need to know how much they're diluted by a huge class seeking

5    literally billions of dollars in damages, even if it is reduced

6    on a 510(b) level.

7          So the fact here --

8          THE COURT:  Well, it's not reduced.  It's

9    subordinated.

10         MR. SLACK:  Well, subordinated.

11         THE COURT:  But it's subordinated --

12         MR. SLACK:  But it's subordinated to equity, so it'll

13   be pari passu with the equity --

14         THE COURT:  It'll be pari passu with --

15         MR. SLACK:  -- and you'll have to know --

16         THE COURT:  Okay.

17         MR. SLACK:  -- you'll have to know in terms of what

18   that dilution factor is and how --

19         THE COURT:  No, I fully understand there is a dilution

20   factor.

21         MR. SLACK:  And the point is, Your Honor, you're going

22   to have to deal with that in the next five months --

23         THE COURT:  Well --

24         MR. SLACK:  -- if you certify this class.

25         THE COURT:  Well --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      MR. SLACK:  So what we would say, Your Honor, though,

2  is that whether Alonzo was a tentative, what Your Honor said in

3  the tentative, and we agree with it a hundred percent, is the

4  persuasive arguments of debtors re: robust noticing, absence of

5  pre-petition class certification, and lateness in filing the

6  motion well after the bar-date notice, alone, justify denial.

7  We agree with that then.  We agree with that now.

8      THE COURT:  Well, just looking at it from my point of

9  view here, is there not a difference between somebody who very

10  recently was an employee and someone who years ago was a

11  shareholder or bondholder?  You think --

12      MR. SLACK:  Well --

13      THE COURT:  You think there's no difference there?

14      MR. SLACK:  The difference cuts the other way from

15  what the PERA-motion plaintiffs would like you to believe,

16  because, if anything, those employees -- you could have

17  theoretically gone into the company records and --

18      THE COURT:  Right.

19      MR. SLACK:  In the situation of the securities

20  plaintiffs, the whole idea there is that the debtor, in its

21  books and records, doesn't have the names of the beneficial

22  owners.

23      THE COURT:  Correct.

24      MR. SLACK:  Here's what it has: --

25      THE COURT:  Correct.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. SLACK:  -- it has the record holders, which were

2    served, and those don't change very much, and then nominees are

3    like the banks of the world --

4          THE COURT:  No, I know.  I know how that --

5          MR. SLACK:  -- and then you have --

6          THE COURT:  I know how that works.

7          MR. SLACK:  -- the beneficial owners.

8          THE COURT:  And nobody can guarantee in absolute

9    certainty that, through the nominee, through the third -- the

10   intermediate levels, the person will actually get notice.  That

11   gets back to reasonable likelihood of making it.  But to me

12   it's a whole different ballgame to think about somebody that

13   six months earlier was an employee of the company.

14         MR. SLACK:  Well, again, I would tell Your Honor that

15   it actually cuts --

16         THE COURT:  I mean, they weren't --

17         MR. RICHARDSON:  -- it actually --

18         THE COURT:  -- they weren't nominee employees.

19         MR. SLACK:  It actually cuts against the PERA

20   plaintiffs here --

21         THE COURT:  Okay.

22         MR. SLACK:  -- because the idea and the question --

23   and it's the heart of it -- is whether the beneficial owners

24   are known.  And if you look at the Chemetron case, which is the

25   case they cite and we cite, what it says is you predominantly

PG&E Corp., Pacific Gas and Electric Company

1    look at what information is in the debtors' books and records.

2    Okay?  And in the debtors' books and records, we do not have

3    the nominees, and -- I'm sorry, we have the nominees; we do not

4    have -- and we don't have a full list of the nominees, but what

5    we --

6         THE COURT:  No, but you know who the major players in

7    the world are.  For nominees --

8         MR. SLACK:  And we sent -- and we --

9         THE COURT:  -- the --

10        MR. SLACK:  And we sent out -- and it's in Ms. Pullo's

11   declaration, that we sent notice to all of the record holders

12   and all the nominees.

13        So the only issue, Your Honor, is whether the absent

14   class members are known to the debtors.  And what I would

15   suggest, Your Honor, is that, if you look at their own

16   declaration, I think that Mr. Walter's declaration, in

17   paragraph 9 -- he starts talking about how, in order for the

18   debtors to get the information, we should come to you as part

19   of the bar-date order and get an order telling the nominees to

20   tell us who these people are.  To the extent somebody has to go

21   and get an order to get the information, it's pretty clear that

22   these people are not known to the debtors.  And --

23        THE COURT:  But isn't that standard procedure in the

24   world -- in the financial world of people owning through street

25   accounts?

PG&E Corp., Pacific Gas and Electric Company

1          MR. SLACK:  And --

2          THE COURT:  I mean, if I have ten shares of ABC

3   company at Charles Schwab as the broker in town, that's my

4   nominee.  I'm not hiding money.  I'm just buying ten shares

5   through Schwab.  And if you want to serve me constructively,

6   you at least have to notify Schwab, right?

7          MR. SLACK:  So that is exactly right, Your Honor.  You

8   said something which I want to -- I want to put in headlights.

9   That notice that we would give you as a nominee -- as a

10  beneficial holder beyond the nominees, is itself constructive

11  notice.  It is a form, as you said, of constructive notice,

12  because we send out the information to the nominees and then it

13  gets distributed.  So all we're really talking about is another

14  form of constructive notice.

15         THE COURT:  Well, you send a notice to Charles Schwab

16  and it says, if you have any clients that own stock in XYZ,

17  please -- or maybe you don't say "please" --

18         MR. SLACK:  Yep.

19         THE COURT:  -- forward these on.  And so all of us --

20  anybody in this room who own stock through that way maybe get

21  something now and then from your stockbroker that --

22         MR. SLACK:  Right.

23         THE COURT:  -- you got some notice or something.

24  So --

25         MR. SLACK:  And the issue, Your Honor --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  Right?

2          MR. SLACK:  -- is whether that is -- whether those

3    holders are known, not whether there's a mechanism at some

4    point that'll get to most of them maybe.  The point is whether

5    they're known.

6          And you asked a great question, and let me give you

7    the direct answer.  You asked are there any cases that address

8    this in the securities context in bankruptcy.

9          THE COURT:  Right.

10          MR. SLACK:  And the answer is yes.  And the answer is

11    they go against the PERA plaintiffs.

12          So if you look at the GAC case that we cite in our

13    papers, and you look at pages 16 to 17, the Eleventh Circuit

14    dealt with this specifically and says that you do not need to

15    give actual notice to absent securities holders.  And it said

16    that, under those circumstances -- it says the court concluded,

17    under the circumstances of the case, the publication notice was

18    reasonably calculated to apprise nonholding debenture

19    purchasers of the necessary (sic) to file -- of the necessity

20    to file individual proofs of claim, and the notice thus

21    complied with the requirements of due process.

22          The other case that the PERA plaintiffs site is not to

23    the contrary, and that's the Amdura case.  And what's

24    interesting about Amdura, Your Honor, is there you had a class

25    pre-certified.  And so what the court there said, since there

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    was a pre-certified class, to the extent that the plaintiffs

2    had information, the debtors should get it from the plaintiffs.

3    And then it says something interesting in that case:  everybody

4    else can get constructive notice.  Everybody else.  So the one

5    case that they rely on also says constructive notice is okay to

6    get to absent shareholders.

7         So there are two cases, Your Honor, that deal with

8    this issue in the bankruptcy context, and both go against PERA.

9         Now, Your Honor --

10        THE COURT:  So you say Mr. B was on his cruise; he's

11   out of luck because there was an attempt through the

12   constructive-notice process, through his brokerage account, or

13   wherever, to give him notice.  Mr. A got notice and he has a

14   right to file a claim, or not?

15        MR. SLACK:  So I think, Your Honor, that Mr. A has

16   notice and can file a claim.  Mr. B also had notice,

17   constructive notice.

18        THE COURT:  Well, yeah.

19        MR. SLACK:  We all know, Your Honor --

20        THE COURT:  I mean, that's what you're saying:

21   constructive --

22        MR. SLACK:  -- that in bankruptcy, there are people

23   who get constructive notice.  And even though we have here a

24   program of constructive notice that went far beyond -- and

25   nationwide, far beyond --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  Well, I know you do but, again, the

2    argument on the other side is that you're dealing with the

3    fires and the aspect of the fire, and there isn't -- it's a

4    different extent of notice.  But there're difference of

5    opinions about that.

6         What's your take on the question of -- in my going

7    back to my A and B, if I deny today's motion, B is out of luck;

8    right?

9         MR. SLACK:  So I would say two things, Your Honor.

10   Number one, you say "out of luck".

11        THE COURT:  Well --

12        MR. SLACK:  B could do two different things at this

13   point:  One, B could make a motion, that he specifically could

14   say, "I was on a cruise for three months, and I shouldn't be

15   expected to see constructive notice," even though the cruise

16   probably had The Wall Street Journal and People and New York

17   Times and everything else that he needs, because people get the

18   internet now.  Used to be, I think, thirty years ago --

19        THE COURT:  Well, he's sailing his own boat, that is,

20   and he doesn't have internet access.

21        MR. SLACK:  So, Your Honor, if somebody says, "Look, I

22   was on a" -- "I was on an African safari for three months,"

23   maybe the debtor's not going to object to that proof of claim

24   coming in.  But the fact is that constructive notice is

25   constitutionally sufficient.

PG&E Corp., Pacific Gas and Electric Company

1          And let me say one other thing, Your Honor, which is
2     really important for this hearing.  And we've talked about this
3     over and over, and I've heard my colleague, Mr. Karotkin, say
4     this to Your Honor, and I think it rings true here.  There is
5     no evidence -- evidence -- before Your Honor that there is
6     anybody who did not receive notice, whether actual or
7     constructive.  So in front of Your Honor, there is no evidence
8     put on my PERA that anybody actually didn't receive notice
9     here.  That is a fundamental flaw of their argument.

10          Now, a couple of things, Your Honor, that I still want
11    to -- I still want to get to, and I have a little time,
12    luckily.

13          THE COURT:  Well, excuse me.  I mean, is it really a
14    flaw procedurally?  In other words, if the statement is made
15    that, except the -- in my hypothetical, except people who were
16    on the distribution list and actually got notice, that those
17    people -- since there was no coordinated attempt to send out
18    actual notice through the way we talked about Mr. B, does it
19    make a difference that I don't have a declaration from someone
20    that says, "I was on a cruise and I didn't get notice"?  I
21    mean, it seems to me that goes to something later on, but not
22    for today's purposes.

23          MR. SLACK:  Well, I guess I would say, Your Honor, is
24    (sic) you would be throwing out both the test in Musicland if
25    you did that -- because the test in Musicland, when you get to

PG&E Corp., Pacific Gas and Electric Company

1   notice, is important in that Musicland says, right in its test,

2   it's a matter of actual and constructive notice.

3          So Your Honor can't just say, well, because we didn't

4   send out a piece of paper -- I talked to many people, and we

5   actually had some argument and testimony from the TCC in

6   connection with the bar-date-extension motion, where they said

7   people got actual notice and threw it out. And it's actually

8   seeing it on TV and the publication that actually makes a

9   difference. And that was the argument that was made. So the

10  fact that you get a combination here of actual and constructive

11  notice is actually required and is part of the test that you

12  get in Musicland.

13         And, Your Honor, let me just say, we talked about the

14  Alonzo case and the precedent, but the position of PERA cannot

15  be reconciled; not just they don't have any cases that address

16  this, but it can't be reconciled with other precedent.

17         So let me talk about two cases. In the Bally case,

18  the bankruptcy court denied a motion for class treatment, and

19  the decision was appealed. And that's in the Southern

20  District. It's in our paper. So the plaintiffs there were,

21  again, an employment class, where the company had the records

22  of the employees. And the proposed-class period was December

23  2001 to December 2008, a seven-year period. The notice here

24  was given from 2004 forward. So there were three full years of

25  people who only received constructive notice through

PG&E Corp., Pacific Gas and Electric Company

1    publication.

2           The district court, Judge Rakoff, affirmed the lower

3    court.  And here's what Judge Rakoff said:  "[I]t is undisputed

4    that Bally mailed notice of the Bar Date by first-class mail to

5    all current and former employees employed at any time after

6    January 1, 2004.  While a much smaller part of the putative

7    class, namely, those ... Bally employees whose employment ended

8    between December 30, 2001 and January ... 2004, received ...

9    notice by publication, this was still legally adequate."

10          There's the Blockbuster case, Your Honor, also cited

11   in our papers, at 441 B.R. 239.  And in Blockbuster, the

12   bankruptcy court held exactly the same as Bally.  What happened

13   there was the debtors provided adequate notice to members of

14   the class by publishing notice of the case and the bar date, in

15   three papers:  the Dallas Morning News, The New York Times, and

16   The Wall Street Journal.

17          Your Honor, those cases cannot be reconciled with the

18   position that PERA is taking here.

19          Now, we've gone through the notice and the robustness

20   of the notice, but what I think is important, Your Honor, is

21   that the constructive notice here -- and if you remember the

22   bar-date motion with --

23          THE COURT:  Of course.

24          MR. SLACK:  -- the TCC objecting, it was not just

25   about what the words on the notice said.  The TCC had come

PG&E Corp., Pacific Gas and Electric Company

1    forward with a whole implementation plan to Your Honor.  There

2    were (sic) hearing after hearing about it.

3            THE COURT:  No, there was.  But --

4            MR. SLACK:  There were -- and the point, Your Honor,

5    and I just want to make it, is that there were changes that

6    were made to make that noticing even more robust in terms of

7    going out to the internet, having impressions.  And that's all

8    in our declarations, Your Honor.

9            So now you have to ask yourself, Your Honor, isn't

10   that the right time -- if there were issues by the

11   representatives here of the securities class, let's measure

12   what happened at the bar date with the other representatives

13   that we had.  The TCC represented fire victims.  They came

14   forward, as I just said -- we had hearings on the

15   implementation.  If --

16           THE COURT:  Yeah, but --

17           MR. SLACK:  -- they thought there were problems --

18           THE COURT:  I mean, we --

19           MR. SLACK:  -- with the implementation --

20           THE COURT:  This case wouldn't be here if it weren't

21   for the fires.  And from the very moment this case was filed,

22   the focus has been on what has to be done about the fire

23   victims and notice.  And remember what the debtors' original

24   claim form looked like.  I mean, we're not talking about just

25   the simple question of the kind of notice that the plaintiffs

PG&E Corp., Pacific Gas and Electric Company

1    here are talking about.  We're talking about the fundamental

2    way that the survivors of the fires are going to be treated,

3    broadly.

4              So I think it's just -- you're pushing on the wrong

5    unopened door, on trying to say it's the same.  You may

6    persuade me to deny their motion for the reasons that you've

7    said, but I don't -- I just can't think about all the

8    discussions and all the efforts by survivors, their lawyers,

9    the committees, your side, me, everybody else, on what's the

10   right thing to do to give the proper notice to those --

11             MR. SLACK:  Yeah.  Well, let --

12             THE COURT:  -- classes; thousands of people.

13             MR. SLACK:  Understood, Your Honor.  And that makes

14   sense.  But what I will say is, in a matter where PERA is

15   suggesting that you have discretion -- and you do -- I think

16   it's important to ask the question why weren't these

17   plaintiffs, who were involved in the case -- if you remember --

18             THE COURT:  Well, aren't you --

19             MR. SLACK:  -- back in March --

20             THE COURT:  But you're really blaming the class-action

21   lawyers, that maybe they could have done it.  They're blaming

22   your side for not doing the right thing through the brokerage

23   houses.  You're blaming them for, well, they should have come

24   up in the middle of a hearing about how to take care of fire

25   survivors, let's take care of investors who had their stock

PG&E Corp., Pacific Gas and Electric Company

1  values go down.  They're just not the same.  It's just not the

2  same emphasis.  And we wouldn't --

3            MR. SLACK:  But if this --

4            THE COURT:  -- we wouldn't be here in this discussion

5  if it weren't for the fires.

6            MR. SLACK:  No, and --

7            THE COURT:  And so --

8            MR. SLACK:  -- look, Your Honor, as I said, it's a

9  discretionary factor.  We think you should take that into

10 account.

11           THE COURT:  Okay.

12           MR. SLACK:  I understand that's up to you, whether you

13 do or don't.

14           But let me get to the last point, which is the

15 administration of the estate, Your Honor.  PERA makes no

16 attempt to distinguish, again, your preliminary ruling in

17 Alonzo that Alonzo was too late to make this motion and filed

18 it two months before.  And when you look at the standard of

19 Musicland -- and again, we've talked about the standard sum --

20 what does Musicland say?  Musicland says timing is also

21 significant.  The most propitious time for filing a motion for

22 class recognition is before a bar date is established, before

23 it's established, since the bar date is effectively uprooted,

24 in part, by the extension of the bar date for a favored class

25 of creditors.  And Your Honor recognized that in Alonzo.

PG&E Corp., Pacific Gas and Electric Company

1        And now when you get to this case, let's look at where

2   we are in this case.  PERA waited until December 2019 to bring

3   this motion; two months after Alonzo.  And the Court itself has

4   recognized, and I don't think I have to go into this that in

5   its January 15th, 2020 order that we got five months; that's

6   it.  Five months.

7        THE COURT:  Well, I was just reminding you, but you

8   knew it anyway.

9        MR. SLACK:  Right?

10        THE COURT:  That's right.

11        MR. SLACK:  So Your Honor --

12        THE COURT:  But you --

13        MR. SLACK:  -- let's look --

14        THE COURT:  But you got to persuade me that you're

15   right and they're wrong about there really isn't so much time.

16   Do you really think that before this plan can become effective

17   we have to quantify what should be reserved for this -- the

18   510(b) parties?

19        MR. SLACK:  So what I think, Your Honor, is that these

20   claims, which again if they get their way they're going to

21   assert that these are -- these claims are worth billions of

22   dollars.  So --

23        THE COURT:  Well, I know; they might.

24        MR. SLACK:  When we're talking about equity, we're

25   talking about --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  We can also estimate them too.

2          MR. SLACK:  But when you're talking about -- we have

3  two sets of claims, and I want to be clear here too -- you've

4  also got potentially, again, probably less so, but at least

5  hundreds of millions of claims by noteholders all of whom

6  almost certainly, by the way, got notice here, right.  But --

7          THE COURT:  Well, we have noteholders and equity

8  holders.

9          MR. SLACK:  Right.

10          THE COURT:  The world is divided into those two

11  categories --

12          MR. SLACK:  Right.

13          THE COURT:  -- that these counsel want to represent.

14          MR. SLACK:  So the point is, Your Honor, is that if

15  you're going to have a dilution factor for the equity, there's

16  two things that are happening, right.  There's going to be a

17  vote of the equity -- equity has to vote -- and they're going

18  to need to know what their return is in order to vote on it.

19  And so --

20          THE COURT:  But Mr. Slack we have ways to temporarily

21  allow for voting, and we have ways to estimate allowances

22  for -- this is not a 170 --

23          MR. SLACK:  You're right.  So let's --

24          THE COURT:  This is not -- I'm not sending this one to

25  Judge Donato to estimate.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. SLACK:  Let's take the timing here.

2          THE COURT:  I can estimate it.

3          MR. SLACK:  Let's take the timing here, right.

4          THE COURT:  Okay.

5          MR. SLACK:  So we have five months.  What they did

6    here was they didn't bring the second part of the motion, which

7    is really required, and you could deny it on its own, and that

8    is the Rule 23 factors --

9          THE COURT:  I know, but that's -- there's arguments

10   both ways on that.

11         MR. SLACK:  But let's say -- let's assume now we're

12   going to have to go and do that.  That's, at least -- and

13   there's typically discovery -- that's at least a month or two.

14   And then, you have to give notice to the class.  If you look at

15   all -- the cases that have denied these, like the Bally (ph.)

16   case, they say that okay, here's what you have to do.  You have

17   to have a Rule 23 in discovery; that takes a couple of months.

18   Then you have to give notice to the class because here's one of

19   the things, Your Honor, that certainly is potential.

20         The people who filed proofs of claim, they may not

21   want to share their legal fees with PERA -- the PERA lawyers.

22   They may want every dollar of what they're entitled to,

23   whatever it is, and they may not want to be subject to the

24   legal fees of the class-action lawyers.  So you're going to

25   have to give notice to the class.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      Then third, Your Honor, we're already out two, three

2  months, minimum.  We've now got only a couple of months to

3  figure out whether we're going to value these.

4      Now, if you're talking about a securities claim,

5  you're going to have to have discovery, you're going to have to

6  have a proceeding of some kind.  And again, I think whether it

7  gets addressed in an estimation, whether it gets addressed as

8  part of valuation or feasibility, I think all that needs to be

9  figured out, but what I could tell you what's going to need to

10  be figured out, and just like you said in Alonzo (ph.), it's

11  too late and timing is a huge issue here.

12      THE COURT:  But again, the reason why I don't want to

13  get too hung up on Alonzo is Alonzo was nothing more than a

14  tentative ruling.  I never had it vetted in terms of argument.

15  We didn't have this kind of argument.  And Mr. Alonzo, I will

16  repeat, was tainted from day one because he had a post-petition

17  claim.  So I might not have said that as clearly as I might

18  have a tentative ruling, but it was just plain so.  Right?

19      MR. SLACK:  So --

20      THE COURT:  Right?  Wasn't that true?  Am I

21  remembering it correctly?

22      MR. SLACK:  Your Honor, when you issue a tentative

23  ruling, I pay attention to it.

24      THE COURT:  Well, no, didn't I observe that he had a

25  post-petition claim?  So --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    MR. SLACK:  He did, but --

2    THE COURT:  -- could not be representative of the

3    class.

4    MR. SLACK:  Yes.  What you observed though, Your

5    Honor -- and again, we pay attention to what you write -- is

6    that the lack of a pre-petition certification, the constructive

7    and robust notice and the lateness in and of itself justified

8    denial.  So we only can go by Your Honor's words, but as I

9    said, what Your Honor wrote was absolutely consistent with the

10   precedent in Bally and Blockbuster and a number of the other

11   cases that we cite in our papers.

12   THE COURT:  Well, I won't tell I went and studied them

13   all, but okay, let's -- well, I want you ask you another

14   question though, I want you to tell me really, do you really

15   believe that granting this motion will jeopardize the time line

16   that we're going to talk about in a little while this morning

17   and that is that five month clock that's ticking?

18   MR. SLACK:  I do.

19   THE COURT:  Because I don't think that's --

20   MR. SLACK:  I --

21   THE COURT:  I'm not convinced that that's necessary,

22   but why is that so?  Why is that going to muck it up?

23   MR. SLACK:  Because you're going to have to figure

24   out -- class actions sometimes last two, three years.

25   THE COURT:  Right.  I know they do.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      MR. SLACK:  And the fact is is that you're going to

2  have to figure out prior to the time that people vote on this

3  plan -- so not even the five months -- you're going to have to

4  tell the equity holders what they're getting.  You're going to

5  have to tell the people who are funding --

6      THE COURT:  What would -- if there weren't a

7  settlement in the pipeline for next week with the senior

8  bondholder group, what would the disclosure statement have said

9  about what might come out on the make whole dispute or the

10  post-petition interest one?  Those are big ticket items with

11  lots of dollars attached.

12      MR. SLACK:  Well, I --

13      THE COURT:  What does the plan going to say about that

14  or the disclosure?  Isn't it going to say it might go the other

15  way?

16      MR. SLACK:  Your Honor, I guess what I would say to

17  that is -- is that I would defer to my colleagues who are here,

18  Mr. Karotkin or one of the -- somebody, Mr. Goren.

19      THE COURT:  Okay.

20      MR. SLACK:  But -- and I'm happy to have them get up

21  and talk to that, but what I can tell you is is that this case

22  at this late stage, people are going to want to know if you're

23  funding this and you're getting equity as part of the funding,

24  you are going to want to know whether this claim is worth

25  fifteen billion or nothing or a hundred --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  And Mr. Slack what you want me to believe

2     is after all the effort that's putting in by countless people;

3     lawyers and financial people, clients that someone's going to

4     vote down the plan because there might be a dilution of equity?

5     I guess it's hard for me -- that's like saying maybe on appeal

6     the post-petition interest decision would be reversed.

7          Now, I realize that that may be is a nonissue now

8     because of what's been going on, but I guess I'm just -- I'm

9     not persuaded, but I will invite the lawyers on the other side

10    and in their closing argument to tell me why your doomsday

11    prediction should be discounted, because I -- obviously, I

12    don't want to jeopardize the timetable that we're trying to

13    reach.  I made a commitment, and everybody in this case, I

14    think, has made a commitment to make sure we meet that

15    deadline.

16         So -- but I can't ignore their rights.  So, I -- let's

17    not -- I don't want to turn this into a -- something it isn't.

18    Go ahead and tell me what else you want to do and then we'll

19    hear from the --

20         MR. SLACK:  So, I'm going to turn it over in a second.

21         THE COURT:  Okay.

22         MR. SLACK:  But I'm going to say, Your Honor, that

23    it's not worth the risk.

24         The point here, Your Honor, is I can't sit here and

25    have a crystal ball and tell you that -- how people are going

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    to vote.  What I am going to tell you, Your Honor, is that

2    people are -- is, I think, people are going to want to know

3    what they're getting, and at this stage, that's what -- that is

4    why the Musicland factors read like they read.  They said if

5    you are going to bring this class action and you want a class-

6    action treatment, bring it back a year ago at the time of the

7    bar date, that's what Musicland says; that's the time to do it;

8    do it early.

9         When you cause jeopardy and risk, this Court and the

10   debtors and the other constituents who are parties to the RSA

11   shouldn't have to bear the risk of a late filed --

12        THE COURT:  Well, yeah --

13        MR. SLACK:  -- 7023.

14        THE COURT:  -- isn't it ironic that in PG&E 1 and in

15   the Local Rules of the Northern District, perhaps a minority

16   point of view throughout the country, the bar date is very

17   early, and in PG&E 1 we made it even earlier.

18        So in this case for obvious reasons because of the

19   fires, the bar date was pushed quite late, and then for other

20   reasons even beyond that.  But if we say well, what was the

21   first -- what was the bar date in this case finally?  It was

22   October 21.  Their motion was two months after that.  That's

23   not a huge time -- no, no, I'm sorry.  Yeah, that's right.

24   Today's motion was filed two months after that bar date.

25        MR. SLACK:  Right.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  That's not a huge time period.

2          MR. SLACK:  I mean, just to be clear, I mean what

3    Musicland says is that at the time the bar date is set, not the

4    time of the bar date --

5          THE COURT:  Okay.  Okay.  But I mean --

6          MR. SLACK:  -- which is earlier.  But remember, there

7    was no -- there's nothing -- and these -- you look at the

8    cases, they say this -- there's nothing preventing folks --

9    they were in this court February, March of 2019 -- from coming

10   in at that time and making this motion, and that's what the

11   cases say.

12          And so it's not a two-month period, but even if it was

13   a two-month period, when you've only got five, a two-month

14   period sounds like --

15          THE COURT:  No.

16          MR. SLACK:  -- a pretty long time.

17          THE COURT:  Okay.  All right.  Let --

18          MR. SLACK:  Anyhow, Your Honor, thank you very much.

19          THE COURT:  Thanks, Mr. Slack.  All right.

20           Mr. Nicholson, are you here?  Richardson; excuse me.

21   Wrong name.  Mr. Richardson.

22          MR. RICHARDSON:  Good morning, Your Honor.  David

23   Richardson of Baker Hostetler for the TCC.

24          Your Honor, I planned to start immediately with the

25   relevance issue and not address Rule 23 issues, but before I

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    get to that, there is one issue that Mr. Slack just addressed

2    that I think I must address.

3            THE COURT:  Okay.

4            MR. RICHARDSON:  That is dilution and how it affects

5    the timing of plan confirmation proceedings, and the Musicland

6    factor that goes to the impact that allows a claim or to file

7    the claim would have on plan confirmation proceedings.

8            The TCC negotiated an RSA with the debtors that

9    provide that the fire victim trust will receive 20.9 percent of

10   the debtor's common stock.  That is a major part of the

11   consideration that went into the agreement to make the deal

12   that's in the RSA.

13           There's a current understanding among our financial

14   advisors of what that stock will be worth, and the extent to

15   which it will help us pay all fire victims, but if there is to

16   be dilution of stock, allegedly in the billions of dollars, we

17   have to know before there is a disclosure statement what is the

18   value we are asking fire victims to vote for?  What is the deal

19   we are asking them to vote for?  Do we still have the deal we

20   believe we signed?

21           I'm sure this Court has seen the many letters coming

22   from fire victims who are complaining about stock --

23           THE COURT:  Well, yes, I have seen many, but AB 1054

24   says what it says.

25           MR. RICHARDSON:  It does, which means --

PG&E Corp., Pacific Gas and Electric Company

1      THE COURT:  It doesn't --

2      MR. RICHARDSON:  -- we have to know what value the

3  trust is really receiving under this plan before it can be

4  confirmed.  And to do that, we have to know what these claims

5  are worth, if anything, and to what extent they would dilute

6  stock, if at all, that would be received by the trust.

7      This is not something that can be put off post-

8  confirmation.  We have to know quickly what the extent of these

9  claims are.

10      THE COURT:  Okay.

11      MR. RICHARDSON:  As far as relevance goes, the

12  securities plaintiffs have filed an action in district court

13  against the directors and officers, the debtors, and certain

14  third parties.  They're the same claims, the same misdeeds, and

15  the same damages.

16      THE COURT:  But it is a fact, isn't it, that

17  practically speaking, the debtors are out of that lawsuit.

18  They're still not really in there, but they're not -- no one's

19  asked for relief from stay.

20      MR. RICHARDSON:  Exactly, but by filing a proof of

21  claim here, they're taking the claim for damages from the

22  debtor and moving it here into this case.  If they have a

23  direct claim, then they do have a claim for damages from the

24  debtor.

25      THE COURT:  Correct.

PG&E Corp., Pacific Gas and Electric Company

1    MR. RICHARDSON:  But if what they've actually stated

2    in that complaint, which is what I'm here to argue today, are

3    derivative claims, then the debtor is merely a nominal

4    defendant.  You can't sue a debtor for damages in the debtor's

5    own derivative action.

6    THE COURT:  Well, I understand, but doesn't 510(b)

7    take care of all that?

8    MR. RICHARDSON:  What I'm arguing, Your Honor, is if

9    these are derivative claims, the securities plaintiffs aren't

10   even creditors of the estate.  Everything the Court has heard

11   this morning is irrelevant because they weren't entitled to

12   notice, they aren't entitled to file individual proofs of

13   claim, and they're certainly not entitled to assert a class

14   proof of claim.

15   THE COURT:  If they're derivative claims, yes, but

16   therefore what?  Suppose there is a derivative claim that's

17   already been dealt with, and I thought the plaintiffs conceded

18   that point in their papers, and you still don't -- you still

19   think -- I mean, so let's try it a different way, Mr.

20   Richardson.

21   MR. RICHARDSON:  Your Honor --

22   THE COURT:  If I decree that my hypothetical Mr. B.

23   holds a derivative claim, what is the legal aspect -- the

24   consequence of that?

25   MR. RICHARDSON:  The legal outcome is that he has a

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    claim on behalf of the estates to assert against directors and

2    officers and third parties.

3         THE COURT:  Right.

4         MR. RICHARDSON:  But does not have a claim to assert

5    on behalf of the estate against the debtors for damages.

6         The claim in this case that they are filing and

7    seeking as a class proof of claim is against the debtors.

8         THE COURT:  But --

9         MR. RICHARDSON:  There can be no claim against the

10   debtors for a derivative claim.

11        So even though it is technically subordinated under

12   510(b), it has no value because they cannot ask for damages

13   from the debtor.  They can go after Ds and Os and the insurance

14   policies, and we'll argue in the future about whether the

15   recovery is met for the benefit of the estate.

16        THE COURT:  So if it's a direct claim, then what?

17        MR. RICHARDSON:  If it's a direct claim, they have a

18   claim against the debtors, among other parties, and then we

19   would be dealing with all of the Musicland factors and

20   everything else argued this morning.

21        If the Court is prepared to deny the motion based on

22   the Musicland factors which we think are enough, particularly

23   in light of the dilution issue that I've raised, the Court

24   doesn't need to reach the issue of whether these are direct or

25   derivative claims until --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  No, I realize that.

2    MR. RICHARDSON:  But if the --

3    THE COURT:  Well --

4    MR. RICHARDSON:  -- possibility exists of granting

5  this motion, the idea that these are not creditors of the

6  estate is critical.

7    THE COURT:  Okay.  I understand your point.  Let's

8  back up.

9    So your point is that if they're derivative, there's

10  nothing to it; if they're direct there is a dilution factor

11  and, therefore, it needs to be clarified and discussed and

12  analyzed.

13    MR. RICHARDSON:  Correct.

14    THE COURT:  It could be estimated under 502, right?

15    MR. RICHARDSON:  That very quickly so we all know what

16  the impact will be on the fire victim trust, that will hold up

17  plan confirmation proceedings.  And for all of the Musicland

18  factors that have already been briefed, we don't think the

19  motion should be allowed.

20    THE COURT:  Well, no, but that -- if we had a direct

21  claim just -- suppose we didn't have -- we had just another

22  party who was not a fire party, wasn't in the fire but has

23  an -- asserts a claim against the company that is unliquidated,

24  this Court can estimate it.

25    MR. RICHARDSON:  It can.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  And could even today or now or as part of

2     the pre-confirmation process could do so.

3          MR. RICHARDSON:  And if it has no impact on plan

4     confirmation, it might even be able to put it off.

5          THE COURT:  Well, but -- correct.  But --

6          MR. RICHARDSON:  But a claim like this is critical.

7          THE COURT:  But why couldn't I make a determination of

8     an estimation of the claims which, therefore, would start with

9     more precisely the analysis on is it derivative or direct?  If

10    the former, zero; if the latter, some amount.  Whatever that

11    amount might be based upon the evidence, it might be two

12    dollars, it might be twenty billion dollars, but it could be

13    estimated.

14         MR. RICHARDSON:  Certainly, if the Court is prepared

15    to grant the motion, that would need to be the type of

16    procedure that would be -- that would follow very quickly.  But

17    I would like to explain why these are asserted as derivative

18    claims despite some of the language in the complaint --

19         THE COURT:  Okay.

20         MR. RICHARDSON:  -- and why these parties are not

21    creditors in this case.

22         THE COURT:  Okay.

23         MR. RICHARDSON:  The securities plaintiffs have told

24    us that a case called Semtech is the case that proves that they

25    hold direct claims.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1        In Semtech, Central District of California case, the

2    corporation issued undisclosed backdated stock options for a

3    period of years.  During the class period, those remained

4    undisclosed, and the financial statements were allegedly better

5    than they should have been had they reflected those obligations

6    and, therefore, the price of the stock was inflated.

7        When they became known, stock price dropped, there

8    were claims for recovery.  The court found that those are

9    direct claims under the Securities Act.  We don't have anything

10   like that here.

11       These parties have filed a complaint against the

12   directors and officers, the debtors, and third parties alleging

13   that there were a variety of misrepresentations preceding the

14   North Bay fires.  Most of them go to vegetation management.

15   Claims that the Vegetation Management Program was in compliance

16   with state law, it was first rate --

17       THE COURT:  Right.  So I'm aware of it.

18       MR. RICHARDSON:  -- putting more money into it.

19       THE COURT:  I've read the complaint.

20       MR. RICHARDSON:  And then the allege the North Bay

21   fires happened.

22       From page 96 on to page 117, they allege in detail how

23   three days after the North Bay fires, and for the next year and

24   a half, the market and the public and governmental entities

25   started to understand the nature of the liability that the

(970) 356-7515  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    debtors faced for the North Bay fires.

2           Courts typically isolate the damages to determine what

3    is the gravamen of the complaint?  They collapse the

4    transactions, so to speak.  In this case, the first damages are

5    fire victim damages.  The debtors are on the hook for billions

6    and billions of dollars of fire victim damages.

7           THE COURT:  Right.

8           MR. RICHARDSON:  CPUC fines and so on.  The damage

9    that made its way down to shareholders flows from that damage.

10           Under the case law we cited in our opposition, they

11    have to be able to allege separate damage that is not

12    incidental to the damage to the debtors.

13           In the case of Semtech, there was damage based

14    directly on a misrepresentation that was shown to be false:

15    stock dropped.  Here, there were alleged misrepresentations,

16    but there was a fire, an intervening tort event that caused

17    billions of dollars of liabilities to the debtors.

18           The debtors, in turn, have claims to go out against

19    their own directors and officers, third parties, contractors,

20    and so on to recover some of those damages, and they've

21    assigned them to the fire victim trust as valuable

22    consideration.  But the damages experienced by shareholders are

23    simply a result of those damages to the corporation.  They are

24    not separate; they are merely incidental.

25           The case that actually is similar to this is one we've

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    cited in our opposition on pages 7 and 8 called Touch America.

2    The Touch America case was the Chapter 11 case of the former

3    Montana Power Company.  It was a regulated electric utility in

4    Montana.  At the time, it was the counterpart of PG&E in

5    Montana until its Wall Street advisors convinced it that it

6    should sell off most of its utility assets and turn itself into

7    a telecom company just as the telecom industry was collapsing.

8    It ended up in Chapter 11.  It's stock and its assets were

9    worthless.

10        Mr. Julian and I now this case well.  We represented

11   the committee, and then the post-confirmation trust.  The TCC's

12   current FA, Brent Williams, was the trustee, and we pursued

13   assigned D&O claims for the trust against directors and

14   officers.

15        At the same time, shareholders were claiming that they

16   had direct claims under the Securities Act because they were

17   denied the right to vote on this restructuring.

18        We went before Judge Carey in the Delaware Bankruptcy

19   Court and he, essentially, collapsed the transaction to

20   determine the true nature of the damages.  He determined that

21   the damages were not caused by a lack of a vote, that the

22   shareholders were not separately damaged by a lack of a vote.

23   The damages were the restructuring that went forward at an

24   inopportune time, cased damage to the corporation, put it in

25   bankruptcy, and left the shareholders with shares of no value.

of 152   operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corp., Pacific Gas and Electric Company

1    The critical point here is that it is not enough to

2  allege that there were misrepresentations, violations of the

3  Securities Act, and our shares went down.  If the shares go

4  down because of the larger injury to the corporation, and what

5  we have here is a larger injury to the corporation.

6    Every single derivative action against Ds and Os

7  involves omissions, misstatements that could be styled as

8  securities direct claims if it wasn't for the requirement that

9  they show separate damages.

10    No corporation says we're issuing an announcement that

11  our directors and officers are committing negligence, so you

12  shouldn't buy our stock right now.  Rather, that comes out in

13  the derivative claims that there were misrepresentations or

14  omissions.  No one was told about the negligence or the

15  violations.

16    But unless shareholders can show that they had a

17  separate injury that did not flow from the larger injury to the

18  corporation, they do not have direct claims, and that is where

19  we are in this case.  Stock dropped in value because of fire

20  damages that have put these companies in bankruptcy.

21    It would be a very different case if a month before

22  the North Bay fires PG&E had put out a statement saying it's

23  come to our attention that our Vegetation Management Program is

24  not compliant with California law.  The next day, the stock

25  might have dropped a percent or two.  It would have reflected

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    the adjustment of -- accounted for that misrepresentation

2    because now shareholders would recognize that they have been

3    misled and there might be a greater risk of a possible fire

4    down the road.  We don't have that here.  That would have been

5    Semtech.  What we have is a fire that caused major damage to

6    the corporation and flowed down to shareholders just as it

7    flowed down to every other party in these cases.

8          THE COURT:  And why is that -- isn't it different from

9    a company that says we're doing everything properly when, in

10   fact, they weren't doing it properly?

11         MR. RICHARDSON:  I'm not saying there weren't

12   misrepresentations.  That's element one.

13         THE COURT:  But well, again --

14         MR. RICHARDSON:  -- of the direct claim.

15         THE COURT:  Okay.  So we're -- and we're doing it

16   properly when, in fact, they were not doing it properly, and

17   then, of course, there were the fires and that's what,

18   obviously, was so precipitous.  But wasn't there not damage to

19   the individual shares that that -- even before the fire then

20   because of the misrepresentation?

21         MR. RICHARDSON:  The misrepresentations, they were --

22         THE COURT:  If I bought the stock in reliance on the

23   management telling me everything's hunky-dory, we're not doing

24   fire, we're not at any fire risk, aren't I misled if I'm not

25   told they were cooking the books and falsifying the records?

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. RICHARDSON:  And that argument would erase the

2    rule.  It would erase all case law that deals with ordinary

3    situations where damages against the company drive it into

4    bankruptcy and the stock drops.

5          Every asbestos case would have had direct shareholder

6    litigation based solely on the fact that they were not told

7    certain aspects about the damages of asbestos before the

8    company went into bankruptcy.

9          THE COURT:  Well, if the company had filed bankruptcy

10   before the fires for other reasons, there might have been a

11   claim for you didn't tell me that the stock was going to -- was

12   false.  You didn't tell me that the misrpre -- the statements

13   about compliance were not true.

14         MR. RICHARDSON:  Correct.  That --

15         THE COURT:  Right?

16         MR. RICHARDSON:  -- that is an argument that erases

17   the rule.  The Court --

18         THE COURT:  Well, I guess I'm not following you when

19   you -- explain that again.  I don't understand what you would

20   mean by erases the rule.  Which rule?  The rule that there can

21   be no direct claim?

22         MR. RICHARDSON:  Yes.  The rule that requires that in

23   order for there to be a direct claim, they have to have a

24   separate measure of damages that is distinct from the damage to

25   the corporation.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  Yeah, but --

2    MR. RICHARDSON:  If there --

3    THE COURT:  Okay.

4    MR. RICHARDSON:  Let me put it this way.

5    THE COURT:  Okay.  Okay.

6    MR. RICHARDSON:  If there had not been a North Bay

7    fire, six months later the stock would likely have been at

8    around the same level, maybe higher.  They could have sold

9    their stock and made a good investment on it.  They weren't

10   harmed by the misrepresentation until there was a fire that

11   destroyed the company.

12   THE COURT:  Okay.

13   MR. RICHARDSON:  The damage that they incurred is a

14   result of the fire.  It flows from the fire and is not

15   independent.  Because it is not independent, the claims that

16   they have alleged that say that all of their damages stem from

17   the North Bay fire and a realization, the impact it would have

18   on the company are derivative claims --

19   THE COURT:  Are derivative.

20   MR. RICHARDSON:  -- and, therefore, they're not

21   entitled to notice, they cannot file a claim in this case, and

22   more importantly if they have not alleged -- I'm not asking the

23   Court to make a final ruling on whether these claims are final

24   or direct, it goes to what they've alleged at this point -- if

25   they have not alleged direct claims properly by not alleging

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  separate and distinct damages, then they should not be allowed

2  to upset the plan confirmation process at this late stage.  It

3  goes to the Musicland factors as well as going to the question

4  of whether they're even creditors of the estate.

5          THE COURT:  Okay.  I appreciate your point.  All

6  right.

7          MR. RICHARDSON:  Okay.

8          THE COURT:  I'll hear -- I have ten minutes for

9  plaintiffs, and then we're going to --

10          MR. KAROTKIN:  Your Honor, may I have a couple of

11  minutes at some point?

12          THE COURT:  Sure.  Go ahead.  I didn't know I was

13  going to hear from you, but Mr. Karotkin.

14          MR. KAROTKIN:  Your Honor, Steven Karotkin, Weil,

15  Gotshal & Manges for the debtors.

16          Just to address a point or two that you raised about

17  gumming up the works.  And I think this is a classic case of

18  gumming up the works, and I think it's important to keep in

19  mind, Your Honor, that the debtor's plan is premised on twelve

20  billion dollars of new equity investments; many of which are

21  coming from existing equity holders.

22          The impact of this potential claim on that investment,

23  not only from the standpoint of how much equity will those

24  people own in the reorganized entity from the standpoint, also,

25  of how much of their existing holdings will be diluted by this

PG&E Corp., Pacific Gas and Electric Company

1   potential class proof of claim will substantially gum up the

2   works here, Your Honor.

3          A couple of other things.  This is not just equity.

4   They're also asserting claims for cash based on notes to the

5   tune of several hundred million dollars, additional financing

6   if they are successful that will have to be required for plan

7   confirmation.

8          And Your Honor, I'd just like to go back to one thing

9   Mr. Slack alluded to that you didn't find terribly compelling.

10  The fact of the matter is where were they -- and I know you say

11  these are not fire claims -- but where were these people when

12  the bar-date motion was filed?  Where were they?  Why didn't

13  they come in like other people came in --

14         THE COURT:  Well, listen, I mean he's argued -- Mr.

15  Slack made this argument.

16         MR. KAROTKIN:  But let me address it if I could.

17         THE COURT:  Yeah.  Okay.

18         MR. KAROTKIN:  If you would indulge me for a minute.

19         Other people did come in besides fire claimants and

20  said that the notice wasn't robust enough.  Why didn't they

21  come in?  Why didn't they come in and say well, Your Honor, you

22  know, the debtors should give the notice that counsel referred

23  to today, they should do the class-action procedures?  Why

24  didn't they do that?  And I think the answer is pretty obvious,

25  because if they had done that, then any effort on their part,

PG&E Corp., Pacific Gas and Electric Company

1    on the part of the lawyers to get a class action would never

2    have happened.  And therefore, we wouldn't be here today, they

3    wouldn't be seeking class-action status, and if they had really

4    cared about the claimants as opposed to the lawyers being able

5    to prosecute a class action, and I don't want to say, Your

6    Honor, get the fees associated with that, we wouldn't be here

7    today.  And that's the whole point of this proceeding.

8         They had plenty of time to come in and ask the Court

9    to give appropriate notice.  They didn't.  They waited two

10   months before they sought class-action status and why did they

11   do that?  I think the answer, that's pretty obvious; because

12   they wanted to wait and try to gum up the works to extract a

13   settlement, and that's why we're here today.  Your Honor, this

14   clearly will gum up the works.

15        As you'll hear from me shortly, and as you already

16   know, Your Honor, we have a global consensus here to get this

17   case out of Chapter 11 on a timely basis.  This will --

18        THE COURT:  Yeah --

19        MR. KAROTKIN:  -- gum up the works.

20        THE COURT:  Okay.  I got to come back -- I will come

21   back to you, but I'm trying to juggle the timing here.

22        All right.  So let me hear back from the plaintiffs.

23   Mr. -- well, whose -- which of you is going to do it?  Mr.

24   Elkin (sic) or Mr. --

25        MR. ETKIN:  I'm going to --

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  Mr. Elkin (sic), please.

2          MR. ETKIN:  -- I'm going to deal with a couple of the

3   issues, Your Honor --

4          THE COURT:  Yes.

5          MR. ETKIN:  -- and Mr. Behlmann will deal with --

6          THE COURT:  Okay.

7          MR. ETKIN:  -- the notice related issues.

8          Let me work backwards with respect to the TCC's claims

9   of dilution.

10          Your Honor, this -- there's no dilution with respect

11   to the value of the stock.  They get 20 -- they get 20.9

12   percent of the stock from a value perspective. This is a

13   question of whether some of those shares of stock would go to

14   satisfy the claims of the frauded investors or not.

15          THE COURT:  Well, that is --

16          MR. ETKIN:  This has nothing to do with --

17          THE COURT:  Well, that's a dilution, then, isn't it?

18          MR. ETKIN:  Well, it's a --

19          THE COURT:  I mean, of course it is.

20          MR. ETKIN:  It's not a dilution to the TCC.  They're

21   getting what they're getting.  The value that they're

22   getting --

23          THE COURT:  I don't quite follow that.

24          MR. ETKIN:  Well, Your Honor --

25          THE COURT:  That doesn't sound right.  That sounds

PG&E Corp., Pacific Gas and Electric Company

1 like I'm going to pick your pocket, but you're not going to

2 lose any value.

3           MR. ETKIN:  No.  We're not picking the TCC's pocket.

4           THE COURT:  Well --

5           MR. ETKIN:  The TCC's get -- there's going to be a

6 valuation of this debtor, and that's going to determine what

7 the price of the stock of the reorganized debtor is or what the

8 value is, and the TCC gets 20.9 percent of that.

9           Now, there may be dilution --

10           THE COURT:  And what if it is lowered because twenty-

11 five -- twenty percent of 2X is -- I mean, twenty percent of X

12 is lower than twenty percent of 2X, because they -- under what

13 we just heard Mr. Richardson point out, if the shares that

14 would otherwise go -- all twenty percent of the shares would go

15 to the victim's trust, a portion of it goes to the plaintiffs'

16 trust -- I mean, the class-action plaintiffs' trust.  That

17 sounds like a dilution to me.

18           MR. ETKIN:  I don't believe it is a dilution with

19 respect to the value.  Your Honor, as we understand it, the

20 fire victims --

21           THE COURT:  Well, no, it's not a dilution as to the

22 value.  It's a dilution of the pie -- there's another slice of

23 the pie handed to somebody else.

24           MR. ETKIN:  Yeah, but not --

25           THE COURT:  The pie doesn't get --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    MR. ETKIN:  -- not the fire victim slice.

2    THE COURT:  Well, how does -- why -- it's the pie.

3    MR. ETKIN:  Because if --

4    THE COURT:  The fire victims are getting cash --

5    MR. ETKIN:  Correct.

6    THE COURT:  -- and equity.

7    MR. ETKIN:  Correct.  That's correct.

8    THE COURT:  Okay.

9    MR. ETKIN:  So if the stock -- if the value of the

10   stock, let's say, is 10 billion dollars for the sake of

11   argument, the value remains the value and the fire victims get

12   20.9 percent of that value.  We're not -- we're not going to be

13   impacting the value of the stock coming out.  We're going to be

14   impacting, perhaps, the stock that's available for existing

15   equity holders under the plan.  So I don't see that dilution at

16   all.

17   THE COURT:  Okay.

18   MR. ETKIN:  Again, we're subordinated creditors.  The

19   fire victims are getting value in the form of stock of the

20   reorganized entity, and it's -- I believe, it's 6.75 billion of

21   PG&E common stock.  I think that's where it comes out.  And

22   it's not less than 20.9 percent of the total.  That will --

23   that will be unaffected.

24   Of course, the class members or not going to be

25   signing on because it's just a practical impossibility to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    participate in the rights offering unless they do so

2    independently.  So there's going to be no impact there.

3           There's a slice of stock that's going to be available

4    for distribution to existing holders, and that's where the

5    interest of the frauded investors may come in.

6           Your Honor, the entire derivative claim argument

7    really escapes me totally.  They can see that there are

8    misrepresentations.  They can see that the misrepresentations

9    may have affected the price of the stock, that the stock ended

10   up being lower because of the misrepresentations, and if they

11   would disclose, there may have been a different approach taken

12   by purchasers of that stock.

13          These are garden variety securities-fraud claims,

14   based upon misrepresentations, and stock that was purchased on

15   an average of fifty-five dollars a share --

16          THE COURT:  No, you said that before.

17          MR. ETKIN:  -- during the class period, and they end

18   up being worth much, much less, and by virtue of the fires,

19   yes, but because of the failure to disclose whether

20   misrepresentations.

21          Your Honor, what I find baffling is that the debtors

22   pronounced an adversary proceeding in order to enjoin the

23   claims of the class members, but never raised the issue, as I

24   would have assumed they would have if they felt that there was

25   anything to it, that you can't go forward with these claims;

PG&E Corp., Pacific Gas and Electric Company

1    they're ours.  They're derivative claims.  You should be

2    enjoined.

3         Now, that's precisely what the debtor did with respect

4    to the derivative lawsuit that was pending pre-petition.  They

5    moved to enforce the stay, Your Honor issued a tentative, and

6    the derivative plaintiff, as they should have, walked away.

7    That's not our case.  That's a separate case.

8         Your Honor, the parade of horribles that Mr. Karotkin

9    just laid out we're hearing this for the first time, and,

10   frankly, I'd go back to what the Court said previously about

11   the ability to estimate for voting purposes the ability to

12   resolve these claims.  It's really a function -- claims are

13   left unresolved post-confirmation all the time, even large

14   claims, significant claims.  It's a function of disclosure,

15   plain and simple.

16        And with respect to the citation of the Amdura

17   court -- the Amdura court's decision by Mr. Slack -- let me

18   just read the quote that appears in our papers.  The Amdura

19   court held "publication alone as to members who no longer held

20   securities was insufficient to satisfy due process where

21   representatives have taken all necessary steps to file class

22   proof of claim in bankruptcy case, both debtor and the

23   bankruptcy court were aware of the existence of the individual

24   creditors and debtor could have obtained a list of creditors'

25   names and addresses from representatives."  That's what the

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    Amdura court said.

2           And as it relates to the other case that the debtors

3    seem to depend upon for their position, and that's the GAC

4    case, that case was decided in 1982 before all of the

5    jurisprudence with respect to class proofs of claim, and the

6    debentures at issue there were not publicly traded, and the

7    debtors were not even aware that the purchasers had claims

8    according to the GAC court.

9           The debtors were very much aware of the class claims

10   in this case.

11          THE COURT:  They were.  That's right.  Okay, listen, I

12   need to wrap up --

13          MR. ETKIN:  Sure.

14          THE COURT:  -- so let's hear what Mr. Behlmann's going

15   to --

16          MR. ETKIN:  And briefly on Alonso, Your Honor, let me

17   just make a couple of points.

18          First of all, it's not securities litigation, it's not

19   subject to the PSLRA stay --

20          THE COURT:  Well, why does that matter?

21          MR. ETKIN:  It matters because there was nothing that

22   we could do given the PSLRA stay in terms of pre-petition class

23   certification.

24          THE COURT:  You could have filed a motion.  You

25   could -- I think the other side's argument is you could have

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  filed your motion for class treatment.  The PL -- whatever that

2  acronym is -- that didn't stop -- that doesn't affect you from

3  doing something in the bankruptcy court.

4        MR. ETKIN:  That's correct, Your Honor, and we did.

5  We made our motion.

6        THE COURT:  Well, no, but I mean, their point is you

7  made your motion way too late.

8        MR. ETKIN:  Well --

9        THE COURT:  That's the point that I have to reconcile.

10        MR. ETKIN:  And I understand that, Your Honor.

11        THE COURT:  Okay.

12        MR. ETKIN:  We -- I don't want to repeat that --

13        THE COURT:  Good.

14        MR. ETKIN:  -- during the course of our initial

15  argument.

16        Your Honor, you also held in connection with the --

17  with your tentative ruling that the proof-of-claim process was

18  sufficient to deal with the alleged wrongdoing in the Alonzo

19  case which were wage and hour claims.

20        THE COURT:  Yeah.

21        MR. ETKIN:  And presumably -- and you noted the

22  difference yourself -- presumably employees know whether

23  they're owed money or not or believe if they're owed money --

24  they're owed money or not.  Very different than the

25  circumstances with absent class members.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    And the last thing I wanted to mention, Your Honor,

2  was let's not forget that the debtor did exactly what you would

3  have to do in order to identify -- this was the Schwab

4  statement that the Court made -- they did exactly what you'd

5  have to do by contacting nominees to identify holders of the

6  stock on the record date.

7    They reached out, and they sent them packets, and the

8  nominees needed to send them out to beneficial holders.  The

9  point is that that's precisely what could have been done, and

10  the idea of getting an order of this Court to the extent that

11  it was necessary to compel the nominees to do what the debtors

12  were asking them to do is not, by any stretch, a heavy lift,

13  but even without that order, they were directed to do -- they

14  would have been directed to do something by the bar-date

15  notice, and while you, perhaps, couldn't enforce it by the

16  strength of a court order, that would have, at least,

17  potentially solved the problem.

18    THE COURT:  Okay.  Let me hear from Mr. Behlmann, and

19  then we're finished.

20    MR. BEHLMANN:  I will keep this very brief, Your

21  Honor.

22    There was one point Mr. Slack made that I wanted to

23  respond to.  It was -- it was made in passing, but I absolutely

24  cannot leave this unaddressed.

25    Mr. Slack noted that in the debtor's view,  notice

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    through nominees is "another form of constructive notice".

2    That is absolutely wrong, completely wrong.

3            Constructive notice, you put the notice out in the

4    world, you put it out in a manner that you hope somebody sees

5    it, but you don't take any steps to actually get the notice

6    into their hands.

7            Actual notice is where you take a reasonable step, you

8    undertake reasonable efforts to get the notice into the hands

9    of the person you want to have the notice.  That is what the

10   procedure that Your Honor spoke about in the case of Schwab if

11   you own five shares of ABC, that is an effort, giving that

12   notice to the nominees to put the notice into your hands.  That

13   is a form of actual notice.  That is why that form of notice is

14   used in securities class actions to comply with Federal Rule of

15   Civil Procedure 23(c)(1)(B) which requires in a (b)(3) class

16   that you give individual notice to class members where you can

17   do so through reasonable effort.  That is the reasonable

18   effort.

19           And one final point related to the Amdura case that

20   both Mr. Slack and Mr. Etkin mentioned, the outcome in that

21   case when the district court reversed and remanded, it also

22   held that if the bankruptcy court did not invoke Rule 7023, the

23   debtor would have to go out and give actual notice to all of

24   the absent class members and reopen the bar date for them.

25   That is -- that would gum up the works if anything in this case

escribers
(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    would gum up the works, and that would be the outcome here.

2         The debtors would like to wave that off and assume the

3    constitutional due-process problem just goes away if this

4    motion is denied.  But the problem is still there, and the

5    problem still has to be remedied, and the remedy that we're

6    proposing is infinitely more efficient than anything else

7    that's on the table right now.

8         THE COURT:  Okay.  Thank you all for your arguments.

9    The matter stands submitted.  I'll do my best to deal with it

10   promptly.  I can't promise it.  I'll do what I can.

11        Mr. Karotkin, I committed to everyone that I would not

12   go on one of my marathon court hearings, can we finish

13   discussing Chapter 11 scheduling, et cetera, by 12:20 so we can

14   take a break before the 1:30 calendar?  I have a few questions.

15   I don't know what you and others --

16        MR. KAROTKIN:  I have a --

17        THE COURT:  -- you have in mind.

18        MR. KAROTKIN:  I'm sorry.

19        THE COURT:  Well, I mean, I have a few things to raise

20   with you but even if I didn't, do you have a kind of an outline

21   of what you think we should cover, and then would it be better

22   just to resume and start later at the -- the Tubbs hearing this

23   afternoon is discrete?  It's only -- I've only allowed a short

24   period of time.  What do you think would be more efficient?

25        MR. KAROTKIN:  I think I could give a brief statement

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  on the status conference --

2      THE COURT:  Okay.

3      MR. KAROTKIN:  -- in five or ten minutes, and I have a

4  proposed time line for moving the cases forward that I could

5  submit and hand up to the Court.

6      THE COURT:  Okay.  Let me, then, give you a -- not

7  something you need to respond to, but it's sort of on my to-do

8  list, and maybe it's part of -- it's on your list as well.  And

9  so in no particular order here are things that I feel that I

10  need to make sure we deal with.

11      There was a recent letter that I'm sure you were

12  copied from counsel for the trade creditors about asking that

13  there be some resolution to make the pre -- post-petition

14  interest matter get teed up to be certified.  So I'd like to

15  hear from you on that.  And when we can, I had on my list that

16  I need to have a -- some critical dates for targets, at least,

17  for when the plan -- the latest version of the plan will be

18  filed, when you think we should have a disclosure statement.

19      Then on a broader subject, this question that I raised

20  on a couple of earlier orders about the content of it and who's

21  going to get what extent of notice.  And then what your idea of

22  a target of the -- of a confirmation schedule would be.

23      Then on another, unrelated to that, we had papers

24  filed earlier by San Francisco and some other creditors dealing

25  with the issue that maybe is academic if the bondholders --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  senior bondholders' claim is going to go away.  So we don't

2  have to worry about the so-called municipalization issue any

3  more, right?  You remember that?  Those were Valley Clean

4  Energy and South San Joaquin Irrigation and City of San

5  Francisco, they all raised that.  You know what I'm talking

6  about?

7          MR. KAROTKIN:  I think they spoke with me after one of

8  the hearings.

9          THE COURT:  Okay.  Well, I mean, they all filed

10  something to take issue what was in the senior bondholders'

11  plan.

12          MR. KAROTKIN:  Yes.  They've raised that with me.

13          THE COURT:  And I assume that goes away now.  And --

14  well, you tell me.  Those are things that we just need to

15  address.

16          MR. KAROTKIN:  Yes.

17          THE COURT:  And then the question of the issue about

18  the discharge for governmental entities.  Those same three

19  creditors raise that question.

20          And then some time ago the federal government -- I'll

21  say FEMA but it's the attorneys for the government for

22  governmental agencies and the state, various agencies have

23  raised these questions about trust governance, trust structure,

24  trust details, and I hope we've got some information about that

25  to talk about.

PG&E Corp., Pacific Gas and Electric Company

1    And then the last thing that's kind of on my to-do

2   list is really a -- it's a rehash of what I said before about

3   the contents of the disclosure statement.

4    It is true that I, and I'm sure many of the TCC

5   counsel and maybe lawyers in your firm are hearing from a lot

6   of people writing to me, writing to you, no doubt, about I

7   don't want stock, what's going to happen, how am I going to get

8   paid, and I am concerned about the precedent that is being

9   followed in a few instances here of moving very, very quickly,

10  and I don't want to move very, very quickly when it's time to

11  make sure that there's an adequate disclosure of the kind of

12  nuts and bolts that has to be disclosed, but also the kind of

13  simplified disclosure statement, or portion of a disclosure

14  statement, that needs to go the tens of thousands of people

15  that just don't need to have a 500-page disclosure statement.

16    You know, I said this before; I hope that's on your

17  list.  So your turn.  Those are my issues.

18    MR. KAROTKIN:  Okay.  So just by way of an update

19  which I'm sure you're already aware of -- and by the way,

20  today's the first year anniversary of the fire.

21    THE COURT:  That's right.  I think I mentioned that to

22  you too.

23    MR. KAROTKIN:  So in honor of the first year

24  anniversary, as you're aware on Monday, we filed a motion

25  seeking approval of the restructuring support agreement that we

(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    reached with members of the ad hoc committee of senior

2    noteholders and others, and you have set a hearing on that for

3    February 4th.  Subject to Your Honor's approval of that

4    restructuring support agreement, the debtors have now achieved

5    a comprehensive global consensus with respect to their Chapter

6    11 plan.  Approval of the noteholder RSA will eliminate the ad

7    hoc committee's competing plan.

8            THE COURT:  Am I right there; they committed, upon

9    approval, they will withdraw --

10           MR. KAROTKIN:  Yes, sir.

11           THE COURT:  -- formally withdraw the plan.

12           MR. KAROTKIN:  Formally withdraw.

13           THE COURT:  Okay.

14           MR. KAROTKIN:  They will withdraw their motion for

15   reconsideration -- or suspend their motion for reconsideration

16   with respect to Your Honor's orders approving the tort

17   claimant's RSA and the subrogation claimants' RSA.

18           The make whole dispute will be suspended as well

19   because that's resolved as part of the plan treatment.

20           The dispute as to post-petition interest with respect

21   to their claims has been resolved, and they will withdraw their

22   objection to the debtor's request that Your Honor approve the

23   terms of financing for their plan.

24           THE COURT:  So again, I haven't had a time -- an

25   opportunity to review the new RSA, but do I assume that that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  plus whatever the next iteration of a plan will put into play

2  in the plan, the compromise of the post-petition interest and

3  the --

4           MR. KAROTKIN:  Yes, sir.

5           THE COURT:  -- make whole treatment?

6           MR. KAROTKIN:  Yes, sir.

7           THE COURT:  Okay.

8           MR. KAROTKIN:  The plan will be revised to reflect the

9  treatment that's been --

10          THE COURT:  So you're not -- this is not being

11  addressed as a traditional 9019 settlement or anything, it's

12  just it's the plan and --

13          MR. KAROTKIN:  It's the plan.

14          THE COURT:  -- they've agreed to it.

15          MR. KAROTKIN:  Yes.

16          THE COURT:  Okay.

17          MR. KAROTKIN:  And they've agreed to support the plan

18  moving forward.

19          THE COURT:  Right.

20          MR. KAROTKIN:  And as we've indicated in our

21  pleadings, we believe that with this restructuring support

22  agreement, the debtor's cases are now on a smooth path toward

23  confirmation within a time line of AB 1054, June 30th.

24          You mentioned the ad hoc trade committee, we will hear

25  from then and we can address the issues with respect to the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    post-petition interest, but I'll save that for later.

2           We don't believe that's any impediment to moving

3    forward with confirmation of a plan.

4           THE COURT:  Well, I mean, we can -- are you willing to

5    have me turn that into an order and make a 54(b) certification

6    on that issue?

7           MR. KAROTKIN:  Well, Your Honor, we think it's more

8    appropriate for that to be deferred until confirmation.  You

9    can rule on that and have that order issued in connection with

10   the confirmation hearing, because as you said it is a

11   confirmation matter.  I think that risks two appeals.  One that

12   could happen now and one that could happen in connection with

13   the confirmation order --

14          THE COURT:  Yeah.

15          MR. KAROTKIN:  -- and appealed by other parties.  We

16   don't think that's the right way to proceed.

17          THE COURT:  Is the new version of the plan going to

18   set aside a reserve in case that -- that particular issue goes

19   the other way?  I mean, are you --

20          MR. KAROTKIN:  It is not our intention to do so,

21   but --

22          THE COURT:  Well, you had -- it was in the prior plan,

23   though, right?

24          MR. KAROTKIN:  In the prior, yes, we provided that we

25   would modify the plan to the extent Your Honor ruled against

(973)406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    us.

2                    THE COURT:  Right.

3                    MR. KAROTKIN:  Your Honor has not ruled -- you ruled

4    in our favor.

5                    THE COURT:  Right.

6                    MR. KAROTKIN:  So we don't see any reason to do --

7                    THE COURT:  And in simple terms -- right.  If I had

8    said that you have to pay contract interest, you would have --

9    I think -- or thought you would say you were going to commit to

10   it but reserve the right to appeal it and scale it back.

11                   MR. KAROTKIN:  Yes, but you ruled the other way.

12                   THE COURT:  Correct.

13                   MR. KAROTKIN:  So there's no reason to put in the plan

14   that we will treat them differently from what you've already

15   ruled.

16                   THE COURT:  But are you going to be in a position to

17   protect against an adverse ruling against -- in favor of those

18   who might appeal that aspect of the plan?

19                   MR. KAROTKIN:  Your Honor, I think that that's

20   something you can address at the confirmation hearing.

21                   THE COURT:  Okay.  So you're view at the moment for

22   the reasons you stated, this is not something that should be

23   the subject of an order now.

24                   MR. KAROTKIN:  Right.  This is no longer a gating

25   issue in view of the settlement with the bondholders.  This

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    is --

2            THE COURT:  Well, that's what I assumed.

3            MR. KAROTKIN:  Yes.  Okay.

4            Now, Your Honor, we're well aware of the issues that

5    have been raised by the governor's office with respect to the

6    debtor's plan.  We are engaged in, what I believe, are

7    constructive discussions with the governor's office, and I

8    believe that we will be able to resolve those concerns.

9            We are also moving forward with the CPUC approval

10   process.

11           And as I mentioned, with all of these accomplishments

12   and the global consensus that's been achieved, we're on track

13   to meet the June 30, 2020 deadline.

14           Now, addressing a proposed timetable for the

15   disclosure statement, could I approach?

16           THE COURT:  Yeah, and I have in front of me for what

17   it's worth, the proposed timetable that you filed before,

18   several months ago, and I'm -- I can look at it if I need to,

19   but I've got it.  So we can compare dates here.  And --

20           MR. KAROTKIN:  So this, Your Honor, is the suggested

21   timetable.

22           THE COURT:  Okay, I can read --

23           MR. KAROTKIN:  It's not pressed in --

24           THE COURT:  -- I can read it, but why don't you --

25           MR. KAROTKIN:  Yes.

(979) 353-1152 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  -- just state it so -- for those who don't

2    have it or are on the phone or otherwise can hear what you're

3    saying.

4    MR. KAROTKIN:  Sure.  It's meant to be an indicative

5    timetable.  It's not cast in concrete.  We're not asking you to

6    enter an order setting forth any particular timetable at this

7    point, but this is how we see things moving forward today

8    subject to your input and others input as well.

9    We would be filing an amended plan at the end of this

10   week which would incorporate the noteholder RSA terms for the

11   treatment of their -- of the claims of those particular

12   creditors and as well as some other cleanup items.

13   On February 7th, we would propose to file a draft

14   disclosure statement, as well as a motion seeking approval of

15   the disclosure statement, solicitation procedures, ballots,

16   notice, and setting a hearing to consider confirmation of the

17   plan.

18   THE COURT:  So how -- when would you want that to be

19   heard?

20   MR. KAROTKIN:  Well, then, that's March 11th.  If you

21   look at the next date --

22   THE COURT:  Um --

23   MR. KAROTKIN:  -- we would ask that that be heard --

24   suggest that that -- the hearing to consider approval of the

25   disclosure statement as well as the voting procedures be set

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    for March 11th.  And we haven't -- by the way, Your Honor, we

2    haven't checked any of these dates with your --

3            THE COURT:  No, that's okay.  I mean, I assume that I

4    belong to you for the coming months.  Well, let me just tell

5    you ahead of time, I'm going to -- I'm going to put in an

6    intermediate time by which objections have to be filed and a

7    meet and confer for principal players, and possibly even --

8    well, at least that, because a lot of -- my view is objection

9    to disclosure statement can easily be dealt with by disclosing

10   more.

11           MR. KAROTKIN:  Exactly.

12           THE COURT:  Except in the case where we want to keep

13   the disclosures relatively simple.

14           MR. KAROTKIN:  Yes.  And I will tell you, we -- we

15   have taken your admonition that this is -- the draft that will

16   be filed, will be substantially different from disclosure

17   statements that I think people in this room have been familiar

18   with in other cases.  It is not a telephone book.  We have

19   tried to make it relatively simple.  We have tried to gear it

20   toward the fire claimants which we think is critically

21   important here.  I am sure people will have comments, but that

22   is how we have approached this taking --

23           THE COURT:  Are you free to tell me there's been some

24   colloquy with representatives of the TCC on that -- on the very

25   same subject on the disclosures?

PG&E Corp., Pacific Gas and Electric Company

1          MR. KAROTKIN:  Yes.

2          UNIDENTIFIED SPEAKER:  Yes, sir.

3          THE COURT:  Okay.  Good.  Okay.  Well, we can come

4    back later to -- I mean, you go ahead and finish with the

5    sequence here.

6          MR. KAROTKIN:  Sure.  Assuming approval of the

7    disclosure statement and solicitation period within the time

8    frame, the March 11th time frame, we would see a deadline to

9    vote of May 15th, 2020.  I think, Your Honor, it's important to

10   keep in mind the extent of the notice that has to be given with

11   respect to voting in view of the tens of thousands of fire

12   claimants, the public shareholders, other creditors.  It's a

13   massive undertaking so we have --

14         THE COURT:  I'm well aware of that.

15         MR. KAROTKIN:  -- and we want to make sure that,

16   particularly, the fire claimants have sufficient time to vote.

17   And we've been working, by the way, with the -- with the tort

18   claimants' committee and the attorneys to -- I don't like to

19   call it streamline, but to come up with a very, very efficient

20   manner in which to solicit the votes of fire claimants.  It

21   will be something a little different from what you're

22   accustomed to.

23         THE COURT:  Good.

24         MR. KAROTKIN:  But we have been working very, very

25   closely with them to come up with a process that facilitates

PG&E Corp., Pacific Gas and Electric Company

1   getting the votes in timely and appropriately.

2           THE COURT:  Well, but back up.  And again, I presume

3   you've already thinking about this, their votes have to come

4   in, because they have to be able to understand what they're

5   doing, and they don't -- this is back to my no phonebook

6   rule -- and I went back and looked at the national rules, and

7   the national rules allow you some flexibility in disclosures,

8   and then there's kind of disclosures of disclosures.  And so

9   you could have a summary, and then refer anyone to the more

10  detailed --

11          MR. KAROTKIN:  Yes.

12          THE COURT:  -- if they wanted, either through website

13  or access.  Okay.  You're on top of it, I hope.  I think.

14          MR. KAROTKIN:  Yes.  We're trying.  We're trying.

15          So again, based on that time line with the voting

16  deadline of May 15th, we would also have the same date as the

17  date for filing of objections to confirmation.

18          THE COURT:  Okay.  On that subject, again, it's been

19  my practice, and I think it would be important on this case is

20  to have a status conference by and attended by principal

21  counsel of objectors.  I mean, we have principal counsel on

22  everything here, but the point is, if creditor A is objecting

23  to confirmation, I want creditors' A lawyer at a hearing early

24  on with you and the other principal lawyers to talk about,

25  okay, what are you objecting, what is the legal question to

PG&E Corp., Pacific Gas and Electric Company

1   that question, and so on.  So I don't want one of these things

2   where they're in the dark.

3          So anticipate, essentially, the equivalent of a trial

4   scheduling conference and an adversary proceeding with the

5   adversary proceeding be our confirmation or -- and maybe even

6   necessary, our disclosure statement hearing -- each time that

7   we have a preliminary hearing to see --

8          MR. KAROTKIN:  Sure.

9          THE COURT:  -- flush out the objections, okay.

10         MR. KAROTKIN:  And we can build that into any proposed

11  scheduling order.

12         We would --

13         THE COURT:  Well, let me -- let me go back to what

14  that disclosure statement is going to look like in big terms.

15         And again, if you don't recall -- because I just asked

16  you what was filed by both Mr. Pascuzzi for the State, and I

17  think it was Mr. Troy for the federal agencies, they were

18  fairly detailed about wanting to understand early, rather than

19  later, stuff and took -- I think they both took issue with

20  something in one of your prior drafts that some of these

21  operative documents would be filed much later.  That's --

22  that's not going to work.  They got to get -- they got to be

23  done early.

24         MR. KAROTKIN:  Yes.

25         THE COURT:  Is that consistent that at some point

(970) 316-3122 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  early on this time line things like the meet and -- the nuts

2  and bolts of the trust documents are going to be there for

3  people to read and understand?

4  MR. KAROTKIN:  Yes.  And the TCC has been working hard

5  on getting drafts of those documents completed so that there

6  will be plenty of time for people to review them in the context

7  of voting.

8  THE COURT:  Okay.  But I mean, it could mean as

9  much -- as simple as just -- it's time just to make sure they

10  know.  Again, I'm not suggesting that individual fire claimants

11  shouldn't be allowed to know things, but they're trained and

12  experienced lawyers, and particularly bankruptcy lawyers know

13  how to work through all these details so we don't -- we need

14  the early rather than later disclosure of who's going to be the

15  trustee, what are the rules, what are the procedures for

16  mediation versus mandatory arbitration versus submission, et

17  cetera, et cetera.  So that -- those are all on your list,

18  right?

19  MR. KAROTKIN:  They're all on my list.

20  THE COURT:  Okay.

21  MR. KAROTKIN:  Yes.

22  THE COURT:  Okay.

23  MR. KAROTKIN:  All of those items may not be in the

24  initial draft of the disclosure statement, but by the time it's

25  approved it will include all of that information, but we need

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    to get the time -- we need to get the process moving, Your

2    Honor, in order to meet the deadline.

3            THE COURT:  Yeah.  No, I'm well aware of that.  And is

4    this, in your mind, is this consistent with the OII and what's

5    going on in CPUC?

6            MR. KAROTKIN:  Yes.

7            THE COURT:  What will I be looking at -- and you're

8    going to say the plan or the disclosure statement.  Let me try

9    it a different way.  How are you going to show compliance with

10   1054 as distinguished from the Bankruptcy Code?  You and I and

11   every bankruptcy lawyer in the room knows the checklist in

12   Section 1129, but not many of us know what it takes to pass

13   muster with 1054.  I'm sure you do more than I do.  So how are

14   you going to address that?  How will that be on the table where

15   at least the prima facie case for compliance with that statute

16   will be demonstrated?

17           MR. KAROTKIN:  I don't think, Your Honor, that would

18   be in a disclosure statement.  I think that would be in a

19   subsequent submission in connection with, for example, filing

20   our brief --

21           THE COURT:  Well, yes.  I mean --

22           MR. KAROTKIN:  -- in support of confirmation.

23           THE COURT:  The governor, I mean, I'm not going to say

24   the governor can't vote.  We know who can vote on the plan.

25   But whatever it takes to satisfy 1054, to me it isn't -- it

(970) 649-2272   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   probably isn't a disclosure item.  It's like if you -- I think

2   I gave the example in the first PG&E case.  Well, you still

3   have to show how you're complying with other law, so --

4           MR. KAROTKIN:  Yes.

5           THE COURT:  So to the extent that other laws -- and by

6   the way, this is what Mr. Pascuzzi said specifically.  There

7   are a whole long list of other California laws that those

8   agencies need to be satisfied are being dealt with.  And that's

9   an example that is on my list.  That's the same thing I would

10  put in that 1054.  So how are you going to show that?

11          MR. KAROTKIN:  I think that that would be something we

12  would demonstrate in the context of the confirmation hearing.

13  We would be submitting a brief in support of confirmation.  I

14  know that Mr. Kornberg's client has the ultimate voice on

15  compliance with AB 1054, and hopefully he will be in a position

16  to stand up in court at the appropriate time to say that the

17  plan complies.

18          THE COURT:  Well, I'm hopeful, because you've said you

19  are confident that you're going to work with the governor.  But

20  what do we do if the debtor says I'm in compliance and the

21  governor's office says you're not?  Is that something I decide

22  or the governor decides?  Or Mr. Kornberg decides?

23          MR. KAROTKIN:  I think it's something Mr. Kornberg's

24  client decides, but I don't think we have to get into that

25  today.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      THE COURT:  That's fine.  I'm not.  I'm not getting

2  into any of the merits of it.

3      MR. KAROTKIN:  Right.

4      THE COURT:  But it's just a question of scheduling.

5  Well, do you want to have me approve this?

6      MR. KAROTKIN:  No.

7      THE COURT:  Or do you want me to -- what do you want

8  me to do?

9      MR. KAROTKIN:  I want you to say you think this looks

10  like a reasonable schedule.

11      THE COURT:  Well, let's see what you told me last

12  time.  Your original disclosure statement was January 15th.

13  Then we had the estimation, et cetera.  We had amended plan and

14  amended disclosure statement March 10th, so --

15      MR. KAROTKIN:  How about that, huh?

16      THE COURT:  How about that?  Hearing on approval of

17  the disclosure statement was March 20th.  So yes, and --

18      MR. KAROTKIN:  As you know, that was in the context of

19  a much more contested thing.

20      THE COURT:  No, I understand that.

21      MR. KAROTKIN:  And we've been trying to make your life

22  easy.

23      THE COURT:  No, I think that again, you know, and Mr.

24  Kornberg and everybody else knows better than I do that if this

25  will fit everything else, it certainly can fit our schedule.  I

PG&E Corp., Pacific Gas and Electric Company

1    don't know how long we're going to have.

2         Well, can you speculate, assuming no objections --

3    what a wish list -- how long would the confirmation hearing be?

4    I mean, is it going to be -- are you going to do a huge

5    presentation, or is it going to be something that would be a

6    summary?  I mean, I don't -- we don't know.  I don't know how

7    to --

8         MR. KAROTKIN:  Assuming no objections?

9         THE COURT:  I don't know how to schedule it, yes.

10        MR. KAROTKIN:  Assuming no objections, I think it

11   would be -- we would do it by declaration, and it would be very

12   quick.  A declaration setting forth how we meet the

13   requirements of 1129 and the appropriate submissions by the

14   CPUC and any other parties-in-interest.

15        THE COURT:  Well, I have a suggestion.  See how this

16   works for you.  I obviously have to make a decision on the Rule

17   23 motion.

18        MR. KAROTKIN:  Right.

19        THE COURT:  And you and the others have stressed for

20   me the importance of it, and I understand.  It's important

21   either way, and if I deny the motion, it probably makes things

22   easy for scheduling purposes.  If I grant it, to use that term,

23   gum up, I mean, it'll impact, perhaps, or require further

24   scheduling, I think.  But that's something I'm going to be

25   working on.

PG&E Corp., Pacific Gas and Electric Company

1          But what if we set aside some time on the 4th to fill

2     in some of the details on this?  And I looked at our calendar,

3     and in the meantime maybe have my courtroom deputy talk to

4     someone on your side, and we start to pencil in more specific

5     dates, such as, for example, what I told you would be the

6     status conference --

7          MR. KAROTKIN:  Sure.

8          THE COURT:  -- and the requirement that principal

9     counsel participate to discuss confirmation objections and so

10    on.  Is that too -- I mean, does that work procedurally in

11    terms of it's only what?  Eight days.  I mean, no, it's nine

12    days from now, right?

13         MR. KAROTKIN:  No.

14         THE COURT:  Not even that many.

15         MR. KAROTKIN:  No, it's less.  It's only, like, four

16    or five days.

17         THE COURT:  It's fewer days.  It's two days after the

18    Super Bowl.

19         MR. KAROTKIN:  It is.

20         THE COURT:  It's two days after Groundhog Day.  Think

21    of it that way.

22         No, but if we take some time on the 4th, would that

23    work for you?

24         MR. KAROTKIN:  Sure.

25         THE COURT:  If I respond to you and tell you that.

(979) operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    And before we end here now, I'm going to see if anybody wants

2    to be heard.

3            Okay.  Well, actually, does anyone want to be heard?

4            Ms. Dumas, do you want to be heard on this?  I am

5    going to stick with our schedule, and if we need to resume the

6    hearing this afternoon I'll do it, but I'm not going to go

7    straight through the break.  So take your time now if you want,

8    but don't -- if you need more time, we'll have it.

9            MS. DUMAS:  Good afternoon, Your Honor.  Cecily Dumas,

10   Baker & Hostetler, on behalf of the official committee of tort

11   claimants.  I'll be very brief.  I like to, however, take the

12   opportunity when I come to the podium to both explain to others

13   who may not be in the room but reading transcripts or

14   listening, and yourself.  We are aware, and we are taking very

15   seriously the letters that are sent to Your Honor and posted on

16   the docket.  We read them.  The team that is managing the

17   website, the official committee website, is addressing some of

18   these questions, and we are aware of the difficulty with so

19   many forms of information that are floating around there of

20   helping everybody get the story straight, because there are

21   community message boards.  There are Facebook pages.  There are

22   petitions.

23           THE COURT:  change.org petitions.

24           MS. DUMAS:  Yes.  So there are all kinds of ways that

25   victims of the fires are getting information, both correct and

PG&E Corp., Pacific Gas and Electric Company

1    incorrect.  One of the main seems to be why do I have to take

2    PG&E stock, which is a hundred percent incorrect, and every

3    time that is raised we try to correct that, that the fact that

4    the funding into the trust is comprised partly of stock that

5    will be liquidated by the trustee --

6          THE COURT:  That's why our simplified disclosure has

7    to tell them that.

8          MS. DUMAS:  Yes.  Yes, sir.

9          THE COURT:  Don't you agree?

10         MS. DUMAS:  We are --

11         THE COURT:  You agree?  Okay.

12         MS. DUMAS:  We are well aware of that.

13         THE COURT:  Okay.

14         MS. DUMAS:  And our, sort of, it's like whack-a-mole

15   with the various items of misinformation that are out there.

16         I want to confirm Mr. Karotkin's statements a couple

17   of minutes ago that both the TCC and the thirteen requisite

18   tort claimant professionals, requisite fire claimant

19   professionals to the TCC RSA, have been working extremely hard

20   for the last month on the resolution trust agreement.

21         THE COURT:  Okay.

22         MS. DUMAS:  And the claims resolution procedures.

23   They are not yet ready to be disclosed, but we anticipate that

24   the disclosure statement will include information that will

25   enable anyone receiving that together with the package to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    understand this is how my claim will be addressed post-

2    confirmation.  That's on our minds.  It's very important, as

3    well as working with the debtor's on --

4              THE COURT:  Plain language, right?

5              MS. DUMAS:  In plain language.

6              THE COURT:  Plain language.

7              MS. DUMAS:  As plain as we can make it, how the

8    noticing procedures will happen, how people will get their

9    ballots, so we're very happy that now all the major

10   constituents -- the public entities, several claimants -- the

11   bondholders, the TCC -- are all now under RSAs, or presumably

12   will be as soon as Your Honor addresses the bondholder RSA, but

13   we see this as a path forward.

14             We concur with Mr. Karotkin's statements that the

15   debtor appears to be hopefully moving toward confirmation of a

16   plan in a time frame that meets the deadline imposed by AB

17   1054.  We leave to others the question of compliance, but we

18   are heartened on behalf of the victim class that they will be

19   seeing the light at the end of the tunnel in this bankruptcy

20   case by this summer and a trust formed with the trustee who can

21   begin addressing claims promptly after confirmation.

22             THE COURT:  Right.  Well, again, going back to the

23   basics that you and I know, that, like, again, this was an

24   example in the first PG&E case, but it's in every case.  The

25   bankruptcy court still has to make sure there isn't some

(970) 352-7311 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  violation of some other law, so somebody has to satisfy me that

2  1054 has been complied with, and if it's the CPUC or the

3  governor's office or a stipulation, that does the trick.  If

4  not, then somebody needs to persuade me, and I'm sure you need

5  to be satisfied so your clients, your constituents, those

6  thousands of people, will know that there's not some fatal flaw

7  that's going to kill this thing before they're being asked to

8  vote on something.

9       MS. DUMAS:  Yes, sir.  I'm very pleased to report that

10  the main constituents in the case are in regular

11  communications, hopefully rowing in the same direction, and

12  with respect to our oar, which is really getting accurate

13  information out to the 70,000 plus claimants, we are pulling

14  very hard on that oar constantly.

15       Unless there's any questions, that's --

16       THE COURT:  No.

17       MS. DUMAS:  -- really all I wanted to update the

18  Court.

19       THE COURT:  No.  Thank you, Ms. Dumas.

20       MS. DUMAS:  Thank you.

21       MR. PASCUZZI:  Good afternoon, Your Honor.

22       THE COURT:  Yes.

23       MR. PASCUZZI:  Paul Pascuzzi for the California State

24  agencies.

25       THE COURT:  Good afternoon.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1        MR. PASCUZZI:  Your Honor.

2        THE COURT:  By the way, I see a number of people

3   standing up.  I'm going to break at 12:30 -- and I don't mean

4   to cut you off -- at 1:30 I'm going to hear the Tubbs fire

5   motion, which shouldn't take too long, and I will resume this

6   hearing then.  I'm sorry to make it inconvenient for some of

7   you, but we just can't have these marathon sessions.

8        So go ahead.

9        MR. PASCUZZI:  Thank you, Your Honor.  I appreciate

10  the Court raising the issues with the trust disclosures.  I

11  didn't hear a commitment that things would be filed in

12  connection with the disclosure statement, but we filed our

13  pleading reserving our right, so --

14        THE COURT:  Well, you filed them some time ago.

15        MR. PASCUZZI:  Yes.

16        THE COURT:  But you -- was I right, though -- you had

17  a laundry list of other issues that --

18        MR. PASCUZZI:  Correct.

19        THE COURT:  -- weren't trust related.  They were Clean

20  Water Act and the prior -- well, you even dug up bankruptcy

21  PG&E 1.

22        MR. PASCUZZI:  Correct.

23        THE COURT:  And those are issues that hopefully you

24  can take up directly with the debtor's representatives, but we

25  have to deal with them --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      MR. PASCUZZI:  Right.

2      THE COURT:  -- at some point in terms of scheduling.

3      MR. PASCUZZI:  Yes.  And we have done that, Your

4  Honor.

5      The other thing I wanted to point out, Your Honor, is

6  that the debtor's plan, and it always has, puts the California

7  State Agency fire-related claims in the fire victim trust.

8      THE COURT:  Right.

9      MR. PASCUZZI:  And we do plan to object to that.  I

10  don't think it's anything special that you have to set any

11  special scheduling, but we do plan to do that.  We've said from

12  the beginning our claims, our fire-related claims, are very

13  different than the fire victims claims.  We're talking about

14  about 3.3 billion dollars of claims.  A large portion of that

15  is the statutory obligation to recover FEMA funds from the

16  responsible party, PG&E, pursuant to the Stafford Act.  There

17  is a much smaller portion, well less than a billion, that is

18  actual State agency funds.

19      So I just wanted, so there's no surprises, to raise

20  that issue with Your Honor.

21      THE COURT:  Well, what am I supposed to do about it?

22      MR. PASCUZZI:  You're not supposed to do anything

23  about it right now.

24      THE COURT:  Yes.

25      MR. PASCUZZI:  But there will be briefing in

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp., Pacific Gas and Electric Company

1    connection with probably the disclosure statement on

2    classification issues on this particular item.

3              THE COURT:  Okay.

4              MR. PASCUZZI:  Thank you, Your Honor.

5              THE COURT:  All right.  Well, I'll take a couple of

6    minutes, so --

7              Yes.  Okay.

8              MR. MCGILL:  Your Honor, Matthew McGill for the ad hoc

9    committee trade claims.

10             THE COURT:  Trade claims.  Okay.

11             MR. MCGILL:  Do you want to hear this now, or should

12   we address this this afternoon?

13             THE COURT:  Well, I mean, what's the short answer?

14   You heard that Mr. --

15             MR. MCGILL:  The short answer is we --

16             THE COURT:  Mr. Karotkin says he wants to make it a

17   confirmation issue.  I mean, I don't --

18             MR. MCGILL:  And Your Honor, your order or your ruling

19   on post-petition interests said the only reason you were

20   withholding an order was because of the make whole dispute, and

21   it was related -- the make whole dispute, we now have heard,

22   has been resolved, so there's no reason for the Court to

23   withhold an order on its previously issued ruling on December

24   30.

25             THE COURT:  Well, remember, yes I could do that and

PG&E Corp., Pacific Gas and Electric Company

1    leave it to you to decide whether you convince somebody to take

2    it as an interlocutory order.  I have to decide whether it's

3    the right thing to do to make it a final order.  And by the

4    way, some of you, I remember, on the inverse condemnation and

5    in connection with -- in that one, at least, I went two ways.

6    I said a 54(b) or direct appeal to the Court of Appeals.  And

7    even interlocutory orders can be the subject of recommendations

8    for direct appeals.  It's up to the Court of Appeals.

9            MR. MCGILL:  Okay.

10           THE COURT:  But I still have to decide, in my mind,

11   that it merits it, and I'm not a hundred percent convinced that

12   I would want to do that unless I'm convinced by you or others

13   that I should do it now.

14           MR. MCGILL:  Okay.

15           THE COURT:  Because I don't want to get -- I'm not

16   supposed to be sending appeals up to the --

17           MR. MCGILL:  Right.

18           THE COURT:  -- up to the --

19           MR. MCGILL:  So let me take it in pieces, okay?  So

20   the first point I wanted to make was that you should go ahead

21   now and issue an order that accompanies your December 30

22   ruling.

23           We do agree with Your Honor's previous suggestion that

24   this should be certified under Rule 54(b) as final.  It easily

25   satisfies the Ninth Circuit's --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  Okay.  Mr. McGill, hold on.  What I'm

2    going to do is the debtor does not want that.  You would like

3    it.  I just need to let it decide.  Maybe I have further

4    argument on it.  I don't want to do it now.

5    MR. MCGILL:  Okay.

6    THE COURT:  Because to just sign the order doesn't do

7    the trick.

8    MR. MCGILL:  I understand that.

9    THE COURT:  Okay?

10    MR. MCGILL:  Right.

11    THE COURT:  And there are consequences, as you know,

12    to the 54(b) certification, so --

13    MR. MCGILL:  Yes.

14    THE COURT:  -- it cuts both ways.  Okay.

15    So I'll take it as you want me to do what you said in

16    your papers, and the debtor doesn't want me to do it, and I'll

17    figure out whether I should give you an opportunity to brief it

18    further, but I can't do it now.

19    MR. MCGILL:  Okay.

20    THE COURT:  Okay?

21    MR. MCGILL:  So what's the next step, Your Honor?

22    THE COURT:  Well, are you going to be around this

23    afternoon?

24    MR. MCGILL:  If you wish, I will be.

25    THE COURT:  Well, you don't have to be.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    MR. MCGILL:  I'm sure my clients would want me to be.

2    THE COURT:  You'd like to be heard further on the

3    subject, right?  So I'll tell you what.  We have an important

4    motion coming on the 4th.  I don't know whether it's going to

5    be contested or not, but I have more time on the 4th, and so I

6    could take it up on the 4th, or I could take it up this

7    afternoon and hear what Mr. Karotkin says, and if you guys want

8    to submit it on papers or you just want to have just a little

9    further argument, I'll do it either way.  It's not a big issue.

10   It's not a gating issue.  But it's also something that I

11   don't --

12   To me, when we're dealing with the huge question of

13   make whole, had I been asked to make a ruling on it, or like

14   the inverse condemnation when I made a ruling on it, those are

15   much larger in scope than what is still a lot of money for your

16   clients, but relatively speaking it's much different.  So I'm

17   not of the view that I'm doing anyone a favor by teeing it up

18   as a final order at this point.  Doing it as an interlocutory

19   order is a no-brainer, because you don't have to do anything.

20   No one has to do anything.  So that's what I'd like you to --

21   MR. MCGILL:  So just having consulted with the counsel

22   for the other parties, we would like to be heard on the 4th.

23   THE COURT:  Okay.  Okay.

24   MR. MCGILL:  If it suits, Your Honor.

25   THE COURT:  Okay.  We'll do it on the 4th.  How's

PG&E Corp., Pacific Gas and Electric Company

1   that?  Okay.

2           Ms. Winthrop, are you there?

3           MS. WINTHROP:  I am, Your Honor.

4           THE COURT:  Okay.  You got a couple of minutes, and

5   then I believe the other gentleman is Mr. Abrams, right?

6           MR. ABRAMS:  Yes.  Correct.

7           THE COURT:  Okay.  And then I'm going to cut off

8   the --

9           MR. ABRAMS:  Your Honor, I just need one minute.

10          THE COURT:  Okay.

11          MR. ABRAMS:  And I will be one minute.

12          THE COURT:  Ms. Winthrop?

13          MS. WINTHROP:  Thank you, Your Honor.  Rebecca

14  Winthrop, Norton Rose Fulbright, on behalf of the Adventist

15  Health claimants and Feather Canyon independent living

16  facility.  We want to add our concerns to the FEMA and CAL

17  FIRE's concerns on the lack of progress on the trust agreement

18  and the trust procedures.

19          We have repeatedly raised this issue.  We started out

20  well.  We thought we were going to be included in the loop as

21  was represented to you.  And as I said, we started out well,

22  but we have been stonewalled for the last two weeks.  This is

23  an issue, we think, that should be set on its own briefing

24  schedule.  All of the procedures need to be fully disclosed and

25  vetted separate from the disclosure statement.  General

PG&E Corp., Pacific Gas and Electric Company

1  principles in the disclosure statement are not sufficient to

2  address the problems that we see in the trust agreement, and

3  they are serious problems.

4       THE COURT:  Well, I guess what I'm -- okay.  Serious

5  problems.  But what would we call it?  What would this hearing

6  be called?

7       MS. WINTHROP:  A review on the adequacy of the trust

8  agreement and related trust procedures.

9       THE COURT:  Mr. Karotkin, you said you're going to

10  have your plan to file later this week, and your target is a

11  disclosure statement by the 7th.  But when can you -- is there

12  some way you can meet and confer further with Mr. Pascuzzi and

13  Ms. Winthrop, and we can talk about it on the 4th?  She's got a

14  good point and so does he.  I don't want -- we got to --

15       MR. KAROTKIN:  Your Honor, to the extent they're

16  talking about the trust procedures for the TCC's trust, I think

17  that document is in the hands of Ms. Dumas.

18       THE COURT:  Okay.  Listen.  I'm going to take this up

19  at 2:30 today, and if necessary do it over to the 4th.

20       MS. WINTHROP:  I will be here.

21       THE COURT:  I've got to take my break.

22       Mr. Abrams, I saw you here.  I noticed that you filed

23  an amended and renewed objection to the prior RSAs and chose to

24  put it on calendar today.  You couldn't just put it on calendar

25  on your own, but that is off calendar.  So what is your request

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    today?

2            MR. ABRAMS:  Yes.  I'm sorry, Your Honor.  I am trying

3    to follow the procedures the best I can.

4            THE COURT:  Well, it's simply off calendar.  I mean,

5    the point is it's off calendar.  If you want to be heard and

6    you want to take another shot at those two RSAs, you can file a

7    proper motion.  But you can't just, on the 28th, file something

8    and set it on the hearing on the 29th at 1:30.  And then I'm

9    told by my clerk that you also wish to object to the new RSA,

10   but you haven't said so.

11           MR. ABRAMS:  Well, the new RSA is unchanged in the

12   manner --

13           THE COURT:  No, the new RSA hasn't even been filed

14   until a couple of days ago.

15           MR. ABRAMS:  It was filed on the same day that I filed

16   my reconsideration.

17           THE COURT:  Well, that was yesterday.

18           MR. ABRAMS:  Correct, Your Honor.

19           THE COURT:  Okay.  I don't absorb all -- but I'm not

20   going to hear that.  You have a right to be heard on that on

21   the 4th.

22           MR. ABRAMS:  And that's all I'm here to do.  I'm not

23   here to make my argument.  I just want to make sure that I do

24   have the option to be able to be heard on the 4th.

25           THE COURT:  What did my order say?  It said objections

(973)406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   by the 3rd, and the hearing's on the 4th.  So if you filed --

2          MR. ABRAMS:  Oh.  I didn't --

3          THE COURT:  But you have --

4          MR. ABRAMS:  Sorry.

5          THE COURT:  I'm not aware that you filed an objection.

6          MR. ABRAMS:  So yes.

7          THE COURT:  This document is not an objection to the

8   new RSA with the bondholders.

9          MR. ABRAMS:  Okay.  So that's as it was intended was

10  that objection.

11         THE COURT:  It's not what it says, sir.

12         MR. ABRAMS:  Understood.  So I will refile if what

13  you're asking is for me to refile and put that --

14         THE COURT:  I'm the one that is trying to give

15  everybody a chance, but it's a squeeze.  The RSA was filed

16  yesterday, and the hearing, the deadline is next Monday, and

17  the hearing is Tuesday.

18         MR. ABRAMS:  And I understand.  And with all the

19  shortened time and everything else, I'm doing my best to keep

20  up with the proceeding.

21         THE COURT:  I didn't say you weren't.  So am I.

22         MR. ABRAMS:  It was filed a half hour before I filed

23  my --

24         THE COURT:  Mr. Abrams, stop.  Stop.  There's no

25  deadline running on you.  You have until noon on next Monday to

PG&E Corp., Pacific Gas and Electric Company

1    object to the current RSA, the new -- I'll call the new RSA.

2              MR. ABRAMS:  Okay.

3              THE COURT:  If you want me to revisit the ruling on

4    the TCC and the subrogation RSAs, you need to set that as a

5    separate motion.

6              MR. ABRAMS:  Okay.  I will refile that as a separate

7    motion.  I'm also --

8              THE COURT:  But you can't just pick a date.  We have

9    procedures for that.

10             MR. ABRAMS:  I understand.

11             THE COURT:  I'm going to --

12             MR. ABRAMS:  And again, I'm trying my best to follow

13   the proceed --

14             THE COURT:  Mr. Abrams, you've said that three times.

15             MR. ABRAMS:  Well, I've tried to say it three times,

16   and I --

17             THE COURT:  I know.  But I'm trying to tell you what

18   the rules are.  So I'm going to conclude this hearing now.  I

19   will pick up after the hearing at 1:30.  At the end of that

20   hearing, I'll listen to anybody that wants to still be heard on

21   anything that I can't handle today.  We've been out here for

22   two-and-a-half hours.

23             MR. ABRAMS:  Thank you, Your Honor.  One other just

24   scope question.  So all of this shortened time, not just for

25   myself but for other claimants to be able to object to the new

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    RSA, it seems like we're trying to squeeze this in too little

2    time for objections, and so --

3              THE COURT:  It is a tight -- it's a squeeze.  I agree.

4              MR. ABRAMS:  Yes.  Okay.

5              THE COURT:  I can't solve that problem.  June 30th is

6    a deadline that we're all trying to live with.

7              We'll resume at 1:30.

8         (Recess from 12:29 p.m., until 1:30 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Clara Rubin, certify that the foregoing transcript is a true

and accurate record of the proceedings.



_____

/s/ CLARA RUBIN


eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020


Date:   January 30, 2020

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

**[**

**[I]t (1)**
58:3

**A**

**AB (6)**
23:22;24:24;71:23;
101:23;112:15;118:16
**ABC (2)**
52:2;95:11
**ability (2)**
91:11,11
**able (10)**
27:14;30:19;32:20;
76:4;78:11;86:4;104:8;
108:4;128:24;130:25
**Abrams (26)**
126:5,6,9,11;127:22;
128:2,11,15,18,22;
129:2,4,6,9,12,18,22,
24;130:2,6,10,12,14,
15,23;131:4
**absence (1)**
49:4
**absent (10)**
20:9;32:5,5,15;
46:14;51:13;53:15;
54:6;93:25;95:24
**absolute (1)**
50:8
**Absolutely (9)**
11:22;24:2;34:9,10;
42:6,10;66:9;94:23;
95:2
**absorb (1)**
128:19
**absurd (1)**
22:22
**abuse (1)**
21:4
**academic (1)**
97:25
**accept (1)**
45:13
**accepted (1)**
47:12
**access (2)**
55:20;108:13
**accommodate (1)**
27:14
**accompanies (1)**
123:21
**accomplishments (1)**
104:11
**according (1)**
92:8
**account (2)**
54:12;61:10
**accounted (1)**
81:1

**accounts (1)**
51:25
**accurate (1)**
119:12
**accustomed (1)**
107:22
**achieved (2)**
100:4;104:12
**acknowledge (1)**
12:20
**acronym (1)**
93:2
**Act (5)**
77:9;79:16;80:3;
120:20;121:16
**action (21)**
9:11;20:18;28:4;
35:3,15;36:12,14;37:3,
6,17;40:10,13;41:4,6;
69:5,6;72:12;73:5;
80:6;86:1,5
**actions (8)**
15:18,20;19:13;26:3;
38:1;41:16;66:24;
95:14
**actively (1)**
11:25
**actual (28)**
14:14,15;26:20;
32:20,24;33:2,4,9,24;
36:10;40:8;41:15;
43:18,23;44:14;46:9,
14;47:7;53:15;56:6,18;
57:2,7,10;95:7,13,23;
121:18
**actually (24)**
15:9;18:22;28:7,22;
31:20;32:6;39:20;40:3,
17;44:1;50:10,15,17,
19;56:8,16;57:5,7,8,11;
73:1;78:25;95:5;116:3
**ad (4)**
100:1,6;101:24;
122:8
**add (1)**
126:16
**addition (1)**
46:21
**additional (1)**
85:5
**address (13)**
33:1;53:7;57:15;
70:25;71:2;84:16;
85:16;98:15;101:25;
103:20;111:14;122:12;
127:2
**addressed (6)**
17:11;65:7,7;71:1;
101:11;118:1
**addresses (2)**
91:25;118:12
**addressing (1)**
104:14;116:17;

118:21
**adequacy (1)**
127:7
**adequate (3)**
58:9,13;99:11
**adhere (1)**
18:3
**adjustment (1)**
81:1
**administration (5)**
17:17;23:2;28:1;
47:22;61:15
**administrative (2)**
28:5,7
**admit (1)**
33:3
**admitted (1)**
46:14
**admonition (2)**
18:11;106:15
**adopts (1)**
19:9
**advance (1)**
24:17
**advanced (1)**
18:6
**Adventist (1)**
126:14
**adversary (5)**
23:10;37:5;90:22;
109:4,5
**adverse (2)**
12:23;103:17
**advisors (3)**
41:14;71:14;79:5
**affect (3)**
26:16;43:20;93:2
**affected (2)**
13:12;90:9
**affects (1)**
71:4
**affirmative (1)**
16:10
**affirmed (1)**
58:2
**afforded (1)**
23:19
**African (1)**
55:22
**afternoon (8)**
96:23;116:6,9;
119:21,25;122:12;
124:23;125:7
**again (34)**
10:3,18;16:21;19:19;
20:12;21:19;24:20;
31:1;32:7;33:25;43:1;
50:14;55:1;57:21;
61:16,19;62:20;63:4;
65:6,12;66:5;81:13;
82:19;89:18;100:24;
108:2,15,18;109:15;
110:10;113:23;118:22,

23;130:12
**against (34)**
11:5,19;12:1,8,9,15,
18;22:1;29:23;36:14;
37:7;38:10;39:18,20,
23;41:4;50:19;53:11;
54:8;72:13;74:1,5,7,9,
18;75:23;77:11;78:18;
79:13;80:6;82:3;
102:25;103:17,17
**agencies (5)**
98:22,22;109:17;
112:8;119:24
**Agency (2)**
121:7,18
**agenda (1)**
8:13
**ago (9)**
38:8;49:10;55:18;
69:6;98:20;104:18;
117:17;120:14;128:14
**agree (11)**
10:24;17:10;38:19;
39:12;49:3,7,7;117:9,
11;123:23;131:3
**agreed (2)**
101:14,17
**agreement (8)**
71:11;99:25;100:4;
101:22;117:20;126:17;
127:2,8
**ahead (10)**
16:8;17:6;36:24;
43:11;68:18;84:12;
106:5;107:4;120:8;
123:20
**allegations (1)**
21:5
**allege (4)**
77:20,22;78:11;80:2
**alleged (7)**
21:6;78:15;83:16,22,
24,25;93:18
**allegedly (2)**
71:16;77:4
**alleging (2)**
77:12;83:25
**allow (2)**
63:21;108:7
**allowances (1)**
63:21
**allowed (5)**
40:18;75:19;84:1;
96:23;110:11
**allowing (1)**
28:9
**allows (1)**
71:6
**alluded (1)**
85:9
**almost (1)**
63:6
**alone (2)**

49:6;91:19
**along (1)**
18:10
**Alonso (1)**
92:16
**Alonzo (23)**
29:8;19;45:14,17,18,
21;46:5,6,10,21;47:12,
15;49:2;57:14;61:17,
17,25;62:3;65:10,13,
13,15;93:18
**altogether (1)**
24:8
**always (2)**
10:11;121:6
**Amdura (7)**
53:23,24;91:16,17,
18;92:1;95:19
**amended (5)**
18:23;105:9;113:13,
14;127:23
**America (2)**
79:1,2
**American (4)**
19:11,12;20:9;28:23
**among (3)**
16:24;71:13;74:18
**amount (4)**
22:13;31:21;76:10,
11
**analysis (2)**
18:4;76:9
**analyze (1)**
18:9
**analyzed (1)**
75:12
**Andrew (1)**
9:4
**angels (1)**
12:19
**anniversary (2)**
99:20,24
**announcement (1)**
80:10
**anticipate (2)**
109:3;117:23
**anticipated (3)**
23:21;38:13,15
**appeal (4)**
68:5;103:10,18;
123:6
**appealed (3)**
19:19;57:19;102:15
**appeals (5)**
102:11;123:6,8,8,16
**appear (2)**
18:9;23:20
**appears (2)**
91:18;118:15
**applicable (1)**
20:15
**application (2)**
21:19;26:25

Min-U-Script®

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 133
of 152

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

**(1) [I]t - application**

**applied (1)**
36:17
**applies (3)**
11:16;20:9;38:4
**apply (2)**
17:12;40:1
**appreciate (2)**
84:5;120:9
**apprise (1)**
53:18
**approach (3)**
17:2;90:11;104:15
**approached (1)**
106:22
**appropriate (7)**
20:16;21:24;27:1;
86:9;102:8;112:16;
114:13
**appropriately (1)**
108:1
**approval (9)**
99:25;100:3,6,9;
104:9;105:14,24;
107:6;113:16
**approve (2)**
100:22;113:5
**approved (2)**
23:6;110:25
**approving (1)**
100:16
**arbitration (1)**
110:16
**areas (1)**
44:12
**argue (3)**
45:6;73:2;74:14
**argued (2)**
74:20;85:14
**arguing (1)**
73:8
**argument (26)**
10:4;17:7;26:8,9;
27:8;29:23;44:24;46:7,
12;55:2;56:9;57:5,9;
65:14,15;68:10;82:1,
16;85:15;89:11;90:6;
92:25;93:15;124:4;
125:9;128:23
**arguments (5)**
18:6;21:22;49:4;
64:9;96:8
**around (3)**
83:8;116:19;124:22
**arrangement (1)**
45:2
**asbestos (2)**
82:5,7
**ascertainable (1)**
34:25
**aside (2)**
102:18;115:1
**aspect (3)**
55:3;73:23;103:18

**aspects (1)**
82:7
**aspirational (1)**
10:12
**assert (7)**
12:1;33:6;42:20;
62:21;73:13;74:1,4
**asserted (6)**
12:14;39:18,20,23;
47:15;76:17
**asserting (3)**
11:4;12:4;85:4
**asserts (1)**
75:23
**assets (2)**
79:6,8
**assigned (2)**
78:21;79:13
**associated (1)**
86:6
**assume (5)**
64:11;96:2;98:13;
100:25;106:3
**assumed (2)**
90:24;104:2
**assuming (6)**
19:19;24:18;107:6;
114:2,8,10
**attached (1)**
67:11
**attempt (5)**
41:19;42:9;54:11;
56:17;61:16
**attempts (1)**
44:11
**attended (1)**
108:20
**attention (3)**
65:23;66:5;80:23
**attorneys (1)**
98:21;107:18
**authorities (1)**
37:24
**authority (1)**
36:19
**automatic (1)**
38:5
**automatically (2)**
24:19;37:12
**available (2)**
89:14;90:3
**average (5)**
30:12,14,17;38:12;
90:15
**await (1)**
25:20
**aware (14)**
37:3;77:17;91:23;
92:7;9,99:19,24;104:4;
107:14;111:3;116:14,
18;117:12;129:5
**away (5)**
41:19;91:6;96:3;

98:1,13

# B

**b3 (1)**
95:15
**back (26)**
21:9;22:3,8;30:5,5;
40:25;41:24;43:5;46:4;
50:11;55:7;60:19;69:6;
75:8;85:8;86:20,21,22;
91:10;103:10;107:4;
108:2,5,6;109:13;
118:22
**backdated (1)**
77:2
**back-of-the-line (3)**
25:1,3,10
**backwards (1)**
87:8
**bad (1)**
44:10
**baffling (1)**
90:21
**Baker (2)**
70:23;116:10
**ball (1)**
68:25
**ballgame (1)**
50:12
**ballots (2)**
105:15;118:9
**Bally (6)**
57:17;58:4,7,12;
64:15;66:10
**bankruptcies (1)**
40:15
**bankruptcy (41)**
14:24;15:21;21:6,23;
32:13;36:11,17,20,21,
21;37:5;40:7,14;41:3,
7;43:21;44:1,4,10,15;
53:8;54:8,22;57:18;
58:12;79:18,25;80:20;
82:4,8,9;91:22,23;
93:3;95:22;110:12;
111:10,11;118:19,25;
120:20
**bankruptcy-notice (1)**
36:16
**banks (1)**
50:3
**bar (24)**
15:21;20:17;22:5,6,
25;32:20,25;35:9;
39:25;42:20;58:4,14;
59:12;61:22,23,24;
69:7,16,19,21,24;70:3,
4;95:24
**bar-date (8)**
21:18;35:13;38:16;
49:6;51:19;58:22;
85:12;94:14

**bar-date-extension (1)**
57:6
**based (10)**
16:19;23:13;47:13;
74:21;76:11;78:13;
82:6;85:4;90:14;
108:15
**basically (1)**
29:5
**basics (1)**
118:23
**basis (4)**
18:14;35:5;40:19;
86:17
**Bay (7)**
77:14,20,23;78:1;
80:22;83:6,17
**bear (1)**
69:11
**became (1)**
77:7
**become (2)**
18:15;62:16
**begin (3)**
25:18;47:14;118:21
**beginning (1)**
121:12
**begs (1)**
14:2
**behalf (9)**
8:21;13:15;20:19;
45:20;74:1,5;116:10;
118:18;126:14
**Behlmann (61)**
9:4;10:4;19:1;30:22;
31:3,5,7,8,12,15;32:2,
8,15,17;33:12;34:2,7,9,
9,24;37:10,13,15,20;
38:6,12,18,20,23;39:8,
11,16;40:16,21,23;
41:5,9,12;42:1,6,10,12,
24;43:7,9,12,15;44:6,
16,18,21;87:5;94:18,20
**Behlmann'll (2)**
14:17;22:13
**Behlmann's (2)**
10:5;92:14
**believes (1)**
22:24
**belong (1)**
106:4
**beneficial (5)**
49:21;50:7,23;52:10;
94:8
**benefit (1)**
74:15
**Bernstein (1)**
28:20
**Bernstein's (1)**
28:21
**besides (1)**
85:19

**best (4)**
96:9;128:3;129:19;
130:12
**better (6)**
23:25;43:4;44:7;
77:4;96:21;113:24
**beyond (4)**
52:10;54:24,25;
69:20
**big (3)**
67:10;109:14;125:9
**billion (7)**
67:25;76:12;84:20;
89:10,20;121:14,17
**Billions (7)**
22:17;48:5;62:21;
71:16;78:5,6,17
**bind (1)**
35:10,10
**bit (3)**
16:7;28:3;33:7
**blaming (3)**
60:20,21,23
**blanketed (1)**
34:19
**Blockbuster (3)**
58:10,11;66:10
**Bloomberg (1)**
30:13
**board (1)**
32:1
**boards (1)**
116:21
**boat (1)**
55:19
**bolts (2)**
99:12;110:2
**bondholder (3)**
49:11;67:8;118:12
**bondholders (4)**
97:25;103:25;
118:11;129:8
**bondholders' (2)**
98:1,10
**book (4)**
35:20;38:3;41:1;
106:18
**books (5)**
18:8;49:21;51:1,2;
81:25
**both (14)**
18:12;40:25;48:2;
54:8;56:24;64:10;
91:22;95:20;109:16,
19;116:12,25;117:17;
124:14
**bought (6)**
19:4;21:7;32:10,11,
12;81:22
**Bowl (1)**
115:18
**BR (1)**
58:11

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 134
of 152

**break (5)**
33:25;96:14;116:7;
120:3;127:21
**Brent (1)**
79:12
**brief (8)**
31:6;40:4;94:20;
96:25;111:20;112:13;
116:11;124:17
**briefed (2)**
26:9;75:18
**briefing (2)**
121:25;126:23
**briefly (2)**
22:23;92:16
**briefs (2)**
17:7;43:10
**bring (5)**
45:19;62:2;64:6;
69:5,6
**brings (1)**
12:4
**broader (1)**
97:19
**broadly (1)**
60:3
**broker (1)**
52:3
**brokerage (2)**
54:12;60:22
**Bs (5)**
33:5,21;34:24;42:13,
15
**build (2)**
39:16;109:10
**burden (1)**
43:22
**buy (1)**
80:12
**buying (1)**
52:4

**C**

**CAL (1)**
126:16
**calculated (1)**
53:18
**calendar (7)**
96:14;115:2;127:24,
24,25;128:4,5
**CALIFORNIA (9)**
8:1;9:8;34:19;44:15;
77:1;80:24;112:7;
119:23;121:6
**Call (4)**
8:4;107:19;127:5;
130:1
**called (3)**
76:24;79:1;127:6
**came (2)**
59:13;85:13
**can (59)**

8:24;10:21;17:18;
19:1;22:5;23:24;25:20;
27:1;29:18;35:10;39:4;
40:16;50:8;54:4,16;
62:16;63:1;64:2;66:8;
67:21;72:3,7;74:9,13;
75:24,25;80:16;82:20;
90:7,8;95:16;96:10,12,
13;97:15;101:25;
102:4,9;103:20;
104:18,19,22,24;105:2;
106:9;107:3;109:10;
111:24;113:25;114:2;
118:7,20;120:24;
123:7;127:11,12,13;
128:3,6
**candor (1)**
16:19
**Canyon (1)**
126:15
**cap (1)**
28:7
**care (7)**
11:24,24;13:5;24:24;
60:24,25;73:7
**cared (1)**
86:4
**Carey (1)**
79:18
**Carol (1)**
9:11
**case (96)**
16:20;18:11,11,14,
16;19:10,10,12,22;
21:1,21;23:3,5;26:13;
28:2,9,24;33:1;35:4,
21;36:1,10;37:4,16;
38:13,15,24;39:5,9;
42:16;44:4;45:14;46:3;
50:24,25;53:12,17,22,
23;54:3,5;57:14,17;
58:10,14;59:20,21;
60:17;62:1,2;64:16;
67:21;68:13;69:18,21;
72:22;74:6;76:21,24,
24;77:1;78:4,10,13,25;
79:2,2,10;80:19,21;
82:2,5;83:21;84:17;
86:17;91:7,7,22;92:2,4,
4,10;93:19;95:10,19,
21,25;102:18;106:12;
108:19;111:15;112:2;
118:20,24,24;119:10
**case-by- (1)**
18:13
**cased (1)**
79:24
**cases (26)**
20:8;21:1,4,4;24:6;
25:17;27:9;30:9;35:7;
38:21;40:4,9,12;53:7;
54:7;57:15,17;58:17;
64:15;66:11;70:8,11;

81:7;97:4;101:22;
106:18
**cash (2)**
85:4;89:4
**cast (1)**
105:5
**categories (1)**
63:11
**category (1)**
21:9
**cause (2)**
43:23;69:9
**caused (3)**
78:16;79:21;81:5
**Cecily (1)**
116:9
**cede (1)**
43:15
**Central (1)**
77:1
**certain (2)**
72:13;82:7
**certainly (8)**
12:17;24:14;26:23;
63:6;64:19;73:13;
76:14;113:25
**certainty (1)**
50:9
**certification (10)**
20:10;25:17,17;29:1;
45:22;49:5;66:6;92:23;
102:5;124:12
**certifications (1)**
33:4
**certified (9)**
15:11;17:15;18:17;
19:15,17;28:24;45:21;
97:14;123:24
**certify (2)**
47:23;48:24
**cetera (4)**
96:13;110:17,17;
113:13
**chance (1)**
129:15
**change (1)**
50:2
**changeorg (1)**
116:23
**changes (2)**
47:1;59:5
**Chapter (8)**
8:11;30:9;38:13;
79:2,8;86:17;96:13;
100:5
**Charles (2)**
52:3,15
**checked (1)**
106:2
**checklist (1)**
111:11
**Chemetron (1)**
50:24

**chief (1)**
10:15
**choice (1)**
23:23
**chose (1)**
127:23
**Circuit (3)**
43:18,22;53:13
**Circuit's (1)**
123:25
**circumstances (8)**
18:5;23:12;30:9;
40:7;41:25;53:16,17;
93:25
**citation (1)**
91:16
**cite (5)**
46:17;50:25,25;
53:12;66:11
**cited (4)**
18:12;58:10;78:10;
79:1
**City (1)**
98:4
**Civil (1)**
95:15
**claim (76)**
12:15;13:13,19,22,
25;14:5,23,25;15:13,
25,25;16:5,9;17:14;
19:2,17,21;20:11;21:3;
22:16;23:8,14;24:19;
25:19;38:9,10;44:6;
45:19;47:14,16,20,21;
53:20;54:14,16;55:23;
59:24;64:20;65:4,17,
25;67:24;71:6,7;72:21,
21,23,23;73:13,14,16,
23;74:1,4,6,7,9,10,16,
17,18;75:21,23;76:6;
81:14;82:11,21,23;
83:21;84:22;85:1;90:6;
91:22;92:5;98:1;118:1
**claimant (3)**
38:9;117:18,18
**claimants (15)**
24:1;33:16,17;85:19;
86:4;106:20;107:12,
16,20;110:10;116:11;
118:10;119:13;126:15;
130:25
**claimants' (2)**
100:17;107:18
**claimant's (1)**
100:17
**claiming (1)**
27:4;79:15
**claims (98)**
11:4,8,12,16,19;12:1,
1,4,8,9,11,14,16,17,18;
13:2;15:3,7,8,21;
19:13;22:1;23:16,18,
19,20;28:5,5,8,25;

29:23,24;30:16,19,20;
37:10,22;39:3,17,19,
19,22;40:19;46:20,22;
62:20,21;63:5;72:4,9,
14;73:3,9,15;74:25;
76:8,18,25;77:8,9,15;
78:18;79:13,16;80:8,
13,18;83:15,18,23,25;
85:4,11;87:8,14;90:13,
23,25;91:1,12,12,14,
14;92:7,9;93:19;
100:21;105:11;117:22;
118:21;121:7,12,12,13,
14;122:9,10
**clarified (1)**
75:11
**class (108)**
9:11;11:25;13:8,8;
14:12,22,24;15:10,14,
17,18,20,25;16:4,9;
17:14,15,16;18:16;
19:13,14;20:10,14,18;
21:23;22:15,16,21,21;
23:8,14,24;19;26:3;
28:4,24,24;30:8,8,11,
12,13,16;32:5,15;
33:21;35:3;36:4;37:3,
6,16;38:1;39:23;40:1,
6,9,13,18;41:3,6,16;
42:19;45:20,21;46:8,
14,24;47:4,7,23;48:4,
24;49:5;51:14;53:24;
54:1;57:18,21;58:7,14;
59:11;61:22,24;64:14,
18,25;66:3,24;69:5;
73:13;74:7;77:3;85:1;
86:1,5;89:24;90:17,23;
91:21;92:5,9,22;93:1,
25;95:14,15,16,24;
118:18
**class- (1)**
69:5
**class-action (13)**
14:23;22:15;29:1,5;
35:3;36:23;37:25;
60:20;64:24;85:23;
86:3,10;88:16
**class-cert (1)**
18:1
**class-certification (1)**
16:21
**class-claim (2)**
21:15;30:7
**classes (1)**
60:12
**classic (1)**
84:17
**classification (2)**
23:18;122:2
**classified (2)**
23:16;39:2
**classwide (1)**
16:1

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 135
of 152

**Clean (2)**
98:3;120:19
**cleanup (1)**
105:12
**clear (4)**
38:24;51:21;63:3;
70:2
**clearly (4)**
23:3;31:16;41:3;
65:17;86:14
**CLERK (2)**
8:8;128:9
**client (3)**
15:9;112:14,24
**clients (5)**
52:16;68:3;119:5;
125:1,16
**clock (1)**
66:17
**closely (1)**
107:25
**closer (1)**
20:23
**closing (1)**
68:10
**Code (1)**
111:10
**collapse (1)**
78:3
**collapsed (1)**
79:19
**collapsing (1)**
79:7
**colleague (3)**
10:4;27:21;56:3
**colleagues (3)**
8:25;43:3;67:17
**colloquy (2)**
31:17;106:24
**combination (1)**
57:10
**coming (9)**
9:17,20;55:24;70:9;
71:21;84:21;89:13;
106:4;125:4
**comments (1)**
106:21
**commit (1)**
103:9
**commitment (3)**
68:13,14;120:11
**committed (2)**
96:11;100:8
**committee (7)**
79:11;100:1;101:24;
107:18;116:10,17;
122:9
**committees (1)**
60:9
**committee's (1)**
100:7
**committing (1)**
80:11

**common (2)**
71:10;89:21
**communications (1)**
119:11
**community (1)**
116:21
**companies (3)**
38:22;41:3;80:20
**company (16)**
13:10;36:15;38:13;
49:17;50:13;52:3;
57:21;75:23;79:3,7;
81:9;82:3,8,9;83:11,18
**company's (1)**
36:12
**compare (1)**
104:19
**compel (1)**
94:11
**compelling (2)**
23:12;85:9
**competing (1)**
100:7
**complaining (1)**
71:22
**complaint (10)**
18:18,23;22:15;
39:20;45:24;73:2;
76:18;77:11,19;78:3
**complaints (1)**
39:21
**completed (1)**
110:5
**Completely (2)**
19:8;95:2
**compliance (7)**
77:15;82:13;111:9,
15;112:15,20;118:17
**compliant (1)**
80:24
**complicated (1)**
25:18
**complied (2)**
53:21;119:2
**complies (1)**
112:17
**comply (1)**
95:14
**complying (1)**
112:3
**comprehensive (1)**
100:5
**comprised (1)**
117:4
**compromise (1)**
101:2
**computer (1)**
31:11
**concede (1)**
24:16
**conceded (2)**
11:14;73:17
**concerned (1)**

99:8
**concerns (3)**
104:8;126:16,17
**conclude (1)**
130:18
**concluded (1)**
53:16
**conclusion (1)**
21:22
**concrete (1)**
105:5
**concur (1)**
118:14
**condemnation (2)**
123:4;125:14
**confer (2)**
106:7;127:12
**conference (4)**
97:1;108:20;109:4;
115:6
**confident (1)**
112:19
**confirm (1)**
117:16
**confirmation (35)**
19:21;23:7;24:17;
25:20,20;28:6,7;71:5,
7;72:8;75:17;76:4;
84:2;85:7;97:22;
101:23;102:3,8,10,11,
13;103:20;105:16;
108:17,23;109:5;
111:22;112:12,13;
114:3;115:9;118:2,15,
21;122:17
**confirmed (1)**
72:4
**conjecture (1)**
26:20
**conjunction (1)**
41:14
**Connaught (2)**
19:10;28:21
**connection (10)**
11:9;28:4;57:6;
93:16;102:9,12;
111:19;120:12;122:1;
123:5
**consensual (1)**
40:18
**consensus (3)**
86:16;100:5;104:12
**consequence (1)**
73:24
**consequences (2)**
13:13;124:11
**consider (2)**
105:16,24
**consideration (4)**
18:5;21:20;71:11;
78:22
**considered (1)**
17:11

**consistent (4)**
29:18;66:9;109:25;
111:4
**constantly (1)**
119:14
**constituency (1)**
27:3,4
**constituents (5)**
23:24;69:10;118:10;
119:5,10
**constitutional (4)**
32:24;43:19;44:18;
96:3
**constitutionally (2)**
20:16;55:25
**constructive (22)**
46:6;47:8;52:10,11,
14;54:4,5,17,21,23,24;
55:15,24;56:7;57:2,10,
25;58:21;66:6;95:1,3;
104:7
**constructively (1)**
52:5
**constructive-notice (1)**
54:12
**consultant (1)**
40:2
**consulted (1)**
125:21
**contacting (1)**
94:5
**contains (1)**
35:9
**content (1)**
97:20
**contents (1)**
99:3
**contested (2)**
113:19;125:5
**context (7)**
21:20;29:1;53:8;
54:8;110:6;112:12;
113:18
**contract (1)**
103:8
**contractors (1)**
78:19
**contrary (2)**
46:19;53:23
**convince (2)**
29:17;123:1
**convinced (3)**
66:21;79:5;123:11,
12
**cooking (1)**
81:25
**coordinated (1)**
56:17
**copied (1)**
97:12
**corporate (2)**
11:5;12:2;34:4
**Corporation (10)**

8:8;77:2;78:23;
79:24;80:4,5,10,18;
81:6;82:25
**correctly (1)**
65:21
**counsel (10)**
9:8,11;63:13;85:22;
97:12;99:5;108:21,21;
115:9;125:21
**counterpart (2)**
40:14;79:4
**countless (1)**
68:2
**country (3)**
34:19;35:4;69:16
**couple (15)**
9:19;10:17;27:18;
56:10;64:17;65:2;
84:10;85:3;87:2;92:17;
97:20;117:16;122:5;
126:4;128:14
**course (7)**
27:8;36:11;58:23;
81:17;87:19;89:24;
93:14
**Court (532)**
8:4,5,7,9,13,16,23;
9:1,3,5,7,13,17,17,19,
22,24;10:2,8,10,13,17,
21;11:1,10,13,15,17,
21,24;12:5,6,10,13,19;
13:1,3,22;14:6,10,14,
16,19,21,24;15:2,5,12,
17,20;16:7,13,13,14,
15,17,21,23;17:3,5,13,
18,21;18:19,20,22,24;
19:8,9,12,16,19,25;
20:2,5,11,13,18;21:1,
13,24;22:3,9,11,19,24;
23:18,22;24:4,7,9,12,
20;25:4,6,9,13,15,22,
24,24,25;26:3,6,11,16,
19,22;27:10,12,14,19,
21;28:11,13,16,19;
29:9,10,12,15,17,21,
25;30:4,16,17,21,23,
25;31:4,7,9,10,10,13,
24;32:3,7,9,16;33:11,
25;34:3,8,11;35:5,12,
16,19,25;36:2,6,8,10,
22;37:9,11,14,18,23;
38:11,17,19,21;39:4,
10,12,21;40:12,20,22,
24;41:6,11,24;42:2,7,
11,23;43:1,8,10,14;
44:5,7,17,20,22;45:1,5,
7,10,15;46:16;47:10,
22;48:1,8,11,14,16,19,
23,25;49:8,13,18,23,
25;50:4,6,8,16,18,21;
51:6,9,23,22;52:19,
23;53:1,9,16,25;54:10,
18,20;55:1,11,19;

Min-U-Script®

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 136
of 152

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) Clean - Court

56:13;57:18;58:2,3,12,
23;59:3,16,18,20;
60:12,18,20;61:4,7,11;
62:3,7,10,12,14,23;
63:1,7,10,13,20,24;
64:2,4,9;65:12,20,24;
66:2,12,19,21,25;67:6,
13,19;68:1,21;69:9,12,
14;70:1,5,9,15,17,19;
71:3,21,23;72:1,10,12,
16,25;73:6,10,15,22;
74:3,8,16,21,23;75:1,3,
7,14,20,24;76:1,5,7,14,
19,22;77:8,17,19;78:7;
79:19;81:8,13,15,22;
82:9,15,17,18;83:1,3,5,
12,19,23;84:5,8,12;
85:14,17;86:8,18,20;
87:1,4,6,15,17,19,23,
25;88:4,10,21,25;89:2,
4,6,8,17;90:16;91:10,
17,19,23;92:1,8,11,14,
20,24;93:3,6,9,11,13,
20;94:4,10,16,18;
95:21,22;96:8,12,17,
19;97:2,5,6;98:9,13,17;
99:21;100:8,11,13,24;
101:5,7,10,14,16,19;
102:4,14,17,22;103:2,
5,7,12,16,21;104:2,16,
22,24;105:1,18,22;
106:3,12,23;107:3,14,
23;108:2,12,18;109:9,
13,25;110:8,20,22;
111:3,7,21,23;112:5,
16,18;113:1,4,7,11,16,
20,23;114:9,15,19;
115:8,14,17,20,25;
116:23;117:6,9,11,13,
21;118:4,6,22,25;
119:16,18,19,22,25;
120:2,10,14,16,19,23;
121:2,8,21,24;122:3,5,
10,13,16,22,25;123:6,
8,10,15,18;124:1,6,9,
11,14,20,22,25;125:2,
23,25;126:4,7,10,12;
127:4,9,18,21;128:4,
13,17,19,25;129:3,5,7,
11,14,21,24;130:3,8,
11,14,17;131:3,5
**courtroom (1)**
115:3
**courts (4)**
17:11;19:11;35:10;
78:2
**court's (1)**
91:17
**cover (1)**
96:21
**covered (1)**
18:1
**CPUC (5)**

78:8;104:9;111:5;
114:14;119:2
**creditor (5)**
32:18,25;43:21,24;
108:22
**creditors (16)**
33:16;34:15,24;
43:24;61:25;73:10;
75:5;76:21;84:4;89:18;
91:24;97:12,24;98:19;
105:12;107:12
**creditors' (2)**
91:24;108:23
**critical (5)**
43:4;75:6;76:6;80:1;
97:16
**critically (1)**
106:20
**cruise (6)**
32:13;42:8;54:10;
55:14,15;56:20
**crystal (1)**
68:25
**crystallize (1)**
31:23
**current (10)**
14:3,13;33:18;39:25;
41:22;46:21;58:5;
71:13;79:12;130:1
**currently (1)**
23:21
**customary (2)**
35:2;42:22
**customers (1)**
33:15
**cut (2)**
120:4;126:7
**cuts (4)**
49:14;50:15,19;
124:14
**cutting (1)**
27:21

## D

**D&O (1)**
79:13
**Dallas (1)**
58:15
**damage (10)**
78:8,9,11,12,13;
79:24;81:5,18;82:24;
83:13
**damaged (1)**
79:22
**damages (24)**
48:5;72:15,21,23;
73:4;74:5,12;78:2,4,5,
6,20,22,23;79:20,21,
23;80:9,20;82:3,7,24;
83:16;84:1
**dark (1)**
109:2

**date (38)**
13:10,11;14:4;20:17;
22:5,6,16,25;23:1,11;
32:20,25;33:19;39:7,
25;40:1;42:20;45:25;
46:3;47:4;58:4,14;
59:12;61:22,23,24;
69:7,16,19,21,24;70:3,
4;94:6;95:24;105:21;
108:16,17;130:8
**dates (3)**
15:21;97:16;104:19;
106:2;115:5
**David (1)**
70:22
**Davila (1)**
26:12
**day (14)**
10:24;11:20;14:8;
16:3,10,22;30:1,15;
38:22;39:13;65:16;
80:24;115:20;128:15
**daylight (1)**
45:16
**days (8)**
77:23;115:11,12,16,
17,17,20;128:14
**deadline (9)**
68:15;104:13;107:8;
108:16;111:2;118:16;
129:16,25;131:6
**deal (18)**
8:10;16:10,21;29:2,
4;30:2;46:10;48:22;
54:7;71:11,18,19;87:2,
5;93:18;96:9;97:10;
120:25
**dealing (5)**
25:2;55:2;74:19;
97:24;125:12
**deals (1)**
82:2
**dealt (6)**
29:3;40:17;53:14;
73:17;106:9;112:8
**debenture (1)**
53:18
**debentures (1)**
92:6
**debt (2)**
13:5;32:11
**debtor (26)**
12:8,8,15;22:1;27:2,
5;38:10;40:13;43:23;
49:20;72:22,24;73:3,4;
74:13;88:6,7;91:3,22,
24;94:2;95:23;112:20;
118:15;124:2,16
**debtors (69)**
11:5;12:2,18;18:3,6,
9,12,20;21:16;23:9,14;
24:16;32:19;33:3,8;
34:15,17,25;35:24;

37:5,15,16,21;38:14;
39:1,17,20,22;41:14,
19;42:22;43:16;44:2;
45:12;46:2,5,14,19,20,
22;49:4;51:14,18,22;
54:2;58:13;69:10;71:8;
72:13,17;74:5,7,10,18;
77:12;78:1,5,12,17,18;
84:15;85:22;90:21;
92:2,7,9;94:11;96:2;
100:4
**debtors' (7)**
13:7;33:18,21,24;
51:1,2;59:23
**debtor's (11)**
55:23;71:10;73:4;
84:19;94:25;100:22;
101:22;104:6;118:3;
120:24;121:6
**December (6)**
57:22,23;58:8;62:2;
122:23;123:21
**decide (7)**
47:23,24;112:21;
123:1,2,10;124:3
**decided (4)**
16:4;20:15;28:22;
92:4
**decides (3)**
112:22,22,24
**decision (4)**
57:19;68:6;91:17;
114:16
**decision-makers (1)**
36:13
**decisions (1)**
35:13
**declaration (8)**
33:14;36:5;51:11,16,
16;56:19;114:11,12
**declarations (1)**
59:8
**decree (1)**
73:22
**deemed (1)**
15:25
**defendant (2)**
38:1;73:4
**defendants (5)**
11:3;23:15;37:7,15,
16
**defer (1)**
67:17
**deferred (1)**
102:8
**defrauded (4)**
13:16;22:1;23:8;
30:8
**Delaware (1)**
79:18
**delay (2)**
23:1;24:18
**demonstrate (1)**

112:12
**demonstrated (1)**
111:16
**denial (3)**
23:13;49:6;66:8
**denied (6)**
19:17;29:11;57:18;
64:15;79:17;96:4
**deny (6)**
19:5;55:7;60:6;64:7;
74:21;114:21
**depend (1)**
92:3
**depending (1)**
18:15
**deputy (1)**
115:3
**derivative (26)**
11:6;12:1,4,8,11,18;
29:24;73:3,5,9,15,16,
23;74:10,25;75:9;76:9,
17;80:6,13;83:18,19;
90:6;91:1,4,6
**describe (1)**
33:8
**despite (2)**
30:19;76:18
**destroyed (1)**
83:11
**detail (2)**
14:18;77:22
**detailed (2)**
108:10;109:18
**details (3)**
98:24;110:13;115:2
**determination (3)**
26:1;27:6;76:7
**determinations (1)**
25:9
**determine (3)**
78:2;79:20;88:6
**determined (2)**
18:13;79:20
**determining (2)**
22:17;34:23
**difference (9)**
47:17,18;49:9,13,14;
55:4;56:19;57:9;93:22
**different (20)**
26:12;29:21;37:23;
40:11;42:4;46:12,13;
50:12;55:4,12;73:19;
80:21;81:8;90:11;
93:24;106:16;107:21;
111:9;121:13;125:16
**differently (2)**
36:18;103:14
**difficulty (1)**
116:18
**digits (1)**
39:11
**dilute (1)**
72:5

Min-U-Script®

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 137
of 152

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.com

(5) courtroom - dilute

**diluted (2)**
48:4;84:25
**dilution (18)**
48:18,19;63:15;68:4;
71:4,16;74:23;75:10;
87:9,10,17,20;88:9,17,
18,21,22;89:15
**direct (18)**
11:6,20;12:1;29:24;
53:7;72:23;74:16,17,
24;75:10,20;76:9,25;
77:9;79:16;80:8,18;
81:14;82:5,21,23;
83:24,25;123:6,8
**directed (2)**
94:13,14
**direction (1)**
119:11
**directive (1)**
11:20
**directly (2)**
78:14;120:24
**directors (10)**
11:19;29:24;36:14;
41:4;72:13;74:1;77:12;
78:19;79:13;80:11
**discharge (3)**
19:22;20:15;98:18
**disclose (2)**
90:11,19
**disclosed (3)**
99:12;117:23;126:24
**disclosing (1)**
106:9
**disclosure (35)**
23:5;67:8,14;71:17;
91:14;97:18;99:3,11,
13,13,15;104:15;
105:14,15,25;106:9,16;
107:7;109:6,14;
110:14,24;111:8,18;
112:1;113:12,14,17;
117:6,24;120:12;
122:1;126:25;127:1,11
**disclosures (6)**
106:13,25;108:7,8,8;
120:10
**discounted (1)**
68:11
**discovery (3)**
64:13,17;65:5
**discrete (1)**
96:23
**discretion (3)**
17:21,22;60:15
**discretionary (1)**
61:9
**discuss (1)**
115:9
**discussed (2)**
28:15;75:11
**discussing (1)**
96:13

**discussion (2)**
43:17;61:4
**discussions (4)**
27:2;39:13;60:8;
104:7
**disenfranchised (1)**
21:12
**dismiss (2)**
26:9,13
**disposes (2)**
11:7,11
**dispositive (1)**
18:14
**dispute (9)**
11:18;12:17;23:19;
32:23;67:9;100:18,20;
122:20,21
**disqualify (1)**
24:19
**distinct (2)**
82:24;84:1
**distinction (1)**
14:4
**distinctions (1)**
29:8
**distinguish (1)**
61:16
**distinguished (1)**
111:10
**distribute (1)**
16:2
**distributed (1)**
52:13
**distribution (4)**
16:1,2;56:16;90:4
**district (14)**
16:24;18:19;23:5;
30:16;35:10,16;36:22;
39:21;57:20;58:2;
69:15;72:12;77:1;
95:21
**district-court (1)**
36:11
**dive (1)**
28:3
**divided (1)**
63:10
**docket (5)**
8:17;9:24;15:3,7;
116:16
**document (2)**
127:17;129:7
**documents (3)**
109:21;110:2,5
**dollar (1)**
64:22
**dollars (15)**
30:14,18;48:5;62:22;
67:11;71:16;76:12,12;
78:6,17;84:20;85:5;
89:10;90:15;121:14
**Donato (1)**
63:25

**done (19)**
16:19;17:22,22;
24:17;31:10;34:25;
38:21;39:5;41:1,2;
42:3,4,9;59:22;60:21;
85:25;94:9;109:23;
121:3
**doomsday (1)**
68:10
**door (1)**
60:5
**double (1)**
39:11
**doubt (1)**
99:6
**down (12)**
20:24;33:25;41:4;
43:15;61:1;68:4;78:9;
80:3,4;81:4,6,7
**draft (3)**
105:13;106:15;
110:24
**drafts (2)**
109:20;110:5
**drive (1)**
82:3
**driven (1)**
24:24
**dropped (4)**
77:7;78:15;80:19,25
**dropping (1)**
34:18
**drops (1)**
82:4
**Ds (2)**
74:13;80:6
**Dubbin (2)**
9:16,18
**due (2)**
19:20,22;32:24;
53:21;91:20
**due-process (5)**
40:10;41:17,17;
44:18;96:3
**dug (1)**
120:20
**Dumas (16)**
116:4,9,9,24;117:8,
10,12,14,22;118:5,7;
119:9,17,19,20;127:17
**duplicative (1)**
15:25
**during (12)**
21:5,7;22:21;26:8;
27:8;30:12,13;32:10;
33:21;77:3;90:17;
93:14
**duty (1)**
8:18
**dynamic (1)**
23:23

# E

**earlier (6)**
39:5;50:13;69:17;
70:6;97:20,24
**early (7)**
69:8;17;108:23;
109:18,23;110:1,14
**easily (4)**
25:1,20;106:9;
123:24
**easy (2)**
113:22;114:22
**effective (1)**
62:16
**effectively (2)**
18:7;61:23
**efficient (2)**
96:6,24;107:19
**effort (5)**
68:2;85:25;95:11,17,
18
**efforts (2)**
60:8;95:8
**Eight (1)**
115:11
**Either (11)**
11:6;13:18;15:13;
26:1;27:11;28:5;31:15;
42:13;108:12;114:21;
125:9
**electric (1)**
79:3
**electronically (1)**
31:10
**elegant (1)**
29:3
**elegantly (1)**
29:2
**element (1)**
81:12
**eleven (1)**
33:17
**Eleventh (1)**
53:13
**eliminate (1)**
100:6
**Elkin (2)**
86:24;87:1
**ellipsis (4)**
46:24,24,24;47:2
**else (14)**
8:13;10:6;17:24;
54:4,4;55:17;60:9;
68:18;74:20;88:23;
96:6;113:24,25;129:19
**embodied (1)**
21:23
**emphasis (1)**
61:2
**employed (1)**
58:5

**employee (5)**
45:19;46:21,22;
49:10;50:13
**Employees (11)**
8:21;45:20;46:3,23;
47:3;49:16;50:18;
57:22;58:5,7;93:22
**employment (2)**
57:21;58:7
**enable (1)**
117:25
**end (8)**
16:3;22:14;30:15;
90:17;105:9;116:1;
118:19;130:19
**endeavor (1)**
31:5
**ended (3)**
58:7;79:8;90:9
**Energy (1)**
98:4
**enforce (2)**
91:5;94:15
**engaged (1)**
104:6
**enjoin (1)**
90:22
**enjoined (1)**
91:2
**enough (11)**
28:21;33:6,7;34:20,
21;43:18;44:15,19;
74:22;80:1;85:20
**enter (1)**
105:6
**entire (5)**
22:21;34:18;37:6;
47:1;90:6
**entirely (1)**
46:8
**entities (4)**
34:4;77:24;98:18;
118:10
**entitled (11)**
31:20;32:6,23;33:2,
23;42:21;64:22;73:11,
12,13;83:21
**entity (2)**
84:24;89:20
**equity (33)**
12:24;13:4,4,9;24:8;
32:1,11;33:18;34:3;
38:12,15,25;42:17;
44:9,9;47:25;48:2,12,
13;62:24;63:7,15,17,
17;67:4,23;68:4;84:20,
21,23;85:3;89:6,15
**equivalent (2)**
40:13;109:3
**erase (2)**
82:1,2
**erases (2)**
82:16,20

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 138 of 152

**escapes (1)**
90:7
**especially (1)**
18:17
**essentially (4)**
21:24;34:18;79:19;
109:3
**established (5)**
33:1;35:5,14;61:22,
23
**estate (10)**
17:17;27:25;28:2;
47:22;61:15;73:10;
74:5,15;75:6;84:4
**estates (1)**
74:1
**estimate (6)**
63:1,21,25;64:2;
75:24;91:11
**estimated (2)**
75:14;76:13
**estimation (3)**
65:7;76:8;113:13
**et (4)**
96:13;110:16,17;
113:13
**ETKIN (140)**
8:20,20,23,24;9:2,4,
6,8,10,14,16,21,23;
10:1,3,9,11,16,20,23;
11:8,11,14,16,22;12:3,
7,12,14,25;13:2,21;
14:2,9,12,15,17,20;
15:1,4,7,13,19,22;
16:12,14,16,18;17:1,4,
9,14,20,25;18:23;19:7,
9,18,24;20:1,4,6,14,22;
21:11,14,22;8,10,12,
20;24:2,5,8,10,13;25:3,
5,8,10,14,16,23;26:2,5,
7,14,18,20,23;27:11,
13,17,20,23;28:12,14,
18,20;29:11,14,16,20,
22;30:1,5,22,23,24;
31:17;37:4;38:7;86:25;
87:2,5,7,16,18,20,24;
88:3,5,18,24;89:1,3,5,
7,9,18;90:17;92:13,16,
21;93:4,8,10,12,14,21;
95:20
**even (40)**
14:4;19:16;21:3;
22:4;23:16;24:12,17,
18;27:7;38:4;40:5;
42:19,22;43:24;44:13;
47:15;48:5;54:23;
55:15;59:6;67:3;69:17,
20;70:12;73:10;74:11;
76:1,4;81:19;84:4;
91:13;92:7;94:13;
96:20;106:7;109:5;
115:14;120:20;123:7;
128:13

**event (1)**
78:16
**everybody (10)**
20:19;38:24;44:14;
54:3,4;60:9;68:13;
113:24;116:20;129:15
**everyone (2)**
8:5;96:11
**Everything's (2)**
39:14;81:23
**evidence (4)**
56:5,5,7;76:11
**exact (5)**
10:14;38:7;39:24;
40:6;46:7
**exactly (9)**
16:18;18:25;43:2;
52:7;58:12;72:20;94:2,
4;106:11
**example (6)**
44:11;111:19;112:2,
9;115:5;118:24
**except (3)**
56:15,15;106:12
**exception (1)**
20:7
**excuse (2)**
56:13;70:20
**excused (1)**
41:16
**exist (2)**
41:13,18
**existed (3)**
21:3;37:3;39:22
**existence (1)**
91:23
**existing (4)**
84:21,25;89:14;90:4
**exists (3)**
19:13;24:18;75:4
**expected (1)**
55:15
**experienced (2)**
78:22;110:12
**expertise (1)**
37:25
**explain (6)**
29:12;34:13;41:19;
76:17;82:19;116:12
**exploding (1)**
20:23
**extension (1)**
61:24
**extent (18)**
12:3;16:2;22:24;
25:19;30:1;44:12;
51:20;54:1;55:4;71:14;
72:5,8;94:10;97:21;
102:25;107:10;112:5;
127:15
**extract (1)**
86:12
**extremely (1)**

117:19

# F

**FA (1)**
79:12
**Facebook (1)**
116:21
**faced (1)**
78:1
**facie (1)**
111:15
**facilitates (1)**
107:25
**facility (1)**
126:16
**fact (17)**
12:17;21:18;26:7,24;
30:19;44:10;47:10;
48:7;55:24;57:10;67:1;
72:16;81:10,16;82:6;
85:10;117:3
**factor (9)**
18:14,14;47:8;48:18,
20;61:9;63:15;71:6;
75:10
**factors (11)**
17:11;18:4,9,13;
47:19;64:8;69:4;74:19,
22;75:18;84:3
**facts (5)**
18:5,15;21:6,20;
46:19
**factual (1)**
29:19
**failure (1)**
90:19
**fair (2)**
31:21;39:8
**fairly (1)**
109:18
**fall (1)**
13:2
**false (2)**
78:14;82:12
**falsifying (1)**
81:25
**familiar (2)**
17:7;106:17
**far (3)**
54:24,25;72:11
**fast (1)**
24:22
**fatal (3)**
17:23;21:19;119:6
**fault (1)**
39:4
**favor (3)**
103:4,17;125:17
**favored (1)**
61:24
**feasibility (2)**
28:10;65:8

**Feather (1)**
126:15
**February (4)**
26:10;70:9;100:3;
105:13
**federal (4)**
36:22;95:14;98:20;
109:17
**Fedra (1)**
23:4
**feel (2)**
30:2;97:9
**fees (2)**
64:21,24;86:6
**fellow (1)**
23:25
**felt (1)**
90:24
**FEMA (3)**
98:21;121:15;126:16
**few (6)**
30:2;40:16,17;96:14,
19;99:9
**fewer (1)**
115:17
**fifteen (1)**
67:25
**fifty (1)**
10:21
**fifty-five (3)**
30:14,18;90:15
**figure (4)**
65:3;66:23;67:2;
124:17
**figured (2)**
65:9,10
**file (21)**
13:18,24;15:22;19:2,
17;20:11;28:25;39:6;
44:4;53:19,20;54:14,
16;71:6;73:12;83:21;
91:21;105:13;127:10;
128:6,7
**filed (46)**
13:13,24;14:23,24;
15:9;18:18;23:10,14,
17,21;37:5;39:21;
45:24;46:2;59:21;
61:17;64:20;69:11,24;
72:12;77:11;82:9;
85:12;92:24;93:1;
97:18,24;98:9;99:24;
104:17;106:6,16;
109:16,21;120:11,12,
14;127:22;128:13,15,
15;129:1,5,15,22,22
**filing (12)**
18:21;21:17;22:25;
23:10,13;49:5;61:21;
72:20;74:6;105:9;
108:17;111:19
**fill (1)**
115:1

**final (4)**
43:5;83:23,23;95:19;
123:3,24;125:18
**finally (1)**
69:21
**financial (4)**
51:24;68:3;71:13;
77:4
**financing (3)**
48:3;85:5;100:23
**find (3)**
29:19;85:9;90:21
**fine (3)**
27:6;30:3;113:1
**fines (1)**
78:8
**finish (2)**
96:12;107:4
**finished (1)**
94:19
**fire (47)**
12:21;33:15;44:2,12;
55:3;59:13,22;60:24;
71:9,15,18,22;75:16,
22,22;78:5,6,16,21;
80:19;81:3,5,19,24,24;
83:7,10,14,14,17;
85:11,19;88:20;89:1,4,
11,19;99:20;106:20;
107:11,16,20;110:10;
117:18;120:4;121:7,13
**fire-related (2)**
121:7,12
**fires (14)**
55:3;59:21;60:2;
61:5;69:19;77:14,21,
23;78:1;80:22;81:17;
82:10;90:18;116:25
**FIRE's (1)**
126:17
**firm (3)**
9:10;36:4;99:5
**firms (2)**
35:23,24
**first (12)**
22:7;47:10;69:21;
77:16;78:4;91:9;92:18;
99:20,23;112:2;
118:24;123:20
**first-class (1)**
58:4
**fit (2)**
113:25,25
**five (12)**
30:25;48:22;62:5,6;
64:5;66:17;67:3;70:13;
88:11;95:11;97:3;
115:16
**flaw (4)**
17:23;56:9,14;119:6
**flexibility (1)**
108:7
**floating (1)**

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 139
of 152

116:19
**flow (1)**
80:17
**flowed (2)**
81:6,7
**flows (2)**
78:9;83:14
**flush (1)**
109:9
**focus (1)**
59:22
**folks (7)**
9:20;24:25;34:16,23;
38:16;42:25;70:8
**follow (5)**
42:15;76:16;87:23;
128:3;130:12
**followed (2)**
36:15;99:9
**following (1)**
82:18
**forget (1)**
94:2
**forgetting (1)**
19:1
**forgive (1)**
19:1
**form (7)**
52:11,14;59:24;
89:19;95:1,13,13
**formally (2)**
100:11,12
**formed (1)**
118:20
**former (8)**
44:9;45:20;46:22,23;
47:3;58:5;76:10;79:2
**forms (1)**
116:19
**forth (4)**
21:21;22:15;105:6;
114:12
**forward (13)**
45:21;52:19;57:24;
59:1,14;79:23;90:25;
97:4;101:18;102:3;
104:9;105:7;118:13
**forwarded (1)**
41:21
**found (1)**
77:8
**four (2)**
13:16;115:15
**four-year (1)**
21:5
**frame (3)**
107:8,8;118:16
**FRANCISCO (4)**
8:1;44:7;97:24;98:5
**Frankly (9)**
16:5;18:5;20:23;
22:22;24:5;40:17;41:9;
42:10;91:10

**fraud (1)**
38:9
**frauded (2)**
87:14;90:5
**free (1)**
106:23
**front (2)**
56:7;104:16
**Fulbright (1)**
126:14
**full (2)**
51:4;57:24
**fully (4)**
26:9;47:2;48:19;
126:24
**function (2)**
23:1;91:12,14
**fundamental (4)**
29:8;30:6;56:9;60:1
**funding (4)**
67:5,23,23;117:4
**funds (2)**
121:15,18
**further (6)**
114:23;124:3,18;
125:2,9;127:12
**future (1)**
74:14

**G**

**GAC (3)**
53:12;92:3,8
**garden (1)**
90:13
**gating (2)**
103:24;125:10
**gave (4)**
8:17;40:5;41:22;
112:2
**gear (1)**
106:19
**General (1)**
126:25
**gentleman (1)**
126:5
**gets (7)**
13:22;14:22;50:11;
52:13;65:7,7;88:8
**given (9)**
13:11;21:2;40:8,14;
42:3;43:23;57:24;
92:22;107:10
**giving (2)**
41:15;95:11
**Glenn (1)**
29:3
**Global (5)**
19:10;29:3;86:16;
100:5;104:12
**goes (10)**
47:6;56:21;71:6;
72:11;83:24;84:3;

88:15;96:3;98:13;
102:18
**Good (31)**
8:5,6,9,19,20;9:5,9,
13,15,18;28:17;33:6,7;
34:17,20,21;35:20;
38:3;43:18;44:19;
45:10,11;70:22;83:9;
93:13;107:3,23;116:9;
119:21,25;127:14
**Goren (1)**
67:18
**Gotshal (1)**
84:15
**governance (1)**
98:23
**government (2)**
98:20,21
**governmental (3)**
77:24;98:18,22
**governor (4)**
111:23,24;112:19,22
**governor's (4)**
104:5,7;112:21;
119:3
**grant (3)**
24:20;76:15;114:22
**granting (5)**
23:1;26:24;29:1;
66:15;75:4
**grants (1)**
26:12
**gravamen (1)**
78:3
**great (2)**
33:8;53:6
**greater (1)**
81:3
**Groundhog (1)**
115:20
**group (2)**
10:24;67:8
**guarantee (3)**
41:20,22;50:8
**guess (12)**
11:5;12:22;19:20;
34:4;36:15;37:18;
56:23;67:16;68:5,8;
82:18;127:4
**guidance (1)**
37:24
**gum (7)**
85:1;86:12,14,19;
95:25;96:1;114:23
**gumming (4)**
28:14,19;84:17,18
**guys (1)**
125:7

**H**

**half (2)**
77:24;129:22

**hand (1)**
97:5
**handed (1)**
88:23
**handle (3)**
10:5,6;130:21
**handled (2)**
15:23,24
**hands (5)**
42:25;95:6,8,12;
127:17
**hang (1)**
28:17
**happen (12)**
20:24,24;25:20;26:5,
7;40:22,23;44:1;99:7;
102:12,12;118:8
**happened (7)**
17:23;32:3;35:24;
58:12;59:12;77:21;
86:2
**happening (1)**
63:16
**happens (5)**
14:23;15:10;20:2;
21:10;36:20
**happy (2)**
67:20;118:9
**hard (4)**
68:5;110:4;117:19;
119:14
**hardly (1)**
22:5
**harmed (1)**
83:10
**Hawaiian (1)**
32:13
**head (1)**
20:23
**headlights (1)**
52:8
**Health (1)**
126:15
**hear (15)**
68:19;84:8,13;86:15,
22;92:14;94:18;97:15;
101:24;105:2;120:4,
11;122:11;125:7;
128:20
**heard (16)**
56:3;73:10;88:13;
105:19,23;116:2,3,4;
122:14,21;125:2,22;
128:5,20,24;130:20
**hearing (29)**
22:4;23:7;56:2;59:2,
2;60:24;91:9;96:22;
99:5;100:2;102:10;
103:20;105:16,24;
108:23;109:6,7;
112:12;113:16;114:3;
116:6;120:6;127:5;
128:8;129:16,17;

130:18,19,20
**hearings (3)**
59:14;96:12;98:8
**hearing's (1)**
129:1
**heart (1)**
50:23
**heartened (1)**
118:18
**heavy (1)**
94:12
**Heffler (5)**
36:1,3,12;40:3;42:4
**held (8)**
13:9;21:8;43:22;
58:12;91:19,19,19;93:16;
95:22
**help (2)**
31:14;71:15
**helpful (2)**
31:19,22
**helping (1)**
116:20
**here's (6)**
13:6;15:10;49:24;
58:3;64:16,18
**hey (1)**
40:4
**hiding (1)**
52:4
**higher (1)**
83:8
**highlighting (1)**
43:13
**highly (1)**
16:6
**himself (1)**
47:13
**hoc (4)**
100:1,7;101:24;
122:8
**hold (6)**
24:20;37:6;43:2;
75:16;76:25;124:1
**holder (8)**
14:3,3;32:1,6;34:4;
44:9,9;52:10
**holders (20)**
12:24;13:4;14:13;
22:17,20;33:18;39:25;
41:22;47:25;50:1;
51:11;53:3,15;63:8;
67:4;84:21;89:15;90:4;
94:5,8
**holding (1)**
28:23
**holdings (1)**
84:25
**holds (1)**
73:23
**Honor (170)**
8:6,20;9:9,15,18,23;
10:3,12;11:22;12:12,

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 140
of 152

25:14;13;16:6,14,19;
17:4,9,9;18:4,6,16;
19:24;20:23;21:12,16;
22:10,23;23:1,16;24:3;
25:12;26:24;27:17,25;
28:15;29:7;30:11;31:3,
12,16,17;32:15;34:12,
15;35:18,22;36:25;
37:21,21;38:6;39:16;
40:16;41:9;43:13;
44:19,25;45:9,11,18;
46:5,25;47:19;48:21;
49:1,2;50:14;51:13,15;
52:7,25;53:24;54:7,9,
15,19;55:9,21;56:1,4,5,
7,10,23;57:3,13;58:10,
17,20;59:1,4,8,9;60:13;
61:8,15,25;62:11,19;
63:14;64:19;65:1,22;
66:5,9;67:16;68:22,24;
69:1;70:18,22,24;73:8,
21;84:10,14,19;85:2,8,
21;86:6,13,16;87:3,10,
24;88:19;90:6,21;91:5,
8,92:16;93:4,10,16;
94:1,21;95:10;99:23;
100:22;102:7,25;
103:3,19;104:4,20;
106:1;107:9;111:2,17;
116:9,15;118:12;
119:21;120:1,9;121:4,
5,20;122:4,8,18;
124:21;125:24;126:3,
9,13;127:15;128:2,18;
130:23
**Honor's (4)**
  66:8;100:3,16;
  123:23
**hook (1)**
  78:5
**hope (4)**
  95:4;98:24;99:16;
  108:13
**hopeful (1)**
  112:18
**hopefully (5)**
  39:15;112:15;
  118:15;119:11;120:23
**horribles (1)**
  91:8
**Hostetler (2)**
  70:23;116:10
**hour (2)**
  93:19;129:22
**hours (1)**
  130:22
**houses (1)**
  60:23
**How's (1)**
  125:25
**huge (6)**
  48:4;65:11;69:23;
  70:1;114:4;125:12

**huh (1)**
  113:15
**hundred (6)**
  33:17;49:3;67:25;
  85:5;117:2;123:11
**hundreds (3)**
  40:5;42:19;63:5
**hung (1)**
  65:13
**hunky-dory (1)**
  81:23
**hypothetical (7)**
  14:6;20:3;31:24;
  32:1;39:19;56:15;
  73:22
**hypotheticals (1)**
  19:2

# I

**idea (7)**
  22:20;37:22;49:20;
  50:22;75:5;94:10;
  97:21
**identify (4)**
  32:20;34:16;94:3,5
**ignore (2)**
  18:10;68:16
**imagine (1)**
  10:21
**immediately (1)**
  70:24
**impact (16)**
  17:16;21:22;23:2;
  26:14,18,21,23;27:25;
  28:1;71:6;75:16;76:3;
  83:17;84:22;90:2;
  114:23
**impacted (2)**
  12:21,22
**impacting (2)**
  89:13,14
**impediment (1)**
  102:2
**impetus (1)**
  27:2
**implementation (3)**
  59:1,15,19
**import (1)**
  36:22
**importance (1)**
  114:20
**important (13)**
  18:15;28:2;56:2;
  57:1;58:20;60:16;
  84:18;106:21;107:9;
  108:19;114:20;118:2;
  125:3
**importantly (1)**
  83:22
**importing (1)**
  37:25
**imposed (1)**

  118:16
**impossibility (1)**
  89:25
**impossible (1)**
  45:23
**impressions (1)**
  59:7
**inchoate (1)**
  39:19
**incidental (2)**
  78:12,24
**include (2)**
  110:25;117:24
**included (1)**
  126:20
**including (2)**
  18:11;46:21
**inconvenient (1)**
  120:6
**incorporate (1)**
  105:10
**incorporated (1)**
  15:15
**incorrect (2)**
  117:1,2
**incurred (1)**
  83:13
**indeed (2)**
  23:7;45:22
**independent (3)**
  83:15,15;126:15
**independently (1)**
  90:2
**indicate (1)**
  15:8
**indicated (1)**
  101:20
**indication (1)**
  22:12
**indicative (1)**
  105:4
**individual (13)**
  13:9,12;15:25;16:4;
  19:13;20:14;28:24;
  53:20;73:12;81:19;
  91:23;95:16;110:10
**indulge (1)**
  85:18
**industry (1)**
  79:7
**infinitely (1)**
  96:6
**inflated (1)**
  77:6
**information (11)**
  51:1,18,21;52:12;
  54:2;98:24;110:25;
  116:19,25;117:24;
  119:13
**initial (2)**
  93:14;110:24
**injunction (1)**
  24:14;26:8

**injury (4)**
  80:4,5,17,17
**ink (1)**
  31:21
**inopportune (1)**
  79:24
**input (2)**
  105:8,8
**inside (1)**
  36:20
**insolvent (1)**
  38:22
**instance (1)**
  35:8
**instances (1)**
  99:9
**instead (1)**
  34:17
**insufficient (1)**
  91:20
**insurance (1)**
  74:13
**intend (1)**
  17:25
**intended (1)**
  129:9
**intention (1)**
  102:20
**interest (11)**
  13:23,23,25;67:10;
  68:6;90:5;97:14;
  100:20;101:2;102:1;
  103:8
**interesting (2)**
  53:24;54:3
**interestingly (1)**
  28:21
**interests (2)**
  43:21;122:19
**interlocutory (3)**
  123:2,7;125:18
**intermediate (2)**
  50:10;106:6
**internet (3)**
  55:18,20;59:7
**intervening (1)**
  78:16
**into (35)**
  12:4;13:3;14:17;
  15:15;17:25;21:20;
  25:11,14;27:22;28:3,
  14;29:16,22;37:4;44:3;
  49:17;61:9;62:4;63:10;
  68:17;71:11;72:22;
  77:18;79:6;82:3,8;
  95:6,8,12;101:1;102:5;
  109:10;112:24;113:2;
  117:4
**introduce (1)**
  8:24
**inverse (1)**
  123:4;125:14
**investment (2)**

  83:9;84:22
**investments (1)**
  84:20
**investors (6)**
  22:1;23:9;30:9;
  60:25;87:14;90:5
**invitation (1)**
  45:13
**invite (2)**
  20:18;68:9
**invoke (1)**
  95:22
**involved (2)**
  15:23;60:17
**involves (1)**
  80:7
**ironic (1)**
  69:14
**irrelevant (2)**
  24:11;47:20;73:11
**Irrigation (1)**
  98:4
**isolate (1)**
  78:2
**issue (37)**
  10:5;12:5;14:17;
  16:15,21;17:19;18:1;
  29:2;31:22;33:1;40:18;
  51:13;52:25;54:8;
  65:11,22;70:25;71:1;
  74:23,24;90:23;92:6;
  97:25;98:2,10,17;
  102:6,18;103:25;
  109:19;121:20;122:17;
  123:21;125:9,10;
  126:19,23
**issued (4)**
  77:2;91:5;102:9;
  122:23
**issues (12)**
  17:8;59:10;70:25;
  87:3,7;99:17;101:25;
  104:4;120:10,17,23;
  122:2
**issuing (1)**
  80:10
**item (2)**
  112:1;122:2
**items (4)**
  67:10;105:12;
  110:23;117:15
**iteration (2)**
  23:17;101:1

# J

**JANUARY (9)**
  8:1;32:14;46:4;47:5,
  5;58:6,8;62:5;113:12
**Jeff (1)**
  9:16
**jeopardize (2)**
  66:15;68:12

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 141
of 152

**jeopardy (1)**
69:9
**Joaquin (1)**
98:4
**Journal (2)**
55:16;58:16
**Judge (8)**
26:12;28:20,21;29:3;
58:2,3;63:25;79:18
**judges (1)**
16:24
**juggle (1)**
86:21
**Julian (1)**
79:10
**July (2)**
33:20;39:25
**June (4)**
45:20;101:23;
104:13;131:5
**jurisprudence (1)**
92:5
**justice (1)**
10:15
**justified (1)**
66:7
**justify (1)**
49:6

**K**

**Karotkin (89)**
8:9,12,15;56:3;
67:18;84:10,13,14,14;
85:16,18;86:19;91:8;
96:11,16,18,25;97:3;
98:7,12,16;99:18,23;
100:10,12,14;101:4,6,
8,13,15,17,20;102:7,
15,20,24;103:3,6,11,
13,19,24;104:3,20,23,
25;105:4,20,23;106:11,
14;107:1,6,15,24;
108:11,14;109:8,10,24;
110:4,19,21,23;111:6,
17,22;112:4,11,23;
113:3,6,9,15,18,21;
114:8,10,18;115:7,13,
15,19,24;122:16;
125:7;127:9,15
**Karotkin's (2)**
117:16;118:14
**keep (7)**
16:24;31:5;84:18;
94:20;106:12;107:10;
129:19
**kill (1)**
119:7
**kind (10)**
13:4;24:22;59:25;
65:6,15;96:20;99:1,11,
12;108:8
**kinds (1)**

116:24
**knew (11)**
14:4,7;32:3;37:7,8;
39:1,17,22,22;44:10;
62:8
**known (18)**
21:3;32:18,25;33:23,
23;34:14,24;35:14;
37:2;39:1;43:23,24;
50:24;51:14,22;53:3,5;
77:7
**knows (3)**
44:15;111:11;113:24
**Kornberg (2)**
112:22;113:24
**Kornberg's (2)**
112:14,23

**L**

**Labaton (1)**
9:10
**lack (4)**
66:6;79:21,22;
126:17
**laid (1)**
91:9
**language (4)**
76:18;118:4,5,6
**large (2)**
91:13;121:14
**larger (4)**
80:4,5,17;125:15
**last (10)**
14:21;46:11,11;
61:14;66:24;94:1;99:1;
113:11;117:20;126:22
**late (9)**
9:20;28:9;61:17;
65:11;67:22;69:11,19;
84:2;93:7
**lateness (2)**
49:5;66:7
**latent (1)**
21:4
**later (11)**
28:22;39:6;56:21;
83:7;96:22;102:1;
107:4;109:19,21;
110:14;127:10
**latest (1)**
97:17
**latter (1)**
76:10
**laundry (1)**
120:17
**law (11)**
9:10;18:11;19:22;
21:21;34:20;77:16;
78:10;80:24;82:2;
112:3;119:1
**laws (2)**
112:5,7

**lawsuit (2)**
72:17;91:4
**lawyer (2)**
108:23;111:11
**lawyers (14)**
10:11,24;60:8,21;
64:21,24;68:3,9;86:1,
4;99:5;108:24;110:12,
12
**lead (3)**
9:11;21:18;35:7
**leaflets (1)**
34:18
**learned (1)**
32:13
**learns (1)**
44:1
**least (11)**
23:21;39:1;52:6;
63:4;64:12,13;94:16;
97:16;106:8;111:15;
123:5
**leave (4)**
14:7;94:24;118:17;
123:1
**leaves (1)**
23:23
**left (4)**
27:20;33:22;79:25;
91:13
**legal (5)**
64:21,24;73:23,25;
108:25
**legally (1)**
58:9
**legitimate (1)**
39:15
**lengths (1)**
33:8
**less (8)**
18:15;22:25;27:4;
63:4;89:22;90:18;
115:15;121:17
**letter (1)**
97:11
**letters (2)**
71:21;116:15
**letting (1)**
43:5
**level (2)**
48:6;83:8
**levels (1)**
50:10
**liabilities (1)**
78:17
**liability (1)**
77:25
**liberty (1)**
43:20
**life (1)**
113:21
**lift (1)**
94:12

**light (3)**
40:24;74:23;118:19
**likelihood (1)**
50:11
**Likely (3)**
20:6;38:25;83:7
**line (5)**
66:15;97:4;101:23;
108:15;110:1
**liquidated (1)**
117:5
**list (16)**
19:5;33:20;51:4;
56:16;91:24;97:8,8,15;
99:2,17;110:17,19;
112:7,9;114:3;120:17
**listen (4)**
85:14;92:11;127:18;
130:20
**listening (1)**
116:14
**literally (1)**
48:5
**literature (1)**
37:24
**litigation (6)**
15:14;23:15;25:19;
38:3;82:6;92:18
**little (13)**
13:19;14:18;16:7;
28:3;33:7,15;38:8,21;
56:11;66:16;107:21;
125:8;131:1
**live (1)**
131:6
**lives (2)**
44:5,7
**living (1)**
126:15
**local (2)**
44:13;69:15
**long (6)**
11:8;70:16;112:7;
114:1,3;120:5
**longer (3)**
34:6;91:19;103:24
**look (22)**
15:2,7;30:12;35:20;
39:12;41:2;46:25;
50:24;51:1,15;53:12,
13;55:21;61:8,18;62:1,
13;64:14;70:7;104:18;
105:21;109:14
**looked (3)**
59:24;108:6;115:2
**looking (2)**
49:8;111:7
**looks (1)**
113:9
**loop (1)**
126:20
**lose (2)**
26:3;88:2

**loss (1)**
30:15
**lot (7)**
13:6,6;15:23;41:10;
99:5;106:8;125:15
**lots (2)**
33:10;67:11
**Lowenstein (1)**
8:21
**lower (3)**
58:2;88:12;90:10
**lowered (1)**
88:10
**luck (7)**
19:6,20;20:7;42:7;
54:11;55:7,10
**luckily (1)**
56:12

**M**

**mail (2)**
42:24;58:4
**mailed (3)**
33:13,14;58:4
**main (2)**
117:1;119:10
**maintain (1)**
23:3
**major (4)**
51:6;71:10;81:5;
118:9
**makes (4)**
57:8;60:13;61:15;
114:21
**making (4)**
35:13;40:24;50:11;
70:10
**managed (1)**
27:3
**management (4)**
77:14,15;80:23;
81:23
**managing (1)**
116:16
**mandating (1)**
23:12
**mandatory (1)**
110:16
**Manges (1)**
84:15
**manner (3)**
95:4;107:20;128:12
**many (9)**
15:8;57:4;71:21,23;
84:20;99:4;111:12;
115:14;116:19
**marathon (2)**
96:12;120:7
**March (7)**
60:19;70:9;105:20;
106:1;107:8;113:14,17
**market (1)**

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 142
of 152

77:24
**massive (1)**
107:13
**matter (16)**
8:11;11:6;12:2;
14:23;19:20;24:23;
32:24;34:20;46:5;57:2;
60:14;85:10;92:20;
96:9;97:14;102:11
**matters (4)**
12:3,17;16:11;92:21
**Matthew (1)**
122:8
**may (19)**
16:20;18:15;31:18;
40:23;41:20;60:5;
64:20,22,23;68:7;
84:10;88:9;90:5,9,11;
107:9;108:16;110:23;
116:13
**Maybe (21)**
15:5;18:24;34:5;
40:22;41:7;42:4,7;
43:4;52:17,20;53:4;
55:23;60:21;68:5;83:8;
97:8,25;99:5;109:5;
115:3;124:3
**McGill (20)**
122:8,8,11,15,18;
123:9,14,17,19;124:1,
5,8,10,13,19,21,24;
125:1,21,24
**mean (61)**
13:1,4;16:18;17:19;
20:20;23:22,23;25:4;
26:3,12;27:2;29:15,25;
31:1;35:16,19;38:19;
39:6,12;41:13,14;42:6;
43:8;44:11;50:16;52:2;
54:20;56:13,21;59:18,
24;70:2,2,5;73:19;
82:20;85:14;87:19;
88:11,16;93:6;96:19;
98:9;102:4,19;106:3;
107:4;108:21;110:8,8;
111:21,23;114:4,6,23;
115:10,11;120:3;
122:13,17;128:4
**meaning (2)**
46:4;47:1
**means (4)**
12:8;19:23;38:25;
71:25
**meant (2)**
25:13;105:4
**meantime (1)**
115:3
**measure (2)**
59:11;82:24
**mechanism (4)**
21:23;29:5;30:7;
53:3
**mediated (1)**

27:11
**mediation (1)**
110:16
**meet (7)**
68:14;104:13;106:7;
110:1;111:2;114:12;
127:12
**meets (1)**
118:16
**member (5)**
14:24;20:14;32:5,15;
46:14
**members (22)**
11:25;14:12;15:14;
17:16;20:10;28:24;
30:11;36:4;40:6;41:15;
42:19;46:23;47:3;
51:14;58:13;89:24;
90:23;91:19;93:25;
95:16,24;100:1
**mention (1)**
94:1
**mentioned (9)**
20:8;27:9;38:8;40:3;
41:12;95:20;99:21;
101:24;104:11
**merely (2)**
73:3;78:24
**merits (7)**
12:23;16:12;22:2;
30:15;47:11;113:2;
123:11
**message (1)**
116:21
**met (1)**
74:15
**Mexico (1)**
8:22
**MF (2)**
19:10;29:3
**Michael (1)**
8:20
**MICHAELSON (1)**
9:9
**Michelson (2)**
9:6,7
**middle (1)**
60:24
**might (26)**
13:16;19:2;20:18;
24:13,14;26:16;27:14;
28:16;31:19;36:16;
46:23;47:3;62:23;
65:17,17;67:9,14;68:4;
76:4,11,11,12;80:25;
81:3;82:10;103:18
**million (4)**
33:13,14,15;85:5
**millions (1)**
63:5
**mind (5)**
84:19;96:17;107:10;
111:4;123:10

**minds (1)**
118:2
**minimum (2)**
43:19;65:2
**minority (1)**
69:15
**minute (3)**
85:18;126:9,11
**minutes (10)**
10:7;30:2;31:1;
44:22;84:8,11;97:3;
117:17;122:6;126:4
**misdeeds (1)**
72:14
**misinformation (1)**
117:15
**misled (2)**
81:3,24
**misrepresentation (4)**
78:14;81:1,20;83:10
**misrepresentations (11)**
77:13;78:15;80:2,13;
81:12,21;90:8,8,10,14,
20
**misrpre (1)**
82:12
**missing (1)**
12:20
**misstated (1)**
21:5
**misstatements (1)**
80:7
**modify (1)**
102:25
**moment (5)**
8:24;10:14;34:22;
59:21;103:21
**Monday (1)**
99:24;129:16,25
**money (13)**
24:8;38:14,15,16,25;
42:17;47:14;52:4;
77:18;93:23,23,24;
125:15
**Montana (3)**
79:3,4,5
**month (4)**
64:13;66:17;80:21;
117:20
**months (21)**
22:25;46:2;48:22;
50:13;55:14,22;61:18;
62:3,5,6;64:5,17;65:2,
2;67:3;69:22,24;83:7;
86:10;104:18;106:4
**months' (1)**
47:6
**moots (1)**
26:13
**more (24)**
13:14;14:18;16:11,
20;18:15;24:16;27:4,
18;59:6;65:13;76:9;

77:18;83:22;96:6,24;
98:3;102:7;106:10;
108:9;111:13;113:19;
115:4;116:8;125:5
**morning (19)**
8:5,6,9,14,19,20;9:5,
9,13,15,18;10:14;
45:10,11;58:15;66:16;
70:22;73:11;74:20
**most (8)**
15:17,20;27:3;33:13;
53:4;61:21;77:14;79:6
**motion (53)**
8:10,17;12:23;19:5,
17;21:17,19,21;22:24;
23:13;24:21;26:24;
27:9;29:2,8;40:21;
46:1;49:6;55:7,13;
57:6,18;58:22;60:6;
61:17,21;62:3;64:6;
66:15;69:22,24;70:10;
74:21;75:5,19;76:15;
85:12;92:24;93:1,5,7;
96:4;99:24;100:14,15;
105:14;114:17,21;
120:5;125:4;128:7;
130:5,7
**motions (3)**
25:6;26:9,13
**motivation (1)**
26:16
**movants (3)**
46:2,8,10
**move (1)**
99:10
**moved (1)**
91:5
**moving (9)**
72:22;97:4;99:9;
101:18;102:2;104:9;
105:7;111:1;118:15
**much (21)**
18:1;23:9;24:16;
27:20;33:1;48:4;50:2;
58:6;62:15;70:18;
84:23,25;90:18,18;
92:9;109:21;110:9;
113:19;121:17;125:15,
16
**muck (1)**
66:22
**Mullane (2)**
33:2;41:24
**municipalization (1)**
98:2
**Musicland (25)**
18:11;23:4,7;24:17;
28:1,2,3,6;47:8,19;
56:24,25;57:1,12;
61:19,20,20;69:4,7;
70:3;71:5;74:19,22;
75:17;84:3
**must (2)**

18:13;71:2
**muster (1)**
111:13
**myself (2)**
16:8;130:25

**N**

**name (1)**
70:21
**namely (1)**
58:7
**names (2)**
49:21;91:25
**national (2)**
108:6,7
**nationwide (1)**
54:25
**nature (4)**
12:11;14:24;77:25;
79:20
**necessarily (1)**
32:22
**necessary (8)**
21:22;27:1;53:19;
66:21;91:21;94:11;
109:6;127:19
**necessity (1)**
53:19
**need (29)**
20:9;24:24;26:22;
29:25;30:18;48:4;
53:14;63:18;65:9;
74:24;76:15;92:12;
97:7,10,16;98:14;
99:15;104:18;110:13,
25;111:1;112:8;116:5,
8;119:4;124:3;126:9,
24;130:4
**needed (1)**
94:8
**needs (6)**
25:19;55:17;65:8;
75:11;99:14;119:4
**negatively (1)**
23:2
**negligence (2)**
80:11,14
**negotiated (1)**
71:8
**neutralize (1)**
18:7
**New (15)**
8:22;19:10;20:18;
55:16;58:15;84:20;
100:25;102:17;128:9,
11,13;129:8;130:1,1,25
**News (1)**
58:15
**next (13)**
13:6;14:16;24:22;
47:5;48:22;67:7;77:23;
80:24;101:1;105:21;

Min-U-Script®
Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 143
of 152
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(11) **massive - next**

124:21;129:16,25
**Nicholson (1)**
  70:20
**Nicole (1)**
  9:14
**night (1)**
  10:25
**nine (1)**
  115:11
**nine-month (1)**
  22:14
**ninety-nine (1)**
  24:5
**Ninth (3)**
  43:18,22;123:25
**nobody (1)**
  50:8
**no-brainer (1)**
  125:19
**nominal (1)**
  73:3
**nominally (1)**
  37:18
**nominee (4)**
  50:9,18;52:4,9
**nominees (15)**
  41:20;50:2;51:3,3,4,
  7,12,19;52:10,12;94:5,
  8,11;95:1,12
**nondebtor (2)**
  11:3,19
**nondispute (1)**
  11:18
**nonfactor (1)**
  18:17
**nonholding (1)**
  53:18
**nonissue (1)**
  68:7
**noon (1)**
  129:25
**nor (2)**
  15:7;23:8
**North (7)**
  77:14,20,23;78:1;
  80:22;83:6,17
**Northern (3)**
  34:18;44:14;69:15
**Norton (1)**
  126:14
**noted (4)**
  30:11;37:4;93:21;
  94:25
**noteholder (2)**
  100:6;105:10
**noteholders (3)**
  63:5,7;100:2
**notes (2)**
  36:25;85:4
**notice (128)**
  10:5;13:7,8,11,17,
  24;14:7,14,15;17:16;
  20:5,16,17,19;21:2;

124:21;129:16,25
31:18,20,25;32:4,20,
24;33:2,4,5,9,9,24;
34:16,20;35:11,14;
36:3;39:25;40:5,8;
41:15,17,23;42:9,20;
43:17,19,23,25;44:9,
12,14;46:3,6,9,15;47:7,
8;49:6;50:10;51:11;
52:9,11,11,14,15,23;
53:15,17,20;54:4,5,13,
13,16,16,17,23,24;
55:4,15,24;56:6,8,16,
18,20;57:1,2,7,11,23,
25;58:4,9,13,14,19,20,
21,25;59:23,25;60:10;
63:6;64:14,18,25;66:7;
73:12;83:21;85:20,22;
86:9;87:7;94:15,25;
95:1,3,3,5,7,8,9,12,12,
13,13,16,23;97:21;
105:16;107:10
**noticed (1)**
  127:22
**notices (5)**
  13:8;33:13;38:16;
  41:21;44:2
**noticing (3)**
  49:4;59:6;118:8
**notified (1)**
  22:21
**notify (1)**
  52:6
**notifying (1)**
  22:20
**notion (2)**
  22:22;44:14
**notorious (1)**
  10:19
**nowhere (1)**
  33:20
**nuances (1)**
  13:3
**number (7)**
  20:7;25:16,18;41:7;
  55:10;66:10;120:2
**nuts (2)**
  99:12;110:1

**O**

**oar (2)**
  119:12,14
**object (6)**
  21:18;55:23;121:9;
  128:9;130:1,25
**objected (1)**
  22:6
**objecting (3)**
  58:24;108:22,25
**objection (6)**
  100:22;106:8;
  127:23;129:5,7,10
**objections (9)**

106:6;108:17;109:9;
114:2,8,10;115:9;
128:25;131:2
**objectors (1)**
  108:21
**obligation (2)**
  41:17;121:15
**obligations (2)**
  41:18;77:5
**observe (1)**
  65:24
**observed (1)**
  66:4
**obtained (1)**
  91:24
**obvious (5)**
  11:1;24:25;69:18;
  85:24;86:11
**obviously (5)**
  14:25;18:8;68:11;
  81:18;114:16
**occurred (1)**
  47:4
**October (2)**
  46:1;69:22
**off (12)**
  16:24;32:13;43:4;
  72:7;76:4;79:6;96:2;
  120:4;126:7;127:25;
  128:4,5
**offering (1)**
  90:1
**office (4)**
  104:5,7;112:21;
  119:3
**officers (10)**
  11:19;29:24;36:14;
  41:4;72:13;74:2;77:12;
  78:19;79:14;80:11
**official (2)**
  116:10,17
**often (1)**
  18:12
**OII (1)**
  111:4
**omissions (2)**
  80:7,14
**one (45)**
  16:21;18:14;19:1;
  20:7;25:16;27:25;
  31:13;32:23;33:19;
  35:24;38:22;40:13;
  43:12;44:1;46:11;47:4;
  54:4;55:10,13;56:1;
  63:24;64:18;65:16;
  67:10,18;71:1;78:25;
  80:14;81:12;85:8;
  94:22;95:19;96:12;
  98:7;102:11,12;109:1,
  20;117:1;123:5;
  125:20;126:9,11;
  129:14;130:23
**one's (1)**

72:18
**only (17)**
  11:4;12:3,22;13:17;
  27:1;46:11;51:13;
  57:25;65:2;66:8;70:13;
  84:23;96:23,23;
  115:11,15;122:19
**onto (1)**
  28:17
**onus (1)**
  44:3
**oOo- (1)**
  8:3
**operates (1)**
  12:21
**operative (3)**
  18:18;32:17;109:21
**opinion (1)**
  28:22
**opinions (1)**
  55:5
**opportunity (8)**
  20:11;21:14,25;
  28:25;30:18;100:25;
  116:12;124:17
**opposed (1)**
  86:4
**opposition (2)**
  78:10;79:1
**opt (2)**
  15:15;16:4
**option (2)**
  15:15;128:24
**options (1)**
  77:2
**oral (2)**
  26:9;27:8
**order (34)**
  8:4;9:24;35:9;47:8;
  51:17,19,19,21;62:5;
  63:18;82:23;90:22;
  94:3,10,13,16;97:9;
  102:5,9,13;103:23;
  105:6;109:11;111:2;
  122:18,20,23;123:2,3,
  21;124:6;125:18,19;
  128:25
**ordered (1)**
  20:10
**orders (3)**
  97:20;100:16;123:7
**ordinary (2)**
  42:22;82:2
**original (2)**
  59:23;113:12
**originally (1)**
  36:15
**Os (2)**
  74:13;80:6
**others (9)**
  18:20;20:7;96:15;
  100:2;105:8;114:19;
  116:12;118:17;123:12

otherwise (2)
  88:14;105:2
**ours (1)**
  91:1
**out (61)**
  15:15;16:4;19:6,20;
  20:7;23:9;24:8;35:11,
  13;37:8,10;38:14,15,
  16;39:18;42:7,16,17,
  24;46:25;47:2,14;
  51:10;52:12;54:11;
  55:7,10;56:17,24;57:4,
  7;59:7;65:1,3,9,10;
  66:24;67:2,9;72:17;
  78:18;80:12,22;86:17;
  88:13;89:13,21;91:9;
  94:7,8;95:3,4,23;
  109:9;117:15;119:13;
  121:5;124:17;126:19,
  21;130:21
**outcome (4)**
  12:23;73:25;95:20;
  96:1
**outline (1)**
  96:20
**outset (5)**
  37:4;38:23;39:9,13;
  43:17
**outside (1)**
  36:20
**over (8)**
  10:21;15:24;16:3;
  27:17;56:3,3;68:20;
  127:19
**overly (1)**
  18:3
**owed (3)**
  93:23,23,24
**own (14)**
  12:9;16:5;20:11;
  51:15;52:16,20;55:19;
  64:7;73:5;78:19;84:24;
  95:11;126:23;127:25
**owners (3)**
  49:22;50:7,23
**owning (1)**
  51:24

**P**

**package (3)**
  46:20,22;117:25
**packets (1)**
  94:7
**page (4)**
  32:9;46:11;77:22,22
**pages (3)**
  53:13;79:1;116:21
**paid (2)**
  30:17;99:8
**paper (2)**
  57:4,20
**papers (22)**

Case: 19-30088   Doc# 5562   Filed: 01/30/20   Entered: 01/30/20 12:12:19   Page 144 of 152

11:2,17;18:2;22:12;
29:7;31:22;33:3;36:8;
41:19;46:7,17,18,20;
53:13;58:11,15;66:11;
73:18;91:18;97:23;
124:16;125:8
**parade (1)**
91:8
**Paradise (2)**
44:8,12
**paragraph (4)**
46:11,12;47:6;51:17
**parallel (1)**
10:13
**parent (1)**
13:10
**pari (2)**
48:13,14
**part (16)**
35:18;47:13;48:2;
51:18;57:11;58:6;
61:24;64:6;65:8;67:23;
71:10;76:1;85:25;86:1;
97:8;100:19
**participate (2)**
90:1;115:9
**particular (7)**
14:3;32:5;97:9;
102:18;105:6,11;122:2
**particularly (4)**
11:2;74:22;107:16;
110:12
**parties (14)**
17:10;32:22;35:7;
62:18;69:10;72:14;
74:2,18;76:20;77:11,
12;78:19;102:15;
125:22
**parties' (1)**
31:22
**parties-in-interest (1)**
114:14
**partly (1)**
117:4
**partner (1)**
9:4
**party (5)**
32:19;75:22,22;81:7;
121:16
**Pascuzzi (17)**
109:16;112:6;
119:21,23,23;120:1,9,
15,18,22;121:1,3,9,22,
25;122:4;127:12
**pass (4)**
18:25;19:21;42:2;
111:12
**passing (1)**
94:23
**passu (2)**
48:13,14
**past (2)**
15:24;34:5

**path (2)**
101:22;118:13
**Paul (1)**
119:23
**pay (4)**
65:23;66:5;71:15;
103:8
**pencil (1)**
115:4
**pendency (1)**
35:15
**pending (5)**
35:17;36:11,14;41:4;
91:4
**people (47)**
12:22;15:5;21:7,10;
33:10;35:10,10,12;
36:21;37:12,22;44:11;
47:6;51:20,22,24;
54:22;55:16,17;56:15,
17;57:4,7,25;60:12;
64:20;67:2,5,22;68:2,3,
25;69:2,2;84:24;85:11,
13,19;99:6,14;106:17,
21;110:3,6;118:8;
119:6;120:2
**people's (1)**
26:16
**per (1)**
30:14
**PERA (13)**
46:7;50:19;53:11,22;
54:8;56:8;57:14;58:18;
60:14;61:15;62:2;
64:21,21
**PERA-motion (1)**
49:15
**percent (14)**
24:5;49:3;71:9;
80:25;87:12;88:8,11,
11,12,14;89:12,22;
117:2;123:11
**perfect (1)**
35:22
**perhaps (4)**
69:15;89:14;94:15;
114:23
**period (22)**
21:6,7;22:14,15,21;
30:12,13;33:21;39:23;
40:1;46:5;57:22,23;
70:1,12,13,14;77:3,3;
90:17;96:24;107:7
**permit (1)**
16:9
**person (8)**
13:12,15;21:2;34:6;
44:3,13;50:10;95:9
**perspective (2)**
27:1;87:12
**persuade (3)**
60:6;62:14;119:4
**persuaded (1)**

68:9
**persuasive (1)**
49:4
**petition (8)**
13:11;18:1;23:11;
39:6;45:22,25;46:3;
47:14
**petitions (2)**
116:22,23
**PG&E (13)**
8:8;30:13;41:7;
69:14,17;79:4;80:22;
89:21;112:2;117:2;
118:24;120:21;121:16
**PG&E's (2)**
44:1,15
**ph (3)**
23:4;64:15;65:10
**phase (1)**
24:22
**phone (1)**
105:2
**phonebook (1)**
108:5
**phrase (2)**
28:16,17
**pick (3)**
88:1;130:8,19
**picking (1)**
88:3
**pie (4)**
88:22,23,25;89:2
**piece (1)**
57:4
**pieces (1)**
123:19
**pin (1)**
12:19
**Pipe (4)**
19:12,12;20:9;28:23
**pipeline (1)**
67:7
**PL (1)**
93:1
**place (1)**
22:7
**plain (6)**
65:18;91:15;118:4,5,
6,7
**plaintiff (3)**
21:18;45:18;91:6
**plaintiffs (19)**
26:3;35:7;45:24;
49:15,20;50:20;53:11,
22;54:1,2;57:20;59:25;
60:17;72:12;73:9,17;
76:23;84:9;86:22
**plaintiffs' (2)**
88:15,16
**plan (56)**
23:6,17,21;24:14;
25:23;28:6,12;39:3,6,
6;59:1;62:16;67:3,13;

68:4;71:5,7;72:3;
75:17;76:3;84:2,19;
85:6;89:15;97:17,17;
98:11;100:6,7,11,19,
23;101:1,2,8,12,13,17;
102:3,17,22,25;103:13,
18;104:6;105:9,17;
111:8,24;112:17;
113:13;118:16;121:6,
9,11;127:10
**planned (1)**
70:24
**play (2)**
12:4;101:1
**players (2)**
51:6;106:7
**pleading (1)**
120:13
**pleadings (1)**
101:21
**Please (5)**
8:7;9:3;52:17,17;
87:1
**pleased (1)**
119:9
**plenty (2)**
86:8;110:6
**plus (2)**
101:1;119:13
**pm (2)**
131:8,8
**pocket (2)**
88:1,3
**podium (2)**
43:15;116:12
**point (46)**
11:2;12:7;21:9;
25:16;30:20;33:19;
34:5;39:8;41:25;43:12,
16;47:15;48:21;49:8;
53:4,4;55:13;59:4;
61:14;63:14;68:24;
69:16;73:18;75:7,9;
80:1;83:24;84:5,11,16;
86:7;88:13;93:6,9;
94:9,22;95:19;105:7;
108:22;109:25;121:2,
5;123:20;125:18;
127:14;128:5
**points (1)**
92:17
**policies (1)**
74:14
**poor (2)**
22:3,8
**portion (4)**
88:15;99:13;121:14,
17
**position (8)**
19:11;23:25;34:12;
57:14;58:18;92:3;
103:16;112:15
**possibility (2)**

27:7;75:4
**possible (3)**
31:16;34:15;81:3
**possibly (1)**
106:7
**post- (3)**
47:13;72:7;118:1
**post-confirmation (2)**
79:11;91:13
**posted (1)**
116:15
**post-petition (10)**
18:18;65:16,25;
67:10;68:6;97:13;
100:20;101:2;102:1;
122:19
**potential (3)**
64:19;84:22;85:1
**potentially (3)**
21:11;63:4;94:17
**Power (1)**
79:3
**practical (3)**
16:20;17:1;89:25
**practically (1)**
72:17
**practice (1)**
108:19
**pre (1)**
97:13
**pre- (2)**
17:25;45:21
**precedence (1)**
16:3
**precedent (6)**
36:19;41:10;57:14,
16;66:10;99:8
**preceding (1)**
77:13
**pre-certified (2)**
53:25;54:1
**precipitous (1)**
81:18
**precise (1)**
31:1
**precisely (3)**
76:9;91:3;94:9
**precondition (1)**
43:19
**pre-confirmation (1)**
76:2
**predicate (1)**
29:19
**prediction (1)**
68:11
**predominantly (1)**
50:25
**preliminarily (1)**
10:3
**preliminary (4)**
10:17;17:5;61:16;
109:7
**premise (2)**

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 145
of 152

39:13,15
**premised (2)**
39:14;84:19
**prepared (1)**
74:21;76:14
**pre-petition (8)**
17:15;18:17;23:15;
45:22;49:5;66:6;91:4;
92:22
**presentation (1)**
114:5
**preserve (1)**
21:25
**presiding (1)**
10:21
**pressed (1)**
104:23
**presumably (5)**
38:24;39:1;93:21,22;
118:11
**presume (1)**
108:2
**pretend (1)**
34:3
**pretty (6)**
33:1,8;51:21;70:16;
85:24;86:11
**preventing (1)**
70:8
**previous (1)**
123:23
**previously (2)**
91:10;122:23
**price (6)**
30:12,14;77:6,7;
88:7;90:9
**prima (1)**
111:15
**primary (1)**
17:10
**principal (5)**
106:7;108:20,21,24;
115:8
**principles (1)**
127:1
**prior (7)**
46:3;67:2;102:22,24;
109:20;120:20;127:23
**priority (5)**
25:1,5,11;28:5,8
**probably (5)**
55:16;63:4;112:1;
114:21;122:1
**problem (7)**
33:13;40:25;94:17;
96:3,4,5;131:5
**problems (4)**
59:17;127:2,3,5
**procedurally (2)**
56:14;115:10
**procedure (7)**
40:2;42:16,21;51:23;
76:16;95:10,15

**procedures (22)**
35:2,6,15;36:16,23;
37:2,25;39:24;40:1;
41:13;85:23;105:15,
25;110:15;117:22;
118:8;126:18,24;
127:8,16;128:3;130:9
**proceed (3)**
8:16;102:16;130:13
**proceeding (9)**
23:10;37:5;43:20;
65:6;86:7;90:22;109:4,
5;129:20
**proceedings (4)**
43:25;71:5,7;75:17
**process (15)**
16:1;19:21,23;21:15;
30:7;32:24;53:21;
54:12;76:2;84:2;91:20;
93:17;104:10;107:25;
111:1
**professionals (2)**
117:18,19
**progeny (1)**
23:4
**program (3)**
54:24;77:15;80:23
**progress (1)**
126:17
**promise (2)**
43:10;96:10
**promptly (2)**
96:10;118:21
**pronounced (1)**
90:22
**proof (14)**
13:22,22,24;17:14;
22:16;24:19;44:6;
45:19;55:23;72:20;
73:14;74:7;85:1;91:22
**proof-of-claim (1)**
16:15;30:7;93:17
**proofs (7)**
12:15;13:18,23;
53:20;64:20;73:12;
92:5
**proper (3)**
13:17;60:10;128:7
**properly (6)**
38:3;81:9,10,16,16;
83:25
**property (1)**
43:20
**propitious (1)**
61:21
**propose (1)**
105:13
**proposed (4)**
97:4;104:14,17;
109:10
**proposed-class (1)**
57:22
**proposing (1)**

96:6
**proposition (1)**
28:23
**propriety (1)**
17:15
**prosecute (1)**
86:5
**prospect (2)**
23:8;29:4
**prospective (1)**
40:6
**protect (1)**
103:17
**protected (4)**
37:12,19;38:2,5
**proves (1)**
76:24
**provide (7)**
27:2;32:20;33:4,9,9;
41:17;71:9
**provided (3)**
17:16;58:13;102:24
**provision (1)**
35:9
**PSLRA (2)**
92:19,22
**Public (9)**
8:21;32:11,11;38:22;
40:13;41:3;77:24;
107:12;118:10
**publication (10)**
33:5;34:16,19;43:17;
44:2;53:17;57:8;58:1,
9;91:19
**publicly (4)**
38:13;40:7;42:16;
92:6
**publishing (1)**
58:14
**pulling (1)**
119:13
**Pullo's (1)**
51:10
**purchase (1)**
11:9
**purchased (1)**
90:14
**purchasers (2)**
22:21;33:20;53:19;
90:12;92:7
**pure (1)**
25:17
**purpose (1)**
18:7
**purposes (11)**
11:18;12:16;19:14;
22:17;25:1,5,11,13;
56:22;91:11;114:22
**pursuant (2)**
18:19;121:16
**pursue (1)**
16:4
**pursued (1)**

79:12
**pushed (1)**
69:19
**pushing (1)**
60:4
**put (21)**
28:10;36:13;37:6;
52:8;56:8;72:7;76:4;
79:24;80:20,22;83:4;
95:3,4,12;101:1;
103:13;106:5;112:10;
127:24,24;129:13
**putative (5)**
14:12;30:8;46:24;
47:3;58:6
**puts (1)**
121:6
**putting (2)**
68:2;77:18

**Q**

**quantify (1)**
62:17
**quantity (1)**
34:17
**quarter (1)**
33:15
**questioner (1)**
10:19
**quick (1)**
114:12
**quickly (8)**
31:8,9,15;72:8;
75:15;76:16;99:9,10
**quite (3)**
29:21;69:19;87:23
**quote (3)**
32:18;43:19;91:18

**R**

**raise (3)**
96:19;98:19;121:19
**raised (10)**
74:23;84:16;90:23;
97:19;98:5,12,23;
104:5;117:3;126:19
**raising (1)**
120:10
**Rakoff (2)**
58:2,3
**Randy (1)**
9:6
**rare (3)**
38:6,7,7
**rate (1)**
77:16
**rather (4)**
11:1;80:12;109:18;
110:14
**re (1)**
49:4

**reach (3)**
35:1;68:13;74:24
**reached (3)**
40:18;94:7;100:1
**reaching (1)**
42:24
**read (12)**
11:17;17:7;36:8;
43:10;69:4,4;77:19;
91:18;104:22,24;
110:3;116:16
**reading (4)**
36:24;46:18;47:2;
116:13
**ready (1)**
117:23
**reality (3)**
16:5;40:11;42:18
**realization (1)**
83:17
**realize (4)**
16:7;18:22;68:7;
75:1
**really (22)**
11:5;21:24;23:1;
24:16;43:4;52:13;56:2,
13;60:20;62:15,16;
64:7;66:14,14;72:3,18;
86:3;90:7;91:12;99:2;
119:12,17
**reason (9)**
18:8;24:21;38:7;
41:10;65:12;103:6,13;
122:19,22
**reasonable (9)**
35:1;41:24;42:21;
50:11;95:7,8,17,17;
113:10
**reasonable-minimum (1)**
42:3
**reasonably (3)**
32:19;34:25;53:18
**reasoning (1)**
19:10
**reasons (5)**
60:6;69:18,20;82:10;
103:22
**Rebecca (1)**
126:13
**rebuttal (2)**
10:9;30:3
**recall (4)**
40:16;46:6;47:11;
109:15
**receive (5)**
32:3;42:20;56:6,8;
71:9
**received (3)**
57:25;58:8;72:6
**receiving (2)**
72:3;117:25
**recent (1)**
97:11

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 146
of 152

**recently (1)**
49:10
**Recess (1)**
131:8
**recognition (1)**
61:22
**recognize (1)**
81:2
**recognized (2)**
61:25;62:4
**recommendations (1)**
123:7
**reconcile (1)**
93:9
**reconciled (3)**
57:15,16;58:17
**reconsideration (3)**
100:15,15;128:16
**record (8)**
13:10;14:3;22:16;
33:19;40:1;50:1;51:11;
94:6
**records (6)**
49:17,21;51:1,2;
57:21;81:25
**recover (2)**
78:20;121:15
**recovery (5)**
26:1,1;30:20;74:15;
77:8
**reduced (2)**
48:5,8
**refer (2)**
42:22;108:9
**referred (2)**
43:18;85:22
**refile (3)**
129:12,13;130:6
**reflect (1)**
101:8
**reflected (2)**
77:5;80:25
**regard (1)**
32:9
**regular (1)**
119:10
**regulated (1)**
79:3
**rehash (1)**
99:2
**related (6)**
18:25;87:7;95:19;
120:19;122:21;127:8
**relates (1)**
92:2
**relatively (3)**
106:13,19;125:16
**relevance (2)**
70:25;72:11
**relevant (3)**
11:21;21:21;32:12
**reliance (1)**
81:22

**relied (1)**
46:6
**relief (2)**
23:2;72:19
**rely (2)**
33:5;54:5
**relying (1)**
47:7
**remained (1)**
77:3
**remaining (1)**
17:18
**remains (1)**
89:11
**remanded (1)**
95:21
**remarks (1)**
31:5
**remedied (1)**
96:5
**remedy (1)**
96:5
**remember (10)**
37:9;41:6,8;58:21;
59:23;60:17;70:6;98:3;
122:25;123:4
**remembering (1)**
65:21
**reminding (1)**
62:7
**renewed (1)**
127:23
**re-notice (1)**
29:4
**reopen (1)**
95:24
**reorganization (1)**
43:25
**reorganized (3)**
84:24;88:7;89:20
**repeat (2)**
65:16;93:12
**repeatedly (1)**
126:19
**reply (3)**
21:22;30:6;40:4
**report (1)**
119:9
**reporter (2)**
31:9,11
**represent (2)**
11:25;63:13
**representation (1)**
21:15
**representative (1)**
66:2
**representatives (6)**
59:11,12;91:21,25;
106:24;120:24
**represented (3)**
59:13;79:10;126:21
**representing (1)**
10:23

**reputation (1)**
16:23
**request (2)**
100:22;127:25
**requested (1)**
23:2
**require (1)**
114:23
**required (3)**
57:11;64:7;85:6
**requirement (2)**
80:8;115:8
**requirements (2)**
53:21;114:13
**requires (2)**
82:22;95:15
**requisite (2)**
117:17,18
**reserve (6)**
10:6;27:16;43:3;
44:22;102:18;103:10
**reserved (1)**
62:17
**reserving (1)**
120:13
**resolution (4)**
40:18;97:13;117:20,
22
**resolve (2)**
91:12;104:8
**resolved (5)**
15:14;22:2;25:19;
100:19,21;122:22
**respect (20)**
16:1;26:25;30:8;
32:17;38:10;41:22;
42:12;87:8,10;88:19;
91:3,16;92:5;100:5,16,
20;101:25;104:5;
107:11;119:12
**respond (3)**
94:23;97:7;115:25
**response (1)**
11:2
**responsible (1)**
121:16
**restructuring (5)**
79:17,23;99:25;
100:4;101:21
**result (2)**
78:23;83:14
**resume (4)**
96:22;116:5;120:5;
131:7
**Retirement (1)**
8:22
**return (1)**
63:18
**reversed (2)**
68:6;95:21
**review (3)**
100:25;110:6;127:7
**revised (1)**

**101:8**
**revisit (1)**
130:3
**Richard (1)**
45:11
**Richardson (46)**
45:4;50:17;70:20,21,
22,23;71:4,25;72:2,11,
20;73:1,8,20,21,25;
74:4,9,17;75:2,4,13,15,
25;76:3,6,14,20,23;
77:18,20;78:8;81:11,
14,21;82:1,14,16,22;
83:2,4,6,13,20;84:7;
88:13
**rid (1)**
21:8
**right (100)**
8:16,23;11:7,13,15;
12:6;14:19;15:4,12;
16:13,18;17:13,20;
22:9;25:8,15;26:2,4;
28:11,11;31:25;34:8;
35:19,25;38:17;40:22;
41:25;42:5;43:5,7;
44:24;49:18;52:6,7,22;
53:1,9;54:14;55:8;
57:1;59:10;60:10,22;
62:9,10,15;63:6,9,12,
16,23;64:3;65:18,20;
66:25;69:23,25;70:17,
19;74:3;75:14;77:17;
78:7;79:17;80:12;
82:15;84:6;86:22;
87:25;92:11;96:7;98:3;
99:21;100:8;101:19;
102:16,23;103:2,5,7,
10,24;110:18;113:3;
114:18;115:12;118:4,
22;120:13,16;121:1,8,
23;122:5;123:3,17;
124:10;125:3;126:5;
128:20
**rights (2)**
68:16;90:1
**rigid (2)**
10:15;18:4
**rings (1)**
56:4
**risk (5)**
68:23;69:9,11;81:3,
24
**risks (1)**
102:11
**road (2)**
20:25;81:4
**robust (4)**
49:4;59:6;66:7;
85:20
**robustness (1)**
58:19
**room (5)**
38:24;52:20;106:17;

101:8

111:11;116:13
**Rosa (1)**
44:8
**Rose (1)**
126:14
**rowing (1)**
119:11
**RSA (18)**
69:10;71:8,12;100:6,
17,17,25;105:10;
117:19;118:12;128:9,
11,13;129:8,15;130:1,
1;131:1
**RSAs (4)**
118:11;127:23;
128:6;130:4
**rubric (1)**
32:25
**Rule (27)**
8:10,17;15:14,15;
16:11;17:12;18:7;
21:19;22:24;24:22;
25:17;26:25;64:8,17;
70:25;82:2,17,20,20,
20,22;95:14,22;102:9;
108:6;114:16;123:24
**ruled (5)**
102:25;103:3,3,11,
15
**Rules (7)**
21:23;36:16;69:15;
108:6,7;110:15;130:18
**ruling (17)**
20:8;47:11,12,13;
61:16;65:14,18,23;
83:23;93:17;103:17;
122:18,23;123:22;
125:13,14;130:3
**run (1)**
44:3
**running (2)**
10:13;129:25
**rush (1)**
25:14

**S**

**safari (1)**
55:22
**sailing (1)**
55:19
**sake (1)**
89:10
**sale (1)**
11:9
**same (20)**
32:9;39:24;40:6;
45:23;46:7;58:12;60:5;
61:1,2;72:14,14,15;
79:15;83:8;98:18;
106:25;108:16;112:9;
119:11;128:15
**SAN (5)**

Min-U-Script®
Case: 19-30088   Doc# 5562   Filed: 01/30/20   Entered: 01/30/20 12:12:19   Page 147
of 152

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(15) recently - SAN

8:1;44:7;97:24;98:4,
4
**Sandler (1)**
8:21
**Santa (1)**
44:8
**satisfied (2)**
112:8;119:5
**satisfies (1)**
123:25
**satisfy (5)**
47:8;87:14;91:20;
111:25;119:1
**save (2)**
17:18;102:1
**saw (1)**
127:22
**saying (7)**
36:12;37:1;54:20;
68:5;80:22;81:11;
105:3
**scale (1)**
103:10
**schedule (6)**
97:22;113:10,25;
114:9;116:5;126:24
**scheduled (2)**
26:10;33:16
**scheduling (9)**
25:13;96:13;109:4,
11;113:4;114:22,24;
121:2,11
**Schrag (1)**
33:14
**Schwab (6)**
52:3,5,6,15;94:3;
95:10
**scope (3)**
39:23;125:15;130:24
**scream (1)**
27:23
**Seas (1)**
42:8
**seated (1)**
8:7
**seats (2)**
9:19,20
**second (4)**
21:9;34:14;64:6;
68:20
**seconds (3)**
34:13;43:9,13
**Section (2)**
38:9;111:12
**securities (32)**
13:4;21:7;23:15;
24:1;25:17;27:9;33:19,
21;35:3,3,14;36:4,22;
37:6,16;38:3;41:15;
49:19;53:8,15;59:11;
65:4;72:12;73:9;76:23;
77:9;79:16;80:3,8;
91:20;92:18;95:14

**securities- (1)**
38:8
**securities-fraud (2)**
12:15;90:13
**securities-litigation (1)**
23:16
**security (1)**
11:9
**seeing (2)**
57:8;118:19
**seeking (6)**
37:6;48:4;74:7;86:3;
99:25;105:14
**seem (4)**
21:16;24:23,25;92:3
**seems (4)**
12:19;56:21;117:1;
131:1
**sees (1)**
95:4
**segue (1)**
35:23
**sell (1)**
79:6
**Semtech (4)**
76:24;77:1;78:13;
81:5
**Senate (1)**
10:14
**senators (1)**
10:22
**send (7)**
35:11,13;52:12,15;
56:17;57:4;94:8
**sending (3)**
36:3;63:24;123:16
**senior (4)**
67:7;98:1,10;100:1
**sense (4)**
11:7;16:20;47:19;
60:14
**sent (7)**
46:20,22;51:8,10,11;
94:7;116:15
**separate (11)**
29:23;78:11,24;80:9,
17;82:24;84:1;91:7;
126:25;130:5,6
**separately (1)**
79:22
**sequence (1)**
107:5
**serious (2)**
127:3,4
**seriously (1)**
116:15
**serve (3)**
38:3,14;52:5
**served (3)**
44:13;46:3;50:2
**service (1)**
19:5
**sessions (1)**

120:7
**set (12)**
21:21;22:15;35:6;
70:3;100:2;102:18;
105:25;115:1;121:10;
126:23;128:8;130:4
**sets (1)**
63:3
**setting (3)**
105:6,16;114:12
**settled (1)**
27:13
**settlement (7)**
15:14;25:25;35:8;
67:7;86:13;101:11;
103:25
**settlements (2)**
35:8;40:9
**seven-year (1)**
57:23
**several (6)**
27:9;28:22;39:21;
85:5;104:18;118:10
**share (5)**
30:14,18;45:1;64:21;
90:15
**shareholder (4)**
34:5,6;49:11;82:5
**shareholders (11)**
40:8;54:6;78:9,22;
79:15,22,25;80:16;
81:2,6;107:12
**shares (13)**
22:14,18;32:10;52:2,
4;79:25;80:3,3;81:19;
87:13;88:13,14;95:11
**sharing (1)**
45:2
**shift (1)**
16:24
**short (3)**
96:23;122:13,15
**shortened (2)**
129:19;130:24
**shortly (2)**
45:25;86:15
**shot (1)**
128:6
**show (5)**
80:9,16;111:9;112:3,
10
**showed (1)**
39:7
**shown (1)**
78:14
**shows (1)**
39:5
**sic (10)**
23:20;27:11;29:21;
39:7;46:18;53:19;
56:24;59:2;86:24;87:1
**side (11)**
9:20;13:7;29:17;

41:1;44:23;45:2;55:2;
60:9,22;68:9;115:4
**sides (1)**
40:25
**side's (1)**
92:25
**sign (1)**
124:6
**signed (1)**
71:20
**significant (4)**
27:4,5;61:21;91:14
**signing (1)**
89:25
**similar (1)**
78:25
**simple (7)**
34:1;59:25;91:15;
103:7;106:13,19;110:9
**simplified (2)**
99:13;117:6
**simply (3)**
41:16;78:23;128:4
**single (3)**
13:15;47:4;80:6
**sit (1)**
68:24
**site (1)**
53:22
**situation (3)**
14:22;45:17;49:19
**situations (1)**
82:3
**six (3)**
47:6;50:13;83:7
**six-and-a-half (1)**
33:12
**six-month (1)**
46:4
**Slack (99)**
44:24,25;45:4,6,8,10,
11,11,16;46:17;47:18;
48:2,10,12,15,17,21,
24;49:1,12,14,19,24;
50:1,5,7,14,19,22;51:8,
10;52:1,7,18,22,25;
53:2,10;54:15,19,22;
55:9,12,21;56:23;
58:24;59:4,17,19;
60:11,13,19;61:3,6,8,
12;62:9,11,13,19,24;
63:2,9,12,14,20,23;
64:1,3,5,11;65:19,22;
66:1,4,18,20,23;67:1,
12,16,20;68:1,20,22;
69:13,25;70:2,6,16,18,
19;71:1;85:9,15;91:17;
94:22,25;95:20
**slice (1)**
88:22;89:1;90:3
**smaller (2)**
58:6;121:17
**smooth (1)**

101:22
**so-called (1)**
98:2
**sold (5)**
19:4,4;32:10,12;83:8
**solely (1)**
82:6
**solicit (1)**
107:20
**solicitation (2)**
105:15;107:7
**solicited (1)**
23:6
**solution (1)**
29:4
**solve (1)**
131:5
**solved (1)**
94:17
**solvency (2)**
39:14;40:14
**solvent (1)**
41:3
**somebody (16)**
15:22;32:10;41:1;
43:25;44:5,13;49:9;
50:12;51:20;55:21;
67:18;88:23;95:4;
119:1,4;123:1
**someone (4)**
45:1;49:10;56:19;
115:4
**someone's (1)**
68:3
**sometimes (2)**
26:4;66:24
**somewhat (1)**
18:10
**somewhere (1)**
9:23
**soon (1)**
118:12
**so-ordered (1)**
18:20
**sorry (5)**
51:3;69:23;96:18;
120:6;128:2;129:4
**sort (4)**
20:20;33:22;97:7;
117:14
**sought (2)**
45:19;86:10
**sound (1)**
87:25
**sounds (3)**
70:14;87:25;88:17
**South (2)**
42:8;98:4
**Southern (2)**
23:5;57:19
**speak (6)**
13:15;14:10,12;31:8,
15;78:4

Case: 19-30088   Doc# 5562   Filed: 01/30/20   Entered: 01/30/20 12:12:19   Page 148
of 152

**SPEAKER (2)**
9:15;107:2
**speaking (2)**
72:17;125:16
**special (2)**
121:10,11
**specialize (2)**
35:23;41:15
**specializes (1)**
36:3
**specific (2)**
33:19;115:4
**specifically (4)**
13:14;53:14;55:13;
112:6
**speculate (2)**
42:14;114:2
**spend (2)**
43:7,12
**spent (2)**
13:6,7
**spilled (1)**
31:21
**split (2)**
10:4;45:8
**spoke (2)**
95:10;98:7
**squeeze (4)**
9:21;129:15;131:1,3
**Stafford (1)**
121:16
**stage (4)**
28:9;67:22;69:3;
84:2
**stake (1)**
28:4
**stand (4)**
37:21;42:13,18;
112:16
**standard (3)**
51:23;61:18,19
**standing (2)**
24:10;120:3
**standpoint (6)**
16:5;39:17;40:10;
44:19;84:23,24
**stands (1)**
96:9
**start (6)**
39:4;45:13;70:24;
76:8;96:22;115:4
**starts (1)**
51:17
**state (9)**
13:14;36:18;77:16;
98:22;105:1;109:16;
119:23;121:7,18
**stated (2)**
73:1;103:22
**statement (32)**

23:5;56:14;67:8;
71:17;80:22;94:4;
96:25;97:18;99:3,13,
14,15;104:15;105:14,
15,25;106:9;107:7;
109:6,14;110:24;
111:8,18;113:12,14,17;
117:24;120:12;122:1;
126:25;127:1,11
**statements (5)**
77:4;82:12;106:17;
117:16;118:14
**States (2)**
10:14;24:18
**status (6)**
8:11;86:3,10;97:1;
108:20;115:6
**statute (1)**
111:15
**statute-of-limitations (1)**
19:14
**statutory (1)**
121:15
**stay (11)**
16:13,14;37:11,12,
19;38:2,5;72:19;91:5;
92:19,22
**stayed (1)**
21:7
**stem (1)**
83:16
**step (3)**
43:15;95:7;124:21
**steps (3)**
37:3;91:21;95:5
**Steven (1)**
84:14
**stick (2)**
29:18;116:5
**still (23)**
19:23;21:8;28:25;
32:1;37:18,18;39:9,15;
41:18;56:10,11;58:9;
71:19;72:18;73:18,18;
96:4,5;112:2;118:25;
123:10;125:15;130:20
**stipulated (1)**
40:19
**stipulation (2)**
18:19;119:3
**stock (43)**
19:4;30:13;39:9;
52:16,20;60:25;71:10,
14,16,22;72:6;77:2,6,7;
78:15;79:8;80:12,19,
24;81:22;82:4,11;83:7,
9;87:11,12,13;88:7;
89:9,10,13,14,19,21;
90:3,9,9,12,14;94:6;
99:7;117:2,4
**stockbroker (1)**
52:21
**stonewalled (1)**

126:22
**stop (3)**
93:2;129:24,24
**story (1)**
116:20
**straight (2)**
116:7,20
**streamline (1)**
107:19
**street (5)**
41:4;51:24;55:16;
58:16;79:5
**strength (1)**
94:16
**stressed (1)**
114:19
**stretch (1)**
94:12
**structure (1)**
98:23
**struggling (1)**
21:10
**studied (1)**
66:12
**stuff (2)**
16:24;109:19
**styled (1)**
80:7
**subject (11)**
14:21;64:23;92:19;
97:19;100:3;103:23;
105:8;106:25;108:18;
123:7;125:3
**submission (2)**
110:16;111:19
**submissions (1)**
114:13
**submit (3)**
18:16;97:5;125:8
**submitted (2)**
36:5;96:9
**submitting (1)**
112:13
**subordinated (10)**
23:18,20;30:20;38:9;
48:9,10,11,12;74:11;
89:18
**subrogation (3)**
33:16;100:17;130:4
**subsection (1)**
38:4
**subsequent (1)**
111:19
**subset (3)**
20:20;46:23;47:3
**substantially (2)**
85:1;106:16
**successful (1)**
85:6
**sue (1)**
73:4
**sufficient (4)**
55:25;93:18;107:16;

127:1
**suggest (3)**
45:24;51:15;105:24
**suggested (1)**
104:20
**suggesting (3)**
35:12;60:15;110:10
**suggestion (2)**
114:15;123:23
**suits (1)**
125:24
**sum (1)**
61:19
**summary (2)**
108:9;114:6
**summer (1)**
118:20
**Super (1)**
115:18
**superior (1)**
30:7
**supplemental (1)**
13:8
**support (6)**
99:25;100:4;101:17,
21;111:22;112:13
**Suppose (2)**
73:16;75:21
**supposed (5)**
35:20;36:21;121:21,
22;123:16
**Supreme (1)**
19:12
**Sure (28)**
9:1;34:2;36:9;38:23;
39:16;42:1;68:14;
71:21;84:12;92:13;
97:10,11;99:4,11,19;
105:4;106:21;107:6,
15;109:8;110:9;
111:13;115:7,24;
118:25;119:4;125:1;
128:23
**surprises (1)**
121:19
**survivors (5)**
12:21;24:24;60:2,8,
25
**suspect (1)**
15:5
**suspend (1)**
100:15
**suspended (1)**
100:18
**sustained (1)**
30:16
**System (1)**
8:22

**T**

**table (2)**
96:7;111:14

127:1

**suggest (3)**
45:24;51:15;105:24

**tainted (1)**
65:16
**talk (19)**
10:22;17:24;19:3;
22:23;27:3;31:19;32:4;
33:6,12;34:21;40:4;
47:21;57:17;66:16;
67:21;98:25;108:24;
115:3;127:13
**talked (9)**
10:6;19:2;26:8;29:7;
56:2,18;57:4,13;61:19
**talking (15)**
11:4;13:16;24:10;
51:17;52:13;59:24;
60:1,1;62:24,25;63:2;
65:4;98:5;121:13;
127:16
**target (2)**
97:22;127:10
**targeted (1)**
44:2
**targets (1)**
97:16
**TCC (23)**
11:3;18:3,6,10,12;
21:16;45:2,6;57:5;
58:24,25;59:13;70:23;
71:8;87:20;88:8;99:4;
106:24;110:4;117:17,
19;118:11;130:4
**TCC's (6)**
29:22;79:11;87:8;
88:3,5;127:16
**team (1)**
116:16
**technically (1)**
74:11
**teed (1)**
97:14
**teeing (1)**
125:17
**telecom (2)**
79:7,7
**telephone (1)**
106:18
**telling (3)**
36:19;51:19;81:23
**temporarily (1)**
63:20
**ten (8)**
10:7;30:25;44:22;
45:8;52:2,4;84:8;97:3
**tens (4)**
40:5;42:19;99:14;
107:11
**tentative (10)**
29:11;47:12,12;49:2,
3;65:14,18,22;91:5;
93:17
**term (1)**
114:22
**terminated (1)**

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 149
of 152

45:19
**termination (1)**
47:4
**terms (16)**
18:21;25:2,6,6;34:1;
45:23;48:17;59:6;
65:14;92:22;100:23;
103:7;105:10;109:14;
115:11;121:2
**terribly (1)**
85:9
**test (5)**
42:3;56:24,25;57:1,
11
**testimony (1)**
57:5
**Thanks (1)**
70:19
**that'll (2)**
40:22;53:4
**theoretically (1)**
45:23;49:17
**therefore (10)**
12:21;13:11,18;47:6;
73:16;75:11;76:8;77:6;
83:20;86:2
**there're (1)**
55:4
**thinking (1)**
108:3
**third (7)**
18:21;50:9;65:1;
72:14;74:2;77:12;
78:19
**thirteen (1)**
117:17
**thirty (5)**
34:13;43:9,13;45:8;
55:18
**though (10)**
28:16;33:22;49:1;
54:23;55:15;66:4,14;
74:11;102:23;120:16
**thought (4)**
59:17;73:17;103:9;
126:20
**thousand (1)**
33:17
**thousands (8)**
20:6;21:25;40:5;
42:19;60:12;99:14;
107:11;119:6
**three (12)**
17:10;18:13;55:14,
22;57:24;58:15;65:1;
66:24;77:23;98:18;
130:14,15
**threshold (2)**
17:12;26:24
**threw (1)**
57:7
**throughout (1)**
69:16

**throwing (1)**
56:24
**thus (1)**
53:20
**ticket (1)**
67:10
**ticking (1)**
66:17
**tight (1)**
131:3
**timely (4)**
13:13;23:14;86:17;
108:1
**timely-filed (1)**
17:14
**times (5)**
27:9;55:17;58:15;
130:14,15
**timetable (7)**
10:15;68:12;104:14,
17,21;105:5,6
**timing (12)**
9:25;10:11;18:21;
21:17;22:23;23:13;
61:20;64:1,3;65:11;
71:5;86:21
**today (23)**
9:2;11:21;12:16;
13:5,15;14:11;16:8;
19:6;20:20;31:23;
42:18;73:2;76:1;85:23;
86:2,7,13;105:7;
112:25;127:19,24;
128:1;130:21
**today's (6)**
11:18;12:23;55:7;
56:22;69:24;99:20
**to-do (2)**
97:7;99:1
**together (2)**
36:13;117:25
**told (8)**
43:1;76:23;80:14;
81:25;82:6;113:11;
115:5;128:9
**tolled (1)**
19:14
**tolling (2)**
19:12;29:1
**took (4)**
19:11;37:3;109:19,
19
**top (2)**
23:10;108:13
**tort (5)**
78:16;100:16;
107:17;116:10;117:18
**total (1)**
89:22
**totally (1)**
90:7
**touch (3)**
22:13;79:1,2

**touched (1)**
21:25
**touchstone (1)**
34:23
**tough-enough (1)**
10:23
**touts (1)**
40:3
**toward (3)**
101:22;106:20;
118:15
**town (1)**
52:3
**toxic-tort (1)**
21:4
**track (2)**
24:22;104:12
**trade (4)**
97:12;101:24;122:9,
10
**traded (6)**
22:14,18;38:13;40:7;
42:16;92:6
**trading (1)**
39:9
**traditional (2)**
16:11;101:11
**trained (1)**
110:11
**transaction (1)**
79:19
**transactions (1)**
78:4
**transcripts (1)**
116:13
**translate (1)**
25:11
**translates (1)**
25:14
**treat (1)**
103:14
**treated (2)**
39:2;60:2
**treatment (8)**
23:19;57:18;69:6;
93:1;100:19;101:5,9;
105:11
**trial (1)**
109:3
**trick (2)**
119:3;124:7
**tried (3)**
106:19,19;130:15
**Troy (1)**
109:17
**true (9)**
32:15,22,23;34:14;
56:4;65:20;79:20;
82:13;99:4
**truly (1)**
32:5
**trust (27)**
71:9;72:3,6;75:16;

78:21;79:11,13;88:15,
16,16;98:23,23,24;
110:2;117:4,20;
118:20;120:10,19;
121:7;126:17,18;
127:2,7,8,16,16
**trustee (4)**
79:12;110:15;117:5;
118:20
**try (7)**
9:21;33:5;37:23;
73:19;86:12;111:8;
117:3
**trying (15)**
10:6;16:24;37:11;
60:5;68:12;86:21;
108:14,14;113:21;
128:2;129:14;130:12,
17;131:1,6
**Tsekerides (1)**
27:8
**Tubbs (2)**
96:22;120:4
**Tuesday (1)**
129:17
**tune (1)**
85:5
**tunnel (1)**
118:19
**turn (6)**
68:17,20;78:18;79:6;
99:17;102:5
**TV (1)**
57:8
**twelve (1)**
84:19
**twenty (5)**
76:12;88:11,11,12,
25
**twenty- (1)**
88:10
**two (31)**
20:4;22:25;23:11;
25:18;32:21;37:4;46:1;
54:7;55:9,12;57:17;
61:18;62:3;63:3,10,16;
64:13;65:1;66:24;
69:22,24;76:11;80:25;
84:16;86:9;102:11;
115:17,20;123:5;
122:22;128:6
**two-and-a-half (1)**
130:22
**two-month (3)**
70:12,13,13
**type (1)**
76:15
**types (1)**
15:8
**typically (5)**
38:8,12,14;64:13;
78:2

**U**

**ultimate (1)**
112:14
**ultimately (2)**
15:10;27:11
**Um (1)**
105:22
**unaddressed (1)**
94:24
**unaffected (1)**
89:23
**unchanged (1)**
128:11
**unclear (1)**
13:20
**under (20)**
15:14;30:9;32:25;
33:15;38:9;40:6;41:25;
45:23;53:16,17;72:3;
74:11;75:14;77:9;
78:10;79:16;88:12;
89:15;118:11;123:24
**underlying (1)**
9:11
**understood (6)**
14:4;31:3;32:2;
37:13;60:13;129:12
**undertake (1)**
95:8
**undertaking (1)**
107:13
**undisclosed (2)**
77:2,4
**undisputed (1)**
58:3
**undue (1)**
22:25
**UNIDENTIFIED (2)**
9:15;107:2
**UNISON (1)**
8:6
**United (1)**
10:14
**unknown (1)**
30:20
**unless (10)**
12:19;15:2;16:3;
19:9,20;43:3;80:16;
90:1;119:15;123:12
**unlike (1)**
21:1
**unlikely (1)**
16:6
**unliquidated (1)**
75:23
**unopened (1)**
60:5
**unrelated (1)**
97:23
**unresolved (1)**
91:13

Min-U-Script®
Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 150
of 152
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(18) termination - unresolved

**up (44)**
17:8;24:10;28:6,14,
19;39:5;60:24;61:12;
65:13;66:22;67:20;
75:8,16;79:8;84:17,18;
85:1;86:12,14,19;
90:10,18;92:12;95:25;
96:1;97:5,14;107:19,
25;108:2;112:16;
114:23;120:3,20,24;
123:8,16,18;125:6,6,
17;127:18;129:20;
130:19
**update (2)**
99:18;119:17
**upon (8)**
16:19;21:25;23:13;
47:13;76:11;90:14;
92:3;100:8
**uprooted (1)**
61:23
**upset (1)**
84:2
**use (5)**
17:6;28:16;35:24;
38:1;114:22
**used (7)**
35:2,7;37:2;39:24;
40:2;55:18;95:14
**usually (1)**
38:16
**utility (2)**
79:3,6
**utilized (2)**
22:17;28:23

**V**

**vacuum (1)**
18:10
**Valley (1)**
98:3
**valuable (1)**
78:21
**valuation (2)**
65:8;88:6
**value (20)**
47:24;65:3;71:18;
72:2;74:12;79:25;
80:19;87:11,12,21;
88:2,8,19,22;89:9,11,
11,12,13,19
**values (1)**
61:1
**variety (2)**
77:13;90:13
**various (3)**
33:3;98:22;117:15
**vegetation (2)**
77:14,15;80:23
**vendors (1)**
33:16
**version (2)**

97:17;102:17
**versus (3)**
13:5;110:16,16
**vet (1)**
30:19
**vetted (2)**
65:14;126:25
**victim (8)**
71:9;75:16;78:5,6,
21;89:1;118:18;121:7
**victims (12)**
44:3;59:13,23;71:15,
18,22;88:20;89:4,11,
19;116:25;121:13
**victim's (1)**
88:15
**view (10)**
33:24;47:15;49:9;
69:16;94:25;103:21,
25;106:8;107:11;
125:17
**Villegas (1)**
9:12
**violation (1)**
119:1
**violations (2)**
80:2,15
**virtue (1)**
90:18
**voice (1)**
112:14
**vote (16)**
63:17,17,18;67:2;
68:4;69:1;71:18,19;
79:17,21,22;107:9,16;
111:24,24;119:8
**votes (4)**
23:6;107:20;108:1,3
**voting (7)**
48:3;63:21;91:11;
105:25;107:11;108:15;
110:7

**W**

**wage (1)**
93:19
**wait (1)**
86:12
**waited (2)**
62:2;86:9
**walked (1)**
91:6
**Wall (3)**
55:16;58:16;79:5
**Walter (1)**
36:5
**Walter's (1)**
51:16
**wants (4)**
29:17;116:1;122:16;
130:20
**watch (1)**

8:18
**Water (1)**
120:20
**waterfall (1)**
23:20
**wave (1)**
96:2
**way (34)**
11:6;13:10;21:2;
23:24;31:15;37:20,23;
47:24;49:14;52:20;
56:18;60:2;62:20;63:6;
67:15;73:19;78:9;83:4;
93:7;99:18,19;102:16,
19;103:11;106:1;
107:17;111:9;112:6;
114:21;115:21;120:2;
123:4;125:9;127:12
**ways (6)**
63:20,21;64:10;
116:24;123:5;124:14
**website (4)**
40:3;108:12;116:17,
17
**WEDNESDAY (1)**
8:1
**week (3)**
67:7;105:10;127:10
**weeks (3)**
23:11;37:4;126:22
**weight (1)**
18:12
**Weil (1)**
84:14
**weren't (15)**
37:12;39:18;44:8;
50:16,18;59:20;60:16;
61:5;67:6;73:11;81:10,
11;83:9;120:19;129:21
**whack-a-mole (1)**
117:14
**what's (10)**
41:2;53:23;55:6;
60:9;65:9;68:8;99:7;
111:4;122:13;124:21
**wherever (1)**
54:13
**whole (12)**
23:23;49:20;50:12;
59:1;67:9;86:7;100:18;
101:5;112:7;122:20,
21;125:13
**who's (5)**
8:17,18;32:5;97:20;
110:14
**whose (3)**
47:4;58:7;86:23
**Williams (1)**
79:12
**willing (1)**
102:4
**window (1)**
32:10

**Winthrop (8)**
126:2,3,12,13,14;
127:7,13,20
**wish (2)**
17:6;114:3;124:24;
128:9
**withdraw (5)**
100:9,11,12,14,21
**withhold (1)**
122:23
**withholding (1)**
122:20
**within (2)**
101:23;107:7
**without (4)**
13:1,3;18:4;94:13
**wonderful (1)**
35:23
**woodwork (1)**
23:9
**words (6)**
13:14;36:18;38:2;
56:14;58:25;66:8
**work (7)**
24:17;87:8;109:22;
110:13;112:19;115:10,
23
**working (6)**
107:17,24;110:4;
114:25;117:19;118:3
**works (12)**
28:15,19;50:6;84:17,
18;85:2;86:12,14,19;
95:25;96:1;114:16
**world (12)**
33:5,18,22;34:24;
37:25;42:13;50:3;51:7,
24,24;63:10;95:4
**worry (1)**
98:2
**worth (7)**
62:21;67:24;68:23;
71:14;72:5;90:18;
104:17
**worthless (1)**
79:9
**wrap (1)**
92:12
**write (1)**
66:5
**writing (2)**
99:6,6
**wrong (5)**
60:4;62:15;70:21;
95:2,2
**wrongdoing (1)**
93:18
**wrote (1)**
66:9

**X**

**XYZ (1)**

52:16

**Y**

**year (4)**
69:6;77:23;99:20,23
**years (8)**
13:16;15:24;28:22;
49:10;55:18;57:24;
66:24;77:3
**Yep (2)**
35:6;52:18
**yesterday (2)**
128:17;129:16
**yield (1)**
30:22
**York (3)**
19:11;55:16;58:15

**Z**

**Zeiss (1)**
9:14
**zero (1)**
76:10

**1**

**1 (8)**
17:19;39:25;46:4;
47:5;58:6;69:14,17;
120:21
**1:30 (6)**
96:14;120:4;128:8;
130:19;131:7,8
**10 (1)**
89:10
**105 (3)**
24:13;26:8;27:8
**1054 (11)**
23:22;24:24;71:23;
101:23;111:10,13,25;
112:10,15;118:17;
119:2
**10b (1)**
39:7
**10th (1)**
113:14
**11 (8)**
8:11;30:9;38:13;
79:2,8;86:17;96:13;
100:6
**1129 (2)**
111:12;114:13
**1141 (1)**
19:21
**117 (1)**
77:22
**11th (3)**
105:20;106:1;107:8
**12:20 (1)**
96:13
**12:29 (1)**

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 151
of 152

131:8
**12:30 (1)**
120:3
**15th (4)**
62:5;107:9;108:16;
113:12
**16 (1)**
53:13
**17 (1)**
53:13
**170 (1)**
63:22
**1982 (1)**
92:4
**1st (1)**
33:20

## 2

**2:30 (1)**
127:19
**20 (1)**
87:11
**20.9 (5)**
71:9;87:11;88:8;
89:12,22
**2001 (2)**
57:23;58:8
**2004 (3)**
57:24;58:6,8
**2008 (1)**
57:23
**2016 (3)**
19:4;32:12;45:20
**2017 (2)**
46:4;47:5
**2018 (2)**
19:4;32:12
**2019 (4)**
32:14;47:5;62:2;
70:9
**2020 (4)**
8:1;62:5;104:13;
107:9
**20th (1)**
113:17
**21 (1)**
69:22
**23 (8)**
15:15;16:11;24:22;
25:17;64:8,17;70:25;
114:17
**239 (1)**
58:11
**23c1B (1)**
95:15
**28 (1)**
47:5
**28th (1)**
128:7
**29 (1)**
8:1
**29th (1)**

128:8
**2X (2)**
88:11,12

## 3

**3.3 (1)**
121:14
**30 (4)**
58:8;104:13;122:24;
123:21
**30th (2)**
101:23;131:5
**3rd (1)**
129:1

## 4

**441 (1)**
58:11
**4th (13)**
100:3;115:1,22;
125:4,5,6,22,25;
127:13,19;128:21,24;
129:1

## 5

**500-page (1)**
99:15
**502 (1)**
75:14
**510b (14)**
11:7,11,14;12:20;
23:18,22;38:10;39:2;
47:20,21;48:6;62:18;
73:6;74:12
**510b-related (1)**
47:16
**54b (4)**
102:5;123:6,24;
124:12

## 6

**6.2 (1)**
33:13
**6.75 (1)**
89:20
**6th (1)**
26:10

## 7

**7 (1)**
79:1
**70,000 (1)**
119:13
**7023 (13)**
8:10,17;15:15;17:12;
18:7;21:17,19;22:24;
26:25;28:9;46:1;69:13;
95:22

**7th (2)**
105:13;127:11

## 8

**8 (1)**
79:1

## 9

**9 (1)**
51:17
**9019 (1)**
101:11
**96 (1)**
77:22

Min-U-Script®

Case: 19-30088    Doc# 5562    Filed: 01/30/20    Entered: 01/30/20 12:12:19    Page 152
of 152

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(20) 12:30 - 96