UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

-oOo-

| | |
|---|---|
| In Re: | ) Case No. 19-30088 |
| | ) Chapter 11 |
| PG&E CORPORATION AND PACIFIC | ) |
| GAS AND ELECTRIC COMPANY | ) San Francisco, California |
| | ) Wednesday, January 29, 2020 |
| Debtors. | ) 1:30 PM |
| _____ | ) |

DEBTORS' MOTION PURSUANT TO 11 U.S.C. SECTIONS 363(B) AND 105(A) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO SETTLE THE CLAIMS OF TUBBS PREFERENCE CLAIMANTS AND (II) GRANTING RELATED RELIEF (THE "TUBBS SETTLEMENT MOTIONS") [5282];

STATUS CONFERENCE REGARDING CONFIRMATION.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtors: | STEPHEN KAROTKIN, ESQ. |
| | Weil, Gotshal & Manges LLP |
| | 767 Fifth Avenue |
| | New York, NY 10153 |
| | (212)310-8000 |
| | |
| For the Debtors: | GEORGE E. ZOBITZ, ESQ. |
| | (Telephonically) |
| | Cravath, Swaine & Moore LLP |
| | 825 Eighth Avenue |
| | New York, NY 10019 |
| | (212)474-1996 |

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Official Creditors'      GREGORY A. BRAY, ESQ.
     Committee:                   Milbank, LLP
 2                                2029 Century Park East
                                  33rd Floor
 3                                Los Angeles, CA 90067
                                  (424)386-4000
 4
     For Official Committee of    CECILY A. DUMAS, ESQ.
 5   Tort Claimants:              Baker & Hostetler LLP
                                  600 Montgomery Street
 6                                Suite 3100
                                  San Francisco, CA 94111
 7                                (415)659-2600

 8   For United States           MATTHEW J. TROY, ESQ.
     Department of Justice:       (Telephonically)
 9                                Civil Division
                                  PO Box 875
10                                Ben Franklin Station
                                  Washington, DC 20044
11                                (202)514-9038

12   For Objecting Camp Fire      RAFEY S. BALABANIAN, ESQ.
     Claimants:                   Edelson PC
13                                123 Townsend Street
                                  Suite 100
14                                San Francisco, CA 94107
                                  (415)234-5342
15
     For Valley Clean Energy      MARK GORTON, ESQ.
16   Alliance:                    Boutin Jones Inc.
                                  555 Capitol Mall
17                                15th Floor
                                  Sacramento, CA 95814
18                                (916)321-4444

19   For JPMorgan Chase:          EREZ E. GILAD, ESQ.
                                  (Telephonically)
20                                KRISTOPHER M. HANSEN, ESQ.
                                  (Telephonically)
21                                SHERRY J. MILLMAN, ESQ.
                                  (Telephonically)
22                                Stroock & Stroock & Lavan LLP
                                  180 Maiden Lane
23                                New York, NY 10038
                                  (212)806-5400
24

25
```

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
1   For JPMorgan Chase:        FRANK A. MEROLA, ESQ.
                               (Telephonically)
2                              Stroock & Stroock & Lavan LLP
                               2029 Century Park East
3                              Los Angeles, CA 90067
                               (310)556-5802
4
    For Calpine:               AMENEH BORDI, ESQ.
5                              (Telephonically)
                               Kirkland & Ellis LLP
6                              601 Lexington Avenue
                               New York, NY 10022
7                              (212)909-3264

8   For State Farm:            ALLAN S. BRILLIANT, ESQ.
                               (Telephonically)
9                              Dechert LLP
                               Three Bryant Park
10                             1095 Avenue of the Americas
                               New York, NY 10036
11                             (212)698-3600

12  For PG&E Holdco Lender     AMY CATON, ESQ.
    Group:                     (Telephonically)
13                             Kramer Levin Naftalis & Frankel
                               LLP
14                             1177 Avenue of the Americas
                               New York, NY 10036
15                             (212)715-7772

16  For South San Joaquin      PAUL R. GLASSMAN, ESQ.
    Irrigation District:       (Telephonically)
17                             Stradling, Yocca, Carlson & Rauth,
                               P.C.
18                             100 Wilshire Boulevard
                               Fourth Floor
19                             Santa Monica, CA 90401
                               (424)214-7021
20
    For Travelers Ins. Co. and A. SCOTT LOEWE, ESQ.
21  Hartford Ins. Co.:         (Telephonically)
                               Bauman Loewe Witt & Maxwell, PLLC
22                             8765 East Bell Road
                               Suite 210
23                             Scottsdale, AZ 85260
                               (480)502-4664
24

25
```

```
 1   For Ghost Ship Plaintiffs   ESTELA O. PINO, ESQ.
     Ex. Committee:              (Telephonically)
 2                               Pino & Associates
                                 4600 Northgate Boulevard
 3                               Suite 215
                                 Sacramento, CA 95814
 4                               (916)641-2288

 5   For Public Utilities        CLIFF I. TAYLOR, ESQ.
     Impacted by the Wildfires:  (Telephonically)
 6                               Stutzman, Bromberg, Esserman &
                                 Plifka, PC
 7                               2323 Bryan Street
                                 Suite 2200
 8                               Dallas, TX 75201
                                 (214)969-4990
 9
     For Southern Power          HARRIS WINSBERG, ESQ.
10   Company:                    (Telephonically)
                                 Troutman Sanders LLP
11                               600 Peachtree Street NE
                                 Suite 300
12                               Atlanta, GA 30308
                                 (404)885-3348
13
     For Travelers:              PETER D. WOLFSON, ESQ.
14                               (Telephonically)
                                 Dentons US, LLP
15                               1221 Avenue of the Americas
                                 New York, NY 10020
16                               (212)768-6840

17   For William B. Abrams:      WILLIAM B. ABRAMS
                                 Pro Se
18

19

20

21

22

23

24

25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2  Court Recorder:                ANKEY THOMAS
                                  United States Bankruptcy
3                                 Court
                                  450 Golden Gate Ave.
4                                 San Francisco, CA 94102

5

   Transcriber:                   PENINA WOLICKI
6                                 eScribers, LLC
                                  7227 N. 16th Street
7                                 Suite #207
                                  Phoenix, AZ 85020
8                                 (973)406-2250

9  Proceedings recorded by electronic sound recording;
   transcript provided by transcription service.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1

2                                    -oOo-

3      (Call to order of the Court.)

4           THE COURT:  Good afternoon, again, everyone.  Please

5  be seated.

6           Okay, on the agenda -- agenda item we have is the

7  motion to seek authority to settle the Tubbs cases.  And I have

8  two objections.  Who's going to speak for the objector?

9           MR. BALABANIAN:  Hello, Your Honor.  Your Honor, I --

10           THE COURT:  I need a name.

11           MR. BALABANIAN:  Excuse me.  Good afternoon, Your

12  Honor.  My name is Rafey Balabanian.

13           THE COURT:  Okay, Mr. Balabanian, good afternoon.

14           MR. BALABANIAN:  Good afternoon.  And Your Honor, per

15  the Court's instruction, I did speak with the other objectors

16  who joined in my objection.  We've agreed to split time.

17           THE COURT:  Okay.

18           MR. BALABANIAN:  And if --

19           THE COURT:  So tell me why I should consider late

20  objections?

21           MR. BALABANIAN:  Well, I agree that that is one of the

22  primary talking points of the response briefs to my objection.

23  I concede, of course, that the objection is beyond the deadline

24  that was imposed by the Court.

25           I don't think it's as simple, though, as stating that

                    PG&E Corp.; Pacific Gas And Electric Co.

1    we are far outside the deadline, because we didn't voice any

2    objection to the RSA and didn't voice any objection to the

3    Court's order approving the RSA.

4           The truth is, Your Honor, the RSA was vague as to how

5    this process would play out, at some level.  The two provisions

6    that they cite to --

7           THE COURT:  What specifically was vague about it

8    that's relevant to today?

9           MR. BALABANIAN:  It says that the debtor will enter

10   into settlement negotiations with the preference plaintiffs --

11          THE COURT:  Right.

12          MR. BALABANIAN:  -- in an effort to strike a

13   settlement.  Which will --

14          THE COURT:  Well --

15          MR. BALABANIAN:  -- remain confidential.

16          THE COURT:  Right.

17          MR. BALABANIAN:  I concede all of that.

18          THE COURT:  Right.

19          MR. BALABANIAN:  It wasn't clear what --

20          THE COURT:  But what's vague about that?

21          MR. BALABANIAN:  Well, it's not clear what

22   "confidential" really meant.  Confidential means only the

23   debtor and only the preference plaintiffs.  It doesn't mean,

24   for example, the tort claimants' committee.  And I don't know

25   why, because from my perspective -- and I'm severing myself

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1  from the tort claimants' committee for purposes of this

2  argument, of course -- but my clients have to vote on a plan of

3  reorganization, and they are presented with a situation where

4  they have they have no insight into this group of settlements.

5  And I don't know how I, in good faith, can advise my clients,

6  one way or another, as to whether this is a good or bad deal

7  for them, if they have absolutely no window into this issue.

8        THE COURT:  But you have to advise your clients when

9  it's time to vote on the plan, and there will be disclosures of

10 things, including how the plan trust will operate and how

11 AB 1054 is going to be satisfied.  Why does to matter that

12 preference plaintiff C is being paid D dollars?  Why does that

13 matter?  Under the statute and under the expectation, your

14 clients are supposed to be taken care of also.  So what

15 difference does it make if somebody else gets a different

16 amount or -- or what does it -- why does it matter?

17       MR. BALABANIAN:  Yeah, no.  I agree.  My clients get

18 paid what they're -- that they're entitled to --

19       THE COURT:  Then why does it matter --

20       MR. BALABANIAN:  -- no problem.

21       THE COURT:  -- that the -- are you concerned about

22 that it was confidential or that it's been approved?

23       MR. BALABANIAN:  I'm concerned that it's confidential,

24 and it may -- it may be an inflated settlement, such that it

25 would eat into the other recovery of the claimants.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1      THE COURT:  And what do you understand to the be

2  outcome of -- to stick with my hypothetical people today -- if

3  plaintiff C has an allowed claim of a certain amount, how does

4  that -- is that a guarantee that C will get that amount?

5      MR. BALABANIAN:  Well, I can't answer that question.

6  I'm not a -- I'm not a bankruptcy --

7      THE COURT:  Well, but you have to answer that

8  question --

9      MR. BALABANIAN:  Well --

10      THE COURT:  -- because it's relevant to today's

11  motion.

12      MR. BALABANIAN:  -- they say it -- sure.  The debtor

13  argues that it would be -- and excuse me -- the preference

14  plaintiffs, represented by Mr. Pitre, I believe, argues that it

15  would be an allowed claim --

16      THE COURT:  Right.

17      MR. BALABANIAN:  -- that would be administered per the

18  trust and the trustee would decide that issue.  But isn't

19  that --

20      THE COURT:  You know, don't you, that there are a

21  number of claims that are already allowed and settled and

22  admittedly not confidential, but they're finite numbers.

23      MR. BALABANIAN:  Right.

24      THE COURT:  And your --

25      MR. BALABANIAN:  And --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1      THE COURT:  -- your client -- your clients, who are

2 going to vote, will take into account, I hope, that they will

3 see what the fund is and what the distribution formula is.  And

4 if there are settlement metrics or things, then they'll take

5 that into account.

6      Why does the particular, relatively small number of

7 people, who are not identified by name and not linked with an

8 amount, make a difference to their decision making?

9      MR. BALABANIAN:  Well, like I said, I'm not a

10 bankruptcy practitioner, but my understanding is that with

11 respect to the allowed claims that have -- that are already out

12 there, that are disclosed to the public, no different than this

13 allowed claim, they will just be paid as a matter of course.

14 The trustee will pay them per the terms of the RSA, which will

15 be embodied in the trust agreement.

16      THE COURT:  But that's not necessarily true.

17      MR. BALABANIAN:  Well --

18      THE COURT:  Don't you understand?  I mean, you can

19 tell me that you're not familiar with bankruptcy.  I'll accept

20 that.  But I have to decide whether that's reason enough to set

21 this aside.

22      So if I were to disclose it, wouldn't that, itself,

23 put the debtor and the TCC in breach of the RSA?  I mean --

24      MR. BALABANIAN:  The TCC is a --

25      THE COURT:  -- you don't want to throw the whole --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1      MR. BALABANIAN:  -- party to the RSA.  Why would they
2  be in breach?
3      THE COURT:  Well, I understand.  They have to maintain
4  the confidentiality of it.
5      MR. BALABANIAN:  Okay.  So if the TCC were given the
6  information, how would they be in breach of the RSA?  I don't
7  understand.
8      THE COURT:  Okay.
9      MR. BALABANIAN:  They're party to that agreement that
10 says that they would keep it confidential.
11     THE COURT:  Well, no, but what if they disclose it?
12 Let's try it a different way.  What do you want me to do today?
13     MR. BALABANIAN:  Today?  I --
14     THE COURT:  Right, I mean, what --
15     MR. BALABANIAN:  -- there are a couple alter --
16     THE COURT:  -- obviously --
17     MR. BALABANIAN:  -- there are a couple options.
18     THE COURT:  -- look, the other side wants me to
19 overrule your objections either because they're late or because
20 they're not meritorious.  You want me to sustain your
21 objections.  What would follow?
22     MR. BALABANIAN:  Well, I --
23     THE COURT:  What happens as a result, if I do that?
24     MR. BALABANIAN:  There are two options.
25     THE COURT:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1      MR. BALABANIAN:  Number one, I would say that the

2  settlements shouldn't be confidential.  They should be

3  disclosed like all of the other settlements in this bankruptcy.

4      THE COURT:  Okay.

5      MR. BALABANIAN:  Or in the alternative, that they

6  should at least, at the very least, be disclosed to the TCC so

7  the TCC has an understanding of what they -- what those

8  settlements are.

9      THE COURT:  And so all you're objecting to is the

10  confidentiality of it, not the fact of it?

11      MR. BALABANIAN:  Correct.  I might not have any issue

12  with the fact of the settlements.  I mean, I understood that

13  they would be entering into settlement discussions, and there

14  was language that they would remain confidential.

15      I've said this a few times now.  I'm no bankruptcy

16  practitioner, but I've tried to research, and I haven't seen

17  any other situation quite like this.

18      THE COURT:  Well, but you're asking me -- you're

19  asking me to withhold approval.  So what happens -- what do you

20  think happens to the negotiated global distribution or

21  resolution for the entirety of the fire victim group if I don't

22  sign the order that approves it?

23      MR. BALABANIAN:  I think it will move forward with all

24  due alacrity in maybe a few days' time, after the disclosures

25  are made and people get a chance to assess it.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1       I just -- look --

2       THE COURT:  Well, you know what?  It sounds to me like

3   if I order that there be a disclosure, then there still

4   would -- there would be an issue of, well, we'd accept the

5   settlement or we'd still oppose it.  And --

6       MR. BALABANIAN:  Yeah.

7       THE COURT:  -- therefore, then what do I do?

8       MR. BALABANIAN:  Well, then I think the Court has to

9   make an assessment as to whether the settlement was really --

10  is really -- as to the propriety of the settlements, I would

11  say.  If there -- look, there's --

12      THE COURT:  I ordered a mediation.  I was well

13  aware -- I ordered the relief from stay to have the Tubbs Fire

14  go forward in Superior Court.  I was involved in what led to

15  setting the stage for estimation in the District Court.  And

16  all those things have come to a -- to a different conclusion,

17  because the mediation said we don't have to do the Tubbs state

18  court, and the District Court doesn't have to do the

19  estimation.  And there's an RSA that sets aside a fixed sum of

20  money for the benefit of all the fire victims.

21      So I guess what I'm having trouble understanding -- I

22  sympathize with your personal view, as a lawyer, to know

23  something that might be relevant, but there's a risk, it seems

24  to me, of tipping the whole thing upside down for a reason that

25  isn't necessary, because as I told you, this is not some secret

PG&E Corp.; Pacific Gas And Electric Co.

1  settlement that somebody's going to be given a check and go on

2  his way, on his own.  It's just not going to happen that way.

3          MR. BALABANIAN:  No, I appreciate the Court's --

4          THE COURT:  And I'm wondering if you really understand

5  that.

6          MR. BALABANIAN:  I might not.  I appreciate the Court

7  saying that.  But I will say that stepping back, it just

8  somewhat, I think, goes to a broader issue here, which is this

9  is perhaps the largest bankruptcy, certainly in the history of

10  California.

11          THE COURT:  It is.

12          MR. BALABANIAN:  All eyes are on this bankruptcy.

13          THE COURT:  I agree.

14          MR. BALABANIAN:  It doesn't benefit anybody to not be

15  as transparent as possible, because there is a lot of concern

16  in the fire victim community that things are happening without

17  their awareness, and frankly -- I'll say it -- that they

18  don't -- they don't trust what the lawyers are up to.  That

19  includes me.  Okay?  I'm one of the lawyers.

20          And at the end of the day --

21          THE COURT:  Well, I understand that.  But how do I fix

22  that?  Because they were lawyers and judges and at least one

23  former judge, and a lot of lawyers, and I'm sure a lot of non-

24  lawyers outside of my presence that brought about what seemed

25  to be almost insurmountable odds of getting a jury trial

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1  resolved, getting a state court -- I mean, a district court

2  estimation process that none of the non-bankruptcy world had

3  the slightest idea what that was, and half the bankruptcy world

4  doesn't even know what a claims estimation really involves.

5  And all of a sudden all those things went away for a good

6  reason, to set the stage to get this thing done in time to make

7  the distributions start to flow, come June 30th or shortly

8  thereafter.

9          MR. BALABANIAN:  Yeah, and just --

10         THE COURT:  And what I'm saying -- and I'm not

11 personalizing this -- in the name of disclosure of a small

12 number of people's amounts, you're suggesting that I should

13 jeopardize all of those, and that just seems like a horrible

14 risk.  And --

15         MR. BALABANIAN:  Yeah, I --

16         THE COURT:  -- and not worth the risk.

17         MR. BALABANIAN:  I don't think that's what I'm

18 suggesting, and I don't think that that's the logical end --

19         THE COURT:  But again --

20         MR. BALABANIAN:  -- to this.

21         THE COURT:  -- but, Mr. Balabanian, if I say you've

22 got a good point, I'm going to order the debtor to disclose

23 these amounts -- these names and amounts to somebody -- either

24 to you or to -- I'm not sure.  Who would they be disclosed to?

25         MR. BALABANIAN:  I suppose it would be to the TCC's

PG&E Corp.; Pacific Gas And Electric Co.

1    Counsel, and then -- and then hopefully potentially to the

2    TCC --

3              THE COURT:  And what would they do with that?

4              MR. BALABANIAN:  -- from there.  I would --

5              THE COURT:  The T -- but the --

6              MR. BALABANIAN:  -- I would hope that they would share

7    it with the TCC under the condition that it be kept

8    confidential and that we could make an assessment.

9              Look, at the end of the day, like -- back to my

10   original point, we do have a fixed fund here.  And I have 1,000

11   or so clients who are victims of the Camp Fire.  And as long as

12   they're going to get paid what they're entitled to, we have no

13   issue.

14             But when we have a fixed fund, where it's unclear that

15   all fire victims are going to recover, well, that's when it

16   becomes an issue.  And I don't see how that is a difficult

17   point to get across, but I've had issues with my arguments in

18   the past, Your Honor.

19             THE COURT:  I'm not faulting you for having -- I

20   didn't say you made a frivolous argument.  I'm trying to figure

21   out whether the solution you want will solve the problem you

22   want.

23             Were you here this morning?

24             MR. BALABANIAN:  No, I was not.

25             THE COURT:  Okay.  Well, what a number of the lawyers

PG&E Corp.; Pacific Gas And Electric Co.

1    know this morning, because they are themselves recipients of

2    them is -- I am too -- letters from people such as the victims

3    that you represent that are complaining about a number of

4    things.  And I am sympathetic to their plight for lots of

5    reasons, but I can't solve the problem.  I have to trust the

6    system that's been implemented.

7                And one of the -- one of the things that was

8    implemented from my 35,000-foot point -- specter -- position,

9    is get a mediator out there, because a number of other people

10   asked for it.

11               The mediator went to work, and the next thing I know,

12   there's a settlement that resolves these issues.  And so I'm

13   not about to -- I'm not going to lightly try to upset all that.

14   That's all.  But go ahead and make the rest of -- whatever else

15   you want to argue.

16               MR. BALABANIAN:  That's essentially what I have to

17   say, Your Honor.  I think that at the end of the day, that

18   there isn't a whole lot of authority for this type of process.

19   And I under --

20               THE COURT:  Well, there isn't a lot of precedent for

21   it, but what authority are we missing.

22               MR. BALABANIAN:  Well, precedent.  We can call it

23   precedent.  There isn't much precedent --

24               THE COURT:  Well, that's different.

25               MR. BALABANIAN:  -- for this type of process, Your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    Honor.

2              And when you have -- when you had a situation where

3    the debtor itself made such a stink about how Tubbs needed to

4    be tried -- absolutely needed to be tried, there was no way to

5    assess what that claim would be, et cetera; we barreled towards

6    that trial; the Court in a somewhat unorthodox opinion, I would

7    argue, granted relief from stay; and then --

8              THE COURT:  Unorthodox opinion or unexpected opinion?

9              MR. BALABANIAN:  Well, I would say out of the ordinary

10   opinion; excuse me.

11             THE COURT:  Well, was it the right result or was --

12             MR. BALABANIAN:  I was expecting Your Honor to deny

13   the motion.  Was it --

14             THE COURT:  So --

15             MR. BALABANIAN:  -- the right result?

16             THE COURT:  -- so did I do the right thing or the

17   wrong thing?

18             MR. BALABANIAN:  I don't know, Your Honor.  I really

19   don't.

20             THE COURT:  Well, let me put it --

21             MR. BALABANIAN:  But I do know that they were --

22             THE COURT:  -- let me put it --

23             MR. BALABANIAN:  -- supposed --

24             THE COURT:  -- this way.  If I had denied relief from

25   stay, I don't know what would have happened, but as you know,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1   as an experienced lawyer, one of the greatest motivators for

2   settlement is a trial date.

3           MR. BALABANIAN:  Sure, right.

4           THE COURT:  And how close were we to a -- they, not

5   I -- how close were the various plaintiffs' lawyers and defense

6   lawyers to a trial date?  They were just days away from it,

7   right?

8           MR. BALABANIAN:  I think they were very close.

9           THE COURT:  So whether they --

10          MR. BALABANIAN:  I think they were --

11          THE COURT:  -- whether -- was it a good settlement or

12  a bad settlement, that's not the point.  But the settlement is

13  in the aggregate.  It's not an individual amount for an

14  individual person.  That was a -- that was a component of the

15  settlement.

16          MR. BALABANIAN:  And --

17          THE COURT:  But anyway --

18          MR. BALABANIAN:  -- and if it was just a private

19  settlement that was outside of the bankruptcy, then I wouldn't

20  be up here annoying everybody, but --

21          THE COURT:  But -- you're not annoying me.  But would

22  you believe me if I tell you that even in the bankruptcy we

23  occasionally have sealed settlements?

24          MR. BALABANIAN:  Of course I would believe you.

25          THE COURT:  And amounts, particularly.  And so nothing

of 59 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corp.; Pacific Gas And Electric Co.

1   unusual about that. I mean, it may -- it may seem unusual, but

2   don't you ever have settlements in state court that are sealed,

3   at least --

4            MR. BALABANIAN: Of course. I'm --

5            THE COURT: But what happened -- what about somebody

6   who says I want to know because I want to know how it's going

7   to affect me?

8            MR. BALABANIAN: The difference there is that usually

9   those settlements aren't such that -- it doesn't create a pool

10  of money where other claimants who aren't party to those

11  settlements are going to be paid.

12           And so yes, it's in the aggregate, but it comes out of

13  the entire fire victim trust. If hypothetically, crazy idea,

14  somehow those settlements are overinflated and it improperly

15  eats into the other claimants' pot, then I think that would be

16  a problem.

17           THE COURT: Well, let me -- Mr. Balabanian, what I'll

18  ask the Counsel who's defending the settlement to educate both

19  of us a little more -- but I will tell you, it's my

20  understanding that your fears are not founded, that there's

21  a -- it's an imperfect system, but the system is intended to

22  make sure that each victim is compensated properly and not that

23  there's some ranking of them and that the people who are the --

24  the Tubbs plaintiffs are going to be more favorably treated.

25           So I can't promise that, and I don't -- but I don't

PG&E Corp.; Pacific Gas And Electric Co.

1  believe it's at all in the cards.  And none of your -- I can

2  understand that all the people that you represent are wondering

3  what about their situation.  The nineteen people who settled

4  know what their situation is.  But I think that's all -- that's

5  all we know -- that's all they know.

6      They don't know when they're going to get paid.  And I

7  don't know yet if they know how it's all going to shake out in

8  terms of their relative positions.  But I'll let the opposing

9  Counsel speak to that.

10     MR. BALABANIAN:  I appreciate that, Your Honor.

11     THE COURT:  Okay.

12     MR. BALABANIAN:  I have nothing further.

13     THE COURT:  Okay.  And who else is going to speak?

14  There is other Counsel, right?  Mr. -- I'll get the name.

15  Goldman -- is Mr. Goldman here?

16     MR. BALABANIAN:  I'm sorry, I thought Mr. Goldman was

17  going to appear --

18     THE COURT:  Ronald Goldman --

19     MR. BALABANIAN:  -- and speak?

20     THE COURT:  -- are you here or on the phone?

21     Well, that's the other party who joined in the

22  objection.  He's the lawyer who signed it for -- Attorney

23  Ronald Goldman and Diane Moore -- well, if they're not here,

24  they're not here.

25     MR. BALABANIAN:  We didn't coordinate with them.  We

PG&E Corp.; Pacific Gas And Electric Co.

1  didn't know they were going to join, so --

2         THE COURT:  They filed a document --

3         MR. BALABANIAN:  -- that's all I have --

4         THE COURT:  -- with a date and the only thing that was

5  different, originally, was the time.  But the time was

6  renoticed.  So if they were here this morning --

7         MR. BALABANIAN:  We spoke, Your Honor.  They know

8  about the hearing, so --

9         THE COURT:  Okay.

10        MR. BALABANIAN:  -- I appreciate the Court's time.

11  Thank you.

12        THE COURT:  So where's Mr. Orsini.  Are you here?

13        I thought we were waiting for Mr. Orsini this

14  afternoon?  Mr. Karotkin, no?

15        MR. KAROTKIN:  I'm a thinner substitute, Your Honor.

16        THE COURT:  I thought he was the culprit for wanting

17  this to --

18        MR. KAROTKIN:  He was.

19        THE COURT:  -- be later.

20        MR. KAROTKIN:  And if I could apologize for him.

21        THE COURT:  No, you don't have to.

22        MR. KAROTKIN:  He had a personal matter that he had to

23  attend to that was unavoidable.

24        THE COURT:  Well, I hope that's taken care of for him.

25        All right, so what do you want to say?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    MR. KAROTKIN:  I'll -- first of all, Stephen Karotkin,

2   Weil, Gotshal & Manges, for the debtor -- for the debtors.

3   I'll try to be very brief.

4    A couple of things I'll note at the outset -- that Mr.

5   Balabanian never answered your question as to why he filed his

6   pleading five days late.  It's my understanding he, in fact,

7   participated in the deliberations of the TCC --

8    THE COURT:  That's what I understood.

9    MR. KAROTKIN:  -- in deciding to enter into the

10   restructuring support agreement with the tort claimants'

11   committee, which expressly had these provisions in there.  He

12   didn't file an objection to the approval motion.  He didn't

13   file an objection to the sealing motion.  He didn't file an

14   objection to the Tubbs motion.

15    He was -- Your Honor, approved the RSA, which

16   expressly had these provisions in there.  I think he said on

17   the record just a few minutes ago, that he knew that those

18   provisions would be confidential -- because I wrote that down.

19    He said there's lots of concerns among the fire

20   victims.  I'm not aware of one fire victim having filed an

21   objection to this motion or one --

22    THE COURT:  Well, but that doesn't mean there aren't

23   concerns among them.

24    MR. KAROTKIN:  Well --

25    THE COURT:  I agree with you that --

PG&E Corp.; Pacific Gas And Electric Co.

1    MR. KAROTKIN:  -- there may be concerns.  They
2  certainly haven't been expressed in pleadings in this Court
3  with respect to this matter.  Frankly, I don't really
4  understand how he can even be serious, standing up before Your
5  Honor and challenging something that he was directly involved
6  with, and again, never explained why his pleading was late.

7    Kind of coincidental that his pleading came in
8  literally a few minutes after we announced the settlement with
9  the bondholders.  Maybe he was upset that that other avenue
10  wasn't available to him now, and he decided he has to pursue
11  this.

12    The fact of the matter is, he's presented no basis
13  whatsoever, Your Honor, for you not to approve the settlement,
14  with respect to the confident --

15    THE COURT:  Well, would you -- but did I explain it
16  correctly to him on how it will work for the named -- the
17  parties whose names are confidential -- maybe their names are
18  not confidential, but that settlement terms are confidential?
19  Did I properly describe --

20    MR. KAROTKIN:  How the trust would work?

21    THE COURT:  Well --

22    MR. KAROTKIN:  Yes.

23    THE COURT:  -- I mean, if we start -- let's have --
24  you know me and my hypotheticals.  We have a person who is a
25  known person who has a final judgment coming out of the 2015

PG&E Corp.; Pacific Gas And Electric Co.

1    Butte Fire, but has never been paid a penny.  We have one of

2    the nineteen preference plaintiffs who participated in the

3    mediation and have now joined this -- is one of the ones who's

4    confidential; and then we have another one who is like any one

5    of the thousands of fire survivors who want to be paid and have

6    filed proofs of claim.  How is it -- how am I to be sure and

7    Mr. Balabanian to understand that all three of those people,

8    all coming in a different way to the bankruptcy, are going to

9    be treated in a similar manner?

10          MR. KAROTKIN:  Well, all of the claimants who have

11   claims dealt with by the trust will be treated in the same

12   fashion.  They will -- these claimants will not be preferred

13   over any other claimants.

14          THE COURT:  So victim C, who has a finite amount in a

15   settlement, isn't necessarily going to get that exact amount --

16          MR. KAROTKIN:  That's correct.

17          THE COURT:  -- but hopefully will.

18          MR. KAROTKIN:  That would be up to the trustees in

19   the -- as to how they deal with those situations.  And again,

20   there will be no preference to these claimants.

21          THE COURT:  Okay.  Anything further?

22          MR. KAROTKIN:  No, sir.

23          THE COURT:  Mr. Balabanian, I'm not going to ask you

24   to explain anything that Mr. Karotkin said you should have

25   explained.  I'll just ask you, do you want to be heard, now

PG&E Corp.; Pacific Gas And Electric Co.

1  that you've heard Counsel say similar to as I explained to you,

2  how this will operate for the various types of people that have

3  suffered from the fires?

4          MR. BALABANIAN:  May I --

5          THE COURT:  I mean, if I don't want to add anything

6  further, that's okay.  I just wanted to know if you understand

7  what you heard Mr. Karotkin say; that's all.

8          MR. BALABANIAN:  I don't think he said all that much,

9  but I think I understand it.

10          THE COURT:  Well, I do.  He clarified -- he reaffirmed

11  what I understood, but what else do you want to --

12          MR. BALABANIAN:  He said they will be treated the

13  same, there will be no preference to this group of nineteen

14  plaintiffs.

15          THE COURT:  Isn't that what you want to know?

16          MR. BALABANIAN:  That doesn't speak to the issue of

17  what is the -- what is the aggregate amount that's being paid

18  to these individuals, and is it going to improperly cut into

19  the larger pool for --

20          THE COURT:  Well, but --

21          MR. BALABANIAN:  -- fire victims.

22          THE COURT:  -- improperly is a qualitative word,

23  because if they're treated equally, then it's not improper, is

24  it?

25          MR. BALABANIAN:  Yeah, I can't see --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1        THE COURT:  So --

2        MR. BALABANIAN:  -- I just can't envision a situation

3    where there's -- I don't know -- 70,000 fire victims who are

4    going through a matrix, and then you've got 19 who are not, and

5    somehow they are absolutely --

6        THE COURT:  Well, what about the folks that already

7    have judgments?  What about them?  Do you know about them?

8        MR. BALABANIAN:  I do.

9        THE COURT:  How are they going to be treated?

10       MR. BALABANIAN:  Well, I believe they're going to be

11   treated the same way.

12       THE COURT:  Fairly or unfairly; equally or unequally?

13       MR. BALABANIAN:  I think equally, because they're

14   going to be treated --

15       THE COURT:  Well, then --

16       MR. BALABANIAN:  -- pursuant to the Bankruptcy Code,

17   but --

18       THE COURT:  -- but you've just --

19       MR. BALABANIAN:  -- this settlement doesn't -- isn't

20   tied to any aspect of the Bankruptcy Code.  This settlement --

21       THE COURT:  Why do you say that?

22       MR. BALABANIAN:  Well, because --

23       THE COURT:  I'd be --

24       MR. BALABANIAN:  -- this settlement is -- it is a

25   function of a contract between the TCC and the debtor, and the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1  Bankruptcy Code doesn't call for this type of confidential

2  settlement.  It was an agreement between parties as to a term

3  of the settlement, which is let's keep it confidential.

4       Look, I understand that I'm obviously, potentially up

5  against it here, and I understand why.

6       THE COURT:  You're not against me.

7       MR. BALABANIAN:  Oh, I know I'm not against you.

8       THE COURT:  I am --

9       MR. BALABANIAN:  I'm saying --

10      THE COURT:  -- supposed to do --

11      MR. BALABANIAN:  -- I understand that I'm potentially

12  up against --

13      THE COURT:  -- the best result.

14      MR. BALABANIAN:  -- my lack of understanding on this

15  issue.

16      THE COURT:  But --

17      MR. KAROTKIN:  I will say that --

18      THE COURT:  But hold it.  I'm trying to make sure that

19  you don't have a misunderstanding, because I told you that at

20  least three different types of fire-surviving people who have

21  suffered these fires are going to be treated the same way, even

22  though they come to the court a different way:  one with a

23  settled judgment long before bankruptcy; one with a

24  confidentially negotiated settlement; and one of thousands who

25  are going to go into this big thing called the trust and the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    matrix and come out, hopefully -- for sure, as we intend --

2    equally.

3         That doesn't mean equal dollar-dollar.  It means

4    equally in terms of their entitlement, because every victim has

5    different circumstances that amounts to the amount of the

6    appropriate claim for that particular victim.

7         MR. BALABANIAN:  Yeah, but isn't that determined by

8    the trust agreement and the terms of the trust agreement?

9         THE COURT:  Yes, and they will be up for

10   consideration.  And --

11        MR. BALABANIAN:  And they're being negotiated by the

12   same group of lawyers who have these settlement.

13        THE COURT:  And they're going to be public noticed

14   hearings to approve them.  And again, you didn't have to be

15   here this morning, but there were serious concerns expressed by

16   seasoned bankruptcy lawyers, representing other interests, who

17   want to make sure that those trust systems are fair and -- to

18   use a current word -- transparent and understandable.

19        And at least I said:  so do I.  But we just don't have

20   them yet.  They're not in place yet.  They're going to happen.

21        You or your clients' representatives will have an

22   opportunity to be heard when the Court is being asked to

23   approve aspects of those trust documents.  All we're keeping

24   confidential for now is specific settlement allocations for a

25   finite number of people who stood up and were ready to be the

PG&E Corp.; Pacific Gas And Electric Co.

1  plaintiffs with Counsel at a trial in front of a jury right

2  down the street -- but agreed to settlements not where they got

3  a check and went on their way, but rather their treatment will

4  be sort of -- well, will be -- I can't state it because I'm

5  using -- I'm not thinking of the right words -- their amounts

6  will be put into the formula to treat all the victims alike.

7        MR. BALABANIAN:  Very well, Your Honor.

8        THE COURT:  Okay.

9        MR. BALABANIAN:  Can I say one last thing, just to --

10        THE COURT:  Sure.

11        MR. BALABANIAN:  -- and it's the least important, but

12  I just think it's peculiar that Mr. Karotkin is somehow

13  weighing in on what was happening in our room in the

14  negotiations.  I'm not going to get into everyone's specific

15  role in the negotiations.  I think --

16        THE COURT:  Well, I think it's --

17        MR. BALABANIAN:  -- that would be improper.

18        THE COURT:  -- but I think his concern -- and it was a

19  surprise to me too when I saw the opposition from Mr. Pitre and

20  Mr. de Ghetaldi and a number of others -- it was quite

21  surprising to see the criticisms of -- frankly, of you and your

22  co-Counsel, for objecting to something that you had some

23  involvement with.  But I didn't -- I'm not here to give you a

24  lecture on proper things to say.

25        It was also probably not appropriate to start citing

PG&E Corp.; Pacific Gas And Electric Co.

1  criminal sections of Title 18 in an objection complaining about

2  the lawyers.  But we put that aside.  We're dealing only with

3  the question of whether I mess up the settlement that was

4  negotiated and settled, and we're done.

5         And you've made your point.  And I'll leave it at

6  that.

7         MR. BALABANIAN:  Thank you, Your Honor.

8         THE COURT:  Okay.  All right.

9         For the record, then, Mr. Balabanian, I've considered

10 your arguments and I'm not going to specifically say that

11 because your objection was late I won't consider it.  I have

12 considered it.

13        So what I'll tell you is that had it been timely, I

14 would have considered it and I would come to the same

15 conclusion.  Therefore the untimeliness or timeliness is

16 irrelevant.  Your objections are overruled, because I think

17 your concerns -- I don't disagree with the general notion that

18 in a case of this magnitude and of this huge impact on so many

19 people, that the more out on the table and the more evident in

20 every respect to everyone, the better.

21        But the bankruptcy court is a court where frequently,

22 for various reasons, certain discrete aspects need to be

23 maintained confidentially.  And I made the decision and do

24 endorse the decision that -- and by the way, the proper

25 disclosures have been made to me, and I've reviewed them --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1  that it's appropriate, given the context of how this all played

2  out -- again, just to repeat -- how it came about that

3  following the fire, the motions for relief from stay, the

4  decision about -- that I made to permit the Tubbs Fire trial to

5  go forward, but I also made the decision to -- and I didn't

6  make it on my own.  There were suggestions from others.  I made

7  the final decision on my own to select the mediator and turn

8  him lose, and something worked.  And I should just unleash him

9  again whenever I need him.

10        And those are all good results.  So to me, the motion

11  today is to -- I won't say put the final touches -- but put a

12  significant next step in the process of getting the survivors

13  of these horrible fires taken care of, consistent with the

14  goals that most of the parties have set out to achieve, and

15  certainly what the California legislature has also attempted to

16  achieve.

17        So I'm going to sustain -- I mean, overrule your

18  objections and approve the Chubb settlement motion in the

19  manner that it's submitted.

20        I'll ask Mr. Karotkin just to -- I believe you've

21  already lodged a proposed order.  Mr. Balabanian, have you seen

22  the form of order?

23        MR. BALABANIAN:  No, Your Honor.

24        THE COURT:  Do you have any objections to it?

25        MR. BALABANIAN:  I doubt I will.

PG&E Corp.; Pacific Gas And Electric Co.

1          THE COURT:  Okay.  Well --

2          MR. BALABANIAN:  I haven't seen it so --

3          THE COURT:  -- pardon it?

4          MR. BALABANIAN:  I haven't seen it.  If it's

5     consistent with their motion and the Court's approved the

6     motion, I --

7          THE COURT:  Yes, it's consistent with the motion.

8          MR. KAROTKIN:  It was filed with the motion.

9          THE COURT:  Yeah, it was filed with the motion, too.

10          Okay, well, I intend to sign that.  So that concludes

11     that matter.

12          Now, going back to where we broke off this morning, is

13     Mr. Abrams still in court?

14          MR. ABRAMS:  Yes, Your Honor.

15          THE COURT:  Mr. Abrams, would you come back?  I wanted

16     to apologize if I cut you off in the middle.  I was really

17     trying to deal with my commitment to -- not only to my own

18     staff but to everyone in the room that I just -- we will not

19     have these marathon hearings.

20          MR. ABRAMS:  Thank you.

21          THE COURT:  And so I tried to accommodate a lot of

22     people in short order.  So let me just restate something and if

23     you -- what I got from you that you filed appeared to be a

24     motion to revisit the settlements -- what we call the other two

25     RSAs, the TCC and the subrogation RSA.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    And that itself was not an individual motion, it was a

2   joinder of a prior -- of a lead motion by the senior

3   bondholders.

4    MR. ABRAMS:  Yes.

5    THE COURT:  But then the settlement that has been

6   negotiated with them rendered that moot, and that's why that

7   went off calendar.

8    MR. ABRAMS:  Yes.

9    THE COURT:  So then on short orders, the debtors filed

10  the motion that was filed just on Monday, and they actually

11  asked me to put a deadline of this Friday on for opposition,

12  and I didn't.  I put it all the way to Monday -- not much

13  time --

14    MR. ABRAMS:  Yes.

15    THE COURT:  -- because they made a case that it needed

16  to move quickly.  So I was taken aback when I had in hand

17  something you chose to set for this afternoon that really

18  wasn't what you were describing.  And I'm not saying you

19  didn't -- I'm not saying your document didn't say what it said,

20  but your words said you wanted -- it was your objection to the

21  new RSA.

22    So you have a right to be heard on your objection to

23  the new RSA.

24    MR. ABRAMS:  Thank you.

25    THE COURT:  And you need to file your objection and

(973)   | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    you need to do so by noon Monday.  And as tight a schedule as

2    that is -- and I appreciate whether -- you said before, and I

3    understand, you're not a lawyer -- but whether you're a lawyer

4    or not a lawyer -- or are a lawyer or a law professor or a

5    bankruptcy judge, these are tight schedules for reasons that I

6    don't think -- well, maybe you are one that believes that I

7    shouldn't worry about the June 30th deadline, but for now I'm

8    still worrying about it.

9            MR. ABRAMS:  Sure.

10           THE COURT:  And therefore you will be welcome and be

11   heard on next Tuesday, 10 o'clock, on any objection that you

12   file to that RSA.

13           I suggest to you, if you let me deal with that one and

14   make my ruling, and if for some reason you're unhappy with it,

15   you're entitled to do whatever you want -- at that point, if

16   you really want to revisit the other two RSAs, then the burden

17   will be on you to re-set for hearing your motion to reconsider

18   those two.

19           But as strongly as you feel about a lot of these

20   things, let me tell you, some of these things are almost

21   unravelable -- you can't put Humpty Dumpty back together again.

22           MR. ABRAMS:  Sure.

23           THE COURT:  Lots of things happen when these things

24   come together.  So make your argument on next Tuesday, and I'll

25   listen to you, and then you can decide whether you want to be

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    heard on revisiting the other RSAs.

2            MR. ABRAMS:  I appreciate that, Your Honor.

3            THE COURT:  Okay.

4            MR. ABRAMS:  Thank you.

5            THE COURT:  All right.  So now I -- for all the

6    lawyers who either wanted to be heard or got rushed this

7    morning, I'll take any and all comers who want to be heard on

8    the subject of what I called the Chapter 11 status report.  And

9    it starts with Mr. Karotkin's statements and his proposal for a

10   timeline.

11           I will make the following further remark.  I haven't

12   had that much time in the hour or two that we took, but my

13   intention is by next Tuesday, when we're all reconvening, I

14   will have prepared and share with principal Counsel, at least,

15   and therefore anyone -- if I can get it on the docket -- what I

16   think are refinements to the proposed timeline.

17           And of course, we've heard from at least a couple of

18   Counsel that they'd like to have some other matters in there.

19   Like Mr. Pascuzzi said what he said, and Ms. Winthrop said what

20   she said.  And I'll hear from everybody on that subject, on the

21   4th, after I hear the motion for approval of the RSA.

22           So Mr. Gorton?

23           MR. GORTON:  Thank you, Your Honor.

24           THE COURT:  Good afternoon.

25           MR. GORTON:  Mark Gorton -- Mark Gorton of Boutin

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp.; Pacific Gas And Electric Co.

1    Jones, on behalf of Valley Clean Energy.

2            Your Honor, I rise simply to advise the Court that in

3    meet-and-confer with Mr. Karotkin and the debtors' Counsel,

4    we've been advised that we'll see in the amended plan, by

5    Friday, when it's filed, whether or not there's an anti-

6    municipalization provision in it, and we'll see if we have an

7    issue.

8            So we won't know until Friday.  So I want to keep that

9    issue alive.  And so I'd like to have that statused, if you

10   will for the --

11           THE COURT:  Well, at the --

12           MR. GORTON:  -- for the 4th.

13           THE COURT:  -- at the last iteration of the debtors'

14   plan, there wasn't one.

15           MR. GORTON:  That's correct.

16           THE COURT:  Right.  So --

17           MR. GORTON:  That's correct.  So I'm hoping.

18           THE COURT:  -- so we'll see it together.

19           MR. GORTON:  I'm hoping.  Yes.

20           And then the special provisions for governmental

21   units, which go to scope of discharge, exculpation, release,

22   and injunction, those are issues that are narrowly dealt with

23   in 10.13 of both plans.  And I hope it'll still be in the

24   same -- in the debtor's plan when we get the amendment.

25           But that issue, and the scope -- and there are special

PG&E Corp.; Pacific Gas And Electric Co.

1    protections that are provided for governmental units -- are

2    issues that are shared with, I think, the State, over some of

3    its concerns that it's expressed.  And we would like to simply

4    not renegotiate with the debtor all the terms of the

5    exculpation and release and injunction, but just take care of

6    that provision and make it clear that the local governments as

7    well as Wall Street, and the tort victims, come out of this

8    case with as little impediment, and a relationship with PG&E,

9    that goes forward successfully.

10           So thank you, Your Honor.

11           THE COURT:  Don't go away.  What I had trouble, in a

12   rush, understanding that second argument of your papers, not

13   that you didn't make it clear before, it's that -- if you were

14   here this morning -- you know I had my hands full --

15           MR. GORTON:  Yes.

16           THE COURT:  -- and then just literally to pull

17   everything together last night to deal with these issues, I

18   went back and reviewed what you had filed before.  And to be

19   honest with you, having seen your challenge to the anti-

20   municipality issue, coupled with the withdrawal of --

21   anticipated withdrawal of the competing plan, I didn't even

22   think about the governmental issue.

23           So my intention will be, when I see that new plan and

24   prepare for the hearing on the 4th, I will try to identify

25   issues that sound to me like should be scheduled, if necessary.

PG&E Corp.; Pacific Gas And Electric Co.

1    And I will invite all Counsel to do the same.

2            For those of you that remember, way back at a hearing

3    back last fall, I think, when we had a discussion about okay,

4    let's identify things that can be picked off and dealt with:

5    and inverse condemnation was one of them; post-petition

6    interest was one of them -- well, if Mr. Pascuzzi's concerns

7    about where the agency's claim should be --

8            MR. GORTON:  Right.

9            THE COURT:  -- and the trust are something that should

10   be briefed separately, then we can talk about scheduling.  Same

11   with the issues that you raised.  Same with the issues that Ms.

12   Winthrop raised.  So every single lawyer here in the room that

13   says wait a minute, I want to separately pick out a way to flag

14   an issue that the Court should rule on, that's something that

15   I'll put high on the agenda to address on Tuesday.

16           I will simply urge you to try to exchange your

17   preliminary thinking with debtors' representatives, if you

18   haven't already, so that maybe we can pin down a real schedule

19   for briefing, further hearings, et cetera, when we turn the

20   second half of next Tuesday into a scheduling conference.

21   Okay?

22           MR. GORTON:  Thank you, Your Honor.

23           THE COURT:  All right.  anyone else want to be heard?

24   No?

25           MR. TROY:  Your Honor, this is Matthew Troy.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1          THE COURT:  Yes, sir, Mr. Troy.

2          MR. TROY:  From the Department of Justice, Civil

3    Division.

4          THE COURT:  Mr. Troy?

5          MR. TROY:  I just wanted to make two quick point.

6    One, as you know, the U.S. Government has billions of dollars

7    of wildfire and related claims that are being channeled through

8    the Fire Victim Trust under the debtors' plan, and we echo the

9    same concerns that Mr. Pascuzzi has on behalf of the State,

10   with respect to the classification of those claims.  And

11   currently, we do intend to object to the plan on that basis.

12   Just wanted to make you aware of that.

13         Secondly, Your Honor, it was my understanding that

14   there is a trust agreement that has already been approved by

15   the consenting fire claimant professionals and the TCC.  It is

16   referenced in some of the joinders with respect to the Tubbs

17   preference motion that you just heard.

18         I would simply ask if there is a trust agreement that

19   has already been approved by the TCC and the consenting fire

20   claimant professionals that it will be made available to the

21   other substantial claimants who are being channeled to that

22   trust?

23         THE COURT:  Mr. Karotkin, can you respond to that?

24   Can you help on that, or unless somebody else is doing it or

25   Ms. Dumas, or somebody?  One of you?  Again, you can stay at

of 59 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corp.; Pacific Gas And Electric Co.

1   the chair here --

2          MS. DUMAS:  I like going to the podium.  Thank you,

3   Your Honor.  Cecily Dumas, Baker & Hostetler, on behalf of the

4   official committee of tort claimants.

5          As I said this morning, there's been a lot of work

6   done on the resolution trust instrument and the claims

7   resolution procedures.  What has been moved forward beyond the

8   consenting fire claimant professionals and the TCC to the

9   debtor is what we've referred to as a living document.  It has

10  blanks, it has TBDs, as the main constituents -- the main

11  beneficiaries of the trust continue to work very hard on it.

12         We're not keeping it from claimants, but it is -- it's

13  not fair to say that there is a final document ready to be

14  circulated.

15         As the Court said this morning, and in connection with

16  the last proceeding, there will be a document that will be

17  filed and attached to the disclosure statement that will give

18  the outlines of how the resolution trust is going to work.  And

19  I hesitate to share that widely before the process that many,

20  many different parties' lawyers are working on is ready.

21         THE COURT:  Yeah, but --

22         MS. DUMAS:  It's just a question of --

23         THE COURT:  -- let's --

24         MS. DUMAS:  -- time.

25         THE COURT:  -- but I would urge you to not fall into

PG&E Corp.; Pacific Gas And Electric Co.

1    the trap of figuring that you come out of the box with a final

2    when you could be sharing portions with critical players.  In

3    other words, the lawyer for the federal government, the lawyer

4    for the State agency, to the extent that you can share those

5    things, it'll make a long -- it'll simplify a process.

6              And think about -- think about other complex

7    settlements that you've negotiated in the past or complex sale

8    or purchase agreements --

9              MS. DUMAS:  Some of which you've mediated for me, Your

10   Honor.

11             THE COURT:  Well, yeah.

12             MS. DUMAS:  I understand, yes.

13             THE COURT:  Some of those, where sometimes where you

14   don't have the final APA done, but you've got a -- you've got a

15   working draft that you attach to a motion.

16             So I'm not telling you -- you know how to manage this

17   case.  But what I'm saying is that to the extent you can share

18   with the principal players who might be your opponents, it

19   would make a lot of progress -- a lot of sense.

20             And this gets back to this outline that Mr. Karotkin

21   gave me.  There will be some other dates that I will insist on

22   that might be formal hearings, but I wouldn't expect a full

23   courtroom.  I might ask half a dozen critical lawyers --

24   critical decision-makers or lead Counsel to sit and talk about,

25   okay, when are we going to set aside time for this creditor's

PG&E Corp.; Pacific Gas And Electric Co.

1    objection to the -- Ms. Winthrop's objection or Mr. Pascuzzi's

2    objection.

3            And to the extent that you can take these major

4    players -- and certainly I regard those federal and State

5    agencies as major players.  I'm sure you do.  And I'm not

6    saying there's a separate rule for minor players; everyone.

7    But I urge you to try to do that.

8            And what I intend to do, in turn, is then open the

9    discussion on the 4th on:  okay, when should we have our next

10   roll-up-your-sleeves and talk about an actual schedule for all

11   these things to happen.  Okay?

12           So Mr. Troy, your point is noted, and Mr. Pascuzzi, if

13   you're still here, we got your comments, and --

14           MS. DUMAS:  Your Honor, we will -- that makes a lot of

15   sense.  We will do that.

16           THE COURT:  Okay.

17           MS. DUMAS:  As you know, there are major players.  Two

18   of the major players, there's a pending claims objection by the

19   TCC and a third major player, Adventist -- there will be a

20   claims objection filed.  So all of that is not to say that

21   we're not going to share information with them -- and we

22   certainly will.  But I want to put an asterisk by "major

23   players" in -- reasonable minds my different about -- but

24   again, small and major players are all entitled to information

25   about the trust.  We agree on that heartily.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1          THE COURT:  Agreed.

2          MS. DUMAS:  Thank you, Your Honor.

3          THE COURT:  Mr. Karotkin, I'll go back to you.  And

4     you don't have to stand up.  I just want to make sure we got

5     all our major things identified here.

6          The motion to determine the subrogation class,

7     impaired or not impaired, that keeps getting put over.  Is that

8     going to go away with some settlement talks, or is that

9     something that as a legal matter, I'm going to have to deal

10    with once you have what looks like your final plan?

11         MR. KAROTKIN:  In my view, I think it's likely to go

12    away.

13         THE COURT:  Okay.

14         MR. KAROTKIN:  But Mr. Bray may have a different view.

15         THE COURT:  Oh, yeah, Mr. Bray.  You got cut off

16    before the lunch break.

17         MR. BRAY:  No, no, that's fine, Your Honor.

18         THE COURT:  I hope you had lunch.

19         MR. BRAY:  Gregory Bray, Milbank LLP, Counsel for the

20    official committee.

21         I'll reserve -- you've made it very clear that the 4th

22    is a continued status conference, more substance.  We'll have

23    additional comments and suggestions for the Court then, as to

24    both a schedule, concerns we have with the plan, the process --

25    whatever they are -- and PPI.  We're not going to nitpick.  But

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    we still are an official committee.  We have statutory duties.

2    And we have to look at the plan through the eyes of 1129.

3              THE COURT:  Right.

4              MR. BRAY:  On the impairment issue, the answer is:  I

5    don't know yet.  It's just one of those things that we're still

6    thinking through.  And I think we will have an answer for you

7    on the 4th.  We've agreed with the debtor it should be

8    continued relatively far out, right now.  And it certainly is

9    something we're seriously considering just taking off the

10   table, given the relative dynamics of the plan.

11             Part of our answer, though, depends upon your approval

12   of the RSA.  That's why I'm hedging a little bit, because I

13   don't want to predetermine --

14             THE COURT:  Well, I approved two of them already.

15             MR. BRAY:  -- the outcome.  I think I know what's

16   going to happen, but I don't want to pre-judge it.  So we'll

17   have an answer for you at that hearing, Your Honor.

18             THE COURT:  Well, look, I'll tell both of you

19   something that maybe it'll come as no surprise, but I'll say it

20   anyway.  I don't want and I shouldn't be privy to any kind of

21   discussions that are to try to resolve these things.  And the

22   Bankruptcy Code says what it says.

23             But if I end up with two impaired classes and one of

24   them is Mr. Bray's client who votes for the plan and for some

25   reason the fire survivors vote against the plan, I'm not so

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    sure I'm going to cram the plan down, just as a matter of --

2            MR. BRAY:  I understand, Your Honor.

3            THE COURT:  -- it's not the right thing to do.

4            Now, is that an invitation to create another impaired

5    class?  No.  It's an invitation to figure out a way to solve

6    the problem.

7            But again, I don't want to turn this into a discussion

8    about any particular personality of anybody.  But Ms. Dumas

9    said what I presume is true with all the principal lawyers.

10   You're all hearing from a lot of people.  I tried to put the

11   letters and the comments that come from members of the public

12   on our court website, but it's gotten to where it's too

13   difficult for me to take the risk of posting something that is

14   personal.

15           I don't want to put on the internet or on the court

16   docket the description of a poor person telling me what

17   happened when the fire overran his home or her home or their

18   family.  It's tragic and horrible.

19           But I want to be mindful of what they're telling, but

20   I'm not going to turn it into a public document.  And many of

21   the responses we've sent to other people from chambers is that

22   I appreciate the comment; we will put it on the docket unless

23   they want us to withdraw.  But now I'm trying to -- I mean,

24   withhold it.

25           But now I'm reversing that and just saying we're not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    going to do that.  But what does that mean?  That means that I

2    keep hearing these views that I shared with Ms. Dumas earlier,

3    about this hostility towards the PG&E stock and how much --

4    what a lot of people think should be the amount of the fund

5    versus what they don't like or the tension with the FEMA

6    issue -- between FEMA seeking claims against people.

7          You gentlemen and women know the issues, but I'm just

8    struggling with it as a matter of whether it's our role to

9    publicize those things or just to sit on them.  So all the more

10   reason we need to get these things out on the table and have a

11   full education for everybody and what's going on in the --

12          MR. BRAY:  I agree.  Your Honor, we thought it was --

13   I thought it was a good idea, the suggestion that have sort of

14   regular plan status conferences along the way to try and pick

15   off issues --

16          THE COURT:  Right.

17          MR. BRAY:  -- as we go along.  I guess I'm sure we'll

18   have some, and the sooner they're resolved, I mean, the better.

19   We -- everyone wants to see the plan -- a plan confirmed here

20   that satisfies 1054.  So I think we all have a common interest

21   there.

22          THE COURT:  Okay.  Just to finish one point that we

23   touched on this morning, Mr. Karotkin, I will ask on the 4th if

24   you and Counsel for the trade creditors have an agreement or

25   want to just submit for argument on this question of what do I

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp.; Pacific Gas And Electric Co.

1    do about the --

2            MR. BRAY:  Um-hum.

3            THE COURT:  -- the interest issue.

4            MR. KAROTKIN:  Good.

5            THE COURT:  And --

6            MR. BRAY:  We will want to be heard on that, Your

7    Honor, very briefly.

8            THE COURT:  Yeah.

9            MR. BRAY:  The committee does --

10           THE COURT:  I don't need --

11           MR. BRAY:  Yeah, I understand.

12           THE COURT:  -- twenty briefs on it.

13           MR. BRAY:  Right.

14           THE COURT:  I'll just listen to argument on it --

15           MR. BRAY:  Yeah.

16           THE COURT:  -- because it comes down to a very simple

17   issue.  And I'll leave it at that.

18           Okay.  Anyone else want to be heard --

19           MR. BRAY:  Thank you, Your Honor.

20           THE COURT:  -- on any subject?

21           MR. BRAY:  Thank you, sir.

22           THE COURT:  All right, thank you for all your time.  I

23   will look forward to seeing you on the 4th.

24       (Whereupon these proceedings were concluded at 2:20 PM)

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                    I N D E X

2  RULINGS:                                    PAGE  LINE

3  Chubb Settlement Motion is approved;         32    17

4  objections are overruled.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1          C E R T I F I C A T I O N

2

3     I, Penina Wolicki, certify that the foregoing transcript is a

4     true and accurate record of the proceedings.

5

6     *Penina Wolicki*

7

8     _____

9     /s/ PENINA WOLICKI, CET-569

10

11    eScribers

12    7227 N. 16th Street, Suite #207

13    Phoenix, AZ 85020

14

15    Date:  January 30, 2020

16

17

18

19

20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**AB (1)**
8:11
**aback (1)**
34:16
**Abrams (12)**
33:13,14,15,20;34:4,
8,14,24;35:9,22;36:2,4
**absolutely (3)**
8:7;18:4;27:5
**accept (2)**
10:19;13:4
**accommodate (1)**
33:21
**account (2)**
10:2,5
**achieve (2)**
32:14,16
**across (1)**
16:17
**actual (1)**
43:10
**actually (1)**
34:10
**add (1)**
26:5
**additional (1)**
44:23
**address (1)**
39:15
**administered (1)**
9:17
**admittedly (1)**
9:22
**Adventist (1)**
43:19
**advise (3)**
8:5,8;37:2
**advised (1)**
37:4
**affect (1)**
20:7
**afternoon (7)**
6:4,11,13,14;22:14;
34:17;36:24
**again (11)**
6:4;15:19;24:6;
25:19;29:14;32:2,9;
35:21;40:25;43:24;
46:7
**against (6)**
28:5,6,7,12;45:25;
47:6
**agencies (1)**
43:5
**agency (1)**
42:4
**agency's (1)**
39:7
**agenda (3)**
6:6,6;39:15

**aggregate (3)**
19:13;20:12;26:17
**ago (1)**
23:17
**agree (6)**
6:21;8:17;14:13;
23:25;43:25;47:12
**agreed (4)**
6:16;30:2;44:1;45:7
**agreement (9)**
10:15;11:9;23:10;
28:2;29:8,8;40:14,18;
47:24
**agreements (1)**
42:8
**ahead (1)**
17:14
**alacrity (1)**
12:24
**alike (1)**
30:6
**alive (1)**
37:9
**allocations (1)**
29:24
**allowed (5)**
9:3,15,21;10:11,13
**almost (2)**
14:25;35:20
**along (2)**
47:14,17
**alter (1)**
11:15
**alternative (1)**
12:5
**amended (1)**
37:4
**amendment (1)**
37:24
**among (2)**
23:19,23
**amount (10)**
8:16;9:3,4;10:8;
19:13;25:14,15;26:17;
29:5;47:4
**amounts (6)**
15:12,23,23;19:25;
29:5;30:5
**announced (1)**
24:8
**annoying (1)**
19:20,21
**answered (1)**
23:5
**anti- (2)**
37:5;38:19
**anticipated (1)**
38:21
**APA (1)**
42:14
**apologize (1)**
22:20;33:16
**appear (1)**

21:17
**appeared (1)**
33:23
**appreciate (7)**
14:3,6;21:10;22:10;
35:2;36:2;46:22
**appropriate (3)**
29:6;30:25;32:1
**approval (4)**
12:19;23:12;36:21;
45:11
**approve (4)**
24:13;29:14,23;
32:18
**approved (6)**
8:22;23:15;33:5;
40:14,19;45:14
**approves (1)**
12:22
**approving (1)**
7:3
**argue (2)**
17:15;18:7
**argues (2)**
9:13,14
**argument (6)**
8:2;16:20;35:24;
38:12;47:25;48:14
**arguments (2)**
16:17;31:10
**aside (4)**
10:21;13:19;31:2;
42:25
**aspect (1)**
27:20
**aspects (1)**
29:23;31:22
**assess (2)**
12:25;18:5
**assessment (2)**
13:9;16:8
**asterisk (1)**
43:22
**attach (1)**
42:15
**attached (1)**
41:17
**attempted (1)**
32:15
**attend (1)**
22:23
**Attorney (1)**
21:22
**authority (3)**
6:7;17:18,21
**available (1)**
24:10;40:20
**avenue (1)**
24:9
**aware (3)**
13:13;23:20;40:12
**awareness (1)**
14:17

**away (5)**
15:5;19:6;38:11;
44:8,12

## B

**back (10)**
14:7;16:9;33:12,15;
35:21;38:18;39:2,3;
42:20;44:3
**bad (2)**
8:6;19:12
**Baker (1)**
41:3
**BALABANIAN (112)**
6:9,11,12,13,14,18,
21;7:9,12,15,17,19,21;
8:17,20,23;9:5,9,12,17,
23,25;10:9,17,24;11:1,
5,9,13,15,17,22,24;
12:1,5,11,23;13:6,8;
14:3,6,12,14;15:9,15,
17,20,21,25;16:4,6,24;
17:16,22,25;18:9,12,
15,18,21,23;19:3,8,10,
16,18,24;20:4,8,17;
21:10,12,16,19,25;
22:3,7,10;23:5;25:7,
23;26:4,8,12,16,21,25;
27:2,8,10,13,16,19,22,
24;28:7,9,11,14;29:7,
11;30:7,9,11,17;31:7,9;
32:21,23,25;33:2,4
**bankruptcy (19)**
9:6;10:10,19;12:3,
15;14:9,12;15:3,19:19,
22;25:8;27:16,20;28:1,
23;29:16;31:21;35:5;
45:22
**barreled (1)**
18:5
**basis (2)**
24:12;40:11
**becomes (1)**
16:16
**behalf (3)**
37:1;40:9;41:3
**believes (1)**
35:6
**beneficiaries (1)**
41:11
**benefit (2)**
13:20;14:14
**best (1)**
28:13
**better (2)**
31:20;47:18
**beyond (2)**
6:23;41:7
**big (1)**
28:25
**billions (1)**
40:6

**bit (1)**
45:12
**blanks (1)**
41:10
**bondholders (2)**
24:9;34:3
**both (4)**
20:18;37:23;44:24;
45:18
**Boutin (1)**
36:25
**box (1)**
42:1
**Bray (18)**
44:14,15,17,19,19;
45:4,15;46:2;47:12,17;
48:2,6,9,11,13,15,19,21
**Bray's (1)**
45:24
**breach (3)**
10:23;11:2,6
**break (1)**
44:16
**brief (1)**
23:3
**briefed (1)**
39:10
**briefing (1)**
39:19
**briefly (1)**
48:7
**briefs (2)**
6:22;48:12
**broader (1)**
14:8
**broke (1)**
33:12
**brought (1)**
14:24
**burden (1)**
35:16
**Butte (1)**
25:1

## C

**calendar (1)**
34:7
**CALIFORNIA (3)**
6:1;14:10;32:15
**Call (4)**
6:3;17:22;28:1;
33:24
**called (2)**
28:25;36:8
**came (2)**
24:7;32:2
**Camp (1)**
16:11
**can (17)**
8:5;10:18;17:22;
21:1;24:4;30:9;35:25;
36:15;39:4,10,18;

Case: 19-30088   Doc# 5563   Filed: 01/30/20   Entered: 01/30/20 12:13:55   Page 51
of 59

40:23,24,25;42:4,17;
43:3
**cards (1)**
21:1
**care (4)**
8:14;22:24;32:13;
38:5
**case (4)**
31:18;34:15;38:8;
42:17
**cases (1)**
6:7
**Cecily (1)**
41:3
**certain (2)**
9:3;31:22
**certainly (6)**
14:9;24:2;32:15;
43:4,22;45:8
**cetera (2)**
18:5;39:19
**chair (1)**
41:1
**challenge (1)**
38:19
**challenging (1)**
24:5
**chambers (1)**
46:21
**chance (1)**
12:25
**channeled (2)**
40:7,21
**Chapter (1)**
36:8
**check (2)**
14:1;30:3
**chose (1)**
34:17
**Chubb (1)**
32:18
**circulated (1)**
41:14
**circumstances (1)**
29:5
**cite (1)**
7:6
**citing (1)**
30:25
**Civil (1)**
40:2
**claim (7)**
9:3,15;10:13;18:5;
25:6;29:6;39:7
**claimant (3)**
40:15,20;41:8
**claimants (9)**
8:25;20:10;25:10,12,
13,20;40:21;41:4,12
**claimants' (4)**
7:24;8:1;20:15;
23:10
**claims (10)**

9:21;10:11;15:4;
25:11;40:7,10;41:6;
43:18,20;47:6
**clarified (1)**
26:10
**class (2)**
44:6;46:5
**classes (1)**
45:23
**classification (1)**
40:10
**Clean (1)**
37:1
**clear (5)**
7:19,21;38:6,13;
44:21
**client (2)**
10:1;45:24
**clients (7)**
8:2,5,8,14,17;10:1;
16:11
**clients' (1)**
29:21
**close (3)**
19:4,5,8
**co-Counsel (1)**
30:22
**Code (4)**
27:16,20;28:1;45:22
**coincidental (1)**
24:7
**comers (1)**
36:7
**coming (2)**
24:25;25:8
**comment (1)**
46:22
**comments (3)**
43:13;44:23;46:11
**commitment (1)**
33:17
**committee (7)**
7:24;8:1;23:11;41:4;
44:20;45:1;48:9
**common (1)**
47:20
**community (1)**
14:16
**compensated (1)**
20:22
**competing (1)**
38:21
**complaining (2)**
17:3;31:1
**complex (2)**
42:6,7
**component (1)**
19:14
**concede (2)**
6:23;7:17
**concern (2)**
14:15;30:18
**concerned (2)**

8:21,23
**concerns (9)**
23:19,23;24:1;29:15;
31:17;38:3;39:6;40:9;
44:24
**concluded (1)**
48:24
**concludes (1)**
33:10
**conclusion (2)**
13:16;31:15
**condemnation (1)**
39:5
**condition (1)**
16:7
**conference (2)**
39:20;44:22
**conferences (1)**
47:14
**confident (1)**
24:14
**confidential (18)**
7:15,22,22;8:22,23;
9:22;11:10;12:2,14;
16:8;23:18;24:17,18,
18;25:4;28:1,3;29:24
**confidentiality (2)**
11:4;12:10
**confidentially (2)**
28:24;31:23
**confirmed (1)**
47:19
**connection (1)**
41:15
**consenting (3)**
40:15,19;41:8
**consider (2)**
6:19;31:11
**consideration (1)**
29:10
**considered (3)**
31:9,12,14
**considering (1)**
45:9
**consistent (3)**
32:13;33:5,7
**constituents (1)**
41:10
**context (1)**
32:1
**continue (1)**
41:11
**continued (2)**
44:22;45:8
**contract (1)**
27:25
**coordinate (1)**
21:25
**correctly (1)**
24:16
**Counsel (13)**
16:1;20:18;21:9,14;
26:1;30:1;36:14,18;

37:3;39:1;42:24;44:19;
47:24
**couple (4)**
11:15,17;23:4;36:17
**coupled (1)**
38:20
**course (3)**
6:23;8:2;10:13;
19:24;20:4;36:17
**Court (192)**
6:3,4,10,13,17,19,24;
7:7,11,14,16,18,20;8:8,
19,21;9:1,7,10,16,20,
24;10:1,16,18,25;11:3,
8,11,14,16,18,23,25;
12:4,9,18;13:2,7,8,12,
14,15,18,18;14:4,6,11,
13,21;15:1,1,10,16,19,
21;16:3,5,19,25;17:20,
24;18:6,8,11,14,16,20,
22,24;19:4,9,11,17,21,
25;20:2,5,17;21:11,13,
18,20;22:2,4,9,12,16,
19,21,24;23:8,22,25;
24:2,15,21,23;25:14,
17,21,23;26:5,10,15,
20,22;27:1,6,9,12,15,
18,21,23;28:6,8,10,13,
16,18,22;29:9,13,22;
30:8,10,16,18;31:8,21,
21;32:24;33:1,3,7,9,13,
15,21;34:5,9,15,25;
35:10,23;36:3,5,24;
37:2,11,13,16,18;
38:11,16;39:9,14,23;
40:1,4,23;41:15,21,23,
25;42:11,13;43:16;
44:1,3,13,15,18,23;
45:3,14,18;46:3,12,15;
47:16,22;48:3,5,8,10,
12,14,16,20,22
**courtroom (2)**
42:23
**Court's (5)**
6:15;7:3;14:3;22:10;
33:5
**cram (1)**
46:1
**crazy (1)**
20:13
**create (2)**
20:9;46:4
**creditors (1)**
47:24
**creditor's (1)**
42:25
**criminal (1)**
31:1
**critical (3)**
42:2,23,24
**criticisms (1)**
30:21
**culprit (1)**

22:16
**current (1)**
29:18
**currently (1)**
40:11
**cut (2)**
26:18;33:16;44:15

**D**

**date (3)**
19:2,6;22:4
**dates (1)**
42:21
**day (3)**
14:20;16:9;17:17
**days (2)**
19:6;23:6
**days' (1)**
12:24
**de (1)**
30:20
**deadline (4)**
6:23;7:1;34:11;35:7
**deal (6)**
8:6;25:19;33:17;
35:13;38:17;44:9
**dealing (1)**
31:2
**dealt (3)**
25:11;37:22;39:4
**debtor (11)**
7:9,23;9:12;10:23;
15:22;18:3;23:2;27:25;
38:4;41:9;45:7
**debtors (2)**
23:2;34:9
**debtors' (4)**
37:3,13;39:17;40:8
**debtor's (1)**
37:24
**decide (3)**
9:18;10:20;35:25
**decided (1)**
24:10
**deciding (1)**
23:9
**decision (6)**
10:8;31:23,24;32:4,
5,7
**decision-makers (1)**
42:24
**defending (1)**
20:18
**defense (1)**
19:5
**deliberations (1)**
23:7
**denied (1)**
18:24
**deny (1)**
18:12
**Department (1)**

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 52
of 59

40:2
**depends (1)**
45:11
**describe (1)**
24:19
**describing (1)**
34:18
**description (1)**
46:16
**determine (1)**
44:6
**determined (1)**
29:7
**Diane (1)**
21:23
**difference (3)**
8:15;10:8;20:8
**different (13)**
8:15;10:12;11:12;
13:16;17:24;22:5;25:8;
28:20,22;29:5;41:20;
43:23;44:14
**difficult (2)**
16:16;46:13
**directly (1)**
24:5
**disagree (1)**
31:17
**discharge (1)**
37:21
**disclose (3)**
10:22;11:11;15:22
**disclosed (4)**
10:12;12:3,6;15:24
**disclosure (3)**
13:3;15:11;41:17
**disclosures (3)**
8:9;12:24;31:25
**discrete (1)**
31:22
**discussion (3)**
39:3;43:9;46:7
**discussions (2)**
12:13;45:21
**distribution (2)**
10:3;12:20
**distributions (1)**
15:7
**District (3)**
13:15,18;15:1
**Division (1)**
40:3
**docket (3)**
36:15;46:16,22
**document (6)**
22:2;34:19;41:9,13,
16;46:20
**documents (1)**
29:23
**dollar-dollar (1)**
29:3
**dollars (2)**
8:12;40:6

**done (4)**
15:6;31:4;41:6;
42:14
**doubt (1)**
32:25
**down (6)**
13:24;23:18;30:2;
39:18;46:1;48:16
**dozen (1)**
42:23
**draft (1)**
42:15
**due (1)**
12:24
**Dumas (12)**
40:25;41:2,3,22,24;
42:9,12;43:14,17;44:2;
46:8;47:2
**Dumpty (1)**
35:21
**duties (1)**
45:1
**dynamics (1)**
45:10

**E**

**earlier (1)**
47:2
**eat (1)**
8:25
**eats (1)**
20:15
**echo (1)**
40:8
**educate (1)**
20:18
**education (1)**
47:11
**effort (1)**
7:12
**either (3)**
11:19;15:23;36:6
**else (7)**
8:15;17:14;21:13;
26:11;39:23;40:24;
48:18
**embodied (1)**
10:15
**end (5)**
14:20;15:18;16:9;
17:17;45:23
**endorse (1)**
31:24
**Energy (1)**
37:1
**enough (1)**
10:20
**enter (2)**
7:9;23:9
**entering (1)**
12:13
**entire (1)**

20:13
**entirety (1)**
12:21
**entitled (4)**
8:18;16:12;35:15;
43:24
**entitlement (1)**
29:4
**envision (1)**
27:2
**equal (1)**
29:3
**equally (5)**
26:23;27:12,13;29:2,
4
**essentially (1)**
17:16
**estimation (4)**
13:15,19;15:2,4
**et (2)**
18:5;39:19
**even (5)**
15:4;19:22;24:4;
28:21;38:21
**everybody (3)**
19:20;36:20;47:11
**everyone (5)**
6:4;31:20;33:18;
43:6;47:19
**everyone's (1)**
30:14
**evident (1)**
31:19
**exact (1)**
25:15
**example (1)**
7:24
**exchange (1)**
39:16
**exculpation (2)**
37:21;38:5
**Excuse (3)**
6:11;9:13;18:10
**expect (1)**
42:22
**expectation (1)**
8:13
**expecting (1)**
18:12
**experienced (1)**
19:1
**explain (2)**
24:15;25:24
**explained (3)**
24:6;25:25;26:1
**expressed (3)**
24:2;29:15;38:3
**expressly (2)**
23:11,16
**extent (3)**
42:4,17;43:3
**eyes (2)**
14:12;45:2

20:13
**F**

**fact (4)**
12:10,12;23:6;24:12
**fair (2)**
29:17;41:13
**Fairly (1)**
27:12
**faith (1)**
8:5
**fall (2)**
39:3;41:25
**familiar (1)**
10:19
**family (1)**
46:18
**far (2)**
7:1;45:8
**fashion (1)**
25:12
**faulting (1)**
16:19
**favorably (1)**
20:24
**fears (1)**
20:20
**federal (2)**
42:3;43:4
**feel (1)**
35:19
**FEMA (2)**
47:5,6
**few (4)**
12:15,24;23:17;24:8
**figure (2)**
16:20;46:5
**figuring (1)**
42:1
**file (5)**
23:12,13,13;34:25;
35:12
**filed (13)**
22:2;23:5,20;25:6;
33:8,9,23;34:9,10;
37:5;38:18;41:17;
43:20
**final (7)**
24:25;32:7,11;41:13;
42:1,14;44:10
**fine (1)**
44:17
**finish (1)**
47:22
**finite (3)**
9:22;25:14;29:25
**fire (21)**
12:21;13:13,20;
14:16;16:11,15;20:13;
23:19,20;25:1,5;26:21;
27:3;32:3,4;40:8,15,
19;41:8;45:25;46:17
**fires (3)**

26:3;28:21;32:13
**fire-surviving (1)**
28:20
**first (1)**
23:1
**five (1)**
23:6
**fix (1)**
14:21
**fixed (3)**
13:19;16:10,14
**flag (1)**
39:13
**flow (1)**
15:7
**folks (1)**
27:6
**follow (1)**
11:21
**following (2)**
32:3;36:11
**form (1)**
32:22
**formal (1)**
42:22
**former (1)**
14:23
**formula (2)**
10:3;30:6
**forward (6)**
12:23;13:14;32:5;
38:9;41:7;48:23
**founded (1)**
20:20
**FRANCISCO (1)**
6:1
**frankly (3)**
14:17;24:3;30:21
**frequently (1)**
31:21
**Friday (3)**
34:11;37:5,8
**frivolous (1)**
16:20
**front (1)**
30:1
**full (3)**
38:14;42:22;47:11
**function (1)**
27:25
**fund (4)**
10:3;16:10,14;47:4
**further (5)**
21:12;25:21;26:6;
36:11;39:19

**G**

**gave (1)**
42:21
**general (1)**
31:17
**gentlemen (1)**

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 53
of 59

47:7
**gets (2)**
8:15;42:20
**Ghetaldi (1)**
30:20
**given (4)**
11:5;14:1;32:1;
45:10
**global (1)**
12:20
**goals (1)**
32:14
**goes (2)**
14:8;38:9
**Goldman (5)**
21:15,15,16,18,23
**Good (13)**
6:4,11,13,14;8:5,6;
15:5,22;19:11;32:10;
36:24;47:13;48:4
**Gorton (12)**
36:22,23,25,25,25;
37:12,15,17,19;38:15;
39:8,22
**Gotshal (1)**
23:2
**Government (2)**
40:6;42:3
**governmental (3)**
37:20;38:1,22
**governments (1)**
38:6
**granted (1)**
18:7
**greatest (1)**
19:1
**Gregory (1)**
44:19
**group (4)**
8:4;12:21;26:13;
29:12
**guarantee (1)**
9:4
**guess (2)**
13:21;47:17

**H**

**half (3)**
15:3;39:20;42:23
**hand (1)**
34:16
**hands (1)**
38:14
**happen (5)**
14:2;29:20;35:23;
43:11;45:16
**happened (3)**
18:25;20:5;46:17
**happening (2)**
14:16;30:13
**happens (3)**
11:23;12:19,20

**hard (1)**
41:11
**hear (2)**
36:20,21
**heard (14)**
25:25;26:1,7;29:22;
34:22;35:11;36:1,6,7,
17;39:23;40:17;48:6,
18
**hearing (7)**
22:8;35:17;38:24;
39:2;45:17;46:10;47:2
**hearings (4)**
29:14;33:19;39:19;
42:22
**heartily (1)**
43:25
**hedging (1)**
45:12
**Hello (1)**
6:9
**help (1)**
40:24
**hesitate (1)**
41:19
**high (1)**
39:15
**history (1)**
14:9
**hold (1)**
28:18
**home (2)**
46:17,17
**honest (1)**
38:19
**Honor (37)**
6:9,9,12,14;7:4;
16:18;17:17;18:1,12,
18;21:10;22:7,15;
23:15;24:5,13;30:7;
31:7;32:23;33:14;36:2,
23;37:2;38:10;39:22,
25;40:13;41:3;42:10;
43:14;44:2,17;45:17;
46:2;47:12;48:7,19
**hope (5)**
10:2;16:6;22:24;
37:23;44:18
**hopefully (3)**
16:1;25:17;29:1
**hoping (2)**
37:17,19
**horrible (3)**
15:13;32:13;46:18
**Hostetler (1)**
41:3
**hostility (1)**
47:3
**hour (1)**
36:12
**huge (1)**
31:18
**Humpty (1)**

35:21
**hypothetical (1)**
9:2
**hypothetically (1)**
20:13
**hypotheticals (1)**
24:24

**I**

**idea (3)**
15:3;20:13;47:13
**identified (2)**
10:7;44:5
**identify (2)**
38:24;39:4
**impact (1)**
31:18
**impaired (4)**
44:7,7;45:23;46:4
**impairment (1)**
45:4
**impediment (1)**
38:8
**imperfect (1)**
20:21
**implemented (2)**
17:6,8
**important (1)**
30:11
**imposed (1)**
6:24
**improper (2)**
26:23;30:17
**improperly (3)**
20:14;26:18,22
**includes (1)**
14:19
**including (1)**
8:10
**individual (3)**
19:13,14;34:1
**individuals (1)**
26:18
**inflated (1)**
8:24
**information (3)**
11:6;43:21,24
**injunction (2)**
37:22;38:5
**insight (1)**
8:4
**insist (1)**
42:21
**instruction (1)**
6:15
**instrument (1)**
41:6
**insurmountable (1)**
14:25
**intend (4)**
29:1;33:10;40:11;
43:8

**intended (1)**
20:21
**intention (2)**
36:13;38:23
**interest (3)**
39:6;47:20;48:3
**interests (1)**
29:16
**internet (1)**
46:15
**into (17)**
7:10;8:4,7,25;10:2,5;
12:13;20:15;23:9;
26:18;28:25;30:6,14;
39:20;41:25;46:7,20
**inverse (1)**
39:5
**invitation (2)**
46:4,5
**invite (1)**
39:1
**involved (2)**
13:14;24:5
**involvement (1)**
30:23
**involves (1)**
15:4
**irrelevant (1)**
31:16
**issue (19)**
8:7;9:18;12:11;13:4;
14:8;16:13,16;26:16;
28:15;37:7,9,25;38:20,
22;39:14;45:4;47:6;
48:3,17
**issues (10)**
16:17;17:12;37:22;
38:2,17,25;39:11,11;
47:7,15
**item (1)**
6:6
**iteration (1)**
37:13

**J**

**JANUARY (1)**
6:1
**jeopardize (1)**
15:13
**join (1)**
22:1
**joinder (1)**
34:2
**joinders (1)**
40:16
**joined (3)**
6:16;21:21;25:3
**Jones (1)**
37:1
**judge (2)**
14:23;35:5
**judges (1)**

14:22
**judgment (2)**
24:25;28:23
**judgments (1)**
27:7
**June (2)**
15:7;35:7
**jury (2)**
14:25;30:1
**Justice (1)**
40:2

**K**

**Karotkin (30)**
22:14,15,18,20,22;
23:1,1,9,24;24:1,20,22;
25:10,16,18,22,24;
26:7;28:17;30:12;
32:20;33:8;37:3;40:23;
42:20;44:3,11,14;
47:23;48:4
**Karotkin's (1)**
36:9
**keep (4)**
11:10;28:3;37:8;
47:2
**keeping (2)**
29:23;41:12
**keeps (1)**
44:7
**kept (1)**
16:7
**Kind (2)**
24:7;45:20
**knew (1)**
23:17
**known (1)**
24:25

**L**

**lack (1)**
28:14
**language (1)**
12:14
**larger (1)**
26:19
**largest (1)**
14:9
**last (5)**
30:9;37:13;38:17;
39:3;41:16
**late (5)**
6:19;11:19;23:6;
24:6;31:11
**later (1)**
22:19
**law (1)**
35:4
**lawyer (1)**
13:22;19:1;21:22;
35:3,3,4,4;39:12;42:3,3

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 54
of 59

**lawyers (15)**
14:18,19,22,23,24;
16:25;19:5,6;29:12,16;
31:2;36:6;41:20;42:23;
46:9
**lead (2)**
34:2;42:24
**least (9)**
12:6,6;14:22;20:3;
28:20;29:19;30:11;
36:14,17
**leave (2)**
31:5;48:17
**lecture (1)**
30:24
**led (1)**
13:14
**legal (1)**
44:9
**legislature (1)**
32:15
**letters (2)**
17:2;46:11
**level (1)**
7:5
**lightly (1)**
17:13
**likely (1)**
44:11
**linked (1)**
10:7
**listen (2)**
35:25;48:14
**literally (2)**
24:8;38:16
**little (3)**
20:19;38:8;45:12
**living (1)**
41:9
**LLP (1)**
44:19
**local (1)**
38:6
**lodged (1)**
32:21
**logical (1)**
15:18
**long (3)**
16:11;28:23;42:5
**look (8)**
11:18;13:1,11;16:9;
28:4;45:2,18;48:23
**looks (1)**
44:10
**lose (1)**
32:8
**lot (13)**
14:15,23,23;17:18,
20;33:21;35:19;41:5;
42:19,19;43:14;46:10;
47:4
**lots (3)**
17:4;23:19;35:23

**lunch (2)**
44:16,18

## M

**magnitude (1)**
31:18
**main (2)**
41:10,10
**maintain (1)**
11:3
**maintained (1)**
31:23
**major (8)**
43:3,5,17,18,19,22,
24;44:5
**makes (1)**
43:14
**making (1)**
10:8
**manage (1)**
42:16
**Manges (1)**
23:2
**manner (2)**
25:9;32:19
**many (4)**
31:18;41:19,20;
46:20
**marathon (1)**
33:19
**Mark (2)**
36:25,25
**matrix (2)**
27:4;29:1
**matter (12)**
8:11,13,16,19;10:13;
22:22;24:3,12;33:11;
44:9;46:1;47:8
**matters (1)**
36:18
**Matthew (1)**
39:25
**may (7)**
8:24,24;20:1,1;24:1;
26:4;44:14
**maybe (6)**
12:24;24:9,17;35:6;
39:18;45:19
**mean (15)**
7:23;10:18,23;11:14;
12:12;15:1;20:1;23:22;
24:23;26:5;29:3;32:17;
46:23;47:1,18
**means (3)**
7:22;29:3;47:1
**meant (1)**
7:22
**mediated (1)**
42:9
**mediation (3)**
13:12,17;25:3
**mediator (3)**

17:9,11;32:7
**meet-and-confer (1)**
37:3
**members (1)**
46:11
**meritorious (1)**
11:20
**mess (1)**
31:3
**metrics (1)**
10:4
**middle (1)**
33:16
**might (6)**
12:11;13:23;14:6;
42:18,22,23
**Milbank (1)**
44:19
**mindful (1)**
46:19
**minds (1)**
43:23
**minor (1)**
43:6
**minute (1)**
39:13
**minutes (2)**
23:17;24:8
**missing (1)**
17:21
**misunderstanding (1)**
28:19
**Monday (3)**
34:10,12;35:1
**money (2)**
13:20;20:10
**Moore (1)**
21:23
**moot (1)**
34:6
**more (4)**
20:19,24;31:19,19;
44:22;47:9
**morning (4)**
16:23;17:1;22:6;
29:15;33:12;36:7;
38:14;41:5,15;47:23
**most (1)**
32:14
**motion (23)**
6:7;9:11;18:13;
23:12,13,14,21;32:10,
18;33:5,6,7,8,9,24;
34:1,2,10;35:17;36:21;
40:17;42:15;44:6
**motions (1)**
32:3
**motivators (1)**
19:1
**move (2)**
12:23;34:16
**moved (1)**
41:7

**much (5)**
17:23;26:8;34:12;
36:12;47:3
**municipality (1)**
38:20
**municipalization (1)**
37:6
**myself (1)**
7:25

## N

**name (5)**
6:10,12;10:7;15:11;
21:14
**named (1)**
24:16
**names (3)**
15:23;24:17,17
**narrowly (1)**
37:22
**necessarily (2)**
10:16;25:15
**necessary (2)**
13:25;38:25
**need (7)**
6:10;31:22;32:9;
34:25;35:1;47:10;
48:10
**needed (1)**
18:3,4;34:15
**negotiated (6)**
12:20;28:24;29:11;
31:4;34:6;42:7
**negotiations (3)**
7:10;30:14,15
**new (3)**
34:21,23;38:23
**next (7)**
17:11;32:12;35:11,
24;36:13;39:20;43:9
**night (1)**
38:17
**nineteen (3)**
21:3;25:2;26:13
**nitpick (1)**
44:25
**non- (1)**
14:23
**non-bankruptcy (1)**
15:2
**none (2)**
15:2;21:1
**noon (1)**
35:1
**note (1)**
23:4
**noted (1)**
43:12
**noticed (1)**
29:13
**notion (1)**
31:17

**number (5)**
9:21;10:6;12:1;
15:12;16:25;17:3,9;
29:25;30:20
**numbers (1)**
9:22

## O

**object (1)**
40:11
**objecting (2)**
12:9;30:22
**objection (21)**
6:16,22,23;7:2,2;
21:22;23:12,13,14,21;
31:1,11;34:20,22,25;
35:11;43:1,1,2,18,20
**objections (7)**
6:8,20;11:19,21;
31:16;32:18,24
**objector (1)**
6:8
**objectors (1)**
6:15
**obviously (1)**
11:16;28:4
**occasionally (1)**
19:23
**o'clock (1)**
35:11
**odds (1)**
14:25
**off (7)**
33:12,16;34:7;39:4;
44:15;45:9;47:15
**official (3)**
41:4;44:20;45:1
**once (1)**
44:10
**one (28)**
6:21;8:6;12:1;14:19,
22;17:7,7;19:1;23:20,
21;25:1,3,4,4;28:22,23,
24;30:9;35:6,13;37:14;
39:5,6;40:6,25;45:5,
23;47:22
**ones (1)**
25:3
**only (5)**
7:22,23;22:4;31:2;
33:17
**oOo- (1)**
6:2
**open (1)**
43:8
**operate (2)**
8:10;26:2
**opinion (4)**
18:6,8,8,10
**opponents (1)**
42:18
**opportunity (1)**

Min-U-Script®

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 55
of 59

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) lawyers - opportunity

29:22
**oppose (1)**
13:5
**opposing (1)**
21:8
**opposition (2)**
30:19;34:11
**options (2)**
11:17,24
**order (8)**
6:3;7:3;12:22;13:3;
15:22;32:21,22;33:22
**ordered (2)**
13:12,13
**orders (1)**
34:9
**ordinary (1)**
18:9
**original (1)**
16:10
**originally (1)**
22:5
**Orsini (2)**
22:12,13
**others (2)**
30:20;32:6
**out (18)**
7:5;10:11;16:21;
17:9;18:9;20:12;21:7;
24:25;29:1;31:19;32:2,
14;38:7;39:13;42:1;
45:8;46:5;47:10
**outcome (2)**
9:2;45:15
**outline (1)**
42:20
**outlines (1)**
41:18
**outset (1)**
23:4
**outside (3)**
7:1;14:24;19:19
**over (3)**
25:13;38:2;44:7
**overinflated (1)**
20:14
**overran (1)**
46:17
**overrule (2)**
11:19;32:17
**overruled (1)**
31:16
**own (4)**
14:2;32:6,7;33:17

**P**

**paid (9)**
8:12,18;10:13;16:12;
20:11;21:6;25:1,5;
26:17
**papers (1)**
38:12

**pardon (1)**
33:3
**Part (1)**
45:11
**participated (2)**
23:7;25:2
**particular (3)**
10:6;29:6;46:8
**particularly (1)**
19:25
**parties (3)**
24:17;28:2;32:14
**parties' (1)**
41:20
**party (4)**
11:1;9:20:10;21:21
**Pascuzzi (3)**
36:19;40:9;43:12
**Pascuzzi's (2)**
39:6;43:1
**past (2)**
16:18;42:7
**pay (1)**
10:14
**peculiar (1)**
30:12
**pending (1)**
43:18
**penny (1)**
25:1
**people (18)**
9:2;10:7;12:25;17:2,
9;20:23;21:2,3;25:7;
26:2;28:20;29:25;
31:19;33:22;46:10,21;
47:4,6
**people's (1)**
15:12
**per (3)**
6:14;9:17;10:14
**perhaps (1)**
14:9
**permit (1)**
32:4
**person (4)**
19:14;24:24,25;
46:16
**personal (3)**
13:22;22:22;46:14
**personality (1)**
46:8
**personalizing (1)**
15:11
**perspective (1)**
7:25
**PG&E (2)**
38:8;47:3
**phone (1)**
21:20
**pick (2)**
39:13;47:14
**picked (1)**
39:4

**pin (1)**
39:18
**Pitre (2)**
9:14;30:19
**place (1)**
29:20
**plaintiff (2)**
8:12;9:3
**plaintiffs (7)**
7:10,23;9:14;20:24;
25:2;26:14;30:1
**plaintiffs' (1)**
19:5
**plan (20)**
8:2,9,10;37:4,14,24;
38:21,23;40:8,11;
44:10,24;45:2,10,24,
25;46:1;47:14,19,19
**plans (1)**
37:23
**play (1)**
7:5
**played (1)**
32:1
**player (1)**
43:19
**players (9)**
42:2,18;43:4,5,6,17,
18,23,24
**pleading (3)**
23:6;24:6,7
**pleadings (1)**
24:2
**Please (1)**
6:4
**plight (1)**
17:4
**PM (2)**
6:1;48:24
**podium (1)**
41:2
**point (10)**
15:22;16:10,17;17:8;
19:12;31:5;35:15;40:5;
43:12;47:22
**points (1)**
6:22
**pool (2)**
20:9;26:19
**poor (1)**
46:16
**portions (1)**
42:2
**position (1)**
17:8
**positions (1)**
21:8
**possible (1)**
14:15
**posting (1)**
46:13
**post-petition (1)**
39:5

**pot (1)**
20:15
**potentially (3)**
16:1;28:4,11
**PPI (1)**
44:25
**practitioner (2)**
10:10;12:16
**precedent (4)**
17:20,22,23,23
**predetermine (1)**
45:13
**preference (8)**
7:10,23;8:12;9:13;
25:2,20;26:13;40:17
**preferred (1)**
25:12
**pre-judge (1)**
45:16
**preliminary (1)**
39:17
**prepare (1)**
38:24
**prepared (1)**
36:14
**presence (1)**
14:24
**presented (2)**
8:3;24:12
**presume (1)**
46:9
**primary (1)**
6:22
**principal (3)**
36:14;42:18;46:9
**prior (1)**
34:2
**private (1)**
19:18
**privy (1)**
45:20
**probably (1)**
30:25
**problem (5)**
8:20;16:21;17:5;
20:16;46:6
**procedures (1)**
41:7
**proceeding (1)**
41:16
**proceedings (1)**
48:24
**process (8)**
7:5;15:2;17:18,25;
32:12;41:19;42:5;
44:24
**professionals (3)**
40:15,20;41:8
**professor (1)**
35:4
**progress (1)**
42:19
**promise (1)**

20:25
**proofs (1)**
25:6
**proper (2)**
30:24;31:24
**properly (2)**
20:22;24:19
**proposal (1)**
36:9
**proposed (2)**
32:21;36:16
**propriety (1)**
13:10
**protections (1)**
38:1
**provided (1)**
38:1
**provision (2)**
37:6;38:6
**provisions (5)**
7:5;23:11,16,18;
37:20
**public (4)**
10:12;29:13;46:11,
20
**publicize (1)**
47:9
**pull (1)**
38:16
**purchase (1)**
42:8
**purposes (1)**
8:1
**pursuant (1)**
27:16
**pursue (1)**
24:10
**put (16)**
10:23;18:20,22;30:6;
31:2;32:11,11;34:11,
12;35:21;39:15;43:22;
44:7;46:10,15,22

**Q**

**qualitative (1)**
26:22
**quick (1)**
40:5
**quickly (1)**
34:16
**quite (2)**
12:17;30:20

**R**

**Rafey (1)**
6:12
**raised (2)**
39:11,12
**ranking (1)**
20:23
**rather (1)**

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 56
of 59

30:3
**ready (3)**
29:25;41:13,20
**reaffirmed (1)**
26:10
**real (1)**
39:18
**really (10)**
7:22;13:9,10;14:4;
15:4;18:18;24:3;33:16;
34:17;35:16
**reason (6)**
10:20;13:24;15:6;
35:14;45:25;47:10
**reasonable (1)**
43:23
**reasons (3)**
17:5;31:22;35:5
**recipients (1)**
17:1
**reconsider (1)**
35:17
**reconvening (1)**
36:13
**record (2)**
23:17;31:9
**recover (1)**
16:15
**recovery (1)**
8:25
**referenced (1)**
40:16
**referred (1)**
41:9
**refinements (1)**
36:16
**regard (1)**
43:4
**regular (1)**
47:14
**related (1)**
40:7
**relationship (1)**
38:8
**relative (2)**
21:8;45:10
**relatively (2)**
10:6;45:8
**release (2)**
37:21;38:5
**relevant (3)**
7:8;9:10;13:23
**relief (4)**
13:13;18:7,24;32:3
**remain (2)**
7:15;12:14
**remark (1)**
36:11
**remember (1)**
39:2
**rendered (1)**
34:6
**renegotiate (1)**

38:4
**renoticed (1)**
22:6
**reorganization (1)**
8:3
**repeat (1)**
32:2
**report (1)**
36:8
**represent (2)**
17:3;21:2
**representatives (2)**
29:21;39:17
**represented (1)**
9:14
**representing (1)**
29:16
**research (1)**
12:16
**reserve (1)**
44:21
**re-set (1)**
35:17
**resolution (4)**
12:21;41:6,7,18
**resolve (1)**
45:21
**resolved (2)**
15:1;47:18
**resolves (1)**
17:12
**respect (6)**
10:11;24:3,14;31:20;
40:10,16
**respond (1)**
40:23
**response (1)**
6:22
**responses (1)**
46:21
**rest (1)**
17:14
**restate (1)**
33:22
**restructuring (1)**
23:10
**result (4)**
11:23;18:11,15;
28:13
**results (1)**
32:10
**reversing (1)**
46:25
**reviewed (2)**
31:25;38:18
**revisit (2)**
33:24;35:16
**revisiting (1)**
36:1
**Right (27)**
7:11,16,18;9:16,23;
11:14;18:11,15,16;
19:3,7;21:14;22:25;

30:1,5;31:8;34:22;
36:5;37:16;39:8,23;
45:3,8;46:3;47:16;
48:13,22
**rise (1)**
37:2
**risk (4)**
13:23;15:14,16;
46:13
**role (2)**
30:15;47:8
**roll-up-your-sleeves (1)**
43:10
**Ronald (2)**
21:18,23
**room (3)**
30:13;33:18;39:12
**RSA (15)**
7:2,3,4;10:14,23;
11:1,6;13:19;23:15;
33:25;34:21,23;35:12;
36:21;45:12
**RSAs (2)**
33:25;35:16;36:1
**rule (2)**
39:14;43:6
**ruling (1)**
35:14
**rush (1)**
38:12
**rushed (1)**
36:6

**S**

**sale (1)**
42:7
**same (11)**
25:11;26:13;27:11;
28:21;29:12;31:14;
37:24;39:1,10,11;40:9
**SAN (1)**
6:1
**satisfied (1)**
8:11
**satisfies (1)**
47:20
**saw (1)**
30:19
**saying (8)**
14:7;15:10;28:9;
34:18,19;42:17;43:6;
46:25
**schedule (4)**
35:1;39:18;43:10;
44:24
**scheduled (1)**
38:25
**schedules (1)**
35:5
**scheduling (2)**
39:10,20
**scope (2)**

37:21,25
**sealed (2)**
19:23;20:2
**sealing (1)**
23:13
**seasoned (1)**
29:16
**seated (1)**
6:5
**second (2)**
38:12;39:20
**Secondly (1)**
40:13
**secret (1)**
13:25
**sections (1)**
31:1
**seeing (1)**
48:23
**seek (1)**
6:7
**seeking (1)**
47:6
**seem (1)**
20:1
**seemed (1)**
14:24
**seems (2)**
13:23;15:13
**select (1)**
32:7
**senior (1)**
34:2
**sense (2)**
42:19;43:15
**sent (1)**
46:21
**separate (1)**
43:6
**separately (2)**
39:10,13
**serious (2)**
24:4;29:15
**seriously (1)**
45:9
**set (5)**
10:20;15:6;32:14;
34:17;42:25
**sets (1)**
13:19
**setting (1)**
13:15
**settle (1)**
6:7
**settled (4)**
9:21;21:3;28:23;
31:4
**settlement (32)**
7:10,13;8:24;10:4;
12:13;13:5,9;14:1;
17:12;19:2,11,12,12,
15,19;20:18;24:8,13,
18;25:15;27:19,20,24;

28:2,3,24;29:12,24;
31:3;32:18;34:5;44:8
**settlements (14)**
8:4;12:2,3,8,12;
13:10;19:23;20:2,9,11,
14;30:2;33:24;42:7
**severing (1)**
7:25
**shake (1)**
21:7
**share (6)**
16:6;36:14;41:19;
42:4,17;43:21
**shared (2)**
38:2;47:2
**sharing (1)**
42:2
**short (2)**
33:22;34:9
**shortly (1)**
15:7
**side (1)**
11:18
**sign (2)**
12:22;33:10
**signed (1)**
21:22
**significant (1)**
32:12
**similar (2)**
25:9;26:1
**simple (2)**
6:25;48:16
**simplify (1)**
42:5
**simply (4)**
37:2;38:3;39:16;
40:18
**single (1)**
39:12
**sit (2)**
42:24;47:9
**situation (6)**
8:3;12:17;18:2;21:3,
4;27:2
**situations (1)**
25:19
**slightest (1)**
15:3
**small (3)**
10:6;15:11;43:24
**solution (1)**
16:21
**solve (3)**
16:21;17:5;46:5
**somebody (3)**
8:15;15:23;20:5;
40:24,25
**somebody's (1)**
14:1
**somehow (1)**
20:14;27:5;30:12
**sometimes (1)**

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 57
of 59

42:13
**somewhat (2)**
14:8;18:6
**sooner (1)**
47:18
**sorry (1)**
21:16
**sort (2)**
30:4;47:13
**sound (1)**
38:25
**sounds (1)**
13:2
**speak (6)**
6:8,15;21:9,13,19;
26:16
**special (2)**
37:20,25
**specific (2)**
29:24;30:14
**specifically (2)**
7:7;31:10
**specter (1)**
17:8
**split (1)**
6:16
**spoke (1)**
22:7
**staff (1)**
33:18
**stage (2)**
13:15;15:6
**stand (1)**
44:4
**standing (1)**
24:4
**start (3)**
15:7;24:23;30:25
**starts (1)**
36:9
**state (8)**
13:17;15:1;20:2;
30:4;38:2;40:9;42:4;
43:4
**statement (1)**
41:17
**statements (1)**
36:9
**stating (1)**
6:25
**status (3)**
36:8;44:22;47:14
**statused (1)**
37:9
**statute (1)**
8:13
**statutory (1)**
45:1
**stay (5)**
13:13;18:7,25;32:3;
40:25
**step (1)**
32:12

**Stephen (1)**
23:1
**stepping (1)**
14:7
**stick (1)**
9:2
**still (8)**
13:3,5;33:13;35:8;
37:23;43:13;45:1,5
**stink (1)**
18:3
**stock (1)**
47:3
**stood (1)**
29:25
**street (2)**
30:2;38:7
**strike (1)**
7:12
**strongly (1)**
35:19
**struggling (1)**
47:8
**subject (3)**
36:8,20;48:20
**submit (1)**
47:25
**submitted (1)**
32:19
**subrogation (2)**
33:25;44:6
**substance (1)**
44:22
**substantial (1)**
40:21
**substitute (1)**
22:15
**successfully (1)**
38:9
**sudden (1)**
15:5
**suffered (2)**
26:3;28:21
**suggest (1)**
35:13
**suggesting (2)**
15:12,18
**suggestion (1)**
47:13
**suggestions (2)**
32:6;44:23
**sum (1)**
13:19
**Superior (1)**
13:14
**support (1)**
23:10
**suppose (1)**
15:25
**supposed (3)**
8:14;18:23;28:10
**sure (16)**
9:12;14:23;15:24;

19:3;20:22;25:6;28:18;
29:1,17;30:10;35:9,22;
43:5;44:4;46:1;47:17
**surprise (2)**
30:19;45:19
**surprising (1)**
30:21
**survivors (3)**
25:5;32:12;45:25
**sustain (2)**
11:20;32:17
**sympathetic (1)**
17:4
**sympathize (1)**
13:22
**system (3)**
17:6;20:21,21
**systems (1)**
29:17

**T**

**table (3)**
31:19;45:10;47:10
**talk (3)**
39:10;42:24;43:10
**talking (1)**
6:22
**talks (1)**
44:8
**TBDs (1)**
41:10
**TCC (14)**
10:23,24;11:5;12:6,
7;16:2,7;23:7;27:25;
33:25;40:15,19;41:8;
43:19
**TCC's (1)**
15:25
**telling (3)**
42:16;46:16,19
**tension (1)**
47:5
**term (1)**
28:2
**terms (6)**
10:14;21:8;24:18;
29:4,8;38:4
**thereafter (1)**
15:8
**therefore (4)**
13:7;31:15;35:10;
36:15
**thinking (3)**
30:5;39:17;45:6
**thinner (1)**
22:15
**third (1)**
43:19
**though (3)**
6:25;28:22;45:11
**thought (5)**
21:16;22:13,16;

47:12,13
**thousands (2)**
25:5;28:24
**three (2)**
25:7;28:20
**throw (1)**
10:25
**tied (1)**
27:20
**tight (2)**
35:1,5
**timeline (2)**
36:10,16
**timeliness (1)**
31:15
**timely (1)**
31:13
**times (1)**
12:15
**tipping (1)**
13:24
**Title (1)**
31:1
**today (5)**
7:8;9:2;11:12,13;
32:11
**today's (1)**
9:10
**together (4)**
35:21,24;37:18;
38:17
**told (2)**
13:25;28:19
**took (1)**
36:12
**tort (5)**
7:24;8:1;23:10;38:7;
41:4
**touched (1)**
47:23
**touches (1)**
32:11
**towards (2)**
18:5;47:3
**trade (1)**
47:24
**tragic (1)**
46:18
**transparent (2)**
14:15;29:18
**trap (1)**
42:1
**treat (1)**
30:6
**treated (9)**
20:24;25:9,11;26:12,
23;27:9,11,14;28:21
**treatment (1)**
30:3
**trial (6)**
14:25;18:6;19:2,6;
30:1;32:4
**tried (5)**

12:16;18:4,4;33:21;
46:10
**trouble (2)**
13:21;38:11
**Troy (7)**
39:25,25;40:1,2,4,5;
43:12
**true (2)**
10:16;46:9
**trust (22)**
8:10;9:18;10:15;
14:18;17:5;20:13;
24:20;25:11;28:25;
29:8,8,17,23;39:9;40:8,
14,18,22;41:6,11,18;
43:25
**trustee (2)**
9:18;10:14
**trustees (1)**
25:18
**truth (1)**
7:4
**try (8)**
11:12;17:13;23:3;
38:24;39:16;43:7;
45:21;47:14
**trying (4)**
16:20;28:18;33:17;
46:23
**Tubbs (8)**
6:7;13:13,17;18:3;
20:24;23:14;32:4;
40:16
**Tuesday (5)**
35:11,24;36:13;
39:15,20
**turn (5)**
32:7;39:19;43:8;
46:7,20
**twenty (1)**
48:12
**two (11)**
6:8;7:5;11:24;33:24;
35:16,18;36:12;40:5;
43:17;45:14,23
**type (3)**
17:18,25;28:1
**types (2)**
26:2;28:20

**U**

**Um-hum (1)**
48:2
**unavoidable (1)**
22:23
**unclear (1)**
16:14
**under (5)**
8:13,13;16:7;17:19;
40:8
**understandable (1)**
29:18

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 58
of 59

**understood (3)**
12:12;23:8;26:11
**unequally (1)**
27:12
**unexpected (1)**
18:8
**unfairly (1)**
27:12
**unhappy (1)**
35:14
**units (2)**
37:21;38:1
**unleash (1)**
32:8
**unless (2)**
40:24;46:22
**unorthodox (2)**
18:6,8
**unravelable (1)**
35:21
**untimeliness (1)**
31:15
**unusual (2)**
20:1,1
**up (11)**
14:18;19:20;24:4;
25:18;28:4,12;29:9,25;
31:3;44:4;45:23
**upon (1)**
45:11
**upset (2)**
17:13;24:9
**upside (1)**
13:24
**urge (3)**
39:16;41:25;43:7
**use (1)**
29:18
**using (1)**
30:5
**usually (1)**
20:8

## V

**vague (3)**
7:4,7,20
**Valley (1)**
37:1
**various (3)**
19:5;26:2;31:22
**versus (1)**
47:5
**victim (9)**
12:21;14:16;20:13,
22;23:20;25:14;29:4,6;
40:8
**victims (9)**
13:20;16:11,15;17:2;
23:20;26:21;27:3;30:6;
38:7
**view (3)**
13:22;44:11,14

**views (1)**
47:2
**voice (2)**
7:1,2
**vote (4)**
8:2,9;10:2;45:25
**votes (1)**
45:24

## W

**wait (1)**
39:13
**waiting (1)**
22:13
**Wall (1)**
38:7
**wants (2)**
11:18;47:19
**way (17)**
8:6;11:12;14:2,2;
18:4,24;25:8;27:11;
28:21,22;30:3;31:24;
34:12;39:2,13;46:5;
47:14
**website (1)**
46:12
**WEDNESDAY (1)**
6:1
**weighing (1)**
30:13
**Weil (1)**
23:2
**welcome (1)**
35:10
**what's (3)**
7:20;45:15;47:11
**whatsoever (1)**
24:13
**whenever (1)**
32:9
**where's (1)**
22:12
**Whereupon (1)**
48:24
**whole (3)**
10:25;13:24;17:18
**Who's (3)**
6:8;20:18;25:3
**whose (1)**
24:17
**widely (1)**
41:19
**wildfire (1)**
40:7
**window (1)**
8:7
**Winthrop (2)**
36:19;39:12
**Winthrop's (1)**
43:1
**withdraw (1)**
46:23

**withdrawal (2)**
38:20,21
**withhold (2)**
12:19;46:24
**without (1)**
14:16
**women (1)**
47:7
**wondering (2)**
14:4;21:2
**word (2)**
26:22;29:18
**words (3)**
30:5;34:20;42:3
**work (6)**
17:11;24:16,20;41:5,
11,18
**worked (1)**
32:8
**working (2)**
41:20;42:15
**world (2)**
15:2,3
**worry (1)**
35:7
**worrying (1)**
35:8
**worth (1)**
15:16
**wrong (1)**
18:17
**wrote (1)**
23:18

## 1

**1,000 (1)**
16:10
**1:30 (1)**
6:1
**10 (1)**
35:11
**10.13 (1)**
37:23
**1054 (2)**
8:11;47:20
**11 (1)**
36:8
**1129 (1)**
45:2
**18 (1)**
31:1
**19 (1)**
27:4

## 2

**2:20 (1)**
48:24
**2015 (1)**
24:25
**2020 (1)**
6:1

## 29 (1)
6:1

## 3

**30th (2)**
15:7;35:7
**35,000-foot (1)**
17:8

## 4

**4th (8)**
36:21;37:12;38:24;
43:9;44:21;45:7;47:23;
48:23

## 7

**70,000 (1)**
27:3

Case: 19-30088    Doc# 5563    Filed: 01/30/20    Entered: 01/30/20 12:13:55    Page 59
of 59