Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:    415.659.2900
Facsimile:    415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:  esagerman@bakerlaw.com
Email:  lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF LYNN A. BAKER IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002 TO RETAIN AND EMPLOY LYNN A. BAKER AS SPECIAL COUNSEL EFFECTIVE AS OF JANUARY 27, 2020**<br><br>Date:    February 26, 2020<br>Time:    10:00 a.m. (Pacific Time)<br>Place:    United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102<br>Objection Deadline: February 19, 2020<br>         4:00 p.m. (Pacific Time) |

Pursuant to section 1746 of title 28 of the United States Code, I, Lynn A. Baker, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am an attorney and a member in good standing of the Bars of the States of Texas (active) and Arizona (inactive) and of the United States Supreme Court. I am duly authorized to make this Declaration (the "**Declaration**"). Unless otherwise stated in this Declaration, I have knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.

2. I submit this Declaration in support of the Application (the "**Application**") of the Official Committee of Tort Claimants (the "**TCC**") of PG&E Corporation and Pacific Gas and Electric Company (collectively the "**Debtors**") for the entry of an order authorizing the TCC to retain and employ me as the TCC's special ethics counsel effective as of January 27, 2020, pursuant to section 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and in accordance with the terms and conditions set forth in the engagement letter between the TCC and me dated January 27, 2020 (the "**Engagement Letter**"). A copy of the Engagement Letter is attached hereto as **Exhibit A.** The TCC has requested that I consult with and advise the TCC and its members with respect to conflicts of interest and other issues of legal ethics as such issues may arise during the period of the retention.

3. I am a professor at the University of Texas Law School where I have taught as a tenured professor since 1997. I hold the Frederick M. Baron Chair in Law, and am Co-Director at the Center on Lawyers, Civil Justice and the Media. I am an elected Member of the American Law Institute. As a scholar and a teacher, one of my principal academic interests has been professional responsibility, including ethical issues involving mass torts, group settlements, attorneys' fees, and "aggregate" litigation. My many scholarly publications on these issues have been cited by numerous commentators and courts, and in leading treatises including the ALI's PRINCIPLES OF AGGREGATE LITIGATION (2010). I have frequently appeared as an invited speaker on issues of legal ethics at symposia, conferences, and continuing legal education programs

1

Case: 19-30088    Doc# 5569    Filed: 01/30/20    Entered: 01/30/20 16:46:25    Page 2 of 7

throughout the country. I have testified as an expert witness and/or filed expert reports on issues of legal ethics in federal and state courts, and in confidential arbitration proceedings. I have served as an expert or consultant on issues of legal ethics in more than 100 group settlements over the past twenty years, including many high-profile, large-dollar, large-group cases. I was appointed by the U.S. District Court for the Southern District of New York to serve as a Mass Tort Settlement Ethics Advisor. See *In re: Fosamax Products Liability Litigation* (MDL No. 1789) (Order entered April 10, 2014). I was also previously appointed on multiple occasions by the U.S. District Court for the Southern District of West Virginia to serve as a settlement allocation Special Master. See *In re: Ethicon Inc., Pelvic Repair System Products Liability Litigation* (MDL No. 2327) (Pretrial Order #286, entered March 1, 2018); *In re: Ethicon Inc., Pelvic Repair System Products Liability Litigation* (MDL No. 2327) (Pretrial Order #263, entered July 13, 2017); *In re: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation* (MDL No. 2187) (Pretrial Order #202, entered Nov. 24, 2015).

4. In connection with its proposed retention by the TCC in the Debtors' cases (the "**Cases**"), I obtained from the TCC and/or its representatives the names of individuals and entities that may be parties in interest (individually a "**Potential Party in Interest**" and collectively the "**Potential Parties in Interest**") in the Cases. I reviewed the name of each Potential Party in Interest to determine the names of each Potential Party in Interest that has entered into engagement agreements with me in the last two years. Additionally, where the review *did not* produce a name identical to the name of Potential Party In Interest but *did* produce a name that could potentially be an affiliate of a Potential Party in Interest or associated with a Potential Party in Interest by virtue of name similarity, I also identified and disclosed relationships with any such Potential Party in Interest.

5. In several instances, the names on the list of Potential Parties in Interest were very common and/or generic. As such, it was not possible to identify with certainty whether I have any client relationship to disclose for those specific names.

6. My search revealed the following connections with Potential Parties in Interest:

2

- I provided an expert Declaration "In Support of Plaintiffs' Notice of Motion, Motion, and Memorandum in Support of Motion for Final Approval of Class Action Settlement," filed on January 19, 2018, in the U.S. District Court for the Northern District of California in *Shahriar Jabbari and Kaylee Heffelfinger et al. v. Wells Fargo & Company and Wells Fargo Bank, N.A.*. I was retained by the Plaintiff Class to provide an expert opinion regarding whether the allocation of the Settlement Fund complied with Class Counsel's professional responsibilities.

- I have periodically been retained as a consultant and/or legal counsel on issues of legal ethics by various court-appointed Plaintiffs' Leadership groups in mass tort MDLs, and those groups have sometimes included attorneys from Lieff Cabraser Heimann & Bernstein, LLP. My only direct retention by Lieff Cabraser involved 0.5 hours of legal counsel in September 2019 in connection with the opioid litigation.

- I have periodically been retained by Baron & Budd, PC, a law firm based in Texas, to serve as a consultant and/or legal counsel on issues of legal ethics. I also have periodically been retained as a consultant and/or counsel on legal ethics by various court-appointed Plaintiffs' Leadership groups in mass tort MDLs, and those groups have sometimes included Baron & Budd attorneys. My only work for Baron & Budd in connection with the California fires litigation against PG&E involved 2.5 total hours of legal research and discussions in early May 2018.

7. It is possible that I may now or in the future be retained by one or more of the Potential Parties in Interest in unrelated matters. To the extent the Debtors discover and disclose additional Potential Parties in Interest during the course of these Cases, I will use reasonable efforts to identify whether a material relationship exists with any such parties. To the extent that I discover or enter into any new, material relationship with Potential Parties in Interest, I will supplement this Declaration.

8. Although unlikely, in addition to the above disclosures, I may also represent, or may

have represented, affiliates, equity holders or sponsors of Potential Parties in Interest and I may have worked with, continue to work with, have or had mutual clients with, been represented by and/or advised certain accounting and law firms that are Potential Parties in Interest (and, in the case of law firms, may have entered into engagement agreements in which the law firm was named as client although the work was performed for a mutual client of mine and the applicable law firm). I may also represent, or may have represented in the past, committees or groups of lenders or creditors, which committees or groups include, or included, entities that are Potential Parties in Interest.

9. Although I have researched the Potential Parties in Interest list, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not included as Potential Parties in Interest and with whom I may maintain business relationships.

10. Other than as disclosed herein, I have no relationship with the Debtors, the United States Trustee for Region 17 or any person employed in the San Francisco office of the United States Trustee or any United States Bankruptcy Judge for the Northern District of California of which I am aware after due inquiry. Based on the foregoing, I believe that I am disinterested as defined in section 101(14) of the Bankruptcy Code and do not hold or represent an interest materially adverse to the Debtors or their estates.

11. As of the date of this Declaration, I have not received any compensation for my work on behalf of the TCC.

12. I intend to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines promulgated by the Office of the United States Trustee, pursuant to the order entered by this Court on February 28, 2019, establishing the procedures for interim compensation and reimbursement of expenses of professionals (Dkt. No. 701), the Notice of Filing of Parties' Revised Fee Examiner Protocol (Dkt. No. 4473), and any additional procedures that may be established by the Court in these Cases.

13. Subject to the Court's approval, I will be compensated at my standard hourly rates, which are based on my level of experience, plus reimbursement of the actual and necessary expenses that I incur in accordance with the ordinary and customary rates which are in effect on the date the services are rendered. At present, my standard hourly rate for a matter such as this is $1200.

14. This rate is subject to adjustments in the ordinary course of my business, notice of which adjustments shall be provided to the Debtors, the United States Trustee and the Fee Examiner. I will maintain detailed, contemporaneous records of time and any necessary costs and expenses incurred in connection with the rendering of its services as described above and will be reimbursed for such costs and expenses in conformity with the Guidelines promulgated by the United States Trustee as in effect in this District.

15. Other than as set forth above and in the Engagement Letter there is no proposed arrangement between the TCC and me for compensation to be paid in these Cases. I have no agreement with any other entity to share any compensation received, nor will there be, except as permitted under section 504(b) of the Bankruptcy Code.

<u>Statement Regarding United States Trustee Guidelines</u>

16. The following information is provided in response to the Request for Additional Information Set Forth in Paragraph D.1 of the Appendix B – Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, Effective as of November 1, 2013:

| | |
|---|---|
| Question: | Did you agree to any variations from, or alternatives to, your standard customary billing arrangements for this engagement? |
| Response: | No. |
| Question: | Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? |
| Response: | No. |

| | |
|---|---|
| Question: | If you represented the client in the 12 months prepetition, disclose your billing rates and material terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. |
| Response: | I did not represent the TCC prior to the commencement of the Debtors' Cases. |
| Question: | Has your client approved your prospective budget and staffing plan, and, if so, for what budget period? |
| Response: | I will be working in this matter as a sole practitioner. I understand that the TCC, along with the Debtors, United States Trustee and Fee Examiner, will maintain active oversight of my billing practices. |

17. I will use reasonable efforts to comply with the above Guidelines.

Dated: January 28, 2020

By: _____
     Lynn A. Baker

6