1   William B. Abrams
    end2endconsulting@gmail.com
2   1519 Branch Owl Place
    Santa Rosa, CA, 95409
3   Tel: 707 397 5727

4

5   *Claimant and*

6   *Party to California Public Utilities Commission Proceeding I.19-09-016 to Consider the Ratemaking
    and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and
7   Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy
    Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric
8   Corporation and Pacific Gas and Electric Company, Case No. 19- 30088.*

9   *Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether
    Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and
10  Governance Prioritizes Safety*

11

12                      **UNITED STATES BANKRUPTCY COURT**
                        **NORTHERN DISTRICT OF CALIFORNIA**
13                          **SAN FRANCISCO DIVISION**

14

15  In re:                                  Bankr. Case No. 19-30088 (DM)
                                            Chapter 11
16  PG&E CORPORATION,                       (Lead Case)
                                            (Jointly Administrated)
17
                                            **MOTION OF WILLIAM B. ABRAMS**
18      -and-                               **FOR RECONSIDERATION OF THE**
                                            **ORDER PURSUANT TO 11 U.S.C. §§**
19  PACIFIC GAS AND ELECTRIC                **363(b) AND 105(a) AND FED. R.**
    COMPANY,                                **BANKR. P. 6004 AND 9019 (I)**
20                                          **AUTHORIZING THE DEBTORS**
                          Debtors.          **AND TCC TO ENTER INTO**
21                                          **RESTRUCTURING SUPPORT**
    ☐ Affects PG&E Corporation             **AGREEMENT WITH THE TCC,**
22                                          **CONSENTING FIRE CLAIMANT**
    ☐ Affects Pacific Gas and Electric Company  **PROFESSIONALS, AND**
23                                          **SHAREHOLDER PROPONENTS,**
    ☑ Affects both Debtors                 **AND (II) GRANTING RELATED**
24                                          **RELIEF [Dkt. 5174]**

25  *  All papers shall be filed in the lead case,
    No. 19-30088 (DM)                       **Hearing Request**
26
                                            Date:  February 4, 2020
27                                          Time:  10:00 a.m. (Pacific Time)
                                            Place: Courtroom 17
28                                                 450 Golden Gate Ave., 16th Floor
                                                   San Francisco, CA, 94102

1.     William B. Abrams, Claimant and Sonoma County Resident ("Abrams"), hereby submits this Motion for Reconsideration (the "Motion") of the Order [Dkt. 5174] of the Debtor and "Tort Claimants RSA" [Dkt. No. 5038] in its' entirety pursuant to Federal Rules of Civil Procedure 59 and 60, as incorporated by Federal Rules of Bankruptcy Procedure 9023 and 9024.[1]

2.     I, William B. Abrams, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

**<u>Preliminary Statement</u>**

3.     The Tort Claimants Restructuring Support Agreement (RSA) is fatally flawed given that its approval was based upon a misleading and incorrect record and the order approving the RSA should therefore be reconsidered and withdrawn.  I respectfully submit for your consideration material facts which must be considered with approval of the RSA.  Some of these facts were known by parties to this proceeding at the December 17, 2019 RSA hearing associated with this proceeding and others were revealed following the hearing once claimants were told about the stipulations in the RSA and the basis of its approval.  Your honor approved the RSA based on the facts presented by the Tort Claimants Committee (TCC) and the Debtors prior to and during the hearing of December 17, 2019.  Respectfully, the foregoing should be reconsidered by the court.

---

[1] See "Joinder of William B. Abrams to Motion of the Ad Hoc Committee of Senior Unsecured Noteholders for Reconsideration and relief from Orders Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) [Dkt. 5353], filed January 13, 2020

## Argument

4. On December 17, 2019, Your Honor stated *"I don't think that I have the wisdom or the knowledge or frankly, my role, to second-guess **the decisions of those victims who have told their lawyers, this is how we want to go** with the plan."*[2] Unfortunately, the information provided by parties and relied upon as the basis of this statement was patently false. In point of fact, claimants to this proceeding by enlarge never told their attorneys they were in favor of this plan. I know this to be true because unlike the majority of claimant attorneys, I took the time to ask. From December 31, 2019 through January 27, 2020, I administered the attached survey to members of 7 different wildfire survivor groups and found that only 9.32% supported the plan and told their attorneys to vote for it while 90.68% of respondents indicated they did NOT support the plan.[3] Consider that this survey was administered to some of the MOST informed claimants who are going to meetings, learning about their rights and working collaboratively towards rebuilding and recovery after the PG&E wildfires. Given these fact, it logically follows that very few individual claimants were asked if they supported this RSA.

5. The January 12, 2020 San Francisco Chronicle article "FEMA says it may bill fire victim's if it can't get $4 Billion from PG&E" quotes Frank Pitre, TCC attorney as saying "a sampling" was used to assess claimant views. The record of these cases excludes Mr. Pitre's sample size and how his sample was constituted.[4] I know at least one of the claimants that Mr. Pitre represents, Vita Iskandar, who has been a strong advocate for survivors since the 2017 PG&E wildfires and is in touch with hundreds of wildfire survivors through the websites and listservs she manages. In a letter to State Senator Mike McGuire, she voiced her concerns regarding the lack of consultation and misrepresentation of claimants in this process. In the letter she states, *"I am troubled that the bankruptcy judge appears to believe that at least one of the proposals reflect what the fire survivors want and have told their attorneys. As you know, this is untrue."* I have gratefully received Ms. Iskandar's permission to reference her letter and have attached it to this document.[5] As

---

[2] December 17, 2019 US Bankruptcy Court Hearing, 10am Transcript, Page 300
[3] See Exhibit A, January 27, 2020 Short Wildfire Victim Survey, Survey Monkey Online Administration, Pg./Question 4
[4] The San Francisco Chronicle, "FEMA says it may bill fire victim's if it can't get $4 Billion from PG&E", J.D. Morris, January 12, 2020
[5] See Exhibit B, Vita Iskandar Letter to Senator McGuire expressing concern about the RSA and please refer to the section "What Survivors Want" at the bottom of page 1, January 10, 2020

an individual claimant, if Ms. Iskandar can reach out to hundreds of claimants and if I can spend $100 to conduct a survey to understand claimant views, I am sure TCC attorneys could accomplish a much more thorough review BEFORE purporting to represent their clients' views to the court.

6.      Claimants have not been informed and therefore could not have provided feedback regarding significant material provisions within the RSA.  Consider that many of the TCC attorneys espoused on numerous occasions within this proceeding that the Tubbs Court Trial was the only way to get "justice" for their clients.  Given this, did they go back to their clients and ask them to confirm if claimants were willing to forgo justice for the sake of this RSA?  Did they inform them of the many tradeoffs and compromises in this RSA like receiving 50% payment in PG&E stock and sharing the $13.5B with government agencies and other classes of claimants?  If claimant attorneys took the time, as I did, to ask their clients, they would have found out that the answer is overwhelmingly NO.  In fact, the vast majority of those claimants were never told about these types of provisions.[6]

7.      Now, the Debtor and the TCC may argue that it is not their responsibility to ensure that claimants are informed about this agreement, given the notice provided in these cases.  This too is a flawed process.  The RSA is obscured on the PG&E website in the investor pages.  Within the investor pages, you would go to "SEC filings" and then find Form 8-K, then about ¾ down the document you can find it as exhibit 10.1.  Also, please consider that this RSA is nowhere to be found on the official TCC website or among its list of "Key Documents".[7]  Now the relevance of this is that the profound direction set in the RSA for how claims will be resolved and the outline of the eventual disposition of PG&E is hidden from claimants' view.  Similarly, consider that if a claimant wanted to learn about what transpired in these bankruptcy proceedings there are significant barriers for that type of transparency.  As an example, the transcript of the RSA hearing costs $422.40 if someone follows the court directed process for obtaining it online.[8]  Clearly, that is a significant financial barrier for most claimants to understand what transpires in these hearings.  If that transcript was made more readily available, you might find other claimants like me outraged to read Robert Julian, Claimant

---

[6] See Exhibit A, January 27, 2020 Short Wildfire Victim Survey, Survey Monkey Online Administration, Pg./Question 2
[7] See Official TCC Website, and associated "key documents", https://dm.epiq11.com/case/pgetortcommittee/documents
[8] See Exhibit C, Email Correspondence with e-scribers, December 18, 2019 outlining the $422.40 cost and process to obtain transcript

Attorney statement "*This point was emphasized to me at the break... and that is victims are being used as a pawn by almost everybody in this case.*"[9] Beyond these windows of truth into the negotiation processes, it is the substance and facts that lie within the RSA which would prove to be most disconcerting to claimants if consulted.

8.    The Governor's December 13, 2019 letter to PG&E CEO, William D. Johnson outlines in very strong terms how this RSA is taking PG&E in the wrong direction. While I wholeheartedly agree with Governor Newsom's sentiments expressed in this letter, it is the response to this thoughtfully considered letter that is relevant to this motion for reconsideration. Instead of the Debtors and the TCC getting together and figuring out how to incorporate the Governor's recommendations into the RSA, they simply revoked his right to approve the agreement. Now, this may be expected from the Debtors as they want to limit their liabilities and accountabilities going into future wildfire seasons, but claimants expect more from the TCC. The TCC is a fiduciary that represents the interests of claimants who also happen to be citizens of California rebuilding after the PG&E wildfires. The Governor clearly and rightly points out that this RSA points in a direction that will adversely affect claimants who if PG&E remains unrestructured or mis-structured via short-term financial incentives, will be faced with more PG&E started wildfires. Claimants will have built uninsurable homes and there will be a high likelihood that with the next round of wildfires, there will be a long line of claimants in this courtroom faced with an insolvent PG&E.

9.    Given the lack of Debtor and TCC responsiveness to the Governor's forceful letter, there was a subsequent filing by the Governor's Office on January 22, 2020 "Objection of Governor Gavin Newsom, to Debtors' amended motion for Entry of Orders" [Dkt. 5445]. In that filing Governor Newsom correctly states "*It seems clear that rather than amend the Debtors' Plan to incorporate the necessary changes, the Debtors instead intend to try to leverage the chapter 11 process to force the California Public Utilities Commission (the "CPUC") to approve – and the state of California to accept – a sub-optimal plan*".[10] I witnessed these regulatory efforts first hand in the CPUC status conference following Your Honor's approval of the RSA and will describe that

---

[9] December 17, 2019 RSA Hearing Transcript, US Bankruptcy Court, Courtroom 17, 450 Golden Gate Ave., San Francisco, CA, pg. 253
[10] Objection of Governor Gavin Newsom, to Debtors' amended motion for Entry of Orders" [Dkt. 5445], pg. 3 ¶ 3

collusion in greater detail in a later section of this motion. However, it is important to note at this time that these efforts are clearly another way the Debtor, the TCC and now the Noteholders are working collaboratively to leverage clause 2(j) of the RSA as a tool to minimize regulatory oversight and subvert claimant/ratepayer transparency in bankruptcy related decision-making processes.

10.    It may be a short-term prudent investment decision to prioritize debtor and bondholder interests over public safety but that just demonstrates how the RSA flies in direct opposition to "the business judgement rule" and should not be encouraged through this proceeding. Indeed, this RSA like the last PG&E RSA in 2001, does not consider how the subsequent process will harm and unduly expose the next round of claimants in front of this court who will run for their lives like my family did, lose everything and then be faced with an insolvent PG&E. Asking claimants to choose between payment for some of their damages OR safeguard the public from future PG&E wildfires is a false choice yet the basis of this RSA.

11.    In addition to the lack of meaningful disclosure to, and consultation with, claimants prior to the RSA, the provisions within the RSA virtually guarantee that claimants, regulators, elected officials and other stakeholders in this bankruptcy will at best be left in the dark and at worst left with one-sided debtor approved information disguised as a balanced professional opinion of the TCC attorneys. As an example, please consider the cumulative effect of the following clauses in the RSA on individual claimants evaluating if the plan is in their best-interests:

- *(2.g) each Consenting Fire Claimant Professional **shall** use all reasonable efforts to advise and recommend to its existing and future clients' (who hold Fire Victim Claims) to (i) **support and vote to accept the Amended Plan**, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Amended Plan;*

- *(2.k) the TCC **shall** provide the Debtors a letter, in form and substance agreed to by the Debtors, the Requisite Consenting Fire Claimant Professionals and the Shareholder Proponents, from the TCC that the Debtors may **distribute to holders of Fire Victim Claims** along with the solicitation **materials in respect of the Amended Plan in which the TCC advises and recommends holders of Fire Victim Claims to vote to accept the Amended Plan;***

12.     These clauses among others in the approved RSA will mean that claimants will get glossy flyers and letters on their attorney's letterhead extoling the virtues of an eventual plan regardless of whether or not that plan is viewed by attorneys as being in the best-interests of their clients.  These debtor approved correspondences will appear to provide reasoned opinions of their lawyer but will instead be debtor approved one-sided viewpoints with perhaps a hint of impartiality for effect.  If following these written correspondences, claimants pick up the phone and call their attorney and assuming those attorneys actually take the time to advise them, they SHALL recommend that they support and vote for the plan.  Please, consider that this combined effect is in direct contradiction to rules of professional conduct including but not limited to rules 1.2, 1.3 and 1.4. As an example, rule 1.4(b) states "*a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation*".  Now, there is an exception called out in the following clause:

> *1.2(b) "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances, is not otherwise prohibited by law, **and the client gives informed consent.**"*

13.     Please, consider that clients never consented to biased attorney communications. According to the attached survey, 97.02% of claimant respondents were never told about these hush/gag clauses in the RSA and certainly never provided consent.[11]  These RSA provisions bind the hands and lips of claimant attorneys and force them to be debtor ventriloquists rather than fair minded attorneys for their clients.  **Please note, these RSA clauses are in direct contradiction to these rules of professional conduct and force the many honest, ethical and professionally responsible attorneys in this proceeding to unfairly hock debtor approved correspondences and legal advice.**  Even if an attorney was out-maneuvered or out-voted on provisions within this RSA and/or believe this RSA leads to adverse implications in the long-term safety and financial security of claimants, they SHALL support it.  These hush/gag clauses only leave one other choice for the many

---

[11] See Exhibit A, January 27, 2020 Short Wildfire Victim Survey, Survey Monkey Online Administration, Pg./Question 5

ethically-minded attorneys in this proceeding and that is to pull out of the agreement which will be impractical and largely politically infeasible as we get closer to the AB-1054 deadline. This is of course exactly what the Debtors are counting on but that should not be acceptable to the court. Simply stated, these clauses when taken together are manifestly unjust.

14.     Now, let's turn to the implications of this RSA and the trajectory it sets for the state regulators who have the duty to ensure the plan is in keeping with PG&E's public obligations to provide safe, reliable and affordable service. As an active party to these related proceedings before the California Public Utilities Commission (CPUC), I am particularly concerned about clause (2.j) of the RSA "*each Party **shall** use commercially reasonable efforts to support and **cooperate with the Debtors to obtain confirmation of the Amended Plan and any regulatory or other approvals necessary for confirmation or effectiveness of the Amended Plan**"* as it will ensure regulators get a one-sided view of the RSA and the eventual plan. Already, in response to the RSA approval, the Debtors and TCC have teamed up to minimize the effects of those regulatory proceedings on the outcomes of the PG&E bankruptcy. The emergency December 20, 2019 status conference was called by the CPUC in response to the ruling in this court to approve the RSA and the combined resources of the TCC and Debtors pushed to truncate and expedite that regulatory review. Jerry Bloom, representing the TCC stated in that status conference "*Needless to say, our primary and, frankly, driving position is whatever gets us through this process as quickly as possible gets us to confirmation so that the victims can be compensated is our priority*".[12] It is important to note that at no time during this status conference did any representative of the TCC state that safety or security for their clients was number 2, number 3 or number 833 priority. These factors are simply not their concern leaving them unable to represent their clients' interests. Given this lack of safety and risk mitigation focus by the TCC and the Debtors, the RSA must be reconsidered to ensure that Governor Newsom, the CPUC and other consumer safety advocates have the right to reject the RSA before it moves forward unencumbered by sound business judgement. Waiting until the final plan is unveiled for these parties to have a say is simply not a viable option given the AB-1054 deadline.

---

[12] California Public Utilities Commission Proceeding I.19-09-016, Emergency Status Conference Transcript, pg. 11-12, http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M323/K227/323227455.PDF

15.     After all, the RSA memorializes and binds the actions of the Debtors and the TCC to limit regulatory oversight in exchange for expedited bankruptcy outcomes.  Did the Debtor or the TCC introduce US Bankruptcy Court hearing transcripts on the RSA and related documents for regulators to have insight into the US Bankruptcy Court processes?  No.  It was left to me, the sole claimant who is also a party to the CPUC proceedings, to enter some of these documents on the record in proceeding I.19-09-016.  I have attached my motion for evidentiary and public participation hearings as Exhibit D which was an attempt to provide at least some public and claimant engagement on these issues given the design of the RSA to eliminate transparency in the bankruptcy process.[13]  Understandably, Administrative Law Judge Allen presiding over that proceeding did not want to interfere with RSA decisions in the US bankruptcy court that precluded that type of public engagement, so ruled against my motion.  This is just one more example of how the RSA sets aside claimant interests in transparency, safety and security in exchange for the mutual short-term financial benefits of the TCC and the Debtor to wrap up the bankruptcy and move on to the next round of PG&E wildfire claimants.

## Conclusion

Without the court's knowledge, claimants' views have been largely discarded to make way for a deal that is unjust, ill-conceived and not based on sound business judgement.  I respectfully request that Your Honor reconsider the RSA order given the imprudent path it sets in this proceeding and the fact that it was based upon a misleading and incorrect record.

Dated:  January 31, 2020

Respectfully submitted,

William B. Abrams
Claimant

---

[13] See Exhibit D, CPUC Proceeding I.19-09-016, William B. Abrams Motion for Evidentiary and Public Participation Hearings, Published December 30, 2019, http://docs.cpuc.ca.gov/SearchRes.aspx?DocFormat=ALL&DocID=323183669

**Exhibit A**

# Q1 As a claimant to the PG&E bankruptcy proceeding were you made aware of a "Restructuring Support Agreement" (RSA) that was negotiated and executed by PG&E (Debtor) and attorneys representing our interests (approved by Judge Montali December 17, 2019)?

Answered: 237    Skipped: 1



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| YES | 32.07% | 76 |
| NO | 67.93% | 161 |
| TOTAL | | 237 |

## Q2 Were you told by attorneys prior to the December 17th ruling that the RSA had a number of compromises including acceptance of partial payment in PG&E stock, eliminating Tubbs Wildfire Court Trial and locking out any other existing or new plans that might offer claimants and the public a more favorable settlement?

Answered: 238    Skipped: 0



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| YES | 19.33% | 46 |
| NO | 80.67% | 192 |
| TOTAL | | 238 |

Q3 Governor Newsom sent a letter to PG&E on December 13, 2019 outlining many reasons this RSA and associated draft plan are "woefully short" and do not assure "a reorganized company positioned to provide safe, reliable and affordable service".Were you made aware that after this letter was received and prior to executing the agreement, PG&E and our attorneys removed a provision that would allow the Governor to reject the RSA as a condition for its approval?

Answered: 238    Skipped: 0



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| YES | 17.65% | 42 |
| NO | 82.35% | 196 |
| TOTAL | | 238 |

Q4 Judge Montali, presiding over the PG&E bankruptcy proceeding, when ruling in favor of this RSA stated that "I don't think that I have the wisdom or the knowledge or frankly, my role, to second-guess the decisions of those victims who have told their lawyers, this is how we want to go with the plan."Did you decide to support the plan and tell the attorneys representing you to vote in favor of this plan?

Answered: 236    Skipped: 2



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| YES | 9.32% | 22 |
| NO | 90.68% | 214 |
| TOTAL | | 236 |

Q5 There are a few clauses in the RSA that prevent our attorneys from providing a balanced view of the eventual plan including the following:(2)(g) "each Consenting Fire Claimant Professional shall use all reasonable efforts to advise and recommend to its existing and future clients' (who hold Fire Victim Claims) to (i) support and vote to accept the Amended Plan, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Amended Plan;"(2)(o)(ii) "each Party shall not: directly or indirectly solicit approval or acceptance of, encourage, propose, file, support, participate in the formulation of or vote for… the Alternative Plan or any other plan of reorganization proposed by the Ad Hoc Committee".Were you made aware by attorneys that there were these types of hush and gag clauses in the signed RSA that will prevent them and/or limit their ability to fairly represent the plan in the best interests of their clients?

Answered: 235    Skipped: 3



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| YES | 2.98% | 7 |
| NO | 97.02% | 228 |
| TOTAL | | 235 |

**Exhibit B**

January 10, 2020

Vita Iskandar
PO Box 505
Graton, CA 94555

Senator Mike McGuire
California Senate
50 D St., Suite #120A
Santa Rosa, CA 95404

Re: PG&E Bankruptcy – Fire Survivors Victimized Again?

Dear Senator McGuire:

I lost my home in Santa Rosa to the 2017 Tubbs Fire. My replacement home and the temporary rental I live in—both in Sebastopol—were both subject to power shutdowns by PG&E and evacuated during the 2019 Kincade Fire.

I write to express my concerns that the PG&E bankruptcy restructuring proposals will not produce good results for the thousands of fire survivors covered in the bankruptcy or the millions of neighbors and businesses that PG&E purport to serve. We know this is a complex issue with no clear solution. Unlike in other legal matters, being represented by legal counsel does not afford us a true voice in or understanding of the negotiations, even when legal counsel is working hard in our interest. Therefore, I convey to you a few concerns held by many of us:

**Survivors First.** Survivors--especially underinsured and underrepresented--should be ahead of FEMA and other public or private entities with respect to the already too-small amounts earmarked for fire survivors. You must know the reasons why, not least of which is that FEMA overpaid by 150% or more for debris removal, underexcavation, overexcavation and remediation for each lot they cleared (which insureds must reimburse or pay out of pocket for further remediation). And survivors from different fires shouldn't be made to feel as if we are competing with each for crumbs while insurance companies benefit from subrogation.

**Safety Prioritized.** Restructuring should not just aim to make PG&E solvent, but to prevent the bad business practices which led it here—decades of prioritizing the coffers of shareholders, board members, and upper management at the expense of the safety of millions of residents and businesses. The creditor's claims provide some reparations for the past; restructuring should include mechanisms for safely providing power moving forward. Many other US power utilities are able to do so—why not PG&E? (And why continue to let it get away with this criminal behavior?) And if the utility doesn't improve its safety practices, won't that worsen our homeowners' insurance crisis?

**What Survivors Want.** I am troubled that the bankruptcy judge appears to believe that at least one of the proposals reflect what the fire survivors want and have told their attorneys. As you

know, this is untrue. In this kind of action, we have little say, notwithstanding any upcoming "vote" as claimants. I am not saying I have a better proposal—however, if the outcome shortchanges fire survivors even more than it could have, it is *not* because it is "what I wanted."

As a block captain and ad hoc fire survivor advocate, I am in contact with hundreds of fire survivors. We survivors may not agree on the best path, and we know that the outcome will not be satisfactory to all. However, we fervently hope that it doesn't result in "business as usual." We want PG&E to truly be accountable for its past and future business practices, that it is induced to prioritize safety for its millions of customers, and that reparations for fire survivors are as substantial as possible and is prioritized over FEMA, insurance companies, and other corporate and monied interests.

Senator McGuire, I don't want to be thinking about this. Along with tens of thousands of fire survivors, we are working hard to move forward, and our time and energy are stretched thin. Even though I do not think I will be made whole as a creditor's claimant, I just don't want us victimized again—we are just beat down by fire, power outages, insurance companies, the rebuilding process, community members who (luckily for them) don't always understand that we're not "over it" yet, and even a State legislature divided over the protection of insureds or current and future fire survivors.

We are trying to remain hopeful, and I ask that you do what you can to elicit our voices and convey them to the bankruptcy court and related committees, to the PUC, to the State legislature, to Governor Newsom.

Thank you for your service.

Sincerely,

Vita Iskandar

Due to the timing of the January 10, 2020 Commissioner Lara-Senator McGuire meeting, I wrote this letter and elicited additional signatories in a very short time frame. Attached are the additional constituent signatories and the original email I sent out to fire survivors. I will send along any other signatories I hear from.

I apologize if some of the responses reference both this letter and a separate letter I wrote today to Commissioner Lara regarding homeowners' insurance.

Thank you,

Vita Iskandar
Enclosures

**Exhibit C**

From: jgottlieb@escribers.net 📎
Subject: RE: 5150 Transcript Order from 2/17 PG&E Bankruptcy Hearing
Date: December 19, 2019 at 7:26 AM
To: Will Abrams end2endconsulting@gmail.com, Michelle Farias mfarias@escribers.net

Will,

The cost is $422.40.  If you would like to order it, let me know and we will send you an invoice and payment instructions.

Please also provide us:

Firm:
Name:
Email:
Phone number:
Address:


Thanks,

Jason

**From:** operations@escribers.net <operations@escribers.net> **On Behalf Of** Will Abrams
**Sent:** Thursday, December 19, 2019 9:28 AM
**To:** Michelle Farias <mfarias@escribers.net>
**Cc:** Operations <operations@escribers.net>
**Subject:** Re: 5150 Transcript Order from 2/17 PG&E Bankruptcy Hearing

Michelle -

Please, let me know if the transcript has been released and what the charge is for a copy of this transcript.

Thanks,

Will


On Dec 18, 2019, at 10:44 AM, Michelle Farias <mfarias@escribers.net> wrote:

Hello,

Thank you for your inquiry. Once the transcript has been completed we will send you an invoice. In the meantime please send us the following information:

Firm:
Name:

Name:
Email:
Phone number:
Address:

Thank you,
Michelle

**Michelle Farias**

*Client Relations Manager*

917-789-5314 | Direct
973-406-2250 x 204 | Office
800-257-0885 | Toll free
973-954-5619 | Fax

schedule a reporter
order a transcript

*"One Click Away from All Your Reporting and Transcription Needs"*

On Wed, Dec 18, 2019 at 1:37 PM Will Abrams
<end2endconsulting@gmail.com> wrote:

Please, send me transcript of this hearing.

Thanks,

Will Abrams
Claimant

<u>Exhibit D</u>



# BEFORE THE PUBLIC UTILITIES COMMISSION
## OF THE STATE OF CALIFORNIA

**FILED**
12/30/19
08:00 AM

| | |
|---|---|
| Order Instituting Investigation on the Commission's Own Motion to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19-30088. | Investigation 19-09-016 (Filed September 16, 2019) |

**WILLIAM B. ABRAMS MOTION FOR EVIDENTIARY AND PUBLIC PARTICIPATION HEARINGS TO ENSURE GAG CLAUSES IN RESTRUCTURING SUPPORT AGREEMENT (RSA) DO NOT PROVIDE UNREASONABLE PRIORITIZATION OF PG&E DEBTOR INTERESTS OVER TRANSPARENCY AND RATEPAYER PUBLIC SAFETY AND SECURITY INTERESTS**

<div align="right">

William B. Abrams

Community Advocate

California Resident

1519 Branch Owl Place

Santa Rosa, CA, 95409

(707) 397-5727

Email: end2endconsulting@gmail.com

</div>

December 30, 2019

1

## BEFORE THE PUBLIC UTILITIES COMMISSION
## OF THE STATE OF CALIFORNIA

| | |
|---|---|
| Order Instituting Investigation on the Commission's Own Motion to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19-30088. | Investigation 19-09-016 (Filed September 16, 2019) |

## WILLIAM B. ABRAMS MOTION FOR EVIDENTIARY AND PUBLIC PARTICIPATION HEARINGS TO ENSURE GAG CLAUSES IN RESTRUCTURING SUPPORT AGREEMENT (RSA) DO NOT PROVIDE UNREASONABLE PRIORITIZATION OF PG&E DEBTOR INTERESTS OVER TRANSPARENCY AND RATEPAYER PUBLIC SAFETY AND SECURITY INTERESTS

In accordance with Rule 14.3 of the California Public Utilities Commission ("Commission") Rules of Practice and Procedure, William B. Abrams submits this motion for evidentiary and public participation hearings in the Order Instituting Investigation 19-09-016 specific to the implications of the Restructuring Support Agreement (RSA) which is materially significant to the scope of this proceeding. This motion is in accordance and in response to ALJ Thomas' direction provided in the December 20, 2019 Status Conference associated with this proceeding.

2

## I. Summary and Evidentiary Basis for the Motion

At the heart of this proceeding is the question of whether or not the Pacific Gas and Electric Company's (PG&E) plan of restructuring will be in keeping with P.U.C. § 3292 and ensure their governance structure prioritizing safety, is consistent with the state's climate goals and is neutral to ratepayers. Unfortunately, parties to the U.S. Bankruptcy Court proceeding and this proceeding before the commission have worked to ensure a Restructuring Support Agreement (RSA) that is designed to impair the commission's ability to consider these implications. Moreover, this RSA materially and significantly diminishes the ability of ratepayers to consider and advocate for a plan of restructuring that promotes the safety and financial security interests of residents across California. The commission can either choose to give into the pressures from the Debtor and the Tort Claimant Committee (TCC) by ignoring the RSA and hurry to the finish line or confront the challenges this foundational document poses. The later path would provide ratepayer support and be in keeping with Governor Newsom's December 13, 2019 letter in response to this agreement and attached to this motion.

I encourage the commission to resist external pressures to short-circuit the deliberative process associated with this proceeding. The more heavily lawyered parties motivated by short-term financial incentives will continue to push the commission to hurry and approve a plan detrimental to ratepayers and the public at large. The more these pressures mount, the more the commission needs to push back and take the time needed to ensure those efforts do not unduly compromise the process. Sure, strange alliances are made that may mutually benefit short-term dollars for PG&E investors and wildfire survivors like me but it is the commission's responsibility to ensure that these interests are not weighted more heavily than the safety and security interests of ratepayers and California as a whole. I assure the commission that if this bankruptcy process is left to the Debtor and the TCC to negotiate away our future in exchange for short-term dollars, that is exactly what will occur.

I am filing this motion to provide public transparency where it is needed (public participation hearings) and to provide a means and method for the commission to understand the implications of the RSA (evidentiary hearings) relative to the scope of this proceeding. I am sure some parties would rather see this get crammed into the existing schedule so that the implications of the RSA and RSA process get lost on the commission and ratepayers. However, I would recommend that the following additional dates be set to consider these RSA implications prior to parties submitting testimony and briefs on other issues and prior to ratepayer claimants being asked to support a plan that they have not had the opportunity to consider:

- **Evidentiary Hearings on Implications of RSA – January 13th to 24th, 2020**
- **Public Participation Hearings – January 25th to February 8th, 2020**

In an effort to encourage transparency and to provide an evidentiary record relative to these requested hearings and the larger matters associated with the proceeding, I am providing the following exhibits as attachments to this motion:

1. **Governor Newsom's Letter Outlining Objections (12/13/2019)**
2. **SEC Form 8-K and Restructuring Support Agreement (RSA)**
3. **Transcript of US Bankruptcy Hearing Approving RSA (12/2019)**
4. **Abrams Objection to Debtor's RSA (filed 12/16/2019)**
5. **Letter to Wildfire Survivors Outlining Implications of RSA (12/21/2019)**

Please, consider that while I was able to gain access to the Debtor's RSA and the hearing transcript, these documents are largely hidden from public view. As an example, the transcript of the hearing is available for members of the public to purchase for $422.40 through the court designated processes which is cost prohibitive and a significant barrier to transparency. Moreover, I encourage the commission to go online like a ratepayer might do and see if you can find the RSA. I found it buried a few pages deep within the PG&E investor section of PG&E's website (http://investor.pgecorp.com/investors/default.aspx) and clicked on "SEC Filing", then got to the Form 8-K and then found it located as exhibit 10.1 of the SEC filed document. This quest is relevant to this motion as it demonstrates the degree to which parties are working to

4

ensure less transparency to ratepayers and the commission. Some may downplay the RSA as immaterial to ratepayers and the commission but given that it is the basis for an eventual plan of restructuring, it is very significant as it sets a foundational framework and bankruptcy process designed to subordinate the interests of ratepayers and California as a whole to promote investor interests and short-term dollars.

## II. Examples of How the RSA Prevents Transparency

The RSA precludes attorneys from fairly representing the plan to ratepayer claimants and the public as a whole by including a number of clauses designed to gag attorneys and other stakeholders from demonstrating how this RSA provides a framework that does not consider their safety and security interests. It indicates clearly that parties to the agreement SHALL promote the plan regardless of whether or not they feel it is in the best interests of their clients. TCC Attorneys that were out voted or out maneuvered by others SHALL promote the plan and ask clients to vote and accept it. As an example, here is one RSA clause that gags and ties the hands of attorneys that might otherwise be able to freely inform their clients, the public and the commission about the pros and cons of an eventual plan:

> **(2)(g)** *"each Consenting Fire Claimant Professional **shall** use all reasonable efforts to **advise and recommend to its existing and future clients'** (who hold Fire Victim Claims) to (i) support and vote to accept the Amended Plan, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Amended Plan;"*[1]

What if despite this and other "gag clauses" in the RSA, ratepayers learn through reading press reports that there may be another plan out there that could provide a more sound safety-oriented governance structure and a plan that provides a more stable financial outlook prioritizing the state's climate goals? It might be logical to assume that ratepayers would turn to their attorney and rely on them for a balanced view of the competing plans. However, due to

---

[1] Restructuring Support Agreement (exhibit 10.1 of SEC Form 8-K), December 6, 2019, made among PG&E Corporation, Pacific Gas and Electric Company and the Official Committee of Tort Claimants, Consenting Fire Claimant Professionals and Shareholder Proponents, page 5

Case: 19-30088    Doc# 5577    Filed: 01/31/20    Entered: 01/31/20 10:27:07    Page 24 of 29

provisions in the agreement like the following, attorneys and other parties to the agreement SHALL NOT encourage support for alternative plans:

> *(2)(o)(ii)* *"each Party **shall not**: directly or indirectly solicit approval or acceptance of, encourage, propose, file, **support**, participate in the formulation of or vote for… **the Alternative Plan or any other plan** of reorganization proposed by the Ad Hoc Committee"*[2]

Now, I am not a proponent of the Ad Hoc Committee of Senior Unsecured Noteholders (AHC) plan or any plan for that matter. As a claimant and ratepayer, I am reserving the right to support whichever plan I feel best supports the interests of all stakeholders toward a safe and secure future and justly compensates wildfire victims and survivors. However, I know that these RSA provisions were designed to hide facts, misinform the public and dissuade ratepayers that might otherwise have a balanced view of the plan or plans. As I read further into the RSA, I can also see that ratepayers will be bombarded with flyers and glossy marketing materials sent by TCC attorneys that have the appearance of representing our best interests but will really be one-sided PG&E approved notices that sell a particular short-sighted viewpoint. Consider the following clause that point to an ill-conceived strategy based upon the primary tactic of misinforming ratepayers to gain plan support:

> *(2)(j)* *"each Party **shall** use commercially reasonable efforts to support and cooperate with the Debtors to obtain confirmation of the Amended Plan **and any regulatory or other approvals necessary for confirmation** or effectiveness of the Amended Plan;"*

> *(2)(k)* *"the TCC **shall provide** the Debtors a letter, in form and substance **agreed to by the Debtors**, the Requisite Consenting Fire Claimant Professionals and the Shareholder Proponents, from the TCC that the Debtors may distribute to holders of Fire Victim Claims along with the solicitation materials in respect of the Amended Plan in which the*

---

[2] Restructuring Support Agreement (exhibit 10.1 of SEC Form 8-K), December 6, 2019, made among PG&E Corporation, Pacific Gas and Electric Company and the Official Committee of Tort Claimants, Consenting Fire Claimant Professionals and Shareholder Proponents, page 6

6

*TCC advises and recommends holders of Fire Victim Claims to vote to accept the Amended Plan;"[3]*

I urge the commission to hold hearings to expose these types of tactics mandated in the RSA, reiterated in court proceedings and cemented behind closed doors which will work against the commission's interests and against the goals of this proceeding. Specifically, these tactics if left unchecked might subvert the state's climate goals, prevent a financially neutral plan for ratepayers and sideline a plan that might even facilitate a safety-oriented governance structure for PG&E. I applaud Governor Newsom's December 13, 2019 letter outlining prudent remedies to improve this misdirected agreement but instead of this letter being met by PG&E and the TCC with respect and consideration, the provision allowing the Governor to reject the RSA was simply removed from the agreement. This blatant disregard for the public's interests as represented in this RSA maneuver means that the commission needs to increase its efforts in this proceeding to ensure ratepayer interests are promoted and protected through the hearings requested in this motion.

In addition to these provisions in the RSA working against public and ratepayer interests, there are also a number of provisions that work directly against the goals of this proceeding and the commission's overarching goals in keeping with the California Public Utilities Code. Specifically, the RSA requires that parties like the TCC actively work with the Debtor to obtain regulatory approvals regardless of the implications to their clients or the public. Please, refer to clause "(j)" above in addition to the others in the SEC Form 8-K and RSA attached as an exhibit to this motion. So, while the TCC and other "Consenting Fire Claimant Professionals" may describe themselves as public advocates, they are indeed bound in this agreement and "SHALL" align with the Debtors to promote this plan and no other. Yes, there are many ethical attorneys associated with this proceeding that want to responsibly represent client and ratepayer interests. However, this RSA precludes or at least significantly limits that type of orientation.

---

[3] Restructuring Support Agreement (exhibit 10.1 of SEC Form 8-K), December 6, 2019, made among PG&E Corporation, Pacific Gas and Electric Company and the Official Committee of Tort Claimants, Consenting Fire Claimant Professionals and Shareholder Proponents, page 5

7

Despite that ethical dilemma, some parties to this proceeding may take comfort in the fact that the Governor and/or the commission have the right to reject the plan if it does not conform to AB-1054. However, I ask the commission to consider that as we approach the June 30, 2020 deadline, there will be decreasing political appetite, increasing financial pressure and fewer offramps to reject the plan if on balance the plan follows its current RSA defined trajectory and puts ratepayers at greater risk of PG&E caused wildfires and financial mismanagement. I submit to the commission that it is only through these added evidentiary and public participation hearings looking into the implications of the RSA process that we can get ahead of this momentum which pushes Debtor expediency interests over ratepayer and public efficacy interests.

## III. Conclusion and Recommendations

One of the benefits I have as an individual category 1 intervenor to this proceeding and as a non-attorney representing myself in the US Bankruptcy Court is the ability to bring an independent voice and some ground truth to these related proceedings. I am able to observe and bring to light the disconnects between statements parties make in the US Bankruptcy Court, statements in this proceeding and the advocacy pronouncements made to wildfire survivors like me. Unfortunately, the following statement made by Robert Julian, claimant attorney during the December 17, 2019 bankruptcy hearing leading to the approval of the RSA rings true:

> *"This point was emphasized to me at the break... and that is **victims are being used as a pawn by almost everybody** in this case. The victims and their lawyers are kind of chess pieces. The Governor uses us when they want to. The bondholders use them."[4]*

Regardless of this types of statements, I understand it is not the role of the commission to defend the Governor or to ensure the fairness of the bankruptcy restructuring process. I certainly know that the Governor is a strong advocate for wildfire survivors and through his attorney may be the lone public advocate with a voice in the US Bankruptcy Court. That said, it was shocking and extremely disappointing to me that PG&E and the TCC pushed the Governor out of the RSA

---

[4] United States Bankruptcy Court, Northern District of California, Hearing Transcript Dated December 17, 2019, page 253. Statement by Robert Julian, TCC attorney referencing statements made by other attorneys.

Case: 19-30088    Doc# 5577    Filed: 01/31/20    Entered: 01/31/20 10:27:07    Page 27 of 29

decision-making process when his letter rightly called out the RSA as pointing in a direction away from applicable laws and away from a path that would safeguard the public from increasing safety and security risks posed by an insufficiently restructured PG&E.

The fact that these highly lawyered and highly financed parties formed convenient alliances to push out reasonable voices as small as mine and as large as the Governor should not also marginalize the role of the commission. These efforts that want to push for quick imprudent financial resolutions at the expense of ratepayers and California should in turn become a call-to-action for the commission to redouble their efforts in this proceeding. I urge the commission to take on these additional hearings and ensure that the RSA does not unjustly or imprudently set us on a course that leaves little time or with little regulatory leverage come June, 2020 to turn this ship. We must take the time now to evaluate the RSA on its merits and follow the exposed evidence through the RSA process that might otherwise take us in the wrong direction. Furthermore, we must not allow these RSA "gag clauses" to prevent the commission from informing the public and listening to the public regarding what they want to see in a restructured PG&E.

I recommend that the time savings achieved from the recent schedule consolidation of financial and non-financial issues, should be applied to evidentiary hearings (1/13-1/24/2020) and public participation hearings (1/25-2/8/2020) related to the RSA. The evidentiary hearings should allow time for PG&E as the Debtor and the AHC to present their RSAs and provide all parties an opportunity to provide evidence and testimony relative to right direction vs. wrong direction for provisions in these agreements. Following the evidentiary hearings, a series of public participation hearings across the PG&E service territory with particular focus on those areas affected by the 2017 and 2018 PG&E wildfires should be conducted. I suggest that time be allocated to PG&E and the TCC as parties in favor of the RSA with equal time provided to the AHC and one other party opposed to the RSA. Through these hearings, I hope that the public will better understand the RSA and the degree to which this agreement will or will not lead to a restructured PG&E oriented toward safety and security. These hearings will also allow us to shed light on the degree to which the plan might or might not be ratepayer neutral given the financial outline in the RSA and associated Form 8-K. Please, consider the attached exhibits to

9

understand the profound implications of the RSA on this proceeding. I greatly appreciate ALJ Allen's, President Batjer's and the Commission's consideration of this motion as part of their ongoing efforts to balance PG&E investor, ratepayer and public interests.

Dated:

December 30, 2019

Respectfully submitted,

  /s/   William B. Abrams

William B. Abrams
Sonoma County Resident
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: (707) 397-5727
E-mail: end2endconsulting@gmail.com