**DAVIS POLK & WARDWELL LLP**
Timothy Graulich (admitted *pro hac vice*)
timothy.graulich@davispolk.com
David Schiff (admitted *pro hac vice*)
david.schiff@davispolk.com
Daniel E. Meyer (*pro hac vice* pending)
daniel.meyer@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

Andrew D. Yaphe (SBN 274172)
andrew.yaphe@davispolk.com
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

*Counsel for Citibank N.A., as Administrative Agent for the Utility Revolving Credit Facility*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STATEMENT AND RESERVATION OF RIGHTS OF ADMINISTRATIVE AGENT IN RESPONSE TO DEBTORS' MOTION FOR APPROVAL OF RESTRUCTURING SUPPORT AGREEMENT**<br><br>**Hearing**<br>Date: February 4, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>**Re: D.I. 5519** |

Citibank, N.A., as administrative agent (in such capacity, the "**Administrative Agent**") under that certain Second Amended and Restated Credit Agreement dated as of April 27, 2015 (as amended, supplemented or otherwise modified) (the "**Credit Agreement**" and the credit facility governed thereby, the "**Utility Revolving Credit Facility**") among Pacific Gas and Electric Company (the "**Utility**") and several lenders from time to time party thereto (the "**Lenders**"), hereby submits this statement and reservation of rights (this "**Statement**") in response to the Noteholder RSA Motion[1] and the Debtors' request for approval of their entry into the restructuring support agreement attached thereto (the "**RSA**"). In support of this Statement, the Administrative Agent respectfully states the following:

## STATEMENT AND RESERVATION OF RIGHTS

1. The Utility Revolving Credit Facility represents approximately $3 billion of the Utility's senior funded debt. In its role as agent for the Lenders thereunder, the Administrative Agent is interested in assuring that the Lenders achieve a full and expeditious recovery. To that end, the Administrative Agent is encouraged by the consensus embodied in the RSA and is cautiously optimistic that this accord will facilitate the Debtors' achievement of confirmation of a plan of reorganization prior to the June 30, 2020 deadline established under AB 1054. Further, although the Administrative Agent does not have specific firsthand knowledge of the percentage of claims under the Utility Revolving Credit Facility that have joined or otherwise support the RSA, the feedback the Administrative Agent has heard to date has been positive.

2. That said, although the Administrative Agent does not oppose approval of the Noteholder RSA Motion, the Administrative Agent seeks to clarify that the amended plan contemplated thereby (the "**Amended Plan**") must address the full scope and amount of the Administrative Agent's claims. Moreover, to the extent the Amended Plan seeks to provide less than full satisfaction of all claims under the Utility Revolving Credit Facility, the Amended Plan must preserve the Administrative Agent's rights to indemnification and reimbursement from the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bank. P. 6004 and 9019 for Entry of an Order (I) Approving and Authorizing the Debtors to Enter Into Restructuring Support Agreement with Consenting Noteholders and Shareholder Proponents, and (II) Granting Related Relief* [D.I. 5519] (the "**Noteholder RSA Motion**").

Lenders and other parties under the Credit Agreement, and accordingly must provide for distribution mechanics that respect the Administrative Agent's contractual, priority rights to payment of reimbursable and/or indemnified amounts prior to distributions to Lenders.

3. To be clear, the RSA does not attach a full Amended Plan or purport to provide all terms that would be contained therein. Accordingly, the Administrative Agent understands that its issues, though not addressed in the RSA or the Noteholder RSA Motion, may be addressed in the Amended Plan when it is filed. However, because the RSA appears to include specific terms with respect to, among other things, the Administrative Agent's rights to expense reimbursement, the Administrative Agent is raising the foregoing issues and reserves all rights with respect to the Amended Plan, the Noteholder RSA Motion and any other instrument or request for relief that does not respect its legal rights and contractual priorities with respect to its claims.

4. Specifically, and without limiting the foregoing, the Administrative Agent reserves all rights with respect to the "Utility Funded Debt Claim Interest and Charges Amount," which the RSA provides will form a component of the overall treatment provided to Class 3B-IV – Utility Funded Debt Claims (the class that includes claims under the Utility Revolving Credit Facility). RSA, Ex. A at 3, 6-7. As defined in the RSA, the Utility Funded Debt Claim Interest and Charges Amount includes, among other things, "(ii) reasonable fees and charges and other obligations ***owed as of the Petition Date*** to the extent provided in the applicable Utility Funded Debt Document" and "(iii) reasonable attorneys' fees and expenses of counsel to the agents and certain lenders under the Utility Revolver Documents and Utility Term Loan Documents and certain holders of claims under PC Bond LOC Documents solely to the extent provided in the applicable Utility Funded Debt Document, ***not to exceed $7 million in the aggregate***." *Id.* at 3 (emphasis added).

5. The Administrative Agent supports inclusion of terms in the Amended Plan that provide for the reimbursement of its expenses (including post-petition legal expenses) that: (a) are contractually owed by the Utility under the terms of the Credit Agreement;[2] (b) represent a not-

---

[2] Among other applicable provisions in the Credit Agreement, Section 10.5 provides in pertinent part that "The Borrower agrees . . . to pay or reimburse each Lender, each Issuing Lender ***and the Administrative Agent for all its costs and expenses incurred in connection with the enforcement or preservation of its rights under this Agreement***, the other Loan Documents and any such other documents, ***including the fees and disbursements of only one counsel to the Administrative Agent***,

yet-fully-liquidated portion of the claims asserted by the Administrative Agent in the master proof of claim that the Administrative Agent filed in the Utility's case on October 18, 2019 [Claim No. 79772]; and (c) are allowed (including on a post-petition basis) as part of the Administrative Agent's prepetition claims under applicable Ninth Circuit law. *See In re SNTL Corp.*, 571 F.3d 826, 829, 845-46 (9th Cir. 2009) (holding that "an unsecured creditor [may] include attorneys' fees incurred postpetition but arising from a prepetition contract as part of its unsecured claim") (affirming *In re SNTL Corp.*, 380 B.R. 204 (BAP 9th Cir. 2007) (Montali, J.) and adopting that decision as its own).

6. However, the Utility Funded Debt Claim Interest and Charges Amount does not, on its face, provide for full payment of such expenses. To the contrary, although clause (ii) of the definition of "Utility Funded Debt Claim Interest and Charges Amount" includes "fees, charges and other obligations owed as of the Petition Date"—an amount that presumably captures all of the Administrative Agent's ***prepetition*** expenses (in addition to other amounts)—this clause only applies to the prepetition period. RSA, Ex. A at 3. With respect to post-petition amounts, clause (iii) of the definition of "Utility Funded Debt Claim and Interest Charges Amount" appears to control. Unlike clause (ii), clause (iii) is limited only to "reasonable attorneys' fees and expenses" up to a maximum aggregate cap of $7 million for unspecified "agents and certain lenders" under the Utility Revolving Credit Facility and certain other parties under other debt instruments treated under Class 3B-IV. *Id*.

7. Because clause (iii) includes a hard cap of $7 million, it could result in the Administrative Agent receiving less than full satisfaction of its claims for post-petition legal expenses. To date, the Administrative Agent's accrued and unpaid legal expenses are ***significantly less*** than $7 million. However, the post-petition period is obviously still pending, and the Administrative Agent has no visibility, and has received no disclosure, as to the quantum of other legal expense claims that would be asserted for reimbursement under this provision.

8. It is not uncommon for chapter 11 plans involving material funded debt to provide that, in connection with implementation, fees and expenses of administrative parties under such

---

the Lenders and the Issuing Lenders . . . ." (Emphasis added.)

indebtedness will be satisfied in full on the effective date outside of the treatment of the underlying prepetition debt claims (*i.e.*, lender or noteholder claims on account of principal and interest). The Administrative Agent respectfully submits that such an approach in the Amended Plan would simplify the mechanics for treatment and distribution and would also obviate the need for the Debtors to take the unusual step of treating administrative parties such as the Administrative Agent as holders of their own proprietary claims that would vote alongside their constituent lenders or noteholders.

9. The Administrative Agent has relayed its comments to the Debtors and is hopeful they will be resolved on an consensual basis. However, the Administrative Agent has not yet received any confirmation that the Debtors agree or intend to reflect such comments in the Amended Plan. Moreover, the wording of the definition of "Utility Funded Debt Claim and Interest Charges Amount"—even if not entirely clear—suggests that the grouping of administrative party expense reimbursement with the underlying debt claims and the $7 million cap reflected in clause (iii) are deliberate and reflect the Debtors' and other supporting parties' intent.

10. As such, the Administrative Agent further notes for the record that, to the extent the Administrative Agent's expenses are not otherwise reimbursed through the Plan, the Administrative Agent is also entitled under the Credit Agreement to a full reimbursement and indemnity from the Lenders pursuant to Section 9.7 of the Credit Agreement.[3] This right to reimbursement is an agreement among non-Debtor parties embedded in the Credit Agreement and should be respected and preserved through the Amended Plan or any other plan of reorganization in these cases. Moreover, to the extent necessary, the Administrative Agent reserves all rights to require that distributions to Lenders thereunder flow first to the Administrative Agent until all

---

[3] Section 9.7 provides, in pertinent part: "The Lenders and the Issuing Lenders agree to indemnify each Agent in its capacity as such (to the extent not reimbursed by the Borrower and without limiting the obligation of the Borrower to do so), ratably according to their respective Percentages in effect on the date on which indemnification is sought . . ., ***from and against any and all*** liabilities, obligations, losses, damages, penalties, actions, judgments, suits, ***costs, expenses or disbursements of any kind*** whatsoever that may at any time (whether before or after the payment of the Loans) be imposed on, ***incurred by or asserted against such Agent in any way relating to or arising out of, the Commitments, this Agreement, [or] any of the other Loan Documents***." (Emphasis added.)

outstanding expense and indemnification obligations owed by the Lenders are paid in full. Again, these rights would only need to be enforced to the extent a plan of reorganization does not provide for such amounts to be paid to the Administrative Agent directly by the Debtors.

11. The Administrative Agent looks forward to working constructively with the Debtors, the parties to the RSA and other stakeholders in the chapter 11 cases toward an Amended Plan that respects the Administrative Agent's legal and contractual rights and that is otherwise enjoys the broadest support possible (as reflected in the RSA).

## CONCLUSION

WHEREFORE, for the reasons stated above, the Administrative Agent reserves all of its rights with respect to the foregoing matters and further reserves the right to supplement this Statement.

DATED: January 31, 2020

**DAVIS POLK & WARDWELL LLP**

/s/ *Timothy Graulich*
TIMOTHY GRAULICH
DAVID SCHIFF
DANIEL E. MEYER
ANDREW D. YAPHE (SBN 274172)

*Counsel for Citibank N.A., as Administrative Agent for the Utility Revolving Credit Facility*