| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP**<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | **KELLER & BENVENUTTI LLP**<br>Tobias S. Keller (#151445)<br>(tkeller@kellerbenvenutti.com)<br>Peter J. Benvenutti (#60566)<br>(pbenvenutti@kellerbenvenutti.com)<br>Jane Kim (#298192)<br>(jkim@kellerbenvenutti.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: 415 496 6723<br>Fax: 650 636 9251 |

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case,<br>No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' REPLY IN SUPPORT OF MOTION TO REJECT VLAZAKIS CONTRACT AND GRANT RELATED RELIEF AND BRIEF IN SUPPORT OF REJECTABILTY**<br><br>Date: February 11, 2020<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br><br>Relates to Dkt. Nos. 4846, 4847, 5415 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), are debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**") hereby file this Reply (the "**Reply**") in support of the *Debtors' Motion to Reject Vlazakis Contract and Grant Related Relief and Brief in Support of Rejectability* [Dkt. No. 5272] (the "**Motion**")[1] and in response to the *Opposition to Debtors' Motion to Reject Vlazakis Contract and Grant Related Relief* [Dkt. No. 5415] (the "**Opposition**") filed by Athanasia Vlazakis, George Vlazakis, John Barbis, and Maria Barbis (collectively, the "**Vlazakis Defendants**").[2] For the reasons set forth below, the Debtors respectfully request that the Court grant the Motion.

**REPLY**

**I.  Background**

The Debtors seek to reject the Contract as a burdensome executory contract pursuant to section 365(a) of the Bankruptcy Code. Doing so is an exercise of the Debtors' sound business judgment because rejection will facilitate the construction of improvements to the Utility's natural gas distribution system to meet current safety standards and enhance operational efficiency and public safety. Rejection is also intended to make litigation of any issues relating to the Contract in the State Court unnecessary to the State Court's determination of the respective real property interests of the Utility and the Vlazakis Defendants, to promote a more expeditious determination of the State Court Action consistent with the Utility's objective to construct the Project and comply with safety standards as soon as possible.

**II.  Argument**

In the Opposition, the Vlazakis Defendants oppose the Motion on two grounds: (1) that the Contract is not executory and therefore cannot be rejected and (2) that rejection is improper because the Debtors have acted in bad faith. Both arguments are unavailing.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] No party in interest aside from the Vlazakis Defendants has opposed the Motion.

### A. The Contract Is Executory and Therefore Subject to Rejection

The Vlazakis Defendants are seeking in the State Court Action to enforce the Contract by specific performance, to require the Utility to render future performance they contend is owed to them under the Contract.[3] They argue that the Contract is nevertheless not executory because, they assert, they have already performed all of their obligations under the Contract and "merely awaited performance by PG&E." Opposition at 11. In taking this position, the Vlazakis Defendants do not meaningfully respond to the Debtors' discussion in the Motion that if the Utility owes performance on the Contract, the Vlazakis Defendants owe ongoing performance as well, in the form of access to their property and cooperation with the Utility. Motion at 10. The Vlazakis Defendants seem to conceive of these obligations as one-time requirements, noting that they signed off on documents *in the past*, and allowed access to their property *in the past*, and they imply that they are left with no ongoing obligations under the Contract that they must perform *in the future*. Opposition at 11-12.

Not so. The Contract expressly provides for the Utility to undertake construction activity—reinforcement of "the existing masonry wall . . . which constitutes the easterly wall of the existing building"—as a predicate to the transfer of title to the Vlazakis Defendants of that wall and the strip of land on which it sits. Garber Decl. Ex. A. at para. 2. This construction effort is integral to the transfer of the wall; it is uncontested that, without it, the wall would collapse when the balance of Utility's building is demolished. Motion at 7. Indeed, although the Vlazakis Defendants proclaim that they simply want transfer of title, the essence of what they seek is for the Utility to undertake a significant construction project that would prevent the Utility from proceeding with its own project, the very project which, as the Vlazakis Defendants have known from the outset, is Utility's impetus for the Contract in the first place. The second sentence in the Contract makes this clear: "we [the Utility] are moving forward with our Oakland Regulator Station Project S0-81." Garber Decl. Ex. A.

---

[3] As noted in the Motion, the Utility contends that its obligations of future performance are excused. Motion at 6 n.1. Nothing in this Reply is intended to waive that position.

Paragraph 8 of the Contract spells out what the Vlazakis Defendants must do in connection with that construction effort:

> Owner agrees to provide PG&E and subcontractors required access to [the Vlazakis property] for the stabilization of the masonry wall and construction of the concrete block wall; including the right to work, laydown and stage construction materials during the work.

These are on-going, *material* obligations, imposed on the Vlazakis Defendants by the Contract to be performed in the future, obligations that by themselves make the Contract executory. They are not purely ministerial. Failure of the Vlazakis Defendants to perform them would constitute material breach under the Contract. The Vlazakis Defendants' description of their remaining obligations as "not interfer[ing] with PG&E's work" and "mere perfunctory consent" Opposition at 12-13, thus mischaracterizes the material nature of these ongoing obligations.

**B.     The Debtors Have Acted in Good Faith, in a Sound Exercise of Their Business Judgment**

The Vlazakis Defendants mischaracterize both the standard for approving a contract rejection under section 365 and the Debtors' actions here. They claim, incorrectly, that the Debtors have acted in bad faith by moving to reject the Contract. As this Court has previously stated in these Chapter 11 Cases, a bankruptcy court should "presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *PG&E Corp. v. FERC (In re PG&E Corp.)*, 603 B.R. 471, 488 (2019) (citing *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007)); *see also PG&E Corp. v. FERC (In re PG&E Corp.)*, 2019 Bankr. LEXIS 1820, at *43 (Bankr. N.D. Cal. June 12, 2019). This can include "eliminating an executory contract that has become burdensome." *Id*. In deference to the debtor's business judgment, the Court "need engage in 'only a cursory review of a [debtor-in-possession]'s decision to reject the contract.'" *Durkin v. Benedor Corp. (In re G.I. Indus.)*, 204 F.3d 1276, 1282 (9th Cir. 2000).

The Vlazakis Defendants contend that rejection is inappropriate here because the Debtors' decision to reject is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *In re Pomona Valley Med. Grp., Inc.*, 476

F.3d at 670.  They claim the Utility is acting in bad faith, because it seeks rejection only after they sought specific performance.  Opposition at 14.  It is no secret that the catalyst for rejection of the Contract was the litigation in the State Court Action.  The Vlazakis Defendants concede that there is no authority stating that contract rejection is in bad faith because it advances a debtor's litigation strategy.  Opposition at 14.  To the contrary, a court in this district has noted that "[t]he Trustee is assumed to have exercised his business judgment in choosing the optimal litigation strategy and in analyzing whether the [contract] was an executory contract and, if so, the benefits to the estate and claims against it that would flow from a decision to assume or reject."  *3dfx Interactive v. nVidia Corp. (In re 3dfx Interactive)*, 2009 Bankr. LEXIS 120, at *7-8, fn. 4. (Bankr. N.D. Cal. Jan. 6, 2009).  Regardless, and more importantly, the Garber Declaration establishes that performance under the Contract would be unduly burdensome to the Utility.

The Vlazakis Defendants are correct that a consideration in the Court's review of the debtor's business judgment analysis is whether rejection benefits unsecured creditors.  *In re Chi-Feng Huang*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982).  In a solvent case the court has discretion to decline to authorize rejection on the grounds that there would be no benefit to unsecured creditors.  *Id*. at 803.  Here, rejection of the Contract benefits unsecured creditors—and all parties in interest generally—because the objective of rejection here is to facilitate the safe and efficient operation of the Utility's business.  Unlike *Pomona Valley Medical Group* and *Chi-Feng Huang*, where a calculation of the economic benefit to creditors and equity holders was relatively simple and straightforward, this case involves a huge, complex business that provides an essential service and operates in the public interest, with a central objective of enhancing the safety of its operations.  It may be difficult to assess the value of safety, but the very fact of these Chapter 11 Cases demonstrates that it may be close to priceless.

The Debtors' pending plan of reorganization provides for payment in full of general unsecured claims, which are unimpaired.  A significant part of the payments to be made to fire victims will be funded by stock in the Reorganized Debtors as agreed in connection with the settlement embodied in the Tort Claimants RSA [Docket No. 5038].  Payments to other creditors

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

will be funded from debt and new equity to be funded pursuant to and in conjunction with the Debtors' plan. All creditors and interest holders therefore have a keen interest in assuring stable, profitable and safe operations of the Debtors going forward. The rejection of this Contract is part of the Debtors' effort to achieve that objective, and thus is in the interest of impaired and unimpaired creditors generally. There certainly is no other, purportedly nefarious, purpose at work here, nor could there be.

Disproportionate damage to the aggrieved party may be a ground to deny rejection, but mere unfairness is not. *PG&E*, 603 B.R. at 489 (citing *In re Chi-Feng Huang*, 23 B.R. 798 at 801). In fact, the Ninth Circuit B.A.P. laid out that "The fact that the expectations of a vendee are disappointed is not sufficient grounds standing alone to deny the trustee permission to reject. Any rejection will inevitably entail the disappointment of legitimate expectations. A basic policy of the Bankruptcy laws is to spread the burdens evenly among both those who may have loaned the debtor money and those who might have obtained a profit from dealing with him." *In re Chi-Feng Huang*, 23 B.R. 798 at 801. The prospect of full payment for general unsecured claims here means that, to the extent the Vlazakis Defendants are entitled to recover damages as a result of rejection of the Contract, they stand to be compensated in full, unlike the usual case in which counterparties to a rejected contract receive pennies on the dollar. This factor alone weighs heavily against any assertion of disproportionate damage to the Vlazakis Defendants, and thus supports rejection.

Rejection of the Contract is a sound exercise of the Debtors' business judgment because it will facilitate the Utility proceeding more expeditiously with the Project, and thereby achieve its safety objectives and operational efficiencies sooner. It will spare the Debtors the significant potential[4] burden of performing under the Contract—entailing both expense and further delay of indefinite dimensions—resulting from the Utility trying to solve the encroachment issue at its sole expense. Finally, rejection will likely get the State Court Action to trial more expeditiously, by sparing the Utility the very real burden of having to litigate the specific performance claim. The

---

[4] The burden is potential because, as noted in footnote 3 above, the Utility contends that its performance under the Contract is excused.

project has encountered many delays already, and pushing the trial date later into 2020 or even 2021 would create even more delays and resulting public safety concerns.

For the reasons stated above, the Debtors respectfully request that the Opposition be overruled and the Motion be granted.

Dated: January 31, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER & BENVENUTTI LLP**

By:    */s/ Peter J. Benvenutti*
          Peter J. Benvenutti

*Attorneys for Debtors and Debtors in Possession*