DAVID M. FELDMAN (*pro hac vice*)
  dfeldman@gibsondunn.com
MATTHEW K. KELSEY (*pro hac vice*)
  mkelsey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

MATTHEW D. McGILL (*pro hac vice*)
  mmcgill@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

MICHAEL S. NEUMEISTER, SBN 274220
  mneumeister@gibsondunn.com
MICHELLE CHOI, SBN 313557
  mchoi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for the Ad Hoc Committee of Holders of Trade Claims*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **LIMITED OBJECTION OF THE AD HOC COMMITTEE OF HOLDERS OF TRADE CLAIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH CONSENTING NOTEHOLDERS AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ☑ Affects both Debtors | |
| * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: February 4, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

The Ad Hoc Committee of Holders of Trade Claims (the "Trade Committee"), through its undersigned counsel, hereby files this limited objection and reservation of rights (the "Objection") to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Approving and Authorizing the Debtors to Enter Into Restructuring Support Agreement with Consenting Noteholders and Shareholder Proponents, and (II) Granting Related Relief* [D.I. 5519] (the "Motion").[1] In support of the Objection, the Trade Committee respectfully states as follows.

**PRELIMINARY STATEMENT**

1. The Trade Committee files this Objection to raise two issues with respect to the Noteholder RSA. *First*, while the Debtors tout the Noteholder RSA as emblematic of a "comprehensive consensus around their Amended Plan," *see* Motion, p. 7, the Noteholder RSA also reflects an agreement by the Debtors and the Consenting Noteholders to seek delay in the Court's entry of an order with respect to its PPI Decision (defined below), for no other purpose than to derail the legitimate right of holders of General Unsecured Claims (as defined in the Amended Plan), and in particular the Trade Committee, to seek a prompt appeal of that decision. Litigating an appeal of the PPI Decision is wholly consistent with the Debtors' repeated statements to the Court that the postpetition interest dispute is a "gating issue" and that the Debtors "don't delay." The Debtors' new-found goal of delaying entry of an order on the PPI Decision lacks good faith and is not supported by a legitimate business purpose; rather, it is a transparent litigation tactic aimed at precluding any appeal of the PPI Decision, which if reversed would only dilute recoveries of equity-holders, but not otherwise affect the Debtors' reorganization efforts.

2. *Second*, the Noteholder RSA contemplates a resolution of the Ad Hoc Noteholder Committee's objections to the Debtors' plan, but approval of the Noteholder RSA does not render the Debtors' Amended Plan confirmable. Whether the Amended Plan is confirmable is not for resolution on February 4. Accordingly, the Trade Committee reserves all rights to object to confirmation of the Debtors' Amended Plan on any ground, and to seek discovery in

---

[1] Capitalized terms not otherwise defined herein shall have the meaning afforded to them in the Motion.

connection with, among other things, the negotiations between the Debtors and the Consenting Noteholders and the revised treatment for the Utility Senior Note Claims, notwithstanding entry of any order approving the Noteholder RSA.

3. Accordingly, the Trade Committee objects to the Noteholder RSA to the extent it impacts the entry of a final order on the PPI Decision, or otherwise impacts the Trade Committee's right to object to confirmation of the Amended Plan.

## BACKGROUND

4. The Trade Committee consists of creditors holding more than $308 million in trade claims against the Debtors. *See First Amended Verified Statement of Ad Hoc Committee of Holders of Trade Claims Pursuant to Bankruptcy Rule 2019* [D.I. 5060]. The Debtors' trade creditors represent a significant creditor body in these Chapter 11 cases. The Debtors' schedules reflect over $1.29 billion in trade claims against Utility, and over $311,000 in trade claims against PG&E Corp. *Schedule E/F: Creditors Who Have Unsecured Claims For Non-Individual Debtor Pacific Gas and Electric Company* [D.I. 906-4], p. 6–367; *Schedule E/F: Creditors Who Have Unsecured Claims For Non-Individual Debtor PG&E Corporation* [D.I. 900-1], p. 2–3; see also *Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [D.I. 28] ("First Day Decl."), p. 11 ("As of January 28, 2019, PG&E's outstanding trade payables totaled approximately $2.1 billion."). Even in these cases, these are substantial amounts of unsecured claims.

5. On December 4, 2019, the Court heard oral argument between the Debtors and the "Creditor Groups"—including the Trade Committee—as to whether unsecured creditors are entitled to postpetition interest at the Federal Judgment Rate, or some other rate governed by state law. On December 30, 2019, the Court entered its *Memorandum Decision Regarding Postpetition Interest* [D.I. 5226] (the "PPI Decision"), determining that postpetition interest shall be paid at the Federal Judgment Rate. The Court expressly deferred determining "[w]hether [the PPI Decision] should be certified for direct appeal or [be] treated as final for purposes of Fed. R. Bankr. P. 7054 . . . ." PPI Decision, p. 17.

6. On January 27, 2020, the Debtors filed the Motion seeking approval of the

Noteholder RSA. Under Section 2(a)(i) of the Noteholder RSA, each Consenting Noteholder is deemed to "consent to deferral of the entry of a final order on the Bankruptcy Court's decision on the post-petition interest issues to the entry of the Confirmation Order . . . ." The Court set the hearing for approval of the Motion on February 4, 2020.

7. At a hearing on January 29, 2020, counsel for the Debtors, Trade Committee, Ad Hoc Noteholder Committee, and the Official Committee of Unsecured Creditors agreed to continue argument on whether the Court should certify the PPI Decision as a final order for direct appeal to the Ninth Circuit to February 4, 2020, the same day as the hearing on the Motion.[2]

## LIMITED OBJECTION AND RESERVATION OF RIGHTS

8. According to the Debtors, "the Noteholder RSA clearly is in the best interests of all creditors and stakeholders. As stated, with the Noteholder RSA, the Debtors have achieved a global consensus for their Amended Plan[3] that will expedite the timely and successful conclusion of these Chapter 11 Cases." Motion, p. 26. The Debtors' assertion of "global consensus for their Amended Plan" is an overstatement. In addition to the Governor's continued objection to the Debtors' plan, multiple significant creditors and creditor bodies continue to object to the Debtors' plan. *See*, *e.g.*, D.I. 5445, ¶ 12 ("The Governor does not believe that as drafted the Debtors' Plan meets the requirements of AB 1054, and thus it will not afford the reorganized entity access to the Wildfire Fund."); Hr'g Tr., Jan. 29, 2020 (PM), p. 40:5–12 (the "U.S. Government has billions of dollars of wildfire and related claim . . . [a]nd currently, we do intend to object to the plan . . . ."); Hr'g Tr., Jan. 29, 2020 (AM), p. 119:23–121:7 (the "California state agencies . . . wanted to point out . . . that the debtor's plan . . . puts the California State Agency fire-related claims in the fire victim trust. . . . And we do plan to object to that."). This includes

---

[2] The Trade Committee recognizes the Court's *Memorandum Regarding Timeline for Disclosure Statement and Confirmation* [D.I. 5586], pursuant to which the Court indicated its tentative intention to enter an order on the PPI Decision, but not certify it as a final order for appeal to the Ninth Circuit. The Trade Committee acknowledges and respects the Court's request to hear this issue by argument, not through supplemental papers, and accordingly will be prepared to address this issue at the hearing on February 4. Hr'g Tr., Jan. 29, 2020 (PM), p. 48:10–17.

[3] References to the "Amended Plan" are to the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* [D.I. 5590].

the Trade Committee, who intends to prosecute an appeal of the Court's ruling on the propriety of the Amended Plan's continued payment of postpetition interest on General Unsecured Claims at the Federal Judgment Rate while depriving holders of General Unsecured Claims the right to vote by asserting that this treatment constitutes unimpairment of their legal, contractual, or equitable rights.  *See* Amended Plan, ¶¶ 4.4, 4.21.

9. The Trade Committee files this Objection to contest the deferral of entry of an order on the Court's PPI Decision, as contemplated under Section 2(a)(i) of the Noteholder RSA.[4]  Further, the Trade Committee reserves all rights to object to confirmation of the Debtors' Amended Plan on all issues, and to seek discovery in connection therewith.

### A. The Noteholder RSA Seeks to Improperly Prejudice the Trade Committee's Appeal Rights with Respect to the PPI Decision.

10. Under the Noteholder RSA, upon its execution, each Consenting Noteholder is deemed to "consent to deferral of the entry of a final order on the Bankruptcy Court's decision on the post-petition interest issues to the entry of the Confirmation Order . . . ."  Noteholder RSA, § 2(a)(i).  If the Debtors and the Consenting Noteholders were the sole parties whose rights and interests were impacted by the PPI Decision, this provision would not be objectionable.  However, the PPI Decision also impacts the Debtors' trade creditors and other holders of General Unsecured Claims, given that the Amended Plan continues to purport to unimpair General Unsecured Claims while disregarding their right to postpetition interest at state law rates by imposing interest at the Federal Judgment Rate.  *See* Amended Plan, ¶¶ 4.4, 4.21.  Thus, deferral of entry of a final order on this issue only serves to frustrate any attempt by other stakeholders to seek an appeal of that order.  This is especially inappropriate given the Debtors' comments to the Court recently, to wit, that they altered the Amended Plan so that the Debtors are no longer required to reserve any amount in respect of this dispute should an appeal of the PPI Decision result in reversal.  *See* Hr'g Tr., Jan. 29, 2020 (AM), p. 102:17–103:20.  In other

---

[4] Indeed, as the Trade Committee intends to argue at the plan confirmation status conference on February 4 (and as set forth in the Trade Committee's January 27 letter [D.I. 5517]), the Court should certify its PPI Decision as a final order under Fed. R. Civ. P. 54(b), and for direct appeal to the Ninth Circuit pursuant to 28 U.S.C. § 158(d)(2)(A).

words, this provision of the RSA is a transparent attempt by the settling parties to moot out any appeal by delaying entry by the Court of a final order. As set forth below, this provision of the Noteholder RSA cannot be approved because the Debtors cannot demonstrate any requisite valid business justification.

11. The Debtors assert that the Noteholder RSA should be approved under the business judgment rule applicable under Bankruptcy Code section 363(b). To avail themselves of the business judgment rule, the Debtors must prove that the contemplated action "has a valid business justification." *See*, *e.g.*, *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *see also* Motion, p. 21. The Debtors do not assert a "valid business justification" for seeking to postpone entry of an order on the PPI Decision. To the contrary, through Section 2(a)(i) of the Noteholder RSA, the Debtors and the Consenting Noteholders seek a litigation advantage over other creditors, such as the Trade Committee, that intend to appeal the PPI Decision. This is not a valid business justification.

12. The lack of a "valid business justification" for Section 2(a)(i) of the Noteholder RSA is evidenced in part by the Debtors' continued assertion through these Chapter 11 cases that the dispute over postpetition interest should be resolved without delay, and in fact is a "gating" item:

- "[W]e have no objection to teeing up those two issues. I think the two issues relate to the federal judgment rate of interest and the make whole." Hr'g Tr., Sept. 24, 2019, p. 26:8–20.

- "And we don't want to delay it. We don't delay. We're very happy to have those adjudicated." *Id.* at p. 27:19–20.

- "—in September, when you – you had raised the issues of post-petition interest and the make-whole and requested -- it was your view, and we agreed, that those were gating issues that should be addressed early in the process. We're happy to address--" Hr'g Tr., Oct. 23, 2019, p. 32:10–14.

- "I don't think there's any reason to change the fact that these issues should be addressed now." *Id.* at p. 34:5–6.

13. Counsel for the Debtors asserted that the dispute over postpetition interest "is no longer a gating issue in view of the settlement with the bondholders." Hr'g Tr., Jan. 29, 2020

(AM), p. 103:24–25. The Trade Committee disagrees. The Debtors' Amended Plan purports to unimpair holders of General Unsecured Claims, including approximately $2.1 billion of trade claims as of the Petition Date. *See* First Day Decl., p. 11. As a result, holders of General Unsecured Claims will not have the right to vote on the Amended Plan, and as the Court found in its PPI Decision, will not have the ability to avail themselves of the protections of Bankruptcy Code section 1129(b). PPI Decision, p. 16.[5] Further, as confirmed by the Debtors on January 29, unlike the confirmed plan in *PG&E I*, which reserved $1.6 billion for "Disputed Claims,"[6] the Amended Plan does not contemplate any reserve to cover the disputed amount of postpetition interest for holders of General Unsecured Claims, and the Debtors will leave the parties to litigate that issue at confirmation. *See* Hr'g Tr., Jan. 29, 2020 (AM), p. 102:17–103:20.

14. This is not an attempt by the Debtors or the Consenting Noteholders to make the appeal of the PPI Decision or any confirmed plan more efficient after confirmation. In fact, prosecution of the appeal with respect to the PPI Decision now, rather than after confirmation, may incentivize parties to negotiate a consensual resolution, further reducing the outstanding issues that may impact the Debtors' ability to confirm a Chapter 11 under the timeline required under AB 1054. Rather, by seeking delay in the entry of an order on the PPI Decision, the Debtors and the Consenting Noteholders are in fact seeking to later avoid ***any*** successful appeal of the Court's PPI Decision by crafting an argument for equitable mootness. When the Debtors and all other parties were so eager to litigate the postpetition interest to resolve that dispute, and the Court appeased that approach by hearing argument and entering the PPI Decision, the Debtors and the Consenting Noteholders should not be permitted to use the Noteholder RSA as grounds to delay entry of an appealable order. This is not a valid business purpose taken by the Debtors; this is abuse of the bankruptcy process and the Court's time to secure a litigation advantage.

15. The Ninth Circuit Court of Appeals has recognized that "[g]iven the policies

---

[5] Of course, the Trade Committee asserts that the Amended Plan does in fact impair General Unsecured Claims by not paying postpetition interest consistent with state law rates, making section 1129(b) applicable.

[6] *In re Pac. Gas & Elec. Co.*, Case No. 01-30923 DM, Dkt. No. 14267 (Bankr. N.D. Cal. Dec. 22, 2003).

1 favoring reorganization of debtors, [a] bankruptcy court's efforts to preserve a level playing field for all parties to negotiate a plan [is] a rational basis" for granting or denying relief. *Benedor Corp. v. Conejo Enters. (In re Conejo Enters.)*, 96 F.3d 346, 353 (9th Cir. 1996). A level playing field is what the Trade Committee seeks. The Debtors and the Consenting Noteholders should not be permitted to seek a tactical advantage over the Trade Committee and other unsecured creditors, by delaying entry of an order on the PPI Decision. To the contrary, the Court should certify its PPI Decision as a final order under Fed. R. Civ. P. 54(b), and for direct appeal to the Ninth Circuit pursuant to 28 U.S.C. § 158(d)(2)(A).

16. It should be noted that this attempt by the Debtors to reach resolution with select constituents at the expense of trade creditors is not the first time they have done so in these chapter 11 cases. Under the Restructuring Support Agreement with the Official Committee of Tort Claimants (the "TCC") (the "TCC RSA"), the Debtors agreed to assign to the "Fire Victim Trust" all claims and causes of action against the Debtors' trade creditors, which assignment will be effected through the Debtors' chapter 11 plan. *See* D.I. 5038, p. 12; TCC RSA, p. 2. Even before these assignments are effective, and without any authority under the Bankruptcy Code or Bankruptcy Rules given the lack of a Rule 2004 order, contested matter, or adversary proceeding, the TCC has issued 126 subpoenas to trade vendors investigating potential claims and available insurance proceeds. *See* D.I. 5345, 5347, 5348, 5388, 5433. In effect, the Debtors are allowing the TCC and the Fire Victim Trust to launch a litigation campaign against trade creditors, the very parties that will be critical to the Debtors' ability to improve their fire-prevention safety measures as reorganized entities. This not only raises issues of fairness and impermissible favoritism by estate fiduciaries, but, because prosecution of lawsuits against necessary trade creditors potentially impacts their viability and/or ability to retain insurance coverage, the Debtors' approach raises concerns with the feasibility of the Debtors' Amended Plan and the Debtors' ability to satisfy the safety requirements under AB 1054. *See* Cal. Pub. Util. Code § 3292(b)(1)(C).

17. The Debtors' attempt to preclude any appeal by the Trade Committee with respect to the Court's PPI Decision is only the latest example of the Debtors' failure to act in the

interests of all constituents, and try to force a chapter 11 plan through without proper treatment for trade creditors. Accordingly, the Trade Committee objects to the Noteholder RSA to the extent it is used as a basis to withhold entry of any order on the Court's PPI Decision, or to deny certification of such order as a final order appealable directly to the Ninth Circuit.

### B. The Trade Committee Reserves All Rights in Connection with Plan Confirmation.

18. Under the Noteholder RSA, the Consenting Noteholders have settled all of their objections to the Debtors' plan, including their asserted right to postpetition interest at the contract rate and their right to allowance and payment of their asserted make-whole clams, in exchange for, among other things, (i) the issuance of almost $11.95 billion of new notes, (ii) payment of prepetition interest at the non-default rate in cash on the Effective Date, (iii) payment of postpetition interest on the Utility Impaired Senior Note, Utility Short-Term Senior Note Claims, and Utility Funded Debt Claims at the Federal Judgment Rate in cash on the Effective Date, (iv) reinstatement of Utility Reinstated Senior Note Claims, which are presumed to receive postpetition interest at the applicable contract rate (although this is not described with specificity), and (v) payment of $63 million in debt placement fees and reimbursement of up to $36 million in professionals' fees and expenses. Further, "the Debtors have agreed to use their best efforts to provide certain Consenting Noteholders an opportunity to participate in up to $2.0 billion of the $12.0 billion equity backstop." Motion, p. 8.

19. The Noteholder RSA does not determine that the above treatment, as implemented in the Amended Plan, satisfies the requirements of Bankruptcy Code section 1129. Rather, even if the Noteholder RSA is approved, the Court must separately assess the Amended Plan to determine whether it satisfies the obligations of Bankruptcy Code section 1129. The Trade Committee reserves all rights with respect to the Amended Plan and any treatment provided therein, including any terms implemented through the Noteholder RSA. Further, the Trade Committee reserves the right to seek discovery from the Debtors, the Consenting Noteholders, or any other party in connection with the Amended Plan, as modified pursuant to the Noteholder RSA.

## CONCLUSION

WHEREFORE, the Trade Committee requests that the Court deny any provision of the Noteholder RSA that prevents or delays entry of an order on the PPI Decision, and further reserves all rights with respect to the Debtors' Amended Plan.

Dated: February 3, 2020      **GIBSON, DUNN & CRUTCHER LLP**

By:  /s/ Michael S. Neumeister
     David M. Feldman (*pro hac vice*)
     Matthew K. Kelsey (*pro hac vice*)
     Matthew D. McGill (*pro hac vice*)
     Michael S. Neumeister
     Michelle Choi

*Attorneys for the Ad Hoc Committee of Holders of Trade Claims*