1                    UNITED STATES BANKRUPTCY COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                        -oOo-

4  In Re:                ) Case No. 19-30088
                       ) Chapter 11

5  PG&E CORPORATION AND PACIFIC  )
  GAS AND ELECTRIC COMPANY     ) San Francisco, California

6                       ) Tuesday, February 4, 2020
               Debtors.  ) 10:00 AM

7  _____  )
                        STATUS CONFERENCE RE:

8                        CONFIRMATION

9                        DEBTORS' MOTION PURSUANT TO
                        11 U.S.C. SECTIONS 363(B) AND

10                     105(A) AND FED. R. BANKR. P.
                     6004 AND 9019 FOR ENTRY OF AN

11                     ORDER (I) APPROVING AND
                     AUTHORIZING THE DEBTORS TO

12                     ENTER INTO RESTRUCTURING-
                     SUPPORT AGREEMENT WITH

13                     CONSENTING NOTEHOLDERS AND
                     SHAREHOLDER PROPONENTS, AND

14                     (II) GRANTING RELATED RELIEF
                     [5519]

15

16                  TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE DENNIS MONTALI

17              UNITED STATES BANKRUPTCY JUDGE

18  APPEARANCES:
  For the Debtors:          STEPHEN KAROTKIN, ESQ.

19                     Weil, Gotshal & Manges LLP
                     767 Fifth Avenue

20                     New York, NY 10153
                     (212) 310-8000

21

22  For the Ad Hoc Committee    MATTHEW K. KELSEY, ESQ.
  of Holders of Unsecured     Gibson, Dunn & Crutcher LLP
  Trade Claims:           200 Park Avenue

23                     New York, NY 10166
                     (212) 351-4000

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For the Ad Hoc Committee    ABID QURESHI, ESQ.
     of Senior Unsecured         DAVID H. BOTTER, ESQ.
 2   Noteholders:                Akin Gump Strauss Hauer & Feld LLP
                                 One Bryant Park
 3                               New York, NY 10036
                                 (212) 872-1000
 4
     For the Ad Hoc Group of     MATTHEW A. FELDMAN, ESQ.
 5   Subrogation Claim Holders:  Willkie Farr & Gallagher LLP
                                 787 Seventh Avenue
 6                               New York, NY 10019
                                 (212) 728-8651
 7
     For Adventist Health        REBECCA J. WINTHROP, ESQ.
 8   System/West and Feather     Norton Rose Fulbright US LLP
     River Hospital:             555 South Flower Street
 9                               41st Floor
                                 Los Angeles, CA 90071
10                               (213) 892-9200

11   For California State        PAUL J. PASCUZZI, ESQ.
     Agencies:                   Felderstein Fitzgerald Willoughby
12                               Pascuzzi & Rios LLP
                                 500 Capitol Mall
13                               Suite 2250
                                 Sacramento, CA 95814
14                               (916) 329-7400

15   For Fire Victims:           DARIO DE GHETALDI, ESQ.
                                 Corey, Luzaich, De Ghetaldi &
16                               Riddle LLP
                                 700 El Camino Real
17                               Millbrae, CA 94030
                                 (650) 871-5666
18
     For Governor Gavin Newsom:  MATTHEW L. HINKER, ESQ.
19                               (Telephonically)
                                 O' Melveny & Myers LLP
20                               7 Times Square
                                 New York, NY 10036
21                               (212) 326-2000

22   For the Official Committee  CECILY A. DUMAS, ESQ.
     of Tort Claimants:          Baker & Hostetler LLP
23                               600 Montgomery Street
                                 Suite 3100
24                               San Francisco, CA 94111
                                 (415)659-2600
25
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For PG&E Shareholders: | BRUCE BENNETT, ESQ. |
| | | Jones Day |
| 2 | | 555 South Flower Street |
| | | 50th Floor |
| 3 | | Los Angeles, CA 90071 |
| | | (213) 489-3939 |
| 4 | | |
| | For the United States of | MATTHEW J. TROY, ESQ. |
| 5 | America: | (Telephonically) |
| | | United States Department of |
| 6 | | Justice |
| | | Ben Franklin Station |
| 7 | | P.O. Box 875 |
| | | Washington, DC 20044 |
| 8 | | (202) 514-9038 |
| 9 | ALSO PRESENT: | WILLIAM B. ABRAMS, Individual and |
| | | Tubbs Fire Victim |

10

11

12

13

14

15

16

17

| 18 | Court Recorder: | ANKEY THOMAS |
| | | United States Bankruptcy |
| 19 | | Court |
| | | 450 Golden Gate Ave. |
| 20 | | San Francisco, CA 94102 |
| 21 | Transcriber: | CLARA RUBIN |
| | | eScribers, LLC |
| 22 | | 7227 N. 16th Street |
| | | Suite #207 |
| 23 | | Phoenix, AZ 85020 |
| | | (973) 406-2250 |
| 24 | | |

25  Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

SAN FRANCISCO, CALIFORNIA, TUESDAY, FEBRUARY 4, 2020,

10:00 AM

-oOo-

1
2
3
4      (Call to order of the Court.)

5           THE CLERK:  All rise.  Court is now in session, the

6      Honorable Dennis Montali presiding.

7           THE COURT:  All right.  Good morning, everyone.

8           IN UNISON:  Good morning, Your Honor.

9           THE CLERK:  Matter of PG&E Corporation.

10          THE COURT:  Mr. Karotkin, before we begin with the

11     agenda items, I have another item that I forgot to ask before.

12     We're carrying on the calendar in a couple weeks the continued

13     exit financing, but I assume that that's got to be changed

14     based upon everything that's been in the revised plan.  Is that

15     that case -- that's the case?

16          MR. KAROTKIN:  Yes.  There will be a slight amendment

17     to reduce the amount of some of the financing, but we do intend

18     to go forward on the 19th.

19          THE COURT:  Well, why do you -- why does it need to be

20     a standalone rather than be matched up with one of the -- one

21     of the next hearings, like the disclosure statement?

22          MR. KAROTKIN:  Well, there is a deadline in the

23     commitment letters, that it be approved.  And it's been --

24          THE COURT:  Okay, well, one of the --

25          MR. KAROTKIN:  -- it's been out there a long time.

PG&E Corp., Pacific Gas and Electric Company

1　　　　THE COURT:  One of my pet peeves, as you can imagine,

2　　on these tight deadlines like today's deadline -- so I just --

3　　is it really critical?  I mean, I don't mind setting it, but I

4　　don't want one of these things were it's, you know, filed on a

5　　Tuesday and we have the hearing on a Friday.

6　　　　　　MR. KAROTKIN:  It is --

7　　　　　　THE COURT:  So --

8　　　　　　MR. KAROTKIN:  It is critical, and we would ask that

9　　you maintain the date, Your Honor.

10　　　　　THE COURT:  So it's on our calendar for the 19th?

11　　　　　MR. KAROTKIN:  Yes, sir.

12　　　　　THE COURT:  So when will it be updated?  Let's pin you

13　　down on that one.  And you don't have to decide right now.  I

14　　mean, I think you got my point.  Today's February 4th, so it's

15　　fifteen days from now.  And --

16　　　　　MR. KAROTKIN:  But, Your Honor, I just will point out,

17　　it's going to be updated to reduce the numbers --

18　　　　　THE COURT:  I don't --

19　　　　　MR. KAROTKIN:  -- by a --

20　　　　　THE COURT:  I know that.

21　　　　　MR. KAROTKIN:  Right.

22　　　　　THE COURT:  It's just a question of notice.  I mean,

23　　it's --

24　　　　　MR. KAROTKIN:  Yes.

25　　　　　THE COURT:  -- just this -- today is a good example

PG&E Corp., Pacific Gas and Electric Company

1    where the time was shortened and there were very few

2    objections.  But I just want to avoid that time again.

3            MR. KAROTKIN:  I understand.

4            THE COURT:  Well, you tell me; when do you --

5            MR. KAROTKIN:  I will --

6            THE COURT:  -- think you can update?

7            MR. KAROTKIN:  If I could get back to you later

8    this --

9            THE COURT:  Yeah.

10           MR. KAROTKIN:  -- this morning, that'd --

11           THE COURT:  Okay.

12           MR. KAROTKIN:  Thank you.

13           THE COURT:  All right, so is Mr. Abram (sic) here --

14   Abrams?

15           MR. ABRAMS:  Yes, I'm here.

16           THE COURT:  Okay, Mr. Abrams, I said that I was going

17   to let you go first.  Let me make a couple of preliminary

18   comments for your benefit.  But come forward, please.

19           So, good morning, Mr. Abrams.  So I wanted to

20   clarify --

21           MR. ABRAMS:  Good morning.

22           THE COURT:  -- two things.  There was some

23   confusion --

24           MR. ABRAMS:  Thank you.

25           THE COURT:  -- obviously, between you and my clerk and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    perhaps what I told the public about not today's motion but

2    your motion to reconsider the support agreements for the TCC

3    and the subordinated creditors.  The problem is, if I read the

4    documents correctly, you filed the same document, exact same

5    document, on two different occasions.  Right?

6              MR. ABRAMS:  Well, there was the joinder and then --

7              THE COURT:  I know, but it's the same argument, the

8    same substance.

9              MR. ABRAMS:  Same -- I did add some to the argument,

10   so it is slightly amended.

11             THE COURT:  Okay.

12             MR. ABRAMS:  Yes.

13             THE COURT:  All right, well, at the end of the hearing

14   today, I will ask Mr. Karotkin and the others if they agree to

15   have that heard on a shortened-time basis.

16             MR. ABRAMS:  Thank you.

17             THE COURT:  So you know I -- you've been active in

18   this case, and I'm not critical of you or criticizing you, but

19   you can't just send my clerk an email and say, "I want this

20   hearing in a week."  The procedure for shortening time is well

21   established.  And today I will -- at the end of today's

22   hearing, I will ask Mr. Karotkin and the principal lawyers if

23   they are willing to have your -- what we'll call your revised

24   amended objection to the RSAs -- the prior RSAs, next week.  If

25   they agree, I'll do it.  If they don't agree, I won't do it.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    It's just that clear.  We cannot just ignore these procedures.

2    And if they don't agree, then you'll have to follow the

3    procedure and file a motion shortening time, and so on.

4         I did mention to you the other day that it might be

5    better for you to listen to the decision that I make today on

6    today's support agreement and the senior bondholders; not that

7    it's different.  And I realize the arguments you made are

8    different.  But just again, you've got to understand, as one of

9    the things I'm going to ask you to elaborate on today is what

10   are the ramifications to this case and to the creditors and to

11   the fire survivors if I am persuaded by you and disapprove --

12        MR. ABRAMS:  Yes.  Yes.

13        THE COURT:  -- this today.

14        And so it'll be the same question.  It may be --

15   whether your legal arguments are forceful or not, it's a

16   question that's first on my list today and will be on for next

17   week.

18        Now -- or whenever it is.

19        Now let's switch to today's objection.  I changed the

20   procedure.  Not normal.  But because you were the -- with the

21   exception of a limited objection by one trade group -- creditor

22   group, which I'll come to, and really doesn't affect the

23   specifics of the support agreement, I decided, because you were

24   outspoken in your views, and the issues are fairly

25   straightforward as set forth in the motion, to do exactly what

PG&E Corp., Pacific Gas and Electric Company

1   I'm doing:  I'm giving you a chance to argue first, and then

2   I'll hear from the other side, and then I'll be prepared to

3   make a ruling.

4           But I want to make one other comment and then I'll

5   listen to you.  I read again last night your objection to

6   today's motion, and you have a number of points that you, as a

7   citizen and as a fire survivor and as a customer of PG&E, have

8   every right to complain about.  You raise, in no order, the

9   following uncomplimentary terms:  "mismanagement" --

10          MR. ABRAMS:  Yes.

11          THE COURT:  -- "political lobbying" --

12          MR. ABRAMS:  Yeah.

13          THE COURT:  -- "criminal behavior" --

14          MR. ABRAMS:  Yep.

15          THE COURT:  -- et cetera, et cetera, "take the money

16  and run".  My point is that all of those are provisions and --

17  positions that you are welcome to take.

18          MR. ABRAMS:  Yes.

19          THE COURT:  But I didn't see anything specific that

20  keys those arguments to today's agenda.  So I don't want you to

21  waste time telling me your views about hedge funds or the

22  management of PG&E or --

23          MR. ABRAMS:  Sure.

24          THE COURT:  Again, at a personal level, I share your

25  worries and concerns about what happens if there's a fire or if

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    PG&E comes out of bankruptcy only to have to go back in again.

2    All of those issues are critical, fundamental, enormous; they,

3    I'm sure, are on the governor's mind, the CPUC's mind,

4    certainly my mind, certainly your mind.  But I don't think they

5    relate to today.

6         So I don't want you to get bogged down on the

7    reorganization plan will fail, the plan won't be feasible, the

8    management are a bunch of crooks.  I want you to focus on why

9    you think I should overrule the motion -- the joint motion of

10   two large powerful and significant constituencies -- the debtor

11   and the shareholders who're aligned with the debtor --

12        MR. ABRAMS:  Yes.

13        THE COURT:  -- and the major creditor group who have

14   buried the hatchet in part and said, this is how we think we

15   can move forward.  And tell me why I should overrule their

16   judgment and why -- and what do you think would be the

17   ramifications, short-term probably more so than long-term, if I

18   were to deny your motion.

19        With that, I promised you fifteen minutes and I will

20   give them to you.

21        MR. ABRAMS:  Thank you, Your Honor, and thank you very

22   much for framing that for me.  I own the fact that I am not an

23   attorney, and I'm certainly not a bankruptcy attorney and

24   knowledgeable about these proceedings.  And I'm doing my best

25   to adhere to the proceedings and proceed accordingly.  I'm not

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  the best person to argue this case, for sure, because I'm not

2  an attorney and because I'm not familiar with all of the laws

3  associated with that.  However, in some ways I'm the best

4  person to talk about this because I am a wildfire survivor,

5  because I do understand the consequences of an RSA that does

6  not show that it's with sound business judgment.  I am familiar

7  with the consequences of something that is unjust, and the

8  downstream ramifications for that.

9       The difference between my position and why I'm the

10  only objector to this RSA is not because the RSA is a fabulous

11  document.  It's not because this is a wonderful document that

12  everyone agrees with.  It's because this RSA is looking at

13  short-term payouts.  I am looking at what are the implications

14  to this RSA in the mid term and the long term.  And that's the

15  difference.

16       The difference here is, regardless of the parties that

17  you just mentioned, whether that be the debtors or the

18  noteholders or the TCC, first and foremost they are here for

19  their short-term payouts.  And I appreciate that.  As a

20  wildfire survivor, I am surrounded by burned-up homes, by

21  people trying to rebuild.  And it is a just and noble cause to

22  be looking to get those folks paid.  PG&E burned down their

23  homes; they should pay.  I fully support that.  But this RSA is

24  not the way to do it.  It points us in the wrong direction.

25       So I tried to look up, the best I can, about what are

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    the rules associated with approving an RSA.  I'm sure I'll be

2    corrected if these are not correct.

3            THE COURT:  Did you find any?  There aren't a whole

4    lot of them, you know.  It's --

5            MR. ABRAMS:  Thank you.  Yes.  I've been --

6            THE COURT:  Okay.

7            MR. ABRAMS:  I've been searching through Google.

8    So --

9            THE COURT:  I might consider myself -- okay.

10           MR. ABRAMS:  So one is this business-judgment rule.

11   And as I said in my motion, there's no way -- I mean, there's

12   nobody who could reasonably come to this podium and say,

13   "PG&E's a company where you should take their word that they're

14   following good business judgment."  They are the poster child

15   of a company that should not be afforded that path.  And I'll

16   go into that a little further.

17           The other thing that I looked at was "manifestly

18   unjust".  And I had to do a little more research on what that

19   was.  I guess, for a layman like myself, it's wrong, it's

20   unfair.  Right?  And this is clearly both of those things.  And

21   I'll go into why.

22           THE COURT:  Well, you got to delve into what rather

23   than why.

24           MR. ABRAMS:  Yes.

25           THE COURT:  That's -- forget why.

PG&E Corp., Pacific Gas and Electric Company

1          MR. ABRAMS:  Thank you.

2          THE COURT:  What is unjust and what are my choices

3     today?

4          MR. ABRAMS:  Thank you.

5          THE COURT:  Okay?

6          MR. ABRAMS:  So let me go over a few of those things

7     that are unjust.  One of the things that are unjust is that,

8     through this RSA deal and through the ad hoc committee dropping

9     their RSA, there were concessions.

10          THE COURT:  You mean their plan?

11          MR. ABRAMS:  Their plan, yes.  There were concessions

12     that they made.  Now, this wasn't -- all of their objections to

13     the plan in the first place haven't changed, to a large

14     measure.  What's gone away and what's changed is they've hedged

15     their investment.  They haven't improved the plan.  They have

16     liens on assets.  And they said --

17          THE COURT:  What liens on assets?

18          MR. ABRAMS:  They have liens on assets, PG&E assets --

19          THE COURT:  Which ones?  There's not a whole lot of

20     liens on assets in this case.  That's what makes it so unusual.

21          MR. ABRAMS:  Well --

22          THE COURT:  Remember the DIP financing early last

23     year?

24          MR. ABRAMS:  The part of --

25          THE COURT:  That's the only real financing.  And

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   that's --

2           MR. ABRAMS:  Sure.

3           THE COURT:  It's a lot of money, but relatively it's

4   not a lot of money.  And it's not this group that -- in fact --

5           MR. ABRAMS:  Right.

6           THE COURT:  -- this group is senior unsecured

7   creditors.

8           MR. ABRAMS:  Sure.

9           THE COURT:  "Unsecured" means no liens.

10          MR. ABRAMS:  Understood.  So --

11          THE COURT:  Well, but do you understand?  Because you

12  can't --

13          MR. ABRAMS:  So --

14          THE COURT:  -- you can't -- excuse me.  You can't --

15          MR. ABRAMS:  Yeah.

16          THE COURT:  -- say they got a lien on all the assets,

17  when they don't.

18          MR. ABRAMS:  So part of this is I, as a claimant,

19  which is part of my objection to this, and the people who are

20  going to be affected by this, are largely kept in the dark

21  about its implications.  And, you know, it's often described to

22  us like this is so complicated you need to stay out of the way,

23  just, you know, wait for your check, we'll do our best, and it

24  will come.  But they are not -- none of these parties are being

25  upfront with this is the proposal and this is what our outs

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  are.

2  THE COURT:  Can you be more --

3  MR. ABRAMS:  And --

4  THE COURT:  Can you be more specific?

5  MR. ABRAMS:  Yes; let me be more specific.  So part of

6  what this is, is this plays into a short gain.  It's no

7  coincidence that the deadline put upon this Court, lobbied for

8  by the parties behind me, is June 30th.

9  THE COURT:  Well, the governor isn't behind you, and

10  the legislature isn't behind you.  So there may have been

11  lobbying by groups, including the debtor, and I don't know --

12  I'm not -- I wasn't in Sacramento.  But it doesn't matter.  I'm

13  handed, and you are handed, and we --

14  MR. ABRAMS:  Yeah.

15  THE COURT:  -- in California are handed, an act of the

16  California legislature, like it or not.

17  MR. ABRAMS:  Yeah --

18  THE COURT:  We know every day that we have to accept

19  the consequences of legislative decisions.  And then we have

20  choices of what to do about it.  But I don't have an option.

21  AB 1054 got handed to me, saying, here's the law that the

22  company --

23  MR. ABRAMS:  Yes.

24  THE COURT:  -- doesn't have to comply with but, if it

25  complies with -- these are the consequences; if it doesn't

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    comply, these are the consequences.

2          Go ahead.

3          MR. ABRAMS:  Yes.  Thank you, Your Honor.  And my

4    point of bringing that up is, of course, we have to follow

5    existing law, but part of this is (a) that's California law --

6    and I'm looking at the seal behind your desk, and of course

7    this is U.S. bankruptcy law.

8          THE COURT:  Right.

9          MR. ABRAMS:  And so there's a higher standard, in many

10   respects, than AB 1054.  And because of all of that lobbying,

11   AB 1054, like all legislation, has holes in it, but it has

12   holes in it because of the people behind me.

13         THE COURT:  But what should you, as a citizen, do

14   about that?

15         MR. ABRAMS:  So -- well, I'm here today, Your Honor,

16   and that's --

17         THE COURT:  Right, but what --

18         MR. ABRAMS:  -- part of what I'm here for.

19         THE COURT:  -- what do you think I can do about that,

20   even if I agree with you?

21         MR. ABRAMS:  So here's what this is:  So June 30th, as

22   I was saying, is no accidental date.  It happens to also come

23   at the start of wildfire season.  All the parties behind me

24   understand that.  They better get this thing wrapped up before

25   there is another fire.  And that's the truth.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  You have to --

2          MR. ABRAMS:  I'll -- I'm sorry, Your Honor.  I will

3   lower my voice.  Obviously, this is very passionate and

4   personal to me.

5          THE COURT:  I understand.

6          MR. ABRAMS:  And I will try to control --

7          THE COURT:  I'm not criticizing you.  I just want you

8   to talk a little lower; that's all.

9          MR. ABRAMS:  Sure.  So, you know, that date --

10         THE COURT:  Do you think --

11         MR. ABRAMS:  -- is PG&E's --

12         THE COURT:  Do you think maybe the legislature had in

13  mind that they wanted to create this fund that's available

14  for -- and last time I checked, the other two major California

15  IOUs are signed up and ready to be covered.  Only this one

16  isn't, until these bankruptcy problems get solved; right?  But

17  if June 30 comes and goes and PG&E's still in this condition

18  and there's a terrible fire in California, isn't it true that

19  the investor-owned utilities from the southern part of the

20  state are covered by the wildfire fund and that's to their

21  benefit?

22         MR. ABRAMS:  That is to their benefit --

23         THE COURT:  But why --

24         MR. ABRAMS:  -- but this is a PG&E deadline.  So part

25  of this is --

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  No, it's not.  It's a California-law

2   deadline.

3          MR. ABRAMS:  It's a California-law deadline --

4          THE COURT:  Okay --

5          MR. ABRAMS:  -- specifically for PG&E.  So part of

6   what has happened, unfortunately, is that deadline -- because

7   of how it was positioned by the lobbyists, was that that

8   deadline is now -- even though it's meant to be a PG&E

9   deadline, is also a deadline for claimants.  And it shouldn't

10  be perceived as such.

11         THE COURT:  But you're not advocat --

12         MR. ABRAMS:  This is PG&E.

13         THE COURT:  Are you advocating that I do something

14  that stands in the way of PG&E meeting that deadline?

15         MR. ABRAMS:  I am not.

16         THE COURT:  Well, then I'm having trouble -- we're

17  back to what I wanted you to focus on:  What is -- what's the

18  decision I have to make today do?  How does it bear on what

19  you're describing?  Because all I'm really asked to approve

20  today is an RSA.  Focus on the "S"; it's "support".  It is a

21  support agreement between one group of creditors and the

22  debtor --

23         MR. ABRAMS:  Yes.  So --

24         THE COURT:  -- just like the other two RSAs.  It

25  doesn't -- it's not a reorganization plan.  It is not --

PG&E Corp., Pacific Gas and Electric Company

1          MR. ABRAMS:  Yes.

2          THE COURT:  -- disclosures that will come in the near

3     future.

4          MR. ABRAMS:  Yeah.

5          THE COURT:  And it's -- most importantly, it's not the

6     voting day for you and thousands of other people to express

7     their vote.  And if they vote the plan down, there are

8     consequences.

9          MR. ABRAMS:  Yeah.  And I understand that, but this is

10    supporting the wrong direction.

11         THE COURT:  Okay.

12         MR. ABRAMS:  And so that's my point.  This is headed

13    in the wrong direction.  And, you know, part of this is -- it's

14    just headed in the wrong direction for PG&E.  And again, the

15    parties behind me know that.  They are counting on the fact

16    that they have an out.  When the next fires occur, they are

17    counting on the fact that there is a public option on the table

18    which will be a better option when PG&E is injured.  They

19    understand those things.

20         THE COURT:  What --

21         MR. ABRAMS:  They're playing into those things.

22         THE COURT:  What should I do?  Again, my choices

23    are --

24         MR. ABRAMS:  What you can do -- yeah.

25         THE COURT:  I got two choices today:  yes or no on

PG&E Corp., Pacific Gas and Electric Company

1   this motion.  I am not in a position to tell Mr. Karotkin and

2   the principal lawyers on the other side, "Why don't you guys

3   sit around the table and I'll roll up my sleeves and I'll come

4   up with a better idea for you."  That's not what I'm able to

5   do.

6            So you need to tell me why I should say no in the face

7   of such significant -- whether you call it biased or not --

8   support.

9            MR. ABRAMS:  Sure.

10           THE COURT:  Why should I say no?

11           MR. ABRAMS:  You should say no because those parties

12  need to go and they need to start aligning their documents.

13           THE COURT:  So what do they do?  If I disapprove it,

14  what is their --

15           MR. ABRAMS:  Yes.

16           THE COURT:  -- what's their action plan for the short

17  term?

18           MR. ABRAMS:  Their action plan is to go look at what's

19  filed as a plan by Bill Johnson at the CPUC, in terms of what

20  they were planning to do.  These documents are opposing each

21  other.  There is no similarity between what was -- and by the

22  way, not coincidentally, filed on the same day.

23           THE COURT:  But what do you think the Commission will

24  do if that's true?  If you persuade the Commission of this,

25  they are in the driver's seat in many respects.  In other

PG&E Corp., Pacific Gas and Electric Company

1    words, this Court needs them more than the reverse, perhaps, or

2    maybe it's reciprocal.  But under the bankruptcy laws, I have

3    to comply with state law and particularly the regulation of

4    utilities and rate makers.  In fact, the Bankruptcy Code says

5    the Court has to defer to the decision of the rate makers,

6    which is bankruptcy "code" for the CPUC has to sign off on

7    this.

8         MR. ABRAMS:  So let me just tell you -- and again,

9    this is not because I wanted to, but I feel compelled to -- in

10   that CPUC proceeding, of which I'm a part of (sic), they're

11   pointing at this Court.  They -- as soon as the first RSA was

12   passed by the TCC, all these parties behind me -- and said,

13   look, the U.S. bankruptcy court -- we're running, we're ready

14   to go, this is being rammed through, hurry up.  And they're

15   putting pressure on that process, through leveraging what's

16   going on here, to say, shorten testimony, hurry up the process,

17   and get this done.

18        THE COURT:  See --

19        MR. ABRAMS:  And they're ramming it through --

20        THE COURT:  See, Mr. Abrams, what I'm --

21        MR. ABRAMS:  -- without consideration --

22        THE COURT:  -- where I'm having --

23        MR. ABRAMS:  -- of the huge --

24        THE COURT:  -- where I'm having --

25        MR. ABRAMS:  -- implications to the parties.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  Where I'm having trouble with your

2  argument is you've given me mixed messages.  You're

3  complaining -- you're using words like "ram through" and CPUC

4  being told the bankruptcy court's up and running.  But then

5  when I ask you do you want me to block the company from

6  complying with AB 1054, you say no.  So --

7    MR. ABRAMS:  No, I don't want to --

8    THE COURT:  -- which way do you want it?  I can --

9    MR. ABRAMS:  I want --

10    THE COURT:  I could slow them down and say, "I'm

11  throwing this RSA out.  Start over again."  The clock keeps

12  ticking.  That clock has only got five months to go to June 30.

13  And you even say that that's a critical deadline, I think.

14  So --

15    MR. ABRAMS:  Yes.  And I want PG&E to be successful.

16  If there's any group of folks who want PG&E successful, it's

17  those people living around those lines.

18    THE COURT:  Right.

19    MR. ABRAMS:  That's claimants.

20    THE COURT:  So how does it --

21    MR. ABRAMS:  That's -- and I want -- so I want -- so

22  let me be more specific, Your Honor.

23    THE COURT:  Just --

24    MR. ABRAMS:  Here's what I --

25    THE COURT:  I want you to wrap up and tell me why it

PG&E Corp., Pacific Gas and Electric Company

1  advances what you believe are the important goals for the short

2  term, because that --

3           MR. ABRAMS:  Yes.

4           THE COURT:  To me, there's no question in my mind --

5  if I disapprove this proposal, I don't know what the next step

6  will be, but it won't be positive; it'll be -- it won't be on

7  an exorable march towards the goal of June 30th, in my opinion.

8  But you tell me why you think it would not impede that process.

9           MR. ABRAMS:  I think it would be a prudent move to

10  disapprove this and send them back to make sure that they're

11  aligned to what they filed with the CPUC.  The current RSA does

12  not point in that direction.  I have provided a number of

13  suggestions, remedies, for addressing that, in terms of tying

14  an investment structure to the risks, which is what any prudent

15  business decision should do.  I've talked about all sorts of

16  things to make sure that they have an investment structure that

17  switches from short-term yield to longer-term horizons.

18           THE COURT:  And if you --

19           MR. ABRAMS:  I've put these proposals forward --

20           THE COURT:  And --

21           MR. ABRAMS:  -- and they are not incorporated into

22  this RSA or into the plan.

23           THE COURT:  Yeah, but I guess what I'm saying is they

24  don't belong in the RSA.  They might belong in a plan.  But if

25  you can persuade the Commission, you'll win your case.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    MR. ABRAMS:  The Commission is not looking to get into

2    the -- in the way of the U.S. bankruptcy court.

3    THE COURT:  No, I think --

4    MR. ABRAMS:  They are not -- they are --

5    THE COURT:  I --

6    MR. ABRAMS:  -- they are deferring -- unfortunately --

7    THE COURT:  Okay --

8    MR. ABRAMS:  -- that's what it is.

9    THE COURT:  Okay.

10   MR. ABRAMS:  I've been in the court where Judge Allen

11   has said, look, Will, that's U.S. bankruptcy court, go talk to

12   Judge Montali.  Judge Montali says, okay, go talk to Judge

13   Allen.  And this is the diffusion -- and I'm sorry, this does

14   not -- and I am very respectful of the Court and I understand.

15   THE COURT:  I didn't say you weren't.

16   MR. ABRAMS:  But there is generally -- outside the

17   court system, there's generally a diffusion of responsibility;

18   "it's not us; it's them."  I've been chasing around locally, to

19   here in San Francisco, to Sacramento, looking for folks to take

20   ownership of these issues.  And every court that I go to, every

21   forum I go to, the parties behind me are saying, well, it's not

22   us, it's over there.  It's -- before bankruptcy, it was, like,

23   look, Will, bankruptcy is the place to do it; it's

24   restructuring; restructuring is the place to get PG&E turned

25   around; that's the place.  Now we're in bankruptcy and the

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  parties say, no, no, no, Will, bankruptcy is not the place,

2  it's after, later.  And that's what keeps happening.

3           THE COURT:  Okay.

4           MR. ABRAMS:  Your Honor, I would ask --

5           THE COURT:  Last --

6           MR. ABRAMS:  -- if I can please have a little rebuttal

7  time --

8           THE COURT:  Let me --

9           MR. ABRAMS:  -- after.  That would be appreciated.

10          THE COURT:  No, let me assure you again of something

11  that you have to accept and take my word for it.  I believe

12  this is more of a -- not a baby step, but it's a step towards a

13  goal.

14          THE COURT OFFICER:  Your Honor, I apologize.  There's

15  a bag in the hallway.

16     (Gap in audio.)

17          THE COURT:  Can you go out and see --

18          Can you identify it for us, please?

19          THE COURT OFFICER:  That's all right.  Don't

20  apologize.  Thank you for doing it.  Take him out and identify

21  his bag.

22          Let's just wait a second.

23          Well --

24          MR. ABRAMS:  So ---

25          THE COURT:  -- Mr. Abrams, I'll finish what I was

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    going to make (sic), and then I'll let you make your closing

2    comment.  And I'll just wait and decide whether I need

3    rebuttal.

4          You have to trust some portions of the system; right?

5          MR. ABRAMS:  Yes.

6          THE COURT:  And you can have a plan moving towards the

7    big steps of disclosure statement and confirmation, without an

8    RSA.  In fact, if there hadn't been this RSA negotiated between

9    the debtor and the senior bondholders, there would be still

10   perhaps an alternative plan available.  But there'd still be

11   some big issues.

12         I had a multi-billion-dollar legal issue to decide,

13   and the parties have negotiated a resolution to that.  And --

14   but still, whether you think I'm pointing to the Commission and

15   the Commission's pointing to me, I don't know what the

16   Commission has to do, but I know what I have to do at a

17   confirmation hearing; I have to find that the plan is

18   feasible -- and that's not just a legal term; that's a -- you

19   know what the word -- "feasible"'s feasible -- and not

20   likely -- this is important -- not likely to be followed by

21   further need for rehabilitation in the Bankruptcy Code.

22         Now, no one can predict that there won't be another

23   fire.  And we all hope there won't be another major fire.

24   Unfortunately, the bankruptcy court can't predict that.  And so

25   things like vegetation management and good practices and all

(970)352-4520 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  the kinds of things that you and the Commission and Judge Ellis

2  (sic) and lots of other things are dealing with, going forward,

3  as awkward as this may sound, that's not what I'm supposed to

4  be dealing with.  I'm supposed to be dealing with straightening

5  out and helping and overseeing the reorganization of the

6  problems that existed on January 29th, 2019.  But I still have

7  to have evidence.  And Mr. Karotkin and others supporting the

8  plan will have to persuade me that the plan should be confirmed

9  because the company is not likely to need rehabilitation in the

10 bankruptcy court.  Again, the only exception to that is for

11 companies that liquidate in bankruptcy, and we certainly don't

12 anticipate this one to liquidate.

13        So I'll leave it at that.  You can make a closing

14 remark.  And I am not inclined to let you have rebuttal.  But

15 go ahead and make your closing comment now and then I'll hear

16 from the debtors' side and the shareholders -- or the -- excuse

17 me, anyone else.  Go ahead.

18        MR. ABRAMS:  Understand.  And I do respect the

19 process, Your Honor; that's why I'm not outside handcuffing

20 myself to the PG&E steps.  I'm here because I respect the

21 process and because I value the input of the folks behind me,

22 even though I disagree with them --

23        THE COURT:  Even though you disagree with --

24        MR. ABRAMS:  -- profoundly.

25        THE COURT:  Well, that's okay.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    MR. ABRAMS:  So, look, there is no due process that is
2 going to happen when this plan comes out.  The disclosure
3 statements are not going to be anything that's going to provide
4 someone to be able to vote this plan down with -- again, not --
5 it's out of --
6    THE COURT:  Well, how do you know that?
7    MR. ABRAMS:  Because of the June 30th deadline --
8    THE COURT:  Have you ever --
9    MR. ABRAMS:  -- and because everything in the RSAs
10 points to --
11    THE COURT:  Have you ever --
12    MR. ABRAMS:  -- nondisclosure --
13    THE COURT:  Have you ever read --
14    MR. ABRAMS:  -- no transparency.
15    THE COURT:  Have you ever read a bankruptcy disclosure
16 statement?
17    MR. ABRAMS:  I have.
18    THE COURT:  They're pretty complicated, aren't they?
19    MR. ABRAMS:  They're pretty complicated.
20    THE COURT:  And what have I told Mr. -- and others?
21    MR. ABRAMS:  That it has to be simple.
22    THE COURT:  That is has to be simple.  Not to
23 trivialize or to suggest that fire survivors aren't capable of
24 doing it.
25    MR. ABRAMS:  Sure.  Understood.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  But it still has to be simple.  Believe

2    me, there'll be plenty of complicated documents that people can

3    refer to if they want.  But that's what Congress said is

4    necessary for companies to reorganize; you've got to give --

5    and I even quoted a quote in something that's on for later

6    today, that it has to be something that lets an informed person

7    make an informed decision.

8          MR. ABRAMS:  Yeah, and unfortunately, Your Honor,

9    that's why I'm so pushing on this RSA issue --

10          THE COURT:  Well, but that's why --

11          MR. ABRAMS:  -- because there will be no opportunity,

12   at that point, for folks to say no.  This -- there'll be no

13   opportunity then.  That's why we have to put extra careful --

14   and be extra diligent here around this process, because then

15   folks will not have the option to vote no in any way, shape, or

16   form.

17          THE COURT:  Okay.

18          MR. ABRAMS:  The other thing is -- is I'm not saying

19   that this Court has jurisdiction over preventing fires.

20   Clearly it does not.  But where I would say this Court does

21   have jurisdiction is making sure that, when the fires occur,

22   that there's some remedy, there's some solution.  And this puts

23   current claimants and future claimants in huge jeopardy.  And

24   that's what needs to be addressed here.

25          THE COURT:  And how would I take care of that problem,

PG&E Corp., Pacific Gas and Electric Company

1    which is a problem that anybody in Northern California, if not

2    large other parts of the world, are facing (sic) with?  How

3    would we solve that problem on this issue?

4           MR. ABRAMS:  So the problem here -- look, I -- I've --

5    if I had a lot of time, I would go into it.  But part of the

6    problem is PG&E is a monopoly.  Many of their ills are because

7    they do not have competitive pressures.  They have to tie, and

8    these plans need to tie, their financials to risk mitigation,

9    because unless their financials are tied to that and they just

10   keep getting ratepayer reimbursement regardless of what they

11   do, regardless of how many fires they do, and just rely on

12   abstract penalties, we will not be moving forward with a solid

13   PG&E.

14          So that's what's -- need to be done.  They need to go

15   back, in my estimation, and tie their financials to their

16   rhetoric.

17          THE COURT:  Okay --

18          MR. ABRAMS:  They have to make sure --

19          THE COURT:  I --

20          MR. ABRAMS:  -- that that happens.

21          THE COURT:  I'm going to stop you now and let you --

22          MR. ABRAMS:  Thank you, Your Honor.

23          THE COURT:  -- rest on that.  I'll call -- I'll let

24   Mr. Karotkin and others be heard, and see if there's anything

25   else to do.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 154

PG&E Corp., Pacific Gas and Electric Company

1      Mr. Karotkin?  Are you going to argue for the debtor?

2      MR. KAROTKIN:  Thank you, Your Honor.

3      THE COURT:  Are you going to share with anyone from

4  the shareholder side, or are you going to do it on your own?

5      MR. KAROTKIN:  I --

6      THE COURT:  It doesn't matter.  Just want to know --

7  Mr. Bennett's here.  So are you going to -- equal time?  Or

8  what's your pleasure?

9       MR. BENNETT:  I don't anticipate needing time, but

10  I'll reserve two minutes of --

11      THE COURT:  Okay, well, your side has --

12      MR. BENNETT:  -- of the time.

13      THE COURT:  -- twenty minutes.  That was the deal.

14      So, Mr. Karotkin, you're up.

15      MR. KAROTKIN:  Stephen Karotkin, Weil, Gotshal &

16  Manges, for the debtors.

17      Your Honor, I'm not really sure I understand what Mr.

18  Abrams is asking you to do.  I think that --

19      THE COURT:  Well, he's asking me to disapprove this --

20      MR. KAROTKIN:  No, I don't think --

21      THE COURT:  -- RSA.

22      MR. KAROTKIN:  -- that he stated any basis for you to

23  do that.  I think that our motion is self-explanatory.  I think

24  it's important to note that none of the fiduciaries for the

25  creditors and shareholders here have filed any objections to

PG&E Corp., Pacific Gas and Electric Company

1    the relief requested.  I think you yourself has recognized what

2    an accomplishment the RSA is.

3              I think what -- if I understand what Mr. Abrams'

4    saying, I think he may have issues that would more properly be

5    addressed at confirmation or before the CPUC, where he is an

6    active participant.  I don't think he's raised anything here --

7              THE COURT:  Can you give me your take on his view that

8    they're pointing to me and I'm pointing to them?  I didn't

9    think I was, but what --

10             MR. KAROTKIN:  I don't --

11             THE COURT:  How do you interpret that?

12             MR. KAROTKIN:  I don't understand that at all.

13             THE COURT:  You don't understand?

14             MR. KAROTKIN:  I think he suggested that the filing

15   that was made with the CPUC on Friday night simultaneously with

16   the filing of the amended plan -- that those filings were

17   somehow inconsistent.  That is not the case.  In fact, they are

18   entirely consistent.

19             THE COURT:  I would think, if they told the Commission

20   that they're going with Plan B and they're filing Plan A here,

21   that would be a little of an awkward thing to try to straighten

22   out.

23             MR. KAROTKIN:  Yes, I think -- I agree with you.  As I

24   said, the RSA represents a major accomplishment in these cases.

25   We now have all of the constituencies working together toward

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1 achieving the AB 1054 deadline. And we would urge you to

2 approve it. I would --

3 THE COURT: And am I correct -- I mean, I've lived

4 with -- you have lived (sic) more than I, but I have been on

5 the receiving end of all the RSAs; I know how they work. This

6 one, like the other two, have (sic) sort of off-ramps if

7 necessary, right? If something goes off the rail, these

8 things --

9 MR. KAROTKIN: They are very --

10 THE COURT: -- I won't say "self-destruct", but

11 consequences follow really as to all three of them; right?

12 MR. KAROTKIN: That's correct. There are termination

13 rights that are fairly typical in agreements of this type.

14 I would like to make one clarification for the record,

15 if I may.

16 THE COURT: Sure.

17 MR. KAROTKIN: That's with respect to the underwriting

18 fee. Just so there's no misunderstanding; that the

19 underwriting fee goes to consenting noteholders as of the close

20 of business on the date an order is entered approving the RSA.

21 And that is shared ratably based on their total holdings of

22 utility-impaired senior notes, as that term is defined in the

23 RSA.

24 THE COURT: So that's paid -- if I were to sign the

25 order today or tomorrow, that's paid promptly --

PG&E Corp., Pacific Gas and Electric Company

1          MR. KAROTKIN:  No, no.  That's paid on the effective

2     date.

3          THE COURT:  Oh -- okay, well, I thought you said when

4     the RSA's signed.

5          MR. KAROTKIN:  No, no.  Those are the people who are

6     entitled to it on the effective date.  That's a clarification

7     we've been asked to make.

8          THE COURT:  The things that happen -- if I read this

9     correctly, what happens immediately is the senior bondholders

10    withdraw their competing plan.

11         MR. KAROTKIN:  Yes, sir.

12         THE COURT:  And then things like the make-whole thing

13    are put on the backburner, right, and go away if the plan

14    becomes effective --

15         MR. KAROTKIN:  Correct.

16         THE COURT:  -- right?

17         MR. KAROTKIN:  That's correct.

18         THE COURT:  And the same with the post-petition

19    interest --

20         MR. KAROTKIN:  That is correct.

21         THE COURT:  -- and all the issues about that.

22         MR. KAROTKIN:  As to the noteholders, yes, that's

23    correct.

24         So, Your Honor, we would urge you to approve the RSA

25    as a --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  Well, why don't you, for my sake, respond

2  to something that Mr. Abrams didn't respond to exactly:  what

3  happens, from your perspective and the debtors' perspective, if

4  I am persuaded to disapprove this today?

5    MR. KAROTKIN:  Then --

6    THE COURT:  What happens?

7    MR. KAROTKIN:  Then I think we're back to a litigation

8  morass, we're back litigating the make-whole, we're back with a

9  competing-plan scenario, and --

10    THE COURT:  Is there a -- is there a domino effect?

11  Do the TCC and subrogation RSAs fall with it, or do they

12  stand --

13    MR. KAROTKIN:  I don't believe they fall with it.  But

14  again, we've achieved a major accomplishment to get the

15  noteholders on board.  I think this really facilitates moving

16  forward to the June 30th date, everyone rowing together to

17  achieve that.

18    THE COURT:  So let me stop you there.

19    MR. KAROTKIN:  And I think that --

20    THE COURT:  So that means that either on schedule or

21  somehow -- that we'll be back to have this Court, and therefore

22  any appellate court, deal with the make-whole issue, which is a

23  substantial one.  And am I right; the senior bondholders can

24  press for their plan?  Their plan is not to be withdrawn until

25  this agreement gets approved?

PG&E Corp., Pacific Gas and Electric Company

1        MR. KAROTKIN:  That is correct.

2        THE COURT:  So the logical conclusion would be we're

3   back to the two-plan competition and so on.  Right?

4        MR. KAROTKIN:  Yes, sir.

5        THE COURT:  What else?  Other things?  What happens to

6   the CPUC proceedings if --

7        MR. KAROTKIN:  The CPUC would have competing

8   proceedings going forward as well.

9        THE COURT:  Well, let me restate the question.  If I

10  approve it, does that change the course of the CPUC or --

11       MR. KAROTKIN:  Yes, the CPUC -- if you approve this --

12       THE COURT:  They withdraw --

13       MR. KAROTKIN:  -- the competing plan would be

14  withdrawn before the CPUC, as well.

15       THE COURT:  They withdraw there.

16       MR. KAROTKIN:  They would be --

17       THE COURT:  They go -- kind of go in the back seat

18  before the Commission; right?

19       MR. KAROTKIN:  The Commission would not be considering

20  their plan.

21       THE COURT:  Right.

22       MR. KAROTKIN:  Only our plan.

23       THE COURT:  Right.  I mean, it's --

24       MR. KAROTKIN:  And that's the amended plan that we

25  filed on Friday.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   THE COURT:  It's parallel, that Mr. Abrams might think

2   there's -- you know, each guy pointing to the other.  But the

3   two tracks are parallel in the sense that the Commission does

4   its thing on the debtors' plan, just like -- and they don't

5   have the equivalent of a disclosure statement and a voting

6   process.  They have their own hearings and public respon -- all

7   the stuff that they have to do.

8   MR. KAROTKIN:  All of which is ongoing now.

9   THE COURT:  All of which is ongoing.  Right.  And in

10  fact, I believe -- there's just been a short continuance of

11  some of that.  They've got -- you've got some deadlines coming

12  on with that, more --

13  MR. KAROTKIN:  Well, the deadline was last Friday,

14  where we filed --

15  THE COURT:  No, but I --

16  MR. KAROTKIN:  -- our proposed testimony.

17  THE COURT:  -- I'm forgetting -- okay, I'm with you.

18  Anything further?

19  MR. KAROTKIN:  No, sir.

20  THE COURT:  Okay, Mr. Abrams, I'm not going to be rude

21  but I'm not going to take rebuttal, because, to be honest, in

22  view of what Mr. Karotkin -- I won't say he didn't add

23  anything.  But normally, rebuttal --

24  (Laughter.)

25  THE COURT:  No, he added a lot.  But this gets back

PG&E Corp., Pacific Gas and Electric Company

1  to -- this gets back to why I digress from the normal

2  procedure.  The debtor, through its counsel and its

3  representatives, laid out its prima facie case in the motion.

4  And in the more traditional contested motions with major

5  players -- and you're not a major player; you're just a lone

6  player here today -- there was no point in having Mr. Karotkin

7  or others make the same argument that I've read fully and

8  you've read fully, and then tell you to respond.

9        So, normally, rebuttal is for someone to respond to

10 something that's been stated in the opponent's arguments.  And

11 I -- again, I'm just being somewhat facetious.  Mr. Karotkin

12 didn't make new arguments; he largely answered some of my

13 questions.  Nothing would be accomplished, in my mind, in

14 having further rebuttal.

15        I understand your position, Mr. Abrams.  You needn't

16 apologize for it.  I respect it.  I -- as I say, my concern

17 mostly is that the arguments you make don't seem to be

18 addressable at this point in this court.  So I'm going to

19 overrule your objections and determine that -- and I'll reserve

20 and come back to the one question that's been raised by the

21 trade creditors.

22        I'm going to determine that -- I don't make a finding

23 on a legal argument, but I can conclude from the arguments that

24 have been presented that what is inherent in the RSA is much

25 like a compromise.  And by virtue of the debtors and the senior

PG&E Corp., Pacific Gas and Electric Company

1    bondholders, in effect, coming to a consensus that is reflected

2    in the tradeoffs of various things, not the least of which is

3    the deferral, if not ever, needing to decide a highly contested

4    matter called the make-whole, because there's so much money at

5    stake and so many issues, that that is progress towards the

6    goal that the company and I and the committees and, I believe,

7    most everyone else in this case has been headed towards, trying

8    to see that something can start to make sense in a real

9    dollars-and-cents way for the true victims of this bankruptcy:

10   the victims and the survivors of the wildfires.  And if I

11   thought that approving this RSA would slow down or impair the

12   process towards that goal, I would disapprove it in a minute.

13          But I'm satisfied that, although, Mr. Abrams, you

14   don't agree and you raise serious objections and observations

15   about the long term or the mid-range term -- I simply don't

16   believe that approving this is a step backwards.  And I make

17   that decision on my own, but I also make it based upon the

18   silence from the major players:  the official creditors'

19   committee, the tort committee, and any other parties-in-

20   interest.

21          As I say, the reserved objection by the trade

22   creditors is a very discrete question and really doesn't go to

23   the merits of the RSA.  So, for the record, I will overrule

24   your objections and I will issue the order that the debtors

25   have proposed that approves the RSA.

PG&E Corp., Pacific Gas and Electric Company

1        Now, on that subject, I want to make a statement about

2   what might have created the difference of opinion about what to

3   do, as argued by the trade-creditors group.  So who -- is Mr.

4   Neumeister here in court, or -- who's going to argue for the

5   trade creditors?

6        MR. KELSEY:  Yes, Your Honor.

7        THE COURT:  Okay.  So let me just say something.  So

8   when I issued the memorandum for the time line for today, I did

9   it on the 31st, but I did it at a time when I hadn't had

10  occasion to even read the new RSA and so I was completely

11  unaware of the provision in the RSA that asked that the order

12  on post-petition interest -- the final order be deferred.

13       So I made the statement that I made at the end of

14  that, that I was tentatively going to go ahead and issue an

15  order sustaining the debtors' position.  And I did that for a

16  couple of reasons.  First -- I made a statement earlier -- I

17  can't remember whether it was in the scheduling time or at the

18  time of the argument on the post-petition interest, but I found

19  that the post-petition interest and the make-whole issue --

20  while they're different, they are similar in many respects.

21  And I know, from my experience both as a trial judge but also

22  an appellate judge on the Bankruptcy Appellate Panel, that

23  appellate courts don't like to have piecemeal appeals; it

24  doesn't make sense; it's not efficient.

25       And it was my sense that, whereas I had endorsed the

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   notion of making final certain orders or, in that rare

2   occasion, recommending direct appeals to the court of appeals,

3   the post-petition interest and the make-whole were so similar

4   that they lend themselves to putting them together and sending

5   them on their way.  So it was a process.

6        Once the TCC -- excuse me, once the RSA terms hit my

7   attention, I realized that the make-whole issue has been

8   deferred.  So that's what prompted me to say what I said in my

9   memorandum of last week, because I wanted to put the post-

10  petition interest to bed, if you will, and I wasn't focusing on

11  whether there would be ramifications that were related to the

12  bondholders.

13       So then when you filed your limited objection, it got

14  my attention like, yeah, I can see that your group is

15  interested in having that resolved.  But then I go back, as I

16  told you, in the thing that I issued last night, that -- I just

17  was unaware that, as a condition, the senior bondholders wanted

18  a final order.

19       Well, I have a solution that may be acceptable; maybe

20  not.  First of all, for -- as a trial judge, I don't think -- I

21  think the trial court should certify final orders rarely.

22  But -- because remember, the certification of a final order for

23  appeal either to the district court or the Bankruptcy Appellate

24  Panel, itself, could be reversible error.  In fact, in the

25  first PG&E case, I disapproved the disclosure statement and

(970) 352-7700   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  issued a 54(b) determination that there were reasons why, in

2  the unusual situation of disapproving a disclosure statement,

3  my order should be final.  The district court disagreed with my

4  decision on the disclosure statement but essentially affirmed

5  my decision to certify it.

6         So I'm personally experienced with what happens when

7  you make a 54(b) certification.  But there are ramifications

8  because, by making one, you force people to appeal, just like

9  what the Supreme Court has done recently with denials of motion

10 for relief from stay, a recent decision; it forces a decision

11 that some others might not want to make.

12        And on the direct appeal to the court of appeals,

13 those are rare.  I've had a couple of occasions where they've

14 been ignored, a couple of occasions, at least one in this case,

15 where the court of appeals has accepted my recommendation.  But

16 I'm, again, not inclined to use that too freely, even though I

17 would observe that an order sustaining the debtors' position on

18 post-petition interest would be interlocutory.  But even

19 interlocutory orders can be the subject of direct appeals.

20        So what that leads me to think would be a possible

21 solution here would be to grant the trade creditors' view to

22 enter an order that sustains the debtors' position on the

23 trade -- I mean on the post-petition interest.  But it's

24 interlocutory, not final.  The RSA says that, as a condition

25 between (sic) the agreement between the bondholders and the

                PG&E Corp., Pacific Gas and Electric Company

1    debtors, there has to be a final order.  If I issue an

2    interlocutory order, that is my decision, and it puts the ball

3    in the trade creditors' court to seek interlocutory review if

4    it's so inclined.  If the appellate court says no, there's no

5    harm, because the order is not final.

6           And so what I won't do is suddenly become an advocate

7    for one side or the other.  And that's why I'm sympathetic to

8    arguments made by the trade creditors.  But I can't jeopardize

9    the RSA either.  So that seems like a solution that, from my

10   point of view, is workable, and it puts the burden on you to

11   get somebody at the appellate-court level to take it up on the

12   merits.

13          MR. KELSEY:  Your Honor, just for the record, Matthew

14   Kelsey of Gibson, Dunn & Crutcher.

15          THE COURT:  Sorry.  You were somebody else until I

16   called you Mr. Kelsey.

17          MR. KELSEY:  That's okay.  Thank you, Your Honor.  And

18   I'm appearing on the --

19          THE COURT:  That's okay.

20          MR. KELSEY:  -- the trade committee.

21          One of the aspects of our objection, right, which I

22   think you noted, is that, if sustained, does not disturb the

23   RSA.

24          THE COURT:  No, I know.

25          MR. KELSEY:  So there's an implication --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  I don't even think -- by the way, I think

2    if I just, on my own, issued a new interlocutory order, I don't

3    think it would be in conflict with the RSA.

4    MR. BENNETT:  I think if you issued a final order or

5    if you --

6    THE COURT:  No.  No, an order, not final.

7    MR. KELSEY:  If you issued an order or if you issued a

8    final order or if you issued a final order certified for direct

9    appeal, I don't think that violates the --

10    THE COURT:  Leave the --

11    MR. KELSEY:  -- the RSA.

12    THE COURT:  Leave the direct appeal out, because

13    that's an oddball.  If I issued an order and I called it final,

14    that might be in conflict with the language of the RSA.  I

15    mean, if counsel and everybody on the other side said, "That's

16    okay," they'll do it.  But they've specifically said --

17    MR. KELSEY:  No, what they've -- I think what they've

18    said is that --

19    THE COURT:  -- there has to be a deferral of the final

20    order.

21    MR. KELSEY:  -- the noteholders would be deemed to

22    consent to deferring entry of an order to the confirmation

23    date.  It doesn't require that the -- doesn't tie the Court's

24    hands into entering an order.

25    THE COURT:  That's right, but it also starts the

PG&E Corp., Pacific Gas and Electric Company

1    fourteen-day clock ticking to force an appeal, and that's not

2    consistent with the compromise that's reflected here.  But if I

3    issued an interlocutory order -- look, this is a complicated

4    matter with a lot of moving parts.  But we could have a

5    lawsuit, A -- the plaintiff could sue A and B and issue an

6    order, and B says, "Okay, I'm going to try to settle," and A

7    says, "I'm going to appeal it."  And a court could issue an

8    order that could be appealed as an interlocutory order.  And if

9    A wins, A wins.  If the appellate court says, "No.  Motion

10   denied," then A's rights are reserved until the order becomes

11   final.

12          And if the -- and there's -- there's that.  I don't --

13   see, I don't think I should be in the middle of doing anything

14   other than what's the normal process.  What is the normal

15   process?  Issue orders.  Issue orders with two different

16   parties.  One want (sic) to appeal; the other one doesn't want

17   to appeal.  Facilitate it by making it interlocutory.

18          So in other words, look -- I don't want to simplify

19   it -- oversimplify it -- if I issued an interlocutory order and

20   you make a motion for leave to appeal and you're denied, you're

21   probably out of luck until some day in the future.  But some

22   day in the future isn't that far away.

23          MR. KELSEY:  Well, that's --

24          THE COURT:  We're not talking about eight years in a

25   trademark -- or in a patent infringement.  We're talking about

PG&E Corp., Pacific Gas and Electric Company

1   a few months when the confirmation order will become final and

2   you're free to appeal it if --

3           MR. KELSEY:  Yeah, Your Honor, but the concern here is

4   an attempt -- this just appears to us as an attempt by the

5   debtor to moot out an appeal --

6           THE COURT:  But --

7           MR. KELSEY:  -- by deferring it --

8           THE COURT:  But it doesn't.  Why does it -- why does

9   it moot out your appeal?  If -- again, do you have any doubt

10  that -- if the debtors' plan is confirmed, that -- and at some

11  date in the future you are able to convince a higher court to

12  reverse my decision, that you're going to lose your money?

13  You'll get your money, won't you?  Well, I mean, don't you

14  think --

15          MR. KELSEY:  I hope so.

16          THE COURT:  But don't you think the law would provide

17  that?  I mean, this company -- after we just had this last

18  discussion, the company is going to be around and stay solvent,

19  we hope.  And if two years from now the Ninth Circuit says,

20  "Judge Montali was crazy," you get your post-petition interest.

21  Is there any question that you won't get it?  Again, let's not

22  assume a horrible fire or some catastrophe like --

23          MR. KELSEY:  Well, that's the thing, Your Honor.

24  You've put -- if we assume everything's perfect, then how could

25  I say no?  But this is -- standing here today, I have no idea

PG&E Corp., Pacific Gas and Electric Company

1  if that's true or not.

2        THE COURT:  Well, I don't know how I can become an

3  adversary or an advocate for one side or the other.  I have to

4  be an advocate for the legal process, and the legal process is:

5  issue an order.

6        But again, to go back to my simple example, A would

7  like to appeal it and B doesn't want to appeal it right now.

8  So what's wrong with that?  That's what would happen in a real-

9  world situation where you just had a simple dispute where one

10  defendant wants to appeal and the other one doesn't but wants

11  to reserve its rights until there's a final order.

12        I mean, you're asking me to kind of mess up the system

13  if I take a final order when one side, who in effect lost the

14  ruling but is compromised in the outcome, doesn't want to have

15  to appeal it.

16        MR. KELSEY:  Right, but they've compromi -- well,

17  because they've compromi -- they don't want to appeal, because

18  they've compromised the outcome.

19        THE COURT:  Well, yeah, so -- but you haven't

20  compromised it.

21        MR. KELSEY:  That's right.

22        THE COURT:  So if you take your appeal and the court,

23  on appeal, grants leave to appeal --

24        MR. KELSEY:  Right.

25        THE COURT:  -- and makes the -- and guess what happens

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    then?  What happens if on appeal you win and the BAP or the

2    district court reverses me?  You know what happens next?  You

3    win, you pop out the champagne, because there's no final order

4    for the other side to take it to the court of appeals.

5         MR. KELSEY:  Right, but I guess what I'm saying is,

6    even if we won on a final order, and given your hypothetical

7    where you said, "Come on, even two years from now, Mr. Kelsey,

8    isn't your client going to get this money?", our prosecution of

9    our appellate rights doesn't impact their deal at all.  They've

10   agreed to just resolve it in a particular way, which is fine;

11   it's their right to do.  We've --

12        THE COURT:  But maybe they will resolve it with you.

13   In other words, if a court, on appeal, grants leave to appeal,

14   maybe you and Mr. Karotkin will have a heart-to-heart talk and

15   there'll be a set-aside.

16        MR. KELSEY:  That would -- I do think that entering an

17   order, and a final appealable order, would facilitate those

18   discussions.

19        THE COURT:  I think where you're -- you don't seem to

20   get the message.  I don't think I can in good conscience issue

21   a final order when a major player has said please don't issue a

22   final order.

23        MR. KELSEY:  No, I'm --

24        THE COURT:  And you're not -- there's no minor/major,

25   but there's a huge amount of money at stake that wants to wait.

PG&E Corp., Pacific Gas and Electric Company

1    You represent a lot of money that doesn't want to wait.  So I

2    can't solve all the problems, but I can solve an intermediate

3    problem by -- not by recommending anything; just signing an

4    order that says that, based upon the way this case has played

5    out and how the parties came and teed up two discrete

6    matters -- post-petition interest, make-whole -- but the second

7    of the two got resolved before it was ever decided, but I'm

8    therefore closing the books, from my trial level, on the issue,

9    and you're free -- and you know what, you're also free not to

10   appeal it, at no consequence.  In other words, you're making

11   the decision here that you want to take an appeal now versus

12   taking an appeal maybe a few months from now.  And -- again, we

13   all start with the presumption that the company will be viable

14   and performing and not back in bankruptcy.  But you know as

15   well as I that this matter will not stop before the court of

16   appeals, if not the U.S. Supreme Court.  And that will take

17   quite a long time.

18            So, because of everything I talked to Mr. Abrams

19   about, we're still on a track to get this plan confirmed by

20   June 30.  So the difference between an interlocutory appeal on

21   February 3rd and a final appeal on July 1 is not a lot.  You

22   might not even get before the panel if you go to -- depending

23   on where the appeal is.  And it's only interlocutory.

24            MR. KELSEY:  Right.  I --

25            THE COURT:  So I'm not -- so I'm not trying to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  negotiate with you.  I'm trying to explain that I don't think

2  it's proper for me to do what you want, because that's contrary

3  to what -- not your opponent here, but someone who has

4  litigated and compromised with the debtor.  But I don't think

5  it's prejudicial to your rights, at least for the first level

6  of appeal.  I can't just decree that it's a final order, when

7  it isn't a final order.  But it's clearly an interlocutory

8  order.

9       MR. KELSEY:  Okay, Your Honor.  I mean, I think I'm

10  getting the message.  So if this is your ruling, that's fine.

11  I'm happy to --

12       THE COURT:  No, I --

13       MR. KELSEY:  -- to stop.

14       THE COURT:  I have to hear from the other side.

15       MR. KELSEY:  And I think I'm getting your message.  I

16  guess what I would say is that, when you say the big money

17  here, the party, it seems to me, that's pushing to defer entry

18  of a final order to confirmation is the debtor.  Then

19  debtors --

20       THE COURT:  Well, but they entered into a provision

21  with the bondholders, that include the debtor.  I --

22       MR. KELSEY:  It just says that the -- all the

23  provision says, Your Honor, is that the bondholders will be

24  deemed to consent to --

25       THE COURT:  Well, I didn't go by --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1     MR. KELSEY:  -- will be deemed to consent to your

2 memorandum decision of December 30th not being a final order

3 until confirmation.  That's it.

4     THE COURT:  But don't you think that that "deemed to

5 consent" is the same as "consent"?

6     MR. KELSEY:  No.

7     THE COURT:  Okay, well, maybe I --

8     MR. KELSEY:  I mean, there's a reason they put it --

9 they phrased it that way.

10     THE COURT:  Well, I'll tell you what; Mr. Kelsey, let

11 me hear from Mr. Karotkin and, if anybody for the bondholders

12 wants to be heard also -- as I say, I would rather not become a

13 party to this dispute.  I don't care whether you appeal it or

14 not appeal it.  And I'm personally of the view that the

15 difference between appealing it now and appealing it in July is

16 not significant.  But you're answering to clients that want you

17 to try to appeal it now, so I -- let's see what the other side

18 says.

19     MR. KELSEY:  Yeah.  Understood, Your Honor.  Thank

20 you.

21     THE COURT:  Mr. Karotkin, are you going to carry the

22 weight on this one, or is somebody else going to do it for you?

23     MR. KAROTKIN:  I think Mr. Qureshi would like --

24     THE COURT:  Okay.

25     MR. KAROTKIN:  -- to go first.

PG&E Corp., Pacific Gas and Electric Company

1        THE COURT:  Yeah.  Good morning, Mr. Qureshi.  Good to

2   see you.

3        MR. QURESHI:  Good morning, Your Honor.  For the

4   record, Abid Qureshi, Akin Gump Strauss Hauer & Feld, on behalf

5   of the ad hoc noteholder committee.

6        Your Honor, to be clear, our position is not only

7   that, consistent with the RSA, there should not be a final

8   order on this issue until confirmation, but I think also an

9   interlocutory order also has the potential to cause some

10  problems.  Let me explain.

11       THE COURT:  Well, but the document doesn't say

12  "interlocutory"; it says "final".

13       MR. QURESHI:  Correct, the document does say "final".

14       Your Honor, the construct of the RSA here, from the

15  noteholder perspective, was to ensure that -- in the hopefully

16  unlikely event that for any reason the plan is not confirmed,

17  that basically things snap back to where they were --

18       THE COURT:  And you preserve your right to appeal.

19       MR. QURESHI:  And our rights are preserved --

20       THE COURT:  Right.

21       MR. QURESHI:  -- correct.

22       THE COURT:  Right.

23       MR. QURESHI:  And so the way we view the post-

24  petition-interest issue, Your Honor, is, first of all, as Your

25  Honor will recall from when we many months ago had the

PG&E Corp., Pacific Gas and Electric Company

1    conversation about timing, I think we all --

2            THE COURT:  Right.

3            MR. ABRAMS:  -- recognized, and the Court recognized,

4    entitlement to post-petition interest is in fact a confirmation

5    issue.  And we agreed, because of the exigencies of this case,

6    to pull it forward.

7            THE COURT:  Right.  That's right.

8            MR. QURESHI:  And in addition, Your Honor has

9    recognized --

10           THE COURT:  Well, the same with inverse condemnation.

11           MR. QURESHI:  Correct.  And Your Honor has also

12   recognized that there is a link between entitlement to make-

13   whole amounts or optional redemption premiums, and PPI, and

14   therefore Your Honor entered the order previously, raising the

15   issue of whether those should go up together.

16           THE COURT:  Right.

17           MR. QURESHI:  And so to allow even an interlocutory

18   appeal at this stage, Your Honor, has the potential problem --

19   and I say "potential" because, Your Honor's quite right, it

20   could be that the question of whether either the Ninth Circuit

21   BAP or the district court grants leave to pursue that appeal

22   will not even be determined by the time we get to June 30th; in

23   which case, no problem.  But if in fact the BAP or the district

24   court says, "You can pursue this interlocutory appeal," then at

25   that point there is prejudice to the noteholders.

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  But why?  Why is there?

2    MR. QURESHI:  Because, Your Honor, it's the same issue

3  now going up on appeal.  We are --

4    THE COURT:  But only to the next level.

5    MR. QURESHI:  Correct, but we are at that point

6  precluded, consistent with the RSA, from doing anything until

7  we get past --

8    THE COURT:  Well, let's go back to a simple case --

9    MR. QURESHI:  Sure.

10   THE COURT:  -- that I gave in my example.  There's a

11  lawsuit.  Plaintiff sues A and B.  Court rules in favor of the

12  plaintiff.  "A" decides to take an appeal while it's

13  interlocutory, and B and the plaintiff start to negotiate a

14  settlement.  So they work a settlement and they decide just to

15  defer until something else happens.  That doesn't -- they can

16  go ahead and --

17   MR. QURESHI:  Well --

18   THE COURT:  -- try to convince the appellate court to

19  take the appeal.  Why is that a prejudice to anybody?

20   MR. QURESHI:  So under Bankruptcy Rule 8002, Your

21  Honor, if one party to an action timely files a notice of

22  appeal, then every other party has fourteen days to file their

23  notice of appeal.

24   THE COURT:  How about on an interlocutory appeal?

25   MR. QURESHI:  Your Honor, I think it's the same on an

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    interlocutory appeal.

2            THE COURT:  Well --

3            MR. QURESHI:  I'm not sure that if -- if the

4    interlocutory appeal is taken by the trade group, and if the

5    district court or the BAP determines that it will allow that

6    appeal to move forward, I'm not sure that we would then still

7    have the right, if, fast-forward to sometime past June 30th and

8    the plan is not confirmed -- to continue to pursue our appeal.

9            THE COURT:  Well, my guess is that -- and I told Mr.

10   Kelsey this is an option available to him.  But my guess is

11   that you and -- you would make a very strong argument to

12   convince the BAP or the district court to deny the motion for

13   leave to appeal, because you'd say, look, we got the same issue

14   in the pipeline.  And chances are, you would prevail.  But I

15   don't -- now you're asking me to impose something from the RSA

16   that isn't in there.

17           MR. QURESHI:  Right.

18           THE COURT:  So, I --

19           MR. QURESHI:  Your Honor --

20           THE COURT:  And by the way, one thing that --

21           MR. QURESHI:  Sure.

22           THE COURT:  You may not be aware of this, or maybe you

23   are:  if you file a notice -- if you have clearly an

24   interlocutory order, the rules still require filing a notice of

25   appeal, but they also require a motion for leave to appeal.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    And the rules then say, and if you forget to do one, we deem it

2    as the other.

3            MR. QURESHI:  Right.

4            THE COURT:  So I didn't -- I don't know that it

5    automatically requires another appellant to come forward.  It

6    seemed to me that would be another reason to persuade an

7    appellate court not to take it, because you'd say, "Look, we

8    got this side deal over here, and too much is at stake, and so

9    we don't want" -- and appellate judges love people to try to

10   settle things.

11           MR. QURESHI:  And in that circumstance, Your Honor, we

12   absolutely would oppose any motion --

13           THE COURT:  Right.

14           MR. QURESHI:  -- to take the interlocutory appeal.

15           THE COURT:  But that would -- before that court.  I

16   mean --

17           MR. QURESHI:  Sure.

18           THE COURT:  -- I don't make that call.

19           MR. QURESHI:  Your Honor, the last point I would make

20   is that I really don't think there's any prejudice here at all

21   for the trade claimants to simply wait until June 30th.  Your

22   Honor's already noted that's not that far away when considering

23   how long it will take to pursue the interlocutory-appeal path,

24   the leave to pursue the appeal path.

25           THE COURT:  Well, I will tell you that --

PG&E Corp., Pacific Gas and Electric Company

1          MR. QURESHI:  But --

2          THE COURT:  -- very recently in an unrelated non-PG&E

matter, there was a motion for leave to appeal.  It was

assigned to a district judge right upstairs.  And a decision

came out very, very quickly.  But I've also -- I mean,

within --

7          MR. QURESHI:  Right.

8          THE COURT:  -- weeks.  But -- I'm denying it, by the

way.  But I've had other occasions where they just get lost in

the system and --

11         MR. QURESHI:  Right, but --

12         THE COURT:  -- and I can't tell you how it'll come

out.  So --

14         MR. QURESHI:  Sure, but, Your Honor, when I say

there's no prejudice to them, I'm really focused on a couple of

things; one is simply, it's not that much time.  But in

addition to that, arguments that the trade creditors have made

that, for example, they shall be entitled to some sort of a

reserve or an escrow or that the debtor must agree not to

pursue equitable-mootness arguments -- which, as an aside, I

can't imagine would have any merit here anyways.  But

regardless, Your Honor, those are all issues that they can

argue at confirmation.  Once we get to the confirmation

hearing, the trade claimants can make the case that, if Your

Honor confirms the plan and they therefore have their appeal,

PG&E Corp., Pacific Gas and Electric Company

1    that at that point in time the debtor ought to have some sort

2    of a reserve for --

3            THE COURT:  Well, but they don't -- I mean, they can

4    make that argument for a stay pending appeal or the equivalent

5    or --

6            MR. QURESHI:  Right.

7            THE COURT:  But the point is, an order confirming

8    would certainly be final.

9            MR. QURESHI:  Agreed.

10           THE COURT:  And there may be lots of other issues that

11   are wrapped up in anyone's right to appeal.

12           MR. QURESHI:  My point is simply, their ability to

13   pursue that appeal and ultimately to collect on it if they're

14   successful is not prejudiced by waiting until June 30th or

15   shortly thereafter to start that process.

16           THE COURT:  But what happens if I just sign an order

17   that says it's interlocutory?

18           MR. QURESHI:  Your Honor, then we --

19           THE COURT:  I mean --

20           MR. QURESHI:  -- go off to --

21           THE COURT:  Yeah.

22           MR. QURESHI:  -- either the BAP or the district court

23   and we fight the question of whether they should be --

24           THE COURT:  Right, but the point --

25           MR. QURESHI:  -- they should be granted leave.

PG&E Corp., Pacific Gas and Electric Company

1      THE COURT:  -- but the point is -- this is like my

2  discussion with Mr. Abrams -- do I throw this whole thing out

3  because he believes that there are some other issues?  Do I

4  throw this out because an interlocutory order would violate a

5  provision that isn't in there?  I mean, I don't think that's

6  proper either.  So --

7      MR. QURESHI:  No, no.  Of course, I don't think it

8  would be.

9      THE COURT:  Yeah.  I mean, I guess at a personal level

10 I would prefer that the trade creditors agree to wait.  But I

11 can't make them wait.  And the question is -- it's an anomaly.

12 If the make-whole issue had been argued, I would have by now

13 issued a ruling.  And obviously I'm pleased that there was a

14 compromise, not because I was afraid to make a ruling but just

15 because compromises are good --

16     MR. QURESHI:  Right.

17     THE COURT:  -- for lots of reasons.  You know that.

18     MR. QURESHI:  Yeah.

19     THE COURT:  So -- well -- okay, listen, I guess I'll

20 give it some thought here.

21     MR. QURESHI:  Yeah.

22     THE COURT:  Mr. Karotkin, do you want to be heard at

23 all on the --

24     MR. QURESHI:  Thank you, Your Honor.

25     THE COURT:  -- same subject?  I mean --

PG&E Corp., Pacific Gas and Electric Company

1     MR. KAROTKIN:  Just very briefly.  I would agree with

2  Mr. Qureshi; there's really no prejudice if this was deferred.

3  But if the Court were inclined to enter an order that was

4  interlocutory, the debtor would have no objection to the --

5     THE COURT:  Okay.  I mean, look, let's it put this

6  way --

7     Mr. Kelsey, I'll just address it to you.  You don't

8  have to come back up.

9     -- if I do it just because it's what I was going to do

10  probably anyway and, for reasons that I tried to touch on

11  before, I didn't feel comfortable doing the 54(b) when clearly

12  one side isn't interested in appealing right now, for lots of

13  reasons -- and 54(b) sort of draws a line in the sand and makes

14  it final and just forces people to do what they really

15  shouldn't have to do.

16     And the direct appeal -- I'll tell you from my own

17  experience.  I've been dealing with the direct appeal since it

18  went into effect, and I was involved in drafting some of the

19  rules on direct appeal.  Direct appeal, to the court of

20  appeals, of an interlocutory order is a long shot, and I'm

21  wondering -- it's just not worth the trouble to try to persuade

22  it.

23     And you heard both counsel say that the debtor isn't

24  going to fall on its sword if I issue an interlocutory order.

25  Mr. Qureshi doesn't say that the whole RSA is going to be

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    thrown out.  And you're not even arguing that.

2         MR. KELSEY:  I'm not arguing that.

3         THE COURT:  My own personal view is your client would

4    be best served by not going forward on an interlocutory appeal.

5    But -- because why bother?  But that's your call, not mine.

6    But I'll just give --

7         MR. KELSEY:  It's not my call either, Your Honor.

8         THE COURT:  Well -- I'll tell you what.  I'm going

9    to -- for the reasons I stated before, I'm going to issue the

10   order that overrules Mr. Abrams' objections and approves the

11   RSA, and then I will separately just reflect on how I want to

12   dispose of yours.  I may -- and I don't intend to write any

13   learned decision or something.  I may just recite that, based

14   upon the mem. dec. that I did and the way the matters have

15   developed in the case, I'm going to issue an interlocutory

16   order.  And I'll do it and -- your request.  Or I will simply

17   state that I'm going to decline to do it, and leave it at that.

18   And you can decide --

19        MR. KELSEY:  Can I make two brief points in support --

20        THE COURT:  Sure.

21        MR. KELSEY:  -- of your decision to write --

22        THE COURT:  To do it.

23        MR. KELSEY:  -- to do it -- to enter an interlocutory

24   order?  One is, you know, the debtor has said this is a great

25   deal, all the parties-in-interest are now rowing together in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    the same boat.  That's not true.  And what they're --

2        THE COURT:  They're going to invite you into the boat

3    one of these days.

4        MR. KELSEY:  That would be nice.  But no one reached

5    out to us.  We're not a signatory to this deal.  And they're

6    trying to bind us to a deal, to a deal that we're not a party

7    to, and affect our appellate rights.  As you said, maybe

8    there's an inconsistency with us pursuing a final order.

9    There's no inconsistency for us seeking leave to appeal --

10       THE COURT:  No.

11       MR. KELSEY:  -- an interlocutory, if you --

12       THE COURT:  No, and --

13       MR. KELSEY:  -- enter it; there's none.

14       THE COURT:  -- and as I say, if the --

15       MR. KELSEY:  And we're not bound by that agreement.

16       THE COURT:  No, you're not.  And if --

17       MR. KELSEY:  And --

18       THE COURT:  And if the intermediate --

19       MR. KELSEY:  Our class --

20       THE COURT:  That's what I'm saying.  If the

21   intermediate appellate court agrees with you and reverses me,

22   they're stuck with it for the time being, until it becomes

23   final.

24       MR. KELSEY:  Correct.  And --

25       THE COURT:  And they don't have a direct appeal to the

PG&E Corp., Pacific Gas and Electric Company

1  court of appeals on that interlocutory disposition.

2           MR. KELSEY:  Right.  And the other point I'd make,

3  Your Honor, is that your memorandum decision from December

4  30th -- I haven't heard a good legal reason why you shouldn't

5  put "so ordered" on an interlocutory basis, underneath it.

6  It's highly unusual to have an opinion out there absent an

7  order.

8           THE COURT:  No, it is.

9           MR. KELSEY:  And I understand why --

10          THE COURT:  And it --

11          MR. KELSEY:  -- strategically these parties may not

12 want you to do it.  But that's not a good legal reason not to.

13          THE COURT:  It's not my practice, actually.  I almost

14 always do orders.  But because it was married up with its

15 cousin, the make-whole --

16          MR. KELSEY:  Its ugly cousin, yeah.

17          THE COURT:  -- and --

18      (Laughter.)

19          THE COURT:  Yeah.  Its five-billion-dollar cousin.

20          -- and had I made the -- or been asked to make the

21 decision -- I won't tell you what my decision would have been,

22 but I would have issued one or two orders disposing of it.

23          MR. KELSEY:  No, look, that's what --

24          THE COURT:  Yeah.

25          MR. KELSEY:  So as I understood the original delay,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  that was exactly -- the delay was, well, because the make-

2  whole -- or logically related to PPI --

3           THE COURT:  Yeah.

4           MR. KELSEY:  -- we'll just -- we'll get an order out

5  for both together, and then they can be appealed --

6           THE COURT:  Look, I have to face appellate judges when

7  I see them at a conference, right?  And they say, "What are you

8  doing; just feeding us an appeal of the week?"  I mean, that's

9  not the way we do it, and that --

10          MR. KELSEY:  No.  Right --

11          THE COURT:  -- and that's not the way they want it.

12  And --

13          MR. KELSEY:  No, I understand.  But now I would say

14  that the circumstances for delay, even of an interlocutory

15  order, are now gone.

16          THE COURT:  Okay.  I got it.

17          MR. KELSEY:  Thank you, Your Honor.

18          THE COURT:  The matter stands submitted.  Thank you.

19          All right, Mr. Karotkin, are you ready to talk about

20  the Chapter 11 plan?  Or --

21          MR. BOTTER:  Good morning, Your Honor.  David Botter,

22  Akin Gump Strauss Hauer & Feld, on behalf of the senior

23  noteholders.

24          Judge, no good deed goes unpunished.  Mr. Karotkin

25  made a clarification on the record with respect to one of the

PG&E Corp., Pacific Gas and Electric Company

1    provisions.  Since we've been sitting here since his

2    clarification, we've gotten about 1,000 emails on that.  So I'd

3    like to --

4             THE COURT:  Remember the old days when you couldn't

5    use --

6             MR. BOTTER:  I wish -- correct.

7             THE COURT:  -- phones like that?

8             MR. BOTTER:  I wish I had left my phone behind.

9             THE COURT:  Yeah.

10            MR. BOTTER:  Your Honor, the clarification to the

11   clarification is as follows:  Mr. Karotkin said that it

12   includes the total position of the notes that are at issue as

13   of today.  To clarify that, it would include trades agreed to

14   today, where a consenting noteholder is the buyer, because

15   "consenting noteholders" is a defined term under the RSA, and

16   it includes all of the notes and/or other obligations and

17   claims that the consenting noteholder has and those already

18   settled.

19            So it's really an attempt to get to the total position

20   of a consenting noteholder as of the close of business today,

21   assuming Your Honor enters the order as of today.  That's the

22   clarification, Your Honor.

23            THE COURT:  Okay, well, by the way, I will do the

24   order today.  I believe the debtor has proposed the order like

25   they normally do.  And I -- no reason why I wouldn't.  So I

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  will -- unless for some reason we're bogged down today. But my

2  intention was we'll enter it today.

3          MR. BOTTER:  Good.  Thank you very much, Your Honor.

4          THE COURT:  Okay.  Thanks very much.

5          Mr. Karotkin, are you ready to talk about

6  confirmation?

7          MR. KAROTKIN:  Sure.

8          THE COURT:  I'll tell you something else again.  I

9  issued this little fella called "Time Line" without

10  realizing -- because I only have so many hours in the day to

11  read all the things you file -- I hadn't studied the new

12  provisions of the plan, to realize that the senior bondholders

13  or some of them are now impaired.  And so when I made the

14  statement about disclosure statements in the plural, I didn't

15  add "senior unsecured debt".  So that's -- I'm sure you noted

16  that.

17          MR. KAROTKIN:  I didn't have any intention of filing

18  multiple disclosure statements anyway, but --

19          THE COURT:  Well, but we talked about that before,

20  about the victims --

21          MR. KAROTKIN:  Yes.  We have --

22          THE COURT:  -- and survivors.

23          MR. KAROTKIN:  And I think that --

24          THE COURT:  So we got to do something like that.

25          MR. KAROTKIN:  -- that we will address -- that will be

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  addressed.

2  THE COURT: Okay. Well, let's go ahead and see what

3  you want --

4  MR. KAROTKIN: Okay.

5  THE COURT: -- how you want to take the --

6  MR. KAROTKIN: So a couple of things. If we could

7  look at the order, your order --

8  THE COURT: Um-hum. I have it.

9  MR. KAROTKIN: -- from the other day.

10  THE COURT: Yeah. Right here.

11  MR. KAROTKIN: January 31st?

12  THE COURT: Yes, sir.

13  MR. KAROTKIN: Okay. And just so we understand

14  exactly what you're looking for, with respect to the February

15  6th date on page 2 --

16  THE COURT: Um-hum.

17  MR. KAROTKIN: -- we assumed that you would like us to

18  submit something to Your Honor and not file it on the docket?

19  THE COURT: It doesn't matter whether it's filed on

20  the docket or not on the docket. And I'm not inviting

21  everybody in the case to weigh in on it. It's just I didn't

22  want to have thousands and thousands of notices go out over the

23  weekend or whatever day -- I said February 10th; I don't know

24  what you have in mind -- and then read it and say, "Oh, my God,

25  why did they say that?" And it was just a quick snapshot with

(970) 852-0850 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    the promise that I would read it and, through an email or a

2    docket text or something, just give you my response.  And it

3    wasn't --

4                MR. KAROTKIN:  That makes sense to us.

5                THE COURT:  That was all I had in mind.

6                MR. KAROTKIN:  Okay.  That makes sense to us.

7                THE COURT:  And you could do it this afternoon if you

8    want.  I was imposing on myself, not on you.  Just an

9    opportunity to --

10                MR. KAROTKIN:  Yes.

11                THE COURT:  -- at least look --

12                I've had, in lots and lots of other cases, less

13    experienced counsel send out notice of things that just are

14    plain wrong for some reason.  And I presume this notice is

15    going to be a little bit complicated.

16                MR. KAROTKIN:  A little bit.  And --

17                THE COURT:  Okay.

18                MR. KAROTKIN:  -- we would certainly appreciate your

19    input --

20                THE COURT:  Okay.

21                MR. KAROTKIN:  -- because we don't want to send

22    anything --

23                THE COURT:  Can you --

24                MR. KAROTKIN:  -- out that's incorrect.

25                THE COURT:  Is the 6th okay?  You want to do it

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   earlier?

2           MR. KAROTKIN:  No, no.  It's fine.

3           THE COURT:  Okay.  Well, you could do it earlier if

4   you want.

5           MR. KAROTKIN:  We could probably do it earlier.  We

6   could something --

7           THE COURT:  It's up to you.

8           MR. KAROTKIN:  -- perhaps today.

9           THE COURT:  Do it --

10          MR. KAROTKIN:  And --

11          THE COURT:  -- when you can.

12          MR. KAROTKIN:  The way we envision this notice -- and

13  again, obviously it's subject to your review and comments.  We

14  would envision this notice that would go out to

15  approximately -- ultimately approximately 415,000 different

16  parties --

17          THE COURT:  Right.

18          MR. KAROTKIN:  -- creditors, shareholders, of course

19  fire victims; would also include a notice of the solicitation

20  materials and proposed solicitation-and-tabulations procedures

21  that would be filed at a later date.

22          THE COURT:  Well --

23          MR. KAROTKIN:  -- and notify people --

24          THE COURT:  -- I think you had said file them earlier,

25  and I said, no, make it a later date.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1        MR. KAROTKIN:  Right; exactly.  But it would give

2   people notice that the hearing on the disclosure statement

3   would also cover those items as well, and a formal motion with

4   respect to those items would be filed at a later date --

5        THE COURT:  Well, let's --

6        MR. KAROTKIN:  -- but would be available for people --

7        THE COURT:  Let's clarify.

8        MR. KAROTKIN:  -- to look at.

9        THE COURT:  First of all, you notice that I told you

10  in my outline that you don't have to file a motion to approve

11  the disclosure statement.  That's just not practice in this

12  district.  And I know a lot of other districts you do it, I

13  just -- to me, it's just not necessary.

14       MR. KAROTKIN:  Okay.

15       THE COURT:  But suppose you notice out approval of

16  ballots and solicitation materials; is there something that

17  people object to?  I mean, it's not a -- it's not a disclosure

18  item.  What is it that -- why do you think it should be a

19  noticed motion for approval as distinguished from just:  this

20  is what I'm going to do?

21       MR. KAROTKIN:  Well, we could do that.  I guess, to

22  the extent people may have comments that our proposed

23  solicitation methods are not appropriate or do not accomplish

24  what they think should be accomplished.

25       THE COURT:  I'm not fighting you.  I just want to know

PG&E Corp., Pacific Gas and Electric Company

1    what you do.  Because again, in simple cases, we don't bother

2    doing that.  I'm not opposed to it, but I want to make sure

3    that the principal players, the committees particularly, and

4    maybe some of the active attorneys for fire survivors and so

5    on, are heard.  But I don't want to turn -- unless I have to --

6    the disclosure process into a debate about the content of the

7    ballot or the content of what you're soliciting.

8         To me -- well, you tell me.  What is embraced in the

9    term "solicitation materials"?

10        MR. KAROTKIN:  Exactly what we will send to each class

11   under the plan.  What items will be sent.

12        THE COURT:  Okay, but they'll get a --

13        MR. KAROTKIN:  A ballot, a disclosure statement --

14        THE COURT:  -- notice, a ballot --

15        MR. KAROTKIN:  -- a notice of nonvoting status, notice

16   of the confirmation hearing.

17        THE COURT:  What will the unimpaired classes get?

18        MR. KAROTKIN:  A notice of the confirmation hearing,

19   objection dead --

20        THE COURT:  So you're not soliciting them to do

21   anything, right?  You're telling them they have a deadline for

22   objections.

23        MR. KAROTKIN:  Yes.

24        THE COURT:  And that's all, right?  I mean --

25        MR. KAROTKIN:  And notifying them that they do not

PG&E Corp., Pacific Gas and Electric Company

1   vote.

2           THE COURT:  I guess my question to you is, isn't that

3   part of the notice of the hearing on the disclosure statement?

4           I mean, again, I don't want to be --

5           MR. KAROTKIN:  I don't want to send out two notices,

6   Your Honor.

7           THE COURT:  No, I agree.  I agree.

8           MR. KAROTKIN:  That's for sure.

9           THE COURT:  So I suggested here that you're going to

10  serve notice by February 10th.  I'm not wedded to any of this.

11  Look, you'll notice that I made a decision to try to squeeze a

12  little bit --

13          MR. KAROTKIN:  Yes.

14          THE COURT:  -- the rules for disclosure.  And you

15  notice my short guest list --

16          MR. KAROTKIN:  I did --

17          THE COURT:  -- for people that have even shorter time.

18  You have to be on that guest list to get your time shortened.

19          MR. KAROTKIN:  I think, may --

20          THE COURT:  But --

21          MR. KAROTKIN:  -- perhaps --

22          THE COURT:  -- but I wanted to make sure that you only

23  had one notice so that people would have an opportunity.  So --

24          MR. KAROTKIN:  So the way -- can I just try to

25  explain --

PG&E Corp., Pacific Gas and Electric Company

1        THE COURT:  Um-hum.

2        MR. KAROTKIN:  -- how --

3        THE COURT:  Yes.

4        MR. KAROTKIN:  -- I kind of view this thing?

5        THE COURT:  Sure.

6        MR. KAROTKIN:  So we would give you this form of

7   notice for you to look at, let's say, tomorrow or the next day.

8   That would be notice of the hearing to consider approval of the

9   disclosure statement and the hearing to consider your approval

10  of the solicitation and voting procedures and the ballots.

11       THE COURT:  If you think -- you think that that's

12  important, that's what you want to have Court approval of.

13       MR. KAROTKIN:  Yes, I think that it would be

14  appropriate for you to say that soliciting in this fashion is

15  appropriate.  Yes.

16       THE COURT:  And obviously people would have an

17  opportunity to be heard on that subject.

18       MR. KAROTKIN:  People would have an opportunity at the

19  disclosure statement hearing to be heard.  And sometime between

20  the date of February 10th and the hearing on the disclosure

21  statement, we would file those solicitation procedures and

22  ballots with the Court.

23       THE COURT:  Well, I put in here "to be determined",

24  because I didn't know -- and that related to the trust

25  documents --

PG&E Corp., Pacific Gas and Electric Company

1    MR. KAROTKIN:  That's --

2    THE COURT:  -- but it's --

3    MR. KAROTKIN:  -- that would be something different.

4    THE COURT:  -- it's both.  It's both.

5    It would be my sense that because the national --

6    MR. KAROTKIN:  So if you look at -- I'm sorry.  If you

7  look at February 21 --

8    THE COURT:  Okay.

9    MR. KAROTKIN:  -- on page 3?

10    THE COURT:  Yeah.  Yep.

11    MR. KAROTKIN:  That's what we would file.  And that's

12  what we would ask you to approve at the disclosure statement

13  hearing so people would be notified that on February 21st,

14  those materials would be on file and available, to the extent

15  they wanted to look at them and raise any issues at the

16  disclosure statement hearing.

17    THE COURT:  Well, keep in mind that I put that -- I

18  just made up February 21st, because you had put in -- I

19  believe -- what I excluded from February 7th, just because it

20  didn't seem to be necessary.  And so in other words, when I

21  prepared the box for February 7, I think that was consistent

22  with your timeline.

23    MR. KAROTKIN:  Yes, it was.

24    THE COURT:  And but I believe you timeline had also,

25  then, the motion to approve --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1       MR. KAROTKIN:  It did.

2       THE COURT:  -- solicitation and so on.

3       So I said we don't need a motion to approve.  It's

4   just not the practice.  And these other things don't -- I

5   didn't think they needed to be done as early as that.

6       MR. KAROTKIN:  That's fine.

7       THE COURT:  I frankly thought it would be easier for

8   you.

9       MR. KAROTKIN:  It would.

10      THE COURT:  Okay.  So now, let's assume we do it by

11  February 21st, then I guess we're back to the notice, then.

12  Maybe you just said this and I went by it -- it went by me.

13      The notice that goes out to the thousands and

14  thousands of people will tell them that the ballots and

15  solicitation stuff will be filed by February "blank", and they

16  need to object or be heard by --

17      MR. KAROTKIN:  Yes.

18      THE COURT:  -- some date.

19      MR. KAROTKIN:  Correct.

20      THE COURT:  Well, then we do the same meet-and-confer

21  in there too, at some point.

22      MR. KAROTKIN:  That's --

23      THE COURT:  Again, my --

24      MR. KAROTKIN:  -- that's fine.

25      THE COURT:  -- I don't know whether the practice that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  I'm trying to do here is something you've done elsewhere, but

2  I've found it very helpful to make the major players come out

3  early and talk to the debtor and work out --

4          MR. KAROTKIN:  I think that's a good idea.

5          THE COURT:  Because one of the things that is the most

6  frustrating thing in my career is wasting time with disclosure

7  statement content battles.  So the rule -- the Montali rule is,

8  when in doubt, put it in.  But the exception is for fire

9  survivors who don't need -- as you and I have agreed already --

10 you're not sending them the Manhattan phone book, right?

11         MR. KAROTKIN:  Correct.

12         THE COURT:  Okay.

13         MR. KAROTKIN:  We're not sending anyone the Manhattan

14 phone book.

15         THE COURT:  So okay, then --

16         MR. KAROTKIN:  Okay.

17         THE COURT:  -- then you're okay with my proposal for

18 these other things to be filed on February 21.

19         And by the way before we conclude, I'm going to let

20 anybody else who wanted --

21         MR. KAROTKIN:  Yes.

22         THE COURT:  -- to be heard on any of this.

23         MR. KAROTKIN:  So --

24         THE COURT:  And --

25         MR. KAROTKIN:  -- what we would say for -- on your

PG&E Corp., Pacific Gas and Electric Company

1    February 28th date, where it says "last day to serve upon

2    debtors" --

3            THE COURT:  Um-hum.

4            MR. KAROTKIN:  -- "objections," we would include

5    disclosure statement and solicitation and ballots or something

6    like that -- add that to there.

7            THE COURT:  To the short list?

8            MR. KAROTKIN:  To the short list, as well as adding it

9    to --

10           THE COURT:  Yeah.

11           MR. KAROTKIN:  -- the March 6th date.

12           THE COURT:  Okay, that's fine.  That's fine with me.

13           MR. KAROTKIN:  And to the extent there are unresolved

14   objections from the core parties, we would ask that they be

15   filed on March -- to the extent they're still outstanding, that

16   they be filed on March 6th, as well.  Does that make sense?

17           THE COURT:  Yeah.  Let me make sure that for -- again,

18   for the lawyers in the courtroom here who are representing

19   these major players, first of all, I'm not dividing the world

20   into major and minor.  Obviously I put the official committees

21   and the U.S. Trustee -- that goes without saying -- the senior

22   bondholders and certainly the two governmental agencies and the

23   Governor's Office, and CPUC have all been very active.

24           The others, I just added to the list the various

25   parties who have been active in this case.  And if I've

PG&E Corp., Pacific Gas and Electric Company

1  forgotten anybody, it wasn't intentional oversight.  And if

2  some of you -- one of you or more of you think you should be on

3  the list, please add yourself to the guest list; but recognize

4  that you're putting a burden on yourself, because I'm going to

5  hold you to it.

6  And so if somebody shows up on March 2nd who's on this

7  list of people who are listed for February 28th, and has a late

8  objection to the disclosure statement, I'll probably send you

9  to the -- throw you out and say I'm not interested in it,

10  because the debtor has been given -- debtors have been given an

11  assignment to meet and confer with everybody who is objecting

12  to all these disclosures, on this list.  And if there's another

13  creditor who didn't have that earlier deadline, then Mr.

14  Karotkin and his gang will have to deal with that person in the

15  very short period of time between the real deadline and the

16  hearing.

17  And again, for those of you not familiar with the plan

18  process, the Rules give the Court some flexibility of tweaking

19  these deadlines.  And it's far more important to me to build in

20  as much time as seems appropriate for the voters, rather than

21  the lawyers who know how to read disclosure documents.  And

22  that's the thinking behind this.

23  So okay, Mr. Karotkin, subject to anybody persuading

24  me to do otherwise, I'm in agreement with your variation on

25  that.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. KAROTKIN:  Okay.  If we could then look at page 4.

2          THE COURT:  Well, you still -- are you okay with page

3    2, with my notice?

4          MR. KAROTKIN:  I'm okay with -- I'm okay with page 2.

5          THE COURT:  Well, we didn't put in a date for the

6    trust documents.

7          MR. KAROTKIN:  Yes.  That we have to get some input

8    from Ms. Dumas on that.

9          THE COURT:  Okay.  All right.  Page 4?

10         MR. KAROTKIN:  So we're -- page 3, we're okay with.

11         THE COURT:  Well, I want to explain something.  I'm

12   not trying to make you do extra work.  And when I talked to one

13   of my staff members about this, he was -- wait a minute, I'm

14   going to have an amended plan on March 6 and then another

15   amended plan on --

16         MR. KAROTKIN:  Yeah, we did --

17         THE COURT:  -- March 9th?

18         MR. KAROTKIN:  -- we notice the --

19         THE COURT:  But it was intentional.  It was

20   intentional, because if something comes up at the last minute,

21   you're a master at black-lining and replacing.  And if

22   something is significant that's been either a new development

23   or a legitimate objection that somebody raises who isn't on the

24   short invitation list, if you will, that you need to be able to

25   go with the final.

PG&E Corp., Pacific Gas and Electric Company

1    I'm not wedded to this, but I'm trying to make it --

2    another alternative, I guess, would be for the first March 6th

3    date to be just lodge rather than file.  In other words, for

4    March 6th I put file amended plan, respond to the objections.

5    Then on March 9th I said file further revisions.  We could

6    switch it by saying just lodge with the Court any -- or any

7    major players.

8    I mean, again, let's go back to the real world.

9    You're going to be -- let's assume you're going to be having a

10   dialog, particularly with the counsel for the impaired

11   creditors.  I don't expect a lot of disclosure objections from

12   unimpaired creditors.  But let's suppose it's the tort

13   committee or the bondholders or the subrogation, and they want

14   you to make changes, and you make them.

15   You're going to be making them after your meet-and-

16   confer.  And if you want to -- I presume you're going to want

17   to share it back and forth among counsel, right?

18   MR. KAROTKIN:  Yes.

19   THE COURT:  Or not?  So the first March 6th, there,

20   could be exchange and not file deadlines.  I mean, or we could

21   take it out completely, as long as you understand that we don't

22   have a lot of time here for me to observe and absorb something

23   you file the 9th and we have a hearing on the morning of the

24   10th.

25   MR. KAROTKIN:  You've been good at it so far, Your

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    Honor, you know?

2           THE COURT:  Yeah, I know.  Yeah, but I know how long

3    your disclosure statements are.

4           MR. KAROTKIN:  Not that long.

5           THE COURT:  Well, let's wait and see -- let's wait and

6    see what other counsel --

7           MR. KAROTKIN:  I would delete -- I would delete the

8    March 6th date, the first one.

9           THE COURT:  Okay.  Well, tell me -- tell me what your

10   view is -- remember, I told you the statute says you can have

11   different disclosure statements.  And we don't have to do that,

12   but how are you going to solve the problem -- do you think one

13   disclosure statement is good for everybody or --

14          MR. KAROTKIN:  Yes.

15          THE COURT:  -- everybody but the fire survivors?

16          MR. KAROTKIN:  I do.  And I do.  And we would have a

17   short one- or two-page supplement just for the fire victims.

18          THE COURT:  But how long is the -- what's the real

19   disclosure statement going to look like?

20          MR. KAROTKIN:  It's about --

21          THE COURT:  The Manhattan phone book?  San Francisco

22   phone book?

23          MR. KAROTKIN:  No, no, it's -- the current draft is

24   about forty pages.  But it's not complicated.  It's really not

25   complicated.  And the first few pages, again, are sort of

PG&E Corp., Pacific Gas and Electric Company

1   geared toward the fire victims.

2           THE COURT:  Well --

3           MR. KAROTKIN:  It's really fire-victim-geared at the

4   beginning.

5           THE COURT:  Ms. Dumas, are you up-to-speed with him?

6   Are you in agreement with what Mr. Karotkin has in mind?

7   Because if you are, I'm not going to interfere.  I just want to

8   know how you envision this coming out for your constituency.

9   They're the folks that are -- that we need to get -- have the

10  ability to make an informed vote.

11          MS. DUMAS:  Well, yes, Your Honor.  Cecily Dumas on

12  behalf of the official committee of tort claimants.

13          Generally speaking, we are.  There are a few elements

14  that are very important to the TCC.  One is the -- one is the

15  ability of Your Honor to review and also approve the

16  solicitation and mechanisms for voting; and that's because many

17  people, both lawyers and claimants themselves, have never voted

18  in a bankruptcy claims process before.  And many of the lawyers

19  who represent numerous claimants really wish to understand

20  what's the proper way.  And the debtor has developed a system

21  for law firms who may represent hundreds or thousands of

22  people, to streamline the process of voting.

23          So the solicitation and voting, I concur with Mr.

24  Karotkin.  We would like the Court to review and bless that for

25  the benefit of numerous people.

PG&E Corp., Pacific Gas and Electric Company

1    The second is the process we envision for the

2 resolution trust is a -- more of a two-step process.  The first

3 claims-resolution-procedure document we envision, together with

4 the trust, is one more directed toward the layperson, the

5 person who is going to be able to understand, themself (sic)

6 how their claim will be addressed by the resolution trustee.

7    We may amend that -- and Mr. de Ghetaldi is here and

8 can address that, if the Court has questions.  We may amend

9 that with a subsequent filing which has a more detailed -- a

10 more detailed, granular description of specifically how claims

11 will be addressed based on the type of the claim they are and

12 the type of evidence you need, expert support, and the like.

13 But that is not --

14    THE COURT:  That's not --

15    MS. DUMAS:  -- capable of being developed in the time

16 frame.

17    THE COURT:  -- that's not the real disclosure

18 statement, then, right?

19    MS. DUMAS:  That's exactly right.

20    THE COURT:  Okay.

21    MS. DUMAS:  The disclosure statement itself will be

22 geared toward the claimant, as the Court has addressed, who is

23 trying to find out who will I get paid.  And that's what we

24 envision for the initial --

25    THE COURT:  So --

PG&E Corp., Pacific Gas and Electric Company

1          MS. DUMAS:  -- document.

2          THE COURT:  -- so go back to the discussion I had with

3    Mr. Karotkin about solicitation materials.  I didn't know that

4    you had been in discussion with fire victim counsel; but I'm

5    glad to hear that.

6          That deadline is just arbitrary.  We can change that

7    to your satisfaction, make it earlier, if you want.  I'm not --

8    nothing is in concrete here.

9          MS. DUMAS:  We're generally in accord with the

10   debtors' time frame.  And debtors' counsel have been

11   communicating with the official committees and sharing their

12   proposed solicitation procedures, so we are in agreement in a

13   general sense with the time frame.  There may be certain items

14   that we would like to --

15         THE COURT:  Okay, but some of these things were just

16   my making up last week.  You didn't --

17         MS. DUMAS:  Yes, and --

18         THE COURT:  -- and therefore it's completely --

19         MS. DUMAS:  -- and we're mindful --

20         THE COURT:  -- flexible.

21         MS. DUMAS:  -- so in a general sense we are supportive

22   of the debtors' efforts to move this along and get as much as

23   we can accomplished, as quickly as we can, because we agree

24   with you, Your Honor; the most important time frame here is

25   between when the ballots are sent out and the ballots are due,

PG&E Corp., Pacific Gas and Electric Company

1  with respect to --

2         THE COURT:  Well, and I've got to tell you --

3         MS. DUMAS:  -- the fire claimants.

4         THE COURT:  -- when I looked at the calendar and we

5  talked the other day and I issued something about counting the

6  months, and here we are, it's February 4th.  And when you start

7  to look at what the Rules require, we don't have a lot of

8  choices here, so --

9         MS. DUMAS:  We concur, Your Honor.

10        THE COURT:  So what is your recommendation about what

11 we do with these -- the solicitation and ballots and so on?  Do

12 you -- I'm not -- do you want it approved -- well, you're

13 willing to have some kind of meet-and-confer process, I take

14 it?

15        MS. DUMAS:  Oh, yes, absolutely.

16        THE COURT:  And then --

17        MS. DUMAS:  And that --

18        THE COURT:  -- and then --

19        MS. DUMAS:  -- has been in progress.  Yes.

20        THE COURT:  And you would have that be heard

21 concurrent with the disclosure statement or --

22        MS. DUMAS:  Yes.

23        THE COURT:  -- separately and earlier?

24        MS. DUMAS:  Concurrently is fine, because we envision

25 that the kinks, if any, will have been worked out through the

PG&E Corp., Pacific Gas and Electric Company

1    meet-and-confer process, which is now ongoing.

2            THE COURT:  Okay.  So Mr. Karotkin, then looking back

3    to page 3 of the timeline, then we'll go with the February 21,

4    and then import -- well, I've not -- I'm not so -- these dates

5    kind of bounce around.  I don't know why I put that --

6            MR. KAROTKIN:  Well, February 21 should be fine.

7            THE COURT:  Well, what I'm saying is, is it reasonable

8    to have just one week for the principal players to give you

9    comments?

10           MR. KAROTKIN:  I think it --

11           THE COURT:  In fact, as I look at my own work, I don't

12   know why I put February 21 after February 28th.

13           MR. KAROTKIN:  I think --

14           THE COURT:  But I did.

15           MR. KAROTKIN:  -- I don't think -- I think a week is

16   fine.  I think -- we've been working -- again, this is

17   mostly -- the more comprehensive voting procedures are with

18   respect to the tort committee's clients, so we've been dealing

19   with them.

20           THE COURT:  Okay.

21           MR. KAROTKIN:  So those would be -- we would assume,

22   by the time we got to February 21st, those would all be agreed

23   upon with them.

24           THE COURT:  Okay.

25           MR. KAROTKIN:  And the other voting procedures are

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    pretty conventional, for other classes.  So I don't --

2         THE COURT:  So unless --

3         MR. KAROTKIN:  -- imagine people are going to have

4    issues.  I mean, it's a pretty standard procedure that we

5    normally use, including master ballots for securities and

6    equity-holders and --

7         THE COURT:  Okay.

8         MR. KAROTKIN:  -- I don't think -- I think a week

9    should be more than enough time for people to have a look at

10   that.

11        THE COURT:  Okay.  Well, at the end of the hearing,

12   I'm going to ask you to redo this in the form of another order

13   that --

14        MR. KAROTKIN:  Yes.

15        THE COURT:  -- straightens this out.  So we'll strike

16   the first March 6th entry; we're leaving the February 21 date

17   in there.  I guess the second March 6th entry should include

18   last day for people not listed up above to object to the

19   solicitation and ballots also.  Don't you agree?

20        MR. KAROTKIN:  Yes.

21        THE COURT:  Okay.

22        MR. KAROTKIN:  And we would add, for anyone who's in

23   the list above whose objection has not been resolved to --

24        THE COURT:  Well, whatever.

25        MR. KAROTKIN:  -- submit --

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  That's fine.  That's fine.  But again, I

2  hope --

3    MR. KAROTKIN:  You're confident we'll resolve them.

4    THE COURT:  -- I hope the lawyers who are not familiar

5  with the disclosure statement and this judge take the warning:

6  don't turn this into a battle over something that isn't

7  adequate disclosure.  I don't want to watch the presidential

8  impeachment hearings again to hear the masters of nonresponsive

9  arguments.

10    The arguments here are, as I stated on page 2 in bold,

11  you object to disclosures.  And the only exception that I will

12  go with is if the plan is unconfirmable as a matter of law, you

13  can raise that.

14    Okay, so we're on page 4.

15    MR. KAROTKIN:  Okay.  On page 4, March --

16    THE COURT:  Then we're going to revise the line at

17  March 9.  It'll say debtor to file not "any further revisions",

18  just revised plan and disclosure statement.

19    MR. KAROTKIN:  Right.

20    THE COURT:  Okay.

21    MR. KAROTKIN:  And for March 10th, we would just add a

22  hearing to approve the disclosure statement, solicitation

23  procedures --

24    THE COURT:  Solicitation --

25    MR. KAROTKIN:  -- and valid --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  -- et cetera, correct.

2    MR. KAROTKIN:  -- et cetera.

3    THE COURT:  And then I don't know whether we're going

4    to have to do it in an hour or we need an extra day, but we'll

5    do it if we have to.

6    MR. KAROTKIN:  Right.  Then, Your Honor, we do have

7    some suggestions on page 4.

8    THE COURT:  Okay.

9    MR. KAROTKIN:  I don't think there's enough time built

10   in to the solicitation process.

11   THE COURT:  What do you want to do?

12   MR. KAROTKIN:  Just so you know, from the date the

13   disclosure statement is approved, it will take Prime Clerk ten

14   to fifteen business days to process everything to go to

15   400,000 --

16   THE COURT:  To notice -- to do the confirmation

17   notice?

18   MR. KAROTKIN:  -- to do the -- to get out the

19   solicitation and notice materials.

20   THE COURT:  Okay, so.

21   MR. KAROTKIN:  They have told us it'll take ten to

22   fifteen business days to complete it.

23   THE COURT:  Oh.

24   MR. KAROTKIN:  Okay?  So we would then --

25   THE COURT:  Well, we need to get some lawyers in there

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    that don't recognize business days. They work on weekends.

2    But --

3            MR. KAROTKIN: Well, I think they're counting weekends

4    as well. But it's just a matter --

5            THE COURT: Well, so you tell me -- you tell me when

6    you can do it.

7            MR. KAROTKIN: So I think if we could move the May 1st

8    date to May 15th?

9            THE COURT: Well, just one second. I realize that --

10   no, I -- Mr. Karotkin, I believe that I left something out

11   here. It doesn't say -- it doesn't say when the notice of

12   confirmation would go out. I don't know why I didn't put that

13   in there.

14           MR. KAROTKIN: Well, we can add that.

15           THE COURT: Well, no, but isn't that what you're

16   talking about?

17           MR. KAROTKIN: Yes.

18           THE COURT: In other words, so let's assume that I

19   approve the disclosure statement on or about March 10th.

20   You're telling me that --

21           MR. KAROTKIN: Well, I think you're really talking

22   about March 12th or 13th.

23           THE COURT: Okay.

24           MR. KAROTKIN: Right?

25           THE COURT: Yeah, I --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      MR. KAROTKIN:  So then I'm talking about until the --

2   basically the end of the month -- really by May 1 or April 30th

3   to complete the mailing.

4      THE COURT:  No, I think you mean April 1.  April 1.

5      MR. KAROTKIN:  Yeah, sorry; sorry; sorry.  Yes, I

6   meant -- I meant --

7      THE COURT:  So it would not be a fitting day to do it

8   on April Fool's Day.

9      MR. KAROTKIN:  Let's say March 31.

10     THE COURT:  So you'll do a revised scheduling order

11  that will say March 31, last day to serve?

12     MR. KAROTKIN:  Yeah, around that time.  Yes.

13     THE COURT:  Well --

14     MR. KAROTKIN:  We'll confirm with Prime Clerk.

15     THE COURT:  Yeah, but let's make sure we're clear.

16  The way I envisioned it, then, let's assume that on or around

17  March 10, 11, 12, something like that, I issue an order that

18  says disclosure statement dated such-and-such is approved.  And

19  what my standard order -- again, we can modify it for what

20  you're comfortable with -- but that order will once again say

21  this order must notice a hearing on confirmation, the ballots,

22  the disclosures, the disclosure statement, or the summary, or

23  whatever -- must be served by a certain date.

24     MR. KAROTKIN:  Um-hum.

25     THE COURT:  The hearing will be a certain date,

PG&E Corp., Pacific Gas and Electric Company

1  objections a certain date.  And so what you're saying is that

2  March 31 is the tentative date for -- I'll call -- last day to

3  serve notice of confirmation, right?

4          MR. KAROTKIN:  And solicitation materials, yes.

5          THE COURT:  Well, yeah --

6          MR. KAROTKIN:  Yes.

7          THE COURT:  -- notice of confirmation, et cetera.

8          MR. KAROTKIN:  Yes.

9          THE COURT:  And you've got my -- well, then okay.  So

10  what do you think about -- are you satisfied with the deadline

11  for the objections?

12          Or Ms. Dumas, what do you think?  Is that too tight

13  for the vote -- getting the votes?

14          MR. KAROTKIN:  Can I have one second?

15          THE COURT:  Sure.

16      (Pause.)

17          MR. KAROTKIN:  Okay.  I'm sorry.

18          THE COURT:  Well, I was asking Ms. Dumas.  I mean, Ms.

19  Dumas, you've got to tell me.  You've got the better sense of

20  the pulse here from the tort victims -- the lawyers and the

21  members of the committee and so on.  Is one calendar month

22  enough time for the voting process?

23          MR. KAROTKIN:  That's why, Your Honor, I would suggest

24  that the May 1st date be May 15th.

25          THE COURT:  Okay.  Maybe that's what I -- where I got

PG&E Corp., Pacific Gas and Electric Company

1  confused.  Well, then we're going to have to move our little

2  scheduling conference.

3          MR. KAROTKIN:  Well, then we would suggest May 19th

4  for the --

5          THE COURT:  Yeah, okay.

6          MR. KAROTKIN:  -- scheduling conference.

7          THE COURT:  Let me just look at my calendar here.

8          So Ms. Dumas, is that -- do you think May 15th is the

9  right day for -- earliest date for that?

10          MS. DUMAS:  Yes, we do, Your Honor.

11          THE COURT:  Okay.  Because I would assume with all

12  those people, there'd be a lot of confusion, and they won't

13  even be opening their mail till a few days into April.  And

14  then the question is, well, what do we do about it?

15          So it's all a matter of that solicitation -- and your

16  committee and others will be busy, I'm sure.

17          All right, I want to make sure all the lawyers here

18  who are at least participating understand what I have in mind

19  on this document, which I'll move to -- well, it'll be in the

20  notice that goes out.  But I will require objecting parties to

21  be here.  And again, why do it?  Well, because if somebody says

22  he wants -- he or she wants to have a witness or put on

23  evidence of something, we're going to treat it like a

24  traditional pre-trial conference and make sure it fits the

25  timeline.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    If somebody says he or she is going to file an

2    objection or written objection, we're going to talk about

3    coordinating the paperwork and not duplicating things and so

4    on.

5    So what I have sitting in this outline on March 16th

6    is not an event, it's language that, again, is not -- it's

7    not -- I'm not wedded to it, but it's language that will go in

8    that notice so everybody will have fair warning.

9    Mr. Karotkin, you're suggesting not May 12th but

10   May --

11   MR. KAROTKIN:  19th?

12   THE COURT:  -- 19th?

13   MR. KAROTKIN:  Which I think is a Tuesday.

14   THE COURT:  Ms. Parada, is that a date we have open?

15   THE CLERK:  It's available, yes.

16   THE COURT:  The question is:  is that enough time?

17   That's just -- so an objector filing on the 15th -- well, we're

18   no -- but we're letting this -- we're letting everybody know

19   early and often what their deadline -- their schedule is.

20   Okay?

21   MR. KAROTKIN:  Things are tight, but I think that

22   that's something we just have to do.

23   THE COURT:  Okay, we're going to move that to May

24   19th, at your suggestion.

25   MR. KAROTKIN:  And I would move the May 20th date to

PG&E Corp., Pacific Gas and Electric Company

1    May 21.  I know that doesn't give us a lot of time, but we'll

2    work within that time frame.

3           THE COURT:  Well, are you -- are you comfortable with

4    a May 27 confirmation date?  Because again, I don't know how

5    long -- you told me the other day the confirmation hearing

6    might not be long it but might be several days.  We don't know.

7           We won't really know until we -- until you get the

8    objections --

9           MR. KAROTKIN:  Right.

10          THE COURT:  -- and we have that pre-trial.

11          MR. KAROTKIN:  I think we would like it scheduled for

12   that date.  If --

13          THE COURT:  What is your sense is sort of the deadline

14   to have a confirmation order in order to fit CPUC and AB 1054?

15          MR. KAROTKIN:  I think technically, it's the end of

16   June, but I don't --

17          THE COURT:  Well, no, I know what --

18          MR. KAROTKIN:  -- I don't want to wait that long.

19          THE COURT:  No, I know what the technical is, but in

20   terms of functionally it has to be -- has the CPUC -- have you

21   been in touch with Mr. Kornberg or others on this timeline?

22          MR. KAROTKIN:  Yes.

23          THE COURT:  He's on my guest list of a short

24   invitation list also.

25          MR. KAROTKIN:  Yes, we shared with him the prior

PG&E Corp., Pacific Gas and Electric Company

1    timeline that we had given to you last week.  And his colleague

2    is here today, and I think that he can confirm they were okay

3    with it.

4              THE COURT:  I'm going to change -- okay.  I'll hear

5    from everybody who wants to be heard.

6              So for those of you who are following the timeline,

7    I'm going to change that last day for debtor to respond from

8    May 20th to May 22nd.  Again, I'm the one that has to read

9    these things, but --

10             MR. KAROTKIN:  We thought it would be appropriate to

11   spend Memorial Day weekend with you.

12             THE COURT:  Why not?  Well, Mr. Karotkin, I expect you

13   to have negotiated a resolution to all these issues.

14             MR. KAROTKIN:  I expect to do that, Your Honor.

15             THE COURT:  Some of my colleagues believe the best

16   confirmation hearing is one that takes about thirty seconds for

17   someone to make an offer of proof.

18             MR. KAROTKIN:  Yes.

19             THE COURT:  I don't expect we're going to be doing

20   that.

21             MR. KAROTKIN:  I hope we'll be in a position to do

22   that.

23             THE COURT:  Now, as far as the voting process, if you

24   want to laugh, I heard that the State of Florida has offered to

25   help the State of Iowa figure out how to count ballots --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  caucus votes.  We're going to do it our own way here, right?

2        MR. KAROTKIN:  Yes, sir.

3        THE COURT:  Does anyone want to be heard on --

4  starting with my list of invitees to the hearing, and more

5  importantly, the timeline for parties to at least submit --

6  again, what I have in mind, so it's clear -- for the parties

7  that I listed on this for February 28th, that is the date

8  that -- and here's Mr. Pascuzzi -- that I would expect that Mr.

9  Pascuzzi will have provided Mr. Karotkin, but not filed, any

10 objections he has to the disclosure statement; and so on, down

11 the list.

12        And I expect counsel to stick with this deadline, and

13 I expect counsel to use a whole week built in there to work out

14 their differences, and that experienced lawyers representing

15 unimpaired creditors, will know not to waste time on objecting

16 to disclosure statements.

17        Mr. Pascuzzi, you represent an impaired creditor, so

18 you're likely to be on the list, right?

19        MR. PASCUZZI:  Yes, Your Honor.

20        THE COURT:  What can I -- and then we have -- I have

21 you on mind to talk to you about scheduling other things too.

22        MR. PASCUZZI:  Okay.

23        THE COURT:  So do you want to address this timeline?

24        MR. PASCUZZI:  Yes, yes.  Your Honor, Paul Pascuzzi,

25 Felderstein Fitzgerald Willoughby Pascuzzi & Rios, for the

                    PG&E Corp., Pacific Gas and Electric Company

1    California State Agencies, co-counsel with the Attorney

2    General's Office.

3             Just one thing, Your Honor, is that I believe you

4    mentioned the objections that we are going to give the debtors

5    on February 28th would be filed on March 6th, if they're not

6    resolved.  Did we set a date?  Because in your --

7             THE COURT:  Well, if you say --

8             MR. PASCUZZI:  -- schedule --

9             THE COURT:  -- Mr. Karotkin, look, you need to say

10   ABC, and he says well, I'll do A and B, and you say well, I

11   want C, then you've got a viable objection to be heard for item

12   number C.

13            If he complies with and puts in A, B, and C,

14   presumably you withdraw your objection, or you won't file an

15   objection.

16            MR. PASCUZZI:  Absolutely.

17            THE COURT:  This is not -- we're not scoring here.

18   It's not like a basketball game.  We're trying to get a

19   resolved solution.  So I'm hoping there'll be no objections

20   left from the parties who have been instructed to make these

21   preliminary comments to debtors' counsel.

22            MR. PASCUZZI:  You're coming through loud and clear,

23   Your Honor, and I'm very familiar with the Court's approach to

24   disclosure statements, as well.

25            I believe I heard, though, if they -- after we meet

PG&E Corp., Pacific Gas and Electric Company

1    and confer, there's an objection outstanding, still, we would

2    file it by the March --

3              THE COURT:  Yeah.

4              MR. PASCUZZI:  -- 6th deadline.

5              THE COURT:  Yeah.

6              MR. PASCUZZI:  Okay, that's --

7              THE COURT:  Yeah, absolutely.

8              MR. PASCUZZI:  -- I just wanted to clarify that.

9              Then the other thing, Your Honor, was the voting

10   procedures.  I understand that the solicitation and all that

11   shouldn't be a big deal.  But I think when you're talking about

12   voting for the fire-claim class, that there's going to be some

13   questions about how are they counting each creditor's vote.  Is

14   it -- what dollar amounts are they using?

15             So I haven't seen any of that.  We haven't been

16   involved in it.  We've been placed in that class.  So there may

17   be some issues with the voting procedures.

18             THE COURT:  Well, let me ask Mr. Karotkin -- and I'll

19   start with a statement.  In my experience, in simple cases, a

20   proper disclosure statement states in about two sentences what

21   the voting rules are:  majority in number, two-thirds in

22   amount, et cetera.  So --

23             MR. KAROTKIN:  I think --

24             THE COURT:  -- what are --

25             MR. KAROTKIN:  -- I think what Mr. Pascuzzi is --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  -- are you going to do something like

2    that?

3    MR. KAROTKIN:  -- addressing is something different.

4    THE COURT:  Pardon?  What?

5    MR. PASCUZZI:  Yeah.

6    MR. KAROTKIN:  I think what Mr. Pascuzzi is addressing

7    is something different.  Because his clients are in the class

8    with the fire victims, we have 70- or 80,000 fire victims who

9    will be voting.  Numerosity is really not an issue.  Dollar

10   amount is an issue --

11   THE COURT:  Right.

12   MR. KAROTKIN:  -- because --

13   THE COURT:  Right.

14   MR. KAROTKIN:  -- the claims of the government -- the

15   governmental entities, by dollar amount, will dwarf --

16   THE COURT:  Right.

17   MR. KAROTKIN:  -- all of the other claims --

18   THE COURT:  Right.

19   MR. KAROTKIN:  -- and give them an inappropriate sway

20   in how that class votes.

21   So our proposal would be for that class -- and we will

22   be submitting it in the procedures -- is that each claimant has

23   a dollar vote, similar to in any mass tort cases.

24   I don't think it would be appropriate for FEMA or the

25   Government claims to control the vote of that class.

PG&E Corp., Pacific Gas and Electric Company

1      THE COURT:  Well, do you differ with that?

2      MR. PASCUZZI:  Your Honor, that's exactly the issue

3  I'm raising.  And like I said, we haven't been involved in any

4  of the discussions about this.  So I believe there will be

5  issues about the voting, how you weigh each vote.

6      And so what I'm suggesting -- I think you have them

7  being filed on February 21st, and then objections by the next

8  day.  And then March 6th.  Perhaps you want to build in some

9  more time there.  And there may be others like the federal

10 government who have that issue -- and I don't know if Adventist

11 will, as well.

12     THE COURT:  Well, no.  Well, I think you misspoke.

13 Mr. Karotkin said one week.  It's not one day.  I mean, it's

14 still tight.

15     MR. PASCUZZI:  I'm sorry, one week.  February 21st to

16 February --

17     THE COURT:  But I can make the deadline for the filing

18 of the documents earlier.

19     MR. PASCUZZI:  That's what I'm asking for, Your Honor.

20     THE COURT:  But I'm worried about something else.  I

21 mean, Mr. Karotkin do you believe there is precedent for one

22 creditor, one-dollar vote?  I mean, the statute doesn't seem to

23 permit that?

24     I'm not --

25     MR. KAROTKIN:  Yes, we believe there is precedent, and

PG&E Corp., Pacific Gas and Electric Company

1   it's not uncommon.  I mean, I would think, Your Honor, that Mr.

2   Pascuzzi's clients as well as Mr. Troy's clients, would not

3   want to be in a position to control the vote for the tort

4   claimant class.

5           THE COURT:  I don't -- that's for them to decide.  I

6   don't know that the statute is forgiving of that.

7           MR. KAROTKIN:  And by the way, those claims are

8   objected to or will be objected to, in any event.

9           THE COURT:  Well, then --

10          MR. KAROTKIN:  And will not be entitled to vote unless

11  they're allowed for voting purposes.

12          THE COURT:  Well, then, we're going to have to do

13  something about that.

14          MR. PASCUZZI:  Right, which was going to be my next

15  issue, just to remind the Court there are pending objections to

16  the FEMA claims and the Cal OES claims.

17          THE COURT:  Well --

18          MR. PASCUZZI:  So --

19          THE COURT:  -- I just can't keep track of all these

20  things that are out there.  That's why I need you guys.

21          Let's back up and let's move the February 21 deadline

22  on the solicitation to a few days earlier, Mr. Karotkin.

23          Mr. Pascuzzi, what do you think?  The 17th?  That's a

24  holiday.

25          MR. PASCUZZI:  Well, they had proposed it to be filed

PG&E Corp., Pacific Gas and Electric Company

1    with the disclosure statement on February 7th.

2            THE COURT:  Well, I know.  I know they had.

3            MR. PASCUZZI:  So --

4            MR. KAROTKIN:  Your Honor, Mr. Pascuzzi knows what the

5    issues are.  This is not something that he needs to have

6    tomorrow.

7            MR. PASCUZZI:  I don't know how they're going to treat

8    our claims, Your Honor, for voting purposes.

9            MR. KAROTKIN:  I just told you.

10            THE COURT:  Okay, one second.  Okay, look, we can move

11    it a little bit.  I'll move it a little bit, just to try to

12    make it -- Mr. Karotkin, I'm going to make that 21 to 18 --

13    February 18.  It's not a lot, so --

14            But Mr. Pascuzzi, on the subject of counting the

15    dollar -- a one dollar a vote, that would seem to me to be

16    something we have to tee up and brief, because I hadn't -- I

17    don't think I've encountered it before.  If it's been done

18    elsewhere, news to me.  But I --

19            MR. PASCUZZI:  Your Honor, it's usually done like in

20    the Diocese cases where you have a lot of unliquidated claims

21    and you're just trying to even it out.  It doesn't apply to --

22            THE COURT:  Well, you estimate it for --

23            MR. PASCUZZI:  -- our claims.

24            THE COURT:  -- voting purposes.

25            MR. PASCUZZI:  Yes, and it --

PG&E Corp., Pacific Gas and Electric Company

1    THE COURT:  But you have to do it ahead of time,

2    right?

3    MR. PASCUZZI:  And of course, we have different types

4    and character of claims.  But we'll get into that later.

5    Your Honor, the other thing I wanted to mention is not

6    to forget to set the time for the trust documents to be filed.

7    THE COURT:  Right.

8    MR. PASCUZZI:  And I believe Ms. Dumas said that the

9    disclosure description of it, obviously, will be in the

10    disclosure statement.  That's fine.  But I think we were

11    talking, at the prior hearing, that those documents would be

12    filed at the time of the -- by the time the disclosure

13    statement goes out, so that we have --

14    THE COURT:  Ms. --

15    MR. PASCUZZI:  -- plenty of time to address them.

16    THE COURT:  What do you suggest for that, Ms. Dumas?

17    That's on the outline, page 2, at the bottom.  What date would

18    you suggest?

19    MS. DUMAS:  Your Honor, I have a question for Mr.

20    Pascuzzi in terms of what he means by the "trust documents".  I

21    thought I addressed earlier our intention.  But perhaps I'm

22    misunderstanding what his intention is.

23    THE COURT:  Well, I'm going to take the documents you

24    were referring to.

25    MS. DUMAS:  Okay.  I was referring to a series of

PG&E Corp., Pacific Gas and Electric Company

1    documents, a resolution -- the form of trust agreement --

2         THE COURT:  Um-hum.

3         MS. DUMAS:  -- initially a form of claim resolution

4    procedures, that will be drafted with a view toward a

5    layperson, because those are the people who need to understand,

6    first and foremost, this is the paperwork I need in order to

7    turn it in to the trustee to get paid and how -- how am I going

8    to hear back from them, and the like.

9         THE COURT:  Okay.

10        MS. DUMAS:  With respect to the more fulsome, granular

11   claims resolution procedures that are more calculated to

12   counsel, understanding at a more detailed level what they're

13   going to need to support a -- for example, a wrongful death

14   claim -- what sort of experts they need, how those are going to

15   be valued -- that's not ready, and it's not going to be ready.

16   It's extraordinarily complicated to put together, and people

17   have been working on it for weeks.

18            That will be a more formal claims resolution procedure

19   that is more lawyer-friendly and granular -- it will be filed,

20   but it will not be filed initially, it will be filed as a

21   supplement or an amendment when it's ready, but well before

22   voting.

23            THE COURT:  Okay, but let's go back to the earlier

24   one, what you called the agreement and the resolution

25   procedures.  What's the date?

PG&E Corp., Pacific Gas and Electric Company

1    MS. DUMAS:  I think we can meet the date that the

2  debtor has suggested.

3    THE COURT:  My outline has a TBD, so give me the B --

4  give me the T.

5    MS. DUMAS:  Oh, sorry.

6    THE COURT:  To be determined, right now.  You've

7  got -- what's your recommendation?

8    MS. DUMAS:  Sorry, Your Honor.  We can have the

9  initial documents by February 21st, that is, our -- the view is

10  toward allaying the concerns of laypeople who want to

11  understand, sooner rather than later, what's going to happen.

12    That is our primary concern, not the concern of the

13  agencies who are trying to --

14    THE COURT:  No, I understand.  I understand.

15    MS. DUMAS:  So that we can -- we can have that sort of

16  outline out to actual victims as opposed to reimbursement for

17  mediation -- remediation by the 21st, so that people have a

18  sense of what they can -- what they can understand is going to

19  happen.

20    It will be very basic, but that's who we are

21  addressing here.

22    THE COURT:  Okay, Mr. Karotkin -- do you want me to

23  take the -- Mr. Karotkin, I want you and Ms. Dumas to agree to

24  the language that will be plugged into this table that says

25  February 21.  In other words, take what she said and turn it

of 154
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  into language so that this scheduling grid here can be made

2  available to the entire universe of this case in due course.

3          So Ms. Dumas, what about the more granular documents?

4  Are they going -- are they going to be filed or just available

5  through a website?  How will Mr. Pascuzzi or Mr. -- or Ms.

6  Anybody know, and when can they read their -- themselves, the

7  granular, fulsome documents?  When and how?

8          MS. DUMAS:  So they will be filed, and they will be

9  filed as soon as the documents are available.  They are --

10          THE COURT:  But that'll be by the hearing on

11  disclosure?

12          MS. DUMAS:  Um --

13          THE COURT:  I would think it has to be.  We don't want

14  one of these situations where a footnote says this little

15  summary is for your benefit, but by the way, the real answers

16  are found in another document.

17          MS. DUMAS:  No, no, no, no, no.  No, no, no.  No,

18  we're not saying that.

19          THE COURT:  Okay, so --

20          MS. DUMAS:  By the hearing on the disclosure

21  statement, we will have as complete information as we can --

22          THE COURT:  Okay.

23          MS. DUMAS:  -- regarding the resolution trust

24  agreement, the claims procedures, the form of releases, sort of

25  everything else --

(970) 649-2337 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  Okay.

2          MS. DUMAS:  -- that a tort claimant may need to know.

3          THE COURT:  Well --

4          MS. DUMAS:  I'm not saying -- and I want to emphasize

5     to the Court that that may not be final, final.  These are

6     extraordinarily complicated.  People have been working on them

7     for weeks.

8          THE COURT:  I understand that.  I'm sure --

9          MS. DUMAS:  But that's --

10         THE COURT:  -- that's true.

11         MS. DUMAS:  -- I will commit that that --

12         THE COURT:  But look, I --

13         MS. DUMAS:  -- will be the best that we could do at

14    that point.

15         THE COURT:  I'm going to give you one of my famous

16    hypotheticals, okay?  There is a victim out there who has a

17    settled -- signed and sealed settlement agreement from Butte

18    Fire who's still waiting to get the first penny.  There are

19    Tubbs Fire victims who have confidentially submitted actual

20    numbers.  There are tens of thousands of people who perhaps

21    have quite easily measurable, ascertainable amounts.  And I'll

22    put all of them into -- they've made theirselves (sic) clear

23    about am I going to have to take PG&E's stock or not; am I

24    going to get paid in installments or not; am I going to get

25    paid up-front or not; am I going to have to wait for the

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  company to get its net operating loss recoveries out there in

2  the future?

3  So will these documents come close to answering those

4  questions?

5  MS. DUMAS:  Yes, sir.  The first document that will be

6  filed, the summary, will answer those questions.

7  THE COURT:  Okay.  Good.

8  MS. DUMAS:  All of those questions.

9  THE COURT:  Okay.

10  MS. DUMAS:  It is geared toward letting all of those

11  people who have either resolved claims or claims that they

12  don't -- again, they don't have a lawyer, they just simply want

13  to know do I -- proof of residency; this is what happened here.

14  We have a lot of information --

15  THE COURT:  Okay.

16  MS. DUMAS:  -- about what was in the fire.

17  THE COURT:  That's fine.

18  MS. DUMAS:  They will answer all those questions.

19  THE COURT:  I'll accept your answer for that.

20  Okay, well, Mr. Pascuzzi, I'm going to finish with

21  you.

22  MR. PASCUZZI:  Yeah.

23  THE COURT:  Mr. de Ghetaldi, I'll come to you.  And I

24  don't know how long I'm going to go.  I'm going to follow the

25  same protocol that I did last time.  If we run late, I'm not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    going to run past 12:30.  If we aren't done by 12:30, we're

2    going to break.  But we'll try to get done by then.

3              MR. PASCUZZI:  So, Your Honor, I still didn't hear a

4    definitive date for when those documents will be filed, but

5    we'll just --

6              THE COURT:  The short --

7              MR. PASCUZZI:  -- reserve --

8              THE COURT:  -- the simple bundle is February 21.

9              MR. PASCUZZI:  Right.

10             THE COURT:  And the more comprehensive -- or to use

11   her term -- fulsome will be by the hearing on the disclosure

12   statement.

13             MR. PASCUZZI:  Okay, thank you, Your Honor.

14             One other point, Your Honor, is that the plan -- the

15   debtors' amended plan says that all fire claims are deemed

16   disputed.  I think somebody raised this point at the prior

17   hearing.  And I just want to make sure that's not then meaning

18   nobody can vote because that obviously -- and you -- the Court

19   had mentioned how can the plan that's not confirmed be an

20   objection to a claim for voting purposes, because the plan's

21   not confirmed.

22             So I just want to make sure there's not any gotchas

23   here on the plan being deemed an objection right now, so that

24   we can't vote, absent a normal objection that would happen.

25             THE COURT:  Could you answer that question, Mr. --

PG&E Corp., Pacific Gas and Electric Company

1          MS. DUMAS:  Well, Your Honor, Cecily Dumas --

2          THE COURT:  Oh, okay.

3          MS. DUMAS:  -- and I can answer that question.

4          THE COURT:  Okay.

5          MS. DUMAS:  The State's claim already has been

6     objected to, so Mr. Pascuzzi doesn't need to worry about that.

7          MR. PASCUZZI:  One of them.

8          MS. DUMAS:  His claim has been objected to in its

9     entirety.

10          MR. PASCUZZI:  One of them.

11          MS. DUMAS:  Oh, sorry, the three billion, four-

12     billion-dollar claim.

13          THE COURT:  So he can make a motion for allowance for

14     voting purposes.

15          MS. DUMAS:  Yes.

16          MR. PASCUZZI:  But the other claims, the CAL FIRE

17     claims, the Department of Toxic Substance Control, et cetera,

18     that are not subject to that objection, can vote.

19          THE COURT:  You know, there's another policy I want to

20     make sure we don't -- we don't do gotchas here.  I don't want

21     objections to claims filed on the night the ballots are

22     supposed to come in.  That's a gotcha too.

23          You've got to come out of the closet early and object

24     to claims early, if you're going to disenfranchise them as a

25     voter.  And so --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1        MS. DUMAS:  We're aware of that, Your Honor.  And

2   there have been ongoing discussions about the treatment of

3   government claims, both state and federal.

4        THE COURT:  Okay, but how --

5        MS. DUMAS:  There is nobody who's out of the loop or

6   not understanding what's happening.

7        THE COURT:  But let's take the state and the feds out

8   for a moment and talk about the victims.  Is there a -- is

9   there a blanket challenge or reservation that all victims'

10  claims are disputed?

11        MR. KAROTKIN:  I don't believe so.

12        THE COURT:  There better not be.  I don't know.  I

13  mean, I haven't gone back and looked at the schedules, because

14  the claims filing -- I mean, I don't know.  Mr. Karotkin, has

15  there even been a comprehensive analysis, now that the claims

16  bar date has passed?

17        MR. KAROTKIN:  We will make sure that there's nothing

18  that precludes the victims from voting.

19        THE COURT:  Okay.

20        MR. PASCUZZI:  Your Honor, I don't know if Mr. Troy is

21  on the phone and wants to be heard too on some of these issues,

22  but I think that's it, and we'll talk about the other issue, as

23  you mentioned, in a minute.

24        THE COURT:  Mr. Troy, do you want to be heard?  Are

25  you on the phone?

of 154

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1        MR. TROY:  Yes, Your Honor.  Matthew Troy, Department

2   of Justice, Civil Division, on behalf of various federal

3   agencies.

4        Just picking up on the last point, the United States

5   has in excess of 300 million dollars of fire resource -- of

6   wildfire-related resource damage and fire suppression claims

7   that have not been objected to that are channeled through the

8   trust, or a large portion being channeled to the trust.

9        So like Mr. Pascuzzi, on behalf of his clients, I have

10  the same concern about whether or not the claim (indiscernible)

11  would be deemed disputed and not entitled to vote.  I'm not

12  hearing great comfort from debtors' counsel and TCC's counsel

13  about that.

14        THE COURT:  Well, I can simplify this.  I don't want

15  to make these absolute rules, but I can do it to set the table

16  here, and that's to -- I'll just impose a deadline of -- an

17  objection deadline for purposes of disenfranchising the voter.

18  And therefore, I can say it -- that the objection will have to

19  be on file by a certain date.

20        And Ms. Dumas, I will offer you a date.  Let me look

21  at my calendar.  I would think it should be no fewer than two

22  weeks prior to a hearing on the disclosure statement.  So -- if

23  not more.

24        Let me just see.  We set March 10th for disclosure.

25  I'm inclined to issue an order that says February 21 is a

PG&E Corp., Pacific Gas and Electric Company

1    deadline for objections to claims for purposes of

2    disenfranchising the claimant as voter.  You can file the

3    objection any other time for whatever purpose.  But in my -- so

4    Ms. Dumas, you can speak to that ruling right now, if you want,

5    or accept it.

6              Any problem?

7              MS. DUMAS:  With respect to the timing, no, Your

8    Honor.  We'll comply.

9              With respect to the nature of the -- of the hearing,

10   Mr. Karotkin is correct; the TCC does not believe it's

11   appropriate for these government reimbursement claims to be

12   able to swamp and control the vote of the victim classes.  It's

13   unconscionable.

14             So the nature of the -- of the objections may be

15   estimation for purposes of voting, if the Court is not inclined

16   to adopt the debtors' one-claimant-one-vote.  But in one way or

17   another, we will address, by February 21st, the rights of these

18   parties who have come in and said that they have liquidated

19   claims in the billions of dollars, and we need to have our say,

20   and we need to be able to have it in every last penny.  We will

21   address those by the 21st.

22             THE COURT:  Well, let me simplify it this way.  Look,

23   I didn't know that this was an issue, because -- although Mr.

24   Pascuzzi and Mr. Troy, I think, had raised the issue some time

25   ago about whether their claims are in the -- well, before we --

(970) 221-0350 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   before we had the TCC RSA, there was an expectation that there

2   would be a claims estimation process.  And obviously that got

3   mooted by what happened.  And that led to a plan.  And the plan

4   put the governments -- the two governmental agencies -- the two

5   governmental branches, in the same pool, if you will, with the

6   fire survivors.  And before that, it wasn't an issue.

7           And therefore, the thought of having claim -- and by

8   the way, it wasn't until today that I heard a discussion about

9   how you count votes.  So it's probably too late for the debtor

10  to retool the plan and move those two governmental agencies

11  into a different class to solve that problem, but that's for

12  them to decide what they want to do.

13          I will just say -- and Mr. Karotkin, when you are

14  redoing the scheduling order that's going to come out of this,

15  you should put in there February 21st is the deadline for

16  objection to claims for purposes of disqualifying the claimant

17  from voting, whether it's voting one dollar or three billion

18  dollars.

19          The short answer is, if there's an objection on file

20  before or no later than February 21st, the claimant has to then

21  file, on an expedited basis, a motion to estimate its claim for

22  voting purposes.  And if the objector waits until the 22nd,

23  that claim gets to vote as filed, unless there is another order

24  that somehow changes how you count the vote.

25          So I can't change the statute.  I will follow the law,

PG&E Corp., Pacific Gas and Electric Company

1   if the law permits some flexibility on that.  And I'll listen

2   to the arguments of counsel on both sides.  But for now, we do

3   know what the calendar tells us.

4           So Mr. Pascuzzi, I hope that's responsive to your

5   question.  And you know what to do if you want to make sure

6   your claim is allowed for voting purposes.  And we'll come to,

7   later, when and how I will deal with those issues.

8           In that regard, Mr. Karotkin, it might be useful for

9   you to have a little meet-and-confer discussion with the two

10  principal counsel, Pascuzzi and Troy, and see if you can come

11  to an agreement with Ms. Dumas participating, in when and how I

12  should build into this schedule a process for hearing the

13  arguments on temporary allowance.

14          MR. KAROTKIN:  We will do that.

15          THE COURT:  And also, at the same time, on how we're

16  going to -- it's the same question -- on how we're going to

17  count the votes -- the dollar -- their dollar votes.

18          MR. KAROTKIN:  Yes.

19          THE COURT:  It would seem to me, those two go

20  together.  Agreed?

21          MR. KAROTKIN:  Yes, sir.

22          THE COURT:  So I'll defer to your judgment with those

23  principal counsel on the subject.  Ms. Winthrop, are you on the

24  same -- same subject for you, or not?

25          I mean, I'm going to hear you on everything you want

PG&E Corp., Pacific Gas and Electric Company

1    to be heard on, but --

2           MS. WINTHROP:  Yes.

3           THE COURT:  -- but are you in the same boat as the two

4    governmental agencies on that issue?

5           MS. WINTHROP:  We have raised -- Rebecca Winthrop of

6    Norton Rose Fulbright, on behalf of the Adventist claimants.

7    We have raised this issue in the past and was (sic) assured

8    that these issues would be worked out.

9           We would be happy to participate in any meet-and-

10   confer with the government and the debtor on this issue.

11          THE COURT:  Okay.

12          MR. KAROTKIN:  That's fine.

13          THE COURT:  You'll take her up on that?

14          MR. KAROTKIN:  Yes, I will.

15          THE COURT:  Okay.  All right.

16          MR. KAROTKIN:  Can I just make one suggestion?

17          THE COURT:  Yes, sir.

18          MR. KAROTKIN:  With respect to -- on the bottom of

19   page 2, the trust -- the trust and related documents, which I

20   believe will be February -- a summary on February 21.

21          THE COURT:  What she calls the simplified version.

22          MR. KAROTKIN:  Yes.

23          THE COURT:  The short forms.

24          MR. KAROTKIN:  Okay.  With respect -- there are also

25   trust documents with respect to the subrogation claims, which

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    really don't impact that many people.  And certainly, all of

2    those people are sophisticated.  And Mr. Feldman has requested

3    that those documents be filed by the end of the month.

4           THE COURT:  I'm not worried about Mr. Feldman and his

5    group.  So you and he put in your date on that.

6           MR. KAROTKIN:  Okay.

7           THE COURT:  So that'll be the 28th?

8           MR. KAROTKIN:  Yes, sir.  Is that fine?  Yes.

9           THE COURT:  So, okay --

10          MR. KAROTKIN:  We'll put that in there.

11          THE COURT:  So I'm going to make a note of 2/28.  It's

12   a -- let me just make a note here.

13          MR. KAROTKIN:  He feels left out.

14          THE COURT:  That's okay.

15          All right, who wants to be heard?  Ms. Winthrop, do we

16   have some other issues for you?

17          MS. WINTHROP:  Mr. de Ghetaldi, you go first.

18          MR. DE GHETALDI:  Thanks.

19          Thank you, Your Honor.  Dario de Ghetaldi --

20          THE COURT:  Mr. de Ghetaldi.

21          MR. DE GHETALDI:  -- on behalf of -- I guess, the

22   consenting fire-claimant professionals.  It's the other group

23   that, under the RSA, needs to approve the trust document.  And

24   that's a group of thirteen law firms.

25          THE COURT:  Do you want to be on my guest list, my

PG&E Corp., Pacific Gas and Electric Company

1      invitation list for the special treatment?

2           MR. DE GHETALDI:  As long as you include my partner,

3      Amanda Riddle, on that list, I'd be happy to, Your Honor.

4           THE COURT:  Listen, so for the media or people not

5      familiar with this, this is not special favor, this is more

6      homework for the involved lawyers.  And it puts a shorter

7      deadline on them.  And frankly, it makes sure they come to the

8      table and be reasonable on things.

9           So Mr. Karotkin, add Mr. de Ghetaldi and his thirteen

10     colleagues -- groups to the bullet-point list of people that

11     are on this list, by the February 28th date.

12          MR. DE GHETALDI:  Thank you, Your Honor.  I just

13     wanted to give the court a heads-up on something.  As I said,

14     this group of consenting fire-claimant professionals represents

15     approximately seventy to eighty percent of the fire claimants.

16     So it's a substantial block.

17          And I've got the unenviable task of whitewashing Aunt

18     Polly's picket fence and drafting this trust agreement.  I

19     haven't -- and one of the things that I want to give the Court

20     a heads-up on, and it's something that we're going to need in

21     order to finalize both the trust document and the claims-

22     resolution procedure that goes along with it, as an exhibit --

23     and this is the more detailed version of what Ms. Dumas was

24     talking about -- we are going to need the Court to appoint, at

25     least on an interim basis, two claims administrators to do the

PG&E Corp., Pacific Gas and Electric Company

1    gearing up for the actual creation of the trust and the

2    appointment of the trustee and the actual claims administrator,

3    who have already been agreed to by both the consenting fire-

4    claimant professionals and the TCC.

5              And those --

6              THE COURT:  How about the debtor?  The debtor --

7              MR. DE GHETALDI:  And the debtor had approved them as

8    well.

9              THE COURT:  -- has agreed to this?

10             MR. DE GHETALDI:  Yes, Your Honor.  And that is

11   Justice John Trotter and Cathy Yanni, who would be --

12             THE COURT:  Yes, I know who she is.

13             MR. DE GHETALDI:  Yeah.  And so Ms. Dumas is working

14   on that appointment request.  And I just wanted to alert the

15   Court to the -- to that coming down the pike very soon.  And

16   the importance of that is that they need to retain a banking

17   agent, an investment agent; they need to -- they need to retain

18   counsel.  And they --

19             THE COURT:  Do they have counsel lined up?

20             MR. DE GHETALDI:  I'm not sure yet.  We are in the

21   process of interviewing a number of people.  I don't think any

22   decision has been made.  And --

23             THE COURT:  Shouldn't they be interviewing the --

24             MR. DE GHETALDI:  When I said "we", I meant "they".

25             THE COURT:  Okay.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. DE GHETALDI:  All right?  I'm not interviewing any

2     counsel for that, Your Honor.

3          And so I just wanted to alert the --

4          THE COURT:  Well --

5          MR. DE GHETALDI:  -- the Court to --

6          THE COURT:  Take it up, and I'll ask Ms. Dumas to be

7     there to help you take this up with the United States Trustee.

8          I don't know and I don't really need to take time now

9     to ask the United States Trustee if there's any position on

10    this.  If the United States Trustee is given notice, I don't

11    need to have this set for hearing.  I'll take it on an ex parte

12    basis, and be done with it and sign it.

13         I don't know -- I mean, I don't know what these folks

14    are going to do.  I don't know Justice Trotter, but I certainly

15    know Ms. Yanni by reputation.  And so she's certainly in a

16    position to be doing what you have in mind; and that's fine.

17         So the more -- the faster we move on it, the better.

18         MR. DE GHETALDI:  Thank you, Your Honor.

19         THE COURT:  But let me make sure to tell you

20    something, too.  I'm sure some of the principal lawyers have

21    heard from some of the fire survivors directly.  I've been

22    getting lots of communications and there's a lot of

23    dissatisfaction out there, about -- at least people who are

24    expressing themselves to me, which could be a very discrete

25    minority, but it's vocal nevertheless.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          Our lawyers aren't telling us; we don't know what the

2   deal is; don't let the lawyers take all the fees; and we're

3   getting the short end of the stick.

4          So a number of you professionals need to do some

5   stroking and smoothing with people to make sure they understand

6   what's going on here.  I mean, I can't handle it by email sent

7   to the courtroom deputy.

8          MR. DE GHETALDI:  Yeah, we're --

9          THE COURT:  So just be mindful of it.

10          MR. DE GHETALDI:  -- we're mindful, Your Honor.

11          THE COURT:  Okay.

12          MR. DE GHETALDI:  And we're doing the best that we

13   can.

14          THE COURT:  Okay.

15          MR. DE GHETALDI:  Thank you.

16          THE COURT:  Anyone else want to be heard on the

17   scheduling?  Ms. Winthrop?

18          MS. WINTHROP:  Thank you, Your Honor.  Sort of a

19   scheduling question.  Rebecca Winthrop on behalf of the

20   Adventist Health claimants.

21          As I understand it, we have the short version of the

22   trust agreement, the claims-resolution procedures, and I assume

23   the bylaws, that are most likely going to be implemented, due

24   on the 21st.  And then we're -- we're one of the group that get

25   the pleasure of objecting early on the 28th.  But we don't get

PG&E Corp., Pacific Gas and Electric Company

1    the trust procedures until the day of the disclosure -- the

2    more fulsome trust procedures until the day of the disclosure

3    statement.

4              So what is my deadline or how do I address any

5    concerns I have that is on the more fulsome, attorney version

6    of the procedures?

7              THE COURT:  Well, I'm going to give you a short

8    answer, and then I'm going tell Ms. Dumas she needs to answer

9    this.

10             In my mind, the trust documents are not disclosure

11   documents, even though they are documents that disclose.  And

12   the goal here, as I interpret the Bankruptcy Code, is that the

13   disclosure statement, as defined, is the official voter's

14   pamphlet.  And it's the official voter's pamphlet that says

15   this is what you need to know to make a decision.

16             And just like an official voter's pamphlet, you're

17   also told you can go read the party website or the candidate's

18   statement or whatever else you want to read.  And to the extent

19   that you, as an attorney representing your client, need to go

20   down and look at the subparagraphs and the fine print of the

21   operative documents, I don't think that's a disclosure item.

22             In other words, I don't imagine it's going to

23   influence your client's decision to oppose the disclosure

24   statement.  It should -- that should be an easy inquiry.  It

25   should, however, influence your decision to object to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1      confirmation or not.  And you have a meet-and-confer-and-

2      communicate-with-counsel type thing for clarification.

3              Ms. Dumas, do you agree with that interpretation of

4      this?  And so Ms. Winthrop will have an opportunity to raise

5      the detailed questions with you without messing up the

6      disclosure process?

7              MS. DUMAS:  I do, Your Honor.  I believe that some of

8      the issues that are interesting to counsel are, in fact,

9      confirmation issues, and will be raised later.  But I don't

10     think they're proper to address at the disclosure statement.

11             One final observation.  We noted that claims

12     objections have been filed to the FEMA and Cal OES claims.  A

13     claim objection will be filed shortly to the Adventist claim.

14             THE COURT:  Okay, well, then you know what to do about

15     that for voting purposes.

16             Let me make one other thing clear, again, to lawyers

17     not familiar with my practice or with the bankruptcy practice.

18     I made the point in here that when you -- parties objecting to

19     disclosure, are to do it in the form of short, concise bullet

20     points.  And I'd bit my tongue and didn't say "such as you see

21     right above".  And so those are short, concise bullet points

22     listing people.

23             But your bullet points need to be similarly -- if you

24     have a basis for an objection to disclosure, I don't want a

25     fifteen- or twenty-page brief about disclosure statements.  I

PG&E Corp., Pacific Gas and Electric Company

1    want a discrete, bullet-point statement of what you think is

2    not adequately disclosed.

3         For those of you that were here in PG&E I, we had

4    eighty-three objections to the disclosure statement.  And I'm

5    not going to be able to read eighty-three twenty-page briefs.

6    And so please keep that in mind.  I will not be happy if,

7    particularly the principal lawyers in this case, end up giving

8    me a twenty-page brief when their disclosure concerns can be

9    short and sweet and discretely identified.

10        Do you have -- did I cut you off?  Did you have

11   something else you wanted to raise?

12        MS. WINTHROP:  If I may be heard on the issue of

13   whether this is disclosure issue or not?

14        I appreciate the concerns of the Court and I

15   appreciate Ms. Dumas' comment.  And normally that would be the

16   case.  This is not a normal case.  If the more fulsome version

17   of the procedures are such that they change the substantive

18   rights of the parties or the victims of the trust -- I should

19   say the fire victims who are members of the trust or

20   beneficiaries of the trust, then that is a disclosure statement

21   (sic), and people should be told, frankly, exactly how their

22   claims are going to be treated, and how it's going to work.

23        THE COURT:  Ms. Dumas, do you want to help me resolve

24   that, given this time frame?

25        MS. DUMAS:  I don't think the observation bears a

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1  response, Your Honor.  I'm with -- I just -- I really don't.

2       I think that it's -- there's a Supreme Court case that

3  tells us that bankruptcy court claims don't supersede state

4  law.  I mean, I just -- the fact that Counsel is standing here

5  having asserted a billion-dollar claim that's so inflated I

6  don't even want to get into it, and is saying that they need to

7  know whether the bankruptcy claims procedures will alter their

8  substantive rights, to me, is just not worthy of the Court's

9  time.

10      We'd be happy to have a meet-and-confer with

11 Adventist.

12      THE COURT:  Ms. Winthrop, let me answer it this way.

13 We have a very tight schedule.  It affects everybody.  I expect

14 everybody to be flexible.  If you have a good-faith concern

15 that somehow your rights are not protected and it's buried in

16 something that you are getting at the last minute, I guess I'll

17 have to let you object to the adequacy of the disclosure

18 statement.

19      And if you persuade me that it's not adequate, I'll

20 disapprove it.  But my hope, obviously, will be that there will

21 be a meet-and-confer and an attempt to do it.

22      Again, we're back to my point.  Is it going to

23 influence how you vote on the plan?  Those are usually easy

24 questions; which is why -- which is why for sophisticated

25 lawyers and sophisticated businesspeople, I get put off by

PG&E Corp., Pacific Gas and Electric Company

1    overdoing the disclosure statement effort, because most of us

2    know how we're going to vote.

3            And you and your clients will know how they're going

4    to vote.  And that's not the same as objecting to confirmation.

5    And that's a different issue.  So that's the best I can do for

6    now, for you.

7            MS. WINTHROP:  Okay, Your Honor.  And thank you very

8    much.  We appreciate that, and appreciate the lack of need to

9    respond to ad hominem attacks.

10           THE COURT:  All right, I'm going to stick with my

11   commitment to the staff.  Mr. Abrams, are you --

12           MR. TROY:  Your Honor, this Matthew Troy.

13           THE COURT:  Yes.

14           MR. TROY:  This is Mr. Troy, Your Honor.

15           THE COURT:  Yes, Mr. Troy.

16           MR. TROY:  Very quickly, and item that you have not

17   addressed -- and item that you have not addressed yet that was

18   set forth in the memo was necessary scheduling for other

19   discrete contested matters, such --

20           THE COURT:  Oh, yes.  That's true --

21           MR. TROY:  -- as classification of governmental claims

22   and objections or deadlines for objections to the trust

23   documents.

24           I can tell you that we -- at least on behalf of the

25   United States, we are interested in hearing your views about

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    having at least the classification issue addressed early.  With

2    respect to the objections to the trust documents, given that

3    we're not going really have anything substantive until sometime

4    in March, I think that's something that we can't impose any

5    deadline on.  But as to the first item, we are interested in

6    addressing that issue.

7            THE COURT:  Okay.  Here's what I'm going to do, Mr.

8    Troy and anyone else.  I am committed to not having these

9    hearings turn into physical ordeals for any of you or any of my

10   staff.

11           I'm going to instruct you, Mr. Troy, and Mr. Karotkin,

12   to -- and any other principal lawyers who are necessary to this

13   discussion, to continue to discuss with one another these

14   issues, and I will revisit additional scheduling at our hearing

15   on the 11th, which we're scheduled for some matters next week,

16   on the 11th.

17           And Mr. Troy, by the way, if you're on a cell phone

18   now, whatever you're -- I'm having a little trouble hearing

19   you, so you have to make some other arrangements or else be

20   here in person.  It wasn't too -- you weren't very audible

21   there.

22           But to the extent that there are some open issue that

23   need to get scheduled with the federal government or the state

24   government, I'm going to put the burden on Mr. Karotkin to

25   reach out to both counsel and -- and it's true, in the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1    scheduling order for today, I did leave open what we would talk

2    about:  classification and so on.  And we'll build that in to

3    what happens between now and next week on the 11th.

4         Mr. Abrams, the only thing that I have left is to find

5    out if you're going to go forward on your motion and when the

6    other sides wanted to hear it.

7         MR. ABRAMS:  Yes, I would like to go forward with my

8    motion for shortening time.

9         THE COURT:  Do you have a --

10        MR. ABRAMS:  And just as was --

11        THE COURT:  Let me --

12        MR. ABRAMS:  -- stated before, they're pushing the

13   speedy time, so I would hope that they would --

14        THE COURT:  I got it.  Mr. Karotkin --

15        MR. ABRAMS:  -- be amenable to supporting that.

16        THE COURT:  -- are you willing to have that argued --

17   there was some confusion, because Mr. Abrams filed something

18   earlier and then he filed almost the same document later.  But

19   it's basically his motion to reconsider the other two RSAs.

20   And I'd be willing to take it next week on the 11th on the

21   schedule, if that is acceptable to you?

22        MR. KAROTKIN:  I was hoping not to be here next week,

23   but that's fine.

24        THE COURT:  You can do it by phone.

25        MR. KAROTKIN:  It's fine.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          THE COURT:  You can do it by phone.

2          MR. KAROTKIN:  It's fine.

3          THE COURT:  You can do it by phone, or you can do it

4    through one of your colleagues.

5          MR. KAROTKIN:  That's fine.

6          THE COURT:  Okay, Mr. Abrams, I'll take it up on the

7    11th.

8          MR. FELDMAN:  Your Honor, and again, I don't want to

9    delay anything.  I'm just not sure our RSA is on for motion for

10   reconsideration.  Could I just get that one --

11         THE COURT:  It's one of these things where --

12         MR. FELDMAN: -- clarification.

13         THE COURT: -- where the motion was originally filed,

14   I believe, by the senior bondholders to revisit both of them.

15   Mr. Abrams joined --

16         MR. FELDMAN:  Yes.

17         THE COURT:  -- the motion.  And then because of the

18   senior bondholders dropping it off, there was some confusion

19   and I was a little short with Mr. Abrams at the last hearing,

20   because he wanted to be heard on an expedited basis, and he

21   hadn't done anything to do with doing it.

22         And then as it -- just because we've got to keep

23   moving, he contacted my courtroom deputy, I think, yesterday,

24   and said can my hearing be on the 11th.  So that's why I asked.

25         So Mr. Abrams, you really -- you really believe that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1   you have a good-faith motion that would persuade me to set

2   aside the subrogation and the TCC RSA --

3            MR. ABRAMS:  Absolutely, Your Honor.

4            THE COURT:  -- having made my ruling on today's

5   motion.  Okay.

6            MR. ABRAMS:  Absolutely, Your Honor.

7            THE COURT:  I'll hold you to it.

8            Mr. Feldman, you're welcome to appear by phone.  I

9   don't want lawyers flying cross-country for a hearing on a

10  motion, but I'm not going to just throw him out in the

11  woodwork.

12           And if he has an argument to get me to set it aside, I

13  need to do it earlier rather than later.

14           MR. FELDMAN:  I understand, Your Honor.  Thank you.

15           THE COURT:  So you're welcome to appear by phone.

16           MR. FELDMAN:  Thank you.

17           THE COURT:  All right.  Mr. Karotkin?

18           MR. KAROTKIN:  One last thing.

19           THE COURT:  Yes, sir.

20           MR. KAROTKIN:  You had asked when we would file

21  amendments to the financing motion.

22           THE COURT:  Yeah.

23           MR. KAROTKIN:  Would Monday be fine, February 10th?

24           THE COURT:  Yeah.  And that's on -- you said that's on

25  for the --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1        MR. KAROTKIN:  19th, sir.

2        THE COURT:  -- the 19th.  So Monday the 10th?

3        MR. KAROTKIN:  Yes, sir.

4        THE COURT:  All right.  Have you had any objections to

5   that before from anybody?  I mean, everybody's on board with

6   that for the most part, right?

7        MR. KAROTKIN:  I think the only objection was by the

8   United -- by the Governor's Office.

9        THE COURT:  Is someone from the Governor's Office

10  here, still today?  Is Ms. Mitchell or someone here or on the

11  phone?

12        MR. HINKER:  Yes, Judge.  This is Matt Hinker from

13  O'Melveny & Myers.

14        THE COURT:  All right.  Are you going to be persisting

15  in your objection to the revised exit financing motion?

16        MR. HINKER:  Yes, Your Honor.  We'll wait to see the

17  amendment, but as of right now, we intend to pursue our

18  objection.

19        THE COURT:  Okay, Mr. Karotkin.  Okay, I'll shorten

20  time for those purposes, and then that's no -- not to preclude

21  anyone else from objecting, but you're going to file it by

22  February 10th, next Monday.

23        MR. KAROTKIN:  Yes, sir.

24        THE COURT:  The 17th is a holiday.  I'll do what I did

25  for today.  Objections by noon on the 18th.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Company

1          MR. KAROTKIN:  Thank you, sir.

2          THE COURT:  And I'll take it up on the 19th --

3          MR. HINKER:  Thank you, Your Honor.

4          THE COURT:  -- at -- what's our time on the 19 --

5          THE CLERK:  10 o'clock.

6          THE COURT:  10 o'clock on the 19th.

7          Okay, so the next scheduled hearing on PG&E is the

8    next -- Tuesday the 11th, on a couple of discrete matters, plus

9    the follow-up for scheduling the confirmation issues that were

10   talked about today.

11         Mr. Karotkin, can we get that order from you in the

12   next day or two -- the scheduling order --

13         MR. KAROTKIN:  Yes, sir.

14         THE COURT:  -- for everyone's benefit?

15         MR. KAROTKIN:  Yes, sir.

16         THE COURT:  Okay.  Thank you everyone.

17         MR. KAROTKIN:  Thank you, sir.

18     (Whereupon these proceedings were concluded at 12:31 PM)

19

20

21

22

23

24

25

```
 1                    I N D E X

 2    RULINGS:                                  PAGE LINE

 3    The objections of William B. Abrams are    38    19

 4    overruled.

 5    Debtors' motion for entry of order (i)      39    25

 6    approving and authorizing the debtors to

 7    enter into RSA with consenting noteholders

 8    and shareholder proponents, and (ii)

 9    granting related relief, is approved.

10    The order re: the RSA is interlocutory.     61    15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1        C E R T I F I C A T I O N

2

3    I, Clara Rubin, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8

9

10

11    _____

12    /s/ CLARA RUBIN

13

14    eScribers

15    7227 N. 16th Street, Suite #207

16    Phoenix, AZ 85020

17

18    Date:   February 5, 2020

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**AB (6)**
15:21;16:10,11;22:6;
33:1;95:14
**ABC (1)**
98:10
**Abid (1)**
52:4
**ability (3)**
58:12;82:10,15
**able (8)**
20:4;28:4;46:11;
79:24;83:5;114:12,20;
125:5
**above (3)**
87:18,23;124:21
**Abram (1)**
6:13
**Abrams (135)**
6:14,15,16,19,21,24;
7:6,9,12,16;8:12;9:10,
12,14,18,23;10:12,21;
12:5,7,10,24;13:1,4,6,
11,18,21,24;14:2,5,8,
10,13,15,18;15:3,5,14,
17,23;16:3,9,15,18,21;
17:2,6,9,11,22,24;18:3,
5,12,15,23;19:1,4,9,12,
21,24;20:9,11,15,18;
21:8,19,20,21,23,25;
22:7,9,15,19,21,24;
23:3,9,19,21;24:1,4,6,
8,10,16;25:4,6,9,24,25;
26:5;27:18,24;28:1,7,9,
12,14,17,19,21,25;
29:8,11,18;30:4,18,20,
22;31:18;35:2;37:1,20;
38:15;39:13;49:18;
53:3;59:2;127:11;
129:4,7,10,12,15,17;
130:6,15,19,25;131:3,6
**Abrams' (2)**
32:3;61:10
**absent (2)**
63:6;110:24
**absolute (1)**
113:15
**absolutely (6)**
56:12;85:15;98:16;
99:7;131:3,6
**absorb (1)**
80:22
**abstract (1)**
30:12
**accept (4)**
15:18;25:11;109:19;
114:5
**acceptable (2)**
41:19;129:21
**accepted (1)**
42:15

**accidental (1)**
16:22
**accomplish (1)**
70:23
**accomplished (3)**
38:13;70:24;84:23
**accomplishment (3)**
32:2,24;35:14
**accord (1)**
84:9
**accordingly (1)**
10:25
**achieve (1)**
35:17
**achieved (1)**
35:14
**achieving (1)**
33:1
**act (1)**
15:15
**action (3)**
20:16,18;54:21
**active (5)**
7:17;32:6;71:4;
77:23,25
**actual (4)**
106:16;108:19;
120:1,2
**actually (1)**
63:13
**ad (3)**
13:8;52:5;127:9
**add (9)**
7:9;37:22;66:15;
77:6;78:3;87:22;88:21;
90:14;119:9
**added (2)**
37:25;77:24
**adding (1)**
77:8
**addition (2)**
53:8;57:17
**additional (1)**
128:14
**address (9)**
60:7;66:25;83:8;
97:23;104:15;114:17,
21;123:4;124:10
**addressable (1)**
38:18
**addressed (10)**
29:24;32:5;67:1;
83:6,11,22;104:21;
127:17,17;128:1
**addressing (5)**
23:13;100:3,6;
106:21;128:6
**adequacy (1)**
126:17
**adequate (2)**
88:7;126:19
**adequately (1)**
125:2

**adhere (1)**
10:25
**administrator (1)**
120:2
**administrators (1)**
119:25
**adopt (1)**
114:16
**advances (1)**
23:1
**Adventist (5)**
101:10;117:6;
122:20;124:13;126:11
**adversary (1)**
47:3
**advocat (1)**
18:11
**advocate (3)**
43:6;47:3,4
**advocating (1)**
18:13
**affect (2)**
8:22;62:7
**affected (1)**
14:20
**affects (1)**
126:13
**affirmed (1)**
42:4
**afforded (1)**
12:15
**afraid (1)**
59:14
**afternoon (1)**
68:7
**again (42)**
6:2;8:8;9:5,24;10:1;
19:14,22;21:8;22:11;
25:10;27:10;28:4;
35:14;38:11;42:16;
46:9;21;47:6;49:12;
66:8;69:13;71:1;72:4;
75:23;77:17;78:17;
80:8;81:25;86:16;88:1,
8;91:19,20;93:21;94:6;
95:4;96:8;97:6;109:12;
124:16;126:22;130:8
**agencies (7)**
77:22;98:1;106:13;
113:3;115:4,10;117:4
**agenda (2)**
4:11;9:20
**agent (2)**
120:17,17
**ago (2)**
52:25;114:25
**agree (16)**
7:14,25,25;8:2;
16:20;32:23;39:14;
57:19;59:10;60:1;72:7,
7;84:23;87:19;106:23;
124:3
**agreed (9)**

48:10;53:5;58:9;
65:13;76:9;86:22;
116:20;120:3,9
**agreement (16)**
8:6,23;18:21;35:25;
42:25;62:15;78:24;
82:6;84:12;105:1,24;
107:24;108:17;116:11;
119:18;122:22
**agreements (2)**
7:2;33:13
**agrees (2)**
11:12;62:21
**ahead (7)**
16:2;27:15,17;40:14;
54:16;67:2;104:1
**Akin (2)**
52:4;64:22
**alert (2)**
120:14;121:3
**aligned (2)**
10:11;23:11
**aligning (1)**
20:12
**allaying (1)**
106:10
**Allen (2)**
24:10,13
**allow (2)**
53:17;55:5
**allowance (2)**
111:13;116:13
**allowed (2)**
102:11;116:6
**almost (2)**
63:13;129:18
**along (2)**
84:22;119:22
**alter (1)**
126:7
**alternative (2)**
26:10;80:2
**although (2)**
39:13;114:23
**always (1)**
63:14
**Amanda (1)**
119:3
**amenable (1)**
129:15
**amend (2)**
83:7,8
**amended (8)**
7:10,24;32:16;36:24;
79:14,15;80:4;110:15
**amendment (1)**
4:16;105:21;132:17
**amendments (1)**
131:21
**among (1)**
80:17
**amount (5)**
4:17;48:25;99:22;

100:10,15
**amounts (3)**
53:13;99:14;108:21
**analysis (1)**
112:15
**and/or (1)**
65:16
**anomaly (1)**
59:11
**answered (1)**
38:12
**anticipate (2)**
27:12;31:9
**anyways (1)**
57:21
**apologize (3)**
25:14,20;38:16
**appeal (66)**
41:23;42:8,12;44:9,
12;45:1,7,16,17,20;
46:2,5,9;47:7,7,10,15,
17,22,23,23;48:1,13,
13;49:10,11,12,20,21,
23;50:6;51:13,14,17;
52:18;53:18,21,24;
54:3,12,19,22,23,24;
55:1,4,6,8,13,25,25;
56:14,24;57:3,25;58:4,
11,13;60:16,17,19,19;
61:4;62:9,25;64:8
**appealable (1)**
48:17
**appealed (2)**
45:8;64:5
**appealing (3)**
51:15,15;60:12
**appeals (10)**
40:23;41:2,2;42:12,
15,19;48:4;49:16;
60:20;63:1
**appear (2)**
131:8,15
**appearing (1)**
43:18
**appears (1)**
46:4
**appellant (1)**
56:5
**appellate (14)**
35:22;40:22,22,23;
41:23;43:4;45:9;48:9;
54:18;56:7,9;62:7,21;
64:6
**appellate-court (1)**
43:11
**apply (1)**
103:21
**appoint (1)**
119:24
**appointment (2)**
120:2,14
**appreciate (6)**
11:19;68:18;125:14,

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 136
of 154

15;127:8,8
**appreciated (1)**
25:9
**approach (1)**
98:23
**appropriate (7)**
70:23;73:14,15;
78:20;96:10;100:24;
114:11
**approval (5)**
70:15,19;73:8,9,12
**approve (13)**
18:19;33:2;34:24;
36:10,11;70:10;74:12,
25;75:3;82:15;88:22;
90:19;118:23
**approved (6)**
4:23;35:25;85:12;
89:13;91:18;120:7
**approves (2)**
39:25;61:10
**approving (4)**
12:1;33:20;39:11,16
**approximately (3)**
69:15,15;119:15
**April (5)**
91:2,4,4,8;93:13
**arbitrary (1)**
84:6
**argue (5)**
9:1;11:1;31:1;40:4;
57:23
**argued (3)**
40:3;59:12;129:16
**arguing (2)**
61:1,2
**argument (9)**
7:7,9;22:2;38:7,23;
40:18;55:11;58:4;
131:12
**arguments (14)**
8:7,15;9:20;38:10,
12,17,23;43:8;57:17,
20;88:9,10;116:2,13
**around (9)**
20:3;22:17;24:18,25;
29:14;46:18;86:5;
91:12,16
**arrangements (1)**
128:19
**A's (1)**
45:10
**ascertainable (1)**
108:21
**aside (3)**
57:20;131:2,12
**aspects (1)**
43:21
**asserted (1)**
126:5
**assets (6)**
13:16,17,18,18,20;
14:16

**assigned (1)**
57:4
**assignment (1)**
78:11
**associated (2)**
11:3;12:1
**assume (10)**
4:13;46:22,24;75:10;
80:9;86:21;90:18;
91:16;93:11;122:22
**assumed (1)**
67:17
**assuming (1)**
65:21
**assure (1)**
25:10
**assured (1)**
117:7
**attacks (1)**
127:9
**attempt (4)**
46:4,4;65:19;126:21
**attention (2)**
41:7,14
**attorney (6)**
10:23,23;11:2;98:1;
123:5,19
**attorneys (1)**
71:4
**audible (1)**
128:20
**audio (1)**
25:16
**Aunt (1)**
119:17
**automatically (1)**
56:5
**available (6)**
17:13;26:10;55:10;
70:6;74:14;94:15;
107:2,4,9
**avoid (1)**
6:2
**aware (2)**
55:22;112:1
**away (4)**
13:14;34:13;45:22;
56:22
**awkward (1)**
27:3;32:21

**B**

**baby (1)**
25:12
**back (30)**
6:7;10:1;18:17;
23:10;30:15;35:7,8,8,
21;36:3,17;37:25;38:1,
20;41:15;47:6;49:14;
52:17;54:8;60:8;75:11;
80:8,17;84:2;86:2;
102:21;105:8,23;

112:13;126:22
**backburner (1)**
34:13
**backwards (1)**
39:16
**bag (2)**
25:15,21
**ball (1)**
43:2
**ballot (3)**
71:7,13,14
**ballots (13)**
70:16;73:10,22;
75:14;77:5;84:25,25;
85:11;87:5,19;91:21;
96:25;111:21
**banking (1)**
120:16
**bankruptcy (30)**
10:1,23;16:7;17:16;
21:2,4,6,13;22:4;24:2,
11,22,23,25;25:1;
26:21,24;27:10,11;
28:15;39:9;40:22;
41:23;49:14;54:20;
82:18;123:12;124:17;
126:3,7
**BAP (6)**
48:1;53:21,23;55:5,
12;58:22
**bar (1)**
112:16
**based (6)**
4:14;33:21;39:17;
49:4;61:13;83:11
**basic (1)**
106:20
**basically (3)**
52:17;91:2;129:19
**basis (8)**
7:15;31:22;63:5;
115:21;119:25;121:12;
124:24;130:20
**basketball (1)**
98:18
**battle (1)**
88:6
**battles (1)**
76:7
**bear (1)**
18:18
**bears (1)**
125:25
**become (4)**
43:6;46:1;47:2;
51:12
**becomes (3)**
34:14;45:10;62:22
**bed (1)**
41:10
**begin (1)**
4:10
**beginning (1)**

82:4
**behalf (9)**
52:4;64:22;82:12;
113:2,9;117:6;118:21;
122:19;127:24
**behavior (1)**
9:13
**behind (12)**
15:8,9,10;16:6,12,
23;19:15;21:12;24:21;
27:21;65:8;78:22
**believes (1)**
59:3
**belong (2)**
23:24,24
**beneficiaries (1)**
125:20
**benefit (6)**
6:18;17:21,22;82:25;
107:15;133:14
**BENNETT (3)**
31:9,12;44:4
**Bennett's (1)**
31:7
**best (10)**
10:24;11:1,3,25;
14:23;61:4;96:15;
108:13;122:12;127:5
**better (7)**
8:5;16:24;19:18;
20:4;92:19;112:12;
121:17
**biased (1)**
20:7
**big (4)**
26:7,11;50:16;99:11
**Bill (1)**
20:19
**billion (2)**
111:11;115:17
**billion-dollar (2)**
111:12;126:5
**billions (1)**
114:19
**bind (1)**
62:6
**bit (6)**
68:15,16;72:12;
103:11,11;124:20
**black-lining (1)**
79:21
**blank (1)**
75:15
**blanket (1)**
112:9
**bless (1)**
82:24
**block (2)**
22:5;119:16
**board (2)**
35:15;132:5
**boat (3)**
62:1,2;117:3

**bogged (1)**
10:6;66:1
**bold (1)**
88:10
**bondholders (16)**
8:6;26:9;34:9;35:23;
39:1;41:12,17;42:25;
50:21,23;51:11;66:12;
77:22;80:13;130:14,18
**book (4)**
76:10,14;81:21,22
**books (1)**
49:8
**both (13)**
12:20;40:21;60:23;
64:5;74:4,4;82:17;
112:3;116:2;119:21;
120:3;128:25;130:14
**bother (2)**
61:5;71:1
**BOTTER (6)**
64:21,21;65:6,8,10;
66:3
**bottom (2)**
104:17;117:18
**bounce (1)**
86:5
**bound (1)**
62:15
**box (1)**
74:21
**branches (1)**
115:5
**break (1)**
110:2
**brief (4)**
61:19;103:16;
124:25;125:8
**briefly (1)**
60:1
**briefs (1)**
125:5
**bringing (1)**
16:4
**build (4)**
78:19;101:8;116:12;
129:2
**built (2)**
89:9;97:13
**bullet (3)**
124:19,21,23
**bullet-point (2)**
119:10;125:1
**bunch (1)**
10:8
**bundle (1)**
110:8
**burden (3)**
43:10;78:4;128:24
**buried (2)**
10:14;126:15
**burned (1)**
11:22

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 137
of 154

**burned-up (1)**
11:20
**business (8)**
11:6;12:14;23:15;
33:20;65:20;89:14,22;
90:1
**business-judgment (1)**
12:10
**businesspeople (1)**
126:25
**busy (1)**
93:16
**Butte (1)**
108:17
**buyer (1)**
65:14
**bylaws (1)**
122:23

**C**

**Cal (3)**
102:16;111:16;
124:12
**calculated (1)**
105:11
**calendar (7)**
4:12;5:10;85:4;
92:21;93:7;113:21;
116:3
**CALIFORNIA (8)**
4:1;15:15,16;16:5;
17:14,18;30:1;98:1
**California-law (2)**
18:1,3
**Call (8)**
4:4;7:23;20:7;30:23;
56:18;61:5,7;92:2
**called (5)**
39:4;43:16;44:13;
66:9;105:24
**calls (1)**
117:21
**came (2)**
49:5;57:5
**can (83)**
5:1;6:6;10:15;11:25;
15:2,4;16:19;19:24;
22:8;23:25;25:6,17,18;
26:6,22;27:13;29:2;
32:7;35:23;38:23;39:8;
41:14;42:19;47:2;
48:20;49:2;53:24;
54:15;57:22,24;58:3;
61:18,19;64:5;68:23;
69:11;72:24;81:10;
83:8;84:6,23,23;88:13;
90:6,14;91:19;92:14;
96:2;97:20;101:17;
103:10;106:1,8,15,15,
18,18;107:1,6,21;
110:18,19;111:3,13,18;
113:14,15,18;114:2,4;

116:10;117:16;122:13;
123:17;125:8;127:5,
24;129:24;130:1,3,3,
24;133:11
**candidate's (1)**
123:17
**capable (2)**
28:23;83:15
**care (2)**
29:25;51:13
**career (1)**
76:6
**careful (1)**
29:13
**carry (1)**
51:21
**carrying (1)**
4:12
**case (25)**
4:15,15;7:18;8:10;
11:1;13:20;23:25;
32:17;38:3;39:7;41:25;
42:14;49:4;53:5,23;
54:8;57:24;61:15;
67:21;77:25;107:2;
125:7,16,16;126:2
**cases (6)**
32:24;68:12;71:1;
99:19;100:23;103:20
**catastrophe (1)**
46:22
**Cathy (1)**
120:11
**caucus (1)**
97:1
**cause (2)**
11:21;52:9
**Cecily (2)**
82:11;111:1
**cell (1)**
128:17
**certain (6)**
41:1;84:13;91:23,25;
92:1;113:19
**certainly (10)**
10:4,4,23;27:11;
58:8;68:18;77:22;
118:1;121:14,15
**certification (2)**
41:22;42:7
**certified (1)**
44:8
**certify (2)**
41:21;42:5
**cetera (7)**
9:15,15;89:1,2;92:7;
99:22;111:17
**challenge (1)**
112:9
**champagne (1)**
48:3
**chance (1)**
9:1

**chances (1)**
55:14
**change (6)**
36:10;84:6;96:4,7;
115:25;125:17
**changed (4)**
4:13;8:19;13:13,14
**changes (2)**
80:14;115:24
**channeled (2)**
113:7,8
**Chapter (1)**
64:20
**character (1)**
104:4
**chasing (1)**
24:18
**check (1)**
14:23
**checked (1)**
17:14
**child (1)**
12:14
**choices (5)**
13:2;15:20;19:22,25;
85:8
**Circuit (2)**
46:19;53:20
**circumstance (1)**
56:11
**circumstances (1)**
64:14
**citizen (2)**
9:7;16:13
**Civil (1)**
113:2
**claim (16)**
83:6,11;105:3,14;
110:20;111:5,8,12;
113:10;115:7,21,23;
116:6;124:13,13;126:5
**claimant (9)**
14:18;83:22;100:22;
102:4;108:2;114:2;
115:16,20;120:4
**claimants (13)**
18:9;22:19;29:23,23;
56:21;57:24;82:12,17,
19;85:3;117:6;119:15;
122:20
**claims (43)**
65:17;82:18;83:10;
100:14,17,25;102:7,16,
16;103:8,20,23;104:4;
105:11,18;107:24;
109:11,11;110:15;
111:16,17,21,24;112:3,
10,14,15;113:6;114:1,
11,19,25;115:2,16;
117:25;119:25;120:2;
124:11,12;125:22;
126:3,7;127:21
**claims- (1)**

119:21
**claims-resolution (1)**
122:22
**claims-resolution-procedure (1)**
83:3
**clarification (9)**
33:14;34:6;64:25;
65:2,10,11,22;124:2;
130:12
**clarify (4)**
6:20;65:13;70:7;
99:8
**class (10)**
62:19;71:10;99:12,
16;100:7,20,21,25;
102:4;115:11
**classes (3)**
71:17;87:1;114:12
**classification (3)**
127:21;128:1;129:2
**clear (7)**
8:1;52:6;91:15;97:6;
98:22;108:22;124:16
**clearly (5)**
12:20;29:20;50:7;
55:23;60:11
**CLERK (8)**
4:5,9;6:25;7:19;
89:13;91:14;94:15;
133:5
**client (3)**
48:8;61:3;123:19
**clients (7)**
51:16;86:18;100:7;
102:2,2;113:9;127:3
**client's (1)**
123:23
**clock (3)**
22:11,12;45:1
**close (3)**
33:19;65:20;109:3
**closet (1)**
111:23
**closing (4)**
26:1;27:13,15;49:8
**co-counsel (1)**
98:1
**Code (4)**
21:4,6;26:21;123:12
**coincidence (1)**
15:7
**coincidentally (1)**
20:22
**colleague (1)**
96:1
**colleagues (3)**
96:15;119:10;130:4
**collect (1)**
58:13
**comfort (1)**
113:12
**comfortable (3)**
60:11;91:20;95:3

**coming (4)**
37:11;39:1;82:8;
98:22;120:15
**comment (4)**
9:4;26:2;27:15;
125:15
**comments (5)**
6:18;69:13;70:22;
86:9;98:21
**Commission (11)**
20:23,24;23:25;24:1;
26:14,16;27:1;32:19;
36:18,19;37:3
**Commission's (1)**
26:15
**commit (1)**
108:11
**commitment (2)**
4:23;127:11
**committed (1)**
128:8
**committee (9)**
13:8;39:19,19;43:20;
52:5;80:13;82:12;
92:21;93:16
**committees (4)**
39:6;71:3;77:20;
84:11
**committee's (1)**
86:18
**communicate-with-counsel (1)**
124:2
**communicating (1)**
84:11
**communications (1)**
121:22
**companies (2)**
27:11;29:4
**company (10)**
12:13,15;15:22;22:5;
27:9;39:6;46:17,18;
49:13;109:1
**compelled (1)**
21:9
**competing (3)**
34:10;36:7,13
**competing-plan (1)**
35:9
**competition (1)**
36:3
**competitive (1)**
30:7
**complain (1)**
9:8
**complaining (1)**
22:3
**complete (3)**
89:22;91:3;107:21
**completely (3)**
40:10;80:21;84:18
**complicated (3)**
14:22;28:18,19;29:2;
45:3;43;68:15;81:24,25;

105:16;108:6
**complies (2)**
  15:25;98:13
**comply (4)**
  15:24;16:1;21:3;
  114:8
**complying (1)**
  22:6
**comprehensive (3)**
  86:17;110:10;112:15
**compromi (2)**
  47:16,17
**compromise (3)**
  38:25;45:2;59:14
**compromised (4)**
  47:14,18,20;50:4
**compromises (1)**
  59:15
**concern (6)**
  38:16;46:3;106:12,
  12;113:10;126:14
**concerns (5)**
  9:25;106:10;123:5;
  125:8,14
**concessions (2)**
  13:9,11
**concise (2)**
  124:19,21
**conclude (2)**
  38:23;76:19
**concluded (1)**
  133:18
**conclusion (1)**
  36:2
**concrete (1)**
  84:8
**concur (2)**
  82:23;85:9
**concurrent (1)**
  85:21
**Concurrently (1)**
  85:24
**condemnation (1)**
  53:10
**condition (3)**
  17:17;41:17;42:24
**confer (4)**
  78:11;80:16;99:1;
  117:10
**conference (4)**
  64:7;93:2,6,24
**confident (1)**
  88:3
**confidentially (1)**
  108:19
**confirm (2)**
  91:14;96:2
**confirmation (27)**
  26:7;17;32:5;44:22;
  46:1;50:18;51:3;52:8;
  53:4;57:23,23;66:6;
  71:16,18;89:16;90:12;
  91:21;92:3,7;95:4,5,

14;96:16;124:1;9;
127:4;133:9
**confirmed (7)**
  27:8;46:10;49:19;
  52:16;55:8;110:19,21
**confirming (1)**
  58:7
**confirms (1)**
  57:25
**conflict (2)**
  44:3,14
**confused (1)**
  93:1
**confusion (4)**
  6:23;93:12;129:17;
  130:18
**Congress (1)**
  29:3
**conscience (1)**
  48:20
**consensus (1)**
  39:1
**consent (5)**
  44:22;50:24;51:1,5,5
**consenting (8)**
  33:19;65:14,15,17,
  20;118:22;119:14;
  120:3
**consequence (1)**
  49:10
**consequences (7)**
  11:5,7;15:19,25;
  16:1;19:8;33:11
**consider (3)**
  12:9;73:8,9
**consideration (1)**
  21:21
**considering (2)**
  36:19;56:22
**consistent (5)**
  32:18;45:2;52:7;
  54:6;74:21
**constituencies (2)**
  10:10;32:25
**constituency (1)**
  82:8
**construct (1)**
  52:14
**contacted (1)**
  130:23
**content (3)**
  71:6,7;76:7
**contested (3)**
  38:4;39:3;127:19
**continuance (1)**
  37:10
**continue (2)**
  55:8;128:13
**continued (1)**
  4:12
**contrary (1)**
  50:2
**control (5)**

17:6;100:25;102:3;
111:17;114:12
**conventional (1)**
  87:1
**conversation (1)**
  53:1
**convince (3)**
  46:11;54:18;55:12
**coordinating (1)**
  94:3
**core (1)**
  77:14
**Corporation (1)**
  4:9
**corrected (1)**
  12:2
**correctly (2)**
  7:4;34:9
**counsel (24)**
  38:2;44:15;60:23;
  68:13;80:10,17;81:6;
  84:4,10;97:12,13;
  98:21;105:12;113:12,
  12;116:2,10,23;120:18,
  19;121:2;124:8;126:4;
  128:25
**count (4)**
  96:25;115:9,24;
  116:17
**counting (6)**
  19:15,17;85:5;90:3;
  99:13;103:14
**couple (8)**
  4:12;6:17;40:16;
  42:13,14;57:15;67:6;
  133:8
**course (7)**
  16:4,6;36:10;59:7;
  69:18;104:3;107:2
**Court (645)**
  4:4,5,7,10,19,24;5:1,
  7,10,12,18,20,22,25;
  6:4,6,9,11,13,16,22,25;
  7:7,11,13,17;8:13;9:11,
  13,15,19,24;10:13;
  12:3,6,9,22,25;13:2,5,
  10,17,19,22,25;14:3,6,
  9,11,14,16;15:2,4,7,9,
  15,18,24;16:8,13,17,
  19;17:1,5,7,10,12,23;
  18:1,4,11,13,16,24;
  19:2,5,11,20,22,25;
  20:10,13,16,23;21:1,5,
  11,13,18,20,22,24;
  22:1,8,10,18,20,23,25;
  23:4,18,20,23;24:2,3,5,
  7,9,10,11,14,15,17,20;
  25:3,5,8,10,14,17,19,
  25;26:6,24;27:10,12,
  25;28:6,8,11,13,15,18,
  20,22;29:1,10,17,19,
  20,25;30:17,19,21,23;
  31:3,6,11,13,19,21;

32:7,11,13,19;33:3,10,
16,24;34:3,8,12,16,18,
21;35:1,6,10,18,20,21,
22;36:2,5,9,12,15,17,
21,23;37:1,9,15,17,20,
25;38:18;40:4,7;41:2,
21,23;42:3,9,12,15;
43:3,4,15,19,24;44:1,6,
10,12,19,25;45:7,9,24;
46:6,8,11,16;47:2,19,
22,22,25;48:2,4,12,13,
19,24;49:15,16,25;
50:12,14,20,25;51:4,7,
10,21,24;52:1,11,18,
20,22;53:2,3,7,10,16,
21,24;54:1,4,8,10,11,
18,18,24;55:2,5,9,12,
18,20,22;56:4,7,13,15,
15,18,25;57:2,8,12;
58:3,7,10,16,19,21,22,
24;59:1,9,17,19,22,25;
60:3,5,19;61:3,8,20,22;
62:2,10,12,14,16,18,20,
21,25;63:1,8,10,13,17,
19,24;64:3,6,11,16,18;
65:4,7,9,23;66:4,8,19,
22,24;67:2,5,8,10,12,
16,19;68:5,7,11,17,20,
23,25;69:3,7,9,11,17,
22,24;70:5,7,9,15,25;
71:12,14,17,20,24;
72:2,7,9,14,17,20,22;
73:1,3,5,11,12,16,22,
23;74:2,4,8,10,17,24;
75:2,7,10,18,20,23,25;
76:5,12,15,17,22,24;
77:3,7,10,12,17;78:18;
79:2,5,9,11,17,19;80:6,
19;81:2,5,9,15,18,21;
82:2,5,24;83:8,14,17,
20,22,25;84:2,15,18,
20;85:2,4,10,16,18,20,
23;86:2,7,11,14,20,24;
87:2,7,11,15,21,24;
88:1,4,16,20,24;89:1,3,
8,11,16,20,23,25;90:5,
9,15,18,23,25;91:4,7,
10,13,15,25;92:5,7,9,
15,18,25;93:5,7,11;
94:12,14,16,23;95:3,
10,13,17,19,23;96:4,
12,15,19,23;97:3,20,
23;98:7,9,17;99:3,5,7,
18,24;100:1,4,11,13,
16,18;101:1,12,17,20;
102:5,9,12,15,17,19;
103:2,10,22,24;104:1,
7,14,16,23;105:2,9,23;
106:3,6,14,22;107:10,
13,19,22;108:1,3,5,8,
10,12,15;109:7,9,15,
17,19,23;110:6,8,10,
18,25;111:2,4,13,19;

112:4,7,12,19,24;
113:14;114:15,22;
116:15,19,22;117:3,11,
13,15,17,21,23;118:4,
7,9,11,14,20,25;119:4,
13,19,24;120:6,9,12,
15,19,23,25;121:4,5,6,
19;122:9,11,14,16;
123:7;124:14;125:14,
23;126:2,3,12;127:10,
13,15,20;128:7;129:9,
11,14,16,24;130:1,3,6,
11,13,17;131:4,7,15,
17,19,22,24;132:2,4,9,
14,19,24;133:2,4,6,14,
16
**courtroom (3)**
  77:18;122:7;130:23
**courts (1)**
  40:23
**court's (4)**
  22:4;44:23;98:23;
  126:8
**cousin (3)**
  63:15,16,19
**cover (1)**
  70:3
**covered (2)**
  17:15,20
**CPUC (15)**
  20:19;21:6,10;22:3;
  23:11;32:5,15;36:6,7,
  10,11,14;77:23;95:14,
  20
**CPUC's (1)**
  10:3
**crazy (1)**
  46:20
**create (1)**
  17:13
**created (1)**
  40:2
**creation (1)**
  120:1
**creditor (5)**
  8:21;10:13;78:13;
  97:17;101:22
**creditors (15)**
  7:3;8:10;14:7;18:21;
  31:25;38:21;39:22;
  40:5;43:8;57:17;59:10;
  69:18;80:11,12;97:15
**creditors' (3)**
  39:18;42:21;43:3
**creditor's (1)**
  99:13
**criminal (1)**
  9:13
**critical (5)**
  5:3,8;7:18;10:2;
  22:13
**criticizing (2)**
  7:18;17:7

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) complies - criticizing

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 139
of 154

**crooks (1)**
10:8
**cross-country (1)**
131:9
**Crutcher (1)**
43:14
**current (3)**
23:11;29:23;81:23
**customer (1)**
9:7
**cut (1)**
125:10

**D**

**damage (1)**
113:6
**Dario (1)**
118:19
**dark (1)**
14:20
**date (44)**
5:9;16:22;17:9;
33:20;34:2,6;35:16;
44:23;46:11;67:15;
69:21,25;70:4;73:20;
75:18;77:1,11;79:5;
80:3;81:8;87:16;89:12;
90:8;91:23,25;92:1,2,
24;93:9;94:14,25;95:4,
12;97:7;98:6;104:17;
105:25;106:1;110:4;
112:16;113:19,20;
118:5;119:11
**dated (1)**
91:18
**dates (1)**
86:4
**David (1)**
64:21
**day (27)**
8:4;15:18;19:6;
20:22;45:21,22;66:10;
67:9,23;73:7;77:1;
85:5;87:18;89:4;91:7,
8,11;92:2;93:9;95:5;
96:7,11;101:8,13;
123:1,2;133:12
**days (10)**
5:15;54:22;62:3;
65:4;89:14,22;90:1;
93:13;95:6;102:22
**de (22)**
83:7;109:23;118:17,
18,19,20,21;119:2,9,
12;120:7,10,13,20,24;
121:1,5,18;122:8,10,
12,15
**dead (1)**
71:19
**deadline (33)**
4:22;5:2;15:7;17:24;
18:2,3,6,8,9,9,14;

22:13;28:7;33:1;37:13;
71:21;78:13,15;84:6;
92:10;94:19;95:13;
97:12;99:4;101:17;
102:21;113:16,17;
114:1;115:15;119:7;
123:4;128:5
**deadlines (5)**
5:2;37:11;78:19;
80:20;127:22
**deal (13)**
13:8;31:13;35:22;
48:9;56:8;61:25;62:5,
6,6;78:14;99:11;116:7;
122:2
**dealing (5)**
27:2,4,4;60:17;86:18
**death (1)**
105:13
**debate (1)**
71:6
**debt (1)**
66:15
**debtor (28)**
10:10,11;15:11;
18:22;26:9;31:1;38:2;
46:5;50:4,18,21;57:19;
58:1;60:4,23;61:24;
65:24;76:3;78:10;
82:20;88:17;96:7;
106:2;115:9;117:10;
120:6,6,7
**debtors (9)**
11:17;31:16;38:25;
39:24;43:1;50:19;77:2;
78:10;98:4
**debtors' (14)**
27:16;35:3;37:4;
40:15;42:17,22;46:10;
84:10,10,22;98:21;
110:15;113:12;114:16
**dec (1)**
61:14
**December (2)**
51:2;63:3
**decide (8)**
5:13;26:2,12;39:3;
54:14;61:18;102:5;
115:12
**decided (2)**
8:23;49:7
**decides (1)**
54:12
**decision (25)**
8:5;18:18;21:5;
23:15;29:7;39:17;42:4,
5,10,10;43:2;46:12;
49:11;51:2;57:4;61:13,
21;63:3,21,21;72:11;
120:22;123:15,23,25
**decisions (1)**
15:19
**decline (1)**

61:17
**decree (1)**
50:6
**deed (1)**
64:24
**deem (1)**
56:1
**deemed (7)**
44:21;50:24;51:1,4;
110:15,23;113:11
**defendant (1)**
47:10
**defer (4)**
21:5;50:17;54:15;
116:22
**deferral (2)**
39:3;44:19
**deferred (3)**
40:12;41:8;60:2
**deferring (3)**
24:6;44:22;46:7
**defined (3)**
33:22;65:15;123:13
**definitive (1)**
110:4
**delay (4)**
63:25;64:1,14;130:9
**delete (2)**
81:7,7
**delve (1)**
12:22
**denials (1)**
42:9
**denied (2)**
45:10,20
**Dennis (1)**
4:6
**deny (2)**
10:18;55:12
**denying (1)**
57:8
**Department (2)**
111:17;113:1
**depending (1)**
49:22
**deputy (2)**
122:7;130:23
**described (1)**
14:21
**describing (1)**
18:19
**description (2)**
83:10;104:9
**desk (1)**
16:6
**detailed (5)**
83:9,10;105:12;
119:23;124:5
**determination (1)**
42:1
**determine (2)**
38:19,22
**determined (3)**

53:22;73:23;106:6
**determines (1)**
55:5
**developed (3)**
61:15;82:20;83:15
**development (1)**
79:22
**dialog (1)**
80:10
**differ (1)**
101:1
**difference (6)**
11:9,15,16;40:2;
49:20;51:15
**differences (1)**
97:14
**different (13)**
7:5;8:7,8;40:20;
45:15;69:15;74:3;
81:11;100:3,7;104:3;
115:11;127:5
**diffusion (2)**
24:13,17
**digress (1)**
38:1
**diligent (1)**
29:14
**Diocese (1)**
103:20
**DIP (1)**
13:22
**direct (10)**
41:2;42:12,19;44:8,
12;60:16,17,19,19;
62:25
**directed (1)**
83:4
**direction (5)**
11:24;19:10,13,14;
23:12
**directly (1)**
121:21
**disagree (2)**
27:22,23
**disagreed (1)**
42:3
**disapprove (8)**
8:11;20:13;23:5,10;
31:19;35:4;39:12;
126:20
**disapproved (1)**
41:25
**disapproving (1)**
42:2
**disclose (1)**
123:11
**disclosed (1)**
125:2
**disclosure (72)**
4:21;26:7;28:2,15;
37:5;41:25;42:4,22;
66:14,18;70:2,11,17;
71:6,13;72:3,14;73:9,

19,20;74:12,16;76:6;
77:5;78:8,21;80:11;
81:3,11,13,19;83:17,
21;85:21;88:5,7,18,22;
89:13;90:19;91:18,22;
97:10,16;98:24;99:20;
103:1;104:9,10,12;
107:11,20;110:11;
113:22,24;123:1,2,10,
13,21,23;124:6,10,19,
24,25;125:4,8,13,20;
126:17;127:1
**disclosures (4)**
19:2;78:12;88:11;
91:22
**discrete (6)**
39:22;49:5;121:24;
125:1;127:19;133:8
**discretely (1)**
125:9
**discuss (1)**
128:13
**discussion (7)**
46:18;59:2;84:2,4;
115:8;116:9;128:13
**discussions (3)**
48:18;101:4;112:2
**disenfranchise (1)**
111:24
**disenfranchising (2)**
113:17;114:2
**dispose (1)**
61:12
**disposing (1)**
63:22
**disposition (1)**
63:1
**dispute (2)**
47:9;51:13
**disputed (3)**
110:16;112:10;
113:11
**disqualifying (1)**
115:16
**dissatisfaction (1)**
121:23
**distinguished (1)**
70:19
**district (10)**
41:23;42:3;48:2;
53:21,23;55:5,12;57:4;
58:22;70:12
**districts (1)**
70:12
**disturb (1)**
43:22
**dividing (1)**
77:19
**Division (1)**
113:2
**docket (1)**
67:18,20,20;68:2
**document (14)**

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 140
of 154

7:4,5;11:11,11;
52:11,13;83:3;84:1;
93:19;107:16;109:5;
118:23;119:21;129:18
**documents (28)**
7:4;20:12,20;29:2;
73:25;78:21;79:6;
101:18;104:6,11,20,23;
105:1;106:9;107:3,7,9;
109:3;110:4;117:19,
25;118:3;123:10,11,11,
21;127:23;128:2
**dollar (9)**
99:14;100:9,15,23;
103:15,15;115:17;
116:17,17
**dollars (3)**
113:5;114:19;115:18
**dollars-and-cents (1)**
39:9
**domino (1)**
35:10
**done (11)**
21:17;30:14;42:9;
75:5;76:1;103:17,19;
110:1,2;121:12;130:21
**doubt (2)**
46:9;76:8
**down (11)**
5:13;10:6;11:22;
19:7;22:10;28:4;39:11;
66:1;97:10;120:15;
123:20
**downstream (1)**
11:8
**draft (1)**
81:23
**drafted (1)**
105:4
**drafting (2)**
60:18;119:18
**draws (1)**
60:13
**driver's (1)**
20:25
**dropping (2)**
13:8;130:18
**due (4)**
28:1;84:25;107:2;
122:23
**Dumas (72)**
79:8;82:5,11,11;
83:15,19,21;84:1,9,17,
19,21;85:3,9,15,17,19,
22,24;92:12,18,19;
93:8,10;104:8,16,19,
25;105:3,10;106:1,5,8,
15,23;107:3,8,12,17,
20,23;108:2,4,9,11,13;
109:5,8,10,16,18;
111:1,1,3,5,8,11,15;
112:1,5;113:20;114:4,
7;116:11;119:23;

120:13;121:6;123:8;
124:3,7;125:23,25
**Dumas' (1)**
125:15
**Dunn (1)**
43:14
**duplicating (1)**
94:3
**dwarf (1)**
100:15

---

**E**

---

**earlier (14)**
40:16;69:1,3,5,24;
78:13;84:7;85:23;
101:18;102:22;104:21;
105:23;129:18;131:13
**earliest (1)**
93:9
**early (8)**
13:22;75:5;76:3;
94:19;111:23,24;
122:25;128:1
**easier (1)**
75:7
**easily (1)**
108:21
**easy (2)**
123:24;126:23
**effect (4)**
35:10;39:1;47:13;
60:18
**effective (3)**
34:1,6,14
**efficient (1)**
40:24
**effort (1)**
127:1
**efforts (1)**
84:22
**eight (1)**
45:24
**eighty (1)**
119:15
**eighty-three (2)**
125:4,5
**either (9)**
35:20;41:23;43:9;
53:20;58:22;59:6;61:7;
79:22;109:11
**elaborate (1)**
8:9
**elements (1)**
82:13
**Ellis (1)**
27:1
**else (17)**
27:17;30:25;36:5;
39:7;43:15;51:22;
54:15;66:8;76:20;
101:20;107:25;122:16;
123:18;125:11;128:8,

19;132:21
**elsewhere (2)**
76:1;103:18
**email (3)**
7:19;68:1;122:6
**emails (1)**
65:2
**embraced (1)**
71:8
**emphasize (1)**
108:4
**encountered (1)**
103:17
**end (10)**
7:13,21;33:5;40:13;
87:11;91:2;95:15;
118:3;122:3;125:7
**endorsed (1)**
40:25
**enormous (1)**
10:2
**enough (4)**
87:9;89:9;92:22;
94:16
**ensure (1)**
52:15
**enter (5)**
42:22;60:3;61:23;
62:13;66:2
**entered (3)**
33:20;50:20;53:14
**entering (2)**
44:24;48:16
**enters (1)**
65:21
**entire (1)**
107:2
**entirely (1)**
32:18
**entirety (1)**
111:9
**entities (1)**
100:15
**entitled (4)**
34:6;57:18;102:10;
113:11
**entitlement (2)**
53:4,12
**entry (4)**
44:22;50:17;87:16,
17
**envision (7)**
69:12,14;82:8;83:1,
3,24;85:24
**envisioned (1)**
91:16
**equal (1)**
31:7
**equitable-mootness (1)**
57:20
**equity-holders (1)**
87:6
**equivalent (2)**

37:5;58:4
**error (1)**
41:24
**escrow (1)**
57:19
**essentially (1)**
42:4
**established (1)**
7:21
**estimate (2)**
103:22;115:21
**estimation (3)**
30:15;114:15;115:2
**et (7)**
9:15,15;89:1,2;92:7;
99:22;111:17
**even (23)**
16:20;18:8;22:13;
27:22,23;29:5;40:10;
42:16,18;44:1;48:6,7;
49:22;53:17,22;61:1;
64:14;72:17;93:13;
103:21;112:15;123:11;
126:6
**event (3)**
52:16;94:6;102:8
**everybody (10)**
44:15;67:21;78:11;
81:13,15;94:8,18;96:5;
126:13,14
**everybody's (1)**
132:5
**everyone (5)**
4:7;11:12;35:16;
39:7;133:16
**everyone's (1)**
133:14
**everything's (1)**
46:24
**evidence (3)**
27:7;83:12;93:23
**ex (1)**
121:11
**exact (1)**
7:4
**exactly (9)**
8:25;35:2;64:1;
67:14;70:1;71:10;
83:19;101:2;125:21
**example (5)**
5:25;47:6;54:10;
57:18;105:13
**exception (4)**
8:21;27:10;76:8;
88:11
**excess (1)**
113:5
**exchange (1)**
80:20
**excluded (1)**
74:19
**excuse (3)**
14:14;27:16;41:6

**exhibit (1)**
119:22
**exigencies (1)**
53:5
**existed (1)**
27:6
**existing (1)**
16:5
**exit (2)**
4:13;132:15
**exorable (1)**
23:7
**expect (8)**
80:11;96:12,14,19;
97:8,12,13;126:13
**expectation (1)**
115:1
**expedited (2)**
115:21;130:20
**experience (3)**
40:21;60:17;99:19
**experienced (3)**
42:6;68:13;97:14
**expert (1)**
83:12
**experts (1)**
105:14
**explain (4)**
50:1;52:10;72:25;
79:11
**express (1)**
19:6
**expressing (1)**
121:24
**extent (6)**
70:22;74:14;77:13,
15;123:18;128:22
**extra (4)**
29:13,14;79:12;89:4
**extraordinarily (2)**
105:16;108:6

---

**F**

---

**fabulous (1)**
11:10
**face (2)**
20:6;64:6
**facetious (1)**
38:11
**facie (1)**
38:3
**Facilitate (2)**
45:17;48:17
**facilitates (1)**
35:15
**facing (1)**
30:2
**fact (14)**
10:22;14:4;19:15,17;
21:4;26:8;32:17;37:10;
41:24;53:4,23;86:11;
124:8;126:4

Min-U-Script®

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 141
of 154

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) documents - fact

**fail (1)**
10:7
**fair (1)**
94:8
**fairly (2)**
8:24;33:13
**fall (3)**
35:11,13;60:24
**familiar (7)**
11:2,6;78:17;88:4;
98:23;119:5;124:17
**famous (1)**
108:15
**far (5)**
45:22;56:22;78:19;
80:25;96:23
**fashion (1)**
73:14
**faster (1)**
121:17
**fast-forward (1)**
55:7
**favor (2)**
54:11;119:5
**feasible (3)**
10:7;26:18,19
**feasible's (1)**
26:19
**FEBRUARY (44)**
4:1;5:14;49:21;
67:14,23;72:10;73:20;
74:7,13,18,19,21;
75:11,15;76:18;77:1;
78:7;85:6;86:3,6,12,12,
22;87:16;97:7;98:5;
101:7,15,16;102:21;
103:1,13;106:9,25;
110:8;113:25;114:17;
115:15,20;117:20,20;
119:11;131:23;132:22
**federal (4)**
101:9;112:3;113:2;
128:23
**feds (1)**
112:7
**fee (2)**
33:18,19
**feeding (1)**
64:8
**feel (2)**
21:9;60:11
**feels (1)**
118:13
**fees (1)**
122:2
**Feld (2)**
52:4;64:22
**Felderstein (1)**
97:25
**Feldman (8)**
118:2,4;130:8,12,16;
131:8,14,16
**fella (1)**

66:9
**FEMA (3)**
100:24;102:16;
124:12
**fence (1)**
119:18
**few (8)**
6:1;13:6;46:1;49:12;
81:25;82:13;93:13;
102:22
**fewer (1)**
113:21
**fiduciaries (1)**
31:24
**fifteen (4)**
5:15;10:19;89:14,22
**fifteen- (1)**
124:25
**fight (1)**
58:23
**fighting (1)**
70:25
**figure (1)**
96:25
**file (25)**
8:3;54:22;55:23;
66:11;67:18;69:24;
70:10;73:21;74:11,14;
80:3,4,5,20,23;88:17;
94:1;98:14;99:2;
113:19;114:2;115:19,
21;131:20;132:21
**filed (38)**
5:4;7:4;20:19,22;
23:11;31:25;36:25;
37:14;41:13;67:19;
69:21;70:4;75:15;
76:18;77:15,16;97:9;
98:5;101:7;102:25;
104:6,12;105:19,20,20;
107:4,8,9;109:6;110:4;
111:21;115:23;118:3;
124:12,13;129:17,18;
130:13
**files (1)**
54:21
**filing (9)**
32:14,16,20;55:24;
66:17;83:9;94:17;
101:17;112:14
**filings (1)**
32:16
**final (40)**
40:12;41:1,18,21,22;
42:3,24;43:1,5;44:4,6,
8,8,13,19;45:11;46:1;
47:11,13;48:3,6,17,21,
22;49:21;50:6,7,18;
51:2;52:7,12,13;58:8;
60:14;62:8,23;79:25;
108:5,5;124:11
**finalize (1)**
119:21

**financials (3)**
30:8,9,15
**financing (6)**
4:13,17;13:22,25;
131:21;132:15
**find (4)**
12:3;26:17;83:23;
129:4
**finding (1)**
38:22
**fine (23)**
48:10;50:10;69:2;
75:6,24;77:12,12;
85:24;86:6,16;88:1,1,
104:10;109:17;117:12;
118:8;121:16;123:20;
129:23,25;130:2,5;
131:23
**finish (2)**
25:25;109:20
**fire (30)**
8:11;9:7,25;16:25;
17:18;26:23,23;28:23;
46:22;69:19;71:4;76:8;
81:15,17;82:1;84:4;
85:3;100:8,8;108:18,
19;109:16;110:15;
111:16;113:5,6;115:6;
119:15;121:21;125:19
**fire- (1)**
120:3
**fire-claim (1)**
99:12
**fire-claimant (2)**
118:22;119:14
**fires (4)**
19:16;29:19,21;
30:11
**fire-victim-geared (1)**
82:3
**firms (2)**
82:21;118:24
**first (25)**
6:17;8:16;9:1;11:18;
13:13;21:11;40:16;
41:20,25;50:5;51:25;
52:24;70:9;77:19;80:2,
19;81:8,25;83:2;87:16;
105:6;108:18;109:5;
118:17;128:5
**fit (1)**
95:14
**fits (1)**
93:24
**fitting (1)**
91:7
**Fitzgerald (1)**
97:25
**five (1)**
22:12
**five-billion-dollar (1)**
63:19
**flexibility (2)**

78:18;116:1
**flexible (2)**
84:20;126:14
**Florida (1)**
96:24
**flying (1)**
131:9
**focus (3)**
10:8;18:17,20
**focused (1)**
57:15
**focusing (1)**
41:10
**folks (8)**
11:22;22:16;24:19;
27:21;29:12,15;82:9;
121:13
**follow (5)**
8:2;16:4;33:11;
109:24;115:25
**followed (1)**
26:20
**following (3)**
9:9;12:14;96:6
**follows (1)**
65:11
**follow-up (1)**
133:9
**Fool's (1)**
91:8
**footnote (1)**
107:14
**force (2)**
42:8;45:1
**forceful (1)**
8:15
**forces (2)**
42:10;60:14
**foremost (2)**
11:18;105:6
**forget (3)**
12:25;56:1;104:6
**forgetting (1)**
37:17
**forgiving (1)**
102:6
**forgot (1)**
4:11
**forgotten (1)**
78:1
**form (7)**
29:16;73:6;87:12;
105:1,3;107:24;124:19
**formal (2)**
70:3;105:18
**forms (1)**
117:23
**forth (3)**
8:25;80:17;127:18
**forty (1)**
81:24
**forum (1)**
24:21

**forward (14)**
4:18;6:18;10:15;
23:19;27:2;30:12;
35:16;36:8;53:6;55:6;
56:5;61:4;129:5,7
**found (3)**
40:18;76:2;107:16
**four- (1)**
111:11
**fourteen (1)**
54:22
**fourteen-day (1)**
45:1
**frame (6)**
83:16;84:10,13,24;
95:2;125:24
**framing (1)**
10:22
**FRANCISCO (3)**
4:1;24:19;81:21
**frankly (3)**
75:7;119:7;125:21
**free (3)**
46:2;49:9,9
**freely (1)**
42:16
**Friday (4)**
5:5;32:15;36:25;
37:13
**frustrating (1)**
76:6
**Fulbright (1)**
117:6
**fully (3)**
11:23;38:7,8
**fulsome (5)**
105:10;107:7;
110:11;123:2,5;125:16
**functionally (1)**
95:20
**fund (2)**
17:13,20
**fundamental (1)**
10:2
**funds (1)**
9:21
**further (6)**
12:16;26:21;37:18;
38:14;80:5;88:17
**future (6)**
19:3;29:23;45:21,22;
46:11;109:2

**G**

**gain (1)**
15:6
**game (1)**
98:18
**gang (1)**
78:14
**Gap (1)**
25:16

Min-U-Script®

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 142
of 154

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) fail - Gap

**gave (1)**
54:10
**geared (3)**
82:1;83:22;109:10
**gearing (1)**
120:1
**general (2)**
84:13,21
**generally (4)**
24:16,17;82:13;84:9
**General's (1)**
98:2
**gets (4)**
35:25;37:25;38:1;
115:23
**Ghetaldi (22)**
83:7;109:23;118:17,
18,19,20,21;119:2,9,
12;120:7,10,13,20,24;
121:1,5,18;122:8,10,
12,15
**Gibson (1)**
43:14
**given (8)**
22:2;48:6;78:10,10;
96:1;121:10;125:24;
128:2
**giving (2)**
9:1;125:7
**glad (1)**
84:5
**goal (5)**
23:7;25:13;39:6,12;
123:12
**goals (1)**
23:1
**God (1)**
67:24
**goes (9)**
17:17;33:7,19;64:24;
75:13;77:21;93:20;
104:13;119:22
**Good (21)**
4:7,8;5:25;6:19,21;
12:14;26:25;48:20;
52:1,1,3;59:15;63:4,
12;64:21,24;66:3;76:4;
80:25;81:13;109:7
**good-faith (2)**
126:14;131:1
**Google (1)**
12:7
**gotcha (1)**
111:22
**gotchas (2)**
110:22;111:20
**Gotshal (1)**
31:15
**government (8)**
100:14,25;101:10;
112:3;114:11;117:10;
128:23,24
**governmental (7)**
77:22;100:15;115:4,
5,10;117:4;127:21
**governments (1)**
115:4
**governor (1)**
15:9
**governor's (4)**
10:3;77:23;132:8,9
**grant (1)**
42:21
**granted (1)**
58:25
**grants (3)**
47:23;48:13;53:21
**granular (5)**
83:10;105:10,19;
107:3,7
**great (2)**
61:24;113:12
**grid (1)**
107:1
**group (15)**
8:21,22;10:13;14:4,
6;18:21;22:16;40:3;
41:14;55:4;118:5,22,
24;119:14;122:24
**groups (2)**
15:11;119:10
**guess (16)**
12:19;23:23;47:25;
48:5;50:16;55:9,10;
59:9,19;70:21;72:2;
75:11;80:2;87:17;
118:21;126:16
**guest (5)**
72:15,18;78:3;95:23;
118:25
**Gump (2)**
52:4;64:22
**guy (1)**
37:2
**guys (2)**
20:2;102:20

**H**

**hallway (1)**
25:15
**handcuffing (1)**
27:19
**handed (4)**
15:13,13,15,21
**handle (1)**
122:6
**hands (1)**
44:24
**happen (6)**
28:2;34:8;47:8;
106:11,19;110:24
**happened (3)**
18:6;109:13;115:3
**happening (2)**
25:2;112:6

**happens (14)**
9:25;16:22;30:20;
34:9;35:3,6;36:5;42:6;
47:25;48:1,2;54:15;
58:16;129:3
**happy (5)**
50:11;117:9;119:3;
125:6;126:10
**harm (1)**
43:5
**hatchet (1)**
10:14
**Hauer (2)**
52:4;64:22
**headed (3)**
19:12,14;39:7
**heads-up (2)**
119:13,20
**Health (1)**
122:20
**hear (11)**
9:2;27:15;50:14;
51:11;84:5;88:8;96:4;
105:8;110:3;116:25;
129:6
**heard (26)**
7:15;30:24;51:12;
59:22;60:23;63:4;71:5;
73:17,19;75:16;76:22;
85:20;96:5,24;97:3;
98:11,25;112:21,24;
115:8;117:1;118:15;
121:21;122:16;125:12;
130:20
**hearing (42)**
5:5;7:13,20,22;
26:17;57:24;70:2;
71:16,18;72:3;73:8,9,
19,20;74:13,16;78:16;
80:23;87:11;88:22;
91:21,25;95:9;96:16;
97:4;104:11;107:10,
20;110:11,17;113:12,
22;114:9;116:12;
121:11;127:25;128:14,
18;130:19,24;131:9;
133:7
**hearings (4)**
4:21;37:6;88:8;
128:9
**heart-to-heart (1)**
48:14
**hedge (1)**
9:21
**hedged (1)**
13:14
**help (3)**
96:25;121:7;125:23
**helpful (1)**
76:2
**helping (1)**
27:5
**here's (5)**

15:21;16:21;22:24;
97:8;128:7
**higher (2)**
16:9;46:11
**highly (2)**
39:3;63:6
**Hinker (4)**
132:12,12,16;133:3
**hit (1)**
41:6
**hoc (2)**
13:8;52:5
**hold (2)**
78:5;131:7
**holdings (1)**
33:21
**holes (2)**
16:11,12
**holiday (2)**
102:24;132:24
**homes (2)**
11:20,23
**homework (1)**
119:6
**hominem (1)**
127:9
**honest (1)**
37:1
**Honor (104)**
4:8;5:9,16;10:21;
16:3,15;17:2;22:22;
25:4,14;27:19;29:8;
30:22;31:2,17;34:24;
40:6;43:13,17;46:3,23;
50:9,23;51:19;52:3,6,
14,24,25;53:8,11,14,
18;54:2,21,25;55:19;
56:11,19;57:14,22,25;
58:18;59:24;61:7;63:3;
64:17,21;65:10,21,22;
66:3;67:18;72:6;81:1;
82:11,15;84:24;85:9;
89:6;92:23;93:10;
96:14;97:19,24;98:3,
23;99:9;101:2,19;
102:1;103:4,8,19;
104:5,19;106:8;110:3,
13,14;111:1;112:1,20;
113:1;114:8;118:19;
119:3,12;120:10;
121:2,18;122:10,18;
124:7;126:1;127:7,12,
14;130:8;131:3,6,14;
132:16;133:3
**Honorable (1)**
4:6
**Honor's (2)**
53:19;56:22
**hope (9)**
26:23;46:15,19;88:2,
4;96:21;116:4;126:20;
129:13
**hopefully (1)**

52:15
**hoping (2)**
98:19;129:22
**horizons (1)**
23:17
**horrible (1)**
46:22
**hour (1)**
89:4
**hours (1)**
66:10
**huge (3)**
21:23;29:23;48:25
**hundreds (1)**
82:21
**hurry (2)**
21:14,16
**hypothetical (1)**
48:6
**hypotheticals (1)**
108:16

**I**

**idea (3)**
20:4;46:25;76:4
**identified (1)**
125:9
**identify (2)**
25:18,20
**ignore (1)**
8:1
**ignored (1)**
42:14
**ills (1)**
30:6
**imagine (4)**
5:1;57:21;87:3;
123:22
**immediately (1)**
34:9
**impact (2)**
48:9;118:1
**impair (1)**
39:11
**impaired (3)**
66:13;80:10;97:17
**impeachment (1)**
88:8
**impede (1)**
23:8
**implemented (1)**
122:23
**implication (1)**
43:25
**implications (3)**
11:13;14:21;21:25
**import (1)**
86:4
**importance (1)**
120:16
**important (7)**
23:1;26:20;31:24;

Min-U-Script®

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 143
of 154

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(8) gave - important

73:12;78:19;82:14;
84:24
**importantly (2)**
19:5;97:5
**impose (3)**
55:15;113:16;128:4
**imposing (1)**
68:8
**improved (1)**
13:15
**inappropriate (1)**
100:19
**inclined (5)**
27:14;42:16;43:4;
60:3;113:25;114:15
**include (6)**
50:21;65:13;69:19;
77:4;87:17;119:2
**includes (2)**
65:12,16
**including (2)**
15:11;87:5
**inconsistency (2)**
62:8,9
**inconsistent (1)**
32:17
**incorporated (1)**
23:21
**incorrect (1)**
68:24
**indiscernible (1)**
113:10
**inflated (1)**
126:5
**influence (3)**
123:23,25;126:23
**information (2)**
107:21;109:14
**informed (3)**
29:6;7;82:10
**infringement (1)**
45:25
**inherent (1)**
38:24
**initial (2)**
83:24;106:9
**initially (1)**
105:3,20
**injured (1)**
19:18
**input (3)**
27:21;68:19;79:7
**inquiry (1)**
123:24
**installments (1)**
108:24
**instruct (1)**
128:11
**instructed (1)**
98:20
**intend (3)**
4:17;61:12;132:17
**intention (4)**

66:2,17;104:21,22
**intentional (3)**
78:1;79:19,20
**interest (12)**
34:19;39:20;40:12,
18,19;41:3,10;42:18,
23;46:20;49:6;53:4
**interested (5)**
41:15;60:12;78:9;
127:25;128:5
**interesting (1)**
124:8
**interfere (1)**
82:7
**interim (1)**
119:25
**interlocutory (35)**
42:18,19,24;43:2,3;
44:2;45:3,8,17,19;
49:20,23;50:7;52:9,12;
53:17,24;54:13,24;
55:1,4,24;56:14;58:17;
59:4;60:4,20,24;61:4,
15,23;62:11;63:1,5;
64:14
**interlocutory-appeal (1)**
56:23
**intermediate (3)**
49:2;62:18,21
**interpret (2)**
32:11;123:12
**interpretation (1)**
124:3
**interviewing (3)**
120:21,23;121:1
**into (5)**
12:16,21,22;15:6;
19:21;23:21,22;24:1;
30:5;44:24;50:20;
60:18;62:2;71:6;77:20;
88:6;93:13;104:4;
106:24;107:1;108:22;
115:11;116:12;126:6;
128:9
**inverse (1)**
53:10
**investment (4)**
13:15;23:14,16;
120:17
**investor-owned (1)**
17:19
**invitation (3)**
79:24;95:24;119:1
**invite (1)**
62:2
**invitees (1)**
97:4
**inviting (1)**
67:20
**involved (4)**
60:18;99:16;101:3;
119:6
**IOUs (1)**

17:15
**Iowa (1)**
96:25
**issue (48)**
26:12;29:9;30:3;
35:22;39:24;40:14,19;
41:7;43:1;45:5,7,15,
15;47:5;48:20,21;49:8;
52:8,24;53:5,15;54:2;
55:13;59:12;60:24;
61:9,15;65:12;91:17;
100:9,10;101:2,10;
102:15;112:22;113:25;
114:23,24;115:6;
117:4,7,10;125:12,13;
127:5;128:1,6,22
**issued (15)**
40:8;41:16;42:1;
44:2,4,7,7,8,13;45:3,
19;59:13;63:22;66:9;
85:5
**issues (24)**
8:24;10:2;24:20;
26:11;32:4;34:21;39:5;
57:22;58:10;59:3;
74:15;87:4;96:13;
99:17;101:5;103:5;
112:21;116:7;117:8;
118:16;124:8,9;
128:14;133:9
**item (7)**
4:11;70:18;98:11;
123:21;127:16,17;
128:5
**items (5)**
4:11;70:3,4;71:11;
84:13

**J**

**January (2)**
27:6;67:11
**jeopardize (1)**
43:8
**jeopardy (1)**
29:23
**John (1)**
120:11
**Johnson (1)**
20:19
**joinder (1)**
7:6
**joined (1)**
130:15
**joint (1)**
10:9
**Judge (13)**
24:10,12,12,12;27:1;
40:21,22;41:20;46:20;
57:4;64:24;88:5;
132:12
**judges (2)**
56:9;64:6

**judgment (4)**
10:16;11:6;12:14;
116:22
**July (2)**
49:21;51:15
**June (13)**
15:8;16:21;17:17;
22:12;23:7;28:7;35:16;
49:20;53:22;55:7;
56:21;58:14;95:16
**jurisdiction (2)**
29:19,21
**Justice (3)**
113:2;120:11;121:14

**K**

**Karotkin (292)**
4:10,16,22,25;5:6,8,
11,16,19,21,24;6:3,5,7,
10,12;7:14,22;20:1;
27:7;30:24;31:1,2,5,14,
15,15,20,22;32:10,12,
14,23;33:9,12,17;34:1,
5,11,15,17,20,22;35:5,
7,13,19;36:1,4,7,11,13,
16,19,22,24;37:8,13,
16,19,22;38:6,11;
48:14;51:11,21,23,25;
59:22;60:1;64:19,24;
65:11;66:5,7,17,21,23,
25;67:4,6,9,11,13,17;
68:4,6,10,16,18,21,24;
69:2,5,8,10,12,18,23;
70:1,6,8,14,21;71:10,
13,15,18,23,25;72:5,8,
13,16,19,21,24;73:2,4,
6,13,18;74:1,3,6,9,11,
23;75:1,6,9,17,19,22,
24;76:4,11,13,16,21,
23,25;77:4,8,11,13;
78:14,23;79:1,4,7,10,
16,18;80:18,25;81:4,7,
14,16,20,23;82:3,6,24;
84:3;86:2,6,10,13,15,
21,25;87:3,8,14,20,22,
25;88:3,15,19,21,25;
89:2,6,9,12,18,21,24;
90:3,7,10,14,17,21,24;
91:1,5,9,12,14,24;92:4,
6,8,14,17,23;93:3,6;
94:9,11,13,21,25;95:9,
11,15,18,22,25;96:10,
12,14,18,21;97:2,9;
98:9;99:18,23,25;
100:3,6,12,14,17,19;
101:13,21,25;102:7,10,
22;103:4,9,12;106:22,
23;112:11,14,17;
114:10;115:13;116:8,
14,18,21;117:12,14,16,
18,22,24;118:6,8,10,
13;119:9;128:11,24;

129:14,22,25;130:2,5;
131:17,18,20,23;132:1,
3,7,19,23;133:1,11,13,
15,17
**keep (5)**
30:10;74:17;102:19;
125:6;130:22
**keeps (2)**
22:11;25:2
**KELSEY (57)**
40:6;43:13,14,16,17,
20,25;44:7,11,17,21;
45:23;46:3,7,15,23;
47:16,21,24;48:5,7,16,
23;49:24;50:9,13,15,
22;51:1,6,8,10,19;
55:10;60:7;61:2,7,19,
21,23;62:4,11,13,15,
17,19,24;63:2,9,11,16,
23,25;64:4,10,13,17
**kept (1)**
14:20
**keys (1)**
9:20
**kind (5)**
36:17;47:12;73:4;
85:13;86:5
**kinds (1)**
27:1
**kinks (1)**
85:25
**knowledgeable (1)**
10:24
**knows (1)**
103:4
**Kornberg (1)**
95:21

**L**

**lack (1)**
127:8
**laid (1)**
38:3
**language (5)**
44:14;94:6,7;106:24;
107:1
**large (4)**
10:10;13:13;30:2;
113:8
**largely (2)**
14:20;38:12
**last (23)**
9:5;13:22;17:14;
25:5;37:13;41:9,16;
46:17;56:19;77:1;
79:20;84:16;87:18;
91:11;92:2;96:1,7;
109:25;113:4;114:20;
126:16;130:19;131:18
**late (2)**
78:7;109:25;115:9
**later (13)**

Min-U-Script®

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 144
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
of 154

(9) importantly - later

6:7;25:2;29:5;69:21,
25;70:4;104:4;106:11;
115:20;116:7;124:9;
129:18;131:13
**laugh (1)**
96:24
**Laughter (2)**
37:24;63:18
**law (12)**
15:21;16:5,5,7;21:3;
46:16;82:21;88:12;
115:25;116:1;118:24;
126:4
**laws (1)**
11:2;21:2
**lawsuit (1)**
45:5;54:11
**lawyer (1)**
109:12
**lawyer-friendly (1)**
105:19
**lawyers (20)**
7:22;20:2;77:18;
78:21;82:17,18;88:4;
89:25;92:20;93:17;
97:14;119:6;121:20;
122:1,2;124:16;125:7;
126:25;128:12;131:9
**layman (1)**
12:19
**laypeople (1)**
106:10
**layperson (2)**
83:4;105:5
**leads (1)**
42:20
**learned (1)**
61:13
**least (10)**
39:2;42:14;50:5;
68:11;93:18;97:5;
119:25;121:23;127:24;
128:1
**leave (15)**
27:13;44:10,12;
45:20;47:23;48:13;
53:21;55:13,25;56:24;
57:3;58:25;61:17;62:9;
129:1
**leaving (1)**
87:16
**led (1)**
115:3
**left (5)**
65:8;90:10;98:20;
118:13;129:4
**legal (8)**
8:15;26:12,18;38:23;
47:4,4;63:4,12
**legislation (1)**
16:11
**legislative (1)**
15:19

**legislature (3)**
15:10,16;17:12
**legitimate (1)**
79:23
**lend (1)**
41:4
**less (1)**
68:12
**lets (1)**
29:6
**letters (1)**
4:23
**letting (3)**
94:18,18;109:10
**level (7)**
9:24;43:11;49:8;
50:5;54:4;59:9;105:12
**leveraging (1)**
21:15
**lien (1)**
14:16
**liens (5)**
13:16,17,18,20;14:9
**likely (5)**
26:20,20;27:9;97:18;
122:23
**limited (2)**
8:21;41:13
**line (4)**
40:8;60:13;66:9;
88:16
**lined (1)**
120:19
**lines (1)**
22:17
**link (1)**
53:12
**liquidate (2)**
27:11,12
**liquidated (1)**
114:18
**list (22)**
8:16;72:15,18;77:7,
8,24;78:3,3,7,12;79:24;
87:23;95:23,24;97:4,
11,18;118:25;119:1,3,
10,11
**listed (3)**
78:7;87:18;97:7
**listen (5)**
8:5;9:5;59:19;116:1;
119:4
**listing (1)**
124:22
**litigated (1)**
50:4
**litigating (1)**
35:8
**litigation (1)**
35:7
**little (16)**
12:16,18;17:8;25:6;
32:21;66:9;68:15,16;

72:12;93:1;103:11,11;
107:14;116:9;128:18;
130:19
**lived (2)**
33:3,4
**living (1)**
22:17
**lobbied (1)**
15:7
**lobbying (3)**
9:11;15:11;16:10
**lobbyists (1)**
18:7
**locally (1)**
24:18
**lodge (2)**
80:3,6
**logical (1)**
36:2
**logically (1)**
64:2
**lone (1)**
38:5
**long (15)**
4:25;11:14;39:15;
49:17;56:23;60:20;
80:21;81:2,4,18;95:5,6,
18;109:24;119:2
**longer-term (1)**
23:17
**long-term (1)**
10:17
**look (34)**
11:25;20:18;21:13;
24:11,23;28:1;30:4;
45:3,18;55:13;56:7;
60:5;63:23;64:6;67:7;
68:11;70:8;72:11;73:7;
74:6,7,15;79:1;81:19;
85:7;86:11;87:9;93:7;
98:9;103:10;108:12;
113:20;114:22;123:20
**looked (3)**
12:17;85:4;112:13
**looking (8)**
11:12,13,22;16:6;
24:1,19;67:14;86:2
**loop (1)**
112:5
**lose (1)**
46:12
**loss (1)**
109:1
**lost (2)**
47:13;57:9
**lot (19)**
12:4;13:19;14:3,4;
30:5;37:25;45:4;49:1,
21;70:12;80:11,22;
85:7;93:12;95:1;
103:13,20;109:14;
121:22
**lots (7)**

27:2;58:10;59:17;
60:12;68:12,12;121:22
**loud (1)**
98:22
**love (1)**
56:9
**lower (2)**
17:3,8
**luck (1)**
45:21

## M

**mail (1)**
93:13
**mailing (1)**
91:3
**maintain (1)**
5:9
**major (13)**
10:13;17:14;26:23;
32:24;35:14;38:4,5;
39:18;48:21;76:2;
77:19,20;80:7
**majority (1)**
99:21
**make- (2)**
53:12;64:1
**makers (2)**
21:4,5
**makes (6)**
13:20;47:25;60:13;
68:4,6;119:7
**make-whole (10)**
34:12;35:8,22;39:4;
40:19;41:3,7;49:6;
59:12;63:15
**making (7)**
29:21;41:1;42:8;
45:17;49:10;80:15;
84:16
**management (3)**
9:22;10:8;26:25
**Manges (1)**
31:16
**Manhattan (3)**
76:10,13;81:21
**manifestly (1)**
12:17
**many (11)**
16:9;20:25;30:6,11;
39:5;40:20;52:25;
66:10;82:16,18;118:1
**march (29)**
23:7;77:11,15,16;
78:6;79:14,17;80:2,4,5,
19;81:8;87:16,17;
88:15,17,21;90:19,22;
91:9,11,17;92:2;94:5;
98:5;99:2;101:8;
113:24;128:4
**married (1)**
63:14

27:2;58:10;59:17;
**mass (1)**
100:23
**master (2)**
79:21;87:5
**masters (1)**
88:8
**matched (1)**
4:20
**materials (7)**
69:20;70:16;71:9;
74:14;84:3;89:19;92:4
**Matt (1)**
132:12
**Matter (12)**
4:9;15:12;31:6;39:4;
45:4;49:15;57:3;64:18;
67:19;88:12;90:4;
93:15
**matters (5)**
49:6;61:14;127:19;
128:15;133:8
**Matthew (3)**
43:13;113:1;127:12
**may (38)**
8:14;15:10;27:3;
32:4;33:15;41:19;
55:22;58:10;61:12,13;
63:11;70:22;72:19;
82:21;83:7,8;84:13;
90:7,8;91:2;92:24,24;
93:3,8;94:9,10,23,25;
95:1,4;96:8,8;99:16;
101:9;108:2,5;114:14;
125:12
**maybe (12)**
17:12;21:2;41:19;
48:12,14;49:12;51:7;
55:22;62:7;71:4;75:12;
92:25
**mean (42)**
5:3,14,22;12:11;
13:10;33:3;36:23;
42:23;44:15;46:13,17;
47:12;50:9;51:8;56:16;
57:5;58:3,19;59:5,9,
25;60:5;64:8;70:17;
71:24;72:4;80:8,20;
87:4;91:4;92:18;
101:13,21,22;102:1;
112:13,14;116:25;
121:13;122:6;126:4;
132:5
**meaning (1)**
110:17
**means (3)**
14:9;35:20;104:20
**meant (4)**
18:8;91:6,6;120:24
**measurable (1)**
108:21
**measure (1)**
13:14
**mechanisms (1)**

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 145
of 154

82:16
**media (1)**
119:4
**mediation (1)**
106:17
**meet (3)**
78:11;98:25;106:1
**meet-and- (2)**
80:15;117:9
**meet-and-confer (6)**
75:20;85:13;86:1;
116:9;126:10,21
**meet-and-confer-and- (1)**
124:1
**meeting (1)**
18:14
**mem (1)**
61:14
**members (3)**
79:13;92:21;125:19
**memo (1)**
127:18
**memorandum (4)**
40:8;41:9;51:2;63:3
**Memorial (1)**
96:11
**mention (2)**
8:4;104:5
**mentioned (4)**
11:17;98:4;110:19;
112:23
**merit (1)**
57:21
**merits (2)**
39:23;43:12
**mess (1)**
47:12
**message (3)**
48:20;50:10,15
**messages (1)**
22:2
**messing (1)**
124:5
**methods (1)**
70:23
**mid (1)**
11:14
**middle (1)**
45:13
**mid-range (1)**
39:15
**might (11)**
8:4;12:9;23:24;37:1;
40:2;42:11;44:14;
49:22;95:6,6;116:8
**million (1)**
113:5
**mind (18)**
5:3;10:3,3,4,4;17:13;
23:4;38:13;67:24;68:5;
74:17;82:6;93:18;97:6,
21;121:16;123:10;
125:6

**mindful (3)**
84:19;122:9,10
**mine (1)**
61:5
**minor (1)**
77:20
**minor/major (1)**
48:24
**minority (1)**
121:25
**minute (5)**
39:12;79:13,20;
112:23;126:16
**minutes (3)**
10:19;31:10,13
**mismanagement (1)**
9:9
**misspoke (1)**
101:12
**misunderstanding (2)**
33:18;104:22
**Mitchell (1)**
132:10
**mitigation (1)**
30:8
**mixed (1)**
22:2
**modify (1)**
91:19
**moment (1)**
112:8
**Monday (3)**
131:23;132:2,22
**money (10)**
9:15;14:3,4;39:4;
46:12,13;48:8,25;49:1;
50:16
**monopoly (1)**
30:6
**Montali (5)**
4:6;24:12,12;46:20;
76:7
**month (3)**
91:2;92:21;118:3
**months (5)**
22:12;46:1;49:12;
52:25;85:6
**moot (2)**
46:5,9
**mooted (1)**
115:3
**morass (1)**
35:8
**more (36)**
10:17;12:18;15:2,4,
5;21:1;22:22;25:12;
32:4;33:4;37:12;38:4;
78:2,19;83:2,4,9,10;
86:17;87:9;97:4;101:9;
105:10,11,12,18,19;
107:3;110:10;113:23;
119:5,23;121:17;
123:2,5;125:16

**morning (9)**
4:7,8;6:10,19,21;
52:1,3;64:21;80:23
**most (7)**
19:5;39:7;76:5;
84:24;122:23;127:1;
132:6
**mostly (2)**
38:17;86:17
**motion (37)**
7:1,2;8:3,25;9:6;
10:9,9,18;12:11;20:1;
31:23;38:3;42:9;45:9,
20;55:12,25;56:12;
57:3;70:3,10,19;74:25;
75:3;111:13;115:21;
129:5,8,19;130:9,13,
17;131:1,5,10,21;
132:15
**motions (1)**
38:4
**move (14)**
10:15;23:9;55:6;
84:22;90:7;93:1,19;
94:23,25;102:21;
103:10,11;115:10;
121:17
**moving (5)**
26:6;30:12;35:15;
45:4;130:23
**much (10)**
10:22;38:24;39:4;
56:8;57:16;66:3,4;
78:20;84:22;127:8
**multi-billion-dollar (1)**
26:12
**multiple (1)**
66:18
**must (3)**
57:19;91:21,23
**Myers (1)**
132:13
**myself (4)**
12:9,19;27:20;68:8

## N

**national (1)**
74:5
**nature (2)**
114:9,14
**near (1)**
19:2
**necessary (6)**
29:4;33:7;70:13;
74:20;127:18;128:12
**need (44)**
4:19;14:22;20:6,12,
12;26:2,21;27:9;30:8,
14,14;75:3,16;76:9;
79:24;82:9;83:12;89:4,
25;98:9;102:20;105:5,
6,13,14;108:2;111:6;

114:19,20;119:20,24;
120:16,17,17;121:8,11;
122:4;123:15,19;
124:23;126:6;127:8;
128:23;131:13
**needed (1)**
75:5
**needing (2)**
31:9;39:3
**needn't (1)**
38:15
**needs (5)**
21:1;29:24;103:5;
118:23;123:8
**negotiate (2)**
50:1;54:13
**negotiated (3)**
26:8,13;96:13
**net (1)**
109:1
**Neumeister (1)**
40:4
**nevertheless (1)**
121:25
**new (5)**
38:12;40:10;44:2;
66:11;79:22
**news (1)**
103:18
**next (18)**
4:21;7:24;8:16;
19:16;23:5;48:2;54:4;
73:7;101:7;102:14;
128:15;129:3,20,22;
132:22;133:7,8,12
**nice (1)**
62:4
**night (4)**
9:5;32:15;41:16;
111:21
**Ninth (2)**
46:19;53:20
**noble (1)**
11:21
**nobody (3)**
12:12;110:18;112:5
**nondisclosure (1)**
28:12
**none (3)**
14:24;31:24;62:13
**non-PG&E (1)**
57:2
**nonresponsive (1)**
88:8
**nonvoting (1)**
71:15
**noon (1)**
132:25
**normal (6)**
8:20;38:1;45:14,14;
110:24;125:16
**normally (5)**
37:23;38:9;65:25;

87:5;125:15
**Northern (1)**
30:1
**Norton (1)**
117:6
**note (3)**
31:24;118:11,12
**noted (4)**
43:22;56:22;66:15;
124:11
**noteholder (5)**
52:5,15;65:14,17,20
**noteholders (8)**
11:18;33:19;34:22;
35:15;44:21;53:25;
64:23;65:15
**notes (3)**
33:22;65:12,16
**notice (38)**
5:22;54:21,23;55:23,
24;68:13,14;69:12,14,
19;70:2,9,15;71:14,15,
15,18;72:3,10,11,13;
79:3,18;89:16,17,19;
90:11;91:21;92:3,7;
93:20;94:8;121:10
**noticed (1)**
70:19
**notices (2)**
67:22;72:5
**notified (1)**
74:13
**notify (1)**
69:23
**notifying (1)**
71:25
**notion (1)**
41:1
**number (6)**
9:6;23:12;98:12;
99:21;120:21;122:4
**numbers (2)**
5:17;108:20
**Numerosity (1)**
100:9
**numerous (2)**
82:19,25

## O

**object (7)**
70:17;75:16;87:18;
88:11;111:23;123:25;
126:17
**objected (5)**
102:8,8;111:6,8;
113:7
**objecting (7)**
78:11;93:20;97:15;
122:25;124:18;127:4;
132:21
**objection (33)**

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 146
of 154

7:24;8:19,21;9:5;
14:19;39:21;41:13;
43:21;60:4;71:19;78:8;
79:23;87:23;94:2,2;
98:11,14,15;99:1;
110:20,23,24;111:18;
113:17,18;114:3;
115:16,19;124:13,24;
132:7,15,18

**objections (30)**
6:2;13:12;31:25;
38:19;39:14,24;61:10;
71:22;77:4,14;80:4,11;
92:1,11;95:8;97:10;
98:4,19;101:7;102:15;
111:21;114:1,14;
124:12;125:4;127:22,
22;128:2;132:4,25

**objector (3)**
11:10;94:17;115:22

**obligations (1)**
65:16

**observation (2)**
124:11;125:25

**observations (1)**
39:14

**observe (2)**
42:17;80:22

**obviously (10)**
6:25;17:3;59:13;
69:13;73:16;77:20;
104:9;110:18;115:2;
126:20

**occasion (2)**
40:10;41:2

**occasions (4)**
7:5;42:13,14;57:9

**occur (2)**
19:16;29:21

**o'clock (2)**
133:5,6

**oddball (1)**
44:13

**OES (2)**
102:16;124:12

**off (6)**
21:6;33:7;58:20;
125:10;126:25;130:18

**offer (2)**
96:17;113:20

**offered (1)**
96:24

**Office (4)**
77:23;98:2;132:8,9

**OFFICER (2)**
25:14,19

**official (7)**
39:18;77:20;82:12;
84:11;123:13,14,16

**off-ramps (1)**
33:6

**often (2)**
14:21;94:19

**old (1)**
65:4

**O'Melveny (1)**
132:13

**once (4)**
41:6,6;57:23;91:20

**one (80)**
4:20,20,24;5:1,4,13;
8:8,21;9:4;12:10;13:7;
17:15;18:21;26:22;
27:12;33:6,14;35:23;
38:20;42:8,14;43:7,21;
45:16,16;47:3,9,10,13;
51:22;54:21;55:20;
56:1;57:16;60:12;
61:24;62:3,4;63:22;
64:25;72:23;76:5;78:2;
79:12;81:8,12;82:14,
14;83:4;86:8;90:9;
92:14,21;96:8,16;98:3;
101:13,13,15,21;
103:10,15;105:24;
107:14;108:15;110:14;
111:7,10;114:16;
115:17;117:16;119:19;
122:24;124:11,16;
128:13;130:4,10,11;
131:18

**one- (1)**
81:17

**one-claimant-one-vote (1)**
114:16

**one-dollar (1)**
101:22

**ones (1)**
13:19

**ongoing (4)**
37:8,9;86:1;112:2

**only (15)**
10:1;11:10;13:25;
17:15;22:12;27:10;
36:22;49:23;52:6;54:4;
66:10;72:22;88:11;
129:4;132:7

**oOo- (1)**
4:3

**open (3)**
94:14;128:22;129:1

**opening (1)**
93:13

**operating (1)**
109:1

**operative (1)**
123:21

**opinion (3)**
23:7;40:2;63:6

**opponent (1)**
50:3

**opponent's (1)**
38:10

**opportunity (7)**
29:11,13;68:9;72:23;
73:17,18;124:4

**oppose (2)**
56:12;123:23

**opposed (2)**
71:2;106:16

**opposing (1)**
20:20

**option (5)**
15:20;19:17,18;
29:15;55:10

**optional (1)**
53:13

**ordeals (1)**
128:9

**order (86)**
4:4;9:8;33:20,25;
39:24;40:11,12,15;
41:18,22;42:3,17,22;
43:1,2,5;44:2,4,6,7,8,8,
13,20,22,24;45:3,6,8,8,
10,19;46:1;47:5,11,13;
48:3,6,17,17,21,22;
49:4;50:6,7,8,18;51:2;
52:8,9;53:14;55:24;
58:7,16;59:4;60:3,20,
24;61:10,16,24;62:8;
63:7;64:4,15;65:21,24,
24;67:7,7;87:12;91:10,
17,19,20,21;95:14,14;
105:6;113:25;115:14,
23;119:21;129:1;
133:11,12

**ordered (1)**
63:5

**orders (7)**
41:1,21;42:19;45:15,
15;63:14,22

**original (1)**
63:25

**originally (1)**
130:13

**others (10)**
7:14;27:7;28:20;
30:24;38:7;42:11;
77:24;93:16;95:21;
101:9

**otherwise (1)**
78:24

**ought (1)**
58:1

**out (65)**
4:25;5:16;10:1;
14:22;19:16;22:11;
25:17,20;27:5;28:2,5;
32:22;38:3;44:12;
45:21;46:5,9;48:3;
49:5;57:5,13;59:2,4;
61:1;62:5;63:6;64:4;
67:22;68:13,24;69:14;
70:15;72:5;75:13;76:2,
3;78:9;80:21;82:8;
83:23;84:25;85:25;
87:15;89:18;90:10,12;
93:20;96:25;97:13;

102:20;103:21;104:13;
106:16;108:16;109:1;
111:23;112:5,7;
115:14;117:8;118:13;
121:23;128:25;129:5;
131:10

**outcome (2)**
47:14,18

**outline (5)**
70:10;94:5;104:17;
106:3,16

**outs (1)**
14:25

**outside (2)**
24:16;27:19

**outspoken (1)**
8:24

**outstanding (2)**
77:15;99:1

**over (7)**
13:6;22:11;24:22;
29:19;56:8;67:22;88:6

**overdoing (1)**
127:1

**overrule (4)**
10:9,15;38:19;39:23

**overrules (1)**
61:10

**overseeing (1)**
27:5

**oversight (1)**
78:1

**oversimplify (1)**
45:19

**own (9)**
10:22;31:4;37:6;
39:17;44:2;60:16;61:3;
86:11;97:1

**ownership (1)**
24:20

**P**

**page (14)**
67:15;74:9;79:1,2,4,
9,10;86:3;88:10,14,15;
89:7;104:17;117:19

**pages (2)**
81:24,25

**paid (8)**
11:22;33:24,25;34:1;
83:23;105:7;108:24,25

**pamphlet (3)**
123:14,14,16

**Panel (3)**
40:22;41:24;49:22

**paperwork (1)**
94:3;105:6

**Parada (1)**
94:14

**parallel (2)**
37:1,3

**Pardon (1)**

100:4

**part (15)**
10:14;13:24;14:18,
19;15:5;16:5,18;17:19,
24;18:5;19:13;21:10;
30:5;72:3;132:6

**parte (1)**
121:11

**participant (1)**
32:6

**participate (1)**
117:9

**participating (2)**
93:18;116:11

**particular (1)**
48:10

**particularly (4)**
21:3;71:3;80:10;
125:7

**parties (24)**
11:16;14:24;15:8;
16:23;19:15;20:11;
21:12,25;24:21;25:1;
26:13;45:16;49:5;
63:11;69:16;77:14,25;
93:20;97:5,6;98:20;
114:18;124:18;125:18

**parties-in- (1)**
39:19

**parties-in-interest (1)**
61:25

**partner (1)**
119:2

**parts (2)**
30:2;45:4

**party (6)**
50:17;51:13;54:21,
22;62:6;123:17

**Pascuzzi (51)**
97:8,9,17,19,22,24,
24,25;98:8,16,22;99:4,
6,8,25;100:5,6;101:2,
15,19;102:14,18,23,25;
103:3,4,7,14,19,23,25;
104:3,8,15,20;107:5;
109:20,22;110:3,7,9,
13;111:6,7,10,16;
112:20;113:9;114:24;
116:4,10

**Pascuzzi's (1)**
102:2

**passed (2)**
21:12;112:16

**passionate (1)**
17:3

**past (4)**
54:7;55:7;110:1;
117:7

**patent (1)**
45:25

**path (3)**
12:15;56:23,24

**Paul (1)**

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 147
of 154

97:24
**Pause (1)**
92:16
**pay (1)**
11:23
**payouts (2)**
11:13,19
**peeves (1)**
5:1
**penalties (1)**
30:12
**pending (2)**
58:4;102:15
**penny (2)**
108:18;114:20
**people (44)**
11:21;14:19;16:12;
19:6;22:17;29:2;34:5;
42:8;56:9;60:14;69:23;
70:2,6,17,22;72:17,23;
73:16,18;74:13;75:14;
78:7;82:17,22,25;87:3,
9,18;93:12;105:5,16;
106:17;108:6,20;
109:11;118:1,2;119:4,
10;120:21;121:23;
122:5;124:22;125:21
**perceived (1)**
18:10
**percent (1)**
119:15
**perfect (1)**
46:24
**performing (1)**
49:14
**perhaps (8)**
7:1;21:1;26:10;69:8;
72:21;101:8;104:21;
108:20
**period (1)**
78:15
**permit (1)**
101:23
**permits (1)**
116:1
**persisting (1)**
132:14
**person (4)**
11:1,4;29:6;78:14;
83:5;128:20
**personal (1)**
9:24;17:4;59:9;61:3
**personally (2)**
42:6;51:14
**perspective (3)**
35:3,3;52:15
**persuade (7)**
20:24;23:25;27:8;
56:6;60:21;126:19;
131:1
**persuaded (2)**
8:11;35:4
**persuading (1)**

78:23
**pet (1)**
5:1
**petition (1)**
41:10
**petition-interest (1)**
52:24
**PG&E (22)**
4:9;9:7,22;10:1;
11:22;13:18;17:24;
18:5,8,12,14;19:14,18;
22:15,16;24:24;27:20;
30:6,13;41:25;125:3;
133:7
**PG&E's (4)**
12:13;17:11,17;
108:23
**phone (14)**
65:8;76:10,14;81:21,
22;112:21,25;128:17;
129:24;130:1,3;131:8,
15;132:11
**phones (1)**
65:7
**phrased (1)**
51:9
**physical (1)**
128:9
**picket (1)**
119:18
**picking (1)**
113:4
**piecemeal (1)**
40:23
**pike (1)**
120:15
**pin (1)**
5:12
**pipeline (1)**
55:14
**place (5)**
13:13;24:23,24,25;
25:1
**placed (1)**
99:16
**plain (1)**
68:14
**plaintiff (4)**
45:5;54:11,12,13
**plan (55)**
4:14;10:7,7;13:10,
11,13,15;18:25;19:7;
20:16,18,19;23:22,24;
26:6,10,17;27:8,8;28:2,
4;32:16,20,20;34:10,
13;35:24,24;36:13,20,
22,24;37:4;46:10;
49:19;52:16;55:8;
57:25;64:20;66:12;
71:11;78:17;79:14,15;
80:4;88:12,18;110:14,
15,19,23;115:3,3,10;
126:23

**planning (1)**
20:20
**plans (1)**
30:8
**plan's (1)**
110:20
**played (1)**
49:4
**player (3)**
38:5,6;48:21
**players (7)**
38:5;39:18;71:3;
76:2;77:19;80:7;86:8
**playing (1)**
19:21
**plays (1)**
15:6
**please (6)**
6:18;25:6,18;48:21;
78:3;125:6
**pleased (1)**
59:13
**pleasure (2)**
31:8;122:25
**plenty (2)**
29:2;104:15
**plugged (1)**
106:24
**plural (1)**
66:14
**plus (1)**
133:8
**PM (1)**
133:18
**podium (1)**
12:12
**point (26)**
5:14,16;9:16;16:4;
19:12;23:12;29:12;
38:6,18;43:10;53:25;
54:5;56:19;58:1,7,12,
24;59:1;63:2;75:21;
108:14;110:14,16;
113:4;124:18;126:22
**pointing (6)**
21:11;26:14,15;32:8,
8;37:2
**points (7)**
9:6;11:24;28:10;
61:19;124:20,21,23
**policy (1)**
111:19
**political (1)**
9:11
**Polly's (1)**
119:18
**pool (1)**
115:5
**pop (1)**
48:3
**portion (1)**
113:8
**portions (1)**

26:4
**position (13)**
11:9;20:1;38:15;
40:15;42:17,22;52:6;
65:12,19;96:21;102:3;
121:9,16
**positioned (1)**
18:7
**positions (1)**
9:17
**positive (1)**
23:6
**possible (1)**
42:20
**post- (2)**
41:9;52:23
**poster (1)**
12:14
**post-petition (10)**
34:18;40:12,18,19;
41:3;42:18,23;46:20;
49:6;53:4
**potential (3)**
52:9;53:18,19
**powerful (1)**
10:10
**PPI (2)**
53:13;64:2
**practice (6)**
63:13;70:11;75:4,25;
124:17,17
**practices (1)**
26:25
**precedent (2)**
101:21,25
**preclude (1)**
132:20
**precluded (1)**
54:6
**precludes (1)**
112:18
**predict (2)**
26:22,24
**prefer (1)**
59:10
**prejudice (5)**
53:25;54:19;56:20;
57:15;60:2
**prejudiced (1)**
58:14
**prejudicial (1)**
50:5
**preliminary (2)**
6:17;98:21
**premiums (1)**
53:13
**prepared (2)**
9:2;74:21
**presented (1)**
38:24
**preserve (1)**
52:18
**preserved (1)**

52:19
**presidential (1)**
88:7
**presiding (1)**
4:6
**press (1)**
35:24
**pressure (1)**
21:15
**pressures (1)**
30:7
**presumably (1)**
98:14
**presume (2)**
68:14;80:16
**presumption (1)**
49:13
**pre-trial (2)**
93:24;95:10
**pretty (4)**
28:18,19;87:1,4
**prevail (1)**
55:14
**preventing (1)**
29:19
**previously (1)**
53:14
**prima (1)**
38:3
**primary (1)**
106:12
**Prime (2)**
89:13;91:14
**principal (9)**
7:22;20:2;71:3;86:8;
116:10,23;121:20;
125:7;128:12
**print (1)**
123:20
**prior (5)**
7:24;95:25;104:11;
110:16;113:22
**probably (6)**
10:17;45:21;60:10;
69:5;78:8;115:9
**problem (12)**
7:3;29:25;30:1,3,4,6;
49:3;53:18,23;81:12;
114:6;115:11
**problems (4)**
17:16;27:6;49:2;
52:10
**procedure (7)**
7:20;8:3,20;38:2;
87:4;105:18;119:22
**procedures (21)**
8:1;69:20;73:10,21;
84:12;86:17,25;88:23;
99:10,17;100:22;
105:4,11,25;107:24;
122:22;123:1,2,6;
125:17;126:7
**proceed (1)**

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 148
of 154

10:25
**proceeding (1)**
21:10
**proceedings (5)**
10:24,25;36:6,8;
133:18
**process (31)**
21:15,16;23:8;27:19,
21;28:1;29:14;37:6;
39:12;41:5;45:14,15;
47:4,4;58:15;71:6;
78:18;82:18,22;83:1,2;
85:13;86:1;89:10,14;
92:22;96:23;115:2;
116:12;120:21;124:6
**professionals (4)**
118:22;119:14;
120:4;122:4
**profoundly (1)**
27:24
**progress (2)**
39:5;85:19
**promise (1)**
68:1
**promised (1)**
10:19
**prompted (1)**
41:8
**promptly (1)**
33:25
**proof (2)**
96:17;109:13
**proper (5)**
50:2;59:6;82:20;
99:20;124:10
**properly (1)**
32:4
**proposal (4)**
14:25;23:5;76:17;
100:21
**proposals (1)**
23:19
**proposed (7)**
37:16;39:25;65:24;
69:20;70:22;84:12;
102:25
**prosecution (1)**
48:8
**protected (1)**
126:15
**protocol (1)**
109:25
**provide (2)**
28:3;46:16
**provided (2)**
23:12;97:9
**provision (4)**
40:11;50:20,23;59:5
**provisions (3)**
9:16;65:1;66:12
**prudent (2)**
23:9,14
**public (3)**

7:1;19:17;37:6
**pull (1)**
53:6
**pulse (1)**
92:20
**purpose (1)**
114:3
**purposes (13)**
102:11;103:8,24;
110:20;111:14;113:17;
114:1,15;115:16,22;
116:6;124:15;132:20
**pursue (8)**
53:21,24;55:8;56:23,
24;57:20;58:13;132:17
**pursuing (1)**
62:8
**pushing (3)**
29:9;50:17;129:12
**put (28)**
15:7;23:19;29:13;
34:13;41:9;46:24;51:8;
60:5;63:5;73:23;74:17,
18;76:8;77:20;79:5;
80:4;86:5,12;90:12;
93:22;105:16;108:22;
115:4,15;118:5,10;
126:25;128:24
**puts (5)**
29:22;43:2,10;98:13;
119:6
**putting (3)**
21:15;41:4;78:4

## Q

**quick (1)**
67:25
**quickly (3)**
57:5;84:23;127:16
**quite (3)**
49:17;53:19;108:21
**quote (1)**
29:5
**quoted (1)**
29:5
**Qureshi (44)**
51:23;52:1,3,4,13,19,
21,23;53:8,11,17;54:2,
5,9,17,20,25;55:3,17,
19,21;56:3,11,14,17,
19;57:1,7,11,14;58:6,9,
12,18,20,22,25;59:7,
16,18,21,24;60:2,25

## R

**rail (1)**
33:7
**raise (6)**
9:8;39:14;74:15;
88:13;124:4;125:11
**raised (7)**

32:6;38:20;110:16;
114:24;117:5,7;124:9
**raises (1)**
79:23
**raising (2)**
53:14;101:3
**ram (1)**
22:3
**ramifications (5)**
8:10;10:17;11:8;
41:11;42:7
**rammed (1)**
21:14
**ramming (1)**
21:19
**rare (2)**
41:1;42:13
**rarely (1)**
41:21
**ratably (1)**
33:21
**rate (2)**
21:4,5
**ratepayer (1)**
30:10
**rather (7)**
4:20;12:22;51:12;
78:20;80:3;106:11;
131:13
**reach (1)**
128:25
**reached (1)**
62:4
**read (17)**
7:3;9:5;28:13,15;
34:8;38:7,8;40:10;
66:11;67:24;68:1;
78:21;96:8;107:6;
123:17,18;125:5
**ready (7)**
17:15;21:13;64:19;
66:5;105:15,15,21
**real (7)**
13:25;39:8;78:15;
80:8;81:18;83:17;
107:15
**real- (1)**
47:8
**realize (3)**
8:7;66:12;90:9
**realized (1)**
41:7
**realizing (1)**
66:10
**really (25)**
5:3;8:22;18:19;
31:17;33:11;35:15;
39:22;56:20;57:15;
60:2,14;65:19;81:24;
82:3,19;90:21;91:2;
95:7;100:9;118:1;
121:8;126:1;128:3;
130:25,25

**reason (8)**
51:8;52:16;56:6;
63:4,12;65:25;66:1;
68:14
**reasonable (2)**
86:7;119:8
**reasonably (1)**
12:12
**reasons (6)**
40:16;42:1;59:17;
60:10,13;61:9
**Rebecca (2)**
117:5;122:19
**rebuild (1)**
11:21
**rebuttal (7)**
25:6;26:3;27:14;
37:21,23;38:9,14
**recall (1)**
52:25
**receiving (1)**
33:5
**recent (1)**
42:10
**recently (2)**
42:9;57:2
**reciprocal (1)**
21:2
**recite (1)**
61:13
**recognize (2)**
78:3;90:1
**recognized (5)**
32:1;53:3,3,9,12
**recommendation (3)**
42:15;85:10;106:7
**recommending (2)**
41:2;49:3
**reconsider (2)**
7:2;129:19
**reconsideration (1)**
130:10
**record (5)**
33:14;39:23;43:13;
52:4;64:25
**recoveries (1)**
109:1
**redemption (1)**
53:13
**redo (1)**
87:12
**redoing (1)**
115:14
**reduce (2)**
4:17;5:17
**refer (1)**
29:3
**referring (2)**
104:24,25
**reflect (1)**
61:11
**reflected (2)**
39:1;45:2

**regard (1)**
116:8
**regarding (1)**
107:23
**regardless (4)**
11:16;30:10,11;
57:22
**regulation (1)**
21:3
**rehabilitation (2)**
26:21;27:9
**reimbursement (3)**
30:10;106:16;114:11
**relate (1)**
10:5
**related (4)**
41:11;64:2;73:24;
117:19
**relatively (1)**
14:3
**releases (1)**
107:24
**relief (2)**
32:1;42:10
**rely (1)**
30:11
**remark (1)**
27:14
**remediation (1)**
106:17
**remedies (1)**
23:13
**remedy (1)**
29:22
**Remember (5)**
13:22;40:17;41:22;
65:4;81:10
**remind (1)**
102:15
**reorganization (3)**
10:7;18:25;27:5
**reorganize (1)**
29:4
**replacing (1)**
79:21
**represent (4)**
49:1;82:19,21;97:17
**representatives (1)**
38:3
**representing (3)**
77:18;97:14;123:19
**represents (2)**
32:24;119:14
**reputation (1)**
121:15
**request (2)**
61:16;120:14
**requested (2)**
32:1;118:2
**require (5)**
44:23;55:24,25;85:7;
93:20
**requires (1)**

Min-U-Script®

Case: 19-30088   Doc# 5634   Filed: 02/05/20   Entered: 02/05/20 09:31:26   Page 149
of 154

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(14) proceeding - requires

56:5
**research (1)**
12:18
**reservation (1)**
112:9
**reserve (6)**
31:10;38:19;47:11;
57:19;58:2;110:7
**reserved (2)**
39:21;45:10
**residency (1)**
109:13
**resolution (11)**
26:13;83:2,6;96:13;
105:1,3,11,18,24;
107:23;119:22
**resolve (4)**
48:10,12;88:3;
125:23
**resolved (6)**
41:15;49:7;87:23;
98:6,19;109:11
**resource (2)**
113:5,6
**respect (16)**
27:18,20;33:17;
38:16;64:25;67:14;
70:4;85:1;86:18;
105:10;114:7,9;
117:18,24,25;128:2
**respectful (1)**
24:14
**respects (3)**
16:10;20:25;40:20
**respon (1)**
37:6
**respond (7)**
35:1,2;38:8,9;80:4;
96:7;127:9
**response (2)**
68:2;126:1
**responsibility (1)**
24:17
**responsive (1)**
116:4
**rest (1)**
30:23
**restate (1)**
36:9
**restructuring (2)**
24:24,24
**retain (2)**
120:16,17
**retool (1)**
115:10
**reverse (2)**
21:1;46:12
**reverses (2)**
48:2;62:21
**reversible (1)**
41:24
**review (4)**
43:3;69:13;82:15,24

**revise (1)**
88:16
**revised (5)**
4:14;7:23;88:18;
91:10;132:15
**revisions (2)**
80:5;88:17
**revisit (2)**
128:14;130:14
**rhetoric (1)**
30:16
**Riddle (1)**
119:3
**right (98)**
4:7;5:13,21;6:13;7:5,
13;9:8;12:20;14:5;
16:8,17;17:16;22:18;
25:19;26:4;33:7,11;
34:13,16;35:23;36:3,
18,21,23;37:9;43:21;
44:25;47:7,16,21,24;
48:5,11;49:24;52:18,
20,22;53:2,7,7,16,19;
55:7,17;56:3,13;57:4,7,
11;58:6,11,24;59:16;
60:12;63:2;64:7,10,19;
67:10;69:17;70:1;
71:21,24;76:10;79:9;
80:17;83:18,19;88:19;
89:6;90:24;92:3;93:9,
17;95:9;97:1,18;
100:11,13,16,18;
102:14;104:2,7;106:6;
110:9,23;114:4;
117:15;118:15;121:1;
124:21;127:10;131:17;
132:4,6,14,17
**rights (11)**
33:13;45:10;47:11;
48:9;50:5;52:19;62:7;
114:17;125:18;126:8,
15
**Rios (1)**
97:25
**rise (1)**
4:5
**risk (1)**
30:8
**risks (1)**
23:14
**roll (1)**
20:3
**Rose (1)**
117:6
**rowing (2)**
35:16;61:25
**RSA (48)**
11:5,10,10,12,14,23;
12:1;13:8,9;18:20;
21:11;22:11;23:11,22,
24;26:8,8;29:9;31:21;
32:2,24;33:20,23;
34:24;38:24;39:11,23,

25;40:10,11;41:6;
42:24;43:9,23;44:3,11,
14;52:7,14;54:6;55:15;
60:25;61:11;65:15;
115:1;118:23;130:9;
131:2
**RSAs (7)**
7:24,24;18:24;28:9;
33:5;35:11;129:19
**RSA's (1)**
34:4
**rude (1)**
37:20
**rule (4)**
12:10;54:20;76:7,7
**rules (10)**
12:1;54:11;55:24;
56:1;60:19;72:14;
78:18;85:7;99:21;
113:15
**ruling (7)**
9:3;47:14;50:10;
59:13,14;114:4;131:4
**run (3)**
9:16;109:25;110:1
**running (2)**
21:13;22:4

**S**

**Sacramento (2)**
15:12;24:19
**sake (1)**
35:1
**same (27)**
7:4,4,7,8,9;8:14;
20:22;34:18;38:7;51:5;
53:10;54:2,25;55:13;
59:25;62:1;75:20;
109:25;113:10;115:5;
116:15,16,24,24;117:3;
127:4;129:18
**SAN (3)**
4:1;24:19;81:21
**sand (1)**
60:13
**satisfaction (1)**
84:7
**satisfied (2)**
39:13;92:10
**saying (15)**
15:21;16:22;23:23;
24:21;29:18;32:4;48:5;
62:20;77:21;80:6;86:7;
92:1;107:18;108:4;
126:6
**scenario (1)**
35:9
**schedule (6)**
35:20;94:19;98:8;
116:12;126:13;129:21
**scheduled (4)**
95:11;128:15,23;

133:7
**schedules (1)**
112:13
**scheduling (14)**
40:17;91:10;93:2,6;
97:21;107:1;115:14;
122:17,19;127:18;
128:14;129:1;133:9,12
**scoring (1)**
98:17
**seal (1)**
16:6
**sealed (1)**
108:17
**searching (1)**
12:7
**season (1)**
16:23
**seat (2)**
20:25;36:17
**second (7)**
25:22;49:6;83:1;
87:17;90:9;92:14;
103:10
**seconds (1)**
96:16
**securities (1)**
87:5
**seek (1)**
43:3
**seeking (1)**
62:9
**seem (6)**
38:17;48:19;74:20;
101:22;103:15;116:19
**seemed (1)**
56:6
**seems (3)**
43:9;50:17;78:20
**self-destruct (1)**
33:10
**self-explanatory (1)**
31:23
**send (7)**
7:19;23:10;68:13,21;
71:10;72:5;78:8
**sending (3)**
41:4;76:10,13
**senior (14)**
8:6;14:6;26:9;33:22;
34:9;35:23;38:25;
41:17;64:22;66:12,15;
77:21;130:14,18
**sense (13)**
37:3;39:8;40:24,25;
68:4,6;74:5;77:16;
84:13,21;92:19;95:13;
106:18
**sent (3)**
71:11;84:25;122:6
**sentences (1)**
99:20
**separately (2)**

61:11;85:23
**series (1)**
104:25
**serious (1)**
39:14
**serve (4)**
72:10;77:1;91:11;
92:3
**served (2)**
61:4;91:23
**session (1)**
4:5
**set (9)**
8:25;98:6;104:6;
113:15,24;121:11;
127:18;131:1,12
**set-aside (1)**
48:15
**setting (1)**
5:3
**settle (2)**
45:6;56:10
**settled (2)**
65:18;108:17
**settlement (3)**
54:14,14;108:17
**seventy (1)**
119:15
**several (1)**
95:6
**shall (1)**
57:18
**shape (1)**
29:15
**share (3)**
9:24;31:3;80:17
**shared (2)**
33:21;95:25
**shareholder (1)**
31:4
**shareholders (4)**
10:11;27:16;31:25;
69:18
**sharing (1)**
84:11
**short (21)**
15:6;20:16;23:1;
37:10;72:15;77:7,8;
78:15;79:24;81:17;
95:23;110:6;115:19;
117:23;122:3,21;
123:7;124:19,21;
125:9;130:19
**shorten (2)**
21:16;132:19
**shortened (2)**
6:1;72:18
**shortened-time (1)**
7:15
**shortening (3)**
7:20;8:3;129:8
**shorter (2)**
72:17;119:6

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 150
of 154

**shortly (2)**
58:15;124:13
**short-term (4)**
10:17;11:13,19;
23:17
**shot (1)**
60:20
**show (1)**
11:6
**shows (1)**
78:6
**sic (13)**
6:13;21:10;26:1;
27:2;30:2;33:4,6;
42:25;45:16;83:5;
108:22;117:7;125:21
**side (14)**
9:2;20:2;27:16;31:4,
11;43:7;44:15;47:3,13;
48:4;50:14;51:17;56:8;
60:12
**sides (2)**
116:2;129:6
**sign (4)**
21:6;33:24;58:16;
121:12
**signatory (1)**
62:5
**signed (3)**
17:15;34:4;108:17
**significant (4)**
10:10;20:7;51:16;
79:22
**signing (1)**
49:3
**silence (1)**
39:18
**similar (3)**
40:20;41:3;100:23
**similarity (1)**
20:21
**similarly (1)**
124:23
**simple (9)**
28:21,22;29:1;47:6,
9;54:8;71:1;99:19;
110:8
**simplified (1)**
117:21
**simplify (3)**
45:18;113:14;114:22
**simply (6)**
39:15;56:21;57:16;
58:12;61:16;109:12
**simultaneously (1)**
32:15
**sit (1)**
20:3
**sitting (2)**
65:1;94:5
**situation (2)**
42:2;47:9
**situations (1)**

107:14
**sleeves (1)**
20:3
**slight (1)**
4:16
**slightly (1)**
7:10
**slow (2)**
22:10;39:11
**smoothing (1)**
122:5
**snap (1)**
52:17
**snapshot (1)**
67:25
**solicitation (23)**
69:19;70:16,23;71:9;
73:10,21;75:2,15;77:5;
82:16,23;84:3,12;
85:11;87:19;88:22,24;
89:10,19;92:4;93:15;
99:10;102:22
**solicitation-and-tabulations (1)**
69:20
**soliciting (3)**
71:7,20;73:14
**solid (1)**
30:12
**solution (5)**
29:22;41:19;42:21;
43:9;98:19
**solve (5)**
30:3;49:2,2;81:12;
115:11
**solved (1)**
17:16
**solvent (1)**
46:18
**somebody (8)**
43:11,15;51:22;78:6;
79:23;93:21;94:1;
110:16
**somehow (4)**
32:17;35:21;115:24;
126:15
**someone (4)**
28:4;38:9;50:3;
96:17;132:9,10
**sometime (3)**
55:7;73:19;128:3
**somewhat (1)**
38:11
**soon (3)**
21:11;107:9;120:15
**sooner (1)**
106:11
**sophisticated (3)**
118:2;126:24,25
**sorry (12)**
17:2;24:13;43:15;
74:6;91:5,5,5;92:17;
101:15;106:5,8;111:11
**sort (10)**

33:6;57:18;58:1;
60:13;81:25;95:13;
105:14;106:15;107:24;
122:18
**sorts (1)**
23:15
**sound (2)**
11:6;27:3
**southern (1)**
17:19
**speak (1)**
114:4
**speaking (1)**
82:13
**special (2)**
119:1,5
**specific (4)**
9:19;15:4,5;22:22
**specifically (3)**
18:5;44:16;83:10
**specifics (1)**
8:23
**speedy (1)**
129:13
**spend (1)**
96:11
**squeeze (1)**
72:11
**staff (3)**
79:13;127:11;128:10
**stage (1)**
53:18
**stake (3)**
39:5;48:25;56:8
**stand (1)**
35:12
**standalone (1)**
4:20
**standard (3)**
16:9;87:4;91:19
**standing (2)**
46:25;126:4
**stands (2)**
18:14;64:18
**start (9)**
16:23;20:12;22:11;
39:8;49:13;54:13;
58:15;85:6;99:19
**starting (1)**
97:4
**starts (1)**
44:25
**state (10)**
17:20;21:3;61:17;
96:24,25;98:1;112:3,7;
126:3;128:23
**stated (5)**
31:22;38:10;61:9;
88:10;129:12
**statement (54)**
4:21;26:7;28:16;
37:5;40:1,13,16;41:25;
42:2,4;66:14;70:2,11;

71:13;72:3;73:9,19,21;
74:12,16;76:7;77:5;
78:8;81:13,19;83:18,
21;85:21;88:5,18,22;
89:13;90:19;91:18,22;
97:10;99:19,20;103:1;
104:10,13;107:21;
110:12;113:22;123:3,
13,18,24;124:10;125:1,
4,20;126:18;127:1
**statements (8)**
28:3;66:14,18;81:3,
11;97:16;98:24;124:25
**states (5)**
99:20;113:4;121:7,9,
10;127:25
**State's (1)**
111:5
**status (1)**
71:15
**statute (4)**
81:10;101:22;102:6;
115:25
**stay (4)**
14:22;42:10;46:18;
58:4
**step (4)**
23:5;25:12,12;39:16
**Stephen (1)**
31:15
**steps (2)**
26:7;27:20
**stick (3)**
97:12;122:3;127:10
**still (16)**
17:17;26:9,10,14;
27:6;29:1;49:19;55:6,
24;77:15;79:2;99:1;
101:14;108:18;110:3;
132:10
**stock (1)**
108:23
**stop (4)**
30:21;35:18;49:15;
50:13
**straighten (1)**
32:21
**straightening (1)**
27:4
**straightens (1)**
87:15
**straightforward (1)**
8:25
**strategically (1)**
63:11
**Strauss (2)**
52:4;64:22
**streamline (1)**
82:22
**strike (1)**
87:15
**stroking (1)**
122:5

**strong (1)**
55:11
**structure (2)**
23:14,16
**stuck (1)**
62:22
**studied (1)**
66:11
**stuff (2)**
37:7;75:15
**subject (10)**
40:1;42:19;59:25;
69:13;73:17;78:23;
103:14;111:18;116:23,
24
**submit (3)**
67:18;87:25;97:5
**submitted (2)**
64:18;108:19
**submitting (1)**
100:22
**subordinated (1)**
7:3
**subparagraphs (1)**
123:20
**subrogation (4)**
35:11;80:13;117:25;
131:2
**subsequent (1)**
83:9
**substance (2)**
7:8;111:17
**substantial (2)**
35:23;119:16
**substantive (3)**
125:17;126:8;128:3
**successful (3)**
22:15,16;58:14
**such-and-such (1)**
91:18
**suddenly (1)**
43:6
**sue (1)**
45:5
**sues (1)**
54:11
**suggest (5)**
28:23;92:23;93:3;
104:16,18
**suggested (3)**
32:14;72:9;106:2
**suggesting (2)**
94:9;101:6
**suggestion (2)**
94:24;117:16
**suggestions (2)**
23:13;89:7
**summary (4)**
91:22;107:15;109:6;
117:20
**supersede (1)**
126:3
**supplement (2)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(16) shortly - supplement

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 151
of 154

81:17;105:21
**support (10)**
7:2;8:6,23;11:23;
18:20,21;20:8;61:19;
83:12;105:13
**supporting (3)**
19:10;27:7;129:15
**supportive (1)**
84:21
**suppose (2)**
70:15;80:12
**supposed (3)**
27:3,4;111:22
**suppression (1)**
113:6
**Supreme (3)**
42:9;49:16;126:2
**Sure (46)**
9:23;10:3;11:1;12:1;
14:2,8;17:9;20:9;
23:10,16;28:25;29:21;
30:18;31:17;33:16;
54:9;55:3,6,21;56:17;
57:14;61:20;66:7,15;
71:2;72:8,22;73:5;
77:17;91:15;92:15;
93:16,17,24;108:8;
110:17,22;111:20;
112:17;116:5;119:7;
120:20;121:19,20;
122:5;130:9
**surrounded (1)**
11:20
**survivor (3)**
9:7;11:4,20
**survivors (9)**
8:11;28:23;39:10;
66:22;71:4;76:9;81:15;
115:6;121:21
**sustained (1)**
43:22
**sustaining (2)**
40:15;42:17
**sustains (1)**
42:22
**swamp (1)**
114:12
**sway (1)**
100:19
**sweet (1)**
125:9
**switch (2)**
8:19;80:6
**switches (1)**
23:17
**sword (1)**
60:24
**sympathetic (1)**
43:7
**system (5)**
24:17;26:4;47:12;
57:10;82:20

**T**

**table (5)**
19:17;20:3;106:24;
113:15;119:8
**talk (13)**
11:4;17:8;24:11,12;
48:14;64:19;66:5;76:3;
94:2;97:21;112:8,22;
129:1
**talked (6)**
23:15;49:18;66:19;
79:12;85:5;133:10
**talking (8)**
45:24,25;90:16,21;
91:1;99:11;104:11;
119:24
**task (1)**
119:17
**TBD (1)**
106:3
**TCC (10)**
7:2;11:18;21:12;
35:11;41:6;82:14;
114:10;115:1;120:4;
131:2
**TCC's (1)**
113:12
**technical (1)**
95:19
**technically (1)**
95:15
**tee (1)**
103:16
**teed (1)**
49:5
**telling (4)**
9:21;71:21;90:20;
122:1
**tells (2)**
116:3;126:3
**temporary (1)**
116:13
**ten (2)**
89:13,21
**tens (1)**
108:20
**tentative (1)**
92:2
**tentatively (1)**
40:14
**term (11)**
11:14,14;20:17;23:2;
26:18;33:22;39:15,15;
65:15;71:9;110:11
**termination (1)**
33:12
**terms (2)**
9:9;20:19;23:13;
41:6;95:20;104:20
**terrible (1)**
17:18

**testimony (2)**
21:16;37:16
**Thanks (2)**
66:4;118:18
**that'd (1)**
6:10
**that'll (2)**
107:10;118:7
**theirselves (1)**
108:22
**thereafter (1)**
58:15
**there'd (2)**
26:10;93:12
**therefore (7)**
35:21;49:8;53:14;
57:25;84:18;113:18;
115:7
**there'll (4)**
29:2,12;48:15;98:19
**thinking (1)**
78:22
**thirteen (2)**
118:24;119:9
**thirty (1)**
96:16
**though (6)**
18:8;27:22,23;42:16;
98:25;123:11
**thought (7)**
34:3;39:11;59:20;
75:7;96:10;104:21;
115:7
**thousands (7)**
19:6;67:22,22;75:13,
14;82:21;108:20
**three (3)**
33:11;111:11;115:17
**throw (4)**
59:2,4;78:9;131:10
**throwing (1)**
22:11
**thrown (1)**
61:1
**ticking (2)**
22:12;45:1
**tie (4)**
30:7,8,15;44:23
**tied (1)**
30:9
**tight (5)**
5:2;92:12;94:21;
101:14;126:13
**till (1)**
93:13
**timeline (9)**
74:22,24;86:3;93:25;
95:21;96:1,6;97:5,23
**timely (1)**
54:21
**timing (2)**
53:1;114:7
**today (33)**

5:25;7:14,21;8:5,9,
13,16;10:5;13:3;16:15;
18:18,20;19:25;29:6;
33:25;35:4;38:6;40:8;
46:25;65:13,14,20,21,
24;66:1,2;69:8;96:2;
115:8;129:1;132:10,
25;133:10
**today's (9)**
5:2,14;7:1,21;8:6,19;
9:6,20;131:4
**together (9)**
32:25;35:16;41:4;
53:15;61:25;64:5;83:3;
105:16;116:20
**told (13)**
7:1;22:4;28:20;
32:19;41:16;55:9;70:9;
81:10;89:21;95:5;
103:9;123:17;125:21
**tomorrow (3)**
33:25;73:7;103:6
**tongue (1)**
124:20
**tort (8)**
39:19;80:12;82:12;
86:18;92:20;100:23;
102:3;108:2
**total (3)**
33:21;65:12,19
**touch (2)**
60:10;95:21
**toward (7)**
32:25;82:1;83:4,22;
105:4;106:10;109:10
**towards (6)**
23:7;25:12;26:6;
39:5,7,12
**Toxic (1)**
111:17
**track (2)**
49:19;102:19
**tracks (1)**
37:3
**trade (14)**
8:21;38:21;39:21;
40:5;42:21,23;43:3,8,
20;55:4;56:21;57:17,
24;59:10
**trade-creditors (1)**
40:3
**trademark (1)**
45:25
**tradeoffs (1)**
39:2
**trades (1)**
65:13
**traditional (2)**
38:4;93:24
**transparency (1)**
28:14
**treat (2)**
93:23;103:7

**treated (1)**
125:22
**treatment (2)**
112:2;119:1
**trial (4)**
40:21;41:20,21;49:8
**tried (2)**
11:25;60:10
**trivialize (1)**
28:23
**Trotter (2)**
120:11;121:14
**trouble (4)**
18:16;22:1;60:21;
128:18
**Troy (16)**
112:20,24;113:1,1;
114:24;116:10;127:12,
12,14,14,15,16,21;
128:8,11,17
**Troy's (1)**
102:2
**true (8)**
17:18;20:24;39:9;
47:1;62:1;108:10;
127:20;128:25
**trust (27)**
26:4;73:24;79:6;
83:2,4;104:6,20;105:1;
107:23;113:8,8;
117:19,19,25;118:23;
119:18,21;120:1;
122:22;123:1,2,10;
125:18,19,20;127:22;
128:2
**Trustee (7)**
77:21;83:6;105:7;
120:2;121:7,9,10
**truth (1)**
16:25
**try (11)**
17:6;32:21;45:6;
51:17;54:18;56:9;
60:21;72:11,24;
103:11;110:2
**trying (12)**
11:21;39:7;49:25;
50:1;62:6;76:1;79:12;
80:1;83:23;98:18;
103:21;106:13
**Tubbs (1)**
108:19
**TUESDAY (4)**
4:1;5:5;94:13;133:8
**turn (5)**
71:5;88:6;105:7;
106:25;128:9
**turned (1)**
24:24
**tweaking (1)**
78:18
**twenty (1)**
31:13

Min-U-Script®

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 152
of 154

**twenty-page (3)**
124:25;125:5,8
**two (29)**
6:22;7:5;10:10;
17:14;18:24;19:25;
31:10;33:6;37:3;45:15;
46:19;48:7;49:5,7;
61:19;63:22;72:5;
77:22;99:20;113:21;
115:4,4,10;116:9,19;
117:3;119:25;129:19;
133:12
**two-page (1)**
81:17
**two-plan (1)**
36:3
**two-step (1)**
83:2
**two-thirds (1)**
99:21
**tying (1)**
23:13
**type (4)**
33:13;83:11,12;
124:2
**types (1)**
104:3
**typical (1)**
33:13

**U**

**ugly (1)**
63:16
**ultimately (2)**
58:13;69:15
**Um (1)**
107:12
**Um-hum (6)**
67:8,16;73:1;77:3;
91:24;105:2
**unaware (2)**
40:11;41:17
**uncommon (1)**
102:1
**uncomplimentary (1)**
9:9
**unconfirmable (1)**
88:12
**unconscionable (1)**
114:13
**under (5)**
21:2;54:20;65:15;
71:11;118:23
**underneath (1)**
63:5
**Understood (4)**
14:10;28:25;51:19;
63:25
**underwriting (2)**
33:17,19
**unenviable (1)**
119:17

**unfair (1)**
12:20
**unfortunately (4)**
18:6;24:6;26:24;
29:8
**unimpaired (3)**
71:17;80:12;97:15
**UNISON (1)**
4:8
**United (6)**
113:4;121:7,9,10;
127:25;132:8
**universe (1)**
107:2
**unjust (5)**
11:7;12:18;13:2,7,7
**unless (6)**
30:9;66:1;71:5;87:2;
102:10;115:23
**unlikely (1)**
52:16
**unliquidated (1)**
103:20
**unpunished (1)**
64:24
**unrelated (1)**
57:2
**unresolved (1)**
77:13
**unsecured (3)**
14:6,9;66:15
**unusual (3)**
13:20;42:2;63:6
**up (38)**
4:20;11:25;16:4,24;
17:15;20:3,4;21:14,16;
22:4,25;31:14;43:11;
47:12;49:5;53:15;54:3;
58:11;60:8;63:14;69:7;
74:18;78:6;79:20;
84:16;87:18;102:21;
103:16;113:4;117:13;
120:1,19;121:6,7;
124:5;125:7;130:6;
133:2
**update (1)**
6:6
**updated (2)**
5:12,17
**upfront (1)**
14:25
**up-front (1)**
108:25
**upon (7)**
4:14;15:7;39:17;
49:4;61:14;77:1;86:23
**upstairs (1)**
57:4
**up-to-speed (1)**
82:5
**urge (2)**
33:1;34:24
**use (5)**

42:16;65:5;87:5;
97:13;110:10
**useful (1)**
116:8
**using (2)**
22:3;99:14
**usually (2)**
103:19;126:23
**utilities (1)**
17:19;21:4
**utility-impaired (1)**
33:22

**V**

**valid (1)**
88:25
**value (1)**
27:21
**valued (1)**
105:15
**variation (1)**
78:24
**various (3)**
39:2;77:24;113:2
**vegetation (1)**
26:25
**version (5)**
117:21;119:23;
122:21;123:5;125:16
**versus (1)**
49:11
**viable (2)**
49:13;98:11
**victim (3)**
84:4;108:16;114:12
**victims (15)**
39:9,10;66:20;69:19;
81:17;82:1;92:20;
100:8,8;106:16;
108:19;112:8,18;
125:18,19
**victims' (1)**
112:9
**view (11)**
32:7;37:22;42:21;
43:10;51:14;52:23;
61:3;73:4;81:10;105:4;
106:9
**views (3)**
8:24;9:21;127:25
**violate (1)**
59:4
**violates (1)**
44:9
**virtue (1)**
38:25
**vocal (1)**
121:25
**voice (1)**
17:3
**vote (25)**
19:7,7;28:4;29:15;

72:1;82:10;92:13;
99:13;100:23,25;
101:5,22;102:3,10;
103:15;110:18,24;
111:18;113:11;114:12;
115:23,24;126:23;
127:2,4
**voted (1)**
82:17
**voter (3)**
111:25;113:17;114:2
**voters (1)**
78:20
**voter's (3)**
123:13,14,16
**votes (6)**
92:13;97:1;100:20;
115:9;116:17,17
**voting (29)**
19:6;37:5;73:10;
82:16,22,23;86:17,25;
92:22;96:23;99:9,12,
17,21;100:9;101:5;
102:11;103:8,24;
105:22;110:20;111:14;
112:18;114:15;115:17,
17,22;116:6;124:15

**W**

**wait (14)**
14:23;25:22;26:2;
48:25;49:1;56:21;
59:10,11;79:13;81:5,5;
95:18;108:25;132:16
**waiting (2)**
58:14;108:18
**waits (1)**
115:22
**wants (9)**
47:10,10;48:25;
51:12;93:22,22;96:5;
112:21;118:15
**warning (2)**
88:5;94:8
**waste (2)**
9:21;97:15
**wasting (1)**
76:6
**watch (1)**
88:7
**way (35)**
11:24;12:11;14:22;
18:14;20:22;22:8;24:2;
29:15;39:9;41:5;44:1;
48:10;49:4;51:9;52:23;
55:20;57:9;60:6;61:14;
64:9,11;65:23;69:12;
72:24;76:19;82:20;
91:16;97:1;102:7;
107:15;114:16,22;
115:8;126:12;128:17
**ways (1)**

11:3
**website (2)**
107:5;123:17
**wedded (3)**
72:10;80:1;94:7
**week (17)**
7:20,24;8:17;41:9;
64:8;84:16;86:8,15;
87:8;96:1;97:13;
101:13,15;128:15;
129:3,20,22
**weekend (2)**
67:23;96:11
**weekends (2)**
90:1,3
**weeks (5)**
4:12;57:8;105:17;
108:7;113:22
**weigh (2)**
67:21;101:5
**weight (1)**
51:22
**Weil (1)**
31:15
**welcome (3)**
9:17;131:8,15
**weren't (2)**
24:15;128:20
**what's (18)**
13:14,14;18:17;
20:16,18;21:15;30:14;
31:8;45:14;47:8;81:18;
82:20;105:25;106:7,
11;112:6;122:6;133:4
**whenever (1)**
8:18
**whereas (1)**
40:25
**Whereupon (1)**
133:18
**whitewashing (1)**
119:17
**whole (7)**
12:3;13:19;53:13;
59:2;60:25;64:2;97:13
**who're (1)**
10:11
**who's (5)**
40:4;78:6;87:22;
108:18;112:5
**whose (1)**
87:23
**wildfire (4)**
11:4,20;16:23;17:20
**wildfire-related (1)**
113:6
**wildfires (1)**
39:10
**willing (4)**
7:23;85:13;129:16,
20
**Willoughby (1)**
97:25

Min-U-Script®
Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 153
of 154
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(18) twenty-page - Willoughby

**win (3)**
23:25;48:1,3
**wins (2)**
45:9,9
**Winthrop (13)**
116:23;117:2,5,5;
118:15,17;122:17,18,
19;124:4;125:12;
126:12;127:7
**wish (3)**
65:6,8;82:19
**withdraw (4)**
34:10;36:12,15;
98:14
**withdrawn (2)**
35:24;36:14
**within (2)**
57:6;95:2
**without (5)**
21:21;26:7;66:9;
77:21;124:5
**witness (1)**
93:22
**won (1)**
48:6
**wonderful (1)**
11:11
**wondering (1)**
60:21
**woodwork (1)**
131:11
**word (3)**
12:13;25:11;26:19
**words (10)**
21:1;22:3;45:18;
48:13;49:10;74:20;
80:3;90:18;106:25;
123:22
**work (9)**
33:5;54:14;76:3;
79:12;86:11;90:1;95:2;
97:13;125:22
**workable (1)**
43:10
**worked (2)**
85:25;117:8
**working (5)**
32:25;86:16;105:17;
108:6;120:13
**world (4)**
30:2;47:9;77:19;
80:8
**worried (2)**
101:20;118:4
**worries (1)**
9:25
**worry (1)**
111:6
**worth (1)**
60:21
**worthy (1)**
126:8
**wrap (1)**

22:25
**wrapped (2)**
16:24;58:11
**write (2)**
61:12,21
**written (1)**
94:2
**wrong (7)**
11:24;12:19;19:10,
13,14;47:8;68:14
**wrongful (1)**
105:13

**Y**

**Yanni (2)**
120:11;121:15
**year (1)**
13:23
**years (3)**
45:24;46:19;48:7
**Yep (2)**
9:14;74:10
**yesterday (1)**
130:23
**yield (1)**
23:17

**1**

**1 (4)**
49:21;91:2,4,4
**1,000 (1)**
65:2
**10 (3)**
91:17;133:5,6
**1054 (6)**
15:21;16:10,11;22:6;
33:1;95:14
**10th (10)**
67:23;72:10;73:20;
80:24;88:21;90:19;
113:24;131:23;132:2,
22
**11 (2)**
64:20;91:17
**11th (7)**
128:15,16;129:3,20;
130:7,24;133:8
**12 (1)**
91:17
**12:30 (2)**
110:1,1
**12:31 (1)**
133:18
**12th (2)**
90:22;94:9
**13th (1)**
90:22
**15th (4)**
90:8;92:24;93:8;
94:17
**16th (1)**

94:5
**17th (2)**
102:23;132:24
**18 (2)**
103:12,13
**18th (1)**
132:25
**19 (1)**
133:4
**19th (10)**
4:18;5:10;93:3;
94:11,12,24;132:1,2;
133:2,6
**1st (2)**
90:7;92:24

**2**

**2 (6)**
67:15;79:3,4;88:10;
104:17;117:19
**2/28 (1)**
118:11
**2019 (1)**
27:6
**2020 (1)**
4:1
**20th (2)**
94:25;96:8
**21 (13)**
74:7;76:18;86:3,6,
12;87:16;95:1;102:21;
103:12;106:25;110:8;
113:25;117:20
**21st (13)**
74:13,18;75:11;
86:22;101:7,15;106:9,
17;114:17,21;115:15,
20;122:24
**22nd (2)**
96:8;115:22
**27 (1)**
95:4
**28th (8)**
77:1;78:7;86:12;
97:7;98:5;118:7;
119:11;122:25
**29th (1)**
27:6
**2nd (1)**
78:6

**3**

**3 (3)**
74:9;79:10;86:3
**30 (3)**
17:17;22:12;49:20
**300 (1)**
113:5
**30th (12)**
15:8;16:21;23:7;
28:7;35:16;51:2;53:22;

55:7;56:21;58:14;63:4;
91:2
**31 (3)**
91:9,11;92:2
**31st (2)**
40:9;67:11
**3rd (1)**
49:21

**4**

**4 (6)**
4:1;79:1,9;88:14,15;
89:7
**400,000 (1)**
89:15
**415,000 (1)**
69:15
**4th (2)**
5:14;85:6

**5**

**54b (4)**
42:1,7;60:11,13

**6**

**6 (1)**
79:14
**6th (13)**
67:15;68:25;77:11,
16;80:2,4,19;81:8;
87:16,17;98:5;99:4;
101:8

**7**

**7 (1)**
74:21
**70- (1)**
100:8
**7th (2)**
74:19;103:1

**8**

**80,000 (1)**
100:8
**8002 (1)**
54:20

**9**

**9 (1)**
88:17
**9th (3)**
79:17;80:5,23

Min-U-Script®

Case: 19-30088    Doc# 5634    Filed: 02/05/20    Entered: 02/05/20 09:31:26    Page 154
of 154

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(19) win - 9th