| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**JOINDER OF THE DEBTORS TO OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS (SUBSTANTIVE) TO CLAIMS FILED BY THE DEPARTMENT OF HOMELAND SECURITY/FEDERAL EMERGENCY MANAGEMENT AGENCY (CLAIMS NOS. 59692, 59734 & 59783)**<br><br>Date: February 26, 2020<br>Time: 10:00 a.m. PST<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>Re: Docket Nos. 4943, 5319 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby support and join the following objections filed by the Official Committee of Tort Claimants (the "**TCC**"): (i) *Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to Claims Filed by the Department of Homeland Security/Federal Emergency Management Agency (Claim Nos. 59692, 59734 & 59783)* [Dkt. No. 4943] (the "**TCC FEMA Objection**"); and (ii) *Supplement To Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to Claims Filed by the Department of Homeland Security/Federal Emergency Management Agency (Claim Nos. 59692, 59734 & 59783)* [Dkt. No. 5319] (the "**TCC Supplemental FEMA Objection**", and together with the TCC FEMA Objection, the "**Objection**").

## JOINDER

The Debtors file this Joinder as the party against whom the Federal Emergency Management Agency ("**FEMA**") asserted claims. Pursuant to Section 502(b)(1) of the Bankruptcy Code, a claim is not allowed if the claim "is unenforceable against the debtor . . . under any . . . applicable law." 11 U.S.C. § 502(b)(1). The Debtors support and join in all arguments asserted in the Objection and raise the following additional points in support of the Objection.

**A.    FEMA Claims Are Not Allowable Under The Stafford Act**

As discussed in the TCC FEMA Objection, FEMA's claims against the Debtors have no statutory basis because Section 317 of the Stafford Act—the provision FEMA cites as a basis for its claims—permits recovery by FEMA from a person who is not the recipient of Federal assistance **<u>only</u>** where such person's "intentional" acts or omissions caused a condition for which Federal assistance was provided. *See* 42 U.S.C. § 5160. The Debtors did not intentionally cause any of the wildfires, and FEMA's claims do not—because they cannot—include any such allegation that would support a potential claim against the Debtors under the Stafford Act.

"Statutory interpretation begins with the plain meaning of the statute's language." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) (citation omitted). "Where the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the

statute is conclusive and the judicial inquiry is at an end." *Id*. (citation omitted). In relevant part, Section 317 provides:

> Any person who *intentionally* causes a condition for which Federal assistance is provided under this chapter or under any other Federal law as a result of a declaration of a major disaster or emergency under this chapter shall be liable to the United States for the reasonable costs incurred by the United States in responding to such disaster or emergency to the extent that such costs are attributable to the *intentional* act or omission of such person which caused such condition.

42 U.S.C. § 5160(a) (emphasis added). The plain language of Section 317 requires an intentional act. *Id.*; *see also* 44 C.F.R. § 206.15(a) ("A person *intentionally* causing conditions for which disaster relief or emergency assistance are provided . . . is liable to the United States for the reasonable costs of responding to the disaster or emergency to the extent attributable to the *intentional* act or omission in causing the condition." (emphasis added)). "[I]ntent" means that "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). FEMA does not allege and cannot allege that the Debtors "intentionally" caused any of the 2015, 2017 or 2018 wildfires.

In an effort to avoid this plain statutory text, FEMA seems to suggest that while an affirmative act must be intentional in order to permit direct recovery under the Stafford Act, an omission need not be intentional. *See*, *e.g.*, Claim No. 59692, Attach. to Proof of Claim at 3. There is no basis for that argument in the statute; the plain language makes clear that intent is required regardless of the nature of the alleged act or omission and that causation alone is insufficient. *See* 42 U.S.C. § 5160(a); 44 C.F.R. § 206.15(a). The very beginning of Section 317 specifically says recovery is available against a person that "intentionally causes a condition", and the reference later in the provision to "act or omission" is modified by "intentional". *See* 42 U.S.C. § 5160(a) ("Any person who **intentionally** causes a condition for which Federal assistance is provided . . . shall be liable to the United States for the reasonable costs incurred by the United States . . . to the extent that such costs are attributable to the **intentional** act or omission of such person which caused such condition. (emphasis added)).

The requirement to prove intentional causation of a condition through either an affirmative act or an omission is confirmed by the relevant legislative history. An earlier draft of

Section 317 provided for recovery in the event that either "intentional" or "negligent" conduct caused the condition resulting in the need for Federal assistance. *See* H.R. REP. No. 100-517, at 6 (1988), *reprinted in* 1988 U.S.C.C.A.N. 6085, 6090 ("New Section 317, 'Recovery of Assistance', provides that if a person *negligently or intentionally causes or contributes to a condition* for which Federal assistance is provided under this Act, that person is liable to the United States for the reasonable costs incurred by the United States in responding to the disaster or emergency, to the extent that the costs are attributable to the negligent or intentional act or omission of the person." (emphasis added)). By the time the bill was passed, the reference to negligence was removed and all that remained was intentional conduct. *See* 134 Cong. Rec. S17233-02, 1988 WL 178456 (Oct. 21, 1988); *see also* 134 Cong. Rec. S17137-01, 1988 WL 178318 (Oct. 21, 1988) (bill passing).

Because FEMA cannot establish that the Debtors intentionally caused any of the wildfires for which it has submitted claims, FEMA's claims must be disallowed pursuant to Section 502(b)(1) of the Bankruptcy Code.

**B.     FEMA's Claims Are Also Not Allowable Under California Law**

FEMA also asserts that the Debtors must reimburse FEMA for its disaster relief expenses under the California law doctrines of public nuisance and unjust enrichment. *See*, *e.g.*, Claim No. 59692, Attach. to Proof of Claim at 3-4. As a threshold matter, FEMA's attempt to seek recovery under state law is preempted by the Stafford Act, which provides the specific requirements that must be met before a Federal agency can recover disaster assistance costs. The Debtors accordingly join in the preemption arguments presented in the TCC FEMA Objection. (*See* TCC FEMA Objection at 13-15.) As explained further below, FEMA's claims also fail under California law even if that law were not preempted in these circumstances.

**1.     Public Nuisance**

FEMA asserts that it is entitled to recover the disaster relief funds it provided via a public nuisance cause of action because "FEMA expended costs to *abate the nuisance* that was the direct result of [the] Debtors' conduct . . . ." *See, e.g.*, Claim. No. 59734, Attach. to Proof of Claim at 4 (emphasis added). This claim is not supported by California's public nuisance statute because (1) FEMA is not seeking damages for injury to its own property; (2) FEMA does not have standing to

assert a claim to "abate" a public nuisance; and (3) any suit in the name of the people of the State of California to abate a public nuisance is limited to injunctive relief, not damages.

> California's public nuisance statute provides as follows:
>
> An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance . . . and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor. A civil action may be brought in the name of the people of the State of California to abate a public nuisance, as defined in Section 3480 of the Civil Code, by the district attorney or county counsel of any county in which the nuisance exists, or by the city attorney of any town or city in which the nuisance exists.

Cal. Code Civ. Proc. § 731.

The first sentence of the public nuisance statute permits any person, including a government entity, that has suffered damage to his, her or its own property to seek damages. *Id.*; *County of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 313 (2006). FEMA is not claiming any such property damage (nor could it).

The second sentence of the public nuisance statute permits a suit in the name of the people of the State of California to "abate" a public nuisance, but only if such claim is brought by certain specified local California government officials or entities—a district attorney, county counsel or city attorney. Cal. Code Civ. Proc. § 731. FEMA is not a district attorney, county counsel or city attorney. It therefore has no statutory authority to seek to "abate" a public nuisance on behalf of the people.

The second sentence would not provide any authority for a damages claim even if FEMA were an authorized representative of the people of the State of California. "Abate" means "[t]o lessen, diminish, or reduce" or "[t]o put an end to." *Abate*, Oxford English Dictionary (3d ed. 2011). An action to "abate" a nuisance is an action to remedy it through injunctive relief. *See County of Santa Clara*, 137 Cal. App. 4th at 311 (holding that "[a]batement . . . is accomplished by an injunction"). It does not include damages. Thus, as the California Supreme Court has explained, California's general nuisance statute . . . does not grant a damage remedy . . . to abate a public nuisance". *See People ex rel. Van de Kamp v. Am. Art Enters., Inc.*, 656 P.2d 1170, 1173 n.11 (Cal. 1983); *see also People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 122 (2017) (holding

that "damages are not an available remedy in the type of public nuisance action that was brought by plaintiff in this case, . . . section 731 permits such an action to 'abate a public nuisance,' but it does not allow the government to seek damages"); *City of Los Angeles v. Shpegel-Dimsey, Inc.*, 198 Cal. App. 3d 1009, 1019 (1988) (holding that a city "was not entitled to the recovery of fire abatement costs" under section 731); *County of San Luis Obispo v. Abalone Alliance*, 178 Cal. App. 3d 848, 851 (1986) (holding that "section 731 of the Code of Civil Procedure, the general provision permitting government entities to abate public nuisance, has been squarely held *not* to authorize the government to recover the costs of abatement"); *see generally City of Flagstaff v. Atchison, Topeka & Santa Fe Rwy. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (holding that "the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service").

### 2. Unjust Enrichment

FEMA also asserts that it is entitled to recovery from PG&E under a theory of unjust enrichment. However, unjust enrichment "is not a standalone cause of action" in California. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (first citing *Deurell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (2010); and then citing *Jogani v. Superior Court*, 81 Cal. Rptr. 3d 503, 511 (2008)). "Unjust enrichment is typically sought in connection with a 'quasi-contractual' claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract". *City of San Diego v. Monsanto Co.*, 334 F. Supp. 3d 1072, 1085 (S.D. Cal. 2018) (citing *McBride v. Boughton,* 123 Cal. App. 4th 379, 388 (2004)). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016). FEMA's unjust enrichment claim fails for two reasons.

*First*, FEMA and the Debtors are not in a contractual relationship. PG&E did not receive any disaster relief from FEMA in connection with the wildfires; there is in fact no contractual relationship at all between the Debtors and FEMA. Absent such a contractual relationship, FEMA must plead—but cannot plead—that the Debtors obtained some benefit as a result "of fraud, duress, conversion or similar conduct." *McBride,* 123 Cal. App. 4th at 388. Even if the Debtors had received

some benefit from FEMA (and they have not as described below), there is no allegation of fraud, duress or conversion. The alleged negligent ignition of a wildfire does not fit into any of these categories.

*Second,* unjust enrichment requires that the defendant have actually received a benefit from the plaintiff. Here, as noted, the Debtors have not received *anything* from FEMA. FEMA is thus left to argue that the Debtors "received an unjust enrichment from the Federal government because the Debtor has not accepted the financial burden resulting from its conduct and instead, has relied on the public fisc to make the victims of the fire whole." *See, e.g.*, Claim No. 59734, Attach. to Proof Claim at 4. This claim cannot be supported by any evidence. The Debtors have entered into a settlement with the TCC, which this Court approved, whereby the Debtors are providing $13.5 billion to compensate wildfire victims for the losses they suffered. *See* Dkt. No. 5038 (Tort Claimants RSA Motion); Dec. 17, 2019 Hr'g Tr. at 302:3-9 (approving the Tort Claimants RSA Motion). That consensual resolution of the wildfire claims against the Debtors was the result of many factors, including in particular the Debtors' ability to pay the wildfire claims without rendering the Debtors insolvent, the relative risks that the Debtors and the wildfire claimants faced in the Tubbs trial and the estimation proceedings and the respective assessments of the values of the wildfire claims. FEMA cannot possibly establish that this settlement amount would somehow have been different (*i.e.*, higher) but for the amount of disaster assistance the FEMA has provided.

This theory of unjust enrichment also directly contradicts the text of the Stafford Act, which permits recovery from recipients of disaster relief (which the Debtors are not) only in circumstances where that recipient has received duplicative benefits. *See* 42 U.S.C. § 5155(c) ("A person receiving Federal assistance for a major disaster or emergency shall be liable to the United States to the extent that such assistance *duplicates benefits* available to the person for the same purpose from another source. (emphasis added)). In other words, FEMA is authorized to recover public assistance only in two circumstances: (1) from the person or entity that caused a condition requiring assistance where such condition was the result of an intentional act or omission; or (2) from the recipient of FEMA aid (such as the State of California) when that recipient has also recovered its losses from another party, such as the person or entity that caused the loss. Outside of the context of

intentional acts, the entire point of the Stafford Act is to make sure that a recipient of aid is not paid twice. To support its unjust enrichment claims, FEMA argues that the victims have not been fully compensated. *See, e.g.*, Claim No. 59734, Attach. to Proof Claim at 4. If the victims have not been fully compensated, then they cannot have received duplicative benefits. FEMA's argument therefore establishes that it does not have a right to recovery from those victims because there have not been any duplicative benefits. FEMA cannot then elide the intentionality requirement for recovery from the Debtors by trying to fill the gap with the state law of unjust enrichment.

## CONCLUSION

The Debtors reserve all rights to be heard before the Court in connection with the Objection (and any joinders thereto), to amend, supplement, or otherwise modify this Joinder prior to or during the preliminary hearing on the Objection, and to assert such other and further objections prior to the final adjudication of the matter.

For the reasons set forth in the Objection and explained above, the Debtors respectfully request that the Court enter an order disallowing and expunging the FEMA Claims identified in the Objection.

Dated: February 5, 2020

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER & BENVENUTTI LLP**

/s/ *Paul H. Zumbro*

*Attorneys for Debtors and Debtors in Possession*