WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **DECLARATION OF ROBERT W. PERRIN IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(e), FED. R. BANKR. P. 2014(a) AND 2016, AND THE ORDER AUTHORIZING THE DEBTORS TO EMPLOY PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS FOR AUTHORITY TO RETAIN AND EMPLOY LATHAM & WATKINS LLP AS SPECIAL COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE** |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date:   February 26, 2020<br>Time:   10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102 |

Pursuant to 28 U.S.C. § 1746, I, Robert W. Perrin, hereby declare as follows:

1.      I am a partner of Latham & Watkins LLP, and my office is located at 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071 ("**Latham**" or the "**Firm**").

2.      I submit this Declaration in connection with the Application, submitted on the date hereof (the "**Application**"),[1] of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for authority to employ and retain Latham as their special counsel for certain matters, effective as of January 29, 2019 (the "**Petition Date**"), at its existing agreed-upon hourly rates in effect from time to time and in accordance with its existing reimbursement policies applicable to the Debtors, in compliance with section 327(e) of title 11 of the United States Code (the "**Bankruptcy Code**"), and to provide the disclosure under the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "**Bankruptcy Local Rules**") as applicable to retention under section 327(e) of the Bankruptcy Code.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.  To the extent any information disclosed herein requires amendment or modification upon Latham's completion of further review, or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

3.      Except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Latham, nor any partner of, counsel to, or associate of the Firm represents any entity other than the Debtors in connection with these Chapter 11 Cases.  In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Latham, nor any partner of, counsel to, or associate of the Firm represents any party in interest with respect to the matters for which Latham is to be employed. Additionally, Latham does not represent any party other than the Debtors in connection with the Specific Matters (as defined below) that are the subject of the Application.

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms in the Application.

**Background**

4.      On February 27, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing the Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [Dkt No. 707] (the "**OCP Order**") authorizing the Debtors to retain and compensate legal services professionals that the Debtors employ in the ordinary course of business (collectively, the "**Ordinary Course Professionals**") subject to the terms of the OCP Order.  Latham has served as counsel to the Debtors prior to the Petition Date and has continued to serve in such capacity pursuant to the OCP Order.  Pursuant to the OCP Order, the Debtors previously filed the *Declaration and Disclosure Statement of Robert W. Perrin on Behalf of Latham & Watkins LLP* (the "**Prior Perrin Declaration**"), annexed as Exhibit A-29 to the *Notice of Filing of (I) Ordinary Course Professional Declarations and Retention Questionnaires and (II) List of Additional Ordinary Course Professionals* [Dkt. No 1130].

5.      While Latham was approved and has been serving as an Ordinary Course Professional in the Chapter 11 Cases, recent developments—particularly in the securities class actions—have compelled Latham to dedicate significantly more time to its representation of the Debtors.  Based on my discussions with the Debtors, the services they have asked, and expect to ask, Latham to perform in connection with the Specific Matters will exceed the caps set forth in the OCP Order; accordingly, the Debtors seek approval of Latham as special counsel in connection with the Specific Matters pursuant to section 327(e) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, as contemplated by paragraph 2(ix) of the OCP Order.  Latham has been fully compensated pursuant to the terms of the OCP Order for all fees and expenses incurred through September 30, 2019, and has been compensated for all time incurred through October 31, 2019, with the exception of one October invoice in the amount of $237,087.30, the payment of which would have caused Latham to exceed the cap imposed by the OCP Order.  Latham intends to apply for all compensation and reimbursement of this amount, and for all additional expenses incurred after November 1, 2019 pursuant to the procedures approved by the Court in the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered on February 27, 2019 [Dkt. No. 701].  Latham's continued representation of PG&E in these matters, and specifically in the Pre-

Petition Securities Class Action (as defined below), is the most efficient and cost-effective path for PG&E.

6.     Latham currently represents and/or advises PG&E (i) in two securities class actions, one of which was filed pre-petition and one that was filed post-petition, including related insurance counseling; (ii) with respect to six pre-petition derivative actions pending in federal and state court related to the 2017 and 2018 Northern California wildfires; (iii) regarding compliance issues stemming from the settlement of a derivative action in connection with the San Bruno accident; and (iv) in a variety of environmental regulatory matters (together, (i) through (iv), the "**Specific Matters**").  The Specific Matters are described in more detail below.

## A.     The Securities Class Actions

### 1.     The Pre-Petition Securities Class Action

7.     On September 10, 2018, the District Court for the Northern District of California entered an order appointing plaintiff Public Employees Retirement Association of New Mexico ("**PERA**") as lead plaintiff in a securities class action initially filed in June 2018 styled *In re PG&E Corporation Securities Litigation* (No. 18-cv-359, N.D. Cal.) (the "**Pre-Petition Securities Class Action**").  *See In re PG&E Corporation Securities Litigation* (Case No. 18-CV-359, N.D. Cal.), Dkt. No. 62.  On November 9, 2018, PERA filed its consolidated class action complaint on behalf of a putative class of current and former PG&E shareholders, alleging that 13 representations made by certain of PG&E's officers regarding PG&E's fire safety practices were false and constituted violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 promulgated thereunder.  *Id.*, Dkt. No. 83.  PERA alleged that the falsity of those statements was revealed by the 2017 and 2018 Northern California wildfires (the "**North Bay Fires**") and the ensuing investigations.  PERA alleged a class period from April 29, 2015 through June 8, 2018.  On December 14, 2018, PERA amended its complaint to include allegations related to the 2018 Northern California wildfire that started in Camp Creek Road (the "**Camp Fire**").  The second amended complaint alleged 19 misrepresentations regarding PG&E's fire safety practices, and alleged the same class period and violations of the Exchange

1    Act.[2]

2           8.     On February 22, 2019, after the Debtors filed the bankruptcy petitions, a new securities

3    class action was filed by plaintiffs York County on behalf of the County of York Retirement Fund, City

4    of Warren Police and Fire Retirement System and Mid-Jersey Trucking Industry & Local No. 701

5    Pension Fund (the "**Noteholder Plaintiffs**"). *See York County, et al. v. Rambo, et al.* (Case No. 19-cv-

6    994, N.D. Cal.), Dkt. No. 1. The Noteholder Plaintiffs alleged that they purchased senior notes issued

7    by the Utility on alleged misrepresentations by underwriters and certain of PG&E's current and former

8    officers and directors. The Noteholder Plaintiffs alleged violations of Sections 11 and 15 of the

9    Securities Act of 1933.

10          9.     On May 28, 2019, PERA and the Noteholder Plaintiffs (together, the "**Securities**

11   **Plaintiffs**") filed the Third Amended Complaint (the "**TAC**"). The TAC combines the allegations from

12   the two securities class actions and asserts putative classes of both equityholders and noteholders. *See*

13   *In re PG&E Corporation Securities Litigation* (Case No. 18-CV-359, N.D. Cal.), Dkt. No. 121. The

14   TAC names PG&E and certain current and former directors and officers as defendants.

15         10.    On October 21, 2019 (the bar date), the Securities Plaintiffs filed proofs of claim against

16   both Debtors in the Chapter 11 Cases. On December 9, 2019, nearly two months after the Securities

17   Plaintiffs filed their proofs of claim, the Securities Plaintiffs filed a motion (the "**Rule 7023 Motion**")

18   requesting (1) that the Court apply Bankruptcy Rule 7023 to their proofs of claim, and (2) that the Court

19   enter an order establishing a briefing schedule for the Securities Plaintiffs' motion to certify the putative

20   classes asserted in the TAC. *See* Dkt. No. 5042. The Rule 7023 Motion is set to be heard on January

21   29, 2020, with the Debtors' opposition due January 14 and the Securities Plaintiffs' reply due January

22   22.

23          **2.**     **The Post-Petition Securities Class Action**

24         11.    On October 25, 2019, a purported PG&E shareholder filed a securities class action

25

26   _____

[2] The Debtors sought to enjoin the Pre-Petition Securities Action on the basis that the automatic stay
27   should be extended to the current and former officers named as defendants; however, this Court found
that the automatic stay should not extend to the individual defendants. *See Order Denying Motion for*
28   *Preliminary Injunction*, Adv. Pro. No. 19-03039 (DM), Dkt. No. 23. Pursuant to the parties' stipulation,
the individual defendants filed their motion to dismiss the Pre-Petition Securities Action on October 4,
2019. These motions have been fully briefed, and are currently under submission with the District Court.

alleging that certain of PG&E's officers made pre- and post-petition misrepresentations regarding PG&E's wildfire prevention and safety protocols related to rolling power cuts that PG&E implemented to minimize wildfire risk. *Vataj v. Johnson, et al.* (Case No. 19-cv-6996, N.D. Cal.), Dkt. No. 1. The plaintiff asserts a class period from December 11, 2018 through October 11, 2019, and alleges violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Motions to serve as lead plaintiff were filed on December 24, 2019. The hearing on the motions is set for February 6, 2020.

### B. The Pending Derivative Actions

12. PG&E has been named as a nominal defendant in six pre-petition derivative actions (the "**Derivative Actions**"). The three pending federal derivative actions are styled *Oklahoma Firefighters Pension & Retirement System v. Chew et al.* (No. 18-cv-04698, N.D. Cal.), *Williams v. Earley et al.* (No. 18-cv-7128, N.D. Cal.), and *Blackburn v. Meserve et al.* (No. 19-cv-00501, N.D. Cal.). The three pending state derivative actions are styled *In re California North Bay Fire Derivative Litigation* (No. CGC-17-562591), *Bowlinger v. Chew et al.* (No. CGC-18-572326), and *Hagberg v. Chew et al.* (No. CGC-19-573190). The plaintiffs in the Derivative Actions allege that certain current and former officers and directors failed to implement fire safety measures in advance of the North Bay Fires and/or the Camp Fire. Although plaintiff in the *Bowlinger* action argued that the automatic should not extend to the individual defendants, on April 30, 2019, this Court entered an order granting the Debtors' motion enjoin plaintiff from proceeding against the individual defendants. Dkt. No. 1770.

### C. The San Bruno Derivative Action

13. Latham continues to represent PG&E in connection with its obligation, arising under the settlement of the San Bruno Fire Derivative Cases (Case No. JCCP 4648-C), to report PG&E's progress implementing corporate governance and gas operations therapeutics on a quarterly basis to the San Mateo Superior Court and City of San Mateo. PG&E's reporting obligations continue through January 16, 2023.

### D. Environmental Matters

14. Latham has been representing and advising PG&E regarding federal law compliance issues associated with PG&E's implementation of a remedy to address contamination at the Topock

Compressor Station Project Site pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (Superfund Act), including on compliance with respect to the National Historic Preservation Act and Endangered Species Act.

### Scope of Services

15. As contemplated by the Application, the Debtors seek to engage Latham as special counsel to provide professional services in connection with the Specific Matters.

16. As to the Pre-Petition Securities Class Action, Latham has been coordinating and will continue to coordinate PG&E's objection to the Securities Plaintiffs' Rule 7023 Motion with Debtors' bankruptcy counsel (which motion is currently under submission to this Court), and in the event the Rule 7023 Motion is granted, Latham will represent PG&E in connection with any motion to certify the putative classes, and with any estimation proceedings (should such proceedings be necessary). Further, Latham is overseeing potential settlement efforts regarding the pending securities class actions, which has required and will continue to require a significant amount of work coordinating and negotiating with the various interested parties, including the various plaintiffs, the current and former officer defendants, the current and former director defendants, the underwriter defendants, and the insurance carriers whose coverage may be applicable to any award or settlement related to those actions. In connection with these potential settlement efforts, Latham has been and will continue to: analyze the merits of the securities claims; confer with experts and analyze the possible exposure of the securities claims; respond to requests for documents made by plaintiffs; and advise PG&E in all respects related to the securities class actions.[3]

17. Latham will also continue to represent the Debtors in connection with the Derivative Actions. Latham's representation will include, but will not be limited to, preparing case management statements in those actions, drafting motions if any are required, managing negotiations, and appearing and participating in hearings.[4]

---

[3] Latham would also represent PG&E in the event that there is an estimation of the Securities Plaintiffs' claims in the Chapter 11 Cases.

[4] In the restructuring support agreement approved by the Court on December 19, 2019, the Debtors assign the derivative claims to the Fire Victim Trust (as defined therein), which may diminish the amount of work Latham is required to perform with respect to the Derivative Actions.

18.     Moreover, Latham will continue to provide quarterly reports as required in the San Bruno settlement through January 16, 2023.

19.     With respect to environmental regulatory matters, Latham will continue to represent and advise PG&E regarding federal law compliance issues associated with PG&E's implementation of a remedy to address contamination at the Topock Compressor Station Project Site pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (Superfund Act), including on compliance with the National Historic Preservation Act and Endangered Species Act.

20.     Latham will also provide all other necessary legal services for the Debtors, as related to the above matters, in connection with the above-captioned Chapter 11 Cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

## Latham's Qualifications

21.     Latham is well-qualified to represent the Debtors on all matters with the scope of the proposed engagement.  The Specific Matters for which Latham's retention is sought as special counsel in connection are expected to be substantially the same as those performed under the OCP Order, although the scope of such services is expected to increase in connection with the Chapter 11 Cases, necessitating the filing of the Application.  The Debtors seek to retain Latham in connection with the Specific Matters because of Latham's recognized expertise in matters such as the Specific Matters, and extensive experience and knowledge in connection with the Specific Matters themselves as a result of representing the Debtors in connection with such matters before and during the Chapter 11 Cases.

22.     Latham is highly-qualified with respect to both securities litigation defense and environmental regulation matters.  Latham's securities litigation defense practice has been recognized as a top-tier practice among various legal publications.  Latham's environmental regulatory practice is also nationally recognized as a leader in representing oil, gas, and energy companies regarding environmental regulation matters.

23.     Further, as noted above, Latham already has extensive experience advising and representing the Debtors on the various pending litigation and environmental law matters.  Accordingly,

Latham is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

24.     Accordingly, I believe that Latham is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

<b><u>Terms of Latham's Engagement</u></b>

25.     The terms of Latham's current representations of the Debtors in the above-referenced matters are set forth herein.  The Debtors are longstanding clients of the Firm and do not have an engagement letter.

<b><u>Coordination With the Debtors' Other Professionals</u></b>

26.     Latham is aware that the Debtors have retained other law firms in connection with the Chapter 11 Cases, including in connection with various civil litigation matters.  Latham has been coordinating and will continue to coordinate closely with the Debtors and their other retained professionals to delineate the scope of services and avoid duplication of services wherever reasonably possible.

<b><u>Compensation and Fee Applications</u></b>

27.     Prior to the filing of this Application, Latham was compensated pursuant to the OCP Order.  Pursuant to the OCP Order, between the Petition Date and the date hereof, Latham has been paid in the amount of $968,644.10 on account of its post-petition fees and expenses.  Currently, Latham is owed approximately $237,087.30 on account of its post-petition services as an ordinary course professional for the Debtors for the month of October 2019, and $291,112.50 for the month of November 2019.  Latham additionally incurred $291,893.85 in fees and expenses for the month of December 2019 (unbilled).

28.     Subject to Court approval of this Application, Latham intends to apply for compensation for professional services rendered on an hourly basis and the reimbursement of reasonable expenses. The hourly rates and corresponding rate structure Latham will apply reflect Latham's negotiated hourly rates with respect to the Debtors' engagement of Latham in connection with the Specific Matters.  These rates are consistent with the rates charged by Latham under the OCP Order and are not varied based on whether a fee application is required.

29.     In accordance with the OCP Order, following entry of the order approving the Application (or, in accordance with the OCP Order, for any prior period to the extent Latham's fees and expenses will exceed the applicable caps set forth in the OCP Order), Latham will seek allowance of its fees and reimbursement of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, effective February 19, 2014, and the United States Trustee Guidelines Region 17, updated December 16, 2016 (the "**Local Guidelines**"), the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**"), the OCP Orders, and any additional further Order of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**").  Latham will seek allowance of its fees and reimbursement of its expenses beginning with one unpaid invoice for October 2019 in the amount of $237,087.30, and all fees and expenses incurred after November 1, 2019. All fees attributable to the period from October 1, 2019 through December 31, 2019, will be charged at the hourly rates set forth below.  Fees attributable to the period after December 31, 2019, will be charged at Latham's 2020 hourly rates.[5]

30.     Latham and the Debtors have not agreed to any variations from, or alternatives to, Latham's standard billing arrangements negotiated with the Debtors and also used under the OCP Order. As discussed in more detail below, Latham rates are subject to periodic change in the ordinary course of business.  The Latham 2019 hourly rates for the attorneys presently working on the engagement range as follows:

| **Billing Category** | **Range** |
|---|---|
| Partners | $870 to $1,270 |
| Counsel | $885 |
| Associates | $480 to $860 |

[5] As further discussed below, Latham's 2020 rates are subject to customary rate adjustment to be negotiated and agreed to by the Debtors and Latham in a manner consistent with past practice.

<table>
<tr><td>1</td><td>Paraprofessionals</td><td>$340 to $395</td></tr>
</table>

31.     The Latham hourly rates are set at a level designed to compensate Latham fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]  Latham represented the Debtors before the Petition Date using the hourly rates listed above.

32.     Latham will maintain detailed, contemporaneous time records in six-minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, the Fee Guidelines, and the Orders.  Latham timekeepers will record time using billing categories that substantially conform to those categories set forth at section 8(b) of the U.S. Trustee Guidelines, and will record the amount of time per task within each billing category.  Furthermore, Latham will maintain records of expenses incurred and itemize those expenses as well as summarize them by expense categories established as part of Latham's customary billing procedures.  These will include such items as photocopying and scanning documents ($0.10 per page); at-cost expense for large-volume print jobs over 100 pages when formatted in Word or Adobe Acrobat applications; long-distance and roaming mobile phone charges; use of fee-based research databases (90% of the third-party vendor rate or 1.25 times our volume-discounted cost depending on vendor); couriers and air freight (1.10 times our volume-discounted cost); messengers (at third-party vendor rate); client-specific work by staff; staff overtime and meals (as defined by federal or local law); transportation (where dictated by safety reasons, and which may include a transaction fee); word processing; postage, at cost; supplies (for large volume only); and other reasonable costs and expenses.  For disbursements over $1,500, we may request specific payment arrangements or that advances be provided.  In addition, when Latham personnel travel, Latham generally utilizes business class for international flights.

---

[6] Like many other law firms, Latham typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (i) ordinary course step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "**Step Increase**"), and (ii) periodic (generally yearly) rate increases with respect to each level of seniority (a "**Rate Increase**"). The Step Increases do not constitute "rate increases" (as the term is used in the U.S. Trustee Guidelines).  As noted above, Latham's 2020 rates are subject to customary Rate Increases to be negotiated and agreed to by the Debtors and Latham in a manner consistent with past practice. Fees attributable to the period after December 31, 2019, will be charged at Latham's 2020 hourly rates.  Latham shall provide notice to the U.S. Trustee after Latham's 2020 rates are agreed by Latham and the Debtors.

Through a third-party travel management company, in-house travel services are provided for our U.S. offices. A ticketing fee of $30 will be charged for fares up to $300, and $75 will be charged for fares over $300. There are no additional charges for changes to reservations or for reimbursement of unused tickets. Our personnel bill for travel time, but if they work on another matter while traveling for the Debtors, the Debtors will not be billed for that time. Latham will charge the Debtors for these expenses in compliance with all applicable rules, procedures and orders of the Court. Latham understands that interim and final fee awards are subject to approval by this Court.

**Latham's Prepetition Claims**

33. On October 21, 2019, Latham filed two proofs of claim related to pre-petition claims held against PG&E Corp. and the Utility, in the amounts of $219,397.95 and $206,459.45, respectively. The proofs of claim are duplicative, except that the proof of claim filed against PG&E Corp. includes an invoice related to services provided to only PG&E Corp.

**No Interest Adverse to the Debtors With Respect to the Specific Matters**

34. Latham maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the Latham personnel who are or were responsible for current or former matters for such clients. The Client Database also includes the name of former clients of Latham attorneys while such attorneys were at a prior firm. Latham's policy is that no new matter may be accepted or opened within Latham without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by Latham. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

35. In connection with the Debtors' proposed retention of Latham, the Firm undertook to determine whether it has any conflicts or other relationships that might cause it to hold or represent an

interest adverse to the Debtors or their estates with respect to the Specific Matters. To do so, Latham searched the names of each Debtor to determine whether it represented any party adverse to the Debtors. The matters in which Latham personnel are currently representing parties adverse (or potentially adverse) to the Debtors, with the Debtors' consent, are as follows:

1. Pembina Pipeline Corporation and affiliates as shareholders in Ruby Pipeline, LLC, in connection with two transportation services agreements with the Debtors.

2. Avenue Capital Group affiliates, Middle River Power, LLC and MRP San Joaquin Energy, LLC, in connection with power purchase agreements with the Debtors.

3. American Commodity Company, in connection with a power purchase agreement and an interconnection agreement with the Debtors.

4. BlackRock Capital Investment Corp. affiliate, Crockett Cogeneration, in connection with power purchase agreements with the Debtors.

5. Avenue Capital Group and BlackRock Capital Investment Corp. affiliates, Crockett Cogeneration, Middle River Power, LLC, and MRP San Joaquin Energy, LLC, in connection with power purchase agreements with the Debtors.

6. Vistra Energy Corporation and its affiliate, Dynegy Marketing and Trade, LLC, in connection with power purchase agreements with the Debtors.

7. Ares EIF Management LLC and Panoche Energy Center, LLC (PEC) on certain regulatory matters arising under California environmental regulations. PEC has a long-term power purchase agreement with the Debtors.

8. Latham has advised and may in the future advise various debt or equity financing sources in connection with providing debtor-in-possession or exit financing in connection with the Chapter 11 Cases.

9. Latham is also advising various lenders and other debt investors in connection with credit facilities to and debt investments in various power projects, which projects have power purchase agreements with the Debtors.

36.     Further, Latham may have previously represented parties adverse to the Debtors in matters unrelated to the Chapter 11 Cases, which, to the best of my knowledge, after due inquiry, are no longer active or have concluded.

37.     To the best of my knowledge, after due inquiry, none of the matters set forth above is related to the Specific Matters for which the Debtors seek to engage Latham pursuant to the Application.

38.     In addition to the foregoing, as part of its intake process in connection with each of the

Specific Matters and again in connection with this Application, Latham performed a conflicts search regarding the names of adversaries in the Specific Matters. To the best of my knowledge, after due inquiry, Latham does not represent any adversary of the Debtors in the Specific Matters.

39. In addition, counsel for the Debtors provided Latham with a list on January 30, 2020 of creditors of the Debtors and other persons and entities who potentially have an interest in the Chapter 11 Cases (the "**Debtors' Parties in Interest List**"). Although, to the best of my knowledge, the matters in which Latham is adverse to the Debtors are identified above, by way of additional disclosure, I also caused attorneys and other professionals working under my supervision to evaluate whether any of Latham's one hundred (100) largest clients by revenue in 2019 (the smallest of which represented approximately 0.2% of Latham's 2019 revenue) (the "**Top 100 Clients**") appeared on the Debtors' Parties in Interest List by checking these names in the Client Database. The chart annexed hereto as **Exhibit 1** identifies Top 100 Clients that also appeared on the Debtors' Parties in Interest List.[7]

40. As noted above, to the best of my knowledge, after due inquiry, Latham's representation of such parties is unrelated to the Specific Matters. While many of the parties on the Debtors' Parties in Interest List may be current or former clients of Latham, or may otherwise be involved in litigation or transactional matters in which Latham represents a client, based on the review described above, I do not believe that Latham holds or represents any interest adverse to the estates with respect to the matters for which Latham is retained by the estates.

41. Accordingly, to the best of my knowledge, after due inquiry, Latham does not represent or hold any interest adverse to the Debtors or their estates with respect to the Specific Matters.

42. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to the Chapter 11 Cases, for persons that are creditors or other parties in interest in the Debtors' Chapter 11 Cases (including those set forth on the Debtors' Parties in Interest List). As part of Latham's customary practice, the Firm is retained in cases, proceedings, and transactions involving

[7] As referenced in Exhibit 1, the term "Current Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years and L&W has at least one open matter. The term "Former Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years, but all matters for such client have since been closed. The term "Prior Client" refers to an entity listed as a client of an L&W attorney while such attorney was at a prior firm. L&W does not disclose connections if time was recorded more than three years before the Petition Date.

many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these Chapter 11 Cases. The Firm does not perform services for any such person in connection with these Chapter 11 Cases, except with the Debtors' express written consent, and as to the matters set forth above. The Firm does not have any relationship with any person, or such person's attorneys, or such person's accountants that would be adverse to the Debtors or their estates with respect to the Specific Matters. From time to time, Latham has referred work to other professionals retained or to be retained in these Chapter 11 Cases, and certain such professionals have referred work to Latham. Also, as part of its practice, Latham appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in this case. Except as disclosed in the Application, Latham does not represent any such parties in relation to the Debtors or these Chapter 11 Cases, and will not do so in the future without the Debtors' consent. Latham does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates in connection with the Specific Matters.

43. Latham may currently represent or formerly may have represented certain of the Debtors' other professionals in matters unrelated to the Debtor and these Chapter 11 Cases. I do not believe that Latham's past or current representation of these other professionals in matters unrelated to the Debtors or these Chapter 11 Cases creates any interest materially adverse to the Debtors with respect to the Specific Matters.

44. Certain insurance companies pay the legal bills of Latham clients. Some of these insurance companies may be involved in these Chapter 11 Cases. None of these insurance companies, however, is a Latham client as a result of the fact that it pays legal fees on behalf of a client of Latham.

45. From time to time, Latham partners, counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds, through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without the knowledge of Latham. To the extent that Latham partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, Latham has a long- standing policy prohibiting attorneys and employees

from using confidential information that may come to their attention in the course of their work. In this regard, all Latham attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

46.     Based on the inquiry above, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, I can attest that Latham neither holds nor represents an interest adverse to the Debtors or their estates with respect to the Specific Matters. Latham will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Latham will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**Attorney Statement Pursuant to U.S. Trustee Guidelines**

47.     The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Fee Guidelines.

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? **Response**: Yes. The rates used herein were specifically negotiated with the Debtors and are lower than Latham's standard hourly rates.

**Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? **Response**: No.

**Question**: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. **Response**: Latham represented the Debtors in connection with the Specific Matters prior to the Petition Date. The applicable rates for 2018 for the attorneys working on the Specific Matters ranged from $830-$1,150 for partners, $840 for counsel, $560-$830 for associates, and $330-$375 for paraprofessionals; effective as of January 1, 2019, Latham and the Debtors agreed to the rates presently applicable to the Specific Matters set forth above. Latham's billing rates and material financial terms with respect to this matter have not changed postpetition; however, as noted above, will be subject to customary adjustment for 2020.

1        **Question**: Has your client approved your prospective budget and staffing plan, and, if so, for

2   what budget period?  **Response**: Latham has recently submitted a budget for its work relating to the

3   securities class action and derivative litigation matters, which remains under review.

4        I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry,

5   the foregoing is true and correct and that this declaration was executed at San Francisco, California on

6   this 5th day of February, 2020.

7                            */s/ Robert W. Perrin*

                            Robert W. Perrin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28