1UNITED STATES BANKRUPTCY COURT

2NORTHERN DISTRICT OF CALIFORNIA

3-oOo-

4  In Re: ) Case No. 19-30088
) Chapter 11
5  PG&E CORPORATION AND PACIFIC )
GAS AND ELECTRIC COMPANY ) San Francisco, California
6) Tuesday, February 11, 2020
Debtors. ) 10:00 AM
7  _____ )
ORAL ARGUMENT ON IMPAIRMENT
8OF SUBROGATION CLAIMS

9STATUS CONFERENCE REGARDING
CONFIRMATION
10
DEBTORS' MOTION TO REJECT
11VLAZAKIS CONTRACT AND GRANT
RELATED RELIEF [5272]
12
MOTION OF WILLIAM B. ABRAMS
13FOR RECONSDIERATION OF THE
ORDER PURSUANT TO 11 U.S.C.
14SECTIONS 363(B) AND 105(A)
AND FED. R. BANKR. P. 6004
15AND 9019 FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE
16DEBTORS AND TCC TO ENTER INTO
RESTRUCTURING SUPPORT
17AGREEMENT WITH THE TCC,
CONSENTING FIRE CLAIMAINT
18PROFESSIONALS, AND
SHAREHOLDER PROPONENTS AND
19(II) GRANTING RELATED RELIEF
[5577]
20
TRANSCRIPT OF PROCEEDINGS
21BEFORE THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE
22
APPEARANCES:
23  For the Debtor: STEPHEN KAROTKIN, ESQ.
Weil, Gotshal & Manges LLP
24767 Fifth Avenue
New York, NY 10153
25(212)310-8000

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For the Debtor:            PETER J. BENVENUTTI, ESQ.
                                Keller & Benvenutti LLP
 2                              650 California Street
                                19th Floor
 3                              San Francisco, CA 94108
                                (415)364-6798
 4
     For George M. Vlazakis,    RONALD F. BERESTKA, JR., ESQ.
 5   Maria Barbis, John Barbis, Stone & Associates
     and Athanasia V. Vlazakis: 2125 Ygnacio Valley Road
 6                              Suite 101
                                Walnut Creek, CA 94598
 7                              (925)938-1555

 8   For North Bay Fire         STEVEN SKIKOS, ESQ.
     Victims:                   Skikos Crawford Skikos & Joseph
 9                              One Sansome Street
                                Suite 2830
10                              San Francisco, CA 94104
                                (415)546-7300
11
     For SLF Fire Victim        RICHARD A. MARSHACK, ESQ.
12   Claimants:                 Marshack Hays LLP
                                870 Roosevelt
13                              Irvine, CA 92620
                                (949)333-7777
14
     For Official Committee of  CECILY ANN DUMAS, ESQ.
15   Tort Claimants:            Baker and Hostetler LLP
                                600 Montgomery Street
16                              #3100
                                San Francisco, CA 94111
17                              (415)659-2600

18   For Governor Gavin Newsom: MATTHEW L. HINKER, ESQ.
                                O'Melveny & Myers LLP
19                              7 Times Square
                                New York, NY 10036
20                              (212)326-2000

21   For Official Committee of  GREGORY A. BRAY, ESQ.
     Unsecured Creditors:       Milbank, LLP
22                              2029 Century Park East
                                33rd Floor
23                              Los Angeles, CA 90067
                                (424)386-4000
24

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For United States of America: | MATTHEW JORDAN TROY, ESQ. U.S. Department of Justice, Civil |
| 2 | | Division |
| | | 875 Ben Franklin Station |
| 3 | | Washington, DC 20044 |
| | | (202)514-9038 |
| 4 | | |
| | For California State | PAUL J. PASCUZZI, ESQ. |
| 5 | Agencies: | Felderstein Fitzgerald et al LLP |
| | | 500 Capitol Mall |
| 6 | | #2250 |
| | | Sacramento, CA 95814 |
| 7 | | (916)329-7400 |
| 8 | For Adventist Health | REBECCA J. WINTHROP, ESQ. |
| | System/West and Feather | Norton Rose Fulbright US LLP |
| 9 | River Hospital: | 555 South Flower Street |
| | | Forty-First Floor |
| 10 | | Los Angeles, CA 90071 |
| | | (213)892-9200 |
| 11 | | |
| | For California Public | SEAN A. MITCHELL, ESQ. |
| 12 | Utilities Commission: | Paul, Weiss, Rifkind, Wharton & |
| | | Garrison |
| 13 | | 1285 Avenue of the Americas |
| | | New York, NY 10019 |
| 14 | | (212)373-3000 |
| 15 | | |
| 16 | | |
| 17 | | |
| | Court Recorder: | ANKEY THOMAS |
| 18 | | United States Bankruptcy |
| | | Court |
| 19 | | 450 Golden Gate Ave. |
| | | San Francisco, CA 94102 |
| 20 | | |
| 21 | Transcriber: | MICHAEL DRAKE |
| | | eScribers, LLC |
| 22 | | 7227 N. 16th Street |
| | | Suite #207 |
| 23 | | Phoenix, AZ 85020 |
| | | (973)406-2250 |
| 24 | | |
| | Proceedings recorded by electronic sound recording; | |
| 25 | transcript provided by transcription service. | |

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  SAN FRANCISCO, CALIFORNIA, TUESDAY, FEBRUARY 11, 2020, 10:00 AM

2                              -oOo-

3       (Call to order of the Court.)

4            THE COURT:  Good morning, everyone.

5            IN UNISON:  Good morning, Your Honor.

6            THE CLERK:  The matter of PG&E Corporation.

7            THE COURT:  Mr. Benvenutti, are you still up to bat on

8  this one?

9            MR. BENVENUTTI:  I am, Your Honor.

10           THE COURT:  Okay.

11           MR. BENVENUTTI:  Thank you.

12           THE COURT:  Let's do it.  You know, I'm preparing for

13  today.  And looking at the motions, it had dawned on me that if

14  PG&E hadn't had the horrible fires, this dispute with Vlazakis

15  would have been settled about a year ago.  And it's -- I mean,

16  it's so unrelated to the fires and why the company is in

17  bankruptcy.  So like how did this ever get to this point?

18           MR. BENVENUTTI:  Well, Your Honor, I think the history

19  may actually belie that because there has been a history of,

20  what, four years.

21           THE COURT:  A lot of time.

22           MR. BENVENUTTI:  There's been a history of four years

23  with this issue --

24           THE COURT:  Yeah.

25           MR. BENVENUTTI:  -- which has not -- had not certainly

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  as to the time of the bankruptcy filing led to a resolution.

2  THE COURT:  I know.  But if I had been a superior

3  court judge, two years ago I would've sent you all to mediation

4  and locked you up.  That would have been the end of it.  You

5  would have come out all settled.

6  MR. BENVENUTTI:  Your Honor, who's to say that's not

7  the right result?  But that's not one that any of us can

8  achieve as we're standing here today.

9  So Peter Benvenutti, Keller & Benvenutti, on behalf of

10  PG&E.  So, Your Honor --

11  THE COURT:  So I want you to focus on -- let's see if

12  I can break it down correctly.  I went back and reviewed the

13  motion to -- for relief of stay and today's motion.  I know

14  you're going to say the things you want to say, and I will let

15  you.  But can we break it down into simple terms that

16  there's -- the two parties didn't choose each other but they

17  ended up with common wall.  And they tried in the settlement --

18  in the agreement, excuse me, not the settlement.  The agreement

19  in 2017, PG&E said we can do this fix, we'll give you the

20  proper line, we'll divide the lot, et cetera, et cetera.  But

21  for reasons perhaps both parties -- out of their control, that

22  was not doable.

23  So then the second approach was, okay, PG&E said we'll

24  do this other fix.  And then PG&E decided, no, that's

25  inconsistent with our own needs for the underground -- the gas

PG&E Corp, Pacific Gas And Electric Company

1    lines.

2         And so then the next thing that happened is PG&E sues

3    the Vlazakises for nuisance and injunctive relief, nothing

4    about contracts.  So it strikes me -- and my comments before

5    were not to ignore the history.  But analytically, it seemed to

6    me the course of conduct was such there's no more contract to

7    even talk about.  There's two people with a wall between them

8    that's got a problem and that couldn't fix it consensually.  So

9    the company, your client, the debtors, sued for -- essentially,

10   we want to tear the wall down, nothing about a contract.  There

11   wasn't a breach of contact.  It was for injunctive relief that

12   the Vlazakises are encroaching on our property and they're a

13   nuisance and please fix our rights.

14        So with that background, have I got it right at least

15   that --

16        MR. BENVENUTTI:  Yeah.  Yeah.  I can quibble with the

17   characterizations, but I think the essentials are correct and

18   certainly for these purposes.

19        That would be fine if the Vlazakises were not

20   attempting now to enforce the contract.  And they're trying to

21   enforce the contract not just in terms of a damage claim;

22   they're trying to seek specific performance.

23        PG&E's position, which we made no secret of, is that

24   PG&E was excused from further performance under the contract

25   with the first failed attempt --

PG&E Corp, Pacific Gas And Electric Company

1    THE COURT:  Right.

2    MR. BENVENUTTI:  -- to solve the problem.

3    THE COURT:  Or maybe the second one but --

4    MR. BENVENUTTI:  Well, very well.  But there's a

5    dispute about that.  That's disputed.  And what the Vlazakises

6    say is we have a contract that still has performance due on

7    PG&E's part.  So --

8    THE COURT:  Well, that --

9    MR. BENVENUTTI:  -- they don't dispute that, as to

10   PG&E, there's future performance required or --

11   THE COURT:  But if there were on bankruptcy and you

12   didn't have the motion to reject as a tool in your toolbox,

13   what would your defense be?

14   MR. BENVENUTTI:  The defense would be defend.  The

15   defense would be that performance was excused.

16   THE COURT:  There's no contract anymore.

17   MR. BENVENUTTI:  There's no -- that's right.

18   THE COURT:  Okay.

19   MR. BENVENUTTI:  That's exactly right.  And we'll --

20   THE COURT:  So why isn't that a good defense if you go

21   there now?

22   MR. BENVENUTTI:  Well, it might be a good defense,

23   Your Honor.  But in order to get there, what we're going to

24   have to do which we're going to have to litigate a jury trial

25   in Superior Court.  And we run the risk of losing.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  Well, that's --

2          MR. BENVENUTTI:  Okay?  We run the risk of losing.

3   And if we lose, then we end up with the prospect of specific

4   performance of a contract which, if imposed on PG&E, would be

5   burdensome, would be disruptive.  It's disruptive in two

6   respects.

7          THE COURT:  Well, but maybe that assumes that -- well,

8   okay, yes, disruptive because they have to redo -- listen, I

9   happen to know enough about the underground gas pipes that go

10  through West Berkeley.  I mean, it's a problem that everybody,

11  including you and I who live in the East Bay, that know about.

12  So --

13         MR. BENVENUTTI:  Right.

14         THE COURT:  But it's a problem.

15         MR. BENVENUTTI:  So we're here -- we're here now

16  because the Vlazakises are taking the position that it is an

17  executory contract.

18         THE COURT:  Well, in this motion --

19         MR. BENVENUTTI:  And --

20         THE COURT:  -- today, they say it's not an enforceable

21  one that you can reject.

22         MR. BENVENUTTI:  Well, they're saying that.  And the

23  reason they say that is because they say, well, it's executory

24  on PG&E's part.  It's not executory as to them because they

25  don't have obligations of future performance.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1       THE COURT:  But you don't agree with that.

2       MR. BENVENUTTI:  I don't agree with that, no.

3       THE COURT:  All right.

4       MR. BENVENUTTI:  No.  If -- take their premise if

5   they -- that it -- that there are future obligations or

6   performance on PG&E's part.

7       THE COURT:  Right.

8       MR. BENVENUTTI:  Then if that's the case, with that

9   assumption goes the conclusion that the contract remains is

10  enforceable.  And if the contractor remains enforceable, then

11  they also have obligations under the contract.

12      THE COURT:  Well, no, I agree with you that they -- it

13  seems like they do.  I mean, but the point is, can you make the

14  argument to the Superior Court, whether it's in front of a jury

15  or on motion, to say there is no more contract anymore --

16      MR. BENVENUTTI:  Your Honor, we --

17      THE COURT:  -- because of the course of -- the pattern

18  including, I might add, your client's decision to not to

19  enforce a contract but to declare rights when, you know -- as

20  to the common wall and the problems of the wall?

21      MR. BENVENUTTI:  Well, Your Honor, here's what I'm

22  told.  All right?  I'm not a state court litigator, so I'm

23  relying upon what I've been told by PG&E's litigation counsel

24  and the state court litigation.  What I've been told is if this

25  cross-complaint is permitted as to the contract claims that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1   includes this specific performance request, then it is

2   virtually certain that there will be a jury trial.  These

3   matters will be resolved as part of a single jury trial.  It's

4   not going to be susceptible to summary judgment.

5        THE COURT:  You don't think --

6        MR. BENVENUTTI:  This is not summary judgment.

7        THE COURT:  You don't think as a matter of law you can

8   argue that there's no contract any longer?

9        MR. BENVENUTTI:  We may be able to do that, Your

10  Honor.  But to get there, we're going to end up with losing the

11  trial date.  And we have the risk which we think we have a

12  right in bankruptcy to protect ourselves against.  We have the

13  risk that the judge sees this -- or the jury sees this

14  differently in Superior Court.  And we end up having to perform

15  a contract which is inherently burdensome, inherently

16  disruptive, for the reasons that have been spelled out in the

17  motion.

18       THE COURT:  Well, I --

19       MR. BENVENUTTI:  And so --

20       THE COURT:  Well, what about --

21       MR. BENVENUTTI:  -- that's one of the --

22       THE COURT:  Well, what about the criticism of this is

23  a litigation tactic?

24       MR. BENVENUTTI:  Well --

25       THE COURT:  They're making some pretty good arguments

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  about them.

2       MR. BENVENUTTI:  Well, there's no -- there's no

3  question, there's no question that it was the prospect of

4  having to respond to this cross-complaint that caused PG&E to

5  focus on the contract and the prospect and rejection of it.  No

6  question about that.

7       THE COURT:  But one of the things we both learned in

8  first-year law school is when you sue somebody, you might get

9  sued back.

10      MR. BENVENUTTI:  Absolutely.

11      THE COURT:  Right?

12      MR. BENVENUTTI:  No question.

13      THE COURT:  That's why lawyers don't sue their former

14  clients usually.  So you sue them and they sue back.  Guess

15  what?

16      MR. BENVENUTTI:  No -- no --

17      THE COURT:  Welcome to the world.

18      MR. BENVENUTTI:  No question.

19      THE COURT:  So, I mean, but you could've made this

20  motion to reject before you sued them.  I think that's what

21  troubles me here, is you're now saying, well -- you're not

22  agreeing with me, but you're saying maybe there isn't a

23  contract anymore because there was a failure of -- no, no.

24  There's just simply no longer a contract.  But some superior

25  court judge or some jury might say there is.  Well, let's

PG&E Corp, Pacific Gas And Electric Company

1    switch topics.

2          MR. BENVENUTTI:  Let -- may I address that point,

3    Judge?

4          THE COURT:  Yes.

5          MR. BENVENUTTI:  Because I think the Agarwal case is

6    instructive on this point.  I'm sure the Court has looked at

7    that case.  And --

8          THE COURT:  Of course.

9          MR. BENVENUTTI:  -- in essence, in essence, what it

10   says -- in essence, what it says is that the fact that a

11   rejection motion may be brought because there's a litigation

12   advantage to it doesn't make the rejection motion in bad faith.

13   In that case, what the court did -- the bankruptcy court looked

14   at the motion on the merits, made a judgment that it was

15   justified by the business judgment of the debtor, and the Ninth

16   Circuit upheld that.  And it mentioned bad faith.  And it

17   said -- essentially, it's a decision.  That's not bad faith

18   even though, even though if sustained claims by the plaintiff,

19   the doctor who had been nonrenewed by the debtor medical

20   association, sustained claims by the doctor for retaliatory

21   termination and for unfair competition --

22         THE COURT:  Okay.

23         MR. BENVENUTTI:  -- which are claims which certainly

24   have elements of bad faith about them.  But I think the lesson

25   to take from that case is relevant here, is that the

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  proposition that there is a litigation benefit to bringing

2  rejection doesn't negate the appropriateness of a business

3  judgment analysis which is, as the Court is aware, a highly

4  deferential standing.

5           THE COURT:  Yeah.  I understand.  But again, like

6  every case, it's fact-driven.  And it's in context.  So the

7  history of this case is, as I said, PG&E goes to their next

8  door neighbor and says let's try to fix this, we'd like to do

9  it this way.  That fails.  Then they say we'll try to do it

10 this way.  And then PG&E itself says, well, I'm sorry, we got a

11 bad -- that was a dumb idea, we shouldn't have suggested it to

12 you because it's going to screw up our gas line.  So then

13 instead of doing anything else, they sue them.

14           Anyway, let's switch topics.  What happens if I grant

15 the motion to reject?  Does the wall fall down?  I mean, am I

16 supposed to sit here and say that's a good result, this wall

17 has been there for longer than you've been around, maybe longer

18 than I've been around, I don't know.  You go in there.  Your

19 side takes down your side of the wall.  And the Vlazakises'

20 wall falls down.  That's not a good thing.

21           MR. BENVENUTTI:  Well, Your Honor, two points to that.

22 Number one, I expect that the Superior Court in fashion relief

23 will listen to what the Vlazakises have to say --

24           THE COURT:  Right.

25           MR. BENVENUTTI:  -- about what happens with the wall.

PG&E Corp, Pacific Gas And Electric Company

1   And there is an opportunity for appropriate relief that's

2   consistent with their interest to be fashioned there.  I have

3   no idea what that is.  But that's an issue that the Superior

4   Court can deal with.

5           THE COURT:  No.  But you want me to take that away.

6           MR. BENVENUTTI:  No.

7           THE COURT:  Well, okay.  So I grant the motion to

8   reject.  Does something happen to the wall before you go to

9   trial?

10          MR. BENVENUTTI:  No.  Nothing is going to happen to

11  the wall before we go to trial.  The reason --

12          THE COURT:  Why --

13          MR. BENVENUTTI:  The reason --

14          THE COURT:  Why not?  Then what's the purpose of the

15  rejection?

16          MR. BENVENUTTI:  What it does is it takes away from

17  the Vlazakises the ability to obtain specific performance of

18  the contract.

19          THE COURT:  But it takes away from you or your

20  colleague the ability to say, you know, we don't believe there

21  even is a contract, but the bankruptcy judge bought our line

22  that there is one that allows us to reject.  What if you tell

23  the Superior Court that the Bankruptcy Court determined that

24  there's no longer any contract?

25          MR. BENVENUTTI:  Well, Your Honor, our position -- our

PG&E Corp, Pacific Gas And Electric Company

1  position has been all along that we're bringing this motion,

2  reserving the right to assert the contract defenses.

3  THE COURT:  Well, I know.

4  MR. BENVENUTTI:  And so look, it -- we're trying to

5  thread the needle.  There's no question about that.  We're

6  trying to thread the needle here.  The issue -- I submit the

7  issue for this Court is are we properly bringing a request for

8  rejection of the contract, is it supported by the business

9  judgment rule, and is stay relief -- should the request for

10  stay relief as to the contract claims be denied because the

11  contract issues are severable from everything else in the

12  litigation and because they impose -- if litigated as part of

13  the case in the Superior Court, they would impose an undue

14  burden on PG&E --

15  THE COURT:  But see I'm having trouble with that

16  because, as I was saying, I went back and read the complaint

17  that you -- your co-counsel filed.

18  MR. BENVENUTTI:  Um-hum.

19  THE COURT:  And it doesn't say anything about a

20  contract.  It says our neighbor's wall is encroaching, they're

21  trespassing, please declare that, you know, what they say, tall

22  fences make good neighbors.  Well, crumbling fences make

23  litigating neighbors.

24  MR. BENVENUTTI:  Separate walls would make good

25  neighbors.

PG&E Corp, Pacific Gas And Electric Company

1        THE COURT:  That's right.  But -- so, I mean, I don't

2  understand -- you're telling me that if I grant the motion to

3  reject, the wall doesn't come down?  I mean, I -- why wouldn't

4  it?  I mean, what is -- I mean, leaving aside that maybe

5  actions in the Superior Court, you want me to deny the motion

6  for relief today and grant the objection -- or deny it in part.

7  And I --

8        MR. BENVENUTTI:  Deny it in part.

9        THE COURT:  I'm having trouble defining -- now that

10  I've studied the complaint, I'm having trouble knowing how I

11  grant it so you can go forward but they can't if --

12        MR. BENVENUTTI:  But, Your Honor, that's not the case.

13  What we're saying is they can litigate every defense they have.

14  What they can't litigate is essentially request for affirmative

15  relief based upon this contract because we're seeking to have

16  it rejected.  If it's rejected, it's clear they can't get

17  specific performance from it.

18        And our position is that the disputes relating to the

19  contract, including their damage claim, if they have a damage

20  claim, if we breach the contract, if we breached it before or

21  we breach it -- there's a contract alive to be breached by

22  rejection.  If they have a damage claim -- unlike virtually

23  every other counterparty in a contract rejection situation,

24  they look to recover a hundred percent of their claim.

25        THE COURT:  Well, that's what you get to do when you

PG&E Corp, Pacific Gas And Electric Company

1 sue a solvent company.

2 MR. BENVENUTTI: Well, that's right. That's exactly

3 right. So that significantly relates to the burden,

4 significantly relates to the relevant burden that's associated

5 with it.

6 To respond to the Court's question about what happens

7 if you give us the relief we want and deny the relief that they

8 want, well, they're going to have to litigate with the Superior

9 Court over whether as a matter of all the title issues, not the

10 contract but the title issues, are they entitled to have the

11 wall stay up or are we entitled to have it taken down. The

12 point is --

13 THE COURT: See, that to me is threading the needle.

14 That's like taking a simple set of facts -- I mean, it is a

15 simple set of facts. There's this old wall. And the neighbors

16 are disagreeing about what's the fate of the wall for their

17 various reasons. And you want me to break it into two parts

18 like we're back in law school, like the contract part the

19 specific performance part.

20 But it's one set of operative facts. Two neighbors

21 are locked in fate together because of this joining wall

22 problem.

23 MR. BENVENUTTI: Well --

24 THE COURT: Anyway, let me save you time.

25 MR. BENVENUTTI: All right, yeah. I'll save a few

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    minutes for rebuttal.

2              THE COURT:  Yes.

3              MR. BENVENUTTI:  I would say that the contract issue

4    is separable.  So --

5              THE COURT:  Okay.  I'll -- you know, I'm not --

6              MR. BENVENUTTI:  The contract issue is separable.  And

7    that's what we're seeking to do.  We're seeking to sever the

8    contract issue through this Court's ruling.

9              THE COURT:  Mr. Berestka, are you here or someone else

10   today?

11             MR. BERESTKA:  Yes, Your Honor.

12             THE COURT:  And I'm going to give you one of my

13   quizzes too, my first-year law school quiz.  This is my first

14   year in bankruptcy quiz.

15             If your client had filed bankruptcy and PG&E had not,

16   wouldn't your client be able to reject the contract as an

17   executory to that contract because it still had performance?

18             MR. BERESTKA:  Well, who's suing whom in that

19   situation?

20             THE COURT:  No, no, no, not who's suing whom.  If PG&E

21   hadn't filed bankruptcy but, you know, whatever the correct

22   entity had filed bankruptcy and everything else was factually

23   the same, wouldn't your client have the right under the

24   Bankruptcy Code to reject the contract even though it doesn't

25   have a whole lot of stuff left to do?  It still has to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  cooperate with the neighbor.  Isn't that -- wouldn't that

2  follow?

3  MR. BERESTKA:  Well, the question on that, Your Honor,

4  you're kind of flipping it to -- in an odd way to me.  The --

5  THE COURT:  I'm trying to analyze it from is there an

6  executory contract or not.  And you make a strong argument that

7  there's full performance on your side; therefore, there's no

8  rejectable contract.

9  And I'm saying, well, I think there is still

10  performance on your side.  And I am proving it by saying if

11  your client had filed bankruptcy, they could reject what --

12  they get to call up PG&E and say don't you dare come back on my

13  property, I'm just rejecting my contract with you.

14  MR. BERESTKA:  Well --

15  THE COURT:  And they would be out of luck.

16  MR. BERESTKA:  -- I'm not so sure that they could.  I

17  mean, it's --

18  THE COURT:  Well, what would happen if they locked

19  them out?  They couldn't come and fix the -- do the wall.

20  MR. BERESTKA:  Well, there's no evidence that was

21  presented in the record of obligations remaining on behalf of

22  my clients.  They were really negative covenants to --

23  THE COURT:  But that's --

24  MR. BERESTKA:  -- not interfere --

25  THE COURT:  -- my point.  That's the thing about

PG&E Corp, Pacific Gas And Electric Company

1    executory contracts.  Even negative covenants are future

2    performance.  In other words, I'll put it to you - -if your

3    client had rejected and PG&E said we're here to fix the wall

4    and your client said no, don't -- I'm locking you out because

5    I'm going to reject the contract, I think they would have been

6    able to do that.

7            Anyway, I'll go back to the real case.  Tell me --

8            MR. BERESTKA:  I'm sorry, Your Honor.  I just want to

9    state my appearance.  Ron Berestka for the Vlazakis defendants.

10           THE COURT:  Sure.  And I'm going to give you your full

11   time.  I just -- I really want to test it.

12           So, well, tell me if you would though why Mr.

13   Benvenutti's remedy of sort of splitting the contract in parts

14   and letting you litigate the breach of contract issue of not --

15   the specific performance --

16           MR. BERESTKA:  Sure.  Well, there's another aspect of

17   the contract claim included within the breach of contract and

18   the good faith and fair dealing.  And there's some aspects of

19   negligence cause of actions as they've discussed -- as they've

20   been discussing as well.

21           Let's just go with the routine where you present to

22   Mr. Benvenutti.  Say this case goes to trial on equitable

23   issues in May, and they prevail on the nuisance and trespass

24   claim, my client, then, is liable to them for damages, okay,

25   and their damages here that they're alleging in the underlying

PG&E Corp, Pacific Gas And Electric Company

1    case are not just nominal damages.  They're saying there's all

2    kinds of delay and construction costs and things of that nature

3    that they can then proceed to obtain against my client --

4            THE COURT:  That's not a very persuasive argument, is

5    it?

6            MR. BERESTKA:  Well --

7            THE COURT:  The wall's been there for sixty years.

8            MR. BERESTKA:  Well, it has been there for sixty

9    years, but they're saying that it's taken us three years of

10   fighting and they've had people waiting in the wings, and I'm

11   sure that's going to be --

12           THE COURT:  I know, but if it encroached there or if

13   there was a prescriptive easement, it's been there for sixty

14   years, hasn't it?

15           MR. BERESTKA:  Well, yes.  That's one of the defenses

16   we have in the case.

17           THE COURT:  That's one of your theories.  Your theory

18   is our wall has a right to lean up against your wall.

19           MR. BERESTKA:  Well, the problem, they've got a

20   summary judgment motion in state court right now trying to

21   defeat that aspect of the claim.

22           THE COURT:  Right.

23           MR. BERESTKA:  So let's -- if that goes as planned for

24   them, they have a jury -- they don't have a jury, they have

25   equitable --

(971) 388-0145   operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1        THE COURT:  Right.

2        MR. BERESTKA:  -- findings by the judge that says, oh,

3    yeah, Vlazakis, you trespassed.  This was a nuisance.  There's

4    a law that delays here.  There's millions of dollars in

5    construction costs.

6        Now, if we're not allowed to have our contract

7    claim -- see, those are all self-inflicted wounds.  If we

8    establish that there's a contract here, then those are all

9    self-inflicted wounds on their part.

10       THE COURT:  Well --

11       MR. BERESTKA:  There wouldn't be a delay.

12       THE COURT:  No, but the point is if you convince me to

13   adhere to the view that there's a contract, then it's

14   rejectable, isn't it?  I mean --

15       MR. BERESTKA:  Well, but if it's rejectable, Your

16   Honor, what happens after that?  That's the next question.

17       THE COURT:  Well, that's what I asked Mr. Benvenutti.

18       MR. BERESTKA:  Well, the next question is just because

19   it's rejectable or it's rejected even by this Court, it doesn't

20   dissolve the whole contract.  We're going to be back here,

21   probably, deciding my client's claim for damages, but we may

22   have already -- my clients may have already had a result in the

23   state court finding them liable for damages, and then here we

24   get to come back to the federal court, we could have

25   inconsistent findings.

PG&E Corp, Pacific Gas And Electric Company

1    THE COURT:  Well, but -- no, that's not right, because

2  if there's a contract rejected, you have a right to file a

3  claim for damages --

4    MR. BERESTKA:  Yes.

5    THE COURT:  -- and the other side has a right to

6  object, and the court -- this Court can adjudicate the claim

7  for damages.  It's not a different -- it's the same claim, same

8  damages, right?

9    MR. BERESTKA:  Well, not it isn't, because --

10    THE COURT:  No?

11    MR. BERESTKA:  -- they've got underlying damages that

12  they're alleging in the state court that --

13    THE COURT:  I know, but both sides weren't damaged.

14  One side or the other --

15    MR. BERESTKA:  Exactly.

16    THE COURT:  -- if we're approaching this from a

17  contract point of view.

18    MR. BERESTKA:  Exactly.  And their damages in the

19  state court could be defeated by the existence of the contract

20  which this Court's not going to get till a much later date when

21  it determines whether or not we have a valid contract.

22    THE COURT:  But don't -- but what does the superior

23  court judge do if the bankruptcy court determines there is a

24  rejectable contract and it's rejected?  There's nothing more to

25  try about damages, is there --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          MR. BERESTKA:  No.

2          THE COURT:  -- in the superior court?

3          MR. BERESTKA:  Well, the problem is that then you

4   create an estoppel or res judicata situation in the state court

5   where the horse is out of the barn.  We can never bring the

6   contract as a defense to their claim that they suffered some

7   damages.

8          THE COURT:  But that would be the truth if they had

9   filed the motion at the outset.  In other words, you make the

10  point that got to my attention here is PG&E playing games?  Did

11  they sit tight, sue you?  You didn't invite the suit.  They

12  sued, and now they want to reject the contract.  Well, if they

13  reject the contract, I would assume the superior court judge

14  would say whatever contract it was has been breached.

15         The judge couldn't say there is one and I'm going to

16  enforce it if the bankruptcy court hadn't already said there

17  was one and then I'm allowing to be breached, right?

18         MR. BERESTKA:  Well, that's the question I don't know

19  the answer to on this whole thing.  We go back to the state

20  court.  If you say that -- if you allow the rejection of the

21  contract, we go back to state court, then it's breached.  I

22  guess the big question then that we're faced with is then do

23  they not recover damages against my client for anything in the

24  case?  I'm not sure that's the answer at this point.

25         THE COURT:  If the debtors are allowed to reject --

PG&E Corp, Pacific Gas And Electric Company

1    reject means lawful breach.

2         MR. BERESTKA:  Sure.

3         THE COURT:  And if there is a rejection and no

4    damages, then the counterparty has no claim.

5         MR. BERESTKA:  Yes.

6         THE COURT:  If there is a rejection and the

7    counterparty suffers damage, then the counterparty has a right

8    to file a claim.  That's all there is to it, I think.  I mean,

9    that's why I'm having trouble understanding how -- well,

10   frankly, I don't understand what happens if I grant the motion

11   to reject and the bankruptcy debtor -- the debtors can invoke

12   Section 365, what is -- I still don't know what's left to do in

13   the superior court.

14        Mr. Benvenutti made an argument about it, but I don't

15   know.  I don't know what happens to the wall or what happens to

16   the damage claim.

17        MR. BERESTKA:  Well, there's no contract claim to be

18   asserted in the trial court at that point in time because it's

19   been rejected.

20        THE COURT:  Right.

21        MR. BERESTKA:  And if it's just deemed a breach of the

22   contract, I, frankly, don't know what the court does with it

23   because I've never seen anything like this.

24        THE COURT:  Well, what do you think about my question

25   to Mr. Benvenutti, is there even a contract anymore?  I mean, I

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1   remember in law school when you contract to sing in the opera

2   and the opera singer gets sick, you don't go get somebody else.

3   There's a failure of performance and there's no contract, or

4   whatever the facts are.

5              So here, if I got it right, your clients and the

6   debtors entered into a contract to do the fix, and the City of

7   Oakland says no, can't do it.  It's -- it messes up the lot

8   lines or whatever, you know what it says.

9              So then they said okay, let's do this other thing, and

10  PG&E was prepared to do it and your clients were, and then PG&E

11  said no, we can't do that because that messes up our pipeline.

12  So then, nothing happened until they sued.

13             So by the time they sued, from my point of view, it

14  seems like there's no more contract.

15             MR. BERESTKA:  Well, that was the issue.  We're saying

16  there is a contract and we're try --

17             THE COURT:  But what if I were to rule that today's

18  motion should be denied because -- not because it's

19  unrejectable, but because there is no more contract?

20             MR. BERESTKA:  Well, you'd be reaching the merits of

21  the contract.  I don't know if we -- that's been --

22             THE COURT:  Well, unfortunately, I'm presented with

23  facts that aren't really in dispute, and why -- I mean, look,

24  I -- this goes back to my opening comment, I'm convinced that

25  if there had never been a bankruptcy because of the fires, your

(970)703-8000 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    client and the company would have either settled this case a

2    long time ago, or the superior court would have decided all

3    these issues, and now I'm confronted with a choice:  grant the

4    motion to reject which implicitly means there is a contract or

5    deny the motion to reject either because there is no longer a

6    contract or because of your argument that it's not executory

7    because there's no more performance on your side.  But I don't

8    buy that second argument because I think negative covenants are

9    contractual obligations that can be breached.

10        MR. BERESTKA:  And if there is no contract, why are we

11   here for rejection of the contract?

12        THE COURT:  Well, because you made a motion to relief

13   from stay.  I listened to the argument.  Mr. Benvenutti said

14   we're going to reject.  I said okay, let's bring them together.

15   I didn't -- I didn't say there is a contract to reject.  I said

16   they'll be a motion to reject, and you said no they can't

17   reject because your performance is done, and I just analyzed

18   the facts a little differently to say I don't think there's a

19   contract.  So tell me why that's a crazy argument.

20        MR. BERESTKA:  No, I mean that --

21        THE COURT:  Not that it goes to the merits or not that

22   I'm taking away what the superior court would do.  Just

23   wouldn't it -- don't you think it's fundamental for a

24   bankruptcy court to permit rejection of a contract to determine

25   that there is one to reject?

PG&E Corp, Pacific Gas And Electric Company

1          MR. BERESTKA:  Well, at this juncture, I don't think

2     the Court is supposed to be deciding the merits of the

3     contract.

4          THE COURT:  I'm not.  I'm deciding whether there is a

5     contract.

6          MR. BERESTKA:  Well --

7          THE COURT:  Is there a contract anymore?

8          MR. BERESTKA:  Yeah, we say there is, and that's the

9     whole point.

10          THE COURT:  But why not?  Why is there, given the

11     history that I just recited?

12          MR. BERESTKA:  Well, the --

13          THE COURT:  If you're colleague --

14          MR. BERESTKA:  No, this is Mr. Vlazakis.  He's also an

15     attorney, Your Honor.

16          THE COURT:  If Mr. -- well, he's an attorney, I know.

17     I don't mind if he wants to be heard.  I don't --

18          MR. BERESTKA:  Yeah, and Mr. Vlazakis if you want to

19     make a --

20          THE COURT:  He's your client, he's -- and Mr.

21     Vlazakis, why --

22          MR. BERESTKA:  He's an attorney.  He's got his own

23     right.

24          MR. VLAZAKIS:  I would like to be heard.

25          THE COURT:  Why is there a contract?

PG&E Corp, Pacific Gas And Electric Company

1          MR. VLAZAKIS:  I would like to be heard.

2          THE COURT:  Yes, sir.

3          MR. VLAZAKIS:  First of all, your hypothetical with

4    the opera singer doesn't apply because PG&E has lots of

5    resources, lots of contacts. They can hire a contractor and the

6    best structural engineers to do the structural upgrade to this

7    fifty-foot wall.

8          THE COURT:  Right.  But they'll have to change their

9    gas line plans, right?

10          MR. VLAZAKIS:  Not materially.

11          THE COURT:  Well --

12          MR. VLAZAKIS:  They knew --

13          THE COURT:  Okay.

14          MR. VLAZAKIS:  First of all, they misrepresented the

15    facts.  They said the second project was unfeasible.  They

16    never admitted their error that they were double-tracking and

17    they had inconsistent plans.

18          THE COURT:  Well, that statement might --

19          MR. VLAZAKIS:  They can correct it.

20          THE COURT:  That's too much detail.  I understand your

21    point that the amendment to the contract, then PG&E got second

22    thoughts and didn't like their own plan and they didn't go to

23    plan C.

24          MR. VLAZAKIS:  But remember, you --

25          THE COURT:  They rejected their own plan B.

PG&E Corp, Pacific Gas And Electric Company

1    MR. VLAZAKIS:  They kept that from us for months.

2    THE COURT:  Okay.

3    MR. VLAZAKIS:  They have unclean hands, because they

4    should have been upfront and said hey, we made a mistake.

5    THE COURT:  Just tell me --

6    MR. VLAZAKIS:  They never did that.

7    THE COURT:  Just tell me why there's still a contract?

8    MR. VLAZAKIS:  There's still a contract because, under

9    the majority rule on a motion to reject, the bankruptcy courts'

10   hands are tied.  You cannot rule on the merits.  And by saying

11   there's no contract, you're ruling on the merits without a full

12   evidentiary record.  So that would be an abuse of discretion in

13   my view.

14   THE COURT:  You have some authority to say that I

15   can't make a determination that there's no contract to reject.

16   MR. VLAZAKIS:  It was stated in our opposition --

17   THE COURT:  Well, Mr. Berestka, what's your strongest

18   case --

19   MR. VLAZAKIS:  Yeah.  You can address that.

20   THE COURT:  What's your strongest case that you cite

21   for what Mr. Vlazakis just said that there is no -- that the

22   Court cannot determine that there isn't a contract any longer?

23   Why -- what does that -- what's the authority that says I can't

24   reach that conclusion?

25   MR. BERESTKA:  Well, both the Johnson Righetti case,

PG&E Corp, Pacific Gas And Electric Company

1    Your Honor, 756 F.2nd 738, it discusses that the bankruptcy

2    court where it's making decisions on the context of stay

3    relief, the bankruptcy court refrains from making merits

4    decisions including the validity of contract --

5           THE COURT:  I know, but this is not stay relief today;

6    it's motion to reject.  And if I deny the motion to reject, you

7    are going to ask me to grant full relief.  I promise you, you

8    are.

9           So anyway, listen I'll try to let you finish your --

10   whichever one of you wants to be heard and just go ahead and

11   wrap up.  I'll try not to ask any more questions, and then I'll

12   let Mr. Benvenutti close.

13          MR. BERESTKA:  Your Honor, I think the main point that

14   I was trying to get across here is that we're put in an

15   untenable position if this contract is rejected and we're back

16   in state court and how that's going to necessarily unfold.

17          The contract and their claims are like this, and I

18   think you said that at the very beginning that they're really

19   linked together.  It's about the wall.  It's not about contract

20   claims.  It's not about nuisance tort claims.  Everything has

21   to do with the wall.  And you can't decide who has rights or

22   who doesn't have rights to the wall without analyzing the

23   contract aspect, because that gives my client some rights.

24   Whether it's -- whether it was the specific performance that

25   counsel's alluding to or whether there's remedies for breach

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    under the contract, there's still rights to the wall that can

2    defeat some of the state law claims.  That's why they're

3    pushing this whole thing through.

4         THE COURT:  Well, that's right, and that's what would

5    happen if you had an encroachment.

6         Well, prescriptive easement, right?  If one prevails

7    on a prescriptive easement, it means your rights prevail over

8    the guy whose your prescripting, right?

9         MR. BERESTKA:  Well, that's kind of the whole point

10   with the contract.

11        THE COURT:  Right.

12        MR. BERESTKA:  That's not allowing us to present that

13   is, basically, cutting the legs out from under the client.

14        THE COURT:  But that's an implied contract in the law,

15   in the facts, in the history of sixty years of common law.

16   It's not in the letter of the contract that was signed in 2017,

17   right.  The 2017 letter was an attempt, albeit unsuccessful, to

18   fix the problem.  It didn't create the problem, right?

19        MR. BERESTKA:  Correct.

20        THE COURT:  Well, let me try it this way.  I'll put

21   the question back to you having promised you that I wouldn't

22   speak anymore.  Are you better off with my granting the motion

23   to reject for the reasons Mr. Benvenutti argues or my denying

24   the motion to reject for the reasons that I've stated that I

25   don't believe there's a contract anymore?

PG&E Corp, Pacific Gas And Electric Company

1          MR. BERESTKA:  We're prob --

2          THE COURT:  I mean, I think you're better off with the

3    second choice not the first one, but you tell me.

4          MR. BERESTKA:  Yeah.  I would agree.  I don't see

5    which -- I mean, it's kind of a --

6          THE COURT:  Well, it's a --

7          MR. BERESTKA:  -- devil if you do, devil if you don't

8    on either end.

9          THE COURT:  It's a way, if I were -- if I'm not

10   persuaded by Mr. Benvenutti to go the other way to say the best

11   result here is to let the parties solve their problems in one

12   form, and not to use a bankruptcy remedy that brings in

13   litigation tactics and business judgment and fact specific and

14   says even though if there were a contract, maybe the lake site

15   could reject it if it were in bankruptcy.  It's not in

16   bankruptcy.  But more accurately, the course of dealing with

17   two tries to fix it by contract followed by the commencement of

18   litigation that says nothing about the contract suggests to me

19   that there's no contract to reject.

20          Now, I understand, maybe I'm not supposed to be going

21   to the merits, but to me it's a threshold question; you can't

22   reject a contract if the contract doesn't exist.

23          So I think that I can't be given a choice to do

24   something and be told I can't do it because I can't go to the

25   merits.  So that's what I'm struggling with.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          MR. BERESTKA:  But even if we're going off to the

2     side, Your Honor, with the covenant in good faith and fair

3     dealing and the negligence claims, those, I don't think, are

4     necessarily touched by the rejection of the contract.

5          THE COURT:  Well --

6          MR. BERESTKA:  The motion survives.

7          THE COURT:  And if I were to say I'm going to deny the

8     motion because I'm not persuaded that there is a contract

9     anymore, and I'm granting full relief from stay, and the state

10    court can decide what to do about everything.  And you can,

11    perhaps, convince the -- try to convince the judge that,

12    notwithstanding that crazy bankruptcy judge, there really was a

13    contract, but all I'm saying is I don't believe that I'm

14    precluded from denying a motion to reject because of the

15    threshold question that I've posed that there's nothing to

16    reject.  Anyway, that's the dilemma I'm struggling with.

17         Okay, Mr. Benvenutti, you have --

18         MR. VLAZAKIS:  Judge, can I just be heard for, like,

19    one minute on that one point?

20         THE COURT:  One minute --

21         MR. VLAZAKIS:  One minute.

22         THE COURT:  -- because I don't want you to turn

23    into --

24         MR. VLAZAKIS:  Sure.

25         THE COURT:  -- bad faith and second dealing and second

PG&E Corp, Pacific Gas And Electric Company

1    choices, and just to the merits.  Go ahead.  On bankruptcy

2    issues.

3            MR. VLAZAKIS:  Sure.  First of all, debtors' counsel

4    has not presented facts of burdensome.  Under the proposed

5    plan, the unsecured creditors are going to get paid a hundred

6    percent -- a hundred cents on the dollar.

7            THE COURT:  That's right.

8            MR. VLAZAKIS:  They cannot show financial burdensome,

9    because there's been no evidence presented to them.  They

10   didn't even present an estimate of what it would cost.  That

11   was their oversight.  So you don't have proof of

12   burdensomeness.

13           And also, on the issue, there is the case where, if

14   the unsecured creditors are going to get paid a hundred cents

15   on the dollar, then it's not appropriate for rejection of the

16   contract.

17           THE COURT:  That's a slippery-slope argument because

18   that would be an argument that you can never have rejection in

19   a solvent case, and I'm not going there anyway.

20           You asked for a minute; you got your minute.

21           MR. VLAZAKIS:  Okay.  Thank you, Your Honor.

22           THE COURT:  Mr. Benvenutti, you're the closer.

23           MR. BENVENUTTI:  Yes, Your Honor.

24           Well, in the first instance, Your Honor, if the Court

25   were to deny the motion on the basis there's no contract to

PG&E Corp, Pacific Gas And Electric Company

1    reject and that had preclusive effect elsewhere, that would be

2    fine.

3              THE COURT:  I don't know if it had preclusive effect.

4              MR. BENVENUTTI:  Well, that's --

5              THE COURT:  I mean, I can't impose upon another court.

6              MR. BENVENUTTI:  I understand.

7              THE COURT:  I mean, I presume if I use that reasoning,

8    you or your colleagues would figure out a way to tell the judge

9    that, for what it's worth, that's what I said.

10             MR. BENVENUTTI:  We would certainly make that effort,

11   and I'd like to think we'd be successful, but, you know, it's

12   fraud.

13             If there is a contract, I think the Court's persuaded

14   rejection would be appropriate.  If not, I'll address whatever

15   the Court's concerns are about that.

16             THE COURT:  Well, I think what Mr. Vlazakis said at

17   the end is have you made even a prima facie showing of what the

18   damages might be?

19             MR. BENVENUTTI:  Your Honor, we have not, but what we

20   have shown is that there's significant burden associated with

21   performing the contract, and that it stands in the way.  It

22   clearly represents a temporal impediment to the completion of

23   this project.

24             THE COURT:  The problem I'm having is I look at a

25   chart, I look at a diagram, I happen to know that part of

PG&E Corp, Pacific Gas And Electric Company

1    Oakland, I didn't go inspect the site, but it's hard for me to

2    imagine that there couldn't be some rearrangement of the piping

3    to solve the problem with the wall and complete the project.

4            MR. BENVENUTTI:  Well, Your Honor, let me just say

5    something.

6            THE COURT:  But I don't have the ability to make that

7    determination.

8            MR. BENVENUTTI:  Let me tell you what is in the

9    record, and you're right, it's indirect, but what is in the

10   record from Mr. Garber's declarations is that there were --

11   that PG&E tried multiple different ways after it concluded it

12   could not do the wall restructuring that was the original

13   intention to get a resolution with the Vlazakises.  And it's

14   not that nothing happened after that occurred.  Mr. Garber's

15   declaration demonstrates there were repeated efforts to try to

16   come to a resolution of the Vlazakises --

17           THE COURT:  Right.

18           MR. BENVENUTTI:  -- and those were unsuccessful.  It

19   was only then that the -- the action was filed, and it doesn't

20   just seek declaratory relief.  It also seeks an injunction.

21           So this gets to the Court's concern about what happens

22   at the end of the day.  Well, PG&E is seeking an injunction

23   that would permit the demolition of the wall.  The Court talked

24   earlier about trying to get to a resolution and getting into a

25   mediation and getting a settlement.  Well, the record also

PG&E Corp, Pacific Gas And Electric Company

1    shows that the Vlazakises have not been prepared to contribute

2    one penny to the solution of this problem.

3          THE COURT:  Well, but that --

4          MR. BENVENUTTI:  But Your Honor, it's important for

5    this point.  It's important for this point.  The Court asks

6    what happens if you grant the relief we're seeking.  Well, I

7    think what happens is there is going to be a settlement.  I

8    think there is going to be a settlement because the Vlazakises

9    then will be motivated to come to the table and get to a

10   settlement --

11         THE COURT:  Well, that's a good result, then; isn't

12   it?

13         MR. BENVENUTTI:  -- which they're not right now.

14   Right.  If you give us the relief we're seeking, that's going

15   to happen.

16         THE COURT:  And you don't think --

17         MR. BENVENUTTI:  What I'm concerned about --

18         THE COURT:  You don't think there will be a settlement

19   if I deny relief for the same reason?

20         MR. BENVENUTTI:  I --

21         THE COURT:  I mean, jury trials have a way of

22   motivating people to settle.

23         MR. BENVENUTTI:  Eventually.  Eventually, but that's

24   going to be way off in the future, Your Honor, and that's the

25   problem.  That's the problem we face.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          That's why I said they're trying to thread a needle,

2    and it's a needle that is complicated.  It's not the

3    traditional kind of contract rejection situation --

4          THE COURT:  No, it's not.

5          MR. BENVENUTTI:  -- but it's one in which PG&E is

6    confronted with delay, with all respect to the Vlazakises, an

7    intractable problem that is largely created because they want

8    to have everything done for them and are not willing to

9    compromise in order to solve the problem.

10          If you look at the contract, what the contract said

11   was, basically, PG&E was going to fix the problem --

12          THE COURT:  But PG&E agreed to do it.

13          MR. BENVENUTTI:  Your Honor, they did --

14          THE COURT:  So what do they --

15          MR. BENVENUTTI:  It did.  It did.  It did.  And

16   afterward -- this goes to the point of what could be done

17   otherwise for PG&E.  Do you think that if PG&E could rejigger

18   the plans in order to accommodate a fix --

19          THE COURT:  Yes.

20          MR. BENVENUTTI:  -- of the second --

21          THE COURT:  I think they would do it.

22          MR. BENVENUTTI:  They would do it.  They would have

23   done it.

24          THE COURT:  They would do it.

25          MR. BENVENUTTI:  We would not be here standing before

PG&E Corp, Pacific Gas And Electric Company

1    you if it were possible, feasible, to do that.  And while we

2    don't have direct evidence of that, we certainly have a lot of

3    indirect evidence.

4              THE COURT:  But that goes -- okay, I've been going

5    around in circles.

6              MR. BENVENUTTI:  Okay.  So anyway, so Your Honor, in

7    conclusion, if we get a clear decision from you that the reason

8    the Court is denying the motion to reject and granting relief

9    from stay is because the Court has determined that there is no

10   contract, that's certainly better than a poke in the eye with a

11   sharp stick.

12             THE COURT:  Poke in the eye.

13             MR. BENVENUTTI:  But --

14             THE COURT:  There was a contract, clearly.  The

15   conclusion that I'm thinking about is what I said, so let's

16   leave it at that.

17             MR. BENVENUTTI:  All right.

18             THE COURT:  The matter stands submitted.

19             MR. BENVENUTTI:  But I do think it's -- we're in a

20   clearer position vis-a-vis the things we care about if the

21   Court adopts PG&E's position, rejects the contract, and denies

22   relief from stay as to the contract cross-complaint.

23             THE COURT:  Okay.  Thank you.  On both sides.  The

24   matter stands submitted.  Thank you.  Appreciate it.

25             Mr. Karotkin, you've been quiet today.  Are you going

PG&E Corp, Pacific Gas And Electric Company

1    to represent the company?  I thought you were going to appear

2    by phone today, but you didn't -- are you going to argue for --

3    against Mr. Abrams today or someone else from your side?

4              MR. KAROTKIN:  No, I am.

5              THE COURT:  Okay.  Well, let's go with that, and I

6    will let Mr. Abrams go first as I promised.

7              Are you here, Mr. Abrams?  Come forward, please.  And

8    I'll stick with my estimate of time.  Again, you've seen me

9    enough to know I have some questions.  So here's my question.

10             MR. ABRAMS:  Yes.

11             THE COURT:  I want to assure you that I regard my job

12   as to try to come out with the right result.  So I don't want

13   to waste time this morning about standards of reconsideration

14   and whether you should or shouldn't have filed a motion at a

15   different time.

16             There was a motion originally filed by the senior

17   bondholders, I believe, to reconsider the RSAs and then for

18   reasons that you're familiar with that got resolved, and your

19   motion kind of trailed along.  Your motion got a little

20   confused because you changed your theory a little bit, but I

21   want to cut through all that, and I want to avoid your

22   criticism of the lawyers and your criticism of the profession,

23   and it's not helpful to have you lecture me or the lawyers on

24   what their professional duties are.

25             MR. ABRAMS:  I wouldn't do that, Your Honor.

PG&E Corp, Pacific Gas And Electric Company

1    THE COURT:  What comes across -- and I'm reading your

2    papers again, including the response here -- is the major

3    things that concern you.  Your concern for your children, your

4    family, your home -- that goes without saying.  You're

5    concerned about PG&E stock.  I presume you've seen the

6    disclosure statement.

7    MR. ABRAMS:  Yes.

8    THE COURT:  Have you read it?  Have you read the

9    recitals in there about who -- where people are going to have

10   to or not have to take stock?  You're at least aware of that

11   argument, right?

12   MR. ABRAMS:  I am aware, but --

13   THE COURT:  Okay.

14   MR. ABRAMS:  -- this is supposed to come first.

15   THE COURT:  Just a minute.

16   MR. ABRAMS:  Yes.

17   THE COURT:  Just a minute.  So at least at the moment,

18   there's nothing in the RSAs that forces PG&E's stock on any

19   fire survivor.

20   Secondly, you are aware, as a number of your fellow

21   survivors are, about the FEMA presence.  You're aware, aren't

22   you, that there are pending objections to the FEMA claim?

23   MR. ABRAMS:  I am, Your Honor.

24   THE COURT:  The Cal. LCS claim (ph.)?

25   MR. ABRAMS:  I am, Your Honor.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  Okay.  So those are -- whether they have a

2     good result or a favorable result or a nonfavorable result,

3     those are two major issues that in my mind are -- I'd like to

4     say that I know what the outcome is going to be.  I don't know

5     what the outcome's going to be, but they are issues that are

6     being dealt with by principal players.

7          MR. ABRAMS:  Yes.

8          THE COURT:  You're also aware -- I don't have to tell

9     you because you've said it frequently -- about what's going on

10    at the Commission and what's going on in the governor's office

11    in terms of future management of PG&E.

12          So when I look at -- if I had to do a ranking of what

13    I think Mr. Abrams' major concerns are, those four, starting

14    with your family and your well-being and your concern about the

15    future and the risk of future fires, I don't think anybody

16    could quarrel with you -- I certainly don't -- about your

17    priorities there.  But then, when you go to PG&E stock and FEMA

18    sharing and the pool of money that -- at least you didn't say,

19    but a lot of your fellow survivors are writing to me and are

20    saying things about, there just isn't enough money.  And then

21    you have said there's issues about governance and future

22    structures and so on, and those are all legitimate concerns as

23    I've said before, but I don't know how any of them get helped

24    rather than hindered by upsetting the TCC RSA.  So with that

25    background --

PG&E Corp, Pacific Gas And Electric Company

1        MR. ABRAMS:  Yes, Your Honor.

2        THE COURT:  -- I'll give you your time to make your

3   argument, and as I said in the last case, I'll try to listen

4   and not debate with you.

5        MR. ABRAMS:  I appreciate that, Your Honor, and

6   certainly, I have a lot to consider regarding the RSA.  And if

7   I hadn't written the letters prior to this and to the Court and

8   had not gotten a response from any of the attorneys, I probably

9   wouldn't have proceeded in the way I did and come to this

10  courtroom.

11       With that said, I was glad I did.  I feel privileged

12  to be standing here before you.  I am very concerned about the

13  RSA.

14       The notion that by not talking about it with their

15  clients that somehow it's a good deal, the notion that hiding

16  this very short, actually, pithy document --

17       THE COURT:  What's that?  Say that again.  You're the

18  one that says its hiding.  It isn't hidden from me.

19       MR. ABRAMS:  Okay.

20       THE COURT:  That's a complicated document.

21       MR. ABRAMS:  Well, I --

22       THE COURT:  They're all complicated documents.

23       MR. ABRAMS:  -- I'm here to argue that it's not so

24  complicated, and I'm here to argue that that document for

25  claimants is very hard to find.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    So it is -- in order for me to find it, I had to go to

2  the PG&E website, go to the SEC filings --

3    THE COURT:  Did you go to the court's website?

4    MR. ABRAMS:  -- find 8-K.  Sorry?

5    THE COURT:  Did you go to the court's website and see

6  the RSA --

7    MR. ABRAMS:  I went to the TCC website.

8    THE COURT:  Did you go to our website and see the

9  document on our docket?

10    MR. ABRAMS:  Your Honor, I would have to tell you

11  that, for most folks who are in this case, they are looking for

12  the usual places --

13    THE COURT:  I just asked --

14    MR. ABRAMS:  -- where things would be had.

15    THE COURT:  I just asked you if you --

16    MR. ABRAMS:  And it is incumbent --

17    THE COURT:  Mr. Abrams, I didn't ask what the other

18  folks did, and I understand there are tens of thousands of

19  people that can't possibly be expected to understand the very

20  complexities to this, and you, on the contrary, are very

21  involved.  I just asked if you saw the RSA on our court's

22  website because that's where I first found it.

23    MR. ABRAMS:  That's why I'm here.

24    THE COURT:  Okay.

25    MR. ABRAMS:  That's why I'm here, Your Honor.

PG&E Corp, Pacific Gas And Electric Company

1    THE COURT:  But that's where -- it's there, you know.

2    MR. ABRAMS:  I understand it's there.  I'm just

3    telling you that, from what I've been hearing from other folks

4    who are claimants to this case, and it's incumbent upon the TCC

5    to provide that to folks.

6    THE COURT:  Now, look, why do you believe that at this

7    stage of the game it's incumbent upon a committee, who is

8    working extensively and with a lot of people and a lot of

9    effort, that they're supposed to be educating people who aren't

10   involved as you are on the fine points of something when we

11   are -- Mr. Abrams, we are weeks away from my being asked to

12   approve a disclosure statement and supporting documents that

13   will be designed to explain to them, every one of them if they

14   are inclined to read it, what should influence their decision.

15   And as you've been told over and over again, you and all 70,000

16   fire survivors have the right to vote the plan down if you

17   choose to.  That's what -- that's the way the system was

18   designed.

19   MR. ABRAMS:  I understand, Your Honor --

20   THE COURT:  But you're complaining about the lack of

21   detailed information of a highly technical nature in a complex

22   document that isn't even the document that Congress said goes

23   out to the voters.  It's like, Mr. Abrams, you and I get to

24   vote next month, and you probably got your voter's pamphlet

25   already --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          MR. ABRAMS:  Um-hum.

2          THE COURT:  -- and if you read your voter's pamphlet,

3    you will learn what you need to learn, maybe, but maybe you got

4    a little flyer that says vote for Joe or vote for Sally, but

5    somebody else who wants to go read the backup and the

6    candidate's statements and the background can research it as

7    long as they want.

8          MR. ABRAMS:  That --

9          THE COURT:  But we have a system in place, and we are

10   midway along that system and you're complaining that the

11   thousands and thousands of people who, perhaps, don't

12   understand should have been given something that the law

13   doesn't even contemplate them being given that information.

14         MR. ABRAMS:  And, Your Honor, following your analogy,

15   that would be the case.  If prior to my vote there was an

16   agreement that was signed that candidates couldn't reveal their

17   platform -- and that's what this RSA entails.

18              If I go to my attorney, if I read something in the

19   paper and I go to my attorney and I say hey, I've read about

20   this, I'm concerned about FEMA, I'm concerned about the stock,

21   help explain it to me, there are many provisions in this that

22   they shall do this.

23              One remedy to this would make this a whole lot better

24   is change that "shall" to "may."  Give the attorneys the option

25   to be able to describe the different aspects of this and the

PG&E Corp, Pacific Gas And Electric Company

1    things that are detrimental and, by all means, the things that

2    are in favor of the victims.  But that is why the vote that is

3    relied upon has been compromised, and that's why all this talk

4    about streamlining the disclosure statement -- I know what

5    streamlining means particularly when your job is to get this

6    done, to get the yes votes.

7         Streamlining means make sure it's all one sided.  Make

8    sure that it provides clear --

9         THE COURT:  Why do --

10        MR. ABRAMS:  -- concise information --

11        THE COURT:  Why do you say that?

12        MR. ABRAMS:  -- that you should vote yes.

13        THE COURT:  Wait a minute.  Why do you say that?  Why

14   do you -- what do you think I'm going to draft it?

15        MR. ABRAMS:  No, Your Honor.

16        THE COURT:  I mean, what makes you think that there's

17   any truth to what you just said?

18        MR. ABRAMS:  Because if past is prologue, that's what

19   will occur.

20        THE COURT:  What past are you referring to?

21        MR. ABRAMS:  I'm responding to the RSA, Your Honor.

22   I'm responding to what is in the RSA.  And look, part of this

23   notion that it's too difficult for folks to understand, folks

24   understand what stock is.  This isn't -- if Joe --

25        THE COURT:  And I just asked you if you read in the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    newest document in bold print, you don't have to get PG&E

2    stock.  You think that's phony?  You think that's a false

3    statement?

4            MR. ABRAMS:  No, Your Honor.  I don't think it's a

5    false --

6            THE COURT:  But then, what am I supposed to do?  Am I

7    supposed to say, well, Mr. Karotkin's playing games here;

8    everybody's going to have to get stock?  I mean, that's not the

9    way the system works.

10           So but your standing there acting as though that

11   70,000 people have been told in undecipherable terms you're

12   going to have to get stock.  No one has said that.  No one.

13           MR. ABRAMS:  Your Honor --

14           THE COURT:  Not even -- no one has said that.

15           MR. ABRAMS:  Your Honor, my understanding when this

16   RSA was approved was that part of what transpired in that

17   courtroom -- and that's the reason why I even proceeded -- in

18   the courtroom it was said that the victims have told their

19   attorneys they want this agreement, and I sat in that courtroom

20   and I said, huh, that doesn't -- that is in no way comports

21   with the facts that I knew, but I didn't stop there, Your

22   Honor.

23           THE COURT:  But Mr. Abrams, you've done a SurveyMonkey

24   of a couple of hundred people.  You haven't interviewed, nor do

25   I expect you to, 70,000 people.  I am not in a position, and I

PG&E Corp, Pacific Gas And Electric Company

1    don't know how you could be, to question when a number of

2    experienced counsel stood at the podium and told me that they

3    have advised and discussed and counseled with their groups of

4    people and we start with a committee that is representative of

5    all the victims represented by very experienced counsel.  You

6    want me just to sort of disregard all of that?

7            MR. ABRAMS:  Unfortunately, Your Honor, what has

8    happened is they've substituted their experience, which I

9    absolutely understand is the case, for getting the best

10   interest in consulting with clients around what is in their

11   best interest --

12           THE COURT:  Would you like -- would you like --

13           MR. ABRAMS:  -- and the assumption --

14           THE COURT:  Would you like the victims to not have the

15   benefit of expertise in a very --

16           MR. ABRAMS:  Absolutely, they --

17           THE COURT:  -- very, very difficult complex world

18   called the bankruptcy world?

19           MR. ABRAMS:  It was not provided.  And so I'm not

20   relying -- so again, let me just point out to the Court what

21   those things are that I am relying upon, because I am not

22   relying on one of these pieces of evidence.  What I am relying

23   on is, again, sent letters, so did a lot of other claimants.

24   No response.

25           If the claimants who reached out to this Court to file

PG&E Corp, Pacific Gas And Electric Company

1  something on the docket and went to that measure to state their

2  objections, you think they'd get a phone call?

3  THE COURT:  Well, I don't know --

4  MR. ABRAMS:  Do you think they'd get an email?

5  THE COURT:  I can't -- I can't -- but --

6  MR. ABRAMS:  If you're relying on that --

7  THE COURT:  Mr. Abrams --

8  MR. ABRAMS:  -- then it didn't occur.

9  THE COURT:  Mr. Abrams, I -- Mr. Abrams, I cannot from

10 here legislate for Ms. Dumas and Mr. Julian and all of the

11 state court experienced fire lawyers.  I cannot get into their

12 attorney-client relationships and start to tell them --

13 MR. ABRAMS:  Absolutely.

14 THE COURT:  -- how they do.  But what I can do is

15 ensure that there will be a voter's pamphlet in my way of -- in

16 my desire to make it easy -- you might like it to be more

17 complicated; I would prefer that it were easy -- and they make

18 an informed decision.  And you know what, if they vote the plan

19 down, then there are -- we have to figure out what to do next.

20 But let's go back to today.  Why -- and I asked you

21 this last time when you were challenging the senior

22 bondholders' RSA:  What would happen in your mind if I accepted

23 your argument today and sent the TCC and the debtors back to

24 the drawing board and said we're tearing up the RSA with the

25 TCC?  Forget the subrogation for the moment.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1      MR. ABRAMS:  Yes.

2      THE COURT:  What would happen?  Why is that a

3  constructive thing on February 11th --

4      MR. ABRAMS:  Yes.

5      THE COURT:  -- of 2020?

6      MR. ABRAMS:  Yes.

7      THE COURT:  Tell me how.

8      MR. ABRAMS:  So what that would entail is the

9  attorneys going back to the table, changing the "shalls" to

10 "may."

11     THE COURT:  But wait a minute.  There's no -- there's

12 no "shall" or "may" because you want me to tear up the

13 agreement.  And you remember --

14     MR. ABRAMS:  So if tearing up the --

15     THE COURT:  Mr. Abrams, do you remember where things

16 were when I granted relief from stay for the Tubbs Fire to go

17 forward --

18     MR. ABRAMS:  Yes.

19     THE COURT:  -- and Judge Donato started and when --

20 and before I ordered a mediator?  Where were things then?

21     MR. ABRAMS:  Your Honor --

22     THE COURT:  And three things happened.  I ordered the

23 mediator.  I don't take any credit for doing anything, but I

24 ordered the mediator, and in due course the Tubbs Fire matter

25 got resolved -- maybe not to everyone's satisfaction, but it

PG&E Corp, Pacific Gas And Electric Company

1  got resolved -- the district court litigation went away, and

2  the TCC and the debtors entered into an agreement that their

3  collective views are proactive towards a result.  That's a good

4  result.

5          MR. ABRAMS:  In my opinion, Your Honor --

6          THE COURT:  That's a good result.

7          MR. ABRAMS:  In my opinion, Your Honor, the reason why

8  the bondholders have abandoned their plan is because they have

9  hedged against this plan.

10         What happened to all their objections with this plan?

11  They were -- wanted this reconsidered.  They thought this was

12  the worst thing for claimants, for the State of California.

13         THE COURT:  But that's what --

14         MR. ABRAMS:  They came here to the court and presented

15  that.

16         THE COURT:  But that --

17         MR. ABRAMS:  And now all that goes away because

18  they --

19         THE COURT:  But Mr. --

20         MR. ABRAMS:  -- hedged their investments.

21         THE COURT:  Mr. Abrams, that's what --

22         MR. ABRAMS:  Where does that leave the claimants and

23  their investments?

24         THE COURT:  That's what settlements are all about.

25  That's the nature of settlements.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1        MR. ABRAMS:  Well --

2        THE COURT:  They compromise things.

3        MR. ABRAMS:  Yeah, it's compromised, but it's at the

4   detriment of victims.

5        THE COURT:  Why?

6        MR. ABRAMS:  And having all those folks represented

7   here, look --

8        THE COURT:  Tell me why -- why the group of people

9   that you speak for -- I understand you're not a lawyer and

10   you're not -- you're really only speaking for yourself, but I

11   also --

12        MR. ABRAMS:  Correct.

13        THE COURT:  -- I also believe you're here because you

14   believe strongly on behalf of a lot of people other than

15   yourself and your family.  And why is it better rather than not

16   so good to tear up the TCC RSA today and say start over

17   everybody?

18        MR. ABRAMS:  Because I believe that what that will

19   allow is to allow sunlight on this agreement which to this

20   point there has not been, and I -- the RSA is written to make

21   sure that there isn't sunlight going forward.

22        THE COURT:  What would be a different outcome?

23        MR. ABRAMS:  The different out --

24        THE COURT:  Sunlight is important.

25        MR. ABRAMS:  Yeah.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  We know about sunlight, but we're dealing

2   with the desire to fix a problem and get some money into the

3   hands of the survivors.

4          MR. ABRAMS:  Yes, Your Honor.

5          THE COURT:  I have been motivated to do it and you

6   have.

7          MR. ABRAMS:  Yes.

8          THE COURT:  So if I believe that going forward is a

9   good thing, you don't.  So why -- what will move the cause

10  favorably so that you and your family and the 70,000 other

11  survivors will get a check and not a sheriff's certificate

12  unless you want one -- a check sooner rather than later?

13         MR. ABRAMS:  I believe, Your Honor, and which is why

14  I'm here, is that sunlight on the process and sunlight on the

15  information provides a better outcome.  I believe that the

16  lawyers being able -- who are professionals -- I believe that

17  them being able to freely voice what their pros and cons are of

18  this is a benefit to everyone.  I think it's a benefit to

19  claimants.  I think it's a benefit to the regulators who have

20  to judge whether this is in the best interest of California.  I

21  think it's in the best interest of all those folks.

22         The fact that the governor was pushed out of being

23  able to sign off on this RSA, and the fact that the bondholders

24  were bought off --

25         THE COURT:  You --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1      MR. ABRAMS:  -- does not make this a better plan.

2      THE COURT:  Okay.  I'm going to let you reserve a few

3  minutes and I'll let the other side be heard now.  Okay?  I'll

4  come back to you.

5      MR. ABRAMS:  Thank you.

6      THE COURT:  And Mr. Karotkin, I'm going to hear from

7  you and from the TCC.  I don't know that it's necessary to hear

8  from counsel for the subrogation group, but as I said, I'll let

9  counsel be heard if that's important.

10     Mr. Abrams is really not focused on that too much, so

11  I don't know that we need to, but you go on what you want to

12  talk about first.

13     MR. KAROTKIN:  I'll be very brief, Your Honor.  I

14  think we've addressed the issues in our responsive pleadings.

15     I think, as you yourself have recognized, that the

16  RSA, as approved by the Court, was the product of good-faith,

17  protracted negotiations among the debtors, the TCC as

18  fiduciaries for all fire victims, and the attorneys

19  representing the lion's share of the seventy-plus-thousand

20  people fire victims that filed claims in these cases, I don't

21  believe Mr. Abrams has presented any evidence to support he

22  extraordinary relief that he's requesting.

23     THE COURT:  Well, but I'm trying to get off of the

24  technical Rule 59 and 60 stuff and talk about the right thing.

25  So --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1      MR. KAROTKIN:  There's --

2      THE COURT:  -- why is it the right thing versus his

3 choice of going back and starting over the TCC?

4      MR. KAROTKIN:  I think that it's exactly what you

5 said.  This is the product of negotiation among fiduciaries.

6 It is key to moving these cases forward and getting a

7 distribution to fire claimants within the timeline of AB 1054.

8      You cannot knock the props out of this agreement and

9 everything is going to be fine.  We'll be back where we

10 started.  It is fundamental to all of the settlements.  It's

11 not just an individual settlement.

12      The entire props out of the consensual global

13 arrangement will fall apart and we will be back, as I said the

14 other day, in a litigation morass.

15      THE COURT:  But he wants, at least, the lawyers that

16 he's in touch with to be able to express their individual views

17 about why they -- without naming the lawyer, that hypothetical

18 lawyer who Mr. Abrams might talk to, can say, you know, I think

19 it's a good reason -- a good deal for these reasons but not a

20 good deal for these reasons.

21      MR. KAROTKIN:  The lawyers have made a decision --

22      THE COURT:  And in effect, there's a gag -- he says

23 there's a gag on them.

24      MR. KAROTKIN:  Well, these lawyers didn't have to sign

25 this agreement.  They made a decision, and they've decided this

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1   is a good deal, all right.  It's not inconsistent with any

2   other RSA.  And if Mr. Abrams has views as to why this plan

3   shouldn't be confirmed or what he thinks ought to be included

4   in the disclosure statement, he's free to come to this Court

5   and make those objections.

6         THE COURT:  And you agree with me, I think you agree

7   with me, that once I approve the disclosure statement, he's

8   free to argue and lobby for people that he thinks and persuade

9   them to vote against it.

10        MR. KAROTKIN:  I think the law is very clear on that,

11  Your Honor.  I agree with you.

12        THE COURT:  Right.  So he can -- if he wishes to, he

13  can -- however he wishes to communicate, he can say this is why

14  it's not a good deal, a, b, c, d, and whatever he wants to say.

15        MR. KAROTKIN:  Correct.  Once there is an approved

16  disclosure statement.  I agree with that.

17        THE COURT:  Okay.

18        MR. KAROTKIN:  Thank you.

19        THE COURT:  Ms. Dumas, you're in the front chair.  Are

20  you going to --

21        MR. SKIKOS:  Your Honor, may I have thirty seconds?

22        THE COURT:  For who?

23        UNIDENTIFIED SPEAKER:  You first.

24        THE COURT:  Well, I don't care who's on -- who wants

25  to be heard next?  I just was looking over to the TCC because

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    they are the -- state your appearance for the record.

2              MR. SKIKOS:  Steve Skikos.

3              THE COURT:  Oh, Mr. Skikos, sure.

4              MR. SKIKOS:  How are you today?

5              THE COURT:  Good to see you.  I'm sorry, I didn't

6    recognize you from the back there.

7              MR. SKIKOS:  I hide now.

8              THE COURT:  No, you're welcome here.  Go right at the

9    podium.

10             MR. SKIKOS:  First, I'd like to thank Mr. Abrams and

11   the fire victims for presenting and being vigilant and asking

12   questions and demanding answers.

13             THE COURT:  So do I and I don't -- if I sound critical

14   of him, I don't mean to be.  I appreciate his involvement.

15             MR. SKIKOS:  And our job as the lawyers and the TCC

16   and Ms. Dumas' team is to inform and empower the fire victims

17   to make a meaningful decision.  And in this case, there's been

18   four major instances of connection between the fire victims and

19   the bankruptcy court:  the participation, the estimation, the

20   voting, and the allocation.  And there's a reason I'm raising

21   these.  Because the first two show how the Court can coordinate

22   with the lawyers and the bankruptcy parties and the debtor to

23   successfully achieve a result.  And here, if you look at what

24   happened with participation, there were dismal reports of what

25   was going to happen.  Forty percent participation was the

PG&E Corp, Pacific Gas And Electric Company

1   amount that Mr. Orsini announced forty to fifty on the day of

2   the bar date.

3              THE COURT:  It's about -- when you say "participate,"

4   you mean?

5              MR. SKIKOS:  Proof of claims.

6              THE COURT:  Proof of claims?

7              MR. SKIKOS:  Yeah.

8              THE COURT:  Okay.

9              MR. SKIKOS:  Number of people who have legitimate

10  claims --

11             THE COURT:  Right.

12             MR. SKIKOS:  -- what was the percent?

13             THE COURT:  I didn't understand that was the number,

14  the voter -- the driver.  Okay.

15             MR. SKIKOS:  He actually announced that on October

16  21st, and on September 24th, Mr. Bennett also talked about it.

17  What happened?

18             The TCC, along with the fire victims in two months

19  went from 30,000 people to 80,000 people now in December 31st,

20  and how did that happen?  Because the TCC worked to inform and

21  empower using their independent judgment, the fire victim

22  community, and it wasn't us.  It wasn't the bankruptcy court,

23  although you did extend the bar date, thank you, and it wasn't

24  Mr. Kasolas, although he did a fantastic job in collaboration

25  with the debtor and Compass Lexecon and Baker.  It was the fire

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    victim community that went out and mobilized, and they said we

2    refuse to let our brothers and sisters not be a part of this

3    bankruptcy.  And remember, there were thousands of fire victims

4    who were not going to file proofs of claims --

5            THE COURT:  I'm aware of that.

6            MR. SKIKOS:  -- because they thought PG&E was in

7    financial ruin, and they didn't want to take money away from

8    people who had it worse.  Those are the people who are going to

9    ultimately be making the voting decision on this company, and

10   thank God.

11           Here, with respect to the estimation, the court had a

12   choice, and it opened discovery in Tubbs in state court.  It

13   did the right thing.  It had a jury trial where people

14   decided -- did the right thing.  It allowed fire victims to be

15   the actual plaintiffs in front of a jury; it did the right

16   thing.  And as a result, there were fifty depositions, four

17   million pages, and the estimation itself involves live people.

18   Judge Donato ruled that.  What happened?  The case resolved.

19   It's a step.  And the step that we've reached with resolution

20   was that the government, the bondholders, the insurance

21   companies, the shareholders, and the debtor were locked in

22   13,5-.

23           THE COURT:  Well, I mean, in between that sequence was

24   when you got the RSA, right?

25           MR. SKIKOS:  Correct.

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  In other words, there was no RSA before

2     those preliminary stages, but the RSA is what -- is now is a

3     culmination.

4          MR. SKIKOS:  It's a step.

5          THE COURT:  It's a major step.  Right.  Yeah.

6          MR. SKIKOS:  And now here's where we are now.

7          You raised six different issues that we have to work

8     on, and we are working on them.  And the point that Mr. Abrams

9     made, that I agree with, is that the power to approve a

10    settlement offer must at all times rest with the claimants

11    collectively and under no circumstances be assigned to the

12    claimants' counsel.

13         In other words, we, the lawyers, have to provide

14    independent advice to the fire victim community in order for

15    them to make an informed decision.  What happened?

16         When we -- we are now in era of this case where we're

17    collaborating.  We're not fighting.  We're trying to do the

18    best thing.  We're trying to build a better governance system

19    actively.  We're trying to deal with the stock issue actively.

20    We're trying to deal with the government liens actively.

21         The debtor and us agree to three major things in

22    the -- we call it the "Notice of Procedures for Soliciting

23    Votes of Holders of Fire Victims Claims."  This is the voting

24    document.  And the three things that address Mr. Abrams'

25    concern, which is also our concern, is, number one, "Each

PG&E Corp, Pacific Gas And Electric Company

1  voting decision rests exclusively with the fire victim client";

2  Number two, "The methods proposed are intended to

3  expedite and streamline the transmission of information to fire

4  victim clients, increase voter participation, and better ensure

5  such victims are empowered to make informed and meaningful

6  decisions as to whether to accept or reject the plan";

7  Number 3, "Each law firm is required to comply with

8  applicable rules regarding aggregate settlements and informed

9  consent so that the fire victims' clients can individually vote

10  to accept or reject the plan."

11  THE COURT:  I just need to ask you, what are you

12  looking at?

13  MR. SKIKOS:  This is the agreement that we put

14  together with Weil Gotshal on the -- how to vote.

15  THE COURT:  But it's not in the RSA?

16  MR. SKIKOS:  No.

17  THE COURT:  Okay.

18  MR. SKIKOS:  It's new.

19  THE COURT:  Okay, but that to some extent I'm glad to

20  hear that, but until I heard you read it, or Mr. Abrams heard

21  you read it, we weren't aware of it.

22  MR. SKIKOS:  Right.

23  THE COURT:  Okay.

24  MR. SKIKOS:  Right.  That's a true statement.

25  THE COURT:  Okay.

of 146
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    MR. SKIKOS:  And the point of the three points that I

2    just made is that lawyers must exercise their independent

3    judgment in advising the clients whether to accept or reject

4    the plan.

5         I don't think the Court or the bankruptcy lawyers have

6    to worry about this group of lawyers exercising their

7    independent judgment.  This group of lawyers is very difficult

8    to control, and I --

9         THE COURT:  Piece of cake.

10        MR. SKIKOS:  -- I feel bad for Ms. Dumas almost every

11   day, but we did the work on Tubbs, we did the work on the bar

12   date, we got to where we are on participation because we worked

13   closely with the fire victims.

14        Ultimately, the decision on voting yes or no are in

15   the hands of the fire victims, and Mr. -- there was a

16   declaration that we put together from Mr. Barton in support of

17   the bar date motion.  And I think he touches on the feelings of

18   the community and why we have to work hard to build our

19   credibility with the community and earn their trust.

20        He said, look, after San Bruno, PG&E did ads and made

21   apology ads; and when they did the apology ads, it meant

22   nothing, they got bonuses, and then three years later

23   everything's burned down again.

24        And so platitudes aren't going to work.  What we have

25   to do is provide facts and evidence of why this plan's going to

of 146
(970) 703-8428  operations@escribers.net | www.escribers.net

                PG&E Corp, Pacific Gas And Electric Company

1   work.  What we have to do is get rid of the decades of blind

2   greed that has compromised this company in short-term profits,

3   and we're going to have to provide people facts.

4           The lawyers in this case, the TCC, Ms. Dumas' team,

5   our team, we're committed to that.

6           I understand Mr. Abrams' concern.  I share it.  But

7   we're -- but he doesn't have to worry about the lawyers.  What

8   he has to worry about is working with us to build the best plan

9   possible.

10          THE COURT:  Okay.  Thanks, Mr. Skikos.  Appreciate

11  your comments.

12          Ms. Dumas, are you going to speak or --

13          MS. DUMAS:  Mr. Marshack is -- I'm happy to have him

14  proceed.

15          MR. MARSHACK:  Your Honor, I was going to say just

16  about everything that Mr. Skikos said.  I'm actually going to

17  say --

18          THE COURT:  Well, he beat you to it.

19          MR. MARSHACK:  I think Mr. Skikos would make a fine

20  bankruptcy lawyer.

21          THE COURT:  You ask him if he wants to come around for

22  some of the other ones.

23          MR. MARSHACK:  Your Honor, the suggestion that Mr.

24  Abrams makes is that the fire victims' lawyers are really not

25  giving it their all.  They're not doing the best job for their

PG&E Corp, Pacific Gas And Electric Company

1    clients.

2          I'm a bankruptcy lawyer.  I don't travel in the

3    personal injury world, but I have been vested in this world for

4    nine months now.  The lawyers I've met in this case are so

5    passionate about their cause.  They're so -- they're not giving

6    Mr. Karotkin an inch.  He has to fight for everything.  I don't

7    think he can put a comma into the disclosure statement without

8    their being an objection.  These lawyers are really, really

9    passionate about what they're doing for their clients.  They're

10   very passionate about the fire victims.

11         I've been in meetings with eighteen, twenty of these

12   lawyers, and they are fighting for every penny.  They have

13   their financial advisors, they're listening to them, and

14   there's absolutely no way that Mr. Abrams can come before this

15   Court and suggest for a second they're doing anything less than

16   the most thorough job possible.  I just want the Court to know

17   that.

18         THE COURT:  Thank you, Mr. Marshack.

19         Ms. Dumas?

20         MS. DUMAS:  Thank you, Your Honor.  Cecily Dumas on

21   behalf of the official committee of tort claimants.

22         THE COURT:  You got a lot of props there in the last

23   few minutes.

24         MS. DUMAS:  I appreciated that.

25         THE COURT:  You're on a roll here.

PG&E Corp, Pacific Gas And Electric Company

1    MS. DUMAS:  It is, in fact -- as Mr. Marshack who

2    represents Mr. Singleton and Mr. Skikos, it is, in fact, a

3    group effort.  The Court may be aware that -- will recall that

4    not only the TCC is a party to the restructure and support

5    agreement with the debtors, we are also thirteen law firms --

6    THE COURT:  No, I'm very much aware of that.

7    MS. DUMAS:  -- who collectively represent over seventy

8    percent of the claimants.  We don't agree with any assertion

9    that the RSA handcuffs those professionals from sharing their

10   sincere and honest views of the plan.

11   THE COURT:  So Mr. Skikos or anyone else that could

12   talk to an individual client and say this is why you might want

13   to vote against it, right?

14   MS. DUMAS:  I mean, I have met all of them, as Mr.

15   Marshack said.  I have worked with them closely for the last

16   nine months.  I concur with his observation that they are

17   sincere, passionate advocates on behalf of all fire victims,

18   and I'm going to assume -- I think I can safely assume -- that

19   they will meet their ethical obligations to their own clients

20   with respect to how they communicate with them on the plan and

21   the circumstances under which the RSA was felt by those firms

22   to be in the best interest of their clients.

23   The TCC similarly voted to and believes that the RSA

24   was the best step at the time in the direction of the path

25   before us, and many people have observed the progress that was

PG&E Corp, Pacific Gas And Electric Company

1    made as a consequence of that RSA, as well as the subro RSA,

2    and subsequently the bondholder RSA.

3          And Mr. Karotkin is correct.  We would be in a very

4    difficult and different position timing-wise and with progress

5    of the case if that RSA were to be set aside.

6          THE COURT:  A whole lot of things would come

7    unraveled; wouldn't they?

8          MS. DUMAS:  I believe that the core of the progress in

9    the case would come unraveled.

10         We -- the TCC both believes that the settlement is in

11   adequate amount and the form of consideration is the best we

12   could accomplish under the circumstances.  I believed that

13   then; I believe that today.

14         We are aware of concerns about government claims.  We

15   are aware of concerns about victims being forced to receive

16   stock.  I have no idea, Your Honor, how that keeps popping up,

17   but --

18         THE COURT:  It keeps popping up.

19         MS. DUMAS:  -- it keeps popping up and --

20         THE COURT:  I got letters.  You got letters.

21         MS. DUMAS:  Yes, sir.  And on the point of

22   communication, just a couple of observations.

23         So thank you, Your Honor.  You are, in fact -- for

24   those of you who aren't aware, the Court is sending letters

25   received by the Court to the principal lawyers in the case,

PG&E Corp, Pacific Gas And Electric Company

1    including my firm, on behalf of the TCC.  We are taking every

2    one of those letters seriously.  We have a team that's reading

3    them and developing new responses to frequently asked questions

4    that will be put on the TCC's official website.  That is in

5    process and it will continue to be in process in addition to

6    the correct observation the Court made and Mr. Karotkin made

7    and Mr. Skikos made about the disclosure statement being in

8    bankruptcy.  The official communication on which every claimant

9    will be provided adequate information to make an informed vote.

10            It is also correct that Mr. Abrams or any other victim

11   or any other lawyer who represents victims will be able to make

12   comments on, object to, the content of the disclosure statement

13   to make sure they believe it contains adequate information.

14            For myself personally, it is extremely important to me

15   to have credibility not only with the Court, but with fire

16   victims.  And I have communicated with Mr. Abrams one-on-one

17   including about twenty minutes on Saturday.  I have attempted

18   to explain how things work in bankruptcy to him.  I appreciate

19   his involvement.  I think it's very important for the Court to

20   have an outsider, if you will, a voice of victims coming to the

21   Court directly and expressing concerns.  And I will continue to

22   do that as long as Mr. Abrams is willing to communicate with

23   me, and any suggestions he makes with respect to better

24   communication, the TCC will certainly take that into account.

25            We believe the motion for reconsideration of the TCC

PG&E Corp, Pacific Gas And Electric Company

1    RSA, however, should be overruled.  Not only do we believe

2    there's not a technical basis under the Bankruptcy Code, but we

3    believe substantively doing so would have an extremely

4    deleterious effect on the progress in the case.

5              THE COURT:  Okay.  Thank you, Ms. Dumas.

6              Mr. Abrams, would you like to make some closing

7    comments?  And you've got a lot of props today too.  So that's

8    a good thing, right?

9              MR. ABRAMS:  Yes, Your Honor.  And thank you, and I

10   want to make a point clear.  I do not question that the

11   attorneys are doing their level best in this case.  However, my

12   concern is that it's a myopic view, and that they are so

13   focused on negotiating over, as was stated before, commas that

14   they aren't taking the time that is needed to consult with

15   their clients and make sure that what they're advocating for is

16   in the best interest of claimants.

17             And it's because process has been put over the product

18   that I'm here today, and I have these concerns.

19             The eventual vote that everyone seems to be so relied

20   upon is going to be compromised by this RSA.  I'm a pretty good

21   reader, Your Honor, even though I'm not an attorney, and when I

22   see a provision like 2(g) in the RSA that says "Fire claimant

23   professionals shall support and recommend and urge a vote to

24   accept the amended plan," seems to me like that's a shall.  It

25   doesn't give them the discretion to say, you know what, for you

PG&E Corp, Pacific Gas And Electric Company

1    it might not be best.  There's other provisions in here.

2          2(k) "The TCC shall distribute to holders or fire

3    victims materials that are approved by the debtor."  That isn't

4    discretion.  I'm not making this stuff up, Your Honor.  I've

5    read it.

6          Look, obviously, there's a lot to understand regarding

7    the RSA and the implications of the RSA.  I'm not here to tell

8    you that I'm an expert on these things.  But I do know that,

9    when you talk to experts, sometimes because they're expert on

10   one thing, they seem to think that they have an understanding

11   and they're an expertise (sic) on a broad array of things like

12   knowing what's in the best interest of victims.

13         I did not get a return phone call until after I filed

14   this fourth motion for reconsideration.  Only at that point,

15   did I get a -- I'm sorry, Your Honor.  I'm raising my voice

16   because I'm passionate.

17         THE COURT:  You're allowed to be passionate.

18         MR. ABRAMS:  Only after all of those things, after

19   countless letters -- not countless; I can count -- three

20   letters.  After three letters into the court, after filing of

21   motions, the survey, did someone reach out to me to say, Will,

22   I see this survey of this 240 folks, who are the -- who are the

23   groups that you reached out to?  Was there a phone call to me

24   to say, look, I want to correct the record, just let me know

25   who they are, I'd be happy to communicate that?

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  Lower your voice.

2          MR. ABRAMS:  Sure.  No, was the answer.  They did not

3    reach out to me at all for any of those reasons.  Only after I

4    filed this motion did I -- I initiate a phone call and finally

5    got a return phone call, and if I have to go through all of

6    those steps to get a phone call from an attorney -- I don't

7    represent all the victims, but I am representative of what this

8    is, which is I had to go through all of those hoops to get a

9    phone call back, and if I had to do all of that, imagine who --

10   someone who isn't so involved in this, who isn't sitting in

11   this courtroom.

12          THE COURT:  But Mr. Abrams, I think where we might

13   differ is this point, and I have a lot of experience in the

14   bankruptcy world and you have little or none.

15          MR. ABRAMS:  None.

16          THE COURT:  But that doesn't mean -- but you have much

17   more experience than I with the tragedies that you've been

18   through.  But I look at Ms. Dumas and Mr. Julian and a number

19   of the lawyers from their firm who I didn't know before, and

20   these are very, very highly experience people in a very, very

21   highly technical area.

22          MR. ABRAMS:  Absolutely.

23          THE COURT:  And they have made -- aligned with some of

24   the best of the personal injury fire-type lawyers in the state,

25   if not the country --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          MR. ABRAMS:  Absolutely.

2          THE COURT:  -- and I have to believe them.  They're

3    not -- if they're pulling a fast one on me, they're succeeding,

4    because they're telling me the kind of things that Mr. Skikos

5    just said and Mr. Marshack just said about their dedication to

6    the well-being of all the fire victims.

7          And so I appreciate that you want to have more

8    information and want your calls returned, but --

9          MR. ABRAMS:  It's not about me, Your Honor.

10         THE COURT:  I understand --

11         MR. ABRAMS:  I'm not -- it's not my calls.

12         THE COURT:  I understand it's not about you, but I

13   also understand that the 70,000 fire claimants were flooded

14   with the kind of information, it would be worse rather than

15   better.

16         What do you think is going to happen when 70,000

17   disclosure statements go out?  It's going to be confusing.  And

18   it's --

19         MR. ABRAMS:  Not if they get the RSA --

20         THE COURT:  No.  No.

21         MR. ABRAMS:  -- which is seven pages long.

22         THE COURT:  Mr. Abrams, I think you're putting too

23   much faith in an RSA.

24         RSA, first of all, I wonder -- and I'm not going to do

25   a quiz here -- but I would bet most people in Northern

PG&E Corp, Pacific Gas And Electric Company

1    California don't even know what an RSA stands for.  I know you

2    do and I do.  They are tools in the toolbox of the bankruptcy

3    world, and outside of bankruptcy there's no such thing as an

4    RSA.  And so think about the number of dollars and people and

5    complexities, not just for the fire problems, but the other

6    problems:  the bonds and the layers and layers and layers of

7    the financing structure of this company.

8          MR. ABRAMS:  Yes.

9          THE COURT:  And then add to that all the governmental

10   agencies and their positions, and then add to that whatever the

11   body count of insurance companies is -- it's over a hundred --

12   and the sophistication.  And we have one of the most complex

13   corporate reorganizations in U.S. history, and one of the

14   things to implement them, one of the tools in the toolbox is

15   this thing called an RSA that exists in the bankruptcy world

16   and nowhere else, probably.  And you're focusing on it and

17   assuming that 70,000 of your fellow survivors would want to

18   even attempt to understand that because you are very thorough

19   and very -- you're reading it carefully and thoroughly and

20   asking questions, but I suspect that large numbers of them

21   don't want to do that because they want to trust the people

22   that they trust.  That's not to say that you're not

23   trustworthy.  They want people like Cecily Dumas and Bob

24   Julian --

25         MR. ABRAMS:  Absolutely.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1       THE COURT:  -- who they've never heard of before until

2   the bankruptcy, and Frank Pitre and Mr. Skikos, and the others

3   who are -- they never wanted to meet them either.  But all of

4   those people together, coalescing around this entity called the

5   TCC, and you want me to question the way they're all coming

6   together because of your own concerns.

7       And so I want to say I can't undo all that, but as Mr.

8   Skikos said, I respect your views, but I can't let you make

9   your desires jeopardize what is a very, very complex process.

10  That's all.

11      MR. ABRAMS:  It --

12      THE COURT:  I'm not trying to negotiate with you; I'm

13  trying to explain, from my point of view, and what I see from

14  the bankruptcy professional's point of view, and if I don't get

15  you to agree with anything, that's okay too; I just want to try

16  to let you understand that I'm responding to your criticisms

17  and complaints, but I can't solve them.  And I don't think your

18  solution is a solution.  I think --

19      MR. ABRAMS:  Okay.  I think, Your Honor --

20      THE COURT:  And you don't really want me to throw the

21  whole thing out, do you?  I mean, do you really want me,

22  seriously, to say, folks, we're going to go back to where we

23  were last fall, Tubbs fire victims, back up, Judge Donato, back

24  up in place, undo all of this stuff, and call up the governor's

25  office and say we're still going to try to get this done by

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1   June 30th?

2          MR. ABRAMS:  Your Honor, I think it would take them

3   about an hour to go in a room and cross out the "shall"s and

4   put in "may" so that all of them can be able to speak freely.

5   To have all of these people arguing against transparency,

6   arguing against having the information out there -- and you're

7   right; there are a whole host of claimants who will just say,

8   look, I'm moving on, I do not want to look at this document.

9   And there are some who will look at it a little, some who

10  will --

11         THE COURT:  And it's --

12         MR. ABRAMS:  -- look at it a lot.

13         THE COURT:  It's going to be --

14         MR. ABRAMS:  And this precludes that.

15         THE COURT:  It's going to be -- no, it does not

16  preclude it.  Anyway --

17         MR. ABRAMS:  I --

18         THE COURT:  -- have you ever seen a disclosure

19  statement before now?

20         MR. ABRAMS:  I have looked at one to prepare for this

21  but --

22         THE COURT:  You may have heard me joke with Mr.

23  Karotkin in the past, no Manhattan phone books, but some

24  disclosure statements look like  Manhattan phone books.

25         MR. ABRAMS:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    THE COURT:  Not San Francisco phone books; they're

2    thinner.  But they're very complicated and almost like, holy

3    mackerel, there's just too much stuff there.  Wait till the

4    hearing on the disclosure statement when I tell Mr. Karotkin I

5    think there's too much in there anyway.

6    MR. ABRAMS:  Well, I hope, Your Honor, that there is

7    an executive summary --

8    THE COURT:  There will be.

9    MR. ABRAMS:  -- for those who want very little, and

10   then throw the phone book in there for the people who want the

11   phone book.

12   THE COURT:  There will be, and you --

13   MR. ABRAMS:  I would --

14   THE COURT:  -- and you can have your own copy of the

15   phone book, and --

16   MR. ABRAMS:  Okay.

17   THE COURT:  -- I welcome that.  Listen, I have to move

18   on.  I want to --

19   MR. ABRAMS:  Can I make one last point, Your Honor?

20   THE COURT:  Yes, you may.

21   MR. ABRAMS:  The things that have been brought up that

22   are now changing, like you don't have to take stock, the only

23   reason why those things occurred was because the information

24   got out and because people started to say I don't want stock, I

25   don't want the company that burned my home down to rely upon

of 146
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    them for stock.

2         THE COURT:  There might be some people, you know, who

3    want the stock.

4         MR. ABRAMS:  There might be.  There --

5         THE COURT:  Because some people will tell you that

6    when a company comes out of bankruptcy they sometimes have a

7    spike in the stock values.

8         MR. ABRAMS:  My point, Your Honor, is that the only

9    reason why those things are changing is because of

10   transparency, is that despite the efforts of the RSA to not

11   have that information come out, it has.  So --

12        THE COURT:  Well, your --

13        MR. ABRAMS:  -- it just demonstrates my point --

14        THE COURT:  No, you're being --

15        MR. ABRAMS:  -- that if there's more transparency, it

16   will actually benefit victims --

17        THE COURT:  But I think --

18        MR. ABRAMS:  -- regardless of their views.

19        THE COURT:  But Mr. Abrams, I think it makes the point

20   of all the people that spoke, that they are not your opponents

21   here.  They are all moving towards a goal, and so are you.

22        Anyway, I'm going to leave it at that.  I appreciate

23   your comments.  I'm going to overrule your objections.  I'm not

24   going to get involved in the details about whether you carried

25   your burden of the motion to reconsider.  As I say, from a

PG&E Corp, Pacific Gas And Electric Company

1  trial judge point of view, my goal is to do what I think is the

2  right thing to do.  And there have been many times when I've

3  been told I can't consider a motion to reconsider, then I'll

4  say, well, you know what, I'm going to consider it, because I

5  went to Baby Judge School to learn how to do what I think is

6  the right result.  And I'm persuaded that this is the

7  preferable result.  That is to say, it's not a right or wrong;

8  it's preferable to the alternative that you are suggesting.

9       And I think that you should be encouraged by the fact

10  that there are things that are happening and things like the

11  kind of things that Mr. Skikos and Mr. Marshack talk about.

12  And there will be an attempt by me and hopefully by you and

13  others to make that Manhattan phone book look simple for those

14  who want it simple but complex for those who want to look at

15  the complexity.

16       And at the end of the day, as I said to Mr. Karotkin,

17  you, as an individual person, citizen, claimant, you can argue

18  as much as you wish, and you're free to do it, if you think

19  it's the wrong thing to go for this plan.  And --

20       MR. ABRAMS:  That's why I'm here.

21       THE COURT:  And you'll have that opportunity in due

22  course, not yet.  And when I approve the disclosure statement,

23  that's when the company will be obligated to promulgate that

24  disclosure statement and the balance and the information that

25  hopefully will answer many of the questions that you would like

PG&E Corp, Pacific Gas And Electric Company

1  answered.

2  I cannot go back and say Mr. Abrams is right, every

3  time the word "shall" appears we have to change it to "may".  I

4  simply am not permitted to second guess you.  You heard me say

5  before, and you quoted me in the briefs, that I'm not in a

6  position to second guess the judgments of the professionals

7  that did this.  And maybe it would have been better if it said

8  "may" instead of "shall", but --

9  MR. ABRAMS:  Yes.

10  THE COURT:  -- but you heard a number of people

11  explain the iterative process, the complex process that got to

12  the point, and I'm not in a position to take the risk of

13  jeopardizing it.

14  So again, I'll leave it at that.  I'll sign an order

15  that Mr. Karotkin can submit that just indicates that for the

16  reasons stated on this record -- and this is the record, if you

17  want to preserve it -- that we'll overrule your objections to

18  the motions on, in effect, deny -- excuse me, deny your motion

19  for reconsideration.  And so the order will be -- well, it's

20  already in place as to the agreements.

21  And I thank you for your effort, and I hope you will

22  continue to be proactive in working with people like Ms. Dumas

23  to get the information that you need.  I know she'll give you

24  the courtesy; that's what she does.  So I'll see you --

25  MR. ABRAMS:  Thank you, Your Honor.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1        THE COURT:  I presume I'll see you again.  Thank you

2   for your time.

3        MR. ABRAMS:  Thanks.

4        THE COURT:  Mr. Karotkin, do you want to take a few

5   minutes and talk about my concerns about the disclosure and the

6   plan?  Are you ready for the surprise from me?  I didn't mean

7   to do that to you last night.  It was only me and my short

8   staff, and I wish I could have given you my thoughts earlier; I

9   just couldn't do it.  But I do have a couple of concerns, and I

10  hope it's not too late to fix them.  Is it?

11       MR. KAROTKIN:  I don't -- it's not too late; however,

12  in your noticing order you did say that this notice had to be

13  completed by the end of this week.

14       THE COURT:  Right.  Right, but --

15       MR. KAROTKIN:  Which --

16       THE COURT:  Which is Friday.

17       MR. KAROTKIN:  Which is -- now remember --

18       THE COURT:  Valentine's Day.

19       MR. KAROTKIN:  I mean, this is going to in excess of

20  400,000 people.

21       THE COURT:  Mr. Karotkin, I'm not going to stop the

22  presses.  I'm going to tell you what -- there's one thing that

23  I think didn't get done --

24       MR. KAROTKIN:  Right.

25       THE COURT:  -- that I directed.  There's another thing

PG&E Corp, Pacific Gas And Electric Company

1    that I think creates an ambiguity, and there are a couple of

2    points that I'd like you to --

3             MR. KAROTKIN:  Sure.

4             THE COURT:  -- consider if -- the one thing that got

5    lost in the shuffle, and if I missed it, I missed it twice,

6    because I went back through the notice.  I did indeed look at

7    the comment on the notice.  But I gave you, through your staff,

8    a list of things that I wanted to add to the notice, and one of

9    them didn't get there.  And that was the May 19th date and time

10   for the confirmation hearing and the notice about it being

11   there.  And I grant you, that will be in the notice of approval

12   of the disclosure statement, but I wanted it there in the first

13   notice that went out also, and it didn't get there.  And so

14   that's one thing.

15            MR. KAROTKIN:  Right.

16            THE COURT:  And if it's too late to fix it, I'm not

17   going to fall on my face, but if you have time to fix it, then

18   I'd like it fixed.

19            The other thing is really more of confusion, and maybe

20   it's my -- well, first of all, do you want to respond to that?

21   I mean, I didn't miss it. It's not in there, is it?

22            MR. KAROTKIN:  No, no, you're correct.

23            THE COURT:  Okay.  So let me see if I can -- so on

24   page -- wait a minute.  I've got to get my notes, because I was

25   doing these last night.  Give me one second.  So in the --

PG&E Corp, Pacific Gas And Electric Company

1  there's confusion between two statements, I think.  So looking

2  at the notes -- yeah, on the notice -- bear with me, please.

3         On the order, not the notice -- on the order that I

4  issued the day before, on the 6th, that led to the notice,

5  there was an item in there for February 21, 4 p.m., deadline

6  for filing summary of fire victim claims resolution procedures.

7  That is not in the notice.

8         But what's more confusing is, in the disclosure

9  statement itself, on page 5, there is, in bold:  "If you are a

10  fire victim, please see the enclosed fire victim claim plan

11  treatment summary", and that hasn't been produced.  And so I

12  don't know -- you need to tell me if "fire victim claim plan

13  treatment summary" is the same as "fire victim claim resolution

14  procedure".  If it's the same document with two titles, then

15  it's more confusing.  And if it's two different documents, then

16  when is it going to happen?  In other words, what were you

17  going to do on the 21st of February and --

18         MR. KAROTKIN:  Okay.

19         THE COURT:  -- and where is it?  So tell me --

20         MR. KAROTKIN:  Okay.  So --

21         THE COURT:  -- what's the story?

22         MR. KAROTKIN:  So I think what we discussed last week

23  was, on the 21st, the tort claimants committee, which is

24  drafting the claims resolution procedures, would provide and

25  file a summary --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  Right.

2          MR. KAROTKIN:  -- of that document, which would

3    then -- would be incorporated, as appropriate, in the

4    disclosure statement.

5          THE COURT:  So that is the document that's referenced

6    on page 5?

7          MR. KAROTKIN:  No, it's not the document.  What we

8    have prepared, and the reason it wasn't filed is that the tort

9    claimants committee is still reviewing it is, I would say,

10   something similar to what you alluded to before, a short one-

11   or two-page summary, solely for the benefit of fire claimants,

12   which explains to them, in a page or two, exactly what they're

13   getting and how it's going to work.

14         THE COURT:  Right, what Mr. Abrams just called

15   "executive summary".

16         MR. KAROTKIN:  Exactly.

17         THE COURT:  Well, that's exactly what I had in mind

18   too.

19         MR. KAROTKIN:  Exactly.

20         THE COURT:  But my point is that --

21         MR. KAROTKIN:  And again, but Your Honor, all I'm

22   telling you is that the tort committee is still reviewing that

23   document.

24         THE COURT:  I got it, but --

25         MR. KAROTKIN:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  But the --

2          MR. KAROTKIN:  But it's different from the February 21

3    document.

4          THE COURT:  But it's almost the same title.  In other

5    words, one of them has the word "resolution", and one of them

6    doesn't, but let's not play games about it; when is it going to

7    happen?  In other words, if the disclosure statement has been

8    filed, and it won't be disseminated among all the fire

9    claimants but the notice will, and it'll attract people's

10   attention.  So when someone gets the notice of the hearing or

11   the notice of the disclosure statement hearing, and chooses to

12   look at the disclosure statement itself, which is docket 5700,

13   that says "to be filed".  So what's the later time when that's

14   going to be filed?

15         MR. KAROTKIN:  We would expect that to be filed around

16   February 21.

17         THE COURT:  Well, okay, and that's --

18         MR. KAROTKIN:  And we have that information.

19         THE COURT:  That's a good answer.  In other words, I'm

20   okay with that if -- and I couldn't tell if it was -- it

21   doesn't say.  First of all, the confusion was it looked to me

22   like you were using two similar titles for --

23         MR. KAROTKIN:  No.

24         THE COURT:  -- the same document.  I'll take your word

25   for it.

PG&E Corp, Pacific Gas And Electric Company

1           But Ms. Dumas, are you there?  Do you --

2           MS. DUMAS:  Yes, sir.

3           THE COURT:  You understand these are two different

4  documents then, right?

5           MS. DUMAS:  Yes, sir, I do.  And I think the confusion

6  lies in the fact that the debtor has prepared a summary in

7  which the executive summary written for the lay person is to be

8  inserted.  That's what we're working on right now, and it's

9  that insert to which Mr. Karotkin refers as being the document

10  that the TCC continues to review along with the consenting fire

11  claim professionals.

12           THE COURT:  I mean, I won't second guess you both.

13  You both have assured me they're two different documents, one

14  or the other, and I remember when we talked at the hearing last

15  week about the deadlines.  There's no question that we had a

16  discussion, because I signed the order that includes and

17  references the February 21 deadline for resolution procedures

18  summary.

19           It wasn't until -- unfortunately it was yesterday,

20  although I could have done it on the weekend; I actually did

21  something else for a while -- when I looked at the disclosure

22  statement itself that I saw the blank, if you will, page 5.

23  And so it was confusion because the document identified on page

24  5 is not mentioned in the order that I signed.

25           So look, can we -- first of all, Mr. Karotkin, is

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1   there time to change the notice to put in the thing that I

2   mentioned previously --

3           MR. KAROTKIN:  Yes.

4           THE COURT:  -- about the missing date?  I don't want

5   you to throw out 450,000 --

6           MR. KAROTKIN:  No, we stopped the presses.

7           THE COURT:  -- documents.  You know the Geico

8   commercial where the guy throws away all the fliers about

9   something?

10          MR. KAROTKIN:  Yes.  We have stopped --

11          THE COURT:  Okay.

12          MR. KAROTKIN:  We have stopped the presses on this.

13          THE COURT:  Well, then it seems to me then, and it

14  would be appropriate in my mind to put into that notice --

15  again, I don't want to overdo it, but the notice could also, I

16  think, just say what's going to happen on the 21st so that

17  people like Mr. Abrams and others, who want to be on top of

18  what's going on, can be told when they'll see this thing.  And

19  if they are told that something will be available on the 21st

20  or some other date then that, to me, is helpful.

21          So I guess what I'm saying to you then, Mr. Karotkin,

22  if it's not going to create total chaos, that the notice should

23  be amended to add the May 19th date and time and the bold

24  warning.  So again, it's early notice for people.  And also to

25  include the two items that you now believe can be filed on the

PG&E Corp, Pacific Gas And Electric Company

1    21st instead of the one that's in the order but not in the

2    notice.  Are you with me?

3            MR. KAROTKIN:  I'm with you.

4            THE COURT:  Okay.

5            MR. KAROTKIN:  I just -- it will be dependent on Ms.

6    Dumas and her client getting that to us before the 21st.

7            THE COURT:  Well, you know, if you told me it's got to

8    be the 28th or March 5th --

9            MR. KAROTKIN:  Okay.

10           THE COURT:  -- or some other date, I'm not -- I think

11   it's important that it be, certainly, a little bit before the

12   disclosure statement.  It's relevant to disclosure.

13           Ms. Dumas, can you -- it doesn't have to be February

14   21st.  Pick a date.  Give me a date when you and Mr. Karotkin

15   can be --

16           MR. KAROTKIN:  Well, we can leave the February -- the

17   February 21st date is fine on your order, okay?  That's the

18   document Ms. Dumas will file.  I would suggest that, with

19   respect to the disclosure statement and the summary, that we

20   get a few more days to do that.

21           THE COURT:  Pick it; make me an offer.

22           MR. KAROTKIN:  I don't know, what's the 28th?   Is

23   that -- I don't have a calendar in front of me.  What day of

24   the week is that?

25           THE COURT:  Well, I mean, it's one week after the

PG&E Corp, Pacific Gas And Electric Company

1   21st.  It's --

2           MR. KAROTKIN:  Which is -- how about the 28th?

3           THE COURT:  The 28th is a Friday.

4           MR. KAROTKIN:  Okay.

5           THE COURT:  Ms. Dumas, again, I want you two to be

6   comfortable.  I don't want to make stupid rules here.  Can you

7   live with that?

8           MS. DUMAS:  Yes, Your Honor, we are comfortable, and

9   it's helpful to hear the Court's questions about a process in

10  which we've been engaging with Mr. Karotkin and his colleagues

11  and the consenting fire claimant professionals.  We believe we

12  were on track --

13          THE COURT:  Well --

14          MS. DUMAS:  -- and still are on track.  We --

15          THE COURT:  But I owe you both an apology.  It wasn't

16  my first choice, at 10 o'clock last night, to say there's a

17  problem with this notice and stop the presses and if --

18          MS. DUMAS:  Right.

19          THE COURT:  If he'd already gone to press, I would

20  have gotten over it, but I thought --

21          MR. KAROTKIN:  We should have said we already went to

22  press.

23          THE COURT:  Yeah, you should have, like the Geico ad;

24  the guy had already sent out all of the flyers.

25          But the point is, I would ask you to be mindful of the

PG&E Corp, Pacific Gas And Electric Company

1    need to keep things simple, and fire victim claim resolution

2    procedure -- "summary of fire victim claim resolution

3    procedure" and "fire victim claim plan treatment summary"

4    sounds awful similar.

5          MS. DUMAS:  We will fix that.

6          THE COURT:  And something that just clarifies it.

7          MR. KAROTKIN:  Sure.

8          THE COURT:  Okay.  So Mr. Karotkin, I'm on a roll now.

9    If you can make the following additional changes, I would

10   appreciate it.  I'm not going to have a fit about it if it

11   can't be done.

12         On the notice, on page 3, this is a very small point,

13   but you indicate that the core parties; you use that term -- I

14   called it my guest list -- the core parties have to email their

15   comments or their objections to the parties listed in paragraph

16   4(c)(v), and I believe the parties in 4(c)(v)(A), is the clerk

17   of the court, and I don't want the clerk of the court to be

18   getting -- or the court officer getting all those emails of

19   objections to disclosure statements.

20         So perhaps in the notice, on page 3, line 2, where it

21   says paragraph 4(c)(v), you could put something like "other

22   than the clerk of the court" or just something to ensure -- the

23   clerk of the court will get them anyway, but let's attempt to

24   make sure the clerk's office isn't getting people's comments

25   on -- because we won't know what to do with them.  The clerk's

PG&E Corp, Pacific Gas And Electric Company

1    office, what are they going to do?  They're going to send them

2    to me in chambers, and that's exactly what I don't want to do

3    is to be in the middle of the discussion that's dealing with

4    objections to the disclosure statement.  Are you okay with

5    that?

6              MR. KAROTKIN:  Yes.

7              THE COURT:  The only other thing, a couple of minor

8    points, even more minor, on February 28th, according to the

9    order establishing the schedule, you had put in "deadline for

10   final form of subrogation wildfire trust agreement", and that

11   didn't show up in the order, and I wondered if that's a big

12   deal.  I mean --

13             MR. KAROTKIN:  Is it --

14             THE COURT:  In other words, on the notice, where you

15   go, on page --

16             MR. KAROTKIN:  I don't think it's a big deal for the

17   notice.

18             THE COURT:  It's just an additional -- I mean, what

19   I'm trying to do is let the notice be letting people who are

20   involved -- again, using Mr. Abrams, but others too, at least

21   have a short checklist of what are some coming attractions.  So

22   there's the summary, there's the pre-hearing date, there's

23   the -- you had not put in the deadline.  Well, March 9th is the

24   date you were going to file a revised plan or disclosure

25   statement also.  And --

PG&E Corp, Pacific Gas And Electric Company

1          MR. KAROTKIN:  But again, Your Honor, this is notice

2     of the disclosure statement hearing.

3          THE COURT:  Well, but it's also relevant dates.  It's

4     all these other dates.

5          MR. KAROTKIN:  But we didn't -- we tried to be -- we

6     didn't want to have, like, a twenty-page notice, so we tried to

7     include what we thought was more relevant for this hearing.

8     Now, look, we'll do whatever you want.

9          THE COURT:  Mr. Karotkin, as I say, I wouldn't make a

10    big deal of it except we have the option.  Under "relevant

11    dates", you've listed four of them.  I just want to add a

12    couple more so that people that are following this case,

13    whether it be Mr. Abrams or the media or the public, just can

14    see a short checklist of what are coming attractions.

15         MR. KAROTKIN:  Okay.

16         THE COURT:  So --

17         MR. KAROTKIN:  We will add those dates, and we will

18    send it to chambers.

19         THE COURT:  No, just go.  I won't say another word.

20    Don't send it to chambers.  Just send it --

21         MR. KAROTKIN:  Are you sure?

22         THE COURT:  I'm sure.

23         MR. KAROTKIN:  Okay.

24         THE COURT:  I'm sure.  Well, the last time chambers

25    sent you the March 9th or May 19th day that didn't get in

PG&E Corp, Pacific Gas And Electric Company

1    there, but  --

2                MR. KAROTKIN:  Yes.

3                THE COURT:  -- that's okay.

4                MR. KAROTKIN:  That's my mistake.

5                THE COURT:  No, it's not a mistake.  It's complicated.

6    Things are happening.  No, I want you to be able to get this

7    notice out on time, and I don't want to -- I've got enough to

8    do on my side.

9                MR. KAROTKIN:  Okay.

10               THE COURT:  So --

11               MR. KAROTKIN:  All right.  So we'll take care of that.

12               THE COURT:  So I have a question for you because we

13   had to cut things off last week a little bit in short notice,

14   are we really going to have to have a hearing -- I mean, do you

15   anticipate there will be a hearing to estimate, for voting

16   purposes, the FEMA and Cal agency's claims?

17               MR. KAROTKIN:  Perhaps.

18               THE COURT:  Do you know if they're going to vote?  I

19   mean, maybe they -- I mean, I'll ask the rhetorical question,

20   not to ask their counsel to tell me, but perhaps for you to ask

21   their counsel.  If they're not going to vote then we shouldn't

22   worry about temporary allowance, and if they are going to vote,

23   it might depend on how they're going to vote.  But I'd like to

24   avoid a battle that doesn't have to be fought.

25               MR. KAROTKIN:  I would suggest that you give us

PG&E Corp, Pacific Gas And Electric Company

1  another few days to consult with them.  We've been consulting

2  with them on a briefing schedule as well for the classification

3  issue, and I think we're close but --

4          THE COURT:  Okay.

5          MR. KAROTKIN:  -- give us a couple of more days on

6  that and we can report back.

7          THE COURT:  Yeah.  No, you can do it on the normal

8  cycle or stipulation.  I'm yours to do what you want and the

9  litigants want me to do for scheduling.  With a few very minor

10  exceptions, my schedule is clear all the way through.  I

11  frustrated --

12         MR. KAROTKIN:  I was afraid --

13         THE COURT:  -- Ms. Parada about --

14         MR. KAROTKIN:  I was afraid of that, actually.

15         THE COURT:  Yeah, I frustrated my courtroom deputy by

16  cancelling a week I was going to be away in April.  And so this

17  is my priority, as I'm sure it's your priority, and so I'm

18  going to accommodate you.  And so I will leave it to you or the

19  other counsel who are here today.  Is there anything else that

20  we need to talk about that is relevant to scheduling things

21  that are coming up?  And if the answer is no, then I'll wait.

22  If you have something to tell me about, let's talk about it.

23         MR. KAROTKIN:  Yes, one more thing.

24         THE COURT:  Yes.

25         MR. KAROTKIN:  The financing motion.

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  Right.

2          MR. KAROTKIN:  We had said that we were going to file

3    amended pleadings yesterday.

4          THE COURT:  Right.

5          MR. KAROTKIN:  Our current plan, Your Honor, is

6    that -- there are two elements to the financing motion.

7    There's the equity piece, and there's the debt piece.  The

8    equity piece has not changed, and we would like to go forward

9    with that on the 19th.

10         THE COURT:  On the 19th, next week.

11         MR. KAROTKIN:  Next week.

12         THE COURT:  Okay.

13         MR. KAROTKIN:  With respect to the debt piece, because

14   of the noteholder RSA, that will be changing, and we would

15   request that we file -- we're in discussions with the banks on

16   that piece of it, and we would request that we file an amended

17   pleading on this coming Monday, with respect to that element of

18   the motion, and subject to Your Honor's availability, have the

19   debt piece heard on the 26th, which is a regular date.

20         THE COURT:  Remember that next Monday is a holiday.

21   The electronic court is open but it's not -- it's a federal

22   holiday.  So you would file it on the 17th, and hear it on

23   the --

24         MR. KAROTKIN:  26th.

25         THE COURT:  -- 26th.  Well, let me ask you this.  Do I

PG&E Corp, Pacific Gas And Electric Company

1  recall correctly?  The governor's office had filed an objection

2  to some aspect of the financing motion.  Was it across the

3  board or just --

4        MR. KAROTKIN:  I think it was across the board.

5        THE COURT:  And is anyone here for the governor's

6  office on the phone or in court?

7        MR. HINKER:  Good afternoon.  Mat Hinker from

8  O'Melveny & Myers.

9        THE COURT:  Do you intend to go forward on an

10  opposition to the equity piece on the 19th?

11        MR. HINKER:  We do, Your Honor, and potentially to

12  cross-examine the debtors' witnesses.

13        THE COURT:  Well, we weren't going to have a live

14  hearing, were we?  Were you anticipating witnesses for that

15  hearing?

16        MR. KAROTKIN:  We have a declarant --

17        MR. HINKER:  I believe they submitted a declaration --

18        THE COURT:  Wait, I'm sorry, on the phone, just repeat

19  what you said.  I didn't -- I was confused by what you said,

20  so --

21        MR. HINKER:  I believe the debtor submitted a

22  declaration in support of that motion, so I would anticipate

23  cross-examining the declarant.

24        THE COURT:  Well, you mean -- are you going to do a

25  deposition or you mean in open court?

PG&E Corp, Pacific Gas And Electric Company

1        MR. HINKER:  In court, Your Honor.

2        THE COURT:  Were you aware of that before?

3        MR. KAROTKIN:  No.

4        THE COURT:  So do you have your witness available on

5    the 19th?

6        MR. KAROTKIN:  Yes.

7        THE COURT:  Well, I'm sorry, on the phone, I just

8    didn't hear your name.  I mean, how much time do you want?  I

9    need to schedule so we don't -- we don't necessarily have a

10   problem on that day, but generally I need a heads up if there's

11   going to be live testimony.  So how much time do you anticipate

12   needing?

13       MR. HINKER:  We can do it by deposition, Your Honor,

14   if that's acceptable to Mr. Karotkin.  Otherwise I'd really

15   need probably a few hours.

16       THE COURT:  A few hours?  Well, I can't set aside a

17   few hours for a trial.  So --

18       MR. KAROTKIN:  Why don't we consult with him after the

19   hearing?

20       THE COURT:  Okay.  How about on the follow-up, on the

21   26th, is the governor's office going to be objecting to what's

22   called the debt portion of the financing?

23       MR. HINKER:  Hard to say, Your Honor, without seeing

24   the revised pleading, but we would anticipate, at this point,

25   yes.

escribers
(973) 406-2966 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    THE COURT:  Mr. Karotkin, would it be efficient to put

2    them together?  I mean, is it really critical to do the equity

3    a week early?  I mean, especially if there's going to be a

4    trial?  I mean, again, I will accommodate a little bit, but

5    what's critical about the 19th compared to scheduling them

6    together?  And you can take this up later if you want.

7         MR. KAROTKIN:  Why don't we take it up later?

8         THE COURT:  Yeah.  I'll, for now, assume, and Ms.

9    Parada will keep on our docket that, for the 19th, we're going

10   to have a portion of the existing financing motion, and it

11   might include some reasonable amount of time for witness

12   examination.  And Mr. Karotkin will be noticing for the 26th

13   the other aspect of that motion.  He'll file by the 17th, and

14   that'll be heard on the 26th, and --

15        MR. KAROTKIN:  With an objection deadline for the

16   amended motion on the 25th, Your Honor, is fine with us.

17        THE COURT:  Yes.  Objection 25th.  Correct.  And you

18   will confer with the governor's office about how they want to

19   prepare that.

20        Now, were there any other known objections to that

21   motion?

22        MR. KAROTKIN:  No.

23        THE COURT:  All right.  Well, again, if there's any

24   counsel on the phone or in court who anticipates objecting to

25   that motion, would you please let me know right now that you

PG&E Corp, Pacific Gas And Electric Company

1    anticipate objecting?  Okay.  Silence is deafening.

2        All right.  What's next?

3        MR. KAROTKIN:  I don't believe anything else.

4        THE COURT:  Anyone?  Ms. Dumas?  Anyone want to be

5    heard?

6        Mr. Bray.  Or are you trying to leave?

7        MR. BRAY:  No, Your Honor.  I actually did just want

8    to take a couple of minutes of your time.

9        THE COURT:  Sure.

10       MR. BRAY:  But I have a cold, so sorry if my voice is

11   a little squeaky.

12       THE COURT:  Just stay down there.

13       MR. BRAY:  I understand.  I woke up with it this

14   morning.  I got it here.

15       THE COURT:  Go stand next to Mr. Karotkin.

16       MR. BRAY:  Gregory Bray, Milbank, Your Honor, counsel

17   for the official committee.  I just wanted -- my comments are

18   more directed to the scheduling order the Court entered to the

19   process going forward.  I think we're somewhat concerned, we

20   being the committee, that there's an assumption the committee

21   has signed off on the plan.  That's not the case.

22       THE COURT:  No, I know that.

23       MR. BRAY:  Okay.  I just want to be sure.  Then we

24   have wood to chop still.  We have some legal issues.  We have a

25   statutory responsibility, for lack of a better word.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  But you remember, I don't like plan

2     objections in disclosure statement objections.

3          MR. BRAY:  I understand that, Your Honor.

4          THE COURT:  Okay.

5          MR. BRAY:  And trying to be transparent.  We certainly

6     will not weigh in at the disclosure statement with plan issues

7     that we think if resolved in our favor at the plan would not

8     completely derail the process.

9          If we have an objection that we think could actually

10    derail confirmation, I think we will raise it with you at the

11    disclosure statement hearing, and you could decide if you want

12    to take it up ahead of time or not.

13         THE COURT:  Well, but what I've said before in the

14    prior case and in lots of cases, if it goes to the heart of --

15         MR. BRAY:  Exactly.

16         THE COURT:  -- confirmable as a matter of law, then I

17    want it early.

18         MR. BRAY:  And I'm saying the same thing, Your Honor.

19         THE COURT:  And that's what I did in the first case,

20    and that's what derailed the plan at a point.

21         MR. BRAY:  And we will abide by that, Your Honor.  I

22    just want to be transparent and let the Court know that we have

23    not been able to assess the feasibility of the plan yet, for

24    example.  We haven't seen a business plan.  We've been trying

25    to get one for some time.  There is a meeting now scheduled,

PG&E Corp, Pacific Gas And Electric Company

1    I'm pleased to report, with the debtors' financial advisors to

2    go through a business plan, and I'm sure we'll have a number of

3    questions.

4            THE COURT:  But feasibility triggers confirmation

5    issues.

6            MR. BRAY:  Correct.

7            THE COURT:  Not matter of law issues.

8            MR. BRAY:  I understand.

9            THE COURT:  Unless it's fatally --

10           MR. BRAY:  I only want to be transparent so someone

11   doesn't stand up later and say you should have brought these

12   things up sooner.  All I'm trying to advise the Court is we're

13   not there right now.

14           THE COURT:  Got it.

15           MR. BRAY:  And I just don't want any assumptions the

16   other --

17           THE COURT:  Well, I'm sure Mr. Karotkin is not hearing

18   this for the first time either

19           MR. BRAY:  No, he's not.

20           THE COURT:  Okay.

21           MR. BRAY:  Thank you, Your Honor.

22           THE COURT:  All right.  Anyone else want to be heard?

23   Wait before you make your appearance.

24           Oh, yes.  Mr. Karotkin, I want to remind you that I'm

25   scheduled to have my Chapter 13 calendar for a short time on

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1       the 19th at 1.  Now, you can sit in on the Chapter 13 calendar

2       for a few minutes if you like, but if we have an evidentiary

3       hearing that goes forward on the 19th, we may have to take a

4       break.  That Chapter 13 calendar is fairly short, but I can't

5       change it.  Okay.

6               MR. KAROTKIN:  That's fine.  Thank you.

7               THE COURT:  Gotcha.

8               MR. TROY:  Good morning, Your Honor.  Matthew Troy,

9       Department of Justice --

10              THE COURT:  Yes.  Mr.  Troy.

11              MR. TROY:  -- Civil Division, on behalf of various

12      federal agencies.  I have one issue to raise with Your Honor

13      with respect to the notice and a couple more with the order,

14      only one of them, I think, being really substantive.

15              The first, on the notice, Your Honor, on page 4 --

16      actually starting at page 3 --

17              THE COURT:  Okay.  Wait one second.  I got to get to

18      my notice.  Okay.  Page?  Okay.

19              MR. TROY:  Starting at page 3 at the very bottom.

20              THE COURT:  Yes.

21              MR. TROY:  It states that, "Disclosure statement or

22      solicitation objections must".  So this is the objection to the

23      disclosure statement and/or an objection to the voting

24      procedures motion.  "The solicitation procedures motion must be

25      in short, concise, bullet points without points and authorities

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    in support."

2         Disclosure statement, no argument.  Hear you loud and

3    clear on how you want that approached.  But an objection to a

4    substantive motion, Your Honor, I would submit, filed with the

5    Court, if not previously resolved, should not be presented in a

6    bullet point fashion with no citation to authority.

7         THE COURT:  Well, that's not something that we talked

8    about except in the context of disclosure statement.

9         MR. TROY:  Right.  But the way it's framed here is it

10   encompasses objections to both disclosure statement and the

11   solicitation procedures motion.

12        THE COURT:  No, I understand.

13        Mr. Karotkin, you want to weigh in on that?

14        I just -- I hadn't thought about it.

15        MR. TROY:  And I apologize to Mr. Karotkin.  I didn't

16   have a chance to raise it with him previously.

17        THE COURT:  It's all right.  It's all right.

18        MR. TROY:  So I didn't mean to say he wasn't engaged

19   on this.

20        THE COURT:  I mean, is this an issue?  I mean, Mr.

21   Troy, is there -- is this going to be solicit --

22        MR. TROY:  Your Honor, there might --

23        THE COURT:  But it's not going to be solicitation

24   material, right?

25        MR. TROY:  No, it's actual -- no, this is the voting

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    procedures motion, Your Honor.  If you look at paragraph 2 on

2    page 2 of the notice, this is that the debtor will file on or

3    before February 18th a motion requesting that the Court approve

4    plan solicitation and voting procedures.

5              THE COURT:  Right.  But it's solicitation procedures.

6              MR. TROY:  Voting procedures, Your Honor.  And I

7    think, as you recall from the last hearing, there might be an

8    issue with that.

9              THE COURT:  I mean, well, Mr. Karotkin, you're going

10   to have to respond.  I don't --

11             MR. KAROTKIN:  I mean, this is -- I wish Mr. Troy had

12   called me.  I mean, this is kind of, like, ridiculous at this

13   point.

14             THE COURT:  Well, that's --

15             MR. KAROTKIN:  Why don't we say, "State with

16   particularity in short, concise bullet points the basis and

17   nature of any objection or response to the disclosure

18   statement."  Okay?  Does that work for you?

19             MR. TROY:  That's fine.

20             MR. KAROTKIN:  Okay.

21             THE COURT:  Well, Mr. Troy, give me a heads up on

22   what's beneath the surface here.  What do you --

23             MR. TROY:  Well, I think what you heard at the last

24   hearing, Your Honor, is that the debtors are going to file in

25   their solicitation procedures motion a voting procedure that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  says --

2      THE COURT:  Right.

3      MR. TROY:  -- everyone who, as a creditor, who's being

4  channeled to the fire victim trust will have one vote in the

5  amount of one dollar.

6      THE COURT:  Well, this goes back to the question I

7  asked before I realized you were here in the room.  Are you in

8  a position to tell me whether you're going to vote?  I mean, is

9  FEMA going to vote?  Because they might choose not to vote, in

10  which case it's not an issue.

11      MR. TROY:  I don't know if a final decision has been

12  made, Your Honor, but in my discussions with the various client

13  agencies it's not just FEMA.  There are a number of agencies

14  that are being channeled to the fire victim trust.  The

15  presumption is that we will be voting, Your Honor.

16      THE COURT:  Well, I certainly agree with you that the

17  question of whether your claim is allowed at one dollar or some

18  other amount is significant, and it impacts a lot, but it

19  doesn't impact it at all if you choose not to vote as a matter

20  of policy.  I mean, and again, I'm not anticipating what the

21  government will do, but in my experience, in some cases, some

22  institutional type parties simply choose not to vote.  Your

23  client, whichever one it wants to do it, will choose to vote or

24  not as it chooses.  It's not for me to say.

25      MR. TROY:  I understand, Your Honor.  The issue might

(970) 666-0060 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    become moot, but it hasn't been decided yet, and this notice is

2    going out.

3            THE COURT:  I agree with you.  It's going out.  And in

4    fairness to Mr. Karotkin, I think a lot of the discussion was

5    focusing on disclosure, and this goes back to my experience.

6    Again, I hate to sound like the oldest person in the room, but

7    it was a technique that I implemented in the first PG&E case,

8    and it was remarkably helpful, because I didn't need eighty-

9    three twenty-page briefs about disclosures.  I wanted bullet

10   points, and they work.  But I don't disagree with you.  If

11   we're dealing with something substantive, you're entitled to

12   lay it out completely.

13           MR. TROY:  I appreciate it, Your Honor.

14           THE COURT:  So I'm going to urge you to do the meet

15   and confer.  But I will, just as a request, that you take it

16   up, at some point, with your decision makers, and if, as a

17   matter of policy, FEMA chooses or the agencies choose not to

18   vote, then make the problem go away.  And if you choose to

19   vote, then I think it's probably important, and we're not going

20   to ask you to tip your hand on that ahead of time, because my

21   guess is if you vote in favor of it, it might be a nonissue.

22           But again, there may be votes against it.  And so I

23   don't know how and when there will be a resolution to

24   estimating for voting purposes the way Mr. Karotkin believes it

25   can be done at one dollar, but I'll hear him if that's what he

PG&E Corp, Pacific Gas And Electric Company

1  says later on.

2  MR. TROY:  Okay.

3  THE COURT:  Okay?

4  MR. TROY:  Turning to the order, Your Honor, you have

5  a meet and confer requirement.

6  THE COURT:  Correct.

7  MR. TROY:  In the February 28th to March 5th time

8  frame.  We'd simply request that that meet and confer include

9  the TCC, Your Honor.  Very simply, every time the word trust

10  agreement or claim procedures come out of my mouth, Mr.

11  Karotkin refers to Ms. Dumas and TCC.

12  THE COURT:  You mean to meet and confer with Ms.

13  Dumas?

14  MR. TROY:  Yes.  I mean, if some of these

15  disclosure -- I just don't want to be caught in a position

16  where the meet and confer does not include a party that really

17  is controlling.

18  THE COURT:  Well, I think, again, I'll let Mr.

19  Karotkin respond to this, but the TCC is not a sponsor of the

20  plan, right?  The plan --

21  MR. TROY:  It is not a proponent, Your Honor.  But

22  again, I --

23  THE COURT:  And all I was thinking about that is the

24  debtors and shareholders are pretty much aligned, and they are

25  the disclosurer -- the disclosurer -- and therefore anyone who

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    objects to the disclosure should meet and confer on that

2    subject.

3              But Ms. Dumas, are you amenable to meet and confer

4    with the federal government's agencies and anybody else who

5    wants to talk about their objection?

6              MS. DUMAS:  Yes, we are, Your Honor.  In conjunction

7    with the debtor, we'd be more than happy to.

8              THE COURT:  Is that sufficient on this record?

9              MR. TROY:  That's fine, Your Honor.

10             THE COURT:  That's fine for me too.

11             MR. TROY:  Okay.  The other point, Your Honor, is Mr.

12   Karotkin is correct.  We are talking about a possible schedule

13   that we'd present to you to address the issue of

14   classification.  I just wanted to get one clarification.  In

15   looking back through the order, the deadline for March 6th on

16   page 4 of your order includes the deadline for any creditor to

17   file a motion pursuant to Bankruptcy Rule 3018 seeking

18   temporary allowance in a different class or amount for purposes

19   of voting on the plan.  That last phrase, Your Honor, seems to

20   me to be more of a 3013 issue, and I would just seek

21   clarification that the debtor -- the proponents are not viewing

22   March 6th as a deadline for filing a 3013 motion.

23             THE COURT:  Well, no.

24             MR. TROY:  And I think --

25             THE COURT:  I thought I had every single rule

(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    memorized, but what's a 3013?  It's a motion.  Determine

2    class --

3            MR. TROY:  I told Mr. Pascuzzi that if I said this to

4    you, I knew you were going to tell me that you had no idea what

5    you were talking about, and he said oh, don't worry about it.

6    He will.

7            THE COURT:  Score one for Troy.  Okay.

8            So Mr. Karotkin, you know what Rule 3013 says, don't

9    you?

10           MR. KAROTKIN:  By heart, yes.

11           THE COURT:  The court may direct, determine classes of

12   creditors and equity security holders pursuant to 1122, 1222,

13   and 1322(b).  Now, how many of you know what 1322(b) does?

14           Mr. Karotkin, what's the answer to Mr. Troy's

15   concerns?  What should I do here?  I have --

16           MR. KAROTKIN:  To the extent that Mr. Troy or Mr.

17   Pascuzzi are objecting to their classification of their claims,

18   this was not intended to address that.  This is solely for

19   voting.  And we will come up with a different schedule for the

20   briefing on that.

21           THE COURT:  Let me just -- yes.  I mean, I understood

22   it to be only for voting also.

23           MR. TROY:  Okay.

24           THE COURT:  Because you might have heard the comment

25   last time.  In some other cases there are some devious lawyers

PG&E Corp, Pacific Gas And Electric Company

1   that like to do a gotcha, like, object to the claim the night

2   before the hearing.  Then say whoops, no vote for you.  So

3   that's why the objection deadline is early for those purposes

4   too, so there's no gotchas either way.

5           MR. TROY:  It's fine.  Mr. Karotkin's representation

6   is fine, Your Honor.

7           THE COURT:  Okay.

8           MR. TROY:  The last point, Your Honor, is the

9   substantive one.  And this goes back to the trust agreement and

10  the claims resolution procedures, Your Honor.  I think, after

11  today's colloquy with respect to the order and the notice

12  between you and Mr. Karotkin and Ms. Dumas, that now we're

13  seeing for the first time even just a summary of the claims

14  resolution procedures on February 28th.  It was previous --

15          UNIDENTIFIED SPEAKERS:  21st.

16          MR. TROY:  21st.  So there's still going to be a

17  summary of the claims resolution procedures filed on the 21st.

18          MS. DUMAS:  That's correct.

19          MR. KAROTKIN:  That's correct.

20          MR. TROY:  Okay.  I apologize for that, Your Honor.

21  Then my main point then goes to the trust agreement, Your

22  Honor, and to a degree with the claims resolution procedures.

23  Under your current order, substantially final forms of those

24  aren't even filed until after the disclosure statement occurs.

25          The disclosure statement hearing is on the 10th.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  Correct.

2          MR. TROY:  That's their deadline for filing

3     substantially final forms of the trust agreement and the claims

4     resolution procedures.

5          With respect to both, that is the first time that any

6     fire victim creditor will actually see the trust agreement and

7     the actual claims resolution procedures, as opposed to a

8     summary, Your Honor.

9          Now, Your Honor, I know.  I go back to your colloquy

10    with Ms. Winthrop at the last hearing.  Is it really going to

11    change how you vote?  I think you're going to know how you're

12    going to vote whether or not you see those documents or not.

13         THE COURT:  Yes.  It's your voter's pamphlet.

14         MR. TROY:  Okay.  So I would agree --

15         THE COURT:  So primaries are over today.

16         MR. TROY:  I would agree, Your Honor.  But I would

17    submit, Your Honor, that that is not the only touchstone for

18    determining whether or not there has been adequate disclosure,

19    Your Honor, such that if you don't get these documents until

20    after the disclosure statement occurs, fire victim claimants,

21    including the governmental entities who are being channeled to

22    that fire trust, really don't know how their claims are going

23    to be treated.

24         Let me give you an example.  The plan still defines

25    fire victim trust as one or more trusts to be established to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    administer, address, settle fire victim claims.

2         THE COURT:  But we know there are three trusts, right?

3    There's the governmental entity trust, subrogation trust, fire

4    victims trust.

5         MR. TROY:  And the definition of fire victim trust

6    alone in the plan, Your Honor, I'll read it to you.

7         THE COURT:  Well, I believe you.

8         MR. TROY:  1.79.  Fire victim trust means one or more

9    trusts established on the effective date.  You're talking, in

10   effect, I think, about sub-trusts.

11        THE COURT:  Ms. Dumas, can you help us here?

12        MS. DUMAS:  That is, in fact, what the plan says.

13        THE COURT:  Well, there are two questions.  Are there

14   going to be multiple trusts for fire victims, as distinguished

15   from subrogation or other governmental entities?  And then

16   secondly, when can the finals be seen, if not by March 10th?

17   So what's the answer to the first one?

18        MS. DUMAS:  So the answer to the first question, oh,

19   the number of trusts, it is currently contemplated that there

20   will be one trust administered by Justice Trotter, as was

21   indicated at the last hearing.

22        THE COURT:  So 1.179, more correctly, would be in the

23   singular.

24        MS. DUMAS:  Yes.  That's the current contemplation.

25        THE COURT:  Okay.  I mean, that's the best I can tell

PG&E Corp, Pacific Gas And Electric Company

1    you at this point.

2         MR. TROY:  Well, that's kind of my point, Your Honor.

3    I would submit that that's not adequate disclosure to say we

4    currently contemplate there only being --

5         THE COURT:  Okay.  When will --

6         MR. TROY:  -- one trust, but we reserve the right to

7    change it up until the effective date.

8         MS. DUMAS:  Okay.

9         THE COURT:  Ms. Dumas, when will the trust see the

10   light of day for purposes of this calendar?  It's a March 10th

11   date at the moment, and that's consistent or concurrent with

12   the commencement of the disclosure statement.

13        MS. DUMAS:  We will endeavor to communicate with the

14   government entities as early as practical in the process.  As

15   I've said at the last couple of hearings, there are a number of

16   constituents working on a number of aspects of that trust plan

17   protocol.  There is a suspicion on the part of the government

18   entities, and we will find out if they're even claimants after

19   the Court hears the claim objections, but we don't think their

20   reimbursement claims or their prospective reimbursement claims,

21   should they be allowed, would be treated any differently than

22   any other fire claims.

23        THE COURT:  Well, but your pending objections, which

24   are on calendar for later this month, say that they don't even

25   have a right to assert a claim.  First of all, I haven't

(970) 266-5000   operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  decided that.  It hasn't been briefed.  I mean, the government

2  hasn't responded to those objections yet.

3          MS. DUMAS:  That's right.

4          THE COURT:  And that was taken.  So look.  Can we

5  simplify this?  Can you move up an earlier commitment for

6  filing the trusts?  From earlier than March 10th.

7          MS. DUMAS:  Oh.  I don't have authority to provide an

8  earlier date.  I can --

9          THE COURT:  Well, I do.

10          MS. DUMAS:  -- commit to the Court that we will

11  endeavor to have it ready as soon as possible.

12          THE COURT:  Mr. Troy, wouldn't that be something that

13  would be an objection to confirmation if there's something

14  wrong the trust?  In other words, I'll concede the point that

15  we can't have different rules for different cases really, and

16  disclosure ought to help the voter make a decision.  But if you

17  don't get the final trust until the day the Court approves the

18  disclosure, you could raise it as a confirmation objection,

19  couldn't you?

20          MR. TROY:  Absolutely, Your Honor.

21          THE COURT:  Yes.

22          MR. TROY:  But the fact that an objection is a

23  confirmation objection does not preclude the possibility that

24  it's --

25          THE COURT:  No.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    MR. TROY:  -- also a disclosure statement objection.

2    THE COURT:  I agree.  I agree.  But we just can't

3    solve all the problems.  In other words, I could ask Ms. Dumas

4    to use her best efforts to do it earlier.  I could order her to

5    do it earlier.  But two days earlier?  Three days?  I mean, I

6    just have to accept the complex task that everyone is dealing

7    with, including you and me and everybody.

8    So make me an offer, Ms. Dumas.  Commit to a date a

9    little earlier, and I'll tell Mr. Troy that's what it'll have

10   to be.  Can you do it?

11   MS. DUMAS:  May I take just one moment, please, Your

12   Honor?

13   THE COURT:  Um-hum.

14   MR. KAROTKIN:  Your Honor, could I?  The issue for the

15   Court on the disclosure statement hearing is whether disclosure

16   is adequate for people to make a decision.  It doesn't require

17   that every single plan document be in final form --

18   THE COURT:  No, I know.  I know.

19   MR. KAROTKIN:  -- for the disclosure statement

20   hearing.  Mr. Troy, to stand up here and say that he needs that

21   final document in order for him to make an informed decision on

22   how to vote for the plan, he'll see that document on March

23   11th.  He'll have forty-five days to review that document to

24   make a decision whether to vote yes or no.  I believe he's

25   certainly competent during that period of time to make a

operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  reasoned decision based on that document.

2      THE COURT:  No, he is.  He is.  And if Ms. Dumas tells

3  me it just can't be done, I'm probably not going to make it

4  impossible.  We're just trying to squeeze everybody.

5  Everybody.  So I understand your point.

6      Ms. Dumas?  Speaking to your committee.

7      And Mr. Pascuzzi, we're going to get to you.

8      MR. PASCUZZI:  Thank you.

9      THE COURT:  Before 12:30.

10      MS. DUMAS:  Your Honor, thank you for the opportunity

11  to confer briefly with some of the consenting fire claim

12  professionals.  And I must have missed, was there a concession

13  by the United States that we don't have to file earlier than

14  March 10th?

15      THE COURT:  No.  No, I just asked you if you could do

16  it.

17      MS. DUMAS:  Okay.  All right.  There was a colloquy

18  that I missed.

19      THE COURT:  Oh, well, Mr. Karotkin was being a little

20  bit of an advocate for your side, but --

21      MS. DUMAS:  Well, we appreciate his advocacy, as --

22      THE COURT:  What's the date?

23      MS. DUMAS:  -- he appreciates ours.

24      THE COURT:  Can you give me a date?

25      MS. DUMAS:  So we'll give you the date of March 3rd.

(9710 6124) operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1  That will give the United States a week to study the trust

2  document and hopefully --

3          THE COURT:  And everybody else who wants to.  Okay.  I

4  mean, you're filing it, right?

5          MS. DUMAS:  Yes.

6          THE COURT:  You're filing it.  Okay.  Mr. Troy --

7          MS. DUMAS:  Absolutely.

8          THE COURT:  You squeezed a week out of them.

9          MR. TROY:  Will that include the claims resolution

10 procedures?  Because the March 10th is for both.  Prior to

11 that, it's only a summary.

12         THE COURT:  But can you live with it?

13         MS. DUMAS:  Yes.  We can live with it.

14         MR. TROY:  And you told me I have to live with the

15 date, so I will.  Thank you.

16         THE COURT:  Mr. Karotkin, despite your advocacy Ms.

17 Dumas gave the other side a week.  Is it workable for you?

18 You've already agreed to make some changes to the notice, and I

19 know you don't want to turn the notice into a twenty-page

20 document, nor do I.  Do you think we should amend the order

21 also to reflect these things today, just for good order?

22         MR. KAROTKIN:  It's fine with me.

23         THE COURT:  Well, I mean, again, I hate to use words

24 like transparent, because it's not my favorite word, but you

25 and I and Ms. Dumas have spent a lot of time together, but

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1   there are an awful lot of people out in the world that are

2   aware of what we're trying to do, and I don't like these secret

3   orders.

4         So I told you that I will not require you to run a

5   revised notice by me.  You need to go on that.  You can submit

6   an amended order establishing the schedule that picks up the

7   things we talked about, and that will take care of that.

8         MR. KAROTKIN:  We can do that.

9         THE COURT:  Okay.  Mr. Pascuzzi.  And then, again, I

10   want to try to get done here in a hurry, but you've been

11   patient.

12         MR. PASCUZZI:  Thank you, Your Honor.  Paul Pascuzzi,

13   Felderstein Fitzgerald Willoughby Pascuzzi & Rio, for the

14   California State agencies.  Your Honor, I appreciate Mr. Troy's

15   clarifications with the Court and the scheduling.  I just want

16   to remind the Court, the State agencies have the classification

17   issue as well --

18         THE COURT:  No, I know that.

19         MR. PASCUZZI:  -- with regard to the fire claims.

20         THE COURT:  And are you in a position to indicate in

21   advance whether you're even going to vote on the plan?

22         MR. PASCUZZI:  Not at this time, Your Honor.

23         THE COURT:  You're not in a position to indicate it.

24         MR. PASCUZZI:  Correct, Your Honor.

25         THE COURT:  Okay.  But I'll just put it out there for

PG&E Corp, Pacific Gas And Electric Company

1    you to consider and ask you to consider.  That's all.  Again,

2    I'm not trying to leverage you.  I don't think it would be

3    appropriate.  But I wouldn't want to waste time on discussions

4    about estimating for voting purposes for somebody that isn't

5    going to vote.

6              MR. PASCUZZI:  Well, Your Honor, part of our claims,

7    fire claims, are in the general unsecured unimpaired class.

8    Some of them aren't.

9              THE COURT:  Right.

10             MR. PASCUZZI:  So the debtors can fix it and eliminate

11   the issue by putting us where we belong, with the other general

12   unsecured creditors.

13             THE COURT:  Well, but that gets --

14             MR. PASCUZZI:  But we'll brief that issue.

15             THE COURT:  But that gets it to the classification

16   issue.

17             MR. PASCUZZI:  It does.

18             THE COURT:  And I understand.

19             MR. PASCUZZI:  It does, Your Honor.

20             THE COURT:  Yes.

21             MR. PASCUZZI:  And so my understanding is we're going

22   to meet and confer and file a Rule 3013 motion, and none of the

23   deadlines that are already established --

24             THE COURT:  Right.  And I said -- and I'm going to go

25   along with pretty much what you -- particularly the two

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    governmental -- federal and state agencies and the debtor work

2    out and make it work.

3            MR. PASCUZZI:  Thank you.

4            THE COURT:  Okay.

5            MR. PASCUZZI:  Thank you, Your Honor.

6            THE COURT:  And I see Ms. Winthrop standing up, so is

7    she going to tell me the same thing, and I'll say the same

8    thing.

9            Ms. Winthrop, good morning or good afternoon.

10           MS. WINTHROP:  Good afternoon, Your Honor.  Rebecca

11   Winthrop of Norton Rose Fulbright on behalf of the Adventist

12   claimants.  And I always appreciate coming to these hearings,

13   because I learn something new.

14           THE COURT:  So do I.

15           MS. WINTHROP:  So just to be clear.  There's now a

16   shorter version of the trust agreement and trust procedures

17   that is going to be filed on the summary of fire victim claim

18   resolution procedures on the 21st.

19           THE COURT:  Well, you saw that order, right, from

20   February 6th?

21           MS. WINTHROP:  Yes.  That's what I'm looking at.

22           THE COURT:  And the notice.  Well, the notice and the

23   order, or Mr. Karotkin and I just got a little bit of cross-

24   purposes, but the order said summary of resolution procedures,

25   but it wasn't in the notice.

PG&E Corp, Pacific Gas And Electric Company

1        MS. WINTHROP:  Yes.

2        THE COURT:  But I told him that I wanted it in the

3   notice, and then there was this other thing that's referenced

4   in the plan called fire victim claim plan treatment summary,

5   and that's a separate document, but they're compatible.

6        MS. WINTHROP:  Right.  So there are supposed to be two

7   different documents, but I don't get the second document until

8   the 28th, which is the same day I'm supposed to raise any

9   objections to the debtor.

10        THE COURT:  Correct.

11        MS. WINTHROP:  So that's what I'm trying to

12   understand.  How do I raise any concerns I have with respect to

13   the document that we understand -- or discussed today.

14        THE COURT:  Again, we're all back to, is it going to

15   influence your vote?

16        MS. WINTHROP:  It could, Your Honor.

17        THE COURT:  Then I'll take your word for it.  Then I

18   guess if you don't have the summary, and it's your deadline to

19   file, file your -- you don't file.  You serve.

20        MS. WINTHROP:  Right.

21        THE COURT:  Do it, and then amend it when you get

22   something more.

23        MS. WINTHROP:  Okay.  Right.

24        THE COURT:  We're not going to throw you out if you

25   met (sic) a deadline that you couldn't meet because you don't

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1    have the document.  But presumably the summaries are going to

2    give you a clue.

3              MS. WINTHROP:  I am hoping, Your Honor, because the

4    disclosure statement currently doesn't seem to have that level

5    of information, but I was also concerned because at the last

6    hearing you said if you don't file -- the in-crowd, if you

7    will, of the group that are listed on your order on page 3 of

8    5 -- you said if you don't raise your objection by the 28th,

9    you're out, so --

10             THE COURT:  Well, that was too strong.

11             MS. WINTHROP:  Okay.

12             THE COURT:  But the point is this is such a fluid

13   process that next week Mr. Karotkin might tell me there's

14   something else we have to fit in here.

15             MS. WINTHROP:  Absolutely, Your Honor.

16             THE COURT:  I mean, we're all moving together.  And

17   I'll put the same question.  You don't have to answer, but

18   think about it.  Is your client going to vote?  And if your

19   client chooses not to vote, well, maybe it's not as important

20   for you for estimation purposes, but I'll just leave it open as

21   something that we don't want to get bogged down on a voting

22   motion if that is relevant.

23             MS. WINTHROP:  Your Honor, and for us, a lot has to do

24   with what's in those trust agreements --

25             THE COURT:  Of course.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1      MS. WINTHROP:  -- and procedures, and we are hoping

2  to -- we don't want to prejudge something we haven't seen, and

3  we want to continue to work cooperatively with everyone else,

4  but we do think that it's important to keep the concept of

5  estimation for voting purposes alive.

6      THE COURT:  Yes.  It's alive.

7      MS. WINTHROP:  Great.  Thank you, Your Honor.

8      THE COURT:  Thank you.  Anyone else want to be heard?

9      MS. DUMAS:  Your Honor, Cecily Dumas.

10      THE COURT:  Ms. Dumas.

11      MS. DUMAS:  May I have just one more moment?

12      THE COURT:  Yes, ma'am.

13      MS. DUMAS:  Ms. Riddle helpfully reminded me that I

14  should make it clear, because people are coming up to the

15  podium and need to understand.  We will file the resolution

16  trust agreement, as promised a few minutes ago, by March 3rd,

17  together with the draft claims resolution procedures.

18      As I said at a previous hearing, that document will

19  very likely not be final -- in final final form by then but

20  with the information we have at that time, and I can almost

21  predict that it will be a living document that will continue to

22  be worked on up until plan confirmation.

23      THE COURT:  Listen.  I suspect we will have living

24  documents up to confirmation.

25      MS. DUMAS:  Thank you, Your Honor.

PG&E Corp, Pacific Gas And Electric Company

1          THE COURT:  And I understand that.  And look.  I

2   expect every lawyer representing a client who has to cast a

3   vote or chooses to cast a vote, just be mindful of that.

4   Again, I hate to use analogies, but if you haven't decided

5   whether you like Bernie Sanders or Elizabeth Warren or Pete

6   Buttigieg, and you live in New Hampshire, you figure out who to

7   vote for.  And it doesn't mean that you've picked the

8   president.  It just means who you voted for on that day for

9   that choice.

10          Yes, sir?

11          MR. MITCHELL:  Good afternoon, Your Honor.  Sean

12   Mitchell from Paul, Weiss, Rifkind, Wharton & Garrison on

13   behalf of the California Public Utilities Commission.

14          THE COURT:  Yes, Mr. Mitchell.

15          MR. MITCHELL:  We were talking a little bit about the

16   classification of governmental claims.

17          THE COURT:  Yes.

18          MR. MITCHELL:  And the Commission has raised the issue

19   of the classification of some of its claims with the debtor.

20          THE COURT:  Correct.

21          MR. MITCHELL:  And that dialogue remains ongoing.  And

22   we're also working with the parties on the briefing schedule

23   and reserve the right to participate if needed.

24          THE COURT:  Well, the Commission doesn't have a claim,

25   though, right?  Do you have a claim on file?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp, Pacific Gas And Electric Company

1          MR. MITCHELL:  Yes.  The Commission has filed a proof

2  of claim.

3          THE COURT:  Oh, I --

4          MR. MITCHELL:  That's correct.

5          THE COURT:  Again, I haven't reviewed all 70,000

6  claims.

7          MR. MITCHELL:  Yes.

8          THE COURT:  No, I didn't know that.  Okay.  Well,

9  that's fine.

10          MR. MITCHELL:  Yes.  Okay.

11          THE COURT:  You keep doing that.

12          MR. MITCHELL:  Thank you.

13          THE COURT:  Good.  Thank you.

14          All right.  Anyone else?  All right.  I'm going to

15  thank you all for your time and efforts, and I will look

16  forward to seeing you, those of you who come next week.  Have a

17  nice weekend, everyone.  Thank you for your time.

18      (Whereupon these proceedings were concluded at 12:24 PM)

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                           I N D E X

2    RULINGS:                                      PAGE  LINE

3    Mr. Abrams' motion for reconsideration is       80    18

4    denied

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T I O N

2

3      I, Michael Drake, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5

6

7

8      _____

9      /s/ MICHAEL DRAKE, CER-513, CET-513

10

11     eScribers

12     7227 N. 16th Street, Suite #207

13     Phoenix, AZ 85020

14

15     Date:  February 12, 2020

16

17

18

19

20

21

22

23

24

25

# A

**AB (1)**
57:7
**abandoned (1)**
53:8
**abide (1)**
100:21
**ability (3)**
14:17,20;37:6
**able (12)**
10:9;18:16;20:6;
47:25;55:16,17,23;
57:16;69:11;76:4;93:6;
100:23
**Abrams (135)**
41:3,6,7,10,25;42:7,
12,14,16,23,25;43:7;
44:1,5,19,21,23;45:4,7,
10,14,16,17,23,25;
46:2,11,19,23;47:1,8,
14;48:10,12,15,18,21;
49:4,13,15,23;50:7,13,
16,19;51:4,6,7,8,9,9,
13;52:1,4,6,8,14,15,18,
21;53:5,7,14,17,20,21,
22;54:1,3,6,12,18,23,
25;55:4,7,13;56:1,5,10,
21;57:18;58:2;59:10;
62:8;63:20;65:24;
66:14;69:10,16,22;
70:6,9;71:18;72:2,12,
15,22;73:1,9,11,19,21,
22;74:8,25;75:11,19;
76:2,12,14,17,20,25;
77:6,9,13,16,19,21;
78:4,8,13,15,18,19;
79:20;80:2,9,25;81:3;
84:14;87:17;91:20;
92:13
**Abrams' (3)**
43:13;62:24;65:6
**Absolutely (11)**
11:10;50:9,16;51:13;
66:14;72:22;73:1;
74:25;114:20;117:7;
122:15
**abuse (1)**
30:12
**accept (5)**
63:6,10;64:3;70:24;
115:6
**acceptable (1)**
97:14
**accepted (1)**
51:22
**accommodate (3)**
39:18;94:18;98:4
**accomplish (1)**
68:12
**according (1)**
91:8

**account (1)**
69:24
**accurately (1)**
33:16
**achieve (2)**
5:8;59:23
**across (4)**
31:14;42:1;96:2,4
**acting (1)**
49:10
**action (1)**
37:19
**actions (2)**
16:5;20:19
**actively (3)**
62:19,19,20
**actual (3)**
61:15;103:25;111:7
**actually (11)**
4:19;44:16;60:15;
65:16;78:16;86:20;
94:14;99:7;100:9;
102:16;111:6
**ad (1)**
89:23
**add (7)**
9:18;74:9,10;82:8;
87:23;92:11,17
**addition (1)**
69:5
**additional (2)**
90:9;91:18
**address (7)**
12:2;30:19;36:14;
62:24;108:13;109:18;
112:1
**addressed (1)**
56:14
**adequate (6)**
68:11;69:9,13;
111:18;113:3;115:16
**adhere (1)**
22:13
**adjudicate (1)**
23:6
**administer (1)**
112:1
**administered (1)**
112:20
**admitted (1)**
29:16
**adopts (1)**
40:21
**ads (3)**
64:20,21,21
**advance (1)**
118:21
**advantage (1)**
12:12
**Adventist (1)**
120:11
**advice (1)**
62:14

**advise (1)**
101:12
**advised (1)**
50:3
**advising (1)**
64:3
**advisors (2)**
66:13;101:1
**advocacy (2)**
116:21;117:16
**advocate (1)**
116:20
**advocates (1)**
67:17
**advocating (1)**
70:15
**affirmative (1)**
16:14
**afraid (2)**
94:12,14
**afternoon (4)**
96:7;120:9,10;
124:11
**afterward (1)**
39:16
**again (29)**
13:5;41:8;42:2;
44:17;46:15;50:20,23;
64:23;80:14;81:1;
84:21;87:15,24;89:5;
91:20;92:1;98:4,23;
105:20;106:6,22;
107:18,22;117:23;
118:9;119:1;121:14;
124:4;125:5
**against (11)**
10:12;21:3,18;24:23;
41:3;53:9;58:9;67:13;
76:5,6;106:22
**Agarwal (1)**
12:5
**agencies (9)**
74:10;102:12;
105:13,13;106:17;
108:4;118:14,16;120:1
**agency's (1)**
93:16
**aggregate (1)**
63:8
**ago (4)**
4:15;5:3;27:2;
123:16
**agree (18)**
9:1,2,12;33:4;58:6,6,
11,16;62:9,21;67:8;
75:15;105:16;106:3;
111:14,16;115:2,2
**agreed (2)**
39:12;117:18
**agreeing (1)**
11:22
**agreement (19)**
5:18,18;47:16;49:19;

52:13;53:2;54:19;57:8,
25;63:13;67:5;91:10;
107:10;110:9,21;
111:3,6;120:16;123:16
**agreements (2)**
80:20;122:24
**ahead (4)**
31:10;35:1;100:12;
106:20
**albeit (1)**
32:17
**aligned (2)**
72:23;107:24
**alive (3)**
16:21;123:5,6
**alleging (1)**
20:25;23:12
**allocation (1)**
59:20
**allow (3)**
24:20;54:19,19
**allowance (2)**
93:22;108:18
**allowed (6)**
22:6;24:25;61:14;
71:17;105:17;113:21
**allowing (2)**
24:17;32:12
**allows (1)**
14:22
**alluded (1)**
84:10
**alluding (1)**
31:25
**almost (4)**
64:10;77:2;85:4;
123:20
**alone (1)**
112:6
**along (6)**
15:1;41:19;47:10;
60:18;86:10;119:25
**alternative (1)**
79:8
**although (3)**
60:23,24;86:20
**always (1)**
120:12
**ambiguity (1)**
82:1
**amenable (1)**
108:3
**amend (2)**
117:20;121:21
**amended (6)**
70:24;87:23;95:3,16;
98:16;118:6
**amendment (1)**
29:21
**among (3)**
56:17;57:5;85:8
**amount (6)**
60:1;68:11;98:11;

105:5,18;108:18
**analogies (1)**
124:4
**analogy (1)**
47:14
**analysis (1)**
13:3
**analytically (1)**
6:5
**analyze (1)**
19:5
**analyzed (1)**
27:17
**analyzing (1)**
31:22
**and/or (1)**
102:23
**announced (2)**
60:1,15
**answered (1)**
80:1
**anticipate (5)**
93:15;96:22;97:11,
24;99:1
**anticipates (1)**
98:24
**anticipating (2)**
96:14;105:20
**anymore (8)**
7:16;9:15;11:23;
25:25;28:7;32:22,25;
34:9
**apart (1)**
57:13
**apologize (2)**
103:15;110:20
**apology (3)**
64:21,21;89:15
**appear (1)**
41:1
**appearance (3)**
20:9;59:1;101:23
**appears (1)**
80:3
**applicable (1)**
63:8
**apply (1)**
29:4
**Appreciate (12)**
40:24;44:5;59:14;
65:10;69:18;73:7;
78:22;90:10;106:13;
116:21;118:14;120:12
**appreciated (1)**
66:24
**appreciates (1)**
116:23
**approach (1)**
5:23
**approached (1)**
103:3
**approaching (1)**
23:16

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 128
of 146

**appropriate (6)**
14:1;35:15;36:14;
84:3;87:14;119:3
**appropriateness (1)**
13:2
**approval (1)**
82:11
**approve (3)**
46:12;58:7;62:9;
79:22;104:3
**approved (4)**
49:16;56:16;58:15;
71:3
**approves (1)**
114:17
**April (1)**
94:16
**area (1)**
72:21
**argue (6)**
10:8;41:2;44:23,24;
58:8;79:17
**argues (1)**
32:23
**arguing (2)**
76:5,6
**argument (14)**
9:14;19:6;21:4;
25:14;27:6,8,13,19;
35:17,18;42:11;44:3;
51:23;103:2
**arguments (1)**
10:25
**around (7)**
13:17,18;40:5;50:10;
65:21;75:4;85:15
**arrangement (1)**
57:13
**array (1)**
71:11
**aside (1)**
16:4;68:5;97:16
**aspect (5)**
20:16;21:21;31:23;
96:2;98:13
**aspects (3)**
20:18;47:25;113:16
**assert (2)**
15:2;113:25
**asserted (1)**
25:18
**assertion (1)**
67:8
**assess (1)**
100:23
**assigned (1)**
62:11
**associated (2)**
17:4;36:20
**association (1)**
12:20
**assume (4)**
24:13;67:18,18;98:8

**assumes (1)**
8:7
**assuming (1)**
74:17
**assumption (3)**
9:9;50:13;99:20
**assumptions (1)**
101:15
**assure (1)**
41:11
**assured (1)**
86:13
**attempt (5)**
6:25;32:17;74:18;
79:12;90:23
**attempted (1)**
69:17
**attempting (1)**
6:20
**attention (2)**
24:10;85:10
**attorney (7)**
28:15,16,22;47:18,
19;70:21;72:6
**attorney-client (1)**
51:12
**attorneys (6)**
44:8;47:24;49:19;
52:9;56:18;70:11
**attract (1)**
85:9
**attractions (2)**
91:21;92:14
**authorities (1)**
102:25
**authority (4)**
30:14,23;103:6;
114:7
**availability (1)**
95:18
**available (2)**
87:19;97:4
**avoid (2)**
41:21;93:24
**aware (15)**
13:3;42:10,12,20,21;
43:8;61:5;63:21;67:3,
6;68:14,15,24;97:2;
118:2
**away (11)**
14:5,16,19;27:22;
46:11;53:1,17;61:7;
87:8;94:16;106:18
**awful (2)**
90:4;118:1

**B**

**Baby (1)**
79:5
**back (35)**
5:12;11:9,14;15:16;
17:18;19:12;20:7;

22:20,24;24:19,21;
26:24;31:15;32:21;
51:20,23;52:9;56:4;
57:3,9,13;59:6;72:9;
75:22,23,23;80:2;82:6;
94:6;105:6;106:5;
108:15;110:9;111:9;
121:14
**background (3)**
6:14;43:25;47:6
**backup (1)**
47:5
**bad (7)**
12:12,16,17,24;
13:11;34:25;64:10
**Baker (1)**
60:25
**balance (1)**
79:24
**bankruptcy (45)**
4:17;5:1;7:11;10:12;
12:13;14:21,23;18:14,
15,21,22,24;19:11;
23:23;24:16;25:11;
26:25;27:24;30:9;31:1,
3;33:12,15,16;34:12;
35:1;50:18;59:19,22;
60:22;61:3;64:5;65:20;
66:2;69:8,18;70:2;
72:14;74:2,3,15;75:2,
14;78:6;108:17
**banks (1)**
95:15
**bar (4)**
60:2,23;64:11,17
**barn (1)**
24:5
**Barton (1)**
64:16
**based (2)**
16:15;116:1
**basically (2)**
32:13;39:11
**basis (3)**
35:25;70:2;104:16
**bat (1)**
4:7
**battle (1)**
93:24
**Bay (1)**
8:11
**bear (1)**
83:2
**beat (1)**
65:18
**become (1)**
106:1
**beginning (1)**
31:18
**behalf (9)**
5:9;19:21;54:14;
66:21;67:17;69:1;
102:11;120:11;124:13

**belie (1)**
4:19
**believes (3)**
67:23;68:10;106:24
**belong (1)**
119:11
**beneath (1)**
104:22
**benefit (7)**
13:1;50:15;55:18,18,
19;78:16;84:11
**Bennett (1)**
60:16
**Benvenutti (91)**
4:7,9,11,18,22,25;
5:6,9,9;6:16;7:2,4,9,14,
17,19,22;8:2,13,15,19,
22;9:2,4,8,16,21;10:6,
9,19,21,24;11:2,10,12,
16,18;12:2,5,9,23;
13:21,25;14:6,10,13,
16,25;15:4,18,24;16:8,
12;17:2,23,25;18:3,6;
20:22,22;17:25:14,25;
27:13;31:12;32:23;
33:10;34:17;35:22,23;
36:4,6,10,19;37:4,8,18;
38:4,13,17,20,23;39:5,
13,15,20,22,25;40:6,
13,17,19
**Benvenutti's (1)**
20:13
**Berestka (54)**
18:9,11,18;19:3,14,
16,20,24;20:8,9,16;
21:6,8,15,19,23;22:2,
11,15,18;23:4,9,11,15,
18;24:1,3,18;25:2,5,17,
21;26:15,20;27:10,20;
28:1,6,8,12,14,18,22;
30:17,25;31:13;32:9,
12,19;33:1,4,7;34:1,6
**Berkeley (1)**
8:10
**Bernie (1)**
124:5
**best (19)**
29:6;33:10;50:9,11;
55:20,21;62:18;65:8,
25;67:22,24;68:11;
70:11,16;71:1,12;
72:24;112:25;115:4
**bet (1)**
73:25
**better (13)**
32:22;33:2;40:10;
47:23;54:15;55:15;
56:1;62:18;63:4;69:23;
73:15;80:7;99:25
**big (4)**
24:22;91:11,16;
92:10
**bit (7)**

41:20;88:11;93:13;
98:4;116:20;120:23;
124:15
**blank (1)**
86:22
**blind (1)**
65:1
**board (3)**
51:24;96:3,4
**Bob (1)**
74:23
**body (1)**
74:11
**bogged (1)**
122:21
**bold (3)**
49:1;83:9;87:23
**bondholder (1)**
68:2
**bondholders (4)**
41:17;53:8;55:23;
61:20
**bondholders' (1)**
51:22
**bonds (1)**
74:6
**bonuses (1)**
64:22
**book (4)**
77:10,11,15;79:13
**books (3)**
76:23,24;77:1
**both (12)**
5:21;11:7;23:13;
30:25;40:23;68:10;
86:12,13;89:15;
103:10;111:5;117:10
**bottom (1)**
102:19
**bought (2)**
14:21;55:24
**Bray (18)**
99:6,7,10,13,16,16,
23;100:3,5,15,18,21;
101:6,8,10,15,19,21
**breach (8)**
6:11;16:20,21;20:14,
17;25:1,21;31:25
**breached (6)**
16:20,21;24:14,17,
21;27:9
**break (1)**
5:12,15;17:17;102:4
**brief (2)**
56:13;119:14
**briefed (1)**
114:1
**briefing (3)**
94:2;109:20;124:22
**briefly (1)**
116:11
**briefs (2)**
80:5;106:9

Min-U-Script®

Case: 19-30088    Doc# 5740    eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 129
of 146

(2) appropriate - briefs

**bring (2)**
24:5;27:14
**bringing (2)**
13:1;15:1,7
**brings (1)**
33:12
**broad (1)**
71:11
**brothers (1)**
61:2
**brought (3)**
12:11;77:21;101:11
**Bruno (1)**
64:20
**build (3)**
62:18;64:18;65:8
**bullet (4)**
102:25;103:6;
104:16;106:9
**burden (5)**
15:14;17:3,4;36:20;
78:25
**burdensome (4)**
8:5;10:15;35:4,8
**burdensomeness (1)**
35:12
**burned (2)**
64:23;77:25
**business (6)**
12:15;13:2;15:8;
33:13;100:24;101:2
**Buttigieg (1)**
124:6
**buy (1)**
27:8

## C

**cake (1)**
64:9
**Cal (2)**
42:24;93:16
**calendar (6)**
88:23;101:25;102:1,
4;113:10,24
**CALIFORNIA (6)**
4:1;53:12;55:20;
74:1;118:14;124:13
**Call (11)**
4:3;19:12;51:2;
62:22;71:13,23;72:4,5,
6,9;75:24
**called (8)**
50:18;74:15;75:4;
84:14;90:14;97:22;
104:12;121:4
**calls (2)**
73:8,11
**came (1)**
53:14
**can (71)**
5:7,12,15,19;6:16;
8:21;9:13;10:7;14:4;

16:11,13;21:3;23:6;
24:5;25:11;27:9;29:5,
19;30:19;32:1;34:10,
10,18;35:18;47:6;
51:14;57:18;58:12,13,
13;59:21;63:9;66:7,14;
67:18;71:19;76:4;
77:14,19;79:17;80:15;
82:23;86:25;87:18,25;
88:13,15,16;89:6;90:9;
92:13;94:6,7;97:13;
98:6;102:1;106:25;
112:11,16,25;114:4,5,
8;115:10;116:24;
117:12,13;118:5,8;
119:10;123:20
**cancelling (1)**
94:16
**candidates (1)**
47:16
**candidate's (1)**
47:6
**care (4)**
40:20;58:24;93:11;
118:7
**carefully (1)**
74:19
**carried (1)**
78:24
**case (41)**
9:8;12:5,7,13,25;
13:6,7;15:13;16:12;
20:7,22;21:1,16;24:24;
27:1;30:18,20,25;
35:13,19;44:3;45:11;
46:4;47:15;50:9;59:17;
61:18;62:16;65:4;66:4;
68:5,9,25;70:4,11;
92:12;99:21;100:14,
19;105:10;106:7
**cases (6)**
56:20;57:6;100:14;
105:21;109:25;114:15
**cast (2)**
124:2,3
**caught (1)**
107:15
**cause (3)**
20:19;55:9;66:5
**caused (1)**
11:4
**Cecily (3)**
66:20;74:23;123:9
**cents (2)**
35:6,14
**certain (1)**
10:2
**certainly (13)**
4:25;6:18;12:23;
36:10;40:2,10;43:16;
44:6;69:24;88:11;
100:5;105:16;115:25
**certificate (1)**

55:11
**cetera (2)**
5:20,20
**chair (1)**
58:19
**challenging (1)**
51:21
**chambers (4)**
91:2;92:18,20,24
**chance (1)**
103:16
**change (7)**
29:8;47:24;80:3;
87:1;102:5;111:11;
113:7
**changed (2)**
41:20;95:8
**changes (2)**
90:9;117:18
**changing (4)**
52:9;77:22;78:9;
95:14
**channeled (3)**
105:4,14;111:21
**chaos (1)**
87:22
**Chapter (3)**
101:25;102:1,4
**characterizations (1)**
6:17
**chart (1)**
36:25
**check (2)**
55:11,12
**checklist (2)**
91:21;92:14
**children (1)**
42:3
**choice (7)**
27:3;33:3,23;57:3;
61:12;89:16;124:9
**choices (1)**
35:1
**choose (8)**
5:16;46:17;105:9,19,
22,23;106:17,18
**chooses (5)**
85:11;105:24;
106:17;122:19;124:3
**chop (1)**
99:24
**circles (1)**
40:5
**Circuit (1)**
12:16
**circumstances (3)**
62:11;67:21;68:12
**citation (1)**
103:6
**cite (1)**
30:20
**citizen (1)**
79:17

**City (1)**
26:6
**Civil (1)**
102:11
**claim (38)**
6:21;16:19,20,22,24;
20:17,24;21:21;22:7,
21;23:3,6,7;24:6;25:4,
8,16,17;42:22,24;
83:10,12,13;86:11;
90:1,2,3;105:17;
107:10;110:1;113:19,
25;116:11;120:17;
121:4;124:24,25;125:2
**claimant (4)**
69:8;70:22;79:17;
89:11
**claimants (21)**
44:25;46:4;50:23,25;
53:12,22;55:19;57:7;
62:10;66:21;67:8;
70:16;73:13;76:7;
83:23;84:9,11;85:9;
111:20;113:18;120:12
**claimants' (1)**
62:12
**claims (40)**
9:25;12:18,20,23;
15:10;31:17,20,20;
32:2;34:3;56:20;60:5,
6,10;61:4;62:23;68:14;
83:6,24;93:16;109:17;
110:10,13,17,22;111:3,
7,22;112:1;113:20,20,
22;117:9;118:19;
119:6,7;123:17;
124:16,19;125:6
**clarification (2)**
108:14,21
**clarifications (1)**
118:15
**clarifies (1)**
90:6
**class (3)**
108:18;109:2;119:7
**classes (1)**
109:11
**classification (7)**
94:2;108:14;109:17;
118:16;119:15;124:16,
19
**clear (9)**
16:16;40:7;48:8;
58:10;70:10;94:10;
103:3;120:15;123:14
**clearer (1)**
40:20
**clearly (2)**
36:22;40:14
**CLERK (5)**
4:6;90:16,17,22,23
**clerk's (1)**
90:24,25

**client (22)**
6:9;18:15,16,23;
19:11;20:3,4,24;21:3;
24:23;27:1;28:20;
31:23;32:13;63:1;
67:12;88:6;105:12,23;
122:18,19;124:2
**clients (15)**
11:14;19:22;22:22;
26:5;10;44:15;50:10;
63:4,9;64:3;66:1,9;
67:19,22;70:15
**client's (2)**
9:18;22:21
**close (2)**
31:12;94:3
**closely (2)**
64:13;67:15
**closer (1)**
35:22
**closing (1)**
70:6
**clue (1)**
122:2
**coalescing (1)**
75:4
**co-counsel (1)**
15:17
**Code (2)**
18:24;70:2
**cold (1)**
99:10
**collaborating (1)**
62:17
**collaboration (1)**
60:24
**colleague (1)**
14:20;28:13
**colleagues (2)**
36:8;89:10
**collective (1)**
53:3
**collectively (2)**
62:11;67:7
**colloquy (3)**
110:11;111:9;116:17
**comfortable (2)**
89:6,8
**coming (8)**
69:20;75:5;91:21;
92:14;94:21;95:17;
120:12;123:14
**comma (1)**
66:7
**commas (1)**
70:13
**commencement (2)**
33:17;113:12
**comment (3)**
26:24;82:7;109:24
**comments (5)**
6:4;65:11;69:12;
70:7;78:23;90:15,24;
**(3) bring - comments**

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 130
of 146

99:17
**commercial (1)**
87:8
**Commission (5)**
43:10;124:13,18,24;
125:1
**commit (2)**
114:10;115:8
**commitment (1)**
114:5
**committed (1)**
65:5
**committee (10)**
46:7;50:4;66:21;
83:23;84:9,22;99:17,
20,20;116:6
**common (3)**
5:17;9:20;32:15
**communicate (5)**
58:13;67:20;69:22;
71:25;113:13
**communicated (1)**
69:16
**communication (3)**
68:22;69:8,24
**community (5)**
60:22;61:1;62:14;
64:18,19
**companies (2)**
61:21;74:11
**company (11)**
4:16;6:9;17:1;27:1;
41:1;61:9;65:2;74:7;
77:25;78:6;79:23
**compared (1)**
98:5
**Compass (1)**
60:25
**compatible (1)**
121:5
**competent (1)**
115:25
**competition (1)**
12:21
**complaining (2)**
46:20;47:10
**complaint (2)**
15:16;16:10
**complaints (1)**
75:17
**complete (1)**
37:3
**completed (1)**
81:13
**completely (2)**
100:8;106:12
**completion (1)**
36:22
**complex (7)**
46:21;50:17;74:12;
75:9;79:14;80:11;
115:6
**complexities (2)**

45:20;74:5
**complexity (1)**
79:15
**complicated (7)**
39:2;44:20,22,24;
51:17;77:2;93:5
**comply (1)**
63:7
**comports (1)**
49:20
**compromise (2)**
39:9;54:2
**compromised (4)**
48:3;54:3;65:2;
70:20
**concede (1)**
114:14
**concept (1)**
123:4
**concern (8)**
37:21;42:3,3;43:14;
62:25,25;65:6;70:12
**concerned (7)**
38:17;42:5;44:12;
47:20,20;99:19;122:5
**concerns (12)**
36:15;43:13,22;
68:14,15;69:21;70:18;
75:6;81:5,9;109:15;
121:12
**concession (1)**
116:12
**concise (3)**
48:10;102:25;104:16
**concluded (2)**
37:11;125:18
**conclusion (4)**
9:9;30:24;40:7,15
**concur (1)**
67:16
**concurrent (1)**
113:11
**conduct (1)**
6:6
**confer (10)**
98:18;106:15;107:5,
8,12,16;108:1,3;
116:11;119:22
**confirmable (1)**
100:16
**confirmation (8)**
82:10;100:10;101:4;
114:13,18,23;123:22,
24
**confirmed (1)**
58:3
**confronted (2)**
27:3;39:6
**confused (2)**
41:20;96:19
**confusing (3)**
73:17;83:8,15
**confusion (5)**

82:19;83:1;85:21;
86:5,23
**Congress (1)**
46:22
**conjunction (1)**
108:6
**connection (1)**
59:18
**cons (1)**
55:17
**consensual (1)**
57:12
**consensually (1)**
6:8
**consent (1)**
63:9
**consenting (3)**
86:10;89:11;116:11
**consequence (1)**
68:1
**consider (6)**
44:6;79:3,4;82:4;
119:1,1
**consideration (1)**
68:11
**consistent (2)**
14:2;113:11
**constituents (1)**
113:16
**construction (2)**
21:2;22:5
**constructive (1)**
52:3
**consult (3)**
70:14;94:1;97:18
**consulting (2)**
50:10;94:1
**contact (1)**
6:11
**contacts (1)**
29:5
**contains (1)**
69:13
**contemplate (2)**
47:13;113:4
**contemplated (1)**
112:19
**contemplation (1)**
112:24
**content (1)**
69:12
**context (3)**
13:6;31:2;103:8
**continue (5)**
69:5,21;80:22;123:3,
21
**continues (1)**
86:10
**contract (119)**
6:6,10,20,21,24;7:6,
16;8:4,17;9:9,11,15,19,
25;10:8,15;11:5,23,24;
14:18,21,24;15:2,8,10,

11,20;16:15,19,20,21,
23;17:10,18;18:3,6,8,
16,17,24;19:6,8,13;
20:5,13,14,17,17;22:6,
8,13,20;23:2,17,19,21,
24;24:6,12,13,14,21;
25:17,22,25;26:1,3,6,
14,16,19,21;27:4,6,10,
11,15,19,24;28:3,5,7,
25;29:21;30:7,8,11,15,
22;31:4,15,17,19,23;
32:1,10,14,16,25;
33:14,17,18,19,22,22;
34:4,8,13;35:16,25;
36:13,21;39:3,10,10;
40:10,14,21,22
**contractor (2)**
9:10;29:5
**contracts (2)**
6:4;20:1
**contractual (1)**
27:9
**contrary (1)**
45:20
**contribute (1)**
38:1
**control (2)**
5:21;64:8
**controlling (1)**
107:17
**convince (3)**
22:12;34:11,11
**convinced (1)**
26:24
**cooperate (1)**
19:1
**cooperatively (1)**
123:3
**coordinate (1)**
59:21
**copy (1)**
77:14
**core (3)**
68:8;90:13,14
**corporate (1)**
74:13
**Corporation (1)**
4:6
**correctly (3)**
5:12;96:1;112:22
**cost (1)**
35:10
**costs (2)**
21:2;22:5
**counsel (12)**
9:23;35:3;50:2,5;
56:8,9;62:12;93:20,21;
94:19;98:24;99:16
**counseled (1)**
50:3
**counsel's (1)**
31:25
**count (2)**

71:19;74:11
**counterparty (4)**
16:23;25:4,7,7
**countless (2)**
71:19,19
**country (1)**
72:25
**couple (10)**
49:24;68:22;81:9;
82:1;91:7;92:12;94:5;
99:8;102:13;113:15
**course (7)**
6:6;9:17;12:8;33:16;
52:24;79:22;122:25
**Court (597)**
4:3,4,7,10,12,21,24;
5:2,3,11;7:1,3,8,11,16,
18,20,25;8:1,7,14,18,
20;9:1,3,7,12,14,17,22,
24;10:5,7,14,18,20,22,
25;11:7,11,13,17,19,
25;12:4,6,8,13,13,22;
13:3,5,22,24;14:4,5,7,
12,14,19,23,23;15:3,7,
13,15,19;16:1,5,9,25;
17:9,13,24;18:2,5,9,12,
20;19:5,15,18,23,25;
20:10;21:4,7,12,17,20,
22;22:1,10,12,17,19,
23,24;23:1,5,6,6,10,12,
13,16,19,22,23;23:3,
24:2,2,4,8,13,16,20,21,
25;25:3,6,13,18,20,22,
24;26:17,22;27:2,12,
21,22,24;28:2,4,7,10,
13,16,20,25;29:2,8,11,
13,18,20,25;30:2,5,7,
14,17,20,22;31:2,3,5,
16;32:4,11,14,20;33:2,
6,9;34:5,7,10,20,22,25;
35:7,17,22,24;36:3,5,5,
7,16,24;37:6,17,23;
38:3,5,11,16,18,21;
39:4,12,14,19,21,24;
40:4,8,9,12,14,18,21,
23;41:5,11;42:1,8,13,
15,17,24;43:1,8;44:2,7,
17,20,22;45:3,5,8,13,
15,17,24;46:1,6,20;
47:2,9;48:9,11,13,16,
20,25;49:6,14,23;
50:12,14,17,20,25;
51:3,5,7,9,11,14;52:2,
5,7,11,15,19,22;53:1,6,
13,14,16,19,21,24;
54:2,5,8,13,22;55:1,1,
5,8,25;56:2,6,16,23;
57:2,15,22;58:4,6,12,
17,19,22,24;59:3,5,8,
13,19,21;60:3,6,8,11,
13,22;61:5,11,12,23;
62:1,5;63:11,15,17,19,
23,25;64:5,9;65:10,18,

Min-U-Script®

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 131
of 146

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) commercial - Court

21;66:15,16,18,22,25;
67:3,6,11;68:6,18,20,
24,25;69:6,15,19,21;
70:5;71:17,20;72:1,12,
16,23;73:2,10,12,20,
22;74:9;75:1,12,20;
76:11,13,15,18,22;
77:1,8,12,14,17,20;
78:2,5,12,14,17,19;
79:21;80:10;81:1,4,14,
16,18,21,25;82:4,16,
23;83:19,21;84:1,5,14,
17,20,24;85:1,4,17,19,
24;86:3,12;87:4,7,11,
13;88:4,7,10,21,25;
89:3,5,13,15,19,23;
90:6,8,17,17,18,22,23;
91:7,14,18;92:3,9,16,
19,22,24;93:3,5,10,12,
18;94:4,7,13,15,24;
95:1,4,10,12,20,21,25;
96:5,6,9,13,18,24,25;
97:1,2,4,7,16,20;98:1,
8,17,23,24;99:4,9,12,
15,18,22;100:1,4,13,
16,19,22;101:4,7,9,12,
14,17,20,22;102:7,10,
17,20;103:5,7,12,17,
20,23;104:3,5,9,14,21;
105:2,6,16;106:3,14;
107:3,6,12,18,23;
108:8,10,23,25;109:7,
11,11,21,24;110:7;
111:1,13,15;112:2,7,
11,13,22,25;113:5,9,
19,23;114:4,9,10,12,
17,21,25;115:2,13,15,
18;116:2,9,15,19,22,
24;117:3,6,8,12,16,23;
118:9,15,16,18,20,23,
25;119:9,13,15,18,20,
24;120:4,6,14,19,22;
121:2,10,14,17,21,24;
122:10,12,16,25;123:6,
8,10,12,23;124:1,14,
17,20,24;125:3,5,8,11,
13
**courtesy (1)**
80:24
**courtroom (6)**
44:10;49:17,18,19;
72:11;94:15
**courts' (1)**
30:9
**Court's (10)**
17:6;18:8;23:20;
36:13,15;37:21;45:3,5,
21;89:9
**covenant (1)**
34:2
**covenants (3)**
19:22;20:1;27:8
**crazy (2)**

27:19;34:12
**create (3)**
24:4;32:18;87:22
**created (1)**
39:7
**creates (1)**
82:1
**credibility (2)**
64:19;69:15
**credit (1)**
52:23
**creditor (3)**
105:3;108:16;111:6
**creditors (4)**
35:5,14;109:12;
119:12
**critical (3)**
59:13;98:2,5
**criticism (3)**
10:22;41:22,22
**criticisms (1)**
75:16
**cross (1)**
76:3
**cross- (1)**
120:23
**cross-complaint (3)**
9:25;11:4;40:22
**cross-examine (1)**
96:12
**cross-examining (1)**
96:23
**crumbling (1)**
15:22
**culmination (1)**
62:3
**current (3)**
95:5;110:23;112:24
**currently (3)**
112:19;113:4;122:4
**cut (2)**
41:21;93:13
**cutting (1)**
32:13
**cycle (1)**
94:8

**D**

**damage (6)**
6:21;16:19,19,22;
25:7,16
**damaged (1)**
23:13
**damages (15)**
20:24,25;21:1;22:21,
23;23:3,7,8,11,18,25;
24:7,23;25:4;36:18
**dare (1)**
19:12
**date (26)**
10:11;23:20;60:2,23;
64:12,17;82:9;87:4,20,

23;88:10,14,14,17;
91:22,24;95:19;112:9;
113:7,11;114:8;115:8;
116:22,24,25;117:15
**dates (4)**
92:3,4,11,17
**dawned (1)**
4:13
**day (14)**
37:22;57:14;60:1;
64:11;79:16;81:18;
83:4;88:23;92:25;
97:10;113:10;114:17;
121:8;124:8
**days (6)**
88:20;94:1,5;115:5,
5,23
**deadline (12)**
83:5;86:17;91:9,23;
98:15;108:15,16,22;
110:3;111:2;121:18,25
**deadlines (2)**
86:15;119:23
**deafening (1)**
99:1
**deal (7)**
14:4;44:15;57:19,20;
58:1,14;62:19,20;
91:12,16;92:10
**dealing (8)**
20:18;33:16;34:3,25;
55:1;91:3;106:11;
115:6
**dealt (1)**
43:6
**debate (1)**
44:4
**debt (4)**
95:7,13,19;97:22
**debtor (16)**
12:15,19;25:11;
59:22;60:25;61:21;
62:21;71:3;86:6;96:21;
104:2;108:7,21;120:1;
121:9;124:19
**debtors (11)**
6:9;24:25;25:11;
26:6;51:23;53:2;56:17;
67:5;104:24;107:24;
119:10
**debtors' (3)**
35:3;96:12;101:1
**decades (1)**
65:1
**December (1)**
60:19
**decide (3)**
31:21;34:10;100:11
**decided (7)**
5:24;27:2;57:25;
61:14;106:1;114:1;
124:4
**deciding (3)**

22:21;28:2,4
**decision (19)**
9:18;12:17;40:7;
46:14;51:18;57:21,25;
59:17;61:9;62:15;63:1;
64:14;105:11;106:16;
114:16;115:16,21,24;
116:1
**decisions (3)**
31:2,4;63:6
**declarant (2)**
96:16,23
**declaration (4)**
37:15;64:16;96:17,
22
**declarations (1)**
37:10
**declaratory (1)**
37:20
**declare (2)**
9:19;15:21
**dedication (1)**
73:5
**deemed (1)**
25:21
**defeat (2)**
21:21;32:2
**defeated (1)**
23:19
**defend (1)**
7:14
**defendants (1)**
20:9
**defense (7)**
7:13,14,15,20,22;
16:13;24:6
**defenses (2)**
15:2;21:15
**deferential (1)**
13:4
**defines (1)**
111:24
**defining (1)**
16:9
**definition (1)**
112:5
**degree (1)**
110:22
**delay (3)**
21:2;22:11;39:6
**delays (1)**
22:4
**deleterious (1)**
70:4
**demanding (1)**
59:12
**demolition (1)**
37:23
**demonstrates (2)**
37:15;78:13
**denied (2)**
15:10;26:18
**denies (1)**

40:21
**deny (11)**
16:5,6,8;17:7;27:5;
31:6;34:7;35:25;38:19;
80:18,18
**denying (5)**
32:23;34:14;40:8
**Department (1)**
102:9
**depend (1)**
93:23
**dependent (1)**
88:5
**deposition (2)**
96:25;97:13
**depositions (1)**
61:16
**deputy (1)**
94:15
**derail (2)**
100:8,10
**derailed (1)**
100:20
**describe (1)**
47:25
**designed (2)**
46:13,18
**desire (2)**
51:16;55:2
**desires (1)**
75:9
**despite (2)**
78:10;117:16
**detail (1)**
29:20
**detailed (1)**
46:21
**details (1)**
78:24
**determination (2)**
30:15;37:7
**determine (2)**
27:24;30:22;109:1,
11
**determined (2)**
14:23;40:9
**determines (2)**
23:21,23
**determining (1)**
111:18
**detriment (1)**
54:4
**detrimental (1)**
48:1
**developing (1)**
69:3
**devil (1)**
33:7,7
**devious (1)**
109:25
**diagram (1)**
36:25
**dialogue (1)**

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 132
of 146

124:21
**differ (1)**
72:13
**different (17)**
23:7;37:11;41:15;
47:25;54:22,23;62:7;
68:4;83:15;85:2;86:3,
13;108:18;109:19;
114:15,15;121:7
**differently (3)**
10:14;27:18;113:21
**difficult (4)**
48:23;50:17;64:7;
68:4
**dilemma (1)**
34:16
**direct (2)**
40:2;109:11
**directed (2)**
81:25;99:18
**direction (1)**
67:24
**directly (1)**
69:21
**disagree (1)**
106:10
**disagreeing (1)**
17:16
**disclosure (55)**
42:6;46:12;48:4;
58:4,7,16;66:7;69:7,
12;73:17;76:18,24;
77:4;79:22,24;81:5;
82:12;83:8;84:4;85:7,
11,12;86:21;88:12,12,
19;90:19;91:4,24;92:2;
100:2,6,11;102:21,23;
103:2,8,10;104:17;
106:5;107:15;108:1;
110:24,25;111:18,20;
113:3,12;114:16,18;
115:1,15,15,19;122:4
**disclosurer (2)**
107:25,25
**disclosures (1)**
106:9
**discovery (1)**
61:12
**discretion (2)**
30:12;70:25;71:4
**discussed (4)**
20:19;50:3;83:22;
121:13
**discusses (1)**
31:1
**discussing (1)**
20:20
**discussion (3)**
86:16;91:3;106:4
**discussions (3)**
95:15;105:12;119:3
**dismal (1)**
59:24

**dispute (4)**
4:14;7:5,9;26:23
**disputed (1)**
7:5
**disputes (1)**
16:18
**disregard (1)**
50:6
**disruptive (4)**
8:5,5,8;10:16
**disseminated (1)**
85:8
**dissolve (1)**
22:20
**distinguished (1)**
112:14
**distribute (1)**
71:2
**distribution (1)**
57:7
**district (1)**
53:1
**divide (1)**
5:20
**Division (1)**
102:11
**doable (1)**
5:22
**docket (4)**
45:9;51:1;85:12;
98:9
**doctor (2)**
12:19,20
**document (32)**
44:16,20,24;45:9;
46:22,22;49:1;62:24;
76:8;83:14;84:2,5,7,
23;85:3,24;86:9,23;
88:18;115:17,21,22,23;
116:1;117:2,20;121:5,
7,13;122:1;123:18,21
**documents (10)**
44:22;46:12;83:15;
86:4,13;87:7;111:12,
19;121:7;123:24
**dollar (3)**
35:6,15;105:5,17;
106:25
**dollars (2)**
22:4;74:4
**Donato (3)**
52:19;61:18;75:23
**done (13)**
27:17;39:8,16,23;
48:6;49:23;75:25;
81:23;86:20;90:11;
106:25;116:3;118:10
**door (1)**
13:8
**double-tracking (1)**
29:16
**down (14)**
5:12,15;6:10;13:15,

19,20;16:3;17:11;
46:16;51:19;64:23;
77:25;99:12;122:21
**draft (2)**
48:14;123:17
**drafting (1)**
83:24
**drawing (1)**
51:24
**driver (1)**
60:14
**due (3)**
7:6;52:24;79:21
**Dumas (68)**
51:10;58:19;64:10;
65:12,13;66:19,20,20,
24;67:1,7,14;68:8,19,
21;70:5;72:18;74:23;
80:22;86:1,2,5;88:6,13,
18;89:5,8,14,18;90:5;
99:4;107:11,13;108:3,
6;110:12,18;112:11,12,
18,24;113:8,9,13;
114:3,7,10;115:3,8,11;
116:2,6,10,17,21,23,
25;117:5,7,13,17,25;
123:9,9,10,11,13,25
**Dumas' (2)**
59:16;65:4
**dumb (1)**
13:11
**during (1)**
115:25
**duties (1)**
41:24

**E**

**earlier (10)**
37:24;81:8;114:5,6,
8;115:4,5,5,9;116:13
**early (5)**
87:24;98:3;100:17;
110:3;113:14
**earn (1)**
64:19
**easement (3)**
21:13;32:6,7
**East (1)**
8:11
**easy (2)**
51:16,17
**educating (1)**
46:9
**effect (6)**
36:1,3;57:22;70:4;
80:18;112:10
**effective (2)**
112:9;113:7
**efficient (1)**
98:1
**effort (4)**
36:10;46:9;67:3;

80:21
**efforts (4)**
37:15;78:10;115:4;
125:15
**eighteen (1)**
66:11
**eighty- (1)**
106:8
**either (6)**
27:1,5;33:8;75:3;
101:18;110:4
**electronic (1)**
95:21
**element (1)**
95:17
**elements (2)**
12:24;95:6
**eliminate (1)**
119:10
**Elizabeth (1)**
124:5
**else (19)**
13:13;15:11;18:9,22;
26:2;41:3;47:5;67:11;
74:16;86:21;94:19;
99:3;101:22;108:4;
117:3;122:14;123:3,8;
125:14
**elsewhere (1)**
36:1
**email (2)**
51:4;90:14
**emails (1)**
90:18
**empower (2)**
59:16;60:21
**empowered (1)**
63:5
**enclosed (1)**
83:10
**encompasses (1)**
103:10
**encouraged (1)**
79:9
**encroached (1)**
21:12
**encroaching (2)**
6:12;15:20
**encroachment (1)**
32:5
**end (9)**
5:4;8:3;10:10,14;
33:8;36:17;37:22;
79:16;81:13
**endeavor (2)**
113:13;114:11
**ended (1)**
5:17
**enforce (4)**
6:20,21;9:19;24:16
**enforceable (3)**
8:20;9:10,10
**engaged (1)**

103:18
**engaging (1)**
89:10
**engineers (1)**
29:6
**enough (4)**
8:9;41:9;43:20;93:7
**ensure (3)**
51:15;63:4;90:22
**entail (1)**
52:8
**entails (1)**
47:17
**entered (3)**
26:6;53:2;99:18
**entire (1)**
57:12
**entities (4)**
111:21;112:15;
113:14,18
**entitled (3)**
17:10,11;106:11
**entity (3)**
18:22;75:4;112:3
**equitable (2)**
20:22;21:25
**equity (5)**
95:7,8;96:10;98:2;
109:12
**era (1)**
62:16
**error (1)**
29:16
**especially (1)**
98:3
**essence (3)**
12:9,9,10
**essentially (3)**
6:9;12:17;16:14
**essentials (1)**
6:17
**establish (1)**
22:8
**established (3)**
111:25;112:9;119:23
**establishing (1)**
91:9;118:6
**estimate (3)**
35:10;41:8;93:15
**estimating (2)**
106:24;119:4
**estimation (5)**
59:19;61:11,17;
122:20;123:5
**estoppel (1)**
24:4
**et (2)**
5:20,20
**ethical (1)**
67:19
**even (25)**
6:7;12:18,18;14:21;
18:24;20:1;22:19;

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 133
of 146

25:25;33:14;34:1;
35:10;36:17;46:22;
47:13;49:14,17;70:21;
74:1,18;91:8;110:13,
24;113:18,24;118:21
**eventual (1)**
70:19
**Eventually (2)**
38:23,23
**everybody (6)**
8:10;54:17;115:7;
116:4,5;117:3
**everybody's (1)**
49:8
**everyone (7)**
4:4;55:18;70:19;
105:3;115:6;123:3;
125:17
**everyone's (1)**
52:25
**everything's (1)**
64:23
**evidence (7)**
19:20;35:9;40:2,3;
50:22;56:21;64:25
**evidentiary (2)**
30:12;102:2
**exactly (11)**
7:19;17:2;23:15,18;
57:4;84:12,16,17,19;
91:2;100:15
**examination (1)**
98:12
**example (2)**
100:24;111:24
**except (2)**
92:10;103:8
**exceptions (1)**
94:10
**excess (1)**
81:19
**exclusively (1)**
63:1
**excuse (2)**
5:18;80:18
**excused (2)**
6:24;7:15
**executive (3)**
77:7;84:15;86:7
**executory (7)**
8:17,23,24;18:17;
19:6;20:1;27:6
**exercise (1)**
64:2
**exercising (1)**
64:6
**exist (1)**
33:22
**existence (1)**
23:19
**existing (1)**
98:10
**exists (1)**

**74:15**
**expect (4)**
13:22;49:25;85:15;
124:2
**expected (1)**
45:19
**expedite (1)**
63:3
**experience (6)**
50:8;72:13,17,20;
105:21;106:5
**experienced (3)**
50:2,5;51:11
**expert (2)**
71:8,9
**expertise (2)**
50:15;71:11
**experts (1)**
71:9
**explain (5)**
46:13;47:21;69:18;
75:13;80:11
**explains (1)**
84:12
**express (1)**
57:16
**expressing (1)**
69:21
**extend (1)**
60:23
**extensively (1)**
46:8
**extent (2)**
63:19;109:16
**extraordinary (1)**
56:22
**extremely (2)**
69:14;70:3
**eye (2)**
40:10,12

**F**

**F2nd (1)**
31:1
**face (2)**
38:25;82:17
**faced (1)**
24:22
**facie (1)**
36:17
**fact (11)**
12:10;33:13;55:22,
23;67:1,2;68:23;79:9;
86:6;112:12;114:22
**fact-driven (1)**
13:6
**facts (12)**
17:14,15,20;26:4,23;
27:18;29:15;32:15;
35:4;49:21;64:25;65:3
**factually (1)**
18:22

**failed (1)**
6:25
**fails (1)**
13:9
**failure (2)**
11:23;26:3
**fair (2)**
20:18;34:2
**fairly (1)**
102:4
**fairness (1)**
106:4
**faith (8)**
12:12,16,17,24;
20:18;34:2,2,25;73:23
**fall (4)**
13:15;57:13;75:23;
82:17
**falls (1)**
13:20
**false (2)**
49:2,5
**familiar (1)**
41:18
**family (4)**
42:4;43:14;54:15;
55:10
**fantastic (1)**
60:24
**fashion (2)**
13:22;103:6
**fashioned (1)**
14:2
**fast (1)**
73:3
**fatally (1)**
101:9
**fate (2)**
17:16,21
**favor (3)**
48:2;100:7;106:21
**favorable (1)**
43:2
**favorably (1)**
55:10
**favorite (1)**
117:24
**feasibility (2)**
100:23;101:4
**feasible (1)**
40:1
**FEBRUARY (15)**
4:1;52:3;83:5,17;
85:2,16;86:17;88:13,
16,17;91:8;104:3;
107:7;110:14;120:20
**federal (5)**
22:24;95:21;102:12;
108:4;120:1
**feel (2)**
44:11;64:10
**feelings (1)**
64:17

**Felderstein (1)**
118:13
**fellow (3)**
42:20;43:19;74:17
**felt (1)**
67:21
**FEMA (8)**
42:21,22;43:17;
47:20;93:16;105:9,13;
106:17
**fences (2)**
15:22,22
**few (8)**
17:25;56:2;66:23;
81:4;88:20;94:1,9;
97:15,16,17;102:2;
123:16
**fiduciaries (2)**
56:18;57:5
**fifty (2)**
60:1;61:16
**fifty-foot (1)**
29:7
**fight (1)**
66:6
**fighting (3)**
21:10;62:17;66:12
**figure (3)**
36:8;51:19;124:6
**file (23)**
23:2;25:8;50:25;
61:4;83:25;88:18;
91:24;95:2,15,16,22;
98:13;104:2,24;
108:17;116:13;119:22;
121:19,19,19;122:6;
123:15;124:25
**filed (24)**
15:17;18:15,21,22;
19:11;24:9;37:19;
41:14,16;56:20;71:13;
72:4;84:8;85:8,13,14,
15;87:25;96:1;103:4;
110:17,24;120:17;
125:1
**filing (8)**
5:1;71:20;83:6;
108:22;111:2;114:6;
117:4,6
**filings (1)**
45:2
**final (10)**
91:10;105:11;
110:23;111:3;114:17;
115:17,21;123:19,19,
19
**finally (1)**
72:4
**finals (1)**
112:16
**financial (4)**
35:8;61:7;66:13;
101:1

**financing (4)**
74:7;94:25;95:6;
96:2;97:22;98:10
**find (4)**
44:25;45:1,4;113:18
**finding (1)**
22:23
**findings (2)**
22:2,25
**fine (15)**
6:19;36:2;46:10;
57:9;65:19;88:17;
98:16;102:6;104:19;
108:9,10;110:5,6;
117:22;125:9
**finish (1)**
31:9
**fire (62)**
42:19;46:16;51:11;
52:16,24;56:18,20;
57:7;59:11,16,18;
60:18,21,25;61:3,14;
62:14,23;63:1,3,9;
64:13,15;65:24;66:10;
67:17;69:15;70:22;
71:2;73:6,13;74:5;
75:23;83:6,10,10,12,
13;84:11;85:8;86:10;
89:11;90:1,2,3;105:4,
14;111:6,20,22,25;
112:1,3,5,8,14;113:22;
116:11;118:19;119:7;
120:17;121:4
**fires (4)**
4:14,16;26:25;43:15
**fire-type (1)**
72:24
**firm (3)**
63:7;69:1;72:19
**firms (2)**
67:5,21
**first (29)**
6:25;18:13;29:3,14;
33:3;35:3,24;41:6;
42:14;45:22;56:12;
58:23;59:10,21;73:24;
82:12,20;85:21;86:25;
89:16;100:19;101:18;
102:15;106:7;110:13;
111:5;112:17,18;
113:25
**first-year (1)**
11:8;18:13
**fit (2)**
90:10;122:14
**Fitzgerald (1)**
118:13
**fix (18)**
5:19,24;6:8,13;13:8;
19:19;20:3;26:6;32:18;
33:17;39:11,18;55:2;
81:10;82:16,17;90:5;
119:10

Min-U-Script®

Case: 19-30088   Doc# 5740   Filed: 02/12/20   Entered: 02/12/20 12:40:14   Page 134
of 146

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) eventual - fix

**fixed (1)**
82:18
**fliers (1)**
87:8
**flipping (1)**
19:4
**flooded (1)**
73:13
**fluid (1)**
122:12
**flyer (1)**
47:4
**flyers (1)**
89:24
**focus (2)**
5:11;11:5
**focused (2)**
56:10;70:13
**focusing (2)**
74:16;106:5
**folks (10)**
45:11,18;46:3,5;
48:23,23;54:6;55:21;
71:22;75:22
**follow (1)**
19:2
**followed (1)**
33:17
**following (3)**
47:14;90:9;92:12
**follow-up (1)**
97:20
**forced (1)**
68:15
**forces (1)**
42:18
**Forget (1)**
51:25
**form (5)**
33:12;68:11;91:10;
115:17;123:19
**former (1)**
11:13
**forms (2)**
110:23;111:3
**Forty (2)**
59:25;60:1
**forty-five (1)**
115:23
**forward (11)**
16:11;41:7;52:17;
54:21;55:8;57:6;95:8;
96:9;99:19;102:3;
125:16
**fought (1)**
93:24
**found (1)**
45:22
**four (6)**
4:20,22;43:13;59:18;
61:16;92:11
**fourth (1)**
71:14

**frame (1)**
107:8
**framed (1)**
103:9
**FRANCISCO (2)**
4:1;77:1
**Frank (1)**
75:2
**frankly (2)**
25:10,22
**fraud (1)**
36:12
**free (3)**
58:4,8;79:18
**freely (2)**
55:17;76:4
**frequently (2)**
43:9;69:3
**Friday (2)**
81:16;89:3
**front (4)**
9:14;58:19;61:15;
88:23
**frustrated (2)**
94:11,15
**Fulbright (1)**
120:11
**full (5)**
19:7;20:10;30:11;
31:7;34:9
**fundamental (2)**
27:23;57:10
**further (1)**
6:24
**future (9)**
7:10;8:25;9:5;20:1;
38:24;43:11,15,15,21

**G**

**gag (2)**
57:22,23
**game (1)**
46:7
**games (3)**
24:10;49:7;85:6
**Garber's (2)**
37:10,14
**Garrison (1)**
124:12
**gas (4)**
5:25;8:9;13:12;29:9
**gave (2)**
82:7;117:17
**Geico (2)**
87:7;89:23
**general (2)**
119:7,11
**generally (1)**
97:10
**gets (5)**
26:2;37:21;85:10;
119:13,15

**given (5)**
28:10;33:23;47:12,
13;81:8
**gives (1)**
31:23
**giving (2)**
65:25;66:5
**glad (2)**
44:11;63:19
**global (1)**
57:12
**goal (2)**
78:21;79:1
**God (1)**
61:10
**goes (17)**
9:9;13:7;20:22;
21:23;26:24;27:21;
39:16;40:4;42:4;46:22;
53:17;100:14;102:3;
105:6;106:5;110:9,21
**Good (35)**
4:4,5;7:20,22;10:25;
13:16,20;15:22,24;
20:18;34:2;38:11;43:2;
44:15;53:3,6;54:16;
55:9;57:19,19,20;58:1,
14;59:5;70:8,20;85:19;
96:7;102:8;117:21;
120:9,9,10;124:11;
125:13
**good-faith (1)**
56:16
**Gotcha (2)**
102:7;110:1
**gotchas (1)**
110:4
**Gotshal (1)**
63:14
**governance (2)**
43:21;62:18
**government (7)**
61:20;62:20;68:14;
105:21;113:14,17;
114:1
**governmental (6)**
74:9;111:21;112:3,
15;120:1;124:16
**government's (1)**
108:4
**governor (1)**
55:22
**governor's (6)**
43:10;75:24;96:1,5;
97:21;98:18
**grant (10)**
13:14;14:7;16:2,6,
11;25:10;27:3;31:7;
38:6;82:11
**granted (1)**
52:16
**granting (3)**
32:22;34:9;40:8

**Great (1)**
123:7
**greed (1)**
65:2
**Gregory (1)**
99:16
**group (6)**
54:8;56:8;64:6,7;
67:3;122:7
**groups (2)**
50:3;71:23
**Guess (8)**
11:14;24:22;80:4,6;
86:12;87:21;106:21;
121:18
**guest (1)**
90:14
**guy (3)**
32:8;87:8;89:24

**H**

**Hampshire (1)**
124:6
**hand (1)**
106:20
**handcuffs (1)**
67:9
**hands (4)**
30:3,10;55:3;64:15
**happen (15)**
8:9;14:8,10;19:18;
32:5;36:25;38:15;
51:22;52:2;59:25;
60:20;73:16;83:16;
85:7;87:16
**happened (10)**
6:2;26:12;37:14;
50:8;52:22;53:10;
59:24;60:17;61:18;
62:15
**happening (2)**
79:10;93:6
**happens (10)**
13:14,25;17:6;22:16;
25:10,15,15;37:21;
38:6,7
**happy (3)**
65:13;71:25;108:7
**hard (4)**
37:1;44:25;64:18;
97:23
**hate (3)**
106:6;117:23;124:4
**heads (2)**
97:10;104:21
**hear (8)**
56:6,7;63:20;89:9;
95:22;97:8;103:2;
106:25
**heard (21)**
28:17,24;29:1;31:10;
34:18;56:3,9;58:25;

63:20,20;75:1;76:22;
80:4,10;95:19;98:14;
99:5;101:22;104:23;
109:24;123:8
**hearing (26)**
46:3;77:4;82:10;
85:10,11;86:14;92:2,7;
93:14,15;96:14,15;
97:19;100:11;101:17;
102:3;104:7,24;110:2,
25;111:10;112:21;
115:15,20;122:6;
123:18
**hearings (2)**
113:15;120:12
**hears (1)**
113:19
**heart (2)**
100:14;109:10
**hedged (2)**
53:9,20
**help (3)**
47:21;112:11;114:16
**helped (1)**
43:23
**helpful (4)**
41:23;87:20;89:9;
106:8
**helpfully (1)**
123:13
**here's (3)**
9:21;41:9;62:6
**hey (2)**
30:4;47:19
**hidden (1)**
44:18
**hide (1)**
59:7
**hiding (2)**
44:15,18
**highly (4)**
13:3;46:21;72:20,21
**hindered (1)**
43:24
**Hinker (8)**
96:7,7,11,17,21;97:1,
13,23
**hire (1)**
29:5
**history (8)**
4:18,19,22;6:5;13:7;
28:11;32:15;74:13
**Holders (3)**
62:23;71:2;109:12
**holiday (2)**
95:20,22
**holy (1)**
77:2
**home (2)**
42:4;77:25
**honest (1)**
67:10
**Honor (135)**

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 135
of 146

4:5,9,18;5:6,10;7:23;
9:16,21;10:10;13:21;
14:25;16:12;18:11;
19:3;20:8;22:16;28:15;
31:1,13;34:2;35:21,23,
24;36:19;37:4;38:4,24;
39:13;40:6;41:25;
42:23,25;44:1,5;45:10,
25;46:19;47:14;48:15,
21;49:4,13,15,22;50:7;
52:21;53:5,7;55:4,13;
56:13;58:11,21;65:15,
23;66:20;68:16,23;
70:9,21;71:4,15;73:9;
75:19;76:2;77:6,19;
78:8;80:25;84:21;89:8;
92:1;95:5;96:11;97:1,
13,23;98:16;99:7,16;
100:3,18,21;101:21;
102:8,12,15;103:4,22;
104:1,6,24;105:12,15,
25;106:13;107:4,9,21;
108:6,9,11,19;110:6,8,
10,20,22;111:8,9,16,
17,19;112:6;113:2;
114:20;115:12,14;
116:10;118:12,14,22,
24;119:6,19;120:5,10;
121:16;122:3,15,23;
123:7,9,25;124:11

**Honor's (1)**
95:18
**hoops (1)**
72:8
**hope (3)**
77:6;80:21;81:10
**hopefully (3)**
79:12,25;117:2
**hoping (2)**
122:3;123:1
**horrible (1)**
4:14
**horse (1)**
24:5
**host (1)**
76:7
**hour (1)**
76:3
**hours (3)**
97:15,16,17
**huh (1)**
49:20
**hundred (6)**
16:24;35:5,6,14;
49:24;74:11
**hurry (1)**
118:10
**hypothetical (2)**
29:3;57:17

**I**

**idea (4)**

13:11;14:3;68:16;
109:4
**identified (1)**
86:23
**ignore (1)**
6:5
**imagine (2)**
37:2;72:9
**impact (1)**
105:19
**impacts (1)**
105:18
**impediment (1)**
36:22
**implement (1)**
74:14
**implemented (1)**
106:7
**implications (1)**
71:7
**implicitly (1)**
27:4
**implied (1)**
32:14
**important (10)**
38:4,5;54:24;56:9;
69:14,19;88:11;
106:19;122:19;123:4
**impose (3)**
15:12,13;36:5
**imposed (1)**
8:4
**impossible (1)**
116:4
**inch (1)**
66:6
**inclined (1)**
46:14
**include (6)**
87:25;92:7;98:11;
107:8,16;117:9
**included (2)**
20:17;58:3
**includes (3)**
10:1;86:16;108:16
**including (9)**
8:11;9:18;16:19;
31:4;42:2;69:1,17;
111:21;115:7
**inconsistent (4)**
5:25;22:25;29:17;
58:1
**incorporated (1)**
84:3
**increase (1)**
63:4
**in-crowd (1)**
122:6
**incumbent (3)**
45:16;46:4,7
**indeed (1)**
82:6
**independent (4)**

60:21;62:14;64:2,7
**indicate (3)**
90:13;118:20,23
**indicated (1)**
112:21
**indicates (1)**
80:15
**indirect (2)**
37:9;40:3
**individual (4)**
57:11,16;67:12;
79:17
**individually (1)**
63:9
**influence (2)**
46:14;121:15
**inform (2)**
59:16;60:20
**information (17)**
46:21;47:13;48:10;
55:15;63:3;69:9,13;
73:8,14;76:6;77:23;
78:11;79:24;80:23;
85:18;122:5;123:20
**informed (6)**
51:18;62:15;63:5,8;
69:9;115:21
**inherently (2)**
10:15,15
**initiate (1)**
72:4
**injunction (2)**
37:20,22
**injunctive (2)**
6:3,11
**injury (2)**
66:3;72:24
**insert (1)**
86:9
**inserted (1)**
86:8
**inspect (1)**
37:1
**instance (1)**
35:24
**instances (1)**
59:18
**instead (3)**
13:13;80:8;88:1
**institutional (1)**
105:22
**instructive (1)**
12:6
**insurance (2)**
61:20;74:11
**intend (1)**
96:9
**intended (2)**
63:2;109:18
**intention (1)**
37:13
**interest (8)**
14:2;50:10,11;55:20,

21;67:22;70:16;71:12
**interfere (1)**
19:24
**interviewed (1)**
49:24
**into (13)**
5:15;17:17;26:6;
34:23;37:24;51:11;
53:2;55:2;66:7;69:24;
71:20;87:14;117:19
**intractable (1)**
39:7
**investments (2)**
53:20,23
**invite (1)**
24:11
**invoke (1)**
25:11
**involved (5)**
45:21;46:10;72:10;
78:24;91:20
**involvement (2)**
59:14;69:19
**involves (1)**
61:17
**issue (25)**
4:23;14:3;15:6,7;
18:3,6,8;20:14;26:15;
35:13;62:19;94:3;
102:12;103:20;104:8;
105:10,25;108:13,20;
115:14;118:17;119:11,
14,16;124:18
**issued (1)**
83:4
**issues (15)**
15:11;17:9,10;20:23;
27:3;35:2;43:3,5,21;
56:14;62:7;99:24;
100:6;101:5,7
**item (1)**
83:5
**items (1)**
87:25
**iterative (1)**
80:11

**J**

**jeopardize (1)**
75:9
**jeopardizing (1)**
80:13
**job (6)**
41:11;48:5;59:15;
60:24;65:25;66:16
**Joe (2)**
47:4;48:24
**Johnson (1)**
30:25
**joining (1)**
17:21
**joke (1)**

76:22
**judge (19)**
5:3;10:13;11:25;
12:3;14:21;22:2;23:23;
24:13,15;34:11,12,18;
36:8;52:19;55:20;
61:18;75:23;79:1,5
**judgment (11)**
10:4,6;12:14,15;
13:3;15:9;21:20;33:13;
60:21;64:3,7
**judgments (1)**
80:6
**judicata (1)**
24:4
**Julian (3)**
51:10;72:18;74:24
**juncture (1)**
28:1
**June (1)**
76:1
**jury (11)**
7:24;9:14;10:2,3,13;
11:25;21:24,24;38:21;
61:13,15
**Justice (2)**
102:9;112:20
**justified (1)**
12:15

**K**

**Karotkin (127)**
40:25;41:4;56:6,13;
57:1,4,21,24;58:10,15,
18;66:6;68:3;69:6;
76:23;77:4;79:16;
80:15;81:4,11,15,17,
19,21,24;82:3,15,22;
83:18,20,22;84:2,7,16,
19,21,25;85:2,15,18,
23;86:9,25;87:3,6,10,
12,21;88:3,5,9,14,16,
22;89:2,4,10,21;90:7,8;
91:6,13,16;92:1,5,9,15,
17,21,23;93:2,4,9,11,
17,25;94:5,12,14,23,
25;95:2,5,11,13,24;
96:4,16;97:3,6,14,18;
98:1,7,12,15,24;99:3,
15;101:17,24;102:6;
103:13,15;104:9,11,15,
20;106:4,24;107:11,
19;108:12;109:8,10,14,
16;110:12,19;115:14,
19;116:19;117:16,22;
118:8;120:23;122:13
**Karotkin's (2)**
49:7;110:5
**Kasolas (1)**
60:24
**keep (4)**
90:1;98:9;123:4;

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 136
of 146

125:11
**keeps (3)**
68:16,18,19
**Keller (1)**
5:9
**kept (1)**
30:1
**key (1)**
57:6
**kind (10)**
19:4;32:9;33:5;39:3;
41:19;73:4,14;79:11;
104:12;113:2
**kinds (1)**
21:2
**knew (3)**
29:12;49:21;109:4
**knock (1)**
57:8
**knowing (2)**
16:10;71:12
**known (1)**
98:20

**L**

**lack (2)**
46:20;99:25
**lake (1)**
33:14
**large (1)**
74:20
**largely (1)**
39:7
**last (22)**
44:3;51:21;66:22;
67:15;75:23;77:19;
81:7;82:25;83:22;
86:14;89:16;92:24;
93:13;104:7,23;
108:19;109:25;110:8;
111:10;112:21;113:15;
122:5
**late (3)**
81:10,11;82:16
**later (9)**
23:20;55:12;64:22;
85:13;98:6,7;101:11;
107:1;113:24
**law (15)**
10:7;11:8;17:18;
18:13;22:4;26:1;32:2,
14,15;47:12;58:10;
63:7;67:5;100:16;
101:7
**lawful (1)**
25:1
**lawyer (7)**
54:9;57:17,18;65:20;
66:2;69:11;124:2
**lawyers (25)**
11:13;41:22,23;
51:11;55:16;57:15,21,

24;59:15,22;62:13;
64:2,5,6,7;65:4,7,24;
66:4,8,12;68:25;72:19,
24;109:25
**lay (2)**
86:7;106:12
**layers (3)**
74:6,6,6
**LCS (1)**
42:24
**lean (1)**
21:18
**learn (4)**
47:3,3;79:5;120:13
**learned (1)**
11:7
**least (6)**
6:14;42:10,17;43:18;
57:15;91:20
**leave (8)**
40:16;53:22;78:22;
80:14;88:16;94:18;
99:6;122:20
**leaving (1)**
16:4
**lecture (1)**
41:23
**led (2)**
5:1;83:4
**left (2)**
18:25;25:12
**legal (1)**
99:24
**legislate (1)**
51:10
**legitimate (2)**
43:22;60:9
**legs (1)**
32:13
**less (1)**
66:15
**lesson (1)**
12:24
**letter (2)**
32:16,17
**letters (9)**
44:7;50:23;68:20,20,
24;69:2;71:19,20,20
**letting (1)**
20:14;91:19
**level (2)**
70:11;122:4
**leverage (1)**
119:2
**Lexecon (1)**
60:25
**liable (2)**
20:24;22:23
**liens (1)**
62:20
**lies (1)**
86:6
**light (1)**

113:10
**likely (1)**
123:19
**line (5)**
5:20;13:12;14:21;
29:9;90:20
**lines (2)**
6:1;26:8
**linked (1)**
31:19
**lion's (1)**
56:19
**list (2)**
82:8;90:14
**listed (3)**
90:15;92:11;122:7
**listen (6)**
8:8;13:23;31:9;44:3;
77:17;123:23
**listened (1)**
27:13
**listening (1)**
66:13
**litigants (1)**
94:9
**litigate (5)**
7:24;16:13,14;17:8;
20:14
**litigated (1)**
15:12
**litigating (1)**
15:23
**litigation (10)**
9:23,24;10:23;12:11;
13:1;15:12;33:13,18;
53:1;57:14
**litigator (1)**
9:22
**little (15)**
27:18;41:19,20;47:4;
72:14;76:9;77:9;88:11;
93:13;98:4;99:11;
115:9;116:19;120:23;
124:15
**live (9)**
8:11;61:17;89:7;
96:13;97:11;117:12,
13,14;124:6
**living (2)**
123:21,23
**lobby (1)**
58:8
**locked (4)**
5:4;17:21;19:18;
61:21
**locking (1)**
20:4
**long (4)**
27:2;47:7;69:22;
73:21
**longer (7)**
10:8;11:24;13:17,17;
14:24;27:5;30:22

**look (30)**
15:4;16:24;26:23;
36:24,25;39:10;43:12;
46:6;48:22;54:7;59:23;
64:20;71:6,24;72:18;
76:8,8,9,12,24;79:13,
14;82:6;85:12;86:25;
92:8;104:1;114:4;
124:1;125:15
**looked (5)**
12:6,13;76:20;85:21;
86:21
**looking (7)**
4:13;45:11;58:25;
63:12;83:1;108:15;
120:21
**lose (1)**
8:3
**losing (3)**
7:25;8:2;10:10
**lost (1)**
82:5
**lot (23)**
4:21;5:20;18:25;
26:7;40:2;43:19;44:6;
46:8,8;47:23;50:23;
54:14;66:22;68:6;70:7;
71:6;72:13;76:12;
105:18;106:4;117:25;
118:1;122:23
**lots (3)**
29:4,5;100:14
**loud (1)**
103:2
**Lower (1)**
72:1
**luck (1)**
19:15

**M**

**ma'am (1)**
123:12
**mackerel (1)**
77:3
**main (2)**
31:13;110:21
**major (6)**
42:2;43:3,13;59:18;
62:5,21
**majority (1)**
30:9
**makers (1)**
106:16
**makes (4)**
48:16;65:24;69:23;
78:19
**making (5)**
10:25;31:2,3;61:9;
71:4
**management (1)**
43:11
**Manhattan (3)**

76:23,24;79:13
**many (5)**
47:21;67:25;79:2,25;
109:13
**March (14)**
88:8;91:23;92:25;
107:7;108:15,22;
112:16;113:10;114:6;
115:22;116:14,25;
117:10;123:16
**Marshack (9)**
65:13,15,19,23;
66:18;67:1,15;73:5;
79:11
**Mat (1)**
96:7
**material (1)**
103:24
**materially (1)**
29:10
**materials (1)**
71:3
**matter (10)**
4:6;10:7;17:9;40:18,
24;52:24;100:16;
101:7;105:19;106:17
**matters (1)**
10:3
**Matthew (1)**
102:8
**may (25)**
4:19;10:9;12:2,11;
20:23;22:21,22;47:24;
52:10,12;58:21;67:3;
76:4,22;77:20;80:3,8;
82:9;87:23;92:25;
102:3;106:22;109:11;
115:11;123:11
**maybe (24)**
7:3;8:7;11:22;13:17;
16:4;33:14,20;47:3,3;
52:25;80:7;82:19;
93:19;122:19
**mean (63)**
4:15;8:10;9:13;
11:19;13:15;16:1,3,4,
4;17:14;19:17;22:14;
25:8,25;26:23;27:20;
33:2,5;36:5,7;38:21;
48:16;49:8;59:14;60:4;
61:23;67:14;72:16;
75:21;81:6,19;82:21;
86:12;88:25;91:12,18;
93:14,19,19;96:24,25;
97:8;98:2,3,4;103:18,
20,20;104:9,11,12;
105:8,20;107:12,14;
109:21;112:25;114:1;
115:5;117:4,23;
122:16;124:7
**meaningful (2)**
59:17;63:5
**means (8)**

Min-U-Script®

Case: 19-30088   Doc# 5740   Filed: 02/12/20   Entered: 02/12/20 12:40:14   Page 137
of 146

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(10) keeps - means

25:1;27:4;32:7;48:1,
5,7;112:8;124:8
**meant (1)**
64:21
**measure (1)**
51:1
**media (1)**
92:13
**mediation (2)**
5:3;37:25
**mediator (3)**
52:20,23,24
**medical (1)**
12:19
**meet (11)**
67:19;75:3;106:14;
107:5,8,12,16;108:1,3;
119:22;121:25
**meeting (1)**
100:25
**meetings (1)**
66:11
**memorized (1)**
109:1
**mentioned (3)**
12:16;86:24;87:2
**merits (10)**
12:14;26:20;27:21;
28:2;30:10,11;31:3;
33:21,25;35:1
**messes (2)**
26:7,11
**met (3)**
66:4;67:14;121:25
**methods (1)**
63:2
**middle (1)**
91:3
**midway (1)**
47:10
**might (22)**
7:22;9:18;11:8,25;
29:18;36:18;51:16;
57:18;67:12;71:1;
72:12;78:2,4;93:23;
98:11;103:22;104:7;
105:9,25;106:21;
109:24;122:13
**Milbank (1)**
99:16
**million (1)**
61:17
**millions (1)**
22:4
**mind (5)**
28:17;43:3;51:22;
84:17;87:14
**mindful (2)**
89:25;124:3
**minor (3)**
91:7,8;94:9
**minute (10)**
34:19,20,21;35:20,

20;42:15,17;48:13;
52:11;82:24
**minutes (8)**
18:1;56:3;66:23;
69:17;81:5;99:8;102:2;
123:16
**misrepresented (1)**
29:14
**miss (1)**
82:21
**missed (4)**
82:5,5;116:12,18
**missing (1)**
87:4
**mistake (3)**
30:4;93:4,5
**MITCHELL (11)**
124:11,12,14,15,18,
21;125:1,4,7,10,12
**mobilized (1)**
61:1
**moment (5)**
42:17;51:25;113:11;
115:11;123:11
**Monday (2)**
95:17,20
**money (4)**
43:18,20;55:2;61:7
**month (2)**
46:24;113:24
**months (4)**
30:1;60:18;66:4;
67:16
**moot (1)**
106:1
**morass (1)**
57:14
**more (30)**
6:6;9:15;23:24;
26:14,19;27:7;31:11;
33:16;51:16;72:17;
73:7;78:15;82:19;83:8,
15;88:20;91:8;92:7,12;
94:5,23;99:18;102:13;
108:7,20;111:25;
112:8,22;121:22;
123:11
**morning (6)**
4:4,5;41:13;99:14;
102:8;120:9
**most (4)**
45:11;66:16;73:25;
74:12
**motion (66)**
5:13,13;7:12;8:18;
9:15;10:17;11:20;
12:11,12,14,13:15;
14:7;15:1;16:2,5;
21:20;24:9;25:10;
26:18;27:4,5,12,16;
30:9;31:6,6;32:22,24;
34:6,8,14;35:25;40:8;
41:14,16,19,19;64:17;

69:25;71:14;72:4;
78:25;79:3;80:18;
94:25;95:6,18;96:2,22;
98:10,13,16,21,25;
102:24,24;103:4,11;
104:1,3,25;108:17,22;
109:1;119:22;122:22
**motions (3)**
4:13;71:21;80:18
**motivated (2)**
38:9;55:5
**motivating (1)**
38:22
**mouth (1)**
107:10
**move (3)**
55:9;77:17;114:5
**moving (4)**
57:6;76:8;78:21;
122:16
**much (13)**
23:20;29:20;56:10;
67:6;72:16;73:23;77:3,
5;79:18;97:8,11;
107:24;119:25
**multiple (2)**
37:11;112:14
**must (5)**
62:10;64:2;102:22,
24;116:12
**Myers (1)**
96:8
**myopic (1)**
70:12
**myself (1)**
69:14

## N

**name (1)**
97:8
**naming (1)**
57:17
**nature (4)**
21:2;46:21;53:25;
104:17
**necessarily (3)**
31:16;34:4;97:9
**necessary (1)**
56:7
**need (13)**
47:3;56:11;63:11;
80:23;83:12;90:1;
94:20;97:9,10,15;
106:8;118:5;123:15
**needed (2)**
70:14;124:23
**needing (1)**
97:12
**needle (5)**
15:5,6;17:13;39:1,2
**needs (2)**
5:25;115:20

**negate (1)**
13:2
**negative (3)**
19:22;20:1;27:8
**negligence (2)**
20:19;34:3
**negotiate (1)**
75:12
**negotiating (1)**
70:13
**negotiation (1)**
57:5
**negotiations (1)**
56:17
**neighbor (2)**
13:8;19:1
**neighbors (5)**
15:22,23,25;17:15,
20
**neighbor's (1)**
15:20
**new (4)**
63:18;69:3;120:13;
124:6
**newest (1)**
49:1
**next (14)**
6:2;13:7;22:16,18;
46:24;51:19;58:25;
95:10,11,20;99:2,15;
122:13;125:16
**nice (1)**
125:17
**night (4)**
81:7;82:25;89:16;
110:1
**nine (2)**
66:4;67:16
**Ninth (1)**
12:15
**nominal (1)**
21:1
**none (3)**
72:14,15;119:22
**nonfavorable (1)**
43:2
**nonissue (1)**
106:21
**nonrenewed (1)**
12:19
**nor (2)**
49:24;117:20
**normal (1)**
94:7
**Northern (1)**
73:25
**Norton (1)**
120:11
**noteholder (1)**
95:14
**notes (2)**
82:24;83:2
**Notice (44)**

**negate (1)**
13:2

62:22;81:12;82:6,7,
8,10,11,13;83:2,3,4,7;
85:9,10,11;87:1,14,15,
22,24;88:2;89:17;
90:12,20;91:14,17,19;
92:1,6;93:7,13;102:13,
15,18;104:2;106:1;
110:11;117:18,19;
118:5;120:22,22,25;
121:3
**noticing (2)**
81:12;98:12
**notion (3)**
44:14,15;48:23
**notwithstanding (1)**
34:12
**nowhere (1)**
74:16
**nuisance (5)**
6:3,13;20:23;22:3;
31:20
**Number (16)**
13:22;42:20;50:1;
60:9;13;62:25;63:2,7;
72:18;74:4;80:10;
101:2;105:13;112:19;
113:15,16
**numbers (1)**
74:20

## O

**Oakland (2)**
26:7;37:1
**object (3)**
23:6;69:12;110:1
**objecting (4)**
97:21;98:24;99:1;
109:17
**objection (18)**
16:6;66:8;96:1;
98:15,17;100:9;
102:22,23;103:3;
104:17;108:5;110:3;
114:13,18,22,23;115:1;
122:8
**objections (18)**
42:22;51:2;53:10;
58:5;78:23;80:17;
90:15,19;91:4;98:20;
100:2,2;102:22;
103:10;113:19,23;
114:2;121:9
**objects (1)**
108:1
**obligated (1)**
79:23
**obligations (6)**
8:25;9:5,11;19:21;
27:9;67:19
**observation (2)**
67:16;69:6
**observations (1)**

Min-U-Script®

Case: 19-30088    Doc# 5740    eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 138
of 146

(11) meant - observations

68:22
**observed (1)**
67:25
**obtain (2)**
14:17;21:3
**obviously (1)**
71:6
**occur (2)**
48:19;51:8
**occurred (2)**
37:14;77:23
**occurs (2)**
110:24;111:20
**o'clock (1)**
89:16
**October (1)**
60:15
**odd (1)**
19:4
**off (9)**
32:22;33:2;34:1;
38:24;55:23,24;56:23;
93:13;99:21
**offer (3)**
62:10;88:21;115:8
**office (8)**
43:10;75:25;90:24;
91:1;96:1,6;97:21;
98:18
**officer (1)**
90:18
**official (4)**
66:21;69:4,8;99:17
**old (1)**
17:15
**oldest (1)**
106:6
**O'Melveny (1)**
96:8
**once (2)**
58:7,15
**one (74)**
4:8;5:7;7:3;8:21;
10:21;11:7;13:22;
14:22;17:20;18:12;
21:15,17;23:14;24:15,
17;27:25;31:10;32:6;
33:3,11;34:19,19,20,
21;38:2;39:5;44:18;
46:13;47:23;48:7;
49:12,12,14;50:22;
55:12;62:25;69:2;
71:10;73:3;74:12,13,
14;76:20;77:19;81:22;
82:4,8,14,25;85:5,5;
86:13;88:1,25;94:23;
100:25;102:12,14,17;
105:4,5,17,23;106:25;
108:14;109:7;110:9;
111:25;112:8,17,20;
113:6;115:11;123:11
**one- (1)**
84:10

**one-on-one (1)**
69:16
**ones (1)**
65:22
**ongoing (1)**
124:21
**only (18)**
37:19;54:10;67:4;
69:15;70:1;71:14,18;
72:3;77:22;78:8;81:7;
91:7;101:10;102:14;
109:22;111:17;113:4;
117:11
**oOo- (1)**
4:2
**open (3)**
95:21;96:25;122:20
**opened (1)**
61:12
**opening (1)**
26:24
**opera (3)**
26:1,2;29:4
**operative (1)**
17:20
**opinion (2)**
53:5,7
**opponents (1)**
78:20
**opportunity (3)**
14:1;79:21;116:10
**opposed (1)**
111:7
**opposition (2)**
30:16;96:10
**option (2)**
47:24;92:10
**order (33)**
4:3;7:23;39:9,18;
45:1;62:14;80:14,19;
81:12;83:3,3;86:16,24;
88:1,17;91:9,11;99:18;
102:13;107:4;108:15,
16;110:11,23;115:4,
21;117:20,21;118:6;
120:19,23,24;122:7
**ordered (3)**
52:20,22,24
**orders (1)**
118:3
**original (1)**
37:12
**originally (1)**
41:16
**Orsini (1)**
60:1
**others (4)**
75:2;79:13;87:17;
91:20
**otherwise (2)**
39:17;97:14
**ought (2)**
58:3;114:16

**ours (1)**
116:23
**ourselves (1)**
10:12
**out (45)**
5:5,21;10:16;19:15,
19;20:4;24:5;32:13;
36:8;41:12;46:23;
50:20,25;51:19;54:23;
55:22;57:8,12;61:1;
71:21,23;72:3;73:17;
75:21;76:3,6;77:24;
78:6,11;82:13;87:5;
89:24;93:7;106:2,3,12;
107:10;113:18;117:8;
118:1,25;120:2;
121:24;122:9;124:6
**outcome (3)**
43:4;54:22;55:15
**outcome's (1)**
43:5
**outset (1)**
24:9
**outside (1)**
74:3
**outsider (1)**
69:20
**over (13)**
17:9;32:7;46:15,15;
54:16;57:3;58:25;67:7;
70:13,17;74:11;89:20;
111:15
**overdo (1)**
87:15
**overrule (2)**
78:23;80:17
**overruled (1)**
70:1
**oversight (1)**
35:11
**owe (1)**
89:15
**own (7)**
5:25;28:22;29:22,25;
67:19;75:6;77:14

## P

**page (16)**
82:24;83:9;84:6,12;
86:22,23;90:12,20;
91:15;102:15,16,18,19;
104:2;108:16;122:7
**pages (2)**
61:17;73:21
**paid (2)**
35:5,14
**pamphlet (4)**
46:24;47:2;51:15;
111:13
**paper (1)**
47:19
**papers (1)**

42:2
**Parada (2)**
94:13;98:9
**paragraph (3)**
90:15,21;104:1
**part (16)**
7:7;8:24;9:6;10:3;
15:12;16:6,8;17:18,19;
22:9;36:25;48:22;
49:16;61:2;113:17;
119:6
**participate (2)**
60:3;124:23
**participation (5)**
59:19,24,25;63:4;
64:12
**particularity (1)**
104:16
**particularly (2)**
48:5;119:25
**parties (10)**
5:16,21;33:11;59:22;
90:13,14,15,16;105:22;
124:22
**parts (2)**
17:17;20:13
**party (2)**
67:4;107:16
**Pascuzzi (19)**
109:3,17;116:7,8;
118:9,12,12,13,19,22,
24;119:6,10,14,17,19,
21;120:3,5
**passionate (6)**
66:5,9,10;67:17;
71:16,17
**past (3)**
48:18,20;76:23
**path (1)**
67:24
**patient (1)**
118:11
**pattern (1)**
9:17
**Paul (2)**
118:12;124:12
**pending (2)**
42:22;113:23
**penny (2)**
38:2;66:12
**people (47)**
6:7;21:10;38:22;
42:9;45:19;46:8,9;
47:11;49:11,24,25;
50:4;54:8,14;56:20;
58:8;60:9,19;61:8,8,
13,17;65:3;67:25;
72:20;73:25;74:4,21,
23;75:4;76:5;77:10,24;
78:2,5,20;80:10,22;
81:20;87:17,24;91:19;
92:12;115:16;118:1;
123:14

**people's (2)**
85:9;90:24
**percent (5)**
16:24;35:6;59:25;
60:12;67:8
**perform (1)**
10:14
**performance (21)**
6:22,24;7:6,10,15;
8:4,25;9:6;10:1;14:17;
16:17;17:19;18:17;
19:7,10;20:2,15;26:3;
27:7,17;31:24
**performing (1)**
36:21
**perhaps (5)**
5:21;34:11;47:11;
90:20;93:17,20
**period (1)**
115:25
**permit (2)**
27:24;37:23
**permitted (2)**
9:25;80:4
**person (3)**
79:17;86:7;106:6
**personal (2)**
66:3;72:24
**personally (1)**
69:14
**persuade (1)**
58:8
**persuaded (4)**
33:10;34:8;36:13;
79:6
**persuasive (1)**
21:4
**Pete (1)**
124:5
**Peter (1)**
5:9
**PG&E (38)**
4:6,14;5:10,19,23,
24;6:2,24;7:10;8:4;
11:4;13:7,10;15:14;
18:15,20;19:12;20:3;
24:10;26:10,10;29:4,
21;37:11,22;39:5,11,
12,17,17;42:5;43:11,
17;45:2;49:1;61:6;
64:20;106:7
**PG&E's (7)**
6:23;7:7;8:24;9:6,
23;40:21;42:18
**ph (1)**
42:24
**phone (19)**
41:2;51:2;71:13,23;
72:4,5,6,9;76:23,24;
77:1,10,11,15;79:13;
96:6,18;97:7;98:24
**phony (1)**
49:2

Min-U-Script®

Case: 19-30088    Doc# 5740    eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 139
of 146

(12) observed - phony

**phrase (1)**
108:19
**Pick (2)**
88:14,21
**picked (1)**
124:7
**picks (1)**
118:6
**Piece (8)**
64:9;95:7,7,8,13,16,
19;96:10
**pieces (1)**
50:22
**pipeline (1)**
26:11
**pipes (1)**
8:9
**piping (1)**
37:2
**pithy (1)**
44:16
**Pitre (1)**
75:2
**place (3)**
47:9;75:24;80:20
**places (1)**
45:12
**plaintiff (1)**
12:18
**plaintiffs (1)**
61:15
**plan (47)**
29:22,23,25;35:5;
46:16;51:18;53:8,9,10;
56:1;58:2;63:6,10;
64:4;65:8;67:10,20;
70:24;79:19;81:6;
83:10,12;90:3;91:24;
95:5;99:21;100:1,6,7,
20,23,24;101:2;104:4;
107:20,20;108:19;
111:24;112:6,12;
113:16;115:17,22;
118:21;121:4,4;123:22
**planned (1)**
21:23
**plans (3)**
29:9,17;39:18
**plan's (1)**
64:25
**platform (1)**
47:17
**platitudes (1)**
64:24
**play (1)**
85:6
**players (1)**
43:6
**playing (2)**
24:10;49:7
**pleading (2)**
95:17;97:24
**pleadings (2)**

56:14;95:3
**please (7)**
6:13;15:21;41:7;
83:2,10;98:25;115:11
**pleased (1)**
101:1
**pm (2)**
83:5;125:18
**podium (3)**
50:2;59:9;123:15
**point (52)**
4:17;9:13;12:2,6;
17:12;19:25;22:12;
23:17;24:10,24;25:18;
26:13;28:9;29:21;
31:13;32:9;34:19;38:5,
5;39:16;50:20;54:20;
62:8;64:1;68:21;70:10;
71:14;72:13;75:13,14;
77:19;78:8,13,19;79:1;
80:12;84:20;89:25;
90:12;97:24;100:20;
103:6;104:13;106:16;
108:11;110:8,21;
113:1,2;114:14;116:5;
122:12
**points (9)**
13:21;46:10;64:1;
82:2;91:8;102:25,25;
104:16;106:10
**poke (2)**
40:10,12
**policy (2)**
105:20;106:17
**pool (1)**
43:18
**popping (3)**
68:16,18,19
**portion (2)**
97:22;98:10
**posed (1)**
34:15
**position (16)**
6:23;8:16;14:25;
15:1;16:18;31:15;
40:20,21;49:25;68:4;
80:6,12;105:8;107:15;
118:20,23
**positions (1)**
74:10
**possibility (1)**
114:23
**possible (5)**
40:1;65:9;66:16;
108:12;114:11
**possibly (1)**
45:19
**potentially (1)**
96:11
**power (1)**
62:9
**practical (1)**
113:14

**preclude (2)**
76:16;114:23
**precluded (1)**
34:14
**precludes (1)**
76:14
**preclusive (2)**
36:1,3
**predict (1)**
123:21
**prefer (1)**
51:17
**preferable (2)**
79:7,8
**pre-hearing (1)**
91:22
**prejudge (1)**
123:2
**preliminary (1)**
62:2
**premise (1)**
9:4
**prepare (2)**
76:20;98:19
**prepared (4)**
26:10;38:1;84:8;
86:6
**preparing (1)**
4:12
**prescripting (1)**
32:8
**prescriptive (3)**
21:13;32:6,7
**presence (1)**
42:21
**present (4)**
20:21;32:12;35:10;
108:13
**presented (7)**
19:21;26:22;35:4,9;
53:14;56:21;103:5
**presenting (1)**
59:11
**preserve (1)**
80:17
**president (1)**
124:8
**press (2)**
89:19,22
**presses (4)**
81:22;87:6,12;89:17
**presumably (1)**
122:1
**presume (3)**
36:7;42:5;81:1
**presumption (1)**
105:15
**pretty (4)**
10:25;70:20;107:24;
119:25
**prevail (2)**
20:23;32:7
**prevails (1)**

32:6
**previous (2)**
110:14;123:18
**previously (3)**
87:2;103:5,16
**prima (1)**
36:17
**primaries (1)**
111:15
**principal (2)**
43:6;68:25
**print (1)**
49:1
**prior (4)**
44:7;47:15;100:14;
117:10
**priorities (1)**
43:17
**priority (2)**
94:17,17
**privileged (1)**
44:11
**proactive (2)**
53:3;80:22
**prob (1)**
33:1
**probably (7)**
22:21;44:8;46:24;
74:16;97:15;106:19;
116:3
**problem (21)**
6:8;7:2;8:10,14;
17:22;21:19;24:3;
32:18,18;36:24;37:3;
38:2,25,25;39:7,9,11;
55:2;89:17;97:10;
106:18
**problems (5)**
9:20;33:11;74:5,6;
115:3
**procedure (4)**
83:14;90:2,3;104:25
**Procedures (25)**
62:22;83:6,24;86:17;
102:24,24;103:11;
104:1,4,5,6,25;107:10;
110:10,14,17,22;111:4,
7;117:10;120:16,18,
24;123:1,17
**proceed (2)**
21:3;65:14
**proceeded (1)**
44:9;49:17
**proceedings (1)**
125:18
**process (12)**
55:14;69:5,5;70:17;
75:9;80:11,11;89:9;
99:19;100:8;113:14;
122:13
**produced (1)**
83:11
**product (3)**

56:16;57:5;70:17
**profession (1)**
41:22
**professional (1)**
41:24
**professionals (7)**
55:16;67:9;70:23;
80:6;86:11;89:11;
116:12
**professional's (1)**
75:14
**profits (1)**
65:2
**progress (4)**
67:25;68:4,8;70:4
**project (3)**
29:15;36:23;37:3
**prologue (1)**
48:18
**promise (1)**
31:7
**promised (3)**
32:21;41:6;123:16
**promulgate (1)**
79:23
**proof (4)**
35:11;60:5,6;125:1
**proofs (1)**
61:4
**proper (1)**
5:20
**properly (1)**
15:7
**property (2)**
6:12;19:13
**proponent (1)**
107:21
**proponents (1)**
108:21
**proposed (2)**
35:4;63:2
**proposition (1)**
13:1
**props (4)**
57:8,12;66:22;70:7
**pros (1)**
55:17
**prospect (3)**
8:3;11:3,5
**prospective (1)**
113:20
**protect (1)**
10:12
**protocol (1)**
113:17
**protracted (1)**
56:17
**provide (6)**
46:5;62:13;64:25;
65:3;83:24;114:7
**provided (2)**
50:19;69:9
**provides (2)**

Min-U-Script®

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 140
of 146

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(13) phrase - provides

48:8;55:15
**proving (1)**
19:10
**provision (1)**
70:22
**provisions (2)**
47:21;71:1
**public (2)**
92:13;124:13
**pulling (1)**
73:3
**purpose (1)**
14:14
**purposes (10)**
6:18;93:16;106:24;
108:18;110:3;113:10;
119:4;120:24;122:20;
123:5
**pursuant (2)**
108:17;109:12
**pushed (1)**
55:22
**pushing (1)**
32:3
**put (17)**
20:2;31:14;32:20;
63:13;64:16;66:7;69:4;
70:17;76:4;87:1,14;
90:21;91:9,23;98:1;
118:25;122:17
**putting (2)**
73:22;119:11

**Q**

**quarrel (1)**
43:16
**quibble (1)**
6:16
**quiet (1)**
40:25
**quiz (3)**
18:13,14;73:25
**quizzes (1)**
18:13
**quoted (1)**
80:5

**R**

**raise (7)**
100:10;102:12;
103:16;114:18;121:8,
12;122:8
**raised (2)**
62:7;124:18
**raising (1)**
59:20;71:15
**ranking (1)**
43:12
**rather (4)**
43:24;54:15;55:12;
73:14

**reach (3)**
30:24;71:21;72:3
**reached (3)**
50:25;61:19;71:23
**reaching (1)**
26:20
**read (13)**
15:16;42:8,8;46:14;
47:2,5,18,19;48:25;
63:20,21;71:5;112:6
**reader (1)**
70:21
**reading (3)**
42:1;69:2;74:19
**ready (2)**
81:6;114:11
**real (1)**
20:7
**realized (1)**
105:7
**really (21)**
19:22;20:11;26:23;
31:18;34:12;54:10;
56:10;65:24;66:8,8;
75:20,21;82:19;93:14;
97:14;98:2;102:14;
107:16;111:10,22;
114:15
**rearrangement (1)**
37:2
**reason (12)**
8:23;14:11,13;38:19;
40:7;49:17;53:7;57:19;
59:20;77:23;78:9;84:8
**reasonable (1)**
98:11
**reasoned (1)**
116:1
**reasoning (1)**
36:7
**reasons (10)**
5:21;10:16;17:17;
32:23,24;41:18;57:19,
20;72:3;80:16
**Rebecca (1)**
120:10
**rebuttal (1)**
18:1
**recall (3)**
67:3;96:1;104:7
**receive (1)**
68:15
**received (1)**
68:25
**recitals (1)**
42:9
**recited (1)**
28:11
**recognize (1)**
59:6
**recognized (1)**
56:15
**recommend (1)**

70:23
**reconsider (3)**
41:17;78:25;79:3
**reconsideration (4)**
41:13;69:25;71:14;
80:19
**reconsidered (1)**
53:11
**record (10)**
19:21;30:12;37:9,10,
25;59:1;71:24;80:16,
16;108:8
**recover (2)**
16:24;24:23
**redo (1)**
8:8
**referenced (2)**
84:5;121:3
**references (1)**
86:17
**referring (1)**
48:20
**refers (2)**
86:9;107:11
**reflect (1)**
117:21
**refrains (1)**
31:3
**refuse (1)**
61:2
**regard (2)**
41:11;118:19
**regarding (3)**
44:6;63:8;71:6
**regardless (1)**
78:18
**regular (1)**
95:19
**regulators (1)**
55:19
**reimbursement (2)**
113:20,20
**reject (39)**
7:12;8:21;11:20;
13:15;14:8,22;16:3;
18:16,24;19:11;20:5;
24:12,13,25;25:1,11;
27:4,5,14,15,16,17,25;
30:9,15;31:6,6;32:23,
24;33:15,19,22;34:14,
16;36:1;40:8;63:6,10;
64:3
**rejectable (5)**
19:8;22:14,15,19;
23:24
**rejected (9)**
16:16,16;20:3;22:19;
23:2,24;25:19;29:25;
31:15
**rejecting (1)**
19:13
**rejection (18)**
11:5;12:11,12;13:2;

14:15;15:8;16:22,23;
24:20;25:3,6;27:11,24;
34:4;35:15,18;36:14;
39:3
**rejects (1)**
40:21
**rejigger (1)**
39:17
**relates (2)**
17:3,4
**relating (1)**
16:18
**relationships (1)**
51:12
**relevant (8)**
12:25;17:4;88:12;
92:3,7,10;94:20;
122:22
**relied (2)**
48:3;70:19
**relief (24)**
5:13;6:3,11;13:22;
14:1;15:9,10;16:6,15;
17:7,7;27:12;31:3,5,7;
34:9;37:20;38:6,14,19;
40:8,22;52:16;56:22
**rely (1)**
77:25
**relying (6)**
9:23;50:20,21,22,22;
51:6
**remaining (1)**
19:21
**remains (3)**
9:9,10;124:21
**remarkably (1)**
106:8
**remedies (1)**
31:25
**remedy (3)**
20:13;33:12;47:23
**remember (9)**
26:1;29:24;52:13,15;
61:3;81:17;86:14;
95:20;100:1
**remind (2)**
101:24;118:16
**reminded (1)**
123:13
**reorganizations (1)**
74:13
**repeat (1)**
96:18
**repeated (1)**
37:15
**report (2)**
94:6;101:1
**reports (1)**
59:24
**represent (3)**
41:1;67:7;72:7
**representation (1)**
110:5

**representative (2)**
50:4;72:7
**represented (2)**
50:5;54:6
**representing (2)**
56:19;124:2
**represents (3)**
36:22;67:2;69:11
**request (8)**
10:1;15:7,9;16:14;
95:15,16;106:15;107:8
**requesting (2)**
56:22;104:3
**require (2)**
115:16;118:4
**required (2)**
7:10;63:7
**requirement (1)**
107:5
**res (1)**
24:4
**research (1)**
47:6
**reserve (3)**
56:2;113:6;124:23
**reserving (1)**
15:2
**resolution (24)**
5:1;37:13,16,24;
61:19;83:6,13,24;85:5;
86:17;90:1,2;106:23;
110:10,14,17,22;111:4,
7;117:9;120:18,24;
123:15,17
**resolved (7)**
10:3;41:18;52:25;
53:1;61:18;100:7;
103:5
**resources (1)**
29:5
**respect (12)**
39:6;61:11;67:20;
69:23;75:8;88:19;
95:13,17;102:13;
110:11;111:5;121:12
**respects (1)**
8:6
**respond (5)**
11:4;17:6;82:20;
104:10;107:19
**responded (1)**
114:2
**responding (3)**
48:21,22;75:16
**response (4)**
42:2;44:8;50:24;
104:17
**responses (1)**
69:3
**responsibility (1)**
99:25
**responsive (1)**
56:14

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 141
of 146

**rest (1)**
62:10
**restructure (1)**
67:4
**restructuring (1)**
37:12
**rests (1)**
63:1
**result (16)**
5:7;13:16;22:22;
33:11;38:11;41:12;
43:2,2,2;53:3,4,6;
59:23;61:16;79:6,7
**retaliatory (1)**
12:20
**return (2)**
71:13;72:5
**returned (1)**
73:8
**reveal (1)**
47:16
**review (2)**
86:10;115:23
**reviewed (2)**
5:12;125:5
**reviewing (2)**
84:9,22
**revised (3)**
91:24;97:24;118:5
**rhetorical (1)**
93:19
**rid (1)**
65:1
**Riddle (1)**
123:13
**ridiculous (1)**
104:12
**Rifkind (1)**
124:12
**Righetti (1)**
30:25
**right (109)**
5:7;6:14;7:1,17,19;
8:13;9:3,7,22;10:12;
11:11;13:24;15:2;16:1;
17:2,3,25;18:23;21:18,
20,22;22:1;23:1,2,5,8;
24:17;25:7,20;26:5;
28:23;29:8,9;32:4,6,8,
11,17,18;35:7;37:9,17;
38:13,14;40:17;41:12;
42:11;46:16;56:24;
57:2;58:1,12;59:8;
60:11;61:13,14,15,24;
62:5;63:22,24;67:13;
70:8;76:7,25;79:2,6,7;
80:2;81:14,14,24;
82:15;84:1,14;86:4,8;
89:18;93:11;95:1,4;
98:23,25;99:2;101:13,
22;103:9,17,17,24;
104:5;105:2;107:20;
112:2;113:6,25;114:3;
116:17;117:4;119:9,
24;120:19;121:6,20,
23;124:23,25;125:14,
14
**rights (7)**
6:13;9:19;31:21,22,
23;32:1,7
**Rio (1)**
118:13
**risk (6)**
7:25;8:2;10:11,13;
43:15;80:12
**roll (2)**
66:25;90:8
**Ron (1)**
20:9
**room (3)**
76:3;105:7;106:6
**Rose (1)**
120:11
**routine (1)**
20:21
**RSA (40)**
43:24;44:6,13;45:6,
21;47:17;48:21,22;
49:16;51:22,24;54:16,
20;55:23;56:16;58:2;
61:24;62:1,2;63:15;
67:9,21,23;68:1,1,2,5;
70:1,20,22;71:7,7;
73:19,23,24;74:1,4,15;
78:10;95:14
**RSAs (2)**
41:17;42:18
**ruin (1)**
61:7
**rule (9)**
15:9;26:17;30:9,10;
56:24;108:17,25;
109:8;119:22
**ruled (1)**
61:18
**rules (3)**
63:8;89:6;114:15
**ruling (2)**
18:8;30:11
**run (3)**
7:25;8:2;118:4

**S**

**safely (1)**
67:18
**Sally (1)**
47:4
**same (13)**
18:23;23:7,7;38:19;
83:13,14;85:4,24;
100:18;120:7,7;121:8;
122:17
**SAN (3)**
4:1;64:20;77:1
**Sanders (1)**

124:5
**sat (1)**
49:19
**satisfaction (1)**
52:25
**Saturday (1)**
69:17
**save (2)**
17:24,25
**saw (3)**
45:21;86:22;120:19
**saying (16)**
8:22;11:21,22;15:16;
16:13;19:9,10;21:1,9;
26:15;30:10;34:13;
42:4;43:20;87:21;
100:18
**schedule (8)**
91:9;94:2,10;97:9;
108:12;109:19;118:6;
124:22
**scheduled (2)**
100:25;101:25
**scheduling (5)**
94:9,20;98:5;99:18;
118:15
**school (5)**
11:8;17:18;18:13;
26:1;79:5
**Score (1)**
109:7
**screw (1)**
13:12
**Sean (1)**
124:11
**SEC (1)**
45:2
**second (16)**
5:23;7:3;27:8;29:15,
21;33:3;34:25,25;
39:20;66:15;80:4,6;
82:25;86:12;102:17;
121:7
**Secondly (2)**
42:20;112:16
**seconds (1)**
58:21
**secret (2)**
6:23;118:2
**Section (1)**
25:12
**security (1)**
109:12
**seeing (3)**
97:23;110:13;125:16
**seek (3)**
6:22;37:20;108:20
**seeking (7)**
16:15;18:7,7;37:22;
38:6,14;108:17
**seeks (1)**
37:20
**seem (2)**

71:10;122:4
**seemed (1)**
6:5
**seems (6)**
9:13;26:14;70:19,24;
87:13;108:19
**sees (2)**
10:13,13
**self-inflicted (2)**
22:7,9
**send (4)**
91:1;92:18,20,20
**sending (1)**
68:24
**senior (2)**
41:16;51:21
**sent (5)**
5:3;50:23;51:23;
89:24;92:25
**separable (2)**
18:4,6
**Separate (2)**
15:24;121:5
**September (1)**
60:16
**sequence (1)**
61:23
**seriously (2)**
69:2;75:22
**serve (1)**
121:19
**set (5)**
17:14,15,20;68:5;
97:16
**settle (2)**
38:22;112:1
**settled (3)**
4:15;5:5;27:1
**settlement (10)**
5:17,18;37:25;38:7,
8,10,18;57:11;62:10;
68:10
**settlements (4)**
53:24,25;57:10;63:8
**seven (1)**
73:21
**seventy (1)**
67:7
**seventy-plus-thousand (1)**
56:19
**sever (1)**
18:7
**severable (1)**
15:11
**shall (8)**
47:22,24;52:12;
70:23,24;71:2;80:3,8
**shalls (2)**
52:9;76:3
**share (2)**
56:19;65:6
**shareholders (2)**
61:21;107:24

**sharing (2)**
43:18;67:9
**sharp (1)**
40:11
**sheriff's (1)**
55:11
**short (10)**
44:16;81:7;84:10;
91:21;92:14;93:13;
101:25;102:4,25;
104:16
**shorter (1)**
120:16
**short-term (1)**
65:2
**show (3)**
35:8;59:21;91:11
**showing (1)**
36:17
**shown (1)**
36:20
**shows (1)**
38:1
**shuffle (1)**
82:5
**sic (2)**
71:11;121:25
**sick (1)**
26:2
**side (13)**
13:19,19;19:7,10;
23:5,14;27:7;34:2;
41:3;56:3;93:8;116:20;
117:17
**sided (1)**
48:7
**sides (2)**
23:13;40:23
**sign (3)**
55:23;57:24;80:14
**signed (5)**
32:16;47:16;86:16,
24;99:21
**significant (2)**
36:20;105:18
**significantly (2)**
17:3,4
**Silence (1)**
99:1
**similar (3)**
84:10;85:22;90:4
**similarly (1)**
67:23
**simple (6)**
5:15;17:14,15;79:13,
14;90:1
**simplify (1)**
114:5
**simply (5)**
11:24;80:4;105:22;
107:8,9
**sincere (2)**
67:10,17

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 142
of 146

sing (1)
26:1
singer (2)
26:2;29:4
single (3)
10:3;108:25;115:17
Singleton (1)
67:2
singular (1)
112:23
sisters (1)
61:2
sit (3)
13:16;24:11;102:1
site (2)
33:14;37:1
sitting (1)
72:10
situation (4)
16:23;18:19;24:4;
39:3
six (1)
62:7
sixty (4)
21:7,8,13;32:15
SKIKOS (34)
58:21;59:2,2,3,4,7,
10,15;60:5,7,9,12,15;
61:6,25;62:4,6;63:13,
16,18,22,24;64:1,10;
65:10,16,19;67:2,11;
69:7;73:4;75:2,8;79:11
slippery-slope (1)
35:17
small (1)
90:12
solely (2)
84:11;109:18
solicit (1)
103:21
solicitation (7)
102:22,24;103:11,
23;104:4,5,25
Soliciting (1)
62:22
solution (3)
38:2;75:18,18
solve (6)
7:2;33:11;37:3;39:9;
75:17;115:3
solvent (2)
17:1;35:19
somebody (4)
11:8;26:2;47:5;
119:4
somehow (1)
44:15
someone (6)
18:9;41:3;71:21;
72:10;85:10;101:10
sometimes (2)
71:9;78:6
somewhat (1)

99:19
soon (1)
114:11
sooner (2)
55:12;101:12
sophistication (1)
74:12
sorry (8)
13:10;20:8;45:4;
59:5;71:15;96:18;97:7;
99:10
sort (2)
20:13;50:6
sound (2)
59:13;106:6
sounds (1)
90:4
speak (4)
32:22;54:9;65:12;
76:4
SPEAKER (1)
58:23
SPEAKERS (1)
110:15
speaking (2)
54:10;116:6
specific (9)
6:22;8:3;10:1;14:17;
16:17;17:19;20:15;
31:24;33:13
spelled (1)
10:16
spent (1)
117:25
spike (1)
78:7
splitting (1)
20:13
spoke (1)
78:20
sponsor (1)
107:19
squeaky (1)
99:11
squeeze (1)
116:4
squeezed (1)
117:8
staff (2)
81:8;82:7
stage (1)
46:7
stages (1)
62:2
stand (3)
99:15;101:11;115:20
standards (1)
41:13
standing (6)
5:8;13:4;39:25;
44:12;49:10;120:6
stands (4)
36:21;40:18,24;74:1

start (3)
50:4;51:12;54:16
started (3)
52:19;57:10;77:24
starting (4)
43:13;57:3;102:16,
19
state (23)
9:22,24;20:9;21:20;
22:23;23:12,19;24:4,
19,21;31:16;32:2;34:9;
51:1,11;53:12;59:1;
61:12;72:24;104:15;
118:14,16;120:1
stated (4)
30:16;32:24;70:13;
80:16
statement (45)
29:18;42:6;46:12;
48:4;49:3;58:4,7,16;
63:24;66:7;69:7,12;
76:19;77:4;79:22,24;
82:12;83:9;84:4;85:7,
11,12;86:22;88:12,19;
91:4,25;92:2;100:2,6,
11;102:21,23;103:2,8,
10;104:18;110:24,25;
111:20;113:12;115:1,
15,19;122:4
statements (5)
47:6;73:17;76:24;
83:1;90:19
states (3)
102:21;116:13;117:1
statutory (1)
99:25
stay (12)
5:13;15:9,10;17:11;
27:13;31:2,5;34:9;
40:9,22;52:16;99:12
step (5)
61:19,19;62:4,5;
67:24
steps (1)
72:6
Steve (1)
59:2
stick (2)
40:11;41:8
still (16)
4:7;7:6;18:17,25;
19:9;25:12;30:7,8;
32:1;75:25;84:9,22;
89:14;99:24;110:16;
111:24
stipulation (1)
94:8
stock (16)
42:5,10,18;43:17;
47:20;48:24;49:2,8,12;
62:19;68:16;77:22,24;
78:1,3,7
stood (1)

50:2
stop (3)
49:21;81:21;89:17
stopped (3)
87:6,10,12
story (1)
83:21
streamline (1)
63:3
streamlining (3)
48:4,5,7
strikes (1)
6:4
strong (2)
19:6;122:10
strongest (2)
30:17,20
strongly (1)
54:14
structural (2)
29:6,6
structure (1)
74:7
structures (1)
43:22
struggling (2)
33:25;34:16
studied (1)
16:10
study (1)
117:1
stuff (5)
18:25;56:24;71:4;
75:24;77:3
stupid (1)
89:6
subject (2)
95:18;108:2
submit (6)
15:6;80:15;103:4;
111:17;113:3;118:5
submitted (4)
40:18,24;96:17,21
subro (1)
68:1
subrogation (5)
51:25;56:8;91:10;
112:3,15
subsequently (1)
68:2
substantially (2)
110:23;111:3
substantive (4)
102:14;103:4;
106:11;110:9
substantively (1)
70:3
substituted (1)
50:8
sub-trusts (1)
112:10
succeeding (1)
73:3

successful (1)
36:11
successfully (1)
59:23
sue (7)
11:8,13,14,14;13:13;
17:1;24:11
sued (6)
6:9;11:9,20;24:12;
26:12,13
sues (1)
6:2
suffered (1)
24:6
suffers (1)
25:7
sufficient (1)
108:8
suggest (3)
66:15;88:18;93:25
suggested (1)
13:11
suggesting (1)
79:8
suggestion (1)
65:23
suggestions (1)
69:23
suggests (1)
33:18
suing (2)
18:18,20
suit (1)
24:11
summaries (1)
122:1
summary (25)
10:4,6;21:20;77:7;
83:6,11,13,25;84:11,
15;86:6,7,18;88:19;
90:2,3;91:22;110:13,
17;111:8;117:11;
120:17,24;121:4,18
sunlight (6)
54:19,21,24;55:1,14,
14
superior (17)
5:2;7:25;9:14;10:14;
11:24;13:22;14:3,23;
15:13;16:5;17:8;23:22;
24:2,13;25:13;27:2,22
support (6)
56:21;64:16;67:4;
70:23;96:22;103:1
supported (1)
15:8
supporting (1)
46:12
supposed (9)
13:16;28:2;33:20;
42:14;46:9;49:6,7;
121:6,8
sure (27)

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 143
of 146

12:6;19:16;20:10,16;
21:11;24:24;25:2;
34:24;35:3;48:7,8;
54:21;59:3;69:13;
70:15;72:2;82:3;90:7,
24;92:21,22,24;94:17;
99:9,23;101:2,17
**surface (1)**
104:22
**surprise (1)**
81:6
**survey (2)**
71:21,22
**SurveyMonkey (1)**
49:23
**survives (1)**
34:6
**survivor (1)**
42:19
**survivors (6)**
42:21;43:19;46:16;
55:3,11;74:17
**susceptible (1)**
10:4
**suspect (2)**
74:20;123:23
**suspicion (1)**
113:17
**sustained (2)**
12:18,20
**switch (2)**
12:1;13:14
**system (5)**
46:17;47:9,10;49:9;
62:18

**T**

**table (2)**
38:9;52:9
**tactic (1)**
10:23
**tactics (1)**
33:13
**talk (12)**
6:7;48:3;56:12,24;
57:18;67:12;71:9;
79:11;81:5;94:20,22;
108:5
**talked (5)**
37:23;60:16;86:14;
103:7;118:7
**talking (5)**
44:14;108:12;109:5;
112:9;124:15
**tall (1)**
15:21
**task (1)**
115:6
**TCC (27)**
43:24;45:7;46:4;
51:23,25;53:2;54:16;
56:7,17;57:3;58:25;

59:15;60:18,20;65:4;
67:4,23;68:10;69:1,24,
25;71:2;75:5;86:10;
107:9,11,19
**TCC's (1)**
69:4
**team (4)**
59:16;65:4,5;69:2
**tear (3)**
6:10;52:12;54:16
**tearing (2)**
51:24;52:14
**technical (4)**
46:21;56:24;70:2;
72:21
**technique (1)**
106:7
**telling (4)**
16:2;46:3;73:4;
84:22
**tells (1)**
116:2
**temporal (1)**
36:22
**temporary (2)**
93:22;108:18
**tens (1)**
45:18
**term (1)**
90:13
**termination (1)**
12:21
**terms (4)**
5:15;6:21;43:11;
49:11
**test (1)**
20:11
**testimony (1)**
97:11
**Thanks (2)**
65:10;81:3
**that'll (1)**
98:14
**theories (1)**
21:17
**theory (2)**
21:17;41:20
**therefore (2)**
19:7;107:25
**thinking (2)**
40:15;107:23
**thinner (1)**
77:2
**thirteen (1)**
67:5
**thirty (1)**
58:21
**thorough (2)**
66:16;74:18
**thoroughly (1)**
74:19
**though (8)**
12:18,18;18:24;

20:12;33:14;49:10;
70:21;124:25
**thought (7)**
41:1;53:11;61:6;
89:20;92:7;103:14;
108:25
**thoughts (2)**
29:22;81:8
**thousands (4)**
45:18;47:11,11;61:3
**thread (3)**
15:5,6;39:1
**threading (1)**
17:13
**three (11)**
21:9;52:22;62:21,24;
64:1,22;71:19,20;
106:9;112:2;115:5
**threshold (2)**
33:21;34:15
**throw (4)**
75:20;77:10;87:5;
121:24
**throws (1)**
87:8
**tied (1)**
30:10
**tight (1)**
24:11
**till (2)**
23:20;77:3
**timeline (1)**
57:7
**times (2)**
62:10;79:2
**timing-wise (1)**
68:4
**tip (1)**
106:20
**title (3)**
17:9,10;85:4
**titles (2)**
83:14;85:22
**today (20)**
4:13;5:8;8:20;16:6;
18:10;31:5;40:25;41:2,
3;51:20,23;54:16;59:4;
68:13;70:7,18;94:19;
111:15;117:21;121:13
**today's (3)**
5:13;26:17;110:11
**together (12)**
17:21;27:14;31:19;
63:14;64:16;75:4,6;
98:2,6;117:25;122:16;
123:17
**told (16)**
9:22,23,24;33:24;
46:15;49:11,18;50:2;
79:3;87:18,19;88:7;
109:3;117:14;118:4;
121:2
**tool (1)**

7:12
**toolbox (3)**
7:12;74:2,14
**tools (2)**
74:2,14
**top (1)**
87:17
**topics (2)**
12:1;13:14
**tort (5)**
31:20;66:21;83:23;
84:8,22
**total (1)**
87:22
**touch (1)**
57:16
**touched (1)**
34:4
**touches (1)**
64:17
**touchstone (1)**
111:17
**towards (2)**
53:3;78:21
**track (2)**
89:12,14
**traditional (1)**
39:3
**tragedies (1)**
72:17
**trailed (1)**
41:19
**transmission (1)**
63:3
**transparency (3)**
76:5;78:10,15
**transparent (4)**
100:5,22;101:10;
117:24
**transpired (1)**
49:16
**travel (1)**
66:2
**treated (2)**
111:23;113:21
**treatment (4)**
83:11,13;90:3;121:4
**trespass (1)**
20:23
**trespassed (1)**
22:3
**trespassing (1)**
15:21
**trial (12)**
7:24;10:2,3,11;14:9,
11;20:22;25:18;61:13;
79:1;97:17;98:4
**trials (1)**
38:21
**tried (4)**
5:17;37:11;92:5,6
**tries (1)**
33:17

**triggers (1)**
101:4
**Trotter (1)**
112:20
**trouble (4)**
15:15;16:9,10;25:9
**troubles (1)**
11:21
**Troy (53)**
102:8,8,10,11,19,21;
103:9,15,18,21,22,25;
104:6,11,19,21,23;
105:3,11,25;106:13;
107:2,4,7,14,21;108:9,
11,24;109:3,7,16,23;
110:5,8,16,20;111:2,
14,16;112:5,8;113:2,6;
114:12,20,22;115:1,9,
20;117:6,9,14
**Troy's (2)**
109:14;118:14
**true (1)**
63:24
**trust (29)**
64:19;74:21,22;
91:10;105:4,14;107:9;
110:9,21;111:3,6,22,
25;112:3,3,4,5,8,20;
113:6,9,16;114:14,17;
117:1;120:16,16;
122:24;123:16
**trusts (6)**
111:25;112:2,9,14,
19;114:6
**trustworthy (1)**
74:23
**truth (2)**
24:8;48:17
**try (14)**
13:8,9;23:25;26:16;
31:9,11;32:20;34:11;
37:15;41:12;44:3;
75:15,25;118:10
**trying (25)**
6:20,22;15:4,6;19:5;
21:20;31:14;37:24;
39:1;56:23;62:17,18,
19,20;75:12,13;91:19;
99:6;100:5,24;101:12;
116:4;118:2;119:2;
121:11
**Tubbs (5)**
52:16,24;61:12;
64:11;75:23
**TUESDAY (1)**
4:1
**turn (2)**
34:22;117:19
**Turning (1)**
107:4
**twenty (2)**
66:11;69:17
**twenty-page (3)**

Min-U-Script®

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 144
of 146

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(17) surface - twenty-page

92:6;106:9;117:19
**twice (1)**
82:5
**two (26)**
5:3,16;6:7;8:5;
13:21;17:17,20;33:17;
43:3;59:21;60:18;63:2;
83:1,14,15;84:12;
85:22;86:3,13;87:25;
89:5;95:6;112:13;
115:5;119:25;121:6
**two-page (1)**
84:11
**type (1)**
105:22

**U**

**ultimately (2)**
61:9;64:14
**Um-hum (3)**
15:18;47:1;115:13
**unclean (1)**
30:3
**undecipherable (1)**
49:11
**under (13)**
6:24;9:11;18:23;
30:8;32:1,13;35:4;
62:11;67:21;68:12;
70:2;92:10;110:23
**underground (2)**
5:25;8:9
**underlying (2)**
20:25;23:11
**understood (1)**
109:21
**undo (2)**
75:7,24
**undue (1)**
15:13
**unfair (1)**
12:21
**unfeasible (1)**
29:15
**unfold (1)**
31:16
**unfortunately (3)**
26:22;50:7;86:19
**UNIDENTIFIED (2)**
58:23;110:15
**unimpaired (1)**
119:7
**UNISON (1)**
4:5
**United (2)**
116:13;117:1
**unless (2)**
55:12;101:9
**unlike (1)**
16:22
**unraveled (2)**
68:7,9

**unrejectable (1)**
26:19
**unrelated (1)**
4:16
**unsecured (4)**
35:5,14;119:7,12
**unsuccessful (2)**
32:17;37:18
**untenable (1)**
31:15
**up (45)**
4:7;5:4,17;8:3;10:10,
14;13:12;17:11;19:12;
21:18;26:7,11;31:11;
51:24;52:12,14;54:16;
68:16,18,19;71:4;
75:23,24,24;77:21;
91:11;94:21;97:10;
98:6;7;99:13;100:12;
101:11,12;104:21;
106:16;109:19;113:7;
114:5;115:20;118:6;
120:6;123:14,22,24
**upfront (1)**
30:4
**upgrade (1)**
29:6
**upheld (1)**
12:16
**upon (9)**
9:23;16:15;36:5;
46:4,7;48:3;50:21;
70:20;77:25
**upsetting (1)**
43:24
**urge (2)**
70:23;106:14
**use (6)**
33:12;36:7;90:13;
115:4;117:23;124:4
**using (3)**
60:21;85:22;91:20
**usual (1)**
45:12
**usually (1)**
11:14
**Utilities (1)**
124:13

**V**

**Valentine's (1)**
81:18
**valid (1)**
23:21
**validity (1)**
31:4
**values (1)**
78:7
**various (3)**
17:17;102:11;105:12
**version (1)**
120:16

**versus (1)**
57:2
**vested (1)**
66:3
**victim (24)**
60:21;61:1;62:14;
63:1,4;69:10;83:6,10,
10,12,13;90:1,2,3;
105:4,14;111:6,20,25;
112:1,5,8;120:17;
121:4
**victims (31)**
48:2;49:18;50:5,14;
54:4;56:18,20;59:11,
16,18;60:18;61:3,14;
62:23;63:5;64:13,15;
66:10;67:17;68:15;
69:11,16,20;71:3,12;
72:7;73:6;75:23;78:16;
112:4,14
**victims' (2)**
63:9;65:24
**view (8)**
22:13;23:17;26:13;
30:13;70:12;75:13,14;
79:1
**viewing (1)**
108:21
**views (6)**
53:3;57:16;58:2;
67:10;75:8;78:18
**vigilant (1)**
59:11
**virtually (2)**
10:2;16:22
**vis-a-vis (1)**
40:20
**Vlazakis (28)**
4:14;20:9;22:3;
28:14,18,21,24;29:1,3,
10,12,14,19,24;30:13,
6,8,16,19,21;34:18,21,
24;35:3,8,21;36:16
**Vlazakises (12)**
6:3,12,19;7:5;8:16;
13:23;14:17;37:13,16;
38:1,8;39:6
**Vlazakises' (1)**
13:19
**voice (5)**
55:17;69:20;71:15;
72:1;99:10
**vote (42)**
46:16,24;47:4,4,15;
48:2,12;51:18;58:9;
63:9,14;67:13;69:9;
70:19,23;93:18,21,22,
23;105:4,8,9,9,19,22,
23;106:18,19,21;
110:2;111:11,12;
115:22,24;118:21;
119:5;121:15;122:18,
19;124:3,3,7

**voted (2)**
67:23;124:8
**voter (3)**
60:14;63:4;114:16
**voters (1)**
46:23
**voter's (4)**
46:24;47:2;51:15;
111:13
**votes (3)**
48:6;62:23;106:22
**voting (19)**
59:20;61:9;62:23;
63:1;64:14;93:15;
102:23;103:25;104:4,
6,25;105:15;106:24;
108:19;109:19,22;
119:4;122:21;123:5

**W**

**Wait (8)**
48:13;52:11;77:3;
82:24;94:21;96:18;
101:23;102:17
**waiting (1)**
21:10
**wall (31)**
5:17;6:7,10;9:20,20;
13:15,16,19,20,25;
14:8,11;15:20;16:3;
17:11,15,16,21;19:19;
20:3;21:18,18;25:15;
29:7;31:19,21,22;32:1;
37:3,12,23
**walls (1)**
15:24
**wall's (1)**
21:7
**wants (4)**
28:17;31:10;47:5;
57:15;58:14,24;65:21;
105:23;108:5;117:3
**warning (1)**
87:24
**Warren (1)**
124:5
**waste (2)**
41:13;119:3
**way (21)**
13:9,10;19:4;32:20;
33:9,10;36:8,21;38:21,
24;44:9;46:17;49:9,20;
51:15;66:14;75:5;
94:10;103:9;106:24;
110:4
**ways (1)**
37:11
**website (7)**
45:2,3,5,7,8,22;69:4
**week (15)**
81:13;83:22;86:15;
88:24,25;93:13;94:16;

95:10,11;98:3;117:1,8,
17;122:13;125:16
**weekend (2)**
86:20;125:17
**weeks (1)**
46:11
**weigh (2)**
100:6;103:13
**Weil (1)**
63:14
**Weiss (1)**
124:12
**Welcome (3)**
11:17;59:8;77:17
**well-being (2)**
43:14;73:6
**weren't (3)**
23:13;63:21;96:13
**West (1)**
8:10
**Wharton (1)**
124:12
**what's (25)**
14:14;17:16;25:12;
30:17,20,23;43:9,10;
44:17;71:12;83:8,21;
85:13;87:16,18;88:22;
97:21;98:5;99:2;
104:22;109:1,14;
112:17;116:22;122:24
**Whereupon (1)**
125:18
**whichever (2)**
31:10;105:23
**whole (10)**
18:25;22:20;24:19;
28:9;32:3,9;47:23;
68:6;75:21;76:7
**whoops (1)**
110:2
**who's (5)**
5:6;18:18,20;58:24;
105:3
**whose (1)**
32:8
**wildfire (1)**
91:10
**willing (2)**
39:8;69:22
**Willoughby (1)**
118:13
**wings (1)**
21:10
**Winthrop (19)**
111:10;120:6,9,10,
11,15,21;121:1,6,11,
16,20,23;122:3,11,15,
23;123:1,7
**wish (3)**
79:18;81:8;104:11
**wishes (2)**
58:12,13
**within (2)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(18) twice - within

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 145
of 146

20:17;57:7

**without (7)**
30:11;31:22;42:4;
57:17;66:7;97:23;
102:25

**witness (2)**
97:4;98:11

**witnesses (2)**
96:12,14

**woke (1)**
99:13

**wonder (1)**
73:24

**wondered (1)**
91:11

**wood (1)**
99:24

**word (8)**
80:3;85:5,24;92:19;
99:25;107:9;117:24;
121:17

**words (12)**
20:2;24:9;62:1,13;
83:16;85:5,7,19;91:14;
114:14;115:3;117:23

**work (13)**
62:7;64:11,11,18,24;
65:1;69:18;84:13;
104:18;106:10;120:1,
2;123:3

**workable (1)**
117:17

**worked (4)**
60:20;64:12;67:15;
123:22

**working (7)**
46:8;62:8;65:8;
80:22;86:8;113:16;
124:22

**works (1)**
49:9

**world (9)**
11:17;50:17,18;66:3,
3;72:14;74:3,15;118:1

**worry (5)**
64:6;65:7,8;93:22;
109:5

**worse (2)**
61:8;73:14

**worst (1)**
53:12

**worth (1)**
36:9

**wounds (2)**
22:7,9

**wrap (1)**
31:11

**writing (1)**
43:19

**written (3)**
44:7;54:20;86:7

**wrong (3)**
79:7,19;114:14

## Y

**year (2)**
4:15;18:14

**years (9)**
4:20,22;5:3;21:7,9,9,
14;32:15;64:22

**yesterday (2)**
86:19;95:3

## 1

**1 (1)**
102:1

**1.179 (1)**
112:22

**1.79 (1)**
112:8

**10 (1)**
89:16

**1054 (1)**
57:7

**10th (6)**
110:25;112:16;
113:10;114:6;116:14;
117:10

**11 (1)**
4:1

**1122 (1)**
109:12

**11th (2)**
52:3;115:23

**12:24 (1)**
125:18

**12:30 (1)**
116:9

**1222 (1)**
109:12

**13 (3)**
101:25;102:1,4

**13,5- (1)**
61:22

**1322b (2)**
109:13,13

**17th (2)**
95:22;98:13

**18th (1)**
104:3

**19th (11)**
82:9;87:23;92:25;
95:9,10;96:10;97:5;
98:5,9;102:1,3

## 2

**2 (3)**
90:20;104:1,2

**2017 (3)**
5:19;32:16,17

**2020 (2)**
4:1;52:5

**21 (4)**
83:5;85:2,16;86:17

**21st (14)**
60:16;83:17,23;
87:16,19;88:1,6,14,17;
89:1;110:15,16,17;
120:18

**240 (1)**
71:22

**24th (1)**
60:16

**25th (2)**
98:16,17

**26th (6)**
95:19,24,25;97:21;
98:12,14

**28th (9)**
88:8,22;89:2,3;91:8;
107:7;110:14;121:8;
122:8

**2g (1)**
70:22

**2k (1)**
71:2

## 3

**3 (6)**
63:7;90:12,20;
102:16,19;122:7

**30,000 (1)**
60:19

**3013 (5)**
108:20,22;109:1,8;
119:22

**3018 (1)**
108:17

**30th (1)**
76:1

**31st (1)**
60:19

**365 (1)**
25:12

**3rd (2)**
116:25;123:16

## 4

**4 (3)**
83:5;102:15;108:16

**400,000 (1)**
81:20

**450,000 (1)**
87:5

**4cv (2)**
90:16,21

**4cvA (1)**
90:16

## 5

**5 (5)**
83:9;84:6;86:22,24;
122:8

**5700 (1)**
85:12

**59 (1)**
56:24

**5th (2)**
88:8;107:7

## 6

**60 (1)**
56:24

**6th (4)**
83:4;108:15,22;
120:20

## 7

**70,000 (8)**
46:15;49:11,25;
55:10;73:13,16;74:17;
125:5

**738 (1)**
31:1

**756 (1)**
31:1

## 8

**80,000 (1)**
60:19

**8-K (1)**
45:4

## 9

**9th (2)**
91:23;92:25

Case: 19-30088    Doc# 5740    Filed: 02/12/20    Entered: 02/12/20 12:40:14    Page 146
of 146