1  XAVIER BECERRA
   Attorney General of California
2  BRIAN D. WESLEY, SBN 219018
   Supervising Deputy Attorney General
3  MATTHEW C. HEYN, SBN 227474
   300 South Spring Street, Suite 1702
4  Los Angeles, CA 90013
   Telephone: (213) 296-6000
5  Fax: (916) 731-2144
   Brian.Wesley@doj.ca.gov
6  Matthew.Heyn@doj.ca.gov

7  STEVEN H. FELDERSTEIN, SBN 059678
   PAUL J. PASCUZZI, SBN 148810
8  FELDERSTEIN FITZGERALD
   WILLOUGHBY PASCUZZI & RIOS LLP
9  500 Capitol Mall, Suite 2250
   Sacramento, CA 95814
10 Telephone: (916) 329-7400
   Fax: (916) 329-7435
11 sfelderstein@ffwplaw.com
   ppascuzzi@ffwplaw.com
12
   *Attorneys for California Governor's Office of*
13 *Emergency Services*

14              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
15                  SAN FRANCISCO DIVISION

16 In re:                          | Bankruptcy Case
                                   | No.  19-30088 (DM)
17 PG&E CORPORATION
                                   | Chapter 11
18    - and –                      | (Lead Case)
                                   | (Jointly Administered)
19 PACIFIC GAS AND ELECTRIC
   COMPANY,                        | **CAL OES'S OPPOSITION TO OFFICIAL**
20                                 | **COMMITTEE OF TORT CLAIMANTS'**
              Debtors.             | **OMNIBUS OBJECTION TO ITS CLAIMS**
21 ☐     Affects PG&E Corporation
                                   | Date:    February 26, 2020
22 ☐     Affects Pacific Gas and   | Time:    10:00 a.m. (Pacific Time)
         Electric Company          | Place:   United States Bankruptcy Court
23 ☑     Affects both Debtors      |          Courtroom 17, 16th Floor
                                   |          San Francisco, CA 94102
24

25        The California Governor's Office of Emergency Services ("**Cal OES**"), for itself and no

26 other agency, hereby opposes the *Omnibus Objection of the Official Committee of Tort Claimants*

27 *(Substantive) to Claims Filed by California Governor's Office of Emergency Services (Claim*

28 *Nos. 87748, 87754, & 87755)* [Doc. No. 5096] (the "**Omnibus Objection**" or "**Obj.**").

# TABLE OF CONTENTS

I.  INTRODUCTION. ...................................................................................................10

II.  FACTS. ............................................................................................................11

    A.  CAL OES AND FEMA ARE OBLIGATED TO PROVIDE DISASTER RELIEF. ...............11

    B.  FEMA AND CAL OES WILL PROVIDE OVER $2.9 BILLION IN PUBLIC ASSISTANCE IN RESPONSE TO THE WILDFIRES. .........................................13

    C.  FEMA REQUIRES CAL OES TO PURSUE POTENTIAL TORT CLAIMS. ......................13

III.  ANALYSIS. ........................................................................................................15

    A.  HEALTH AND SAFETY CODE SECTION 13009 AND 13009.1 PROVIDE CAL OES A STATUTORY RIGHT TO RECOVER FOR RESPONDING TO THE WILDFIRES. ......................................................................................................15

    B.  HEALTH AND SAFETY CODE SECTION 13009.6 PROVIDES CAL OES A RIGHT TO RECOVER FOR ITS DEBRIS REMOVAL PROGRAM. .................................19

    C.  CAL OES HAS SUBROGATION RIGHTS. ...................................................21

        1.  Equitable Subrogation. ..................................................................21

        2.  Statutory Subrogation. .................................................................26

    D.  UNDER THE COLLATERAL SOURCE DOCTRINE AND THE STAFFORD ACT, CAL OES HAS A RIGHT AND DUTY TO RECOVER FEMA DISASTER RELIEF. ................33

    E.  PG&E AGREED TO TOLL THE STATUTE OF LIMITATIONS FOR THE BUTTE FIRE. ...............................................................................................34

    F.  THE MARSHALING DOCTRINE DOES NOT APPLY. .............................................35

    G.  CAL OES HAS SOVEREIGN IMMUNITY FOR ITS WASTE REMOVAL; THE TCC HAS NOT ALLEGED CONDUCT THAT CONSTITUTES UNCLEAN HANDS. ...................36

IV.  CONCLUSION ....................................................................................................37

# TABLE OF AUTHORITIES

Page(s)

CASES

*Acosta v. Sothern California Rapid Transit District*
   2 Cal. 3d 19 (1970) ...................................................................................33

*Alisal Sanitary District v. Kennedy*
   180 Cal. App. 2d 69 (1960)........................................................................24

*Allstate Insurance Co. v. Mel Rapton, Inc.*
   77 Cal. App. 4th 901 (2000) ......................................................................23

*Anderson v. United States*
   55 F.3d 1379 (9th Cir. 1995)......................................................................29

*Basin Oil Co. v. Baash-Ross Tool Co.*
   125 Cal. App. 2d 578 (1954).......................................................................32

*Black v. Secretary of Health & Human Servs.*
   93 F.3d 781 (Fed. Cir. 1996).......................................................................17

*Caito v. United California Bank*
   20 Cal. 3d 694 (1978) ................................................................................22

*City & County of San Francisco v. Ho Sing*
   51 Cal. 2d 127 (1958) ................................................................................24

*City of Flagstaff v. Atchison, Topeka & Santa Fe Railway Co.*
   719 F.2d 322 (9th Cir. 1983).......................................................................15

*City of Monterey v. Carrnshimba*
   215 Cal. App. 4th 1068 (2013) ...................................................................32

*City of San Jose v. Monsanto Co.*
   231 F. Supp. 3d 357 (N.D. Cal. 2017) ........................................................32

*Cnty. of Ventura v. Southern California Edison*
   85 Cal. App. 2d 529 (1948).............................................................16, 17, 19

*Cochran v. Herzog Engraving Co.*
   155 Cal. App. 3d 405 (1984).......................................................................36

*Cuda v. Nigro (In re Northview Motors, Inc.)*
   202 B.R. 389 (Bankr. W.D. Pa. 1996) .......................................................27

*Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*
   890 F.2d 165 (9th Cir. 1989).......................................................................37

*Employers Mutual Liability Insurance Co. of Wisconsin v. Pacific Indemnity Co.*
    167 Cal. App. 2d 369 (1959)..........................................................................24

*Estate of Kemmerrer*
    114 Cal. App. 2d 810 (1952)..........................................................................22

*Federal Insurance Co. v. Allen*
    13 Cal. App. 3d 648 (1970)............................................................................25

*Ferraro v. Southern California Gas Co.*
    102 Cal. App. 3d 33 (1980)............................................................................23

*Fidelity National Title Insurance Co. v. IRS*
    907 F.2d 868 (9th Cir. 1990).........................................................................23

*Fireman's Fund Insurance Co. v. Maryland Casualty Co.*
    21 Cal. App. 4th 1586 1595-96 (1994) ........................................................22

*Fireman's Fund Insurance Co. v. Maryland Casualty Co.*
    65 Cal. App. 4th 1279 (1998) .......................................................................21

*Flahive v. City of Dana Point*
    72 Cal. App. 4th 241 .....................................................................................32

*Ford v. United States*
    88 F. Supp. 263 (1950)..................................................................................24

*Garbell v. Conejo Hardwoods, Inc.*
    193 Cal. App. 4th 1563 (2011) .....................................................................23

*Glaviano v. Sacramento City Unified School District*
    22 Cal. App. 5th 744 (2018) .........................................................................17

*Goncharov v. Uber Technolgies, Inc.*
    19 Cal. App. 5th 1157 (2018) .......................................................................30

*Grant v. de Otte*
    122 Cal. App. 2d 724 (1954)........................................................................23

*Hamada v. Far East National Bank (In re Hamada)*
    291 F.3d 645 (9th Cir. 2002)................................................................ *passim*

*Hawaii v. FEMA*
    294 F.3d 1152 (9th Cir. 2002)......................................................................14

*Helfend v. Southern California Rapid Transit District*
    2 Cal. 3d 1 (1970) ........................................................................................33

*In re Amatex Corp.*
  110 B.R. 168 (Bankr. E.D. Pa. 1990)................................................................27

*In re Baldridge*
  Case No. 4-02-BK-06383EWH, 2007 WL 725737 (Bankr. D. Ariz., Mar. 6,
  2007) ..............................................................................................35, 36

*In re Baldwin-United Corp.*
  55 B.R. 885 (Bankr. S.D. Ohio 1985)..............................................................27

*In re Brazier Forest Products, Inc.*
  921 F.2d 221 (9th Cir. 1990).........................................................................35

*In re Celotex Corp.*
  289 B.R. 460 (Bankr. M.D. Fla. 2003) ...........................................................27

*In re Dow Corning Corp.*
  244 B.R. 705 (Bankr. E.D. Mich. 1999) .........................................................28

*In re Fiesole Trading Corp.*
  315 B.R. 198 (Bankr. D. Mass. 2004).........................................................27, 28

*In re Johnson's Estate*
  240 Cal. App. 2d 742 (1966)..........................................................................22

*In re Lull Corp.*
  162 B.R. 234 (Bankr. D. Minn. 1993) ............................................................27

*In re The Medicine Shoppe*
  210 B.R. 310 (Bankr. N.D. Ill. 1997)..............................................................26

*In re Missionary Baptist Foundation of America, Inc.*
  667 F.2d 1244 (5th Cir. 1982).........................................................................26

*In re Photo Mech. Servs.*
  179 B.R. 604 (Bankr. D. Minn. 1995) ............................................................27

*In re Spirtos*
  103 B.R. 240 (Bankr. C.D. Cal. 1989).........................................................26, 27

*In re Townview Nursing Home*
  28 B.R. 431 (Bankr. S.D.N.Y. 1983)...............................................................17

*In re Trasks' Charolais*
  84 B.R. 646 (Bankr. D.S.D. 1988)...................................................................27

*In re Wey*
  827 F.2d 140 (7th Cir. 1987)...........................................................................34

*In re White Motor Corp.*
731 F. 2d 372 (6th Cir. 1984)..........................................................................28

*J.G. Boswell Co. v. W. D. Felder & Co.*
103 Cal. App. 2d 767 (1951).............................................................................25

*Jolley v. Chase Home Finance, LLC*
213 Cal. App. 4th 872 (2013) ..........................................................................34

*Lucent Technologies, Inc. v. Microsoft Corp.*
544 F. Supp. 2d 1080 (S.D. Cal. 2008)............................................................37

*Mata v. PG&E Co.*
224 Cal. App. 4th 309 (2014) ..........................................................................31

*McCarthy v. Kurkjian*
65 Cal. App. 569 (1924)....................................................................................35

*McKay v. California*
8 Cal. App. 4th 937 (1992) ...............................................................................29

*McWaters v. FEMA*
408 F. Supp. 2d 221 (E.D. La. 2005) ...............................................................24

*Morgan Creek Residential v. Kemp*
153 Cal. App. 4th 675 (2007) ..........................................................................24

*Mort v. United States*
86 F.3d 890 (9th Cir. 1996)..............................................................................22

*New York v. Moulds Holding Corp.*
196 F. Supp. 2d 210 (N.D.N.Y. 2002) .............................................................18

*People ex rel. Grijalva v. Superior Court*
159 Cal. App. 4th 1072 (2008) ........................................................................37

*People ex rel. Orloff v. Pacific Bell*
31 Cal. 4th 1132 (2003) ............................................................................30, 31

*People v. Southern Pacfic Co.*
139 Cal. App. 3d 627 (1983).............................................................................16

*Precision Instrument Manfacturing Co. v. Auto. Maintinace Machine Co.*
324 U.S. 806 (1945)...........................................................................................37

*Sapiano v. Williamsburg National Ins. Co.*
28 Cal. App. 4th 533 (1994) ............................................................................25

## <u>TABLE OF AUTHORITIES (continued)</u>

*Savings Bank of St. Helena v. Middlekauff*
    113 Cal. 463 (1896) ...................................................................................35

*Schaeffer v. Gregory Village Partners*
    105 F. Supp. 3d 951 (N.D. Cal. 2015) ....................................................32

*Shedoudy v. Beverly Surgical Supply Co.*
    100 Cal. App. 3d 730 (1980).....................................................................35

*St. Paul Fire & Marine Insurance Co. v. Murray Plumbing & Heating Corp.*
    65 Cal. App. 3d 66 (1976).........................................................................23

*State Bar of California v. Statile*
    168 Cal. App. 4th 650 (2008) ...................................................................24

*State Farm Fire & Cas. Co. v. East Bay Municipal Utility District*
    53 Cal. App. 4th 769 (1997) .....................................................................24

*Teselle v. McLoughlin*
    173 Cal. App. 4th 156 (2009) ...................................................................34

*Vander Lind v. Superior Court*
    146 Cal. App. 3d 358 (1983).....................................................................31

*Wetzler v. Cantor*
    202 B.R. 573 (D. Md. 1996) .....................................................................26

**STATUTES**

11 U.S.C.
    § 101......................................................................................................27
    § 509.............................................................................................26, 27
    § 558......................................................................................................34

29 U.S.C.
    § 1322....................................................................................................28

## TABLE OF AUTHORITIES (continued)

42 U.S.C.
 §§ 300aa–10 *et seq.* ..........................................................................17
 § 1395y ..............................................................................................28
 § 2651 ................................................................................................28
 § 5155 ................................................................................................14
 §§ 5170-5189h ...................................................................................13
 § 5172 ................................................................................................12
 § 5173 ................................................................................................12
 § 5187 ................................................................................................12
 § 9607 ................................................................................................18

California Public Resources Code
 § 4292 ................................................................................................29
 § 4293 ................................................................................................29
 § 4421 ................................................................................................30
 § 4422 ................................................................................................30

California Civil Code
 § 1714 ................................................................................................33
 § 3433 ................................................................................................35
 § 3491 ................................................................................................32
 § 3501 ................................................................................................32

California Evidence Code
 § 669 ..................................................................................................30

California Government Code
 § 815 ..................................................................................................36
 § 8585 ...........................................................................................11, 23
 § 8686 ................................................................................................13

Califonia Health & Safety Code
 § 13001 ..............................................................................................30
 § 13007 .........................................................................................29, 30
 § 13009 ....................................................................................... *passim*
 § 13009.1 ..........................................................................15, 17, 16, 30
 § 13009.6 ..........................................................................19, 20, 21

California Public Resources Code
 § 4180 ................................................................................................32
 § 4292 .........................................................................................29, 32
 § 4293 ................................................................................................32

## TABLE OF AUTHORITIES (continued)

California Public Utilities Code
  § 415...................................................................................................................................29
  § 2106.............................................................................................................................30, 31

California Disaster Assistance Act.................................................................................11, 13

Robert T. Stafford Disaster Relief and Emergency Assistance Act........................ *passim*

Emergency Management Assistance Compact,
  PL 104–321, October 19, 1996, 110 Stat. 3877.......................................................16

### REGULATIONS

44 C.F.R. § 204.62(c).................................................................................................14

44 C.F.R. § 206.203(b)...............................................................................................12

44 C.F.R. § 206.223(e)...............................................................................................12

Cal. Code Regs., Title 19
  § 2910...........................................................................................................................25
  § 2920...........................................................................................................................24
  § 2925...........................................................................................................................24

### COURT RULES

Local Bankruptcy Rule 3007-1(b) ..............................................................................37

### OTHER AUTHORITIES

5 ALAN N. RESNICK, COLLIER ON BANKRUPTCY ¶ 558.01[2] ...........................................34

RESTATEMENT (SECOND) OF TORTS (1979)...................................................................33

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT (2011) .................31

WITKIN, CALIFORNIA PROCEDURE, PLEADING (5th ed. 2008) .........................................33

## I. INTRODUCTION.

From 2015 to 2018, the people of Northern California suffered three of the largest wildfire events in the State's history. In response to the Butte Fire, the North Bay Fires,[1] and the Camp Fire (collectively, the "**Wildfires**"), state and local agencies immediately mobilized to provide necessary services to save lives and property. To speed funding to communities impacted by the wildfires, the U.S. President and the California Governor issued three disaster declarations. Under those disaster declarations, Cal OES anticipates it will provide over $2.69 billion in disaster assistance funding for fires that PG&E caused. Among many other things, this funding reimburses local and state agencies for costs of fire suppression, emergency aid, hazardous substance removal, and rebuilding public property. Most of this money (all but about $290 million) has come from FEMA. Recipients of this FEMA disaster relief are required to make commercially reasonable efforts to recover from parties liable for the damages.

In its Omnibus Objection, the TCC does not contest that PG&E's negligence and violations of law caused the damages for which Cal OES incurred billions of dollars in costs. Instead, the TCC argues that, as a matter of law, because the damages PG&E negligently caused were so vast and devastating as to trigger disaster declarations, PG&E is not responsible for its acts to the extent FEMA and Cal OES provided disaster relief. In so arguing, the TCC ignores specific provisions in California law in favor of the far more general "free public services doctrine." The TCC's objection should be overruled for two reasons: First, as the TCC admits, the free public services doctrine has no application to rights of recovery specifically embodied in statutes. Because Cal OES incurred costs of fire suppression, emergency services and hazardous waste removal, it has a right to recover under the California Health and Safety Code. Second, as discussed below, Cal OES paid state and local agencies for rebuilding public property and restoring private property for individuals victimized by the fires. This was its duty under the

---

[1] As usually used in these proceedings, the term North Bay Fires encompasses 21 fires that burned in Northern California in October 2017. The California Department of Forestry and Fire Protection ("**CAL FIRE**") found that PG&E did not negligently cause the Tubbs Fire and Redwood Fires. As such, the term "North Bay Fires" in this brief and Cal OES's proofs of claim only encompasses the 19 fires that CAL FIRE determined were caused by PG&E.

Stafford Act, the California Disaster Assistance Act (CDAA) and related regulations. Under the Bankruptcy Code and common-law principles of equitable subrogation, Cal OES stands in the shoes of those victims and has the right to collect for the harm PG&E caused.

Cal OES will be ready, willing, and able to prove that the costs that it incurred are costs for which PG&E is liable because PG&E's negligence and violations of the law caused the Wildfires. The TCC's *prima facia* attack on the legal validity of Cal OES claims must fail because Cal OES has stated multiple grounds under which it can obtain relief. The Court should overrule the Omnibus Objection completely or, at the very least, set an evidentiary hearing to determine the allowable amount of Cal OES's claims.[2]

## II. FACTS.

### A. Cal OES and FEMA Are Obligated to Provide Disaster Relief.

Cal OES is an agency within the California Governor's Office. It is "responsible for the state's emergency and disaster response services for natural, technological, or manmade disasters and emergencies, including responsibility for activities necessary to prevent, respond to, recover from, and mitigate the effects of emergencies and disasters to people and property." Cal. Gov't Code § 8585(e). Following a declared disaster, Cal OES mobilizes federal and state resources to suppress fires and provide emergency relief. It then reimburses state and local agencies for emergency work and the costs of rebuilding.

The Robert T. Stafford Disaster Relief and Emergency Assistance Act (as amended, the "**Stafford Act**") authorizes FEMA to provide Federal assistance when the magnitude of an incident or threatened incident exceeds a state and local government's capabilities to respond or

---

[2] In addition, Cal OES, along with other California State Agencies holding fire-related claims, reserve the right to object to the classification of the California State Agencies' fire-related claims with the tort fire claims of non-government creditors in the Fire Victim Trust under the Debtors' and Shareholders' current chapter 11 plan dated January 31, 2020 [Dkt. No. 5590]. The Debtors' plan recently transformed from a "pot" plan to a settlement plan, but the Debtors have not settled the fire-related claims of the state and federal government agencies. The Debtors have improperly placed the distinguishable state and federal government agency fire-related claims in the same class with non-government tort fire victims to gerrymander voting and silence the rights of state and federal government agencies to recover their fire-related claims in this solvent bankruptcy case where the shareholders retain their interests.

recover. *See, e.g.*, 42 U.S.C. §§ 5172, 5173. Under its Public Assistance ("**PA**") Program, FEMA funds emergency work and permanent work including: (i) debris removal, (ii) emergency protective measures, (iii) repairing and rebuilding roads and bridges; (iv) repairing and rebuilding water control facilities; (v) repairing and rebuilding public buildings; (vi) repairing and rebuilding utilities; and (vii) repairing and rebuilding parks and other public facilities. FEMA funding is tied directly to eligible work, and must be adequately documented, authorized, necessary and reasonable.

The total cost to implement public assistance is generally funded by a combination of Federal, state, and local sources. Cost Share, also known as "non-Federal share," or "match," is the portion of the costs of a federally assisted project or program not borne by the Federal government. 44 C.F.R. § 206.203(b). To meet cost-sharing requirements, the non-Federal contributions must be reasonable, allowable, allocable, and necessary under the grant program and must comply with all Federal requirements and regulations. After approving applications, the Federal government and Cal OES enter into an arrangement called an "obligation." Once funds are "obligated," FEMA and Cal OES have promised to spend the money, either immediately or in the future, subject to auditing requirements. This obligation is a legally binding agreement that will result in outlays, immediately or in the future. FEMA and Cal OES obligate funds only after a project meets Stafford Act eligibility requirements. Generally, Cal OES is the formal recipient of FEMA federal assistance; Cal OES is then responsible for disbursing the money to applicants, which include cities, counties, school districts, water districts, California state agencies, and other states' agencies (where other states have provided disaster assistance).

In addition to the PA Program, the Stafford Act authorizes the President to provide fire management assistance in response to a declared fire. Under the Fire Management Assistance Grant ("**FMAG**") Program, FEMA provides assistance in the form of grants for equipment, supplies, and personnel costs to any State, Indian tribal government, or local government for the mitigation, management, and control of any fire on public or private forest land or grassland that threatens such destruction as would constitute a major disaster. 42 U.S.C. § 5187. As with amounts provided under the PA Program, amounts under the FMAG Program are "obligated" once granted and are subject to a "Cost Share."

## B. FEMA and Cal OES Will Provide Over $2.9 Billion in Public Assistance in Response to the Wildfires.

As this Court is well aware, in 2015, 2017 and 2018, PG&E caused a series of wildfires that devastated many cities and counties in Northern California. In 2015, the Butte Fire burned 70,868 acres, resulted in two fatalities and destroyed 965 structures (including 549 homes). In 2017, the North Bay Fires (and certain other fires that ignited at the same time, including the Tubbs Fire) burned over 245,000 acres, damaged or destroyed 14,700 homes, and resulted in 44 fatalities. In 2018, the Camp Fire consumed 153,336 acres, caused 85 civilian fatalities, and destroyed 13,972 homes.

State and local agencies applied for PA grants and FMAG grants for their costs in responding to the Wildfires. As required by the California Disaster Assistance Act and the Stafford Act, FEMA and Cal OES approved many of those FMAG and PA projects. Cal. Gov't Code § 8686; 42 U.S.C. §§ 5170-5189h. Cal OES filed a proof of claim for each of the Wildfires. (Declaration of Matthew Heyn ["Heyn Decl."], Exs. A - C.) As set forth in the schedules attached to Cal OES's proofs of claim (the "**Schedules**"), FEMA and Cal OES paid or assumed a share of the costs of those projects. The total funds Cal OES anticipates it will pay for the Wildfires (excluding any amounts claimed by CAL FIRE and the California Department of Toxic Substances Control) are as follows:

| Public Assistance | Federal Share | State Share | Totals |
|---|---|---|---|
| **Total for Butte Fire** | $75,478,618 | $23,876,120 | $99,354,738 |
| **North Bay Fires** | $257,154,857 | $24,075,731 | $281,230,588 |
| **Camp Fire** | $2,072,215,721 | $241,263,921 | $2,313,479,642 |
| **Total for all Fires** | $2,404,849,196 | $289,215,772 | **$2,694,064,968** |

As set forth in Cal OES's proofs of claim, nearly all of the funds for the Butte Fire and the North Bay Fires were fully obligated and spent prior to January 29, 2019, the date PG&E filed for bankruptcy. (Heyn Decl. Ex A at 9; Ex B at 11-12.) However, a substantial portion of the disaster assistance for the Camp Fire is in process and has not yet been obligated. (*Id.* Ex C at 9.)

## C. FEMA Requires Cal OES to Pursue Potential Tort Claims.

Under the Stafford Act, the President is required to "assure that no … person, business

concern, or other entity will receive [disaster] assistance with respect to any part of such loss as to which he has received financial assistance under any other program or from insurance or any other source." 42 U.S.C. § 5155(a). The President has authority to "establish procedures to ensure uniformity in preventing duplication of benefits." *Id.* § 5155(b)(2). FEMA has a cause of action against any person that receives Federal assistance that duplicates assistance "available" from another source:

> A person receiving Federal assistance for a major disaster or emergency shall be liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source.

*Id.* § 5155(c) ("**Section 5155(c)**"). FEMA treats potential tort recoveries as "benefits available to a person from another source" as defined in Section 5155(c).

In *Hawaii v. FEMA*, 294 F.3d 1152 (9th Cir. 2002), the Ninth Circuit Court of Appeals construed the obligations of the recipients of federal aid under Section 5155(c) to pursue potential claims against their insurers. In that case, Hawaii's insurers and FEMA provided overlapping financial assistance in response to a hurricane. *Id.* at 1154. Hawaii entered into a settlement with its insurers under which Hawaii accepted loss estimate payments from the insurers upfront (rather than waiting for possibly larger amounts later), and reimbursed FEMA with funds it received from its insurers. *Id.* at 1156. However, months after the settlement, FEMA's auditors concluded FEMA was entitled to additional amounts it spent repairing Hawaii's facilities because Hawaii could have obtained more from its insurers if it had waited. *Id.* at 1157. FEMA argued that this was duplicative assistance "available" to it under Section 5155(c). *Id.* at 1158. The Ninth Circuit Court of Appeal disagreed. However, it held that Section 5155(c) did sometimes require reimbursement beyond what a state actually received from its insurers via a settlement, if a settlement was not "commercially reasonable." *Id.* at 1160-64.

FEMA has adopted the Ninth Circuit standard in regulations requiring applicants (such as Cal OES) to pursue litigation against potential tortfeasors – and conditioning aid on doing so:

> If the applicant suspects negligence by a third party for causing a condition for which FEMA made assistance available under this Part, the applicant is responsible for taking all reasonable steps to recover all costs attributable to the negligence of the third party.

44 C.F.R. § 204.62(c); *see also* 44 C.F.R. § 206.223(e).

## III. ANALYSIS.

The TCC provides no evidence to refute the *prima facia* validity of Cal OES's claim. Rather, it argues that, assuming the allegations in Cal OES's claims are true, the claims should still be disallowed because "Cal OES failed to allege facts that, if true, would support a finding that the Debtors are liable to Cal OES." (Obj. at 7.)  The TCC's primary argument for disallowing Cal OES's proof of claim relies on two premises:  (A) Under the free public service doctrine, Cal OES can only collect for disaster relief if there is a statutory basis for doing so; (B) the statutes cited in Cal OES's proof of claim do not provide Cal OES a statutory basis for recovery because Cal OES did not itself provide those services (instead, Cal OES reimbursed other agencies for those services).

Both of the TCC premises are incorrect.  As described below, the California Health and Safety Code expressly provides Cal OES the right to recover its expenses for wildfire suppression, emergency evacuation, and hazardous substance cleanup in response to a wildfire. These costs are a substantial portion of the Cal OES claims.  As the TCC acknowledges (Opp. at 7, 11), the "free public services doctrine" does not impact a party's right of recovery under a statutory cause of action or for damage to public property.  See *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 324 (9th Cir. 1983).  Moreover, even if Cal OES had no statutory right of recovery, it could still recover the full amounts of its claims through subrogation.

### A. Health and Safety Code Section 13009 and 13009.1 Provide Cal OES a Statutory Right to Recover for Responding to the Wildfires.

Cal OES seeks recovery under California Health and Safety Code sections 13009 and 13009.1 ("**Sections 13009 and 13009.1**") for the millions of dollars that it paid to state and local agencies for fire suppression and the provision of rescue and emergency services.  As is required under the CDAA, Cal OES coordinated and directed over a dozen fire agencies to suppress the Wildfires for which PG&E is liable.  Under the Emergency Management Assistance Compact ("**EMAC**"), Cal OES called upon firefighters from across the state, from other states, and even from other countries to help suppress the Wildfires.  (Declaration of Grady Joseph ["Joseph

Decl."] ¶ 2.)  Under the EMAC, "[a]ny party state rendering aid in another state pursuant to this compact shall be reimbursed by the party state receiving such aid for any loss or damage to or expense incurred in the operation …." PL 104–321, October 19, 1996, 110 Stat. 3877, art. VIII; *see, generally*, **Error! Hyperlink reference not valid.**. Cal OES also requested mutual aid from California agencies to assist in the provision of rescue and emergency services.  (Joseph Decl. ¶ 2.)

Under Section 13009(a), any person "who negligently, or in violation of the law, sets a fire … is liable for the fire suppression costs incurred in fighting the fire and for the cost of providing rescue or emergency medical services, and those costs shall be a charge against that person."  Cal. Health & Saf. Code §13009(a).  That "charge shall constitute a debt " which "is collectible by the person, or by the federal, state, county, public, or private agency incurring those costs in the same manner as in the case of an obligation under a contract, expressed or implied." *Id.*

Several California cases have construed the right to recover fire suppression costs.  Those decisions have held: "[S]ection 13009 provides for recovery as though the defendant had contracted with the plaintiff, public or private, to fight the fire.  Such a contract would normally be expected to cover the reasonable value of the goods and services used in fighting the fire, regardless of whether the labor involved represented a regular expense or an additional expense of the agency involved."  *People v. S. Pac. Co.*, 139 Cal. App. 3d 627, 640 (1983).  "The clear intent of the Fire Liability Law [the predecessor to Section 13009] is to require reimbursement by the wrongdoer for expenses incurred in the suppression of fire.  This liability may be enforced by *any person or agency* entitled thereto, and not solely by the agencies of government." *Cnty. of Ventura v. S. Cal. Edison*, 85 Cal. App. 2d 529, 533 (1948) (emphasis added).  "The burden of suppressing a fire … thus rests squarely upon him whose willful or negligent acts or omissions necessitated that expense, and not upon the government or careful property owner." *Id.* at 534.  Unlike the free public service doctrine, the Fire Liability Law "evinces an intention to make this additional liability as broad as the mischief it was designed to prevent" so that the wrongdoers bear the cost of their fires – not the public. *Id.* at 539.

The TCC does not challenge Cal OES's ability to establish that PG&E acted negligently

and in violation of law. Rather, it argues that Cal OES cannot support its claims under Sections 13009 and 13009.1 because "it does not allege that it engaged or participated in any fire suppression, rescue, or emergency medical services …." (Obj. at 14.) The TCC misrepresents the statutory entitlement. Sections 13009 and 13009.1 allow recovery by "any" state agency that "incurs" the costs of fire suppression or providing rescue or emergency medical services. By structuring the liability as a "debt" that is "collectable" by any agency incurring the costs, the California legislature ensured that a remedy was available to those agencies paying for the work – even if the services are provided by an outside organization or agency enlisted to help (as is often the case).

Health and Safety Code Sections 13009 and 13009.1 do not define the word "incurred." However, in a variety of different contexts, courts have interpreted an "incurred" expense as one "for which payment has been made or for which liability has attached." *Black v. Sec'y of Health & Human Servs.*, 93 F.3d 781, 786 (Fed. Cir. 1996) (the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa–10 *et seq.*, does not define the term "incurred," it was nevertheless interpreted to mean "expenses for which payment has been made…"); *accord Quarles*, 551 at F. 2d at 1205 (construing Federal Water Pollution Control Act ); *In re Townview Nursing Home*, 28 B.R. 431, 458 (Bankr. S.D.N.Y. 1983) ("A debt has been incurred when liability attaches."); *Glaviano v. Sacramento City Unified Sch. Dist.*, 22 Cal. App. 5th 744, 752 (2018) (a teacher "incurred" attorney's fees even though the teacher was not personally liable for the fees).

In *Town of New Windsor v. Tesa Tuck, Inc.*, the Town of New Windsor owned and operated a landfill that the New York Department of Environmental Conservation deemed an environmental threat. 935 F. Supp. 317, 319 (S.D.N.Y. 1996). The Town and the State executed a consent order requiring the Town to develop and implement a remedial plan. After executing the consent order, the Town became eligible for 75% reimbursement by the State of part of its clean-up costs pursuant to the New York Environmental Quality Bond Act of 1986 ("**EQBA**"), under which the State may assist financially strapped towns to meet their environmental obligations. Under 42 U.S.C. § 9607(a)(4)(A), the State sought approximately $3.5 million that it spent reimbursing the Town for the cleanup, future monitoring costs, and costs in overseeing the

Town's remediation. The defendants argued that the State never "incurred" those obligations because only the Town was legally obligated to take action at the landfill. The district court disagreed:

> Under the New York State Constitution (Article 14) and statute …, the State has a mandate to protect the environment and to ensure that those responsible for despoiling the environment, such as the Town and defendants, pay for cleaning it up. As a public entity charged with the responsibility of ensuring that hazardous waste sites are cleaned up and of expending state funds, including the EQBA, in that effort, … the State does not have the discretion presupposed by defendants. The State's position here is not that of a private lending institution that can pick and choose among the projects it finances.

*Id.* at 321 (S.D.N.Y. 1996); *accord New York v. Moulds Holding Corp.,* 196 F. Supp. 2d 210, 215 (N.D.N.Y. 2002).

To limit the right of recovery under Sections 13009 and 13009.1 to only agencies that directly provided services with their own employees (as the TCC suggests) would be contrary to the legislative intent to make the remedy for starting a wildfire "as broad as the mischief it was designed to prevent." *Cnty. of Ventura*, 85 Cal. App. at 539. In this case, the vast majority of agencies that provided fire suppression and rescue and emergency medical services in connection with the Wildfires did not file proofs of claim in the bankruptcy. They did not do so because there was no need to: Cal OES already paid those costs. (Heyn Decl., Ex. A at 8; *id.*, Ex. B at 7; *id.*, Ex. C at 10.) However, the fact that those amounts were paid does not relieve PG&E from the "debt" for the costs of fire suppression and emergency medical services.[3]

Even assuming Cal OES did not directly "incur" the costs as that term is used in Sections 13009 and 13009.1 (as discussed above, it did), Cal OES would still be entitled to recovery of the fire suppression and emergency services costs that it paid. Under Section 13009(b), public agencies that may "designate one or more of the participating agencies to bring an action to recover costs incurred by all of the participating agencies." As required by Section 13009(b), Cal OES has itemized the amounts claimed for fire agencies in its proofs of claim. In response to the Wildfires, Cal OES coordinated mutual aid for rescue and emergency services with in-state and

---

[3] To the extent the Court is inclined to disallow the claim of Cal OES, these other agencies should be given the opportunity to file their own proofs of claim.

out-of-state agencies, facilitated the employment of resources for rescue or emergency medical services, and reimbursed other agencies for rescue and emergency services. (Joseph Decl. ¶ 4.) Thus, Cal OES "participated" in the provision of rescue and emergency services and can assert other agencies' costs under Section 13009(b).

Finally, even if Cal OES could not recover under Section 13009(a) or 13009(b), Cal OES could still pursue claims for fire suppression and emergency services against PG&E as the subrogee to those state and local entities that received funds from Cal OES for performing these services. *See* Section C, *infra*.

### B. Health and Safety Code section 13009.6 Provides Cal OES a Right to Recover for Its Debris Removal Program.

Cal OES also seeks recovery under California Health and Safety Code section 13009.6 ("**Section 13009.6**"), for the costs removing of hazardous substances. Section 13009.6 provides that "[t]hose expenses of an emergency response necessary to protect the public from a real and imminent threat to health and safety by a public agency to confine, prevent, or mitigate the release, escape, or burning of hazardous substances . . . are a charge against any person whose negligence causes the incident" if the "incident results in the spread of … fire posing a real and imminent threat to public health and safety beyond the building, structure, property, or public right-of-way where the incident originates." *Id.* at § 13009.6(a)(1)(B).

Following each of the Wildfires, the counties impacted by the Wildfires issued Resolutions Declaring the Existence of Local Health Emergencies under section 101080 of the Health and Safety Code. (Joseph Decl. ¶ 3 and Exs. F, G, H.) Part of Cal OES' mission is to collaborate and coordinate the California Mutual Aid System. In connection with the Wildfires, Cal OES collaborated and coordinated mutual aid, mission tasked other state departments to confine, prevent, or mitigate the release, escape, or burning of hazardous substances, and reimbursed other agencies' costs in to confining, preventing, or mitigating the release, escape, or burning of hazardous substances. (*Id.* at ¶ 4.)

To aid in the recovery effort, Cal OES offered, and the counties accepted, a government-sponsored residential debris removal program. (*Id.* ¶ 5; *see, generally,*

https://www.calrecycle.ca.gov/disaster/wildfires/operations.) The Consolidated Debris Removal Program consisted of two phases: First, the Department of Toxic Substance Control conducts an initial inspection and removal of household hazardous waste.[4] This hazardous waste included everything from propane canisters, to household chemicals, to unexploded ordinance. (*Id.* ¶ 5.) Then, Cal OES directed a second phase in which the remainder of fire-related hazardous debris and ash was removed. Many houses that burned in the Wildfires contained toxins, such as lead, asbestos. (*Id.*) These chemicals and toxic amounts of heavy metals such as antimony, arsenic, cadmium, copper, mercury, thallium, and zinc were in the ash from the Wildfires. The toxic chemicals seeped into foundations of private properties and were present in the soil of affected areas. (*Id.* ¶ 6.) Cal OES tasked Cal Recycle to remove debris and foundations. It scraped the soil and performed testing to make sure all hazardous substances were removed. Following the scraping of the soil, Cal OES took soil samples and, where necessary, directed Cal Recycle to remove additional soil. (*Id.*)

The only objection the TCC raises to this portion of the claim is that Cal OES did not allege that it actually performed any "hazmat abatement services or other services within the scope of 13009.6." (Obj. at 15.) However, Section 13009.6 does not require Cal OES to "actually perform" the activities or that the cleanup constitute "hazmat services." Instead, Section 13009.6 provides that the costs of a necessary emergency response are "a charge against any person whose negligence causes the incident." Section 13009.6(a)(1). Those expense are "a debt of the person liable therefor …." Section 13009.6(a)(2). As with the liability under Section 13009, "[t]he public agencies participating in an emergency response meeting the requirements of paragraph (1) of this subdivision may designate one or more of the participating agencies to bring an action to recover the expenses incurred by all of the designating agencies which are reimbursable under this section." Section 13009(a)(4).

Section 13009.6 does not limit recovery to those entities actually performing the work, and the TCC points to no case law suggesting otherwise. The legislative history for Section

---

[4] The costs for the work performed by the Department of Toxic Substances Control ("DTSC") is not in Cal OES's proofs of claim.

13009.6 shows that it was enacted because, if a public agency could not go after the costs incurred, there would be no deterrence and such an incident would be "apt to repeat itself to the detriment of the public coffers." (Heyn Decl. ¶ 4, Ex. D.) Moreover, even if Cal OES could not recover under Section 13009.6 (a)(4), Cal OES could still pursue claims for hazardous waste cleanup against PG&E as the subrogee to those state and local entities that received funds from Cal OES for performing these services. See Section C, *infra*. Cal OES can recover for its debris removal program.

### C. Cal OES Has Subrogation Rights.

Equity dictates that the burden for a loss should be placed "on the party ultimately liable or responsible for it and by whom it should have been discharged." *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1296 (1998). PG&E's negligence and violations of law caused the Wildfires. Accordingly, the loss for the Wildfires should be borne by PG&E – not the taxpayers. In its proofs of claim, Cal OES expressly asserts the right to subrogation. The TCC provides no arguments that subrogation is unavailable to it. There are two source of Cal OES's rights to subrogation: equitable subrogation under California law and statutory subrogation under the Bankruptcy Code.

#### 1. Equitable Subrogation.

Subrogation is "the substitution of one party in place of another with reference to a lawful claim, demand or right." *Hamada v. Far E. Nat'l Bank (In re Hamada)*, 291 F.3d 645, 649 (9th Cir. 2002). Subrogation may be contractual, statutory, or equitable. *Id.*; *Fireman's Fund Ins.*, 65 Cal. App. 4th at 1296. Courts apply equitable subrogation to prevent unjust enrichment. Under the Restatement:

(1) If the defendant is unjustly enriched by a transaction in which property of the claimant is used to discharge an obligation of the defendant … the claimant may obtain restitution

(a) by succeeding to the rights of the obligee or lienor against the defendant or the defendant's property, as though such discharge had not occurred, and

(b) by succeeding to the collateral rights of the defendant in the transaction concerned.

(2) Recovery via subrogation may not exceed reimbursement to the claimant.

(3) The remedy of subrogation may be qualified or withheld when necessary to avoid an inequitable result in the circumstances of a particular case.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 57 (2011).

The Restatement defines when there has been an unjust enrichment:

(1) If the claimant renders to a third person a performance for which the defendant would have been independently liable to the third person, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.

(2) There is unjust enrichment in such a case to the extent that

    (a)   the claimant acts in the performance of the claimant's independent obligation to the third person, or otherwise in the reasonable protection of the claimant's own interests; and

    (b) as between the claimant and the defendant, the performance in question (or the part thereof for which the claimant seeks restitution) is primarily the obligation of the defendant.

*Id.* at § 24 (2011).

Where a government entity exercises its discretionary authority to compensate a victim, the government entity subrogates to the rights of the victim against a tortfeasor. *Id.*, illus. 3 (citing *Ford v. United States*, 88 F. Supp. 263 (1950).

Equitable subrogation "permits a party who has been required to satisfy a loss created by a third party's wrongful act to 'step into the shoes' of the loser and pursue recovery from the responsible wrongdoer." *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 21 Cal. App. 4th 1586 1595-96 (1994); *see also In re Hamada*, 291 F.3d at 649 ("the subrogee succeeds to the legal rights and claims of the subrogor with respect to the loss or claim.").

State law governs the doctrine of equitable subrogation. *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996). California law construes the doctrine liberally. *Caito v. United Cal. Bank*, 20 Cal. 3d 694, 704 (1978); *In re Johnson's Estate*, 240 Cal. App. 2d 742, 747 (1966); *Estate of Kemmerer*, 114 Cal. App. 2d 810, 814 (1952) ("[I]t has been said, [there is] no limit to the circumstances that may arise in which the doctrine may be applied."). Equitable subrogation should be applied in all those circumstances where doing so would "accomplish[] the ends of substantial justice." *In re Hamada*, 291 F.3d at 649; *see also St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.*, 65 Cal. App. 3d 66, 72 (1976).

Generally, under California law, a claimant is entitled to equitable subrogation where it can establish the following five criteria:

> (1) Payment must have been made by the subrogee to protect his own interest.
> (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others.

*Grant v. de Otte*, 122 Cal. App. 2d 724, 728 (1954) (citing 50 AM. JUR. 688, § 10; 50 AM. JUR. 742, § 97); *accord Fidelity Nat'l Title Ins. Co. v. IRS*, 907 F.2d 868, 870 (9th Cir. 1990).

However, application of the doctrine need not be limited to those circumstances where all five factors are met. *See In re Hamada*, 291 F.3d at 653 (discussing flexibility of the doctrine). In particular, California has abandoned the requirement that claims be paid in full (factor four). *See, e.g.*, *Garbell v. Conejo Hardwoods, Inc.*, 193 Cal. App. 4th 1563, 1571 (2011); *Allstate Ins. Co. v. Mel Rapton, Inc.*, 77 Cal. App. 4th 901, 908 (2000); *Ferraro v. S. Cal. Gas Co.*, 102 Cal. App. 3d 33, 41-43 (1980).

When an injured party is "only partially compensated" (i.e. element four is not met), "the subrogation doctrine results in two or more parties having a right of action for recovery of damages based upon the underlying negligence." *Garbell*, 193 Cal. App. 4th at 1571. The subrogated party has a claim to the extent it provided a benefit to the injured party. *Id.*; *Allstate Ins. Co.*, 77 Cal. App. 4th at 908 ("When, as often happens, the insured is only partially compensated by the insurer for a loss (because of deductibles, policy limits, and exclusions), operation of the subrogation doctrine 'results in two or more parties having a right of action for recovery of damages based upon the same underlying cause of action.'"); *Ferraro v. Southern Cal. Gas Co.*, 102 Cal. App. 3d 33, 41 (1980) (same).

Here, Cal OES met all or most of the elements for subrogating to the claims of individual property owners (to the extent they received private property debris removal funded by Cal OES and FEMA and did not assert proofs of claims for Cal OES and FEMA's services) and state and local agencies:

*First*, Cal OES made payments to protect its own interest. Cal OES is "responsible for the state's emergency and disaster response services … for activities necessary to prevent, respond to, recover from, and mitigate the effects of emergencies and disasters to people and property." Cal.

Gov't Code § 8585(e). Cal OES has the "duties, powers, purposes, responsibility and jurisdiction formerly vested in the California Emergency Management Agency and the California Office of Homeland Security. *Id.* § 8585(b)(1), (2). Among the duties that Cal OES is obliged to undertake includes certain qualifying "debris removal from publicly and privately-owned lands and waters," CAL. CODE REGS. tit. 19, § 2925, "[e]mergency measures undertaken to save lives, to protect public health and safety, and to protect property," *id.* § 2920(a)(1), "permanent restorative work on facilities damaged or destroyed by a disaster," *id.* § 2920(a)(2) and paying for the repair and rebuilding of "public buildings," *id.* § 2920(a)(2). Under agreements with FEMA, Cal OES is required to cover the state share of projects that have been obligated. Under the Stafford Act and the CDAA, FEMA and OES are *obligated* to provide disaster relief. *McWaters v. FEMA*, 408 F. Supp. 2d 221, 235 (E.D. La. 2005) (citing 42 U.S.C. § 5121).

*Second*, Cal OES did not act as a mere volunteer or intermeddler. Under California law, a volunteer is one who "has no interest of its own to protect, [] acts without any obligation, *legal or moral*, and [] acts without being requested to do so by the person liable on the original obligation." *Morgan Creek Residential v. Kemp*, 153 Cal. App. 4th 675, 690 n.11 (2007) (emphasis added). A legal liability assumed in discharge of a moral obligation or interest is adequate to provide a right of subrogation. *Ford v. United States*, 88 F. Supp. 263, 264 (Ct. Cl. 1950); *State Farm Fire & Cas. Co. v. E. Bay Mun. Util. Dist.*, 53 Cal. App. 4th 769, 775 (1997); *Emp'rs Mut. Liab. Ins. Co. of Wis. v. Pac. Indem. Co.*, 167 Cal. App. 2d 369, 377 (1959).

*Third*, Cal OES is not primarily liable for the damages requiring it to expend funds. Under California law, a party is not primarily liable if it is statutorily liable as a result of the negligent actions of another. *City & Cty. of San Francisco v. Ho Sing*, 51 Cal. 2d 127, 134 (1958); *Alisal Sanitary Dist. v. Kennedy*, 180 Cal. App. 2d 69, 76 (1960); *cf. State Bar of Cal. v. Statile*, 168 Cal. App. 4th 650, 663 (2008) (explaining that the general principles of subrogation supported the State Bar's efforts to recover the funds it expended to former clients of an attorney who had misappropriated their money). PG&E's negligence caused Cal OES to have to incur costs for disaster. As required under the Stafford Act, Cal OES is seeking to recover funds from PG&E on the basis that it started fires and is thereby primarily answerable for the damages

caused by those fires.  This element is satisfied.

**Fourth**, for many of the claims that Cal OES paid, the entire debt has been paid.  The requirement that an "entire debt must be paid" before a subrogee may enforce its claim based on its rights of subrogation arises from the equitable purpose of "maximiz[ing] the prospect of making the insured whole."  *Sapiano v. Williamsburg Nat'l Ins. Co.*, 28 Cal. App. 4th 533, 537 (1994).  This principle arises from a concern that an insurer would shortchange an insured, then subrogate to the insured's claim for recovery and leave him obligated.  That is not the case here.  Many of the cities and counties benefited by Cal OES's and FEMA's disaster relief have entered into settlements with PG&E that would waive all their claims against PG&E – other than the claims for amounts paid by FEMA and Cal OES.  (Heyn Decl. ¶ 5, Ex. E.)

Where state or local entities have filed proofs of claim seeking to recoup the full costs of an obligated project, Cal OES does not seek to duplicate these claims.   To the extent the Court allows those entities' claims, Cal OES will amend its proof of claim.  It is only where the state or local entity has no ability to recover disaster assistance that Cal OES seeks to subrogate for the entity to recover its costs in funding the project.  Indeed, this principle underlies the requirement that recipients agree to cooperate fully with the state's costs recovery efforts, either by making their own claims for recovery of the funds, or agreeing to support Cal OES's claims.  CAL. CODE REGS., tit. 19, § 2910(a)(3).  Under these particular circumstances, the equities favor Cal OES's ability to proceed on a basis of subrogation.

**Finally**, allowing Cal OES to proceed with its subrogated claims will not work an injustice to the rights of others.  *See Fed. Ins. Co. v. Allen*, 13 Cal. App. 3d 648, 650 (1970); *J.G. Boswell Co. v. W. D. Felder & Co.*, 103 Cal. App. 2d 767, 771-72 (1951).  Unlike *In re Hamada*, 291 F.3d at 652-53, in which the Ninth Circuit declined to allow a bank's subrogated claim of non-dischargeability because doing so would place the bank in a better position than other similarly-situated creditors, allowing Cal OES to proceed with its subrogated claims would merely allow Cal OES to proceed in the same position as other creditors.  In fact, disallowing the subrogated claims would work an injustice by allowing PG&E to escape liability by creating circumstances so severe that Cal OES was required to step in to provide emergency assistance.

1   PG&E's plan proposes to make distributions to equity holders.

2          Allowing Cal OES to subrogate will *not* work an injustice to the rights of individual

3   wildfire victims by reducing their recoveries from the $13.5 billion trust.  PG&E is not entitled to

4   shirk its obligations by forcing the government claims into a trust with Wildfire victims and then

5   shaming the government entities into not pursuing recovery on behalf of taxpayers.  This is not a

6   zero sum game.  Cal OES filed its proofs of claim several weeks before the TCC and PG&E

7   entered into their Restructuring Support Agreement (the "**RSA**").  This afforded the TCC and

8   PG&E with advance knowledge of the nature and extent of its claims.  Cal OES and other

9   government entities are not parties to the RSA and did not participate in its negotiation.

10          Like many individual Wildfire survivors, Cal OES objects to a chapter 11 plan structure

11  where the individual fire victims share in the same fund for payment of their claims as

12  government entities.  Government Wildfire claims should not be in the same class as the claims of

13  wildfire victims.  In order to make any distribution to equity holders, PG&E must compensate the

14  individual fire victims ***in full*** and pay the legitimate and enforceable claims filed by Cal OES and

15  other government agencies.

16                 **2.      Statutory Subrogation.**

17          In the alternative, Cal OES also asserts its rights to subrogation under Bankruptcy Code

18  section 509 ("**Section 509**").   In enacting Section 509(a) of the Bankruptcy Code, Congress

19  created a statutory right of subrogation.  *In re The Medicine Shoppe*, 210 B.R. 310, 314 (Bankr.

20  N.D. Ill. 1997).  Thus, statutory and equitable subrogation are distinct types of relief that should

21  be analyzed separately.  *In re Hamada*, 291 F.3d at 649-50 (noting distinction between equitable

22  and statutory subrogation; treating each claim separately); *accord In re Spirtos*, 103 B.R. 240,

23  245 (Bankr. C.D. Cal. 1989) ("[e]quitable subrogation ... should not be confused with the

24  subrogation rights specifically set forth in" the Bankruptcy Code); *In re Missionary Baptist

25  Found. of Am., Inc.,* 667 F.2d 1244, 1246 (5th Cir. 1982); *Wetzler v. Cantor,* 202 B.R. 573, 577

26  (D. Md. 1996); *Cuda v. Nigro (In re Northview Motors, Inc.),* 202 B.R. 389, 401 (Bankr. W.D.

27  Pa. 1996); *but see In re Fiesole Trading Corp.*, 315 B.R. 198, 203 (Bankr. D. Mass. 2004)

28  ("Some courts have either explicitly or implicitly held that the requirements of equitable

subrogation must be met before subrogation may be available in bankruptcy cases, even where a party seeks subrogation pursuant to § 509.").

Section 509(a) provides:

> Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, …, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509(a). An "entity" includes a "governmental unit." 11 U.S.C. § 101(5).

Provided Cal OES demonstrates that it is an entity liable for the same debt as PG&E, and it paid the debt, Cal OES is entitled to subrogation. *In re Photo Mech. Servs.*, 179 B.R. 604, 618 (Bankr. D. Minn. 1995). An entity may be "liable with" a debtor on a claim to support subrogation in bankruptcy, even if it does not fall into one of the traditional categories of guarantor or surety. *In re Spirtos*, 103 B.R. at 244 (Section 509 establishes "co-debtors and sureties are subrogees, but it does not necessarily follow from this that others are not subrogees."); *see also In re Baldwin-United Corp.*, 55 B.R. 885, 890 (Bankr. S.D. Ohio 1985) ("The phrase 'an entity that is liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis."); *In re Fiesole Trading Corp.*, 315 B.R. at 203; *In re Celotex Corp.*, 289 B.R. 460, 465-66 (Bankr. M.D. Fla. 2003) ("[T]he term 'liable with the debtor' ... connotes a wide spectrum of co-obligors, far beyond the mere guarantor or surety"); Section 509 can be used by others who are liable with the debtor and actually pay the debtor's debt. *In re Trasks' Charolais*, 84 B.R. 646, 648 (Bankr. D.S.D. 1988). The phrase "is liable with the debtor on ... claim of the creditor" is broad. The co-liability does not need to be judicially established. *In re Amatex Corp.*, 110 B.R. 168, 168 (Bankr. E.D. Pa. 1990). Under this broad standard, Section 509 liability can arise from a statute. *In re Lull Corp.*, 162 B.R. 234, 237 (Bankr. D. Minn. 1993).

For example, in *In re Fiesole Trading Corp.*, the debtor's obligation was for taxes, and the liability of the individuals who paid the tax was denominated as a penalty. 315 B.R. at 200-01. The court determined individuals who paid a corporate debtor's obligation for trust fund taxes were "liable with the debtor" for those taxes, vesting them with subrogation claims in the bankruptcy proceedings under Section 509, even though their obligation arose under separate

provisions of the Internal Revenue Code. *Id.* at 207.

In *In re Dow Corning Corp.*, 244 B.R. 705, 709 (Bankr. E.D. Mich. 1999), a class of government claimants sought reimbursement for medical treatment or expenses they provided or paid arising from injuries caused by a defective product (breast implants) the debtor manufactured. Both the Fair Medical Care Recovery Act, 42 U.S.C. §§ 2651-2653, and the Medicare Secondary Act, 42 U.S.C. § 1395y, authorized the federal government to recover treatment costs when treatment is necessary "for injuries that arose under circumstances creating a tort liability upon a third party." *Dow*, 244 B.R. at 713 (interpreting 42 U.S.C. § 2651(a) and 42 U.S.C. § 1395y(b)(2)(B)(ii)). The *Dow* court held "co-liability exists when each party is obligated to pay the same person for the same benefits even if the obligations of each party arise from a different source." *Id.* at 715. It explained:

> [P]ursuant to a mandate in federal law, [the Government] is obligated to pay for or provide medical care to federal beneficiaries. As a result, it is ipso facto liable to these federal beneficiaries to pay for or provide such medical treatment. At the same time, if the Debtor is the party that caused the harm necessitating the medical treatment provided or paid for by the United States, it, too, is liable to the federal beneficiary for this same medical treatment. The Debtor and the Government are, therefore, both potentially liable to the federal beneficiaries for the same injuries. Hence, the Government is clearly "an entity that is liable with the [D]ebtor" with respect to the claims of breast-implant claimants.

*Id.*

A similar determination resulted in *In re White Motor Corp.*, 731 F. 2d 372 (6th Cir. 1984). In *White Motor Corp.*, the PBGC filed a proof of claim for the amount White Motor owed its employees under guarantee letters White Motors executed with the employees' union. The Sixth Circuit held the PBGC was a co-debtor with White Motor for the unfunded pension benefits, even though "the source of [PBGC's] liability for the pension benefits [under] 29 U.S.C. § 1322, is different from the source of White Motor's liability, the guarantee letters." *Id.* at 374. "The fact remains that each party is liable to the same White Motor pensioners for the same … pension benefits to be paid out in the same fashion." *Id.*

Under Section 509, Cal OES has subrogation rights to the claims and damages of the state and local government agencies and the individuals it assisted under the Stafford Act. Cal OES was statutorily obligated to pay emergency funds to these public entities for loss and damages

incurred as a result of PG&E's negligence. Even though the source of its duty to do so is different than PG&E's liability for the fires, both Cal OES and the debtor are liable to the public entities for the same injuries (fire damages and economic losses). Thus, Cal OES is entitled to recover the monies it paid to the Stafford Act recipients as a result of the Wildfires as it was co-obligated to pay these monies along with PG&E.

\* \* \*

Because Cal OES subrogates to the property owners and state and local agencies, it has claims under several statutes and the common law:

### Health and Safety Code Section 13007.

Cal OES asserts claims under California Health and Safety Code section 13007 ("**Section 13007**"). Section 13007 provides:

> Any person who personally or through another willfully, negligently, or in violation of law, sets fire to [or] allows fire to be set to . . . the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire.

As set forth in Cal OES' proofs of claim, Cal OES is prepared to show that PG&E negligently and/or in violation of law caused the Wildfires, which incinerated the property of numerous state and local entities that then received funding through Cal OES to repair this property. Under Section 13007, Cal OES can recover a broad array of costs related to property damage that were the direct, foreseeable, and proximate cause of a party's negligence, such as costs for repairing, demolishing, and/or replacing public property harmed by a fire. *McKay v. California*, 8 Cal. App. 4th 937, 939-940 (1992); *Anderson v. United States*, 55 F.3d 1379, 1384 n.5 (9th Cir. 1995) (discussing scope of liability under Section 13007).

Cal OES also can establish that PG&E's conduct resulting in the Wildfires violated certain statutes, ordinances, and regulations relating to, for example, the maintenance of equipment or facilities (Cal. Pub. Util. Code § 415), maintenance of vegetation around utility equipment (Cal. Pub. Resources Code §§ 4292, 4293, and Cal. Health & Safety Code § 13001), and the duty to exercise reasonable and proper precautions to prevent the escape of fire (Cal. Pub. Res. Code

§§ 4421, 4422). [5] Violation of these statutes renders PG&E negligent per se and allows the Court to presume it breached its duties. Cal. Evid. Code § 669.

The TCC argues that Cal OES cannot recover under Section 13007 because "Cal OES does not allege that any of its property was damaged by the wildfires." (Obj. at 13.) The TCC ignores, however, that Cal OES asserts its Section 13007 claim exclusively as "a subrogee." (Heyn Decl., Ex. A at 8; *id.*, Ex B at 7; *id.*, Ex. C at 10.) As reflected in the Schedules appended to each of Cal OES' proofs of claim, many of Cal OES' expenditures were obligated for repair to property damaged by these fires. Because state and local agencies and private property owners have a Section 13007 claim against PG&E and Cal OES is subrogated to these claims, Cal OES may proceed on this basis against PG&E.

### Public Utilities Code Section 2106.

Cal OES also asserts PG&E is liable under California Public Utilities Code section 2106 ("**Section 2106**"). Section 2106 provides, in relevant part:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom.

By enacting Section 2106, the Legislature "'provided for a private right of action against utilities for unlawful activities and conduct'." *Goncharov v. Uber Techs., Inc.*, 19 Cal. App. 5th 1157, 1169-70 (2018) (quoting *Mata v. PG&E Co.*, 224 Cal. App. 4th 309, 315 (2014)); *People ex rel. Orloff v. Pac. Bell*, 31 Cal. 4th 1132, 1144 (2003)). "Specifically, section 2106 provides for an action to recover for loss, damage, or injury 'in any court of competent jurisdiction' by any corporation or person against '[a]ny public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or

---

[5] In its Objection, the TCC argues that Cal OES cannot pursue a claim under California Health and Safety Code section 13001, or California Public Resources Code sections 4421 and/or 4422, because none of these statutes "provide Cal OES or any other governmental entity with the right to recover" from a party that violates these statutes, nor "purport to make the Debtors liable for any damages caused by a fire." (Obj. at 12.) The TCC is ignoring the way these statutory schemes interact. Cal OES can proceed with a claim for damages under Health and Safety Code sections 13007, 13009, and 13009.1 for PG&E's law violations, including PG&E's violations of Health and Safety Code section 13001 and Public Resources Code sections 4421 and 4422.

1    thing required to be done, either by the Constitution, any law of this State, or any order or

2    decision of the commission.'"  *Mata*, 224 Cal. App. 4th at 315.  Succinctly stated, under Section

3    2106, a public utility that violates state laws or an "order or decision of the PUC, shall be liable to

4    persons and entities damaged by such conduct."  *Orloff*, 31 Cal. 4th at 1144.

5          The TCC objects to this statutory basis of liability, contending Section 2106 only allows

6    for recovery to persons or corporations who are themselves direct victims of a utility's willful act

7    or omission.  (Obj. at 11 [citing *Vander Lind v. Superior Court*, 146 Cal. App. 3d 358 (1983)].)

8    However, this contention has little significance to the circumstances of this action where Cal OES

9    is not seeking exemplary damages in a wrongful death context pursuant to Section 2106,

10   important considerations that diminish the import of *Vander Lind*.[6]  Instead, Cal OES is seeking

11   to recover monies from PG&E through the rights of subrogation.

12                          **Civil Code Section 3491 – Nuisance.**

13         Cal OES also alleges PG&E is liable for nuisance.  In its objection, the TCC argues Cal

14   OES is not entitled to recover under this basis because (i) nuisance is not a recognized exception

15   to the free public services claim, (ii) Cal OES lacks standing to bring a suit for abatement of a

16   nuisance as it not the proper governmental agency to maintain such an action, and (iii) Cal OES is

17   not alleging any of its property was damaged by the wildfires.  However, the TCC again

18   overlooks the fact that Cal OES is seeking to recover monies from PG&E incurred by local

19   government entities under subrogation principles.  Subrogation provides Cal OES with the basis

20   to maintain a nuisance action for damages to public property and costs incurred by these entities

21   to remediate harm caused by wildfires PG&E's equipment started.

22         "Under California law, a nuisance is 'anything that is injurious to health …, or an

23   obstruction to the free use of property, that interferes with the comfortable enjoyment of life or

24   property....'" *Schaeffer v. Gregory Vill. Partners*, 105 F. Supp. 3d 951, 966 (N.D. Cal. 2015)

25   _____

26   [6] In fact, the exact *Vander Lind* language relied on by the TCC – "exemplary damage awards to
     persons *remotely* affected by tortious conduct causing death to another," – makes it clear the
     decision cannot be separated from its factual predicate (i.e., recovery of exemplary damages in a

27   wrongful death action), thus rendering *Vander Lind* inapplicable to this case. *Vander Lind*, 146
     Cal. App. 3d at 365 (emphasis in original).

28

(citation omitted)).  An action or condition legislatively declared a public nuisance is a nuisance per se.  *City of Monterey v. Carrnshimba*, 215 Cal. App. 4th 1068, 1086 (2013).  Any uncontrolled fire, regardless of its origin, is a public nuisance by reason of its menace to life and property.  Cal. Pub. Res. Code § 4180.

There are three explicit remedies for a nuisance: a criminal proceeding, a civil action, or abatement.  Cal. Civ. Code §§ 3491, 3501.  A "public entity is free to choose any of the three options."  *Flahive v. City of Dana Point*, 72 Cal. App. 4th 241, 244(1999).  Thus, local public entities and private property owners whose property was damaged by the Wildfires are expressly authorized to bring a civil action for recovery of damages; they are not limited to an action in abatement.  *City of San Jose v. Monsanto Co.*, 231 F. Supp. 3d 357, 361 (N.D. Cal. 2017) ("Ordinarily, '[w]here a public entity can show it has a property interest injuriously affected by the nuisance, then, like any other such property holder, it should be able to pursue the full panoply of tort remedies available to private persons.'").

"The measure of damages which may be recovered as the result of the tortious conduct of another is that amount which will compensate the injured party for all the detriment proximately caused thereby, whether it could have been anticipated or not."  *Basin Oil Co. v. Baash-Ross Tool Co.*, 125 Cal. App. 2d 578, 605 (1954) (citing Cal. Civ. Code § 3333).  PG&E created a *per se* public nuisance by allowing vegetative overgrowth beneath and around its electricity transmission equipment, thereby violating numerous Public Resource Code sections, including sections 4292 and 4293 (providing firebreaks and vegetation clearance around power poles and transmission lines) – circumstances which engender and aggravate fires.  Contrary to the TCC's contentions, Cal OES is not limited to an action in abatement and has standing to pursue these claims by virtue of subrogated rights.

### Negligence.

In its proofs of claim, Cal OES asserts a cause of action for negligence against PG&E.  Cal OES can establish this cause of action, insofar as it subrogates to the rights of local agencies and individual property owners harmed by the wildfires. Cal OES will be able to show that (1) PG&E failed to exercise a reasonable degree of care or breached a duty of care owed to the public, state

and local entities, and Cal OES; (2) Cal OES and specific state and local entities suffered harm as a result; and (3) PG&E's breach of care was the proximate cause or substantial factor in causing that harm. Cal. Civ. Code § 1714. Under common law negligence, all damage resulting from a party's negligent acts or omissions must be compensated. *Id.* § 3333. This should include the cost of defending government property from fire damage, and the costs of repairing, demolishing, and/or replacing public property harmed by the Wildfires, but also includes all expenditures made by Cal OES arising from PG&E's breach of care.

### D. Under the Collateral Source Doctrine and the Stafford Act, Cal OES Has a Right and Duty to Recover FEMA Disaster Relief.

The TCC argues that "the Cal OES Claims must be limited to the amounts it actually funded – i.e., $298,214,733. … At minimum, the portion of the Cal OES Claims attributable to the 'Federal Share' should be disallowed." (Obj. at 16:15-20.) This argument evinces a gross misunderstanding of California law and the Stafford Act. Under the collateral source rule, "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." RESTATEMENT (SECOND) OF TORTS § 920A (1979); see also *Helfend v. S. Cal. Rapid Transit Dist.*, 2 Cal. 3d 1, 16-18 (1970); *Acosta v. S. Cal. Rapid Transit Dist.*, 2 Cal. 3d 19, 25-26 (1970). Denying Cal OES's claim because Cal OES received FEMA money is contrary to the Stafford Act and the collateral source rule. Those laws make clear that Cal OES's claims are not diminished by payments from FEMA and that, if Cal OES recovers on its claims, Cal OES has the duty to reimburse FEMA for the amounts Cal OES received from FEMA.

The TCC also "demands an accounting for all amounts funded by Cal OES, including all amounts that are subject of proofs of claim filed by the recipients of such funds…." (Obj. at 16:21-22.) The TCC has not established or alleged grounds for an accounting. Under California law, an accounting is appropriate where it is shown that "a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009); *accord* 5 B.E. WITKIN, CALIFORNIA PROCEDURE, PLEADING, § 819 (5th ed. 2008). There

is no fiduciary or special relationship between the Cal OES and PG&E or the TCC. Thus, an accounting is inappropriate. *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013). Cal OES does not seek a double recovery. Although Cal OES's claim asserts amounts that were funded by FEMA, if FEMA's claim is allowed, Cal OES will withdraw any request for the Federal dollars. However, the TCC has contended that the Court should completely disallow FEMA's claim. If FEMA's claim were disallowed (as the TCC requests), there is no double recovery in paying the full amount of the Cal OES claim.

  **E.**  **PG&E Agreed to Toll the Statute of Limitations for the Butte Fire.**

   The TCC argues that Cal OES cannot assert claims for the Butte Fire because any such claims would be outside the two-year statute of limitations for bringing such claims. (Obj. at 16-17.) Even assuming that the TCC's analysis of statute of limitations is correct for all causes of action that Cal OES can assert, the argument is invalid because the TCC ignores the fact that Cal OES and PG&E entered into a tolling agreement with PG&E on June 21, 2017, which extended Cal OES' time to assert fire claims. (Joseph Decl.¶ 7, Ex. I.)

   Under the Bankruptcy Code, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." 11 U.S.C. § 558. However, the estate "is bound by a waiver of a defense made by the debtor before the filing of its petition in bankruptcy unless the waiver itself is avoidable as a fraudulent transfer." 5 ALAN N. RESNICK, COLLIER ON BANKRUPTCY ¶ 558.01[2]; *see also In re Wey*, 827 F.2d 140, 142-43 (7th Cir. 1987).

   The tolling agreement was signed on June 21, 2017. It covers "any claims ('Claims') that may be asserted by Cal OES against PG&E, its agents, employees, officers, contractors, and subcontractors are responsible for causing the 2015 Butte Fire." (Joseph Decl., Ex. I at p. 1.) It provides that the "statute of limitations for filing litigation concerning the claims shall be tolled for a period (the 'Tolling Period') beginning on the Effective Date of this Agreement [i.e. June 21, 2017] and ending on September 9, 2019 (the "Expiration Date"). The Parties agree that the Tolling Period shall not be asserted or used in computing the running of time under the statute of limitations for the Claims." (*Id.*) Because June 21, 2017 is less than two years after the Butte

1  Fire, the tolling agreement entirely defeats any of the TCC's statute of limitations defense.

2  **F.   The Marshaling Doctrine Does Not Apply.**

3  In the Supplemental Objection, the TCC argues that "the Court should disallow the Cal

4  OES Claims under the equitable doctrine of marshaling" because "every dollar Cal OES receives

5  is one less dollar available to pay victims." (Sup. Obj. at 1:8-12.) In support of its position, the

6  TCC alleges that "Cal OES has informed the TCC that it can recover its wildfire-related costs

7  from public entities and local governments that received funds from Cal OES." (*Id.* at 1:13-15.)

8  The TCC provides no evidence to support its spurious position, even though it bears the

9  burden to do so. *In re Brazier Forest Prods., Inc.* 921 F.2d 221, 223 (9th Cir. 1990) (party

10  seeking marshaling bears burden of proof). Cal OES rejects the TCC assertion that every dollar

11  Cal OES receives is one less dollar available to pay victims. PG&E has a duty to pay all its

12  creditors in full before making distributions to its shareholders. If the trust is inadequate to do

13  that, PG&E should propose a different trust in which individuals are not required to share in

14  distributions with government agencies. In any event, the TCC cannot establish each of the

15  required elements of marshaling. Under California Civil Code section 3433, a creditor requesting

16  marshaling must show:

17      (1) the two contesting parties are creditors of the same debtor, (2) there are two
       funds *belonging to that debtor*, and (3) one of them alone has the right to resort to
18      both funds."

19  *Shedoudy v. Beverly Surgical Supply Co.*, 100 Cal. App. 3d 730, 734 (1980) (emphasis added).

20  In the absence of proving the second element, marshaling is inappropriate. *Savings Bank*

21  *of St. Helena v. Middlekauff*, 113 Cal. 463, 466 (1896) (Section 3433 "applies only to a case

22  where one creditor is entitled to resort to each of *several funds of a debtor* and another creditor of

23  said debtor is entitled to resort to some, but not all the same funds."); *McCarthy v. Kurkjian*, 65

24  Cal. App. 569, 575, 224 P. 1016 (1924) (same). "The doctrine of marshaling requires that 'the

25  assets sought to be marshaled must be in the hands of or owned by a common debtor.' …

26  Marshaling is inappropriate when this requirement is not met." *In re Baldridge*, Case No. 4-02-

27  BK-06383EWH, 2007 WL 725737, at *2 (Bankr. D. Ariz., Mar. 6, 2007).

28  The TCC has not alleged facts that meet the standard for marshaling. The TCC is *not*

1  arguing that there are several funds *of PG&E* from which Cal OES has a right of recovery.

2  Rather, the TCC is arguing that Cal OES should be required to sue counties and cities that were

3  devastated by the Wildfires before Cal OES goes after PG&E.  It says "[c]ertain public entities

4  have entered into a settlement with the Debtors and stand to recover $1 billion in the Chapter 11

5  Cases. Upon information and belief, these public entities are liable to Cal OES for some portion

6  of this money."  (Supp. Obj. 1:17-19.)  This is both incorrect and irrelevant.  The settlement with

7  the public entities clearly states that no part of that settlement is for of monies provided by Cal

8  OES or FEMA.  (Heyn Decl. ¶ 5, Ex. E, §3(f).)  Even if it did not, the $1 billion settlement with

9  the local funds is not a separate fund *of PG&E* that requires marshaling. Marshaling does not

10  require Cal OES to sue the cities harmed by the Wildfires.

11  
   **G.   Cal OES Has Sovereign Immunity for Its Waste Removal; the TCC Has
          Not Alleged Conduct that Constitutes Unclean Hands.**

13  In the Supplemental Objection, the TCC argues that the Court should disallow Cal OES's

14  claim on the grounds that "Cal OES is attempting to recover over $2.4 billion for FEMA and

15  FEMA failed to exercise an appropriate level of care in providing service."  (Supp. Obj. at 2:17-

16  19.)  In support of its argument, the TCC quotes a letter from an individual wildfire survivor

17  asserting that "FEMA's management of the debris removal … was clearly flawed and [led] to

18  cost overruns for FEMA."  (*Id.* at 4:8-9.)  Based on these allegations, the TCC argues, without

19  citing any cases, that "FEMA's unclean hands preclude Cal OES' recover for FEMA's benefit."

20  (*Id.* at 4:11-12.)

21  Generally, California public entities are entitled to sovereign immunity.  "Except as

22  otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury

23  arises out of an act or omission of the public entity or a public employee or any other person."

24  Cal. Gov. Code § 815(a). "[S]overeign immunity is the rule in California; governmental liability

25  is limited to exceptions specifically set forth by statute."  *Cochran v. Herzog Engraving Co.*, 155

26  Cal. App. 3d 405, 409 (1984).  The TCC has not cited and Cal OES is not aware of any applicable

27  exception, which would apply to the debris and hazardous substance removal in connection with

28  the Wildfires.  As a result of Cal OES's immunity, its ability to recover for damages should not

be reduced based on comparative fault or a duty to mitigate damages.  *Cf. People ex rel. Grijalva v. Superior Court*, 159 Cal. App. 4th 1072, 1079 (2008).

Unclean hands can be a defense to equitable claims, such as *some* of the claims that Cal OES asserts in its proof of claim.  However, an unclean hands defense requires showing a "willful act" or "bad faith."  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).  "Bad intent is the essence of unclean hands;" merely negligent action is insufficient. *Dollar Sys. v. Avcar Leasing Sys.*, 890 F.2d 165, 173 (9th Cir. 1989) (applying California law; affirming trial court's holding that grossly negligent performance "did not rise to the level of misconduct necessary for the application of the unclean hands doctrine."); *Lucent Technologies, Inc. v. Microsoft Corp.*, 544 F. Supp. 2d 1080, 1100 (S.D. Cal. 2008) (same).  Even if the TCC could prove everything it alleges, the TCC would not meet the "willful misconduct" or "bad faith" standard for unclean hands.  Neither the TCC nor any of the property owners have alleged the kind of willful conduct that would give rise to an unclean hands defense.

## IV.   CONCLUSION

WHEREFORE, Cal OES respectfully requests the Court overrule the TCC's attack on the *prima facie* basis of the Cal OES claims in the Omnibus Objection.  To the extent the Court determines the TCC's objection creates a factual issue, Cal OES prays this matter be set for an evidentiary hearing pursuant to Local Rule 3007-1(b).

Dated: February 12, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California

By: *Matthew Heyn*

MATTHEW C. HEYN, Deputy Attorney General

PAUL J. PASCUZZI, ESQ.

FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP

*Attorneys for California Governor's Office of Emergency Services*