# EXHIBIT A

# United States Bankruptcy Court, Northern District of California

Fill in this information to identify the case (Select only one Debtor per claim form):

☐ PG&E Corporation (19-30088)

☑ Pacific Gas and Electric Company (19-30089)

RECEIVED
NOV 15 2019
PRIME CLERK LLC

Official Form 410
## Proof of Claim



04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
California Govenor's Office of Emergency Services
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor: Cal OES

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

CALIFORNIA DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
Matthew C. Heyn, Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California 90013

Contact phone (213) 269-6232
Contact email Matthew.Heyn@doj.ca.gov

Where should payments to the creditor be sent? (if different)

OFFICE OF EMERGENCY SERVICES
Attn: Tabitha Stout, Acting Deputy
 Director – Finance and Administration
3650 Schriever Avenue
Mather, California 95655

Contact phone (916) 845-8357
Contact email Tabitha.Stout@calOES.ca.gov

**4. Does this claim amend one already filed?**
☐ No
☑ Yes. Claim number on court claims registry (if known) 78463 & 79429    Filed on 10/21/2019
  MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $ 99,354,738.00. **Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Disaster assistance provided in connection with the Butte Fire (see attached)

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____
**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

### Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11/15/2019
              MM / DD / YYYY

*/s/ Tabitha Stout*
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Tabitha _____ Stout
      First name   Middle name   Last name

Title: Acting Deputy Director -- Finance and Administration

Company: California Governor's Office of Emergency Services
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 3650 Schriever Avenue
         Number   Street
         Mather        CA        95655
         City          State     ZIP Code

Contact phone: (916) 845-8357        Email: Tabitha.Stout@calOES.ca.gov

XAVIER BECERRA
Attorney General of California
BRIAN D. WESLEY
Supervising Deputy Attorney General
MATTHEW C. HEYN (SBN 227474)
Deputy Attorney General
   300 South Spring Street, Suite 1702
   Los Angeles, CA  90013
   Telephone:  (213) 269-6232
   Fax:  (916) 731-2144
   E-mail:  Matthew.Heyn@doj.ca.gov

*Attorneys for California Governor's Office of Emergency Services*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re*<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtor. | Case No. 19-30089 DM<br><br>Chapter 11<br><br>**CAL OES'S SUPPLEMENTAL STATEMENT IN CONNECTION WITH ITS AMENDED PROOF OF CLAIM FOR EMERGENCY DECLARATION NO. DR-4240 (BUTTE FIRE)** |

The California Governor's Office of Emergency Services ("**Cal OES**") submits this supplemental statement in support of this, its amended proof of claim (the "**Claim**") against Pacific Gas and Electric Company (the "**Debtor**" or "**PG&E**") for the Butte Fire (defined below), in satisfaction of its obligations under 44 C.F.R. § 204.62 and 42 U.S.C. § 5155.[1] Cal OES's claim is supported by, among other things, (i) public reporting and statements by PG&E regarding the cause of the Butte Fire; (ii) the conclusions of California Department of Forestry and Fire Protection ("**CAL FIRE**") and CAL FIRE's investigators; and (iii) Cal OES's project worksheets of (which are thousands of pages long) showing the amounts Cal OES spent in connection with the Butte Fire.  Cal OES's projects worksheets and CAL FIRE's Final

---

[1] 44 C.F.R. § 204.62 and 42 U.S.C. § 5155 are described, *infra* at 3:1-7.

1

Investigation Report can be made available for review upon Debtor's request. On information and belief, Cal OES alleges as follows:

**BACKGROUND ON CAL OES AND THE STAFFORD ACT**

Cal OES is a state agency created within the California Governor's Office. (Cal. Gov't Code § 8585(a).) Cal OES is charged with responsibility for "the state's emergency and disaster response services for natural, technological, or manmade disasters and emergencies, including responsibility for activities necessary to prevent, respond to, recover from, and mitigate the effects of emergencies and disasters to people and property." (Cal. Gov't Code § 8585(e).) The California Disaster Assistance Act ("**CDAA**") authorizes the Director of Cal OES to administer a disaster assistance program that provides financial assistance for costs incurred by local governments as a result of a disaster event.

In a catastrophic disaster, and if the State's governor requests, federal resources may be mobilized through FEMA for federal assistance to state or local governments to pay part of emergency work and the costs of rebuilding a community's damaged infrastructure. Federal assistance may include funding for fire abatement, debris removal, emergency protective measures and public services, repair or replacement of damaged public property, and grants for public schools and non-profit entities. The Robert T. Stafford Disaster Relief and Emergency Assistance Act (as amended, the "**Stafford Act**") authorizes FEMA to provide Federal assistance when the magnitude of an incident or threatened incident exceeds the affected State, Territorial, Indian Tribal, and local government capabilities to respond or recover. Sections 403, 406, and 407 of the Stafford Act authorize a Public Assistance ("**PA**") Program. FEMA coordinates with Cal OES to implement the program.

FEMA divides Public Assistance into two broad categories: emergency work and permanent work. Emergency work includes (i) Category A, Debris Removal; and (ii) Category B, Emergency Protective Measures. Permanent work includes: (i) Category C – Roads and Bridges; (ii) Category D – Water Control Facilities; (iii) Category E – Buildings; (iv) Category F – Utilities; and (v) Category G – Parks, Recreation, Other. Debris removal (Category A) includes the removal and disposal of debris from public property. FEMA may also reimburse State and

2

local governments for debris removal from private property when it is determined that the removal of such debris is in the public interest. Emergency protective measures (Category B) includes actions taken to save lives and alleviate immediate threats to public health and safety such as, but not limited to, fire suppression, evacuations, sheltering, and emergency medical care. Permanent work (Categories C-G) includes the permanent repair or replacement of disaster-damaged facilities. In addition, FEMA provides Public Assistance funding for administrative costs referred to as Category Z.

To be eligible for funding under FEMA's PA Program, a state agency, territory, tribe, local government, or private nonprofit organization must apply for funding to provide emergency or permanent work required as a result of a declared incident, located within the designated disaster area. Funding is tied directly to eligible work, and must be adequately documented, authorized, necessary and reasonable. Eligible costs include labor, equipment, materials, and contract work, as well as direct and indirect administrative costs.

The total cost to implement approved mitigation activities is generally funded by a combination of Federal and non-Federal sources. Cost Share, also known as "non-Federal share," or "match," is the portion of the costs of a federally assisted project or program *not* borne by the Federal government. To meet cost-sharing requirements, the non-Federal contributions must be reasonable, allowable, allocable, and necessary under the grant program and must comply with all Federal requirements and regulations. Both the Federal share and the non-Federal cost share must be for eligible costs used in direct support of activities that FEMA has approved in the grant award.

After approving applications, the Federal government and Cal OES enter into an arrangement called an "obligation." Once funds are "obligated," the Federal government and Cal OES have promised to spend the money – either immediately or in the future. This obligation is a legally binding agreement that will result in outlays, immediately or in the future. Federal government and Cal OES obligates funds to the state only after a project meets Stafford Act eligibility requirements. The state is usually the formal recipient of FEMA federal assistance. The state is then responsible for disbursing the money to applicants. FEMA's PA Program is a

cost-sharing program that reimburses applicants at least 75 percent of eligible costs. The remaining portion (up to 25 percent) is covered by the State of California and local agencies. Once funds are obligated, the Cal OES provides money to applicants directly based upon its policies, procedures and regulations. Cal OES determines how the non-federal share (up to 25 percent) is split with the sub-recipients (i.e. eligible applicants) based on regulations.

The Stafford Act also authorizes the President of the United States to provide Fire Management Assistance in response to a declared fire. Federal assistance is coordinated through FEMA. Under the Fire Management Assistance Grant ("**FMAG**") Program, FEMA provides assistance in the form of grants for equipment, supplies, and personnel costs, to any State, Indian tribal government, or local government for the mitigation, management, and control of any fire on public or private forest land or grassland that threatens such destruction as would constitute a major disaster. (42 U.S.C. § 5187.) As with amounts provided under the PA Program, amounts under the FMAG Program are "obligated" once granted and are subject to a "Cost Share."

Section 312(a) of the Stafford Act provides that "The President … shall assure that no such person, business concern, or other entity will receive such assistance with respect to any part of such loss as to which he has received financial assistance under any other program or from insurance or any other source." (42 U.S.C. § 5155(a).) Section 204.62 of FEMA's regulations implementing section 312 obligates Cal OES to "tak[e] all reasonable steps to recover all costs attributable to the negligence of [a] third party" and to reimburse FEMA from that recovery. (44 C.F.R. § 204.62.)

### THE BUTTE FIRE

This Claim arises from the Butte Fire. The Butte Fire began on September 9, 2015, and lasted for several days, causing extensive damages within Amador and Calaveras Counties, in the State of California. The Butte Fire was caused by: (i) the negligent and improper operation of power lines and related equipment by PG&E and its agents, (ii) the failure of power lines, and/or electrical infrastructure, and/or equipment that was designed, constructed, operated and maintained by PG&E; and (iii) PG&E's and its agents' failure to maintain vegetation within

4

prescribed California regulations and law concerning vegetation clearance from power lines and electrical infrastructure.

In January 2015, PG&E (through its agents and/or subcontractors) removed several trees that had stood at the outer edge of a tree stand near Butte Mountain Road and Charamuga Road, east of the community of Jackson in Amador County, California (the "**Fire Origin Area**"), but left the remaining trees in the stand untouched. This vegetation management was negligent because it ignored a well-understood principle: when a tree stand is altered and "captured" interior trees are exposed to open spaces, they are prone to failure.[2] PG&E then either failed to notice this error in subsequent inspections of the Fire Origin Area or failed to conduct any inspections at all. PG&E also failed to ensure that all its transmission equipment in the Fire Origin Area was always maintained in a safe condition by failing to remove dry, dead fuels below its transmission equipment.

On September 9, 2015, as a direct, foreseeable, and proximate result of PG&E's acts and omissions, one of the interior trees in the tree stand that PG&E and its agents and/or subcontractors had altered (the "**Origin Pine**") fell and came into contact with a nearby, 12,000-volt power line conductor owned, operated and maintained by PG&E. Embers fell onto the dry, dead fuels below PG&E's transmission equipment and started the Butte Fire. After it ignited, the Butte Fire burned more than 70,000 acres, destroyed 475 homes, killed two people, injured many more, caused millions of dollars of damage to public buildings and infrastructure and strained state and local resources.

---

[2] CAL FIRE's report provides:

> PG&E and/or its subcontractors ACRT and Trees, Inc. failed to identify [that when interior trees are exposed they are prone to failure] during their 2014 inspection when the pine trees were identified for removal, or in January 2015 when the trees were removed, or during any subsequent inspections/maintenance conducted on that section of powerlines and poles. Failing to identify the potential hazard of leaving weaker, inherently unstable trees on the edge of the stand, without conducting maintenance on them, ultimately led to the failure of the [Origin Pine] ... which contacted the powerline conductor operated by PG&E and ignited a wildland fire.

5

The Butte Fire spread rapidly due to high winds. After it ignited, it burned through the communities of Mountain Ranch, Silver Pine, West Point and Glencoe. Various California state and local agencies provided emergency services necessitated by the Butte Fire. These included, but are not limited to, (i) fire abatement, (ii) a wide variety of emergency protective measures, (iii) repair and rebuilding of damaged public property and infrastructure, (iv) cleanup and disposal of debris and hazardous materials, and (v) administration and coordination of these emergency services. As described below, pursuant to the California Disaster Assistance Act and the Stafford Act, FEMA and Cal OES paid or assumed a share of these costs and paid for rebuilding property damaged or destroyed by the Butte Fire. (Cal. Gov't Code § 8686; 42 U.S.C. §§ 5170-5189h.)

**BASIS FOR CLAIMS**

**Negligence and Negligence *Per Se*.** At all relevant times, PG&E had a common-law duty to maintain, control, operate, repair, inspect and operate their electrical transmission and distribution systems. PG&E also had a duty of care to identify, inspect, manage, and/or control vegetation growth near its power and transmission lines and/or other electric equipment. PG&E is liable for those harmed by breaches of its common-law duties of care. Cal OES subrogates to the rights of those harmed by PG&E's breaches of its common-law duties of care.

**California Public Utilities Code section 2106.** PG&E is a public utility. As a public utility, PG&E is legally required to comply with the rules and orders promulgated by the California Public Utilities Commission. (Cal. Public Utilities Code § 702.) PG&E is required to provide and maintain service, equipment and facilities in a manner adequate to maintain the safety, health, and convenience of their customers and the public. (Cal. Public Utilities Code § 451.) Under orders issued by the California Public Utilities Commission, PG&E is required to design, engineer, construct, operate, and maintain electrical supply lines and associated equipment in a manner appropriate with their use, taking into consideration local conditions and other circumstances, so as to provide safe and adequate electric service. (CPUC General Order 95, Rules 31.1-31.5, 35, 38, 43, 43.2, 44.1-44.4 and 48-48.1; CPUC General Order 165.) PG&E is required to maintain vegetation in compliance with California Public Resources Code sections

6

4292, 4293, 4435 and Health & Safety Code section 13001. PG&E's duties are not delegable. PG&E failed to comply with the applicable statutory, regulatory, and/or professional standards of care. As set forth above, PG&E breached its legal duties and caused the Butte Fire. Under California Public Utilities Code (especially section 2106 of the California Public Utilities Code), PG&E is liable for all loss, damages, or injury caused thereby or resulting therefrom. Cal OES is entitled to recover from PG&E these amounts for itself and as a subrogee.

**California Public Resources Code sections 4421 and/or 4222.** California Public Resources Code section 4421 prohibits setting a fire, or causing a fire to be set, on another's property without permission. By allowing the energized power lines to break into the nearby dry, receptive fuel bed, PG&E allowed a fire to be set on the property of another without the property owner's consent. In violating Public Resources Code section 4421, PG&E directly, foreseeably, and proximately caused California agencies to incur suppression, investigation, administrative, and other costs arising from the Butte Fire. California Public Resources Code section 4422 prohibits allowing a fire kindled by a person to escape that person's control or spread to the land of another. By allowing the energized power lines to break into the nearby dry, receptive fuel bed and kindle the Butte Fire, which escaped PG&E's control and spread to the land of others, PG&E violated the law. Cal OES is entitled to recover from PG&E these amounts for itself and as a subrogee.

**California Health and Safety Code sections 13001, 13007, 13009, and 13009.1.** California Health & Safety Code section 13001 makes it a misdemeanor to, through careless or negligent action, throw or place any "flaming or glowing substance, or any substance or thing which may cause a fire, in any place where it may directly or indirectly start a fire," or to use or operate "any other device which may cause a fire" while failing to "take such other reasonable precautions necessary to insure against the starting and spreading of fire." (Cal. Health & Safety Code § 13001.) In violating Health & Safety Code section 13001, PG&E directly, foreseeably, and proximately caused California agencies and local agencies to incur fire suppression, rescue or emergency medical services, investigation, administrative, and other costs arising from the Butte Fire. Those costs are compensable under numerous provisions, including California Health &

7

Safety Code section 13009 and 13009.1.  Cal OES is entitled to recover from PG&E these amounts for itself and as a subrogee.

California Health & Safety Code section 13007 provides that "[a]ny person who personally or through another willfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire." By its negligent acts or omissions described above, PG&E set fire to property owned by State agencies and local agencies and is liable under California Health & Safety Code section 13007.  Cal OES is entitled to recover from PG&E these amounts as a subrogee.

**California Health and Safety Code section 13009.6.**  California Health and Safety Code section 13009.6 authorizes agencies to recover the costs of an emergency response necessary "to protect the public from a real and imminent threat to health and safety ... to confine, prevent, or mitigate the release, escape, or burning of hazardous substances [from] any person whose negligence causes the incident ...." (Cal. Health & Safety Code § 13009.6(a)(1).)  Because evacuation was necessary, and because the Butte Fire "result[ed] in the spread of hazardous substances [that posed] a real and imminent threat to public health and safety beyond the building, structure, property, or public right-of-way where the incident originate[d]," Cal OES is entitled to recover from PG&E the costs incurred for the removal, disposal, and abatement of hazardous substances for itself and as a subrogee.  (*Id.*)

**Public Nuisance.**  In causing the Butte Fire, PG&E created a public nuisance that resulted in injury to people and property, obstructed the free use of property, interfered with the comfortable enjoyment of life and property and affected a considerable number of persons.  State and local agencies, to whose interest Cal OES is subrogated, were authorized to abate the public nuisance PG&E created and to injunctive relief.  (Cal. Civ. Code § 3494; Cal. Civ. Proc. Code § 731.)  Those state and local agencies, and therefore Cal OES, reasonably and necessarily incurred or assumed the costs claimed herein to abate that nuisance.  Cal OES, as subrogee, is

8

entitled to recover from PG&E "the amount which will compensate for all the detriment proximately caused" by the nuisance. (Cal. Civ. Code § 3333.)

## CAL OES'S COSTS

On September 10, 2015, in connection with the Butte Fire, California was declared eligible for the FMAG Program. The FMAG declaration was numbered 5111-FM. On September 21, 2015, Governor Edmund G. Brown Jr. requested a major disaster declaration. On September 22, 2015, President Barak Obama declared that a major disaster existed in the State of California for the Butte Fire.[3] The federal disaster was numbered DR-4240.

Various California state and local agencies that provided emergency services necessitated by the Butte Fire applied for PA grants and FMAG grants to respond, repair and remediate the Butte Fire. FEMA approved many of those FMAG and PA projects. Pursuant to the California Disaster Assistance Act and the Stafford Act, FEMA and Cal OES paid or assumed a share of the costs of those projects as set forth on the attached Schedules of Damages (the "**Schedules**"). (Cal. Gov't Code § 8686; 42 U.S.C. §§ 5170-5189h.) The Schedules show as "Applicant" the state or local agency that applied for the funds, the title of the project, the amount of obligated funds, the date funds were obligated, and the proportion breakdown of FEMA, state and applicant Cost Share. These costs were all incurred or assumed. The total funds Cal OES is obligated to pay or spend for FMAG-5111 and DR-4240 (excluding any amounts spent in Lake County and any amounts for CAL FIRE and the California Department of Toxic Substances Control)[4] are as follows:

| Public Assistance | Federal Share | State Share | Totals |
|---|---|---|---|
| **DR-4240** | $75,083,077 | $23,757,079 | $98,840,156 |
| **FMAG-5111** | $395,541 | $119,041 | $514,582 |
| **Total** | $75,478,618 | $23,876,120 | **$99,354,738** |

---

[3] The Major Disaster Declaration (DR-4240) also covered a wildfire in Lake County, which was not caused by PG&E. Although FEMA and CalOES provided PA Program funds for this fire as well, the amounts advanced for the fire in Lake county is excluded from the attached Schedules.

[4] Cal OES understands that CAL FIRE and the California Department of Toxic Substances Control are separately asserting claims for any amounts they incurred. Thus, Cal OES does not assert those claims here.

9

Although, in an abundance of caution, Cal OES asserts this proof of claim for all amounts listed on the attached Schedules, certain of these claims might be duplicative of other entities filing proofs of claim. In particular, Cal OES understands that (i) FEMA is asserting a proof of claim for its portion of any Cost Share in connection with Emergency Declaration No. DR-4240 and FMAG declaration FMAG-5111, and (ii) certain local governments and agencies and state agencies are filing proofs of claim for their disaster response costs and property damaged by the Butte Fire that was repaired, remediated or rebuilt using the PA and FMAG Program Funds. To the extent these claims are allowed, Cal OES will withdraw portions of this proof of claim for providing those funds.

**RESERVATION OF RIGHTS**

Any waiver of sovereign immunity under the law resulting from the filing of this claim is by Cal OES, and no other agency, unit, or entity of the State of California, and is strictly limited to this claim. Neither this supplemental statement nor any subsequent appearance, pleading, proof of claim, claim, or suit is intended to or shall be deemed or construed as:

(a) a consent by Cal OES to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Cal OES or other agency of the State of California;

(b) a waiver of any right of Cal OES to (i) have an Article III judge adjudicate in the first instance any case, proceeding, matter, or controversy as to which a Bankruptcy Judge may not enter a final order or judgement consistent with Article III of the United States Constitution, (ii) have final orders in non-core matters entered only after *de novo* review by a District Court Judge, (iii) trial by jury in any proceeding so triable in the Chapter 11 Cases or in any case, controversy, or proceeding related to the Chapter 11 Cases, (iv) have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (v) any and all rights, claims, actions, defenses, setoffs, recoupments, or remedies to which Cal OES is or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved hereby; or

(c) a waiver of any objections or defenses that Cal OES, the State of California, or any other agency, unit or entity of the State of California may have to this Court's jurisdiction over Cal OES, the State of California, or such other agency, unit or entity based upon the Eleventh Amendment to the United States Constitution or related principles of sovereign immunity or otherwise, all of which objections and defenses are hereby reserved.

The documents in support of the Claim are extremely voluminous. Each numbered grant includes project worksheets that are hundreds or thousands of pages long, documenting the expenses associated with the fire. Cal OES will provide these documents only upon request. Cal OES expressly reserves its right to revise, amend, and/or supplement this claim in the event additional information becomes available or is necessary to support this claim.

All correspondence and pleadings pertaining to this Proof of Claim and any amendments or supplements to it should be directed to the undersigned.

Dated: November 14, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
BRIAN D. WESLEY
Supervising Deputy Attorney General

By: /s/ Matthew Heyn
MATTHEW C. HEYN
Deputy Attorney General
*Attorneys for California Governor's Office of Emergency Services*

11

# DR-4240 (Excluding Lake County): Obligated Projects

| | | | | Totals excluding CAL FIRE & DTSC | | $99,872,867 | | | $75,083,077 | $23,757,079 |
|---|---|---|---|---|---|---|---|---|---|---|
| Applicant | FIPS | Cat | Title | Status | PW Amount | FEMA % | State % | FEMA Share | State Share |
| Calaveras County Water District | 009-91002 | F | CCWF001 - Water Treatment Plant | Obligated 1/16/16 | $4,221 | 75% | 18.75% | $3,166 | $792 |
| Calaveras Public Utility District | 009-91016 | E | CPUE001 - Transmission Line | Obligated 12/24/15 | $28,334 | 75% | 18.75% | $21,250 | $5,313 |
| Calaveras Unified School District | 009-91017 | E | CUSE001- HVAC Filters and Backflow Regulator | Obligated 12/24/15 | $9,969 | 75% | 18.75% | $7,477 | $1,869 |
| 39th District Agricultural Association-Angels Camp | 009-91009 | B | DAAB002 - EPM - Percolation Pond | Obligated 12/24/15 | $3,218 | 75% | 18.75% | $2,414 | $603 |
| Mokelumne Hill Sanitary District | 009-91019 | G | MHSG001 - Replace Fencing | Obligated 12/24/15 | $49,353 | 75% | 18.75% | $37,015 | $9,254 |
| California Department of Social Services | 000-92038 | B | CDSB001 - EPM Shelters/EOC | Obligated 12/24/15 | $34,755 | 75% | 25.00% | $26,066 | $8,689 |
| California Department of Fish and Wildlife | 000-92002 | B | CDFB001 - Police Patrol of Evacuated Areas | Obligated 12/31/15 | $31,974 | 75% | 25.00% | $23,980 | $7,994 |
| Ebbetts Pass Fire District | 009-91011 | B | EBFB001 - Emergency Protective Measures | Obligated 12/31/15 | $7,554 | 75% | 18.75% | $5,666 | $1,416 |
| California Conservation Corps | 000-92007 | B | CCCB001 - Emergency Protective Measures | Obligated 1/20/16 | $1,303 | 75% | 25.00% | $977 | $326 |
| California Highway Patrol | 000-92006 | B | CHPB001- Emergency Protective Measures | Obligated 5/02/18 | $469,318 | 75% | 25.00% | $351,988 | $117,330 |
| Angels Camp, City of | 009-02112 | B | ANGB001 - Emergency Protective Measures | Obligated 1/26/16 | $11,391 | 75% | 18.75% | $8,543 | $2,136 |
| Angels Camp, City of | 009-02112 | B | ANGB002 - Donated Resources | Obligated 5/26/16 | $805 | 75% | 18.75% | $603 | $151 |

## DR-4240 (Excluding Lake County): Obligated Projects

| Applicant | FIPS | Cat | Title | Status | PW Amount | FEMA % | State % | FEMA Share | State Share |
|---|---|---|---|---|---|---|---|---|---|
| Calaveras County Water District | 009-91002 | B | CCWB001 - Emergency Protective Measures | Obligated 1/20/16 | $82,059 | 75% | 18.75% | $61,544 | $15,386 |
| Calaveras Public Utility District | 009-91016 | F | CPUF002 - Air Release Valves, Residential Meters | Obligated 1/26/16 | $2,500 | 75% | 18.75% | $1,875 | $469 |
| Altaville Melones Fire District | 009-91012 | B | AMFB001 - Emergency Protective Measures | Obligated 2/3/16 | $17,598 | 75% | 18.75% | $13,199 | $3,300 |
| California Department of Resources Recycling and Recovery (CalRecycle) | 000-92095 | A | CDRA002 - Private Property Debris Removal |  | $77,077,691 | 75% | 25.00% | $57,808,268 | $19,269,423 |
| Calaveras County | 009-00000 | B | CCOB002 - EPM Health and Human Services | Obligated 2/17/16 | $63,429 | 75% | 18.75% | $47,572 | $11,893 |
| Mokelumne Hill Sanitary District | 009-91019 | A | MHSA001 - Debris Removal | Obligated 2/25/16 | $69,322 | 75% | 18.75% | $51,992 | $12,998 |
| 39th District Agricultural Association-Angels Camp | 009-91009 | F | DAAF001 - Electrical Lines | Obligated 3/23/16 | $30,563 | 75% | 18.75% | $22,922 | $5,731 |
| 39th District Agricultural Association-Angels Camp | 009-91009 | F | DAAF001 - Electrical Lines | Obligated 4/12/16 | $1,314 | 75% | 18.75% | $986 | $246 |
| Calaveras Public Utility District | 009-91016 | B | CPUB001 - Emergency Protective Measures | Obligated 2/17/16 | $18,187 | 75% | 18.75% | $13,640 | $3,410 |
| Mokelumne Hill Sanitary District | 009-91019 | B | MHSB001 - Emergency Protective Measures | Obligated 2/17/16 | $15,543 | 75% | 18.75% | $11,657 | $2,914 |
| California Department of General Services | 000-92267 | B | DGSB002 - Emergency Protective Measures | Obligated 2/17/16 | $708,041 | 75% | 25.00% | $531,031 | $177,010 |
| California Air Resources Board | 000-92051 | B | AIRB001 - Emergency Protective Measures | Obligated 2/17/16 | $35,727 | 75% | 25.00% | $26,795 | $8,932 |
| San Andreas Fire Protection District | 009-91018 | B | SAFB001 - Emergency Protective Measures | Obligated 2/25/16 | $53,961 | 75% | 18.75% | $40,471 | $10,118 |
| California Department of Parks and Recreation | 000-92001 | B | DPRB002 - Emergency Protective Measures | Obligated 2/25/16 | $87,204 | 75% | 25.00% | $65,403 | $21,801 |
| Mokelumne Hill Fire Protection District | 009-91020 | B | MHFB001 - Emergency Protective Measures | Obligated 2/25/16 | $140 | 75% | 18.75% | $105 | $26 |

DR-4240 (Excluding Lake County): Obligated Projects

| Applicant | FIPS | Cat | Title | Status | PW Amount | FEMA % | State % | FEMA Share | State Share |
|---|---|---|---|---|---|---|---|---|---|
| California Emergency Medical Services Authority | 000-92298 | B | EMSB001 - Emergency Protective Measures | Obligated 2/25/16 | $6,361 | 75% | 25.00% | $4,726 | $1,635 |
| Central Calaveras Fire and Rescue Protection District | 009-91013 | F | CCFF001- Water Tank; Central Calaveras Fire & Rescue | Obligated 2/25/16 | $11,420 | 75% | 18.75% | $8,565 | $2,141 |
| Central Calaveras Fire and Rescue Protection District | 009-91013 | B | CCFB002 - Donated Resources | Obligated 5/26/16 | $15,652 | 75% | 18.75% | $11,739 | $2,935 |
| Calaveras Public Utility District | 009-91016 | A | CPUA001 - Debris Removal | Obligated 2/27/16 | $17,751 | 75% | 18.75% | $13,313 | $3,328 |
| Central Calaveras Fire and Rescue Protection District | 009-91013 | B | CCFB001- Emergency Protective Measures | Obligated 2/25/16 | $45,278 | 75% | 18.75% | $33,959 | $8,490 |
| Calaveras County | 009-00000 | B | CCOB003 - EPM - MHU | Obligated 3/5/16 | $103,819 | 75% | 18.75% | $77,864 | $19,466 |
| Murphys Fire Protection District | 009-91021 | B | MFPB001 - Emergency Protective Measures | Obligated 3/5/16 | $8,449 | 75% | 18.75% | $6,337 | $1,584 |

# FMAG-5111

| | | | | Totals excluding CAL FIRE & DTSC | | | $527,388 | | $395,541 | $119,041 |
|---|---|---|---|---|---|---|---|---|---|---|
| Applicant | FIPS | Cat | Title | Status | PW Amount | FEMA % | State % | FEMA Share | State Share | |
| Amador County | 005-99005 | B | Amador County Emergency Protective Measures east od the City of Jackson | Obligated 7/22/2016 | $147,368 | 75% | 18.75% | $110,526 | $27,631 | |
| Amador Fire Protection District | 005-U6YIV | H | Wildland Firefighting - Butte Fire - Fire suppression in own jurisdiction - ACFPD | Obligated 7/22/2016 | $18,184 | 75% | 18.75% | $13,638 | $3,410 | |
| Amador Water Agency | 005-UV34G | B | Section 403 Emergency Protective Measures for Amdaor & Calaveras Counties East of Jackson | Obligated 8/11/2016 | $39,341 | 75% | 18.75% | $29,506 | $7,377 | |
| California Highway Patrol - CHP | 000-U79L2 | B | CHP Butte Fire Emergency Protective Measures east of the City of Jackson | Obligated 7/20/2016 | $169,697 | 75% | 25.00% | $127,273 | $42,424 | |
| Department of Parks & Recreation | 000-U8RA6 | B | Section 403 Emergency Protective Measures for Parks & Rec Dept. | Obligated 7/19/2016 | $8,151 | 75% | 25.00% | $6,113 | $2,038 | |
| Governor's Office of Emergency Services (Cal OES) | 000-U9VWF | H | Category "H" Engine Usage for Amador and Calaveras counties east of Jackson | Obligated 7/19/2016 | $39,063 | 75% | 25.00% | $29,297 | $9,766 | |
| Governor's Office of Emergency Services (Cal OES) | 000-U9VWF | Z | Category "Z" Direct Admin Costs | Obligated 8/22/2017 | $105,584 | 75% | 25.00% | $79,188 | $26,396 | |