Steven M. Campora (SBN: 110909)
DREYER BABICH BUCCOLA WOOD CAMPORA, LLP
20 Bicentennial Circle
Sacramento, CA 95826
Telephone: (916) 379-3500
Facsimile: (916) 379-3599
Email: scampora@dbbwc.com

*Counsel for Pedro Arroyo, Karen Arroyo, Tara Kulkarni, William Rodda, Corey Manning, Emily Manning, Karen Lockhart, Andrew Coolidge, Alfreda Runge, Philippe Langner, Kitoko Vineyards, Patti Meyer, Wardah Dator, Patricia O'Keefe, Scott Patterson, Rebecca Christensen, Wayne Charvel, Susan Charvel, Priscilla Hanford, Rick Scott and Kimberly Scott*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>    -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>             **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF STEVEN M. CAMPORA IN SUPPORT OF JOINDER TO OMNIBUS OBJECTIONS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS (SUBSTANTIVE) TO CLAIMS FILED BY THE DEPARTMENT OF HOMELAND SECURITY/FEDERAL EMERGENCY MANAGEMENT AGENCY (CLAIMS NOS. 59692, 59734 & 59783) AND TO CLAIMS FILED BY CALIFORNIA GOVERNOR'S OFFICE OF EMERGENCY SERVICES (CLAIM NOS. 87748, 87754, & 87755)**<br><br>Date:  February 26, 2020<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA  94102<br><br>Re: Docket Nos. 4943, 5096, 5319, 5320 |

I, STEVEN M. CAMPORA, declare:

1. I am an attorney with the Law Firm of Dreyer, Babich, Buccola, Wood, Campora LLP, attorneys of record for the fire victims named in this joinder. In addition, my office represents several thousand other fire victims.

2. I have been involved in the fire litigation involving PG&E for a number of years, specifically including, but not limited to litigation arising from the Butte Fire, thte Nuns Fire, the Atlas Fire, the Cascade Fire and the Tubbs Fire. I was and remain on Plaintiffs' Liaison Counsel in the Butte Fire JCCP in Sacramento County Superior Court and I am on the Plaintiffs' Executive Committee for the North Bay Fires JCCP.

3. I have personally taken more than 60 depositions of witnesses and experts in litigation relating to the Butte Fire and the North Bay Fires, specifically including Nuns, Cascade, Tubbs and Atlas. Those depositions include witnesses to the fires, PG&E employees, Cal Fire investigators and experts designated by the parties. I have met with cause and origin experts concerning the Nuns, Cascade, Tubbs, Atlas and Camp Fires. I have personally reviewed several hundred thousand pages of documents produced by Pacific Gas and Electric Company. I have reviewed hundreds of scene photographs relating to the various fires and I have personally been to the scene of Nuns, Cascade, Atlas and Tubbs Fire. I am familiar with all of the available evidence which was gathered in prosecuting the actions against Pacific Gas & Electric Company. I personally retained experts who inspected and photographed the scene of the Camp Fire, the Nuns Fire, the Cascade Fire, the Atlas Fire and the Tubbs Fire. I have reviewed documents relating to the maintenance of the Caribou Palermo Transmission Line. I have reviewed reports concerning notice to Pacific Gas and Electric Company concerning the method of failure of the hook on the Caribou Palermo Line.

4. I am unaware of any evidence which indicates or tends to indicate that any person employed by Pacific Gas and Electric Company intentionally caused any North Bay Fires, specifically including the Nuns, Cascade, Tubbs, and/or Atlas Fire. I am unaware of any evidence which indicates or tends to indicate that any person employed by Pacific Gas and Electric Company intentionally caused the Camp Fire.

5. During the course of discovery no evidence was discovered which indicated that PG&E intentionally caused the fires. As it relates to the Tubbs Fire, the Cal Fire witnesses and experts were not able to identify any specific evidence of the ignition source. (See for example the Deposition of Scott Lohse, page 529, Exhibit A, and the Deposition of Jim Nolt, page 63, Exhibit B.)

6. During the course of discovery and investigation, concerning the Tubbs Fire, Plaintiffs discovered a security video from a winery across the street from 1128 Bennett Lane. 1128 Bennett Lane was generally acknowledged as the area of origin of the Tubbs Fire. The video showed a flash of light, from the direction of 1128 Bennett Lane, at 9:20 p.m. on the night of the fire. The Plaintiffs also discovered two fuses on Pole 773, located on 1128 Bennett Lane, blew at 9:20 p.m. on the night of the fire. (See the Deposition of Jim Nolt, pages 206-208, Exhibit B.) Plaintiffs also discovered arc marks on PG&E distribution line on 1128 Bennett Lane. A true and correct copy of a photograph of one of the marks is attached hereto as Exhibit C. Plaintiffs discovered evidence indicating that arcing on the distribution line would have caused the fuses on Pole 773 to blow. Mr. Nolt confirmed that the flash of light and the fuses blowing were not "coincidence." (See the Deposition of Jim Nolt, pages 206-208, Exhibit B.) The evidence discovered by Plaintiffs demonstrates that the cause of the Tubbs Fire was a tree or branch coming in contact with a PG&E distribution line. Plaintiffs did not discover evidence that PG&E intentionally caused the subject fire.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct. Executed this 12th day of February 2020, at Sacramento, California.

_____
Steven M. Campora

# EXHIBIT A

```
 1        SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2               COUNTY OF SAN FRANCISCO
 3
 4   Coordinating Proceeding,    ) Case No.
 5   Special Title (Rule 3.550),) JCCP No. 4955
 6                               )
 7   CALIFORNIA NORTH BAY FIRE   )
 8   CASES,                      )
     _____)
 9
10
11
12
13   CONTINUED VIDEOTAPED DEPOSITION OF CAL FIRE CAPTAIN
14              SPECIALIST SCOTT LOHSE
15                  Chico, California
16             Friday, October 18, 2019
17                    Volume II
18
19
20
21   Reported by:
     KAYLA M. KNOWLES
22   CSR No. 14071
23   Job No. 3598815
24
25   PAGES 309 - 556
```

Page 309

```
 1  BY MR. PEABODY:
 2     Q   Sir, when a conclusion says that there's an
 3  unknown electrical event affecting privately owned
 4  conductor or equipment, what is -- what is being
 5  communicated by "affecting"?                           03:49:35
 6         MS. WELCHANS:  Objection.  Lacks
 7  foundation.
 8         MR. MACDONALD:  Also vague.
 9  BY MR. PEABODY:
10     Q   Did you ever discuss that with John             03:49:41
11  Martinez?
12     A   That would -- affecting means having a
13  cause and effect; so something happening to damage
14  those lines that would result in a fire.
15     Q   Well, do you have any evidence that the         03:49:56
16  privately owned conductor or equipment caused the
17  fire?
18         MS. WELCHANS:  Objection.  Asked and
19  answered several times.
20         THE WITNESS:  No.                                03:50:05
21         MR. MACDONALD:  Join.
22  BY MR. PEABODY:
23     Q   Sir, did you do any report writing after
24  October 27th?
25         MR. MACDONALD:  Asked and answered.              03:50:45
```

Page 529

# EXHIBIT B

```
 1           SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                    COUNTY OF SAN FRANCISCO
 3      _____
 4      Coordination Proceeding,         )  JCCP No. 4955
 5      Special Title (Rule 3.550)       )
 6                                       )
 7      CALIFORNIA NORTH BAY FIRE CASES  )
 8      _____)
 9      AND RELATED CROSS-ACTIONS.       )
10      _____)
11
12
13
14              VIDEOTAPED DEPOSITION OF JIM NOLT
15                    Sacramento, California
16                   Tuesday, October 8, 2019
17                          Volume I
18
19
20      Reported by:
21      CARLA SOARES
22      CSR No. 5908
23      JOB No. 3562334
24
25      PAGES 1 - 225

                                                      Page 1
```

```
 1      Q    And have you ever investigated a fire          10:42:19
 2   where you found that an arcing event at 120 volts or
 3   240 volts was able to start a fire?
 4           MS. WINSOR:  Objection.  Compound.
 5           THE WITNESS:  Yes.  There are lots of           10:42:38
 6   arcing events that provide sources of ignition,
 7   provided the fuels are available.
 8   BY MR. PICKETT:
 9      Q    Okay.  But in this case, you didn't find
10   any evidence of arcing on any of the private           10:42:47
11   electrical lines, right?
12      A    That's -- yes, that's true.
13      Q    Okay.  Now, typically, what are the ranges
14   of -- let me back up.
15           I think most people are familiar with a        10:43:05
16   circuit breaker box in their house, and those have
17   circuit breakers in them that trip or turn off the
18   power if there's an electrical fault of some
19   magnitude; is that a fair statement?
20      A    Yes.                                            10:43:20
21      Q    And those breakers, what are the range in
22   amps that those breakers are usually rated at,
23   approximately, in your experience?
24           MS. WINSOR:  Objection to foundation,
25   assumes facts.                                          10:43:32
```

```
 1        Q    About midway in that paragraph it says,          15:07:20
 2   "The event and interval data for the meters at 1200
 3   Bennett Lane and 1177 Bennett Lane, provided at
 4   PGE-CF_0-142683, show that the 1200 Bennett and 1177
 5   Bennett meters recorded outage events at 9:20 p.m.         15:07:39
 6   on October 8th, 2017."
 7             Did I read that accurately?
 8        A    Yes.
 9        Q    Then it says, "consistent with 19 other
10   smart meters downstream of Fuse 773."                      15:07:51
11             Do you see that?
12        A    Yes.
13        Q    So that means there were 21 smart meters
14   that recorded outage events all at 9:20 p.m., true?
15        A    Yes.                                             15:08:03
16        Q    It says "All of this data is consistent
17   with Fuse 773 operating at 9:20 p.m. and
18   de-energizing the residences downstream of that fuse
19   at that time, including 1128, 1200 and 1177 Bennett
20   Lane."                                                     15:08:19
21        A    Yes.
22        Q    Based on your investigation, you
23   understand -- strike that.
24             Based on that information, was it your
25   understanding that there was no power on the Zink         15:08:31
```

```
 1   property after 9:20 p.m. on October 8th?              15:08:35
 2        A    What is the Zink property?
 3        Q    1128 Bennett Lane.
 4        A    That's -- yes, that's what the data is
 5   saying.                                               15:08:58
 6        Q    Okay.  And the data also says that the
 7   fuses blew at the same time as the arcing event,
 8   true?
 9             MS. WINSOR:  Vague as to "arcing event."
10   Assumes facts.                                        15:09:10
11   BY MR. CAMPORA:
12        Q    Let's do it this way:  You looked at the
13   picture of the flash, right?
14        A    Yes.
15        Q    The flash happens at 9:20, correct?         15:09:14
16        A    Yes.
17        Q    This says that the fuse blew at 9:20,
18   correct?
19        A    Yes.
20        Q    Okay.  Did you know that when you wrote     15:09:20
21   your report in December of 2018?
22        A    Yes.
23        Q    Okay.  You make no mention of that fact.
24        A    But they were all unrelated pieces that I
25   couldn't put together into a meaningful whole.        15:09:54
```

| | | |
|---|---|---|
| 1 | Q But you do know now, sitting here today, | 15:09:58 |
| 2 | that there is a flash which appears to be an arcing | |
| 3 | event at 9:20, correct? | |
| 4 | MS. WINSOR: Assumes facts. | |
| 5 | MS. NORTH: Objection. | 15:10:07 |
| 6 | THE WITNESS: There's a flash. | |
| 7 | BY MR. CAMPORA: | |
| 8 | Q Okay. And you do know that the fuses blew | |
| 9 | at 9:20, correct? | |
| 10 | A That's what the document says. | 15:10:13 |
| 11 | Q Okay. And sitting here today, sir, do you | |
| 12 | think that was just coincidence? | |
| 13 | MS. NORTH: Objection. Argumentative. | |
| 14 | THE WITNESS: It's unlikely. | |
| 15 | BY MR. CAMPORA: | 15:10:31 |
| 16 | Q It's unlikely to be coincidence, true? | |
| 17 | A Yes. | |
| 18 | Q I want to do a couple things because the | |
| 19 | jury is going to watch this, and we've been using | |
| 20 | words that they don't have any idea what they are or | 15:10:46 |
| 21 | mean. | |
| 22 | You talked earlier today about ohms. | |
| 23 | Do you remember that? You mentioned ohms. | |
| 24 | A Okay. | |
| 25 | Q Can you tell the jury what an ohm is? | 15:10:54 |

Veritext Legal Solutions
866 299-5127

Case: 19-30088    Doc# 5759-1    Filed: 02/12/20    Entered: 02/12/20 16:50:06    Page 12 of 14

# EXHIBIT C

