Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| -and- | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS (SUBSTANTIVE) TO CLAIMS FILED BY ADVENTIST HEALTH SYSTEM/WEST AND FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER (CLAIM NOS. 59459 & 59996)** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Date: March 25, 2020 Time: 10:00 a.m. (Pacific Time) Place: United States Bankruptcy Court Courtroom 17, 16th Floor San Francisco, CA 94102 |
| | Objection Deadline: March 11, 2020 |

*BAKER & HOSTETLER LLP*
*ATTORNEYS AT LAW*
*SAN FRANCISCO*

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     JURISDICTION.................................................................................................... 2

III.    RELIEF REQUESTED ......................................................................................... 3

IV.     BACKGROUND .................................................................................................. 3

    A.      The Camp Fire ........................................................................................ 3

    B.      Adventist Health...................................................................................... 3

    C.      Adventist Health Claim Nos. 59459 and 59996 (Duplicate Claims) ..................... 4

V.      THE ADVENTIST HEALTH CLAIMS MUST BE CLASSIFIED AS
    SUBROGATION CLAIMS AND/OR DISALLOWED ....................................................... 6

    A.      Adventist Health's Claims Should Be Classified as Subrogation Claims and
    Denied as Wildfire Claims Because it will Recover its Wildfire Losses from
    Insurance Coverage ............................................................................................. 6

    B.      The Court's Bar Date and RSA Approval Orders Bar Adventist Health's
    Insurer from Sharing in Adventist Health's Distributions from the Individual
    Wildfire Trust and Direct the Parties to Recover on the Insurer's Losses only
    from the Subrogation Claims Trust ....................................................................... 6

    C.      The Adventist Health Claims Far Exceed Losses as Stated in its MSRB
    Disclosures ......................................................................................................... 8

VI.     BASIS FOR RELIEF REQUESTED................................................................... 9

VII.    RESPONSES TO THIS OBJECTION ............................................................... 10

VIII.   RESERVATION OF RIGHTS ........................................................................... 11

IX.     COMPLIANCE WITH BANKRUPTCY LOCAL RULE 3007-1 .................. 11

X.      NOTICE............................................................................................................... 11

XI.     NO PREVIOUS REQUEST .............................................................................. 11

XII.    CONCLUSION ................................................................................................... 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Delivery Serv., Inc. v. Gates*,
    183 Cal. App. 3d 967 (Cal. Ct. App. 1986) .......................................................... 8

*In re King Street Invs., Inc.*,
    219 B.R. 848 (B.A.P. 9th Cir. 1998) ................................................................... 10

*Maloney v. Rhode Island Ins. Co.*,
    115 Cal. App. 2d 238 (Cal. Ct. App. 1953) ......................................................... 8

*Michelson v. Hamada*,
    29 Cal. App. 4th 1566 (Cal. Ct. App. 1994) ........................................................ 8

*In re Pugh*,
    157 B.R. 898 (B.A.P. 9th Cir. 1993) ................................................................... 10

*Wright v. Holm (In re Holm)*,
    931 F.2d 620 (9th Cir. 1991) .............................................................................. 10

**Statutes**

11 U.S.C. § 502 ............................................................................................................ 1, 3

11 U.S.C. § 502(b)(1) ...................................................................................................... 9

28 U.S.C. § 157 ................................................................................................................ 2

28 U.S.C. § 157(b) ........................................................................................................... 2

28 U.S.C. § 1334 .............................................................................................................. 2

28 U.S.C. § 1408 .............................................................................................................. 3

28 U.S.C. § 1409 .............................................................................................................. 3

Cal. Bus. & Prof. Code § 17500 ..................................................................................... 5

Cal. H. & S. Code § 13007 ............................................................................................. 5

Cal. Pub. Util. Code § 2106 ............................................................................................ 5

**Rules**

Fed. R. Bankr. P. 2002 .................................................................................................. 11

Fed. R. Bankr. P. 3007 ................................................................................................. 1, 3

ii

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fed. R. Bankr. P. 3007(e) ........................................................................................ 11

Local Bankr. Rule 3007-1 ......................................................................................... 1

Local Bankr. Rule 3007-1(a) .................................................................................... 11

Local Bankr. Rule 3007-1(b) .................................................................................... 11

Local Bankr. Rule 5011-1(a) ...................................................................................... 2

Local Rule 3007-1 ............................................................................................... 3, 11

**Other Authorities**

3 COLLIER ON BANKRUPTCY § 502.02 (Lawrence King, 15th ed. 1991) .................................... 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**THIS OBJECTION SEEKS TO DISALLOW AND/OR MODIFY CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT A</u>, ATTACHED.**

The Official Committee of Tort Claimants (the "**TCC**") in the chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors (collectively, the "**Debtors**"), hereby files this Objection, pursuant to section 502 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), to the two claims filed by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River ("**Adventist Health**") listed on <u>**Exhibit A**</u> hereto (the "**Adventist Health Claims**"). The Adventist Health Claims, in addition to being duplicative (*compare* Claim No. 59459 *with* Claim No. 59996, both seeking over $1 billion dollars and each including over $500,000 in punitive damages), are grossly overinflated as compared to Adventist Health's audited and publicly filed Financial Statements and Offering Memoranda. As such, the Adventist Health Claims must be classified as subrogation claims and/or disallowed. In support of the Objection, the TCC relies on the Declaration of Danyll W. Foix ("**Foix Decl.**"), filed contemporaneously herewith, and respectfully represents as follows:

## I. <u>INTRODUCTION</u>

The Debtors are liable for the death and destruction caused by the Butte Fire, North Bay Fires and Camp Fire. The individuals and businesses impacted by these wildfires have filed over 72,000 proofs of claim, and the Adventist Health Claims are among them. Adventist Health operated a healthcare campus, with a 100-bed hospital, in Paradise, California, which was a valuable hospital for the community.

Adventist Health has a $1 billion claim for its alleged losses arising out of the Camp Fire. Adventist Health's Claims should be classified as a subrogation claim, and channeled to the subrogation claim class for three principal reasons:

(1) First, Adventist Health has $1 billion of insurance coverage that covers Adventist Health's claim;

1

1    (2) Second, Adventist Health's 2018 financial statement certifies that Adventist Health

2          expects to recover its damages from its insurance; and

3    (3) Third, the Court ordered the insurers to recover on their claims from the Debtors' $11

4          billion Subrogation Trust fund, and not from the Wildfire Victims Trust Fund.

5    Alternatively, the Court should deny Adventist Health's $1 billion claim on the following

6    independent grounds:

7    (1) To the extent Adventist Health contends that it has an obligation to collect its losses and

8          turn them over to its insurer, Adventist Health did not file a subrogation claim on behalf

9          of its insurer as required by the Court's Orders.

10   (2) Adventist Health's alleged damages are duplicative of each other.

11   (3) Adventist Health's alleged damages are not recoverable under the law.

12   (4) Adventist Health has not documented its alleged damages.

13   (5) Adventist Health's alleged damages are excessive.

14   The TCC has repeatedly requested that Adventist Health provide insurance coverage

15   documentation for its Claims and Adventist Health has declined to do so. The TCC accordingly

16   objects to the Adventist Health Claims at this time because doing so is necessary to advance the

17   Chapter 11 Cases. The wildfire victims will soon be asked to vote on a plan of reorganization. The

18   Adventist Health Claims, if successful as filed (and separate and apart from the obvious problem

19   concerning duplication), would take an enormous amount of money from the wildfire victims,

20   which is far in excess of the amount of damage identified in Adventist Health's public filings. For

21   these reasons, and as discussed below, the Adventist Health Claims are ripe for adjudication and

22   must be classified as subrogation claims and/or disallowed prior to plan confirmation.

23   **II.    JURISDICTION**

24   This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334,

25   the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24

26   (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C.

27   § 157(b). The TCC consents to the entry of a final order by the Court in connection with this

28   Objection to the extent that it is later determined that the Court, absent the consent of the parties,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    RELIEF REQUESTED

By this Objection, the TCC seeks the entry of an Order, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Bankruptcy Local Rule 3007-1, classifying as subrogation claims and/or disallowing the Adventist Health Claims listed on **Exhibit A** hereto. A proposed form of order granting the relief requested herein on a final basis is attached hereto as **Exhibit C**.

## IV.    BACKGROUND

### A.    The Camp Fire

On November 8, 2018, the "Camp Fire" started in Butte County and eventually consumed 153,336 acres, caused 85 civilian fatalities, and destroyed at least 18,804 residential and commercial structures. *See* Foix Decl., Ex. 1 at 1. The Camp Fire was caused by unsafe electrical infrastructure owned, operated, and improperly maintained by PG&E. *See, e.g., id*.

### B.    Adventist Health

Adventist Health is a not-for-profit corporation that controls and operates numerous healthcare facilities, including hospitals, across the western United States. *Id.*, Ex. 2 at 4. The Feather River Hospital in Paradise, California, is one of Adventist Health's many facilities. *Id*. The Feather River facility included a 100-bed hospital and comprised approximately 4.8% of Adventist Health's total revenues and support during 2017. *Id.*, Ex. 4 at 29. The Feather River facility was temporarily closed on November 8, 2018 due to the Camp Fire. *Id.*, Ex. 3 at 29.

As an issuer of municipal securities, Adventist Health files periodic audited disclosures such as financial statements and reports on its business operations with the Municipal Securities Rulemaking Board ("**MSRB**").[1] Concerning the Camp Fire, Adventist Health's MSRB disclosures have included:

---

[1] MSRB is a self-regulatory organization charged by Congress with promoting fair and efficient municipal securities markets. The MSRB operates a website known as the Electronic Municipal Market Access ("**EMMA**"). EMMA is designated by the U.S. Securities and Exchange Commission as the official source for municipal securities data and disclosure documents. The SEC

3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- Adventist Health has insurance providing $1 billion in coverage applicable to the Camp Fire damage to Feather River facility. *Id.* at 30.

- Adventist Health believes its insurance provides "recovery of substantially all Camp Fire related expenses and reconstruction costs" for property damage. *Id.*

- The temporary closure of Feather River facility has "negatively impacted" Adventist Health "in an amount of approximately $10 million through June 30, 2019." *Id.*, Ex. 4 at A-36.

- Adventist Health "believes it is entitled to business interruption insurance recoveries for the lost income related to [Feather River] properties." *Id.*, Ex. 3 at 30.

- Adventist Health has received $30 million in insurance payments for its $32 million in "payroll and professional fees expenses and fire remediation and demolition expenses." *Id.*

- Adventist Health "has disposed of all fixed assets that were fully destroyed during the Camp Fire" and this included "current assets with a book value of $4 [million] primarily related to destroyed inventory." *Id.*

Adventist Health's property and commercial insurer for its Camp Fire losses is FM Global. *See* Claim No. 59459, Addendum A at 8; Claim No. 59996, Addendum A at 8 (referring to FM Global). FM Global is a mutual insurance company owned by its policyholders. As FM Global explains on its website: "You're more than a policyholder. As an FM Global client, you'll be an actual owner in our company. . . . It also rewards you with a potential membership credit premium when our financial results make it possible."[2]

**C.     Adventist Health Claim Nos. 59459 and 59996 (Duplicate Claims)**

Adventist Health filed Claim No. 59459 in the amount of $1,012,061,204 alleging to have suffered property damage, business interruption, lost wages and earning capacity, as well as other

designated the EMMA website as the official repository for municipal securities disclosures in 2009.
[2] *See* FM Global webpage entitled *The FM Global Difference*, available at https://www.fmglobal.co.uk/about-us/why-fm-global/the-fm-global-difference; *see also* FM Global's webpage entitled *Mutual Ownership – Mutual Gain* (stating each "policyholder is actually our owner" and this means "everyone shares in our <u>financial health</u>"), available at <u>https://www.fmglobal.com.au/about-us/why-fm-global/mutual-ownership-mutual-gain</u>.

4

losses specified in addenda to the claim. The claimed losses relate to the Camp Fire. Adventist Health seeks damages in the form of economic damages, punitive damages, attorney's fees and costs, interest, as well as all other damages recoverable under California law and as specified in the addenda. Claim No. 59459 was executed by Bill Wing as CFO and Assistant Secretary for Adventist Health on "October 17, 2109" [sic]. Adventist Health claims the Debtors are jointly and severally liable for the damages suffered by Adventist Health as a result of the Camp Fire on the basis of negligence, inverse condemnation, public and private nuisance, premises liability, trespass, and violation of Cal. Pub. Util. Code § 2106, Cal. H. & S. Code § 13007 and Cal. Bus. & Prof. Code § 17500.

The same day Adventist Health filed Claim No. 59459, Adventist Health also filed Claim No. 59996. Other than a typo reflecting the year as "2109," Claim 59549 and 59996 appear identical; both seek $1,012,061,204 for property damage, business interruption, lost wages and earning capacity, and other losses specified in the same addenda and relate to the Camp Fire. Both claims seek economic and punitive damages, attorney's fees and costs, interest, as well as all other damages recoverable under California law and per the same addenda. Both claims were executed by Bill Wing as CFO and Assistant Secretary for Adventist Health. However, Claim No. 59996 does not indicate that it amends a claim already filed. As such, it appears to be a duplicate of Claim No. 59459. As such, either Claim No. 59459 or Claim No. 59996 must be disallowed.

**D.** **Adventist Health Declined to Provide Insurance Information and Substantiate Its Claims**

Given discrepancies between Adventist Health's MSRB disclosures and its Claims – such as Adventist Health claiming hundreds of millions of dollars in property damage and lost income while telling investors that insurance provides coverage for "substantially all" such damages – the TCC requested that Adventist Health provide information about insurance coverage and payments for its Camp Fire-related claims. *See* Foix Decl., ¶ 3. Adventist Health refused to provide the requested information and declined to explain any specifics about its insurance coverage and payments. *See id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## V. THE ADVENTIST HEALTH CLAIMS MUST BE CLASSIFIED AS SUBROGATION CLAIMS AND/OR DISALLOWED

### A. Adventist Health's Claims Should Be Classified as Subrogation Claims and Denied as Wildfire Claims Because it will Recover its Wildfire Losses from Insurance Coverage

Adventist Health's Claims should be classified as subrogation claims and denied as wildfire claims because Adventist Health admits it will recover its wildfire losses from its insurance coverage. As outlined above, Adventist Health's MSRB disclosures acknowledge that it already has collected at least $30 million in insurance payments, and its MSRB disclosures further state that it expects to receive insurance payments for "substantially all" Camp Fire damages from an insurer that issued a $1 billion policy for Adventist Health. *See* Foix Decl., Ex. 3 at 30. With the availability of this insurance coverage for its Camp Fire-related damage, Adventist Health's claims here constitute an attempt to recover amounts that are not legally recoverable from the $13.5 billion Wildfire Trust in this case, but may constitute claims that could be brought against the Subrogation Trust. To the extent that Adventist Health contends it has an obligation (under its insurance policy, contract, or by law) to turn over all or a portion of its recoveries to its insurer, that portion of the claim must be classified as a subrogation claim for recoveries for the benefit of its insurer from the Subrogation Claims Trust.

### B. The Court's Bar Date and RSA Approval Orders Bar Adventist Health's Insurer from Sharing in Adventist Health's Distributions from the Individual Wildfire Trust and Direct the Parties to Recover on the Insurer's Losses only from the Subrogation Claims Trust

Adventist Health may contend that it has an obligation to collect a distribution on its wildfire claim in the full amount of its wildfire losses, and then turn over the insurer's share of the distribution to the insurer, FM Global, in which Adventist Health may be a policyholder owner. Adventist Health is wrong on both counts.

The Court's Bar Date and RSA Approval Orders bar Adventist Health's insurer from sharing in Adventist Health's distributions from the victims' Wildfire Trust and direct the parties to recover on the insurer's losses only from the $11 billion Subrogation Claims Trust, not the $13.5 billion Wildfire Trust.

6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

For example, the Court's July 1, 2019 Bar Date Order directed each wildfire claim insurer to file a subrogation claim by October 21, 2019, in order to "share in distributions from the Debtors' bankruptcy estate," and the Court's December 19, 2019 Subrogation RSA Approval Order allowed those claims in the total amount of $11 billion to be paid from a segregated Subrogation Trust and not from the Wildfire Trust. *See* Dkt. No. 2806, Bar Date Order at ¶ 9, Exh. B-2 ("You MUST file a Proof of Claim…to share in distributions from the Debtors' bankruptcy estates."); Dkt. No. 5173, Subrogation RSA Approval Order at ¶ 6 ("The Subrogation Claims Settlement is hereby approved, including…the Allowed Subrogation Claim Amount in the aggregate amount of $11 billion"), Dkt. No. 3992-1, Subrogation RSA Term Sheet at 2 (establishing "Subrogation Trust for the benefit of Subrogation Claims" defined as "claims…that arise from subrogation."). Adventist Health's insurer did not file such a claim, and Adventist Health did not file such a claim on behalf of the insurer.

As another example, the Court's December 19, 2019 Order approved the TCC RSA that established a separate Wildfire Trust to pay "Non-Subrogation Wildfire Claims," such as Adventist Health's wildfire claim, and not insurance Subrogation Claims. Dkt. No. 5174, Order approving Debtors' Motion Authorizing Debtors and TCC to Enter into RSA; Dkt. 5038-1 at 41 ("Summary of Terms Relevant to Treatment of Non-Subrogation Wildfire Claims"). Adventist Health's insurer should not be able to circumvent the TCC RSA terms by recovering distributions from the Wildfire Trust indirectly through its insured, Adventist Health.

If Adventist Health really has such a duty to collect from the Wildfire Trust and turn over a share of distributions to its insurer, Adventist Health has failed to comply with the Court's Orders on how to collect from the Debtor. For example, the Court's July 1, 2019 Bar Date Order directed the insurers and "their agents" to file their own claims on a Subrogation Insurer Wildfire Claim form. *See* Dkt. No. 2806-3, Subrogation Claim Form (signature for the insurer or "the authorized agent"). Adventist Health did not file its wildfire claim as "agent" for its insurer under Adventist Health's insurance policy in compliance with the Court's Bar Date Order.

Moreover, California law would preclude Adventist Health from collecting from the Wildfire Trust for its insurer as it appears to be attempting to do here. In California, an entity that

has a duty to collect and/or turn over money to another party is an agent for the other party. *See Maloney v. Rhode Island Ins. Co.*, 115 Cal. App. 2d 238, 246 (Cal. Ct. App. 1953) (holding that a broker who collects premiums from an insured as a "medium" becomes an agent for the insurer with respect to receipt and turnover of the premiums); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1575-76 (Cal. Ct. App. 1994) (holding that a physician who sent out invoices and received funds on behalf of another physician constituted an "agent . . . with respect to the handling of [the] accounts and collection of the proceeds those accounts engendered" as a matter of law, even though the physician was not denominated the agent); *Advanced Delivery Serv., Inc. v. Gates*, 183 Cal. App. 3d 967, 975 (Cal. Ct. App. 1986) (holding that a messenger service that placed bets on behalf of its clients and collected the winnings acted as an agent and the collections "would be the property of its clients" as a matter of law).

At any rate, if Adventist Health's insurer were to file a late Subrogation Claim now, the recovery for the insurer would be channeled to the $11 billion Subrogation Trust by operation of the Court's December 19, 2019 Order approving the Subrogation RSA settlement, and not to the $13.5 billion Wildfire Trust.

**C.    The Adventist Health Claims Far Exceed Losses as Stated in its MSRB Disclosures**

Adventist Health Claim Nos. 59459 and 59996 should be disallowed or modified because they each claim amounts that greatly exceed the losses as stated in Adventist Health's MSRB disclosures.

Adventist Health primarily asserts claims for destroyed and damaged property. *See* Claim No. 59459, Addendum A at 3-5; Claim No. 59996, Addendum A at 3-5. But as noted above, Adventist Health's MSRB disclosures confirm its belief that it will recover on substantially all of its property damages from its insurer. *See* Foix Decl., Ex. 3 at 30-31. Setting aside insurance, an Adventist Health MSRB disclosures filed six weeks before the Camp Fire identified $92 million in property assets for its Feather River facility. *See id.*, Ex. 5 at 26. Adventist Health's Claims inexplicably appear to seek at least $30 million more than that amount in property repair and

construction for the facility. *See* Claim No. 59459 at Addendum B; Claim No. 59996 at Addendum B.

Adventist Health also asserts claims for business interruption, which, in another pleading, it explained to represent past and future lost profits/operating expenses of $188 million. *See* Dkt. No. 4783 at 4. But Adventist Health's audited financial statement filed with MSRB in March 2019 reported that Adventist Health earned $4 million in profits from the Feather River facility for the ten months of 2018 prior to the Camp Fire. *See* Foix Decl., Ex. 3 at 37. This amounts to an annual loss of $4.8 million, or $24 million over five years in the unlikely event the temporary closure of the Feather River facility were to extend for that period. A more recent MSRB filing, October 23, 2019, estimates that the temporary closure of the Feather River facility has negatively impacted Adventist Health's entire operations by only $10 million through June 2019. *See id.*, Ex. 4 at A-36. Measured against Adventist Health's MSRB filings, Claim Nos. 59459 and 59996 appear to overstate business interruption loss by $164 million or more – and whatever the loss amount, it is substantially covered by Adventist Health's insurance. *See* Foix Decl., Ex. 3 at 30.[3]

Adventist Health also claims "other damages" that include employee payroll expenses and professional fees. *See* Claim No. 59459 at Addendum 6 and Claim No. 59996 at Addendum 6. But, again, Adventist Health's MSRB disclosures state that it has recorded $34 million in expenses of this nature, and that it already has received $30 million in insurance payments for these expenses. *See* Foix Decl., Ex. 3 at 30 (noting insurance payments for expenses "primarily related to payroll and professional fees expenses and fire remediation and demolition expenses").

## VI.     BASIS FOR RELIEF REQUESTED

Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the

---

[3] These financials are consistent with previous years.  Adventist Health reported an average of $8.1 million "excess revenues," or revenues over expenses, for the years 2015 through 2017.  *See* Foix Decl., Ex 7 at 32 ($5.7 million in 2015); Foix Decl, Ex. 6 at 32 ($6.9 million for 2016); Foix Decl., Ex 5 at 30 ($11.8 million in 2017).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

debtor is legally liable to the claimant. *See In re King Street Invs., Inc.*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998). Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity. *See Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 COLLIER ON BANKRUPTCY § 502.02, at 502-22 (Lawrence King, 15th ed. 1991)).

A party wishing to dispute a claim afforded *prima facie* validity must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.* Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *See In re Pugh*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993). Ultimately, the burden of persuasion is on the claimant. *See Holm*, 931 F.2d at 623.

Here, Adventist Health's MSRB submissions disclose insurance coverage for its losses as well as losses in amounts substantially less than what is asserted Claim Nos. 59459 and 59996. Adventist Health's statements in its MSRB filings are of a far more probative force than the alleged damages referenced in Claim Nos. 59459 and 59996. As such, Adventist Health's own public filings are sufficient to rebut the its Claim, shifting the burden of proof back to Adventist Health.

## VII. RESPONSES TO THIS OBJECTION

To contest this Objection, the claimant, Adventist Health, must file and serve a written response (a "**Response**") so that it is received no later than March 11, 2020 at 4:00 p.m. (Pacific Time) (the "**Response Deadline**"). Such Response must be filed and served on all "Standard Parties" as defined in, and in accordance with, the *Amended Order Implementing Certain Notice and Case Management Procedures* entered on May 14, 2019 (EFC No. 1996) ("**Case Management Order**"), so as to be received by no later than the Response Deadline. If a claimant fails to timely file and serve a Response by the Response Deadline, the TCC may present to the Court an appropriate Order disallowing the Adventist Health Claims without further notice to the claimant or a hearing. The TCC may file and serve a reply to any Response to this Objection. The TCC reserves the right to seek an adjournment of the hearing on any Response to this Objection, which adjournment will be noted on the notice of agenda for the hearing.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

**VIII.    RESERVATION OF RIGHTS**

The TCC hereby reserves the right to object in the future to any of the proofs of claim listed in this Objection on any ground, and to amend, modify, and/or supplement this Objection to the extent an objection to a claim is not granted. The TCC further reserves the right to respond to any new legal theories advanced by Adventist Health in any response to this Objection, including legal theories not set forth in the Adventist Health Claims. The TCC further reserves the right to commence a proceeding to subordinate any allowed claim held by Adventist Health or any other related entity.

**IX.    COMPLIANCE WITH BANKRUPTCY LOCAL RULE 3007-1**

In accordance with Bankruptcy Local Rule 3007-1(a), true and correct copies of the claims that are the subject of this Objection are attached hereto as **Exhibit B**. To the best of the TCC's knowledge and belief, this Objection and **Exhibit A** comply with Bankruptcy Local Rule 3007-1 and Bankruptcy Rule 3007(e).

Because factual disputes exist, pursuant to Bankruptcy Local Rule 3007-1(b), the TCC requests that the first hearing on this Objection be a status conference.

**X.    NOTICE**

Notice of this Objection has been provided to:  (a) the Office of the United States Trustee for the Northern District of California; (b) the parties listed on **Exhibit A** annexed hereto under the heading "Claimant"; (c) the "Standard Notice Parties" as defined in the Case Management Order; and (d) the "Rule 2002 Notice Parties" as defined in the Case Management Order.  The TCC respectfully submits that such notice is sufficient under the circumstances.

**XI.    NO PREVIOUS REQUEST**

No previous request for the relief sought herein has been made by the TCC to this or any other court.

**XII.    CONCLUSION**

WHEREFORE, the TCC respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit C**, disallowing and expunging the claims listed on **Exhibit A** and granting such other and further relief as this Court deems just and proper.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

Dated:  February 12, 2020

BAKER & HOSTETLER LLP

By: _/s/ Robert A. Julian_
　　　Robert A. Julian

_Attorney for The Official Committee of Tort Claimants_

12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO