# EXHIBIT 5

# MEDIATED INVESTIGATION AGREEMENT

This Mediated Settlement Agreement (the "Agreement") is made and entered into this first day of October, 2015 ("Effective Date") by and between the San Francisco Herring Association ("SFHA") and Dan Clarke ("Clarke," collectively with SFHA, "Plaintiffs"), on the one hand, and Pacific Gas and Electric Company and PG&E Corporation (collectively, "PG&E"), on the other.

**I.** **DEFINITIONS**: the following definitions, as well as those defined elsewhere in this Agreement, shall apply herein:

    **A.**    "Parties" means collectively Plaintiffs and PG&E.

    **B.**    The "Action" means the action captioned *San Francisco Herring Association, et al. v. Pacific Gas and Electric Company, et al.*, No. 14-cv-4393-WHO (N.D. Cal.).

    **C.**    "MGP" means manufactured gas plant.

    **D.**    "MGP Residue" means waste produced as a result of, and/or in connection with, the operation, of an MGP.

    **E.**    The Marina Neighborhood means the area of San Francisco, California bounded to the east by Van Ness Avenue; on the west by Lyon Street and the Presidio National Park; on the south by Lombard St; on the north by the San Francisco Bay.

    **F.**    The Fisherman's Wharf Neighborhood means the area of San Francisco, California bounded to the west by Van Ness Avenue; on the east by Pier 35; on the south by Bay Street; and on the north by the San Francisco Bay.

    **G.**    The "Marina Adjacent Offshore Areas" means the near-shore areas shown on Exhibit A hereto.

    **H.**    The "Fisherman's Wharf Adjacent Offshore Areas" means the near-shore areas shown on Exhibit B hereto.

    **I.**    The "Investigation Area" shall mean collectively the Marina Neighborhood, the Fisherman's Wharf Neighborhood, the Marina Adjacent Offshore Areas, and the Fisherman's Wharf Adjacent Offshore Areas. This definition does not pre-determine the existence, or lack thereof, of MGP Residue in any particular location in the Investigation Area.

    **J.**    The "Mediated Investigation" means the determining in a scientific manner the nature and extent of MGP Residue described in Section II hereof.

    **K.**    "Investigation Event" means one of several projects to determine the nature and extent MGP Residue in the Investigation Area that together constitute the Mediated Investigation.

L. "Related Investigations" means any completed, ongoing, or planned projects within the Investigation Area, the results of which may contain information consequential to the nature and extent of MGP Residue in the Investigation Area.

M. "Related Investigation Results" means any written or electronic test results (including electronic data deliverables), findings, interpretations, opinions, field notes, boring logs, or reports from a Related Investigation whether agreed upon or approved or sanctioned by either Party or by any other person or authority.

N. "February/March 2015 Proposed Groundwater Monitoring Plans" means the Related Investigations submitted by PG&E to the California Department of Toxic Control Substances dated 17 February 2015 and 15 March 2015.

O. "Confidential Homeowner Data" means data subject to a currently binding agreement entered into by PG&E and a homeowner since 2010.

P. The "Agreement's Term" means the eighteen month period beginning on the Effective Date and ending on 1 April 2017, unless extended pursuant to the terms of this Agreement.

II. **MEDIATED INVESTIGATION**: the Parties shall engage in an investigation of MGP Residue in the Investigation Area during the Agreement's Term in accordance with the following terms:

A. **Purpose of the Mediated Investigation**: The purpose of the Mediated Investigation is to determine the nature and extent of MGP Residue in the Investigation Area.

B. **Applicable Standard**: Any determination of reasonableness or appropriateness as to the Mediated Investigation shall be made based on all available data in accordance with the standards of professional care generally used in the field of environmental engineering as applicable to investigations under the Clean Water Act, 33 U.S.C. § 1311, and the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B).

C. **Sharing of Information**: With the exception of Confidential Homeowner Data, the Parties shall provide to each other all non-privileged Related Investigation Results in their possession as of the Effective Date. If new non-privileged Related Investigation Results, other than Confidential Homeowner Data, come into a Party's possession, custody, or control during the Agreement's Term, the Party shall provide it to the other Party within one week of the occurrence. Each Party shall further have the right to make reasonable requests for information from the other Party, and the other Party shall not unreasonably refuse to provide any such requested information. PG&E shall only enter into an agreement to keep data confidential at the homeowner's request.

D. **Structure of the Mediated Investigation**: The Mediated Investigation shall be phased, employing an iterative process, to determine the nature and extent of MGP Residue in the Investigation Area. The results of particular Investigation Events will inform decisions concerning subsequent Investigation Events and the results of previous phases will inform the

planning of subsequent phases; however, the iterative quality of the process does not preclude parallel Investigation Events.

  **1.**  Preliminary Meeting: Representatives of each Party, including appropriate consultants, shall attend a preliminary scoping meeting to discuss Related Investigations, including the results thereof, and share preliminary thoughts for the planning and design of the Investigation Events for each phase of the Mediated Investigation. The preliminary meeting shall occur as soon as practicable following Effective Date of this Agreement.

  **2.**  First Period: Within thirty days after the preliminary meeting, a meeting will be held to plan the first period of the Mediated Investigation, which will result in an action plan for the first period. The first period of the Mediated Investigation shall last approximately 6 months. The primary focus of the first period shall be on initiating a determination of the nature and extent of MGP Residue in the Investigation Area, excluding the Fisherman's Wharf and Marina Adjacent Offshore Areas. The planning and design of Investigation Events in the first period shall be determined jointly by the Parties with reference to:

   **a)**  Ongoing Related Investigations, including without limitation the February/March 2015 Proposed Groundwater Monitoring Plans;

   **b)**  Related Investigations Results and any other previously discovered indications of possible MGP related contamination, e.g. creosote, coal tar, etc.;

   **c)**  History of activities in a particular location, e.g. near and under gasholders, tanks, and wells;

   **d)**  Possible disposal locations of MGP Residues; and

   **e)**  Fate and transport characteristics of MGP Residues.

  **3.**  Second Period: The second period of the Mediated Investigation shall last a second approximately 6 months. The primary focus of the second phase shall be the determination of the nature and extent of MGP Residue in the entire Investigation Area. Prior to initiation of the second period, the Parties shall meet to discuss the first period activities and results and plan the second period, which shall be memorialized in an action plan.

  **4.**  Third Period: The third phase of the Mediated Investigation shall last approximately 6 months. The primary focus of the third phase shall be on completing, if possible, the determination and extent of MGP Residue in the entire Investigation Area. Prior to initiation of the third phase, the Parties shall meet to discuss the second phase activities and results and plan the third phase, which shall be memorialized in an action plan.

 **E.**  **<u>Participants in the Mediated Investigation and Their Respective Roles</u>**:

  **1.**  Plaintiffs and PG&E: Plaintiffs and PG&E shall be the primary and joint participants in this process. Each Party shall be entitled to co-equally participate in every stage of the Mediated Investigation and every stage of every Investigation Event, including without

limitation the planning/design stages, the execution stages, the analysis/interpretation stages, and reporting stages.

      **2.**      <u>Regulatory Agencies</u>:

      **a)**      <u>Submission for Review</u>: The Parties shall submit, for review and comment, work plans, results, reports and similar documents for particular Investigation Events to the regulatory agency with primary jurisdiction over the particular Investigation Event (collectively, "Regulatory Agencies"), after such work plans, results, reports or similar documents have been finalized between the Parties through agreement or through the dispute resolution process of this Agreement. If a work plan or its analog is approved in its entirety by the Regulatory Agency, the complete scope of work will be conducted. If only a portion of the work plan or its analog is approved, only the approved portion of the scope of work will be conducted.

      **b)**      <u>Comments of the Regulatory Agencies</u>: It is anticipated that comments from Regulatory Agencies will inform the planning and/or execution of particular Investigation Events. In the event that such comments are received, the Parties will meet and confer with the goal of creating a timely joint response thereto. No Party shall use, or seek to use, such comments or the lack of such comments as a basis to delay or otherwise inhibit the timely conduct of the Mediated Investigation.

      **c)**      <u>Communication With Regulatory Agencies</u>: In the event that a Party confers with a regulatory agency concerning the Mediated Investigation and/or particular Investigation Events, it shall copy the other Party on written communications with the regulatory agency that concern the Mediated Investigation and/or certain Investigation Events and provide the other party with opportunity to participate in any meetings and substantive phone calls with the regulatory agency that concern the Mediated Investigation and/or certain Investigation Events.

      **d)**      <u>No Basis Dismissal of Action</u>: No party shall invoke, or seek to invoke, this Agreement, any actions taken pursuant to it by any Party, or the participation of any Regulatory Agency in the Mediated Investigation as a basis for a dismissal of this Action. This provision may be used as a complete defense to any such request for dismissal, whether made by motion or otherwise.

      **F.**      **Methods of Investigation:** Methods of investigation employed in a particular Investigation Event shall include without limitation, as appropriate:

      **1.**      Examination of soil and sediment cores by an experienced geologist and/or engineer;

      **2.**      Physical and/or chemical analysis of soil and sediment samples;

      **3.**      Chemical analysis of groundwater and/or pore-water from soil and sediments, using both groundwater grabs and monitoring wells, and

      **4.**      Chemical analysis of air and/or vapor collected.

**G. Work Flow**: subject to the Parties' agreement to vary the process for a particular Investigation Event, the work flow for each investigation event shall be as follows:

    **1. Preliminary Planning/Design**: the Parties shall meet and agree on the basic plan and design of the Investigation Event, which shall be memorialized in Investigation Event MOU signed by both Parties.

    **2. Workplan Drafting**: based on the Investigation Event MOU, the Parties will jointly draft a workplan, which shall be signed by both parties.

    **3. Data Collection/Lab Work**: PG&E shall be chiefly responsible for execution of the data collection, related "on the ground" activities, and related lab work; Plaintiffs shall have the right to be present during all of this process and to take split samples on site, which shall not exceed 5% of all samples.

    **4. Provision of Data**: all data, raw or processed, provided by any lab shall be provided simultaneous to PG&E and Plaintiffs; and each Party shall copy the other Party on written communications with the lab and its personnel that concern the Mediated Investigation and/or certain Investigative Events.

    **5. Geographic Information System ("GIS")**: All data from the Mediated Investigation—including analytical data and sample locations shall be compiled within a GIS system accessible by both Parties via the internet. All Mediated Investigation sample locations shall be field surveyed with hand-held sub-foot accuracy GPS or tied to identifiable horizontal control landmarks (i.e. building corners, etc.). Accuracy of sample locations shall be tracked within the database (i.e. surveyed versus digitized from historical documentation or measured to landmark, etc.). Sample depths shall also include a reference to a common benchmark (i.e. ft. msl). With the exception of data that cannot practicably be included within a GIS system, historical sample locations and data shall also be compiled within the GIS system. In order to constrain potential historical data loading costs, only primary, duplicate, and split sample analytical data shall be loaded into the GIS system. Field and laboratory quality control data for historical investigations shall not be included in the database unless already existing within PG&E analytical database systems.

    **6. Investigation Report**: the Parties shall endeavor to jointly prepare an investigation report based on their respective analyses of the provided data, which shall be signed by both parties. In the event that PG&E and Plaintiffs' are unable to agree as to the conclusions to be drawn from their respective analyses, each shall issue a separate report.

**H. Scheduling of the Mediated Investigation**: The Parties shall use their best efforts to diligently and expeditiously fulfill their respective obligations during the Mediated Investigation.

**I. Memorialized Schedule of Investigation Event Tasks**: The Parties shall use their best efforts to complete each Investigation Event in a timely manner consistent with the goal stated above. To facilitate this result and avoid any ambiguities or misunderstandings in this regard, to the extent practicable, the Parties shall seek to agree in advance on a schedule for

completion of various tasks attendant with an Investigation Event, and such schedule shall be incorporated into the applicable Investigation Event Memorandum of Understanding.

  **J.**   **Unlimited Independent Action**: The terms of the Mediated Investigation shall not preclude either Party from pursuing any independent actions including Related Investigations.

  **K.**   **Limited Confidentiality**: The Parties shall keep confidential the substance of negotiations conducted by the Parties in performance of this Agreement, as well as data generated under this Agreement until such time as the data are submitted to relevant regulators. This limited confidentiality provision shall not preclude either Party from making disclosures of data generated under this Agreement to the California Public Utilities Commission or other regulatory agencies, PG&E from making disclosures to insurance companies, representatives of SFHA from making disclosures to its members (each of whom is bound by this provision), either Party from making disclosures to their respective experts or consultants, either Party from using data generated under this Agreement in litigation of the Known Clarke Property Claims, or either party from making legally required disclosures. Furthermore, in the event that Plaintiffs' counsel wishes to disclose to other current clients data otherwise required to be kept confidential under this Section II(K), Plaintiffs' counsel shall request PG&E's consent to do so, which PG&E shall not unreasonably withhold. In the event a dispute arises concerning such a request it shall be resolved pursuant to the dispute resolution provisions contained in this Agreement's Section IV. This limited confidentiality provision shall not apply to matters of public record. To the extent that this Confidentiality provision is breached, any non-breaching party shall have the right to terminate this Agreement upon seven days written notice to the other Parties, subject to the other Party's right to invoke the dispute resolution provision of this Agreement's § IV and PG&E's continuing obligations under this Agreement's § III concerning costs, expenses, and time incurred by the Parties in the course of the Mediate Investigation.

**III.**   **FINANCIAL RESPONSIBILITY**: PG&E will have sole financial responsibility for the costs, expenses, and time incurred by the Parties in the course of the Mediated Investigation.

  **A.**   **Categories of Responsibility**: PG&E shall be responsible for the reasonable attorneys' fees and costs incurred by Plaintiffs in connection with the Mediated Investigation, the fees and expenses incurred by Plaintiffs' experts/consultants in connection with the Mediated Investigation, and the out of pocket costs incurred by representatives of SFHA and Clarke in connection with the Mediated Investigation, up to an annual limit of $500 each. PG&E shall also pay the reasonable attorneys' fees and costs incurred by Plaintiffs to date, with the exception of those attorneys' fees and costs incurred by Clarke in connection with litigation of the Known Clarke Claims since the date of the Court's Order Lifting Stay Concerning Known Clarke Property Claims, Dkt. No. 63. Any dispute regarding the reasonableness of the attorneys' fees and costs incurred by Plaintiffs in connection with the Mediation Investigation shall be submitted to Chief Magistrate Judge Joseph Spero for final determination.

  **B.**   **Determination of Rates**:

    **1.**   **Experts/Consultants**: Plaintiffs' experts shall be paid at their standard hourly rates, which shall be disclosed in advance to PG&E. If PG&E believes that the rates are

unreasonable, they may seek resolution of the issue in accordance with this Agreement's dispute resolution procedures.

  **2.**  **Attorneys**: Plaintiffs' attorneys' fees shall be paid at the standard hourly rates of Plaintiffs' attorneys, which currently range from $465/hr. to $375/hr., and $150/hour for paralegals/legal assistants. In the event that Plaintiffs' attorneys' standard rates increase, Plaintiffs shall be entitled to request that PG&E pay their attorneys at such rates. If PG&E refuses the request, Plaintiffs may seek resolution of the issue in accordance with this Agreement's dispute resolution procedures, in which case determination of the requested rates' reasonableness shall be made in accordance with the rates charged by attorneys in this district with similar skills and experience for similarly complex federal litigation.

  **C.**  **Method of Billing and Payment**: Plaintiffs shall provide PG&E itemized invoices/statements within sixty (60) days of the date on which the work/costs occurred. Plaintiffs shall be entitled to redact such invoices/statements, as required to protect attorney work product and/or attorney client communications. PG&E shall pay all undisputed portions of submitted invoices/statements within thirty (30) days of receipt. In the event that PG&E disputes any portion of an invoice/statement, it shall meet and confer with Plaintiffs concerning the disputed portion. If such a process fails to resolve the dispute, PG&E, within seven (7) days of the last meet and confer, shall submit a two-page letter to Judge Spero concerning the dispute, served on Plaintiffs via email. Plaintiffs shall respond with a two-page letter within seven (7) days, served on Defendants via email. The only additional material that either Party may submit is a copy of the invoice/statement containing the disputed entry(s). In the event that the invoice/statement contains entries that are redacted, Plaintiffs may submit un-redacted versions to the Court, which they are not required to serve on PG&E. Judge Spero's determinations will be final.

**IV.**  **DISPUTE RESOLUTION**: If, during the process of the Mediated Investigation a dispute arises between the Parties concerning matters covered by the Agreement, it shall be referred to the Honorable Judge Joseph C. Spero for resolution in accordance with the terms of the Agreement.

**V.**  **STAY OF THE ACTION**: Subject to the Court's Order Lifting Stay Concerning Known Clarke Property Claims, Dkt. No. 63, and any modification thereof, the Action shall be stayed during the Agreement's Term.

**VI.**  **MODIFICATION/TERMINATION OF AGREEMENT**:

 **A.**  **Modification**:

  **1.**  Any provision of this Agreement may be modified by agreement in writing signed by both Parties.

  **2.**  In the absence of such agreement, Section V of this Agreement, Stay of the Action, may also be limited by Judge Spero in response to a petition by either Party.

    **B.**    **Termination**:

       **1.**    The Parties may terminate this Agreement prior to the end of the Agreement's Term by agreement in writing signed by both Parties.

       **2.**    In the absence of such agreement, Judge Spero may terminate this Agreement prior to the end of the Agreement's Term in response to a petition by either Party.

       **3.**    This Agreement can be extended solely by agreement in writing signed by both Parties.

## VII.   MISCELLANEOUS

    **A.**    **Reviewed by the Parties—Represented by Counsel**: The Parties represent and warrant to the other that they are represented by independent counsel in this matter, they have read and been advised concerning the legal implications of the Agreement and they enter into it knowingly and voluntarily. The Parties have entered into the Agreement without reliance upon any representation or statement made by any Party or non-party that is not contained in the Agreement. The Parties hereto further represent and warrant that the Agreement was first carefully read in its entirety by them before signing it.

    **B.**    **Entire Agreement—Integration**: The Agreement constitutes the entire agreement between the Parties pertaining to its subject matter and supersedes all prior agreements, representations, warranties and understandings of the Parties, it being the intention of the Parties that the Agreement be considered a totally integrated document.

    **C.**    **Severability**: In the event that any provision of the Agreement is held by a court of competent jurisdiction to be invalid, void, unenforceable, or inoperable for any reason, the remaining provisions of the Agreement shall not be affected in any way.

    **D.**    **Binding on Successors**: The Agreement shall be binding upon the heirs, successors, executors, administrators, and assigns of all of the Parties hereto as the case may be.

    **E.**    **Governing Law**: The Settlement Agreement shall be construed and interpreted in accordance with, and governed and enforced under the laws of California.

    **F.**    **Counterparts**: The Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same Agreement. All signatures will be effective when transmitted to the other Party hereto by mail, facsimile or pdf. Facsimile and pdf signatures will be deemed original signatures.

    **G.**    **Construction**: The Parties and their counsel have reviewed and approved the Agreement and, accordingly, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of the Agreement.

**H.     Authority to Enter into Agreement**: Each party represents that he/she/it is authorized to enter into this Settlement Agreement. The Parties further represent and warrant that there has been no assignment or other transfer of any interest contained in the Action.

IN WITNESS WHEREOF the undersigned has executed this release as of the date set forth.

Dated: October  9  , 2015

By: THOMAS WILSON
for Pacific Gas and Electric Company and PG&E Corporation

Dated: October _____, 2015

By Matt Ryan
for the San Francisco Herring Association

Dated: October  1  , 2015

Daniel Clarke

H. **Authority to Enter into Agreement**: Each party represents that he/she/it is authorized to enter into this Settlement Agreement. The Parties further represent and warrant that there has been no assignment or other transfer of any interest contained in the Action.

IN WITNESS WHEREOF the undersigned has executed this release as of the date set forth.

Dated: October ___9___, 2015

By: THOMAS WILSON
for Pacific Gas and Electric Company and PG&E Corporation

Dated: October ___1___, 2015

By Matt Ryan
for the San Francisco Herring Association

Dated: October _____, 2015

Daniel Clarke

# EXHIBIT A


Case: 19-30088   Doc# 5768-8   Filed: 02/13/20   Entered: 02/13/20 14:35:29   Page 13 of 15

# EXHIBIT B

Case: 19-30088    Doc# 5768-8    Filed: 02/13/20    Entered: 02/13/20 14:35:29    Page 14 of 15


Case: 19-30088    Doc# 5768-8    Filed: 02/13/20    Entered: 02/13/20 14:35:29    Page 15 of 15