MATTHEW D. METZGER (SBN 240437)
mmetzger@belvederelegal.com
BELVEDERE LEGAL, PC
1777 Borel Place, Suite 314
San Mateo, CA 94402
Telephone:    (415) 513-5980
Facsimile:    (415) 513-5985

STUART G. GROSS (SBN 251019)
sgross@grosskleinlaw.com
TIM KLINE (SBN 319227)
tk@grosskleinlaw.com
GROSS & KLEIN LLP
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688

Attorneys for Creditor,
Dan Clarke

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re**<br><br>**PG&E CORPORATION**<br><br>   - **and** -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                              **Debtors.**<br><br>---<br>☐   Affects PG&E Corporation<br>☐   Affects Pacific Gas and Electric Company<br>☑   Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>Case No.  19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY (CANNERY MGP LITIGATION);</u>**<br>**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT</u>**<br><br>**Date:**  March 10, 2020<br>**Time:** 10:00 a.m.<br>**Ctrm:** Hon. Dennis Montali<br>        450 Golden Gate Avenue<br>        16th Floor, Courtroom No. 17<br>        San Francisco, CA 94102<br><br>**Objection Deadline:**<br>    **March 5, 2020, at 4:00 p.m. (PT)** |

## Table of Contents

I. JURISDICTION AND VENUE ........................................................................................ 2

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................ 2

III. RELIEF REQUESTED ................................................................................................ 4

IV. ARGUMENT ............................................................................................................... 5
    A. THE COURT SHOULD LIFT THE AUTOMATIC STAY FOR CAUSE ....................... 5
    B. PERMISSIVE ABSTENTION ALSO CREATES CAUSE TO LIFE THE STAY ........... 10

    C. THE SCOPE OF THE AUTOMATIC STAY RELIEF SHOULD INCLUDE AUTHORITY TO PROSECUTE ALL CLAIMS FOR RELIEF ARTICULATED IN THE OCTOBER 23, 2018 *NOTICE OF INTENT TO SUE UNDER THE RESOURCE CONSERVATION AND RECOVERY ACT AND CLEAN WATER ACT,* INCLUSIVE OF PENALTIES AND THE RECOVERY OF ATTORNEYS FEES AND COSTS ....................... 12

    D. THE SCOPE OF THE AUTOMATIC STAY RELIEF SHOULD INCLUDE AUTHORITY THE ENFORCE ANY INJUNCTIVE RELIEF AWARDED .............................. 13

    E. CAUSE EXISTS TO WAIVE THE 14-DAY STAY OF ENFORCEMENT UNDER BANKRUPTCY RULE 4001(a)(3). ........................................................................ 14

V. CONCLUSION ........................................................................................................... 14

# Table of Authorities

Cases

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir. 1990) .... 5

*Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012) ...................................... 13

*In re Curtis* 40 B.R. 795 (Bankr.D.Utah 1984)........................................................................5

*In re Hexcel Corp.,* 239 B.R. 564 (N.D. Cal. 1999)........................................................................ 13

*In re Pac. Gas & Elec. Co.*, 279 B.R. 561 (Bankr. N.D. Cal. 2002)............................................... 12

*In re Plumberex Specialty Prod., Inc.* 311 B.R. 551 (Bankr.C.D.2004)........................................... 6

*In re Universal Life Church*, Inc. 127 BR 453 (ED CA 1991) ....................................................... 10

*Sierra Club v. Andrus*, 610 F.2d 581 (9th Cir.1979)........................................................................ 7

Statutes

11 U.S.C. § 362(d) (1).............................................................................................................. 1, 5, 10

11 U.S.C. § 541(d). ........................................................................................................................... 7

11 USC § 101(5)(B). ...................................................................................................................... 13

28 U.S.C. § 1334 and 157. ............................................................................................................... 2

28 U.S.C. §§ 1334 ............................................................................................................................ 2

Fed. R. Bankr. P. 4001(a)(3). ......................................................................................................... 13

**Local Rule**

Bankruptcy Local Rule 4001-1 ....................................................................................................... 1

# MOTION

Creditor Dan Clarke ("Movant" and/or "Clarke")) hereby moves the court for an order granting relief from the automatic stay, for cause, pursuant to 11 U.S.C. § 362(d) (1) (the "Motion"). Clarke brings this motion to initiate litigation concerning environmental contamination litigation arising out of a manufactured gas plant ("MGP") known as the "Cannery MGP" or "CAN MGP" in the Ghirardelli Square area of San Francisco that debtors Pacific Gas and Electric Company and PG&E Corporation owned and operated (the "Cannery MGP Litigation"). The Cannery MGP Stay Relief Motion requests relief to pursue all remedies articulated in the October 23, 2018 *Notice of Intent to Sue Under the Resource Conservation and Recovery Act and Clean Water Act* attached as Exhibit 1 to the Declaration of Stuart G. Gross filed herewith in support (the "NOI"). In sum, Clarke's claims in the Cannery MGP Litigation will include: *a)* claims under the Resource Conservation and Recovery Act ("RCRA") for injunctive relief for both marine and terrestrial contamination; *b)* claims under the Clean Water Act ("CWA") for injunctive relief and penalties; *c)* attorneys' fees and costs, including expert witness fees under both RCRA and the CWA; as well as *d)* related California state law public nuisance claims for injunctive relief, compensatory and punitive damages, and related attorneys' fees and costs, which were not required to be stated in the NOI.

The Motion is based upon this Notice of Hearing, the Motion and Memorandum of Points and Authorities, and the Declaration of Stuart G. Gross, the exhibits served with the Motion, any reply, and on such other and further evidence and matters that the Court may consider at the hearing on the Motion, as well as the March 13, 2019 *Final Order Pursuant to 11 U.S.C. §§ 105(a) 363(b), and 507(a)(7) and Fed. R. Bankr. P. 6003 and 6004 (I) Authorizing Debtors to (A) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (B) Honor Any Prepetition Obligations Relating Thereto; and (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers*. Dkt. No. 843 and related law and motion in support of said final order. *See, e.g.*, Dkt Nos. 843. In support thereof, Movant submits the following memorandum of points and authorities, representing as follows.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION AND VENUE

This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. § 1334 and 157. The Court's consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory authority for the Motion is 11 U.S.C. § 362(d) (1) and Bankruptcy Local Rule 4001-1, as modified by the Court's *Second Amended Order Implementing Certain Notice and Case Management Procedures*. Dkt. No. 1996.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Marina MGP Case

1. Prepetition, Plaintiff Dan Clarke had litigation pending against the Debtors in the matter, *San Francisco Herring Association and Dan Clarke vs. Pacific Gas and Electric Company; PG&E Corporation*, United States District Court, Northern District of California Case No. 14-cv-04393 WHO (JCS) which concerns environmental contamination from two other MGPs, which are located in the Marina neighborhood of San Francisco (the "Marina MGP Case").

2. Concurrently herewith, Clarke filed a *Supplemental Motion for Relief from the Automatic Stay* related to the Marina MGP Case.

3. Pursuant to Clarke's stipulation with the Debtors, the stay of the Marina MGP Case was lifted for the limited purpose of allowing the Honorable Judge William H. Orrick to rule on the Debtors' motion for summary judgment that had been fully briefed at the time of the petition.[1]

4. Subsequent thereto, Judge Orrick issued a summary judgment order in the Marina MGP Case on July 26, 2019 that denied Debtors summary judgment motion as to Clarke's claim in the Marina MGP Case for injunctive relief under the Resource Conservation and Recovery Act ("RCRA") for terrestrial contamination and associated requests for recovery of attorneys' fees and

---

[1] *See* Dkt. Nos. 3113, 3136.

2

costs, including expert witness fees, and granted it as Clarke's other claims. Declaration of Stuart G. Gross in Support of Motion for Relief from the Automatic Stay (Cannery MGP Litigation) ("Gross Decl."), ¶ 2-5.

### B. Cannery MGP Litigation

5. Via this motion, Clarke also requests relief from the automatic stay to initiate a new lawsuit for matters summarized hereinabove as the "Cannery MGP Litigation."

6. While litigation in the Marina MGP case has been pending for almost 5.5 years and has resulted in several settlements, no litigation has been initiated as to the Cannery MGP.

7. Furthermore, there have been no significant investigations of the contamination caused by the Cannery MGP and no remedial actions. *Id.*, ¶ 6-9.

8. On October 23, 2018 – prior to Debtor's January 29, 2019 petition date – Clarke sent the Debtors and all necessary notice parties a *Notice of Intent to Sue Under the Resource Conservation and Recovery Act and Clean Water Act,* pursuant to the 60 day notice of period of 33 U.S.C. § 1365(b) of the Clean Water Act ("CWA") and the 90 day notice of period 42 U.S.C. § 6972(b) of RCRA the ("NOI Letter") *Id. ¶* 9, Exh. 1.

9. Said NOI Letter concerns allegations that Debtors violated the CWA and RCRA arising out of Debtors' ownership and/or operation of the Cannery MGP ("CAN MGP"), and PG&E's handling, storage, treatment, transportation and/or disposal of the waste generated by the operation and/or demolition of the MGP ("MGP Waste").

10. Clarke's claims in the Cannery MGP Litigation will include: *a)* a RCRA claim for injunctive relief for both marine and terrestrial contamination; *b)* a CWA claim for injunctive relief and penalties; *c)* attorneys' fees and costs, including expert witness fees under both RCRA and the CWA; *d)* California state law public nuisance claims for injunctive relief compensatory and punitive damages and related fees and costs. *Id. ¶* 12.

3

### C. Potential for Case Consolidation of MGP Litigation Matters

11. There is a likelihood that the Honorable Judge William H. Orrick will consolidate the Marina MGP Case and the CAN MGP litigation due to common questions of law and fact and to avoid unnecessary cost and delay.

12. At the November 6, 2018 case management conference in the Marina MGP Case, Judge Orrick queried the appropriate litigation structure and specifically ". . . whether the claims of Mr. Clarke concerning the Cannery should be consolidated at some point." *Id.* ¶14, Exh. 2.

13. For said reason, Clarke now moves for relief from stay concurrently on both matters to allow this Court to consider the propriety of granting relief from stay at the same time.

## III. RELIEF REQUESTED

By this Motion, Clarke seeks relief from the automatic stay to liquidate Mr. Clarke's claims as articulated in the October 23, 2018 *Notice of Intent to Sue Under the Resource Conservation and Recovery Act and Clean Water Act* arising out of PG&E's ownership and/or operation of a manufactured gas plant ("MGP") known as the Cannery MGP ("CAN MGP") in the Ghirardelli Square area of San Francisco that debtors Pacific Gas and Electric Company and PG&E Corporation owned and operated and also arising out of the Debtors' handling, storage, treatment, transportation and/or disposal of the waste generated by the operation and/or demolition of the MGP ("MGP Waste"). Specifically, Clarke seeks relief from stay to prosecute the following: *a)* RCRA claims for injunctive relief for both marine and terrestrial contamination; *b)* CWA claims for injunctive relief and penalties; *c)* attorneys' fees and costs, including expert witness fees under both RCRA and the CWA; and *d)* California state law public nuisance claims for injunctive relief, compensatory and punitive damages and related fees and costs. Clarke also relief from the automatic stay to enforce any equitable relief that Clarke obtains from the District Court case, including injunctive relief. Clarke also requests that any order granting relief from the automatic stay also waive the 14-day stay of enforcement provided by Bankruptcy Rule 4001(a)(3).

/ / /

/ / /

## IV. ARGUMENT
### A. THE COURT SHOULD LIFT THE AUTOMATIC STAY FOR CAUSE

Section 362(d) (1) authorizes the Court to modify or terminate the automatic stay for "cause," including the lack of adequate protection. "'Cause' for granting relief from stay has no clear definition and is determined on a case-by-case basis." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted). However, in determining whether there is "cause" to grant relief in cases where pending pre-petition litigation exists, courts often consider the factors set out in *In re Curtis* 40 B.R. 795 (Bankr.D.Utah 1984) as follows:

(1) Whether the relief will result in a partial or complete resolution of the issues;

(2) The lack of any connection with or interference with the bankruptcy case;

(3) Whether the foreign proceeding involves the debtor as a fiduciary;

(4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination;

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

(10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

5

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) The impact of the stay and the "balance of hurt."

*In re Curtis*, 40 B.R. at 799-800; *see also In re Plumberex Specialty Prod., Inc.* 311 B.R. 551, 559 (Bankr.C.D.2004) (adopting the *Curtis* factors and recognizing that courts in other circuits have done the same).

Taken together, the *Curtis* factors weigh strongly in favor of relief.

**(1) Relief from the Stay Will Result in Complete Resolution of the Issues.**

As discussed *supra*, the District Court Case has raised the possibility of consolidation of both the Cannery MGP Litigation with the Marina MGP Case. Lifting the stay now would lead to complete resolution of all legal and factual issues in the case. PG&E already has pledged "full compliance with all applicable environmental laws" and obtained a final order from the Bankruptcy Court to continue making expenditures to do so.[2] The Debtors' pledge must include performing any injunctive relief ordered by Judge Orrick.

**There Is No Connection Between the District Court Cases and the Bankruptcy Case; and Lifting the Stay Would Not Interfere in the Bankruptcy Case.**

PG&E's bankruptcy had nothing to do with the District Court Cases, and lifting the stay would in no way interfere with them.

This is chiefly because the source of funds from which to litigate and cleanup the MGP Waste concerns of Clarke's Broader Environmental Claims are not property of the bankruptcy estate. Rather, dedicated funds of ratepayers and others are held in trust by PG&E exclusive for the use by PG&E in addressing contamination of certain listed sites, explicitly including "all covered costs . . . associated with manufactured gas plant sites."[3]

---

[2] *See* Dkt. No. 2823-13 ¶¶4-5, Exh. B; Dkt. No. 843.

[3] Dkt. No. 2823-13 ¶2, Exh. A.

Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Funds that a debtor holds in trust are not property of the debtor's bankruptcy estate whether the trust is statutory or constructive. *Official Comm. of Unsecured Creditors v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1054 (3rd Cir. 1993). And consistent with the Debtors' stated position, surcharge-related funds are held in trust by the debtor, and thus, are not property of its bankruptcy estate. *Id.* at 1062. Accordingly, allowing the District Court Case to go forward and Judge Orrick to make a final determination concerning PG&E's liability concerning the ongoing contamination at issue, and order any injunctive relief in connection therewith, will have no effect on the amount of funds available in the estate to pay the claims of other creditors.

It will also not interfere with the bankruptcy case from the perspective of PG&E's human resources. PG&E has several outside attorneys, and at least one in-house attorney, who have worked on legal matters related to the contamination related to the subject MGPs for approximately a decade and who continue to work on such matters. These attorneys are separate and apart from those handling the Bankruptcy Case for Debtors. PG&E, furthermore, has outside and in-house technical staff that have worked on these matters for as long and who continue to do so. Gross Decl., ¶¶ 17-18.

(2) Not applicable.

(3) **The District Court Has Exclusive Jurisdiction Over the District Court Case, and Judge Orrick Has Presided Over Related MGP Litigation for Almost Five Years, Giving Him the Expertise to Resolve Its Remaining Portion.**

District courts are arguably not "specialized tribunals" within the meaning of the fourth *Curtis* factor. However, district courts, located in the district where the violation occurred, have exclusive jurisdiction over citizen suit claims brought under the CWA and RCRA, like those brought by Clarke. *See* 33 U.S.C. § 1365(a); 42 U.S.C. § 6972(a). Moreover, given Judge Orrick's

7

experience with the ongoing MGP litigation in the District Court Case, in particular, he has the expertise regarding it that make his court better suited than any other to resolve the Cannery MGP Litigation.

(5) and (6)  Not Applicable.

(7) **Allowing the District Court Case to Move Forward to Resolution Would Not Prejudice the Interests of Other Creditors, Any Creditor Committee, or Other Interested Party.**

As discussed *supra*, the costs of litigating the Cannery MGP Litigation and that of any injunctive relief ordered by Judge Orrick would be paid out of dedicated funds that PG&E holds in trust, rather than from the estate. Thus, no creditor or interested party would be prejudiced financially if the case is allowed to move forward. Indeed, if there were the possibility of such prejudice, such parties would have been expected to object when the Debtors moved for interim relief, through the Customer Programs Mtn., to continue making such expenditures. However, in fact, the only objectors were certain interested parties that wanted these expenditures to continue but were concerned with the terms under which PG&E proposed to do so. Furthermore, because different attorneys and technical staff would handle the District Court case than those handling the Bankruptcy Case, there could be no prejudice to other creditors or interested parties in that regard.

Lifting the stay as to the District Court Case would also not "open the floodgates" to numerous other similar claims that are pending. *Cf.* Dkt. No. 1822. To the extent that there are similar cases pending against PG&E, pursuant to the relief granted by this Court (Dkt. 216), PG&E representatives continue to engage with those claimants to resolve their particular claims. Gross Decl., ¶¶ 17-18. Moreover, from a public policy perspective, if there are other environmental suits out their that, like the District Court Case, seek to compel PG&E to address ongoing contamination that may present an imminent and substantial endangerment to human health or the environment, the gate should be opened to those claims—just as they should be to Clarke's—so as to stop such harm as soon as possible; and, again, the funds used to pay for this needed work would not come from the estate.

8

Case: 19-30088    Doc# 5771    Filed: 02/13/20    Entered: 02/13/20 14:42:56    Page 11 of 17

To the contrary, Clarke's Motion is more akin to relief from stay motion filed by the City and County of San Francisco ("CCSF"") regarding the Federal Energy Regulatory Commission ("FERC") litigation, where the court already found "compelling circumstances" to justify relief now. *See* Dkt. No. 1535*; see also* Dkt. No. 1982, p4, n.3. Judge Orrick's experience with Clarke's lengthy, environmental case makes the District Court act very much like the "specialized tribunal" for the FERC Litigation, where the complexities far exceed those of standard personal injury matter.

(8) **Clarke's Success in the District Court Case Would Not Result in Any Judicial Lien.**

In the Cannery MGP Litigation, at this time, Clarke seeks only a liquidation and quantification of the aforementioned damage claims – not enforcement or collection of any amounts that would be awarded in any such judgment. The only exception is injunctive relief, on which, if awarded, Clarke seeks immediate enforcement. Clarke reasonably anticipates that the Debtors will confirm a chapter 11 plan well before the Cannery MGP Litigation concludes. If, after entry of judgment in the Cannery MGP Litigation, the Debtors still have not confirmed a plan, Clarke reserves the right to motion for supplemental relief from stay at said time.

(10) **The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties Waives Heavily in Favor of Lifting the Stay.**

Judge Orrick has invested years in MGP litigation and very well may consolidate the Cannery MGP Litigation with Clarke's other live MGP litigation claims. It would be directly contrary to the interests of judicial efficiency and the expeditious and economical determination of litigation for the parties if the parties were forced to litigate the Clarke's remaining cases before this Court, and the Court was required to acquaint itself sufficiently with the facts and the law to plot a path for the final resolution of all of Clarke's MGP litigation, as Judge Orrick is prepared and well placed to do.

9

### (11) The District Court Case Has Progressed to the Point Where the Parties Are Close to Prepared for Trial.

While the Cannery MGP Litigation has not yet been filed, the case may very well be consolidated with ongoing MGP litigation that has been pending for almost five and half years, during which certain claims have been resolved and environmental investigations have been conducted. Thus, while the parties need to do some further work before trial, given the complexity of the case and the length of time it has been pending, the time needed for such work is relatively succinct and can be expeditiously completed under Judge Orrick's knowledgeable supervision.

### (12) The "Balance of Hurt" Tips Heavily in Favor of Lifting the Stay.

Keeping the stay in place would mean that ongoing contamination, which Clarke alleges and the evidence suggests substantially endangers human health and the environment would remain unaddressed. Clarke, furthermore, would be left in a position where, despite being on the cusp of resolving an almost five year long litigation pre-petition, he must now incur legal fees to monitor a reorganization case of myriad complexity where Clarke plays little if any role. On the other hand, PG&E would suffer little to no hardship if the Cannery MGP Litigation is allowed to proceed. PG&E has outside litigation counsel who are already well-briefed on the case, continue to work to on related matters for PG&E, and are paid for from sources that PG&E has admitted are outside the estate.

### B. PERMISSIVE ABSTENTION ALSO CREATES CAUSE TO LIFE THE STAY

Abstention also may constitute "cause" for lifting the stay to allow the action to proceed to judgment in a nonbankruptcy forum (state court, federal district court, tax court, or any arbitration panel or administrative tribunal, etc.). *See In re Universal Life Church*, Inc. 127 BR 453, 455(ED CA 1991). The legislative history of § 362(d) (1) states that "a desire to permit an action to proceed to completion in another tribunal may provide [ ] cause" for relief from a stay. H.R. No. 595, 95th Cong., 1st sess. 343, 1977 U.S. Code Cong. & Admin. News 5787, 630.

The factors the Court can consider in determining whether to abstain from exercising jurisdiction are set forth in *In re Tucson Estates, Inc.,* as follows:

|     |      |                                                                                                              |
| --- | ---- | ------------------------------------------------------------------------------------------------------------ |
| (1) | the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; |
| (2) | the extent to which state law issues predominate over bankruptcy issues; |
| (3) | the difficulty or unsettled nature of the applicable law; |
| (4) | the presence of a related proceeding commenced in state court or other non-bankruptcy court; |
| (5) | the jurisdictional basis, if any, other than 28 U.S.C. §1334; |
| (6) | the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; |
| (7) | the substance rather than form of an asserted "core" proceeding; |
| (8) | the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; |
| (9) | the burden of [the bankruptcy court's] docket; |
| (10) | the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; |
| (11) | the existence of a right to a jury trial; and |
| (12) | the presence in the proceeding of non-debtor parties. |

912 F.2d 1162, 1166-1167 (9th Cir. 1990).

These factors support permissive abstention as follows:

Factor (1) favors abstention. As discussed *supra*, most liability for Clarke's claims related to the Cannery MGP Litigation would be sourced from trust funds that are not property of the Debtors' bankruptcy estate. The one, known exception are penalty assessments, which, on information and belief, would need to be sourced from other funds, including but not limited to potentially assets of the debtors' bankruptcy estate. However, regarding penalty assessments, Clarke is seeking at this time only to liquidate and quantify any penalty assessments and not to collect any penalties awarded.

11

Factor (3) favors abstention. While the law applicable to Clarke's claims is extensive, it is difficult and Judge Orrick is well-versed in it and its application to Clarke's claims.

Factors (4), (5), (6), (7) strongly favor abstention. The District Court is best-position to liquidate the value of Clarke's claims related to the Cannery MGP Litigation. Once the claims are liquidated, the Debtors and other creditors will have a much clearer idea how much PG&E will for forced to spend to address said claims. For these reasons, the bankruptcy judge, not the district court judge, "may, and is the better position to make a preliminary determinations . . . [about abstention and related matter concerning] . . . the efficient and effective administration of a Chapter 11 case." *In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 565 (Bankr. N.D. Cal. 2002).

Factors (8), (9, (10), (11) and (12) also support abstention. Clarke's Cannery MGP Litigation claims are all noncore matters. The court's docket is quite burdened with the PG&E wild fire maters. There is no forum shopping. The Cannery MGP litigation will demand a jury trial. There are no non-debtor parties to the litigation, besides Clarke.

Here, abstention is appropriate. Under *Tucson Estates* cause exists for lifting the stay.

### C. THE SCOPE OF THE AUTOMATIC STAY RELIEF SHOULD INCLUDE AUTHORITY TO PROSECUTE ALL CLAIMS FOR RELIEF ARTICULATED IN THE OCTOBER 23, 2018 *NOTICE OF INTENT TO SUE UNDER THE RESOURCE CONSERVATION AND RECOVERY ACT AND CLEAN WATER ACT,* INCLUSIVE OF PENALTIES AND THE RECOVERY OF ATTORNEYS FEES AND COSTS

Clarke's claims in the Cannery MGP Litigation will include: *a)* a RCRA claim for injunctive relief for both marine and terrestrial contamination; *b)* a CWA claim for injunctive relief and penalties; *c)* attorneys' fees and costs, including expert witness fees under both RCRA and the CWA; *d)* public nuisance claims for injunctive relief compensatory and punitive damages and related fees and costs. Clarke's ability to seek penalties is governed by 33 U.S.C. 1319(d).

Via the instant motion, the Movant is seeking authority to enforce any injunctive relief awarded. *See section D. infra.* However, Movant is not seeking to enforce at this time any award of monetary damages, penalties, attorneys' fees, or expense reimbursement. Rather, Movant seeks relief only to prosecute the Cannery MGP Litigation claims to their conclusion, in order to fix and

12

quantify all aspects of the relief as articulated in the October 28, 2019 NOI letter, inclusive of penalties, and the recovery of attorneys' fees and costs, including expert witness fees.

In seeking to quantify the monetary aspects of the relief requested via the SAC, Clarke is not seeking a pecuniary advantage of any other creditor. Rather, Clarke is seeking only a judicial determination of any award of compensatory damages, punitive damages, penalties, attorneys' fees and expense reimbursement from the District Court.

### D. THE SCOPE OF THE AUTOMATIC STAY RELIEF SHOULD INCLUDE AUTHORITY THE ENFORCE ANY INJUNCTIVE RELIEF AWARDED

The Bankruptcy Code includes injunctive relief under the definition of a claim. 11 USC § 101(5)(B). The inclusion of equitable relief within the definition of a claim notwithstanding, the Debtor appears to take the position that Clarke's Cannery MGP Litigation claims are unimpaired and part of the non-voting, Class 4A (HoldCo General Unsecured Claims). Dkt. No. 4101, p. 40: 3-4. The exact classification of Clarke's claim is pending confirmation. Provided the Debtor truly asserts that Clark's Cannery MGP Litigation claims are unpaired and part of a non-voting class, the Debtor's own admission would appear as additional cause for the Court to find that the automatic stay need (no longer) apply to Clarke's prosecution of the SAC.

To the extent the District Court finds injunctive relief warranted, relief from the automatic stay should also permit Clarke the ability ***to enforce*** any injunctive relief are awarded. The Cannery MGP continues to cause ongoing harm. Courts have held that the automatic stay does not protect the Debtor's tortious use of property. See, e.g., *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 759–60 (6th Cir. 2012).

To the extent the District Court does injunctive relief, the Debtors would benefit from such knowledge before finalizing the terms of the chapter 11 plan of reorganization, to frame its position as to whether Clarke's claims are impaired or unimpaired, or even whether Clarke's pre-petition claims for injunctive relief qualify as "claims" under the Bankruptcy Code. ". . [E]ven if a claim stems from pre-petition conduct, it still may not be discharged if the parties could not fairly

13

contemplate its potential existence during the bankruptcy proceedings. *In re Hexcel Corp.,* 239 B.R. 564, 572 (N.D. Cal. 1999).

### E. CAUSE EXISTS TO WAIVE THE 14-DAY STAY OF ENFORCEMENT UNDER BANKRUPTCY RULE 4001(A)(3).

The Court may waive the 14-day stay of enforcement of an order granting relief from the automatic stay for cause. Fed. R. Bankr. P. 4001 (a) (3). Cause exists in this case because of the prejudice suffered by Clarke from further delay while Debtor will not suffer any prejudice from allowing the Superior Court to liquidate the claims. Hence, the Court should waive the 14-day stay provided by Bankruptcy Rule 4001(a)(3).

## V. CONCLUSION

WHEREFORE, Clarke prays for entry of an order:

1. Granting relief from the automatic stay to liquidate Mr. Clarke's claims as articulated in the October 23, 2018 *Notice of Intent to Sue Under the Resource Conservation and Recovery Act and Clean Water Act*, inclusive of the following:

    a. RCRA claims for injunctive relief for both marine and terrestrial contamination;

    b. CWA claims for injunctive relief and penalties;

    c. attorneys' fees and costs, including expert witness fees under both RCRA and the CWA;

    d. public nuisance claims for injunctive relief, compensatory and punitive damages and related fees and costs.

2. Granting relief from the automatic stay to enforce any equitable relief that Clarke obtains from the District Court case, including injunctive relief;

3. Waiving the 14-day stay of enforcement provided by Bankruptcy Rule 4001(a)(3);

4. For such other and further relief as the Court deems just, necessary and proper.

Dated: February 13, 2020

BELVEDERE LEGAL, PC

By: /s/ *Matthew D. Metzger*
Matthew D. Metzger
Attorneys for Creditor, Dan Clarke

14