**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
Aram Boghosian
140 Broadway
New York, New York 10005

*Lead Counsel to Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Lead Plaintiff and the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Nicole Fulfree
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068

*Bankruptcy Counsel to Lead Plaintiff and the Class*

*(additional counsel on Exhibit A)*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**SECURITIES LEAD PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS PROOFS OF CLAIM** |

Lead Plaintiff,[1] on behalf of itself and the Class, together with the Securities Act Plaintiffs, pursuant to the *Tentative Ruling Regarding Motion to Apply Rule 7023 and Order Setting Deadline* (the "**Tentative Ruling**") [ECF No. 5604] entered on February 3, 2020, hereby submits this supplemental brief (the "**Supplemental Brief**") urging the Court to adopt its inclination set forth in the Tentative Ruling. Lead Plaintiff respectfully submits that extending the Bar Date at this stage of the Chapter 11 Cases promises only expense, burden, and delay and further prejudice to Class members, all without remedying the existing due process concerns. That result can be avoided by applying Bankruptcy Rule 7023 as it was designed.

## PRELIMINARY STATEMENT

Granting the Motion and applying Bankruptcy Rule 7023 to the Class Claims is the appropriate remedy, and indeed, the *only* feasible remedy, for the Court's "grave due process concerns regarding the adequacy of actual or constructive notice of the claims bar date given to class members, and in particular to class members who were no longer securities or equity holders as of the Record Date." As more fully discussed below, the Debtors' failure to provide adequate notice of the Bar Date to members of the Class will not be cured by extending the Bar Date for Class members. Even providing Class members with actual notice of an extended Bar Date alone would not restore the due process rights of Class members who cannot ascertain whether they may have securities claims against the Debtors. Any extended Bar Date would necessitate a new form of notice and notice program, the timing of which creates its own new due process concerns.

Further, extension of the Bar Date and new notice for Class members would *create*, not avoid, substantial administrative burdens, costs, and delays at this point in the Chapter 11 Cases. As demonstrated below, other courts have routinely rejected that alternative in favor of applying Bankruptcy Rule 7023 where an extended bar date would negatively impact the administration of a bankruptcy estate. Here, due to the compressed timetable and the Debtors' own failure to

---
[1] Capitalized terms used but not defined herein have the meanings given in *Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* (the "**Motion**") [ECF No. 5042] or *Securities Lead Plaintiff's Reply in Further Support of Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* (the "**Reply**") [ECF No. 5452]. The reservation of rights annexed to the Motion as **Exhibit B** is incorporated herein by reference.

timely provide Class members with constitutionally adequate notice of the Bar Date, including sufficient information to inform members of the Class of their rights, class treatment of the Class Claims is the only fair and reasonable remedy consistent with due process.

The appropriate time for the Debtors to provide notice of the Bar Date to Class members was at the same time they provided notice to other creditors. At this stage of the Chapter 11 Cases, extending the Bar Date with the new notice required would create precisely the inefficiency, delay, and uncertainty that the Debtors claim to want to avoid. Moreover, it would severely prejudice Class members. As discussed below, the earliest possible extended Bar Date (using impossibly optimistic assumptions) would fall in May – long after the disclosure statement and solicitation procedures objection deadline and hearing, and perilously close to the proposed voting deadline, the confirmation hearing, and the Debtors' June 30 deadline to emerge from bankruptcy under AB 1054. More realistic assumptions place an extended Bar Date days or weeks later than that, magnifying the prejudice to the Class.

Further, the administrative burden of an extended Bar Date, under the circumstances of these Chapter 11 Cases, would be overwhelming. The Class consists of *hundreds of thousands* of potential members. Even a mere 10% response rate would add tens of thousands of claims, or more, to the claims register. The influx of individual claims would impose a massive administrative burden on the Court, the Debtors, and other stakeholders. Requiring each individual Class member to appear and defend against inevitable claims objections would substantially magnify that burden. All of this can be avoided, and defrauded investors can be assured of representation in these Chapter 11 Cases, if Rule 7023 is applied as it was designed.

Applying Bankruptcy Rule 7023 will leave **only the two Class Claims** for the claims administration process. Issues pertaining to the allocation and distribution of recoveries among individual Class members can be left to the District Court, rather than adding to the complexity of these Chapter 11 Cases. The inherent efficiency and fairness of the Class simply proceeding through the Class Claims in place of tens or even hundreds of thousands of additional individual

claims is undeniable.[2] Not only is that solution fair, efficient, and elegant by providing defrauded investors – most of whom likely do not even realize they might have claims – with the opportunity to have their claims collectively heard, it is also the *only* feasible solution under the present circumstances. That is why Bankruptcy Rule 7023 exists.

## DISCUSSION

In the Bankruptcy Rule 7023 analysis, a "pervasive theme is avoiding undue delay in the administration of the case" and preventing "'gum[ming] up the works.'" *In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997). Under the compressed confirmation schedule, extending the Bar Date would impose undue delay in administering the Chapter 11 Cases given the sheer volume of putative Class members and the number of individual proofs of claim that would result. In addition, an extended Bar Date would not provide individual class members any opportunity to participate in the disclosure statement, voting, and confirmation process, compounding the Court's due process concerns.

Applying Bankruptcy Rule 7023 will *prevent* that result by saving the estate hundreds of thousands (perhaps millions) of dollars in noticing costs, leaving just two Class Claims on the claims register on behalf of all members of the Class and thereby sparing the Court and the estate a monumental administrative burden. Why might the Debtors suggest otherwise? Perhaps because they hope that extending the Bar Date would disenfranchise tens (if not hundreds) of thousands of defrauded investors who don't realize they have claims to file or are in no position to assert those claims and individually participate in these Chapter 11 Cases. The Debtors would also prefer to deny defrauded investors the benefits of adequate representation through a sophisticated lead representative plaintiff, PERA, and its court-appointed lead counsel and chosen bankruptcy counsel. A fundamental purpose of Bankruptcy Rule 7023 is to prevent that unjust result by allowing Class members, like other major constituencies in these Chapter 11 Cases, to benefit from experienced, collective representation.

Thus, application of Bankruptcy Rule 7023 and the ultimate certification of the Class for

---

[2] Even if the Debtors had timely provided Class members with actual notice of the Bar Date, class treatment of the Class Claims nevertheless would have been appropriate for this and other reasons.

the purpose of the Class Claims is superior to extending the Bar Date for at least four reasons:

- The earliest possible extended Bar Date would disrupt the confirmation process and, in any event, would deprive Class members of the opportunity to participate in the confirmation process;
- The Class likely includes hundreds of thousands of members;
- Extending the Bar Date would impose a substantial administrative burden on the Court and the Debtors; and
- Application of Rule 7023 is a simple, practical remedy that satisfies due process, comports with principles of fundamental fairness, and ensures participation on behalf of absent or uninformed Class members.

### A. An extended Bar Date would not restore Class members' due process rights.

As the Court correctly found, "there remain grave due process concerns regarding the adequacy of actual or constructive notice of the claims bar date given to class members, and in particular to class members who were no longer securities or equity holders as of the Record Date." Tentative Ruling at 2. To even begin to remedy those concerns, any extended Bar Date would have to be coupled with constitutionally adequate, actual notice to Class members. While that process could have been easily accomplished at the time the Debtors originally served the Bar Date Notice, *see* Walter Decl. [ECF No. 5456], ¶¶ 7, 14-23, it cannot be belatedly implemented during the expedited confirmation timetable of these Chapter 11 Cases.

For the reasons discussed in the Motion, any form of notice of an extended Bar Date would need to actually apprise Class members of their need to file proofs of claim. *See* Motion at 12 ("The Standard Bar Date Notice did not mention the Securities Litigation, the Class, or the Class Period at all, nor did it provide any indication that members of the Class might hold claims against the Debtors and therefore need to file proofs of claim . . . ."). Notice that would foreclose a class member's claim, as here, "should describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). This is particularly true here, where the claims at issue are securities claims, because "in 1995 legislation[,] Congress provided specific requirements concerning what *must* be included in settlement notices in securities-class actions." Wright & Miller, 7B Fed. Prac. & Proc. § 1797.6 (3d ed.) (emphasis added); *see also* 15 U.S.C. §77z-1(a)(7) (notice of securities class action settlement must include "Statement of

plaintiff recovery" and "Statement of potential outcome of case"). Determining the appropriate form and content of such a notice and obtaining this Court's approval would add yet more delay, making it impossible to implement a constitutionally and statutorily adequate notice program under the current timeframe. *See* Walter Decl., ¶ 21 (securities class notice process typically takes thirty to sixty days following court approval). The more hastily a form of notice were assembled and the accompanying notice program implemented, the less likely the notice would comport with due process.

### B. An extended Bar Date would now interfere with the Plan confirmation process.

It cannot be disputed that the Debtors failed to provide actual notice of the Bar Date to Class members. Doing so now would not only require a new notice program (including a new *form* of Bar Date Notice that actually apprises Class members of their need to file proofs of claim), but also threaten the Court-ordered Plan confirmation schedule while depriving Class members of any opportunity to participate in these Chapter 11 Cases.

There is a customary and well-tested process for providing actual, direct notice to absent members of classes of purchasers of publicly traded securities, such as the Class. Walter Decl. [ECF No. 5456], ¶¶ 7, 14-23. Because "the vast majority of members of a proposed class are beneficial purchasers whose securities were purchased in 'street name[,]'" the notice process typically involves intermediaries, including the third-party nominees who are the record holders of the relevant securities. *Id.* ¶ 8. Nominees either provide contact information for beneficial holders, which typically takes an additional seven to fourteen days, or pass notices along to beneficial holders, which takes seven to ten days. *Id.* ¶¶ 9, 16. As a result, getting actual notice into the hands of absent class members typically takes between thirty and sixty calendar days. *Id.* ¶ 21. Here, even sixty days would be conservative.

In addition, creditors must be given at least twenty-one days' notice of a claims bar date. Fed. R. Bankr. P. 2002(a)(7). Thus, for notice to be reasonably calculated to reach Class members consistent with *Mullane* and its progeny, the earliest an extended Bar Date could occur is eighty-one days from the start of the noticing process. Even if the Court entered an order extending the Bar Date today, form and content of the notice were agreed to immediately, and

the Debtors' noticing agent began the process instantly – all improbable – the earliest the extended Bar Date could occur is May 5, 2020 (eighty-one days from now). That date is more than two months after the deadline to object to approval of the disclosure statement and solicitation procedures, more than a month after the Debtors will have mailed ballots and solicitation materials to creditors entitled to vote, just nine days before the May 15, 2020 voting and confirmation objection deadline, and only three weeks before the confirmation hearing starts. *See Amended Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation* [ECF No. 5732] at 5. The Debtors, even under these unreasonably optimistic assumptions, could never provide Class members with adequate notice of an extended Bar Date and also provide them a meaningful opportunity to move to have their claims estimated for voting purposes, object to the Disclosure Statement or the proposed solicitation and voting procedures, vote on the Plan, object to confirmation, or otherwise meaningfully participate in the confirmation process.[3] That result would *compound*, not remedy, existing due process concerns.

### C. The Class likely includes hundreds of thousands of members.

According to the Debtors, there were approximately 111,000 beneficial holders of the Debtors' publicly traded common stock on the July 1, 2019 record date. Pullo Decl., ¶ 5, Schrag Decl., ¶ 7. Thus, the number of parties that traded in the Debtors' shares during the three-and-a-half-year Class Period is easily in the hundreds of thousands. During the Class Period, which began on April 29, 2015 and continued through and including November 15, 2018, trading volume in the Debtors' stock totaled over **3.4 billion shares**.[4] With a total public float of approximately 501.55 million shares,[5] that trading volume represents the Debtors' entire public float turning over 6.8 times during the Class Period. Extrapolating from the "point-in-time" dispersion of shareholders on a single day (the Record Date) yields a potential Class size of ***over 754,000 members*** (111,000 shareholders at a particular point in time x 6.8X turnover). Even

---

[3] Of course, if the Court directed that Class members receive the same amount of time to submit claims as all other creditors were given (112 days from entry of the Bar Date Order), the extended Bar Date would fall in early June – after the scheduled Confirmation Hearing.
[4] *See* Yahoo! Finance – PG&E Corporation (PCG) - Historical Trading Data, *available at* https://finance.yahoo.com/quote/PCG/history?p=PCG.
[5] *See* Yahoo! Finance – PG&E Corporation (PCG) – Statistics, *available at* https://finance.yahoo.com/quote/PCG/key-statistics?p=PCG

assuming half of the Debtors' shareholder base remained static across the Class Period, likely an overly conservative assumption, there are over 377,000 potential Class members who would be entitled to adequate notice of an extended Bar Date and an opportunity to file proofs of claim.

> **D. Extending the Bar Date with adequate notice would impose significant administrative burdens on the Court and the estate.**

To date, approximately 97,000 proofs of claim have been filed in the Chapter 11 Cases. *See* https://restructuring.primeclerk.com/pge/Home-ClaimInfo. If the Court were to extend the Bar Date and order adequate notice for Class members rather than simply applying Bankruptcy Rule 7023 to the Class Claims, even a 10% response rate would result in tens of thousands of new claims being added to the claims register. In reality, based on the historical experience of the Debtors' own noticing consultant in securities litigation cases, the actual response rate likely would be much higher. *See, e.g.*, Heffler Claims Group, *Featured Case: In re KLA-Tencor Corporation Securities Litigation*[6] ("Heffler Claims Administration arranged to have over 381,000 Notices mailed to potential class members and received in excess of 60,000 Proofs of Claim (over 48,000 of which were filed electronically by large institutions or nominees)."); Heffler Claims Group, *Featured Case: In re Schering-Plough Corporation Securities Litigation*[7] (71,000 proofs of claim received with respect to a nine-month class period); Heffler Claims Group, *Featured Case: American Business Financial Services, Inc. Noteholders Litigation*[8] (notices mailed to 29,000 potential class members yielded 14,500 filed claims).

The administrative burden imposed by an extended Bar Date under the present circumstances would not stop at the claims register. The Debtors would have tens of thousands of claims – or more – to reconcile, imposing a massive burden on the Court and administrative costs on the estate. In addition, the reconciliation of tens or even hundreds of thousands of additional proofs of claim would cause substantial delay in administering the Debtors' estates.

The *Connaught* Court recognized this reality, and the superiority of the class device in dealing with it, noting that

---

[6] https://www.hefflerclaims.com/featured-case/kla-tencor-corporation/
[7] https://www.hefflerclaims.com/featured-case/schering-plough-corporation/
[8] https://www.hefflerclaims.com/featured-case/american-business-financial-services-litigation/

> if I deny class certification and extend the bar date for WARN Act claimants, ***the delay may be as great or greater than if I grant the motion.*** Some number, perhaps most of the putative class members will then file claims. The Trust will have to examine every filed claim anyway. . . .

*In re Connaught Group, Ltd.*, 491 B.R. 88, 99-100 (Bankr. S.D.N.Y. 2013) (emphasis added). That court went on to note that "[i]f the Trust objects to all of the claims on the same basis, the objections will be consolidated . . . and the parties will effectively litigate the same class action." *Id.* at 100. In other words, extending the Bar Date to allow individual Class members to file proofs of claim would, paradoxically, after interposing massive administrative overhead and delays, potentially create a circuitous route back to collective adjudication of the Class Claims (although in that instance, individual Class members would be left to fend for themselves). That would be the epitome of inefficiency and antithetical to the very purpose of Bankruptcy Rule 7023, which is to provide a collective voice to a large group of creditors, much like every other creditor and shareholder constituency already has in these Chapter 11 Cases.

### E. Application of Bankruptcy Rule 7023 to the Class Claims will *eliminate* substantial administrative burdens, costs, delay, and uncertainty.

The inherent efficiency and simplicity of class treatment of the Class Claims stands in stark contrast to the burdens, costs, inefficiency and potential prejudice to Class members imposed by extending the Bar Date after adequately notifying individual Class members, telling them to file proofs of claim and fend for themselves. The *MF Global* court rejected an argument that class certification would adversely impact administration of a bankruptcy estate, finding instead that, as here, class certification would *prevent* the delays that would be caused by the filing of numerous additional proofs of claim by class members. *In re MF Global Inc.*, 512 B.R. 757, 765 (Bankr. S.D.N.Y. 2014). That court summarized this dichotomy as follows:

> Here, class certification will not adversely affect the administration of the estate. The Court rejects the Trustee's argument that class certification at this stage of the proceedings will adversely affect the case's administration by (1) unreasonably wasting estate assets through adding layers of procedural and factual complexity and (2) threatening to halt or delay the Trustee's substantial progress in resolving general estate claims. . . . ***And even if the Court were to deny class certification, the Court would extend the bar date to allow each of the MFGI Class Claimants to file individual claims, which would result in a greater delay in administration of the case***. . . . Thus, under the circumstances of the case, allowing

> the Thielmann Claim to proceed as a class claim will result in the most expeditious administration of the estate.

*Id.* (emphasis added); *see also In re Pac. Sunwear of California, Inc.*, No. 16-10882 (LSS), 2016 WL 3564484, at *6 (Bankr. D. Del. June 22, 2016) (granting a motion for class certification, noting that "[e]ven if I were to deny class certification, I would extend the bar date to allow each claimant that did not receive actual notice to file individual claims, ***which would only result in greater delay***") (emphasis added).[9]

The appropriate outcome is identical here. A fundamental purpose of Bankruptcy Rule 7023 is to "bring all claims forward, as contemplated by the Bankruptcy Code." *In re The Charter Co.*, 876 F.2d 866, 873 (11th Cir. 1989). Applying Bankruptcy Rule 7023 to the Class Claims will fulfill that purpose by bringing forward all Class claims in the most efficient and fair manner possible, leaving the Court and the Debtors' estates with just two representative claims to contend with in these Chapter 11 Cases, not tens or hundreds of thousands of additional claims. All issues related to allocation and further distribution of any Plan distributions to Class members would be relegated to the District Court. There could be no more appropriate remedy.

## **CONCLUSION**

Extending the Bar Date with detailed Class notice is neither an appropriate nor a feasible remedy under the present circumstances. It is simply not possible to implement a constitutionally and statutorily adequate notice program with sufficient time to be meaningful in these Chapter 11 Cases. Applying Bankruptcy Rule 7023 to the Class Claims offers the only fair and feasible remedy, leaving just two claims to administer in these Chapter 11 Cases on behalf of hundreds of thousands of Class members who will be able to participate if they chose to do so, eliminating substantial costs, delays, uncertainty, and prejudice. The Court's Tentative Ruling indicated that PERA has adequately demonstrated that the factors articulated in *In re Musicland*

---

[9] Securities Plaintiffs have been unable to locate any published decision, in this Circuit or elsewhere, in which a Bankruptcy Court ordered the extension of a bar date after finding that a putative class representative had adequately demonstrated that the relevant *Musicland* factors weighed in its favor.

*Holding Corp.* weigh in its favor. Accordingly, Lead Plaintiff urges the Court to grant the Motion.[10]

**WHEREFORE**, Securities Plaintiffs respectfully request that the Court enter an order granting the Motion.

Dated: February 14, 2020

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**
**MICHELSON LAW GROUP**

By: /s/ Randy Michelson
Randy Michelson (SBN 114095)

*Bankruptcy Counsel to Lead Plaintiff and the Class*

- and -

**LABATON SUCHAROW LLP**

*Lead Counsel to Lead Plaintiff and the Class*

- and -

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**

*Liaison Counsel for the Class*

- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**

*Counsel for the Securities Act Plaintiffs*

- and -

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**

*Additional Counsel for the Securities Act Plaintiffs*

---

[10] If the Motion is granted and the Debtors agree, Lead Plaintiff's intention would be to discuss resolution of open issues as soon as feasible.