BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

1          UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3             SAN FRANCSCO DIVISION

4     Bankruptcy Case No. 19-30088(DM)

5     _____

6     In re

7     PG&E CORPORATION

8          -and-

9     PACIFIC GAS AND ELECTRIC COMPANY,

10                      Debtors.

11    _____

12

13

14

15

16          VIDEOTAPED DEPOSITION OF

17            JOHN-PAUL HENDERSON

18

19

20

21

22    DATE TAKEN: FEBRUARY 11, 2020

23    REPORTED BY: PAUL J. FREDERICKSON, CSR

24    JOB NO. 3846976

25    PAGES 1 - 227

Veritext Legal Solutions
866 299-5127

Page 2

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCSCO DIVISION

Bankruptcy Case No. 19-30088(DM)

_____

In re

PG&E CORPORATION

    -and-

PACIFIC GAS AND ELECTRIC COMPANY,

              Debtors.

_____

        Videotaped Deposition of JOHN-PAUL HENDERSON, the witness herein, held at Veritext Legal Solutions, 180 Montgomery Street, Suite 1520, San Francisco, California, at 9:37 a.m., pursuant to notice, before Paul J. Frederickson, CSR.

---

Page 3

    A P P E A R A N C E S

ON BEHALF OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS:

  BAKER HOSTETLER LLP
  Key Tower
  Suite 2000
  127 Public Square
  Cleveland, OH 44114
  216.621.0200
  BY: ERIC GOODMAN, ESQ.
  egoodman@bakerlaw.com

  BAKER HOSTETLER LLP
  SunTrust Center
  Suite 2300
  200 South Orange Avenue
  Orlando, FL 3802-0112
  407.649.4092
  BY: DANIELLE L. MEROLA, ESQ.
  dmerola@bakerlaw.com

---

Page 4

ON BEHALF OF CAL FIRE:

  CALIFORNIA DEPARTMENT OF JUSTICE
  Office of the Attorney General
  1300 I Street
  P.O. Box 944255
  Sacramento, CA 94244-2550
  916.210.7804
  BY: KELLY A. WELCHANS, ESQ.
  Kelly.Welchans@doj.ca.gov

ON BEHALF OF THE UNITED STATES AND FEMA:

  US DEPARTMENT OF JUSTICE
  Civil Division
  Commercial Branch
  1100 L Street, N.W.
  Washington, D.C. 20004
  202.305.2419
  BY: MICHAEL TYE, ESQ.
  Michael.Tye@usdoj.gov

---

Page 5

ON BEHALF OF CALIFORNIA GOVERNOR'S OFFICE OF EMERGENCY SERVICES:

  [Appearing via telephone]
  CALIFORNIA DEPARTMENT OF JUSTICE
  Deputy Attorney General
  Office of the Attorney General
  Business & Tax Section
  300 South Spring Street
  Suite 1702
  Los Angeles, CA 90013
  213.269.6000
  BY: MATTHEW C. HEYN, ESQ.
  Matthew.Heyn@doj.ca.gov

ON BEHALF OF THE AD HOC COMMITTEE OF SENIOR UNSECURED NOTEHOLDERS:

  [Appearing via telephone]
  AKIN GUMP STRAUSS HAUER & FELD
  580 California Street
  Suite 1500
  San Francisco, CA 94104-1036
  415.765.9506
  BY: DANIELLE CROCKETT GINTY, ESQ.
  dginty@akingump.com

---

Veritext Legal Solutions
866-299-5127

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 3 of 101

1 ON BEHALF OF PG&E:
2 [Appearing via telephone]
3 CRAVATH, SWAINE & MOORE LLP
4 Worldwide Plaza
5 825 Eighth Avenue
6 New York, NY 10019
7 212.474.1279
8 BY: SOPHIA GENTEL, ESQ.
9 sgentel@cravath.com
10
11 ON BEHALF OF THE AD HOC SUBROGATION GROUP:
12 [Appearing via telephone]
13 WILLKIE FARR & GALLAGHER LLP
14 787 Seventh Avenue
15 New York, NY 10019-6099
16 212.728.8858
17 BY: VICTORIA A. SHEETS, ESQ.
18 vsheets@willkie.com
19
20
21
22
23
24
25
Page 6

1 ON BEHALF OF THE OFFICIAL COMMITTEE OF
2 UNSECURED CREDITORS:
3 MILBANK LLP
4 1850 K Street, N.W.
5 Suite 1100
6 Washington, DC 20006
7 202.835.7544
8 BY: SAMIR VORA, ESQ.
9 Special Counsel
10 svora@milbank.com
11
12 ALSO PRESENT:
13 BRANDON MILLER
14 Videographer
15
16
17
18
19
20
21
22
23
24
25
Page 7

1        I N D E X
2
3 JOHN-PAUL HENDERSON
4 By Mr. Goodman: 16
5 By Mr. Vora 212
6
7 Request for information: None
8 Request for documents: None
9
10       INDEX TO EXHIBITS
11
12 EXHIBIT 1                23
13 Amended Notice of Deposition
14
15 EXHIBIT 2                39
16 US GAO Report to Congressional
17 Requesters, Wildfire Disasters,
18 FEMA Could Take Additional Actions
19 to Address Unique Response and
20 Recovery Challenges
21
22 EXHIBIT 3                57
23 Proof of Claim re 2017 Northern
24 California Fires Costs
25
Page 8

1 EXHIBIT 4                75
2 Proof of Claim re Butte Fire Costs
3
4 EXHIBIT 5                82
5 Proof of Claim re Camp Fire Costs
6
7 EXHIBIT 6                88
8 United States' Response to Official
9 Committee of Tort Claimants' First
10 Set of Interrogatories
11
12 EXHIBIT 7                106
13 CAL FIRE News Release 4-28-16, CAL
14 FIRE Investigators Determine Cause
15 of Destructive Butte Fire
16
17 EXHIBIT 8                117
18 CAL FIRE News Release 5-15-19, CAL
19 FIRE Investigators Determine Cause
20 of Destructive Camp Fire
21
22
23
24
25
Page 9

3 (Pages 6 - 9)

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 4
of 101

1 EXHIBIT 9                   126
2 CAL FIRE News Release 6-8-18,
3 CAL FIRE Investigators Determine
4 Causes of 12 Wildfires in Mendocino,
5 Humboldt, Butte, Sonoma, Lake, and
6 Napa Counties
7
8 EXHIBIT 10                  130
9 The Liberty Consulting Group 5-6-13
10 Study of Risk Assessment and PG&E's
11 GRC
12
13 EXHIBIT 11                  133
14 12-22-14 CPUC letter re Audit of
15 PG&E's North Valley Division
16
17 EXHIBIT 12                  140
18 Public Utilities Commission Order
19 Instituting Investigation into the
20 Creation of a Shared Database or
21 Statewide Census of Utility Poles
22 and Conduit
23
24
25

1 EXHIBIT 20                  177
2 "Debris Removal Right of Entry
3 Form Deadline, 11/13"
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 EXHIBIT 13                  144
2 3-29-17 Public Utilities Commission
3 Public Incident Investigation Report
4
5 EXHIBIT 14                  147
6 11-8-19 Public Utilities Commission
7 Public Incident Investigation Report
8
9 EXHIBIT 15                  149
10 4-30-19 Public Utilities Commission
11 Public Incident Investigation Report
12
13 EXHIBIT 16                  151
14 5-2-19 Public Utilities Commission
15 Public Incident Investigation Report
16
17 EXHIBIT 17                  156
18 11-12-18 FEMA Initial Notice
19
20 EXHIBIT 18                  163
21 9-22-15 FEMA Initial Notice
22
23 EXHIBIT 19                  165
24 10-10-17 FEMA Initial Notice
25

1      FEBRUARY 11, 2020          09:32:15
2      [9:37 a.m.]          09:32:17
3      THE VIDEOGRAPHER:  Good morning.  09:37:16
4  We're going on the record at 9:37 a.m.  09:37:16
5  on February 11, 2020.          09:37:23
6      Please note the microphones are  09:37:25
7  very, very sensitive and may pick up  09:37:26
8  whispering, rubbing of the clothing,  09:37:28
9  hair and microphone cable.          09:37:30
10      Please silence all cell phones  09:37:33
11  and place them away from the          09:37:34
12  microphones as they can interfere with  09:37:35
13  deposition audio.          09:37:38
14      Audio and video recording will  09:37:39
15  continue to take place unless all  09:37:43
16  parties agree to go off the record.  09:37:45
17      This is media number 1 of the  09:37:46
18  video-recorded deposition of John-Paul  09:37:48
19  Henderson taken by counsel in the  09:37:53
20  matter of In re PG&E Corp. and Pacific  09:37:54
21  Gas and Electric Company filed in  09:38:01
22  United States Bankruptcy Court,  09:38:03
23  Northern District of California,  09:38:04
24  San Francisco Division, Bankruptcy  09:38:06
25  Case Number 19-30088 (DM).  09:38:10

Veritext Legal Solutions
866-299-5127

Case: 19-30088   Doc# 5834-1   Filed: 08/19/20   Entered: 02/19/20 14:18:03   Page 5
of 101

**Page 14**

1          This deposition is being held at   09:38:17
2      180 Montgomery Street, Suite 1520,    09:38:18
3      San Francisco, California 94104.    09:38:23
4          My name is Brandon Miller, from   09:38:25
5      the firm Veritext Legal Solutions, and  09:38:29
6      I'm the videographer.  The court    09:38:31
7      reporter is Paul Frederickson, from   09:38:33
8      the firm Veritext Legal Solutions.    09:38:34
9          I am not related to any matter   09:38:37
10     in this action, nor am I financially   09:38:39
11     interested in the outcome.       09:38:41
12         Counsel and all present in the   09:38:42
13     room, and everyone attending remotely,  09:38:43
14     will now state their appearances and   09:38:45
15     affiliations for the record.     09:38:47
16         MR. GOODMAN:  Eric Goodman,    09:38:48
17     Baker Hostetler.  With me is my    09:38:52
18     colleague Danielle Merola, here on   09:38:54
19     behalf of the Official Committee of   09:38:59
20     Tort Claimants in the PG&E Bankruptcy  09:39:01
21     case.          09:39:03
22         MS. WELCHANS:  This is Kelly   09:39:04
23     Welchans, from the Office of the    09:39:06
24     Attorney General, for CAL FIRE.    09:39:08
25         MR. TYE:  Michael Tye, from the   09:39:09

**Page 15**

1      US Department of Justice, Civil    09:39:11
2      Division, the Commercial Branch.  I'm  09:39:12
3      here on behalf of the United States   09:39:13
4      and FEMA.         09:39:15
5          THE VIDEOGRAPHER:  Okay.    09:39:20
6      Counsel on the phone.       09:39:20
7          MR. HEYN:  Good morning.    09:39:21
8      Matthew Heyn, Office of the Attorney   09:39:25
9      General, for the California Governor's  09:39:28
10     Office of Emergency Services.     09:39:30
11         MS. GINTY:  Danielle Ginty, Akin  09:39:32
12     Gump Strauss Hauer & Feld, on behalf   09:39:32
13     of the Ad Hoc Committee of Senior    09:39:46
14     Unsecured Noteholders.      09:39:49
15         MS. GENTEL:  Sophia Gentel, from  09:39:50
16     Cravath, Swaine & Moore, representing  09:39:54
17     PG&E.          09:39:57
18         THE VIDEOGRAPHER:  Anyone else   09:39:58
19     on the phone?        09:39:59
20         MS. SHEETS:  Yes.  This is    09:40:00
21     Victoria Sheets, from Willkie Farr &   09:40:01
22     Gallagher, on behalf of the Ad Hoc   09:40:04
23     Subrogation Group.       09:40:05
24         THE VIDEOGRAPHER:  Anyone else?   09:40:06
25     Thank you.         09:40:10

**Page 16**

1          You may now swear in the    09:40:11
2      witness.         09:40:12
3          JOHN-PAUL HENDERSON      09:40:23
4      being duly sworn on oath, was     09:40:23
5          examined and testified    09:40:23
6          as follows:       09:40:23
7          EXAMINATION       09:40:24
8  BY MR. GOODMAN:         09:40:24
9      Q.   Good morning.       09:40:26
10     A.   Good morning.       09:40:27
11     Q.   Are you please state your name   09:40:27
12 for the record?         09:40:29
13     A.   It's John-Paul Henderson.  It's  09:40:29
14 J-O-H-N hyphen P-A-U-L, Henderson,   09:40:34
15 H-E-N-D-E-R-S-O-N.        09:40:40
16     Q.   Thank you.        09:40:40
17         Do you work for FEMA?    09:40:42
18     A.   Yes.          09:40:42
19     Q.   Are you based in California?    09:40:46
20     A.   Yes, I work in the regional    09:40:49
21 office in Oakland.         09:40:51
22     Q.   So you're based in Oakland,    09:40:54
23 California?           09:40:56
24     A.   Yes.          09:40:56
25     Q.   Can you state the address of    09:40:59

**Page 17**

1 your place of business?        09:41:01
2      A.   Yes.  The address of the     09:41:04
3 regional office is 1111 Broadway, Suite   09:41:05
4 1200, Oakland, California 94607.     09:41:11
5      Q.   Okay.         09:41:16
6          Have you ever been deposed    09:41:17
7 before?           09:41:18
8      A.   No.          09:41:23
9      Q.   Okay.         09:41:23
10         Do you understand that your    09:41:24
11 answers must be audible?       09:41:25
12     A.   Yes.          09:41:25
13     Q.   So no shrugging or nodding of   09:41:29
14 the head.  Does that make sense?     09:41:31
15     A.   Yes, I understand.      09:41:32
16     Q.   Okay.         09:41:32
17         If you do not understand a    09:41:36
18 question or find a question to be confusing, 09:41:38
19 would you please ask me for clarification?  09:41:41
20     A.   Yes, I will.        09:41:44
21     Q.   Okay.         09:41:44
22         Likewise, if you think that I   09:41:45
23 did not understand your answer, would you  09:41:48
24 please let me know?        09:41:50
25     A.   Yes, I will.        09:41:53

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 6
of 101

```
 1    Q.   Are you presently on any          09:41:55
 2  medications that could impact your ability   09:41:57
 3  to testify today?                            09:41:58
 4    A.   No.                                   09:41:58
 5         [Pause for counsel entering the       09:42:07
 6  room.]                                       09:42:09
 7         MR. GOODMAN:  I think we just         09:42:09
 8  had another party join the deposition.       09:42:10
 9  I'll pause and give him an opportunity        09:42:13
10  to state his appearance for the              09:42:15
11  record.                                      09:42:17
12         MR. VORA:  Thank you.                 09:42:17
13         Samir Vora, of Milbank LLP, on        09:42:20
14  behalf of the Official Committee of          09:42:23
15  Unsecured Creditors.                         09:42:27
16         MR. GOODMAN:  Okay.                   09:42:28
17  BY MR. GOODMAN:                              09:42:28
18    Q.   During this deposition I'll use       09:42:32
19  the term "PG&E" to refer to the Pacific Gas  09:42:34
20  and Electric Company, the debtor in the      09:42:39
21  pending chapter 11 case.  If I use the term  09:42:41
22  "PG&E" or "the debtor" to refer to the       09:42:43
23  Pacific Gas and Electric Company, will you   09:42:47
24  understand my question?                      09:42:48
25    A.   Yes.                                  09:42:48
                                        Page 18
```

```
 1    Q.   During the deposition attorneys  09:42:53
 2  may make objections.  If an objection is     09:42:54
 3  made you still must answer the question      09:42:57
 4  unless you are instructed not to answer.     09:42:58
 5         Sometimes when an objection is        09:43:02
 6  made the witness can lose track of the       09:43:04
 7  question.  If this happens to you please let 09:43:06
 8  me know and either I or the court reporter   09:43:09
 9  can repeat the question for you.             09:43:14
10         Sometimes I may ask questions         09:43:16
11  that feel very basic to you.  Sometimes I    09:43:18
12  may ask questions where the answer may       09:43:22
13  appear very obvious to you.  Other times I   09:43:23
14  may ask questions that require some thought  09:43:26
15  on your part.  Please take your time in      09:43:27
16  responding to my questions.  If you need a   09:43:30
17  moment to think before you answer, I will    09:43:33
18  not be offended, and your lawyer will        09:43:35
19  appreciate having the time to interpose an   09:43:38
20  objection.                                   09:43:41
21         Does that make sense?                 09:43:42
22    A.   Yes, I understand.                    09:43:43
23    Q.   Great.                                09:43:44
24         Did you attend college?               09:43:44
25    A.   Yes.                                  09:43:44
                                        Page 19
```

```
 1    Q.   Where did you go?                  09:43:47
 2    A.   Duke University.                       09:43:52
 3    Q.   Did you have a major or field of     09:43:52
 4  emphasis?                                     09:43:54
 5    A.   Yes, I did.                            09:43:55
 6    Q.   What was that?                         09:43:55
 7    A.   Earth and ocean sciences.             09:43:58
 8    Q.   Did you attend graduate school?      09:44:02
 9    A.   Yes.                                   09:44:02
10    Q.   And where did you go for              09:44:04
11  graduate school?                             09:44:06
12    A.   I went to the American                09:44:06
13  University Washington College of Law for law 09:44:09
14  school, and I also have a master's degree    09:44:12
15  from the American University School of       09:44:14
16  International Service.                        09:44:17
17    Q.   And you work for FEMA now;            09:44:22
18  correct?                                     09:44:25
19    A.   Correct.                              09:44:25
20    Q.   When did you start working for       09:44:25
21  FEMA?                                        09:44:27
22    A.   I started in the fall of 2005.       09:44:27
23    Q.   Was this your first job after       09:44:36
24  graduate school?                             09:44:38
25    A.   Yes.                                  09:44:38
                                        Page 20
```

```
 1    Q.   What are your job                   09:44:43
 2  responsibilities at FEMA?                    09:44:45
 3    A.   I am the regional counsel for        09:44:46
 4  the Region IX office in Oakland.             09:44:50
 5    Q.   Have you held any other              09:44:59
 6  positions at FEMA?                           09:45:00
 7    A.   Prior to working in the regional     09:45:03
 8  office I was an attorney at our headquarters 09:45:06
 9  office in Washington, D.C.                   09:45:09
10    Q.   And what were your                   09:45:12
11  responsibilities when you were working in    09:45:13
12  Washington, D.C.?                            09:45:15
13    A.   I was responsible for providing      09:45:16
14  legal advice on a number of agency programs. 09:45:20
15    Q.   Okay.                                09:45:23
16         Is there anything unique about       09:45:27
17  your current position at FEMA?               09:45:28
18         MR. TYE:  Object to the form.        09:45:34
19         MR. GOODMAN:  Let me rephrase.       09:45:35
20    Q.   Do you have any responsibilities     09:45:38
21  at FEMA that no one else has?                09:45:39
22    A.   I mean, I'm the lead attorney        09:45:53
23  for the regional office.  So -- insofar as   09:45:55
24  there is no really attorney for the regional 09:46:00
25  office, I'm the only one that has those      09:46:01
                                        Page 21
```

1 duties.                             09:46:04
2    Q.   Okay.                       09:46:04
3         Do any employees report to you?  09:46:04
4    A.   Yes.                        09:46:07
5    Q.   Who are those?              09:46:08
6    A.   I have two direct reports.  The  09:46:10
7 first is Ann Winterman and the second is  09:46:12
8 Dana Waller.                        09:46:16
9    Q.   Are they both attorneys?    09:46:22
10   A.   Yes.                        09:46:22
11   Q.   And what are their job titles  09:46:31
12 and responsibilities?              09:46:32
13   A.   Ms. Winterman's title is    09:46:33
14 assistant regional counsel, and Ms. Waller's  09:46:39
15 title is attorney advisor, and they also  09:46:43
16 provide legal advice on FEMA's programs  09:46:50
17 specific to FEMA Region IX.         09:46:53
18   Q.   Do you report to anyone at FEMA?  09:46:57
19   A.   Yes.                        09:47:02
20   Q.   And who is that?            09:47:02
21   A.   My first-line supervisor is  09:47:03
22 Scott Dowling in the headquarters office of  09:47:05
23 chief counsel.                      09:47:10
24   Q.   And what are his            09:47:10
25 responsibilities?                   09:47:13
                                      Page 22

1    A.   He is responsible for managing  09:47:13
2 all of the regional counsel across FEMA's  09:47:16
3 ten regional offices.               09:47:20
4    Q.   Is he based in Washington, D.C.?  09:47:22
5    A.   Yes, he works in Washington,  09:47:23
6 D.C.                                09:47:25
7    Q.   Okay.                       09:47:25
8         We'll go ahead and mark the  09:47:29
9 Rule 30(b)(6) notice as Exhibit 1.   09:47:31
10        [Deposition Exhibit 1 marked for  09:47:31
11 identification.]                    09:47:31
12 BY MR. GOODMAN:                     09:47:59
13   Q.   Okay.  And you've been handed  09:47:59
14 what has been marked as Exhibit 1.  Can you  09:48:00
15 identify this document?             09:48:02
16   A.   This is the Amended Notice of  09:48:05
17 Rule 30(B)(6) Deposition of Department of  09:48:06
18 Homeland Security Federal Emergency  09:48:10
19 Management Agency.                  09:48:12
20   Q.   Do you understand that you have  09:48:14
21 been offered as FEMA's Rule 30(b)(6)  09:48:15
22 designee?                           09:48:18
23   A.   Yes, I do.                   09:48:26
24   Q.   Have you reviewed this Rule  09:48:27
25 30(b)(6) notice before?             09:48:30
                                      Page 23

1    A.   Yes.                        09:48:30
2    Q.   Are you prepared to testify  09:48:35
3 today as to information known or recently  09:48:37
4 known to FEMA about each of the topics  09:48:42
5 listed in this Rule 30(b)(6) notice?  09:48:45
6    A.   Yes.                        09:48:50
7    Q.   Are there any topics for which  09:48:50
8 you are not prepared to testify as FEMA's  09:48:51
9 Rule 30(b)(6) designee?             09:48:55
10   A.   No, I am prepared.          09:49:14
11   Q.   Okay.                       09:49:15
12        What did you do to prepare for  09:49:15
13 this deposition?                    09:49:17
14   A.   I reviewed the proofs of claim  09:49:19
15 filed by FEMA in the bankruptcy proceeding.  09:49:21
16 I reviewed the responses to the discovery  09:49:24
17 requests, the interrogatories and requests  09:49:29
18 for admission, and refamiliarized myself  09:49:33
19 with the documents that were provided as  09:49:37
20 part of the document production request.  09:49:39
21   Q.   Okay.                       09:49:39
22        Did you meet with an attorney?  09:49:43
23   A.   Yes.  I met with the Department  09:49:46
24 of Justice.                         09:49:48
25   Q.   Okay.                       09:49:48
                                      Page 24

1         For how long did you meet with  09:49:49
2 the Department of Justice?          09:49:51
3    A.   We had an in-person meeting  09:49:57
4 yesterday all day and then two phone calls  09:50:00
5 the prior week.                     09:50:04
6    Q.   Okay.                       09:50:05
7         And you referenced the proofs of  09:50:08
8 claim and the responses to the written  09:50:10
9 discovery.  Are there any specific documents  09:50:11
10 that you reviewed to prepare for this  09:50:14
11 deposition?                         09:50:15
12   A.   I also refamiliarized myself  09:50:27
13 with some of the CAL FIRE and CPUC reports.  09:50:29
14   Q.   Are there any specific documents  09:50:35
15 that you as the Rule 30(b)(6) designee  09:50:46
16 believe are of critical importance to FEMA's  09:50:49
17 claims against PG&E?                09:50:52
18        MR. TYE:  Object to the form.  09:50:55
19   A.   Could you just restate the    09:51:00
20 question?                           09:51:01
21   Q.   Sure.                       09:51:01
22        Thank you for asking.        09:51:02
23        Are there any specific documents  09:51:03
24 that you as the Rule 30(b)(6) designee  09:51:05
25 believe are of critical importance to FEMA's  09:51:08
                                      Page 25

Case: 19-30088   Doc# 5834-1   Filed: 08/19/20   Entered: 02/19/20 14:18:03   Page 8
of 101

1 claims against PG&E? 09:51:11
2 MR. TYE: Same objection. 09:51:13
3 A. All of the documents that I 09:51:18
4 referenced are of critical importance to 09:51:19
5 FEMA, as well as the ones that are 09:51:21
6 referenced throughout our proofs of claim. 09:51:24
7 Q. Okay. 09:51:26
8 Did you speak with anyone other 09:51:30
9 than your attorney in preparation for this 09:51:31
10 deposition? 09:51:33
11 A. I also spoke with Ann Winterman, 09:51:38
12 who I referenced before, who works with me. 09:51:42
13 Q. She is an attorney; correct? 09:51:43
14 A. Yes. 09:51:43
15 Q. Were you seeking legal advice 09:51:51
16 from Ms. Winterman? 09:51:53
17 MR. TYE: I just want to caution 09:51:54
18 the witness here: Don't divulge any 09:51:55
19 privileged communications you have. 09:51:57
20 You can answer the question. 09:51:58
21 THE WITNESS: Okay. 09:52:00
22 A. She helped prepare the responses 09:52:03
23 to the discovery requests. So I was just 09:52:04
24 refamiliar- -- as I was refamiliarizing 09:52:09
25 myself. 09:52:12
Page 26

1 Q. Okay. Okay. 09:52:12
2 Generally speaking, what does 09:52:23
3 FEMA do? 09:52:24
4 MR. TYE: Object to the form. 09:52:26
5 A. FEMA's mission is to help 09:52:30
6 survivors before, during and after 09:52:32
7 disasters. We have many programs across a 09:52:34
8 range of response, recovery, mitigation, 09:52:38
9 preparedness activities. Probably what 09:52:44
10 we're best known for is the assistance we 09:52:49
11 provide in response to major disasters that 09:52:54
12 occur throughout the country. 09:52:58
13 Q. Okay. 09:52:59
14 Now, how would you describe 09:53:04
15 FEMA's functions to someone that doesn't 09:53:06
16 know anything about the agency? 09:53:07
17 A. I think the best one-sentence 09:53:08
18 answer would be that we help survivors and 09:53:26
19 communities respond and recover to 09:53:30
20 disasters. 09:53:33
21 Q. Okay. 09:53:33
22 Are you familiar with the phrase 09:53:34
23 "disaster assistance"? 09:53:37
24 A. I'm familiar with the context in 09:53:38
25 which we use the term "disaster assistance." 09:53:42
Page 27

1 Q. Okay. 09:53:44
2 How do you use that phrase? 09:53:45
3 A. When I use the word "disaster 09:53:46
4 assistance" or when the agency does, we 09:53:50
5 typically think of financial assistance and 09:53:52
6 direct assistance that's provided to state 09:53:57
7 and local governments, nonprofits, and 09:54:01
8 individuals impacted by disasters. 09:54:04
9 Q. Okay. 09:54:06
10 Are you familiar with the phrase 09:54:08
11 "public assistance"? 09:54:10
12 A. Yes. 09:54:10
13 Q. What does that phrase mean to 09:54:12
14 you? 09:54:14
15 A. Public assistance is a FEMA 09:54:14
16 program which provides financial and direct 09:54:19
17 assistance to state government, local 09:54:24
18 governments, and certain eligible private 09:54:26
19 nonprofit entities. 09:54:28
20 Q. Are you familiar with the phrase 09:54:36
21 "individual assistance"? 09:54:38
22 A. Yes. 09:54:38
23 Q. What does that phrase mean to 09:54:39
24 you? 09:54:40
25 A. Individual assistance 09:54:41
Page 28

1 encompasses a number of FEMA programs for 09:54:42
2 providing assistance to individuals after 09:54:45
3 disaster. Those include but not be 09:54:48
4 limited to financial assistance provided to 09:54:53
5 individuals, direct housing we might provide 09:54:57
6 to individuals, and then there are a number 09:55:00
7 of other what we refer to as community 09:55:08
8 service programs provided -- that help 09:55:10
9 support individuals as well, such as crisis 09:55:12
10 counseling, disaster case management, 09:55:14
11 disaster legal services. And there may be 09:55:16
12 some others as well I'm just not 09:55:21
13 recollecting at this moment. 09:55:24
14 Q. Are public assistance and 09:55:25
15 individual assistance both forms of disaster 09:55:27
16 assistance? 09:55:31
17 A. Yes. 09:55:31
18 Q. Okay. 09:55:32
19 What's the difference between 09:55:34
20 public assistance and individual assistance? 09:55:36
21 A. The primary difference is that 09:55:38
22 public assistance is provided to 09:55:42
23 governmental entities and/or eligible 09:55:48
24 private nonprofits, versus individual 09:55:51
25 assistance is primarily provided directly to 09:55:55
Page 29

Veritext Legal Solutions

1 individuals with the exception of those 09:56:00
2 community services programs are run --  09:56:02
3 they're programs that are run through 09:56:05
4 governmental entities typically but they 09:56:07
5 provide services to individuals. 09:56:09
6    Q.  Okay. 09:56:11
7       Are you familiar with the phrase 09:56:11
8 "federal assistance"? 09:56:13
9    A.  Again, in terms of the way that 09:56:20
10 it's used at FEMA. 09:56:22
11    Q.  Okay. 09:56:24
12       How is that term used at FEMA? 09:56:25
13    A.  So federal assistance, as we 09:56:27
14 would use it, would be any form of financial 09:56:28
15 or direct assistance provided to a 09:56:32
16 nonfederal entity. 09:56:36
17    Q.  Would that include individuals 09:56:39
18 and public entities? 09:56:41
19    A.  Yes. 09:56:41
20    Q.  Okay. 09:56:46
21       What events typically result in 09:56:47
22 FEMA providing disaster assistance? 09:56:49
23       MR. TYE:  Object to the form. 09:56:51
24    A.  So there are two types of 09:56:58
25 declarations under the Stafford Act that the 09:56:59
Page 30

1 president may authorize.  The first is a 09:57:03
2 major disaster declaration and the second is 09:57:05
3 an emergency declaration. 09:57:08
4    Q.  What's the difference between a 09:57:11
5 major disaster declaration and an emergency 09:57:13
6 declaration? 09:57:16
7    A.  So the definitions in the 09:57:17
8 Stafford Act are different.  A major 09:57:20
9 disaster declaration is any natural 09:57:22
10 catastrophe or, regardless of cause, fire, 09:57:25
11 flood or explosion.  So it has to be one of 09:57:29
12 those types of events to be eligible. 09:57:34
13       Versus an emergency declaration 09:57:36
14 is any -- I forget the exact terminology, 09:57:37
15 but it's basically any occasion or instance 09:57:42
16 where the federal government determines that 09:57:46
17 federal resources are necessary to 09:57:49
18 supplement state and local resources. 09:57:51
19       The other major difference is 09:57:53
20 the type of assistance that's available 09:57:55
21 under the different types of declarations. 09:57:59
22    Q.  Okay. 09:58:00
23       Well, what type of assistance is 09:58:02
24 available under a major declaration? 09:58:04
25    A.  So under a major disaster 09:58:06
Page 31

1 declaration the president may authorize 09:58:09
2 public assistance, individual assistance, 09:58:11
3 and then another program called the Hazard 09:58:14
4 Mitigation Grant Program. 09:58:19
5       Under an emergency declaration 09:58:20
6 the type of assistance that may be 09:58:24
7 authorized is limited to certain categories 09:58:27
8 of public assistance.  And then only one 09:58:30
9 program of individual assistance is 09:58:37
10 available, which is our housing program, and 09:58:38
11 the hazard mitigation program is not 09:58:43
12 available under an emergency declaration -- 09:58:45
13 is not available. 09:58:47
14    Q.  Could you give me some examples 09:58:47
15 of an emergency declaration? 09:58:52
16    A.  Yeah.  The most common situation 09:58:55
17 where an emergency declaration is used is 09:59:00
18 when there is a hurricane or a typhoon 09:59:02
19 that's approaching a state or territory but 09:59:08
20 hasn't actually impacted yet.  And so there 09:59:11
21 may be federal resources necessary to 09:59:16
22 support the state or local government in 09:59:18
23 preparing for the impacts of that event. 09:59:20
24 But until they're actually impacted they're 09:59:23
25 not eligible for a major disaster 09:59:25
Page 32

1 declaration.  So that's the most common 09:59:27
2 situation. 09:59:29
3    Q.  So is emergency assistance 09:59:29
4 generally provided just before a disaster 09:59:32
5 occurs whereas major assistance would be 09:59:37
6 provided after the disaster occurs?  Do I 09:59:42
7 have that right? 09:59:45
8    A.  In the context of a hurricane or 09:59:45
9 typhoon specifically. 09:59:48
10    Q.  Okay. 09:59:50
11    A.  Because part of an emergency 09:59:52
12 to lessen or avert the threat of a 09:59:53
13 catastrophe, and so that's where we have the 09:59:55
14 ability to do that kind of pre-event 09:59:57
15 scenario. 10:00:01
16    Q.  Okay. 10:00:01
17       Other than hurricanes and 10:00:03
18 typhoons are there any other examples of 10:00:05
19 emergency assistance? 10:00:07
20    A.  Yeah.  So -- there are, and I'm 10:00:08
21 trying to think of some good examples. 10:00:18
22       So one example that I am 10:00:35
23 directly aware of is with the Oroville Dam 10:00:37
24 that was potentially going to have some 10:00:45
25 failure issues a couple of years ago.  There 10:00:48
Page 33

9 (Pages 30 - 33)

Veritext Legal Solutions
800-336-5127

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 10
of 101

Page 34:

1 was an emergency declaration done for that 10:00:50
2 to provide some resources. There was no dam 10:00:52
3 failure yet, so, again, it was kind of a 10:00:55
4 pre-event type situation. 10:00:57
5 Q. Okay. 10:01:01
6 You've already said FEMA 10:01:05
7 provides disaster assistance when a 10:01:07
8 hurricane hits the United States; correct? 10:01:08
9 A. I'm sorry, could you repeat the 10:01:10
10 question? 10:01:11
11 Q. FEMA will provide disaster 10:01:13
12 assistance when a hurricane hits the United 10:01:15
13 States; is that correct? 10:01:17
14 MR. TYE: Object to the form. 10:01:18
15 A. FEMA may provide assistance if 10:01:21
16 there is a major disaster declaration 10:01:22
17 approved by the president. 10:01:25
18 Q. Okay. 10:01:26
19 Does it matter if it's a weak 10:01:30
20 hurricane or a strong hurricane? 10:01:32
21 MR. TYE: Object to the form. 10:01:33
22 A. I mean, there's a number of 10:01:36
23 criteria that are used to evaluate whether a 10:01:37
24 major disaster declaration is warranted, but 10:01:42
25 ultimately the discretion on whether to 10:01:45

Page 34

Page 35:

1 grant a declaration is with the president. 10:01:46
2 Q. Okay. 10:01:48
3 So there has to be a declaration 10:01:49
4 given by the president in order for FEMA to 10:01:52
5 provide assistance? 10:01:55
6 A. Correct. 10:01:55
7 Q. Okay. So if there is a disaster 10:02:03
8 declaration provided, would FEMA provide 10:02:05
9 assistance if there is a major flood? 10:02:08
10 A. A flood is a type of disaster 10:02:13
11 for which there could be a major disaster 10:02:15
12 declaration by the president. 10:02:18
13 Q. Okay. 10:02:18
14 What about a major wildfire? 10:02:20
15 MR. TYE: Object to the form. 10:02:26
16 A. If the president issues a major 10:02:29
17 disaster declaration for a wildfire then 10:02:31
18 FEMA would provide assistance. 10:02:33
19 Q. Okay. 10:02:34
20 What about environmental 10:02:35
21 disasters like the BP oil spill? 10:02:36
22 A. There was no declaration under 10:02:38
23 the Stafford Act for the BP oil spill 10:02:41
24 because that event fell under the primary 10:02:44
25 responsibility of the United States Coast 10:02:47

Page 35

Page 36:

1 Guard and the Environmental Protection 10:02:51
2 Agency under their authorities related to 10:02:53
3 oil spills. 10:02:56
4 Q. Was FEMA involved at all with 10:02:58
5 the BP oil spill? 10:03:00
6 A. We provided assistance to the 10:03:01
7 Coast Guard and the EPA through an 10:03:06
8 interagency agreement. 10:03:09
9 Q. But you weren't directly 10:03:11
10 involved because there was no presidential 10:03:13
11 disaster declaration; do I have that 10:03:15
12 correct? 10:03:15
13 A. FEMA did not provide assistance 10:03:19
14 under the Stafford Act because there was no 10:03:20
15 potential emergency or major disaster 10:03:23
16 declaration. 10:03:26
17 Q. So the two ingredients are, one, 10:03:26
18 a presidential declaration and, two, a 10:03:27
19 disaster that would trigger that 10:03:30
20 declaration; correct? 10:03:32
21 MR. TYE: Object to the form. 10:03:33
22 A. Well, I'm trying to understand 10:03:39
23 your question in terms of the two 10:03:40
24 ingredients for what? 10:03:42
25 Q. For when FEMA will provide 10:03:43

Page 36

Page 37:

1 assistance. The two prerequisites would be 10:03:47
2 a major disaster and the presidential 10:03:49
3 declaration? I'm just trying to make sure I 10:03:53
4 understand your testimony. 10:03:55
5 MR. TYE: Same objection. 10:03:56
6 A. Well, there would have to be an 10:03:57
7 event that triggers the major disaster or 10:03:58
8 emergency declaration by the president. 10:04:03
9 Q. Got it. Okay. 10:04:07
10 So you need the triggering event 10:04:08
11 plus the declaration? 10:04:10
12 MR. TYE: Object to the form. 10:04:15
13 A. Well, to clarify the process a 10:04:27
14 little bit more is that, between the event 10:04:29
15 occurring and the declaration, there has to 10:04:31
16 be a request from the governor of the 10:04:34
17 impacted state. 10:04:37
18 Q. Okay. 10:04:37
19 So there is potentially three 10:04:38
20 things, then, that would need to occur. 10:04:40
21 There would be the disaster occurring, the 10:04:42
22 request from the governor of the state, and 10:04:46
23 then the declaration by the president. Do I 10:04:49
24 have that right? 10:04:53
25 A. There are a lot more steps if 10:04:54

Page 37

10 (Pages 34 - 37)

Veritext Legal Solutions
800-227-5127

1 you would like to walk through all of them. 10:04:56
2    Q.   Sure.  Yeah.        10:04:57
3    A.   Okay.  So when the incident   10:04:59
4 occurs or the event occurs, the first   10:05:04
5 response is always with the local   10:05:05
6 government.  Emergency management occurs   10:05:08
7 first at the local level.    10:05:10
8       So the way this works typically   10:05:11
9 is the local governments respond first.   10:05:13
10 When they are overwhelmed they would request   10:05:17
11 assistance from the state government.  And   10:05:20
12 then at that point typically the state   10:05:21
13 government, the governor, will request the   10:05:23
14 state of emergency, activate the state of   10:05:25
15 emergency plan, and provide resources to   10:05:28
16 local governments.  Those are all   10:05:30
17 prerequisites prior to a governor being able   10:05:32
18 to request a declaration from the president.   10:05:35
19       If the state government   10:05:38
20 determines that it needs supplemental   10:05:40
21 resources from the federal government, then   10:05:42
22 it can request a major disaster or emergency   10:05:44
23 declaration from the president.   10:05:49
24       And then in most cases prior to   10:05:50
25 that request there will be preliminary   10:05:56

Page 38

1 damage assessments conducted between FEMA,   10:05:58
2 the state and the local government where   10:06:00
3 they'll assess the level of damage and   10:06:02
4 basically determine whether federal   10:06:05
5 assistance is warranted.   10:06:08
6       And then at that point a request   10:06:09
7 would be made.  And then the request is   10:06:11
8 processed internally within FEMA and -- to   10:06:13
9 make a recommendation to the president.   10:06:16
10       And then the president will make   10:06:18
11 a determination based on the request and the   10:06:20
12 recommendation from FEMA.   10:06:24
13       And then once the declaration is   10:06:28
14 made then FEMA is authorized to provide   10:06:30
15 assistance.    10:06:32
16    Q.   Thank you.  That's good.   10:06:32
17       MR. GOODMAN:  Go ahead and mark   10:06:35
18    Exhibit Number 2.    10:06:38
19       [Deposition Exhibit 2 marked for   10:07:03
20    identification.]    10:07:06
21 MR. GOODMAN:    10:07:06
22    Q.   Okay.  Can you please identify   10:07:09
23 this document?    10:07:12
24    A.   It looks like this is a report   10:07:12
25 from the United States Government   10:07:16

Page 39

1 Accountability Office dated October 2019   10:07:22
2 titled "Wildfire Disasters.  FEMA Could Take   10:07:26
3 Additional Actions to Address Unique   10:07:31
4 Response and Recovery Challenges."   10:07:33
5    Q.   Have you seen this document   10:07:37
6 before?    10:07:38
7    A.   Let me take a look at it real   10:07:43
8 quick --    10:07:45
9    Q.   Yeah, please do so.   10:07:46
10    A.   -- just to make sure.   10:07:48
11       [Pause.]    10:07:48
12    A.   Okay.  I have not seen this   10:09:01
13 final report.  I may have seen prior   10:09:02
14 versions of this report during the GAO   10:09:05
15 audit.    10:09:09
16    Q.   Did you have any involvement in   10:09:09
17 the preparation of this report?   10:09:11
18       MR. TYE:  I'm going to object to   10:09:15
19    this question as going beyond the   10:09:16
20    scope of the 30(b)(6) notice.   10:09:18
21       The witness can answer to his   10:09:19
22    personal knowledge for this issue, but   10:09:21
23    the testimony is not in his 30(b)   10:09:22
24    capacity on behalf of FEMA.   10:09:25
25    A.   Would you repeat the question   10:09:28

Page 40

1 again?    10:09:29
2    Q.   Did you have any involvement in   10:09:30
3 the preparation of this report?   10:09:33
4       MR. TYE:  Same objection.   10:09:34
5    A.   I would not have been involved   10:09:37
6 in the preparation of the report.  But   10:09:38
7 typically when the GAO conducts a --   10:09:42
8 prepares a report or conducts an audit they   10:09:47
9 typically will talk to agency officials, and   10:09:50
10 sometimes they will provide a draft report   10:09:55
11 in which the agency provides comments about   10:09:59
12 what's in the report, which is typically   10:10:01
13 included but -- the agency's response is   10:10:04
14 typically included.    10:10:07
15    Q.   So FEMA would have provided   10:10:08
16 input in the process of this report being   10:10:10
17 prepared?    10:10:13
18       MR. TYE:  Same objection.  And I   10:10:14
19    would ask counsel just for -- to move   10:10:16
20    this along, to have a continuing   10:10:19
21    objection that all these questions are   10:10:20
22    beyond the scope of the 30(b)(6)   10:10:22
23    notice.    10:10:24
24       Again, the witness can answer in   10:10:24
25    his personal knowledge for this issue,   10:10:25

Page 41

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 12
of 101

Page 42:

1    but his testimony is not in his          10:10:27
2    30(b)(6) capacity on behalf of FEMA.     10:10:29
3    A.   So, again, the typical process      10:10:33
4 for these types of reports is that the GAO  10:10:35
5 will have meetings with and request         10:10:41
6 documents from the agency for which they are 10:10:43
7 preparing the report, and then typically the 10:10:46
8 agency is given an opportunity to review the 10:10:48
9 report and comment on it prior to its final  10:10:50
10 publication.                              10:10:53
11    Q.   Okay.                            10:10:55
12         Could you please go to page        10:10:55
13 number 1 of the report.  At the bottom      10:10:57
14 you'll see footnote number 1.  The other    10:11:03
15 thing, at the bottom it will say "GAO-20-5  10:11:10
16 Wildfire Disasters."                        10:11:14
17    A.   Uh-huh.                          10:11:14
18    Q.   We're on the same page?            10:11:16
19         Okay.                           10:11:17
20         Do you see footnote 1?             10:11:18
21    A.   Yes.                            10:11:19
22         MR. TYE:  And, counsel, just so     10:11:19
23 it's clear, do -- will you allow a           10:11:20
24 continuing objection as to all these        10:11:23
25 questions as beyond the scope of the        10:11:25
                                          Page 42

Page 43:

1 30(b)(6) notice?                             10:11:26
2         MR. GOODMAN:  No because I don't    10:11:27
3 think they are beyond the scope.             10:11:29
4         MR. TYE:  Okay.  I'll go ahead       10:11:29
5 and say state it every time then.            10:11:31
6         MR. GOODMAN:  Okay.               10:11:33
7    Q.   Okay.  Do you see footnote          10:11:34
8 number 1?                                  10:11:35
9    A.   Yes, I do.                         10:11:39
10    Q.   Okay.                            10:11:39
11         I'll go ahead and read it for        10:11:40
12 you.                                      10:11:41
13         It says:                          10:11:43
14         "A major disaster is any natural    10:11:43
15 catastrophe (including any hurricane,        10:11:46
16 tornado, storm, high water, wind-driven      10:11:49
17 water, tidal wave, tsunami, earthquake,      10:11:53
18 volcanic eruption, landslide, mudslide,      10:11:58
19 snowstorm or drought) or, regardless of the  10:11:59
20 cause, any fire, flood or explosion in any    10:12:03
21 part of the United States which the          10:12:06
22 president determines causes damage of        10:12:09
23 sufficient severity and magnitude to warrant  10:12:11
24 major disaster assistance to supplement the   10:12:14
25 efforts and available resources of states,    10:12:16
                                          Page 43

Page 44:

1 local governments, and disaster relief        10:12:19
2 organizations in alleviating damage, loss,    10:12:22
3 hardship or suffering."                      10:12:25
4         It says:                          10:12:27
5         "See 42 USC Section 5122(2)."        10:12:28
6         Are you familiar with                10:12:36
7 42 USC section 5122(2)?                     10:12:39
8    A.   Yes, I have read that section         10:12:46
9 many times.                                10:12:47
10    Q.   Okay.                            10:12:47
11         So you are familiar with the         10:12:48
12 definition of "major disasters" set forth in   10:12:49
13 that statute?                              10:12:51
14    A.   Yes.                            10:12:51
15    Q.   Okay.  So following this            10:12:58
16 footnote, my question is this.               10:12:59
17         Are other than hurricanes,           10:13:06
18 tornados, storms, high water, wind-driven     10:13:08
19 water, tidal waves, tsunamis, earthquakes,    10:13:11
20 volcanic eruptions, landslides, mudslides,    10:13:16
21 snowstorms or droughts, fires, floods or      10:13:20
22 explosions, are there any other conditions    10:13:24
23 for which FEMA provides assistance?          10:13:27
24    A.   We would potentially provide        10:13:45
25 assistance for other types of events under    10:13:46
                                          Page 44

Page 45:

1 an emergency declaration but not under a      10:13:48
2 major disaster declaration.                   10:13:51
3    Q.   Okay.                            10:13:53
4         So let me --                       10:13:58
5    A.   Could I clarify that response?       10:13:59
6    Q.   Yes, please.                       10:14:01
7    A.   So ultimately FEMA will provide     10:14:02
8 assistance whenever the president declares a   10:14:05
9 major disaster, and ultimately the           10:14:07
10 discretion is with the president on what to    10:14:09
11 declare as a major disaster.                 10:14:11
12    Q.   Let me try reframing it, then.       10:14:24
13         Other than hurricanes, tornados,     10:14:26
14 storms, high water, wind-driven water, tidal  10:14:28
15 waves, tsunamis, earthquakes, volcanic        10:14:32
16 eruptions, landslides, mudslides, snowstorms  10:14:35
17 or droughts, fires, floods or explosions,     10:14:39
18 are there any other conditions for which      10:14:41
19 FEMA will provide assistance in relation to    10:14:43
20 a major disaster?                          10:14:45
21         MR. HEYN:  This is Matt Heyn on     10:14:50
22 the phone.                                10:14:52
23         Objection to form.                 10:14:53
24    A.   So, again, FEMA would provide       10:14:58
25 assistance any time the president declares a   10:15:00
                                          Page 45

Veritext Legal Solutions
800-789-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 13
of 101

Page 46:

1 major disaster declaration. 10:15:02
2 Q. All right. 10:15:11
3 The question, though, is are 10:15:12
4 there any conditions beyond the ones set 10:15:13
5 forth in the statute for which FEMA would 10:15:15
6 provide disaster assistance? 10:15:19
7 MR. TYE: Object to the form and 10:15:22
8 object to that question as going 10:15:23
9 beyond the scope of the 30(b)(6) 10:15:25
10 notice. 10:15:27
11 The witness can answer as to 10:15:27
12 personal knowledge for this issue, but 10:15:29
13 the testimony is not in his 30(b) 10:15:31
14 capacity on behalf of FEMA. 10:15:33
15 MR. HEYN: This is Matt Heyn on 10:15:34
16 the phone. Just object to the form. 10:15:37
17 A. If the president declared a 10:15:41
18 major disaster declaration, FEMA would 10:15:42
19 provide assistance. I am not aware of any 10:15:45
20 major disaster declarations that have been 10:15:50
21 made for events other than those identified 10:15:52
22 in the definition. 10:15:56
23 Q. And the definition would be the 10:15:59
24 one set forth in 42 USC section 5122(2)? 10:16:01
25 MR. TYE: Object to the form. 10:16:07
Page 46

Page 47:

1 And same objection as to scope. 10:16:11
2 A. Based on my personal knowledge I 10:16:14
3 am not aware of any major disaster 10:16:15
4 declarations that have been made other than 10:16:17
5 for those identified in 42 USC 5122 10:16:19
6 paragraph -- or, sorry, subparagraph 2. 10:16:25
7 Q. Okay. 10:16:25
8 Has a disaster declaration ever 10:16:32
9 been declared for severe traffic congestion? 10:16:33
10 MR. TYE: Object to the form and 10:16:37
11 object to the question as beyond the 10:16:37
12 scope of the 30(b)(6) notice. 10:16:39
13 The witness can answer as to his 10:16:41
14 personal knowledge for this issue, but 10:16:42
15 the testimony is not in his 30(b)(6) 10:16:44
16 capacity on behalf of FEMA. 10:16:46
17 A. None that I am aware of. 10:16:48
18 Q. Okay. 10:16:49
19 Is severe traffic congestion a 10:16:52
20 condition for which FEMA provides 10:16:56
21 assistance? 10:16:58
22 MR. TYE: Same objections. 10:16:59
23 A. That would be a fact-specific 10:17:02
24 question, and depending on the facts could 10:17:03
25 potentially be eligible for an emergency 10:17:07
Page 47

Page 48:

1 declaration. But, again, it would be very 10:17:10
2 fact dependent. 10:17:12
3 Q. Okay. 10:17:12
4 Has FEMA ever gone out and 10:18:12
5 repaired powerlines that it suspects could 10:18:12
6 be faulty in order to prevent a wildfire 10:18:12
7 from happening? 10:18:12
8 MR. TYE: Object to the form and 10:18:12
9 object to this question as beyond the 10:18:12
10 scope of the 30(b)(6) notice. 10:18:12
11 The witness can answer as to 10:18:12
12 personal knowledge for this issue but 10:18:12
13 the testimony is not in his 30(b)(6) 10:18:12
14 capacity on behalf of FEMA. 10:18:13
15 MR. GOODMAN: Again, we disagree 10:18:13
16 on that. 10:18:13
17 Go ahead. 10:18:13
18 A. And, I'm sorry, could you just 10:18:13
19 repeat the question one are one more time? 10:18:13
20 Q. Sure. 10:18:13
21 Has FEMA ever gone out and 10:18:13
22 repaired powerlines that it suspects could 10:18:13
23 be faulty in order to prevent a wildfire 10:18:13
24 from happening? 10:18:13
25 MR. TYE: Same objections. 10:18:13
Page 48

Page 49:

1 A. Such activity would be outside 10:18:13
2 the scope of FEMA's authority. 10:18:13
3 Q. Has FEMA ever viewed powerlines 10:18:13
4 that are in need of repair as a major 10:18:13
5 disaster in the absence of a wildfire? 10:18:13
6 MR. TYE: Object to the form. 10:18:13
7 A. It would not meet the definition 10:18:20
8 of a major disaster under the Stafford Act. 10:18:21
9 Q. So the answer would be no, FEMA 10:18:26
10 has never viewed powerlines that are in need 10:18:28
11 of repair as a major disaster in the absence 10:18:30
12 of a wildfire? 10:18:32
13 MR. TYE: Object to the form. 10:18:34
14 A. I think the answer would be that 10:18:37
15 FEMA would not consider repairing powerlines 10:18:38
16 prior to disaster as an eligible event under 10:18:41
17 the definition of a major disaster 10:18:44
18 declaration for the Stafford Act. 10:18:46
19 Q. Okay. 10:18:48
20 Has a major disaster declaration 10:18:49
21 ever been issued to fix faulty powerlines? 10:18:52
22 MR. TYE: Object to the form. 10:18:56
23 A. I would need clarification on 10:19:05
24 what you mean by "faulty powerlines." 10:19:07
25 Q. Powerlines that are potentially 10:19:18
Page 49

13 (Pages 46 - 49)

Veritext Legal Solutions
800-899-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 14
of 101

Page 50:

1 in need of repair or updating. 10:19:19
2 MR. TYE: Same objection. 10:19:22
3 A. If a publicly owned or nonprofit 10:19:28
4 utility had powerlines that were damaged by 10:19:34
5 an event that was declared a major disaster 10:19:37
6 by the president, FEMA would provide 10:19:41
7 assistance to repair those powerlines. 10:19:43
8 Q. Okay. 10:19:45
9 So in the absence of a disaster 10:19:46
10 such as a wildfire, has FEMA ever -- strike 10:19:52
11 that. 10:20:01
12 As a stand-alone event has FEMA 10:20:10
13 ever deemed faulty lines -- try again? 10:20:12
14 As a stand-alone event has FEMA 10:20:15
15 ever deemed faulty powerlines to be a major 10:20:18
16 disaster? 10:20:21
17 MR. TYE: Object to the form. 10:20:22
18 A. We would not consider that to be 10:20:30
19 within the definition of a major disaster. 10:20:33
20 Q. Okay. 10:20:35
21 Has the state of transmission 10:20:43
22 lines ever been declared a major disaster 10:20:45
23 that is beyond a state's capability to 10:20:48
24 handle? 10:20:51
25 MR. TYE: Object to the form and 10:20:52
Page 50

Page 51:

1 object to that question as beyond the 10:20:53
2 scope of the 30(b)(6) notice. The 10:20:54
3 witness can answer as to his personal 10:20:56
4 knowledge for this issue, but the 10:20:57
5 testimony is not in his 30(b)(6) 10:20:58
6 capacity on behalf of FEMA. 10:21:01
7 A. Again, FEMA would not consider 10:21:03
8 transmission -- the state of transmission 10:21:06
9 lines to fall within the definition of a 10:21:08
10 major disaster under the Stafford Act. 10:21:10
11 Q. Okay. 10:21:10
12 Has a major disaster declaration 10:21:13
13 ever been issued to fix faulty power 10:21:15
14 equipment? 10:21:18
15 MR. TYE: Object to the form. 10:21:19
16 A. As stated previously, if power 10:21:23
17 equipment were damaged during a declared 10:21:25
18 major disaster, FEMA could provide 10:21:28
19 assistance to repair it if it was an 10:21:29
20 eligible applicant such as a publicly owned 10:21:31
21 utility or an eligible private nonprofit. 10:21:35
22 Q. Does FEMA go around repairing 10:21:39
23 powerlines to prevent wildfires from 10:21:42
24 occurring? 10:21:44
25 MR. TYE: Object to the form. 10:21:51
Page 51

Page 52:

1 A. FEMA provides mitigation 10:21:56
2 assistance to eligible applicants for 10:21:58
3 wildfire mitigation activities, but I am not 10:22:02
4 aware of any projects related to repairing 10:22:05
5 powerlines. 10:22:08
6 Q. Okay. 10:22:08
7 Can you identify any situation 10:22:11
8 where federal assistance was provided by 10:22:13
9 FEMA for the sole purpose of repairing and 10:22:16
10 updating transmission lines? 10:22:19
11 MR. TYE: Object to the form and 10:22:22
12 object to the question as beyond the 10:22:23
13 scope of the 30(b)(6) notice. 10:22:24
14 The witness can answer in his 10:22:25
15 personal knowledge for this issue, but 10:22:27
16 the testimony is not in his 30(b) 10:22:28
17 capacity on behalf of FEMA. 10:22:30
18 MR. GOODMAN: Again we disagree. 10:22:32
19 A. FEMA regularly provides 10:22:35
20 assistance to publicly owned utilities and 10:22:36
21 private nonprofit utilities to repair 10:22:40
22 powerlines damaged by a major disaster. 10:22:46
23 That may also include hazard mitigation 10:22:49
24 measures to strengthen the power grid for 10:22:52
25 future events as well. 10:22:54
Page 52

Page 53:

1 Q. Okay. 10:22:56
2 But that's not the question. 10:22:57
3 The question is can you identify any 10:22:58
4 situation where federal assistance was 10:23:01
5 provided by FEMA for the sole purpose of 10:23:03
6 repairing and updating transmission lines? 10:23:07
7 MR. TYE: Object to the form and 10:23:11
8 object to that question as beyond the 10:23:12
9 scope of the 30(b)(6) notice. 10:23:13
10 The witness can answer in his 10:22:25
11 personal knowledge for this issue, but 10:22:27
12 the testimony is not in his 30(b) 10:22:28
13 capacity on behalf of FEMA. 10:22:30
14 A. I believe my answer was 10:23:22
15 responsive because public assistance, which 10:23:24
16 is a type of federal assistance, has been 10:23:26
17 provided to publicly owned and private 10:23:29
18 nonprofit utilities for the purpose of 10:23:31
19 repairing and strengthening their powerlines 10:23:34
20 in certain disasters. 10:23:41
21 Q. But this would be after the 10:23:44
22 disaster occurred; correct? 10:23:45
23 MR. TYE: Object to the form. 10:23:47
24 A. We actually have our hazard 10:23:52
25 mitigation programs, which again are 10:23:55
Page 53

Veritext Legal Solutions
800-336-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 15 of 101

1 available to public entities and private 10:23:57
2 nonprofits. And so there have been some -- 10:23:59
3 some activities under our mitigation 10:24:06
4 programs to support power infrastructure. 10:24:09
5    Q. Okay. 10:24:14
6       Can you give me some examples? 10:24:17
7       MR. TYE: Object to the form and 10:24:18
8    object to that question as beyond the 10:24:20
9    scope of the 30(b)(6) notice. 10:24:21
10      The witness can answer in his 10:22:25
11   personal knowledge for this issue, but 10:22:27
12   the testimony is not in his 30(b) 10:22:28
13   capacity on behalf of FEMA. 10:22:30
14   A. The example that I am personally 10:24:29
15   aware of is related to some typhoons out in 10:24:30
16   the commonwealth of the Northern Mariana 10:24:38
17   Islands, which is part of Region IX's area 10:24:41
18   of responsibility. After Typhoon Soudelor 10:24:45
19   we provided extensive assistance to repair 10:24:49
20   portions of the power grid. And part of the 10:24:52
21   hazard mitigation program, which doesn't 10:24:54
22   have to be for infrastructure actually 10:24:58
23   damaged by the event. It can also be to 10:25:00
24   upgrade other infrastructure that wasn't 10:25:03
25   damaged, some assistance has been provided. 10:25:07

Page 54

1       And also for -- we're currently 10:25:09
2    in the process of some more projects after 10:25:14
3    Super Typhoon Yutu, which also impacted the 10:25:17
4    commonwealth of the Northern Mariana 10:25:20
5    Islands. I believe that was in 2018. 10:25:23
6    Q. Okay. 10:25:25
7       Can you identify any situation 10:25:27
8    where federal assistance was provided by 10:25:29
9    FEMA in the State of California for the sole 10:25:32
10   purpose of repairing and updating 10:25:36
11   transmission lines? 10:25:38
12      MR. TYE: Object to the form and 10:25:41
13   object to that question as beyond the 10:25:42
14   scope of the 30(b)(6) notice. 10:25:43
15      The witness can answer in his 10:25:44
16   personal knowledge for this issue, but 10:25:46
17   his testimony is not in his 30(b)(6) 10:25:48
18   capacity on behalf of FEMA. 10:25:50
19   A. I am not aware of any projects 10:25:52
20   within California specific to replacing or 10:25:54
21   upgrading powerlines without a major 10:26:02
22   disaster declaration or emergency 10:26:04
23   declaration. 10:26:06
24   Q. Okay. 10:26:06
25      Are faulty powerlines in the 10:26:08

Page 55

1    State of California a condition for which 10:26:11
2    federal assistance has ever been provided by 10:26:13
3    FEMA? 10:26:15
4       MR. TYE: Object to the form of 10:26:19
5    that question. 10:26:20
6    A. Can you just restate the 10:26:21
7    question one more time? 10:26:22
8    Q. Yeah. 10:26:24
9       Are faulty powerlines in the 10:26:24
10   State of California a condition for which 10:26:26
11   federal assistance has ever been provided by 10:26:28
12   FEMA? 10:26:30
13      MR. TYE: Object to the form. 10:26:32
14   A. We would have provided federal 10:26:33
15   assistance to public entities or private 10:27:03
16   nonprofits to repair infrastructure that was 10:27:05
17   damaged. That's the only time we would have 10:27:08
18   provided federal assistance. 10:27:12
19   Q. Okay. 10:27:13
20      But that would have occurred 10:27:16
21   after a wildfire took place; correct? 10:27:17
22   A. Or any other event that received 10:27:20
23   a major disaster declaration. 10:27:24
24   Q. Okay. 10:27:26
25      So in the absence of a wildfire 10:27:30

Page 56

1    or any of the disasters set forth in the 10:27:34
2    statute, have powerlines ever been deemed a 10:27:37
3    condition for which federal assistance is 10:27:44
4    provided by FEMA? 10:27:46
5       MR. TYE: United States objects 10:27:47
6    to that question as beyond the scope 10:27:48
7    of the 30(b)(6) notice. 10:27:49
8       The witness can answer in his 10:27:50
9    personal knowledge for this issue, but 10:27:53
10   the testimony is not in his 30(b)(6) 10:27:54
11   capacity on behalf of FEMA. 10:27:58
12      MR. GOODMAN: Again, we 10:27:59
13   disagree. 10:28:00
14   A. We would not have provided 10:28:01
15   federal assistance for faulty powerlines 10:28:24
16   absent a major disaster declaration. 10:28:27
17   Q. Okay. Thank you. 10:28:29
18      MR. GOODMAN: Let's go ahead and 10:28:32
19   mark Exhibit 3. 10:28:33
20      [Deposition Exhibit 3 marked for 10:29:09
21   identification.] 10:29:11
22   MR. GOODMAN: 10:29:17
23   Q. Can you identify this document? 10:29:17
24      MR. TYE: Go ahead and take your 10:29:20
25   time to look through it if you need 10:29:21

Page 57

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 16
of 101

**Page 58**

```
 1    to.                        10:29:23
 2        [Pause.]               10:29:49
 3    A.  It appears to be a copy of the    10:29:49
 4    Proof of Claim filed by FEMA for the 2017    10:29:51
 5    Northern California Wildfires, absent the    10:29:57
 6    supporting documentation that was provided.    10:30:01
 7    Q.  Is this a document you reviewed    10:30:12
 8    in preparation for today's deposition?    10:30:13
 9    A.  Yes.                    10:30:17
10    Q.  Okay.                   10:30:17
11        And you're aware that FEMA has    10:30:19
12    filed a proof of claim in PG&E's bankruptcy    10:30:20
13    for damages relating to certain of the 2017    10:30:23
14    North Bay Fires?               10:30:27
15    A.  Yes.                    10:30:27
16    Q.  And they refer to this as the    10:30:33
17    North Bay Fires claim or Exhibit 3.  Are you    10:30:35
18    comfortable with knows terms?       10:30:39
19    A.  I'm comfortable with those terms    10:30:41
20    as long as we understand that, to me, "North    10:30:42
21    Bay" refers to Sonoma, Mendocino, Lake and    10:30:47
22    Napa Counties.  There were three other    10:30:52
23    counties which received disaster assistance    10:30:54
24    for this disaster declaration that were also    10:30:55
25    included in this proof of claim.    10:30:59
                                    Page 58
```

**Page 59**

```
 1    Q.  Okay.                   10:30:59
 2        When I used the phrase "North    10:31:01
 3    Bay Fires claim" I'm using it to refer to    10:31:04
 4    this document --               10:31:06
 5    A.  Okay.  That's fine.         10:31:06
 6    Q.  -- the FEMA Fire -- okay.  Okay.    10:31:07
 7        Before we get to Exhibit 3 I    10:31:12
 8    have some questions about the process for    10:31:14
 9    filing a claim like this.           10:31:15
10        Does FEMA have a process to    10:31:18
11    determine whether to assert a claim to    10:31:19
12    recover disaster payments?          10:31:24
13        MR. TYE:  Object to the form and    10:31:25
14    object to that question as beyond the    10:31:26
15    scope of the 30(b)(6) notice.       10:31:27
16        The witness can answer in his    10:31:28
17    personal knowledge for this issue, but    10:31:29
18    the testimony is not in his 30(b)    10:31:31
19    capacity on behalf of FEMA.         10:31:33
20    A.  We do not have an established    10:31:36
21    process.  We would evaluate each disaster on    10:31:40
22    a case-by-case basis.            10:31:42
23    Q.  What do you mean by case-by-case    10:31:44
24    basis?                      10:31:46
25        MR. TYE:  Same objection.       10:31:47
                                    Page 59
```

**Page 60**

```
 1    A.  So the vast majority of      10:31:53
 2    disasters that are declared by the    10:31:58
 3    president, if not almost all of them, are    10:32:00
 4    naturally occurring events for which there    10:32:02
 5    is no potentially responsible party.  So    10:32:04
 6    it's a bit outside the normal process for    10:32:06
 7    us.  But if we were to become aware of a    10:32:13
 8    potentially responsible party, then we would    10:32:13
 9    have to evaluate whether we should take    10:32:15
10    action to recover costs or not.     10:32:18
11    Q.  Do you know who at FEMA would    10:32:23
12    make the decision to assert a claim like    10:32:25
13    this?                       10:32:28
14        MR. TYE:  Object to the form.    10:32:29
15    A.  It would be a joint decision by    10:32:32
16    numerous agency officials.          10:32:37
17    Q.  Okay.                   10:32:41
18        So it's a committee at FEMA that    10:32:41
19    would make the decision?           10:32:44
20        MR. TYE:  Object to the form.    10:32:45
21    A.  I wouldn't call it a committee.    10:32:53
22    It would just be a group of senior agency    10:32:54
23    officials.                  10:32:58
24    Q.  Okay.                   10:33:01
25        In this case who would those    10:33:04
                                    Page 60
```

**Page 61**

```
 1    individuals be?                 10:33:06
 2        MR. TYE:  Object to the form.    10:33:07
 3    A.  The primary official that would    10:33:11
 4    ultimately make the decision would be our    10:33:12
 5    chief counsel.                 10:33:14
 6    Q.  And who is that?            10:33:16
 7    A.  His name is Adrian Sevier,    10:33:17
 8    S-E-V-I-E-R.                   10:33:20
 9    Q.  Okay.                   10:33:21
10        And who else would be a part of    10:33:23
11    that process?                 10:33:25
12    A.  He would consult with, at a    10:33:25
13    minimum, officials within the department of    10:33:31
14    Homeland Security, Office of General Counsel    10:33:33
15    and -- since FEMA falls within DHS, and    10:33:37
16    within FEMA with the -- and I apologize but    10:33:43
17    I -- I'm blanking on the official title, but    10:33:50
18    it's either assistant administrator or    10:33:53
19    associate administrator of our Office of    10:33:57
20    Response and Recovery which is the office    10:34:00
21    that administers our major disaster    10:34:01
22    declaration-related assistance programs.    10:34:02
23        Those would have been the    10:34:09
24    primary officials with an interest in the    10:34:10
25    decision.                   10:34:13
                                    Page 61
```

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 17
of 101

Q. And do you know who it was at 10:34:16
the Department of Homeland Security that was 10:34:17
involved with in claim? 10:34:20
A. I do not know who Mr. Sevier 10:34:21
consults with at that level. 10:34:24
Q. Okay. 10:34:25
Does FEMA have any guidelines 10:34:27
that it used to assess claims to recover 10:34:31
disaster-related payments? 10:34:32
MR. TYE: Object to the form and 10:34:33
object to that question as beyond the 10:34:34
scope of the 30(b)(6) notice. 10:34:36
The witness can answer as to his 10:34:38
personal knowledge for this issue, but 10:34:39
his testimony is not in his 30(b)(6) 10:34:39
capacity on behalf of FEMA. 10:34:42
A. No, we do not have a specific 10:34:45
procedure. 10:34:47
Q. Okay. 10:34:47
Is there a published policy that 10:34:49
explains when FEMA will assert a claim to 10:34:51
recover disaster-related payments? 10:34:55
MR. TYE: Again, United States 10:34:56
objects to this question as beyond the 10:34:57
scope of the 30(b)(6) notice. 10:34:59

The witness can answer as to his 10:35:00
personal knowledge for this issue, but 10:35:02
the testimony is not within his 10:35:04
30(b)(6) capacity on behalf of FEMA. 10:35:05
A. No, there is no public policy. 10:35:08
Q. Okay. 10:35:11
In this case what process did 10:35:11
FEMA follow to determine whether to assert a 10:35:13
claim against PG&E? 10:35:16
MR. TYE: Object to the form. 10:35:18
I also caution the witness not 10:35:19
to get into anything that is covered 10:35:21
by deliberate process privilege. 10:35:23
And also object to this question 10:35:26
as beyond the scope of his 30(b)(6) 10:35:27
notice. 10:35:28
The witness can answer as to his 10:35:29
personal knowledge for this issue but 10:35:31
is not in his 30(b)(6) capacity on 10:35:32
behalf of FEMA. 10:35:35
A. Can you just repeat the question 10:35:40
one more time? 10:35:42
Q. Sure. 10:35:42
In this case what process did 10:35:43
FEMA follow to determine whether to assert a 10:35:44

claim against PG&E? 10:35:47
MR. TYE: Same objections. 10:35:48
A. Once it became clear to us that 10:35:56
there was potential liability from PG&E, 10:35:59
there were discussions within the office of 10:36:04
chief counsel about whether to assert a 10:36:07
claim and -- which included discussions with 10:36:09
the other officials I mentioned. And 10:36:16
ultimately a decision was made and the claim 10:36:21
was asserted. 10:36:22
Q. Would that process involve some 10:36:26
type of investigation or inquiry? 10:36:28
MR. TYE: Object to that 10:36:30
question to the extent it asks for 10:36:31
materials covered by the deliberative 10:36:32
process privilege. Also object to 10:36:36
that question as beyond the scope of 10:36:38
the 30(b)(6) notice. 10:36:40
The witness can answer in his 10:36:41
personal knowledge for this issue, but 10:36:42
the testimony is not in his 30(b)(6) 10:36:43
capacity on behalf of FEMA. 10:36:46
A. Sorry, I'm just not clear by -- 10:36:55
can -- should respond to deliberative 10:36:58
questions -- 10:37:00

Q. Let me rephrase. 10:37:02
So FEMA doesn't go around filing 10:37:04
claims in bankruptcy proceedings without 10:37:06
first performing some inquiry; correct? 10:37:08
MR. TYE: Object to the form. 10:37:10
Also object to that question as beyond 10:37:11
the scope of the 30(b)(6) notice. 10:37:12
The witness can answer in his 10:37:14
personal knowledge for this issue but 10:37:15
the testimony is not in his 10:37:16
30(b)(6) capacity on behalf of FEMA. 10:37:17
A. We conducted an internal 10:37:22
analysis of our -- of the facts of the case 10:37:23
to determine whether to assert a claim. 10:37:28
But, again, I think the details of any 10:37:32
internal analysis would be deliberative. 10:37:34
Q. Okay. 10:37:35
Do you know what documents or 10:37:38
information would have been considered as a 10:37:40
part of that inquiry? 10:37:42
MR. TYE: Again, object to that 10:37:46
question to the extent it asks for 10:37:46
materials covered by the deliberative 10:37:49
process privilege. We also object to 10:37:51
this question as beyond the scope of 10:37:52

Veritext Legal Solutions
800-336-5127

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 18
of 101

Page 66

1 his 30(b)(6) notice. 10:37:53
2 The witness can answer in his 10:37:54
3 personal knowledge for the issue, but 10:37:56
4 the testimony is not in his 30(b)(6) 10:37:58
5 capacity on behalf of FEMA. 10:38:01
6 A. I believe that all of the 10:38:10
7 documents we would have considered are 10:38:11
8 referenced within our proof of claim 10:38:14
9 documents and our responses to the 10:38:16
10 interrogatories. 10:38:18
11 Q. Good. Thank you. 10:38:19
12 Okay. Back to Exhibit 3, the 10:38:21
13 North Bay Fires claim. What is your 10:38:23
14 understanding as to FEMA's position 10:38:26
15 regarding its claim against PG&E related to 10:38:29
16 the North Bay Fires? 10:38:32
17 MR. TYE: Object to the form. 10:38:35
18 A. And could you just repeat one 10:38:37
19 more time, please? 10:38:40
20 Q. Yeah. 10:38:40
21 Again, what is your general 10:38:42
22 understanding as to FEMA's position 10:38:43
23 regarding a claim against PG&E as to the 10:38:45
24 North Bay Fires? 10:38:46
25 MR. TYE: Object to the form. 10:38:48

Page 67

1 A. Well FEMA has asserted that the 10:38:52
2 debtor is liable to FEMA for the costs that 10:39:00
3 were -- reasonable costs that were incurred 10:39:04
4 by the agency in providing disaster 10:39:06
5 assistance for the noted fires related to 10:39:08
6 this major disaster declaration. 10:39:12
7 Q. Okay. 10:39:14
8 And was the filing of the North 10:39:15
9 Bay Fires claim authorized by someone at 10:39:19
10 FEMA? 10:39:21
11 A. Yes. 10:39:21
12 Q. Do you know who authorized it? 10:39:22
13 A. Well, as I mentioned before, 10:39:27
14 Mr. Sevier would have been the official 10:39:30
15 authorizing it. But as noted the official 10:39:33
16 that signed it was our regional 10:39:35
17 administrator, Robert Fenton. 10:39:37
18 Q. So did Robert Fenton authorize 10:39:42
19 the filing of the claim? 10:39:46
20 MR. TYE: Object to that 10:39:47
21 question. It covers materials subject 10:39:48
22 to deliberative process privilege. 10:39:52
23 Also object to the form of that 10:39:53
24 question. 10:39:55
25 A. Yeah, I guess I'm just 10:40:03

Page 68

1 struggling because I don't understand what 10:40:04
2 you mean by "authorize." 10:40:06
3 Q. You mentioned Robert Fenton's 10:40:07
4 name. I'm trying to understand what role he 10:40:09
5 would have played in the process. 10:40:11
6 A. Mr. Fenton is the regional 10:40:13
7 administrator for FEMA Region IX, and so he 10:40:17
8 is the agency official that is delegated 10:40:20
9 authority and responsibility for 10:40:25
10 implementing FEMA's assistance programs for 10:40:27
11 the major disaster declarations that occur 10:40:29
12 in FEMA Region IX. 10:40:33
13 And so this particular disaster 10:40:36
14 recollection would have fallen under his 10:40:38
15 responsibility. So the decision was made 10:40:40
16 that he was the appropriate official to sign 10:40:42
17 on behalf of the agency for the claim. 10:40:48
18 Q. Okay. 10:40:50
19 Did FEMA perform any inquiry or 10:40:52
20 investigation prior to asserting the North 10:40:55
21 Bay Fires claim? 10:40:58
22 MR. TYE: Again, caution the 10:40:59
23 witness not to discuss anything 10:41:01
24 protected by deliberative process 10:41:02
25 privilege, and object to the form of 10:41:05

Page 69

1 that question. 10:41:07
2 A. As I stated previously, with the 10:41:12
3 general question we performed an internal 10:41:15
4 analysis to determine whether to file such a 10:41:19
5 claim. 10:41:21
6 Q. Okay. 10:41:21
7 Did that analysis result in the 10:41:22
8 identification of any documents that FEMA 10:41:26
9 believes supports the North Bay Fire claim? 10:41:29
10 MR. TYE: Object to the form. 10:41:31
11 A. So, again, FEMA's proof of claim 10:41:36
12 is -- is based on the documents identified 10:41:40
13 in the proof of claim document itself, in 10:41:50
14 our interrogatory responses, including the 10:41:52
15 referenced CAL FIRE reports, CPUC reports. 10:41:56
16 We've also reviewed the findings 10:42:08
17 and reports related to the criminal 10:42:09
18 proceedings under Judge Alsup. And we would 10:42:12
19 also rely on any additional evidence that we 10:42:15
20 may develop in the course of this 10:42:17
21 litigation. 10:42:19
22 Q. Okay. 10:42:19
23 Sitting here today as the Rule 10:42:26
24 30(b)(6) designee for FEMA, can you identify 10:42:29
25 the facts that support FEMA's contention 10:42:31

18 (Pages 66 - 69)

Veritext Legal Solutions
800-336-5127

1 that PG&E is liable to FEMA for the amount 10:42:33
2 set forth in the North Bay Fires claim? 10:42:36
3    A.   Again, that evidence is all 10:42:39
4 presented in our proof of claim documents, 10:42:42
5 our responses to the interrogatories, which 10:42:44
6 includes the Cal -- publicly available 10:42:47
7 CAL FIRE and CPUC reports related to these 10:42:50
8 fires, and the criminal proceedings under 10:42:54
9 Judge Alsup, and we would also rely on any 10:42:59
10 additional evidence that is produced in the 10:43:02
11 course of litigation. 10:43:06
12    Q.   So there is material that's 10:43:14
13 outside the proof of claim form and the 10:43:16
14 responses to the interrogatories you're 10:43:19
15 relying on? 10:43:20
16       MR. TYE:  Objection to the form. 10:43:24
17    A.   There is material that has yet 10:43:29
18 to be developed in the course of litigation 10:43:32
19 that we may rely upon. 10:43:33
20    Q.   Okay. 10:43:35
21       But in terms of the information 10:43:35
22 that you relied upon when the claim was 10:43:36
23 filed is what I'm getting at.  I'm trying to 10:43:40
24 understand what documents FEMA was relying 10:43:43
25 on at the time the claim was filed.  Is all 10:43:45
Page 70

1 of that set forth in the proof of claim 10:43:48
2 form? 10:43:53
3       MR. TYE:  Object to form. 10:43:53
4    A.   It would be those identified in 10:43:59
5 the proof of claim but also in our responses 10:44:02
6 to the interrogatories as well. 10:44:05
7    Q.   Okay. 10:44:05
8    A.   Which also references the 10:44:08
9 publicly available reports which we've 10:44:10
10 incorporated by reference. 10:44:12
11    Q.   Okay. 10:44:13
12       Does the North Bay Fires claim 10:44:16
13 accurately set forth the facts and legal 10:44:17
14 theories that FEMA is relying on in this 10:44:20
15 proceeding? 10:44:22
16       MR. TYE:  Object to the form of 10:44:24
17 that question. 10:44:25
18    A.   Again, we're relying on not just 10:44:27
19 the proof of claim but also our responses to 10:44:30
20 the interrogatories, the publicly available 10:44:31
21 reports that are referenced, the 10:44:33
22 proceeding -- the criminal proceedings 10:44:35
23 related to Judge Alsup and any additional 10:44:36
24 evidence that we might develop in the course 10:44:39
25 of litigation. 10:44:41
Page 71

1    Q.   Yeah, but the question is does 10:44:41
2 the North Bay Fires claim accurately set 10:44:47
3 forth the facts and legal theories that FEMA 10:44:49
4 is it currently relying on in this 10:44:51
5 proceeding? 10:44:53
6       MR. TYE:  Object to the form. 10:44:58
7    A.   The proof of claim document 10:45:01
8 specifically? 10:45:03
9    Q.   Yeah. 10:45:03
10    A.   It does set forth the factual 10:45:09
11 basis.  There are additional supporting 10:45:13
12 documentations as referenced in our 10:45:15
13 interrogatories, including the publicly 10:45:17
14 available reports. 10:45:18
15    Q.   Are there any new legal theories 10:45:20
16 that we haven't heard of yet?  Beyond -- 10:45:22
17       MR. TYE:  Object to the form and 10:45:28
18 object to that question.  Anything 10:45:30
19 regarding legal theories doesn't have 10:45:31
20 anything to do with the factual basis 10:45:32
21 of any of our claims.  And object to 10:45:34
22 that as beyond the scope of the 10:45:35
23 30(b)(6) notice. 10:45:37
24       The witness can answer in his 10:45:38
25 personal knowledge for this issue, but 10:45:39
Page 72

1 this testimony is it not in his 10:45:41
2 30(b)(6) capacity on behalf of FEMA. 10:45:43
3    A.   I would have to consult with the 10:45:45
4 Department Justice to determine if there is 10:45:47
5 any other legal theories that we would 10:45:49
6 assert. 10:45:50
7    Q.   Okay. 10:45:50
8       Are there any other material 10:45:51
9 facts that are omitted from the North Bay 10:45:52
10 Fires claim? 10:45:55
11       MR. TYE:  Object to the form. 10:45:56
12    A.   As of right now there would be 10:46:10
13 potentially additional evidence available 10:46:12
14 developed in the course of litigation.  But 10:46:14
15 I would also note that the federal 10:46:17
16 government's requested the evidence 10:46:19
17 available from the TCC, which we have yet to 10:46:20
18 receive. 10:46:22
19    Q.   Okay. 10:46:25
20       So are you saying that there are 10:46:28
21 material facts that are omitted from the 10:46:30
22 North Bay Fires claim? 10:46:32
23       MR. TYE:  Objection, asked and 10:46:35
24 answered. 10:46:36
25    A.   There is additional evidence 10:46:42
Page 73

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 20
of 101

1 that may be developed in the course of 10:46:44
2 litigation that we may also rely upon. 10:46:45
3 Q. Okay. 10:46:47
4 So aside from that, is there any 10:46:49
5 material facts that you are aware of 10:46:52
6 currently that is omitted from the North Bay 10:46:54
7 Fires claim? 10:46:56
8 MR. TYE: Object to the form. 10:46:57
9 A. Again, I would also have to 10:47:03
10 refer back to our interrogatory responses 10:47:05
11 and the publicly available reports that are 10:47:07
12 referenced throughout. 10:47:11
13 Q. Okay. 10:47:15
14 MR. GOODMAN: Go ahead and mark 10:47:16
15 Exhibit Number 4. 10:47:17
16 THE WITNESS: Can we take a 10:47:18
17 really quick break. Is this an okay 10:47:20
18 time? 10:47:20
19 MR. GOODMAN: Of course, yeah. 10:47:20
20 Go off the record for a few. 10:47:22
21 THE VIDEOGRAPHER: Stand by the 10:47:24
22 microphones, please. 10:47:25
23 This marks the end of media 10:47:26
24 number 1. Going off the record at 10:47:28
25 10:47 a.m. 10:47:33

Page 74

1 [Recess at 10:47 a.m.] 10:47:34
2 [Resuming at 11:01 a.m.] 11:01:12
3 THE VIDEOGRAPHER: We are back 11:01:14
4 on the record at 11:01 a.m., and this 11:01:21
5 marks the beginning of media number 2 11:01:26
6 in the deposition of John-Paul 11:01:27
7 Henderson. 11:01:31
8 MR. GOODMAN: I'm going to go 11:01:31
9 ahead and mark Exhibit 4, which is the 11:01:33
10 Butte Fire claim. 11:01:37
11 [Deposition Exhibit 4 marked for 11:01:53
12 identification.] 11:01:55
13 EXAMINATION CONTINUING 11:01:55
14 MR. GOODMAN: 11:01:55
15 Q. Can you identify this document? 11:02:00
16 A. Yes, this is the proof of claim 11:02:13
17 that FEMA filed related to the Butte Fire, 11:02:14
18 again absent the additional supporting 11:02:20
19 documentations that was previously attached. 11:02:23
20 Q. I may refer to this as the 11:02:26
21 "Butte Fire claim," this document. Are you 11:02:28
22 comfortable with that term? 11:02:31
23 A. Yes. 11:02:31
24 Q. Okay. 11:02:31
25 Are you aware that FEMA has 11:02:34

Page 75

1 asserted a claim against PG&E for damages 11:02:36
2 caused by the 2015 Butte Fire? 11:02:38
3 A. Yes. 11:02:38
4 Q. And was the filing of the Butte 11:02:43
5 Fire claim authorized by someone at FEMA? 11:02:46
6 A. Yes. 11:02:46
7 Q. Okay. 11:02:46
8 Do you know who authorized it? 11:02:52
9 Was it different from who would have 11:02:53
10 authorized the North Bay Fire claim or are 11:02:55
11 they all authorized by the same person? 11:02:58
12 A. It would have been the same 11:02:59
13 officials for all three claims. 11:03:01
14 Q. Thank you. 11:03:03
15 What is your understanding as to 11:03:04
16 FEMA's position regarding the Butte Fire 11:03:06
17 claim? 11:03:09
18 MR. TYE: Object to the form. 11:03:10
19 A. So FEMA -- again, FEMA's 11:03:15
20 position also related to the Butte Fire 11:03:16
21 claim is that the debtor is liable to the 11:03:19
22 agency for the reasonable costs incurred in 11:03:22
23 providing disaster assistance to state and 11:03:25
24 local governments and individuals. 11:03:31
25 Q. Okay. 11:03:33

Page 76

1 Did FEMA perform any inquiry 11:03:33
2 prior to asserting the Butte Fire claim? 11:03:35
3 MR. TYE: Object to the form and 11:03:40
4 object to that question to the extent 11:03:41
5 that it gets into anything covered by 11:03:43
6 the deliberative process privilege. 11:03:44
7 A. So similar to the prior claim we 11:03:49
8 discussed, we would have done our own 11:03:52
9 internal analysis. All three of the proofs 11:03:54
10 of claim would have followed the same 11:04:01
11 process. 11:04:03
12 Q. Okay. 11:04:03
13 Did that analysis result in the 11:04:04
14 identification of any documents that are not 11:04:06
15 referenced in the proof of claim form and 11:04:07
16 the related attachment? 11:04:10
17 MR. TYE: Object to the form and 11:04:12
18 object to that question to the extent 11:04:14
19 it asks for material covered by 11:04:15
20 deliberative process privilege. 11:04:17
21 A. So we would have relied again on 11:04:21
22 what's inside our proof of claim documents 11:04:22
23 as well as the responses to the discovery 11:04:26
24 requests, including the referenced 11:04:28
25 CAL FIRE/CPUC publicly available reports and 11:04:31

Page 77

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 21
of 101

Page 78 (top-left):

1 the criminal proceedings under Judge Alsup.  11:04:37
2  Q.  Okay.                    11:04:40
3      The discovery responses, though,  11:04:44
4 were provided after the proof of claim form  11:04:45
5 was filed; correct?          11:04:47
6  A.  Correct.               11:04:48
7  Q.  So the question is as of the  11:04:51
8 point in time when the proof of claim form  11:04:52
9 was filed by FEMA, are the documents that  11:04:55
10 FEMA had identified in the course of its  11:05:00
11 inquiry all referenced in the proof of claim  11:05:03
12 form?                       11:05:06
13      MR. TYE:  Object to the form.  11:05:07
14  A.  So at the time of the filing of  11:05:15
15 the claim, we would have been relying on the  11:05:16
16 documents identified in the proof of claim  11:05:18
17 as well as any of the publicly available  11:05:19
18 CAL FIRE/CPUC reports and the -- anything  11:05:23
19 available from the criminal proceedings as  11:05:28
20 well.                       11:05:29
21  Q.  So sitting here today as the  11:05:42
22 Rule 30(b)(6) designee for FEMA, can you  11:05:44
23 identify the facts that support FEMA's  11:05:47
24 contention that PG&E is liable to FEMA for  11:05:49
25 the amount set forth in the Butte Fire  11:05:52

Page 78

Page 79 (bottom-left):

1 claim?                      11:05:55
2  A.  All of the facts that would  11:05:58
3 support our claim are identified in our  11:06:00
4 proof of claim document or in our written  11:06:04
5 discovery requests or in the publicly  11:06:06
6 available reports from CAL FIRE or CPUC, the  11:06:09
7 criminal proceedings under Judge Alsup, and  11:06:12
8 we may also rely on additional evidence  11:06:14
9 developed during the course of litigation.  11:06:17
10  Q.  Okay.                   11:06:18
11      Does the Butte Fire claim  11:06:28
12 accurately set forth the facts that FEMA is  11:06:34
13 relying on in this proceeding at this time?  11:06:37
14      MR. TYE:  Object to the form of  11:06:41
15 that question.              11:06:42
16  A.  So as stated previously, we're  11:06:44
17 also relying on information provided in the  11:06:47
18 written discovery requests, including all of  11:06:49
19 the publicly available reports and anything  11:06:51
20 else that may come out/be developed in the  11:06:55
21 course of the litigation.   11:06:58
22      MR. TYE:  Just for clarification  11:06:58
23 there, you've been saying "the written  11:07:03
24 discovery requests" on the last couple  11:07:05
25 of questions.  Could you clarify if  11:07:07

Page 79

Page 80 (top-right):

1      you mean requests or responses?  11:07:10
2  A.  No, responses to the  11:07:13
3 interrogatories and the requests for  11:07:13
4 admission for both the TCC and the UCC.  11:07:15
5  Q.  So were there facts that are set  11:07:19
6 forth in the discovery responses that were  11:07:22
7 not included in the proof of claim form?  11:07:25
8  A.  The --                  11:07:27
9      MR. TYE:  Object to the form of  11:07:34
10 that question.              11:07:35
11  A.  The interrogatory responses  11:07:36
12 provide additional information and  11:07:39
13 references.  But, again, that's all related  11:07:42
14 to the publicly available CAL FIRE and CPUC  11:07:45
15 reports.                    11:07:49
16  Q.  Are there any specific documents  11:07:51
17 or facts that are referenced in the  11:07:54
18 discovery responses that are not also  11:07:56
19 included in the proof of claim form?  11:07:58
20      MR. TYE:  Object to the form.  11:08:04
21  A.  I believe there are some -- I  11:08:05
22 know there are some reports that are quoted  11:08:10
23 in the interrogatory responses that are not  11:08:12
24 also quoted in the proof of claim document.  11:08:15
25  Q.  Do you recall what those are?  11:08:18

Page 80

1  A.  There are some specific  11:08:22
2 references to some of the CPUC reports.  11:08:27
3  Q.  Other than the CPUC reports can  11:08:30
4 you think of any other documents?  11:08:32
5      MR. TYE:  Object to the form.  11:08:38
6  A.  I know there's also a reference  11:08:39
7 to one of the filings in the criminal  11:08:41
8 proceedings, and then as we've noted in the  11:08:45
9 interrogatories we're also incorporating by  11:08:48
10 reference all of the other publicly  11:08:50
11 available CAL FIRE and CPUC reports.  11:08:52
12  Q.  Okay.                   11:08:55
13      Are the documents that you're  11:08:56
14 referring to in the criminal proceedings a  11:08:57
15 matter of public record at this time?  11:08:59
16  A.  The ones we would be relying on  11:09:04
17 are those that are available publicly.  11:09:07
18  Q.  Okay.  So there are no documents  11:09:09
19 that would not be publicly available that  11:09:10
20 you're relying on at this time?  11:09:12
21      MR. TYE:  Object to the form.  11:09:15
22  A.  There are no documents that we  11:09:18
23 would have reviewed up to this point that  11:09:20
24 are not publicly available.  But, again,  11:09:22
25 additional evidence may be developed in the  11:09:27

Page 81

21 (Pages 78 - 81)

Veritext Legal Solutions
800-899-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 22
of 101

1 course of the litigation. 11:09:28
2     MR. GOODMAN: Go ahead and mark 11:09:30
3 Exhibit 5. 11:09:31
4     [Deposition Exhibit 5 marked for 11:09:56
5 identification.] 11:09:58
6 MR. GOODMAN: 11:10:24
7     Q. Can you identify this document? 11:10:24
8     A. Yes, this is the proof of claim 11:10:26
9 filed by FEMA related to the Camp Fire. 11:10:28
10 And, again, as noted with the other 11:10:33
11 exhibits, it does not include the supporting 11:10:37
12 documentation that was filed with the proof 11:10:40
13 of claim. 11:10:41
14     Q. Okay. If we refer to this as 11:10:43
15 the Camp Fire claim or Exhibit 5, are you 11:10:46
16 comfortable with that term? 11:10:48
17     A. Yes. 11:10:50
18     Q. Okay. 11:10:50
19     You're aware that someone -- 11:10:51
20 strike that. 11:10:52
21     You are aware that FEMA has 11:10:53
22 asserted a claim against PG&E for damages 11:10:54
23 resulting from the 2018 Camp Fire? 11:10:57
24     A. Yes. 11:11:02
25     Q. What is your understanding as to 11:11:02

1 FEMA's position regarding the Camp Fire 11:11:04
2 claim? 11:11:06
3     MR. TYE: Object to the form. 11:11:09
4     A. Similar to the other proofs of 11:11:10
5 claim, FEMA asserts that the debtor is 11:11:12
6 liable to the agency for reasonable costs 11:11:15
7 incurred in providing disaster assistance 11:11:18
8 related to the major disaster declaration. 11:11:22
9     Q. And did FEMA perform an inquiry 11:11:25
10 prior to asserting the Camp Fire claim? 11:11:27
11     A. We would have done a similar 11:11:30
12 analysis as the other claims previously 11:11:32
13 discussed. 11:11:34
14     Q. Was it the same group of people 11:11:38
15 as performed the analysis for the North Bay 11:11:39
16 Fires claim and the Butte Fire claim? 11:11:43
17     A. Yes. 11:11:43
18     Q. Okay. 11:11:43
19     Did that inquiry result in the 11:11:46
20 identification of any specific documents 11:11:49
21 that support the Camp Fire claim? 11:11:50
22     MR. TYE: Object to the question 11:11:53
23 to the extent it asks for material 11:11:54
24 covered by deliberative process 11:11:56
25 privilege. 11:11:58

1     A. Similar to my response to the 11:11:59
2 other questions, the documents would be 11:12:01
3 relied upon or identified in the proof of 11:12:03
4 claim as well as our responses to the 11:12:05
5 interrogatories and requests for admission, 11:12:09
6 such as the publicly available CAL FIRE and 11:12:12
7 CPUC reports, the publicly available 11:12:16
8 documents from the criminal proceedings 11:12:18
9 under Judge Alsup, and any additional 11:12:19
10 evidence we may develop in the course of 11:12:23
11 litigation. 11:12:25
12     Q. You may have the same answer to 11:12:50
13 this question, but I'll ask it. 11:12:51
14     What evidence did FEMA consider 11:12:53
15 in determining whether to assert the Camp 11:12:55
16 Fire claim? 11:12:58
17     MR. TYE: Object to that 11:12:59
18 question to the extent it asks for 11:12:59
19 material covered by the deliberative 11:13:01
20 process privilege. 11:13:02
21     A. Again, we would have relied on 11:13:05
22 the evidence identified in the proof of 11:13:07
23 claim, any publicly available reports from 11:13:09
24 CAL FIRE or CPUC or publicly available 11:13:13
25 reports from the criminal proceedings that 11:13:16

1 were available at the time of the claim. 11:13:19
2     Q. Okay. 11:13:21
3     Have you ever heard of the word 11:13:48
4 "arson" before? 11:13:51
5     A. Yes, I have heard the word 11:13:54
6 before. 11:13:55
7     Q. Okay. 11:13:55
8     What does the word "arson" mean 11:13:56
9 to you? 11:13:58
10     A. My understanding of the word 11:14:03
11 "arson" is that it is a -- identified as a 11:14:04
12 criminal act of setting something on fire. 11:14:15
13     Q. Okay. 11:14:21
14     What about the word "arsonist"? 11:14:22
15 Have you heard that term used before? 11:14:24
16     A. Yes. 11:14:24
17     Q. What does the term "arsonist" 11:14:26
18 mean to you? 11:14:28
19     MR. TYE: Objection to form. 11:14:29
20     A. Someone who commits arson. 11:14:34
21     Q. Okay. 11:14:34
22     Is FEMA claiming that PG&E or 11:14:36
23 anyone that works for PG&E is an arsonist? 11:14:40
24     MR. TYE: Object to the form. 11:14:45
25     A. FEMA contends that the 11:14:50

Page 86:

1 intentional omissions of the debtor resulted 11:14:52
2 in a condition related to the fires, but 11:14:55
3 that does not include arson. 11:15:04
4 Q. Okay. 11:15:05
5 So just to make sure I have a 11:15:08
6 clear answer to this question, just want to 11:15:10
7 know: 11:15:14
8 Is FEMA claiming that PG&E or 11:15:15
9 anyone that works for PG&E is an arsonist? 11:15:17
10 MR. TYE: Object to the form. 11:15:22
11 A. So, again, FEMA's claim is that 11:15:24
12 intentional omissions by PG&E resulted in 11:15:27
13 the fires but not that anyone at PG&E is an 11:15:30
14 arsonist. 11:15:32
15 Q. Okay. 11:15:33
16 Does FEMA contend that PG&E 11:15:35
17 committed arson between 2015 and 2018? 11:15:38
18 MR. TYE: Objection, calls for a 11:15:42
19 legal conclusion. 11:15:43
20 A. Again, FEMA's position is that 11:15:47
21 intentional omissions by PG&E resulted in 11:15:49
22 the fires, but that does not include 11:15:51
23 committing arson. 11:15:54
24 Q. Okay. 11:15:55
25 Does FEMA contend that PG&E's 11:15:57
Page 86

Page 87:

1 goal was to cause wildfires between 2015 and 11:16:00
2 2018? 11:16:05
3 MR. TYE: Object to the form. 11:16:07
4 A. FEMA's position is that 11:16:12
5 intentional omissions by PG&E resulted in 11:16:13
6 wildfires during that time period but that 11:16:15
7 was not the goal. 11:16:20
8 Q. Have you ever heard of the 11:16:25
9 phrase "intentionally caused" before? 11:16:26
10 MR. TYE: Could you repeat the 11:16:29
11 question? Sorry. 11:16:30
12 Q. Have you ever heard the phrase 11:16:31
13 "intentionally caused" before? 11:16:32
14 A. Yes, I have. 11:16:39
15 Q. Okay. 11:16:39
16 What does that phrase mean to 11:16:39
17 you? 11:16:41
18 A. In the context of this, in the 11:16:41
19 context of the Stafford Act, the phrase 11:16:46
20 "intentionally caused" appears within 11:16:48
21 section 317 of the Stafford Act. 11:16:51
22 Q. Okay. 11:16:51
23 But what does the phrase mean to 11:16:56
24 you? 11:16:58
25 A. Well, again, the phrase appears 11:17:07
Page 87

Page 88:

1 in section 317, which, reading the entire 11:17:08
2 statute, also uses the terminology 11:17:12
3 "intentional acts and omissions." So to me 11:17:17
4 the phrase "intentionally caused" means that 11:17:19
5 if an entity's intentional acts or omissions 11:17:24
6 caused something, then that's when section 11:17:30
7 317 could be invoked. 11:17:33
8 MR. GOODMAN: Okay. Let's go 11:17:37
9 ahead and mark Exhibit 6. 11:17:37
10 [Deposition Exhibit 6 marked for 11:17:44
11 identification.] 11:17:46
12 MR. GOODMAN: 11:18:18
13 Q. Can you identify this document? 11:18:18
14 A. Yes, this is the United States' 11:18:22
15 Response to Official Committee of Tort 11:18:33
16 Claimants First Set of Interrogatories. 11:18:36
17 Q. Did you review this document in 11:18:39
18 preparation for today's deposition? 11:18:40
19 A. Yes. 11:18:40
20 Q. Can you go to page number 6? 11:18:44
21 A. Yes. 11:19:00
22 Q. Do you see the reference to 11:19:00
23 section 317 of the Stafford Act? 11:19:02
24 A. Starting on line 17? 11:19:04
25 Q. Yes. 11:19:04
Page 88

Page 89:

1 A. Yes. 11:19:06
2 Q. Okay. 11:19:07
3 Are you familiar with the 11:19:08
4 Stafford Act? 11:19:09
5 A. Yes, I am. 11:19:11
6 Q. Okay. 11:19:11
7 Are you familiar with section 11:19:12
8 317 of the Stafford Act? 11:19:14
9 A. Yes, I am. 11:19:16
10 Q. Okay. 11:19:16
11 In your view what does section 11:19:17
12 317 of the Stafford Act provide for? 11:19:19
13 MR. TYE: Objection, calls for a 11:19:22
14 legal conclusion. The witness is here 11:19:24
15 to provide the factual basis for the 11:19:25
16 allegations. He's not here to provide 11:19:26
17 what his understanding is of specific 11:19:28
18 legal provisions. 11:19:29
19 THE WITNESS: May I answer the 11:19:39
20 question? 11:19:40
21 MR. TYE: You can answer the 11:19:40
22 question as to the factual basis, but 11:19:41
23 to the extent it calls for a legal 11:19:43
24 conclusion, that's neither here for 11:19:44
25 there. 11:19:46
Page 89

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 24
of 101

**Page 90**

1    A.  I'm not sure how I can answer   11:19:58
2  the question without drawing a legal   11:20:00
3  conclusion.  But if you would like to   11:20:02
4  restate it?   11:20:04
5    Q.  The question is in your view   11:20:05
6  what does section 317 of the Stafford Act   11:20:06
7  provide for?   11:20:09
8    A.  Well, in summary it would   11:20:17
9  provide for the recovery of reasonable costs   11:20:20
10  incurred by FEMA in providing disaster   11:20:24
11  assistance where such costs are attributable   11:20:27
12  to the intentional act or omission of the   11:20:30
13  person who caused such condition.   11:20:32
14    Q.  Okay.  Do you see the first   11:20:35
15  sentence on line 24 of page 6?   11:20:36
16    A.  I'm sorry, what was that   11:20:39
17  reference again?   11:20:43
18    Q.  Line 24 on page 6.  I'll read it   11:20:44
19  for you.   11:20:46
20    A.  Okay, yes.   11:20:47
21    Q.  It says:   11:20:48
22      "As used in the statute" --   11:20:48
23  which I believe is referring to section 317   11:20:50
24  of the Stafford Act -- "'intentionally' does   11:20:52
25  not require a specific intent to cause   11:20:55

**Page 91**

1  harm."   11:20:58
2      Do you see that?   11:21:00
3    A.  Yes.   11:21:01
4    Q.  Am I correct that FEMA's   11:21:01
5  position in this case is that the phrase   11:21:02
6  "intentionally" as used in section 317 of   11:21:04
7  the Stafford Act does not require a specific   11:21:07
8  intent to cause harm?   11:21:10
9      Again, I'm just reading what's   11:21:22
10  there.   11:21:23
11    A.  Right.  No, I know.   11:21:23
12      So that's a -- I mean, that's a   11:21:25
13  legal conclusion but that is an accurate   11:21:26
14  statement of what was included in our   11:21:28
15  interrogatory response.   11:21:30
16    Q.  Okay.   11:21:30
17      So am I correct that FEMA is not   11:21:33
18  contending that PG&E actually wanted to   11:21:35
19  destroy the town of Paradise, California?   11:21:38
20    MR. TYE:  Object to the form.   11:21:42
21    A.  That's correct we would not make   11:21:45
22  that allegation.   11:21:47
23    Q.  Okay.   11:21:47
24      Does FEMA contend that PG&E had   11:21:48
25  a specific intent to cause harm in the   11:21:50

**Page 92**

1  proofs of claim that it has filed against   11:21:54
2  PG&E?   11:21:57
3    A.  Well, as stated in the   11:21:58
4  interrogatory, FEMA does not believe that   11:22:00
5  the statute requires a specific intent to   11:22:02
6  cause harm, so we are not going to make such   11:22:04
7  an allegation.   11:22:07
8    Q.  Okay.   11:22:07
9      Does FEMA have any evidence that   11:22:08
10  PG&E had a specific intent to cause harm in   11:22:12
11  relation to the wildfires for which proofs   11:22:16
12  of claim have been filed?   11:22:19
13    A.  So, again, our reading of the   11:22:21
14  statute is that a specific intent to harm is   11:22:23
15  not required, so we will not make such an   11:22:25
16  allegation.   11:22:28
17    Q.  The question is, though, do you   11:22:29
18  have any evidence that would support that   11:22:30
19  allegation?   11:22:34
20    A.  We are not making the allegation   11:22:34
21  and have no evidence that would support such   11:22:39
22  an allegation.   11:22:41
23    Q.  Thank you.   11:22:42
24      Does FEMA have any evidence that   11:22:49
25  PG&E had actual knowledge that any of the   11:22:51

**Page 93**

1  wildfires were going to happen before they   11:22:55
2  occurred?   11:22:57
3    MR. TYE:  Objection, calls for a   11:22:59
4  legal conclusion.   11:23:01
5    A.  The agency has evidence that the   11:23:06
6  debtor was on notice of the safety issues   11:23:11
7  and violations that were occurring that   11:23:14
8  could result in a wildfire occurring.   11:23:22
9    Q.  Okay.   11:23:25
10      Are you familiar with the phrase   11:24:04
11  "intended to cause"?   11:24:07
12    MR. TYE:  Object to the form.   11:24:09
13    A.  I'm not familiar with where that   11:24:23
14  phrase comes from.   11:24:25
15    Q.  It's not in the document in   11:24:26
16  front of you.  Let me -- let me rephrase.   11:24:28
17      So when I use the phrase   11:24:30
18  "intended to cause," I generally mean the   11:24:32
19  actor desired a result based on -- or   11:24:34
20  desired a result to occur based on their   11:24:36
21  actions.  So, for example, Eric pushed the   11:24:39
22  pen and intended it to fall off the table.   11:24:42
23  Does that make sense to you?   11:24:45
24    MR. TYE:  Object to the form.   11:24:47
25    A.  It makes sense to me if you're   11:24:48

1 discussing an intentional act. It doesn't 11:24:50
2 necessarily make sense to me if you're 11:24:52
3 discussing an intentional omission. 11:24:54
4     Q.   Okay. 11:24:55
5         But you would understand it in 11:24:57
6 your reference to an intentional act? 11:24:58
7     MR. TYE:  Object to the form. 11:25:01
8     And objection to the extent it calls 11:25:03
9     for a legal conclusion. 11:25:04
10     A.   In regards to an intentional 11:25:10
11 act, I would understand what that would 11:25:12
12 mean. 11:25:14
13     Q.   Okay. 11:25:15
14         Well, let me frame it this way. 11:25:16
15         A tree could not burn down in a 11:25:18
16 wildfire unless it was first planted in the 11:25:21
17 ground.  But just because you plant a tree 11:25:24
18 doesn't mean that you intend for a wildfire 11:25:26
19 to happen.  Correct? 11:25:28
20     MR. TYE:  Object to the form. 11:25:30
21     Object to the question to the extent 11:25:31
22     that it calls for a legal conclusion. 11:25:33
23         He's here to provide the factual 11:25:35
24     basis for the allegations in the 11:25:36
25     claims.  He's not here to provide a 11:25:39

Page 94

1     legal opinion on what specific words 11:25:41
2     in the statute mean. 11:25:45
3     A.   Could you just give me your 11:25:51
4 hypothetical one more time? 11:25:54
5     Q.   Yeah. 11:25:55
6         A tree could not burn down in a 11:25:55
7 wildfire unless it was first planted in the 11:25:57
8 ground, but just because you plant a tree 11:25:59
9 does not mean that you intend for a wildfire 11:26:02
10 to happen.  Correct? 11:26:04
11     MR. TYE:  Same objections. 11:26:07
12     Also it assumes facts not in 11:26:09
13     evidence, calls for speculation. 11:26:10
14     A.   Yeah, I mean, I would want to 11:26:17
15 know all of the facts before reaching a 11:26:22
16 conclusion on that. 11:26:24
17     Q.   Okay. 11:26:24
18         Would you agree that there is a 11:26:26
19 difference between performing an action that 11:26:27
20 contributes to a wildfire happening and 11:26:28
21 intentionally setting a wildfire? 11:26:30
22     MR. TYE:  Same objections. 11:26:35
23     Calls for a legal conclusion and 11:26:36
24     assumes facts not in evidence and 11:26:38
25     calls for speculation. 11:26:39

Page 95

1     A.   Well, in regards to an 11:26:47
2 intentional action, there could be other 11:26:51
3 intentional actions that may occur that 11:27:00
4 aren't just setting a fire that could result 11:27:04
5 in that condition happening. 11:27:05
6     Q.   Okay. 11:27:09
7         The question though is would you 11:27:10
8 agree that there is a difference between 11:27:11
9 intentionally performing an action that 11:27:14
10 contributes to a wildfire happening and 11:27:17
11 intentionally setting a wildfire? 11:27:21
12     MR. TYE:  Same objections as 11:27:23
13     previously asserted. 11:27:25
14         Also these questions are getting 11:27:25
15     beyond the scope of the 30(b)(6) 11:27:27
16     notice. 11:27:29
17         The witness can answer as to his 11:27:29
18     personal knowledge, but this testimony 11:27:31
19     is not in his 30(b)(6) capacity on 11:27:35
20     behalf of FEMA. 11:27:37
21     A.   I suppose one could take an 11:27:42
22 intentional action that ends up setting a 11:27:44
23 fire even if they didn't intend for the fire 11:27:47
24 to happen. 11:27:52
25     Q.   Okay.  Thank you. 11:27:52

Page 96

1         So with that I just want to be 11:28:00
2 clear:  FEMA is not asserting that PG&E 11:28:04
3 intended for the Camp Fire or the North Bay 11:28:09
4 Fires or the Butte Fires to happen; is that 11:28:12
5 correct? 11:28:15
6     MR. TYE:  Objection.  That 11:28:15
7     question goes beyond the scope of the 11:28:17
8     30(b)(6) notice. 11:28:19
9         The witness can answer for his 11:28:20
10     personal knowledge for the issue, but 11:28:21
11     his testimony is not in his 30(b)(6) 11:28:23
12     capacity on behalf of FEMA.  He's here 11:28:23
13     to testify about the factual basis for 11:28:26
14     the allegations, not to make 11:28:27
15     conclusions, legal conclusions. 11:28:29
16     A.   As stated previously FEMA's 11:28:32
17 allegation is that intentional omissions by 11:28:34
18 the debtor resulted in the fires, not that 11:28:36
19 they directly set the fires themselves. 11:28:42
20     Q.   Okay. 11:28:47
21         You keep referring to 11:28:48
22 "intentional omissions."  And my question is 11:28:49
23 are you, FEMA, basing a proof of claim on 11:28:52
24 any intentional actions where the intent was 11:28:57
25 to cause a fire? 11:29:02

Page 97

25 (Pages 94 - 97)

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 26
of 101

MR. TYE: Object to the form of 11:29:07 that question. Also object to that 11:29:08 question as beyond the scope of the 11:29:12 30(b)(6) notice. 11:29:13

The witness can answer in his 11:29:14 personal knowledge for this issue, but 11:29:14 this testimony is not in his 30(b)(6) 11:29:17 capacity on behalf of FEMA. He's here 11:29:17 to talk about the factual basis for 11:29:21 the allegations, not to form any legal 11:29:22 conclusions. 11:29:25

A. So, again, FEMA's position is 11:29:31 that the intentional omissions of the debtor 11:29:32 resulted in the unsafe operation of the 11:29:36 electrical grid. There may be some 11:29:40 intentional actions that occurred related to 11:29:43 that particular condition. 11:29:46

Q. Can you go to page 7 of FEMA's 11:29:54 responses to interrogatories? 11:29:57

A. Uh-huh. 11:29:58

Q. Do you see the sentence that 11:29:58 begins on line 2? 11:29:59

A. Yes. 11:30:03

Q. I'll read this for you. It 11:30:04 says: 11:30:06

Page 98

"FEMA bases its claim on the 11:30:07 contention that PG&E's intentional acts 11:30:09 and/or omissions created the condition for 11:30:13 the extensive wildfire damage that ensued. 11:30:16 As related to the facts above, PG&E omitted 11:30:20 to, one, conduct critically necessary 11:30:24 repairs, two, timely respond to safety 11:30:27 issues, three, manage risk effectively and, 11:30:30 four, adequately maintain poles and 11:30:33 attachments." 11:30:36

Do you see that? 11:30:37

A. Uh-huh. I'm sorry. Yes, I do. 11:30:37

Q. Okay. 11:30:39

Beyond these four items is there 11:30:40 any other conduct that FEMA asserts provides 11:30:41 a factual basis for FEMA's claims under 11:30:45 section 317 of the Stafford Act? 11:30:47

MR. TYE: Object to the form of 11:30:52 that question. 11:30:53

Q. Let me rephrase that question. 11:31:01 So we have failure to conduct 11:31:03 critically necessary repairs, failure to 11:31:06 timely respond to safety issues, failure to 11:31:09 manage risk effectively, and failure to 11:31:12 adequately maintain poles and attachments. 11:31:15

Page 99

Is there anything else that FEMA 11:31:19 contends that PG&E intentionally did? 11:31:20

MR. TYE: Object to the form of 11:31:27 that question. 11:31:28

A. Well, the issue of me answering 11:31:33 that question is that those are fairly broad 11:31:35 categories. So I wouldn't want to limit the 11:31:37 scope of what we might consider under those. 11:31:39

One example I would give is that 11:31:42 one of the issues would be the vegetation 11:31:43 management program. And while I would say 11:31:46 that would fall into some of those, I would 11:31:51 want to just make sure it's clear that even 11:31:53 though vegetation management isn't 11:31:57 specifically mentioned in that list, that's 11:31:58 an example of something that we would 11:32:00 consider falling under those broad 11:32:02 categories. 11:32:04

Q. Okay. 11:32:04

So we have vegetation 11:32:05 management, failure to conduct critically 11:32:10 necessary repairs, failure to timely respond 11:32:14 to safety issues, failure to manage risk 11:32:16 effectively and failure to adequately 11:32:19 maintain poles and attachments. 11:32:21

Page 100

Is there anything else that FEMA 11:32:23 contends that PG&E intentionally did? 11:32:24

MR. TYE: Object to the form. 11:32:27

A. I mean, as I stated previously, 11:32:34 that captures the broad categories. But I 11:32:35 wouldn't want to limit the scope of specific 11:32:38 details that might fall in those. 11:32:40

Q. Okay. 11:32:42

Well, can you identify anything 11:32:45 else, sitting here today as the Rule 11:32:47 30(b)(6) designee? 11:32:51

MR. TYE: Object to the form of 11:32:55 that question. 11:32:58

A. Another example would be 11:32:58 violations of state law that occurred, but I 11:33:17 would not really categorize that as an 11:33:24 omission. I would categorize that as 11:33:27 something else. So that's why I'm just 11:33:29 wanting to clarify that it's more than just 11:33:30 those four things that we would rely upon. 11:33:33

Q. Okay. 11:33:33

Other than that is there 11:33:37 anything else? 11:33:37

A. Nothing else I can identify at 11:33:46 this time. 11:33:48

Page 101

Veritext Legal Solutions
866-299-5127

**Page 102**

1    Q.   Okay.                        11:33:48
2         So just -- so I understand      11:33:48
3    FEMA's position, FEMA is contending that   11:33:50
4    PG&E intentionally failed to maintain its   11:33:54
5    equipment properly and the other things that   11:33:57
6    are referenced in 1 through 4 that we      11:34:00
7    discussed, but FEMA is not contending that   11:34:04
8    PG&E intentionally destroyed the town of   11:34:07
9    Paradise.  Do I have that right?        11:34:10
10        MR. TYE:  Object to the form of   11:34:13
11        that question.  Objection,      11:34:14
12        mischaracterizes prior testimony.    11:34:15
13   A.   So, again, as stated previously,   11:34:21
14   FEMA's position is that intentional    11:34:23
15   omissions by PG&E resulted in, in this case,   11:34:24
16   the Camp Fire.  And so if you're using the   11:34:30
17   "intentionally caused" in that context, then   11:34:34
18   FEMA would be alleging that.        11:34:38
19   Q.   Okay.                     11:34:38
20        What do you mean by "intentional   11:34:40
21   omission"?                      11:34:42
22        MR. TYE:  Object to the form of   11:34:47
23        that question.  Also object to the   11:34:48
24        extent it calls for a legal       11:35:00
25        conclusion.  He's here to provide the   11:35:02

**Page 103**

1    factual basis for the allegations.    11:35:04
2    A.   Well, as stated in our       11:35:09
3    interrogatory on page 7 at line 7, it   11:35:11
4    states:                        11:35:20
5         "PG&E actively and blatantly    11:35:21
6    disregarded that such an omission was   11:35:22
7    reasonably likely to cause a condition for   11:35:25
8    which FEMA assistance would be regarded."   11:35:27
9    Q.   Where are you?             11:35:32
10   A.   Page 7, line 7.  Sorry, it's   11:35:34
11   midsentence but -- the sentence starts on   11:35:37
12   line 6.                        11:35:41
13   Q.   Can you just go ahead and read   11:35:45
14   it to make sure I --             11:35:46
15   A.   I'll read the entire sentence.   11:35:46
16   Q.   Sure.                     11:35:48
17   A.   "Moreover, PG&E's actions and   11:35:49
18   omissions were intentional under section 317   11:35:51
19   of the Stafford Act because PG&E actively   11:35:54
20   and blatantly disregarded that such an   11:35:57
21   omission was reasonably likely to cause a   11:35:59
22   condition for which FEMA assistance would be   11:36:02
23   required.  Specifically, PG&E knew that   11:36:07
24   failure" --                     11:36:07
25        It looks like there's a word   11:36:07

**Page 104**

1    missing, but it should be "to."      11:36:07
2         -- to "take action could cause   11:36:07
3    or spread a wildfire, causing serious and   11:36:13
4    widespread injury, and still PG&E omitted to   11:36:15
5    act."                         11:36:18
6    Q.   So, again, I'm not clear on what   11:36:22
7    you mean by "intentional omission."  You   11:36:25
8    keep using that in your responses.  I don't   11:36:28
9    understand what you mean.           11:36:31
10        MR. TYE:  Once again, I object   11:36:34
11        to the form and object to the extent   11:36:35
12        it calls for a legal conclusion.  He's   11:36:36
13        here to provide the factual basis for   11:36:38
14        the allegations.              11:36:39
15   A.   I think in summary intentional   11:36:45
16   omission, as the agency is using in this   11:36:50
17   case, was that the debtor had knowledge of   11:36:52
18   the issues identified related to the    11:36:57
19   electrical grid and did not take such action   11:37:03
20   to cure those issues even though it was   11:37:11
21   reasonably likely that that would cause a   11:37:17
22   fire to occur.                   11:37:19
23   Q.   Okay.                     11:37:31
24        And is that part of the factual   11:37:32
25   basis for FEMA's claims against PG&E?    11:37:33

**Page 105**

1         MR. TYE:  Object to the form.    11:37:44
2    A.   I mean, that's the -- that's the   11:37:48
3    allegation we presented, and we have --   11:37:52
4    believe we have the evidence to support   11:37:55
5    that.                         11:37:56
6    Q.   Okay.                     11:37:56
7         And what evidence is that again?   11:37:57
8    A.   Again, that's the evidence     11:37:59
9    identified in the proof of claim, in our   11:38:00
10   responses to interrogatories and requests   11:38:03
11   for admission, the publicly available    11:38:05
12   reports from CAL FIRE and CPUC, the publicly   11:38:08
13   available reports and findings under the   11:38:12
14   criminal proceedings under Judge Alsup, and   11:38:14
15   then we may also rely on additional evidence   11:38:16
16   that's developed in the course of the    11:38:19
17   litigation.                     11:38:20
18   Q.   Okay.                     11:38:20
19        Can you go back to Exhibit 4    11:38:22
20   which is the Butte Fire claim?        11:38:24
21        Could you go to page 2 of the   11:38:39
22   Butte Fire claim?  Or rather page 2 of the   11:38:42
23   attachment?                     11:38:48
24   A.   Oh, yes.                   11:38:48
25   Q.   Sorry for that.             11:38:49

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 28
of 101

Page 106:

1 Do you see the reference in the 11:38:53
2 second-to-last paragraph to the CAL FIRE 11:38:55
3 news release, "CAL FIRE Investigators 11:38:57
4 Determined Cause of Destructive Butte Fire," 11:39:00
5 April 28, 2016? 11:39:02
6 A. Yes. 11:39:02
7 Q. Okay. 11:39:02
8 Is this report a document that 11:39:06
9 FEMA is relying on in support of the Butte 11:39:08
10 Fire claim? 11:39:10
11 A. Yes, the news release and the 11:39:16
12 underlying report. 11:39:17
13 Q. Okay. 11:39:17
14 I'm going to hand you what's 11:39:18
15 been marked as Exhibit 7. 11:39:19
16 [Deposition Exhibit 7 marked for 11:39:41
17 identification.] 11:39:42
18 MR. GOODMAN: 11:39:52
19 Q. Can you identify this document? 11:39:53
20 A. This is a CAL FIRE news release 11:39:54
21 dated April 28, 2016 titled "CAL FIRE 11:39:56
22 Investigators Determine Cause of Destructive 11:40:01
23 Butte Fire." 11:40:03
24 Q. Okay. 11:40:03
25 Is this the document referenced 11:40:04

Page 106

Page 107:

1 on page 2 of the Butte Fire claim? 11:40:06
2 A. Yes. 11:40:08
3 Q. Okay. 11:40:25
4 Have you seen this document 11:40:26
5 before? 11:40:27
6 A. Yes. 11:40:27
7 Q. Did you review this document in 11:40:29
8 preparation for today's deposition? 11:40:31
9 A. I did not review it for today's 11:40:35
10 deposition but I reviewed it in the past. 11:40:37
11 Q. Okay. 11:40:37
12 Have you discussed this report 11:40:42
13 with anyone who is not an attorney? 11:40:43
14 A. No. 11:40:55
15 Q. Okay. 11:40:55
16 Can you identify any part of 11:40:59
17 this report where CAL FIRE determined that 11:41:00
18 PG&E intentionally caused the Butte Fire? 11:41:04
19 MR. TYE: Object to the form of 11:41:13
20 that question. 11:41:14
21 [Pause.] 11:41:31
22 A. This particular news release 11:41:36
23 refers to the investigation which uncovered 11:41:38
24 evidence that contact between a tree and a 11:41:41
25 PG&E powerline near Butte Mountain Road in 11:41:44

Page 107

Page 108:

1 Amador County sparked the fire on September 11:41:48
2 9, 2015. 11:41:53
3 Q. Okay. 11:41:54
4 Can you identify any part of 11:41:56
5 this report where it states that PG&E 11:41:58
6 intentionally caused the Butte Fire? 11:42:01
7 MR. TYE: Object to the form of 11:42:06
8 the question. 11:42:07
9 A. This particular news release 11:42:12
10 does not reference that. 11:42:14
11 Q. Okay. 11:42:14
12 Can you identify any part of 11:42:18
13 this news release that indicates to you as 11:42:20
14 the 30(b)(6) designee that PG&E 11:42:22
15 intentionally caused the Butte Fire? 11:42:24
16 A. On its own I cannot do so. I 11:42:32
17 would need to also refer to the history of 11:42:34
18 reports from the CPUC identifying ongoing 11:42:40
19 issues that the debtor had in not curing the 11:42:44
20 safety issues when there were violations. 11:42:48
21 Q. Okay. 11:42:52
22 So is it your testimony then 11:43:00
23 that there is no part of this release that, 11:43:02
24 standing alone, indicates that PG&E 11:43:09
25 intentionally caused the Butte Fire? 11:43:10

Page 108

Page 109:

1 MR. TYE: Object to the form, 11:43:13
2 mischaracterizes prior testimony. 11:43:15
3 A. Standing on its own, no. We 11:43:28
4 would need to refer to additional documents 11:43:30
5 as well. 11:43:32
6 Q. What documents would that be? 11:43:33
7 A. The other publicly available 11:43:34
8 CPUC reports, the actual CAL FIRE 11:43:38
9 investigation report that came out at the 11:43:47
10 same time as this press release, and then 11:43:49
11 potentially also the reports related to the 11:43:59
12 criminal proceedings. 11:44:01
13 Q. Do the CAL FIRE investigative 11:44:07
14 reports state that PG&E intentionally caused 11:44:10
15 the Butte Fire? 11:44:12
16 MR. TYE: Object to the form of 11:44:18
17 the question. 11:44:19
18 Also object to that question as 11:44:19
19 beyond the scope of the 30(b)(6) 11:44:21
20 notice. 11:44:22
21 The witness can answer in his 11:44:22
22 personal knowledge for this issue, but 11:44:24
23 this testimony is not in his 30(b)(6) 11:44:27
24 capacity on behalf of FEMA. 11:44:29
25 A. Several of the CAL FIRE reports 11:44:30

Page 109

28 (Pages 106 - 109)

Veritext Legal Solutions
800-230-5127

1 do identify safety issues and other    11:44:32
2 violations of state law that were caused by    11:44:37
3 the debtor.    11:44:39
4    Q.   Okay.    11:44:40
5       Is FEMA relying on the CAL FIRE    11:44:45
6 reports in support of its proof of claim?    11:44:50
7    A.   That is one of several documents    11:44:52
8 we're relying on.    11:44:54
9    Q.   Okay.    11:44:55
10      And is CAL FIRE -- sorry, is    11:44:56
11 FEMA relying on the CAL FIRE reports as part    11:45:01
12 of the factual basis for its proof of claim?    11:45:03
13      MR. TYE:  Object to the form.    11:45:10
14    A.   Yes, we're relying on the    11:45:16
15 various publicly available reports.    11:45:17
16    Q.   Okay.    11:45:18
17      And the question is, do the    11:45:19
18 CAL FIRE reports that are publicly available    11:45:21
19 state in them that PG&E intentionally caused    11:45:23
20 the Butte Fire?    11:45:25
21      MR. TYE:  Object to the form.    11:45:30
22      And also object to that question    11:45:31
23 as beyond the scope of the 30(b)(6)    11:45:32
24 notice.    11:45:34
25      The witness can answer to his    11:45:34
Page 110

1 personal knowledge for this issue, but    11:45:35
2 this testimony is not in his 30(b)(6)    11:45:37
3 capacity on behalf of FEMA.    11:45:40
4    A.   I don't recall seeing the    11:45:44
5 specific word "intentional" used in the    11:45:46
6 reports.    11:45:48
7    Q.   Okay.    11:45:48
8    A.   The CAL FIRE reports.    11:45:49
9    Q.   Did FEMA perform its own    11:45:53
10 investigation into the cause of the Butte    11:45:55
11 Fire?    11:45:58
12    A.   No, we did not.    11:46:00
13    Q.   Okay.    11:46:01
14      Does FEMA even employ    11:46:02
15 investigators that are qualified to    11:46:05
16 determine the cause of wildfires?    11:46:06
17      MR. TYE:  Object to that    11:46:10
18 question as beyond the scope of the    11:46:11
19 30(b)(6) notice.    11:46:13
20      The witness can answer to his    11:46:14
21 personal knowledge for this issue but    11:46:15
22 the testimony is not in his 30(b)(6)    11:46:17
23 capacity on behalf of FEMA.    11:46:20
24    A.   One component of FEMA is the    11:46:23
25 United States Fire Academy which trains    11:46:25
Page 111

1 state and local officials in the fire    11:46:27
2 services.  But I do not personally know    11:46:30
3 whether we employ individuals to do that or    11:46:34
4 if they're contractors to FEMA.    11:46:37
5    Q.   Okay.  Okay.    11:46:39
6      But you testified that with    11:46:43
7 respect to the Butte Fire FEMA did not    11:46:45
8 perform its own investigation into the cause    11:46:47
9 of the Butte Fire; correct?    11:46:49
10    A.   We would have considered that    11:46:52
11 duplicative of the efforts undertaken by the    11:46:53
12 state government.    11:46:56
13    Q.   Okay.    11:46:56
14      Other than CAL FIRE is FEMA    11:46:58
15 aware of any agency -- sorry, strike that.    11:47:01
16      Other than CAL FIRE is FEMA    11:47:04
17 aware of any other agency that performed an    11:47:06
18 investigation into the cause of the Butte    11:47:09
19 Fire?    11:47:10
20    A.   The CPUC safety enforcement    11:47:10
21 division also completed a report.    11:47:16
22    Q.   Did that report pertain to the    11:47:22
23 cause of the Butte Fire?    11:47:24
24      MR. TYE:  Object to the form.    11:47:28
25      Also object to that question as beyond    11:47:29
Page 112

1 the scope of the 30(b)(6) notice.    11:47:30
2      The witness can answer to his    11:47:31
3 personal knowledge for this issue, but    11:47:33
4 the testimony is not in his 30(b)(6)    11:47:34
5 capacity on behalf of FEMA.    11:47:37
6      We also noted in our letter that    11:47:40
7 the witness is not here to provide    11:47:41
8 testimony regarding CAL FIRE reports    11:47:44
9 where -- with respect to the specific    11:47:48
10 statements in the CAL FIRE reports    11:47:50
11 that are publicly available.    11:47:52
12    A.   I don't recall what the CPUC    11:47:59
13 reports say in regarding causation.  I do    11:48:02
14 know that they identify specific safety    11:48:08
15 violation and violations of state law.    11:48:10
16    Q.   Okay.    11:48:12
17      When it filed its proof of    11:48:12
18 claim, was FEMA relying on any other reports    11:48:16
19 besides the ones prepared by CAL FIRE that    11:48:18
20 purport to determine who caused the Butte    11:48:22
21 Fire?    11:48:24
22    A.   Again, we also would have been    11:48:28
23 relying on publicly available CPUC reports    11:48:31
24 and potentially the filings from the    11:48:33
25 criminal proceeding under Judge Alsup, and    11:48:35
Page 113

Veritext Legal Solutions
866-299-5127

Page 114

```
1   any other evidence that might have been        11:48:44
2   identified in our proof of claim or these      11:48:45
3   response to interrogatories I might have        11:48:48
4   failed to mention.                              11:48:50
5       Q.   Prior to filing its proof of           11:48:58
6   claim in the bankruptcy for the Butte Fire,     11:49:01
7   had taken any actions to notify PG&E of its     11:49:02
8   intent to assert claims against PG&E for the    11:49:06
9   Butte Fire?                                     11:49:07
10      MR. TYE:  Object to that                    11:49:08
11  question as beyond the scope of the             11:49:09
12  30(b)(6) notice.                                11:49:10
13      The witness can answer to his               11:49:12
14  personal knowledge for this issue, but          11:49:13
15  the testimony is not in his 30(b)(6)            11:49:13
16  capacity on behalf of FEMA.                     11:49:15
17      MR. VORA:  I'm sorry, could you             11:49:16
18  repeat that question?                           11:49:16
19  BY MR. GOODMAN:                                 11:49:16
20      Q.   Prior to filing its proof of           11:49:26
21  claim in the bankruptcy for the Butte Fire,     11:49:28
22  which is Exhibit Number 4, had FEMA taken       11:49:36
23  any actions to notify PG&E of its intent to     11:49:39
24  assert claims against PG&E for the Butte        11:49:42
25  Fire?                                           11:49:44
```

Page 115

```
1       MR. TYE:  The United States               11:49:46
2   objects to that question as beyond the         11:49:47
3   scope of the 30(b)(6) notice.                  11:49:48
4       The witness can answer his                 11:49:50
5   personal knowledge for this issue, but         11:49:52
6   the testimony is not in his 30(b)(6)           11:49:53
7   capacity on behalf of FEMA.                    11:49:55
8       Also I caution the witness not             11:49:57
9   to -- excuse me, strike that.                  11:49:58
10      Object to the question to the              11:50:04
11  extent that it calls for testimony             11:50:04
12  protected by attorney-client privilege         11:50:05
13  or any other applicable privilege.             11:50:07
14      A.   Yes, we had one meeting with the      11:50:15
15  debtor prior to filing our proof of claim.     11:50:17
16      Q.   When did that occur?                  11:50:19
17      A.   August of last year.  2019,           11:50:22
18  sorry.                                         11:50:27
19      Q.   Okay.                                 11:50:27
20      But prior to August of 2019 was            11:50:28
21  PG&E ever apprised by FEMA that FEMA was       11:50:34
22  intending to assert a claim against PG&E for   11:50:37
23  the Butte Fire?                                11:50:39
24      MR. TYE:  Object to that                   11:50:41
25  question as beyond the scope of the            11:50:42
```

Page 116

```
1   30(b)(6) notice.                               11:50:43
2       The witness can answer to his              11:50:44
3   personal knowledge for this issue, but         11:50:46
4   the testimony is not in his 30(b)(6)           11:50:47
5   capacity on behalf of FEMA.                    11:50:50
6       Also object to that question to            11:50:52
7   the extent it asks for material                11:50:53
8   covered by the attorney-client                 11:50:56
9   privilege or any other applicable              11:50:57
10  privilege.                                     11:50:59
11      A.   There were no other                   11:51:02
12  communications from FEMA prior to that         11:51:03
13  meeting with PG&E related to our claim.        11:51:05
14      Q.   Thank you.                            11:51:08
15      If you go back to Exhibit Number           11:51:11
16  5, which is the Camp Fire claim.  Can you go   11:51:13
17  to page 2 of the attachment?                   11:51:30
18      Do you see the reference in the            11:51:31
19  second full paragraph to the CAL FIRE news     11:51:33
20  release "CAL FIRE Investigators Determine      11:51:37
21  Cause of the Camp Fire" May 15, 2019?          11:51:39
22      A.   Yes.                                  11:51:39
23      Q.   Is this a report that FEMA is         11:51:44
24  relying on to support the Camp Fire claim?     11:51:45
25      A.   We're relying on the general         11:51:50
```

Page 117

```
1   information provided in the news release and   11:51:53
2   the CPUC report related to this fire.          11:51:56
3       Q.   Okay.                                 11:52:01
4       So the news release would be               11:52:02
5   part of the factual basis for FEMA's claim     11:52:03
6   against PG&E?                                  11:52:08
7       A.   Yes.                                  11:52:08
8       Q.   Can I hand you what's been            11:52:10
9   marked as Exhibit 8?                           11:52:11
10      [Deposition Exhibit 8 marked for           11:52:29
11  identification.]                               11:52:31
12  BY MR. GOODMAN:                                11:52:31
13      Q.   Can you identify this document?       11:52:32
14      A.   Yes.  This is a CAL FIRE news         11:52:35
15  release dated May 15, 2019 titled "CAL FIRE    11:52:38
16  Investigators Determine Cause of the Camp      11:52:42
17  Fire."                                         11:52:45
18      Q.   Is this the report referenced on      11:52:48
19  page 2 of the Camp Fire claim?                 11:52:49
20      A.   Yes, this is the referenced news      11:52:54
21  release.                                       11:52:55
22      Q.   Have you seen this document           11:52:55
23  before?                                        11:52:57
24      A.   Yes.                                  11:52:57
25      Q.   Did you review this document in       11:52:58
```

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 31 of 101

**Page 118**

1 preparation for today's deposition? 11:53:00
2     A.   Not in preparation for today but 11:53:01
3 I have previously reviewed it. 11:53:04
4     Q.   Okay. 11:53:05
5         Did you have any discussion 11:53:08
6 about this report with anyone other than an 11:53:10
7 attorney? 11:53:11
8     A.   No. 11:53:11
9     Q.   Can you identify any part of 11:53:14
10 this report where CAL FIRE stated that PG&E 11:53:15
11 intentionally caused the Camp Fire? 11:53:18
12         MR. TYE:   Object to the form of 11:53:22
13 the question. 11:53:23
14         Also object to that question as 11:53:23
15 beyond the scope of the 30(b)(6) 11:53:24
16 notice. 11:53:26
17         The witness can answer as to his 11:53:26
18 personal knowledge for the issue, but 11:53:28
19 the testimony is not in his 30(b)(6) 11:53:29
20 capacity on behalf of FEMA. 11:53:32
21     A.   In the news release, CAL FIRE -- 11:53:33
22 the news release states that: 11:53:38
23         "CAL FIRE has determined that 11:53:40
24 the Camp Fire was caused by electrical 11:53:40
25 transmission lines owned and operated by 11:53:44

**Page 119**

1 Pacific Gas and Electricity located in the 11:53:46
2 Pulga area." 11:53:49
3         Further down states that: 11:53:51
4         "The cause of the second fire 11:53:51
5 was determined to be vegetation into 11:53:52
6 electrical distribution lines owned and 11:53:56
7 operated by PG&E." 11:53:57
8     Q.   The question is can you identify 11:54:01
9 any part of this report where CAL FIRE 11:54:02
10 determined that PG&E intentionally caused 11:54:05
11 the Camp Fire? 11:54:07
12     A.   Not -- 11:54:10
13         MR. TYE:   Excuse me. 11:54:11
14         Object to the form of that 11:54:12
15 question. 11:54:13
16         Also object to that question as 11:54:13
17 beyond the scope of the 30(b)(6) 11:54:15
18 notice. 11:54:16
19         The witness can answer in his 11:54:16
20 personal knowledge for this issue, but 11:54:18
21 the testimony is not in his 30(b)(6) 11:54:19
22 capacity on behalf of FEMA. 11:54:22
23         MR. GOODMAN:   If this is beyond 11:54:23
24 the scope of the 30(b)(6) exam, then 11:54:24
25 would you agree that this report does 11:54:26

**Page 120**

1 not form part of the factual basis for 11:54:27
2 FEMA's claims against PG&E? 11:54:30
3         MR. TYE:   No, we don't agree to 11:54:31
4 that at all.   What we're talking about 11:54:32
5 is you're asking him to read specific 11:54:34
6 parts of the report.   As we provided 11:54:35
7 in our letter beforehand, he's not 11:54:37
8 here to provide specific parts of 11:54:38
9 reports.   He can tell you what the 11:54:40
10 factual basis a for the claims, but 11:54:43
11 he's not here to read specific parts 11:54:46
12 of the report, and that's what's 11:54:47
13 beyond the scope of the 30(b)(6) 11:54:49
14 notice. 11:54:50
15         MS. WELCHANS:   Can I just object 11:54:53
16 on behalf of CAL FIRE to the extent 11:54:55
17 you all are calling Exhibit 8 a 11:55:00
18 report? 11:55:01
19         MR. GOODMAN:   Yes. 11:55:02
20         MS. WELCHANS:   Thank you. 11:55:03
21     A.   I'm sorry, I lost track.   Could 11:55:07
22 you please repeat the question? 11:55:07
23 BY MR. GOODMAN: 11:55:09
24     Q.   Sure.   Yeah. 11:55:09
25         The question is, can you 11:55:09

**Page 121**

1 identify any part of this news release where 11:55:10
2 CAL FIRE in FEMA's view is determining that 11:55:13
3 PG&E intentionally caused the Camp Fire? 11:55:18
4         MR. TYE:   Object to the form of 11:55:25
5 that question. 11:55:26
6     A.   Similar to my response on the 11:55:28
7 prior discussion, on its own the news 11:55:30
8 release is not enough information.   We also 11:55:35
9 rely on the other reports available from the 11:55:38
10 CPUC and the criminal proceedings and other 11:55:40
11 documents referenced in the proof of claim, 11:55:45
12 our response to interrogatories, admission, 11:55:47
13 or any other evidence reference we may 11:55:50
14 develop in the course of the litigation. 11:55:52
15     Q.   Is FEMA contending that CAL FIRE 11:55:53
16 made specific findings regarding PG&E's 11:55:56
17 intent? 11:55:58
18         MR. TYE:   Object to the form of 11:56:05
19 that question. 11:56:06
20         And object to that question as 11:56:15
21 calling for a legal conclusion. 11:56:16
22     A.   The CAL FIRE reports are just 11:56:20
23 one piece of evidence that we're relying 11:56:22
24 upon.   So we're not using them for the 11:56:24
25 purpose, sole purpose of reaching that 11:56:31

1 conclusion.                              11:56:33
2      Q.   The question is, is FEMA         11:56:37
3 contending that CAL FIRE made specific     11:56:40
4 findings regarding FEMA -- regarding PG&E's 11:56:44
5 intent with respect to the wildfires?      11:56:48
6      A.   My understanding is that         11:56:50
7 CAL FIRE doesn't make those determinations. 11:56:53
8 They only determine the cause of the fire.  11:56:55
9      Q.   All right.                       11:56:55
10          CAL FIRE makes determinations    11:57:00
11 regarding the causes of fire but it doesn't 11:57:02
12 make findings regarding the intent of       11:57:04
13 parties; correct?                          11:57:08
14      A.   My understanding is they would   11:57:09
15 typically refer specific issues to the local 11:57:12
16 jurisdictions.  They don't make those       11:57:18
17 specific determinations themselves.         11:57:21
18      Q.   Okay.                            11:57:22
19          So given that you would agree     11:57:26
20 that there is no part of this news release  11:57:29
21 where CAL FIRE is stating that PG&E         11:57:31
22 intentionally caused the Camp Fire?         11:57:36
23      A.   Not in this news release alone.  11:57:39
24 As I stated we would also need to rely on   11:57:40
25 other reports and evidence.                 11:57:43
                                    Page 122

1      Q.   What reports would that be?       11:57:44
2      A.   Again, the publicly available     11:57:45
3 CPUC reports that show the history of PG&E's 11:57:47
4 issues with properly maintaining its        11:57:54
5 electrical system, and the other documents  11:57:57
6 referenced such as the criminal proceedings, 11:58:00
7 and then we may also rely on evidence also   11:58:02
8 produced throughout the litigation.         11:58:04
9      Q.   Did FEMA perform its own          11:58:06
10 investigation into the cause of the Camp    11:58:18
11 Fire?                                       11:58:20
12      A.   No, we did not.                   11:58:24
13      Q.   Other than CAL FIRE is FEMA       11:58:24
14 aware of any other agency that performed an  11:58:26
15 investigation into the cause of the Camp    11:58:28
16 Fire?                                       11:58:32
17      A.   Similarly, there is the CPUC      11:58:32
18 Safety Enforcement Division report as well.  11:58:35
19      Q.   When it filed its proof of claim  11:58:42
20 was FEMA relying on any reports that        11:58:45
21 purported to determine the cause of the Camp 11:58:49
22 Fire besides reports prepared by CAL FIRE or 11:58:52
23 the CPUC?                                   11:58:56
24      A.   We would also have relied on any  11:59:01
25 information available through the criminal   11:59:03
                                    Page 123

1 proceedings and anything else that we may    11:59:05
2 have identified in the proof of claim or the 11:59:08
3 response to interrogatories or requests for  11:59:11
4 admission.                                   11:59:12
5      Q.   What information was available     11:59:13
6 through the criminal proceeding that would   11:59:16
7 speak to the issue?                          11:59:18
8          MR. TYE:  Object to the form of    11:59:22
9      the question.                          11:59:24
10      A.   There has been various filings    11:59:26
11 in the criminal proceedings that go towards  11:59:28
12 the issue of PG&E's knowledge of the extent  11:59:31
13 of its electrical grid and what actions it's 11:59:38
14 taken to cure those deficiencies.           11:59:42
15      Q.   Are those publicly available?     11:59:44
16      A.   In the publicly available ones,   11:59:45
17 yes.                                        11:59:48
18      Q.   If I wanted to go find those      11:59:50
19 documents, where would I go?                11:59:52
20      A.   Probably the -- I don't know      12:00:09
21 what the name of the E-filing system is      12:00:10
22 but -- or which court it was filed in.  So I 12:00:16
23 would have to get back to you on that.       12:00:20
24      Q.   But these are documents that      12:00:23
25 would be available online?                  12:00:24
                                    Page 124

1          MR. TYE:  Object to the form of    12:00:29
2      that question.                         12:00:31
3      A.   I mean, they're available         12:00:36
4 through the electronic court filing system.  12:00:37
5 I'm not familiar with that since I don't     12:00:39
6 typically handle that type of litigation.    12:00:41
7      Q.   Okay.                             12:00:42
8          Go back to Exhibit Number 3, the   12:00:43
9 North Bay Fires claim.  If you go to page 2  12:00:47
10 of the attachment of the North Bay Fires    12:01:01
11 claim, do you see the reference in the third 12:01:03
12 full paragraph to the CAL FIRE news release  12:01:04
13 "CAL FIRE Investigators Determine Cause of   12:01:08
14 12 Wildfires in Mendocino, Humboldt, Butte,  12:01:10
15 Sonoma, Lake, and Napa Counties," June 8,    12:01:15
16 2018?                                       12:01:16
17      A.   Yes.                             12:01:18
18      Q.   Is this a report -- rather --     12:01:19
19 strike that.                               12:01:21
20          Is this a document that FEMA is    12:01:22
21 relying on to support the North Bay Fires    12:01:23
22 claim?                                      12:01:27
23      A.   Yes, as well as the reports that  12:01:29
24 are referenced --                          12:01:30
25      Q.   Go ahead and --                  12:01:32
                                    Page 125

32 (Pages 122 - 125)

Veritext Legal Solutions
800-899-5127

| | |
|---|---|
| 1 A. -- in this release. 12:01:35 | 1 Q. Now, you would agree with me as 12:03:54 |

Page 126:

```
1       A.   -- in this release.              12:01:35
2       Q.   -- hand you what's being marked   12:01:37
3  as Exhibit 9.                              12:01:39
4            [Deposition Exhibit 9 marked for  12:01:39
5       identification.]                       12:01:39
6  BY MR. GOODMAN:                             12:01:51
7       Q.   Can you identify this document?   12:01:51
8       A.   This is a CAL FIRE news release   12:01:54
9  dated June 8, 2018 titled "CAL FIRE         12:01:57
10 Investigators Determine Causes of 12        12:02:01
11 Wildfires in Mendocino, Humboldt, Butte,    12:02:03
12 Sonoma, Lake, and Napa Counties."           12:02:07
13      Q.   Is this document referenced on    12:02:09
14 page 2 of the North Bay Fires claim?        12:02:10
15      A.   Yes.                              12:02:10
16      Q.   Okay.                             12:02:10
17           Have you seen this document       12:02:13
18 before?                                     12:02:14
19      A.   Yes, I have.                      12:02:15
20      Q.   Okay.                             12:02:15
21           Can you identify any part of      12:02:18
22 this document where CAL FIRE determined that 12:02:19
23 PG&E intentionally caused any of the 2017    12:02:24
24 North Bay Fires?                            12:02:27
25           [Pause.]                          12:02:27
                                            Page 126
```

Page 127:

```
1       A.   The news release identifies       12:02:44
2  numerous locations where the causes of the  12:02:46
3  various fires were related to vegetation     12:02:49
4  coming into contact with PG&E powerlines or  12:02:54
5  failures of PG&E equipment.                  12:02:57
6            But to answer your question,       12:03:01
7  there is no statement in the news release    12:03:02
8  regarding anything related to intention.     12:03:06
9       Q.   Okay.                              12:03:10
10           Can you identify any part of       12:03:12
11 this document that indicates to you as the   12:03:13
12 30(b)(6) designee that PG&E intentionally    12:03:17
13 caused any of the 2017 North Bay Fires?      12:03:19
14      MR. TYE:   Object to the form of        12:03:22
15      that question.                          12:03:24
16      A.   Similar to my prior responses,     12:03:27
17 not on its own.  We would need to rely on    12:03:31
18 the additional evidence we've previously     12:03:33
19 discussed, such as the publicly available    12:03:35
20 reports from CAL FIRE, CPUC, the publicly    12:03:38
21 available documents from the criminal        12:03:42
22 proceeding and anything else I might have    12:03:45
23 failed to mention from our proof of claim or 12:03:48
24 response to interrogatories or response to   12:03:50
25 admission.                                   12:03:52
                                            Page 127
```

Page 128:

```
1       Q.   Now, you would agree with me as   12:03:54
2  the 30(b)(6) designee that this document     12:03:56
3  does not state that PG&E intentionally       12:03:58
4  caused any of the 2017 North Bay Fires?      12:04:00
5       MR. TYE:   Object to the form of        12:04:03
6       that question.                          12:04:04
7       A.   This document on its own, no.      12:04:07
8  We would need to rely on the other evidence  12:04:10
9  as well.                                     12:04:13
10      Q.   Okay.                              12:04:13
11           Did FEMA perform its own           12:04:15
12 investigation into the cause of any of the   12:04:17
13 2017 North Bay Fires?                        12:04:20
14      A.   No.                                12:04:20
15      Q.   Other than CAL FIRE is FEMA        12:04:25
16 aware of any other agency that performed an  12:04:27
17 investigation into the cause of any of the   12:04:29
18 2017 North Bay Fires?                        12:04:32
19      A.   Just the CPUC.                     12:04:34
20      Q.   Okay.                              12:04:35
21           When it filed its proof of         12:04:37
22 claim, was FEMA relying on any reports       12:04:39
23 besides the one prepared by CAL FIRE and the 12:04:42
24 CPUC regarding the cause of the 2017 North   12:04:48
25 Bay Fires?                                   12:04:51
                                            Page 128
```

Page 129:

```
1       A.   Again, I would just reference      12:04:55
2  back to the proofs of claim and our          12:04:56
3  responses to interrogatories and requests    12:04:58
4  for admissions, in case I failed to mention  12:04:59
5  anything else.  But those would be the       12:05:03
6  primary documents, yes.                      12:05:04
7       Q.   Okay.                              12:05:05
8       MR. TYE:   Is this a good time          12:05:11
9  for a break?                                 12:05:12
10      MR. GOODMAN:   Yeah.  Take a            12:05:12
11      break for lunch.                        12:05:13
12      THE VIDEOGRAPHER:   Stand by.           12:05:16
13      This marks the end of media             12:05:17
14      number 2.  Going off the record at      12:05:18
15      12:05 p.m.                              12:05:20
16      [Luncheon recess at 12:05 p.m.]         12:05:21
17           12:05:21
                                            Page 129
```

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 34 of 101

| | |
|---|---|
| 1      AFTERNOON SESSION      12:08:32 | 1   Fire, the 2017 North Bay Fires, or the 2018   12:51:26 |

1      AFTERNOON SESSION      12:08:32
2      [Resuming at 12:48 p.m.]      12:08:32
3      THE VIDEOGRAPHER: We are back    12:45:22
4   on the record at 12:48 p.m., and this     12:48:50
5   marks the beginning of media number 3    12:48:53
6   in the deposition of John-Paul      12:48:55
7   Henderson.      12:48:58
8      EXAMINATION CONTINUING      12:49:00
9   MR. GOODMAN:      12:49:00
10   Q.   Okay. I'm going to hand you    12:49:00
11   what we've marked as Exhibit 10.      12:49:01
12      [Deposition Exhibit 10 marked    12:49:01
13   for identification.]      12:49:01
14   BY MR. GOODMAN:      12:49:25
15   Q.   Document is titled "Study of     12:49:25
16   Risk Assessment and PG&E's GRC" dated May 6,   12:49:27
17   2013. Can you identify this document?     12:49:32
18   A.   Yes, it's the study of risk      12:49:41
19   assessment and PG&E's GRC by the CPUC dated    12:49:43
20   May 6, 2013.      12:49:49
21   Q.   Have you seen this document     12:49:51
22   before?      12:49:52
23   A.   I personally have not seen this    12:49:56
24   document before.      12:49:58
25   Q.   Okay.      12:49:59

Page 130

---

1      Is FEMA relying on this document    12:50:02
2   to support any of its claims against PG&E?    12:50:03
3   A.   Yes, this document is referenced    12:50:06
4   in our response to the interrogatories.     12:50:08
5   Q.   Okay.      12:50:15
6      If you go back to Exhibit      12:50:15
7   Number 6. I believe it's on page 5,     12:50:17
8   footnote number 1.      12:50:27
9      Is this report that we've marked    12:50:36
10   as Exhibit 10 the report that is referenced    12:50:37
11   in footnote number 1 in FEMA's response to    12:50:39
12   the TCC's interrogatories?      12:50:42
13   A.   It does appear to be that      12:50:58
14   report.      12:51:00
15   Q.   Okay.      12:51:00
16      You would agree with me that     12:51:00
17   this report predates the 2015 Butte Fire,    12:51:02
18   the 2017 North Bay Fires, and the 2018 Camp   12:51:07
19   Fire?      12:51:12
20   A.   Yes, it does predate those     12:51:14
21   fires.      12:51:15
22   Q.   Okay.      12:51:15
23      Can you identify any part of     12:51:16
24   this report where the CPUC determined that    12:51:18
25   PG&E intentionally caused the 2015 Butte    12:51:22

Page 131

---

1   Fire, the 2017 North Bay Fires, or the 2018   12:51:26
2   Camp Fire?      12:51:31
3      MR. TYE: Object to that      12:51:33
4   question as beyond the scope of the     12:51:34
5   30(b)(6) notice.      12:51:35
6      The witness can answer on his    12:51:36
7   personal knowledge for this issue, but     12:51:40
8   this testimony is not in his 30(b)(6)     12:51:42
9   capacity on behalf of FEMA.      12:51:46
10   A.   This report predates those     12:51:48
11   fires. So I can't point to it in relation    12:51:51
12   to the fires but it's being relied on for    12:51:56
13   other purposes.      12:51:58
14   Q.   What other purposes?      12:51:59
15   A.   To establish the history of     12:52:00
16   issues related to PG&E's maintenance of its    12:52:06
17   electrical system.      12:52:12
18   Q.   Would you agree with me as     12:52:15
19   FEMA's Rule 30(b)(6) designee that this does   12:52:19
20   not indicate that PG&E intentionally caused    12:52:23
21   any wildfires?      12:52:25
22      MR. TYE: Object to form of that    12:52:27
23   question.      12:52:28
24   A.   I would agree that this report    12:52:29
25   does not provide the information related to    12:52:30

Page 132

---

1   the fires which are subject to our proofs of   12:52:33
2   claim as it predates those fires.      12:52:36
3   Q.   Okay.      12:52:37
4      MR. GOODMAN: Go ahead and hand    12:52:58
5   you what we've marked as Exhibit      12:52:59
6   Number 11.      12:53:01
7      [Deposition Exhibit 11 marked    12:53:20
8   for identification.]      12:53:21
9   MR. GOODMAN:      12:53:21
10   Q.   Can you identify this document?    12:53:29
11   A.   This is an audit of PG&E's North   12:53:30
12   Valley Division conducted by the CPUC dated    12:53:36
13   September 22, 2014.      12:53:40
14   Q.   Have you seen this document     12:53:42
15   before?      12:53:43
16   A.   Yes, I have.      12:53:45
17   Q.   Did you review this document in    12:53:47
18   preparation for today's deposition?     12:53:49
19   A.   Yes, I did.      12:53:50
20   Q.   Is this a document that FEMA is    12:53:52
21   relying on to support its claims against     12:53:54
22   PG&E?      12:53:57
23   A.   Yes, it is one of the documents.    12:53:59
24   Q.   Can you go back to Exhibit 6,     12:54:01
25   the interrogatory responses? If you go to    12:54:04

Page 133

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 35 of 101

1 page 6, footnote number 2, do you see that?  12:54:08
2  A.  Yes.  12:54:22
3  Q.  Is this report that we have  12:54:22
4 marked as Exhibit Number 11 the report that  12:54:23
5 is referenced in footnote number 2?  12:54:25
6  A.  Yes, it appears to be that same  12:54:29
7 document.  12:54:30
8  Q.  Do you know why this report is  12:54:31
9 referenced in footnote number 2 on page 6 of  12:54:33
10 FEMA's interrogatory responses?  12:54:36
11  MR. TYE:  Object to the form.  12:54:37
12  A.  This document, among others,  12:54:42
13 provides evidence of the known safety issues  12:54:45
14 and violations related to PG&E's electrical  12:54:51
15 system.  12:54:55
16  Q.  Would you agree that this report  12:54:56
17 predates the 2015 Butte Fire, the 2017 North  12:54:59
18 Bay Fires, and the 2018 Camp Fire?  12:55:04
19  A.  Yes, it is dated 2014 so it  12:55:09
20 would predate all of those fires.  12:55:10
21  Q.  Can you identify any part of  12:55:12
22 this report where the PC -- strike that.  12:55:13
23  Can you identify any part of  12:55:18
24 this report where the CPUC determined that  12:55:19
25 PG&E intentionally caused any wildfires?  12:55:23

Page 134

1  MR. TYE:  The United States  12:55:25
2 objects to that question as beyond the  12:55:26
3 scope of the 30(b)(6) notice.  12:55:27
4  The witness can answer as to his  12:55:28
5 personal knowledge of this issue, but  12:55:31
6 the testimony is not in his 30(b)(6)  12:55:32
7 capacity on behalf of FEMA.  12:55:34
8  A.  All right.  Similar to the prior  12:55:37
9 document we discussed, this report relates  12:55:39
10 to the intentional omissions of PG&E related  12:55:42
11 to its electrical system, related to known  12:55:46
12 issues on safety issues and violations.  12:55:53
13  But to answer your question  12:55:59
14 would not go directly towards the specific  12:56:00
15 fires in the proofs of claim.  12:56:03
16  Q.  So there is nothing in this  12:56:12
17 document that speaks to the issue of PG&E's  12:56:13
18 intent?  12:56:15
19  MR. TYE:  Object to the form.  12:56:18
20  Objection, mischaracterizes prior  12:56:19
21 testimony.  12:56:20
22  A.  This, as I stated in my previous  12:56:25
23 response, this document goes towards  12:56:27
24 establishing intentional omissions of the  12:56:29
25 PG&E -- of PG&E prior to the fires which  12:56:33

Page 135

1 resulted in the unsafe electrical system.  12:56:39
2  Q.  Okay.  12:56:39
3  Can you show where in this  12:56:41
4 document it discusses intentional omissions?  12:56:43
5  MR. TYE:  United States rejects  12:56:46
6 that question as beyond the scope of  12:56:47
7 the 30(b)(6) notice.  12:56:48
8  The witness can answer as to his  12:56:49
9 personal knowledge for this issue, but  12:56:51
10 that testimony is not in his 30(b)(6)  12:56:52
11 capacity on behalf of FEMA.  12:56:55
12  A.  Okay.  As one example, on  12:57:00
13 page -- it's labeled page 2 of 10 but it's  12:57:08
14 really page 3 of the exhibit since there is  12:57:10
15 a cover letter.  Refers to over 3,000 work  12:57:13
16 orders that weren't completed by scheduled  12:57:19
17 due dates.  So this is an example of issues  12:57:23
18 identified where PG&E knew of issues that  12:57:27
19 needed to be corrected but failed to do so.  12:57:30
20  Q.  Is this part of the factual  12:57:34
21 basis for FEMA's claims against PG&E?  12:57:35
22  A.  This document among many others.  12:57:37
23  Q.  Okay.  12:57:37
24  But to be clear, there's nothing  12:57:47
25 in this document that specifically speaks to  12:57:48

Page 136

1 the issue of PG&E's intent with respect to  12:57:51
2 any of the wildfires?  12:57:54
3  MR. TYE:  Object to the form.  12:57:56
4  Objection, mischaracterizes prior  12:57:57
5 testimony.  12:57:59
6  A.  As I stated before, we believe  12:58:00
7 it does speak towards the issue of  12:58:02
8 intentional omission since it provides  12:58:04
9 information on PG&E's knowledge of safety  12:58:07
10 issues and violations that were not  12:58:11
11 corrected.  12:58:14
12  Q.  Is FEMA relying on any alleged  12:58:15
13 intentional omissions that occurred on or  12:58:18
14 after January 1 of 2015?  12:58:23
15  A.  Could you just repeat the  12:58:33
16 question one more time?  12:58:34
17  Q.  Yeah.  12:58:36
18  Is FEMA relying on any alleged  12:58:36
19 intentional omissions that were committed by  12:58:38
20 PG&E that occurred after January 1 of 2015?  12:58:41
21  MR. TYE:  Object to the form.  12:58:47
22  Objection, calls for a legal  12:58:49
23 conclusion.  12:58:50
24  A.  Yes, there is continued evidence  12:59:06
25 of intentional omissions that occurred after  12:59:09

Page 137

35 (Pages 134 - 137)

Veritext Legal Solutions
866-299-5127

Page 138:

1 January 1, 2015. 12:59:14
2 Q. Okay. 12:59:15
3 A. Related to the fires in our 12:59:16
4 proofs of claim. 12:59:18
5 Q. And I'm correct that you can't 12:59:22
6 specifically show me where in this report 12:59:24
7 dated December 22, 2014 it indicates that 12:59:29
8 PG&E intended to cause any wildfires? 12:59:34
9 MR. TYE: Object to the form and 12:59:38
10 objection, mischaracterizes prior 12:59:38
11 testimony. 12:59:41
12 A. Again, as I stated before, this 12:59:43
13 report does provide some evidence of the 12:59:45
14 knowledge that PG&E had of the condition of 12:59:49
15 its system and its failure to correct those 12:59:52
16 issues, which we would posit go towards 12:59:54
17 intentional omissions. 12:59:57
18 Q. Okay. 12:59:58
19 Well, does anything in this 13:00:00
20 report speak to the issue of intentional 13:00:01
21 actions? 13:00:04
22 MR. TYE: Object to the form. 13:00:06
23 A. In this particular report I do 13:01:13
24 not see anything that would lead me to point 13:01:15
25 to an intentional action, just the 13:01:21
Page 138

Page 139:

1 omissions. 13:01:23
2 Q. So far in this deposition have 13:01:23
3 we looked at any documents prepared by 13:01:33
4 CAL FIRE or the CPUC that speak to 13:01:36
5 intentional actions by PG&E? 13:01:38
6 MR. TYE: Object to the form of 13:01:44
7 that question and object -- object to 13:01:45
8 the form of that question. 13:01:51
9 A. Frankly, I can't really answer 13:01:53
10 that question because I would need to look 13:01:55
11 through Exhibit 10 again, which is 100 13:01:57
12 and -- almost 200 pages. So I wouldn't feel 13:02:02
13 comfortable definitively ruling out whether 13:02:05
14 there is anything in this document without 13:02:09
15 reviewing it again. 13:02:11
16 Q. But Exhibit 10 is a document 13:02:13
17 that FEMA is relying on to support the 13:02:14
18 factual basis for its proof of claim; 13:02:17
19 correct? 13:02:20
20 A. Correct. 13:02:20
21 Q. And this is a document that you 13:02:21
22 had not reviewed prior to today's 13:02:24
23 deposition; correct? 13:02:26
24 A. Not personally. However, 13:02:27
25 employees at the agency have. 13:02:30
Page 139

Page 140:

1 Q. Do you know who? 13:02:31
2 A. This particular document would 13:02:34
3 have been reviewed most likely by Ann 13:02:35
4 Winterman, who works for me, and I don't 13:02:42
5 know if there's any other officials or not. 13:02:43
6 Q. Okay. 13:02:45
7 Go ahead and look at Exhibit 12. 13:02:49
8 MR. GOODMAN: And mark this 13:02:49
9 document as Exhibit 12. 13:02:49
10 [Deposition Exhibit 12 marked 13:02:52
11 for identification.] 13:02:53
12 MR. GOODMAN: 13:02:53
13 Q. Can you identify this document? 13:03:23
14 A. This is the draft CPUC report 13:03:24
15 titled Order Instituting Investigation in 13:03:33
16 the Creation of a Shared Database or 13:03:36
17 Statewide Census of Utility Poles and 13:03:39
18 Conduit. 13:03:42
19 Q. Have you seen this document 13:03:44
20 before? 13:03:46
21 A. I have not personally reviewed 13:03:51
22 this document, but I am aware that it's been 13:03:52
23 referenced in our response to the 13:03:54
24 interrogatories. 13:03:55
25 Q. Where is it referenced in the 13:03:56
Page 140

Page 141:

1 response to the interrogatories? 13:03:58
2 A. Looks like it's on page 6, line 13:04:03
3 -- the sentence starting on line 1 through 13:04:10
4 4. 13:04:13
5 Q. Is this the report that's 13:04:16
6 identified in footnote number 3 on page 6? 13:04:19
7 A. Yes, it is. 13:04:23
8 Q. Okay. 13:04:23
9 A. Appears to be so. 13:04:25
10 Q. Do you know why this report is 13:04:26
11 referenced in footnote number 3 on page 6 of 13:04:27
12 FEMA's interrogatory responses? 13:04:31
13 A. Yes, this report provides 13:04:32
14 additional information related to the 13:04:36
15 intentional omissions of the debtor in terms 13:04:39
16 of the proper maintenance and care of its 13:04:43
17 electrical system. 13:04:48
18 Q. Can you identify any part of 13:04:49
19 this report where the CPUC determined that 13:04:51
20 PG&E intentionally caused any wildfires? 13:04:55
21 MR. TYE: United States objects 13:04:58
22 to that question as beyond the scope 13:04:58
23 of the 30(b)(6) notice. 13:04:59
24 The witness can answer as to his 13:05:01
25 personal knowledge for this issue, but 13:05:03
Page 141

Page 142

```
 1    the testimony is not in his 30(b)(6)      13:05:04
 2    capacity on behalf of FEMA.               13:05:06
 3         MR. GOODMAN:  Again, we              13:05:08
 4    disagree.                                 13:05:09
 5    A.    Okay.  Like the other documents,    13:05:13
 6  the agency put this forward because it      13:05:14
 7  provides information related to the         13:05:18
 8  intentional omissions of the debtor by      13:05:20
 9  showing that they were on notice of the     13:05:23
10  maintenance and issues and that such issues 13:05:26
11  have caused property damage and loss of     13:05:30
12  life.                                       13:05:33
13    Q.    Okay.                               13:05:33
14         But is there any findings in         13:05:33
15  this report with respect to PG&E's intent to 13:05:35
16  cause any wildfires?                        13:05:40
17         MR. TYE:  The United States          13:05:42
18    objects to that question as beyond the    13:05:43
19    scope of the 30(b)(6) notice.             13:05:44
20         The witness can answer as to his     13:05:46
21    personal knowledge for this issue, but    13:05:47
22    that testimony is not in his 30(b)(6)     13:05:48
23    capacity on behalf of FEMA.               13:05:51
24         MR. GOODMAN:  Again, we              13:05:52
25    disagree.  It is.                         13:05:53
```
                                              Page 142

Page 143

```
 1    A.    I don't believe this report         13:06:11
 2  provides its own conclusions on that.  But, 13:06:11
 3  again, it provides general evidence that    13:06:14
 4  would support the agency's position         13:06:16
 5  regarding intentional omission.             13:06:18
 6    Q.    And what evidence is that?          13:06:20
 7    A.    Generally speaking it would be      13:06:26
 8  the information regarding the lack of        13:06:27
 9  sufficient maintenance activities by PG&E    13:06:35
10  and the fact that such issues have created   13:06:37
11  property damage and loss of life.           13:06:40
12    Q.    But is there any findings in        13:06:48
13  this report regarding PG&E's intent,        13:06:49
14  specifically the intent to cause a wildfire? 13:06:55
15         MR. TYE:  Objection, asked and       13:06:58
16    answered.                                 13:07:00
17    A.    Well, as I previously stated I      13:07:09
18  have not personally reviewed this entire    13:07:11
19  report, so I'm unable to answer the question 13:07:13
20  fully.                                      13:07:15
21    Q.    Is this a document that FEMA is     13:07:18
22  relying on to support the factual basis for 13:07:19
23  its claims against PG&E?                    13:07:22
24    A.    Yes, it's one of the many          13:07:26
25  documents cited in our response to the      13:07:27
```
                                              Page 143

Page 144

```
 1  interrogatories.                            13:07:29
 2    Q.    What part of this document          13:07:31
 3  supports the factual basis for FEMA's claims 13:07:32
 4  against PG&E?                               13:07:34
 5         MR. TYE:  Again, United States       13:07:35
 6    objects to that question as beyond the    13:07:36
 7    scope of the 30(b)(6) notice.             13:07:38
 8         The witness can answer as to his     13:07:40
 9    personal knowledge for the issue, but     13:07:41
10    the testimony is not in his 30(b)(6)      13:07:43
11    capacity on behalf of FEMA.               13:07:45
12    A.    As I stated in my prior            13:07:49
13  response, I personally have not reviewed    13:07:51
14  this particular report.  It was reviewed by 13:07:53
15  another individual in my office, so I can't 13:07:55
16  point to specific pages.                    13:07:59
17         MR. GOODMAN:  I would like to        13:08:00
18    hand you what is being marked as          13:08:27
19    Exhibit 13.                               13:08:33
20         [Deposition Exhibit 13 marked        13:09:02
21    for identification.]                      13:09:04
22  MR. GOODMAN:                                13:09:04
23    Q.    Can you identify the document       13:09:08
24  we've marked as Exhibit 13?                 13:09:11
25    A.    This is the CPUC Safety and         13:09:17
```
                                              Page 144

Page 145

```
 1  Enforcement Division Incident Investigation 13:09:22
 2  Report for the Butte Fire dated March 29,   13:09:26
 3  2017.                                       13:09:35
 4    Q.    Is this a document that FEMA is     13:09:36
 5  relying on to support the factual basis for 13:09:38
 6  its claims against PG&E?                    13:09:40
 7    A.    Yes.                                13:09:40
 8    Q.    Can you identify for me any part    13:09:47
 9  of this report that indicates that PG&E     13:09:49
10  intentionally caused any wildfires?         13:09:54
11         MR. TYE:  United States objects      13:09:57
12    to that question as beyond the scope      13:09:58
13    of the 30(b)(6) notice.                   13:09:59
14         The witness can answer to his        13:10:01
15    personal knowledge for this issue, but    13:10:02
16    that testimony is not in his 30(b)(6)     13:10:03
17    capacity on behalf of FEMA.               13:10:06
18    A.    So as I've stated many times,      13:10:38
19  FEMA is alleging intentional omissions by   13:10:40
20  the debtor that resulted in the fires.  This 13:10:42
21  particular report identifies several        13:10:45
22  violations of state law related to the Butte 13:10:50
23  Fire.                                       13:11:04
24    Q.    Does this report discuss any        13:11:04
25  intentional actions taken by PG&E that would 13:11:06
```
                                              Page 145

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 38
of 101

1 have caused the Butte Fire?                13:11:09
2         MR. TYE:  Object to the form of     13:11:13
3 that question.  Also the United States      13:11:14
4 objects to that question as beyond the      13:11:16
5 scope of the 30(b)(6) notice.               13:11:17
6         The witness can answer as to his    13:11:19
7 personal knowledge of this issue, but       13:11:20
8 his testimony is it not in his              13:11:22
9 30(b)(6) capacity on behalf of FEMA.        13:11:24
10    A.   This report does not appear to      13:11:39
11 contain any information related to          13:11:40
12 intentional acts, only omissions by the     13:11:42
13 debtor.                                     13:11:43
14    Q.   What intentional omissions does     13:12:02
15 this report discuss that would be omissions 13:12:05
16 that FEMA would be relying on to support its 13:12:07
17 claims?                                     13:12:10
18        MR. TYE:  Objection, calls for      13:12:11
19 legal conclusion.                           13:12:13
20        Also the United States objects      13:12:17
21 to that question as beyond the scope        13:12:18
22 of the 30(b)(6) notice.                     13:12:19
23        The witness can answer to his       13:12:21
24 personal knowledge for this issue, but      13:12:22
25 his testimony is not in his 30(b)(6)        13:12:24

1 capacity on behalf of FEMA.                 13:12:27
2    A.   This report identifies specific     13:12:31
3 omissions that the debtor -- by the debtor  13:12:35
4 related to vegetation management which      13:12:39
5 combined with information in our other      13:12:41
6 evidence shows the knowledge of the         13:12:44
7 potential outcome of those failure -- of    13:12:47
8 those omissions.                            13:12:50
9    Q.   Okay.                               13:12:50
10        Where is that in the report?        13:12:52
11    A.   Again, this specific report        13:12:58
12 specifically addresses the issue of PG&E's  13:13:01
13 improper vegetation management activities   13:13:04
14 related to the Butte Fire and violations of 13:13:06
15 state law.                                  13:13:10
16    Q.   Okay.                              13:13:10
17    A.   And maintenance of conductors,     13:13:15
18 it looks -- yes.                            13:13:19
19        MR. GOODMAN:  Go ahead and mark     13:13:20
20 Exhibit Number 14.                          13:13:24
21        [Deposition Exhibit 14 marked       13:13:41
22 for identification.]                        13:13:42
23 MR. GOODMAN:                                13:13:42
24    Q.   Can you identify this document?    13:13:44
25    A.   Yes, this is the CPUC Safety and   13:13:47

1 Enforcement Division Incident Investigation 13:13:53
2 Report For the Camp Fire dated November 8,  13:13:54
3 2019.                                       13:13:58
4    Q.   Is this a document that FEMA is     13:13:59
5 relying on to support the factual basis for 13:14:00
6 its claims against PG&E?                     13:14:03
7    A.   Yes.                               13:14:03
8    Q.   Could you identify any part of      13:14:08
9 this report that indicates that PG&E        13:14:11
10 intentionally caused any wildfires?         13:14:14
11        MR. TYE:  United States objects     13:14:16
12 to that question as beyond the scope        13:14:17
13 of the 30(b)(6) notice.                     13:14:18
14        The witness can answer as to his    13:14:19
15 personal knowledge for this issue, but      13:14:21
16 the testimony is not in his 30(b)(6)        13:14:22
17 capacity on behalf of FEMA.                 13:14:24
18    A.   Again, FEMA is alleging            13:14:31
19 intentional omissions by the debtor.  This  13:14:33
20 particular report provides evidence of 12   13:14:35
21 violations of -- related to the -- from the 13:14:38
22 CPUC, which provides evidence of their --   13:14:43
23 again, their omissions in operating a safe  13:14:49
24 electrical system, which ended up sparking  13:14:53
25 the Camp Fire.                              13:14:55

1    Q.   Okay.                               13:14:55
2        Does this report specify any         13:14:58
3 intentional actions taken by PG&E?          13:15:00
4        MR. TYE:  The United States          13:15:05
5 objects to that question as beyond the      13:15:06
6 scope of the 30(b)(6) notice.               13:15:08
7        The witness can answer as to his     13:15:09
8 personal knowledge for this issue, but      13:15:11
9 his testimony is not in his 30(b)(6)        13:15:13
10 testimony on behalf of FEMA.                13:15:16
11    A.   I don't see anything in this       13:15:50
12 report that would relate to intentional    13:15:51
13 actions, just omissions.                    13:15:53
14    Q.   Okay.  I'm going to hand you       13:15:54
15 what we've marked as Exhibit 15?            13:16:08
16        [Deposition Exhibit 15 marked       13:16:31
17 for identification.]                        13:16:33
18 MR. GOODMAN:                                13:16:33
19    Q.   Can you identify this document?    13:16:34
20    A.   This is the CPUC Safety and        13:16:38
21 Enforcement Division Incident Investigation 13:16:46
22 Report Related to the Nuns Fire dated April 13:16:47
23 30, 2019.                                   13:16:52
24    Q.   Is this a document that FEMA is    13:16:55
25 relying on to support the factual basis for 13:16:57

Veritext Legal Solutions
866/299-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/20/20   Entered: 02/19/20 14:18:03   Page 39
of 101

1 its claims against PG&E? 13:17:00
2    A.   Yes. 13:17:04
3    Q.   Can you identify any part of 13:17:04
4 this document where the CPUC determined that 13:17:06
5 PG&E intentionally caused any wildfires? 13:17:08
6        MR. TYE:  United States objects 13:17:11
7 to that question as beyond the scope 13:17:11
8 of the 30(b)(6) notice. 13:17:13
9        The witness can answer as to his 13:17:14
10 personal knowledge for this issue, but 13:17:15
11 this testimony is not in his 30(b)(6) 13:17:17
12 capacity on behalf of FEMA. 13:17:21
13    A.   Similar to the other reports, 13:17:24
14 FEMA is utilizing this document as evidence 13:17:26
15 of intentional omissions by the debtor 13:17:28
16 related to violations of state law. 13:17:32
17    Q.   Are there any intentional 13:17:36
18 actions referenced in this report that FEMA 13:17:38
19 is relying on? 13:17:40
20        MR. TYE:  Same objection as to 13:17:42
21 scope. 13:17:43
22    A.   I do not see anything in this 13:17:51
23 report that would relate to intentional 13:18:14
24 actions, just omissions. 13:18:16
25        MR. GOODMAN:  Go ahead and mark 13:18:17

1        Exhibit Number 16. 13:18:34
2        [Deposition Exhibit 16 marked 13:18:34
3 for identification.] 13:18:35
4 MR. GOODMAN: 13:18:35
5    Q.   Can you identify this document? 13:18:45
6    A.   This is the CPUC Safety and 13:18:46
7 Enforcement Division Incident Investigation 13:18:50
8 Report for the Atlas Fire dated May 2, 2019. 13:18:51
9    Q.   Is this a document that FEMA is 13:18:55
10 relying on to support the factual basis for 13:18:59
11 its claims against PG&E? 13:19:02
12    A.   Yes. 13:19:02
13    Q.   Could you identify for me any 13:19:06
14 part of this report that indicates that PG&E 13:19:09
15 intentionally caused any wildfires? 13:19:13
16        MR. TYE:  The United States 13:19:16
17 objects that question as beyond the 13:19:16
18 scope of the 30(b)(6) notice. 13:19:18
19        The witness can answer as to his 13:19:19
20 personal knowledge for this issue, but 13:19:21
21 the testimony is not in his 30(b)(6) 13:19:22
22 capacity on behalf of FEMA. 13:19:24
23    A.   Similar to the other reports, 13:19:28
24 FEMA is relying on this document for 13:19:30
25 information of -- related to intentional 13:19:33

1 omissions by the debtor, specifically 13:19:36
2 related to the five violations of state law 13:19:38
3 identified by the CPUC. 13:19:41
4    Q.   Is it relying on this document 13:19:44
5 in support of any intentional actions taken 13:19:45
6 by PG&E? 13:19:48
7        MR. TYE:  Same objection as to 13:19:49
8 scope. 13:19:50
9    A.   No, this report would not 13:20:04
10 provide evidence of intentional actions, 13:20:05
11 just omissions. 13:20:07
12    Q.   And what omissions would that 13:20:09
13 be? 13:20:11
14        MR. TYE:  Same objection as to 13:20:12
15 scope. 13:20:13
16    A.   The report identifies several 13:20:24
17 violations of state law, including improper 13:20:27
18 vegetation management and maintenance issues 13:20:30
19 of equipment. 13:20:45
20    Q.   Okay. 13:20:45
21        We've now been through three 13:20:57
22 CAL FIRE press releases and I believe seven 13:21:01
23 CPUC reports.  Do you agree with me that 13:21:05
24 none of these documents contain any findings 13:21:11
25 that PG&E's goal or desire was to cause any 13:21:17

1 wildfires? 13:21:24
2        MR. TYE:  Object to the form. 13:21:26
3    A.   As stated previously, FEMA's 13:21:35
4 position is that intentional omissions by 13:21:37
5 the debtor caused the fire incidents but we 13:21:40
6 do not allege that that was the goal of 13:21:44
7 PG&E. 13:21:46
8    Q.   Okay. 13:21:46
9        And you would agree that none of 13:21:49
10 the reports that we have reviewed by the 13:21:51
11 CPUC and none of the press releases that we 13:21:55
12 have reviewed from CAL FIRE make any 13:21:58
13 findings as to PG&E's goals or desires 13:22:04
14 pertaining to causing any wildfires? 13:22:10
15        MR. TYE:  Object to the form and 13:22:16
16 objection, calls for a legal 13:22:17
17 conclusion. 13:22:18
18    A.   The various reports we've 13:22:21
19 discussed all go towards demonstrating 13:22:22
20 intentional omissions by PG&E resulting in 13:22:26
21 the conditions leading to the wildfires, but 13:22:29
22 I would agree that they do not show any goal 13:22:31
23 or desire of PG&E for a fire to occur. 13:22:35
24        MR. HEYN:  Mat Heyn. 13:22:37
25        [Voice from teleconference.] 13:22:50

Case: 19-30088   Doc# 5834-1   Filed: 02/20/20   Entered: 02/19/20 14:18:03   Page 40
of 101

1     MR. GOODMAN: Take a quick    13:22:53
2 break? Getting dry in the mouth.    13:22:55
3 Thanks. Like five minutes.    13:22:57
4     THE VIDEOGRAPHER: Going off the   13:23:02
5 record at 1:23 p.m.    13:23:03
6    [Recess at 1:23 p.m.]    13:23:05
7    [Resuming at 1:13 p.m.]    13:23:11
8     THE VIDEOGRAPHER: We are back   13:30:08
9 on the record at 1:30 p.m., and this   13:30:14
10 marks -- sorry, we're continuing media   13:30:17
11 number 3.    13:30:19
12    EXAMINATION CONTINUING    13:30:19
13 MR. GOODMAN:    13:30:19
14   Q. Okay. So you previously   13:30:22
15 testified that FEMA is relying on reports   13:30:24
16 that were prepared by CAL FIRE; correct?   13:30:27
17   A. Yes.    13:30:27
18   Q. Okay.    13:30:27
19    Did FEMA take any actions to   13:30:35
20 independently verify any of the conclusions   13:30:36
21 reached by CAL FIRE in any of those reports?   13:30:39
22   A. No, we haven't done a separate   13:30:42
23 review from --    13:30:47
24   Q. Okay.    13:30:47
25    And same question for the CPUC:   13:30:50

1 You testified that FEMA is relying on   13:30:51
2 reports that were prepared by the CPUC;   13:30:55
3 correct?    13:30:57
4   A. Correct.    13:30:57
5   Q. Has FEMA taken any actions to   13:30:58
6 independently verify any of the conclusions   13:31:00
7 reached by the CPUC in any of those reports?   13:31:02
8   A. No, we have not done a separate   13:31:06
9 independent process.    13:31:08
10   Q. Okay.    13:31:09
11    You can go back to Exhibit   13:31:13
12 Number 5, which is the Camp Fire claim.   13:31:15
13    It you go to page 2 of the   13:31:26
14 attachment, do you see the reference in the   13:31:28
15 first full paragraph to "FEMA-4407-DR-CA"?   13:31:36
16   A. Yes.    13:31:36
17   Q. What is FEMA-4407-DR-CA?   13:31:48
18   A. Each major disaster declaration   13:31:55
19 issued by the president receives a numerical   13:31:59
20 identifier. And so the numerical identifier   13:32:04
21 for that disaster declaration was 4407. The   13:32:07
22 "DR" refers to the fact that it's a major   13:32:11
23 disaster declaration instead of an emergency   13:32:15
24 declaration. And the "CA" refers to the   13:32:17
25 State of California.    13:32:19

1   Q. Was an emergency declaration   13:32:20
2 made in respect of the Camp Fire?   13:32:26
3   A. Yes. There was also an   13:32:30
4 emergency declaration issued on November 9,   13:32:31
5 which is the FEMA-3409-EM-CA referenced in   13:32:38
6 that same paragraph.    13:32:44
7   Q. Okay.    13:32:44
8    Did the disaster declaration   13:32:50
9 authorize FEMA to provide assistance under   13:32:54
10 the Stafford Act?    13:32:56
11   A. Yes.    13:32:56
12   Q. Okay.    13:32:56
13    I'm going to hand you what we're   13:33:00
14 going to mark as Exhibit Number 17.   13:33:02
15   [Deposition Exhibit 17 marked   13:33:20
16   for identification.]    13:33:22
17 MR. GOODMAN:    13:33:22
18   Q. Can you identify this document?   13:33:22
19   A. Yes. This is the initial notice   13:33:25
20 of the -- let's see -- of the major disaster   13:33:29
21 declaration for the Camp Fire, and this is   13:33:34
22 the printout from the FEMA website.   13:33:43
23   Q. Is this the disaster declaration   13:33:47
24 referenced on page 1 of the Camp Fire --   13:33:49
25 sorry.    13:33:52

1    Is this the disaster declaration   13:33:52
2 referenced on page 2 of the Camp Fire claim?   13:33:54
3   A. Yes, this is the initial notice   13:33:56
4 for that disaster, major disaster   13:33:59
5 declaration.    13:34:02
6   Q. Okay.    13:34:02
7    I want to direct your attention   13:34:04
8 to the paragraph that starts at the bottom   13:34:06
9 of page 1. Go ahead and read it for you.   13:34:07
10 Begins:    13:34:12
11   "Supplementary information.   13:34:12
12   "Notice is hereby given that in   13:34:14
13 a letter dated November 12, 2018 the   13:34:16
14 president issued a major disaster   13:34:19
15 declaration under the authority of the   13:34:21
16 Robert T. Stafford Disaster Relief and   13:34:23
17 Emergency Assistance Act, 42 USC 5121 et   13:34:27
18 seq., the Stafford Act, as follows:   13:34:32
19   "I have determined that the   13:34:34
20 damage in certain areas of the State of   13:34:35
21 California resulting from wildfires   13:34:37
22 beginning on November 8, 2018, and   13:34:40
23 continuing as of sufficient severity and   13:34:42
24 magnitude to warrant a major disaster   13:34:45
25 declaration under the Robert T. Stafford   13:34:48

Veritext Legal Solutions
800/00-5127

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 41 of 101

Page 158

1 Disaster Relief and Emergency Assistance    13:34:50
2 Act, 42 USC 5121 et seq., the Stafford Act.    13:34:55
3 Therefore, I declare that such a major    13:34:56
4 disaster exists in the State of California."    13:34:58
5        Did I generally read that    13:35:02
6 correctly?    13:35:03
7    A.    Yes, I think you added a few    13:35:04
8 words but that was pretty close.    13:35:06
9    Q.    Okay.  I did my best.    13:35:07
10        So the question is this:    13:35:08
11        Did the Camp Fire begin on about    13:35:10
12 November 8, 2018?    13:35:13
13    A.    Yes.    13:35:13
14    Q.    All right.    13:35:13
15        Is the reference to the    13:35:17
16 wildfires beginning on November 8, 2018 the    13:35:19
17 2018 Camp Fire?    13:35:22
18        MR. TYE:  Object to the form.    13:35:24
19    A.    This specific major disaster    13:35:27
20 declaration also included two other    13:35:31
21 wildfires, the Hill Fire and the Woolsey    13:35:33
22 Fire.  And so I don't know what the specific    13:35:36
23 start dates of those fires were, whether    13:35:44
24 they started on November 8 or sometime    13:35:48
25 thereafter.    13:35:51

Page 159

1    Q.    Okay.    13:35:51
2        Where do you see that in the    13:35:56
3 disaster declaration?    13:35:56
4    A.    Well, if you look at the page 3,    13:35:57
5 you will see that the areas designated for    13:36:03
6 assistance were Butte, Los Angeles and    13:36:07
7 Ventura Counties.  And so the fires in    13:36:12
8 Los Angeles and Ventura County occurring    13:36:15
9 near that time were the Hill and Woolsey    13:36:18
10 Fires.  The fire is not referenced by name,    13:36:20
11 however, in this notice.    13:36:23
12    Q.    This is the notice that would    13:36:24
13 have included the Camp Fire?    13:36:26
14    A.    Yes, it is.    13:36:27
15    Q.    Okay.    13:36:28
16        Is the damage resulting from the    13:36:31
17 2018 Camp Fire the condition identified in    13:36:34
18 Exhibit 17 that led to the president issuing    13:36:37
19 a disaster declaration?    13:36:41
20        MR. TYE:  Object to the form.    13:36:46
21    A.    Well, FEMA issues major disaster    13:36:47
22 declarations based on incident type.  So the    13:36:51
23 incident type for this major disaster    13:36:54
24 declaration would have been wildfires, one    13:36:57
25 of which was the Camp Fire.  However FEMA    13:36:59

Page 160

1 alleges that the condition resulting in the    13:37:04
2 Camp Fire would have been the electrical    13:37:06
3 system from PG&E being the source of    13:37:10
4 ignition of that fire.    13:37:12
5    Q.    Okay.    13:37:14
6        Other than the damage resulting    13:37:15
7 from the wildfires beginning on November 8,    13:37:17
8 2018 and continuing, is there any other    13:37:21
9 condition identified in this document for    13:37:24
10 which federal assistance was provided under    13:37:27
11 the Stafford Act?    13:37:29
12        MR. TYE:  Object to the form.    13:37:33
13    A.    Again, the identified incident    13:37:37
14 type is wildfires.  There are many    13:37:38
15 conditions that could have contributed to    13:37:41
16 the wildfires.    13:37:43
17        In this case the PG&E electrical    13:37:45
18 grid being the source of ignition for the    13:37:49
19 Camp Fire and the Southern California Edison    13:37:51
20 electrical grid being the source of    13:37:55
21 admission for the Hill and Woolsey fires.    13:37:57
22    Q.    Okay.    13:37:59
23        But the question is, other than    13:38:01
24 the damage resulting from the wildfires    13:38:02
25 beginning on November 8, 2018, is there any    13:38:06

Page 161

1 other condition that identified in this    13:38:09
2 document for which federal assistance was    13:38:12
3 provided under the Stafford Act?    13:38:14
4        MR. TYE:  Objection, asked and    13:38:16
5        answered.    13:38:17
6    A.    There is no rare condition    13:38:18
7 identified in this document. But, again,    13:38:22
8 the underlying condition resulting in those    13:38:24
9 fires is the source -- is, as I stated, the    13:38:27
10 source of ignition of these fires would be    13:38:32
11 the condition resulting in those fires.    13:38:47
12    Q.    But that doesn't appear anywhere    13:38:49
13 in the document; correct?    13:38:52
14        MR. TYE:  Objection, asked and    13:38:54
15        answered.    13:39:00
16    A.    Correct, but these documents do    13:39:00
17 not identify all underlying events that    13:39:01
18 might be included in that incident type.    13:39:04
19    Q.    But they do identify the    13:39:09
20 condition that resulted in federal    13:39:10
21 assistance being provided; correct?    13:39:13
22    A.    They identify wildfires which    13:39:14
23 require a source of ignition.    13:39:17
24    Q.    But according to the document,    13:39:18
25 the wildfire and the damage resulting    13:39:26

41 (Pages 158 - 161)

Veritext Legal Solutions
800/899-5127

Case: 19-30088    Doc# 5834-1    Filed: 02/20/20    Entered: 02/19/20 14:18:03    Page 42
of 101

Page 162:

1 therefrom, that is the cause of the federal 13:39:30
2 assistance being provided; correct? 13:39:32
3     MR. TYE: Objection to form. 13:39:34
4 Objection, asked and answered. 13:39:35
5     A. FEMA provided assistance to 13:39:37
6 respond and recover to the wildfires. 13:39:51
7 Again, our position is the underlying 13:39:59
8 condition of wildfires was the electrical 13:40:00
9 grid for the Camp Fire. 13:40:05
10     Q. Did FEMA go out and provide 13:40:08
11 federal assistance to repair the -- the 13:40:10
12 electrical grid before the Camp Fire 13:40:12
13 occurred? 13:40:16
14     MR. TYE: Objection, form. 13:40:19
15     A. FEMA doesn't provide assistance 13:40:21
16 to private for-profit entities. So we would 13:40:22
17 not have provided assistance to PG&E before 13:40:25
18 or after the fires. 13:40:28
19     Q. Right. You provide assistance 13:40:34
20 when there is a major disaster declaration; 13:40:35
21 correct? 13:40:38
22     A. Correct. But we also only 13:40:38
23 provide assistance to eligible applicants, 13:40:40
24 which are state, local governments and 13:40:42
25 private nonprofit entities. So we would 13:40:45
Page 162

Page 163:

1 never be providing any kind of financial 13:40:47
2 assistance to a private for-profit entity 13:40:49
3 such as PG&E. 13:40:52
4     Q. So there would never be a 13:40:54
5 circumstance under which FEMA would go out 13:40:55
6 and make updates and repairs to PG&E's 13:40:57
7 electrical grid; is that correct? 13:41:04
8     MR. TYE: Object to the form and 13:41:06
9 object to that question as beyond the 13:41:07
10 scope of the 30(b)(6) notice. 13:41:09
11 The witness can answer to his 13:41:10
12 personal knowledge for this issue, but 13:41:11
13 the testimony is not in his 30(b)(6) 13:41:12
14 capacity on behalf of FEMA. 13:41:14
15     A. Correct, that would fall outside 13:41:19
16 FEMA's authorities. 13:41:21
17     MR. GOODMAN: Okay. Go ahead 13:41:49
18 and mark Exhibit Number 18. 13:41:49
19     [Deposition Exhibit 18 marked 13:42:04
20 for identification.] 13:42:04
21 BY MR. GOODMAN: 13:42:18
22     Q. Can you identify this document? 13:42:18
23     A. This is the initial notice of a 13:42:19
24 major disaster declaration for FEMA-4240-DR. 13:42:26
25     Q. Okay. 13:42:32
Page 163

Page 164:

1     If you go back to Exhibit 13:42:35
2 Number 4, which is the Butte Fire claim, I 13:42:37
3 believe there's a reference on page 2 of the 13:42:44
4 attachment to FEMA-4240-DR-CA. Do you see 13:42:46
5 that? 13:42:56
6     A. Yes. 13:42:56
7     Q. Is this Exhibit 18 the disaster 13:43:00
8 declaration referenced in the Butte Fire 13:43:05
9 claim? 13:43:07
10     A. This document Exhibit 18 is the 13:43:10
11 initial notice for that major disaster 13:43:13
12 declaration. That declaration included both 13:43:15
13 the Butte Fire as well as the Valley Fire 13:43:20
14 which occurred in Lake County. And so this 13:43:22
15 initial notice was only for the Valley Fire 13:43:26
16 and Lake County. The disaster declaration 13:43:32
17 was later amended to include the Butte Fire. 13:43:34
18     Q. Okay. 13:43:37
19 Did FEMA provide assistance as a 13:43:48
20 result of this declaration? 13:43:50
21     A. Yes. 13:43:50
22     Q. What assistance did FEMA 13:43:54
23 provide? 13:43:56
24     A. For this declaration FEMA 13:43:56
25 provided public assistance to state agencies 13:44:00
Page 164

Page 165:

1 and local governments and eligible private 13:44:03
2 nonprofits in Calaveras County specific for 13:44:08
3 the Butte Fire, and we also provided our 13:44:12
4 individual assistance program. And the 13:44:15
5 hazard mitigation program was also 13:44:17
6 authorized for this declaration. 13:44:20
7     Q. Okay. 13:44:21
8     MR. GOODMAN: Go ahead and mark 13:44:27
9 Exhibit Number 19. 13:44:28
10     [Deposition Exhibit 19 marked 13:44:28
11 for identification.] 13:44:54
12 MR. GOODMAN: 13:44:54
13     Q. Can you identify this document? 13:44:54
14     A. Yes. This is the initial notice 13:44:59
15 for the major disaster declaration that was 13:45:01
16 issued for FEMA-4344-DR, which is the -- 13:45:03
17 includes the wildfires from the 2017 13:45:19
18 Northern California Wildfires. 13:45:21
19     Q. If you go back to Exhibit 3, 13:45:29
20 which is the North Bay Fires claim, on page 13:45:30
21 2 there is a reference to FEMA 4344-DR-CA. 13:45:34
22 Is this Exhibit Number 19 the disaster 13:45:40
23 declaration that's referenced by FEMA in its 13:45:47
24 proof of claim? 13:45:49
25     A. Yes, this is the same major 13:45:52
Page 165

42 (Pages 162 - 165)

Page 166

1 disaster declaration. But I would also 13:45:54
2 point out that there were several amendments 13:45:56
3 to this initial notice that may have 13:45:59
4 included additional counties not mentioned 13:46:04
5 in this additional notice, which also, then, 13:46:06
6 would have covered additional fires. 13:46:09
7     Q.  Again, if you look at the 13:46:16
8 paragraph beginning on the bottom of page 1 13:46:17
9 and continuing over to page 2, there's a 13:46:20
10 reference here to damage in certain areas of 13:46:25
11 the State of California resulting from 13:46:29
12 wildfires beginning on October 8, 2017. 13:46:32
13 Would you agree with me that that is the 13:46:35
14 condition for which this major disaster 13:46:38
15 declaration was issued? 13:46:42
16     A.  Well, as discussed in my 13:46:43
17 previous response, the incident type for 13:46:46
18 this was also wildfires. So all wildfires 13:46:48
19 that occurred in the designated counties 13:46:51
20 during that incident period would be 13:46:55
21 included in the major disaster declaration. 13:46:57
22 Those wildfires have a number of sources of 13:47:00
23 ignition. The Northern California fires 13:47:05
24 were all related to the equipment of the 13:47:09
25 debtor. 13:47:13

Page 167

1     Q.  And did FEMA provide assistance 13:47:15
2 as a result of this declaration? 13:47:18
3     A.  Yes. 13:47:18
4     Q.  And what assistance did FEMA 13:47:23
5 provide? 13:47:24
6     A.  FEMA provided its public 13:47:24
7 assistance program, its individual 13:47:27
8 assistance program, and also the Hazard 13:47:29
9 Mitigation Grant Program. 13:47:32
10     Q.  Okay. 13:47:32
11     We discussed you're familiar 13:47:34
12 with section 317 of the Stafford Act; 13:47:35
13 correct? 13:47:38
14     A.  Yes. 13:47:40
15     Q.  Okay. 13:47:40
16     And you're aware that FEMA has 13:47:40
17 invoked section 317 of the Stafford Act in 13:47:41
18 its claims against PG&E? 13:47:44
19     A.  Yes. 13:47:44
20     Q.  Okay. 13:47:44
21     As the 30(b)(6) designee can you 13:47:47
22 identify any other instances where FEMA has 13:47:50
23 formally sought recovery under section 317 13:47:52
24 of the Stafford Act? 13:47:55
25     MR. TYE:  Could you repeat that 13:47:57

Page 168

1 question real quick? Just the end 13:47:58
2 part. I just want to see if I need to 13:48:00
3 object to that. 13:48:02
4     MR. GOODMAN:  Yeah. 13:48:02
5     Q.  As FEMA's Rule 30(b)(6) 13:48:04
6 designee, can you identify any other 13:48:05
7 instances beyond the claims filed in this 13:48:08
8 case where FEMA has formally sought recovery 13:48:11
9 under section 317 of the Stafford Act? 13:48:15
10     A.  Based on our review of agency 13:48:17
11 records and discussions of individuals with 13:48:23
12 historical knowledge, we're not aware of any 13:48:26
13 other incident of FEMA using section 317 to 13:48:28
14 recover costs. 13:48:31
15     Q.  Am I correct though what has 13:48:39
16 caused FEMA to invoke section 317 of the 13:48:41
17 Stafford Act in this case are the 13:48:44
18 intentional omissions that we have 13:48:47
19 previously discussed? 13:48:49
20     MR. TYE:  Object to the form. 13:48:53
21     A.  Yes, FEMA alleges that 13:48:59
22 intentional omissions by the debtor 13:49:00
23 occurred, which resulted in the need for 13:49:03
24 federal assistance. 13:49:05
25     Q.  Okay. 13:49:05

Page 169

1     Other than that, is there 13:49:09
2 anything else that has caused FEMA to invoke 13:49:11
3 section 317 of the Stafford Act in this 13:49:14
4 case? 13:49:16
5     MR. TYE:  Object to the form. 13:49:18
6     A.  In our response to the 13:49:23
7 interrogatories, we also referenced some 13:49:28
8 affirmative actions taken by PG&E in order 13:49:33
9 to aid its mission, such as misleading 13:49:36
10 regulators, withholding critical data and 13:49:43
11 hindering investigations in the years 13:49:45
12 leading up to the fires. 13:49:47
13     Q.  Okay. 13:49:47
14     Other than that is there 13:49:50
15 anything else? 13:49:51
16     A.  Could you just repeat? Other 13:49:52
17 than else for what? Repeat the question. 13:50:06
18     Q.  I'm just trying to make sure I 13:50:10
19 understand what FEMA is relying on in 13:50:12
20 support of its proofs of claim. We've 13:50:14
21 talked about intentional omissions. We've 13:50:16
22 talked about the actions that you just 13:50:18
23 referenced. I'm just trying to figure out 13:50:20
24 if there is anything else that I'm missing 13:50:22
25 that FEMA would be relying on. 13:50:24

43 (Pages 166 - 169)

Case: 19-30088   Doc# 5834-1   Filed: 02/20/20   Entered: 02/19/20 14:18:03   Page 44
of 101

Page 170

```
 1      A.   Well, I -- I'm discussing the        13:50:26
 2 evidence FEMA is relying upon.  I don't want    13:50:32
 3 to conclude on any other potential legal        13:50:34
 4 arguments the agency might make.                13:50:37
 5      Q.   Okay.                                 13:50:38
 6           Is there any other evidence that      13:50:38
 7 FEMA is relying on?                             13:50:40
 8      A.   Again, all the evidence we            13:50:41
 9 discussed today related to what's in our        13:50:43
10 proof of claims.  What's in the publicly        13:50:46
11 available CAL FIRE/CPUC reports, publicly       13:50:49
12 available filings and the criminal              13:50:53
13 proceedings and any other evidence we may       13:50:55
14 develop in the course of this litigation.       13:50:58
15      Q.   Okay.                                 13:51:00
16           Are there any CPUC reports that       13:51:01
17 you think that we missed that we haven't        13:51:03
18 discussed already in the course of today's      13:51:06
19 deposition that FEMA is relying on?             13:51:08
20           MR. TYE:  Object to the form of       13:51:13
21      that question.                             13:51:14
22 MR. GOODMAN:                                    13:51:15
23      Q.   I hope we got them all.  I just       13:51:16
24 want to know if there's any that stick out      13:51:17
25 to you, sitting here today, reports that the    13:51:19
```

Page 171

```
 1 CPUC prepared that FEMA is relying on?          13:51:23
 2      A.   There are other CPUC reports          13:51:28
 3 that identify violations of state law by the    13:51:29
 4 debtor other than those we discussed today.     13:51:32
 5      Q.   Which are those?                       13:51:34
 6           MR. TYE:  United States rejects       13:51:37
 7      that question as beyond the scope of       13:51:38
 8      the 30(b)(6) notice.                       13:51:39
 9           The witness can answer as to his      13:51:40
10      personal knowledge for this issue, but    13:51:41
11      the testimony is not in his 30(b)(6)       13:51:43
12      capacity on behalf of FEMA.               13:51:45
13      A.   I mean, as we said I would be        13:51:48
14 referencing all the publicly available         13:51:52
15 reports that are out there.  So I don't have    13:51:54
16 a list of them all in front of me right now.    13:51:55
17      Q.   Okay.                                 13:51:58
18           Am I correct that part of the         13:52:00
19 cost that FEMA is attempting to recover from    13:52:02
20 PG&E is related to debris removal?              13:52:05
21           MR. TYE:  Object to the form.        13:52:11
22      A.   Yes, that's one eligible             13:52:13
23 activity under the public assistance           13:52:17
24 program.                                        13:52:19
25      Q.   Are you familiar with the term       13:52:20
```

Page 172

```
 1 "debris removal"?                               13:52:23
 2      A.   Yes.                                   13:52:23
 3      Q.   What does that mean to you?           13:52:25
 4      A.   That means the removal and --        13:52:26
 5 the clearance and removal of any number of      13:52:34
 6 different types of debris.  It could be         13:52:39
 7 vegetative debris.  It could be                 13:52:41
 8 construction-related debris.  It could be       13:52:44
 9 vehicles that are damaged and deposited due     13:52:48
10 to a disaster.                                  13:52:51
11      Q.   Is that term used to describe        13:52:52
12 clearing a lot that has been severely          13:52:54
13 impacted by a wild fire?                        13:52:57
14      A.   That would be a potential            13:53:01
15 eligible activity under our debris removal      13:53:03
16 program, yes.                                   13:53:06
17      Q.   Okay.                                 13:53:06
18           Do you know what percentage of       13:53:07
19 FEMA's claims against PG&E are for debris       13:53:09
20 removal costs?                                  13:53:15
21      A.   I don't know the exact               13:53:26
22 percentage off the top of my head, but I do    13:53:27
23 know it is over half of our claim.             13:53:29
24      Q.   So it's over half of the 3.9         13:53:30
25 billion?                                        13:53:33
```

Page 173

```
 1      A.   Yes.                                   13:53:33
 2      Q.   Okay.                                  13:53:33
 3           Are you familiar with FEMA's          13:53:35
 4 Right of Entry Form?                            13:53:36
 5      A.   FEMA does not have a Right of        13:53:40
 6 Entry Form.                                     13:53:43
 7      Q.   Do you know what a Right of          13:53:43
 8 Entry Form is?                                  13:53:45
 9      A.   Yes.                                   13:53:45
10      Q.   What is a Right of Entry Form?       13:53:45
11      A.   The Right of Entry Forms were       13:53:47
12 utilized by local governments during the       13:53:49
13 private property debris removal mission in      13:53:54
14 order to obtain permission from the             13:53:58
15 homeowners to come and clear debris from        13:54:03
16 individual lots.                                13:54:05
17      Q.   Would FEMA have been aware of        13:54:06
18 the Right of Entry Forms that the local         13:54:07
19 governments were using?                         13:54:10
20           MR. TYE:  Object to the form,        13:54:14
21      and United States objects to that         13:54:14
22      question as beyond the scope of the       13:54:16
23      30(b)(6) notice.                           13:54:17
24           The witness can answer as to his     13:54:18
25      personal knowledge for this issue, but    13:54:21
```

44 (Pages 170 - 173)

Veritext Legal Solutions
866-299-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 45
of 101

1 the testimony is not in his 30(b)(6) 13:54:22
2 capacity on behalf of FEMA. 13:54:25
3 A. Yes, I'm aware that there was a 13:54:27
4 right -- there were rights of entries 13:54:31
5 collected for the debris removal missions 13:54:34
6 associated with this event, all three 13:54:38
7 events. 13:54:40
8 Q. Can you think of any incident 13:54:41
9 where FEMA saw a Right of Entry Form that 13:54:43
10 was being utilized in connection with any of 13:54:45
11 the wildfires and objected to the language 13:54:46
12 that was contained in the form? 13:54:48
13 MR. TYE: Same objection as to 13:54:50
14 scope. 13:54:54
15 A. No, we reviewed the Right of 13:54:56
16 Entry Forms -- I wouldn't say "review." I 13:54:58
17 would say we've seen the Right of Entry 13:55:00
18 Forms before they were utilized by state and 13:55:02
19 local governments. 13:55:04
20 Q. And if you had a problem with 13:55:05
21 those forms you could have expressed them to 13:55:07
22 the local government; is that correct? 13:55:09
23 MR. TYE: Object to -- object to 13:55:11
24 form and also same objection as to 13:55:12
25 scope. 13:55:14

Page 174

1 A. Yes, but ultimately it's not 13:55:18
2 FEMA's form. 13:55:19
3 Q. Okay. 13:55:20
4 But it's a form that FEMA would 13:55:21
5 have reviewed before it was utilized? 13:55:22
6 MR. TYE: Same objections. 13:55:25
7 A. Yes, we would have seen the form 13:55:26
8 before it was utilized. 13:55:27
9 Q. Okay. 13:55:27
10 Were residents whose homes were 13:55:31
11 destroyed by the 2017 North Bay Fires asked 13:55:33
12 to sign a Right of Entry Form in order to 13:55:36
13 give contractors hired through the Army 13:55:38
14 Corps of Engineers the ability to access 13:55:41
15 damaged property? 13:55:43
16 MR. TYE: The United States 13:55:44
17 object to that question as beyond the 13:55:45
18 scope of the 30(b)(6) notice. 13:55:46
19 The witness can answer as to his 13:55:47
20 personal knowledge for this issue, but 13:55:49
21 his testimony is not in his 13:55:51
22 30(b)(6) capacity on behalf of FEMA. 13:55:54
23 A. Can you please repeat the 13:55:56
24 question? Sorry. 13:55:57
25 Q. Sure. 13:55:58

Page 175

1 Were residents whose homes were 13:55:58
2 destroyed by the 2017 North Bay Fires asked 13:56:01
3 to sign a Right of Entry Form in order to 13:56:04
4 give contractors hired through the Army 13:56:06
5 Corps of Engineers the ability to access 13:56:10
6 damaged property? 13:56:11
7 MR. TYE: Same objection. 13:56:12
8 A. So in order for individuals to 13:56:13
9 have debris cleared from their lots under 13:56:18
10 that program, they would have been required 13:56:26
11 to sign a Right of Entry Form prior to that 13:56:28
12 work occurring. 13:56:31
13 Q. Were representations made to 13:56:33
14 fire victims that if they signed a Right of 13:56:36
15 Entry Form they would not be charged more 13:56:39
16 than what is covered by insurance regardless 13:56:40
17 of the actual cost of the service? 13:56:42
18 MR. TYE: United States objects 13:56:45
19 to that question as beyond the scope 13:56:46
20 of the 30(b)(6) notice. 13:56:47
21 The witness can answer as to his 13:56:48
22 personal knowledge for this issue, but 13:56:50
23 the testimony is not in his 30(b)(6) 13:56:53
24 capacity on behalf of FEMA. 13:56:56
25 A. I apologize for the delayed 13:57:18

Page 176

1 response. I'm just trying to make sure I'm 13:57:20
2 differentiating between communications made 13:57:22
3 by FEMA and those made by the state. 13:57:24
4 This mission was really led by 13:57:26
5 the state and FEMA was in a support role. 13:57:28
6 MR. GOODMAN: Let's go ahead and 13:57:32
7 mark Exhibit 20. 13:57:34
8 [Deposition Exhibit 20 marked 13:57:34
9 for identification.] 13:57:34
10 BY MR. GOODMAN: 13:57:34
11 Q. Can you identify this document? 13:58:00
12 A. It's titled Debris Removal Right 13:58:05
13 of Entry Form Deadline, 11/13, posted on 13:58:08
14 November 3, 2017. 13:58:10
15 Q. Do you see the second paragraph 13:58:15
16 on the first page? 13:58:16
17 A. Yes. 13:58:19
18 Q. Could you read that for me? 13:58:20
19 A. "By submitting the ROE form, 13:58:21
20 residential property owners are granting 13:58:26
21 permission for contractors hired through the 13:58:28
22 U.S. Army Corps of Engineers to safely and 13:58:31
23 efficiently clean their property of 13:58:34
24 fire-related debris to clear the way for 13:58:37
25 rebuilding. Residents will not be charged 13:58:39

Page 177

45 (Pages 174 - 177)

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 46
of 101

Page 178

```
 1   more than what is covered by their        13:58:41
 2   insurance, regardless of the actual cost of  13:58:43
 3   the program."                              13:58:45
 4      Q.   And this is language that FEMA      13:58:47
 5   would have seen before it was utilized by   13:58:48
 6   any local governmental entities; is that    13:58:51
 7   correct?                                    13:58:54
 8          MR. TYE:  The United States          13:58:54
 9   objects to that question as beyond the      13:58:55
10   scope of the 30(b)(6) notice.               13:58:56
11          The witness can answer as to his     13:58:57
12   personal knowledge for this issue, but      13:58:59
13   the testimony is not in his 30(b)(6)        13:59:00
14   capacity on behalf of FEMA.                 13:59:02
15      A.   I don't know if this particular     13:59:07
16   one was reviewed by FEMA or not.  I note    13:59:08
17   that it seems to be posted on               13:59:12
18   socoemergency.org/recover, which is not a   13:59:17
19   website that I'm familiar with.  I believe  13:59:22
20   the state's website was                     13:59:25
21   wildfirerecovery.org.  And so if it was     13:59:30
22   posted by the state we likely would have    13:59:32
23   reviewed it.  If it was posted by a local   13:59:34
24   government I can't say whether FEMA reviewed 13:59:36
25   it or not.                                  13:59:38
```

Page 179

```
 1      Q.   Well, let me ask this question:     13:59:39
 2          Is FEMA intending to cover costs     13:59:40
 3   related to clearing lots from the victims   13:59:43
 4   whose homes were destroyed?                 13:59:46
 5          MR. TYE:  Object to the form.        13:59:49
 6      A.   No.  Any recovery of costs          13:59:50
 7   related to debris removal would be from the 13:59:53
 8   State of California, who was the recipient  13:59:56
 9   of the debris removal assistance.           13:59:58
10      Q.   Okay.                               14:00:01
11          So FEMA would not be intending       14:00:02
12   to recover costs related to clearing lots   14:00:04
13   from victims whose homes were destroyed?    14:00:08
14      A.   No.  Our private property debris    14:00:12
15   removal was through the State of California. 14:00:16
16   So either financial assistance provided to  14:00:18
17   the state or direct assistance that we      14:00:20
18   provided to the state, and the only cost    14:00:22
19   FEMA would recover would be -- related to   14:00:25
20   that would be against the State of          14:00:28
21   California.                                 14:00:29
22      Q.   Oh, I see.  Okay.                   14:00:31
23          Has FEMA sought to recover any       14:00:35
24   costs associated with debris removal arising 14:00:39
25   from the wildfires from any insurance       14:00:42
```

Page 180

```
 1   companies?                                  14:00:45
 2          MR. TYE:  The United States          14:00:46
 3   objects to that question as beyond the      14:00:47
 4   scope of the 30(b)(6) notice.               14:00:48
 5          The witness can answer in this       14:00:49
 6   personal knowledge for this issue, but      14:00:52
 7   this testimony is not in his 30(b)(6)       14:00:54
 8   capacity on behalf of FEMA.                 14:00:58
 9      A.   So as part of our authorization     14:01:00
10   of private property debris removal under the 14:01:03
11   public assistance program, which is not a -- 14:01:06
12   it's not an automatically authorized        14:01:10
13   program.  Private property debris removal   14:01:13
14   requires an additional level of             14:01:16
15   authorization.  But per FEMA policy when we  14:01:18
16   authorize private property debris removal,  14:01:21
17   there is a requirement that state and local  14:01:24
18   governments attempt to collect potential    14:01:26
19   insurance proceeds from property owners that 14:01:31
20   may cover debris removal work for the       14:01:34
21   purpose of avoiding a duplication of        14:01:37
22   benefits.                                   14:01:40
23          Those insurance collections are      14:01:40
24   handled by the local government and not by  14:01:42
25   FEMA.                                       14:01:46
```

Page 181

```
 1      Q.   If the local government recovers    14:01:48
 2   from an insurance company for the debris    14:01:50
 3   removal costs though, does any of that money 14:01:53
 4   flow back to FEMA?                          14:01:56
 5          MR. TYE:  Same objection as to       14:01:57
 6   scope.                                      14:01:58
 7      A.   So the way it's handled is that     14:02:00
 8   when we provide the assistance to the state  14:02:06
 9   for the private property debris removal, a  14:02:10
10   deduction is made based on an estimate of   14:02:14
11   what insurance recoveries are likely.  So   14:02:18
12   any assistance that FEMA has provided to the 14:02:21
13   State of California up to this point would   14:02:24
14   not -- would have that deduction in there.  14:02:27
15   And so the final issue would be handling the 14:02:35
16   project closeout, which has not occurred for 14:02:38
17   the private property debris removal for     14:02:39
18   these disasters yet.                        14:02:42
19      Q.   How would FEMA know what the        14:02:43
20   insurance amount is at the time when it     14:02:45
21   provided the initial funding?               14:02:49
22          MR. TYE:  Same objection as to       14:02:51
23   scope.                                      14:02:53
24      A.   I'm not sure how our public         14:02:56
25   assistance officials calculate or estimate  14:03:00
```

46 (Pages 178 - 181)

Veritext Legal Solutions
866-299-5127

1 that deduction. 14:03:04
2 Q. Okay. 14:03:06
3 So just so I understand this. 14:03:10
4 Say my house burnt down in a wildfire and 14:03:12
5 the Army Corps of Engineers shows up and 14:03:15
6 clears the debris off the lot and I have 14:03:18
7 insurance. Would FEMA or a state agency 14:03:20
8 seek to recover some of the associated 14:03:25
9 debris removal costs from the insurance 14:03:29
10 company? 14:03:35
11 MR. TYE: Same objection as to 14:03:35
12 scope. Objection, calls for 14:03:36
13 speculation. 14:03:38
14 A. So, again, the insurance 14:03:39
15 collection is handled at the local 14:03:43
16 government legal level. So the state 14:03:44
17 government and the federal government aren't 14:03:46
18 involved in that process. 14:03:48
19 But the local governments would 14:03:49
20 potentially collect whatever portion of an 14:03:55
21 insurance policy is related to debris 14:03:57
22 removal. 14:03:59
23 Q. And then when the local 14:04:00
24 government gets that money, it wouldn't be 14:04:02
25 required to upstream any to the state or to 14:04:03

Page 182

1 FEMA because whatever amount that FEMA 14:04:07
2 disbursed in the first instance would have 14:04:10
3 been net of the insurance? Do I have that 14:04:13
4 right? 14:04:15
5 MR. TYE: Objection as to scope, 14:04:16
6 objection as to form. 14:04:18
7 A. So that would be resolved at the 14:04:20
8 closeout portion of that particular project 14:04:22
9 for debris removal. 14:04:28
10 So the idea would be that none 14:04:30
11 of it would come back to FEMA at the end, 14:04:32
12 but it would all depend on the final 14:04:34
13 financial reconciliation, none of which has 14:04:37
14 occurred for the debris removal projects for 14:04:39
15 these three major disasters at this time. 14:04:42
16 Q. So it's possible though if FEMA 14:04:44
17 did put in more money into the system and 14:04:47
18 the local government recovered substantial 14:04:53
19 amount from the insurance companies, that 14:04:56
20 some money could flow back to FEMA; correct? 14:04:59
21 MR. TYE: Objection as to scope, 14:05:01
22 objection to form. 14:05:02
23 A. I mean, it's really speculative. 14:05:04
24 I would have to -- it would be 14:05:05
25 fact-dependent there. It's hard to say 14:05:08

Page 183

1 until project closeout occurs. 14:05:10
2 Q. Does FEMA intend on pursuing any 14:05:13
3 claims against insurance companies for the 14:05:15
4 cost of debris removal for the wildfires? 14:05:17
5 MR. TYE: United States objects 14:05:20
6 to that question as beyond the scope 14:05:21
7 of the 30(b)(6) notice. 14:05:22
8 The witness can answer as to his 14:05:23
9 personal knowledge for the issue, but 14:05:25
10 the testimony is not in his 30(b)(6) 14:05:26
11 capacity on behalf of FEMA. 14:05:28
12 A. We have no cause of action 14:05:32
13 directly against insurance companies. 14:05:34
14 Q. What do you mean by you don't 14:05:39
15 have a cause of action against insurance 14:05:40
16 companies? 14:05:45
17 MR. TYE: Same objection as to 14:05:45
18 scope. 14:05:47
19 A. Well, we wouldn't have a basis 14:05:53
20 under section 317, and we wouldn't have a 14:05:54
21 basis under section 312 because they are not 14:05:58
22 a recipient of federal assistance. 14:06:01
23 Q. But FEMA could recover funds 14:06:16
24 disbursed by an insurance company under a 14:06:24
25 policy that covered debris removal; correct? 14:06:27

Page 184

1 MR. TYE: Same objection as to 14:06:31
2 scope. 14:06:32
3 A. Not directly. It would have to 14:06:33
4 flow through the state and local government. 14:06:35
5 Q. It come back to FEMA indirectly? 14:06:39
6 MR. TYE: Same objection as to 14:06:43
7 scope. 14:06:44
8 A. It's possible but it would all 14:06:48
9 have to be resolved at project close out. 14:06:49
10 Q. Okay. 14:06:49
11 Would FEMA ever recovery money 14:06:53
12 from an insurance company and then seek to 14:06:57
13 recover the same amounts from another 14:06:58
14 source? 14:07:00
15 MR. TYE: Same objection as to 14:07:03
16 scope. Also object as to form. 14:07:04
17 A. So again we wouldn't receive any 14:07:12
18 funding from insurance companies. So could 14:07:15
19 you just clarify your question? 14:07:18
20 Q. Well, if FEMA were to recover 14:07:21
21 3.9 billion dollars from PG&E, and you've 14:07:23
22 testified that half of that claim is for 14:07:26
23 debris removal costs, and it turns out that 14:07:29
24 the lots at issue were fully insured. I 14:07:34
25 mean, aren't we in a situation where you 14:07:37

Page 185

47 (Pages 182 - 185)

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 48
of 101

```
 1  have double recovery?          14:07:40
 2       MR. TYE:  Object to the form,  14:07:41
 3  object to mischaracterizes the prior  14:07:43
 4  testimony.  Objection as to scope.  14:07:45
 5  A.  So at this point, as I've  14:07:50
 6  stated, the initial grant of public  14:07:52
 7  assistance included a deduction for  14:07:57
 8  estimated insurance recoveries.  So we don't  14:08:03
 9  see that as a very likely situation where  14:08:05
10  there would be any double recovery.  14:08:07
11  Q.  Okay.                14:08:13
12       But would give are FEMA give the  14:08:15
13  money back to the insurance company if it  14:08:19
14  had a double recovery?          14:08:21
15       MR. TYE:  Objection as to scope.  14:08:23
16  Object to the form of that question.  14:08:26
17  A.  I think that's speculative, as  14:08:28
18  we would have to resolve what to do if that  14:08:30
19  were to actually occur.          14:08:33
20  Q.  Okay.                14:08:34
21       Has FEMA undertaken any analysis  14:08:34
22  to determine the extent of insurance  14:08:36
23  recoveries that are available in this case?  14:08:39
24       MR. TYE:  United States objects  14:08:42
25  to that question as beyond the scope  14:08:42
                              Page 186
```

```
 1  of the 30(b)(6) notice.          14:08:44
 2       The witness can answer as to his  14:08:45
 3  personal knowledge for this issue, but  14:08:48
 4  the testimony is not in his 30(b)(6)  14:08:48
 5  capacity on behalf of FEMA.        14:08:52
 6  A.  The only analysis that I am  14:08:55
 7  aware of that would have occurred would have  14:08:57
 8  been whatever the initial estimate was of  14:08:58
 9  what was deducted from the initial project  14:09:00
10  amounts.                  14:09:02
11  Q.  So as FEMA's Rule 30(b)(6)  14:09:02
12  designee, can you tell me if FEMA's claims  14:09:09
13  against PG&E are net of available insurance  14:09:12
14  recoveries?                14:09:14
15       MR. TYE:  Object to the form.  14:09:17
16  A.  I also don't understand the  14:09:20
17  question so just would need you to restate  14:09:22
18  it.                      14:09:24
19  Q.  Is it possible that FEMA's  14:09:24
20  claims against PG&E are actually less than  14:09:26
21  the amount asserted in the proofs of claim  14:09:28
22  because amounts could be recovered from  14:09:31
23  insurance companies?            14:09:33
24       MR. TYE:  United States objects  14:09:37
25  to that question as beyond the scope  14:09:38
                              Page 187
```

```
 1  of the 30(b)(6) notice.          14:09:40
 2       The witness can answer as to his  14:09:41
 3  personal knowledge for that issue, but  14:09:43
 4  his testimony is not in his 30(b)(6)  14:09:44
 5  capacity on behalf of FEMA.        14:09:48
 6       Separately, we would object to  14:09:50
 7  the form of that question.        14:09:52
 8  A.  Again, that would be impossible  14:09:57
 9  to determine until project close out.  14:09:58
10  Q.  Okay.                14:10:00
11       Does that mean that you don't  14:10:03
12  yet know if the amount asserted by FEMA in  14:10:05
13  this proofs of claim are accurate?  14:10:09
14       MR. TYE:  Objection,          14:10:13
15  mischaracterizes prior testimony.  14:10:13
16  Object to the scope of that -- or,  14:10:16
17  excuse me, objection to the scope of  14:10:18
18  that question.              14:10:19
19  A.  The amounts asserted in our  14:10:21
20  claim are accurate in that those represent  14:10:23
21  the amounts that we are fully obligated to  14:10:25
22  assist state and local governments,  14:10:29
23  individuals and for costs that we have  14:10:32
24  incurred directly in providing that  14:10:34
25  assistance.                14:10:35
                              Page 188
```

```
 1  Q.  You said "fully obligated."  14:10:36
 2  What does that mean?            14:10:38
 3  A.  An obligation is when the  14:10:40
 4  federal government makes money available for  14:10:41
 5  expenditure.  So in the context of public  14:10:47
 6  assistance, we provide grants to state and  14:10:50
 7  local government.  And so when the project  14:10:55
 8  is fully approved, we will obligate the  14:10:57
 9  money, which makes the moneys available for  14:11:02
10  those entities to then draw down to  14:11:04
11  reimburse their expenses.          14:11:06
12  Q.  What if the money isn't drawn  14:11:07
13  down?                    14:11:09
14  A.  If the money is not drawn down,  14:11:10
15  well --                  14:11:13
16       MR. TYE:  Wait.  Before you --  14:11:14
17  Objection as to the scope of  14:11:15
18  that question.              14:11:17
19  Go ahead.                14:11:18
20       THE WITNESS:  All right.      14:11:19
21  A.  So on the -- so let's look at  14:11:23
22  public assistance.  On the public assistance  14:11:24
23  side all projects have to be closed out.  14:11:26
24       So at project closeout of there  14:11:29
25  additional funding that was not drawn down,  14:11:32
                              Page 189
```

48 (Pages 186 - 189)

Veritext Legal Solutions
800/309-5127

**Page 190**

1 then that amount would be what we call 14:11:34
2 "de-obligated," which is basically returned 14:11:38
3 back to FEMA. 14:11:39
4 Q. So there are future events that 14:11:40
5 could occur that would result in some 14:11:42
6 portion of the 3.9 billion that FEMA has 14:11:45
7 obligated coming back to FEMA because it's 14:11:51
8 not utilized by the states? 14:11:53
9 MR. TYE: Objection, 14:11:55
10 mischaracterizes prior testimony. 14:11:55
11 Objection to the scope of that 14:11:56
12 question. 14:11:58
13 A. I think the best example would 14:12:01
14 be the Camp Fire, which I think we've made 14:12:02
15 very clear that the vast majority of our 14:12:05
16 Camp Fire claim is based on the best 14:12:09
17 available estimates that were available at 14:12:11
18 the time of our proof of claim. Most of 14:12:14
19 those costs have not been -- were not 14:12:18
20 obligated at the time of the proof of claim 14:12:21
21 and were reflective of our best available 14:12:26
22 estimates. So, yes, it's possible that the 14:12:29
23 final amount of assistance would be less 14:12:32
24 than that represented in the proof of claim. 14:12:33
25 Q. Right. 14:12:35

**Page 191**

1 There are certainly 14:12:36
2 contingencies that may or may not 14:12:37
3 materialize that could affect the amount of 14:12:39
4 the claim ultimately; correct? 14:12:41
5 A. Yes, there's many different 14:12:43
6 reasons why that could occur. 14:12:45
7 Q. Thank you. 14:12:46
8 Has FEMA threatened to go after 14:12:50
9 homeowners if it cannot recover from PG&E? 14:12:52
10 MR. TYE: Object to the form of 14:12:55
11 that question. And also the United 14:12:56
12 States objects to that question as 14:12:57
13 beyond the scope of the 30(b)(6) 14:12:58
14 notice. 14:13:00
15 The witness can answer as to his 14:13:00
16 personal knowledge of this issue, but 14:13:03
17 his testimony is not in his 30(b)(6) 14:13:04
18 capacity on behalf of FEMA. 14:13:06
19 A. FEMA's number one priority is 14:13:08
20 helping and supporting our disaster 14:13:13
21 survivors. So we would not threaten anyone. 14:13:15
22 And I would like the rest of the 14:13:24
23 question repeated because that -- just to 14:13:25
24 understand what the rest of the question 14:13:29
25 was. 14:13:30

**Page 192**

1 Q. Sure. Yeah. I'm happy to 14:13:30
2 repeat again. Any time you hear a question 14:13:32
3 and there's an objection, it would make 14:13:35
4 sense to mow that you would want it repeated 14:13:37
5 in some instances. So I'll repeat it again. 14:13:39
6 Has FEMA threatened to go after 14:13:41
7 homeowners if it cannot recover from PG&E? 14:13:44
8 MR. TYE: Objection as to scope 14:13:48
9 of that question. Objection to the 14:13:49
10 form of that question. 14:13:51
11 A. Again, we do not threaten 14:13:55
12 homeowners. I think FEMA has made an effort 14:13:56
13 to try to ensure that we avoid any 14:13:58
14 duplication of benefits and any -- to 14:14:05
15 recover anything individuals may receive 14:14:10
16 from PG&E. And so that has been our primary 14:14:12
17 concern and focus. 14:14:15
18 Q. Would a homeowner that signed 14:14:17
19 this Right of Entry Form be at risk of 14:14:21
20 attempts by FEMA or any other agency to 14:14:28
21 recover for debris removal costs? 14:14:33
22 MR. TYE: Objection as to scope 14:14:36
23 of that question. Also object to the 14:14:37
24 form of that question. 14:14:39
25 A. FEMA would not recover any costs 14:14:43

**Page 193**

1 associated with debris removal against 14:14:45
2 individual property owners. That would all 14:14:49
3 be recovered against the State of 14:14:51
4 California, who was the recipient of that 14:14:53
5 assistance. 14:14:55
6 Q. Does FEMA's claims against PG&E 14:15:00
7 include any amounts advanced for public 14:15:05
8 assistance? 14:15:07
9 MR. TYE: Object to the form of 14:15:10
10 that question. 14:15:10
11 A. Could you just clarify what you 14:15:12
12 mean by "advanced for"? 14:15:14
13 Q. Well, we previously talked about 14:15:18
14 FEMA providing public assistance; correct? 14:15:20
15 A. Uh-huh. 14:15:22
16 Q. When there's a major disaster? 14:15:23
17 A. Yes. 14:15:23
18 Q. Right. And my understanding is 14:15:27
19 that when there is a major disaster and 14:15:29
20 public assistance is authorized, then FEMA 14:15:32
21 will advance money for that purpose; 14:15:34
22 correct? 14:15:36
23 MR. TYE: Object to the form. 14:15:38
24 A. Well, again, I want to make sure 14:15:41
25 we're on the same page about when you used 14:15:44

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 50
of 101

| | |
|---|---|
| 1  the word "advance." So as I stated, we use   14:15:46 | 1    A.   Yeah, I guess I don't understand   14:17:53 |
| 2  the word we obligate money --                14:15:49 | 2  what you mean by "washed out at the end of   14:17:59 |
| 3    Q.   Okay.                                 14:15:49 | 3  the process."                                  14:18:00 |
| 4    A.   -- which means it's made              14:15:52 | 4    Q.   Or finally calculated or              14:18:01 |
| 5  available for the state to then draw down as  14:15:53 | 5  determined.  Does that help?                   14:18:03 |
| 6  its expenditures are made.  So if that's     14:15:56 | 6    A.   Correct, yeah.                         14:18:04 |
| 7  what you mean by "advance," then -- then      14:15:58 | 7    Q.   Okay.                                   14:18:04 |
| 8  perhaps I can answer your question.           14:16:01 | 8         Has FEMA undertaken any analysis      14:18:07 |
| 9    Q.   All right.                             14:16:03 | 9  to determine if it has claims for              14:18:08 |
| 10        Well, let me rephrase it.             14:16:03 | 10 reimbursement against any public entities?     14:18:10 |
| 11   A.   Okay.                                  14:16:05 | 11       MR. TYE:  The United States            14:18:14 |
| 12   Q.   I appreciate your clarification.       14:16:05 | 12 objects to that question as beyond the         14:18:15 |
| 13        Does FEMA's claims against PG&E       14:16:06 | 13 scope of the 30(b)(6) notice.                  14:18:16 |
| 14 include any amounts made available for        14:16:09 | 14       The witness can answer as to his       14:18:17 |
| 15 public assistance?                            14:16:11 | 15 personal knowledge for this issue, but        14:18:19 |
| 16       MR. TYE:  Object to the form.          14:16:14 | 16 his testimony is not in his 30(b)(6)           14:18:20 |
| 17   A.   Okay.  So the -- for the Butte         14:16:16 | 17 capacity on behalf of FEMA.                    14:18:23 |
| 18 Fire and 2017 Northern California Wildfire    14:16:24 | 18   A.   Well, the typical time we may          14:18:29 |
| 19 claims, those represent, on the public        14:16:30 | 19 recover funds under public assistance is      14:18:31 |
| 20 assistance side, amounts -- the federal       14:16:33 | 20 typically when an entity has received          14:18:33 |
| 21 share of assistance that FEMA has obligated   14:16:35 | 21 insurance proceeds for a project.  I'm not     14:18:35 |
| 22 for public assistance.                        14:16:37 | 22 aware of any particular projects where        14:18:38 |
| 23        I don't have the precise numbers      14:16:43 | 23 that's occurred.  Because typically we        14:18:40 |
| 24 in front of me, but I do know that almost     14:16:45 | 24 won't -- if someone has insurance -- if a     14:18:43 |
| 25 all of that money has actually been expended  14:16:48 | 25 public entity has insurance, we typically     14:18:45 |
|                                         Page 194 |                                         Page 196 |

| | |
|---|---|
| 1  and drawn down by state and local            14:16:51 | 1  have them go to insurance first and then       14:18:48 |
| 2  governments.                                  14:16:53 | 2  provide the money after that's occurred.       14:18:50 |
| 3        On the Camp Fire claim, as I           14:16:54 | 3         In terms of the issue of any          14:18:55 |
| 4  referenced a few questions ago, a             14:16:58 | 4  funding that could potentially be recovered   14:18:56 |
| 5  substantial portion of that claim has not     14:17:01 | 5  against PG&E, it's -- the issue is really     14:18:58 |
| 6  been obligated yet but represents our         14:17:02 | 6  not ripe for conclusion because no one has     14:19:03 |
| 7  estimates of what we expect to obligate for   14:17:05 | 7  actually received any money in this            14:19:05 |
| 8  that particular major disaster declaration.   14:17:09 | 8  proceedings yet.  So we can't determine what   14:19:07 |
| 9         And for the ones that have            14:17:12 | 9  anyone has received and whether anything      14:19:09 |
| 10 obligated, I don't know what amount has been  14:17:13 | 10 would need to be returned back to FEMA at     14:19:12 |
| 11 expended by state and local governments yet.  14:17:15 | 11 this point.                                    14:19:14 |
| 12   Q.   Would the amount that has been         14:17:22 | 12   Q.   Are you aware that certain             14:19:14 |
| 13 expended or is ultimately expended by those   14:17:23 | 13 public entities have entered into a 1         14:19:16 |
| 14 governments impact the amount of FEMA's       14:17:26 | 14 billion dollar settlement with PG&E?           14:19:18 |
| 15 claim against PG&E?                            14:17:29 | 15   A.   Yes, I am aware of that.                14:19:20 |
| 16       MR. TYE:  Objection as to the          14:17:31 | 16   Q.   Okay.                                   14:19:21 |
| 17 scope of that question.  Also object          14:17:33 | 17        Does FEMA claim a right to            14:19:22 |
| 18 to the form of that question.                 14:17:35 | 18 recover any of that money?                     14:19:23 |
| 19   A.   Yes, it could impact the final         14:17:41 | 19       MR. TYE:  United States objects        14:19:25 |
| 20 amounts.                                       14:17:43 | 20 to that question as beyond the scope          14:19:26 |
| 21   Q.   Again, that would be one of the        14:17:44 | 21 of the 30(b)(6) notice.                        14:19:28 |
| 22 many contingencies that would have to         14:17:47 | 22       The witness can answer as to his       14:19:29 |
| 23 ultimately be washed out at the end of the    14:17:49 | 23 personal knowledge for this issue, but        14:19:31 |
| 24 process?                                       14:17:51 | 24 this testimony is not in his 30(b)(6)          14:19:32 |
| 25       MR. TYE:  Object to the form.          14:17:51 | 25 capacity on behalf of FEMA.                    14:19:38 |
|                                         Page 195 |                                         Page 197 |

50 (Pages 194 - 197)

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 51
of 101

```
 1    A.   We don't claim any right to      14:19:39
 2  that.  We would have to see what the    14:19:41
 3  ultimate resolution of the bankruptcy   14:19:43
 4  proceedings is before we could make any 14:19:45
 5  determinations on whether any entities would 14:19:47
 6  need to return any funding from FEMA.   14:19:49
 7        Ultimately if our claim is        14:19:53
 8  successful our goal is that no one would 14:19:55
 9  have to return any funding received because 14:19:57
10  we would have pursued those costs        14:19:59
11  successfully ourselves.                  14:20:03
12    Q.   If FEMA were to recover from the  14:20:04
13  public entities first, would it then seek to 14:20:06
14  recover the same dollars from PG&E?      14:20:09
15        MR. TYE:  United States objects    14:20:15
16  to that question as beyond the scope     14:20:15
17  of the 30(b)(6) witness.                 14:20:17
18        The witness can answer as to his  14:20:18
19  personal knowledge of this issue, but   14:20:20
20  his testimony is it not in his          14:20:22
21  30(b)(6) capacity on behalf of FEMA.    14:20:23
22        Separately, we would object to    14:20:26
23  the form, form of that question.        14:20:28
24    A.   If an entity had separately      14:20:29
25  already received a recovery, we would not 14:20:31
                                         Page 198
```

```
 1    A.   I would say the only analysis    14:21:36
 2  that we've really done is to look at the 14:21:37
 3  amount of public assistance that has been 14:21:41
 4  provided to those entities to date that was 14:21:45
 5  also included in our own proof of claim. 14:21:50
 6    Q.   Do you know the -- strike that.  14:21:54
 7        Would you agree that at this      14:21:58
 8  point in time, sitting here today, the exact 14:21:59
 9  amount that FEMA contends may be owed by 14:22:04
10  PG&E is not known?  Correct?            14:22:11
11        MR. TYE:  Objection,              14:22:15
12  mischaracterizes prior testimony.       14:22:15
13    A.   I would agree insofar as the     14:22:20
14  Camp Fire claim, as I stated before, is 14:22:27
15  based substantially on estimates.       14:22:29
16        The other two claims, I would     14:22:32
17  agree that the number could change slightly, 14:22:36
18  but it's very close to being an accurate 14:22:38
19  number.                                 14:22:44
20    Q.   Okay.                            14:22:44
21        Do you know how the amount set    14:22:45
22  forth in the proofs of claim were       14:22:50
23  calculated?                             14:23:00
24    A.   Yes.                             14:23:00
25    Q.   How were they calculated?        14:23:01
                                         Page 200
```

```
 1  attempt to also recover those costs.  But no 14:20:33
 2  one is going to receive any recoveries until 14:20:37
 3  the bankruptcy proceedings are resolved. 14:20:40
 4  So --                                   14:20:43
 5    Q.   Okay.  So you don't know how      14:20:44
 6  much FEMA may or may not recover from any of 14:20:47
 7  the public entities in this case at this 14:20:49
 8  time; correct?                          14:20:52
 9        MR. TYE:  Same objection as to     14:20:53
10  scope.  Also objection,                 14:20:54
11  mischaracterizes prior testimony.       14:20:58
12    A.   Again, our goal is to avoid      14:21:00
13  having to recover any funding from any  14:21:03
14  recipient of assistance by pursuing our 14:21:08
15  claim directly, but at this time we don't 14:21:10
16  know what the final outcome will be.    14:21:13
17    Q.   Okay.                            14:21:15
18        Has FEMA undertaken any analysis  14:21:16
19  to date to determine how much the public 14:21:18
20  entities may owe FEMA?                  14:21:19
21        MR. TYE:  Objection as to scope.  14:21:22
22  Also, the United States objects to      14:21:24
23  that question to the extent it asks     14:21:26
24  for material covered by deliberative    14:21:27
25  process privilege.                      14:21:30
                                         Page 199
```

```
 1    A.   May I refer to one of the proofs 14:23:06
 2  of claim just to refresh my memory?     14:23:08
 3    Q.   Of course.                       14:23:10
 4        [Pause.]                          14:23:19
 5    A.   So if I could, I would use one   14:23:29
 6  of these as an example.  Is that all right? 14:23:31
 7    Q.   Sure.                            14:23:34
 8    A.   Just referring to Exhibit 4,     14:23:34
 9  which is the Butte Fire claim, looking at 14:23:36
10  the cost summary chart on page 5 and 6. 14:23:38
11        So the claims were broken down    14:23:49
12  into three main categories, Public      14:23:50
13  Assistance, Individual Assistance, and  14:23:53
14  FEMA's Administrative Costs for         14:23:57
15  administering those programs.           14:23:58
16        We collected information on the   14:24:02
17  amount of assistance that it -- for Public 14:24:07
18  Assistance we collected information on the 14:24:10
19  amount of assistance provided to state and 14:24:11
20  local governments.  That was done by    14:24:14
21  collecting information on all the projects 14:24:17
22  that had been obligated for assistance  14:24:20
23  provided in Calaveras County.           14:24:27
24        So for the county project         14:24:30
25  worksheets, that was fairly simple because 14:24:32
                                         Page 201
```

51 (Pages 198 - 201)

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 52
of 101

**Page 202**

1 we sort local government entities by county. 14:24:34
2 So we could easily select Calaveras County. 14:24:38
3     For the state agency projects, 14:24:43
4 that was a little more challenging because 14:24:45
5 of the fact that that declaration also 14:24:47
6 included the Valley Fire. 14:24:49
7     So we reviewed each of the state 14:24:53
8 agency project worksheets, the scope of work 14:24:55
9 to determine whether it was directly related 14:25:00
10 to the Butte Fire, the Valley Fire, and 14:25:02
11 excluded the Valley Fire projects. 14:25:04
12     Some of the projects at the 14:25:06
13 state level supported both fires. So we 14:25:08
14 made a calculation of what percent to 14:25:11
15 allocate towards the Butte Fire and included 14:25:16
16 all those in the state agency projects. 14:25:18
17     Looking at the next line is 14:25:23
18 Direct Federal Assistance. FEMA provides 14:25:24
19 Direct Federal Assistance. EVRA is what we 14:25:27
20 refer to as mission assignments, which is 14:25:30
21 when we task another federal agency to 14:25:32
22 perform work or provide services. That 14:25:37
23 information was collected from our response 14:25:38
24 division, which is responsible for managing 14:25:42
25 mission assignments, and also our FEMA 14:25:44

**Page 203**

1 commodities, which is like commodities we 14:25:48
2 have in our warehouse for sheltering, those 14:25:50
3 kinds of things. 14:25:52
4     So those costs were all 14:25:54
5 collected from those entities. 14:25:56
6     Under our Individual Assistance, 14:25:58
7 we have our individual and households 14:26:00
8 program, which is our financial assistance, 14:26:03
9 and also our transitional sheltering 14:26:05
10 assistance program, which is where we 14:26:09
11 provide hotels for survivors to stay in in 14:26:11
12 the immediate days after an event. 14:26:13
13     That information would have been 14:26:16
14 collected from one of our national 14:26:17
15 processing centers that handle all of our 14:26:21
16 individual assistance claims. So they 14:26:23
17 provided the data on what assistance was 14:26:25
18 provided, again sorted to individuals from 14:26:28
19 Calaveras County only. 14:26:31
20     The direct temporary housing 14:26:34
21 assistance would be related to when FEMA 14:26:37
22 provides travel trailers or mobile home 14:26:39
23 units to individuals. And so information 14:26:41
24 from that was pulled from the financial 14:26:45
25 information tool report of how much was 14:26:48

**Page 204**

1 spent on that. Again, direct housing was 14:26:52
2 provided to both the Butte and Valley Fire. 14:26:55
3 So we calc-- -- we did a percentage 14:26:58
4 calculation based on how many people were 14:27:01
5 housed for that event, for that fire versus 14:27:03
6 the other fire. 14:27:05
7     Our community services programs, 14:27:07
8 those are managed out of our field office 14:27:09
9 and regional office. So we pulled that 14:27:12
10 information from those offices and included 14:27:14
11 those as well. Those are the major programs 14:27:17
12 under individual assistance. 14:27:20
13     And then in terms of 14:27:22
14 administrative costs, that information was 14:27:24
15 all pulled from our financial information 14:27:27
16 tool. And, again, because that event 14:27:28
17 covered two fires, one which was not related 14:27:30
18 to PG&E, we calculated a -- we allocated a 14:27:33
19 percentage between the two fires. 14:27:36
20     So we included all of those 14:27:41
21 costs in our claim. 14:27:43
22     The other major costs that we 14:27:46
23 incurred during a major disaster declaration 14:27:48
24 is our hazard mitigation program, which I've 14:27:50
25 referenced a couple of times. That is a 14:27:53

**Page 205**

1 program that is designed for future looking, 14:27:55
2 for mitigating against future hazards in 14:28:00
3 areas that haven't been damaged by an event. 14:28:03
4     And so we made a determination 14:28:06
5 that because it wasn't damage related we 14:28:07
6 would not include those costs in our claim. 14:28:09
7 Q. Okay. 14:28:14
8     The largest component of this 14:28:15
9 claim for 160 million dollars is the amount 14:28:16
10 for public assistance, which is 131 million 14:28:20
11 dollars; correct? 14:28:24
12 A. Yes. 14:28:25
13 Q. Okay. 14:28:25
14     And the public assistance amount 14:28:27
15 is the amount that we discussed earlier as 14:28:28
16 being obligated but not necessarily spent 14:28:30
17 yet; correct? 14:28:33
18 A. Yes. Well, for the Butte Fire 14:28:36
19 claim most of it has been spent but not all 14:28:37
20 of it yet. 14:28:39
21 Q. Okay. 14:28:39
22     And then for North Bay you would 14:28:40
23 have the amount that was obligated. But, 14:28:44
24 again, you wouldn't know the actual amount 14:28:46
25 that was spent yet; correct? 14:28:48

Veritext Legal Solutions
866-299-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 53 of 101

1    A.   Correct.  But, again, it is    14:28:49
2  almost all -- it's almost the same at this    14:28:51
3  point.    14:28:53
4    Q.  And then for Camp, which I think    14:28:53
5  is the largest claim, that number is more    14:28:55
6  unknown than it is for both Butte and North    14:29:00
7  Bay; correct?    14:29:05
8        MR. TYE:  Object to the form of    14:29:05
9  the question.    14:29:05
10    A.  That's correct.    14:29:06
11    Q.  Okay.    14:29:06
12        Thank you.  That was helpful.    14:29:07
13        So we discussed a part of FEMA's    14:29:12
14  claim against PG&E includes costs associated    14:29:14
15  with debris removal; correct?    14:29:16
16    A.  Correct.    14:29:20
17    Q.  All right.    14:29:21
18        And you testified that it was    14:29:22
19  roughly half of the claim was for debris    14:29:22
20  removal costs?    14:29:24
21        MR. TYE:  Objection,    14:29:26
22  mischaracterizes prior testimony.    14:29:26
23    A.  Right.  I said before that I    14:29:32
24  don't know the exact percentage, but I    14:29:33
25  believe it would represent over half of our    14:29:35

1  claim.    14:29:38
2    Q.  Over half.  Okay.  Thank you.    14:29:38
3        Can you go back to Exhibit 2,    14:29:41
4  which is the GAO report?    14:29:43
5        Could you go to page 21?    14:29:55
6        [Pause.]    14:29:55
7    Q.  Are you there?    14:30:09
8    A.  Yes.    14:30:10
9    Q.  Okay.    14:30:10
10        Looking at the paragraph at the    14:30:10
11  bottom of the page, it reads:    14:30:14
12        "According to local officials    14:30:16
13  there was some confusion over how much    14:30:17
14  containment soil should be removed from some    14:30:21
15  properties, specifically in some cases,    14:30:23
16  USACE removed more soil than necessary at    14:30:25
17  home sites in an attempt to scrape the soil    14:30:28
18  deeply enough to remove all possible    14:30:32
19  contaminants at the site.  However, this did    14:30:34
20  not take into account that some contaminants    14:30:37
21  such as arsenic occur naturally in the soil.    14:30:40
22  As a result some property owners were left    14:30:43
23  with large overexcavated pits on their    14:30:46
24  property that needed to be filled in before    14:30:48
25  rebuilding could occur."    14:30:51

1        Do you know what this is    14:30:54
2  referring to?    14:30:55
3        MR. TYE:  The United States    14:30:56
4  objects to that question as beyond the    14:30:56
5  scope of the 30(b)(6) notice.    14:30:58
6        The witness can answer as to his    14:30:59
7  personal knowledge for this issue, but    14:31:01
8  the testimony is not in his 30(b)(6)    14:31:02
9  capacity on behalf of FEMA.    14:31:06
10    A.  Yes, I am familiar with this    14:31:10
11  issue as I worked on this disaster    14:31:10
12  declaration.    14:31:12
13    Q.  Did you work on this part of the    14:31:15
14  report?    14:31:17
15        MR. TYE:  Same objection as to    14:31:18
16  scope.    14:31:19
17    A.  No, not for this report, this    14:31:19
18  GAO report.    14:31:24
19    Q.  Okay.    14:31:24
20        What were you referring to?    14:31:25
21    A.  I was referring to the actual    14:31:26
22  issues we were working with the Army Corps    14:31:32
23  on related to the debris removal.    14:31:36
24    Q.  Okay.    14:31:38
25        So you're familiar with the    14:31:38

1  issues that are referenced in this    14:31:40
2  paragraph?    14:31:41
3    A.  Correct.    14:31:42
4    Q.  Okay.    14:31:42
5        Do you know how many properties    14:31:43
6  were impacted by the over-removal of soil?    14:31:44
7        MR. TYE:  Objection to the form    14:31:49
8  of that question.  Also the United    14:31:50
9  States objects as to the scope of that    14:31:51
10  question.    14:31:54
11    A.  I don't know how many were    14:31:55
12  impacted by this particular issue.    14:31:57
13    Q.  Okay.  Does FEMA believe that it    14:31:58
14  should be reimbursed for debris removal    14:32:02
15  costs if substantial damage to the property    14:32:05
16  was caused in the process?    14:32:07
17        MR. TYE:  Objection to the form    14:32:11
18  of that question.  FEMA also objects    14:32:12
19  to the scope of that question -- or    14:32:19
20  United States objects to the scope of    14:32:21
21  that question.    14:32:23
22        Go ahead.    14:32:23
23    A.  So the work here was still    14:32:25
24  eligible work that was performed.  In some    14:32:32
25  cases where additional work that wasn't    14:32:36

Veritext Legal Solutions
866-299-5127

1  needed to be performed would have been          14:32:39
2  corrected by the -- potentially would have      14:32:41
3  been corrected by the Army Corps of             14:32:47
4  Engineers. So I can't speak to what -- I        14:32:49
5  don't have direct knowledge of what costs       14:32:53
6  they submitted to FEMA that were related        14:32:55
7  specifically to this issue, but my              14:32:59
8  understanding is that they worked with their    14:33:01
9  contractors to disallow many of these costs,    14:33:05
10 so FEMA never would have reimbursed those       14:33:07
11 costs in the first place.                       14:33:09
12     Q. So would any component of FEMA's         14:33:10
13 claims against PG&E include those types of      14:33:12
14 costs?                                          14:33:15
15        MR. TYE: United States objects           14:33:16
16 to that question as beyond the scope            14:33:17
17 of the 30(b)(6) notice.                         14:33:18
18        The witness can answer as to his         14:33:19
19 personal knowledge for this issue, but          14:33:21
20 the testimony is not in his 30(b)(6)            14:33:22
21 capacity on behalf of FEMA.                     14:33:25
22     A. I personally can't say 100               14:33:29
23 percent for sure, but my understanding,         14:33:31
24 again, is that the Army Corps worked with       14:33:32
25 its contractors and did not reimburse them      14:33:34

                                                   Page 210

1  where excessive soil was removed. And so        14:33:41
2  those costs never would have been submitted     14:33:44
3  to FEMA for payment, so those costs never       14:33:45
4  would have been included in FEMA's claim.       14:33:47
5      Q. So your hope would be that               14:33:50
6  they're not included but it's possible some     14:33:51
7  of them could have gone into the amount?        14:33:54
8         MR. TYE: Objection,                      14:33:56
9  mischaracterizes prior testimony.               14:33:58
10 Objection to the scope of that                  14:34:01
11 question. The United States objects             14:34:02
12 to that question as beyond the scope            14:34:03
13 of the 30(b)(6) witness.                        14:34:05
14        The witness can answer as to his         14:34:06
15 personal knowledge for this issue, but          14:34:08
16 his testimony is not in his 30(b)(6)            14:34:09
17 capacity.                                       14:34:12
18     A. I would have to go back and              14:34:13
19 review all of the Army Corps records, which     14:34:15
20 I have not done. So --                          14:34:18
21     Q. You just don't know?                     14:34:20
22     A. I personally --                          14:34:21
23        MR. TYE: Objection,                      14:34:22
24 mischaracterizes prior testimony.               14:34:22
25 Objection, argumentative. Objection,            14:34:24

                                                   Page 211

1  beyond the scope of the 30(b)(6)                14:34:27
2  deposition notice.                              14:34:29
3      A. I personally do not know.                14:34:30
4         MR. GOODMAN: Okay. Take a                14:34:33
5  break?                                          14:34:34
6         THE WITNESS: Sure.                       14:34:36
7         THE VIDEOGRAPHER: Stand by,              14:34:41
8  please.                                         14:34:41
9         This marks the end of media              14:34:42
10 number 3. Going off the record at               14:34:44
11 2:34 p.m.                                       14:34:46
12 [Recess at 2:34 p.m.]                           14:34:48
13 [Resuming at 2:48 p.m.]                         14:34:51
14        THE VIDEOGRAPHER: We're back on  14:47:50
15 the record at 2:48 p.m. This marks             14:48:05
16 the beginning of media number 4 in the         14:48:07
17 deposition of John-Paul Henderson.             14:48:10
18        EXAMINATION                              14:48:11
19 BY MR. VORA:                                    14:48:11
20     Q. Hi, Mr. Henderson. My name is           14:48:12
21 Samir Vora. I represent the Official           14:48:14
22 Committee of Unsecured Creditors for PG&E.     14:48:17
23 We met earlier this morning.                   14:48:21
24        I just have a handful of                14:48:22
25 questions and then hopefully we can get out    14:48:23

                                                   Page 212

1  of here today.                                  14:48:25
2         You're here to provide testimony  14:48:25
3  on behalf of FEMA concerning the factual and  14:48:27
4  evidentiary basis in support -- or that       14:48:30
5  support FEMA's proofs of claim; is that       14:48:33
6  right?                                          14:48:33
7      A. Correct.                                 14:48:36
8      Q. And those proofs of claim relate       14:48:36
9  to the North Bay, Butte and Camp Fires?        14:48:38
10        MR. TYE: Object to form.                14:48:43
11     A. Yes, but again I would just            14:48:44
12 clarify that the term "North Bay" for us       14:48:46
13 also includes some of our fires in Butte,      14:48:49
14 Yuba and Nevada Counties as well.              14:48:53
15     Q. Thanks for that clarification.         14:48:57
16        And I believe you said that the        14:48:58
17 facts and evidence upon which FEMA relies in  14:49:01
18 connection with its proofs of claim are       14:49:04
19 based at least in part on publicly available  14:49:06
20 CAL FIRE, CPUC and criminal investigation     14:49:10
21 reports; is that right?                         14:49:14
22        MR. TYE: Object to the form.           14:49:18
23     A. Well, just in terms of the             14:49:20
24 criminal -- I don't know if that's the        14:49:21
25 accurate term but --                           14:49:22

                                                   Page 213

54 (Pages 210 - 213)

Veritext Legal Solutions
800-899-5172

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 55 of 101

| | |
|---|---|
| 1  Q.  I was referring to the  14:49:24 | 1  A.  I don't believe that was the  14:51:41 |
| 2  proceedings before Judge Alsup.  14:49:25 | 2  purpose of any of those specific reports or  14:51:42 |
| 3  A.  Yes, that would be correct. And  14:49:27 | 3  other documents. So they would not have  14:51:45 |
| 4  then we would also have any additional  14:49:28 | 4  drawn such a conclusion.  14:51:47 |
| 5  evidence that may be developed in the course  14:49:30 | 5  Q.  Right.  14:51:50 |
| 6  of the litigation.  14:49:32 | 6  So they don't draw that  14:51:50 |
| 7  Q.  Sure.  14:49:33 | 7  conclusion?  14:51:51 |
| 8  And so, as you sit here today,  14:49:35 | 8  MR. TYE: Objection,  14:51:51 |
| 9  are you aware of any materials, those  14:49:37 | 9  mischaracterizes prior testimony.  14:51:52 |
| 10  materials, upon which FEMA relies to support  14:49:41 | 10  A.  Again, their intent was -- their  14:51:54 |
| 11  its claims that explicitly conclude that  14:49:44 | 11  purpose is to document other things such as  14:51:56 |
| 12  PG&E intentionally caused the wildfires?  14:49:49 | 12  safety violations by PG&E. So they wouldn't  14:51:58 |
| 13  MR. TYE: Object to the form.  14:49:52 | 13  draw such conclusions.  14:52:01 |
| 14  A.  So, again, FEMA's allegation  14:49:55 | 14  Q.  Okay. Okay.  14:52:02 |
| 15  relates to intentional omissions created  14:49:57 | 15  And so those conclusions were  14:52:09 |
| 16  by -- intentional omissions by PG&E. And so  14:49:59 | 16  drawn by FEMA based on that, those facts and  14:52:11 |
| 17  our position is that those reports provide  14:50:03 | 17  evidences, evidence contained within those  14:52:13 |
| 18  evidence of, again, knowledge that PG&E was  14:50:06 | 18  materials?  14:52:16 |
| 19  aware of safety issues in violations of  14:50:12 | 19  MR. TYE: Object to the form.  14:52:17 |
| 20  state law and yet failed to address those.  14:50:14 | 20  A.  Again, FEMA reviewed those  14:52:22 |
| 21  Q.  Right.  14:50:16 | 21  materials and that was the conclusion that  14:52:24 |
| 22  I understand that it's your  14:50:17 | 22  the agency reached in making its decision to  14:52:28 |
| 23  position that taking a look at those  14:50:19 | 23  file its proof of claim in the bankruptcy.  14:52:30 |
| 24  materials, FEMA has concluded that there are  14:50:22 | 24  Q.  Okay.  14:52:32 |
| 25  intentional omissions by PG&E that are  14:50:26 | 25  And you testified that FEMA did  14:52:33 |
| Page 214 | Page 216 |

| | |
|---|---|
| 1  relevant to FEMA's claims, but I'm asking a  14:50:29 | 1  not -- I believe you testified earlier today  14:52:35 |
| 2  slightly different question.  14:50:33 | 2  that FEMA didn't independently verify the  14:52:37 |
| 3  And that is, as you sit here  14:50:35 | 3  facts in evidence of the CAL FIRE reports  14:52:40 |
| 4  today, of those materials upon which FEMA  14:50:37 | 4  for the CPUC materials it relied upon in  14:52:43 |
| 5  relies to support its claims, are there any  14:50:39 | 5  connection with the proofs of claim; is that  14:52:46 |
| 6  that explicitly within those materials  14:50:43 | 6  correct?  14:52:49 |
| 7  conclude that PG&E intentionally caused the  14:50:47 | 7  MR. TYE: Object to the form.  14:52:49 |
| 8  wildfires?  14:50:51 | 8  A.  Yes, we were relying on the  14:52:52 |
| 9  MR. TYE: Objection, asked and  14:50:52 | 9  reports on their face and have not done any  14:52:53 |
| 10  answered. Object to the form.  14:50:53 | 10  separate independent verification or review.  14:52:55 |
| 11  A.  I don't believe any individual  14:51:02 | 11  Q.  And you just -- you just  14:52:58 |
| 12  one has that conclusion, but looking at the  14:51:06 | 12  anticipated my next question. Is it fair to  14:52:59 |
| 13  evidence as a whole, we believe that there  14:51:08 | 13  say that FEMA accepted the assertions and  14:53:01 |
| 14  is sufficient evidence.  14:51:11 | 14  conclusions in those reports at face value?  14:53:04 |
| 15  Q.  Right.  14:51:13 | 15  A.  Yes.  14:53:04 |
| 16  So as you look at the evidence,  14:51:14 | 16  Q.  And are you aware of any  14:53:08 |
| 17  "you" being FEMA, you conclude that there  14:51:16 | 17  criticisms of the CAL FIRE or CPUC reports  14:53:11 |
| 18  are intentional omissions that are relevant  14:51:18 | 18  or investigations?  14:53:16 |
| 19  for purposes of your claim. But to be  14:51:19 | 19  MR. TYE: United States objects  14:53:18 |
| 20  clear, the materials upon which FEMA bases  14:51:21 | 20  to that question as beyond the scope  14:53:18 |
| 21  its proofs of claim, those materials  14:51:24 | 21  of the 30(b)(6) notice.  14:53:19 |
| 22  themselves do not explicitly conclude that  14:51:27 | 22  The witness can answer as to his  14:53:20 |
| 23  PG&E intentionally caused the wildfires?  14:51:32 | 23  personal knowledge for this issue, but  14:53:22 |
| 24  MR. TYE: Object to the form.  14:51:36 | 24  the testimony is not in his 30(b)(6)  14:53:24 |
| 25  Also objection, asked and answered.  14:51:37 | 25  capacity on behalf of FEMA.  14:53:26 |
| Page 215 | Page 217 |

Veritext Legal Solutions
866 299-5127

1     A.   I'm not personally aware of any    14:53:30
2 particular criticism of those reports.    14:53:32
3     Q.   Okay.               14:53:34
4        So naturally you didn't        14:53:35
5 investigation any such criticisms to the     14:53:36
6 extent that any -- any exist?          14:53:39
7       MR. TYE: Objection,        14:53:42
8 mischaracterizes prior testimony.       14:53:43
9       Also object to the scope of that    14:53:45
10     question.               14:53:46
11     A.   I'm not aware of any criticism    14:53:48
12 of those reports, so we would not have       14:53:50
13 looked into that.             14:53:51
14     Q.   Okay.             14:53:52
15        And then I think you testified    14:53:56
16 that this is the first time that FEMA has     14:53:57
17 ever invoked 317 to recover costs against a   14:54:00
18 third party. Is that correct?         14:54:04
19       MR. TYE: Objection,        14:54:07
20     mischaracterizes prior testimony.      14:54:08
21 BY MR. VORA:             14:54:11
22     Q.   Have I mischaracterized your    14:54:11
23 prior testimony?              14:54:12
24     A.   I would have to go back and look   14:54:13
25 at my prior testimony. But --         14:54:16

1       MR. TYE: Can you go ahead     14:54:21
2     restate the question?          14:54:21
3       MR. VORA: Yeah. Yeah, no     14:54:23
4     problem.                14:54:24
5       MR. TYE: Yeah.          14:54:24
6 BY MR. VORA:             14:54:24
7     Q.   I think you testified that this    14:54:25
8 is the first time that FEMA has invoked 317   14:54:26
9 to recover costs against a third party. Is   14:54:29
10 that correct?               14:54:29
11     A.   So I think I previously      14:54:35
12 testified that based on our review of agency   14:54:36
13 records and speaking with agency employees    14:54:39
14 with historical knowledge, we're not aware    14:54:41
15 of any other prior incidents of FEMA      14:54:43
16 bringing a cause of action under section     14:54:46
17 317.                  14:54:49
18     Q.   Okay.             14:54:49
19        So as FEMA's 30(b)(6) designee    14:54:50
20 here providing testimony on behalf of FEMA,   14:54:54
21 you're not aware of FEMA previously bringing   14:54:56
22 a caution against a third party under      14:54:59
23 section 317; correct?          14:55:03
24       MR. TYE: Object to the form.    14:55:06
25 BY MR. VORA:             14:55:07

1     Q.   Correct?             14:55:07
2     A.   Correct, we have not brought a    14:55:07
3 317. We have not tried to recover costs     14:55:10
4 under section 317 before.        14:55:13
5     Q.   Is there something unique about   14:55:17
6 this particular matter that has led FEMA to   14:55:19
7 seek to recover costs under section 317?     14:55:25
8       MR. TYE: Object to the form.    14:55:28
9     A.   I think the unique thing in, in    14:55:33
10 these particular disasters, is that there is   14:55:35
11 a clear responsible party, and the evidence   14:55:37
12 supports a finding that intentional --      14:55:42
13 intentional omissions by that party resulted   14:55:46
14 in the wildfires for which we provided      14:55:48
15 assistance.              14:55:51
16        I think, as I stated to one of    14:55:54
17 the previous questions, we're used to      14:55:56
18 naturally occurring events, not those caused   14:56:00
19 by another party.            14:56:02
20     Q.   Are you aware of instances in    14:56:09
21 which FEMA has provided disaster assistance   14:56:11
22 in which there could be a -- or in which     14:56:14
23 there was a potentially responsible party?   14:56:16
24       MR. TYE: Object to the form of   14:56:22
25     the question. United States also     14:56:23

1     objects to that question as beyond the   14:56:24
2     scope of the 30(b)(6) notice.      14:56:26
3        The witness can answer as to his   14:56:27
4     personal knowledge for this issue, but   14:56:29
5     his testimony is not in his 30(b)(6)    14:56:31
6     capacity on behalf of FEMA.       14:56:33
7     A.   I can think of a few instances,   14:56:36
8 but I'm not familiar enough with the facts    14:56:39
9 to really discuss them in detail. The      14:56:41
10 obvious one would be FEMA's response to the   14:56:45
11 September 11th terrorist attacks.       14:56:48
12     Q.   Any other ones?        14:56:52
13       MR. TYE: Again, same objection   14:56:55
14     as to scope. The United States      14:56:56
15     objects to the question as beyond the   14:56:57
16     scope of the 30(b)(6) notice.      14:56:58
17        The witness can answer as to his   14:57:00
18     personal knowledge for this issue, but   14:57:01
19     the testimony is not in his 30(b)(6)    14:57:03
20     capacity on behalf of FEMA.       14:57:05
21     A.   Oklahoma City bombing, 1995.    14:57:08
22     [Pause.]              14:57:50
23     A.   I'm trying to think --      14:57:51
24     Q.   Sure. Take your time.      14:57:52
25     [Pause.]              14:57:53

| | |
|---|---|
| 1    A.   Could you just also repeat the   14:57:58 | 1      This concludes today's   15:00:12 |
| 2   question to kind of refresh my memory --   14:57:59 | 2   deposition of John-Paul Henderson.   15:00:13 |
| 3    Q.   Yeah.   14:58:01 | 3   Total number of media used is four.   15:00:17 |
| 4    A.   -- of what I'm thinking about?   14:58:02 | 4   Going off the record at 3 o'clock p.m.   15:00:19 |
| 5    Q.   The question was are there other   14:58:08 | 5      [Deposition conclude at 3   15:00:21 |
| 6   instances that you can think of in which   14:58:11 | 6   o'clock p.m.]   15:02:01 |
| 7   FEMA provided disaster relief and where   14:58:13 | 7      [Deposition Exhibits 1 through   15:02:02 |
| 8   there was a potentially responsible party?   14:58:18 | 8   20 marked for identification and   15:02:06 |
| 9      MR. TYE: We -- United States   14:58:22 | 9   attached to the original deposition   15:02:08 |
| 10   reasserts its objection as to the   14:58:24 | 10   transcript.]   15:02:09 |
| 11   scope of that question. Also object   14:58:25 | 11      [Signature reserved.]   15:02:23 |
| 12   to that question as it calls for   14:58:28 | 12 |
| 13   speculation.   14:58:29 | 13 |
| 14    A.   Yeah, so just based on personal   14:58:36 | 14 |
| 15   knowledge, I know there was a Texas chemical   14:58:39 | 15 |
| 16   plant explosion that received an emergency   14:58:47 | 16 |
| 17   declaration, but I don't know the details.   14:58:49 | 17 |
| 18      [Pause.]   14:58:49 | 18 |
| 19    A.   There was a chemical spill. I   14:59:02 | 19 |
| 20   don't know the details though.   14:59:06 | 20 |
| 21    Q.   Do you know where that was?   14:59:10 | 21 |
| 22    A.   I think it was West Virginia.   14:59:11 | 22 |
| 23      Those are just a few examples   14:59:22 | 23 |
| 24   that I can think of.   14:59:24 | 24 |
| 25    Q.   Sure.   14:59:24 | 25 |
| Page 222 | Page 224 |

| | |
|---|---|
| 1    A.   But, again, I'm not familiar   14:59:25 | 1    ********************** |
| 2   with any of the details of the background of   14:59:26 | 2    C E R T I F I C A T E |
| 3   those.   14:59:28 | 3    ********************** |
| 4    Q.   Understood, and I appreciate it.   14:59:28 | 4 |
| 5    A.   I mean, I know September 11th   14:59:29 | 5      I, PAUL J. FREDERICKSON, |
| 6   but --   14:59:32 | 6   California Certified Shorthand |
| 7      MR. VORA: Right. And I don't   14:59:33 | 7   Reporter No. 13164, do hereby certify: |
| 8   have any further questions for you.   14:59:36 | 8      That prior to being examined, |
| 9      THE WITNESS: Okay.   14:59:36 | 9   the witness named in the foregoing |
| 10      MR. GOODMAN: Nor do I.   14:59:36 | 10   deposition was by me duly sworn or |
| 11      MR. TYE: I don't have any   14:59:39 | 11   affirmed to testify to the truth, the |
| 12   questions.   14:59:40 | 12   whole truth and nothing but the truth; |
| 13      THE VIDEOGRAPHER: Counsel?   14:59:40 | 13      That said deposition was taken |
| 14      [Pause.]   14:59:40 | 14   down by me in shorthand at the time |
| 15      THE VIDEOGRAPHER: Anyone on the   14:59:44 | 15   and place therein named, and |
| 16   phone have questions, counsel?   14:59:45 | 16   thereafter reduced to print by means |
| 17      MR. HEYN: This is Matt Heyn.   14:59:49 | 17   of computer-aided transcription; and |
| 18   No questions.   14:59:51 | 18   the same is a true, correct and |
| 19      MS. SHEETS: Victoria Sheets, no   14:59:51 | 19   complete transcript of said |
| 20   questions.   14:59:57 | 20   proceedings. |
| 21      MS. GINTY: Danielle Ginty, I   15:00:04 | 21      I further certify that I am not |
| 22   don't have any questions.   15:00:07 | 22   interested in the outcome of the |
| 23      MS. GENTEL: Sophia Gentel, no   15:00:08 | 23   action. |
| 24   questions.   15:00:10 | 24      Witness my hand this 12th day of |
| 25      THE VIDEOGRAPHER: Thank you.   15:00:11 | 25   February 2020. |
| Page 223 | Page 225 |

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 58 of 101

```
 1
 2
 3
 4
 5  Paul Frederickson
 6
 7  PAUL J. FREDERICKSON, CSR
 8  CA CSR 13164
 9  Expiration date: January 31, 2021
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
Page 226

```
 1      ***********************
 2          WITNESS SIGNATURE
 3      ***********************
 4
 5
 6          I, JOHN-PAUL HENDERSON, do hereby
 7  declare under penalty of perjury that I
 8  have read the foregoing transcript of my
 9  deposition; that I have made such
10  corrections as noted herein, in ink,
11  initialed by me, or attached hereto; that
12  my testimony as contained herein, as
13  corrected, is true and correct.
14
15      EXECUTED this_____day
16  of_____, 2020,
17  at_____(City),
18  _____(State).
19
20
21
22
23
24  _____
25      JOHN-PAUL HENDERSON
```
Page 227

58 (Pages 226 - 227)

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 59
of 101

| **&** | **127** 3:8 | **1995** 221:21 | **2018** 55:5 82:23 |
|---|---|---|---|

**&** 5:7,18 6:3,13
15:12,16,21

**1**

**1** 1:25 8:12 13:17
23:9,10,14 42:13
42:14,20 43:8
74:24 102:6 131:8
131:11 137:14,20
138:1 141:3
156:24 157:9
166:8 197:13
224:7
**10** 10:8 130:11,12
131:10 136:13
139:11,16
**10-10-17** 11:24
**100** 139:11 210:22
**10019** 6:6
**10019-6099** 6:15
**106** 9:12
**10:47** 74:25 75:1
**11** 1:22 10:13 13:1
13:5 18:21 133:6
133:7 134:4
**11-12-18** 11:18
**11-8-19** 11:6
**11/13** 12:3 177:13
**1100** 4:15 7:5
**1111** 17:3
**117** 9:17
**11:01** 75:2,4
**11th** 221:11 223:5
**12** 10:4,17 125:14
126:10 140:7,9,10
148:20 157:13
**12-22-14** 10:14
**1200** 17:4
**126** 10:1

**12:05** 129:15,16
**12:48** 130:2,4
**12th** 225:24
**13** 11:1 144:19,20
144:24
**130** 10:8
**1300** 4:4
**131** 205:10
**13164** 225:7 226:8
**133** 10:13
**14** 11:5 147:20,21
**140** 10:17
**144** 11:1
**147** 11:5
**149** 11:9
**15** 11:9 116:21
117:15 149:15,16
**1500** 5:20
**151** 11:13
**1520** 2:19 14:2
**156** 11:17
**16** 8:4 11:13 151:1
151:2
**160** 205:9
**163** 11:20
**16469** 226:5
**165** 11:23
**17** 11:17 88:24
156:14,15 159:18
**1702** 5:9
**177** 12:1
**18** 11:20 163:18
163:19 164:7,10
**180** 2:18 14:2
**1850** 7:4
**19** 11:23 165:9,10
165:22
**19-30088** 1:4 2:4
13:25

**1:13** 154:7
**1:23** 154:5,6
**1:30** 154:9

**2**

**2** 8:15 39:18,19
44:5,7 46:24 47:6
75:5 98:22 105:21
105:22 107:1
116:17 117:19
125:9 126:14
129:14 134:1,5,9
136:13 151:8
155:13 157:2
164:3 165:21
166:9 207:3
**20** 12:1 177:7,8
224:8
**20-5** 42:15
**200** 3:17 139:12
**2000** 3:7
**20004** 4:16
**20006** 7:6
**2005** 20:22
**2013** 130:17,20
**2014** 133:13
134:19 138:7
**2015** 76:2 86:17
87:1 108:2 131:17
131:25 134:17
137:14,20 138:1
**2016** 106:5,21
**2017** 8:23 58:4,13
126:23 127:13
128:4,13,18,24
131:18 132:1
134:17 145:3
165:17 166:12
175:11 176:2
177:14 194:18

**2018** 55:5 82:23
86:17 87:2 125:16
126:9 131:18
132:1 134:18
157:13,22 158:12
158:16,17 159:17
160:8,25
**2019** 40:1 115:17
115:20 116:21
117:15 148:3
149:23 151:8
**202.305.2419** 4:17
**202.835.7544** 7:7
**2020** 1:22 13:1,5
225:25 227:16
**2021** 226:9
**21** 207:5
**212** 8:5
**212.474.1279** 6:7
**212.728.8858** 6:16
**213.269.6000** 5:11
**216.621.0200** 3:10
**22** 133:13 138:7
**227** 1:25
**23** 8:12
**2300** 3:16
**24** 90:15,18
**28** 106:5,21
**29** 145:2
**2:34** 212:11,12
**2:48** 212:13,15

**3**

**3** 8:22 57:19,20
58:17 59:7 66:12
125:8 130:5
136:14 141:6,11
154:11 159:4
165:19 177:14
212:10 224:4,5
**3,000** 136:15

Page 1

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 60
of 101

**3-29-17** 11:2
**3.9** 172:24 185:21 190:6
**30** 23:9,17,21,25 24:5,9 25:15,24 40:20,23 41:22 42:2 43:1 46:9,13 47:12,15 48:10,13 51:2,5 52:13,16 53:9,12 54:9,12 55:14,17 57:7,10 59:15,18 62:12,15 62:25 63:4,15,19 64:18,21 65:7,11 66:1,4 69:24 72:23 73:2 78:22 96:15,19 97:8,11 98:4,7 101:11 108:14 109:19,23 110:23 111:2,19 111:22 113:1,4 114:12,15 115:3,6 116:1,4 118:15,19 119:17,21,24 120:13 127:12 128:2 132:5,8,19 135:3,6 136:7,10 141:23 142:1,19 142:22 144:7,10 145:13,16 146:5,9 146:22,25 148:13 148:16 149:6,9,23 150:8,11 151:18 151:21 163:10,13 167:21 168:5 171:8,11 173:23 174:1 175:18,22 176:20,23 178:10 178:13 180:4,7 184:7,10 187:1,4 187:11 188:1,4

191:13,17 196:13 196:16 197:21,24 198:17,21 208:5,8 210:17,20 211:13 211:16 212:1 217:21,24 219:19 221:2,5,16,19
**300** 5:8
**31** 226:9
**312** 184:21
**317** 87:21 88:1,7 88:23 89:8,12 90:6,23 91:6 99:17 103:18 167:12,17,23 168:9,13,16 169:3 184:20 218:17 219:8,17,23 220:3 220:4,7
**3409** 156:5
**3802-0112** 3:18
**3846976** 1:24
**39** 8:15

**4**
**4** 9:1 74:15 75:9 75:11 102:6 105:19 114:22 141:4 164:2 201:8 212:16
**4-28-16** 9:13
**4-30-19** 11:10
**407.649.4092** 3:19
**415.765.9506** 5:22
**42** 44:5,7 46:24 47:5 157:17 158:2
**4240** 163:24 164:4
**4344** 165:16,21
**4407** 155:15,17,21
**44114** 3:9

**5**
**5** 9:4 82:3,4,15 116:16 131:7 155:12 201:10
**5-15-19** 9:18
**5-2-19** 11:14
**5-6-13** 10:9
**5121** 157:17 158:2
**5122** 44:5,7 46:24 47:5
**57** 8:22
**580** 5:19

**6**
**6** 9:7 23:9,17,21 23:25 24:5,9 25:15,24 40:20 41:22 42:2 43:1 46:9 47:12,15 48:10,13 51:2,5 52:13 53:9 54:9 55:14,17 57:7,10 59:15 62:12,15,25 63:4,15,19 64:18 64:21 65:7,11 66:1,4 69:24 72:23 73:2 78:22 88:9,10,20 90:15 90:18 96:15,19 97:8,11 98:4,7 101:11 103:12 108:14 109:19,23 110:23 111:2,19 111:22 113:1,4 114:12,15 115:3,6 116:1,4 118:15,19 119:17,21,24 120:13 127:12 128:2 130:16,20 131:7 132:5,8,19 133:24 134:1,9

135:3,6 136:7,10 141:2,6,11,23 142:1,19,22 144:7 144:10 145:13,16 146:5,9,22,25 148:13,16 149:6,9 150:8,11 151:18 151:21 163:10,13 167:21 168:5 171:8,11 173:23 174:1 175:18,22 176:20,23 178:10 178:13 180:4,7 184:7,10 187:1,4 187:11 188:1,4 191:13,17 196:13 196:16 197:21,24 198:17,21 201:10 208:5,8 210:17,20 211:13,16 212:1 217:21,24 219:19 221:2,5,16,19
**6-8-18** 10:2

**7**
**7** 9:12 98:18 103:3 103:3,10,10 106:15,16
**75** 9:1
**787** 6:14

**8**
**8** 9:17 117:9,10 120:17 125:15 126:9 148:2 157:22 158:12,16 158:24 160:7,25 166:12
**82** 9:4
**825** 6:5
**88** 9:7

Case: 19-30088 Doc# 5834-1 Filed: 02/19/20 Entered: 02/19/20 14:18:03 Page 61 of 101

**9**

**9** 10:1 108:2 126:3
126:4 156:4
**9-22-15** 11:21
**90013** 5:10
**916.210.7804** 4:7
**94104** 14:3
**94104-1036** 5:21
**94244-2550** 4:6
**944255** 4:5
**94607** 17:4
**9:37** 2:20 13:2,4

**a**

**a.m.** 2:20 13:2,4
74:25 75:1,2,4
**ability** 18:2 33:14
175:14 176:5
**able** 38:17
**absence** 49:5,11
50:9 56:25
**absent** 57:16 58:5
75:18
**academy** 111:25
**accepted** 217:13
**access** 175:14
176:5
**account** 207:20
**accountability**
40:1
**accurate** 91:13
188:13,20 200:18
213:25
**accurately** 71:13
72:2 79:12
**act** 30:25 31:8
35:23 36:14 49:8
49:18 51:10 85:12
87:19,21 88:23
89:4,8,12 90:6,12
90:24 91:7 94:1,6

94:11 99:17
103:19 104:5
156:10 157:17,18
158:2,2 160:11
161:3 167:12,17
167:24 168:9,17
169:3
**action** 14:10 60:10
95:19 96:2,9,22
104:2,19 138:25
184:12,15 219:16
225:23
**actions** 8:18 40:3
93:21 96:3 97:24
98:16 103:17
114:7,23 124:13
138:21 139:5
145:25 149:3,13
150:18,24 152:5
152:10 154:19
155:5 169:8,22
**activate** 38:14
**actively** 103:5,19
**activities** 27:9
52:3 54:3 143:9
147:13
**activity** 49:1
171:23 172:15
**actor** 93:19
**acts** 88:3,5 99:2
146:12
**actual** 92:25 109:8
176:17 178:2
205:24 208:21
**ad** 5:15 6:11 15:13
15:22
**added** 158:7
**additional** 8:18
40:3 69:19 70:10
71:23 72:11 73:13
73:25 75:18 79:8

80:12 81:25 84:9
105:15 109:4
127:18 141:14
166:4,5,6 180:14
189:25 209:25
214:4
**address** 8:19
16:25 17:2 40:3
214:20
**addresses** 147:12
**adequately** 99:9
99:25 100:24
**administering**
201:15
**administers** 61:21
**administrative**
201:14 204:14
**administrator**
61:18,19 67:17
68:7
**admission** 24:18
80:4 84:5 105:11
121:12 124:4
127:25 160:21
**admissions** 129:4
**adrian** 61:7
**advance** 193:21
194:1,7
**advanced** 193:7
193:12
**advice** 21:14
22:16 26:15
**advisor** 22:15
**affect** 191:3
**affiliations** 14:15
**affirmative** 169:8
**affirmed** 225:11
**afternoon** 130:1
**agencies** 164:25
**agency** 21:14
23:19 27:16 28:4

36:2 41:9,11 42:6
42:8 60:16,22
67:4 68:8,17
76:22 83:6 93:5
104:16 112:15,17
123:14 128:16
139:25 142:6
168:10 170:4
182:7 192:20
202:3,8,16,21
216:22 219:12,13
**agency's** 41:13
143:4
**ago** 33:25 195:4
**agree** 13:16 95:18
96:8 119:25 120:3
122:19 128:1
131:16 132:18,24
134:16 152:23
153:9,22 166:13
200:7,13,17
**agreement** 36:8
**ahead** 23:8 39:17
43:4,11 48:17
57:18,24 74:14
75:9 82:2 88:9
103:13 125:25
133:4 140:7
147:19 150:25
157:9 163:17
165:8 177:6
189:19 209:22
219:1
**aid** 169:9
**aided** 225:17
**akin** 5:18 15:11
**akingump.com**
5:24
**allegation** 91:22
92:7,16,19,20,22
97:17 105:3

Page 3

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 62
of 101

214:14
**allegations** 89:16
94:24 97:14 98:10
103:1 104:14
**allege** 153:6
**alleged** 137:12,18
**alleges** 160:1
168:21
**alleging** 102:18
145:19 148:18
**alleviating** 44:2
**allocate** 202:15
**allocated** 204:18
**allow** 42:23
**alsup** 69:18 70:9
71:23 78:1 79:7
84:9 105:14
113:25 214:2
**amador** 108:1
**amended** 8:13
23:16 164:17
**amendments**
166:2
**american** 20:12
20:15
**amount** 70:1
78:25 181:20
183:1,19 187:21
188:12 190:1,23
191:3 195:10,12
195:14 200:3,9,21
201:17,19 205:9
205:14,15,23,24
211:7
**amounts** 185:13
187:10,22 188:19
188:21 193:7
194:14,20 195:20
**analysis** 65:13,16
69:4,7 77:9,13
83:12,15 186:21

187:6 196:8
199:18 200:1
**angeles** 5:10 159:6
159:8
**ann** 22:7 26:11
140:3
**answer** 17:23 19:3
19:4,12,17 26:20
27:18 40:21 41:24
46:11 47:13 48:11
49:9,14 51:3
52:14 53:10,14
54:10 55:15 57:8
59:16 62:13 63:1
63:17 64:19 65:8
66:2 72:24 84:12
86:6 89:19,21
90:1 96:17 97:9
98:5 109:21
110:25 111:20
113:2 114:13
115:4 116:2
118:17 119:19
127:6 132:6 135:4
135:13 136:8
139:9 141:24
142:20 143:19
144:8 145:14
146:6,23 148:14
149:7 150:9
151:19 163:11
171:9 173:24
175:19 176:21
178:11 180:5
184:8 187:2 188:2
191:15 194:8
196:14 197:22
198:18 208:6
210:18 211:14
217:22 221:3,17

**answered** 73:24
143:16 161:5,15
162:4 215:10,25
**answering** 100:5
**answers** 17:11
**anticipated**
217:12
**apologize** 61:16
176:25
**appear** 19:13
131:13 146:10
161:12
**appearance** 18:10
**appearances**
14:14
**appearing** 5:3,17
6:2,12
**appears** 58:3
87:20,25 134:6
141:9
**applicable** 115:13
116:9
**applicant** 51:20
**applicants** 52:2
162:23
**appreciate** 19:19
194:12 223:4
**apprised** 115:21
**approaching**
32:19
**appropriate** 68:16
**approved** 34:17
189:8
**april** 106:5,21
149:22
**area** 54:17 119:2
**areas** 157:20
159:5 166:10
205:3
**argumentative**
211:25

**arguments** 170:4
**arising** 179:24
**army** 175:13
176:4 177:22
182:5 208:22
210:3,24 211:19
**arsenic** 207:21
**arson** 85:4,8,11,20
86:3,17,23
**arsonist** 85:14,17
85:23 86:9,14
**aside** 74:4
**asked** 73:23
143:15 161:4,14
162:4 175:11
176:2 215:9,25
**asking** 25:22
120:5 215:1
**asks** 64:14 65:22
77:19 83:23 84:18
116:7 199:23
**assert** 59:11 60:12
62:21 63:8,25
64:6 65:14 73:6
84:15 114:8,24
115:22
**asserted** 64:10
67:1 76:1 82:22
96:13 187:21
188:12,19
**asserting** 68:20
77:2 83:10 97:2
**assertions** 217:13
**asserts** 83:5 99:15
**assess** 39:3 62:8
**assessment** 10:10
130:16,19
**assessments** 39:1
**assignments**
202:20,25

Page 4

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 63 of 101

**assist** 188:22
**assistance** 27:10
27:23,25 28:4,5,6
28:11,15,17,21,25
29:2,4,14,15,16
29:20,20,22,25
30:8,13,15,22
31:20,23 32:2,2,6
32:8,9 33:3,5,19
34:7,12,15 35:5,9
35:18 36:6,13
37:1 38:11 39:5
39:15 43:24 44:23
44:25 45:8,19,25
46:6,19 47:21
50:7 51:19 52:2,8
52:20 53:4,15,16
54:19,25 55:8
56:2,11,15,18
57:3,15 58:23
61:22 67:5 68:10
76:23 83:7 90:11
103:8,22 156:9
157:17 158:1
159:6 160:10
161:2,21 162:2,5
162:11,15,17,19
162:23 163:2
164:19,22,25
165:4 167:1,4,7,8
168:24 171:23
179:9,16,17
180:11 181:8,12
181:25 184:22
186:7 188:25
189:6,22,22
190:23 193:5,8,14
193:20 194:15,20
194:21,22 196:19
199:14 200:3
201:13,13,17,18
201:19,22 202:18
202:19 203:6,8,10
203:16,17,21
204:12 205:10,14
220:15,21
**assistant** 22:14
61:18
**associate** 61:19
**associated** 174:6
179:24 182:8
193:1 206:14
**assumes** 95:12,24
**atlas** 151:8
**attached** 75:19
224:9 227:11
**attachment** 77:16
105:23 116:17
125:10 155:14
164:4
**attachments** 99:10
99:25 100:25
**attacks** 221:11
**attempt** 180:18
199:1 207:17
**attempting** 171:19
**attempts** 192:20
**attend** 19:24 20:8
**attending** 14:13
**attention** 157:7
**attorney** 4:3 5:5,6
14:24 15:8 21:8
21:22,24 22:15
24:22 26:9,13
107:13 115:12
116:8 118:7
**attorneys** 19:1
22:9
**attributable** 90:11
**audible** 17:11
**audio** 13:13,14
**audit** 10:14 40:15
41:8 133:11
**august** 115:17,20
**authorities** 36:2
163:16
**authority** 49:2
68:9 157:15
**authorization**
180:9,15
**authorize** 31:1
32:1 67:18 68:2
156:9 180:16
**authorized** 32:7
39:14 67:9,12
76:5,8,10,11
165:6 180:12
193:20
**authorizing** 67:15
**automatically**
180:12
**available** 31:20,24
32:10,12,13 43:25
54:1 70:6 71:9,20
72:14 73:13,17
74:11 77:25 78:17
78:19 79:6,19
80:14 81:11,17,19
81:24 84:6,7,23
84:24 85:1 105:11
105:13 109:7
110:15,18 113:11
113:23 121:9
123:2,25 124:5,15
124:16,25 125:3
127:19,21 170:11
170:12 171:14
186:23 187:13
189:4,9 190:17,17
190:21 194:5,14
213:19
**avenue** 3:17 6:5
6:14
**avert** 33:12
**avoid** 192:13
199:12
**avoiding** 180:21
**aware** 33:23 46:19
47:3,17 52:4
54:15 55:19 58:11
60:7 74:5 75:25
82:19,21 112:15
112:17 123:14
128:16 140:22
167:16 168:12
173:17 174:3
187:7 196:22
197:12,15 214:9
214:19 217:16
218:1,11 219:14
219:21 220:20

**b**

**b** 23:9,17,21,25
24:5,9 25:15,24
40:20,23 41:22
42:2 43:1 46:9,13
47:12,15 48:10,13
51:2,5 52:13,16
53:9,12 54:9,12
55:14,17 57:7,10
59:15,18 62:12,15
62:25 63:4,15,19
64:18,21 65:7,11
66:1,4 69:24
72:23 73:2 78:22
96:15,19 97:8,11
98:4,7 101:11
108:14 109:19,23
110:23 111:2,19
111:22 113:1,4
114:12,15 115:3,6
116:1,4 118:15,19

Veritext Legal Solutions
866-299-5127

119:17,21,24
120:13 127:12
128:2 132:5,8,19
135:3,6 136:7,10
141:23 142:1,19
142:22 144:7,10
145:13,16 146:5,9
146:22,25 148:13
148:16 149:6,9
150:8,11 151:18
151:21 163:10,13
167:21 168:5
171:8,11 173:23
174:1 175:18,22
176:20,23 178:10
178:13 180:4,7
184:7,10 187:1,4
187:11 188:1,4
191:13,17 196:13
196:16 197:21,24
198:17,21 208:5,8
210:17,20 211:13
211:16 212:1
217:21,24 219:19
221:2,5,16,19
**back** 66:12 74:10
75:3 105:19
116:15 124:23
125:8 129:2 130:3
131:6 133:24
154:8 155:11
164:1 165:19
181:4 183:11,20
185:5 186:13
190:3,7 197:10
207:3 211:18
212:14 218:24
**background** 223:2
**baker** 3:5,14
14:17

**bakerlaw.com**
3:12,21
**bankruptcy** 1:1,4
2:1,4 13:22,24
14:20 24:15 58:12
65:3 114:6,21
198:3 199:3
216:23
**based** 16:19,22
23:4 39:11 47:2
69:12 93:19,20
159:22 168:10
181:10 190:16
200:15 204:4
213:19 216:16
219:12 222:14
**bases** 99:1 215:20
**basic** 19:11
**basically** 31:15
39:4 190:2
**basing** 97:23
**basis** 59:22,24
72:11,20 89:15,22
94:24 97:13 98:9
99:16 103:1
104:13,25 110:12
117:5 120:1,10
136:21 139:18
143:22 144:3
145:5 148:5
149:25 151:10
184:19,21 213:4
**bay** 58:14,17,21
59:3 66:13,16,24
67:9 68:21 69:9
70:2 71:12 72:2
73:9,22 74:6
76:10 83:15 97:3
125:9,10,21
126:14,24 127:13
128:4,13,18,25

131:18 132:1
134:18 165:20
175:11 176:2
205:22 206:7
213:9,12
**beginning** 75:5
130:5 157:22
158:16 160:7,25
166:8,12 212:16
**begins** 98:22
157:10
**behalf** 3:3 4:1,11
5:1,15 6:1,11 7:1
14:19 15:3,12,22
18:14 40:24 42:2
46:14 47:16 48:14
51:6 52:17 53:13
54:13 55:18 57:11
59:19 62:16 63:4
63:20 64:22 65:11
66:5 68:17 73:2
96:20 97:12 98:8
109:24 111:3,23
113:5 114:16
115:7 116:5
118:20 119:22
120:16 132:9
135:7 136:11
142:2,23 144:11
145:17 146:9
147:1 148:17
149:10 150:12
151:22 163:14
171:12 174:2
175:22 176:24
178:14 180:8
184:11 187:5
188:5 191:18
196:17 197:25
198:21 208:9
210:21 213:3

217:25 219:20
221:6,20
**believe** 25:16,25
53:14 55:5 66:6
80:21 90:23 92:4
105:4 131:7 137:6
143:1 152:22
164:3 178:19
206:25 209:13
213:16 215:11,13
216:1 217:1
**believes** 69:9
**benefits** 180:22
192:14
**best** 27:10,17
158:9 190:13,16
190:21
**beyond** 40:19
41:22 42:25 43:3
46:4,9 47:11 48:9
50:23 51:1 52:12
53:8 54:8 55:13
57:6 59:14 62:11
62:24 63:15 64:17
65:6,25 72:16,22
96:15 97:7 98:3
99:14 109:19
110:23 111:18
112:25 114:11
115:2,25 118:15
119:17,23 120:13
132:4 135:2 136:6
141:22 142:18
144:6 145:12
146:4,21 148:12
149:5 150:7
151:17 163:9
168:7 171:7
173:22 175:17
176:19 178:9
180:3 184:6

Page 6

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 65
of 101

186:25 187:25
191:13 196:12
197:20 198:16
208:4 210:16
211:12 212:1
217:20 221:1,15
**billion** 172:25
185:21 190:6
197:14
**bit** 37:14 60:6
**blanking** 61:17
**blatantly** 103:5,20
**bombing** 221:21
**bottom** 42:13,15
157:8 166:8
207:11
**box** 4:5
**bp** 35:21,23 36:5
**branch** 4:14 15:2
**brandon** 7:13 14:4
**break** 74:17 129:9
129:11 154:2
212:5
**bringing** 219:16
219:21
**broad** 100:6,17
101:5
**broadway** 17:3
**broken** 201:11
**brought** 220:2
**burn** 94:15 95:6
**burnt** 182:4
**business** 5:7 17:1
**butte** 9:2,15 10:5
75:10,17,21 76:2
76:4,16,20 77:2
78:25 79:11 83:16
97:4 105:20,22
106:4,9,23 107:1
107:18,25 108:6
108:15,25 109:15

110:20 111:10
112:7,9,18,23
113:20 114:6,9,21
114:24 115:23
125:14 126:11
131:17,25 134:17
145:2,22 146:1
147:14 159:6
164:2,8,13,17
165:3 194:17
201:9 202:10,15
204:2 205:18
206:6 213:9,13

**c**

**c** 3:1 5:12 225:2,2
**ca** 4:6 5:10,21
155:15,17,24
156:5 164:4
165:21 226:8
**cable** 13:9
**cal** 4:1 9:13,13,18
9:18 10:2,3 14:24
25:13 69:15 70:6
70:7 77:25 78:18
79:6 80:14 81:11
84:6,24 105:12
106:2,3,20,21
107:17 109:8,13
109:25 110:5,10
110:11,18 111:8
112:14,16 113:8
113:10,19 116:19
116:20 117:14,15
118:10,21,23
119:9 120:16
121:2,15,22 122:3
122:7,10,21
123:13,22 125:12
125:13 126:8,9,22
127:20 128:15,23
139:4 152:22

153:12 154:16,21
170:11 213:20
217:3,17
**calaveras** 165:2
201:23 202:2
203:19
**calc** 204:3
**calculate** 181:25
**calculated** 196:4
200:23,25 204:18
**calculation** 202:14
204:4
**california** 1:2 2:2
2:20 4:2 5:1,4,19
8:24 13:23 14:3
15:9 16:19,23
17:4 55:9,20 56:1
56:10 58:5 91:19
155:25 157:21
158:4 160:19
165:18 166:11,23
179:8,15,21
181:13 193:4
194:18 225:6
**call** 60:21 190:1
**called** 32:3
**calling** 120:17
121:21
**calls** 25:4 86:18
89:13,23 93:3
94:8,22 95:13,23
95:25 102:24
104:12 115:11
137:22 146:18
153:16 182:12
222:12
**camp** 9:5,20 82:9
82:15,23 83:1,10
83:21 84:15 97:3
102:16 116:16,21
116:24 117:16,19

118:11,24 119:11
121:3 122:22
123:10,15,21
131:18 132:2
134:18 148:2,25
155:12 156:2,21
156:24 157:2
158:11,17 159:13
159:17,25 160:2
160:19 162:9,12
190:14,16 195:3
200:14 206:4
213:9
**capability** 50:23
**capacity** 40:24
42:2 46:14 47:16
48:14 51:6 52:17
53:13 54:13 55:18
57:11 59:19 62:16
63:4,19 64:22
65:11 66:5 73:2
96:19 97:12 98:8
109:24 111:3,23
113:5 114:16
115:7 116:5
118:20 119:22
132:9 135:7
136:11 142:2,23
144:11 145:17
146:9 147:1
148:17 150:12
151:22 163:14
171:12 174:2
175:22 176:24
178:14 180:8
184:11 187:5
188:5 191:18
196:17 197:25
198:21 208:9
210:21 211:17
217:25 221:6,20

Veritext Legal Solutions
866-299-5127

**captures** 101:5
**care** 141:16
**case** 1:4 2:4 13:25
  14:21 18:21 29:10
  59:22,22,23,23
  60:25 63:7,24
  65:13 91:5 102:15
  104:17 129:4
  160:17 168:8,17
  169:4 186:23
  199:7
**cases** 38:24 207:15
  209:25
**catastrophe** 31:10
  33:13 43:15
**categories** 32:7
  100:7,18 101:5
  201:12
**categorize** 101:16
  101:17
**causation** 113:13
**cause** 9:14,19
  31:10 43:20 87:1
  90:25 91:8,25
  92:6,10 93:11,18
  97:25 103:7,21
  104:2,21 106:4,22
  111:10,16 112:8
  112:18,23 116:21
  117:16 119:4
  122:8 123:10,15
  123:21 125:13
  128:12,17,24
  138:8 142:16
  143:14 152:25
  162:1 184:12,15
  219:16
**caused** 76:2 87:9
  87:13,20 88:4,6
  90:13 102:17
  107:18 108:6,15

108:25 109:14
  110:2,19 113:20
  118:11,24 119:10
  121:3 122:22
  126:23 127:13
  128:4 131:25
  132:20 134:25
  141:20 142:11
  145:10 146:1
  148:10 150:5
  151:15 153:5
  168:16 169:2
  209:16 214:12
  215:7,23 220:18
**causes** 10:4 43:22
  122:11 126:10
  127:2
**causing** 104:3
  153:14
**caution** 26:17
  63:11 68:22 115:8
  219:22
**cell** 13:10
**census** 10:21
  140:17
**center** 3:15
**centers** 203:15
**certain** 28:18 32:7
  53:20 58:13
  157:20 166:10
  197:12
**certainly** 191:1
**certified** 225:6
**certify** 225:7,21
**challenges** 8:20
  40:4
**challenging** 202:4
**change** 200:17
**chapter** 18:21
**charged** 176:15
  177:25

**chart** 201:10
**chemical** 222:15
  222:19
**chief** 22:23 61:5
  64:6
**circumstance**
  163:5
**cited** 143:25
**city** 221:21 227:17
**civil** 4:13 15:1
**claim** 8:23 9:2,5
  24:14 25:8 26:6
  58:4,12,17,25
  59:3,9,11 60:12
  62:3,21 63:9 64:1
  64:7,9 65:14 66:8
  66:13,15,23 67:9
  67:19 68:17,21
  69:5,9,11,13 70:2
  70:4,13,22,25
  71:1,5,12,19 72:2
  72:7 73:10,22
  74:7 75:10,16,21
  76:1,5,10,17,21
  77:2,7,10,15,22
  78:4,8,11,15,16
  79:1,3,4,11 80:7
  80:19,24 82:8,13
  82:15,22 83:2,5
  83:10,16,16,21
  84:4,16,23 85:1
  86:11 92:1,12
  97:23 99:1 105:9
  105:20,22 106:10
  107:1 110:6,12
  113:18 114:2,6,21
  115:15,22 116:13
  116:16,24 117:5
  117:19 121:11
  123:19 124:2
  125:9,11,22

126:14 127:23
  128:22 129:2
  133:2 135:15
  138:4 139:18
  155:12 157:2
  164:2,9 165:20,24
  169:20 172:23
  185:22 187:21
  188:13,20 190:16
  190:18,20,24
  191:4 195:3,5,15
  197:17 198:1,7
  199:15 200:5,14
  200:22 201:2,9
  204:21 205:6,9,19
  206:5,14,19 207:1
  211:4 213:5,8,18
  215:19,21 216:23
  217:5
**claimants** 3:4 9:9
  14:20 88:16
**claiming** 85:22
  86:8
**claims** 25:17 26:1
  62:8 65:3 72:21
  76:13 83:12 94:25
  99:16 104:25
  114:8,24 120:2,10
  131:2 133:21
  136:21 143:23
  144:3 145:6
  146:17 148:6
  150:1 151:11
  167:18 168:7
  170:10 172:19
  184:3 187:12,20
  193:6 194:13,19
  196:9 200:16
  201:11 203:16
  210:13 214:11
  215:1,5

Veritext Legal Solutions
866-299-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 67
of 101

clarification 17:19
49:23 79:22
194:12 213:15
clarify 37:13 45:5
79:25 101:19
185:19 193:11
213:12
clean 177:23
clear 42:23 64:3
64:23 86:6 97:2
100:13 104:6
136:24 173:15
177:24 190:15
215:20 220:11
clearance 172:5
cleared 176:9
clearing 172:12
179:3,12
clears 182:6
cleveland 3:9
client 115:12
116:8
close 158:8 185:9
188:9 200:18
closed 189:23
closeout 181:16
183:8 184:1
189:24
clothing 13:8
coast 35:25 36:7
colleague 14:18
collect 180:18
182:20
collected 174:5
201:16,18 202:23
203:5,14
collecting 201:21
collection 182:15
collections 180:23
college 19:24
20:13

combined 147:5
come 79:20
173:15 183:11
185:5
comes 93:14
comfortable 58:18
58:19 75:22 82:16
139:13
coming 127:4
190:7
comment 42:9
comments 41:11
commercial 4:14
15:2
commission 10:18
11:2,6,10,14
commits 85:20
committed 86:17
137:19
committee 3:3
5:15 7:1 9:9 14:19
15:13 18:14 60:18
60:21 88:15
212:22
committing 86:23
commodities
203:1,1
common 32:16
33:1
commonwealth
54:16 55:4
communications
26:19 116:12
177:2
communities
27:19
community 29:7
30:2 204:7
companies 180:1
183:19 184:3,13
184:16 185:18

187:23
company 1:9 2:9
13:21 18:20,23
181:2 182:10
184:24 185:12
186:13
complete 225:19
completed 112:21
136:16
component 111:24
205:8 210:12
computer 225:17
concern 192:17
concerning 213:3
conclude 170:3
214:11 215:7,17
215:22 224:5
concluded 214:24
concludes 224:1
conclusion 86:19
89:14,24 90:3
91:13 93:4 94:9
94:22 95:16,23
102:25 104:12
121:21 122:1
137:23 146:19
153:17 197:6
215:12 216:4,7,21
conclusions 97:15
97:15 98:11 143:2
154:20 155:6
216:13,15 217:14
condition 47:20
56:1,10 57:3 86:2
90:13 96:5 98:17
99:3 103:7,22
138:14 159:17
160:1,9 161:1,6,8
161:11,20 162:8
166:14

conditions 44:22
45:18 46:4 153:21
160:15
conduct 99:6,15
99:21 100:21
conducted 39:1
65:12 133:12
conductors 147:17
conducts 41:7,8
conduit 10:22
140:18
confusing 17:18
confusion 207:13
congestion 47:9
47:19
congressional
8:16
connection 174:10
213:18 217:5
consider 49:15
50:18 51:7 84:14
100:8,17
considered 65:19
66:7 112:10
construction
172:8
consult 61:12 73:3
consulting 10:9
consults 62:5
contact 107:24
127:4
contain 146:11
152:24
contained 174:12
216:17 227:12
containment
207:14
contaminants
207:19,20
contend 86:16,25
91:24

Veritext Legal Solutions
866-299-5127

**contending** 91:18
102:3,7 121:15
122:3
**contends** 85:25
100:2 101:2 200:9
**contention** 69:25
78:24 99:2
**context** 27:24 33:8
87:18,19 102:17
189:5
**contingencies**
191:2 195:22
**continue** 13:15
**continued** 137:24
**continuing** 41:20
42:24 75:13 130:8
154:10,12 157:23
160:8 166:9
**contractors** 112:4
175:13 176:4
177:21 210:9,25
**contributed**
160:15
**contributes** 95:20
96:10
**copy** 58:3
**corp** 13:20
**corporation** 1:7
2:7
**corps** 175:14
176:5 177:22
182:5 208:22
210:3,24 211:19
**correct** 20:18,19
26:13 34:8,13
35:6 36:12,20
53:22 56:21 65:4
78:5,6 91:4,17,21
94:19 95:10 97:5
112:9 122:13
138:5,15 139:19

139:20,23 154:16
155:3,4 161:13,16
161:21 162:2,21
162:22 163:7,15
167:13 168:15
171:18 174:22
178:7 183:20
184:25 191:4
193:14,22 196:6
199:8 200:10
205:11,17,25
206:1,7,10,15,16
209:3 213:7 214:3
217:6 218:18
219:10,23 220:1,2
225:18 227:13
**corrected** 136:19
137:11 210:2,3
227:13
**corrections**
227:10
**correctly** 158:6
**cost** 171:19 176:17
178:2 179:18
184:4 201:10
**costs** 8:24 9:2,5
60:10 67:2,3
76:22 83:6 90:9
90:11 168:14
172:20 179:2,6,12
179:24 181:3
182:9 185:23
188:23 190:19
192:21,25 198:10
199:1 201:14
203:4 204:14,21
204:22 205:6
206:14,20 209:15
210:5,9,11,14
211:2,3 218:17
219:9 220:3,7

**counsel** 7:9 13:19
14:12 15:6 18:5
21:3 22:14,23
23:2 41:19 42:22
61:5,14 64:6
223:13,16
**counseling** 29:10
**counties** 10:6
58:22,23 125:15
126:12 159:7
166:4,19 213:14
**country** 27:12
**county** 108:1
159:8 164:14,16
165:2 201:23,24
202:1,2 203:19
**couple** 33:25
79:24 204:25
**course** 69:20
70:11,18 71:24
73:14 74:1,19
78:10 79:9,21
82:1 84:10 105:16
121:14 170:14,18
201:3 214:5
**court** 1:1 2:1
13:22 14:6 19:8
124:22 125:4
**cover** 136:15
179:2 180:20
**covered** 63:12
64:15 65:23 77:5
77:19 83:24 84:19
116:8 166:6
176:16 178:1
184:25 199:24
204:17
**covers** 67:21
**cpuc** 10:14 25:13
69:15 70:7 77:25
78:18 79:6 80:14

81:2,3,11 84:7,24
105:12 108:18
109:8 112:20
113:12,23 117:2
121:10 123:3,17
123:23 127:20
128:19,24 130:19
131:24 133:12
134:24 139:4
140:14 141:19
144:25 147:25
148:22 149:20
150:4 151:6 152:3
152:23 153:11
154:25 155:2,7
170:11,16 171:1,2
213:20 217:4,17
**cravath** 6:3 15:16
**cravath.com** 6:9
**created** 99:3
143:10 214:15
**creation** 10:20
140:16
**creditors** 7:2
18:15 212:22
**criminal** 69:17
70:8 71:22 78:1
78:19 79:7 81:7
81:14 84:8,25
85:12 105:14
109:12 113:25
121:10 123:6,25
124:6,11 127:21
170:12 213:20,24
**crisis** 29:9
**criteria** 34:23
**critical** 25:16,25
26:4 169:10
**critically** 99:6,22
100:21

Veritext Legal Solutions
866-299-5127

**criticism** 218:2,11
**criticisms** 217:17
218:5
**crockett** 5:23
**csr** 1:23 2:21
226:7,8
**cure** 104:20
124:14
**curing** 108:19
**current** 21:17
**currently** 55:1
72:4 74:6

**d**

**d** 8:1 16:15
**d.c.** 4:16 21:9,12
23:4,6
**dam** 33:23 34:2
**damage** 39:1,3
43:22 44:2 99:4
142:11 143:11
157:20 159:16
160:6,24 161:25
166:10 205:5
209:15
**damaged** 50:4
51:17 52:22 54:23
54:25 56:17 172:9
175:15 176:6
205:3
**damages** 58:13
76:1 82:22
**dana** 22:8
**danielle** 3:20 5:23
14:18 15:11
223:21
**data** 169:10
203:17
**database** 10:20
140:16
**date** 1:22 199:19
200:4 226:9

**dated** 40:1 106:21
117:15 126:9
130:16,19 133:12
134:19 138:7
145:2 148:2
149:22 151:8
157:13
**dates** 136:17
158:23
**day** 25:4 225:24
227:15
**days** 203:12
**dc** 7:6
**de** 190:2
**deadline** 12:3
177:13
**debris** 12:2 171:20
172:1,6,7,8,15,19
173:13,15 174:5
176:9 177:12,24
179:7,9,14,24
180:10,13,16,20
181:2,9,17 182:6
182:9,21 183:9,14
184:4,25 185:23
192:21 193:1
206:15,19 208:23
209:14
**debtor** 18:20,22
67:2 76:21 83:5
86:1 93:6 97:18
98:13 104:17
108:19 110:3
115:15 141:15
142:8 145:20
146:13 147:3,3
148:19 150:15
152:1 153:5
166:25 168:22
171:4

**debtors** 1:10 2:10
**december** 138:7
**decision** 60:12,15
60:19 61:4,25
64:9 68:15 216:22
**declaration** 31:2,3
31:5,6,9,13,24
32:1,5,12,15,17
33:1 34:1,16,24
35:1,3,8,12,17,22
36:11,16,18,20
37:3,8,11,15,23
38:18,23 39:13
45:1,2 46:1,18
47:8 48:1 49:18
49:20 51:12 55:22
55:23 56:23 57:16
58:24 61:22 67:6
83:8 155:18,21,23
155:24 156:1,4,8
156:21,23 157:1,5
157:15,25 158:20
159:3,19,24
162:20 163:24
164:8,12,16,20
164:24 165:6,15
165:23 166:1,15
166:21 167:2
195:8 202:5
204:23 208:12
222:17
**declarations** 30:25
31:21 46:20 47:4
68:11 159:22
**declare** 45:11
158:3 227:7
**declared** 46:17
47:9 50:5,22
51:17 60:2
**declares** 45:8,25

**deducted** 187:9
**deduction** 181:10
181:14 182:1
186:7
**deemed** 50:13,15
57:2
**deeply** 207:18
**deficiencies**
124:14
**definition** 44:12
46:22,23 49:7,17
50:19 51:9
**definitions** 31:7
**definitively**
139:13
**degree** 20:14
**delayed** 176:25
**delegated** 68:8
**deliberate** 63:13
**deliberative** 64:15
64:24 65:16,23
67:22 68:24 77:6
77:20 83:24 84:19
199:24
**demonstrating**
153:19
**department** 4:2
4:12 5:4 15:1
23:17 24:23 25:2
61:13 62:2 73:4
**depend** 183:12
**dependent** 48:2
183:25
**depending** 47:24
**deposed** 17:6
**deposited** 172:9
**deposition** 1:16
2:16 8:13 13:13
13:18 14:1 18:8
18:18 19:1 23:10
23:17 24:13 25:11

Veritext Legal Solutions
866-299-5127

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 70
of 101

26:10 39:19 57:20
58:8 75:6,11 82:4
88:10,18 106:16
107:8,10 117:10
118:1 126:4 130:6
130:12 133:7,18
139:2,23 140:10
144:20 147:21
149:16 151:2
156:15 163:19
165:10 170:19
177:8 212:2,17
224:2,5,7,9
225:10,13 227:9
**deputy** 5:5
**describe** 27:14
172:11
**designated** 159:5
166:19
**designed** 205:1
**designee** 23:22
24:9 25:15,24
69:24 78:22
101:11 108:14
127:12 128:2
132:19 167:21
168:6 187:12
219:19
**desire** 152:25
153:23
**desired** 93:19,20
**desires** 153:13
**destroy** 91:19
**destroyed** 102:8
175:11 176:2
179:4,13
**destructive** 9:15
9:20 106:4,22
**detail** 221:9
**details** 65:15
101:7 222:17,20

223:2
**determination**
39:11 205:4
**determinations**
122:7,10,17 198:5
**determine** 9:14,19
10:3 39:4 59:11
63:8,25 65:14
69:4 73:4 106:22
111:16 113:20
116:20 117:16
122:8 123:21
125:13 126:10
186:22 188:9
196:9 197:8
199:19 202:9
**determined** 106:4
107:17 118:23
119:5,10 126:22
131:24 134:24
141:19 150:4
157:19 196:5
**determines** 31:16
38:20 43:22
**determining** 84:15
121:2
**develop** 69:20
71:24 84:10
121:14 170:14
**developed** 70:18
73:14 74:1 79:9
79:20 81:25
105:16 214:5
**dginty** 5:24
**dhs** 61:15
**difference** 29:19
29:21 31:4,19
95:19 96:8
**different** 31:8,21
76:9 172:6 191:5
215:2

**differentiating**
177:2
**direct** 22:6 28:6
28:16 29:5 30:15
157:7 179:17
202:18,19 203:20
204:1 210:5
**directly** 29:25
33:23 36:9 97:19
135:14 184:13
185:3 188:24
199:15 202:9
**disagree** 48:15
52:18 57:13 142:4
142:25
**disallow** 210:9
**disaster** 27:23,25
28:3 29:3,10,11
29:15 30:22 31:2
31:5,9,25 32:25
33:4,6 34:7,11,16
34:24 35:7,10,11
35:17 36:11,15,19
37:2,7,21 38:22
43:14,24 44:1
45:2,9,11,20 46:1
46:6,18,20 47:3,8
49:5,8,11,16,17
49:20 50:5,9,16
50:19,22 51:10,12
51:18 52:22 53:22
55:22 56:23 57:16
58:23,24 59:12,21
61:21 62:9,22
67:4,6 68:11,13
76:23 83:7,8
90:10 155:18,21
155:23 156:8,20
156:23 157:1,4,4
157:14,16,24
158:1,4,19 159:3

159:19,21,23
162:20 163:24
164:7,11,16
165:15,22 166:1
166:14,21 172:10
191:20 193:16,19
195:8 204:23
208:11 220:21
222:7
**disasters** 8:17
27:7,11,20 28:8
35:21 40:2 42:16
44:12 53:20 57:1
60:2 181:18
183:15 220:10
**disbursed** 183:2
184:24
**discovery** 24:16
25:9 26:23 77:23
78:3 79:5,18,24
80:6,18
**discretion** 34:25
45:10
**discuss** 68:23
145:24 146:15
221:9
**discussed** 77:8
83:13 102:7
107:12 127:19
135:9 153:19
166:16 167:11
168:19 170:9,18
171:4 205:15
206:13
**discusses** 136:4
**discussing** 94:1,3
170:1
**discussion** 118:5
121:7
**discussions** 64:5,7
168:11

Veritext Legal Solutions
866-299-5127

**disregarded** 103:6
103:20
**distribution** 119:6
**district** 1:2 2:2
13:23
**division** 1:3 2:3
4:13 10:15 13:24
15:2 112:21
123:18 133:12
145:1 148:1
149:21 151:7
202:24
**divulge** 26:18
**dm** 1:4 2:4 13:25
**dmerola** 3:21
**document** 23:15
24:20 39:23 40:5
57:23 58:7 59:4
69:13 72:7 75:15
75:21 79:4 80:24
82:7 88:13,17
93:15 106:8,19,25
107:4,7 117:13,22
117:25 125:20
126:7,13,17,22
127:11 128:2,7
130:15,17,21,24
131:1,3 133:10,14
133:17,20 134:7
134:12 135:9,17
135:23 136:4,22
136:25 139:14,16
139:21 140:2,9,13
140:19,22 143:21
144:2,23 145:4
147:24 148:4
149:19,24 150:4
150:14 151:5,9,24
152:4 156:18
160:9 161:2,7,13
161:24 163:22

164:10 165:13
177:11 216:11
**documentation**
58:6 82:12
**documentations**
72:12 75:19
**documents** 8:8
24:19 25:9,14,23
26:3 42:6 65:18
66:7,9 69:8,12
70:4,24 77:14,22
78:9,16 80:16
81:4,13,18,22
83:20 84:2,8
109:4,6 110:7
121:11 123:5
124:19,24 127:21
129:6 133:23
139:3 142:5
143:25 152:24
161:16 216:3
**doj.ca.gov** 4:9
5:13
**dollar** 197:14
**dollars** 185:21
198:14 205:9,11
**double** 186:1,10
186:14
**dowling** 22:22
**dr** 155:15,17,22
163:24 164:4
165:16,21
**draft** 41:10 140:14
**draw** 189:10
194:5 216:6,13
**drawing** 90:2
**drawn** 189:12,14
189:25 195:1
216:4,16
**driven** 43:16
44:18 45:14

**drought** 43:19
**droughts** 44:21
45:17
**dry** 154:2
**due** 136:17 172:9
**duke** 20:2
**duly** 16:4 225:10
**duplication**
180:21 192:14
**duplicative** 112:11
**duties** 22:1

## e

**e** 3:1,1 8:1 16:15
16:15 61:8,8
124:21 225:2,2
**earlier** 205:15
212:23 217:1
**earth** 20:7
**earthquake** 43:17
**earthquakes**
44:19 45:15
**easily** 202:2
**edison** 160:19
**effectively** 99:8,24
100:24
**efficiently** 177:23
**effort** 192:12
**efforts** 43:25
112:11
**egoodman** 3:12
**eighth** 6:5
**either** 19:8 61:18
179:16
**electric** 1:9 2:9
13:21 18:20,23
**electrical** 98:15
104:19 118:24
119:6 123:5
124:13 132:17
134:14 135:11
136:1 141:17

148:24 160:2,17
160:20 162:8,12
163:7
**electricity** 119:1
**electronic** 125:4
**eligible** 28:18
29:23 31:12 32:25
47:25 49:16 51:20
51:21 52:2 162:23
165:1 171:22
172:15 209:24
**em** 156:5
**emergency** 5:2
15:10 23:18 31:3
31:5,13 32:5,12
32:15,17 33:3,11
33:19 34:1 36:15
37:8 38:6,14,15
38:22 45:1 47:25
55:22 155:23
156:1,4 157:17
158:1 222:16
**emphasis** 20:4
**employ** 111:14
112:3
**employees** 22:3
139:25 219:13
**encompasses** 29:1
**ended** 148:24
**ends** 96:22
**enforcement**
112:20 123:18
145:1 148:1
149:21 151:7
**engineers** 175:14
176:5 177:22
182:5 210:4
**ensued** 99:4
**ensure** 192:13
**entered** 197:13

Veritext Legal Solutions
866-299-5127

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 72
of 101

**entering**  18:5
**entire**  88:1 103:15
143:18
**entities**  28:19
29:23 30:4,18
54:1 56:15 162:16
162:25 178:6
189:10 196:10
197:13 198:5,13
199:7,20 200:4
202:1 203:5
**entity**  30:16 163:2
196:20,25 198:24
**entity's**  88:5
**entries**  174:4
**entry**  12:2 173:4,6
173:8,10,11,18
174:9,16,17
175:12 176:3,11
176:15 177:13
192:19
**environmental**
35:20 36:1
**epa**  36:7
**equipment**  51:14
51:17 102:5 127:5
152:19 166:24
**eric**  3:11 14:16
93:21
**eruption**  43:18
**eruptions**  44:20
45:16
**esq**  3:11,20 4:8,18
5:12,23 6:8,17 7:8
**establish**  132:15
**established**  59:20
**establishing**
135:24
**estimate**  181:10
181:25 187:8

**estimated**  186:8
**estimates**  190:17
190:22 195:7
200:15
**et**  157:17 158:2
**evaluate**  34:23
59:21 60:9
**event**  32:23 33:14
34:4 35:24 37:7
37:10,14 38:4
49:16 50:5,12,14
54:23 56:22 174:6
203:12 204:5,16
205:3
**events**  30:21 31:12
44:25 46:21 52:25
60:4 161:17 174:7
190:4 220:18
**evidence**  69:19
70:3,10 71:24
73:13,16,25 79:8
81:25 84:10,14,22
92:9,18,21,24
93:5 95:13,24
105:4,7,8,15
107:24 114:1
121:13,23 122:25
123:7 127:18
128:8 134:13
137:24 138:13
143:3,6 147:6
148:20,22 150:14
152:10 170:2,6,8
170:13 213:17
214:5,18 215:13
215:14,16 216:17
217:3 220:11
**evidences**  216:17
**evidentiary**  213:4
**evra**  202:19

**exact**  31:14
172:21 200:8
206:24
**exam**  119:24
**examination**  16:7
75:13 130:8
154:12 212:18
**examined**  16:5
225:8
**example**  33:22
54:14 93:21 100:9
100:16 101:14
136:12,17 190:13
201:6
**examples**  32:14
33:18,21 54:6
222:23
**exception**  30:1
**excessive**  211:1
**excluded**  202:11
**excuse**  115:9
119:13 188:17
**executed**  227:15
**exhibit**  8:12,15,22
9:1,4,7,12,17 10:1
10:8,13,17 11:1,5
11:9,13,17,20,23
12:1 23:9,10,14
39:18,19 57:19,20
58:17 59:7 66:12
74:15 75:9,11
82:3,4,15 88:9,10
105:19 106:15,16
114:22 116:15
117:9,10 120:17
125:8 126:3,4
130:11,12 131:6
131:10 133:5,7,24
134:4 136:14
139:11,16 140:7,9
140:10 144:19,20

144:24 147:20,21
149:15,16 151:1,2
155:11 156:14,15
159:18 163:18,19
164:1,7,10 165:9
165:10,19,22
177:7,8 201:8
207:3
**exhibits**  8:10
82:11 224:7
**exist**  218:6
**exists**  158:4
**expect**  195:7
**expended**  194:25
195:11,13,13
**expenditure**  189:5
**expenditures**
194:6
**expenses**  189:11
**expiration**  226:9
**explains**  62:21
**explicitly**  214:11
215:6,22
**explosion**  31:11
43:20 222:16
**explosions**  44:22
45:17
**expressed**  174:21
**extensive**  54:19
99:4
**extent**  64:14 65:22
77:4,18 83:23
84:18 89:23 94:8
94:21 102:24
104:11 115:11
116:7 120:16
124:12 186:22
199:23 218:6

Veritext Legal Solutions
866-299-5127

# f

**f** 225:2
**face** 217:9,14
**fact** 47:23 48:2
143:10 155:22
183:25 202:5
**facts** 47:24 65:13
69:25 71:13 72:3
73:9,21 74:5
78:23 79:2,12
80:5,17 95:12,15
95:24 99:5 213:17
216:16 217:3
221:8
**factual** 72:10,20
89:15,22 94:23
97:13 98:9 99:16
103:1 104:13,24
110:12 117:5
120:1,10 136:20
139:18 143:22
144:3 145:5 148:5
149:25 151:10
213:3
**failed** 102:4 114:4
127:23 129:4
136:19 214:20
**failure** 33:25 34:3
99:21,22,23,24
100:21,22,23,24
103:24 138:15
147:7
**failures** 127:5
**fair** 217:12
**fairly** 100:6
201:25
**fall** 20:22 51:9
93:22 100:12
101:7 163:15
**fallen** 68:14

**falling** 100:17
**falls** 61:15
**familiar** 27:22,24
28:10,20 30:7
44:6,11 89:3,7
93:10,13 125:5
167:11 171:25
173:3 178:19
208:10,25 221:8
223:1
**far** 139:2
**farr** 6:13 15:21
**faulty** 48:6,23
49:21,24 50:13,15
51:13 55:25 56:9
57:15
**february** 1:22
13:1,5 225:25
**federal** 23:18 30:8
30:13 31:16,17
32:21 38:21 39:4
52:8 53:4,16 55:8
56:2,11,14,18
57:3,15 73:15
160:10 161:2,20
162:1,11 168:24
182:17 184:22
189:4 194:20
202:18,19,21
**feel** 19:11 139:12
**feld** 5:18 15:12
**fell** 35:24
**fema** 4:11 8:18
11:18,21,24 15:4
16:17 20:17,21
21:2,6,17,21
22:17,18 24:4,15
26:5 27:3 28:15
29:1 30:10,12,22
34:6,11,15 35:4,8
35:18 36:4,13,25

39:1,8,12,14 40:2
40:24 41:15 42:2
44:23 45:7,19,24
46:5,14,18 47:16
47:20 48:4,14,21
49:3,9,15 50:6,10
50:12,14 51:6,7
51:18,22 52:1,9
52:17,19 53:5,13
54:13 55:9,18
56:3,12 57:4,11
58:4,11 59:6,10
59:19 60:11,18
61:15,16 62:7,16
62:21 63:4,8,20
63:25 64:22 65:2
65:11 66:5 67:1,2
67:10 68:7,12,19
69:8,24 70:1,24
71:14 72:3 73:2
75:17,25 76:5,19
77:1 78:9,10,22
78:24 79:12 82:9
82:21 83:5,9
84:14 85:22,25
86:8,16,25 90:10
91:17,24 92:4,9
92:24 96:20 97:2
97:12,23 98:8
99:1,15 100:1
101:1 102:3,7,18
103:8,22 106:9
109:24 110:5,11
111:3,9,14,23,24
112:4,7,14,16
113:5,18 114:16
114:22 115:7,21
115:21 116:5,12
116:23 118:20
119:22 121:15
122:2,4 123:9,13

123:20 125:20
128:11,15,22
131:1 132:9
133:20 135:7
136:11 137:12,18
139:17 142:2,23
143:21 144:11
145:4,17,19 146:9
146:16 147:1
148:4,17,18
149:10,24 150:12
150:14,18 151:9
151:22,24 154:15
154:19 155:1,5,15
155:17 156:5,9,22
159:21,25 162:5
162:10,15 163:5
163:14,24 164:4
164:19,22,24
165:16,21,23
167:1,4,6,16,22
168:8,13,16,21
169:2,19,25 170:2
170:7,19 171:1,12
171:19 173:5,17
174:2,9 175:4,22
176:24 177:3,5
178:4,14,16,24
179:2,11,19,23
180:8,15,25 181:4
181:12,19 182:7
183:1,1,11,16,20
184:2,11,23 185:5
185:11,20 186:12
186:21 187:5
188:5,12 190:3,6
190:7 191:8,18
192:6,12,20,25
193:14,20 194:21
196:8,17 197:10
197:17,25 198:6

Veritext Legal Solutions
866-299-5127

198:12,21 199:6
199:18,20 200:9
202:18,25 203:21
208:9 209:13,18
210:6,10,21 211:3
213:3,17 214:10
214:24 215:4,17
215:20 216:16,20
216:25 217:2,13
217:25 218:16
219:8,15,20,21
220:6,21 221:6,20
222:7

**fema's** 22:16 23:2
23:21 24:8 25:16
25:25 27:5,15
49:2 66:14,22
68:10 69:11,25
76:16,19 78:23
83:1 86:11,20
87:4 91:4 97:16
98:12,18 99:16
102:3,14 104:25
117:5 120:2 121:2
131:11 132:19
134:10 136:21
141:12 144:3
153:3 163:16
168:5 172:19
173:3 175:2
187:11,12,19
191:19 193:6
194:13 195:14
201:14 206:13
210:12 211:4
213:5 214:14
215:1 219:19
221:10

**fenton** 67:17,18
68:6

**fenton's** 68:3
**field** 20:3 204:8
**figure** 169:23
**file** 69:4 216:23
**filed** 13:21 24:15
58:4,12 70:23,25
75:17 78:5,9 82:9
82:12 92:1,12
113:17 123:19
124:22 128:21
168:7
**filing** 59:9 65:2
67:8,19 76:4
78:14 114:5,20
115:15 124:21
125:4
**filings** 81:7 113:24
124:10 170:12
**filled** 207:24
**final** 40:13 42:9
181:15 183:12
190:23 195:19
199:16
**finally** 196:4
**financial** 28:5,16
29:4 30:14 163:1
179:16 183:13
203:8,24 204:15
**financially** 14:10
**find** 17:18 124:18
**finding** 220:12
**findings** 69:16
105:13 121:16
122:4,12 142:14
143:12 152:24
153:13
**fine** 59:5
**fire** 4:1 9:2,5,13
9:14,15,18,19,20
10:2,3 14:24
25:13 31:10 43:20

59:6 69:9,15 70:7
75:10,17,21 76:2
76:5,10,16,20
77:2,25 78:18,25
79:6,11 80:14
81:11 82:9,15,23
83:1,10,16,21
84:6,16,24 85:12
96:4,23,23 97:3
97:25 102:16
104:22 105:12,20
105:22 106:2,3,4
106:10,20,21,23
107:1,17,18 108:1
108:6,15,25 109:8
109:13,15,25
110:5,10,11,18,20
111:8,11,25 112:1
112:7,9,14,16,19
112:23 113:8,10
113:19,21 114:6,9
114:21,25 115:23
116:16,19,20,21
116:24 117:2,14
117:15,17,19
118:10,11,21,23
118:24 119:4,9,11
120:16 121:2,3,15
121:22 122:3,7,8
122:10,11,21,22
123:11,13,16,22
123:22 125:12,13
126:8,9,22 127:20
128:15,23 131:17
131:19 132:1,2
134:17,18 139:4
145:2,23 146:1
147:14 148:2,25
149:22 151:8
152:22 153:5,12
153:23 154:16,21

155:12 156:2,21
156:24 157:2
158:11,17,21,22
159:10,13,17,25
160:2,4,19 162:9
162:12 164:2,8,13
164:13,15,17
165:3 170:11
172:13 176:14
177:24 190:14,16
194:18 195:3
200:14 201:9
202:6,10,10,11,15
204:2,5,6 205:18
213:20 217:3,17

**fires** 8:24 44:21
45:17 58:14,17
59:3 66:13,16,24
67:5,9 68:21 70:2
70:8 71:12 72:2
73:10,22 74:7
83:16 86:2,13,22
97:4,4,18,19
125:9,10,21
126:14,24 127:3
127:13 128:4,13
128:18,25 131:18
131:21 132:1,11
132:12 133:1,2
134:18,20 135:15
135:25 138:3
145:20 158:23
159:7,10 160:21
161:9,10,11
162:18 165:20
166:6,23 169:12
175:11 176:2
202:13 204:17,19
213:9,13

**firm** 14:5,8

Veritext Legal Solutions
866-299-5127

**first** 9:9 20:23 22:7,21 31:1 38:4 38:7,9 65:4 88:16 90:14 94:16 95:7 155:15 177:16 183:2 197:1 198:13 210:11 218:16 219:8

**five** 152:2 154:3

**fix** 49:21 51:13

**fl** 3:18

**flood** 31:11 35:9 35:10 43:20

**floods** 44:21 45:17

**flow** 181:4 183:20 185:4

**focus** 192:17

**follow** 63:8,25

**followed** 77:10

**following** 44:15

**follows** 16:6 157:18

**footnote** 42:14,20 43:7 44:16 131:8 131:11 134:1,5,9 141:6,11

**foregoing** 225:9 227:8

**forget** 31:14

**form** 12:3 21:18 25:18 27:4 30:14 30:23 34:14,21 35:15 36:21 37:12 45:23 46:7,16,25 47:10 48:8 49:6 49:13,22 50:17,25 51:15,25 52:11 53:7,23 54:7 55:12 56:4,13 59:13 60:14,20 61:2 62:10 63:10

65:5 66:17,25 67:23 68:25 69:10 70:13,16 71:12,3 71:16 72:6,17 73:11 74:8 76:18 77:3,15,17 78:4,8 78:12,13 79:14 80:7,9,19,20 81:5 81:21 83:3 85:19 85:24 86:10 87:3 91:20 93:12,24 94:7,20 98:1,10 99:18 100:3 101:3 101:12 102:10,22 104:11 105:1 107:19 108:7 109:1,16 110:13 110:21 112:24 118:12 119:14 120:1 121:4,18 124:8 125:1 127:14 128:5 132:22 134:11 135:19 137:3,21 138:9,22 139:6,8 146:2 153:2,15 158:18 159:20 160:12 162:3,14 163:8 168:20 169:5 170:20 171:21 173:4,6,8 173:10,20 174:9 174:12,24 175:2,4 175:7,12 176:3,11 176:15 177:13,19 179:5 183:6,22 185:16 186:2,16 187:15 188:7 191:10 192:10,19 192:24 193:9,23 194:16 195:18,25

198:23,23 206:8 209:7,17 213:10 213:22 214:13 215:10,24 216:19 217:7 219:24 220:8,24

**formally** 167:23 168:8

**forms** 29:15 173:11,18 174:16 174:18,21

**forth** 44:12 46:5 46:24 57:1 70:2 71:1,13 72:3,10 78:25 79:12 80:6 200:22

**forward** 142:6

**four** 99:9,14 101:20 224:3

**frame** 94:14

**francisco** 2:19 5:21 13:24 14:3

**francsco** 1:3 2:3

**frankly** 139:9

**frederickson** 1:23 2:21 14:7 225:5 226:7

**front** 93:16 171:16 194:24

**full** 116:19 125:12 155:15

**fully** 143:20 185:24 188:21 189:1,8

**functions** 27:15

**funding** 181:21 185:18 189:25 197:4 198:6,9 199:13

**funds** 184:23 196:19

**further** 119:3 223:8 225:21

**future** 52:25 190:4 205:1,2

**g**

**gallagher** 6:13 15:22

**gao** 8:16 40:14 41:7 42:4,15 207:4 208:18

**gas** 1:9 2:9 13:21 18:19,23 119:1

**general** 4:3 5:5,6 14:24 15:9 61:14 66:21 69:3 116:25 143:3

**generally** 27:2 33:4 93:18 143:7 158:5

**gentel** 6:8 15:15 15:15 223:23,23

**getting** 70:23 96:14 154:2

**ginty** 5:23 15:11 15:11 223:21,21

**give** 18:9 32:14 54:6 95:3 100:9 175:13 176:4 186:12,12

**given** 35:4 42:8 122:19 157:12

**go** 13:16 20:1,10 23:8 39:17 42:12 43:4,11 48:17 51:22 57:18,24 65:2 74:14,20 75:8 82:2 88:8,20 98:18 103:13 105:19,21 116:15 116:16 124:11,18 124:19 125:8,9,25

Veritext Legal Solutions
866-299-5127

131:6 133:4,24,25
135:14 138:16
140:7 147:19
150:25 153:19
155:11,13 157:9
162:10 163:5,17
164:1 165:8,19
177:6 189:19
191:8 192:6 197:1
207:3,5 209:22
211:18 218:24
219:1
**goal** 87:1,7 152:25
153:6,22 198:8
199:12
**goals** 153:13
**goes** 97:7 135:23
**going** 13:4 33:24
40:18,19 46:8
74:24 75:8 92:6
93:1 106:14
129:14 130:10
149:14 154:4
156:13,14 199:2
212:10 224:4
**good** 13:3 15:7
16:9,10 33:21
39:16 66:11 129:8
**goodman** 3:11 8:4
14:16,16 16:8
18:7,16,17 21:19
23:12 39:17,21
43:2,6 48:15
52:18 57:12,18,22
74:14,19 75:8,14
82:2,6 88:8,12
106:18 114:19
117:12 119:23
120:19,23 126:6
129:10 130:9,14
133:4,9 140:8,12

142:3,24 144:17
144:22 147:19,23
149:18 150:25
151:4 154:1,13
156:17 163:17,21
165:8,12 168:4
170:22 177:6,10
212:4 223:10
**government** 28:17
31:16 32:22 38:6
38:11,13,19,21
39:2,25 112:12
174:22 178:24
180:24 181:1
182:16,17,17,24
183:18 185:4
189:4,7 202:1
**government's**
73:16
**governmental**
29:23 30:4 178:6
**governments** 28:7
28:18 38:9,16
44:1 76:24 162:24
165:1 173:12,19
174:19 180:18
182:19 188:22
195:2,11,14
201:20
**governor** 37:16,22
38:13,17
**governor's** 5:1
15:9
**graduate** 20:8,11
20:24
**grant** 32:4 35:1
167:9 186:6
**granting** 177:20
**grants** 189:6
**grc** 10:11 130:16
130:19

**great** 19:23
**grid** 52:24 54:20
98:15 104:19
124:13 160:18,20
162:9,12 163:7
**ground** 94:17 95:8
**group** 6:11 10:9
15:23 60:22 83:14
**guard** 36:1,7
**guess** 67:25 196:1
**guidelines** 62:7
**gump** 5:18 15:12

**h**

**h** 16:14,15
**hair** 13:9
**half** 172:23,24
185:22 206:19,25
207:2
**hand** 106:14 117:8
126:2 130:10
133:4 144:18
149:14 156:13
225:24
**handed** 23:13
**handful** 212:24
**handle** 50:24
125:6 203:15
**handled** 180:24
181:7 182:15
**handling** 181:15
**happen** 93:1 94:19
95:10 96:24 97:4
**happening** 48:7
48:24 95:20 96:5
96:10
**happens** 19:7
**happy** 192:1
**hard** 183:25
**hardship** 44:3
**harm** 91:1,8,25
92:6,10,14

**hauer** 5:18 15:12
**hazard** 32:3,11
52:23 53:24 54:21
165:5 167:8
204:24
**hazards** 205:2
**head** 17:14 172:22
**headquarters** 21:8
22:22
**hear** 192:2
**heard** 72:16 85:3
85:5,15 87:8,12
**held** 2:17 14:1
21:5
**help** 27:5,18 29:8
196:5
**helped** 26:22
**helpful** 206:12
**helping** 191:20
**henderson** 1:17
2:17 8:3 13:19
16:3,13,14 75:7
130:7 212:17,20
224:2 227:6,25
**hereto** 227:11
**heyn** 5:12 15:7,8
45:21,21 46:15,15
153:24,24 223:17
223:17
**hi** 212:20
**high** 43:16 44:18
45:14
**hill** 158:21 159:9
160:21
**hindering** 169:11
**hired** 175:13
176:4 177:21
**historical** 168:12
219:14
**history** 108:17
123:3 132:15

Veritext Legal Solutions
866-299-5127

| | | | |
|---|---|---|---|
| **hits** 34:8,12 | 82:5 83:20 88:11 | 163:22 165:13 | 200:5 202:6,15 |
| **hoc** 5:15 6:11 | 106:17 117:11 | 167:22 168:6 | 204:10,20 211:4,6 |
| 15:13,22 | 126:5 130:13 | 171:3 177:11 | **includes** 70:6 |
| **home** 203:22 | 133:8 140:11 | **identifying** 108:18 | 165:17 206:14 |
| 207:17 | 144:21 147:22 | **ignition** 160:4,18 | 213:13 |
| **homeland** 23:18 | 149:17 151:3 | 161:10,23 166:23 | **including** 43:15 |
| 61:14 62:2 | 156:16 163:20 | **immediate** 203:12 | 69:14 72:13 77:24 |
| **homeowner** | 165:11 177:9 | **impact** 18:2 | 79:18 152:17 |
| 192:18 | 224:8 | 195:14,19 | **incorporated** |
| **homeowners** | **identified** 46:21 | **impacted** 28:8 | 71:10 |
| 173:15 191:9 | 47:5 69:12 71:4 | 32:20,24 37:17 | **incorporating** |
| 192:7,12 | 78:10,16 79:3 | 55:3 172:13 209:6 | 81:9 |
| **homes** 175:10 | 84:3,22 85:11 | 209:12 | **incurred** 67:3 |
| 176:1 179:4,13 | 104:18 105:9 | **impacts** 32:23 | 76:22 83:7 90:10 |
| **hope** 170:23 211:5 | 114:2 124:2 | **implementing** | 188:24 204:23 |
| **hopefully** 212:25 | 136:18 141:6 | 68:10 | **independent** |
| **hostetler** 3:5,14 | 152:3 159:17 | **importance** 25:16 | 155:9 217:10 |
| 14:17 | 160:9,13 161:1,7 | 25:25 26:4 | **independently** |
| **hotels** 203:11 | **identifier** 155:20 | **impossible** 188:8 | 154:20 155:6 |
| **house** 182:4 | 155:20 | **improper** 147:13 | 217:2 |
| **housed** 204:5 | **identifies** 127:1 | 152:17 | **index** 8:10 |
| **households** 203:7 | 145:21 147:2 | **incident** 11:3,7,11 | **indicate** 132:20 |
| **housing** 29:5 | 152:16 | 11:15 38:3 145:1 | **indicates** 108:13 |
| 32:10 203:20 | **identify** 23:15 | 148:1 149:21 | 108:24 127:11 |
| 204:1 | 39:22 52:7 53:3 | 151:7 159:22,23 | 138:7 145:9 148:9 |
| **huh** 42:17 98:20 | 55:7 57:23 69:24 | 160:13 161:18 | 151:14 |
| 99:12 193:15 | 75:15 78:23 82:7 | 166:17,20 168:13 | **indirectly** 185:5 |
| **humboldt** 10:5 | 88:13 101:9,24 | 174:8 | **individual** 28:21 |
| 125:14 126:11 | 106:19 107:16 | **incidents** 153:5 | 28:25 29:15,20,24 |
| **hurricane** 32:18 | 108:4,12 110:1 | 219:15 | 32:2,9 144:15 |
| 33:8 34:8,12,20 | 113:14 117:13 | **include** 29:3 30:17 | 165:4 167:7 |
| 34:20 43:15 | 118:9 119:8 121:1 | 52:23 82:11 86:3 | 173:16 193:2 |
| **hurricanes** 33:17 | 126:7,21 127:10 | 86:22 164:17 | 201:13 203:6,7,16 |
| 44:17 45:13 | 130:17 131:23 | 193:7 194:14 | 204:12 215:11 |
| **hyphen** 16:14 | 133:10 134:21,23 | 205:6 210:13 | **individuals** 28:8 |
| **hypothetical** 95:4 | 140:13 141:18 | **included** 41:13,14 | 29:2,5,6,9 30:1,5 |
| **i** | 144:23 145:8 | 58:25 64:7 80:7 | 30:17 61:1 76:24 |
| | 147:24 148:8 | 80:19 91:14 | 112:3 168:11 |
| **idea** 183:10 | 149:19 150:3 | 158:20 159:13 | 176:8 188:23 |
| **identification** | 151:5,13 156:18 | 161:18 164:12 | 192:15 203:18,23 |
| 23:11 39:20 57:21 | 161:17,19,22 | 166:4,21 186:7 | |
| 69:8 75:12 77:14 | | | |

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 78 of 101

**information** 8:7
24:3 65:19 70:21
79:17 80:12 117:1
121:8 123:25
124:5 132:25
137:9 141:14
142:7 143:8
146:11 147:5
151:25 157:11
201:16,18,21
202:23 203:13,23
203:25 204:10,14
204:15
**infrastructure**
54:4,22,24 56:16
**ingredients** 36:17
36:24
**initial** 11:18,21,24
156:19 157:3
163:23 164:11,15
165:14 166:3
181:21 186:6
187:8,9
**initialed** 227:11
**injury** 104:4
**ink** 227:10
**input** 41:16
**inquiry** 64:12 65:4
65:20 68:19 77:1
78:11 83:9,19
**inside** 77:22
**insofar** 21:23
200:13
**instance** 31:15
183:2
**instances** 167:22
168:7 192:5
220:20 221:7
222:6
**instituting** 10:19
140:15

**instructed** 19:4
**insurance** 176:16
178:2 179:25
180:19,23 181:2
181:11,20 182:7,9
182:14,21 183:3
183:19 184:3,13
184:15,24 185:12
185:18 186:8,13
186:22 187:13,23
196:21,24,25
197:1
**insured** 185:24
**intend** 94:18 95:9
96:23 184:2
**intended** 93:11,18
93:22 97:3 138:8
**intending** 115:22
179:2,11
**intent** 90:25 91:8
91:25 92:5,10,14
97:24 114:8,23
121:17 122:5,12
135:18 137:1
142:15 143:13,14
216:10
**intention** 127:8
**intentional** 86:1
86:12,21 87:5
88:3,5 90:12 94:1
94:3,6,10 96:2,3
96:22 97:17,22,24
98:13,16 99:2
102:14,20 103:18
104:7,15 111:5
135:10,24 136:4
137:8,13,19,25
138:17,20,25
139:5 141:15
142:8 143:5
145:19,25 146:12

146:14 148:19
149:3,12 150:15
150:17,23 151:25
152:5,10 153:4,20
168:18,22 169:21
214:15,16,25
215:18 220:12,13
**intentionally** 87:9
87:13,20 88:4
90:24 91:6 95:21
96:9,11 100:2
101:2 102:4,8,17
107:18 108:6,15
108:25 109:14
110:19 118:11
119:10 121:3
122:22 126:23
127:12 128:3
131:25 132:20
134:25 141:20
145:10 148:10
150:5 151:15
214:12 215:7,23
**interagency** 36:8
**interest** 61:24
**interested** 14:11
225:22
**interfere** 13:12
**internal** 65:12,16
69:3 77:9
**internally** 39:8
**international**
20:16
**interpose** 19:19
**interrogatories**
9:10 24:17 66:10
70:5,14 71:6,20
72:13 80:3 81:9
84:5 88:16 98:19
105:10 114:3
121:12 124:3

127:24 129:3
131:4,12 140:24
141:1 144:1 169:7
**interrogatory**
69:14 74:10 80:11
80:23 91:15 92:4
103:3 133:25
134:10 141:12
**investigation**
10:19 11:3,7,11
11:15 64:12 68:20
107:23 109:9
111:10 112:8,18
123:10,15 128:12
128:17 140:15
145:1 148:1
149:21 151:7
213:20 218:5
**investigations**
169:11 217:18
**investigative**
109:13
**investigators** 9:14
9:19 10:3 106:3
106:22 111:15
116:20 117:16
125:13 126:10
**invoke** 168:16
169:2
**invoked** 88:7
167:17 218:17
219:8
**involve** 64:11
**involved** 36:4,10
41:5 62:3 182:18
**involvement** 40:16
41:2
**islands** 54:17 55:5
**issue** 40:22 41:25
46:12 47:14 48:12
51:4 52:15 53:11

Veritext Legal Solutions
866-299-5127

54:11 55:16 57:9
59:17 62:14 63:2
63:18 64:20 65:9
66:3 72:25 97:10
98:6 100:5 109:22
111:1,21 113:3
114:14 115:5
116:3 118:18
119:20 124:7,12
132:7 135:5,17
136:9 137:1,7
138:20 141:25
142:21 144:9
145:15 146:7,24
147:12 148:15
149:8 150:10
151:20 163:12
171:10 173:25
175:20 176:22
178:12 180:6
181:15 184:9
185:24 187:3
188:3 191:16
196:15 197:3,5,23
198:19 208:7,11
209:12 210:7,19
211:15 217:23
221:4,18
**issued** 49:21 51:13
155:19 156:4
157:14 165:16
166:15
**issues** 33:25 35:16
93:6 99:8,23
100:10,23 104:18
104:20 108:19,20
110:1 122:15
123:4 132:16
134:13 135:12,12
136:17,18 137:10
138:16 142:10,10

143:10 152:18
159:21 208:22
209:1 214:19
**issuing** 159:18
**items** 99:14
**ix** 21:4 22:17 68:7
68:12
**ix's** 54:17

### j

**j** 1:23 2:21 16:14
225:5 226:7
**january** 137:14,20
138:1 226:9
**job** 1:24 20:23
21:1 22:11
**john** 1:17 2:16 8:3
13:18 16:3,13
75:6 130:6 212:17
224:2 227:6,25
**join** 18:8
**joint** 60:15
**judge** 69:18 70:9
71:23 78:1 79:7
84:9 105:14
113:25 214:2
**june** 125:15 126:9
**jurisdictions**
122:16
**justice** 4:2,12 5:4
15:1 24:24 25:2
73:4

### k

**k** 7:4
**keep** 97:21 104:8
**kelly** 4:8 14:22
**kelly.welchans** 4:9
**key** 3:6
**kind** 33:14 34:3
163:1 222:2

**kinds** 203:3
**knew** 103:23
136:18
**know** 17:24 19:8
27:16 60:11 62:1
62:4 65:18 67:12
76:8 80:22 81:6
86:7 91:11 95:15
112:2 113:14
124:20 134:8
140:1,5 141:10
158:22 170:24
172:18,21,23
173:7 178:15
181:19 188:12
194:24 195:10
199:5,16 200:6,21
205:24 206:24
208:1 209:5,11
211:21 212:3
213:24 222:15,17
222:20,21 223:5
**knowledge** 40:22
41:25 46:12 47:2
47:14 48:12 51:4
52:15 53:11 54:11
55:16 57:9 59:17
62:14 63:2,18
64:20 65:9 66:3
72:25 92:25 96:18
97:10 98:6 104:17
109:22 111:1,21
113:3 114:14
115:5 116:3
118:18 119:20
124:12 132:7
135:5 136:9 137:9
138:14 141:25
142:21 144:9
145:15 146:7,24
147:6 148:15

149:8 150:10
151:20 163:12
168:12 171:10
173:25 175:20
176:22 178:12
180:6 184:9 187:3
188:3 191:16
196:15 197:23
198:19 208:7
210:5,19 211:15
214:18 217:23
219:14 221:4,18
222:15
**known** 24:3,4
27:10 134:13
135:11 200:10
**knows** 58:18

### l

**l** 3:20 4:15 16:14
**labeled** 136:13
**lack** 143:8
**lake** 10:5 58:21
125:15 126:12
164:14,16
**landslide** 43:18
**landslides** 44:20
45:16
**language** 174:11
178:4
**large** 207:23
**largest** 205:8
206:5
**law** 20:13,13
101:15 110:2
113:15 145:22
147:15 150:16
152:2,17 171:3
214:20
**lawyer** 19:18
**lead** 21:22 138:24

Veritext Legal Solutions
866-299-5127

**leading** 153:21
169:12
**led** 159:18 177:4
220:6
**left** 207:22
**legal** 2:18 14:5,8
21:14 22:16 26:15
29:11 71:13 72:3
72:15,19 73:5
86:19 89:14,18,23
90:2 91:13 93:4
94:9,22 95:1,23
97:15 98:10
102:24 104:12
121:21 137:22
146:19 153:16
170:3 182:16
**lessen** 33:12
**letter** 10:14 113:6
120:7 136:15
157:13
**level** 38:7 39:3
62:5 180:14
182:16 202:13
**liability** 64:4
**liable** 67:2 70:1
76:21 78:24 83:6
**liberty** 10:9
**life** 142:12 143:11
**likewise** 17:22
**limit** 100:7 101:6
**limited** 29:4 32:7
**line** 22:21 88:24
90:15,18 98:22
103:3,10,12 141:2
141:3 202:17
**lines** 50:13,22 51:9
52:10 53:6 55:11
118:25 119:6
**list** 100:15 171:16

**listed** 24:5
**litigation** 69:21
70:11,18 71:25
73:14 74:2 79:9
79:21 82:1 84:11
105:17 121:14
123:8 125:6
170:14 214:6
**little** 37:14 202:4
**llp** 3:5,14 6:3,13
7:3 18:13
**local** 28:7,17
31:18 32:22 38:5
38:7,9,16 39:2
44:1 76:24 112:1
122:15 162:24
165:1 173:12,18
174:19,22 178:6
178:23 180:17,24
181:1 182:15,19
182:23 183:18
185:4 188:22
189:7 195:1,11
201:20 202:1
207:12
**located** 119:1
**locations** 127:2
**long** 25:1 58:20
**look** 40:7 57:25
139:10 140:7
159:4 166:7
189:21 200:2
214:23 215:16
218:24
**looked** 139:3
218:13
**looking** 201:9
202:17 205:1
207:10 215:12
**looks** 39:24
103:25 141:2

147:18
**los** 5:10 159:6,8
**lose** 19:6
**loss** 44:2 142:11
143:11
**lost** 120:21
**lot** 37:25 172:12
182:6
**lots** 173:16 176:9
179:3,12 185:24
**lunch** 129:11
**luncheon** 129:16

## m

**magnitude** 43:23
157:24
**main** 201:12
**maintain** 99:9,25
100:25 102:4
**maintaining** 123:4
**maintenance**
132:16 141:16
142:10 143:9
147:17 152:18
**major** 20:3 27:11
31:2,5,8,19,24,25
32:25 33:5 34:16
34:24 35:9,11,14
35:16 36:15 37:2
37:7 38:22 43:14
43:24 44:12 45:2
45:9,11,20 46:1
46:18,20 47:3
49:4,8,11,17,20
50:5,15,19,22
51:10,12,18 52:22
55:21 56:23 57:16
61:21 67:6 68:11
83:8 155:18,22
156:20 157:4,14
157:24 158:3,19
159:21,23 162:20

163:24 164:11
165:15,25 166:14
166:21 183:15
193:16,19 195:8
204:11,22,23
**majority** 60:1
190:15
**making** 92:20
216:22
**manage** 99:8,24
100:23
**managed** 204:8
**management**
23:19 29:10 38:6
100:11,14,21
147:4,13 152:18
**managing** 23:1
202:24
**march** 145:2
**mariana** 54:16
55:4
**mark** 23:8 39:17
57:19 74:14 75:9
82:2 88:9 140:8
147:19 150:25
156:14 163:18
165:8 177:7
**marked** 23:10,14
39:19 57:20 75:11
82:4 88:10 106:15
106:16 117:9,10
126:2,4 130:11,12
131:9 133:5,7
134:4 140:10
144:18,20,24
147:21 149:15,16
151:2 156:15
163:19 165:10
177:8 224:8
**marks** 74:23 75:5
129:13 130:5

Page 22

Veritext Legal Solutions
866-299-5127

154:10 212:9,15
**master's** 20:14
**mat** 153:24
**material** 70:12,17
73:8,21 74:5
77:19 83:23 84:19
116:7 199:24
**materialize** 191:3
**materials** 64:15
65:23 67:21 214:9
214:10,24 215:4,6
215:20,21 216:18
216:21 217:4
**matt** 45:21 46:15
223:17
**matter** 13:20 14:9
34:19 81:15 220:6
**matthew** 5:12
15:8
**matthew.heyn**
5:13
**mean** 21:22 28:13
28:23 34:22 49:24
59:23 68:2 80:1
85:8,18 87:16,23
91:12 93:18 94:12
94:18 95:2,9,14
101:4 102:20
104:7,9 105:2
125:3 171:13
172:3 183:23
184:14 185:25
188:11 189:2
193:12 194:7
196:2 223:5
**means** 88:4 172:4
194:4 225:16
**measures** 52:24
**media** 13:17 74:23
75:5 129:13 130:5
154:10 212:9,16

224:3
**medications** 18:2
**meet** 24:22 25:1
49:7
**meeting** 25:3
115:14 116:13
**meetings** 42:5
**memory** 201:2
222:2
**mendocino** 10:4
58:21 125:14
126:11
**mention** 114:4
127:23 129:4
**mentioned** 64:8
67:13 68:3 100:15
166:4
**merola** 3:20 14:18
**met** 24:23 212:23
**michael** 4:18
14:25
**michael.tye** 4:19
**microphone** 13:9
**microphones** 13:6
13:12 74:22
**midsentence**
103:11
**milbank** 7:3 18:13
**milbank.com** 7:10
**miller** 7:13 14:4
**million** 205:9,10
**minimum** 61:13
**minutes** 154:3
**mischaracterized**
218:22
**mischaracterizes**
102:12 109:2
135:20 137:4
138:10 186:3
188:15 190:10
199:11 200:12

206:22 211:9,24
216:9 218:8,20
**misleading** 169:9
**missed** 170:17
**missing** 104:1
169:24
**mission** 27:5
169:9 173:13
177:4 202:20,25
**missions** 174:5
**mitigating** 205:2
**mitigation** 27:8
32:4,11 52:1,3,23
53:25 54:3,21
165:5 167:9
204:24
**mobile** 203:22
**moment** 19:17
29:13
**money** 181:3
182:24 183:17,20
185:11 186:13
189:4,9,12,14
193:21 194:2,25
197:2,7,18
**moneys** 189:9
**montgomery** 2:18
14:2
**moore** 6:3 15:16
**morning** 13:3 15:7
16:9,10 212:23
**mountain** 107:25
**mouth** 154:2
**move** 41:19
**mow** 192:4
**mudslide** 43:18
**mudslides** 44:20
45:16

**n**
**n** 3:1 8:1 16:14,15
16:15
**n.w.** 4:15 7:4
**name** 14:4 16:11
61:7 68:4 124:21
159:10 212:20
**named** 225:9,15
**napa** 10:6 58:22
125:15 126:12
**national** 203:14
**natural** 31:9 43:14
**naturally** 60:4
207:21 218:4
220:18
**near** 107:25 159:9
**necessarily** 94:2
205:16
**necessary** 31:17
32:21 99:6,22
100:22 207:16
**need** 19:16 37:10
37:20 49:4,10,23
50:1 57:25 108:17
109:4 122:24
127:17 128:8
139:10 168:2,23
187:17 197:10
198:6
**needed** 136:19
207:24 210:1
**needs** 38:20
**neither** 89:24
**net** 183:3 187:13
**nevada** 213:14
**never** 49:10 163:1
163:4 210:10
211:2,3
**new** 6:6,15 72:15
**news** 9:13,18 10:2
106:3,11,20

Veritext Legal Solutions
866-299-5127
Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 82
of 101

107:22 108:9,13
116:19 117:1,4,14
117:20 118:21,22
121:1,7 122:20,23
125:12 126:8
127:1,7
**nodding**   17:13
**nonfederal**   30:16
**nonprofit**   28:19
  50:3 51:21 52:21
  53:18 162:25
**nonprofits**   28:7
  29:24 54:2 56:16
  165:2
**normal**   60:6
**north**   10:15 58:14
  58:17,20 59:2
  66:13,16,24 67:8
  68:20 69:9 70:2
  71:12 72:2 73:9
  73:22 74:6 76:10
  83:15 97:3 125:9
  125:10,21 126:14
  126:24 127:13
  128:4,13,18,24
  131:18 132:1
  133:11 134:17
  165:20 175:11
  176:2 205:22
  206:6 213:9,12
**northern**   1:2 2:2
  8:23 13:23 54:16
  55:4 58:5 165:18
  166:23 194:18
**note**   13:6 73:15
  178:16
**noted**   67:5,15 81:8
  82:10 113:6
  227:10
**noteholders**   5:16
  15:14

**notice**   2:21 8:13
  11:18,21,24 23:9
  23:16,25 24:5
  40:20 41:23 43:1
  46:10 47:12 48:10
  51:2 52:13 53:9
  54:9 55:14 57:7
  59:15 62:12,25
  63:16 64:18 65:7
  66:1 72:23 93:6
  96:16 97:8 98:4
  109:20 110:24
  111:19 113:1
  114:12 115:3
  116:1 118:16
  119:18 120:14
  132:5 135:3 136:7
  141:23 142:9,19
  144:7 145:13
  146:5,22 148:13
  149:6 150:8
  151:18 156:19
  157:3,12 159:11
  159:12 163:10,23
  164:11,15 165:14
  166:3,5 171:8
  173:23 175:18
  176:20 178:10
  180:4 184:7 187:1
  188:1 191:14
  196:13 197:21
  208:5 210:17
  212:2 217:21
  221:2,16
**notify**   114:7,23
**november**   148:2
  156:4 157:13,22
  158:12,16,24
  160:7,25 177:14
**number**   13:17,25
  21:14 29:1,6

34:22 39:18 42:13
42:14 43:8 74:15
74:24 75:5 88:20
114:22 116:15
125:8 129:14
130:5 131:7,8,11
133:6 134:1,4,5,9
141:6,11 147:20
151:1 154:11
155:12 156:14
163:18 164:2
165:9,22 166:22
172:5 191:19
200:17,19 206:5
212:10,16 224:3
**numbers**   194:23
**numerical**   155:19
  155:20
**numerous**   60:16
  127:2
**nuns**   149:22
**ny**   6:6,15

**o**

**o**   16:14,15
**o'clock**   224:4,6
**oakland**   16:21,22
  17:4 21:4
**oath**   16:4
**object**   21:18 25:18
  27:4 30:23 34:14
  34:21 35:15 36:21
  37:12 40:18 46:7
  46:8,16,25 47:10
  47:11 48:8,9 49:6
  49:13,22 50:17,25
  51:1,15,25 52:11
  52:12 53:7,8,23
  54:7,8 55:12,13
  56:4,13 59:13,14
  60:14,20 61:2
  62:10,11 63:10,14

64:13,16 65:5,6
65:21,24 66:17,25
67:20,23 68:25
69:10 71:3,16
72:6,17,18,21
73:11 74:8 76:18
77:3,4,17,18
78:13 79:14 80:9
80:20 81:5,21
83:3,22 84:17
85:24 86:10 87:3
91:20 93:12,24
94:7,20,21 98:1,2
99:18 100:3 101:3
101:12 102:10,22
102:23 104:10,11
105:1 107:19
108:7 109:1,16,18
110:13,21,22
111:17 112:24,25
114:10 115:10,24
116:6 118:12,14
119:14,16 120:15
121:4,18,20 124:8
125:1 127:14
128:5 132:3,22
134:11 135:19
137:3,21 138:9,22
139:6,7,7 146:2
153:2,15 158:18
159:20 160:12
163:8,9 168:3,20
169:5 170:20
171:21 173:20
174:23,23 175:17
179:5 185:16
186:2,3,16 187:15
188:6,16 191:10
192:23 193:9,23
194:16 195:17,25
198:22 206:8

Veritext Legal Solutions
866-299-5127

213:10,22 214:13
215:10,24 216:19
217:7 218:9
219:24 220:8,24
222:11
**objected**   174:11
**objection**   19:2,5
19:20 26:2 37:5
41:4,18,21 42:24
45:23 47:1 50:2
59:25 70:16 73:23
85:19 86:18 89:13
93:3 94:8 97:6
102:11 135:20
137:4,22 138:10
143:15 146:18
150:20 152:7,14
153:16 161:4,14
162:3,4,14 174:13
174:24 176:7
181:5,22 182:11
182:12 183:5,6,21
183:22 184:17
185:1,6,15 186:4
186:15 188:14,17
189:17 190:9,11
192:3,8,9,22
195:16 199:9,10
199:21 200:11
206:21 208:15
209:7,17 211:8,10
211:23,25,25
215:9,25 216:8
218:7,19 221:13
222:10
**objections**   19:2
47:22 48:25 64:2
95:11,22 96:12
175:6
**objects**   57:5 62:24
115:2 135:2

141:21 142:18
144:6 145:11
146:4,20 148:11
149:5 150:6
151:17 173:21
176:18 178:9
180:3 184:5
186:24 187:24
191:12 196:12
197:19 198:15
199:22 208:4
209:9,18,20
210:15 211:11
217:19 221:1,15
**obligate**   189:8
194:2 195:7
**obligated**   188:21
189:1 190:2,7,20
194:21 195:6,10
201:22 205:16,23
**obligation**   189:3
**obtain**   173:14
**obvious**   19:13
221:10
**occasion**   31:15
**occur**   27:12 37:20
68:11 93:20 96:3
104:22 115:16
153:23 186:19
190:5 191:6
207:21,25
**occurred**   53:22
56:20 93:2 98:16
101:15 137:13,20
137:25 162:13
164:14 166:19
168:23 181:16
183:14 187:7
196:23 197:2
**occurring**   37:15
37:21 51:24 60:4

93:7,8 159:8
176:12 220:18
**occurs**   33:5,6 38:4
38:4,6 184:1
**ocean**   20:7
**october**   40:1
166:12
**offended**   19:18
**offered**   23:21
**office**   4:3 5:1,6
14:23 15:8,10
16:21 17:3 21:4,8
21:9,23,25 22:22
40:1 61:14,19,20
64:5 144:15 204:8
204:9
**offices**   23:3
204:10
**official**   3:3 7:1 9:8
14:19 18:14 61:3
61:17 67:14,15
68:8,16 88:15
212:21
**officials**   41:9
60:16,23 61:13,24
64:8 76:13 112:1
140:5 181:25
207:12
**oh**   3:9 105:24
179:22
**oil**   35:21,23 36:3,5
**okay**   15:5 17:5,9
17:16,21 18:16
21:15 22:2 23:7
23:13 24:11,21,25
25:6 26:7,21 27:1
27:1,13,21 28:1,9
29:18 30:6,11,20
31:22 33:10,16
34:5,18 35:2,7,13
35:19 37:9,18

38:3 39:22 40:12
42:11,19 43:4,6,7
43:10 44:10,15
45:3 47:7,18 48:3
49:19 50:8,20
51:11 52:6 53:1
54:5 55:6,24
56:19,24 57:17
58:10 59:1,5,6,6
60:17,24 61:9
62:6,19 63:6
65:17 66:12 67:7
68:18 69:6,22
70:20 71:7,11
73:7,19 74:3,13
74:17 75:24 76:7
76:25 77:12 78:2
79:10 81:12,18
82:14,18 83:18
85:2,7,13,21 86:4
86:15,24 87:15,22
88:8 89:2,6,10
90:14,20 91:16,23
92:8 93:9 94:4,13
95:17 96:6,25
97:20 99:13
100:19 101:8,21
102:1,19 104:23
105:6,18 106:7,13
106:24 107:3,11
107:15 108:3,11
108:21 110:4,9,16
111:7,13 112:5,5
112:13 113:16
115:19 117:3
118:4 122:18
125:7 126:16,20
127:9 128:10,20
129:7 130:10,25
131:5,15,22 133:3
136:2,12,23 138:2

Page 25

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 84
of 101

138:18 140:6
141:8 142:5,13
147:9,16 149:1,14
152:20 153:8
154:14,18,24
155:10 156:7,12
157:6 158:9 159:1
159:15 160:5,22
163:17,25 164:18
165:7 167:10,15
167:20 168:25
169:13 170:5,15
171:17 172:17
173:2 175:3,9
179:10,22 182:2
185:10 186:11,20
188:10 194:3,11
194:17 196:7
197:16 199:5,17
200:20 205:7,13
205:21 206:11
207:2,9 208:19,24
209:4,13 212:4
216:14,14,24
218:3,14 219:18
223:9
**oklahoma** 221:21
**omission** 90:12
94:3 101:17
102:21 103:6,21
104:7,16 137:8
143:5
**omissions** 86:1,12
86:21 87:5 88:3,5
97:17,22 98:13
99:3 102:15
103:18 135:10,24
136:4 137:13,19
137:25 138:17
139:1 141:15
142:8 145:19

146:12,14,15
147:3,8 148:19,23
149:13 150:15,24
152:1,11,12 153:4
153:20 168:18,22
169:21 214:15,16
214:25 215:18
220:13
**omitted** 73:9,21
74:6 99:5 104:4
**once** 39:13 64:3
104:10
**ones** 26:5 46:4
81:16 113:19
124:16 195:9
221:12
**ongoing** 108:18
**online** 124:25
**operated** 118:25
119:7
**operating** 148:23
**operation** 98:14
**opinion** 95:1
**opportunity** 18:9
42:8
**orange** 3:17
**order** 10:18 35:4
48:6,23 140:15
169:8 173:14
175:12 176:3,8
**orders** 136:16
**organizations**
44:2
**original** 224:9
**orlando** 3:18
**oroville** 33:23
**outcome** 14:11
147:7 199:16
225:22
**outside** 49:1 60:6
70:13 163:15

**overexcavated**
207:23
**overwhelmed**
38:10
**owe** 199:20
**owed** 200:9
**owned** 50:3 51:20
52:20 53:17
118:25 119:6
**owners** 177:20
180:19 193:2
207:22

**p**

**p** 3:1,1 16:14
**p.m.** 129:15,16
130:2,4 154:5,6,7
154:9 212:11,12
212:13,15 224:4,6
**p.o.** 4:5
**pacific** 1:9 2:9
13:20 18:19,23
119:1
**page** 42:12,18
88:20 90:15,18
98:18 103:3,10
105:21,22 107:1
116:17 117:19
125:9 126:14
131:7 134:1,9
136:13,13,14
141:2,6,11 155:13
156:24 157:2,9
159:4 164:3
165:20 166:8,9
177:16 193:25
201:10 207:5,11
**pages** 1:25 139:12
144:16
**paradise** 91:19
102:9

**paragraph** 47:6
106:2 116:19
125:12 155:15
156:6 157:8 166:8
177:15 207:10
209:2
**part** 19:15 24:20
33:11 43:21 54:17
54:20 61:10 65:20
104:24 107:16
108:4,12,23
110:11 117:5
118:9 119:9 120:1
121:1 122:20
126:21 127:10
131:23 134:21,23
136:20 141:18
144:2 145:8 148:8
150:3 151:14
168:2 171:18
180:9 206:13
208:13 213:19
**particular** 68:13
98:17 107:22
108:9 138:23
140:2 144:14
145:21 148:20
178:15 183:8
195:8 196:22
209:12 218:2
220:6,10
**parties** 13:16
122:13
**parts** 120:6,8,11
**party** 18:8 60:5,8
218:18 219:9,22
220:11,13,19,23
222:8
**paul** 1:17,23 2:16
2:21 8:3 13:18
14:7 16:3,13 75:6

Page 26

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 85 of 101

130:6 212:17
224:2 225:5 226:7
227:6,25
**pause** 18:5,9 40:11
58:2 107:21
126:25 201:4
207:6 221:22,25
222:18 223:14
**payment** 211:3
**payments** 59:12
62:9,22
**pc** 134:22
**pen** 93:22
**penalty** 227:7
**pending** 18:21
**people** 83:14
204:4
**percent** 202:14
210:23
**percentage** 172:18
172:22 204:3,19
206:24
**perform** 68:19
77:1 83:9 111:9
112:8 123:9
128:11 202:22
**performed** 69:3
83:15 112:17
123:14 128:16
209:24 210:1
**performing** 65:4
95:19 96:9
**period** 87:6
166:20
**perjury** 227:7
**permission** 173:14
177:21
**person** 25:3 76:11
90:13
**personal** 40:22
41:25 46:12 47:2

47:14 48:12 51:3
52:15 53:11 54:11
55:16 57:9 59:17
62:14 63:2,18
64:20 65:9 66:3
72:25 96:18 97:10
98:6 109:22 111:1
111:21 113:3
114:14 115:5
116:3 118:18
119:20 132:7
135:5 136:9
141:25 142:21
144:9 145:15
146:7,24 148:15
149:8 150:10
151:20 163:12
171:10 173:25
175:20 176:22
178:12 180:6
184:9 187:3 188:3
191:16 196:15
197:23 198:19
208:7 210:19
211:15 217:23
221:4,18 222:14
**personally** 54:14
112:2 130:23
139:24 140:21
143:18 144:13
210:22 211:22
212:3 218:1
**pertain** 112:22
**pertaining** 153:14
**pg&e** 1:7 2:7 6:1
13:20 14:20 15:17
18:19,22 25:17
26:1 63:9 64:1,4
66:15,23 70:1
76:1 78:24 82:22
85:22,23 86:8,9

86:12,13,16,21
87:5 91:18,24
92:2,10,25 97:2
99:5 100:2 101:2
102:4,8,15 103:5
103:19,23 104:4
104:25 107:18,25
108:5,14,24
109:14 110:19
114:7,8,23,24
115:21,22 116:13
117:6 118:10
119:7,10 120:2
121:3 122:21
126:23 127:4,5,12
128:3 131:2,25
132:20 133:22
134:25 135:10,25
135:25 136:18,21
137:20 138:8,14
139:5 141:20
143:9,23 144:4
145:6,9,25 148:6
148:9 149:3 150:1
150:5 151:11,14
152:6 153:7,20,23
160:3,17 162:17
163:3 167:18
169:8 171:20
172:19 185:21
187:13,20 191:9
192:7,16 193:6
194:13 195:15
197:5,14 198:14
200:10 204:18
206:14 210:13
212:22 214:12,16
214:18,25 215:7
215:23 216:12
**pg&e's** 10:10,15
58:12 86:25 99:2

103:17 121:16
122:4 123:3
124:12 130:16,19
132:16 133:11
134:14 135:17
137:1,9 142:15
143:13 147:12
152:25 153:13
163:6
**phone** 15:6,19
25:4 45:22 46:16
223:16
**phones** 13:10
**phrase** 27:22 28:2
28:10,13,20,23
30:7 59:2 87:9,12
87:16,19,23,25
88:4 91:5 93:10
93:14,17
**pick** 13:7
**piece** 121:23
**pits** 207:23
**place** 13:11,15
17:1 56:21 210:11
225:15
**plan** 38:15
**plant** 94:17 95:8
222:16
**planted** 94:16
95:7
**played** 68:5
**plaza** 6:4
**please** 13:6,10
16:11 17:19,24
19:7,15 39:22
40:9 42:12 45:6
66:19 74:22
120:22 175:23
212:8
**plus** 37:11

Veritext Legal Solutions
866-299-5127

**point** 38:12 39:6
78:8 81:23 132:11
138:24 144:16
166:2 181:13
186:5 197:11
200:8 206:3
**poles** 10:21 99:9
99:25 100:25
140:17
**policy** 62:20 63:5
180:15 182:21
184:25
**portion** 182:20
183:8 190:6 195:5
**portions** 54:20
**posit** 138:16
**position** 21:17
66:14,22 76:16,20
83:1 86:20 87:4
91:5 98:12 102:3
102:14 143:4
153:4 162:7
214:17,23
**positions** 21:6
**possible** 183:16
185:8 187:19
190:22 207:18
211:6
**posted** 177:13
178:17,22,23
**potential** 36:15
64:4 147:7 170:3
172:14 180:18
**potentially** 33:24
37:19 44:24 47:25
49:25 60:5,8
73:13 109:11
113:24 182:20
197:4 210:2
220:23 222:8

**power** 51:13,16
52:24 54:4,20
**powerline** 107:25
**powerlines** 48:5
48:22 49:3,10,15
49:21,24,25 50:4
50:7,15 51:23
52:5,22 53:19
55:21,25 56:9
57:2,15 127:4
**pre** 33:14 34:4
**precise** 194:23
**predate** 131:20
134:20
**predates** 131:17
132:10 133:2
134:17
**preliminary** 38:25
**preparation** 26:9
40:17 41:3,6 58:8
88:18 107:8 118:1
118:2 133:18
**prepare** 24:12
25:10 26:22
**prepared** 24:2,8
24:10 41:17
113:19 123:22
128:23 139:3
154:16 155:2
171:1
**preparedness** 27:9
**prepares** 41:8
**preparing** 32:23
42:7
**prerequisites** 37:1
38:17
**present** 7:12 14:12
**presented** 70:4
105:3
**presently** 18:1

**president** 31:1
32:1 34:17 35:1,4
35:12,16 37:8,23
38:18,23 39:9,10
43:22 45:8,10,25
46:17 50:6 60:3
155:19 157:14
159:18
**presidential** 36:10
36:18 37:2
**press** 109:10
152:22 153:11
**pretty** 158:8
**prevent** 48:6,23
51:23
**previous** 135:22
166:17 220:17
**previously** 51:16
69:2 75:19 79:16
83:12 96:13 97:16
101:4 102:13
118:3 127:18
143:17 153:3
154:14 168:19
193:13 219:11,21
**primarily** 29:25
**primary** 29:21
35:24 61:3,24
129:6 192:16
**print** 225:16
**printout** 156:22
**prior** 21:7 25:5
38:17,24 40:13
42:9 49:16 68:20
77:2,7 83:10
102:12 109:2
114:5,20 115:15
115:20 116:12
121:7 127:16
135:8,20,25 137:4
138:10 139:22

144:12 176:11
186:3 188:15
190:10 199:11
200:12 206:22
211:9,24 216:9
218:8,20,23,25
219:15 225:8
**priority** 191:19
**private** 28:18
29:24 51:21 52:21
53:17 54:1 56:15
162:16,25 163:2
165:1 173:13
179:14 180:10,13
180:16 181:9,17
**privilege** 63:13
64:16 65:24 67:22
68:25 77:6,20
83:25 84:20
115:12,13 116:9
116:10 199:25
**privileged** 26:19
**probably** 27:9
124:20
**problem** 174:20
219:4
**procedure** 62:18
**proceeding** 24:15
71:15,22 72:5
79:13 113:25
124:6 127:22
**proceedings** 65:3
69:18 70:8 71:22
78:1,19 79:7 81:8
81:14 84:8,25
105:14 109:12
121:10 123:6
124:1,11 170:13
197:8 198:4 199:3
214:2 225:20

Veritext Legal Solutions
866 299-5127

**proceeds** 180:19
196:21
**process** 37:13
41:16 42:3 55:2
59:8,10,21 60:6
61:11 63:7,13,24
64:11,16 65:24
67:22 68:5,24
77:6,11,20 83:24
84:20 155:9
182:18 195:24
196:3 199:25
209:16
**processed** 39:8
**processing** 203:15
**produced** 70:10
123:8
**production** 24:20
**profit** 162:16
163:2
**program** 28:16
32:3,4,9,10,11
54:21 100:11
165:4,5 167:7,8,9
171:24 172:16
176:10 178:3
180:11,13 203:8
203:10 204:24
205:1
**programs** 21:14
22:16 27:7 29:1,8
30:2,3 53:25 54:4
61:22 68:10
201:15 204:7,11
**project** 181:16
183:8 184:1 185:9
187:9 188:9 189:7
189:24 196:21
201:24 202:8
**projects** 52:4 55:2
55:19 183:14

189:23 196:22
201:21 202:3,11
202:12,16
**proof** 8:23 9:2,5
58:4,12,25 66:8
69:11,13 70:4,13
71:1,5,19 72:7
75:16 77:15,22
78:4,8,11,16 79:4
80:7,19,24 82:8
82:12 84:3,22
97:23 105:9 110:6
110:12 113:17
114:2,5,20 115:15
121:11 123:19
124:2 127:23
128:21 139:18
165:24 170:10
190:18,20,24
200:5 216:23
**proofs** 24:14 25:7
26:6 77:9 83:4
92:1,11 129:2
133:1 135:15
138:4 169:20
187:21 188:13
200:22 201:1
213:5,8,18 215:21
217:5
**proper** 141:16
**properly** 102:5
123:4
**properties** 207:15
209:5
**property** 142:11
143:11 173:13
175:15 176:6
177:20,23 179:14
180:10,13,16,19
181:9,17 193:2
207:22,24 209:15

**protected** 68:24
115:12
**protection** 36:1
**provide** 22:16
27:11 29:5 30:5
34:2,11,15 35:5,8
35:18 36:13,25
38:15 39:14 41:10
44:24 45:7,19,24
46:6,19 50:6
51:18 80:12 89:12
89:15,16 90:7,9
94:23,25 102:25
104:13 113:7
120:8 132:25
138:13 152:10
156:9 162:10,15
162:19,23 164:19
164:23 167:1,5
181:8 189:6 197:2
202:22 203:11
213:2 214:17
**provided** 24:19
28:6 29:4,8,22,25
30:15 33:4,6 35:8
36:6 41:15 52:8
53:5,17 54:19,25
55:8 56:2,11,14
56:18 57:4,14
58:6 78:4 79:17
117:1 120:6
160:10 161:3,21
162:2,5,17 164:25
165:3 167:6
179:16,18 181:12
181:21 200:4
201:19,23 203:17
203:18 204:2
220:14,21 222:7
**provides** 28:16
34:7 41:11 44:23

47:20 52:1,19
99:15 134:13
137:8 141:13
142:7 143:2,3
148:20,22 202:18
203:22
**providing** 21:13
29:2 30:22 67:4
76:23 83:7 90:10
163:1 188:24
193:14 219:20
**provisions** 89:18
**public** 3:8 10:18
11:2,3,6,7,10,11
11:14,15 28:11,15
29:14,20,22 30:18
32:2,8 53:15 54:1
56:15 63:5 81:15
164:25 167:6
171:23 180:11
181:24 186:6
189:5,22,22 193:7
193:14,20 194:15
194:19,22 196:10
196:19,25 197:13
198:13 199:7,19
200:3 201:12,17
205:10,14
**publication** 42:10
**publicly** 50:3
51:20 52:20 53:17
70:6 71:9,20
72:13 74:11 77:25
78:17 79:5,19
80:14 81:10,17,19
81:24 84:6,7,23
84:24 105:11,12
109:7 110:15,18
113:11,23 123:2
124:15,16 127:19
127:20 170:10,11

Veritext Legal Solutions
866-299-5127
Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 88
of 101

171:14 213:19
**published** 62:20
**pulga** 119:2
**pulled** 203:24
204:9,15
**purport** 113:20
**purported** 123:21
**purpose** 52:9 53:5
53:18 55:10
121:25,25 180:21
193:21 216:2,11
**purposes** 132:13
132:14 215:19
**pursuant** 2:20
**pursued** 198:10
**pursuing** 184:2
199:14
**pushed** 93:21
**put** 142:6 183:17

**q**

**qualified** 111:15
**question** 17:18,18
18:24 19:3,7,9
25:20 26:20 34:10
36:23 40:19,25
44:16 46:3,8
47:11,24 48:9,19
51:1 52:12 53:2,3
53:8 54:8 55:13
56:5,7 57:6 59:14
62:11,24 63:14,21
64:14,17 65:6,22
65:25 67:21,24
69:1,3 71:17 72:1
72:18 77:4,18
78:7 79:15 80:10
83:22 84:13,18
86:6 87:11 89:20
89:22 90:2,5
92:17 94:21 96:7
97:7,22 98:2,3

99:19,20 100:4,6
101:13 102:11,23
107:20 108:8
109:17,18 110:17
110:22 111:18
112:25 114:11,18
115:2,10,25 116:6
118:13,14 119:8
119:15,16 120:22
120:25 121:5,19
121:20 122:2
124:9 125:2 127:6
127:15 128:6
132:4,23 135:2,13
136:6 137:16
139:7,8,10 141:22
142:18 143:19
144:6 145:12
146:3,4,21 148:12
149:5 150:7
151:17 154:25
158:10 160:23
163:9 168:1
169:17 170:21
171:7 173:22
175:17,24 176:19
178:9 179:1 180:3
184:6 185:19
186:16,25 187:17
187:25 188:7,18
189:18 190:12
191:11,12,23,24
192:2,9,10,23,24
193:10 194:8
195:17,18 196:12
197:20 198:16,23
199:23 206:9
208:4 209:8,10,18
209:19,21 210:16
211:11,12 215:2
217:12,20 218:10

219:2 220:25
221:1,15 222:2,5
222:11,12
**questions** 19:10
19:12,14,16 41:21
42:25 59:8 64:25
79:25 84:2 96:14
195:4 212:25
220:17 223:8,12
223:16,18,20,22
223:24
**quick** 40:8 74:17
154:1 168:1
**quoted** 80:22,24

**r**

**r** 3:1 16:15 61:8
225:2
**range** 27:8
**rare** 161:6
**reached** 154:21
155:7 216:22
**reaching** 95:15
121:25
**read** 43:11 44:8
90:18 98:24
103:13,15 120:5
120:11 157:9
158:5 177:18
227:8
**reading** 88:1 91:9
92:13
**reads** 207:11
**real** 40:7 168:1
**really** 21:24 74:17
101:16 136:14
139:9 177:4
183:23 197:5
200:2 221:9
**reasonable** 67:3
76:22 83:6 90:9

**reasonably** 103:7
103:21 104:21
**reasons** 191:6
**reasserts** 222:10
**rebuilding** 177:25
207:25
**recall** 80:25 111:4
113:12
**receive** 73:18
185:17 192:15
199:2
**received** 56:22
58:23 196:20
197:7,9 198:9,25
222:16
**receives** 155:19
**recess** 75:1 129:16
154:6 212:12
**recipient** 179:8
184:22 193:4
199:14
**recollecting** 29:13
**recollection** 68:14
**recommendation**
39:9,12
**reconciliation**
183:13
**record** 13:4,16
14:15 16:12 18:11
74:20,24 75:4
81:15 129:14
130:4 154:5,9
212:10,15 224:4
**recorded** 13:18
**recording** 13:14
**records** 168:11
211:19 219:13
**recover** 27:19
59:12 60:10 62:8
62:22 162:6
168:14 171:19

Veritext Legal Solutions
866-299-5127

| | | | |
|---|---|---|---|
| 178:18 179:12,19 | **referenced** 25:7 | **region** 21:4 22:17 | 208:23 210:6 |
| 179:23 182:8 | 26:4,6,12 66:8 | 54:17 68:7,12 | **relates** 135:9 |
| 184:23 185:13,20 | 69:15 71:21 72:12 | **regional** 16:20 | 214:15 |
| 191:9 192:7,15,21 | 74:12 77:15,24 | 17:3 21:3,7,23,24 | **relating** 58:13 |
| 192:25 196:19 | 78:11 80:17 102:6 | 22:14 23:2,3 | **relation** 45:19 |
| 197:18 198:12,14 | 106:25 117:18,20 | 67:16 68:6 204:9 | 92:11 132:11 |
| 199:1,6,13 218:17 | 121:11 123:6 | **regularly** 52:19 | **release** 9:13,18 |
| 219:9 220:3,7 | 125:24 126:13 | **regulators** 169:10 | 10:2 106:3,11,20 |
| **recovered** 183:18 | 131:3,10 134:5,9 | **reimburse** 189:11 | 107:22 108:9,13 |
| 187:22 193:3 | 140:23,25 141:11 | 210:25 | 108:23 109:10 |
| 197:4 | 150:18 156:5,24 | **reimbursed** | 116:20 117:1,4,15 |
| **recoveries** 181:11 | 157:2 159:10 | 209:14 210:10 | 117:21 118:21,22 |
| 186:8,23 187:14 | 164:8 165:23 | **reimbursement** | 121:1,8 122:20,23 |
| 199:2 | 169:7,23 195:4 | 196:10 | 125:12 126:1,8 |
| **recovers** 181:1 | 204:25 209:1 | **rejects** 136:5 | 127:1,7 |
| **recovery** 8:20 | **references** 71:8 | 171:6 | **releases** 152:22 |
| 27:8 40:4 61:20 | 80:13 81:2 | **relate** 149:12 | 153:11 |
| 90:9 167:23 168:8 | **referencing** | 150:23 213:8 | **relevant** 215:1,18 |
| 179:6 185:11 | 171:14 | **related** 14:9 36:2 | **relied** 70:22 77:21 |
| 186:1,10,14 | **referring** 81:14 | 52:4 54:15 61:22 | 84:3,21 123:24 |
| 198:25 | 90:23 97:21 201:8 | 62:9,22 66:15 | 132:12 217:4 |
| **reduced** 225:16 | 208:2,20,21 214:1 | 67:5 69:17 70:7 | **relief** 44:1 157:16 |
| **refamiliar** 26:24 | **refers** 58:21 | 71:23 75:17 76:20 | 158:1 222:7 |
| **refamiliarized** | 107:23 136:15 | 77:16 80:13 82:9 | **relies** 213:17 |
| 24:18 25:12 | 155:22,24 | 83:8 86:2 98:16 | 214:10 215:5 |
| **refamiliarizing** | **reflective** 190:21 | 99:5 104:18 | **rely** 69:19 70:9,19 |
| 26:24 | **reframing** 45:12 | 109:11 116:13 | 74:2 79:8 101:20 |
| **refer** 18:19,22 | **refresh** 201:2 | 117:2 127:3,8 | 105:15 121:9 |
| 29:7 58:16 59:3 | 222:2 | 132:16,25 134:14 | 122:24 123:7 |
| 74:10 75:20 82:14 | **regarded** 103:8 | 135:10,11 138:3 | 127:17 128:8 |
| 108:17 109:4 | **regarding** 66:15 | 141:14 142:7 | **relying** 70:15,24 |
| 122:15 201:1 | 66:23 72:19 76:16 | 145:22 146:11 | 71:14,18 72:4 |
| 202:20 | 83:1 113:8,13 | 147:4,14 148:21 | 78:15 79:13,17 |
| **reference** 71:10 | 121:16 122:4,4,11 | 149:22 150:16 | 81:16,20 106:9 |
| 81:6,10 88:22 | 122:12 127:8 | 151:25 152:2 | 110:5,8,11,14 |
| 90:17 94:6 106:1 | 128:24 143:5,8,13 | 166:24 170:9 | 113:18,23 116:24 |
| 108:10 116:18 | **regardless** 31:10 | 171:20 172:8 | 116:25 121:23 |
| 121:13 125:11 | 43:19 176:16 | 177:24 179:3,7,12 | 123:20 125:21 |
| 129:1 155:14 | 178:2 | 179:19 182:21 | 128:22 131:1 |
| 158:15 164:3 | **regards** 94:10 | 202:9 203:21 | 133:21 137:12,18 |
| 165:21 166:10 | 96:1 | 204:17 205:5 | 139:17 143:22 |

Veritext Legal Solutions
866-299-5127

145:5 146:16
148:5 149:25
150:19 151:10,24
152:4 154:15
155:1 169:19,25
170:2,7,19 171:1
217:8
**remotely** 14:13
**removal** 12:2
171:20 172:1,4,5
172:15,20 173:13
174:5 177:12
179:7,9,15,24
180:10,13,16,20
181:3,9,17 182:9
182:22 183:9,14
184:4,25 185:23
192:21 193:1
206:15,20 208:23
209:6,14
**remove** 207:18
**removed** 207:14
207:16 211:1
**repair** 49:4,11
50:1,7 51:19
52:21 54:19 56:16
162:11
**repaired** 48:5,22
**repairing** 49:15
51:22 52:4,9 53:6
53:19 55:10
**repairs** 99:7,22
100:22 163:6
**repeat** 19:9 34:9
40:25 48:19 63:21
66:18 87:10
114:18 120:22
137:15 167:25
169:16,17 175:23
192:2,5 222:1

**repeated** 191:23
192:4
**rephrase** 21:19
65:1 93:16 99:20
194:10
**replacing** 55:20
**report** 8:16 11:3,7
11:11,15 22:3,18
39:24 40:13,14,17
41:3,6,8,10,12,16
42:7,9,13 106:8
106:12 107:12,17
108:5 109:9
112:21,22 116:23
117:2,18 118:6,10
119:9,25 120:6,12
120:18 123:18
125:18 131:9,10
131:14,17,24
132:10,24 134:3,4
134:8,16,22,24
135:9 138:6,13,20
138:23 140:14
141:5,10,13,19
142:15 143:1,13
143:19 144:14
145:2,9,21,24
146:10,15 147:2
147:10,11 148:2,9
148:20 149:2,12
149:22 150:18,23
151:8,14 152:9,16
203:25 207:4
208:14,17,18
**reported** 1:23
**reporter** 14:7 19:8
225:7
**reports** 22:6 25:13
42:4 69:15,15,17
70:7 71:9,21
72:14 74:11 77:25

78:18 79:6,19
80:15,22 81:2,3
81:11 84:7,23,25
105:12,13 108:18
109:8,11,14,25
110:6,11,15,18
111:6,8 113:8,10
113:13,18,23
120:9 121:9,22
122:25 123:1,3,20
123:22 125:23
127:20 128:22
150:13 151:23
152:23 153:10,18
154:15,21 155:2,7
170:11,16,25
171:2,15 213:21
214:17 216:2
217:3,9,14,17
218:2,12
**represent** 188:20
194:19 206:25
212:21
**representations**
176:13
**represented**
190:24
**representing**
15:16
**represents** 195:6
**request** 8:7,8
24:20 37:16,22
38:10,13,18,22,25
39:6,7,11 42:5
**requested** 73:16
**requesters** 8:17
**requests** 24:17,17
26:23 77:24 79:5
79:18,24 80:1,3
84:5 105:10 124:3
129:3

**require** 19:14
90:25 91:7 161:23
**required** 92:15
103:23 176:10
182:25
**requirement**
180:17
**requires** 92:5
180:14
**reserved** 224:11
**residential** 177:20
**residents** 175:10
176:1 177:25
**resolution** 198:3
**resolve** 186:18
**resolved** 183:7
185:9 199:3
**resources** 31:17
31:18 32:21 34:2
38:15,21 43:25
**respect** 112:7
113:9 122:5 137:1
142:15 156:2
**respond** 27:19
38:9 64:24 99:7
99:23 100:22
162:6
**responding** 19:16
**response** 8:19 9:8
27:8,11 38:5 40:4
41:13 45:5 61:20
84:1 88:15 91:15
114:3 121:6,12
124:3 127:24,24
131:4,11 135:23
140:23 141:1
143:25 144:13
166:17 169:6
177:1 202:23
221:10

Veritext Legal Solutions
866-299-5127

**responses** 24:16
25:8 26:22 66:9
69:14 70:5,14
71:5,19 74:10
77:23 78:3 80:1,2
80:6,11,18,23
84:4 98:19 104:8
105:10 127:16
129:3 133:25
134:10 141:12
**responsibilities**
21:2,11,20 22:12
22:25
**responsibility**
35:25 54:18 68:9
68:15
**responsible** 21:13
23:1 60:5,8
202:24 220:11,23
222:8
**responsive** 53:15
**rest** 191:22,24
**restate** 25:19 56:6
90:4 187:17 219:2
**result** 30:21 69:7
77:13 83:19 93:8
93:19,20 96:4
164:20 167:2
190:5 207:22
**resulted** 86:1,12
86:21 87:5 97:18
98:14 102:15
136:1 145:20
161:20 168:23
220:13
**resulting** 82:23
153:20 157:21
159:16 160:1,6,24
161:8,11,25
166:11

**resuming** 75:2
130:2 154:7
212:13
**return** 198:6,9
**returned** 190:2
197:10
**review** 42:8 88:17
107:7,9 117:25
133:17 154:23
168:10 174:16
211:19 217:10
219:12
**reviewed** 23:24
24:14,16 25:10
58:7 69:16 81:23
107:10 118:3
139:22 140:3,21
143:18 144:13,14
153:10,12 174:15
175:5 178:16,23
178:24 202:7
216:20
**reviewing** 139:15
**right** 12:2 33:7
37:24 46:2 73:12
91:11 102:9 122:9
135:8 158:14
162:19 171:16
173:4,5,7,10,11
173:18 174:4,9,15
174:17 175:12
176:3,11,14
177:12 183:4
189:20 190:25
192:19 193:18
194:9 197:17
198:1 201:6
206:17,23 213:6
213:21 214:21
215:15 216:5
223:7

**rights** 174:4
**ripe** 197:6
**risk** 10:10 99:8,24
100:23 130:16,18
192:19
**road** 107:25
**robert** 67:17,18
68:3 157:16,25
**roe** 177:19
**role** 68:4 177:5
**room** 14:13 18:6
**roughly** 206:19
**rubbing** 13:8
**rule** 23:9,17,21,24
24:5,9 25:15,24
69:23 78:22
101:10 132:19
168:5 187:11
**ruling** 139:13
**run** 30:2,3

**s**

**s** 3:1 16:15 61:8
**sacramento** 4:6
**safe** 148:23
**safely** 177:22
**safety** 93:6 99:7
99:23 100:23
108:20 110:1
112:20 113:14
123:18 134:13
135:12 137:9
144:25 147:25
149:20 151:6
214:19 216:12
**samir** 7:8 18:13
212:21
**san** 1:3 2:3,19
5:21 13:24 14:3
**saw** 174:9
**saying** 73:20
79:23

**says** 43:13 44:4
90:21 98:25
**scenario** 33:15
**scheduled** 136:16
**school** 20:8,11,14
20:15,24
**sciences** 20:7
**scope** 40:20 41:22
42:25 43:3 46:9
47:1,12 48:10
49:2 51:2 52:13
53:9 54:9 55:14
57:6 59:15 62:12
62:25 63:15 64:17
65:7,25 72:22
96:15 97:7 98:3
100:8 101:6
109:19 110:23
111:18 113:1
114:11 115:3,25
118:15 119:17,24
120:13 132:4
135:3 136:6
141:22 142:19
144:7 145:12
146:5,21 148:12
149:6 150:7,21
151:18 152:8,15
163:10 171:7
173:22 174:14,25
175:18 176:19
178:10 180:4
181:6,23 182:12
183:5,21 184:6,18
185:2,7,16 186:4
186:15,25 187:25
188:16,17 189:17
190:11 191:13
192:8,22 195:17
196:13 197:20
198:16 199:10,21

Veritext Legal Solutions
866-299-5127

202:8 208:5,16
209:9,19,20
210:16 211:10,12
212:1 217:20
218:9 221:2,14,16
222:11
**scott** 22:22
**scrape** 207:17
**second** 22:7 31:2
106:2 116:19
119:4 177:15
**section** 5:7 44:5,7
44:8 46:24 87:21
88:1,6,23 89:7,11
90:6,23 91:6
99:17 103:18
167:12,17,23
168:9,13,16 169:3
184:20,21 219:16
219:23 220:4,7
**security** 23:18
61:14 62:2
**see** 42:14,20 43:7
44:5 88:22 90:14
91:2 98:21 99:11
106:1 116:18
125:11 134:1
138:24 149:11
150:22 155:14
156:20 159:2,5
164:4 168:2
177:15 179:22
186:9 198:2
**seeing** 111:4
**seek** 182:8 185:12
198:13 220:7
**seeking** 26:15
**seen** 40:5,12,13
107:4 117:22
126:17 130:21,23
133:14 140:19

174:17 175:7
178:5
**select** 202:2
**senior** 5:16 15:13
60:22
**sense** 17:14 19:21
93:23,25 94:2
192:4
**sensitive** 13:7
**sentence** 27:17
90:15 98:21
103:11,15 141:3
**separate** 154:22
155:8 217:10
**separately** 188:6
198:22,24
**september** 108:1
133:13 221:11
223:5
**seq** 157:18 158:2
**serious** 104:3
**service** 20:16 29:8
176:17
**services** 5:2 15:10
29:11 30:2,5
112:2 202:22
204:7
**session** 130:1
**set** 9:10 44:12 46:4
46:24 57:1 70:2
71:1,13 72:2,10
78:25 79:12 80:5
88:16 97:19
200:21
**setting** 85:12
95:21 96:4,11,22
**settlement** 197:14
**seven** 152:22
**seventh** 6:14
**severe** 47:9,19

**severely** 172:12
**severity** 43:23
157:23
**sevier** 61:7 62:4
67:14
**sgentel** 6:9
**share** 194:21
**shared** 10:20
140:16
**sheets** 6:17 15:20
15:21 223:19,19
**sheltering** 203:2,9
**shorthand** 225:6
225:14
**show** 123:3 136:3
138:6 153:22
**showing** 142:9
**shows** 147:6 182:5
**shrugging** 17:13
**side** 189:23 194:20
**sign** 68:16 175:12
176:3,11
**signature** 224:11
226:5 227:2
**signed** 67:16
176:14 192:18
**silence** 13:10
**similar** 77:7 83:4
83:11 84:1 121:6
127:16 135:8
150:13 151:23
**similarly** 123:17
**simple** 201:25
**sit** 214:8 215:3
**site** 207:19
**sites** 207:17
**sitting** 69:23 78:21
101:10 170:25
200:8
**situation** 32:16
33:2 34:4 52:7

53:4 55:7 185:25
186:9
**slightly** 200:17
215:2
**snowstorm** 43:19
**snowstorms** 44:21
45:16
**socoemergency....**
178:18
**soil** 207:14,16,17
207:21 209:6
211:1
**sole** 52:9 53:5 55:9
121:25
**solutions** 2:18
14:5,8
**sonoma** 10:5
58:21 125:15
126:12
**sophia** 6:8 15:15
223:23
**sorry** 34:9 47:6
48:18 64:23 87:11
90:16 99:12
103:10 105:25
110:10 112:15
114:17 115:18
120:21 154:10
156:25 175:24
**sort** 202:1
**sorted** 203:18
**soudelor** 54:18
**sought** 167:23
168:8 179:23
**source** 160:3,18
160:20 161:9,10
161:23 185:14
**sources** 166:22
**south** 3:17 5:8
**southern** 160:19

Page 34

Case: 19-30088   Doc# 5834-1   Filed: 02/19/20   Entered: 02/19/20 14:18:03   Page 93
of 101

sparked 108:1
sparking 148:24
speak 26:8 124:7
137:7 138:20
139:4 210:4
speaking 27:2
143:7 219:13
speaks 135:17
136:25
special 7:9
specific 22:17 25:9
25:14,23 47:23
55:20 62:17 80:16
81:1 83:20 89:17
90:25 91:7,25
92:5,10,14 95:1
101:6 111:5 113:9
113:14 120:5,8,11
121:16 122:3,15
122:17 135:14
144:16 147:2,11
158:19,22 165:2
216:2
specifically 33:9
72:8 100:15
103:23 136:25
138:6 143:14
147:12 152:1
207:15 210:7
specify 149:2
speculation 95:13
95:25 182:13
222:13
speculative 183:23
186:17
spent 204:1
205:16,19,25
spill 35:21,23 36:5
222:19
spills 36:3

spoke 26:11
spread 104:3
spring 5:8
square 3:8
stafford 30:25
31:8 35:23 36:14
49:8,18 51:10
87:19,21 88:23
89:4,8,12 90:6,24
91:7 99:17 103:19
156:10 157:16,18
157:25 158:2
160:11 161:3
167:12,17,24
168:9,17 169:3
stand 50:12,14
74:21 129:12
212:7
standing 108:24
109:3
start 20:20 158:23
started 20:22
158:24
starting 88:24
141:3
starts 103:11
157:8
state 14:14 16:11
16:25 18:10 28:6
28:17 31:18 32:19
32:22 37:17,22
38:11,12,14,14,19
39:2 43:5 50:21
51:8 55:9 56:1,10
76:23 101:15
109:14 110:2,19
112:1,12 113:15
128:3 145:22
147:15 150:16
152:2,17 155:25
157:20 158:4

162:24 164:25
166:11 171:3
174:18 177:3,5
178:22 179:8,15
179:17,18,20
180:17 181:8,13
182:7,16,25 185:4
188:22 189:6
193:3 194:5 195:1
195:11 201:19
202:3,7,13,16
214:20 227:18
state's 50:23
178:20
stated 51:16 69:2
79:16 92:3 97:16
101:4 102:13
103:2 118:10
122:24 135:22
137:6 138:12
143:17 144:12
145:18 153:3
161:9 186:6 194:1
200:14 220:16
statement 91:14
127:7
statements 113:10
states 1:1 2:1 4:11
9:8 13:22 15:3
34:8,13 35:25
39:25 43:21,25
57:5 62:23 88:14
103:4 108:5
111:25 115:1
118:22 119:3
135:1 136:5
141:21 142:17
144:5 145:11
146:3,20 148:11
149:4 150:6
151:16 171:6

173:21 175:16
176:18 178:8
180:2 184:5
186:24 187:2
190:8 191:12
196:11 197:19
198:15 199:22
208:3 209:9,20
210:15 211:11
217:19 220:25
221:14 222:9
statewide 10:21
140:17
stating 122:21
statute 44:13 46:5
57:2 88:2 90:22
92:5,14 95:2
stay 203:11
steps 37:25
stick 170:24
storm 43:16
storms 44:18
45:14
strauss 5:18 15:12
street 2:19 4:4,15
5:8,19 7:4 14:2
strengthen 52:24
strengthening
53:19
strike 50:10 82:20
112:15 115:9
125:19 134:22
200:6
strong 34:20
struggling 68:1
study 10:10
130:15,18
subject 67:21
133:1
submitted 210:6
211:2

Page 35

Case: 19-30088 Doc# 5834-1 Filed: 02/19/20 Entered: 02/19/20 14:18:03 Page 94 of 101

**submitting** 177:19
**subparagraph**
47:6
**subrogation** 6:11
15:23
**substantial** 183:18
195:5 209:15
**substantially**
200:15
**successful** 198:8
**successfully**
198:11
**suffering** 44:3
**sufficient** 43:23
143:9 157:23
215:14
**suite** 2:19 3:7,16
5:9,20 7:5 14:2
17:3
**summary** 90:8
104:15 201:10
**suntrust** 3:15
**super** 55:3
**supervisor** 22:21
**supplement** 31:18
43:24
**supplemental**
38:20
**supplementary**
157:11
**support** 29:9
32:22 54:4 69:25
78:23 79:3 83:21
92:18,21 105:4
106:9 110:6
116:24 125:21
131:2 133:21
139:17 143:4,22
145:5 146:16
148:5 149:25
151:10 152:5

169:20 177:5
213:4,5 214:10
215:5
**supported** 202:13
**supporting** 58:6
72:11 75:18 82:11
191:20
**supports** 69:9
144:3 220:12
**suppose** 96:21
**sure** 25:21 37:3
38:2 40:10 48:20
63:23 86:5 90:1
100:13 103:14,16
120:24 169:18
175:25 177:1
181:24 192:1
193:24 201:7
210:23 212:6
214:7 221:24
222:25
**survivors** 27:6,18
191:21 203:11
**suspects** 48:5,22
**svora** 7:10
**swaine** 6:3 15:16
**swear** 16:1
**sworn** 16:4 225:10
**system** 123:5
124:21 125:4
132:17 134:15
135:11 136:1
138:15 141:17
148:24 160:3
183:17

**t**

**t** 157:16,25 225:2
225:2
**table** 93:22
**take** 8:18 13:15
19:15 40:2,7

57:24 60:9 74:16
96:21 104:2,19
129:10 154:1,19
207:20 212:4
221:24
**taken** 1:22 13:19
114:7,22 124:14
145:25 149:3
152:5 155:5 169:8
225:13
**talk** 41:9 98:9
**talked** 169:21,22
193:13
**talking** 120:4
**task** 202:21
**tax** 5:7
**tcc** 73:17 80:4
**tcc's** 131:12
**teleconference**
153:25
**telephone** 5:3,17
6:2,12
**tell** 120:9 187:12
**temporary** 203:20
**ten** 23:3
**term** 18:19,21
27:25 30:12 75:22
82:16 85:10,15,17
171:25 172:11
213:12,25
**terminology** 31:14
88:2
**terms** 30:9 36:23
58:18,19 70:21
141:15 197:3
204:13 213:23
**territory** 32:19
**terrorist** 221:11
**testified** 16:5
112:6 154:15
155:1 185:22

206:18 216:25
217:1 218:15
219:7,12
**testify** 18:3 24:2,8
97:13 225:11
**testimony** 37:4
40:23 42:1 46:13
47:15 48:13 51:5
52:16 53:12 54:12
55:17 57:10 59:18
62:15 63:3 64:21
65:10 66:4 73:1
96:18 97:11 98:7
102:12 108:22
109:2,23 111:2,22
113:4,8 114:15
115:6,11 116:4
118:19 119:21
132:8 135:6,21
136:10 137:5
138:11 142:1,22
144:10 145:16
146:8,25 148:16
149:9,10 150:11
151:21 163:13
171:11 174:1
175:21 176:23
178:13 180:7
184:10 186:4
187:4 188:4,15
190:10 191:17
196:16 197:24
198:20 199:11
200:12 206:22
208:8 210:20
211:9,16,24 213:2
216:9 217:24
218:8,20,23,25
219:20 221:5,19
227:12

Veritext Legal Solutions
866-299-5127

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 95
of 101

| | | | |
|---|---|---|---|
| **texas** 222:15 | **tidal** 43:17 44:19 | **topics** 24:4,7 | **turns** 185:23 |
| **thank** 15:25 16:16 | 45:14 | **tornado** 43:16 | **two** 22:6 25:4 |
| 18:12 25:22 39:16 | **time** 19:15,19 43:5 | **tornados** 44:18 | 30:24 36:17,18,23 |
| 57:17 66:11 76:14 | 45:25 48:19 56:7 | 45:13 | 37:1 99:7 158:20 |
| 92:23 96:25 | 56:17 57:25 63:22 | **tort** 3:4 9:9 14:20 | 200:16 204:17,19 |
| 116:14 120:20 | 66:19 70:25 74:18 | 88:15 | **tye** 4:18 14:25,25 |
| 191:7 206:12 | 78:8,14 79:13 | **total** 224:3 | 21:18 25:18 26:2 |
| 207:2 223:25 | 81:15,20 85:1 | **tower** 3:6 | 26:17 27:4 30:23 |
| **thanks** 154:3 | 87:6 95:4 101:25 | **town** 91:19 102:8 | 34:14,21 35:15 |
| 213:15 | 109:10 129:8 | **track** 19:6 120:21 | 36:21 37:5,12 |
| **theories** 71:14 | 137:16 159:9 | **traffic** 47:9,19 | 40:18 41:4,18 |
| 72:3,15,19 73:5 | 181:20 183:15 | **trailers** 203:22 | 42:22 43:4 46:7 |
| **therefrom** 162:1 | 190:18,20 192:2 | **trains** 111:25 | 46:25 47:10,22 |
| **thing** 42:15 220:9 | 196:18 199:8,15 | **transcript** 224:10 | 48:8,25 49:6,13 |
| **things** 37:20 | 200:8 218:16 | 225:19 227:8 | 49:22 50:2,17,25 |
| 101:20 102:5 | 219:8 221:24 | **transcription** | 51:15,25 52:11 |
| 203:3 216:11 | 225:14 | 225:17 | 53:7,23 54:7 |
| **think** 17:22 18:7 | **timely** 99:7,23 | **transitional** 203:9 | 55:12 56:4,13 |
| 19:17 27:17 28:5 | 100:22 | **transmission** | 57:5,24 59:13,25 |
| 33:21 43:3 49:14 | **times** 19:13 44:9 | 50:21 51:8,8 | 60:14,20 61:2 |
| 65:15 81:4 104:15 | 145:18 204:25 | 52:10 53:6 55:11 | 62:10,23 63:10 |
| 158:7 170:17 | **title** 22:13,15 | 118:25 | 64:2,13 65:5,21 |
| 174:8 186:17 | 61:17 | **travel** 203:22 | 66:17,25 67:20 |
| 190:13,14 192:12 | **titled** 40:2 106:21 | **tree** 94:15,17 95:6 | 68:22 69:10 70:16 |
| 206:4 218:15 | 117:15 126:9 | 95:8 107:24 | 71:3,16 72:6,17 |
| 219:7,11 220:9,16 | 130:15 140:15 | **tried** 220:3 | 73:11,23 74:8 |
| 221:7,23 222:6,22 | 177:12 | **trigger** 36:19 | 76:18 77:3,17 |
| 222:24 | **titles** 22:11 | **triggering** 37:10 | 78:13 79:14,22 |
| **thinking** 222:4 | **today** 18:3 24:3 | **triggers** 37:7 | 80:9,20 81:5,21 |
| **third** 125:11 | 69:23 78:21 | **true** 225:18 | 83:3,22 84:17 |
| 218:18 219:9,22 | 101:10 118:2 | 227:13 | 85:19,24 86:10,18 |
| **thought** 19:14 | 170:9,25 171:4 | **truth** 225:11,12,12 | 87:3,10 89:13,21 |
| 33:12 | 200:8 213:1 214:8 | **try** 45:12 50:13 | 91:20 93:3,12,24 |
| **threaten** 191:21 | 215:4 217:1 | 192:13 | 94:7,20 95:11,22 |
| 192:11 | **today's** 58:8 88:18 | **trying** 33:21 36:22 | 96:12 97:6 98:1 |
| **threatened** 191:8 | 107:8,9 118:1 | 37:3 68:4 70:23 | 99:18 100:3 101:3 |
| 192:6 | 133:18 139:22 | 169:18,23 177:1 | 101:12 102:10,22 |
| **three** 37:19 58:22 | 170:18 224:1 | 221:23 | 104:10 105:1 |
| 76:13 77:9 99:8 | **tool** 203:25 204:16 | **tsunami** 43:17 | 107:19 108:7 |
| 152:21 174:6 | **top** 172:22 | **tsunamis** 44:19 | 109:1,16 110:13 |
| 183:15 201:12 | | 45:15 | 110:21 111:17 |

Veritext Legal Solutions
866-299-5127

112:24 114:10
115:1,24 118:12
119:13 120:3
121:4,18 124:8
125:1 127:14
128:5 129:8 132:3
132:22 134:11
135:1,19 136:5
137:3,21 138:9,22
139:6 141:21
142:17 143:15
144:5 145:11
146:2,18 148:11
149:4 150:6,20
151:16 152:7,14
153:2,15 158:18
159:20 160:12
161:4,14 162:3,14
163:8 167:25
168:20 169:5
170:20 171:6,21
173:20 174:13,23
175:6,16 176:7,18
178:8 179:5 180:2
181:5,22 182:11
183:5,21 184:5,17
185:1,6,15 186:2
186:15,24 187:15
187:24 188:14
189:16 190:9
191:10 192:8,22
193:9,23 194:16
195:16,25 196:11
197:19 198:15
199:9,21 200:11
206:8,21 208:3,15
209:7,17 210:15
211:8,23 213:10
213:22 214:13
215:9,24 216:8,19
217:7,19 218:7,19

219:1,5,24 220:8
220:24 221:13
222:9 223:11
**type** 31:20,23 32:6
34:4 35:10 53:16
64:12 125:6
159:22,23 160:14
161:18 166:17
**types** 30:24 31:12
31:21 42:4 44:25
172:6 210:13
**typhoon** 32:18
33:9 54:18 55:3
**typhoons** 33:18
54:15
**typical** 42:3
196:18
**typically** 28:5 30:4
30:21 38:8,12
41:7,9,12,14 42:7
122:15 125:6
196:20,23,25

---

**u**

**u** 16:14
**u.s.** 177:22
**ucc** 80:4
**uh** 42:17 98:20
99:12 193:15
**ultimate** 198:3
**ultimately** 34:25
45:7,9 61:4 64:9
175:1 191:4
195:13,23 198:7
**unable** 143:19
**uncovered** 107:23
**underlying** 106:12
161:8,17 162:7
**understand** 17:10
17:15,17,23 18:24
19:22 23:20 36:22
37:4 58:20 68:1,4

70:24 94:5,11
102:2 104:9
169:19 182:3
187:16 191:24
196:1 214:22
**understanding**
66:14,22 76:15
82:25 85:10 89:17
122:6,14 193:18
210:8,23
**understood** 223:4
**undertaken**
112:11 186:21
196:8 199:18
**unique** 8:19 21:16
40:3 220:5,9
**united** 1:1 2:1
4:11 9:8 13:22
15:3 34:8,12
35:25 39:25 43:21
57:5 62:23 88:14
111:25 115:1
135:1 136:5
141:21 142:17
144:5 145:11
146:3,20 148:11
149:4 150:6
151:16 171:6
173:21 175:16
176:18 178:8
180:2 184:5
186:24 187:24
191:11 196:11
197:19 198:15
199:22 208:3
209:8,20 210:15
211:11 217:19
220:25 221:14
222:9
**units** 203:23

**university** 20:2,13
20:15
**unknown** 206:6
**unsafe** 98:14
136:1
**unsecured** 5:16
7:2 15:14 18:15
212:22
**updates** 163:6
**updating** 50:1
52:10 53:6 55:10
**upgrade** 54:24
**upgrading** 55:21
**upstream** 182:25
**usace** 207:16
**usc** 44:5,7 46:24
47:5 157:17 158:2
**usdoj.gov** 4:19
**use** 18:18,21 27:25
28:2,3 30:14
93:17 194:1 201:5
**uses** 88:2
**utilities** 10:18 11:2
11:6,10,14 52:20
52:21 53:18
**utility** 10:21 50:4
51:21 140:17
**utilized** 173:12
174:10,18 175:5,8
178:5 190:8
**utilizing** 150:14

---

**v**

**v** 61:8
**valley** 10:15
133:12 164:13,15
202:6,10,11 204:2
**value** 217:14
**various** 110:15
124:10 127:3
153:18

Veritext Legal Solutions
866-299-5127

**vast** 60:1 190:15
**vegetation** 100:10
100:14,20 119:5
127:3 147:4,13
152:18
**vegetative** 172:7
**vehicles** 172:9
**ventura** 159:7,8
**verification**
217:10
**verify** 154:20
155:6 217:2
**veritext** 2:18 14:5
14:8
**versions** 40:14
**versus** 29:24
31:13 204:5
**victims** 176:14
179:3,13
**victoria** 6:17
15:21 223:19
**video** 13:14,18
**videographer** 7:14
13:3 14:6 15:5,18
15:24 74:21 75:3
129:12 130:3
154:4,8 212:7,14
223:13,15,25
**videotaped** 1:16
2:16
**view** 89:11 90:5
121:2
**viewed** 49:3,10
**violation** 113:15
**violations** 93:7
101:15 108:20
110:2 113:15
134:14 135:12
137:10 145:22
147:14 148:21
150:16 152:2,17

171:3 214:19
216:12
**virginia** 222:22
**voice** 153:25
**volcanic** 43:18
44:20 45:15
**vora** 7:8 8:5 18:12
18:13 114:17
212:19,21 218:21
219:3,6,25 223:7
**vsheets** 6:18

**w**

**wait** 189:16
**walk** 38:1
**waller** 22:8
**waller's** 22:14
**want** 26:17 86:6
95:14 97:1 100:7
100:13 101:6
157:7 168:2 170:2
170:24 192:4
193:24
**wanted** 91:18
124:18
**wanting** 101:19
**warehouse** 203:2
**warrant** 43:23
157:24
**warranted** 34:24
39:5
**washed** 195:23
196:2
**washington** 4:16
7:6 20:13 21:9,12
23:4,5
**water** 43:16,17
44:18,19 45:14,14
**wave** 43:17
**waves** 44:19 45:15
**way** 30:9 38:8
94:14 177:24

181:7
**we've** 69:16 71:9
81:8 127:18
130:11 131:9
133:5 144:24
149:15 152:21
153:18 169:20,21
174:17 190:14
200:2
**weak** 34:19
**website** 156:22
178:19,20
**week** 25:5
**welchans** 4:8
14:22,23 120:15
120:20
**went** 20:12
**west** 222:22
**whispering** 13:8
**widespread** 104:4
**wild** 172:13
**wildfire** 8:17
35:14,17 40:2
42:16 48:6,23
49:5,12 50:10
52:3 56:21,25
93:8 94:16,18
95:7,9,20,21
96:10,11 99:4
104:3 143:14
161:25 182:4
194:18
**wildfirerecover...**
178:21
**wildfires** 10:4
51:23 58:5 87:1,6
92:11 93:1 111:16
122:5 125:14
126:11 132:21
134:25 137:2
138:8 141:20

142:16 145:10
148:10 150:5
151:15 153:1,14
153:21 157:21
158:16,21 159:24
160:7,14,16,24
161:22 162:6,8
165:17,18 166:12
166:18,18,22
174:11 179:25
184:4 214:12
215:8,23 220:14
**willkie** 6:13 15:21
**willkie.com** 6:18
**wind** 43:16 44:18
45:14
**winterman** 22:7
26:11,16 140:4
**winterman's**
22:13
**withholding**
169:10
**witness** 2:17 16:2
19:6 26:18,21
40:21 41:24 46:11
47:13 48:11 51:3
52:14 53:10 54:10
55:15 57:8 59:16
62:13 63:1,11,17
64:19 65:8 66:2
68:23 72:24 74:16
89:14,19 96:17
97:9 98:5 109:21
110:25 111:20
113:2,7 114:13
115:4,8 116:2
118:17 119:19
132:6 135:4 136:8
141:24 142:20
144:8 145:14
146:6,23 148:14

Case: 19-30088    Doc# 5834-1    Filed: 02/19/20    Entered: 02/19/20 14:18:03    Page 98
of 101

**[witness - yutu]**

| | y |
|---|---|
| 149:7 150:9 | |
| 151:19 163:11 | **yeah** 32:16 33:20 |
| 171:9 173:24 | 38:2 40:9 56:8 |
| 175:19 176:21 | 66:20 67:25 72:1 |
| 178:11 180:5 | 72:9 74:19 95:5 |
| 184:8 187:2 188:2 | 95:14 120:24 |
| 189:20 191:15 | 129:10 137:17 |
| 196:14 197:22 | 168:4 192:1 196:1 |
| 198:17,18 208:6 | 196:6 219:3,3,5 |
| 210:18 211:13,14 | 222:3,14 |
| 212:6 217:22 | **year** 115:17 |
| 221:3,17 223:9 | **years** 33:25 |
| 225:9,24 227:2 | 169:11 |
| **woolsey** 158:21 | **yesterday** 25:4 |
| 159:9 160:21 | **york** 6:6,15 |
| **word** 28:3 85:3,5 | **yuba** 213:14 |
| 85:8,14 103:25 | **yutu** 55:3 |
| 111:5 194:1,2 | |
| **words** 95:1 158:8 | |
| **work** 16:17,20 | |
| 20:17 136:15 | |
| 176:12 180:20 | |
| 202:8,22 208:13 | |
| 209:23,24,25 | |
| **worked** 208:11 | |
| 210:8,24 | |
| **working** 20:20 | |
| 21:7,11 208:22 | |
| **works** 23:5 26:12 | |
| 38:8 85:23 86:9 | |
| 140:4 | |
| **worksheets** | |
| 201:25 202:8 | |
| **worldwide** 6:4 | |
| **written** 25:8 79:4 | |
| 79:18,23 | |

| x |
|---|
| **x** 8:1 |

Veritext Legal Solutions
866-299-5127

# Federal Rules of Civil Procedure

## Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

# VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.