**EXHIBIT 4**

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
JOSEPH H. HUNT
Assistant Attorney General
RUTH A. HARVEY
Director
KIRK MANHARDT
Deputy Director
MATTHEW J. TROY
MICHAEL QUINN
Senior Trial Counsel
MICHAEL TYE
Trial Attorney
P.O. Box 875
Ben Franklin Station
Washington, DC 20044-0875
Telephone: (202) 305-2419
E-mail: Michael.Tye@usdoj.gov

DAVID L. ANDERSON
United States Attorney

Attorneys for the United States of America

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| **Debtors.** | (Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors | **UNITED STATES' RESPONSE TO OFFICIAL COMMITTEE OF TORT CLAIMANTS' FIRST SET OF INTERROGATORIES** |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

## Overall Objection to Unauthorized Discovery

The Official Committee of Tort Claimants ("TCC") premises these Interrogatories on a supposed commencement of a contested matter by filing an Objection to the Federal Emergency Management Agency's Proofs of Claims in the above-entitled matter, but this discovery request is invalid and of no effect because the TCC failed to effect service of its Objection upon the United States. Consequently, the Court has no jurisdiction over any contested matter involving the United States, and no basis exists for TCC to conduct discovery.

Rule 3007 of the Federal Rules of Bankruptcy Procedure requires that any "the objection . . . to a claim of the United States, or any of its officers or agencies," "shall" be served "in the manner provided for services of a summons and complaint by Rule 7004(b)(5) or (b)(5)." Fed. R. Bankr. Proc. 3007(a)(2)(A)(i). Rule 7004(b)(4), in turn, provides that service is effected on the United States by mailing a copy to "the Civil Process Clerk at the office of the United States attorney for the district in which the action is brought and by mailing a copy . . . to the Attorney General of the United States." *Id.* Service on an agency is effected by mailing a copy as "prescribed in paragraph 4 [quoted supra] and also to the officer or agency." Fed. R. Bankr. P. 7004(b)(5). Thus, to properly join the United States (including FEMA) in a contested matter, it is mandatory for the TCC to serve the U.S. Attorney for the Northern District of California and the Attorney General. The TCC failed to do so.

Rather, the TCC merely electronically served its Omnibus Objection of the Official Committee Of Tort Claimants (Substantive) To No Liability Claims To The Department of Homeland Security/Federal Emergency Management Agency ("TCC Claim Objection") to a single lawyer for the Department of Justice on behalf of the Federal Energy Regulatory Commission. *See* Cert. of Service at 5 (Doc. 5021 in Case No. 19-30088). That does not satisfy the service requirements set forth in Rules 3007 and 7004. The failure of service divests the Court of jurisdiction over the claim objection. *See, e.g., In re Levoy*, 183 B.R. 827 (B.A.P. 9th Cir. 1995). Without a properly served claim objection, no contested matter exists, and thus no basis exists to authorize the discovery that has been propounded. *See* Fed. R. Bankr. P. 9014 (permitting formal discovery in contested matters). Nor has the TCC received authorization from the Court to conduct discovery under any other rule of the Federal Rules of Bankruptcy Procedure. Accordingly, the United States objects to these Interrogatories in their entirety.

Subject to and without waiving this objection, in the interest of comity among the parties and mutual interest in advancing the case, the United States volunteers the following as responses to informal discovery requests of the TCC.

**GENERAL OBJECTIONS TO INTERROGATORIES**

1. By responding to these Interrogatories, the United States does not waive its right to object to the use of the responses on any ground in this or any other proceeding. The answers provided below are based on the information known to the Federal Emergency Management Agency ("FEMA") as of the date of this Response, and the United States reserves the right to amend any answer as necessary if additional information comes to light.

2. The United States objects to the Interrogatories to the extent they seek conclusions of law rather than a statement of fact.

3. The United States objects to the Interrogatories to the extent they seek, or can be construed as seeking, information protected by the attorney-client privilege, work product privilege, deliberative process privilege, a right to privacy under applicable law, any joint defense, common interest or party communications privilege, investigative privilege, or any other applicable privilege, doctrine or right that would make the information immune from discovery. Any inadvertent production of information protected by any of these privileges, doctrines, or rights shall not be deemed a waiver of the protections that those privileges, doctrines, or rights afford.

4. The United States objects to the Interrogatories to the extent they seek to impose obligations beyond those stated in the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, or the Local Rules for the District or Bankruptcy Courts for the Northern District of California.

5. The United States objects to the Interrogatories to the extent they seek information that is irrelevant, disproportionate to the needs of the case, or where the burden or expense of the propounded discovery outweighs the likely benefit. *See* Fed. R. Civ. P. 26.

6. The United States objects to the Interrogatories to the extent that they seek confidential business information belonging to contractors, third parties, or the regulated community or information that, if publicly released, could compromise federal regulatory or enforcement activities. Any

3

inadvertent production of such confidential, proprietary commercial, trade secret, or sovereign information is not intended as a waiver of the protection of any privilege or restriction upon dissemination.

7. The United States objects to the Interrogatories as overly broad, oppressive, and unduly burdensome to the extent that they would require the FEMA to compile, summarize, index, research, or otherwise analyze voluminous historical information.

8. The United States objects to the Interrogatories as oppressive and unduly burdensome to the extent that they seek to impose an obligation to respond without reasonable limitations as to date or age.

9. The United States objects to these Interrogatories to the extent they seek information that is publicly available, or that may be obtained from another source that is more convenient, less burdensome, or less expensive, or that is solely in the possession, custody, or control of third-parties.

## INTERROGATORIES

**1. Identify all evidence that FEMA had identified as of the Filing Date that indicates the Debtor intentionally caused the Butte Fire.**

RESPONSE: The United States objects to the undefined term "intentionally caused" as vague and ambiguous. To the extent that the TCC is using the term "intentionally caused" as the term "intentionally causes" is used in Section 317 of the Stafford Act, 42 U.S.C. § 5160(a), the United States further notes that the issue of the elements of a claim under Section 317 of the Stafford Act is currently being addressed in the context of the Omnibus Objection of the Official Committee Of Tort Claimants (Substantive) To No Liability Claims To The Department of Homeland Security/Federal Emergency Management Agency ("TCC Claim Objection"). The United States will file its response to the TCC Claim Objection at the appropriate time. Subject to and without waiving the foregoing specific objections and General Objections, the United States avers as follows.

The evidence that United States relies upon is set forth in the Proof of Claim filed in this Court. The United States further relies upon and incorporates by reference all publicly available reports and information from the California Department of Forestry and Fire Protection ("Cal FIRE") and California

4

Public Utilities Commission ("CPUC") concerning the Butte Fire, Camp Fire, 2017 Northern California Wildfires, or any other wildfire at issue in FEMA's Proof of Claims.

The United States also notes that the destruction caused by the Butte Fire affected thousands of people and left hundreds of thousands of tons of debris in its wake. According to the Cal FIRE, the Butte Fire destroyed 965 structures, burned a total of 70,868 acres, and resulted in deaths and injuries. Cal FIRE investigators determined that electrical transmission lines owned and operated by Pacific Gas and Electric Company (PG&E) caused the Butte Fire. *See* Cal FIRE News Release, CAL FIRE Investigators Determine Cause of Destructive Butte Fire (April 28, 2016). Cal FIRE forwarded their investigative report to the County District Attorney for potential prosecution. *Id.* The Butte Fire is one of several major fires that Cal FIRE has linked to PG&E equipment in the last four years. FEMA maintains that these wildfires were a result of safety issues and intentional omissions or violations of law by PG&E.

In the years prior to Cal FIRE's findings in these wildfires, the CPUC documented continuous safety errors and omissions by PG&E. On May 6, 2013, the CPUC Safety Enforcement Division received a report of the capital, operations, and maintenance expenditures proposed by PG&E, and found that PG&E's distribution system had "significant safety issues."[1] Additionally, the report detailed that PG&E failed to effectively cure critical safety problems and manage risk appropriately. *Id.* at S-6 and S-10 (The report found that although "PG&E made substantial progress in developing . . . risk assessment processes," "actual follow through at the lines of business has lagged." Additionally the report details the omissions of critical safety functions in several areas, including that, "[t]here remain corporate cultural barriers that slow the process. . . [PG&E] will need to fully embrace to structure risk management as an integrated part of planning and budgeting," and that "PG&E needs to recognize that the effective implementation of the program requires an inducement of culture change in how the company assesses and uses risk considerations and a sense of greater urgency in moving toward its expected steady state." In 2014, an audit of PG&E's North Valley Division revealed significant safety

---

[1] *Study of Risk Assessment and PG&E's GRC*, May 6, 2013, *available at* http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M065/K394/65394210.PDF.

5

violations, including 3,400 repairs completed past the required date between 2009 and 2014.[2] Then, in 2017, the CPUC's draft "Order Instituting Investigation into the Creation of a Shared Database or Statewide Census of Utility Poles and Conduit" found that the poorly maintained poles and attachments used by PG&E caused substantial property damage and repeated loss of life in California.[3] FEMA contends that the Cal FIRE findings, along with the findings by the CPUC, show that PG&E was on notice of these safety issues and continually failed to address them.

These identified safety issues should have commanded PG&E's attention. Curing them would have required the company to allocate appropriate expenditures, but PG&E failed to allocate its resources to complete these necessary, and life threatening issues. Instead, PG&E prioritized "large contributions to political candidates" over "replacing or repairing the aging transmission lines . . . and removing or trimming the backlog of hazard trees, and increasing vegetation management." *United States v. Pacific Gas and Electric Co.,* Case No. CR 14-00175, "Request for Offender PG&E to Supply Information" (July 10, 2019). In addition, in repeated instances over 25 years PG&E actively misled regulators, withheld data, and hindered investigations, accumulating fines and judgments of $2.5 billion. *PG&E's Long Record of Run-Ins With Regulators: A 'Cat and Mouse Game',* The Wall Street Journal (September 5, 2019).

Section 317 of the Stafford Act states, "[a]ny person who intentionally causes a condition for which Federal assistance is provided under this Act or under any other Federal law as a result of a declaration of a major disaster or emergency under this Act shall be liable to the United States for the reasonable costs incurred by the United States in responding to such disaster or emergency to the extent that such costs are attributable to the intentional act *or omission* of such person which caused such condition. Such action for reasonable costs shall be brought in an appropriate United States district court." 42 U.S.C. 5160(a) (emphasis added).

As used in the statute, "intentionally" does not require a specific intent to cause harm. A party is considered to have "intentionally cause[d]" a condition under Section 317 of the Stafford Act in so far as the condition giving rise to FEMA's costs is attributable to an "intentional act or omission." The phrase

---
[2] http://www.cpuc.ca.gov/UploadedFiles/CPUC_Public_Website/Content/Safety/EA2014-023.pdf.
[3] *Available* at http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M190/K872/190872933.pdf.

"intentional act or omission" FEMA considers the term "intentional" to modify both the term "acts," and the term "omissions." FEMA bases its claim on the contention that PG&E's "intentional acts" and/or "omissions" created the condition for the extensive wildfire damage that ensued.

As related in the facts above, PG&E omitted to 1) conduct critically necessary repairs, 2) timely respond to safety issues, 3) manage risk effectively and 4) adequately maintain poles and attachments. Moreover, PG&E's actions and omissions were intentional under Section 317 of the Stafford Act, because PG&E actively and blatantly disregarded that such an omission was reasonably likely to cause a condition for which FEMA assistance would be required. Specifically PG&E knew that failure take action could cause or spread a wildfire causing serious and widespread injury, and still PG&E omitted to act. Instead, PG&E chose to allocate huge sums of money to other causes, taking resources away from acting on these omissions rather than fulfilling their duties. That PG&E's omission was intentional is further demonstrated through the affirmative acts it took to aid its omission – misleading regulators, withholding critical data, and hindering investigations in the years leading up to the Butte Fire.

**2.    Identify all evidence that FEMA had identified as of the Filing Date that indicates the Debtor intentionally caused the Camp Fire.**

RESPONSE: The United States objects to the undefined term "intentionally caused" as vague and ambiguous. To the extent that the TCC is using the term "intentionally caused" as the term "intentionally causes" is used in Section 317 of the Stafford Act, 42 U.S.C. § 5160(a), the United States further notes that the issue of the elements of a claim under Section 317 of the Stafford Act is currently being addressed in the context of the TCC Claim Objection. The United States will file its response at the appropriate time. Subject to and without waiving the foregoing specific objections and General Objections, the United States incorporates by reference its response to Interrogatory Number 1, and further avers:

The evidence that United States relies upon is set forth in the Proof of Claim filed in this Court. The United States further relies upon and incorporates by reference all publicly available reports and information from Cal FIRE and CPUC concerning the Butte Fire, Camp Fire, 2017 Northern California Wildfires, or any other wildfire at issue in FEMA's Proof of Claims.

7

The United States further notes that on November 8, 2018, the Camp Fire started in Butte County. That same day, the Governor of California requested a federal emergency declaration under section 501 of the Stafford Act, 42 U.S.C. §§ 5121 *et seq*. On November 9, 2018, the President issued an emergency declaration under the Stafford Act (FEMA-3409-EM-CA) for the State of California for three wildfires in the state, including the Camp Fire. On November 11, 2018, the Governor requested a major disaster declaration under section 401 of the Stafford Act for this wildfire event. The President issued a major disaster declaration under the Stafford Act on November 12, 2018 (FEMA-4407-DR-CA). The destruction caused by the Camp Fire was unprecedented and left millions of tons of debris in its wake. According to Cal FIRE, the Camp Fire alone destroyed more than 18,000 structures, burned a total of 153,336 acres, and resulted in 85 civilian fatalities and several firefighter injuries. Cal FIRE News Release, *CAL FIRE Investigators Determine Cause of the Camp Fire* (May 15, 2019).

Cal FIRE investigators determined that electrical transmission lines, owned and operated by PG&E, located in the Pulga area caused the Camp Fire. *Id.* The investigation also identified a second fire ignition site, which was also caused by electrical distribution lines owned and operated by PG&E. This second fire was consumed by the first. *Id.* The second ignition site was determined to be caused by vegetation contact with electrical distribution lines owned by PG&E. *Id.* The Camp Fire burned a total of 153,336 acres, destroying 18,804 structures and resulting in 85 civilian fatalities and several firefighter injuries. *Id.* Cal FIRE forwarded this investigative report to the Butte County District Attorney. *Id.*

The Camp Fire is one of several major fires that Cal FIRE has linked to PG&E equipment in the last four years. FEMA maintains that these wildfires were a result of safety issues and omissions or violations of law by PG&E.

As related in the facts above, PG&E omitted to 1) conduct critically necessary repairs, 2) timely respond to safety issues, 3) manage risk effectively and 4) adequately maintain poles and attachments. Moreover, PG&E's actions and omissions were intentional under Section 317 of the Stafford Act, because PG&E actively and blatantly disregarded that such an omission was reasonably likely to cause a condition for which FEMA assistance would be required. Specifically PG&E knew that failure take action could cause or spread a wildfire causing serious and widespread injury, and still PG&E omitted to

8

act. Instead, PG&E chose to allocate huge sums of money to other causes, taking resources away from acting on these omissions rather than fulfilling their duties. That PG&E's omission was intentional is further demonstrated through the affirmative acts it took to aid its omission – misleading regulators, withholding critical data, and hindering investigations in the years leading up to the Camp Fire.

**3.     Identify all evidence that FEMA had identified as of the Filing Date that indicates the Debtor intentionally caused the 2017 Northern California Wildfires.**

RESPONSE: The United States objects to the undefined term "intentionally caused" as vague and ambiguous. To the extent that the TCC is using the term "intentionally caused" as the term "intentionally causes" is used in Section 317 of the Stafford Act, 42 U.S.C. § 5160(a), the United States further notes that the issue of the elements of a claim under Section 317 of the Stafford Act is currently being addressed in the context of the TCC Claim Objection. The United States will file its response at the appropriate time.

Subject to and without waiving the foregoing specific objections and General Objections, the United States incorporates by reference its responses to Interrogatories Number 1 and 2, and further avers:

The evidence that United States relies upon is set forth in the Proof of Claim filed in this Court. The United States further relies upon and incorporates by reference all publicly available reports and information from Cal FIRE and CPUC concerning the Butte Fire, Camp Fire, 2017 Northern California Wildfires, or any other wildfire at issue in FEMA's Proof of Claims.

On October 8-10, 2017, over a dozen wildfires that became known as the "2017 Northern California Wildfires" started in Butte, Lake, Mendocino, Napa, Nevada, Solano, Sonoma, and Yuba Counties, California. On October 9, 2017, the Governor of California requested a federal major disaster declaration under section 401 of the Stafford Act asserting to the President that the State of California was overwhelmed and in need of supplementary federal assistance for debris removal, emergency protective measures, repair and replacement of public infrastructure, and assistance to individuals impacted by the fires. The President on October 10, 2017 determined the 2017 Northern California Wildfires were beyond state and local capability and issued a major disaster declaration, (FEMA-4344-DR-CA), authorizing FEMA to provide Public Assistance for Butte, Lake, Mendocino, Napa, Nevada,

9

Sonoma, and Yuba Counties. On October 12, 2017, the major disaster declaration was amended to authorize Individual Assistance for Sonoma County. From October 13-15, 2017, the major disaster declaration was amended three more times to authorize Public Assistance for Solano County and Individual Assistance for Butte, Lake, Mendocino, Napa, Nevada, and Yuba Counties. On November 28, 2017, the major disaster declaration was further amended to authorize additional categories of Public Assistance for Butte, Lake, Mendocino, Napa, Sonoma, and Yuba Counties.

All wildfires that occurred in the declared counties during the incident period of October 8- 31, 2017 are included in the major disaster declaration FEMA-4344-DR-CA. These wildfires include, but are not limited to: 37 Fire; Adobe Fire; Atlas Fire; Cascade Fire; Cherokee Fire; Honey Fire; La Porte Fire; Lobo Fire; McCourtney Fire; Norrbom Fire; Nuns Fire; Partrick Fire; Pocket Fire; Potter Valley Fire; Pythian Fire; Redwood Fire; Sulphur Fire; and Tubbs Fire (referred to collectively as the "2017 Northern California Wildfires").

Cal FIRE investigators linked electrical transmission lines owned and operated by PG&E to the 37 Fire, Adobe Fire, Atlas Fire, Cherokee Fire, Norrbom Fire, Nuns Fire, Partrick Fire, Pocket Fire, Potter Valley Fire, Pythian Fire, Sulphur Fire, and Redwood Fire. Cal FIRE News Release, *CAL FIRE Investigators Determine Causes of 12 Wildfires in Mendocino, Humboldt, Butte, Sonoma, Lake, and Napa Counties* (June 8, 2018). Cal FIRE forwarded their investigative report to the County District Attorneys for potential prosecution for eight of these fires. *Id.* Cal FIRE investigators also linked electrical transmission lines owned and operated by PG&E to the Honey Fire, La Porte Fire, Lobo Fire, and McCourtney Fire. Cal FIRE News Release, *CAL FIRE Investigators Determine Cause of Four Wildfires in Butte and Nevada Counties* (May 25, 2018). Cal FIRE forwarded their investigative report to the County District Attorneys for potential prosecution for three of these fires. *Id.* Cal FIRE investigators also linked electrical transmission lines owned and operated by the Debtor to the Cascade Fire. Cal FIRE News Release, *CAL FIRE Investigators Determine Cause of the Cascade Fire* (October 8, 2018). FEMA maintains that the above enumerated wildfires were a result of safety issues and intentional acts and/or omissions or violations of law by PG&E.

The destruction caused by the 2017 Northern California Wildfires was unprecedented at the time. It affected tens of thousands of people, and left millions of tons of debris in its wake. According to the

10

California Department of Forestry and Fire Protection (Cal FIRE), the 2017 Northern California Wildfires destroyed 8,585 structures, burned a total of 175,337 acres, and resulted in 42 civilian fatalities and several firefighter injuries. Cal FIRE News Release, *CAL FIRE Investigators Determine Causes of 12 Wildfires in Mendocino, Humboldt, Butte, Sonoma, Lake, and Napa Counties* (June 8, 2018).

As related in the facts above, PG&E omitted to 1) conduct critically necessary repairs, 2) timely respond to safety issues, 3) manage risk effectively and 4) adequately maintain poles and attachments. Moreover, PG&E's actions and omissions were intentional under Section 317 of the Stafford Act, because PG&E actively and blatantly disregarded that such an omission was reasonably likely to cause a condition for which FEMA assistance would be required. Specifically PG&E knew that failure take action could cause or spread a wildfire causing serious and widespread injury, and still PG&E omitted to act. Instead, PG&E chose to allocate huge sums of money to other causes, taking resources away from acting on these omissions rather than fulfilling their duties. That PG&E's omission was intentional is further demonstrated through the affirmative acts it took to aid its omission – misleading regulators, withholding critical data, and hindering investigations in the years leading up to the 2017 Northern California Wildfires.

**4.     Identify the condition that resulted in the Butte Fire Declaration.**

RESPONSE: The United States objects to the undefined term "the condition" as vague and ambiguous. Subject to and without waiving the foregoing specific and General Objections, the United States incorporates by reference its responses to the previous Interrogatories, and further avers that to the extent the TCC is asking what events led to the Butte Fire Declaration, the United States responds that PG&E created the condition leading to the Butte Fire and the Butte Fire Declaration

**5.     Identify the condition that resulted in the Camp Fire Declaration.**

RESPONSE: The United States objects to the undefined term "the condition" as vague and ambiguous. Subject to and without waiving the foregoing specific and General Objections, the United States incorporates by reference its responses to the previous Interrogatories, and further avers that to the extent the TCC is asking what events led to the Camp Fire Declaration, the United States responds that PG&E created the condition leading to the Camp Fire and the Camp Fire Declaration

11

6. **Identify the condition that resulted in the North Bay Fires Declaration.**

RESPONSE: The United States objects to the undefined term "the condition" as vague and ambiguous. Subject to and without waiving the foregoing specific and General Objections, the United States incorporates by reference its responses to the previous Interrogatories, and further avers that to the extent the TCC is asking what events led to the North Bay Fire Declaration, the United States responds that PG&E created the condition leading to the North Bay Fires and the North Bay Fires Declarations.

7. **Identify all amounts included in FEMA claims that constitute commitments made by FEMA to advance funds after the Filing Date.**

RESPONSE: The United States objects to the undefined term "constitute commitments" as vague and ambiguous. The United States further objects because the information sought is not at all relevant to any claim or defense in the case and disproportionate to the needs of the case. To identify "all amounts" would require the United States to compile, summarize, index, research or otherwise analyze voluminous information regarding all payments for a particular claim. The United States does not organize its records or files of federal spending in this manner. The burden of responding to this Interrogatory would thus greatly outweigh the minimal relevance of the information sought to the claims and defenses at issue in this case.

Subject to and without waiving the foregoing specific objections and General Objections, the United States directs the TCC to the Proof of Claims that FEMA filed in this Court as well as supplementary materials that provide further support for these claims that FEMA is voluntarily producing to the TCC.

8. **Identify the persons employed by FEMA who have the most knowledge regarding the factual basis for the Butte Fire Claim.**

RESPONSE: The United States objects to the Interrogatory because it is so broad as to time and scope as to be oppressive. The destruction caused by the Butte Fire affected thousands of people and left hundreds of thousands of tons of debris in its wake. According to the Cal Fire, the Butte Fire destroyed 965 structures, burned a total of 70,868 acres, and resulted in deaths and injuries. FEMA has incurred significant costs to provide assistance to individuals, state and local governments and private non-profits for their expenses and losses resulting from the Butte Fire. To individuals FEMA has

provided financial grants for housing repair, rental and other unmet, disaster-caused needs, and manufactured housing units for temporary housing. To the state and local governments FEMA has provided direct federal assistance which includes goods and services for debris removal activities and emergency medical response and financial grants for debris removal, firefighting and the repair and replacement of public infrastructure damaged by the fire. To certain non-profits FEMA has provided financial grants for the repair and replacement of facilities damaged by the fire. In addition, FEMA incurred significant expenses in coordinating, distributing, and overseeing this assistance. As a result, numerous individuals and a huge number of hours worked are involved in FEMA's claims and no one individual or identifiable group of individuals who can speak to all aspects of the "factual basis for the Butte Fire Claim." The burden of responding to this Interrogatory would thus greatly outweigh, and be disproportionate to, the minimal relevance of the information sought to the claims and defenses at issue in this case.

Subject to and without waiving the foregoing specific objections and General Objections, John Paul Henderson, Regional Counsel, FEMA Region IX, is the person employed by FEMA with the most knowledge regarding the factual basis for costs and expenses relating to the Butte Fire Claim.

**9.     Identify the persons employed by FEMA who have the most knowledge regarding the factual basis for the Camp Fire Claim.**

RESPONSE: The United States objects to the Interrogatory because it is so broad as to time and scope as to be oppressive. The destruction caused by the Camp Fire affected thousands of people and left hundreds of thousands of tons of debris in its wake. The Camp Fire burned a total of 153,336 acres, destroying 18,804 structures and resulting in 85 civilian fatalities and several firefighter injuries. FEMA has incurred significant costs to provide assistance to individuals, state and local governments and private non-profits for their expenses and losses resulting from the Camp Fire. To individuals FEMA has provided financial grants for housing repair, rental and other unmet, disaster-caused needs, and manufactured housing units for temporary housing. To the state and local governments FEMA has provided direct federal assistance which includes goods and services for debris removal activities and emergency medical response and financial grants for debris removal, firefighting and the repair and replacement of public infrastructure damaged by the fire. To certain non-profits FEMA has provided

financial grants for the repair and replacement of facilities damaged by the fire. In addition, FEMA incurred significant expenses in coordinating, distributing, and overseeing this assistance. As a result, numerous individuals and a huge number of hours worked are involved in FEMA's claims and no one individual or identifiable group of individuals who can speak to all aspects of the "factual basis for the Camp Fire Claim." The burden of responding to this Interrogatory would thus greatly outweigh, and be disproportionate to, the minimal relevance of the information sought to the claims and defenses at issue in this case.

Subject to and without waiving the foregoing specific objections and General Objections, John Paul Henderson, Regional Counsel, FEMA Region IX, is the person employed by FEMA with the most knowledge regarding the factual basis for the costs and expenses relating to the Camp Fire Claim.

**10. Identify the persons employed by FEMA who have the most knowledge regarding the factual basis for the North Bay Fires Claim.**

RESPONSE: The United States objects to the Interrogatory because it is so broad as to time and scope as to be oppressive. The destruction caused by the North Bay Fires affected thousands of people and left hundreds of thousands of tons of debris in its wake. According to Cal FIRE, the 2017 Northern California Wildfires destroyed 8,585 structures, burned a total of 175,337 acres, and resulted in 42 civilian fatalities and several firefighter injuries. Cal FIRE News Release, CAL FIRE Investigators Determine Causes of 12 Wildfires in Mendocino, Humboldt, Butte, Sonoma, Lake, and Napa Counties (June 8, 2018). FEMA has incurred significant costs to provide assistance to individuals, state and local governments. FEMA has incurred significant costs to provide assistance to individuals, state and local governments and private non-profits for their expenses and losses resulting from the North Bay Fires. To individuals FEMA has provided financial grants for housing repair, rental and other unmet, disaster-caused needs, and manufactured housing units for temporary housing. To the state and local governments FEMA has provided direct federal assistance which includes goods and services for debris removal activities and emergency medical response and financial grants for debris removal, firefighting and the repair and replacement of public infrastructure damaged by the fire. To certain non-profits FEMA has provided financial grants for the repair and replacement of facilities damaged by the fire. In addition, FEMA incurred significant expenses in coordinating, distributing, and overseeing this

14

assistance. As a result, numerous individuals and a huge number of hours worked are involved in FEMA's claims and no one individual or identifiable group of individuals who can speak to all aspects of the "factual basis for the North Bay Fires Claim." The burden of responding to this Interrogatory would thus greatly outweigh, and be disproportionate to, the minimal relevance of the information sought to the claims and defenses at issue in this case.

Subject to and without waiving the foregoing specific objections and General Objections, John Paul Henderson, Regional Counsel, FEMA Region IX, is the person employed by FEMA with the most knowledge regarding the factual basis for the costs and expenses relating to the North Bay Fires Claims.

**11. Identify each Government Agency that FEMA may seek to hold liable under 42 U.S.C. § 5155(c) for costs incurred by FEMA in connection with the Wildfires and the maximum amount of such liability.**

RESPONSE: The United States objects to this Interrogatory because the information sought is not at all relevant to FEMA's claims against PG&E or any valid defense and is disproportionate to the needs of the case. The issue before the Court are FEMA's claims *against the Debtors*. Whether FEMA has additional claims for recovery for duplication of benefits pursuant to 42 U.S.C. § 5155 are not relevant to FEMA's claims against Debtors or any valid defense. Even if such fact could somehow be considered relevant at all, the costs to ascertain an answer is disproportionate to the dubious value of the information sought.

Subject to and without waiving the foregoing specific objections and General Objections, the United States directs the TCC to the Proof of Claims that FEMA filed in this Court, which list the Public Entities and Government Agencies to which FEMA provided benefits, as well as supplementary materials the United States is providing in further support of these claims in response to the TCC's Requests for Production.

**12. For each Government Agency that FEMA may seek to hold liable under 42 U.S.C. § 5155(c) for costs incurred by FEMA in connection with the Wildfires, identify the basis for liability and the nature of the assistance provided by FEMA to such Government Agency.**

RESPONSE: The United States objects to this Interrogatory because the information sought

15

is not at all relevant to FEMA's claims against PG&E or any valid defense and is disproportionate to the needs of the case. The issue before the Court are FEMA's claims *against the Debtors*. Whether FEMA has additional claims for recovery for duplication of benefits pursuant to 42 U.S.C. § 5155 are not relevant to FEMA's claims against Debtors or any valid defense. Even if such fact could somehow be considered relevant at all, the costs to ascertain an answer is disproportionate to the dubious value of the information sought.

Subject to and without waiving the foregoing specific objections and General Objections, the United States directs the TCC to the Proof of Claims that FEMA filed in this Court, which list the Public Entities and Government Agencies to which FEMA provided benefits and provide information on the type of benefits provided, as well as supplementary materials the United States is voluntarily providing in further support of these claims.

With respect to the basis for liability, one potential basis would be a claim under 24 U.S.C. § 5155 for reimbursement of duplicative benefits. But it is not possible to enumerate all possible bases for liability for future claims that have not yet been asserted. Such a determination would depend on the specific facts of an individual case and claim.

**13.     Identify each Public Entities that FEMA may seek to hold liable under 42 U.S.C. § 5155(c) for costs incurred by FEMA in connection with the Wildfires and the maximum amount of such liability.**

RESPONSE: The United States objects to this Interrogatory because the information sought is not at all relevant to FEMA's claims against PG&E or any valid defense and is disproportionate to the needs of the case. The issue before the Court are FEMA's claims *against the Debtors*. Whether FEMA has additional claims for recovery for duplication of benefits pursuant to 42 U.S.C. § 5155 are not relevant to FEMA's claims against Debtors or any valid defense. Even if such fact could somehow be considered relevant at all, the costs to ascertain an answer is disproportionate to the dubious value of the information sought.

Subject to and without waiving the foregoing specific objections and General Objections, the United States directs the TCC to the Proof of Claims that FEMA filed in this Court, which list the Public Entities and Government Agencies to which FEMA provided benefits, as well as supplementary

16

materials the United States is providing in further support of these claims in response to the TCC's Requests for Production.

**14. For each Public Entity that FEMA may seek to hold liable under 42 U.S.C. § 5155(c) for costs incurred by FEMA in connection with the Wildfires, identify the basis for liability and the nature of the assistance provided by FEMA to such Public Entity.**

RESPONSE: The United States objects to this Interrogatory because the information sought is not at all relevant to FEMA's claims against PG&E or any valid defense and is disproportionate to the needs of the case. The issue before the Court are FEMA's claims *against the Debtors*. Whether FEMA has additional claims for recovery for duplication of benefits pursuant to 42 U.S.C. § 5155 are not relevant to FEMA's claims against Debtors or any valid defense. Even if such fact could somehow be considered relevant at all, the costs to ascertain an answer is disproportionate to the dubious value of the information sought.

Subject to and without waiving the foregoing specific objections and General Objections, the United States directs the TCC to the Proof of Claims that FEMA filed in this Court, which list the Public Entities and Government Agencies to which FEMA provided benefits and provide information on the type of benefits provided, as well as supplementary materials the United States is providing in further support of these claims in response to the TCC's Requests for Production.

With respect to the basis for liability, one potential basis would be a claim under 42 U.S.C. § 5155 for reimbursement of duplicative benefits. But it is not possible to enumerate all possible bases for liability for future claims that have not yet been asserted. Such a determination would depend on the specific facts of an individual case and claim.

**15. Identify all sources of recovery available to FEMA to recover costs incurred by FEMA in connection with Wildfires other than FEMA's claims against the Debtor.**

RESPONSE: The United States objects to this Interrogatory because the information sought is not at all relevant to FEMA's claims against PG&E or any valid defense and is disproportionate to the needs of the case. The issue before the Court are FEMA's claims *against the Debtors*. Whether FEMA has additional claims for recovery for duplication of benefits pursuant to 42 U.S.C. § 5155 are not relevant to FEMA's claims against Debtors or any valid defense. Even if such fact could somehow be

17

considered relevant at all, the costs to ascertain an answer is disproportionate to the dubious value of the information sought.

    Subject to and without waiving the foregoing specific objections and General Objections, FEMA notes one potential basis would be a claim under 42 U.S.C. § 5155 for reimbursement of duplicative benefits. But it is not possible to enumerate all possible bases for liability for future claims that have not yet been asserted. Such a determination would depend on the specific facts of an individual case and claim.

DATE: January 21, 2020

    JOSEPH H. HUNT
    Assistant Attorney General
    DAVID L. ANDERSON (CABN 149604)
    United States Attorney
    /s/ Michael Tye
    RUTH A. HARVEY
    Director
    KIRK MANHARDT
    Deputy Director
    MATTHEW J. TROY
    MICHAEL QUINN
    Senior Trial Counsel
    MICHAEL TYE
    Trial Attorney

    Attorneys for United States

# VERIFICATION

I am the Regional Administrator for Region IX of the Federal Emergency Management Agency, and my office has responsibility for the matters set forth in the Official Committee of Tort Claimants Objections to FEMA's Proofs of Claims in the above-captioned matter. I have reviewed the contents of the foregoing responses. The information provided in the responses is based on FEMA's records and/or has been supplied by attorneys for FEMA or other FEMA personnel and/or compiled from available documents and is provided as required by law. To the best of my knowledge and belief, I believe that the facts stated in these responses are true. I make this verification pursuant to 28 U.S.C. § 1746.

Executed on January 21, 2020

_____
Robert Fenton
Regional Administrator for Region IX
Federal Emergency Management Agency