**EXHIBIT 5**

NewsRoom

1/12/20 S.F. Chron. (Pg. Unavail. Online)
2020 WLNR 1062555

San Francisco Chronicle (CA)
Copyright © 2020 San Francisco Chronicle

January 12, 2020

FEMA says it may bill fire victims if it can't get $4 billion from PG&E

J.D. Morris; San Francisco Chronicle

Jan. 12-- Jan. 12--Federal officials say Pacific Gas and Electric Co. owes the government nearly $4 billion, and if they can't get the payment request resolved as part of the utility's bankruptcy case, they may later have to ask wildfire victims for a portion of the money instead.

The Federal Emergency Management Agency wants reimbursement from PG&E to cover costs from the government's response to fires in 2015, 2017 and 2018. Under PG&E's current plan to resolve its bankruptcy, any payment to FEMA would have to come from the $13.5 billion the company intends to reserve primarily to settle claims from fire victims.

Victims' lawyers are battling FEMA's claim, which would consume nearly 30% of the settlement. But FEMA told The Chronicle that it is compelled to seek compensation from PG&E. Otherwise, individual victims would be on the hook if they get settlement money that duplicates funds already paid by the federal government, according to Bob Fenton, the agency's regional administrator.

Fenton said FEMA has "no interest" in reducing the amount of settlement funds available for fire victims.

"What we are interested in doing is holding PG&E responsible and accountable for the billions of dollars taxpayers provided to assist individuals and communities affected by the wildfires," he said. "The last thing I want to do is have to go after these individuals that have received claims from the bankruptcy where certain parts of that claim may duplicate funding that we've already given them. ... It's much easier up front to go ahead and simply deal with PG&E directly."

The FEMA dispute is one of several major unresolved issues in the PG&E bankruptcy, which began one year ago this month. PG&E has already won court approval of its deal with victims' attorneys and a separate $11 billion settlement to resolve claims from insurance companies. But the company must clear a series of other hurdles as it works to get the rest of the case, including a broader bankruptcy exit plan, wrapped up in the next six months.

FEMA has asserted about $3.9 billion in bankruptcy claims against PG&E because of the 2015 Butte Fire, the 2017 wildfires in Wine Country and the 2018 Camp Fire. Court papers show that only about $282 million of the total relates to individual assistance FEMA gave to victims of the disasters -- the rest is for aid provided to other government agencies and administrative costs.

The maximum amount of funding FEMA could possibly seek to recoup from individual victims would be even less than $282 million, according to FEMA spokesman David Passey. He said the individual assistance figure includes nonfinancial help, such as temporary housing, that the agency provided to disaster victims and would not try to recoup.

FEMA's attempt to recover from PG&E was sharply criticized by 40 members of Congress in a letter to the agency's acting administrator last week. The letter, whose signatories were led by North Bay Reps. Jared Huffman and Mike Thompson, cited "great dismay and concern" at FEMA's "decision to litigate claims to the settlement fund for wildfire victims established by PG&E."

Representatives said they believe the agency's request "jeopardizes the intended purpose of the fund" and "puts at risk the possibility that the thousands of families still struggling to rebuild their lives will not receive the restitution they deserve."

FEMA leaders "appreciate the letter from the congressional delegation" and intend to respond this week, Passey said.

FEMA's efforts also have drawn criticism from James Lee Witt, a former director of the agency, who told the Santa Rosa Press Democrat newspaper last month that it was an "unusual" and "inappropriate" request.

U.S. Bankruptcy Judge Dennis Montali is expected to consider the FEMA issue at a hearing next month.

Eric Goodman, an attorney for a committee of fire victims involved in the PG&E bankruptcy case, said FEMA's defense of its $3.9 billion request "doesn't hold any water" with him. Goodman's firm is asking Montali to reject FEMA's claim, in part because he says the relevant section of a federal law cited by the agency would apply only if the company intentionally started fires.

"They haven't alleged that PG&E is an arsonist," Goodman said.

Federal law does bar FEMA from providing financial compensation that disaster victims receive somewhere else. But Goodman said the agency's right to get any money back from victims "generally doesn't arise until those individuals have recovered from another source." FEMA could potentially address that issue once victims actually begin to get money from the $13.5 billion trust PG&E plans to establish when it exits bankruptcy, Goodman indicated.

"The amount the victims get from the trust should be dramatically more than they get from FEMA," Goodman said. "At that point, maybe it's not the hardship they're making it sound to be."

In a statement to The Chronicle, PG&E said it agrees with the victims' committee that "FEMA does not have a valid legal claim against the company." PG&E is continuing to work on its broader bankruptcy exit plan and is "engaged in active and constructive dialogue with stakeholders," the statement said.

"We are committed to a safe and financially stable PG&E going forward."

The company has plenty of other obstacles to resolve in bankruptcy this year. For one thing, a rival group continues to push its own plan to resolve the bankruptcy. Bondholders backing that competing plan are asking Montali to reconsider his approval of PG&E's deal with victims' attorneys.

UC Hastings law professor Jared Ellias, who has been following the PG&E bankruptcy, said the bondholders' request is "doomed."

"But just because they lose that skirmish doesn't mean they can't win the war," Ellias said.

Bondholders could seek to persuade victims to vote against PG&E's bankruptcy exit plan when the time comes. They could also convince the judge that PG&E's plan to resolve the case does not pass legal muster, Ellias siad.

Will Abrams, who lost his Santa Rosa home in the 2017 Tubbs Fire, is deeply concerned about PG&E's settlement with victims' lawyers. He said he believes individual victims were not consulted enough before the agreement was inked.

Abrams sent a survey to survivors of the 2017 fires and the Camp Fire and asked, among other questions, whether they told their lawyers to support the settlement agreement. Out of nearly 140 responses, the vast majority said no.

"What's really aggravating to me is that wildfire survivors are absolutely just being disregarded by everybody in this proceeding," Abrams said.

But Frank Pitre, one of the lead attorneys for fire victims who have sued PG&E, said lawyers did discuss the settlement with "a sampling" of the tens of thousands of people with claims against the company. The settlement was reached with attorneys for the 11-member fire victims' committee that is involved in the Bankruptcy Court proceedings along with lawyers representing about 70% of victim claims filed before the case began.

Pitre said he and his colleagues did not have enough time to survey every single client and still secure the $13.5 billion while avoiding a lengthy trial about whether PG&E started the Tubbs Fire.

The deal also averts the need for another trial where a U.S. District Court judge was supposed to estimate all of PG&E's wildfire liabilities. Avoiding both proceedings puts victims on a faster track to be paid the greatest amount possible by PG&E, Pitre said.

After reaching the deal, Pitre said, lawyers also held a few town hall meetings, with hundreds of people in total, where they discussed the settlement.

"Virtually everybody was in favor of this," he said of the reception at the meetings.

Despite all the unresolved issues, Pitre said he is optimistic about the rest of the bankruptcy case.

"We have to start with the proposition that PG&E was a company in crisis," Pitre said. "You cannot squeeze blood out of a turnip. We have squeezed all the blood that is left out of PG&E, and that blood is the $13.5 billion."

PG&E has to resolve its bankruptcy case by June 30 to tap into a new state fund that can shield the company from any future wildfire costs. The California Public Utilities Commission must also sign off on a plan for PG&E to exit bankruptcy by then.

J.D. Morris is a San Francisco Chronicle staff writer. Email: jd.morris@sfchronicle.com Twitter: @thejdmorris

---- Index References ----

Company: JAMES LEE WITT ASSOCIATES LLC; PACIFIC GAS AND ELECTRIC CO; SAN FRANCISCO CHRONICLE

News Subject: (Bankruptcies (1BA08); Business Management (1BU42); Corporate Events (1CR05); Government (1GO80); Natural Disasters (1NA67); Wildfires (1WI18))

Language: EN

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 3

Other Indexing: (Will Abrams; Frank Pitre; Eric Goodman; David Passey; James Lee Witt; Dennis Montali; Jared Huffman; Mike J. Thompson; Mike J. Thompson; Ellias siad; Jared Ellias; PG&E; J.D. Morris; Bob Fenton)

Word Count: 1375

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.