WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors*
*and Debtors in Possession*

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Ch. 11 Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING FORM AND MANNER OF NOTICE OF HEARING ON PROPOSED DISCLOSURE STATEMENT; (II) ESTABLISHING AND APPROVING PLAN SOLICITATION AND VOTING PROCEDURES; (III) APPROVING FORMS OF BALLOTS, SOLICITATION PACKAGES, AND RELATED NOTICES; AND (IV) GRANTING RELATED RELIEF**<br><br>**(THE "SOLICITATION PROCEDURES MOTION")**<br><br>Date:   March 10, 2020<br>Time:  10:00 a.m. (PT)<br>Place:  United States Bankruptcy Court,<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102<br>Judge:  Hon. Dennis Montali<br>**Objection Deadlines:**<br>    **Core Parties: February 28, 2020, at 4:00 p.m. (PT)**<br>    **Non-Core Parties: March 6, 2020, at 4:00 p.m. (PT)** |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 1125, and 1126 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 3017-1 and 3020-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), the *Order Establishing Procedures for Disclosure Statement and Confirmation Hearing* (N.D. Cal. May 2017) (Montali, J.) (the "**Procedures Order**"), and the Court's *Amended Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation* [Docket No. 5732] (the "**Scheduling Order**"), hereby submit this Motion (this "**Motion**") for entry of an order, substantially in the form attached hereto as <u>**Exhibit A**</u> (the "**Proposed Order**"),[1] granting the following relief:

(a)     ***Disclosure Statement Hearing Notice.*** Approving the form of notice previously reviewed by the Court for the hearing (the "**Disclosure Statement Hearing**" and the notice thereof, the "**Disclosure Statement Hearing Notice**") to consider approval of the proposed disclosure statement, filed February 7, 2020 [Docket No. 5700] (together with all schedules and exhibits thereto, including, without limitation, the exhibits filed on February 18, 2020 [Docket No. 5810], and as may be modified, amended, or supplemented from time to time, the "**Proposed Disclosure Statement**"), for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated January 31, 2020* [Docket No. 5590] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[2] and the manner of notice thereof;

(b)     ***Plan Solicitation and Voting Procedures.*** Approving the procedures for (i) soliciting and tabulating votes to accept or reject the Plan, including procedures for the solicitation of votes from holders of Fire Victim Claims and the establishment of a Record Date (as defined below) for voting on the Plan and serving related notices, and (ii) voting to accept or reject the Plan, including procedures for the electronic submission of votes on the Plan;

(c)     ***Ballots and Solicitation Packages.*** Approving (i) the forms of Ballots and Solicitation Packages (each as defined below) and procedures for the distribution thereof, including the form of master ballot for the submission of votes to accept or reject the Plan by attorneys representing multiple holders of Fire Victim Claims and related solicitation directive form and solicitation procedures for holders of Fire Victim Claims, and (ii) the form of notice (the "**Notice of Non-Voting Status**") to be sent to holders of Claims and

---

[1] In addition to approving the relief requested in the Motion, the Proposed Order, if entered by the Court, would approve the Proposed Disclosure Statement (as defined herein) as having adequate information under section 1125 of the Bankruptcy Code.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Interests that are Unimpaired under the Plan, as applicable, and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan or are otherwise deemed not entitled to vote on the Plan, as applicable; and

(d)      ***Confirmation Hearing Notice Procedures.***  Approving the form and manner of notice of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**" and the notice thereof, the "**Confirmation Hearing Notice**");

In connection with the relief requested in this Motion, the Debtors have attached the following Exhibits hereto:

| | |
|---|---|
| **Exhibit A** | Proposed Order |
| **Exhibit B** | Form of Fire Victim Claims Solicitation Notice and Fire Victim Plan Solicitation Directive |
| **Exhibit C** | Form of Notice of Non-Voting Status |
| **Exhibits D-1 – D-8** | Forms of Ballots |
| **Exhibit E** | Form of Confirmation Hearing Notice |

For the Court's reference, below is a table highlighting certain key dates relevant to approval of the Proposed Disclosure Statement, confirmation of the Plan, and the relief requested in the Motion. Certain of the dates set forth below were previously approved by the Court pursuant to the Scheduling Order.

| Event | Proposed Deadline[3] |
|---|---|
| **Disclosure Statement and Solicitation Procedures Objection Deadline:** | February 28, 2020, at 4:00 p.m. (Core Parties)* March 6, 2020, at 4:00 p.m. (Non-Core Parties)* |
| **Record Date:** | March 3, 2020 (Seven (7) calendar days prior to the scheduled Disclosure Statement Hearing) |
| **Deadline to Submit Completed Fire Victim Plan Solicitation Directives and Fire Victim Client Lists:** | March 3, 2020, at 4:00 p.m. (No later than seven (7) calendar days prior to the scheduled Disclosure Statement Hearing) |
| **Deadline for Creditors or Shareholders to File Bankruptcy Rule 3018 Motions:** | March 6, 2020, at 4:00 p.m.* |
| **Disclosure Statement Hearing:** | March 10, 2020, at 10:00 a.m.* |
| **Solicitation Deadline:** | March 31, 2020* |

---

[3] Unless otherwise stated, all times referenced in this Motion refer to Prevailing Pacific Time.

* Denotes deadline previously set by the Court pursuant to the Scheduling Order.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| **Deadline to Publish Notice of the Confirmation Hearing:** | April 24, 2020 or as soon as reasonably practicable thereafter |
| **Voting Deadline:** | May 15, 2020, at 4:00 p.m.* |
| **Plan Confirmation Objection Deadline:** | May 15, 2020, at 4:00 p.m.* |
| **Pre-Confirmation Scheduling Conference:** | May 19, 2020, at 10:00 a.m.* |
| **Voting Certification Filing Deadline:** | May 22, 2020, at 4:00 p.m. |
| **Deadline to Submit Briefs in Support and Replies to Plan Objection(s):** | May 22, 2020, at 4:00 p.m.* |
| **Confirmation Hearing:** | May 27, 2020, at 10:00 a.m.* |

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.      BACKGROUND ................................................................................................. 8

II.     JURISDICTION ................................................................................................. 10

III.    APPROVAL OF THE FORM OF DISCLOSURE STATEMENT HEARING NOTICE
        AND PROCEDURES FOR PROVIDING NOTICE OF THE DISCLOSURE
        STATEMENT HEARING AND DISCLOSURE STATEMENT AND SOLICITATION
        PROCEDURES OBJECTION DEADLINE .......................................................... 10

IV.     ESTABLISHING A RECORD DATE .................................................................. 13

V.      APPROVING SOLICITATION PROCEDURES AND PACKAGES ..................... 13

        A.      Parties Entitled to Vote. ..................................................................... 14

        B.      Establishing Claim and Interest Amounts and Temporary Allowance /
                Disallowance of Claims for Voting Purposes. ................................... 15

        C.      Approval of Solicitation Packages and Procedures for Distribution Thereof ................ 19

VI.     APPROVING FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR
        VOTING ON THE PLAN ................................................................................... 27

        A.      Approval of Forms of Ballots and Distribution Thereof ................... 27

        B.      Establishing Procedures for Receipt of Ballots ............................... 30

        C.      Approval of Procedures for Vote Tabulation ..................................... 31

                1.      General Tabulation Procedures .............................................. 31

                2.      Master Ballot Tabulation Procedures ..................................... 33

                3.      Voting Certification ............................................................... 34

VII.    ESTABLISHING PROCEDURES FOR PROVIDING NOTICE OF THE
        CONFIRMATION HEARING ............................................................................ 35

VIII.   AMENDMENTS ................................................................................................ 36

IX.     NOTICE ............................................................................................................ 36

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re A.H. Robins Co., Inc.*,
88 B.R. 742 (E.D. Va. 1988), 880 F.2d 694 (4th Cir. 1989) .............................................. 19

*In re Insys Therapeutics, Inc.*,
Case No. 19-11292 (Bankr. D. Del. 2019) ...................................................................... 26

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986) .............................................................................. 20

*In re Kaiser Gypsum Company, Inc.*,
Case No. 16-31602 (Bankr. W.D.N.C. 2019) ................................................................ 26

*In re Lloyd E. Mitchell, Inc.*,
373 B.R. 416 (Bankr. D. Md. 2007) ......................................................................... 20, 26

*In re Maremont Corp.*,
Case No. 199-10118 (Bankr. D. Del. 2019) ............................................................ 20, 26

*Pension Ben. Guar. Corp. v. Enron Corp.*,
2004 WL 2434928 (S.D.N.Y. 2004) ............................................................................... 20

*In re Plant Insulation Co.*,
Case No. 09-31347 (Bankr. N.D. Cal. 2011) ........................................................... 20, 26

*In re Quigley Co.*,
346 B.R. 647 (Bankr. S.D.N.Y. 2006) ........................................................................... 21

*In re Thorpe Insulation Co.*,
Case No. 19271 (C.D. Cal. 2008) ............................................................................ 20, 26

*In re TK Holdings, Inc.*,
Case No. 17-11375 (Bankr. D. Del. 2018) ..................................................................... 20

*In re Yarway Corp.*,
Case No. 13-11025 (Bankr. D. Del. 2015) ..................................................................... 27

**Statutes**

11 U.S.C. § 101 ....................................................................................................................... 17

11 U.S.C. § 105 ....................................................................................................................... 27

11 U.S.C. § 510 ................................................................................................................. 10, 21

11 U.S.C. § 1107 ..................................................................................................................... 10

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| 11 U.S.C. § 1108 | 10 |
| 11 U.S.C. § 1125 | 22 |
| 11 U.S.C. § 1126 | 16, 17, 27 |
| 11 U.S.C. § 1128 | 36 |
| 28 U.S.C. § 157 | 12 |
| 28 U.S.C. § 1334 | 12 |
| 28 U.S.C. § 1408 | 12 |
| 28 U.S.C. § 1409 | 12 |

**Other Authorities**

| | |
|---|---|
| B.L.R 3017-1 | 12, 13 |
| B.L.R. 3020-1 | 36 |
| B.L.R. 5011-1 | 12 |
| Fed. R. Bankr. P. 1015 | 10 |
| Fed. R. Bankr. P. 2002 | 12, 13, 14, 22, 36, 37 |
| Fed. R. Bankr. P. 3001 | 34 |
| Fed. R. Bankr. P 3016 | 12 |
| Fed. R. Bankr. P. 3017 | 12, 13, 15, 21, 27, 28, 32, 36 |
| Fed. R. Bankr. P. 3018 | 15, 17, 18 |
| Fed. R. Bankr. P. 9006 | 13 |

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in either of the Chapter 11 Cases.  The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Official Committees**").[4]

On March 14, 2019, the Debtors filed their schedules of assets and liabilities [Docket Nos. 897-908] (as thereafter amended on September 16, 2019 [Docket Nos. 3900, 3902, and 3904], and as may be further amended, modified, or supplemented from time to time, collectively, the "**Schedules**").  By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases  [Docket No. 2806] (the "**Bar Date Order**").  On November 11, 2019, the Bar Date was extended by the Court for unfiled, non-governmental Fire Claimants (as defined in the Bar Date Order) to December 31, 2019 [Docket No.  4672] (the "**Extended Fire Victims Bar Date Order**" and, together with the Bar Date Order, the "**Bar Date Orders**").[5]

---

[4] Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

[5] In its *Tentative Ruling Regarding Motion to Apply Rule 7023 and Order Setting Deadline*, dated February 3, 2020 [Docket No. 5064], the Court discussed the possibility of extending the Bar Date for certain parties that may hold rescission and damage claims relating to the purchase of the Debtors' debt and equity securities and arising under section 510(b) of the Bankruptcy Code.  To the extent the Bar Date is extended for such parties, the procedures set forth herein may be modified, if necessary, to account for a rolling solicitation of such claimholders.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

On September 9, 2019, the Debtors filed their joint chapter 11 plan of reorganization [Docket No. 3841], which was thereafter amended on September 23, 2019 [Docket No. 3966] and November 4, 2019 [Docket No. 4563].

On October 9, 2019, the Court issued its opinion and order [Docket No. 4167] (the "**Exclusivity Termination Order**") terminating the Debtors' exclusive periods to file and solicit a chapter 11 plan (the "**Exclusive Periods**") solely to the extent to allow the Tort Claimants Committee and the Ad Hoc Committee of Senior Unsecured Noteholders of the Utility (the "**Ad Hoc Committee**") to file a competing chapter 11 plan of reorganization, which plan was thereafter filed on October 17, 2019 [Docket No. 4257] (the "**TCC/Noteholder Plan**"). The Exclusivity Termination Order did not modify the Debtors' Exclusive Periods as to any other parties or plan.

On December 6, 2019, the Debtors, certain funds and accounts managed or advised by Knighthead Capital Management, LLC and certain funds and accounts managed or advised by Abrams Capital Management, L.P. (together, the "**Shareholder Proponents**"), the Tort Claimants Committee, and certain professionals representing approximately 70% in number of the holders of Fire Victim Claims entered into an agreement (the "**Tort Claimants RSA**") to resolve, among other things, the treatment and discharge of individual Fire Victim Claims under the Debtors' Plan, as amended to incorporate the terms of the settlement embodied in the Tort Claimants RSA (the "**Tort Claimants Settlement**"). Prior to entering into the Tort Claimants RSA, the Debtors previously negotiated settlements with the holders of Public Entities Wildfire Claims and the holders of Subrogation Wildfire Claims.

On December 12, 2019, the Debtors, together with the Shareholder Proponents as co-plan proponents, filed the Plan, as amended to incorporate the terms of the settlement and plan treatment set forth in the Tort Claimants RSA. On December 19, 2019 [Docket No. 5174], the Court entered an order approving the Tort Claimants RSA. On the same day, the Tort Claimants Committee formally withdrew as co-plan proponents of the TCC/Noteholder Plan [Docket No. 5177].

On January 22, 2020, the Debtors, the Shareholder Proponents, and certain members of the Ad Hoc Committee entered into an agreement (the "**Noteholder RSA**") to, among other things, resolve all issues relating to the treatment of the Utility's prepetition funded debt under the Debtors' and

Shareholder Proponents' Plan (the "**Noteholder Settlement**"). On January 31, 2020, the Debtors further amended the Plan to incorporate the terms of the Noteholder Settlement [Docket No. 5590]. On February 5, 2020, the Court entered an order approving the Noteholder RSA [Docket No. 5637]. On the same day, the Ad Hoc Committee formally withdrew the TCC/Noteholder Plan [Docket No. 5644].

On February 11, 2020, the Court entered the Scheduling Order, which, among other things, established certain dates and deadlines relating to approval of the Proposed Disclosure Statement and confirmation of the Plan.

## II.    JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   APPROVAL OF THE FORM OF DISCLOSURE STATEMENT HEARING NOTICE AND PROCEDURES FOR PROVIDING NOTICE OF THE DISCLOSURE STATEMENT HEARING AND DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES OBJECTION DEADLINE

Bankruptcy Rule 3017(a) provides:

[A]fter a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto. The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the Code, the Securities and Exchange Commission and any party in interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).

Bankruptcy Rule 2002(b) requires 28 days' notice to all creditors and indenture trustees of the time set for filing objections to, and the hearing to consider the approval of, a disclosure statement. Fed. R. Bankr. P. 2002(b). Bankruptcy Rule 2002(d) provides that, unless otherwise ordered by the Court, notice shall be provided to equity security holders of the time fixed for filing objections to, and considering approval of, a disclosure statement in the form and manner directed by the Court. Fed R. Bankr. P. 2002(d). Additionally, Bankruptcy Local Rule 3017-1 provides that notice of a disclosure

Case: 19-30088    Doc# 5835    Filed: 02/19/20    Entered: 02/19/20 14:32:33    Page 10 of 36

10

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

statement hearing shall be served on the debtor, creditors, equity security holders, the U.S. Trustee, the Securities and Exchange Commission, and other parties in interest not less than 35 days prior to the hearing. The Procedures Order further requires a plan proponent to provide notice of the hearing to approve the disclosure statement to the debtors, creditors, equity security holders, the U.S. Trustee, the Securities and Exchange Commission, and all parties in interest under Bankruptcy Rule 3017(a) and Bankruptcy Local Rule 3017-1. Bankruptcy Rule 9006(c) allows the Court, with or without a motion and for cause shown, to reduce the time for any act required or allowed to be done under the Bankruptcy Rules. Fed. R. Bankr. P. 9006(c)(1).

As noted above, pursuant to the Scheduling Order, the Court previously established March 10, 2020 at 10:00 a.m. as the date of the Disclosure Statement Hearing and 4:00 p.m. on each of February 28, 2020 and March 6, 2020, as the deadlines for Core Parties and non-Core Parties (as defined in the Scheduling Order), respectively, to serve responses or objections to the Proposed Disclosure Statement and Solicitation Procedures (the "**Disclosure Statement and Solicitation Procedures Objection Deadline**").

The Court previously reviewed, and provided comments with respect to, the form of Disclosure Statement Hearing Notice that was filed by the Debtors on the Court's Docket [Docket No. 5733] and served on creditors and interest holders as set forth herein. Accordingly, out of an abundance of caution only, the Debtors are seeking formal approval of the form of Disclosure Statement Hearing Notice pursuant to this Motion.

In accordance with Bankruptcy Rules 2002 and 3017(a), Bankruptcy Local Rule 3017-1, and the Procedures Order, and the schedule approved by the Court pursuant to the Scheduling Order (as shortened by the Court pursuant to Bankruptcy Rule 9006(c)), the Debtors have served the Disclosure Statement Hearing Notice, substantially in the form previously reviewed by, and filed with, the Court, by electronic transmission, overnight mail, or first class mail upon all creditors, interest holders, and other parties required to be noticed under such Rules and Orders. As required by Bankruptcy Local Rule 3017-1(a) and paragraph C.3 of the Procedures Order, the Debtors have also served copies of the Proposed Disclosure Statement and the Plan on those parties required under Bankruptcy Rule 3017(a). With respect to any other party in interest, the Debtors will provide, at their expense, copies of the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Proposed Disclosure Statement and the Plan upon request made to Prime Clerk LLC, the Debtors' solicitation agent ("**Prime Clerk**" or the "**Solicitation Agent**"), at the following address or by e-mail:

| If by standard, overnight, or hand delivery: | If by e-mail to: |
| --- | --- |
| PG&E Information<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street, Suite 1440<br>New York, NY 10165 | pgeinfo@primeclerk.com |

Copies of the Proposed Disclosure Statement and the Plan are on file with the Office of the Clerk of the Court for review during normal business hours and are also available on the website maintained by Prime Clerk in these Chapter 11 Cases at https://restructuring.primeclerk.com/pge (the "**Case Website**").

In addition to mailing the Disclosure Statement Hearing Notice, and as authorized under Bankruptcy Rule 2002(l), the Debtors published the Disclosure Statement Hearing Notice, on February 21, 2020 or as soon as reasonably practicable thereafter, once in each of the newspapers in which the Debtors previously published notice of the Bar Date.[6] The Debtors have also used reasonable efforts to post the Disclosure Statement Hearing Notice in each of their seventy-five billing centers.

The Debtors submit that the foregoing procedures provided adequate notice of the Disclosure Statement Hearing and the Disclosure Statement and Solicitation Procedures Objection Deadline for all purposes as required under the Bankruptcy Rules, the Bankruptcy Local Rules, and the Court's

---

[6] In connection with the Bar Date Order, the Debtors published notice of the Bar Date (and have or will soon publish the Disclosure Statement Hearing Notice) in each of the following newspapers: *The Wall Street Journal (National Edition)*, *USA Today*, the *Los Angeles Times*, *San Francisco Chronicle*, *The Bakersfield Californian*, *The Fresno Bee*, *The Modesto Bee*, *The Sacramento Bee*, *The Santa Rosa Press Democrat*, *The San Jose Mercury News*, *The East Bay Times*, *The Stockton Record*, *The Paradise Post*, *The Chico Enterprise-Record*, *The San Francisco Examiner*, *The Redding Record Searchlight*, *The Red Bluff Daily News*, *The Eureka Times Standard*, *The Ukiah Daily Journal*, *The Grass Valley Union*, *The Napa Valley Register*, *The Trinity Journal In Weaverville*, *The Mad River Union in Arcata*, *The Del Norte Triplicate in Crescent City*, *The Mount Shasta Herald in Mount Shasta*, *The Siskiyou Daily News in Yreka*, *The Modoc County Record in Alturas*, *The Ferndale Enterprise in Fortuna*, and *The Lassen County Times in Susanville*. In addition to the aforementioned publications, the Debtors will also publish the Disclosure Statement Hearing Notice in the *Marin Independent Journal*.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Procedures Order and Scheduling Order and, accordingly, request that the Court approve the form of Disclosure Statement Hearing Notice and the related noticing procedures as reasonable and adequate.

## IV. ESTABLISHING A RECORD DATE

Bankruptcy Rule 3017(d) provides that for the purposes of soliciting votes in connection with the confirmation of a chapter 11 plan, "creditors and interest holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) provides, in relevant part, that "A plan may be accepted or rejected in accordance with § 1126 of the Code within the time fixed by the Court pursuant to Rule 3017." Fed. R. Bankr. P. 3018(a).

In accordance with these Rules, the Debtors request that the Court set March 3, 2020, the date that is seven (7) calendar days prior to the date the Disclosure Statement Hearing is initially scheduled, as the date for determining which holders of Claims and Interests are entitled to vote to accept or reject the Plan (the "**Record Date**"). In addition, the Debtors request that the Court establish the Record Date as the date for determining which holders of Claims and Interests in the Non-Voting Classes (as defined below) (or Claims or Interests in Voting Classes that, as of the deadline set forth in the Scheduling Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan) are entitled to receive a Notice of Non-Voting Status. The Debtors believe that the Record Date is appropriate as it facilitates the determination of which holders of Impaired Claims and Interests are entitled to vote on the Plan or, in the case of Claim and Interest holders in Non-Voting Classes, to receive a Notice of Non-Voting Status.

## V. APPROVING SOLICITATION PROCEDURES AND PACKAGES

In connection with the Proposed Disclosure Statement, the Debtors propose to implement the following solicitation and balloting procedures with respect to the Plan (collectively, the "**Solicitation Procedures**"). As noted above, the Debtors have retained Prime Clerk as their Solicitation Agent to implement the Solicitation Procedures.

### A. Parties Entitled to Vote.

Pursuant to the Plan, the Debtors have classified thirty-one (31) separate Classes of Claims and Interests. Of those Classes, ten (10) Classes are Impaired and may vote to accept or reject the Plan, subject to certain exceptions discussed below (collectively, the "**Voting Classes**"), while the remaining twenty-one (21) Classes are Unimpaired, are presumed to accept the Plan, and are, thus, not entitled to vote on the Plan (the "**Non-Voting Classes**"). The Voting Classes and Non-Voting Classes are summarized in the table below:

| Class | Designation | Impairment |
|---|---|---|
| **Voting Classes** | | |
| Class 5A-I | HoldCo Public Entities Wildfire Claims | Impaired |
| Class 5A-II | HoldCo Subrogation Wildfire Claims | Impaired |
| Class 5A-III | HoldCo Fire Victim Claims | Impaired |
| Class 9A | HoldCo Common Interests | Impaired |
| Class 3B-I | Utility Impaired Senior Note Claims | Impaired |
| Class 3B-III | Utility Short-Term Senior Note Claims | Impaired |
| Class 3B-IV | Utility Funded Debt Claims | Impaired |
| Class 5B-I | Utility Public Entities Wildfire Claims | Impaired |
| Class 5B-II | Utility Subrogation Wildfire Claims | Impaired |
| Class 5B-III | Utility Fire Victim Claims | Impaired |
| **Non-Voting Classes** | | |
| Class 1A | HoldCo Other Secured Claims | Unimpaired |
| Class 2A | HoldCo Priority Non-Tax Claims | Unimpaired |
| Class 3A | HoldCo Funded Debt Claims | Unimpaired |
| Class 4A | HoldCo General Unsecured Claims | Unimpaired |
| Class 5A-IV | HoldCo Ghost Ship Fire Claims | Unimpaired |
| Class 6A | HoldCo Workers' Compensation Claims | Unimpaired |
| Class 7A | HoldCo Intercompany Claims | Unimpaired |
| Class 8A | HoldCo Subordinated Debt Claims | Unimpaired |
| Class 10A | HoldCo Other Interests | Unimpaired |
| Class 1B | Utility Other Secured Claims | Unimpaired |
| Class 2B | Utility Priority Non-Tax Claims | Unimpaired |
| Class 3B-II | Utility Reinstated Senior Note Claims | Unimpaired |
| Class 3B-V | Utility PC Bond (2008 F and 2010 E) Claims | Unimpaired |
| Class 4B | Utility General Unsecured Claims | Unimpaired |
| Class 5B-IV | Utility Ghost Ship Fire Claims | Unimpaired |
| Class 6B | Utility Workers' Compensation Claims | Unimpaired |
| Class 7B | 2001 Utility Exchange Claims | Unimpaired |
| Class 8B | Utility Intercompany Claims | Unimpaired |
| Class 9B | Utility Subordinated Debt Claims | Unimpaired |
| Class 10B | Utility Preferred Interests | Unimpaired |
| Class 11B | Utility Common Interests | Unimpaired |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Section 1126(f) of the Bankruptcy Code provides that, for the purposes of soliciting votes in connection with confirmation of a plan of reorganization, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f). The Plan provides that the Non-Voting Classes are unimpaired. Accordingly, the holders of such Claims and Interests will not vote to accept the Plan.

**B.    Establishing Claim and Interest Amounts and Temporary Allowance / Disallowance of Claims for Voting Purposes.**

Sections 1126(c) and (d) of the Bankruptcy Code provide:

(c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

(d) A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. §§ 1126(c)-(d). Furthermore, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a). The Debtors submit the following procedures provide for a fair and equitable voting process.

**Temporary Claim Voting Procedures.**    The Debtors propose that, solely for the purpose of voting to accept or reject the Plan and not for purposes of the allowance of, or distribution on account of, a Claim, each Claim within a Voting Class be temporarily allowed in an amount equal to the amount of such Claim set forth in the Schedules, subject to the following exceptions:

(a)    If a Claim is deemed Allowed pursuant to the Plan, such Claim shall be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

(b)    If a Claim (other than a Fire Victim Claim in Classes 5A-III or 5B-III as provided in subparagraph (c) below) for which a Proof of Claim has been timely filed, is marked as wholly contingent, unliquidated, or disputed (based on the face of the Claim or a reasonable review of the Claim and its supporting documentation), such Claim shall be allowed for voting purposes only with respect to the Plan, and not for purposes of

15

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

allowance or distribution, at $1.00, unless such Claim is disputed in the manner set forth in subparagraph (g) below;

(c) Any Fire Victim Claim (including, for the avoidance of doubt, any Fire Victim Claim asserted by any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code)), whether listed in the Schedules or for which a Proof of Claim has been timely filed, regardless of whether such Fire Victim Claim is marked as wholly or partially contingent or non-contingent, liquidated or unliquidated, or disputed or undisputed, is accorded one (1) vote and valued at $1.00 for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, unless such Claim is disputed in the manner set forth in subparagraph (g) below;

(d) If a Claim for which a Proof of Claim was timely filed, lists an amount that is partially unliquidated or contingent, such Claim shall be temporarily allowed for voting purposes only with respect to the Plan only in the liquidated, noncontingent amount set forth on the Proof of Claim, unless such Claim is disputed in the manner set forth in subparagraph (g) below;

(e) If a Claim has been estimated for voting purposes or otherwise allowed for voting purposes by Order of the Court, such Claim shall be allowed in the amount so estimated or allowed by the Court for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, unless otherwise provided by Order of the Court;

(f) If a Claim is not listed in the Schedules or is listed as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a Proof of Claim was not (i) timely filed by the applicable Bar Date or (ii) deemed timely filed by an Order of the Court before the Voting Deadline, unless the Debtors have consented in writing, such Claim shall be disallowed for voting purposes with respect to the Plan;

(g) If an objection to, or request for estimation of, a Claim has been filed and served by any party in interest with appropriate standing by the deadline set forth in the Scheduling Order (February 21, 2020, at 4:00 p.m.), such Claim shall be temporarily disallowed or estimated for voting purposes only with respect to the Plan and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection or request for estimation. Pursuant to the Scheduling Order, any party seeking to challenge the allowance, disallowance, amount, or classification of a Claim or Interest for voting purposes must file a motion, pursuant to Bankruptcy Rule 3018(a), seeking to temporarily allow such Claim or Interest in a different amount or class for purposes of voting to accept or reject the Plan by March 6, 2020, at 4:00 p.m.;

(h) If the voting amount of a Claim or Interest has been established by a stipulation, settlement, or other agreement filed by the Debtors on or before the Voting Deadline, such Claim shall be allowed for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, in the stipulated, settled, or otherwise agreed-to amount;

(i) For purposes of voting, classification, and treatment under the Plan, each party that holds or has filed more than one Claim in a particular Class shall be treated as if such entity has only one Claim in that particular Class, the Claims filed by such entity shall be aggregated in each applicable Class, and the total dollar amount of such Class shall be the sum of the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

aggregated Claim of such entity in each applicable Class; *provided, however*, that with respect to any Fire Victim Claim that was filed on a Fire Claimant Proof of Claim Form on behalf of more than one member of a claimant's family, each family member listed on such form in accordance with the instructions set forth therein and in the Bar Date Order that is reasonably identifiable by the Solicitation Agent shall have, for voting purposes only, a Claim, in the amount set forth in subparagraph (c) above, that may be voted to accept or reject the Plan;

(j)     Notwithstanding anything contained herein to the contrary, the Solicitation Agent, in its discretion, may contact entities entitled to vote to cure any defects in the Ballots and is authorized, but not required, to so cure any defects;

(k)     If (i) a Claim is filed in the amount of $0.00, (ii) as of the Record Date, the outstanding amount of a Claim is not greater than $0.00 as determined based on a review of the Claim by the Debtors' professionals, or (iii) a Claim has been disallowed, expunged, disqualified, or suspended, the holder of such Claim shall not be entitled to vote on account of such Claim;

(l)     If a Claim is filed in a currency other than U.S. Dollars and is not Allowed in a sum certain pursuant to the Plan, the holder of such Claim shall be entitled to vote a Claim in the amount of $1.00; and

(m)     Notwithstanding anything herein to the contrary, to the extent the Debtors or the Solicitation Agent are unable to determine (based on their review of the Proofs of Claim, any supporting documentation filed in connection therewith, the Debtors' books and records, and the Schedules) whether a Proof of Claim relates to a Fire Claim, such Proof of Claim shall be treated as a Utility General Unsecured Claim or HoldCo General Unsecured Claim (as directed by the Debtors' professionals) under the Plan for solicitation purposes only.

Substantially all of the approximately 82,000 Fire Victim Claims are unliquidated. It is not possible to estimate such claims for purposes of voting. Allowing each Fire Victim Claim at $1.00 as set forth above is a reasonable proxy for voting purposes and will avoid the holders of Fire Victim Claims being potentially disenfranchised by the votes of a few governmental entities that, by reason of the asserted amounts of their claims, could have a disproportionate effect on the class vote and, indeed, could control the class vote. Courts presiding over numerous other mass tort chapter 11 cases have allowed claims temporarily for limited purposes, including allowing such claims at $1.00 for voting purposes, in order to facilitate voting on plans of reorganization and to ensure that the votes of tort victims are adequately represented in chapter 11 cases. *See*, *e.g.*, *In re A.H. Robins Co., Inc.*, 88 B.R. 742, 747 (E.D. Va. 1988), *aff'd*, 880 F.2d 694 (4th Cir. 1989) (the placement of a nominal value on each claim for voting purposes was appropriate as "[a]ny attempt to evaluate each individual claim for purposes of voting on

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

17

the Debtor's Plan of Reorganization *would, as a practical matter, be an act of futility, and would be so time consuming as to impose on many, many deserving claimants further intolerable delay all not only to their detriment, but to the detriment of the financial well being of the estate as well*") (emphasis supplied); *Matter of Johns-Manville Corp.*, 68 B.R. 618, 631 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) (approving procedures fixing asbestos claims at $1.00 for voting purposes and finding that "[t]he effect of the voting procedures adopted for AH claimants in this case has been to enfranchise the greatest possible number of asbestos health victims" and further holding that *"[i]t has been the stated goal of this court and of the parties in interest throughout these proceedings to ensure the protection and participation of the interests of the asbestos health victims. The construct of the voting procedure is proper as it clearly meets the desideratum of expanded sufferage and participation in the reorganization by all parties in interest*.") (emphasis supplied); *Pension Ben. Guar. Corp. v. Enron Corp.*, No. 04 CIV. 5499 (HB), 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004) ("When circumstances warrant the estimation of claims for voting purposes, the bankruptcy court has utilized its claim estimation authority to ensure voting power was commensurate with economic interest."); *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 428 (Bankr. D. Md. 2007) (approving procedures that valued personal injury claims at $1.00 temporarily for voting purposes where, among other things, the official committee with fiduciary duties to such personal injury claimants supported the proposed voting procedures, and further holding "…the objectors appear to lose sight of the fact that the Class 3 claims are only being allowed for voting purposes.  They will not be adjudicated by the bankruptcy court, and there is no reason, as the Objectors suggest, to hold hearings, complete with evidence and argument, as to the value of the asbestos claims."); *In re Plant Insulation Co.*, Case No. 09-31347 (TC) [Docket No. 1000] (Bankr. N.D. Cal. Feb. 1, 2011) (approving procedures to temporarily allow claims of asbestos claimants for voting purposes only at set amounts based on injury schedule); *In re Thorpe Insulation Co.*, Case No. 19271 (BB) [Docket No. 1270] (C.D. Cal. Aug 8, 2008) (same); *In re Maremont Corp.*, Case No. 199-10118 (KJC) (Bankr. D. Del. May 17, 2019) [Docket No. 241] (approving voting procedures for personal injury and wrongful death claimants temporarily allowing such claims for voting purposes only at set amounts based on injury schedule); *In re TK Holdings, Inc.*, Case No. 17-11375

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(BLS) (Bankr. D. Del. Jan. 5, 2018) [Docket No. 1639] (approving procedures temporarily allowing tort claims relating to Debtors' defective airbag inflators, whether based on personal injury, wrongful death, or economic loss, at $1.00 for voting purposes); *In re Quigley Co.*, 346 B.R. 647, 655 (Bankr. S.D.N.Y. 2006) (allowing claims of asbestos claimants temporarily in the amount of $1.00 for voting purposes).

**Temporary Class 9A (HoldCo Common Interest) Voting Procedures.**[7] Class 9A (HoldCo Common Interests) is comprised of common stock interests in PG&E Corp. (the "**Common Stock**") and any Claims against HoldCo subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to the Common Stock (a "**Class 9A Rescission and Damage Claim**"). The Debtors propose that, solely for the purpose of voting to accept or reject the Plan, the amount of HoldCo Common Interests held by a particular holder that will be used to tabulate acceptances or rejections of the Plan will be the number of shares of Common Stock held by such holder as of the Record Date (the "**Record Amount**") as evidenced on PG&E Corp.'s share register for registered holders and the depository listings of Cede & Co. for beneficial holders. Each Class 9A Rescission and Damage Claim shall be allowed and tabulated for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, as one (1) share of Common Stock, unless such Class 9A Rescission and Damage Claim is disputed in the manner set forth above.

**C.      Approval of Solicitation Packages and Procedures for Distribution Thereof.**

Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of Claims and Interests for the purpose of soliciting their votes and providing adequate notice of a hearing on confirmation of a chapter 11 plan:

> Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,

---

[7] Discussions among the Debtors, the Shareholder Proponents, and other parties in interest remain ongoing with respect to the procedures for soliciting and voting of Interests and Claims in Class 9A (HoldCo Common Interests), including Class 9A Rescission and Damage Claims, which are disputed and subordinated under section 510 of the Bankruptcy Code. To the extent any amendments to the Plan require modification to the proposed Solicitation Procedures with respect to Class 9A set forth herein, such amendments or modifications shall be filed prior to the Disclosure Statement Hearing.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(1) the plan or a court-approved summary of the plan;

(2) the disclosure statement approved by the court;

(3) notice of the time within which acceptances and rejections of the plan may be filed; and

(4) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

**General Solicitation Procedures.** Upon approval of the Proposed Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, the Debtors propose that the Solicitation Agent, on behalf of the Debtors and the Shareholder Proponents, mail, or cause to be mailed, the following materials in connection with voting on the Plan and notice of the Confirmation Hearing (the "**Solicitation Packages**")[8] and the filing of objections to confirmation of the Plan:

(a) With respect to holders of Claims and Interests in the Voting Classes (but subject to the procedures set forth below with respect to the mailing of Solicitation Packages to holders of Fire Victim Claims):

(i) A copy of the Proposed Order, as ented by the Court (without any exhibits);

(ii) The Confirmation Hearing Notice;

(iii) The Proposed Disclosure Statement, as approved by the Court (with the Plan annexed thereto);

(iv) Copies of letters from each of the Tort Claimants Committee and the Ad Hoc Committee recommending acceptance of the Plan; and

(v) An appropriate form of Ballot(s) and appropriate return envelope with prepaid postage.

---

[8] Copies of the materials contained in the Solicitation Packages (excluding the Confirmation Hearing Notice and the Ballots) may be provided on USB or CD-ROM at the Debtors' discretion and will be made available free of charge on the Case Website; *provided, however,* that any party may request to receive paper copies of such materials from the Solicitation Agent at no cost to such party.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(b) With respect to holders of Claims and Interests in the Non-Voting Classes (or Claims or Interests in Voting Classes that, as of the deadline set forth in the Scheduling Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan):

(i) The Confirmation Hearing Notice; and

(ii) A Notice of Non-Voting Status.

(c) With respect to the U.S. Trustee: a copy of each document contained in each version of the Solicitation Packages.

(d) With respect to the parties on the master service list, including any party that submitted a notice of appearance under Bankruptcy Rule 2002, a Solicitation Package without any Ballot(s).

In accordance with the Scheduling Order, the Debtors shall complete all of the foregoing distributions by March 31, 2020 or as soon as reasonably practicable thereafter (the "**Solicitation Deadline**"). In addition, in accordance with the Procedures Order, the Debtors have forwarded a hard copy of the Proposed Disclosure Statement to Chambers.

**Fire Victim Solicitation Procedures**. Upon the filing of the Proposed Disclosure Statement, the Debtors commenced mailing copies of a notice (the "**Fire Victim Claims Solicitation Notice**") and a certified plan solicitation directive (the "**Fire Victim Plan Solicitation Directive**"), substantially in the form attached hereto as **Exhibit B**, by overnight delivery and electronic mail (where available), to all known attorneys representing holders of Fire Victim Claims (collectively, the "**Firms**"). The Fire Victim Claims Solicitation Notice (a) notifies the Firms of the options set forth below for soliciting votes from their clients that may hold Fire Victim Claims to accept or reject the Plan, and (b) requests that each Firm complete and return the Fire Victim Plan Solicitation Directive and a confirmed Client List (as defined below) to the Solicitation Agent on or before 4:00 p.m. on March 3, 2020, the date that is seven (7) calendar days prior to the scheduled initial date of the Disclosure Statement Hearing (the "**Fire Victim Solicitation Directive Deadline**").

The Fire Victim Plan Solicitation Directive permits each Firm to direct the Solicitation Agent with regard to the solicitation of votes on the Plan from each Firm's clients that may hold Fire Victim Claims (collectively, the "**Fire Victim Clients**") according to one of four different solicitation methods. These methods and the procedures for soliciting the votes of holders of Fire Victim Claims were developed by the Debtors in close coordination with representatives of the Tort Claimants Committee

Case: 19-30088    Doc# 5835    Filed: 02/19/20    Entered: 02/19/20 14:32:33    Page 21 of 36

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

and the attorneys representing a significant number of Fire Victim Claimants. **While the methods proposed are intended to expedite and streamline the transmission of information to the Fire Victim Clients, increase voter participation, and better ensure such victims are empowered to make informed and meaningful decisions as to whether to accept or reject the Plan, each voting decision rests exclusively with the Fire Victim Client.** Each Firm is required to comply with the applicable rules regarding aggregate settlements and informed consent. Each of the four proposed solicitation methods is described below:

(a) **Master Ballot Solicitation Method**. If a Firm certifies that (i) the Firm will collect and record the votes of its Fire Victim Clients through customary and accepted practices, or that it has obtained authority to procedurally cast each Fire Victim Client's vote (provided that the Firm has complied with the voting procedures set forth herein and each Fire Victim Client has indicated an informed decision on such vote) or (ii) it has the authority under applicable law to vote to accept or reject the Plan on behalf of its Fire Victim Clients (with a valid power of attorney provided to the Solicitation Agent), the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Fire Victim Master Ballot (as defined below) on which the Firm must record the votes on the Plan for each of its Fire Victim Clients in accordance with the Firm's customary and accepted practices. If it is the Firm's customary and accepted practice to receive or collect authorizations or instructions from its Fire Victim Clients by e-mail, telephone, or other standard communication methods, the Firm will be authorized to follow such customary practices. Any Firm that elects this procedure shall meet all applicable standards to receive informed consent from its Fire Victim Clients. Each Firm that elects this procedure shall either (i) provide the Disclosure Statement, either in hard copy or electronic format, to its Fire Victim Clients, or (ii) request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on its Fire Victim Clients. Any Firm that elects this procedure must return the Fire Victim Master Ballot to the Solicitation Agent so that it is received by the Voting Deadline.

(b) **Direct Solicitation Method**. If a Firm prefers to have each of its Fire Victim Clients cast its own vote to accept or reject the Plan or it does not have authority from its Fire Victim Clients as described above, such Firm may direct the Solicitation Agent to solicit votes on the Plan directly from its Fire Victim Clients by mailing Solicitation Packages (including Ballots) directly to the Firm's Fire Victim Clients at the primary addresses (or email addresses) identified in the Firm's Client List (as defined below) or as otherwise indicated in the applicable Proof of Claim forms. Under this procedure, completed Ballots will be submitted to the Solicitation Agent individually by the Fire Victim Clients.

(c) **Indirect Solicitation Method**. As an alternative to subparagraph (b) above, if a Firm prefers to have each of its Fire Victim Clients cast its own vote to accept or reject the Plan or if it does not have authority from its Fire Victim Clients as described above, such Firm may direct the Solicitation Agent to deliver the Solicitation Packages (including Ballots) to the Firm, which will, in turn, deliver Solicitation Packages to its Fire Victim Clients. Under this procedure, completed Ballots will be submitted to the Solicitation Agent individually by the Fire Victim Clients. If the Firm selects this method: (i) the Solicitation

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Agent will cause the requested number of Solicitation Packages, including the appropriate number of Ballots, to be served on the Firm; (ii) the Firm must deliver the Solicitation Packages to its Fire Victim Clients within three (3) business days after receipt; and (iii) the Firm must file an affidavit of service with the Court confirming the same, and send a copy of such affidavit to the Solicitation Agent, within three (3) business days of such service. The names and addresses of the Fire Victim Clients served do not need to be listed on the affidavit of service. The affidavit of service need only state that service was completed, the date(s) that service was completed, and that the attorney has provided the Solicitation Agent with the required lists of clients, as described below.

(d)     **Hybrid Solicitation Method**. If a Firm certifies that it has the authority to record the votes of certain of its Fire Victim Clients pursuant to the Master Ballot Solicitation Method set forth in subparagraph (a) above (collectively, the "**Master Ballot Fire Victim Clients**"), the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Fire Victim Master Ballot on which the Firm must record the votes with respect to the Plan for its Master Ballot Fire Victim Clients. The Firm also may request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on its Master Ballot Fire Victim Clients. With respect to such Firm's other Fire Victim Clients that are not Master Ballot Fire Victim Clients (collectively, the "**Individual Ballot Fire Victim Clients**"), the Firm must elect the procedure under either the Direct Solicitation Method (subsection (b) above) or the Indirect Solicitation Method (subsection (c) above). Completed ballots by Individual Ballot Fire Victim Clients will be submitted to the Solicitation Agent individually. The Firm shall also indicate on its Client List which Fire Victim Clients are Master Ballot Fire Victim Clients and which are Individual Ballot Fire Victim Clients.

The Debtors and the Solicitation Agent have worked with representatives of the Tort Claimants Committee and the attorneys representing a significant number of holders of Fire Victim Claims on additional measures to facilitate the distribution of Solicitation Packages to, and the submission of executed Ballots by, Fire Victim Clients and their Firms, including Fire Victim Master Ballots, which, to the extent necessary, will be explained in detail prior to the Disclosure Statement Hearing.

To facilitate the timely delivery of Solicitation Packages, the Debtors have requested that each Firm submit the Fire Victim Plan Solicitation Directive to the Solicitation Agent by the Fire Victim Solicitation Directive Deadline (March 3, 2020). If a Firm fails to return the Fire Victim Plan Solicitation Directive by the Fire Victim Solicitation Directive Deadline, the Firm shall be deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Clients according to the Direct Solicitation Method described above. In addition, each Firm may elect to provide the Solicitation Agent with a cover letter or additional communication by the Fire Victim Solicitation Directive Deadline to be included in any mailing to its Fire Victim Clients.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

In connection with the distribution of the Fire Victim Claims Solicitation Directive, the Debtors have also sent to each Firm an Excel spreadsheet (the "**Client List**"), in email, CD-ROM, or USB format, that sets forth the names, addresses, and (if known) e-mail addresses of each Firm's Fire Victim Clients as compiled by the Solicitation Agent based on a review of the Proofs of Claim filed by or on behalf of the holders of Fire Victim Claims and/or scheduled Fire Victim Claims in the Chapter 11 Cases. The Debtors are requesting that each Firm confirm the accuracy of its Client List, make any necessary additions, subtractions, or other corrections to the spreadsheet provided, and return the Client List in the same electronic format to the Solicitation Agent no later than the Fire Victim Solicitation Directive Deadline. Any Fire Victim Claims that cannot be matched to a Firm or that are not otherwise included in any Client List shall be solicited via the Direct Solicitation Method set forth in subsection (b) above. To the extent a Firm includes on its returned Client List any additional Fire Victim Clients that were not originally listed by the Solicitation Agent, the Firm shall provide the Solicitation Agent with the Proof of Claim and/or Schedule number that corresponds to each such additional Fire Victim Client's Fire Victim Claim. The Solicitation Agent will not provide Ballots to any Firm on account of, and any votes included on any Fire Victim Master Ballot shall not be counted for, any individuals or entities for which a Fire Victim Claim has not been scheduled or timely filed prior to the applicable Bar Date.

With respect to any Fire Victim Clients that are served with Solicitation Packages as set forth in subsection (b) above, the Debtors request authority to serve Solicitation Packages on such Fire Victim Clients via electronic mail, where available, in lieu of a physical mailing.

The Debtors submit that the foregoing procedures will provide for a fair, easily understandable, and efficient solicitation of votes to accept or reject the Plan from the holders of Fire Victim Claims. Similar procedures allowing for the submission of votes by attorneys and the use of master ballots have been approved by Bankruptcy Courts in connection with the solicitation of plan votes of tort claimants in other chapter 11 cases. *See, e.g., In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 426 (Bankr. D. Md. 2007) ("The use of master ballots in mass tort cases is a long-standing procedural mechanism that has been employed almost as a matter of course."); *In re Plant Insulation Co.*, Case No. 09-31347 (TC) [Docket No. 1000] (Bankr. N.D. Cal. Feb. 1, 2011) (approving procedures to allow authorized counsel to cast master ballots on behalf of asbestos claimant clients); *In re Thorpe Insulation Co.*, Case No. 19271 (BB)

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

[Docket No. 1270] (C.D. Cal. Aug 8, 2008) (same); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) [Docket No. 952] (Bankr. Del. Dec. 4, 2019) (authorizing master and class ballots for tort claimants); *In re Maremont Corp.*, Case No. 199-10118 (KJC) (Bankr. D. Del. 2019) (May 17, 2019) [Docket No. 241] (approving the use of master ballots for attorneys of record for voting the claims of personal injury and asbestos claimants); *In re Kaiser Gypsum Company, Inc.*, Case No. 16-31602 (JCW) [Docket No. 1875] (Bankr. W.D.N.C. Oct. 23, 2019) (approving procedures for the submission of client lists and the use of master ballots for asbestos claimants); *In re Yarway Corp.*, Case No. 13-11025 (BLS) [Docket No. 756] (Bankr. D. Del. 2015) (approving master ballot procedures for attorneys who submitted client lists to the solicitation agent for asbestos personal injury claimants).

**Notices of Non-Voting Status**. Consistent with section 1126(f) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Solicitation Packages for holders of Claims or Interests in the Non-Voting Classes will not include a Ballot. Because the Non-Voting Classes are presumed to have accepted the Plan, in an effort to conserve the resources of the Debtors' estates, the Debtors propose to send to holders of such Claims or Interests (or Claims or Interests in Voting Classes that, as of the deadline set forth in the Scheduling Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan) a Notice of Non-Voting Status, substantially in the form annexed hereto as **Exhibit C**, which sets forth the manner for obtaining copies of the Plan and the Proposed Disclosure Statement at no charge. These parties will also receive the Confirmation Hearing Notice. The Debtors submit that such notice satisfies the requirements of Bankruptcy Rule 3017(d). The Debtors request that the Court determine that they are not required to distribute copies of the Plan or the Proposed Disclosure Statement to any holder of a Claim or Interest in a Non-Voting Class unless otherwise requested in writing on or before twenty (20) days before the Confirmation Hearing.

With respect to holders of Intercompany Claims in Classes 7A and Utility Common Interests in Class 11B, which are either Debtors or affiliates controlled by the Debtors and which Classes are Unimpaired and not entitled to vote on the Plan, pursuant to section 105(a) of the Bankruptcy Code, each Debtor and non-Debtor affiliate holding such Claims will be deemed to have received all notices upon entry of the Proposed Order without actual delivery of such notices.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

In addition, to avoid duplication and reduce expenses, the Debtors propose that holders of Claims who have filed (a) duplicate Claims against the Debtors that are classified under the Plan in the same Class, or (b) Claims that amend or supersede previously filed Claims, shall receive only one Solicitation Package and the appropriate number of Ballots (if applicable) for voting their Claims with respect to that Class under the Plan. For the avoidance of doubt, the Debtors request that any duplicative, amended, and/or superseded Claims be disallowed for voting purposes.

The Debtors also propose that notice need not be sent to creditors whose Claims are based solely on amounts scheduled by the Debtors and have already been paid in the full scheduled amount; *provided, however*, that if any such creditor would be entitled to receive notice for any reason other than by virtue of the fact that the Claim had been scheduled by the Debtors, such creditor will be sent notice in accordance with the procedures set forth above. Furthermore, the Debtors submit that they should not be required to distribute copies of the Plan or the Proposed Disclosure Statement to any party to an executory contract or unexpired lease. The Debtors will distribute to such parties the Confirmation Hearing Notice and, in accordance with the applicable provisions of the Plan, a notice relating to the proposed treatment of any such party's executory contracts or unexpired leases.

The Debtors anticipate that some notices may be returned by the United States Postal Service as undeliverable. The Debtors believe that it would be costly and wasteful to mail such notices to the same addresses to which previous notices have been returned as undeliverable. Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from mailing Solicitation Packages and any other notices or materiasl related to voting or confirmation of the Plan to those persons listed at such addresses unless the Debtors are provided with accurate addresses for such persons no less than five (5) business days before the Voting Deadline.

The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures, and request that the Court approve such notice as adequate under the circumstances.

## VI. APPROVING FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON THE PLAN

### A. Approval of Forms of Ballots and Distribution Thereof

Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Form B 314, only to "creditors and interest holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors intend to distribute ballots to holders of Claims and Interests in the Voting Classes, which Classes are entitled to vote to accept or reject the Plan. The proposed ballots, substantially in the forms annexed hereto as **Exhibits D-1 through D-8** (the "**Ballots**"), are based on Official Form B 314 but have been modified to address the particular aspects of these Chapter 11 Cases and to include certain additional information and instructions relevant and appropriate for each such Voting Class.

**Fire Victim Master Ballots.** As described above, if a Firm certifies that (i) the Firm will collect and record the votes of its Fire Victim Clients through customary and accepted practices, or that it has obtained authority to procedurally cast each Fire Victim Client's vote (provided that the Firm has complied with the voting procedures set forth herein and each Fire Victim Client has indicated an informed decision on such vote) or (ii) it has the authority under applicable law to vote to accept or reject the Plan on behalf of its Fire Victim Clients (with a valid power of attorney provided to the Solicitation Agent), the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one master Ballot, substantially in the form annexed hereto as **Exhibit D-1** (a "**Fire Victim Master Ballot**"), on which the Firm must record the votes on the Plan for each of its Fire Victim Clients.

**Direct Fire Claim Ballots.** For all other holders of Fire Claims entitled to vote under the Plan, including holders of Public Entity Wildfire Claims, Subrogation Wildfire Claims, and any holders of Fire Victim Claims that would not be included for voting purposes on any Fire Victim Master Ballot including any Individual Ballot Fire Victim Clients, holders of such Fire Claims will receive a form of Ballot, substantially in the form annexed hereto as **Exhibit D-2** (a "**Direct Fire Claim Ballot**"), for voting on the Plan, with the appropriate inserts of content specific to each particular Class as set forth in **Exhibit D-2**.

Case: 19-30088    Doc# 5835    Filed: 02/19/20    Entered: 02/19/20 14:32:33    Page 27 of 36

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

27

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Impaired Debt Claim and HoldCo Common Interest Ballots.** The Debtors are proposing the following forms of Ballots for the holders of (i) Claims in Class 3B-I (Utility Impaired Senior Note Claims), Class 3B-III (Utility Short-Term Senior Note Claims), and Class 3B-IV (Utility Funded Debt Claims) (collectively, the "**Impaired Debt Claims**") and (ii) Interests and Claims in Class 9A (HoldCo Common Interests):

*Standard Ballots.* The Debtors will distribute a Ballot, substantially in the form annexed hereto as **Exhibit D-3** (the "**Standard Impaired Debt Ballot**") or **Exhibit D-4** (the "**Standard HoldCo Common Interest Ballot**"), respectively, to any holders of Impaired Debt Claims or HoldCo Common Interests that hold such Claims or Interests directly, such as lenders holding Claims in Class 3B-IV (Utility Funded Debt Claims) or officers, directors, employees, retirees, or other parties that hold HoldCo Common Interests in their own name.

*Master and Beneficial Owner Ballots.* With respect to holders of Impaired Debt Claims and HoldCo Common Interests who hold such Claims or Interests in "street name" as nominees on behalf of the underlying beneficial holders of the Impaired Debt Claims or HoldCo Common Interests (*i.e.*, in those instances in which Cede & Co. is the registered owner of the Impaired Debt Claims or HoldCo Common Interests for the public markets), the Debtors request authority to send Master Ballots (as defined below) for voting on the Plan to those record holders of such Impaired Debt Claims or HoldCo Common Interests, including, without limitation, the brokers, banks, dealers, or other agents or nominees, or any mailing agents thereof (collectively, the "**Master Ballot Agents**"). Each Master Ballot Agent will be entitled to receive reasonably sufficient copies of Solicitation Packages including copies of beneficial owner Ballots for holders of Impaired Debt Claims or HoldCo Common Interests, substantially in the form annexed hereto as **Exhibit D-5** (the "**Impaired Debt Beneficial Owner Ballot**") or **Exhibit D-6** (the "**Common Interest Beneficial Owner Ballot**" and together with the Impaired Debt Beneficial Owner Ballot, the "**Beneficial Owner Ballots**"), respectively, to distribute to the beneficial owners for whom the Master Ballot Agent holds such Impaired Debt Claims or HoldCo Common Interests in "street name". A Master Ballot Agent has two options with respect to voting on the Plan:

> (a) Under the first option, the Master Ballot Agent will forward the Solicitation Package (with the applicable Beneficial Owner Ballot) to each beneficial owner of Impaired Debt

28

Claims or HoldCo Common Interests entitled to vote on the Plan within five (5) business days of the receipt by such Master Ballot Agent of the Solicitation Packages and include a return envelope provided by and addressed to the Master Ballot Agent, so that the beneficial owner may return the completed Beneficial Owner Ballot to the Master Ballot Agent. The Master Ballot Agent will then summarize the individual votes for the Plan of its respective beneficial owners from the individual Beneficial Owner Ballots on the appropriate master ballot, substantially in the form annexed hereto as **Exhibit D-7** (the "**Impaired Debt Master Ballot**") or **Exhibit D-8** (the "**Common Interest Master Ballot**" and, together with the Impaired Debt Master Ballot and the Fire Victim Master Ballot, the "**Master Ballots**"), respectively, and then return the applicable Master Ballot to the Solicitation Agent by the Voting Deadline. The Master Ballot Agent should advise beneficial owners to return Beneficial Owner Ballots to the Master Ballot Agent by a date calculated by the Master Ballot Agent to allow the Master Ballot Agent to prepare and return the applicable Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline. If it is the Master Ballot Agent's customary and accepted practice to forward solicitation materials and information to (and to collect votes from) its beneficial owners by "voting instruction form," e-mail, telephone, or other standard communications, the Master Ballot Agent will be authorized to follow those customary practices in lieu of, or in addition to, distributing and/or collecting actual Beneficial Owner Ballots.

(b)     Under the second option, the Master Ballot Agent may elect to "prevalidate" the Beneficial Owner Ballots contained in the Solicitation Package and then forward the Solicitation Package to the beneficial owner of Impaired Debt Claims or HoldCo Common Interests for voting on the Plan within five (5) business days of the receipt by such Master Ballot Agent of the Solicitation Package, with the beneficial owner then returning the applicable Beneficial Owner Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. A Master Ballot Agent shall "prevalidate" a beneficial owner's Beneficial Owner Ballot by (i) indicating thereon the name and address of the record holder of the Impaired Debt Claims or HoldCo Common Interests, as applicable, to be voted with respect to the Plan, the amount of Impaired Debt Claims or HoldCo Common Interests, as applicable, held by the beneficial owner as of the Record Date, and the appropriate account numbers through which the beneficial owner's holdings are derived, (ii) certifying the accuracy of the information included on the Beneficial Owner Ballot by stamping the prevalidated Beneficial Owner Ballot with a medallion guarantee, and (iii) executing the beneficial owner's Beneficial Owner Ballot. The beneficial owner shall return the "prevalidated" Beneficial Owner Ballot directly to the Solicitation Agent by the Voting Deadline.

The Debtors will be responsible for each such Master Ballot Agent's reasonable, documented costs and expenses associated with the distribution of copies of Beneficial Owner Ballots and Solicitation Packages to the beneficial owners of Impaired Debt Claims and HoldCo Common Interests and tabulation of the Beneficial Owner Ballots, and accordingly request authority to reimburse the Master Ballot Agents for such expenses without further order of the Court.

A Claim or Interest holder who holds Impaired Debt Claims or HoldCo Common Interests on its own behalf through DTC (*i.e.*, is both the beneficial holder and Master Ballot Agent for the same Impaired Debt Claims or HoldCo Common Interests) must vote by returning a Master Ballot to the Solicitation Agent and indicating that it is both the beneficial holder and Master Ballot Agent for such Impaired Debt Claims or HoldCo Common Interests, as applicable.

Notwithstanding any other provision of this Motion, transmittal of Solicitation Packages to any holders of Impaired Debt Claims or HoldCo Common Interests held exclusively through the Master Ballot Agents will be deemed good, adequate, and sufficient notice if it is delivered by electronic transmission on or before the Solicitation Deadline to the Master Ballot Agents.

### B. Establishing Procedures for Receipt of Ballots

Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the Court shall fix a time within which the holders of claims or equity interests may accept or reject a plan. Fed. R. Bankr. P. 3017(c). As stated, the Debtors anticipate completing the solicitation of votes to accept or reject the Plan by the Solicitation Deadline. To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Solicitation Agent by (a) first-class mail, in the return envelope provided; (b) overnight courier; (c) personal or hand delivery; (d) via the Solicitation Agent's online, electronic balloting portal; or (e) for Master Ballots or Beneficial Owner Ballots returned by Master Ballot Agents or Fire Victim Master Ballots returned by Firms only, by email, in each case, so that it is received by the Solicitation Agent no later than the deadline set by the Court in the Scheduling Order for the submission of Ballots – May 15, 2020, at 4:00 p.m. (the "**Voting Deadline**"). This solicitation period is a sufficient period within which parties entitled to vote can make an informed decision to accept or reject the Plan.

In addition to accepting hard copy ballots via first class mail, overnight courier, hand delivery, and, in the case of Ballots returned by Master Ballot Agents or Fire Victim Master Ballots returned by Firms, e-mail, the Debtors request authorization to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal (each an "**E-Ballot**") on the Debtors' Case Website to be maintained by the Solicitation Agent. Parties entitled to vote may cast an E-Ballot and electronically sign and submit the E-Ballot instantly by utilizing the online balloting portal, which allows

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

a holder to submit an electronic signature. Instructions for the electronic, online transmission of votes through E-Ballot are set forth on the Ballots. The encrypted ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the holder's electronic signature will be deemed to be immediately legally valid and effective.

Ballots must be returned to the Solicitation Agent at the following addresses:

| If by the electronic balloting portal: | If by e-mail (only for Master Ballots and Beneficial Owner Ballots) to: |
|---|---|
| https://restructuring.primeclerk.com/pge/ and click on the "Submit E-Ballot" link. | pgeballots@primeclerk.com |

| If by standard or overnight mail: | If by hand delivery: |
|---|---|
| PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>- or -<br><br>At one of the Debtors' Claims Service Centers located at the following PG&E locations (beginning April 1, 2020 through the Voting Deadline during the hours of 8:30 a.m. – 5:00 p.m. Pacific Time): (i) 350 Salem Street, Chico, CA 95928; (ii) 231 "D" Street, Marysville, CA 95901; (iii) 1567 Huntoon Street, Oroville, CA 95965; (iv) 3600 Meadow View Road, Redding, CA 96002; (v) 111 Stony Circle, Santa Rosa, CA 95401; or (vi) 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

**C.     Approval of Procedures for Vote Tabulation**

**1.     *General Tabulation Procedures***

The Debtors request that the following procedures apply with respect to tabulating Ballots with respect to the Plan:

(a)     Whenever a holder casts more than one Ballot voting the same Claim(s) or Interest(s) before the Voting Deadline with respect to the Plan, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect the voter's intent and, thus,

Case: 19-30088    Doc# 5835    Filed: 02/19/20    Entered: 02/19/20 14:32:33    Page 31 of 36

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

31

supersede any prior Ballot for the Plan; *provided that*, if a holder of Claim(s) or Interest(s) submits both a paper Ballot and E-Ballot on account of the same Claim(s) or Interest(s), the E-Ballot shall supersede the paper Ballot, unless the holder receives Bankruptcy Court approval otherwise.

(b)     Whenever a holder casts a Ballot that is properly completed, executed, and timely returned to the Solicitation Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot shall not be counted for voting with respect to the Plan; *provided that*, for the avoidance of doubt, any holder who does not indicate on their Ballot that they opt into granting the releases shall not be a "Releasing Party" under the Plan.

(c)     Whenever a holder casts a Ballot that is properly completed, executed, and timely returned to the Solicitation Agent but indicates both an acceptance and a rejection of the Plan, the Ballot shall not be counted with respect to the Plan.

(d)     Whenever a holder casts a Ballot which indicates a split of their vote(s) to accept or reject the Plan within a particular Class, the Ballot shall not be counted with respect to the Plan.

(e)     The following Ballots shall not be counted for purposes of voting on the Plan:

(i)     Any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

(ii)    Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim or Interest;

(iii)   Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan (*e.g.*, a Voting Class);

(iv)    Any Ballot cast by a person who is not entitled to vote under the Plan, even if such individual holds a Claim or Interest in a Voting Class;

(v)     Any Ballot that does not contain a manual or electronic signature; *provided that* any Ballot cast via E-Ballot, shall be deemed to contain an electronic signature; or

(vi)    Any Ballot transmitted to the Solicitation Agent by means not specifically approved herein, including, but not limited to, by facsimile, electronic transmission, or other electronic means;

(f)     If a party that is entitled to vote has more than one Claim or Interest within the same Class against a Debtor based upon different transactions, said party shall be entitled to one (1)

vote for numerosity purposes in the aggregate dollar amount of all such Claims or the Record Amount of all said Interests.

(g) If no votes to accept or reject the Plan are received with respect to a particular Class that contains holders entitled to vote in such Class (*e.g.*, a Voting Class), such Class shall be deemed to have voted to accept the Plan.

With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, shall be entitled to cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Record Date or (ii) the transferee files by the Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Record Date. In instances where a Claim has been the subject of one or more partial transfers, each holder of a portion of said Claim will be deemed to hold one Claim for numerosity purposes with respect to the Plan.

**2.** *Master Ballot Tabulation Procedures*

The following additional procedures will apply to the tabulation of (i) Fire Victim Master Ballots submitted by Firms with respect to Fire Victim Clients, (ii) Impaired Debt Master Ballots and Impaired Debt Beneficial Owner Ballots, and (iii) Common Interest Master Ballots and Common Interest Beneficial Owner Ballots:

(a) Votes cast by beneficial owners of Impaired Debt Claims or HoldCo Common Interests through a Master Ballot Agent shall be applied against the positions held by such Master Ballot Agent as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Master Ballot Agent, whether pursuant to a Master Ballot or prevalidated Ballots, shall not be counted in excess of the Record Amount of such Impaired Debt Claims or HoldCo Common Interests, as applicable, held by such Master Ballot Agent; *provided that*, the Solicitation Agent may adjust such Record Amount to reflect the amount in accordance with subparagraph (c) below;

(b) To the extent that conflicting votes or "overvotes" are submitted by a Firm or Master Ballot Agent with respect to the Plan, whether pursuant to a Master Ballot or prevalidated Ballots, the Solicitation Agent shall attempt to reconcile discrepancies with the Firm or Master Ballot Agent, as applicable;

(c) To the extent that overvotes on a Master Ballot or prevalidated Ballots with respect to the Plan are not reconcilable prior to the preparation of the Voting Certification (as defined

below), the Solicitation Agent shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or prevalidated Ballots that contained the overvote, but only to the extent of the Master Ballot Agent's position in Impaired Debt Claims or HoldCo Common Interests, as applicable;

(d)     Multiple Master Ballots may be completed by a single Firm or Master Ballot Agent and delivered to the Solicitation Agent. Votes reflected by multiple Master Ballots shall be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots submitted by the same Master Ballot Agent or Firm are inconsistent, the last, properly completed Master Ballot received by the Voting Deadline shall be counted;

(e)     If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s), rather than supersede(s), the earlier Master Ballot(s), the Firm or Master Ballot Agent submitting such Master Ballot shall mark the subsequent Master Ballot(s) as "Supplement" and clearly mark which of the votes reflected thereon are additional votes;

(f)     If both a Direct Fire Claim Ballot and a Master Fire Claim Ballot are submitted with respect to a single Fire Victim Claim, the Direct Fire Claim Ballot received from the holder of the Fire Victim Claim will be the Ballot that is counted regardless of when it is received so long as it is received before the Voting Deadline, and the vote included for such holder in the Master Fire Claim Ballot will not be counted;

(g)     For purposes of tabulating votes with respect to the Plan, each record holder or beneficial owner shall be deemed to have voted their applicable Record Amount; and

(h)     If the same Fire Victim appears on more than one (1) Fire Victim Master Ballot, the Solicitation Agent will attempt to coordinate with the respective Firms to cure the discrepancy; however, if the Firms are unsuccessful in curing the discrepancy, the Solicitation Agent shall count the last, properly-completed Fire Victim Master Ballot received by the Voting Deadline with respect to such Fire Victim Claim.

**3.     *Voting Certification***

In accordance with Bankruptcy Local Rule 3020-1(a) and the Procedures Order, no later than May 22, 2020, the Solicitation Agent will file with the Court a written certification (the "**Voting Certification**") of the amount and number (as applicable) of Allowed Claims and Interests in each Voting Class that vote to accept or reject the Plan, and the Debtors will serve the Voting Certification upon, among others, (a) the Court; (b) the U.S. Trustee; (c) the attorneys for the Creditors Committee, (d) the attorneys for the Tort Claimants Committee; and (e) the attorneys for the Shareholder Proponents.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

The Debtors submit that the foregoing procedures provide for a fair and equitable voting process, are consistent with section 1126 of the Bankruptcy Code, Bankruptcy Local Rule 3020-1, the Procedures Order, and the Scheduling Order, and should be approved by the Court.

## VII. ESTABLISHING PROCEDURES FOR PROVIDING NOTICE OF THE CONFIRMATION HEARING

Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28) days' notice of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. In accordance with Bankruptcy Rules 2002 and 3017(d) and section 1128 of the Bankruptcy Code, the Debtors propose to provide to all known holders of Claims and Interests, simultaneously with the distribution of the Solicitation Packages to those entities entitled thereto, the Confirmation Hearing Notice, substantially in the form annexed hereto as **Exhibit E**, which provides: (a) the Voting Deadline for the submission of Ballots to accept or reject the Plan; (b) May 15, 2020 at 4:00 p.m. as the time fixed pursuant to the Scheduling Order for filing objections to confirmation of the Plan (the "**Plan Confirmation Objection Deadline**"); and (c) the time, date, and place for the Confirmation Hearing.

Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). In addition to mailing the Confirmation Hearing Notice, the Debtors propose to publish the Confirmation Hearing Notice, no later than April 24, 2020 or as soon as reasonably practicable thereafter (the "**Publication Deadline**"), once in each of the newspapers in which the Debtors previously published notice of the Bar Date.[9] Additionally, the Confirmation Hearing Notice will be made available electronically on the Case Website and the Debtors will use reasonable efforts to post the Confirmation Hearing Notice in each of their seventy-five (75) billing centers. The Debtors believe that publication of the Confirmation Hearing Notice as provided herein will provide sufficient notice of the Confirmation Hearing and the Plan Confirmation Objection Deadline to parties who do not otherwise receive notice by mail as provided for in the Proposed Order.

---

[9] *See supra* note 6 above.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Debtors submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing to holders of Claims and Interests, and other parties in interest, and, accordingly, request that the Court deem such notice as adequate under the circumstances.

## VIII. AMENDMENTS

To avoid burdening the Court with additional hearings and saddling the estates with unnecessary and additional costs, the Debtors request that they be authorized to make non-substantive and nonmaterial changes to the Proposed Disclosure Statement, the Plan, and the related solicitation documents (and any exhibits and schedules thereto), including changes to correct typographical and grammatical errors and to make conforming changes among such documents, without further order of the Court.

## IX. NOTICE

Notice of the Motion will be provided as set forth above. The Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein as a sound exercise of the Debtors' business judgement and in the best interests of the estates and such other and further relief as the Court may deem just and appropriate.

Dated: February 19, 2020

WEIL, GOTSHAL & MANGES LLP

KELLER & BENVENUTTI LLP

By: */s/Stephen Karotkin*
    Stephen Karotkin

*Attorneys for Debtors*
*and Debtors in Possession*