DAVID M. FELDMAN (*pro hac vice*)
 dfeldman@gibsondunn.com
MATTHEW K. KELSEY (*pro hac vice*)
 mkelsey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

MATTHEW D. McGILL (*pro hac vice*)
 mmcgill@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

MICHAEL S. NEUMEISTER, SBN 274220
 mneumeister@gibsondunn.com
MICHELLE CHOI, SBN 313557
 mchoi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for the Ad Hoc Committee of
Holders of Trade Claims*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **MEMORANDUM IN SUPPORT OF MOTION OF AD HOC COMMITTEE OF HOLDERS OF TRADE CLAIMS FOR LEAVE TO APPEAL ORDER REGARDING POSTPETITION INTEREST** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ☒ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................................... 3

    A.    THE DEBTORS' BANKRUPTCY FILING. ................................................. 3

    B.    THE DEBTORS' PLAN. ................................................................................ 4

    C.    THE PPI DISPUTE AND DECISION. ........................................................ 5

    D.    SCHEDULE FOR CONFIRMATION OF THE DEBTORS' PLAN. ............. 8

ARGUMENT ................................................................................................................... 9

    I.    THE PPI ORDER IS FINAL AND APPEALABLE AS OF RIGHT ......................... 9

    II.    THE DISTRICT COURT SHOULD EXERCISE JURISDICTION OVER THE APPEAL EVEN IF IT IS INTERLOCUTORY .................................................. 12

    A.    This Appeal Presents a Controlling Question of Law .................................... 12

    B.    There Are Substantial Grounds for Difference of Opinion as to the Validity of the PPI Memorandum and Order .................................................. 14

        1.    There is no controlling Ninth Circuit or Supreme Court decision. ....................................................................................... 14

        2.    The appeal of the PPI Memorandum and Order requires resolution of "conflicting decisions." .................................................. 16

    C.    An Interlocutory Appeal Will Materially Advance the Debtors' Chapter 11 Cases. ................................................................................................. 20

CONCLUSION ............................................................................................................. 22

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 405 N. Bedford Dr. Corp.*,
    778 F.2d 1374 (9th Cir. 1985)...............................................................................10

*Abarca v. Merck & Co., Inc.*,
    2012 WL 137749 (C.D. Cal. Jan. 17, 2012) ......................................................14

*In re Allen*,
    896 F.2d 416 (9th Cir. 1990)...............................................................................10

*In re Bondanelli*,
    2016 WL 3040997 (C.D. Cal. May 26, 2016) ...................................................20

*In re Bonham*,
    229 F.3d 750 (9th Cir. 2000).................................................................................9

*In re Cardelucci*,
    2001 WL 34091272 (9th Cir. Feb. 16, 2001)....................................................15

*Cisneros-Perez v. Gonzales*,
    465 F.3d 386 (9th Cir. 2006)...............................................................................18

*In re Coram Healthcare Corp.*,
    315 B.R. 321 (Bankr. D. Del. 2004) ..............................................................17, 18

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010)...............................................................................14

*Deutsche Bank Nat. Trust Co. v. FDIC*,
    854 F. Supp. 2d 756 (C.D. Cal. 2011)................................................................14

*In re Dow Corning Corp.*,
    456 F.3d 668 (6th Cir. 2006)...............................................................................18

*In re Energy Future Holdings Corp.*,
    540 B.R. 109 (Bankr. D. Del. 2015) ..............................................11, 15, 17, 18, 20

*In re Frontier Properties, Inc.*,
    979 F.2d 1358 (9th Cir. 1992)........................................................................10, 11

*Helman v. Alcoa Global Fasteners, Inc.*,
    2009 WL 2058541 (C.D. Cal. June 16, 2009) ...................................................14

*I.R.S. v. Osborne (In re Osborne)*,
    76 F.3d 306 (9th Cir. 1996)......................................................................14, 15, 16

*Kashani v. Fulton (In re Kashani)*,
    190 B.R. 875 (B.A.P. 9th Cir. 1995)...................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974)...............................................................................12

*Kuenher v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996)................................................................................20

*L & J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.)*,
995 F.2d 940 (9th Cir. 1993)...................................................................2, 3, 17, 18

*In re Mason*,
709 F.2d 1313 (9th Cir. 1983).............................................................................10

*In re McKean*,
2012 WL 3074801 (Bankr. N.D. Cal. July 30, 2012) ...........................................6

*Millender v. Cty. of Los Angeles*,
2007 WL 9718870 (C.D. Cal. May 25, 2007) ....................................................13

*Onink v. Cardelucci (In re Cardelucci)*,
285 F.3d 1231 (9th Cir. 2002)...............................................1, 3, 14, 15, 18

*In re Pacific Atlantic Trading Co.*,
33 F.3d 1064 (9th Cir. 1994)...............................................................................16

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*,
314 F.3d 1070 (9th Cir. 2002)...................................................................2, 3, 17, 18

*In re PPI Enters. (U.S.), Inc.*,
228 B.R. 339 (Bankr. D. Del. 1998) ...........................................................19, 20

*In re PPI Enters. (U.S.), Inc.*,
324 F.3d 197 (3d Cir. 2003)................................................................................19

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
2020 WL 201023, 589 U.S. __ (Jan. 14, 2020) .................................................10

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*,
339 F.3d 782 (9th Cir. 2003)................................................................................9

*State of AZ v. Ideal Basic Indus. (In re Cement Antitrust Litig.)*,
673 F.2d 1020 (9th Cir. 1982)...............................................3, 12, 13, 14, 20

*In re Technical Knockout Graphics, Inc.*,
833 F.2d 797 (9th Cir. 1987)...................................................................2, 9, 10

*In re Tomlan*,
102 B.R. 790 (E.D. Wash. 1989), *aff'd per curiam*, 907 F.2d 114 (9th Cir. 1990).................16

*In re TV, LLC*,
2012 WL 1521633 (B.A.P. 9th Cir. Apr. 30, 2012)..............................................9

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*In re Ultra Petroleum Corp.,*
    943 F.3d 758 (5th Cir. 2019)..................................................................................11, 18

*Waits v. Frito-Lay, Inc.,*
    978 F.2d 1093 (9th Cir. 1992), *abrogated by Lexmark Int'l, Inc. v. Static Control*
    *Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)...............18

**Statutes**

11 U.S.C. § 103(b) ................................................................................................15, 17

11 U.S.C. § 726(a)(5) ......................................................................1, 14, 15, 17, 18, 19

11 U.S.C. § 1124(1) ....................................................................................................13, 19

11 U.S.C. § 1126(f) ....................................................................................................12, 13

11 U.S.C. § 1129(a)(7) ............................................................................................2, 15, 17, 18

11 U.S.C. § 1129(b)(1) ..........................................................................................1, 11, 12, 13

28 U.S.C. § 158(a)(1) ..............................................................................................2, 8, 12

28 U.S.C. § 158(a)(3) ..............................................................................................3, 8, 12

28 U.S.C. § 1292(b) ..................................................................................................12

Cal. Civ. Code § 3289 ............................................................................................2, 6, 11, 17

Fed. R. Bankr. P. 8003 ............................................................................................8, 12

Fed. R. Bankr. P. 8004 ............................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

The Ad Hoc Committee of Holders of Trade Claims (the "Trade Committee")[1] seeks leave from the United States District Court for the Northern District of California (the "District Court") under 28 U.S.C. § 158(a)(3) to appeal the *Interlocutory Order Regarding Postpetition Interest* [D.I. 5669] (the "PPI Order") and related *Memorandum Decision Regarding Postpetition Interest* [D.I. 5226] (the "PPI Memorandum" and, together with the PPI Order, the "PPI Memorandum and Order") entered by the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") in the above-captioned bankruptcy proceedings (the "Chapter 11 Cases") to the extent the District Court determines that the PPI Order is not a final order that may be appealed as of right under 28 U.S.C. § 158(a)(1).

## **PRELIMINARY STATEMENT**

In these large, complex Chapter 11 Cases, the Trade Committee seeks appeal of a discrete legal decision by the Bankruptcy Court that deprives the Debtors' trade creditors of potentially more than $200 million, and sanctions the Debtors' attempt to disenfranchise holders of General Unsecured Claims by rendering them unimpaired under their pending chapter 11 plan, thereby precluding such holders from (a) voting to accept or reject that plan or (b) availing themselves of the protections under Bankruptcy Code section 1129(b). Specifically, the Trade Committee challenges the Bankruptcy Court's PPI Memorandum and Order, which adopt the Debtors' position that their solvent estates need only pay holders of allowed unsecured claims postpetition interest at the Federal Judgment Rate of 2.59%, rather than 10% as required by California law.

The PPI Memorandum and Order are based on a flawed application of the Ninth Circuit's decision in *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231 (9th Cir. 2002), which by its plain language—and under Ninth Circuit standards for *stare decisis*—is limited to the meaning of "the legal rate" as used in section 726(a)(5) of the Bankruptcy Code, which in turn is only applicable in situations where unsecured creditors are ***impaired by*** a chapter 11 plan. Here, the Debtors' Plan ***unimpairs*** General Unsecured Claims, which means that section 726(a)(5) of the Bankruptcy Code is ***not applicable to the treatment of General Unsecured Claims under the Debtors' Plan***, thus rendering

---

[1]  The Trade Committee consists of creditors holding over $308 million in trade claims against the Debtors. *See First Amended Verified Statement of Ad Hoc Committee of Holders of Trade Claims Pursuant to Bankruptcy Rule 2019* [D.I. 5060].

*Cardelucci* inapposite. As set forth below, the PPI Memorandum and Order create an incurable conflict with binding Ninth Circuit precedent (as well as persuasive non-Ninth Circuit precedent), which all require that postpetition interest be paid to unimpaired creditors, such as holders of General Unsecured Claims under the Debtors' Plan, pursuant to state law rights. *See* 11 U.S.C. § 1129(a)(7) (importing Bankruptcy Code section 726(a)(5) only "[w]ith respect to each **impaired** class of claims or interest") (emphasis added); *L & J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.)*, 995 F.2d 940, 942 (9th Cir. 1993) (noting that "'Congress define[d] impairment in the broadest possible terms'" and that "'**any alteration** of the rights constitutes impairment even if the value of the rights is enhanced'") (emphasis added and citations omitted); *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1073 (9th Cir. 2002) (affirming confirmation of a chapter 11 plan that left a prepetition lender's unsecured deficiency claim unimpaired by paying the lender in full, with postpetition interest at the contract rate, and paid other general unsecured creditors postpetition interest at a rate of 10%). Under California law, this means that trade creditors and other holders of General Unsecured Claims are entitled to postpetition interest at their contractual rates or, in the absence of a contractual rate, at the statutory rate of 10% per annum. *See* Cal. Civ. Code § 3289.

Under the Ninth Circuit's "pragmatic approach" to finality in bankruptcy proceedings, the PPI Order is a final order that is appealable as of right. *See In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 799 (9th Cir. 1987); *see also* 28 U.S.C. § 158(a)(1). Under this approach, the Ninth Circuit has recognized final orders in bankruptcy involve issues that are "so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *Id.* That is the case here. The PPI Memorandum and Order definitively resolve the PPI Dispute, subject only to this appeal. There is no question that the PPI Dispute involves a "discrete" issue; the Bankruptcy Court found as much. Indeed, the very fact that this issue is discrete is why the PPI Dispute was litigated months prior to the confirmation hearing. PPI Memorandum at 1; Oct. 23, 2019 Hr'g Tr. at 33:7–10.

If, however, the District Court determines that the PPI Order is not a final order (and it is), the District Court should grant the Trade Committee leave to appeal the PPI Order pursuant to 28 U.S.C.

Gibson, Dunn & Crutcher LLP

§ 158(a)(3). Leave to appeal an interlocutory order should be granted if the District Court determines "(1) that there [is] a controlling question of law, (2) that there [are] substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *State of AZ v. Ideal Basic Indus. (In re Cement Antitrust Litig.)*, 673 F.2d 1020, 1026 (9th Cir. 1982). All factors are satisfied here.

*First*, the Bankruptcy Court entered the PPI Memorandum and Order based only on legal argument, and appeal of the PPI Order will similarly involve exclusively legal issues. Accordingly, prompt resolution of the Trade Committee's appeal of the PPI Order would finally resolve the Bankruptcy Court's determination that, under any plan, creditors are only entitled to postpetition interest at the Federal Judgment Rate, irrespective of their state law rights.

*Second*, the PPI Memorandum and Order provide several "grounds for difference of opinion": (a) the Bankruptcy Court's reliance on *Cardelucci* is based on an improper application of *stare decisis*; (b) the Bankruptcy Court's decision creates an irreconcilable conflict with the Ninth Circuit's decisions in *L & J Anaheim Assocs.* and *Sylmar Plaza*; (c) the PPI Memorandum conflicts with other non-Ninth Circuit decisions expressly rejecting the Bankruptcy Court's holding; and (d) the PPI Memorandum relies on decisions that contradict the Bankruptcy Court's holding. Not only are there "grounds for difference of opinion," the Trade Committee has a substantial likelihood of success on appeal.

*Third*, an immediate appeal will materially advance these Chapter 11 Cases. The Bankruptcy Court, the Debtors, and the Creditor Groups all agreed that the dispute over the proper rate of postpetition interest should be litigated now because this is a "pivotal" or "gating" issue that will impact confirmation. *See, e.g.*, Sept. 24, 2019 Hr'g Tr. at 26:8–13, 26:18–20; Oct. 23, 2019 Hr'g Tr. at 32:10–14. Among other things, the appeal of the PPI Dispute will resolve whether General Unsecured Claims are truly unimpaired under the Debtors' Plan, and as a result, whether they should be entitled to vote to accept or reject that plan. A prompt appeal of the PPI Order will resolve this critical issue.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    THE DEBTORS' BANKRUPTCY FILING.

On January 29, 2019 (the "Petition Date"), PG&E Corporation ("PG&E Corp.") and its primary operating subsidiary, Pacific Gas and Electric Company (the "Utility," and together with PG&E Corp.,

Gibson, Dunn & Crutcher LLP

the "<u>Debtors</u>"), commenced the Chapter 11 Cases in the Bankruptcy Court. According to the Debtors, they commenced these Chapter 11 Cases due to "a confluence of factors resulting from the catastrophic and tragic wildfires that occurred in Northern California in 2017 and 2018, and [the Debtors'] potential liabilities arising therefrom." *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [D.I. 263] ("<u>Wells Decl.</u>") at 3. In addition to potentially billions of dollars of liability arising from the 2017 and 2018 wildfires, the Debtors had "approximately $22 billion in outstanding funded debt obligations" under prepetition lending facilities. *See [Proposed] Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [D.I. 5700] ("<u>Proposed Disclosure Statement</u>") at 6. Further, as of the day prior to the Petition Date, the Debtors' "outstanding trade payables totaled approximately $2.1 billion." Wells Decl. at 11.

The timeline of the Debtors' Chapter 11 Cases and confirmation of a chapter 11 plan is dictated in part by the terms of Assembly Bill 1054 ("<u>AB 1054</u>"), a California statute that, among other things, "established a statewide fund that participating utilities may access to pay for liabilities arising in connecti[on] with future wildfires occurring after July 12, 2019 (the '<u>Go-Forward Wildfire Fund</u>')." Proposed Disclosure Statement at 7. Utility intends to participate in the Go-Forward Wildfire Fund. *Id.* In order to do so, among other things, "the Utility's Chapter 11 Case [must be] resolved pursuant to a plan of reorganization or similar document not subject to stay" by June 30, 2020. *Id.*

### B. THE DEBTORS' PLAN.

On September 9, 2019, the Debtors filed the *Debtors' Joint Chapter 11 Plan of Reorganization* [D.I. 3841] (the "<u>September Plan</u>"). The Debtors, either individually or jointly with certain "Shareholder Proponents," have filed multiple amended or revised versions of a chapter 11 plan, with the Debtors most recently filing the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* [D.I. 5590] (the "<u>Debtors' Plan</u>").[2]

Under the Debtors' Plan, all "General Unsecured Claims,"[3] which include the Debtors' unsecured trade claims, are classified in Classes 4A and 4B. *See* Debtors' Plan §§ 4.4(a), 4.21(a). The

---

[2] *See also* D.I. ¶¶ 3841, 3966, 4563, 5101, 5590.

[3] "General Unsecured Claims" is a defined term under the Debtors' Plan, and generally includes general unsecured claims against the Debtors, except any of the Debtors' claims under prepetition credit facilities, wildfire claims, or any priority or administrative claims. *See* Debtors' Plan § 1.87.

Gibson, Dunn & Crutcher LLP

Debtors' Plan assumes that the Debtors' estates are solvent. As a result, holders of allowed General Unsecured Claims are to be paid in full in cash on the effective date of the Debtors' Plan. *Id.* The Debtors' Plan further provides for payment of postpetition interest accruing on these Claims from the Petition Date through the effective date "at the Federal Judgment Rate," which in the Chapter 11 Cases is calculated at 2.59%. *Id.* § 1.73. Under the Debtors' Plan, General Unsecured Claims are "Unimpaired," and, therefore, are not permitted to vote to accept or reject the Debtors' Plan. *Id.* §§ 4.4(b), 4.21(b); *see also* Proposed Disclosure Statement at 31–32.

### C. THE PPI DISPUTE AND DECISION.

Out of recognition for the need to confirm a chapter 11 plan before the June 30, 2020 deadline under AB 1054, after the filing of the September Plan, the Bankruptcy Court, the Debtors, and other parties began focusing on "discrete" plan-related issues that could be litigated prior to the ultimate hearing on confirmation of the Debtors' Plan. Both the Bankruptcy Court and the Debtors identified one of such issues as the dispute over whether any chapter 11 plan must pay postpetition interest at the Federal Judgment Rate, as the Debtors proposed, or pursuant to state law, as several creditor groups contended. *See, e.g.*, Sept. 24, 2019 Hr'g Tr. at 26:8–20; Oct. 23, 2019 Hr'g Tr. at 32:10–14, 33:1–3 (J. Montali) ("I would like to break the confirmation issues into ***discrete things***, like these, that they are confirmation issues.") (emphasis added); *id.* at 34:5–6 (Debtors' counsel) ("I don't think there's any reason to change the fact that these issues should be addressed now."). In fact, part of the reason for resolving this issue early in the case was to address any appeal of the Bankruptcy Court's decision on postpetition interest early, rather than later potentially after confirmation. *See* Sept. 24, 2019 Hr'g Tr. at 34:5–7 (J. Montali) ("[T]hey might want to take interlocutory appeals if there—or you might want to if there are rulings that you disagree with.").

On October 31, 2019, the Bankruptcy Court entered its *Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues* [D.I. 4540] (the "Scheduling Order"), pursuant to which the Bankruptcy Court scheduled oral argument and pre-argument briefing on "whether the postpetition interest rate applicable to unsecured claims under any chapter 11 plan of reorganization is the Federal Judgment Rate or some other rate, such as the rate of interest under the applicable contract

Gibson, Dunn & Crutcher LLP

and/or other applicable state law" (the "PPI Dispute"). The Scheduling Order further expressly contemplated a potential immediate appeal of any decision on the PPI Dispute:

> When the court does issue the orders on these questions there are several alternatives. First, any aggrieved party may seek interlocutory review under Fed. R. Bankr. P. 8004. Second, the court on its own or upon request of a party, may certify direct appeal under Fed. R. Bankr. P. 8006, as it did earlier in these cases in AP 19-3003. Finally, the court will be able to consider a request for certification under Fed. R. Bankr. P. 7054(b) of the discrete contested matter posed by the issue presented.

Scheduling Order at 6.

In accordance with the Scheduling Order, the parties submitted briefing and, on December 11, 2019, the Bankruptcy Court heard oral argument on the PPI Dispute. Relying heavily on the Ninth Circuit's decision in *Cardelucci*, the Debtors argued that the Federal Judgment Rate is the only appropriate rate in calculating postpetition interest on any allowed unsecured claim in a solvent debtor case under chapter 11 of the Bankruptcy Code. *See* D.I. 4624 at 1 ("*Cardelucci* is dispositive, and the creditors' arguments for higher rates of interest cannot overcome this controlling precedent."); D.I. 4849 ("Debtors' Opposition Brief"). Certain creditor groups (the "Creditors Groups"), including the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Senior Secured Noteholders of Pacific Gas and Electric Company (the "AHC"), and the Trade Committee, argued that postpetition interest on such claims should be paid at either the applicable contract rate or consistent with state law. *See* D.I. 4634 (the "Creditor Group Opening Brief"); D.I. 4855. Specifically, under California law, contract-based claims such as trade claims accrue interest at the contract rate, or in the absence of a contract rate, at the statutory rate of 10%. *See* Cal. Civ. Code § 3289; *In re McKean*, 2012 WL 3074801, at *2 (Bankr. N.D. Cal. July 30, 2012) ("In the absence of a rate set forth in an agreement of the parties, the Court will apply the California state statutory rate of ten percent (10%) per annum to the unpaid debts, as set forth in Cal. Civ. Code § 3289, to the entire debt . . ."); Creditor Group Opening Brief ¶¶ 42–44.

The Creditor Groups' position on postpetition interest was joined by Canyon Capital Advisors LLC [D.I. 4636]. Further, the Ad Hoc Group of Subrogation Claim Holders (the "Ad Hoc Subro Group"), which has entered into a Restructuring Support Agreement (the "Subro RSA") with the Debtors that had not been approved at the time, filed a reservation of rights stating that in the absence

of the Subro RSA being approved, the group "reserve[d] its rights to argue for postpetition interest on the claims of its members at the applicable rate under state law in the context of any plan put forward for confirmation." *See* D.I. 4840 at 1. In other words, the Ad Hoc Subro Group agreed that postpetition interest should accrue at the state law rate as a matter of law, but was not required to press this argument because it had already reached a favorable settlement with the Debtors.

On December 30, 2019, the Bankruptcy Court ruled in its PPI Memorandum that "the Debtors are correct, that *Cardelucci* controls and that the Federal Interest Rate applies to any Plan." PPI Memorandum at 2. The Bankruptcy Court, however, did not immediately enter an order. Instead, the Bankruptcy Court stated that "[b]ecause of the close relationship between the postpetition interest question and the issues presented in the forthcoming Make-Whole dispute, orders disposing of them both at the same time seems appropriate and efficient," and that "[w]hether either or both questions should be certified for direct appeal or [be] treated as final for purposes of Fed. R. Bankr. P. 7054, can be visited later."[4] *Id.* at 17.

On January 27, 2020, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Approving and Authorizing the Debtors to Enter into Restructuring Support Agreement with Consenting Noteholders and Shareholder Proponents, and (II) Granting Related Relief* [D.I. 5519] (the "Noteholder RSA Motion"), seeking approval of a Restructuring Support Agreement the Debtors had entered into with members of the AHC (the "Noteholder RSA"). Under Section 2(a)(i) of the Noteholder RSA,[5] each "Consenting Noteholder" is deemed to "consent to deferral of the entry of a final order on the Bankruptcy Court's decision on the post-petition interest issues to the entry of the Confirmation Order . . ." The Bankruptcy Court set the hearing for approval of the Noteholder RSA Motion on February 4, 2020. In response to Section 2(a)(i), the Trade Committee filed a letter [D.I. 5517], requesting that the Bankruptcy Court

---

[4] The "Make-Whole dispute" was a dispute primarily between the Debtors and the AHC as to whether senior noteholders were entitled to an allowed claim on any make-whole/optional redemption rights under the applicable credit documents. Pursuant to the Scheduling Order, the Bankruptcy Court scheduled briefing and argument for the Make-Whole dispute on a similar, but later, pre-confirmation schedule as the PPI Dispute. Scheduling Order ¶ 7.

[5] The Noteholder RSA is attached as Exhibit A to the Noteholder RSA Motion.

Gibson, Dunn & Crutcher LLP

certify its PPI Memorandum as a final order under Fed. R. Civ. P. 54(b) and for direct appeal to the Ninth Circuit pursuant to 28 U.S.C. § 158(d)(2)(A). On February 3, 2020, the Trade Committee filed a limited objection to the Noteholder RSA Motion [D.I. 5596], contesting the deferral of entry of an order on the PPI Memorandum as contemplated under Section 2(a)(i) of the Noteholder RSA.

On February 4, 2020, during the hearing on the Noteholder RSA Motion, the Bankruptcy Court addressed the timing of entry of the PPI Order. Instead of making findings as to why its ruling on the PPI Dispute is, in fact, interlocutory, the Bankruptcy Court expressed its inclination to enter an interlocutory order in order "to grant the trade creditors' view to enter an order that sustains the debtors' position on . . . postpetition interest" while not "jeopardiz[ing] the RSA either." Feb. 4, 2020 Hr'g Tr. at 42:20–43:12. According to the Bankruptcy Court, entering an interlocutory order would "put[] the burden on [the Trade Committee] to get somebody at the appellate-court level to take it up on the merits." *Id.*

On February 6, 2020, the Bankruptcy Court entered the PPI Order. In the order, the "court conclude[d] that the Debtors are correct, that *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) controls and that the Federal Interest Rate applies to the postpetition treatment of unsecured creditors under any Chapter 11 Plan of Reorganization proposed by Debtors." PPI Order at 2. Pursuant to the order, the Bankruptcy Court left "the question of dealing with an interlocutory order for another court if there is an appeal." *Id.*

As set forth below, the PPI Order is, in fact, a final order under 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8003 and, thus, the Trade Committee appeals from this order as of right. In the alternative, the Trade Committee requests leave to appeal the PPI Order under 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8004.

**D.      SCHEDULE FOR CONFIRMATION OF THE DEBTORS' PLAN.**

On February 6, 2020, the Bankruptcy Court entered its *Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation* [D.I. 5673] (the "Confirmation Scheduling Order"). Pursuant to the Confirmation Scheduling Order, the Bankruptcy Court will hold a hearing for approval of the Debtors' Proposed Disclosure Statement on March 10, 2020. On or before March 31, 2020, the Debtors shall deliver ballots to creditors entitled to vote on the plan. Creditors entitled to vote

Gibson, Dunn &
Crutcher LLP

on the plan must submit their completed ballots by May 15, 2020, with objections to the Debtors' Plan filed on the same date. The Bankruptcy Court has scheduled May 27, 2020 as the first date of the confirmation hearing. As set forth herein, under the Debtors' Plan and the PPI Order, General Unsecured Claims will not have the right to vote for or against the Plan. Further, to the extent actually unimpaired, holders of General Unsecured Claims will not have the ability to avail themselves of the protections of Bankruptcy Code section 1129(b).

**ARGUMENT**

## I.      THE PPI ORDER IS FINAL AND APPEALABLE AS OF RIGHT.

A determination of whether an order is final or interlocutory is jurisdictional and thus can be raised *sua sponte* and reviewed *de novo* by an appellate court. *See In re Bonham*, 229 F.3d 750, 760–61 (9th Cir. 2000) ("A threshold jurisdictional issue is whether the bankruptcy court's order of substantive consolidation and the district court remand order for further proceedings are final and appealable orders pursuant to 28 U.S.C. § 158. We review *de novo* the district court's ruling that a bankruptcy court's decision is not an appealable, final order."); *In re TV, LLC*, 2012 WL 1521633, at *3 (B.A.P. 9th Cir. Apr. 30, 2012) ("Questions of our own jurisdiction, such as whether an order is final, may be raised sua sponte, and are reviewed de novo. . . . Whether a bankruptcy court's decision is final is a question of law reviewed de novo.") (citing *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs),* 339 F.3d 782, 787 (9th Cir. 2003)). In other words, the decision on whether the PPI Order is interlocutory or final ultimately lies with the District Court. The Bankruptcy Court's description of its PPI Order as "interlocutory," without any analysis on whether it is in fact interlocutory or final, is not binding on the District Court and should not impact its review of this issue.

"In bankruptcy proceedings, [the Ninth Circuit Court of Appeals] has cautioned against applying with 'blind adherence' the rules of finality developed under the general grant of appellate jurisdiction contained in 28 U.S.C. § 1291" and instead "has adopted a pragmatic approach to deciding whether a bankruptcy court's order is final, recognizing that 'certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.'" *Technical Knockout Graphics*,

833 F.2d at 800 (quoting *In re Mason*, 709 F.2d 1313, 1316–17 (9th Cir. 1983)); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 2020 WL 201023, 589 U.S. __ (Jan. 14, 2020) ("The ordinary understanding of 'final decision' is not attuned to the distinctive character of bankruptcy litigation."). Thus, courts in the Ninth Circuit have "'adopted a test that emphasizes the need for immediate review, rather than whether the order is technically interlocutory, in determining what is appealable as a final judgment in bankruptcy proceedings.'" *Technical Knockout Graphics*, 833 F.2d at 800 (quoting *In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1377 (9th Cir. 1985)).

Under this "pragmatic approach" to finality, a party may appeal an order as of right where the order: "1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1363 (9th Cir. 1992) (citing *In re Allen*, 896 F.2d 416, 418–19 (9th Cir. 1990)). However, if "'further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review.'" *Technical Knockout Graphics, Inc.*, 833 F.2d at 800 (quoting *405 N. Bedford Dr.*, 778 F.2d at 1377).

The PPI Order clearly satisfies this test for finality and constitutes a final order. The Bankruptcy Court has already determined that the PPI Dispute, although ordinarily addressed in the context of plan confirmation, is a "discrete legal issue" that should be resolved ahead of confirmation. *See* PPI Memorandum at 1 ("On December 11, 2019, the court heard oral argument on the ***discrete legal issue of the applicable postpetition interest*** . . .") (emphasis added); Oct. 23, 2019 Hr'g Tr. at 33:7–10 ("[A]nd of course, we can't know some of the ultimate confirmation issues until we know feasibility and financing, et cetera. But there are ***some other issues that are discrete***.") (emphasis added).

Further, based on the findings in the Bankruptcy Court's PPI Memorandum, there are no further rulings or determinations that the Bankruptcy Court must make that will impact the rate of postpetition interest for creditors under the Debtors' Plan, which is the only chapter 11 plan on file. Specifically, the Bankruptcy Court has ruled that "*Cardelucci* controls and that the Federal Interest Rate applies to any plan." PPI Memorandum at 2. Moreover, the Bankruptcy Court ruled that:

> Because the [Debtors'] Plan leaves the Unsecured Creditors' claims not impaired, there is also no need to dwell on whether or not 'fair and equitable' principles apply. They do not. Unimpaired Creditors, when treated as dictated by the Bankruptcy Code, are not impaired by the Plan. They are conclusively presumed to have accepted the Plan. Section 1126(f). Section 1129(b) is not available to them.

Gibson, Dunn & Crutcher LLP

*Id.* at 16.

Bankruptcy Code section 1129(b) provides that, when a class of impaired claims rejects a chapter 11 plan, the bankruptcy court may confirm that plan over the class's rejection if, among other things, "the plan does not discriminate unfairly, and is fair and equitable . . ." 11 U.S.C. § 1129(b)(1). Other courts have looked to "fair and equitable" considerations to determine the appropriate rate of postpetition interest, holding that the Federal Judgment Rate is not the appropriate rate of interest for postpetition interest in a solvent debtor case. *E.g.*, *In re Energy Future Holdings Corp.*, 540 B.R. 109, 124 (Bankr. D. Del. 2015) ("In effect, the Court holds that the fair and equitable test as applied to unsecured creditors in solvent debtor cases . . . must also be met in solvent debtor cases for such creditor to be unimpaired."); *see also In re Ultra Petroleum Corp.*, 943 F.3d 758, 765 (5th Cir. 2019) ("Our review of the record reveals no reason why the solvent debtor exception could not apply. As other circuits have recognized, 'absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights.'") (citation omitted). However, because the Bankruptcy Court has definitively ruled that postpetition interest under the Debtors' Plan must be paid at the Federal Judgment Rate, and that "[s]ection 1129(b) is not available to" holders of General Unsecured Claims because they are unimpaired under the Debtors' Plan, the Bankruptcy Court has foreclosed any further facts or arguments that may impact the treatment of General Unsecured Claims with respect to the proper rate of postpetition interest.

Finally, the Bankruptcy Court's PPI Order "seriously affect[s] substantive rights[.]" *See Frontier Props.*, 979 F.2d at 1363. *First*, the Trade Committee asserts that postpetition interest should be paid pursuant to state law, which in the case of California law requires payment of postpetition interest at the statutory rate of 10% in the absence of a contractual rate. Cal. Civ. Code § 3289. Under the Debtors' Plan, postpetition interest will be paid at the rate of 2.59%. If the Trade Committee prevails on appeal, the Debtors' Plan may pay over $200 million[6] *less* than the amount to which trade creditors and other holders of General Unsecured Claims are entitled. *Second*, the Debtors assert that by paying postpetition interest on General Unsecured Claims at the Federal Judgment Rate, General Unsecured

---

[6] This figure assumes a claims pool of $2.1 billion based on the Debtors' outstanding trade payables on the Petition Date according to the Wells Decl. *See* Wells Decl. at 11.

Gibson, Dunn & Crutcher LLP

Claims are unimpaired. Debtors' Plan, §§ 4.4(b), 4.21(b). As unimpaired creditors, holders of General Unsecured Claims are effectively disenfranchised from asserting substantive rights that are otherwise provided under the Bankruptcy Code to creditors in connection with plan confirmation. For example, unimpaired creditors are not permitted to vote on a chapter 11 plan. *See* 11 U.S.C. § 1126(f). Further, unimpaired creditors do not get the protections of section 1129(b) even if the applicable class contests entry of the plan. *See* 11 U.S.C. § 1129(b)(1). Accordingly, the effect of the PPI Order is that holders of General Unsecured Claims are potentially deprived of over $200 million in distributions they are entitled to under the Bankruptcy Code, but are also deprived of critical tools to challenge their treatment under the Debtors' Plan.

The PPI Order certainly satisfies the Ninth Circuit's "pragmatic approach" to finality with respect to bankruptcy orders. Accordingly, the Trade Committee is entitled to appeal the PPI Order as a final order, as of right, under 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8003.

## II. THE DISTRICT COURT SHOULD EXERCISE JURISDICTION OVER THE APPEAL EVEN IF IT IS INTERLOCUTORY.

Even if the PPI Order is not final, the District Court should grant "leave" to consider the Trade Committee's appeal pursuant to 28 U.S.C. § 158(a)(3). *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 882 (B.A.P. 9th Cir. 1995). When considering whether to grant leave to appeal under 28 U.S.C. § 158(a)(3), courts generally rely on the standard used under 28 U.S.C. § 1292(b). *Id.* at 882 ("review[ing] 28 U.S.C. § 1292(b) to determine if leave should be granted"). The certification requirements under 28 U.S.C. § 1292(b), and therefore 28 U.S.C. § 158(a)(3), are: "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Cement Antitrust Litig.*, 673 F.2d at 1026. As explained below, all three factors are satisfied here.

### A. This Appeal Presents a Controlling Question of Law.

In the Ninth Circuit, "[c]ourts have refused to interpret the phrase ['controlling question of law'] so narrowly as to require that reversal of the [lower] court's order terminate the litigation," but have recognized that "'every order which, if erroneous, would be reversible error on final appeal'" is a controlling question of law. *Cement Antitrust Litig.*, 673 F.2d at 1026 (quoting *Katz v. Carte Blanche*

Gibson, Dunn & Crutcher LLP

*Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). Where this standard would be "of little guidance," however, "all that must be shown in order for a question of law to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation[.]" *Id.* In other words, "the rule in the Ninth Circuit is that an issue need not be dispositive of the lawsuit in order to be 'controlling,' but it cannot be 'collateral to the basic issues of the case.'" *Millender v. Cty. of Los Angeles*, 2007 WL 9718870, at *3 (C.D. Cal. May 25, 2007) (quoting *Cement Antitrust Litig.*, 673 F.2d at 1026–27).

Here, the questions to be presented on appeal *are* the "basic issues of the case" and thus by their nature controlling. The Trade Committee's appeal will present at least the following question of law: whether, in a solvent debtor chapter 11 case, unimpaired classes of unsecured claims are entitled to postpetition interest at the Federal Judgment Rate or at rates consistent with state law. This is a pure legal question, the erroneous disposition of which would constitute reversible error on appeal of the PPI Order.

Not only will the disposition of these questions on appeal resolve the PPI Dispute, it will also materially affect confirmation of the Debtors' Plan. The PPI Dispute dictates whether General Unsecured Claims are in fact unimpaired under the Debtors' Plan. If holders of General Unsecured Claims are entitled to postpetition interest consistent with state law, rather than limited to the Federal Judgment Rate, then they would in fact be impaired by the Debtors' Plan because the Debtors' Plan will be depriving holders of General Unsecured Claims of their "legal, equitable, and contractual rights" to postpetition interest at potentially higher rates. *See* 11 U.S.C. § 1124(1). As impaired creditors, holders of General Unsecured Claims have the right to vote to accept or reject the Debtors' Plan, and further to avail themselves of Bankruptcy Code section 1129(b), which precludes unfair discrimination and requires "fair and equitable" treatment with respect to any class of impaired creditors that rejects a chapter 11 plan. *See* 11 U.S.C. §§ 1126(f), 1129(b)(1). A reversal of the PPI Order would result in General Unsecured Claims being impaired under the Debtors' Plan, as the Debtors' Plan only provides for payment of postpetition interest at the Federal Judgment Rate, and the Debtors have made clear that they do not intend to reserve any cash in the event the PPI Order is reversed on appeal. *See* Jan. 29, 2020 (AM) Hr'g Tr. at 102:17–21. Accordingly, resolution of this appeal could materially affect confirmation of the Debtors' Plan.

Gibson, Dunn &
Crutcher LLP

Under Ninth Circuit precedent, the Trade Committee's appeal of the PPI Order clearly involves controlling questions of law, both with respect to the discrete PPI Dispute and with plan confirmation, which merit the District Court's exercise of jurisdiction over this appeal.

**B.** **There Are Substantial Grounds for Difference of Opinion as to the Validity of the PPI Memorandum and Order.**

Substantial ground for difference of opinion exists when existing case law conflicts with the lower court's "construction or application" of case law or statute, and when the "controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). There can also be substantial ground for difference of opinion even if there are no directly conflicting cases, so long as the appeal "involves an issue over which reasonable judges might differ." *Cement Antitrust Litig.*, 673 F.2d at 1028; *accord Deutsche Bank Nat. Trust Co. v. FDIC*, 854 F. Supp. 2d 756, 769 (C.D. Cal. 2011) ("Even where no conflicting case law exists, however, it is still possible to establish a substantial ground for a difference of opinion."). The "primary inquiry is 'the strength of the arguments in opposition to the challenged ruling.'" *Abarca v. Merck & Co.*, *Inc.,* 2012 WL 137749, at *7 (C.D. Cal. Jan. 17, 2012) (quoting *Helman v. Alcoa Global Fasteners, Inc.*, 2009 WL 2058541, at *5 (C.D. Cal. June 16, 2009)).

**1.** **There is no controlling Ninth Circuit or Supreme Court decision.**

The primary issue on appeal will be whether the Ninth Circuit's decision in *Cardelucci* is *stare decisis* with respect to the treatment of postpetition interest under the Debtors' Plan, as the Bankruptcy Court held. *See* PPI Memorandum at 5–6. The Bankruptcy Court ruled that the Ninth Circuit in *Cardelucci* "did not narrow the application of its holding" regarding the application of postpetition interest to Bankruptcy Code section 726(a)(5), and therefore held that postpetition interest must be paid at the Federal Judgment Rate under all circumstances in a solvent debtor case. *Id.* at 6–7. This is an improper application of the doctrine of *stare decisis* and of the Ninth Circuit's holding in *Cardelucci*.

The Ninth Circuit has made clear that, "under the doctrine of *stare decisis* a case is important only for what it decides—for the 'what,' not for the 'why,' and not for the 'how.' Insofar as precedent is concerned, *stare decisis* is important only for the decision, ***for the detailed legal consequence following a detailed set of facts***." *I.R.S. v. Osborne (In re Osborne)*, 76 F.3d 306, 309 (9th Cir. 1996) (emphasis added). According to the Bankruptcy Court, "[i]n *Cardelucci*, the Ninth Circuit framed the

Gibson, Dunn & Crutcher LLP

14

issue before it as follows: This appeal presents the narrow but important issue of whether **such** postpetition interest is to be calculated using the (federal judgment rate) or is determined by the parties' contract or state law." PPI Memorandum at 6 (quoting *Cardelucci*, 285 F.3d at 1233) (emphasis added). The "such" interest that the Ninth Circuit considered is found immediately before the sentence the Bankruptcy Court cites in its PPI Memorandum: the petitioners' appeal of the "district court's application of the federal interest rate as defined by 28 U.S.C. § 1961(a) to an award of postpetition interest **pursuant to 11 U.S.C. § 726(a)(5)**." *Cardelucci*, 285 F.3d at 1233 (emphasis added).

In *Cardelucci*, the objecting creditors were **impaired** under the debtor's plan, and, after the objecting creditors **voted to accept the debtor's plan**, the parties narrowed the issue on appeal to the proper rate of interest required under Bankruptcy Code section 726(a)(5).[7] Unlike *Cardelucci*, section 726(a)(5) does not determine the appropriate rate of postpetition interest under the Debtors' Plan. Section 726(a)(5) is only applicable in chapter 11 cases through the best interests of creditors test under section 1129(a)(7). *See* 11 U.S.C. § 103(b) ("Subchapter I and II of chapter 7 of this title apply only in a case under such chapter."); *id.* at § 1129(a)(7) (importing Bankruptcy Code section 726(a)(5) only "[w]ith respect to each **impaired** class of claims or interest") (emphasis added). Section 1129(a)(7) (and by import, section 726(a)(5)) only applies to impaired creditors. *Energy Future Holdings*, 540 B.R. at 123 ("[N]either sections 1129(b) nor section 1129(a)(7) apply to unimpaired creditors."). Under Ninth Circuit precedent, *Cardelucci* is only binding for the "detailed legal consequence following a detailed set of facts," which is the appropriate rate of interest under section 726(a)(5) for impaired claims that voted to accept a chapter 11 plan. *See Osborne*, 76 F.3d at 309. Because the Debtors' Plan unimpairs General Unsecured Claims, section 726(a)(5) and the Ninth Circuit's application of section 726(a)(5) are not applicable under the instant facts.

The Ninth Circuit's decision in *Osborne* is instructive on how *stare decisis* should operate and demonstrates that *Cardelucci* is not *stare decisis* with respect to the appropriate rate of postpetition

---

[7] *See In re Cardelucci*, Appellee's Opening Brief, 2001 WL 34091272, at 17 (9th Cir. Feb. 16, 2001) ("At the confirmation hearing, the [creditor] elected to rely solely on § 726(a)(5) as made applicable by § 1129(a)(7)(ii) and, subject to a reservation of rights to appeal the bankruptcy court's determination on that issue, voted to accept the plan. Accordingly, the only issue preserved for appeal is the meaning of 'interest at the legal rate' as used in § 726(a)(5). That meaning should not be distorted simply because the [creditor] failed to consider the potential benefit of forcing a cramdown under § 1129(b).").

Gibson, Dunn & Crutcher LLP

interest for general unsecured claims that are unimpaired under a chapter 11 plan. In *Osborne*, the Ninth Circuit addressed whether in a chapter 13 case, an untimely proof of claim warranted disallowance of the claim pursuant to Fed. R. Bankr. P. 3002(c). According to the court, this issue turned on whether it was governed by the Ninth Circuit's panel decision in *In re Tomlan*, 102 B.R. 790 (E.D. Wash. 1989), *aff'd per curiam*, 907 F.2d 114 (9th Cir. 1990) or a later panel decision in *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064 (9th Cir. 1994). *Tomlan* was a chapter 13 case in which the Ninth Circuit upheld a bankruptcy court's disallowance of a claim as untimely pursuant to Fed. R. Bankr. P. 3002(c), whereas *Pacific Atlantic Trading Co.* was a chapter 7 case in which the Ninth Circuit appeared to unequivocally hold that "Rule 3002(c) does not disallow a late claim. It simply divides claims into two categories: timely and late." *Pacific Atlantic Trading Co.*, 33 F.3d at 1067. The *Osborne* court held that *Tomlan* was the applicable precedent, notwithstanding the seemingly broad holding in *Pacific Atlantic Trading Co.*, primarily based on the fact that *Tomlan* involved an "identical factual scenario" of a "Chapter 13 proceeding in which an IRS claim was not filed in accordance with the time limits established by Rule 3002." *Osborne*, 76 F.3d at 310. The court reconciled the apparently conflicting holdings in *Tomlan* and *Pacific Atlantic Trading Co.* based on the "fundamental distinction between Chapter 13 and Chapter 7 timeliness requirements." *Id.* at 307.

In light of *Osborne*, *Cardelucci* cannot be a "controlling decision" that governs the appropriate rate of interest under the Debtors' Plan. *Cardelucci* only addresses the narrow issue of the appropriate rate of interest under section 726(a)(5) for impaired claims that voted to accept a chapter 11 plan, as articulated by the Ninth Circuit in its decision. Accordingly, the Bankruptcy Court erred in concluding that "*Cardelucci* is unequivocal and articulates several reasons for broad application of its holding ***despite the recognition of the narrow issues presented* . . .**"[8]

### 2. The appeal of the PPI Memorandum and Order requires resolution of "conflicting decisions."

The Creditor Groups set forth in substantial detail the legal bases for payment of postpetition interest at state law rates when a claim is unimpaired under a plan. *See* D.I. 4634, 4855. The Trade Committee incorporates these arguments by reference, and the precedent cited therein provides

---

[8] PPI Memorandum at 9.

Gibson, Dunn &
Crutcher LLP

substantial "conflicting decisions" relative to the PPI Memorandum, which the District Court should address on appeal. This is particularly true in three respects.

*First*, the PPI Memorandum conflicts with the Ninth Circuit's decisions in *L & J Anaheim Assocs.* and *Sylmar Plaza*. In *L & J Anaheim*, the Ninth Circuit read Bankruptcy Code section 1124 to mean that "'Congress define[d] impairment in the broadest possible terms'" and that "'***any alteration*** of the rights constitutes impairment even if the value of the rights is enhanced.'" *L & J Anaheim Assocs.*, 995 F.2d at 942 (emphasis added and citations omitted). Outside of bankruptcy, the Debtors' trade creditors would be entitled to interest on their claims against the Debtors pursuant to the rate set forth in their contract, or at California's statutory rate of 10%. Cal. Civ. Code § 3289. The Debtors' Plan alters this right by setting postpetition interest on the claims of trade creditors at the Federal Judgment Rate. This alteration of the trade creditors' rights cannot arise from the Bankruptcy Code, because section 726(a)(5) thereof is inapplicable to unimpaired classes of claims. *See* 11 U.S.C. § 103(b) ("Subchapter I and II of chapter 7 of this title apply only in a case under such chapter."); 11 U.S.C. § 1129(a)(7) (providing that, "[w]ith respect to each ***impaired*** class of claims or interest," a holder of a claim or interest must receive "not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title . . .") (emphasis added); *In re Coram Healthcare Corp.*, 315 B.R. 321, 346 (Bankr. D. Del. 2004) ("Section 1129(a)(7) requires a plan of reorganization to provide non-consenting ***impaired*** creditors with at least as much as they would receive if the debtor was liquidated in chapter 7.") (emphasis added); *Energy Future Holdings*, 540 B.R. at 123 ("[N]either sections 1129(b) nor section 1129(a)(7) apply to unimpaired creditors.").

Consistent with the Ninth Circuit's broad interpretation of impairment as set forth in *L & J Anaheim*, in *Sylmar Plaza*, the Ninth Circuit affirmed confirmation of a chapter 11 plan that left a prepetition lender's unsecured deficiency claim unimpaired by paying the lender in full, with postpetition interest at the contract rate, and paid other general unsecured creditors postpetition interest at a rate of 10%. *Sylmar Plaza*, 314 F.3d at 1073. Thus, payment of postpetition interest on unimpaired claims at the contract rate, or otherwise consistent with state law, is supported by the Ninth Circuit's decision in *Sylmar* and not barred by *Cardelucci*, so long as the holding in *Cardelucci* is appropriately limited to the context of evaluating the appropriate rate of postpetition interest on impaired claims

Gibson, Dunn & Crutcher LLP

under Bankruptcy Code sections 726(a)(5) and 1129(a)(7) for classes of creditors that voted to accept the chapter 11 plan. *See Cisneros-Perez v. Gonzales*, 465 F.3d 386, 392 (9th Cir. 2006) ("[W]e are required to reconcile prior precedents if we can do so.") (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) ("Where circuit precedent appears in conflict, we must attempt to reconcile it; if we cannot do so consideration en banc is appropriate.")). The PPI Memorandum conflicts with the Ninth Circuit's decisions in *L & J Anaheim* and *Sylmar Plaza* by holding that the Debtors' Plan does not impair General Unsecured Claims while only paying postpetition interest at the Federal Judgment Rate.

   *Second*, even after the Ninth Circuit issued its decision in *Cardelucci*, courts have held that postpetition interest on unsecured claims in a solvent debtor case need not accrue at the Federal Judgment Rate. *See, e.g.*, *Ultra Petroleum*, 943 F.3d at 765 (remanding determination on appropriate rate of postpetition interest to bankruptcy court and stating that the court's "review of the record reveals no reason why the solvent debtor exception could not apply. As other circuits have recognized, 'absent compelling equitable consideration, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights.' . . . That might be the case here.") (quoting *In re Dow Corning Corp.*, 456 F.3d 668, 679 (6th Cir. 2006)); *Dow Corning*, 456 F.3d at 679–80 (establishing that "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights" and concluding, "like the other courts to have considered this issue, that there is a presumption that default interest should be paid to unsecured claim holders in a solvent debtor case"); *Energy Future Holdings*, 540 B.R. at 123–24 (holding that "the rate of interest may be the contract rate or such other rate as the Court deems appropriate" and that "the legal rate of interest under section 726(a) is the Federal judgment rate but the applicability of section 726(a) is limited to its incorporation in section 1129(a)(7) and does not create a general rule establishing the appropriate rate of post-petition interest"); *Coram Healthcare*, 315 B.R. at 346 ("[W]e are not convinced that Congress intended to supplant a party's contractual right to interest in all circumstances under chapter 11. . . . Thus, we are not persuaded by the Equity Committee that section 1129(b) requires the use of the federal judgment rate for post-petition interest to be paid under a chapter 11 plan of

Gibson, Dunn &
Crutcher LLP

18

reorganization. Instead, we conclude that the specific facts of each case will determine what rate of interest is 'fair and equitable.'") (citations omitted). In other words, substantial case law directly conflicts with the Bankruptcy Court's assertion that postpetition interest in a solvent debtor case must be paid at the Federal Judgment Rate.

*Third*, in support of its PPI Memorandum, the Bankruptcy Court found that the Debtors' proposed payment of postpetition interest at the Federal Judgment Rate does not violate Bankruptcy Code section 1124(1), which provides that a "class of claims or interests is impaired under a plan unless . . . **the plan** . . . leaves unaltered the legal, equitable, and contractual rights" of a creditor. 11 U.S.C. § 1124(1) (emphasis added); *see also* PPI Memorandum at 14. According to the Bankruptcy Court, the Bankruptcy Code, specifically section 726(a)(5), "limits [unsecured creditors] to the Federal Interest Rate," not the Debtors' Plan, purporting to render section 1124(1) inapplicable. PPI Memorandum at 14. In support of its decision, the Bankruptcy Court relied primarily on the Third Circuit's decision in *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197 (3d Cir. 2003). The Bankruptcy Court's PPI Memorandum in fact directly contradicts *PPI Enters*.

In *PPI Enters.*, the Third Circuit affirmed a Delaware bankruptcy court decision that found that the debtor's chapter 11 plan, which provided for payment of a landlord's claim in an amount capped under Bankruptcy Code section 502(b)(6) **and postpetition interest at the "statutory or case law determined interest rate**," did not impermissibly impair the landlord's claim even though the landlord did not receive payment for the full amount of its claim outside of bankruptcy. *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 354 (Bankr. D. Del. 1998). Both the bankruptcy court and the Third Circuit found that section 1124(1) only prohibits a plan from impairing a claim, and the landlord's treatment was the result of the Bankruptcy Code, not any specific provision of the debtor's plan. *Id.* at 353–54; *PPI Enters.*, 324 F.3d at 204. On the issue of postpetition interest, the bankruptcy court found:

> Pursuant to § 1124(1), PPI's plan "leaves unaltered the legal, equitable, and contractual rights to which [Solow's] claim . . . entitles the holder of such claim." As noted above, Solow's claim must first have its entitlement limited by the application of § 502(b)(6). What remains is a simple monetary damage entitlement. Absent this bankruptcy case, Solow's entitlement is limited to a monetary damage award plus interest; he has no contractual rights or claims which PPI must preserve or cure. Solow cannot obtain enforcement of the various terms of the Lease— the Lease obligations are history. ***Absent this bankruptcy case, Solow's sole entitlement would be a money award for breach of contract and, presumably, that award would bear a statutory or case law determined interest rate from the date of the breach to the date of the judgment,***

Gibson, Dunn &
Crutcher LLP

19

*and be entitled to postjudgment interest at the same rate or at a different rate, depending upon whether the judgment is that of a state court or a federal court. Subject to the § 502(b)(6) cap, that is exactly what the Plan proposes for Solow's claim. Thus, I conclude that Solow's entitlement is unaltered by the Plan and his claim is therefore unimpaired by the Plan.*

*PPI Enters.*, 228 B.R. at 354[9] (emphasis added). In other words, in order to find that the landlord's claim was unimpaired under the proposed plan, the bankruptcy court found that the plan properly paid postpetition interest at the applicable state law rate. This is exactly opposite the ruling reached by the Bankruptcy Court, and the exact result the Trade Committee advocates with respect to its appeal of the PPI Memorandum.

The Trade Committee respectfully submits that the PPI Memorandum conflicts with decisions of other courts that have addressed this issue and with Ninth Circuit precedent. These "conflicting decisions" should be addressed on appeal.

### C.   An Interlocutory Appeal Will Materially Advance the Debtors' Chapter 11 Cases.

An immediate appeal of the PPI Order will "materially advance the ultimate termination of the litigation." *See, e.g.*, *Cement Antitrust Litig.*, 673 F.2d at 1026. "This factor is met when resolution of the controlling question of law 'may appreciably shorten the time, effort, or expense of conducting a lawsuit.'" *In re Bondanelli*, 2016 WL 3040997, at *3 (C.D. Cal. May 26, 2016) (quoting *Cement Antitrust Litig.*, 673 F.2d at 1027). This factor furthers the principle that interlocutory appeals are appropriate if they will prevent "needless expense and delay . . ." *See Kuenher v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).

There should be no dispute that an immediate appeal of the PPI Order will advance the progress of these Chapter 11 Cases. In fact, the Bankruptcy Court, the Debtors, and the Creditor Groups all agreed that the dispute over the proper rate of postpetition interest should be litigated now because this is a "pivotal" or "gating" issue that will impact confirmation. *See, e.g.*, Sept. 24, 2019 Hr'g Tr. at 26:8–13 (J. Montali) ("But do you think it would be helpful and efficient . . . to deal with some of these pivotal legal questions at a time when there could be rulings but there also could be challenges later on by others."), *id.* at 26:18–20 (Debtors' counsel) ("Again, we have no objection to teeing up . . . the two

---

[9]  Notably, the United States Bankruptcy Court for the District of Delaware relied on the bankruptcy court's findings in *PPI Enters.* in determining that the Bankruptcy Code does not exclude payment of "post-petition interest at the contract rate" in a solvent debtor case. *Energy Future Holdings Corp.*, 540 B.R. at 122–23.

Gibson, Dunn &
Crutcher LLP

issues [that] relate to the federal judgment rate of interest and the make whole . . ."); Oct. 23, 2019 Hr'g Tr. at 32:10–14 (recognizing that the PPI Dispute is a "gating issue[] that should be addressed early in the process").

Both the Debtors and the AHC—who previously joined with the Trade Committee in advocating for postpetition interest calculated pursuant to state law—now seek to stall a final resolution of the PPI Dispute by precluding any appeal of the PPI Order until after entry of an order confirming a chapter 11 plan. In fact, the Debtors and AHC sought to preclude entry of any order on the PPI Decision at all, blocking any ability, either as of right or with leave, to appeal the Bankruptcy Court's PPI Decision until after confirmation. Jan. 29, 2020 (AM) Hr'g Tr. at 103:24–25 (Debtors' counsel) ("Right. This is no longer a gating issue in view of the settlement with the bondholders."); Feb. 4, 2020 Hr'g Tr. at 52:6–10 (AHC's counsel) ("[T]here should not be a final order on this issue until confirmation, but I think also an interlocutory order also has the potential to cause some problems."). The Debtors and the AHC assert that the Trade Committee, and any other party that determines to appeal the PPI Decision, should wait until the Bankruptcy Court has the chance to enter an order confirming a chapter 11 plan that, in settlement of the AHC's own challenges in the PPI Dispute, provides for, among other things, the (i) issuance of almost $11.95 billion of new notes, (ii) reinstatement of "Utility Reinstated Senior Note Claims," *which are presumed to receive postpetition interest at the applicable contract rate*, (iii) payment of $63 million in debt placement fees and reimbursement of up to $36 million in professionals' fees and expenses, and (iv) a potential for members of the AHC to participate in up to $2.0 billion of the backstop to acquire equity in the reorganized Debtors. Noteholder RSA Motion at 8.

The AHC has negotiated a favorable settlement for its constituents, but that settlement does not provide any value for trade creditors or any other holder of General Unsecured Claims. While the Noteholder RSA precludes the AHC from prosecuting any appeal of the PPI Order, that is the bargain they struck. That bargain was not agreed to by the Trade Committee or any other holder of General Unsecured Claims. Simply put, the fact that the AHC struck a deal that pays their constituents handsomely in settlement of, among other things, *their* position in the PPI Dispute does not provide

Gibson, Dunn & Crutcher LLP

any ground to delay or otherwise prejudice the Trade Committee's right to seek appeal of the PPI Order on a prompt basis.

As explained above, the PPI Order does not only dictate trade creditors' rights to potentially more than $200 million, it sanctions the Debtors' approach under the Debtors' Plan to preclude holders of General Unsecured Claims from voting to accept or reject the Debtors' Plan, even though the plan deprives holders of General Unsecured Claims of their state law rights. Further, based on the PPI Memorandum, holders of General Unsecured Claims will not be able to avail themselves of Bankruptcy Code section 1129(b) in connection with the confirmation process. This concern is compounded by the fact that the Debtors do not intend to reserve for the amount in dispute with respect to the PPI Dispute and this appeal.

The District Court should not permit the Debtors, the AHC, or any other party to block the Trade Committee's right to remedy the PPI Order through appeal, only because the Trade Committee and other holders of General Unsecured Claims have not had the blessing of being selected by the Debtors as being worthy of settlement discussion. In the absence of settlement, the Trade Committee should be afforded the opportunity to protect the substantive rights of trade creditors through an immediate appeal of the PPI Order.

## <u>CONCLUSION</u>

For the reasons set forth above, the District Court should determine that the PPI Order is a final order that may be appealed as of right or, in the alternative, grant the Trade Committee leave to appeal the PPI Order.

Dated: February 20, 2020

**GIBSON, DUNN & CRUTCHER LLP**

By: <u>/s/ *Michael S. Neumeister*</u>
David M. Feldman (*pro hac vice*)
Matthew D. McGill (*pro hac vice*)
Matthew K. Kelsey (*pro hac vice*)
Michael S. Neumeister
Michelle Choi

*Attorneys for the Ad Hoc Committee of Holders of Trade Claim*

Gibson, Dunn & Crutcher LLP