Entered on Docket
February 25, 2020
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: February 25, 2020

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Bankruptcy Case |
| | ) No. 19-30088-DM |
| PG&E CORPORATION, | ) |
| | ) Chapter 11 |
|    - and - | ) |
| | ) Jointly Administered |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| ☐ Affects PG&E Corporation | ) |
| ☐ Affects Pacific Gas and Electric Company | ) |
| ☒ Affects both Debtors | ) |
| | ) |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | ) |

## MEMORANDUM DECISION REGARDING MOTION FOR RELIEF FROM STAY

Todd Hearn ("Hearn") moved for relief from the automatic stay on November 20, 2019 to pursue his employment claims in the Napa County Superior Court. Debtors filed an opposition, and the matter was heard on December 17, 2019. Following that hearing, the parties filed further briefing on the issue and the matter was submitted on January 14, 2020. For the reasons stated below, the court will grant the motion and allow Hearn to pursue his state court action.

-1-

**Background**

Hearn worked as a lineman for Debtors until Debtors removed him from work in 2018 to investigate alleged timekeeping misconduct. After an investigation, Debtors terminated Hearn on January 22, 2019, for violations of the Employee Code of Conduct. Debtors then filed for bankruptcy on January 29, 2019. In his proposed state court complaint, Hearn alleges that he was terminated in retaliation for raising complaints regarding Debtors' safety practices, and that this violates California's whistleblower statutes.[1]

Following Hearn's termination, the International Brotherhood of Electrical Workers filed a grievance pursuant to procedures found in the applicable Collective Bargaining Agreement, which agreement covers wages, hours, and working conditions ("CBA"). The filed grievance alleges that Hearn was terminated "without just and sufficient cause." Pacheco Decl. ¶ 6 (dkt. #5239-1). The grievance does not include allegations of whistleblower retaliation or violations of the California Labor Code. *Id.* ¶ 7. The CBA contains five steps for dispute resolution, with the last step being binding arbitration. An Arbitration Board then has the discretion to issue an award that binds the parties. Here, the grievance process is at the end of the second step and will be forwarded to the third step (fact finding). Campos Decl. ¶ 11 (dkt. #5098). If Hearn prevails, he could be reinstated and awarded lost wages, but general or punitive damages will not be available. Pacheco Decl. ¶ 12.

**Standard**

A bankruptcy court shall lift the automatic stay for cause, which is not defined in the Bankruptcy Code but is decided on a case-by-case basis. *See* 11 U.S.C. § 362(d)(1); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). To determine whether cause exists, courts often use the twelve factors set forth in *In re Curtis*, 40 B.R. 795, 800 (Bankr. D.Utah 1984) (the "*Curtis* factors"), which are as follows

---

[1] Specifically, Hearn alleges that Debtors unsafely installed 'TripSavers,' which are devices used to automatically de-energize power lines when a problem is detected and re-energize them when the problem is cleared. According to the proposed complaint, the 'TripSavers' eliminated the need for Debtors' employees to physically travel to the location of a problem on a power line. The proposed complaint also states that Debtors improperly and haphazardly installed these devices. Hearn also alleges that Debtors improperly downgraded repairs orders for malfunctioning equipment. *See* Costin Decl., Ex. A (dkt. #4820-2).

(excluding the factors irrelevant to this proceeding): whether the relief will result in a partial or complete resolution of the issues; the lack of any connection with or interference with the bankruptcy case; whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; the interest of judicial economy and the expeditious and economical determination of litigation for the parties; whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and the impact of the stay on the parties and the "balance of hurt." *See also (Kronemyer v. Am. Contractors Indemn. Co. ( In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.").

**Analysis**

(1) Whether the CBA Mandates Denial

Debtors preliminarily argued that Hearn should not be permitted to file his state court complaint in part due to the terms of the CBA, which they claim compels Hearn to pursue his claim through the grievance process briefly laid out above. (Dkt. #5095, p. 11).[2] After discussion of this point and some confusion at the hearing, the court invited further briefing on this issue. Hearn's supplemental brief provides authority for the proposition that a collective bargaining agreement does not compel a party to arbitrate statutory claims unless they are explicitly waived. *See Carmago v. California Portland Cement Company*, 86 Cal. App. 4th 995, 1018 (2001) (federal claims of a union member could only be resolved by arbitration if the agreement to do so in the collective bargaining agreement was clear and unmistakable); *see also Vasquez v. Superior Court*, 80 Cal. App. 4th 430, 434 (2000) (citing *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998) for the conclusion that a requirement to arbitrate statutory claims "must be particularly clear" and that "[a] union-negotiated waiver of

---

[2] Debtors argue, "[n]otably, the CBA compels [Hearn] to pursue his claims solely through the grievance process."

employees' statutory rights to a judicial forum for claims of employment discrimination must be " 'clear and unmistakable.' ").

Debtors' supplemental brief provides little on this point—in fact, Debtors concede that Hearn will be unable to bring his whistleblower claims in the arbitration and do not provide evidence to show that the CBA explicitly waives state whistleblower protections. Instead Debtors argue that lifting the stay is unnecessary and duplicative. The court will address that argument below.

As Debtors appear to concede part of this point and provide little in opposition, and Hearn has provided compelling authority in support, the court concludes that the CBA in this case does not compel Hearn to pursue these claims through the grievance process.

(2) Whether the Lawsuit is Preempted by Federal Law

Debtors also argue that Hearn's whistleblower claims may be preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). This issue is more properly litigated in state court rather than preliminarily dealt with in the context of this motion. Whether or not the lawsuit is preempted is an issue for the state court to decide if the complaint is filed there. Nevertheless, as Debtors assert that this possibility may provide grounds for denial, the court will address the possibility of preemption.

Per Section 301 of the LMRA, federal courts have jurisdiction over claims that arise out of labor contracts. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). For the first step in determining whether preemption applies, courts determine whether the asserted cause of action "involves a right of action conferred upon an employee by virtue of state law, not by a [collective bargaining agreement]." *Id.* If the right exists solely as a result of the bargaining agreement, the analysis ends there, but if the right exists independently of the agreement, then the court moves on to the second step to consider whether the cause of action substantially depends on analysis of that agreement. *Id.* If it is deemed dependent, then the claim is preempted. *Id.*

To determine whether the claim is grounded in state law or the CBA, the court considers its legal character. *See id.* at 1060. Per the draft complaint, the claims allege unlawful retaliation under California Labor Code §§ 1102.5 and 6310 and wrongful demotion. A

-4-

preliminary review indicates that these claims do not involve the portions of the CBA submitted to this court, which involve termination for just cause and not whistleblower retaliation as alleged in the draft complaint. Debtors will likely litigate the preemption issue if and when the state court complaint is filed. The court declines to step into the shoes of that court by deciding whether preemption applies now. The possibility is not sufficient to warrant denial of this motion.

(3) The *Curtis* Factors

Applying the relevant *Curtis* factors, cause exists to grant relief from stay. Relief from stay will allow complete resolution of Hearn's issues through the state court process. Although state court is not a specialized tribunal for retaliation cases, the court acknowledges that the state court is suited to hear state law claims, but does not weigh this factor significantly in its decision.

Debtors assert that the second factor, the lack of any connection/interference with the bankruptcy case, weighs in their favor because the proposed lawsuit would overlap with the ongoing grievance process and Debtors would have to commit further resources to adjudicate similar issues in state court. Debtors also claim that granting relief from stay will invite future, similar, requests from individual plaintiffs. Relatedly, Debtors claim that the twelfth factor, the impact of the stay on the parties and the "balance of hurt," weighs heavily in their favor, asserting that Hearn is free to continue the grievance process if his motion is denied, and that granting of the motion will interfere with their reorganization at this critical time. However, as stated above, the grievance process does not deal with Hearn's statutory claims. Further, this dispute is unrelated to the wildfires that precipitated this bankruptcy and it is best left for resolution without regard to the bankruptcy. Hearn will also have to expend resources to move forward, but the court prefers to allow Hearn to choose between awaiting conclusion of the grievance proceeding or to pursue state court remedies. In addition, while the court does not invite a flood of individual plaintiffs bringing relief from stay motions, it is not prepared to deny this motion due to that possibility. As such, these factors weigh in favor of Hearn.

Similarly, Debtors argue that the tenth factor, the interests of judicial economy, is not met because the grievance procedure and proposed lawsuit address the same questions. The court is not persuaded by this argument: the grievance procedures and state court lawsuit may involve similar facts, but they bring different causes of action under separate authorities.

The eleventh factor, whether the foreign proceedings have progressed to the point where the parties are prepared for trial, weighs in favor of Debtors. The state court litigation has yet to be filed and consequently the parties are nowhere near being prepared for trial. However, this factor, by itself, is insufficient to outweigh the other factors.

**Conclusion**

Because the court weighs the applicable *Curtis* factors in Hearn's favor, the court exercises its discretion and GRANTS Hearn's motion for relief from stay. Counsel for Hearn should serve and upload an appropriate order.

**\*\*\* END OF MEMORANDUM \*\*\***