MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
KATHY QUON BRYANT, ESQ., CA Bar #213156
44 Montgomery St., Ste. 1010
San Francisco, CA 94104
Tel: (415) 362-7500
Fax: (415) 362-7515
Email: mmeyers@meyerslawgroup.com
       kquonbryant@meyerslawgroup.com

Attorneys for Kayla Ruhnke, and E.R., a Minor,
Administrative Creditors

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>· Affects PG&E Corporation<br>· Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br>*All papers shall be filed in the Lead Case,*<br><br>*No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case – Jointly Administered)<br><br>Date:    March 25, 2020<br>Time:   10:00 a.m.<br>Place:  U.S. Bankruptcy Court<br>           450 Golden Gate Ave., 16th Fl.<br>           Ctrm. 17<br>           San Francisco, CA<br>Judge:  Hon. Dennis Montali |

**MOTION OF KAYLA RUHNKE AND E.R., A MINOR, FOR DETERMINATION THAT THE AUTOMATIC STAY IS INAPPLICABLE, OR ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY**

## TABLE OF CONTENTS

I. STATEMENT OF FACTS ................................................................................................5

II. RELIEF REQUESTED....................................................................................................7

III. DISCUSSION ..................................................................................................................7

    A. The Automatic Stay Is Inapplicable To the Ruhnkes' Intended Filing. ................7

    B. To the Extent That the Automatic Stay Applies, Relief From Stay Is Warranted..................................................................................................................9

        1. Resolution of the Issues ...............................................................................11

        2. No Interference with the Bankruptcy Case.................................................11

        3. Whether a Specialized Tribunal has the Expertise to Hear Such Cases ..............................................................................................................12

        4. Whether the Insurance Carrier has Assumed Full Financial Responsibility ................................................................................................13

        5. Whether Litigation in Another Forum Would Prejudice Other Creditors..........................................................................................................13

        6. The Interests of Judicial Economy and the Expeditious Litigation............................................................................................................13

        7. The Impact of the Stay on the Parties and the Balance of Hurt..................14

    C. Waiver Of The 14-Day Stay Is Appropriate ..........................................................15

IV. CONCLUSION................................................................................................................15

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

# TABLE OF AUTHORITIES

**Cases**

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) ...........................................................................................................................................10

*DeCastro v. Rowe*, 223 Cal.App.2d 547, 553, 36 Cal.Rptr. 53 (1st Dist.) ..........................................12

*Erman v. Lox Equipment Co.*, 142 B.R. 905 (N.D.Cal. 1992)................................................. 7, 8, 9

*In re American Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D.Cal. 2015)...............................12, 14

*In re Curtis*, 40 B.R. 795, 799 (Bankr. Utah 1984) ........................................................7, 10, 11, 13, 14

*In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)......................................................................10

*Kronemeyer v. American Contractors Indemn. Co. (In re Kronemeyer)*, 405 B.R. 915, 921 (9th Cir. B.A.P. 2009) ..................................................................................................................................... 11

*Pettibone Corp. v. Ramirez (In Re Pettibone Corp.)*, 90 B.R. 918 (Bankr. N.D.Ill. 1988)............7, 8, 9

*Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.)*, 311 B.R. 551, 556 (Bankr. C.D.Cal. 2004)................................................................................................10, 11

**Federal Statutes**

11 U.S.C. § 362(a) ................................................................................................5, 7, 8, 9, 15

11 U.S.C. § 362(a)(1)..........................................................................................................7, 8

11 U.S.C. § 362(d) ................................................................................................................. 9

11 U.S.C. § 362(d)(1) .......................................................................................................9, 10

11 U.S.C. § 503(b)(1)(A) .......................................................................................................5

11 U.S.C. § 1107 .................................................................................................................... 5

11 U.S.C. § 1108....................................................................................................................5

28 U.S.C. § 157(b)(5) ..........................................................................................................12

**Federal Rules**

Fed. R. Bankr. P. Rule 4001(a)(1) .......................................................................................15

Fed. R. Bankr. P. Rule 4001(a)(3) ................................................................................ 5, 7, 15

**State Statutes**

Cal. Code Civ. Proc. § 36(b)...........................................................................................6, 13

Cal. Code Civ. Proc. § 36(f) ...............................................................................................13

Cal. Code Civ. Proc. § 592 ..................................................................................................................12

**Other Authorities**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-44(1977), 1978 U.S. Code Cong. & Admin.News, p. 6300..................................................................................................................................................7

Cal. Const., Art. I, § 7 ......................................................................................................................12

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Creditors KAYLA RUHNKE ("Mrs. Ruhnke") and E.R., her minor son ("E.R.," together with Mrs. Ruhnke, the "Ruhnkes"), hereby move the above-captioned Court for an order: (1) determining that the automatic stay is inapplicable to their initiation and prosecution of postpetition tort claims, which they seek to liquidate in the San Francisco Superior Court (the "State Court"); or, alternatively, (2) terminating the automatic stay of 11 U.S.C. § 362(a) (this "Motion"), applicable herein to the chapter 11 case of PG&E CORPORATION and PACIFIC GAS AND ELECTRIC COMPANY (collectively, the "Debtors"), in order to allow the Ruhnkes to take such actions; and (3) waiving the 14-day stay of enforcement, as provided in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Notably, through this Motion, the Ruhnkes only seek authority to liquidate their claims against the Debtors, and do not seek to enforce their claims against the Debtors or their respective estates.[1]

In support of this Motion, the Ruhnkes respectfully represents as follow:

## I.     STATEMENT OF FACTS

The record of the Court, together with the declarations of Kayla Ruhnke (the "Ruhnke Declaration") and Jonathan Gertler (the "Gertler Declaration"), establish the following facts:

1.     On January 29, 2019 (the "Petition Date"), the Debtors filed voluntary petitions initiating the above-captioned chapter 11 cases, now jointly administered.  The Debtors have continued in possession of their estates, and have continued to operate and manage their businesses, as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, no trustee having been appointed.

2.     Mrs. Ruhnke is the widow of Logan Ruhnke, and E.R. is their minor son, who is only one year old.  At all relevant times, Mrs. Ruhnke was the lawfully married wife of decedent Logan Ruhnke, and E.R. was the natural and custodial son of decedent Logan Ruhnke.

3.     Prior to July 2019, in the City and County of San Francisco, California, debtor PACIFIC GAS AND ELECTRIC COMPANY ("PG&E") entered into contractual arrangements for a

---

[1] Separately, the Ruhnkes have filed a request for allowance of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A).  To the extent allowed as an administrative expense claim, the Damages Claim (as defined *infra*) will be addressed under the terms of any chapter 11 plan of reorganization that is ultimately confirmed in these cases.

large fire reconstruction projects in Northern California. This included contracting with safety and electrical contractors, Quanta Services, Inc. and its division PAR Electrical division, and Atlas Services, Inc., respectively, and others, to perform various electrical construction and construction project safety work on projects in northern California.

4. As part of the aforementioned contractual arrangements, PG&E assumed control of the construction sites, set safety rules and mandated safety practices, hired and supervised safety consultants, and otherwise participated actively and controlled the project sites, including the site where Mr. Ruhnke was employed by Quanta Services, Inc. dba PAR Electrical at the time of his death.

5. PG&E so negligently and carelessly controlled the subject projects, including but not limited to the contractors and their work, the premises, the safety practices and the materials, that on or about July 22, 2019, Mr. Ruhnke fell to his death while working on the subject projects.

6. Mr. Ruhnke was the family's primary wage earner, and young E.R., who is only a year old, will grow up with no independent memory of his father. Mrs. Ruhnke, a young widow, is now left to care for E.R. on her own.

7. In the wake of Mr. Ruhnke's tragic death, the Ruhnkes intend to file a complaint for wrongful death based upon negligence and strict product liability, naming, *inter alia*, the Debtors, Atlas Services, Inc., A.B. Chance Co. and possibly others (the "Complaint") in the San Francisco Superior Court (the "State Court"). The Ruhnkes will assert their right to a jury trial in the State Court in this wrongful death case.

8. The Ruhnkes' counsel in the State Court case estimates that the case could be ready for trial in approximately late 2021. Given E.R.'s young age, under California state law, the case is eligible for trial preference pursuant to Cal. Code Civ. Proc. § 36(b).

9. By way of the Complaint, the Ruhnkes will seek an amount exceeding $5 million in damages (the "Damages") against the defendants, including the Debtors, based on their economic and non-economic losses. The Damages are the basis of the administrative expense priority claim which the Ruhnkes assert herein against the Debtors (the "Damages Claim").

///

## II. RELIEF REQUESTED

By this Motion, the Ruhnkes seek an order of the Court providing the following relief:

A. Determining that the automatic stay of 11 U.S.C. § 362(a) in effect in the Debtors' chapter 11 cases is inapplicable to the Ruhnkes' proposed filing of the Complaint, and thereafter, prosecuting and liquidating the Damages Claim against the Debtors, for the reasons set forth below;

B. Alternatively, to the extent that the automatic stay is in effect, terminating the automatic stay of 11 U.S.C. § 362(a) in order to allow the filing and prosecution of the Complaint, and to permit the Ruhnkes to prosecute and liquidate the Damages Claim; and

C. Waiving the 14-day stay of enforcement, as provided in Rule 4001(a)(3) of the Bankruptcy Rules.

## III. DISCUSSION

**A. The Automatic Stay Is Inapplicable To the Ruhnkes' Intended Filing.**

A bankruptcy petition operates automatically as a stay against "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1).

The converse is also true: The automatic stay does not affect actions that could not have been commenced prior to the Petition Date, such as liquidation of postpetition claims. *Erman v. Lox Equipment Co.*, 142 B.R. 905 (N.D.Cal. 1992); *Pettibone Corp. v. Ramirez (In Re Pettibone Corp.)*, 90 B.R. 918 (Bankr. N.D.Ill. 1988). Moreover, "Generally, proceedings . . . involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay." *In re Curtis*, 40 B.R. 795, 799 (Bankr. Utah 1984) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-44(1977), 1978 U.S. Code Cong. & Admin.News, p. 6300.)).

For example, in *Erman*, shareholders of an entity which had purchased a manufacturing and repair facility from the debtor postpetition, filed suit to recover environmental clean-up [CERCLA] damages against the debtor. *Id*. at 906. In response, the debtor moved to dismiss the action on the ground that it was brought in violation of the automatic stay. *Id.* The court denied the debtor's

motion to dismiss in its entirety, finding the automatic stay inapplicable to the plaintiff's action. *Id*. at 907 – 908.

As an initial matter, examining the language of Section 362(a)(1) itself, the court observed that, "Clearly, this action could not have been commenced against RTC [the debtor] prior to the filing of its bankruptcy petition in February of 1987, because the Livermore Facility was not sold to Union Rebar [the postpetition asset purchaser] until two months later in April of 1987." *Id.* at 907. Thus, whether the automatic stay applied was dependent on whether the court found that the CERCLA claim arose against the debtor prepetition. *Id.* In examining when plaintiff's CERCLA claim arose for bankruptcy purposes, the court found that the plaintiff's claim arose postpetition when the debtor transferred the facility, and not prepetition when the environmental problems occurred. *Id.* Accordingly, the automatic stay did not apply to the plaintiff's action for damages against the debtor. *Id.*

Likewise, in *Pettibone*, the court determined that the automatic stay did not bar a tort claimant's civil action where the tort claim arose against the debtor postpetition. *Id.* at 932. In *Pettibone*, prepetition, the debtor manufactured and sold a forklift which caused serious injuries to an individual who was an employee of the party who had purchased the forklift from the debtor. *Id.* at 920. The individual suffered the injuries postpetition and then filed suit in the District Court to recover against the debtor for his injuries. *Id.* The debtor, which was still operating in chapter 11 as a debtor-in-possession, commenced an adversary proceeding to obtain an injunction requiring the injured employee to cease prosecuting his civil action in the District Court on the ground that it violated the automatic stay of Section 362(a). *Id.* at 919.

To determine whether the automatic stay applied, the *Pettibone* court first analyzed whether the individual's tort claim arose before the commencement of the debtor's bankruptcy case, even though the individual's cause of action had not yet accrued under nonbankruptcy law. *Id.* at 923. After reviewing authorities which dealt with unaccrued tort claims, the court concluded that "[I]f a tort claimant whose employer had purchased a defective product pre-petition is exposed only post-petition to that product and sustains bodily injury only after filing of the manufacturer's bankruptcy, the claimant's bankruptcy claim arises post-petition." *Id*. at 932.

As the court noted, "There is no relationship at all between a tort claimant and a debtor until the claimant is at least exposed to the debtor's defective product. A post-petition tort claim cannot be presumed to relate to a pre-petition relationship that did not actually exist. . . . Consequently, where the claimant is only exposed to and injured by the debtor's product post-petition he has no existing claim as of the petition date; in that case the claim can arise only post-petition." *Id*. (citations omitted). Accordingly, the court found that as of the debtor's petition date, the injured individual had no claim against the debtor under either bankruptcy or nonbankruptcy law. *Id*. It followed that the Section 362(a) automatic stay did not bar the individual's civil action. *Id.* at 933.

In the case at bar, like *Erman* and *Pettibone*, the automatic stay in the Debtors' case is inapplicable to the Ruhnkes' Damages Claim, because the claim arose postpetition. The Debtors have been operating in chapter 11 since January 29, 2019. Even assuming Mr. Ruhnke's employer entered into contractual agreements with PG&E prepetition, the Ruhnkes could not have filed the Damages Claim prepetition because Mr. Ruhnke was tragically killed postpetition on or about July 22, 2019 when he was working on projects negligently and carelessly controlled by PG&E. Accordingly, the automatic stay is inapplicable to the Ruhnkes' intended filing of the Complaint and their subsequent litigation in the State Court as they seek to liquidate the Damages Claim.

**B.      To the Extent That the Automatic Stay Applies, Relief From Stay Is Warranted.**

While the Ruhnkes have demonstrated above that the automatic stay is inapplicable to their Damages Claim, to the extent that the Court finds otherwise, the Ruhnkes respectfully submit that relief from the stay should be granted because cause exists pursuant to 11 U.S.C. § 362(d)(1).

Section 362(d) describes the circumstances under which relief from the automatic stay imposed under subsection (a) may be granted, and provides the following in relevant part:

> (d)      On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1)      for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1). "'Cause' has no clear definition and is determined on a case-by-case basis [.]" *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)).

"[C]ourts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial." *Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.)*, 311 B.R. 551, 556 (Bankr. C.D.Cal. 2004) (citation omitted). To determine whether the stay should be lifted to allow a creditor to continue pending litigation in a non-bankruptcy forum, courts consider twelve non-exclusive factors, known as the *Curtis* factors:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12. The impact of the stay on the parties and the "balance of hurt,"

*Id*. at 559. (citation omitted). Not all twelve *Curtis* factors are relevant in every case, and courts are not required to give each factor equal weight in making its determination. *Id*. at 560. "Among factors appropriate to consider in determining whether relief from the automatic stay should be

granted to allow state court proceedings to continue are considerations of judicial economy and the expertise of the state court, . . . as well as prejudice to the parties and whether exclusively bankruptcy issues are involved[.]" *Kronemeyer v. American Contractors Indemn. Co. (In re Kronemeyer)*, 405 B.R. 915, 921 (9th Cir. B.A.P. 2009) (citations omitted).

"The burden of proof on a motion to modify the automatic stay is a shifting one." *Plumberex*, *supra*, at 557 (citation omitted). The movant seeking relief from the stay has the initial burden to establish a *prima facie* case that cause exists for relief under Sec. 362(d)(1), and once established, the burden shifts to the debtor to show that relief from the stay is unwarranted. *Id.*

Here, the Ruhnkes meet their burden warranting relief from the automatic stay. As demonstrated below, on balance, the relevant *Curtis* factors weigh in their favor, and in turn, support granting relief from stay to file and litigate the Complaint against the Debtors in order to liquidate the Damages Claim in State Court.

### 1. Resolution of the Issues

The relief sought by the Ruhnkes will result in a complete resolution of the issues, and therefore this first factor weighs in granting them relief from stay. The State Court will be able to completely determine the Debtors' liability to the Ruhnkes for Mr. Ruhnke's tragic death, and fully liquidate the Damages Claim. Moreover, since additional non-debtor defendants (who are not subject to this Court's jurisdiction) will necessarily be named in the Complaint, the Debtors' absence in the proposed State Court action creates the risk of incomplete resolution of the issues.

### 2. No Interference with the Bankruptcy Case

The second *Curtis* factor weighs in the Ruhnkes' favor as well, because initiation and prosecution of the Damages Claim in the State Court will not interfere with the Debtors' bankruptcy case. Unlike relief from stay motions brought by other tort claimants in the Debtors' case, the Damages Claim does not involve prepetition tort claims. Rather, the Damages Claim arose postpetition while the Debtors were operating in the ordinary course during their respective chapter 11 cases. In fact, resolution of the Damages Claim, through the filing of the Complaint, is necessary to resolution of an administrative claim that must be paid in full through confirmation of the Debtors'

plan, and therefore rather than disruptive of the chapter 11 process, the relief sought herein will be supportive of a timely conclusion of the chapter 11 cases.

Moreover, the issues to be litigated in the State Court relate to the Debtors' negligent and careless control of the subject projects, and whether the Debtors should be held liable for its actions on negligence and/or strict liability theories. These issues do not involve bankruptcy law, do not interfere with the Debtors' chapter 11 plan confirmation process, and are within the State Court's expertise. As such, the litigation has no connection to any issues involved in the Debtors' bankruptcy cases. Thus, this second factor weighs in the Ruhnkes' favor.

### 3. Whether a Specialized Tribunal has the Expertise to Hear Such Cases

The Damages Claim involves California state tort law issues such as negligence and strict liability, and thus, it is the State Court which has the expertise to hear the Ruhnkes' case. *See In re American Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D.Cal. 2015) (Texas state court had expertise to hear and decide issues under Texas state law).

Additionally, as the Proposed Complaint asserts a cause of action for wrongful death, the Ruhnkes have the right to a jury trial under California state law, which they intend to exercise. "It is beyond dispute that the parties to an action for wrongful death have a right to trial by jury." *DeCastro v. Rowe*, 223 Cal.App.2d 547, 553, 36 Cal.Rptr. 53 (1st Dist.) (citing Cal. Const., art. I, § 7; Cal. Code Civ. Proc. § 592).[2] However, this Court, as a bankruptcy court, cannot preside over jury trials in actions involving personal injury or wrongful death claims because bankruptcy courts have no jurisdiction to determine such claims. 28 U.S.C. § 157(b)(5).[3] In particular, given this limitation, this factor weighs heavily in favor of lifting the stay to allow the Ruhnkes to proceed in State Court where they may have their case tried by a jury.

///

---

[2] Cal. Code Civ. Proc. § 592 states, "In actions for the recovery of specific, real, or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries, an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this Code. Where in these cases there are issues both of law and fact, the issue of law must be first disposed of. In other cases, issues of fact must be tried by the Court, subject to the its power to order any such issue to be tried by a jury, or to be referred to a referee, as provided in this Code."

[3] 28 U.S.C. § 157(b)(5) states, "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

### 4. Whether the Insurance Carrier has Assumed Full Financial Responsibility

Since discovery has not commenced yet, the Ruhnkes and their counsel do not know whether the Debtors' insurance carrier has assumed full financial responsibility for defending the State Court action which the Ruhnkes propose to commence. This fifth factor is therefore neutral.

### 5. Whether Litigation in Another Forum Would Prejudice Other Creditors

The seventh *Curtis* factor weighs in the Ruhnkes' favor where litigating in the State Court will not prejudice the interests of other creditors, the creditors' committee and other interested parties. As postpetition creditors, the Ruhnkes' Damages Claim is distinct from, and has priority over, the interests of the Debtors' prepetition creditors. Litigating the Damages Claim, and liquidating its amount, will not delay or diminish the rights of prepetition creditors, insofar as the Damages Claim must be resolved prior to payments to prepetition creditors in any event.

### 6. The Interests of Judicial Economy and the Expeditious Litigation

In this case, the interests of judicial economy and the expeditious and economical determination of the litigation weigh in favor of granting the Ruhnkes' requested relief. While the Ruhnkes have not yet filed the Complaint to commence the litigation in State Court, judicial economy would be best served by allowing the Ruhnkes' wrongful death case to go forward in State Court, to conserve this Court's resources, which are largely being devoted to bankruptcy law issues in the Debtors' chapter 11 cases.

Moreover, while the Ruhnkes' State Court counsel estimates that the case could be ready for trial in approximately late 2021, given E.R.'s young age, under California state law, the case is eligible for trial preference pursuant to Cal. Code Civ. Proc. § 36(b). As provided for in Sec. 36(b), "A civil action to recover damages for wrongful death or personal injury shall be entitled to preference upon the motion of any party to the action who is under 14 years of age unless the court finds that the party does not have a substantial interest in the case as a whole." *Id*. Thus, if the Ruhnkes elect to bring a motion for preference and it is granted by the State Court, trial could be set as early as 120 days from the granting of the preference motion, resulting in an expeditious determination of the Damages Claim. Cal. Code Civ. Proc. § 36(f).

The Damages Claim must be paid in full in connection with the confirmation of a plan. Therefore, it is most economic and expeditious to begin the resolution of the Damages Claim as quickly as possible, in a forum in which the litigation can be expedited, and allowing the Ruhnkes to file the Complaint in the State Court without delay will benefit that process.

### 7. The Impact of the Stay on the Parties and the Balance of Hurt

In analyzing the final *Curtis* factor, "courts balance the hardships as between the movant and the debtor." *American Spectrum Realty*, *supra* at 742. Here, this factor also weighs in favor of granting the Ruhnkes relief from the stay, because not doing so would leave them without any potential recourse against the Debtors for Mr. Ruhnke's tragic death. Mr. Ruhnke was the family's main wage earner, and as a result of his passing, Mrs. Ruhnke is now left to raise and provide for their one year old son on her own.

As discussed above, the Ruhnkes intend to name additional non-debtor co-defendants in the Proposed Complaint, and the State Court will have jurisdiction over those co-defendants, which this Court lacks. If the Debtors are not joined as defendants in the Proposed Complaint, the non-debtor co-defendants may defend against the negligence and strict liability claims by asserting that the Debtors are solely liable for Mr. Ruhnke's tragic death, potentially allowing all defendants to escape liability, leaving the Ruhnkes without any recovery. The significant prejudice that the Ruhnkes would suffer if the stay is not lifted is thus, readily apparent.

In contrast, the Debtors will suffer little or no hardship if the stay is lifted. Even assuming that the Damages Claim were to be litigated in this Court, the Debtors would likely incur the same expense (if any, given the likelihood of insurance coverage) in defending against the Ruhnkes as they would in the State Court, and as a result, there would be no cost savings to the Debtors. Also, defending locally against the Ruhnkes in San Francisco Superior Court will not force the Debtors to incur additional costs as would be required in a remote venue. Lastly, lifting the stay will not distract the Debtors from their efforts to confirm a chapter 11 plan of reorganization where the amount of the Damages Claim is relatively minor in comparison to other tort claims at issue in the Debtors' cases, where the litigation will likely be defended by outside counsel and insurance counsel, not by the Debtors' bankruptcy counsel, and where the Damages Claim arose postpetition and must be

-14-

Case: 19-30088   Doc# 5962   Filed: 02/28/20   Entered: 02/28/20 13:53:31   Page 14 of 15

31921.DOC 20152

addressed as an administrative expense priority claim in any event.

**C.     Waiver Of The 14-Day Stay Is Appropriate**

Finally, Rule 4001(a)(3) of the Bankruptcy Rules provides that "An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Ruhnkes respectfully request that the Court waive the stay requirement so as to allow them to immediately file the Complaint in the State Court and begin liquidating the Damages Claim.

## IV.     CONCLUSION

Based upon all of the foregoing, the Ruhnkes respectfully request that the Court grant this Motion, and enter an order providing the following relief:

A.     Determining that the automatic stay of 11 U.S.C. § 362(a) in effect in the Debtors' chapter 11 cases is inapplicable to the Ruhnkes' proposed filing of the Complaint, and thereafter, prosecuting and liquidating the Damages Claim against the Debtors, for the reasons set forth below;

B.     Alternatively, to the extent that the automatic stay is in effect, terminating the automatic stay of 11 U.S.C. § 362(a) in order to allow the filing and prosecution of the Complaint, and to permit the Ruhnkes to prosecute and liquidate the Damages Claim; and

C.     Waiving the 14-day stay of enforcement, as provided in Rule 4001(a)(3) of the Bankruptcy Rules.

DATED: February 28, 2020

              MEYERS LAW GROUP, P.C.

              By     /s/ Merle C. Meyers
                Merle C. Meyers, Esq.
                Attorneys for Kayla Ruhnke and E.R.,
                a Minor, Administrative Creditors