Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

<table>
<tr><td>

**In re:**

**PG&E CORPORATION**

   **-and-**

**PACIFIC GAS AND ELECTRIC COMPANY,**
                      **Debtors.**

☐ Affects PG&E Corporation

☐ Affects Pacific Gas and Electric Company

■ Affects both Debtors

*All papers shall be filed in the Lead Case, No. 19-30088 (DM)*

</td><td>

Bankruptcy Case
No. 19-30088 (DM)

Chapter 11
(Lead Case)
(Jointly Administered)

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' MOTION FOR STANDING TO PROSECUTE CLAIMS OF THE DEBTORS' ESTATES**

**Hearing**
**Date:**     **April 7, 2020**
**Time:**     **10:00 a.m. (Pacific Time)**
**Place:**    **Courtroom 17**
              **450 Golden Gate Ave., 16th Fl.**
              **San Francisco, CA 94102**

**Objection Deadline: March 25, 2020**
**Reply Deadline: March 31, 2020**

</td></tr>
</table>

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Comm. of Tort Litigants v. Catholic Diocese of Spokane*,
    2006 U.S. Dist. LEXIS 6025, 2006 WL 211792 (E.D. Wash. January 24, 2006) ................. 16

*Comm. of Tort Litigants v. Catholic Diocese of Spokane (In re Catholic Bishop of Spokane)*,
    329 B.R. 304 (Bankr. E.D. Wash. 2005) ........................................................ 16

*Cottonwood P'ship, L.L.P. v. Kivisto (In re SemCrude L.P.)*,
    2012 U.S. Dist. LEXIS 163236 (D. Del. November 15, 2012) ............................ 16

*Fairholme Funds, Inc. v. United States*,
    146 Fed. Cl. 17, 2019 U.S. Claims LEXIS 1957 (2019) .................................... 11

*Fox v. Picard (In re Madoff)*,
    848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81 (2d Cir. 2014) ......................... 17

*Hamilton v. Allen*,
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ............................................................. 11

*J. I. Case Co. v. Borak*,
    377 U.S. 426, 84 S. Ct. 1555, 12 L. Ed. 2d 423 (1964) ...................................... 15

*Jones v. H. F. Ahmanson & Co.*,
    1 Cal.3d 93 (1969) ....................................................................................... 11

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) ............................... 10, 11

*Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*,
    207 B.R. 899 (9th Cir. BAP 1997) ................................................................... 9

*New York City Employees' Ret. Sys. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010) ....................................................................... 15

*Pareto v. FDIC*,
    139 F.3d 696 (9th Cir. 1998) ................................................................ *passim*

*Schuster v. Gardner*,
    127 Cal.App.4th 305 (2005) ............................................ 11, 12, 13, 16

*Sciabacucchi v. Liberty Broadband Corp.*,
  2018 Del. Ch. LEXIS 252, 2018 WL 3599997 (Del. Ch. July 26, 2018) .............................. 15

*Seaplace Shipping Ltd. v. Parekh (In re Parmetex, Inc.)*,
  199 F.3d 1029 (9th Cir. 1999)........................................................................................ 9

*Starr Int'l Co. v. United States*,
  856 F.3d 953 (Fed. Cir. 2017) .............................................................................. 10, 15

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) ......................................................................................... 13

*Williams v. McGreevey (In re Touch America Holdings, Inc.)*,
  401 B.R. 107 (Bankr. D. Del. 2009) ........................................................... 5, 14, 15

**Statutes**

11 U.S.C. § 105....................................................................................................... 3

11 U.S.C. § 541............................................................................................... 3, 9, 16

11 U.S.C. § 1103..................................................................................................... 3

11 U.S.C. § 1106(a) ............................................................................................ 3, 9

28 U.S.C. § 157....................................................................................................... 2

28 U.S.C. §157(b) .................................................................................................. 3

28 U.S.C. § 1334..................................................................................................... 2

28 U.S.C. § 1408..................................................................................................... 3

28 U.S.C. § 1409..................................................................................................... 3

Federal Securities Laws ..................................................................................... 13

Securities and Exchange Act of 1934 Section 14(a) ...................................... 5

**Other Authorities**

Fed. R. Bankr. P. 2002 ........................................................................................ 17

Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2004) ¶ 6:604 ....................... 11

Local Bankruptcy Rule 5011-1(a)....................................................................... 2

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*,
  General Order 24................................................................................................ 2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The Official Committee of Tort Claimants (the "**TCC**") submits this motion ("**Motion**"), as creditor in the above-captioned chapter 11 cases (the "**Cases**"), pursuant to sections 105(a), 541, 1103 and 1106(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), to grant the TCC standing to file and prosecute claims of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "**Debtors**") on behalf of the estates for declaratory and injunctive relief, pertaining to the action pending in the United States District Court for the Northern District of California, San Francisco Division, styled *In re PG&E Corporation Securities Litigation*, Civil Action No. 3:18-cv-03509-EJD (the "**Pending Action**"), and the proofs of claim filed, and to be filed, in these Cases seeking to recover the same damages pleaded in the Pending Action (the "**Securities POCs**").

The TCC believes that good cause can be shown for this Motion on the grounds that:

- The Debtors' Plan of Reorganization (the "**Plan**") assigns to the future Fire Victim Trust the same claims that are pleaded in the Pending Action, and the TCC is charged with protecting the rights of Fire Victims in those claims pending the Court's appointment of a post-confirmation Resolution Trustee;

- The Debtors have a conflict in establishing that the claims are derivative as the defendants include current management/directors of the Debtors;

- The issue is both ripe and critical to pending Plan confirmation proceedings, as it affects claims against the estates by former shareholders that could reach $2 billion (by their estimate), and it affects substantial Plan terms regarding the consideration transferred to the Fire Victim Trust.

## PRELIMINARY STATEMENT

The Pending Action is one of a dozen shareholder lawsuits that were filed against the Debtors following the 2017 northern California wildfires (the "**North Bay Fires**"), and 2018 Camp Fire (the "**Camp Fire**"). Nearly all were filed as self-described derivative actions on behalf of the Debtors' estates, and all seek to recover the same damages caused to the Debtors in the form of billions of dollars of wildfire liabilities. One of the named plaintiffs in this Pending Action also

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

filed one of those shareholder derivative actions, outlining the identical damages theory—mounting wildfire liabilities against the Debtors which resulted in a reduction of stock price. Under well-settled and binding authority, the nature of the damages determines whether an action is direct or derivative, and it cannot be both for the same theory of damages. All of the dozen shareholder complaints, including the Pending Action, plead a theory of damages that is based on wildfire liabilities that destroyed the Debtors' corporate value. But only the Pending Action seeks a recovery for shareholders. It would violate the absolute priority rule in chapter 11 to permit former shareholders to recover on a theory that their stock price was reduced as an incidental result of the billions of dollars in damages caused to wildfire victims, and asserted against the Debtors in these chapter 11 Cases.

Under binding Ninth Circuit and California Supreme Court authority, the Pending Action asserts derivative claims because the alleged damages are incidental to injury to the Debtors, not independent of any injury to the Debtors. As a result, the claims asserted in the Pending Action are among those claims and causes of action that the Debtors and the TCC have agreed in their Restructuring and Support Agreement (the "RSA") will be assigned to the Fire Victim Trust under the Debtors' Plan. Further, the Securities POCs that have been filed and continue to be filed against the Debtors assert the same claims, and therefore cannot be asserted *against* the Debtors, as the claims are property of the Debtors' estates.

The TCC has requested that the Debtors stipulate to the requested relief or pursue such claims. The Debtors have refused to stipulate and advised that this Motion would be required to obtain the relief requested by the TCC. Therefore, by this Motion, the TCC hereby seeks standing to pursue such claims by filing and prosecuting a complaint in substantially the form of **Exhibit B** hereto.

### JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

This is a core proceeding pursuant to 28 U.S.C. §157(b).

Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory basis for the relief requested in this Motion is sections 105, 541, 1103 and 1106(a) of the United States Bankruptcy Code.

## BASIS FOR RELIEF

### A.    Summary of Relief Requested

The Debtors are proceeding at a rapid pace towards confirmation of their Plan. From the date of the filing of this Motion, the process for solicitation of votes and confirmation of the Plan is expected to take only three-and-a-half months, at most. At the same time, pursuant to a recent order of this Court, former shareholders will be given the right to file proofs of claim against the Debtors' estates arising from the claims asserted by former shareholder plaintiffs in the Pending Action. Those claims have been estimated by the shareholder plaintiffs to be worth as much as $2 billion.

The Debtors' Plan provides that the Debtors' fire-related claims against its officers and directors, and against various third parties (the "**Assigned Claims**"), are being assigned under the RSA to the Fire Victim Trust, which will administer and pay the claims of victims of certain wildfires, including the North Bay Fires and Camp Fire. The TCC contends that the Shareholder Claims are derivative claims that are among the Assigned Claims being assigned to the Fire Victim Trust as consideration for the TCC's entry into the RSA.

The TCC believes that it is critical to the solicitation and confirmation process for all voting creditors to know whether a potential $2 billion of new individual equity claims will be asserted against the Debtors, particularly given that the largest block of the Debtors' common stock will be used to generate cash for fire victims. It is equally critical for fire victims to be able to vote on the Plan knowing whether the value of their Assigned Claims (some of which are limited to available insurance) will be diluted by the Pending Action and the efforts of the Former Shareholders to recover insurance proceeds for their own benefit.

Under binding Ninth Circuit and California Supreme Court law, a shareholder only has a direct securities claim against a corporation and its officers and directors if the "gravamen of the

Case: 19-30088    Doc# 5972    Filed: 02/28/20    Entered: 02/28/20 16:13:57    Page 6 of 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

complaint" shows that the shareholder experienced damages that are "independent" of any damages to the company. If the damages are "incidental" to damages to the company, such as a drop in stock price that takes place because of an event that exposes the company to massive liabilities, then the claims are derivative claims. On its face, the complaint filed in the Pending Action purports to assert direct shareholder claims for "false statements" made by the Debtors and their officers and directors. But all of the damages allegations that are pleaded in the Pending Action, and the companion Securities POCs, state incidental, derivative damages.

The TCC has requested that the Debtors pursue an action for declaratory and injunctive relief to obtain a judgment finding that the claims filed in the Pending Action, and in the Securities POCs, are derivative claims belonging to the Debtors' estate, and to enjoin further prosecution of such claims. The Debtors have responded that the TCC should file this Motion in order to pursue such claims, and there is good cause for the TCC to be granted standing to pursue such claims. The TCC is the party that has secured the Assigned Claims for the benefit of fire victims, which include all derivative claims presently filed by shareholder plaintiffs. The TCC is attempting to secure Plan approval from its constituency of fire victims, who will soon be in the combined role of being beneficiaries of the largest holding of the Debtors' common stock (to be sold for payments on their claims) and beneficiaries of all recoveries from the Assigned Claims. Whether the Pending Action is improperly asserting those Assigned Claims for the benefit of former shareholders is an issue of immediate concern to the TCC, and ripe for resolution in advance of Plan confirmation.

**B.    Factual Background**

**1.    The Pending Action and Related Derivative Shareholder Litigation**

This Motion pertains to the litigation pending in the United States District Court for the Northern District of California (the "**District Court**"), styled *In re PG&E Corporation Securities Litigation*, Civil Action No. 3:18-cv-03509-EJD (defined above as the "**Pending Action**"), for which the lead and named plaintiffs are: (i) the Public Employees Retirement Association of New Mexico ("**PERA**"); (ii) York County, on behalf of the County of York Retirement Fund ("**York**"); (iii) City of Warren Police and Fire Retirement System ("**Warren**"); and (iv) Mid-Jersey Trucking

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Industry & Local No. 701 Pension Fund ("**Mid-Jersey**") (PERA, York, Warren and Mid-Jersey are defined collectively herein as the "**Former Shareholders**").

Shortly after the North Bay Fires in 2017, and continuing after the Camp Fire, there was a flurry of a dozen shareholder lawsuits filed against the Debtors. All of these shareholder lawsuits seek to recover the same damages that arose from the fires in the form of billions of dollars of liabilities asserted against the Debtors, which led to an incidental drop in stock price, and nearly all were filed as acknowledged shareholder derivative actions. Those actions include:

(a) *In re California North Bay Fire Derivative Litigation*, Case No. CGC-17-562591, consolidated litigation pending in the Superior Court of the State of California, County of San Francisco.

<u>Consolidated Actions</u>:

    i. *Lentine, derivatively on behalf of PG&E Corporation, v. Williams, et al,*, Case No. CGC-17-562553;

    ii. *Firemen's Retirement Systems of St. Louis, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Williams, et al.*, Case No. CGC-17-562591; and

    iii. *City of Warren Police and Fire Retirement System, derivatively on behalf of PG&E Corporation, v. Chew, et al.*, Case No. CGC-570820 (the "**Warren Superior Court Action**").

(b) *Blackburn, derivatively on behalf of PG&E Corporation, v. Meserve, et al.*, Case No. 3:19-cv-00501, pending in the United States District Court for the Northern District of California.

(c) *Bowlinger, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Chew, et al.*, Case No. CGC-18-572326, pending in the Superior Court of the State of California, County of San Francisco.

(d) *Hagberg, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Chew, et al.*, Case No. CGC-19-573190, pending in the Superior Court of the State of California, County of San Francisco.

(e) *Oklahoma Firefighters Pension and Retirement System, derivatively on behalf of PG&E Corporation, v. Chew, et al.*, Case No. 3:18-cv-04698, pending in the United States District Court for the Northern District of California.
    - includes derivative claim under Section 14(a) of the Securities and Exchange Act of 1934.

(f) *Williams, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Earley, et al.*, Case No. 3:18-cv-07128, pending in the United States District Court for the Northern District of California.
    - includes derivative claim under Section 14(a) of the Securities and Exchange Act of 1934, alleging false statements inflated stock price.

5

(g) *In re PG&E Corporation Securities Litigation*, Case No. 3:18-cv-03509-EJD, pending in the United States District Court for the Northern District of California, and all actions consolidated therein (defined above as the "**Pending Action**").

<u>Consolidated Actions</u>:

    i.  *Weston v. PG&E Corporation, et al.,* Case No. 3:18-cv-03509;

    ii.  *Moretti v. PG&E Corporation, et al*., Case No. 3:18-cv-03545;

    iii.  *York County, on behalf of the County of York Retirement Fund, et al. v. Rambo, et al.*, Case No. 5:19-cv-00994.

Of all the above-listed shareholder lawsuits, the Pending Action is the only ongoing lawsuit claiming that the same damages should be paid to the Former Shareholders instead of for the benefit of the corporations.

The Former Shareholders' operative complaint in the Pending Action (the "**Shareholder Complaint**"), filed herewith as <u>Exhibit 1</u> to the Declaration of David J. Richardson (the "**Richardson Decl.**"), pleads a twenty-page theory of damages in which all of the alleged damages arose in the form of liabilities from the North Bay Fires and Camp Fires that were asserted against the Debtors, and which in turn led to an incidental decline in the Debtors' stock price as the scope of the liabilities became known. *See* <u>Exhibit 1</u>, at ¶¶ 328-30; 335-36; 339-40; 347-48; 357-58; 365-66; 375-76; 381-82; and 386-87.

Warren, who is a named plaintiff in the Pending Action, is also the plaintiff in the action listed above and defined as the Warren Superior Court Action, which is a self-described derivative shareholder lawsuit pending in California Superior Court. The allegations of damages in both the Pending Action's Shareholder Complaint and the initiating complaint filed in the Warren Superior Court Action seek recovery of the identical damages—wildfire liabilities asserted against the Debtors in the billions of dollars which led to an incidental drop in stock prices.

The Pending Action's Shareholder Complaint and the initiating complaint filed in the Warren Superior Court Action, a true and correct copy of which is attached to the Richardson Decl. as <u>Exhibit 2</u> (the "**Warren Complaint**"), each contain the following allegations of damages:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| Pending Action's Shareholder Complaint Theory of "Direct" Shareholder Damages | Warren Superior Court Action Complaint Theory of "Derivative" Shareholder Damages |
|---|---|
| [On] October 12, 2017 … the market began to understand that PG&E's safety regulation violations were likely a proximate cause of the North Bay Fires … On this news … PG&E's stock dropped $4.65 per share, from a closing price of $69.15 … [O]n October 13, 2017, PG&E filed a Form 8-K … [stating that] The causes of these fires are being investigated by the California Department of Forestry and Fire Protection (Cal Fire) … If the amount of insurance is insufficient …results of operations could be materially affected …On these disclosures, PG&E's share price continued to decline … [from] $63.95 per share that day to its closing price of $53.43 … (Exhibit 1 at ¶¶ 328-36). | On October 13, 2017, defendants announced that Cal Fire was investigating whether PG&E equipment caused the fires … [and] if found at fault, the Company's liability for financial losses could be above PG&E's available insurance coverage. On this news, the trading price of PG&E's common stock collapsed, falling from $69.15 per share on October 11, 2017 to a close of $53.43 per share … (Exhibit 2 at ¶ 8). |
| On December 20, 2017 …PG&E filed a press release on Form 8-K with the SEC titled "PG&E Announces Suspension of Dividend, Citing Uncertainty Related to Causes and Potential Liabilities Associated with Northern California Wildfires … On this news, PG&E's share price fell $6.62 … to close at $44.50 … (¶¶ 339-40); | [O]n December 20, 2017, defendants stunned shareholders again by announcing that the Company was suspending its cash dividend due to "uncertainty related to causes and potential liabilities associated with the extraordinary October 2017 Northern California wildfires." On this news, the trading price of PG&E stock collapsed again, falling from $51.12 per share … to $44.50 per share … (¶ 8); |
| On May 25, 2018, Cal Fire issued a press release announcing the cause of four wildfires in Butte and Nevada counties …caused by trees coming into contact with power lines … On this news, PG&E's share price fell … 5.19%, to close at $42.34 on May 29, 2018 … (¶¶ 347-48); | On May 25, 2018, Cal Fire announced that four of the 2017 Northern California Wildfires were in fact caused by trees coming into contact with PGE&'s power lines … Cal Fire's reported findings caused PG&E's share price to decline an additional 5.2% , closing at $42.34 per share on May 29, 2018 … (¶¶ 44-45); |
| [On] June 11, 2018, … PG&E filed a Current Report on Form 8-K … [which] admitted that the Defendants expected to "record a significant liability for losses associated with" at least 14 of the North Bay Fires … Following these disclosures, PG&E's share price fell … to close at $39.76 … (Exhibit 1 at ¶¶ 357-58). | On June 11, 2018 …the Company disclosed that … PG&E Corporation and the Utility currently expect that they will record a significant liability for losses associated with" all but two of the 16 fires … On this news, the trading price of PG&E stock declined again, falling to $39.76 per share … (Exhibit 2 ¶¶ 10-11). |

The damages theory is virtually identical in both the Pending Action (asserted as a direct action) and the Warren Superior Court Action (asserted as a derivative action), stating **all damages** as injuries to the Debtors that led to an incidental drop in stock prices. The complaints filed in the

Baker & Hostetler LLP
Attorneys at Law
San Francisco

other pending derivative shareholder lawsuits also assert the same theories advanced in the Shareholder Complaint and Warren Complaint, including many of the same allegedly "false statements," and the same drops in stock prices caused by the North Bay and Camp Fire liabilities. But they are <u>all</u> filed as acknowledged derivative lawsuits.

As discussed below, while the same conduct can lead to both direct and derivative claims, the same damages cannot support both direct and derivative claims. The Shareholder Complaint and the Warren Complaint—and each other pending derivative shareholder action—plead the same theory of damages, and plead derivative claims.

**2. The Chapter 11 Cases and the Pending Plan of Reorganization**

On January 29, 2019 (the "**Petition Date**"), the Debtors filed their Chapter 11 Cases in response to the billions of dollars in wildfire liabilities that arose from the North Bay Fires and Camp Fire.

On February 15, 2019, the TCC was appointed in these Chapter 11 Cases by the Office of the United States Trustee to represent the interests of certain tort victims, including victims of the North Bay Fires and Camp Fire, over 80,000 of which have filed proofs of claim in these Chapter 11 Cases (the "**Fire Victims**").

On October 21, 2019, each of the Former Shareholders filed two proofs of claim against the Debtors, attaching pages from the Shareholder Complaint, and asserting direct claims against the Debtors for the damages described in the Shareholder Complaint (defined above as the "**Securities POCs**").

On December 7, 2019, the TCC, the Debtors, and certain other parties, entered into the RSA, which, among other terms, provides that the Debtors' Plan will assign the Assigned Claims to the Fire Victim Trust for the benefit of Fire Victims.

On December 9, 2019, PERA filed a motion in this Court seeking leave to file a class proof of claim on behalf of the putative class described in the Shareholder Complaint. *See* Dkt. No. 5042 (the "**Class Motion**"). On February 27, 2020, this Court entered an order denying the Class Motion but extending the bar date to permit additional parties who purchased the Debtors' securities during

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the putative class period in the Shareholder Complaint to file proofs of claim against the Debtors asserting the theories of damages outlined in the Shareholder Complaint.

On February 18, 2020, this Court entered its Order for Further Mediation, ordering the Debtors, TCC and Shareholder Plaintiffs to mediate the issues raised by the Class Motion (Dkt. No. 5810). The issues raised in this Motion are particularly ripe at this time, as the prospect of mediation raises the possibility that the Debtors will seek to settle the Pending Action with insurance proceeds that should be available to fund the Assigned Claims that are being assigned to the Fire Victim Trust under the RSA, rather than settle these alleged equity claims with existing equity. Any settlement of the Pending Action—which is really a derivative action—that pays insurance proceeds to Former Shareholders without the TCC's consent instead of preserving those policies for acknowledged derivative actions that are being assigned to the Fire Victim Trust is a violation of the absolute priority rule. It is critical for the TCC to be able to obtain standing at this time to assert and protect the rights of the estate in the Assigned Claims that are intended to provide a further recovery for Fire Victims, and the insurance policies that cover those Assigned Claims.

**C.  Legal Argument**

**1.  A Committee May Properly Be Granted Standing to Pursue Claims of the Estates**

The right to seek declaratory relief to confirm an estate's interest in property pursuant to 11 U.S.C. § 541 normally rests with a trustee or debtor in possession under 11 U.S.C. § 1106(a). However, it is "well settled" that a committee or other party in interest may be granted standing to pursue such a claim on behalf of the estate. *See Seaplace Shipping Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1030-1031 (9th Cir. 1999) (creditors may be granted standing to pursue claims on behalf of the debtors by stipulation or leave of court); *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899, 903 (9th Cir. BAP 1997) ("It is well settled that in appropriate situations the bankruptcy court may allow a party other than the trustee or debtor-in-possession to pursue the estate's litigation.").

The TCC has requested that the Debtors stipulate to the TCC's standing to file an action in the form attached hereto as **Exhibit B** to confirm the estate's interest in the Shareholder Claims, by

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

entry of a judgment finding that such claims are derivative claims, not direct shareholder claims, and to enjoin the further prosecution of the Pending Action, or to file such an action themselves. The Debtors have responded that they will not stipulate, and that the TCC will need to file the instant Motion to obtain the relief it seeks. *See* Richardson Decl. at ¶ 17.

While all derivative claims are property of the estates, the Debtors are proceeding towards Plan confirmation, and have agreed to assign all Assigned Claims to the Fire Victim Trust for the benefit of the TCC's constituency, the Fire Victims. The TCC has the greatest interest in protecting and preserving this valuable asset for the benefit of its constituency, both to ensure that the TCC receives the consideration bargained for under the RSA, and in order to ensure that the Plan satisfies the requirements of AB1054. Further, the Debtors face a potential conflict trying to take over litigation that includes current management and directors among the named defendants. The TCC is able to pursue the proposed litigation without conflicts, and may properly protect this property of the estate for the benefit of the Debtors' estates and all Fire Victims.

## 2. The Proposed Litigation Asserts Strong Claims for Relief

Under Ninth Circuit and California Supreme Court authority, "the pivotal question" to resolve whether a shareholder's claim is direct or derivative is the nature of the damages: "whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (distinguishing between "independent" stock loss that creates a direct claim, and stock loss that is "incidental" to a corporate injury and creates a derivative claim). In *Pareto*, the Ninth Circuit held that a plaintiff's claims were derivative because his "claims were for injury to [the corporation] itself, which ultimately reduced the value of the stock. In other words, the action was 'derivative …'"

The direct/derivative nature of a shareholder's claim is determined by the laws of the state in which the corporation is incorporated.[1] Under California law, an action is derivative "if 'the

---

[1] Some courts make the general pronouncement that the nature of a claim brought under the federal securities statutes is determined by federal common law. But other than serving as a general statement, courts look to state law as the substantive source for the direct/derivative distinctions even when the claims arise under federal statutes. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) ("The presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards."); *Starr Int'l Co. v. United States*, 856 F.3d 953, 965 (Fed. Cir. 2017) (following *Kamen*, looking to

gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders … An individual cause of action exists only if damages to the shareholders were not incidental to damages to the corporation." *Schuster v. Gardner*, 127 Cal.App.4th 305, 313 (2005) (*quoting Jones v. H. F. Ahmanson & Co.*, 1 Cal.3d 93, 106-07 (1969), and Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2004) ¶ 6:604, p. 6-128.2). The term "incidental" is the determinative concept. If all shareholders experience a common drop in share price because of a larger injury to the corporation, their injury is "incidental" to the corporate damage, and their claim is derivative. In order to possess a direct claim, a shareholder's loss in stock value must be "independent" of any damage to the company. *Pareto v. FDIC*, 139 F.3d at 699. As the Ninth Circuit has explained, where a shareholder's "claims were for injury to [the corporation] itself, which ultimately reduced the value of the stock … the action was 'derivative …'" *Id*. Where the alleged damage is "an injury that fell on every stockholder, majority and minority alike, and fell on each on a per share basis," the claim is "clearly derivative." *Id*. at 700. The Ninth Circuit summarized California law on this issue as follows:

> If a corporation suffers a direct injury to the whole of its assets, any corresponding injury to the value of an individual stockholder's shares (assuming the stockholder suffers no truly independent injury), is merely incidental to, or an indirect result of, the direct injury to the corporation's assets. An action by stockholders for that injury must be brought derivatively if at all.

*Pareto v. FDIC*, 139 F.3d at 699. The Ninth Circuit's position, following the California Supreme Court, leaves no room for a direct claim under the circumstances of this case.

As outlined above, and like the plaintiff in *Pareto*, the Former Shareholders in the Pending Action seek to recover damages to the corporations: tens of billions of dollars in wildfire liabilities asserted against the Debtors, which resulted in an incidental drop in stock price. The Shareholder Complaint alleges that the Former Shareholders hold direct claims against the Debtors and other defendants, but then pleads a derivative damages theory by describing the North Bay Fires and

Delaware law to determine direct/derivative nature of federal claims); *Fairholme Funds, Inc. v. United States*, 146 Fed. Cl. 17, 62, 2019 U.S. Claims LEXIS 1957 *91 (2019) (following *Kamen* on federal securities claim, looking to Delaware law on direct/derivative distinction); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 549 (E.D. Pa. 2005) (following *Kamen*, and applying state law to determine direct or derivative nature of federal securities claims).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Camp Fire, and alleging that as a result of these fires the Debtors "will incur billions of dollars in losses for claims in connection with the North Bay and Camp wildfires" (Shareholder Complaint, ¶ 80). The Shareholder Complaint then details a twenty-page damages theory, described above, that ties <u>every</u> drop in stock price over a fourteen-month period to wildfire liabilities asserted against the Debtors for the North Bay Fires or Camp Fire.

It is the identical damages that have been pleaded in the Warren Superior Court Action and another ten similar shareholder lawsuits. But while all of those actions have been filed as acknowledged derivative actions, the Former Shareholders in the Pending Action seek to recover those damages for their own benefit.

If the Former Shareholders could plead a separate theory of damages, they would have done so in their Shareholder Complaint, instead of pleading the same theory of damages that is pleaded in each of the Derivative Shareholder Actions.

Instead, after alleging twenty pages of stock loss following mounting wildfire liabilities asserted against the Debtors, the Former Shareholders summarize their damages as damage to the corporation's overall market value, and incidental damages to shareholders:

> As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Lead Plaintiff and other Class members have suffered significant losses and damages. (Exhibit 1, ¶ 390).

Former Shareholders seem to believe that they should recover a portion of the overall corporate damage caused by the North Bay Fires and Camp Fire, as a reflection of the "inflated value" that they believe they lost, like skimming cream off the top of milk. But case law does not permit the overall damages to the corporation to be split between derivative and direct claims in this manner, and such a theory has been dismissed by other courts. For example, in *Schuster, supra*, the court dismissed a plaintiff's efforts to create a class of injured shareholders holding direct claims by doing exactly what the Former Shareholders have done here—"limit the putative class" to those who acquired stock during a limited period of time, and argue that the claim is "direct because it does not concern 'the whole body' of the corporation's stock. *Schuster*, 127 Cal. App. 4th at 314 (dismissing separate damages argument as "specious," and stating that whether shareholder "seeks

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

to recover on behalf of all the stockholders, or tries to pursue claims on behalf of some subset, the damages sought are still incidental to the alleged injury to Peregrine, and any recovery should go to the company."); *see also Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035-36 (Del. 2004) (discarding Delaware law's "special injury" concept).

The Former Shareholders' entire class action theory is precisely what was rejected in *Schuster*, and demonstrates the derivative nature of their action. Despite allegations in the Shareholder Complaint, the putative class period is <u>not</u> based upon the timing of false statements made by the Debtors—the Debtors had been making promises about how great their vegetation management program was for years and years prior—but is based upon the convenient dates of when these four named plaintiffs bought and sold their securities. Attachments A-D to the Shareholder Complaint are the Certifications of Named Plaintiff Pursuant to Federal Securities Laws, detailing each of the Former Shareholders' dates of acquisition and sale of the Debtors' securities. The start of the putative class period, April 29, 2015, coincides with the first securities purchase by a named plaintiff (Warren, *see* <u>Exhibit 1</u>, Dkt. 121-3, page 4 of 4), and the end of the period, November 15, 2018, coincides with the last sale of securities by a named plaintiff (York, *see* <u>Exhibit 1</u>, Dkt. 121-2, p. 3 of 3). The Former Shareholders have done exactly what was rejected in *Schuster*—created a "subset" of shareholders by the dates of their own acquisitions in order to create the appearance that they hold separate direct claims, when the injury was actually felt by all shareholders. *Schuster*, 127 Cal. App. 4th at 314.

The story that the Shareholder Complaint tries to tell is of trusting investors who were led astray by the Debtors' false statements about its vegetation management programs, which convinced the investors that the risk of wildfires was less than it actually was. But in the real world, the putative class period has nothing to do with alleged false statements, but is defined solely by the dates when the Former Shareholders first bought and sold their securities. In the real world, Governor Brown had issued a statewide state of emergency before the class period began, warning of an increased risk of wildfires. In the real world, the 2015 Butte Fire took place just a few months into the class period, yet this court and the District Court are asked to believe that investors properly ignored an actual catastrophic wildfire caused by vegetation management failures, and instead

relied entirely on vague statements in press releases, <u>all</u> but one of which were made after the Butte Fire, and most of which were made after the Camp Fires. Mid-Jersey, one of the named plaintiffs, did not even **start** buying the Debtors' securities until **after** the Butte Fire, and sold off the last ones five months later (<u>Exhibit 1</u>, Dkt. 121-4, p. 3 of 3). That is not an investor trusting press releases, it is a speculative effort to make a fast profit from a stock that declined after a single wildfire.

Indeed, the first allegedly false statement is actually true. It is simply misrepresented in the Shareholder Complaint. *See* Richardson Decl. at ¶ 9. And the other allegedly false statements are P.R. statements about the Debtors' vegetation management program made <u>after</u> the devastating Butte Fire had been caused by a vegetation management failure, made during a California state of emergency, and—for the majority—made <u>after</u> the catastrophic North Bay Fires. *Id.* at ¶ 10. Investors do not live in a vacuum, cut off from the real world, entitled to rely on their interpretations of vague press releases while actual facts are plainly divulged in the daily news.

As the Ninth Circuit has held, "vague allegations about misrepresentations that caused [the plaintiff shareholder] to support the unsuccessful merger attempt and initiation of a receivership" were still derivative claims because "his only injury from those misrepresentations was the devaluation of his stock when Barbary Coast was taken over by the FDIC." *Pareto*, 139 F.3d at 700.

The identical situation arose in the chapter 11 case of Touch America Holdings, Inc., the former Montana Power Company, the once-regulated electric utility in Montana. The debtor in possession assigned its claims against directors and officers to a post-confirmation trust under the terms of its plan. Prior to confirmation, the creditors committee obtained standing by stipulation and filed a complaint against the directors and officers. The first amended complaint added claims against shareholder plaintiffs, just like the claims pleaded here, asking the Delaware Bankruptcy Court to determine that a pending securities action really asserted derivative claims that were being assigned to the trust, and to enjoin that action. Even though the securities action asserted that the shareholders' rights under a Montana shareholders' voting rights statute had been abrogated, the Bankruptcy Court ruled in *Williams v. McGreevey (In re Touch America Holdings, Inc.)*, 401 B.R.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

107 (Bankr. D. Del. 2009) that the claims were nevertheless derivative claims because the "gravamen" of the injury was a "loss of stock value" across the board, which was an injury to the corporation. *Id.*, at 123-24. Judge Carey of the Delaware Bankruptcy Court rejected the arguments of former shareholders, who insisted that their claims were personal, because they arose from a shareholder's voting rights statute, and because each shareholder's damages varied by dates and amounts of purchase, holding instead that "the dates of share ownership do not alter the fact that an injury of loss of stock value is an injury to the corporation, not just to individual shareholders." *Id.* at p. 124, fn. 30.

Because the direct/derivative nature of a shareholder's claim is based upon the nature of the damages, a claim arising under federal securities laws "may be brought <u>either</u> as a direct or a derivative claim." *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (emphasis added). But it cannot be <u>both</u> to recover the same damages, except for circumstances that do not apply here.[2] The same "conduct" can lead to both direct and derivative damages. *Pareto v. FDIC*, 139 F.3d at 699. But the same damages cannot support separate direct and derivative claims. *See, J. I. Case Co. v. Borak*, 377 U.S. 426, 430-32, 84 S. Ct. 1555, 12 L. Ed. 2d 423 (1964) (direct injunctive/declaratory relief claim and derivative claim for damages were appropriate in same action); *Sciabacucchi v. Liberty Broadband Corp.*, 2018 Del. Ch. LEXIS 252 *48-49, 2018 WL 3599997 (Del. Ch. July 26, 2018) (dismissing direct claim based on same damages theory as derivative claim).

When the City of Warren Police and Fire Retirement System filed the Warren Superior Court Action as a derivative action to recover the losses incurred when the North Bay Fires and Camp Fire caused billions of dollars in liabilities to be incurred by the Debtors, resulting in a drop in stock value, Warren clearly understood that its damages were "incidental" to a corporate injury, rather than "independent," and therefore stated a derivative claim.

The fact that the Pending Action pleads claims arising under federal securities laws, while all self-described derivative shareholder lawsuits plead claims arising under common law, federal

---

[2]  In certain majority/minority shareholder disputes, courts recognize a "dual-nature" exception that can provide that claims brought by minority shareholders can be both direct and derivative. *See Starr Int'l Co. v. United States*, 856 F.3d 953, 968 (Fed. Cir. 2017). The exception has no application here.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

securities law, or both, does not create grounds for distinction. The theory of law upon which the claim is asserted is not determinative as to whether or not the claim is brought directly or in a derivative capacity. It is the nature of the damages that is determinative from looking to the "gravamen of the complaint." *Pareto*, 139 F.3d at 699 ("[T]he pivotal question is whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property"); *Schuster v. Gardner*, 127 Cal.App.4th 305, 313 ("An individual cause of action exists only if damages to the shareholders were not incidental to damages to the corporation").

Under binding Ninth Circuit and California Supreme Court authority, the Former Shareholders are pursuing derivative claims that are property of the estate, and should be enjoined from further efforts to obtain damages for their own benefit that are property of the estate.

### 3. The TCC is a Proper Plaintiff

Where shareholders file a lawsuit based on a chapter 11 debtor's pre-petition damage, the debtor, any official committee that is granted standing, or any post-confirmation trustee, may file a complaint to determine that the lawsuit asserts a derivative claim for damages to the debtor, and hence is property of the estate under Bankruptcy Code section 541, and may be prosecuted only by the debtor or resolution trustee as a derivative action for the benefit of creditors as set forth in the plan. *See Comm. of Tort Litigants v. Catholic Diocese of Spokane (In re Catholic Bishop of Spokane)*, 329 B.R. 304, 314 (Bankr. E.D. Wash. 2005) (committee had standing to file adversary proceeding to determine property interests under Section 541); *aff'd in part, rev'd in part*; *Comm. of Tort Litigants v. Catholic Diocese of Spokane*, 2006 U.S. Dist. LEXIS 6025 *16-17, 2006 WL 211792 (E.D. Wash. January 24, 2006) (committee was proper plaintiff to determine estate's interest in property upon tacit court approval, despite a lack of entry of a formal order granting standing).

The proper defendants for such a lawsuit are the shareholder plaintiffs in the underlying action. *See Cottonwood P'ship, L.L.P. v. Kivisto (In re SemCrude L.P.)*, 2012 U.S. Dist. LEXIS 163236 (D. Del. November 15, 2012) (affirming order enjoining shareholder claims against debtor's accounting firm where injuries were to the corporation, and claims belonged to bankruptcy

estate); *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 488 (S.D.N.Y. 2012) (affirming injunction of derivative investor litigation that was duplicative of claims belonging to trustee), *aff'd Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81 (2d Cir. 2014).

Such an action is ripe at any time before plan confirmation to address critical issues of liability that pertain to feasibility of the plan, and after plan confirmation to confirm ownership of the claims going forward.

The Former Shareholders' efforts to litigate the Pending Action for their own benefit, along with the mounting individual Securities POCs against the Debtors' estates asserting the same theory of derivative damages, present new and substantial claims that arise on the eve of Plan confirmation, and threaten to create new billion-dollar liabilities against the estate, and dilute valuable Assigned Claims for the benefit of Fire Victims. The D&O portion of the Assigned Claims, and the Shareholder Claims asserted in the Pending Action, are the same claims, and the TCC should be granted standing to pursue a judgment to determine the derivative nature of the Shareholder Claims and the related Securities POCs, for the benefit of the Debtors' estates and all Fire Victims.

## NOTICE

Notice of this Motion will be provided to (i) counsel to the Debtors; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) counsel to the Creditors Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) the Consenting Fire Claimant Professionals; (xiii) counsel for the Shareholder Proponents; and (xiv) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002. The TCC respectfully submits that no further notice is required.

## CONCLUSION

WHEREFORE the TCC respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto, granting standing to the TCC to file and prosecute a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case: 19-30088    Doc# 5972    Filed: 02/28/20    Entered: 02/28/20 16:13:57    Page 20 of 21

complaint in substantially the form of **Exhibit B** hereto, and such other and any further relief as the
Court may deem just and proper.

Dated: February 28, 2020                    BAKER & HOSTETLER LLP

                                             By: ___/s/ David J. Richardson___
                                             Robert A. Julian
                                             Cecily A. Dumas
                                             David J. Richardson

                                             *Counsel to the Official Committee of Tort
                                             Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18