**EXHIBIT B**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Robert A. Julian (SBN 88469)
   Cecily A. Dumas (SBN 111449)
2  BAKER & HOSTETLER LLP
   600 Montgomery St., Suite 3100
3  San Francisco, CA 94111
   Telephone:    415.659.2600
4  Facsimile:    415.659.2601
   Email:  rjulian@bakerlaw.com
5  Email:  cdumas@bakerlaw.com

6  Eric E. Sagerman (SBN 155496)
   David J. Richardson (SBN 168592)
7  Lauren T. Attard (SBN 320898)
   BAKER & HOSTETLER LLP
8  11601 Wilshire Blvd., Suite 1400
   Los Angeles, CA 90025-0509
9  Telephone:    310.820.8800
   Facsimile:    310.820.8859
10 Email: esagerman@bakerlaw.com
   Email: drichardson@bakerlaw.com
11 Email: lattard@bakerlaw.com

12 *Counsel to the Plaintiff Official Committee of Tort Claimants*

DRAFT

13              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
14                   **SAN FRANCISCO DIVISION**

    **In re:**
15
    **PG&E CORPORATION, and PACIFIC GAS**
16  **AND ELECTRIC COMPANY,**
                        **Debtors.**                    Bankruptcy Case
17                                                       No. 19-30088 (DM)
    □ Affects PG&E Corporation
18  □ Affects Pacific Gas and Electric Company          Chapter 11
    ■ Affects both Debtors                              (Lead Case)
19                                                       (Jointly Administered)
    *All papers shall be filed in the Lead Case, No. 19-*
20  *30088 (DM)*

21  **THE OFFICIAL COMMITTEE OF TORT**                  Adv. Pro. No.
    **CLAIMANTS,**
22                      **Plaintiff,**                  **COMPLAINT FOR**
                                                        **DECLARATORY JUDGMENT**
23                      **v.**                          **AND INJUNCTIVE RELIEF**

24  **THE PUBLIC EMPLOYEES RETIREMENT**
    **ASSOCIATION OF NEW MEXICO; YORK**
25  **COUNTY, ON BEHALF OF THE COUNTY OF**
    **YORK RETIREMENT FUND; CITY OF**
26  **WARREN POLICE AND FIRE RETIREMENT**
    **SYSTEM; MID-JERSEY TRUCKING**
27  **INDUSTRY & LOCAL NO. 701 PENSION FUND,**
                        **Defendants.**
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The Official Committee of Tort Claimants (the "**TCC**" or "**Plaintiff**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corp. and Pacific Gas and Electric Company (collectively, the "**Debtors**" or "**PG&E**"), allege for its complaint ("**Complaint**") for declaratory judgment and injunctive relief against the lead plaintiff and named plaintiffs in the action pending in the United States District Court for the Northern District of California, San Francisco Division, styled *In re PG&E Corporation Securities Litigation*, Civil Action No. 3:18-cv-03509-EJD (the "**Pending Action**"), as follows:

## NATURE OF THE ACTION

1.      Shortly after the catastrophic 2017 northern California wildfires (the "**North Bay Fires**"), and 2018 Camp Fire (the "**Camp Fire**"), there was a flurry of a dozen shareholder lawsuits filed, all of which seek to recover the same damages that arose from the fires in the form of billions of dollars of liabilities asserted against the Debtors, which led to an incidental drop in stock price. The vast majority of these lawsuits were filed as acknowledged shareholder derivative actions. The Pending Action is alone in claiming that the same damages should be paid to the plaintiff shareholders instead of for the benefit of the corporations.

2.      One of the named shareholder plaintiffs in the Pending Action has filed two of these shareholder lawsuits: the Pending Action in District Court pleading alleged direct shareholder claims, and another pending lawsuit in state court, Case No. CGC-570820 (the "**Warren Superior Court Action**"), that acknowledges on its face that it is a derivative lawsuit, even though it seeks to recover for the Debtors' estate the identical damages: a loss to the Debtors' overall corporate value as a result of 2017 and 2018 wildfires, which translated into an incidental drop in stock price. These shareholders' efforts to recover their stock loss as a direct claim in the Pending Action is a violation of the absolute priority rule, and would improperly allow a recovery for shareholders at the expense of unsecured creditors.

3.      There is a common misconception with respect to securities litigation that where a shareholder's stock dropped in value, and there was a misrepresentation made by the company's officers that appears related, there is a direct securities claim against the company and the officers under federal securities laws. But under Ninth Circuit and California Supreme Court authority,

"the pivotal question" to resolve whether a shareholder's claim is direct or derivative is the nature of the damages: "whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (distinguishing between "independent" stock loss that creates a direct claim, and stock loss that is "incidental" to a corporate injury and creates a derivative claim). In *Pareto*, the Ninth Circuit held that a plaintiff's claims were derivative because his "claims were for injury to [the corporation] itself, which ultimately reduced the value of the stock. In other words, the action was 'derivative …'" This is not a theory invented by the TCC. It is California law, applied by the Ninth Circuit Court of Appeals and the California Supreme Court, as it is the law in all states that adopt similar standards for determining the difference between direct and derivative claims for relief.

4.     Like the plaintiff in *Pareto*, the shareholder plaintiffs in the Pending Action seek to recover damages to the corporations: tens of billions of dollars in wildfire liabilities asserted against the Debtors, resulting in an incidental drop in stock price. It is the identical theory of damages that has been pleaded in the Warren Superior Court Action and another ten similar shareholder lawsuits. But while all of those actions have been filed as acknowledged derivative actions, the shareholders in the Pending Action seek to recover those damages for their own benefit. To do so, they have created a "putative class" that is not based on actual false statements, but upon their own convenient dates of purchases and sales of the Debtors' securities, when the actual damages were felt by all shareholders.

5.     Because the direct/derivative nature of a shareholder's claim is based upon the nature of the damages, a claim arising under federal securities laws "may be brought either as a direct or a derivative claim." *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (emphasis added). But it cannot be both, absent minority shareholder protections that do not apply here. When the City of Warren Police and Fire Retirement System filed the Warren Superior Court Action as a derivative action to recover the losses incurred when the North Bay Fires and Camp Fire caused billions of dollars in liabilities to be incurred by the Debtors, resulting in a drop in stock value, they clearly understood that damages that are "incidental" to a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    corporate injury, rather than "independent," state a derivative claim, no matter what law is cited as

2    the basis for the claim.

3         6.    For example, if a pharmaceutical company announces that it will have a new,

4    breakthrough cancer treatment on the market in six months, its stock price goes up, and then it is

5    revealed six months later that the treatment was only a sugar pill, causing the stock price to drop,

6    the shareholders may possess a classic direct securities claim because their injury is independent

7    (stock price alone) to any damage to the corporation (no injury other than its stock price).

8         7.    But if shareholders buy stock in a utility during a decade of increasing risk of

9    wildfires, and then a wildfire creates tens of billions of dollars in victim damages that are asserted

10   against the utility, raising the prospect of bankruptcy and driving down the stock price, the

11   shareholders only hold a derivative claim because the drop in their stock price is "incidental" to the

12   greater damage done to the corporation.  If the corporation's directors and officers committed

13   wrongdoing that caused the greater damage to the company, the claim to recover that damage is a

14   corporate claim that belongs to the company.  There is no valid legal theory to carve out a

15   percentage of that injury for the direct benefit of former shareholders, because their stock-drop loss

16   is merely incidental to the corporation's injury.

17        8.    The story that the complaint in the Pending Action tries to tell is of trusting investors

18   who were led astray by the Debtors' false statements about its vegetation management programs,

19   which convinced the investors that the risk of wildfires was less than it actually was.  But in the

20   real world, the putative class period has nothing to do with alleged false statements, but is defined

21   solely by the dates when the Former Shareholders first bought and sold their securities.  In the real

22   world, the 2015 Butte Fire took place just a few months into the class period, yet this court and the

23   District Court are asked to believe that investors properly ignored an actual catastrophic wildfire

24   caused by vegetation management failures, and instead relied entirely on vague statements in press

25   releases.  One of the named plaintiffs in the Pending Action did not even **start** buying the Debtors'

26   securities until **after** the Butte Fire, and sold off the last ones five months later.  That is not an

27   investor trusting press releases, it is an effort to profiteer from a stock that declined after a single

28   wildfire.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.      Where shareholders file a lawsuit based on a chapter 11 debtor's pre-petition damage, the debtor, any official committee that is granted standing, or any post-confirmation trustee, may file a complaint to determine that the lawsuit asserts a derivative claim for damages to the debtor, and hence is property of the estate under Bankruptcy Code section 541 that may be prosecuted only by the debtor or resolution trustee as a derivative action for the benefit of creditors as set forth in the plan.  The proper defendants for such a lawsuit are the shareholder plaintiffs in the underlying action.  Such an action is ripe at any time before plan confirmation to address critical issues of liability that pertain to feasibility of the plan, and after plan confirmation to confirm ownership of the claims going forward.

10.      The identical situation arose in the chapter 11 case of Touch America Holdings, Inc., the former Montana Power Company, the once-regulated electric utility in Montana.  The debtor-in-possession assigned its claims against directors and officers to a post-confirmation trust under the terms of its plan.  Prior to confirmation, the creditors committee obtained standing by stipulation and filed a complaint against the directors and officers.  The first amended complaint added claims against shareholder plaintiffs, just like the claims pleaded here, asking the Delaware Bankruptcy Court to determine that a pending securities action really asserted derivative claims that were being assigned to the trust, and to enjoin that action.  Even though the securities action asserted that the shareholders' rights under a Montana shareholders' voting rights statute had been abrogated, the Bankruptcy Court ruled in *Williams v. McGreevey (In re Touch America Holdings, Inc.,* 401 B.R. 107, 129-30 (Bankr. D. Del. 2009) that the claims were nevertheless derivative claims because the injury to the corporation was the cause of their stock drop.  The loss in their stock value was incidental to the corporation's injury, not independent.  That is the exact situation that arises in these PG&E Chapter 11 Cases.

11.      By this Complaint the TCC requests entry of a judgment declaring that the six claims for relief (the "**Shareholder Claims**") that are pleaded by the Former Shareholders in the Third Amended Complaint (the "**Shareholder Complaint**") filed in the Pending Action—as well as the same claim filed against the Debtors as proofs of claim in these Chapter 11 Cases (the "**Shareholder BK Claims**")—are derivative claims belonging to the Debtors' chapter 11 estates,

Case: 19-30088    Doc# 5972-2    Filed: 02/28/20    Entered: 02/28/20 16:13:57    Page 6 of 24

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and subject to assignment to the future Fire Victim Trust (the "**Fire Victim Trust**") under the Debtors' pending Plan of Reorganization (the "**Plan**"). And, by this Complaint, the TCC requests entry of a judgment enjoining the Former Shareholders from further litigation of the derivative Shareholder Claims, as they are being assigned to the Fire Victim Trust.

12.     Resolution of this dispute is necessary and critical to the Debtors' plan confirmation process in order to address the validity of shareholder claims asserted against the Debtors that are estimated by the Shareholder Plaintiffs to reach $2 billion, whether individual claims or a class claim, as well as to address entitlement to pursue such claims post-confirmation for the benefit of the victims of the North Bay Fires and Camp Fire (the "**Fire Victims**") on whose behalf the TCC acts in these cases. Whether the derivative Shareholder Claims are owned by shareholders or assigned by the Debtors is critical to understanding the value that Fire Victims will receive under the Debtors' Plan. The TCC therefore requests entry of a judgment that confirms the derivative nature of the Shareholder Claims and Shareholder BK Claims, and enjoins the shareholder plaintiffs from further prosecution of such claims.

## THE PARTIES

13.     Plaintiff TCC is the Official Committee of Tort Claimants in these Chapter 11 Cases, appointed on February 15, 2019, by the Office of the United States Trustee (Dkt. No. 453). The TCC represents the interests of over 80,000 Fire Victims who have asserted claims against the Debtors arising from the losses they suffered in the 2015, 2017 and 2018 Northern California wildfires. The TCC also represents the interests of persons who assert claims against the Debtors arising from the 2016 Ghost Ship Warehouse fire, but those interests are not at issue in this Complaint.

14.     On information and belief, the Public Employees Retirement Association of New Mexico ("**PERA**") is lead plaintiff in the Pending Action, and is a public employee retirement system with a principal place of business in Santa Fe, New Mexico.

15.     On information and belief, York County, on behalf of the County of York Retirement Fund ("**York**") is a named plaintiff in the Pending Action, and is a public employee retirement system with a principal place of business in York, Pennsylvania.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16. On information and belief, City of Warren Police and Fire Retirement System ("**Warren**") is a named plaintiff in the Pending Action, and is a retirement system with a principal place of business in Warren, Michigan.

17. On information and belief, Mid-Jersey Trucking Industry & Local No. 701 Pension Fund ("**Mid-Jersey**") (PERA, York, Warren and Mid-Jersey are defined collectively herein as the "**Former Shareholders**") is a named plaintiff in the Pending Action, and is a pension fund with a principal place of business in North Brunswick, New Jersey.

## JURISDICTION, VENUE AND RIPENESS

18. This adversary proceeding arises under Bankruptcy Code sections 105, 362, and 541 in the Chapter 11 Cases of the Debtors. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. sections 157 and 1334. This is a core proceeding under 28 U.S.C. section 157(b)(2). The TCC consents to the Court's entry of final judgment in this proceeding.

19. Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

20. The claims pleaded in this Complaint are ripe for determination. The Former Shareholders have filed proofs of claim against the Debtors, alleging that the Shareholder BK Claims are direct claims against the Debtors for approximately $2 billion in damages, just as the Debtors are barreling towards plan confirmation. If the Former Shareholders are pursuing derivative claims in the Pending Action and their identical proofs of claim, as alleged in this Complaint, then they cannot assert a claim against the Debtors for damages, as the claims belong to the Debtors' estates. Thus, while the TCC has obtained standing by stipulation to be the party pursuing this Complaint on behalf of the Debtors' estates, the resolution of these alleged claims for $2 billion represents a critical issue for Plan confirmation, and is ripe for determination at this time.

## FACTUAL BACKGROUND

**The Northern California Wildfires**

21. In 2015, 2017 and 2018, PG&E's equipment, and its system maintenance and vegetation management practices, sparked a series of wildfires in Northern California that killed over 130 individuals, injured over 50,000 individuals, destroyed over 30,000 structures, and burned hundreds of thousands of California acreage. The Fire Victims affected by these fires suffered

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

massive injuries, including personal injury damages and property damages, and/or the loss of loved ones in the fires, and/or other losses and attorneys' fees.  Approximately 80,000 Fire Victims have filed proofs of claim against the Debtors' estates in these Chapter 11 Cases.

22.     The North Bay Fires and Camp Fire were not the first catastrophic wildfires caused by PG&E equipment, mismanagement or oversight.  But they were the first wildfires of such scale that the projected damages raised the prospect of PG&E filing bankruptcy, and all existing equity being wiped out.  When the Camp Fire occurred in November 2018, adding billions of dollars in additional damages claims to be asserted against the Debtors, and taking dozens of lives, the Debtors had no other option than to file bankruptcy.  On January 29, 2019 (the "**Petition Date**"), the Debtors filed the above-captioned Chapter 11 Cases.

23.     Under the Debtors' Plan, the Fire Victim Trust will receive an assignment of the Debtors' fire-related claims and causes of action against third parties such as vendors, contractors, consultants, and former officers and directors, such as those arising from the 2015 Butte Fire, the North Bay Fires, and the Camp Fire (the "**Assigned Claims**").  The TCC is the representative in these Chapter 11 Cases of the Fire Victims who will be the beneficiaries of the Assigned Claims, and who have negotiated the right to receive an assignment of such claims.

**The Filing of Multiple Shareholder Derivative Lawsuits**

24.     Shortly after the North Bay Fires in 2017, and continuing after the Camp Fire, there was a flurry of a dozen shareholder lawsuits filed against the Debtors.  All of these shareholder lawsuits seek to recover the same damages that arose from the fires in the form of billions of dollars of liabilities asserted against the Debtors, which led to an incidental drop in stock price, and nearly all were filed as acknowledged shareholder derivative actions.  Those actions include:

(a)  *In re California North Bay Fire Derivative Litigation*, Case No. CGC-17-562591, consolidated litigation pending in the Superior Court of the State of California, County of San Francisco.

Consolidated Actions:

i.  *Lentine, derivatively on behalf of PG&E Corporation, v. Williams, et al,*, Case No. CGC-17-562553 (the "**Lentine Action**");

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

       ii. *Firemen's Retirement Systems of St. Louis, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Williams, et al.*, Case No. CGC-17-562591; and

       iii. *City of Warren Police and Fire Retirement System, derivatively on behalf of PG&E Corporation, v. Chew, et al.*, Case No. CGC-570820 (the "**Warren Superior Court Action**").

(b) *Blackburn, derivatively on behalf of PG&E Corporation, v. Meserve, et al.*, Case No. 3:19-cv-00501, pending in the United States District Court for the Northern District of California (the "**Blackburn Action**").

(c) *Bowlinger, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Chew, et al.*, Case No. CGC-18-572326, pending in the Superior Court of the State of California, County of San Francisco (the "**Bowlinger Action**").

(d) *Hagberg, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Chew, et al.,* Case No. CGC-19-573190, pending in the Superior Court of the State of California, County of San Francisco (the "**Hagberg Action**").

(e) *Oklahoma Firefighters Pension and Retirement System, derivatively on behalf of PG&E Corporation, v. Chew, et al.*, Case No. 3:18-cv-04698, pending in the United States District Court for the Northern District of California (the "**Oklahoma Action**").
   - includes derivative claim under Section 14(a) of the Securities and Exchange Act of 1934.

(f) *Williams, derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company, v. Earley, et al.,* Case No. 3:18-cv-07128, pending in the United States District Court for the Northern District of California (the "**Williams Action**") (actions (a) through (f) referred to herein as the "**Derivative Shareholder Actions**").
   - includes derivative claim under Section 14(a) of the Securities and Exchange Act of 1934, alleging false statements inflated stock price.

(g) *In re PG&E Corporation Securities Litigation*, Case No. 3:18-cv-03509-EJD, pending in the United States District Court for the Northern District of California, and all actions consolidated therein (defined above as the "**Pending Action**").

Consolidated Actions:

       i. *Weston v. PG&E Corporation, et al.,* Case No. 3:18-cv-03509;

       ii. *Moretti v. PG&E Corporation, et al.*, Case No. 3:18-cv-03545;

       iii. *York County, on behalf of the County of York Retirement Fund, et al. v. Rambo, et al.*, Case No. 5:19-cv-00994.

25.     Of all the above-listed shareholder lawsuits, the Pending Action is the only ongoing lawsuit claiming that the same damages should be paid to the Former Shareholders instead of for the benefit of the corporations.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-9-

**The Filing and the Former Shareholders' Pending Action and Proofs of Claim**

26.    The Pending Action is a consolidated lawsuit that was filed on June 12, 2018, and was consolidated with an action filed collectively by York, Warren and Mid-Jersey, by an order of the District Court entered on May 7, 2019. The defendants include the Debtors, various former and current directors and officers, and twenty-three of the largest financial institutions in the country (collectively, the "**D&O Defendants**").

27.    On October 21, 2019, each of the Former Shareholders filed two substantially identical proofs of claim in the Chapter 11 Cases; one against each of the Debtors' respective estates (the "Former Shareholder POCs"), seeking recovery of the same damages pleaded in the Pending Action, and attaching the initial pages of the Shareholder Complaint. By an order entered February 27, 2020, the Bankruptcy Court extended the bar date for former shareholders to file similar proofs of claim asserting the same Shareholder BK Claims, raising the prospect of substantial liability added on the eve of plan confirmation.

**The Damages Pleaded in the Shareholder Complaint Are Incidental to Injury to the Debtors, Not Independent of Injury to the Debtors**

28.    Ninth Circuit and California Supreme Court authority hold that shareholders only possess a direct claim to recover a loss in stock value if their damages were "independent" of injury to the corporation, not "incidental" to a corporate injury.

29.    The direct/derivative nature of a shareholder's claim is determined by the laws of the state in which the corporation is incorporated. Under California law, an action is derivative "if 'the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders … An individual cause of action exists only if damages to the shareholders were not incidental to damages to the corporation." *Schuster v. Gardner*, 127 Cal.App.4th 305, 313 (2005) (*quoting Jones v. H. F. Ahmanson & Co.*, 1 Cal.3d 93, 106-07 (1969), and Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2004) ¶ 6:604, p. 6-128.2). The term "incidental" is the determinative concept. If all shareholders experience a common drop in share price because of a larger injury to the corporation, their injury is "incidental" to the corporate damage, and their claim is derivative. In order to possess a direct

claim, a shareholder's loss in stock value must be "independent" of any damage to the company. *Pareto v. FDIC*, *supra*. Where a shareholder's "claims were for injury to [the corporation] itself, which ultimately reduced the value of the stock … the action was 'derivative …'" *Id*. Where the alleged damage is "an injury that fell on every stockholder, majority and minority alike, and fell on each on a per share basis," the claim is "clearly derivative." *Id*. at 700. The Ninth Circuit's position, following the California Supreme Court, leaves no room for a direct claim under the circumstances of this case.

30.    Despite this binding authority, the Shareholder Complaint alleges that the Former Shareholders hold direct claims against the Debtors and other D&O Defendants, but then pleads a derivative damages theory by describing the North Bay Fires and Camp Fire, and alleging that as a result of these fires the Debtors "will incur billions of dollars in losses for claims in connection with the North Bay and Camp wildfires" (Shareholder Complaint, ¶ 80). The Shareholder Complaint then details a twenty-page damages theory that ties every drop in stock price over a fourteen-month period to a further liability asserted against the Debtors for the North Bay Fires or Camp Fire. The first drop in stock price that results in damages under the Former Shareholders' theory occurred while the North Bay Fires were still burning, as the first allegations that PG&E was responsible for the fires began to emerge. Then, in paragraph after paragraph, the Former Shareholders allege that the Debtors' liabilities for the North Bay Fires were realized over time, as the Debtors' responsibility for each fire was theorized and then confirmed by Cal Fire over the course of fourteen months, with each new liability leading to another drop in stock price.

31.    Warren, who is a named plaintiff in the Pending Action, is also the plaintiff in the action listed above and defined as the Warren Superior Court Action, which is a self-described derivative shareholder lawsuit pending in California Superior Court. The allegations of damages in both the Pending Action's Shareholder Complaint and the initiating complaint filed in the Warren Superior Court Action seek recovery of the identical damages—wildfire liabilities asserted against the Debtors in the billions of dollars which led to an incidental drop in stock prices.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

32.    The Pending Action's Shareholder Complaint and the initiating complaint filed in the Warren Superior Court Action, (the "**Warren Complaint**"), each contain the following substantially identical allegations of damages:

| Pending Action's Shareholder Complaint Theory of "Direct" Shareholder Damages | Warren Superior Court Action Complaint Theory of "Derivative" Shareholder Damages |
|---|---|
| [On] October 12, 2017 … the market began to understand that PG&E's safety regulation violations were likely a proximate cause of the North Bay Fires … On this news … PG&E's stock dropped $4.65 per share, from a closing price of $69.15 … [O]n October 13, 2017, PG&E filed a Form 8-K … [stating that] The causes of these fires are being investigated by the California Department of Forestry and Fire Protection (Cal Fire) … If the amount of insurance is insufficient …results of operations could be materially affected …On these disclosures, PG&E's share price continued to decline … [from] $63.95 per share that day to its closing price of $53.43 … (<u>Exhibit 1</u> at ¶¶ 328-36). | On October 13, 2017, defendants announced that Cal Fire was investigating whether PG&E equipment caused the fires … [and] if found at fault, the Company's liability for financial losses could be above PG&E's available insurance coverage. On this news, the trading price of PG&E's common stock collapsed, falling from $69.15 per share on October 11, 2017 to a close of $53.43 per share … (Exhibit 2 at ¶ 8). |
| On December 20, 2017 …PG&E filed a press release on Form 8-K with the SEC titled "PG&E Announces Suspension of Dividend, Citing Uncertainty Related to Causes and Potential Liabilities Associated with Northern California Wildfires … On this news, PG&E's share price fell $6.62 … to close at $44.50 … (¶¶ 339-40); | [O]n December 20, 2017, defendants stunned shareholders again by announcing that the Company was suspending its cash dividend due to "uncertainty related to causes and potential liabilities associated with the extraordinary October 2017 Northern California wildfires." On this news, the trading price of PG&E stock collapsed again, falling from $51.12 per share … to $44.50 per share … (¶ 8); |
| On May 25, 2018, Cal Fire issued a press release announcing the cause of four wildfires in Butte and Nevada counties …caused by trees coming into contact with power lines … On this news, PG&E's share price fell … 5.19%, to close at $42.34 on May 29, 2018 … (¶¶ 347-48); | On May 25, 2018, Cal Fire announced that four of the 2017 Northern California Wildfires were in fact caused by trees coming into contact with PGE&'s power lines … Cal Fire's reported findings caused PG&E's share price to decline an additional 5.2% , closing at $42.34 per share on May 29, 2018 … (¶¶ 44-45); |
| [On] June 11, 2018, … PG&E filed a Current Report on Form 8-K … [which] admitted that the Defendants expected to "record a significant liability for losses associated with" at least 14 of the North Bay Fires … Following these disclosures, PG&E's share price fell … to close at $39.76 … (<u>Exhibit 1</u> at ¶¶ 357-58). | On June 11, 2018 …the Company disclosed that … PG&E Corporation and the Utility currently expect that they will record a significant liability for losses associated with" all but two of the 16 fires … On this news, the trading price of PG&E stock declined again, falling to $39.76 per share … (Exhibit 2 ¶¶ 10-11). |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

33. The damages theory is virtually identical in both the Pending Action (asserted as a direct action) and the Warren Superior Court Action (asserted as a derivative action), stating **all damages** as injuries to the Debtors that led to an incidental drop in stock prices.

34. Warren has appeared as plaintiff in two separate shareholder actions filed against the Debtors, one that acknowledges on its face that it is derivative, and one that purports to be asserting direct claims. Warren will answer that the Warren Superior Court Action is derivative because it asserts common law claims, while the Pending Action is direct because it asserts securities law claims. But this is false. The direct/derivative nature of a claim is not determined by the law on which the claim is based, but by the nature of the damages. "[T]he pivotal question is whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property." *Pareto*, 139 F.3d at 699. Both lawsuits seek to recover the identical damages—damage to the corporation that had an incidental impact on share price. Both lawsuits are derivative.

35. Each of the complaints that have been filed in the other Derivative Shareholder Actions also asserts the same theories advanced in the Shareholder Complaint, including the same allegedly "false statements," and the same drops in stock prices caused by the North Bay and Camp Fire liabilities. The complaint filed in the Hagberg Action, just like the Shareholder Complaint, pleads the same "false statements," such as that PG&E was "stepping up" vegetation management, that its vegetation management practices were "in compliance with relevant laws," and that it was doubling vegetation management budgets, and asserts as a description of damages that, because of the Camp Fire, "PG&E's stock price plummeted by over 50%." Yet it is filed as a self-described derivative action.

36. The complaint filed in the Bowlinger Action also pleads the same "false statements," including that PG&E was "stepping up" vegetation management, that its vegetation management practices complied with "relevant laws," and that it had "doubled" its vegetation management budget, and pleads as damages that "PG&E's stock was down almost 47% year-to-date, almost exclusively due to liabilities from the wildfires." Yet it is filed as a self-described derivative action.

13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

37.     The complaint filed in the Lentine Action similarly alleges a series of "false and misleading statements," made by PG&E, and pleads that, in the days following the North Bay Fires, "when the revelations about Defendants' conduct began to come to light," PG&E stock fell from $69.15 per share on October 11, 2017 to close at $57.72 per share on October 13, 2017.  Yet it is filed as a self-described derivative action.

38.     Three of the other shareholder actions that are pending—the Oklahoma, Williams and Blackburn Actions—were filed in District Court, like the Pending Action.  Even though they were filed as acknowledged derivative lawsuits, on their face, their allegations are so closely related to the Pending Action that they have been deemed "related" and assigned to the same District Court courtroom.

39.     For example, the complaint filed in the Oklahoma Action states in its opening paragraph that the action was filed "derivatively, and on behalf of Nominal Defendant PG&E Corporation," even though it pleads claims arising under the Securities Exchange Act of 1934, as well a claim for breach of fiduciary duties. Like the Shareholder Complaint, the complaint filed in the Oklahoma Action alleges an incidental injury to shareholders as a result of the wildfires.  For example, it alleges in Paragraph 58 that the "financial impact" from the wildfires was so great by December 20, 2017, just two months after the North Bay Fires, that the Debtors "determined to suspend quarterly cash dividends on both the Corporation's common stock, beginning with the fourth quarter of 2017, and the Utility's preferred stock, beginning with the three-month period ending January 31, 2018, due to potential liabilities associated with the Northern California Fires." (*Id*. at ¶ 58).  The Oklahoma Complaint, like the Shareholder Complaint, pleads misrepresentations by the PG&E defendants pertaining to the Debtors' fire mitigation activities and other risk factors. (*Id*. at ¶¶ 110-113).  Despite these overwhelming similarities, the Oklahoma Complaint was filed as an acknowledged derivative action.

40.     Similarly, the complaint filed in the Blackburn Action states in Paragraph 1 that it is a "shareholder derivative action on behalf of nominal defendant PG&E," and further alleges that the defendants "made false statements to shareholders regarding the Company's operational safety and integrity," and that as a "direct and proximate result" of such conduct, among other actions,

Case: 19-30088    Doc# 5972-2    Filed: 02/28/20    Entered: 02/28/20 16:13:57    Page 15 of 24

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PG&E had "been and is being further substantially damaged," for which the defendants were "liable to PG&E." The nature of the damages pleaded in the Blackburn complaint is the same damages pleaded in the Shareholder Complaint, arising from "two massive wildfire episodes in 2017 and 2018 that devastated parts of Northern California, exposing the Company to yet more huge damage claims." (Blackburn Complaint at ¶ 8). Despite these overwhelming similarities, the Blackburn Complaint was filed as an acknowledged derivative action.

41.     The shareholders who have filed all related Shareholder Derivative Actions (even Warren) understand that an action to recover damages that are "incidental" to an injury to the corporation, not "independent" of any injury to the corporation, is a derivative lawsuit. For that reason, the other shareholder lawsuits have been filed as derivative actions on their face. The damages sought in all of the lawsuits are identical, except solely for the fact that some pertain only to the North Bay Fires damages, some pertain solely to the Camp Fire damages, and some address both sets of fires. But only the Shareholder Complaint in the Pending Action asks that those damages be paid over to former shareholders instead of to the Debtors.

**The Putative Class Period Reflects an Improper Effort to Create a "Direct" Subclass of a Derivative Action**

42.     A shareholder plaintiff cannot create a direct claim by creating a false class based upon convenient dates of purchase or sale, rather than the alleged breaches of a specific duty. But the Former Shareholders have done exactly that in an effort to transform a derivative action into the appearance of a direct action. Despite allegations in the Shareholder Complaint, the putative class period is not based upon the timing of false statements made by the Debtors—the Debtors had been making promises about how great their vegetation management program was for years and years prior—but is based upon the convenient dates of when these four named plaintiffs bought and sold their securities. Attachments A-D to the Shareholder Complaint are the Certifications of Named Plaintiff Pursuant to Federal Securities Laws, detailing each of the Former Shareholders' dates of acquisition and sale of the Debtors' securities. The start of the putative class period, April 29, 2015, coincides with the first securities purchase by a named plaintiff (Mid-Jersey, Dkt. 121-3, page 4 of 4), and the end of the period, November 15, 2018, coincides with the last sale of securities

by a named plaintiff (York, Dkt. 121-2, p. 3 of 3). The Former Shareholders have done exactly what has been rejected by California courts—created a "subset" of shareholders by the dates of their own acquisitions in order to create the appearance that they hold separate direct claims, when the injury was actually felt by all shareholders. *Schuster*, 127 Cal. App. 4th at 314.

43. One of the named plaintiffs, Mid-Jersey, did not even start purchasing the Debtors' securities until after the 2015 Butte Fire, and then engaged in a five-month process of buying and selling the securities as the securities continued to fluctuate. (Dkt. 121-4). The Shareholder Complaint asks this Court to believe that the Former Shareholders were trusting investors who relied on vague press releases. But meanwhile, in the real world, just over one year prior to the Putative Class Period, Governor Brown issued a statewide declaration of emergency to address the state's record drought, noting that the "risk of wildfires across the state [was] greatly increased." On September 9, 2015, just a few months into the Putative Class Period, the Butte Fire ignited, exposing the Debtors to massive potential liabilities, and was quickly blamed on PG&E's vegetation management failures. And on October 30, 2015, Governor Brown declared a second statewide state of emergency to address the increased wildfire risk caused by record drought conditions and an unprecedented die-off of trees. No reasonable investor could have invested in PG&E securities during the Putative Class Period based upon assurances of the Debtors that were mere puffery. No reasonably investor could have believed that corporate assurances of increased efforts to mitigate against wildfires could be taken as an assurance that there would never be the most destructive wildfires in California history that would decimate the Debtors' corporate value. And no reasonable investor could have started purchasing the Debtors' securities **after** the Butte Fire, yet have relied on vague statements in press releases while acting in ignorance of actual catastrophic events in the real world. Yet **nearly all** of the Former Shareholders' purchases of securities of the Debtors—even the purchases of the Former Shareholders who had bought some securities before the Butte Fire—were made **after** the Butte Fire, and after Governor Brown's two declarations of emergency.

44. Against this backdrop of actual wildfires, declarations of emergency, and a publicly acknowledged growing wildfire threat—all of which preceded nearly all of the Former

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

Case: 19-30088  Doc# 5972-2  Filed: 02/28/20  Entered: 02/28/20 16:13:57  Page 17 of 24

Shareholders' securities purchases—the Former Shareholders ask the Courts to believe that they properly sat back and relied on puffery and truthful statements in the Debtors' press releases as proof that they could expect their stock value to remain unimpacted by potential wildfires. The Debtors' mismanagement clearly gives rise to a derivative claim against the D&O Defendants for the damages caused to the Debtors' corporate value by the North Bay Fires and Camp Fire. But there is no direct shareholder claim based upon alleged "false statements," for damages that are merely incidental to the larger corporate injury.

45.      The entire basis for the Former Shareholders' insistence that they hold direct claims is the allegations of nineteen "false statements" pleaded in the Shareholder Complaint. The purpose of these allegations is to attempt to state claims under the federal securities acts—assuming the Former Plaintiffs could satisfy the standard for "independent" damages, or make new law on this issue—but the allegations fail to meet the necessary standard. Not only do these statements fail to conform to the Putative Class Period, as they had been standard statements made by the Debtors for years, they are also not statements that are actionable under federal securities laws. In order to be actionable, a misrepresentation must meet a "fraud on the market" standard, rather than be mere "puffery" that is typical in public relations documents. No reasonable investor relies on statements that are vague, or "puffery," rather than definitive projections about future performance.

46.      For example, "Misstatement No. 1" in the Shareholder Complaint is the statement made by the Debtors' then-President on April 29, 2015, kicking off the Putative Class Period. The statement was that the Debtors were "stepping up our vegetation management activities to mitigate wildfire risk and improve access for firefighters." (Shareholder Complaint at ¶ 194). The Shareholder Plaintiffs allege that this statement was "materially false and/or misleading" because PG&E "underspent its vegetation management budget in both 2014 and 2015." (*Id.*, at ¶ 195). Yet they acknowledge in the same paragraph that this reflected a budgetary increase of 2.4% in 2015 over 2014, which was twice the rate of inflation. And, the portion of the 2015 budget that was unspent represents less than 0.02% of the annual budget, a typical underspend for any corporation that is careful to avoid going overbudget. PG&E's statement that it was "stepping up" its vegetation management activities did not promise a specific budgetary increase. And it did not promise that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

every budgeted penny would be spent beyond 99.98% of the annual budget. It was not a false statement. Rather, it is a statement that has been completely misrepresented in the Shareholder Complaint to create the appearance of a false statement on the date that just happens to be the first date when one of the Former Shareholders purchased their first PG&E securities. PG&E's spending in 2015 did increase 2.5% over 2014. It is the Former Shareholders' representation of this statement that is false, not the statement itself. This is not "fraud on the market." It is "puffery" at most, mispresented in the Shareholder Complaint's allegations. If an investor relied on this statement to believe that they could invest in PG&E stock without a risk of wildfire damages, in the midst of a statewide state of emergency, they were a careless investor.

47.     The Shareholder Complaint's "Misstatement No. 2" is the allegation that a report dated October 16, 2015—within the class period—"falsely assured investors" that each year, PG&E "in consultation with utility arborists and foresters, inspects every mile of power line in our service area for public safety and electric reliability." (*Id*., ¶ 197). Yet Two years earlier, in PG&E's *Corporate Responsibility and Sustainability Report*, dated September 17, 2013, PG&E made the substantially identical representation, to the effect that:

> Each year, PG&E's Vegetation Management department inspects every mile of power line in our service area for public safety and electric reliability. The work is performed by 350 consulting utility arborists and foresters and more than 650 line clearance contractor crews.

48.     The above example is not isolated, but rather each of the false statements alleged in the Shareholder Complaint is identical or comparable to statements that the Debtors had been making for years. The fact that PG&E made the substantially identical statement two years before the purported class period does not necessarily mean that it was a truthful statement, but it means that there was no definitive "class period" during which misstatements were misleading potential shareholders into purchasing inflated stock. Rather, the "class period" merely coincides with the period when the Former Shareholders acting as Lead and Name Plaintiffs in the Shareholder Action happened to be buying and selling PG&E securities, and is nothing more than an impermissible attempt to create a "subset" of shareholders based upon the dates of their acquisitions, in an effort

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DRAFT

1  to carve out damages for themselves that were actually experienced by shareholders as a whole.

2  *Schuster*, 127 Cal. App. 4th at 314.

3      49.     The Former Shareholders' allegations of "false statements" do not create a claim

4  where the injury was to the corporation.  As the Ninth Circuit has held, "vague allegations about

5  misrepresentations that caused [the plaintiff shareholder] to support the unsuccessful merger

6  attempt and initiation of a receivership" were still derivative claims because "his only injury from

7  those misrepresentations was the devaluation of his stock when Barbary Coast was taken over by

8  the FDIC."  *Pareto*, 139 F.3d at 700.

9      50.     Because the direct/derivative nature of a shareholder's claim is based upon the

10 nature of the damages, a claim arising under federal securities laws may be brought <u>either</u> as a

11 direct or a derivative claim.  But it cannot be <u>both</u> to recover the same damages.  The same

12 "conduct" can lead to both direct and derivative damages.  But the same damages cannot support

13 separate direct and derivative claims.

14     51.     Just like the plaintiff in *Pareto*, the plain and unambiguous allegations in the

15 Shareholder Complaint demonstrate that the Former Shareholders have pleaded derivative claims

16 that "were for injury to [the corporation] itself, which ultimately reduced the value of the stock."

17 *Id.*, 139 F.3d at 699.

18     52.     Throughout the Shareholder Complaint, the Former Shareholders allege that the

19 value of their stock dropped <u>as</u> the liabilities that the Debtors faced for the North Bay Fires and

20 Camp Fire increased, and <u>because</u> the liabilities against the Debtors increased.  But in an effort to

21 avoid the obvious conclusion that their damages state a derivative claim belonging to the Debtors'

22 estate, the Former Shareholders repeatedly phrase their allegations to suggest that it was not the

23 liability itself that led to the stock drop, but that the stock declined because of the Debtors'

24 "disclosures" about their liabilities (¶ 384), or because the liabilities for the fires had been

25 "concealed by PG&E's false and misleading statements and omissions" (¶ 388), as if the future

26 liabilities were known information that was concealed in 2015 and 2016.

27     53.     Wordsmithing does not create a claim that does not otherwise exist under the

28 pleaded facts.  The damages that are pleaded in the Shareholder Complaint are damages to the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Debtors that translated into a loss in corporate value and an incidental loss in stock price. The Former Shareholders' personal damages are "incidental" to the Debtors' loss, not "independent," by their own allegations, and by the facts.

**FIRST CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS FOR DECLARATORY RELIEF**

54.     The TCC incorporates paragraphs 1-53 of this Complaint.

55.     The Shareholder Claims pleaded by the Former Shareholders in the Shareholder Complaint filed in the Pending Action are classic derivative claims that seek to recover damages that are incidental to the damages that the North Bay Fires and Camp Fire caused to Fire Victims and their insurance companies, who in turn have asserted claims against the Debtors' estate exceeding $25 billion. The unveiling of evidence showing that the Debtors were liable for the wildfires, and would face such mounting liabilities, caused an incidental drop in the value of the Debtors' stock.

56.     Under California law, the Former Shareholders cannot pursue claims against the Debtors or the D&O Defendants unless their damages are independent of the damages suffered by the Debtors' corporate enterprise. But the damages theory pleaded in the Shareholder Complaint pleads only incidental damages.

57.     The Shareholder claims are derivative of corporate claims against the Debtors' former directors and officers, and other defendants named therein, and are therefore property of the Debtors' estates in the above-captioned cases pursuant to 11 U.S.C. § 541, and fall under the exclusive jurisdiction of this Court pursuant to 28 U.S.C. § 1334(e).

58.     A declaration of the Court is necessary and appropriate to determine the respective rights of the Debtors, the TCC, the Fire Victims represented by the TCC, the future Fire Victim Trust, and the Former Shareholders, in the derivative claims that are pleaded in the Shareholder Complaint, and are identical to claims pleaded in related pending derivative actions.

**SECOND CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS, FOR DECLARATORY RELIEF**

59.     The TCC incorporates paragraphs 1-58 of this Complaint.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

60.     The Shareholder BK Claims, and any further individual proofs of claim asserting the same theory of damages, are derivative claims that are property of the Debtors' estates in these Chapter 11 Cases.  The Former Shareholders may not assert derivative claims against the Debtors' estates in these Chapter 11 Cases, as derivative claims may only be asserted by or on behalf **of** the Debtors (or their assignee) for the benefit of the estate or its creditors (or assignee), not **against** the Debtors.

61.     The Debtors' proposed Plan provides that the Assigned Claims, which include the derivative Shareholder BK Claims by definition, will be assigned to the Fire Victim Trust upon the effective date of the Plan.

62.     A declaration of the Court is necessary and appropriate to determine the respective rights of the Debtors, the TCC, the Fire Victims represented by the TCC, the future Fire Victim Trust, and the Former Shareholders, in the derivative Shareholder BK Claims.

## THIRD CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS, FOR INJUNCTIVE RELIEF

63.     The TCC incorporates paragraphs 1-62 of this Complaint.

64.     The Shareholder Claims are derivative of corporate claims against the Debtors' former directors and officers, and other defendants named therein, and are therefore property of the Debtors' estates in the above-captioned cases pursuant to 11 U.S.C. § 541, and fall under the exclusive jurisdiction of this Court pursuant to 28 U.S.C. § 1334(e).

65.     The Debtors' proposed Plan provides that the Assigned Claims, which include the Shareholder Claims by definition, will be assigned to the Fire Victim Trust upon the effective date of the Plan, for prosecution by the Fire Victim Trust for the benefit of all Fire Victims.  The Assigned Claims represent substantial and valuable consideration that the TCC bargained to obtain from the Debtors under the Debtors' Plan.  The Former Shareholders' efforts to litigate the derivative Shareholder Claims for their own benefit threaten to deprive the Fire Victim Trust, and therefore the Fire Victims, of substantial recoveries that it is their right to receive, in violation of the absolute priority rule.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

66. The Former Shareholders have not made any demand upon the Debtors for leave to pursue derivative claims against the D&O Defendant on behalf of the Debtors' estates.

67. The Former Shareholders should be enjoined from any further actions to prosecute the Shareholder Claims and the Shareholder BK Claims, each of which are derivative, or any further prosecution of the Pending Action in which the Shareholder Claims are asserted, pursuant to 11 U.S.C. § 105, in order to protect the value of these claims which are property of the Debtors' estates, to be assigned to the Fire Victim Trust, for the benefit of Fire Victims.

## **PRAYER**

WHEREFORE, the TCC respectfully requests the Court enter Judgment against the defendant Former Shareholders, as follows:

(a) Judgment declaring the Shareholder Claims are derivative corporate claims and not direct shareholder claims, and therefore are property of the Debtors' estates under 11 U.S.C. section 541, and under the jurisdiction of this Court in these Chapter 11 Cases pursuant to 28 U.S.C. section 1134(e);

(b) Judgment declaring that the Shareholder BK Claims filed in the Chapter 11 Cases are the same derivative claims pleaded against the Debtors by the Former Shareholders in the Pending Action, and therefore are property of the Debtors' estates under 11 U.S.C. section 541, and under the jurisdiction of this Court in these Chapter 11 Cases pursuant to 28 U.S.C. section 1134(e);

(c) Judgment preliminarily and permanently enjoining the Former Shareholders from further prosecution of the Shareholder Claims, the Shareholder BK Claims, and the Pending Action pursuant to 11 U.S.C. sections 105(a) and 362(a)(3);

(d) Costs of suit herein; and

(e) Any other relief that the TCC requests in open court or in a paper filed in Court, or that the Court finds is just or reasonable.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Dated: _____, 2020

2                                           BAKER & HOSTETLER LLP

3                                           By:    _/s/_____

4                                                  Robert A. Julian
                                                   Cecily A. Dumas
5                                                  David J. Richardson

6                                           *Counsel to the Plaintiff Official Committee of
                                            Tort Claimants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO