

Signed and Filed: February 28, 2020

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>   Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**MEMORANDUM DECISION REGARDING (1) VLAZAKIS' MOTION AS TO INAPPLICABILITY OF STAY, AND IN THE ALTERNATIVE FOR RELIEF FROM STAY (DKT. 4846) and (2) DEBTORS' MOTION TO REJECT VLAZAKIS' CONTRACT AND GRANT RELATED RELIEF (DKT. 5272)**

I.   Procedural History

    On November 22, 2019, George Vlazakis, Maria Barbis, John Barbis and Athanasia Vlazakis (collectively, the "Vlazakis Parties") filed a Motion as to Inapplicability of Stay, and in the Alternative for Relief from Stay ("MRS") (dkt. 4846), which

-1-

Pacific Gas and Electric Company ("Utility") and PG&E Corporation (collectively, "Debtors") opposed (dkt. 5089). At the initial hearing on the MRS, Debtors indicated that they intended to reject a contact relevant to the MRS. The court therefore directed Debtors to file a motion to reject the contract and a further opposition to the MRS and directed the Vlazakis Parties to file a further opposition thereafter.

On January 6, 2020, Debtors filed a Motion to Reject Vlazakis' Contract and Grant Related Relief and Brief in Support of Rejectability ("Motion to Reject") (dkt. 5272). The Vlazakis Parties filed an opposition on January 20, 2020 (dkt. 5415) and Debtors filed a reply on January 31, 2020 (dkt. 5588). Following a hearing on February 11, 2020, the court took both the MRS and the Motion to Reject under submission. For the reasons set forth below, the court is granting the former and denying the latter.

II. Relevant Facts

In 2015, the Utility purchased property in Oakland adjacent to a building owned by the Vlazakis Parties. That building is supported by three I-beams which cross a strip of land owned by the Utility and are bolted to the brick wall of the Utility's building. Without these I-beams, the Vlazakis Parties' building would likely collapse, as it has no exterior or interior wall of its own along the property line shared with the Utility. Decn. of Brian Garber, dkt. 5273-2, ¶ 4.

The Utility intends to build a new gas regulation substation at this location to meet safety standards and code requirements "and [to] enhance the inspection of gas

-2-

transmission lines and the safe management of the lines in an emergency." Motion to Reject at dkt. 5272, ECF pg. 7, lines 5-7; *see also* Decn. of Brian Garber, dkt. 5273-2, ¶ 3. To do so, it must remove the bolted I-beams. *Id.* As a result, the Vlazakis Parties' building will have no support for its roof. *Id.* at lines 14-15.

Upon realizing it would need to demolish its building in order to build the substation, the Utility entered into a letter agreement with the Vlazakis Parties in November 2017 (the "Letter Agreement"). The Utility agreed to buttress its wall to which the I-beams are attached and to convey the adjacent strip of land to the Vlazakis Parties, provided that it obtained necessary regulatory permits and approvals. Decn. of Brian Garber, dkt. 5273 at ¶ 7; Letter Agreement, dkt. 5273-1 at ¶ 4. In turn, the Vlazakis Parties agreed to "cooperate in the effort to obtain City Approval and CPUC Approval, including signing any related documents that may be necessary for such approvals." Letter Agreement, dkt. 5273-1 at ¶¶ 1 and 5.

Paragraph 2 of the Letter Agreement described the specific work that PG&E and the Vlazakis Parties contemplated:

> PG&E will reinforce the existing masonry wall on its property located at the Southeast corner of 3rd and Market Street, which constitutes the easterly wall of the existing building and immediately adjacent to the easterly property line. PG&E shall install wall bracings to stabilize the wall. All work will conform to standards and codes of applicable engineering and local state and federal codes.

Dkt. 5273-2 at ECF pg. 9.

-3-

The Utility contends that the Vlazakis Parties did not satisfy a condition imposed by the City of Oakland for regulatory approval of the project: the Vlazakis Parties had to make their property compliant with seismic codes and ADA law. The Vlazakis Parties refused, but the City of Oakland nonetheless approved the wall-bracing aspect of the proposed project. Decn. of Brian Garber, dkt. 5273 at ¶¶ 3, 9-10; Garber Decl. Ex. A. Thus, any noncompliance by the Vlazakis Parties was immaterial for the purposes of the underlying motions.

After the Utility received the required approval from the City of Oakland of the wall-bracing design contemplated by paragraph 2 of the Letter Agreement, "it became clear that the design was not compatible with the Utility's gas transmission engineers' plans for the Project." Decn. of Brian Garber, dkt. 5273 at ¶ 10. The Utility thus abandoned the design that was the subject of paragraph 2 of the Letter Agreement. Over the subsequent months and years, the Utility continued to work with the City of Oakland and the Vlazakis Parties and other regulatory agencies to address the encroachment and build the substation. *Id.* at ¶ 4-11.

After filing its chapter 11 petition on January 29, 2019, the Utility filed a state court complaint against the Vlazakis Parties, asserting causes of action for trespass and nuisance and seeking injunctive relief. The Vlazakis Parties filed an answer and sought relief to file an affirmative cross-complaint to assert a quiet title claim seeking legal and equitable rights to continued use of the wall. In particular, the Vlazakis Parties contended that the wall is a common party wall in which

-4-

they have an easement.  *See* Fourteenth Affirmative Defense in Answer of George Vlazakis, appended to Decn. of Ronald F. Berestka, Esq. at dkt. 5417, ECF pg. 33.

Because the Utility asserted that the cross-complaint violated the automatic stay, the Vlazakis Parties filed their MRS.  Debtors filed the Motion to Reject in response.

III. Discussion

In arguing that the Letter Agreement should be rejected, Debtors contend that performance is still owed by both sides to the agreement, and the Letter Agreement is thus executory.  The court disagrees.  An executory contract is one under which the obligations of both the debtor and the other party "are so far unperformed that the failure of either to complete performance would constitute a material breach and thus excuse the performance of the other."  *In re Robert Helms Const. & Dev. Co.*, 139 F.3d 702, 705 (9th Cir. 1998), *citing* Vern Countryman, *Executory Contracts in Bankruptcy*, 58 Minn. L. Rev. 439, 479 (1974).

The primary remaining performance due by the Vlazakis Parties is to provide PG&E and subcontractor "required access to parcels 011-0111-001 and 001-0111-002 for the stabilization of the masonry wall and construction of the concrete block wall; including the right to work, laydown and stage construction materials and equipment during the work."  *See* Letter Agreement, dkt. 5273-1 at pg. 3, ¶ 8.  As noted previously, however, the Utility has determined that the wall-bracing design requiring such access is not feasible.  Consequently, the contemplated performance by the Vlazakis Parties has been rendered

-5-

unnecessary for the purposes for which it was contracted. PG&E's own abandonment of the planned work described in paragraph 3 of the Letter Agreement absolved the Vlazakis Parties of the corresponding obligation to provide access for the performance of such work. There is no other term in the Letter Agreement giving rise to an ongoing and outstanding obligation to perform by the Vlazakis parties. Under governing Ninth Circuit law, therefore, the Letter Agreement is not executory and thus is not subject to section 365[1]. *See, e.g., In re Robert L. Helms Constr. & Dev. Co.*, 139 F.3d 702, 706 (9th Cir. 1998) (en banc) (to determine whether a contract is executory, a court looks "to outstanding obligations at the time the petition for relief is filed and ask whether both sides must still perform").[2] Stated differently, the conduct by the Utility after its decision not to go forward on the project leads the court to conclude from the undisputed facts of this long-simmering dispute that there simply was no longer a viable executory contract for it to reject under the Bankruptcy Code.

The issues in dispute in the state court action do not involve any question of bankruptcy law. To the contrary, the Utility asserts three causes of action arising under state law: (1) Abatement of Nuisance under Civil Code § 3479 *et seq.*; (2)

---

[1] 11 U.S.C. § 365.

[2] Given that the Letter Agreement is no longer executory, the court does not have to determine whether the decision to reject it satisfies the business judgment rule. *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007).

-6-

Trespass; and (3) Declaratory Relief (Removal of Encroachment). *See* Decn. of Ronald F. Bereska, Esq. at dkt. 5417, ECF pp. 5-13). Similarly, the claims asserted in the verified cross-complaint filed by the Vlazakis Parties are governed by California state law: (1) Quiet Title (Implied Easement by Existing Use); (2) Quiet Title (Prescriptive Easement); (3) Quiet Title (Easement by Necessity); (4) Breach of Contract; (5) Breach of Covenant of Good Faith and Fair Dealing; (6) Negligence; and (7) Declaratory Relief.

Even though the Utility's complaint and the Vlazakis Parties' complaint involve solely state law issues, Debtors seek to reject the Letter Agreement and thereby sever the breach of contract and breach of covenant causes of action from the balance of Vlazakis Parties' cross-claims, arguing that the addition of these cross-claims could delay the May trial date in state court (and thus the necessary construction of the new gas pipelines and gas regulation substation). Debtors assert that the breach of contract claims should be litigated through the bankruptcy court's claims allowance process. This court disagrees. Assuming that (and this court takes no position) the Letter Agreement somehow accords the Vlazakis Parties any equitable or monetary claims or defenses relating to the encroachment, the state court should resolve it under non-bankruptcy principles. This is particularly appropriate as the equitable defenses raised by the Vlazakis Parties include three claims for easement. Rejection of the Letter Agreement would not alter that outcome, as Section 365 cannot be used to reject

restrictive covenants and easements, assuming they in fact exist.[3]

IV. Conclusion

For the foregoing reasons, the court will deny the Motion to Reject and grant the MRS. Counsel for the Vlazakis Parties should upload orders for each motion, and comply with B.L.R. 9021-1(c) prior to uploading them.

**\*\*END OF MEMORANDUM\*\***

---

[3] In *Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994), the Seventh Circuit directly addressed whether a restrictive covenant on real property was an executory contract that could be rejected in a bankruptcy case. It reasoned that, although restrictive covenants contain the characteristics of both a contract and an interest in land, the primary nature of such covenants is preservation of a land interest not subject to section 365 termination or rejection. *Id.* at 298-99. In an unpublished decision, the Ninth Circuit Bankruptcy Appellate Panel followed and adopted the holding of *Gouveia v. Tazbir*. *In re Hayes*, 2008 WL 8444812 (9th Cir. BAP 2008).