Thomas R. Phinney – State Bar Number 159435
Donna T. Parkinson – State Bar Number 125574
**PARKINSON PHINNEY**
3600 American River Drive, Suite 145
Sacramento, CA 95864
Telephone:   (916) 449-1444
Facsimile:    (916) 449-1440
E-Mail: tom@parkinsonphinney.com

Attorneys for Outback Contractors, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                        Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>**OPPOSITION BY OUTBACK CONTRACTORS, INC. TO THE MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' TO ESTABLISH PROCEDURES FOR DISCOVERY PRECEDING PLAN CONFIRMATION;**<br><br>**JOINDER TO MOTION TO QUASH [Dkt No. 5896] FILED BY BLACK & VEATCH CONSTRUCTION, INC.**<br><br>Hearing Date:  March 10, 2020<br>Time:               10:00 a.m.<br>Place: Courtroom 17<br>           450 Golden Gate Ave., 16th Fl.<br>           San Francisco, CA 94102 |

Outback Contractors, Inc. ("Outback") hereby files this Opposition to Motion (**Dkt No. 5840**) ("Motion") to Establish Special Procedures regarding the enforcement of certain third-party subpoenas filed by the Official Committee of Tort Claimants (the "TCC"). Outback also joins in Black & Veatch Construction, Inc.'s Motion to Quash the Official Committee of Tort Claimants' Subpoena Pursuant to Fed. R. Civ. P. 45(d)(3) [**Dkt No. 5896**]. This Opposition is supported by the accompanying Declaration of Thomas R. Phinney.

TCC files its Motion based upon 11 U.S.C. § 105(a). TCC asks the court to override the mandatory and detailed statutory procedures governing subpoenas set forth at Fed. R. Civil Proc. 45, and instead asks the court to impose extraordinary procedures to expedite the TCC's enforcement of extraordinarily expansive and dubious subpoenas, and to prevent the third-party creditor targets from asserting their statutory rights. The Motion should be denied.

**Joinder in Black & Veatch Construction, Inc.'s Motion to Quash the Official Committee of Tort Claimants' Subpoena Pursuant to FRCP 45(d)(3)**

Outback joins entirely in the Motion to Quash **[Dkt No. 5896]** filed by Black & Veatch Construction, also set for hearing on March 10, 2020. As explained well in that motion, the subpoenas were not properly issued, and are extraordinarily invasive and expansive in scope, including demand for documents relating to the vendor's work and insurance coverage for customers other than PG&E.

**TCC's Desire for a Last-Minute Massive "Investigation" Does Not Create a Contested Matter or Otherwise Provide a Basis for its Motion**

TCC contends it seeks discovery "in connection with ongoing plan confirmation proceedings and the Assigned Claims and Causes of Action to be assigned to the Fire Victim Trust under [proposed] chapter 11 plan." The Motion indicates that the TCC agreed to support the Debtor's Plan which provides for a $13.5 billion "fire victim trust" and that such fire trust fund will, if the Plan is confirmed, also install a Fire Victim Trustee to "prosecute and settle" **entirely unspecified** claims that PG&E allegedly has against (among others) its vendors and contractors for causing some portion of the $56 billion of fire damages. The nature and scope of these supposedly enormous claims is entirely left for the imagination, other than they are in some way connected to PG&E causing fires.

The Motion provides that the TCC agreed to support PG&E's plan because the value of these alleged claims PG&E holds against its own vendors and contractors was "material" and "significant" consideration for its support, suggesting that the TCC had already investigated the issue as of December, 2019 and is counting on obtaining colossal sums of money (billions?) from the targets of its subpoenas.

At the same time, the Motion also explains it is merely looking for a better "understanding" of potential claims: "the ultimate goal of this *investigative process* is to obtain for the benefit of fire victims an *understanding* of the potential claims for which bankruptcy court jurisdiction will be reserved post-confirmation—and to do so with as much particularity as possible, *prior to solicitation and voting on the Debtors' Plan*."

The TCC's desire to conduct a last-minute massive investigation into supposedly massive claims against PG&E's vendors does not, as TCC posits, automatically create a "contested matter." A contested matter or lawsuit, or a 2004 order, is required to issue subpoenas. This is particularly true here where the responding party is apparently a target of a major lawsuit on (unspecified) issues anticipated to be filed (by another party) post-confirmation, if the Plan in its current form is confirmed.

The Motion fails to identify a basis for its subpoenas, let alone for extraordinary procedures to eliminate the responding party's protections in responding to the subpoenas and should be denied.

**Section 105 Cannot Be Used to Eliminate Statutory Protections under FRCP 45.**

TCC brings its Motion under 11 U.S.C. § 105 ("inherent powers"), and asks the court to override the statutory procedures for the protection of responding parties set forth in Fed. Rule Civ. Proc. 45, incorporated by Fed. R. Bankr. Proc. 9016. The Supreme Court has prohibited the use of Section 105 in this manner. "In exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." Law v. Siegel, 134 S. Ct. 1188, 1194 (2014).

**TCC's Motion Even If It Were Granted Is Too Late
to Meaningfully Promote Solicitation of Votes**

As explained in the Motion, "the ultimate goal of this *investigative process* is to obtain . . . an *understanding* of the potential claims. . .—and to do so with as much particularity as possible, *prior to solicitation and voting on the Debtors' Plan*.

Approval of the Disclosure Statement is set for hearing on March 10, 2020, the same day as the TCC's Motion. The implication from the TCC's motion is that if the court

eliminates the procedures to protect responding parties under FRCP 45, the TCC will be able to obtain and evaluate the massive response to its subpoenas in or before April and May, 2020, and thus when soliciting votes will be able to represent to other parties that the claims that PG&E holds against its vendors are worth another $x millions/billions, and that the $13.5 billion in the Fire Trust is just the beginning.

Assuming for purposes of argument only that the motion were granted, and all of the proposed vendor defendants marched to the TCC's plans to evaluate to what extent that these vendor targets in fact owe massive sums to PG&E, it is unrealistic to project that the TCC will be able to obtain any meaningful response to, and any meaningful evaluation of the response, in the next 60 days. It appears to be far too late for any kind of massive investigation of claims against vendors to support solicitation of votes. By the same token, it appears that the primary purpose of the subpoenas is ginning up post-confirmation lawsuits to be brought by another party, not "investigation" loosely related to the Plan.

TCC's self-inflicted "emergency" need to undertake a massive investigation of claims against potential vendor defendants does not justify the elimination of the responding party's rights as proposed in the Motion. Quite the contrary.

## Confidentiality

The Motion states at 6:24 that "All documents produced by the Vendors will be subject to this Court's Confidentiality and Protective Order dated August 6, 2019 [ECF Dkt. No. 3405]. This is a reference to a detailed Order with extensive provisions, and it is not clear how such provisions would apply. The Order provides at p. 10, among extensive other provisions:

> 7.1 Use of Discovery Material. A Receiving Party may use Discovery Material that is disclosed or produced by another Party **solely for the purposes of these Chapter 11 Cases** and **not for any other purpose, including any other litigation or judicial proceedings.**

The Order also provides that information will be maintained in confidentiality. If the TCC is agreeing to keep all responses confidential and not share them with the other parties

(such as if the Plan is confirmed the party that is going to sue the vendors), that should be explained and clarified.

### Why Isn't TCC's Motion Against the Debtor?

The documents showing the vendor's work for PG&E, including insurance relating to that work, is available from PG&E. This is the vast bulk of the documents requested. The motion makes no mention of asking PG&E for these records, which should be a pre-requisite to issuing third party subpoenas.

### The Court Should Not Authorize Any Short-Circuiting of FRCP 45

The court should not authorize any short-circuiting of the protections to responding parties set forth in FRCP 45. If the court wants to appoint a mediator to attempt to help broker an agreement between particular parties, that is one thing, but there is no basis for TCC's request that the court appoint a non-judge "special master" to adjudicate disputes. Responding parties are entitled to have discovery disputes resolved by this court and by a sitting judge. Similarly, the proposed rule that Responding Parties be limited to stating their objections in a sentence or two, and prohibited from showing their communications with counsel for the TCC in support of their objections, is far out of bounds and should not be approved.

### Conclusion

For the foregoing reasons, Outback Contractors requests that the Motion be denied, or in the alternative, any special procedures imposed do not vary from or detract from the protections to responding parties set forth in FRCP 45.

Dated: March 2, 2020           **Parkinson Phinney**
By:     /s/ Thomas R. Phinney
Thomas R. Phinney
Attorneys for Outback Contractors, Inc.