DANIEL F. MCLENNON, ESQ. (SBN 124810)
CRAIG WALLACE, ESQ. (SBN 174043)
SMITH CURRIE & HANCOCK LLP
275 Battery Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 394-6688
Facsimile: (415) 394-6687
E-mail: cwallace@smithcurrie.com

Attorneys for Non-Party Objector (re Subpoena)
MLU Services, Inc.

**FILED**

MAR 03 2020

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br> -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ■ Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | BANKRUPTCY CASE NO. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **MLU SERVICES, INC., OBJECTION TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' MOTION TO ESTABLISH PROCEDURES FOR DISCOVERY PRECEDING PLAN CONFIRMATION (RE THIRD PARTY SUBPOENA)** <br><br> Date: 03.10.20 <br> Time: 10:00 am <br> Dept: Courtroom 17 <br> 450 Golden Gate Ave., 16th Fl <br> San Francisco, CA 94102 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

MLU Services, Inc., ("MLU") submits it Objection to the Official Committee of Tort Claimants' ("TCC") Motion to Establish Procedures for Discovery Preceding Plan Confirmation. MLU is not a party to this matter. MLU was served with a Subpoena on behalf of the TCC and

1

timely objected to the subpoena. In response to such objection, MLU was served with TCC's Motion seeking entry of a proposed order related to establishing a procedure regarding objections to the subpoena.

## I. INTRODUCTION

TCC's proposed plan should be partially rejected. The plan as proposed places the initial burden on the non-party entities that were subpoenaed, like MLU, to establish objections and comply with TCC's proposed procedure. The burden should be on TCC as a party to the case to first establish good cause for the documents requested in its subpoena. This requires, among other things, that there be some basis for seeking the requested documents from the third party, like MLU. Case law establishes that seeking documents from *non-parties* which can be obtained from the *parties* to the case imposes an undue burden on a subpoenaed party, such as MLU. TCC should first establish that the requested documents, such any MLU contracts with PG&E which are requested in the subpoena, cannot be obtained from PG&E. The proposed process should incorporate such a step as a preliminary activity before the non-party is obligated to act.

In addition, TCC should have the initial burden to establish that the documents sought from a non-party, like MLU, have any bearing on the issues. Here, TCC seeks documents dating back to 2013 related to particular fires. TCC's initial burden should be to establish that a non-party like MLU even conducted any activity in a fire area, and any documents sought via subpoena should be narrowed accordingly prior to issuance of the subpoena. In this manner, the initial burden is properly placed on TCC, and not non-party MLU.

Last, the large majority of documents sought are broad categories of insurance related documents. Twelve of the fifteen categories of documents are insurance related documents, such as

Case: 19-30088    Doc# 6035    Filed: 03/03/20    Entered: 03/03/20 15:10:41    Page 2 of 9

documentation of claims made on any insurance policies in the past 6 years and the remaining limits available under such policies. While insurance policies can be sought from *parties* to litigation under the FRCP, the insurance policies themselves are nonetheless irrelevant. Here, the policies are sought from *non-parties*, without any context, such as an allegation of some improper conduct, to justify such an intrusive request. Moreover, the subpoena seeks insurance related documents far beyond only the policies. This broad swath of insurance documents sought from a non-party is inappropriate. Any process must start with placing the burden on TCC to establish good cause for the insurance policies sought by the subpoena in light of the FRCP requirements related to such documents.

Any approved process related to the subpoenas should properly place the initial burdens on TCC and not non-party MLU. Only after these reasonable initial burden are met by TCC as confirmed by a special master, then the proposed objection and meet and confer process should proceed.

## II. THE SUBPOENA

On or about 01.09.20, TCC issued a subpoena directed at MLU. (Wallace Decl., Exh. A.) MLU understands there were approximately 100 similar subpoenas served by TCC. The subpoena to MLU seeks 15 categories of documents. Categories one and two, generally stated, seek all contracts and indemnity agreements between MLU and PG&E dating back to 2013. Category three seeks reports, analyses, summaries, or descriptions of work by MLU for PG&E dating back to 2013. The remainder, categories 4 through 15, seeks purely insurance related information in a broad unfettered swing. These categories seek far–reaching things like all "coverage positions and insurance analyses" related to all of MLU's work *other than PG&E work* dating back to 2013, and "payment of Your defense costs" by insurers dating back to 2013.

3

MLU timely objected to the subpoena on 01.22.20 via a letter to TCC counsel. MLU asserted various objections, including relevance, undue burden, confidentiality, and various privileges as to all the requests.

This Motion resulted. In the motion, TCC proposes a process that imposes the burden on the non-parties to participate in a live meet and confer process. If a dispute remains, the objecting parties have to set out their objections in writing to the special master, and TCC responds in writing. TCC will aggregate the objections from ALL objecting parties for the special master. A telephone conference with the special master will result, and the special master is authorized to enter tentative ruling compelling production (but, as proposed, it seems the special master will not be able to issue a tentative ruling to preclude production of the requested documents).

Nowhere in the process does TCC have any initial burden to establish good cause for the requested documents or to establish the requested documents are relevant or meet some sort of preliminary proportionality standard. Instead, the non-parties, to protect their rights, are obligated to engage in the time and expense of the process all the way through a special master ruling on an aggregation of objections from numerous objectors. The process should put the initial burden on TCC and not the non-parties, and only after meeting these burdens should TCC's proposed meet and confer process apply.

### III. AUTHORITY

The Court has authority under the FRCP Rule 26 to establish procedures which place the initial burden on TCC and not the non-parties.

FRCP Rule 26(b)(2)(C) provides in pertinent part:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

4

MLU SERVICES, INC. OBJECTION RE MT ESTABLISH PROCEDURES
BANKRUPTCY CASE NO. 19-30088 (DM)

FRCP Rule 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FRCP Rule 26(a)(1)(A)(iv) requires, as to insurance information for a *party to the case,* that the following information shall be produced:

> any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

This insurance related clause can only be applicable when there is "a possible judgment in the action" so necessarily is only an obligation of a party to the case, not a non-party like MLU, and also requires that some sort of claim be alleged or established in order to determine what "possible" judgment might arise. Moreover, this clause, if applicable, only requires production of an insurance agreement, i.e., an insurance policy, and nothing more relating to insurance.

The case law establishes that documents should first be sought to be obtained from a party to the litigation before burdening a non-party via subpoena. (*Soto v Castlerock Farming and Transport, Inc.* (E.D. Cal. 2012) 282 F.R.D. 492, 505.) Failure to show the effort to first obtain documents from a party, but instead subpoenaing a non-party constitutes an undue burden on the non-party. (*Id.*) "When an opposing party and a non-party both possess documents, the documents should be sought from the party to the case." (*Id.*) (See, *Nidec Corp. v Victor Co. of Japan* (N.D.Cal.2007) 249 F.R.D.

5

575, 577, "there is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.")

FRCP Rule 26 is in accord where it authorizes the Court to limit discovery "if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." (FRCP Rule 26(b)(2)(C)(i).)

TCC seeks contract and indemnity agreements between MLU and PG&E. (Category Nos. 1 and 2.) PG&E will have these documents. Before serving a subpoena, TCC should be required to obtain these documents from PG&E which is a party to the action, or should establish that, despite due diligence, the documents cannot be obtained from PG&E.

Any process implemented by the Court should impose this initial burden on TCC prior to permitting any such subpoena to be served. If a special master is to be used, TCC should be required to initially establish to the special master's satisfaction that such documents cannot be obtained from PG&E rather than burdening third parties.

Assuming that burden is met, the next step is that any process should reasonably impose an obligation on TCC to reasonably establish that the subpoenaed party conducted some activities in a fire area. Stated otherwise, there should be some initial good cause hurdle requirement imposed via the proposed special master process. Regarding a subpoena, "'[g]ood cause' may ordinarily be sustained by a claim that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause the moving party 'undue hardship or injustice.' (fn.7 citation omitted.) And the burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents." (*Boeing Airplane Co. v Coggeshall* (1960) 280 F.2d 654, 659.) An initial burden should be imposed

6

MLU SERVICES, INC. OBJECTION RE MT ESTABLISH PROCEDURES
BANKRUPTCY CASE NO. 19-30088 (DM)

on TCC that it demonstrate the requested documents are "necessary" to establish a claim, such as that the third-party actually performed work in a fire area.

PG&E should have documents establishing where its vendors worked. The subpoena served on MLU seeks all documents that "constitute or memorialize reports, analyses, summaries, or descriptions of Your work for PG&E dating back to 2013." (Category No. 3.) There is no other limitation – the work does not even need to be anywhere near a fire. Responding to this request would require MLU to redirect resources to review all its work documents, for 6 years, to try to respond this request. While MLU appreciates that this can be addressed via an objection, the point highlights that TCC, not a non-party like MLU, should be burdened with establishing that the documents its seeks are actually related to a fire before the subpoena is enforceable. Any process of using the special master should also impose this initial burden on TCC, that is, that the documents its seeks are "relevant to any party's claim or defense and proportional to the needs of the case" as required by FRCP Rule 26 (b)(1). TCC should be required to establish to the special master's satisfaction that the party to be subpoenaed actually conducted activities in a fire area, and the documents sought limited to that work, rather than initially burdening non-parties to object and establish they did not work in a fire area.

The concept of establishing good cause would also apply to the wide and improper array of insurance related documents requested in the MLU subpoena. The majority of the categories in the subpoena relate to insurance. Seeking insurance documents puts the cart well before the horse – it is like a remedy in search of a problem. Any process should refocus the inquiry, and limit it, and this initial burden should be on TCC well before it has to start objecting and addressing aggregated objections through the special master process.

7

MLU SERVICES, INC. OBJECTION RE MT ESTABLISH PROCEDURES
BANKRUPTCY CASE NO. 19-30088 (DM)

Case: 19-30088    Doc# 6035    Filed: 03/03/20    Entered: 03/03/20 15:10:41    Page 7 of 9

The only insurance documents that can be sought in discovery are insurance agreements themselves, i.e., insurance policies. And not just any policy, but a policy that "may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." (FRCP Rule 26(a)(1)(A)(iv).) That Rule governs a *party* to the action, i.e., an entity that has been sued and at least has claims alleged against it. The existence of a claim provides the context relevance to evaluate insurance. Here, in stark contrast, MLU is not a party to any litigation, is not aware of any evidence against it supporting a claim alleged against it, and to MLU's knowledge, there are not any even claims alleged at all, whether against MLU or others. There is not any context to respond to a request seeking insurance information that "may be liable to satisfy all or part of a possible judgment in the action."

Again, while this can be addressed via objections, here, any process should impose an initial burden on TCC to establish some sort of framework for good cause to even request insurance *policies*, let alone all the other improper insurance information sought by the subpoena. As a further example, TCC seeks all different types of insurance policies from MLU, like "Directors and Officers insurance policies." (Subpoena Category No. 6.) TCC should have an initial burden in any process to establish some sort of good cause for a claim that would be related to a D&O policy coverage, before forcing the non-parties to engage in a meet and confer process about such an issue. The same rationale applies to the remainder of TCC's requests related to insurance, including such requests as "insurance policies . . . that provide defense coverage . . arising from or related to Your services or acts" since 2013 (Category No. 9), "coverage positions and insurance analyses" (Category No. 10 and 11), insurance "coverage positions and analyses" for "work that You performed for any entity other than PG&E" (Category No. 12 and 13), documents related to "payment of Your defense costs" by

8

any insurer since 2013 (Category No. 14), documents showing "insurance policy limits remaining available" on any policy since 2013 (Category No.15).

MLU proposes that if any procedure is to be established, it should place the initial burden on the parties in the case, and not the non-parties. The procedure should provide that TCC first make an initial showing to the special master that despite reasonable diligence, the documents which TCC wishes to subpoena cannot be provided by PG&E or other *party* in the action. The next burden is that TCC be required to demonstrate good cause to the special master for the requested documents, including demonstrating that the subpoenaed party actually conducted activities in a fire area, and then any subpoenaed documents be limited to such work. Last, TCC should have the initial burden to establish allegations or a claim against a subpoenaed party such that a request for an insurance policy has some context sufficient to permit such subpoenaed party to respond. The insurance information should be limited to insurance agreements per Rule 26(a)(1)(A)(iv). The requests for insurance information beyond a policy should be precluded barring a demonstration to the special master sufficient to demonstrate the relevance of such requested insurance-related documents. After TCC meets all these initial burdens, thereafter, particular objections can be addressed via meet and confer sessions and using the special master to resolve the objections.

DATED: March 3, 2020　　　　　　　　　　SMITH CURRIE & HANCOCK LLP


By: /s/ Craig Wallace
　　　Craig Wallace
　　　Attorneys for Objector
　　　MLU Services, Inc.

9