Aaron L. Agenbroad (SBN 242613)
alagenbroad@jonesday.com
Jason McDonell (SBN 115084)
jmcdonell@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

David S. Torborg (*pro hac vice* forthcoming)
dstorborg@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Attorneys for Non-Parties*
*General Electric Company and*
*GE Grid Solutions, LLC*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**GENERAL ELECTRIC COMPANY AND GE GRID SOLUTIONS LLC'S OBJECTION TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' MOTION TO ESTABLISH PROCEDURES FOR DISCOVERY PRECEDING PLAN CONFIRMATION**<br><br>Hearing<br>Date: March 10, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Fl.<br>San Francisco, CA 94102 |

General Electric Company ("GE") and GE Grid Solutions, LLC ("GE Grid Solutions"), as non-parties to the above-captioned Chapter 11 cases, submit this Objection to The Official Committee of Tort Claimants' Motion to Establish Procedures for Discovery Preceding Plan Confirmation, Dkt. No. 5840 (the "Procedures Motion"). This Objection is supported by the accompanying Declaration of David S. Torborg.

## PRELIMINARY STATEMENT

GE and GE Grid Solutions are two of more than 120 PG&E contractors to receive identical Rule 45 subpoenas from the Tort Claimants Committee (the "TCC"). The subpoenas to GE and GE Grid Solutions (the "Subpoenas") seek, for a seven-year period, broad categories of documents related to GE's and GE Grid Solution's contracts with PG&E, as well as extensive information concerning GE's and GE Grid Solution's insurance policies. The Subpoenas are not tied to any "adversary proceeding" or "contested matter" pending before this Court, as required by Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 9002(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). On that basis alone, the Court should deny the Procedures Motion.

Nor do the Subpoenas seek information relevant to any plan confirmation proceeding, contested or otherwise. Rather, the contractor subpoenas attempt to use these bankruptcy proceedings to investigate potential *new* claims that would be assigned to the TCC-controlled Fire Victim Trust created under a proposed plan of reorganization (Dkt. No. 5590) (the "Plan"). The TCC has admitted that it has no basis today to believe there are factually-supported, cognizable claims against GE or GE Grid Solutions related to the wildfires precipitating PG&E's bankruptcy.

In an apparent effort to avoid judicial scrutiny, the TCC now proposes a remarkable set of "procedures" to adjudicate challenges to the contractor subpoenas. The TCC's "streamlined" process for an "aggregate" adjudication of those challenges would override the protections provided in the Federal Rules and well-established case law. Indeed, the TCC's proposal—which would turn the entire process over to a Special Master—collapses at its first step because Special Masters are expressly *not* authorized in bankruptcy cases. *See* Fed. R. Bankr. P. 9031.

The Court should reject the TCC's Procedures Motion.

## BACKGROUND

GE and GE Grid Solutions have provided, and continue to provide, various products and services to PG&E, including transformers, power sensing equipment, capacitors, monitoring and diagnosis equipment, UR relays, and software; services include Grid Automation, consulting services and engineering, procurement and construction services. On or around January 21, 2020, the TCC issued subpoenas to GE and GE Grid Solutions. The Subpoenas appear identical in every respect to subpoenas that the TCC issued to more than 120 other PG&E contractors.[1] Each contains fifteen broad requests seeking documents "for the time period 2013 to the present." Each seeks "any and all contracts" and all "indemnification and/or hold harmless agreements" between GE/GE Grid Solutions and PG&E, as well as any "reports, analyses, summaries, or descriptions" concerning that work. Request Nos. 1-3. Each seeks "all documents," including policies, applications, declarations, policies and endorsements, related to any insurance policy covering GE or GE Grid Solutions, regardless of whether those polices relate to their work for PG&E. Request Nos. 4-15.

Counsel for GE and GE Grid Solutions contacted counsel for the TCC on February 3 and 5, 2020 to discuss the subpoenas, including the procedure under which they were issued and the relevance of the information sought. Torborg Decl. ¶ 4. TCC counsel asserted that the Subpoenas were being issued in connection with a "contested" plan confirmation hearing. Torborg Decl. ¶ 4. Counsel further asserted that the Subpoenas sought information related to potential fire-related claims against contractors that had been assigned to a victim's trust under a TCC-supported Plan. *Id.* ¶ 5

When asked, TCC counsel was unable to identify specifically any GE or GE Grid Solutions product or service that could potentially be implicated in any of the fires precipitating PG&E's bankruptcy or related liabilities of PG&E. *Id.* ¶ 5. Rather, counsel indicated that GE and GE Grid Solutions were on a list of contractors produced by the Debtors and provided general information regarding some of the products and services that GE and GE Grid Solutions

---

[1] The subpoenas served on GE and GE Grid Solutions are attached as **Exhibits A and B** to the Declaration of David S. Torborg ("Torborg Decl."), filed contemporaneously herewith.

had provided to the Debtors. *Id.* ¶ 5. TCC counsel provided a document titled "Fire Circuits and Origin Locations" (**Exhibit C**) and invited GE and GE Grid Solutions to determine whether any of their products or services were provided at these locations. TCC counsel further stated that the TCC would consider withdrawing the Subpoenas if GE and GE Grid Solutions could verify that none of their products or services were used or provided at those locations. *Id.* ¶ 6.[2] Because GE and GE Grid Solutions products and services are sold to PG&E in bulk and as inventory, neither GE nor GE Grid Solutions are presently aware, nor able to confirm, any connection between their products and services and the fires at issue, and they have no effective way of determining where PG&E deployed their equipment throughout its system. *Id.* ¶ 7. Presumably, that information is in the hands of PG&E, and should be sought from the party best able to produce such information, namely, PG&E. *See Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492, 505 (E.D.Cal. 2012) ("Where plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party.").

TCC counsel agreed to provide GE and GE Grid Solutions a 30-day extension (until March 5, 2020) to respond to the Subpoenas and advised that the TCC expected to file a motion to establish a "process" for adjudicating objections to the contractor subpoenas. *Id.* ¶ 8. The TCC filed its Procedures Motion on February 19, 2020. ECF Dkt. No. 5840 at 1. On February 25, 2020, TCC counsel granted GE and GE Grid Solution's request for an extension to respond to the Subpoenas until ten days after the Court rules on the Procedures Motion. *Id.* ¶ 9.

**ARGUMENT**

I. **LEGAL STANDARD**

Rule 45, adopted by Bankruptcy Rule 9016, governs the Subpoenas. *See* Fed. R. Bankr. P. 9016. Under Rule 45, the discovery sought must be relevant to the claims and defenses at issue in a proceeding, not privileged, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The Ninth Circuit has long held that nonparties subject to discovery requests deserve

---

[2] While the document purports to provide an "Origin Location" of various fires, it does not indicate the particular cause of the fire—including what types of products were implicated—at any of the listed locations.

extra protection from the courts." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).

Absent extraordinary circumstances or consent, a Rule 45 subpoena can only be enforced by a court for the district where compliance of the subpoena is required, which for document requests is "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2), (f). If the recipient of a Rule 45 subpoena serves objections within 14 days after the subpoena is served (or within the time period of any extension), the serving party has the burden of moving the court for the district where compliance is required for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i). The responding party also has the option of moving to quash the subpoena. Fed. R. Civ. P. 45(d)(3).

## II. THE RULE 45 SUBPOENAS ARE PROCEDURAL IMPROPER BECAUSE THEY WERE NOT SERVED IN ANY PENDING "ACTION."

Before a party may issue a Rule 45 subpoena, "there must be an 'action' pending in order for a subpoena to be issued." *In re Patel*, No. 16-65074-LRC, 2017 WL 377943, at *2 (Bankr. N.D. Ga. Jan. 26, 2017) (citing *Application of Royal Bank of Canada*, 33 F.R.D. 296 (S.D.N.Y. 1963)); Fed. R. Civ. P. 45(a)(2) (Rule 45 subpoenas "must issue from the court where the action is pending"). Bankruptcy Rule 9002(1) defines "action" or "civil action"—as used in the Federal Rules of Civil Procedure—as "an adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter." "Adversary proceedings" are specifically defined, *see* Fed. R. Bankr. P. 7001, while "contested matters" include any request for relief in the main bankruptcy proceeding that is contested.

Here, the TCC's Subpoenas do not identify an adversary proceeding, *see* Torborg Decl., Exs. A & B (leaving blank sections for "adversary proceeding"). Nor do the Subpoenas identify any contested matter. The Procedures Motion asserts that the Subpoenas are directed to issues "central to the final stages of the ongoing plan confirmation proceedings …." Dkt. No. 5840 at 1. But a confirmation proceeding by itself is not a contested matter. Rather, only "[a]n objection to confirmation" of a plan qualifies as a contested matter. *See* Fed. R. Bankr. P. 3020(b)(1); *Bullard*

*v. Blue Hills Bank*, 135 S. Ct. 1686, 1694 (2015) ("An objection to a plan initiates a contested matter."); *In re Rosa*, 495 B.R. 522, 525 (Bankr. D. Haw. 2013) (explaining that "[t]he filing of a plan does not … initiate a contested matter" and "[p]lan confirmation becomes a contested matter only when an objection is filed").

So far as GE and GE Grid Solutions are aware, no objections to the Plan have been filed. The Procedures Motion suggests no such objections currently exist. *See* Dkt. No. 5840 at 3 (arguing requested documents may be central to "*any* Plan objections going to the value of the Assigned Claims") (emphasis added).

Because they were not issued in connection with any qualifying "action," the Procedures Motion should be denied.

### III. THE SUBPOENAS IMPROPERLY SEEK TO "INVESTIGATE" NEW "POTENTIAL CLAIMS," NOT INFORMATION RELEVANT TO ANY POTENTIAL "CONTESTED" PLAN CONFIRMATION HEARING.

Even if objections to the Plan were filed, the TCC fails to explain *how* the information sought in the Subpoenas would be relevant to any contested confirmation proceeding. The TCC says that it seeks to "better understand and assess the value of the Assigned Rights and Causes of Action (the 'Assigned Claims') for Plan confirmation purposes." Dkt. No. 5840 at 2. But the TCC has *already accepted* the consideration its constituents would receive under the proposed plan, including as to the Assigned Claims. So even if the value of the Assigned Claims eventually "*may* be central in *any* Plan objections," *id.* at 3 (emphasis added), the TCC fails to explain why *it* needs more information to value the Plan's compensation package for fire victims. It has already agreed to support the plan through a Restructuring Support Agreement. On the face of TCC's Subpoena requests, TCC has failed to establish or explain how GE or GE Grid Solutions have, or should have, a role in that process.[3]

---

[3] Even if one accepted the TCC's highly questionable premise that the discovery sought by the contractor subpoenas was relevant to plan confirmation, the discovery should be deferred until any objections to the Plan have actually been filed and the disputed issues in any contested confirmation hearing have been identified and narrowed. It is impossible at this point to determine if the information requested in the contractor subpoenas is "relevant to any party's claim or defense and proportional to the needs of the case," as required under Rule 26(b)(1).

The real purpose of the Subpoenas, of course, is to initiate—at the Debtors' expense—an "investigative process" that finds new "potential claims" for the Fire Victim Trust, Dkt. No. 5840 at 3, including what insurance might be available to pay such claims.[4] That is not a proper use of Rule 45, which permits discovery only in actual cases and is not permitted "to conduct a fishing expedition in search of other potential defendants not related to this action." *Specialized Bicycle Components, Inc. v. Barton*, No. C10-05725 HRL, 2011 WL 1599653, at *2 (N.D. Cal. Apr. 28, 2011) (internal quotations omitted). *Cf. Palumbo v. Shulman*, No. 97 Civ. 4314, 1998 U.S. Dist. LEXIS 11467, at *15, 1998 WL 436367 (S.D.N.Y. July 24, 1998) ("Discovery is not to be used as 'a hunting license to conjure up a claim that does not exist.'" (quoting *Avnet, Inc. v. Am. Motorists Ins. Co.*, 115 F.R.D. 588, 592 (S.D.N.Y.1987)). Indeed, even the meet-and-confer process triggered by issuing the subpoenas seems designed to enlist counsel for the subpoena recipients into the TCC's investigation of potential claims.

## IV. THE TCC'S PROPOSAL TO RESOLVE OBJECTIONS TO THE CONTRACTOR SUBPOENAS VIOLATES THE BANKRUPTCY AND FEDERAL RULES.

The TCC's proposed approach to "streamline resolution of [objections to the contractor subpoenas] into one process," Dkt. No. 5840, is untenable under the Bankruptcy and Federal Rules. Initially, the scores of objections that the TCC has received on its procedurally improper and overreaching contractor subpoenas is a problem of its own making. Any "streamlining" should have been done by the TCC on the front-end, before it dispatched more than 120 subpoenas to seemingly every subcontractor to have provided particular types of products or services to PG&E. In any event, the TCC's proposed approach is prohibited by the Bankruptcy and Federal Rules.

The TCC's proposal that "[a] special master shall be appointed by the Court to resolve any disputes that require intervention ….," Dkt. No. 5840 at 4, is not permitted by the Bankruptcy Rules. Bankruptcy Rule 9031—titled "Masters Not Authorized"—provides that "Rule 53 F.R.Civ.P. does not apply in cases under the Code." Fed. R. Bankr. P. 9031. The Advisory

---

[4] The subpoenas ignore that "insurance policies of non-parties are not discoverable." *See In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *11 (D. Mass. Nov. 13, 2013).

Committee Notes are Rule 9031 is explicit: "This rule precludes the appointment of masters in cases and proceedings under the Code." Accordingly, the Court is simply not permitted to delegate adjudication of challenges to the contractor subpoenas to a Special Master.

The TCC's proposal is also inconsistent with the Federal Rules. While Rule 83 allows a district court to "adopt and amend rules governing its practice," those local rules "must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075 …." Fed. R. Civ. P. 83. The Supreme Court adopted Rule 45 under 28 U.S.C. § 2072 and the Bankruptcy Rules under 28 U.S.C. § 2075. Here, every aspect of the TCC's proposed procedures is inconsistent with the Rule 45. Among other things:

- Under the TCC's approach, a Special Master—instead of a district court were compliance is required—can command a third party to produce documents.[5]

- The TCC's approach requires the third party to participate "in a meet-and-confer discussion over the phone with TCC counsel" before it submits an objection to the subpoena. That is not consistent with the approach set forth in Rule 45(d)(2)(B).

- The TCC's approach eliminates the serving party's responsibility to "move the court for the district where compliance is required for an order compelling production or inspection," Rule 45(d)(2)((B)(i), and the third party's right to submit a brief setting forth their points and authorities for objecting to the subpoena. The TCC replaces the ordinary procedure with a process by which the "Objecting Party may only include in the list a sentence or two briefly stating the basis for the objection" and cannot include "extensive argument or case law" or "any history of exchanges of emails, letters, etc." Dkt. No. 5840 at 4.

- The TCC's approach alters the normal time frames established in the Federal and Local Rules for adjudicating challenges to Rue 45 subpoenas.

- The TCC's approach eliminates, by design, any individualized attention provided in Rule 45 to a third party's objection to a subpoena, replacing it with an "aggregate" process by which the "TCC will aggregate all objections from all Objecting Parties that are pending at the time, and the TCC's responses to same, into one list for the submission to the Special Master." *Id.* at 5. "No briefing shall be included in the filing." *Id.* The Special Master would then "set a telephonic hearing to resolve the list of objections and hear brief factual argument from Objecting Parties and the TCC." *Id.*

- If the Special Master overrules an Objecting Party's objections, "all responsive, non-privileged documents" must be produced within 14 days. The TCC's

---

[5] The subpoenas to GE and GE Grid Solutions indicate the place for compliance is the offices of TCC's counsel in Los Angeles, California.

approach provides no opportunity to review the Special Master's rulings. Dkt. No. 5840 at 4-5.

Even if a Special Master could be appointed in these bankruptcy proceedings, the TCC's proposed procedures are inconsistent with Federal Rule 53. Rule 53, which governs the use of Special Masters, provides that a court "may appoint a master only to … perform duties consented to by the parties." Fed. R. Civ. P. 53(a)(1)(A). GE and GE Grid Solutions are not aware of anyone other than the TCC who has consented to use of a Special Master to resolve the contractor subpoenas, including, without limitation, the Subpoenas. Rule 53 further provides that a "party may file objections to—or a motion to adopt or modify—the master's order, report, or recommendations not later than 21 days after a copy is served, unless a court sets a different time." Fed. R. Civ. P. 53(f)(2). Unless otherwise stipulated otherwise, the court must conduct a de novo review of all findings of fact made or recommended by the master; conclusions of law are also subject to de novo review. *See* Fed. R. Civ. P. 53(f)(3)-(4). The TCC's proposal contains no provisions for objecting to or reviewing the Special Master's orders.

## CONCLUSION

For the foregoing reasons, the Court should reject the TCC's Procedures Motion.

Dated: March 3, 2020

JONES DAY

 */s/ Aaron L. Agenbroad*
Aaron L. Agenbroad (SBN 242613)
alagenbroad@jonesday.com
Jason McDonell (SBN 115084)
jmcdonell@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

David S. Torborg (*pro hac vice* forthcoming)
dstorborg@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700