1   WEIL, GOTSHAL & MANGES LLP
    Stephen Karotkin (*pro hac vice*)
2   (stephen.karotkin@weil.com)
    Ray C. Schrock, P.C. (*pro hac vice*)
3   (ray.schrock@weil.com)
    Jessica Liou (*pro hac vice*)
4   (jessica.liou@weil.com)
    Matthew Goren (*pro hac vice*)
5   (matthew.goren@weil.com)
    767 Fifth Avenue
6   New York, NY 10153-0119
    Tel: 212 310 8000
7   Fax: 212 310 8007

8   KELLER BENVENUTTI KIM LLP
    Tobias S. Keller (#151445)
9   (tkeller@kbkllp.com)
    Jane Kim (#298192)
10  (jkim@kbkllp.com)
    650 California Street, Suite 1900
11  San Francisco, CA 94108
    Tel: 415 496 6723
12  Fax: 650 636 9251

13  *Attorneys for Debtors*
    *and Debtors in Possession*

14

15          **UNITED STATES BANKRUPTCY COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
16          **SAN FRANCISCO DIVISION**

17                                            Bankruptcy Case No. 19-30088 (DM)

18  **In re:**                               Chapter 11

19  **PG&E CORPORATION,**                    (Lead Case) (Jointly Administered)

20          **- and -**                      **DECLARATION OF MICHAEL F.**
                                             **FITZPATRICK, JR. IN SUPPORT OF**
21  **PACIFIC GAS AND ELECTRIC**             **APPLICATION OF DEBTORS PURSUANT**
    **COMPANY,**                             **TO 11 U.S.C. § 327(e), FED. R. BANKR. P.**
22                                           **2014(a) AND 2016, AND THE ORDER**
                             **Debtors.**    **AUTHORIZING THE DEBTORS TO**
23                                           **EMPLOY PROFESSIONALS USED IN THE**
    ☐ Affects PG&E Corporation               **ORDINARY COURSE OF BUSINESS FOR**
24  ☐ Affects Pacific Gas and Electric       **AUTHORITY TO RETAIN AND EMPLOY**
    Company                                  **HUNTON ANDREWS KURTH LLP AS**
25  ☒ Affects both Debtors                   **SPECIAL COUNSEL FOR THE DEBTORS**
                                             **EFFECTIVE AS OF THE PETITION DATE**
26  *All papers shall be filed in the Lead
    Case, No. 19-30088 (DM).*                Date:    March 25, 2020
27                                           Time:    10:00 a.m. (Pacific Time)
                                             Place:   United States Bankruptcy Court
28                                                     Courtroom 17, 16th Floor
                                                       San Francisco, CA 94102

Pursuant 28 U.S.C. § 1746, I, Michael F. Fitzpatrick, Jr., hereby declare as follows

I am a partner at Hunton Andrews Kurth LLP ("**Hunton**" or the "**Firm**"), located at 200 Park Avenue, New York, New York  10166-0005, and have been duly admitted to practice law in the State of New York and the United States District Courts in New York.

I submit this Declaration in connection with the Application, submitted on the date hereof (the "**Application**"),[1] of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for authority to employ and retain Hunton as their special counsel for certain matters, effective as of January 29, 2019 (the "**Petition Date**"), at its existing hourly rates in effect from time to time and in accordance with its existing reimbursement policies, in compliance with section 327(e) of title 11 of the United States Code (the "**Bankruptcy Code**"), and to provide the disclosure required under Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), as applicable to retention under section 327(e) of the Bankruptcy Code.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.  To the extent any information disclosed herein requires amendment or modification upon Hunton's completion of further review, or as additional information regarding parties in interest becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

Neither I, Hunton, nor any partner of, counsel to, or associate of the Firm represents any entity with respect to the Specific Matters (as defined below) other than the Debtors in connection with these Chapter 11 Cases.  In addition, except as set forth herein, to the best of my knowledge, after due

---

[1]     Capitalized terms used but not otherwise herein defined have the meanings ascribed to such terms in the Application.

inquiry, neither I, Hunton, nor any partner of, counsel to, or associate of the Firm represents any party

in interest with respect to the matters for which Hunton is to be employed.

### Services to be Provided

The Debtors seek to engage Hunton as counsel to provide professional services with

respect to the following matters (collectively, the "**Specific Matters**"):

- Advising and representing the Utility with respect to federal and state laws and regulations as they relate to (1) developing and structuring a securitization program pursuant to Article 5.8 of the California Public Utilities Code to provide for the recovery of costs and expenses in connection with catastrophic wildfires; (2) the registering of securities under the federal securities laws with respect to the securitization program; and (3) advising on the public offering and sale of the securities;

- Advising and representing the Debtors with respect to federal and state laws and regulations as they relate to (1) the drafting of secured and unsecured indentures and offering documents to enable the Debtors to sell secured and unsecured debt securities and to participate in tax-exempt financings; (2) the registering of certain secured and unsecured debt securities under the federal securities laws: (3) advising on the public and private offerings and sales of the secured, unsecured, and tax-exempt securities; and (4) establishing an account receivables securitization program;

- Advising and representing Debtors with respect to cybersecurity and privacy matters, including enhancing cybersecurity preparedness, responding to cyber incidents, and ensuring compliance with cybersecurity and privacy laws;

- Representation of the Debtors in connection with environmental matters, including continuing representation of the Debtor in the implementation of the Consent Decree entered by Judge Seeborg, of the United States District Court for the Northern District of California, on September 7, 2018 in *Ecological Rights Foundation v. Pacific Gas and Electric Company*, Case No. 3:10-cv-00121-RS;

- Advising the debtors and furnishing documents regarding their interest rate swaps and other derivative products in connection with (1) avoiding insolvency-related defaults under their swap and other derivatives documents, (2) adopting board and/or board committee resolutions and other documents governing their use of swaps and other derivative products, (3) engaging in management oversight and board and/or board committee governance of their swap and other derivative products usage, (4) applying to the California Public Utilities Commission for authorization to enter into interest rate hedges related to their financing activities, (5) determining that they are not required to be registered with the Commodity Futures Trading Commission or the Securities and Exchange Commission as swap dealers or major swap participants, security-based swap dealers or major security-based swap participants, (6) amending their swap and other derivatives documents to observe the qualified financial contract rules applicable to their global systemically important bank counterparties, (7) complying with the requirements of the end-user exception providing an exemption from mandatory swap clearing and exchange-trading requirements, (8) utilizing their exemptions from having to post margin for swaps, (9) entering into swaps and other derivatives transactions with their swap and security-based swap dealer

counterparties and (10) entering into forward contracts and other derivatives transactions exempt from regulation as swaps and security-based swaps (including purchase and sale agreements for electric power and natural gas), among other things; and

- Providing all other necessary legal services for the Debtors, as related to the above matters, in connection with the above captioned Chapter 11 Cases and the Debtors' financing plans to exit bankruptcy including drafting of financing orders, security documents, registration statements, offering documents, legal opinions, and other transactional documents.

## Hunton's Qualifications

Hunton is well-qualified to represent the Debtors on all matters with the scope of the proposed engagement.

Since March 2018, Hunton has represented and advised the Debtors in connection with their capital markets transactions. Hunton represented the Utility in *Ecological Rights Foundation v. Pacific Gas & Electric Company*, Case No. 3:10-cv-00121-RS (N.D. Cal.), involving claims under the federal Clean Water Act and the Resource Conservation and Recovery Act.  The matter was settled via a Consent Decree in September 2018, and Hunton continues to represent the Utility in connection with implementation of the Consent Decree, which will continue until its August 1, 2026 termination date. Hunton is currently advising Debtors on a wide range of cybersecurity and privacy matters.  Hunton is currently advising the Utility on Article 5.8 of the California Public Utilities Code which authorizes the Utility to pursue a securitization structure to finance its recovery of costs and expenses related to catastrophic wildfires.  Hunton is one of the leading firms in the utility securitization space.  Since 2012, Hunton has participated in most of the utility securitization transactions in the industry, including all SEC registered transactions since 2016.  Hunton is also well qualified to advise both Debtors in connection with this capital markets transaction for exiting bankruptcy.  Hunton's Power and Utilities Capital Markets group has significant experience representing many US public utility companies and holding companies with respect to US capital markets matters.  Hunton has experience in all aspects of corporate finance with particular familiarity in public and private debt and equity offerings, mortgage and other secured debt financing, tax-exempt offerings, equity derivatives, interest

rate and currency swaps and other derivative products, hybrid securities, registration rights, reporting and compliance with federal securities laws.  Hunton is one of the leading firms on cybersecurity and privacy in the energy sector.  It has extensive experience assisting energy clients with cybersecurity preparedness; cyber investigations; insurance coverage; compliance with FERC/NERC, pipeline, nuclear and environmental regulations; litigation; outsourcing; SEC and governance matters; congressional investigations; and government relations.  Since 2005, Hunton has assisted clients in responding to more than 1,500 data breaches and cyber incidents worldwide, including cyber incidents involving industrial control systems, proprietary business information, and personal information.

In addition to representing the Debtors, Hunton has represented regulated utilities in connection with various transactional and bankruptcy matters.

**Terms of Hunton's Engagement**

Hunton's representation of the Debtors is governed by that certain Master Services Agreement dated January 16, 2018, attached as **Exhibit 1** hereto, and certain letter agreements entered into from time to time.

**Coordination With Other Professionals of the Debtors**

Hunton is aware that the Debtors have retained other law firms to represent them generally in these bankruptcy cases, including Weil, Gotshal & Manges LLP ("**Weil**") and Cravath, Swaine & Moore LLP ("**Cravath**").  Hunton intends to coordinate with the Debtors, Weil, Cravath, and other professionals retained by the Debtors, to the extent appropriate, to clearly delineate the scope of services and avoid the duplication of services wherever reasonably possible.

**Compensation and Fee Applications**

On February 27, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing the Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [Dkt No. 707] (the "**OCP Order**") authorizing the Debtors to retain and compensate legal services professionals that the Debtors employ in the ordinary course of business

(collectively, the "**Ordinary Course Professionals**") subject to the terms of the OCP Order. Hunton has served as counsel to the Debtors prior to the Petition Date and has continued to serve in such capacity pursuant to the OCP Order. Pursuant to the OCP Order, the Debtors previously filed the *Declaration and Disclosure Statement of Paul M. Tiao on Behalf of Hunton Andrews Kurth LLP* (the "**Tiao Declaration**"), annexed as Exhibit A-24 to the *Notice of Filing of (I) Ordinary Course Professional Declarations and Retention Questionnaires and (II) List of Additional Ordinary Course Professionals* [Dkt. No 1130].

The Debtors have already retained Hunton as an Ordinary Course Professional, pursuant to the OCP Order, to provide the services described herein. However, the volume of services that Hunton has provided the Debtors has increased and the Debtors anticipate that Hunton will generate fees in excess of the OCP Monthly Cap and the OCP Annual Cap. To date, Hunton has already received payments in excess of $837,553.13 in the period during which it has been retained as an Ordinary Course Professional. Accordingly, and as contemplated by the OCP Order, the Debtors are seeking to retain Hunton pursuant to this Application so that Hunton's compensation will not be subject to the OCP Monthly Cap and OCP Annual Cap. Subject to Court approval of this Application, Hunton intends to apply for compensation for professional services rendered on an hourly basis and the reimbursement of reasonable expenses. The hourly rates and corresponding rate structure Hunton will apply are the same as the hourly rates and corresponding rate structure that Hunton uses in similar matters, whether in court or otherwise, regardless of whether a fee application is required. The hourly rates used by Hunton in representing the Debtors are consistent with the rates that Hunton charges other clients (including other clients in chapter 11 cases), regardless of the location of the client or the court in which the matter is pending.Hunton will seek allowance of its fees and reimbursement of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, effective February 19, 2014, and the United States Trustee Guidelines Region 17, updated December 16, 2016 (the "**Local Guidelines**"), the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §

330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**") and any additional further Order of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**").  Hunton and the Debtors have not agreed to any variations from, or alternatives to, Hunton's standard billing arrangements.  As discussed in more detail below, Hunton's rates are subject to periodic change in the ordinary course of business.  The Hunton 2019 hourly rates for the engagement range as follows:

| Billing Category | Range |
| --- | --- |
| Partners | $698 to $981 |
| Counsel | $626 to $720 |
| Associates | $405 to $504 |
| Paraprofessionals | $257 |

The Hunton hourly rates are set at a level designed to compensate Hunton fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[2]  Hunton represented the Debtors before the Petition Date using the hourly rates listed above.

Hunton will maintain detailed, contemporaneous time records in six-minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance

---

[2]    Like many other law firms, Hunton typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (i) ordinary course step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "**Step Increase**"), and (ii) periodic (generally yearly) rate increases with respect to each level of seniority (a "**Rate Increase**"). The Step Increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). The proposed order provides that Hunton will provide reasonable advance notice to the Debtors and the U.S. Trustee of any Rate Increase.

with the Bankruptcy Code, Bankruptcy Rules, and Fee Guidelines.[3]  Hunton timekeepers will record

time using billing categories that substantially conform to those categories set forth at section 8(b) of

the U.S. Trustee Guidelines, and will record the amount of time per task within each billing category.[4]

Furthermore, the expenses for which Hunton may be reimbursed by the Debtors are

limited by the Engagement Agreement.  In accordance with the Engagement Agreement, unless

otherwise agreed in advance, Hunton cannot charge for secretarial services, library services, clerical

support, learning or training costs, office supplies, postage, internal couriers, routine office

photocopying, telecopying or fax, local telephone and cellular plans, filing, file indexing, bill

preparation, staff overtime, word processing, computer assisted research (such as Lexis-Nexis,

Westlaw and the like), and meals or snacks (unless while traveling). Hunton will charge such costs and

expenses in accordance, and only to the extent consistent, with the Bankruptcy Local Rules, the

applicable Guidelines promulgated by the U.S. Trustee, and the Engagement Agreement.

Hunton understands that interim and final fee awards are subject to approval by this

Court.

**<u>Hunton's Retainer and Payments in 90 Days Before the Petition Date</u>**

Hunton currently does not hold any advanced payment retainer related to the Specific

Matters.

The table below reflects all payments received by Hunton from the Debtors in the 90

days before the Petition Date.  With respect to each payment, the table sets forth the (1) date of

payment; (2) the nature of the transaction (i.e., payment of an invoice); (3) the source of the payment

(the Utility or PG&E Corp.); (4) the amount of payment; and (5) the date of the corresponding invoice.

---

[3]     In applying to the Court for payment of compensation and reimbursement of expenses, Hunton will also make reasonable efforts to comply with the U.S. Trustee Guidelines.

[4]     Hunton may, in its discretion and in consultation with the Debtors, determine to create separate or additional billing categories for certain discrete projects undertaken during these Chapter 11 Cases.

| Date | Transaction | Source | Amount | Invoice Date |
|------|-------------|--------|--------|--------------|
| 11/6/2018 | Payment | Utility | $31,487.80 | 8/16/2018 |
| 11/13/2018 | Payment | Utility | $5,006.97 | 10/15/2018 |
| 11/13/2018 | Payment | PG&E Corp. | $92.80 | 7/24/2018 |
| 11/15/2018 | Payment | Utility | $5,117.17 | 10/8/2018 |
| 11/15/2018 | Payment | Utility | $855.00 | 10/8/2018 |
| 11/15/2018 | Payment | Utility | $3,000.38 | 10/8/2018 |
| 11/15/2018 | Payment | Utility | $15,354.09 | 9/6/2018 |
| 12/4/2018 | Payment | Utility | $2,211.00 | 11/7/2018 |
| 12/4/2018 | Payment | Utility | $24,526.15 | 9/28/2018 |
| 12/4/2018 | Payment | Utility | $2,341.75 | 11/13/2018 |
| 12/4/2018 | Payment | Utility | $1,599.80 | 11/13/2018 |
| 12/4/2018 | Payment | Utility | $1,331.80 | 11/13/2018 |
| 12/13/2018 | Payment | Utility | $13,065.63 | 8/16/2018 |
| 12/19/2018 | Payment | Utility | $18,556.00 | 11/27/2018 |
| 12/27/2018 | Payment | Utility | $40,951.17 | 10/8/2018 |
| 12/27/2018 | Payment | Utility | $812.25 | 10/8/2018 |
| 12/27/2018 | Payment | Utility | $144,177.51 | 10/31/2018 |
| 12/27/2018 | Payment | Utility | $0.00 | 11/13/2018 |
| 12/27/2018 | Payment | Utility | $7,327.35 | 10/31/2018 |
| 12/27/2018 | Payment | Utility | $5,208.56 | 11/2/2018 |
| 12/27/2018 | Payment | Utility | $4,988.74 | 11/13/2018 |

| Date | Transaction | Source | Amount | Invoice Date |
|---|---|---|---|---|
| 12/27/2018 | Payment | Utility | $3,261.92 | 11/13/2018 |
| 12/27/2018 | Payment | Utility | $1,839.96 | 12/7/2018 |
| 12/27/2018 | Payment | Utility | $1,366.48 | 12/12/2018 |
| 12/31/2018 | Payment | Utility | $13,347.02 | 12/13/2018 |
| 12/31/2018 | Payment | Utility | $35,033.62 | 11/30/2018 |
| 12/31/2018 | Payment | Utility | $17,056.77 | 12/13/2018 |
| 12/31/2018 | Payment | Utility | $4,539.57 | 12/13/2018 |
| 12/31/2018 | Payment | Utility | $4,703.93 | 12/13/2018 |
| 12/31/2018 | Payment | Utility | $928.91 | 8/16/2018 |
| 12/31/2018 | Payment | Utility | $50,700.90 | 6/15/2018 |
| 12/31/2018 | Payment | Utility | $7,508.89 | 11/13/2018 |
| 12/31/2018 | Payment | Utility | $406.12 | 11/13/2018 |
| 12/31/2018 | Payment | Utility | $4,074.07 | 11/13/2018 |
| 12/31/2018 | Payment | Utility | $8,687.46 | 10/8/2018 |
| 12/31/2018 | Payment | Utility | $1,410.56 | 12/7/2018 |
| 1/15/2019 | Payment | Utility | $10,435.27 | 12/20/2018 |
| 1/15/2019 | Payment | Utility | $0.00 | 12/20/2018 |
| 1/15/2019 | Payment | Utility | $24,561.30 | 12/20/2018 |
| 1/15/2019 | Payment | Utility | $478.80 | 12/7/2018 |
| 1/15/2019 | Payment | Utility | $4,000.16 | 12/7/2018 |
| 1/15/2019 | Payment | Utility | $7,327.35 | 10/31/2018 |

| Date | Transaction | Source | Amount | Invoice Date |
|---|---|---|---|---|
| 1/15/2019 | Payment | Utility | $406.12 | 10/31/2018 |
| 1/15/2019 | Payment | Utility | $6,776.73 | 10/31/2018 |
| 1/15/2019 | Payment | Utility | $13,273.87 | 11/13/2018 |
| 1/15/2019 | Payment | Utility | $0.00 | 11/13/2018 |
| 1/15/2019 | Payment | Utility | $4,148.46 | 11/13/2018 |
| 1/15/2019 | Payment | Utility | $1,550.21 | 12/7/2018 |

### No Interest Adverse to Debtors With Respect to the Specific Matters

In connection with the Hunton proposed retention by the Debtors, Hunton undertook to determine whether it had any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtors or their estates with respect to the Specific Matters.

*First*, Hunton reviewed a list of names provided by the Debtors (collectively, the "**Interested Parties**") of individuals or institutions set forth on **Schedule 1** hereto. The status of entities listed as Interested Parties on **Schedule 1** may change during the pendency of these Chapter 11 Cases without the Firm's knowledge. Hunton will update this Declaration as necessary when new names of parties in interest are made available.

Hunton and certain of its partners, counsel, and associates may have in the past represented, may currently represent, and are likely in the future to represent, parties in interest in these Chapter 11 Cases in matters unrelated to these Chapter 11 Cases. For the purpose of preparing this Declaration, Hunton searched its electronic database containing the names of current and former clients for its connections to the Interested Parties. Hunton compared each of the Interested Parties to the names that Hunton has compiled into a master client database from its conflicts clearance and billing records, comprised of the names of the entities for which any attorney time charges have been

billed (the "**Client Database**"). The Client Database includes the name of each current or former

client, and the names of the Hunton personnel who are or were responsible for current or former

matters for such client and the Specific Matters.

To the extent I have been able to ascertain based on the search of the Client Database

and reasonable inquiry, listed on **Schedule 2** to this Declaration are those Interested Parties, or

affiliates thereof, that are or have been Hunton clients within the immediately prior two years. None of

the representations listed on **Schedule 2** or described herein is materially adverse to the interests of the

Debtors or their estates with respect to the Specific Matters, and all prior and current Hunton

representations of the clients, former clients, or their affiliates and/or subsidiaries are or have been in

matters unrelated to the Specific Matters.

As reflected in **Schedule 2,** Hunton represents Citi and/or its affiliates in matters

unrelated to the Specific Matters and the bankruptcy cases. Citi is being retained to serve as

Structuring Advisor for the securitization work that Hunton will perform for the Debtors. Citi and/or

its affiliates may also serve as underwriter in the securitization work.

Hunton also is representing multiple counterparties in connection with renewable power

purchase agreements, and the Debtors have consented to this simultaneous representation subject to

walling off the affected attorneys from those doing work for the Debtors.

*Second*, in addition to reviewing Hunton's Client Database, an email was sent to all

current Hunton employees asking whether the employees or any member of their households (i) own

any debt or equity securities of the Debtors; (ii) hold a claim against or interest adverse to the Debtors;

(iii) are or were officers, directors, or employees of the Debtors or any of the affiliates or subsidiaries;

(iv) are related to or have any connections to Bankruptcy Judges in the Northern District of California;

or (v) are related to or have any connections to anyone working in the Office of the U.S. Trustee for

the Northern District of California. No connections were uncovered through this inquiry save that two

partners at Hunton own stock in PG&E Corporation. Out of an abundance of caution, both attorneys

will be screened from these matters.

Based on these conflicts checks, to the best of my knowledge, neither I, Hunton, nor any partner, counsel, or associate thereof, have any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed in the Office of the U.S. Trustee, or any bankruptcy judge currently serving on the United States Bankruptcy Court for the Northern District of California, except as disclosed or otherwise described herein.

Hunton has not, does not, and will not, represent any entity other than the Debtors in these Chapter 11 Cases in connection with the Specific Matters. From time to time, Hunton may have referred matters to other professionals to be retained in these Chapter 11 Cases. Likewise, certain of such professionals may have referred legal work to Hunton. Certain insurance companies pay the legal bills of Hunton clients and some of these insurance companies may be involved in these Chapter 11 Cases. None of these insurance companies, however, is an Hunton client simply because it pays legal fees on behalf of Hunton clients.

Hunton has in the past, and may in the future, represent certain affiliates, subsidiaries, and entities associated with various professionals that the Debtors or other parties in interest have retained in connection with these Chapter 11 Cases. None of the representations described herein is adverse to the interests of the Debtors or their estates with respect to the Specific Matters. All current, prior and potential future representations of these professionals have been (or, if applicable, would be) in matters unrelated to the Debtors or these Chapter 11 Cases. I do not believe that prior or future representations of these professionals or their affiliates by Hunton create a conflict, but disclose the connections out of an abundance of caution.

From time to time, Hunton partners, counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds, through which such individuals indirectly acquire a debt or equity

security of many companies, one of which may be one of the Debtors, often without the knowledge of Hunton. To the extent that Hunton partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, Hunton has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work. In this regard, all Hunton attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

Based on the inquiry above, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, I can attest that: (a) Hunton has no connection with the Debtors, their creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party with an actual or potential interest in these Chapter 11 Cases or their respective attorneys or accountants, except as set forth herein; (b) Hunton is not a creditor, equity security holder, or insider of the Debtors; (c) no Hunton partner, counsel, associate, or other professional is, or was within two years of the Petition Date, a director, officer, or employee of the Debtors; and (d) Hunton neither holds nor represents an interest adverse to the Debtors or their estates with respect to the Specific Matters.

Hunton will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Hunton will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a). Generally, it is the policy of Hunton to disclose clients in the capacity that they first appear in conflicts search. For example, if a client already has been disclosed in this Declaration in one capacity (e.g., a customer), and the client appears in a subsequent conflicts search in a different capacity (e.g., a vendor), Hunton does not disclose the same client again in supplemental declarations.

Hunton will not commence a cause of action in these Chapter 11 Cases against any of the parties listed on **Schedule 2** that are current clients of Hunton unless Hunton has an applicable

written informed consent waiver on file or first receives such a waiver from that party. To the extent that a waiver does not exist or is not obtained from such client and it is necessary for the Debtors to commence an action against that client, they will be represented in such particular matter by separate counsel.

### Attorney Statement Pursuant to U.S. Trustee Guidelines

The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Fee Guidelines.

**Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

**Response:** No.

**Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

**Response:** No.

**Question:** If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Response:** For the twelve (12) months prepetition, Hunton's customary hourly rates for services provided to the Debtors were $504 to $1,071 for partners and counsel, $288 to $617 for associates, and $195 to $405 for paraprofessionals. Effective January 1, 2019, Hunton adjusted its

standard billing rates for its professionals in the normal course. The information on page 6 discloses the billing rates used by Hunton from January 1, 2019 through the date hereof. Hunton's billing rates and material financial terms with respect to this matter have not changed postpetition.

**Question:** Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response:** Yes. The Debtors have approved Hunton's prospective budget and staffing plan for the period through July 31, 2020.

The foregoing constitutes the statement of Hunton pursuant to section 327(e) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on March 4, 2020.

Michael F. Fitzpatrick, Jr.