1  Paul R. Glassman (SBN 76536)
   STRADLING YOCCA CARLSON & RAUTH, P.C.
2  100 Wilshire Boulevard, 4th Floor
   Santa Monica, CA 90401
3  Telephone: (424) 214-7000
   Facsimile: (424) 214-7010
4  Email:    pglassman@sycr.com

5  Mia S. Brown (SBN 242268)
   General Counsel
6  SOUTH SAN JOAQUIN IRRIGATION DISTRICT
   11011 E. Highway 120
7  Manteca, CA 95336
   Telephone: (209) 249-4600
8  Facsimile: (209) 249-4692
   Email:    mbrown@ssjid.com
9
   Attorneys for Party-In-Interest, South San Joaquin Irrigation District
10

11        **UNITED STATES BANKRUPTCY COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
12          **SAN FRANCISCO DIVISION**

13

| | |
|---|---|
| **In Re:** | Bankruptcy Case No. 19 - 30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | Lead Case |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | Jointly Administered |
| **Debtors.** | **MOTION OF SOUTH SAN JOAQUIN IRRIGATION DISTRICT FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT PROCEEDINGS IN NON-BANKRUPTCY FORUM TO CONTINUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Judge:  Hon. Dennis Montali<br><br>Date:  March 25, 2020<br>Time:  10:00 a.m.<br>Place:  United States Bankruptcy Court<br>450 Golden Gate Ave., 16th Flr, Crt. 17<br>San Francisco, CA 94102<br><br>**Objection Deadline**:<br>March 20, 2020 at 4:00 p.m. (PT) |

1   South San Joaquin Irrigation District (the "District" or "SSJID") hereby moves (the
2   "Motion") pursuant to sections 362(a) and (d) of title 11 of the United States Code (the
3   "Bankruptcy Code"), Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the
4   "Bankruptcy Rules"), and Rule 4001-1 of the Bankruptcy Local Rules for the United States
5   Bankruptcy Court for the Northern District of California (the "Bankruptcy Local Rules") for
6   entry of an order (a) determining that the automatic stay does not apply to the proceeding (the
7   "LAFCo Action"), which debtor Pacific Gas and Electric Company ("PG&E") filed against the
8   District in the San Joaquin County Superior Court (the "Superior Court") styled *Pacific Gas &*
9   *Electric v. San Joaquin Local Agency Formation Commission; South San Joaquin Irrigation*
10  *District et al.*, Case No. STK-CV-UJR-2015-000-1266, and is on appeal in the California Court
11  of Appeal of the State of California, Third Appellate District ("Court of Appeal"), Case No.
12  C086008 (the "LAFCo Appeal"), or in the alternative, granting relief from the automatic stay to
13  continue the LAFCo Action, (b) granting relief from the automatic stay to continue the eminent
14  domain proceeding (the "Eminent Domain Action"), which the District filed in the Superior
15  Court styled *South San Joaquin Irrigation District v. Pacific Gas And Electric Company et al.,*
16  Case No. STK-CV-UED-2016-0006638 and is on appeal in the Court of Appeal, Case No.
17  C086319 (the "Eminent Domain Appeal"), and (c) granting such other and further relief as is just
18  and proper under the circumstances.

19          This Motion is based on the attached Memorandum of Points and Authorities, the
20  concurrently filed Notice of Motion, Request for Judicial Notice, Declaration of Peter Rietkerk,
21  Declaration of Peggy O'Laughlin, the records and files in this case and all related proceedings,
22  and such other and further matters as this Court may consider at or before any hearing on this
23  Motion.

24
25
26
27
28

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT .................................................................................1

II. JURISDICTION & VENUE ....................................................................................3

III. BACKGROUND ......................................................................................................3

    A. The SJ LAFCo Proceeding ...........................................................................4

    B. The LAFCo Action ........................................................................................4

    C. The Eminent Domain Action ........................................................................6

IV. ARGUMENT ...........................................................................................................8

    A. The LAFCo Action is Not Subject to the Automatic Stay Because It is Not an Action Against the Debtor, So the LAFCo Action Should Proceed. .................8

    B. The Automatic Stay (if any) Should be Lifted for Cause to Allow the LAFCo Action to Continue.................................................................................9

        1. The Standard for "Cause" for Relief from Stay........................................9

        2. The LAFCo Action Lacks Connection With and Will Not Interfere With the Bankruptcy Case (*Curtis* Factor 2), Which is the Most Important Factor.........................................................................................10

        3. The Other *Curtis* Factors Also Weigh Heavily in Favor of Lifting the Stay.........................................................................................................12

        4. The Stay Should Be Lifted Because the Bankruptcy Court Would Be Required to Abstain from Hearing the LAFCo Action ......................14

    C. The Automatic Stay Should be Lifted for Cause to Allow the Eminent Domain Action to Continue. ........................................................................15

        1. The Eminent Domain Action Lacks Connection With and Will Not Interfere With the Bankruptcy Case (*Curtis* Factor 2)............................16

        2. The Other *Curtis* Factors Also Weigh Heavily in Favor of Lifting the Stay of the Eminent Domain Action .........................................19

        3. The Stay Should Be Lifted Because the Bankruptcy Court Would be Required to Abstain from Hearing the Eminent Domain Action..........20

V. CONCLUSION.........................................................................................................21

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Barbier v. Shearson Lehman Hutton, Inc.*,
 943 F.2d 249 (2d Cir. 1991) .................................................................8

*Bevelle v. Jefferson County (In re Bevelle)*,
 348 B.R. 812 (Bankr.N.D.Ala. 2006) ...............................................18

*Borman v. Raymark Indus.*,
 946 F.2d 1031 (3d Cir. 1991) ..............................................................8

*Cathey v. Johns-Manville Sales Corp.*,
 711 F.2d 60 (6th Cir. 1983) ..................................................................8

*Matter of Chicago, Milwaukee, St. Paul & P.R. Co., Appeal of City of New Hampton, Iowa*,
 738 F.2d 209 (7th Cir. 1984) ..............................................................16

*Matter of Chicago, Milwaukee, St. Paul & P.R. Co., Appeal of the State of Wisconsin, Dep't of Trans.*,
 739 F.2d 1169 (7th Cir. 1984) ............................................................16

*Commonwealth v. Bartlett*,
 384 F.2d 819 (1st Cir. 1967) ...............................................................16

*In re Curtis*,
 40 B.R. 795 (Bankr. D. Utah 1984) ................... 1, 9, 10, 12- 15, 19, 20

*District of Columbia Court of Appeals v. Feldman*,
 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)................1, 11

*Ellison v. Northwest Eng'g Co.*,
 707 F.2d 1310 (11th Cir. 1983) ............................................................8

*Farley v. Henson*,
 2 F.3d 273 (8th Cir. 1993) ....................................................................8

*Ingersoll-Rand Financial Corp. v. Miller Mining Co.*,
 817 F.2d 1424 (9th Cir. 1987) ..........................................................8, 9

*In re Lehigh Valley Pros. Inc.*,
 482 B.R. 127 (Bankr. E.D. Pa. 2012) ....................................12, 13, 18

*Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Invest. Corp.*,
 797 F.2d 227 (5th Cir. 1986) ................................................................8

-ii-

*Maryland v. Amoruso (In re Quality Supplier Gen. Partnership)*,
  176 B.R. 135 (Bankr. D. Md. 1994) ...............................................16, 17, 18, 20

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982).........................1, 2, 11

*In re Pacific Gas & Electric Company*,
  279 B.R. 561 (Bankr. N.D. Cal. 2002) ..........................11, 14, 15, 18, 20

*Platinum Fin. Servs. Corp. v. Burd (In re Byrd)*,
  357 F.3d 433 (4th Cir. 2004) ...............................................................8

*In re Roger*,
  539 B.R. 837 (C.D. Cal. 2015) ..........................................................10

*Rooker v. Fidelity Trust Co.*,
  263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).........................1, 11

*In re Rossi*,
  86 B.R. 220 (9th Cir. B.A.P. 1988).........................................17, 18, 20

*Sheldon v. Munford, Inc.*,
  902 F.2d 7 (7th Cir. 1990) ...................................................................8

*Simon v. Navon*,
  116 F.3d 1 (1st Cir. 1997) ...................................................................8

*Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.)*,
  311 B.R. 551 (Bankr. C.D. Cal. 2004) ..............................................10

*In re Tucson Estates, Inc.*,
  912 F.2d 1162 (9th Cir. 1990) ...................................9, 11, 14, 15, 18, 20

*TW Telecom Holdings Inc. v. Carolina Internet Ltd*,
  661 F.3d 495 (10th Cir. 2011) .............................................................8

**State Cases**

*City of Oakland v. Oakland Raiders*,
  32 Cal. 3d 60 (1982) ...................................................................16, 19

**Federal Statutes**

11 U.S.C. § 101(5) .........................................................................10, 16

11 U.S.C. § 101(10) .......................................................................11, 16

11 U.S.C. § 362(a) ..............................................................................8

-iii-

11 U.S.C. § 362(d) ........................................................................................................9

28 U.S.C. §§ 157 and 1334 ...........................................................................................3

28 U.S.C. § 157(b) ........................................................................................................3

28 U.S.C. § 157(b)(2) ..................................................................................................12

28 U.S.C. § 1334 ....................................................................................11, 14, 15, 18

28 U.S.C. § 1334(c)(1) ................................................................................................14

28 U.S.C. §§ 1408 and 1409 .........................................................................................3

**State Statutes**

California Code of Civil Procedure § 1240.020 ............................................................6

California Code of Civil Procedure §§ 1245.230 and 1240.030 ...................................6

California Constitution ..................................................................................................5

California Environmental Quality Act (Pub. Res. Code § 21000 et seq.) ....................5

California Water Code §§ 22456 and 22115 .................................................................6

LAFCo Act (California Govt. Code § 56000 et seq.) ....................................................5

California Water Code Division 11 ...............................................................................3

**Rules**

Bankruptcy Local Rule 5011-1(A) ................................................................................3

**Order**

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,*
    General Order 24 .....................................................................................................3

-iv-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

The District and PG&E are party to two appeals that are pending in the California Court of Appeal, Third Appellate District: the LAFCo Appeal and the Eminent Domain Appeal. These appeals were stayed after the commencement of the bankruptcy cases of PG&E and PG&E Corporation (together, "Debtors" and each is a "Debtor"). For the reasons set forth more fully herein, the District respectfully submits that (a) the automatic stay does not apply to the LAFCo Action, and to the extent the Court determines that the stay does apply, there is cause to grant relief from the stay to allow the LAFCo Action to continue and (b) there is cause to grant relief from the stay for cause to allow the Eminent Domain Action to continue.

The LAFCo Action is not subject to the automatic stay because it is not an action against a debtor, but *by* a debtor, since PG&E was the plaintiff in the trial court. However, even if the LAFCo Appeal were stayed, there is ample "cause" to lift the stay under the relevant "*Curtis*"[1] factors.

Most importantly, the LAFCo Action has little connection with and will not interfere with the bankruptcy case. The LAFCo Action does not involve a "claim" against the Debtor or property of the estate; PG&E merely seeks declaratory relief invalidating the LAFCo approval. Since there is no "claim," PG&E does not, and should not, address the LAFCo Action in the Debtor's proposed plan ("Plan") which it has had the breathing room to develop. So, the LAFCo Action does not affect the reorganization.

Moreover, the LAFCo Action involves purely state law issues of complex and unsettled California municipal and Constitutional law. The lawsuit was filed by the Debtor before the bankruptcy and could not have been brought in federal court absent the bankruptcy. Therefore, there is no independent basis of federal jurisdiction, and a bankruptcy or other federal court could not hear the matter under *Rooker-Feldman*[2] and *Marathon*.[3]

---

[1] *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).

[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

-1-

In addition, there is little prejudice to the Debtor in lifting the stay. Briefing is almost complete in the LAFCo Appeal, and the appeal is in the hands of experienced outside counsel. The action must continue in state court anyway, which would not affect the reorganization. On the other hand, the matter is of great import to the District which has waited a very long time to proceed, so the balance of hurt clearly favors the District.

In sum, the stay should lifted because the Curtis factors weigh heavily in favor of dismissal the LAFCo Action, and also because abstention would be appropriate for the reasons described above, including lack of jurisdiction.

There is also ample cause to lift the stay of the Eminent Domain Action for all of the same reasons discussed above with respect to the LAFCo Appeal. In addition, Because of its nature, the power of eminent domain is given deference in bankruptcy. It is a special "inchoate interest or right," which is paramount to any interest of a debtor in property. The District's eminent domain power is not assertion of a "claim" against the Debtor or property of the estate that could be treated or modified by a plan of reorganization in bankruptcy and is not subject to discharge.

When the Eminent Domain Action continues (as it must) in state court, ultimately the estate or the debtor would either receive "just compensation" for the Property taken or keep title to the Property if the District did not prevail. Even if the District's condemnation were ultimately successful, the number of customers in the District and value of the Property are of little moment in comparison with the millions of customers and billions of dollars in assets at stake in the Debtors' cases. So, the Eminent Domain does not impact the reorganization.

In stark contrast, the District has expended considerable time and resources to develop its retail electric service in a transparent, responsible and accountable manner. Rietkerk Decl. at ¶ 8. Continuing the stay would deny to the community the public benefits of this project, including stimulating the local economy and providing safe and reliable electric service at reduced rates and local control of and responsibility for the system. *Id*.

---

[3] *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87, 102 S. Ct. 2858, 2880, 73 L. Ed. 2d 598, 625 (1982).

Accordingly, the District respectfully requests that the Court grant the Motion.

## II.    JURISDICTION & VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334, and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.) and rule 5011-1(A) of the Bankruptcy Local Rules for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## III.   BACKGROUND

The District is an irrigation district organized and existing under Division 11 of the Water Code of the State of California. It was established over a hundred years ago in 1909. It provides agricultural irrigation water to about 56,000 acres and wholesale drinking water to more than 193,000 residents. Rietkerk Decl. at ¶ 2. It has developed its own diversion works, dams, storage reservoirs and hydroelectric generating facilities and holds rights to 72.5 mega-watts of electric generation capacity. *Id*. at ¶ 2. Since 2004, the District has pursued its retail electric project to provide safe and reliable retail electric service in a transparent, responsible and accountable manner at a 15% cost savings over PG&E to the approximately 40,000 electrical customers in and around the communities of Manteca, Escalon, and Ripon. *Id*. at ¶ 3. Those customers are a very small number of PG&E's over 15 million customers in northern and central California.[4] The District also generated solar and hydropower electricity for sale to PG&E pursuant to prepetition contracts.

In the LAFCo Action and the Eminent Domain Action, which are described further below, the District seeks to acquire the portion of PG&E's electrical distribution system that is within the District's service area (the "Property"),[5] either through a consensual transaction or by exercise of the District's power in eminent domain.

---

[4] Disclosure Statement at p. 7, lines 18-19 and p. 9, 19-20.

[5] True and accurate descriptions of the properties, which together make up the "Property," are set forth in exhibit A the Resolution of Necessity, which is Exhibit 9 to the Request for Judicial Notice ("RJN"), which is being filed in support of the Motion, but that exhibit does not include the property description given it is close to 200 pages in length.

-3-

Prior to commencing the Eminent Domain Action seeking the Property, the District offered PG&E approximately $116 million as "just compensation" for the Property, and PG&E refused.[6] In the context of this case, which involves billions of dollars in revenue and stock and cash being distributed under the Plan,[7] the Property is obviously only a tiny percentage of the property of the estate.

### A. The SJ LAFCo Proceeding

In 2004, the District commenced a proceeding ("SJ LAFCo Proceeding") before the San Joaquin Local Agency Formation Commission ("SJ LAFCo") to obtain a change of organization to expand its services to include retail electric distribution services. Rietkerk Decl. ¶ 3. In December 2014 the District obtained the approval (the "SJ LAFCo Approval") of the San Joaquin Local Agency Formation Commission to a change of organization to provide retail electric service within its service territory after a lengthy and extensive application process, lasting almost 10, years. Rietkerk Decl. at ¶ 4.

Among other things, SJ LAFCo found that the District's retail electric project would provide "a reduction in retail electrical energy rates, more disposable income for local residents to spend with local merchants, the enhanced attractiveness of the area to new employment generating businesses due to lower electrical rates, a more diversified local tax base due to new business generation and improved local control over electrical rates and service." Staff Report at p. 18. To ensure that the District's proposal would remain "revenue neutral" to the local governments in San Joaquin County, SJ LAFCo conditioned its approval on the District's payment of 2.5% of its gross retail revenue to the County of San Joaquin and other public entities ("Condition 2") to make up for property taxes and fees that PG&E currently pays. *See* Exhibit 4 to RJN (Judgment in LAFCo Action) at pp. 1-2.

### B. The LAFCo Action

After the SJ LAFCo Approval was obtained, on February 13, 2015 PG&E commenced the LAFCo Action. Exhibit 1 to RJN. The lawsuit sought a declaratory judgment as to the

---

[6] The District renewed its offer after the bankruptcy filing, and PG&E rejected that offer as well.
[7] *See, e.g.*, Disclosure Statement at p. 7, lines 18-19; Disclosure Statement at p. 22, lines 19-22.

-4-

legality and constitutionality of SJ LAFCo's conditions of approval and a writ of mandate on various procedural and substantive grounds under the LAFCo Act (California Govt. Code section 56000 et seq.), the California Constitution and the California Environmental Quality Act (Pub. Res. Code Section 21000 et seq.).

PG&E moved for summary adjudication on a number of bases, including that (i) SJ LAFCo failed to determine that the District had sufficient revenue to provide retail electric service to the customers in its territory at a 15% discount from PG&E's rates for thirty years and (ii) Condition 2 constituted an unconstitutional tax on the District in violation of the California State Constitution. Exhibits 2 and 3 to RJN. On March 7, 2016, the trial court denied PG&E summary adjudication on both points. However, on October 31, 2017, the trial court entered a judgment (the "SJ LAFCo Judgment") in favor of PG&E invalidating Condition 2 as an improper tax on the District in violation of the California State Constitution. Exhibit 4 to the RJN.

On November 21, 2017, in the LAFCo Action, the District filed its notice of appeal of the LAFCo Judgment in the Superior Court, and it was lodged with the Court of Appeal on November 29, 2017, creating the LAFCo Appeal. *See* Declaration of Peggy O'Laughlin ("O'Laughlin Decl.") at ¶ 2; Exhibit 5 to the RJN (LAFCo Appeal docket). On November 29, 2017 PG&E filed its cross appeal challenging the Superior Court's rulings in the District's favor. O'Laughlin Decl. at ¶ 2. On November 29, 2017, PG&E cross-appealed challenging the Superior Court's rulings in the District's favor. *Id*. The District filed its opening brief in the LAFCo Appeal on August 2, 2018, and PG&E filed its respondent brief and opening brief on the cross-appeal on January 28, 2019 (the day before the bankruptcy filing). *Id*. at ¶ 3. At the time the Court of Appeals stayed this appeal after receiving notice of PG&E's bankruptcy filing, the briefing in the LAFCo Appeal was close to completion. *Id*. at ¶ 4; LAFCo Appeal docket. The only briefs remaining to be filed were the District's combined reply and cross-respondent's brief and PG&E's cross-appellant reply brief. *Id*.

Case: 19-30088    Doc# 6078    Filed: 03/04/20    Entered: 03/04/20 18:28:26    Page 11 of 27

## C. The Eminent Domain Action

On July 7, 2016, the District filed the Eminent Domain Action, in which the District is seeking to condemn the Property, which is located within the District's service territory. Exhibit 6 to RJN. The District is vested with authority to exercise the power of eminent domain pursuant to California Water Code sections 22456 and 22115 and California Code of Civil Procedure section 1240.020.

Prior to commencing the Eminent Domain Action, the District offered PG&E approximately $116 million as "just compensation" for the Property. *See* Resolution No. 16-05-E ("Resolution of Necessity"), a true and correct copy of which is attached as Exhibit 9 to the RJN. PG&E refused the offer.

Also prior to commencing the Eminent Domain Action, pursuant to California Code of Civil Procedure sections 1245.230 and 1240.030, the District was required to, and did, hold a public hearing and adopt a resolution of necessity. *See* Resolution of Necessity at p.3; Rietkerk Decl. at ¶ 5. In order to adopt the resolution of necessity, the District's Board must make required statutory and state constitutional findings. Rietkerk Decl. at ¶ 5. As explained in the Legislative Committee Comments to section 1240.030, "public interest and necessity include all aspects of the public good, including but not limited to social, economic, environmental and aesthetic considerations."

For the Resolution of Necessity, the Board's findings of the public benefits and necessity of its retail project were supported by the evidence and the extensive Staff Report, which addressed the public good and benefits resulting from the electric project. Staff Report (Exhibit 10 to RJN) at pp. 7-10; Rietkerk Decl. at ¶ 6. The benefits are wide ranging, including local control and accountability to customers through a nonprofit, locally elected board, transparency of operation and practices, reduced electric rates projected to be a discount of 15% from PG&E's rates, and improving and stimulating the local economy through reduced rates. Staff Report at pp. 7-10. The Staff Report also supported the Board's finding of the public benefit by having a local, public entity responsible for the safety and reliability of the electric distribution system. *Id*.

-6-

at 7. The Staff Report set forth the District's serious concerns in 2016 about PG&E's safety and maintenance records and practices as a utility:

> The ongoing saga of regulatory, civil, and even criminal proceedings alleging PG&E's failure to comply with state and federal operating and record retention requirements, and correspondingly to appropriately test and otherwise maintain critical facilities, raises serious questions about PG&E's commitment to provide the minimum level of service and the highest and safest level of service to electric customers. Coordinating the maintenance of the requisite levels of safety and reliability with the imperative need to control costs and minimize rates creates an inherent conflict of interest within PG&E management. In contrast, SSJID's Proposed Project removes such conflict of interest. The SSJID Board will have no responsibilities to its constituency that are in conflict and competition with any fiduciary obligations to investors. SSJID's only obligation is to provide its customers the highest level of safety and reliability and at a cost-effective price.

Staff Report at p. 66.[8]

After the SJ LAFCo Judgment was entered for PG&E in the LAFCo Action in October 2017, PG&E moved to dismiss the Eminent Domain Action based on the entry of SJ LAFCo Judgment invalidating Condition 2. On January 4, 2018, the Superior Court granted PG&E's motion to dismiss the Eminent Domain Action ("Eminent Domain Judgment"). Exhibit 7 to RJN.

On January 18, 2018, the District filed its notice of appeal of the Eminent Domain Judgment with the Superior Court, and it was lodged with the Court of Appeal on January 22, 2018, creating the Eminent Domain Appeal. O'Laughlin Decl. at ¶ 5; Exhibit 8 to the RJN (Eminent Domain Appeal docket). The District filed its opening brief in the Eminent Domain

---

[8] Since 2016, these concerns over PG&E's ability and commitment to ensure the safety of its electric system have only increased. As the Court is aware, in 2017, PG&E was convicted of crimes for willfully failing to address known record keeping deficiencies, willfully failing to identify and address threats to its gas pipeline and failure to take corrective action linked to the deadly San Bruno explosion. Presently, PG&E is facing criminal charges and billions of dollars in lawsuits and other liabilities from the devastating wildfires in Northern California.

-7-

Appeal on July 19, 2018, and PG&E filed its respondent's brief on January 28, 2019, *id*. at ¶ 6, the day before the bankruptcy case was filed. Only one brief remains to be filed, and that is the District's reply brief, so no additional briefing is required of PG&E. *Id*. at ¶ 7. The District's reply was due on April 22, 2019, but this bankruptcy was filed, and the Eminent Domain Appeal is stayed. *Id*.

## IV. ARGUMENT

### A. The LAFCo Action is Not Subject to the Automatic Stay Because It is Not an Action Against the Debtor, So the LAFCo Action Should Proceed.

The automatic stay does not apply to the LAFCo Action because the proceeding was initiated by PG&E and is not an action "against the debtor" within the meaning of section 362(a) of the Bankruptcy Code. Section 362(a)(1) provides that the commencement of a proceeding under chapter 11 imposes an automatic stay of

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding **against the debtor** that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case.

11 U.S.C. § 362(a) (emphasis added). It is well settled that an appeal constitutes a proceeding "against the debtor" only if the proceeding below was *initiated* against the debtor. *Ingersoll-Rand Financial Corp. v. Miller Mining Co.,* 817 F.2d 1424, 1426-1427 (9th Cir. 1987) (citation omitted). At least nine other Federal Circuits are in accord. *See Simon v. Navon,* 116 F.3d 1 (1st Cir. 1997); *Barbier v. Shearson Lehman Hutton, Inc.,* 943 F.2d 249, 250 (2d Cir. 1991); *Borman v. Raymark Indus.,* 946 F.2d 1031, 1036 (3d Cir. 1991); *Platinum Fin. Servs. Corp. v. Burd (In re Byrd)*, 357 F.3d 433, 440 (4th Cir. 2004); *Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Invest. Corp.,* 797 F.2d 227, 230 n.4 (5th Cir. 1986); *Cathey v. Johns-Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir. 1983); *Sheldon v. Munford, Inc.,* 902 F.2d 7, 8 (7th Cir. 1990); *Farley v. Henson,* 2 F.3d 273, 274 (8th Cir. 1993); *TW Telecom Holdings Inc. v. Carolina Internet Ltd,*661

Case: 19-30088    Doc# 6078    Filed: 03/04/20    Entered: 03/04/20 18:28:26    Page 14 of 27

F.3d 495, 497 (10th Cir. 2011); *Ellison v. Northwest Eng'g Co.*, 707 F.2d 1310, 1310 (11th Cir. 1983).

In *Ingersoll*, the Ninth Circuit held "[i]n our view, section 362 should be read to stay all appeals in proceedings that were *originally brought* against the debtor, regardless of whether the debtors is the appellant or appellee." *Ingersoll*, 817 F.2d at 1426 (citation omitted) (emphasis in original). Thus, in *Ingersoll*, the Ninth Circuit determined that the automatic stay applied to an appeal filed by the debtor because the original action was brought by a creditor against the debtor. *Id.*

Here, the LAFCo Appeal is an appeal of the LAFCo Action, which was commenced by PG&E not against PG&E. Because the LAFCo Action is not an action against a Debtor, under *Ingersoll*, the District's appeal from the judgment in the LAFCo Action is likewise not an action "against the debtor" for Section 362.

Accordingly, the automatic stay does not apply to the continuation of the LAFCo Action.

**B.    The Automatic Stay (if any) Should be Lifted for Cause to Allow the LAFCo Action to Continue.**

**1.    The Standard for "Cause" for Relief from Stay**

If this Court decides that the LAFCo Action is subject to the automatic stay, this Court should grant relief from the automatic stay to allow the District to continue the LAFCo Action for "cause" under 11 U.S.C. § 362(d). "Cause" is analyzed on a case-by-case basis. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). To determine whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts in the Ninth Circuit consider the following twelve non-exclusive factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984):

(1)    whether the relief will result in a partial or complete resolution of the issues;

(2)    the lack of any connection with or interference with the bankruptcy case;

(3)    whether the foreign proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

-9-

(5)  whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)  whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7)  whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;

(8)  whether the judgment claim arising from the foreign action is subject to equitable subordination;

(9)  whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

(10)  the interests of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

(12)  the impact of the stay and the balance of hurt.

*In re Curtis*, 40 B.R. at 799-800 (citations omitted). The Court is not required to give each factor equal weight. *Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.),* 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). Here, the District has clearly shown "cause" for relief from stay, so the "burden then lies with the debtor to demonstrate that it is entitled to the stay." *In re Curtis*, 40 B.R. at 802-803.

**2.      The LAFCo Action Lacks Connection With and Will Not Interfere With the Bankruptcy Case (*Curtis* Factor 2), Which is the Most Important Factor**

The most important factor in determining whether to lift the stay for litigation to proceeding in a non-bankruptcy forum is the lack of connection with or interference with the bankruptcy case by the LAFCo Action (which is *Curtis* factor 2). *In re Roger*, 539 B.R. 837, 846 (C.D. Cal. 2015) (citing *Curtis*). The continuation of the LAFCo Action has virtually no connection with, nor does it interfere with, the administration of the bankruptcy case, because the LAFCo Action does not involve determination of claims against the Debtor or property of the estate.

Pursuant to 11 U.S.C. § 101(5), "claim" means a "right to payment" from a debtor or its estate. In the LAFCo Action, the District is not asserting it has "right to payment" from PG&E,

Case: 19-30088    Doc# 6078    Filed: 03/04/20    Entered: 03/04/20 18:28:26    Page 16 of 27

but instead PG&E is seeking declaratory relief as to the validity of the certain of the necessary findings in the SJ LAFCo proceeding that, if overturned, would invalidate SJ LAFCo's conditional approval of the District's proposal. Therefore, the District is not asserting a claim against a Debtor or property of a Debtor's estate in the LAFCo Action; there is no debtor-creditor[9] relationship between the parties with respect to this action; and the proceeding does not impact property of the estate.[10]

Additionally, the Debtors have benefitted from the breathing spell provided by the bankruptcy filing, and they have developed and proposed the Plan. Importantly, the LAFCo Action is not addressed by any provisions of the Plan, nor should it, because the District is not asserting a "claim" in the LAFCo Action. Thus, this proceeding should continue in its court of origin undisturbed with almost no impact on this bankruptcy case.[11]

Critically, the LAFCo Action must be heard in the state court because this court lacks jurisdiction over the action. Prior to the bankruptcy, no basis existed for federal jurisdiction over the case. If the matter were now brought to the bankruptcy court, there is still no basis for jurisdiction because the LAFCo Action only involves state law actions that could not have been brought in the federal court absent the bankruptcy filing. *See In re Tucson Estates Inc.*, 912 F.2d 1162, 1168 (9th Cir. 1990) (bankruptcy court lacks federal jurisdiction over state claims) discussing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982); *see also In re Pacific Gas & Electric Company,* 279 B.R. 561, 571 (Bankr. N.D. Cal. 2002) ("No federal jurisdictional basis other than section 1334 has been shown."); *see* 28 U.S.C. § 1334.

---

[9] *See* 11 U.S.C. § 101(10) ("creditor" means an entity that has a claim against the debtor or the estate).

[10] The parties dispute whether the LAFCo approval is a prerequisite for the Eminent Domain Action, but agree it is needed to provide the actual service. So, although they are related, the LAFCo Action is separate from the Eminent Domain Action.

[11] The Plan contains release, injunction and discharge provisions in Sections 10.3-9 as limited by the Special Provisions for Governmental Units in Section 10.13 that could impact the LAFCo Action. As further discussed in detail in footnote 15 below for the Eminent Domain Action, the District has requested clarification of, and a determination that, the release, injunction and discharge provisions of the Plan do not in any way affect the LAFCo Action or the Eminent Domain Action.

-11-

Also, because the LAFCo Appeal involves appeals from state court judgments such as these, federal courts lack jurisdiction over such suits under the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *see In re Lehigh Valley Pros. Inc.*, 482 B.R. 127, 131-132 (Bankr. E.D. Pa. 2012).

Also relevant to the lack of connection or interference with the bankruptcy case are the following: there are no bankruptcy issues in the action, so it is not a "core" proceeding under 28 U.S.C. § 157(b)(2); the applicable state law involved in this proceeding which challenges the legality of state government action is complex, difficult and unsettled because, among other things, there is no binding precedent on the constitutionality of Condition 2 under the state law for these facts; the dispute has been pending for many years; and the matter is one for specialized outside counsel and should not impact the professionals who are working on the bankruptcy cases.

Considering the foregoing and the other relevant factors, which are discussed next, there is almost no connection with or interference with the bankruptcy case (*Curtis* factor 2).

### 3. The Other *Curtis* Factors Also Weigh Heavily in Favor of Lifting the Stay

The fact that the LAFCo Action involves purely state law issues also means that allowing the LAFCo Action to continue will ultimately result in a complete resolution of the issues in the LAFCo Action (*Curtis* factor 1) in state court. Because there is no claim being decided and only declaratory relief is requested, the decision in the LAFCo Appeal will completely resolve the issues in that appeal, and there will be little effect on the efficient administration of the estate.

The interests of judicial economy and the expeditious and economical determination of litigation for the parties (*Curtis* factor 10) also support lifting the stay. There are no economies to be gained in the bankruptcy because there is no "claim" to adjust; it clearly would be more efficient for the state court, which has the matter, because it has been handing the matter and has

expertise; no other court, as a practical matter, could do so; and it is just a question of time before the lawsuit will be resumed in state court for the reasons discussed above.

The LAFCo Appeal has significantly progressed (*Curtis* factor 11) and there is relatively little to do. The LAFCo Action was filed in state court years before to the bankruptcy filing, a judgment was entered, the parties appealed, and briefing is almost complete in the LAFCo Appeal. All that remains for PG&E in the LAFCo Appeal is to file a reply after the District files its combined cross-appellant's response and reply brief.

At the same time, allowing the suit to proceed will not prejudice the interests of creditors, the creditor's committee and other interested parties (*Curtis* factor 7). They are not harmed by a proceeding continuing in state court because the action has to be decided in state court in any event, and their interests are aligned with the estate, which also won't be harmed. *See In re Lehigh Valley Pros. Inc.,* 482 B.R. 127, 131 fn. 8 (Bankr. E.D. Pa. 2012) (No prejudice to estate from condemnation proceeding continuing in state court).

The last relevant *Curtis* factor,[12] which is the impact of the stay and balance of the hurt (*Curtis* factor 12), also supports lifting the stay. The Debtors and their estates, creditors and other interested parties are minimally impacted by continuation of this litigation because the declaratory relief requested has so little impact on the estate. However, the continuation of the stay harms the District and its residents. Since 2004, the District has sought to provide safe and reliable retail electric service in a transparent, responsible and accountable manner at a 15% cost savings to approximately 40,000 electrical customers in its territory. Rietkerk Decl. at ¶ 3. The District has expended considerable time and resources on this project and has already suffered too many delays due to PG&E's actions and numerous challenges. Rietkerk Decl. at ¶ 8.

---

[12] For the LAFCo Appeal, the other *Curtis* factors are not relevant or carry little weight. The foreign proceeding does not involve the debtor as a fiduciary (factor 3); a specialized tribunal with expertise has not been established to hear the particular cause of action (factor 4); the debtor's insurance carrier has not assumed full financial responsibility for defending the litigation (factor 5); the action does not essentially involve only third parties (factor 6); there is no claim that would be subject to equitable subordination (factor 8); and the District's success in the proceeding would not result in a judicial lien avoidable by the debtor under Section 522(f) (factor 9).

-13-

Continuing the stay would deny to the community the public benefits of this project, including stimulating the local economy and providing safe and reliable electric service at reduced rates and local control of and responsibility for the system. *Id*. Thus, "the impact of the stay and balance of hurt" weigh heavily in favor of lifting the stay.

**4.      The Stay Should Be Lifted Because the Bankruptcy Court Would Be Required to Abstain from Hearing the LAFCo Action**

The stay should also be lifted to allow the LAFCo Action to proceed in the appropriate forum because the Court should be required to abstain. *Tucson Estates Inc.*, *supra*, 912 F.2d at 1169; *Pacific Gas & Electric Company*, *supra*, 279 B.R. at 570-572. A bankruptcy court may abstain from hearing a proceeding if abstention is in the interest of justice, comity with state courts, or respect for state law. 28 U.S.C. § 1334(c)(1). To determine whether a court should abstain, courts consider a number of factors,[13] many of which overlap with the *Curtis* factors for determining whether to lift the stay. *Tucson Estates* and *Pacific Gas & Electric Company* are instructive.

---

[13] The abstention factors are:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

(2) the extent to which state law issues predominate over bankruptcy issues,

(3) the difficulty or unsettled nature of the applicable law,

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) the substance rather than form of an asserted 'core' proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden of [the bankruptcy court's] docket,

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of nondebtor parties.

*Tucson Estates Inc.*, 912 F.2d at 1169 quoting *Republic Reader's Serv., Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Serv., Inc.),* 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987).

-14-

In *Tucson Estates*, the Ninth Circuit concluded "that the bankruptcy court abused its discretion by not abstaining and entirely lifting the stay" after considering the abstention factors, including among others: the state law issues predominated, the litigation in state court had begun before the bankruptcy, the applicable state law was the difficult and unsettled, there is a lack of federal jurisdiction other than bankruptcy jurisdiction, the matter is non-core, and it will be easy to permit completion of the state court litigation while reserving enforcement to the bankruptcy court. *Tucson Estates Inc.*, 912 F.2d at 1169.

In *Pacific Gas & Electric Company*, this Court concluded the abstention factors weighed "heavily in favor of abstention" and "cause exists for lifting the stay" where, among other things, all of the claims involved purely state law issues; there were no bankruptcy issues and no difficult or complex federal law issues presented; claimants commenced litigation in state court prior to the petition date; and "no federal jurisdictional basis other than section 1334 has been shown." *Pacific Gas & Electric Company*, 279 B.R. at 570-572.

Here, most of the factors that are important, which were discussed above, are present, so the abstention factors weigh so heavily in favor of abstention that a bankruptcy court would abuse its discretion by not abstaining and entirely lifting the stay. *See Tucson Estates*, 912 F.2d at 1169; *Pacific Gas & Electric Company*, 279 B.R. at 570-572. Accordingly, the Court should grant the Motion and allow the LAFCo Action to proceed.

**C.      The Automatic Stay Should be Lifted for Cause to Allow the Eminent Domain Action to Continue.**

As with the LAFCo Action, the relevant factors weigh heavily in favor of lifting the stay of the Eminent Domain Action. Indeed, much of the analysis of "cause," including the *Curtis* factors and abstention, in the previous section on the LAFCo Action, is exactly the same for the Eminent Domain Action. So, that discussion is incorporated in this section by reference, and only the distinctions between applying the factors to the LAFCo Action and the Eminent Domain Action are discussed here.

-15-

### 1.    The Eminent Domain Action Lacks Connection With and Will Not Interfere With the Bankruptcy Case (*Curtis* Factor 2)

Like the LAFCo Action, the Eminent Domain Action has little connection with, and does not interfere with, the bankruptcy case (*Curtis* factor 2). By its nature, "[t]he power of eminent domain is an inherent attribute of sovereignty" and is "'universally' recognized and 'necessary to the very existence of government.'" *City of Oakland v. Oakland Raiders*, 32 Cal. 3d 60, 64 (1982). Courts have held that eminent domain is to be given special deference in bankruptcy. *See Matter of Chicago, Milwaukee, St. Paul & P.R. Co., Appeal of City of New Hampton, Iowa*, 738 F.2d 209, 211-212 (7th Cir. 1984). The *Chicago* court stated "the guiding principle should be to permit the exercise of the power of eminent domain to the greatest extent consistent with the purposes of the reorganization proceeding." *Id.*; *Maryland v. Amoruso (In re Quality Supplier Gen. Partnership)*, 176 B.R. 135, 140-141 (Bankr. D. Md. 1994) (citing *Chicago*).

The District's exercise of its eminent domain power is not assertion of a claim against the estate or a right to payment, and there is no debtor-creditor relationship between the District and PG&E with respect to this matter. *See* 11 U.S.C. § 101(5) (defining "claim" as a right to payment); 11 U.S.C. § 101(10) (defining "creditor"). "It is obvious, at the outset, that the state is not here in the position of a creditor. It is not seeking to enforce an existing mortgage, tax lien . . . . or other interest that would qualify as a 'claim' against the debtor's property under section 77(B), and therefore [it cannot] be subject to alteration or modification in the course of approving a plan under that section." *Commonwealth v. Bartlett*, 384 F.2d 819, 822 (1st Cir. 1967). An eminent domain action could only be, at most, postponed. *Id.* This is because the governmental unit pursuing an eminent domain action:

> possesses a special inchoate interest or right, which is paramount to any interest of the debtor in the property. This is nothing the debtor ever had, or that it, or the court, could convey, qualify, or subordinate to any other claim or interest. There is . . . not even a bankruptcy function to determine fair compensation. In sum, with respect to the state's prescriptive rights the court could effect none of the alterations or take any of the actions ordinarily contemplated in a reorganization proceeding.

-16-

*Commonwealth v. Bartlett*, 384 F.2d at 822; *Matter of Chicago, Milwaukee, St. Paul & P.R. Co., Appeal of the State of Wisconsin, Dep't of Trans.*, 739 F.2d 1169, 1173-1174 (7th Cir. 1984) (citing *Bartlett* with approval; allowed leave to acquire railroad property by condemnation); *Maryland v. Amoruso (In re Quality Supplier Gen. Partnership)*, 176 B.R. 135, 140-141 (Bankr. D. Md. 1994 (citing *Bartlett* with approval and lifting the stay); *Matter of Chicago, Milwaukee, St. Paul & P.R. Co., Appeal of City of New Hampton, Iowa*, 738 F.2d 209, 212-214 (7th Cir. 1984) (City could request relief from stay to pursue condemnation of property during bankruptcy, or could pursue it after the completion of the bankruptcy; court concluded court had discretion "to determine whether proceedings should take place before the state tribunal or federal court."); *see also In re Rossi*, 86 B.R. 220, 221 (9th Cir. B.A.P. 1988) (bankruptcy court lifted the stay because state court had to determine if the sum offered ($160,000) was "just compensation;" the Bankruptcy Appellate Panel for the Ninth Circuit decided case on other grounds).

Thus, the power of eminent domain and related rights are so strong that a debtor never has any rights to property that are different from the rights the debtor had the moment before the bankruptcy was filed, and the entity seeking the property through eminent domain keeps its powers and rights at all times. *Maryland v. Amoruso (In re Quality Supplier Gen. Partnership)*, *supra*, 176 B.R. at 140-141. The *Maryland* court reasoned:

> Debtors may not, however, permanently bar the State from exercising its power of eminent domain over their property through the expedient of a confirmed reorganization plan. Assuming the debtors were successful in having a reorganization plan confirmed, the federal interest of the bankruptcy court in protecting debtors opportunity to reorganize would fade upon confirmation. . . . When a bankruptcy estate's property is revested in a debtor after confirmation of a reorganization plan, the debtor's property interests stand in the same relationship to the State's sovereign powers of eminent domain as they did before bankruptcy, and in the same relationship as the ownership rights of other property owners. Debtors never possessed rights in Lot 25 that were superior to the eminent domain powers of the State. Debtors do not have, and they never had, the power to convey property free of the State's eminent domain powers, nor do debtors have the power to subordinate the State's sovereign rights.

-17-

*Id.* at 140.[14] In *Maryland*, debtors owned real property ("Lot 25") improved by a three story factory building in which debtors conducted businesses that include pallet manufacturing and repair, paper converting and recycling, and trucking. Maryland sought to condemn the property as part of a much larger tract for the construction of a penal institution, and the bankruptcy court lifted the stay and found the State's power and rights were not affected by the bankruptcy. *Maryland v. Amoruso*, 176 B.R. at 142-143.

Similarly, in *Rossi, supra*, 86 B.R. at 221, debtors owned five lots of real property with a one-story brick building on two of the lots and a parking lot on the other three parcels (the "Parking Lot") in a city; the city filed a condemnation action seeking the parking lot, and the bankruptcy court lifted the stay to allow the action to proceed. *Id*.

Additionally, the Eminent Domain Action is not addressed by any provisions of the Plan, nor should the Plan address it, because – for the reasons explained above – a plan cannot change the District's eminent domain powers and rights or the debtor's rights with respect to property.[15] So, this proceeding should continue in its court of origin undisturbed with no impact on this bankruptcy case.

Also, for the reasons discussed above for the LAFCo Action, the bankruptcy court lacks jurisdiction because the Eminent Domain Appeal is a state court appeal, and there are only state

---

[14] If a bankruptcy court were to conclude that a "proposed exercise of eminent domain would cripple the reorganization, the lethal blow may be diverted from the egg, but it will fall upon the day-old chick at the state's pleasure." *Maryland v. Amoruso*, 176 B.R. at 140 quoting *Commonwealth v. Bartlett*, 384 F.2d 819, 822 (1st Cir. 1967).

[15] The District has requested clarification as to the scope and effect of the discharge, release and injunction provisions of the Plan in Sections 10.3 -10.9 and the Special Provisions as to Governmental Units in section 10.13, and in particular a determination that those provisions do not affect the exercise of the power of eminent domain and ancillary related authority of Governmental Units as such exist outside of bankruptcy. *See Joinder of South San Joaquin Irrigation District to Valley Clean Energy Alliance Status Conference Statement Regarding Preconfirmation Legal Issues [Dkt. No. 5442]* (Dkt. No. 5446); Valley Clean Energy Alliance's *Status Conference Statement Regarding Preconfirmation Legal Issues* (Dkt. 5442). *See Partial Joinder of the City and County of San Francisco to the Status Conference Statement of Valley Clean Energy Alliance Regarding Preconfirmation Issues* (Dkt. 5468). The discussion and authorities cited above support this request. *See, e.g.*, *Maryland v. Amoruso*, 176 B.R. at 140-141.

-18-

law issues[16] and no bankruptcy issues, let alone core matters. *See In re Tucson Estates Inc.*, *supra*, 912 F.2d at 1169 (bankruptcy court lacks federal jurisdiction over state claims); *see also In re Pacific Gas & Electric Company*, *supra*, 279 B.R. at 572 ("No federal jurisdictional basis other than section 1334 has been shown."); *see, e.g.*, *In re Lehigh Valley Pros. Inc.*, *supra*, 482 B.R. at 131-132 (relief from stay granted to allow eminent domain action to proceed due to *Rooker-Feldman* doctrine).

Therefore, there is almost no connection with or interference with the bankruptcy case (*Curtis* factor 2).

## 2. The Other *Curtis* Factors Also Weigh Heavily in Favor of Lifting the Stay of the Eminent Domain Action

As noted above, many of the other factors are the same for the LAFCo Action and the Eminent Domain Action, so the analysis of those apply here. Also, the matter has significantly progressed (*Curtis* factor 11), and there is little to be done in the Eminent Domain Appeal; the District just needs to file a reply; PG&E's briefing is complete. O'Laughlin Decl. at ¶ 7.

Regarding the impact of the stay and balance of the hurt (*Curtis* factor 12), in addition to the reasons this factor greatly favors the District that are discussed for the LAFCo Action, when the Eminent Domain Action continues (as it must) in state court, the estate or the debtor would either receive just compensation for the Property or keep title to the Property if the District did not prevail. Assuming the District prevailed, the Property is small in value in comparison with the value of the property and interests at issue in this case. PG&E has 15 million customers in northern and central California,[17] and its bankruptcy involves billions of dollars.[18] "In 2018,

---

[16] *See, e.g.*, *Bevelle v. Jefferson County (In re Bevelle)*, 348 B.R. 812, 816 n. 8 (Bankr.N.D.Ala. 2006) (What constitutes just compensation "is a state law matter better left for the state court to decide."). Further, there is a right to a jury trial in the Eminent Domain Action.

[17] Disclosure Statement at p. 7, lines 18-19 and p. 9, 19-20.

[18] *See, e.g.*, Disclosure Statement at p. 22, lines 19-22 ("The Plan provides for (i) payment of $13.5 billion in cash and stock to settle and resolve in full all prepetition Fire Victim Claims; (ii) payment of $11 billion to settle and resolve all Subrogation Claims; (iii) payment of $1 billion to settle and resolved the Public Entities Wildfire Claims; (iv) satisfaction or Reinstatement of all prepetition funded debt obligations; (v) payment in full of all prepetition trade claims and employee-related claims . . . .").

-19-

[PG&E] generated over $12 billion in revenue based on the sale or delivery of electricity."[19] The District seeks to provide safe and reliable service to approximately 40,000 electrical customers within its service territory. Rietkerk Decl. at ¶ 3. Further, if even the District prevailed in the Eminent Domain Action, PG&E would receive "just compensation" which, based on the District's offer, would bring in over $116 million in funds into the estate. *City of Oakland v. Oakland Raiders*, 32 Cal. 3d 60, 78 (1982) ("just compensation must be paid to the property owner."); *Maryland v. Amoruso (In re Quality Supplier Gen. Partnership)*, 176 B.R. 135, 141-142 (Bankr. D. Md. 1994) (Just compensation is adequate because the debtor only has the same rights in the property that the debtor had prior to the bankruptcy filing.); *see In re Rossi*, 86 B.R. at 221 (stay lifted because state court had to determine if the sum offered was just compensation). As a result, the *Curtis* factors greatly favor lifting the stay.

### 3. The Stay Should Be Lifted Because the Bankruptcy Court Would be Required to Abstain from Hearing the Eminent Domain Action

As with the application of the abstention factors to LAFCo Action, most of the factors that were important in *Tucson* and *Pacific Gas* are present and should require abstention and therefore lifting the stay for the Eminent Domain Action. For example, the action will have little effect on the efficient administration of the estate if the stay is lifted; there is a right to jury trial; all of the claims involve purely state law issues on the District's right to take and the standard of review/burden of proof, which based on the facts of this case are difficult, complex, and unsettled; there are no bankruptcy issues or difficult or complex federal law issues; the litigation commenced in state court prior to the petition date; there is no federal jurisdictional basis other than bankruptcy jurisdiction; the matter is non-core; and it will be easy to permit completion of the state court litigation while reserving enforcement to the bankruptcy court. Considering the foregoing, the abstention factors weigh heavily in favor of abstention that a bankruptcy court would abuse its discretion by not abstaining and entirely lifting the stay. *Tucson Estates*, 912 F.2d at 1169; *Pacific Gas & Electric Company,* 279 B.R. at 570-572.

---

[19] Disclosure Statement at p. 7, lines 18-19.

1      Accordingly, the Court should grant the Motion and allow the Eminent Domain Action to
2  proceed.

## V.    CONCLUSION

    The LAFCo Action is clearly not a proceeding against the Debtor that is subject to the stay. However, even if it were, there is clearly cause to lift the stay of the LAFCo Action. It is also clear that there is cause to lift the stay of the Eminent Domain Action. Accordingly, the District respectfully requests that this Court enter an order that (a) determines the automatic stay does not apply to the LAFCo Action or, in the alternative,  lifts the stay of the LAFCo Action, (b) lifts the stay of the Eminent Domain Action, and (c) grants such other and further relief as is just and proper under the circumstances.

DATED:  March 4, 2020               STRADLING YOCCA CARLSON & RAUTH
                                    A PROFESSIONAL CORPORATION

                          By:    */s/ Paul R. Glassman*
                                 Paul R. Glassman
                                 Attorneys for Party-in-Interest,
                                 South San Joaquin Irrigation District

-21-