Paul R. Glassman (SBN 76536)
STRADLING YOCCA CARLSON & RAUTH, P.C.
100 Wilshire Boulevard, 4th Floor
Santa Monica, CA 90401
Telephone: (424) 214-7000
Facsimile: (424) 214-7010
Email:     pglassman@sycr.com

Mia S. Brown (SBN 242268)
General Counsel
SOUTH SAN  JOAQUIN IRRIGATION DISTRICT
11011 E. Highway 120
Manteca, CA 95336
Telephone: (209) 249-4600
Facsimile: (209) 249-4692
Email:     mbrown@ssjid.com

Attorneys for Party-In-Interest, South San Joaquin Irrigation District

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In Re:** | Bankruptcy Case No. 19 - 30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | Lead Case |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | Jointly Administered |
| **Debtors.** | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF SOUTH SAN JOAQUIN IRRIGATION DISTRICT FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT PROCEEDINGS IN NON-BANKRUPTCY FORUM TO CONTINUE** |
| ☐  Affects PG&E Corporation <br> ☐  Affects Pacific Gas and Electric Company <br> ☒  Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Judge:   Hon. Dennis Montali <br><br> Date:     March 25, 2020 <br> Time     10:00 a.m. <br> Place:    United States Bankruptcy Court <br> 450 Golden Gate Ave., 16th Flr, Crt. 17 <br> San Francisco, CA 94102 <br><br> **Objection Deadline**: <br> March 20, 2020 at 4:00 p.m. (PT) |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, AND ALL PARTIES IN INTEREST:**

South San Joaquin Irrigation District (the "District") respectfully requests that this United State Bankruptcy Court ("Court") take judicial notice of state court records and the District's public records, which are listed below and attached hereto (the "RJN Exhibits"). This Request for Judicial Notice and these RJN Exhibits are being filed in support of the *Motion of South San Joaquin Irrigation District for Relief from the Automatic Stay to Permit Proceedings in Non-Bankruptcy Forum to Continue* (the "Motion") filed concurrently herewith.

Under Rule 201 of the Federal Rules of Evidence, "[a] court must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Proceedings in other courts are the proper subject of judicial notice when directly related to the case. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see also Harris v. County of Orange,* 682 F.3d 1126, 1132 (9th Cir. 2012); *Bennett v. Medtronic, Inc.,* 285 F.3d 801 (9th Cir. 2002) (California federal appeals court would take judicial notice of the pleadings filed in a related action between the same parties in a Tennessee state court). In *Pikulin v. United States 97 Fed Cl. 71* (2011 U.S. Claims), the court held that the court is entitled to take judicial notice of plaintiff's litigation history from publicly available opinions and court dockets.

City ordinances are also proper subjects for judicial notice. *Newcomb v. Brennan,* 538 F.2d 825, 829 (7th Cir. 1977). In *Santa Monica Foods Not Bombs v. City of Monica,* 450 F.3d 1022 (9th Cir. 2006) the court held the requested documents from the City's public records including ordinances, a permit application and a City indemnity agreement, are proper subjects for judicial notice. The court only declined, on grounds of relevancy, judicial notice for the City staff reports, indicating said reports would have been otherwise proper for judicial notice as public records. *Id.* at Footnote 2; *see Lee v. City of Los Angeles*, 250 F.3d 680, 689 (9th Cir. 2001) noting that judicial notice may be taken of public records.

Here, the District requests that the court take judicial notice of the records, which are pleadings and court dockets listed below, in two related cases, which were filed in the Superior

-1-

Court for San Joaquin County, California, and appealed to the California Court of Appeal, Third Appellate District.

In the first case, debtor PG&E filed its First Amended Complaint and Petition, on February 25, 2015, against San Joaquin Local Agency Formation Commission ("SJ LAFCo") *PG&E v. SJ LAFCo* (STK-CV-UJR-2015-0001266) to invalidate SJ LAFCo's conditional approval of the District's electric plan and change of organization to provide retail electric service within its service territory. The court denied both of PG&E's Motions for Summary Adjudication, but ultimately entered judgment for PG&E finding that Condition No. 2 of SJ LAFCo's approval violated the California Constitution as an unconstitutional tax (the "SJ LAFCo Judgment"). The District appealed the SJ LAFCo Judgment on November 29, 2017. (Case No. C086008.)

The District requests that the Court take judicial notice of the following pertinent filings in *PG&E v. SJ LAFCo,* Case No. STK-CV-JUR-2015-0001266, in the Superior Court for County of San Joaquin, California and the Third District Court of Appeal docket. The following exhibits, which are attached hereto, are true and correct copies of documents from the state superior court case and the docket of the case in the Third District Court of Appeal:

1. First Amended Complaint to Determine Validity and for Declaratory Relief; and Verified Petition for Writ of Mandate in *PG&E v. San Joaquin Local Agency Formation Commission* (February 25, 2015) (without exhibits)

2. Order on PG&E's Motion for Summary Adjudication No. 1 (March 7, 2016)

3. Order on PG&E's Motion for Summary Adjudication No. 2 (March 7, 2016)

4. Judgment After Court Trial in LAFCo Action (October 31, 2017)

5. Third District Court of Appeal – Docket for Case No. C086008

In the second case, the District filed a complaint in eminent domain on July 9, 2016 against PG&E to acquire its electrical distribution system located in the District's service territory. (STK-CV-UED-2016-00006638). PG&E moved to dismiss the condemnation action

-2-

lack of a valid SJ LAFCo approval for the project as a result of the SJ LAFCo judgment. The motion was granted on January 16, 2018. The District appealed the dismissal judgment on January 18, 2018 (Case No. C086319).

The District requests that the Court take judicial notice of the following pertinent filings in *South San Joaquin Irrigation District v. Pacific Gas And Electric Company Et Al.,* Case No. STK-CV-UED-2016-0006638, which is pending in the Superior Court for the County San Joaquin, California and the Third District Court of Appeal. The following exhibits, which are attached hereto, are true and correct copies of documents filed in the state superior court case and the docket of the case in the Third District Court of Appeal:

6. Complaint in Eminent Domain (July 7, 2016)

7. Judgment [in Eminent Domain Action (January 16, 2018)

8. Third District Court of Appeal – Docket for Case No. C086319

Lastly, the District requests that the Court take judicial notice of the District's Resolution of Necessity to condemn PG&E's electrical system and its supporting staff report, which are public records. The District is a public entity, and these documents should be judicially noticed as a city's ordinances and public records; the Court make take judicial notice of a record or report of an administrative body "for its publication and the existence of its content, not for the truth of disputed matters asserted in the document." *Delta Smelt Consol. Cases v. Salazar*, 686 F. Supp. 2d 1026, 1031 (E.D. Cal 2009) citing *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008). True and correct copies of the following documents or excerpts thereof are attached hereto:

9 The District's Resolution of Necessity No. 16-05-E (without exhibits)

10. Excerpts of the District's Staff Report Resolution of Necessity Hearing for SSJID's Retail Electric Project - - Property Acquisition (Excerpts)

/ / /

/ / /

/ / /

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 4 of 148

1        The RJN Exhibits are undisputed matters of public record, of which this Court may take

2    judicial notice in connection with the Motion, and therefore the District respectfully requests

3    that the Court take judicial notice of the RJN Exhibits.

4

5    DATED:  March 4, 2020                    STRADLING YOCCA CARLSON &
                                              RAUTH A PROFESSIONAL
6                                             CORPORATION

7

8                                         By:  */s/ Paul R. Glassman*

9                                              Paul R. Glassman
                                               Attorneys for South San Joaquin
10                                             Irrigation District

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

# EXHIBIT 1

FILED
SUPERIOR COURT-STOCKTON

2015 FEB 25 PM 12: 52

ROSA JUNQUEIRO, CLERK

BY CARA WATSON
DEPUTY

1 MANATT, PHELPS & PHILLIPS, LLP
GEORGE M. SONEFF (State Bar No. 117128)
2 DINESH R. BADKAR (State Bar No. 216908)
11355 West Olympic Boulevard
3 Los Angeles, California 90064-1614
Telephone: (310) 312-4000
4 Facsimile: (310) 312-4224

5 PACIFIC GAS AND ELECTRIC COMPANY
MARK H. PENSKAR (State Bar No. 77725)
6 77 Beale Street, B30A
San Francisco, CA 94105
7 Telephone: (415) 972-5672
Facsimile: (415) 973-5520

8 COX, CASTLE & NICHOLSON LLP
MICHAEL H. ZISCHKE (State Bar No 105053)
9 CHRISTIAN H. CEBRIAN (State Bar No 245797)
STEPHANIE R. MARSHALL (State Bar No. 279652)
10 555 California Street, 10th floor
San Francisco, CA 94104-1513
11 Telephone: (415) 262-5100
Facsimile: (415) 262-5199
12
*Attorneys for Plaintiff/Petitioner*
13 PACIFIC GAS AND ELECTRIC COMPANY

14 SUPERIOR COURT OF THE STATE OF CALIFORNIA

15 FOR THE COUNTY OF SAN JOAQUIN

16 PACIFIC GAS AND ELECTRIC     Case No. 39-2015-00321743-CU-JR-STK
COMPANY, a California corporation,
17     (Assigned to Hon. Roger Ross)
     Plaintiff/Petitioner,
18     vs.
19 SAN JOAQUIN LOCAL AGENCY     **FIRST AMENDED COMPLAINT TO**
FORMATION COMMISSION; ALL     **DETERMINE VALIDITY AND FOR**
20 PERSONS INTERESTED IN THE     **DECLARATORY RELIEF; AND**
VALIDITY OF SAN JOAQUIN
21 LOCAL AGENCY FORMATION     **VERIFIED PETITION FOR WRIT OF**
COMMISSION'S ACTIONS     **MANDATE**
22 RELATED TO APPROVAL OF
SOUTH SAN JOAQUIN
23 IRRIGATION DISTRICT'S
APPLICATION TO PROVIDE
24 RETAIL ELECTRIC SERVICE;
SOUTH SAN JOAQUIN
25 IRRIGATION DISTRICT, a California
special district; and DOES 1 through
26 50, inclusive,

27      Defendants/Respondents/
     Real Party in Interest.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

## SUMMARY OF ACTION

1.      Since 1963, each California county has had a Local Agency Formation Commission ("**LAFCo**"). LAFCos serve as the public's "watchdog" to oversee orderly formation and development of local agencies and to promote the efficient provision of governmental services. (*Bookout v. Local Agency Formation Commission of Tulare County* (1975) 49 Cal.App.3d 383, 388.) The powers of LAFCos are now set forth in the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Govt. Code §56000, *et seq.*), referred to herein as the "**LAFCo Act.**"

2.      This action involves defendant and respondent San Joaquin County Local Agency Formation Commission's ("**SJ LAFCo**") statutory obligations. It arises from a proposal made to SJ LAFCo by an irrigation district over which SJ LAFCo exercises jurisdiction, defendant and real party in interest South San Joaquin Irrigation District ("**SSJID**"). SSJID has long provided water to customers in its territory. SSJID applied to SJ LAFCo for permission to expand its operations to become the retail electric service provider to over 38,000 homes and businesses in San Joaquin County. SSJID's proposal is to take over plaintiff and petitioner Pacific Gas and Electric Company's ("**PG&E**") electric system by eminent domain and become the electric service provider within its territory. SSJID's justification for its proposal is that it will provide electric service at rates at least 15 percent below PG&E's rates.

3.      There is no dispute about whether SSJID is required to obtain SJ LAFCo's approval before implementing its electric takeover proposal. That issue was resolved in prior litigation between SSJID and SJ LAFCo. After SJ LAFCo rejected SSJID's electric proposal in 2006, SSJID filed an action challenging SJ LAFCo's jurisdiction. The Court of Appeal ruled against SSJID, holding that SJ LAFCo's approval was necessary before SSJID can provide retail electric service. (See, *South San Joaquin Irr. Dist. v. Superior Court* (2008) 162 Cal.App.4th 146.) The California Legislature reacted to SSJID's challenge and the court decision by amending the LAFCo Act, effective as of January 1,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

2009, to specify the procedural steps for consideration of proposals such as SSJID's, and to add a requirement that LAFCo can approve such proposals only if LAFCo determines that the applicant will have "sufficient revenues" to implement the proposal.

4. After the litigation, SSJID again applied to SJ LAFCo for approval. This time SJ LAFCo purported to *conditionally* approve SSJID's proposal in December, 2014. The issues in this lawsuit involve both the procedure by which SJ LAFCo was required to make specific determinations concerning the proposal, and the substance of the purported conditional approval. Specifically, PG&E contends that:

- SJ LAFCo violated the procedures for "Change of Organization" that are mandated by the LAFCo Act;

- SJ LAFCo's action improperly cedes to the applicant, SSJID, the responsibility to make a specific determination about the financial viability of its own proposal—i.e., whether there will be "sufficient revenues" to carry out its proposal to provide electric service at rates 15 percent below those charged by PG&E—in direct violation of the LAFCo Act §56824.14(a), which (as amended in 2009) requires that SJ LAFCo itself must make such determination. Furthermore, SJ LAFCo's Condition only requires that SSJID make this determination for the first 10 years after takeover; and

- SJ LAFCo's action violates the law in that it imposes on electric customers, without an election, charges for in-lieu property taxes and fees to be collected by SSJID when it begins supplying electric service—to make up for tax losses that will be suffered by other government agencies by SSJID's displacement of PG&E, a tax paying entity—in direct violation of Proposition 26 (Cal. Const., art. XIII C, §1, adopted by voters Gen. Elec., Nov. 2, 2010).[1]

---

[1] In a very recent decision, *Citizens for Fair REU Rates et al. v. City of Redding et al.* (Jan. 20, 2015, C071906) __ Cal.App.4th __, the Third District Court of Appeal invalidated a similar provision, explaining that "Proposition 26 prohibits the PILOT [acronym: Payments In Lieu Of Taxes] from increasing the bills of customers by the same amount as the ad valorem tax on private utilities without voter approval or showing it reflects reasonable costs to the city." (*Id.* at 16.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

5. Pursuant to LAFCo Act §56021(m), SJ LAFCo's conditional approval constitutes a "change of organization" for SSJID, and §56103 provides that any lawsuit challenging such a decision must proceed as a reverse "validation" action under Code Civ. Proc. §860, *et seq*. Accordingly, the above three contentions form the basis of the <u>First, Second, and Third Causes of Action</u> herein, for invalidation of SJ LAFCo's Approval of Change of Organization.

6. The <u>Fourth Cause of Action</u> herein seeks a declaratory judgment establishing that the condition imposed by SJ LAFCo requiring SSJID to collect tax payments in its electric charges to compensate local government entities for the loss of taxes and fees paid by PG&E is unconstitutional. SJ LAFCo's counsel has advised the Commissioners that if this condition cannot be enforced, SSJID "would not have a project" that it can legally implement, which means that SSJID would not be legally authorized to commence eminent domain proceedings in an effort to condemn PG&E's electric system.

7. The <u>Fifth (as a reverse "validation" action) and Sixth Causes of Action</u> herein challenge SJ LAFCo's approvals of SSJID's proposal to become an electric service provider by taking PG&E's system, SSJID's proposed MSR/SOI plan and its annexation request, as well as SJ LAFCo's certification of an Environmental Impact Report (**"EIR"**), on the ground that SJ LAFCo's approvals and certification violated the California Environmental Quality Act (**"CEQA"**) (Pub. Resources Code §21000, *et seq*.).

## THE PARTIES

8. Plaintiff/Petitioner Pacific Gas and Electric Company (**"PG&E"**) is, and at all times mentioned was, a California corporation doing business in the County of San Joaquin, State of California. PG&E is the owner of an electric system comprised of real, personal, tangible, and intangible property within the County of San Joaquin that SSJID intends to take by way of eminent domain. PG&E operates its electric system pursuant to the regulatory authority of the California Public Utilities Commission.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

9.     Defendant/Respondent San Joaquin Local Agency Formation Commission ("SJ LAFCo") is, and at all times mentioned was, the local agency formation commission for San Joaquin County.

10.    Defendant and Real Party in Interest South San Joaquin Irrigation District ("SSJID") is, and at all times mentioned was, a California special district that provides irrigation water and domestic water service to customers in southern San Joaquin County. In addition, SSJID has various ownership interests in hydroelectric generating facilities and provides wholesale electric generation and marketing services.

11.    Defendants All Persons Interested in the Validity of San Joaquin Local Agency Formation Commission's Actions Related to Approval of South San Joaquin Irrigation District's Application To Provide Retail Electric Service are any such persons interested in the validity of San Joaquin Local Agency Formation Commission's approval of South San Joaquin Irrigation District's proposal to provide retail electric service within its territory at a 15 percent discount off PG&E's rates, who may join this action by appearing as provided in Code Civ. Proc. §861.1.

12.    The true names or capacities, whether individual, corporate, associate, or otherwise, of Does 1 through 50, are unknown to PG&E. Each Doe Defendant/Respondent contributed to or is somehow responsible for the conduct alleged herein. PG&E will amend this Petition to show the Doe Defendants'/Respondents' true names and capacities when ascertained.

## THE FACTS AND APPLICABLE LAW

### Background: SSJID's Prior Proposal, Resulting in Amended LAFCo Legislation

13.    The SJ LAFCo actions that are the subject of this case were made at the conclusion of a two-day hearing that took place on December 10 and 11, 2014. The actions arose from a formal proposal by SSJID, an irrigation district, seeking authorization to become the provider of retail electric service to over 38,000 customers (about 100,000 persons) within its irrigation boundaries. SSJID has never before, in its 100+ year history,

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1  provided electric service to the residents in its territory.  SSJID proposes to become the

2  electric service provider throughout its territory by ousting the current owner and operator

3  of the electric system, PG&E, through an eminent domain lawsuit.  SSJID proposes to

4  then provide electric service at rates 15% below those charged by PG&E.

5       14.    SSJID's operative proposal for authority to provide electric service was

6  submitted to SJ LAFCo in September, 2009.  However, SSJID first made the proposal to

7  SJ LAFCo years earlier, in 2005.  That initial proposal was considered and denied by SJ

8  LAFCo in 2006.  The denial led to litigation by SSJID in the Superior Court, giving rise to

9  two Court of Appeal decisions.  Following that litigation, the association representing

10  LAFCos throughout the state, California Association of LAFCOs ("CALAFCO"),

11  sponsored legislation amending the LAFCo Act (Govt. Code §56000, *et. seq.*) procedures

12  by which proposals by special districts such as SSJID to expand their services are

13  processed and reviewed by LAFCos.  The legislative amendments, which are central to

14  the present case, became effective as of January 1, 2009.

15       15.    The facts concerning SSJID's prior proposal, and the litigation and

16  legislation that resulted, are well summarized in the December 10, 2014 Executive

17  Officer's Report (Ex. A hereto) prepared by SJ LAFCo's Executive Officer James Glaser

18  in connection with SJ LAFCo's December 2014 actions that are the subject of this case.

19  Following are excerpts from that report, with three explanatory footnotes added:

20                                      EXECUTIVE OFFICER'S REPORT

21      December 10, 2014

22      TO:           LAFCo Commissioners

23      FROM:     James E. Glaser, Executive Officer

24      SUBJECT:   South San Joaquin Irrigation District (SSJID) (LAFC 25-14)

25      PROPOSAL:  SSJID's Proposal to Provide a New or Different Service to include
                            Retail Electric Service

26

27                                       * * *

28      As an irrigation district, SSJID is authorized by the Water Code (§22115 and
       §22120) to provide retail electricity service within and outside its boundary.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

Currently, SSJID's electric power services are a "latent power." This means that the District is authorized by State Law to provide retail service, but is currently not doing so. LAFCo approval is required prior to exercising this power. SSJID plans to exercise what is now termed a *new or different service* in order to provide retail electric service within its boundary by purchasing the electric distribution facilities currently owned and operated by PG&E.

(Ex. A, p. 2.)

* * *

Project history – In 2005, SSJID petitioned LAFCo to approve the District's application to exercise, what was termed at that time, its "latent power" to provide retail electric service. On June 16, 2006, LAFCo voted to deny SSJID's application to provide retail electric service on the grounds that "SSJID did not demonstrate its administrative, technical, and financial capabilities to provide retail electric service to the satisfaction of the Commission ...". Following the denial of SSJID's application, SSJID filed litigation on two separate issues. First, that LAFCo did not have the power to decide whether SSJID should be permitted to enter the retail electric business, and second, that SSJID should be allowed to depose LAFCo Commissioners about possible bias or improper motivations behind their decision. After losing in the trial court, SSJID appealed, and lost on both issues. The opinion stated that:

> "[C]ourts decline to inquire into the thought processes or motives, but evaluate the decision on its face because legislative discretion is not subject to judicial control and supervision." [*San Joaquin Local Agency Formation Comm'n v. Superior Court*, 162 Cal. App. 4th 159, 171 (2008).]

The Court, with respect to the issue of LAFCo's powers stated;

> "A district decision to engage in new or different functions by exercising some or all of its latent powers has the potential to impact the balance of services in a county. [The LAFCo Act] requires special districts, prior to exercising latent powers, to present LAFCo with a detailed plan and to receive written approval from LAFCo." [*South San Joaquin Irr. Dist. v. Superior Court*, 162 Cal. App. 4th 146, 155 (2008).]

The court indicated that its decision is consistent with the purpose of LAFCo's as "the watchdog" the Legislature established to guard against the wasteful duplication of services.

**These court decisions led to changes by the California Legislature to strengthen the review by LAFCo's for these types of applications. Assembly Bill 2484 strengthened LAFCo's "watchdog" function to treat applications such as SSJID's as a request for a "change of organization."[2] These amendments prohibit LAFCo's from approving a proposal for the establishment of a new or different functions or class of service unless the Commission determines that the special district will have sufficient revenues**

---

[2] This requirement that such applications be treated as a "change of organization" is found in LAFCo Act subdivision (h) of §56021, added effective January 1, 2009. Subdivision (h) was subsequently renumbered in 2011, and is now §56021(m).

7
FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

to carry out the new service.[3]  The Commission may approve a proposal for the establishment of a new or different functions or class of service within the jurisdictional boundaries of a special district where the Commission has determined that the special district will not have sufficient revenues, if the Commission conditions its approval on the concurrent approval of sufficient revenues sources pursuant to Section 56886.[4]  If the revenue sources are not approved, the district cannot provide the new services.  (Ex. A, p. 4; emphasis added.)

16.    SJ LAFCo was thus well aware that its December 2014 review of SSJID's proposal was required to proceed under a more stringent set of rules for review, both procedurally and substantively, than the rules that had applied to the 2006 denial of SSJID's proposal.  Those new rules—proposed by statewide association CALAFCO and adopted by the California Legislature effective as of January 1, 2009—significantly tightened the requirements for approval of SSJID's proposal.

**SSJID's Proposal:  Take PG&E's Electric System and Provide Electric Service at Rates 15% Below PG&E Rates**

17.    In September 2009, SSJID submitted its currently operative proposal to SJ LAFCo by filing a document called "Justification of Proposal."  (Ex. B hereto.)

18.    While the processing of SSJID's current proposal was more complicated than what was required earlier, one thing has never changed:   the central element of SSJID's proposal (both the initial proposal and the current one) has always been that SSJID will take PG&E's system and then provide electric service at rates 15 percent below those charged by PG&E.   Attachment 1 to SSJID's current proposal, labeled "Justification," makes clear that a 15 percent rate reduction is a primary element of its proposal to SJ LAFCo:

---

[3]  The January 1, 2009 amendments to LAFCo Act §56824.14(a) added the requirement that *LAFCo* must determine whether "sufficient revenues" will exist for any proposal by a special district to provide new or different services.

[4]  This refers to the provisions of LAFCo Act §56824.14(a)(1), also added effective January 1, 2009.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

## IV. SSJID'S PLAN TO PROVIDE RETAIL ELECTRIC SERVICE

SSJID's plan to provide retail electric service within its boundaries <u>consists of the following primary elements</u>:

- Purchase of the existing electrical distribution system within SSJID's existing service territory (Attachment 7);

- Construction of facilities necessary to separate the distribution system to be operated by SSJID from PG&E's remaining system (Attachment 7);

- Construction of additional electrical facilities necessary to provide reliable service to all electrical customers (Attachment 7);

- Sale of taxable and nontaxable debt to finance the purchase and all necessary capital costs (Attachment 8 and 9);

- Employment of 68 new permanent employees and additional personnel required for start-up operations, as needed (Attachment 6);

- Contracting for necessary power supplies (Attachment 8);

- <u>Reducing retail electric rates by 15 percent</u> (Attachment 8);

- Expanding the public benefit programs currently offered to PG&E's customers. (Attachment 6)

* * *

(SSJID Justification of Proposal, Attachment 1, pp. 1-6; emphases added.)

19.    Moreover, SSJID's plan expressly commits to reducing retail electric rates by 15 percent for no less than 30 years:

SSJID has assumed that PG&E's rates will increase after 2011 at a constant annual average rate over the 30 year study period. **SSJID's rates during this period will remain 15 percent below PG&E's rates.**

(SSJID Justification of Proposal, Attachment 8, pp. 8-4; emphasis added; see also Attachment 8, Ex. A, p. 8-14, providing SSJID's 30-year revenue forecast "based on PG&E retail rates less 15%.")

20.    While the Justification states that SSJID proposes to "purchase" the existing electric system that serves its territory, PG&E is the owner of that system and has always made clear that its system is not for sale; thus, SSJID's plan is to file litigation to take PG&E's system through eminent domain. But SSJID cannot file eminent domain litigation until it is *authorized by law* to provide the service, hence the need for approval by SJ LAFCo is a precursor to SSJID's takeover plan.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1       21.    In addition to the promises of a 15 percent rate reduction repeated

2 throughout SSJID's Justification, for a decade SSJID has continuously advertised in San

3 Joaquin County seeking public support for its proposal—on its website, on Facebook, on

4 large billboards on Interstate 5, on the radio, and in newspaper ads—**based on the**

5 **representation that its proposal would lower rates by 15 percent below those charged**

6 **by PG&E.** Its ubiquitous slogan has been "Save with SSJID." (Exhibit C hereto is a

7 listing of some, but certainly not all, of the public representations SSJID has made about

8 its proposed 15% rate reduction.)

9       22.    Under questioning at the December 10, 2014, SJ LAFCo hearing, SSJID's

10 Board President Ralph Roos reiterated that SSJID's proposal is to provide service at a 15

11 percent rate reduction:

12     [LAFCo Commissioner]:  **"There's been a great deal of emphasis on rate**
    **reduction for retail electric customers, and specifically the 15 percent has been**
13     **emphasized.**  Do you as the Board consider this to be a promise you have made, a
    goal, an estimate—because what we've heard is a lot of argument that that may not
14     be attainable,  and I know a lot of the correspondence I received in support of this
    made reference to rate reductions and specifically a 15 percent rate reduction. How
15     firmly committed are you as the Board to a 15 percent  rate reduction – what does
    that 15 percent mean to you?"
16
    [SSJID Board Pres.]:  **"If we can't do a 15 percent  rate reduction, what are we**
17     **doing here?**  . . . If we can't save our people 15%, and we believe we can, that's
    why we're here."
18
    [LAFCo Commissioner]:  "When you just made reference a few minutes ago to
19     some unknown fiscal [interrupted by witness] . . . "

20     [SSJID Board Pres.]:  "We don't know what the price [of acquiring PG&E's
    system] is going to be, that's going to affect things. . . . We don't know what the
21     future is going to be, but if the future continues on an average direction that its
    been, you can predict a little bit.  But I don't know whether there's unknowns out
22     there or not.  We don't know what's going to happen tomorrow."

23     [LAFCo Commissioner]:  "Do some of those unknown numbers — and if this
    Commission allows you to go forward, you're going to have to get input from PUC
24     and such.  . . . You said if it's not viable you won't proceed – is your cut off point
    15 percent."
25
    [SSJID Board Pres.]:  "The Board has to sit down and determine that when we
26     have all the numbers and what we can do. If we can't provide what we've assumed
    we can provide, the 15 percent, if it's 2 percent there's no sense in us doing this, is
27     there?"

28     [LAFCo Commissioner]:  "What about if it's 10 percent?"

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

[SSJID Board Pres.]: "We're shooting for 15 percent , that's what we think we can do. We feel like our numbers are conservative. If we're getting inflated numbers, our CFO is going to have to answer to kind of stuff. . . ."

[LAFCo Commissioner]: "I just wanted to be clear where your red line is. **And you indicated to me your redline is at 15 percent?**"

[SSJID Board Pres.]: "**I believe so, yes.**"

(Dec. 10, 2014 hearing, recording at 2:26 – 2:30; emphasis added.)

23.     Accordingly, the primary decision submitted to SJ LAFCo as a result of SSJID's proposal was whether, based upon all of the information provided, SSJID had demonstrated that it would have "sufficient revenues" to provide retail electric service, and the amount of those revenues to be considered by SJ LAFCo were to be the projected annual revenues that would be derived from charging rates 15 percent below those charged by PG&E. At no time has SSJID ever proposed to generate revenue by charging rates that do not beat PG&E's rates by 15 percent, or that equal or exceed PG&E's rates.

## SSJID's Commitment: To Use Electric Revenues to Pay All Property Taxes and Fees That Would Be Lost By Displacing PG&E

24.     PG&E has historically been the largest property taxpayer in San Joaquin County. For example, in 2012 PG&E paid $961,276 in property taxes based solely on its electric facilities in SSJID's territory that it intends to take from PG&E (PG&E also pays property taxes in the County on its electric facilities outside SSJID's territory). Those tax funds from PG&E were allocated to the cities of Manteca, Ripon and Escalon, to the County of San Joaquin and K-14 schools within the County, and to a variety of special districts in the area. In addition, PG&E pays about $1.9 million in franchise fees to the various jurisdictions in SSJID's territory for the privilege of having its electric facilities in public rights-of-way.

25.     If SSJID's plan is implemented, PG&E's property tax payments and franchise fees payments will cease, to the detriment of the County, cities, school districts and special districts. Recognizing that this would be a serious loss to local government that could prevent approval of its proposal, SSJID has promised to make its proposal

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

"revenue neutral" by transferring funds received from the electricity bills paid by its customers to various cities and government entities to substitute for the taxes and fees paid by PG&E. Attachment 1 to SSJID's current proposal, labeled "Justification," states:

> Further, the benefit of reduced rates to retail customers will not come at the expense of local governments. SSJID's Board of Directors has pledged to provide the cities within its boundaries and the County with the same revenue as they currently receive from PG&E's electric revenues when SSJID assumes the obligation to provide retail electric service. SSJID's economic model allocates 2.5 percent of gross revenues to local governments. PG&E's existing franchise agreements provide 2 percent. This commitment to local government is consistent with SSJID's current practice of reducing the electric rates charged to the cities receiving water from its water treatment plant.

(SSJID Justification of Proposal, Attachment 1, p. 1-15; emphasis added.)

26. SSJID has consistently maintained that it will be legally permitted to make these payments to local government entities without conducting an election to obtain voter approval, despite the fact that the payments are expressly made to compensate for property taxes and fees paid by PG&E and are to be made from funds collected from residents as part of their charges for electric service.

**SJ LAFCo's December, 2014 Actions**

27. SSJID's 2009 proposal came on for hearing at SJ LAFCo on December 10-11, 2014. The proposal took over five years to reach hearing for two reasons.

28. First, SSJID's claim that it could reduce electric rates by 15 percent was a matter of serious dispute, giving rise to extensive financial modeling by SSJID's consultants, PG&E's consultants, and by an independent third-party consulting firm (PA Consulting) hired by SJ LAFCo—all of which reached different conclusions, though only the reports commissioned by SSJID concluded that SSJID could reduce electric rates by 15 percent. As noted above, SJ LAFCo's Executive Officer's prepared a report containing recommendations prior to the hearing on SSJID's proposal. (Ex. A hereto.) The report includes a detailed discussion of the financial analyses presented by all sources. On the central issue—whether the analyses had shown SSJID's 15 percent rate reduction proposal would generate sufficient revenues for SSJID's plan to be financially feasible—the Executive Officer's report concludes:

Does SSJID have the financial ability to provide electric service at a 15% savings? SSJID has expressly included in its application and amendments thereto, resolutions, and public advertisements a commitment to a 15% savings over PG&E rates. LAFCo has found that the savings would only be a fraction of that, a rate of only 2.5%. **Accordingly, SSJID does not have the financial ability to provide electric service at a 15% discount.** (Ex. A, p. 29; emphasis added.)

29. As explained below, this conclusion by the Executive Officer was essentially accepted the SJ LAFCo Commissioners; there was no contrary finding.

30. <u>Second</u>, the proposal took several years to process because it became joined with three other matters that required review and approval by SJ LAFCo at the same time:

    a. SJ LAFCo was required to complete an extensive Municipal Service Review/Sphere of Influence ("MSR/SOI") process that, as of January 1, 2008, every LAFCo in the state was required to undertake for all special districts every five years (LAFCo Act §56425(g));

    b. SSJID applied to SJ LAFCo for permission to annex an additional 80 acres into its territory, in preparation for providing irrigation and electric service, and the annexation request triggered SJ LAFCo's separate review and approval process; and

    c. To consider SSJID's 15-percent-off-PG&E's-rates electric service proposal, SJ LAFCo was required to prepare and certify an Environmental Impact Report, which underwent multiple drafts, followed by circulation and re-circulation for comments.

31. The Executive Officer prepared separate reports for each of the three actions above, and at the conclusion of the December 11, 2014 hearing, SJ LAFCo adopted formal Resolutions addressing each of the three actions. The MSR/SOI report was approved, as was the annexation request, and the EIR was certified.

32. However, **no Resolution was adopted with respect to SSJID's proposal to provide retail electric service.** Instead, SSJID's proposal was decided upon in a chaotic series of events that unfolded in the 19th hour of a 20-hour, two-day hearing. Specifically, at the end of the second hearing day, SSJID produced a set of Findings and a

13

1   set of Conditions by which SJ LAFCo would *conditionally approve* SSJID's electric

2   service proposal **without making a determination about whether SSJID was capable**

3   **of providing the 15 percent rate reduction that had always been at the heart of its**

4   **proposal.** No such approach had ever been suggested in the years leading up to the

5   hearing, as it was understood by all concerned that SJ LAFCo needed to decide whether

6   the 15 percent rate reduction plan would generate sufficient revenues. Nonetheless, the SJ

7   LAFCo Commissioners voted to adopt those newly-produced Findings and Conditions.

8         33.   As demonstrated below, SJ LAFCo's action failed to comply with the

9   express procedural requirements in the LAFCo Act in that it did not adopt a Resolution

10  making the determinations required by the Act. But more importantly, the substance of

11  the Findings and Conditions also violate the Act's requirements for approval, conditional

12  or otherwise, of SSJID's electric service proposal.

13  **The Legal Standards for SJ LAFCo's Actions Concerning SSJID's Proposal**

14        34.   The amendments to the LAFCo Act that became effective in 2009 are

15  dispositive to this case. They were introduced as Assembly Bill 2484 as a response to

16  SSJID's prior legal challenge. The legislative record shows the amendments were

17  designed to impose both procedural and fiscal discipline on LAFCos' review of proposals

18  such as SSJID's. The procedural discipline is achieved by requiring LAFCo to treat the

19  applications as a request for "change of organization," which requires that specific

20  "determinations" be made by Resolution. The fiscal discipline is manifest by the

21  requirement that LAFCos must reject a proposal unless "sufficient revenues" were either

22  demonstrated by the special district or mandated by LAFCo through a new "sufficient

23  revenue source" approved by LAFCo through specific conditions.

24        35.   First, as to the procedures required. The 2009 amendments added new

25  subdivision (h) to §56021, mandating that proposals by a special district seeking to add

26  new services (i.e., proposals such as SSJID's) constitute a **Change of Organization.**[5]

27

28  [5] In 2011, the subdivision was renumbered, and is now §56021(m).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 20
of 148

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1   This means that SSJID's proposal must be processed by LAFCo in the same manner and

2   under the same procedures as, for example, a city incorporation, consolidation of cities, or

3   formation or dissolution of a special district. (See, LAFCo Act §56021(a), (b), (h) and

4   (i).) All LAFCo determinations concerning a "Change of Organization" must comply

5   with the provisions of Part 3, Ch. 6 of the LAFCo Act (§§56880-56898). The Chapter

6   (labeled "COMMISSION DECISION") requires, for example, that in deciding upon a

7   Change of Organization, LAFCo "shall adopt a resolution making determinations

8   approving or disapproving the proposal" within 35 days after the hearing (§56880) , and

9   shall then mail a copy of the resolution to the affected parties (§56882).

10      36.      Second, as to fiscal review required of SJ LAFCo. The 2009 legislation

11  amended §56824.14(a) to require that when a special district applies to expand its

12  services, LAFCo must determine whether the special district will have "sufficient

13  revenues" to carry out the new service. The statute provides that proposals which fail to

14  prove sufficient revenues "shall not be approved," but also gives LAFCo the ability to

15  issue a "conditional approval" based upon the concurrent approval of other revenue

16  sources. The statute—with the additions made in 2009 in boldface—states in relevant

17  part:

18         (a)      . . . **The commission shall not approve a proposal for the
           establishment of new or different functions or class of services** within
19         the jurisdiction boundaries of a special district **unless the commission
           determines that the special district will have sufficient revenues to
20         carry out the proposed new or different functions or class of services
           except as specified in paragraph (1).**
21
22            (1)      **The commission may approve a proposal for the
              establishment of new or different functions or class of services
23            within the jurisdictional boundaries of a special district where
              the commission has determined that the special district will not
24            have sufficient revenue to provide the proposed new or different
              functions or class of services,** if the commission conditions its
25            approval on the concurrent approval of sufficient revenue
              sources pursuant to Section 56886. **In approving a proposal, the
26            commission shall provide that if the revenue sources pursuant to
              Section 56886 are not approved, the authority of the special
27            district to provide new or different functions or class of services
              shall not be established.** (§56824.14(a)(1); underlined emphasis
28            added.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

37.     The June 4, 2008 report from the Senate Local Government Committee evidencing legislative intent explains the reasoning behind these changes, stating in relevant part:

### SENATE LOCAL GOVERNMENT COMMITTEE

Senator Gloria Negrete McLeod, Chair

| | |
|---|---|
| BILL NO. AB 2484 | HEARING: 6/4/08 |
| AUTHOR: Caballero | FISCAL: No |
| VERSION: 5/21/08 | CONSULTANT: Detwiler |

### SPECIAL DISTRICTS' POWERS

#### Background and Existing Law

Local agency formation commissions (LAFCOs) are the Legislature's watchdogs over cities and special districts' boundary changes which are known as 'changes of organization.'

Most special districts provide fewer services than those authorized by the state laws creating them. In the past, a special district could start delivering one of its so-called latent powers even if another local government already provided the same service in the same area. To avoid duplication, the Legislature allowed LAFCOs to gain control over special districts' latent powers as a condition of adding representatives of independent special districts as LAFCO members.

After receiving a major study of LAFCOs' powers, the Legislature rewrote the procedures for control over special districts' latent powers. A special district that wants to provide a new or different service must hold a noticed public hearing before formally applying to the LAFCO. The district's application must include a five-part plan for services. The LAFCO must hold its own noticed public hearing before acting on the district's application. The LAFCO can approve, approve with conditions, or disapprove the district's latent powers application (AB 948, Kelley, 2001). **When a district challenged the San Joaquin LAFCO's authority to control its latent power to provide retail electric service, the District Court of Appeal upheld the statute in April 2008.** (emphasis added.)

Some LAFCOs and special districts want further statutory changes. They want LAFCOs to treat latent powers applications the same way that they handle boundary changes. They want to make sure that LAFCO doesn't approve a latent powers request if the district can't afford the new service. They want to require LAFCO approval before a district divests itself of a service.

#### Proposed Law

Assembly Bill 2484 prohibits a local agency formation commission (LAFCO) from approving a special district's application to establish new

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

or different functions or classes of services unless LAFCO determines that the district will have sufficient revenues. If the district lacks those revenues, AB 2484 allows LAFCO to approve the district's application if it imposes a condition that requires the approval of sufficient revenue sources. If the revenue sources are not approved, the district cannot provide the new services. (emphasis added.)

The bill expands the definition of a "change of organization" to include a special district's proposal to provide new services or divest itself of existing services. The bill clarifies that only a special district's legislative body can apply to LAFCO to provide a new service or divest itself of a service. The bill expands the required contents of a district's plan for services by requiring officials to explain which services they intend to provide or stop providing. (emphasis added.)

\* \* \*

### Comments

1. No hollow shells. AB 2484 fills the gap between local enthusiasm and fiscal reality. The bill's key reform requires LAFCO to deny a district's request to exercise a latent power if the district can't pay for the new service. **When local boosters want their special district to deliver a popular service, AB 2484 requires LAFCO to ask the tough question: who's going to pay? Unless the district can point to revenues from special taxes, benefit assessments, or fees, the bill requires LAFCO to say "no." By imposing fiscal discipline on LAFCOs and special districts, AB 2484 avoids what some observers call hollow shells; governments with promising surfaces, but empty inside.** (emphasis added.) \* \* \*

38.    Thus, all parties involved in the process in this case knew that it was essential for *SJ LAFCo* to make the determination about whether SSJID could demonstrate that it would have "sufficient revenues" to provide electric service when charging rates that were 15 percent below PG&E's rates. Before the hearing, SSJID suggested if SJ LAFCo could not make the "sufficient revenues" determination because of uncertainties—i.e., the unknowable cost to acquire PG&E facilities, which will be determined through eminent domain litigation, as well as uncertainty about SSJID's financing and construction costs, and the amount of "exit fees" to be charged by the Public Utilities Commission—then SJ LAFCo could conditionally approve the application and let SSJID determine later, after those uncertainties are resolved, whether its 15 percent plan would generate sufficient revenues to support its proposal. SJ LAFCo's Executive Officer realized this approach did not comply with the law, writing in his report: *"While this may provide for some assurance that after the acquisition costs are*

17

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

*determined by the courts the District [SSJID] will provide a reassessment of the economic viability of the project. However, this subsequent step cannot be a substitute for LAFCo's independent evaluation of the financial feasibility of the plan and whether the proposal is in the best interest of the community and SSJID."* (Ex. A, p. 28; emphasis added.)

39. The Executive Officer was right: under the LAFCo Act §56824.14, SJ LAFCo was required to determine whether there would be "sufficient revenues" to carry out the service under SSJID's proposal to reduce rates by 15 percent. Unfortunately, SJ LAFCo failed to follow its Executive Officer's recommendation, and in the process violated both the procedural and the substantive requirements of the LAFCo Act.

## Findings and Conditions Adopted by SJ LAFCo

40. Instead of adopting a Resolution making the required determinations for SSJID's proposed Change of Organization, SJ LAFCo adopted Findings and Conditions that purport to approve SSJID's electric service proposal with conditions of the sort that are nowhere authorized or envisioned by the LAFCo Act. Section 3 of the adopted Findings (Ex. D hereto)—drafted by SSJID and adopted by SJ LAFCo but never shown to PG&E or the public before the last hour of the two-day hearing—disavows SJ LAFCo's need to make the "sufficient revenues" determination for SSJID's 15 percent rate reduction proposal, and arrogates to SSJID the power to make that determination in place of SJ LAFCo. The following statements in the Findings reflect a legal error that permeates Section 3 of the Findings:

- "SSJID does not need to achieve a fifteen percent retail rate reduction in order to demonstrate that it has 'sufficient revenue to carry out the proposed new or different functions.'"

- "After learning whether this is a major or minor change and therefore exit fees are owed, the amount of compensation required to acquire the PG&E asset[s] and understanding the debt structure to fund the acquisition of the PG&E asset[s] SSJID will be a superior position to accurately ascertain

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 24

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

whether a fifteen percent retail energy rate reduction can be achieved."[6] (Ex. D, p. 3.)

41. The Conditions (Ex. F hereto) drafted by SSJID and adopted by SJ LAFCo allow SSJID itself to later make its own "finding," based upon "substantial evidence" as to whether it will have sufficient revenues to provide electric service under with the 15 percent rate discount that is a "primary element" of its proposal. Condition 4, which alternately refers to SSJID as "the District," states:

(a) After acquisition costs and exit fees have been determined and the terms and conditions of financing have been approved SSJID shall prepare a comprehensive economic report analyzing the District's proposed retail rates and the calculation of the percentage rate savings from PG&E's retail rates. It shall make the report available for written public comment for at least 30 days before the hearing and include in the notice of the meeting that the report is available on the District's website.

(b) SSJID shall not take final action to acquire the PG&E system and implement retail electric service until it has held a public meeting advertised in the same newspapers as those utilized by San Joaquin LAFCo in this proceeding. The notice shall state the action to be taken and shall specifically indicate the proposed level of discount for the first 10 and 30 years of operation based upon an updated financial analysis demonstrating and supporting the financial ability of the District to support such a discount. **SSJID shall not commence providing retail electric service unless the District's Board adopts a finding at the hearing based on substantial evidence that it can provide retail electric service at a 15% discount from PG&E's forecasted rates then filed with CEC for the first 10 years.**

(c) In addition, before the District begins providing retail electric service, the District's Board shall adopt a finding based on substantial evidence that the implementation of retail electric service shall not impact the irrigation subsidies or rates." (Ex. F, Condition 4, emphasis added.)

42. There is no authority in the LAFCo Act that would allow for the above condition. The statutory mandate requires LAFCo, not SSJID, to determine whether SSJID "will have sufficient revenues to carry out the proposed new or different functions or class of services. . . ." Govt. Code §56824.14(a). Moreover, SSJID's proposal was, and always has been, to provide retail electric service at rates 15 percent below those

[6] The language of this second bullet point was apparently inserted into the Findings sometime after the LAFCo hearing, as it did not appear in the Findings delivered to PG&E at the conclusion of the hearing. Rather, this paragraph was contained in Findings subsequently emailed by SJ LAFCo counsel on Dec. 19, 2014. The set of Findings circulated at the hearing on December 11, 2014, are attached as Ex. E hereto.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  charged by PG&E—permanently, without qualification. This amounted to a bait-and
2  switch. Never did SSJID say in its proposal, its filings or testimony to SJ LAFCo, or in its
3  public representations that it would provide a rate reduction for only 10 years, as specified
4  in the Condition. Further, by delegating the ultimate decision about the financial viability
5  of the proposal to SSJID, SJ LAFCo's Findings and Conditions approve a "Change of
6  Organization" by SSJID that violates the LAFCo Act. And the violation was made more
7  egregious by SJ LAFCo's last-minute acceptance of the idea that the rate reduction
8  proposal could be limited to a 10 year period.

9       43.    By filing a timely Request for Reconsideration (Ex. G hereto) pursuant to
10  LAFCo Act §56895, PG&E brought the above errors to SJ LAFCo's attention and
11  proposed Findings and Conditions that would remedy the primary legal defect by later
12  requiring SSJID to return to SJ LAFCo for a definitive financial determination. SJ
13  LAFCo rejected PG&E's request on February 12, 2014.[7]

14       44.    In addition, aside from the above defect, the Conditions adopted by SJ
15  LAFCo also violate the law in a separate and distinct respect: they allow, indeed require,
16  SSJID to include within in its electric rates charges (exceeding $1.6 million annually), the
17  proceeds of which are to be paid to numerous local cities and agencies to replace <u>taxes</u>
18  <u>and fees</u> that would otherwise be paid by PG&E. (See Conditions Section 2, **"Payments**
19  **in lieu of taxes and franchise fees,"** Ex. F.) As set forth below, collection and payment
20  of these "in lieu" fees and taxes, to be imposed on electric customers without an election
21  that approves new taxes, violates the California Constitution.

22  **Environmental Review and Project Approval**

23       45.    LAFCo issued a Notice of Preparation of a subsequent Draft EIR ("**NOP**")
24  on March 15, 2010, which it circulated for public review until April 13, 2010. The Draft
25  EIR was prepared to evaluate SSJID's proposal to become an electric service provider by

26
27  [7] Note: on February 19, 2015, SJ LAFCo issued a document entitled "Correction of Clerical
    Errors or Mistakes" (Exhibit H hereto) amending one Finding and one Condition, to correct errors
    brought to its attention by PG&E. The amendments do not, however, address the defects in SJ
28  LAFCo's Findings and Conditions that are the bases for this action.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20
FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 26

1   taking PG&E's system, as well as SSJID's proposed MSR/SOI plan and its annexation

2   request (collectively, the **"Project"**).

3       46.    PG&E submitted two comment letters to LAFCo on the NOP, on March 30,

4   2010 and April 15, 2010, wherein PG&E outlined areas of concern that should be

5   addressed in the EIR for the Project.

6       47.    LAFCo circulated the Draft Subsequent EIR for public review from

7   November 15, 2011 until January 17, 2012.

8       48.    PG&E provided LAFCo with its comments and objections to the EIR's

9   analysis in a letter dated January 17, 2012. Thereafter, LAFCo determined to partially

10  recirculate the Draft EIR for public review from July 5, 2012 through August 20, 2012.

11      49.    LAFCo certified the Final Subsequent EIR and approved the Project at the

12  conclusion of its two-day hearing on the Project on December 11, 2014.

13      50.    PG&E once again submitted comments, in a letter dated December 8, 2014,

14  which detailed major concerns as to the adequacy of the EIR's analysis under CEQA.

15  PG&E also appeared at the December 10 and December 11 hearing dates on the Project

16  where it, once again, raised its concerns and objections to the Project and LAFCo's

17  deficient CEQA analysis.

18      51.    As detailed herein, PG&E has exhausted all administrative remedies prior to

19  bringing this action. PG&E registered its objections to approval of the Project and

20  certification of the FEIR orally or in writing during the administrative proceedings. All

21  alleged grounds for non-compliance with CEQA that are alleged herein were presented to

22  Respondents during the public-comment period for, or prior to the close of the public

23  hearing on, the Project. (Pub. Resources Code, §21177.)

24      52.    Prior to filing this petition, PG&E served Respondents with notice of

25  intention to commence a proceeding against it for violation of CEQA in connection with

26  its approval of the Project. A copy of the notice, together with proof of service, is

27  attached to this petition as Exhibit I and incorporated herein by this reference. By serving

28  the notice, PG&E has complied with Public Resources Code §21167.5.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

21

Case 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 27
of 148

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1    53.    This petition is timely filed in accordance with Public Resources Code

2    §21167 and CEQA Guidelines 15112.[8]

3    54.    PG&E is sending a copy of the Petition to the California Attorney General

4    concurrently with filing, thereby complying with the requirements of Public Resources

5    Code §21167.7. A copy of this written notice is attached to this petition as Exhibit J.

6    55.    PG&E has no administrative remedy and has no plain, speedy, or adequate

7    remedy in the ordinary course of law unless this Court grants this Petition.

8    **Jurisdiction and Venue**

9    56.    SJ LAFCo's December 10-11, 2014 action concerning SSJID's "Change of

10   Organization" proposal to provide retail electric service is subject to this invalidation

11   proceeding pursuant to LAFCo Act §§56021(m) and 56103, and Code Civ. Proc. §860, *et*

12   *seq.* While validation proceedings are typically filed by the governmental entity itself, a

13   "reverse validation" action such as this, filed by a private party, is specifically authorized

14   by Code Civ. Proc. §863.

15   57.    PG&E also brings this action as a Petition for Writ of Mandate for violation

16   of CEQA pursuant to Code of Civil Procedure Sections 1085 and 1094.5, and Public

17   Resources Code §§21167 and 21168.

18   58.    The Court has jurisdiction over the claims and causes of action alleged in

19   this action.

20   59.    Venue is proper in San Joaquin County because SJ LAFCo's principal

21   office is located within San Joaquin County, the Project would be located within San

22   Joaquin County and the Project was approved and the Final EIR certified in San Joaquin

23   County.

24

25

26

27   _____

28   [8] The "CEQA Guidelines" refer to the CEQA Guidelines found at §15000, *et seq.* in Title 14 of
     the California Code of Regulations.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 28
of 148

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

## FIRST CAUSE OF ACTION

### For Invalidity of San Joaquin Local Agency Formation Commission's Action Based Upon Lack of Resolution Making Required Determinations for "Change of Organization"

(Govt. Code §56021, §56880, *et seq.*, §56103; Code Civ. Proc. §860, *et seq.*)

(Against SJ LAFCo and All Persons Interested)

60. PG&E incorporates the allegations set forth in paragraphs 1 through 59 as though set forth fully herein

61. As set forth above, SSJID's proposal to provide retail electric service is deemed a "Change of Organization" pursuant to §56012(m). As such, SSJID's proposal must comply with the provisions of Part 3, Ch. 6 of the LAFCo Act (§56880, *et seq.*).

62. In order to approve SSJID's proposal, SJ LAFCo was required to "adopt a Resolution" reflecting its determination pursuant to §56880. SJ LAFCo was required to mail a copy of the Resolution to affected parties pursuant to §56882.

63. In violation of these express requirements of the LAFCo Act, SJ LAFCo failed to adopt a Resolution approving or disapproving SSJID's proposal and instead merely issued two separate documents of "Findings" and "Conditions" (Exs. D and F), as alleged above.

64. PG&E is an interested party by virtue of its ownership and operation of the electric system that SSJID proposes to acquire, through eminent domain if necessary, in order to carry out its proposal to supplant PG&E as the retail electric service provider within its territory.

65. PG&E seeks a judicial determination that SJ LAFCo's purported conditional approval of SSJID's proposal is legally invalid due to SJ LAFCo's failure to follow the procedures for Change or Organization, including adoption of a Resolution complying with the LAFCo Act, as alleged above. Pursuant to §56103, PG&E's request for such a determination is required to be brought as a "validation proceeding" under Code Civ. Proc. §860, *et seq.*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

## SECOND CAUSE OF ACTION

### For Invalidity of San Joaquin Local Agency Formation Commission's Action Based Upon Failure to Make Required Determination of Existence of "Sufficient Revenues"

(Govt. Code §56824.14, §56103; Code Civ. Proc. §860, *et seq.*)

(Against SJ LAFCo and All Persons Interested)

66.    PG&E incorporates the allegations set forth in paragraphs 1 through 59 as though set forth fully herein.

67.    As set forth above, SJ LAFCo was required to determine whether SSJID "will have sufficient revenues to carry out" its proposal to provide retail electric service at a 15 percent discount pursuant to §56824.14(a).

68.    At the end of the hearing on SSJID's application that took place on December 10-11, 2014, SJ LAFCo voted to adopt Findings and Conditions by which SJ LAFCo would *conditionally approve* SSJID's proposal, but did so expressly *without* making a determination about whether SSJID had "sufficient revenues" to provide 15 percent rate reduction that was a primary element of SSJID's proposal, in violation of §56824.14(a)(1).

69.    Instead, as alleged above, in violation of the express requirements of the LAFCo Act, SJ LAFCo adopted Findings and Conditions (Exs. D and F) which impermissibly arrogated to SSJID itself the power to make the determination at some point in the future of whether it had "sufficient revenues." Moreover, SJ LAFCo impermissibly purported to alter SSJID's proposal such that SSJID would be required to provide the 15 percent rate reduction for only 10 years rather than in perpetuity.

70.    PG&E seeks a judicial determination pursuant to Code Civ. Proc. §860, *et seq.* that SJ LAFCo's purported conditional approval of SSJID's proposal is invalid because of SJ LAFCo's failure to determine itself whether SSJID had sufficient revenue to carry out its proposal to provide retail electric service at a 15 percent discount.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 30

24

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

**For Invalidity of San Joaquin Local Agency Formation Commission's Action Based Upon Unlawful Imposition of Condition Requiring Collection and Payment of Taxes and Fees**

**(Cal. Const., art. XIII C, §1; Govt. Code §56103; Code Civ. Proc. §860, *et seq.*)**

**(Against SJ LAFCo and All Persons Interested)**

71.   PG&E incorporates the allegations set forth in paragraphs 1 through 59 as though set forth fully herein.

72.   As alleged above, PG&E has historically paid property taxes and franchise fees based on the value and placement of its facilities that SSJID proposes to take, the proceeds of which are distributed to local cities, the county, and to various other public agencies. Specifically, PG&E pays <u>property taxes</u> to multiple jurisdictions and entities in the County, including for example the Stockton Unified School District; <u>franchise fees</u> to cities in the affected area and the County; and <u>vehicle license fees</u> shared by cities and the County. In all, over 160 public agencies in San Joaquin County receive some portion of the property tax payments made by PG&E.

73.   SSJID, a governmental entity, is not required to pay property taxes or the fees paid by PG&E. Realizing this impact on local government would make its proposal unpopular, SSJID's proposal included the commitment that its takeover of PG&E would be "revenue neutral" for the local agencies. SSJID proposed to achieve this result by making an annual "payment-in-lieu-of-taxes," commonly referred to by the acronym "PILOT."

74.   SJ LAFCo therefore made the PILOT payments by SSJID a specific condition of approval, requiring that SSJID include a PILOT charge in its electric rates that would be collected from customers and paid over to affected agencies. Condition 2 of SJ LAFCo's approval states as follows:

> SSJID shall allocate two and one-half percent of gross retail revenues to payments in lieu of franchise fees and property taxes as a cost of providing retail electric service, subject to the terms of agreements to be executed with the County of San Joaquin and the cities of Manteca, Escalon and Ripon, to pay franchise fees to the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

25

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

three cities and county and property tax (unitary tax) to the county on behalf of itself and all of the districts in the county. (Ex. F, p. 1.)

75.     As the Court of Appeal recently ruled, PILOTs are taxes under Proposition 26 (Cal. Const., art. XIII C, §1, adopted by voters Gen. Elec., Nov. 2, 2010) for which two-thirds voter approval must be secured unless it is proven that the amount collected "does not exceed the reasonable costs to the local government of providing the service or product," including for such costs as police protection for the property and workers used to provide the services, fire departments to respond to emergencies, and the wear and tear on streets attributable to the operations. (*See, Citizens for Fair REU Rates et al. v. City of Redding et al.* (Jan. 20, 2015, C071906) __ Cal.App.4th __; Cal. Const., art. XIII C, §§1, 2.)

76.     The PILOT payments levied in Condition 2 are not tied to the costs to San Joaquin County or the cities of Manteca, Escalon and Ripon of providing services to SSJID in connection with SSJID's proposed provision of retail electric services.  The Findings and Conditions adopted by SJ LAFCo ignore this requirement.  Indeed, SSJID's PILOT payments could not possibly be tied to the reasonable costs borne by the County or cities because the PILOT will be distributed not just to those entities but to all local government entities in the County that will lose property tax revenues as a result of SSJID's proposal.  Many of these separate government entities do not operate in SSJID's territory, will not obtain electric service from SSJID, and will bear no cost in connection SSJID's electric service (e.g., Stockton Unified School District, City of Lodi, Lockeford Community Services District).   The tax dollars to be received from SSJID by these governmental entities are in no way correlated with the cost of SSJID's electric service.  Notwithstanding this, SJ LAFCo did not require that SSJID obtain voter approval authorizing SSJID to collect the PILOT fees and taxes imposed as a Condition, nor does SSJID plan to hold such an election.

77.     Further, because SSJID, as a governmental entity, is not subject to property taxes, and Condition 2 is expressly intended to impose charges as a substitute for property

taxes lost by PG&E's displacement, Condition 2 is an unconstitutional tax on governmental property that cannot be cured by an election. (See, Cal. Const., art XIII, §(3)(a) & (b); *Cal. State Teachers' Ret. System v. County of Los Angeles*, 216 Cal.App.4th 41 (2013) (state/local government property is tax exempt); *Sacramento Mun. Utility Distr. v. County of Sonoma*, 235 Cal.App.3d 726 (1991) (though tax at issue outwardly appeared to be an "excise" tax on "gross market value of the electricity generated," in actuality its purpose was to substitute for loss of revenues resulting from public property's exemption from taxation, and was therefore unconstitutional.)

78. Finally, SSJID is also not subject to franchise fees. (Water Code §22475, *et seq.*) Accordingly, any charges levied to pay franchise fees or to distribute funds to public entities in lieu of franchise fees would be an unconstitutional tax (Cal. Const., art. XIII C, §§1, 2) unless the franchise fees are either commensurate with the reasonable costs for only the use of the public rights of way, or are approved as a special tax by a 2/3 vote of the electorate. Condition 2 fails to meet either of these requirements for the imposition of franchise fees.

79. PG&E seeks a judicial determination pursuant to Code Civ. Proc. §860, *et seq.* that SJ LAFCo's adoption of Condition 2, which requires SSJID to collect amounts in its electric charges that are a substitute for taxes and fees that would otherwise be paid by PG&E, is a direct violation of Cal. Const., art. XIII C, §§1, 2. The imposition of this unconstitutional Condition renders SJ LAFCo's conditional approval of SSJID's proposal invalid.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

## FOURTH CAUSE OF ACTION

### For Declaratory Relief Re Unenforceability of "PILOT" Condition

### (Code Civ. Proc. §1060)

### (Against SSJID)

80.    PG&E incorporates the allegations set forth in paragraphs 1 through 59 and 71 through 79 as though set forth fully herein.

81.    As alleged above, SSJID has proposed to make its takeover of PG&E "revenue neutral" by allocating a portion of its revenues from electric service to the payment of property taxes and franchise fees that would otherwise have been paid by PG&E—i.e., SSJID proposes to make annual payments-in-lieu-of-taxes ("PILOT") to compensate governmental entities for loss of revenues stemming from the displacement of PG&E. PG&E has advised SSJID, both in writings submitted to SJ LAFCo and in public presentations, that its proposal to include PILOT charges in electric rates is unconstitutional for the reasons set forth above. SSJID has disagreed with PG&E's assertions, and contends that it will be free to collect PILOT charges from electric customers in its territory; PG&E disputes that contention.

82.    The requirement in Condition 2 for SSJID to make the PILOT payments was central to SJ LAFCo's decision to conditionally approve SSJID's proposal to undertake its electric service project.    For example, at the February, 12, 2015 hearing concerning PG&E's request for reconsideration, SJ LAFCo Commissioners stated that the legality of Condition 2 was very important to their decision because they could not endorse a project that would result in loss of revenues to other local governmental entities. When asked by a Commissioner what would happen if PG&E was correct in its assertion that Condition 2 is not enforceable, SJ LAFCo's counsel informed the Commissioners that in such event SSJID could not satisfy Condition 2 and thus "would not have a project."

83.    A judicial declaration resolving the dispute concerning the legality of Condition 2 (the PILOT charges) is necessary because (a) the question of whether SSJID is legally authorized to divert funds to various other public entities such as school districts

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1   is a matter of great public concern, (b) the legality of the proposed PILOT charges needs
2   to be decided before those charges are imposed because SSJID will have by then taken
3   over PG&E's facilities, removing PG&E as a taxpayer, and will have billed its electric
4   customers for in-lieu tax charges, (c) SSJID has announced publicly that it is now fully
5   approved by SJ LAFCo to go forward with its plan to takeover PG&E's system, creating
6   public expectations and potential confusion, and (d) SSJID continues to expend
7   substantial public funds and resources to pursue its takeover plan based on the erroneous
8   assumption that the PILOT charges are legally valid.   SSJID's expenditures include
9   preparations for the filing of an eminent domain lawsuit seeking to condemn PG&E's
10  electric system.  However, a defined, legally authorized public project is a pre-condition
11  to the filing of an eminent domain lawsuit.  (*City of Stockton v. Marina Towers LLC,* 171
12  Cal.App.4th 93, 108-09 (2009)), and the unconstitutionality of Condition 2 means that
13  SSJID "would not have a project" according to SJ LAFCo and thus has no basis for an
14  eminent domain lawsuit.

16                              **FIFTH CAUSE OF ACTION**
17        **For Invalidity of San Joaquin Local Agency Formation Commission's**
          **Resolution Approving of South San Joaquin Irrigation District's**
18                          **Environmental Impact Report**
19               **(Govt. Code §53510, *et seq.*; Code Civ. Proc. §860, *et seq.*;**
                         **Pub. Resources Code §21000, *et seq.*)**
20
                         **(Against SJ LAFCo and All Persons Interested)**
21
22       84.       PG&E incorporates the allegations set forth in paragraphs 1 through 59 as
     though set forth fully herein.
23
24       85.       "An accurate, stable and finite project description is the *sine qua non* of an
25   informative and legally sufficient EIR." (*County of Inyo v. City of Los Angeles* (1977) 71
26   Cal.App.3d 185, 193; CEQA Guidelines §15124.)  The project description in the EIR is
     incomplete and unstable.   This results in the piecemealing of the analysis of the
27

28
                                          29

environmental impacts of the Project and the EIR being inadequate as an informational document.

    a. The EIR improperly minimizes the scope of work involved in severing service from PG&E, thereby failing to disclose all impacts of the Project.

    b. The EIR fails to analyze the impacts of the Border Area Service Plan by including the Plan as mitigation rather than as a component of the Project, thereby minimizing the true impacts of the Project as a whole.

    c. The EIR excludes the future SSJID headquarters from the Project analyzed in the EIR despite acknowledging that construction of the new headquarters is a reasonably foreseeable result of Project approval. In doing so, the EIR avoids analyzing the site-specific impacts resulting from construction of the headquarters.

86. Despite concluding that the construction of a new SSJID headquarters is a reasonably foreseeable result of the Project, the EIR claims that the Project would rely on the rental of facilities to house SSJID's proposed expanded operations and workforce. Yet, despite asserting that new operations at rented facilities are part of the Project, the EIR fails to analyze the environmental impacts resulting from SSJID's expanded operations at such facilities such as traffic or air quality impacts. This violates CEQA's mandate that the reasonably foreseeable impacts of a project be analyzed and disclosed to the public. (Pub. Resources Code §21005.)

87. The EIR is improperly based on documents that are not publicly available. CEQA requires that the data and reports on which an EIR's analysis is based be available to the public. (CEQA Guidelines §§15147, 15148, 15150.) SSJID submitted technical reports to LAFCo related to the physical improvements required for the Project, including improvements required for the Border Area Service Plan, for the first time at the hearing for the Project with no opportunity for the public to review or comment on such reports.

88. An EIR must describe feasible measures that could minimize significant impacts. (CEQA Guidelines §15126.4(a)(1).) If no mitigation measures are feasible, the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1    EIR must say so. (CEQA Guidelines §15091(a)(3).) Any mitigation that will be adopted
2    must be enforceable. (Pub. Resources Code §21081.6(b).) An agency cannot
3    acknowledge a significant impact, fail to attempt to mitigate it, and approve the project
4    anyway. (*Woodward Park Homeowners Assn. v. City of Fresno* (2007) 150 Cal.App.4th
5    683, 724.) The EIR does not propose feasible and enforceable mitigation measures to
6    mitigate the reasonably foreseeable impacts of the Project as required by CEQA. The EIR
7    excludes the future SSJID headquarters from the Project analyzed in the EIR despite
8    acknowledging that construction of the new headquarters is a reasonably foreseeable
9    result of Project approval. In doing so, the EIR avoids mitigating impacts or proposing
10   alternative sites to mitigate impacts.
11        89.    The EIR fails to disclose potential significant environmental impacts related
12   to worker safety or to propose feasible mitigation measures related to worker safety.
13        90.    CEQA and the CEQA Guidelines require that, prior to approving a project,
14   LAFCo make one of several findings for each of the significant impacts of the Project
15   identified in the EIR. (Pub. Resources Code §21081; CEQA Guidelines §15091.)
16   LAFCo's findings are insufficient under CEQA. The findings fail to provide whether the
17   significant impacts of the new headquarters would be reduced through mitigation or
18   whether mitigation is infeasible.
19
20                          **SIXTH CAUSE OF ACTION**
21                             **Violations of CEQA**
22     **(Pub. Resources Code §21000, *et seq.*; Cal. Code Regs., tit. 14, §15000, *et seq.*)**
23             **(Against SJ LAFCo and SSJID as Real Party in Interest)**
24        91.    PG&E incorporates the allegations set forth in paragraphs 1 through 59 as
25   though set forth fully herein.
26        92.    As described above, in approving the Project as described herein, LAFCo
27   prejudicially abused its discretion in violation of CEQA pursuant to Public Resources
28   Code §21168 and Code Civ. Proc. §§1085 or 1094.5, because LAFCo certified an

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

Environmental Impact Report that fails to include information necessary for informed decision making and informed public participation, including information necessary to reach informed conclusions regarding the significance of the Project's environmental impacts, the effectiveness of mitigation measures to reduce the Project's significant environmental impacts, or the feasibility of mitigation measures to reduce the Project's significant environmental impacts.

93.     In approving the Project as described herein, LAFCo prejudicially abused its discretion in violation of CEQA pursuant to Public Resources Code §21168 and Code Civ. Proc. §§1085 or 1094.5, because, with respect to the findings required by CEQA at Public Resource Code §21081, LAFCo failed to make required findings, failed to support the findings made with substantial evidence, and failed to disclose the analytic route showing how the evidence supports said findings.

## **REQUEST FOR RELIEF**

WHEREFORE, PG&E respectfully requests relief as follows:

1.      That this Court issue a peremptory writ of mandate and/or such other judgment or order as necessary to direct that San Joaquin Local Agency Formation Commission vacate and set aside any and all actions (including Findings and Conditions, or purported Resolutions) by which it purported to grant approval of South San Joaquin Irrigation District's September 2009 proposal for a Change of Organization to provide retail electric service within its territory;

2.      That this Court issue a peremptory writ of mandate:

    a.  directing that the determinations, findings, and decisions of San Joaquin Local Agency Formation Commission be vacated and set aside with respect to certification of the EIR;

    b.  directing San Joaquin Local Agency Formation Commission and South San Joaquin Irrigation District to suspend any and all activities pursuant

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1    to the determinations, findings, or decisions that could result in an

2    adverse change or alteration to the physical environment, until any and

3    all actions  necessary to bring the determinations, findings, or decisions

4    into compliance with CEQA have been completed.

5

6    3.    For a judicial declaration concerning the legality and enforceability of

7    Condition 2 (imposition of PILOT fees) of the conditional approval by which San Joaquin

8    Local Agency Formation Commission purported to approve South San Joaquin Irrigation

9    District's September 2009 proposal for a Change of Organization to provide retail electric

10   service within its territory.

11   4.    For recovery of attorneys' fees, costs of this proceeding, and for such other

12   relief as the Court deems just and proper.

13

14   Dated:   February 25, 2015        MANATT, PHELPS & PHILLIPS, LLP

15

16                                     By:

17                                          George M. Soneff
                                          *Attorneys for Plaintiff/Petitioner*
18                                          PACIFIC GAS AND ELECTRIC COMPANY

MANATT, PHELPS &
PHILLIPS,
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

# VERIFICATION

I, David Rubin, am Director of Service Analysis, of Pacific Gas and Electric Company, and am authorized to make this verification on its behalf. I have read the foregoing *First Amended Complaint to Determine Validity and for Declaratory Relief; and Verified Petition for Writ of Mandate* and know its contents. The facts stated therein are true and are within my personal knowledge, except as to these matters which are stated upon my information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 24th day of February, 2015.

_David Rubin_
David Rubin

"e-signature"

314065529.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT 2



Filed
ROSA JUNQUEIRO, CLERK
By
DEPUTY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN**
**STOCKTON DIVISION**

PACIFIC GAS AND ELECTRIC
COMPANY, a California corporation,

       Plaintiff/Petitioner,

vs.

SAN JOAQUIN LOCAL AGENCY
FORMATION COMMISSION, et al.,

       Defendants/Respondents/
       Real Parties in Interest.

Case No. 39-2015-00321743-
CU-JR-STK

**ORDER ON MOTION FOR**
**SUMMARY ADJUDICATION**
**NO. 1**

Plaintiff/Petitioner, PACIFIC GAS AND ELECTRIC COMPANY (PG&E), filed a motion for summary adjudication (Motion for Summary Adjudication No. 1) which seeks invalidation of Defendant/Respondent, SAN JOAQUIN LOCAL AGENCY FORMATION COMMISSION's (SJLAFCo), conditional approval of Real Party in Interest, SOUTH SAN JOAQUIN IRRIGATION DISTRICT's (SSJID), application to provide retail electric service. The motion was initially set for oral argument on November 17, 2015, but continued to December 15, 2015 on the Court's own motion to allow the

1

parties to file a supplemental brief explaining the logistics of Condition No. 4 and how compliance with Condition No. 4 is expected to progress.

Oral arguments were presented to the Court on December 15, 2015 in Department 41 before the Honorable Carter P. Holly. PG&E was represented by its in-house counsel, and the law firms of Manatt, Phelps & Phillips, LLP; and Cox, Castle & Nicholson, LLP. SSJID was represented by the law firms of Remy, Moose, Manley, LLP; Dentons US, LLP; Kroloff, Belcher, Smart, Perry & Christopherson; and Jarvis, Fay, Doporto & Gibson, LLP. SJLAFCo joined SSJID's opposition and response and was represented by the law firm of Neumiller & Beardslee.

**OVERVIEW OF THE CASE AND THE MOTION**

This case has a long history. SSJID has been seeking to expand its services to include the provision of retail electric services within its territorial boundaries since 2009. That field of service is now occupied by PG&E. SSJID's initial application was denied by SJLAFCo in 2009. SSJID re-submitted its application and a hearing on the subsequent application was held in December of 2014. After a 2-day hearing, SJLAFCo conditionally approved SSJID's application. PG&E requested a reconsideration of the approval asserting several grounds, including the grounds which are the subject of this motion. A reconsideration hearing was held and the approval was upheld by SJLAFCo. PG&E filed this lawsuit which is both a complaint and a writ of mandate.

PG&E concurrently filed two separate motions for summary adjudication and each motion is very specific in its scope. As noted above, this Order relates to Motion for Summary Adjudication No. 1 (MSA #1).

MSA #1 seeks summary adjudication of PG&E's 2nd cause of action for invalidation of SJLAFCo's approval on the grounds that SJLAFCo failed to comply with Government Code, §56824.14(a). PG&E argues that in

2

order to give its approval, SJLAFCo was required to determine that SSJID had "sufficient revenues" to provide retail electric services to the customers in its territory *at a 15% discount* from the rates charged by PG&E for thirty (30) years. PG&E states that SJLAFCo did not do so (and could not do so) and so, the approval is invalid.

SSJID maintains that the statute requires a determination by SJLAFCo that SSJID had "sufficient revenues" to provide retail electric service to its customers; it does not require that the provision of services be at a specific discounted rate and/or for a specified time. SSJID submits that SJLAFCo made the decision, as required, and there is substantial evidence in the administrative record to support SJLAFCo's finding that SSJID has sufficient revenues to provide the proposed service.

## EVIDENTIARY RULING

With its Opposition, SSJID submits evidentiary objections. As to Objections Nos. 5 and 6, to the extent the statement includes PG&E's characterization that "the May 2010 report was not good news for SSJID's plan," the objection is sustained. All other objections are overruled.

## THE UNDISPUTED FACTS

The following facts are undisputed and pertinent to MSA #1:

- On or about September 3, 2009, SSJID submitted its formal application, entitled "Justification of Proposal" ("Application"), seeking authorization from SJLAFCo to expand its operations to become a retail electric service provider to over 38,000 homes (about 100,000 persons) within its existing territory by taking over PG&E's electric system. Fact 1, undisputed.

- One of the advertised and repeated benefits of the Application is that SSJID will provide electric service at rates 15% below those charged by PG&E. Fact 3, undisputed to the extent stated.

- The following are excerpts from SSJID's Application:

3

- Page 1-4: "SSJID's economic analysis demonstrates that it will be able to provide retail electrical service at rates 15 percent below PG&E's rates under a wide range of potential conditions."
- Page 1-5: "SSJID's application merits approval for the following reasons: ... SSJID will provide retail electricity at cost of service that will result in 15 percent lower electrical rates; ..."
- Page 1-6: "SSJID's plan to provide retail electric service within its boundaries consists of the following primary elements: ... Reducing retail electric rates by 15 percent."
- Page 1-13: "SSJID will be able to deliver reliable service at a cost savings that would allow it to pass along a 15 percent rate reduction to customers currently receiving service from PG&E."
- Page 1-15: "SSJID's electric retail customers will benefit from a 15 percent drop in electric rates."
- Page 1-16: "SSJID's ability to provide a 15 percent bill reduction to all electric retail customers is due to the following factors:...."
- Page 6-6: "SSJID will provide retail electric service at rates 15 percent lower than PG&E rates."
- Page 6-10: "None of these options is a satisfactory alternative to SSJID's Plan to provide retail electric service since none meets all or even most of the primary objectives of SSJID's Plan. These objectives include: (1) reducing retail electric rates by 15 percent; ...."
- Page 8-4: "SSJID has assumed that PG&E's rates will increase after 2011 at a constant annual average rate over the 30 year study period. SSJID's rates during this period will remain 15 percent below PG&E's rates."
- Page 8-8: "This analysis demonstrates that SSJID will be able to provide retail electric service to its customers at rates 15 percent below the rates that they would otherwise be required to pay to PG&E ...."
- Page 8-9: "Colored chart showing purported dollars per kilowatt hour saved from 15% rate reduction for each class of customer (residential, industrial, agricultural, etc.),

4

followed by the statement: 'Annual savings of this magnitude will result in very significant long-term economic benefits to ratepayers and the local communities SSJID will serve.'"

- Page 8-10: "Savings to the ratepayers and local communities SSJID proposes to serve will continue to accrue so long as SSJID continues to provide retail electric service at rates below PG&E's retail rates which SSJID expects to continue throughout the 30 year study period of its economic analysis."

- Page 8-11: "This flexibility provides SSJID with the ability to meet the objectives of its Plan, including providing a 15 percent reduction in retail electric rates, under a broad range of potential future conditions."

- Page 8-11,12: "If the cost of purchased power were to increase on a long-term basis ... this would increase SSJID's costs and rates, but would not preclude SSJID from meeting its objective of providing retail service at rates 15 percent lower than PG&E ...."

- Page 8-12: "Even under a range of adverse potential conditions, SSJID's Plan will accomplish its objectives of: (1) reducing customers' electric rates by 15 percent; ...."
Fact 4, undisputed.

- On September 3, 2009, the day it filed its Application with SJLAFCo, SSJID issued a press release stating: "The application to LAFCo outlines how SSJID will provide locally-owned and controlled retail electric service to both residents and businesses at a 15% discount from current PG&E rates, which includes agricultural and industrial customers, in the South San Joaquin County communities of Manteca, Escalon, Ripon and surrounding unincorporated areas." Fact 5, undisputed.

- Starting in 2009, SSJID began an advertising/public awareness campaign to promote, educate and inform the public of its Application, advise them of the website where they could get further information and to encourage them to contact SJLAFCo if

5

they wished to show their support of the Application. The advertisements included the following statements:

- "Energy for 15% less: Interested? SaveWithSSJID.com"
- "The South San Joaquin Irrigation District has applied to become the electric utility in Manteca, Escalon and Ripon, replacing PG&E and lowering rates 15%." Fact 6, undisputed to the extent stated.

- After receiving the Application, SJLAFCo retained an independent consulting firm, PA Consulting, to analyze the financial feasibility of SSJID's proposal. PA Consulting's May 2010 report concluded that SSJID's rates would have to be 2.3% higher than PG&E rates. Fact 7, undisputed to the extent stated.

- In response to PA Consulting's May 2010 report, and on September 15, 2010, SSJID submitted a Supplement to its Application. The Executive Summary to SSJID's Supplement reads:

"When SSJID filed its application in September 2009 to provide retail electric service, LAFCo hired an independent consultant, PA Consulting, to examine the District's plan of service. When the report came out in May, it found that SSJID is ready and able to run an electric utility.

The PA Report also said that, based on the consultant's economic model, SSJID's rates would be 2.3% higher than PG&E's. There were, however, important facts not evaluated in the consultant's model. When those are factored in, SSJID can provide retail service at a 15% discount to PG&E's rates.

In review, SSJID is committed to providing retail service at a discounted rate and can do so under the following analysis:

Reinvest Revenue: The consultant's model and the District's model did not reinvest net operating revenue created by the retail electric service into the business plan. Simply by

6

reinvesting the net operating revenue, the District can set rates 4.3% below PG&E's.

Recognize PG&E's Rates Will Rise: The PA report projects power costs will increase higher than the District has anticipated, but only applied the higher costs to SSJID's rates. If those increased costs are applied to PG&E's cost of power and its retail rates are adjusted accordingly, SSJID's rates would be 11% below PG&E's.

Invest Additional Equity: The report projects a higher cost for SSJID to acquire PG&E's system. Even if PA turns out to be right, SSJID can still set rates 15% lower than PG&E's simply by reducing the amount financed by investing an additional $39 million in equity from its substantial cash reserves and an additional $1.6 million annually from its hydroelectric revenue."

Fact 8, undisputed to the extent stated.

- PA Consulting then analyzed SSJID's First Supplement to Application and issued a Supplemental Report in February 2011. PA Consulting's Supplemental Report concluded that to reduce rates by 15% for 30 years, SSJID would have to invest $39 million up front, plus $15 million per year. Fact 9, undisputed to the extent stated.

- SSJID took two actions in response to PA Consulting's supplemental report: (1) SSJID's Board adopted a formal resolution stating that it would provide a 15 percent rate reduction by meeting the PA Consulting investment targets; and (2) in September 2012, SSJID sent SJLAFCo a Second Supplement to its Application reaffirming that it would "… commit the additional equity determined by PA to be necessary to provide retail electric service at a fifteen percent (15%) discount to PG&E's retail rate …." Fact 10, undisputed.

- In 2013 and 2014, financial analysts for SSJID and PG&E continued to analyze the financial feasibility of SSJID's plan and reached conflicting conclusions about SSJID's ability to provide a 15 percent rate reduction. Fact 11, undisputed.

7

- Pursuant to written notice, SJLAFCo conducted a two-day hearing on December 10, 2014 and December 11, 2014 to decide whether to approve SSJID's Application. Fact 12, undisputed.

- On December 10, 2014, SJLAFCo's Executive Officer released his analysis of the financial viability of SSJID's proposal. His report concluded that SSJID would lose $509 million over the 30 year period if SSJID attempted to provide service at rates 15 percent below PG&E rates: "The results of the LAFCo analysis show a negative cash flow for the initial 10 years (negative $94.6 million) and for the overall 30 year planning period (negative $509 million) assuming a 15% discount over PG&E's rates." Fact 15, undisputed.

- The SJLAFCo Executive Officer further reported that under his analysis, SSJID could at best provide a 2.5% rate reduction, and recommended that SJLAFCo reject SSJID's proposal. The Recommendation specifically read:

  > "It is recommended that the Commission find that SSJID has failed to demonstrate its financial capability to feasibly provide retail electrical service at a 15% discount from PG&E rates. It is further recommended that the Commission find that SSJID has the financial capability and can feasibly provide retail electric service at a 2.5% discount from PG&E rates. It is further recommended that the commission deny the proposal to provide a new service or different service to include retail electric service on the basis that the Applicant did not demonstrate its financial capabilities to provide retail electrical service at a 15% discount from PG&E's rates and a 2.5% savings is not sufficient to achieve the stated objectives expressed in the Application and will not be in the best interest of the community and the District." Fact 16, undisputed.

- During the hearing, the SJLAFCo Commissioners questioned the SSJID Board President on several issues:

8

[Commissioner]: "There's been a great deal of emphasis on rate reduction for retail electric customers, and specifically the 15 percent has been emphasized. Do you as the Board consider this to be a promise you have made, a goal, an estimate ... How firmly committed are you as the Board to a 15 percent rate reduction – what does that 15 percent mean to you?"

[Board President]: "If we can't do a 15 percent rate reduction, what are we doing here? We don't need more work. We're not going to run something that is going to work on a 2% margin. If we can't save our people 15%, and we believe we can, that's why we're here."

...

[Commissioner]: "I just wanted to be clear where your red line is. And you indicated to me your red line is at 15 percent?"

[Board President]: "I believe so, yes."

...

[Commissioner]: "What about if it's 10 percent?"

[Board President]: "We're shooting for 15 percent. That's what we think we can do."

Fact 14, undisputed to the extent stated.

- On December 11, 2014, SJLAFCo approved SSJID's Application to provide retail electric service, and in doing so, adopted Findings and Conditions. Fact 18, undisputed.

- SJLAFCo Finding No. 2 reads:

    "2. SSJID has the administrative, technical and financial ability to operate the system.

    The Commission received evidence that SSJID has the administrative, technical and financial ability to operate the system. Most if not all of the reports, including the PA report and the LAFCo staff report, concluded that SSJID has the administrative and technical ability to operate the system. In addition, SSJID presented evidence and opinion about

9

SSJID's administrative and technical ability. Therefore, the Commission considers the uniform conclusion of PA, the LAFCo staff and SSJID to be credible and reliable evidence to support a conclusion that SSJID has the administrative and technical ability to carry out the new or different service.

*PA, the LAFCo staff report and MRW[1] each concluded that SSJID has the financial ability/sufficient revenue to operate the system.* An economic competitor, PG&E, however, reached a different and contradictory conclusion. Also PA and LAFCo staff concluded that SSJID would not reach a fifteen percent reduction in rates without contributing capital. MRW, on the other hand, concluded that a fifteen percent reduction in retail electric rates could be achieved.

*The uniform conclusion of PA, the LAFCo staff and MRW (as thoroughly peer reviewed by other experts) that SSJID has sufficient revenue and the financial capacity and ability to operate the system satisfies the Commission's obligation to determine whether the applicant has sufficient revenue to operate the proposed new or different service.* Government Code, subsection 56824.14(a) states in relevant part:

> 'The commission shall not approve a proposal for new or different functions or class of service ... unless the commission determines that the special district will have sufficient revenue to carry out the proposed new or different function or class of service.'

*The Commission finds the conclusion of PA, the LAFCo staff and SSJID, individually and in combination, to be credible and reliable evidence that the Commission can reasonably rely upon to support a conclusion that SSJID has a sufficient revenue source to carry out the proposed new or different function of service (retail electric).* In reaching this conclusion the Commission took into account that PA and the LAFCo

---

[1] MRW is the firm which conducted an analysis on behalf of SSJID.

10

staff reached a conclusion that SSJID has the financial ability and a sufficient revenue source to carry out the new or different service, took into account that the MRW report was the only analysis subject to independent peer review by other experts in the field, and took into account that PG&E was an economic competitor seeking to protect corporate assets and needing to protect PG&E's legal position in a subsequent eminent domain proceeding."  Fact 23, undisputed (emphasis added).

- SJLAFCo Finding No. 3 reads:

> "3. In order to approve the Application the Commission does not have to find that the proposal will achieve a fifteen percent retail rate reduction; however, the condition proposed by SSJID accomplishes this objective.
>
> The Commission believes that section 56824(a) does not required a special district to have sufficient revenue and a quantifiable surplus of revenue to carry out a proposed new or different service. Instead there must be credible evidence in the record of proceedings that the special district has a sufficient revenue source. The term 'sufficient' is not defined in state law or the local LAFCo Guidelines and therefore it is acceptable to rely on the common definition provided by the dictionary to supply a better understanding of the term. Webster's Collegiate Dictionary defines 'sufficient' as '1 a:  enough to meet the needs of a situation or a proposed end'. Thus in this context the term sufficient means enough financial ability to fund the operation of the system. *PA, the LAFCO staff report and SSJID all conclude that SSJID has sufficient revenue source to fund the system's operation. The legal opinion of LAFCO's attorney and SSJID's attorney fortify this understanding of the statute.*

11

To a certain extent whether SSJID can achieve a fifteen percent reduction in retail rates depends upon events that can only occur after the Commission decision. These future decisions include:  1) a future decision by the CPUC about whether this change in organization represents a major or a minor change and the impact this decision has on whether exit fees are owed; 2) a future decision on the value of PG&E assets purchased by SSJID for purposes of operating the system; and 3) the terms of bonded indebtedness assumed by SSJID to purchase the PG&E assets.  All three of these independent variables can only occur *after* the Commission renders a final decision about this Application and, therefore, at the time of making a decision the Commission faces uncertainty over the actual costs.

However, SSJID does not need to achieve a fifteen percent retail rate reduction in order to demonstrate that it has 'sufficient revenue to carry out the proposed new or different functions.' *The PA report, the LAFCo staff report and MRW report, in combination or individually, provide substantial evidence in the records of proceedings that is credible and reasonable for the Commission to reply upon to conclude that SSJID has sufficient revenue to carry out the proposal.*

The LAFCo executive officer, based upon his report projecting a two and one-half percent retail energy rate reduction, recommended denying the Application.  In the subjective opinion of the Executive Officer, the risks of the proposal outweigh the public benefits.  The Commission reaches a different conclusion, finding that the benefits of the proposal, including lower retail energy rates, substantially increased local control, public benefit programs decided at the local level and creating a more attractive economic situation for new employment

12

generating business, outweigh the risks associated with the proposal.

After learning whether this is a major or minor change and therefore [whether] exit fees are owed, the amount of compensation required to acquire the PG&E asset and understanding the debt structure to fund the acquisition of the PG&E asset, SSJID will be in a superior position to accurately ascertain whether a fifteen percent retail energy rate reduction can be achieved. The Commission regards SSJID's elected officials' statements as a good faith gesture evidencing SSJID's belief that the conclusions and projections found in the MRW report, as verified by two peer reviews, are true and correct." Fact 24 - 25, undisputed (emphasis added).

- Condition #4 reads:

"4. Feasibility/Rate Discount
(a) After acquisition costs and exit fees have been determined and the terms and conditions of financing have been approved, SSJID shall prepare a comprehensive economic report analyzing the District's proposed retail rates and the calculation of the percentage rate savings from PG&E's retail rates. It shall make the report available for written public comment for at least 30 days before the hearing and include in the notice of the meeting that the report is available on the District's website.

(b) SSJID shall not take final action to acquire the PG&E system and implement retail electric service until it has held a public meeting advertised in the same newspapers as those utilized by San Joaquin LAFCo in this proceeding. The notice shall state the action to be taken and shall specifically indicate the proposed level of discount for the first 10 and 30 years of operation

13

based upon an updated financial analysis demonstrating and supporting the financial ability of the District to support such a discount. SSJID shall not commence providing retail electric service unless the District's Board adopts a finding at the hearing based on substantial evidence that it can provide retail electric service at a 15% discount from PG&E's forecasted rates then filed with CEC for the first 10 years.

(c) In addition, before the District begins providing retail electric service, the District's Board shall adopt a finding based on substantial evidence that the implementation of retail electric service shall not impact the irrigation subsidies or rates." Facts 19-22, undisputed.

- On January 9, 2015, PG&E filed a Request for Reconsideration arguing, among other things, that SJLAFCo had wrongly delegated the necessary financial determination to SSJID. Fact 27, undisputed.

- The reconsideration was heard by SJLAFCo on February 12, 2015. Fact 28, undisputed.

- At the hearing, the following dialogue took place:

"[COMMISSIONER NILSSEN]: ... [I]n the findings, it says, 'However, SSJID does not need to achieve a 15 percent retail rate reduction in order to demonstrate that it has sufficient revenue to carry out the proposed new or different functions. The PA report, the LAFCo staff report, the MRW report, in combination or individually, provides substantial evidence in the record proceedings that's credible and reasonable for the Commission to reach a conclusion that SSJID has sufficient revenue to carry out the proposal.'

And that seems to be the crux of what this request is ..., 'Who is going to make ... that determination and is there any

14

validity on that part of the proposal that we erred on who was going to make that determination once all the components were compiled?' which, as Commissioner Bestolarides has stated, won't be known until some kind of acquisition cost is derived.

...

[LEGAL COUNSEL ATTEBERY]: ... I don't think an error was made. ... [T]he Commission took all of the evidence before them, and there was a multitude of different reports and economic analysis, and even the addendum prepared by [LAFCo] staff recognized that there were sufficient revenues to accomplish the - or provide the service.

Where the ... problem came in is, whether or not you could provide sufficient revenues if you test the benefit hypothesis of 15 percent.

This Commission made – in my opinion made a determination that there was sufficient revenues, but there was still some uncertainty as to the benefits of the project, and delegated that test of the hypothesis to SSJID, after more facts were known, such as the cost of the eminent domain, acquiring the assets, exit fees, and those things. And so this Commission at the time made a determination that there were sufficient revenues, as all of the reports stated, and then kind of scratched their head as to whether or not 15 percent could be achieved, and felt that there was not enough information at this time to make that determination, and so set a process in place with the conditions that tested that hypothesis at some later time.

I don't believe an error was made.

COMMISSIONER NILSSEN: And from your position, would it have been preferable for the verbiage in the condition to

state that it come back to this Commission for that determination or –

LEGAL COUNSEL ATTEBERY: I believe that that was an option that was available to this body. It wasn't the decision of the Commission at the time to do so, and ... I don't think a court would have the basis for overturning that decision because what is -- the standard of review is whether or not there's evidence to support the decision that was made, and in my opinion there's ... more than enough information to support the decision that was made." Fact 29, undisputed.

- Later in the hearing, the following dialogue occurred:

"CHAIRMAN MACIEL: ... I'm going to ask you directly again – in regards to LAFCo's responsibility to make the final determination, if the 15 percent reduction is being met, does that have to come back to this Commission ... Technically, legally should that come back to the Commission for a final review?

LEGAL COUNSEL ATTEBERY: No. There is no legal obligation in my opinion or technical obligation for that item to come back. You made the determinations that you needed to make with respect to sufficient revenues, testing the benefit of the 15 percent. ... [T]his Commission at that time delegated that authority to SSJID and drafted a condition, as you're obligated to do, conditionally approved an item, a condition to make sure that that happens.

And as to -- you know, I'm still struggling with – I mean, these were all issues that were vetted and discussed over a 16-hour hearing process, and I still haven't heard a basis as to where the justification is for you to rethink that. There's no legal obligation for this to come back in my opinion.

16

CHAIRMAN MACIEL: When and if the SSJID Board reviews this and says, 'We can do this,' is there any further review? Is there any confirmation of that or it's just a done deal?

LEGAL COUNSEL ATTEBERY: Well, there is no confirmation of it obviously. I anticipate that PG&E will be heavily involved in that process. Should something go wrong at their hearing and they have come up with a position that says they can't satisfy their condition, my guess is that PG&E will be back before you or in front of a court saying they failed to satisfy Condition 4(a), (b), and (c)." Fact 30, undisputed.

- Analyzing Government Code, §56824.14 (LAFCo Act), SJLAFCo's counsel, Neumiller & Beardslee, summarized SJLAFCo's statutory responsibility in a November 21, 2011 letter:

"... [T]he commission has the responsibility of determining whether the special district will have sufficient revenue to carry out the proposed new or different function or class of services. If the commission determines that it does not, then the commission cannot approve the proposal. However, Section 56824.14(a)(1) provides an exception[2], ...." Fact 31, undisputed.

## STANDARD OF REVIEW

As the Undisputed Facts establish, SJLAFCo approved SSJID's Application, with conditions.

The standard for judicial review of a Local Agency Formation Commission decision is set forth in Government Code, § 56107 which reads, in pertinent part:

" ...
(b) All determinations made by a commission under, and pursuant to, this division shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion.

---

[2] The exception is not relevant to this case or motion.

17

(c) In any action or proceeding to attack, review, set aside, void, or annul a determination by a commission on grounds of noncompliance with this division, any inquiry shall extend only to whether there was fraud or a prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the court finds that the determination or decision is not supported by substantial evidence in light of the whole record."

## THE MOTION

In order to make its challenge (and prevail in this motion), PG&E submits two related arguments. Both arguments rely upon the premise that the 15% reduction is part and parcel of the proposal and so, the proper interpretation of Government Code, §56824.14(a) requires that *SJLAFCo* specifically find that SSJID has sufficient revenues to provide retail electric service *at the 15% discounted rate*.

With that premise, PG&E argues that SJLAFCo improperly delegated to SSJID its responsibility to make the findings required for approval. More specifically, PG&E points to Condition 4 of the Approval whereby SJLAFCo requires SSJID to prepare a report, conduct a hearing, and *decide* whether it will have the financial capability to provide retail electric service at a 15% discount.

Next, and with the same premise, PG&E submits that a "prejudicial abuse of discretion" has occurred. More specifically, PG&E maintains that the record does not support SJLAFCo's determination that SSJID has "sufficient revenues" to provide retail electric service at the 15% discounted rate.

### A. The Interpretation of Government Code, section 56824.14(a)

Government Code, section 56824.14(a) reads, in pertinent part:

"(a) The commission shall review and approve with or without amendments, wholly, partially, or conditionally, or disapprove

18

proposals for the establishment of new or different functions or class of services, or the divestiture of the power to provide particular functions or class of services, within all or part of the jurisdictional boundaries of a special district, after a public hearing called and held for that purpose. ***The commission shall not approve a proposal for the establishment of new or different functions or class of services within the jurisdictional boundaries of a special district unless the commission determines that the special district will have sufficient revenues to carry out the proposed new or different functions or class of services*** except as specified in paragraph (1)[not relevant for this discussion]."

To re-iterate, PG&E maintains that SSJID's proposal is to "provide retail electric service at a 15% discounted rate for 30 years." P's & A's, pages 12, 16.

SSJID argues that its Application "sought authorization to add retail electric service – not authorization to provide that service at a discounted rate." The proposed new "function" or "service" is the provision of retail electric service. SSJID stresses that the discount is one of many anticipated benefits of the application. See, Opposition, page 1, 10-11.

<u>1. Construction of Statutes</u>

The California Supreme Court explained:

> "When construing a statute, a court's goal is 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' (Citations omitted.) Generally, the court first examines the statute's words, giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent. (Citations omitted.)
>
> When the statutory language is ambiguous, a court may consider the consequences of each possible construction and will reasonably infer that the enacting legislative body

19

intended an interpretation producing practical and workable results rather than one producing mischief or absurdity. 'Our decisions have long recognized that a court's "overriding purpose" in construing a statute is "to give the statute a *reasonable* construction conforming to [the Legislature's] intent (citation)...." ' (Citations omitted.) 'The court will apply common sense to the language at hand and interpret the statute to make it workable and reasonable.' (Citation omitted.) 'When a statute is capable of more than one construction, "[w]e must ... give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' (Citations omitted.)" *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal. 4th 554, 567 (emphasis in original text).

Elsewhere, the California Supreme Court wrote:

"Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. (Citation omitted.) Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission in a recent report, 'The standard for judicial review of agency interpretation of law is the independent judgment of the court, giving deference to the determination of the agency appropriate to the circumstances of the agency action.' (Citation omitted.)" *Yamaha Corp. of Am. v. State Bd. of Equalization* (1998) 19 Cal. 4th 1, 6-8.

20

In a specific discussion of Government Code, § 56824.14 and the required findings to approve an application, counsel for SJLAFCo advised, in pertinent part:

> "The review and approval of new services that the Commission should follow is set forth under Government Code, section 56824.14. ...
>
> As such, within LAFCo's power, as stated ... in Section 56824.14(a), is the ability to determine whether SSJID has sufficient revenue sources to provide retail electric services without financing. ...
>
> ...
>
> Thus, the Commission's [sic] in evaluating the Project is making a determination of SSJID's financial ability to provide retail electric services. SSJID's financial ability to provide electric services does not include SSJID's financial ability to provide retail electric services at a 15% rate reduction. As such, the 15% rate reduction should be considered as a potential benefit that the rate payers may obtain if the Project is approved, but the 15% rate reduction is not a component relied upon to determine financial feasibility of the Project." Exhibit F of SSJID's Appendix of Evidence; see also, Declaration of Thomas J. Shepard, Sr.

2. Analysis

The statute's language is not ambiguous; it is straightforward and clear: "The commission shall not approve a proposal for the establishment of new or different functions or class of services within the jurisdictional boundaries of a special district unless the commission determines that the special district will have sufficient revenues to carry out the proposed new or different functions or class of services." Government Code, § 56824.14(a).

Significantly, the Application is filed "for authority to expand the scope of services it provides to include retail electric service within its

21

existing service territory." See, Exhibit 1 to PG&E's Appendix of Evidence Application, Attachment 1, page 1-1; see also, page 1-5 ["SSJID seeks authorization from LAFCo to provide retail electric service within SSJID's existing service territory."]; page 1-5 ["SSJID is uniquely capable of providing reliable retail electric service response to the needs of the local communities it intends to serve at lower rates."]; page 1-6 ["SSJID's plan to provide retail electric service within its boundaries ...."]; page 1-10 ["SSJID is seeking LAFCo authorization to provide retail electric service, which is a new or different function or class of service."]; page 1-11 ["SSJID proposes to provide retail electric service to end users within SSJID's existing service territory."]; page 1-14 ["SSJID recommends that LAFCo retain[] an independent expert to confirm that SSJID has sufficient revenues to provide retail electric service, ...."].

It is also true that the Application states that "SSJID ... plans to expand the scope of the services it provides within its existing service territory to include retail electric distribution service, ..., as a means of providing a number of significant additional benefits to the ratepayers and communities it serves. These benefits include the following ... '[r]educing customers' electric rates by 15 percent; ....'" See, Exhibit 1 to PG&E's Appendix of Evidence, Application, Attachment, page 1-1; see also, page 1-4 ["SSJID's economic analysis demonstrates that it will be able to provide retail electric service at rates 15 percent below PG&E's rates .... ... SSJID forecasts that its Plan will result in aggregate economic benefits through savings on electric service .... The savings on electric service costs provided by SSJID's Plan are very significant, but do not capture the full extent of the economic benefits of its Plan."]; page 1-5 ["SSJID's application merits approval for the following reasons: ... SSJID will provide retail electricity at cost of service that will result in 15 percent lower electrical rates; ...."]; page 1-6 ["SSJID's plan to provide retail

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 63 of 148

electric service ... consists of the following primary elements: ... [r]educing retail electric rates by 15 percent ...; ...."]; page 1-13 ["SSJID will be able to deliver reliable service at a cost savings that would allow it to pass along a 15 percent rate reduction to customers currently receiving service from PG&E."]; page 1-15 ["SSJID's electric retail customers will benefit from a 15 percent drop in electric rates."].

As the Court reads the Application, the 15% reduction is an objective and benefit of the proposal. Granted, it is an important factor in consideration of the proposal because SJLAFCo will not allow the proposal to proceed until the capability of a 15% reduction is shown (see, Condition No. 4). Still, the Court does not read the Application to be a proposal to provide retail electric service to the customers in its territory at a 15% discount from the rates charged by PG&E for 30 years – as PG&E urges. The 15% percent discount is an anticipated benefit, among other benefits, of the proposal.

SJLAFCo's interpretation of Government Code, section 56824.14(a) is consistent with the Court's interpretation.

In support of its argument that the 15% discount is an integral element of the project, PG&E asks the Court to consider, "What is the popular service that local boosters want SSJID to provide?" PG&E's Supplemental Brief, page 3:1-2. PG&E posits that the answer is *not* to provide electric service "because PG&E already provides electric service." PG&E's Supplemental Brief, page 3:3-4. And, it is *not* to provide "qualitatively different electric service that what PG&E provides" because "SSJID's proposal is to take and use PG&E's equipment to provide electric service in the same manner it is currently used by PG&E." PG&E's Supplemental Brief, page 3:6-7. Thus, PG&E concludes that what the local boosters want SSJID to provide is "a 15% rate reduction, while maintaining PG&E's current electric system" and so, SSJID applied to provide *better*

23

electric service by doing so "at 15% less than PG&E's rates." PG&E's Supplemental Brief, page 3:12-17.

The relevant question, however, is not what the local boosters want SSJID to provide to them. The relevant question is what is SSJID requesting from SJLAFCo. Simply stated, SSJID is requesting to expand its services to include retail electric service. SSJID has the latent power to sell retail electricity. See, Water Code, § 22115 ["Any district heretofore or hereafter formed may purchase or lease electric power from any agency or entity, public or private, and may provide for the acquisition, operation, leasing, and control of plants for the generation, transmission, distribution, sale, and lease of electric power, including sale to municipalities, public utility districts, or persons."]; see also, *South San Joaquin Irrigation District v. Superior Court* (2008) 162 C.A.4th 146, 155-156. And, importantly, nothing in the LAFCo statutes or its legislative history requires a Local Agency Formation Commission to *also* find that the proposal/project differs from or *improves* the current function or services.[3]

At oral argument, PG&E stated that it will not sell its assets to SSJID and so, SSJID will only be able to acquire its assets by eminent domain. PG&E urged that SSJID will not be able to take the system by eminent domain because it cannot meet the public necessity requirement. See, Government Code, § 1240.030. In addition, PG&E urged that as a practical matter, SSJID cannot logistically comply with Condition No. 4.

SSJID's ability to prevail in an eminent domain action and/or comply with Condition No. 4, however, is not relevant to the issue before the Court which is whether SJLAFCo failed to comply with Government Code, § 56824.14(a) when it approved SSJID's Application.

---

[3]    And if the statutes or legislative history did, it is undisputed that, at a minimum, SSJID could provide the service at a 2.5% discount from PG&E's rates. Fact 16, undisputed.

24

Thus, for the reasons stated above, the Court confirms that Government Code, § 56824.14(a) requires that SJLAFCo determine whether SSJID has sufficient revenue to expand its services to include the provision of retail electric services to customers within its territory as authorized by Water Code, § 22115. After the December 2014 hearings, SJLAFCo issued its Findings which specifically stated that SSJID has the financial ability/sufficient revenue "to carry out the proposed new or different function or service (retail electric)." Fact 23-25, undisputed.

**B. There is No Unauthorized Delegation**

Having made the required finding to permit approval of SSJID's Application, SJLAFCo was authorized to conditionally approve SSJID's Application as it did. Thus, there is no showing of an unauthorized delegation of the required findings to SSJID, as PG&E claims.

**C. The Record Supports SJLAFCo's Finding that SSJID has Sufficient Revenue**

The record includes substantial evidence that SSJID has the financial capability to feasibly provide retail electrical service. See, Fact 23, undisputed, reflecting that "PA [Consulting], the LAFCo Staff report, and MRW [Consulting] each concluded that SSJID has the financial ability/sufficient revenue to operate the system." In fact, substantial evidence presented to the commission indicates that at a minimum, SSJID can provide retail electrical service at a 2.5% discount from PG&E's rates. Fact 16, undisputed.

**CONCLUSION**

**IT IS HEREBY ORDERED** that PG&E's motion for summary adjudication of its 2nd cause of action for invalidation of SJLAFCo's approval of SSJID's Application is denied. To comply with Government Code, § 56824.14(a), SJLAFCo was required to determine whether SSJID has sufficient revenues to provide retail electric services to customers in its territory. Substantial

25

evidence was submitted to support SJLAFCo's determination that SSJID has the financial capability to provide retail electrical service. Thus, PG&E made no showing of a prejudicial abuse of discretion.

Date: _March 7, 2016_

_____
CARTER P. HOLLY
Superior Court Judge

26

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN**
STREET ADDRESS: 222 E. Weber Avenue
MAILING ADDRESS: PO Box 201022
CITY AND ZIP CODE: Stockton, CA 95201
BRANCH NAME: Superior Court San Joaquin

FOR COURT USE ONLY

Filed
MAR 08 2016
ROSA JUNQUEIRO, CLERK

By _____
DEPUTY

PG and E vs S J Local Agency Formation Commission

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

CASE NUMBER:
STK-CV-UJR-2015-0001266

I certify that I am not a party to this cause. I certify that a true copy of Order on Motion for Summary Adjudication No. 1 was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Stockton, California, on 03/08/2016.

By: <u>Grant Preeo</u>, Deputy Clerk

Dinesh R Badkar
11355 West Olympic Boulevard
Los Angeles CA 90064

Daniel S Truax
P.O. Box 20
Stockton CA 95201

Ivor E Samson
525 Market Street 26th Floor
San Francisco CA 94105

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

# EXHIBIT 3



Filed
MAR 07 2016
ROSA JUNQUEIRO, CLERK

By _____
DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN
## STOCKTON DIVISION

PACIFIC GAS AND ELECTRIC          )
COMPANY, a California corporation, )
                                  )     Case No. 39-2015-00321743-
                                  )     CU-JR-STK
        Plaintiff/Petitioner,     )
                                  )     **ORDER ON MOTION FOR**
    vs.                           )     **SUMMARY ADJUDICATION**
                                  )     **NO. 2**
SAN JOAQUIN LOCAL AGENCY          )
FORMATION COMMISSION, et al.,     )
                                  )
        Defendants/Respondents/   )
        Real Parties in Interest. )
_____ )

Plaintiff/Petitioner, PACIFIC GAS AND ELECTRIC COMPANY (PG&E),

filed a motion for summary adjudication (Motion for Summary

Adjudication No. 2) which seeks invalidation of Condition No. 2 of

Defendant/Respondent, SAN JOAQUIN LOCAL AGENCY FORMATION

COMMISSION's (SJLAFCo), conditional approval of Real Party in Interest,

SOUTH SAN JOAQUIN IRRIGATION DISTRICT's (SSJID), application to provide

retail electric service. The challenge is that the Condition No. 2 payments

required to be made by SSJID in lieu of taxes (PILOT payments) are

unconstitutional. The motion was initially set for oral argument on

1

November 17, 2015, but continued to December 15, 2015 on the Court's own motion because PG&E raised new arguments in its Reply.

After supplemental briefing was submitted on the new issues raised, oral arguments were presented to the Court on December 15, 2015 in Department 41 before the Honorable Carter P. Holly. PG&E was represented by its in-house counsel, and the law firms of Manatt, Phelps & Phillips, LLP; and Cox, Castle & Nicholson, LLP. SSJID was represented by the law firms of Remy, Moose, Manley, LLP; Dentons US, LLP; Kroloff, Belcher, Smart, Perry & Christopherson; and Jarvis, Fay, Doporto & Gibson, LLP. SJLAFCo joined SSJID's response and was represented by the law firm of Neumiller & Beardslee.

## OVERVIEW OF THE CASE AND THE MOTION

This case has a long history. SSJID has been seeking to expand its services to include the provision of retail electric services within its territorial boundaries since 2009. That field of service is now occupied by PG&E. SSJID's initial application was denied by SJLAFCo in 2009. SSJID re-submitted its application and a hearing on the subsequent application was held in December of 2014. After a 2-day hearing, SJLAFCo conditionally approved SSJID's application. PG&E requested a reconsideration of the approval asserting several grounds, including the grounds which are the subject of this motion. A reconsideration hearing was held and the approval was upheld by SJLAFCo. PG&E filed this lawsuit which is both a complaint and a writ of mandate.

PG&E concurrently filed two separate motions for summary adjudication and each motion is very specific in its scope. As noted above, this Order relates to Motion for Summary Adjudication No. 2 (MSA #2).

MSA #2 requests summary adjudication of PG&E's 3rd cause of action which seeks invalidation of Condition No. 2 of SJLAFCo's approval.

2

MSA #2 also challenges PG&E's 4th cause of action for declaratory relief on the same basis. Condition No. 2 addresses the fact that PG&E now pays franchise fees and property taxes and that revenue will be lost if SSJID (a tax-exempt public district) acquires PG&E's properties and enters the retail electric service business. Condition No. 2 requires SSJID to make payments to the affected public entities to make up for their lost revenue. PG&E calls such a condition an unconstitutional property tax, an unconstitutional public gift, and/or an unconstitutional tax because it was not approved by a vote as required by Article XIIIC of the California Constitution.

## EVIDENTIARY RULING

SSJID submitted thirty-four (34) evidentiary objections. As to Objections Nos. 5 and 6, to the extent the statement includes PG&E's characterization that "the May 2010 report was not good news for SSJID's plan," the objection is sustained. All other objections are overruled.

## UNDISPUTED FACTS

The following facts are undisputed and relevant to MSA #2:

- On or about September 3, 2009, SSJID submitted its formal application, entitled "Justification of Proposal" (Application), seeking authorization from SJLAFCo to expand its operations to become a retail electric service provider to over 38,000 homes (about 100,000 persons) within its existing territory by taking over PG&E's electric system. Fact 38, undisputed.

- In its Application, SSJID described its history and statutory purposes as follows:

    "For over a century, SSJID has reliably provided irrigation water service within its service territory of approximately 72,000 acres. During this time, SSJID has expanded the scope of the services it provides to include other services …. SSJID currently provides irrigation, treated water, raw water,

3

wholesale electricity, demand response and electric system consulting services. Under Water Code, section 22115, SSJID also has specific statutory authority to acquire, operate, lease and control facilities for the distribution and sale of electric power. SSJID now plans to expand the scope of services it provides within its existing service territory to include retail electric distribution service, consistent with its existing statutory authority ...." Fact, 39, undisputed.

- SSJID proposes to become the electric service provider in its territory by ousting the current owner and operator of the electric system, PG&E. Fact 40, undisputed to the extent stated.

- On December 10-11, 2014, SJLAFCo conducted a two-day hearing to decide whether to approve SSJID's Application. At the conclusion of the hearing, SJLAFCo voted to conditionally approve the Application and adopted written Findings and Conclusions. Fact 41, undisputed.

- SJLAFCo's Executive Officer prepared a report evaluating SSJID's Application. In it, he explained that a takeover by SSJID of PG&E's electric system would have negative tax implications: "The change from an investor owned utility (PG&E) to a publicly owned utility (SSJID) has tax implications for the State, County, cities, all districts within San Joaquin County, and individual property owners within the various K-14 schools [sic] districts. As a publicly owned utility, SSJID would not be required to pay these taxes. The proposed purchase would result in estimated total loss [sic] revenue for 2012 of $1,683,909. This loss would consist of reductions of $961,276 in property taxes in San Joaquin County, a reduction of $41,500 in Vehicle License Fees (shared by the County and cities), and a reduction of an estimated $681,133 in corporate income taxes paid to the State's General Fund." Fact 43, undisputed.

- The Executive Officer's Report lists the public entities affected and the list includes the Cities of Tracy, Lodi, and Lathrop, as well as the Unified School Districts of Stockton, Lodi and Tracy. Fact 44, undisputed to the extent stated.

4

- SSJID's initial Application sought to address the loss of tax revenue and franchise fees that would result from its takeover by pledging "to provide the cities within its boundaries and the County with the same revenue as they currently receive from PG&E's electric revenues" through the allocation of "2.5 percent of gross revenues to local governments." Fact 48, undisputed.

- The Application further contained the following commitment to making PILOT payments: "Payments in Lieu of Taxes. SSJID has allocated 2.5 percent of its revenues to the payment of franchise fees to the three cities within its boundaries and to payments in lieu of property taxes to the County of San Joaquin. The cities currently receive 2 percent under existing agreements with PG&E." Fact 49, undisputed.

- SSJID amended its Application twice and in its Second Supplement to the Application, SSJID stated:

  "i. Payments in Lieu of Taxes ...

  Independently of its commitment to fund Public Benefit Costs, the District has allocated 2.5% of its gross revenues to make up for revenue losses resulting from decreases in franchise fees and property taxes PG&E now pays to the cities within the District and to the County of San Joaquin, by paying permission fees according to agreements to be entered into with the cities within the District based on Water Code 22476, and making payments in lieu of franchise fees and property taxes to the County, including the portion of property taxes the County now receives and distributes to other public agencies within the County. This change is reflected in Resolution 12-13-E adopted by the District's Board of Directors on September 11, 2012." Fact 50, undisputed to the extent stated.

5

- SSJID's Resolution 12-13-E, referenced in the Second Supplement to Application, was subsequently amended and restated in Resolution 14-12-E. Fact 51, undisputed.

- SSJID's Resolution 14-12-E reads, in pertinent part: "WHEREAS, the District's purpose in providing retail electric service include[s] investing its capital, and a portion of future Tri-Dam revenues if necessary, to acquire, own and operate the electric distribution system in the area in order to lower the costs of providing electric service and lower retail electric rates, which will provide long-term stimulus to and economic growth in the local community; transferring responsibility and accountability for local electric resource policies and practices within SSJID's existing territory from PG&E to locally elected public officials accountable to voters in the communities SSJID serves; and increasing local influence over and accessibility to retail electric customer service, and increasing local influence over energy resource policies, while at the same time not causing the cities within the District or the County of San Joaquin to experience reduced revenue from loss of franchise fees or property taxes (which term is used herein to include taxes charged to unitary and nonunitary property by the State Board of Equalization) that may currently be paid by Pacific Gas & Electric Company on account of its ownership and operation of electric distribution facilities, ..." Fact 52, undisputed to the extent stated.

- SSJID resolved that if it acquires PG&E's electric system, it would provide:

    -" ... the same amount of revenue to the cities of Manteca, Escalon and Ripon ... as they currently receive through franchise fees on account of Pacific Gas & Electric Company's ownership and operation of such facilities."

    -"...the same amount of revenue to San Joaquin County ... as the County currently receives through franchise fees and property taxes on account of Pacific Gas & Electric Company's ownership and operation of such facilities, plus an annual inflation adjustment. The District's commitment

6

includes the portion of property taxes the County now receives and distributes to other public agencies within the County." Fact 53-54, undisputed to the extent stated.

- SSJID made assurances to SJLAFCo that they intend to make all public entities affected by the loss of PG&E tax revenue "whole" with payments in lieu of taxes. SJLAFCo adopted Condition No. 2 which obligates SSJID to make payments in lieu of taxes and franchise fees calculated at 2.5 % of the gross retail revenues. Fact 55-56, undisputed to the extent stated.

- SJLAFCo's Condition No. 2 reads:

  "2. Payments in lieu of taxes and franchise fees

  SSJID shall allocate two and one-half percent of gross retail revenues to payments in lieu of franchise fees and property taxes as a cost of providing retail electric service, subject to the terms of agreements to be executed with the County of San Joaquin and the cities of Manteca, Escalon and Ripon, to pay franchise fees to the three cities and county and property tax (unitary tax) to the county on behalf of itself and all of the districts in the county." Fact 42, undisputed to the extent stated.

- SJLAFCo's Conditions do not require an election for voter approval of the payments in lieu of taxes (PILOT). Fact 57, undisputed.

- SSJID does not believe an election for the PILOT payments is necessary. SSJID further represented that if it is later determined that an election is necessary for the PILOT payments, SSJID will conduct the election. Facts 58-63, undisputed to the extent stated.

## DISPUTED FACT

The parties disagree on the issue of whether 160 cities and districts in San Joaquin County would lose tax revenues if SSJID takes over PG&E's electric system. See, Stated Facts 45, 46, and 47.

7

PG&E submits that the districts and cities will lose tax revenue if SSJID takes over PG&E's electric system. PG&E argues that SSJID's plan to compensate for the loss is unconstitutional and so, the PILOT payments cannot be made, creating a loss.

SSJID says that its proposal and Condition No. 2 provide for any lost revenue and so, there is no "loss" to the 160 cities and districts. SSJID further submits that the manner of payment of 2.5% of the gross retail revenues is yet to be decided and so, it is speculative as to whether the payments will be unconstitutional and whether there will be lost revenue.

This is not a disputed fact. Instead, PG&E posits as a fact something that, in reality, is unknown. As discussed more fully below, whether the 160 cities and districts in San Joaquin County will lose tax revenues if SSJID takes over PG&E's electric system is dependent upon future decisions and events.

## STANDARD OF REVIEW

As the Undisputed Facts establish, SJLAFCo approved SSJID's Application, with conditions.

The standard for judicial review of a Local Agency Formation Commission decision is set forth in Government Code § 56107 which reads, in pertinent part:

" ...
(b) All determinations made by a commission under, and pursuant to, this division shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion.

(c) In any action or proceeding to attack, review, set aside, void, or annul a determination by a commission on grounds of noncompliance with this division, any inquiry shall extend only to whether there was fraud or a prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the court finds that

8

the determination or decision is not supported by substantial evidence in light of the whole record."

## THE MOTION

As stated above, Condition No. 2 requires SSJID to make "payments in lieu of taxes" (PILOT payments). The purpose behind these payments is to make SSJID's project "revenue neutral."

PG&E asserts that the PILOT payments required by Condition No. 2 are unconstitutional for three different reasons: 1) the payments are an unconstitutional property tax; 2) the payments are an unconstitutional public gift; and 3) the payments are unconstitutional because it is a tax which can only be imposed by a vote – which has not occurred. PG&E's arguments are premised on its position that "Condition No. 2 requires that SSJID *include a 2.5% charge to its electric customers* in order to replace this lost tax revenue." See PG&E's stated Fact No. 42 (emphasis added).

SSJID maintains that PG&E's challenges are not ripe; they are premature.

### A. Requirement that Controversy be Ripe

The California Supreme Court explained:

"The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. (Citation omitted.) It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. It is in part designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes. However, the ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. On the other hand, the requirement should not prevent courts from resolving

9

concrete disputes if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question. (Citations omitted.)

A logical starting point for a discussion of the concept of ripeness is the following general statement from _Aetna Life Ins. Co. v. Haworth_ (1937) 300 U.S. 227, 240-241: 'The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citation.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' A similar statement is found in _Selby Realty Co. v. City of San Buenaventura_ (1973) 10 Cal.3d 110, 117, in which we discussed the availability of declaratory relief under Code of Civil Procedure section 1060: 'The "actual controversy" referred to in this statute is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do.' (Citation omitted.) In the same vein, the Court of Appeal has observed: 'The principle that courts will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence, the precise content of which is difficult to define and hard to apply. ... A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' (Citation omitted.)" _Pac. Legal Found. v. California Coastal Com._ (1982) 33 Cal. 3d 158, 170-74.

## 1. __Characterization of the PILOT Payments__

In making its argument that PG&E's challenge is not ripe, SSJID reminds the Court that it has not yet acquired any of PG&E's property, entered the retail electric business, or begun providing electric service to its customers.  Opposition, page 1:19-20; 2:15-19.  Because of the many

10

contingencies associated with the project and its approval, SSJID submits that it does not yet know the actual cost of providing retail electric service and has not yet even begun to set any rates to be charged to its customers.

SSJID also suggests that the PILOT payments might not be passed through and paid by SSJID's electric customers as PG&E presumes; the payments could be made from other revenues. For example, Condition No. 2 "could be satisfied by measuring the amount of SSJID's payments by gross revenues, even if the actual payments are made from other revenue sources." Opposition, page 6:19-22. Or, SSJID could "subsidiz[e] ratepayers using other revenue sources, so that the cost of the payments are, as a practical matter, not passed through to SSJID's customers." Opposition, page 6:23-26.

To those arguments regarding the source of the Condition No. 2 payments, PG&E points out that the use of the term "allocate" in Condition No. 2 implies that part of the gross retail revenues (i.e., rate charges paid to them from their customers) will be the source of the payments. See, Reply, page 6:16-23. The Court agrees that is a reasonable interpretation and distinction. The distinction, however, minimally affects the analysis.

### 2. Are the PILOT Payments Necessarily a Tax or Gift

Two of PG&E's three challenges require that the charges/payments be "taxes;" that is, "a charge ... imposed by [SSJID], ... which ... exceed[s] the reasonable costs to [SSJID] of providing the service, or [a rate] charged to a particular payor [which does] not 'bear a fair or reasonable relationship' to his or her 'burdens on, or benefits from' the service." California Constitution, Article XIIIC, §1(e).

If the PILOT payments are not paid by SSJID ratepayers but, instead, from other revenues, then there is no "tax" to the ratepayers.

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 80 of 148

But, even if paid by a charge to SSJID ratepayers, the payments will not necessarily be "taxes" because charges which do not exceed the reasonable cost of providing the service are not "taxes." See California Constitution, Article XIIIC, § 1(e). And, costs incurred to comply with non-discretionary legal mandates are considered reasonable costs of providing utility service that may be properly charged to customers and will not necessarily be considered a "tax." *Howard Jarvis Taxpayers Ass'n v. City of Roseville* (2002) 97 C.A.4th 637, 647-648.

Moreover, Condition No. 2 specifies that the payments will be "subject to the terms of agreements to be executed with the County of San Joaquin and the cities of Manteca, Escalon, and Ripon ...." These agreements have not been negotiated, let alone executed. Those terms may or may not affect the characterization of the payments. *Winkelman v. City of Tiburon* (1973) 32 C.A.3d 834 ["any claim of an unlawful gift of public funds is refuted if the consideration given is adequate"].

Because of all the possible contingencies and options available to SSJID, it is impossible for the Court to determine whether the rate charges will finance the PILOT payments and/or whether the rate charges will constitute a "tax" or a "gift." See, *Howard Jarvis Taxpayers Ass'n v. City of Fresno* (2005) 127 C.A.4th 914, 927 [It is not necessarily required that in lieu fees be recovered from ratepayers in any particular manner; and, an in lieu fee is not necessarily a tax. It can be "a cost of doing business that the utilities are entitled to recover, if it is a permissible cost of doing business in the first instance."]; *Winkelman v. City of Tiburon* (1973) 32 C.A.3d 834 ["any claim of an unlawful gift of public funds is refuted if the consideration given is adequate"].

B. **PG&E'S Facial and As-Applied Constitutional Challenges**

In *Tobe v. City of Santa Ana* (1995) 9 C.4th 1069, 1084, the California Supreme Court explained:

12

"A facial challenge to the constitutionality of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problem may arise as to the particular application of the statute. Rather, *petitioners must demonstrate that the act's provisions inevitably pose a present, total and fatal conflict with applicable constitutional prohibitions.*

An as applied challenge may seek ... relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied, .... It contemplates *analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right.*" (Emphasis added.)

## 1. **Validation Action as a Facial Challenge**

PG&E explains that its 3rd cause of action for invalidation is premised on Code of Civil Procedure, § 863 and as such, PG&E is required to bring this challenge with 60 days or it will lose its ability to do so. PG&E concludes that its challenge is not premature; it is a "facial" challenge to the constitutionality of Condition No. 2 and therefore, the challenge is now ripe.

### a. **Reverse Validation Action**

*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal. App. 4th 1406, 1419 provides an overview of validation actions:

"The procedures applicable to validation actions are set forth at Code of Civil Procedure, § 860, et seq.

13

Code of Civil Procedure, § 860 enables a *public agency* to bring a validation action 'upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, *and for 60 days thereafter* ....' (Italics added.)

'If no proceedings have been brought by the public agency pursuant to this chapter, *any interested person* may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter.' (Code Civ. Proc., § 863, italics added.)"

A validation action by an interested person, challenging a public agency's decision, is called a "reverse validation action." *McLeod v. Vista Unified School Dist.* (2008) 158 C.A.4th 1156.

If no action is taken by either the public agency or an "interested person" within the 60-day period, "the agency's action will become immune from attack whether it is legally valid or not." *California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal. App. 4th 1406, 1420. "As to matters 'which have been or which could have been adjudicated in a validation action, such matters—including constitutional challenges—must be raised within the statutory limitations period in section 860 et seq. or they are waived.' (Citation omitted.)" *California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal. App. 4th 1406, 1420.

"A validation action implements important policy considerations. '[A] central theme in the validating procedures is speedy determination of the validity of the public agency's action.' (Citation omitted.) 'The text of [Code of Civil Procedure] section 870 and cases which have interpreted the validation statutes have placed great importance on the need for a single dispositive final judgment.' (Citation omitted.) The validating statutes should be construed so as to uphold their purpose, i.e., 'the

14

acting agency's need to settle promptly all questions about the validity of its action.' (Citation omitted.) ... 'A key objective of a validation action is to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially.' (Citations omitted.) A validation action also serves to fulfill the important objective of 'facilitat[ing] a public agency's financial transactions with third parties by quickly affirming their legality.' (Citation omitted.) In particular, '[t]he fact that litigation may be pending or forthcoming drastically affects the marketability of public bonds [.]' (Citation omitted.)" *California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal. App. 4th 1406, 1420-21.

Significantly, not all actions of a public agency are subject to validation. *Kaatz v. City of Seaside* (2006) 143 C.A.4th 13, 19. The validation statutes do "not specify the matters to which they apply. Rather, they apply to '*any matter which under any other law is authorized to be determined pursuant to this chapter* ....' (Code Civ. Proc., § 860, italics added; accord *Planning & Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264, 269.) Therefore, we look to other statutes and cases that have interpreted them to determine the scope of public agency actions that are subject to validation under the validation statutes." *Kaatz*, supra, at p. 31.

Thus, the threshold question is whether SJLAFCo's actions are matters that are subject to the validation statutes. PG&E correctly specifies Government Code, § 56103 as the authority for instituting its validation action. Government Code, § 56103 reads: "An action to determine the validity of any change of organization, reorganization, or sphere of influence determination completed pursuant to this division shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." Government Code,

15

§ 56103(m) defines a "change of organization" to include "[t]he exercise of new or different functions or classes of services, ..., within all or part of the jurisdictional boundaries of a special district ...."

Thus, PG&E's facial challenge to Condition No. 2 is ripe.

**b.  Whether the Provisions of Condition No. 2 "Inevitably Pose a Present, Total and Fatal Conflict with Applicable Constitutional Prohibitions"**

To re-iterate, SJLAFCo's Condition No. 2 reads:

> "2.  Payments in lieu of taxes and franchise fees.
> SSJID shall allocate two and one-half percent of gross retail revenues to payments in lieu of franchise fees and property taxes as a cost of providing retail electric service, subject to the terms of agreements to be executed with the County of San Joaquin and the cities of Manteca, Escalon and Ripon, to pay franchise fees to the three cities and county and property tax (unitary tax) to the county on behalf of itself and all of the districts in the county."  Fact 42, undisputed to the extent stated.

On its face, Condition No. 2 does not pose a present, total and fatal conflict with applicable constitutional prohibitions. Instead, it allows for multiple scenarios and options in terms of funding and/or structuring the payments which will, in turn, affect the characterization of the payments as a "tax" or a "gift". _Howard Jarvis Taxpayers Ass'n v. City of Fresno_ (2005) 127 C.A.4th 914, 927 [It is not necessarily required that in lieu fees be recovered from ratepayers in any particular manner; and, an in lieu fee is not necessarily a tax. It can be "a cost of doing business that the utilities are entitled to recover, if it is a permissible cost of doing business in the first instance."]; _Winkelman v. City of Tiburon_ (1973) 32 C.A.3d 834 ["any claim of an unlawful gift of public funds is refuted if the consideration given is adequate"]. Thus, PG&E has not established that the Condition No. 2 is unconstitutional on its face.

16

### 2. PG&E's As-Applied Challenges

With regard to PG&E's as-applied challenges, each challenge is premature because there are no actual facts upon which the Court can evaluate the Condition No. 2 payments.

### a. Whether the Condition No. 2 Payments are an Unconstitutional Imposition of a Property Tax Upon SSJID

PG&E argues that it doesn't matter how the payments are made or what the payments are because SSJID is a public entity and as such, it is exempt from paying property taxes. California Constitution, Article XIII, §3(b). Citing *Sacramento Municipal Utility District v. County of Sonoma* (1991) 235 C.A.3d 726, PG&E explains that the Condition No. 2 PILOT payments are to be made "in lieu of franchise fees and property taxes" and so, Condition No. 2 imposes a property tax upon SSJID which is unconstitutional.

In *Sacramento Municipal Utility District v. County of Sonoma, supra,* Sonoma County imposed a "tax" after voter approval which purported to be for "the production of electrical energy from geothermal resources within Sonoma County by persons who are exempt from paying local county property taxes." *Id.* @ 731. The Court explained: "The character of a tax must be determined by its incidents, and from the natural and legal effect of the language employed in the act." *Id.* @ 733. The Court concluded: "[T]he County's tax is an impermissible substitute for a property tax on public owned property." *Id.* @ 733.

The proper analysis begins with whether the payment is a "tax."

In *Sacramento Municipal Utility District v. County of Sonoma, supra,* there was certainly a "tax" involved; the question was whether it was a property tax or an excise tax. In this case, the Court cannot yet determine whether the payments qualify as a "tax." As discussed above, a "tax" is "a charge ... imposed by a local government, ... which ... exceed[s] the

17

reasonable costs to the local government of providing the service, or [a rate] charged to a particular payor [which does] not 'bear a fair or reasonable relationship' to his or her 'burdens on, or benefits from' the service." California Constitution, Article XIIIC, §1(e). Charges which do not exceed the reasonable cost of providing the service are not "taxes." See, California Constitution, Article XIIIC, § 1(e). And, costs incurred to comply with non-discretionary legal mandates are considered reasonable costs of providing utility service that may be properly charged to customers and will not necessarily be considered a "tax." *Howard Jarvis Taxpayers Ass'n v. City of Roseville* (2002) 97 C.A.4th 637, 647-648.

Simply put, "there are not enough ... actual set[s] of facts" (*Pac. Legal Found. v. California Coastal Com.* (1982) 33 Cal. 3d 158, 170) to evaluate and determine whether or not the payments are or can be construed as taxes. As discussed earlier, SSJID has not acquired any of PG&E's property, entered the retail electric business, or begun providing electric service to its customers. SSJID has not even set any rates. It is too soon to know whether or not the rates charged by SSJID, if used as the source for the Condition No. 2 payments, represent the reasonable cost of providing retail electric service. If so, the payments are not "taxes." See, California Constitution, Article XIIIC, §1(e).

*Sacramento Municipal Utility District v. County of Sonoma*, supra, therefore, is distinguishable and not persuasive.

Moreover, even if the payments are construed to be a tax, PG&E is not the "taxpayer" and so, it lacks standing to make this challenge. *Chiatello v. City & Cnty. of San Francisco* (2010) 189 Cal. App. 4th 472, 480 [" 'Standing is a jurisdictional issue that ... must be established in some appropriate manner.' (Citation omitted.) 'As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication

18

because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator.' "].

### b. Whether the Condition No. 2 Payments Constitute Unconstitutional Gifts of Public Funds

This challenge focuses upon the aspect of Condition No. 2 which has SSJID making payments to the County of San Joaquin on behalf of public entities outside of its territory; i.e., City of Lodi, City of Tracy, etc..[1] PG&E again bases its argument on the assumption that the payments will be made from the rates charged to SSJID's customers. With that premise, PG&E argues that Condition No. 2 mandates that SSJID take funds it receives from its customers within its territory and "give" those funds to the County for the benefit of entities outside of its territory. PG&E adds that the funds given will not be used in furtherance of SSJID's purpose and as such, they are unconstitutional "gifts." See, California Constitution, Article XVI, §6 ["The Legislature shall have no power ... to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; ...."].

In support of its argument, PG&E relies upon *Golden Gate Bridge etc. Dist. v. Luehring* (1970) 4 Cal. App. 3d 204 wherein the court explained, "[I]n order to escape the prohibition of Article XVI, section 6, an appropriation must not only be used by the recipient entity for a [p]ublic purpose, but must be used in furtherance of the [p]articular public purpose of the transferring governmental entity. ... [A]n entity with a narrow and particular purpose, such as a water or sanitary or highway district, could hardly have an 'interest' apart from furtherance of the

---

[1] The Executive Officer's Report lists those entities for which there is an estimated revenue loss as a result of SSJID providing retail electric service rather than PG&E. The list includes *extra* territorial municipalities and districts; for example, the cities of Tracy, Lodi and Lathrop, and the school districts of Stockton, Lodi and Tracy. Fact 44, undisputed to the extent stated.

19

purpose for which it was established. ... ¶ It has persuasively been argued that the activities of the district need not be confined to the particular project for which the district was organized (citation omitted). But any expanded activities must be in furtherance of the general purpose for which the district was formed." *Id.* @ 208-210.

In *Golden Gate Bridge etc. Dist. v. Luehring*, *supra*, the purpose of the district was *very* narrow – "the bridging of the Golden Gate." The court noted that there was no contention that the funds would be used for projects related to that purpose. Thus, the payments were determined to be prohibited. See, also, *Edgemont Cmty. Serv. Dist. v. City of Moreno Valley* (1995) 36 Cal. App. 4th 1157.

PG&E characterizes SSJID's purposes to be limited to providing its customers with "irrigation water, treated water, raw water, wholesale electricity, demand response and electric system consulting services, and through its Application, ... retail electric [services]." Motion, page 13:21-24.

SSJID responds that the Condition No. 2 payments are not unconstitutional gifts for two reasons: 1) the payments will be made pursuant to contract and as such, the payments will be supported by adequate consideration; and 2) the payments serve the public purpose of ensuring that SSJID's initiation of retail electric service occurs with minimum disruption to other public agencies. *Kizziah v. Dep't of Transp.* (1981) 121 Cal. App. 3d 11, 23 citing *Winkelman v. City of Tiburon* (1973) 32 Cal.App.3d 834, and *California Housing Finance Agency v. Elliott* (1976) 17 C.3d 575, 583 ["Any claim of an unlawful gift of public funds is refuted if the consideration given is adequate so as to evidence a bona fide contract (citation omitted); and further, ... a public expenditure will be deemed supported by an adequate consideration if there is a public purpose served ...."].

20

### i. The Payments Will be Made Pursuant to Contract

Condition No. 2 specifically provides that the payments thereunder shall be "subject to the terms of agreements to be executed with the County of San Joaquin and the cities of Manteca, Escalon and Ripon." Those agreements have not yet been negotiated, let alone, executed. At this point, there is no way for the Court to know whether the proposed payments to the County on behalf of "all of the districts in the county" will or will not be supported by adequate consideration. See *Winkelman v. City of Tiburon* (1973) 32 C.A.3d 834 ["any claim of an unlawful gift of public funds is refuted if the consideration given is adequate"].

### ii. The Payments Serve the Public Purpose

SSJID also urges that its Condition No. 2 payments "will serve the public purpose of mitigating the negative financial impacts of SSJID's initiation of retail electric service – and, in particular, its anticipated acquisition of PG&E's property ...." Opposition, page 11:23-25. In support, SSJID cites Government Code, section 56001 which sets forth the legislative findings and declarations behind Local Agency Formation Commissions (LAFCo). It reads, in pertinent part:

> "The Legislature finds and declares that it is the policy of the state to encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state. The Legislature recognizes that the logical formation and determination of local agency boundaries is an important factor in promoting orderly development. ... Therefore, the Legislature further finds and declares that this policy should be effected by the logical formation and modification of the boundaries of local agencies, ...."

As more particularly applied in this case, SSJID states that "[o]ne of the primary means of achieving orderly growth is to provide that changes of governmental organization – which include the initiation by a district, like SSJID, of 'new or different functions or classes of services' – occurs with

21

minimal financial disruption to other public agencies who will be impacted by the change." Opposition, page 12:12-15.

PG&E urges that mitigating the negative fiscal impact of SSJID's expansion does not serve SSJID's limited "purpose."

SSJID relies on *City of Marina v. Board of Trustees of the Cal. State University* (2006) 39 C.4th 341 to argue that "as a public agency, SSJID is responsible for implementing its specific purpose (i.e., providing 'irrigation water, treated water, raw water, wholesale electricity, demand response and electric system consulting services, and through its Application, ... retail electric [services]') in a manner consistent with more general State policies (i.e., orderly growth)."

*City of Marina v. Board of Trustees of the Cal. State University* (2006) 39 C.4th 341 involves the transformation and re-use planning of Fort Ord and the expansion of California State University-Monterey Bay (CSUMB). As part of the CEQA process, the Environmental Impact Report identified certain significant environmental effects and the need for mitigation. The bottom line was that the Board of Trustees refused to make payments which would mitigate the environmental effects because such payments would "amount to a prohibited gift of public funds" since it did not relate to education. The Supreme Court disagreed and wrote:

> "[T]he relevant law makes clear that a payment by the Trustees for
> the purpose of mitigating CSUMB's environmental effects would not
> constitute an unlawful gift of public funds. 'It is well settled that, in
> determining whether an appropriation of public funds or property is
> to be considered a gift, the primary question is whether the funds
> are to be used for a 'public' or a 'private' purpose. If they are for a
> 'public purpose', they are not a gift within the meaning of [the
> Constitution].' Such a payment by the Trustees would have the
> public purpose of discharging their duty as a public agency, under
> the express terms of CEQA, to 'mitigate or avoid the significant
> effects on the environment of projects that [they] carr[y] out or

22

approve [] whenever it is feasible to do so.' Public Resources Code, section 21002.1(b)." *Ibid* @ 362-363.

SSJID analogizes itself to CSUMB and its payment to make the project "revenue neutral" to CSUMB's payment to mitigate environmental effects.

The Court is not convinced that SSJID's analogy holds up. Public Resources Code, section 21002.1(b) specifically requires "[e]ach public agency shall mitigate or avoid the significant effects on the environment of projects that it carries out or approves whenever it is feasible to do so." Thus, CSUMB was statutorily required to mitigate; i.e., make payments which would mitigate.

Here, there is no similar statutory directive to SSJID. SSJID simply argues that "orderly growth and development" means "revenue neutral" expansion of services. *City of Marina v. Board of Trustees of the Cal. State University* (2006) 39 C.4th 341 is not helpful to SSJID.

Be that as it may, there remains the issue of the source of the payments. As noted above, the premise of PG&E's argument is that SSJID will include a 2.5% charge to its electric customers in order to make its payments under Condition No. 2. See, PG&E's stated Fact No. 42. That fact is yet to be determined. And, that fact makes a difference. Indeed, it was an important factor in the *Golden Gate* case, discussed above; that the source of the payments was to be the bridge tolls which were specifically imposed for the purposes of the Golden Gate Bridge District. *Golden Gate Bridge etc. Dist. v. Luehring* (1970) 4 Cal. App. 3d 204, 215 ["It was formed pursuant to the statute by vote of the people residing within its boundaries and has earned revenues in the performance of its own special purpose of 'bridging the Golden Gate.' To permit diversion of a portion of those revenues into the general funds of the counties would

23

be contrary to the apparent purposes of Article XIII, section 25, of the Constitution."].

As previously stated, SSJID suggests that the PILOT payments might not be passed through and paid by SSJID's electric customers; the payments could be made from other revenues. SSJID states that Condition No. 2 "could be satisfied by measuring the amount of SSJID's payments by gross revenues, even if the actual payments are made from other revenue sources." Opposition, page 6:19-22. Or, SSJID could "subsidiz[e] ratepayers using other revenue sources, so that the cost of the payments are, as a practical matter, not passed through to SSJID's customers." Opposition, page 6:23-26.

Until the actual facts surrounding the payments are known, the Court is being asked to speculate.

### 3. Whether the Condition No. 2 Payments Constitute a Tax and Therefore, Need to Be Approved by a Vote Under Article XIIIC (Propositions 218 and 26)

Again, the threshold issue is whether the payments are a "tax" and as stated before, "[t]here are not enough ... actual set[s] of facts" (*Pac. Legal Found. v. California Coastal Com.* (1982) 33 Cal. 3d 158, 170) to evaluate and determine whether the payments are, or can be construed as, taxes.

### C. Preliminary Injunction

Finally, and as an additional issue, "PG&E requests that the Court schedule a hearing on a motion for preliminary injunction preventing SSJID and SJLAFCo from taking any action to implement a takeover of PG&E's facilities." Motion, page 20:1-3.

For the reasons stated above, there is no basis upon which to enjoin SSJID.

/ / /

/ / /

24

**CONCLUSION**

PG&E's facial challenge to Condition No. 2 is ripe, but the challenge fails because Condition No. 2, on its face, does not pose a present, total and fatal conflict with applicable constitutional prohibitions. *Tobe v. City of Santa Ana* (1995) 9 C.4th 1069, 1084. Instead, Condition No. 2 allows for multiple scenarios and options in terms of funding and/or structuring the payments which will, in turn, affect the characterization of the payments as a "tax" or a "gift". Thus, PG&E has not established that Condition No. 2 is unconstitutional on its face.

With regard to PG&E's as-applied challenges to Condition No. 2, the Court notes that SSJID has not decided, committed to, or otherwise implemented any of the several options available to it, and other aspects of the payments require negotiations which have not yet occurred. Therefore, it impossible for the Court to determine whether the Condition No. 2 payments are a "tax" or a "gift." Thus, the as-applied challenges are not ripe; they are premature.

Accordingly, **IT IS HEREBY ORDERED** that summary adjudication of the 3rd and 4th causes of action is denied.

Date: _March 7, 2016_ _____
CARTER P. HOLLY
Superior Court Judge

25

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN**<br>STREET ADDRESS: 222 E. Weber Avenue<br>MAILING ADDRESS: PO Box 201022<br>CITY AND ZIP CODE: Stockton, CA 95201<br>BRANCH NAME: Superior Court San Joaquin | *FOR COURT USE ONLY*<br><br>Filed MAR 0 8 2016<br>ROSA JUNQUEIRO CLERK<br>**GRANT PREEO**<br>By _____<br>DEPUTY |
| PG and E vs S J Local Agency Formation Commission | CASE NUMBER: |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | STK-CV-UJR-2015-0001266 |

I certify that I am not a party to this cause. I certify that a true copy of Order on Motion for Summary Adjudication No. 2 was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Stockton, California, on 03/08/2016.

By: <u>Grant Preeo</u>, Deputy Clerk

Ivor E Samson
525 Market Street 26th Floor
San Francisco CA 94105

Daniel S Truax
P.O. Box 20
Stockton CA 95201

Dennis Donald Geiger
311 Main St Suite 400
Stockton CA 95202-

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

# EXHIBIT 4

1
2
3
4
5
6
7

8        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

9                    STOCKTON JUDICIAL BRANCH

10

11   PACIFIC GAS AND ELECTRIC CO.,              Case No. STK-CV-UJR-2015-1266

12            Petitioner/Plaintiff,
                                                **JUDGMENT AFTER COURT TRIAL**
13   vs.

14   SAN JOAQUIN LOCAL AGENCY
     FORMATION COMMISSION, et al.,
15
               Respondents/Defendant/
16             Real Party in Interest.

17                              **OVERVIEW**

18        This case is a challenge to the legality of Defendant, San Joaquin Local Agency

19   Formation Commission's ("SJ LAFCo") December 2014 conditional approval of a proposal by

20   South San Joaquin Irrigation District ("SSJID") to enter the retail electric business. SSJID

21   proposes to enter the electric business by using eminent domain to take PG&E's electric

22   distribution facilities covering a 112-square mile portion of San Joaquin County.

23        As a result of prior rulings by the Court, the trial in this action now involves just one

24   aspect of SJ LAFCo's conditional approval: **The legality of Condition No. 2, which requires**

25   **that SSJID annually pay to the County of San Joaquin and other public entities 2.5% of**

26   **gross retail revenues.**

27        The annual payment is called a "Payment In Lieu Of Taxes" (commonly referred to by

28   the acronym "PILOT"), and was imposed as a condition of SJ LAFCo's approval of SSJID's

V:\Holly\PGE v SJ\Order\sh                    1

1  proposal expressly to make up for property taxes and fees that PG&E currently pays. Without
2  the annual payment mandated by Condition No. 2, San Joaquin County and local government
3  entities would suffer large revenue losses after SSJID displaces PG&E. PG&E contends that
4  Condition No. 2 violates the California Constitution in three distinct respects.

- First: Property owned by SSJID, a public entity, is constitutionally exempt from
  property taxes. (Cal. Const., art. XIII, §3[b]) Condition No. 2 expressly requires SSJID
  to replace the property taxes that will be lost if SSJID displaces PG&E, the county's
  largest property tax payer, with an equivalent payment.

- Second: The PILOT would be an unconstitutional gift of public funds (Cal. Const., art.
  XVI, §6) because the funds would go to public entities outside SSJID's service area
  (e.g., Stockton Unified School District, City of Lodi) that, as a matter of fact and law,
  cannot use the PILOT funds for the particular purposes for which SSJID itself was
  created (for the provision to customers within SSJID's boundaries of irrigation water,
  drinking water, wholesale electricity or retail electricity).

- Third: The PILOT charges are taxes under Cal. Const., art. XIIIC, §1 (adopted by voters
  as Proposition 26, Gen. Elec., Nov. 2, 2010). As such, SSJID's PILOT charges can only
  pass constitutional muster if they are first approved by two-thirds of the voters who
  would be forced to pay them, or SSJID proves that the PILOT charges are not "taxes"
  because the charges do not "exceed the reasonable costs to the local government of
  providing the service or product." (Cal. Const., art. XIII C, §(e)(2)) Most of the public
  entities that will receive SSJID's PILOT funds are outside SSJID's service boundaries
  and have no involvement in SSJID's proposed retail electric service. This court declines
  to rule on this third challenge to the validity of Condition No. 2 in light of the Court's
  dispositive holdings with respect to the first and second challenges.

## STATEMENT OF UNDISPUTED FACTS

**A.  SJ LAFCo Conditioned Its Approval of SSJID's Application Upon SSJID
Making "Payments In Lieu of Taxes" That Would Be Lost Following a
Condemnation of PG&E's Electric System**

V:\Holly\PGE v SJ\Order\sh                2

1     This action arises from an application by SSJID, an irrigation district, which was
2  submitted to SJ LAFCo in September 2009 (the "Application"). SSJID described in its
3  Application its statutory purposes as follows: "SSJID currently provides irrigation, treated
4  water, raw water, wholesale electricity, demand response and electric system consulting
5  services. Under Water Code § 22115, SSJID also has specific statutory authority to acuire,
6  operate, lease and control facilities for the distribution and sale of electric power."

7     The Application sought authorization from SJ LAFCO for SSJID to become the provider
8  of retail electric service to over 38,000 customers (about 100,000 persons) within its
9  boundaries. SSJID proposed to become the electric service provider in its territory by using
10 eminent domain to acquire the electric system from PG&E.

11    On December 10-11, 2014, SJ LAFCo conducted a two-day hearing to decide whether
12 to approve SSJID's Application. At the conclusion of the hearing, SJ LAFCo voted to
13 conditionally approve the Application and adopted written findings and conditions tied to its
14 approval.

15    One of the conditions adopted by SJ LAFCo requires SSJID to impose charges on its
16 electric customers that SSJID must use to pay government entities that are not SSJID
17 customers, in order to replace the taxes and fees historically paid by PG&E. Specifically,
18 Condition No. 2 states:

19            SSJID shall allocate two and one-half percent of gross retail
20            revenues to payments in lieu of franchise fees and property taxes
              as a cost of providing retail electric service, subject to the terms
21            of agreements to be executed with the County of San Joaquin and
22            the cities of Manteca, Escalon and Ripon, to pay franchise fees
              to the three cities and county and property tax (unitary tax) to
23            the county on behalf of itself and all of the districts in the county.
24

25    PG&E is the county's largest payer of property taxes and SJ LAFCo was unwilling to
26 approve SSJID's application if, due to SSJID's takeover, those taxes would be lost by other
27 government entities in the county and not replaced by SSJID.

28 ///
V:\Holly\PGE v SJ\Order\sh              3

The change from an investor owned utility (PG&E) to a publicly owned utility (SSJID) has tax implications for the State, County, cities, all districts within San Joaquin County, and individual property owners within the various K-14 schools [sic] districts. As a publicly owned utility, SSJID would not be required to pay these taxes. The proposed purchase would result in estimated total loss [sic] revenue for 2012 of $1,683,909. This loss would consist of reductions of $961,276 in property taxes in San Joaquin County, a reduction of $41,500 in Vehicle License Fees (shared by the County and cities), and a reduction of an estimated $681,113 in corporate income taxes paid to the State's General Fund.
(Executive Officer's Report, December 10, 2014, P. 24)

The cities and some of the districts that would lose funds from the loss of tax revenues, include the Cities of Tracy, Lodi and Lathrop, as well as the Unified School Districts of Stockton, Lodi and Tracy. There are a total of 160 public entities that would lose tax funds. Many of those public entities are not contained within SSJID's service territory and would not receive electric service from SSJID.

**B. SSJID Committed That Its Plan Would Be "Revenue Neutral" To Local Government, Meaning That It Would Make Annual PILOT Payments At Least Equal to PG&E's Tax and Fee Payments**

SSJID's Resolution 14-12-E states that SSJID seeks to provide retail electric service "while at the same time not causing the cities within the District or the County of San Joaquin to experience reduced revenue from loss of franchise fees or property taxes (which term is used herein to include taxes charged to unitary and non-unitary property by the State Board of Equalization) that may currently be paid by Pacific Gas & Electric Company on account of its ownership and operation of electric distribution facilities ...." Accordingly, SSJID resolved that if it acquired PG&E's electric system, it would provide:

... the same amount of revenue to the Cities of Manteca, Escalon And Ripon ... as they currently receive through franchise fees on account of Pacific Gas & electric Company's ownership and operation of such facilities.

V:\Holly\PGE v SJ\Order\sh                    4

1    ... the same amount of revenue to San Joaquin County ... as the
2    County currently receives through franchise fees and property
     Taxes on account of Pacific Gas &'Electric Company's ownership
3    and operation of such facilities, plus an annual inflation adjustment.
4    The District's commitment includes the portion of property taxes
5    the County now receives and distributes to other public agencies
     within the County.
6    (SSJID Resolution 14-12-E, September 9, 2014)
7

8        SJ LAFCo Commissioners wanted to be certain that all 160 public entities currently

9    receiving funds from PG&E's tax payments would receive the same funds from SSJID's

10   PILOT. SSJID assured SJ LAFCo's Commissioners that all 160 such public agencies would be

11   made whole, and that the language in Condition No. 2 (as adopted) required such a result.

12                                        DISCUSSION

13       **A. PG&E Has Standing To Challenge The Validity Of Condition No. 2**

14       PG&E challenges the legal validity of SJ LAFCo's Condition No. 2 under the validation

15   statutes (Code Civ. Proc. §860 *et. seq.*). The validation statutes authorize a public agency to

16   bring an action to validate certain matters including any matter which under any other law is

17   authorized to be determined pursuant to this chapter. If the public agency does not bring a

18   validation action, "any interested person may bring an action within the time and in the court

19   specified by Section 860 to determine the validity of such matter." Code Civ. Proc. §863.

20       Government Code §56103 provides that a challenge to a LAFCo action must be

21   pursuant to the validation statutes. Therefore, because SJ LAFCo did not bring a validation

22   action to establish the validity of its determination authorizing SSJID to become the electric

23   service provider in San Joaquin County, PG&E has standing to do so as an interested person.

24       **B. Condition No. 2 Is Invalid, Because SSJID is Constitutionally Exempt From**

25          **Payment Of Property Taxes**

26          **1. The Purpose of Condition No. 2 Is To Replace The Property Taxes That**

27             **PG&E Currently Pays**

28   ///
     V:\Holly\PGE v SJ\Order\sh                    5

1  SJ LAFCo's Condition No. 2 mandates that a portion of the funds collected by SSJID be
2  paid to government entities to replace the property taxes that PG&E currently pays.

3      The California Constitution provides that property owned by the State or by local
4  government is exempt from property taxation. Cal. Const. art. XIII, §3(a)(b). Because of this
5  Constitutional exemption, Condition No. 2 violates the Constitution and is therefore
6  unenforceable. *Sacramento Municipal Utility District v. County of Sonoma*, 235 Cal.App.3d
7  726 (1991).

8           **2. Condition No. 2's Violation Of The Constitutional Tax Exemption For**
9              **Government-Owned Property Is Not A Curable Defect**

10     Whether the County or others make concessions to SSJID in return for the PILOT funds
11  is irrelevant. There is no nexus between the delivery of services or goods and the obligation (or
12  exemption) for payment of property taxes. The fact that the County confers a benefit in
13  exchange for its property tax revenue does not transform property taxes into something
14  different.

15     Any future contract between SSJID and the county or some other governmental entity
16  would have to entail some new service or benefit that would be provided to SSJID that SSJID
17  would otherwise not receive. All contracts require "sufficient cause or consideration" (Civ.
18  Code section 1550(4)), and Government contracts no less than those between private parties
19  must be supported by consideration to be valid and enforceable. Thus, any possible future
20  contract for services provided to SSJID by a government entity receiving PILOT payments
21  would not make up for the revenue losses from displacing PG&E.

22           **3. The Validity of Condition No. 2 Is Ripe For Adjudication**

23     "In considering whether issues are ripe for review, account should also be taken of the
24  public in a prompt answer to a particular legal question and the relative hardship on the parties
25  if a decision is deferred." *Hayward Area Planning Assn., Inc. v. Alameda County Trans. Auth.*,
26  72 Cal.App.4[th] 95, 104 (1999). Cases are ripe when "parties are in fundamental disagreement
27  over the construction of particular legislation, or they dispute whether a public entity has
28  engaged in conduct or established policies in violation of applicable law." *Id.* at 103.

V:\Holly\PGE v SJ\Order\sh          6

1  SSJID's proposed project contemplates one of the largest eminent domain takings in
2  California history and will require an enormous expenditure of public money. The
3  determination of the legitimacy of such a taking will also require considerable party and judicial
4  resources. A failure to resolve the legality of Condition No. 2 now runs the risk that the parties
5  will conduct the first phase of the eminent domain trial and, if SSJID prevails, the uncertainty
6  with respect to Condition No. 2 will cloud the project with "lingering uncertainty," and force
7  the parties to expend tremendous resources advancing a project that may ultimately be declared
8  unlawful.

9      **C.  Condition No. 2 Requires An Unconstitutional Gift of Public Funds**

10     California Constitution, art. XVI, §6 prohibits "... the making of any gift, of any public
11  money or thing of value to an individual, municipal or other corporation whatsoever ..." To
12  determine whether an appropriation of public finds constitutes an impermissible gift, the
13  threshold question asks whether the appropriation is made to a public or private entity. If the
14  transfer of public funds is directed to a private entity, "the primary question is whether the
15  funds are to be used for a 'public' or a 'private' purpose." *Winkelman v. City of Tiburon,* 32
16  Cal.App.3d 834, 845 (1973). However, if the appropriation is from one public agency to
17  another, as is the case here, the "appropriation must only be used by the recipient entity for a
18  public purpose, but must be used in furtherance of the particular public purpose of the
19  transferring governmental entity." *Golden Gate Bridge & Highway Dist. v. Luehring,* 4
20  Cal.App.3d 204, 208 (1970).

21     Condition No. 2 requires SSJID to make payments to various public entities, many
22  outside of SSJID's service territory, with no limitation as to how the payments will be used by
23  the recipient, let alone any guarantee that the funds will be used in furtherance of SSJID's
24  purposes. This renders Condition No. 2 unconstitutional.

25                              **HOLDING**

26     The Court finds that Condition No. 2 requires: (1) an unconstitutional payment of
27  property taxes by a tax exempt entity; and (2) an unconstitutional gift of public funds for
28  purposes beyond SSJID's particular public purpose.
   V:\Holly\PGE v SJ\Order\sh              7

1    For all the foregoing reasons, the Court enters judgment invalidating Condition No. 2 as

2    an unconstitutional tax.

3        The Court sustains SSJID's objections 1-3 to PG&E's evidence.

4

5    Date: October 31, 2017                              _____
                                                          HON CARTER P. HOLLY
6                                                         Judge of the Superior Court
7                                                               CARTER P. HOLLY
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     V:\Holly\PGE v SJ\Order\sh                    8

# EXHIBIT 5

# Appellate Courts Case Information

## 3rd Appellate District

Change court ▼

*Court data last updated: 01/13/2020 09:37 AM*

## <mark>Docket</mark> (Register of Actions)

**Pacific Gas and Electric Company v. San Joaquin Local Area Formation Commission**
**Case Number C086008**

| Date | Description | Notes |
|------|-------------|-------|
| 11/29/2017 | Notice of appeal lodged/received. | Filed in the trial court on 11/21/17 by South San Joaquin Irrigation District. |
| 12/01/2017 | Letter to counsel advising of due date of Civil Case Information Statement. | CCIS and AMS due: 12/18/17 |
| 12/01/2017 | Respondent notified re CAMS. | Pacific Gas and Electric Company's RMS due 10 days after AMS. |
| 12/01/2017 | Respondent notified re CAMS. | San Joaquin Local Agency Formation Commission's RMS due 10 days after AMS. |
| 12/04/2017 | Notice of appeal lodged/received. | Filed in the trial court on 11/29/17, by Pacific Gas and Electric Company. |
| 12/05/2017 | Notice of appeal lodged/received. | Filed in the trial court on 12/01/17, by San Joaquin Local Agency Formation Commission. |
| 12/07/2017 | Letter to counsel advising of due date of Civil Case Information Statement. | Pacific Gas and Electric Company. CCIS due: 12/22/17 |
| 12/07/2017 | Letter to counsel advising of due date of Civil Case Information Statement. | San Joaquin County Local Area Formation Commission. CCIS due: 12/22/17 |
| 12/15/2017 | Civil case information statement filed. | by appellant South San Joaquin Irrigation District. |
| 12/15/2017 | Appellant's mediation statement filed. | by appellant South San Joaquin Irrigation District. |
| 12/20/2017 | Returned document for non-conformance. | Rejected letter from Ivor Samson of Dentons US LLP dated 12/15/17 advising this case is related to C085669 because court already has cases cross-referenced; if counsel wants to consolidate must be done by motion. |
| 12/18/2017 | Civil case information statement filed. | by San Joaquin Local Agency Formation Commission. |
| 12/20/2017 | Civil case information statement filed. | PG&E |
| 12/20/2017 | Respondent's mediation statement filed. | San Joaquin Local Agency Formation Commission |

| | | |
|---|---|---|
| 12/20/2017 | Respondent's mediation statement filed. | PG&E |
| 01/02/2018 | Case ordered not eligible for mediation. | BUTZ, Acting P.J. |
| 01/02/2018 | Letter sent to counsel re: | Appeal not selected for mediation. |
| 01/12/2018 | Appellant's notice designating record on appeal filed in trial court on: | 01/09/18. Elects to proceed by way of appendix with the RT. |
| 01/16/2018 | Proposed briefing sequence filed by: | JOINT |
| 01/17/2018 | Briefing sequence order filed. | The stipulated proposed briefing sequence filed in this court on January 16, 2018, is adopted. The briefing periods shall be as set forth in rule 8.212 of the California Rules of Court. RAYE, P.J. |
| 01/18/2018 | Appellant's notice designating record on appeal filed in trial court on: | 01/12/18. Elects to proceed by way of appendix with the RT, and administrative record. |
| 02/07/2018 | Filed application and order of: | CSR Stephanie Warren to 02/27/18. Has completed 3 out of 3 hours. Is waiting for a page number from another reporter. Was originally due on 02/07/18. |
| 02/09/2018 | Letter sent to: | appellant re court reporter's extension of time. |
| 02/28/2018 | Filed application and order of: | CSR Stephanie Warner to 03/09/18. Has completed 29 out of 29 hours. Has not received a page number from other reporter. |
| 03/01/2018 | Letter sent to counsel re: | court reporter's granted extension of time. |
| 03/15/2018 | Reporter's transcript filed. | 3 vols. electronic RT (160 pp.); 1 CD Administrative Record (26, 854 pp.) and Augmented Recorded AOB due: 4/24/2018. |
| 03/15/2018 | Letter sent advising record on appeal has been filed. | AAO due: 4/24/2018. |
| 03/26/2018 | Stipulation of extension of time filed: | |
| 04/16/2018 | Association of attorneys filed for: | Horvitz & Levy LLP with Manatt, Phelps & Phillips LLP for Pacific Gas and Electric Company. |
| 05/15/2018 | Filed change of firm name. | by appellant from Jarvis, Fay, Doporto & Gibson, LLP. to Jarvis, Fay & Gibson LLP. |
| 06/29/2018 | Requested - extension of time. | Appellant San Joaquin Local Agency Formation Commission to 7/25/2018 to file AOB. |
| 06/29/2018 | Requested - extension of time. | Appellant South San Joaquin Irrigation District to 7/25/2018 to file AOB. |
| 06/21/2018 | Granted - extension of time. | Appellant San Joaquin Local Agency Formation Commission to 7/25/2018 to file AOB. |
| 06/21/2018 | Granted - extension of time. | Appellant South San Joaquin Irrigation District to 7/25/2018 to file AOB. |
| 08/02/2018 | Filed document entitled: | by appellant South San Joaquin Irrigation District's Notice of Manual Filing. |
| 08/02/2018 | Appellant's appendix filed. | 26 vols. of appendix (4270 pp.)-CD; |
| 08/02/2018 | Appellant's opening brief. | Real Party in Interest and Appellant: South San Joaquin Irrigation District Attorney: Edward Kong Low |
| 08/08/2018 | Filed joinder of: | by appellant San Joaquin Local Agency Formation Commission's Amended Joinder in Opening Brief of South San Joaquin Irrigation District with CIEP. No interested parties listed. |
| 08/28/2018 | Motion filed. | by appellant Pacific Gas & Electric Company motion to consolidate appeals for argument and decision. |
| 08/28/2018 | Filing fee. | by appellant. Receipt # R323223. |
| 09/12/2018 | Opposition filed. | By Appellant to motion to consolidate. |

| 09/12/2018 | Opposition filed. | Joinder in opposition to motion to consolidate by Appellant San Joaquin Local Agency. |
| 09/18/2018 | Order filed. | Decision on appellant Pacific Gas & Electric Company's request to consolidate case numbers C086008 and C086319 for argument and decision is deferred pending calendaring and assignment of the panel. RAYE, P.J. |
| 10/30/2018 | Requested - extension of time. | Respondent/ Cross-Appellant to 1/7/2019 to file RB. |
| 10/30/2018 | Granted - extension of time. | Respondent/Cross-Appellant granting extension to 1/7/2018 to file RB. |
| 12/28/2018 | Requested - extension of time. | Respondent to 2/6/2019 to file RB/AOB. |
| 12/26/2018 | Granted - extension of time. | Respondent granting extension to 2/6/2019 to file RB/AOB. RAYE, P.J. |
| 01/28/2019 | Respondent's brief. | Plaintiff and Appellant: Pacific Gas and Electric Company<br>Attorney: Dinesh Ravindra Badkar |
| 01/28/2019 | Respondent's appendix filed. | 1 vol. of appendix (88 pp.) ARB due: 2/20/2019 |
| 02/08/2019 | Stipulation of extension of time filed: | |
| 04/10/2019 | Requested - extension of time. | Appellant South San Joaquin Irrigation District requesting to 06/28/19 to file ARB and XRB. |
| 04/10/2019 | Requested - extension of time. | Appellant San Joaquin Local Agency Formation Commission requesting to 06/28/19 to file ARB and XRB. |
| 04/10/2019 | Granted - extension of time. | Appellant San Joaquin Local Agency Formation Commission granted to 06/28/19 to file ARB and XRB. |
| 04/10/2019 | Granted - extension of time. | Appellant South San Joaquin Irrigation District requesting to 06/28/19 to file ARB and XRB. |
| 04/17/2019 | Filed: | Plaintiff and appellant Pacific Gas and Electric Company's Notice of Bankruptcy Filing and Imposition of Automatic Stay. |
| 04/22/2019 | Bankruptcy proceedings filed - matter stayed. | Letter acknowledging the stay and request status of bankruptcy by: 10/21/19. |
| 10/16/2019 | Filed letter from: | appellant re: bankruptcy status update. Bankruptcy proceedings are ongoing and the automatic stay remains in effect. |

**Click here** to request automatic e-mail notifications about this case.

Case: 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 108 of 148

# Appellate Courts Case Information

## 3rd Appellate District

Change court ▼

*Court data last updated: 01/13/2020 09:37 AM*

## Case Summary

| | |
|---|---|
| Trial Court Case: | STKCVUJR20150001266 |
| Court of Appeal Case: | **C086008** |
| Division: | |
| Case Caption: | Pacific Gas and Electric Company v. San Joaquin Local Area Formation Commission |
| Case Type: | CV |
| Filing Date: | 11/21/2017 |
| Completion Date: | |
| Oral Argument Date/Time: | |

**Cross Referenced Cases:**

| | |
|---|---|
| C056463 | San Joaquin Local Agency Formation Commission v. The Superior Court of San Joaquin County |
| C056661 | South San Joaquin Irrigation District v. The Superior Court of San Joaquin County et al. |
| C079200 | Johnson et al. v. South San Joaquin Irrigation District |
| C081756 | Pacific Gas and Electric Company v. The Superior Court of San Joaquin County |
| C081758 | Pacific Gas and Electric Company v. The Superior Court of San Joaquin County |
| C085308 | Pacific Gas and Electric Company et al. v. The Superior Court of Sacramento County |
| C085669 | Pacific Gas and Electric Company v. The Superior Court of San Joaquin County |

**Click here** to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use |     © 2020 Judicial Council of California
Privacy

# Appellate Courts Case Information

## 3rd Appellate District

Change court ▼

*Court data last updated: 01/13/2020 09:37 AM*

## Briefs

**Pacific Gas and Electric Company v. San Joaquin Local Area Formation Commission**
**Case Number C086008**

| Brief | Due Date | Date Filed | Party and Attorney | Notes |
|---|---|---|---|---|
| Appellant's opening brief. | | 08/02/2018 | Real Party in Interest and Appellant: South San Joaquin Irrigation District<br>Attorney: Edward Kong Low | |
| Respondent's brief. | | 01/28/2019 | Plaintiff and Appellant: Pacific Gas and Electric Company<br>Attorney: Dinesh Ravindra Badkar | |

**Click here** to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use |    © 2020 Judicial Council of California
Privacy

# Appellate Courts Case Information

## 3rd Appellate District

Change court ▼

*Court data last updated: 01/13/2020 09:37 AM*

**Trial Court**

**Pacific Gas and Electric Company v. San Joaquin Local Area Formation Commission**
**Case Number C086008**

| | |
|---|---|
| **Trial Court Name:** | San Joaquin County Superior Court |
| **County:** | San Joaquin |
| **Trial Court Case Number:** | STKCVUJR20150001266 |
| **Trial Court Judge:** | Holly, Carter |
| **Trial Court Judgment Date:** | 10/31/2017 |

**Click here** to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use |　© 2020 Judicial Council of California
Privacy

# Appellate Courts Case Information

## 3rd Appellate District

Change court ▼

*Court data last updated: 01/13/2020 09:37 AM*

## Parties and Attorneys

**Pacific Gas and Electric Company v. San Joaquin Local Area Formation Commission
Case Number C086008**

| Party | Attorney |
|---|---|
| Pacific Gas and Electric Company : Plaintiff and Appellant | Dinesh Ravindra Badkar<br>Manatt, Phelps & Phillips, LLP<br>11355 West Olympic Boulevard<br>Los Angeles, CA 90064<br>Bradley Scott Pauley<br>Horvitz & Levy LLP<br>3601 West Olive Avenue, 8th Floor<br>Burbank, CA 91505-4681 |
| San Joaquin Local Agency Formation Commission : Defendant and Appellant | Daniel S. Truax<br>Neumiller & Beardslee<br>P. O. Box 20<br>Stockton, CA 95201-3020 |
| South San Joaquin Irrigation District : Real Party in Interest and Appellant | Edward Kong Low<br>Jarvis, Fay & Gibson, LLP<br>492 Ninth Street, Suite 310<br>Oakland, CA 94607-4055<br>Benjamin P. Fay<br>Jarvis, Fay & Gibson, LLP<br>492 Ninth Street, Suite 310<br>Oakland, CA 94607<br>Rick W. Jarvis<br>Jarvis, Fay & Gibson, LLP<br>492 Ninth Street, Suite 310<br>Oakland, CA 94607 |

**Click here** to request automatic e-mail notifications about this case.

Case: 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 112
of 148

# EXHIBIT 6

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 113 of 148



1  IVOR E. SAMSON (SBN 52767)
2  SARAH R. CHOI (SBN 222261)
   EDWARD K. LOW (SBN 255764)
3  DENTONS US LLP
   One Market Plaza, Spear Tower, 24th Floor
4  San Francisco, CA  94105-1102
   Tel: (415) 267-4000
5  Fax: (415) 267-4198
   Email: ivor.samson@dentons.com
6          sarah.choi@dentons.com
           edward.low@dentons.com
7

8  PEGGY M. O'LAUGHLIN (SBN 123284)        D. DONALD GEIGER (CA Bar No. 42821)
   GERALD HOULIHAN (SBN 214254)            KROLOFF, BELCHER, SMART,
9  MATTEONI, O'LAUGHLIN & HECHTMAN         PERRY & CHRISTOPHERSON
   848 The Alameda                         7540 Shoreline Drive
10 San Jose, CA 95126                      Stockton, CA 95219
   Tel: (408) 293-4300                     Tel: (209) 478-2000
11 Fax: (408) 293-4004                     Fax: (209) 478-0354
12 Email: pmo@matteoni.com                 Email: dgeiger@kroloff.com
          gerry@matteoni.com
13                                         EXEMPT FROM FILING FEES
                                           GOV'T CODE § 6103
14

15 Attorneys for Petitioner
   SOUTH SAN JOAQUIN IRRIGATION DISTRICT
16

17              SUPERIOR COURT OF CALIFORNIA

18                 COUNTY OF SAN JOAQUIN

19

20 SOUTH SAN JOAQUIN IRRIGATION      Case No.  STK-CV-UED-2016-6628
   DISTRICT, a California irrigation district,
21                                    COMPLAINT IN EMINENT DOMAIN
22              Plaintiff,
                                      [Notice of Pendency filed concurrently]
         v.
23
   PACIFIC GAS AND ELECTRIC
24 COMPANY, a California corporation;
   FIRST INTERSTATE BANK OF
25 CALIFORNIA, a California corporation;
   DOES 1-1000; AND ALL PERSONS
26 UNKNOWN CLAIMING AN INTEREST
   IN THE PROPERTY,
27                                    THIS CASE HAS BEEN ASSIGNED TO
                                      JUDGE ROGER ROSS IN DEPARTMENT 13
28              Defendants.           FOR ALL PURPOSES, INCLUDING TRIAL

FILED
SUPERIOR COURT, STOCKTON
2016 JUL -7  PM 3: 05
ROSA JUNQUEIRO, CLERK
RITA L. GOMEZ
DEPUTY

By Fax

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 114
of 148

Plaintiff, SOUTH SAN JOAQUIN IRRIGATION DISTRICT, alleges as follows:

PARTIES

1.       The SOUTH SAN JOAQUIN IRRIGATION DISTRICT (the "District" or "Plaintiff") is, and at all times herein mentioned has been, a California special district organized and existing under the laws of the State of California, that provides irrigation water and domestic water service to customers in southern San Joaquin County. The District is vested with authority to exercise in its own name the power of eminent domain to acquire property for the operation of an integrated, publically owned and operated electric distribution system, a public use, pursuant to sections 1240.010, 1240.110, 1240.120, 1240.610, *et seq.*, and 1240.650 of the California Code of Civil Procedure; California Water Code sections 22115, 22425 and 22456; and Article 1, section 19 of the Constitution of the State of California.

2.       Defendant PACIFIC GAS & ELECTRIC COMPANY ("PG&E"), is, and at all times mentioned has been, a public utility and a corporation duly organized and existing under the laws of the State of California.

3.       Defendant FIRST INTERSTATE BANK OF CALIFORNIA, is a state banking corporation incorporated and existing under and by virtue of the laws of the State of California.

4.       The names of all the owners and of all persons claiming to have any right, title, estate, lien or interest in, on, to or against the property sought to be condemned in this action, or any part thereof, so far as they are known to Plaintiff, are set forth in the title hereof as defendants. A table setting forth the respective interest or claim of interest of each named defendant, which is provided solely for the convenience of the court and the parties and not as allegations by which District intends to be bound, is set forth below:

| NAME OF DEFENDANT | INTEREST |
|---|---|
| PG&E | Owner |
| First Interstate Bank of California | Trustee and Beneficiary under Deed of Trust |

5.       Defendants DOES 1-1000, inclusive, have, or claim to have, an interest in the property described herein, the exact nature of which is unknown to the District. The true names or capacities of the individual, corporate, associate or otherwise of DOES 1-1000 are unknown

1

COMPLAINT IN EMINENT DOMAIN

17

1   to the District, which therefore sues such defendants by such fictitious name and will ask leave

2   to amend this pleading to show the true names and capacities and state of incorporation if

3   applicable when the names and identities of defendants are ascertained.

4         6.      The District hereby names All Persons Unknown Claiming an Interest in the

5   property described herein as party defendants to this action.

6         7.      All defendants identified in Paragraphs 2 through 6 above are hereby referred to

7   collectively as the "Defendants."

8                      THE PROPOSED PROJECT AND ACQUISITION

9         8.      By this action, the District seeks to acquire the electric distribution system

10   owned and operated by PG&E that provides retail electric service within the District's service

11   territory for the District to provide retail electric service. True and accurate descriptions of the

12   Property sought to be acquired are set forth in the Resolution of Necessity, which includes the

13   descriptions of inventory and assets, easements, legal descriptions and plat maps and a

14   description of the District's service territory attached as Exhibit A to said Resolution of

15   Necessity (the "Property"). A true and correct copy the Resolution of Necessity (Resolution

16   No. 16-05-E) is attached hereto as **Exhibit 1** and by this reference is made a part of this

17   Complaint. Certain information related to the description of the Property to be acquired,

18   specifically the System Inventory Diagram Map ("Diagram Map"), may be critical

19   infrastructure information subject to restrictions on disclosure established under the authority of

20   state and federal law (*e.g,.* the Critical Infrastructures Protection Act of 2001; 42 U.S.C. §

21   5195c(e), Protection of Voluntarily Shared Critical Infrastructure Information (6 U.S.C. § 133)

22   and the Critical Energy Infrastructure Information (CEII) (18 U.S.C. § 388.13) and California

23   Government Code §§ 6254(k) and 6255). An oversized, legible version of the Diagram Map

24   was provided to PG&E on May 12, 2016 with the District's statutory offer letter (Offer Letter,

25   Exhibit B, Exhibit 2, Attachment 5) and said map is incorporated herein by reference, but as it

26   may not be publicly disclosed it is not included in Exhibit 1 attached hereto. Once a suitable

27   confidentiality procedure is established by the Court to prevent inappropriate disclosure of

28   critical infrastructure information, the District will submit a copy of the same oversized

1 | Diagram Map previously provided to PG&E to the Court in accordance with that procedure.
2 | The location of the subject Property in relation to the Project (as defined below) is shown on the
3 | Diagram Map.

4 |      9.     The District seeks to acquire the Property for a proposed public project, namely,
5 | the public ownership, operation and maintenance of the PG&E electric distribution system
6 | located within the District's service territory in order for the District to provide retail electric
7 | service to the approximately 40,000 PG&E electric customers in the District's service territory,
8 | which will provide various public benefits including electric service rates projected to be 15%
9 | lower than PG&E's and electric service that is subject to local control and public transparency
10 | (the "Project").

11 |      10.    In December 2014, the District obtained approval from the San Joaquin County
12 | Local Agency Formation Commission ("SJLAFCo") for a change of organization to provide
13 | retail electric service within its service territory. SJLAFCo issued a Certificate of Completion,
14 | which was recorded on March 19, 2015 in the official records of the San Joaquin County
15 | Recorder as document number 2015-030402.

16 |      11.    On May 12, 2016, pursuant to California Government Code section 7267.2, the
17 | District submitted a written offer to PG&E to acquire the Property for not less than the amount
18 | established as just compensation based on the accompanying summary appraisal statement. The
19 | offer and appraisal statement were in a format and contained the information required by
20 | Government Code section 7267.2. PG&E rejected the District's offer.

21 |      12.    The District has complied with all conditions and statutory requirements
22 | including the California Environmental Quality Act (Pub. Resource Code §§ 21000 *et seq.*)
23 | accomplished through SJLAFCo's certification of the Final Subsequent Environmental Impact
24 | Report on December 11, 2014.

25 |      13.    At a duly noticed hearing before the District's Board of Directors on June 28,
26 | 2016 (held pursuant to Code of Civil Procedure sections 1245.210 through 1245.270 (and the
27 | Ralph M. Brown Act (Gov. Code §§ 54950 *et seq.*)), the District's Board of Directors
28 | unanimously passed and adopted Resolution No. 16-05-E, declaring that the public interest and

3
COMPLAINT IN EMINENT DOMAIN

1  necessity require the acquisition of the Property by eminent domain , pursuant to sections
2  1240.010, 1240.050, 1240.110, 1240.120, 1240.125, 1240.610, *et seq.*, and 1240.650 of the California
3  Code of Civil Procedure, California Water Code sections 22115, 22425 and 22456, and Article 1,
4  Section 19 of the Constitution of the State of California.  In Resolution No. 16-05-E, the District's Board
5  found and determined that:

6      (1)    The public interest and necessity require the Project.

7      (2)    The Project is planned and located in the manner that will be most compatible
8  with the greatest public good and the least private injury.

9      (3)    The Property sought to be acquired, as described in Exhibit A to the Resolution
10 of Necessity (attached hereto as **Exhibit 1**), is necessary for the Project.

11     (4)    The use of the Property by the District for the Project is a more necessary public
12 use within the meaning of California Code of Civil Procedure sections 1240.610 and 1260.650,
13 than the use to which the Property is already appropriated.

14     (5)    An offer to purchase the Property as required by Government Code section
15 7267.2 was made.

16     (6)    The requirements of the California Environmental Quality Act, California
17 Public Resources Code sections 21000, *et seq.*, have been met.

18     14.    The use of the Property by the District for the Project is a more necessary public
19 use within the meaning of California Code of Civil Procedure sections 1240.610 and 1260.650,
20 than the use to which Property is already appropriated.

21         <u>THE EMINENT DOMAIN ACTION</u>

22     15.    This Court has jurisdiction over the Property to be acquired and this action
23 pursuant to California Code of Civil Procedure sections 1250.010 and 1250.020.

24     WHEREFORE, the District prays for judgment that:

25     1.    The Property be condemned to the District use for the public purposes set forth
26 herein;

27     2.    Defendants, and each of them, including all persons unknown and claiming an
28 interest in the Property, be directed to answer and assert any claims they, or any of them, may

4
COMPLAINT IN EMINENT DOMAIN

Case: 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 118
of 148

have in the Property described herein;

     3.     Just compensation be ascertained and assessed, and the amount of the award for the taking of the Property be first determined between the District and all Defendants claiming any interest therein;

     4.     All liens and encumbrances against the Property be deducted from the judgment, unless taken subject thereto; and

     5.     For all other and further relief as the Court may deem just and proper.

Dated: July 7, 2016          DENTONS US LLP

By:_____
          IVOR E. SAMSON

Attorneys for Plaintiff
SOUTH SAN JOAQUIN IRRIGATION DISTRICT

96911452:V-7

5
COMPLAINT IN EMINENT DOMAIN

Case: 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 119 of 148

# EXHIBIT 1

RESOLUTION NO. 16-05-E

RESOLUTION OF NECESSITY OF
SOUTH SAN JOAQUIN IRRIGATION DISTRICT
DETERMINING THAT THE PUBLIC INTEREST AND NECESSITY
REQUIRE THE ACQUISITION OF PACIFIC GAS AND ELECTRIC COMPANY'S
ELECTRIC DISTRIBUTION SYSTEM
AND DIRECTING THE FILING OF EMINENT DOMAIN PROCEEDINGS

WHEREAS, the South San Joaquin Irrigation District's ("SSJID" or the "District") proposed Retail Electric Project is being undertaken to provide retail electric service to the public, within the service territory of SSJID which includes the cities of Ripon, Escalon, and Manteca (hereinafter the "Project");

WHEREAS, the Project will include various benefits, including local control, public transparency, and electric service rates projected to be 15% lower than those of Pacific Gas and Electric Company's ("PG&E");

WHEREAS, the San Joaquin Local Agency Formation Commission has conditionally approved the Project by way of motion on December 11, 2014 and by way of Resolution 1327, passed and adopted on March 12, 2015;

WHEREAS, by this Resolution of Necessity SSJID proposes to acquire PG&E's electric distribution system located within SSJID's service territory for a proposed public use, the provision of electric service to users of PG&E's electric distribution system, as further described in Exhibit "A" attached hereto and made a part hereof by this reference (the "Property");

WHEREAS, the District is authorized to acquire the Property and exercise the power of eminent domain for the public use and Project described herein, pursuant to and in accordance with Article 1, Section 19 of the California Constitution, the California Eminent Domain Law, Code of Civil Procedure Sections 1230.010 *et seq.*, and Sections 22115 and 22456 of the California Water Code;

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 121
of 148

WHEREAS, pursuant to the provisions of Section 1245.235 of the California Code of Civil Procedure, SSJID's Board scheduled a public hearing on this proposed Resolution of Necessity for Tuesday, June 28, 2016 at 9:00 a.m. at the City of Ripon Council Chambers, 259 N. Wilma Avenue, Ripon, California and notice has been duly given to PG&E, the owner of the Property herein, who has been given a reasonable opportunity to appear and be heard on the matters referred to in Section 1240.030 of the Code of Civil Procedure before SSJID's Board of Directors at the time and place set forth in said notice, regarding the matters specified therein; and

WHEREAS, said hearing having been held by the Board of Directors, the Board may now adopt a Resolution of Necessity pursuant to Code of Civil Procedure Section 1240.040.

NOW, THEREFORE, IT IS FOUND, DETERMINED AND ORDERED by the Board of Directors of SSJID as follows:

1.   The recitals contained herein are true and correct.

2.   Upon examination of the alternatives, the District requires the Property for the Project.

3.   The District is authorized to acquire the Property and exercise the power of eminent domain to and in accordance with Article 1, Section 19 of the California Constitution, the California Eminent Domain Law, Code of Civil Procedure Sections 1230.010 *et seq.*, and Water Code Sections 22115 and 22456.

4.   <u>Findings</u>. The District hereby finds and determines each of the following:

130125929.41

Case: 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 122 of 148

       (a)     The public interest and necessity require the Project.

       (b)     The Project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury.

       (c)     The Property as defined in Exhibit "A" is necessary for the Project.

       (d)     The public use set forth herein by the District of PG&E's electric distribution system constitutes a more necessary public use within the meaning Code of Civil Procedure Sections 1240.610 and 1240.650 than the use to which the property is appropriated by PG&E.

5.    The offer required by Section 7267.2 of the Government Code, together with the accompanying statement of the amount established as just compensation, for the acquisition of the Property, has been made to PG&E the owner of record, which offer and statement were in a format and contained the information required by Government Code Section 7267.2.

6.    SSJID has complied with all conditions and statutory requirements, including those prescribed by the California Environmental Quality Act (Pub. Res. Code § 21000, *et seq.*) and that are necessary for approval and adoption of the Project. The San Joaquin Local Agency Formation Commission, in approving SSJID's change of organization to provide retail electric service in its service territory, certified a Final Subsequent

160124829 v1

25

Environmental Impact Report (State Clearinghouse No. 2005102018)
on December 11, 2014 for the Project that fully analyzes and discloses
the potential environmental impacts associated with SSJID becoming
an electric service provider within its service territory by the acquisition
of PG&E's electric distribution system.

7.  All conditions and statutory requirements necessary to exercise the
    power of eminent domain ("the right to take") to acquire the Property
    have been complied with by SSJID.

8.  Legal counsel for SSJID is hereby authorized and directed to institute
    and conduct to conclusion eminent domain proceedings to acquire the
    Property and to take such actions that counsel deems advisable or
    necessary in connection therewith.  Counsel is further authorized to
    correct any errors or to make or agree to non-material changes in the
    description of the property interests to be acquired that are deemed
    necessary for the conduct of the condemnation action.

PASSED AND ADOPTED by South San Joaquin Irrigation District Board of
Directors on June 28, 2016, by the following vote:

AYES:     DIRECTORS:  HOLMES HOLBROOK KUIL KAMPER ROOS
NOES:     DIRECTORS:
ABSENT:   DIRECTORS:

ROBERT A. HOLMES, President
SSJID Board of Directors

1561293v1

# EXHIBIT A

## SSJID - - Description of PG&E's Electric Distribution System
## to Be Acquired

Except as expressly excluded in this Exhibit, all of PG&E's assets comprising its electric distribution system located within the boundaries of SSJID's service territory, as described in Attachment 1 attached hereto, including all property, real, tangible, intangible and personal, records, maps, books and accounts as more particularly described below, are to be acquired by SSJID:

1.  Portions of PG&E's Manteca and Ripon Substations in fee as well as easement interests (see Attachment 2 for legal descriptions and corresponding maps)

2.  PG&E's Distribution Easements and associated property rights for the electric distribution system (see Attachment 3 for the descriptions and corresponding maps of the overhead distribution easements)

3.  The Inventory comprising PG&E's Distribution Network System and the Manteca and Ripon Substations. The assets generally include portion of the 115kV/17kV transformers and the 17 kV distribution portion of the Manteca substation, the 115/17 kV transformers and the 17kV distribution portion of the Ripon substation, 17kV distribution feeders overhead and underground, utility poles, transformers on overhead lines, enclosures and PAD mounted, various switches, capacitor banks, regulators, reclosers, risers, low voltage circuits, and service drops. A list of the Inventory/Assets to be Acquired (see Attachment 4) and System Inventory Diagram Map (see Attachment 5, on request can provide additional detail).

4.  The following tangible and personal property owned by PG&E and part of, or principally used in connection with, the operation of PG&E's electric distribution system located within the boundaries of SSJID's service territory and severable from PG&E's remaining distribution system:

    a.  PG&E's Supervisory Control and Data Acquisition Equipment ("SCADA"), including any dedicated communication equipment, RTUs and databases

    b.  PG&E's Geographic Information System ("GIS") Databases of Distribution System Circuits and Plat Maps

28

    c.       Velum Versions of PG&E's Distribution System Circuits and Plat Maps, and current versions of mapping paper copies

    d.       PG&E's System Models

    e.       PG&E's Centralized Electric Distribution System Assets ("C-EDSA"): Records on PG&E's distribution circuits and equipment, such as feeders, conductors, transformers, services, and miscellaneous line equipment.

    f.       PG&E's Customer Record Systems, including billing and metering data

    g.       PG&E's Switching Maps and Procedures

    h.       PG&E's distribution system load flow model databases

    i.       PG&E's Fiber optic and other telecommunications equipment

    j.       PG&E's Franchise and Consents (which are assignable or otherwise transferable)

    k.       PG&E's Equipment Records

    l.       PG&E's Work Order Database

    m.       PG&E's Pole Asset Management Pole Inventory

5.    EXCLUDED ASSETS:

- Natural Gas Facilities and Equipment
- Transmission Line Facilities and Equipment
- Any fee simple estates, easements, permits, licenses or rights of way relating to gas facilities and equipment or electric transmission facilities and equipment.

29

# EXHIBIT 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JAN 1 6 2018

Filed

ROSA JUNQUEIRO, CLERK

DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN JOAQUIN

SOUTH SAN JOAQUIN IRRIGATION
DISTRICT, a California irrigation district,

Plaintiff,

vs.

PACIFIC GAS AND ELECTRIC
COMPANY, a California corporation; FIRST
INTERSTATE BANK OF CALIFORNIA, a
California corporation; DOES 1-1000; and
ALL PERSONS UNKNOWN CLAIMING
AN INTEREST IN THE PROPERTY,

Defendants.

Case No. STK-CV-UED-2016-0006638

(Related to Case No.
STK-CV-UJR-2015-0001266)

Assigned for All Purposes to:
Hon. Carter Holly (Dept. 10B)

Complaint Filed:      July 7, 2016
Trial Date:           Vacated

[~~PROPOSED~~] JUDGMENT

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319690866.1

[PROPOSED] JUDGMENT

1        A.     This proceeding was commenced on July 7, 2016 by plaintiff South San

2 Joaquin Irrigation District ("SSJID") by the filing of a complaint in eminent domain (the

3 "Eminent Domain Action"). The complaint seeks an Order of Condemnation of property owned

4 by defendant Pacific Gas and Electric Company ("PG&E"), consisting of PG&E's electric

5 distribution system situated in the County of San Joaquin, State of California, which serves

6 customers within a 112-square mile portion of San Joaquin County (the "Property"). SSJID

7 sought to acquire the Property as part of its project to become the retail electric provider for this

8 area.

9        B.     Prior to the commencement of the Eminent Domain Action, on February

10 13, 2015, PG&E commenced a proceeding in San Joaquin County Superior Court entitled *Pacific*

11 *Gas and Electric Company v. San Joaquin Local Agency Formation Commission, et al.*, under

12 Case No. 39-2015-00321743-CU-JR-STK (reassigned Case No. STK-CV-UJR-2015-001266),

13 against San Joaquin Local Agency Formation Commission ("SJ LAFCo") and SSJID, among

14 others, to determine the validity of SJ LAFCo's conditional approval of SSJID's proposal to enter

15 the retail electric business through its acquisition of the Property (the "SJ LAFCo Action").

16        C.     By Order dated July 29, 2016, the Court in the SJ LAFCo Action ordered

17 that the Eminent Domain Action be deemed related to the SJ LAFCo Action, and both cases were

18 assigned for all purposes to the Hon. Carter P. Holly.

19        D.     On September 12, 2016, PG&E's filed its Answer in the Eminent Domain

20 Action, in which it pleaded at paragraph 12 a defense pursuant to Code Civ. Proc. §1250.360(h)

21 that SSJID failed to obtain valid approval from SJ LAFCo for its proposal to provide retail

22 electric service because the conditional approval issued by SJ LAFCo was procedurally and

23 substantively defective, as alleged in the SJ LAFCo Action.

24        E.     Pursuant to a November 1, 2016 Stipulation and Order Re: Paragraphs 9,

25 10 and 12 of Pacific Gas and Electric Company's Answer and South San Joaquin Irrigation

26 District's Demurrer and Motion to Strike, the parties agreed and the Court ordered that because

27 issues raised in Paragraphs 9 and 12 in PG&E's Answer were being litigated in the SJ LAFCo

28 Action, those issues "shall not be relitigated or tried . . . nor shall any discovery be taken in" the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319690866.1            1

[PROPOSED] JUDGMENT

1    Eminent Domain Action "pertaining to such issues." Instead, the parties agreed and Court
2    ordered that "the issues pertaining to Paragraphs 9 and 12 in PG&E's Answer have been and
3    continue to be litigated in the SJ LAFCo Action, and the determination of those issues in the SJ
4    LAFCo Action shall be binding and determinative of the issues pertaining to Paragraphs 9 and 12
5    of PG&E's Answer in this eminent domain action."

6           F.     On October 31, 2017, the Court entered its Judgment After Court Trial in
7    favor of PG&E in the SJ LAFCo Action. The Judgment holds that Condition No. 2 of
8    SJ LAFCo's conditional approval requires: (1) an unconstitutional payment of property taxes by a
9    tax exempt entity; and (2) an unconstitutional gift of public funds for purposes beyond SSJID's
10   particular public purpose. On November 21, 2017, SSJID filed its Notice of Appeal from the
11   October 31, 2017 Judgment in the SJ LAFCo Action.

12          G.     Based on the Court's entry of the Judgment in the SJ LAFCo Action, on
13   November 27, 2017, PG&E filed its Motion to Dismiss the Eminent Domain Action pursuant to
14   Code Civ. Proc. §§1250.360(h), 1260.040 and 1260.120(c). The Motion to Dismiss was heard on
15   January 4, 2018. After considering the briefs and supporting materials filed by the parties, and
16   after hearing oral argument, the Court granted the Motion to Dismiss.

17          NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND
18   DECREED that:

19          1.     SSJID does not have the right to take any of the Property it seeks to take
20   from PG&E in this proceeding and, therefore, SSJID shall take nothing pursuant to its Complaint
21   filed herein. SSJID's Complaint shall be, and hereby is, dismissed pursuant to Code Civ. Proc.
22   §1260.120(c)(1).

23
24
25
26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319690866.1                                    2
                           [PROPOSED] JUDGMENT

Case: 19-30088   Doc# 6083   Filed: 03/04/20   Entered: 03/04/20 18:49:02   Page 131
                                    of 148

1    2.    PG&E's recovery of its costs and litigation expenses, if any, pursuant to

2    Code Civ. Proc. §1268.610 shall be determined at a later date as set forth in the Stipulation and

3    Order Re: Motion for Recovery of Litigation Expenses entered on January 6 , 2018.

4

5

6    Dated:  January 16, 2018

7                                                    JUDGE OF THE SUPERIOR COURT OF
                                                     SAN JOAQUIN COUNTY  CARTER P. HOLLY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
319690866.1                                 3
                              [PROPOSED] JUDGMENT

Case: 19-30088    Doc# 6083    Filed: 03/04/20    Entered: 03/04/20 18:49:02    Page 132
                                    of 148

# EXHIBIT 8

# Appellate Courts Case Information

## 3rd Appellate District

*Court data last updated: 03/03/2020 09:15 AM*

## Docket (Register of Actions)

**South San Joaquin Irrigation District v. Pacific Gas and Electric Company**
**Case Number C086319**

| Date | Description | Notes |
|------|-------------|-------|
| 01/22/2018 | Notice of appeal lodged/received. | Filed in the trial court on 01/18/18. Eminent domain. |
| 01/25/2018 | Letter to counsel advising of due date of Civil Case Information Statement. | CCIS and AMS due: 02/09/18 |
| 01/25/2018 | Respondent notified re CAMS. | RMS due 10 days after AMS. |
| 01/29/2018 | Appellant's mediation statement filed. | |
| 01/29/2018 | Civil case information statement filed. | |
| 02/08/2018 | Respondent's mediation statement filed. | |
| 02/13/2018 | Case ordered not eligible for mediation. | BUTZ, Acting P.J. |
| 02/13/2018 | Letter sent to counsel re: | Appeal not selected for mediation. |
| 02/26/2018 | Appellant's notice designating record on appeal filed in trial court on: | 2/21/2018. Designating an appendix under rule 8.124 with RT. |
| 04/11/2018 | Reporter's transcript filed. | 5 vols. electronic RT (98 pp.); AAO due: 5/21/2018 |
| 04/11/2018 | Letter sent advising record on appeal has been filed. | AAO due: 5/21/2018. |
| 04/16/2018 | Association of attorneys filed for: | Horvitz $ Levy LLP with Manatt, Phelps & Philips LLP for Pacific Gas and Electric Company. |
| 04/16/2018 | Stipulation of extension of time filed: | |
| 07/19/2018 | Request for judicial notice filed. | by appellant. Material attached. |
| 07/20/2018 | Filed: | by appellant manual filing notice of appellant's appendix volumes 1 through 6. |
| 07/24/2018 | Appellant's appendix filed. | 6 vols. electronic appendix (1495 pp); RB due: 10/22/2018 |

| | | |
|---|---|---|
| 07/19/2018 | Appellant's opening brief. | Plaintiff and Appellant: South San Joaquin Irrigation District<br>Attorney: Margaret Mary O'Laughlin |
| 07/24/2018 | Letter sent advising record on appeal has been filed. | RB due: 10/22/2018 |
| 08/02/2018 | Opposition filed. | Respondent's to appellant's request for judicial notice. |
| 08/09/2018 | Request for judicial notice denied. | Appellant South San Joaquin Irrigation District's request for judicial notice is denied. The material attached to the request will be disregarded. MAURO, Acting P.J.(MuRe) |
| 08/28/2018 | Motion filed. | By respondent Pacific Gas & Electric Company motion to consolidate appeals for argument and decision. |
| 09/12/2018 | Opposition filed. | by Appellant to motion to consolidate appeals for argument and decision. |
| 09/18/2018 | Order filed. | Decision on respondent Pacific Gas & Electric Company's request to consolidate appellate case numbers C086319 and C086008 for argument and decision is deferred pending calendaring and assignment of the panel. RAYE, P.J. |
| 10/15/2018 | Requested - extension of time. | Respondent to 12/21/2018 to file RB. |
| 10/11/2018 | Granted - extension of time. | Respondent granting extension to 12/21/2018 to file RB. |
| 12/20/2018 | Requested - extension of time. | Respondent Pacific Gas and Electric Company to 1/22/2019 to file RB. |
| 12/19/2018 | Granted - extension of time. | Respondent granting extension to 1/22/2019 to file RB. RAYE, P.J. |
| 01/28/2019 | Request for judicial notice filed. | by respondent with material attached. |
| 01/30/2019 | Ruling on request for judicial notice deferred | Pending calendaring and assigmnet of the panel. RAYE, P.J. |
| 01/28/2019 | Respondent's appendix filed. | 1 vol. appendix (228 pp.); ARB due: 2/20/2019 |
| 01/28/2019 | Respondent's brief. | Defendant and Respondent: Pacific Gas and Electric Company<br>Attorney: Bradley Scott Pauley |
| 02/14/2019 | Stipulation of extension of time filed: | |
| 04/17/2019 | Filed: | Respondent's Notice of Bankruptcy Filing and Imposition of Automatic Stay. |
| 04/22/2019 | Bankruptcy proceedings filed - matter stayed. | Letter acknowledging the stay and request status of bankruptcy by: 10/21/19. |
| 10/16/2019 | Filed letter from: | Respondent indicating the bankruptcy proceedings are ongoing and the automatic stay of the pending appeal remains in effect. |

**Click here** to request automatic e-mail notifications about this case.

# EXHIBIT 9

RESOLUTION NO. 16-05-E

RESOLUTION OF NECESSITY OF
SOUTH SAN JOAQUIN IRRIGATION DISTRICT
DETERMINING THAT THE PUBLIC INTEREST AND NECESSITY
REQUIRE THE ACQUISITION OF PACIFIC GAS AND ELECTRIC COMPANY'S
ELECTRIC DISTRIBUTION SYSTEM
AND DIRECTING THE FILING OF EMINENT DOMAIN PROCEEDINGS

WHEREAS, the South San Joaquin Irrigation District's ("SSJID" or the "District") proposed Retail Electric Project is being undertaken to provide retail electric service to the public, within the service territory of SSJID which includes the cities of Ripon, Escalon, and Manteca (hereinafter the "Project");

WHEREAS, the Project will include various benefits, including local control, public transparency, and electric service rates projected to be 15% lower than those of Pacific Gas and Electric Company's ("PG&E");

WHEREAS, the San Joaquin Local Agency Formation Commission has conditionally approved the Project by way of motion on December 11, 2014 and by way of Resolution 1327, passed and adopted on March 12, 2015;

WHEREAS, by this Resolution of Necessity SSJID proposes to acquire PG&E's electric distribution system located within SSJID's service territory for a proposed public use, the provision of electric service to users of PG&E's electric distribution system, as further described in Exhibit "A" attached hereto and made a part hereof by this reference (the "Property");

WHEREAS, the District is authorized to acquire the Property and exercise the power of eminent domain for the public use and Project described herein, pursuant to and in accordance with Article 1, Section 19 of the California Constitution, the California Eminent Domain Law, Code of Civil Procedure Sections 1230.010 *et seq.*, and Sections 22115 and 22456 of the California Water Code;

23

WHEREAS, pursuant to the provisions of Section 1245.235 of the California Code of Civil Procedure, SSJID's Board scheduled a public hearing on this proposed Resolution of Necessity for Tuesday, June 28, 2016 at 9:00 a.m. at the City of Ripon Council Chambers, 259 N. Wilma Avenue, Ripon, California and notice has been duly given to PG&E, the owner of the Property herein, who has been given a reasonable opportunity to appear and be heard on the matters referred to in Section 1240.030 of the Code of Civil Procedure before SSJID's Board of Directors at the time and place set forth in said notice, regarding the matters specified therein; and

WHEREAS, said hearing having been held by the Board of Directors, the Board may now adopt a Resolution of Necessity pursuant to Code of Civil Procedure Section 1240.040.

NOW, THEREFORE, IT IS FOUND, DETERMINED AND ORDERED by the Board of Directors of SSJID as follows:

1.      The recitals contained herein are true and correct.

2.      Upon examination of the alternatives, the District requires the Property for the Project.

3.      The District is authorized to acquire the Property and exercise the power of eminent domain to and in accordance with Article 1, Section 19 of the California Constitution, the California Eminent Domain Law, Code of Civil Procedure Sections 1230.010 *et seq.*, and Water Code Sections 22115 and 22456.

4.      Findings. The District hereby finds and determines each of the following:

150125829A1

24

(a)     The public interest and necessity require the Project.

(b)     The Project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury.

(c)     The Property as defined in Exhibit "A" is necessary for the Project.

(d)     The public use set forth herein by the District of PG&E's electric distribution system constitutes a more necessary public use within the meaning Code of Civil Procedure Sections 1240.610 and 1240.650 than the use to which the property is appropriated by PG&E.

5.      The offer required by Section 7267.2 of the Government Code, together with the accompanying statement of the amount established as just compensation, for the acquisition of the Property, has been made to PG&E the owner of record, which offer and statement were in a format and contained the information required by Government Code Section 7267.2.

6.      SSJID has complied with all conditions and statutory requirements, including those prescribed by the California Environmental Quality Act (Pub. Res. Code § 21000, *et seq.*) and that are necessary for approval and adoption of the Project. The San Joaquin Local Agency Formation Commission, in approving SSJID's change of organization to provide retail electric service in its service territory, certified a Final Subsequent

1601202941

25

Environmental Impact Report (State Clearinghouse No. 2005102018)
on December 11, 2014 for the Project that fully analyzes and discloses
the potential environmental impacts associated with SSJID becoming
an electric service provider within its service territory by the acquisition
of PG&E's electric distribution system.

7.    All conditions and statutory requirements necessary to exercise the
power of eminent domain ("the right to take") to acquire the Property
have been complied with by SSJID.

8.    Legal counsel for SSJID is hereby authorized and directed to institute
and conduct to conclusion eminent domain proceedings to acquire the
Property and to take such actions that counsel deems advisable or
necessary in connection therewith.  Counsel is further authorized to
correct any errors or to make or agree to non-material changes in the
description of the property interests to be acquired that are deemed
necessary for the conduct of the condemnation action.

   PASSED AND ADOPTED by South San Joaquin Irrigation District Board of
Directors on June 28, 2016, by the following vote:

AYES:       DIRECTORS:  HOLMES HOLBROOK KUIL KAMPER ROOS
NOES:       DIRECTORS:
ABSENT:     DIRECTORS:

ROBERT A. HOLMES, President
SSJID Board of Directors

1501255x1

26

# EXHIBIT 10

**STAFF REPORT**

**RESOLUTION OF NECESSITY HEARING FOR**

**SSJID'S RETAIL ELECTRIC PROJECT - - PROPERTY ACQUISITION**

### b.     Public Benefits of the Proposed Retail Electric Project

The District's reason for expanding its service to include retail electric service is to provide significant public benefits to its ratepayers and to the local communities within its boundaries.

These public benefits include the following:

- **Local Control and Accountability:**  SSJID will provide local control and accountability to its customers because ownership, maintenance and operation of the electrical system will be entrusted to locally elected officials who are directly accountable to voters in the communities served by SSJID. [2] SSJID's retail electric customers will be able to entrust electric service reliability and safety, policies, rates and practices to those same locally elected officials. [3]

- **Accessibility and Transparency**: SSJID directors and management are directly accessible by individual ratepayers to hear and discuss ratepayer concerns.  As a public agency, SSJID is subject to the Brown Act[4] and Public

---

[2] In contrast, PG&E is an investor-owned utility ("IOU").  As an IOU, PG&E is managed as a private enterprise.  Shareholders, or investors, are owners of the company and decision-making occurs "in house" with little or no public input.  PG&E is not subject to public disclosure and "sunshine laws" (i.e., California Constitution art. I, Sec. 3(b) establishing freedom of information) that govern public bodies like SSJID.

[3] PG&E customers are not involved in the decision-making process related to PG&E's services or rate setting.  The California Public Utilities Commission ("CPUC") regulates and sets PG&E rates on a statewide basis.  Customers who want to have a voice in the provision of service or rate setting process must participate in a complex, litigation-like "rate making" process at the CPUC in San Francisco.  A rate case before the PUC is a very technical and time consuming process that effectively precludes individual customers from participating.

[4] The Ralph M. Brown Act (California Government Code section 54950, *et seq.*) was enacted in 1953 and guarantees the public's right to attend and participate in meetings of local legislative bodies.

Records Act[5], thereby increasing transparency and public participation. SSJID's Board is also subject to Proposition 218[6]; Proposition 26[7]; and the Political Reform Act of 1974 (Gov't Code §§ 81000, *et seq.*).  SSJID customers who want to have a voice in decisions that set rates or policy can attend regular SSJID Board meetings in their community and participate in the process without having to travel to San Francisco and navigate the byzantine CPUC system, as PG&E customers would have to attempt. Ultimately, the Board answers to the public through the election process. PG&E, on the other hand, answers to its stockholders, not to the local customers SSJID intends to serve.

- **Reduced Electric Rates:**  One of the intended benefits of the Proposed Project is a reduction of customers' electric rates.  SSJID's rates will be based on the cost of providing services, and SSJID expects to provide rates 15% lower than PG&E. [8]  The experts retained by the District have determined that

---

[5] The California Public Records Act (California Government Code section 6250, *et seq.*) was enacted in 1968 and requires the inspection or disclosure of governmental records to the public upon request, unless excepted by law.

[6] Adopted by voters in November 1996, Proposition 218 (a.k.a. the Right to Vote on Taxes Act) amended the California Constitution (at article XIIIC) to require that all taxes imposed by a local government be approved by a vote of the local electorate.

[7] Proposition 26, adopted by voters in 2010, amended article XIIIC to provide a more detailed definition of what types of charges constitute a "tax" requiring voter approval.  The term "tax" means "any levy, charge, or exaction of any kind imposed by a local government," unless that "levy, charge, or exaction" fits into one of seven enumerated exceptions.

[8]  A condition of LAFCo's approval is that, "After acquisition costs and exit fees have been determined and the terms and conditions of financing have been approved SSJID shall prepare a comprehensive economic report analyzing the District's proposed retail rates and the calculation of the percentage rate savings from PG&E's retail rates. . . . . SSJID shall not take final action to acquire the PG&E system and implement retail electric service until it has held a public meeting advertised in the same newspapers as those utilized by San Joaquin LAFCo in this proceeding.  The notice shall state the action to be taken and shall specifically indicate the proposed level of discount for the first 10 and 30 years of operation based upon an updated financial analysis demonstrating and supporting the financial ability of the District to support such a discount.  SSJID shall not commence providing retail electric service unless the District's Board adopts a finding at the hearing based on substantial evidence that it can provide retail electric service at a 15% discount from PG&E's forecasted rates then filed with CEC for the first 10 years."  Condition No. 4 to SJ LAFCo Approval.

the District can provide retail electric rates that are 15% lower than PG&E's. Some of the reasons for this include:

- o  SSJID does not pay dividends to shareholders;

- o  SSJID has fewer layers of management and its upper management is paid substantially less than PG&E's;

- o  Its rates are limited to the cost of services without a profit margin and are set by the District's locally-elected Board in public meetings;

- o  As a public entity of the State of California, SSJID does not pay taxes;

- o  SSJID is eligible to issue debt that is exempt from federal income tax, making it cheaper to invest in the system's infrastructure.

- **Improving and stimulating the local economy**:  On a national basis, investor-owned utility customers pay average electricity rates that are about 13% more than those paid by public power customers.[9]  In California, an investor-owned utility customer on average pays 16.5% more per kWh than a public power customer.[10]  SSJID's lower rates would provide economic benefit to the communities within the service areas and, due to an increase in disposable income which will increase spending, create additional jobs. [11]

  - o  SSJID's plan will provide additional economic stimulus to the local communities beginning with an annual amount of approximately $15.5 Million commencing in the first year of operation and increasing

---

[9] American Public Power Association 2013 Statistical Report.

[10] 15.5¢ vs. 13.3¢; APPA 2015-2016 Annual Directory and Statistical Report, citing Department of Energy Information Administration, Form EIA-816, 2013.

[11] SSJID Municipal Services Review Revised 9/9/2014, p. 21; *see also* evaluation and opinion of Dr. Jeffrey Michael on the benefits to the local economy, *infra* at Section II.h.

thereafter [12];

o   Increasing jobs and job opportunities in the local communities (*see* discussion in Section II.h, *infra)*;

o   More equitably distributing the benefits of SSJID's co-ownership of the Tri-Dam Project and Tri-Dam Power Authority (collectively "Tri-Dam")[13] and other low cost hydroelectric generation facilities.[14]  Moreover, these assets will help protect SSJID from future volatility in electric prices and other potential uncertainties;

o   Utilizing SSJID's significant cash reserves to provide the greatest long-term benefit to the local ratepayers and communities SSJID serves.

- **Customized Public Benefits Spending:**  SSJID will customize public benefits programs to the particular needs of the local communities it serves. The SSJID Board would be able to determine the funding level for these public purpose programs and select the programs that best address and are most responsive to the specific needs of the customers in this community and implement the programs with locally-based personnel. PG&E cannot do this, as it establishes priorities based on the needs of PG&E's entire Northern California service area.

---

[12] The first year's savings assumes that 2017 is the first year of operation with a minimum 15% rate discount (at page 32, Table 1, *infra*).

[13] The Tri-Dam Project refers to the three dams, Donnells, Beardsley, and Tulloch, and associated power houses and facilities with installed capacity of approximately 110MW owned and operated by SSJID and OID under a joint exercise of powers agreement.  SSJID is 50 percent owner of the Tri-Dam Project.  The Tri-Dam Power Authority is a joint powers authority that owns 19MW of generating capacity at the Sand Bar Project.  SSJID is also a 50 percent owner of the Tri-Dam Power Authority.

[14] In addition to its ownership interest in the Tri-Dam Project and Tri-Dam Power Authority, SSJID owns two hydroelectric generation projects with 8MW of capacity at the Woodward Reservoir.

Conditions and approved SSJID's Application. [21] On December 11, 2014, the LAFCo Commissioners voted to certify the EIR, approved the annexation and adopted the MSR.

LAFCo found that the Application sought authorization to add retail electric service to those services provided by SSJID and that SSJID had the administrative, technical and financial ability, as well as "sufficient revenues" to provide retail electric service in its service territory, as required by Government Code section 56824.14. LAFCo also found that SSJID's retail electric project would provide public benefits including, "a reduction in retail electrical energy rates, more disposable income for local residents to spend with local merchants, the enhanced attractiveness of the area to new employment generating businesses due to lower electrical rates, a more diversified local tax base due to new business generation and improved local control over electrical rates and service." [22] LAFCo further concluded that determination of whether SSJID could achieve the 15% discount was not a matter that fell within the ambit of authorization sought by SSJID nor was it within the authority of LAFCo to make such a determination.

On March 12, 2015, LAFCo passed and adopted Resolution No. 1327, authorizing the change of organization for SSJID's proposal to provide retail electric service. LAFCo's findings and its conditions of approval were incorporated by reference in the resolution. (*See* Exhibit O, LAFCo Resolution No. 1327.)

On February 13, 2015, PG&E filed a complaint and petition in San Joaquin Superior Court titled "*Pacific Gas & Electric v. San Joaquin Local Agency Formation Commission, et al.*" SSJID is named as the real-party-in-interest in that case. PG&E seeks judicial review of LAFCo's findings, conditions and approval of SSJID's

---

[21] SJ LAFCo's December 11, 2014 Findings and Conditions (Exhibit H).

[22] Findings 4 and 5, adopted by LAFCo on December 11, 2014.

set by the CPUC.  The CCA structure would thus continue to impose on electric consumers within SSJID's service area the very real cost and service risks and uncertainties associated with PG&E operations and CPUC regulation.

- **The CCA alternative does not empower local officials with the responsibility to ensure safety and industry-accepted levels of reliability.**  As the recent events at San Bruno and Aliso Canyon have unfortunately demonstrated, the safety and reliability performance by PG&E and the other large California utilities subject to jurisdiction by the CPUC have fallen short of the requisite levels for safe and reliable service.  The ongoing saga of regulatory, civil, and even criminal proceedings alleging PG&E's failure to comply with state and federal operating and record retention requirements, and correspondingly to appropriately test and otherwise maintain critical facilities, raises serious questions about PG&E's commitment to provide the minimum level of service and the highest and safest level of service to electric customers.  Coordinating the maintenance of the requisite levels of safety and reliability with the imperative need to control costs and minimize rates creates an inherent conflict of interest within PG&E management.  In contrast, SSJID's Proposed Project removes such conflict of interest.  The SSJID Board will have no responsibilities to its constituency that are in conflict and competition with any fiduciary obligations to investors.  SSJID's only obligation is to provide its customers the highest level of safety and reliability and at a cost-effective price.

- **A CCA structure would not transfer responsibility and accountability for electric service, rates and policies to locally-elected public officials.**  As discussed above, the Proposed Project would enable SSJID's customers, through their votes, to direct SSJID on all matters relating to power procurement; ownership, operation, maintenance, and safety of the electric distribution system; marketing; metering; billing; customer relations; labor and