WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251
*Attorneys for Debtors and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br><br>     - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                  **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(c) FOR ENTRY OF AN ORDER APPROVING DEBTORS' 2020 (I) SHORT TERM INCENTIVE PLAN; (II) LONG TERM INCENTIVE PLAN; (III) PERFORMANCE METRICS FOR THE CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PG&E CORPORATION; AND (IV) GRANTING RELATED RELIEF**<br><br>**("2020 EMPLOYEE COMPENSATION MOTION")**<br><br>Date:     March 25, 2020<br>Time:    10:00 a.m. (Pacific Time)<br>Place:   United States Bankruptcy Court<br>             Courtroom 17, 16th Floor<br>             San Francisco, CA 94102<br>**Obj. Deadline:** March 18, 2020 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a), 363(b), and 503(c) of title 11 of the United States Code (the "**Bankruptcy Code**") for entry of an order (I) approving a 2020 short term incentive plan (the "**2020 STIP**") covering the period of January 1, 2020 through December 31, 2020; (II) approving a 2020 long term incentive plan for certain more senior employees (the "**2020 LTIP**") covering the period of January 1, 2020 through December 31, 2022; (III) approving the 2020 performance metrics covering January 1, 2020 through December 31, 2020 (the "**2020 PG&E Corp. Performance Metrics**") for the performance-based equity awards for the Chief Executive Officer and President of PG&E Corp; and (IV) granting related relief.

In support of this Motion, the Debtors respectfully submit the Declaration of John Lowe, Senior Director of Total Rewards of the Utility (the "**Lowe Declaration**") and the Declaration of Lane Ringlee, Managing Partner of Pay Governance (the "**Ringlee Declaration**"), filed contemporaneously herewith.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit C.**

# TABLE OF CONTENTS

I.  JURISDICTION ................................................................6

II.  PRELIMINARY STATEMENT ................................................6

III.  BACKGROUND ................................................................8

    A.  Consistent with its Utility Peers, PG&E has Historically Provided STIP and LTIP Awards to Compensate Employees and Incentivize Company-Wide Performance ................................................................8

    B.  PG&E Redesigns its Post-Emergence Executive Incentive Compensation Plans to Comply With AB 1054 ................................................9

    C.  This Court Approves Mr. Johnson's Performance-Based Awards but Does Not Establish Performance Metrics for 2020................................11

IV.  2020 STIP - OVERVIEW OF METRICS AND WEIGHTINGS .....................12

V.  2020 LTIP – OVERVIEW OF METRICS AND WEIGHTINGS.....................15

VI.  SUMMARY OF THE KEY TERMS OF THE 2020 STIP AND 2020 LTIP .................16

VII.  SENIOR EXECUTIVE 2020 STIP AND 2020 LTIP PARTICIPANTS .........................18

    VIII.  THE 2020 PG&E CORP. PERFORMANCE METRICS FOR THE CEO PERFORMANCE-BASED AWARDS ...................................................21

IX.  BASIS FOR RELIEF REQUESTED ................................................21

    A.  The 2020 STIP and 2020 LTIP are Appropriate Under Section 363(b)(1) of the Bankruptcy Code................................................22

    B.  The 2020 STIP and 2020 LTIP are Permitted Under Sections 503(c)(1) and (2) of the Bankruptcy Code................................................24

    C.  The 2020 STIP and 2020 LTIP Satisfy Section 503(c)(3) of the Bankruptcy Code ................................................26

    D.  Conclusion ................................................28

X.  NOTICE................................................29

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alpha Natural Resources, Inc.*,
546 B.R. 348 (Bankr. E.D. Va. 2016) .................................................................. 26

*Berg & Berg Enters., LLC v. Boyle*,
178 Cal. App. 4th 1020 (2009) .............................................................................. 24

*In re Borders Grp., Inc.*,
453 B.R. 459 (Bankr. S.D.N.Y. 2011) ............................................................ 25, 27

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.*
60 B.R. 612 (Bankr. S.D.N.Y. 1986) ................................................................... 23

*In re Dana Corp.*,
358 B.R. 567 (Bankr. S.D.N.Y 2006) ........................................................ 25, 27, 28

*F.D.I.C. v. Castetter*,
184 F.3d 1040 (9th Cir. 1999) .............................................................................. 23

*In re Global Home Prods.*,
LLC, 369 B.R. 778 (Bankr. D. Del. 2007) ........................................................... 26

*In re Hawker Beechcraft, Inc.*,
479 B.R. 308 (Bankr. S.D.N.Y. 2012) .................................................................. 26

*In re Ionosphere Clubs, Inc.*,
98 B.R. 174 (Bankr. S.D.N.Y. 1989) .................................................................... 23

*In re Integrated Res., Inc.*,
147 B.R. 650 (S.D.N.Y. 1992) .............................................................................. 23

*In re Residential Capital, LLC*,
491 B.R. 73 (Bankr. S.D.N.Y. 2013) .................................................................... 27

*Scouler & Co., LLC v. Schwartz*,
2012 WL 1502762 (N.D. Cal. Apr. 23, 2012) ...................................................... 24

*Smith v. Van Gorkom*,
488 A.2d 858 (Del. 1985) ..................................................................................... 23

*In re TBR USA, Inc.*,
429 B.R. 599 (Bankr. N.D. Ind. 2010) .................................................................. 25

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Velo Holdings Inc.*,
    472 B.R. 201 (Bankr. S.D.N.Y. 2012) .................................................................. 25, 27

**Statutes**

11 U.S.C. § 101 .................................................................................................... 12, 19, 25

11 U.S.C. § 105 .............................................................................................................. 9, 10

11 U.S.C. 363 ................................................................................... 9, 10, 22, 23, 27, 29

11 U.S.C. § 503 ............................................................................... 9, 25, 26, 27, 29

28 U.S.C. § 157 ...................................................................................................................... 7

28 U.S.C. § 1334 .................................................................................................................... 7

28 U.S.C. § 1408 .................................................................................................................... 7

28 U.S.C. § 1409 .................................................................................................................... 7

**Other Authorities**

B.L.R. 5011-1 ......................................................................................................................... 7

Cal. Assembly Bill 1054 ...................................................................................................... 10

Cal. Pub. Util. Code § 8389(e)(4) ...................................................................................... 10

Fed. R. Bankr. P. 2002 ......................................................................................................... 30

Pub. Util. Code § 3292 ........................................................................................................ 11

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      JURISDICTION**

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District for the Northern District of California (the "**Bankruptcy Local Rules**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.     PRELIMINARY STATEMENT[1]**

The tragic wildfires that precipitated these Chapter 11 Cases have also precipitated a comprehensive process of transformation at PG&E.  Through substantial reforms already in progress and continued hard work, PG&E is rapidly evolving and intends to emerge from chapter 11 as a different organization with an enhanced focus on safety, customer welfare and operational excellence.

A significant part of PG&E's transformation depends on the successful implementation of ongoing improvements in its operations.  To successfully execute and implement this broad vision of a transformed PG&E, the Debtors must coordinate their thousands of employees to work in unison towards a clear set of unified goals.  As part of its goal to become an industry leader in the prudent, safe and reliable management of its electric, gas and nuclear assets, PG&E has designed new and improved, risk-based performance measures to inspire employees at all levels to focus on public and workforce safety. And while safety is a priority, PG&E also must keep a keen focus on customer welfare, reliability and affordability.

Indeed, a fundamental element of properly operating a business is providing fair, competitive, and industry-standard compensation to employees to further align employees' interests with those of the Debtors and their stakeholders.  Providing fair, competitive, and industry-standard compensation to the Debtors' employees is essential to preserve and maximize value, and is critical to the successful resolution of these Chapter 11 Cases.  As such, the 2020 STIP and 2020 LTIP are not bonus plans or programs. Rather, they are incentive based compensation plans expressly designed to incentivize all

---

[1] Capitalized terms used but not defined in this section shall have the meanings ascribed to them later in the Motion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

eligible PG&E employees to perform in line with key goals of the enterprise, and to enable those employees to realize a level of compensation competitive in the Debtors' industry.

As the Debtors have done with many other parts of their business, the Debtors have subjected their existing incentive compensation plans to a rigorous re-evaluation, and have, consistent with the requirements and intent of AB 1054, redesigned their incentive compensation plans for all eligible employees to better ensure the Debtors successfully achieve their goals.[2]  As a result, the revised proposed 2020 STIP and 2020 LTIP consist of objectively measurable, primarily outcome-based, risk reduction measures that promote customer and workforce welfare (especially public and employee safety) and financial stability.

In this regard, the PG&E Corp. Compensation Committee (the "**Compensation Committee**") currently comprised of independent directors, worked closely with PG&E's senior management, internal executive compensation professionals, outside counsel and independent consultants through an iterative and comprehensive process to formulate an executive compensation structure that complies with AB 1054.[3]  In addition, the Debtors' senior leaders worked with each operating unit to identify the appropriate categories of performance metrics, relative weightings of the metrics in calculating awards, and how achievement of the metrics will be evaluated and measured.  Specifically, the Debtors identified their most significant areas of risk and developed metrics to measure and drive risk reduction.

The Compensation Committee also worked closely with Pay Governance LLC ("**PG**"), the independent compensation consultant to the Compensation Committee, to review the overall design of the awards, to assess the 2020 STIP and 2020 LTIP in relation to plans of similar companies, including the incentive targets, award amounts and opportunities, total plan costs and other design elements. Additionally, the risk-related performance metrics in both the 2020 STIP and the 2020 LTIP were informed by PG&E's unique Enterprise and Operational Risk Management Program, which incorporates

---

[2] AB 1054 governs the Utility's post-emergence incentive compensation plans for its senior executives, but not its broad-based employees.

[3] The Compensation Committee is currently comprised of three independent directors, Meridee A. Moore (the Chair), William L. Smith, and Alejandro D. Wolff, all of whom joined the Boards of PG&E Corp. and the Utility in 2019 and collectively have significant operating, compensation, and board experience.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

facets of the California Public Utility Commission's (the "**CPUC**") Safety Model Assessment Proceeding and Risk Assessment Mitigation Phase proceeding.

PG&E believes, as a result of the foregoing process, its redesigned proposed 2020 STIP and 2020 LTIP will not only incentivize performance to produce outcomes that meet the letter and spirit of AB 1054, but will serve as a model for employee compensation plans in the industry.

Further, the proposed 2020 STIP and 2020 LTIP were formulated to provide the opportunity for employees to achieve market-based compensation, but only if the incentive targets are achieved. The plans promote customer and workforce welfare and safety as PG&E's highest priority and the foundation of its future success. The Debtors believe the proposed 2020 STIP and 2020 LTIP will drive positive change while compensating key talent (if the performance metrics are archived) and improving employee morale by appropriately incentivizing their work force. The Debtors also contend that the metrics and measures are challenging, but achievable, and that adoption and implementation is a sound exercise of the Debtors' business judgment.

## III. BACKGROUND

### A. Consistent with its Utility Peers, PG&E has Historically Provided STIP and LTIP Awards to Compensate Employees and Incentivize Company-Wide Performance

For over 30 years, the Debtors have offered an annual short-term incentive compensation plan ("**STIP**") to a broad group of their employees (including senior officers) whereby annual incentive awards are linked to the Debtors' achievement of certain key performance metrics. Historically, the Debtors also maintained an equity-based long-term incentive plan ("**LTIP**") that covered approximately 400 senior employees, who also participated in the STIP.[4] The STIP and LTIP, as applicable, represent important components of each participant's total compensation and are typical in the utility industry and across all industries.

On April 29, 2019, the Court approved the Debtors' proposed 2019 short-term incentive plan, as amended (the "**2019 STIP**"), for eligible non-insider employees pursuant to that certain *Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(c) (i) Approving Short-Term Incentive Plan and (ii) Granting*

---

[4] The Debtors did not issue any LTIP equity grants in 2019, but incorporated a portion of the LTIP value into the Court-approved 2019 STIP for certain eligible participants.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Related Relief* [Docket No. 1751]. As discussed in detail in the *Corrected Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(c) for Entry of an Order (i) Approving Short-Term Incentive Plan and (ii) Granting Related Relief* [Docket No. 806], filed on March 8, 2019, the 2019 STIP was consistent with the Debtors' historical practice of offering short-term incentive compensation to a broad group of their employees linked to the achievement of certain key performance metrics.[5]

On June 19, 2019, the Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(c) for Entry of an Order (I) Approving Debtors' Incentive Program for Certain Key Employees and (II) Granting Related Relief* [Docket No. 2664] (the "**2019 KEIP Motion**") seeking approval of a key employee incentive program for 2019 based upon the Debtors satisfying certain safety, financial, and operational metrics (the "**2019 KEIP**") consistent with the metrics approved by the Court in connection with the 2019 STIP.[6] On August 30, 2019, the Court issued a ruling denying approval of the 2019 KEIP Motion.

**B.     PG&E Redesigns its Post-Emergence Executive Incentive Compensation Plans to Comply With AB 1054**

On July 12, 2019, Governor Newsom signed into law Assembly Bill 1054 ("**AB 1054**"), which, among other things, establishes a state-wide fund to pay certain claims arising from future wildfires (the "**Go Forward Wildfire Fund**") and addresses the issue of electrical utility executive compensation. Specifically, AB 1054 requires that executive compensation be determined by a mix of safety and financial considerations. To obtain a safety certification, a utility must show, among other things, that it has "established an executive compensation structure approved by the [Wildfire] [D]ivision [that is] structured to promote safety as a priority and to ensure public safety and utility financial stability." Cal. Pub. Util. Code § 8389(e)(4). Without a safety certification, an electric utility will have difficulty recovering costs from the Go Forward Wildfire Fund. Over the past several months, the Debtors worked closely with the Compensation Committee and their advisors to significantly redesign

---

[5] The targets for the 2019 STIP and 2019 LTIP were approved by the previous PG&E Corp. Compensation Committee prior to the filing of these Chapter 11 Cases.

[6] The proposed 2019 KEIP further emphasized safety compared to the 2019 STIP by subjecting the 2019 KEIP awards to a downward modifier (recommended by the then newly appointed Compensation Committee) of -50% or -25% if the Debtors failed to meet threshold or target performance, respectively, of the metrics most closely aligned with wildfire safety.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

their executive compensation structure to comply with AB 1054's standards.

To consider the ratemaking and other implications that will result from confirmation of the *Debtors' and Shareholder Proponents' Chapter 11 Plan of Reorganization* dated January 31, 2020 (as may be further amended, supplemented or modified, the "**Plan**") and other regulatory approvals necessary to resolve the Chapter 11 Cases, including the Utility's compliance with AB 1054, the CPUC commenced Investigation (I.) 19-09-016, Order Instituting Investigation on the Plan (the "**Plan OII**"). As part of the Plan OII, on January 31, 2020, the Utility submitted prepared testimony covering, among other things, its significantly redesigned executive compensation plans for the post-chapter 11 emergence period, which PG&E believes will incentivize behavior to produce outcomes that will not only meet AB 1054's requirements, but result in a new compensation design path for the utility industry.[7]

As an administrative proceeding, the Plan OII affords parties the opportunity to be heard and comment on any CPUC regulatory approvals required pursuant to Public Utilities Code section 3292 in order for PG&E to participate in the Go Forward Wildfire Fund, including executive compensation matters. The CPUC expects to render its Plan OII decision sufficiently in advance of the June 30, 2020 statutory deadline contained in AB 1054 to allow the Bankruptcy Court to address and approve any modifications made to the Plan in connection with the CPUC's orders. In the event the CPUC also requires certain modifications to the Debtors' executive compensation plans, the Debtors will modify the 2020 STIP and 2020 LTIP accordingly.

As described in more detail below, the Debtors, the Compensation Committee and the Board of Directors of PG&E Corp. (the "**PG&E Corp. Board**") view compensation as an important tool for incentivizing behaviors that can drive desired outcomes and priorities. The mandates under AB 1054 have given the Debtors the opportunity to assess and redesign PG&E's incentive compensation plans, not only for the Senior Executives (as defined below) but for the broad employee base, thereby aligning employee performance across the company with key goals and the requirements of AB 1054.

---

[7] On February 18, 2020, the CPUC issued a ruling setting forth certain proposals related to the Debtors' proposed post-emergence executive compensation structure that may be the subject of further written submissions later this month. This Motion takes into account such proposals with respect to PG&E's Senior Executives (as defined below).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Debtors believe the post-emergence executive compensation plans as submitted to the CPUC contain the appropriate incentives to transform the Utility into a utility of the future and, as such, should apply to all employees eligible for incentive compensation. Accordingly, the Debtors seek to adopt and implement for the entire 2020 calendar year the 2020 STIP and 2020 LTIP. These plans cover twelve (12) "insiders" within the meaning of section 101 of the Bankruptcy Code (the "**Senior Executives**"),[8] including the Chief Executive Officer ("**CEO**") of the Utility (but excluding the CEO of PG&E Corp.), and eligible employees in the broader workforce. More specifically, consistent with historical practice, the new proposed 2020 STIP covers approximately 10,000 employees, including the Senior Executives, and the new proposed 2020 LTIP covers approximately 400 of the Debtors' most senior employees, including the Senior Executives.

C.   **This Court Approves Mr. Johnson's Performance-Based Awards but Does Not Establish Performance Metrics for 2020**

Since May 2, 2019, William D. Johnson, a highly respected executive with more than a decade of combined chief executive officer experience and an indisputable safety record, has led PG&E Corp. as its new CEO and President. Since his appointment, Mr. Johnson has been and remains responsible for leading PG&E's 23,000 employees in a transformation of its diverse operations to better provide safe and reliable service to its 15 million customers. In connection with his appointment, the Debtors sought and this Court granted approval of the terms of Mr. Johnson's employment for a three-year period, including the terms of his performance-based incentive compensation.[9]

On August 14, 2019, the Court determined that the terms of Mr. Johnson's proposed employment, including his compensation, were reasonable and reflected a sound exercise of the Debtors' business judgment. Under the Court-approved terms of Mr. Johnson's employment, Mr. Johnson's incentive compensation for a three year period consists of (i) time-based restricted stock units, (ii) performance-based shares ("**PSs**") and (iii) performance-based stock options ("**Options**" and

---

[8] The Senior Executives include "executive officers" of the Utility as defined by AB 1054, with the exception of the Corporate Secretary and Treasurer.
[9] *See Order Granting Debtors' Motion To Approve Terms Of Employment For New CEO, dated August 14, 2019* [Docket No. 3546].

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

together with the PSs, the "**CEO Performance-Based Awards**"). The performance metrics and weightings applicable to his 2019 CEO Performance-Based Awards aligned with the metrics and weightings of the 2019 STIP. Pursuant to Mr. Johnson's approved employment terms, the 2020 PG&E Corp. Performance Metrics applicable to the 2020 CEO Performance-Based Awards were to be determined at a later time.

## IV.   2020 STIP - OVERVIEW OF METRICS AND WEIGHTINGS

Participants in the proposed 2020 STIP ("**STIP Participants**") are largely comprised of employees who were eligible to participate in the 2019 STIP, many of whom (1) have specialized training and experience directly related to utility management and regulatory compliance, (2) work across various departments within the Debtors' organization, including operations, engineering, customer organization, finance, human resources, information technology, and legal, and (3) have developed valuable institutional knowledge regarding the Debtors' ongoing business operations. As previously stated, the 2020 STIP covers approximately 10,000 employees, including the Senior Executives (but excluding Mr. Johnson, the PG&E Corp. CEO).

Safety is of primary importance to the Debtors, and as such, the proposed 2020 STIP's performance metrics are weighted predominately towards safety. The majority of the metrics are tied to outcome-based results and all of the metrics are objectively defined, measurable, enforceable, and auditable. For example, the Reportable Fire Ignitions metric measures reportable fire incidents where: (i) an ignition is associated with the Utility's transmission and/or distribution power lines; (ii) something other than PG&E facilities burned; and (iii) the fire traveled more than one meter from the ignition point. For the few specific metrics where outcome-based results are impractical or inapplicable, the Debtors constructed metrics that measure objective risk mitigation activities. For example, the Gas Operations Customer Response metric is designed to measure the results of PG&E's mitigation of public safety risks and its efforts to increase reliability of service, by promoting prompt responses to customer calls or notifications reporting a gas odor or gas emergency. It measures the number of minutes from the time the Utility is notified to the time Utility personnel or another qualified first responder arrives onsite to the location (subject to certain exclusions, such as multiple calls for the same event, or calls relating to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

a planned gas release).

For eligible STIP Participants above the senior director level, including the Senior Executives, and members of support organizations, the customer and workforce welfare performance metrics (which are designed to prioritize public and employee safety) will be weighted 75% and the financial stability performance metric, will be weighted 25%. For eligible STIP Participants at the senior director level and below who are employed in one of the three main operating units of the Company, Electric Operations, Gas Operations and Generation, the weightings of the performance metrics will be adjusted to provide a 40% weighting to metrics for which employees in the particular operational unit will have greater influence and control to achieve, also known as the "Line of Sight" weightings. The remaining 60% weighting is allocated to the performance metrics that apply across the entire enterprise, including customer and workforce welfare and financial stability. The balance between the "Line of Sight" weightings and enterprise-wide weightings was designed to provide greater incentives to "Line of Sight" employees to achieve outcomes for which they have greater visibility into and influence over, while continuing to promote coordinated collaboration across the entire company to achieve enterprise-wide customer and workforce welfare and financial stability goals.

A breakdown of the metrics and the various sets of weightings is provided below:

| Category | Proposed Measures | Proposed Weightings | | | |
|---|---|---|---|---|---|
| | | PG&E Corp. CEO, Participants Above Senior Director Level (including Senior Executives) & Support Organizations | Line of Sight Units | | |
| | | | Electric | Gas | Generation |
| **Customer and Workforce Welfare – (Prioritizing Public and Employee Safety) (75%)** | **Electric Operations** | 25% | 30% | 12% | 10% |
| | Reportable Fire Ignitions (HFTD) | 10% | 12% | 5% | 4% |
| | Electric Asset Failure | 10% | 10% | 5% | 4% |
| | Distribution Circuit Sectionalization | 5% | 6% | 2% | 2% |
| | **Gas Operations** | 15% | 12% | 35% | 6% |
| | Large Overpressure Events | 7.5% | 6% | 17.5% | 3% |
| | Total Dig-Ins Reduction | 7.5% | 6% | 17.5% | 3% |
| | **Generation** | 10% | 6% | 6% | 40% |
| | Safe Dam Operating Capacity (SDOC) | 5% | 3% | 3% | 20% |
| | DCPP Reliability and Safety Indicator | 5% | 3% | 3% | 20% |
| | **Additional Public Safety & Reliability** | 10% | 12% | 7% | 4% |
| | Gas Customer Emergency Response (minutes) | 3.33% | 2% | 5.0% | 1.33% |
| | 911 Emergency Response | 3.33% | 5% | 1% | 1.33% |
| | Customers Experiencing Multiple Interruptions (CEMI) | 3.33% | 5% | 1% | 1.33% |
| | **Workforce Safety** Days Away, Restricted & Transferred (DART) Rate | 15% | 15% | 15% | 15% |
| **Financial Stability (25%)** | **Non-GAAP Core Earnings Per Share** | 25% | 25% | 25% | 25% |

| | Electric | Gas | Generation |
|---|---|---|---|
| Line of Sight | 40% | 40% | 40% |
| Enterprise-Wide | 60% | 60% | 60% |

STIP Participants will also be subject to an individual performance modifier ("**IPM**") after the company score is calculated, whereby the awards for STIP Participants will be adjusted upwards or downwards based upon each employee's achievement of his or her individual goals. Awards will be adjusted at the end of the STIP Performance Period based upon individualized performance goals set by management, with the potential IPM adjustment ranging from a low of 75% of award value to a high of 125% of award value unless the Compensation Committee or independent members of the Board of Directors of the Utility (the "**Independent Utility Board**"), as applicable, utilizes its discretion to reduce or even zero out the award.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Additionally, consistent with past practice, the Compensation Committee and the Independent Utility Board, as applicable, have complete discretion to reduce or eliminate 2020 STIP awards for any reason with respect to any particular employee or more broadly.[10]

## V. 2020 LTIP – OVERVIEW OF METRICS AND WEIGHTINGS

Participants in the proposed 2020 LTIP ("**LTIP Participants**") are comprised of 400 senior employees, who are also STIP Participants, including, as stated, the Senior Executives (but excluding Mr. Johnson, the PG&E Corp. CEO).

The proposed 2020 LTIP has been designed to further PG&E's long-term objectives—especially customer welfare and safety—by aligning incentive compensation with those objectives and making corresponding equity awards over a long-term period. The proposed 2020 LTIP metrics are different from the 2020 STIP metrics and are premised on customer experience and public safety. Customer experience will be weighted 50%, and within that category, customer satisfaction and Public Safety Power Shutoff ("**PSPS**") notification accuracy are equally weighted. The remaining 50% will be weighted to public safety, and within that category, equally weighted to system hardening and the mitigation of PSPS event scope through substation energization.

Proposed 2020 LTIP awards are entirely equity-based, and, therefore, inherently align compensation with strong company performance. The 2020 LTIP awards will consist entirely of PSs that will vest only upon achievement of the objective performance metrics for the three-year performance period commencing January 1, 2020 and ending December 31, 2022. The PSs will be granted at a target dollar value, which will be converted into notional shares of Reorganized PG&E Corp. common stock upon PG&E's emergence from chapter 11 (the "**Emergence Date**") based on the average closing price for Reorganized PG&E Corp. stock on the first fifteen (15) trading days immediately following the Emergence Date. At the end of the Performance Period (December 31, 2022), the LTIP score, based on customer welfare and public safety, will be calculated. Finally, to take into account the long term financial health and stability of PG&E, the LTIP score will be multiplied by a Total Shareholder Return

---

[10] The Compensation Committee has complete discretion to reduce or eliminate 2020 STIP awards for any eligible employee with the exception of the CEO of the Utility, for whom the Independent Utility Board has sole discretion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

("**TSR**") modifier, which will increase or reduce the total award to LTIP Participants based on the total performance of Reorganized PG&E Corp. stock (price appreciation or depreciation, plus dividends received, if any) relative to the same measure for a comparator group of peer companies.[11] A breakdown of the metrics and weightings, which will apply to all LTIP Participants is provided below:

| Category | Proposed Measures | Proposed Weights (all LTIP Participants) |
|---|---|---|
| **Customer Experience** (50%) | Customer Satisfaction Score | 25% |
| | PSPS Notification Accuracy[12] | 25% |
| **Public Safety** (50%) | System Hardening (miles) | 25% |
| | (PSPS) Mitigations Through Substation Energization | 25% |
| Financial Stability – Total Shareholder Return (TSR) Modifier | | 75% to 125% |

Consistent with what AB 1054 specifies for Utility executives, an LTIP Participant must hold the LTIP award (or shares settled in respect of such award) for at least three years from the initial date of grant (*i.e.*, until at least March 2, 2023).

The Compensation Committee and the Independent Utility Board, as applicable, retain complete discretion to reduce or eliminate 2020 LTIP awards for any reason, subject to certain legal restrictions, with respect to any particular employee or more broadly.[13]

## VI.     SUMMARY OF THE KEY TERMS OF THE 2020 STIP AND 2020 LTIP

The following is a summary of the key terms of the 2020 STIP and 2020 LTIP:

1. **Participants**:
   - **2020 STIP Participants**: Approximately 10,000 employees, including Senior Executives, will be eligible to receive 2020 STIP awards.

---

[11] The comparator group of companies is established by the Compensation Committee at the time of the grant annually to ensure its appropriateness. The comparator group consists of: AES Corporation, Ameren Corporation, American Electric Power, CenterPoint Energy, Inc., Consolidated Edison, Inc., Dominion Resources, Inc., DTE Energy Company, Duke Energy, Edison International, Entergy Corporation, Eversource Energy, Exelon Corporation, FirstEnergy Corp., NextEra Energy, Inc., Public Service Enterprise Group, Sempra Energy, Southern Company, WEC Energy Group, Inc., and Xcel Energy Inc.

[12] If there are no PSPS events during the LTIP Performance Period, the Customer Satisfaction Score will be the final total Customer Experience score.

[13] The Compensation Committee has complete discretion to reduce or eliminate 2020 LTIP awards for any eligible employee with the exception of the CEO of the Utility, for whom the Independent Utility Board has sole discretion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

- **2020 LTIP Participants**: Approximately 400 senior employees, who are also STIP Participants, including the Senior Executives, will be eligible to receive 2020 LTIP awards.[14]

2. **Performance Period:**
   - **2020 STIP**: The 2020 STIP will have a performance period of January 1, 2020 through December 31, 2020 (the "**STIP Performance Period**").
   - **2020 LTIP**: The PSs will have a performance period of January 1, 2020 through December 31, 2022 (the "**PS Performance Period**" and, together with the STIP Performance Period, the "**Performance Periods**").

3. **Total Plan Cost**:
   - **2020 STIP**: The total approximate cost of the 2020 STIP ranges from $0 (if the Compensation Committee and the Independent Utility Board, as applicable, determine in their discretion that no payment should be earned) to $89,000,000 at threshold to $177,500,000 at target performance to $266,000,000 at maximum performance.
   - **2020 LTIP**: The aggregate value of the 2020 LTIP ranges from $0 (if the Compensation Committee and the Independent Utility Board, as applicable, determine in their discretion that no payment should be earned) to $28,200,000 at threshold to $75,100,000 at target performance to $187,800,000 at maximum performance, all payable in equity of reorganized PG&E Corp.

4. **Form of Awards:**
   - 2020 STIP incentive compensation for the STIP Performance Period will consist of cash awards.
   - 2020 LTIP incentive compensation will consist of PSs.

5. **Award Issuance and Payout:**
   - **2020 STIP**: All 2020 STIP awards will be paid annually following Internal Audit and Compensation Committee certification of the performance results.
   - **2020 LTIP**: The PSs will be awarded as soon as practicable after approval of the proposed 2020 LTIP, with a grant date of March 2, 2020 in compliance with the Debtors' Equity Grant Date Policy and must be held for at least three (3) years from the grant date. The PSs will be granted at a target dollar value, which will be converted into notional shares of Reorganized PG&E Corp. common stock upon the Debtors' emergence from chapter 11 based on the average closing price of Reorganized PG&E Corp. common shares on the first fifteen (15) trading days immediately following the Emergence Date. Subject to the discretion of the Compensation Committee or the Utility Board, as applicable, the 2020 LTIP awards will be calculated as of the end of the Performance Period (December 31, 2022), and be adjusted by the TSR modifier. The PSs will be settled in shares of post-emergence Reorganized PG&E Corp. common stock following Internal Audit and Compensation Committee certification of the performance results.

6. **Performance-Based Awards Payout Levels**: The 2020 STIP and PS awards (together, the "**Performance-Based Awards**") will each be calculated using company scores which reflect the sum of the weighted scores for each plan. Each metric will be scored as follows:

| | **2020 STIP** | **2020 LTIP** |
|---|---|---|
| *Threshold Performance*: | If a threshold score is achieved, the metric will be scored at 50% | If a threshold score is achieved, the metric will be scored at 50% |

---

[14] Many of the participants have specialized training and experience directly related to utility management and regulatory compliance, and work across various departments within the Debtors' organization, including operations, engineering, customer care, finance, human resources, information technology, and legal.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | | |
|---|---|---|
| *Target Performance*: | If a target score is achieved, the metric will be scored at 100% | If a target score is achieved, the metric will be scored at 100% |
| *Maximum Performance* | If a maximum score is achieved, the metric will be scored at 150% | If a maximum score is achieved, the metric will be scored at 200% |

- Scores between (i) threshold and target and (ii) target and maximum will be interpolated on a linear basis.
- If the Debtors do not meet threshold-level performance, there will be *no* payout for that metric.

7. **2020 STIP IPM**: Employees will be subject to an individual performance modifier ("**IPM**") after the company score is calculated, whereby the payments for STIP Participants will be adjusted upwards or downwards based upon each employee's achievement of his or her individual goals. Awards will be adjusted at the end of the STIP Performance Period based upon individualized performance goals set by management, with the potential IPM adjustment ranging from a low of 75% of award value to a high of 125% of award value unless the Compensation Committee or Independent Utility Board, as applicable, utilizes its discretion to zero out the score.[15]

8. **2020 LTIP TSR Modifier:** The TSR modifier adjusts LTIP payments based on a measurement of total share performance (price appreciation or depreciation, plus dividends received, if any) relative to the same measure for a comparator group of peer companies (a comparator group the Compensation Committee sets at the time of the grant annually to ensure its appropriateness) with the potential TSR modifier ranging from a low of 75% of award value to a high of 125% of award value.

9. **Eligibility Award Payout upon Termination**: If a STIP Participant (and, as applicable, an LTIP Participant) voluntarily terminates his or her employment other than for retirement, all future awards will be forfeited. If a STIP Participant (and, as applicable, LTIP Participant) retires, dies, or is involuntarily terminated, other than for cause (including termination in the case of disability), the STIP Participant (and as applicable LTIP Participant) will remain eligible to receive a prorated portion of the respective awards based on the percentage of time the STIP Participant (and as applicable LTIP Participant) remained employed during the Performance Period.

10. **Compensation Committee**: Consistent with historical practice, the Compensation Committee or the Independent Utility Board, as applicable, retain complete and final discretion to reduce or eliminate 2020 STIP and, subject to certain legal restrictions, the 2020 LTIP awards.

## VII. SENIOR EXECUTIVE 2020 STIP AND 2020 LTIP PARTICIPANTS

As noted above, the proposed 2020 STIP and 2020 LTIP encompass twelve (12) Senior Executives of the Debtors (other than the CEO of PG&E Corp. whose performance-based awards have been previously approved) who are also "insiders" within the meaning of section 101 of the Bankruptcy Code. In addition to working to improve the Debtors' safety culture and operations, since the

---

[15] There is no additional cost associated with the IPM; on an overall basis, upward adjustments are offset by downward adjustments.

commencement of these Chapter 11 Cases, the Debtors' Senior Executives have dedicated their time and efforts to, among other things, stabilizing the Debtors' business operations after the chapter 11 filings, addressing recent legislation enacted by the California legislature, achieving critical settlements with all three key creditor constituents holding wildfire claims, filing a chapter 11 plan and related documents that can be confirmed in advance of the June 30, 2020 legislative deadline, and implementing a transformation of PG&E's safety culture, operations and financial profile under challenging circumstances.

A summary of the Senior Executives and their respective responsibilities is detailed below:

| Participant | Title | Customer and Workforce Welfare, Financial Stability, Customer Experience and Public Safety Responsibilities |
|---|---|---|
| Andrew Vesey | CEO and President, Utility | • Responsible for overseeing safe operations, including oversight for all operational measures (Reportable Fire Ignitions, Electric Asset Failure, Distribution, Large Overpressure Events, Total Dig-Ins Reduction, Safe Dam Operating Capacity, Nuclear Reliability and Safety Indicator, Gas Customer Emergency Response, 911 Emergency Response, Customers Experiencing Multiple Interruptions, Customer Satisfaction Score, PSPS Notification Accuracy, System Hardening, and PSPS Mitigations Through Substation Energization).<br>• Responsible for supporting DART improvements within Pacifica Gas and Electric Company.<br>• Responsible for Core Earnings per Share.<br>• Responsible for the financial performance of the Utility. |
| Simon, John | EVP, Law, Strategy and Policy, PG&E Corp. | • Responsible for overseeing the legal and regulatory strategies necessary to support operations, including safety-related activities.<br>• Responsible for prioritizing safety in regulatory findings to deploy PG&E's capital to prioritize safety which drives results for Reportable Fire Ignitions, Electric Asset Failure, Distribution Circuit Sectionalization, Large Overpressure Events, Safe Dam Operating Capacity (SDOC), Nuclear Reliability and Safety Indicator, PSPS Notification Accuracy, System Hardening, and PSPS Mitigations Through Substation Energization (as defined below).<br>• Responsible for helping create a Speak Up, Listen Up, Follow Up culture so that employees can raise safety concerns.<br>• Responsible for supporting DART (as defined below) improvements within Law, Strategy and Policy.<br>• Responsible for the financial performance of Law, Strategy and Policy. |
| Wells, Jason | EVP and Chief Financial Officer, PG&E Corp. | • Responsible for overseeing that sufficient capital is provided for safety-related activities, which drives results for all safety metrics.<br>• Responsible for overseeing audit function to ensure accuracy of all performance results (as defined below).<br>• Responsible for supporting DART improvements within Finance.<br>• Responsible for the financial performance of PG&E Corp. |
| Loduca, Janet | SVP and General Counsel, PG&E Corp., and Utility | • Responsible for providing legal support to support necessary operations, including safety-related activities.<br>• Responsible for supporting DART improvements within Law.<br>• Responsible for the financial performance of Legal. |
| Giammona, Loraine | SVP and Chief Customer Officer, Utility | • Responsible for Customer Satisfaction Score and PSPS Notification Accuracy results.<br>• Responsible for supporting DART improvements within Customer Care.<br>• Responsible for the financial performance of Customer Care. |
| Kane, Julie | SVP, Chief Ethics and Compliance Officer and Deputy General Counsel, .PG&E Corp. and Utility | • Responsible for establishing and enhancing a culture of ethical and compliant behavior, which drives results for all safety performance metrics.<br>• Leads Speak Up, Listen Up, Follow Up culture that, among other things, advances open discussion of safety, ethical or other issues, and supports the accurate management and presentation of all PG&E data, including the data relevant to the 2020 metrics.<br>• Responsible for supporting DART improvements within Ethics & Compliance and Law.<br>• Responsible for the financial performance of Ethics and Compliance. |
| Lewis, Michael | SVP, Electric Operations, Utility | • Responsible for Reportable Fire Ignitions, Electric Asset Failure results, Distribution Circuit Sectionalization, 911 Emergency Response results, Customer Experiencing Multiple Interruptions, System Hardening, and PSPS Mitigations Through Substation Energization.<br>• Responsible for supporting DART improvements within Electric Operations.<br>• Responsible for the financial performance of Electric Operations. |
| Mistry, Dinyar | SVP, Human Resources, PG&E Corp. and Utility | • Responsible for delivering an appropriately-sized and fully-qualified employee and contractor workforce, which drives results for all operational metrics (Reportable Fire Ignitions, Electric Asset Failure, Distribution, Large Overpressure Events, Total Dig-Ins Reduction, Safe Dam Operating Capacity, Nuclear Reliability and Safety |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| Participant | Title | Customer and Workforce Welfare, Financial Stability, Customer Experience and Public Safety Responsibilities |
|---|---|---|
| | | Indicator, Gas Customer Emergency Response, 911 Emergency Response, Customers Experiencing Multiple Interruptions, Customer Satisfaction Score, PSPS Notification Accuracy, System Hardening, and PSPS Mitigations Through Substation Energization). <br>• Responsible for safety and technical training. <br>• Responsible for supporting DART improvements within HR. <br>• Responsible for the financial performance of Human Resources. |
| Wan, Fong | SVP, Energy Policy and Procurement, Utility | • Responsible for PSPS Mitigations Through Substation Energization. <br>• Responsible for developing and implementing PG&E's energy policies for electricity, natural gas, and greenhouse gas regulation to achieve PG&E's affordability, reliability and safety goals for PG&E's customers. <br>• Responsible for overseeing PG&E's commercial trading of electricity and natural gas commodities to assure delivery of safe and reliable energy services for PG&E's customers. <br>• Responsible for supporting DART improvements within Energy Policy and Procurement. <br>• Responsible for the financial performance of Energy Policy and Procurement. |
| Welsch, James | SVP, Generation and Chief Nuclear Officer, Utility | • Responsible for Safe Dam Operating Capacity (SDOC) and Nuclear Reliability and Safety Indicator. <br>• Responsible for supporting DART improvements within Generation. <br>• Responsible for the financial performance of Generation. |
| Kay, Kathleen | SVP, Chief Information Officer, Utility | • Responsible for providing information technology solutions to support operations, including safety-related activities such as building and/or deploying technologies that enable the Wildfire Safety Operations Center, Distribution Circuit Sectionalization, PSPS Mitigations Through Substation Enablement, weather stations, remote cameras, new locate and mark applications, inspection applications to enable accelerated inspections and vegetation management. <br>• Responsible for supporting DART improvements within Information Technology. <br>• Responsible for the financial performance of Information Technology. |
| Thomason, David | VP, Controller, PG&E Corp. and Utility, and also Utility Chief Financial Officer | • Responsible for ensuring sufficient funding is provided for safety-related activities, which drives results for all safety metrics including System Hardening plan. <br>• Responsible for maintaining access to capital necessary to finance PG&E's safety investments. <br>• Responsible for establishing standards for financial documentation related to electric and gas construction projects, working with the lines of business to improve processes related to asset records, and testing records for accuracy and completeness. <br>• Responsible for supporting regulatory approval and funding for PG&E's safety activities and investments. <br>• Responsible for supporting DART improvements within Finance. <br>• Responsible for the financial performance of the Utility. |

Due to the failure to make any STIP payments to employees in 2018,[16] and the suspension of incentive compensation to the Senior Executives to date during the pendency of these Chapter 11 Cases, the Senior Executives have been compensated at levels significantly below market.[17]  In 2019 alone, the annual target compensation of the Debtors' Senior Executives, excluding the CEO of the Utility, was approximately 68% below the median market target compensation earned by their peers working in similar positions at comparable utilities.  Absent implementation of the proposed 2020 STIP and 2020 LTIP, the total direct compensation for the Senior Executives in 2020 will likewise be significantly below market.

---

[16] In light of the devastating 2018 Northern California wildfires, the hardships incurred by communities and others, and PG&E's financial circumstances and need to seek relief under chapter 11, all 2018 STIP awards were zeroed out.

short-term incentive-based component of its 2018 overall compensation program (the "2018 STIP") to approximately 11,000 of the Debtors' employees who participated in the program..

[17] This excludes the CEO of the Utility whose 2019 compensation package was separately approved by the Court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Virtually all public companies, including utilities, pay senior executives a base salary plus at-risk incentive compensation, which is a significant portion of each executive's total compensation. Customary and sound senior executive employment policy warrants the adoption of an incentive program that provides senior management with the opportunity to receive a market level of compensation if reasonable and challenging targets are achieved. This motion seeks to provide the Senior Executives with the same opportunity as the broad employee base, to earn a market level of compensation during the Performance Periods, if (and only if) the Debtors achieve challenging safety and financial goals.

## VIII. THE 2020 PG&E CORP. PERFORMANCE METRICS FOR THE CEO PERFORMANCE-BASED AWARDS

As the most senior officer for PG&E Corp., Mr. Johnson's leadership is integral to the Debtors' achievement of all safety, financial, and operational initiatives. Accordingly, consistent with the metrics approved for the 2019 CEO Performance-Based Awards, the 2020 CEO Performance-Based Awards align with those in the Debtors' proposed 2020 STIP, a broad-based compensation plan covering approximately 10,000 PG&E employees, including the Senior Executives. Mr. Johnson is critically important to the Debtors' business: as CEO of PG&E Corp., Mr. Johnson has ultimate responsibility for, the Debtors' safety performance and operations and the ability to drive performance. His ability to guide the Debtors' 23,000 employees working across diverse operations as a unified enterprise to achieve important safety, operational, and financial goals is instrumental to the execution of the Debtors' vision of a safer, more reliable PG&E that delivers on its promises to its customers.

The Compensation Committee has recommended that the PG&E Corp. Board approve Mr. Johnson's 2020 PG&E Corp. Performance Metrics, aligning him with the 2020 STIP performance metrics and weightings applicable to the employees (including the Senior Executives) whose efforts provide support to the entire enterprise. Given the Court's previous approval of Mr. Johnson's 2020 Performance-Based Awards, this Motion seeks approval of only Mr. Johnson's 2020 PG&E Corp. Performance Metrics.

## IX. BASIS FOR RELIEF REQUESTED

The relief requested in this Motion should be approved. First, the 2020 STIP and 2020 LTIP

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

largely represent the continuation of prepetition customary compensation practices, albeit practices that have been redesigned to reflect the key customer welfare, safety and financial stability objectives of the Company and the requirements of AB 1054. The design and implementation of the 2020 STIP and the 2020 LTIP constitute a sound exercise of the Debtors' business judgment. Further, the 2020 STIP and 2020 LTIP are reasonable in light of the Debtors' need to maintain the ability of their hard-working employees to achieve competitive market compensation. Further, the 2020 STIP and 2020 LTIP are incentive-based and fully comply with the requirements of sections 363(b) and 503 of the Bankruptcy Code. Finally, the 2020 STIP and 2020 LTIP are justified by the facts and circumstances of these Chapter 11 Cases and align participant compensation with challenging but achievable safety and performance goals that will preserve and maximize value for all parties in interest.

With respect to the PG&E Corp. 2020 CEO Performance Metrics, the Debtors believe that the limited relief sought in this Motion to apply the *same* performance metrics proposed in the Debtors' 2020 STIP to the 2020 CEO Performance-Based Awards is also a sound exercise of business judgment. As with Mr. Johnson's 2019 CEO Performance-Based Awards, the actual award payout will be based on performance results certified by Internal Audit, recommended for approval by the Compensation Committee and subject to final approval by the independent members of the (the "**Independent PG&E Corp. Board**"). The Independent PG&E Corp. Board retains full discretion to reduce the CEO Performance-Based Awards.

A. **The 2020 STIP and 2020 LTIP are Appropriate Under Section 363(b)(1) of the Bankruptcy Code**

Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a Court may authorize a debtor to enter into transactions outside the ordinary course of business where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See,*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    *e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,

2    147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985));

3    see also *F.D.I.C. v. Castette*r, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires

4    directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance

5    would"). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a

6    decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's

7    conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,

8    60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts construing California corporate law have consistently

9    declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross

10   negligence, and have upheld a board's decisions as long as such decisions were made in good faith.

11   *Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *4

12   (N.D. Cal. Apr. 23, 2012); *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046 (2009).

13          Here, implementation of the 2020 STIP and 2020 LTIP is a proper exercise of the Debtors'

14   business judgment and is in the best interests of the Debtors and their stakeholders. Providing eligible

15   employees the opportunity to earn incentive compensation through the 2020 STIP and 2020 LTIP will

16   further the Debtors' safety and financial objectives and to preserve and enhance enterprise value. It is

17   imperative that the Debtors provide appropriate, market-based compensation and incentives to the broad

18   employee population and the Senior Executives to ensure the success of the Debtors' efforts to transform

19   their business.

20          AB 1054 delegates to the CPUC the power to approve executive compensation plans for the

21   purpose of issuing a safety certification. As a participant in the Plan OII process, PG&E has been

22   engaged in ongoing negotiations with the CPUC and Governor Newsom's office regarding the Debtors'

23   post-emergence executive incentive plans. Furthermore, the CPUC heard testimony regarding PG&E's

24   2020 post-emergence executive compensation plan, including the 2020 STIP and 2020 LTIP, on March

25   3, 2020. In advance of the testimony, PG&E submitted written testimony explaining its proposed

26   incentive plans, the decision-making that support the proposals, and why the proposals meet AB 1054's

27

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

standards for the Utility's executive officers.[18]   As noted above, the Debtors, with the considerable oversight of the Compensation Committee, have used this iterative process to entirely redesign PG&E's compensation plans, both for its Senior Executives and broad-based employees, to better align employee performance with key enterprise goals.   The Debtors believe this process has resulted in incentive compensation plans that not only meet, but also surpass the requirements of AB 1054.   Notwithstanding this fact, to the extent the CPUC requires any changes, the Debtors will modify the 2020 STIP and 2020 LTIP accordingly.

### B.   The 2020 STIP and 2020 LTIP are Permitted Under Sections 503(c)(1) and (2) of the Bankruptcy Code

The 2020 STIP and 2020 LTIP are permissible under section 503(c)(1) and (2) of the Bankruptcy Code.   Specifically, section 503(c)(1) of the Bankruptcy Code restricts payments made to "insider[s] of the debtor for the purpose of inducing such person to remain with the debtor's business"—i.e., those insider plans that are essentially "pay to stay" plans—and section 503(c)(2) of the Bankruptcy Code restricts severance payments to insiders. *In re Velo Holdings Inc.*, 472 B.R. 201, 209–10 (Bankr. S.D.N.Y. 2012); *In re Borders Grp., Inc.*, 453 B.R. 459, 471 (Bankr. S.D.N.Y. 2011) (quoting In re Dana Corp., 358 B.R. at 571).   Of the over 10,000 STIP Participants and approximately 400 LTIP Participants, only 12 are "insiders" as defined in section 101(31) of the Bankruptcy Code.   The Bankruptcy Code defines an "insider" to include an "officer of the debtor" and a "person in control of the debtor," (11 U.S.C. § 101(31)).   It is well-established, however, that an employee's job title, alone, does not make such employee an "insider" as defined by the Bankruptcy Code.   *See In re Borders Grp., Inc.*, 453 B.R. at 469 (noting that "[c]ompanies often give employees the title 'director' or 'director-level,' but do not give them decision-making authority akin to an executive" and concluding that certain "director level" employees in that case were not insiders).   "Insider" status under the Bankruptcy Code turns on the degree to which a purported "insider" controls the Debtor.   *See, e.g., id*. at 469 ("[I]nsiders must have at least a controlling interest in the debtor or . . . exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.") (citations omitted); *In re*

---

[18] *See* "Pacific Gas and Electric Company Plan of Reorganization OII 2019, Prepared Testimony, Volume 1: Chapter 7, Executive Compensation," (Jan. 31, 2020).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

*TBR USA, Inc.*, 429 B.R. 599, 624–25 (Bankr. N.D. Ind. 2010) ("Control means the actual exercise of managerial discretion," or "usurping the power of the debtor's directors and officers to make business decisions.") (internal quotation marks and citations omitted).

Although the Senior Executives participating in the proposed 2020 STIP and 2020 LTIP may be "insiders" within the meaning of the Bankruptcy Code, by its plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention payments to insiders. Section 503(c)(1) does not apply to performance-based incentive plans such as the 2020 STIP and 2020 LTIP, the metrics of which are almost entirely outcome and performance-based. *See In re Alpha Natural Resources, Inc.*, 546 B.R. 348, 355-56 (Bankr. E.D. Va. 2016) ("[T]he analysis under § 503(c) changes when a debtor purports to make a payment not to retain an insider, but primarily to incentivize the insider to achieve certain goals, and] [o]n its face, § 503(c)(1) does not apply to the KEIP because the payments thereunder are incentive and not purely retentive."). The 2020 STIP and 2020 LTIP have been crafted with great care to ensure the relevant metrics directly incentivize all participants, including the Senior Executives, to meet the objectives set forth therein. Additionally, the performance metrics are not easily achievable or "layups". *Cf. In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012). The Compensation Committee, together with senior leaders and operating units identified the applicable categories of performance metrics, relative weightings of the metrics in calculating awards, and how achievement of the metrics will be evaluated and measured. Further, the Compensation Committee together with the Debtors first looked to historical data to set appropriate benchmarks by increasing requisite performance levels to satisfy threshold, target, and maximum performance for the Performance Periods. In the absence of historical data, the Debtors utilized industry-wide benchmarking to set achievement milestones consistent with industry peers and, in addition, considered PG&E's long-term objectives. The metrics and benchmarks are subject to review by the CPUC to ensure that they are challenging but still reasonably achievable.

Additionally, although the 2020 STIP and 2020 LTIP have not been designed with the goal of retaining employees, the fact that some employees may decide to remain employed with the Debtors throughout the Chapter 11 Cases by allowing them the opportunity to achieve market compensation does

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

not bar its implementation. *See In re Global Home Prods.*, LLC, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (noting that, "the fact that . . . all compensation has a retention element [did] not reduce the Court's conviction [that the debtor's primary goal in approving the incentive plans] was to create value by motivating performance"). Indeed, all successful incentive plans necessarily have the indirect benefit of incentivizing an employee to remain with the company. *See In re Alpha Natural Resources, Inc.*, 546 B.R. at 356 ("[A] KEIP that merely has some retentive effect should not be analyzed under § 503(c)(1)."). Furthermore, there is no guarantee whatsoever that STIP Participants and LTIP Participants will receive any award at the end of the Performance Periods, even if threshold performance is achieved. The Compensation Committee and the Independent Utility Board, as applicable, retain complete authority to reduce or eliminate the awards for any reason – discretion which has been exercised in the past. Accordingly, the proposed 2020 STIP and 2020 LTIP are not retention plans, but rather are purely performance-based incentive plans.

C.     **The 2020 STIP and 2020 LTIP Satisfy Section 503(c)(3) of the Bankruptcy Code**

Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Courts have concluded that whether payments to employees are justified by the "facts and circumstances" of a case is to be determined by application of the same business judgment standard utilized under section 363(b) of the Bankruptcy Code. *See In re Velo Holdings Inc.*, 472 B.R. at 209 (Bankr. S.D.N.Y. 2012) ("[The] 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."); *In re Dana Corp.*, 358 B.R. at 576–77 (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code). Accordingly, the determination of whether the 2020 STIP and 2020 LTIP are justified by the facts and circumstances of the case and the analysis of whether the approval of such plans is a sound exercise of the Debtors' business judgment under section 363(b) are the same.

Courts have generally utilized the Dana factors when determining if the structure of a

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

compensation proposal and the process for its development meet the business judgment test. *See, e.g.,*
*In re Residential Capital, LLC*, 491 B.R. 73, 84–85 (Bankr. S.D.N.Y. 2013) (applying the Dana factors
to the debtors' retention plan for non-insiders and approving the plan as an exercise of sound business
judgment); *In re Borders Grp., Inc.*, 453 B.R. at 473–74 (same). In *Dana*, the Bankruptcy Court set
forth the following factors for evaluating whether a debtor has satisfied the "sound business judgment"
test for purposes of the approval of a compensation plan under section 503(c)(3) of the Bankruptcy Code:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, *i.e.*, will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*In re Dana Corp.*, 358 B.R. at 576–77. As set forth below, to the extent applicable, all of these factors
are satisfied as to the 2020 STIP and 2020 LTIP.

  *First*, in light of the Debtors' current circumstances, the 2020 STIP and 2020 LTIP were carefully
tailored to (i) drive performance to achieve critical safety and financial objectives, (ii) provide
competitive compensation that aids in motivating employees to achieve the performance metrics that
will promote company objectives and maximize enterprise value, and (iii) comply with the requirements
and intent of AB 1054.

  *Second*, the 2020 STIP and 2020 LTIP fall within the range of competitive practice relative to
company size and incentive structure and design of peer companies. Further, the cost is consistent with

the Debtors' ordinary course, historical incentive compensation structure, and is reasonable in light of the size of the Debtors' business enterprise and the number of participants in the plan.

*Third*, the 2020 STIP is available to a broad group of approximately 10,000 of the Debtors' employees, including certain union-represented employees and Senior Executives and the 2020 LTIP is available to 400 of the Debtors' most senior employees, including the Senior Executives. The 2020 STIP and 2020 LTIP are consistent with past practice as to scope and participation and were designed to provide customary, incentive-based compensation, with a particular emphasis on safety.

*Fourth*, as set forth in the Ringlee Declaration, the 2020 STIP and 2020 LTIP were redesigned in terms of scope, design, and metrics. Indeed, a fundamental purpose of the redesigned 2020 STIP and 2020 LTIP is to provide participants with competitive compensation in a manner that aligns their performance with the customer welfare, safety and financial stability objectives of the Debtors' business, so as to maximize value for the benefit of the Debtors' stakeholders, as well as to be fully consistent with the intent and guidelines of AB 1054.

*Lastly*, as referenced above, the 2020 STIP and 2020 LTIP are the product of due diligence with the input of the Debtors' professional advisors. PG reviewed the performance metrics and the plan design and believes that it comports with, and, in fact, serves as a model for plans adopted by peers in the Debtors' industry. Additionally, the 2020 STIP and 2020 LTIP were designed to comply with AB 1054, and will reflect any modifications required for CPUC approval through the Plan OII process.

### D.  Conclusion

The relief requested in this Motion should be approved. First, the 2020 STIP and 2020 LTIP are incentive-based and effectively align employee compensation with challenging redesigned performance-based metrics, in compliance with the legislatively approved AB 1054 and subject to review by the CPUC. Second, the 2020 STIP and 2020 LTIP fully comply with the requirements of sections 363(b) and 503(c) of the Bankruptcy Code and constitute a sound exercise of the Debtors' business judgment. Further, the 2020 STIP and 2020 LTIP awards are reasonable in light of market practice and provide the Debtors' employees, including the Senior Executives, with the potential opportunity to realize market rates of compensation.

## X.      NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice is required.  Other than the 2019 STIP Motion and 2019 KEIP Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other Court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

1    WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested

2    herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates,

3    creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court

4    may deem just and appropriate.

5    Dated:  March 4, 2020

6                                                          **WEIL, GOTSHAL & MANGES LLP**

7                                                          **KELLER BENVENUTTI KIM LLP**

8

9                                                          By:   /s/ *Jessica Liou*_____
                                                              Jessica Liou

10                                                         *Attorneys for Debtors*
                                                          *and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119