WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (pro hac vice)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11 (Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF LANE RINGLEE IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 503(c) FOR ENTRY OF AN ORDER APPROVING DEBTORS' 2020 (I) SHORT TERM INCENTIVE PLAN; (II) LONG TERM INCENTIVE PLAN; (III) PERFORMANCE METRICS FOR THE CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PG&E CORPORATION; AND (IV) GRANTING RELATED RELIEF**<br><br>Date:  March 25, 2020<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>    Courtroom 17, 16th Floor<br>    San Francisco, CA 94102 |

I, Lane Ringlee, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

I am a Managing Partner at Pay Governance LLC ("**PG**"). PG has been retained as independent compensation consultant to the Compensation Committee of the Board of Directors of PG&E Corp. (the "**Compensation Committee**"). I am familiar with the pre- and post-petition structure of the Debtors' compensation plans, including the Debtors' proposed 2020 short term incentive plan (the "**2020 STIP**") and 2020 long term incentive plan for certain more senior employees (the "**2020 LTIP**") as set forth in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(c) for Entry of an Order Approving Debtors' 2020 (I) Short Term Incentive Plan; (II) Long Term Incentive Plan; (III) Performance Metrics for the Chief Executive Officer and President of PG&E Corporation; and (IV) Granting Related Relief* (the "**Motion**") concurrently filed herewith.[1] I am also familiar with the compensation programs of PG&E's peer utilities and other similarly-sized non-utility companies. I submit this Declaration (the "**Declaration**") in support of the Motion.

The statements in this Declaration are, except where specifically noted, based on my personal knowledge, on information that I have obtained from the Debtors' books and records, the Debtors' employees, the Debtors' advisors and their employees, or from other members of the PG team working under my supervision or direction. I have overseen a compensation consulting team of professionals at PG since October 2014 that has provided various executive and management compensation consulting services to the Debtors. I am not being specifically compensated for this testimony other than through payments received by PG as a professional. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## Background and Qualifications

I received my B.S. degree from the University of California, Berkeley and M.B.A from Cornell University. Prior to joining PG, I held regional management positions with the executive compensation

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion.

practices of Towers Perrin and Towers Watson.

PG is an international professional services firm that provides a wide range of executive compensation consulting services to hundreds of clients, including expert analysis of executive and management compensation. PG's national team has expertise in accounting, tax, equity/long term incentive valuation, and supplemental retirement plans, as well as advising on proxy statement disclosure and proxy advisor governance policies.

My responsibilities at PG primarily involve advising clients on the design and implementation of executive compensation plans, as well as executive and employee incentive plans and rewards strategies. I have extensive experience in managing compensation assignments for major corporations. Some of these engagements include, among other things, developing and implementing total compensation strategies, advising boards and senior management on the design and structure of executive and board compensation plans, and selecting performance criteria and calibrating performance levels for incentive plans. Furthermore, I frequently work with boards and top management teams of globally prominent organizations across various industry segments on various compensation related matters.

### A.  PG's Involvement with the Debtors

Since PG was retained by PG&E in 2014, my team and I have familiarized ourselves with the Debtors' compensation practices. PG has prepared for and attended Compensation Committee meetings of the PG&E Corp. Board, assisted with compensation benchmarking, and prepared reports summarizing PG's conclusions and recommendations. During the course of our engagement, PG discussed with the Compensation Committee, the Debtors and their advisors the Debtors' past financial performance and their historical pay practices relating to senior management and the broader employee base.

Specifically, I have assisted the Debtors with benchmarking executive and board of directors compensation, designing short- and long-term incentive plans, officer compensation plans, understanding executive compensation trends at the largest investor-owned utilities, developing pay recommendations for promoted and newly-hired executives, and structuring executive compensation policies and plans such as stock ownership requirements and claw-back policies. I previously submitted declarations in support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order*

*Approving Terms of Employment for New Chief Executive Officer and President of Pacific Gas and Electric Company* [Docket No. 4061] and the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order Approving Terms of Board of Director Compensation* [Docket No. 4057] approved by this Court.

### B. The 2020 STIP and 2020 LTIP

Following the commencement of these Chapter 11 Cases, the Debtors' Compensation Committee worked with PG to entirely redesign the incentive-based component of their employee compensation plans. As further discussed in the Motion and Lowe Declaration filed in support thereof, the Debtors' Compensation Committee, with the assistance of PG, conducted a thorough evaluation of the Debtors' historical incentive pay practices, 2019 STIP, and AB 1054 for purposes of formulating the 2020 STIP and 2020 LTIP. This evaluation resulted in, among other things, making the performance levels of certain metrics more challenging after feedback from senior management and the Compensation Committee. In many instances, the performance needed to hit target levels was increased from historical performance to ensure the plans remain challenging and emphasize continuous improvement.

### C. Summary of the 2020 STIP and 2020 LTIP

The following is a summary of the key terms of the 2020 STIP and 2020 LTIP:

1. **Participants**:
   - **2020 STIP Participants**: Approximately 10,000 employees, including Senior Executives, will be eligible to receive 2020 STIP awards.
   - **2020 LTIP Participants**: Approximately 400 senior employees, who are also STIP Participants, including the Senior Executives, will be eligible to receive 2020 LTIP awards.[2]
2. **Performance Period:**
   - **2020 STIP**: The 2020 STIP will have a performance period of January 1, 2020 through December 31, 2020 (the "**STIP Performance Period**").
   - **2020 LTIP**: The PSs will have a performance period of January 1, 2020 through December 31, 2022 (the "**PS Performance Period**" and, together with the STIP Performance Period, the "**Performance Periods**").
3. **Total Plan Cost**:
   - **2020 STIP**: The total approximate cost of the 2020 STIP ranges from $0 (if the Compensation Committee and the Independent Utility Board, as applicable, determine in their discretion that no payment should be earned) to $89,000,000 at threshold to $177,500,000 at target performance to $266,000,000 at maximum performance.

---

[2] Many of the participants have specialized training and experience directly related to utility management and regulatory compliance, and work across various departments within the Debtors' organization, including operations, engineering, customer care, finance, human resources, information technology, and legal.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- **2020 LTIP**: The aggregate value of the 2020 LTIP ranges from $0 (if the Compensation Committee and the Utility Board, as applicable, determine in their discretion that no payment should be earned) to $28,200,000 at threshold to $75,100,000 at target performance to $187,800,000 at maximum performance, all payable in equity of reorganized PG&E Corp.

4. **Form of Awards:**
   - 2020 STIP incentive compensation for the STIP Performance Period will consist of cash awards.
   - 2020 LTIP incentive compensation will consist of PSs.

5. **Award Issuance and Payout:**
   - **2020 STIP**: All 2020 STIP awards will be paid annually following Internal Audit and Compensation Committee certification of the performance results.
   - **2020 LTIP**: The PSs will be awarded as soon as practicable after approval of the proposed 2020 LTIP, with a grant date of March 2, 2020 in compliance with the Debtors' Equity Grant Date Policy and must be held for at least three (3) years from the grant date. The PSs will be granted at a target dollar value, which will be converted into notional shares of Reorganized PG&E Corp. common stock upon the Debtors' emergence from chapter 11 based on the average closing price of Reorganized PG&E Corp. common shares on the first fifteen (15) trading days immediately following the Emergence Date. Subject to the discretion of the Compensation Committee or the Independent Utility Board, as applicable, the 2020 LTIP awards will be calculated as of the end of the Performance Period (December 31, 2022), and be adjusted by the TSR modifier. The PSs will be settled in shares of post-emergence Reorganized PG&E Corp. common stock following Internal Audit and Compensation Committee certification of the performance results.

6. **Performance-Based Awards Payout Levels**: The 2020 STIP and PS awards (together, the "**Performance-Based Awards**") will each be calculated using company scores which reflect the sum of the weighted scores for each plan. Each metric will be scored as follows:

|  | **2020 STIP** | **2020 LTIP** |
|---|---|---|
| *Threshold Performance*: | If a threshold score is achieved, the metric will be scored at 50% | If a threshold score is achieved, the metric will be scored at 50% |
| *Target Performance*: | If a target score is achieved, the metric will be scored at 100% | If a target score is achieved, the metric will be scored at 100% |
| *Maximum Performance* | If a maximum score is achieved, the metric will be scored at 150% | If a maximum score is achieved, the metric will be scored at 200% |

- Scores between (i) threshold and target and (ii) target and maximum will be interpolated on a linear basis.
- If the Debtors do not meet threshold-level performance, there will be *no* payout for that metric.

7. **2020 STIP IPM**: Employees will be subject to an individual performance modifier ("**IPM**") after the company score is calculated, whereby the payments for STIP Participants will be adjusted upwards or downwards based upon each employee's achievement of his or her individual goals. Awards will be adjusted at the end of the STIP Performance Period based upon individualized performance goals set by management, with the potential IPM adjustment ranging from a low of 75% of award

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

value to a high of 125% of award value unless the Compensation Committee or Independent Utility Board, as applicable, utilizes its discretion to zero out the score.[3]

8. **2020 LTIP TSR Modifier:** The TSR modifier adjusts LTIP payments based on a measurement of total share performance (price appreciation or depreciation, plus dividends received, if any) relative to the same measure for a comparator group of peer companies (a comparator group the Compensation Committee sets at the time of the grant annually to ensure its appropriateness) with the potential TSR modifier ranging from a low of 75% of award value to a high of 125% of award value.

9. **Eligibility Award Payout upon Termination**: If a STIP Participant (and, as applicable, an LTIP Participant) voluntarily terminates his or her employment other than for retirement, all future awards will be forfeited. If a STIP Participant (and, as applicable, LTIP Participant) retires, dies, or is involuntarily terminated, other than for cause (including termination in the case of disability), the STIP Participant (and as applicable LTIP Participant) will remain eligible to receive a prorated portion of the respective awards based on the percentage of time the STIP Participant (and as applicable LTIP Participant) remained employed during the Performance Period.

10. **Compensation Committee**: Consistent with historical practice, the Compensation Committee or the Independent Utility Board, as applicable, retain complete and final discretion to reduce or eliminate 2020 STIP and, subject to certain legal restrictions, the 2020 LTIP awards.

My team and I reviewed the terms and provisions of the 2020 STIP and 2020 LTIP and believe that the structure, performance metrics, and design and range of awards are consistent with the Debtors' industry and the intent and requirements of AB 1054. In assisting the Debtors and Compensation Committee in developing the 2020 STIP and 2020 LTIP, my team and I considered the following key objectives:

- Emphasize safety as a priority
- Ensure financial stability
- No guaranteed incentives
- Target outcomes and factors within management's control
- Incentive delivery in stock with a three (3) year deferral
- A significant portion of compensation in awards based upon PG&E's long-term performance and value
- Base a majority of compensation (>50%) on objective metrics
- Align outcomes with shareholder expectations
- Motivate, retain and attract leadership talent needed for executive transformation
- Support collaboration across businesses

Our specific findings with respect to the 2020 STIP and 2020 LTIP include the following:

- **Performance Period:** The STIP Performance Period of January 1, 2020 through December 31, 2020 and LTIP Performance Period of January 1, 2020 through December

---

[3] There is no additional cost associated with the IPM; on an overall basis, upward adjustments are offset by downward adjustments.

31, 2022 are appropriate given the circumstances of these Chapter 11 Cases. In addition, the one-time lump sum award made to the Debtors' employees at the conclusion of the respective Performance Periods is consistent with utility industry practices and appropriate for incentive plans implemented in a restructuring scenario.

- **Performance Measures and Weighting:** The number of performance metrics in each of the 2020 STIP and 2020 LTIP provides a more comprehensive measurement of performance than is typically found in the investor owned utility industry. The Debtors' proposed 2020 STIP and 2020 LTIP metrics differ from the practices of other utilities, which generally use fewer metrics and heavily weight those metrics toward financial goals, whereas each of the Debtors' 2020 STIP and 2020 LTIP includes more metrics and more heavily weights those metrics toward achieving safety objectives. My team and I also recommended for the redesigned 2020 STIP, and the Compensation Committee ultimately approved, "Line of Sight" metrics to create greater linkage between employee roles and performance metrics to further align incentive outcomes with performance employees can directly impact.

- **Payouts:** It is common to have payouts in alignment with the performance period for both normal course and restructuring incentive plans. Cash-settlement is consistent with utility industry practices for annual incentive awards and ordinary course long-term incentives are often settled in stock or cash.

- **Award Ranges:** Payout schedules that allow for a range of outcomes based on achieving threshold, target and maximum performance levels are common. The payout ranges of the 2020 STIP and 2020 LTIP are reasonable when compared to utility industry practices (generally 50% to 200% is the common payout range for threshold to maximum). As such, the 2020 STIP payout range (50% to 150%) and 2020 LTIP payout range (50% to 200%) are reasonable when compared to utility industry practices. In addition, based on PG's consulting experience, the threshold, target, and maximum payout range funding percentages are reasonable when compared to utility industry practices.

- **2020 STIP IPM**: In PG's experience, it is common to have an individual performance

component to an annual incentive plan to utilize individual performance to adjust awards based on achievement of individual objectives and goals. The IPM is consistent with utility industry practices in that respect. It is PG's view that the IPM is reasonable with the potential IPM adjustment ranging from a low of 75% of award value to a high of 125% of award value unless the Compensation Committee or Independent Utility Board, as applicable, utilize its discretion to zero out the score.

- **2020 LTIP TSR**: TSR is the most common metric in peer long-term incentive plans with over 90% of the top 25 utilities including a TSR metric.[4] Unlike the long-term incentive plans implemented by the 24 other utilities, the Debtors' 2020 LTIP only uses TSR as a modifier (and not a metric), which results in the sole effect of the TSR being to increase or decrease the performance score that is calculated based upon performance compared to customer experience and public safety goals. If PG&E used the TSR as an independent metric, then LTIP Participants could earn 2020 LTIP awards notwithstanding the company's failure to meet public safety and customer experience goals.

- **Senior Executives**: PG also undertook a separate examination of pay levels for the Senior Executives, benchmarked against the relevant peer pay comparator group.[5] PG's initial analysis found that target total direct compensation is competitive (4% above median against the benchmarked peer companies). Target total cash compensation – including the base salary and STIP target – is also competitive (1% below median against the benchmarked peer companies). Further, it is my understanding that PG&E did not make any STIP payments to employees in 2018,[6] and suspended all incentive

---

[4] The top 25 utilities include: Alliant Energy Corporation, Ameren Corporation, American Electric Power, Avangrid, CenterPoint Energy, CMS Energy Corporation, Consolidated Edison, Dominion Resources, DTE Energy Company, Duke Energy Corporation, Edison International, Entergy Corporation, Eversource Energy, Exelon Corporation, FirstEnergy Corporation, NextEra Energy, NiSource Inc., PG&E Corporation, Pinnacle West Capital, PPL Corporation, Public Service Enterprise Group, Sempra Energy, Southern Company, WEC Energy Group, and Xcel Energy.

[5] The peer comparator group consists of: AES Corporation, Ameren Corporation, American Electric Power, CenterPoint Energy, Inc., Consolidated Edison, Inc., Dominion Resources, Inc., DTE Energy Company, Duke Energy, Edison International, Entergy Corporation, Eversource Energy, Exelon Corporation, FirstEnergy Corp., NextEra Energy, Inc., Public Service Enterprise Group, Sempra Energy, Southern Company, WEC Energy Group, Inc., and Xcel Energy Inc.

[6] In 2018, the previous PG&E Corp. Compensation Committee exercised its discretion to zero out all 2018 STIP awards in light of the devastating Camp Fire.

compensation to the Senior Executives to date during the pendency of these Chapter 11 Cases. As such, the Senior Executives have been compensated at levels significantly below market. In 2019 alone, the annual target compensation of the Debtors' Senior Executives was approximately 68% below the median market target compensation earned by their peers working in similar positions at comparable utilities.[7] Absent implementation of the proposed 2020 STIP and 2020 LTIP, the total direct compensation for the Senior Executives in 2020 will likewise be significantly below market.

## Conclusion

Pay Governance reviewed the performance metrics and the plan designs and believes that they comport with, and, in fact, serve as a model for plans adopted by peers in the Debtors' industry. Based on my experience and the work I and my team at PG have done in these cases, the structure, performance metrics, design, and range of potential 2020 STIP awards and LTIP 2020 awards are reasonable and not in consistent with the Debtors' industry.

---

[7] This excludes the CEO of the Utility whose 2019 compensation package was separately approved by the Court.

Pursuant to section 1746 of title 28 of the United States Code, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March 4, 2020
Moraga, California

Lane T. Ringlee, Managing Partner
Pay Governance