STROOCK & STROOCK & LAVAN LLP
Mark A. Speiser (*admitted pro hac vice*)
(mspeiser@stroock.com)
Kenneth Pasquale (*admitted pro hac vice*)
kpasquale@stroock.com)
Sherry J. Millman (*admitted pro hac vice*)
(smillman@stroock.com)
Harold A. Olsen (*admitted pro hac vice*)
(holsen@stroock.com)
180 Maiden Lane
New York, NY 10038-4982
Tel: 212 806 5400
Fax: 212 806 6006

STROOCK & STROOCK & LAVAN LLP
David W. Moon (#197711)
(dmoon@stroock.com)
2029 Century Park East
Los Angeles, CA 90067-3086
Tel: 310 556-5800
Fax: 310 556 5959

*Counsel for Mizuho Bank, Ltd., in its capacity
as HoldCo Term Loan Administrative Agent*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>       **-and-**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                      **Debtors**<br>☐    Affects PG&E Corporation<br>☐    Affects Pacific Gas and Electric Company<br>☒    Affects all Debtors<br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**NOTICE OF APPEAL AND STATEMENT OF ELECTION TO HAVE APPEAL HEARD BY DISTRICT COURT** |

NOTICE IS HEREBY GIVEN that Mizuho Bank, Ltd., in its capacity as HoldCo Term Loan Administrative Agent ("Mizuho") hereby appeals from (i) the *Interlocutory Order Regarding Postpetition Interest* [D.I. 5669] entered on February 6, 2020 (the "PPI Order") and (ii) the related *Memorandum Decision Regarding Postpetition Interest* entered on December 30, 2019 [D.I. 5226] (the "PPI Memorandum"). Copies of the foregoing are attached hereto as **Exhibit A** and **Exhibit B**, respectively. On February 20, 2020, a *Notice of Appeal and Statement of Election to Have Appeal Heard by District Court* was filed by the Ad Hoc Committee of Holders of Trade Claims (the "Trade Committee") of the PPI Order and PPI Memorandum [Bankr. Dkt. 5844].

Pursuant to 28 U.S.C. § 158(a)(1), the PPI Order and PPI Memorandum are appealable as of right. In an abundance of caution, however, Mizuho has filed, concurrently with this notice of appeal, a cross-motion for leave to appeal the PPI Order and PPI Memorandum pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. Pro. 8004(b)(2), related to the *Motion of Ad Hoc Committee of Holders of Trade Claims for Leave to Appeal Order Regarding Postpetition Interest*, dated February 20, 2020 [Bankr. Dkt. 5845].

Pursuant to 28 U.S.C. § 158(c), Mizuho joins in the election by the Trade Committee [Bankr. Dkt. No. 5844] to have the appeal heard by the United States District Court for the Northern District of California rather than by the Bankruptcy Appellate Panel for the Ninth Circuit.

The names of all parties to the PPI Order and PPI Memorandum other than Mizuho, and the names, addresses, and telephone numbers of their respective attorneys, are:

| Party | Counsel |
|---|---|
| **Debtors** | WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>Jessica Liou (*pro hac vice*)<br>Theodore E. Tsekerides (*pro hac vice*)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>E-mail: stephen.karotkin@weil.com,<br>ray.schrock@weil.com,<br>jessica.liou@weil.com,<br>theodore.tsekerides@weil.com |

| Party | Counsel |
|---|---|
| | KELLER BENVENUTTI KIM LLP<br>Tobias S. Keller (SBN 151445)<br>Peter J. Benvenutti (SBN 60566)<br>Jane Kim (SBN 298192)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Telephone: (415) 496-6723<br>Facsimile: (650) 636-9251<br>E-mail: tkeller@kbkllp.com,<br>pbenvenutti@kbkllp.com,<br>jkim@kbkllp.com |
| Certain PG&E Shareholders | JONES DAY<br>Bruce S. Bennett (SBN 105430)<br>Joshua M. Mester (SBN 194783)<br>James O. Johnston (SBN 167330)<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, CA 90071.2300<br>Telephone: (213) 489-3939<br>Facsimile: (213) 243-2539<br>E-mail: bbennett@jonesday.com,<br>jmester@jonesday.com,<br>jjohnston@jonesday.com |
| Official Committee of Unsecured Creditors | MILBANK LLP<br>Gregory A. Bray (SBN 115367)<br>Thomas R. Kreller (SBN 161922)<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067<br>Telephone: (424) 386-4000<br>Facsimile: (213) 629-5063<br>E-mail: gbray@milbank.com,<br>tkreller@milbank.com<br><br>MILBANK LLP<br>Dennis F. Dunne (*pro hac vice*)<br>Samuel A. Khalil (*pro hac vice*)<br>55 Hudson Yards<br>New York, NY 10001-2163<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br>E-mail: ddunne@milbank.com,<br>skhalil@milbank.com |
| Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company | AKIN GUMP STRAUSS HAUER & FELD LLP<br>Michael S. Stamer (*pro hac vice*)<br>Ira S. Dizengoff (*pro hac vice*)<br>David H. Botter (*pro hac vice*)<br>Abid Qureshi (*pro hac vice*)<br>One Bryant Park |

| Party | Counsel |
|---|---|
| | New York, New York  10036<br>Telephone:  (212) 872-1000<br>Fascimile:  (212) 872-1002<br>E-mail:  mstamer@akingump.com,<br>idizengoff@akingump.com, dbotter@akingump.com<br>aqureshi@akingump.com<br><br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Ashley Vinson Crawford (SBN 257246)<br>580 California Street, Suite 1500<br>San Francisco, CA 94104<br>Telephone: (415) 765-9500<br>Facsimile: (415) 765-9501<br>E-mail: avcrawford@akingump.com |
| Attorneys for the Ad Hoc Committee of Holders of Trade Claims | DAVID M. FELDMAN (pro hac vice)<br>dfeldman@gibsondunn.com<br>MATTHEW K. KELSEY (pro hac vice)<br>mkelsey@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Telephone: 212.351.4000<br>Facsimile: 212.351.4035<br>MATTHEW D. McGILL (pro hac vice)<br>mmcgill@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br>MICHAEL S. NEUMEISTER, SBN 274220<br>mneumeister@gibsondunn.com<br>MICHELLE CHOI, SBN 313557<br>mchoi@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520 |
| BOKF, NA, in its capacity as Indenture Trustee for the Utility Senior Notes | ARENT FOX LLP<br>Andrew I. Silfen (pro hac vice)<br>Beth M. Brownstein (pro hac vice)<br>1301 Avenue of the Americas, 42nd Floor<br>New York, New York 10019<br>Telephone: (212) 484-3900<br>Facsimile: (212) 484-3990 |

| Party | Counsel |
|---|---|
| | E-mail: andrew.silfen@arentfox.com, beth.brownstein@arentfox.com<br><br>Aram Ordubegian (SBN 185142)<br>ARENT FOX LLP<br>55 Second Street, 21st Floor<br>San Francisco, CA 94105<br>Telephone: (415) 757-5500<br>Facsimile: (415) 757-5501<br>E-mail: aram.ordubegian@arentfox.com |
| Wilmington Trust, National Association, in its capacity as Administrative Agent for Holdco Revolver | PILLSBURY WINTHROP SHAW PITTMAN LLP<br>M. David Minnick (SBN 54148)<br>Four Embarcadero Center, 22nd Floor<br>San Francisco, CA 94126-5998<br>Telephone: (415) 983-1000<br>E-mail: dminnick@pillsburylaw.com<br><br>Leo T. Crowley (*pro hac vice*)<br>31 West 52nd Street<br>New York, NY 10019-6131<br>Telephone: (212) 858-1000<br>E-mail: leo.crowley@pillsburylaw.com |
| Citibank N.A., as Administrative Agent for the Utility Revolving Credit Facility | DAVIS POLK & WARDELL LLP<br>Timothy Graulich (*pro hac vice*)<br>David Schiff (*pro hac vice*)<br>Daniel E. Meyer (*pro hac vice*)<br>450 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 450-4000<br>Facsimile: (212) 701-5800<br>E-mail: timothy.graulich@davispolk.com, david.schiff@davispolk.com, daniel.meyer@davispolk.com<br><br>DAVIS POLK & WARDWELL LLP<br>Andrew D. Yaphe (SBN 274172)<br>1600 El Camino Real<br>Menlo Park, California 94025<br>Telephone: (650) 752-2000<br>Facsimile: (650) 752-2111<br>E-mail: andrew.yaphe@davispolk.com |
| Canyon Capital Advisors LLC | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Bennett Murphy (SBN 174536)<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017-2543<br>Telephone: (213) 443-3000 |

| Party | Counsel |
|---|---|
| | Facsimile: (213) 443-3100 |
| | E-mail: bennettmurphy@quinnemanuel.com |
| Consolidated Edison Development, Inc. | TROUTMAN SANDERS LLP |
| | Hugh M. McDonald (*pro hac vice*) |
| | Jonathan D. Forstot (*pro hac vice*) |
| | 875 Third Avenue |
| | New York, NY 10022 |
| | Telephone: (212) 704-6000 |
| | Facsimile: (212) 704-6288 |
| | E-mail: hugh.mcdonald@troutman.com, |
| | jonathan.forstot@troutman.com |
| | |
| | TROUTMAN SANDERS LLP |
| | Marcus T. Hall, Bar No. 206495 |
| | Katharine L. Malone, Bar No. 290884 |
| | 3 Embarcadero Center, Suite 800 |
| | San Francisco, CA 94111 |
| | Telephone: (415) 477-5700 |
| | Facsimile: (415) 477-5710 |
| | E-mail: marcus.hall@troutman.com, |
| | katharine.malone@troutman.com |
| Ad Hoc Group of Subrogation Claim Holders | WILLKIE FARR & GALLAGHER LLP |
| | Matthew A. Feldman (*pro hac vice*) |
| | Joseph G. Minias (*pro hac vice*) |
| | Benjamin P. McCallen (*pro hac vice*) |
| | 787 Seventh Avenue |
| | New York, NY 10019-6099 |
| | Telephone: (212) 728-8000 |
| | Facsimile: (212) 728-8111 |
| | E-mail: mfeldman@willkie.com, jminias@willkie.com, |
| | bmccallen@willkie.com |
| | |
| | DIEMER & WEI LLP |
| | Kathryn S. Diemer (#133977) |
| | 100 West San Fernando Street, Suite 555 |
| | San Jose, CA 95113 |
| | Telephone: (408) 971-6270 |
| | Facsimile: (408) 971-6271 |
| | E-mail: kdiemer@diemerwei.com |

Dated:  March 4, 2020       **STROOCK & STROOCK & LAVAN LLP**

By:    */s/ David W. Moon*
       David W. Moon
       Kenneth Pasquale (*admitted pro hac vice*)

       *Counsel for Mizuho Bank, Ltd., in its capacity as*
       *HoldCo Term Loan Administrative Agent*

**EXHIBIT A**



Signed and Filed: February 6, 2020

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>     - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>     Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in*<br>*the Lead Case, No. 19-30088 (DM).* | ) Bankruptcy Case<br>) No. 19-30088-DM<br>)<br>) Chapter 11<br>)<br>) Jointly Administered<br>)<br>) Date:   February 4, 2020<br>) Time:   10:00 AM<br>) Place:  Courtroom 17<br>)          450 Golden Gate Ave.<br>)          16th Floor<br>)          San Francisco, CA<br>)<br>)<br>)<br>)<br>)<br>) |

**INTERLOCUTORY ORDER REGARDING POSTPETITION INTEREST**

On December 30, 2019, the court issued a Memorandum Decision Regarding Postpetition Interest (Dkt. No. 5226). For reasons stated on p. 17 of the memorandum, the court deferred issuing an appealable order at that time. Since then, the disputed and somewhat related issue described by all parties as the Make-Whole issue has been tentatively resolved without a decision by the court. For that reason, the court believes an

-1-

order on the postpetition interest issue is appropriate at this time.

Parties adverse to the Debtors on the postpetition interest issue have disagreed on what the court should do now. One group, the Ad Hoc Committee of Holders of Trade Claims, wants a certification that the court's decision and ensuing order is final under Fed. R. Civ. P. 54(b), incorporated via Fed. R. Bank. P 7054 and a direct certification of such an order or an interlocutory order to the court of appeals under 28 U.S.C. § 158(d)(2). The other group, the Ad Hoc Committee of Senior Unsecured Noteholders, wants the court to defer any action until it confirms Debtors' Plan of Reorganization under 11 U.S.C § 1141, thus making the underlying decision on postpetition interest final for all purposes.

The court has considered the arguments of both sides, and the somewhat neutral position of the Debtors at a hearing on February 4, 2020. Under the circumstances, the court decides not to adopt either sides' position and to leave the question of dealing with an interlocutory order for another court if there is an appeal.

Accordingly, and as an interlocutory order, the court concludes that the Debtors are correct, that *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) controls and that the Federal Interest Rate applies to the postpetition treatment of unsecured creditors under any Chapter 11 Plan of Reorganization proposed by Debtors.

**\*\*END OF INTERLOCUTORY ORDER\*\***

-2-

# **EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re: ) Bankruptcy Case
) No. 19-30088-DM
PG&E CORPORATION, )
) Chapter 11
        - and - )
) Jointly Administered
PACIFIC GAS AND ELECTRIC COMPANY, )
)
        Debtors. ) Date:  December 11, 2019
) Time:  10:00 AM
☐ Affects PG&E Corporation ) Place: Courtroom 17
☐ Affects Pacific Gas and )        450 Golden Gate Ave.
        Electric Company )        16th Floor
☒ Affects both Debtors )        San Francisco, CA
)
*All papers shall be filed in* )
*the Lead Case, No. 19-30088 (DM).* )
)

**MEMORANDUM DECISION REGARDING POSTPETITION INTEREST**

I.   <u>INTRODUCTION</u>

On December 11, 2019, the court heard oral argument on the discrete legal issue of the applicable postpetition interest to be paid to four classes of allowed unsecured and unimpaired claims, under any chapter 11 reorganization plan for solvent debtors PG&E Corporation and Pacific Gas and Electric Company ("Debtors"). The Debtors, joined by certain Shareholders, argue that creditors in all four classes should receive interest

-1-

calculated pursuant to 28 U.S.C. § 1961(a) (the "Federal Interest Rate") in effect as of the petition date (January 29, 2019) these chapter 11 cases. That rate for these jointly administered cases is 2.59 percent. Debtors contend that use of the Federal Interest Rate is consistent with *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) ("*Cardelucci*"), which holds that unsecured creditors in a solvent case should receive postpetition interest calculated at the Federal Interest Rate.

Several parties, including the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Senior Unsecured Noteholders, the Ad Hoc Committee of Holders of Trade Claims and others (collectively "Unsecured Creditors") oppose the motion. They urge application of various rates, generally determined by applicable contracts between the Debtors and the respective claimants, judgment rates or some other rate.

For the following reasons, the court concludes that the Debtors are correct, that *Cardelucci* controls and that the Federal Interest Rate applies to any Plan.

II. <u>APPLICABLE LAW</u>

Statutory construction of the Bankruptcy Code[1] is "a holistic endeavor" requiring consideration of the entire statutory scheme. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), cited by *In re BCE West, L.P.*, 319 F.3d 1166, 1171 (9th Cir. 2003).

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

-2-

In *Timbers*, the Supreme Court utilized this holistic approach to analyze five seemingly unconnected provisions of Title 11 in determining that oversecured creditors are entitled to receive postpetition interest.  Applying a similar holistic approach, this court has looked to the structure of the Bankruptcy Code and the purposes behind its many parts to conclude while unsecured creditors are entitled to postpetition interest in a solvent estate, the Bankruptcy Code requires application of the Federal Interest Rate to those claims and that such an application does not impair these claims.  Even if *Cardelucci* were not binding, the court would reach the same conclusion.

Chapter 5, subchapter I ("Creditors and Claims") of the Bankruptcy Code sets forth the guiding principles for filing and allowance of claims or interests, administrative expenses, determination of secured status and other provisions not important to the current analysis.  In contrast, the court must apply the critical provisions of chapter 11, subchapter II ("The Plan").  Section 1123(a) states what a plan "shall" do or include.  Section 1123(b) states what a plan "may" do or include.  As a definitional matter, section 1124 explains that a class of claims or interest is impaired <u>unless</u> the plan leaves certain legal, equitable and contractual rights unaltered (§ 1124(1)), or cures, restates, or compensates the rights of class or interest members (§ 1124(2)(A)-(E)).

The structure of the Bankruptcy Code and the applicability of these definitional and empowering sections, therefore, dictate rights that are fixed as of the petition date and what

-3-

rules apply after that. Nothing suggests that, absent specific rules, provisions dealing with prepetition entitlements carry over postpetition. For example, section 502(b)(2) clearly provides that a claim for "unmatured interest"[2] may not be allowed. An exception to the rule is found in section 506(b) that permits accrued interest to be allowed as long as the security is "greater than the amount of such claim."

The Unsecured Creditors' argument that somehow the definitions and remedies found in section 1124 override the plain impact of section 502(b)(2) is simply not persuasive and would require the court to ignore not only the plain words of the statute but also the holistic notion of treating them as part of a combined comprehensive instrument of definitions, applicability and implementation. Section 1124(1) describes what claims are unimpaired and section 1124(2) describes what is necessary for a plan to "unimpair" impaired claims. In contrast, chapter 5 ("Creditors and Claims") dictates how claims and interests are dealt with in the substantive chapters: 7, 11, 12 and 13. The subparts of section 502(b) list nine specific rules for affecting allowed claims.

An example not directly related to this case proves the point. Section 502(b)(4) disallows the claim of an insider or an attorney to the extent it exceeds the reasonable value of the services. Unsecured Creditors could not persuade the court or even make a convincing argument that somehow an insider or an attorney whose asserted claim exceeds a reasonable value could

---

[2]   No one has suggested that "unmatured interest" means anything other than "postpetition interest."

take refuge in section 1124((1)'s definitional provision and
escape the clear intention of Congress to limit unreasonable
claims for services in the same manner it has limited
postpetition unsecured claims for unmatured interest. For the
same reason, underlying non-bankruptcy law must give way to
contrary provisions of the Bankruptcy Code. *Travelers Cas. &
Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 444
(2007) (quoting *Raleigh v. Illinois Dept. of Revenue*, 530 U.S.
15, 20 (2000).

   With that background, the court turns to the applicability
of *Cardelucci* and its clear message.

   III. <u>THIS COURT'S RESPONSIBILITY UNDER *STARE DECISIS*</u>

   This court is bound by the Ninth Circuit's *Cardelucci*
decision unless it can be distinguished or overruled:

> Courts are bound by the decisions of higher courts
> under the principle of *stare decisis*. The doctrine
> derives from the maxim of the common law, "Stare
> decisis et non quieta movere," which literally means,
> "Let stand what is decided, and do not disturb what is
> settled." See 1B Jeremy C. Moore et al., Moore's
> Federal Practice ¶ 0.402[1] (2d ed. 1992). Moore's
> treatise describes the rule as follows:
>
>> The rule, as developed in the English law,
>> is that a decision on an issue of law
>> embodied in a final judgment is binding on
>> the court that decided it and such other
>> courts as owe obedience to its decisions, in
>> all future cases. *Id.*
>
> Under this principle a decision of a circuit court of
> appeal is binding on all lower courts in the circuit,
> including district courts and bankruptcy courts
> (absent a contrary United States Supreme Court
> decision). *Zuniga v. United Can Co.*, 812 F.2d 443, 450
> (9th Cir. 1987).

-5-

> This is true even if there is a split of opinion
> between the controlling circuit and another circuit
> court of appeals, and the lower court believes that
> the controlling circuit court is in error. *Zuniga*,
> 812 F.2d at 450; *Hasbrouck v. Texaco, Inc.*, 663 F.2d
> 930, 933 (9th Cir. 1981)[.]

In re Globe Illumination Co., 149 B.R. 614, 617 (Bankr. C.D. Cal. 1993) (multiple internal citations omitted).

*Cardelucci* is a published panel opinion by the Court of Appeals for the Ninth Circuit. It is binding on this court. *State Farm Fire & Cas. Ins. Co. v. GP West, Inc.,* 2016 WL 3189187, 90 F. Supp.3d 1003, 1018 (D. Haw. 2016) (citation and internal quotation marks omitted). *See Lair v. Bullock*, 798 F.3d 736, 747 (9th Cir. 2015) ("[W]e are bound by a prior three-judge panel's published opinions, ....") (citing *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc)).

IV. THE HOLDING OF *CARDELUCCI*

In *Cardelucci*, the Ninth Circuit framed the issue before it as follows:

> This appeal presents the narrow but important
> issue of whether such post-petition interest is
> to be calculated using the (federal judgment
> rate) or is determined by the parties' contract
> or state law.

*Cardelucci,* 285 F.3d at 1231.

The Ninth Circuit held that in chapter 11 cases involving solvent debtors, unsecured creditors are entitled to postpetition interest at the federal judgment rate, not at not

-6-

at contractual or state statutory rates. *Id.* at 1234. In so holding, the Ninth Circuit observed that application of the lower federal judgment rate did not violate an unsecured creditor's substantive due process rights (*id.* at 1236) and that utilization of federal judgment rate for all claims was rationally related to legitimate interests in efficiency, fairness, predictability, and uniformity within bankruptcy system. *Id.*

While the court pinpointed a "narrow but important issue," it did not narrow the application of its holding, which must be applied broadly given the structure of the Bankruptcy Code and the clear and plain meaning of its applicable provisions, as noted above.

In *Cardelucci*, the debtor and his opponents, holders of a state court judgment, set aside various differences and thereby permitted confirmation to proceed subject to a reservation of rights concerning the applicable postpetition interest rate.[3] The Ninth Circuit concluded that the reference by Congress to "the legal rate" in section 726(a)(5) was intentional, in that

---

[3] While the opinion is silent on the specifics of that debtor's plan, the opponents' claim was impaired for reasons not relevant to this analysis. In the present case the Unsecured Creditors' claims are unimpaired. The Unsecured Creditors put the cart before the horse when they contend that the application of the "fair and equitable" test of section 1129(b) determines that their claims are impaired under section 1124.

-7-

Congress had rejected proposed language of "interest on claims allowed." *Cardelucci,* 285 F.3d at 1234. The court also emphasized that a single, easily determined rate for all postpetition interest ensures equitable treatment of creditors.[4] Although *Cardelucci* was a chapter 11 case, the reference to section 726(a)(5) was critical. Without that reference, the court would be compelled by section 502(b)(2) to allow claims "except to the extent that . . . (2) such claim is for unmatured interest."[5] There is no specific provision in chapter 11 that allows any interest on unsecured claims.[6] Without that reference, Unsecured Creditors would be left with no allowed postpetition interest.

The rule in the seventeen years since *Cardelucci* is clear: unsecured creditors of a solvent debtor will be paid the Federal Interest Rate whether their prepetition contracts call for higher or lower rates, or applicable state law judgment rates

---

[4]    In this case, given the vast array of creditors' claims, the equal application of such uniform policy is all the more compelling.

[5]    The exception found in section 506(b) for secured claims has no bearing here.

[6]    The court rejects the argument by the Ad Hoc Committee of Holders of Trade Claims that section 103(b) precludes consideration of section 726(a)(5). *Cardelucci* merely compared the chapter 7 outcome (apply the Federal Interest Rate) as part of the "best interest" test of Section 1129(a)(9) to compare whether creditors do better in chapter 7 or chapter 11.

-8-

are higher, or there are no other applicable rates to consider.
Nor is that rule limited to impaired claims. *Cardelucci* is
unequivocal and articulates several reasons for broad
application of its holding despite the recognition of the narrow
issue presented:

> 1. The use of the term "legal rate" indicates the Congress
>    intended the single source to be statutory because of the
>    common use of the term when the Bankruptcy Code was
>    enacted.
>
> 2. Using the federal rate promotes uniformity within federal
>    law.
>
> 3. The analogous post-judgment interest entitlement
>    compensates for being deprived of compensation for the
>    loss of time between ascertainment of damages and
>    payment.
>
> 4. Application of a single, easily determined rate ensures
>    equitable treatment of creditors.
>
> 5. With a uniform rate, no single creditor will be eligible
>    for a disproportionate share of the remaining assets.

*Cardelucci*, 285 F.3d at 1235-1236.

The Unsecured Creditors refer to the opinion's "parting
note" to support their cause. The actual conclusion rejects a
substantive due process argument that has not been developed
here for good reasons. To this court, the "parting note" that
dooms their cause is in the penultimate paragraph, and bears
repeating:

> The Court recognizes that these two interests,
> fairness among creditors and administrative
> efficiency, may be of limited relevance in certain
> bankruptcy proceedings. Where there are only a few
> unsecured creditors seeking post-petition interest and
> there are sufficient assets to pay all claims for all

Case: 19-30088   Doc# 6095-1   Filed: 03/05/20   Entered: 03/05/20 10:52:53   Page 20
of 28
Case: 19-30088   Doc# 6093   Filed: 03/05/20   Entered: 03/05/20 10:55:25   Page 20
of 28

interest (sic), there will be no concerns regarding equity among creditors or practicality. In those instances, a debtor may receive a windfall from the application of a lower federal interest rate to an award of post-petition interest. Nonetheless 'interest at the legal rate' is a statutory term with a definitive meaning that cannot shift depending on the interests invoked by the specific factual circumstances before the court. *See In re Thompson,* 16 F.3d 576, 581 (4th Cir. 1994).

*Cardelucci*, 285 F.3d at 1236.

Unsecured Creditors' reliance on older cases invoking the "absolute priority" rule in defense of postpetition interest at the contract rate are unavailing. *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510 (1941), was decided under the former Bankruptcy Act and is of questionable viability now that the Bankruptcy Code includes sections 726(a)(5) and 502(b)(2). Similarly, *Debentureholders Protective Committee of Continential Inv. Corp. v. Continental Inv. Corp.*, 679 F.2d 264 (1st Cir. 1982), was decided under Chapter X of the former Bankruptcy Act and thus offers no guidance here.

The Ninth Circuit's decision in *L&J Anaheim Associates v. Kawasaki Leasing International, Inc.* (*In re L&J Anaheim Associates*), 995 F.2d 940 (9th Cir. 1993) does not change the outcome. *L&J Anaheim* was decided only a few months after *Cardelucci* and did not cite it, as it addressed an altogether different issue.

In *L&J Anaheim*, a secured creditor filed a chapter 11 plan that was opposed by the debtor. In order to achieve the statutory requirement for at least one impaired class, the creditor, Kawasaki, proposed changing its own state law remedies

-10-

following debtor's breach. It eliminated its right to exercise various remedies under the California Uniform Commercial Code, replacing those entitlements under its proposed plan with a requirement that its collateral and a related lawsuit be sold at public auction under procedures mandated by the Bankruptcy Code.

In determining that Kawasaki's rights were altered, and thus its claim was impaired, the court stated:

> At first blush the idea that an improvement in ones' position as a creditor might constitute 'impairment' seems nonsensical."

*L & J Anaheim,* 995 F.2d at 942.

The court examined the term of art adopted by Congress to replace language in the prior Bankruptcy Act and concluded that section 1124 created certainty in determining whether or not a creditor was impaired. Once again, section 1124 is definitional, describing improvement in the context of the plan presented as impairment. The court had no occasion to address whether, for an impaired class, postpetition interest was even relevant.

Of importance here is that the plan's own language altered Kawasaki's rights; in the present case, the Bankruptcy Code, and not the Plan, is what causes Unsecured Creditors to have their postpetition interest limited to the Federal Judgment Rate. The Plan is not the culprit.

A few months after *Cardelucci*, the Ninth Circuit *decided Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.*, 314 F.3d 1070 (9th Cir. 2002). There, the court addressed whether or not a plan proponent had proposed the plan

-11-

in good faith under section 1129(a)(3) when its sole purpose was to enable the debtors to cure and reinstate an obligation. At that time, *Great W. Bank & Trust v. Entz-White Lumber and Supply, Inc. (In re Entz-White Lumber and Supply, Inc.)*, 850 F.2d 1338 (9th Cir. 1988), was good law. Under *Entz-White*, plan proponents were permitted to cure defaults under former section 1124(3), leaving the objecting creditor not impaired under section 1124. Perhaps predicting the crucial distinction between what a plan does and what the Bankruptcy Code does, the *Sylmar Plaza* court rejected the argument that a plan lacks good faith when it permits owners of a solvent debtor to avoid paying postpetition interest at the default interest rate. The fact that a creditor's contractual rights are adversely affected does not by itself warrant a bad faith finding. Quoting the bankruptcy court in *In re PPI Enters. (US), Inc.*, 228 B.R. 339 (Bankr. D. Del. 1998), the court stated:

> In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely altered creditors' contractual and non bankruptcy rights . . . .

> The fact that a debtor proposes a plan which it avails itself of an applicable Code provision does not constitute evidence of bad faith.

*Sylmar Plaza*, 314 F.3d at 1075 (citations omitted).

Cases cited by the *Sylmar Plaza* creditor to support a per se rule were distinguishable in that neither adopted or approved such a rule and, moreover, ". . . because none involved an objection to a plan by an unimpaired creditor." *Id.*

-12-

At oral argument counsel for one of the Unsecured Creditors argued that *Cardelucci* has been superseded by *In re New Investments, Inc.*, 840 F.3d 1137 (9th Cir. 2016). That argument is unavailing. The *New Investments* decision concludes that the 1994 amendments to section 1124 abrogated the holding of *Entz-White* that default interest rates could be eliminated by curing defaults under a plan. The decision does not even mention postpetition interest or *Cardelucci* and does not deal with unimpaired claims under section 1124(1) and thus is of no bearing on the issue presented or the outcome here.

V.  IMPAIRED OR UNIMPAIRED CLAIMS ARE TREATED ALIKE

Unsecured Creditors attempt in vain to escape *Cardelucci's* impact by arguing that, unlike the impaired claim there, their claims will be unimpaired under a plan. The court rejects Unsecured Creditors' argument.

First, *Cardelucci*, in answering the narrow question, drew no distinction as to whether the rule it announced was confined only to impaired claims. The clear and unequivocal analysis based on section 726(b)(5) is obvious: it applies to all unsecured and undersecured claims in a surplus estate.

Second, no plan compels the payment of the Federal Interest Rate. Rather, the Bankruptcy Code does. A similar analysis was applied very recently by the Fifth Circuit in *In re Ultra Petroleum Corporation*, ___ F.3d ___, 2019 WL 6318074 (November 26, 2019). There, the court contrasted the treatment of creditors' claims outside of bankruptcy and whether the plan itself was a source of limitation on their legal, equitable and contractual rights, or rather the Bankruptcy Code. The court

-13-

looked to the language of section 1124(1), defining not impaired when the plan ". . . leaves unaltered [the claimant's] legal, equitable and contractual rights."  The court ruled that a claim is impaired only if the plan itself does the altering, not what the Bankruptcy Code does.

*Ultra Petroleum* agreed with the only other court of appeals decision to draw the distinction between what a plan might do and what the Bankruptcy Code does do.  *In Solow v. PPI Enterprises (U.S.) Inc. (In re PPI Enterprises (U.S.) Inc.),* 324 F.3d.197 (3d Cir. 2003) the court upheld confirmation of a plan notwithstanding a limitation on an objecting landlord's statutorily capped damages under section 502(b)(6). It held that where section 502(b)(6) alters a creditor's non-bankruptcy claim, there is no alteration of the claimant's "legal, equitable and contractual rights" for purposes of impairment under section 1124(1).  *Id.* at 203.

The *PPI Enterprises* court agreed with the bankruptcy court's analysis in *In re American Solar King Corp.*, 90 B.R. 808 (Bankr. W.D. Tex. 1988) where the bankruptcy court made the following very thoughtful observation:

> A closer inspection of the language employed in [s]ection 1124(1) reveals 'impairment by statute to be an oxymoron.'  Impairment results from what the <u>plan</u> does, not what the statute does.  A plan which 'leaves unaltered' the legal rights of a claimant is one which by definition, does not impair the creditor.  A plan which leaves a claimant subject to other applicable provisions of Bankruptcy Code does no more to alter a claimant's legal rights than does a plan which leaves a claimant vulnerable to a given state's usury laws or to federal environmental laws.  The Bankruptcy Code itself is a statute which, like other statutes, helps

-14-

> to define the legal rights of person's, just as surely
> as it limits contractual rights. Any alteration of
> legal rights is a consequence not of the plan but of
> the bankruptcy filing itself.

*American Solar,* 90 B.R. at 819-20.

The *Ultra Petroleum* court noted that decisions from bankruptcy courts across the country have reached the same conclusion, agreeing that impairment results from what a plan does, not from what a statute does. Its conclusion reinforces the point:

> We agree with *PPI*, every reported decision identified
> by either party, and Collier's treatise. Where a plan
> refuses to pay funds disallowed by the Code, the Code
> – not the Plan – is doing the impairing.

*Ultra Petroleum,* 2019 WL 6318074 at *5.

Like the creditors in *Ultra* Petroleum, the Unsecured Creditors' complaint is with Congress and the Bankruptcy Code, not the drafters of a Plan. The Bankruptcy Code, not the Plan, limits them to the Federal Interest Rate.[7] The cases cited by Unsecured Creditors do not apply here, as the rights in those cases were impaired by the plan and not by operation of law. *See Acequia, Inc. v. Clinton (In re Acequia)*, 787 F.2d 1352, 1363 (9th Cir. 1986) (shareholder voting rights altered by plan); *In re Rexford Properties, LLC*, 558 B.R. 352, 368 (Bankr. C.D. Cal 2016) (creditor's rights regarding ongoing business altered by plan).

There is no point in discussing section 1124(2), as that subsection is not relevant to the treatment of the four not

---

[7] For the same reason, creditors who hold contractual claims calling for interest lower than 2.59% will fare better under the Plan.

-15-

impaired classes. Were Debtors to have proposed a treatment of the Unsecured Creditors' claims that cured, reinstated, or reversed any acceleration, then the analysis might be helpful. But because section 1124(1) is the operative section here, that ends the discussion.

Because the Plan leaves the Unsecured Creditors' claims not impaired, there is also no need to dwell on whether or not "fair and equitable" principles apply. They do not. Unimpaired Creditors, when treated as dictated by the Bankruptcy Code, are not impaired by the Plan. They are conclusively presumed to have accepted the Plan. Section 1126(f). Section 1129(b) is not available to them.[8]

VI. CONCLUSION

As a trial court in the Ninth Circuit, this court is bound to follow *Cardelucci* unless, as a matter of principled reasoning, it can be distinguished. No such grounds exist. The 1994 amendments to section 1124 predated *Cardelucci*. Thus, whether or not *Cardelucci* addressed the issue is not the point. Its rule is the law of this circuit until altered either by an *en banc* panel, the United States Supreme Court, legislation or some other controlling change in the law.

Even were *Cardelucci* not controlling, this court would follow the lead of *PPI* and *Ultra Petroleum* (and the lower court decisions cited by *Ultra Petroleum)*, and reject the contention

---

[8]   For this reason, the court rejects as incorrect the bankruptcy court's reliance *In re Energy Future Holdings*, 540 B.R. 109 (Bankr. D. Del. 2015) on "equitable principles" to permit unsecured creditors in a solvent case to recover a contract rate or such other rate as it deemed appropriate.

-16-

of Objecting Creditors that imposition of the Federal Interest Rate impairs them. It is the Bankruptcy Code itself, not any plan provision, that imposes that rate.[9]

The court is not concurrently entering an order consistent with this Memorandum Decision as was the case with its recent decision in the Inverse Condemnation action (Dkt. No. 4895). Because of the close relationship between the postpetition interest question and the issues presented in the forthcoming Make-Whole dispute, orders disposing of them both at the same time seems appropriate and efficient. Whether either or both questions should be certified for direct appeal or to treated as final for purposes of Fed. R. Bankr. P. 7054, can be visited later.

***END OF MEMORANDUM DECISION***

---

[9] *Ultra Petroleum* remanded the case to the bankruptcy court to decide the appropriate Make-Whole amounts, the appropriate postpetition interest rate, and the applicability of the solvent-debtor exception. If the three judges on the Fifth Circuit panel had been members of the Ninth Circuit, there is no doubt they would have been bound by *Cardelucci*, thus limiting the remand to the Make-Whole issue.

-17-