1  LAURIE A. DEUSCHEL
   5120 Second Street
2  Rocklin, CA 95677
   (916) 289-3532
3



FILED

MAR 05 2020

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

4  Unsecured Creditor In Pro Se

5

6            IN THE UNITED STATES BANKRUPTCY COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                    SAN FRANCISCO DIVISION

9

| 10 | In re: | Case No.:3:19-bk-30088 (Lead Case) |
|----|--------|-----------------------------------|
| 11 | PG&E CORPORATION, | Chapter 11 |
| 12 | Debtor. | |
| 13 | In re: | Case No.:3:19-bk-30089 |
| 14 | PACIFIC GAS AND ELECTRIC CO., | Chapter 11 |
| 15 | | (Jointly Administered) |
| 16 | Debtor. | DECLARATION OF LAURIE A DEUSCHEL |
| 17 | ___ Affects PG&E Corporation | AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR RELIEF FROM |
| 18 | | AUTOMATIC STAY BY LAURIE A |
| 19 | _X_ Affects Pacific Gas and Electric Co | DEUSCHEL |
| 20 | ___ Affects Both Debtors | Date: April 29, 2020 |
| 21 | All papers shall be filed in the Lead | Time: 10:00am |
| 22 | Case No. 19-30088(DM) | Place: Courtroom 17 |
| 23 | | 450 Golden Gate Avenue, 16th Floor San Francisco, California |
| 24 | | Judge: Hon. Dennis Montali |
| 25 | | |

26        I, Laurie A. Deuschel, declare as follows:

27        1.      This Declaration is made and submitted in support of my Motion for Relief from the

28  Automatic Stay by Laurie A. Deuschel (hereinafter "Motion") and in support of this Request for

1

Judicial Notice.

2. Except as otherwise indicated, all statements set forth in this Declaration are based upon my personal knowledge or my review of relevant records and documents. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

3. As of December 31, 1986, I owned the property located at 5120 Second Street in Rocklin, County of Placer, California and have been receiving utility services from Pacific Gas and Electric Company (hereinafter "PG&E").

4. On or about December 11, 2017, I commenced a civil lawsuit in the Superior Court for the State of California in and for the County of Placer (hereinafter "State Court Action") against PG&E and others defendants.

5. However, I did not serve the summons and complaint due to the death of my step-daughter who died from her suicide injuries on October 23, 2017 and due to my step-son's mental health difficulties who was placed on an involuntary psychiatric hold in February 2018.

6. On or about January 29, 2019, while working on amending the complaint, I heard via the media that PG&E was "considering" filing for bankruptcy protection from the residents and businesses of the 2018 "Camp Fire".

7. On or about February 22, 2019, I filed and served the First Amended Complaint for Damages and for Injunction (Nuisance, Infliction of Emotion Distress and/or Trespassing) and Summons upon all defendants including PG&E without the knowledge that PG&E actually filed.

8. The Court is requested to take judicial notice of the First Amended Complaint in the State Court Action, a true and correct copy of which is attached hereto as Exhibit 1.

9. On or about March 28, 2019, the City of Rocklin filed a Declaration of Good Faith . . . In Support of Automatic 30-day Extension Pursuant to CCP 430.41(a)(2).

10. On or about April 2, 2019, the two other defendants filed their Answer to First Amended Complaint.

11. On or about April 15, 2019, PG&E informed me of their bankruptcy filing and that I needed to file a Notice of Stay of Proceedings in the State Court Action.

12. On or about May 2, 2019, City of Rocklin filed a Demurrer, which has been stayed and can be cured with another amended complaint.

13. On or about May 25, 2019, the State Court Action suspended the May 31, 2019 hearing until the outcome of PG&E's bankruptcy.

2

14.     On or about August 28, 2019, I updated the State Court Action of this Court's pending decisions on several other Unsecured Creditors' Motion for Relief from the Automatic Stay and provided the Claims Bar deadline date.

15.     On or about November 18, 2019, I sought a stipulation to waive the automatic stay from PG&E's attorneys, Stephen Karotkin of Weil, Gotshal & Manges LLP and Tobias S. Keller of Keller & Benvenutti LLP via facsimile, which is attached hereto as Exhibit 2.

16.     On or about November 19, 2019, I again updated the State Court Action of this Court's pending decisions on several other Unsecured Creditor's Motion for Relief from the Automatic Stay. There is a status conference hearing date schedule for March 3, 2020 in the State Court Action.

17.     Although a Proof of Claim has been filed before the deadline, I will need to amend the Proof of Claim after the State Court Action's determination.

18.     On or about January 4, 2020, I discovered PG&E's refusal to cooperate via electronic mail, which is attached hereto as Exhibit 3.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this day of February 29, 2020 at Rocklin, California.

*Laurie A. Deuschel*

Laurie A. Deuschel
Unsecured Creditor In Pro Se

3

Case: 19-30088    Doc# 6110    Filed: 03/05/20    Entered: 03/05/20 14:15:05    Page 3 of 30

# EXHIBIT 1

1 LAURIE A. DEUSCHEL
5120 Second Street
2 Rocklin, CA 95677
(916) 289-3532
3

4 PLAINTIFF IN PRO PER

5

6

7

8              IN THE SUPERIOR COURT OF CALIFORNIA

9              IN AND FOR THE COUNTY OF PLACER COUNTY

10

11 LAURIE A. DEUSCHEL,                    CASE NUMBER SCV0040437
                Plaintiff,
12

13 v.                                      FIRST AMENDED COMPLAINT FOR
                                           DAMAGES AND FOR INJUNCTION
14 CLEAR POINT FINANCIAL GROUP, INC.,      (NUISANCE, INFLICTION OF
        A California Corporation,          EMOTIONAL DISTRESS AND/OR
15 KAMYSHIN INVESTMENTS, INC.,             TRESPASSING)
        A California Corporation,
16 PACIFIC GAS AND ELECTRIC CO.,
        A California Corporation,
17 CITY OF ROCKLIN,
        A California Local City Government,
18 DOES 1 THRU 10,000,
        Defendants.
19

20

21

22 Plaintiff alleges:

23                      GENERAL ALLEGATIONS

24      1.      Plaintiff Laurie A. Deuschel, at all times relevant to this complaint, was and is the

25 owner of certain real property situated at 5120 Second Street, Rocklin, Placer County, California,

26 which is more particularly described in Exhibit A, attached to and expressly incorporated in this

27 complaint (hereinafter "Plaintiff's Property").

28

Case: 19-30088    Doc# 6110    Filed: 03/05/20    Entered: 03/05/20 14:15:05    Page 5 of 30

FILED
Superior Court of California
County of Placer

FEB 22 2019

Jake Chatters
Executive Officer & Clerk
By: S. Hubbard, Deputy

2.    Plaintiff's Property is Parcel One of the original [full] lot and consists of a residential house, attached porch, driveway, attached carport, detached shed, four mature trees, which includes an approximately 100-year-old and approximately 100-foot tall tree (hereinafter "Tree") that is situated in the front yard on the property line, and three fruitless Mulberry trees, which are situated as follows: one in the front yard, one in the side yard,  and one in the backyard, fencing, and is used for her and her family's residential use.

3.    At all times relevant to this complaint, Defendants Clear Point Financial Group, Inc., (hereinafter "Defendant Clear Point") and Kamyshin Investments, Inc. (hereinafter "Defendant Kamyshin") were the owners of a parcel of real property situated at 5130 Second Street, Rocklin, Placer County, California (hereinafter "Defendant's Property"), which is adjacent to Plaintiff's Property (as seen in attached Exhibit B), as described in Book 90 of Deeds at page 305, in the Placer County Recorder Office.

4.    Defendant's Property is a full size lot and [originally] consisted of an [1885] residential house with additional attach structures and patios, several out buildings (sheds), backyard driveway and carport, and trees, which included an approximately less than 100-year old similar tree, fencing and was not being used as a residence for anyone. Both properties' grade level were even.

5.    Defendant Pacific Gas and Electric Company is, and at all times herein mentioned, a California Corporation who conducts business in Placer County (hereinafter "Defendant PGE") and provide both natural gas and electrical service to both properties described above.

6.    Defendant City of Rocklin is, and at all times herein mentioned, a local government conducting business within Placer County (hereinafter "Defendant Rocklin").

7.    Plaintiff does not know the true names, capacities, whether individual, corporate, associate, or otherwise, or basis for liability of Defendants sued in this action as Does 1 thru 10,000, inclusive, and will amend this complaint when that information is ascertained. Plaintiff is informed

and believes, and on that basis alleges, that each Doe Defendant was in some manner intentionally, negligently, recklessly, or as a result of extra-hazardous activities, responsible and/or cause of the events, happenings, and occurrences alleged in this complaint that resulted in damage and injury to the Plaintiff.

8.      Plaintiff is informed and believes, and on that basis alleges that, that at all times relevant to this complaint each Defendant, including any Defendants fictitiously named (hereinafter "DOES"), was acting as the agent, servant, employee, partner, or joint venture of each other Defendant in doing the things alleged, was acting within the course and scope of such agency, employment, partnership, or joint venture with the knowledge and consent or ratification of each Defendant in doing the things alleged, and is responsible in some manner for the damages claimed by Plaintiff.

9.      At all times relevant to this complaint, Defendants Clear Point and Kamyshin had been using and maintaining their property with the intent to sell the property. Without any notice given to or the consent or authority and against the will of Plaintiff, Defendants Clear Point, Kamyshin, and DOES entered Plaintiff's Property and began cutting and removing branches and limbs from the trees thus causing damage to Plaintiff's Property; failed to maintain the existing fence thus exposing Plaintiff's Property to trespassers, thefts, and damages; elevated the natural grade without installing a proper retaining wall; and erected an enormous high fence.

10.     Without obtaining "easement rights", Defendant PGE maintained an overhead electrical drop service line through Plaintiff's Property that attaches to Defendants' Property. This overhead electrical drop service line came from the power pole adjacent to Plaintiff's Property and hung through the front trees located on Plaintiff's Property.

11.     At all times relevant to this complaint, Defendants' above-described use and maintenance of their property interfered and continue to interfere with Plaintiff's comfortable

3

enjoyment and use of Plaintiff's Property, obstructed and continue to obstruct the free use of Plaintiff's Property, injured and continue to injure Plaintiff's health, and was and is offensive to Plaintiff's senses.

12.　　Defendants Rocklin and PGE issued permits inconsistent with laws of the state of California, Defendant PGE's policies and/or procedures, California Public Utilities Commission, and California Resource Codes to Defendants Clear Point, Kamyshin, and/or DOES. Defendant Rocklin refused to prevent the damage to Plaintiff's Property and Defendant PGE refused to prevent further and/or future damage after Plaintiff contacted each of them.

13.　　At all times relevant to this complaint, Defendants owed Plaintiff a duty to refrain from doing the acts that interfere with Plaintiff's comfortable enjoyment of Plaintiff's Property, obstruct the free use of Plaintiff's Property, and injure Plaintiff's health and offend Plaintiff's senses.

14.　　The acts and omissions alleged herein took place in Placer County, California.

FIRST CAUSE OF ACTION

(Damages for Nuisance Against Defendants Clear Point, Kamyshin, and DOES)

15.　　Plaintiff incorporates by reference into this cause of action each allegation of paragraphs 1 through 14 of the General Allegations.

16.　　Defendants' use and maintenance of its property, as described above and below, constitutes a nuisance under Civil Code Section 3479.

17.　　Plaintiff believes that in or about 2016, Defendants applied for permits from Defendants City of Rocklin and PGE who issued permits to perform construction on Defendants' Property, which included extending the residential house, moving the underground natural gas transmission pipeline and overhead electrical service line closer to Plaintiff's Property thereby damaging Tree and causing great discomfort to Plaintiff.

18.　　On or about December 8, 2016, without any notice to and discussion with Plaintiff,

Plaintiff's First Amended Complaint for Damages

4

Defendants cut and removed branches and/or limbs from the fruitless Mulberry trees that are situated on Plaintiff's Property.

19.     On or about December 9, 2016, without any notice to and discussion with Plaintiff, Defendants cut and removed all the branches and/or limbs from the Tree that partially straddles the property line. This Tree has no branches and/or limbs that face Defendant's Property (see attached Exhibit C) thus exposing it to the damaging elements. Defendants also removed several of the Tree's feeder roots.

20.     On or about December 9, 2016, Defendants either recklessly and/or intentionally removed Defendant PGE's [live] overhead electrical drop service line from Defendants' house with the intent to hook it up to a temporary pole erected on Defendants' Property.

21.     Sometime after 4:00pm, Plaintiff received numerous text messages and telephone calls from neighbors about Plaintiff's Property. Upon arriving home nearly an hour later, Plaintiff discovered Defendant PGE's [live] overhead electrical drop service line not only laying entirely across Plaintiff's Property but also on the metal fence thus preventing Plaintiff and her family from entering upon Plaintiff's Property. As she assessed the situation, Plaintiff saw Defendants standing near the temporary pole and heard them laughing. There were no emergency service vehicles.

22.     Plaintiff contacted and waited for Defendant PGE who informed her that Defendants did not have a permit. Plaintiff was unable to access Plaintiff's Property for nearly four hours.

23.     On or about December 10, 2016, without the any notice, discussion or the consent or authority and against the will of the Plaintiff, Defendants kept many of the Tree's branches for themselves and disposed of the rest thus depriving Plaintiff of the firewood.

24.     On or about December 10, 2016, and thereafter, Defendants failed to maintain the wooden "boundary" fence between the two properties thus exposing Plaintiff's Property to trespassers and thieves. Plaintiff monitored the trespasses and noticed numerous thefts and damages

Case: 19-30088     Doc# 6110     Filed: 03/05/20     Entered: 03/05/20 14:15:05     Page 9 of 30

to Plaintiff's Property.

25. On or about December 13, 2016, and thereafter, without notice, discussion or the consent or authority and against the will of the Plaintiff, Defendant erected temporary metal fence posts and plastic construction fencing onto Plaintiff's Property thus exposing Plaintiff's Property.

26. On or about December 29, 2016, and thereafter, Defendants cut and removed the Tree's major feeder roots.

27. In or about January 2017, and thereafter, Defendants repeatedly toss personal trash into Plaintiff's garbage and green waste receptacles, which are situated on Plaintiff's Property. Plaintiff repeatedly monitor and remove trash from the "green waste" can in order not to be fined by Recology Auburn-Placer garbage service. Plaintiff also noticed somebody had been jumping her driveway gate. The gate is sagging and the post appears slightly bent.

28. In or about April 2017, Defendants, without complying with California's Good Neighbor Fence Act of 2013 (Civil Code Section 841 et. seq.), completely removed the rest of boundary fence between the two properties; erected a timber retaining wall that either sat onto or above the original grade level of both properties; and erected wooden fence posts approximately 7-foot in height within Plaintiff's driveway without notice, discussion, consent or authority and against Plaintiff's will as well as along Plaintiff's Property with wooden fence side rails, which were nailed into the Tree's trunk. Plaintiff's property was completely exposed for several months afterwards.

29. In or about September 2017, Defendants raised the existing Defendants' Property grade level beyond the normal scope of the surrounding properties thus placing Plaintiff's Property lower than when she originally purchased.

30. In or about October 2017, Defendants completed the boundary fence around Defendant's Property. This fence was approximately 10-feet high including the retaining wall across Defendants' backyard that faces Third Street, approximately 8-feet high including the retaining wall

Plaintiff's First Amended Complaint for Damages

6

along Defendant's Property side yard until reaching the Tree, and approximately 7-foot high including the retaining wall from the Tree and along Plaintiff's driveway, which stops at Rocklin's easement. Plaintiff does not know the approximate fence height on the other side, but Defendants erected a staggered 3-foot high fence along Defendants' driveway.

31.     On or about October 24, 2017, Defendants asked Plaintiff if he could have access to Plaintiff's Property instead of "jumping" Plaintiff's driveway gate to work on the fence. Defendant did not lower the fence along Plaintiff's Property.

32.     In or about October 2017, Plaintiff complained twice to Defendant Rocklin about the approximately 7-foot-high fence along Plaintiff's driveway, approximately 8-foot high fence along Plaintiff's side yard, and lack of proper retaining wall.

33.     In or about November 2017, Defendants lowered the fence along Plaintiff's driveway to approximately 3-foot high and along Plaintiff's side yard to approximately 7-foot high.

34.     In or about November 2017, Plaintiff received a complaint from Defendant Rocklin about her 4-foot high metal fence, which was erected prior to her purchase and is not a chain-linked fence. Plaintiff believes that Defendants made this complaint.

35.     Defendants' use and maintenance of the property, as described above, constitute a continuing nuisance because the water run-off, earth, and bark continue to appear on Plaintiff's Property, and it can be substantially abated in a reasonably feasible manner and at a reasonable cost. It is the result of continuing activity and the impact of the condition does not vary over time.

36.     Plaintiff is informed and believes that the nuisance was discovered in or about October 2017, when water run-off, earth, and bark creeped under the retaining wall thus causing Plaintiff's Property to suffer appreciable harm, and the future damages became sufficiently apparent to give a reasonable person notice.

37.     As a proximate result of the above-described acts and omissions by Defendants,

Plaintiff's First Amended Complaint for Damages

7

Plaintiff is in a constant fear of eminent harm and suffering discomfort and annoyance and enduring mental suffering caused by the fear for her own safety, her family's safety, and property. As a result of such injury, Plaintiff has sustained damage in an amount to be determined by proof at trial.

38.     WHEREFORE, Plaintiff requests judgment against all Defendants, and each of them, as set forth below.

SECOND CAUSE OF ACTION

(Injunctive Relief for Abatement of Nuisance Against Defendants Clear Point,

Kamyshin, and DOES)

39.     Plaintiff incorporates by reference into this cause of action each allegation of paragraphs 1 through 14 of the General Allegations and paragraphs 15 through 38 of the First Cause of Action.

40.     On or about May 12, 2017, Defendants erected a new periscope for the placement of the overhead electrical drop service line, which does not conform to California Public Resource Code (hereinafter "CPRC") 4292 clearance requirement, which could cause future property damage.

41.     On or about June 6, 2017, Defendants dug a trench through and thereby cutting and removing the Tree's feeder roots in order to relocate the underground natural transmission gas pipeline, which is not clear of tree root and could cause future damage to Plaintiff's Property.

42.     Plaintiff is informed and believes, and on that basis alleges, that unless Defendants are restrained and enjoined by order of this Court, Defendants will continue to engage in the above-described acts and omissions constituting a nuisance. Such conduct will result in irreparable harm to Plaintiff. The threat of such irreparable and permanent damage justifies the issuance by this Court of an injunction, as well as the award of monetary damages as expressly authorized by Code of Civil Procedure Sections 526 and 731.

43.     Plaintiff has no adequate remedy at law for the injuries that Plaintiff has suffered and

8

Plaintiff's First Amended Complaint for Damages

will continue to suffer in the future. Defendants' outrageous conduct towards Plaintiff and Plaintiff's Property support an award of punitive damages to Plaintiff.

44. WHEREFORE, Plaintiff requests judgment against all Defendants and each of them, as set forth below.

## THIRD CAUSE OF ACTION

(Damages for Nuisance and/or Trespass Against Defendant PGE)

45. Plaintiff incorporates by reference into this cause of action each allegation of paragraphs 1 through 14 of the General Allegations and paragraphs 15 through 38 of the First Cause of Action.

46. Prior to Plaintiff's Property purchase on December 31, 1986 and continuing through in or about June 2017, Defendant maintained an overhead electrical drop service line that ran entirely across Plaintiff's Property before attaching to Defendants' Property. This overhead electrical drop service line came from the power pole that is adjacent to Plaintiff's Property and hung through the front fruitless Mulberry tree and approximately 100-year old Tree located on Plaintiff's Property.

47. Defendant's use and maintenance of its property, as described above, constitutes a nuisance under Civil Code Section 3479 as well as trespass.

48. In or about 2016, Defendant owed Plaintiff a duty to verify and inspect before issuing a permit as well as abiding by its and California Public Utility Commission (hereinafter "CPUC") policies and/or procedures as well as CPRC 4292, which requires clearance of overhead electrical service lines to be "no less [than] 10-feet away" from trees, and underground natural gas transmission pipeline to be clear of tree roots. Defendant's failure to issue a proper permit caused significant damage to Plaintiff's Property.

49. On or about December 9, 2016, Plaintiff was informed that Defendant stopped the practice of maintaining its overhead electrical drop service line across one property to hook up to

Case: 19-30088    Doc# 6110    Filed: 03/05/20    Entered: 03/05/20 14:15:05    Page 13 of 30

another's property. Plaintiff is unaware of the when this occurred.

50.     Defendant knew or should have known the relocation of the overhead electrical service line and underground natural gas transmission line could not be granted or performed.

51.     On or about May 12, 2017, Plaintiff complained to Defendant about the new placement of the overhead electrical service line being closer to Plaintiff's Property. Defendant claimed that it had "easement rights" and refused to move it but would look. Plaintiff is unsure if Defendant ever acted upon her complaint and/or inspected Defendant's Property.

52.     Acting upon an attorney's advice, Plaintiff reviewed her deed and researched all prior deeds, which did not contain Defendant's "easement rights" (see attached Exhibit A).

53.     On or about June 5, 2017, Plaintiff demanded the removal of the overhead electrical drop service line from Plaintiff's Property.

54.     On or about June 6, 2017, Defendants Clear Point, Kamyshin and/or DOES dug a trench through and thereby cutting and removing the Tree's feeder roots for the new relocation of the underground natural gas transmission pipeline.

55.     On or about June 26, 2017, Defendant removed the overhead electrical drop service line from Plaintiff's Property but did not relocate the periscope.

56.     Because of Defendant's above-described conduct, Plaintiff has been deprived of the enjoyment and comfort of her property from December 31, 1986 to present date, and occurred damage in an amount to be determined by proof at trial.

57.     Plaintiff is informed and believes, and on that basis alleges, that unless Defendant are restrained and enjoined by order of this Court, Defendant will continue to engage in the above-described acts and omissions constituting a nuisance. The threat of such irreparable and permanent damage justifies the issuance by this Court of an injunction, as well as the award of monetary damages as expressly authorized by Code of Civil Procedure Sections 526 and 731.

58.     Plaintiff has no adequate remedy at law for the injuries that Plaintiff has suffered and will continue to suffer in the future. Defendant's outrageous conduct towards Plaintiff and Plaintiff's Property support an award of punitive damages to Plaintiff.

59.     WHEREFORE, Plaintiff requests judgment against all Defendants and each of them, as set forth below.

## FOURTH CAUSE OF ACTION

### (Damages for Nuisance Against Defendant Rocklin)

60.     Plaintiff incorporates by reference into this cause of action each allegation of paragraphs 1 through 14 of the General Allegations, paragraphs 15 through 38 of the First Cause of Action, and paragraphs 45 through 59 of the Third Cause of Action.

61.     In or about 2016, Defendant knew and/or should have known that Defendant PGE stopped the practice of running overhead electrical drop service lines across properties and of the required clearance from trees for overhead electrical service line and underground natural gas transmission pipeline thus Defendant could not issue a permit for either extension or relocation of the house closer to the property line. Defendant owed Plaintiff a duty to verify and inspect before issuing any permit.

62.     On or about December 9, 2016, Defendant owed Plaintiff a duty to suspend the permit(s) and/or stop the construction, and abide the laws until the dispute could be settled.

63.     On or about May 12, 2017, Plaintiff complained to Defendant about the location of Defendants Clear Point, Kamyshin, and/or DOES' new periscope and Defendant PGE's overhead electrical drop service line being between the Tree and Plaintiff's carport, which does not meet the clearance requirements of CPRC 4292 and could cause future property damage.

64.     Defendant appeared and looked at Defendants Clear Point, Kamyshin, and/or DOES' periscope. Defendant knew of the violation but did nothing.

Plaintiff's First Amended Complaint for Damages

11

65. Because of Defendant's above-described conduct, Plaintiff has been deprived of the use and possession of her property from December 9, 2016 to present date, all to Plaintiff's damage in an amount to be determined by proof at trial.

66. Plaintiff is informed and believes, and on that basis alleges, that unless Defendant are restrained and enjoined by order of this Court, Defendant will continue to engage in the above-described acts and omissions constituting a nuisance. The threat of such irreparable and permanent damage justifies the issuance by this Court of an injunction, as well as the award of monetary damages as expressly authorized by Code of Civil Procedure Sections 526 and 731.

67. Plaintiff has no adequate remedy at law for the injuries that Plaintiff has suffered and will continue to suffer in the future. Defendant Rocklin's outrageous conduct towards Plaintiff and Plaintiff's Property support an award of punitive damages to Plaintiff.

68. WHEREFORE, Plaintiff requests judgment against all Defendants and each of them, as set forth below.

<u>FIFTH CAUSE OF ACTION</u>

(Damages for Trespass Against Defendants Clear Point, Kamyshin, and DOES)

69. Plaintiff incorporates by reference into this cause of action each allegation of paragraphs 1 through 14 of the General Allegations, paragraphs 15 through 38 of the First Cause of Action, paragraphs 45 through 59 of the Third Cause of Action, paragraphs 60 through 68 of the Fourth Cause of Action.

70. On or about December 8, 2016, Defendants entered upon Plaintiff's Property to cut branches and/or limbs from the fruitless Mulberry trees while Plaintiff was not at home.

71. On or about December 9, 2016, Plaintiff found Defendant DOES in the Tree cutting branches and/or limbs. Plaintiff demanded Defendants to stop and get out of the Tree.

72. DOES requested Defendants Clear Point and/or Kamyshin to speak with Plaintiff.

Either Defendants Clear Point or Kamyshin stated, "I not need to speak with you", and "Branches are on my property." Plaintiff tried to reason with Defendants that his removal will damage the tree and that he would be financially responsible. Defendants repeated the above-described statements. Plaintiff informed Defendants that she contacted an arborist and wanted the work done in the spring. Defendant stated, "I no wait" and ordered Defendant DOES to continue with the work.

73.     Upon arriving home after work, Plaintiff found Defendants not only cut and removed the Tree's branches and limbs that over hung on Defendants' Property but also made the cuts at the Tree's trunk which is on Plaintiff's Property as well as cut and removed a branch and/or limb that hung over Plaintiff's carport without notice and consent from Plaintiff.

74.     In order to reach the higher branches and limbs in the Tree, Defendants entered upon Plaintiff's Property and climbed the Tree after expressly being told to stop and get out of Tree.

75.     Because of Defendants' above-described conduct, Plaintiff has been deprived of the use and comfortable enjoyment of Plaintiff's Property from December 8, 2016 to present date as well as into the future.

76.     Plaintiff's has incurred and will continue to incur damages in an amount to be determined by proof at trial.

77.     WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth below.

SIXTH CAUSE OF ACTION

(Damages for Intentional Infliction of Emotional Distress Against Defendants

Clear Point, Kamyshin, DOES, PGE and Rocklin)

78.     Plaintiff incorporates by reference into this cause of action each allegation of paragraphs 1 through 14 of the General Allegations, paragraphs 15 through 38 of the First Cause of Action, paragraphs 45 through 59 of the Third Cause of Action, paragraphs 59 through 68 of the

Plaintiff's First Amended Complaint for Damages

Fourth Cause of Action, and paragraphs 69 through 77 of the Fifth Cause of Action.

79.     In or about January 2016, the sellers of Defendants' Property informed Plaintiff that she is selling her property after 70 years and that Plaintiff and her family may have any of her unwanted belongings. Plaintiff and her family gathered numerous items including a vintage coin-operated slot machine, which needed repairs.

80.     On or about February 23, 2016, Plaintiff assisted the seller with gathering her belongings and preparing for a yard sale. Unfortunately, the seller was immediately hospitalized afterwards. Plaintiff continued to help the seller.

81.     On or about March 4, 2016, the seller's granddaughter informed Plaintiff that Defendants would be over to change the locks sometime that day and that the yard sale would have to be cancelled. Plaintiff and other neighbors immediately removed the seller's belonging from inside the house and placed them either under the patio, carport, or front porch with the intent to move them afterwards. Plaintiff introduced the neighbors and herself to Defendants who never introduced themselves or spoke with Plaintiff who explained what they were doing. After changing the locks, Defendants claimed the vintage coin-operated slot machine was his, which Plaintiff corrected. Defendants scowled at Plaintiff when she refused. In order to be "neighborly", Plaintiff gave the broken vintage coin-operated slot machine to Defendants. Plaintiff continued to remove the seller's belonging from Defendants' Property without any objections.

82.     In or about July 2016, Plaintiff declined Defendants' offer to purchase Plaintiff's 1965 Ford Mustang. Afterwards, Defendants began harassing Plaintiff.

83.     On or about December 9, 2016, Plaintiff suffered emotional distress about not being able to check on her property and inside animals as well as worrying about the animals outside entering up the property, temporary and/or overnight accommodations, if necessary. Plaintiff and her family were not able to enter upon Plaintiff's Property for nearly four hours.

14

Plaintiff's First Amended Complaint for Damages

84.     As a direct and proximate result of Defendants' failure to abate the nuisance, Plaintiff suffered extreme emotional distress in that Plaintiff lives in constant fear of eminent harm to Plaintiff's Property and suffers discomfort and annoyance and endures mental suffering caused by the fear for her own safety and that of her family.

85.     Said Defendants' failure to abate the nuisance was knowing intentional, and willful, because they had full knowledge or knew with substantial certainty of the extreme emotional distress that the failure would cause Plaintiff.

86.     Furthermore, Defendants' conduct was malicious and oppressive, and therefore Plaintiff is entitled to punitive damages in an amount according to proof.

87.     WHEREFORE, Plaintiff requests judgment against all Defendants and each of them, as set forth below.

PLAINTIFF PRAYS:

A.     For a preliminary and permanent injunction enjoining Defendants Clear Point, Kamyshin, and DOES from water run-off, earth, and bark coming onto Plaintiff's Property;

B.     For a preliminary and permanent injunction requiring Defendants to relocate the overhead electric drop service periscope and underground natural gas transmission pipeline;

C.     For special, general, and punitive damages according to proof;

D.     For costs of suit and attorney's fees;

E.     For any other and further relief as the court may deem just and proper under the circumstances.

DATED: February 12, 2019

*Laurie A Deuschel*

Laurie A. Deuschel
Plaintiff In Pro Per

Plaintiff's First Amended Complaint for Damages

15

# EXHIBIT A

Order No. 113383

BK 3 1 0 4 PG 4 0 2

EXHIBIT "A"

The land referred to in this report is situated in the CITY OF ROCKLIN, COUNTY OF PLACER, STATE OF CALIFORNIA, and is described as follows:

PARCEL ONE

Lot Numbered 1, in Block Lettered "F", as laid down on the Bolton Plat of said Town of Rocklin, on the West side of Second Street, and having a frontage of 50 feet on Second Street and extending back 140 feet to Third Street, being the same property as described in Book 90 of Deeds, at page 305, in the Office of the Placer County Recorder.

EXCEPTING THEREFROM the Northwesterly 57 1/2 feet, measured along the Northeasterly and Southwesterly lines of said Lot 1.

PARCEL TWO

An easement for water pipeline over the Northeasterly 25 feet of the Northwesterly 57 1/2 feet, measured along the Northeasterly and Southwesterly lines of said lot.

61641

# EXHIBIT B



5120 2nd St, Rocklin C

# EXHIBIT C



# EXHIBIT 2

LAURIE A. DEUSCHEL-LONG
5120 Second Street
Rocklin, CA 95677
(916) 289-3532

November 18, 2019

Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Sent Via Facsimile: (212) 310-8007

Tobias S. Keller
KELLER & BENVENUTTI LLP
650 California Street, Suite 1900
San Francisco, CA 94108
Sent Via Facsimile: (650) 636-9251

RE: Deuschel v. Clear Point Financial Group, Inc., et. al. (including PG&E Corporation)
    Placer County Superior Court Case No. SCV 40437 (filed 12-09-2017)

Dear Sirs:

On December 9, 2017, I filed a civil lawsuit against Pacific Gas and Electric Company with the Placer County Superior Court, which is pending without action due to the automatic stay imposed by the Federal Bankruptcy Court, for damages caused to my property by Pacific Gas and Electric Company and City of Rocklin's permits as well as by the (previous) owners. Since July, I researched and have been watching the Bankruptcy Court's Docket and recently noticed PG&E Corporation and Pacific Gas and Electric Company (Case Nos. 19-30088 and 19-30089) agreements via stipulations for continuation of each of Superior Court of California cases. Therefore, I am seeking an agreement with Pacific Gas and Electric Company and PG&E Corporation for a limited relief from the Bankruptcy Court's automatic stay in order for the continuation of the civil lawsuit.

Accordingly, Pacific Gas and Electric Company issued permit(s) for the (previous) owner of the adjacent property to move the pre-existing electrical periscope and gas distribution pipeline closer to my property thus causing damage to my approximately 100-year old, 100 foot tall, Heritage Elm tree and 70-year old house. I would like to move towards discovery and possibly discuss settlement without the expense of a trial. I look forward to discussing a possible stipulation with you.

Sincerely,

*Laurie A. Deuschel*

Laurie A. Deuschel
Plaintiff and Homeowner

# EXHIBIT 3

# KELLER KB BENVENUTTI

650 California Street, Suite 1900
San Francisco, California 94108

*Peter J. Benvenutti*
*pbenvenutti@kellerbenvenutti.com*
*(415) 364-6798*

December 24, 2019

VIA ELECTRONIC MAIL

Laurie A. Deuschel-Long
5120 Second Street
Rocklin, CA 95677

Re:     *Deuschel v. Clear Point Financial Group, Inc., et. al.*

Dear Ms. Deuschel-Long:

I am co-counsel for PG&E in its pending chapter 11 case. I write in response to your letter of November 18, 2019, to Stephen Karotkin and Tobias Keller.

PG&E has looked into the matters raised in your letter regarding the lawsuit you filed against PG&E and others in Placer County Superior Court, and has considered your request to enter into a stipulation to modify the bankruptcy automatic stay to permit that lawsuit to move forward against PG&E. PG&E respectfully declines that request, for the reasons stated in this letter, among others.

Initially, I must note that your first amended complaint was filed on February 22, 2019, after PG&E's widely-publicized chapter 11 filing and after the bankruptcy automatic stay came into effect. Both the filing of the amended complaint asserting claims against PG&E and the subsequent attempted service on PG&E violated the automatic stay and as a result were void, without legal effect. The original complaint, which you state was filed in 2017, was never served on PG&E.

My client appreciates your recognition of the effect of the stay to suspend proceedings against PG&E, and your filing of a notice of the automatic stay in the Superior Court, after the stay violations were called to your attention when you attempted to serve PG&E with the amended complaint. As you also recognize, as a consequence of the stay you may not take any other action in your lawsuit in furtherance of the claims against PG&E, and I assume that you will not do so.

You have filed a proof of claim in PG&E's bankruptcy case. The Bankruptcy Code and Bankruptcy Court generally provide a more efficient and economical means of administering claims – including resolution of any claims that are disputed – than traditional litigation in the non-

bankruptcy courts. There are over 85,000 filed claims. They must be resolved through the
bankruptcy claims process, absent very unusual special circumstances that are not present in your
case. Hence, PG&E will not agree to modification of the stay as you request, and will insist instead
that your claim be resolved through the bankruptcy claims process.

Very truly yours,

Peter J. Benvenutti

Copy via electronic mail:
    Stephen Karotkin, Esq.
    Tobias Keller, Esq.
    Kevin Kramer, Esq.
    Dara Silveira, Esq.