1  Andrew I. Silfen (*pro hac vice*)
   Beth M. Brownstein (*pro hac vice*)
2  **ARENT FOX LLP**
   1301 Avenue of the Americas, 42nd Floor
3  New York, New York 10019
   Telephone:  (212) 484-3900
4  Facsimile:   (212) 484-3990
   Email:       andrew.silfen@arentfox.com
5                beth.brownstein@arentfox.com

6  Aram Ordubegian (SBN 185142)
   **ARENT FOX LLP**
7  55 Second Street, 21st Floor
   San Francisco, CA  94105
8  Telephone:  (415) 757-5500
   Facsimile:   (415) 757-5501
9  Email:       aram.ordubegian@arentfox.com

10  *Counsel for BOKF, NA, solely in its capacity as*
    *Indenture Trustee for the Utility Senior Notes*
11

12              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13                **SAN FRANCISCO DIVISION**

14  | **In re:** | Case No. 19-30088 (DM) |
15  | **PG&E CORPORATION** | Chapter 11 |
16  | | (Lead Case) |
    | **- and -** | |
17  | | (Jointly Administered) |
    | **PACIFIC GAS AND ELECTRIC** | |
18  | **COMPANY,** | **BOKF'S CROSS-MOTION FOR LEAVE TO** |
    |                    **Debtors.** | **APPEAL ORDER REGARDING** |
19  | | **POSTPETITION INTEREST** |

20  | Affects PG&E Corporation |
21  | Affects Pacific Gas and Electric Company |
22  | ☑  Affects both Debtors |
23  | * All papers shall be filed in the Lead Case, No. 19-30088 (DM). |
24

25

26

27

28

BOKF, NA ("BOKF") in its capacity as successor indenture trustee under three Indentures dated as of (i) April 22, 2005 Supplementing, Amending and Restating the Indenture of Mortgage Dated March 11, 2004; (ii) November 29, 2017; and (iii) August 6, 2018, each as supplemented or amended (the "Senior Notes Indentures"), pursuant to which Pacific Gas and Electric Company issued the senior notes (the "Senior Notes"), in the principal amount of $17.525 billion, hereby cross-moves (BOKF's Cross-Motion") the United States District Court for the Northern District of California (the "District Court"), pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, for an order permitting BOKF to participate in any appeal, either as of right or on an interlocutory basis, of the (i) the *Interlocutory Order Regarding Postpetition Interest* [ECF No. 5669] entered on February 6, 2020 (the "PPI Order") and (ii) the related *Memorandum Decision Regarding Postpetition Interest* [ECF No. 5226] entered on December 30, 2019 (the "PPI Memorandum").[1]

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

### I. The Chapter 11 Cases

On January 29, 2019 (the "Petition Date"), PG&E Corporation and Pacific Gas and Electric Company (together, the "Debtors"), commenced their Chapter 11 cases in the Bankruptcy Court. On January 31, 2020, the Debtors filed *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* [ECF No. 5590] (the "Debtors' Plan").[2]

### II. The Dispute Concerning Postpetition Interest Payments

On December 11, 2019, after briefing from the relevant parties, including BOKF, the Bankruptcy Court heard argument on whether the appropriate postpetition interest rate on unsecured claims in a solvent-debtor case is the Federal Judgment Rate ("FJR") or some other rate, such as the rate provided by the relevant contract, including the Senior Notes Indentures, and/or applicable state law.[3] BOKF and others argued, *inter alia*, that the appropriate rate of postpetition interest is not FJR but rather the applicable contract rate under the respective Senior Notes

---

[1] Copies of the foregoing are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Debtors' Plan.

[3] Dec. 11, 2019 Hr'g Tr. at 8-10.

2

Indenture. On December 30, 2019, the Bankruptcy Court ruled that FJR is the applicable interest rate for any reorganization plan proposed by the Debtors. *See* PPI Memorandum at 2. On February 6, 2020, the Bankruptcy Court entered the PPI Order, holding that applicable precedent compels the application of FJR "to the postpetition treatment of unsecured creditors under any Chapter 11 Plan of Reorganization proposed by Debtors." *See* PPI Order at 2. The Bankruptcy Court expressly left open the question of dealing with an interlocutory order should a party appeal. *See id.*

### III. The Trade Committee Motion for Leave to Appeal PPI Order

On February 20, 2020, the Ad Hoc Committee of Holders of Trade Claims (the "Trade Committee") filed its Notice of Appeal and Statement of Election to have Appeal Heard by District Court [ECF No. 5844] (the "Notice of Appeal"). The Trade Committee's appeal has been docketed in the District Court as No. 20-cv-1493 (N.D. Cal.) (Gilliam, J.). In the Notice of Appeal, the Trade Committee asserted that, pursuant to 28 U.S.C. § 158(a)(1), the PPI Order and PPI Memorandum are appealable as of right. In addition, the Trade Committee filed, concurrently with its Notice of Appeal, a motion pursuant to 28 U.S.C. § 158(a)(3) for leave to appeal the PPI Order and PPI Memorandum [ECF Nos. 5845 and 5846] (the "Trade Committee Motion").[4] In either case, the Trade Committee concludes that the District Court should grant immediate appeal of the PPI Order.

On March 3, 2020, the District Court entered an *Order (1) Directing Parties to Meet and Confer on Briefing Schedule for Motion for Leave to Appeal, and (2) Vacating Dates in the Initial Case Management Scheduling Order* [ECF No. 5] (the "Order"). The parties are currently meeting and conferring on the briefing scheduling for the Motions for Leave to Appeal.[5]

---

[4] On March 4, 2020, Mizuho Bank, LTD. in its capacity as Holdco Term Loan Administrative Agent ("Mizuho"), filed a cross-motion for leave to appeal [ECF No. 6060] (the "Mizuho Cross-Motion," and together with the Trade Committee Motion, the "Motions for Leave to Appeal").

[5] Concurrent with the filing of BOKF's Cross-Motion, BOKF is filing a notice of appeal and statement of election ("BOKF's Notice of Appeal") to preserve its right to participate in any appeal of the PPI Memorandum and PPI Order.

3

## REQUEST FOR RELIEF

BOKF is not seeking to prosecute an appeal of the PPI Order as a sole appellant at this time; however, BOKF must be permitted to participate in any appeal that goes forward, consistent with its role as the indenture trustee for $17.525 billion of the Senior Notes. This issue impacts BOKF as the indenture trustee for the Senior Notes, and the District Court should consider its views on the PPI issue. As such, to the extent the District Court agrees that appeal of the PPI Order is appropriate at this time, BOKF respectfully submits that it must be permitted to participate in that appeal in its capacity as indenture trustee for the Senior Notes.

**WHEREFORE**, BOKF respectfully requests that its Cross-Motion be granted and that BOKF be permitted to participate in any immediate appeal of the PPI Order, whether permitted to proceed as a matter of right or on an interlocutory basis.

DATED:  March 5, 2020

**ARENT FOX LLP**

*/s/ Aram Ordubegian*
ARAM ORDUBEGIAN
ANDREW I. SILFEN
BETH M. BROWNSTEIN

*Counsel for BOKF, NA, in its capacity as Indenture Trustee for the Utility Senior Notes*

4

# Exhibit A

**Entered on Docket**
**February 06, 2020**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



Signed and Filed: February 6, 2020

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Bankruptcy Case |
| | ) No. 19-30088-DM |
| PG&E CORPORATION, | ) |
| | ) Chapter 11 |
| - and - | ) |
| | ) Jointly Administered |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| | ) Date:   February 4, 2020 |
| Debtors. | ) Time:   10:00 AM |
| | ) Place:  Courtroom 17 |
| ☐ Affects PG&E Corporation | )          450 Golden Gate Ave. |
| ☐ Affects Pacific Gas and | )          16th Floor |
|    Electric Company | )          San Francisco, CA |
| ☒ Affects both Debtors | ) |
| | ) |
| *All papers shall be filed in* | ) |
| *the Lead Case, No. 19-30088 (DM).* | ) |

**INTERLOCUTORY ORDER REGARDING POSTPETITION INTEREST**

On December 30, 2019, the court issued a Memorandum Decision Regarding Postpetition Interest (Dkt. No. 5226). For reasons stated on p. 17 of the memorandum, the court deferred issuing an appealable order at that time. Since then, the disputed and somewhat related issue described by all parties as the Make-Whole issue has been tentatively resolved without a decision by the court. For that reason, the court believes an

order on the postpetition interest issue is appropriate at this time.

Parties adverse to the Debtors on the postpetition interest issue have disagreed on what the court should do now.  One group, the Ad Hoc Committee of Holders of Trade Claims, wants a certification that the court's decision and ensuing order is final under Fed. R. Civ. P. 54(b), incorporated via Fed. R. Bank. P 7054 and a direct certification of such an order or an interlocutory order to the court of appeals under 28 U.S.C. § 158(d)(2).  The other group, the Ad Hoc Committee of Senior Unsecured Noteholders, wants the court to defer any action until it confirms Debtors' Plan of Reorganization under 11 U.S.C § 1141, thus making the underlying decision on postpetition interest final for all purposes.

The court has considered the arguments of both sides, and the somewhat neutral position of the Debtors at a hearing on February 4, 2020.  Under the circumstances, the court decides not to adopt either sides' position and to leave the question of dealing with an interlocutory order for another court if there is an appeal.

Accordingly, and as an interlocutory order, the court concludes that the Debtors are correct, that *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) controls and that the Federal Interest Rate applies to the postpetition treatment of unsecured creditors under any Chapter 11 Plan of Reorganization proposed by Debtors.

**\*\*END OF INTERLOCUTORY ORDER\*\***

# Exhibit B



1

2          **Signed and Filed: December 30, 2019**

3

4          _____
           **DENNIS MONTALI**
5          **U.S. Bankruptcy Judge**

6

7                    UNITED STATES BANKRUPTCY COURT
                     NORTHERN DISTRICT OF CALIFORNIA
8    In re:                        ) Bankruptcy Case
                                   ) No. 19-30088-DM
9    PG&E CORPORATION,             )
                                   ) Chapter 11
10                                 )
              - and -              )
11                                 ) Jointly Administered
     PACIFIC GAS AND ELECTRIC COMPANY,)
12                                 )
13            Debtors.             ) Date:  December 11, 2019
                                   ) Time:  10:00 AM
14   ☐ Affects PG&E Corporation    ) Place: Courtroom 17
15   ☐ Affects Pacific Gas and     )        450 Golden Gate Ave.
        Electric Company           )        16th Floor
16   ☒ Affects both Debtors        )        San Francisco, CA
                                   )
17   * All papers shall be filed in )
18   the Lead Case, No. 19-30088 (DM).)
                                   )
19

20        **MEMORANDUM DECISION REGARDING POSTPETITION INTEREST**

21        I.   <u>INTRODUCTION</u>

22        On December 11, 2019, the court heard oral argument on the

23   discrete legal issue of the applicable postpetition interest to

24   be paid to four classes of allowed unsecured and unimpaired

25   claims, under any chapter 11 reorganization plan for solvent

26   debtors PG&E Corporation and Pacific Gas and Electric Company

27   ("Debtors").  The Debtors, joined by certain Shareholders, argue

28   that creditors in all four classes should receive interest

                              -1-

calculated pursuant to 28 U.S.C. § 1961(a) (the "Federal Interest Rate") in effect as of the petition date (January 29, 2019) these chapter 11 cases. That rate for these jointly administered cases is 2.59 percent. Debtors contend that use of the Federal Interest Rate is consistent with *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) ("*Cardelucci*"), which holds that unsecured creditors in a solvent case should receive postpetition interest calculated at the Federal Interest Rate.

Several parties, including the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Senior Unsecured Noteholders, the Ad Hoc Committee of Holders of Trade Claims and others (collectively "Unsecured Creditors") oppose the motion. They urge application of various rates, generally determined by applicable contracts between the Debtors and the respective claimants, judgment rates or some other rate.

For the following reasons, the court concludes that the Debtors are correct, that *Cardelucci* controls and that the Federal Interest Rate applies to any Plan.

II. <u>APPLICABLE LAW</u>

Statutory construction of the Bankruptcy Code[1] is "a holistic endeavor" requiring consideration of the entire statutory scheme. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), cited by *In re BCE West, L.P.*, 319 F.3d 1166, 1171 (9th Cir. 2003).

---

[1]    Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

-2-

In *Timbers*, the Supreme Court utilized this holistic approach to analyze five seemingly unconnected provisions of Title 11 in determining that oversecured creditors are entitled to receive postpetition interest. Applying a similar holistic approach, this court has looked to the structure of the Bankruptcy Code and the purposes behind its many parts to conclude while unsecured creditors are entitled to postpetition interest in a solvent estate, the Bankruptcy Code requires application of the Federal Interest Rate to those claims and that such an application does not impair these claims. Even if *Cardelucci* were not binding, the court would reach the same conclusion.

Chapter 5, subchapter I ("Creditors and Claims") of the Bankruptcy Code sets forth the guiding principles for filing and allowance of claims or interests, administrative expenses, determination of secured status and other provisions not important to the current analysis. In contrast, the court must apply the critical provisions of chapter 11, subchapter II ("The Plan"). Section 1123(a) states what a plan "shall" do or include. Section 1123(b) states what a plan "may" do or include. As a definitional matter, section 1124 explains that a class of claims or interest is impaired <u>unless</u> the plan leaves certain legal, equitable and contractual rights unaltered (§ 1124(1)), or cures, restates, or compensates the rights of class or interest members (§ 1124(2)(A)–(E)).

The structure of the Bankruptcy Code and the applicability of these definitional and empowering sections, therefore, dictate rights that are fixed as of the petition date and what

-3-

rules apply after that.  Nothing suggests that, absent specific rules, provisions dealing with prepetition entitlements carry over postpetition.  For example, section 502(b)(2) clearly provides that a claim for "unmatured interest"[2] may not be allowed.  An exception to the rule is found in section 506(b) that permits accrued interest to be allowed as long as the security is "greater than the amount of such claim."

The Unsecured Creditors' argument that somehow the definitions and remedies found in section 1124 override the plain impact of section 502(b)(2) is simply not persuasive and would require the court to ignore not only the plain words of the statute but also the holistic notion of treating them as part of a combined comprehensive instrument of definitions, applicability and implementation.  Section 1124(1) describes what claims are unimpaired and section 1124(2) describes what is necessary for a plan to "unimpair" impaired claims.  In contrast, chapter 5 ("Creditors and Claims") dictates how claims and interests are dealt with in the substantive chapters: 7, 11, 12 and 13.  The subparts of section 502(b) list nine specific rules for affecting allowed claims.

An example not directly related to this case proves the point.  Section 502(b)(4) disallows the claim of an insider or an attorney to the extent it exceeds the reasonable value of the services.  Unsecured Creditors could not persuade the court or even make a convincing argument that somehow an insider or an attorney whose asserted claim exceeds a reasonable value could

---

[2]    No one has suggested that "unmatured interest" means anything other than "postpetition interest."

-4-

1  take refuge in section 1124((1)'s definitional provision and

2  escape the clear intention of Congress to limit unreasonable

3  claims for services in the same manner it has limited

4  postpetition unsecured claims for unmatured interest.  For the

5  same reason, underlying non-bankruptcy law must give way to

6  contrary provisions of the Bankruptcy Code.  *Travelers Cas. &*

7  *Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 444

8  (2007) (quoting *Raleigh v. Illinois Dept. of Revenue*, 530 U.S.

9  15, 20 (2000).

10      With that background, the court turns to the applicability

11  of *Cardelucci* and its clear message.

12      III. <u>THIS COURT'S RESPONSIBILITY UNDER *STARE DECISIS*</u>

13      This court is bound by the Ninth Circuit's *Cardelucci*

14  decision unless it can be distinguished or overruled:

15
16      Courts are bound by the decisions of higher courts
        under the principle of *stare decisis*. The doctrine
17      derives from the maxim of the common law, "Stare
        decisis et non quieta movere," which literally means,
18      "Let stand what is decided, and do not disturb what is
        settled." See 1B Jeremy C. Moore et al., Moore's
19      Federal Practice ¶ 0.402[1] (2d ed. 1992). Moore's
        treatise describes the rule as follows:
20
21          The rule, as developed in the English law,
            is that a decision on an issue of law
22          embodied in a final judgment is binding on
            the court that decided it and such other
23          courts as owe obedience to its decisions, in
            all future cases. *Id.*
24
25      Under this principle a decision of a circuit court of
        appeal is binding on all lower courts in the circuit,
26      including district courts and bankruptcy courts
        (absent a contrary United States Supreme Court
27      decision). *Zuniga v. United Can Co.*, 812 F.2d 443, 450
        (9th Cir. 1987).
28

-5-

This is true even if there is a split of opinion between the controlling circuit and another circuit court of appeals, and the lower court believes that the controlling circuit court is in error. *Zuniga*, 812 F.2d at 450; *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981)[.]

In re Globe Illumination Co., 149 B.R. 614, 617 (Bankr. C.D. Cal. 1993) (multiple internal citations omitted).

*Cardelucci* is a published panel opinion by the Court of Appeals for the Ninth Circuit. It is binding on this court. *State Farm Fire & Cas. Ins. Co. v. GP West, Inc.,* 2016 WL 3189187, 90 F. Supp.3d 1003, 1018 (D. Haw. 2016) (citation and internal quotation marks omitted). *See Lair v. Bullock*, 798 F.3d 736, 747 (9th Cir. 2015) ("[W]e are bound by a prior three-judge panel's published opinions, ....") (citing *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc)).

IV.    THE HOLDING OF *CARDELUCCI*

In *Cardelucci*, the Ninth Circuit framed the issue before it as follows:

This appeal presents the narrow but important issue of whether such post-petition interest is to be calculated using the (federal judgment rate) or is determined by the parties' contract or state law.

*Cardelucci,* 285 F.3d at 1231.

The Ninth Circuit held that in chapter 11 cases involving solvent debtors, unsecured creditors are entitled to postpetition interest at the federal judgment rate, not at not

-6-

at contractual or state statutory rates. *Id.* at 1234. In so holding, the Ninth Circuit observed that application of the lower federal judgment rate did not violate an unsecured creditor's substantive due process rights (*id.* at 1236) and that utilization of federal judgment rate for all claims was rationally related to legitimate interests in efficiency, fairness, predictability, and uniformity within bankruptcy system. *Id.*

While the court pinpointed a "narrow but important issue," it did not narrow the application of its holding, which must be applied broadly given the structure of the Bankruptcy Code and the clear and plain meaning of its applicable provisions, as noted above.

In *Cardelucci*, the debtor and his opponents, holders of a state court judgment, set aside various differences and thereby permitted confirmation to proceed subject to a reservation of rights concerning the applicable postpetition interest rate.[3] The Ninth Circuit concluded that the reference by Congress to "the legal rate" in section 726(a)(5) was intentional, in that

---

[3]     While the opinion is silent on the specifics of that debtor's plan, the opponents' claim was impaired for reasons not relevant to this analysis. In the present case the Unsecured Creditors' claims are unimpaired. The Unsecured Creditors put the cart before the horse when they contend that the application of the "fair and equitable" test of section 1129(b) determines that their claims are impaired under section 1124.

–7–

13

Congress had rejected proposed language of "interest on claims allowed." *Cardelucci,* 285 F.3d at 1234. The court also emphasized that a single, easily determined rate for all postpetition interest ensures equitable treatment of creditors.[4] Although *Cardelucci* was a chapter 11 case, the reference to section 726(a)(5) was critical. Without that reference, the court would be compelled by section 502(b)(2) to allow claims "except to the extent that . . . (2) such claim is for unmatured interest."[5] There is no specific provision in chapter 11 that allows any interest on unsecured claims.[6] Without that reference, Unsecured Creditors would be left with no allowed postpetition interest.

The rule in the seventeen years since *Cardelucci* is clear: unsecured creditors of a solvent debtor will be paid the Federal Interest Rate whether their prepetition contracts call for higher or lower rates, or applicable state law judgment rates

---

[4]    In this case, given the vast array of creditors' claims, the equal application of such uniform policy is all the more compelling.

[5]    The exception found in section 506(b) for secured claims has no bearing here.

[6]    The court rejects the argument by the Ad Hoc Committee of Holders of Trade Claims that section 103(b) precludes consideration of section 726(a)(5). *Cardelucci* merely compared the chapter 7 outcome (apply the Federal Interest Rate) as part of the "best interest" test of Section 1129(a)(9) to compare whether creditors do better in chapter 7 or chapter 11.

-8-

Case: 19-30088    Doc# 5226-1    Filed: 12/30/19    Entered: 12/30/19 19:08:04    Page 8 of 17

are higher, or there are no other applicable rates to consider. Nor is that rule limited to impaired claims. *Cardelucci* is unequivocal and articulates several reasons for broad application of its holding despite the recognition of the narrow issue presented:

1. The use of the term "legal rate" indicates the Congress intended the single source to be statutory because of the common use of the term when the Bankruptcy Code was enacted.

2. Using the federal rate promotes uniformity within federal law.

3. The analogous post-judgment interest entitlement compensates for being deprived of compensation for the loss of time between ascertainment of damages and payment.

4. Application of a single, easily determined rate ensures equitable treatment of creditors.

5. With a uniform rate, no single creditor will be eligible for a disproportionate share of the remaining assets.

*Cardelucci*, 285 F.3d at 1235-1236.

The Unsecured Creditors refer to the opinion's "parting note" to support their cause. The actual conclusion rejects a substantive due process argument that has not been developed here for good reasons. To this court, the "parting note" that dooms their cause is in the penultimate paragraph, and bears repeating:

The Court recognizes that these two interests, fairness among creditors and administrative efficiency, may be of limited relevance in certain bankruptcy proceedings. Where there are only a few unsecured creditors seeking post-petition interest and there are sufficient assets to pay all claims for all

-9-

interest (sic), there will be no concerns regarding
equity among creditors or practicality. In those
instances, a debtor may receive a windfall from the
application of a lower federal interest rate to an
award of post-petition interest. Nonetheless 'interest
at the legal rate' is a statutory term with a
definitive meaning that cannot shift depending on the
interests invoked by the specific factual
circumstances before the court. *See In re Thompson,* 16
F.3d 576, 581 (4th Cir. 1994).

*Cardelucci*, 285 F.3d at 1236.

Unsecured Creditors' reliance on older cases invoking the
"absolute priority" rule in defense of postpetition interest at
the contract rate are unavailing. *Consolidated Rock Products
Co. v. Du Bois*, 312 U.S. 510 (1941), was decided under the
former Bankruptcy Act and is of questionable viability now that
the Bankruptcy Code includes sections 726(a)(5) and 502(b)(2).
Similarly, *Debentureholders Protective Committee of Continental
Inv. Corp. v. Continental Inv. Corp.*, 679 F.2d 264 (1st Cir.
1982), was decided under Chapter X of the former Bankruptcy Act
and thus offers no guidance here.

The Ninth Circuit's decision in *L&J Anaheim Associates v.
Kawasaki Leasing International, Inc.* (*In re L&J Anaheim
Associates*), 995 F.2d 940 (9th Cir. 1993) does not change the
outcome. *L&J Anaheim* was decided only a few months after
*Cardelucci* and did not cite it, as it addressed an altogether
different issue.

In *L&J Anaheim*, a secured creditor filed a chapter 11 plan
that was opposed by the debtor. In order to achieve the
statutory requirement for at least one impaired class, the
creditor, Kawasaki, proposed changing its own state law remedies

-10-

following debtor's breach.  It eliminated its right to exercise
various remedies under the California Uniform Commercial Code,
replacing those entitlements under its proposed plan with a
requirement that its collateral and a related lawsuit be sold at
public auction under procedures mandated by the Bankruptcy Code.

In determining that Kawasaki's rights were altered, and
thus its claim was impaired, the court stated:

> At first blush the idea that an improvement in ones'
> position as a creditor might constitute 'impairment'
> seems nonsensical."

*L & J Anaheim,* 995 F.2d at 942.

The court examined the term of art adopted by Congress to
replace language in the prior Bankruptcy Act and concluded that
section 1124 created certainty in determining whether or not a
creditor was impaired.  Once again, section 1124 is
definitional, describing improvement in the context of the plan
presented as impairment.  The court had no occasion to address
whether, for an impaired class, postpetition interest was even
relevant.

Of importance here is that the plan's own language altered
Kawasaki's rights; in the present case, the Bankruptcy Code, and
not the Plan, is what causes Unsecured Creditors to have their
postpetition interest limited to the Federal Judgment Rate.  The
Plan is not the culprit.

A few months after *Cardelucci*, the Ninth Circuit *decided
Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar
Plaza, L.P.*, 314 F.3d 1070 (9th Cir. 2002).  There, the court
addressed whether or not a plan proponent had proposed the plan

-11-

in good faith under section 1129(a)(3) when its sole purpose was
to enable the debtors to cure and reinstate an obligation.  At
that time, *Great W. Bank & Trust v. Entz-White Lumber and
Supply, Inc. (In re Entz-White Lumber and Supply, Inc.)*, 850
F.2d 1338 (9th Cir. 1988), was good law.  Under *Entz-White*, plan
proponents were permitted to cure defaults under former section
1124(3), leaving the objecting creditor not impaired under
section 1124.  Perhaps predicting the crucial distinction
between what a plan does and what the Bankruptcy Code does, the
*Sylmar Plaza* court rejected the argument that a plan lacks good
faith when it permits owners of a solvent debtor to avoid paying
postpetition interest at the default interest rate.  The fact
that a creditor's contractual rights are adversely affected does
not by itself warrant a bad faith finding.  Quoting the
bankruptcy court in *In re PPI Enters. (US), Inc.*, 228 B.R. 339
(Bankr. D. Del. 1998), the court stated:

> In enacting the Bankruptcy Code, Congress made a
> determination that an eligible debtor should have the
> opportunity to avail itself of a number of Code
> provisions which adversely altered creditors'
> contractual and non bankruptcy rights . . . .
>
> The fact that a debtor proposes a plan which it avails
> itself of an applicable Code provision does not
> constitute evidence of bad faith.

*Sylmar Plaza*, 314 F.3d at 1075 (citations omitted).

Cases cited by the *Sylmar Plaza* creditor to support a per
se rule were distinguishable in that neither adopted or approved
such a rule and, moreover, ". . . because none involved an
objection to a plan by an unimpaired creditor."   *Id.*

-12-

At oral argument counsel for one of the Unsecured Creditors
argued that *Cardelucci* has been superseded by *In re New*
*Investments, Inc.*, 840 F.3d 1137 (9th Cir. 2016). That argument
is unavailing. The *New Investments* decision concludes that the
1994 amendments to section 1124 abrogated the holding of *Entz-*
*White* that default interest rates could be eliminated by curing
defaults under a plan. The decision does not even mention
postpetition interest or *Cardelucci* and does not deal with
unimpaired claims under section 1124(1) and thus is of no
bearing on the issue presented or the outcome here.

V.    IMPAIRED OR UNIMPAIRED CLAIMS ARE TREATED ALIKE

Unsecured Creditors attempt in vain to escape *Cardelucci's*
impact by arguing that, unlike the impaired claim there, their
claims will be unimpaired under a plan. The court rejects
Unsecured Creditors' argument.

First, *Cardelucci*, in answering the narrow question, drew
no distinction as to whether the rule it announced was confined
only to impaired claims. The clear and unequivocal analysis
based on section 726(b)(5) is obvious: it applies to all
unsecured and undersecured claims in a surplus estate.

Second, no plan compels the payment of the Federal Interest
Rate. Rather, the Bankruptcy Code does. A similar analysis was
applied very recently by the Fifth Circuit in *In re Ultra*
*Petroleum Corporation*, ___ F.3d ___, 2019 WL 6318074 (November
26, 2019). There, the court contrasted the treatment of
creditors' claims outside of bankruptcy and whether the plan
itself was a source of limitation on their legal, equitable and
contractual rights, or rather the Bankruptcy Code. The court

-13-

looked to the language of section 1124(1), defining not impaired
when the plan ". . . leaves unaltered [the claimant's] legal,
equitable and contractual rights."  The court ruled that a claim
is impaired only if the plan itself does the altering, not what
the Bankruptcy Code does.

*Ultra Petroleum* agreed with the only other court of appeals
decision to draw the distinction between what a plan might do
and what the Bankruptcy Code does do.  *In Solow v. PPI
Enterprises (U.S.) Inc. (In re PPI Enterprises (U.S.) Inc.),* 324
F.3d.197 (3d Cir. 2003) the court upheld confirmation of a plan
notwithstanding a limitation on an objecting landlord's
statutorily capped damages under section 502(b)(6). It held that
where section 502(b)(6) alters a creditor's non-bankruptcy
claim, there is no alteration of the claimant's "legal,
equitable and contractual rights" for purposes of impairment
under section 1124(1).  *Id.* at 203.

The *PPI Enterprises* court agreed with the bankruptcy
court's analysis in *In re American Solar King Corp.*, 90 B.R. 808
(Bankr. W.D. Tex. 1988) where the bankruptcy court made the
following very thoughtful observation:

> A closer inspection of the language employed in
> [s]ection 1124(1) reveals 'impairment by statute to be
> an oxymoron.'  Impairment results from what the <u>plan</u>
> does, not what the statute does.  A plan which 'leaves
> unaltered' the legal rights of a claimant is one which
> by definition, does not impair the creditor.  A plan
> which leaves a claimant subject to other applicable
> provisions of Bankruptcy Code does no more to alter a
> claimant's legal rights than does a plan which leaves
> a claimant vulnerable to a given state's usury laws or
> to federal environmental laws.  The Bankruptcy Code
> itself is a statute which, like other statutes, helps

-14-

to define the legal rights of person's, just as surely
as it limits contractual rights. Any alteration of
legal rights is a consequence not of the plan but of
the bankruptcy filing itself.

*American Solar,* 90 B.R. at 819-20.

The *Ultra Petroleum* court noted that decisions from
bankruptcy courts across the country have reached the same
conclusion, agreeing that impairment results from what a plan
does, not from what a statute does.  Its conclusion reinforces
the point:

We agree with *PPI*, every reported decision identified
by either party, and Collier's treatise.  Where a plan
refuses to pay funds disallowed by the Code, the Code
- not the Plan – is doing the impairing.

*Ultra Petroleum,* 2019 WL 6318074 at *5.

Like the creditors in *Ultra* Petroleum, the Unsecured
Creditors' complaint is with Congress and the Bankruptcy Code,
not the drafters of a Plan.  The Bankruptcy Code, not the Plan,
limits them to the Federal Interest Rate.[7]  The cases cited by
Unsecured Creditors do not apply here, as the rights in those
cases were impaired by the plan and not by operation of law. *See*
*Acequia, Inc. v. Clinton (In re Acequia*), 787 F.2d 1352, 1363
(9th Cir. 1986) (shareholder voting rights altered by plan); *In*
*re Rexford Properties, LLC*, 558 B.R. 352, 368 (Bankr. C.D. Cal
2016) (creditor's rights regarding ongoing business altered by
plan).

There is no point in discussing section 1124(2), as that
subsection is not relevant to the treatment of the four not

_____

[7]    For the same reason, creditors who hold contractual claims
calling for interest lower than 2.59% will fare better under the
Plan.

-15-

1  impaired classes.  Were Debtors to have proposed a treatment of
2  the Unsecured Creditors' claims that cured, reinstated, or
3  reversed any acceleration, then the analysis might be helpful.
4  But because section 1124(1) is the operative section here, that
5  ends the discussion.

6      Because the Plan leaves the Unsecured Creditors' claims not
7  impaired, there is also no need to dwell on whether or not "fair
8  and equitable" principles apply.  They do not.  Unimpaired
9  Creditors, when treated as dictated by the Bankruptcy Code, are
10  not impaired by the Plan.  They are conclusively presumed to
11  have accepted the Plan.  Section 1126(f).  Section 1129(b) is
12  not available to them.[8]

13      VI.  CONCLUSION

14      As a trial court in the Ninth Circuit, this court is bound
15  to follow *Cardelucci* unless, as a matter of principled
16  reasoning, it can be distinguished.  No such grounds exist. The
17  1994 amendments to section 1124 predated *Cardelucci*.  Thus,
18  whether or not *Cardelucci* addressed the issue is not the point.
19  Its rule is the law of this circuit until altered either by an
20  *en banc* panel, the United States Supreme Court, legislation or
21  some other controlling change in the law.

22      Even were *Cardelucci* not controlling, this court would
23  follow the lead of *PPI* and *Ultra Petroleum* (and the lower court
24  decisions cited by *Ultra Petroleum)*, and reject the contention

25  _____
26  [8]    For this reason, the court rejects as incorrect the
   bankruptcy court's reliance *In re Energy Future Holdings*, 540
27  B.R. 109 (Bankr. D. Del. 2015) on "equitable principles" to
   permit unsecured creditors in a solvent case to recover a
28  contract rate or such other rate as it deemed appropriate.

-16-

1  of Objecting Creditors that imposition of the Federal Interest

2  Rate impairs them.  It is the Bankruptcy Code itself, not any

3  plan provision, that imposes that rate.[9]

4      The court is not concurrently entering an order consistent

5  with this Memorandum Decision as was the case with its recent

6  decision in the Inverse Condemnation action (Dkt. No. 4895).

7  Because of the close relationship between the postpetition

8  interest question and the issues presented in the forthcoming

9  Make-Whole dispute, orders disposing of them both at the same

10 time seems appropriate and efficient.  Whether either or both

11 questions should be certified for direct appeal or to treated as

12 final for purposes of Fed. R. Bankr. P. 7054, can be visited

13 later.

14               ***END OF MEMORANDUM DECISION***

---

[9]    *Ultra Petroleum* remanded the case to the bankruptcy court
to decide the appropriate Make-Whole amounts, the appropriate
postpetition interest rate, and the applicability of the
solvent-debtor exception.  If the three judges on the Fifth
Circuit panel had been members of the Ninth Circuit, there is no
doubt they would have been bound by *Cardelucci*, thus limiting
the remand to the Make-Whole issue.

-17-