William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Claimant and*

*Party to California Public Utilities Commission Proceeding I.19-09-016 to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19- 30088.*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

FILED
MAR - 6 2020
U.S. BANKRUPTCY COURT
SANTA ROSA, CA

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

    -and-

PACIFIC GAS AND ELECTRIC COMPANY,

    Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☑ Affects both Debtors

\* *All papers shall be filed in the lead case, No. 19-30088 (DM)*

Bankr. Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administrated)

**WILLIAM B. ABRAMS OBJECTION PURSUANT TO 11 U.S.C §§ 1129(A) AND U.S.C. §§ 1125 TO PROPOSED DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION [Dkt. 5700]**

**Hearing**
Date: March 10, 2020
Time: 10am PST
Place: Courtroom 17
450 Golden Gate Ave., 16th Floor
San Francisco, CA, 94102

**PLEASE TAKE NOTICE** that Pacific Gas and Electric Company (PG&E, Debtor) issued their "disclosure statement" void of any "reasonable assurance of success". This disclosure statement does not in any way meet US Bankruptcy Code § 1129. Section 1129(a)(11) provides, "The court shall confirm a plan only if all of the following requirements are met: Confirmation of the plan is not likely to be followed by the liquidation, or the need for further reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

**PLEASE TAKE FURTHER NOTICE** that the disclosure statement is not in keeping with U.S.C. §§ 1125 and must contain "adequate information". "Adequate Information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. Simply stated, this disclosure statement is a one-sided document that makes no attempt to disclose Debtors' risks or victim risks inherent in the plan of reorganization or the risks associated with the victim trust.

**PLEASE TAKE FURTHER NOTICE** that on March 6, 2020, William B. Abrams, claimant, victim and PG&E wildfire survivor, files this objection to the disclosure statement on the basis that it is patently unconfirmable due to a complete lack of financial viability as a plan for reorganization and unconfirmable on its face given its complete failure to address feasibility standards required by § 1129. Debtors have not articulated how they will address Pacific Gas and Electric Company's neglected infrastructure, business process issues, lack of safety orientation and growing wildfire/climate change risks which makes their financial position untenable and infeasible.

**PLEASE TAKE FURTHER NOTICE** that on September 20, 2001, Debtor filed "Disclosure Statement for Plan of Reorganization under Chapter 11 of the bankruptcy code for Pacific Gas and Electric Company proposed by Pacific Gas and Electric Company and PG&E Corporation" and did not address § 1129 issues at that time.[1] Neither this earlier plan nor the current disclosure statement sufficiently discloses internal or external risks to the company. William B. Abrams contends that it is this lack of consideration of § 1129 issues in this prior proceeding that precipitated the need for PG&E to reenter bankruptcy. Furthermore, given the PG&E compounded deferred maintenance/negligence across their infrastructure and increasing pace of climate change, if these issues are not sufficiently addressed in this current plan, PG&E will reenter bankruptcy yet again within 2 years.

**PLEASE TAKE FURTHER NOTICE** that subsequent to the passage of AB1054 by the California Legislature on July 11, 2019 and approved by the Governor, PG&E has caused extensive wildfires likely including the most recent Kincade Fire on October 23, 2019.[2] Over the past 6 years, PG&E has caused over 1,500 California Wildfires. In point of fact, the minimal $21B wildfire fund established in AB1054 still leaves PG&E highly exposed to considerable near-term financial risks necessitating a reentry into bankruptcy within the next two years if the plan stands as submitted to the Court.

---

[1] See "Disclosure Statement for Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company Proposed by Pacific Gas and Electric Company and PG&E Corporation", Filed September 20, 2001, United States Bankruptcy Court, San Francisco, CA
[2] California Assembly Bill No. 1054, Published July 12, 2019, Signed by Governor Newsom on July 12, 2019

**PLEASE TAKE NOTICE** that the following is in direct response to the Court's "Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation" [Dkt. 5673] and outlined procedural requirements to provide corrections to the disclosure statement in "short concise bullet points". Notwithstanding the objections stated above, I provide the following corrections to the disclosure statement:

- In the "Fire Victims Claim Resolution Procedures Summary" [Dkt. 873-1] strike ~~NOTHING IN THE PLAN OR TRUST AGREEMENT REQUIRES YOU TO RECEIVE PAYMENT IN STOCK~~" and replace with "THE TRUST AGREEMENT SIGNIFICANTLY LIMITS THE ABILITY OF THE TRUST MANAGER TO FREELY MANAGE THE TRUST TO THE BENEFIT OF VICTIMS. THE TRUST AGREEMENT DOES NOT AFFORD VICTIMS THE SAME INVESTOR FLEXIBILITY OF OTHER SHAREHOLDERS SO WILL LIKELY DISADVANTAGE THE MANAGEMENT OF THE TRUST"

- In the "Fire Victims Claim Resolution Procedures Summary" [Dkt. 873-1] add the following statement "If an attorney inadvertently solicited your approval to waive your vote prior to finalizing the proposed plan or solicited your vote prior to plan approval, you still have the right to change your vote now that the proposed plan has been prepared for a vote."

- Strike page 5, line 6 ~~Accordingly, no Fire Victim Claim will be satisfied in stock.~~ and replace with "Accordingly, the Fire Victim Claim Trust is associated with significant financial risk."

- On page 5, line 7 add "**Given the streamlined Fire Victims Claim Resolution Procedures, attorney fees will be capped at 14%.**"

- On page 5, in the box on line 8 statement "No Fire Victim will receive stock of Reorganized PG&E Corp. directly" add "Victim stock will be managed by a trust manager with additional investment constraints not typical of other shareholders which will limit prudent management"

- On page 5, on line 8 add "**The Trustee of the Victim Trust will be paid "hourly" at a rate of $_____ per hour, and annually at $_____ per year so will NOT have financial incentives tied to the performance of the victim shares as part of the trust. Also, given that the trustee will also be paid in this manner, the trustee will have incentives to hold the stock over a longer period of time thus reducing the cash available for victims.**"

- On page 5 (line 9) add "NOTE: The amount and the degree to which FEMA and CAL OES will seek damages from the victim settlement has not been determined and may significantly affect the ability of victims to be "made-whole" through the trust."

- On page 5 (line 15-17) change to "<u>The Debtors have provided no evidence how through this plan of restructuring</u> that they have reoriented their company to provide safe and reliable service nor have they tied their bottom-line financials to wildfire mitigation performance-based metrics. Despite this, it is ~~also~~ important to note that the Debtors <u>still</u> <u>believe</u> that the Plan will enable the Debtors to support California's clean energy goals and ensure that PG&E has access to sufficient resources to aggressively invest in capital improvements and wildfire mitigation and to provide safe and reliable service to its customers and communities."

- On page 5 (line 18-20) change "Finally, the Debtors <u>believe</u> that upon implementation of the Plan, PG&E will be able to participate in the recently authorized Go-Forward Wildfire Fund, which is designed to support the creditworthiness of California electrical corporations and provide a mechanism to attract capital for investment in safe, clean, and reliable power for California at a reasonable cost to ratepayers." to add "<u>There are NO assurances that this wildfire fund will be sufficient to support the Debtors through another PG&E caused wildfire.</u>"

- On page 6 (line 3-7) strike ~~IT IS THE OPINION OF THE PLAN PROPONENTS, THE AD HOC SUBROGATION GROUP, AND THE PUBLIC ENTITIES THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES, CREDITORS (INCLUDING ALL FIRE VICTIMS), AND SHAREHOLDERS. THEREFORE, THE DEBTORS AND ALL OF THE ABOVE GROUPS RECOMMEND THAT ALL CLAIMANTS AND SHAREHOLDERS, WHO ARE ENTITLED TO VOTE, VOTE TO ACCEPT THE PLAN.~~ Instead, state "THIS PLAN WILL TETHER THE FINANCIAL INTERESTS OF VICTIMS TO THE DEBTORS. THESE FINANCIAL INTERESTS ARE INEXTRICABLY LINKED TO THE DEGREE TO WHICH PG&E WILL BE ABLE TO SUCCESSFULLY MITIGATE RISKS AND PROVIDE SAFE AND RELIABLE SERVICE. OTHER CLAIMANT CLASSES HAVE BEEN PAID IN CASH OR HAVE BEEN PROVIDED SECURED INVESTMENTS. IT IS ONLY THE INDIVIDUAL VICTIMS THAT HAVE BEEN PROVIDED UNSECURED STOCK THROUGH THIS TRUST."

- On page 9 (line 20) add "The criminal convictions, neglected infrastructure and lack of measurable wildfire mitigation contributed to PG&E entering into Chapter 11. These matters remain largely unresolved and represent outstanding liabilities and risks that victims need to consider as they evaluate this plan."

- On page 10 (line 16) add "The date of emergence has not been set and therefore the date of when the trust will be funded is uncertain. However, regardless of the date, the plan will ensure that the shares on the date of emergence will be valued at $6.75B."

- On page 11 (line 18) add "There can be no assurance that this wildfire fund will be sufficient to support another PG&E caused wildfire. Victims will be further tethered to these wildfire risks through the victim trust and will hold approximately 21% of PCG shares if this plan is approved. It is important to note that there can be NO assurances that these funds will be available to victims to rebuild their homes and their lives."

- On page 13 (line 13) add "THESE RELEVANT PENDING ENFORCEMENT PROCEEDINGS AND OTHER FUTURE FINES AND PENALTIES COULD NEGATIVELY AFFECT THE VALUE OF THE VICTIM TRUST. THE INVESTIGATION INTO THE KINCADE FIRE OF 2019 IS STILL OUTSTANDING AND COULD SIMILARLY IMPACT VICTIM STOCK PRICE DEPENDING UPON THE OUTCOME OF THAT INVESTIGATION AND SUBSEQUENT LEGAL ACTION."

- Modify page 13 (line 18) to read "The <u>Debtor's stated</u> principal objectives of the Chapter 11 Cases are:"

- On page 17 (line 21) add "**This settlement, your vote and/or the approval of this plan does NOT preclude other Tubbs Fire Victims outside those of this settlement from seeking criminal or civil actions against Debtors, Pacific Gas and Electric Corporation and/or Pacific Gas and Electric Company.**"

- On page 19 (line 11) add "The Ad Hoc Committee of <u>Unsecured</u> Noteholders was able to negotiate asset liens and hedge their investments so dropped their competing plan. This investor "security" was not provided to victims and given that the Noteholder RSA was signed AFTER the TCC RSA, the implications of the Noteholder RSA could not have been known by the TCC when they executed the agreement on behalf of individual victims. Furthermore, there are clauses within the TCC RSA indicating that attorneys "SHALL" urge victims to "support and vote to accept the amended plan". Given this, it is incumbent upon victims to seek outside advice to understand the benefits and risks if they choose to vote to accept this plan."

- On page 21 (line 8) strike "~~The Debtors do not believe there is any merit to the claims asserted in the PSPS Adversary Proceeding and, as such, filed a motion to dismiss the PSPS Adversary Proceeding on January 21, 2020.~~ "

- Given that the plan of reorganization does not include anything to substantively address safe and reliable service strike first paragraph on page 22 "~~Over the past several months, the Debtors and their advisors have worked diligently with their…. positioned to deliver safe and reliable service to its customers.~~".

- On page 23 (line 21) under "(b) Treatment" add "This Fire Victim Trust will be impaired and will not have rights of other shareholders to sell the stock more freely when stock volatility is apparent."

- On page 28 (line 4) add "The Trustee will not have any financial incentives to maximize return for fire victims. The hourly and quarterly costs associated with the management of the trust will be deducted from the victim's settlement."

- On page 32 (line 18) add "Given that victims will be compensated 50% in shares through the Victim Trust, the degree to which victims will be "made-whole" will be left unresolved through this plan."

Case: 19-30088    Doc# 6151    Filed: 03/06/20    Entered: 03/06/20 13:59:03    Page 5 of 6

If this motion does not precipitate a reconstitution and substantive rework of the PG&E plan to mitigate these significant risks, the disclosure statement should be deemed unconfirmable. Instead, if the plan and the associated disclosure statement remains largely unchanged, I recommend that the following warning be added at the top of the disclosure statement so that claimants are made fully aware of these unmitigated risks… **"Attention: The PG&E proposed restructuring plan does NOT mitigate external climate change risks such as wildfires or ANY internal structural issues that led to the neglect, deferred maintenance and mismanagement of their infrastructure and associated services. Due to this lack of substantive reform in the plan, extensive PG&E caused wildfires are likely to follow in the short-term."**

Dated: March 6, 2020

Respectfully submitted,

William B. Abrams
Claimant