DAVID M. FELDMAN (*pro hac vice*)
 dfeldman@gibsondunn.com
MATTHEW K. KELSEY (*pro hac vice*)
 mkelsey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

MATTHEW D. McGILL (*pro hac vice*)
 mmcgill@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

MICHAEL S. NEUMEISTER, SBN 274220
 mneumeister@gibsondunn.com
MICHELLE CHOI, SBN 313557
 mchoi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for the Ad Hoc Committee of Holders of Trade Claims*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>    -and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    **Debtors.**<br>☐   Affects PG&E Corporation<br>☐   Affects Pacific Gas and Electric Company<br>☑   Affects both Debtors<br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**OBJECTION OF THE AD HOC COMMITTEE OF HOLDERS OF TRADE CLAIMS TO THE PROPOSED DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

The Ad Hoc Committee of Holders of Trade Claims (the "Trade Committee"),[1] by and through its undersigned counsel, submits this objection (the "Objection") to the *[Proposed] Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [D.I. 5700] (the "Disclosure Statement") filed by PG&E Corporation ("PG&E Corp."), Pacific Gas and Electric Company (the "Utility" and together with PG&E Corp., "PG&E" or the "Debtors"), and certain funds and accounts managed or advised by Abrams Capital Management, LP and certain funds and accounts managed or advised by Knighthead Capital Management, LLP (the "Shareholder Proponents" and, together with the Debtors, the "Plan Proponents") in respect of the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* [D.I. 5590] (the "Plan")[2] in these chapter 11 cases (the "Chapter 11 Cases").

The Trade Committee is mindful of, and will abide by, the Court's admonition that "[o]bjections to a disclosure statement should not include objections to confirmation, alternatives to the proposed Plan or other irrelevant matters," except for objections "based upon a good faith belief that the proposed Plan is unconfirmable as a matter of law." *Amended Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation* [D.I. 5732] (the "Scheduling Order") at 3. Consistent with the Court's Scheduling Order, on February 28, 2020, the Trade Committee served on the Plan Proponents and other parties with proposed language to be included in the Disclosure Statement. Through the meet-and-confer process, the Disclosure Statement has been satisfactorily modified to make the disclosures requested by the Trade Committee.

The Trade Committee has also raised with the Plan Proponents a number of issues with respect to the confirmability of the Plan, none of which have been resolved as part of the meet-and-confer process. With the exception of the issue discussed below, which is "based upon a good faith belief that the proposed Plan is unconfirmable as a matter of law" (Scheduling Order at 3),[3]

---

[1] The Trade Committee consists of creditors holding more than $308 million in trade claims against the Debtors. *See First Amended Verified Statement of Ad Hoc Committee of Holders of Trade Claims Pursuant to Bankruptcy Rule 2019* [D.I. 5060] (the "First Amended 2019 Statement"). The names and addresses of each Trade Committee member is listed on the First Amended 2019 Statement.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[3] The Trade Committee acknowledges that, although not included in the Scheduling Order, the Debtors' notice of hearing on the Disclosure Statement [D.I. 5733] states that any objection or response to the Disclosure Statement

the Trade Committee reserves all rights with respect to any and all issues relating to confirmation of the Plan, whether or not the they are expressly referred to in this Objection.

## OBJECTION

The Plan currently provides that "[t]he Allowed amount of any [HoldCo/Utility] General Unsecured Claim shall [include/reflect] all interest accrued from the Petition Date ***through the Effective Date*** at the Federal Judgment Rate." Plan ¶¶ 4.4(a), 4.21(a) (emphasis added). The Plan defines "Allowed" to include "any Claim or Interest arising on or before the Effective Date as to which no objection to allowance has been interposed within the time period set forth in the Plan . . . ." *Id.* ¶ 1.7. The Plan further provides that "any objections to Claims shall be served and filed on or before the later of (i) one-hundred and eighty (180) days after the Effective Date and (ii) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court for cause shown)." *Id.* ¶ 7.1. A holder of a Claim is only entitled to distributions under the Plan after the Claim has become Allowed. *Id.* ¶ 7.4. In fact, "if any portion of a Claim is a Disputed Claim," no payment or distribution shall be made on the entire Claim (even any undisputed portion) until the Disputed Claim becomes Allowed. *Id.* ¶ 7.3. Accordingly, while the Plan contemplates payment to holders of Allowed General Unsecured Claims "on the Effective Date or as soon as reasonably practicable thereafter," the mechanics for allowance of Claims provides the Debtors significant flexibility to delay paying holders of General Unsecured Claims for months and potentially years after the Effective Date. And during such period, under the Debtors' Plan, holders of General Unsecured Claims would not be entitled to payment of interest to compensate for the delay in distribution. This structure renders the Plan patently unconfirmable.

The Plan treats General Unsecured Claims as unimpaired. *Id.* ¶¶ 4.4(b), 4.21(b). The Ninth Circuit has made clear that "any alteration of [a creditor's] rights constitutes impairment even if the value of the rights is enhanced." *L & J Anaheim Assocs. v. Kawasaki Leasing Int'l (In re L & J Anaheim Assocs.)*, 995 F.2d 940, 942 (9th Cir. 1993) (internal quotation marks and citation

---

should be "without points and authorities in support." *See* D.I. 5733 § 4.c(iii). The Trade Committee has included points and authorities in this Objection only to establish that the Plan is unconfirmable as a matter of law, without which the Trade Committee is concerned the Court would not have sufficient information to consider this Objection. *See* Scheduling Order at 3.

omitted). Under the Court's *Memorandum Decision Regarding Postpetition Interest* [D.I. 5226] ("PPI Memorandum"), the Court found that "[t]he Ninth Circuit [in *Cardelucci*] held that in chapter 11 cases involving solvent debtors, unsecured creditors are entitled to postpetition interest at the federal judgment rate . . . ." PPI Memorandum at 6. Accordingly, under the PPI Memorandum and binding Ninth Circuit case law, the Debtors' Plan, to the extent it continues to unimpair General Unsecured Claims cannot cut off the right to payment of interest accruing after the Petition Date, either at the Federal Judgment Rate or otherwise.

The Ninth Circuit has, in fact, recognized that in order to pay creditors who are not paid in full on a plan's effective date the present value of their claims, a plan must pay post-effective date interest until such claims are paid in full. *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 654 (9th Cir. 1997) ("[I]n order for Liberty to be paid the full value of its claim, the Plan must provide for payment of interest for the post-confirmation time-value of the amount of Liberty's unsecured claim."); *In re Perez*, 30 F.3d 1209, 1214 (9th Cir. 1994) (" . . . Everett and those in his class were entitled to one hundred cents on the dollar. But what does this mean when a class is paid off over time? Is it enough for the class to receive the nominal value of what is owed to it, even though the present value of the payment stream is less than the full amount of the debt? Clearly not. . . . In other words, such creditors must be paid interest for the post-confirmation time value of their money."). These cases apply Bankruptcy Code section 1129(b), but it would be inconsistent with the Ninth Circuit's holding in *L & J Anaheim* to require post-effective date interest for impaired creditors under section 1129(b), but not require the same result under Bankruptcy Code section 1124.

Indeed, debtors routinely propose plans that ensure that creditors are compensated for any delay in distributions on their claims by way of post-effective date interest. *See*, *e.g.*, *In re Calpine Corp.*, Ch. 11 Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.), Docket No. 7237 ¶¶ I.A.155; III.B.1– 7, 9, 11–13, 16–17 (paying interest on allowed claims through the "Interest Accrual Limitation Date," defined as "[t]he date on which the applicable Claim is satisfied in full"); *In re Dow Silicones Corp.*, Ch. 11 Case No. 95-20512 (DPH) (Bankr. E.D. Mich.), Docket No. 30115 (approving settlement agreement pursuant to which the parties agreed that "interest on any

unsatisfied portion of an Allowed Class 4 Claim . . . that was due and owing on the Plan Effective Date accrues from the Plan Effective Date until the date distribution is actually made . . . .").

In the event holders of General Unsecured Claims are not paid the full amount of their Allowed Claims, plus appropriate postpetition interest, on the Effective Date, then any such amount not paid must accrue post-Effective Date interest. To the extent the Plan does not provide for such post-Effective Date interest on the amount of postpetition interest disputed as of the Effective Date, the Plan is patently unconfirmable and approval of the Disclosure Statement must be denied.

## **RESERVATION OF RIGHTS**

As noted above, the Trade Committee reserves all of its rights to object to confirmation of the Plan, whether or not the bases for such objection are expressly referred to in this Objection. Further, the Trade Committee reserves the right to join in any argument or objection made by any other parties relating to the adequacy of the Disclosure Statement and confirmability of the Plan.

## **CONCLUSION**

For the foregoing reasons, the Trade Committee requests that the Court sustain this Objection, deny approval of the Disclosure Statement, and grant such other and further relief as the Court deems just and proper.

Dated: March 6, 2020         **GIBSON, DUNN & CRUTCHER LLP**

By: /s/ *Michael S. Neumeister*
David M. Feldman (*pro hac vice*)
Matthew K. Kelsey (*pro hac vice*)
Matthew D. McGill (*pro hac vice*)
Michael S. Neumeister
Michelle Choi

*Attorneys for the Ad Hoc Committee of Holders of Trade Claims*