Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| Debtors. | **STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING (I) THE PROPOSED DISCLOSURE STATEMENT AND (II) THE SOLICITATION PROCEDURES MOTION** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: March 10, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 5700 and 5835 |

The Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the above-captioned chapter 11 cases, by its attorneys Milbank LLP, hereby submits this

statement in connection with: (i) the *[Proposed] Disclosure Statement for the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement")[1] [Docket No. 5700]; and (ii) *Debtors' Motion for Entry of an Order (I) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (II) Establishing and Approving Plan Solicitation and Voting Procedures; (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (IV) Granting Related Relief* (the "Solicitation Procedures Motion") [Docket No. 5835].

The Creditors' Committee is mindful of, and intends to abide by, the Court's admonition that parties should refrain from raising plan confirmation issues in connection with the approval of the Disclosure Statement. Accordingly, with the exception of the issue discussed below, the Creditors' Committee will simply note that, at this stage:

(1) The Creditors' Committee has not approved the *Joint Chapter 11 Plan of Reorganization dated January 31, 2010* (the "Plan") [Docket No. 5590] to which the Disclosure Statement pertains, but rather continues, in accordance with its statutory duty, to conduct due diligence on all issues under Bankruptcy Code section 1129, including the Plan's feasibility;

(2) The Creditors' Committee has reached out to the Debtors with respect to its ongoing diligence efforts and expects the Debtors to cooperate in that process in good faith; and

(3) Pending further discussions with the Debtors, the Creditors' Committee reserves all of its rights with respect to any and all issues relating to the

---

[1] Capitalized terms not otherwise defined herein have the respective meanings ascribed to them in the Disclosure Statement.

confirmability of the Plan and all other applicable requirements of the Bankruptcy Code.

However, there is one particular concern that the Creditors' Committee is compelled to raise with the Court at the Disclosure Statement stage because its resolution may be pertinent to the solicitation of votes on the Plan and thus to the relief sought in the Solicitation Procedures Motion.[2]

Specifically, Section 10.3 of the Plan provides as follows:

> 10.3 **Release and Discharge of Debtors**. Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Interest in the Debtors.

While the Debtors will be entitled, on and after the Effective Date, to the protections of the discharge provisions of Bankruptcy Code section 1141(d), the language in Section 10.3 goes well beyond the statute by foisting what amounts to a general release upon all creditors receiving distributions under the Plan – even creditors whose claims, according to the Debtors, are unimpaired by the Plan. It is not at all clear why the Debtors are entitled to extract a non-consensual release beyond the discharge the Debtors are already receiving under section 1141(d), especially when such a release potentially infringes upon the rights of creditors whose legal, contractual, and equitable rights are supposed to be left unaltered. 11 U.S.C. § 1124.

Section 10.3 presents particular concerns to vendors and other counterparties to prepetition contracts with the Debtors who may have contractual and/or common law rights of

---

[2] The Creditors' Committee did address this issue with the Debtors during the meet-and-confer period, but the parties were unable to resolve it consensually.

indemnification, contribution and similar rights against the Debtors. Depriving these parties of their rights, while at the same time declaring their claims to be unimpaired and denying them the right to vote on the Plan, is clearly both inequitable and at odds with Bankruptcy Code section 1124. See, e.g., In re Chassix Holdings, Inc., 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) ("If a creditor must release a claim . . . (as a condition to whatever payment or other treatment the plan provides for the creditor's claim against the debtor), it is difficult to understand how such a creditor could properly be considered 'unimpaired' by the Plan in the first place.").

Accordingly, the Plan must be modified to ensure that the Debtors' general unsecured creditors whose claims are declared to be unimpaired are not deprived, inadvertently or otherwise, of any of their legal, contractual, or equitable rights they are entitled to fully retain under section 1124 of the Bankruptcy Code. Without such modification, those creditors are clearly impaired and should be entitled to vote – which is why this issue is ripe as part of the Court's consideration of the Disclosure Statement and the Solicitation Procedures Motion.

To that end, the Creditors' Committee requests that Section 10.3 be replaced in its entirety with the following:

> 10.3 **Release and Discharge of Debtors**. Upon the Effective Date, the Debtors shall be discharged to the fullest extent permitted by Bankruptcy Code section 1141. For the avoidance of doubt, and notwithstanding any provision to the contrary in the Plan, any Plan Document or the Confirmation Order, nothing in the Plan, any Plan Document or Confirmation Order shall impair or otherwise alter any indemnification obligations, defenses, counterclaims, cross-claims, or third party claims, including any rights to equitable comparative contribution, partial or comparative indemnity, setoff, or recoupment, that the holder of any General Unsecured Claim may have against any Debtor or Reorganized Debtor.

The Creditors' Committee has also suggested to the Debtors certain drafting revisions of both the Plan and the Disclosure Statement, most of which the Creditors' Committee views as non-controversial. Thus, the Creditors' Committee expected to resolve most or all of the issues it has raised as part of the meet-and-confer process in

Case: 19-30088    Doc# 6154    Filed: 03/06/20    Entered: 03/06/20 14:32:47    Page 4 of 6

advance of the Disclosure Statement hearing. To date, however, the Debtors have refused to accept certain of the Creditors' Committee's comments. These comments fall into two categories:

1. <u>Releases</u>: The Plan makes the Creditors' Committee one of the "Releasing Parties," but fails to include the Creditors' Committee among the "Released Parties." The Disclosure Statement contains no explanation as to why the Debtors believe it may be appropriate to force any party, let alone a statutory committee, to grant a non-consensual and non-mutual release in the Plan. In fact, imposing a non-consensual release simply is not appropriate. See In re Hotel Mt. Lassen, Inc., 207 B.R. 935, 941 (Bankr. E.D. Cal. 1997) ("In the Ninth Circuit and other jurisdictions that prohibit compelled third-party releases, any third-party release associated with a plan of reorganization draws its vitality from its status as a voluntary contractual agreement between the releasing and the released parties, rather than by virtue of the court's order confirming the plan."). In a typical chapter 11 plan, a creditors' committee, together with its members and professionals, are granted a release in return for giving a release. To the extent the Debtors refuse to provide this customary release to the Creditors' Committee and its related parties, the Creditors' Committee should be excluded from the definition of "Releasing Parties."

2. <u>Trustee Protections</u>:[3] The various funded debt documents to which the Debtors are party compel the payment of the trustees' fees and expenses, and grant the trustees charging liens to protect their entitlement to same. Notwithstanding this fact, the Debtors have resisted including language in the Plan and Disclosure Statement confirming these rights, arguing that the settlement they had reached in the Noteholder RSA excluded

---

[3] While the various indenture trustees and agents will likely raise this issue themselves, it was the Creditors' Committee that has transmitted their aggregated comments to the Debtors.

| | |
|---|---|
| 1 | these rights. However, the trustees were not parties to the Noteholder RSA, and the |
| 2 | noteholders who were (which is only a subset of noteholders) do not have the right to waive |
| 3 | the trustee's rights (that are separate from the noteholders' own). To the extent the Debtors |
| 4 | refuse to comply with their contractual obligation to pay these amounts, these amounts will |
| 5 | |
| 6 | be deducted from the distributions to which noteholders are entitled to under the Plan. To |
| 7 | the extent that the Debtors continue to refuses to pay such amounts, the Disclosure |
| 8 | Statement should be revised to include a discussion of this fact. |

Dated: March 6, 2020

**MILBANK LLP**

*/s/ Gregory A. Bray*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*