RICHARD A. MARSHACK, #107291
rmarshack@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Gerald Singleton, SBN 208783
Gary LoCurto, SBN 270372
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, CA 92101
Tel: (619) 771-3473
Email: gerald@slffirm.com
       glocurto@slffirm.com

Attorneys for SLF Fire Victim Claimants

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>   and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>               Debtors<br><br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors<br><br>* All papers shall be filed in the Lead Case,<br>   No. 19-30088 (DM). | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case–Jointly Administered)<br><br>**SLF Fire Victim Claimant's Objection to [Proposed] Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization**<br><br>Date:    March 11, 2020<br>Time:   10:00 a.m. (Pacific)<br>Place:   United States Bankruptcy<br>Court:   Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

The Singleton Law Firm ("SLF") and Marshack Hays LLP, together with several other firms, represent thousands of victims ("SLF Claimants") of the fires started by PG&E in 2015 ("Butte Fire"), 2017 (the twenty fires generally referred to as the "North Bay" and "Wind Complex Fires"), 2018 ("Camp Fire") and 2019 ("Kincade Fire" and "LaFayette Fire"). The SLF Claimants submit this objection ("Objection") to the Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization ("Disclosure Statement") filed on February 7, 2020, as Dk. No. 5700, as follows.

**Note**: This objection to the Disclosure Statement is limited to:

1. Treatment of postpetition wildfire victim claims, including claims arising from the Kincade Fire and LaFayette Fire;

2. Potential preference issues; and

3. The definition of Effective Date.

## I. Treatment of Claims Arising From Post-Petition Fires

### A. Summary of Objection to Disclosure Statement and Plan

The Plan and Disclosures Statement do not specifically address how postpetition fire victim claims will be liquidated and paid. It is established law that such claims should be treated as administrative expenses. The language that comes closest to addressing this issue is 2.1 of the Debtors' Plan which provides:

> "Administrative Expense Claims. In full and final satisfaction, settlement, release, and discharge of any Allowed Administrative Expense Claim against a Debtor, except to the extent the Debtors or Reorganized Debtors, as applicable, and a holder of an Allowed Administrative Expense Claim against a Debtor agrees to a less favorable treatment of such Administrative Expense Claim, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, and discharge of such Allowed Administrative Expense Claim, an amount in Cash equal to the Allowed amount of such Administrative Expense Claim; provided that any Allowed Administrative Expense Claim that is not due and payable prior to the Effective Date, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities."

*See*, Dk. No. 5590, Debtors' Plan of Reorganization, pp. 36, lines 6-12.

Nonetheless, neither the Plan nor Disclosure Statement specify whether postpetition fire victims can liquidate their claim, whether lawsuits can be initiated, or how such claims will be paid once adjudicated or otherwise resolved. Simply stated, postpetition fire victims require adequate information on whether their claim can be liquidated and how such claim will be treated in the Plan.

### B. Proposed Revisions to the Plan

SLF Claimants propose the language set forth in Exhibit A be inserted into the Plan that would address claims of postpetition fire victims. The reason for the proposed revisions are as follows:

1. Generally, in order to have a claim paid as an administrative expense an order must be obtained. SLF Claimants proposed language does away with this requirement which, if adopted, will spare everyone the expense of having to deal with **hundreds** of motions seeking to allow the claims.

2. As drafted, the Plan is non-specific with respect to treatment of claims arising from the Kincade Fire or LaFayette Fire. The last sentence of 2.1 of the Plan suggests that any postpetition administrative claim will be paid in the ordinary course as they are determined. This vagueness gives Debtors the opportunity to argue that the claims are not entitled to administrative priority. We acknowledge that most case authority indicates that these claims are entitled to an administrative priority but there are other cases that can create doubt about this. Nonetheless, the proposed language will put this issue to rest. Moreover, for those individuals who are not bankruptcy counsel and reading the Disclosure Statement and Plan it will provide some much-needed insight into the treatment of these claims.

3. There is case authority that states any claims that exist as of the date of confirmation but that are not specifically dealt with in the Plan, are discharged. Without making such changes, the Debtors could argue that plan confirmation discharged any such obligations. As such, dealing with this issue

3

on the frontend as opposed to relying on the language in Section 2.1 will provide some much-needed transparency and certainty.

4. The Plan is silent as to <u>when</u> Kincade Fire or Lafayette Fire victims can initiate lawsuits to liquidate their claims. An argument can be made that the automatic stay of 11 U.S.C. § 362 does not prevent the filing of a claim based on postpetition conduct of the debtor. This, however, is not all together clear. Further, it is arguable that under the *Barton* doctrine, Kincade Fire and LaFayette Firevictims would need leave of court before initiating such suits against Debtors. As such, the proposed language would give such fire victims the right to initiate such proceedings after July 1, 2020.

For the reasons state above, SLF Claimants propose the addition of three or so sentences set forth in Exhibit A to the Plan.

### C. Proposed Revisions To Disclosure Statement

It is necessary that the Disclosure Statement and Plan be clear on how postpetition fire victim claims will be treated. If the language set forth in Exhibit A is adopted, the Disclosure Statement should be supplemented to add the following: "*Any claims arising from the Kincade Fire, LaFayette Fire, or any other postpetition fire, may be liquidated in any court which would otherwise have jurisdiction absent the bankruptcy proceeding, commencing on or after July 1, 2020 and said claims are not subject to discharge but shall be paid in full by the Reorganized Debtors once the claims have been liquidated. Such claims shall be administrative expense claims but shall not be an obligation of the Fire Victim Trust. There shall be no obligation or requirement that holder of a postpetition fire claim that they file any proceeding preconfirmation to preserve the validity and enforceability of their claims.*"

### D. Debtor's Proposal to Address the Above Issues

In their correspondence dated March 5, 2020, the Debtors proposed to add the following language to the Disclosure Statement, *See*, Redlined Version starting at page 45, line 2:

"…provided, however, that any liability of the Debtors arising from any fire occurring after Petition Date that has not been satisfied in full as of the Effective Date shall not be discharged, waived or released."

4

### E. Why Debtors' Proposal Does Not Work

1. No changes have been made to the Plan and it is generally understood that if an ambiguity exists, the Plan controls. There must be changes to the Plan and those changes should be the simple and unequivocal statements proposed in Exhibit "A," hereto. (Exhibit "A" was first provided to the Debtors on or about February 21, 2020.) The addition of the three and a half proposed sentences in the attached redline version of Exhibit "A" removes all doubt and all ambiguity relating to the treatment of the claim, the need to file motions for allowance of claims and when litigation may commence to liquidate the claims.

2. The Debtors' proposed changes does not specifically state that holders of post-petition wildfire claims do not have to file a motion to have an allowed administrative claim. Adding one sentence to resolve this issue, would potentially eliminate hundreds of motions.

3. The Debtors' proposed changes do not state when litigation may commence for holders of post-petition wildfire claims.

**Comment:** If the Debtors cared and wanted to remove all doubt and any ambiguities, they would have added the three and a half sentences proposed in the attached Exhibit "A."

## II. Potential Preference Actions against Wildfire Victims

The Disclosure Statement and Plan need to address whether Debtors will pursue preference actions against wildfire victims. There is a general understanding Debtors are solvent entities and therefore may not be able to sustain actions under 11 U.S.C. § 547. However, in an abundance of caution, the following language is requested:

> Plan: *"No claims shall be brought under 11 USC Section 547 and/or 550 to recover any payment to anyone or any entity receiving payments as a result of damages caused by wildfires."*
>
> Disclosure Statement: *"No recipient of funds who received payment as a result of damages caused by wildfires shall be sued for receiving a preferential transfer as that term is defined in the Bankruptcy Code."*

/ / /

/ / /

5

Case: 19-30088    Doc# 6158    Filed: 03/06/20    Entered: 03/06/20 15:05:33    Page 5 of 9

## III. Effective Date

As drafted the plan does not specify the specific Effective Date, nor does it specify the agreed upon Effective Date as set forth in the Tort Claimants' RSA. This is important as funding for Wild Fire Victims begins on the Effective Date..

1. The Definition of Effective Date as set forth in the Plan is as follows:

    "Effective Date means a Business Day on or after the Confirmation Date selected by the Debtors, on which the conditions to the effectiveness of the Plan specified in Section 9.2 hereof have been satisfied or otherwise effectively waived in accordance with the terms hereof."

2. Agreed Upon Effective Date as set forth in the Tort Claimants' RSA, Section 3(A)(ii) provides that the Tort Claimants' RSA is automatically terminated if, "(E) the Effective Date of the Amended Plan does not occur prior to August 29, 2020."

3. Problem: The current Plan definition of Effective Date is open-ended. Debtors, however, entered into an agreement entitled "Tort Claimants RSA" which states that the Effective Date will be no later than August 29, 2020. All claimants are entitled to know that the Effective Date will be no later than the agreed deadline of August 29, 2020, as set forth in the Tort Claimants' RSA. This is particularly important as 1.6 of the Plan defines "Aggregate Fire Victim Consideration." That section specifically provides that the Fire Victim Trust shall receive $5.4 billion in cash and common stock on the Effective Date.

4. Proposed Solutions. The following language should be added to the end of the Debtors' definition of Effective Date: ***The Business Day selected by the Debtors must be no later than August 29, 2020.***

///

///

## IV. Conclusion

A holder of a claim due to a postpetition fire cannot determine with certainty how their claim will be treated based on the current draft of the Disclosure Statement and Plan. Separately, clarification as to potential preference actions by Debtors is needed. Lastly, certainty as to the funding date for the Fire Victim Trust is needed. Accordingly, the Disclosure Statement and Plan must be amended to specify that the Effective Date shall be no later than August 29, 2020.

Dated: March 6, 2020  MARSHACK HAYS LLP

By: *(signature)*
RICHARD A. MARSHACK
DAVID A. WOOD
LAILA MASUD
Attorneys for SLF CLAIMANTS

Dated: March 6, 2020  SINGLETON LAW FIRM, APC

By: *(signature)*
GERALD SINGLETON
GARY LOCURTO
Attorneys for the SINGLETON LAW FIRM FIRE VICTIM CLAIMANTS

EXHIBIT A

Case: 19-30088    Doc# 6158    Filed: 03/06/20    Entered: 03/06/20 15:05:33    Page 8 of 9

**PROPOSED PLAN REVISIONS RE: TREATMENT AND PAYMENT OF KINCAID FIRE CLAIMS**

**1.4 Administrative Expense Claim** means any cost or expense of administration of any of the Chapter 11 Cases arising on or before the Effective Date that is allowable under section 503(b) of the Bankruptcy Code and entitled to priority under sections 364(c)(1), 503(b) (including 503(b)(9) Claims), 503(c), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code that has not already been paid, including, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any liability arising from any fire occurring after the Petition Date including the ~~Kincaid~~ Kincade Fire and the LaFayette Fire, any indebtedness or obligations incurred or assumed by one or more of the Debtors, as a debtor in possession, during the Chapter 11 Cases, including, for the acquisition or lease of property or an interest in property or the performance of services, or any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code, (b) any DIP Facility Claim, (c) any Professional Fee Claim and (d) any Intercompany Claim authorized pursuant to the Cash Management Order.

**2.1 Administrative Expense Claims.** In full and final satisfaction, settlement, release, and discharge of any Allowed Administrative Expense Claim against a Debtor, except to the extent the Debtors or Reorganized Debtors, as applicable, and a holder of an Allowed Administrative Expense Claim against a Debtor agrees to a less favorable treatment of such Administrative Expense Claim, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, and discharge of such Allowed Administrative Expense Claim, an amount in Cash equal to the Allowed amount of such Administrative Expense Claim; *provided that* any Allowed Administrative Expense Claim that is not due and payable prior to the Effective Date, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities. Debtor's liabilities for any fire occurring after the Petition Date, including the ~~Kincaid~~ Kincade Fire and the LaFayette Fire, shall be Administrative Expense Claims that ~~will not be~~ are not subject to discharge under the plan.

**10.3 Release and Discharge of Debtors.** Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. The discharge, however, shall not extend to any Administrative Claims for fires occurring after the Petition Date, including the ~~Kincaid~~ Kincade Fire and the LaFayette Fire which shall remain a liability of Debtor and paid as set forth in ¶ 2.1. Specifically, any and all claimants who have claims arising out of the Kincade Fire or any other fires occurring after the Petition Date, may proceed to liquidate their claim(s) in any court that would otherwise have jurisdiction if the reorganization proceeding had not been filed and may do so after the earlier of the Effective Date or July 1, 2020. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Interest in the Debtors.