1  THOMAS F. KOEGEL (SBN 125852)
   tkoegel@crowell.com
2  CROWELL & MORING LLP
   3 Embarcadero Center, 26th Floor
3  San Francisco, California 94111
   Telephone: 415.986.2800
4  Facsimile: 415.986.2827

5  BRIAN J. LOHAN (*pro hac vice* application forthcoming)
   brian.lohan@arnoldporter.com
6  BENJAMIN MINTZ (admitted *pro hac vice*)
   benjamin.mintz@arnoldporter.com
7  ARNOLD & PORTER KAYE SCHOLER LLP
   250 West 55th Street
8  New York, NY 10019-9710
   Telephone: 212.836.8000
9  Facsimile: 212.836.8689

10 Attorneys for Claimant
   AT&T Corp.

11

               UNITED STATES BANKRUPTCY COURT
12
               NORTHERN DISTRICT OF CALIFORNIA
13
                   SAN FRANCISCO DIVISION
14

15 **In re:**                          Case No. 19-30088 (DM)
                                       Chapter 11
16 **PG&E CORPORATION,**               (Lead Case)
                                       (Jointly Administered)
17     **- and -**
                                       **LIMITED OBJECTION OF AT&T**
18 **PACIFIC GAS AND ELECTRIC**        **CORP. TO THE DEBTORS' MOTION**
   **COMPANY,**                        **FOR ENTRY OF AN ORDER (I)**
19                                     **APPROVING FORM AND MANNER OF**
           **Debtors.**               **NOTICE OF HEARING ON PROPOSED**
20                                     **DISCLOSURE STATEMENT; (II)**
   ☐ Affects PG&E Corporation         **ESTABLISHING AND APPROVING**
21 ☐ Affects Pacific Gas and Electric Company **PLAN SOLICITATION AND VOTING**
   ☒ Affects both Debtors             **PROCEDURES; (III) APPROVING**
22                                     **FORMS OF BALLOTS, SOLICITATION**
   *  All papers shall be filed in the Lead Case,* **PACKAGES, AND RELATED NOTICES;**
23 *No. 19-30088 (DM)*                 **AND (IV) GRANTING RELATED**
                                       **RELIEF**
24
                                       Date: March 10, 2020
25                                     Time: 10:00 a.m. (PT)
                                       Place: United States Bankruptcy Court
26                                            Courtroom 17, 16th Floor
                                              450 Golden Gate Avenue
27                                            San Francisco, California
                                       Judge: The Hon. Dennis Montali
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

AT&T Corp. (**AT&T**"), by its attorneys Crowell and Moring LLP and Arnold Porter Kaye Scholer LLP, hereby files this limited objection (the "**Objection**") to the *Debtors' Motion for Entry of an Order (I) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (II) Establishing and Approving Plan Solicitation and Voting Procedures; (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (IV) Granting Related Relief* [Docket No. 5835] (the "**Solicitation Procedures Motion**").[1]  In support of this Objection, and in accordance with the instructions set forth in the *Amended Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation* [Docket No. 5732] (the "**Scheduling Order**"),[2] AT&T respectfully represents as follows:

## OBJECTION

**I.      THE PROPOSED VOTING PROCEDURES VIOLATE THE BANKRUPTCY CODE AND SHOULD NOT BE APPROVED.**

### A. Background

- ***The Debtors Propose to Value All Fire Victim Claims at $1 for the Purpose of Plan Voting Regardless of the Size of the Claim.***  In the Solicitation Procedures Motion, the Debtors propose a voting procedure whereby each holder of a Fire Victim Claim would be accorded one (1) vote valued at $1, regardless of whether the Fire Victim Claim is liquidated or unliquidated, contingent or non-contingent, or disputed or non-disputed, and regardless of the size of the Fire Victim Claim.  The Debtors offer two justifications to support the proposed voting procedures:  (i) First, they contend that it is not possible to estimate the Fire Victim Claims for purposes of voting (Motion at 17); and (ii) Second, they purport to protect holders of Fire Victim Claims from being disenfranchised by the votes of governmental entities with

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Solicitation Procedures Motion or the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated January 31, 2020 (Docket No. 5590) (the "**Plan**").

[2] As required by the Scheduling Order, AT&T is limiting its Objection to "short, concise bullet points" (presented with *topic summaries in bold* italic) but reserves all of its rights to advance a full objection to the Solicitation Procedures Motion in accordance with due process.

Case: 19-30088    Doc# 6172    Filed: 03/06/20    Entered: 03/06/20 15:53:08    Page 2 of 13

disproportionately large claims (*Id*).  The Debtors offer no other no justifications for the relief requested.

- ***AT&T Has Presented a $238 Million Fire Victim Claim, of which $89 Million Reflects Liquidated Amounts of AT&T's Costs in Responding to the Fires.*** AT&T is a Fire Claimant and filed Proof of Claim Number 86127,[3] which asserts a claim against the Debtors in the amount of $238,033,123.96 (the "**AT&T Fire Victim Claim**"), of which $89,136,240.07 is related to amounts and costs already incurred and individually itemized in AT&T's Fire Victim Claim (the "**AT&T Liquidated Claim**"). The AT&T Fire Victim Claim includes interruption to AT&T's operations, and costs  incurred in repairing and replacing AT&T facilities damaged by the Fires.

- ***AT&T's Claim Is Deemed Allowed for Voting as No Party Has Objected to It.***  No objection has been filed to the AT&T Fire Victim Claim.[4]  As a result, the AT&T Fire Victim Claim is not disputed and deemed an allowed claim under section 502(a) and section 1126(a) of the Bankruptcy Code for voting purposes.

**B. Section 502(c) of the Bankruptcy Code Does Not Permit Estimation of Liquidated Claims.**

- ***AT&T's Liquidated Claim May Not Be Estimated.***  Section 502(c) of the Bankruptcy Code permits the bankruptcy court to, among other things, estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case [.]" 11 U.S.C. § 502(c)(1).  By its terms, section 502(c) is limited to contingent and unliquidated claims, and does not allow for estimation of liquidated claims.  *In re Audre, Inc.*, 216 B.R. 19, 30 (B.A.P. 9th Cir. 1997) ("Resorting to § 502(c) is only appropriate when the claim is either contingent or unliquidated.").  As a non-contingent,

---

[3] AT&T presented the claim on its own behalf and those of its corporate affiliates identified in the claim.  AT&T similarly presents this Limited Objection.

[4] Pursuant to the Scheduling Order, the Debtors and all parties in interest were required to object to any and all claims for purposes of disenfranchising a claimant's vote under section 502 and section 1126 of the Bankruptcy Code by February 21, 2020.  *See* Scheduling Order at 3.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

Case: 19-30088    Doc# 6172    Filed: 03/06/20    Entered: 03/06/20 15:53:08    Page 3 of 13

liquidated claim, section 502(c) does not permit estimation of the AT&T Liquidated Claim.

- ***The Debtors' Observation that Most Fire Victim Claims Are Not Liquidated Does Not Apply to AT&T.*** The Debtors assert that "[s]ubstantially all of the approximately 82,000 Fire Victim Claims are unliquidated." Motion at 17. This is not true with respect to the AT&T Liquidated Claim which is in fact liquidated in the amount of $89,136,240.07 and is not contingent.

- ***What is a Liquidated Claim***: The Ninth Circuit is clear on what constitutes a "liquidated" claim: "whether a debt is liquidated turns on whether it is subject to ready determination and precision in computation of the amount due." *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1987) (citations omitted) (section 109(e) case). Moreover, a debt is liquidated even if liability has not been adjudicated or it is disputed. *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1075 (9th Cir. 1999) (section 109(e) case). The "ready determination" inquiry turns on whether the claim amount is easily calculable or whether an extensive hearing is required to determine the claim amount. *Slack*, 187 F.3d at 1074 (citing *F.D.I.C. v. Wenberg (In re Wenberg)*, 94 B.R. 631, 633 (B.A.P. 9th Cir. 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990)). Courts in the Ninth Circuit have used the same definition from section 109(e) decisions in interpreting the term unliquidated in section 502(c). *In re Audre, Inc.*, 202 B.R. 490, 492 (Bankr. S.D. Cal. 1996); *In re Kennan*, 201 B.R. 263, 265 (Bankr. S.D. Cal. 1996). The Court has adopted this definition: "The Ninth Circuit has told us what [liquidated] means. It's a sum readily ascertainable as a sum certain." *See Hr'g. Transcript*, August 27, 2019 Status Conference, at 118:7-8.

- ***What is a Contingent Claim***: "[A] contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *Fostvedt,* 823 F.2d at 306 (citations omitted). "[A] debt is noncontingent if all events giving rise to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

liability occurred prior to the filing of the bankruptcy petition." *Nicholes v. Johnny Appleseed (In re Nicholes),* 184 B.R. 82, 88 (B.A.P. 9th Cir. 1995) (citing *Fostvedt*). The Court has already noted that the Fire Victim Claims are not contingent, because the contingency, the fires, have already occurred. *See Hr'g. Transcript*, August 27, 2019 Status Conference, at 126:20-21 ("And so I believe when a fire occurs, that's the contingency.").

- ***AT&T's Liquidated Fire Victim Claim Is Neither Contingent Nor Unliquidated.*** The AT&T Fire Victim Claim is not contingent under the Code and the case law, and as to the portion constituting the AT&T Liquidated Claim, it is liquidated, because it is subject to "ready determination," and because it is easily calculable as evidenced by the supporting documentation attached to and referenced in the proof of claim.[5] *Slack*, 187 F.3d at 1074.

- ***AT&T's Fire Victim Claim Is Not Even Disputed.*** In addition, although not relevant to the application of section 502(c), the AT&T Fire Victim Claim including the AT&T Liquidated Claim is not disputed. As noted, no objection has been made against the AT&T Fire Victim Claim and accordingly it is deemed allowed for voting purposes. 11 U.S.C. §§ 502(a), 1126(a). Moreover, non-contingent, liquidated claims are not eligible for estimation under section 502(c), regardless of whether the claim may be disputed. This view is consistent with the plain language of the Bankruptcy Code and the Ninth Circuit's definition of "liquidated" in *Slack*. *Slack*, 187 F.3d at 1075.

- ***The Plan As Amended Does Not Dispute Fire Victim Claims, Including AT&T's.*** The Debtors adopt a definition of "liquidated" that is different from the Ninth Circuit in connection with the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and*

---

[5] AT&T explicitly represented in its Fire Victim Claim that, upon request by the Debtors, AT&T shall provide access to supporting documents and information in connection with its Fire Victim Claim, including files providing the computation utilized in discerning all dollar amounts incurred and asserted.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

*502(c) for the Establishment of Wildfire Claim Estimation Procedures* [Docket No. 3091] pursuant to which the Debtors sought to estimate their aggregate liability for the Fire Victim Claims.  In connection with that motion, the Debtors argued the Ninth Circuit's interpretation of "liquidation" turned on whether the claim was disputed and, as such, the Fire Victim Claims were not liquidated because the Debtors disputed their liability on those claims.  *See* Docket 5004.  The Debtors' position is contradicted by the Ninth Circuit's decision in *In re Slack*, and the proper understanding of what constitutes a liquidated claim.  *Slack*, 187 F.3d at 1075 ("We hold that a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that that the question of liability has not been finally decided.").  In any event, the Debtors' argument is now mooted because the Debtors no longer dispute their liability for the Fire Victim Claims pursuant to the Plan, which provides for the establishment of the Fire Victim Trust funded with $13.5 billion for the benefit of and distribution to the Fire Victim Claims.  Accordingly, there is no question that the AT&T Liquidated Claim is not disputed and is liquidated.

- ***Because the AT&T Liquidated Claim is not unliquidated or contingent (nor for that matter is it disputed), there is no legal basis to estimate that claim under section 502(c) or otherwise.***

**C.  The Proposed Estimation Procedure Would Disenfranchise AT&T and Violate Section 1126 of the Bankruptcy Code.**

- ***The Debtors' Attempt to Value All Fire Victim Claims at the Same Amount Would Require the Code to be Rewritten.***  Section 1126(c) of the Bankruptcy Code sets forth the requirements for acceptance of a chapter 11 plan by a class of claims and entails both a numerosity requirement as well as a claim amount requirement.  A class accepts a chapter 11 plan only if (a) ***at least two thirds in amount*** and (b) more than one half in number of the creditors vote to accept the Plan.  *See* 11 U.S.C. § 1126(c).  The Debtors' proposed voting procedures of $1 per vote rewrites the Bankruptcy Code by removing the one-half in amount requirement, reducing

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

Case: 19-30088    Doc# 6172    Filed: 03/06/20    Entered: 03/06/20 15:53:08    Page 6 of
13

Section 1126(c) to only a two-thirds of claim holders test.[6]

- ***The Debtors' Improper Purpose Is to Wipe Out the Votes of the Most Significant Fire Creditors.*** This result is not incidental to the Debtors' proposed voting procedures. The Debtors' stated motive underlying the voting estimation procedures is to eliminate the claim amount voting requirement and specifically disenfranchise larger creditors. *See* Plan Solicitation Motion at 17 ("Allowing each Fire Victim Claim at $1.00 . . . will avoid the holders of Fire Victim Claims being potentially disenfranchised by the votes of a few governmental entities that, by reason of the asserted amounts of their claims, could have a disproportionate effect on the class vote and, indeed, could control the class vote."); *See Hr'g. Transcript*, February 4, 2020 at 100:9-100:20 (Debtors' counsel stated: "Dollar amount is an issue -- . . . because . . . the claims of the government -- the governmental entities, by dollar amount will dwarf -- . . . all of the other claims -- . . . and give them an inappropriate sway in how that class votes.").

- ***Disenfranchising the Most Significant Creditors by Amount Is Impermissible.*** To be sure, the Bankruptcy Code requires that plan acceptance account for claim amounts even when one or a few creditors might end up controlling the vote by virtue of their claim size. That result is neither "disproportionate" or "inappropriate" (as the Debtors suggest) -- it is exactly what Congress prescribed and contemplated. The fact that large claim holders might have meaningful impact, or potentially controlling impact, over the class vote is exactly what Congress required when it adopted section 1126(c) with a voting requirement based on numerosity and claim amount.[7] This is the approach the Court must follow. Otherwise, the Plan will

---

[6] This is precisely what section 1126(d) provides for in respect of equity interests -- voting acceptance by a class of equity interests is determined solely by reference to numerosity.

[7] Nor is that result unusual or improper. Many bankruptcy cases involve situations where a single creditor or a few creditors have a blocking position on the class vote. The consequence is that the debtor negotiates with those creditors and undertakes efforts to obtain those creditors' support of the proposed plan.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

Case: 19-30088    Doc# 6172    Filed: 03/06/20    Entered: 03/06/20 15:53:08    Page 7 of
13

violate section 1126(c) (and not be confirmable) and would disenfranchise AT&T.[8]

- ***Courts Have Employed Close Scrutiny to Ferret Out Such Impermissible Schemes.*** Consistent with the well-settled policy against any manner of voting manipulation, the Debtors' proposed temporary-allowance procedure should also be closely scrutinized by the Court. *See, e.g., In re Art & Architecture Books of the 21st Century*, No. 2:13-BK-14135-RK, 2016 WL 1118743, at *9 (Bankr. C.D. Cal. Mar. 18, 2016) ("a plan proponent is allowed considerable discretion to classify claims and interests according to the facts and circumstances of the case *so long as the classification scheme does not* violate basic priority rights or *manipulate voting*") (emphasis added); *see also Barakat v. The Life Ins. Co. of Virginia (In re Barakat)*, 99 F.3d 1520, 1525 (9th Cir. 1996) (collecting cases). Here, the Debtors have told the Court that their intention is to make sure that large creditors cannot control the Fire Victim Claim class vote -- that is plainly voting manipulation that should not be countenanced.

- ***The Debtors' Proposed Voting Procedures Threaten Unobjected-To Fire Claims With Valuation at $1 While Objected-To Claimants May Obtain Voting Rights in the Millions.*** The Solicitation Procedures Motion contemplates an exception to the $1 per claim voting procedure. If the Debtors object to a claim and a creditor files a motion under Bankruptcy Rule 3018 to estimate its claim for voting purposes, the Court will then estimate that claim for voting. As a result, if a $1 billion claimant prevails in the estimation of amount (even while the claim itself remains subject to potential complete disallowance at a later date), that estimation will govern that creditor's voting rights. As a result, creditors like AT&T, whose claims were not

---

[8] The legislative history of section 1126 of the Bankruptcy Code is clear and unambiguous with respect to the requirements of subsection (c). Specifically, the Senate Committee comment states that "[s]ubsection (c) specifies the required amount and number of acceptances for a class of creditors. A class of creditors has accepted a plan if at least two-thirds in amount and more than one-half in number of the allowed claims of the class that are voted are cast in favor of the plan." S. Rep. 95-989, 2d Sess. 123 (1978).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

objected to as of February 21, 2020 (as required under the Scheduling Order), would have their voting rights limited to $1—while those creditors with disputed claims could end up with voting rights in the hundreds of millions. This perverse outcome warrants denial of the proposed voting procedures.

**D. The Cases Cited by the Debtors Do Not Support the Debtors' Proposed Voting Procedures.**

- ***First, both cases are distinguishable.*** *See Kane v. Johns–Manville Corp (In re Johns–Manville Corp.)*, 843 F.2d 636, 646 (2d Cir. 1988) ("*Manville*") and *Menard–Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989) ("*Robins*").

  o In *Manville*, the Second Circuit analyzed the bankruptcy court's adoption of a procedure that estimated each of 50,725 asbestos claims at $1 for voting. *Manville*, 843 F.2d at 641. While there was one sole objector to the procedure, the *Manville* court found that the relief sought by the objecting party would not ultimately change the results of plan voting. *See id.* at 647 ("None of the procedures that [the objecting party] contends were required would have changed the outcome of the vote."). Accordingly, the *Manville* court adopted the voting procedures because they would, at worst, produce a "**harmless error**" which would not materially alter the outcome of a class vote. *See id.* at 648 ("Where Code violations are so insubstantial that they constitute harmless error, they do not warrant overturning an entire plan of reorganization under subsection 1129(a)(1).") (emphasis added).

  o Similarly, *Robins* involved the Fourth Circuit's analysis of a bankruptcy court's adoption of procedures to estimate the claims of 195,000 personal injury tort claimants at $1.00 each for voting purposes. *See* 880 F.2d at 654. The *Robins* court found the procedure to be permissible, but only after determining that its adoption would not have rendered a different result and

CROWELL & MORING LLP
ATTORNEYS AT LAW

| | |
|---|---|
| 1 | subsequently holding that "the $1.00 per vote method can be used when |
| 2 | support is overwhelming and a different voting method will not change the |
| 3 | result." *Id.* |
| 4 | o In both cases, the application and permissibility of the $1.00 voting approach |
| 5 | was based on the determination that its adoption would not change the |
| 6 | outcome of a class vote for confirmation of a chapter 11 plan. |
| 7 | o The Debtors also cite *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 428 |
| 8 | (Bankr. D. Md. 2007) in support of their relief. That case adopted a wait and |
| 9 | see approach to see if there would be harmless error like in *Johns-Manville* |
| 10 | and *Robins*. The court first noted that none of the claimants in the affected |
| 11 | voting class opposed the $1 per vote procedure. It then observed that the |
| 12 | ballots would have information that reflected each holder's disease category |
| 13 | that would facilitate a calculation of the claim amount. With that |
| 14 | information, the court could later assess if the $1/claim methodology would |
| 15 | have any effect on the voting result or would be harmless error. *See id.* at |
| 16 | 428 (denying objection to voting procedures as premature, finding that "it is |
| 17 | mere speculation at this juncture that the allowance of these claims in a |
| 18 | nominal amount for voting purposes will have any effect whatsoever"). |
| 19 | • ***Second, the other cases cited by the Debtors in support of the permissibility and*** |
| 20 | ***application of the Temporary Voting Claim Procedures do not utilize a $1.00 per*** |
| 21 | ***vote approach***. |
| 22 | o In *In re Quigley Co.*, 346 B.R. 647 (Bankr. S.D.N.Y. 2006), the court |
| 23 | rejected use of a $1.00 per vote procedure in the absence of harmless error. |
| 24 | *See id.* at 654. Instead, the *Quigley* court found that the appropriate |
| 25 | "alternative is to weigh each vote based on the nature and impairment of |
| 26 | each claimant's injury. This method more accurately aligns the voting |
| 27 | strength with the ultimate claim value . . . and prevents the holders of |
| 28 | relatively small claims from disenfranchising the more severely impaired |

who hold larger claims." *Id.* (internal citations omitted).  The *Quigley* court
then adopted a voting procedure "that weighs the votes according to the
values scheduled in the Plan," which it found "[fulfilled] the expectations of
the claimants since their votes are presumably cast, in part, based upon the
amount the creditors expect to receive from the Trust." *Id.* at 655.

- o *Pension Ben. Guar. Corp. v. Enron Corp.*, No. 04 CIV. 5499 (HB), 2004
  WL 2434928 (S.D.N.Y. Nov. 1, 2004) did not involve the issue of a $1.00
  per vote method and is totally inapposite.  There, the court decided that the
  PBGC's $321 million claim should only be permitted to vote in the lead
  Enron debtor's case as opposed to all 180 of Enron's subsidiaries, which
  would have resulted in the PBGC disproportionate voting power relative to
  its claim.  The issue of voting in multiple debtor cases is not implicated here.

- **The Court Need Not Make a Determination on the Debtor's Voting Scheme Now.**
  It would be premature for the Court in this matter to make a final determination
  about the Temporary Voting Claims Procedures.  The Court can instead defer that
  issue for Plan confirmation, when it can evaluate the voting results under the
  Debtors' proposed methodology ($1 per vote) and under other appropriate voting
  procedures (*e.g.*, liquidated claims are counted at their liquidated amount and
  unliquidated claims are counted at $1 per vote, or some other appropriately
  estimated amount).[9]  At that time, the ultimate voting results may show that this
  issue does not matter because either (i) the class of Fire Victim Claims has voted to

---

[9] The Debtors and the TCC appear to have been hard at work developing the Fire Victims
Claims Resolution Procedures, and the Trustee and Claims Administrator of the Fire Victim Trust
are tasked with developing "objective criteria" for the valuation of Fire Victim Claims for
distribution purposes.  *See Notice Of Filing Of Proposed Fire Victims Claims Resolution
Procedures Summary* [Docket No. 5873].  Those criteria could be efficiently used as a means of
estimating unliquidated claims for voting purposes.  Doing this would arguably result in a more
equitable outcome, as it would ensure that a claimant's voting right is proportionate to its
distribution right, and thereby ensure that a claimant's economic stake is fairly represented in voting
on the Plan.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

accept the Plan under either voting methodology or (ii) the class of Fire Victim Claims has voted to reject the Plan under either voting methodology. In those circumstances, the $1 per vote methodology would be harmless error. If, however, the voting results depend on which voting methodology is used (*e.g.*, the $1 per vote methodology results in an acceptance of the Plan but the alternative methodology results in a rejection), then the Court will need to make a final determination on the voting procedure at that time.

- ***Developments Between Now and Plan Confirmation May Moot the Issue.*** AT&T offers the above-discussed wait and see approach as an alternative path, because it recognizes the issue could ultimately be mooted depending on the outcome of the vote on the Plan. For the avoidance of doubt, AT&T reserves all rights to respond to any modified form of the voting procedures.

AT&T hereby reserves the right to amend, modify, and/or supplement this Objection. AT&T further reserves (a) the right to respond to or adopt any statements or legal theories raised or advanced by any party in connection with this Objection, the Disclosure Statement or the Solicitation Procedures Motion and (b) any other rights relating to this Objection, the Disclosure Statement, the Solicitation Procedures Motion, and any related matters.[10]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[10] Mindful of the Court's comments regarding objections to the Disclosure Statement, AT&T is deferring its objections to confirmation of the Plan. One principal objection is that the Plan's proposed attempt to wipe out AT&T's setoff rights could never be approved by the Court given the guarantee of section 553 that all setoff rights are preserved in bankruptcy. AT&T reserves all rights in regard to this and other Plan objections.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

| | |
|---|---|
| 1 | <u>**CONCLUSION**</u> |
| 2 | Based on the foregoing, AT&T respectfully requests that the Solicitation Procedures Motion |
| 3 | be denied with respect to the proposed voting procedures. |
| 4 | |
| 5 | Dated: March 6, 2020              Respectfully Submitted, |
| 6 | /s/ Benjamin Mintz |
| 7 | Counsel for AT&T Corp. |
| 8 | |
| 9 | <u>Counsel for AT&T Corp.</u> |
| 10 | ARNOLD & PORTER KAYE SCHOLER LLP |
| 11 | Brian J. Lohan (pro hac vice application forthcoming)<br>brian.lohan@arnoldporter.com |
| 12 | Benjamin Mintz (admitted pro hac vice)<br>benjamin.mintz@arnoldporter.com |
| 13 | 250 West 55th Street<br>New York, NY 10019-9710 |
| 14 | +1 212.836.8000<br>+1 212.836.8689 |
| 15 | CROWELL & MORING LLP |
| 16 | Thomas F. Koegel (CSB Bar No. 125852)<br>tkoegel@crowell.com |
| 17 | 3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111 |
| 18 | +1 415.986.2800<br>+1 415.986.2827 |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

CROWELL<br>& MORING LLP<br>ATTORNEYS AT LAW

LIMITED OBJECTION OF AT&T;
CASE NO. 19-30088-DM

Case: 19-30088   Doc# 6172   Filed: 03/06/20   Entered: 03/06/20 15:53:08   Page 13<br>of 13