1 | REBECCA J. WINTHROP (CA BAR NO. 116386)
ROBIN D. BALL (CA BAR NO. 159698)
2 | NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
3 | Los Angeles, California 90071
Telephone: (213) 892-9200
4 | Facsimile: (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com
5 |
6 | Attorneys for Creditors ADVENTIST HEALTH
SYSTEM/WEST and FEATHER RIVER
7 | HOSPITAL D/B/A ADVENTIST
HEALTH FEATHER RIVER

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN FRANCISCO DIVISION**

11 |

12 | In re:

Case No. 19 - 30088 (DM)

13 | PG&E CORPORATION,

Chapter 11
(Lead Case)
14 | - and -
(Jointly Administered)

15 | PACIFIC GAS AND ELECTRIC
COMPANY

**MOTION OF THE ADVENTIST
CLAIMANTS FOR ESTIMATION AND
TEMPORARY ALLOWANCE OF THE
ADVENTIST FIRE DAMAGE CLAIMS
SOLELY FOR VOTING PURPOSES
PURSUANT TO BANKRUPTCY RULE
3018**

16 | Debtors.

17 |

18 |

19 |

20 |

21 |

22 | ☐ Affects PG&E Corporation
23 | ☐ Affects Pacific Gas and Electric
Company
24 | ☒ Affects both Debtors

25 | *All papers shall be filed in the Lead Case,
No. 19-30088 (DM).*

**Hearing Date and Time:**
Date: April 7, 2020
Time: 10:00 a.m. (Pacific Time)
Place: Courtroom 17
450 Golden Gate Ave., 16th Floor
San Francisco, CA 94102

26 | **Objection Deadline: March 24, 2020**

27 |

28 |

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 1 of 69

Creditors Adventist Health System/West, a California religious non-profit corporation ("Adventist Health"), and Feather River Hospital, a California religious non-profit corporation, d/b/a Adventist Health Feather River ("AHFR" and, collectively with Adventist Health, the "Adventist Claimants"), hereby move this Court (the "Motion"), pursuant to Federal Rule of Bankruptcy Procedure 3018 and this Court's *Amended Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation* [ECF No. 5732] (the "Amended Scheduling Order"), for entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order"), estimating the amount of the Adventist Fire Damage Claims (as defined herein) in the amount of the actual damages asserted in such Proofs of Claim ($506,030,602), and temporarily allowing such claims solely for the purposes of voting on the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* [ECF No. 5590] (as amended, the "Plan"), for all the reasons set forth herein.

This Motion is based on the attached *Memorandum of Points and Authorities* and Exhibits, and the *Notice of Hearing on the Motion of Adventist for Estimation and Temporary Allowance of the Adventist Fire Damage Claims Solely for Voting Purposes Pursuant to Bankruptcy Rule 3018* and the *Declaration of Jeff Eller*, the President of the Northern Region of Adventist Health, both of which are filed concurrently herewith (the "Eller Decl."), the records and files in this case and all related proceedings, and such other and further matters as this Court may consider at or before any hearing on this Motion.

Dated: March 6, 2020

Respectfully submitted:

REBECCA J. WINTHROP
ROBIN D. BALL
NORTON ROSE FULBRIGHT US LLP

By: */s/ Rebecca J. Winthrop*
REBECCA J. WINTHROP
Attorneys for Creditors ADVENTIST HEALTH SYSTEM/WEST and FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.      INTRODUCTION ..................................................................................... 1

II.     JURISDICTION ........................................................................................ 1

III.    RELIEF REQUESTED .............................................................................. 2

IV.     BACKGROUND ........................................................................................ 2

V.      LEGAL BASIS FOR RELIEF REQUESTED ........................................... 5

VI.     THE TCC'S OBJECTIONS TO THE ADVENTIST FIRE DAMAGE CLAIMS ARE MISPLACED ............................................................................................ 9

VII.    RESERVATION OF RIGHTS .................................................................. 18

VIII.   NOTICE .................................................................................................... 18

IX.     NO PREVIOUS RELIEF REQUESTED .................................................. 18

X.      CONCLUSION .......................................................................................... 19

Document Prepared
on Recycled Paper

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 3 of 69

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ames Dept. Stores, Inc.*,
   470 B.R. 280 (S.D.N.Y. 2012)................................................................................14

*Armstrong v. Rushton (In re Armstrong)*,
   294 B.R. 344 (10th Cir. B.A.P. 2003), *aff'd*, 97 F. App'x 285 (10th Cir. 2004)...............7, 8, 9

*Barnes v. Indep. Auto Dealers of Cal.*,
   64 F.3d 1389 (9th Cir. 1995)................................................................................10

*In re Bay Plastics*,
   187 B.R. 315 (C.D. Cal. 1995)..............................................................................14

*Bayview Loan Serv., LLC v. Donnan (In re Donnan)*,
   No. BK 17-90564-RSB, 2019 WL 1922843 (B.A.P. 9th Cir. Apr. 29, 2019)........................17

*Bell Road Investment Co. v. Arabians (In re M. Long Arabians)*,
   103 B.R. 211 (9th Cir. B.A.P. 1989)........................................................................6

*Bittner v. Borne Chem. Co.*,
   691 F.2d 134 (3d Cir. 1982)..............................................................................7, 18

*In re Borsos*,
   544 B.R. 201 (E.D. Cal. 2016)..............................................................................12

*In re Brown*,
   570 B.R. 98 (W.D. Okla. 2017) ............................................................................12

*Butner v. U.S.*,
   440 U.S. 48, 99 S.Ct. 914 (1979)......................................................................12, 13

*Diamant v. Kasparian (In re S. California Plastics, Inc.)*,
   165 F.3d 1243 (9th Cir. 1999)..............................................................................12

*Fireman's Fund Ins. Co. v. Md. Cas. Co.*,
   21 Cal. App. 4th 1586 (1994)................................................................................9

*Fitness Holdings International, Inc. v. Hancock Park, et al.*,
   714 F.3d 1141 (9th Cir. 2013)..............................................................................11

*Frustuck v. City of Fairfax*,
   212 Cal. App. 2d 345 (1963)................................................................................14

*In re Gardinier, Inc.*,
   55 B.R. 601 (Bankr. M.D. Fla. 1985) ......................................................................6

*In re Goldstein*,
   114 B.R. 430 (Bankr. E.D. Pa. 1990)......................................................................6

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

iv

*Gypsum Carrier, Inc. v. Handlesman*,
307 F. 2d 525 (9th Cir. 1962).................................................................12

*In re Hamada*,
291 F.3d 645 (9th Cir. 2002)..............................................................9, 10

*Helfend v. S. Cal. Rapid Transit Dist.*,
2 Cal. 3d 1 (1970) ..............................................................................12

*Heninger v. Dunn*,
101 Cal. App. 3d 858 (1980).................................................................14

*In re Hydrox Chem. Co.*,
194 B.R. 617 (Bankr. N.D. Ill. 1996)........................................................7

*Krusi v. Bear, Stearns & Co.*,
144 Cal. App. 3d 664 (1983).................................................................11

*In re Leap Wireless Intern.*,
295 B.R. 135 (S.D. Cal. 2003)...............................................................14

*Lundell v. Anchor Const. Specialists, Inc.*,
223 F.3d 1035 (9th Cir. 2000)...............................................................17

*In re Nw. Timberline Enters., Inc.*,
348 B.R. 412 (Bankr. N.D. Tex. 2006) ....................................................18

*Orndorff v. Christiana Community Builders*,
217 Cal. App. 3d 683 (1990).................................................................14

*In re Pac. Gas & Elec. Co.*,
295 B.R. 635 (Bankr. N.D. Cal. 2003)......................................................7

*Pac. Gas & Elec. v. County of San Mateo*,
233 Cal. App. 2d 268 (1965).................................................................14

*In re Pac. Sunwear of California, Inc.*,
Case No. 16- 10882 (LSS), 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016)................6, 7, 8

*Pension Ben. Guar. Corp. v. Enron Corp.*,
No. 04 CIV. 5499 (HB), 2004 WL 2434928 (S.D.N.Y. Nov. 1, 2004) .................7, 8

*Plut v. Fireman's Fund Ins. Co.*,
85 Cal. App. 4th 98, 102 Cal. Rptr. 2d 36 (2000) .......................................9

*In re Pugh*,
157 B.R. 898 (9th Cir. B.A.P. 1993)........................................................17

*In re Quigley Co.*,
346 B.R. 647 (Bankr. S.D.N.Y. 2006) .......................................................7

*In re Roblin Indus., Inc.*,
78 F.3d 30 (2d Cir. 1996).....................................................................14

*Simon v. San Paolo U.S. Holding Co., Inc.*,
   35 Cal. 4th 1159 (2005) ..................................................................................9

*In re Stone Hedge Prop.*,
   191 B.R. 59 (Bankr. M.D. Pa. 1995)..............................................................7

*In re Sunnyland Farms, Inc.*,
   No. 14-10231-T11, 2015 WL 1598105 (Bankr. D.N.M. Apr. 8, 2015)..................6

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
   549 U.S. 443 (2007) ......................................................................................12

**Rules and Statutes**

11 U.S.C. § 502 ...................................................................................5, 7, 17

11 U.S.C. § 507 ...............................................................................................18

11 U.S.C. § 1126 ..................................................................................1, 5, 8

Fed. R. Bankr. P. 3001 ...............................................................................8, 17

Fed. R. Bankr. P. 3018 ......................................................................1, 2, 6, 7, 8

**Other Authorities**

9 COLLIER ON BANKRUPTCY ¶ 3018.01[5] (King ed., 15th ed. 2003)...............6

RESTATEMENT (SECOND) OF TORTS § 920A (1979) ....................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Debtors seek to engineer and gerrymander creditor voting by rewriting the plan voting thresholds in section 1126(c) of the Bankruptcy Code to disenfranchise large wildfire tort claimants in this case. Their solicitation procedures assign every wildfire tort creditor the same $1.00 to vote, regardless of the nature or asserted amounts of the claim. At the same time, the Official Committee of Tort Claimants ("TCC") filed objections to the claims of certain large creditors who have been active in seeking to protect their rights. Temporary allowance for voting purposes under Bankruptcy Rule 3018 is required and favored to avoid strategic claims objections and voting procedures: Creditors' voting power must be commensurate with their economic interests and claims objections, and plan solicitation procedures should not be used to disenfranchise potentially dissenting creditors.

The inequity of disallowing or arbitrarily estimating at $1.00 the Adventist Fire Damage Claims in these Chapter 11 Cases is palpable. The Adventist Claimants are not willing creditors of the Debtors. The Adventist Fire Damage Claims are not for an unperformed promise or a deal gone bad. The claims are for literal damage done and destruction of a hospital and related facilities that were vital to the Paradise community. The proposals now before the Court seek to deprive the Adventist Claimants of an important part of their legal rights: a bankruptcy vote that is commensurate with their losses. The Adventist Claimants should be allowed to vote their claims in the amounts asserted for actual damages, which reflect their economic interests in this case.

### II.    JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Adventist Claimants consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**III.  RELIEF REQUESTED**

By this Motion, the Adventist Claimants seek the entry of an order, substantially in the form of the Proposed Order, temporarily estimating and allowing the Adventist Fire Damage Claims in the amount of actual damages asserted in their Proofs of Claim ($506,030,602) solely for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a).

**IV.  BACKGROUND**

A.  *The Debtors' Bankruptcy Filing, Proposed Plan and the TCC's Objection to the Adventist Claimants' Proofs of Claim.*

On January 29, 2019 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. On February 15, 2019, the U.S. Trustee appointed the TCC.

On October 18, 2019, the Adventist Claimants timely filed proofs of claim (claim nos. 59459 and 59995) against each Debtor for actual damages (i.e. property damage, business losses, economic damages and others losses and expenses) in an amount not less than $506,030,602.00 (together, the "Adventist Fire Damage Claims"). The Adventist Fire Damage Claims are attached hereto as **Exhibit B**. The Adventist Fire Damage Claims also assert a claim in an equal amount as punitive damages, but this Motion does not seek allowance of that claim for voting purposes.

On January 31, 2020, the Debtors, together with the shareholder proponents as co-plan proponents (collectively, the "Plan Proponents"), filed the *Debtors and Shareholder Proponents' Chapter 11 Plan of Reorganization* [ECF No. 5590] (the "Proposed Plan"). Because these debtors are purportedly solvent, the Proposed Plan allows shareholders to retain their interests.

On February 19, 2020, the Debtors filed the *Debtors' Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [ECF No. 5700] and the *Debtors' Motion for Entry of an Order (I) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (II) Establishing and Approving Plan Solicitation and Voting Procedures; (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (IV) Granting Related Relief* [ECF No. 5835] (the "Solicitation Procedures Motion") seeking, among other things, the approval of solicitation and balloting procedures with respect to the Plan

(collectively, the "Solicitation Procedures"). The Solicitation Procedures provide, in relevant part, that

> (c) Any Fire Victim Claim (including, for the avoidance of doubt, any Fire Victim Claim asserted by any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code)), whether listed in the Schedules or for which a Proof of Claim has been timely filed, regardless of whether such Fire Victim Claim is marked as wholly or partially contingent or non-contingent, liquidated or unliquidated, or disputed or undisputed, is accorded one (1) vote and valued at $1.00 for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, unless such Claim is disputed in the manner set forth in subparagraph (g) below; . . . . [and]

> (g) [i]f an objection to . . . a Claim has been filed and served by any party in interest with appropriate standing by the deadline set forth in the Scheduling Order . . . such Claim shall be temporarily disallowed or estimated for voting purposes only with respect to the Plan . . . . Pursuant to the Scheduling Order, any party seeking to challenge the [ ] disallowance . . . or classification of a Claim or Interest for voting purposes must file a motion, pursuant to Bankruptcy Rule 3018(a), . . . by March 6, 2020, at 4:00 p.m."

(Solicitation Procs. Mot. at p. 16.) Pursuant to the Amended Scheduling Order, on February 28, 2020, the Adventist Claimants served on the Debtors via email their initial objections to the Disclosure Statement and the Solicitation Procedures Motion. The Adventist Claimants and the Debtors were unable to resolve those objections. As a result, the Adventist Claimants have filed, or will file, contemporaneously with this Motion a separate objection to the proposed Disclosure Statement, the Solicitation Procedures Motion, and the Solicitation Procedures, which objection is hereby incorporated by reference as if fully set forth herein.

B. *The Adventist Fire Damage Claims* [1]

As set forth in the Adventist Claimants' Proofs of Claim, Adventist Health is a faith-based, nonprofit integrated health delivery system headquartered in Roseville, California. AHFR is part of the Adventist Health hospital system. Before the Camp Fire, AHFR was a 100-bed acute care, community hospital with extensive operations in Butte County, but primarily in Paradise,

---

[1] Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed to such terms in the Adventist Fire Damage Claims.

Document Prepared
on Recycled Paper

California, including cancer, cardiology and a critical care unit, a diagnostic laboratory, an emergency department with connected MRI, CT and X-Ray services, an outpatient surgery center, home health and hospice services, hospital-based outpatient clinics, rural health clinics, and home oxygen, medical imaging, obstetrics, same-day and sleep medicine services. The hospital was staffed by nearly 200 physicians and advance practice professionals, approximately 1,200 employees and more than 400 volunteers. (Adventist Fire Damage Claim at §I.1.) It was the largest business and the largest employer in Paradise.

AHFR was devastated by the Camp Fire. The fire swept over large portions of its main hospital campus in Paradise (the "Main Hospital Campus"), destroying the lower level of the hospital and 15 other hospital buildings, as well as valuable medical equipment, furniture, medicines and inventory inside those buildings. It also seriously damaged the upper level of the hospital, its contents, and nine other buildings and their contents, the Feather River Health Center (located outside of the Main Hospital Campus and once one of the largest rural health clinics in Adventist Health's system) and pharmacy, medical office building space, and three leased locations (including valuable medical equipment, furniture, medicines and inventory at those locations). Vehicles, landscaping, service roads, parking lots and walkways throughout the Main Hospital Campus, and acres of woodland adjacent to the Main Hospital Campus, were destroyed or seriously damaged. The Main Hospital Campus has been incapable of operation since the Fire, and nearly all other services provided on the Main Hospital Campus remain closed. The Feather River Health Center has reopened, but offers only limited services. It cannot handle patients with emergencies or other acute care needs, and must send them out of town to other facilities. (*Id.* at §§II, III.)

The Debtors directly caused (through negligence, carelessness, recklessness, internal misconduct, or other unlawfulness) the Camp Fire and bear sole responsibility for *all* of the damage done to the Adventist Claimants and so many others.[2] (*Id.* at §II.4.)

The scale of the Adventist Claimants' damages is immense. The Adventist Claimants have incurred (and continue to incur) staggering financial losses from the extensive damage to their real

---

[2] The specific legal theories, claims, and statutes concerning the Debtors' liability for the Camp Fire and resulting damage caused are identified in the Adventist Fire Damage Claims. (*Id.* at §§II.4-7.)

Document Prepared
on Recycled Paper

and personal property, including the loss of business operations at the Main Hospital Campus and each of AHFR's other locations, which has had a direct impact on the entire Adventist Health system. As a result of the Debtors' conduct, the Adventist Claimants are entitled to recover actual damages (i.e. property damage, business losses, economic damages and others losses and expenses), in an amount not less than $506,030,602 (together, the "Adventist Fire Damage Claims" or the "Proofs of Claim"), plus punitive damages.

The specific damages and losses are set forth and outlined in detail in the Proofs of Claim. (*Id.* at §III and Addendum B.) To prepare the Adventist Fire Damage Claims, the Adventist Claimants hired counsel and experts to assess the amount and types of damages incurred. The Proofs of Claim include an itemized chart of 21 categories of damages incurred. Where appropriate, losses and expenses (such as Loss of Surplus/Profit) were broken down further by whether they had already been incurred or were projected future losses. Only a few damage categories were left "to be determined," and even they are identified. (*Id.* at Addendum B, incl. p. 9.)

C. *The TCC's Objection to the Adventist Claimants' Proofs of Claim*

On February 12, 2020, the TCC filed the *Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to Claims Filed by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River (Claim Nos. 59459 & 59996)* [ECF No. 5760] (the "TCC Objection") seeking to classify the Adventist Fire Damage Claims as subrogation claims or, in the alternative, disallowing the Adventist Fire Damage Claims as allegedly overstated. The TCC Objection is currently scheduled for an initial status conference on March 25, 2020.

The TCC and the Adventist Claimants have agreed to begin meetings in an attempt to seek a resolution and as a result would adjourn the initial hearing, tentatively to May 12, 2020.

V. **LEGAL BASIS FOR RELIEF REQUESTED**

The Adventist Claimants should be allowed to vote the full amount of their actual damage claims (i.e. $506,030,602.00) in these Chapter 11 Cases. Creditors are permitted to vote to accept or reject a chapter 11 plan if their claims are allowed under Bankruptcy Code section 502. *See* 11 U.S.C. § 1126(a). Section 502 provides that a timely filed proof of claim "is deemed allowed, unless a party in interest . . . objects." *See* 11 U.S.C. § 502(a). The TCC Objection is without merit

DOCUMENT PREPARED
ON RECYCLED PAPER

and fails to rebut the presumptive validity of the Adventist Fire Damage Claims. However, under the current timeline in these Chapter 11 Cases, there may not be enough time to fully litigate the TCC Objection. *See Bell Road Investment Co. v. Arabians (In re M. Long Arabians)*, 103 B.R. 211, 215 (9th Cir. B.A.P. 1989).

Bankruptcy Rule 3018 allows the Court to temporarily allow the Adventist Fire Damage Claims for the purpose of voting on the Plan:

> Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

Fed. R. Bankr. P. 3018(a). Temporary allowance is appropriate when, among other circumstances, (a) an objection to the claim has been filed and the objection was filed too late to be heard prior to the confirmation hearing, (b) addressing the objection's merits would delay administration of the case, or (c) the objection is frivolous or of questionable merit. *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 354 (10th Cir. B.A.P. 2003), *aff'd*, 97 F. App'x 285 (10th Cir. 2004) (citing 9 COLLIER ON BANKRUPTCY ¶ 3018.01[5] (King ed., 15th ed. 2003)). Temporarily allowance prevents possible abuse by plan proponents who might ensure acceptance of a plan by filing last-minute objections intended to disenfranchise potential dissenting creditors. *See id.*; *see also In re Sunnyland Farms, Inc.*, No. 14-10231-T11, 2015 WL 1598105, at *6 (Bankr. D.N.M. Apr. 8, 2015) ("A debtor should not be able to disenfranchise a creditor 'merely by its unilateral act of filing an objection to the creditor's proof of claim.'") (quoting *In re Goldstein*, 114 B.R. 430, 432 (Bankr. E.D. Pa. 1990)); *In re Gardinier, Inc.*, 55 B.R. 601, 604 (Bankr. M.D. Fla. 1985) ("one can easily visualize a situation where it would be grossly unfair and unjust to disenfranchise any claim or interest just because the debtor interposed an objection to the allowance of the claim or interest. This is true especially in situations when the objection appears to be frivolous and without basis, and, because of time restraints, the court is not in the position to consider the objection on its merits prior to the confirmation hearing.").

There is no established methodology for estimating a claim for voting purposes; rather, estimation of claims for voting purposes is committed to the court's discretion. *See In re Pac.*

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

*Sunwear of California, Inc.*, Case No. 16- 10882 (LSS), 2016 WL 4250681, at *3 (Bankr. D. Del. Aug. 8, 2016); *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (acknowledging that estimation decisions are best made by the bankruptcy judges "using whatever method is best suited to the particular contingencies at issue"); *In re Pac. Gas & Elec. Co.*, 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003) (same). A court, in exercising its discretion, is guided by fundamental bankruptcy policies and Rule 3018(a)'s clear purpose: to enfranchise creditors. *Id.* (citing *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 354 (10th Cir. B.A.P. 2003), *aff'd*, 97 F. App'x 285 (10th Cir. 2004)). In service of Rule 3018(a)'s purpose, other courts have suggested that the burden to demonstrate that a claim should be temporarily disallowed is on the debtor or other objecting party.[3]

Further, in temporary-allowance proceedings courts often examine the debtor's schedules, the proof of claim, and the claim objection to evaluate, among otherings, assess "the probabilities of success on the merits and discounted the claim appropriately." *Id.*; *see In re Hydrox Chem. Co.*, 194 B.R. 617, 622-23 (Bankr. N.D. Ill. 1996) (finding RICO claims were supported by preponderance of evidence as basis for temporary allowance under Rule 3018).

Still, in every case, a court must estimate the claim in accordance with the legal rules that will govern the final amount of the claim. *See, e.g., Pac. Gas & Elec. Co.*, 295 B.R. at 642 (finding that, in estimating claims under section 502(c), the court "is required to follow the substantive law governing the nature of the claim (such as following contract law when estimating a breach of contract claim.") (citing *Bittner*, 691 F.2d at 135-36 (holding a creditor is entitled to vote a claim in full if the claim is valid by a preponderance of the evidence)). "In the end, any estimation should ensure that ***the voting power is commensurate with the creditor's economic interests in the case***." *In re Quigley Co.*, 346 B.R. 647, 653 (Bankr. S.D.N.Y. 2006) (citing *Pension Ben. Guar. Corp. v.*

---

[3] Nothing in the Bankruptcy Code or the Bankruptcy Rules provides guidance on which party bears the burden of proof in respect of Rule 3018(a) estimation. *See Pac. Sunwear*, 2016 WL 4250681, at *5. Courts are split on whether the claimant or the objector should bear the burden. *Id.* (declining to decide the issue, but suggesting that the burden should be placed on the objector "because a ***Rule 3018 proceeding is meant to enfranchise claimants***.") (emphasis added); *see also Armstrong*, 294 B.R. at 354 (internal citations omitted), *aff'd*, 249 B.R. 287 (N.D. Ill. 2000) (finding that the burden of proof is on the claimant) *compare with In re Stone Hedge Prop.*, 191 B.R. 59, 63 (Bankr. M.D. Pa. 1995) (suggesting that the burden of proof may be on the objector although such a result would be inconsistent with other case law)). Moreover, courts that have placed the burden on the claimant have found that burden is forgiving in light of Bankruptcy Rule 3018's purpose. *See Armstrong*, 294 B.R. at 354 ("[W]e conclude that the burden of proof should be on the claimant to present sufficient evidence that it has a colorable claim capable of temporary evaluation.").

99430465.16

DOCUMENT PREPARED
ON RECYCLED PAPER

1    *Enron Corp.*, No. 04 CIV. 5499 (HB), 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004))

2    (emphasis added).

3        The Debtors' proposed Solicitation Procedures impermissibly compromise certain

4    creditors' voting rights under the Bankruptcy Code. First, the Solicitation Procedures arbitrarily

5    estimate each Fire Victim Claim at $1.00. Second, they expressly provide that creditors whose

6    claims are subject to a pending objection cannot vote to accept or reject the Plan. Taken together,

7    the Solicitation Procedures and related claim objections are designed to engineer a voting result.

8    In the proposed structure, the Debtors need only the support of the right **number** of creditors

9    regardless of such creditors' economic interests in these Chapter 11 Cases. This disenfranchises

10   large creditors and diminishes their statutory voting rights in derogation of the "two thirds in

11   amount" requirement in Bankruptcy Code section 1126(c). By valuing all Fire Victim Claim votes

12   at $1.00, the Debtors seek to change the threshold set for the acceptance and confirmation of the

13   Plan under the Bankruptcy Code.

14       Congress designed the Bankruptcy Code to provide ensure plans had broad support of both

15   a large number of creditors and a large claim base. *See* 11 U.S.C. § 1126(c) (providing that

16   acceptance of a plan by a class of creditors includes both the satisfaction of numerosity **and** amount

17   thresholds). The relief contemplated under Bankruptcy Rule 3018 is of particular importance in

18   these Chapter 11 Cases. Bankruptcy Rule 3018 is intended to enfranchise creditors who otherwise

19   have legitimate claims to vote on a plan but are targeted by strategic claim objections. *See Pac.*

20   *Sunwear*, 2016 WL 4250681, at *3 (citing *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344,

21   354 (10th Cir. B.A.P. 2003) ("The policy behind Bankruptcy Rule 3018 'is to prevent possible

22   abuse by plan proponents who might ensure acceptance of a plan by filing last minute objections

23   to the claims of dissenting creditors.'")). Here, the Adventist Claimants timely filed the Adventist

24   Fire Damage Claims, which constitutes *prima facie* evidence of the validity and amount of such

25   claims. *See* Fed. R. Bankr. P. 3001(f). Although the TCC has objected to the Adventist Fire

26   Damage Claims, as discussed below, those objections are meritless and do not rebut the

27   presumptive validity of the claims.

28

## VI. THE TCC'S OBJECTIONS TO THE ADVENTIST FIRE DAMAGE CLAIMS ARE MISPLACED

The TCC challenges the Adventist Fire Damage Claims on three purported grounds: (i) the Adventist Fire Damage Claims are "Subrogation Wildfire Claims" not Fire Victim Claims, (ii) the Adventist Fire Damage Claims must be reduced to reflect insurance recoveries, and (iii) based on Adventist's financial reporting, the Adventist Fire Damage Claims are overstated.[4] As set forth below, the TCC's legal arguments and factual assertions are baseless as summarized below. Should the TCC Objection move forward after all, then the Adventist Claimants will more fully rebut in detail each and every argument raised by the TCC at that time.

### A. *The Adventist Fire Damage Claims are for the Adventist Claimants' own losses as a fire victim, not for subrogation.*

The TCC argues that the Adventist Fire Damage Claims should be classified not as a Fire Victim Claim, but as a Subrogation Wildfire Claim because the Adventist Claimants "will recover its wildfire losses from its insurance coverage." (TCC Obj. at p. 6.) This argument is nonsense. The Adventist Claimants are victims of the Debtors' wrongdoing and seek to recover for their own injuries, not an insurer pressing a subrogation claim for amounts paid to its insured.

A subrogation claim arises when an insurer or other party actually pays a victim for its losses; the payor, not the victim who has been paid, has a claim for subrogation. *See*, *e.g.*, *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 21 Cal. App. 4th 1586, 1595-96 (1994) (subrogation "permits a party who has been required to satisfy a loss created by a third party's wrongful act to 'step into the shoes' of the loser and pursue recovery from the responsible wrongdoer"); *see also Plut v. Fireman's Fund Ins. Co.,* 85 Cal. App. 4th 98, 102 Cal. Rptr. 2d 36 (2000); *In re Hamada,*

---

[4] The TCC Objection also includes two other objections without argument or legal support: that the Adventist Claimants filed duplicative claims and that the Adventist Fire Damage Claims include only $500,000 in punitive damages. (TCC Obj. Ex. B at 18 of 39, p. 1.) The Adventist Fire Damage Claims are not duplicative. The Adventist Claimants filed two claims, one against each Debtor, which each Proof of Claim discloses and expressly states that the Proofs of Claim do not seek more than 100% of the claim amount in the aggregate. As for the punitive damage claims, the Adventist Fire Damage Claims seek only an amount equal to the Adventist Claimants' actual damages, or $506 million. This is not unusual. Every TCC member's proof of claim similarly requests punitive damages, and the amount being requested by the Adventist Claimants is fully supported by California law, which frequently allows far more. *See, e.g., Simon v. San Paolo U.S. Holding Co., Inc.,* 35 Cal. 4th 1159, 1189 (2005) (approving punitive damages ten times compensatory damages).

DOCUMENT PREPARED
ON RECYCLED PAPER

291 F.3d 645, 649 (9th Cir. 2002).[5]  The definition of "Wildfire Subrogation Claimant" in this Court's order bar date order [ECF No. 2806] (the "Bar Date Order")—which, despite the TCC's reliance on that order, it fails to mention (*see* TCC Obj. at 6-8)—defines such a Claimant as "any *insurance carrier* having made payments to their insureds for any damages arising out of or relating to a Fire Claim, or any other party who has acquired by assignment otherwise obtained an interest in a claim arising out of or related to such payments."  *See Bar Date Order* at p. 4, n.2 (emphasis added).  The Adventist Claimants are not insurers and have not paid any victim for losses caused by the Camp Fire; therefore, as a matter of law, the Adventist Claimants have not asserted and *cannot* assert a subrogation claim.[6]  In fact, to the best of the Adventist Claimants' knowledge, no subrogation claim has been asserted with respect to the Adventist Fire Damage Claims by anyone, not even Adventist Health's insurer, FM Global.  (Eller Decl. ¶5, Ex. 5.)  The Adventist Claimants' filings in these Chapter 11 Cases have always made it clear that the Adventist Claimant are *victims* of the Debtors' tortious conduct, seeking only to recover their own losses as a victim.

The TCC's attempt to transmute these victim claims into Wildfire Subrogation Claims has startling consequences for these Chapter 11 Cases.  The Adventist Claimants are likely just two of thousands (more likely, tens of thousands) of fire victims that have insurance coverage for at least some of the damage the Debtors' inflicted.  Nothing in the Proposed Plan or proposed Disclosure Statement, nor any of the on-the-record statements of the Debtors or TCC, would cause such victims to understand that some or all of their asserted Fire Claims are—at least in the eyes of the TCC—Wildfire Subrogation Claims.

Further, the TCC Objection's assertion that "Adventist Health admits it *will recover* its wildfire losses from its insurance company" is false.  (TCC Obj. at 6 lines 6-7 (emphasis added).)  No victim can control its insurer and whether they will pay their claims.  Indeed, in the Adventist

---

[5]  Moreover, under the "made whole" doctrine, an insurer may not enforce a right to subrogation until *after* the insured has been fully compensated for its injuries. *Barnes v. Indep. Auto Dealers of Cal.,* 64 F.3d 1389, 1394 (9th Cir. 1995).  The Adventist Claimants, of course, have not come close to being fully compensated for their injuries.

[6]  Similarly, the definition of "Subrogation Wild Fire Claim" in Debtors' proposed Plan limits such claims to Fire Claims "that *arise[] from subrogation* (whether such subrogation is contractual, equitable, or statutory), *assignment* (whether such assignment is contractual, equitable, or statutory), or otherwise in connection with payments made or to be made by the applicable insurer to insured tort victims . . . ." ([Doc. 5590] at § 1.195.) The Adventist Fire Damage Claims do not "arise from" any subrogation claim, any assignment, or in connection with an insurer's payment, but from its own injuries as a victim of the Camp Fire.

Document Prepared
on Recycled Paper

Claimants' 2018 Annual Report, the Adventist Claimants specifically state that they "can provide **no assurance** that [they] will ultimately collect" the amounts sought from their insurer. (Decl. of Danyll W. Foix in Supp. of TCC Obj. [ECF No. 5761] ("Foix Decl.") Ex. 3 at 30 (emphasis added).) The 2018 Annual Report also makes clear that the analysis rests on "preliminary damage assessments," and that the Adventist Claimants were then "unable to assess the ultimate repair cost" or "the amount of total insurance recoveries it may ultimately receive." (*Id.* at 31.) In fact, to date, the Adventist Claimants have recovered only a fraction of the amounts claimed (to date, just $60 million) and its insurer—FM Global—has not guaranteed any additional payments. (Eller Decl. ¶3.)[7]

B.     *California law prohibits the reduction of the Adventist Fire Damage Claims based on potential insurance recoveries.*

In addition to the TCC's subrogation argument, the TCC asserts that the Adventist Fire Damage Claims against the Debtors (and presumably, other insured fire victim claimants) may be reduced by the Adventist Claimants' recoveries from its own insurer, regardless of whether they are successful in actually recovering those amounts. (TCC Obj. at pp. 5, 8-9.) The TCC does not support its argument with any precedent or other legal authority.

Under California's "collateral source rule," a tort victim's claims against a tortfeasor (here, the Debtors) **cannot** be reduced based on recoveries from the victim's own insurance (much less a victim's potential recoveries). *See, e.g.,* RESTATEMENT (SECOND) OF TORTS § 920A (1979) ("[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."); *see also Krusi v. Bear, Stearns & Co.,* 144 Cal. App. 3d 664, 674 (1983) ("where the plaintiff obtains compensation from his *own* insurer or a source independent of ('collateral' to) the tortfeasor, plaintiff's tort recovery is *not* reduced") (emphasis in original). "Property interests are

---

[7]     It should also be noted that there are portions of AHFR's losses, such as its timber-related losses, that are not covered by its insurance policy. (Eller Decl. ¶4.). Additionally, the Adventist Claimants' insurance policy, like all insurance policies, has its own specific contractual terms, limitations, and conditions that do not precisely align with the measures of damages available against a tortfeasor such as the Debtors here. Finally, the TCC suggests (TCC Obj. at 6) that the Adventist Claimants have an obligation **to their insurer** to collect a distribution in the full amount of its wildfire losses. The Adventist Claimants dispute that they have any such obligation.

DOCUMENT PREPARED
ON RECYCLED PAPER

created and defined by state law [citation omitted], [u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" *Fitness Holdings International, Inc. v. Hancock Park, et al.,* 714 F.3d 1141, 1146 (9th Cir. 2013) (citing *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914 (1979)). The collateral source rule is an issue of state law. *Gypsum Carrier, Inc. v. Handlesman*, 307 F. 2d 525, 535 (9th Cir. 1962).

As the California Supreme Court has explained, "[t]he tortfeasor should not garner the benefits of his victim's providence. . . . If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance." *Helfend v. S. Cal. Rapid Transit Dist.*, 2 Cal. 3d 1, 16-18 (1970); *see also, e.g., In re Brown,* 570 B.R. 98, 111 (W.D. Okla. 2017) (collateral source rule barred debtor's attempt to avoid obligation to creditor based on payment by title insurer); *In re Borsos,* 544 B.R. 201, 211-212 (E.D. Cal. 2016) (applying collateral source rule in context of violation of Section 524(a) discharge injunction).

As discussed above, the Adventist Claimants are hardly the only insured wildfire victims. The Fire Victim Proof of Claim form approved by this Court nowhere provides for the reporting of insurance coverage or recoveries, or suggests that such amounts must be deducted. (*See* TCC Obj. Ex. B at pp. 2-7 of 39.) The TCC's view of creditors' potential insurance recoveries will undoubtedly greatly surprise many other victims in these cases, because it threatens to establish the law of these cases that ***all*** fire victim claims must be reduced today by both actual ***and*** potential insurance recoveries, regardless of whether they are actually received. The result is contrary to California law and, thus, not permitted under the Bankruptcy Code. *See, e.g., Diamant v. Kasparian (In re S. California Plastics, Inc.)*, 165 F.3d 1243, 1247 (9th Cir. 1999) ("In the allowance process, the validity and legality of claims are determined by applicable nonbankruptcy law"); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 450 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 18
of 69

substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law. . . . As we stated in *Butner*, property interests are created and defined by state law, and unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (internal citations and quotation marks omitted). It most certainly does not constitute payment in full of all fire victim claims as required in these solvent bankruptcy cases for shareholders to retain value, or otherwise satisfy the requirements of AB 1054.[8]

C.  *Adventist Health's financing reporting is in no way inconsistent with the damages asserted in the Adventist Fire Damage Claims.*

The TCC next attempts to raise a question regarding the amount of Adventist Fire Damage Claims by misstating the content of Adventist Health's public financial reporting. (*See* TCC Obj. at pp. 8-9.) The TCC is incorrect on each level.

**1.  *Depreciated Book Value is Not the Applicable Measure of Damages***

The TCC first attempts to question the Adventist Claimants' claims by comparing the ***depreciated book value*** of a ***portion*** of their assets with the asserted losses in the Adventist Fire Damage Claims. The TCC argues that the Adventist Fire Damage Claims are contradicted by an August 2018 filing in connection with a bond issuance that attached the Adventist Claimants' audited Consolidating Balance Sheets for the year ended December 31, 2017. The TCC observes that the Balance Sheets reflect a value of $92 million for Feather River "property assets" (citing Foix Decl. Ex. 5 at 26), and then argues that the Adventist Claimants "inexplicably appear to seek at least $30 million more than that amount in property repair and construction." (TCC Obj. at 8.)

The TCC Objection ignores the fact that the Adventist Claimants' audited financials were prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and therefore reflect an asset's ***book value***, not the applicable measure of damages here, replacement cost, or

<hr/>

8   To be clear, while the Adventist Claimants submit that, under the collateral source rule, its claim must be allowed in full, without reduction for insurance, it does not seek a double recovery here. They are amenable to allocation mechanisms that, while providing for *pro rata* distributions among allowed fire victim claims, also cap distributions when the full allowed claim less insurance *actually* recovered has been paid to the claimants.

DOCUMENT PREPARED
ON RECYCLED PAPER

failing that, fair market value. *See, e.g., Orndorff v. Christiana Community Builders*, 217 Cal. App. 3d 683 (1990); *Heninger v. Dunn*, 101 Cal. App. 3d 858 (1980); *Pac. Gas & Elec. v. County of San Mateo*, 233 Cal. App. 2d 268 (1965); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345 (1963); (*see also* Eller Decl. ¶6) (confirming that values recorded reflect book value, and are not "marked to market"). The book value of property assets reflected on a company's balance sheets reflects the initial construction or acquisition cost for an asset, depreciated over time in accordance with governing tax law. (Eller Decl. ¶6.) Here, the Adventist Claimants have operated the hospital at Feather River for decades and, consequently, various component asset values reflect years of depreciation from their original cost. *See In re Ames Dept. Stores, Inc.*, 470 B.R. 280, 283 (S.D.N.Y. 2012) ("book values are not ordinarily an accurate reflection of the market value of an asset") (quoting *In re Roblin Indus., Inc.*, 78 F.3d 30, 36 (2d Cir. 1996)); *In re Leap Wireless Intern.*, 295 B.R. 135, 138 (S.D. Cal. 2003) ("net book value clearly is not market value"); *In re Bay Plastics*, 187 B.R. 315, 330 (C.D. Cal. 1995) ("'fair valuation' differs from a balance sheet, where most assets apart from publicly traded stocks and bonds are carried at historic cost, rather than current market value").

### 2. The TCC Inaccurately Represents Reporting Regarding Profitability and Operating Losses

The TCC next asserts that claims for "past and future lost profits/operating expenses of $188 million" are inconsistent with a March 2019 MSRB filing the TCC inaccurately asserts "reported that Adventist Health earned $4 million in profits from the Feather River facility for *the ten months of 2018 prior to the Camp Fire.*" (TCC Obj. at 9 (citing Foix Decl. Ex. 3 at 37 (emphasis added.).) The TCC then calculates this would mean a loss of $24 million over five years in the "unlikely event" the "temporary closure of the facility were to extend for that period." *Id.* These statements are filled with inaccuracies.

First, the cited financials instead state that they are for the "Year Ended December 31, 2018." (Foix Decl. Ex. 3 at 37.) Consequently, the figure the TCC references includes two months *after the Camp Fire* during which AHFR could not operate and generate revenue, but nevertheless incurred normal employee and other expenses and substantial additional fire-related expenses. (*See*

Document Prepared on Recycled Paper

99430465.16

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 20 of 69

Eller Decl. ¶7.)  The TCC's misstatement that the period at issue is the "ten months prior to the Camp Fire" is an attempt to avoid recognizing the severe negative financial impact of the Camp Fire in the last months of 2018.

Second, the $4 million figure the TCC cites is net of $8 million interest and depreciation. A more apt reference point for calculating lost profits is EBIDA (earnings before interest, depreciation and amortization).[9]  AHFR's EBIDA for 2018, inclusive of the months after the fire, was $12 million.  (Foix Decl. Ex. 3 at 37.)

The Adventist Claimants' financials from the years before the Camp Fire (attached to the TCC's Objection) provide a clearer picture of AHFR's profitability.  For the year ended December 31, 2017, AHFR's income (net of interest and depreciation) was ***$11.551 million***; EBIDA was ***$20 million***.  (Foix Decl. Ex. 5 at 30.)  For the year ended December 31, 2016, AHFR's income (net of interest and depreciation) was $6.935 million; EBIDA was $16.5 million.  (*Id.,* Ex. 6 at 32.)  And for the year ended December 31, 2015, AHFR's income (net of interest and depreciation) was $5.3 million, while EBIDA was $15.1 million.  (*Id.,* Ex. 7 at 32.)  Thus, before the Camp Fire, AHFR's profitability had been steadily *increasing*, culminating in EBIDA of $20 million in 2017, the year before the fire.

Further, the TCC's reference to the $188 million figure as being directly comparable to AFHR's prior profitability is misleading.  Since the Camp Fire, AHFR has not only failed to earn a profit, it has suffered ongoing losses.  AHFR was operating "in the black" before the Camp Fire; now, it is losing money.  The $188 million figure in the Adventist Fire Damage Claims included only $86.6 million in lost profits ($16.2 million already incurred, plus $70.4 million in projected

---

9    The interest on bond debt and the depreciation reflected on AFHR's balance sheet are fixed costs that are part of overhead, and not properly deducted in a calculation of lost profits.  See 1 Robert L. Dunn, *Recovery of Damages for Lost Profits*, § 6.5 (6th ed. 2005) (hereafter, "Dunn") ("fixed overhead expenses need not be deducted from gross income to arrive at the net lost profits properly recoverable"); *Oakland Cal. Towel Co. v. Sivils*, 52 Cal. App. 2d 517, 520 (1942) (costs to be deducted to calculate lost profits "do not include remote costs, overhead or otherwise, but are confined to expenditures that would necessarily have been made in performance"); *see also* Dunn ("'generally accepted accounting principles permit depreciation to be classified as a fixed overhead cost, see C. Horngren, *Cost Accounting – A Managerial Emphasis* 2728 (4th ed. 1977) . . . . it is clear that depreciation on this equipment need not have been subtracted in Universal's lost profit calculation'") (*quoting Universal Power Systems, Inc. v. Godfather's Pizza Inc.*, 818 F.2d 667, 674 (8th Cir. 1987)).

future losses through reconstruction).[10]  The remaining amount reflects operating losses (including $39.9 million already incurred, and the remainder in projected future losses).  (TCC Obj. Ex. B at 19 of 39.)  The ongoing losses relate to, among other things, losses incurred in connection with the resumed operation of the Feather River Health Clinic, which AHFR has been able to operate on a limited basis to further its mission of providing medical care to the community.  (Eller Decl. ¶7.)  The TCC Objection then does not identify any discrepancy between the Adventist Claimants' financials and the Adventist Fire Damage Claims.

### 3.  *The TCC Inaccurately Represents the Adventist Claimants' Statements About a Partial Loss*

The TCC next contends that the Adventist Claimants' October 23, 2019 MSRB filing "estimates that the temporary closure of the Feather River facility has negatively impacted Adventist Health's *entire operations* by only $10 million through June 2019."  (TCC Obj. at 9 (citing Foix Decl. Ex. 4 at A-36) (emphasis added).)  The cited filing says nothing of the sort.  Instead, the referenced language states:

> AHFR's historical operating revenue has not been able to be replaced while the hospital remains temporarily closed, however, *the allocation of shared service costs have only been partially reduced*, which has negatively impacted operations to the System in the amount of approximately $10 million through June 30, 2019.

(*Id.* (emphasis added).)  Shared service costs are expenses shared by the various member hospitals, such as corporate accounting and legal support, and vendors (*e.g.*, medical records service providers) which contract with the System as a whole.  (Eller Decl. ¶9.)  AHFR bore a share of these system-wide costs, but, as a result of the Camp Fire is no longer able to fund its share.  The MSRB filing references the financial impact of this lost AHFR support for System-wide expenses.  (*Id.*)  The Adventist Fire Damage Claims contain two specific line items seeking recovery of current and projected future System-wide charges that cannot be avoided.  (TCC Obj. Ex. B at 19 of 39.)  These are only a *portion* of the losses identified in Adventist Fire Damage Claims, not the Adventist Claimants' total losses.  (Eller Decl. ¶ 9.)

---

[10]  The TCC asserts, without any basis, that it is "unlikely" that the temporary closure of the AHFR facilities will extend until December 2024.  The Adventist Claimants, however, submit that this estimate is optimistic.  (Eller Decl. ¶10.)

DOCUMENT PREPARED
ON RECYCLED PAPER

Simply put, the TCC's assertions concerning the Adventist Claimants' public financial reporting do not survive even a cursory examination.

Finally, the TCC entirely ignores the fact that, as set forth in the Adventist Claimants' *Objection to the Notice of Debtors' Designation of Claims Filed by the United States of America, the State of California and Adventist Health System as Unliquidated and Subject to Estimation Under Section 502(c) of the Bankruptcy Code* [ECF No. 4784], $142,888,153 of the Adventist Fire Damage Claims are for out-of-pocket expenses and other losses *already incurred* by the Adventist Claimants when they filed the Proofs of Claim. Thus, while experts may dispute the calculation of future losses, out-of-pocket expenses and other losses already incurred are what they are, and nothing in the TCC Objection contradicts that amount.

In the end, the TCC fails to advance a valid legal theory, much less any evidence, in support of its objections. *See, e.g., Bayview Loan Serv., LLC v. Donnan (In re Donnan)*, No. BK 17-90564-RSB, 2019 WL 1922843, at *3 (B.A.P. 9th Cir. Apr. 29, 2019) ("[Bankruptcy] Rule 3001(f) creates an evidentiary presumption of validity for a properly filed proof of claim. A mere formal claim objection, without evidence, cannot defeat a claim presumed to be valid under [Bankruptcy] Rule 3001(f)") (citing *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000)) (internal citations omitted).

Given the above, the Adventist Claimants submit that the TCC has failed to rebut the *prima facie* validity of the Adventist Fire Damage Claims, and the Bankruptcy Code and Bankruptcy Rules should now entitle Adventist to vote the full amount of its claims. *See, e.g., Donnan*, 2019 WL 1922843, at *3 ("[I]f the objecting party does not rebut the presumption [of validity], the claims litigation ends there; the claim should be allowed without the claimant bearing any further burden to demonstrate the validity of its claim."); *In re Pugh*, 157 B.R. 898, 901 (9th Cir. B.A.P. 1993); *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000).

The Adventist Claimants agree that efficiency is important in any plan process, but under all circumstances, equity **requires** that creditors who assert their legitimate rights should have those rights recognized in a bankruptcy case. That certain creditors hold claims large enough that might influence the outcome in a voting class is a simple fact of bankruptcy law and practice. It is also a

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

feature geared to achieving consensus. *See, e.g., In re Nw. Timberline Enters., Inc.*, 348 B.R. 412, 436 (Bankr. N.D. Tex. 2006). Nothing in the Bankruptcy Code or case law authorizes a debtor or other party to disregard the rules meant to ensure that creditors' legal and colorable rights determine their role, treatment, and voting amount in a chapter 11 case. *See, e.g.,* 11 U.S.C. § 507 (priorities of claims); *id.* at § 524(g) (plan voting threshold for channeling injunctions); *id.* at § 1122 (classification of claims); *id.* at §§ 1126(c)-(d) (plan voting thresholds). Based on the facts asserted in the Proofs of Claim, the Adventist Claimants submit that the Bankruptcy Code, California law, and equity require that the Adventist Fire Damage Claims be temporarily allowed for voting purposes in the asserted actual damage amount of $506,030,602. *See, e.g., Bittner*, 691 F.2d at 135 (holding a creditor is entitled to vote a claim in full if the claim is valid by a preponderance of the evidence). Accordingly, the Adventist Claimants respectfully request that Court grant the relief sought in this Motion to ensure that the Adventist Claimants' voting power reflects their true economic interest in these Chapter 11 Cases.[11]

## VII. RESERVATION OF RIGHTS

The Adventist Claimants hereby reserve the right to amend, modify, and/or supplement this Motion. The Adventist Claimants further reserve (a) the right to respond to any statements or legal theories raised or advanced by any party in connection with this Motion and (b) any other rights in respect of the Motion, the Claims, and any related matters.

## VIII. NOTICE

Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Northern District of California; (b) the Debtors; (c) the TCC; (d) any other "Standard Notice Parties" as defined in the Case Management Order; and (e) the "Rule 2002 Notice Parties" as defined in the Case Management Order. The Adventist Claimants respectfully submit that such notice is sufficient under the circumstances.

## IX. NO PREVIOUS RELIEF REQUESTED

No previous request for the relief sought herein has been made by the Adventist Claimants

---

[11] To be clear, the Adventist Claimants continue to evaluate and consider the Plan and the proposed treatment of the Adventist Fire Damage Claims thereunder and will continue to remain open to engaging with any interested parties in seeking to resolve issues and objections.

Document Prepared on Recycled Paper

1    to this or any other court.

2    **X.      CONCLUSION**

3           WHEREFORE, the Adventist Claimants respectfully request entry of an order, substantially

4    in the form attached hereto as **Exhibit A**, temporarily allowing the Adventist Fire Damage Claims

5    for voting purposes and granting such other and further relief as this Court deems just and proper.

6    Dated: March 6, 2020                         Respectfully submitted:

7                                                 REBECCA J. WINTHROP
                                                  ROBIN D. BALL
8                                                 NORTON ROSE FULBRIGHT US LLP

9                                                 By:  */s/ Rebecca J. Winthrop*
                                                      REBECCA J. WINTHROP
10                                                    Attorneys for Creditors ADVENTIST
                                                      HEALTH SYSTEM/WEST and
11                                                    FEATHER RIVER HOSPITAL D/B/A
                                                      ADVENTIST HEALTH FEATHER
12                                                    RIVER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Document Prepared
on Recycled Paper

99430465.16

1

2

3

4

5

**<u>Exhibit A</u>**

6

**Proposed Order**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

REBECCA J. WINTHROP (CA BAR NO. 116386)
ROBIN D. BALL (CA BAR NO. 159698)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone:    (213) 892-9200
Facsimile:    (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com

Attorneys for Creditors ADVENTIST HEALTH
SYSTEM/WEST and FEATHER RIVER
HOSPITAL D/B/A ADVENTIST
HEALTH FEATHER RIVER

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>     - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>                    Debtors. | Case No. 19 - 30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**ORDER GRANTING MOTION OF the ADVENTIST CLAIMANTS FOR ESTIMATION AND TEMPORARY ALLOWANCE OF THE ADVENTIST FIRE DAMAGE CLAIMS SOLELY FOR VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018** |
| ☐      Affects PG&E Corporation<br>☐      Affects Pacific Gas and Electric Company<br>☒      Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

Upon the Motion, dated March 6, 2020 (the "Motion"),[1] of Adventist Health System/West ("Adventist Health") and Feather River Hospital ("AHFR," and together with Adventist Health, the "Adventist Claimants"), pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order estimating the amount of the Adventist Fire Damage Claims and temporarily allowing such claims solely for the purposes of voting on the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* [ECF No. 5590] (as amended, the "Plan"); and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient, and it appearing that no other or further notice needs to be provided; and upon consideration of the Motion and the arguments contained therein, and the opposition thereto, if any; and any opposition to the Motion having been overruled, resolved or withdrawn; and it appearing that due notice of the Motion has been given, and that no other or further notice need be given; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Adventist Claimants shall be entitled to vote to accept or reject the Plan as a holder of a Fire Victim Claim in the amount of $506,030,602.  Any ballots cast on account of the Adventist Fire Damage Claims shall be counted as such.

3.      Nothing contained herein shall be construed as a determination of the amount of the Adventist Fire Damage Claims, or any portion thereof, for distribution purposes, and all of the parties' rights with respect to the Adventist Fire Damage Claims are fully preserved, including,

---

[1] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed such terms in the Motion.

99430465.16

DOCUMENT PREPARED
ON RECYCLED PAPER

1  without limitation, the rights of the Adventist Claimants and the TCC in respect of the TCC

2  Objection.

3        4.      Prime Clerk LLC, as solicitation agent, is authorized to take all steps necessary or

4  appropriate to carry out this Order.

5        5.      This Court shall retain jurisdiction to hear and determine all matters arising from or

6  related to the implementation, interpretation, or enforcement of this Order.

7

8                              ***END OF ORDER***

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

99430465.16

1

2

3

4

5

6 **<u>Exhibit B</u>**

7 **Proofs of Claim**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

| In re:<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors. | **Bankruptcy Case<br>No. 19-30088 (DM)**<br><br>**Chapter 11<br>(Lead Case)<br>(Jointly Administered)** |

# Proof of Claim (Fire Claim Related)

Read the instructions before filing this claim form. This form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire.

> Do not use this form for non-fire claims. Non-fire tort claimants should use Form 410.

Do NOT file a fraudulent claim. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Please type or print in the spaces below. Do NOT use red ink or pencil.

| Part 1: | Identify the Claim |

**1. Who is the current creditor?**

Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River

Name of the current creditor (the person or entity to be paid for this claim)

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Are you filing this claim on behalf of your family?**
A family is a group of two or more people related by birth, marriage, domestic partnership, or adoption and residing together. All such people are considered as members of one family.

☑ No
☐ Yes

If you checked "Yes", please provide the full name of each family member that you are filing on behalf of:

_____  _____
_____  _____
_____  _____
_____  _____

**4. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Name Robert L. Layton, Adventist Health System/West
Attorney Name (if applicable) _____
Attorney Bar Number (if applicable) _____
Street Address One Adventist Health Way
City Roseville
State California
Zip Code 95661
Phone Number 916-406-1577
Email Address laytonrl@ah.org

**Where should payments to the creditor be sent?** (if different)

Name _____
Attorney Name (if applicable) _____
Attorney Bar Number (if applicable) _____
Street Address _____
City _____
State _____
Zip Code _____
Phone Number _____
Email Address _____

**5. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on ___/___/___
MM / DD / YYYY

**6. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| | |
|---|---|
| **7. What fire is the basis of your claim?**<br><br>Check all that apply. | ☑ Camp Fire (2018)<br>☐ North Bay Fires (2017)<br>☐ Ghost Ship Fire (2016)<br>☐ Butte Fire (2015)<br>☐ Other (please provide date and brief description of fire): _____<br>_____ |
| **8. What are the loss location(s) where you and/or your family suffered harm? (e.g. home or business address, place of injury, place from which you were evacuated, if different.?** | Location(s): **Feather River Hospital, 5974 Pentz Road, Paradise, California 95969 and other locations in Paradise, California (see addendum).** |
| **9. How were you and/or your family harmed?**<br><br>Check all that apply | ☑ Property Damage (homes, structures, personal property, land, trees, landscaping, and all other property damage)<br>     ☑ Owner ☐ Renter ☐ Occupant ☑ Other (Please specify):   **See addendum.**<br>☐ Personal Injury<br>☐ Wrongful Death (if checked, please provide the name of the deceased) _____<br>☑ Business Loss/Interruption<br>☑ Lost wages and earning capacity<br>☐ Loss of community and essential services<br>☐ Agricultural loss<br>☑ Other (Please specify)   **See addendum.** |
| **10. What damages are you and/or your family claiming/seeking?**<br><br>Check all that apply | ☑ Economic damages (including replacement cost of damaged property, diminution in value, loss of use, lost inventory, lost profits, and other economic damage)<br>☐ Non-economic damages (including loss of society and support, loss of consortium, pain and suffering, emotional distress, annoyance and discomfort, and other non-economic damage)<br>☑ Punitive, exemplary, and statutory damages<br>☑ Attorney's fees and litigation costs<br>☑ Interest<br>☑ Any and all other damages recoverable under California law<br>☑ Other (Please specify)   **See addendum.** |
| **11. How much is the claim?** | ☑ $ **1,012,061,204; see addendum.**    (optional)<br>☐ Unknown / To be determined at a later date |

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 33 of 69

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Bill Wing*
Bill Wing (Oct 16, 20??)

Email: james.copeland@nortonrosefulbright.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Bill Wing | | |
| | First name | Middle name | Last name |
| Title | CFO and Assistant Secretary | | |
| Company | Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | One Adventist Health Way | | |
| | Number    Street | | |
| | Roseville | CA | 95661 |
| | City | State | ZIP Code |
| Contact phone | 916-406-0000 | Email | wingbd@ah.org |

Case: 19-30088     Doc# 6174     Filed: 03/06/20     Entered: 03/06/20 15:54:40     Page 34 of 69

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation. ☐ I do **not** have supporting documentation.
(attach below)

Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim (Fire Claim Related)

United States Bankruptcy Court

**You may have a claim against the Debtors for monetary loss, personal injury (including death), or other asserted damages arising out of or related to a fire. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the chapter 11 process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date this claim form is filed.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

- **You may but are not required to attach supporting documents to this form.**
  Supporting documents will be gathered, maintained, and provided at a later date as instructed by the Court. If you do attach documents, you should attach redacted documents as supporting documentation will be made publicly available and will not be kept confidential. *See* the definition of *redaction* of information below.

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **Question 3.** Members of a family may but are not required to file a proof of claim as a family but may, if they choose, submit individual claim forms for each family member that has a claim against the debtors.

- **Question 9.** If you suffered property damage, then provide the street address of each real property parcel where you suffered property damage. If you were personally evacuated as the result of a fire, then provide the address or intersection closest to where you encountered the fire and began evacuation. If you suffered property damage and were evacuated from a different location, include both. If you were a renter, provide the address of your residence.

- **Question 10.** This question requests general statements of underlying facts relating to harm and is not intended to be exhaustive or preclusive.

- **Question 11.** You are not required to include a claim amount with your proof of claim. Providing a claim amount at this time is optional.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form together with the original. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at
https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. In this instance, PG&E Corporation and Pacific Gas & Electric Company.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the creditor has a claim against the debtors on or before the date of the bankruptcy filing (in these cases, January 29, 2019). The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your Proof of Claim if you wish to receive a date-stamped copy.**

---

**Do not file these instructions with your form**

Proof of Claim Instructions (Fire-Related)  Page 2

In re:

**PACIFIC GAS AND ELECTRIC COMPANY,**

Debtor.

Bankruptcy Case
No. 19-30089 (DM)

Chapter 11

(Jointly Administered)

# Proof of Claim (Fire Claim Related)

Read the instructions before filing this claim form. This form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire.

> Do not use this form for non-fire claims. Non-fire tort claimants should use Form 410.

Do NOT file a fraudulent claim. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Please type or print in the spaces below. Do NOT use red ink or pencil.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Adventist Health System/West, a California religious non-profit corporation, and Feather River Hospital, a California religious non-profit corporation, d/b/a Adventist Health Feather River

Name of the current creditors (the persons or entities to be paid for this claim)

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Are you filing this claim on behalf of your family?**

☒ No

☐ Yes

A family is a group of two or more people related by birth, marriage, domestic partnership, or adoption and residing together. All such people are considered as members of one family.

If you checked "Yes", please provide the full name of each family member that you are filing on behalf of:

_____    _____
_____    _____
_____    _____
_____    _____

**4. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Adventist Health System/West
Robert L. Layton
Associate General Counsel
Assistant Vice President
ONE Adventist Health Way
Roseville, California 95661
Tel: 916-406-1577
Email: laytonrl@ah.org

Where should payments to the creditor be sent? (if different)
Name _____
Attorney Name (if applicable) _____
Attorney Bar Number (if applicable) _____
Street Address _____
City _____
State _____
Zip Code _____
Phone Number _____
Email Address _____

**5. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**6. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

98777100 I

Proof of Claim (Fire Related)

Page 1

| Part 2: | Give Information About the Claim as of the Date this Claim Form is Filed |
|---|---|

**7. What fire is the basis of your claim?**

Check all that apply.

- ☒ Camp Fire (2018)
- ☐ North Bay Fires (2017)
- ☐ Ghost Ship Fire (2016)
- ☐ Butte Fire (2015)
- ☐ Other (please provide date and brief description of fire): _____

**8. What are the loss location(s) where you and/or your family suffered harm? (e.g. home or business address, place of injury, place from which you were evacuated, if different?**

Location(s): Feather River Hospital, 5974 Pentz Road, Paradise, California 95969 and other locations in Paradise, California (see addendum).

**9. How were you and/or your family harmed?**

Check all that apply

- ☒ Property Damage (homes, structures, personal property, land, trees, landscaping, and all other property damage)
  - ☒ Owner ☐ Renter ☐ Occupant ☒ Other (Please specify): See addendum.
- ☐ Personal Injury
- ☐ Wrongful Death (if checked, please provide the name of the deceased)
- ☒ Business Loss/Interruption
- ☒ Lost wages and earning capacity
- ☐ Loss of community and essential services
- ☐ Agricultural loss
- ☒ Other (Please specify): See addendum.

**10. What damages are you and/or your family claiming/seeking?**

Check all that apply

- ☒ Economic damages (including replacement cost of damaged property, diminution in value, loss of use, lost inventory, lost profits, and other economic damage)
- ☐ Non-economic damages (including loss of society and support, loss of consortium, pain and suffering, emotional distress, annoyance and discomfort, and other non-economic damage)
- ☒ Punitive, exemplary, and statutory damages
- ☒ Attorney's fees and litigation costs
- ☒ Interest
- ☒ Any and all other damages recoverable under California law
- ☒ Other (Please specify): See addendum.

**11. How much is the claim?**

- ☒ $1,012,061,204; see addendum. (optional)
- ☐ Unknown / To be determined at a later date

98777100 1

Proof of Claim (Fire Related)

Page 2

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 39 of 69

**Part 3**     Sign Below

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b). | *Check the appropriate box:*<br><br>☐  I am the creditor.<br><br>☒  I am the creditor's attorney or authorized agent. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date   October 17, 2019 |

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Adventist Health System/West

By: *Bill Wing*
Title: CFO

Address:  ONE Adventist Health Way, Roseville, CA 95661
Tel:       (916) 406-0000
Email:   WingBD@ah.org


Feather River Hospital d/b/a Adventist Health Feather River

By: *Bill Wing*
Title: assistant secretary
Address:  5125 Skyway, Paradise, CA 95969
Tel:       (916) 406-0000
Email:   WingBD@ah.org

<u>Addendum "A" to Proof of Claim of Adventist Health System/West and Feather River Hospital,</u>
<u>d/b/a Adventist Health Feather River</u>

Adventist Health System/West ("Adventist Health"), a California religious nonprofit corporation, and Feather River Hospital, a California religious nonprofit corporation, d/b/a Adventist Health Feather River ("AHFR"), hereby submit this proof of claim, including this Addendum "A" to Proof of Claim and Addendum "B" attached hereto (together, the "Proof of Claim").

The claims of Adventist Health and AHFR, asserted jointly and severally by Adventist Health and AHFR (together, the "Claimants") against the estates of Debtor Pacific Gas and Electric Company and PG&E Corporation (together, the "Debtors") arise as a result of the following.

## I.  THE CLAIMANTS

1.  Adventist Health is a faith-based, nonprofit integrated health delivery system headquartered in Roseville, California.  It seeks to empower healthy communities and enhance the quality of life for those it services by improving access to comprehensive, quality health care services across multiple communities in California, Hawaii and Oregon.

2.  AHFR is part of the Adventist Health hospital system.  Prior to the Camp Fire, AHFR was a 100-bed acute care, community hospital with extensive operations in Butte County, but primarily in Paradise, California, including cancer, cardiology and a critical care unit, a diagnostic laboratory, an emergency department with connected MRI, CT and X-Ray services, an outpatient surgery center, home health and hospice services, hospital-based outpatient clinics, rural health clinics, and home oxygen, medical imaging, obstetrics, same-day and sleep medicine services.  The hospital was staffed by nearly 200 physicians and advance practice professionals, approximately 1,200 employees and more than 400 volunteers.

## II.  THE DEBTORS' LIABILITY TO THE CLAIMANTS

1.  Prior to the filing of the Debtors' chapter 11 cases on January 29, 2019 (the "Petition Date"), and during the morning of November 8, 2019, a fire began near the community of Pulga in Butte County, California.  According to the California Department of Forestry and Fire Protection ("Cal Fire"), the fire was caused by electrical transmission lines owned and operated by the Debtors located in the Pulga area.  The fire rapidly burned into Pulga to the east and west into Concow, Paradise, Magalia and to the outskirts of Chico.  Additionally, according to Cal Fire, a second fire began near the intersection of Concow Road and Rim Road, the cause of which was vegetation into electrical distribution lines, again owned and operated by the Debtors.  This second fire was consumed by the initial fire near Pulga, and both such fires shall be referred to herein as the "Camp Fire."

2.  The Camp Fire burned thousands of acres of land and devastated the Town of Paradise and nearby communities.  It also devastated the main campus of Feather River Hospital, located at 5974 Pentz Road in Paradise (the "Main Hospital Campus").  Approximately 30 of the approximately 50 acres making up the developed portion of the Main Hospital Campus, plus another approximately 68 acres of AHFR's adjacent woodlands, were burned.  The Camp Fire swept over large portions of the Main Hospital Campus, essentially destroying the Lower Level

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 41
of 69

of the hospital and all of the central utility plant, including the cooling tower yard and switchgear yard, and seriously damaging the Upper Level of the hospital. Multiple related hospital buildings, located closer to the woodlands, were also completely destroyed, while other related hospital buildings were heavily damaged. The damage and destruction done to the Main Hospital Campus was so extensive that it has rendered the Main Hospital Campus incapable of operation since the date of the fire, and the hospital and nearly all of the other services provided on the Main Hospital Campus remain closed.

3. In addition to the Main Hospital Campus, the Camp Fire significantly damaged several of AHFR's other areas of operations in the town of Paradise, including Feather River Health Center, which had been one of the largest Rural Health Clinics in Adventist Health's system. While the Feather River Health Center has reopened, it has only limited services and is not equipped or staffed to handle patients with emergencies or other acute care needs, and must send them out of town to other facilities.

4. The Camp Fire was a direct and legal result of the negligence, carelessness, recklessness, internal misconduct and/or unlawfulness of the Debtors, and each of them. Among other things, the Claimants are informed and believe that the Debtors and each of them failed to: (a) comply with applicable statutory, regulatory, and/or professional standards of care; (b) timely and properly maintain, manage, inspect and/or monitor the power lines, electrical equipment, and/or adjacent vegetation owned by the Debtors or its affiliates; (c) properly cut, trim, prune and/or otherwise keep vegetation at a sufficient distance to avoid foreseeable contact with power lines; (d) trim and/or prune vegetation so as to avoid the creation of a safety hazard within close proximity of the power lines of the Debtors and their affiliates; (e) make the overhead lines safe under all conditions; (f) conduct adequate, prompt, proper, effective and/or frequent inspections and/or repairs of the electrical transmission lines, wires, and/or associated equipment; (g) design, construct, monitor, and/or maintain electrical transmission and/or distribution power lines in a manner that avoids the potential for fire by allowing vegetation to grow in an unsafe manner; (h) install equipment necessary and/or to inspect and/or repair installed equipment to prevent electrical transmission and distribution lines from improperly sagging, operating, and/or making contact with other metal wires placed on its poles and igniting fires; (i) keep equipment in a safe condition and/or manage equipment to prevent fire at all times; (j) failing to de-energize power lines during fire prone conditions; (k) failing to de-energize power lines after the ignition of the Camp Fire; and/or (l) failing to properly train and supervise employees and/or agents responsible for maintenance and inspection of the distribution lines and/or vegetation areas near such lines.

5. The Claimants assert that the damage incurred by the Claimants was legally and substantively caused by the actions of the Debtors in their installation, ownership, operation, use, control, management and/or maintenance of the power lines and other electrical equipment for a public use. The Claimants further have not received adequate compensation for the damage to and/or destruction of their real and personal property, thus constituting a taking or damaging of such property.

6. The Claimants further assert that the Debtors and each of them acted wantonly, intentionally, unlawfully, carelessly, recklessly and/or negligently in failing to property inspect, manage, and/or control the power lines and other electrical equipment for a public use, and the vegetation

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 42 of 69

near its power lines along the real property which makes up the Main Hospital Campus and each of the other locations in which AHFR maintained operations.

7. Based on all of the foregoing, the Claimants assert that the Debtors are jointly and severally liable for each other's wrongful acts and/or omissions, and are further liable to each of the Claimants pursuant to numerous causes of action, including negligence, inverse condemnation, public nuisance, private nuisance, premises liability, trespass, and violation of multiple statutes of the State of California, including, without limitation, Cal. Pub. Util. Code § 2106, Cal. H. & S. Code § 13007 and Cal. Bus. & Prof. Code § 17500.

## III. THE CLAIMANTS' DAMAGES AND RELATED EXPENSES

The Claimants have lost the occupancy, possession, use, and/or enjoyment of their real and personal property, including the loss of their business operations at the Main Hospital Campus and each of AHFR's other locations, and the contributions which AHFR made as an important and integral part of the entire Adventist Health System. As a result of each of the Debtors' intentional, wrongful and negligent acts or omissions, the Claimants are entitled to recover from each of the Debtors amounts relating to, among other things, damages to real and personal property as well as lost profits in an amount of not less than **$1,012,061,204 plus** any related and other losses or other amounts (including fees and expenses, including, without limitation, attorneys' fees and expenses), as described below and as set forth on Addendum B attached hereto.

Set forth below is a more detailed description of the nature and location of the damage and destruction done to the Claimants' operations by the Camp Fire, all of which were caused by the Debtors' intentional, wrongful and negligent acts or omissions.

A. Destroyed Buildings:

1. During the fire event, the following buildings listed below were destroyed as a result of the Camp Fire:

| BUILDING NAME | STREET ADDRESS | CITY |
|---|---|---|
| BioMed Storage and Workshop | 5724 Canyon View Drive | Paradise |
| Canyon View Clinic | 5734 Canyon View Drive | Paradise |
| Quality/Risk Management Building and Call Center | 5810 Canyon View Drive | Paradise |
| Education and Training Building | 5820 Canyon View Drive | Paradise |
| Ambulance Building | 5824 Canyon View Drive | Paradise |
| Storage Facility | 5826 Canyon View Drive | Paradise |
| Human Resources Building | 5839 Canyon View Drive | Paradise |
| HVAC and Grounds Building and Yard | 5841 (A), (B) Canyon View Drive | Paradise |
| Administrative Office | 5845 Canyon View Drive | Paradise |
| Visiting Physicians Quarters | 5847 Canyon View Drive | Paradise |
| Marketing Building | 5849 Canyon View Drive | Paradise |
| Storage Building | 5853 Canyon View Drive | Paradise |

| Volunteers Building | 5858 Canyon View Drive | Paradise |
| IT Garage/Storage | 5960 Pentz Road | Paradise |
| Project Planning Office | 6056 Pentz Road | Paradise |

2. Additionally, the contents of all of the foregoing buildings were destroyed, including any medical equipment, medical supplies, furniture, office equipment or maintenance equipment or supplies located therein.

B.    Damaged Buildings:

1. During the fire event, the buildings listed below were damaged to varying degrees as a result of the Camp Fire. In addition to the destruction of the Lower Level of the hospital and central utility plant described above, the Upper Level of the hospital was seriously damaged because hot embers permeated its roof (as they did to the roofs of several of the other buildings listed below), and permitted water (through fire suppression activities and subsequent rain storms) to damage the structures and their interiors, which in turn caused mold and additional damage.

| BUILDING NAME | STREET ADDRESS | CITY |
| --- | --- | --- |
| Feather River Hospital/Main Hospital Building (Lower Level and Central Utility Plant essentially destroyed; Upper Level significantly damaged) | 5974 Pentz Road | Paradise |
| Sewer Control Shed and Field (shed destroyed; sewer caps damaged) | 5974 Pentz Road | Paradise |
| Accounting Office and Med Records | 5628 Canyon View Drive | Paradise |
| Feather River Cancer Center | 5629 Canyon View Drive | Paradise |
| Family Health Center | 5730 Canyon View Drive | Paradise |
| Medical Records Storage Building | 5843 Canyon View Drive | Paradise |
| Sleep Study Lab | 1925 Peach Lane | Paradise |
| Outpatient Surgery Center | 1933 Peach Lane | Paradise |
| Feather River Health Center – RHC, including Pharmacy | 5125 Skyway | Paradise |
| Hospice Care Building | 1289 Bille Road | Paradise |
| Home Health, Home Oxygen and Storage Building | 1295 Bille Road | Paradise |
| Condominiums in Medical Office Building | 6283 Clark Road (Suites 1, 4, 5, 6, 12, 13, 14 and 15) | Paradise |

2. Service roads, parking lots and walkways throughout the Main Hospital Campus were damaged due to intense heat resulting from the fire event. Additionally, heavy smoke permeated throughout the town of Paradise during and as a result of the Camp Fire, thereby requiring abatement or other smoke remediation to be done to AHFR's locations. Other temporary repairs also became necessary to mitigate further damage. This included roof patches, septic system patches and segregating the upper hospital (seriously damaged) from the lower hospital (essentially destroyed). One or more potable water container(s) were purchased in order to restore basic functions to the Feather River Health Clinic, as potable water was not available.

3. Further, the contents of the buildings identified above, including medical equipment, medical supplies, furniture, office and maintenance equipment and supplies, were either damaged as a

result of the fire, and/or significantly affected by smoke. To the extent that they were salvageable, they had to be cleaned, repaired or otherwise remediated. Additionally, carpets or other flooring had to be cleaned or replaced, and walls had to be cleaned or repainted.

C.    Leased Locations

Prior to the Camp Fire, AHFR leased the following locations for its operations:

| BUILDING NAME | STREET ADDRESS | CITY |
| --- | --- | --- |
| FR Specialty Services | 6009 Pentz Road | Paradise |
| Feather River Urology | 6480 Pentz Road | Paradise |
| Women's Health Center | 6283 Clark Road (Suite 8) | Paradise |

During and after the Camp Fire, heavy smoke permeated these leased locations. As a result, the contents of each of the foregoing locations were significantly impacted and had to be cleaned, repaired or otherwise remediated, or were no longer usable and had to be destroyed.

D.    Other Damages

The Claimants have incurred substantial additional damages as a result of the Camp Fire and the Debtors' wrongful acts which caused such fire. Such additional damages are itemized or identified on Addendum "B" hereto, and are further explained below:

(1)    The Camp Fire cut off all utilities and water supplies to the Main Hospital Campus. As remediation began, the Claimants contracted to bring in rental equipment to restore basic functions, including portable lighting, hand washing stations, portable bathrooms, generators and multiple storage containers to salvage medical equipment. Several contractors were also hired to perform emergency work, including disposing of medical biohazards (i.e., medications, sharp containers) and perishables, erosion control, supplying compressed gas for generators and potable drinking water. The damage done by the Camp Fire to the Main Hospital Campus also created potentially unsafe conditions to the public. Fencing was rented and large quantities of debris were removed. A security station was installed in a rented mobile trailer on the Main Hospital Campus and it has been, and continues to be, staffed 24 hours a day.

(2)    Similar remediation and security activities were completed for the Feather River Health Center locations and, to the extent necessary, all other locations maintained by the Claimants in the town of Paradise.

(3)    Prior to the Camp Fire, the Main Hospital Campus contained formal landscaped areas and native trees around the buildings and parking lots. As a result of the Camp Fire, in excess of 200 individual landscaped trees were burned. Most are a complete loss and require removal. Additionally, adjacent to the Main Hospital Campus, the Claimants own a mixed woodland. An additional approximately 68 acres of that woodland was heavily damaged, resulting in the loss of hundreds of additional trees. The Claimants have incurred, and will continue to incur, substantial costs for cleanup and remediation of these areas. Pursuant to Cal. Civ. Code § 3346 and Cal. Code Civ. Proc. § 733, the Claimants are entitled to recover three times their damages for these losses and expenses.

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 45 of 69

(4)     As a result of the Camp Fire, the Claimants were forced to incur the fees and expenses of attorneys and other professionals to advise them on their rights. Additionally, in the aftermath of the Camp Fire, the Claimants incurred numerous miscellaneous out-of-pocket expenses, including for additional labor and storage costs.

(5)     The Claimants provide a self-insured health plan for employees. Because of the cessation of health care services on the Main Hospital Campus and related facilities in the town of Paradise, employees were forced to go to other facilities for their healthcare needs, thereby causing the Claimants to incur additional costs meeting those needs.

(6)     Claimant Adventist Health is self-insured for unemployment benefits. As a result of the Camp Fire, it has become obligated for additional unemployment claims.

(7)     As a result of the Camp Fire, Claimant Adventist Health has been or will be charged substantially higher insurance premiums for the period from October 1, 2019 to September 30, 2020 for less coverage, and will have to either pay massive additional premiums to obtain coverage similar to what it had previously, or accept substantially greater uninsured risk than it faced before the Camp Fire.

(8)     The Claimants are entitled to recover certain additional amounts from each of the Debtors in connection with the Camp Fire on and after the filing of this Proof of Claim, including, without limitation, any and all attorneys' and other consultants' and professionals' fees and expenses, future costs and repairs, further timber-related losses and expenses, insurance-related costs, and punitive damages. The Claimants hereby reserve all rights to amend this Proof of Claim to assert additional claims against each of the Debtors.

## IV.     RESERVATION OF RIGHTS

1. This Proof of Claim is filed under the compulsion of the deadline set by the United States Bankruptcy Court for the Northern District of California in these cases for the assertion of prepetition claims against the Debtors. Each of the Claimants reserves, without limitation and to the fullest extent allowed by applicable law, the right to amend, modify, withdraw, renew, extend, restate and/or supplement, for any reason, this Proof of Claim and any of the claims set forth herein, including but not limited to, the recovery of any and all fees, expenses, and interest to which it may be entitled under applicable law. Each of the Claimants further reserves, without limitation, the right to assert any and all additional claims that either of the Claimants may have against either of the Debtors, to the fullest extent allowed by applicable law.

2. In addition, each of the Claimants reserve, without limitation, all of its defenses and rights, procedural and substantive, and any and all setoff, offset, recoupment, and similar rights under any applicable contract, statute, common law or equitable principle, including any such right that arises post-petition, and shall not be deemed to have waived or released any claim by virtue of it not being liquidated or fixed herein. Each of the Claimants further expressly reserves its right to assert any and all indemnification and/or reimbursement claims that may exist or that may arise under any applicable law, including to the extent that either of the Claimants may become subject to any complaint or cross-complaint asserted or otherwise filed against it, or any other claim asserted against it by any person or entity.

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 46
of 69

3. The documents which evidence the facts and claims set forth herein are too voluminous to attach to this Proof of Claim at this time. Accordingly, the Claimants expressly reserve the right to attach, produce and/or rely upon additional documentation that supports their respective claims and any additional documents that may become available after further investigation or discovery, particularly in light of the minimal time afforded them to both discover and liquidate the extensive nature of the damages which occurred as a result of the Camp Fire.

4. The filing of this Proof of Claim is not and shall not be deemed or construed as:

    (a)    a waiver or release of the Claimants' right to trial by jury in this court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution;

    (b)    consent by the Claimants to a jury trial in this court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157 or otherwise;

    (c)    consent by the Claimants or waiver or release of the Claimants' right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge;

    (d)    a waiver of the right to move to withdraw the reference with respect to the subject matter of the Proof of Claim, any objection thereto, or other proceeding which may be commenced in these cases against or otherwise involving the Claimants;

    (e)    consent by the Claimants or release of the Claimants' right to contest the venue or jurisdiction of this Court over any bankruptcy case, adversary proceeding, contested matter, or other proceedings;

    (f)    an election of remedies;

    (g)    a waiver of the Claimants' right to claim any prepetition or postpetition interest or all reasonable fees, costs, or charges under the Bankruptcy Code, including sections 503 and 507 thereof;

    (h)    a waiver of the Claimants' right to assert an administrative expense claim under Bankruptcy Code section 503(b) or otherwise;

    (i)    a concession or admission by Claimant of facts with respect to any claims or alleged damages (or the amount thereof);

    (j)    a waiver of any right to the subordination, in favor of the Claimants, of indebtedness or liens held by other creditors of the Debtors;

Case: 19-30088   Doc# 6174   Filed: 03/06/20   Entered: 03/06/20 15:54:40   Page 47 of 69

(k)     a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable; or

(l)     a waiver of any right of Claimant to have any liquidated portion of any claim determined by the Bankruptcy Court.

5.     Discovery is continuing with respect to the nature and extent of the Debtors' wrongful conduct and/or omissions and the damages incurred by the Claimants as a result thereof. Accordingly, the Claimants specifically reserve the right to assert any and all additional rights and claims that have arisen or may arise between or among the parties, including any rights or claims arising after the Petition Date or after the date of this Proof of Claim. The Claimants do not waive or release (and expressly reserve) any claim, right, or right of action, or any power or remedy, that any of the Claimants has or might have against the Debtors, the Debtors' estates, or any other person or entity, including but not limited to FM Global, any insurer of the Debtors, or any other person, company or entity which may have provided any policy of insurance or other agreement to indemnify for losses related to the Camp Fire, regardless of whether such claim, right, or action arises prior to, upon, or after the Petition Date or after the date of this Proof of Claim.

6.     This Proof of Claim is not intended to be, and shall not be construed as, an election of remedies, a waiver of any defaults or a waiver or limitation of any rights, remedies, claims, defenses, or interests of any of the Claimants, including but not limited to any right of setoff, offset, recoupment, a § 502(h) claim, or similar rights or defenses under any agreement, contract, statute, common law, or equitable doctrine. Nothing contained in this Proof of Claim shall limit the rights of the Claimants to file papers or pleadings, or commence any proceedings, or take any actions concerning its claims, liens or security interests. Claimant further reserves its right to pursue claims (including but not limited to the claims described herein) against any of the Debtors based upon additional or alternative legal theories.

7.     This Proof of Claim is filed by the Claimants against each of the Debtors. However, neither of the Claimants is seeking to recover more than 100% of its claim amount in the aggregate from the Debtors.

8.     The Claimants file this Proof of Claim without prejudice and in addition to any other claims of the Claimants that have been listed in any of the Debtors' schedules or may become listed in any of the Debtors' schedules.

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 48 of 69

Addendum "B" to Proof of Claim of Adventist Health System/West and Feather River Hospital
d/b/a Adventist Health Feather River

| Loss/Expense Category | Amount |
|---|---|
| Costs to Clean-Up, Secure, Repair and Remediate Facilities After Fire (To Date): | |
| ▪ Clean-up, immediate repairs and securing sites | $ 3,198,557 |
| ▪ Construction and further repairs completed to date | $ 3,449,136 |
| Cost to Repair/Rebuild/Replace Facilities: | |
| ▪ Construction and repairs not yet completed (including labor, material and related "soft" costs) | $110,622,586 |
| Timber: | |
| ▪ Value of lost landscape trees (including remediation costs) | $ 875,158 |
| ▪ Initial treatment and remediation of woodland trees | $ 5,319,500 |
| ▪ Additional damages per Cal. Civ. Code § 3346 and Cal. Code Civ. Pro. § 733 | $ 12,389,316 |
| Loss of Inventory/Equipment/Contents of AHFR Locations | $ 14,433,149 |
| Loss of Surplus (Profit): | |
| ▪ Loss of surplus (profit) (11/8/18 to 10/31/19) | $ 16,223,272 |
| ▪ Value of future lost surplus (profit) (11/19 to 12/24) | $ 70,369,798 |
| ▪ Operating losses (11/8/18 to 10/31/19) | $ 39,868,262 |
| ▪ Value of future operating losses (11/19 to 12/24) | $ 61,663,375 |
| ▪ Additional system-wide charges that cannot be avoided (11/8/18 to 10/31/19) | $ 25,463,291 |
| ▪ Value of future additional system-wide charges that cannot be avoided (11/19 to 12/24) | $ 99,386,397 |
| Other Miscellaneous Damages: | |
| ▪ Professional fees and expenses as of October 16, 2019 (attorneys, consultants and other professionals) | $ 1,210,412 |
| ▪ Miscellaneous Out-of-Pocket Expenses | $ 337,239 |
| ▪ Additional employee health plan costs (11/8/18 to 10/31/19) | $ 824,453 |
| ▪ Value of future additional employee health plan costs (11/19 onwards) | $ 936,493 |
| ▪ Assistance to Camp Fire Assistance Fund (for employees) | $ 500,000 |
| ▪ Unemployment insurance claims (2/6/19 to 9/16/19) | $ 1,215,722 |
| ▪ Unemployment insurance claims (liability remaining) | $ 1,579,826 |
| ▪ Impact on insurance premiums and coverage on policy from 10/1/19 to 9/30/20) | $ 36,164,660 |
| Subtotal | $506,030,602 |
| Plus: | |
| Value of Lost Woodland Trees and Cost of Ongoing Mitigation Needs | TBD |
| Contribution and Indemnity Claims for Third Party Liabilities | TBD |
| Other unliquidated amounts | TBD |
| Punitive Damages | $506,030,602 |
| Total | $1,012,061,204 |

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 49 of 69

# Electronic Proof of Claim_*UDOX27397

Final Audit Report                                               2019-10-18

| | |
|---|---|
| Created: | 2019-10-18 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA7u77jEwFFa7X0J9BzrQ09PrakuPxun7N |

## "Electronic Proof of Claim_*UDOX27397" History

🖰 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
  2019-10-18 - 3:35:07 PM GMT

📎 Bill Wing (james.copeland@nortonrosefulbright.com) uploaded the following supporting documents:
  📎 Attachment
  2019-10-18 - 3:52:16 PM GMT

🖰 Web Form filled in by Bill Wing (james.copeland@nortonrosefulbright.com)
  2019-10-18 - 3:52:16 PM GMT- IP address: 38.122.49.122

🔏 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
  AppleWebKit/537.36 (KHTML, like Gecko) Chrome/72.0.3626.121 Safari/537.36)
  2019-10-18 - 3:52:19 PM GMT- IP address: 38.122.49.122

⊘ Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and Bill Wing
  (james.copeland@nortonrosefulbright.com)
  2019-10-18 - 3:52:19 PM GMT

Prime Clerk ⌐   | POWERED BY
               | Adobe Sign

| In re:<br>PG&E CORPORATION,<br>- and -<br>PACIFIC GAS AND ELECTRIC<br>COMPANY,<br>Debtors. | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

# Proof of Claim (Fire Claim Related)

Read the instructions before filing this claim form. This form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire.

> Do not use this form for non-fire claims. Non-fire tort claimants should use Form 410.

Do NOT file a fraudulent claim. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Please type or print in the spaces below. Do NOT use red ink or pencil.

## Part 1: Identify the Claim

| 1. | Who is the current creditor? | Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River<br>Name of the current creditor (the person or entity to be paid for this claim) |
|---|---|---|

| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |
|---|---|---|

| 3. | Are you filing this claim on behalf of your family?<br>A family is a group of two or more people related by birth, marriage, domestic partnership, or adoption and residing together. All such people are considered as members of one family. | ☑ No<br>☐ Yes | If you checked "Yes", please provide the full name of each family member that you are filing on behalf of:<br><br>_____ _____<br>_____ _____<br>_____ _____<br>_____ _____ |
|---|---|---|---|

| 4. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Name Robert L. Layton, Adventist Health System/West<br>Attorney Name (if applicable) _____<br>Attorney Bar Number (if applicable) _____<br>Street Address One Adventist Health Way<br>City Roseville<br>State California<br>Zip Code 95661<br>Phone Number 916-406-1577<br>Email Address laytonrl@ah.org | **Where should payments to the creditor be sent?** (if different)<br><br>Name _____<br>Attorney Name (if applicable) _____<br>Attorney Bar Number (if applicable) _____<br>Street Address _____<br>City _____<br>State _____<br>Zip Code _____<br>Phone Number _____<br>Email Address _____ |
|---|---|---|---|

| 5. | Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___ / ___ / ___ <br>MM / DD / YYYY |
|---|---|---|

| 6. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |
|---|---|---|

| Part 2: | Give Information About the Claim as of the Date this Claim Form is Filed |
|---|---|

**7. What fire is the basis of your claim?**

Check all that apply.

- ☑ Camp Fire (2018)
- ☐ North Bay Fires (2017)
- ☐ Ghost Ship Fire (2016)
- ☐ Butte Fire (2015)
- ☐ Other (please provide date and brief description of fire): _____

**8. What are the loss location(s) where you and/or your family suffered harm? (e.g. home or business address, place of injury, place from which you were evacuated, if different.?**

Location(s): Feather River Hospital, 5974 Pentz Road, Paradise, California 95969 and other locations in Paradise, California (see addendum).

**9. How were you and/or your family harmed?**

Check all that apply

- ☑ Property Damage (homes, structures, personal property, land, trees, landscaping, and all other property damage)
  - ☑ Owner ☐ Renter ☐ Occupant ☑ Other (Please specify): **See addendum.**
- ☐ Personal Injury
- ☐ Wrongful Death (if checked, please provide the name of the deceased) _____
- ☑ Business Loss/Interruption
- ☑ Lost wages and earning capacity
- ☐ Loss of community and essential services
- ☐ Agricultural loss
- ☑ Other (Please specify): **See addendum.**

**10. What damages are you and/or your family claiming/seeking?**

Check all that apply

- ☑ Economic damages (including replacement cost of damaged property, diminution in value, loss of use, lost inventory, lost profits, and other economic damage)
- ☐ Non-economic damages (including loss of society and support, loss of consortium, pain and suffering, emotional distress, annoyance and discomfort, and other non-economic damage)
- ☑ Punitive, exemplary, and statutory damages
- ☑ Attorney's fees and litigation costs
- ☑ Interest
- ☑ Any and all other damages recoverable under California law
- ☑ Other (Please specify): **See addendum.**

**11. How much is the claim?**

- ☑ $ 1,012,061,204; see addendum. (optional)
- ☐ Unknown / To be determined at a later date

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 52 of 69

| Part 3: | Sign Below |
|---|---|

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b). | **Check the appropriate box:** |
| | ☐ I am the creditor. |
| | ☑ I am the creditor's attorney or authorized agent. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |
| A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | **Signature:** *Bill Wing* |
| | Bill Wing (Oct 15, 2019) |
| | **Email:** james.copeland@nortonrosefulbright.com |
| | _____ |
| | Signature |

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Bill Wing | | |
| | First name | Middle name | Last name |
| Title | CFO and Assistant Secretary | | |
| Company | Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | One Adventist Health Way | | |
| | Number       Street | | |
| | Roseville | CA | 95661 |
| | City | State | ZIP Code |
| Contact phone | 916-406-0000 | Email | wingbd@ah.org |

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 53 of 69

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)
                               ☐ I do **not** have supporting documentation.

 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION** When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim (Fire Claim Related)

United States Bankruptcy Court

**You may have a claim against the Debtors for monetary loss, personal injury (including death), or other asserted damages arising out of or related to a fire. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the chapter 11 process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date this claim form is filed.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

- **You may but are not required to attach supporting documents to this form.**
  Supporting documents will be gathered, maintained, and provided at a later date as instructed by the Court. If you do attach documents, you should attach redacted documents as supporting documentation will be made publicly available and will not be kept confidential. *See* the definition of *redaction* of information below.

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **Question 3.** Members of a family may but are not required to file a proof of claim as a family but may, if they choose, submit individual claim forms for each family member that has a claim against the debtors.

- **Question 9.** If you suffered property damage, then provide the street address of each real property parcel where you suffered property damage. If you were personally evacuated as the result of a fire, then provide the address or intersection closest to where you encountered the fire and began evacuation. If you suffered property damage and were evacuated from a different location, include both. If you were a renter, provide the address of your residence.

- **Question 10.** This question requests general statements of underlying facts relating to harm and is not intended to be exhaustive or preclusive.

- **Question 11.** You are not required to include a claim amount with your proof of claim. Providing a claim amount at this time is optional.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form together with the original. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at
https://restructuring.primeclerk.com/pge.

Proof of Claim Instructions (Fire Related)                                                                 Page 1

## Understand the terms used in this form

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. In this instance, PG&E Corporation and Pacific Gas & Electric Company.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the creditor has a claim against the debtors on or before the date of the bankruptcy filing (in these cases, January 29, 2019). The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your Proof of Claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

Proof of Claim Instructions (Fire Related)                                    Page 2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| In re:<br><br>**PG&E CORPORATION,**<br><br>Debtor. | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

# Proof of Claim (Fire Claim Related)

Read the instructions before filing this claim form. This form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire.

> Do not use this form for non-fire claims. Non-fire tort claimants should use Form 410.

Do NOT file a fraudulent claim. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Please type or print in the spaces below. Do NOT use red ink or pencil.

| **Part 1:** | **Identify the Claim** |

| | | |
|---|---|---|
| 1. Who is the current creditor? | Adventist Health System/West, a California religious non-profit corporation, and Feather River Hospital, a California religious non-profit corporation, d/b/a Adventist Health Feather River<br>Name of the current creditors (the persons or entities to be paid for this claim) | |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ | |
| 3. Are you filing this claim on behalf of your family?<br><br>A family is a group of two or more people related by birth, marriage, domestic partnership, or adoption and residing together. All such people are considered as members of one family. | ☒ No<br><br>☐ Yes | If you checked "Yes", please provide the full name of each family member that you are filing on behalf of:<br><br>_____  _____<br>_____  _____<br>_____  _____<br>_____  _____ |
| 4. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Adventist Health System/West<br>Robert L. Layton<br>Associate General Counsel<br>Assistant Vice President<br>ONE Adventist Health Way<br>Roseville, California 95661<br>Tel: 916-406-1577<br>Email: laytonrl@ah.org | Where should payments to the creditor be sent? (if different)<br>Name _____<br>Attorney Name (if applicable) _____<br>Attorney Bar Number (if applicable) _____<br>Street Address _____<br>City _____<br>State _____<br>Zip Code _____<br>Phone Number _____<br>Email Address _____ |
| 5. Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____<br>MM / DD / YYYY |
| 6. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ | |

| **Part 2:** | Give Information About the Claim as of the Date this Claim Form is Filed |
|---|---|

| 7. What fire is the basis of your claim?<br><br>Check all that apply. | ☒ Camp Fire (2018)<br>☐ North Bay Fires (2017)<br>☐ Ghost Ship Fire (2016)<br>☐ Butte Fire (2015)<br>☐ Other (please provide date and brief description of fire): _____ |
|---|---|
| 8. What are the loss location(s) where you and/or your family suffered harm? (e.g. home or business address, place of injury, place from which you were evacuated, if different? | Location(s): Feather River Hospital, 5974 Pentz Road, Paradise, California 95969 and other locations in Paradise, California (see addendum). |
| 9. How were you and/or your family harmed?<br><br>Check all that apply | ☒ Property Damage (homes, structures, personal property, land, trees, landscaping, and all other property damage)<br>　☒ Owner ☐ Renter ☐ Occupant ☒ Other (Please specify): See addendum.<br>☐ Personal Injury<br>☐ Wrongful Death (if checked, please provide the name of the deceased)<br>☒ Business Loss/Interruption<br>☒ Lost wages and earning capacity<br>☐ Loss of community and essential services<br>☐ Agricultural loss<br>☒ Other (Please specify): See addendum. |
| 10. What damages are you and/or your family claiming/seeking?<br><br>Check all that apply | ☒ Economic damages (including replacement cost of damaged property, diminution in value, loss of use, lost inventory, lost profits, and other economic damage)<br>☐ Non-economic damages (including loss of society and support, loss of consortium, pain and suffering, emotional distress, annoyance and discomfort, and other non-economic damage)<br>☒ Punitive, exemplary, and statutory damages<br>☒ Attorney's fees and litigation costs<br>☒ Interest<br>☒ Any and all other damages recoverable under California law<br>☒ Other (Please specify): See addendum. |
| 11. How much is the claim? | ☒ $1,012,061,204; see addendum. (optional)<br>☐ Unknown / To be determined at a later date |

34332725.2

Proof of Claim (Fire Related)　　　　　　　　　　　　　　　　　　　Page 2

Case: 19-30088　　Doc# 6174　　Filed: 03/06/20　　Entered: 03/06/20 15:54:40　　Page 58 of 69

**Part 3**    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    October 17, 2109

Adventist Health System/West

By: BILL WING

Title: CFO

Address: ONE Adventist Health Way, Roseville, CA 95661

Tel:    **(916) 406-0000**
Email:    **WingBD@ah.org**

Feather River Hospital d/b/a Adventist Health Feather River

By: BILL WING
Title: Assistant Secretary
Address: 5125 Skyway, Paradise, CA 95969

Tel:    **(916) 406-0000**
Email:    **WingBD@ah.org**

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 59 of 69

<u>Addendum "A" to Proof of Claim of Adventist Health System/West and Feather River Hospital,
d/b/a Adventist Health Feather River</u>

Adventist Health System/West ("Adventist Health"), a California religious nonprofit corporation, and Feather River Hospital, a California religious nonprofit corporation, d/b/a Adventist Health Feather River ("AHFR"), hereby submit this proof of claim, including this Addendum "A" to Proof of Claim and Addendum "B" attached hereto (together, the "Proof of Claim").

The claims of Adventist Health and AHFR, asserted jointly and severally by Adventist Health and AHFR (together, the "Claimants") against the estates of Debtor Pacific Gas and Electric Company and PG&E Corporation (together, the "Debtors") arise as a result of the following.

## I.      THE CLAIMANTS

1.  Adventist Health is a faith-based, nonprofit integrated health delivery system headquartered in Roseville, California.  It seeks to empower healthy communities and enhance the quality of life for those it services by improving access to comprehensive, quality health care services across multiple communities in California, Hawaii and Oregon.

2.  AHFR is part of the Adventist Health hospital system.  Prior to the Camp Fire, AHFR was a 100-bed acute care, community hospital with extensive operations in Butte County, but primarily in Paradise, California, including cancer, cardiology and a critical care unit, a diagnostic laboratory, an emergency department with connected MRI, CT and X-Ray services, an outpatient surgery center, home health and hospice services, hospital-based outpatient clinics, rural health clinics, and home oxygen, medical imaging, obstetrics, same-day and sleep medicine services.  The hospital was staffed by nearly 200 physicians and advance practice professionals, approximately 1,200 employees and more than 400 volunteers.

## II.     THE DEBTORS' LIABILITY TO THE CLAIMANTS

1.  Prior to the filing of the Debtors' chapter 11 cases on January 29, 2019 (the "Petition Date"), and during the morning of November 8, 2019, a fire began near the community of Pulga in Butte County, California.  According to the California Department of Forestry and Fire Protection ("Cal Fire"), the fire was caused by electrical transmission lines owned and operated by the Debtors located in the Pulga area.  The fire rapidly burned into Pulga to the east and west into Concow, Paradise, Magalia and to the outskirts of Chico.  Additionally, according to Cal Fire, a second fire began near the intersection of Concow Road and Rim Road, the cause of which was vegetation into electrical distribution lines, again owned and operated by the Debtors.  This second fire was consumed by the initial fire near Pulga, and both such fires shall be referred to herein as the "Camp Fire."

2.  The Camp Fire burned thousands of acres of land and devastated the Town of Paradise and nearby communities.  It also devastated the main campus of Feather River Hospital, located at 5974 Pentz Road in Paradise (the "Main Hospital Campus").  Approximately 30 of the approximately 50 acres making up the developed portion of the Main Hospital Campus, plus another approximately 68 acres of AHFR's adjacent woodlands, were burned.  The Camp Fire swept over large portions of the Main Hospital Campus, essentially destroying the Lower Level

Case: 19-30088    Doc# 6174    Filed: 03/06/20    Entered: 03/06/20 15:54:40    Page 60
of 69

of the hospital and all of the central utility plant, including the cooling tower yard and switchgear yard, and seriously damaging the Upper Level of the hospital. Multiple related hospital buildings, located closer to the woodlands, were also completely destroyed, while other related hospital buildings were heavily damaged. The damage and destruction done to the Main Hospital Campus was so extensive that it has rendered the Main Hospital Campus incapable of operation since the date of the fire, and the hospital and nearly all of the other services provided on the Main Hospital Campus remain closed.

3. In addition to the Main Hospital Campus, the Camp Fire significantly damaged several of AHFR's other areas of operations in the town of Paradise, including Feather River Health Center, which had been one of the largest Rural Health Clinics in Adventist Health's system. While the Feather River Health Center has reopened, it has only limited services and is not equipped or staffed to handle patients with emergencies or other acute care needs, and must send them out of town to other facilities.

4. The Camp Fire was a direct and legal result of the negligence, carelessness, recklessness, internal misconduct and/or unlawfulness of the Debtors, and each of them. Among other things, the Claimants are informed and believe that the Debtors and each of them failed to: (a) comply with applicable statutory, regulatory, and/or professional standards of care; (b) timely and properly maintain, manage, inspect and/or monitor the power lines, electrical equipment, and/or adjacent vegetation owned by the Debtors or its affiliates; (c) properly cut, trim, prune and/or otherwise keep vegetation at a sufficient distance to avoid foreseeable contact with power lines; (d) trim and/or prune vegetation so as to avoid the creation of a safety hazard within close proximity of the power lines of the Debtors and their affiliates; (e) make the overhead lines safe under all conditions; (f) conduct adequate, prompt, proper, effective and/or frequent inspections and/or repairs of the electrical transmission lines, wires, and/or associated equipment; (g) design, construct, monitor, and/or maintain electrical transmission and/or distribution power lines in a manner that avoids the potential for fire by allowing vegetation to grow in an unsafe manner; (h) install equipment necessary and/or to inspect and/or repair installed equipment to prevent electrical transmission and distribution lines from improperly sagging, operating, and/or making contact with other metal wires placed on its poles and igniting fires; (i) keep equipment in a safe condition and/or manage equipment to prevent fire at all times; (j) failing to de-energize power lines during fire prone conditions; (k) failing to de-energize power lines after the ignition of the Camp Fire; and/or (l) failing to properly train and supervise employees and/or agents responsible for maintenance and inspection of the distribution lines and/or vegetation areas near such lines.

5. The Claimants assert that the damage incurred by the Claimants was legally and substantively caused by the actions of the Debtors in their installation, ownership, operation, use, control, management and/or maintenance of the power lines and other electrical equipment for a public use. The Claimants further have not received adequate compensation for the damage to and/or destruction of their real and personal property, thus constituting a taking or damaging of such property.

6. The Claimants further assert that the Debtors and each of them acted wantonly, intentionally, unlawfully, carelessly, recklessly and/or negligently in failing to property inspect, manage, and/or control the power lines and other electrical equipment for a public use, and the vegetation

98745820.7

- 2 -

near its power lines along the real property which makes up the Main Hospital Campus and each of the other locations in which AHFR maintained operations.

7. Based on all of the foregoing, the Claimants assert that the Debtors are jointly and severally liable for each other's wrongful acts and/or omissions, and are further liable to each of the Claimants pursuant to numerous causes of action, including negligence, inverse condemnation, public nuisance, private nuisance, premises liability, trespass, and violation of multiple statutes of the State of California, including, without limitation, Cal. Pub. Util. Code § 2106, Cal. H. & S. Code § 13007 and Cal. Bus. & Prof. Code § 17500.

## III. THE CLAIMANTS' DAMAGES AND RELATED EXPENSES

The Claimants have lost the occupancy, possession, use, and/or enjoyment of their real and personal property, including the loss of their business operations at the Main Hospital Campus and each of AHFR's other locations, and the contributions which AHFR made as an important and integral part of the entire Adventist Health System. As a result of each of the Debtors' intentional, wrongful and negligent acts or omissions, the Claimants are entitled to recover from each of the Debtors amounts relating to, among other things, damages to real and personal property as well as lost profits in an amount of not less than **$1,012,061,204 plus** any related and other losses or other amounts (including fees and expenses, including, without limitation, attorneys' fees and expenses), as described below and as set forth on Addendum B attached hereto.

Set forth below is a more detailed description of the nature and location of the damage and destruction done to the Claimants' operations by the Camp Fire, all of which were caused by the Debtors' intentional, wrongful and negligent acts or omissions.

A.   Destroyed Buildings:

1. During the fire event, the following buildings listed below were destroyed as a result of the Camp Fire:

| BUILDING NAME | STREET ADDRESS | CITY |
|---|---|---|
| BioMed Storage and Workshop | 5724 Canyon View Drive | Paradise |
| Canyon View Clinic | 5734 Canyon View Drive | Paradise |
| Quality/Risk Management Building and Call Center | 5810 Canyon View Drive | Paradise |
| Education and Training Building | 5820 Canyon View Drive | Paradise |
| Ambulance Building | 5824 Canyon View Drive | Paradise |
| Storage Facility | 5826 Canyon View Drive | Paradise |
| Human Resources Building | 5839 Canyon View Drive | Paradise |
| HVAC and Grounds Building and Yard | 5841 (A), (B) Canyon View Drive | Paradise |
| Administrative Office | 5845 Canyon View Drive | Paradise |
| Visiting Physicians Quarters | 5847 Canyon View Drive | Paradise |
| Marketing Building | 5849 Canyon View Drive | Paradise |
| Storage Building | 5853 Canyon View Drive | Paradise |

| | | |
|---|---|---|
| Volunteers Building | 5858 Canyon View Drive | Paradise |
| IT Garage/Storage | 5960 Pentz Road | Paradise |
| Project Planning Office | 6056 Pentz Road | Paradise |

2. Additionally, the contents of all of the foregoing buildings were destroyed, including any medical equipment, medical supplies, furniture, office equipment or maintenance equipment or supplies located therein.

B.    Damaged Buildings:

1. During the fire event, the buildings listed below were damaged to varying degrees as a result of the Camp Fire. In addition to the destruction of the Lower Level of the hospital and central utility plant described above, the Upper Level of the hospital was seriously damaged because hot embers permeated its roof (as they did to the roofs of several of the other buildings listed below), and permitted water (through fire suppression activities and subsequent rain storms) to damage the structures and their interiors, which in turn caused mold and additional damage.

| BUILDING NAME | STREET ADDRESS | CITY |
|---|---|---|
| Feather River Hospital/Main Hospital Building (Lower Level and Central Utility Plant essentially destroyed; Upper Level significantly damaged) | 5974 Pentz Road | Paradise |
| Sewer Control Shed and Field (shed destroyed; sewer caps damaged) | 5974 Pentz Road | Paradise |
| Accounting Office and Med Records | 5628 Canyon View Drive | Paradise |
| Feather River Cancer Center | 5629 Canyon View Drive | Paradise |
| Family Health Center | 5730 Canyon View Drive | Paradise |
| Medical Records Storage Building | 5843 Canyon View Drive | Paradise |
| Sleep Study Lab | 1925 Peach Lane | Paradise |
| Outpatient Surgery Center | 1933 Peach Lane | Paradise |
| Feather River Health Center – RHC, including Pharmacy | 5125 Skyway | Paradise |
| Hospice Care Building | 1289 Bille Road | Paradise |
| Home Health, Home Oxygen and Storage Building | 1295 Bille Road | Paradise |
| Condominiums in Medical Office Building | 6283 Clark Road (Suites 1, 4, 5, 6, 12, 13, 14 and 15) | Paradise |

2.    Service roads, parking lots and walkways throughout the Main Hospital Campus were damaged due to intense heat resulting from the fire event. Additionally, heavy smoke permeated throughout the town of Paradise during and as a result of the Camp Fire, thereby requiring abatement or other smoke remediation to be done to AHFR's locations. Other temporary repairs also became necessary to mitigate further damage. This included roof patches, septic system patches and segregating the upper hospital (seriously damaged) from the lower hospital (essentially destroyed). One or more potable water container(s) were purchased in order to restore basic functions to the Feather River Health Clinic, as potable water was not available.

3. Further, the contents of the buildings identified above, including medical equipment, medical supplies, furniture, office and maintenance equipment and supplies, were either damaged as a

result of the fire, and/or significantly affected by smoke. To the extent that they were salvageable, they had to be cleaned, repaired or otherwise remediated. Additionally, carpets or other flooring had to be cleaned or replaced, and walls had to be cleaned or repainted.

C.      Leased Locations

Prior to the Camp Fire, AHFR leased the following locations for its operations:

| BUILDING NAME | STREET ADDRESS | CITY |
|---|---|---|
| FR Specialty Services | 6009 Pentz Road | Paradise |
| Feather River Urology | 6480 Pentz Road | Paradise |
| Women's Health Center | 6283 Clark Road (Suite 8) | Paradise |

During and after the Camp Fire, heavy smoke permeated these leased locations. As a result, the contents of each of the foregoing locations were significantly impacted and had to be cleaned, repaired or otherwise remediated, or were no longer usable and had to be destroyed.

D.      Other Damages

The Claimants have incurred substantial additional damages as a result of the Camp Fire and the Debtors' wrongful acts which caused such fire. Such additional damages are itemized or identified on Addendum "B" hereto, and are further explained below:

        (1)     The Camp Fire cut off all utilities and water supplies to the Main Hospital Campus. As remediation began, the Claimants contracted to bring in rental equipment to restore basic functions, including portable lighting, hand washing stations, portable bathrooms, generators and multiple storage containers to salvage medical equipment. Several contractors were also hired to perform emergency work, including disposing of medical biohazards (i.e., medications, sharp containers) and perishables, erosion control, supplying compressed gas for generators and potable drinking water. The damage done by the Camp Fire to the Main Hospital Campus also created potentially unsafe conditions to the public. Fencing was rented and large quantities of debris were removed. A security station was installed in a rented mobile trailer on the Main Hospital Campus and it has been, and continues to be, staffed 24 hours a day.

        (2)     Similar remediation and security activities were completed for the Feather River Health Center locations and, to the extent necessary, all other locations maintained by the Claimants in the town of Paradise.

        (3)     Prior to the Camp Fire, the Main Hospital Campus contained formal landscaped areas and native trees around the buildings and parking lots. As a result of the Camp Fire, in excess of 200 individual landscaped trees were burned. Most are a complete loss and require removal. Additionally, adjacent to the Main Hospital Campus, the Claimants own a mixed woodland. An additional approximately 68 acres of that woodland was heavily damaged, resulting in the loss of hundreds of additional trees. The Claimants have incurred, and will continue to incur, substantial costs for cleanup and remediation of these areas. Pursuant to Cal. Civ. Code § 3346 and Cal. Code Civ. Proc. § 733, the Claimants are entitled to recover three times their damages for these losses and expenses.

Case: 19-30088      Doc# 6174      Filed: 03/06/20      Entered: 03/06/20 15:54:40      Page 64 of 69

(4)     As a result of the Camp Fire, the Claimants were forced to incur the fees and expenses of attorneys and other professionals to advise them on their rights. Additionally, in the aftermath of the Camp Fire, the Claimants incurred numerous miscellaneous out-of-pocket expenses, including for additional labor and storage costs.

(5)     The Claimants provide a self-insured health plan for employees. Because of the cessation of health care services on the Main Hospital Campus and related facilities in the town of Paradise, employees were forced to go to other facilities for their healthcare needs, thereby causing the Claimants to incur additional costs meeting those needs.

(6)     Claimant Adventist Health is self-insured for unemployment benefits. As a result of the Camp Fire, it has become obligated for additional unemployment claims.

(7)     As a result of the Camp Fire, Claimant Adventist Health has been or will be charged substantially higher insurance premiums for the period from October 1, 2019 to September 30, 2020 for less coverage, and will have to either pay massive additional premiums to obtain  coverage similar to what it had previously, or accept substantially greater uninsured risk than it faced before the Camp Fire.

(8)     The Claimants are entitled to recover certain additional amounts from each of the Debtors in connection with the Camp Fire on and after the filing of this Proof of Claim, including, without limitation, any and all attorneys' and other consultants' and professionals' fees and expenses, future costs and repairs, further timber-related losses and expenses, insurance-related costs, and punitive damages. The Claimants hereby reserve all rights to amend this Proof of Claim to assert additional claims against each of the Debtors.

## IV.     RESERVATION OF RIGHTS

1.  This Proof of Claim is filed under the compulsion of the deadline set by the United States Bankruptcy Court for the Northern District of California in these cases for the assertion of prepetition claims against the Debtors. Each of the Claimants reserves, without limitation and to the fullest extent allowed by applicable law, the right to amend, modify, withdraw, renew, extend, restate and/or supplement, for any reason, this Proof of Claim and any of the claims set forth herein, including but not limited to, the recovery of any and all fees, expenses, and interest to which it may be entitled under applicable law. Each of the Claimants further reserves, without limitation, the right to assert any and all additional claims that either of the Claimants may have against either of the Debtors, to the fullest extent allowed by applicable law.

2.  In addition, each of the Claimants reserve, without limitation, all of its defenses and rights, procedural and substantive, and any and all setoff, offset, recoupment, and similar rights under any applicable contract, statute, common law or equitable principle, including any such right that arises post-petition, and shall not be deemed to have waived or released any claim by virtue of it not being liquidated or fixed herein. Each of the Claimants further expressly reserves its right to assert any and all indemnification and/or reimbursement claims that may exist or that may arise under any applicable law, including to the extent that either of the Claimants may become subject to any complaint or cross-complaint asserted or otherwise filed against it, or any other claim asserted against it by any person or entity.

Case: 19-30088     Doc# 6174     Filed: 03/06/20     Entered: 03/06/20 15:54:40     Page 65 of 69

3.  The documents which evidence the facts and claims set forth herein are too voluminous to attach to this Proof of Claim at this time.  Accordingly, the Claimants expressly reserve the right to attach, produce and/or rely upon additional documentation that supports their respective claims and any additional documents that may become available after further investigation or discovery, particularly in light of the minimal time afforded them to both discover and liquidate the extensive nature of the damages which occurred as a result of the Camp Fire.

4.  The filing of this Proof of Claim is not and shall not be deemed or construed as:

      (a)     a waiver or release of the Claimants' right to trial by jury in this court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution;

      (b)     consent by the Claimants to a jury trial in this court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157 or otherwise;

      (c)     consent by the Claimants or waiver or release of the Claimants' right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge;

      (d)     a waiver of the right to move to withdraw the reference with respect to the subject matter of the Proof of Claim, any objection thereto, or other proceeding which may be commenced in these cases against or otherwise involving the Claimants;

      (e)     consent by the Claimants or release of the Claimants' right to contest the venue or jurisdiction of this Court over any bankruptcy case, adversary proceeding, contested matter, or other proceedings;

      (f)     an election of remedies;

      (g)     a waiver of the Claimants' right to claim any prepetition or postpetition interest or all reasonable fees, costs, or charges under the Bankruptcy Code, including sections 503 and 507 thereof;

      (h)     a waiver of the Claimants' right to assert an administrative expense claim under Bankruptcy Code section 503(b) or otherwise;

      (i)     a concession or admission by Claimant of facts with respect to any claims or alleged damages (or the amount thereof);

      (j)     a waiver of any right to the subordination, in favor of the Claimants, of indebtedness or liens held by other creditors of the Debtors;

(k)     a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable; or

(l)     a waiver of any right of Claimant to have any liquidated portion of any claim determined by the Bankruptcy Court.

5.     Discovery is continuing with respect to the nature and extent of the Debtors' wrongful conduct and/or omissions and the damages incurred by the Claimants as a result thereof. Accordingly, the Claimants specifically reserve the right to assert any and all additional rights and claims that have arisen or may arise between or among the parties, including any rights or claims arising after the Petition Date or after the date of this Proof of Claim. The Claimants do not waive or release (and expressly reserve) any claim, right, or right of action, or any power or remedy, that any of the Claimants has or might have against the Debtors, the Debtors' estates, or any other person or entity, including but not limited to FM Global, any insurer of the Debtors, or any other person, company or entity which may have provided any policy of insurance or other agreement to indemnify for losses related to the Camp Fire, regardless of whether such claim, right, or action arises prior to, upon, or after the Petition Date or after the date of this Proof of Claim.

6.     This Proof of Claim is not intended to be, and shall not be construed as, an election of remedies, a waiver of any defaults or a waiver or limitation of any rights, remedies, claims, defenses, or interests of any of the Claimants, including but not limited to any right of setoff, offset, recoupment, a § 502(h) claim, or similar rights or defenses under any agreement, contract, statute, common law, or equitable doctrine. Nothing contained in this Proof of Claim shall limit the rights of the Claimants to file papers or pleadings, or commence any proceedings, or take any actions concerning its claims, liens or security interests. Claimant further reserves its right to pursue claims (including but not limited to the claims described herein) against any of the Debtors based upon additional or alternative legal theories.

7.     This Proof of Claim is filed by the Claimants against each of the Debtors. However, neither of the Claimants is seeking to recover more than 100% of its claim amount in the aggregate from the Debtors.

8.     The Claimants file this Proof of Claim without prejudice and in addition to any other claims of the Claimants that have been listed in any of the Debtors' schedules or may become listed in any of the Debtors' schedules.

| Loss/Expense Category | Amount |
|---|---|
| Costs to Clean-Up, Secure, Repair and Remediate Facilities After Fire (To Date): | |
| ■ Clean-up, immediate repairs and securing sites | $ 3,198,557 |
| ■ Construction and further repairs completed to date | $ 3,449,136 |
| Cost to Repair/Rebuild/Replace Facilities: | |
| ■ Construction and repairs not yet completed (including labor, material and related "soft" costs) | $110,622,586 |
| Timber: | |
| ■ Value of lost landscape trees (including remediation costs) | $ 875,158 |
| ■ Initial treatment and remediation of woodland trees | $ 5,319,500 |
| ■ Additional damages per Cal. Civ. Code § 3346 and Cal. Code Civ. Pro. § 733 | $ 12,389,316 |
| Loss of Inventory/Equipment/Contents of AHFR Locations | $ 14,433,149 |
| Loss of Surplus (Profit): | |
| ■ Loss of surplus (profit) (11/8/18 to 10/31/19) | $ 16,223,272 |
| ■ Value of future lost surplus (profit) (11/19 to 12/24) | $ 70,369,798 |
| ■ Operating losses (11/8/18 to 10/31/19) | $ 39,868,262 |
| ■ Value of future operating losses (11/19 to 12/24) | $ 61,663,375 |
| ■ Additional system-wide charges that cannot be avoided (11/8/18 to 10/31/19) | $ 25,463,291 |
| ■ Value of future additional system-wide charges that cannot be avoided (11/19 to 12/24) | $ 99,386,397 |
| Other Miscellaneous Damages: | |
| ■ Professional fees and expenses as of October 16, 2019 (attorneys, consultants and other professionals) | $ 1,210,412 |
| ■ Miscellaneous Out-of-Pocket Expenses | $ 337,239 |
| ■ Additional employee health plan costs (11/8/18 to 10/31/19) | $ 824,453 |
| ■ Value of future additional employee health plan costs (11/19 onwards) | $ 936,493 |
| ■ Assistance to Camp Fire Assistance Fund (for employees) | $ 500,000 |
| ■ Unemployment insurance claims (2/6/19 to 9/16/19) | $ 1,215,722 |
| ■ Unemployment insurance claims (liability remaining) | $ 1,579,826 |
| ■ Impact on insurance premiums and coverage on policy from 10/1/19 to 9/30/20) | $ 36,164,660 |
| **Subtotal** | **$506,030,602** |
| *Plus*: | |
| Value of Lost Woodland Trees and Cost of Ongoing Mitigation Needs | TBD |
| Contribution and Indemnity Claims for Third Party Liabilities | TBD |
| Other unliquidated amounts | TBD |
| Punitive Damages | $506,030,602 |
| **Total** | **$1,012,061,204** |

# Electronic Proof of Claim_PE!HA27397

Final Audit Report                                                        2019-10-18

| | |
|---|---|
| Created: | 2019-10-18 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA5RaWYUFC2NqmGMqJ5Aa1dEYYGRykCF_k |

## "Electronic Proof of Claim_PE!HA27397" History

📄 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-18 - 3:17:08 PM GMT

🖉 Bill Wing (james.copeland@nortonrosefulbright.com) uploaded the following supporting documents:
🖉 Attachment
2019-10-18 - 3:31:43 PM GMT

📄 Web Form filled in by Bill Wing (james.copeland@nortonrosefulbright.com)
2019-10-18 - 3:31:43 PM GMT- IP address: 38.122.49.122

🖉ₒ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
AppleWebKit/537.36 (KHTML, like Gecko) Chrome/72.0.3626.121 Safari/537.36)
2019-10-18 - 3:31:49 PM GMT- IP address: 38.122.49.122

⊘ Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and Bill Wing
(james.copeland@nortonrosefulbright.com)
2019-10-18 - 3:31:49 PM GMT

Prime Clerk 🌙    POWERED BY
              Adobe Sign