Eric Carlson and Julie Carlson (*in pro per*)
PO Box 407
Calistoga, CA 94515
Email: ecarlson01@me.com

*Individual Fire Victims*

**FILED**

MAR 06 2020

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

-and-

PACIFIC GAS AND ELECTRIC
COMPANY,

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric
　Company
☒ Affects both Debtors
*All papers shall be filed in the lead case,
No. 19-30088 (DM)*

Case No. 19-30088 (DM)
Chapter 11
(Jointly Administered)

**OBJECTION TO FIRE VICTIM CLAIM PLAN TREATMENT SUMMARY IN CONNECTION WITH DISCLSOURE STATEMENT IN SUPPORT OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JANUARY 31, 2020**

Related Dkt Nos. 5978, 5700 & 5732

Hearing: March 10, 2020 at 10:00 a.m.

　　My wife and I are individual fire victims, whose property was damaged in the 2017 Wildfires and we have been dealing with the aftermath of the fires for two years. We have filed a proof of claim in these cases. While I am not represented by counsel, I have read the Fire Victim Claim Plan Treatment Summary (Dkt 5978) and the recently filed Trust Agreement and Claims Resolution Procedures in connection with the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* (the "Plan"). There are two critical issues that I believe must be addressed for the Plan to be confirmed. I have raised these two issues with counsel for the Debtors and counsel for the Tort Creditors' Committee.

1

If these issues are not corrected now, they should be highlighted for other fire victims in the Fire Victims Claim Plan Treatment Summary as they materially impact their rights. The two issues are:

- The Trust provides that the Claims Resolution Procedures can be modified by the Trustee with the consent of a simple majority of the Trust Oversight Committee. The members of the Trust Oversight Committee are not disclosed. Changing the Claims Resolution Procedures is equivalent to changing our plan treatment after the fact. Creditors are voting based on the description of how their claims will be treated. The Claims Resolution Procedures is the document that sets out that treatment. The Court should require that any material modification to the Claims Resolution Procedures should be on notice to all affected parties and approved by this Court. It does not seem right that the rules can be changed after the fact. *If this provision is not modified, the Fire Claim Treatment Summary should include language that advises Fire Claimants that the Claims Resolution Procedures can be changed without notice to any fire claimants or hearing by any Court, by a vote of a majority of the yet to be identified Trust Oversight Committee.*

- The Dispute Resolution Procedures in the Claims Resolution Procedures provide that there is a three-step process that victims go through if they don't agree with their claim determinations. The three steps are: reconsideration, appeal to a single neutral and further appeal to a panel of three neutrals. However, after going through the process of reconsideration, appeal and a panel review, the Trustee can override the Panel decision in his or her sole discretion. This is problematic. Under the Claims Resolution Procedures, judicial review is substituted for an alternative dispute resolution process. However, if one party in the alternative dispute resolution process does not have to abide by the outcome of the appeals process, the appeals process is a farce. This provides inappropriate negotiating leverage to the Trustee to the detriment of victims. **If this is not modified, the Fire Claim Treatment Summary should include language that explains that although there is a process to appeal your claim determination, that determination is not binding on the Trustee and he/she can override the Panel Determination.**

I reached out to the Tort Committee Counsel and tried to resolve these issues. Attached hereto are 1) the response I received from counsel to the Tort Committee when I raised these issues and 2) copies of excerpts of the Takata Disclosure Statement and Trust Agreement which show that what was included in the response from the Tort Committee about Takata was not accurate. Takata disclosed to tort victims the procedures for seeking a judicial remedy and had an "escape hatch" to allow claimants to pursue their claims in the tort system if they did not agree with the resolution in the claims process.

1        I therefore request that the Court order the Debtors to amend the Disclosure Statement to

2  provide the requested language explaining to other fire victims how the proposed Trust works.

3

4  Respectfully,

5

6  Dated:   March 6, 2020

                                   Eric Carlson and Julie Carlson_____

7

8                                     *Individual Fire Victims*

# PGE

March 5, 2020 at 9:51 AM

From "Green, Elizabeth A."

To Eric Carlson

Mr. Carlson

My partner, Cecily Dumas forwarded me the email below. First, I am so sorry that you have suffered as a result of PG&E's conduct. The trust is designed to compensate you and other fire victims for their losses caused by PG&E.

I have spent a great deal of time with the proposed trustee, Justice Trotter and Cathy Yanni ( the proposed Claims Administrator) the trust and CRP were developed with their input, with knowledge of the fact that there is a finite fund to compensate fire victims. The Trustee is charged with protecting the assets of the trust and ensuring their administration in a fair and equitable manner. It is based upon this charge that he must ensure that the CRP can be changed so that all victims are treated equally. In order to place a check on this the TOC needs to approve changes by simple majority . The number of members of the TOC has not yet been determined.

The basis for the Trustee override on the panel award is the ensure that all claimants are treated equally. One panel could award a victim with essentially the claim more than another victim who has his or her case heard before another panel . The goal is to make sure that the finite fund is administered fairly . This provision is common in finite fund bankruptcy trusts, and was included in the Takata trust.

I hope this answers your questions regarding the basis for these provisions. Should you want to discuss this further, I am available on my cell number below.

Regards,

Liz

> My wife and I are individual fire victims, whose property was significantly damaged in the 2017 Wildfires and we have been dealing with the aftermath of the fires for two and half years. We have filed a proof of claim in these cases. While I am not represented by counsel, I have read the proposed summary of fire victim treatment under the Plan and there are two critical issues that I believe must be addressed for the Plan to be confirmed. If these two issues are not fixed, then they need to be highlighted for the fire victims as they materially impact their rights.
>
> The two issues are:
>
> 1) The Trust provides that the Claims Resolution Procedures can be modified by the Trustee with the consent of a simple majority of the Trust Oversight Committee. The members of the Trust Oversight Committee are not disclosed. Changing the Claims Resolution Procedures is equivalent to changing our plan treatment after the fact. Creditors are voting based on the description of how their claims will be treated. The Claims Resolution Procedures is the document that sets out forth that treatment. The Court should require that any material modification to the Claims Resolution Procedures should be on notice to all affected parties and approved by this Court. This is the essence of creditors treatment. It does not seem right that the rules can be changed after the fact. **If this is not modified, the Fire Claim Treatment Summary should include language that advises Fire Claimants that the Claims**

Case: 19-30088   Doc# 6176   Filed: 03/06/20   Entered: 03/06/20 15:59:51   Page 4 of 23

*Resolution Procedures can be changed without notice to any fire claimants by a vote of 4 members of the yet to be identified Trust Oversight Committee.*

2) The Dispute Resolution Procedures in the Claims Resolution Procedures provide that even after going through the process of reconsideration, appeal and a panel review, <u>the Trustee can override the Panel decision in his or her sole discretion</u>. This is also problematic. Under the Claims Resolution Procedures, judicial review is substituted for an alternative dispute resolution process. However, if one party in the alternative dispute resolution process does not have to abide by the alternative dispute resolution process, the process is a farse. This provides inappropriate negotiating leverage to the Trustee. *If this is not modified, the Fire Claim Treatment Summary should include language that explains that although there is a process to appeal your claim determination, that determination is not binding on the Trustee and he/she can override the Panel Determination.*

I understand that the objection deadline to the Disclosure Statement is this Friday. Please let me know by the end of the day Thursday if these will be addressed as I intend to file a short objection in the event they are not.

Regards,

Eric Carlson


Elizabeth Green
Partner
Chair: National Bankruptcy and Restructuring Group
BakerHostetler LLP
P: 407-649-4036
C: 407-928-5105

Sent from my iPhone to avoid delay. Please excuse any typos or misspellings.

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

# TAKATA TRUST

## RELEVENT PAGES

## EXHIBIT N

### PSAN PI/WD Trust Distribution Procedures

RLF1 19056163v.1

and two additional randomly selected Reviewers to review further the single Reviewer's award.[20] The non-appealing party may submit a written response within 30 days of receipt of notice of the appeal of the Reviewer's award. The Review Panel will review the Trustee's choice and application of law using a de novo standard and the Trustee's findings of fact in support of his valuation determination or award, and the amount of the award using a clearly erroneous standard, and shall affirm the Trustee's award unless it finds by majority vote that the Trustee's valuation determination or award was clearly erroneous. If the Review Panel by a majority vote overturns the Trustee's award, the Review Panel may award an amount the majority determines will provide full, fair, and reasonable compensation to the Claimant. Under no circumstances may the Review Panel award more than the single Reviewer award (if the single Reviewer proposed to increase the Trustee award) or less than the single Reviewer award (if she proposed to decrease the Trustee award). The Review Panel may not value an appealed Scheduled Claim outside the Valuation Schedule.

#### 6.3(d)    FCR Conference

The decision of the single Reviewer or the Review Panel (whichever is the final appeal) will be final and binding unless, within 20 days of notification of the Reviewer or Review Panel determination, the Claimant submits a written notification of intent to reject the determination and to proceed in the tort system. For the avoidance of doubt, the Claimant must exhaust all available appeals identified in this section before seeking a conference with the FCR and before

---

[20] For example, if the Trustee awarded a Claimant $100,000 and the Reviewer increases the award above $130,000, or decreases it to less than $70,000 the P-OEM or Claimant may further appeal that decision to a three-person Review panel.

35



opting into the tort system. Upon receipt of a Claimant's notification to reject a determination, the Trustee shall forward the Claim File to the FCR for review and the FCR shall hold a conference with the Claimant and the P-OEM. Before holding such a conference, the FCR will ensure that the Claimant has exhausted all applicable appeals as identified in the TDP. Within 10 days after the conference with the FCR, the Claimant may submit written confirmation to the Trustee of her rejection of the award and intent to proceed in the tort system. If the Claimant does not confirm her intent to reject the award within that 10-day period, the Reviewer's or Review Panel's final determination, as applicable, will be deemed final and binding on all parties.

### 6.4    Litigation in Tort System of P-OEM Claims

After the Claimant has exhausted the Claim Process, including a review and determination by the Trustee, an appeal, and a conference with the FCR, if the Claimant is dissatisfied with the offer made, he may pursue relief in an appropriate jurisdiction of law after submitting written rejection of the PSAN PI/WD Trust's proposed final claim award to the PSAN PI/WD Trust pursuant to the terms of this TDP.

#### 6.4(a)    Proceeding in the Tort System

Any claim must be filed in a state or federal court in the United States by the Claimant within 120 days of the date that the Claimant submits written rejection of the PSAN PI/WD Trust's proposed final claim award or all legal rights will be deemed waived as to the claim against the P-OEM and the Trust. The claim must be filed in her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit, except that claims arising out of a single incident may be brought together in a single

36

action. Except as provided herein, the laws of the applicable jurisdiction will govern all claims filed pursuant to this Section.

Any trial will be limited to the issues of injury causation and valuation/damages only. Liability for all claims, including third party claims of bystander liability and loss of consortium, shall be based on strict liability only. Neither Plaintiff (including consortium and bystander claimants) nor the Trust shall assert any claims or defenses based in negligence including defenses of contributory or comparative fault. To the extent the laws of the applicable jurisdiction do not provide for strict liability, the Claim Parties agree that strict liability will apply to all claims asserting injuries resulting from the PSAN Inflator Defect.

The Trust in such litigation shall not assert as a defense Plaintiff's conduct, including contributory or comparative negligence in causing the underlying accident, or notice of recall, or the statute of limitations or statute of repose defenses. The Trust shall not assert as a defense in any litigation the conduct or negligence of any third-party potential tortfeasor, including but not limited to the Debtors and its affiliated entities, any dealership against whom concurrent liability is asserted, or any dealership or other party against whom independent liability is asserted related to the PSAN Inflator Defect. The P-OEM shall indemnify any third-party defendants against whom the Plaintiff asserts concurrent liability.

If any third-party defendant not indemnified by the P-OEM asserts any comparative or contributory fault as a defense against a Plaintiff, the Trust shall not take any position on those claims or defenses, including but not limited to participating in any written discovery, depositions, or assistance to counsel in pursuing any comparative or contributory negligence against the plaintiff. If any third-party defendant not indemnified by the P-OEM claims that the

37

conduct of the Plaintiff is a complete or partial defense, such defenses will not apply to the claims against the P-OEM or the Trust.

With respect to the Trust and any Participating OEM: (a) No Plaintiff shall assert any cause of action, seek discovery related to, or present any evidence related except as to causation and damages; (b) the Plaintiff shall not seek conduct-based discovery nor present conduct-based evidence at trial; and (c) punitive or exemplary damages cannot be sought and will not be payable.

In the event that there is a verdict for compensable damages and the jury attributes any portion of the damages to the Trust, the Trust shall be responsible for satisfying the full compensatory verdict amount. If a jury apportions fault between the Trust and any other tortfeasor, the Trust shall be responsible for satisfying the full compensatory verdict amount regardless of any apportionment of fault (by cross-claim, third party liability, comparative fault of the plaintiff, or otherwise). Under no circumstances shall the Trust be responsible for any exemplary or punitive damages awarded against any third-party defendant or tortfeasor. Nothing herein shall prevent the P-OEM from pursuing indemnification against any third-party defendant or tortfeasor and the Plaintiff shall assign its rights to pursue any portion of the verdict attributed to a third-party defendant or tortfeasor to the P-OEM. There is no litigation scenario in which the Trust is not responsible for paying the entire compensatory verdict.

If the Plaintiff was alive at the time the Claim Form was filed with the PSAN PI/WD Trust and died during the pendency of the claim, the Plaintiff shall be entitled to all personal injury damages incurred prior to death, regardless of the law of the jurisdiction, in addition to any wrongful death damages arising from his death.

38

The Alabama wrongful death statute shall not apply to any Claims filed in any jurisdiction pursuant to the terms of this TDP. See Ala. Code § 6-5-410 (1975) and Ala. Code § 6-5-391 (1975). Rather, in any wrongful death case in which Alabama law would govern, the Parties agree that the law of the State of Georgia effective as of the date of this TDP will govern the determination of compensation for those wrongful death cases.

In any jury trial, the parties agree to jointly seek the court's approval to include in the court's instructions to the jury the instructions set forth in Exhibit C with appropriate refinements to make them consistent with state law relating to the parties' agreement as set forth in this section.

### 6.4(b)   Payment of Claims in the Tort System

If a P-OEM Claim proceeds in the tort system under the provisions of this TDP and is subsequently liquidated by either a settlement and/or a judgment, the liquidated amount shall be paid by the Trust in the following manner.

Payments of any settlement or judgment in the tort system shall be paid by the Trust as follows:

- **Pretrial Settlement.** If the P-OEM Claim is liquidated by a pretrial settlement and the Claimant received an amount from the Trust ("Trust Award"), 50% of the Trust Award will be paid to the Claimant within 10 days of the pretrial settlement, the lesser of the remaining 50% of the Trust Award or the remaining liquidated balance will be paid on the first anniversary of the settlement, and the remainder of the liquidated value, if any, paid on the second anniversary of the settlement. If the Claimant did not receive a Trust Award, any pretrial settlement will be paid in three equal payments with the first payment made 10 days following the pretrial

39

settlement, the second payment made on the first anniversary of the pretrial settlement, and the final payment made on the second anniversary of the pretrial settlement.

- **No Appeal of a Judgment.** If the P-OEM Claim is liquidated by a judgment and the Claimant received a Trust Award, 50% of the Trust Award will be paid to the Claimant within 10 days of the judgment, the lesser of the remaining 50% of the Trust Award or the remaining liquidated balance will be paid on the first anniversary of the judgment, and the remainder of the liquidated value, if any, will be paid on the second anniversary of the judgment. If the Claimant did not receive a Trust Award, any judgment will be paid in three equal payments with the first payment made 10 days following the judgment, the second payment made on the first anniversary of the judgment, and the final payment made on the second anniversary of the judgment.

- **Appeal of a Judgment by the Trust.** If the Trust appeals a judgment in favor of the Claimant and the Claimant received a Trust Award, 50% of the Trust Award will be paid to the Claimant within 10 days of the judgment, the lesser of the remaining 50% of the Trust Award or the remaining liquidated balance will be paid on the later of the first anniversary of the judgment, any post-trial settlement, or any appellate decision, and the remainder of the liquidated value, if any, one year later. If the Claimant did not receive a Trust Award, the Trust will pay the Claimant one-third of the judgment amount 10 days following the verdict, 50% of the remaining liquidated balance on the later of the first anniversary of the

40

judgment, any post-trial settlement, or any appellate decision, and the remainder of the liquidated value, if any, one year after the second payment.

- **Appeal of a Judgment by the Claimant.** If the Claimant appeals a judgment in favor of the Trust and the Claimant did not receive a Trust Award, and the parties reach a post-trial settlement, the Trust will pay the Claimant in three equal payments with the first payment made 10 days following the settlement.

Any unsatisfied amount of any judgment will be entitled to post-judgment interest under applicable law.

## SECTION 7

### General Guidelines for Liquidating and Paying Claims

#### 7.1    Payment of P-OEM and TD Claims, Including Indirect Claims

Once an award on a P-OEM Claim or TD Claim, including Indirect Claims, is deemed final, the Trustee will initiate the distribution process. The Trustee shall pay the Claimant or Indirect Claimant, subject to the terms of this TDP and the PSAN PI/WD Trust Agreement, the amount of the award. Distributions for Compensable Claims to Claimants not represented by an attorney will be issued by checks mailed to the Claimant's address set forth on the Claimant's Claim Form, which will be negotiable for 90 days. If the Claimant is represented by an attorney, the distribution may be issued by check or by electronic payment to the attorney.

In determining all award amounts, the Trustee will take into account all known outstanding medical liens, if any, currently owed by the Claimant. Claimants shall be responsible for the payment of all medical or other applicable liens. The Claimant will undertake to resolve such liens, and if not done, the Trustee will take over the process. The Trustee will retain the services of a Lien Resolution Administrator to identify, resolve, and satisfy, in accordance with

41

# TAKATA DISCLOSURE STATEMENT

## RELEVENT PAGES

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x

In re                                                  :

TK HOLDINGS INC., *et al.*,                            :

      Debtors.[1]                                 :

-------------------------------------------------------x

**Chapter 11**

**Case No. 17-11375 (BLS)**

**Jointly Administered**

## DISCLOSURE STATEMENT FOR THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF TK HOLDINGS INC. AND ITS AFFILIATED DEBTORS

WEIL, GOTSHAL & MANGES LLP
Marcia L. Goldstein
Ronit J. Berkovich
Matthew P. Goren
Jessica Diab
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors
and Debtors in Possession*

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brett M. Haywood (No. 6166)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Attorneys for the Debtors
and Debtors in Possession*

Dated: January 5, 2018
Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such holders' PSAN PI/WD Claims. **Nothing in the Plan, however, will release any OEM that is not a Participating OEM from liability for a PSAN PI/WD Claim. In addition, the Plan does not release Consenting OEMs for any liability for Claims other than PSAN PI/WD Claims (and for the latter, only for Participating OEMs).**

(i)     **Plan Injunction**

If the Plan is confirmed by the Bankruptcy Court, substantially all of the Debtors' non-PSAN Assets will be purchased by or otherwise transferred to the Plan Sponsor on the Effective Date in accordance with the U.S. Acquisition Agreement free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liabilities and the terms of such sale will be binding and enforceable against all Persons who have held, hold or may hold Claims or Interests against the Debtors as a permanent injunction pursuant to section 10.5(b) of the Plan. Additionally, if the Plan is confirmed by the Bankruptcy Court, all PSAN Assets will vest in each of the Reorganized Debtors on the Effective Date free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind, except any such Claims, Interests, Liens, other encumbrances, and liabilities of any kind of the Consenting OEMs against the Debtors to which Reorganized Takata will remain obligated under the Plan or as otherwise provided in the Plan.

(j)     **Channeling Injunction**

In order to supplement the injunctive effect of the Plan Injunction set forth in section 10.5 of the Plan and the Releases set forth in section 10.6 of the Plan for PSAN PI/WD Claims, the Plan provides for the Channeling Injunction to take effect as of the Effective Date to permanently channel all PSAN PI/WD Claims against the Protected Parties[28] to the PSAN PI/WD Trust, which will forever stay, restrain, and enjoin all Persons that have held or asserted, or that hold or assert any PSAN PI/WD Claims against the Protected Parties from taking any action to directly or indirectly collect, recover, or receive payment, satisfaction, or recovery from any such Protected Party. Additionally, the transfer to, vesting in, and assumption by the PSAN PI/WD Trust of the PSAN PI/WD Funds will release all obligations and liabilities of and bar recovery or any action against the Protected Parties for or in respect of all PSAN PI/WD Claims.

---

[28] "**Protected Party**" means (i) the Debtors' non-Debtor affiliates (including the Acquired Non-Debtor Affiliates), (ii) Reorganized Takata, (iii) the Participating OEMs, (iv) the Plan Sponsor Parties, and (v) with respect to each of the foregoing Persons in clauses (i) through (iv), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers, directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, as applicable. "**Plan Sponsor Parties**" means, individually or collectively, the Plan Sponsor and any Person that makes a loan to or investment in the Plan Sponsor for purposes of consummating the sale of the Purchased Assets to the Plan Sponsor pursuant to the Plan. The Plan Sponsor Parties include Joyson KSS Auto Safety, S.A. and its current and future subsidiaries and affiliates; Deutsche Bank AG, Tokyo branch; Mizuho Bank, Ltd.; China Merchants Bank Co., Ltd., New York Branch; Industrial and Commercial Bank of China Limited; Ningbo Joyson Electronic Corp; and Bain Capital.

33

In other words, all PSAN PI/WD Claims against the Protected Parties may be asserted only and exclusively against the PSAN PI/WD Trust.

With respect to the Consenting OEMs, the Channeling Injunction will channel PSAN PI/WD Claims against any Consenting OEM (a "***Participating OEM***") that contributes certain consideration to the PSAN PI/WD Trust (the "***PSAN PI/WD Top-Up Amount***") in accordance with an agreement, to be filed with the Plan Supplement on or before January 23, 2018, between the PSAN PI/WD Trustee and the applicable Participating OEM with respect to such Participating OEM's commitment to fund its PSAN PI/WD Top-Up Amount (a "***Participating OEM Contribution Agreement***").

Accordingly, the Channeling Injunction provides for a non-jury resolution process administered by a court-appointed Trustee in an attempt to provide final, fair, and efficient resolution of PSAN PI/WD Claims against the Participating OEMs brought by claimants injured as a result of the PSAN Inflator Defect. The Channeling Injunction could eliminate the need for prolonged court involvement and the accompanying disruption caused by the traditional legal process. The Channeling Injunction will provide payment to holders of PSAN PI/WD Claims (which qualify for payment pursuant to **Exhibit F** attached hereto)[29] against the Participating OEMs for injuries caused by the PSAN Inflator Defect from a confirmed rupture or aggressive deployment of a PSAN Inflator pursuant to a valuation matrix in which compensation will be awarded based upon the injury type and severity of the injury. Compensation determinations will be made by the PSAN PI/WD Trustee, initially Professor Eric Green (unless he is unable or unwilling to serve in such capacity), who was previously appointed as the Special Master to administer the separate Takata personal injury restitution fund. The Channeling Injunction provides for an individualized analysis of a claimant's injuries, an appeal process, and prompt payment of approved claims.

The currently proposed resolution process will impose certain conditions on the claimant's pursuit of a Claim in the tort system. Under the Channeling Injunction, to qualify for payment of an aggressive deployment Claim, the holder must, among other requirements, make the vehicle and inflator available for inspection. It is not definitive what would happen to those Claims in the tort system if the vehicle and inflator were not available. Holders of PSAN PI/WD Claims may not file future litigation against any Participating OEM alleging injury caused by the PSAN Inflator Defect, until he or she has completed the Channeling Injunction process and meets certain other requirements. In any case subsequently brought in the tort system, the claimant may not pursue or receive punitive damages against the Participating OEM. Any trial would be limited to the cause of the claim holder's injuries and the resulting damages, if any. The Participating OEM, however, agrees to waive legal defenses related to the claimant's conduct, including comparative negligence, as well as the defenses of the statute of limitations and statute of repose, where applicable, that could bar or significantly reduce any recovery by the claimant in the tort system. Whereas the full payment of PSAN PI/WD Claims resolved pursuant

---

[29] **Exhibit F** to this Disclosure Statement is a description of the PSAN PI/WD Claims that are subject to the Channeling Injunction in favor of the Participating OEMs and injury valuation schedules. **Exhibit F** addresses PSAN PI/WD Claims asserted against Participating OEMs and, as a result, only addresses PSAN PI/WD Claims of the type described in clause (ii) of the Plan's definition thereof. Accordingly, no inference may be drawn from **Exhibit F** that a PSAN PI/WD Claim is compensable by, or may be pursued against, any party other than the PSAN PI/WD Trust



to the Channeling Injunction will be made within a short period after resolution, payment of any settlement reached after the initiation of a tort action or judgment obtained will be made in five (5) equal yearly installments without interest with the first installment due thirty (30) days after entry of the final judgment or dismissal of the case.

Individual Consenting OEMs may elect to become Participating OEMs during the later of (i) ninety (90) days following the conclusion of the hearing on approval of the Disclosure Statement and (ii) thirty (30) days following the Effective Date (the "*Initial Opt-In Period*"). Individual Consenting OEMs may extend their opt-in period by an additional period of time after the conclusion of the Initial Opt-In Period by executing an opt-in extension agreement and remitting an option payment that is acceptable to the PSAN PI/WD Trustee, the Future Claims Representative, the PSAN PI/WD Trust Advisory Committee, the PSAN PI/WD OEM Advisory Committee, and such Consenting OEM. The Consenting OEMs that have indicated their election to become a Participating OEM at or before the conclusion of the hearing with respect to the Disclosure Statement (the "*Initial Participating OEM(s)*") are listed on Exhibit 3 attached to the Plan, with such election being subject to the terms and conditions set forth on Exhibit 3.[30]

On the date the Channeling Injunction becomes effective with respect to an individual Participating OEM (or at such later date as may be otherwise agreed to), each Participating OEM will deliver an executed Participating OEM Contribution Agreement to the PSAN PI/WD Trust. The Participating OEM Contribution Agreement will require a Participating OEM to make quarterly contributions to the PSAN PI/WD Trust in the amount of the PSAN PI/WD Claims associated with such Participating OEM's vehicles that are liquidated and entitled to payment during the quarterly period after application of the payments specified above.

As discussed above, the Plan provides that if the Channeling Injunction is approved as to a Participating OEM, holders of PSAN PI/WD Claims against such Participating OEM will have their Claims satisfied in an amount equal to the full value of the PSAN PI/WD Claims as described in **Exhibit F** attached hereto (which shall be incorporated into the PSAN PI/WD Trust Agreement and the PSAN PI/WD TDP). Payments to satisfy such PSAN PI/WD Claims shall be funded from (i) the applicable PSAN PI/WD Insurance Proceeds, if any, that provide coverage for such Claims, (ii) any portion of the IIM Available Cash, SMX Available Cash, TDM Available Cash, or TKH Available Cash allocated to the PSAN PI/WD Funds in accordance with the Plan, (iii) the DOJ PI/WD Restitution Fund, if acceptable to the Special Master, and (iv) the PSAN PI/WD Top-Up Amounts (as defined herein) with respect to any amount remaining to be paid on such PSAN PI/WD Claims after application of the funds described in clauses (i) through (iii)[31]; *provided, however* that such PSAN PI/WD Top-Up

---

[30] The Initial Participating OEM(s) consist of American Honda Motor Co., Inc. and its subsidiaries and affiliates.

[31] If any applicable PSAN PI/WD Insurance Proceeds are not available to pay the PSAN PI/WD Claims at the time they are liquidated as part of the PSAN PI/WD Claims protocol, the applicable Participating OEM shall advance to the PSAN PI/WD Trust all amounts required to make full timely payment that the holder(s) of such PSAN PI/WD Claims is entitled to receive from the PSAN PI/WD Trust. The PSAN PI/WD Trust shall reimburse the applicable Participating OEM for any such advances solely from the PSAN PI/WD Insurance Proceeds paid on account of the claim on which the advance was made.

Amounts shall only be utilized to pay Claims related to vehicles sold by the applicable Participating OEM.

Please note that the terms and conditions of **Exhibit F** were negotiated by and have the support of the Initial Participating OEM(s), the Future Claims Representative, and attorneys from the law firm Motley Rice ("*Resolution Counsel*"), which represents certain current holders of PSAN PI/WD Claims.[32] The negotiations regarding the terms and conditions of **Exhibit F** did not include the Debtors or the Plan Sponsor and, as a result, such terms and conditions do not reflect comments or input from the Debtors or the Plan Sponsor. Notwithstanding the foregoing, the Debtors agree with the general structure and substance of **Exhibit F** and continue to evaluate the adoption of such structure and injury valuation schedules in order to resolve and administer all PSAN PI/WD Claims, including those against the Debtors.

While the Future Claims Representative and Resolution Counsel have agreed with the Initial Participating OEM(s) on the claims protocol and injury valuation schedules reflected in **Exhibit F** with respect to PSAN PI/WD Claims against Participating OEMs that will be channeled to the PSAN PI/WD Trust, the Future Claims Representative and Resolution Counsel have not agreed to the terms of funding the PSAN PI/WD Trust or PSAN PI/WD Trust Reserve or to the terms upon which Consenting OEMs may elect to become Participating OEMs, as proposed in the Plan. The Future Claims Representative and Resolution Counsel reserve all of their rights in these Chapter 11 Cases, including with respect to filing objections to confirmation of the Plan, approval of the Global Transaction, issues relating to the DOJ OEM Restitution Fund, and the Claims submitted by the Consenting OEMs, including the Adequate Protection Claims.

In addition to the governance structure for the PSAN PI/WD Trust reflected in the Plan, it is expected that Resolution Counsel will play a lead role, on behalf of holders of current PSAN PI/WD Claims, in selecting the initial members of the PSAN PI/WD Trust Advisory Committee and negotiating the definitive documents for the PSAN PI/WD Trust, including the PSAN PI/WD Trust Agreement, the PSAN PI/WD TDP, and each Participating OEM Contribution Agreement. After the Effective Date, the parties also expect that Resolution Counsel will assist the PSAN PI/WD Trust, the PSAN PI/WD Trustee, and the PSAN PI/WD Trust Advisory Committee with activities that may be required to ensure that the PSAN PI/WD Trust is in a position to begin processing PSAN PI/WD Claims as quickly and efficiently as possible. Reasonable compensation for Resolution Counsel's work in designing, negotiating, and implementing the Channeling Injunction and PSAN PI/WD Trust, both prior to and after the

---

[32] In addition, as set forth in Exhibit 3 to the Plan, certain Consenting OEMs have elected to become Participating OEMs in advance of the Disclosure Statement hearing. The election by each such Consenting OEM to become a Participating OEM (and an Initial Participating OEM) is subject in all respects to (i) the confirmation and effectiveness of the Plan in form and substance acceptable to the Participating OEM(s), (ii) the entry of the Confirmation Order by the Bankruptcy Court and, if required, the District Court (solely with respect to the Channeling Injunction) in form and substance acceptable to the Participating OEM(s), (iii) negotiation and execution of definitive documents governing the PSAN PI/WD Trust and the payment of such Participating OEM(s)' PSAN PI/WD Top-Up Amount, including the PSAN PI/WD Trust Agreement, the PSAN PI/WD TDP, and the Participating OEM Contribution Agreement, in each case in form and substance acceptable to the Participating OEM(s), and (iv) the appointment of Eric Green as the PSAN PI/WD Trustee or, if Eric Green declines or is unable to fill the appointment, the appointment of an initial PSAN PI/WD Trustee (if applicable) or a PSAN PI/WD Trustee that is acceptable to the Participating OEM(s).

Petition Date, including post-Effective Date assistance to the PSAN PI/WD Trust, will be paid by the Participating OEMs in accordance with a payment allocation agreement to be entered into between Resolution Counsel and the Participating OEMs.

Importantly, in addition to other conditions set forth in the Plan, the Participating OEMs will not receive the benefits of the Channeling Injunction and the releases by holders of PSAN PI/WD Claims without (i) the Future Claims Representative's consent and (ii) a determination by the Bankruptcy Court or the District Court, as applicable, that holders of PSAN PI/WD Claims in each applicable Class voting on the Plan have indicated their acceptance of the Channeling Injunction in a sufficient number within each such Class to support issuance of the Channeling Injunction for the benefit of the applicable Participating OEM. The effectiveness of the Channeling Injunction and Releases by Holders of PSAN PI/WD Claims for the benefit of any Protected Party is not a condition to the Effective Date.

Additional details of the Channeling Injunction claims process, including the appeal process and requirements for access to the tort system, are under negotiation by the parties and will be provided as part of the Plan Supplement.

## II.   INTRODUCTION TO THE DISCLOSURE STATEMENT AND PLAN VOTING AND SOLICITATION PROCEDURES

### 2.1   *Purpose of the Disclosure Statement*

The purpose of the Disclosure Statement is to set forth information that (i) summarizes the Plan and alternatives to the Plan, (ii) advises holders of Claims and Interests of their rights under the Plan, (iii) assists creditors entitled to vote in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

By order dated January [__], 2018 [Docket No. __] (the "*Approval Order*"), the Bankruptcy Court approved this Disclosure Statement, finding that it contains "adequate information," as that term is used in section 1125(a)(1) of the Bankruptcy Code. However, the Bankruptcy Court has not ruled on the merits of the Plan. Creditors should carefully read the Disclosure Statement, in its entirety, before voting on the Plan. This Disclosure Statement and the attached Plan, including their respective exhibits, are the only materials creditors should use to determine whether to vote to accept or reject the Plan. Pursuant to the Approval Order, the Court approved certain modified procedures with respect to the solicitation and tabulation of votes on the Plan from individuals who own, or may have owned, vehicles equipped with PSAN Inflators manufactured or sold by the Debtors (each such individual a "*Potential PSAN Inflator Claimant*" or "*PPIC*" and, collectively, the "*PPICs*").

### 2.2   *Disclosure Statement Enclosures*

(a)   **Solicitation Packages.** The Debtors will mail or cause to be mailed solicitation packages (the "*Solicitation Packages*") containing the information described below as soon as practicable after entry of the Approval Order. With respect to any PPIC that registered an email address with the Solicitation Agent (as defined herein) in connection with the

Certificate of Service:

I have served the attached document on the following parties by email:

(A) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. (stephen.karotkin@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), and Matthew Goren, Esq. (matthew.goren@weil.com)),

(B) Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, California 94108 (Attn: Tobias S. Keller, Esq. (tkeller@kellerbenvenutti.com) and Jane Kim, Esq. (jkim@kellerbenvenutti.com)),

(C) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019 (Attn: Paul H. Zumbro, Esq. (pzumbro@cravath.com), Kevin J. Orsini, Esq. (korsini@cravath.com), and Omid H. Nasab, Esq. (onasab@cravath.com));

D. The U.S. Trustee, 450 Golden Gate Avenue, 5th Floor, Suite 05-0153, San Francisco, California 94102 (Attn: James L. Snyder, Esq. (James.L.Snyder@usdoj.gov) and Timothy Laffredi, Esq. (Timothy.S.Laffredi@usdoj.gov));

E. The attorneys for the administrative agent under the Debtors' debtor-in-possession financing facility, (A) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982 (Attn: Kristopher M. Hansen, Esq. (khansen@stroock.com), Erez E. Gilad, Esq. (egilad@stroock.com), and Matthew G. Garofalo, Esq. (mgarofalo@stroock.com)) and (B) Stroock &Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067-3086 (Attn: Frank A. Merola, Esq. (fmerola@stroock.com));

F. The attorneys for the collateral agent under the Debtors' debtor-in-possession financing facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut, Esq. (eli.vonnegut@davispolk.com), David Schiff, Esq. (david.schiff@davispolk.com), and Timothy Graulich, Esq. (timothy.graulich@davispolk.com));

G. The attorneys for the CPUC, Paul, Weiss, Rifkind, Wharton & Garrison LLP,1285 Avenue of the Americas, New York, New York 10019-6064 (Attn: Alan W. Kornberg, Esq. (akornberg@paulweiss.com), Brian S. Hermann, Esq. (bhermann@paulweiss.com), Walter R. Rieman, Esq. (wrieman@paulweiss.com), Sean A. Mitchell, Esq. mitchell@paulweiss.com<mailto:mitchell@paulweiss.com>), and Neal P. Donnelly, Esq. (ndonnelly@paulweiss.com));

H. The attorneys for the Creditors Committee, (A) Milbank LLP, 55 Hudson Yards, New York, New York 10001-2163 (Attn: Dennis F. Dunne, Esq. (DDunne@milbank.com) and Samuel A. Kahlil, Esq. (skhalil@milbank.com)<mailto:skhalil@milbank.com>) and (B) Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067 (Attn:

Gregory A. Bray, Esq. (GBray@milbank.com) and Thomas R. Kreller, Esq. (TKreller@milbank.com));

I. The attorneys for the Tort Claimants Committee, (A) Baker & Hostetler LLP,1160 Battery Street, Suite 100, San Francisco, California 94111 (Attn: Robert A. Julian, Esq. (rjulian@bakerlaw.com) and Cecily A. Dumas, Esq.(cdumas@bakerlaw.com)) and (B) Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California, 90025-0509 (Attn: Eric E. Sagerman, Esq. (esagerman@bakerlaw.com) and Lauren T. Attard, Esq. (lattard@bakerlaw.com ));

J. The attorneys for the Ad Hoc Group of Subrogation Claim Holders, (A) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Matthew A. Feldman, Esq. (mfeldman@willkie.com), Joseph G Minias Esq. (jminias@willkie.com), Benjamin P. McCallen Esq. (bmccallen@willkie.com), and Daniel I. Forman Esq. (dforman@willkie.com<mailto:dforman@willkie.com>) and (B) Diemer & Wei, LLP, 100 West San Fernando Street, Suite 555, San Jose, California 95113 (Attn: Kathryn S. Diemer (kdiemer@diemerwei.com));
K. The attorneys for the Shareholder Proponents, Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300 (Attn: Bruce S. Bennett, Esq. (bbennett@jonesday.com), Joshua M. Mester, Esq. (jmester@jonesday.com), and James O. Johnston, Esq. (jjohnston@jonesday.com)); and

L. The attorneys for the Ad Hoc Committee of Senior Unsecured Noteholders, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036 (Attn: Michael S. Stamer, Esq. (mstamer@akingump.com), Ira S. Dizengoff, Esq. (idizengoff@akingump.com), David H. Botter, Esq. (dbotter@akingump.com), Abid Qureshi, Esq. (aqureshi@akingump.com) and (B) Akin Gump Strauss Hauer & Feld LLP, 580 California Street, Suite 1500, San Francisco, California 94104 (Attn: Ashley Vinson Crawford, Esq. (avcrawford@akingump.com)).