Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO PROPOSED DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION [DKT NO. 5700]**<br><br>Date: March 10, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

The Official Committee of Tort Claimants (the "**TCC**") of the above-captioned debtors (collectively, the "**Debtors**") files this limited objection and reservation of rights ("**Limited Objection**") to the *Proposed Disclosure Statement for the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* (the "**Disclosure Statement,**" and **"Plan,"** respectively) [Dkt. Nos. 5700 and 5590].[1]

# LIMITED OBJECTION

As of the date of this Limited Objection, the TCC is unable to support approval of the Debtors' Disclosure Statement in its current form and does not believe it provides sufficient information for fire victims to vote on the Plan. As of the date hereof, the TCC does not intend to include a letter supporting the Plan in any solicitation package related to the Plan and Disclosure Statement. The TCC files this Limited Objection to identify its concerns and explain its position that the Debtors need to provide additional information regarding the Debtors' proposed capital structure, financing issues and timing of funding, and potential dilution issues because of the form, type and quantum of consideration anticipated to be owned by the proposed Fire Victim Trust.

The TCC acknowledges that the Debtors have accepted many of the TCC's substantive changes to the Disclosure Statement and have significantly revised the Disclosure Statement to include additional information regarding the Debtors revised capital structure. However, as set forth below, the TCC does not believe the disclosure is sufficient, and is willing to work with the Plan Proponents to draft additional disclosures addressing the TCC's concerns.

## I. The Debtors' New Exit Financing Framework.

In December 2019, the TCC, Debtors, and certain other parties entered into a Restructuring Support Agreement, under which the Debtors agreed pursuant to a plan to fund the Fire Victim Trust with (i) $6.75 billion in cash, (ii) $6.75 billion in New HoldCo Common Stock, and (iii) the assignment of certain causes of action. [Dkt. Nos. 5038, 5143, 5174] ("**Tort Claimant RSA**"). In exchange, Fire Victim Claims would be channeled to the Fire Victim Trust and satisfied solely from the Fire Victim Trust's assets that would be funded on or before August 29, 2020. Because roughly half of the Fire Victim Trust's assets may consist of New HoldCo Common Stock, the

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan (as defined herein).

value and stability of that stock is critical to the Fire Victim Trust's ability to successfully fulfil its purpose of evaluating and paying Fire Victim Claims in a fair and reasonable manner. Throughout the time periods during which the Tort Claimant RSA was negotiated, executed, and ultimately approved by the Court, the Debtors' proposed exit financing contemplated an infusion of approximately $12 billion in new equity and approximately $34.4 billion in new debt [Dkt. Nos. 5267 and 6013].

Three days ago, on March 3, 2020, the Debtors filed Debtors' Second Amended Motion for Entry of Orders (I) Approving Terms of, and Debtors' Enter Into and Performance Under, Equity Backstop Commitment Letters, (II) Approving Terms of, and Debtors' Entry Into and Performance Under, Debt Financing Commitment Letters, and (III) Authorizing Incurrence, Payment and Allowance of Related Fees and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims [Dkt. No. 6013] (the "**New Exit Financing Motion**"), which proposes to substantially change the Debtors' proposed exit financing structure. The Debtors now contemplate raising only approximately $9 billion in new equity (a roughly $3 billion reduction in new equity) and incurring approximately $38.1 billion in debt that would have liquidating preference over the Fire Victim Trust's shares of New HoldCo Common Stock (a roughly $3.7 billion increase in debt). As part of this new framework, Pacific Gas and Electric Company (the "**Utility**") intends to issue approximately $6 billion in temporary debt that would mature and need to be refinanced in the near term, although the specific terms of that temporary financing are unknown. The New Exit Financing Motion also seeks protection for the commitment parties for their fees associated with New Exit Financing Motion if the stock value were to decline. See Disclosure Statement § 4(e).

The TCC is concerned that the Debtors' revised capital structure as outlined in the New Exit Financing Motion has the potential to significantly and negatively affect the market value of New HoldCo Common Stock – one of the most important assets available to pay fire victims. It is also unclear whether the revised financing structure will impact the Debtors' exit financing timing. The TCC and its professionals are working diligently to obtain and analyze relevant documents and information relating to the new proposed exit financing structure. This information is critical to the TCC's and the fire victims' ability to evaluate the potential effects of the Debtors' proposed

changes to its capital structure on the going-forward value of New HoldCo Common Stock and financial stability of the Reorganized Debtors. For example, depending on their respective terms, the temporary debt to be issued by Utility could create substantial short-term refinancing risk and the proposed increased debt obligations could impact the Reorganized Debtors or the going-forward value of New HoldCo Common Stock owned by the Fire Victim Trust. While the California Public Utilities Commission is the regulatory body tasked with reviewing the viability of the Debtors' capital structure, there is insufficient information contained in the Disclosure Statement for a fire victim to assess the valuation and timing issues related to the Debtors' revised exit financing. While the Tort Claimant RSA provides an outside funding date for the Fire Victim Trust of August 29, 2020, the Debtors have included a later outside Effective Date in the Plan of December 31, 2020. The combination of the potential for reduction in equity and delay until the outside date make the Disclosure Statement inadequate at this time.

While the TCC believes the Fire Victim Trust is entitled to dilution protection or incremental equity for any additional shares that would be issued post-Effective Date in connection with the exit financing fees, the potential impacts of this should be included in the Disclosure Statement. Dilution protection may also be necessary to protect against new shares being issued under the Backstop Agreement and other aspects of the revised capital structure. Furthermore, the Plan Proponents and Debtors have represented that they will work cooperatively with the TCC and the Consenting Fire Claimant Professionals to negotiate an agreement governing the relative rights of certain large shareholders and the Fire Victim Trust with respect to the New HoldCo Common Stock, which agreement may have a material impact on the Fire Victim Trust's ability to sell its New HoldCo Common Stock. Since that agreement has not been negotiated, the Disclosure Statement is unable to adequately describe those rights or obligations and their potential effects on the Fire Victim Trust.

For these reasons, the TCC at this point is unable to support approval of the Disclosure Statement and does not intend to include a letter supporting the Plan in any solicitation package related to the Plan and Disclosure Statement. The need for appropriate disclosure is all the more important in these cases given the need for fire victims to provide informed consent under

ABA Model Rule 1.8(g) to the settlement embodied in the Tort Claimant RSA and Plan.  The TCC reserves all of its rights in connection with the Debtors' New Exit Financing Motion, the Plan, and the Disclosure Statement, including rights relating to the continued viability of the Tort Claimant RSA.

## II.      Proposed Changes to the Disclosure Statement.

The TCC submits that the Debtors must supplement the Disclosure Statement to (i) include the chart of Government Claims asserted against the Fire Victim Trust attached hereto as **Exhibit A,** and (ii) adequately address the concerns set forth herein.  As stated above, the TCC is willing to work with the Plan Proponents to draft additional disclosures addressing the TCC's concerns.

WHEREFORE, the TCC respectfully requests that the Court require the Debtors to supplement the Disclosure Statement as set forth herein, and grant all other relief that is appropriate under the circumstances.

Dated: March 6, 2020

BAKER & HOSTETLER LLP

By:   */s/ Elizabeth Green*
         Elizabeth Green

*Counsel to the Official Committee of Tort Claimants*