Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:    415.659.2600
Facsimile:    415.659.2601
Email:   rjulian@bakerlaw.com
Email:   cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:   esagerman@bakerlaw.com
Email:   drichardson@bakerlaw.com
Email:   lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>        -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                                       **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO ESTABLISH PROCEDURES FOR DISCOVERY PRECEDING PLAN CONFIRMATION  [DKT. NO. 5840]**<br><br>**Hearing:**<br>**Date:**    **March 10, 2020**<br>**Time:**    **10:00 a.m. (Pacific Time)**<br>**Place:**   **Courtroom 17**<br>            **450 Golden Gate Ave., 16th Fl.**<br>            **San Francisco, CA 94102** |

The TCC[1] hereby files this supplemental brief re: its Motion for entry of an order establishing procedures for resolution of discovery disputes in connection with plan confirmation.

## INTRODUCTION

The TCC's Motion was filed to ensure due process in connection with a Plan confirmation objection that the Official Committee of Unsecured Creditors (the "UCC") told this Court it is likely to file, objecting on feasibility grounds to the Debtors' assignment of the Assigned Claims to the Fire Victim Trust. The TCC responded by informing this Court that it would take discovery of the contractors' insurance and contract information in advance of Plan confirmation briefing, and nobody objected. This is the issue that drove the TCC's subpoenas and Motion.

The UCC's potential Plan objection is not a mere issue of law. It will require substantial fact discovery. If the TCC is barred from taking discovery at this time and the UCC files its objection on May 15, 2020, the TCC will have one week to obtain all necessary fact discovery and draft a reply brief, which will be a denial of due process unless the confirmation schedule is continued by several weeks (which could imperil the Debtors' June 30, 2020 deadline).

The TCC's Motion was filed to protect due process rights, not deprive parties of due process as argued in the coordinated opposition briefs. There is already an expedited discovery process in these Cases that applies to the TCC's discovery, and modifies the rights of discovery parties under F.R.C.P. 45 and F.R.B.P. 9014. But that procedure has proven to be insufficient in the case of subpoena recipients who refuse to acknowledge its application. Hence, the Motion.

## DISCUSSION

**A. The UCC Plan Objection and the TCC's Announcement of Discovery to be Taken**

The TCC explained in its Motion that its discovery is necessary because of an expected confirmation objection going to "whether the litigation that will arise from the Assigned Claims will imperil the Debtors' ability to comply with AB 1054 on a post-confirmation basis." Motion at p. 3:10-11. This is a reference to the position taken by UCC counsel Greg Bray at the hearing on December 17, 2019 (the "RSA Hearing") to approve the TCC's Restructuring Support Agreement ("RSA"). Mr. Bray explained to the Court that litigation by the future Fire Victim

---

[1] Capitalized terms not defined herein carry the meaning ascribed to them in the Motion.

Trust against vendors (the "Contractors") could make it difficult for the Debtors to obtain the Contractors' services that are needed for compliance with state laws and regulations:

> MR. BRAY: It is, Your Honor, and just one final comment back to the assignment of the vendor claims.
>
> THE COURT: Yeah, right.
>
> MR. BRAY: I don't have an answer for you about this today, or a proposed solution, other than it's a significant problem, and we think it may actually going to the ability by 1054 --
>
> THE COURT: Well, and that's right, and if the debtor and TCC worked a deal that chancers away the debtor's ability to comply with 1054, then do you know what? Be careful what you wish for. But that's not a today issue, I don't think.
>
> MR. BRAY: It's really more of a plan, 1054 issue.

*See* Transcript of Proceedings on 12/17/19, p. 186:9-25, excerpts from which is filed herewith as **Exhibit A** to the Supplemental Declaration of David Richardson (the "Supp. Decl.").

If any party in interest files such a confirmation objection, it will not be a simple issue of law, like post-petition interest or inverse condemnation. A confirmation challenge based on the theory that the Debtors cannot obtain Contractors' services in the event of Trust litigation will require intensive development of fact evidence pertaining to <u>every</u> potential defendant, including:

- Whether the Debtors are "additional insureds" under the Contractor's insurance policy (as required by the Debtors), which would create direct rights of recovery that may obviate the need to sue such a contractor;
- Whether the Contractor is still performing services for the Debtors;
- The nature of renewal rights in the Contractor's insurance policy;
- Whether premiums have already increased in response to future wildfire risks;
- Any claims made against, or proceeds paid from, such policies; and
- The services provided by the Contractor that may relate to fire causation.

Because of the need for substantial fact discovery, and because the discovery obtained from the Debtors thus far has been insufficient to properly address all of these issues, Mr. Julian

responded to Mr. Bray's statements at the RSA Hearing by stating that the TCC would take discovery of the Contractors to obtain necessary documents such as insurance policies:

> THE COURT: Well, but whether you bring claims against them or not, the question is will they be -- or will someone in their place, if they're not the ones -- in a position to do what the company needs to do to satisfy the governor and the CPUC about all the remediation that's necessary to avoid 2020 and 2021 fires, and beyond.
>
> MR. JULIAN: Your Honor, our constituency will have 20.9 percent of the common stock of this company. We are very focused on making sure this company is wildfire safe, and that its vendors are not overburdened with litigation. So we have the eye on the ball. **We will present evidence to you, though, at plan confirmation, after taking the deposition of Davey Tree and the rest of them, over their insurance policies – that will show that this will not impact the reorganized debtor**.

*Id.* at p. 250:16 – 251:4 (emphasis added).

No one objected at the time. The TCC then proceeded with its announced discovery.

**B. The History of the TCC's Discovery Efforts**

Contrary to the claims put forward in the coordinated objections, the TCC didn't just start seeking this information now. The TCC filed a Motion for a 2004 exam of the Debtors in April 2019 [Dkt. No. 1767], which sought Contractor insurance and contract information, and was approved in an order entered by this Court following certain negotiations and revisions. *Id*. at ¶ 4.

In response to the 2004 exam order and other discovery efforts undertaken by the TCC, the Debtors produced some relevant documents, including information listing the Contractors most likely to be connected to wildfire liabilities. But the Debtors' minimal productions have been woefully insufficient to address the issues that will be necessary for a response to a UCC Plan objection. *Id*. It remains unclear whether the reason for that is poor record-keeping or insufficient effort. But the TCC has continued to engage with the Debtors and continues to demand a better response from the Debtors if such documents are in the Debtors' possession.

1 　　　　　The discovery required to address the UCC's anticipated Plan objection cannot be
2 obtained simply by making repeated demands on the Debtors. For this reason, and consistent
3 with Mr. Julian's statement at the RSA Hearing, the TCC issued its subpoenas.
4 **C. Due Process Requires that the TCC Be Able to Conduct Fact Discovery in Advance of a
5 　　UCC Plan Objection**
6 　　　　　The TCC believes that its service of subpoenas was the proper process to obtain evidence
7 for Plan confirmation, as the TCC contends that Plan confirmation is already a contested matter,
8 at least with respect to the potential UCC objection outlined by Mr. Bray at the RSA Hearing. *In
9 re Brice*, 2019 Bankr. LEXIS 3026 *10, fn 7, 2019 WL 5783269 (Bankr. D. Nev. September 12,
10 2019) ("Because plan confirmation is likely to be a contested matter, nothing prevents Firebird or
11 any other party in interest from initiating discovery under FRBP 9014(c), including taking the
12 deposition of any renters of the Jeeves Property or customers of RCB Custom Units.").
13 　　　　　Plan confirmation in these Cases is scheduled from an immovable end-date, unlike an
14 ordinary chapter 11 case where confirmation starts on a given date and simply takes as long as it
15 takes. If this Court were to follow the case law cited by the objecting Contractors, a "contested
16 matter" would not be created until May 15, 2020, when Plan objections are due. The TCC's reply
17 brief would be due one week later, allowing only one week to serve discovery, resolve the
18 massive objections already before this court, take depositions, receive and review documents,
19 compel production by those who refuse to comply, and prepare a reply brief. Any effort to
20 comply with that schedule would be a denial of due process. *See Logan v. Zimmerman Brush Co.*,
21 455 U.S. 422, 437, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) (Due Process Clause requires that a
22 claimant be given "an opportunity . . . granted at a meaningful time and in a meaningful manner,
23 for [a] hearing appropriate to the nature of the case.") (quotation & citations omitted). At the
24 same time, any change to the existing Plan confirmation schedule to permit discovery following
25 the May 15, 2020 objection deadline might imperil the Debtors' confirmation deadline.
26 　　　　　Because the TCC believes that these issues are already subject to a contested matter, the
27 TCC contends that there is already an expedited discovery process in place that governs the
28 TCC's discovery, and every subpoena recipient is already bound by that procedure. This Court's

second scheduling order [Dkt. No. 1996] (the "Existing Discovery Order") establishes expedited discovery procedures that already modify F.R.C.P. 45 and F.R.B.P. 9014 in order to address the need for expedited discovery in these Cases. No party has objected to that procedure until now.

The TCC intended to operate under that mandatory procedure. But some subpoena recipients refused to acknowledge that such procedure applies to them, as can be seen by the many objections that argue that there is no contested matter, and the number of objections began to mount. For these reasons, the TCC filed the instant Motion.[2]

**D. The TCC Needs Discovery to Protect the Value of Assigned Claims**

The second reason for the TCC's discovery is the need to understand the scope of the Assigned Claims. This is not about future litigation planning, but about protecting this critical asset between now and the Effective Date. The Debtors' contracts with its Contractors require that the Debtors be listed in the Contractors' insurance policies as an "additional insured." Those recovery rights are a valuable estate asset being assigned to the Fire Victim Trust. But without access to Contractors' insurance policies and contracting information, the TCC does not know whether there are approaching notice deadlines in the policies that could affect future recoveries, or if such deadlines have already passed, potentially negating the Debtors' status as an additional insured. It is two-and-a-half years since the North Bay Fires, and sixteen months since the Camp Fire. Notice deadlines may have already passed, while others may expire in the months that remain between now and the proposed Effective Date (assuming a late summer Effective Date).

When the TCC sought insurance and contract information about the Contractors last summer, the Court noted that the claims had not been assigned to any future trust, and left this discovery to the estimation proceeding. But the TCC negotiated the terms of the RSA to obtain three critical assets for the Trust: (i) cash; (ii) stock; and (iii) assigned causes of action. The assignment is not a matter of speculation, as argued in some opposition briefs. It is a binding

---

[2] The TCC's Motion pertains only to Contractors who might be affected by a UCC Plan objection. The TCC has also served unrelated subpoenas on state agencies and Adventist Health, both of whom filed protective statements in response to the Motion. But as neither of those parties are connected to the UCC's potential Plan objection, those subpoenas are not related to the due process arguments that drove the filing of the Motion. Nevertheless, the TCC believes that the present expedited discovery process outlined in the Existing Discovery Order would apply to each of those subpoenas.

term in the RSA. And the TCC must have access to its requested discovery in order to ensure that the value of those Assigned Claims does not decline by inaction before the Effective Date.

**E. The TCC Has Worked to Target Its Discovery and Reduce Burden, While Preserving its Right to Due Process in the Plan Confirmation Process**

The coordinated oppositions filed by certain Contractors create a distorted picture of the TCC's discovery efforts. As of Sunday, March 8, 2020, of the 107 subpoenas served by the TCC on Contractors (one was served since the Motion was filed):

- 20 have been withdrawn after the parties' initial discussions and discovery demonstrated that the served Contractor did not appear to have conducted business related to the cause of any wildfires;
- 19 Contractors have started to produce documents pursuant to their subpoenas;
- 68 subpoenas remain outstanding. (Supp. Decl. at ¶ 5).

The TCC has continued to engage in discussions with recipients of outstanding subpoenas, including calls over the past week with counsel for multiple Contractors, both to explain the nature and reasons for the TCC's discovery, and to resolve disputes. In the case of the more substantive objections filed by some parties, the TCC has deferred negotiations pending a ruling on the Motion's request for a procedure to resolve such objections. *Id*.

The TCC is sensitive to the Contractors' concerns, as the TCC is fully aware that the Fire Victim Trust will commence the post-effective date period as the largest single shareholder of the Debtors. Any litigation practice that causes injury to the corporation could cause injury to the value of stock that the Trust will be liquidating to pay Fire Victims. But the TCC's discovery process will reduce litigation, not increase litigation. As demonstrated by the withdrawn subpoenas listed above, even minimal discovery is helping to remove potential defendants from the list of Contractors identified by the Debtors as having been involved with fire-related services, and would likely all be sued without advance discovery. The more information that can be exchanged, the more targeted the Trust's efforts can be, and the less impact there will be—if any—on the Debtors' services from such Contractors. In other words, even if there were a feasibility concern, that concern would be reduced by any exchange of information that will allow

the Trust to focus solely on those Contractors whose work is most related to issues of fire causation. But this is not a process that can be left until next fall, after the Trust is formed. If the Effective Date is at the end of the summer, the Trust will have only a few months to accomplish this process before statutes of limitation expire pursuant to 11 U.S.C. § 108, and the Trust will not have the discovery procedures that are available or have a broader scope prior to confirmation of a plan, as most published case law substantially limits the post-confirmation use of Rule 2004.

But while access to such information would be a <u>benefit</u> that could be obtained from the discovery sought by the TCC, the primary <u>purpose</u> of the Contractor discovery is to prepare for the UCC's confirmation objection so that the TCC is not denied due process.

The TCC is amenable to any expedited discovery procedure that facilitates discovery and protects due process rights without imposing an undue burden on the Court. The use of the term "special master" in the Motion was not intended to invoke F.R.C.P. 53 or violate F.R.B.P. 9031, but to suggest the use of an individual to ease the Court's burden, such as the "discovery arbitrator" appointed in the Madoff cases. Such procedures are common in cases of this size.

It may be that amendments to the current procedure outlined in the Existing Discovery Order could be sufficient. As currently in place, that procedure does not provide a mechanism for the TCC to obtain the Court's assistance on an expedited basis when a subpoena recipient refuses to cooperate—such as the refusal to acknowledge the existence of a contested matter that invokes such procedures. And the current procedure places resolution of all of the objections on this Court, which could be burdensome during the lead-up to Plan confirmation. But, as discussed below, the TCC remains open to any alternative procedure that ensures that it will be afforded due process throughout the Plan confirmation process, including an adjustment to the current Plan confirmation schedule to address the UCC's concern.

**F. The Debtors' Cost-Shifting Objection Is Misplaced**

The Debtors' objection is entirely misplaced. The TCC's discovery pertains to a Plan confirmation dispute between two official committees. It is a typical and ordinary estate expense.

The Debtors' Plan proposes to pay all creditors in full. The cost of this discovery does not risk impairing any creditors in these Cases. Rather, the TCC is conducting discovery to

determine the scope of claims that are property of the estate and are being assigned under the Plan. It is information the Debtors should have already been able to provide with complete discovery at their expense, months ago. They have been unable or unwilling to do so, and as a result the TCC must engage in a discovery process that involves the Contractors. Whether the purpose is for Plan confirmation issues, or whether the benefits happen to include a more targeted post-confirmation litigation path, the discovery is a proper expense of the estates.

**G. The TCC's Proposed Alternative Scheduling Procedure**

As mentioned above, the TCC is not wedded to any particular procedure. The concern is due process, and a delay of fact discovery until late May 2020 following the filing of objections to confirmation is not an option that would afford the TCC with due process.

The TCC believes that compliance with its outstanding subpoenas is the better path to ensuring due process throughout the Plan confirmation process, but the TCC also acknowledges that other procedures may be preferable to the Court. This Court has already modified the plan confirmation schedule to require advance briefing on objections that certain parties have raised (i.e., post-petition interest, impairment, classification, etc.). And though the UCC has not requested early briefing for their proposed objection, the TCC believes that the UCC's objection must be briefed in advance of the May 2020 confirmation briefing dates if the TCC is not permitted to continue its discovery at this time. Therefore, the TCC proposes the following as an alternative to compelled compliance with the TCC's current outstanding discovery.

1. That the Court enter an order setting April 3, 2020 (the "Filing Deadline") as the deadline by which any party in interest must file any objection to Plan confirmation on the grounds that assignment of any of the Assigned Claims to the Fire Victim Trust under the terms of the RSA create confirmation issues such as feasibility concerns;

2. That the Court's order further provide that the TCC's outstanding subpoenas are deemed suspended, not withdrawn, pending the Filing Deadline. If any party files a Plan objection by the Filing Deadline, then: (i) all recipients of outstanding subpoenas are ordered to respond to the TCC's subpoenas in full within 14 days (April 17, 2020); and (ii) the TCC may take expedited depositions of relevant deponents under the existing procedure outlined in the Existing Discovery Order. Any discovery disputes must be raised pursuant to the Court's existing procedure entered under the Existing Discovery Order, and if a party refuses to cooperate then the party that is seeking their cooperation may file a unilateral letter brief with the Court requesting assistance. If no feasibility objection is filed by the Filing Deadline, the TCC's subpoenas to the Contractors would be deemed withdrawn;

3. That the Court's order further provide that, following production of all documents by April 17, 2020, the TCC's deadline to file a reply brief will be May 1, 2020; and

4. That in the meantime, the TCC be entitled to continue its efforts to compel complete production from the Debtors. To whatever extent the Debtors do not, or cannot produce such documents by the Filing Deadline, the TCC may serve subsequent, targeted subpoenas to Contractors to obtain whatever documents the Debtors have not produced, whether or not a UCC Plan objection has been filed.

Under such a procedure, due process would be protected, and the procedure for resolving discovery disputes would be the same as the procedure that is already in place, except that all parties would be aware that they are bound by such a procedure, and a filed Plan objection would confirm the relevance of the discovery. The Court would also have the benefit of resolving a potential significant Plan objection in advance of the May 15, 2020 objection deadline.

Whether the TCC is permitted to complete its discovery now in order to be prepared in advance of the May 15, 2020 objection deadline, or this Court establishes an alternative briefing schedule such as the one described above, there must be a procedure in place to ensure that the TCC's right to due process is protected. The proposed UCC objection is fact-intensive, and requires substantial discovery before it may be addressed by this Court.

**H. The Black & Veatch Motion to Quash Should Be Denied, or Deferred**

As explained above, the TCC contends that the Court's existing expedited discovery procedures apply to the TCC's discovery. Black & Veatch's motion to quash was not filed in accordance with that procedure, and was not properly set for a hearing under any of the Court's scheduling procedures. For that reason, the TCC has not yet filed an opposition brief.

Consistent with the arguments above, the TCC contends that its subpoena to Black & Veatch is proper discovery in a contested matter pertaining to a prospective UCC Plan objection, that the documents sought therein are relevant, and that the discovery is not burdensome. Black & Veatch was contractually obligated to name the Debtors as "additional insureds" in its liability policies, which erases any claim of privilege or confidentiality to the policies themselves. To whatever extent this Court permits the TCC to conduct discovery in advance of an expected UCC/Contractor Plan objection pertaining to the Plan assignment of the Assigned Claims to the Fire Victim Trust, the TCC respectfully requests that the Court deny the motion to quash.

## CONCLUSION

WHEREFORE the TCC respectfully requests that the Court enter the Proposed Order, substantially in the form attached to the Motion, or establish such other discovery resolution procedure or alternative Plan confirmation briefing schedule as the Court deems appropriate, and such other and any further relief as the Court may deem just and proper.

Dated: March 9, 2020

BAKER & HOSTETLER LLP

By: /s/ David J. Richardson
Robert A. Julian
Cecily A. Dumas
David J. Richardson

*Counsel to the Official Committee of Tort Claimants*