Nicholas A. Carlin, CSB No. 112532
Brian S. Conlon, CSB No. 303456
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: 415-398-0900
Fax: 415-398-0911
Email: nac@phillaw.com
bsc@phillaw.com

Michael Malter, CSB No. 87908)
Robert G. Harris, CSB No. 124678)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com

Attorneys for Plaintiff Anthony Gantner, Individually and on behalf of all those similarly situated

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | **Case No. 19-30088 (DM)**<br><br>**Chapter 11**<br><br>**(Lead Case)**<br>**(Jointly Administered)**<br><br>Date: TBD<br>Time: TBD<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Related Claim No.: 96909** |

## PLAINTIFF'S MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS PROOF OF CLAIM

Plaintiff Anthony Gantner, the named plaintiff in *Gantner v. PG&E Corp.*, Adv. Proc. No. 19-03061 (DM) (the "Adversary Proceeding"), on behalf of himself and the proposed class he seeks to represent (the "Class"), hereby submits this motion (the "Motion") for entry of an order, pursuant to Rules 9014(a) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form submitted herewith (the "Proposed Order) as Exhibit A: (1) directing that Bankruptcy Rule 7023 applies to the class proof of claim filed by Plaintiff on behalf of himself and the Class against each of the Debtors (the "Class Claim") [Claim No. 96909] and,

1

(2) if the Court directs that Bankruptcy Rule 7023 applies to the Class Claim, establishing a briefing schedule for and scheduling a hearing, if necessary, on certification of the Class for all purposes in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors in possession (the "Debtors" or "PG&E"), including but not limited to (a) voting on and, if applicable, opting out of and/or objecting to any releases contained in, any chapter 11 plan or plans filed in the Chapter 11 Cases, (b) allowance of the Class Claim, and (c) receiving any distributions on account of the Class Claim on behalf of the entire Class, subject to allocation and distribution as may be ordered in the Adversary Proceeding. For the reasons set forth below, the Motion should be granted.

## I. INTRODUCTION

This putative class action adversary proceeding was filed by Anthony Gantner ("Plaintiff") on behalf of a putative class of some 800,000 PG&E customers, comprising some 2 million people in total in the affected households, who suffered damages as a result of PG&E's blackouts (the Public Safety Power Shutoffs or "PSPSs") in October and November of 2019. The Complaint (Adversary Proceeding, ECF No. 1 "Compl.") seeks $2.5 billion in damages. The Class Claim is an administrative claim inasmuch as it arose from PSPSs that occurred after the bankruptcy petition was filed in January of 2019.

By this Motion, Plaintiff requests that the Court apply Bankruptcy Rule 7023 to Plaintiff's Class Claim. As set forth below, the class action mechanism is the only effective way to deal with the Class's PSPS claims in bankruptcy court: it would not adversely affect the administration of PG&E's estate (it would streamline it) and it would serve as a deterrent to PG&E's successor to continue down the path of negligence which caused the blackouts.

## II. BACKGROUND

### A. The Chapter 11 Cases and the Subsequent PSPSs

On January 29, 2019, PG&E filed these Chapter 11 Cases in response to the liabilities it had incurred by causing deadly wildfires in Northern California. During the course of the on-going bankruptcy process, PG&E began its Public Safety Public Shutoff program wherein PG&E shut off power to hundreds of thousands of customers in the Fall of 2019 for days at a time.

2

Plaintiff alleges that those shutoffs were caused by PG&E's negligent maintenance of its power grid. (Compl. ¶ 98.) On January 31, 2020, PG&E filed its Joint Chapter 11 Plan of Reorganization (ECF No. 5590). On February 7, PG&E filed it Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization which mentions the Adversary Proceeding in passing but does not present any plan to address these administrative claims in the bankruptcy proceeding.[1] (ECF No. 5700 at p. 21.)

### B. The Complaint

#### 1. Factual Allegations

On December 19, 2019, Plaintiff filed this action on behalf of himself and a putative class against PG&E as an adversary proceeding, not for its decisions to shut off power for millions of its customers, but for its negligent actions and omissions which necessitated it to make those decisions, injuring him and millions of other people. (Compl. ¶ 2.)

In the Fall of 2019, PG&E shut off power to some 800,000 customers in at least five distinct so-called public safety power shutoff events. (Compl. ¶¶ 63-79.) Millions of people were impacted by the PSPSs, which lasted up to 17 days total and 10 days in a row. (Compl. ¶ 3.) As a result of these PSPSs, Plaintiff and the Class (as defined in the Complaint) suffered various losses, including loss of habitability of their dwellings, loss of food items in their refrigerators, expenses for alternate means of light and power, loss of cell phone connectivity, dangerous dark conditions, lack of running water, loss of productivity and business, loss of personal property, and mental pain and suffering. (Compl. ¶¶ 3, 99-102.)

The Complaint details PG&E's obligation to "furnish and maintain such adequate, efficient, just and reasonable service" to its customers under California law (Compl. ¶¶ 10-20) and its failure to do so over the past 30 years, culminating in the PSPSs damaging Plaintiff and the Class (Compl. ¶¶ 21-79). The PSPSs (whether justified in the moment) were the result of PG&E's negligence, including, but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or professional standards of care; (2) failing to timely and properly

---

[1] Plaintiff objected to the Disclosure Statement.

maintain, manage, inspect, and/or monitor the subject power lines, electrical equipment, and/or adjacent vegetation; (3) failing to make the overhead lines safe under all the exigencies created by surrounding circumstances and conditions; (4) failing to properly cut, trim, prune, and/or otherwise keep vegetation at a sufficient distance to avoid foreseeable contact with power lines; (5) failing to trim and/or prune vegetation so as to avoid creation of a safety hazard with close proximity of the subject power lines; (6) failing to conduct adequate, reasonably prompt, proper, effective, and/or frequent inspections of the electrical transmission lines, wires, and/or associated equipment; (7) failing to design, construct, monitor, and/or maintain high voltage electrical transmission, and/or distribution power lines in a manner that avoids the potential to ignite a fire during long, dry seasons by allowing vegetation to grow in an unsafe manner; (8) failing to install the equipment necessary and/or to inspect and/or repair the equipment installed, to prevent electrical transmission and distribution lines from improperly sagging, operating, and/or making contact with other metal wires placed on its poles and igniting fires; (9) failing to keep equipment in a safe condition and/or manage equipment to prevent fire at all times; (10) failing to update outdated and dangerous equipment; (11) failing to properly train and to supervise employees and agents responsible for maintenance and inspection of the transmission lines and/or vegetation areas nearby these lines; and (12) shutting off power to millions of people to avoid further wildfires caused by its corporate negligence. (Compl. ¶ 98.) Instead of doing its duty of mitigating or eliminating the risk of wildfire by maintaining a reasonably safe power grid, Plaintiff alleges, PG&E breached its duty of care by shutting off their power for days at a time, sometimes without notice. (Compl. ¶ 98.)

### 2. The Class

Plaintiff defines the Class as "All California residents and business owners who had their power shut off by PG&E during the October 9, October 23, October 26, October 28, or November 20, 2019 Outages and any subsequent voluntary Outages PG&E imposes on its customers during the course of litigation" (the "Class"). (Compl. ¶ 85.) Plaintiff alleges that a class action is appropriate because the Class is so numerous that joinder is unfeasible and impracticable; Plaintiff is typical because he was subject to the PSPSs and suffered damages

based on PG&E's common course of conduct; common questions of law and fact predominate, including whether PG&E's conduct in maintaining its power system violated the duty of care it owed its customers and what duty of care PG&E owed its customers; Plaintiff is an adequate representative because he has no interest adverse to the Class and is represented by experienced class action litigators; and that a class action is superior to piece meal adjudication of the Class claims. (Compl. ¶¶ 88-92.)

### 3. Relief Sought

As relief, Plaintiff, on behalf of himself and the Class, seeks, among other things, special and general tort damages, punitive and exemplary damages as allowed under California Civil Code § 3294 and California Public Utilities Code § 2106, and an injunction ordering PG&E to stop violating California Public Utility Commission General Orders Nos. 95 and 165, California Public Resources Code §§ 4292 and 4293, and California Public Utilities Code § 451. (Compl. Prayer.)

### 4. Motion to Dismiss Complaint

On January 22, 2020, PG&E moved to dismiss the Complaint and to strike Plaintiff's class action allegations. (Adversary Proceeding ECF Nos. 7-9.) Plaintiff opposed that motion on February 25, 2020. (Adversary Proceeding ECF No. 17) PG&E's replied on March 3, 2020 (Adversary Proceeding ECF No. 18), Plaintiff requested that the Court strike portions of that reply on March 6 (Adversary Proceeding ECF No. 20), and oral argument is scheduled in the Bankruptcy Court for March 10, 2020.

## C. The Bar Date and Bar Date Notices

On July 1, 2019, before any of the PSPSs at issue took place, the Court entered an order (the "Bar Date Order") (ECF No. 2806). That Order set October 21, 2019 as the last date for holders of claims against PG&E to file proofs of claim and approved various forms of notice of the bar date. The court-approved Standard Bar Date Notice was appended to that Order. (ECF No. 2806, Ex. B-1.) The Notice states "The Bar Date and the procedures set forth below for filing Proofs of Claim apply to all claims against the Debtors that arose before January 29, 2019." (ECF No. 2806, Ex. B-1 at 2-3.) In addition, under the "**WHO NEED NOT FILE A PROOF OF**

**CLAIM**" heading, the Notice states "You do **not** need to file a Proof of Claim on or before the Bar Date if you are: . . . (l) any person or entity who holds a claim solely to the extent that such claim arises from an event that occurred after January 29, 2019." (ECF No. 2806, Ex. B-1 at 8-9.) Accordingly, members of the Class—though they may have received notice as customers—were not among the categories of creditors who were required to file a claim by the October 12, 2019 deadline, at least with respect to their PSPS claims which did not arise before January 29, 2019.

### D. The Class Claims

Plaintiff timely filed a proof of claim asserting the Class Claims on behalf of himself and the Class (Claim No. 96909) on February 5, 2020.[2] By this Motion, Plaintiff requests that the Court (1) exercise its discretion to apply Bankruptcy Rule 7023 to the Class Claims; and (2) set a briefing and hearing schedule in connection with certification of the Class pursuant to Fed. R. Civ. P. 23 for all purposes in the Chapter 11 Cases.

## III. ARGUMENT

### A. Legal Standard

Class proof of claims are permitted in bankruptcy proceedings in the Ninth Circuit. *Birting Fisheries v. Lane*, 92 F.3d 939, 939-40 (9th Cir. 1996); *In re Certified Parking Attendants, LLC*, No. 10-12513 AJ, 2012 WL 525516, at *3 (N.D. Cal. Feb. 16, 2012) ("Class claims, pursuant to FRCP 23, are permissible in bankruptcy court."); *In re First Alliance Mortg. Co.*, 269 B.R. 428, 445 (C.D. Cal. 2001) ("[C]lass action devices are not disfavored, but are actually 'particularly appropriate,' in bankruptcy proceedings").

Bankruptcy courts have discretion to certify a class claim. *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58, 62 (D. Del. 2002). Fed. R. Bankr. P. 7023 "expressly allows class certification in adversary actions, by incorporating Rule 23." *Id.* "Rule 9014 expands that Rule to contested matters at the court's discretion." *Id.*

///

---

[2] Plaintiff filed two class proof of claims—Claim No. 96909 amends and corrects Claim No. 96911 and is the operative claim. Among other things, Claim 96909 includes the Complaint as an attachment whereas 96911 does not.

6

Courts apply a two-step analysis to determine whether to certify a class in a bankruptcy case. *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017). First, the Court must make the decision whether it is beneficial to apply Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process. *Id.* at 646. Second, if applying Bankruptcy Rule 7023 is appropriate, the Court then determines whether the class certification requirements of Fed. R. Civ. P. 23 are satisfied. *Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012) ("Civil Rule 23 factors do not become an issue until the bankruptcy court determines that Rule 7023 applies by granting a Rule 9014 motion."). This motion concerns step one only.

At step one, the question is "whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedure." *Gentry,* 688 F.3d at 93. To determine whether step one is satisfied, Courts weigh three non-exclusive factors identified in *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007) (the "*Musicland* Factors"): (1) whether the class was certified pre-petition; (2) whether members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate. *In re Verity Health Sys. of Cal.*, No. 2:18-bk-20151-ER, 2019 WL 2461688, at *6 (C.D. Cal. June 11, 2019). "No one factor is dispositive; a factor may take on more or less importance in any given case." *In re Chaparral*, 571 B.R. at 646.

In addition to these three factors, courts have also considered whether permitting the Class Claim "could serve as a deterrent against the reorganized [Debtors], dissuading the reorganized companies from continuing with the same behavior." *In re Chaparral,* 571 B.R. at 650.

**B.     The Applicable *Musicland* Factors Weigh in Favor of Applying Bankruptcy Rule 7023 to the Class Claims**

**1.     That the Class Was Not Certified Before the Petition Date is Irrelevant in this Case**

The first *Musicland* Factor is irrelevant here. This Class was not certified before the petition date because the Class Claim did not arise pre-petition. The Class could not have been certified before the filing of this case as the PSPSs occurred post-petition. The lack of pre-petition certification does not weigh against applying Rule 7023. *Cf. In re MF Global Inc.*, 512 B.R. 757, 763-65 (Bankr. S.D.N.Y. 2014) (where class members' claims arose alongside

7

conduct leading to the debtors' insolvency proceedings, "issue of prepetition certification loses its relevance, since there will seldom be time to file a class action complaint and certify a class before the petition date") (emphasis added); *Gentry*, 668 F.3d at 91 (rejecting argument that application of Bankruptcy Rule 7023 was inappropriate where class was not certified prepetition).

### 2. The Class did not Receive Notice of the Bar Date for these Claims Because They Arose After the Petition was Filed

The second *Musicland Factor* favors application of Rule 7023. As was the case in *In re Chaparral*, "[t]he second *Musicland* factor weighs in favor of applying Bankruptcy Rule 7023 to the Class Claims as not all putative class members were served with notice of the Bar Date."). 571 B.R. at 646. The Class did not receive notice of the bar date for their post-petition administrative claims because no such bar date has been set much less served. That some or all of the Class got notice of the bar date for pre-petition claims is irrelevant. To the extent they received notice, that notice expressly directed them not to file a claim for post-petition damages. ECF No. 2806, Ex. B-1 at 8-9.

### 3. Certification of the Class Will Not Adversely Affect the Administration of the Debtors' Estates

The final *Musicland Factor*, impact of class certification on the administration of the estate, strongly supports applying Bankruptcy Rule 7023 to the Class Claim. Allowing the Class Claim to proceed under Rule 23 will not "'gum up the works' of distributing the estate." *In re MF Global Inc.*, 512 B.R. at 763. Instead, permitting class certification will streamline the administration and payment of post-petition administrative claims. While PG&E filed its Joint Chapter 11 Plan of Reorganization on January 31 (ECF No. 5590), that plan will be amended to satisfy objections which the various stakeholders have in the coming months. Accounting for this Class Claim in that amendment, and eventual final plan by virtue of an estimate, is no more burdensome than any other amendment to the reorganization plan. Further, it will make administration of PG&E's estate easier to have this potentially substantial liability resolved on a class-wide basis ahead of the reorganization plan going into effect. Otherwise the successor entity, if it assumes administrative liability, will have potentially hundreds of thousands of

8

claims to deal with post-bankruptcy. If the successor does not assume administrative liabilities and there is no class claim allowed here, PSPS victims will have effectively no recourse against PG&E for the harm it caused them.

Even providing the Class members with actual notice of an administrative claims bar date would not fully satisfy the due process rights of Class members who cannot ascertain whether they may have damage claims against the Debtors and how to assert them.

### C. Permitting the Class Claim Could Serve as a Deterrent Against PG&E Continuing its Negligent Practices

If the Court permits Plaintiff's Class Claim to go forward under Rule 7023 it would serve as a deterrent against PG&E's successor continuing PG&E's negligent maintenance of its power grid which underlies the Class Claim and are the reason PG&E filed bankruptcy in the first place. *In re Zenith Labs., Inc.*, 104 B.R. 659, 662 (D.N.J. 1989) (citing *In re American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988)) ("The class action increases the likelihood that the small claimant will be represented and thereby 'serves a deterrent function by ensuring that wrongdoers bear the costs of their activities.'"). The Court should give special emphasis to this deterrence factor given the catastrophic results of PG&E's history of criminal negligence.

### D. Comparing the Alternatives of a Claims Bar Date for PSPS Shutoff Claimants to A Class Claim.

The administrative burden of an administrative claims bar date, under the circumstances of these Chapter 11 Cases, would be overwhelming. The Class consists of at least the 800,000 of PG&E's affected customers who lost power, as well as others within and beyond those households and businesses who were affected. Even a mere 10% response rate would add tens of thousands of claims, or more, to the claims register. The influx of individual claims would impose a massive administrative burden on the Court, the Debtors, and other stakeholders. Requiring each individual Class member to appear and defend against inevitable claims objections would substantially magnify that burden. All of this can be avoided, and injured customers can be assured of representation in these Chapter 11 Cases, if Rule 7023 is applied as it was designed.

9

Applying Bankruptcy Rule 7023 will leave *only the Class Claim* for the claims administration process. Issues pertaining to the allocation and distribution of recoveries among individual Class members can be left to the Class/District Court, rather than adding to the complexity of these Chapter 11 Cases. The Class simply proceeding through the Class Claim in place of tens or even hundreds of thousands of additional individual claims is inherently more efficient and fair to the Class and all stakeholders. Given that the major claims in this Chapter 11 proceeding have already reached negotiated settlements with funds provided by the State and within the cases, recognition of this administrative Class Claim would not dilute or otherwise impact wildfire victims or other creditors.

## IV. CONCLUSION

For all the foregoing reasons, this Court should apply Bankruptcy Rule 7023 to this Class proof of claim.

Dated: March 9, 2020            PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


                                By: /s/ Nicholas A. Carlin
                                    Nicholas A. Carlin
                                    Brian S. Conlon

                                    Attorneys for Plaintiff


Dated: March 9, 2020            BINDER & M ALTER, LLP


                                By: /s/ Robert G. Harris
                                    Robert G. Harris

                                    Attorneys for Plaintiff