1  WEIL, GOTSHAL & MANGES LLP
   Stephen Karotkin (*pro hac vice*)
2  (stephen.karotkin@weil.com)
   Ray C. Schrock, P.C. (*pro hac vice*)
3  (ray.schrock@weil.com)
   Jessica Liou (*pro hac vice*)
4  (jessica.liou@weil.com)
   Matthew Goren (*pro hac vice*)
5  (matthew.goren@weil.com)
   767 Fifth Avenue
6  New York, NY 10153-0119
   Tel: 212 310 8000
7  Fax: 212 310 8007

8  KELLER BENVENUTTI KIM LLP
   Tobias S. Keller (#151445)
9  (tkeller@kbkllp.com)
   Jane Kim (#298192)
10 (jkim@kbkllp.com)
   650 California Street, Suite 1900
11 San Francisco, CA 94108
   Tel:   (415) 496-6723
12 Fax:   (415) 636-9251

13 *Attorneys for Debtors*
   *and Debtors in Possession*

14
                    UNITED STATES BANKRUPTCY COURT
15                  NORTHERN DISTRICT OF CALIFORNIA
                              SAN FRANCISCO
16

17 **In re:**                          | Bankruptcy Case No. 19 -30088 (DM)
                                        | Chapter 11 (Lead Case) (Jointly Administered)
18 **PG&E CORPORATION,**
                                        | **DEBTORS' OMNIBUS REPLY TO OBJECTIONS**
19        - and -                       | **TO APPROVAL OF (I) PROPOSED DISCLOSURE**
                                        | **STATEMENT AND (II) SOLICITATION**
20 **PACIFIC GAS AND ELECTRIC**         | **PROCEDURES MOTION**
   **COMPANY,**
21                                      | Related Docket Nos. 5700, 5835

22                          **Debtors.** | Date:  March 10, 2020
                                        | Time:  10:00 a.m. (Pacific Time)
23 ☐ Affects PG&E Corporation           | Place: 450 Golden Gate Ave.
   ☐ Affects Pacific Gas and Electric   |        Courtroom 17, 16th Floor
24 Company                              |        San Francisco, CA 94102
   ☒ Affects both Debtors
25 * *All papers shall be filed in the Lead*
   *Case, No. 19-30088 (DM).*
26

27

28

1       PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in

2  possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases

3  (the "**Chapter 11 Cases**"), hereby submit this omnibus Reply to the objections to (i) the proposed

4  *Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of*

5  *Reorganization*, dated February 7, 2020 [Docket No. 5700] (together with all schedules and exhibits

6  thereto, including, without limitation, the exhibits filed on February 18, 2020 [Docket No. 5801],

7  as may be amended, supplemented, or modified from time to time, the "**Proposed Disclosure**

8  **Statement**"), and (ii) the *Debtors' Motion for Entry of an Order (I) Approving Form and Manner*

9  *of Notice of Hearing on Proposed Disclosure Statement; (II) Establishing and Approving Plan*

10  *Solicitation and Voting Procedures; (III) Approving Forms of Ballots, Solicitation Packages, and*

11  *Related Notices, and (IV) Granting Related Relief* [Docket No. 5835] (the "**Solicitation Procedures**

12  **Motion**").[1]

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the
Proposed Disclosure Statement or the Solicitation Procedures Motion, as applicable.

28

# TABLE OF CONTENTS

Page

I. Preliminary Statement................................................................................6

II. The Proposed Disclosure Statement Contains Adequate Information and Should Be Approved............................................................................................8

    A. Adequate Information, as Required by Section 1125(b) of the Bankruptcy Code, is Determined on a Case-by-Case Basis.................................................8

    B. The Proposed Disclosure Statement, as Amended, Provides Adequate Information for Approval under Section 1125 of the Bankruptcy Code .........10

    C. The Proposed Disclosure Statement Provides Adequate Information Regarding the Treatment of Fire Victim Claims .............................................11

III. Objections to the Proposed Solicitation and Voting Procedures Should Be Overruled ..........................................................................................................12

IV. Confirmation Objections Should Be Overruled and Considered at the Confirmation Hearing..........................................................................................16

    A. Challenges to Confirmation of the Plan are Properly Deferred to the Confirmation Hearing ......................................................................................16

V. Conclusion .........................................................................................................18

1

2

**TABLE OF AUTHORITIES**

3

**Cases**                                                                             **Page(s)**

4

*In re Alaska Fur Gallery, Inc.*,
No. A09-00196-DMD, 2010 WL 7765565 (Bankr. D. Alaska May 25, 2010)...........................17

5

6

*Burns v. MacGibbon (In re MacGibbon)*,
BAP No. WW-0501422-PaNK, 2006 WL 6810935 (B.A.P. 9th Cir. Aug. 14, 2006)............9, 10

7

*Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*,
383 B.R. 856 (E.D.N.Y. 2008) ...............................................................................................9

8

9

*Matter of Colin*,
44 B.R. 806 (Bankr. S.D.N.Y. 1984)....................................................................................17

10

*Computer Task Grp., Inc. v. Brotby (In re Brotby)*,
303 B.R. 177 (B.A.P. 9th Cir. 2003)......................................................................................9

11

12

*In re Copy Crafters Quickprint, Inc.*,
92 B.R. 973 (Bankr. N.D.N.Y. 1988) ...................................................................................16

13

14

*In re Ekstrom*,
No. 08-07750-SSC, 2010 WL 1254893 (Bankr. D. Ariz. Mar. 23, 2010)................................13

15

16

*In re Ellipso, Inc.*,
No. 09-00148, 2012 WL 368281 (Bankr. D.D.C. Feb. 3, 2012) .............................................17

17

*Holm v. Wright (In re Holm)*,
931 F.2d 896, 1991 WL 65476 (Table) (9th Cir. Apr. 24, 1991) ............................................9

18

19

*In re Larsen*,
No. 09-02630-TLM, 2011 WL 1671538 (Bankr. D. Idaho May 3, 2011)...........................16, 18

20

21

*In re M. Long Arabians*,
103 B.R. 211 (B.A.P. 9th Cir. 1989)....................................................................................13

22

*In re Main Street AC, Inc.*,
234 B.R. 771 (Bankr. N.D. Cal. 1999) .................................................................................18

23

24

*Momentum Mfg. Corp., v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
25 F.3d 1132 (2d Cir. 1994)................................................................................................9

25

26

*Official Comm. of Unsecured Creditors v. H.B. Michelson (In re Michelson)*,
141 B.R. 715 (Bankr. E.D. Cal. 1992)...................................................................................9

27

*In re Phoenix Petroleum Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001) ..................................................................................16

28

*In re Puff,*
    Case No. 10-01877, 2011 WL 2604759 (Bankr. N.D. Iowa June 30, 2011)...............................10

*In re Quigley Co.,*
    377 B.R. 110 (Bankr. S.D.N.Y. 2007)...................................................................................17

*In re Rosenblum,*
    No. 18-17155-MKN, 2019 WL 5782589 (Bankr. D. Nev. July 15, 2019)............................9, 17

*In re TK Holdings, Inc.,*
    Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) .......................................................14, 15

**Statutes**

11 U.S.C. § 1125 .......................................................................................... *passim*

**Other Authorities**

Fed. R. Bankr. P. 3013 ..........................................................................................................13

H.R. Rep. No. 95-595 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963...............................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

As the Court is aware, the Debtors have successfully achieved settlements with all of the major impaired creditor and equity constituencies in these Chapter 11 Cases and now are before the Court seeking approval of their Proposed Disclosure Statement and Solicitation Procedures Motion so that they can commence solicitation of votes to accept or reject the Plan and continue proceeding expeditiously towards confirmation by the June 30, 2020 deadline established by AB 1054. In addition to the settlements embodied in the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Public Entities Plan Support Agreements, the Plan provides for (i) payment in full, with interest at the legal rate, reinstatement, or refinancing of all prepetition funded debt obligations, all prepetition trade claims, and employee-related claims, (ii) assumption of all power purchase agreements and community choice aggregation servicing agreements, and (iii) assumption of all pension obligations, other employee obligations, and collective bargaining agreements with labor.  The Plan represents a global consensus and has the support of all classes of Fire Claims and virtually all other Voting Classes.

Pursuant to the Scheduling Order, the Court directed certain Core Parties, including the CPUC, the Tort Claimants Committee, and the Creditors' Committee, to serve the Plan Proponents with initial objections (the "**Initial Objections**") to the Proposed Disclosure Statement and the Solicitation Procedures Motion by February 28, 2020, and directed those parties to meet and confer regarding the Initial Objections over the course of the following week.  The Scheduling Order further established March 6, 2020, as the deadline for all other parties in interest to file with the Court any objections to the Proposed Disclosure Statement and the Solicitation Procedures Motion and for the Core Parties to file any objections that remained unresolved following the meet and confer period.

The Plan Proponents received thirteen Initial Objections and a total of twenty formal objections to the Proposed Disclosure Statement, the Solicitation Procedures Motion, and the Plan following the meet and confer period (collectively, the "**Objections**" and the parties filing such

Objections, the "**Objectors**"). The Plan Proponents have worked diligently both during and after the meet and confer period to discuss the various issues or concerns raised in the Initial Objections and the filed Objections and to incorporate any revisions or modifications to the Proposed Disclosure Statement, the Solicitation Procedures, and the Plan that the Plan Proponents determined to be reasonable and appropriate while still trying to adhere to the Court's instructions to avoid turning the Proposed Disclosure Statement into the proverbial "phonebook."

As a result of these efforts, the Plan Proponents were able, through revisions to the Proposed Disclosure Statement, the proposed Order approving the Solicitation Procedures Motion (the "**Revised Proposed Order**"), and the Plan, to fully resolve many of the Objections and significantly narrow the scope of most of the others that remain outstanding. To incorporate the numerous modifications and amendments the Plan Proponents have adopted to address the issues raised in the Objections, the Plan Proponents will file today revised versions of the Proposed Disclosure Statement, the Revised Proposed Order (together with all of the applicable exhibits thereto), and the Plan, along with redlines against the versions previously filed with the Court.

Notwithstanding the Plan Proponents' best efforts to resolve all of the Objectors' issues with the Proposed Disclosure Statement and Solicitation Procedures, certain issues remain outstanding. Accordingly, attached hereto as **Exhibit A** is a chart (the "**Objection Summary Chart**") summarizing (i) each of the remaining Objections and (ii) the Plan Proponents' proposed responses thereto. Many of the Objections overlap and raise similar issues, and they generally fall into the following categories:

- **Disclosure Objections**. These are Objections to the adequacy of disclosure in the Proposed Disclosure Statement. As set forth below and in the Objection Summary Chart, the Debtors have made amendments to the Proposed Disclosure Statement to provide the requested information where available and appropriate. In other circumstances, however, the requested disclosure is either unavailable or unnecessary, and the Debtors have so noted in the Objection Summary Chart. Under the circumstances of these Chapter 11 Cases, the Proposed Disclosure Statement's disclosure of all the available information is "adequate" and should be approved.

- **Solicitation Procedures Objections**. These are Objections to the solicitation and voting tabulation procedures as proposed by the Debtors in the Solicitation Procedures Motion. As set forth below and in the Objection Summary Chart, the Debtors have made certain

revisions and clarifications to the Revised Proposed Order, to be filed today, that they believe resolve all such Objections; however, to the extent any remain outstanding, they should be overruled for the reasons set forth below.

- **Confirmation Objections**. These are Objections that assert that the Plan is unconfirmable as a matter of law. As demonstrated below and in the Objection Summary Chart, the Confirmation Objections are just that—objections to confirmation that are appropriately deferred to the Confirmation Hearing. None of the Confirmation Objections rise to the level of rendering the Plan unconfirmable as a matter of law.

The Plan Proponents have made every effort to appropriately address the legitimate and relevant disclosure concerns raised by the various parties in interest in these Chapter 11 Cases, while balancing the Court's stated desire (shared by the Plan Proponents) for clear and concise disclosure so as not to inundate Fire Victims and other creditors and interest holders with unnecessary and confusing information. The Plan Proponents believe that the Proposed Disclosure Statement satisfies section 1125 of the Bankruptcy Code and should be approved.

## II. THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AND SHOULD BE APPROVED

### A. Adequate Information, as Required by Section 1125(b) of the Bankruptcy Code, is Determined on a Case-by-Case Basis

Pursuant to section 1125 of the Bankruptcy Code, the proponent of a chapter 11 plan must provide holders of impaired claims and interests entitled to vote on a plan with "adequate information" regarding the plan before soliciting votes to accept or reject the plan. 11 U.S.C. § 1125(b). Adequate information is

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information;

11 U.S.C. § 1125(a).  This Court must determine whether the Proposed Disclosure Statement contains "adequate information" to enable a claimant or hypothetical investor to make an informed judgment regarding the Plan.  *See Holm v. Wright (In re Holm)*, 931 F.2d 896, 1991 WL 65476 (Table), at *2 (9th Cir. Apr. 24, 1991) ("The primary purpose of a disclosure statement is to assist creditors in determining whether to accept or reject the proposed plan."); *Burns v. MacGibbon (In re MacGibbon)*, BAP No. WW-0501422-PaNK, 2006 WL 6810935, at *4 (B.A.P. 9th Cir. Aug. 14, 2006); *In re Rosenblum*, No. 18-17155-MKN, 2019 WL 5782589, at *3 (Bankr. D. Nev. July 15, 2019); *see also Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865–66 (E.D.N.Y. 2008); *Momentum Mfg. Corp., v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994).

Despite suggestions to the contrary in the Objections, "adequate information" as defined in section 1125 of the Bankruptcy Code does not require that the Disclosure Statement include information about every aspect of the Debtors' business or the Plan, voluminous financial documents, or admissions against interest, but rather is limited to "information of a kind, and in sufficient detail, as far as is reasonably practicable . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a)(1).

It is well-established that the determination of what constitutes adequate information is determined on a case-by-case basis and is largely within the discretion of the Bankruptcy Court. *Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003); *see also Official Comm. of Unsecured Creditors v. H.B. Michelson (In re Michelson)*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992) ("[A]dequate information for making an informed judgment is a flexible concept that permits the degree of disclosure to be tailored to the particular situation, . . ."); H.R. Rep. No. 95-595, at 409 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963 ("Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case. . . . There will be a balancing of interests in each case.").  Further, Courts have held that even where a disclosure statement could have included more information, "a disclosure statement need not be

perfect and may be approved if the information is reasonable in the circumstances." *In re Puff*, Case No. 10-01877, 2011 WL 2604759, at *5 (Bankr. N.D. Iowa June 30, 2011); *see also In re MacGibbon*, 2006 WL 6810935 at *6 (approving disclosure statement despite parts being somewhat speculative, because "in context . . . the disclosure statement presented a sufficiently accurate picture of [the debtor's] assets, liabilities and financial affairs, and included the essential kinds of information for creditors to evaluate her proposed plan.").

### B. The Proposed Disclosure Statement, as Amended, Provides Adequate Information for Approval under Section 1125 of the Bankruptcy Code

During the meet and confer process and thereafter, the Plan Proponents went to great lengths to consider requested additional disclosures where reasonable and appropriate, even where the requests extended beyond the scope of "adequate information" required by section 1125 of the Bankruptcy Code. As set forth above and in the Objection Summary Chart, several of the requests have been addressed by modifications and amendments to the Proposed Disclosure Statement.

The Proposed Disclosure Statement, as amended, provides adequate information for voting purposes to make an informed decision about whether to accept or reject the Plan, as required by section 1125 of the Bankruptcy Code, including, among other things, a discussion of:

- A summary of the Plan and its treatment of Claims and Interests, including the treatment of Fire Victim Claims being channeled to the Fire Victim Trust pursuant to the Plan (§ IV.B-D);

- Circumstances leading to the commencement of the Chapter 11 Cases (§ II.D);

- An overview of the Chapter 11 Cases (§ III);

- An overview of the Debtors' operations (§ II.A);

- An overview of the Debtors' prepetition capital structure (§ II.B);

- An overview of the legislative and regulatory framework and how such framework impacts the Chapter 11 Cases and the implementation of the Plan (§ II.C, E, F);

- Risk factors affecting the Debtors and confirmation and implementation of the Plan (§ VIII);

- Requirements for confirmation of the Plan (§ VII);

- Financial information that would be relevant to determinations of whether to accept or reject the Plan (Ex. B); and

- Tax consequences of the Plan (§ VIII.E).

The Plan Proponents submit that any remaining Disclosure Objections request disclosure of unnecessary or unavailable information that is not required by section 1125 of the Bankruptcy Code or otherwise warranted under the circumstances. As such, any remaining Disclosure Objections should not be permitted to delay solicitation and should be overruled. The Plan Proponents address certain of the Disclosure Objections, in turn, below, and in detail in the Objection Summary Chart.

**C.     The Proposed Disclosure Statement Provides Adequate Information Regarding the Treatment of Fire Victim Claims**

Certain Objections assert that the Proposed Disclosure Statement does not provide adequate information regarding the proposed treatment of Fire Victim Claims under the Plan. Such Objectors have requested additional disclosure regarding, among other things, (i) the value of stock, Assigned Claims and Causes of Action, and other assets to be assigned to the Fire Victim Trust, (ii) the expected recoveries for holders of Fire Victim Claims, and (iii) the impact of certain provisions of the Fire Victim Trust Agreement and proposed Fire Victim Claims Resolution Procedures on the rights and recoveries of holders of Fire Victim Claims.

As indicated in the Objection Summary Chart, the Plan Proponents have revised the Proposed Disclosure Statement, where applicable, to include additional disclosure to address these concerns. With respect to the remaining Objections, much of the requested information is either not available at this time or is not necessary for the voting parties to make an informed determination as to how to vote on the Plan. Specifically, the Plan Proponents have added the following additional disclosures regarding the proposed treatment of Fire Victim Claims:

- **Value of Assets to Be Assigned to the Fire Victim Trust:** The Proposed Disclosure Statement, as modified, discloses the value of the assets to be assigned to the Fire Victim Trust with as much specificity as possible. The Proposed Disclosure Statement now details that the assets to be transferred to the Fire Victim Trust have an estimated value of approximately $13.5 billion, consisting of $6.75 billion of cash and $6.75 billion in common stock of Reorganized PG&E Corp., and that the actual value of the stock could be greater or less than $6.75 billion, based on the future trading value of the common stock. The value of Assigned Rights and Causes of Action and 2015 Insurance Policies proposed to be transferred to the Fire Victim

Trusts is not material in the context of the aggregate consideration transferred to the Fire Victim Trusts.

- **Expected Recoveries for Fire Victim Claims:** Additionally, while the expected recoveries for holders of Fire Victim Claims is not definitively ascertainable at this time, the aggregate value of the consideration to be transferred to the Fire Victim Trust is adequately set forth and informs claimants of the significant value that will be available to satisfy their Claims.

- **The Claims Resolution Procedures:** Lastly, as detailed in the Objection Summary Chart, certain Objectors have raised issues with the form and content of the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures (together, the "**Trust Documents**"), and the lack of disclosure of those asserted deficiencies in the Proposed Disclosure Statement. The Trust Documents provided by the Tort Claimants Committee are not in final form, so the Plan Proponents are only able to summarize and include the information that is currently available. While the Plan Proponents agree these documents are important, as the Court noted at the hearing on February 4, 2020, "the trust documents are not disclosure documents, even though they are documents that disclose . . ." and, accordingly, final forms of such documents should not hold up solicitation and endanger the successful resolution of these Chapter 11 Cases. Hr'g Tr. (Feb. 4, 2020) at 123:10-11.

The Plan Proponents are committed to working with the Tort Claimants Committee and other interested parties to finalize the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures. Substantially final forms of those documents will be included in the Plan Supplement, which is to be filed on or about May 1, 2020.

## III. OBJECTIONS TO THE PROPOSED SOLICITATION AND VOTING PROCEDURES SHOULD BE OVERRULED

As detailed in the Objection Summary Chart, certain Objectors, including the Adventist Claimants, AT&T, the Federal Agencies (including FEMA), and the California State Agencies, have raised Solicitation Procedures Objections—in particular, objections to the Debtors' proposal to temporarily allow each Fire Victim Claim for voting purposes only in the amount of $1.00. The Debtors believe the Solicitation Procedures Objections have been adequately addressed with the clarifications and revisions set forth in the Revised Proposed Order as discussed below and in the Objection Summary Chart; however, to the extent they remain outstanding, such Objections should be overruled.

1      As an initial matter, the Claims of FEMA, the California State Agencies, and the Adventist

2 Claimants are all subject to pending objections as the TCC and the Debtors do not believe the estates

3 have any liability for such Claims and are requesting they be disallowed in their

4 entirety. Accordingly, the Objections of these claimants to the Debtors' proposed voting procedures

5 for Fire Victim Claims are irrelevant, as these claimholders are not currently entitled to vote on the

6 Plan on account of such Claims. *See In re M. Long Arabians*, 103 B.R. 211 (B.A.P. 9th Cir. 1989)

7 (Until a party is deemed to have an allowed claim, or actually has an allowed claim, it has no right

8 to accept or reject a Chapter 11 plan); *In re Ekstrom*, No. 08-07750-SSC, 2010 WL 1254893, at *13

9 (Bankr. D. Ariz. Mar. 23, 2010) ("A creditor which has a claim to which an objection has been

10 interposed, therefore, is not allowed to vote on the plan unless the objection is adjudicated prior to

11 plan voting or a mechanism, such as temporary allowance, has been provided to the

12 claimant."). Regardless, the Debtors have made clear in the Revised Proposed Order that if the

13 Court determines, pursuant to a timely filed 3018 Motion (which most of the Objectors have either

14 filed or have indicated they may file), that a creditor or interest holder is entitled to vote on the Plan

15 in a different amount then as set forth under the Solicitation Procedures, that amount shall be

16 temporarily allowed for voting purposes and will supersede the Debtors' proposed $1.00 per vote

17 procedure. Additionally, as set forth in the Objection Summary Chart, the Debtors have added

18 additional language to the Revised Proposed Order clarifying that any relief granted therein is

19 without prejudice to the relief that a holder of a Claim or Interest may seek, pursuant to Bankruptcy

20 Rule 3013, regarding the classification of their Claims or Interests under the Plan. *See* Revised

21 Proposed Order, at ¶¶ 6(i), 8. Accordingly, the Debtors believe these clarifications fully resolve the

22 concerns of the Objectors.

23      To the extent any of the Solicitation Procedures Objections remain outstanding, however,

24 the Debtors believe the proposed procedures for the temporary allowance of all Fire Victim Claims

25 at $1.00 are reasonable and appropriate under the circumstances. As set forth in the Motion, these

26 procedures are supported by, and were developed after substantial coordination with, the Tort

27 Claimants Committee—the fiduciaries representing the interests of <u>all</u> holders of Fire Victim Claims

28

other than Governmental Units—as well as professionals representing a significant number of the holders of Fire Victim Claims.

The Adventist Claimants and certain of the other Objectors argue that they should be permitted to vote hundreds of millions (or even billions) of dollars as asserted in their respective proofs of claim; however, the procedures approved by the Court with respect to the filing of proofs of claim by Fire Victims specifically instructed Fire Victims <u>that they did not have to include liquidated damage amounts in their proofs of claim (or attach any supporting documentation) and, as a result, substantially all of the approximately 82,000 Fire Victim Claims are unliquidated.</u> *See* Bar Date Order, at Ex. A-2 (Fire Claimant Proof of Claim Form) ("Question 11: You are not required to include a claim amount with your proof of claim. Providing a claim amount at this time is optional). To permit the Claims of the Adventist Claimants, AT&T, and a few governmental agencies to be voted in the asserted amounts would disenfranchise substantially all of the holders of Fire Victim Claims who simply followed the Court's instructions in accordance with the approved Bar Date Order and noticing procedures. The Adventist Claimants further argue that the Debtors should propose an alternative methodology for temporarily allowing Fire Victim Claims for voting purposes, however, they make no proposal of their own—nor can they, given the substantial delay and enormous prejudice to all parties in interest that would result from any procedure that would require the Debtors to evaluate each individual Fire Victim Claim for voting purposes.

Notwithstanding statements to the contrary by the Objectors, and as set forth in the Motion, the procedures proposed by the Debtors are substantially similar to procedures employed by Courts in other mass tort chapter 11 cases. Indeed, the procedures recently approved by the U.S. Bankruptcy Court for the District of Delaware in the chapter 11 cases of *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) ("***Takata***") are particularly instructive given the similar facts and circumstances to these Chapter 11 Cases. In *Takata*, the debtors were compelled to file for chapter 11 as a result of issues relating to certain airbag inflators that they manufactured (the "**Inflators**") that were determined to have ruptured during deployment and which eventually led to the largest automotive recall campaign in U.S. history. In those cases, the debtors

1  provided notice of the deadline to file claims to approximately 89 million potential claimants, which

2  led to nearly 60,000 claimants filing potential Inflator-related claims against the debtors, including

3  claims for personal injury, wrongful death, and a variety of economic losses or damages (including

4  claims asserting damages for business interruption and other commercial losses that are the same or

5  substantially similar to those asserted by AT&T and the Adventist Claimants in the Debtors'

6  Chapter 11 Cases). Similar to these Chapter 11 Cases, the *Takata* debtors faced an impending

7  deadline (approximately 8 months after the Petition Date) set by the Department of Justice to close

8  on a sale of substantially all of their assets or else they risked the DOJ reopening its investigation

9  and pursuing additional claims or the outright liquidation of the debtors. *See id.,* at Disclosure

10 Statement [Docket No. 1630], p. 7-8. In light of the significant number of Inflator-related claims

11 that were filed, many by individual plaintiffs and consumers that were similarly situated to the Fire

12 Victim Claimants in these cases, and the short timeline for confirmation, the Debtors proposed, and

13 the Court approved, solicitation procedures whereby each Inflator-related claim would be

14 temporarily allowed for voting purposes in the amount of $1.00 regardless of whether such claim

15 was scheduled or filed, liquidated or unliquidated, or based on personal injury, wrongful death, or

16 economic loss. *See id.* at Docket No. 1639.

17      Clearly the facts and circumstances of these Chapter 11 Cases warrant approval of similar

18 procedures to avoid disenfranchising substantially all of the individual Fire Victims that have filed

19 claims and are the reason for the commencement of these Chapter 11 Cases. Accordingly, the

20 Solicitation Procedures Objections should be overruled. In the alternative, if the Court is not

21 inclined to approve the Debtors' procedure for the solicitation of Fire Victim Claims as proposed in

22 the Solicitation Procedures Motion, each individual that holds a Fire Victim Claim could be

23 provided a claim amount solely for voting purposes based on a proportional share of the Aggregate

24 Fire Victim Consideration that is to fund the Fire Victim Trust to ensure such individuals are not

25 disenfranchised.

26

27

28

## IV. CONFIRMATION OBJECTIONS SHOULD BE OVERRULED AND CONSIDERED AT THE CONFIRMATION HEARING

### A. Challenges to Confirmation of the Plan are Properly Deferred to the Confirmation Hearing

The remaining Objections are not objections to the adequacy of the information provided in the Proposed Disclosure Statement or to relief requested in the Solicitation Procedures Motion; rather, they are Objections to the Plan that should be deferred to the Confirmation Hearing and, to the extent necessary and appropriate, considered at that time. *See, e.g., In re Larsen*, No. 09-02630-TLM, 2011 WL 1671538, *2 n.7 (Bankr. D. Idaho May 3, 2011) ("Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("The question whether a plan meets requirements for confirmation is usually answered at confirmation hearings."). Specifically, the Objections (or parts thereof) of CN, the CPUC, the PSPS Class, the California State Agencies, the Federal Agencies, and Abrams include objections to the Plan regarding the Debtors' ability to satisfy the requirements for Plan feasibility, issues relating to Plan classification, and other issues relating to the Debtors' ability to satisfy the requirements of section 1129 of the Bankruptcy Code, and fall into the category of objections that should be deferred. None of such objections rise to the level of rendering the Plan unconfirmable as a matter of law.

The hearing to approve a disclosure statement is solely intended to determine whether the information provided is "adequate" under section 1125 of the Bankruptcy Code, thereby enabling voting constituents to make informed judgments about whether to accept or reject a plan. Disputes on confirmation-related issues are not a bar to disclosure statement approval. Indeed, requiring adjudication on confirmation issues at this time would effectively convert any disclosure statement hearing into a confirmation hearing without the benefit of the evidentiary record necessary to determine confirmation issues. *See, e.g., In re Larsen*, 2011 WL 1671538 at *4 (holding that the decision on a classification issue, which would require "surmise and speculation" if decided after the disclosure statement hearing, "is one for confirmation to be decided on the evidence."); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be taken

1  to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due

2  process considerations are protected and objections are restricted to those defects that could not be

3  cured by voting . . . .”); *see also In re Quigley Co.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007)

4  (approving the debtor's disclosure statement despite noting that the debtor's parent's prepetition

5  settlement with certain asbestos plaintiffs raised, *inter alia*, questions concerning good faith and

6  vote designation after finding that such issues were "confirmation issues that require an evidentiary

7  hearing").

8       Indeed, Courts have consistently held that challenges to a chapter 11 plan itself—such as

9  challenges to the plan's feasibility, classification of claims under the plan, whether the plan meets

10  the best interests of creditors test or satisfies any other applicable provision of section 1129, and the

11  enforceability of any proposed plan release and exculpation provisions—are not proper disclosure

12  objections but rather plan objections that should be addressed at confirmation. *See e.g., In re*

13  *Rosenblum*, 2019 WL 5782589 at *6 ("The more recent objections filed by the Debtor [to the

14  disclosure statement] again raise primarily plan confirmation issues [of] good faith, classification,

15  feasibility and cramdown, and, allowed unsecured claim objection.") (modifications and citations

16  omitted); *In re Alaska Fur Gallery, Inc.*, No. A09-00196-DMD, 2010 WL 7765565, at *3 (Bankr.

17  D. Alaska May 25, 2010) (finding, in ruling on approval of a disclosure statement, that objections

18  contending "the plan violates the absolute priority rule and that it is not feasible . . . are better left

19  for the confirmation hearing; they will not be addressed here."); *In re Ellipso, Inc.*, No. 09-00148,

20  2012 WL 368281, at *2 (Bankr. D.D.C. Feb. 3, 2012) (holding certain disclosure statement

21  objections were confirmation issues "more appropriately dealt with at a confirmation hearing"

22  including "(i) the contention that the classification of claims is improper; (ii) a claim that the

23  Proponents do not have the means to fund the plan; [and] (iii) an objection to the disclosure

24  statement's admission that if [certain] claims are allowed, there will be nothing left to pay the other

25  creditors"); *In re Quigley Co.,* 377 B.R. at 119 (approving disclosure statement and holding that

26  plan-related issues, including the scope of third party releases, are confirmation issues); *Matter of*

27  *Colin,* 44 B.R. 806, 809 (Bankr. S.D.N.Y. 1984) (refusing to apply the best interests of creditors

28

test under section 1129(a)(7) where confirmation of the proposed plan was not yet at issue in the case, observing that "[s]ince the 'best interests of creditors test' of § 1129(a)(7) only becomes applicable upon the casting of a negative vote against the plan, the committee's argument is premature").

The Court is undoubtedly aware that these issues are matters properly reserved for confirmation as the Court directed the Debtors to inform all parties in the Notice of Disclosure Statement Hearing that the Court "narrowly construes section 1125(a)(1) of the Bankruptcy Code" and would not consider confirmation objections unless the objection is "based on a good faith belief that the proposed Plan is unconfirmable as a matter of law"—which is a narrow, exacting standard. *See In re Larsen*, 2011 WL 1671538 at *2 n.7 ("Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage. However, if it appears there is a defect that makes a plan *inherently or patently unconfirmable*, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing.") (emphasis added); *In re Main Street AC, Inc.*, 234 B.R. 771 (Bankr. N.D. Cal. 1999) ("It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan *could not possibly be confirmed*.") (emphasis added).

The Plan Proponents address the Confirmation Objections in detail in the Objection Summary Chart; however, none of the Confirmation Objections raise any issues that rise to the level of rendering the Plan "patently unconfirmable." Thus, these Objections should be overruled.

V.  CONCLUSION

The Plan Proponents have worked diligently and have addressed, to the extent practicable and appropriate, any Objections with respect to the adequacy of the Proposed Disclosure Statement and the Solicitation Procedures Motion. The Proposed Disclosure Statement, as currently proposed, provides adequate information for parties entitled to vote to make an informed decision about whether to accept or reject the Plan, as required by section 1125 of the Bankruptcy Code. Additionally, none of the Objections raise any issue that warrants a finding that the Plan is fatally

flawed and not confirmable as a matter of law.  Rather, those issues should be raised and addressed at the Confirmation Hearing.  Accordingly, the Debtors respectfully request that the Court enter the Revised Proposed Order approving the Proposed Disclosure Statement and the Solicitation Procedures Motion.

Dated: March 9, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By:  _/s/  Stephen Karotkin_
        Stephen Karotkin

*Attorneys for Debtors*
*and Debtors in Possession*