## Exhibit 1-1

Revised Proposed Order

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors
and Debtors in Possession*

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>   **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                                   **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br>No. 19-30088 (DM)<br>(Lead Case)<br>(Jointly Administered)<br><br>**[PROPOSED] ORDER (I) APPROVING PROPOSED DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION; (II) APPROVING FORM AND MANNER OF NOTICE OF HEARING ON PROPOSED DISCLOSURE STATEMENT; (III) ESTABLISHING AND APPROVING PLAN SOLICITATION AND VOTING PROCEDURES; (IV) APPROVING FORMS OF BALLOTS,  SOLICITATION PACKAGES, AND RELATED NOTICES; AND (V) GRANTING RELATED RELIEF** |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Court having considered (I) the proposed disclosure statement, dated February 7, 2020 [Docket No. 5700] (together with all schedules and exhibits thereto, including, without limitation, the exhibits filed on February 18, 2020 [Docket No. 5801], and as may be modified, amended, or supplemented from time to time, the "**Proposed Disclosure Statement**"), for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated January 31, 2020* [Docket No. 5590] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") and (II) the Motion, dated February 19, 2020 (the "**Motion**")[1], of PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 3017-1 and 3020-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), the *Order Establishing Procedures for Disclosure Statement and Confirmation Hearing* (N.D. Cal. May 2017) (Montali, J.) (the "**Procedures Order**"), and the Court's *Amended Order Establishing Schedule for Disclosure Statement Approval and Plan Confirmation* [Docket No. 5732] (the "**Scheduling Order**"), for an order (a) approving the form of notice previously reviewed by the Court for the hearing (the "**Disclosure Statement Hearing**" and the notice thereof, the "**Disclosure Statement Hearing Notice**") to consider approval of the Proposed Disclosure Statement and the manner of notice thereof; (b) approving the procedures for (i) soliciting and tabulating votes to accept or reject the Plan, including procedures for the solicitation of votes from the holders of Fire Victim Claims and the establishment of a Record Date for voting on the Plan and serving related notices, and (ii) voting to accept or reject the Plan, including procedures for the solicitation of votes from holders of Fire Victim Claims and the electronic submission of votes; (c) approving (i) the forms of Ballots and Solicitation Packages and procedures for the distribution thereof, including the form of master ballot for the submission of votes to accept or reject the Plan by attorneys representing multiple holders of Fire Victim Claims and related solicitation directive form and solicitation procedures for holders of Fire Victim Claims, and (ii) the form

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

of Notice of Non-Voting Status to be sent to holders of Claims and Interests that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan or are otherwise deemed not entitled to vote on the Plan; and (d) approving the form and manner of notice of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**" and the notice thereof, the "**Confirmation Hearing Notice**"), all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found and determined that notice of the Motion as provided therein is reasonable and sufficient, and it appearing that no other or further notice need be provided; and the Debtors having filed certain amendments and revisions to the Proposed Disclosure Statement [Docket No. [•] and the Solicitation Procedures [Docket No. [•] to address certain formal and informal objections and responses to the Proposed Disclosure Statement and the relief requested in the Motion; and this Court having reviewed the Proposed Disclosure Statement, the Motion, and the Wells Declaration (as amended on February 2, 2019 [Docket No. 263]); and this Court having held a hearing on the adequacy of the Proposed Disclosure Statement and the relief requested in the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that approval of the Proposed Disclosure Statement and the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest; and upon the record of the hearing and all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[2]**

**I.      Jurisdiction and Venue.** The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy*

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  *Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Bankruptcy Local Rule 5011-1(a).  This is a

2  core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C.

3  §§ 1408 and 1409.

4  **II.**     **The Proposed Disclosure Statement.**  The Proposed Disclosure Statement contains

5  adequate information within the meaning of section 1125 of the Bankruptcy Code regarding the Plan,

6  and provides adequate notice of the release, exculpation, and injunction provisions of the Plan.  No

7  further notice is deemed necessary or required.

8  **III.**     **Notice of the Disclosure Statement Hearing and Objection Procedures.**  The form of

9  Disclosure Statement Hearing Notice, substantially in the form previously reviewed by, and filed with,

10  the Court [Docket No. 5733], and the procedures set forth in the Motion and subsequently followed by

11  the Debtors, including, without limitation, the publication of the Disclosure Statement Hearing Notice

12  and the posting of the Disclosure Statement Hearing Notice in the Debtors' billing centers and on the

13  Case Website, provided adequate notice to all creditors, interest holders, and other parties in interest of

14  the time, date, and place of the Disclosure Statement Hearing and the deadline for filing objections to

15  the Proposed Disclosure Statement and the relief requested in the Motion and service of the Disclosure

16  Statement Hearing Notice provided due, proper, and adequate notice for all purposes as required under

17  the Bankruptcy Rules, the Bankruptcy Local Rules, the Procedures Order, and the Scheduling Order. No

18  further notice is deemed necessary or required.

19  **IV.**     **Solicitation and Voting Procedures.**

20      a.  Solicitation and Tabulation Procedures.  The procedures set forth herein, in the

21  Fire Victim Plan Solicitation Directive, and in the Ballots for the solicitation and tabulation of votes to

22  accept or reject the Plan, including, without limitation, the proposed procedures for the temporary

23  allowance of Claims and Interests for the purpose of voting to accept or reject the Plan, the establishment

24  of the Record Date, and the procedures for the solicitation and tabulation of Fire Victim Claims, provide

25  for a fair and equitable process and are consistent with section 1126 of the Bankruptcy Code, Bankruptcy

26  Rule 3018 and Local Rule 3020-1.

27      b.  Voting and Non-Voting Classes.  The holders of Claims and Interests in Classes

28  5A-I, 5A-II, 5A-III, 10A-I, 10A-II, 3B-I, 3B-III, 3B-IV, 5B-I, 5B-II, and 5B-III are entitled to vote to

accept or reject the Plan (collectively, the "**Voting Classes**"). Solely for purposes of approving the Proposed Disclosure Statement and soliciting, voting, and tabulating Ballots on the Plan, the remaining twenty-three (23) Classes of Claims and Interests are found and determined to be Unimpaired under the Plan (the "**Non-Voting Classes**"). Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims and Interests in such Non-Voting Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

   c.  <u>Forms of Ballots</u>. The Ballots, substantially in the forms annexed hereto as **Exhibits A-1 through A-8**, including all voting procedures provided therein, are consistent with Official Form B 314 and have been modified to address the particular aspects of these Chapter 11 Cases and to include certain additional information and instructions relevant and appropriate for each Voting Class. The Ballots comply with the requirements of Bankruptcy Rule 3017(d). No further information or instructions are necessary with respect to the Ballots.

   d.  <u>Notice of Non-Voting Status</u>. The form of Notice of Non-Voting Status, substantially in the form annexed hereto as **Exhibit B**, complies with Bankruptcy Rule 3017(d) and, together with the Confirmation Hearing Notice, provide adequate notice to the holders of Claims and Interests in the Non-Voting Classes (or the holders of Claims or Interests that are otherwise deemed not entitled to vote on the Plan) of their non-voting status. No further notice is deemed necessary or required.

   e.  <u>Voting Deadline</u>. The period set forth herein and in the Scheduling Order to solicit votes to accept or reject the Plan and to make elections with respect thereto complies with Bankruptcy Rule 3017(c), is a reasonable and sufficient period of time for the holders of Impaired Claims and Interests, including the holders of Fire Claims and HoldCo Rescission or Damage Claims, to make an informed decision regarding whether to accept or reject the Plan to make elections with respect thereto, and to timely return Ballots evidencing such decisions.

   f.  <u>Solicitation Packages and Procedures for Distribution Thereof</u>. The contents of the Solicitation Packages and the proposed procedures for distribution thereof, including the Fire Victim Claims Solicitation Notice and Fire Victim Plan Solicitation Directive, substantially in the form attached hereto as **Exhibit C**, the Fire Victim Master Ballot, the procedures for the submission of votes to accept or reject the Plan by attorneys representing multiple holders of Fire Victim Claims, and the related

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

procedures for the direct or indirect solicitation of votes to accept or reject the Plan from the holders Fire Victim Claims (as modified herein), comply with Bankruptcy Rule 3017, constitute sufficient notice to all interested parties of the Record Date, the Voting Deadline, the Plan Objection Deadline, the Confirmation Hearing, and all related matters, and are adequate under the circumstances. No further notice is deemed necessary or required.

**V.** **The Confirmation Hearing.** The procedures set forth herein and in the Motion for providing notice of the Confirmation Hearing, including the form of the Confirmation Hearing Notice and the procedures for publication of the Confirmation Hearing Notice and the posting of the Confirmation Hearing Notice in the Debtors' billing centers and on the Case Website, are consistent with Bankruptcy Rules 2002(b), 2002(d), 2002(l), and 3020(b)(1) and section 1128 of the Bankruptcy Code, and provide due, proper, and adequate notice of the time, date, and place of the Confirmation Hearing and for filing objections or responses to confirmation of the Plan, to holders of Claims and Interests, and other parties in interest. No further notice is deemed necessary or required.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Proposed Disclosure Statement (as approved, including any exhibits or schedules thereto and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**"), contains adequate information with respect to the Plan in satisfaction of the requirements of section 1125 of the Bankruptcy Code, provides adequate and sufficient notice of the release, exculpation, and injunction provisions of the Plan in satisfaction of the requirements of Bankruptcy Rule 3016(c), and is approved.

2. The Motion is granted as provided herein.

3. All objections, responses, statements, or comments, if any, in opposition to approval of the Disclosure Statement and the relief requested in the Motion that have not otherwise been withdrawn prior to, or on the record at, the Disclosure Statement Hearing are overruled in their entirety.

4. The form of Disclosure Statement Hearing Notice, substantially in the form previously reviewed by, and filed with, the Court [Docket No. 5733], and the manner of notice of the Disclosure Statement Hearing, as set forth in the Motion and reflected in the Affidavit of Service filed by the Debtors' solicitation agent, Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**") [Docket Nos.

5785 and 5852], including, without limitation, the publication of the Disclosure Statement Hearing Notice and posting of the Disclosure Statement Hearing Notice in the Debtors' billing centers and on the Case Website as set forth in the Motion, and the procedures set forth in the Motion for filing objections and responses to the Proposed Disclosure Statement and the Motion complied with all applicable Bankruptcy Rules, Bankruptcy Local Rules, the Procedures Order, and the Scheduling Order, and constitute proper, adequate, and sufficient notice thereof.

**Record Date**

5.    **The Record Date.**  The Record Date shall be March 3, 2020. Only holders of Claims and Interests as of the Record Date shall be entitled to vote to accept or reject the Plan.  In addition, only holders of Claims and Interests in Non-Voting Classes as of the Record Date (or Claims or Interests in Voting Classes that, as of the deadline set forth in the Scheduling Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan) shall be entitled to receive a Notice of Non-Voting Status.

**Solicitation Procedures**

6.    **Temporary Claim Voting Procedures.**  Solely for the purpose of voting to accept or reject the Plan and not for purposes of the allowance of, or distribution on account of, a Claim, each Claim within a Voting Class shall be temporarily allowed in an amount equal to the amount of such Claim set forth in the Schedules, subject to the following exceptions:

a.    If a Claim is deemed Allowed pursuant to the Plan, such Claim shall be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

b.    If a Claim (other than a Fire Victim Claim in Classes 5A-III or 5B-III as provided in subparagraph (c) below) for which a Proof of Claim has been timely filed, is marked as wholly contingent, unliquidated, or disputed (based on the face of the Claim or a reasonable review of the Claim and its supporting documentation), such Claim shall be allowed for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, at $1.00, unless such Claim is disputed in the manner set forth in subparagraph (i) below;

c.    Any Fire Victim Claim (including, for the avoidance of doubt, any Fire Victim Claim asserted by any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code)), whether listed in the Schedules or for which a Proof of Claim has been timely filed, regardless of whether such Fire Victim Claim is marked as wholly or partially contingent or non-contingent, liquidated or unliquidated, or disputed or undisputed, is accorded one (1) vote and valued at $1.00 for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, unless such Claim is disputed or allowed for voting purposes in a different amount in the manner set forth

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

in subparagraph (i) below;

d.  Notwithstanding anything to the contrary herein, Subrogation Wildfire Claims shall be allowed for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, at the total aggregate amount of liquidated claims (*i.e.*, payments made to insureds) as reported on the Subrogation Wildfire Claimant's Proof of Claim Form or latest Attachment 1 thereto, unless such Subrogation Wildfire Claim is disputed in the manner set forth in subparagraph (i) below;

e.  Notwithstanding anything to the contrary herein, any Class 10A-II HoldCo Rescission or Damage Claim, whether listed in the Schedules or for which a Proof of Claim has been timely filed, regardless of whether such HoldCo Rescission or Damage Claim is marked as wholly or partially contingent or non-contingent, liquidated or unliquidated, or disputed or undisputed, is accorded one (1) vote and valued at $1.00 for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, unless such Claim is disputed in the manner set forth in subparagraph (i) below;

f.  If a Claim for which a Proof of Claim was timely filed, lists an amount that is partially unliquidated or contingent, such Claim shall be temporarily allowed for voting purposes only with respect to the Plan only in the liquidated, noncontingent amount set forth on the Proof of Claim, unless such Claim is disputed in the manner set forth in subparagraph (i) below;

g.  If a Claim has been estimated for voting purposes or otherwise allowed for voting purposes by Order of the Court, such Claim shall be allowed in the amount so estimated or allowed by the Court for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, unless otherwise provided by Order of the Court;

h.  If a Claim is not listed in the Schedules or is listed as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a Proof of Claim was not (i) timely filed by the applicable Bar Date or (ii) deemed timely filed by an Order of the Court before the Voting Deadline, unless the Debtors have consented in writing, such Claim shall be disallowed for voting purposes with respect to the Plan;

i.  If an objection to, or request for estimation of, a Claim has been filed and served by any party in interest with appropriate standing by the deadline set forth in the Scheduling Order (February 21, 2020, at 4:00 p.m. (Prevailing Pacific Time)), such Claim shall be temporarily disallowed or estimated for voting purposes only with respect to the Plan and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection or request for estimation.  Pursuant to the Scheduling Order, any party seeking to challenge the allowance, disallowance, amount, or classification of a Claim for voting purposes must have filed a motion, pursuant to Bankruptcy Rule 3018(a) (a "**3018 Motion**"), seeking to temporarily allow such Claim or Interest in a different amount or class for purposes of voting to accept or reject the Plan by March 6, 2020, at 4:00 p.m. (Prevailing Pacific Time), unless such deadline is extended by agreement of the Debtors; *provided, however,* that, notwithstanding anything herein or in the Scheduling Order to the contrary, the deadline for any holder of a timely filed HoldCo Rescission or Damage Claim to file a 3018 Motion shall be extended through and including April 23, 2020, at 4:00 p.m. (Prevailing Pacific Time). The rights of the Debtors and any other party in interest to respond or object to any 3018 Motion are hereby expressly reserved. Any holder of a Claim or Interest that timely filed a 3018 Motion will be provided with a Ballot and such Ballot will be counted in accordance with the above-designated procedures, unless temporarily allowed in a different

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

amount by an Order of the Court entered prior to the Voting Deadline. For the avoidance of doubt, and notwithstanding any other provision herein to the contrary (including, without limitation, subparagraph (c) above), any amount that is established or determined by the Court in connection with a timely filed 3018 Motion shall be allowed in the amount determined by the Court for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution;[3]

j.   If the voting amount of a Claim or Interest has been established by a stipulation, settlement, or other agreement filed by the Debtors on or before the Voting Deadline, such Claim shall be allowed for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution, in the stipulated, settled, or otherwise agreed-to amount;

k.   For purposes of voting, classification, and treatment under the Plan, each party that holds or has filed more than one Claim in a particular Class shall be treated as if such entity has only one Claim in that particular Class, the Claims filed by such entity shall be aggregated in each applicable Class, and the total dollar amount of such Class shall be the sum of the aggregated Claim of such entity in each applicable Class; *provided, however*, that with respect to any Fire Victim Claim that was filed on a Fire Claimant Proof of Claim Form on behalf of more than one member of a claimant's family, each family member listed on such form in accordance with the instructions set forth therein and in the Bar Date Order that is reasonably identifiable by the Solicitation Agent shall have, for voting purposes only, a Claim, in the amount set forth in subparagraph (c) above, that may be voted to accept or reject the Plan;[4]

l.   Notwithstanding anything contained herein to the contrary, the Solicitation Agent, in its discretion, may contact entities entitled to vote to cure any defects in the Ballots and is authorized, but not required, to so cure any defects;

m.   If (i) a Claim is filed in the amount of $0.00, (ii) as of the Record Date, the outstanding amount of a Claim is not greater than $0.00 as determined based on a review of the Claim by the Debtors' professionals, or (iii) a Claim has been disallowed, expunged, disqualified, or suspended, the holder of such Claim shall not be entitled to vote on account of such Claim;

n.   If a Claim is filed in a currency other than U.S. Dollars and is not Allowed in a sum certain pursuant to the Plan, the holder of such Claim shall be entitled to vote a Claim in the amount of $1.00; and

o.   Notwithstanding anything herein to the contrary, to the extent the Debtors or the Solicitation Agent are unable to determine (based on their review of the Proofs of Claim, any supporting documentation filed in connection therewith, the Debtors' books and records, and the Schedules) whether a Proof of Claim relates to a Fire

---

[3] Claimants may contact PG&E Ballot Processing c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-333-8977 (international), or by e-mail to pgeinfo@primeclerk.com to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a 3018 Motion has been filed.

[4] The treatment of Subrogation Wildfire Claimants that hold or have filed more than one Claim in a particular Class is solely for purposes of voting, classification, and tabulating Ballots with respect to this Plan, and is without prejudice to any party in interest's right to assert that the claim of each policy holder/tort victim to which the applicable insurer (or assignee) is subrogated is a separate Claim, or whether any Subrogation Wildfire Claimant holds one single claim or multiple claims for purposes of these Chapter 11 Cases (including, without limitation, for voting purposes on any other plans). All parties' rights with respect to the foregoing are expressly preserved.

Claim, such Proof of Claim shall be treated as a Utility General Unsecured Claim or HoldCo General Unsecured Claim (as directed by the Debtors' professionals,) under the Plan for solicitation purposes only.

7. **Temporary Class 10A-I (HoldCo Common Interest) Voting Procedures.** Solely for the purpose of voting to accept or reject the Plan and not for purposes of the allowance of, or distribution on account of, an Interest, the amount of HoldCo Common Interests held by a particular Interest holder in Class 10A-I that will be used to tabulate acceptances or rejections of the Plan shall be the number of shares of Common Stock held by such holder as of the Record Date as evidenced on PG&E Corp.'s share register for registered holders and the depository listings of Cede & Co. for beneficial holders.

8. For the avoidance of doubt, approval of the Solicitation Procedures and the other relief granted herein is without prejudice to the relief any holder of a Claim or Interest may seek from the Court, pursuant to Bankruptcy Rule 3013, regarding the classification of such holder's Claim or Interest.

### Solicitation Packages

9. The Solicitation Packages are approved.

10. In accordance with Bankruptcy Rule 3017(d) and the Scheduling Order, the Solicitation Agent, on behalf of the Debtors and the Shareholder Proponents, shall cause the Solicitation Packages to be mailed by March 31, 2020, or as soon as reasonably practicable thereafter (the "**Solicitation Deadline**"); *provided, however*, that the Debtors shall solicit the holders of Claims in Class 10A-II (HoldCo Rescission or Damage Claims) on a rolling basis as such Claims are filed through and including April 16, 2020, or as soon as reasonably practicable thereafter.

11. **General Solicitation Procedures.** In accordance with Bankruptcy Rule 3017(d), the Solicitation Packages shall contain:

   a. With respect to holders of Claims and Interests in the Voting Classes (but subject to the procedures set forth below with respect to the mailing of Solicitation Packages to holders of Fire Victim Claims):

   i. A copy of this Order (without any exhibits);

   ii. The Confirmation Hearing Notice;

   iii. The Disclosure Statement (with the Plan annexed thereto);

   iv. Copies of letters from each of the Tort Claimants Committee and the Ad

Hoc Committee recommending acceptance of the Plan; and

    v.    An appropriate form of Ballot(s) with respect to the Plan and appropriate return envelope with prepaid postage.

b.    With respect to holders of Claims and Interests in the Non-Voting Classes (or Claims or Interests in Voting Classes that, as of the deadline set forth in the Scheduling Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan):

    i.    The Confirmation Hearing Notice; and

    ii.    A Notice of Non-Voting Status.

c.    With respect to the U.S. Trustee: a copy of each document contained in each version of the Solicitation Packages.

d.    With respect to the parties on the master service list, including any party that submitted a notice of appearance under Bankruptcy Rule 2002, a Solicitation Package without any Ballot(s).

12.    **Fire Victim Solicitation Procedures.** The notice (the "**Fire Victim Claims Solicitation Notice")** and the fire victim plan solicitation directive (the "**Fire Victim Plan Solicitation Directive**"), substantially in the form attached hereto as **Exhibit C**, mailed by the Debtors by overnight delivery and electronic mail (where available) to all known attorneys representing holders of Fire Victim Claims (collectively, the "**Firms**"), and the related procedures set forth in the Motion and the Fire Victim Plan Solicitation Directive relating to the solicitation of votes of the holders of Fire Victim Claims to accept or reject the Plan (as modified herein) are approved. Each Firm was required to have completed and returned the Fire Victim Plan Solicitation Directive and a confirmed Client List (as defined below) to the Solicitation Agent on or before March 3, 2020, at 4:00 p.m. (Prevailing Pacific Time) (the "**Fire Victim Solicitation Directive Deadline**"). In connection therewith, the following procedures for the solicitation of votes of holders of Fire Victim Claims are hereby approved:

a.    **Master Ballot Solicitation Method.** If a Firm certified that (i) the Firm will collect and record the votes of its Fire Victim Clients through customary and accepted practices, or that it has obtained authority to procedurally cast each Fire Victim Client's vote (provided that the Firm has complied with the voting procedures set forth herein and each Fire Victim Client has indicated an informed decision on such vote) or (ii) it has the authority under applicable law to vote to accept or reject the Plan on behalf of its Fire Victim Clients (with a valid power of attorney provided to the Solicitation Agent), the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Fire Victim Master Ballot on which the Firm must record the votes on the Plan for each of its Fire Victim Clients in accordance with the Firm's customary and accepted practices. If it is the Firm's customary and accepted practice to receive or collect authorizations or instructions from its Fire

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Victim Clients by e-mail, telephone, or other standard communication methods, the Firm will be authorized to follow such customary practices. Any Firm that elected this procedure shall meet all applicable standards to receive informed consent from its Fire Victim Clients. Each Firm that elected this procedure shall either (i) provide the Disclosure Statement, either in hard copy or electronic format, to its Fire Victim Clients, or (ii) request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on its Fire Victim Clients. Any Firm that elected this procedure was required to have returned the Fire Victim Master Ballot to the Solicitation Agent so that it was received by the Voting Deadline.

b. **Direct Solicitation Method.** If a Firm prefers to have each of its Fire Victim Clients cast its own vote to accept or reject the Plan or it does not have authority from its Fire Victim Clients as described above, such Firm may direct the Solicitation Agent to solicit votes on the Plan directly from its Fire Victim Clients by mailing Solicitation Packages (including Ballots) directly to the Firm's Fire Victim Clients at the primary addresses (or email addresses) identified in the Firm's Client List (as defined below) or as otherwise indicated in the applicable Proof of Claim Forms. Under this procedure, completed Ballots shall be submitted to the Solicitation Agent individually by the Fire Victim Clients; *provided, however,* that a Firm electing this procedure may instruct its Fire Victim Clients to submit their completed Ballots to the Firm, which will, in turn, submit the completed Ballots to the Solicitation Agent so that they are received by the Voting Deadline.[5] Any Firm electing to instruct its Fire Victim Clients to submit completed Ballots to the Firm must have (i) informed the Solicitation Agent of this election in its Fire Victim Plan Solicitation Directive prior to the Fire Victim Plan Solicitation Directive Deadline, and (ii) provided the Solicitation Agent with a cover letter by the Fire Victim Solicitation Directive Deadline to be included in the mailing to its Fire Victim Clients, which cover letter includes express instructions directing the Firm's Fire Victim Clients to submit their completed Ballots to the Firm by a date calculated by the Firm to allow the Firm sufficient time to submit the completed Ballots to the Solicitation Agent so that they are actually received by the Voting Deadline.

c. **Indirect Solicitation Method.** As an alternative to subparagraph (b) above, if a Firm prefers to have each of its Fire Victim Clients cast its own vote to accept or reject the Plan or if it does not have authority from its Fire Victim Clients as described above, such Firm may direct the Solicitation Agent to deliver the Solicitation Packages (including Ballots) to the Firm, which will, in turn, deliver Solicitation Packages to its Fire Victim Clients. Under this procedure, completed Ballots shall be submitted to the Solicitation Agent individually by the Fire Victim Clients. If the Firm selects this method: (i) the Solicitation Agent shall cause the requested number of Solicitation Packages, including the appropriate number of Ballots, to be served on the Firm; (ii) the Firm must deliver the Solicitation Packages to its Fire Victim Clients within three (3) business days after receipt; and (iii) the Firm must file an affidavit of service with the Court confirming the same, and send a copy of such affidavit to the Solicitation Agent, within three (3) business days of such service. The names and addresses of the Fire Victim Clients served do not need to be listed on the affidavit of service. The affidavit of service need only state that service was completed, the date(s) that service was completed, and that the attorney has provided the Solicitation Agent with the required lists of clients, as described below.

d. **Hybrid Solicitation Method**. If a Firm certifies that it has the authority to record the votes of certain of its Fire Victim Clients pursuant to the Master Ballot Solicitation

---

[5] Solicitation Packages to be mailed to any Fire Victim Clients where the applicable Firm has informed the Solicitation Agent that it will collect and submit the completed Ballots of its Fire Victim Client will not include return envelopes with prepaid postage.

Method set forth in subparagraph (a) above (collectively, the "**Master Ballot Fire Victim Clients**"), the Firm shall direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Fire Victim Master Ballot on which the Firm must record the votes with respect to the Plan for its Master Ballot Fire Victim Clients. The Firm also may request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on its Master Ballot Fire Victim Clients. With respect to such Firm's other Fire Victim Clients that are not Master Ballot Fire Victim Clients (collectively, the "**Individual Ballot Fire Victim Clients**"), the Firm must elect the procedure under either the Direct Solicitation Method (subsection (b) above) or the Indirect Solicitation Method (subsection (c) above). Completed ballots by Individual Ballot Fire Victim Clients shall be submitted to the Solicitation Agent individually. Any Firm that elected this procedure was required to indicate on its Client List which Fire Victim Clients are Master Ballot Fire Victim Clients and which are Individual Ballot Fire Victim Clients.

13. Any Firm that failed to return the Fire Victim Plan Solicitation Directive by the Fire Victim Solicitation Directive Deadline is deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Client according to the Direct Solicitation Method described in paragraph 12(b) above.

14. Each Firm may have elected to provide the Solicitation Agent with a cover letter or additional communications by the Fire Victim Solicitation Directive Deadline to be included in any mailing to its Fire Victim Clients as provided in the Fire Victim Plan Solicitation Directive.

15. Each Firm was required to have confirmed the accuracy of the names, addresses, and (if known) e-mail addresses of its Fire Victim Clients as set forth on the Excel spreadsheet sent by the Solicitation Agent (the "**Client List**"), in email, CD-ROM, or USB format, in connection with the distribution of the Fire Victim Claims Solicitation Notice and the Fire Victim Plan Solicitation Directive. Each Firm shall have made any necessary additions, subtractions, or other corrections to the spreadsheet provided, and returned the Client List in the same electronic format to the Solicitation Agent no later than the Fire Victim Solicitation Directive Deadline. Any Fire Victim Claims that cannot be matched to a Firm or that are not otherwise included in any Client List shall be solicited via the Direct Solicitation Method set forth in paragraph 12(b) above. To the extent a Firm included on its returned Client List any additional Fire Victim Clients that were not originally listed by the Solicitation Agent, the Firm shall have provided the Solicitation Agent with the Proof of Claim and/or Schedule number that corresponds to each such additional Fire Victim Client's Fire Victim Claim. No Ballots shall be provided by the Solicitation Agent to any Firm on account of, and any votes included on any Fire Victim Master Ballot

shall not be counted for, any individuals or entities for which a Fire Victim Claim has not been scheduled or timely filed prior to the applicable Bar Date.

16. The Debtors may (at the Debtors' discretion) serve Solicitation Packages on Fire Victim Clients that are served directly with Solicitation Packages as set forth in paragraph 12(b) above via electronic mail, where available, in lieu of a physical mailing.

17. Copies of the materials contained in the Solicitation Packages (excluding the Confirmation Hearing Notice and the Ballots) may be provided in paper copy or on USB drive or CD-ROM at the Debtors' discretion and shall be made available free of charge on the Case Website; *provided, however*, that any party may request to receive paper copies of such materials from the Solicitation Agent at no cost to such party.

18. Each Debtor and non-Debtor affiliate holding Intercompany Claims in Classes 7A and 8B and Utility Common Interests in Class 11B shall be deemed to have received all notices upon entry of this Order without actual delivery of such notices.

19. Holders of Claims who have filed (a) duplicate Claims against the Debtors that are classified under the Plan in the same Class, or (b) Claims that amend or supersede previously filed Claims, shall receive only one Solicitation Package and the appropriate number of Ballots (if applicable) for voting their Claims with respect to that Class under the Plan. For the avoidance of doubt, any duplicative, amended, and/or superseded Claims shall be disallowed for voting purposes.

20. The Debtors shall not be required to send Solicitation Packages to creditors whose Claims are based solely on amounts scheduled by the Debtors that have already been paid in the full scheduled amount; *provided, however*, that if any such creditor would be entitled to receive notice for any reason other than by virtue of the fact that the Claim had been scheduled by the Debtors, such creditor shall be sent notice in accordance with the procedures set forth above.

21. The Debtors shall distribute the Confirmation Hearing Notice to any party to an executory contract or unexpired lease as set forth herein but shall not be required to distribute to such parties copies of the Plan or the Disclosure Statement.

22. With respect to addresses from which notices are returned by the United States Postal Service as undeliverable, the Debtors are excused from mailing Solicitation Packages and any other

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

notices or materials related to voting or confirmation of the Plan to those persons listed at such addresses unless the Debtors are provided with accurate addresses for such persons no less than five (5) business days before the Voting Deadline.

23. **The Notice of Non-Voting Status.** The Notice of Non-Voting Status to be distributed to holders of Claims and Interests in the Non-Voting Classes (or Claims or Interests in Voting Classes that, as of the deadline set forth in the Scheduling Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan), substantially in the form annexed hereto as **Exhibit B**, is approved; *provided, however,* that a Notice of Non-Voting Status shall not be distributed to any holder of a Claim or Interest that timely filed a 3018 Motion with respect to such Claim or Interest (unless the Court determines, in connection with such timely filed 3018 Motion, that the holder of such Claims or Interest is not entitled to vote on the Plan).

24. The Debtors are not required to distribute copies of the Plan or the Disclosure Statement to any holder of a Claim or Interest in a Non-Voting Class unless otherwise requested in writing on or before twenty (20) days before the Confirmation Hearing.

### The Ballots and Distribution Procedures

25. The Ballots to be distributed to holders of Claims and Interests in the Voting Classes, substantially in the forms annexed hereto as **Exhibits A-1 through A-8**, are approved.

26. *Fire Victim Master Ballot.* If a Firm certifies that (i) the Firm will collect and record the votes of its Fire Victim Clients through customary and accepted practices, or that it has obtained authority to procedurally cast each Fire Victim Clients' vote (provided that the Firm has complied with the voting procedures set forth herein and each Fire Victim Clients has indicated an informed decision on such vote) or (ii) it has the authority under applicable law to vote to accept or reject the Plan on behalf of its Fire Victim Clients (with a valid power of attorney provided to the Solicitation Agent), the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one master Ballot, substantially in the form annexed hereto as **Exhibit A-1** (a "**Fire Victim Master Ballot**"), on which the Firm shall record the votes on the Plan for each of its Fire Victim Clients.

27. *Direct Fire Claim Ballots.* All other holders of Fire Claims entitled to vote on the Plan, including holders of Public Entity Wildfire Claims, Subrogation Wildfire Claims, and any holders of

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Fire Victim Claims that are not to be included on any Fire Victim Master Ballot for voting purposes including any Individual Ballot Fire Victim Clients, shall receive a form of Ballot, substantially in the form annexed hereto as **Exhibit A-2** (a "**Direct Fire Claim Ballot**"), for voting on the Plan, with the appropriate inserts of content specific to each particular Class as set forth in **Exhibit A-2**.

28. **Impaired Debt Claim, Rescission or Damage Claim, and Common Interest Ballots.** The following forms of Ballots are to be distributed to the holders of (i) Claims in Class 3B-I (Utility Impaired Senior Note Claims), Class 3B-III (Utility Short-Term Senior Note Claims), and Class 3B-IV (Utility Funded Debt Claims) (collectively, the "**Impaired Debt Claims**"), (ii) Interests in Class 10A-I (HoldCo Common Interests, and (iii) Claims in Class 10A-II (HoldCo Rescission or Damage Claims), and are hereby approved:

a.   *Standard Ballots.*  The Debtors shall distribute a Ballot, substantially in the form annexed hereto as **Exhibit A-3** (the "**Standard Impaired Debt Ballot**") or **Exhibit A-4** (the "**Standard HoldCo Common Interest Ballot**"), respectively, to any holders of Impaired Debt Claims, HoldCo Rescission or Damage Claims, or HoldCo Common Interests that hold such Claims or Interests directly.

b.   *Master and Beneficial Owner Ballots.*  With respect to holders of Impaired Debt Claims and HoldCo Common Interests who hold such Claims or Interests in "street name" as nominees on behalf of the underlying beneficial holders of the Impaired Debt Claims or HoldCo Common Interests (*i.e.*, in those instances in which Cede & Co. is the registered owner of the Impaired Debt Claims or HoldCo Common Interests for the public markets), the Debtors are authorized to send Master Ballots (as defined below) for voting on the Plan to those record holders of such Impaired Debt Claims or HoldCo Common Interests, including, without limitation, the brokers, banks, dealers, or other agents or nominees, or any mailing agents thereof (collectively, the "**Master Ballot Agents**").  The Debtors shall distribute to each Master Ballot Agent reasonably sufficient copies of the Solicitation Packages, including copies of beneficial owner Ballots, substantially in the form annexed hereto as **Exhibit A-5** (the "**Impaired Debt Beneficial Owner Ballot**") or **Exhibit A-6** (the "**Common Interest Beneficial Owner Ballot**" and together with the Impaired Debt Beneficial Owner Ballot, the "**Beneficial Owner Ballots**"), respectively, to distribute to the beneficial owners for whom the Master Ballot Agent holds such Impaired Debt Claims or HoldCo Common Interests in "street name".

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

29. Solicitation Packages may be sent to beneficial owners either in paper format or via electronic transmission in accordance with the customary practices of each Master Ballot Agent. Each Master Ballot Agent shall then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with their customary practices. If it is the Master Ballot Agent's customary and accepted practice to forward solicitation materials and information to (and to collect votes from) its beneficial owners by "voting instruction form," e-mail, telephone, or other standard communications, the Master Ballot Agent is authorized to follow those customary practices in lieu of, or in addition to, collecting actual Beneficial Owner Ballots.

30. The Master Ballot Agents may either:

   a. forward the Solicitation Package (with the applicable Beneficial Owner Ballot) to each beneficial owner of Impaired Debt Claims or HoldCo Common Interests entitled to vote on the Plan within five (5) business days of the receipt by such Master Ballot Agent of the Solicitation Packages and include a return envelope provided by and addressed to the Master Ballot Agent, so that the beneficial owner may return the completed Beneficial Owner Ballot to the Master Ballot Agent. The Master Ballot Agent shall then summarize the individual votes for the Plan of its respective beneficial owners from the individual Beneficial Owner Ballots on the appropriate master ballot, substantially in the form annexed hereto as **Exhibit A-7** (the "**Impaired Debt Master Ballot**") and **Exhibit A-8** (the "**Common Interest Master Ballot**" and, together with the Impaired Debt Master Ballot and the Fire Victim Master Ballot, the "**Master Ballots**"), respectively, and then return the applicable Master Ballot to the Solicitation Agent by the Voting Deadline. The Master Ballot Agent shall advise beneficial owners to return Beneficial Owner Ballots to the Master Ballot Agent by a date calculated by the Master Ballot Agent to allow the Master Ballot Agent to prepare and return the applicable Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline. If it is the Master Ballot Agent's customary and accepted practice to forward solicitation materials and information to (and to collect votes from) its beneficial owners by "voting instruction form," e-mail, telephone, or other standard communications, the Master Ballot Agent will be authorized to follow those customary practices in lieu of, or in addition to, distributing and/or collecting actual Beneficial Owner Ballots; or

   b. "prevalidate" the Beneficial Owner Ballots contained in the Solicitation Package and then forward the Solicitation Package to the beneficial owner of Impaired Debt Claims or HoldCo Common Interests for voting on the Plan within five (5) business days of the receipt by such Master Ballot Agent of the Solicitation Package, with the beneficial owner then returning such Beneficial Owner Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. A Master Ballot Agent shall "prevalidate" a beneficial owner's Beneficial Owner Ballot by (i) indicating thereon the name and address of the record holder of the Impaired Debt Claims or HoldCo Common Interests, as applicable, to be voted with respect to the Plan, the amount of Impaired Debt

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Claims or HoldCo Common Interests, as applicable, held by the beneficial owner as of the Record Date, and the appropriate account numbers through which the beneficial owner's holdings are derived, (ii) certifying the accuracy of the information included on the Beneficial Owner Ballot by stamping the prevalidated Beneficial Owner Ballot with a medallion guarantee, and (iii) executing the beneficial owner's Beneficial Owner Ballot. The beneficial owner shall return the "prevalidated" Beneficial Owner Ballot directly to the Solicitation Agent by the Voting Deadline.

31. The Debtors are authorized to reimburse each Master Ballot Agent's reasonable, documented costs and expenses associated with the distribution of copies of Beneficial Owner Ballots and Solicitation Packages to the beneficial owners of Impaired Debt Claims or HoldCo Common Interests and tabulation of the Beneficial Owner Ballots without further order of the Court.

32. A Claim or Interest holder who holds Impaired Debt Claims or HoldCo Common Interests on its own behalf through DTC (*i.e.*, is both the beneficial holder and Master Ballot Agent for the same Impaired Debt Claims or HoldCo Common Interests) must vote by returning a Master Ballot to the Solicitation Agent and indicating that it is both the beneficial holder and Master Ballot Agent for the Impaired Debt Claim or Common Stock, as applicable.

33. Notwithstanding any other provision of this Order or the Motion, transmittal of Solicitation Packages to any holders of Impaired Debt Claims or HoldCo Common Interests held exclusively through the Master Ballot Agents shall be deemed good, adequate, and sufficient notice if it is delivered by electronic transmission on or before the Solicitation Deadline to the Master Ballot Agents.

**Tabulation Procedures**

34. **The Voting Deadline**. In accordance with the Scheduling Order, the Voting Deadline shall be May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time).

35. To be counted as a vote to accept or reject the Plan, a Ballot must be properly executed, completed, and delivered to the Solicitation Agent, by (a) first-class mail, in the return envelope provided; (b) overnight courier; (c) personal or hand delivery; (d) via the Solicitation Agent's online, electronic balloting portal; or (e) only for Master Ballots or Beneficial Ballots returned by Master Ballot Agents or Fire Victim Master Ballots returned by Firms, by email, to the addresses set out below, in each case, so that it is received by the Solicitation Agent no later than the Voting Deadline:

| If by the electronic balloting portal: | If by e-mail (only for Master Ballots and Beneficial Owner Ballots) to: |
|---|---|
| https://restructuring.primeclerk.com/pge/ and click on the "Submit E-Ballot" link. | pgeballots@primeclerk.com |

| If by standard or overnight mail: | If by hand delivery: |
|---|---|
| PG&E Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street Suite 1440 New York, NY 10165 | PG&E Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street Suite 1440 New York, NY 10165 - or - At one of the Debtors' Claims Service Centers located at the following PG&E locations (beginning April 1, 2020 through the Voting Deadline during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time): (i) 350 Salem Street, Chico, CA 95928; (ii) 231 "D" Street, Marysville, CA 95901; (iii) 1567 Huntoon Street, Oroville, CA 95965; (iv) 3600 Meadow View Road, Redding, CA 96002; (v) 111 Stony Circle, Santa Rosa, CA 95401; or (vi) 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

36. Except as otherwise set forth herein with respect to the submission of Master Ballots, the Debtors are authorized to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal (each an "**E-Ballot**") on the Debtors' Case Website to be maintained by the Solicitation Agent. Parties entitled to vote may cast an E-Ballot and electronically sign and submit the E-Ballot utilizing the online balloting portal. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any E-Ballot submitted in this manner and the holder's electronic signature shall be deemed to be immediately legally valid and effective.

37. **General Tabulation Procedures.** The following procedures with respect to tabulating Ballots are approved:

    a. Whenever a holder casts more than one Ballot voting the same Claim(s) or Interest(s) before the Voting Deadline with respect to the Plan, the last valid Ballot

received on or before the Voting Deadline shall be deemed to reflect the voter's intent and, thus, supersede any prior Ballot for the Plan; *provided that*, if a holder of Claim(s) or Interest(s) submits both a paper Ballot and E-Ballot on account of the same Claim(s) or Interest(s), the E-Ballot shall supersede the paper Ballot, unless the holder receives Bankruptcy Court approval otherwise.

b. Whenever a holder casts a Ballot that is properly completed, executed, and timely returned to the Solicitation Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot shall not be counted for voting with respect to the Plan; *provided that*, for the avoidance of doubt, any holder who does not indicate on their Ballot that they opt into granting the releases shall not be a "Releasing Party" under the Plan.

c. Whenever a holder casts a Ballot that is properly completed, executed, and timely returned to the Solicitation Agent but indicates both an acceptance and a rejection of the Plan, the Ballot shall not be counted with respect to the Plan.

d. Whenever a holder casts a Ballot which indicates a split of their vote(s) to accept or reject the Plan within a particular Class, the Ballot shall not be counted with respect to the Plan.

e. The following Ballots shall not be counted for purposes of voting on the Plan:

   i. Any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

   ii. Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim or Interest;

   iii. Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan (*e.g.*, a Voting Class);

   iv. Any Ballot cast by a person who is not entitled to vote under the Plan, even if such individual holds a Claim or Interest in a Voting Class;

   v. Any Ballot that does not contain a manual or electronic signature; *provided that* any Ballot cast via E-Ballot, shall be deemed to contain an electronic signature; or

   vi. Any Ballot transmitted to the Solicitation Agent by means not specifically approved herein, including, but not limited to, by facsimile, electronic transmission, or other electronic means.

f. If a party that is entitled to vote has more than one Claim or Interest within the same Class against a Debtor based upon different transactions, said party shall be entitled to one (1) vote for numerosity purposes in the aggregate dollar amount of all such Claims or the Record Amount of all said Interests.[6]

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 21 of 217

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

38. With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, shall be entitled to cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Record Date or (ii) the transferee files by the Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Record Date. In instances where a Claim has been the subject of one or more partial transfers, each holder of a portion of said Claim shall be deemed to hold one Claim for numerosity purposes with respect to the Plan.

39. **Master Ballot Tabulation Procedures.** The following additional procedures shall apply to the tabulation of (i) Fire Victim Master Ballots submitted by Firms with respect to Fire Victim Clients, (ii) Impaired Debt Master Ballots and Impaired Debt Beneficial Owner Ballots, and (iii) Common Interest Master Ballots and Common Interest Beneficial Owner Ballots:

    a. Votes cast by beneficial owners of Impaired Debt Claims or HoldCo Common Interests through a Master Ballot Agent shall be applied against the positions held by such Master Ballot Agent as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Master Ballot Agent, whether pursuant to a Master Ballot or prevalidated Ballots, shall not be counted in excess of the Record Amount of such Impaired Debt Claims or HoldCo Common Interests, as applicable, held by such Master Ballot Agent; *provided that*, the Solicitation Agent may adjust such Record Amount to reflect the amount in accordance with subparagraph (c) below;

    b. To the extent that conflicting votes or "overvotes" are submitted by a Firm or Master Ballot Agent with respect to the Plan, whether pursuant to a Master Ballot or prevalidated Ballots, the Solicitation Agent shall attempt to reconcile discrepancies with the Firm or Master Ballot Agent, as applicable;

    c. To the extent that overvotes on a Master Ballot or prevalidated Ballots with respect to the Plan are not reconcilable prior to the preparation of the Voting Certification (as defined below), the Solicitation Agent shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or prevalidated Ballots that contained the overvote, but only to the extent of the Master Ballot Agent's position in Impaired Debt Claims or HoldCo Common Interests, as applicable;

---

[6] *See supra* note [4] above.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

d. Multiple Master Ballots may be completed by a single Firm or Master Ballot Agent and delivered to the Solicitation Agent. Votes reflected by multiple Master Ballots shall be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots submitted by the same Master Ballot Agent or Firm are inconsistent, the last, properly completed Master Ballot received by the Voting Deadline shall be counted;

e. If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s), rather than supersede(s), the earlier Master Ballot(s), the Firm or Master Ballot Agent submitting such Master Ballot shall mark the subsequent Master Ballot(s) as "Supplement" and clearly mark which of the votes reflected thereon are additional votes;

f. If both a Direct Fire Claim Ballot and a Master Fire Claim Ballot are submitted with respect to a single Fire Victim Claim, the Direct Fire Claim Ballot received from the holder of the Fire Victim Claim will be the Ballot that is counted regardless of when it is received so long as it is received before the Voting Deadline, and the vote included for such holder in the Master Fire Claim Ballot will not be counted;

g. For purposes of tabulating votes with respect to the Plan, each record holder or beneficial owner shall be deemed to have voted their applicable Record Amount; and

h. If the same Fire Victim appears on more than one (1) Fire Victim Master Ballot, the Solicitation Agent will attempt to coordinate with the respective Firms to cure the discrepancy; however, if the Firms are unsuccessful in curing the discrepancy, the Solicitation Agent shall count the last, properly-completed Fire Victim Master Ballot received by the Voting Deadline with respect to such Fire Victim Claim.

40. No later than May 22, 2020, the Solicitation Agent shall file with the Court the Voting Certification, and the Debtors shall serve the Voting Certification upon, among others, (a) the Court; (b) the U.S. Trustee; (c) the attorneys for the Creditors Committee; (d) the attorneys for the Tort Claimants Committee; and (e) the attorneys for the Shareholder Proponents.

**Confirmation Hearing**

41. **The Confirmation Hearing.** As previously approved by the Court pursuant to the Scheduling Order: (i) the Confirmation Hearing shall be May 27, 2020, at 10:00 a.m. (Prevailing Pacific Time); (ii) the deadline for filing objections to confirmation of the Plan shall be May 15, 2020, at 4:00 p.m. (Prevailing Pacific Time); and (iii) the deadline for the Debtors, the Shareholder Proponents, and other parties in interest to file replies to any confirmation objections shall be May 22, 2020, at 4:00 p.m. (Prevailing Pacific Time). The Confirmation Hearing and the deadlines related thereto may be continued

from time to time by the Court, without further notice, except for adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.

42. Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issue.

43. The Confirmation Hearing Notice, substantially in the form annexed hereto as **<u>Exhibit D</u>**, is approved and the manner of notice of the Confirmation Hearing, as set forth in the Motion, including, without limitation, the publication of the Confirmation Hearing Notice and posting of the Confirmation Hearing Notice in the Debtors' billing centers and on the Case Website as set forth in the Motion, complies with all applicable Bankruptcy Rules, Bankruptcy Local Rules, the Procedures Order, and the Scheduling Order, and constitutes proper, adequate, and sufficient notice thereof

44. No later than April 24, 2020 or as soon as reasonably practicable thereafter, the Debtors shall publish the Confirmation Hearing Notice once in each of: *The Wall Street Journal (National Edition)*, *USA Today*, *the Los Angeles Times*, *San Francisco Chronicle*, *The Bakersfield Californian*, *The Fresno Bee*, *The Modesto Bee*, *The Sacramento Bee*, *The Santa Rosa Press Democrat*, *The San Jose Mercury News*, *The East Bay Times*, *The Stockton Record*, *The Paradise Post*, *The Chico Enterprise-Record*, *The San Francisco Examiner*, *The Redding Record Searchlight*, *The Red Bluff Daily News*, *The Eureka Times Standard*, *The Ukiah Daily Journal*, *The Grass Valley Union*, *The Napa Valley Register*, *The Trinity Journal In Weaverville*, *The Mad River Union in Arcata*, *The Del Norte Triplicate in Crescent City*, *The Mount Shasta Herald in Mount Shasta*, *The Siskiyou Daily News in Yreka*, *The Modoc County Record in Alturas*, *The Ferndale Enterprise in Fortuna*, *The Lassen County Times in* Susanville, and the *Marin Independent Journal*. In addition, the Debtors shall post an electronic copy of the Confirmation Hearing Notice on the Case Website and shall use reasonable efforts to post the Confirmation Hearing Notice in each of their seventy-five (75) billing centers.

### **<u>Other Matters</u>**

45. The Debtors are authorized to make non-substantive and nonmaterial changes, including changes to correct typographical and grammatical errors and to make conforming changes among such

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

documents, to the Disclosure Statement, the Plan, and the other related solicitation materials and notices (and any exhibits and schedules thereto).

46. The Debtors are authorized to take all necessary actions to effectuate the relief granted pursuant to this Order in accordance with the Motion.

47. This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

** END OF ORDER **

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Exhibit A-1**

**Form of Fire Victim Master Ballot**

1

| | |
|---|---|
| In re: | Chapter 11 Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | **MASTER BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

**FIRE VICTIM MASTER BALLOT**

**CLASS 5A-III HOLDCO FIRE VICTIM CLAIMS AND
CLASS 5B-III UTILITY FIRE VICTIM CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE")**

---

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the

You represent certain clients that may hold claims against the Debtors arising out of or relating to the Fires[2] that occurred in Northern California (each, a "**Fire Victim Claim**" and the clients that you represent that may hold such claims, your "**Fire Victim Clients**"). Fire Victim Claims are classified under the Plan in Class 5A-III (HoldCo Fire Victim Claims) and Class 5B-III (Utility Fire Victim Claims). Pursuant to the Bar Date Order, all timely filed Fire Victim Claims have been deemed filed against both of the Debtors and, therefore, each of your Fire Victim Clients is entitled to vote to accept or reject the Plan in Class 5A-III and Class 5B-III. You are receiving this Master Ballot because you previously certified to the Solicitation Agent in a Fire Victim Plan Solicitation Directive that (i) you will collect and record the votes of your Fire Victim Clients through customary and accepted practices, or that you have obtained authority to procedurally cast each of your Fire Victim Client's votes (provided that you have complied with the voting procedures set forth in the Disclosure Statement and Solicitation Procedures Order and each of your Fire Victim Clients has indicated an informed decision on such vote) or (ii) you have the authority under applicable law to vote to accept or reject the Plan on behalf of your Fire Victim Clients and have provided a valid power of attorney to the Solicitation Agent. **To use this Master Ballot, you must meet all applicable standards to receive informed consent from your Fire Victim Clients.** In addition, you must either (i) provide the Disclosure Statement, either in hard copy or electronic format, to your Fire Victim Clients, or (ii) have requested that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on your Fire Victim Clients.

The rights of holders of Fire Victim Claims in Classes 5A-III and 5B-III are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Master Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure

---

Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

[2] "Fires" means the following fires that occurred in Northern California: (i) 2015 Butte Fire; (ii) 2017 North Bay Fires (LaPorte, McCourtney, Lobo, Honey, Redwood / Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Patrick, Pythian / Oakmont, Maacama, Tubbs, Point, and Sullivan); and (iii) 2018 Camp Fire.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 28 of 217

Statement does not indicate approval of the Plan by the Bankruptcy Court. This Master Ballot may not be used for any purpose other than to record the votes of your Fire Victim Clients to accept or reject the Plan and, if applicable, their election to opt-in to the Plan Releases. If you believe that you have received this Master Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For the votes of your Fire Victim Clients to be counted, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than <u>4:00 p.m. (Prevailing Pacific Time) on May 15, 2020</u>. As set forth below, you will need to attach or otherwise submit an exhibit to this Master Ballot containing details of the Fire Victim Clients you represent and for whom you are voting on their behalf under this Master Ballot (the "<u>Exhibit</u>").**

If you have any questions on how to properly complete this Master Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 29 of 217

**INSTRUCTIONS FOR COMPLETING THE FIRE VICTIM MASTER BALLOT**

This Master Ballot is submitted to you to solicit, collect, and record the votes of your Fire Victim Clients to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class 5A-III and Class 5B-III if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Fire Victim Claims that vote on the Plan in each Class. In the event that Class 5A-III and Class 5B-III vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and thereby make the Plan binding on the holders of Fire Victim Claims if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Fire Victim Claims and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have the votes of your Fire Victim Clients reflected on this Master Ballot counted, this Master Ballot must be completed, signed, and returned to the Solicitation Agent so that it is actually received no later than Voting Deadline of <u>May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time)</u>.** Master Ballots must be delivered to the Solicitation Agent at the appropriate address listed below:

| If by e-mail: | If by standard or overnight mail: | If by hand delivery: |
|---|---|---|
| pgeballots@primeclerk.com | PG&E Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street Suite 1440 New York, NY 10165 | PG&E Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street Suite 1440 New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery.<br><br>From April 1, 2020, between the hours of 8:30 a.m. – 5:00 p.m. (Prevailing Pacific Time) at one of the Debtors' Claims Service Centers located at the following PG&E locations:<br>(i) 350 Salem Street, Chico, CA 95928;<br>(ii) 231 "D" Street, Marysville, CA 95901;<br>(iii) 1567 Huntoon Street, Oroville, CA 95965;<br>(iv) 3600 Meadow View Road, Redding, CA 96002;<br>(v) 111 Stony Circle, Santa Rosa, CA 95401; or<br>(vi) 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to pgeballots@primeclerk.com).**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 30 of 217

You must properly complete the Master Ballot as follows:

a. <u>Item 1 (Exhibit)</u>. Item 1 below requires that you include with this Master Ballot an exhibit (the "**Exhibit**"), in electronic format (Excel or a comparable application), that lists the information set forth herein with respect to each of your Fire Victim Clients. Enclosed with this Ballot is a USB drive with a prepopulated Exhibit, in Excel format, with the Fire Victim Client information you submitted with your Fire Victim Plan Solicitation Directive. For each of the Fire Victim Clients for which you are casting votes to accept or reject the Plan on this Master Ballot you must include on the Exhibit: (a) the Proof of Claim number or Schedule number that corresponds to such Fire Victim Client's Fire Victim Claim; (b) the amount of such Fire Victim Client's Fire Victim Claim; (c) the last name of the Fire Victim Client; (d) the first name of the Fire Victim Client; (e) the address of the Fire Victim Client; (f) whether the Fire Victim Client votes to accept or reject the Plan; and (g) whether the Fire Victim Client elects to grant (*i.e.*, opt-in to) the releases contained in Section 10.9(b) of the Plan (the "**Plan Releases**"). Please ensure that columns on the Exhibit are no greater than 45 characters wide.

| Claim Number | Schedule Number | Claim Amount | Last Name | First Name | Address | Vote on the Plan | | Opt-In to the Plan Releases |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Class 5A-III | Class 5B-III | |
| 1001 | 1502 | $1 | Smith | Alex | 123 Main St, City, California 9000 | Accept | Accept | Yes |
| 1002 | 1501 | $1 | Jones | John | 321 Side St, City, California 9000 | Reject | Reject | No |

**Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Fire Victim Claim has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose**.

If you have any technical questions or need to arrange for special delivery of your Exhibit, please contact the Solicitation Agent at pgeballots@PrimeClerk.com or by telephone at 844-339-4217 (domestic toll-free) or 929-333-8977 (international).

b. Any vote included on the Exhibit that is submitted without the inclusion of the Fire Victim Client's name and the Proof of Claim number or Schedule number that corresponds to such party's Fire Victim Claim will not be counted.

c. <u>Item 2 (Voting Summary)</u>. Item 2 below requires you to summarize the votes of your Fire Victim Clients for the Solicitation Agent. If all of your Fire Victim Clients set forth in the Exhibit have voted in the same manner (*e.g.*, all such Fire Victim Clients have voted to accept the Plan or all such Fire Victim Clients have voted to reject the Plan), please check the applicable box marked "A" or "B" in Item 2 below. If certain of your Fire Victim Clients set forth in the Exhibit have voted to accept the Plan and others have voted to reject the Plan, please check the

box marked "C" in Item 2 below.  **Please note that the Solicitation Agent will review the Exhibit to collect and record the individual votes of each of your Fire Victim Clients regardless of your answer in Item 2 below.**  In the event there is a discrepancy between your response to Item 2 and the individual votes of any of the Fire Victim Clients included in the Exhibit, the individual vote reflected on the Exhibit will govern and will supersede your response in Item 2 below.

d.      Each Fire Victim Client that votes must vote the entire amount of his, her, or its claim to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and may not split such vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

e.      If the Exhibit to this Master Ballot fails to designate either an acceptance or rejection of the Plan or designates both an acceptance and rejection of the Plan for any particular Fire Victim Client, the Solicitation Agent may, in its discretion, either contact the party submitting the Master Ballot to attempt to cure the defect or the vote of that particular Fire Victim Client shall not be counted as either an acceptance or rejection of the Plan.

f.      <u>Item 3 (Plan Release Election Summary)</u>.  Item 3 below requires you to summarize the elections of your Fire Victim Clients with respect to the Plan Releases.  If all of your Fire Victim Clients set forth in the Exhibit have made the same election under the Plan, (*e.g.*, all such Fire Victim Clients have elected to grant the Plan Releases or all such Fire Victim Clients have elected not to grant the Plan Releases), please check the applicable box marked "A" or "B" in Item 3 below.  If certain of your Fire Victim Clients set forth in the Exhibit have elected to grant the Plan Releases and others have elected not to grant the Plan Releases, please check the box marked "C" in Item 3 below.  **Please note that the Solicitation Agent will review the Exhibit to collect and record the elections of each of your Fire Victim Clients regardless of your answer to Item 3 below.**  In the event there is a discrepancy between your response to Item 3 and the individual elections of any of the Fire Victim Clients included in the Exhibit, the individual elections reflected on the Exhibit will govern and will supersede your response in Item 3 below

g.      If the Exhibit to this Master Ballot fails to designate whether any particular Fire Victim Client has elected to opt-in to granting the Plan Releases, that Fire Victim Client shall be deemed to have **NOT** granted the applicable Plan Releases.

h.      <u>Item 4 (Acknowledgements and Certifications)</u>.  Item 4 contains certain required certifications which you are making by signing and returning the Master Ballot.  Please ensure that you have read and understood the certifications prior to signing the Master Ballot and the certifications are correct for each Fire Victim Claim voted on the Master Ballot.  Provide your name, mailing address and any remaining information requested in Item 4 below.

i.      Sign and date the Master Ballot.

j. If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding.

k. Deliver the completed, executed Master Ballot so as to be <u>received</u> by the Solicitation Agent before the Voting Deadline.

**PLEASE NOTE:**

No Master Ballot shall constitute or be deemed a Proof of Claim or an assertion of a Claim. No fees, commissions, or other remuneration will be payable for soliciting votes on the Plan.

**NOTHING CONTAINED HEREIN OR IN THE SOLICITATION PACKAGES SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS, THE SHAREHOLDER PROPONENTS, OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 5A-III HOLDCO FIRE VICTIM CLAIMS AND CLASS 5B-III UTILITY FIRE VICTIM CLAIMS UNDER THE PLAN**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed the Debtors' liability for all Class 5A-III and 5B-III Claims shall be fully assumed by, and be the sole responsibility of the Fire Victim Trust, and all such Claims shall be satisfied solely from the assets of the Fire Victim Trust. Pursuant to a Channeling Injunction, each holder of a Class 5A-III and 5B-III Claim shall have its Claim permanently channeled to the Fire Victim Trust, and such Claim shall be asserted exclusively against the Fire Victim Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.**

**The Fire Victim Trust will be funded with assets of an aggregate value of $13.5 billion. As set forth in the Disclosure Statement and the Plan, these assets will comprise (i) $5.4 billion in cash to be contributed on the Effective Date; (ii) $650 million in cash to be contributed on or before January 15, 2021; (iii) $700 million in cash to be contributed on or before January 15, 2022 (the payments in (ii) and (iii) being pursuant to the Tax Benefits Payment Agreement); (iv) $6.75 billion in common stock of PG&E Corp. to be contributed on the Effective Date; and (v) the assignment of certain causes of action and insurance rights. Pursuant to the Fire Victim Claims Resolution Procedures, the trustee of the Fire Victim Trust will satisfy Class 5A-III and 5B-III Claims from these assets.**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 34 of 217

# FIRE VICTIM MASTER BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Required Exhibit List of Fire Victim Clients.** Please include the Exhibit described above, in electronic format (Excel or a comparable application), with respect to each Fire Victim Client for whom you are submitting a vote to accept or reject the Plan herein. For the votes of your Fire Victim Clients to be counted, the Exhibit must be in the format and include all of the information set forth in paragraph (a) of the Instructions to this Master Ballot.

**Item 2. Summary of Votes with Respect to Plan.**

The undersigned certifies that:

*CHECK ONE BOX ONLY*

A ☐ **ALL** of the Fire Victim Clients listed on the Exhibit required in Item 1 **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan.

B ☐ **ALL** of the Fire Victim Clients listed on the Exhibit required in Item 1 **REJECT (*I.E.*, VOTE AGAINST)** the Plan.

C ☐ Certain of the Fire Victim Clients listed on the Exhibit required in Item 1 **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan, while other Fire Victim Clients **REJECT (*I.E.*, VOTE AGAINST)** the Plan.

**Item 3. Summary of Optional Release Elections.**

---

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF FIRE VICTIM CLAIMS IN THE PLAN:**

**Fire Victim Clients can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

---

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 35 of 217

> **A Fire Victim Client's election to opt-in to the releases does not affect the classification or treatment of their Fire Victim Claims in any way pursuant to the Plan.**
>
> **Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**
>
> **Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto. You are advised to carefully review and consider the Plan Releases in their entirety.**

The undersigned certifies that:

*CHECK ONE BOX ONLY*

A ☐ **ALL** of the Fire Victim Clients listed on the Exhibit required in Item 1 elect to **GRANT** (*I.E.*, **OPT-IN TO**) the releases contained in Section 10.9(b) of the Plan.

B ☐ **ALL** of the Fire Victim Clients listed on the Exhibit required in Item 1 elect to **NOT GRANT** (*I.E.*, **NOT OPT-IN TO**) the releases contained in Section 10.9(b) of the Plan.

C ☐ Certain of the Fire Victim Clients listed on the Exhibit required in Item 1 elect to **GRANT** (*I.E.*, **OPT-IN TO**) the releases contained in Section 10.9(b) of the Plan, while other Fire Victim Clients elect to **NOT GRANT** (*I.E.*, **NOT OPT-IN TO**) the releases contained in Section 10.9(b) of the Plan.

**Item 4. Acknowledgments and Certification.** By signing this Master Ballot, the undersigned certifies that the following matters are true and correct:

a) I have been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits.

b) Each of the individuals set forth on the Exhibit attached hereto is a Fire Victim Client holding a Fire Victim Claim under the Plan.

c) Each of the Fire Victim Clients set forth on the Exhibit is represented by me and, through the execution and filing of this Master Ballot with the Solicitation Agent, I either (i) have collected and recorded the votes of my Fire Victim Clients through customary and accepted practices, or have obtained authority to procedurally cast each Fire Victim Clients' vote, and I have complied with the voting procedures set forth in the Disclosure Statement and Solicitation Procedures Order and each of my Fire Victim Clients has indicated an informed decision on such vote; or (ii) have the authority under applicable law to vote to accept or reject the Plan on behalf of

my Fire Victim Clients and I have provided a valid power of attorney to the Solicitation Agent.

d)    I have met all applicable standards to receive informed consent from each of my Fire Victim Clients with respect to his, her, or its vote and release election on this Master Ballot.

e)    I have either (i) provided the Disclosure Statement, either in hard copy or electronic format, to each of my Fire Victim Clients, or (ii) requested that the Solicitation Agent serve Solicitation Packages (without a Ballot) on my Fire Victim Clients.

The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Attorney:     _____

Signature:     _____

Name of Law Firm:     _____

Street Address:     _____

City, State, Zip Code:     _____

Telephone Number:     _____

E-mail Address:     _____

Date Completed:     _____

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 37 of 217

<u>**ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS**</u>

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable.  YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE FIRE VICTIM CLIENTS' RIGHTS MAY BE AFFECTED THEREUNDER.**

<u>**Optional Release Provisions under the Plan**</u>

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to on behalf of Fire Victim Clients by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory**

13

Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

### Other Key Injunction, Exculpation, and Release Provisions under the Plan

Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on Fire Victim Clients whether or not they elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.

*Section 10.6 – Injunction.*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms

14

of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

   (i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

   (ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

   (iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

   (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

   (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 41 of 217

time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 10.9 – Releases.**

(a) ***Releases by the Debtors.*** As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 42 of 217

the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests*. [excerpted above]

(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens*. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases*. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f)     **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g)     **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 44 of 217

**Exhibit A-2**

**Form of Direct Fire Claim Ballot**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 45 of 217

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

## DIRECT FIRE CLAIM BALLOT

**CLASS 5A-[I/II/III] HOLDCO [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE/FIRE VICTIM] CLAIMS**
**CLASS 5B-[I/II/III] UTILITY [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE/FIRE VICTIM] CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE")**

---

   The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the

Case: 19-30088  Doc# 6222-1  Filed: 03/09/20  Entered: 03/09/20 18:21:48  Page 46 of 217

[BALLOT CODE]

You are receiving this Ballot because you have asserted a Claim against the Debtors arising out of or relating to the Fires[2] that occurred in Northern California (each, a "**Fire Claim**"). Your Fire Claims are classified under the Plan in Class 5A-[I/II/III] (HoldCo [Public Entities Wildfire/Subrogation Wildfire/Fire Victim] Claims) and Class 5B-[I/II/III] (Utility [Public Entities Wildfire/Subrogation Wildfire/Fire Victim] Claims). Except as otherwise set forth in the Bar Date Order, all timely filed Fire Claims have been deemed filed against both of the Debtors and, therefore, you are entitled to vote to accept or reject the Plan in Class 5A-[I/II/III] and Class 5B-[I/II/III].

Your rights are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020. If you have received instructions from the attorney or law firm (each, a "Firm") representing you in connection with your Fire Victim Claim to return your completed Ballot to the Firm who will, in turn, submit the completed Ballot to the Solicitation Agent, you must allow sufficient time for the Firm to submit your**

---

Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

[2] "Fires" means the following fires that occurred in Northern California: (i) 2015 Butte Fire (but only with respect to Fire Claims in Classes 5A-I, 5B-I, 5A-III, and 5B-III); (ii) 2017 North Bay Fires (LaPorte, McCourtney, Lobo, Honey, Redwood / Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Patrick, Pythian / Oakmont, Maacama, Tubbs, Point, and Sullivan); and (iii) 2018 Camp Fire.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 47 of 217

**completed Ballots to the Solicitation Agent so that it is actually received by the Voting Deadline.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 48 of 217

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class 5A-[I/II/III] and Class 5B-[I/II/III] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Fire Claims that vote on the Plan in each Class. In the event that Class 5A-[I/II/III] and Class 5B-[I/II/III] vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and thereby make the Plan binding on the holders of Fire Claims if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Fire Claims and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent at the appropriate address listed below no later than the** Voting Deadline of May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time). **Ballots must be delivered to the Solicitation Agent (a) at the appropriate address listed below (or in the enclosed envelope, which may have a different zip code) or (b) via Prime Clerk's E-Ballot platform by visiting https://restructuring.primeclerk.com/pge, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one form of return for your Ballot. If the Firm representing you in connection with your Fire Victim Claim has instructed you to return your completed Ballot to the Firm who will, in turn, submit the completed Ballot to the Solicitation Agent, you must allow sufficient time for the Firm to submit your completed Ballots to the Solicitation Agent so that it is actually received by the Voting Deadline.**

| If by E-Ballot: | If by standard or overnight mail: | If by hand delivery: |
|---|---|---|
| Visit https://restructuring.primeclerk.com/pge and click on the "Submit E-Ballot" link | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery.<br><br>From April 1, 2020, between the hours of 8:30 a.m. – 5:00 p.m. (Prevailing Pacific Time) at one of the |

| If by E-Ballot: | If by standard or overnight mail: | If by hand delivery: |
|---|---|---|
| | | Debtors' Claims Service Centers located at the following PG&E locations:<br>(i) 350 Salem Street, Chico, CA 95928;<br>(ii) 231 "D" Street, Marysville, CA 95901;<br>(iii) 1567 Huntoon Street, Oroville, CA 95965;<br>(iv) 3600 Meadow View Road, Redding, CA 96002;<br>(v) 111 Stony Circle, Santa Rosa, CA 95401; or<br>(vi) 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except via Prime Clerk's E-Ballot platform).**

To properly complete this Ballot, you must follow the procedures described below:

a. <u>Item 1 (Amount of Fire Claims)</u>. Make sure that the information contained in Item 1 below regarding the amount of your Fire Claims is correct. [**Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Fire Victim Claim in Class 5A-III and Class 5B-III has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**]

b. <u>Item 2 (Vote on the Plan)</u>. Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below. You must vote the entire amount of your Fire Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c. If you hold Claims or Interests in a Class other than the Class 5A-[I/II/III] and Class 5B-[I/II/III], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d. The Debtors and the Solicitation Agent have used reasonable efforts to identify each additional family member identified on any Fire Claimant Proof of Claim Form that would be entitled to vote in accordance with the instructions set forth in such form and the Bar Date Order. To the extent you have received two (2) or more duplicative ballots on account of the same family member or Claim, please note that each family member is authorized to submit only one ballot on account of such Claim.

e. If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted; *provided that*, if a holder of Fire Claims timely submits both a paper Ballot and E-Ballot on account of the same Fire Claims, the E-Ballot shall supersede the paper

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 50 of 217

Ballot, unless the holder of the Fire Claims receives Bankruptcy Court approval otherwise.

f.   Item 3 (Optional Release Election).  If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 3 below.

g.   Item 4 (Acknowledgements and Certifications).  Item 4 contains certain required certifications which you are making by signing and returning this Ballot.  Please ensure that you have read and understood the certifications prior to signing this Ballot.  Provide your name, mailing address, and any remaining information requested in Item 4 below.

h.   If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4 below.  By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act).

i.   Sign and date your Ballot.

j.   Return your Ballot with an original signature to the Solicitation Agent so as to be received by the Solicitation Agent before the Voting Deadline.  For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS OR YOU BELIEVE THAT ADDITIONAL MEMBERS OF YOUR FAMILY WERE ENTITLED TO BUT DID NOT RECEIVE SEPARATE BALLOTS TO VOTE TO ACCEPT OR REJECT THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 5A-[I/II/III] HOLDCO [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE/FIRE VICTIM] CLAIMS AND CLASS 5B-[I/II/III] UTILITY [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE/FIRE VICTIM] CLAIMS UNDER THE PLAN**

[Class 5A-I and 5B-I Claims]

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, in full and final satisfaction, settlement, release, and discharge of the Debtors'**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 51 of 217

liability for all Class 5A-I and 5B-I Claims, holders of Class 5A-I and 5B-I Claims shall receive an aggregate Cash amount of $1.0 billion, as provided in the Public Entities Plan Support Agreements, to be distributed in accordance with the Public Entities Settlement Distribution Protocol. The Reorganized Debtors shall also establish the Public Entities Segregated Defense Fund, in accordance with the terms of the Public Entities Plan Support Agreements, in an amount of $10 million.

[Class 5A-II and 5B-II Claims]

As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed the Debtors' liability for all Class 5A-II and 5B-II Claims shall be fully assumed by, and be the sole responsibility of the Subrogation Wildfire Trust, and all such Claims shall be satisfied solely from the assets of the Subrogation Wildfire Trust. Pursuant to a Channeling Injunction, each holder of a Class 5A-II and 5B-II Claim shall have its Claim permanently channeled to the Subrogation Wildfire Trust, and such Claim shall be asserted exclusively against the Subrogation Wildfire Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.

The Subrogation Wildfire Trust will be funded with $11 billion in cash. Pursuant to the Subrogation Claims Resolution Procedures, the trustee of the Subrogation Wildfire Trust will satisfy Class 5A-II and 5B-II Claims from these assets.

[Class 5A-III and 5B-III Claims]

As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed the Debtors' liability for all Class 5A-III and 5B-III Claims shall be fully assumed by, and be the sole responsibility of the Fire Victim Trust, and all such Claims shall be satisfied solely from the assets of the Fire Victim Trust. Pursuant to a Channeling Injunction, each holder of a Class 5A-III and 5B-III Claim shall have its Claim permanently channeled to the Fire Victim Trust, and such Claim shall be asserted exclusively against the Fire Victim Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.

The Fire Victim Trust will be funded with assets of an aggregate value of $13.5 billion. As set forth in the Disclosure Statement and the Plan, these assets will comprise (i) $5.4 billion in cash to be contributed on the Effective Date; (ii) $650 million in cash to be contributed on or before January 15, 2021; (iii) $700 million in cash to be contributed on or before January 15, 2022; (the payments in (ii) and (iii) being pursuant to the Tax Benefits Payment Agreement) (iv) $6.75 billion in common stock of PG&E Corp. to be contributed on the Effective Date; and (v) the assignment of certain causes of action and insurance rights. Pursuant to the Fire Victim Claims Resolution Procedures, the trustee of the Fire Victim Trust will satisfy Class 5A-III and 5B-III Claims from these assets.

**FIRE VICTIM BALLOT**

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/pge. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:_____**

**Prime Clerk's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

**Item 1. Amount of Fire Claims**. For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds Fire Claims in the amount set forth below.

| |
|---|
| **Claim(s) Amount**:   $_____ |

**Item 2. Vote on the Plan.** The undersigned holder of Fire Claims in the amount set forth in Item 1 above hereby votes to:

      **Check one box:**       ☐    **ACCEPT (*I.E.*, VOTE IN FAVOR OF) the Plan**

                                   ☐    **REJECT (*I.E.*, VOTE AGAINST) the Plan**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 53 of 217

**Item 3. Optional Release Election.**

---

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS
OF FIRE CLAIMS IN THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such:  (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below.  If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Fire Claims in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto.  You are advised to carefully review and consider these releases in their entirety.**

---

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. <u>For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases</u>.

☐ **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 54 of 217

**Item 4. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of the Fire Claims identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant: _____

Social Security or Federal Tax I.D. No. of Claimant: _____

Signature: _____

Name of Signatory (if different than Claimant): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

Please check one or both of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Claims in these Chapter 11 Cases

11

# ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

## Optional Release Provisions under the Plan

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 56 of 217

any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

<u>Other Key Injunction, Exculpation, and Release Provisions under the Plan</u>

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

**Section 10.6 – *Injunction*.**

(a) **Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms**

of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

    (i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

    (ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

    (iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

    (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

    (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 58 of 217

    (i)    the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

    (ii)    the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any

time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

*Section 10.9 – Releases.*

(a) ***Releases by the Debtors***. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon

the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests*. [excerpted above]

(c) *Only Consensual Non-Debtor Releases*. Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens*. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases*. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

**Exhibit A-3**

**Form of Standard Impaired Debt Ballot**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 63 of 217

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                        **Debtors.** | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | **BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**STANDARD IMPAIRED DEBT BALLOT**

**[CLASS 3B-IV – UTILITY FUNDED DEBT CLAIMS]**

**[CLASS 10A-II – HOLDCO RESCISSION OR DAMAGE CLAIMS]**

<table>
<tr><td>

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY RECEIVED</u> BY PRIME CLERK LLC ("<u>PRIME CLERK</u>" OR THE "<u>SOLICITATION AGENT</u>") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "<u>VOTING DEADLINE</u>")**

</td></tr>
</table>

        The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 64 of 217

You are receiving this Ballot because you have asserted Claims against the Debtors [arising under or relating to certain of the Utility's funded debt facilities (the "**Utility Funded Debt Claims**")] [for recession or damages arising from or relating to your purchase or acquisition of the Debtors' publicly traded equity securities ("**HoldCo Rescission or Damage Claims**")].  Your Claims are classified in Class [3B-IV/10A-II] under the Plan.

Your rights are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**").  The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot.  If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada).  You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code.  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  This Ballot may not be used for any purpose other than to vote to accept or reject the Plan.  If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international).  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 65 of 217

# INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class [3B-IV/10A-II] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of holders of Claims in Class [3B-IV/10A-II] that vote on the Plan. In the event that holders of Claims in Class 3B-IV vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and thereby make the Plan binding on the holders of Claims in Class [3B-IV/10A-II] if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Claims in Class [3B-IV/10A-II] and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent at the appropriate address listed below no later than the <u>Voting Deadline of May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time)</u>. Ballots must be delivered to the Solicitation Agent (a) at the appropriate address listed below (or in the enclosed envelope, which may have a different zip code) or (b) via Prime Clerk's E-Ballot platform by visiting https://restructuring.primeclerk.com/pge, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one form of return for your Ballot.**

| If by E-Ballot | If by standard or overnight mail, or hand delivery: |
|---|---|
| Visit https://restructuring.primeclerk.com/pge and click on the "Submit E-Ballot" link | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except via Prime Clerk's E-Ballot platform).**

4

To properly complete this Ballot, you must follow the procedures described below:

a. <u>Item 1 (Amount of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims)</u>. Make sure that the information contained in Item 1 below regarding the principal amount of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] you held on the Record Date is correct. [**Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each HoldCo Rescission or Damage Claim in Class 10A-II has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**]

b. <u>Item 2 (Vote on the Plan)</u>. Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

c. If you hold Claims or Interests in a Class other than Class [3B-IV/10A-II], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d. If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, provided that, if a holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] submits both a paper Ballot and E-Ballot on account of the same [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims], the E-Ballot shall supersede the paper Ballot, unless the holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] receives Bankruptcy Court approval otherwise.

e. <u>Item 3 (Optional Release Election)</u>. If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 3 below.

f. <u>Item 4 (Acknowledgements and Certifications)</u>. Item 4 contains certain required certifications which you are making by signing and returning this Ballot. Please ensure that you have read and understood the certifications prior to signing this Ballot. Provide your name, mailing address, and any remaining information requested in Item 4 below.

g. If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

h. Sign and date your Ballot.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 67 of 217

i.  Return your Ballot with an original signature to the Solicitation Agent so as to be received by the Solicitation Agent before the Voting Deadline. For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

**[IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 3B-IV – UTILITY FUNDED DEBT CLAIMS UNDER THE PLAN**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Funded Debt Claims shall receive Cash equal to their Utility Funded Debt Claim Interest and Charges Amount and equal amounts of each issue of the New Utility Funded Debt Exchange Notes in an aggregate amount equal to such holder's Utility Funded Debt Claim Principal Amount. On the Effective Date, any Utility Letters of Credit outstanding shall be replaced or canceled and returned to the issuing Utility Revolver Lender in accordance with the terms of the applicable Utility Letter of Credit and the Utility Revolver Documents.]**

**[IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 10A-II – HOLDCO RESCISSION OR DAMAGE CLAIMS UNDER THE PLAN**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, in full and final satisfaction, settlement, release, and discharge of any HoldCo Rescission or Damage Claims, except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a holder of an Allowed HoldCo Rescission or Damage Claim agree to a less favorable treatment of such Claim, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed HoldCo Rescission or Damage Claim shall receive a number of shares of New HoldCo Common Stock equal to such holder's HoldCo Rescission/Damage Claim Share of [527, 561, 429].]**

---

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 68 of 217

# BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/pge.** Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

Unique E-Ballot ID#:_____

**Prime Clerk's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

---

**Item 1. Amount of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims].** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] in the principal amount set forth below. **[Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each HoldCo Rescission or Damage Claims in Class 10A-II has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.]**

> **Claim(s) Amount**: _____

**Item 2. Vote on the Plan.** The undersigned holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] in the principal amount set forth in Item 1 above hereby votes to:

**Check one box:**      ☐     **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

                                        ☐     **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**Item 3. Optional Release Election.**

---

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF [UTILITY FUNDED DEBT CLAIMS/HOLDCO RESCISSION OR DAMAGE CLAIMS] UNDER THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below. If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Claims in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto. You are advised to carefully review and consider these releases in their entirety.**

---

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.

☐     **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 70 of 217

**Item 4. Acknowledgements and Certification.** By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] in the principal amount identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claim Holder: _____

Social Security or
Federal Tax I.D. No. of Claim Holder: _____

Signature: _____

Name of Signatory
(if different than Claim Holder): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

Street Address (continued): _____

City, State, and Zip Code: _____

Country: _____

E-mail Address: _____

Date Completed: _____


Please check one or both of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Claims in these Chapter 11 Cases

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 71 of 217

The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. **YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

## Optional Release Provisions under the Plan

Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:

As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other

occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

### Other Key Injunction, Exculpation, and Release Provisions under the Plan

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

*Section 10.6 – Injunction.*

(a) **Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 73 of 217

of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

   (i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

   (ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

   (iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

   (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

   (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 74 of 217

(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any

time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 10.9 – Releases.**

(a) ***Releases by the Debtors.*** **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 76 of 217

the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests*.  [excerpted above]

(c) *Only Consensual Non-Debtor Releases*.  Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.  The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens*.  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases*.  Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 78 of 217

**Exhibit A-4**

**Form of Standard HoldCo Common Interest Ballot**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 79 of 217

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**STANDARD HOLDCO COMMON INTEREST BALLOT**
**(CUSIP 69331C108 / ISIN US69331C1080)**

**CLASS 10A-I HOLDCO COMMON INTERESTS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY RECEIVED</u> BY PRIME CLERK LLC ("PRIME CLERK" OR THE "<u>SOLICITATION AGENT</u>") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "<u>VOTING DEADLINE</u>")**

---

       The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:01:48   Page 80 of 217

You are receiving this Ballot because, as of March 3, 2020 (the "**Record Date**"), you are the holder of shares of PG&E Corp. Common Stock ("**HoldCo Common Interests**") that are directly registered on PG&E Corp.'s share register. HoldCo Common Interests are classified under the Plan in Class 10A-I. Pursuant to the Disclosure Statement and Solicitation Procedures Order, solely for the purpose of voting to accept or reject the Plan, the amount of HoldCo Common Interests held by a particular holder that will be used to tabulate acceptances or rejections of the Plan will be the number of shares of Common Stock held by such holder as of the Record Date as evidenced on PG&E Corp's share register for registered holders.

Your rights are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above. **For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

applicable.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 81 of 217

CUSIP 69331C108

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by the holders of HoldCo Common Interests if it is accepted by the holders of at least two-thirds (2/3) in amount of HoldCo Common Interests voted. In the event that holders of HoldCo Common Interests reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and thereby make the Plan binding on holders of HoldCo Common Interests if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of HoldCo Common Interests and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent at the appropriate address listed below no later than the <u>Voting Deadline of section May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time)</u>. Ballots must be delivered to the Solicitation Agent (a) at the appropriate address listed below (or in the enclosed envelope, which may have a different zip code) or (b) via Prime Clerk's E-Ballot platform by visiting https://restructuring.primeclerk.com/pge, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one form of return for your Ballot.**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 82 of 217

CUSIP 69331C108

| If by E-Ballot: | If by standard or overnight mail: | If by hand delivery: |
|---|---|---|
| Visit https://restructuring.primeclerk.com/pge and click on the "Submit E-Ballot" link | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery.<br><br>From April 1, 2020, between the hours of 8:30 a.m. – 5:00 p.m. Pacific Time at one of the Debtors' Claims Service Centers located at the following PG&E locations:<br>(i) 350 Salem Street, Chico, CA 95928;<br>(ii) 231 "D" Street, Marysville, CA 95901;<br>(iii) 1567 Huntoon Street, Oroville, CA 95965;<br>(iv) 3600 Meadow View Road, Redding, CA 96002;<br>(v) 111 Stony Circle, Santa Rosa, CA 95401; or<br>(vi) 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except via Prime Clerk's E-Ballot platform).**

To properly complete this Ballot, you must follow the procedures described below:

a.   <u>Item 1 (Amount of HoldCo Common Interests)</u>.  Make sure that the information contained in Item 1 below regarding the amount of HoldCo Common Interests you held on the Record Date is correct.

b.   <u>Item 2 (Vote on the Plan)</u>.  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

c.   If you hold Claims or Interests in a Class other than HoldCo Common Interests, you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d.   If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, provided that, if a holder of HoldCo Common Interests submits both a paper Ballot and E-Ballot on account of the same HoldCo Common Interest, the E-Ballot shall supersede the paper Ballot, unless the holder of the HoldCo Common Interests receives Bankruptcy Court approval otherwise.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 83 of 217

CUSIP 69331C108

e.  Item 3 (Certification as to HoldCo Common Interests). If you hold HoldCo Common Interests in other accounts or other record names either as a registered holder on the books and records of the Debtors' transfer agent or as a beneficial owner holding through a Master Ballot Agent, please note: (i) you must vote all HoldCo Common Interests in the same manner and make the same election with respect to plan releases on each Ballot you vote and (ii) you must include details of the other accounts or record names you have submitted Ballots in respect of in Item 3 below. Any vote that attempts to partially accept and partially reject the Plan will not be counted.

f.  Item 4 (Optional Release Election). If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 4 below.

g.  Item 5 (Acknowledgements and Certifications). Item 5 contains certain required certifications which you are making by signing and returning this Ballot. Please ensure that you have read and understood the certifications prior to signing this Ballot. Provide your name, mailing address, and any remaining information requested in Item 5 below.

h.  If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

i.  Sign and date your Ballot.

j.  Return your Ballot with an original signature to the Solicitation Agent so as to be received by the Solicitation Agent before the Voting Deadline. For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:01:48   Page 84 of 217

CUSIP 69331C108

**IMPORTANT NOTICE REGARDING THE TREATMENT OF
CLASS 10A-1 HOLDCO COMMON INTERESTS UNDER THE PLAN**

As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, subject to the New Organizational Documents, each holder of a HoldCo Common Interest shall retain such Interest subject to dilution from any New HoldCo Common Stock, or securities linked to New HoldCo Common Stock, issued pursuant to the Plan and, if applicable, shall receive a pro rata distribution of any subscription rights to be distributed to holders of HoldCo Common Interests in connection with a Rights Offering.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 85 of 217

CUSIP 69331C108

# BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/pge. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:_____**

**Prime Clerk's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Interests described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

**Item 1. Amount of HoldCo Common Interests**. For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds HoldCo Common Interests (CUSIP 69331C108 / ISIN US69331C1080) directly on the books and records of the Debtors' transfer agent in the number set forth below.

> **Number of Shares Held**: _____

**Item 2. Vote on the Plan.** The undersigned holder of HoldCo Common Interests in the amount set forth in Item 1 above hereby votes to:

    **Check one box:**   ☐   **ACCEPT (*I.E.*, VOTE IN FAVOR OF) the Plan**

                              ☐   **REJECT (*I.E.*, VOTE AGAINST) the Plan**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 86 of 217

CUSIP 69331C108

**Item 3.  Certification as to HoldCo Common Interests.**  By completing and returning this Ballot, you certify that either (i) you have not submitted any other Ballots for other HoldCo Common Interests held in other accounts or record names either as a registered holder directly on the books and records of the Debtors' transfer agent or as a beneficial owner through a Master Ballot Agent; or (ii) you have provided the information specified in the following table for all other HoldCo Common Interests for which you have submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan, and the same elections as to the grant of releases under the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER HOLDCO COMMON INTEREST BALLOTS OTHER THAN THIS BALLOT.

| Name of Registered Holder (if you voted additional Holdco Common Interests as a registered holder Or Name of Master Ballot Agent (if you voted additional Holdco Common Interests as a beneficial owner) | Master Ballot Agent's DTC Participant Number (if applicable) | Account Number | Number of Shares Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2 | | | | | |
| 3. | | | | | |
| 4. | | | | | |

CUSIP 69331C108

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 87 of 217

**Item 4.  Optional Release Election.**

> **IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLASS 10A-I HOLDCO COMMON INTERESTS UNDER THE PLAN:**
>
> **You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such:  (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**
>
> **To grant these releases you must check the box below.  If you elect not to check the box below, you will not grant the releases.**
>
> **Your election to opt-in to the releases does not affect the classification or treatment of your Claims or Interests in any way pursuant to the Plan.**
>
> **Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**
>
> **Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto.  You are advised to carefully review and consider these releases in their entirety.**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 88 of 217

CUSIP 69331C108

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. <u>For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases</u>.

☐     **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

**Item 5.**   **Acknowledgements and Certification**.   By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of the HoldCo Common Interests identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Interest holder:    _____

Social Security or Federal Tax I.D. No. of Interest holder:    _____

Signature:    _____

Name of Signatory (if different than Interest holder):    _____

If by Authorized Agent, Title of Agent:    _____

Street Address:    _____

City, State, Zip Code:    _____

Telephone Number:    _____

E-mail Address:    _____

Date Completed:    _____

CUSIP 69331C108

Please check one <u>or both</u> of the below boxes if the above address is a change of address for the purpose(s) of:

☐    Future notice mailings in these Chapter 11 Cases; and/or

☐    Distributions, if any, upon your Interests in these Chapter 11 Cases

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 90
of 217
CUSIP 69331C108

# ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

## Optional Release Provisions under the Plan

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 91 of 217

occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

### Other Key Injunction, Exculpation, and Release Provisions under the Plan

Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.

*Section 10.6 – Injunction.*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms

of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 93 of 217

(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 94 of 217

time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 10.9 – Releases.**

(a) ***Releases by the Debtors***. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 95 of 217

the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests.* [excerpted above]

(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens.* Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases.* Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 96 of 217

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 97 of 217

**Exhibit A-5**

**Form of Impaired Debt Beneficial Owner Ballot**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>               **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**IMPAIRED DEBT BENEFICIAL OWNER BALLOT**

**CLASS 3B-I – UTILITY IMPAIRED SENIOR NOTE CLAIMS**
**OR**
**CLASS 3B-III – UTILITY SHORT-TERM SENIOR NOTE CLAIMS**

**APPLICABLE IMPAIRED DEBT NOTE DESCRIPTIONS, CLASSES, AND CUSIP NUMBERS:**

| **Class 3B-I – Utility Impaired Senior Note Claims** | |
|---|---|
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| **Class 3B-III – Utility Short-Term Senior Note Claims** | |
| 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

[CUSIP, ISIN AND CLASS AS INDICATED ON ANNEX A]

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

---

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO
YOUR MASTER BALLOT AGENT:**

**YOU MUST RETURN THIS BALLOT TO YOUR MASTER BALLOT AGENT IN
THE ENVELOPE PROVIDED OR IN ACCORDANCE WITH THE
INSTRUCTIONS PROVIDED BY YOUR MASTER BALLOT AGENT.**

---

**OR**

---

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO
PRIME CLERK LLC ("<u>PRIME CLERK</u>" OR THE "<u>SOLICITATION AGENT</u>"):**

**THIS BALLOT MUST BE COMPLETED AND RETURNED DIRECTLY TO THE
SOLICITATION AGENT SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M.
(PREVAILING PACIFIC TIME) ON MAY 15, 2020
(THE "<u>VOTING DEADLINE</u>")**

---

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because, as of March 3, 2020 (the "**Record Date**"), you are the beneficial owner (a "**Beneficial Owner**") of certain funded debt securities issued by Utility (the "**Impaired Debt Securities**", and any claims arising under or relating to the Impaired Debt Securities, the "**Impaired Debt Claims**") bearing one of the CUSIP / ISIN numbers indicated in **Annex A** of this Ballot. Your Impaired Debt Claims are classified in Class 3B-[I/III] – Utility [Impaired Senior Note/Short-Term Senior Note] Claims under the Plan. Your broker, bank, dealer, agent or nominee is acting as ballot agent (the "**Master Ballot Agent**") for the solicitation of your votes on the Plan.

Your rights are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, <u>amended, or supplemented</u> from time to time, the "**Disclosure Statement**") and the Order

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

Case: 19-30088    Doc# 6223-1    Filed: 03/09/20    Entered: 03/09/20 18:31:48    Page
100 of 217

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**If you received a return envelope addressed to Prime Clerk, your Ballot must be properly completed and returned to the Solicitation Agent so that it is actually received no later than <u>4:00 p.m. (Prevailing Pacific Time) on May 15, 2020</u>.**

**If you received a return envelope addressed to your Master Ballot Agent, or other instructions to return this Ballot to your Master Ballot Agent, your Ballot must be properly completed, signed and returned to your Master Ballot Agent by the date and time specified to permit your Master Ballot Agent to deliver your votes to the Solicitation Agent on or before the Voting Deadline.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

3

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

# INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class 3B-[I/III] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of holders of Claims in Class 3B-[I/III] that vote on the Plan. In the event that holders of Claims in Class 3B-[I/III] vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and thereby make the Plan binding on the holders of Claims in Class 3B-[I/III] if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Claims in Class 3B-[I/III] and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**In order for your vote to be counted, this Ballot must be properly completed, signed (unless it has been prevalidated by your Master Ballot Agent), and returned in the envelope provided (or otherwise in accordance with the instructions of your Master Ballot Agent) so that it received by the Voting Deadline or such other date specified by your Master Ballot Agent.**

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except as instructed by your Master Ballot Agent).**

To properly complete this Ballot, you must follow the procedures described below:

a.  Item 1 (Amount of Impaired Debt Claims). Insert the principal amount of Impaired Debt Claims you held as of the Record Date, or if your Master Ballot Agent pre-printed a principal amount, make sure that the information contained in Item 1 below regarding the principal amount of Impaired Debt Claims you held on the Record Date is correct.

b.  Check the applicable box on Annex A to indicate the appropriate CUSIP/ISIN number for your Impaired Debt Claims. Check one and only one box on Annex A. If you check more than one box on Annex A, you risk invalidating your vote.

c.  Item 2 (Vote on the Plan). Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

d.  If you hold Claims or Interests in a Class other than Class 3B-[I/III], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

e.   If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by your Master Ballot Agent or the Solicitation Agent will be counted, unless the holder of Impaired Debt Claims receives Bankruptcy Court approval otherwise.

f.   <u>Item 3 (Certification as to Impaired Debt Claims)</u>.  If you hold Impaired Debt Claims in other accounts or other record names through other Master Ballot Agents and have voted such Impaired Debt Claims to accept or reject the Plan on other Ballots: (i) you must vote all Impaired Debt Claims in the same manner and make the same election with respect to plan releases on each Ballot you vote and (ii) you must include details of the other accounts or record names you have submitted Ballots in respect of in Item 3 below.  Any vote that attempts to partially accept and partially reject the Plan will not be counted.

g.   <u>Item 4 (Optional Release Election)</u>.  If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 4 below.

h.   <u>Item 5 (Acknowledgements and Certifications)</u>.  Item 5 contains certain required certifications which you are making by signing and returning this Ballot.  Please ensure that you have read and understood the certifications prior to signing this Ballot.  Provide your name, mailing address, and any remaining information requested in Item 5 below.

i.   If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5 below.  By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

j.   Sign and date your Ballot (if your Ballot has not been prevalidated by your Master Ballot Agent).

k.   Return your Ballot with an original signature using the enclosed pre-addressed return envelope (or otherwise in accordance with the instructions of your Master Ballot Agent).  If your Ballot is not received by your Master Ballot Agent in sufficient time to be included on a timely submitted Master Ballot, it will not be counted.  In all cases, Beneficial Owners should allow sufficient time to assure timely delivery of your Ballot to your Master Ballot Agent.  No Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT YOUR MASTER BALLOT AGENT OR THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

**IMPORTANT NOTICE REGARDING THE TREATMENT OF**
**CLASS 3B-[I/III] – UTILITY [IMPAIRED SENIOR NOTE/SHORT-TERM SENIOR NOTE] CLAIMS UNDER THE PLAN**

[Class 3B-I]

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Impaired Senior Note Claims shall receive Cash equal to their Utility Impaired Senior Note Claim Interest Amount and equal amounts of each issue of the New Utility Long-Term Notes in an aggregate amount equal to such holder's Utility Impaired Senior Note Claim Principal Amount.**

[Class 3B-III]

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Short-Term Senior Note Claims shall receive Cash equal to their Utility Short-Term Senior Note Claim Interest Amount and equal amounts of each issue of New Utility Short-Term Notes in an aggregate amount equal to such holder's Utility Short-Term Senior Note Claim Principal Amount.**

---

6

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

# BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Amount of Impaired Debt Claims.**  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds Impaired Debt Claims as indicated on **Annex A** hereto as of the Record Date in the principal amount set forth below.

| |
|---|
| **Claim(s) Amount**:  $_____ |

Please be certain to check only one box on **Annex A** to this Beneficial Owner Ballot to indicate the CUSIP/ISIN to which this Beneficial Owner Ballot pertains.  If you check more than one CUSIP/ISIN, you risk having your vote deemed invalid.

**Item 2.  Vote on the Plan.**  The undersigned holder of Impaired Debt Claims in the principal amount set forth in Item 1 above hereby votes to:

**Check one box:**          ☐          **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

                              ☐          **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**REMAINDER    OF    PAGE    INTENTIONALLY    LEFT    BLANK**

7

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

**Item 3. Certification as to Impaired Debt Claims.** By completing and returning this Ballot, you certify that either (i) you have not submitted any other Ballots for other Impaired Debt Claims, held in other accounts or record names; or (ii) you have provided the information specified in the following table for all other Impaired Debt Claims for which you have submitted additional Ballots, each of which indicates the same votes to accept or reject the Plan, and the same elections as to the grant of releases under the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER CLASS 3B-[I/III] BALLOTS OTHER THAN THIS BALLOT.

| Name of Other Master Ballot Agent through which you voted Impaired Debt Securities | Other Master Ballot Agent's DTC Participant Number | Account Number with Other Master Ballot Agent | CUSIP / ISIN of Impaired Debt Securities Voted | Principal Amount of Impaired Debt Claims Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2 | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 106 of 217

[CUSIP/ISIN AND CLASS AS INDICATED ON ANNEX A]

**Item 4.  Optional Release Election.**

---

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF IMPAIRED DEBT CLAIMS UNDER THE PLAN:**

You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such:  (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").

To grant these releases you must check the box below.  If you elect not to check the box below, you will not grant the releases.

Your election to opt-in to the releases does not affect the classification or treatment of your Claims in any way pursuant to the Plan.

Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.

Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex B hereto.  You are advised to carefully review and consider these releases in their entirety.

---

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:31:48    Page 107 of 217
[CUSIP[S]N AND CLASS AS INDICATED ON ANNEX A]

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.

☐     **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

**Item 5.**   **Acknowledgements and Certification**.   By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of Impaired Debt Claims in the principal amount identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claim holder:   _____

Account Number(s) (if applicable)   _____

DTC Participant Number:   _____

Social Security or Federal Tax I.D. No. of Claim holder:   _____

Signature:   _____

Name of Signatory (if different than Claim holder):   _____

If by Authorized Agent, Title of Agent:   _____

Street Address:   _____

City, State, Zip Code:   _____

Telephone Number:   _____

E-mail Address:   _____

Date Completed:   _____

9

Please check one <u>or both</u> of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Claims in these Chapter 11 Cases

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

**Annex A**

**The Solicitation Agent or your Master Ballot Agent may have checked a box below to indicate the series of Impaired Debt Securities and CUSIP/ISIN to which this Beneficial Owner Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Owner Ballot. If more than one box below is checked, you risk the votes submitted through this Beneficial Owner Ballot being deemed defective and invalid.**

| | **Class 3B-I – Utility Impaired Senior Note Claims** | |
|---|---|---|
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| ☐ | 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| ☐ | 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| ☐ | 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| ☐ | 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| | **Class 3B-III – Utility Short-Term Senior Note Claims** | |
| ☐ | 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| ☐ | 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| ☐ | 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| ☐ | 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

11

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

# ANNEX B: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

**The provisions of the Plan excerpted in this Annex B are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

## Optional Release Provisions under the Plan

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other

12

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

### Other Key Injunction, Exculpation, and Release Provisions under the Plan

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

*Section 10.6 – Injunction.*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms

13

of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

   (i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

   (ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

   (iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

   (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

   (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

14

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:31:48    Page 113 of 217

      (i)    the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

      (ii)    the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

***Section 10.8 - Exculpation.*** Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any

15

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 10.9 – Releases.**

(a) **Releases by the Debtors.** As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon

16

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests.* [excerpted above]

(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens.* Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases.* Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

17

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

[CUSIP/ISIN NUMBERS AND VOTING CLASSES INDICATED ON ANNEX A]

**Exhibit A-6**

**Form of Common Interest Beneficial Owner Ballot**

[BALLOT CODE]

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                  **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**COMMON INTEREST BENEFICIAL OWNER BALLOT**
**(CUSIP 69331C108 / ISIN US69331C1080)**

**CLASS 10A-I – HOLDCO COMMON INTERESTS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

---

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR MASTER BALLOT AGENT:**

**YOU MUST RETURN THIS BALLOT TO YOUR MASTER BALLOT AGENT IN THE ENVELOPE PROVIDED OR IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR MASTER BALLOT AGENT.**

---

**OR**

---

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT"):**

**THIS BALLOT MUST BE COMPLETED AND RETURNED DIRECTLY TO THE SOLICITATION AGENT SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE")**

---

2

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because, as of March 3, 2020 (the "**Record Date**"), you are the beneficial owner (a "**Beneficial Owner**") of shares of PG&E Corp. Common Stock ("**HoldCo Common Interests**") for which Cede & Co. is the registered owner of (*e.g.* you hold HoldCo Common Interets through a broker, bank, dealer, agent or nominee). HoldCo Common Interests are classified under the Plan in Class 10A-I. Your broker, bank, dealer, agent or nominee is acting as ballot agent (the "**Master Ballot Agent**") for the solicitation of your votes on the Plan.

Your rights are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**If you received a return envelope addressed to Prime Clerk, your Ballot must be properly completed and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

CUSIP 69351C408

If you received a return envelope addressed to your Master Ballot Agent, or other instructions to return this Ballot to your Master Ballot Agent, your Ballot must be properly completed, signed and returned to your Master Ballot Agent by the date and time specified to permit your Master Ballot Agent to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

If you have any questions on how to properly complete this Ballot, please contact your Master Ballot Agent. If you have any questions about the solicitation of the Plan, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page
121 of 217
CUSIP 69351C408

# INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by the holders of HoldCo Common Interests if it is accepted by the holders of at least two-thirds (2/3) in amount of HoldCo Common Interests voted. In the event that holders of HoldCo Common Interests reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and thereby make the Plan binding on holders of HoldCo Common Interests if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of HoldCo Common Interests and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**In order for your vote to be counted, this Ballot must be properly completed, signed (unless it has been prevalidated by your Master Ballot Agent), and returned in the envelope provided (or otherwise in accordance with the instructions of your Master Ballot Agent) so that it received by the Voting Deadline or such other date specified by your Master Ballot Agent.**

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except as instructed by your Master Ballot Agent).**

To properly complete this Ballot, you must follow the procedures described below:

a.  Item 1 (Amount of HoldCo Common Interests). Make sure that the information contained in Item 1 below regarding the amount of HoldCo Common Interests you held on the Record Date is correct.

b.  Item 2 (Vote on the Plan). Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

c.  If you hold Claims or Interests in a Class other than HoldCo Common Interests, you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d.  If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by your Master Ballot Agent or the Solicitation Agent will be counted, unless the holder of the HoldCo Common Interests receives Bankruptcy Court approval otherwise.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 122 of 217

CUSIP 69351C408

e.    <u>Item 3 (Certification as to HoldCo Common Interests)</u>.  If you hold HoldCo Common Interests in other accounts or other record names either as a registered holder holding such HoldCo Common Interests directly on the books and records of the Debtors' transfer agent or as a beneficial owner holding through a different Master Ballot Agent, please not that: (i) you must vote all HoldCo Common Interests in the same manner and make the same election with respect to plan releases on each Ballot you vote and (ii) you must include details of the other accounts or record names you have submitted Ballots in respect of in Item 3 below.  Any vote that attempts to partially accept and partially reject the Plan will not be counted.

f.    <u>Item 4 (Optional Release Election)</u>.  If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 4 below.

g.    <u>Item 5 (Acknowledgements and Certifications)</u>.  Item 5 contains certain required certifications which you are making by signing and returning this Ballot.  Please ensure that you have read and understood the certifications prior to signing this Ballot.  Provide your name, mailing address, and any remaining information requested in Item 5 below.

h.    If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5 below.  By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

i.    Sign and date your Ballot (if your Ballot has not been prevalidated by your Master Ballot Agent).

j.    Return your Ballot with an original signature using the enclosed pre-addressed return envelope (or otherwise in accordance with the instructions of your Master Ballot Agent).  If your Ballot is not received by your Master Ballot Agent in sufficient time to be included on a timely submitted Master Ballot, it will not be counted.  In all cases, Beneficial Owners should allow sufficient time to assure timely delivery of your Ballot to your Master Ballot Agent.  No Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT YOUR MASTER BALLOT AGENT.  IF YOU HAVE ANY GENERAL QUESTIONS ABOUT THE SOLICITATION OF THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE)**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 123 of 217

CUSIP 69351C408

**OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

**IMPORTANT NOTICE REGARDING THE TREATMENT OF
CLASS 10A-I HOLDCO COMMON INTERESTS UNDER THE PLAN**

As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, subject to the New Organizational Documents, each holder of a HoldCo Common Interest shall retain such Interest subject to dilution from any New HoldCo Common Stock, or securities linked to New HoldCo Common Stock, issued pursuant to the Plan and, if applicable, shall receive a pro rata distribution of any subscription rights to be distributed to holders of HoldCo Common Interests in connection with a Rights Offering.

---

CUSIP 69351C408

# BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Amount of HoldCo Common Interests.**  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds HoldCo Common Interests (CUSIP 69331C108 / ISIN US69331C1080) in the number set forth below.

**Number of Shares Held**: _____

**Item 2.  Vote on the Plan.**  The undersigned holder of HoldCo Common Interests in the amount set forth in Item 1 above hereby votes to:

**Check one box:**  ☐  **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐  **REJECT (*I.E.*, VOTE AGAINST)** the Plan

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 125 of 217

CUSIP 69331C408

**Item 3. Certification as to HoldCo Common Interests.** By completing and returning this Ballot, you certify that either (i) you have not submitted any other Ballots for other HoldCo Common Interests held in other accounts or record names either as a registered holder directly on the books and records of the transfer agent or as a beneficial holder through a different Master Ballot Agent; or (ii) you have provided the information specified in the following table for all other HoldCo Common Interests for which you have submitted additional Ballots, each of which indicates the same votes to accept or reject the Plan, and the same elections as to the grant of releases under the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER HOLDCO COMMON INTEREST BALLOTS OTHER THAN THIS BALLOT.

| Name of Registered Holder (if you voted additional HoldCo Common Interests as a registered holder) or Name of Other Master Ballot Agent (if you voted additional HoldCo Common Interests as a beneficial holder) | If you voted HoldCo Common Interests as a beneficial holder, voted through a different Master Ballot Agent, such Agent's "DTC Participant Number" | Account Number (if applicable) | Number of Shares Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2 | | | | | |
| 3. | | | | | |
| 4. | | | | | |

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 126 of 217

CUSIP 69331C108

**Item 4.  Optional Release Election.**

---

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF HOLDCO COMMON INTERESTS UNDER THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such:  (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below.  If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Interests in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto.  You are advised to carefully review and consider these releases in their entirety.**

---

CUSIP 69331C108

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. <u>For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.</u>

    ☐    **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

**Item 5.**   **Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of the HoldCo Common Interests identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Interest holder:    _____

Account Number(s) (if applicable)    _____

DTC Participant Number:    _____

Social Security or Federal Tax I.D. No. of Interest holder:    _____

Signature:    _____

Name of Signatory (if different than Interest holder):    _____

If by Authorized Agent, Title of Agent:    _____

Street Address:    _____

City, State, Zip Code:    _____

Telephone Number:    _____

E-mail Address:    _____

Date Completed:    _____

Please check one <u>or both</u> of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Interests in these Chapter 11 Cases

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 129 of 217

CUSIP 69351C408

# ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. **YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

## Optional Release Provisions under the Plan

Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:

> As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other

occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

## Other Key Injunction, Exculpation, and Release Provisions under the Plan

Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.

*Section 10.6 – Injunction.*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms

14

of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

  (i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

  (ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any

16

Case: 19-30088  Doc# 6222-1  Filed: 03/09/20  Entered: 03/09/20 18:21:48  Page 133 of 217

time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

### Section 10.9 – Releases.

(a) ***Releases by the Debtors.*** **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon**

the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests*. [excerpted above]

(c) *Only Consensual Non-Debtor Releases*. Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens*. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases*. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

**Exhibit A-7**

**Form of Impaired Debt Master Ballot**

In re:

**PG&E CORPORATION,**

- and -

**PACIFIC GAS AND ELECTRIC COMPANY,**

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Chapter 11 Case

No. 19-30088 (DM)

(Lead Case)

(Jointly Administered)

**MASTER BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

## IMPAIRED DEBT MASTER BALLOT

### CLASS 3B-I – UTILITY IMPAIRED SENIOR NOTE CLAIMS
### OR
### CLASS 3B-III – UTILITY SHORT-TERM SENIOR NOTE CLAIMS

**APPLICABLE IMPAIRED DEBT NOTE DESCRIPTIONS, CLASSES, AND CUSIP NUMBERS:**

| Class 3B-I – Utility Impaired Senior Note Claims | |
|---|---|
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| Class 3B-III – Utility Short-Term Senior Note Claims | |
| 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

1

[CUSIP/ISIN NUMBERS AND VOTING CLASSES AS INDICATED ON ANNEX A]

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS
CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS
TO BE <u>ACTUALLY RECEIVED</u> BY PRIME CLERK LLC ("<u>PRIME CLERK</u>" OR
THE "<u>SOLICITATION AGENT</u>") BY 4:00 P.M. (PREVAILING PACIFIC TIME)
ON MAY 15. 2020 (THE "<u>VOTING DEADLINE</u>")

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Master Ballot because you are a broker, bank, or other nominee; or the agent of a broker, bank, or other nominee (each of the foregoing, together with any mailing agents thereof, a "**Master Ballot Agent**") for one or more beneficial owners (the "**Beneficial Owners**") of certain funded debt securities issued by the Utility and listed in **Annex A** hereto (collectively, the "**Impaired Debt Securities**" and any claims arising under or relating to the Impaired Debt Securities, the "**Impaired Debt Claims**"); or you are the proxy holder of a Master Ballot Agent or Beneficial Owner. Impaired Debt Claims are classified under the Plan in (i) Class 3B-I – Utility Impaired Senior Note Claims or (ii) Class 3B-III – Utility Short-Term Senior Note Claims. You should use this Master Ballot to transmit to the Solicitation Agent the votes of Beneficial Owners in respect of their Impaired Debt Claims to accept or reject the Plan, as recorded on the beneficial owner ballots delivered to them (the "**Beneficial Owner Ballots**").

Beneficial Owners' rights are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

2

[CUSIP/ISIN NUMBERS AND VOTING CLASS INDICATED ON ANNEX A]

339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada).  You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code.  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  This Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.  If you believe that you have received this Master Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For votes to be counted, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than <u>4:00 p.m. (Prevailing Pacific Time) on May 15, 2020</u>.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international).  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

**INFORMATION REGARDING (I) THE TREATMENT OF THE BENEFICIAL OWNERS' IMPAIRED DEBT CLAIMS UNDER THE PLAN AND (II) THE PLAN'S INJUNCTION, EXCULPATION AND RELEASE PROVISIONS, INCLUDING THE OPTIONAL RELEASE UNDER SECTION 10.9(b) OF THE PLAN WHICH BENEFICIAL OWNERS WILL ELECT WHETHER TO OPT-IN ON THEIR BENEFICIAL OWNER BALLOTS, IS CONTAINED IN <u>ANNEX B</u> OF THIS MASTER BALLOT AND ON THE BENEFICIAL OWNER BALLOTS.  HOLDERS OF IMPAIRED DEBT CLAIMS SHOULD CAREFULLY REVIEW THESE PROVISIONS AND THE PLAN AS THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

---

3

[CUSIP/ISIN NUMBERS AND VOTING CLASS INDICATED ON ANNEX A]

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

This Master Ballot is submitted to you to solicit votes of Beneficial Owners to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

Master Ballots must be delivered to the Solicitation Agent at the appropriate address listed below so it is <u>actually received</u> by the Solicitation Agent prior to the Voting Deadline:

| If by e-mail to: | If by standard or overnight mail, or hand delivery: |
|---|---|
| pgeballots@primeclerk.com | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to pgeballots@primeclerk.com).**

**HOW TO VOTE:**

A holder of Impaired Debt Claims who holds the Impaired Debt Claims on its own behalf through DTC (*i.e.*, is both the Beneficial Owner and Master Ballot Agent for the same Impaired Debt Claims) must vote by returning a Master Ballot to the Solicitation Agent and indicating that it is both the Beneficial Owner and Master Ballot Agent for the Impaired Debt Claims.

If you are transmitting the votes of any Beneficial Owners other than yourself, you may <u>either</u>:

1.  Forward Solicitation Packages (with the applicable Beneficial Owner Ballot) to each Beneficial Owner of Impaired Debt Claims entitled to vote on the Plan within five (5) business days of the receipt of the Solicitation Packages and include a return envelope provided by and addressed to you, so that the Beneficial Owner may return the completed Beneficial Owner Ballot to you. You should advise the Beneficial Owners to return their individual Beneficial Owner Ballots to you by a date calculated by you to allow you to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is <u>actually received</u> by the Solicitation Agent by the Voting Deadline.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:31:48    Page 141 of 217

[CUSIP/ISIN NUMBERS AND VOTING CLASS INDICATED ON ANNEX A]

In addition, you are authorized to convey the Solicitation Packages and collect votes to accept or to reject the Plan from Beneficial Owners in accordance with your customary practices, including the use of a "voting instruction form", e-mail, online voting, phone call, or other customary methods for conveying solicitation materials and collecting votes in lieu of (or in addition to) an actual Beneficial Owner Ballot.

OR

2.  "Prevalidate" the Beneficial Owner Ballots contained in your Solicitation Package and then forward Solicitation Packages to each Beneficial Owner of Impaired Debt Claims for voting on the Plan within five (5) business days of receipt of your Solicitation Package, with the Beneficial Owner then returning the applicable Beneficial Owner Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. You "prevalidate" a Beneficial Owner's Beneficial Owner Ballot by (i) checking the appropriate CUSIP/ISIN number on Annex A to the Beneficial Owner Ballot, (ii) indicating thereon the name and address of the record holder of the Impaired Debt Claims to be voted with respect to the Plan, the amount of Impaired Debt Claims held by the Beneficial Owner as of the Record Date, and the appropriate account numbers through which the Beneficial Owner's holdings are derived, (iii) certifying the accuracy of the information included on the Beneficial Owner Ballot by stamping the prevalidated Beneficial Owner Ballot with a medallion guarantee, and (iv) executing the Beneficial Owner's Beneficial Owner Ballot. The Beneficial Owner shall return the "prevalidated" Beneficial Owner Ballot directly to the Solicitation Agent by the Voting Deadline.

With respect to all Beneficial Owner Ballots returned to you, you must properly complete the Master Ballot, as follows:

a.  Item 1 (Certification of Authority to Vote). Check the appropriate box in Item 1 below.

b.  Please check one (and only one) box on **Annex A** attached to this Master Ballot to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on this Master Ballot or on a schedule hereto). If you check more than one CUSIP/ISIN or do not clearly indicate which CUSIP/ISIN is being voted through this Master Ballot, the Voting Agent will invalidate this Master Ballot.

c.  Item 2 (Votes of Beneficial Owners). Provide the information requested in Item 2 below, as transmitted to you by the Beneficial Owners in Items 2 and 4 of the Beneficial Owner Ballot. To identify Beneficial Owners without disclosing their names, please use the customer account number assigned by you to each such Beneficial Owner, or if no such customer account number exists, please assign a number to each account (making sure to retain a separate list of each Beneficial Owner and the assigned number). **IMPORTANT: EACH BENEFICIAL OWNER MUST VOTE ALL OF ITS IMPAIRED DEBT CLAIMS, EITHER TO ACCEPT OR REJECT THE PLAN, AND MAY NOT SPLIT SUCH VOTE IN RESPECT OF THE PLAN. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT THEIR VOTE, PLEASE CONTACT THE SOLICITATION AGENT IMMEDIATELY.** Any Beneficial Owner Ballot that is signed, dated, and timely received, but does not indicate acceptance or rejection of

5

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:31:48   Page 142 of 217

a Plan, or indicates both an acceptance and rejection of a Plan, by order of the Bankruptcy Court, will not be counted in respect of that Plan.

d. <u>Item 3 (Certification of Beneficial Owner Votes on Other Ballots)</u>. Transcribe the information provided by each Beneficial Owner in Item 3 of each completed Beneficial Owner Ballot relating to other holdings of Impaired Debt Claims voted in Item 3 below.

e. <u>Item 4 (Acknowledgements and Certifications)</u>. Item 4 contains certain required certifications which you are making by signing and returning this Master Ballot. Please ensure that you have read and understood the certifications prior to signing this Master Ballot. Provide your name, mailing address, and any remaining information requested in Item 4 below.

f. Sign and date the Master Ballot, and provide the remaining information requested.

g. If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding.

h. Deliver the completed, executed Master Ballot so as to be <u>received</u> by the Solicitation Agent before the Voting Deadline. For each completed, executed Beneficial Owner Ballot returned to you by a Beneficial Owner, you must retain such Beneficial Owner Ballot in your files for one year from the Voting Deadline and produce the same upon the written request of the Debtors, the Reorganized Debtors, or their respective counsel.

**PLEASE NOTE:**

**The Master Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.** At this time, holders should not surrender certificates representing their securities. Neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates surrendered together with the Master Ballot.

No Beneficial Owner Ballot or Master Ballot shall constitute or be deemed a proof of Claim or an assertion of a Claim.

No fees, commissions, or other remuneration will be payable to any Master Ballot Agent for soliciting votes on the Plan. The Debtors will, however, reimburse you for reasonable, documented, actual costs and expenses incurred by you in forwarding the Beneficial Owner Ballots and other enclosed materials to the Beneficial Owners held by you as a Master Ballot Agent or in a fiduciary capacity and in tabulating the Beneficial Owner Ballots.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS, THE SHAREHOLDER PROPONENTS, OR THE SOLICITATION AGENT**

[CUSIP/ISIN NUMBERS AND VOTING CLASS INDICATED ON ANNEX A]

**WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

[CUSIP/ISIN NUMBERS AND VOTING CLASS INDICATED ON ANNEX A]

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:31:48    Page 144 of 217

# MASTER BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Certification of Authority to Vote.** The undersigned certifies that as of March 3, 2020 (the "**Record Date**"), the undersigned (please check appropriate box):

☐ Is a broker, bank, or other nominee for the Beneficial Owners of Impaired Debt Claims in the principal amount listed in Item 2 below, and is the registered holder of such securities; or

☐ Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee, or a Beneficial Owner that is the registered holder of Impaired Debt Claims in the principal amount listed in Item 2 below; or

☐ Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Owner, that is the registered holder of Impaired Debt Claims in the principal amount listed in Item 2 below;

and accordingly, has full power and authority to vote to accept or reject the Plan and elect to grant certain releases pursuant to the Plan, on behalf of the Impaired Debt Claims held by the Beneficial Owners described in Item 2.

**Item 2. Votes of Beneficial Owners.** The undersigned transmits the following votes and release elections of Beneficial Owners, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are beneficial owners of such securities as of the Record Date, and have delivered to the undersigned, as Master Ballot Agent, Beneficial Owner Ballots casting such votes and release elections. Indicate in the appropriate column the aggregate number voted for each account and each account's release election, or attach such information to this Master Ballot in the form of the following table. Please note each Beneficial Owner must vote all of its Impaired Debt Claims to accept or to reject the Plan and may not split such vote or vote to both accept and reject the Plan.

Please check one (and only one) box on **Annex A** attached to this Master Ballot to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on this Master Ballot or on a schedule hereto). If you check more than one CUSIP/ISIN or do not clearly indicate which CUSIP/ISIN is being voted through this Master Ballot, the Voting Agent will invalidate this Master Ballot.

Case: 19-30088    Doc# 6223-1    Filed: 03/09/20    Entered: 03/09/20 18:31:48    Page 145 of 217

[CUSIP/ISIN NUMBERS AND VOTING CLASSES AS INDICATED ON ANNEX A]

| Your Customer Account Number for Each Beneficial Owner Voted on this Master Ballot | Principal Amount of Impaired Debt Claims Held as of Record Date | Indicate the Vote Cast on the Plan on the Beneficial Owner Ballots by Checking the Appropriate Box Below.<br><br>(Transcribe from Item 2 of the Beneficial Owner Ballot) | | | Indicate Whether the Releases Were Granted in Relation to the Plan on the Beneficial Owner Ballots by Checking the Box Below.<br><br>(Transcribe from Item 4 of the Beneficial Owner Ballot) |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | Opt-In to Granting Releases |
| 1 | | ☐ | | ☐ | ☐ |
| 2 | | ☐ | | ☐ | ☐ |
| 3 | | ☐ | | ☐ | ☐ |
| 4 | | ☐ | | ☐ | ☐ |
| 5 | | ☐ | | ☐ | ☐ |
| 6 | | ☐ | | ☐ | ☐ |
| 7 | | ☐ | | ☐ | ☐ |
| 8 | | ☐ | | ☐ | ☐ |
| 9 | | ☐ | | ☐ | ☐ |
| 10 | | ☐ | | ☐ | ☐ |
| TOTALS | | | | | |

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 146 of 217

[CUSIP AND CLASS AS INDICATED ON ANNEX A]

**Item 3. Certification as to Transcription of Information from Item 3 as to Impaired Debt Claims Voted through Other Ballots.**
The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by Beneficial Owners in Item 3 of each Beneficial Owner Ballot, identifying any Impaired Debt Claims for which such Beneficial Owners have submitted Ballots other than those listed in Item 2 above:

| YOUR Customer Account Number for Each Beneficial Owner Who Completed Item 3 of the Beneficial Owner Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL OWNER BALLOTS: | | | | | | |
|---|---|---|---|---|---|---|---|
| | Name of Other Master Ballot Agent through which Your Beneficial Owner Client Voted | Other Master Ballot Agent's DTC Participant Number | Beneficial Owner's Account Number with Other Broker (if applicable) | CUSIP / ISIN of Impaired Debt Claims Voted | Principal Amount of Impaired Debt Claims Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

10

[CUSIP AND CLASS AS INDICATED ON ANNEX A]

**Item 4.  Acknowledgements and Certifications.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits.  The undersigned certifies that (a) its certification of authority to vote in Item 1 above is accurate and (b) it has full power and authority to vote to accept or reject the Plan and to elect to grant certain releases pursuant to the Plan.  The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Master Ballot Agent: _____

DTC Participant Number: _____

Name of Proxy Holder or Agent (if applicable): _____

Signature: _____

Name of Signatory (if different than Claim holder): _____

Title: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

11

[RIP AND CLASS AS INDICATED ON ANNEX A]

# ANNEX A

**Check the box below to indicate the series of Impaired Debt Securities and CUSIP/ISIN to which this Master Ballot pertains, or otherwise provide that information to the Solicitation Agent. If more than one box below is checked, you risk the votes submitted through this Master Ballot being deemed defective and invalid.**

| | Class 3B-I – Utility Impaired Senior Note Claims | |
|---|---|---|
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| ☐ | 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| ☐ | 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| ☐ | 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| ☐ | 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| | Class 3B-III – Utility Short-Term Senior Note Claims | |
| ☐ | 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| ☐ | 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| ☐ | 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| ☐ | 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

## ANNEX B

**The provisions of the Plan excerpted in this Annex B are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. HOLDERS OF IMPAIRED DEBT CLAIMS ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

### PLAN TREATMENT SUMMARY

#### Class 3B-I: Utility Impaired Senior Note Claims

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Impaired Senior Note Claims shall receive Cash equal to their Utility Impaired Senior Note Claim Interest Amount and equal amounts of each issue of the New Utility Long-Term Notes in an aggregate amount equal to such holder's Utility Impaired Senior Note Claim Principal Amount.**

#### Class 3B-III Utility Short-Term Senior Note Claims

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Short-Term Senior Note Claims shall receive Cash equal to their Utility Short-Term Senior Note Claim Interest Amount and equal amounts of each issue of New Utility Short-Term Notes in an aggregate amount equal to such holder's Utility Short-Term Senior Note Claim Principal Amount.**

[CUSIP AND CLASS AS INDICATED ON ANNEX A]

**PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS**

**Optional Release Provisions under the Plan**

Holders of Impaired Debt Claims can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").

A holder of Impaired Debt Claims' election to opt-in to the releases does not affect the classification or treatment of their Claims in any way pursuant to the Plan.

Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan. Section 10.9(b) of the Plan, which holders of Impaired Debt Claims can elect to opt-in to by their Beneficial Owner Ballots, contains the following releases by Holders of Claims and Interests:

> As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would

3

[PLAN AND CLASS AS INDICATED ON ANNEX A]

have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

### Other Key Injunction, Exculpation, and Release Provisions under the Plan

Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on holders of Impaired Debt Claims whether or not they elect to opt-in to the releases in Section 10.9(b) of the Plan by their Beneficial Owner Ballots.

*Section 10.6 – Injunction.*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct

4

[SHIP AND CLASS AS INDICATED ON ANNEX A]

or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award,

5

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:31:48   Page 153 of 217

decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) **Reservations.** Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support

6

Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

*Section 10.9 – Releases.*

(a) ***Releases by the Debtors.*** As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires,

7

the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests*. [excerpted above]

(c) *Only Consensual Non-Debtor Releases*. Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens*. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

8

[P[SHIP AND CLASS AS INDICATED ON ANNEX A]

(e) *Waiver of Statutory Limitations on Releases*. **Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

(f) **Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

(g) **No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

9

<u>**Exhibit A-8**</u>

**Form of HoldCo Common Interest Master Ballot**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 158 of 217

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br><br>**MASTER BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**HOLDCO COMMON INTEREST MASTER BALLOT**
**(CUSIP 69331C108 / ISIN US69331C1080)**

**CLASS 10A-1 – HOLDCO COMMON INTERESTS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**
>
> **THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY RECEIVED</u> BY PRIME CLERK LLC ("<u>PRIME CLERK</u>" OR THE "<u>SOLICITATION AGENT</u>") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "<u>VOTING DEADLINE</u>")**

       The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [•], 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") [1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

CUSIP 69331C108

You are receiving this Master Ballot because you are a broker, bank, or other nominee; or the agent of a broker, bank, or other nominee (each of the foregoing, together with any mailing agents thereof, a "**Master Ballot Agent**") for one or more beneficial owners (the "**Beneficial Owners**") of shares of PG&E Corp. Common Stock ("**HoldCo Common Interests**"); or you are the proxy holder of a Master Ballot Agent or Beneficial Owner. HoldCo Common Interests are classified under the Plan in Class 10A-I. You should use this Master Ballot to transmit to the Solicitation Agent the votes of Beneficial Owners in respect of their HoldCo Common Interests to accept or reject the Plan, as recorded on the beneficial owner ballots delivered to them (the "**Beneficial Owner Ballots**").

Beneficial Owners' rights are described in the Disclosure Statement for the Plan, filed on March [•], 2020 [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. [•] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Master Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For votes to be counted, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

3

CUSIP 69331C108

**INFORMATION REGARDING (I) THE TREATMENT OF THE BENEFICIAL OWNERS' HOLDCO COMMON INTERESTS UNDER THE PLAN AND (II) THE PLAN'S INJUNCTION, EXCULPATION AND RELEASE PROVISIONS, INCLUDING THE OPTIONAL RELEASE UNDER SECTION 10.9(b) OF THE PLAN WHICH BENEFICIAL OWNERS WILL ELECT WHETHER TO OPT-IN ON THEIR BENEFICIAL OWNER BALLOTS, IS CONTAINED IN <u>ANNEX A</u> OF THIS MASTER BALLOT AND ON THE BENEFICIAL OWNER BALLOTS. HOLDERS OF HOLDCO COMMON INTERESTS SHOULD CAREFULLY REVIEW THESE PROVISIONS AND THE PLAN AS THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

4

**INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT**

This Master Ballot is submitted to you to solicit votes of Beneficial Owners to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

Master Ballots must be delivered to the Solicitation Agent at the appropriate address listed below so it is <u>actually received</u> by the Solicitation Agent prior to the Voting Deadline:

| **If by e-mail to:** | **If by standard, overnight, or hand delivery:** |
|---|---|
| pgeballots@primeclerk.com | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to pgeballots@primeclerk.com).**

**HOW TO VOTE:**

A holder of HoldCo Common Interests who holds the HoldCo Common Interests on its own behalf through DTC (*i.e.*, is both the Beneficial Owner and Master Ballot Agent for the same HoldCo Common Interests) must vote by returning a Master Ballot to the Solicitation Agent and indicating that it is both the Beneficial Owner and Master Ballot Agent for the HoldCo Common Interests.

If you are transmitting the votes of any Beneficial Owners other than yourself, you may <u>either</u>:

1. Forward Solicitation Packages (with the applicable Beneficial Owner Ballot) to each Beneficial Owner of HoldCo Common Interests entitled to vote on the Plan within five (5) business days of the receipt of the Solicitation Packages and include a return envelope provided by and addressed to you, so that the Beneficial Owner may return the completed Beneficial Owner Ballot to you. You should advise the Beneficial Owners to return their individual Beneficial Owner Ballots to you by a date calculated by you to allow you to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is <u>actually received</u> by the Solicitation Agent by the Voting Deadline.

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:31:49   Page
162 of 217
CUSIP 69331C108

In addition, you are authorized to convey the Solicitation Packages and collect votes to accept or to reject the Plan from Beneficial Owners in accordance with your customary practices, including the use of a "voting instruction form", e-mail, online voting, phone call, or other customary methods for conveying solicitation materials and collecting votes in lieu of (or in addition to) an actual Beneficial Owner Ballot.

OR

2. "Prevalidate" the Beneficial Owner Ballots contained in your Solicitation Package and then forward Solicitation Packages to each Beneficial Owner of HoldCo Common Interests for voting on the Plan within five (5) business days of receipt of your Solicitation Package, with the Beneficial Owner then returning the applicable Beneficial Owner Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. You "prevalidate" a Beneficial Owner's Beneficial Owner Ballot by (i) indicating thereon the name and address of the record holder of the HoldCo Common Interests to be voted with respect to the Plan, the amount of HoldCo Common Interests held by the Beneficial Owner as of the Record Date, and the appropriate account numbers through which the Beneficial Owner's holdings are derived, (ii) certifying the accuracy of the information included on the Beneficial Owner Ballot by stamping the prevalidated Beneficial Owner Ballot with a medallion guarantee, and (iii) executing the Beneficial Owner's Beneficial Owner Ballot. The Beneficial Owner shall return the "prevalidated" Beneficial Owner Ballot directly to the Solicitation Agent by the Voting Deadline.

With respect to all Beneficial Owner Ballots returned to you, you must properly complete the Master Ballot, as follows:

a. Item 1 (Certification of Authority to Vote). Check the appropriate box in Item 1 below.

b. Item 2 (Votes of Beneficial Owners). Provide the information requested in Item 2 below, as transmitted to you by the Beneficial Owners in Items 2 and 4 of the Beneficial Owner Ballot. To identify Beneficial Owners without disclosing their names, please use the customer account number assigned by you to each such Beneficial Owner, or if no such customer account number exists, please assign a number to each account (making sure to retain a separate list of each Beneficial Owner and the assigned number). **IMPORTANT: EACH BENEFICIAL OWNER MUST VOTE <u>ALL</u> OF ITS HOLDCO COMMON INTERESTS, <u>EITHER</u> TO ACCEPT <u>OR</u> REJECT THE PLAN, AND MAY NOT SPLIT SUCH VOTE IN RESPECT OF THE PLAN. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT THEIR VOTE, PLEASE CONTACT THE SOLICITATION AGENT IMMEDIATELY.** Any Beneficial Owner Ballot that is signed, dated, and timely received, but does not indicate acceptance or rejection of a Plan, or indicates both an acceptance and rejection of a Plan, by order of the Bankruptcy Court, will not be counted in respect of that Plan.

c. Item 3 (Certification of Beneficial Owner Votes on Other Ballots). Transcribe the information provided by each Beneficial Owner in Item 3 of each completed

CUSIP 69331C108

Beneficial Owner Ballot relating to other holdings of HoldCo Common Interests voted in Item 3 below.

d.  Item 4 (Acknowledgements and Certifications). Item 4 contains certain required certifications which you are making by signing and returning this Master Ballot. Please ensure that you have read and understood the certifications prior to signing this Master Ballot. Provide your name, mailing address, and any remaining information requested in Item 4 below.

e.  Sign and date the Master Ballot, and provide the remaining information requested.

f.  If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding.

g.  Deliver the completed, executed Master Ballot so as to be received by the Solicitation Agent before the Voting Deadline. For each completed, executed Beneficial Owner Ballot returned to you by a Beneficial Owner, you must retain such Beneficial Owner Ballot in your files for one year from the Voting Deadline and produce the same upon the written request of the Debtors, the Reorganized Debtors, or their respective counsel.

**PLEASE NOTE:**

**The Master Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.** At this time, holders should not surrender certificates representing their securities. Neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates surrendered together with the Master Ballot.

No Beneficial Owner Ballot or Master Ballot shall constitute or be deemed a proof of Claim or an assertion of a Claim.

No fees, commissions, or other remuneration will be payable to any Master Ballot Agent for soliciting votes on the Plan. The Debtors will, however, reimburse you for reasonable, documented, actual costs and expenses incurred by you in forwarding the Beneficial Owner Ballots and other enclosed materials to the Beneficial Owners held by you as a Master Ballot Agent or in a fiduciary capacity and in tabulating the Beneficial Owner Ballots.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS, THE SHAREHOLDER PROPONENTS, OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN,**

CUSIP 69331C108

**OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

8

CUSIP 69331C108

# MASTER BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Certification of Authority to Vote.**  The undersigned certifies that as of March 3, 2020 (the "**Record Date**"), the undersigned (please check appropriate box):

☐  Is a broker, bank, or other nominee for the Beneficial Owners of the amount of the HoldCo Common Interests listed in Item 2 below, and is the registered holder of such securities; or

☐  Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee, or a Beneficial Owner that is the registered holder of the aggregate number of HoldCo Common Interests listed in Item 2 below; or

☐  Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Owner, that is the registered holder of the aggregate number of HoldCo Common Interests listed in Item 2 below;

and accordingly, has full power and authority to vote to accept or reject the Plan and elect to grant certain releases pursuant to the Plan, on behalf of the HoldCo Common Interests held by the Beneficial Owners described in Item 2.

**Item 2.  Votes of Beneficial Owners.**  The undersigned transmits the following votes and release elections of Beneficial Owners, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are beneficial owners of such securities as of the Record Date, and have delivered to the undersigned, as Master Ballot Agent, Beneficial Owner Ballots casting such votes and release elections.  Indicate in the appropriate column the aggregate number voted for each account and each account's release election, or attach such information to this Master Ballot in the form of the following table.  Please note each Beneficial Owner must vote all of its HoldCo Common Interests to accept or to reject the Plan and may not split such vote or vote to both accept and reject the Plan.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:40    Page
166 of 217    CUSIP 69331C108

| Your Customer Account Number for Each Beneficial Owner Voted on this Master Ballot | Number of Shares Held as of Record Date | Transcribe from Item 2 of the Beneficial Owner Ballot  Indicate the Vote Cast on the Plan on the Beneficial Owner Ballots by Checking the Appropriate Box Below. | | | Transcribe from Item 4 of the Beneficial Owner Ballot  Indicate Whether the Releases Were Granted in Relation to the Plan on the Beneficial Owner Ballots by Checking the Box Below. |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | Opt-In to Granting Releases |
| 1 | | ☐ | | ☐ | ☐ |
| 2 | | ☐ | | ☐ | ☐ |
| 3 | | ☐ | | ☐ | ☐ |
| 4 | | ☐ | | ☐ | ☐ |
| 5 | | ☐ | | ☐ | ☐ |
| 6 | | ☐ | | ☐ | ☐ |
| 7 | | ☐ | | ☐ | ☐ |
| 8 | | ☐ | | ☐ | ☐ |
| 9 | | ☐ | | ☐ | ☐ |
| 10 | | ☐ | | ☐ | ☐ |
| **TOTALS** | | | | | |

10

CUSIP 69331C108

**Item 3. Certification as to Transcription of Information from Item 3 as to HoldCo Common Interests Voted Through Other Ballots.** The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by Beneficial Owners in Item 3 of each Beneficial Owner Ballot, identifying any HoldCo Common Interests for which such Beneficial Owners have submitted Ballots other than those listed in Item 2 above:

| YOUR Customer Account Number for Each Beneficial Owner Who Completed Item 3 of the Beneficial Owner Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL OWNER BALLOTS: | | | | | |
|---|---|---|---|---|---|---|
| | Name of Registered Holder (if your Beneficial Owner client voted additional HoldCo Common Interests as a registered holder) Or Name of Other Master Ballot Agent (if your Beneficial Owner client voted additional HoldCo Common Interests as a beneficial holder) | Other Master Ballot Agent, such other Agent's DTC Participant Number (if applicable) | Beneficial Owner's Account Number with Other Master Ballot Agent (if applicable) | Number of Shares Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 168 of 217

CUSIP 69331C108

**Item 4. Acknowledgements and Certifications.** By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) its certification of authority to vote in Item 1 above is accurate and (b) it has full power and authority to vote to accept or reject the Plan and to elect to grant certain releases pursuant to the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Master Ballot Agent: _____

DTC Participant Number: _____

Name of Proxy Holder or Agent (if applicable): _____

Signature: _____

Name of Signatory (if different than Interest holder): _____

Title: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:31:40    Page 169 of 217
CUSIP 69331C108

## ANNEX A

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. HOLDERS OF HOLDCO COMMON INTERESTS ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

## PLAN TREATMENT SUMMARY

### Class 10A-1: HoldCo Common Interests

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, subject to the New Organizational Documents, each holder of a HoldCo Common Interest shall retain such Interest subject to dilution from any New HoldCo Common Stock, or securities linked to New HoldCo Common Stock, issued pursuant to the Plan and, if applicable, shall receive a pro rata distribution of any subscription rights to be distributed to holders of HoldCo Common Interests in connection with a Rights Offering.**

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:21:48   Page 170 of 217
CUSIP 69331C108

# PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

## Optional Release Provisions under the Plan

Holders of HoldCo Common Interests can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").

A holder of HoldCo Common Interests' election to opt-in to the releases does not affect the classification or treatment of their Interests in any way pursuant to the Plan.

Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan. Section 10.9(b) of the Plan, which holders of HoldCo Common Interests can elect to opt-in to by their Beneficial Owner Ballots, contains the following releases by Holders of Claims and Interests:

> As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would

Case: 19-30088   Doc# 6222-1   Filed: 03/09/20   Entered: 03/09/20 18:31:48   Page 171 of 217

CUSIP 69331C108

have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

## Other Key Injunction, Exculpation, and Release Provisions under the Plan

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on holders of HoldCo Common Interests whether or not they elect to opt-in to the releases in Section 10.9(b) of the Plan by their Beneficial Owner Ballots.**

*Section 10.6 – Injunction.*

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:31:48    Page 172 of 217

CUSIP 69331C208

or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award,

> decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;
>
> (iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;
>
> (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and
>
> (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

> (i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and
>
> (ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support

Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

*Section 10.9 – Releases.*

(a) ***Releases by the Debtors.*** As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires,

18

the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests*.  [excerpted above]

(c) *Only Consensual Non-Debtor Releases.*  Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.  The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens*.  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) **Waiver of Statutory Limitations on Releases**. **Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

(f) **Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

(g) **No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:31:49    Page 177 of 217
CUSIP 69331C 108

**Exhibit B**

**Notice of Non-Voting Status**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*\* All papers shall be filed in the Lead Case,*
*No. 19-30088 (DM).*

Chapter 11 Case
No. 19-30088 (DM)
(Lead Case)
(Jointly Administered)

**NOTICE OF NON-VOTING STATUS TO UNIMPAIRED CLASSES PRESUMED TO ACCEPT, OR OTHERWISE NOT ENTITLED TO VOTE ON, THE DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**PLEASE TAKE NOTICE** that by Order dated [●], 2020 [Docket No. [●] (the "**Disclosure Statement and Solicitation Procedures Order**"), the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") approved the disclosure statement [Docket No. [●] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March [●], 2020* [Docket No. [●] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] as having adequate information as provided under section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"), and also approved the certain procedures for the solicitation, distribution, and tabulation of votes to accept or reject the Plan. The Bankruptcy Court previously set certain dates and deadlines with respect to approval of the Disclosure Statement and confirmation of the Plan by Order, dated February 11, 2020 [Docket No. 5732] (the "**Scheduling Order**").

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE UNDER THE TERMS OF THE PLAN, YOUR CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS ARE EITHER (I) NOT IMPAIRED AND, THEREFORE, PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, YOU ARE PRESUMED TO HAVE ACCEPTED THE PLAN, OR (II) AS OF THE DEADLINE SET FORTH IN THE SCHEDULING ORDER, ARE SUBJECT TO A PENDING OBJECTION OR OTHERWISE DEEMED NOT ENTITLED TO VOTE ON THE PLAN IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES ORDER. ACCORDINGLY, YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN WITH RESPECT TO YOUR CLAIMS OR INTERESTS.**

**PLEASE TAKE FURTHER NOTICE** that the classes of Claims and Interests which are not Impaired under the Plan are listed in the table below:

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

| Class | Designation | Impairment |
|-------|-------------|------------|
| Class 1A | HoldCo Other Secured Claims | Unimpaired |
| Class 2A | HoldCo Priority Non-Tax Claims | Unimpaired |
| Class 3A | HoldCo Funded Debt Claims | Unimpaired |
| Class 4A | HoldCo General Unsecured Claims | Unimpaired |
| Class 5A-IV | HoldCo Ghost Ship Fire Claims | Unimpaired |
| Class 6A | HoldCo Workers' Compensation Claims | Unimpaired |
| Class 7A | HoldCo Environmental Claims | Unimpaired |
| Class 8A | HoldCo Intercompany Claims | Unimpaired |
| Class 9A | HoldCo Subordinated Debt Claims | Unimpaired |
| Class 11A | HoldCo Other Interests | Unimpaired |
| Class 1B | Utility Other Secured Claims | Unimpaired |
| Class 2B | Utility Priority Non-Tax Claims | Unimpaired |
| Class 3B-II | Utility Reinstated Senior Note Claims | Unimpaired |
| Class 3B-V | Utility PC Bond (2008 F and 2010 E) Claims | Unimpaired |
| Class 4B | Utility General Unsecured Claims | Unimpaired |
| Class 5B-IV | Utility Ghost Ship Fire Claims | Unimpaired |
| Class 6B | Utility Workers' Compensation Claims | Unimpaired |
| Class 7B | 2001 Utility Exchange Claims | Unimpaired |
| Class 8B | Utility Environmental Claims | Unimpaired |
| Class 9B | Utility Intercompany Claims | Unimpaired |
| Class 10B | Utility Subordinated Debt Claims | Unimpaired |
| Class 11B | Utility Preferred Interests | Unimpaired |
| Class 12B | Utility Common Interests | Unimpaired |

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Scheduling Order, if you timely filed a Proof of Claim or Interest and disagreed with the Debtors' classification of, objection to, or request for estimation of, your Claim or Interest and believe that you should have been be entitled to vote to accept or reject the Plan, then you were required to file and serve a motion, pursuant to Bankruptcy Rule 3018(a) (a "**3018 Motion**"), to temporarily allow such Claim or Interest in a different amount or in a different Class for purposes of voting to accept or reject the Plan by March 6, 2020 at 4:00 p.m. (Prevailing Pacific Time), unless such deadline is extended by agreement of the Debtors; *provided, however,* that, notwithstanding anything in the Disclosure Statement and Solicitation Procedures Order or the Scheduling Order to the contrary, the deadline for any holder of a timely filed HoldCo Rescission or Damage Claim to file a 3018 Motion is extended through and including April 23, 2020, at 4:00 p.m. (Prevailing Pacific Time).  The rights of the Debtors and any other party in interest to respond or object to any 3018 Motion are hereby expressly reserved. 3018 Motions that were not timely filed and served in accordance with the Scheduling Order shall not be considered.[2]

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Scheduling Order, the hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **May 27, 2020 at 10:00 a.m. (Prevailing Pacific Time)**, before the Honorable Dennis Montali, United States Bankruptcy Judge, in Courtroom 17 of the Bankruptcy Court, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102. The Confirmation Hearing and the deadlines related thereto may be continued from time to time by the Bankruptcy Court without further notice other than announcement by the Bankruptcy Court in open Court, as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court, or on the docket. The Plan may be modified, if necessary, before, during, or because of the Confirmation Hearing, without further notice to interested parties.

**PLEASE TAKE FURTHER NOTICE** that responses and objections to confirmation of the Plan must:

(a)    Be in writing;

(b)    State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)    State with particularity the basis and nature of any objection with respect to the Plan;

(d)    Conform to the Bankruptcy Rules, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, the *Order Establishing Procedures for Disclosure Statement and Confirmation Hearing* (N.D. Cal. May 2017) (Montali, J.), and the Scheduling Order; and

(e)    Be filed with the Bankruptcy Court and served in accordance with Bankruptcy Rule 3020(b)(1) so as to be actually received on or before **4:00 p.m. (Prevailing Pacific Time) on May 15, 2020** (the "**Objection Deadline**") by the following parties (the "**Notice Parties**"):

(i)    Clerk, U.S. Bankruptcy Court for the Northern District of California, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102;

(ii)    The Debtors, c/o PG&E Corporation and Pacific Gas and Electric Company, 77 Beale Street, P.O. Box 770000, San Francisco, California 94177 (Attn: Janet Loduca, Esq.);

(iii)    The attorneys for the Debtors, (A) Weil, Gotshal & Manges LLP, 767 Fifth

---

[2] Claimants may contact PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-333-8977 (international), or by e-mail to pgeinfo@primeclerk.com to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a 3018 Motion has been filed.

Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. (stephen.karotkin@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), and Matthew Goren, Esq. (matthew.goren@weil.com)), (B) Keller Benvenutti Kim LLP, 650 California Street, Suite 1900, San Francisco, California 94108 (Attn: Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Jane Kim, Esq. (jkim@kbkllp.com)), and (C) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019 (Attn: Paul H. Zumbro, Esq. (pzumbro@cravath.com), Kevin J. Orsini, Esq. (korsini@cravath.com), and Omid H. Nasab, Esq. (onasab@cravath.com));

(iv)     The U.S. Trustee, 450 Golden Gate Avenue, 5th Floor, Suite 05-0153, San Francisco, California 94102 (Attn: James L. Snyder, Esq. (James.L.Snyder@usdoj.gov) and Timothy Laffredi, Esq. (Timothy.S.Laffredi@usdoj.gov));

(v)      The attorneys for the administrative agent under the Debtors' debtor-in-possession financing facility, (A) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982 (Attn: Kristopher M. Hansen, Esq. (khansen@stroock.com), Erez E. Gilad, Esq. (egilad@stroock.com), and Matthew G. Garofalo, Esq. (mgarofalo@stroock.com)) and (B) Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067-3086 (Attn: Frank A. Merola, Esq. (fmerola@stroock.com));

(vi)     The attorneys for the collateral agent under the Debtors' debtor-in-possession financing facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut, Esq. (eli.vonnegut@davispolk.com), David Schiff, Esq. (david.schiff@davispolk.com), and Timothy Graulich, Esq. (timothy.graulich@davispolk.com));

(vii)    The attorneys for the CPUC, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064 (Attn: Alan W. Kornberg, Esq. (akornberg@paulweiss.com), Brian S. Hermann, Esq. (bhermann@paulweiss.com), Walter R. Rieman, Esq. (wrieman@paulweiss.com), Sean A. Mitchell, Esq. (smitchell@paulweiss.com), and Neal P. Donnelly, Esq. (ndonnelly@paulweiss.com));

(viii)   The attorneys for the Creditors Committee, (A) Milbank LLP, 55 Hudson Yards, New York, New York 10001-2163 (Attn: Dennis F. Dunne, Esq. (DDunne@milbank.com) and Samuel A. Kahlil, Esq. (skhalil@milbank.com)) and (B) Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067 (Attn: Gregory A. Bray, Esq. (GBray@milbank.com) and Thomas R. Kreller, Esq. (TKreller@milbank.com));

(ix)     The attorneys for the Tort Claimants Committee, (A) Baker & Hostetler LLP, 1160 Battery Street, Suite 100, San Francisco, California 94111 (Attn: Robert A. Julian, Esq. (rjulian@bakerlaw.com) and Cecily A. Dumas, Esq. (cdumas@bakerlaw.com)) and (B) Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California, 90025-0509 (Attn: Eric E. Sagerman, Esq. (esagerman@bakerlaw.com) and Lauren T. Attard, Esq. (lattard@bakerlaw.com));

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(x)     The attorneys for the Ad Hoc Group of Subrogation Claim Holders, (A) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Matthew A. Feldman, Esq. (mfeldman@willkie.com), Joseph G Minias Esq. (jminias@willkie.com), Benjamin P. McCallen Esq. (bmccallen@willkie.com), and Daniel I. Forman Esq. (dforman@willkie.com) and (B) Diemer & Wei, LLP, 100 West San Fernando Street, Suite 555, San Jose, California 95113 (Attn: Kathryn S. Diemer (kdiemer@diemerwei.com));

(xi)     The attorneys for the Shareholder Proponents, Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300 (Attn: Bruce S. Bennett, Esq. (bbennett@jonesday.com), Joshua M. Mester, Esq. (jmester@jonesday.com), and James O. Johnston, Esq. (jjohnston@jonesday.com)); and

(xii)     The attorneys for the Ad Hoc Committee of Senior Unsecured Noteholders, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036 (Attn: Michael S. Stamer, Esq. (mstamer@akingump.com), Ira S. Dizengoff, Esq. (idizengoff@akingump.com), David H. Botter, Esq. (dbotter@akingump.com), Abid Qureshi, Esq. (aqureshi@akingump.com) and (B) Akin Gump Strauss Hauer & Feld LLP, 580 California Street, Suite 1500, San Francisco, California 94104 (Attn: Ashley Vinson Crawford, Esq. (avcrawford@akingump.com)).

**PLEASE TAKE FURTHER NOTICE THAT IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

**PLEASE TAKE FURTHER NOTICE THAT PRINCIPAL COUNSEL REPRESENTING A PARTY, OR ANY PRO SE PARTY, OBJECTING TO CONFIRMATION OF THE PLAN MUST APPEAR IN PERSON AT A PRE-CONFIRMATION SCHEDULING CONFERENCE ON MAY 19, 2020 AT 10:00 AM (PREVAILING PACIFIC TIME) TO DISCUSS SCHEDULING ANY EVIDENTIARY MATTERS TO BE DEALT WITH IN CONNECTION WITH THE CONFIRMATION HEARING AND SCHEDULING FOR BRIEFING OF CONTESTED LEGAL ISSUES. FAILURE TO APPEAR MAY RESULT IN THE OBJECTION BEING STRICKEN.**

**PLEASE TAKE FURTHER NOTICE THAT <u>SCHEDULE A</u> TO THIS NOTICE SETS FORTH A SUMMARY OF THE KEY INJUNCTION, EXCULPATION, AND RELEASE**

**PROVISIONS IN THE PLAN. IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, THE PROVISIONS OF THE CONFIRMED PLAN, INCLUDING THE INJUNCTIONS, EXCULPATIONS, AND RELEASES CONTAINED THEREIN, WILL BE BINDING ON YOU, REGARDLESS OF WHETHER YOU ARE IMPAIRED OR NOT UNDER THE CONFIRMED PLAN. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN, INCLUDING THE INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS, CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

PLEASE TAKE FURTHER NOTICE THAT if you have any questions about the status of your Claims or Interests, or wish to request a copy of the Plan, the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, or any of the other solicitation materials, contact Prime Clerk, LLC (the "**Solicitation Agent**") by mail, overnight, or hand delivery at PG&E Information, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-333-8977 (international), by e-mail to pgeinfo@primeclerk.com, or by visiting the case website at https://restructuring.primeclerk.com/pge. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Dated: March [●], 2020

WEIL, GOTSHAL & MANGES LLP

KELLER BENVENUTTI KIM LLP


By: _____
          Stephen Karotkin

*Attorneys for Debtors*
*and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## SCHEDULE A

## Summary of Key Injunction, Exculpation, and Release Provisions of the Plan

If the Plan is confirmed by the Bankruptcy Court, the Plan, including the injunctions, exculpations, and releases contained in, among others, Sections 4.6(a), 4.7(a), 4.23(e), 4.24(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 thereof, will be binding on you, regardless of whether you are Impaired or not under the Plan. If the Plan is confirmed by the Bankruptcy Court, the following key injunction, exculpation, and release provisions will apply, subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER:

*Section 10.6 – Injunction*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation

Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(ii)    the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.**  There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.**  Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.**  The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.*  Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

*Section 10.9 – Releases.*

(a) *Releases by the Debtors*.  As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) *Releases by Holders of Claims and Interests*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

(c)  *Only Consensual Non-Debtor Releases.*  Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.  The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d)  *Release of Liens*.  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of

such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases*. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## Exhibit C

**Fire Victim Claims Solicitation Notice
and Fire Victim Plan Solicitation Directive**

**(As Served by the Debtors on or about February 10, 2020)**

**This Notice is not a solicitation for consents to accept or reject any chapter 11 plan of reorganization for the Debtors. Votes to accept or reject any chapter 11 plan may not be solicited unless and until a disclosure statement has been approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.**

**To ensure timely solicitation of your client's votes, the enclosed Fire Victim Solicitation Directive and your Client List must be returned to the Solicitation Agent no later than 4:00 p.m. (Prevailing Pacific Time) on March 3, 2020.**

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors*
*and Debtors in Possession*

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>   **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>       **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br>No. 19-30088 (DM)<br>(Lead Case)<br>(Jointly Administered)<br><br>**NOTICE OF (I) PROCEDURES FOR SOLICITING VOTES OF HOLDERS OF FIRE VICTIM CLAIMS TO ACCEPT OR REJECT THE DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION; (II) DEADLINE FOR ATTORNEYS TO SUBMIT FIRE VICTIM PLAN SOLICITATION DIRECTIVES AND CLIENT LISTS; AND (III) OTHER RELATED DEADLINES** |

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

TO:     ATTORNEYS REPRESENTING FIRE VICTIMS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.  On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "**Debtors**"), commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"). On February 7, 2020, the Debtors filed a proposed disclosure statement [Docket No. 5700] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Proposed Disclosure Statement**") for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated January 31, 2020* [Docket No. 5590] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). In addition, by Order dated February 6, 2020 [Docket No. 5673] (the "**Scheduling Order**"), the Court set February 18, 2020, as the deadline for the Debtors to file a motion (the "**Solicitation Procedures Motion**") to approve procedures for the solicitation, distribution, and tabulation of votes to accept or reject the Plan (the "**Solicitation Procedures**"). Pursuant to the Scheduling Order, the hearing on approval of the Proposed Disclosure Statement and the Solicitation Procedures Motion is currently scheduled for March 10, 2020 at 10:00 a.m. (Prevailing Pacific Time) (the "**Disclosure Statement Hearing**").

2.  The Solicitation Procedures Motion will set forth the proposed Solicitation Procedures that are applicable to you and your clients that may hold claims arising out of or relating to the Fires[1] that occurred in Northern California (each a "**Fire Victim Claim**" and the clients you represent that may hold such claims, your "**Fire Victim Clients**"). With respect to your Fire Victim Clients, the Solicitation Procedures require you to direct the Debtors regarding your preferred method of distribution of the Solicitation Packages that will contain the ballots and other information relevant for your Fire Victim Clients to vote to accept or reject the Plan. In particular, the Solicitation Procedures require that you complete and return to the Debtors' solicitation agent, Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**"), the enclosed Fire Victim Plan Solicitation Directive (i) by mail at PG&E Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165 or (ii) via e-mail at pgeballots@primeclerk.com, so that it is received by Prime Clerk no later than **4:00 p.m.**

---

[1] The "Fires" means the following fires that occurred in Northern California: (1) 2015 Butte Fire; (2) 2017 North Bay Wildfires (LaPorte, McCourtney, Lobo, Honey, Redwood / Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Patrick, Pythian / Oakmont, Maacama, Tubbs, Point, and Sullivan); and (3) 2018 Camp Fire.

**(Prevailing Pacific Time) on March 3, 2020**, which is the Fire Victim Solicitation Directive Deadline.[2]

3.  As explained in further detail in the attachment, the Fire Victim Solicitation Directive allows you to select your preferred method for the Solicitation Agent to solicit the votes of your Fire Victim Clients to accept or reject the Plan from **four (4) different solicitation methods**. These methods and the procedures for soliciting the votes of holders of Fire Victim Claims were developed by the Debtors in close coordination with representatives of the Official Committee of Tort Claimants and attorneys representing a significant number of Fire Victim Claimants. While the methods proposed are intended to expedite and streamline the transmission of information to the Fire Victim Clients, increase voter participation, and better ensure such victims are empowered to make informed and meaningful decisions as to whether to accept or reject the Plan, each voting decision rests exclusively with the Fire Victim Client. Each Firm is required to comply with applicable rules regarding aggregate settlements and informed consent. Each of the four proposed solicitation methods is described in the attachment.

4.  The Solicitation Procedures also require you to confirm the names, addresses, and (if known) e-mail addresses of your Fire Victim Clients as set forth on the enclosed Excel spreadsheet that has been compiled by the Solicitation Agent based on a review of the Fire Victim Claims that have been filed and scheduled in the Chapter 11 Cases. Please make any necessary additions, subtractions, or other corrections to the spreadsheets provided, and return the Client List in the same electronic format provided by the Debtors' Solicitation Agent no later than the Fire Victim Solicitation Directive Deadline (March 3, 2020). To the extent your Firm includes Fire Victim Clients that were not originally listed by the Solicitation Agent, you must provide the Solicitation Agent with the Proof of Claim or Schedule number that corresponds to each such additional Fire Victim Client's Fire Victim Claim. The Solicitation Agent will endeavor to identify on the Client Lists any conflicting records indicating that an individual Fire Victim Client may be represented by more than one Firm.

5.  **If you fail to return the Fire Victim Plan Solicitation Directive and confirmed Client List by the Fire Victim Solicitation Directive Deadline, the Solicitation Agent will solicit votes on the Plan from your Fire Victim Clients according to the Direct Solicitation Method described in the attached.**

6.  Pursuant to the Solicitation Procedures, Prime Clerk will serve copies of the Proposed Disclosure Statement (as approved by the Bankruptcy Court), the Plan, the various documents related thereto, and an appropriate Ballot in accordance with the instructions set forth on the Fire Victim Plan Solicitation Directive.

7.  Copies of the Proposed Disclosure Statement and the Plan (and, once filed, the Solicitation Procedures Motion) are available for review on the Solicitation Agent's website at

---

[2] The Fire Victim Solicitation Deadline may be extended based upon the date the Solicitation Procedures Motion is approved.

https://restructuring.primeclerk.com/pge. In addition, copies of the Proposed Disclosure Statement and the Plan (and, once filed, the Solicitation Procedures Motion) are available upon request by contacting Prime Clerk LLC by mail at PG&E Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165 or by e-mail at PGEinfo@primeclerk.com. If you have any questions regarding the instructions for completing the Fire Victim Plan Solicitation Directive, please contact Prime Clerk at PGEballots@PrimeClerk.com.

> **To ensure the timely solicitation of your Fire Victim Clients' votes on the Plan, you must complete and return the enclosed Fire Victim Plan Solicitation Directive and Client List (i) by mail at PG&E Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165 , or (ii) via e-mail at PGEballots@PrimeClerk.com, so that it is received by Prime Clerk on or before 4:00 p.m. (Prevailing Pacific Time) on March 3, 2020.**

Dated: February 10, 2020

**WEIL, GOTSHAL & MANGES LLP**

By:  _/s/ Stephen Karotkin_____
Stephen Karotkin

*Attorneys for Debtors*
*and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Chapter 11 Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| **- and –** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** **Debtors.** | (Jointly Administered) |
| ☐ Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☒ Affects both Debtors | **FIRE VICTIM PLAN SOLICITATION DIRECTIVE** |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

I hereby direct that distribution of Solicitation Packages in connection with the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated January 31, 2020* [Docket No. 5590] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") be implemented as set forth below.

Enclosed herewith is an Excel spreadsheet that lists the names, addresses, and (if known) e-mail addresses of my Fire Victim Clients (the "**Client List**") as compiled by the Solicitation Agent based on a review of the Fire Victim Claims that have been filed and scheduled in the Chapter 11 Cases as has been modified by the undersigned to make any necessary additions, subtractions, or other corrections. To the extent I have added any additional Fire Victim Clients that were not originally listed by the Solicitation Agent on the Client List, I have enclosed the Proof of Claim or Schedule number that corresponds to each such additional Fire Victim Client's Fire Victim Claim.

**Box 1 ☐ No Solicitation Required.** I do not represent any clients asserting Fire Victim Claims against the Debtors. By signing below, I hereby certify and authorize the Solicitation Agent to remove me from any further service or distribution lists relating to Fire Victim Claims in the above-captioned Chapter 11 Cases.

**Box 2 ☐ Master Ballot Solicitation Method**. I certify that (a) I will collect and record the votes of each of my Fire Victim Clients through customary and accepted practices (*e.g.*, by e-mail, telephone, or other standard communications), or that I have obtained authority to procedurally cast votes for each of my Fire Victim Clients or (b) I have the authority under applicable law to vote to accept or reject the Plan on behalf of each of my Fire Victim Clients (and I will provide the Solicitation Agent with a valid power of attorney to that effect). Accordingly, in lieu of soliciting votes from each of my Fire Victim Clients, I will record the votes to accept or reject the Plan for each of my Fire Victim Clients on a master ballot (a "**Fire Victim Master Ballot**") that I will submit to the Solicitation Agent. I understand that by electing this procedure I must meet all applicable standards to receive informed consent from my Fire Victim Clients. I understand that if I elect this procedure I shall either (i) provide the Disclosure Statement, either in hard copy or electronic format, to my Fire Victim Clients, or (ii) request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on my Fire Victim Clients.

By signing below, I hereby certify that: (i) I have authority under applicable law or I will collect or otherwise receive duly valid and enforceable authorizations or instructions to vote to accept or reject the Plan on behalf of my Fire Victim Clients in accordance with my Firm's customary practices; (ii) no Solicitation Packages need to be provided to any of my Fire Victim Clients unless I have made the informational service election below; and (iii) I represent each of the Fire Victim Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Fire Victim Plan Solicitation Directive.

☐ <u>Informational Service Election.</u> Although I have authority to record the votes of my Fire Victim Clients pursuant to the Master Ballot Solicitation Method set forth above, I request that the Solicitation Agent serve copies of the Solicitation Packages (without a Ballot) on each of my Fire Victim Clients. If you have made this election, please indicate:

   i. the approximate number of Fire Victim Clients that you represent: _____; and
   ii. whether you intend to have the Solicitation Agent include a cover letter or other communication from you to your Fire Victim Clients with the Solicitation Packages, which must be submitted together with the Fire Victim Solicitation Directive on or before the Fire Victim Solicitation Directive Deadline: [**YES**] or [**NO**].

**Box 3 ☐  Direct Solicitation Method.** I do not have authority to vote to accept or reject the Plan on behalf of any of my Fire Victim Clients or I have such authority but do not intend to exercise it. Accordingly, I hereby direct the Solicitation Agent to send Solicitation Packages (including Ballots) directly to each of my Fire Victim Clients at the addresses identified in the Client List. I understand and will advise my Fire Victim Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Fire Victim Clients under this procedure.

By signing below, I hereby certify that I represent each of the Fire Victim Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Fire Victim Plan Solicitation Directive.  If you have selected this solicitation method, please indicate:

   i. the approximate number of Fire Victim Clients that you represent: _____; and
   ii. whether you intend to have the Solicitation Agent include a cover letter or other communication from you to your Fire Victim Clients with the Solicitation Packages, which must be submitted together with the Fire Victim Solicitation Directive on or before the Fire Victim Solicitation Directive Deadline: [**YES**] or [**NO**].

**Box 4 ☐  Indirect Solicitation Method.** I do not have authority to vote to accept or reject the Plan on behalf of any of my Fire Victims Clients, or I have such authority but do not intend to exercise it.  Accordingly, as an alternative to the procedure described in Box 3 above, I hereby instruct the Solicitation Agent to send individual Solicitation Packages for each of my Fire Victim Clients to me, and I will forward such packages to my Fire Victim Clients for return directly to the Solicitation Agent. I understand and will advise my Fire Victim Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Fire Victim Clients under this procedure.

By signing below, I hereby certify that: (i) I represent each of the Fire Victim Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Fire Victim Plan Solicitation Directive; (ii) Solicitation Packages for each of my Clients should be delivered to my office, and I will deliver such packages to my Fire Victim Clients within three (3) business days after receipt; and (iii) within three (3) business days of my delivery of the

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Solicitation Packages to my Fire Victim Clients, I will file an affidavit with the Bankruptcy Court evidencing such service and will send a copy of such affidavit to the Solicitation Agent. The affidavit of service does not need to list each Fire Victim Client individually; rather, the affidavit need only state that (a) service of the Solicitation Packages was completed; (b) the date(s) on which such service took place; and (b) that you have provided the Client List to the Solicitation Agent. If you have selected this solicitation method, please indicate:

i.   the approximate number of Fire Victim Clients that you represent: _____;

iii. whether you intend to have the Solicitation Agent include a cover letter or other communication from you to your Fire Victim Clients with the Solicitation Packages, which must be submitted together with the Fire Victim Solicitation Directive on or before the Fire Victim Solicitation Directive Deadline: [**YES**] or [**NO**]; and

ii.  a delivery address for the Solicitation Packages, if such address is different from the address below: _____.

**Box 5 ☐ Hybrid Solicitation Method.** I have authority to record the votes of certain of my Fire Victim Clients pursuant to the Master Ballot Solicitation Method set forth in Box 2 above (collectively, the "**Master Ballot Fire Victim Clients**"). Accordingly, in lieu of soliciting votes from my Master Ballot Fire Victim Clients individually, I will record the votes to accept or reject the Plan of my Master Ballot Fire Victim Clients on a Fire Victim Master Ballot that I will submit to the Solicitation Agent. By signing below, I hereby certify that: (i) I have authority under applicable law or I will collect or otherwise receive duly valid and enforceable authorizations or instructions to vote to accept or reject the Plan on behalf of my Master Ballot Fire Victim Clients; (ii) no Solicitation Packages need to be provided to any of my Master Ballot Fire Victim Clients unless I have made the informational service election below; and (iii) I represent each of the Master Ballot Fire Victim Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Fire Victim Plan Solicitation Directive. I understand that if I elect this procedure I must indicate on my Client List those Fire Victim Clients that are Master Ballot Fire Victim Clients and those that are Individual Ballot Fire Victim Clients (as defined below).

☐ <u>Informational Service Election</u>. Although I have the authority to record the votes of my Master Ballot Fire Victim Clients pursuant to the Master Ballot Solicitation Method set forth above, I request that the Solicitation Agent serve copies of the Solicitation Packages (without a Ballot) on certain of my Master Ballot Fire Victim Clients. If you have made this election, please indicate:

i.   the approximate number of Master Ballot Fire Victim Clients that you represent: _____; and

ii.  whether you intend to have the Solicitation Agent include a cover letter or other communication from you to your Master Ballot Fire Victim Clients with the Solicitation Packages, which must be submitted together with the Fire Victim Solicitation Directive on or before the Fire Victim Solicitation Directive Deadline: [**YES**] or [**NO**].

With respect to my remaining Fire Victim Clients (the "**Individual Ballot Fire Victim Clients**"), I either do not have, or do not intend to exercise, the authority to vote to accept or reject the Plan on behalf of such clients. Accordingly, I hereby direct the Solicitation Agent to solicit votes on the Plan from my Individual Ballot Fire Victim Clients as follows:

**Box 5A ☐** I hereby direct the Solicitation Agent to send Solicitation Packages directly to each of my Individual Ballot Fire Victim Client at the addresses identified in the Client List. By signing below, I hereby certify that I represent each of the Individual Ballot Fire Victim Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Fire Victim Plan Solicitation Directive. I understand and will advise my Fire Victim

Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Individual Ballot Fire Victim Clients under this procedure. If you have made this election, please indicate:

    i. the approximate number of Individual Ballot Fire Victim Clients that you represent: _____; and

    ii. whether you intend to have the Solicitation Agent include a cover letter or other communication from you to your Individual Fire Victim Clients with the Solicitation Packages, which must be submitted together with the Fire Victim Solicitation Directive on or before the Fire Victim Solicitation Directive Deadline: [**YES**] or [**NO**].

**Box 5B** ☐ I hereby direct the Solicitation Agent to send the Solicitation Packages for each of my Individual Ballot Fire Victim Clients to me, and I will forward such packages to my Individual Ballot Fire Victim Clients. By signing below, I hereby certify that (i) I represent each of the Individual Ballot Fire Victim Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Fire Victim Plan Solicitation Directive; (ii) Solicitation Packages for each of my Individual Ballot Fire Victim Clients should be delivered to my office, and I will deliver such packages to the Individual Ballot Fire Victim Clients within three (3) business days after receipt; and (iii) within three (3) business days of my delivery of the Solicitation Packages to my Individual Ballot Fire Victim Clients, I will file an affidavit with the Bankruptcy Court evidencing such service and will send a copy of such affidavit to the Solicitation Agent. The affidavit of service does not need to list each Individual Ballot Fire Victim Client individually; rather, the affidavit need only state that (a) service of the Solicitation Packages was completed; (b) the date(s) on which such service took place; and (c) you have provided, the Client List to the Solicitation Agent. I understand and will advise my Fire Victim Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Individual Ballot Fire Victim Clients under this procedure. If you have selected this solicitation method, please indicate:

    i. the approximate number of Individual Ballot Fire Victim Clients that you represent: _____;

    ii. whether you intend to have the Solicitation Agent include a cover letter or other communication from you to your Individual Ballot Fire Victim Clients with the Solicitation Packages, which must be submitted together with the Fire Victim Solicitation Directive on or before the Fire Victim Solicitation Directive Deadline: [**YES**] or [**NO**]; and

    iii. a delivery address for the Solicitation Packages, if such address is different from the address below: _____.

**SIGNATURE:**

Name of Attorney:_____

Name of Law Firm:_____

Street Address:_____

City, State and Zip Code: _____

Telephone Number:_____

E-Mail Address:_____

Signature:_____

Date Completed:_____

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## Instructions for Returning This Directive

The Debtors are requesting that this Fire Victim Plan Solicitation Directive be returned so that it is received by the Debtors' Solicitation Agent on or before **4:00 p.m. (Prevailing Pacific Time) on March 3, 2020**[1] (i) by mail at Prime Clerk LLC, PG&E Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165 or (ii) via e-mail at PGEballots@PrimeClerk.com.

> **In accordance with the Solicitation Procedures, if you fail to return the Fire Victim Plan Solicitation Directive by the Fire Victim Solicitation Directive Deadline, the Solicitation Agent will solicit votes on the Plan from your Fire Victim Clients according to the Direct Solicitation Method described above.**

## Requirements for the Client List

As indicated above, you must confirm the accuracy of the names, addresses, and (if known) e-mail addresses of your Fire Victim Clients set forth on the enclosed Client List. In accordance with the Solicitation Procedures, you must make any necessary additions, subtractions, or other corrections to the spreadsheet(s) provided, and return the Client List in the same electronic format provided to you by the Solicitation Agent no later than the Fire Victim Solicitation Directive Deadline. If you add any additional Fire Victim Clients that were not originally listed by the Solicitation Agent, you must provide the Solicitation Agent with the Proof of Claim or Schedule number that corresponds to each such additional Fire Victim Client's Fire Victim Claim. The Solicitation Agent will endeavor to identify on the Client Lists any conflicting records indicating that an individual Fire Victim Client may be represented by more than one Firm.

If you have checked Box 5, you must also check either Box 5A or Box 5B to direct the Solicitation Agent as to the solicitation method for your Individual Ballot Fire Victim Clients, and you will be required to submit two Client Lists: one listing your Master Ballot Fire Victim Clients and one listing your Individual Ballot Fire Victim Clients.

Client Lists must be returned so as to be received no later than **March 3, 2020** either (i) by mail, with the Client List included on a USB drive, to Prime Clerk LLC, PG&E Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165; or (ii) e-mail to PGEballots@PrimeClerk.com. If you have any technical questions, or need to arrange for special delivery of your Client List, please contact Prime Clerk at PGEballots@PrimeClerk.com.

---

[1] The Fire Victim Solicitation Directive Deadline may be extended based upon the date the Solicitation Procedures Motion is approved.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Exhibit D**

**Confirmation Hearing Notice**

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors*
*and Debtors in Possession*

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION; (II) ESTABLISHMENT AND APPROVAL OF RECORD DATE, VOTING DEADLINE, AND OTHER PLAN SOLICITATION AND VOTING PROCEDURES; (III) APPROVAL OF FORMS OF BALLOTS, SOLICITATION PACKAGES, AND RELATED NOTICES; (IV) ESTABLISHMENT OF PLAN CONFIRMATION NOTICE PROCEDURES; AND (V) OTHER RELATED RELIEF** |

**PLEASE TAKE NOTICE** that:

1.      **Approval of Disclosure Statement.**  By Order, dated [●], 2020 [Docket No. [●] (the "**Disclosure Statement and Solicitation Procedures Order**"), the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") approved the disclosure statement [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated* March [•]*, 2020* [Docket No. [•] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] as having adequate information as provided under section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"), and also approved certain procedures for the solicitation, distribution, and tabulation of votes to accept or reject the Plan.  The Plan is annexed as **Exhibit A** to the Disclosure Statement.  The Bankruptcy Court previously set certain dates and deadlines with respect to approval of the Disclosure Statement and confirmation of the Plan by Order, dated February 11, 2020 [Docket No. 5732] (the "**Scheduling Order**").

2.      **The Voting Classes and Record Date.**  Only parties that hold Claims against, or Interests in, the Debtors in the following Classes as of March 3, 2020 (the "**Record Date**") are entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**"):

| The Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 5A-I | HoldCo Public Entities Wildfire Claims | Impaired |
| Class 5A-II | HoldCo Subrogation Wildfire Claims | Impaired |
| Class 5A-III | HoldCo Fire Victim Claims | Impaired |
| Class 10A-I | HoldCo Common Interests | Impaired |
| Class 10A-II | HoldCo Rescission or Damage Claims | Impaired |
| Class 3B-I | Utility Impaired Senior Note Claims | Impaired |
| Class 3B-III | Utility Short-Term Senior Note Claims | Impaired |
| Class 3B-IV | Utility Funded Debt Claims | Impaired |
| Class 5B-I | Utility Public Entities Wildfire Claims | Impaired |
| Class 5B-II | Utility Subrogation Wildfire Claims | Impaired |
| Class 5B-III | Utility Fire Victim Claims | Impaired |

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order, as applicable.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

3.     **The Voting Deadline**.  Votes to accept or reject the Plan must be actually received by the Debtors' solicitation agent, Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**"), by no later than **May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time)** (the "**Voting Deadline**") in accordance with the procedures set forth in the Disclosure Statement and Solicitation Procedures Order and the instructions set forth on any Ballot.  Failure to follow the voting instructions as set forth in the Disclosure Statement and Solicitation Procedures Order and any applicable Ballot may result in the vote of any such Claim or Interest holder not being counted for purposes of accepting or rejecting the Plan.

4.     **The Non-Voting Classes and Other Parties Not Entitled to Vote on the Plan**.  Holders of Unimpaired Claims or Interests in the Classes listed below are Unimpaired under the Plan (collectively, the "**Non-Voting Classes**"), are not entitled to vote to accept or reject the Plan, and will not receive a Ballot.  Such holders will instead receive a Notice of Non-Voting Status.

| The Non-Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 1A | HoldCo Other Secured Claims | Unimpaired |
| Class 2A | HoldCo Priority Non-Tax Claims | Unimpaired |
| Class 3A | HoldCo Funded Debt Claims | Unimpaired |
| Class 4A | HoldCo General Unsecured Claims | Unimpaired |
| Class 5A-IV | HoldCo Ghost Ship Fire Claims | Unimpaired |
| Class 6A | HoldCo Workers' Compensation Claims | Unimpaired |
| Class 7A | HoldCo Environmental Claims | Unimpaired |
| Class 8A | HoldCo Intercompany Claims | Unimpaired |
| Class 9A | HoldCo Subordinated Debt Claims | Unimpaired |
| Class 11A | HoldCo Other Interests | Unimpaired |
| Class 1B | Utility Other Secured Claims | Unimpaired |
| Class 2B | Utility Priority Non-Tax Claims | Unimpaired |
| Class 3B-II | Utility Reinstated Senior Note Claims | Unimpaired |
| Class 3B-V | Utility PC Bond (2008 F and 2010 E) Claims | Unimpaired |
| Class 4B | Utility General Unsecured Claims | Unimpaired |
| Class 5B-IV | Utility Ghost Ship Fire Claims | Unimpaired |
| Class 6B | Utility Workers' Compensation Claims | Unimpaired |
| Class 7B | 2001 Utility Exchange Claims | Unimpaired |
| Class 8B | Utility Environmental Claims | Unimpaired |
| Class 9B | Utility Intercompany Claims | Unimpaired |
| Class 10B | Utility Subordinated Debt Claims | Unimpaired |
| Class 11B | Utility Preferred Interests | Unimpaired |
| Class 12B | Utility Common Interests | Unimpaired |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

In addition, pursuant to the Disclosure Statement and Solicitation Procedures Order, the following holders of Claims and Interests **are not** entitled to vote to accept or reject the Plan:

    (a) Any holder of a Claim that was not listed in the Schedules or was listed as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a Proof of Claim was not (i) filed by the applicable Bar Date or (ii) deemed timely filed by an Order of the Bankruptcy Court before the Voting Deadline unless the Debtors have consented in writing;

    (b) Any holder of a Claim that is the subject of an objection or request for estimation filed by February 21, 2020 at 4 p.m. (Prevailing Pacific Time);

    (c) Any holder of a Claim (i) filed in the amount of $0.00, (ii) where, as of the Record Date, the outstanding amount of a Claim is not greater than $0.00, or (iii) where a Claim has been disallowed, expunged, disqualified, or suspended; and

    (d) Claimholders who are otherwise disqualified from voting to accept or reject the Plan pursuant to the procedures set forth in the Solicitation Procedures and Disclosure Statement Order.

    5. **Rule 3018 Motions.** Pursuant to the Scheduling Order, if you timely filed a Proof of Claim or Interest and disagreed with the Debtors' classification of, objection to, or request for estimation of, your Claim or Interest and believe that you should have been be entitled to vote to accept or reject the Plan, then you were required to file and serve a motion, pursuant to Bankruptcy Rule 3018(a) (a "**3018 Motion**"), to temporarily allow such Claim or Interest in a different amount or in a different Class for purposes of voting to accept or reject the Plan by March 6, 2020 at 4:00 p.m. (Prevailing Pacific Time), unless such deadline is extended by agreement of the Debtors; *provided, however,* that, notwithstanding anything in the Disclosure Statement and Solicitation Procedures Order or the Scheduling Order to the contrary, the deadline for any holder of a timely filed HoldCo Rescission or Damage Claim to file a 3018 Motion is extended through and including April 23, 2020, at 4:00 p.m. (Prevailing Pacific Time). 3018 Motions that were not timely filed and served in accordance with the Scheduling Order shall not be considered. The rights of the Debtors and any other party in interest to respond or object to any 3018 Motion are hereby expressly reserved. Any claimant or interest holder that timely filed a 3018 Motion will be provided with a Ballot and such Ballot will be counted in accordance with the procedures set forth in the Disclosure Statement and Solicitation Procedures Order, unless

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

temporarily allowed in a different amount by an Order of the Court entered prior to the Voting Deadline. For the avoidance of doubt, and notwithstanding any other provision in the Disclosure Statement and Solicitation Procedures to the contrary, any amount that is established or determined by the Court in connection with a timely filed 3018 Motion shall be allowed in the amount determined by the Court for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution;[2]

6.      **The Confirmation Hearing**.  Pursuant to the Scheduling Order, the hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **May 27, 2020 at 10:00 a.m. (Pacific Time)**, before the Honorable Dennis Montali, United States Bankruptcy Judge, in Courtroom 17 of the Bankruptcy Court, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102.  The procedures for filing responses and objections to confirmation of the Plan are set forth below.  The Confirmation Hearing and the deadlines related thereto may be continued from time to time by the Bankruptcy Court without further notice other than announcement by the Bankruptcy Court in open Court, as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court, or on the docket.  The Plan may be modified, if necessary, before, during, or because of the Confirmation Hearing, without further notice to interested parties.

7.      **Objections to Confirmation of the Plan**.  Responses and objections to confirmation of the Plan must:

   (a)   Be in writing;

   (b)   State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

   (c)   State with particularity the basis and nature of any objection with respect to the Plan;

   (d)   Conform to the Bankruptcy Rules, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, the *Order Establishing Procedures for Disclosure Statement and Confirmation Hearing* (N.D. Cal. May 2017) (Montali, J.), and the Scheduling Order; and

---

[2] Claimants may contact PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-333-8977 (international), or by e-mail to pgeinfo@primeclerk.com to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a 3018 Motion has been filed.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(e) Be filed with the Bankruptcy Court and served in accordance with Bankruptcy Rule 3020(b)(1) so as to be actually received on or before **4:00 p.m. (Prevailing Pacific Time) on May 15, 2020** (the "**Objection Deadline**") by the following parties (the "**Notice Parties**"):

(i) Clerk, U.S. Bankruptcy Court for the Northern District of California, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102;

(ii) The Debtors, c/o PG&E Corporation and Pacific Gas and Electric Company, 77 Beale Street, P.O. Box 770000, San Francisco, California 94177 (Attn: Janet Loduca, Esq.);

(iii) The attorneys for the Debtors, (A) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. (stephen.karotkin@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), and Matthew Goren, Esq. (matthew.goren@weil.com)), (B) Keller Benvenutti Kim LLP, 650 California Street, Suite 1900, San Francisco, California 94108 (Attn: Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Jane Kim, Esq. (jkim@kbkllp.com)), and (C) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019 (Attn: Paul H. Zumbro, Esq. (pzumbro@cravath.com), Kevin J. Orsini, Esq. (korsini@cravath.com), and Omid H. Nasab, Esq. (onasab@cravath.com));

(iv) The U.S. Trustee, 450 Golden Gate Avenue, 5th Floor, Suite 05-0153, San Francisco, California 94102 (Attn: James L. Snyder, Esq. (James.L.Snyder@usdoj.gov) and Timothy Laffredi, Esq. (Timothy.S.Laffredi@usdoj.gov));

(v) The attorneys for the administrative agent under the Debtors' debtor-in-possession financing facility, (A) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982 (Attn: Kristopher M. Hansen, Esq. (khansen@stroock.com), Erez E. Gilad, Esq. (egilad@stroock.com), and Matthew G. Garofalo, Esq. (mgarofalo@stroock.com)) and (B) Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067-3086 (Attn: Frank A. Merola, Esq. (fmerola@stroock.com));

(vi) The attorneys for the collateral agent under the Debtors' debtor-in-possession financing facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut, Esq. (eli.vonnegut@davispolk.com), David Schiff, Esq. (david.schiff@davispolk.com), and Timothy Graulich, Esq. (timothy.graulich@davispolk.com));

(vii) The attorneys for the CPUC, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064 (Attn: Alan W. Kornberg, Esq. (akornberg@paulweiss.com), Brian S. Hermann, Esq. (bhermann@paulweiss.com), Walter R. Rieman, Esq. (wrieman@paulweiss.com), Sean A. Mitchell, Esq. (smitchell@paulweiss.com), and Neal P. Donnelly, Esq. (ndonnelly@paulweiss.com));

(viii) The attorneys for the Creditors Committee, (A) Milbank LLP, 55 Hudson Yards, New York, New York 10001-2163 (Attn: Dennis F. Dunne, Esq.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(DDunne@milbank.com) and Samuel A. Kahlil, Esq. (skhalil@milbank.com)) and (B) Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067 (Attn: Gregory A. Bray, Esq. (GBray@milbank.com) and Thomas R. Kreller, Esq. (TKreller@milbank.com));

(ix) The attorneys for the Tort Claimants Committee, (A) Baker & Hostetler LLP, 1160 Battery Street, Suite 100, San Francisco, California 94111 (Attn: Robert A. Julian, Esq. (rjulian@bakerlaw.com) and Cecily A. Dumas, Esq. (cdumas@bakerlaw.com)) and (B) Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California, 90025-0509 (Attn: Eric E. Sagerman, Esq. (esagerman@bakerlaw.com) and Lauren T. Attard, Esq. (lattard@bakerlaw.com ));

(x) The attorneys for the Ad Hoc Group of Subrogation Claim Holders, (A) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Matthew A. Feldman, Esq. (mfeldman@willkie.com), Joseph G Minias Esq. (jminias@willkie.com), Benjamin P. McCallen Esq. (bmccallen@willkie.com), and Daniel I. Forman Esq. (dforman@willkie.com) and (B) Diemer & Wei, LLP, 100 West San Fernando Street, Suite 555, San Jose, California 95113 (Attn: Kathryn S. Diemer (kdiemer@diemerwei.com));

(xi) The attorneys for the Shareholder Proponents, Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300 (Attn: Bruce S. Bennett, Esq. (bbennett@jonesday.com), Joshua M. Mester, Esq. (jmester@jonesday.com), and James O. Johnston, Esq. (jjohnston@jonesday.com)); and

(xii) The attorneys for the Ad Hoc Committee of Senior Unsecured Noteholders, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036 (Attn: Michael S. Stamer, Esq. (mstamer@akingump.com), Ira S. Dizengoff, Esq. (idizengoff@akingump.com), David H. Botter, Esq. (dbotter@akingump.com), Abid Qureshi, Esq. (aqureshi@akingump.com) and (B) Akin Gump Strauss Hauer & Feld LLP, 580 California Street, Suite 1500, San Francisco, California 94104 (Attn: Ashley Vinson Crawford, Esq. (avcrawford@akingump.com)).

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

**PURSUANT TO THE SCHEDULING ORDER, PRINCIPAL COUNSEL REPRESENTING A PARTY, OR ANY PRO SE PARTY, OBJECTING TO CONFIRMATION OF THE PLAN MUST APPEAR IN PERSON AT A PRE-CONFIRMATION SCHEDULING CONFERENCE ON MAY 19, 2020 AT 10:00 AM (PREVAILING PACIFIC TIME) TO DISCUSS**

**SCHEDULING ANY EVIDENTIARY MATTERS TO BE DEALT WITH IN CONNECTION WITH THE CONFIRMATION HEARING AND SCHEDULING FOR BRIEFING OF CONTESTED LEGAL ISSUES. FAILURE TO APPEAR MAY RESULT IN THE OBJECTION BEING STRICKEN.**

**8. Plan Releases. INFORMATION REGARDING CERTAIN INJUNCTIONS, EXCULPATIONS AND RELEASES UNDER THE PLAN IS SET FORTH ON ANNEX A HERETO. YOU SHOULD CAREFULLY REVIEW THE PLAN AND THE INFORMATION ON ANNEX A IN ITS ENTIRETY AS IT MAY AFFECT YOUR RIGHTS.**

9. **Executory Contracts and Unexpired Leases**. Pursuant to the Plan, as of, and subject to, the occurrence of the Effective Date of the Plan and the payment of any applicable Cure Amount (as defined in the Plan), all executory contracts and unexpired leases of the Reorganized Debtors shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order (as defined in the Plan), (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date (as defined in the Plan), or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as defined in the Plan) by the Debtors. The Debtors shall serve all applicable notices regarding cure amounts or rejection as set forth in the Plan on the appropriate parties no later than fourteen (14) days before the Objection Deadline.

10. **Additional Information**. Copies of the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, the Plan, and the other solicitation materials are on file with the Clerk of the Bankruptcy Court (the "**Clerk**") and may be examined by interested parties on the Debtors' case website, which can be found and accessed at no cost at https://restructuring.primeclerk.com/pge. Copies of the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, the Plan, and the other solicitation materials may also be: (i) examined by interested parties during normal business hours at the office of the Clerk; (ii) accessed for a fee via PACER at http://www.canb.uscourts.gov/; and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(iii) obtained by written request to the Solicitation Agent, at the address or e-mail address set forth below:

| If by e-mail to: | If by standard, overnight, or hand delivery: |
|---|---|
| pgeinfo@primeclerk.com | PG&E Information<br>c/o Prime Clerk, LLC<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 |

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

Dated: March [•], 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By: _____

Stephen Karotkin

*Attorneys for Debtors*
*and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## ANNEX A

### NOTICE OF INJUNCTION, EXCULPATION AND RELEASE PROVISIONS[3]

**Binding Effect, Injunctions, Exculpations, and Releases.** If the Plan is confirmed by the Bankruptcy Court, the Plan, including the injunctions, exculpations, and releases contained in, among others, Sections 4.6(a), 4.7(a), 4.23(e), 4.24(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 thereof, will be binding on you, regardless of whether you are Impaired under the Plan and whether you have accepted the Plan. If the Plan is confirmed by the Bankruptcy Court, the following key injunction, exculpation, and release provisions will apply, subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. **YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER:**

*Section 10.6 – Injunction.*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner

---

[3] Capitalized terms used in this Annex but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

Case: 19-30088    Doc# 6222-1    Filed: 03/09/20    Entered: 03/09/20 18:21:48    Page 212 of 217

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

> (i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and
>
> (ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Section 10.9 – Releases.**

(a) **Releases by the Debtors.** As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

(b) **Releases by Holders of Claims and Interests.** As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.23(f)(ii) hereof.

(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.23(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens.* Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable

distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases.* Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119