Exhibit A

# FIRE ~~VICTIMS CLAIMS RESOLUTION PROCEDURES~~VICTIM CLAIM PLAN TREATMENT SUMMARY

**PLEASE READ THE FOLLOWING SUMMARY IF YOU FILED A FIRE ~~CLAIMANT PROOF OF~~VICTIM CLAIM IN THE PG&E CHAPTER 11 CASES. THIS SUMMARY PROVIDES INFORMATION ON HOW YOUR CLAIM WILL BE PROCESSED AFTER PG&E RECEIVES BANKRUPTCY COURT APPROVAL OF ITS PLAN OF REORGANIZATION AND THE PLAN BECOMES EFFECTIVE.**

**STEPS TO REORGANIZATION:** PG&E's and the Shareholder Proponents' Joint Chapter 11 Plan of Reorganization ("Plan") will govern the terms of its exit from chapter 11. You will receive the Plan and a Disclosure Statement that will describe the Plan and how PG&E proposes to implement it, and a ballot for you to vote in favor of or against the Plan. **Your vote is important.** The Bankruptcy Court will conduct a hearing after all ballots have been tallied to determine whether it will approve the Plan. IF THE PLAN IS APPROVED BY THE BANKRUPTCY COURT, YOUR CLAIM WILL BE PROCESSED AND MAY BE PAID EVEN IF YOU DID NOT CAST A VOTE OR VOTED AGAINST THE PLAN. IF THE PLAN IS <u>NOT</u> APPROVED, YOUR CLAIM WILL NOT BE PAID UNTIL ANOTHER PLAN IS APPROVED OR THERE IS ANOTHER RESOLUTION OF PG&E's CHAPTER 11 CASE.

**YOUR VOTE COUNTS**: You have the right to accept or reject the plan if you or your attorney filed a claim in bankruptcy court. The bankruptcy judge will take all votes into account when he decides whether to approve or disapprove the Plan. **Ballots must be received by May 15, 2020,** in order to be counted.

**HOW TO VOTE:** Please see the Disclosure Statement pages __ to __ for details on how to vote. Your ballot also explains how you can vote. If you are represented by counsel, consult your attorney on the appropriate voting method. If you have questions about the voting materials, you can call (844) 339-4217 (domestic toll-free) or +1 (929) 333-8977 (international) or email pgeinfo@primeclerk.com.

**RESOLUTION TRUST:** Pursuant to the Plan, PG&E will fund a resolution trust ("Trust") for the benefit of Fire Victim Claimants ~~("Trust")~~ (as defined below) in the amount of $13.5 billion, consisting of $6.75 billion cash (of which $1.35 billion will be paid from tax attributes over a two-year period) and $6.75 billion of common stock of reorganized PG&E. Your claim will be processed by the Trust's Claims Administrator in conjunction with the Trustee of the Trust and, if your claim is approved, it will be paid from the Trust assets. NOTHING IN THE PLAN OR TRUST AGREEMENT REQUIRES YOU TO RECEIVE PAYMENT IN STOCK.

**HOW TO GET YOUR CLAIM PROCESSED:** The Trust is set up for the benefit of the Fire Victims of the Butte Fire (2015), the North Bay Fires (2017)[1] and the Camp Fire (2018) who have filed claims in the PG&E Chapter 11 Cases ("Fire Victim Claimants"). These claims include individual victims' claims, business victims' claims and currently includes claims of certain government units. The Trust will treat all Fire Victim Claimants fairly and with dignity. The Trustee and Claims Administrator are developing objective criteria for approval of claims, as well as valuation of both "economic damages" such as destruction or damage to real estate and personal property, additional living expenses, lost wages, and business losses, personal injury or death and related medical expenses, and "non-economic damages" such as emotional distress related to bodily injury or death or the trauma of a dangerous evacuation from the fire and/or the loss of use and enjoyment of your property and community.

The Trustee and Claims Administrator will develop detailed claims procedures that will guide your attorney or you, if you do not have an attorney, in how your claim will be evaluated, including what, if any, information and documents you will need to provide to support your claim. For example, you may be asked to submit information and documents needed to verify your claim, which may include proof of ownership or residence at the time of the fire, information regarding damage to your home and its contents, land, rental agreements and receipts for additional living costs, documents related to business income loss or lost wages, and information regarding the emotional impact of your evacuation from the fire and the loss of use and enjoyment of your home, in addition to other relevant information and documents the Trust may need to evaluate your claim. If the Trust determines that it needs more information to evaluate your claim, you may be requested to submit it. If you have an attorney, all communications with the Trust will go through your attorney. Any information and documents that you provide will be considered confidential and used only for evaluating your claim.

The Trust will also have access to publicly available and other information related to your claim, such as information from your insurance company, and it will use all of the appropriate available information including the information you provide to evaluate and process your claim.

If you already settled your fire claim with PG&E before PG&E filed for chapter 11 or during the Chapter 11 Cases, your attorney should provide a copy of the settlement agreement to the Trust.

---

[1] The North Bay Fires (2017) consist of the following fires: LaPorte, McCourtney, Lobo, Honey, Redwood/Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Patrick, Pythian/Oakmont, Maacama, Tubbs, Point, and Sullivan.

2
4837-7643-7174.2
Case: 19-30088    Doc# 6224-1    Filed: 03/09/20    Entered: 03/09/20 20:15:36    Page 3 of 12

**EXPLANATION OF HOW YOUR CLAIM IS ALLOWED FOR PAYMENT:** The Trust will review your claim and the information and documents that relate to your claim. The Trust will determine if your claim is eligible or ineligible for payment and, if eligible, in what amount. If you accept the Trust's determination and your claim has been determined to be eligible, your claim will be paid. The Trustee will have full discretion in managing the funds in the Trust, and may decide to pay claims in installments.

The Plan does not absolve the insurance carriers of their obligations to fulfill their coverage obligations under their policies of insurance with you. The Trust will not take on any responsibility for your insurance carrier's obligations to you.

**WHAT TO DO IF YOU CONTEST THE TRUST'S TREATMENT OF YOUR CLAIM:** If you do not wish to accept either: (1) the Trust's determination that your claim is ineligible for payment; or (2) the amount awarded by the Trust for your claim, you will have options to seek the review of the determination. Each of these options will be explained in detail in the forthcoming procedures. In all circumstances, after the exhaustion of the review processes contained in the forthcoming procedures, the determination resultant from the Trust, in accordance with the procedures, will be final. If you contest the Trust's award and are not represented by legal counsel, you may wish to consult with legal counsel of your choice.

**TIMING:** PG&E currently intends to present the Plan to the Bankruptcy Court for confirmation and approval on <u>May 27, 2020</u> and PG&E is seeking to obtain an order from the Bankruptcy Court confirming the Plan before June 30, 2020, the deadline set by the California Legislature for PG&E to meet the requirements of AB 1054.

The Trust will not begin processing claims unless and until the Plan is approved and confirmed and becomes effective.

<span style="color:red">~~63684021 v2~~**THE PLAN HAS BENEFITS AND RISKS FOR FIRE VICTIMS. BELOW IS A SUMMARY OF SOME OF THE BENEFITS AND RISKS. FOR A COMPLETE DESCRIPTION OF BENEFITS AND RISKS, PLEASE SEE PAGES ▨ TO ▨ OF THE DISCLOSURE STATEMENT.**</span>

<span style="color:red">**BENEFIT:** The main benefit of the Plan is that is that it provides for compensation to fire victims sooner rather than later. If the plan is rejected, it is unknown how long or in what amount another plan can be negotiated and put in place.</span>

<span style="color:red">**RISK:** One risk has to do with large claims by governments and others which will affect the amount of money available to pay the rest of the fire victims. Presently, multiple government agencies claim over $__ billion, and Adventist Health System</span>

3

4837-7643-7174.2
Case: 19-30088    Doc# 6224-1    Filed: 03/09/20    Entered: 03/09/20 20:15:36    Page 4 of 12

is claiming over $2 billion. These and other large claims are being challenged in court, but it is not known now how the court challenges will turn out.

**RISK:** Another risk has to do with the value of the stock in the Trust. At present, there is no guarantee the stock will hold its $6.75 billion value. The stock value could go up or down after the Trust receives it, depending on stock market conditions. Factors that could cause the value of the stock to go down include another catastrophic wildfire..

**THIS IS YOUR CASE – PLEASE VOTE**

# FAQs for Fire Victims

1. How will PG&E pay wildfire claims in this case?

Answer: PG&E's plan of reorganization will establish a trust fund to pay wildfire claims. This trust fund is called the "Fire Victim Trust."

2. Does the court need to approve PG&E's plan of reorganization?

Answer: Yes.

3. Do fire victims get to vote on whether the court should approve or deny PG&E's plan of reorganization?

Answer: Yes, fire victims can vote yes or no on whether to approve PG&E's plan of reorganization.

4. How many fire victims must vote in favor of the PG&E plan of reorganization in order for the fire victims to "approve" the plan?

Answer: Voting in bankruptcy court is determined by the amount of the claim. Because we do not know fire victims' claims, for voting purposes only, each victim has a vote that is worth $1. This means that all fire victim votes are equal. If the court decides that each fire victim vote is worth $1, then more than 66% of victims need to vote in favor of the plan for it to be approved.

5. If 66% or less of fire victims vote in favor of the plan, can the bankruptcy court still approve the plan without further hearings regarding the claim amounts?

Answer: The bankruptcy court will need to hold a hearing on approval of the plan regardless of whether fire victims vote to approve the plan. At that hearing, or at additional hearing(s), the Bankruptcy Court would not be able to approve the plan over the objection of fire victims without determining whether the plan's treatment of fire victims, including the amount distributed to fire victims comports with the bankruptcy code.

6. Who will run the Fire Victim Trust?

Answer: The Fire Victim Trust will be run by an individual known as a Trustee. The trust documents propose that a well-respected retired judge

will be the Trustee to oversee and pay claims from the Trust. His name is Justice John Trotter. His biography can be found at https://www.jamsadr.com/trotter/.

7. What fire claims will be paid from the Fire Victim Trust?
Answer: The Fire Victim Trust will pay claims from the 2015 Butte Fire, the 2017 North Bay Fires, and the 2018 Camp Fire. A full list is available here [link].

8. How will the Fire Victim Trust be funded?
Answer: PG&E will pay $13.5 billion to the Fire Victim Trust. $6.75 billion will be in cash ($1.35 billion of which to be paid over time), and $6.75 billion will be in PG&E stock.

9. How will the Trustee use PG&E stock to pay fire claims?
Answer: The Trustee will sell the PG&E stock over a period of time in order to pay fire victim claims. The Trustee does not currently intend to distribute stock.

10. Will I receive PG&E stock?
Answer: Nothing in the Plan or the Trust Agreement requires any fire victim to accept stock as payment on their claim.

11. Could the value of PG&E stock change?
Answer: Yes, the value of the stock may go up or down, or stay the same. The trust documents require the Trustee to use prudent financial methods to value of the stock – although there can be no guarantees regarding how this stock will perform.

12. If the stock loses value, will I get less money for my claim?
Answer: If the stock loses value, it may reduce the amount that all fire victims will receive on their claims. Any reduction will apply to all fire victims equally – it will be shared "pro rata."

13. If the stock increases in value, will I get more money for my claim?

Answer: If the stock increases in value, the increase in the value of the stock will not change the value of your claim, but it may increase the amount of money that the Trust has available to satisfy all eligible claims.

14. What are the risks and benefits to the stock going into the Fire Victim Trust?

Answer: Stock value can change. The Trustee will use prudent financial methods to monetize the stock. The Trustee cannot guarantee that the stock will keep its value. The stock may go down and it may reduce the amount of funds available for the trust, or it may go up and increase the amount of funds available for the trust.

15. When is the stock transferred to the Fire Victim Trust?

Answer: The stock is transferred to the Fire Victim Trust on the "effective date," which is a date after confirmation of the plan. We believe the effective date will not be decided until the beginning of June, and that the effective date may occur by late summer or early fall of 2020. The stock sent to the trust will be worth $6.75 billion on a date to be determined by the court..

16. What if there is more than $13.5 billion in claims against the Fire Victim Trust?

Answer: All fire victims will share in the money equally, or "pro rata" based on the amount of their claims. This means that each victim will receive the same percentage of their individual claim. To make sure that all victims receive the same percentage of their claim, the Trustee may pay claims in installments.

17. What does the Trustee do?

Answer: The Trustee will oversee the Fire Victim Trust. This means that he and his staff will determine Fire Victim Claims, pay them, oversee the money in the trust and make sure that all Fire Victims are

treated equally. The Trustee will also have the right to sue companies who worked with PG&E and that the Trustee believes may be liable for the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp Fire. Money recovered from those lawsuits will go to the Fire Victim Trust.

18. Who is the Trustee of the Fire Victim Trust?
Answer: The Trustee of the Fire Victim Trust has not been approved by the Bankruptcy Court yet. However, the trust documents propose Justice John Trotter, a well-respected retired judge, as the Trustee. You can read more about him in his bio at https://www.jamsadr.com/trotter/.

19. Are there any other parties involved with the Fire Victim Trust I may want to know?
Answer: The trust will employ a Claims Administrator. The Claims Administrator will assist the Trustee in resolving Fire Victim Claims. This person has not has not been approved by the Bankruptcy Court yet. However, the trust documents propose Cathy Yanni as the Claims Administrator. Ms. Yanni also served as the claims administrator for the Wildfire Assistance Program. You can read more about her in her bio at https://www.jamsadr.com/yanni/.

20. Who will decide my claim?
Answer: If you have a claim because of either the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp fire, your claim will be decided by the Trustee and the Claims Administrator, together with their staff.

21. How will my claim be decided?
Answer: If you have a claim because of either the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp Fire, the Trustee, the Claims Administrator and their staff will look at publicly available information, information from experts, and the information and documents you submit in support of your claim in order to determine the amount of your claim.

22. Do I have to give the Fire Victim Trust any information about my claim?

Answer: Yes. The Fire Victim Trust will require that you answer a questionnaire that explains the losses that you have suffered and confirms that you are who you say you are. Depending on the nature of your claim, the Fire Victim Trust will also require that you provide certain documents and other evidence to support your claim. .

23. What kinds of losses are protected by the Fire Victim Trust?

Answer: The losses protected by the Fire Victim Trust include wrongful death, personal injury, property damage, lost wages, business losses, and emotional distress. The Trustee and the Claims Administrator have described the various types of damages that they know they will pay in a document called the <u>Claims Resolution Procedures</u>. The Trustee and the Claims Administrator will look at each claim individually and determine whether to pay other types of losses.

24. Can I receive punitive damages?

Answer: The Trustee and the Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay punitive damages.

25. Can I receive interest on my claim?

Answer: The Trustee and the Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay interest.

26. Are business claims being paid from the Fire Victim Trust?

Answer: Yes, business claims are being paid from the Fire Victim Trust.

27. What if I do not agree with the amount that the Trustee and Claims Administrator?

Answer: The options and avenues for review of the Trustee and Claims Administrator's determination will be set out in the Claims Resolution Procedures. As a general matter, if you do not agree with the amount on

the claim, you may ask the Claims Administrator to reconsider the determination. If you still do not like the Claims Administrator's decision, you can appeal to a neutral arbitrator, who will hold a hearing on the issue. Finally, if you do not like the decision of the neutral arbitrator, you may ask for a panel of three neutral arbitrators to review the decision. Then, the Trustee may accept, reject, or revise the decision of this panel. The Trustee will then issue a Trustee Determination to the Claimant. The Trustee Determination is final with no further appeal.

28. Is every fire victim getting the same amount?
Answer: No. Each victim's claim is determined individually based on each victim's losses.

29. I did not have insurance. Do I still have a claim?
Answer: Yes. The Fire Victim Trust will pay claims that were not covered by insurance.

30. I received insurance for my claim. Does that affect the amount of my claim?
Answer: Yes. If you received money from insurance, you cannot receive money from the Fire Victim Trust for the same exact losses that were insured. In other words, you cannot receive a "double recovery." Your recovery may be reduced by the amount of your insurance.

31. How would PG&E pay victims of future fires?
Answer: PG&E would pay claims from future fires from PG&E's insurance, the Wildfire Fund established by AB 1054, and funds generate from PG&E operations. Note that to the extent the the AB 1054 Wildfire Fund is available, it can pay up to a maximum of 40% of the losses.

32. What happens if the state or city takes over PG&E?
Answer: The current plan does not address a state or city takeover.

33. What is the wildfire fund created by AB 1054?
Answer: In 2019, California passed a law, AB 1054, that created a wildfire fund for future fires. This wildfire fund would apply to all California utilities and help pay 40% of wildfire victims for future fires. It cannot be used to pay claims from any fires before 2020.

34. What if PG&E does not meet the AB 1054 bankruptcy deadline of June 30, 2020?
Answer: AB 1054 created a wildfire fund for future wildfires. In order for PG&E to participate in the wildfire fund, it must have a confirmed plan of reorganization by June 30, 2020. If PG&E does not meet that deadline, it cannot participate in the wildfire fund created by AB 1054.

35. How will PG&E pay claims arising from the Ghost Ship Fire?
Answer: PG&E's insurance carriers will pay victims of the Ghost Ship Fire if the victims negotiate a settlement with the insurance carriers, or if the victims prove their claims against PG&E in court. Ghost Ship claims will not be paid out of money in the Fire Victim Trust.

36. What will Ghost Ship claimants need to do in order to obtain payment from PG&E's insurance carriers?
Answer: Ghost Ship victims can receive payment by settling their claims with PG&E's insurance carriers or by trying their lawsuits in court and obtaining a judgment or verdict, which requires the insurers to pay.