1                    UNITED STATES BANKRUPTCY COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                               -oOo-

4    In Re:                      ) Case No. 19-30088
                                 ) Chapter 11
5    PG&E CORPORATION AND PACIFIC )
     GAS AND ELECTRIC COMPANY     ) San Francisco, California
6                                 ) Tuesday, March 10, 2020
                        Debtors.  ) 10:00 AM
7    _____ )
                                   HEARING ON APPROVAL OF (A)
8                                  PROPOSED DISCLOSURE STATEMENT
                                   FOR DEBTORS' AND SHAREHOLDER
9                                  PROPONENTS' JOINT CHAPTER 11
                                   PLAN OF REORGANIZATION (B)
10                                 PLAN SOLICITATION AND VOTING
                                   PROCEDURES; (V) FORMS OF
11                                 BALLOTS, SOLICITATION
                                   PACKAGES, AND RELATED
12                                 NOTICES; AND (D) OTHER
                                   RELATED RELIEF [#5700]
13
                                   THE OFFICIAL COMMITTEE OF
14                                 TORT CLAIMANTS' MOTION TO
                                   ESTABLISH PROCEDURES FOR
15                                 DISCOVERY PRECEDING PLAN
                                   CONFIRMATION [#5840]
16
                                   DEBTORS' MOTION FOR ENTRY OF
17                                 AN ORDER (I) APPROVING FORM
                                   AND MANNER OF NOTICE OF
18                                 HEARING ON PROPOSED
                                   DISCLOSURE STATEMENT; (II)
19                                 ESTABLISHING AND APPROVING
                                   PLAN SOLICITATION AND VOTING
20                                 PROCEDURES; (III) APPROVING
                                   FORMS OF BALLOTS;
21                                 SOLICITATION PACKAGES, AND
                                   RELATED NOTICES; AND (IV)
22                                 GRANTING RELATED RELIEF
                                   [#5835]
23
                                   (CONT'D. NEXT PAGE)
24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                                     BLACK & VEATCH CONSTRUCTION,
                                      INC.'S MOTION TO QUASH THE
2                                     OFFICIAL COMMITTEE OF TORT
                                      CLAIMANTS' SUBPOENA PURSUANT
3                                     TO FED. R. CIV. P. 45(D)(3)
                                      [#5896]

4
                         TRANSCRIPT OF PROCEEDINGS
5                    BEFORE HONORABLE DENNIS MONTALI
                     UNITED STATES BANKRUPTCY JUDGE
6
       APPEARANCES:
7      For the Debtors:              STEPHEN KAROTKIN, ESQ.
                                     Weil, Gotshal & Manges LLP
8                                    767 Fifth Avenue
                                     New York, NY 10153
9                                    (212) 310-8000

10     For the United States         TIMOTHY S. LAFFREDI, AUST
       Trustee:                      Office of the U.S. Trustee - SF
11                                   450 Golden Gate Avenue
                                     Suite 05-0153
12                                   San Francisco, CA 94102
                                     (415) 705-3333
13
       For the Official Committee    DAVID J. RICHARDSON, ESQ.
14     of Tort Claimants:            Baker & Hostetler LLP
                                     11601 Wilshire Boulevard
15                                   Suite 1400
                                     Los Angeles, CA 90025
16                                   (310) 820-8800

17                                   ELIZABETH A. GREEN, ESQ.
                                     Baker Hostetler LLP
18                                   200 S. Orange Avenue
                                     Suite 2300
19                                   Orlando, FL 32801
                                     (407) 649-4000
20
                                     ERIC R. GOODMAN, ESQ.
21                                   Baker & Hostetler LLP
                                     Key Tower, 127 Public Square
22                                   Suite 2000
                                     Cleveland, OH 44114
23                                   (216) 621-0200

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For the Official Committee | GREGORY A. BRAY, ESQ. |
| | of Unsecured Creditors: | Milbank LLP |
| 2 | | 2029 Century Park East |
| | | 33rd Floor |
| 3 | | Los Angeles, CA 90067 |
| | | (424) 386-4000 |
| 4 | | |
| | For Ad Hoc Committee of | MICHAEL S. NEUMEISTER, ESQ. |
| 5 | Holders of Trade Claims: | Gibson, Dunn & Crutcher LLP |
| | | 333 South Grand Avenue |
| 6 | | Los Angeles, CA 90071 |
| | | (213) 229-7000 |
| 7 | | |
| | For Ad Hoc Group of | DANIEL I. FORMAN, ESQ. |
| 8 | Subrogation Claim Holders: | Willkie Farr & Gallagher LLP |
| | | 787 7th Avenue |
| 9 | | New York, NY 10019 |
| | | (212) 728-8000 |
| 10 | | |
| | For Adventist Health | REBECCA J. WINTHROP, ESQ. |
| 11 | System/West and Feather | Norton Rose Fulbright US LLP |
| | River Hospital: | 555 South Flower Street |
| 12 | | 41st Floor |
| | | Los Angeles, CA 90071 |
| 13 | | (213) 892-9200 |
| 14 | For Adventist Health | DAVID A. ROSENZWEIG, ESQ. |
| | System/West, a California | Norton Rose Fulbright US LLP |
| 15 | Religious Non-Profit | 1301 Avenue of the Americas |
| | Corporation, Feather River | New York, NY 10019 |
| 16 | Hospital, a California | |
| | Religious Non-Profit | |
| 17 | Corporation, a/k/a | |
| | Adventist Health Feather | |
| 18 | River, and Paradise | |
| | Retirement Residence LLP | |
| 19 | d/b/a Feather Canyon: | |
| 20 | For Anthony Gantner, | NICHOLAS A. CARLIN, ESQ. |
| | Individually and on Behalf | Phillips, Erlewine, Given & Carlin |
| 21 | of All Those Similarly | LLP |
| | Situated: | 39 Mesa Street |
| 22 | | Suite 201 |
| | | San Francisco, CA 94129 |
| 23 | | (415) 398-0900 |
| 24 | | |
| 25 | | |

```
1   For AT&T Corp.:            BENJAMIN MINTZ, ESQ.
                               Arnold & Porter Kaye Scholer LLP
2                              250 West 55th Street
                               New York, NY 10019
3                              (212) 836-8000

4   For Black & Veatch         JONATHAN A. SHAPIRO, ESQ.
    Construction, Inc.?        Baker Botts LLP
5                              101 California Street
                               Suite 3600
6                              San Francisco, CA 94111
                               (415) 291-6200
7
    For BOKF, NA, Solely in    ANDREW I. SILFEN, ESQ.
8   Its Capacity as Indenture  Arent Fox LLP
    Trustee:                   1301 Avenue of the Americas
9                              42nd Floor
                               New York, NY 10019
10                             (212) 484-3900

11  For California State       PAUL J. PASCUZZI, ESQ.
    Agencies:                  Felderstein Fitzgerald Willoughby
12                             Pascuzzi & Rios LLP
                               500 Capitol Mall
13                             Suite 2250
                               Sacramento, CA 95814
14                             (916) 329-7400

15  For Certain Post-Petition  MATTHEW W. GRIMSHAW, ESQ.
    Tort and Fire Claimants:   Grimshaw Law Group, P.C.
16                             130 Newport Center Drive
                               Suite 140
17                             Newport Beach, CA 92660
                               (949) 734-0187
18
    For CN Utility Consulting, MICHAEL B. LUBIC, ESQ.
19  Inc., Cupertino Electric,  K&L Gates LLP
    Inc., Wright Tree Service, 10100 Santa Monica Boulevard
20  Inc., and Wright Tree      8th Floor
    Service of the West, Inc.: Los Angeles, CA 90067
21                             (310) 552-0000

22  For CPUC:                  ALAN W. KORNBERG, ESQ.
                               Paul, Weiss, Rifkind, Wharton &
23                             Garrison LLP
                               1285 Avenue of the Americas
24                             New York, NY 10019
                               (212) 373-3000
25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Deutsche Bank National   ROBERT J. LABATE, ESQ.
     Trust Company and Deutsche   Holland & Knight LLP
 2   Bank Trust Company           50 California Street
     Americas:                    Suite 2800
 3                                San Francisco, CA 94111
                                  (415) 743-6900
 4
     For General Electric         JASON MCDONELL, ESQ.
 5   Company and GE Grid          Jones Day
     Solutions, LLC:              555 California Street
 6                                26th Floor
                                  San Francisco, CA 94104
 7                                (415) 626-3939

 8   For Individual Plaintiffs    MICHAEL A. KELLY, ESQ.
     Executive Committee          Walkup, Melodia, Kelly and
 9   Appointed by the             Schoenberger
     California Superior Court    650 California Street
10   in the North Bay Fire        26th Floor
     Cases:                       San Francisco, CA 94108
11                                (415) 981-7210

12                                FRANK PITRE, ESQ.
                                  Cochett, Pitre & McCarthy LLP
13                                San Francisco Airport Office
                                  Center
14                                840 Malcolm Road
                                  Suite 200
15                                Burlingame, CA 94010
                                  (650) 697-6000
16
     For Interstate Fire &        MICHELLE L. LANDRY, ESQ.
17   Casualty Company:            Vedder Price, LLP
                                  275 Battery Street
18                                Suite 2464
                                  San Francisco, CA 94111
19                                (415) 749-9513

20   For PG&E Shareholders:       BRUCE BENNETT, ESQ.
                                  Jones Day
21                                555 South Flower Street
                                  50th Floor
22                                Los Angeles, CA 90071
                                  (213) 489-3939
23

24

25
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Public Employees      ANDREW BEHLMANN, ESQ.
     Retirement Association of  Lowenstein Sandler LLP
 2   New Mexico:                One Lowenstein Drive
                                Roseland, NJ 07068
 3                              (973) 597-2500

 4   For SLF Fire Victim        RICHARD A. MARSHACK, ESQ.
     Claimants:                 Marshack Hays LLP
 5                              870 Roosevelt
                                Irvine, CA 92620
 6                              (949) 333-7777

 7   For the United States of   MATTHEW JORDAN TROY, ESQ.
     America:                   US Department of Justice, Civil
 8                              Division
                                P.O. Box 875
 9                              Ben Franklin Station
                                Washington, DC 20044
10                              (202) 305-2419

11   ALSO PRESENT:              WILLIAM B. ABRAMS, Individual and
                                Tubbs Fire Victim
12
                                ERIC CARLSON
13                              Individual Fire Victim

14

15

16

17

18

19

20   Court Recorder:           ANKEY THOMAS

21   Transcriber:              CLARA RUBIN
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (973)406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

PG&E Corp. and Pacific Gas and Electric Co.

1

2                                    -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  All rise.  Court is now in session, the

5    Honorable Dennis Montali presiding.

6            THE COURT:  Good morning, everyone.

7            IN UNISON:  Good morning, Your Honor.

8            THE COURT:  We have a lot of room next door in the

9    other overflow.  So if some of you are crowded, you should take

10   advantage of it.  You're on TV over there.  Be happy to have

11   you take more space.  But anyway, please be seated.

12           THE CLERK:  Matter of PG&E Corporation.

13           THE COURT:  Let me go through a couple of

14   (indiscernible) things.  Mr. Karotkin, thank you for all

15   your -- and your staff and your colleagues, for a busy

16   afternoon yesterday.  I think you overheated on the electronic

17   filing with the number of pages on file.  Of course I read

18   everything.

19           MR. KAROTKIN:  Just trying to keep up with your order,

20   sir.

21           THE COURT:  Yeah.  A couple of unrelated questions.

22   Is Ms. Winthrop here in court, or --

23           MS. WINTHROP:  Yes, Your Honor.

24           THE COURT:  Ms. Winthrop, does the withdrawal of the

25   TCC objection to your claim moot your motion to estimate, for

PG&E Corp. and Pacific Gas and Electric Co.

1  coming-up purposes?  You don't have to decide now.  I just want

2  to think about what's coming down the pike.

3          MR. ROSENZWEIG:  Your Honor, David Rosenzweig also,

4  from Norton Rose Fulbright --

5          THE COURT:  Just give me a short answer, though.  I

6  don't want to --

7          MR. ROSENZWEIG:  The short answer is we learned of it

8  yesterday.  We weren't aware it was coming.  So we don't think

9  we're going (indiscernible) 3018.

10         THE COURT:  Okay.  All right.  Leave it at that.

11         And, Mr. Karotkin, can you just give me a heads-up on

12  what we should expect for the exit-financing motion next week?

13  Previously there was a discussion about testimony.  What should

14  I anticipate?

15         MR. KAROTKIN:  I am hopeful that any issues that have

16  been raised -- and there's only an objection from the

17  governor's office.  I'm hopeful they'll be resolved and there

18  will not be a need for testimony.

19         THE COURT:  Okay.  And I don't remember; we -- there

20  still could be objections from someone.

21         MR. KAROTKIN:  There could be.  I'm --

22         THE COURT:  Yeah.

23         MR. KAROTKIN:  I'm not aware of anything new.

24         THE COURT:  Okay.  Well, as I said in the order that I

25  issued yesterday, whenever it was, I may have to use some of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    that time for some carryover stuff if necessary.  It may not be

2    necessary, but I'll --

3             MR. KAROTKIN:  I hope it's not necessary.

4             THE COURT:  Yeah, I understand.  I hope it's not

5    necessary, too.  I'll stay tuned.

6             Next question is -- yeah, I've tried to get through

7    everything that you filed, but the amended disclosure statement

8    makes reference to a claim-treatment summary.  But am I correct

9    that hasn't been --

10            MR. KAROTKIN:  That hasn't been updated.

11            THE COURT:  Not completed.  Okay.

12            MR. KAROTKIN:  Not completed.  Last night we received

13   some additional comments from the TCC.  So I think that we'll

14   be able to consult with them and update that over the next day

15   or so.

16            THE COURT:  Day or two?  And then will it be a

17   standalone document or an addendum to the --

18            MR. KAROTKIN:  It would be a standalone document which

19   would be sent out together with the disclosure statement and

20   the other materials.

21            THE COURT:  Okay.  Well, that's what I expected.

22            One second.

23            Okay, well, as I say, you must -- I don't even know

24   how many people you have working on this project, but you only

25   have one judge on the receiving end, and two clerks.  And so I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  just can't have gotten through everything.  I'm going to -- I

2  appreciate specifically -- and I have reviewed the claims --

3  the tally or the sheet that you made.

4              MR. KAROTKIN:  Yes.

5              THE COURT:  And I'm going to ask you to go through

6  that.

7              MR. KAROTKIN:  Okay, I can give you a brief update --

8  I know you have -- you issued an order with a schedule.

9              THE COURT:  Right.  Yeah, go ahead.  If you have a --

10             MR. KAROTKIN:  Perhaps it might be beneficial just to

11 give you a quick update on some of the --

12             THE COURT:  Fine.  Let's do that.

13             MR. KAROTKIN:  -- items related to the disclosure

14 statement.

15             We're pleased to report that the objections raised by

16 the TCC, by the United States government, and by the state

17 agencies -- and they can correct me if I'm misspeaking -- have

18 all been resolved.  There will be motions to approve settlement

19 agreements with respect to the FEMA claims and the Cal state

20 claims, submitted to the court within the next several days --

21             THE COURT:  Well, that's good news.

22             MR. KAROTKIN:  -- to address those claims.  I will --

23             THE COURT:  And that'll moot the pending objections to

24 those claims?

25             MR. KAROTKIN:  Yes.  I will say that, thanks to the

PG&E Corp. and Pacific Gas and Electric Co.

1  involvement of former bankruptcy Judge Newsome, who's been

2  working very hard over the last several days, he's -- we were

3  able to reach these agreements and --

4         THE COURT:  He's my secret weapon.

5         MR. KAROTKIN:  Well --

6         THE COURT:  I'm going to turn him loose on the

7  coronavirus next.

8         MR. KAROTKIN:  I think you can thank him for making

9  your life easier today.

10        So that disposes of, I think, a lot of what would

11  otherwise be before you today.  But --

12        THE COURT:  Well, yes, it does.  Well, but do you need

13  to -- is it -- again, I want you to decide when and how you're

14  going to go public with whatever you're telling me and

15  everything else.  But do you need a 9019 motion, or is it

16  something we can --

17        MR. KAROTKIN:  We --

18        THE COURT:  -- do standalone?  What's your pleasure

19  in --

20        MR. KAROTKIN:  We will do a 9019 motion but it will

21  not hold up the disclosure statement, solicitation, or the

22  confirmation process.  And we will amend the plan to reflect

23  whatever's required to be reflected in connection with those

24  agreements.

25        THE COURT:  Well, but procedurally when -- well,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    again, I presume within a short period of time there'll be a

2    public notice about it --

3              MR. KAROTKIN:  Yes.

4              THE COURT:  -- in some respect.  But if the parties

5    anticipate a 9019 motion, do you want to tell me when that's

6    likely to happen, or --

7              MR. KAROTKIN:  I think that the actual settlement-

8    agreement language is in the process of being negotiated and

9    finalized.  Once it's finalized, which we would hope would be

10   in the next couple of days, we will then file a motion to be

11   heard promptly.

12             So I would hope that a motion would be filed sometime

13   next week with respect to both of these items.

14             THE COURT:  Well, my calendar is your calendar.  But

15   we have, as you know, the exit financing on the 16th.  We have

16   blocked out on April 1st, which I presume -- I presume some of

17   this resolution will moot some of the April 1st stuff; right?

18   I mean, does it --

19             MR. KAROTKIN:  I don't remember exactly --

20             THE COURT:  Well --

21             MR. KAROTKIN:  -- what's on the 1st.

22             THE COURT:  -- the estim --

23             MR. KAROTKIN:  Oh, yes, yes, yes.

24             THE COURT:  The classification.

25             MR. KAROTKIN:  Yes.  Yes.  Yes.

(971) 645-9890 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  And this kind of --

2          MR. KAROTKIN:  It should.

3          THE COURT:  -- circles back to the question that I

4    asked about Adventist.  There's been no resolution of that,

5    so --

6          MR. KAROTKIN:  No.

7          THE COURT:  Right?  So that -- but -- well, let's put

8    it this way:  if you want to -- if you want to have that heard

9    on an expedited basis, I'm game --

10          MR. KAROTKIN:  Okay.

11          THE COURT:  -- as quickly as you want.

12          MR. KAROTKIN:  I'm sure we'll take you up --

13          THE COURT:  I mean, I --

14          MR. KAROTKIN:  I'm sure we'll take you up on that.

15          THE COURT:  No, I mean, I'm somewhat -- it's difficult

16    for me sometimes, on these very complex documents like the

17    financing motion, to get on shortened notice.  But I think I

18    know the issues.  I don't know the details of the settlement.

19    But again, what I'm saying what I know or don't know -- it's a

20    lot of other people need to know also.

21          MR. KAROTKIN:  Yes.

22          THE COURT:  And also I would -- I'm glad to hear what

23    you reported, and I will accommodate you on the scheduling, to

24    go on that --

25          Okay, I've got some specific comments and questions

PG&E Corp. and Pacific Gas and Electric Co.

1  about the disclosure statement, but I think I'd rather go back

2  to what my scheduling order --

3           MR. KAROTKIN:  Sure.

4           THE COURT:  -- talked about, unless you want to tell

5  me -- want to tell me any other good results?  Any good news

6  that I should know about?

7           MR. KAROTKIN:  I don't want to ruin things for later.

8           THE COURT:  Okay, well, I said I would hear -- if the

9  tort committee wanted to be heard on the motion to establish

10 discovery procedures.  And they took me up on my offer.  So

11 let's have a brief appearance on that.

12          MR. RICHARDSON:  Good morning, Your Honor.  David

13 Richardson of Baker Hostetler, on behalf of the official

14 committee of tort claimants.

15          Your Honor, I'm not necessarily here to argue against

16 the Court's tentative rulings.  I take it, from the timing of

17 the Court's order that came out yesterday afternoon, that the

18 Court had seen our supplemental brief before it issued its --

19          THE COURT:  Yeah.

20          MR. RICHARDSON:  -- language in that order.

21          THE COURT:  Well, actually --

22          MR. RICHARDSON:  What I'm hoping is that the Court can

23 give us --

24          THE COURT:  Yeah, I mean, I had, but --

25          MR. RICHARDSON:  Well, I'm hoping, at the very least,

PG&E Corp. and Pacific Gas and Electric Co.

1   the Court can give us some guidance as to what it's intending

2   by proposing granting the motion to quash but denying the

3   procedures order, because that suggests to us some very extreme

4   differences.  It could be --

5           THE COURT:  I don't mind deferring the motion to

6   quash.  I mean, I'll hear from counsel if they want to be

7   opposed on that.  To me, they seemed very related.  And again,

8   because of the issue on special master and the debtors'

9   opposition to the costs, it seemed to me they were fatally

10  flawed.  And I could be incorrect, that maybe it's a standalone

11  on the motion to quash.  But I think your point was that a

12  deferral of that motion might be appropriate.  And again, I'm

13  open to that.

14          MR. RICHARDSON:  It may be that, given everything on

15  the Court's calendar today, perhaps a deferral in both motions

16  would be appropriate, because we're --

17          THE COURT:  Well, but the problem --

18          MR. RICHARDSON:  -- very --

19          THE COURT:  Again, not to make -- pile on here; it

20  looked to me -- from the day I looked at your motion, I

21  thought, "Special master?  I don't have that ability."  So --

22          MR. RICHARDSON:  That was a very unfortunate use of a

23  term that we did not mean would invoke --

24          THE COURT:  I know, but I can't --

25          MR. RICHARDSON:  -- the rules.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT: -- give it a different name. And if

2  it's --

3    MR. RICHARDSON: I understand.

4    THE COURT: -- if it's got feathers and it quacks,

5  it's a duck; right? You can't call it a turkey.

6    So I guess my sense is that -- and what you said in

7  your opposition was, well, you could have done this with 2004.

8  I wish you had. I wish you'd noticed out a bunch of 2004s a

9  month ago.

10    MR. RICHARDSON: Well, and that is an important piece

11  of information to obtain today, because if 2004s are the way to

12  do this, we can certainly proceed to prepare for plan

13  confirmation in that manner. We were concerned that a large

14  group of 2004 motions would be more of a burden to the Court.

15    THE COURT: Why is it a burden? In fact, they're

16  issued automatically. And they're only a burden when someone

17  wants to complain about it.

18    MR. RICHARDSON: And that's the concern we --

19    THE COURT: Well, okay, but how many subpoenas did you

20  issue, and how many people complained about it?

21    MR. RICHARDSON: It's about a third.

22    THE COURT: About a third.

23    MR. RICHARDSON: Yeah.

24    THE COURT: And how many have I had to rule on yet?

25  Zero. That's why we have meet-and-confer.

PG&E Corp. and Pacific Gas and Electric Co.

1    I mean, look, again, Mr. Richardson, a lot of lawyers

2    who are new to the bankruptcy world come in here and they don't

3    know about 2004 and they get into this -- there's no lawsuit

4    pending, there's no nothing.  And I say, welcome to how -- the

5    way we do it.  And so it struck me that, for the kind of

6    information you wanted from the outset, that was so obviously

7    what to do.  Again, I don't mean to get on your case about

8    special master.  That's one of those oddball things that I

9    don't even know historically where it came from.  But it's very

10   much the law.

11       MR. RICHARDSON:  And as a bankruptcy attorney who's

12   been practicing since the days of Murphy Weir in the early

13   '90s, I should have caught that in the draft and changed it.

14       THE COURT:  Well, one of my colleagues who's now

15   retired, actually in a matter that was removed to him in the

16   San Jose court, issued an order for a special master.  And I

17   told him one day, how could you do that?  And there was no

18   answer.

19       And so I think the philosophy behind the decision

20   is -- that's why the bankruptcy judge is there; we are your

21   special master.  But there's nothing wrong with Judge Newsome

22   or someone else by consent being a mediator/thing.  I think one

23   of the other complaints here from one of the parties, as you

24   know, was, taking a designated mediator and making him a

25   decision-maker is probably unfair to the process.

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. RICHARDSON:  Understood.

2        THE COURT:  So unless --

3        MR. RICHARDSON:  And that --

4        THE COURT:  -- unless counsel for Black & Veatch want

5   to be heard, I'm prepared to deny your motion.  I'm not going

6   to say with or without prejudice; just deny it and take their

7   motion off calendar, and let you figure out a way you want to

8   proceed.

9        MR. RICHARDSON:  That's actually very helpful, Your

10  Honor, because our concern was that we would end up with a far

11  bigger mess on the May -- at the May 19th status conference on

12  confirmation if we don't take discovery.  And the plan

13  objection that Mr. Bray outlined to the Court in December on

14  feasibility related to the assigned claims as raised.

15       THE COURT:  I know.

16       MR. RICHARDSON:  So if the issue is it's our

17  procedure, we have no problem resetting and trying to take

18  discovery, using the other procedures.

19       THE COURT:  Well, again, since you know this -- but

20  maybe some of the lawyers here who're listening don't know it.

21  I'll say it again.  2004 is that bankruptcy device called take

22  some discovery without suing somebody first, without having an

23  adversary proceeding or contested matter, and go find out if

24  you've got a claim.  And it's done.  And a lot of folks learn

25  the hard way that it's okay, you can do it, you can issue

PG&E Corp. and Pacific Gas and Electric Co.

1    subpoenas, et cetera.  And then I have published for a long

2    time they meet and confer, work it out, and move quickly.  You

3    say you don't want to burden me.  That's what I get the big

4    bucks for.  I'll do it if I have to.  And let's do that.

5            So let's switch gears and see if --

6            MR. RICHARDSON:  Your Honor, we can submit on the

7    tentative for both motions in that case.

8            THE COURT:  Well, does Black -- counsel for Black &

9    Veatch want to be heard?  I don't even know who's here on that.

10   Are you on that?

11           MR. SHAPIRO:  Your Honor, my name's Jonathan Shapiro,

12   yes, for Black & Veatch; Baker Botts.

13           If they're submitting on the tentative, we need not be

14   heard.

15           THE COURT:  But you're -- but, I mean, I will -- I'll

16   defer it.  I mean, the proposal -- a variation is just drop it

17   from the calendar.  If there's some other solution that works

18   to your client's satisfaction, then --

19           MR. SHAPIRO:  I mean, that's fine.  They certainly

20   could drop the subpoena if Your Honor delays and schedules the

21   motion for some other time.  We're effectively protected under

22   the rule --

23           THE COURT:  Right.  And are you --

24           MR. SHAPIRO:  -- having lodged our objection.  So --

25           THE COURT:  But are you familiar --

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. SHAPIRO:  -- any of these are fine.

2    THE COURT:  Are you familiar with the 2004 procedure?

3    MR. SHAPIRO:  I'm aware of the procedure, Your Honor.

4  And consistent with what -- I had educated myself before

5  walking in.  We're just not presented with that yet.

6    THE COURT:  Well, okay, I understand.  But --

7    MR. SHAPIRO:  Yeah.

8    THE COURT:  -- as I say -- I don't want to say that I

9  know better than Mr. Richardson, but it seemed to me that it

10  could've been done earlier.  It wouldn't have solved the

11  problem of the special master or --

12    MR. RICHARDSON:  Sure.

13    THE COURT:  -- some other variation on it, but --

14    MR. RICHARDSON:  Sure.

15    THE COURT:  But okay.  Well, then the minutes will

16  reflect -- I'll have Ms. Parada reflect on the minutes that the

17  motion by the committee is denied, just denied, period.

18    And the motion by Black & Veatch to quash is simply

19  taken off calendar to be reset.  And I don't think there's any

20  need to do a formal order.

21    Mr. Richardson, if you want, we can do a formal order,

22  but I don't imagine --

23    MR. RICHARDSON:  I don't see a need, Your Honor.

24    THE COURT:  A lot of people learned how to file a

25  notice of appeal, but I don't imagine we're going to have one

(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    on this one.

2         Did you want to be heard on that?

3         MR. MCDONELL:  I do.  Jason McDonell for General

4    Electric and the other General Electric parties.

5         The loose end I see here, Your Honor, and maybe I'm

6    missing something, is that the subpoena has been served on our

7    client.  It's clear now that it's inappropriate because of no

8    contested matter, and yet the subpoena is out there.  So the

9    question for me is do I have to deal with the subpoena.

10        THE COURT:  Well, what if Mr. Richardson calls you up

11   and says we're going to serve you with a 2004 order, can we

12   just stick with the prior subpoena?

13        MR. MCDONELL:  For the prior subpoena to go away, we

14   restart the process properly and we can have a fair discussion

15   about it.  But it doesn't make any sense, from my point of

16   view, to have a subpoena floating out there with some unknown

17   timetable --

18        THE COURT:  Okay.  But you do --

19        MR. MCDONELL:  -- by which I might have to respond.

20        THE COURT:  You do understand, I presume, that the

21   Court can issue a subpoena under Rule 2004.

22        MR. MCDONELL:  Rule 2004's a different animal.  That's

23   not what we're dealing on the present posture.

24        THE COURT:  Right, right.

25        MR. MCDONELL:  So it may be that counsel is prepared

PG&E Corp. and Pacific Gas and Electric Co.

1    to withdraw the subpoena and restart the process.

2          THE COURT:  Well, Mr. Richardson, can you -- you want

3    to do this on a one-on-one basis and --

4          MR. RICHARDSON:  We would prefer to do it on a one-on-

5    one basis, Your Honor, because some of the parties that have

6    rejected those subpoenas were served under entirely different

7    proceedings.  For example, the subpoena to Adventist had

8    nothing to do with a future plan objection on feasibility.  I

9    don't want to make a broad statement that everyone who objected

10   has their subpoena withdrawn today.

11         We certainly understand, from the Court's ruling, that

12   the subpoena procedure is not how the Court wants us to

13   proceed.  We certainly understand that, were anyone to try to

14   quash any of the subpoenas related to the plan objection, they

15   would succeed, perfectly likely to succeed.

16         THE COURT:  Yeah.

17         MR. RICHARDSON:  And we will be dealing with everybody

18   going forward.  Some have had no problem and are voluntarily

19   producing documents to us.

20         THE COURT:  No, I understand, and that's what I expect

21   might happen.

22         Okay.  And, Mr. McDonell, I understand your point, but

23   I really don't want to have every single respondent on the

24   subpoena be heard on the subject.  I'm denying the motion;

25   therefore, the subpoenas that were issued consistent with that

PG&E Corp. and Pacific Gas and Electric Co.

1    motion, I think, die a natural death.

2            MR. MCDONELL:  Very well, Your Honor.  Thank you.

3            THE COURT:  All right.

4            MR. RICHARDSON:  Thank you, Your Honor.

5            THE COURT:  All right.

6            MS. WINTHROP:  Your Honor, Rebecca Winthrop for the

7    Adventist claimants.  My apologies.

8            THE COURT:  It's all right.

9            MS. WINTHROP:  One question, just so that the parties

10   understand that the claims objection with respect to Adventist

11   Health has been withdrawn, so therefore subpoenas in connection

12   with that objection to the claim obviously has changed its

13   procedural posture.

14           THE COURT:  But it's only procedural --

15           MS. WINTHROP:  Yes.

16           THE COURT:  -- because it could be a 2004 --

17           MS. WINTHROP:  Absolutely, Your Honor --

18           THE COURT:  -- subpoena.

19           MS. WINTHROP:  -- the parties can submit to a 2004

20   exam.  I just want to make sure that there was a statement to

21   the contrary on the record, so --

22           THE COURT:  Now that you're back up to the podium, and

23   I didn't know that I'd hear from you again, I would appreciate

24   it if you and your colleague and your client would think about

25   whether we can take off calendar the motion for temporary

(973) 406-2250   operations@escribers.net | www.escribers.net

                PG&E Corp. and Pacific Gas and Electric Co.

1   allowance, given the withdrawal of the objection.  But you

2   don't have to decide today.

3          MS. WINTHROP:  Thank you, Your Honor.

4          THE COURT:  It's down the road.  It's just, as

5   everyone who's been on this case since last January knows,

6   we're just getting compressed as the calendar gets closer to

7   June 30th, and I'm trying to manage the scheduling.  So --

8          MS. WINTHROP:  Absolutely, Your Honor.

9          THE COURT:  Okay.

10          MS. WINTHROP:  We appreciate the concerns of the

11   Court.

12          THE COURT:  Okay.  Well, I appreciate everyone's

13   efforts here.  All right.

14          All right, Mr. Karotkin, I'm ready to go to the

15   disclosure statement, and I'm prepared to follow your lead.

16   And thank you for the table that tracks it.  And I'm ready to

17   go down the list, just on your chart, and promise you at the

18   end I may have a few questions of my own, but let's deal with

19   the objections first.  Are you okay with that?

20          MR. KAROTKIN:  Whatever you want to do.

21          THE COURT:  No.  I'd like to keep that answer for the

22   future when you get --

23          MR. KAROTKIN:  Not every --

24          THE COURT:  -- when you start resisting.

25          MR. KAROTKIN:  Not everything, Your Honor.  Not

PG&E Corp. and Pacific Gas and Electric Co.

1    everything.

2        THE COURT:  When you fight back, I want to say, well,

3    I got a free "whatever you want" chip.  Okay.

4        MR. KAROTKIN:  Okay.  So again --

5        THE COURT:  So for everyone in the courtroom or on the

6    phone, I'm going to follow the document number 6221-1 that Mr.

7    Karotkin's office filed last evening.  And that starts on

8    page -- well, it's the second of two documents, and it's a

9    chart, and it goes by the objecting party and the debtors'

10   response, and I'm going to go right down the list.  And to the

11   extent that I can make rulings, I will do so.

12       And I will tell you, Mr. Karotkin -- this might come

13   as a surprise -- the one-dollar claim figure, to the extent you

14   have still unresolved disputes, whether it's Adventist or AT&T,

15   I'm more inclined to go with the objecting parties, but not to

16   make a definitive ruling, to talk about a schedule to discuss

17   that.  But on everything else, I mean, if there are some

18   significant ones that need to be the subject of further

19   briefing, I'm not going to --

20       MR. KAROTKIN:  I'm not sure we have time for that,

21   sir.

22       THE COURT:  Well, but what I'm saying is I'm not going

23   to have a document that you filed yesterday and have people

24   here be given no chance to at least respond to some of your

25   points on the substance.  But let's go down the list.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      MR. KAROTKIN:  Okay.

2      THE COURT:  And what I'll do is, as you identify the

topic and what you think the outcome is, I'll see if anyone

wants to be heard, and if not, I'll make a decision for you.

Okay?

6      MR. KAROTKIN:  Sure.

7      THE COURT:  All right.

8      MR. KAROTKIN:  Okay.  So the first one is by the ad

hoc committee of holders of trade claims.  Their objection is

the plan is patently unconfirmable because it doesn't

contemplate the payment of post-petition interest on allowed

claims after the effective date.  This is a confirmation

objection.  The plan is consistent with your ruling, and we

believe that there is adequate disclosure as to the issue in

the disclosure statement and the objection should be overruled.

16      THE COURT:  It seems to me that it was my decision,

it's the law of the case, and it's the operative decision

unless and until either there's a compromise or another court

reverses.  And I would assume that the trade committee, and

anyone else that's joining on that issue, wants to preserve

their position.  But there really isn't anything else to talk

about.

23      So counsel for the trade committee, do you want to be

heard on this, or do you agree that it's -- are you holding

your position?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. NEUMEISTER:  Your Honor, Mike Neumeister, Gibson,

2     Dunn, on behalf of the ad hoc holder of the trade claims.

3          We raise only this issue because, we think, consistent

4     with your scheduling order, the plan, as drafted, is

5     unconfirmable as a matter of law.

6          THE COURT:  Right, but do you agree it is -- your

7     ruling is because you -- I mean, your argument is because you

8     disagree with my ruling.

9          MR. NEUMEISTER:  I think they're actually not

10    necessarily tied.  I mean, the plan clearly provides for post-

11    petition interest at the federal judgment rate.

12          THE COURT:  Right.

13          MR. NEUMEISTER:  Our objection that we raise with

14    respect to the disclosure statement is focused not necessarily

15    on the interest rate.  We're appealing that decision; we'll go

16    forward on that path.

17          Our objection to the disclosure statement, that the

18    plan is patently unconfirmable, is that the plan cuts off

19    interest at the effective date.  And the way that the plan is

20    structured is that the reorganized debtors are able to hold off

21    on filing an objection, or anything of the sort, for at least

22    six months, maybe a year, without paying any sort of post-

23    effective date interest.  I don't think your decision with

24    respect to post-petition interest addressed that issue.  And I

25    think that, under a number of different avenues of precedent, I

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    think that the way that the plan is structured right now, with

2    respect to cutting off interest at the effective date, renders

3    the plan unconfirmable.

4             THE COURT:  So, Mr. Karotkin, the plan does say you're

5    going to pay it on the effective date, doesn't it?

6             MR. KAROTKIN:  The plan says we will pay interest

7    through the effective date at the federal judgment rate.

8             THE COURT:  But then after that, they're gone, you pay

9    them off, right?

10            MR. KAROTKIN:  To the extent their claims are allowed,

11   they will be paid off.

12            THE COURT:  Well, okay.  But if a trade creditor in

13   this group has a claim for one million dollars, you are

14   accruing federal judgment rate to an effective date and then

15   you write them a check for a million plus whatever --

16            MR. KAROTKIN:  Right.

17            THE COURT:  -- the accrual is.  But what if you're two

18   months late in making the payment?

19            MR. KAROTKIN:  The plan does not provide for the

20   continuation of interest after that date.

21            THE COURT:  But is the plan confirmable if you don't

22   pay them on the effective date?

23            MR. KAROTKIN:  I believe it is, yes.

24            THE COURT:  Well, then what's the incentive to pay, if

25   you can just sit tight and wait forever?

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. KAROTKIN:  Your Honor, you're assuming that we're

2     just going to not pay claims -- unallowed claims, and that's --

3     first of all, this is how virtually every plan works, that

4     disputed claims are resolved over the course.  To the extent

5     that claims are allowed, they'll be paid with interest.  And I

6     think that, if they believe that's a confirmation issue, let

7     them raise it at confirmation.

8          THE COURT:  No, I know.  I will raise it at

9     confirmation.  But I want to make sure we're clear.  Is there

10    an objection pending?

11         MR. KAROTKIN:  No.

12         THE COURT:  So my hypothetical is they're owed a

13    million dollars and, under the plan, they're supposed to get a

14    million plus fed interest rate on the effective date.  So if

15    they don't get paid on the effective date, it seems to me you

16    are violating the plan if there's no claim objection.  But if

17    there's a claim objection, then doesn't the interest rate

18    accrue until their claim is paid?

19         MR. KAROTKIN:  That is not what the plan provides.

20         THE COURT:  Okay.  Well, but that might be an

21    objection at confirmation that it should.

22         MR. KAROTKIN:  They're free to raise that as

23    confirmation.  That's -- as I said, they're free to raise it a

24    confirmation.  The Court can rule on it.

25         THE COURT:  But so I know what your thinking is, if

(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   there is no pending objection, and the effective date happens,

2   and for some reason any one of the creditors in this group

3   doesn't get paid, what is your remedy for that creditor?

4          MR. KAROTKIN:  I'm not sure I understand your

5   question.

6          THE COURT:  The creditor is owed a million dollars,

7   the effective date is August 15th, and on August 16th, the

8   creditor's lawyer calls you up and says where's my million and

9   fifty dollars, and you say you'll get it later.  Does he get it

10  later plus --

11         MR. KAROTKIN:  The plan --

12         THE COURT:  -- the interest accrued or not?

13         MR. KAROTKIN:  The plan -- the plan provides that

14  allowed claims will be paid on the effective date, or as soon

15  as practicable thereafter, with interest through the effective

16  date.

17         THE COURT:  So the plan doesn't cut off -- I mean, it

18  doesn't carry that interest forward.

19         MR. KAROTKIN:  Correct.

20         THE COURT:  But it doesn't give the creditor any

21  remedy if there is not payment, if there's no payment on the

22  effective date of an allowed claim.

23         MR. KAROTKIN:  It would give a creditor -- to the

24  extent a creditor has an allowed claim, and we haven't paid it

25  on the effective date, or as soon as practicable thereafter,

PG&E Corp. and Pacific Gas and Electric Co.

1    they would have a claim that we violated the plan.

2              THE COURT:  Now, I'll agree it's a confirmation issue,

3    but I don't think I would -- you know, I don't know -- let me

4    put it this way, I don't know how I would not grant them at

5    least the post-effective date interest as a matter of the right

6    result.

7              MR. KAROTKIN:  I understand what you're saying.

8              THE COURT:  Okay.  So --

9              MR. NEUMEISTER:  Just so the record's clear, the

10   reason that we're raising this now is it does go to whether or

11   not general unsecured claims are in fact impaired or

12   unimpaired.

13             THE COURT:  No, I understand, and that's raised

14   elsewhere too.  And I understand that's an issue that's just

15   floating out there.

16             Okay.  I'll tell you what.  For today's purposes,

17   though, I don't think that the objection raises a fatal flaw

18   such that I would disapprove the disclosure statement.  I will

19   acknowledge, and Mr. Karotkin is not denying, it's a

20   confirmation issue.  His outline summary says so, and his

21   comments say so, and it's preserved.

22             So to the extent that -- and you've already made clear

23   what your position is in terms of the appealability -- excuse

24   me, the issue on appeal.  And if the Court, on appeal,

25   reverses, then you get a better result.

(970) 988-2882 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. NEUMEISTER:  If that's the rate.

2          THE COURT:  Yeah, okay.

3          MR. NEUMEISTER:  Okay.  Thank you, Your Honor.

4          THE COURT:  Okay.  All right.  Mr. Karotkin?

5          MR. KAROTKIN:  The second one is the objection by the

6     ad hoc and subrogation claim holders in which they assert that

7     the fire victim trust agreement contains provisions that are

8     inconsistent with the plan.  The plan has been revised to

9     provide that, to the extent a definitive document is

10    inconsistent with the plan, the plan controls.  So I think that

11    would address the objection.  In addition, the debtors

12    certainly have no objection to the trust agreement being

13    revised to be consistent with what was agreed to.

14         THE COURT:  Well, let's see what counsel for the

15    subrogation committee and for TCC says.

16         Is TCC okay with this, Ms. Green?

17         MS. GREEN:  Your Honor, Elizabeth Green on behalf of

18    the TCC.

19         Your Honor, we filed a redline of the trust last

20    night; on page 5 it fixes this issue, and the trust is now

21    consistent with the plan.

22         THE COURT:  Okay.

23         MS. GREEN:  That's at docket number 6224.  I was in

24    the other room when you brought up the short form claim

25    summary.  But we do have attached to that same document a

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  proposed short form claim summary and some frequently asked

2  questions that I know the debtor didn't get to review because

3  it was late last night and we were in mediation.  But I did

4  want to inform the Court that that was out there.

5          THE COURT:  I was aware of it, actually, and I saw it,

6  and I haven't studied it, but it was on my to-do list.

7          MS. GREEN:  Okay.

8          THE COURT:  Thanks.

9          MS. GREEN:  Thanks.

10         THE COURT:  And how about -- is the ad hoc subrogation

11 committee -- good morning.

12         MR. FOREMAN:  Good morning, Your Honor.  Daniel

13 Foreman, Willkie Farr & Gallagher, for the ad hoc subrogation

14 group.

15         Our objection was resolved by changes to the plan and

16 the disclosure statement and the revised trust agreement that

17 was filed by the TCC yesterday.

18         THE COURT:  Okay, great.  Thanks.

19         All right.  We're on a roll here.  Mr. Karotkin, we're

20 up to the Adventist.

21         MR. KAROTKIN:  Adventist Health has -- pardon me -- a

22 number of objections that are set forth on the chart.  We

23 believe we have revised the disclosure statement, to the extent

24 we can, to address their concerns.  We believe that it provides

25 adequate information regarding the treatment of fire claims.

(972) 672-3222 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1     We do not object to a modification of the trust

2  procedures to provide for a pro rata distribution to fire

3  claimants.  I think that's something that the tort committee

4  will have to address.

5     We do not have any objection to a modification of the

6  claims-resolution procedures to preserve a right, at the end of

7  the day, for a jury trial, certainly with respect to personal

8  injury claims.  Property damage claims, I don't think that's

9  necessary.

10     And we think there is no need, in a case like this,

11  Your Honor, as was similar in the prior PG&E Chapter 11 case,

12  to have a detailed liquidation analysis, particularly where

13  claimants are being paid in full.

14     And we have provided, we believe, adequate disclosure

15  with respect to the mechanics of the insurance crediting to

16  fire victims.

17     And we would have no objection, again, to the claims-

18  resolutions procedures being modified to clarify -- if

19  Adventist believes it's not clear as to how insurance works,

20  for that being clarified.

21     THE COURT:  Well, let me ask the TCC; are you okay

22  with the changes that Mr. Karotkin just described?  And maybe

23  is that already subsumed in what we've been talking about?

24     MS. GREEN:  Your Honor, Elizabeth Green on behalf of

25  the TCC.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          With regard to the pro rata distribution, the TCC

2    maintains that the trust already provides for a fair,

3    consistent and equitable manner of distribution.  That's on

4    page 2.

5          And as to the reserves, Section 2.1, number 22, allows

6    the trustee to establish reserves of trust assets as he deems

7    necessary.  So we don't think that is an appropriate objection.

8          As to the jury trial, the procedures themselves

9    provide that there is no right to jury trial.  That's in

10   capital letters in the procedures.  I don't believe we have any

11   objection to including that in the disclosure statement.

12          THE COURT:  Well, but does that mean the jury right is

13   gone?

14          MS. GREEN:  The way that --

15          THE COURT:  Or anyone who --

16          MS. GREEN:  -- the procedures are set up is that the

17   first step is for the trustee to come up with a dollar number.

18          THE COURT:  Right.

19          MS. GREEN:  The second step is to have, basically, a

20   committee with the trustee and the claims administrator.  And

21   the third step is, essentially, a panel, and that's the end of

22   the procedure.  So yes --

23          THE COURT:  And that's it?  And we're done?

24          MS. GREEN:  -- that's it.

25          THE COURT:  Well, Mr. Julian, a year ago, told me that

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    the jury right would be preserved.  What happened to that?

2         MS. GREEN:  Your Honor, because there's a limited

3    fund, and we're now at this point in the case, it's really

4    going to be fire claimant against fire claimant as opposed to

5    PG&E.  I think when Mr. Julian made that argument, it was

6    clearly, at that point, fire claimant versus PG&E.  And so now

7    that we have a limited fund, we think the best way to preserve

8    that fund is to allow the trustee to do his job and to

9    administer the trust.

10        THE COURT:  Well, and that means if there's a fire

11   victim, there would be an individual or a hospital who believes

12   there's a jury right, there the remedy is to challenge

13   confirmation because --

14        MS. GREEN:  Correct.

15        THE COURT:  -- because a confirmed plan, consistent

16   with this structure, closes the door to the jury.

17        MS. GREEN:  Correct, and it would be a confirmation

18   objection that perhaps could be dealt with at that point.  I

19   don't believe that Adventist has a right to jury trial, though.

20        THE COURT:  Well, I realize we're talking about

21   Adventist here, but we're talking about a broader question.

22   And I don't think you were active in the case, way back when,

23   when there was a lot of discussion, it was way back to before

24   there was the referral to the district court and all the other

25   stuff.  And I recall, quite vividly, Mr. Julian's contention or

(973)406-2250 operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1    argument.  I'm not criticizing him or you; I'm just --

2            MS. GREEN:  No, I understand.

3            THE COURT:  -- making sure we're on the same page

4    here.

5            Okay.  Well, so this is a long way of saying, then,

6    the committee is okay with all of the changes that Mr. Karotkin

7    says are acceptable to the debtors; is that a fair statement?

8            MS. GREEN:  I don't believe that there needs to be a

9    reserve because it's already in the document at section

10   2.1(22).

11           THE COURT:  Um-hum.

12           MS. GREEN:  And I believe that the pro rata

13   distribution is contemplated by the equal and fair distribution

14   that's fair and consistent in an equitable manner.  If the

15   Court wants us to put the words "pro rata" in there, I suppose

16   we don't have an objection.

17           THE COURT:  Well, let me hear from Ms. Winthrop.  It's

18   her objection, so -- and the way -- so many of these objections

19   and these issues relate not only to the debtor but to the tort

20   committee and, to some extent, the official -- regular

21   committee.

22           Do you want --

23           MR. KAROTKIN:  Just for clarification, we haven't

24   addressed yet Ms. Winthrop's objection to the solicitation

25   procedures and the dollar vote, so --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Right.  Okay.  Ms. Winthrop, let's talk

2     about the disclosure issues, not the solicitation procedures.

3     And do you want to argue any further on these points that

4     you're objecting to?

5          MS. WINTHROP:  Yes, Your Honor.  Rebecca Winthrop, of

6     Norton Rose Fulbright, on behalf of the Adventist claimants.

7          So let's just take it from the top, Your Honor.  No

8     percentage recoveries on any claims.  We still have no idea

9     what is the percentage recoveries, not even a range of recovery

10    for tort victims.  Putting more information in about how

11    there's a 13.5-billion-dollar pot doesn't help tort claimants

12    figuring out what they're going to get out of this case.  And

13    so if you don't know the percentage recovery and/or an

14    estimated amount of claims in the pot, then how do you know

15    what you're going to get, much less evaluate whether you get a

16    better deal in the event of a liquidation.  So that's my first

17    issue.

18         THE COURT:  Well, but are those the only two choices?

19         MS. WINTHROP:  Well, I'm sorry, in terms of --

20         THE COURT:  Well, if the plan is not confirmed, a

21    liquidation isn't the only option.

22         MS. WINTHROP:  I --

23         THE COURT:  I mean, in fact, that's the last thing in

24    the world I would think would happen.  Do you really believe

25    this company should be liquidated in a Chapter 7?

PG&E Corp. and Pacific Gas and Electric Co.

1    MS. WINTHROP:  Your Honor, I'm just trying to find out

2    some information --

3    THE COURT:  No, I understand that, but what I'm trying

4    to do is I'm trying to pin you down on, sort of, where do we go

5    if your objection is sustained, either today or at

6    confirmation, and confirmation is denied for that reason.  It

7    seems to me what happens if we go back to try again and deal

8    with everything else.  I don't think that the only option is a

9    Chapter 7 liquidation.

10    MS. WINTHROP:  No, Your Honor, but I also don't

11    believe that the only option is to sit there and tell tort

12    claimants not -- there is a range of recoveries.  These parties

13    must know there is a range of recoveries that you can tell tort

14    victims what they're going to get.  And it could be that

15    there's a lot of different variables, but unless you tell

16    people what type of recovery they're going to get out of this

17    case, I don't know how they meaningfully vote on this.

18    THE COURT:  Well, I'm sure you're aware of what Mr.

19    Karotkin explained to me about the settlement involving the

20    governmental agencies.  And so there's whatever -- and I don't

21    know what the terms are, but there's certainly progress there.

22    MS. WINTHROP:  Um-hum.

23    THE COURT:  And it either reduces to a finite amount

24    or takes out of the discussion California and FEMA claims,

25    which are major, major components.  And again, I don't know

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    what the ultimate outcome is, but it's an outcome that, my

2    guess is, it's less than what they asserted their claims at.

3          But what else do you want for me to make them do

4    today, the debtor?  Iman, they've got 80,000 claims.  Do you

5    want them to take a guess as to what the total amount of those

6    claims is without the slightest idea of whether and how those

7    claims should be resolved?

8          MS. WINTHROP:  As I understand it, there is a range of

9    recoveries that the debtor is aware of.  And if there is a

10   range of recoveries that they could provide tort victims, I

11   think that's important to know.  These parties were spending a

12   lot of money going toward an estimation.  They're going to have

13   to eventually file some sort of pleading, as I read the RSA of

14   the TCC, that goes and demonstrates that they're adequately

15   fulfilling the requirements of AB 1054.

16         I don't know -- if they are going to do all of that,

17   then why can they not put a simple range of recovery in this.

18   Or, if tort victims are not going to receive a hundred cents on

19   the dollar, as apparently is the case that they've admitted to

20   the debtors -- pardon me, admitted to the government in

21   discovery, then that should be disclosed as well, that they are

22   not going to receive.

23         THE COURT:  Well, Mr. Karotkin, I know that, although

24   a small number of letters that come to me are not indicative of

25   the entire universe of claimants, but there is a pattern there

(970) 349-9937  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  of: when am I going to know what I'm likely to get? It seems

2  to me that it might not be unreasonable for the debtor to make

3  a best judgment of a range. Is that impossible for -- can you

4  explain why some estimate couldn't be done in that regard?

5  MR. KAROTKIN: Well, Your Honor, consistent with the

6  bar order and the bar date -- and there's a lot of discussion

7  in this court about what's appropriate and inappropriate for

8  the information to be filed by the claimants.

9  THE COURT: Right.

10  MR. KAROTKIN: And with a lot of input from the tort

11  committee and other people. The order that was entered by Your

12  Honor did not require them to provide documentation or an

13  amount for their claims.

14  THE COURT: No, I understand.

15  MR. KAROTKIN: Okay? And so we have -- some people

16  did put in amounts, and I'll refer to that later. In fact,

17  some people put in amounts, I think -- for liquidated amounts

18  of something like 576 billion dollars --

19  THE COURT: I have no doubt --

20  MR. NEUMEISTER: -- which of course is not realistic.

21  THE COURT: I have no doubt that there are --

22  MR. KAROTKIN: So it's difficult --

23  THE COURT: -- numbers that are enormous.

24  MR. KAROTKIN: It's difficult for the debtors to come

25  up with a view. Obviously we've done our own internal

PG&E Corp. and Pacific Gas and Electric Co.

1    analysis, as to what we believe the liability is, with the

2    information we've had.  There's nothing perfect.  We believe,

3    again, based upon our internal analysis, that the trust is

4    sufficient to satisfy the claims.

5              THE COURT:  What does that mean?

6              MR. KAROTKIN:  To satisfy the claims in full.

7              THE COURT:  But what does that mean?

8              MR. KAROTKIN:  In full.

9              THE COURT:  Satisfy --

10             MR. KAROTKIN:  In full.  In full.

11             THE COURT:  Well, the --

12             MR. KAROTKIN:  We believe that the thirteen-and-a-half

13   billion dollars is sufficient to satisfy the claims in full.

14             THE COURT:  So that means that an individual victim,

15   whether it's an individual or an entity --

16             MR. KAROTKIN:  No, we're not guaranteeing anything.

17             THE COURT:  I understand.  I understand.

18             MR. KAROTKIN:  But we believe that the funding is

19   adequate to pay the claims in full.

20             THE COURT:  So does "in full" mean a hundred cents on

21   the dollar of the amount of the claim, or does it in full

22   because, under some interpretation of AB 1054, or the fact that

23   there was a negotiated settlement of thirteen-and-a-half

24   billion --

25             MR. KAROTKIN:  We believe the negotiation --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        THE COURT:  What's the definition of "full"?

2        MR. KAROTKIN:  Hm?

3        THE COURT:  What's the definition?

4        MR. KAROTKIN:  Payment of the claims ultimately

5  allowed.

6        THE COURT:  Translate that to simple language.  If

7  I've got a claim for 50,000 dollars, and I'm a victim, am I

8  going to get 50,000 dollars?

9        MR. KAROTKIN:  If it is proven up to be a legitimate

10  claim for 50,000 dollars, we believe there's sufficient funding

11  in the trust.  Now, Your Honor, we're not guaranteeing it.

12        THE COURT:  I got it.

13        MR. KAROTKIN:  I could be wrong.  There is a lot of

14  information out there we do not have.  This is our best guess

15  on the information available, I believe.

16        THE COURT:  Okay.  Let's --

17        MR. KAROTKIN:  And I can confirm that, to the best

18  extent I can.  But again, there is no guarantee.

19        THE COURT:  Point me to the disclosure statement that

20  you filed yesterday.  Where would I go to find what that

21  statement is -- the best --

22        MR. KAROTKIN:  It's not in the disclosure statement.

23        THE COURT:  But shouldn't it be?  Isn't it --

24        MR. KAROTKIN:  Again --

25        THE COURT:  -- disclosing?  I mean, it's the voter's

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  pamphlet.

2  　　　　MR. KAROTKIN:  I mean, Your Honor, the tort committee

3  probably has better information than I do.  They're a lot

4  closer to these claims than I am.  And I think that, you know,

5  if they have other information, they should speak up about it.

6  　　　　THE COURT:  Well, but I just want to step back from

7  35,000 feet.  We have 80,000 people out there, and they aren't

8  all experienced lawyers like Ms. Winthrop, and they have been

9  waiting months to get this document called a disclosure

10 statement.  And they've been told, over and over again, that

11 there's thirteen-and-a-half billion dollars.  And everybody

12 who's written to me has said, don't give it to the federal

13 government, don't make us take stock, and when am I going to

14 get, what am I going to get.  Now you're telling me that this

15 seventy-page document isn't even going to tell them anything

16 that gives them hope that --

17 　　　　MR. KAROTKIN:  Your Honor --

18 　　　　THE COURT:  -- they might get thirty cents or fifty

19 cents or ninety cents?

20 　　　　MR. KAROTKIN:  The tort claimants' committee has

21 prepared the claims-resolution procedures and the trust

22 documents.  That has been within their purview since we

23 commenced the negotiations.  They have the best information on

24 this.  We have asked them to give us a range --

25 　　　　THE COURT:  Well --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. KAROTKIN:  -- of what they think it is.

2          THE COURT:  But the --

3          MR. KAROTKIN:  And they have a lot of the data.  I

4    think they are best situated, under the circumstances, to give

5    that range than the debtor is.

6          THE COURT:  Ms. Green, what can you do?  This is --

7    the debtor is the proponent along with the shareholder.  The

8    TCC is not, but that's --

9          MS. GREEN:  Correct.

10         THE COURT:  -- formality.

11         MS. GREEN:  Yes.

12         THE COURT:  What can you do --

13         MS. GREEN:  Your Honor, there are --

14         THE COURT:  -- what can you do to --

15         MS. GREEN:  -- 77,626 claims filed as unknown in this

16   case.

17         THE COURT:  All right.

18         MS. GREEN:  There's only 4.3 percent of the claims

19   have a number on them, and of the ones that have a number on

20   them, one individual in Paradise has filed an individual ten-

21   billion-dollar claim.

22         THE COURT:  No, I understand.  I think -- we'd have to

23   deal with that --

24         MS. GREEN:  Right.

25         THE COURT:  -- and nobody knows, but nobody believes

                    PG&E Corp. and Pacific Gas and Electric Co.

1   that's true.

2           MS. GREEN:  But the point being that there's 77,000 --

3   in excess of 77,000 unknown claims, so it's impossible for us

4   to really know what that particular victim is going to get.

5           THE COURT:  But the experts -- don't the experts

6   who've been studying the fire casualty data for the last year

7   and a half get an estimate of what is the reasonable range or

8   values to attribute to the loss of a car, the loss of property,

9   the loss of a loved one, the loss of a pet, the loss of a tree?

10  Somebody's --

11          MS. GREEN:  It's --

12          THE COURT:  Somebody has quantified --

13          MS. GREEN:  Depends on where that house is.

14          THE COURT:  Okay.  Then I'll add the --

15          MS. GREEN:  Where that individual lives.

16          THE COURT:  Then I'll add that --

17          MS. GREEN:  What their job was.

18          THE COURT:  I'll add that to the hypothetical too.

19  Somebody ought to be able to make a judgment on it.  Why -- why

20  is it -- why is this a hang-up?  Why is there not, from your

21  side, a willingness to try to tell the voters out there why

22  they might vote for this plan?

23          MS. GREEN:  I think there is a willingness to do that.

24          THE COURT:  Well, then ability.

25          MS. GREEN:  The question is is how do we do it?

PG&E Corp. and Pacific Gas and Electric Co.

1    Because given the various types of damages that we have in this

2    case, and the different -- it's not like one individual --

3              THE COURT:  You ever bought a car?  Mileage may vary.

4              MS. GREEN:  Right.

5              THE COURT:  Objects in the mirror seem larger than --

6              MS. GREEN:  But a house could be a million dollars --

7              THE COURT:  -- they appear.

8              MS. GREEN:  -- or 50,000 dollars.

9              THE COURT:  Ms. Green, this is a voters' pamphlet.

10   The voters' pamphlet that you are supporting here, I think, is

11   going to tell the voters why they should vote.

12             Now, I realize the committee, maybe, has not yet

13   signed off on that, but the debtors' lawyers just said look to

14   the TCC to get consistency.

15             Look, let me put it this way; I believe there has to

16   be a better effort to put some sort of fact in a summary, in

17   the disclosure statement that gives not just Ms. Winthrop but

18   those other 77,000 people that are being asked to vote some

19   reason to believe some range, even if it's like a drug

20   commercial; it may vary -- it's got to be something, because,

21   look, there's thirteen-and-a-half-billion dollars minus

22   whatever has been negotiated as part of the compromise with the

23   governmental agencies.  It's there, and some portion of that

24   money is going to go for administrative expenses, and the rest

25   is going to go to these victims.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MS. GREEN:  Correct.

2        THE COURT:  So let's tell them that.

3        MS. GREEN:  And as much money as possible is going to

4  go to victims.

5        THE COURT:  Then let's tell them that.

6        All right.  Well, look, I'll tell you what, for now I

7  will put this on a -- we don't have an answer today.  I need to

8  see something, if not to Ms. Winthrop's satisfaction, to my

9  satisfaction, and when Mr. Karotkin says the disclosure

10  statement doesn't say it and the TCC's got the data, then my

11  answer is somebody's got to put the information in the docket

12  and then I'll leave it as an open item today.

13        MS. GREEN:  And I'll talk with our experts and see if

14  we can come up with something.

15        THE COURT:  It's your homework assignment.

16        MS. GREEN:  Thank you.

17        THE COURT:  Okay.

18        MS. WINTHROP:  Thank you, Your Honor.

19        THE COURT:  Now, Ms. Winthrop, what else?

20        MS. WINTHROP:  Okay.  Same issue with respect to

21  timing of distributions.  This has become even more problematic

22  in light of the new -- the debtors' new language regarding the

23  promise that the recovery will be longer, and victims will get

24  less if this plan does not go forward.

25        Just, again, ballpark; are we talking years?  Are we

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1    talking months?  What are we talking about?

2            THE COURT:  Um --

3            MS. WINTHROP:  Pretty basic stuff again.  U.S. Trustee

4    guidelines.

5            THE COURT:  I'm looking at your objections and that

6    was the -- the first one is the lack of information on expected

7    recoveries.  I don't know that I -- yeah, a number of them --

8    well, I'm looking at them and I don't see -- I don't see that

9    specifically.

10           MS. WINTHROP:  Your Honor, page 2 of 10 --

11           THE COURT:  Um-hum.

12           MS. WINTHROP:  -- under the first bullet point.  This

13   is document number 6164.  "No information is provided regarding

14   the expected percentage return on account of fire claims, the

15   span of time over which fire victim claims can expect to

16   receive payment, or an estimated aggregated dollar amount of

17   claims in the class."

18           THE COURT:  Okay.  Let me ask Ms. Green a question.

19           And, Ms. Green, you don't have to jump up.  Just stay

20   there near the microphone.

21           MS. GREEN:  Okay.

22           THE COURT:  Help me understand the following.  Again,

23   let's assume that there's a resolution that the Court approves,

24   the settlement with the governmental agencies, and I tend to

25   say I don't need to know today what there is to know, but we

PG&E Corp. and Pacific Gas and Electric Co.

1    know that there is a finite amount of money that is no greater

2    than thirteen and a half billion to go to the fire victims, and

3    if we have a claim -- let's take one extreme is the guy that's

4    filed a claim for a hundred billion dollars, and the person who

5    has a stipulated judgment in hand from one of the Butte fire,

6    2015 fires.  How and when do they get any money under the

7    proposal?  Is it all or nothing, or is there a trickle out of

8    portion?

9        Again, I don't want you to answer based upon the tax

10   refunds and so on, but rather the timing when some money starts

11   to flow out to the victims.

12       MS. GREEN:  So one of the reasons we asked the Court

13   to approve the proposed trustee, Justice Trotter, and the

14   claims' administrator, Cathy Yanni --

15       THE COURT:  Right.

16       MS. GREEN:  -- was so that they could start this

17   process now.

18       THE COURT:  Right.

19       MS. GREEN:  And so as soon as the trust is up and

20   running, there will be a questionnaire that goes out to each of

21   these claimants.  And as I said there is 77,000 of them who

22   have unknown claims.  So the questionnaire would back that up.

23       THE COURT:  Yeah, but some of aren't unknown.  Some of

24   them are stipulated judgments, right?

25       MS. GREEN:  Right.

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  A small number, but nevertheless

2  stipulated judgment, right?

3    MS. GREEN:  Right.  So the trust provides that they

4  will review the information that they have on hand.  So if

5  there's a stipulated judgment attached to the proof of claim

6  form, assuming that it is --

7    THE COURT:  Right.

8    MS. GREEN:  -- then that would be reviewed by the

9  trustee who would then make a proposal to the claimants, and

10  yes, it will be paid out.  It provides for payments -- more

11  than one payment by the trust.

12    THE COURT:  So stop there.  So if I'm a holder of a

13  stipulated judgment that was signed and sealed two days before

14  bankruptcy and I'm sitting here waiting, and there shouldn't be

15  any discussion, I have a stipulated judgment, right?

16    MS. GREEN:  Provided you attached that stipulated

17  judgment to your claim form, yes.

18    THE COURT:  Fine, let's get to the point.  The point

19  is if I have a stipulated judgment for 50,000 dollars, there's

20  no telling how much I'll get or when I'll get it, even a pro

21  rata at the outset.  We won't --

22    MS. GREEN:  At the discretion of the trustee.

23    THE COURT:  Well, does the procedure indicate anything

24  more specifically when and how people that are not

25  unliquidated?  Those small number of people are liquidated

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  claims.  They're -- they wait in the cue; is that what you're

2  telling me?

3          MS. GREEN:  The trustee reviews them, and as she

4  reviews them, then they would be paid out.

5          THE COURT:  Ms. Green, there's nothing to review about

6  a stipulated judgment --

7          MS. GREEN:  Yes.

8          THE COURT:  -- that I can think of, unless there's

9  a -- unless it's been paid.

10          MS. GREEN:  It's the pay --

11          MR. KELLY:  Your Honor, may I be heard?

12          THE COURT:  Well, I don't know who you are but --

13          MR. KELLY:  Well, Your Honor, I'm --

14          THE COURT:  Just state your name.

15          MR. KELLY:  You know who I am.

16          THE COURT:  Yes, but you may be heard.  Just state

17  your --

18          MR. KELLY:  I'm Michael Kelly.  I'm a lawyer for more

19  than a thousand of the victims.

20          THE COURT:  Well, I do know.  Mr. Kelly, I -- Mr.

21  Kelly slow down.  I just can't recognize everybody.

22          MR. KELLY:  No, that's all right.

23          THE COURT:  So you may -- I know who you are.

24          MR. KELLY:  I'm unrecognizable.

25          Can I just slow down for one second and ask the Court,

escribers
(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   you'll appreciate this, that this process necessarily

2   contemplates budgets, that it is true that there are some

3   people who we know what the value of a house is in Paradise or

4   a house in Sonoma or Napa --

5           THE COURT:  Right.

6           MR. KELLY:  -- but what is not known is how many of

7   the 50,000 claims have claims for noneconomic losses.

8           THE COURT:  Right.

9           MR. KELLY:  For nuisance, for emotional distress.  How

10  many have claims for uninsurance (sic) or underinsurance?  How

11  many are claims for rebuilding rather than fair market value?

12  It is absolutely correct that if we had the data, one could

13  budget and give the Court some idea, and give the victims some

14  idea of what the range would be.  And in fact, that is why for

15  the last six to ten weeks we have been trying to get the claims

16  processes approved, and Judge Trotter and Ms. Yanni in place.

17          While it is correct from the Court's example that if

18  one had a stipulated judgment, the face amount of that judgment

19  is known, but I believe, and I don't know because I'm not the

20  claims processor, but the plan was to get these people in place

21  so that they could work with the experts, get an understanding

22  of what were the global amount of the claims, create budgets

23  for each of the -- and there at least seventeen categories of

24  damages.

25          THE COURT:  Right.  Understood.

(971) 224-9881 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. KELLY:  And then make guesstimates, or hopefully

2  reasonable estimates based upon percentages.

3    The Court's questions are fair questions, but these

4  questions, they must know something, clearly some people know

5  some things, Your Honor, but we're not in charge of putting

6  forth the procedures.  The professionals are going to do that.

7    My understanding of their approach is to gather data

8  to create a claims processing procedure to establish timing for

9  payments, to be able to make some estimates based upon both the

10  amount of the claims and the timing at which money is going to

11  be received and what stock can be monetized and other things.

12    So in fairness, I agree; my clients would like me to

13  be able to tell them are you going to get ninety-two percent,

14  are you going to be able to get four percent, are you going to

15  get a hundred percent, and much of that is dependent upon the

16  claims professionals getting the budget and the claims

17  processes together.

18    THE COURT:  Okay.  Mr. Kelly, all we have to do is

19  make an explanation of that --

20    MR. KELLY:  Correct.

21    THE COURT:  -- but that's the unknown.  That's the

22  process.

23    MR. KELLY:  And --

24    THE COURT:  But don't you see, the disclosure

25  statement has to -- in my mind -- has to make some piece of

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  information available even if the information is we don't know

2  enough yet.

3            MR. KELLY:  I agree a hundred percent --

4            THE COURT:  So let's --

5            MR. KELLY:  -- but can I just say that as of

6  yesterday, and as the Court has pointed out, until yesterday

7  there were six-plus-billion dollars of claims from government

8  entities that would necessarily impact any budget.

9            THE COURT:  I'm well aware of that.

10            MR. KELLY:  Okay.  And so, I mean, we're happy to get

11  all the information.  We actually want our clients to have as

12  much information as possible, but at this point with the

13  claims' professionals hadn't been appointed for all of forty-

14  eight hours, may I suggest to the Court that they haven't

15  completed their work.

16            THE COURT:  Mr. Kelly, look, I didn't make this time

17  schedule either.  I have to deal with the disclosure statement.

18  Disclosure statements are voters' pamphlets.

19            MR. KELLY:  Agreed.

20            THE COURT:  You don't know who you're going to vote

21  for if you don't know something about him, and if the only

22  thing is you don't much about him, then you've told you don't

23  know much about him.

24            MR. KELLY:  Agreed.

25            THE COURT:  So I fully appreciate what you and

PG&E Corp. and Pacific Gas and Electric Co.

1    countless other people are working on.  But what Ms. Winthrop

2    happens to have made the objection, but it's a fair criticism

3    in my opinion or objection, and all I want is a good-faith

4    effort to put a little more information in this disclosure

5    statement to say how it might happen and what is the best

6    judgment -- and this is for you and Ms. Green and Ms. Yanni and

7    Judge Trotter -- to come up with some language that doesn't

8    sound like a drug company's disclaimer of a drug in your

9    medicine cabinet, a little explanation to the unsophisticated

10   people that have to read this seventy-page document and make

11   sure it tells them something.

12           So I'm going to defer this --

13           MR. KELLY:  I could not agree more.

14           THE COURT:  I'm going to defer it and ask that there

15   be further attempt to try to come to some resolution of it.

16   And if Ms. Winthrop wants everything perfect, I will probably

17   tell her that's not going to happen.  But we're going to make

18   some effort.

19           MR. KELLY:  Thank you.

20           THE COURT:  Okay.

21           MS. GREEN:  Your Honor, we'll draft some language --

22           THE COURT:  Okay.

23           MS. GREEN:  -- to include.

24           THE COURT:  Okay.  And then as I said to Mr. Karotkin

25   earlier, we're going to talk either this afternoon or sometime

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    about what's the next time we're going to look -- see this all

2    together.  And everybody, including all of you, are working

3    under a very difficult time frame, and we're all together on

4    that problem.

5              Ms. Winthrop let's go down your list.

6              MS. WINTHROP:  Okay, Your Honor.

7              Secondly, we had asked for the same type of percentage

8    return to be provided for the other parties, so that we could

9    get some assurance that we're getting treated similarly.

10             THE COURT:  Well, I'm looking at your objection --

11             MS. WINTHROP:  I was told that information was not

12   available.

13             THE COURT:  Which -- are you talking about --

14             MS. WINTHROP:  Subros and public entities.

15             THE COURT:  And why is that relevant to the votes?

16             MS. WINTHROP:  They are the fire victims and if --

17             THE COURT:  Well, I know, but they're -- you're in --

18   you're not in that group.

19             MS. WINTHROP:  Yes, but, Your Honor, we believe that

20   the treatment of our claim within the fire victim trust,

21   particularly with respect to insurance is inequitable and

22   disparate treatment from other fire victims, so we're just

23   trying to get some information to evaluate it.

24             THE COURT:  Mr. Karotkin, you want to weigh in on

25   that?  And by the way, you don't have to keep jumping up

PG&E Corp. and Pacific Gas and Electric Co.

1    either.

2         MR. KAROTKIN:  I --

3         THE COURT:  You can just stand near the microphone, if

4    you'd like.

5         MR. KAROTKIN:  That's okay.  I, frankly, don't

6    understand that objection.  I don't even know what they -- why

7    it's relevant to their vote on the plan.

8         The funny thing in here, Judge, these are not

9    unsophisticated parties coming up here to object -- to object

10   to the solicitation procedures.  These are sophisticated

11   parties.  And it's pretty clear to me why they're objecting.

12   They're not really objecting because of inadequate disclosure.

13   They're objecting because they want to leverage their position

14   for different treatment.

15        They don't need to know this other information to make

16   an informed decision as to vote on the plan.  The subrogation

17   settlement, Your Honor, was approved by Your Honor based on

18   evidence in the record that it was a forty-percent discount.  I

19   don't think they need to know anything more than that.

20        THE COURT:  Okay.  You know what, Ms. Winthrop, I'm

21   going to agree with Mr. Karotkin on that.  So I will overrule

22   your objection as far as making disclosures that are necessary.

23        I realize in a grand -- in a perfect world, everybody

24   ought to know what everybody else is getting, but we can't

25   solve that problem.  So that aspect of your objection's

PG&E Corp. and Pacific Gas and Electric Co.

1    overruled.

2          MS. WINTHROP:  I appreciate, Your Honor.  We are not

3    here to leverage; we're just here trying to understand.

4          THE COURT:  You don't have to respond.

5          MS. WINTHROP:  Thank you, Your Honor.

6          THE COURT:  You're here to get the disclosure

7    statement approved --

8          MS. WINTHROP:  Right.

9          THE COURT:  -- or disapproved.

10          MS. WINTHROP:  And I'm sorry, Your Honor; I'm not

11    going to give up on the idea of having a liquidation analysis

12    for this reason.  This is not your typical Chapter 11 case

13    where every creditor is getting cents on the dollar.  This is a

14    case where you've got two important issues:  one is should

15    shareholders retain their interest; and two, is AB 1054

16    satisfied.  And if a sharehold -- a case word -- the

17    shareholders are retaining their interest, but you don't at

18    least provide a liquidation analysis, which again is just your

19    basics as part of the U.S. Trustee guidelines, I don't know how

20    anyone could evaluate this plan.

21          THE COURT:  Well, I'm going to overrule your objection

22    on that also.  I must say, I like to think that some kind of

23    liquidation analysis is normally correct, but I think what

24    persuaded me was what Mr. Karotkin and the debtors' side said

25    and how they responded to that question, I think, in response

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    to the U.S. Trustee objection, and I think that for about the

2    one hundredth time I'll make the statement as many lawyers have

3    said in this case, this case is different and it is different.

4    And I think when you have a full-pay case -- and I understand

5    there's some people that are skeptical about whether it really

6    is full pay -- but at least in terms of Chapter 11 terminology,

7    and it's a full pay.  And I think further that, as I said to

8    you earlier, there's no realistic view in my mind that this

9    company should be liquidated.  And if this plan that's on the

10   table is not confirmed, my guess is something else has to

11   happen other than liquidation.

12           So I'm going to overrule your objection and say that I

13   think the debtors' explanation the way it's set up in the

14   response here is adequate.  Okay.

15           MS. WINTHROP:  All right.  Let's move on to the

16   disclosure over the trust agreement and the proceedings.

17           I must tell Your Honor it was not until we got the

18   trust agreement on the 3rd that we actually had any clue how

19   our claims were going to be treated.  And even now, I am still

20   unclear because the debtor has now filed a document that says

21   what was filed on the 3rd was just a draft, and the claims'

22   resolution procedures is blank.  So I'm not quite sure what

23   that is.

24           THE COURT:  Yeah, I'm not sure either, but I think we

25   just can't -- I'm not going to hold up the disclosure

PG&E Corp. and Pacific Gas and Electric Co.

1    statement, because again we're back to the question you got a

2    ballot, who you going to vote for.

3            MS. WINTHROP:  Well, there's --

4            THE COURT:  And then you know what --

5            MS. WINTHROP:  -- four --

6            THE COURT:  -- you might choose not to vote for

7    anybody in the national election or in this election, but the

8    point is, I don't think we can -- I can impose upon the debtor

9    and the lawyers representing the trustee and -- I mean, TCC to

10   have every T crossed --

11           MS. WINTHROP:  Totally understand that.

12           THE COURT:  -- and every I dotted at this point.

13           MS. WINTHROP:  Totally understand.  What we're

14   focusing is on four key things.

15           One, claim victims should understand that there is no

16   disputed claims reserve, or if there is going to be one, they

17   should disclose that so that they --

18           THE COURT:  I mean, don't -- but isn't it, in fact,

19   that they're getting a half million dollars?  In other words,

20   we're -- we --

21           MS. WINTHROP:  No, Your Honor, because the TCC is the

22   one who says there isn't going to be enough money for everyone.

23           THE COURT:  Well -- and if that's what the TCC says,

24   so be it, but -- and they can say that, and if they say it,

25   then maybe they will persuade people not to vote for this plan.

PG&E Corp. and Pacific Gas and Electric Co.

1    I don't know that.  But for disclosure purposes, I don't think

2    you have to have a claims reserve when this system doesn't have

3    to have a claims reserve.

4          In other words, a claim reserve is to set aside money

5    for people to get paid while their claims are resolved, right.

6    And we have two experienced professional people with terrific

7    credentials running this trust under the plan, and their job is

8    to do the right thing.  And that -- the system has built in how

9    the creditor who isn't -- to use my hypothetical -- the

10   creditor who filed an unliquidated claim in seven figures

11   compared to the creditor who has a stipulated judgment; they

12   have to be treated equally and fairly, and that's what the

13   trustee and the claims administrator under the trust are

14   supposed to be doing.

15         MS. WINTHROP:  Yes, Your Honor, except the basic

16   parameters that you normally see in every other trust agreement

17   aren't here.

18         So for example, the pro rata treatment that they say

19   will be -- now, maybe this is going to change, and it sounds

20   like it is -- but it's up to the discretion of the trustee.

21   And so that is what I'm struggling with, Your Honor.

22         THE COURT:  Well, again, we're back to the difference

23   between disclosure and the ultimate decision.

24         MS. WINTHROP:  Absolutely, Your Honor.

25         THE COURT:  And you -- again, I -- Mr. Karotkin says

PG&E Corp. and Pacific Gas and Electric Co.

1    you -- you're experienced, I said you're experienced, and you

2    know you're experienced, and the victims out there who are

3    personal and not lawyers are not experienced.

4          And so to get into a fine discussion of what (sic) a

5    claims reserve works is one thing that's not going to be

6    constructive.

7          And secondly, I have to have enough confidence that

8    the combined talent that put together this trust agreement and

9    staffed it with experienced people are going to -- there's

10   going to be an explanation to the voters; do you want your fate

11   in the hands of these people, yes or no.  And it's like do you

12   like this presidential candidate even though he or she has

13   tended on certain things you don't like versus the other

14   candidate or not voting at all.  It's a bad example, but it's

15   the decision they have to make.

16         So again, I'm going to go without any change and

17   overrule any of your objections on that regard.

18         MS. WINTHROP:  Okay.  If I could just get a

19   clarification as this jury trial versus court -- versus

20   nothing?

21         So the current procedures set up this whole system,

22   our tiered system of neutrals that are really not neutral, but

23   we appreciate that's a confirmation issue.  However --

24         THE COURT:  Well, why do you say they're not neutral?

25         MS. WINTHROP:  Because they're all working together

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    with the claims' administrator.  Under the terms of the trust,

2    they're all working together to develop supposedly.  They're

3    going to be regularly meeting, and all that kind of stuff.  And

4    there's no ability to go outside that group to get an

5    independent hearing either versus jury trial or court trial.

6              THE COURT:  Well, you heard Ms. Green's answer.

7              MS. WINTHROP:  Jury trial.

8              THE COURT:  Ms. Green, did Ms. Winthrop say it

9    correctly?  Has she got it right again?  It's what we just

10   talked about.

11             MS. GREEN:  Correct.  That's what the claims

12   procedures provide, and the reason for it is, again, that we

13   have a limited fund.  It's now going to be fire victim versus

14   fire victim as opposed to fire victim versus PG&E.  And so the

15   whole goal is to make sure that there's enough money so that

16   the trustee is not off defending jury trials and spending --

17             THE COURT:  Well, I know, but --

18             MS. GREEN:  -- a gazillion dollars.

19             THE COURT:  -- when the debtors' principal lawyer says

20   we think everybody's going to be paid in full, I hate to even

21   hear the term "victim versus victim", you know.

22             MS. GREEN:  Yeah.  But --

23             THE COURT:  Those are terms that don't sound like they

24   belong in this conversation.

25             So my point is that the 70,000 victims out there who

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   might believe they always have a right to go to a jury are

2   going to be told, under these documents, there's no more right

3   to a jury if this is the plan.

4           MS. GREEN:  And it's going to be discussed.

5           THE COURT:  So if you want to preserve your right to a

6   jury, vote against the plan.

7           MS. GREEN:  Correct.

8           THE COURT:  That's what it comes down to, right?

9           MS. GREEN:  Correct.  And when I said, "victim versus

10  victim", what I meant was normal --

11          THE COURT:  I know.

12          MS. GREEN: -- the jury trial was going to be against

13  PG&E.

14          THE COURT:  No, I know.  I know.

15          MS. GREEN:  It's not going to be that way anymore.

16          THE COURT:  Okay.  Well, Ms. Winthrop, that's the

17  answer.  Again, I didn't --

18          MS. WINTHROP:  You answered today, Your Honor.

19          THE COURT:  Well, but I think -- again, it's like

20  everything else, it's moving very quickly, and I don't make

21  final decisions today any more than I expect you to.  But Ms.

22  Green has explained the way it works, and if you believe that

23  she's got it wrong, then that's one thing.  But if you disagree

24  with what she's got -- what she said, but she said it right,

25  then that's different.  And again, the people that don't like

PG&E Corp. and Pacific Gas and Electric Co.

1   the outcome will vote, and if the plan is voted down by the

2   fire victims, we can discuss later -- not today -- what does

3   that mean.

4           MS. WINTHROP:  I appreciate that new language will be

5   added to address these concerns, Your Honor.  Thank you.

6           So we'll now turn to three specific provisions

7   regarding Adventist Health that are just inaccurate and

8   misleading.

9           One, we do not have a two-billion-dollar claim.  We

10  have one claim for 1 billion dollars, 506,000 in actual damages

11  plus punitive damages, just like all the other members of the

12  TCC.

13          THE COURT:  And what are you referring to that's

14  incorrect?  Again, tell me what you want me to order them to

15  change.

16          MS. WINTHROP:  It was in the redlines, and there were

17  so many redlines.

18          THE COURT:  I'm looking at the document that was filed

19  at 5:29 yesterday.  It's the actual disclosure statement.

20          MS. WINTHROP:  Okay.

21          THE COURT:  So tell me where you think there should be

22  a change.

23          MS. WINTHROP:  Okay.  Your Honor, if I may have a

24  moment?

25          THE COURT:  Sure.

PG&E Corp. and Pacific Gas and Electric Co.

1     (Pause.)

2         MS. WINTHROP:  I've seen it twice, Your Honor, but

3 we'll use this one as an example.  This is docket number 6220-

4 1, page 37 of 79.

5         THE COURT:  Well, I'm sorry.  I'm looking at the clean

6 version 6219, so can you do it on the blackline?

7         MS. WINTHROP:  Yes, Your Honor.  I apologize.

8         THE COURT:  Well, then just give me a textual page,

9 and I'll see if I can find it.  I mean, I --

10        MS. WINTHROP:  How about "Significant Claims Asserted

11 Against Fire Victim Trust", which sits under --

12        THE COURT:  Just tell me what your page number is.

13        MS. WINTHROP:  Page 37 of 79.

14        THE COURT:  Okay.  So --

15        MS. WINTHROP:  Of the blackline.

16        THE COURT:  Now it makes sense.

17        Mr. Karotkin, do you know where she's looking?

18        MR. KAROTKIN:  Yes.  I have the blackline.  It's in

19 the --

20        THE COURT:  Oh, okay.  I see it.

21        MR. KAROTKIN:  In the Risk Factors.

22        THE COURT:  It looks like it's on page 33 of 71 on the

23 clean copy.  That's the first paragraph.  It talks about FEMA

24 and Cal OES, right?

25        MR. KAROTKIN:  No.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MS. WINTHROP:  Go down to the subheading that -- it's

2  not numbered, but "Significant Claims Asserted Against Fire

3  Victim Trust".

4    THE COURT:  Yes.

5    MS. WINTHROP:  And, "A number of governmental agencies

6  (sic)", that one, and at the very end it says, "For example,

7  Adventist Health System/West and Feather River Hospital have

8  filed claims seeking over 2 billion."

9    THE COURT:  Okay.  Okay.  And what -- and he --

10    MS. WINTHROP:  It should simply reflect, and I'd be

11  more than happy to work with counsel --

12    THE COURT:  But why is this important?  Does it matter

13  to --

14    MS. WINTHROP:  Because it misleads people as to how.

15    THE COURT:  But does it mislead if it's 1.5 billion?

16  I mean, does it really?

17    MS. WINTHROP:  Yes, Your Honor.

18    THE COURT:  Now, why does it?  Come on.  Why does it

19  really make a difference?

20    MR. KAROTKIN:  Your Honor, may I make a suggestion?

21  Why don't we just change the two to one, okay?

22    MS. WINTHROP:  And there's no -- that's fine.  I'll

23  take it, Your Honor.

24    THE COURT:  Okay.  Solved.  Again, Ms. Winthrop, I'm

25  trying to be responsive --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MS. WINTHROP:  I appreciate it, Your Honor.

2        THE COURT:  Wait.  I'm trying to be responsive to your

3   objections, but I don't want to turn this into anything more

4   than adequate disclosure.

5        MS. WINTHROP:  Yes.

6        THE COURT:  And I don't know how your client's going

7   to vote, and maybe you don't know, but that's what we're trying

8   to do.

9        MS. WINTHROP:  Right.

10       THE COURT:  And I, in fairness, come on.  I'm not

11  minimizing the importance.  Your client, I believe, is the

12  largest non-governmental creditor, right?

13       MS. WINTHROP:  That's right, Your Honor.

14       THE COURT:  And so that's important.  And it's also --

15  it's a victim that's very much a fixture in the Paradise

16  community, and it affects a lot of people.

17       MR. KAROTKIN:  Yes, Your Honor.  That's not quite

18  accurate, based on the filed claims.

19       THE COURT:  Okay.

20       UNIDENTIFIED SPEAKER:  There are filed claims much,

21  much greater than that.

22       THE COURT:  Okay.

23       MS. WINTHROP:  Property damage claims.

24       THE COURT:  Okay.  Let's go to your next point.  You

25  said there were three.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      MS. WINTHROP:  Okay.

2      THE COURT:  And I know you have an issue on the one-

3  dollar one, and that you --

4      MS. WINTHROP:  Yes, that's --

5      THE COURT:  You don't have to revisit that.

6      MS. WINTHROP:  Yes, we're not going to -- I'll leave

7  that up to my colleague, but there is -- and I apologize, Your

8  Honor.  It was done so late last night.

9      THE COURT:  That's all right.

10      MS. WINTHROP:  I don't have every reference to --

11  anytime they say there's a pending objection that needs to be

12  updated, that's an easy fix.

13      And then they've added, and I apologize.  This is on a

14  blackline again.

15      THE COURT:  Well, let me just beg a pause there.  I

16  heard for the first time this morning, what I was happy to hear

17  about, that there's been a tentative resolution of some major

18  claims.  So that obviously needs to be reflected in the final

19  disclosure that goes out also.  So this is a moving target.

20      MS. WINTHROP:  Yes, Your Honor.

21      THE COURT:  Okay.

22      MS. WINTHROP:  So I just want to add that to the list.

23  And then finally, language was added to the description of the

24  make-whole releases on page 47 of 79 of docket number 6220-1,

25  which is the blackline of the disclosure statement.

PG&E Corp. and Pacific Gas and Electric Co.

1    We spent an entire day negotiating this, Your Honor.

2   What the debtor put in the plan is fine.  The disclosure

3   statement just should be consistent with the plan, and the

4   language should stay as is.

5    THE COURT:  I have now located my blackline, so now I

6   have it.

7    MS. WINTHROP:  I don't understand --

8    THE COURT:  Now I have it.

9    MS. WINTHROP:  -- why they want to mess with this.

10    THE COURT:  I'm sorry, Ms. Winthrop.  I've got to

11   catch up with you.  I can't keep track of these documents.

12    What page and number?  Can you give me the --

13    MS. WINTHROP:  Yes.

14    THE COURT:  Can you give me the non-blackline?  I

15   thought I had the blacklined disclosure statement, and I don't.

16    MS. WINTHROP:  I did not bring that, Your Honor.

17    UNIDENTIFIED SPEAKER:  It's 831, Your Honor.

18    MS. WINTHROP:  It is the description of the make-whole

19   release.  It's Section G, "Releases and Exculpation",

20   subsection (c).

21    THE COURT:  Okay.  G.  Subsection what?

22    MS. WINTHROP:  (c).  It's under the "Made-Whole

23   Releases."

24    THE COURT:  You mean 1(c)?  "Made-Whole Releases."

25   Okay.

PG&E Corp. and Pacific Gas and Electric Co.

1        MS. WINTHROP:  Yes.

2        THE COURT:  All right.  Tell me again what --

3        MS. WINTHROP:  The language, the old language, was

4   exactly tracking the plan.  And that's all we asked for, and

5   for some reason the debtor changed this, and arguably raised a

6   question about its meaning.  All I ask is that it be -- it just

7   track the plan.

8        THE COURT:  Mr. Karotkin, can you solve the problem

9   here?

10       MS. WINTHROP:  I can't keep up with the changes, but I

11  understand what her concern is.  I mean, I hear what she's

12  saying.

13       MR. KAROTKIN:  I think this was a request of the TCC.

14  Just to make it clear, I don't think there's a substantive

15  difference, but if she does, fine.

16       THE COURT:  But what -- you just want it to be

17  consistent with the plan?

18       MS. WINTHROP:  Yes.

19       THE COURT:  Ms. Green, any problem with that?

20       MS. GREEN:  No.

21       THE COURT:  All right.

22       MS. WINTHROP:  There we go.

23       THE COURT:  He'll take care of it.

24       MS. WINTHROP:  Thank you, Your Honor, for your time.

25       THE COURT:  Okay.  All right.  Mr. Karotkin, in your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   calculation, does that -- at least have we resolved, for

2   today's purposes, everything that can be resolved from

3   Adventist?

4          MR. KAROTKIN:  Other than the solicitation issues,

5   which we can address later.

6          THE COURT:  Right.  So by my calculation, next is

7   AT&T.

8          MR. KAROTKIN:  Which I think is the solicitation

9   issue.

10         THE COURT:  Yes.  I mean, it's the one-dollar voting

11  issue.

12         MR. KAROTKIN:  Right.

13         THE COURT:  That's the principal thing, yes.  Do you

14  want to take it up now or not?

15         MR. KAROTKIN:  I don't think there's a disclosure

16  statement objection.

17         THE COURT:  Well, but since you're --

18         MR. MINTZ:  It's within the scope of that order.

19         THE COURT:  You know, I found --

20         What?  I didn't hear what you said, and you need to

21  come and say who you are, but I just didn't hear what you said.

22         MR. MINTZ:  Benjamin Mintz from Arnold & Porter, Your

23  Honor, for AT&T.  It is not a disclosure statement issue per

24  se, but it's within the scope of the order that the debtor is

25  seeking to have entered in connection with the disclosure

(973) 406-2250   operations@escribers.net | www.escribers.net

                PG&E Corp. and Pacific Gas and Electric Co.

1    statement.

2              THE COURT:  No, I understand.  But I mean, what is the

3    issue?

4              MR. MINTZ:  It's the one dollar per --

5              THE COURT:  The one dollar.

6              MR. MINTZ:  Yes.

7              THE COURT:  Yes.  Yes.  Now, look.  I complimented Mr.

8    Karotkin and his staff for putting this all in one

9    comprehensive document to work with today, but the notion --

10   the differences of the solicitation procedures and the

11   disclosure, there's now a lot of overlap, and it gets even more

12   complicated with an order, a proposed order, which I can't even

13   work through.

14             But to me the one-dollar vote issue is a big ticket

15   item that I'm not going to decide today.  I'm going to give you

16   some of my thoughts about the subject, either now or before we

17   end, and we'll come back to it.

18             But that's, Mr. Mintz, that's the only issue on their

19   list that you're concerned about, right?

20             MR. MINTZ:  That's correct.

21             THE COURT:  Yes.  Which is --

22             MR. MINTZ:  Our only objection was the one dollar.

23             THE COURT:  Yes.  Which is what I think -- Mr. Koegel

24   signed the papers, and his objection made it pretty clear.  I

25   understood it too.

(970) 798-3101   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    Okay.  So that's we're on -- we're going to come back

2  to that later.

3    MR. MINTZ:  Oh.  Thank you.

4    THE COURT:  I mean, look.  So there's no mistaking.

5  I'm not going to agree to the debtors' point of view on this

6  one today.  I don't necessary agree.  But I'm not going to make

7  a ruling.  I'm going to talk about whether it should be briefed

8  or argued a little bit further later on.  That's all.

9    MR. MINTZ:  I understand.  Thank you, Your Honor.

10    THE COURT:  Okay.

11    MR. KAROTKIN:  We're going to change your mind on

12  that, Your Honor.

13    THE COURT:  Okay.  Don't mention Takata.  Won't get

14  you anywhere.

15    MR. KAROTKIN:  Okay.  We'll call it by another name.

16    THE COURT:  Yes.  Right.  Well, you can name anybody

17  that made defective airbags that also had some billion dollar

18  claims of other kind of liability in the same class.  You got a

19  hypothetical like that, it might work.

20    But anyway, let's go to BOKF.

21    MR. KAROTKIN:  I believe that the disclosure statement

22  has been revised to adequately disclose how the trustee's fees

23  and expenses are treated.

24    THE COURT:  Well, let's ask counsel for BOKF.  Who's

25  here for BOKF?  Are you satisfied with what's been said?  And

PG&E Corp. and Pacific Gas and Electric Co.

1    name, please?

2            MR. SILFEN:  Good morning, Your Honor.  Andrew Silfen

3    with Arent Fox, counsel for BOKF, the indenture trustee for the

4    senior notes under three indentures.  I think we're sixty

5    percent of the way there, and I think just everybody is busy

6    and trying to resolve many disputes.

7            THE COURT:  Right.

8            MR. SILFEN:  We had suggested two more sentences to be

9    included last night that addresses our issues.  If those two

10   additional sentences are included, we're satisfied as to the

11   disclosure.

12           Obviously we have a confirmation issue, which is not

13   today.

14           THE COURT:  Right.

15           MR. SILFEN:  But the disclosure issue definitely goes

16   to how much the holders are receiving, at least with respect to

17   the impaired holders and their treatment, and they should be

18   aware that if the debtor does not pay the fees and expenses of

19   the indenture trustee, it comes out of the distributions of the

20   indenture.

21           THE COURT:  Right.

22           MR. SILFEN:  That does dilute and reduce what the

23   holders will receive.  That is particularly important for the

24   holders as they exercise the decision to vote.

25           THE COURT:  Well, I know it is.  I know it is.

PG&E Corp. and Pacific Gas and Electric Co.

1          Well, Mr. Silfen and Mr. Karotkin, it seems like he's

2     in an agreeable mood, so, Mr. Karotkin, he wants two sentences.

3          MR. SILFEN:  Usually when he sees me, yes.

4          THE COURT:  Yes.  Two sentences?  You okay with the

5     two sentences?

6          MR. KAROTKIN:  I think during the recess we can

7     resolve his language.

8          THE COURT:  Good enough for me.  Well, on the subject

9     of recess, I promised everyone we'd take a short convenience

10    break, so I'm going to do that now for ten minutes, and then

11    we'll have another hour, and then we'll take our lunch break.

12          UNIDENTIFIED SPEAKER:  Thank you.

13          THE COURT:  So everyone enjoy.  Take a break.

14          Do you want to be heard?

15          MR. GOODMAN:  On one thing only, so --

16          THE COURT:  Before the break?

17          MR. GOODMAN:  Before the break, yes.

18          THE COURT:  Okay.

19          MR. GOODMAN:  Good morning.  Good afternoon.  I have

20    discussed this.

21          THE COURT:  I need a name for the record.

22          MR. GOODMAN:  Oh.

23          THE COURT:  I know your name but --

24          MR. GOODMAN:  Eric Goodman, Baker & Hostetler.

25          THE COURT:  Yes.  That's a good one.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. GOODMAN:  -- for the official committee of tort

2    claimants.  I discussed this with FEMA, and I have permission

3    to let the Court know that under the agreement that is being

4    documented the FEMA claims will be fully subordinated to the

5    fire victims.  In addition, the Cal OES claims are being

6    withdrawn.  So all prior statements made by me about FEMA

7    taking money from the victims, withdrawn.

8    THE COURT:  So they're being subordinated, and Cal OES

9    is withdrawing all their claims?

10   MR. GOODMAN:  Correct.

11   THE COURT:  Not just the FEMA passu but all their

12   claims?

13   MR. GOODMAN:  Correct.

14   THE COURT:  Okay.  Well --

15   MR. GOODMAN:  Thank you.

16   THE COURT:  That's good news.  Okay.

17   MR. PASCUZZI:  Your Honor?

18   THE COURT:  Mr. Pascuzzi.

19   MR. PASCUZZI:  Since they're coming up, I'll be quick,

20   Your Honor.  We did resolve the California State Agency fire

21   related claims in a term sheet yesterday.  It is contingent on

22   the federal agency claims, including FEMA, also being resolved,

23   subject to a 9019 motion, subject to plan confirmation in the

24   substantially same structure, final documents, internal

25   approvals.  So our disclosure-statement issues are resolved.

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Right.

2    MR. PASCUZZI:  So I just wanted to let you know that.

3 We have non-fire claim issues that still need to be addressed,

4 recall.

5    THE COURT:  Well, they weren't on the subject.

6    MR. PASCUZZI:  Right.  Right.  But we'll still work on

7 those.

8    THE COURT:  And they weren't part of the claim

9 objection that I heard, right?

10    MR. PASCUZZI:  Correct.  Correct.

11    THE COURT:  So again, as long as you're here, the

12 matters that were argued and submitted for decision are now all

13 resolved.  So there's nothing for me to decide that's submitted

14 under that argument of two weeks ago.

15    MR. PASCUZZI:  Correct.  That's the Cal OES claim and

16 the FEMA claims --

17    THE COURT:  Yes.

18    MR. PASCUZZI:  -- and subject, obviously, everything I

19 just said.

20    THE COURT:  Of course.

21    MR. PASCUZZI:  So thank you.

22    THE COURT:  Okay.  We're going to take a ten-minute

23 break.

24    MR. KAROTKIN:  Before -- I'm sorry.

25    THE COURT:  No one will let me take my ten-minute

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   break.

2       MR. KAROTKIN:  No, no.  I think I need it more than

3   you, by the way.

4       With respect to the briefing schedule, can we just

5   suspend that?

6       UNIDENTIFIED SPEAKER:  Yeah.  We had the briefing

7   schedule on the classification, and we also had a deadline for

8   our 3018 temporary allowance motions.

9       THE COURT:  All gone.

10      UNIDENTIFIED SPEAKER:  We'll enter stipulations to --

11      UNIDENTIFIED SPEAKER:  Thank you.

12      UNIDENTIFIED SPEAKER:  -- suspend those pending

13  approval of the settlement.  Thank you.

14      THE COURT:  Ten-minute break.  Thank you.

15      (Recess from 11:26 a.m., until 11:38 a.m.)

16      THE COURT:  By my calculation, we're up to CPUC,

17  aren't we?

18      MR. KAROTKIN:  Yes, sir.  I believe as to 6 and 7,

19  they've been withdrawn.  Effectively withdrawn.

20      THE COURT:  Oh, CPUC withdrew?

21      MR. KAROTKIN:  Oh, no.  Oh, I'm sorry.  Sorry, sorry.

22  Not the CPUC.

23      Mr. Kornberg's here.  I don't believe that they have

24  an objection to the approval of the disclosure statement, but

25  Mr. Kornberg can address that.

(970) 393-0303 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Well, Mr. Kornberg, is --

2          MR. KORNBERG:  Good morning, Your Honor.  Alan

3   Kornberg of Paul, Weiss, Rifkind, Wharton & Garrison for the

4   California Public Utilities Commission.

5          Mr. Karotkin is right.  We had a meet and confer.  The

6   debtor included language in the disclosure statement that

7   resolved our disclosure issues.  We may or may not have

8   classification and treatment issues, which we can talk about

9   later, depending on where the debtor comes out on the proposed

10  decision approving a settlement of the wild fire proceeding.

11         THE COURT:  And that's going to happen in the next few

12  days.  They accept it or they challenge it, right?

13         MR. KORNBERG:  They have until March 18 --

14         THE COURT:  Right.

15         MR. KORNBERG:  -- to --

16         THE COURT:  Next Wednesday.

17         MR. KORNBERG:  -- accept, appeal proposed

18  modifications.  That's correct, Your Honor.

19         THE COURT:  Right.  So I would assume that -- well,

20  never mind.  I don't assume anything.  Do you want to --

21         So you're satisfied with the disclosure statement at

22  the moment.

23         MR. KORNBERG:  Yes, Your Honor.

24         THE COURT:  But do you still reserve something on the

25  solicitation-procedures motion?

PG&E Corp. and Pacific Gas and Electric Co.

1       MR. KORNBERG:  Yes, we do, Your Honor.  And the

2  debtors -- Your Honor signed an order approving a stipulation

3  between the PUC and the debtors extending until March 20, our

4  time, to file a motion to estimate our claims for voting

5  purposes.  And again, we may or may not have a classification

6  issue, depending on whether they accept the presiding officer's

7  decision.

8       THE COURT:  Okay.  Then we'll just defer that for now.

9       MR. KORNBERG:  Okay.  Thank you, Your Honor.

10      THE COURT:  And go down the list.  Thank you, Mr.

11  Kornberg.

12      And number 7 is gone, and number 7, which you put two

13  different claimants in one box, number 7, but that's Cal State

14  and FEMA, but there's -- I think, you said everything is

15  gone --

16      UNIDENTIFIED SPEAKER:  Yes.

17      THE COURT:  -- with FEMA, right?  I mean, Mr. Pascuzzi

18  confirmed it.  Did anybody want to be heard on FEMA on the

19  phone or in court?

20      MR. TROY:  Yes, Your Honor.  Matthew Troy, Department

21  of Justice, Civil Division, on behalf of FEMA.  Yes, Your

22  Honor.  Disclosure-statement objections are resolved, obviously

23  subject to having an opportunity to review and record any

24  revisions that are made as a result of today's hearing.

25      With respect to the settlement that Mr. Goodman

PG&E Corp. and Pacific Gas and Electric Co.

1  announced just before the break, I would simply also clarify,

2  as Mr. Pascuzzi did on behalf of the State, that the settlement

3  remains subject not only to documentation but obtaining

4  necessary approvals from the involved agency and DOJ.

5          THE COURT:  Just for my purposes, if you're at liberty

6  to tell me, will the FEMA claim --

7          Or maybe, Mr. Karotkin, if you --

8          Is FEMA claim going to be an allowed subordinated

9  claim as filed or something else?

10          MR. KAROTKIN:  It's my understanding that it'll be an

11  allowed subordinated claim.

12          THE COURT:  In the amount filed?

13          MR. KAROTKIN:  In the amount of a billion dollars.

14          THE COURT:  One billion?

15          MR. KAROTKIN:  One billion.

16          THE COURT:  Oh.  So it's a reduction and a

17  subordinated.

18          MR. KAROTKIN:  Yes.  And, Mr. Troy, please correct me

19  if I'm wrong, and that claim will be channeled to the trust and

20  will be subordinated to the fire victim claims.

21          THE COURT:  Is that correct, Mr. -- oh, well, wait.

22          MR. TROY:  Mr. Troy, Your Honor.

23          THE COURT:  Well, just tell me.

24          MR. TROY:  Mr. Troy.  Your Honor, that's correct.

25          THE COURT:  So it's your claim in round numbers was

PG&E Corp. and Pacific Gas and Electric Co.

1    four billion, and it's being reduced to one?  And then what?

2    It channeled --

3              MR. TROY:  Correct.

4              THE COURT:  It channeled to the trust or subordinated?

5              MR. KAROTKIN:  It channeled to the trust and

6    subordinated to the payment from the trust of all fire victim

7    claims.

8              THE COURT:  So it might end up worth nothing.

9              MR. KAROTKIN:  Correct.

10             THE COURT:  But it could end up worth a billion, but

11   not --

12             MR. KAROTKIN:  But the -- but --

13             THE COURT:  Okay.

14             MR. KAROTKIN:  There is no claim against the debtor.

15   There's no remaining claim to be satisfied against the debtors,

16   the reorganized debtors.

17             THE COURT:  Okay.

18             MR. KAROTKIN:  The claim is entirely satisfied from

19   the trust assets and to the extent there are assets available

20   after all fire victim claims have been paid.

21             THE COURT:  And, Mr. Troy, I'm not trying to pin you

22   down on something that's so fresh.  I just simply wanted to

23   make sure that there wasn't a misunderstanding.  And Mr.

24   Goodman didn't say anything wrong.  It's just that what I heard

25   him saying was that the FEMA claim was being subordinated

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    period, and I thought well, okay.  That means a four billion

2    dollar claim against the reorganized company, which is much

3    different from what everyone said.

4           So I'll assume that Mr. Karotkin summarized it, and

5    you, Mr. Troy, summarized it accurately, and we don't need to

6    dwell on it.  It's not a disclosure-statement item, as much as

7    just public interest, and I'm sure it will be all over the news

8    this afternoon, and I'm sure the fire victims will be happy to

9    see the outcome here, and so am I.  Congratulations.

10          All right, so let's go to number 8.

11          MR. KAROTKIN:  This is the Eric and Julie Carlson

12   objection.

13          THE COURT:  Are Mr. and Mrs. Carlson -- Mr. or Mrs.

14   Carlson, either of them here in court or on the phone?

15          MR. CARLSON:  Eric Carlson is here, Your Honor.

16          THE COURT:  Okay.  Good morning, or -- yes, good

17   morning, Mr. Carlson.

18          Mr. Karotkin, it looked to me like you were willing to

19   go with their objections; is that correct?

20          MR. KAROTKIN:  Yes, sir.  We have no objection to

21   including what they've requested in the trust agreement.

22          THE COURT:  And, Ms. Green, are you -- TCC okay with

23   that?

24          Mr. Carlson, while Ms. Green is thinking about that --

25          MS. GREEN:  I'm sorry, Your Honor.

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Well, wait.  Well, wait.

2          MS. GREEN:  Actually --

3          THE COURT:  I want to ask Mr. Carlson a question.  Mr.

4     Carlson, did you see the summary that debtors' counsel, Mr.

5     Karotkin filed last evening that restates your objection and

6     the debtors' response?  That's document number 6221.

7          MR. CARLSON:  I did, Your Honor.

8          THE COURT:  Okay.  All right.

9          MR. CARLSON:  Yes.

10          THE COURT:  So, Ms. Green, now you --

11          MS. GREEN:  Your Honor, we think those are

12     confirmation objections.  The trust provides that the TOC has

13     to consult with the trustee and have a majority in order to

14     change the procedures, and the procedures also provide that

15     ultimately, the trustee has veto power over the final

16     determination.

17          The reason for that is that these panels really are

18     going to be panels in neutrals, and if one panel awards a

19     claimant with similar claims and amounts significantly more

20     than the other, there has to be the ability to adjust that.

21     And so we think they're confirmation issues, and we don't agree

22     to those changes.

23          THE COURT:  Well, but what a panel does is different

24     from whether the procedures themselves can be amended, and

25     that's what, at least looking at Mr. Karotkin's summary of Mr.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    Carlson's objection, and now --

2         MS. GREEN:  It's a twofold objection.  The one is to

3    whether the procedures can be changed with a majority of the

4    trust oversight committee --

5         THE COURT:  Right.

6         MS. GREEN:  -- agreeing, and the second issue is

7    related to the three-step panel process.

8         THE COURT:  And why do you think that's a confirmation

9    issue?

10        MS. GREEN:  Because we've disclosed adequately the way

11   that it works and that the TOC oversight committee must consult

12   with the trustee and have a majority.  So it's not a disclosure

13   issue.

14        THE COURT:  Mr. Carlson, do you understand the

15   difference between a disclosure issue and a confirmation issue

16   here?

17        MR. CARLSON:  Your Honor, I do, and I am going to --

18   and if I could characterize my view a little differently, I

19   would like the opportunity to do that.

20        THE COURT:  All right.  Yes, please.

21        MR. CARLSON:  Now, the way that I read the trust

22   agreement is basically they see the machinations of setting up

23   the claims-resolution procedures, and so forth.  Then

24   (indiscernible) after confirmation, that the trustee, in

25   conjunction with members of the trust oversight committee, have

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    the ability to change it later with no notice to me, and no

2    hearing, and no recourse.

3             THE COURT:  Okay.  That --

4             MR. CARLSON:  And then the claims-resolution

5    procedures --

6             THE COURT:  Yeah, go ahead.

7             MR. CARLSON:  I'm sorry.

8             THE COURT:  No, go ahead.

9             MR. CARLSON:  Then the claims-resolution procedures

10   in -- at the end of it basically says that after I go through

11   the process of trying to resolve our claims, that the trustee

12   can disregard that and do whatever he wants.

13             And so all I'm asking for today, and I appreciate the

14   differences between confirmation, okay, and disclosure, is I

15   just would like it be super clear to fire claimants that the

16   trust and the resolution procedures can be changed after

17   confirmation with no notice, hearing, or recourse to any fire

18   claimant.

19             THE COURT:  But isn't that what you just complained

20   about?  I mean, in other words, you determined that because it

21   is disclosed, right?  You don't like the outcome, and you think

22   that maybe there should be something more, but the point is you

23   perceive that as a problem, which means you were disclosed it,

24   right?

25             MR. CARLSON:  Your Honor, I agree.  I would suggest to

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  you that I might be a more observant and knowledgeable reader

2  of these documents than everyone else --

3          THE COURT:  No, I don't --

4          MR. CARLSON:  -- from the 7,000.

5          THE COURT:  Mr. Carlson, I suspect that that may be

6  true because you saw fit to lay out a very thoughtful

7  objection.  My point is I don't know that it's productive to

8  get bogged down on it.  As you may have heard, if you've been

9  following the hearing earlier today, some of these things get

10  worked out just because they're easy to solve, and it's not

11  something that I decree.  But the reason why I am not inclined

12  not to take your suggestion here is because for exactly that

13  reason:  the trust and its professionals have put together what

14  they think is doable, if they have -- if they're wrong, and you

15  persuade others that this is unfair and should be voted down,

16  then you should do that.  I am not suggesting that -- I don't

17  know what you'll do; that's your choice, and it's not my

18  decision to interfere with that.

19          To state it differently, maybe you could've made, or

20  maybe I could have said to Ms. Green, come on, put a little

21  more in there.  But I think given what we're dealing with, I'm

22  going to overrule your objection, and allow that -- the way the

23  trust has been prepared and has been teed up in this way is not

24  to revisit it further.  So I appreciate your comment, but I'm

25  not going to order a change at this point.  Okay?

(970) 239-0391  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          Are you there?

2          MR. CARLSON:  Thank you, Your Honor.

3          THE COURT:  Okay.  Thank you for your time, and --

4          MR. CARLSON:  Thank you.

5          THE COURT:  -- your participation, Mr. Carlson.

6          All right.  Mr. Karotkin, we're down to CN Utility.

7          MR. KAROTKIN:  Yes.  With respect to the value of the

8    assigned rights and causes of action, I believe that the

9    disclosure statement says that we do not know the value of

10   them.  So I think they're --

11         THE COURT:  I think so, too.  Yeah.

12         MR. KAROTKIN:  And I think, Your Honor, in the context

13   of thirteen and a half billion dollars going to the trust, we

14   think that there's more than sufficient disclosure as to the

15   assets going to the trust and that assigning the rights --

16         THE COURT:  Well, two hours ago, you had somebody

17   sharing in that thirteen and a half billion.  Now you've gotten

18   rid of some of them.  You're on a roll.

19         MR. KAROTKIN:  We are.  It was a good solution.

20         THE COURT:  Is Mr. Lubic here in court or on the

21   phone, or anyone for --

22         MR. LUBIC:  Yes, Your Honor, I am on the phone.

23         THE COURT:  All right.

24         MR. LUBIC:  Michael Lubic of K&L Gates for CN Utility

25   Consulting --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Yeah, so again, what do you --

2    MR. LUBIC:  -- Cupertino Electric --

3    THE COURT:  -- what do you think would be the need and

4 the utility of trying to quantify something that is so

5 uncertain here?

6    MR. LUBIC:  Let me just have a minute to give you some

7 context, (indiscernible) the grand (indiscernible) out here.

8 As of last time (indiscernible), the respondents of the

9 (indiscernible) and the issue of the 107 subpoenas to the

10 contractors which resulted in a large number of claims made to

11 insurers, and --

12    THE COURT:  Are you on a -- hold on.  Mr. Lubic, are

13 you on a cell phone?

14    MR. LUBIC:  I am not.

15    THE COURT:  Oh, we're having a little trouble hearing

16 you, or I am anyway.  Try again.  You're --

17    MR. LUBIC:  I am sorry, Your Honor.  I will try to

18 project.

19    THE COURT:  Okay.  All right.

20    MR. LUBIC:  I am having a little dental problem which

21 may affect my speech.

22    THE COURT:  Thanks for not -- thank you for not

23 coming.

24    MR. LUBIC:  Yes, yes, I -- the filing of the plan and

25 the issuance of the subpoenas have had some unintended

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   consequences.  The 107 subpoenas caused a large number of

2   claims to be made with insurers which have exacerbated in our

3   revenue stream and insurance marker, and the safety and

4   reliability service providers are having significant changes

5   through adequate insurance which will adversely impact their

6   ability to continue to provide services.

7          With respect to our first objection, I think what

8   would -- the problem is resolved if the debtors state that the

9   value of the (indiscernible) is not material.  I don't think it

10  needs to be quantified if they say it's not material; that

11  gives people adequate information.

12         However, with respect to the second objection, we

13  believe that there's still a disclosure issue and that at a

14  minimum, the debtor needs to disclose that we have been

15  informed by many of its safety and reliability service

16  providers that they're having significant challenges obtaining

17  adequate insurance coverage and that this may adversely impact

18  the ability of the safety and reliability service providers to

19  continue to perform necessary services.

20         THE COURT:  Well, that's kind of a -- that's just

21  beauty in the eye of the beholder, right?  In other words,

22  leaving aside what was discussed earlier today about whether

23  the TCC could've proceeded under Rule 2004, instead they

24  proceeded under a motion they chose, and the effect was to

25  cause a bunch of subpoenas to be issued, maybe incorrectly.

(971) 388-0989  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   But so I mean it seems like it's no harm, no foul.  You're

2   really complaining that by the TCC asserting the right to

3   prosecute these claims might jeopardize the ability of the

4   respondents and that have a rebound effect and affect the

5   utility's ability to perform its service going forward.  Did I

6   summarize it accurately?

7           MR. LUBIC:  Yes, Your Honor, that's correct.

8           THE COURT:  So but what do we put in the disclosure

9   statement?  That the TCC may have taken a position that

10  jeopardizes the company's ability to perform its duties under

11  the applicable PUC laws?  I mean, I don't think that's --

12  that's kind of a huge statement.

13          MR. LUBIC:  No, I think what you can put in the

14  disclosure statement is that the debtor had been informed by

15  many of its safety and reliability service providers that they

16  are having significant challenges to adequate insurance

17  coverage and that this may adversely impact the ability of the

18  service providers to continue to perform necessary services.

19          THE COURT:  Well, I mean look, let's use -- I mean

20  some of -- I don't know some of your clients.  I see Cupertino

21  Electric is one of them, and certainly there are some other

22  well known, substantial contractors who do business with PG&E,

23  and what you're saying is well, if we're going to get sued by

24  PG&E, maybe that's going to cause us some problems.  Well,

25  that's called life in the big city.  That's just what happens.

PG&E Corp. and Pacific Gas and Electric Co.

1    But -- what's that?  A phone?

2        (Background music)

3            UNIDENTIFIED SPEAKER:  Not anymore.

4            THE COURT:  Where are we getting the music?

5            UNIDENTIFIED SPEAKER:  It was a phone.

6            UNIDENTIFIED SPEAKER:  That was from my phone, Your

7    Honor.

8            THE COURT:  We have a bucket of water.  We put cell

9    phones in the bucket of water, but we're not -- we've suspended

10   the bucket of water during the coronavirus problem.  So turn

11   off your cell phone.

12           Ms. Green or Mr. Goodman, what do you want to say

13   about this?  They're blaming you for doing this thing, and

14   you're causing all these problems to the debtors' ability to

15   perform in the future.  Is this a disclosure item?

16           MS. GREEN:  No, Your Honor, it's not a disclosure

17   item, and we're not comfortable also saying that the claims are

18   not material because we don't know at this point.  So I think

19   we've disclosed that those claims are being assigned to the

20   trust.

21           THE COURT:  Mr. Karotkin, can you tell me where to go

22   in your latest disclosure statement to look at this language

23   because I just haven't memorized it.  What page?

24           I guess you haven't memorized it.

25           MR. KAROTKIN:  I'm not up to that page yet.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Ms. Green, do you know where that is?

2    MS. GREEN:  I don't know in the new one.

3    THE COURT:  Mr. Lubic, do you know where you would

4  want a change to the disclosure statement?

5    MR. LUBIC:  I didn't have a proposed --

6    MR. KAROTKIN:  Oh, it's on page -- hold on.

7    THE COURT:  I have to --

8    MR. KAROTKIN:  It's right after -- if you look after

9  the chart, Your Honor --

10    THE COURT:  Oh, oh, well, what page?

11    MR. LUBIC:  It's on page -- I'm looking at the

12  redline -- 36 of 79.  Do you have the redline?

13    THE COURT:  Yeah, I didn't have it before, but I do

14  have it now.  Wait one second.  What -- well, I am not -- oh,

15  you mean the assignment of the debtors, certain rights?  No,

16  no, I am sorry.

17    MR. KAROTKIN:  No, if you look below, there's

18  romanettes i, ii, and iii.

19    THE COURT:  Yeah.

20    MR. KAROTKIN:  And then you say -- the next paragraph

21  says, "While the cash in stock".

22    THE COURT:  Okay.

23    MR. KAROTKIN:  And then if you look at the last

24  sentence.

25    THE COURT:  "In addition, the value of the assigned

PG&E Corp. and Pacific Gas and Electric Co.

1  rights and causes of action will be contributed to the" --

2       MR. KAROTKIN:  "That will be contributed to the" --

3       THE COURT:  Is currently unknown.

4       MR. KAROTKIN:  Is currently unknown.

5       THE COURT:  Mr. Lubic, the debtor is telling me it's

6  currently unknown, and counsel for the TCC said the same thing.

7  So what would --

8       MR. LUBIC:  The debtor, in their response, and

9  included (indiscernible) in response to their discovery

10  procedures motion, said that they determined that the value of

11  the assigned rights is not material, and I think that that

12  doesn't mean the value is not material, but the debtors

13  determined that they don't think it's material, and I think

14  that's an important disclosure.

15       MR. KAROTKIN:  Your Honor, perhaps we could say, if

16  the TCC doesn't object, what we actually did say here which

17  says not material in the context of the aggregate consideration

18  to be transferred to the fire victim trust.

19       MS. GREEN:  That's fine.

20       THE COURT:  Okay.  Ms. Green said that's fine.

21       Mr. Lubic, TCC said fine, so Mr. Karotkin has proposed

22  a slight edit, and that satisfies me.  Hopefully it satisfies

23  you, but it satisfies me.

24       MR. LUBIC:  That's fine with me.

25       THE COURT:  Okay.  And so we're not getting into the

PG&E Corp. and Pacific Gas and Electric Co.

1  discussion about the subpoenas.  That statement's been made.

2         MR. LUBIC:  We don't need to talk about the subpoenas.

3         THE COURT:  Right.

4         MR. LUBIC:  But it is relevant in evaluating the value

5  of the stock to know that there is a problem in the insurance

6  market that the safety and reliability service providers have

7  raised the issue that they're having challenges getting

8  significant changes for adequate insurance.

9         THE COURT:  No, I understand.

10         MR. LUBIC:  And --

11         THE COURT:  I guess all I am saying --

12         MR. LUBIC:  That's what --

13         THE COURT:  Go ahead.  I'm sorry.

14         MR. LUBIC:  That seems to me to be a disclosure issue,

15  that there is a risk in the market that affects the going-

16  forward operation of the debtor.

17         THE COURT:  To me, that's -- I don't think that's

18  relevant to the decision that the victims make when they make a

19  vote for or against this plan.

20         They are going to see that there's thirteen and a half

21  billion dollars that is -- there's major governmental claimants

22  that are now backing off of that, and the fact that there is

23  this other claim, maybe it's valuable, maybe it's not, and I

24  don't think it's material, and I'm going to stick with the

25  debtors' language on that and not insist on any change, other

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  than what Mr. Karotkin agreed to.

2          Okay.  Let's go to the next one, which I believe is

3  the post-petition claimants, the --

4          MR. KAROTKIN:  Yes.

5          THE COURT:  -- Kincade Fire issue.

6          MR. KAROTKIN:  Yes.  We believe we've addressed this

7  in the -- both with the amendment to the plan and disclosure

8  statement.

9          THE COURT:  Okay.  Point me to the disclosure

10 statement, and then I'll see who -- counsel for this group,

11 but -- you can have your colleagues come up and answer these

12 questions for you.  I don't mind.

13         MR. KAROTKIN:  She gave me the page before, and then I

14 lost it.

15         THE COURT:  Well, I mean, I've got a blackline and a

16 clean line, and I'm juggling these things, and I'm just trying

17 to find where it is.  And then you're going to do another one

18 on me in a few days.  So --

19         MR. KAROTKIN:  Okay.  On page 46.

20         THE COURT:  Blackline?

21         MR. KAROTKIN:  The actual page 46 of the blackline.

22         THE COURT:  Actual page 46.

23         MR. KAROTKIN:  Yes.

24         THE COURT:  You mean up in the upper right-hand

25 corner?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. KAROTKIN:  Yes, sir.

2        THE COURT:  Okay.

3        MR. KAROTKIN:  It's on paragraph 3.  If you go --

4        THE COURT:  I'm sorry, I'm not --

5        MR. KAROTKIN:  You're looking at the blackline, sir?

6        THE COURT:  Yeah, but you said actual page 46.  You

7   mean on the footer, page 50 of 79?

8        MR. KAROTKIN:  Yes.

9        THE COURT:  Okay.  Well, then, I'm sorry.  What am I -

10  - I'm not seeing it there.  Maybe we're just miscommunicating.

11       MR. KAROTKIN:  May I approach?

12       THE COURT:  Yeah, sure.  Give him some hand discharge

13  cleaner.

14       Okay.  No here, give this back to him.  I see it.  I

15  didn't -- all right.  Here, let me just take a second to read

16  it.

17       MR. KAROTKIN:  I think it starts around six lines

18  down.

19       THE COURT:  Well, do we have counsel for this group?

20  Who is appearing on this, please?

21       MR. GRIMSHAW:  Matt Grimshaw, Your Honor.

22       THE COURT:  Mr. Grimshaw.

23       MR. GRIMSHAW:  Appearing for a slew of post-petition

24  claimants that I am going to name on the record.

25       THE COURT:  You don't need to.  They're in the paper.

PG&E Corp. and Pacific Gas and Electric Co.

1  Do you have a comment on this language that Mr. Karotkin showed

2  us?

3          MR. GRIMSHAW:  Your Honor, we have reviewed it.  For

4  today's purposes, we're satisfied.

5          THE COURT:  Okay.

6          MR. GRIMSHAW:  For today's purposes, we're satisfied.

7          THE COURT:  Well, but I mean, today is for disclosure

8  purposes.

9          MR. GRIMSHAW:  No, I get it.  Yes.  Yes.

10          THE COURT:  Well, Mr. -- I will say, Mr. Marshack, do

11  you want to be heard?

12          MR. MARSHACK:  Yes, Your Honor.  We spearheaded --

13          THE COURT:  I thought you were on board with

14  everything.

15          MR. MARSHACK:  I was.  SLF, Singleton Law Firm,

16  spearheaded this.  We worked with Mr. Bennett and Mr. Meister

17  (phonetic); they're terrific.  We got what we needed.  So the

18  debtors' integrated all of our language into the plan.  So

19  anything related to the post-petition fires has been resolved.

20          THE COURT:  Well, for my sake, Mr. Karotkin, where

21  does a member of the public -- whether it's a person who has a

22  vote or not isn't the point; where does somebody get at least a

23  snapshot as to what the company is doing about its potential

24  liability for Kincade?  It's not just this one sentence, is it?

25          MR. KAROTKIN:  Well, first of all, Your Honor, there's

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    been no determination of any responsibility or liability for

2    Kincade in any event.

3            THE COURT:  I agree.

4            MR. KAROTKIN:  So we've clarified to the extent there

5    are any valid claims with respect to Kincade against the

6    debtors, that those would be administrative expense claims

7    dealt with in the ordinary course.

8            THE COURT:  Well, you agree, then, don't you, if there

9    is some manifestation of it or some determination by CAL FIRE

10   or CPUC, or somebody before confirmation, and it's a

11   significant item, it might be a confirmation item.

12           MR. KAROTKIN:  It might be a feasibility issue.

13           THE COURT:  Right, right.

14           MR. KAROTKIN:  Yes.

15           THE COURT:  A feasibility issue.  I said a

16   confirmation item because that would be it.  I mean, the same

17   with the AP were hearing later today; if that survives --

18           MR. KAROTKIN:  The what?

19           THE COURT:  The adversary proceeding, the Gantner --

20           MR. KAROTKIN:  Yes.

21           THE COURT:  The blackout lawsuit.

22           MR. KAROTKIN:  I think the Gantner may be a little

23   different, but --

24           THE COURT:  No, but my point is that whether it's

25   Gantner or a Kincade fire victim or some other event that

PG&E Corp. and Pacific Gas and Electric Co.

1  happens today or tomorrow or yesterday, if it's material, that

2  impacts the company's ability to emerge and perform, and it's

3  relevant.  But it's not relevant for today because --

4          MR. KAROTKIN:  Right.

5          THE COURT:  -- of the discovery.

6          MR. KAROTKIN:  Yes, we think there's adequate

7  disclosure.

8          THE COURT:  Okay.

9          MR. KAROTKIN:  And to the extent that circumstances

10  might change, maybe it would be a feasibility issue.

11          THE COURT:  I am satisfied with counsel's being

12  satisfied.  So let's move on.

13          MR. MARSHACK:  Your Honor, one thing?

14          THE COURT:  Yes, Mr. Marshack.

15          MR. MARSHACK:  Just so it's really clear.

16          THE COURT:  Yes.

17          MR. MARSHACK:  The one thing that the fire victims did

18  not want to have to do is file hundreds of motions for

19  allowance of administrative claims.

20          THE COURT:  They don't have to.

21          MR. MARSHACK:  I know, as a result of -- if the Court

22  accepts our changes to the disclosure statement, then we can --

23          THE COURT:  But what makes you think you'd have to

24  anyway?  In other words --

25          MR. MARSHACK:  I think that --

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  -- if PG&E truck going down Golden Gate

2  Avenue, hits somebody at Golden Gate and Larkin, and the

3  plaintiff files suit in superior court, nobody has to file an

4  administrative claim.  They can file suit, right?

5    MR. KAROTKIN:  Your Honor, we agree with that, and we

6  really, frankly, didn't understand why Mr. Marshack wanted that

7  language.  But no harm, no foul.  If it makes him happy --

8    THE COURT:  Right.

9    MR. KAROTKIN:  -- that's apparently important to him.

10    THE COURT:  No, I agree.

11    But, Mr. Marshack, do you really think that somebody

12  would see a need to file multiple claims?

13    MR. MARSHACK:  I have been raised in a world that says

14  if you want an administrative claim, you do not file a proof of

15  claim; you file a motion for allowance of administrative claim.

16  And apparently at least one other person agrees with me because

17  there's a pending motion before this Court to have an allowance

18  for an administrative claim.

19    THE COURT:  Well, but I haven't ruled on it, have I?

20    MR. MARSHACK:  Right, you haven't, but there is -- I

21  think the Court would agree, there is some prevailing view that

22  if you want your post-petition claim to be paid in full, you

23  have to make a motion to the Court.  There is some view as to

24  that.  And we did not want to get post-confirmation, have the

25  debtor say sorry, you never filed a motion for allowance of

PG&E Corp. and Pacific Gas and Electric Co.

1   administrative claim, you don't get paid.

2           THE COURT:  But let's go back to my example; if

3   somebody got hit by a PG&E truck out in front of the building

4   today, they could file suit in superior court, couldn't they?

5           MR. MARSHACK:  I believe so, but I bet Mr. Karotkin

6   would say I'm violating the automatic stay --

7           THE COURT:  Yeah, but you and I are both California

8   bankruptcy lawyers.

9           MR. MARSHACK:  Right.

10          THE COURT:  Or used to be one.

11          MR. MARSHACK:  Yeah.

12          THE COURT:  I don't know about him.

13          MR. MARSHACK:  I'm sure he would say it also violated

14  the Barton doctrine by saying you can't sue.

15          MR. KAROTKIN:  No.

16          MR. MARSHACK:  So in any event, Your Honor, we've

17  solved the problem.

18          MR. KAROTKIN:  Yes.

19          THE COURT:  You've solved the problem.

20          MR. KAROTKIN:  I was going to say it violated the

21  Barton doctrine.

22          MR. MARSHACK:  And, Your Honor, we did have one other

23  objection we raised, and that was regard to preferences, if we

24  want to -- Mr. Bennett and Mr. Meister have resolved that issue

25  with me, so --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. KAROTKIN:  As have I, Mr. Marshack.

2        MR. MARSHACK:  And I'm sorry.

3        MR. KAROTKIN:  Okay?

4        MR. MARSHACK:  I'm sorry.  My conduit was Mr. Bennett.

5        THE COURT:  Are we having brownie points for getting

6   things resolved?

7        MR. MARSHACK:  Yes, Your Honor.  I want to thank Mr.

8   Karotkin from the bottom of my heart.

9        MR. KAROTKIN:  Yes.

10        THE COURT:  Just do an elbow bump with him.

11        So what's the resolution?  Is there a resolution?

12        MR. KAROTKIN:  The plan will say no claims shall be

13   brought under 11 USC Section 547 to recover payments to anyone

14   or any entity receiving payments as a result of damages caused

15   by wildfires.  And the disclosure statement will track the same

16   type of language.

17        THE COURT:  And do you want to tell him to cite Rule

18   11 in case he files a preference action on behalf of a solvent

19   debtor?

20        MR. MARSHACK:  Yes.

21        THE COURT:  Do you want to sanction him at the same

22   time?

23        MR. KAROTKIN:  No.

24        MR. MARSHACK:  Exactly.

25        THE COURT:  All right.  Let's move on.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1       MR. KAROTKIN:  Thank you, Your Honor.

2       MR. MARSHACK:  Thank you.

3       THE COURT:  Mr. Marshack.  Deutsche Bank, right?

4       MR. KAROTKIN:  I believe --

5       THE COURT:  Is it Deutsche Bank?

6       MR. KAROTKIN:  Yes, Deutsche Bank.  I believe that

7  this has been resolved, and I think Deutsche Bank's counsel is

8  here to confirm that.

9       THE COURT:  Okay.  Let's hear from Deutsche Bank's

10 counsel.

11      MR. LABATE:  Good afternoon, Your Honor.  Robert

12 Labate --

13      THE COURT:  Okay.

14      MR. LABATE:  -- Holland & Knight for Deutsche Bank

15 National Trust Company.

16      Yes, we've resolved our objections to the disclosure

17 statement.  We do have some issues with respect to confirmation

18 and reserving our rights with respect to that.

19      THE COURT:  Okay.  Fine, that's all I need to hear

20 today.

21      MR. LABATE:  Thanks.

22      THE COURT:  Good.  Thank you.

23      All right.  We're up to Mr. Gantner and his client,

24 but we're going to deal with on their motion, but -- well, Mr.

25 Karotkin, you still believe that there's nothing to be done --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. KAROTKIN:  Well --

2        THE COURT:  -- I think.

3        MR. KAROTKIN:  -- I think that we did revise the

4   disclosure statement to include some other additional

5   disclosure with respect to the action.  We think it's more than

6   adequate as written.

7        THE COURT:  Yeah, I looked at your -- when I looked at

8   your outline last night, I mean this chart, I didn't take time

9   to look at it, so let me look at Article 3(d)(3).  Do you know

10  what page that's on?  Oh, I think I've got it here.  Adversary

11  proceeding re: public safety.

12       Yeah, the only thing I would do is --

13       MR. KAROTKIN:  Do you want to tell me what page that's

14  on?

15       THE COURT:  Yeah, it's page 25 of 71.

16       MR. KAROTKIN:  Okay.

17       THE COURT:  Yeah, well, is Mr. Gantner's counsel here?

18  Mr. Carlin, are you here to --

19       MR. CARLIN:  Yes, I am, Your Honor.  Mr. Carlin for --

20       THE COURT:  Mr. Carlin --

21       MR. CARLIN:  -- Anthony -- for Mr. Gantner.

22       THE COURT:  -- again, I am sorry to have to throw you

23  a curve ball in terms of scheduling, but we had so many people

24  we're dealing with today; that's why I moved your motion to

25  this afternoon.  But for disclosure-statement purposes, are you

of 282
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    satisfied with what Mr. Karotkin has done?

2         MR. CARLIN:  Well, I -- yeah, I appreciate that you

3    inserted the -- acknowledged the claim in our first objection

4    in section 3(d)(2), I believe it is, of 2.5 billion.  They did

5    not respond to our other objections.

6         I guess I would say that the one that I would be more

7    concerned about is our third objection to have a

8    (indiscernible) indicating the administrative claim section

9    that this is the administrative claim.

10        THE COURT:  Well, you heard the discussion of the

11   prior counsel about the Kincade Fire, and why would your

12   situation be any different?

13        MR. CARLIN:  Well --

14        THE COURT:  In other words, if you get to a point

15   where you believe you have a claim that's -- I mean, I realize

16   you claim it's two and a half billion dollars, but whether it's

17   two and a half billion or twenty-five dollars or whatever it

18   is, if it's an allowed claim, it's an administrative expense,

19   and the debtor has to deal with it as an ordinary course of

20   liability, doesn't it?

21        MR. CARLIN:  Yeah.

22        MR. KAROTKIN:  Let me just address that, Your Honor.

23        MR. CARLIN:  Yeah.

24        THE COURT:  Yeah.

25        MR. KAROTKIN:  I think the better way to say it is if

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    they are successful in establishing claims and they are

2    administrative claims, they will be treated as administrative

3    claims.  Mr. Gantner has a lot of allegations in his complaint

4    as to pre-petition activities.

5             THE COURT:  Right.

6             MR. KAROTKIN:  So it is what it is.

7             THE COURT:  No, it is what it is.  I agree with you.

8    But what I am getting at is that the -- I mean, whether it's

9    this Court or some other court, if there is a determination

10   that the plaintiff, either individually or as a class

11   representative, has for damage claim, it has to be dealt with,

12   one way or the other.

13            MR. KAROTKIN:  Exactly.

14            THE COURT:  And so, Mr. Gantner -- I mean, sorry, Mr.

15   Carlin, I'm not sure what you would have me do to the

16   disclosure statement.  I understand your objection, but I'll

17   make the same observation.

18            If your motion -- I mean, if your claim survives, and

19   you have now filed a class claim also, right?

20            MR. CARLIN:  Correct.

21            THE COURT:  Yeah, so you're kind of going on two

22   different tracks, but it's the same operative facts, correct?

23            MR. CARLIN:  Yeah, I don't think two different tracks;

24   I mean, we filed a class action and we filed a class proof of

25   claim, so it's all the same thing.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Okay.  But what I am getting at is that

2  if, at the end of the day, you or your client, is successful,

3  whether it be through the class claim process, if that even is

4  an operative option for a post-petition claim, and/or an

5  adversary proceeding, either way, if at the end of the day that

6  plaintiff is entitled to some amount of money, amount to be

7  determined, it's got to be dealt with.  And if it's a

8  meaningful amount that impacts the company's ability to perform

9  under the Bankruptcy Code and the reorganization and the plan

10  and AB 1054, then they've got to deal with it.  And so I don't

11  know why --

12    MR. CARLIN:  I think --

13    THE COURT:  -- what there is to make by way of a

14  disclosure.

15    In other words, let's try a different way.

16    MR. CARLIN:  No, I think you're right, Your Honor.

17  The fact that they've now put in the amount of the claim, I

18  think that's a main factor that they would want to be able to

19  see and evaluate and make their decisions based on that.  So I

20  think we'll be satisfied with that.

21    THE COURT:  Well, I haven't made up my mind on today's

22  motion, and if the motion's denied, then maybe it comes up

23  somewhere down the road.  If the motion to strike and dismiss

24  is granted, then maybe the disclosure statement will be

25  abbreviated by a sentence or two.  But again, that's something

PG&E Corp. and Pacific Gas and Electric Co.

1    that we just have to deal with later, because even if I were to

2    reach that conclusion, the plaintiff would have a right to seek

3    a further review.  So I -- look, to me, not to beat this to

4    death, but the Gantner claim is much like the claim of the

5    Kincade Fire victims.  If there is recognition of the existence

6    or the assertion of a claim and, at confirmation, if those

7    claims are still viable in any way, then somebody is going to

8    have to say, well, what are we going to do about the claim, and

9    I'm satisfied with that.

10            So I'll sustain any objections beyond the change that

11   was made.  It sounds like Counsel, you've even been pretty --

12   Mr. Carlin, you've been somewhat agreeable to that anyway.  So

13   I am not going to worry about it.

14            MR. CARLIN:  Yeah, yeah, that's right.

15            THE COURT:  Okay.

16            MR. CARLIN:  Thank you, Your Honor.

17            THE COURT:  All right.  Thank you.

18            MR. CARLIN:  See you this afternoon.

19            THE COURT:  Okay.

20            MR. CARLIN:  Thank you.

21            THE COURT:  All right.  Mr. Karotkin?

22            MR. KAROTKIN:  Number 13?

23            THE COURT:  Interstate?

24            MR. KAROTKIN:  I'm not sure we actually understand

25   what this objection is.  We believe the proposed disclosure

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1    statement provides adequate information regarding the insurance

2    policies and does not need to be further amended.

3            THE COURT:  Do we have counsel for Interstate here?

4    Is that Mr. Olsen?

5            MS. LANDRY:  Yes, Your Honor.  Good afternoon.

6    Michelle Landry on behalf of Interstate Fire & Casualty

7    Company, and my co-counsel, Leonard Goldberger is also on the

8    line.

9            THE COURT:  Okay.  Good morning, or good afternoon.

10           MS. LANDRY:  All right.  Good afternoon.

11           We have two specific objections, and it's on page 32

12   of the amended disclosure statement, and it's page 36 of the

13   Court's copy.

14           THE COURT:  Okay.  Slow down.  On the one that was

15   filed yesterday?

16           MS. LANDRY:  Yes, the amended.

17           THE COURT:  Were you looking at the footer number or

18   the top page number?

19           MS. LANDRY:  On the footer number it's page 36.

20           THE COURT:  36 of 71.

21           MS. LANDRY:  36 of 79.

22           THE COURT:  Oh, then we're not looking at the same

23   document.

24           MR. LABATE:  Notice of filing of -- it's docket number

25   6220.

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  That's the redline.

2          MR. KAROTKIN:  So it is page 32 on the right-hand --

3     right-upper column of the redline?

4          UNIDENTIFIED SPEAKER:  It's the bottom, 36.

5          MS. LANDRY:  Yes.

6          THE COURT:  Okay.  Let me catch up with you.  Hold on.

7          All right.  I'm almost there.  I've got too many pages

8     to look at.  All right.

9          So what is the -- so tell me again what you're

10    concerned about?  Mr. Karotkin said he was a little unclear --

11         MS. LANDRY:  Sure.

12         THE COURT:  -- and he said something about the rights

13    that have been assigned.  What is your point that is being

14    made?  I mean, we've already talked about the --

15         MS. LANDRY:  Sure.  So we understand that the --

16         THE COURT:  Go ahead.  Ms. Landry, go ahead.

17         MS. LANDRY:  And we understand the Court -- part of

18    the plan funding is potentially -- it's not totally clear from

19    here, due assignment of "certain" rights under the 2015

20    insurance policy.  And we are concerned about the caveat, there

21    are certain rights without any specification of what is being

22    held back, which specific rights are being assigned and which

23    are not, and we think that voters should be able to understand

24    the implications of the plan funding.

25         The second concern we have is that Interstate sent a

(973) escribers operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    reservation of rights letter in October of 2019, and there was

2    discussion here of what impact the plan funding will have on

3    both our reservations of rights.

4           THE COURT:  Well, if we always -- if we had to

5    acknowledge every reservation of right under the disclosure

6    statements, they'd all be twenty pages longer.

7           But, Mr. Karotkin, do you understand what the concern

8    is, and what this issue relates to?

9           MR. KAROTKIN:  Well, I am not sure I understand the

10   concern of Interstate in any of this.  I mean, we already say

11   to the extent -- we already say we don't know the value.  To

12   the extent they've reserve rights, they've reserve rights.

13   They are what they are.

14          THE COURT:  Well, these are the same bundle of rights

15   that are being assigned --

16          MR. KAROTKIN:  That's part of it.

17          THE COURT:  -- to the TCC generally, right?

18          MR. KAROTKIN:  Yes.

19          THE COURT:  Same like the --

20          MR. KAROTKIN:  This is part --

21          THE COURT:  Right.

22          MR. KAROTKIN:  Yeah, this is --

23          THE COURT:  The subcontractors, the thing we just

24   talked about --

25          MR. KAROTKIN:  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      THE COURT:  -- for Cupertino Electric and so on.

2      MR. KAROTKIN:  If you look at little Roman iii above -

3  -

4      THE COURT:  Yeah, right.

5      MR. KAROTKIN:  -- that's the assignment by the debtors

6  of the assigned rights and causes of actions and certain rights

7  under the two -- yes, it's additional things being assigned to

8  the trust.

9      I don't understand -- first of all, I don't even think

10 Interstate votes on the plan.  Secondly, I don't understand the

11 concern at all.

12     THE COURT:  Well, but I -- in fairness to counsel,

13 she -- and your language is -- there's something in addition to

14 this package called assigned rights and causes of action

15 because that's the claims against the subcontractors.  This is

16 something different.

17     MR. KAROTKIN:  Your Honor, if it makes counsel feel

18 better, we could put back in Roman (sic) numeral v --

19     THE COURT:  Which would say what?  Oh.

20     MR. KAROTKIN:  That's stricken.

21     THE COURT:  All right.

22     Ms. Landry, do you see the language that used to be

23 there under romanette v?  Do you have that markup?

24     MS. LANDRY:  Yes.

25     THE COURT:  If he puts that back in with --

(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      MS. LANDRY:  Yes.

2      THE COURT:  -- the correct romanette -- I guess it

3  would be romanette iv, but that's what would survive.  Does

4  that --

5      MS. LANDRY:  I think that we would still like the

6  additional language that if it's the intent, that they are

7  going to be assigning all rights under the 2015 insurance

8  policy.

9      MR. KAROTKIN:  Well, what difference does it make to

10  counsel?  I don't understand that.

11      THE COURT:  Yeah, yeah, I don't know what -- I'm not

12  sure what it does to your client.  Your client is the person

13  who's on the hook if there's a claim.  Beyond that, I mean

14  you're in the nature of a -- I mean, if your client has to pay

15  a claim, it has to pay a claim.  If it doesn't have to pay the

16  claim for some technical reason, it wasn't assigned, and it's

17  ahead of the game.  So what's the relevance as far as the

18  voting decision?

19      MS. LANDRY:  Well --

20      MR. KAROTKIN:  Your Honor, if we put in paragraph --

21      MS. LANDRY:  -- we believe that --

22      MR. KAROTKIN:  If we put in paragraph v, I think it

23  addresses the certain rights, that word "certain" -- paragraph

24  v which was stricken, okay?  So I think that addresses

25  everything that's remotely relevant here.

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Yeah, Ms. Landry, I am going to let them -

2    - I'm not going to try to make it further about any reservation

3    of rights.  I'll take Mr. Karotkin's volunteering to put what

4    used to be romanette v back in but it will become romanette iv,

5    just to be consistent with the language.

6    Right, Mr. Karotkin, won't it?

7    MR. KAROTKIN:  Yes.

8    THE COURT:  Yeah.  And so unless there's --

9    MS. LANDRY:  All right, thank you.

10   THE COURT:  There's nothing else that I think is

11   necessary, so go ahead and make that one change.

12   MR. KAROTKIN:  Yes, sir.

13   THE COURT:  All right?

14   MS. LANDRY:  All right.  Thank you, Your Honor.

15   THE COURT:  Okay.  Thank you, Ms. Landry.

16   MR. KAROTKIN:  I believe number 14 has been resolved.

17   THE COURT:  That's TCC.

18   MR. KAROTKIN:  Yep.

19   THE COURT:  Well, can I have a clarification, Ms.

20   Green, on the TCC?  Am I correct at the moment -- and not that

21   it has to happen today, but you're not prepared to support --

22   the TCC is not prepared to say affirmatively they support this

23   plan, right?

24   MS. GREEN:  Correct, Your Honor.  A lot of this

25   happened last night at the mediation.  We haven't had a TCC

PG&E Corp. and Pacific Gas and Electric Co.

1    meeting.

2         THE COURT:  No, I understand.  I understand.  And so

3    but obviously when the Court approves the disclosure, and they

4    start to promulgate it, then you'll either have to --

5         MS. GREEN:  We have to have a meeting.

6         THE COURT:  -- you'll have to make a decision that TCC

7    will either will or won't.

8         MR. KAROTKIN:  You had a meeting last night.

9         MS. GREEN:  Not -- they have to revise the term sheet.

10        THE COURT:  Again, did you want to clarify something?

11        MS. GREEN:  Yeah, it's fine.

12        MR. KAROTKIN:  Okay, number 15?

13        THE COURT:  Official creditors' committee.

14        MR. KAROTKIN:  I believe that -- they had an issue

15   with the discharge release provisions in the plan which we view

16   as confirmation issues.

17        THE COURT:  Mr. Bray, do you agree?  Confirmation

18   issue?  Yeah, you've covered both the solicitation and the

19   disclosure, but you didn't have much to say about solicitation,

20   so --

21        MR. BRAY:  Yes, Your Honor.  Gregory Bray, Milbank,

22   LLP, counsel for the official committee.  Good afternoon, I

23   should say.

24        Your Honor, it's true, we don't have a lot of what you

25   would consider to be pure disclosure-statement comments.  We

PG&E Corp. and Pacific Gas and Electric Co.

1   talked about that before.  That's because the debtor is

2   purporting to treat the class or many of our constituents as

3   unimpaired.

4           THE COURT:  Right.

5           MR. BRAY:  And therefore, the comments in the

6   disclosure statement to a large extent aren't particularly

7   applicable --

8           THE COURT:  Right.

9           MR. BRAY:  -- to them.  Having said that, those

10  constituents are also being disenfranchised.  That's the quid

11  pro quo.  That's the bad side of being unimpaired.  The good

12  side is --

13          THE COURT:  That's a bad term.  Don't use quid pro

14  quo.

15          MR. BRAY:  Let me just -- that's the way the Code

16  works.

17          But we have sent over to the debtors a comprehensive

18  markup of the plan and the disclosure statement to track the

19  plan comments.  The debtor has not accepted, at least yet, a

20  number of those comments.

21          And because we are deemed to be unimpaired, or at

22  least as part of the constituency is, and because we don't have

23  time to come around and vote a second time, given the June 30

24  date, if it turns out that some of our concerns are, in fact,

25  valid, we are concerned that the debtor not -- that the debtor

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    should address them sooner rather than later.

2        THE COURT:  Well, but you want to tee up for some

3    briefing the question of whether you are impaired or not?

4        MR. BRAY:  Fine with that.  Sure, I'm fine doing that.

5    I mean, I thought the Court might want to go there.  We can

6    talk to the company about teeing up the schedule there.  But

7    our concerns --

8        THE COURT:  Well, excuse me, it was a very similar

9    situation that we be dealing with if the FEMA and the CAL

10   insurance thing --

11       MR. BRAY:  Right.

12       THE COURT:  -- were done; we're looking at a briefing

13   schedule and make a call on it one way or the other.

14       MR. BRAY:  But for example, the comments or the

15   objection that the ad hoc committee raised when they were first

16   up today about the timing of payment and the lack of interest,

17   that was in our markup, as well.

18       THE COURT:  Right.

19       MR. BRAY:  It's troubling to send out a plan -- and I

20   think we all know -- with a provision like that, can't be

21   confirmed.  I'm not prejudging what the Court said; I saw the

22   body language.  But the idea that that -- that the plan is

23   going to go out with a provision like that that we know is

24   problematic, and there's no voting associated with it, and it

25   could cause a fairly cataclysmic effect, if the Court were to

PG&E Corp. and Pacific Gas and Electric Co.

1    say you're right, and the debtor were to say I'm not going to

2    change it, we have a problem.  So to some extent --

3             THE COURT:  Well --

4             MR. BRAY:  -- I'm expressing my concern.

5             THE COURT:  -- wouldn't it be a simple problem is that

6    I wouldn't confirm the plan?

7             MR. BRAY:  Exactly.  I agree with that.

8             THE COURT:  So I mean, it's a bigger problem, but I

9    have to make the rule to say they've got -- if they won't do

10   what I think the law requires, then they don't get their plan

11   confirmed.

12            MR. BRAY:  I completely understand, Your Honor.

13            THE COURT:  But that's why people come up with

14   workarounds.

15            MR. BRAY:  And one of the areas we focus on in

16   particular -- I'm not going to go back over what the ad hoc

17   committee covered, but we completely with their comments, by

18   the way -- are the scope of the release provisions in the plan,

19   particularly given we're unimpaired.

20            THE COURT:  Well, and the U.S. Trustee has some

21   similar language.

22            MR. BRAY:  Yeah.  I'm just going to point out one as

23   an example.  The committee itself, the unsecured committee is

24   deemed to be giving releases to other parties in the case --

25            THE COURT:  Right.

(970)-352- operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. BRAY:  -- but is not getting a release.

2          THE COURT:  Right.

3          MR. BRAY:  On its face, it's patently unconfirmable.

4     It violates American Hardwoods or the principle of American

5     Hardwoods about a nonconsensual release.  Those are the types

6     of comments that haven't been taken and haven't been fixed, and

7     that's concerning.

8          We'll deal with it.  We'll continue to talk with the

9     debtors about them.  We want to work with the company in good

10    faith on these issues.  But it is interesting that a comment

11    as -- I think, as clear as that one was essentially rejected.

12         We also have concern, and you've heard some of the

13    vendors speak about this, when you get to the issue of

14    unimpairment, you have these claims being assigned to the

15    trust, assuming you confirm the plan, Your Honor.  And we

16    believe that in order to be unimpaired in that circumstance,

17    that whatever rights those vendors may have in respect of those

18    litigation claims that are asserted against them -- equitable

19    indemnity, contractual indemnity -- whatever counterclaims they

20    might have against them are reserved and preserved, that the

21    process, and that's part of being unimpaired under the

22    circumstances of this case.

23         THE COURT:  But we know that, from the cases, and

24    certainly the cases we had to deal with previously on the issue

25    of the RSAs, is whether the plan is doing the unimpairment or

(970) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    something else is.  I mean, if the debtor could bring a claim

2    against a vendor --

3            MR. BRAY:  Right.

4            THE COURT:  -- then an assignee bringing the same

5    claim, it doesn't mean that the vendors don't lose their

6    defenses.

7            MR. BRAY:  I completely agree with you, Your Honor.

8            THE COURT:  Right?  Whether it's recoupment or --1

9            MR. BRAY:  We're just looking -- that was an issue we

10   wanted to clarify.  We haven't been able to do that with the

11   debtors.

12           THE COURT:  But what I'm trying to say is why does

13   that somehow make the person impaired?

14           MR. BRAY:  It doesn't.

15           THE COURT:  You have to be a creditor to begin with to

16   be impaired, right?

17           MR. BRAY:  No, to the extent -- based upon what you

18   just said, they are not impaired.  They're unimpaired.

19           THE COURT:  Right.

20           MR. BRAY:  There's a concern that the release

21   provisions in the plan could be interpreted in a fashion to

22   essentially strip the vendors of those rights in connection

23   with the assignment; that would create the impairment.  From

24   what you said, we're in sync.

25           THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. BRAY:  We agree with that, but it's a concern.

2   We're trying to resolve it with the debtors.  We'll continue to

3   work with them.  But I just want to highlight for the Court

4   some of these issues that are there that do need to be resolved

5   in order, at least from the committee's perspective, for the

6   assertion that general unsecured creditors are unimpaired to

7   actually be the case.

8    THE COURT:  Okay.  Let me take a timeout here and say

9   to Mr. Karotkin --

10    Mr. Karotkin, at the start of the hearing, I went

11   through -- I told you I had a list of items, and one -- and

12   there's some things that struck me as big ticket items.  And

13   one of them of course we've touched on a couple of times, is

14   this allowing a claimant one dollar, which may be mooted to

15   some extent by the resolution with FEMA and CAL OES, but it's

16   not resolved completely.  And I also had on my shortlist, which

17   I don't think I even said to you, is releases and exculpation

18   clauses, and I had in mind specifically things that the U.S.

19   Trustee said and that I had noted, and certainly, Mr. Bray had

20   noted it.  And that, to me. is something that needs to get teed

21   up in further discussion.  And I don't feel comfortable getting

22   this huge volume of papers at 6 o'clock last night and

23   understanding them enough, and I don't expect any other counsel

24   to.

25    So I'm kind of the opinion that the shortlist of

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  bigger ticket items that I just described, and anything else

2  that we have in mind, are something that perhaps you and the

3  principal counselors could talk about, if not during the lunch

4  break this afternoon, and maybe tee up for an expedited

5  examination and discussion of it at a further hearing.  Are you

6  agreeable to that?

7           MR. KAROTKIN:  Your Honor, I think a couple of things.

8  We can talk about the dollar vote later.  Okay?

9           THE COURT:  But I don't think we should talk about it

10  later.  I mean, later, I don't mean 1 o'clock.  I mean later

11  but before the disclosure statement's approved.

12          MR. KAROTKIN:  What I meant later was I meant after

13  lunch.

14          THE COURT:  Yeah.  Okay.

15          MR. KAROTKIN:  Yeah.

16          THE COURT:  No, no.  No, but what I'm getting -- no.

17  After lunch today and dinner tonight.  I don't intend and want

18  to try to make an informed decision.  I want to listen to the

19  arguments.

20          MR. KAROTKIN:  I get it.  I understand.

21          THE COURT:  And that would mean another hearing,

22  whether it's tomorrow or next week, or something that's to

23  everyone's convenience.  I don't want to inconvenience you all,

24  but I also don't want to rush them and think we can take care

25  of them in a rush.

(972) 786-9955 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. KAROTKIN:  Okay.

2          THE COURT:  So my shortlist of things that need

3     further discussion are what I just told you.

4          MR. KAROTKIN:  Okay.  Can I respond to that?

5          THE COURT:  Yeah, of course.  Of course.

6          MR. KAROTKIN:  Okay.  First of all, we don't have time

7     to delay either approval or disapproval of the disclosure

8     statement if we're going to meet the AB 1054 timeline.  If

9     we're going to solicit votes, we need to get this disclosure

10    statement approved within the next few days.

11         THE COURT:  Yeah.

12         MR. KAROTKIN:  Okay?

13         THE COURT:  The scheduling order says out the door by

14    the end of the month.

15         MR. KAROTKIN:  Yes.  But out the door to several

16    hundred thousand people --

17         THE COURT:  Right.

18         MR. KAROTKIN:  -- cannot be accomplished in one day.

19         THE COURT:  I understand that.

20         MR. KAROTKIN:  Okay?  It can't be accomplished in one

21    week.

22         THE COURT:  That's why I said I think we can have a

23    hearing as early as next Monday.

24         MR. KAROTKIN:  At the very, very, very, very, very

25    latest, at the very latest.  And even with that, Your Honor,

PG&E Corp. and Pacific Gas and Electric Co.

1    I'm not sure we can make the March 31st date.  Okay?  Just so

2    you know the situation.

3            THE COURT:  Well --

4            MR. KAROTKIN:  It's not --

5            THE COURT:  -- Mr. Karotkin, I'm not your opponent

6    here.  I'm not going to say therefore we're going to ignore

7    some applicable legal principles.

8            MR. KAROTKIN:  Absolutely not.  Absolutely not.  And

9    maybe we can come up with a resolution of the one dollar, one

10   vote today.

11           But anyway, as to the release, I'd just like to point

12   out that the releases that were in the plan were addressed at

13   the end of last year in the context of the approval of, I

14   think, both the TCC RSA, and the segregation RSA.  And the plan

15   draft, which has not changed since it was amended to address

16   those issues when everyone was here, including Your Honor, it

17   was amended to make it very clear how the releases work.

18   They're purely opt-in releases.  It couldn't be any clearer as

19   to how the releases work.  And I believe, Your Honor -- I

20   believe you were perfectly comfortable with that back then.

21           THE COURT:  I was.  I was.

22           MR. KAROTKIN:  Nothing has changed.  Nothing has

23   changed.

24           Now, to address to Mr. Bray's point about it's not a

25   reciprocal release of the creditors' committee, and their

PG&E Corp. and Pacific Gas and Electric Co.

1   giving a release, I believe that's a confirmation issue.  If he

2   would like us to include in the disclosure statement that he

3   believes, or the creditors' committee believes that unless that

4   is changed it's a fatal flaw in the plan, we can -- again, it's

5   disclosure -- we can certainly do that.  Okay?

6            THE COURT:  Okay.

7            MR. KAROTKIN:  As to his other objection to the

8   disclosure statement about impairment or that provision on

9   discharge that he takes exception to, we're perfectly happy to

10  say in the plan that the creditors' committee believes that

11  that provision is wrong and that you do not have the power to

12  confirm the plan unless it's changed, and we will say we

13  disagree with that.  We're happy to do that, again, for

14  disclosure purposes.  And that's the only reason we're here

15  today.

16           But for Mr. Bray to stand up today and say, Your

17  Honor, let's brief impairment and find out whether they're

18  impaired or not, and then -- and then what happens?  Then they

19  get to vote on the plan?  It doesn't work.

20           THE COURT:  When I said --

21           MR. KAROTKIN:  Let me just finish one more thing.  I

22  apologize to interrupt, but Mr. Bray and the creditors'

23  committee have been aware of this provision and the plan for

24  months and aware of your entreaty to people, if you have issues

25  in the plan you want to tee up, come forward and tee up, they

PG&E Corp. and Pacific Gas and Electric Co.

1  didn't do that.

2       The first we've heard about that is today, and what

3  they're trying to do is now bootstrap their position into --

4  the same thing they tried to do with the interest -- to

5  bootstrap it into a reinstatement as opposed to unimpairment.

6       Again, the easy solution to this is this is a

7  confirmation objection.  They can stand up and say -- and we're

8  happy to say in the disclosure statement they don't believe the

9  plan is confirmable without this being changed, and we will say

10  we disagree.

11       THE COURT:  Okay.

12       MR. KAROTKIN:  End of story.  Completely addressed.

13       THE COURT:  Okay.  What I'm going to do is take the

14  break that I said I would take.  And again, I just -- I had to

15  make a decision on when to do what.  And to the extent that I

16  decided to take the Gantner motion right after lunch, I'm going

17  to stick with it on a limited time, and we will press through

18  with the remaining -- and there don't seem to be a long list of

19  disclosure-statement items.  If necessary, we'll go to

20  tomorrow.  If we can solve the problem today, we'll do it.

21       And, Mr. Karotkin, I would urge you to talk to Mr.

22  Bray and talk to Ms. Winthrop, and the United States Trustee,

23  if necessary, to talk about a way to identify these significant

24  items that can be dealt with quickly, and I'll accommodate you

25  quickly.  I simply could not absorb all the stuff, and I do

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   have my own questions about some of your balloting and

2   procedures --

3            MR. KAROTKIN:  Okay.

4            THE COURT:  -- which I'll come to this afternoon or

5   tomorrow morning if we have to.

6            So let's call a timeout for now.  I will break for one

7   hour, so we'll start at twenty to 2 by that clock, and I'll

8   start with the motion to dismiss the Gantner matter.  And then

9   we'll resume and pick up the disclosure statement.

10            MR. KAROTKIN:  Okay.  Thank you, sir.

11            THE COURT:  Thank you.

12            MR. SILFEN:  I'm sorry, Your Honor?  Could I -- can we

13   just end on an upbeat note?  You asked us to talk to --

14            THE COURT:  Wait, say it again.  What?

15            MR. SILFEN:  I'm sorry.

16            THE COURT:  I just didn't hear you, that's all.

17            MR. SILFEN:  Andrew Silfen, Arent Fox, counsel for

18   BOKF, the indenture trustee for the senior trustee.  At the

19   last break we had a conversation with Weil, and I just wanted

20   to inform the Court that we reached an agreement as to

21   additional language to be added to the disclosure statement.

22            THE COURT:  Great.

23            MR. SILFEN:  Therefore, our objection is resolved.

24   Our confirmation issue will be dealt with at confirmation.

25            THE COURT:  Great.  Sounds good.  Okay.  See you all

(973) operations@escribers.net | www.escribers.net

            PG&E Corp. and Pacific Gas and Electric Co.

1    in an hour.

2         (Recess from 12:40 p.m., until 3:03 p.m.)

3              THE COURT:  Please remain seated.

4              Okay.  Mr. Karotkin, where are we picking up?

5              MR. KAROTKIN:  For the record, Steven Karotkin, Weil,

6    Gotshal & Manges for the debtors.  I think we can report to the

7    Court a resolution on the dollar vote solicitation issues.

8              THE COURT:  That's good.

9              MR. KAROTKIN:  And I'm sure someone will correct me if

10   I misstate it.

11             So we have essentially, Your Honor, two objections:

12   one from Adventist and one from AT&T that addresses that issue.

13             THE COURT:  Okay.

14             MR. KAROTKIN:  And what we've agreed, and the tort

15   committee is on board as well, is that with respect to the fire

16   claims in the trust, other than AT&T and Adventist, each claim

17   would have a dollar vote.  And with respect to Adventist,

18   Adventist would have a vote for 1,212 dollars.

19             THE COURT:  Okay.  I won't ask.

20             MR. KAROTKIN:  Don't ask.  And AT&T would have a vote

21   for 540 dollars.  This is solely for voting purposes.  It has

22   nothing to do with allowability.

23             THE COURT:  You'd be happy just to allow the claimant

24   1,200 dollars anyway, though, wouldn't you?

25             MR. KAROTKIN:  That's up to the trust.

(970) 575-8131 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          UNIDENTIFIED SPEAKER:  We'll accept that.

2          THE COURT:  Are you sure we've got everybody?  I mean,

3     I didn't memorize every other response but --

4          MR. KAROTKIN:  I believe that the CPUC has still

5     reserved rights on those issues, so I don't think we need to

6     address that today for purposes of disclosure.

7          THE COURT:  Well, but what I'm getting at is because -

8     - in the various oppositions that were filed, I -- some of

9     them I just tried to absorb them all, and I didn't know if

10    anybody else said it.  Well, I guess somebody will come up and

11    be heard.

12         Well, Mr. Pascuzzi you can't come back; you've already

13    announced your settlement.

14         MR. KAROTKIN:  Well, I think I -- Mr. Pascuzzi has

15    agreed, subject to his settlement being approved.  I think

16    that --

17         MR. PASCUZZI:  Right, Your Honor.  And the idea would

18    be if for some reason our settlement doesn't go through, we'd

19    still have the right to file a 3018 --

20         THE COURT:  Yeah.

21         MR. PASCUZZI:  -- temporary allowance motion, et

22    cetera.

23         MR. KAROTKIN:  Absolutely correct.

24         THE COURT:  I assume so.

25         MR. PASCUZZI:  And that's the same for the federal

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    agencies, I believe, Your Honor.

2         MR. KAROTKIN:  Yes.

3         THE COURT:  But so -- I mean, I'm happy that you

4    reached a resolution.  It's surprising, and I won't ask how the

5    numbers were derived.  But if I got it right, then when it

6    comes time to count the votes, Adventist will have a vote

7    to -- I mean, if it --

8         MR. KAROTKIN:  For dollar -- for amount --

9         THE COURT:  If it submits a ballot --

10        MR. KAROTKIN:  For amount purposes, yes.

11        THE COURT:  I got it.

12        MR. KAROTKIN:  Yeah.

13        THE COURT:  If it submits a ballot, either for or

14   against, it will be for 1,212 dollars, and AT&T for 540

15   dollars.

16        MR. KAROTKIN:  Correct.

17        THE COURT:  And that's the only time that those

18   numbers --

19        MR. KAROTKIN:  Are relevant.

20        THE COURT:  -- follow them one way or the other.  And

21   your proposal for all the other victims of any size and

22   shape --

23        MR. KAROTKIN:  All other victims --

24        THE COURT:  -- is one dollar.

25        MR. KAROTKIN:  -- who filed claims and will be

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  voting --

2         THE COURT:  Right.

3         MR. KAROTKIN:  -- yes, in that class.  Correct.

4         THE COURT:  Okay.  Well, Ms. Winthrop, will you just

5  confirm that's agreeable to your client, or where did you go?

6  That's acceptable?

7         MS. WINTHROP:  Yes, Your Honor.  That is acceptable.

8         THE COURT:  And I forgot which counsel's here for

9  AT&T.  Yes, sir.

10        MR. MINTZ:  Good afternoon, Your Honor.  Benjamin

11  Mintz.

12        THE COURT:  Yeah.

13        MR. MINTZ:  I confirm that as well.

14        THE COURT:  Well, okay, thank you for working that

15  out.

16        MR. KAROTKIN:  And we will reflect that in the

17  proposed order.

18        THE COURT:  I was going to announce my briefing

19  schedule on the dollar claim vote issue, so I guess I won't.

20        MR. KAROTKIN:  We even did this without Judge Newsome.

21        Okay.

22        THE COURT:  Did you have Governor Newsome involved?

23  You don't have to answer that.

24        MR. KAROTKIN:  Okay.  So I think we can go back to the

25  chart.

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  We can.  All right.  We're up to the lead

2 plaintiffs, class plaintiffs, aren't we?

3    MR. KAROTKIN:  I think so.  Hold on.

4    THE COURT:  Let me -- actually, Mr. Karotkin, you

5 mentioned the order.  One of the things that just overwhelmed

6 me last night, and I just couldn't even begin to put my arms

7 around, is the proposed order.  I mean, the order gets to be

8 very complicated, and I know I've asked in the past that we not

9 have too many things in the order.  I'm not going to -- I'm not

10 going to disrupt that, but there are a lot of things in there.

11 But somewhere in that order it will say that these claims are

12 allowed for these purposes, right?  That's what you have in

13 mind?

14    MR. KAROTKIN:  Oh, yeah.  I thought I mentioned that.

15 Yes.

16    THE COURT:  Yes, but it's going to be reflected in the

17 order.  Well, what I was trying to say is that I haven't had a

18 chance, and I don't know if any counsel have had a chance to

19 even comment on any language that might bother them about the

20 proposed order, and I have not even gotten to look at it.  I

21 will obviously do that promptly.

22    MR. KAROTKIN:  Right.

23    THE COURT:  Okay.  Well, let's get back to --

24    MR. KAROTKIN:  Well, we have consistently circulated

25 the proposed order together with the other documents to counsel

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  as the process --

2  THE COURT:  No, I understand.  Okay.

3  MR. KAROTKIN:  -- has moved forward.  So I'm sure we

4  won't have any issues with it.

5  THE COURT:  I'm sure I won't, but I might.

6  MR. KAROTKIN:  Okay.  I think we're on number 16.

7  You're correct.

8  THE COURT:  So 16 is the lead security claims, the --

9  well, we'll call them the 510(b).

10  MR. KAROTKIN:  Correct.  So the plan has been amended

11  to classify the securities claims, the equity security claims,

12  at the Holdco level separately from the Holdco common interest

13  and clarifies their treatment.

14  THE COURT:  But what does it do to the creditor

15  claims?

16  MR. KAROTKIN:  Their claims have always been

17  separately classified and unimpaired.

18  THE COURT:  Not impaired.  Okay.

19  MR. KAROTKIN:  Yes.

20  THE COURT:  And is there an agreement by counsel for

21  the lead plaintiffs to the way that it's treated?  Are you up

22  on that?

23  MR. KAROTKIN:  As to the way it's treated?

24  THE COURT:  I mean, the way you've just described its

25  treatment here in the language.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          Would you state your appearance, please?

2          MR. BEHLMANN:  Certainly.  Good afternoon, Your Honor.

3   Andrew Behlmann from Lowenstein Sandler, on behalf of the --

4          THE COURT:  Okay.

5          MR. BEHLMANN:  -- lead plaintiff in the securities

6   investigation.

7          THE COURT:  Does that satisfy you or is there --

8          MR. BEHLMANN:  Your Honor, with respect to the

9   classification, which was part of the -- the first of the five

10  issues we raised in our papers, yes, we are frankly, you know,

11  pleased that we are now in a separate class from equity

12  interests.  That does raise a handful of other concerns that

13  are both disclosure and solicitation-related.  I can either

14  address those now, or if Your Honor wants to proceed in a

15  different manner consistent with the chart of objections, we'd

16  be happy to do that as well.

17         THE COURT:  What would you like to do Mr. Karotkin?

18  Should we get this out of the way?

19         MR. KAROTKIN:  Yes.

20         THE COURT:  Okay.

21         MR. BEHLMANN:  Okay.  Sounds like a yes from Mr.

22  Karotkin.

23         Your Honor, the separate classification does resolve

24  our concerns about the classification.  Previously, the debtors

25  had both equity interest denominated in shares, and claims

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    denominated in dollars lumped into a single class.  With those

2    separated, there's no longer a classification concern, but

3    there are some treatment concerns.

4         There is a formulated treatment built into the plan

5    now that is entirely new.  This is something that was not in

6    the previous version of the plan.  The way that formulated

7    treatment works is in two steps.  There's a fraction

8    determined. It's the claim amount less the amounts received

9    from insurance, divided by the debtors' market cap as of a

10   particular date in October of 2017.

11        Once you determine that fraction for a particular

12   claim, the debtors would then have that multiplied by the

13   number of shares of PG&E common stock that existed on the

14   petition date, which about 526 million and some change.  What

15   that raises, and frankly some of these concerns are somewhat

16   intertwined between both confirmation and disclosure because

17   they make it a little bit difficult for members of the class to

18   actually understand and ascertain what they're getting under

19   the plan.

20        The first concern is what exactly is the amount of an

21   equity 510-B claim.  The plan just refers to the amount.  It

22   doesn't specify how it's going to be calculated, how it's going

23   to be determined, you know, what their intentions actually are

24   with respect to valuing these claims.

25        I would expect, and obviously we won't know until

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    after the April 16th extended bar date passes, but assuming the

2    debtors notice program works, which hopefully it does, but we

3    have our doubts about that, you know, what the -- what we would

4    expect would be to see a lot of unliquidated claims.  You're

5    going to have folks filing proof of claim in unliquidated

6    amounts, or in not determined amounts because they're a lot of

7    different ways of determining damages for securities fraud

8    violation.

9         So without that information, without an understanding

10   of how the claims are intended to be valued, what that amount

11   of the claim in that formula is, it's basically impossible for

12   a creditor to ascertain what they're going to get.  And the

13   disclosure statement is silent on those issues.

14        Frankly, I don't know as I stand here today what the

15   fix is for that, you know, with respect to all of these

16   claimants.  But it is a problem that exists.  It isn't a

17   disclosure that is conspicuously absent.  Second, is this

18   October 6th --

19        THE COURT:  Well, excuse me.  Isn't it that partly

20   because of the way this has had to play out.  It's kind of

21   tailing behind everything else with the timing until we don't

22   even know how many claims there are.  There might be 5 or there

23   might be 50,000.  And if there are five, it'll be easy.

24        MR. BEHLMANN:  Well, frankly, Your Honor, if there are

25   five, I think we'll be back before, Your Honor, on a renewed

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  7023 motion asserting that the notice program was faulty for a

2  second time.

3  THE COURT:  I was assuming this notice program would

4  be -- well, you don't know do you how many people are --

5  MR. BEHLMANN:  We don't.  Nobody does.

6  THE COURT:  So what I'm getting at is that this is not

7  unlike the unliquidated fire damage claims.  There's some -- in

8  the fire case, there are tens of thousands of them, but lots of

9  them with no amount is known.  And here we don't even know how

10  many there are, let alone what the dollar amount of them.  But

11  we have no choice at the moment but to deal with it as a

12  disclosure item.  But I've pointed out before, and I've

13  acknowledged that there's got to be some kind of a disclosure

14  fix for impaired members of this class, this impaired class,

15  right.

16  MR. BEHLMANN:  There does, Your Honor.

17  THE COURT:  Isn't that true?  I don't --

18  MR. BEHLMANN:  The extended bar date mechanism, you

19  know, unfortunately creates a series of chicken and egg

20  problems where we're going to get to April 16th, and either, as

21  Your Honor noted, there'll be about 5 of these claims, or there

22  will be 50,000 of these claims.  And there will have to be

23  presumably things done to remedy the opportunities that

24  those --

25  THE COURT:  But I want you --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. BEHLMANN:  -- folks lost.

2          THE COURT:  -- to know that although some of the cases

I handle are slightly smaller than this, I am one of the

founders of the procedure of having combined plans and

disclosure statements, and tentative allowances, and voting up

to the last minute, and making these things come together.

7          So it's not uncommon and it's not foreign to me that

here, since -- for reasons that we don't have to go back into

there, has been -- there's an effort to let this group of

people, this finite group of people, infinite but unknown group

of people participate.  And so once we know the number and the

class, if it's five, it's one thing.  If it's 50,000, it's

another.

14          There has got to be a disclosure and voting process in

place.  I committed to it.  And we have the same problem if I

had allowed your class claim to come in.  And remember the

whole choice is just which was the least disruptive, and I just

made a call on that, that's all.

19          MR. BEHLMANN:  Understood.

20          THE COURT:  Okay.

21          MR. BEHLMANN:  And I think, you know, frankly, Your

Honor, these issues would be a lot easier with the class claim

in play because you have --

24          THE COURT:  I don't know we're --

25          MR. BEHLMANN:  -- two claims to deal with --

PG&E Corp. and Pacific Gas and Electric Co.

1        THE COURT:  -- that train left the --

2        MR. BEHLMANN:  But we're -- you know, that ship has

3   sailed.  We know where we are.

4        THE COURT:  No, let's see what metaphor you want.

5   Yes, that ship's sailed.  It's over in Oakland now.

6        MR. BEHLMANN:  Understood.  So the other concern that

7   arises from that is the debtors have selected an October 16th,

8   2017 benchmark date for the denominator of this fraction in the

9   two-step treatment.  There is no disclosure in the disclosure

10  statement whatsoever of A, what that date is, and we frankly --

11  we know what that date is, but the average --

12       THE COURT:  I don't know what it is.

13       MR. BEHLMANN:  -- the average hypothetical creditor

14  deciding whether to vote on this plan is going to have no clue

15  what that date is.

16       THE COURT:  You think it matters?  Why would it matter

17  to somebody?  You've got a choice.  You either want it in or

18  out.

19       MR. BEHLMANN:  Well, I can tell you why it matters.

20       THE COURT:  And I've got to ask you one other

21  question.

22       MR. BEHLMANN:  Certainly.

23       THE COURT:  Is it any reason -- is there any reason to

24  believe that no matter how many folks show up in this class

25  they're going to control the outcome?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      MR. BEHLMANN:  Your Honor, I don't know.

2      THE COURT:  Well --

3      MR. BEHLMANN:  You know, without knowing the number of

4  claimants --

5      THE COURT:  -- realistically.

6      MR. BEHLMANN:  -- that show up.

7      THE COURT:  Realistically, but this is only --

8      MR. BEHLMANN:  Oh, you mean the outcome of the case?

9  No, they're not going to control --

10      THE COURT:  No.

11      MR. BEHLMANN:  -- the case.

12      THE COURT:  We're only talking about voting by equity,

13  or people who are treated as the same as equity, right?

14      MR. BEHLMANN:  These folks are now in their own class,

15  so they will --

16      THE COURT:  Well, okay.  All right.

17      MR. BEHLMANN:  So they would be voting with their own

18  class.  So yes, they would.

19      THE COURT:  Well, what would happen if they voted it

20  down?  Is there any doubt that if the other class votes it up

21  that the plan's confirmable?

22      MR. BEHLMANN:  I don't know.  The burden would be on

23  the debtors, Your Honor, to satisfy the cram down requirements

24  at that point.

25      THE COURT:  Well, again --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. BEHLMANN:  If this class voted to reject, you

2    would have an impaired rejecting class, and the debtors would

3    be subject to the cram down requirements.  This is a slightly

4    different issue though.  You know, the issue here is without

5    knowing what the market cap was on that date, or what number

6    the debtors are even referring to, no one can sit down with

7    this disclosure statement and say I suffered a loss of X

8    thousand dollars on my PG&E stock.  Therefore, I can ascertain

9    that I'm going to get Y number of shares out of this plan.

10        And even just looking at the date that they specify,

11    the debtors specify the market capitalization as of October

12    16th, 2017.  That's a quote.  The market cap of the debtors of

13    that day ranged anywhere from about twenty-six billion to about

14    thrity billion dollars.  Which, for somebody with a half-

15    million-dollar loss, is a difference between getting 8,600 PG&E

16    shares and getting 10,000 PG&E shares under the plan.

17        The fix for that is simple, Your Honor.  All the

18    debtors have to do is specify what market capitalization

19    they're using as the denominator of that fraction.  We take

20    issue with their choice of date for a variety of reasons.

21    Frankly, we think they've chosen a date where the market cap

22    was higher than is relevant for these purposes, but that's a

23    confirmation issue.  That's something that we, you know, we

24    reserve the right to take up at confirmation.

25        But related to that, the disclosure statement doesn't

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    explain to folks, if this number is wrong, if the proper

2    numerator for that or denominator for that fraction is ten

3    billion dollars instead of thirty billion dollars, then the

4    number of shares that they're getting out of the plan in their

5    distribution could very materially change.  And I think that

6    sensitivity analysis is something that would be important to

7    investors, particularly if you're --

8         THE COURT:  Well, I guess I'm going to go back and ask

9    a very dumb question.  Is it really going to drive the decision

10   to vote up or down in this?  In other words, it would seem to

11   me that if someone claims to have suffered damage, that's one

12   thing.  And fortunately for that claimant, there the door is

13   open to participate.  And how there was a calculation of a

14   market cap, it seems to be irrelevant.  I mean, they should be

15   glad they're in.

16        MR. BEHLMANN:  Well --

17        THE COURT:  Right?

18        MR. BEHLMANN:  By the same token, Your Honor, I think,

19   you know, you could say that of any creditor under any plan in

20   an impaired class.

21        THE COURT:  No, what I'm trying to say is the

22   disclosure item isn't a big deal.  In other words, if you make

23   a case -- let's say you have 50,000 claims and therefore you

24   have 50,000 folks who claimed to have lost whatever number of

25   dollars per investor or per claim, and they have, therefore,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    immeasurable damage, and under the plan they're going to get

2    equity.  Whether they get 8,000 shares or 10,000 shares

3    wouldn't seem to me to influence their vote, but maybe I'm

4    missing something.  But even if it did, it seems like it

5    becomes not a disclosure item but a confirmation item.  In

6    other words, if you think, hey, my class didn't accept this

7    plan; therefore, I'm going to invoke cramdown.  Okay.  We'll

8    see what is happening.  It's a confirmation issue, I think.

9         MR. BEHLMANN:  On some level, it is a confirmation

10   issue, and frankly we are likely to appear at confirmation and

11   argue that the numbers that the debtors are using for the

12   denominator of this fraction is the wrong number.

13        THE COURT:  In which case you'll say, I'm entitled to

14   more.

15        MR. BEHLMANN:  That's precisely what we'd say.  The

16   problem with that, though, Your Honor, is if this

17   solicitation -- if the solicitation packages go out with this

18   disclosure statement in its current form and creditors -- not

19   just in our class, not just in this new separate class of

20   equity base 510(b) claims but in the class of existing equity,

21   which this is the rare case for existing equity also gets to

22   vote, because they're impaired in getting a distribution.

23   Those folks, I would expect, would be standing before you at

24   confirmation saying, woah, woah, woah, Judge, we voted to

25   accept this plan based on the premise that we were going to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   wind up with X number of shares.  And now this 510(b) class, by

2   changing the denominator of that fraction, you're altering our

3   expectations, and they would be standing before Your Honor

4   arguing that it would upset the apple cart at that point to

5   tinker with any of these things.  That's part of the concern.

6   And again, I think it's a very easy disclosure fix in that the

7   debtors can specify not just "the market capitalization as of

8   October 16th, 2017" but exactly what that number is.  If they

9   want to use the market close, the 30 point -- whatever it was,

10  30.27 billion dollar market cap at the end of the day, they

11  should spell that out in the disclosure statement, and they

12  should include --

13          THE COURT:  Can you point me to the portion of the

14  disclosure statement?  This is not something I was able to

15  catch up on.  Just tell me where you want me to look and where

16  you'd like a change, and then --

17          MR. BEHLMANN:   I apologize, Your Honor.  I actually

18  don't have a copy of the disclosure statement up here in front

19  of me.

20          THE COURT:  Well, do you have one --

21          MR. BEHLMANN:  It is --

22          THE COURT:  -- at your desk, and --

23          MR. BEHLMANN:  I do.  It is in the treatment of --

24  hang on one second.

25          THE COURT:  I mean, look, all I want to do is ask what

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    the problem is, and I'll ask your opponent to ask if they're

2    willing to fix it that way, and if they say yes, we're done.

3    If not, I'll make a decision.  But I just don't understand the

4    question, because I just haven't done -- there haven't enough

5    hours in the day to anticipate this.

6            MR. BEHLMANN:  Understood, Your Honor.  It is in

7    Article 1.109 of the plan.  There is a defined term --

8            THE COURT:  Give me the disclosure statement -- well,

9    okay.

10           MR. BEHLMANN:  The disclosure-statement reference is

11   the defined term for the plan.

12           THE COURT:  Okay.  One second.  Are you looking at the

13   black line or the clean one?

14           MR. BEHLMANN:  I'm looking at the clean.  In --

15           THE COURT:  Okay.

16           MR. BEHLMANN:  -- the ECF footer it is page 20 of 107.

17           THE COURT:  Okay.  And which definition?  I mean --

18           MR. BEHLMANN:  It is 1.109.  It's entitled Holdco

19   Rescission --

20           THE COURT:  Holdco Rescission Claim.

21           MR. BEHLMANN:  Yeah.  That is the fraction, the A over

22   B.

23           THE COURT:  Um-hum.

24           MR. BEHLMANN:  The A is the dollar amount of the

25   claim, which again there's no indication of how that dollar

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  amount would be calculated, divided by "the dollar amount of

2  Holdco's market capitalization as of October 16th, 2017" --

3           THE COURT:  Okay. And what would you do to -- what

4  would the disclosure -- would you change the definition in the

5  plan or add --

6           MR. BEHLMANN:  So --

7           THE COURT:  -- something to the disclosure?

8           MR. BEHLMANN:  -- assuming that the debtors are using

9  the market capitalization as of market close on that date --

10          THE COURT:  Um-hum.

11          MR. BEHLMANN:  -- I think either in here or in the

12  treatment of the Holdco Rescission and Damage Claims --

13          THE COURT:  Wait a minute.  That's where you're

14  talking about disclosure and not treatment.  So what is the --

15          MR. BEHLMANN:  It's the disclosure of the treatment.

16          THE COURT:  What amendment do you want to make to the

17  treatment -- I mean, excuse me, to the disclosure?

18          MR. BEHLMANN:  Okay.  I'm in the clean disclosure

19  statement, ECF footer page 28 of 71, Document Number 6219.

20  This is where the debtors use that defined term --

21          THE COURT:  Wait a minute.  Tell me again the page

22  number of the --

23          MR. BEHLMANN:  28 of 71 at the bottom.

24          THE COURT:  Okay.  I'm there.  So what would you -- so

25  I see it now and the outstanding number of shares as of the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  petition date --

2          MR. BEHLMANN:  Yeah.

3          THE COURT:  -- and it shows the number.

4          MR. BEHLMANN:  So in the --

5          THE COURT:  What would I have them put there?

6          MR. BEHLMANN:  In the Holdco Rescission Damage Claim

7  Share --

8          THE COURT:  Um-hum.

9          MR. BEHLMANN:  -- I think the debtors would need to

10 add something saying, based upon a market capitalization of

11 Holdco as of October 16th, 2017 of --

12         THE COURT:  Okay.  In other words --

13         MR. BEHLMANN:  -- whatever dollar amount.

14         THE COURT:  -- you're putting the date -- you're

15 putting the date in the disclosure that's consistent with the

16 date in the definition.

17         MR. BEHLMANN:  And the dollar amount, because they're

18 using a fraction that's defined based on a number that's not

19 there.

20         THE COURT:  Well --

21         MR. BEHLMANN:  They're basically sending creditors

22 out --

23         THE COURT:  But in the --

24         MR. BEHLMANN:  -- to go find it.

25         THE COURT:  But in the plan there's a date without a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   dollar amount, and in the disclosure statement there's a dollar

2   amount without a date.  You just want --

3          MR. BEHLMANN:  There's no dollar amount.  There's no

4   dollar amount in either place.

5          THE COURT:  What's 520 --

6          MR. BEHLMANN:  That's the --

7          THE COURT:  Oh, I'm sorry.  That's --

8          MR. BEHLMANN:  That's the number of shares.  That's --

9          THE COURT:  That's the number of shares.

10         MR. BEHLMANN:  That's what the fraction then --

11         THE COURT:  Okay.

12         MR. BEHLMANN:  -- gets multiplied by.

13         THE COURT:  Mr. Karotkin, can you coffer a solution

14   here?  Or someone else?  Mr. Bennett?  I just don't -- I can't

15   really get a handle on what is the right way to fix it.

16         So, Mr. Bennett, fix it.

17         MR. BENNETT:  Your Honor, if this is the only

18   disclosure issue that we need to fix, we will put in an

19   appropriate market capitalization number.  We will figure out

20   what the right words will be.  We'll iron it out tonight.

21         THE COURT:  Is that the only thing there're still

22   concern --

23         MR. BEHLMANN:  That is not the sole issue.  There is

24   a -- there are a couple of solicitation-related issues as well.

25         THE COURT:  Well --

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. BEHLMANN:  And voting-related issues.

2          THE COURT:  I'll tell you what.  We'll come to that in

3   a second.

4          MR. BEHLMANN:  Okay.

5          THE COURT:  Mr. Bennett, I will rely on you to see if

6   you can reach an agreement with counsel to plug in the data

7   that you just said you would do.  It would go into the

8   disclosure item --

9          MR. BENNETT:  That is correct, Your Honor.

10         THE COURT:  -- in particular and --

11         MR. BENNETT:  It'll go in the disclosure statement,

12  that we calculate the market capitalization.  We will put in

13  the basis for calculation, because there are a couple of

14  different ways to do it.  I'm not going to say that I'll agree

15  with him as to the number.  I will agree to put in the number

16  we believe it is, and that should be enough for disclosure

17  purposes --

18         THE COURT:  I'm going to motivate you two gentlemen to

19  reach an agreement.  If you can't, we'll make you come back

20  here for a separate hearing in person, and we'll handle it --

21  we'll do it on Saturday.

22         MR. BENNETT:  Your Honor, Mr. Mester (phonetic) will

23  appear for me.

24         Your Honor, on the issue of the mysticism, supposed

25  mysticism of what the numerator is, it's the amount of damages

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    that's actually claimed --

2         THE COURT:  Well, I assume so, yes.

3         MR. BENNETT:  -- that's actually proved.  I'm sorry.

4    And I want to make one thing crystal clear, so that Your Honor

5    does not lose track of this.  As to this claim, we do not

6    believe it will contain any allowable claims.  And as noted in

7    the plan treatment provision to the extent there are any

8    allowable claims, they're offset by insurance, and there's

9    quite a bit of insurance.  So the --

10        THE COURT:  Again, this is not something I know,

11   because --

12        MR. BENNETT:  Not for, no --

13        THE COURT:  -- I just couldn't and so --

14        MR. BENNETT:  I just want to make sure that you

15   understood that, just for background purposes.  All of this

16   is -- and ninety percent of what you heard here, upwards of

17   ninety percent, are confirmation issues that we're well

18   prepared for.  This is --

19        THE COURT:  No, I understand --

20        MR. BENNETT:  We don't expect any problems --

21        THE COURT:   -- the confirmation issue, but your view

22   is that, no matter how you word the fraction, it's not going to

23   matter.

24        MR. BENNETT:  That's correct, Your Honor.

25        THE COURT:  And whether you're right or wrong it's for

(972) 612-6202 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   another day.  Okay.

2           MR. BENNETT:  Correct.

3           THE COURT:  Okay.  All right.

4           All right.  So let's go back to -- well, let's talk

5   about your solicitation concerns that the class has.

6           MR. BEHLMANN:  Certainly, Your Honor, and frankly, we

7   hope Mr. Bennett is incorrect about the allowability of the

8   claims but correct about the availability of insurance.  So we

9   will stand here with our fingers crossed on that point.

10          THE COURT:  Okay, Mr. Behlmann.  I got that.

11          MR. BEHLMANN:  With respect to voting, Your Honor, I

12  think really there's two problems, and Your Honor hinted at one

13  earlier, and that is that the voting -- right now, the voting

14  deadline is May 15th.  The folks in the Holdco Rescission

15  Damage Claim class have until April 16th to file their proofs

16  of claim.  The debtors have indicated in the reply and in the

17  order in sort of cursory fashion that they're going to go out

18  and solicit votes from these people.  They haven't given any

19  indication of how they're going to do that, whether they would

20  intend for the solicitation procedures to provide for an

21  extended voting deadline.  Because, in reality, if the bar date

22  occurs on April 16th and the voting deadline -- or pardon me --

23  yeah, April 16th, and the voting deadline is May 15th, assuming

24  it takes a week to get notice out to the folks that filed

25  proofs of claim --

(970) 001 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Well, again, we're back to, are you

2    talking about 5 or 50,000, and I don't know the answer.

3          MR. BEHLMANN:  We don't know.

4          THE COURT:  But we're not talking about like the fire

5    victims, where we don't even know where there are.  We're

6    dealing with finite things.  So on April 17th, I will look to

7    Mr. Karotkin and say, do you know how many people you need to

8    solicit, and how are you going to solicit them?  And he'll

9    answer, and you'll argue with me, and it'll happen.  I mean,

10   that was the whole point that why I decided to go with the

11   claims thing is that we can make it happen.  We're not dealing

12   with very difficult decision making.  And if somebody file's a

13   claim, I would think that's the most important thing, not how

14   he or she votes.  Again, we're back to my instincts telling me

15   the voting seems like a nonissue here, but I could be wrong.

16          I guess I'll state it differently.  I don't know how

17   someone, who claims to have been damaged because he was

18   defrauded three years ago and now is told there's a chance to

19   get some money if you file the claim, is then going to get

20   worked up on how he votes.  Because I would think the one thing

21   that you'd want to do is to make sure the plan gets confirmable

22   and operative, rather than the kind of thing we were discussing

23   earlier today on what happens if the TCC and the fire victims

24   or the big creditor class would vote this plan down, then what?

25   So it would be hard for me to imagine that anybody in the

PG&E Corp. and Pacific Gas and Electric Co.

1    constituents that you speak for would not want to get this plan

2    confirmed, but I could be wrong.

3            MR. BEHLMANN:  Well, and frankly, Your Honor, the

4    concern with respect to voting is just that they have the

5    opportunity, and if Your Honor's --

6            THE COURT:  And they will.

7            MR. BEHLMANN:  -- telling me that we're going to

8    potentially have the ability to come back and talk about this

9    after the 16th passes --

10           THE COURT:  Mr. Bennett stood right here, when I was

11   being persuaded to go with the alternative of the class that

12   will make it happen.  I think my decision said I expect to

13   address this issue as far as a way to let this late group of

14   people come to and submit their ballots and be heard, and I

15   haven't changed my mind on that.

16           MR. BEHLMANN:  Understood, Your Honor, and we will, I

17   guess, wait till the 16th and hope for the best --

18           THE COURT:  I mean, look if I'm wrong --

19           MR. BEHLMANN:  -- with respect to folks filing claims.

20           THE COURT:  -- about what I just said, please, at

21   another date tell me.  But if I'm right, I don't want any

22   credit.  I just want to, let's make it happen.  So let's assume

23   that the best thing for your clients is to have a confirmed

24   plan that let them share in the outcome if they're entitled to

25   it.  If they're not entitled to it, that's a different issue.

PG&E Corp. and Pacific Gas and Electric Co.

1   But the procedures that we've done so far are to let them be in

2   a position to claim to be entitled to it, file their claim,

3   have a date and opportunity to vote.

4           MR. BEHLMANN:  Okay.  And --

5           UNIDENTIFIED SPEAKER:  Yes.

6           MR. BEHLMANN:  -- we hope that they do, Your Honor.

7           THE COURT:  Okay.  Yes.

8           MR. BEHLMANN:  The other I guess hypothetical concern

9   that arises, and this may be something that gets resolved after

10  the 16th as well, is what happens if somebody comes in -- these

11  folks did not have an opportunity to object to the disclosure

12  statement or the solicitation procedures -- and thinks up

13  something that none of us thought of, no one in this room

14  happened to think of.  And they come in, and they convince Your

15  Honor that, by golly, the disclosure statement was defective.

16  There was some disclosure missing.  There was some flaw in the

17  solicitation procedures.  Then what?  Are we going to go back

18  and restart the process?

19          THE COURT:  Maybe.

20          MR. BEHLMANN:  That's a hypothetical that --

21          THE COURT:  What are we going to do if --

22          MR. BEHLMANN:  -- worries me.

23          THE COURT:  -- there's a flaw in the treatment of the

24  fire victims, and the plan can't be confirmed, because there

25  was a flaw?  There's no certainty here, but we're trying to

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  do -- we're trying to use every tool in the tool box from the

2  bankruptcy code and the bankruptcy rules and very experienced

3  bankruptcy practitioners and one judge who's done a few smaller

4  cases to make sure it works.  So that's the best I can predict.

5  But if the thing goes off the rails, I think we'll probably

6  fix -- we'll collectively come up with another fix.

7          MR. BEHLMANN:  Understood, Your Honor.

8          One final issue related to voting, and that is the

9  voting amount in this particular class.  I am going to make

10  reference to the dollar voting issue, but this is totally

11  separate from everybody else's dollar voting issue, because we

12  are -- the equity-based 510(b) claims are in their own class.

13  So it's --

14          THE COURT:  Well, I know, but the facts talks about --

15          MR. BEHLMANN:  This only applies vis-a-vis one

16  another.

17          THE COURT:  -- what the voting rule is.  It's by

18  dollar amount, right?

19          MR. BEHLMANN:  Right.  And the --

20          THE COURT:  Not by number.

21          MR. BEHLMANN:  And here's the concern.  We suggested

22  in our opposition that folks that have equity-based 510(b)

23  claims who are now in their own separate impaired voting class,

24  if they have contingent or unliquidated claims, the onus should

25  not be on them to have to file a Rule 3018 motion to have their

(97) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    vote count at all, but that they should be able to vote for a

2    dollar.  The debtors have made that change.  The solicitation

3    procedures now provide for that.  The only thing is they went a

4    little bit too far, in that it appears that that dollar vote

5    now applies to liquidated claims in this class as well.  So if

6    somebody files a proof of claim that says, I suffered 500,000

7    dollars in damages related to my purchase of PG&E Corp equity

8    securities, that person under the existing structure would also

9    be voting at a dollar.  The only change we would request in

10   that regard, Your Honor, is that folks that have liquidated

11   claims be allowed to vote the liquidated amount of their

12   claim --

13           THE COURT:  We're back --

14           MR. BEHLMANN:  -- again, within this class.

15           THE COURT:  We're back to the question, is this really

16   going to have any impact?

17           MR. BEHLMANN:  It might.

18           THE COURT:  I mean, this is like voting for your

19   favorite candidate, after they've already -- although somebody

20   else has got all the votes for the nomination.  I mean, I want

21   to make sure that we worry about real problems, not

22   hypothetical problems.

23           So, Mr. Bennett, is this even remotely possible that

24   there could be an outcome that depends upon the amount asserted

25   by a claimant in a 510(b) equity-subordinated position?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      MR. BENNETT:  Your Honor, we don't think so.  And as I

2  said when I started, number one, all these claims are disputed,

3  first of all.  I think that would start with that proposition,

4  so when people come forward with a liquidated amount it doesn't

5  mean it's going to be allowed in that amount.  It's going to be

6  a disputed claim --

7      THE COURT:  But there'd have to be an objection then?

8      MR. BENNETT:  Right, so we tried to do something fair;

9  we bent over backwards and said, when someone files an

10  unliquidated claim, we're going to not disqualify them given

11  the dollar.  I think with respect to those claims that come in

12  with numbers.  I think we have to see what they are.  I'm not

13  expecting a universe that's incapable of review like we have --

14  as the situation is with respect to the tort claimants.  Here,

15  we expect to have a relatively confined universe.  We'll see --

16      THE COURT:  Right, that's what I assume, too.

17      MR. BENNETT:  -- when.  We'll see exactly when we get

18  here.  And so what I would propose to do with this for now is

19  to say that liquidated claims will be dealt with in accordance

20  with the normal rules.  They are disputed claims, so they may

21  well all be objected to.  If it turns out the numbers come in

22  and they're kind of reasonable as reasonable upper limits, it

23  may well be we need to do nothing.  So I think it's --

24      THE COURT:  Or am I correct, if the vote doesn't

25  matter, then there's no pressure to do anything.

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. BENNETT:  Your Honor, it's also entirely possible

2  that we won't solicit the class but let's look at what comes

3  in.  And you wouldn't solicit the class, for example, if you

4  looked at all the claims and said it's within the insurance

5  coverage even if they were allowed.  So there are a number of

6  contingencies.  We will have more information in the middle of

7  April.  I can say that we and Mr. Karotkin's team will make

8  rational decisions to manage this in a reasonable way, but

9  let's have data before we make some decisions.

10       THE COURT:  I'm okay with that.

11       And, Mr. Behlmann, you're not going to be shut out.

12  It's a fluid situation and I think that all you have to do is

13  convince me that there's a real problem that isn't getting

14  fixed and I'll do my best to help you.  But I'm only going to

15  try to solve real problems, not pretend problems, so let's see

16  we are.

17       MR. BEHLMANN:  I think Mr. Bennett actually just

18  hinted at the actual solution which is much simpler than his

19  broader statement which is if somebody has a claim filed in a

20  liquidated amount, they did not, or no one has filed an

21  objection to that claim, that is not a disputed claim, that is

22  deemed allowed until somebody objects to it.  They vote

23  pursuant to the rules.  They vote in that amount if --

24       THE COURT:  Well, remember, we didn't talk about this

25  before in the context of this class, but I put into place a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  rule for the fire victims that you had to object to the claim

2  by a deadline if you're going to try to cut out their vote.

3  And the same should apply here and so there's no gotcha.  If

4  there is a legitimate objection, then the party, the debtor, or

5  the proponents have a right to object, but they don't have, in

6  my mind, they don't have the right to object if it's just as a

7  tactical move.

8          So, Mr. Bennett, I presume you know that that same

9  concept has to be imported to this phase, too, right?

10         MR. BENNETT:  I have no problem with the deadline, but

11  none of the objections will be tactical because in this

12  instance all of the claims, we believe, should be completely

13  disallowed --

14         THE COURT:  I understand.

15         MR. BENNETT:  -- okay.  So --

16         THE COURT:  How do you get them disallowed?

17         MR. BENNETT:  We'll propose a date for objections to

18  these claims.  I'll consult with the debtors; we'll propose a

19  date.  We'll have a discussion.

20         THE COURT:  Have a discussion and get it into the

21  order.

22         MR. BENNETT:  Oh, okay.  We'll do that.

23         THE COURT:  Mr. Karotkin and I have talked about this

24  complicated order.  Well, I think we got to get that in there,

25  too.  And make it work and just use the model that we use for

PG&E Corp. and Pacific Gas and Electric Co.

1   the tort claims for the same methodology.

2        MR. BENNETT:  Perfectly acceptable, Your Honor.

3        THE COURT:  Okay.  Mr. Behlmann, you understand

4   what --

5        MR. BEHLMANN:  Understood.

6        THE COURT:  -- we're talking about.

7        MR. BEHLMANN:  I think that's actually all we were

8   asking for and while an objection is pending filed pursuant to

9   that deadline, presumably these folks would vote at a dollar

10  unless the objection's resolved in some other manner.

11       THE COURT:  I'll just repeat it one more time and then

12  I'll forget about it.  I don't want to waste my time worrying

13  about allowing somebody to have a claim in for a dollar when it

14  won't matter because 500 million dollars have already voted one

15  way or the other and there's no way that particular claim could

16  possibly change the outcome.  But let's move on.

17       MR. BEHLMANN:  Yep.

18       THE COURT:  Have we covered all your issues?

19       MR. BEHLMANN:  We have one final issue, and this is an

20  issue that was not impacted or affected at all by the change in

21  classification and that is the fifth issue we raised in our

22  papers regarding the plan injunction.

23       The plan injunction purports to bar actions that,

24  "Directly or indirectly affect directly or indirectly a debtor,

25  reorganized debtor, or an estate or property of any of the

(971) 456-6622 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   foregoing."  Our very specific concern about this, and this is

2   a very material concern, is that particularly where the debtors

3   are assuming indemnification obligations with respect to

4   certain Ds and Os, a claim against those indemnified parties

5   could potentially be argued by somebody, either by that

6   indemnified party or presumably by the debtors, to, "indirectly

7   affect the re-organized debtors, their estates, or their

8   property."

9        The injunction also purports to bind all creditors

10   irrespective of whether they voted to accept, whether they

11   opted into the third-party release, or they voted at all.  So

12   in effect, at least with respect to some subset of claims, the

13   plan injunction is effectively a non-consensual third-party

14   release that, if it were styled as such, would be completely

15   impermissible under Ninth Circuit law.  Obviously, the

16   propriety of that is a confirmation issue.  That's an issue

17   that we will undoubtedly raise at confirmation.

18        But at this stage it's also a disclosure issue because

19   the debtors are proposing to send out solicitation packages,

20   send out a disclosure statement, send out ballots that give

21   folks the opportunity to opt in to a third-party release

22   without anywhere in any of those documents, most notably the

23   disclosure statement, telling people, oh, by the way, even if

24   you don't opt in to the release, we're still going to take

25   action that potentially throws your claims in the trash can

(970) 702-8700 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    having the substantive effect of a release anyway.

2            Sending these documents out without that disclosure,

3    if that is in fact the intent, isn't adequate.  That's just a

4    facade.  As for a fix, I think in an ideal world, the debtors

5    would simply fix the injunction, but we do recognize that's

6    largely a confirmation issue.  The bare minimum at the

7    disclosure-statement stage is probably ample disclosure of the

8    substantive impact of the plan injunction if the debtors'

9    intent is in fact what we read it to be.

10           And of course, if that's not their intent, they should

11   say so.  The plan in the disclosure statement should make clear

12   that they're not purporting to undertake a de facto release of

13   claims that they could not release if they actually styled it

14   as what it operates as.  They just need to explain how the

15   injunction is intended to work in that regard.

16           THE COURT:  Well, your proposed resolution, it doesn't

17   have language, but it has the concept, right?

18           MR. BEHLMANN:  Yep.

19           THE COURT:  Mr. Bennett, do you want to tell me how to

20   fix this?

21           MR. BENNETT:  Well, Your Honor, I completely disagree

22   it's just a disclosure issue.  Learned counsel just explained

23   exactly what the document says by reading it and so there is no

24   disclosure necessary.  It's just a confirmation issue.  We'll

25   deal with it at confirmation.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1       THE COURT:  Can you, Mr. Behlmann, show me in the

2  disclosure the language that you think is incomplete and should

3  be changed?  And again, I just can't keep up with all the

4  versions, so I'm looking at the clean version that was filed

5  yesterday.

6       MR. BEHLMANN:  Bear with me for just one moment, Your

7  Honor.

8       THE COURT:  I have the black line also.  I can go to

9  that one if I need to.

10       MR. BEHLMANN:  So starting on page 40 of 71 of the

11  clean --

12       THE COURT:  Okay.

13       MR. BEHLMANN:  -- Document Number 6219.

14       THE COURT:  Okay.  I'm there; I'm just about there.

15       MR. BEHLMANN:  Okay.

16       THE COURT:  Okay.

17       MR. BEHLMANN:  There is a lead-in to the discussion

18  about the releases and exculpation indicating that, "The plan

19  generally provides that subject to the occurrence of the

20  effective date, upon confirmation of the plan, the provisions

21  of the plan shall bind every holder of a claim against or

22  interest in the debtors, and such holders respective successors

23  and assigns."  It then continues through the releases for a

24  couple of pages all the way to page 43 of 71 --

25       THE COURT:  Um-hum.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. BEHLMANN:  -- in Section 2-A.

2          THE COURT:  Okay.

3          MR. BEHLMANN:  There's a lengthy explanation of the --

4    basically, the exact language of Section 10.6 of the plan.  But

5    I would hope that it's evident just from the face of that

6    particular paragraph.

7          There's no plain language explanation in there that

8    the -- for instance, the typical retail investor that would buy

9    a PG&E security could look at and say, oh, this is going to

10   take away my claims against Ds and Os because those claims

11   potentially indirectly impact property of the reorganized

12   debtor because the debtors have somewhere else in the plan and

13   somewhere else in the disclosure statement assumed

14   indemnification obligations to those people.  I don't even know

15   that a sophisticated institutional investor could read this and

16   make that connection.

17         THE COURT:  Do you have proposed language that you

18   would insert?  Because I don't think your objection did

19   specifically.

20         MR. BEHLMANN:  We did not specify specific language

21   from a pure disclosure standpoint.  It could be resolved with

22   language -- the disclosure issue, not the confirmation issue --

23         THE COURT:  Correct.

24         MR. BEHLMANN:  -- could be resolved by explaining

25   frankly, in here, in this discussion of injunctions, that the

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   injunction potentially strips folks of claims that are not

2   impacted by the release.  And that would be one example.  The

3   problem is --

4            THE COURT:  Do you --

5            MR. BEHLMANN:  -- I can't think of the whole universe

6   as I stand here today of claims that would fit into that bucket

7   or how the debtors describe it.  So a blanket carve-out seems

8   almost like the simplest solution that nothing in the plan,

9   nothing in the injunction actually wipes out these claims,

10  just --

11           THE COURT:  Okay.

12           MR. BEHLMANN:  -- fix it all in one shot.

13           THE COURT:  I'm not going to try to resolve it today.

14  I'm going to give you and Mr. Bennett a homework assignment to

15  see if you can come up with agreed language.  If --

16           MR. BEHLMANN:  Okay.

17           MR. BENNETT:  Your Honor --

18           THE COURT:  -- you already got it.

19           MR. BENNETT:  -- may I be heard?

20           THE COURT:  Yes, sir.

21           MR. BENNETT:  Because I really think this is easier

22  than that.

23           THE COURT:  Well, it might be.

24           MR. BENNETT:  What we've just heard is that everything

25  that should be disclosed is disclosed; they don't like the way

PG&E Corp. and Pacific Gas and Electric Co.

1    it's disclosed.  What I would propose, Your Honor --

2             THE COURT:  Well, that's not --

3             MR. BENNETT:  -- at the end of --

4             THE COURT:  Mr. Bennett, that's not quite what I

5    heard.  That's your interpretation.  I'm looking at a document

6    that is twenty lines, single-spaced that makes my eyes roll and

7    I don't --

8             MR. BENNETT:  Well --

9             THE COURT:  -- I want to make it more easy to

10   understand.

11            MR. BENNETT:  Your Honor, it's a complex subject and

12   the best way to do it is to spell it out unfortunately in

13   precise and carefully drafted language.  But I think here is

14   the essence of the problem.  The securities plaintiffs contend

15   that this release is too broad, and we contend that it's

16   appropriate.

17            And so perhaps the best way to deal with this is to

18   have a sentence at the very bottom of the general injunction

19   provision, (A), that says the securities class action plaintiff

20   in the district court case contends that this release is too

21   broad, and the debtors and the plan proponents disagree.

22            And then we flag the issue so that a securities

23   plaintiff can look or can call him or deal with it, but it

24   doesn't upset the rest of the description which managed to be

25   suitable for every other constituent in the case.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        THE COURT:  That acceptable?

2        MR. BEHLMANN:  It is not ideal, Your Honor, but from a

3   pure disclosure standpoint, I don't know that we can do a whole

4   lot better --

5        THE COURT:  Okay, done.  Sold.

6        MR. BEHLMANN:  -- I certainly don't mind sitting down

7   with Mr. Bennett and Mr. Karotkin and seeing if we can come up

8   with one simple sentence that provides that our claims against

9   other folks in the securities litigation aren't impacted by

10  this injunction and that we resolve a confirmation objection in

11  the same shot, but --

12       THE COURT:  Well, yeah.  I understand --

13       MR. BEHLMANN:  -- we'll see what we can do.

14       THE COURT:  -- anytime we can resolve a confirmation

15  issue at the disclosure statement is money in the bank, but Mr.

16  Bennett's language sounded okay to me.  If you can persuade him

17  consensually offline here to tweak it a little bit and it gets

18  into the finished product, that's fine, too.  If not, I'll go

19  with the language that he read, and I'll tell Mr. Karotkin to

20  make sure it gets into the document.

21       Again, I don't have the ability to absorb all these

22  documents as though I would do it on my own and make any

23  further decisions about it today.  So I'm going to take you at

24  your word and say that it sounded okay.  And if you can improve

25  it, improve it.

(970) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. BEHLMANN:  We will speak to them as soon as the

2  hearing ends.

3    THE COURT:  Okay.  The Montali rule is when the other

4  side wants to disclose it, just disclose it.  There you go.

5    MR. BEHLMANN:  Frankly, at the disclosure-statement

6  stage, I don't think we can ask for too much more, Your Honor.

7    THE COURT:  Okay.  Wait til I tell Mr. Karotkin that

8  his disclosure statement is great, but it's about thirty pages

9  too long.

10    MR. BEHLMANN:  Thank you, Your Honor.

11    MR. KAROTKIN:  Your Honor, I propose that --

12    THE COURT:  Yes, sir.

13    MR. KAROTKIN:  -- in my opening remarks, I was going

14  to address that issue --

15    THE COURT:  But we've got a couple more objections

16  left.

17    MR. KAROTKIN:  -- but you pushed me.  And I was going

18  to tell you we tried to keep it not a phone book -- we tried

19  mightily not to make it a phone book, but you see all these

20  people here?

21    THE COURT:  You got the San Francisco phone book, now

22  I'm going to work down to the Berkeley phone book --

23    MR. KAROTKIN:  Okay.

24    THE COURT:  Because somebody told me you don't know

25  where Berkeley is, but it has a shorter phone book.

(973)393- | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      MR. KAROTKIN:  I heard about that -- I heard about

2   that.

3      THE COURT:  Lets go back to our cheat sheet here.

4   What's left?

5      MR. KAROTKIN:  I think we're on Number 17.

6      THE COURT:  We have U.S. Trustee.  Singleton, you

7   took -- Mr. Singleton and Mr. Marchand --

8      MR. KAROTKIN:  Yes, I believe I've taken care of --

9   yes.

10      THE COURT:  The United States Trustee?

11      MR. KAROTKIN:  I believe -- I don't know if you and

12   I -- oh, there he is.  I believe that we have taken care of the

13   United States Trustee.  I think we've agreed that with respect

14   to the release and exculpation provisions that he has issues

15   with, we would put in similar language that Mr. Bennett was

16   just talking about that the U.S. Trustee believes the release

17   and exculpation provisions are too broad, and we believe they

18   are appropriate.

19      THE COURT:  Let's get an appearance on that.  Mr.

20   Laffredi?

21      MR. LAFFREDI:  Good afternoon, Your Honor.  That's

22   correct.  We've agreed to that language.

23      THE COURT:  Okay.  And so that takes care of all

24   your --

25      MR. LAFFREDI:  The other issue --

(971) 222-0338 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Yeah.

2          MR. LAFFREDI:  -- Your Honor, with regard to

3    disclosure of financial information, the primary concern was

4    that the information was not attached to the document.  Now it

5    will be --

6          THE COURT:  Right.

7          MR. LAFFREDI:  -- so that really resolves most of the

8    rest of our concerns.

9          THE COURT:  Great.  Okay.

10         Is Mr. Abrams here today?  I didn't see him, but it's

11   been -- oh, you are here Mr. Abrams.  Okay.  We're down to --

12   you're next on the list.

13         Wait.  Is Mr. Abrams coming up?  Are you coming up?

14         MR. ABRAMS:  I am.  I didn't know if --

15         THE COURT:  Come on up.  Well, I mean, come up and be

16   nearby.  You've been active and the only thing that happened

17   today is we put you down on the list but come on forward.

18         Well, Mr. Karotkin, do you -- well, I -- no, you

19   offered some responses to Mr. Abrams.

20         MR. KAROTKIN:  Yes, I believe that --

21         THE COURT:  So, Mr. Abrams -- I'm sorry, go ahead,

22   finish.

23         MR. KAROTKIN:  -- I believe we have in the revised

24   disclosure statement have added a number of risk factors that I

25   believe address most of the issues that Mr. Abrams raised.  I

(971) 910-3792 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    think as to the other items in his objection, I think those

2    really go to the feasibility of the plan and should be

3    addressed at confirmation.

4          THE COURT:  That's sort of my reaction too, Mr.

5    Abrams, but I'm certainly welcome to listen to you and you had

6    quite an education about Chapter 11, so I assume you have a

7    copy of either the black line or the latest clean disclosure

8    statement, so --

9          MR. ABRAMS:  Yes.

10         THE COURT:  -- focus me on where you think there

11   should be some changes, and don't confuse confirmation issues

12   or some of the other concerns that you've expressed quite ably

13   that are just simply not something that I can deal with but go

14   ahead.  Tell me what you want.

15         MR. ABRAMS:  Yes, Your Honor, thank you, very much.  I

16   do not believe that any, except for perhaps one of the bulleted

17   items that I listed was taken into consideration with the

18   disclosure statement.  I did follow your order and tried to

19   make it -- put the bullets to be able to outline those changes.

20   But I would say that just as a lead-in, my concerns are that

21   the company who is in bankruptcy is not really considered in

22   the disclosure statement in that the --

23         THE COURT:  I don't know what that means, so.

24         MR. ABRAMS:  -- yeah.  Let me try to explain, Your

25   Honor.  So it disassociates the company, the way it's managed,

PG&E Corp. and Pacific Gas and Electric Co.

1   its history, its risks from what's being disclosed to victims.

2   And those things should not be disassociated.  They are

3   inherent to the risks associated with the plan.  They're

4   inherent to the risks associated with victims.  So that is one

5   area where I think the disclosure statement falls short because

6   it's not tied to feasibility.

7           The other area -- and then I'll get to the more

8   specifics just real quickly -- the other area is because it is

9   not tied to that history, it's unreasonable --

10          THE COURT:  Well when you say --

11          MR. ABRAMS:  -- because -- yeah.

12          THE COURT:  -- but I have to interrupt you.

13          MR. ABRAMS:  Sure.

14          THE COURT:  What is tied to the history mean?  The

15  history is the history and you heard, you're going to hear all

16  afternoon, right?

17          MR. ABRAMS:  Yes, I have.

18          THE COURT:  So you heard the argument by counsel in

19  the Gattner (phonetic) case --

20          MR. ABRAMS:  Um-hum.

21          THE COURT:  -- he relied heavily on the history and

22  again, you have been outspoken on your views on the history, as

23  have a lot of people --

24          MR. ABRAMS:  Um-hum.

25          THE COURT:  -- so but what is it as a disclosure item?

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. ABRAMS:  Sure.

2          THE COURT:  Is there any mystery?  I mean, if we give

3   a whole history, this disclosure statement will look more like

4   the New York phone book again.

5          MR. ABRAMS:  Um-hum.

6          THE COURT:  So why is that helpful?

7          MR. ABRAMS:  Sure.

8          THE COURT:  Why is it helpful for you and --

9          MR. ABRAMS:  Sure.

10         THE COURT:  -- the thousands of people that you are

11  concerned about to make their voting decision?  That's what we

12  got to focus on.

13         MR. ABRAMS:  Absolutely, Your Honor and I'm not

14  talking about creating a New York phone book.

15            Part of what this is, is tying the two together.  It

16  just -- it doesn't need to be longer; they just need to be tied

17  to the risks.  So as an example, Your Honor, one of the main

18  risks associated with this plan and the victims is another

19  wildfire.  That is why we are where we are and we're trying to

20  hurry up before June.  That is why other parties to this

21  proceeding have gotten the concessions that they've gotten

22  associated with the plan of reorganization is because everyone

23  is cognizant of PG&E causing another wildfire this summer.

24            So in that eventuality and where it ties to the plan

25  of reorganization and specifically the disclosure statement, is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    what happens when that happens.  Are shares diluted?  Is there

2    liquidation?  Where are we in terms of priority order in terms

3    of our settlement and our payments?

4            All of those types of things are why tying -- and

5    again, it's just an example of why tying the history and tying

6    what PG&E is actually doing with a plan of reorganization or in

7    this case, not doing in a plan of reorganization.  And tying

8    that to the risks associated with victims so they can have an

9    educated understanding of what the risks are moving forward.

10           THE COURT:  Well, Mr. Abrams, I have -- again, let me

11   be the advocate -- be your adversary, your devil's advocate

12   here.

13           MR. ABRAMS:  Sure.

14           THE COURT:  If you had proposed a competing plan --

15           MR. ABRAMS:  Um-hum.

16           THE COURT:  -- or you were aligned with another group

17   that did, you might be making your pitch for why your plan is

18   better.  But the debtor is saying this is why my plan --

19           MR. ABRAMS:  Yeah.

20           THE COURT:  -- should work.  Now --

21           MR. ABRAMS:  Sure.

22           THE COURT:  -- the debtor has to acknowledge that Will

23   Abrams and anyone else who opposes the plan is free to oppose

24   it.  And you are free to tell the world or tell your

25   colleagues, who are the fellow fire victims in Santa Rosa and

PG&E Corp. and Pacific Gas and Electric Co.

1    Paradise and otherwise, why this is not a good deal.  But --

2        MR. ABRAMS:  Right.

3        THE COURT:  -- but that doesn't mean the debtor has to

4    make it your campaign speech.

5        MR. ABRAMS:  No, it's not --

6        THE COURT:  So --

7        MR. ABRAMS:  -- a campaign speech, Your Honor.

8        THE COURT:  -- so the issue, again, is what will help

9    the hypothetical voter make an informed decision?

10       MR. ABRAMS:  Yep.

11       THE COURT:  And it's beyond imaginative doubt that

12   everyone in Northern California knows the history of PG&E's

13   problems and how it relates to them.  And if there's one subset

14   of people that know it better than everyone else, it's the

15   people who lost their homes and their families and their

16   possessions --

17       MR. ABRAMS:  In --

18       THE COURT:  -- more than the people like me, who live

19   down here in San Francisco.  So --

20       MR. ABRAMS:  In some ways, Your Honor, I would just

21   say that, certainly, in a first-hand, visceral way, victims

22   like me understand that.  However, in a financial sense, given

23   that most of these victims have not been shareholders of PG&E

24   before, understanding the implications to their investment --

25   and call it a trust, call it a basket, whatever you want to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   call it -- this ties PG&E's structure and success to that of

2   victims and being able to rebuild their homes and their lives.

3           THE COURT:  But everything in the --

4           MR. ABRAMS:  And tying those things together --

5           THE COURT:  The whole disclosure statement says --

6           MR. ABRAMS:  -- is important to disclose.

7           THE COURT:  -- no one has to take stock.  I mean,

8   that's been --

9           MR. ABRAMS:  Yeah.  So this is what, unfortunately, I

10  think it does, is it says, don't worry, you don't have to hold

11  stock, we're going to put it in a trust.  Sounds good.  It will

12  have more restrictions than if you actually held the stock,

13  because we're going to make sure that you can't sell freely

14  your stock and have all of those things that a regular

15  shareholder would have.  But somehow, it's in your benefit.

16  And --

17          THE COURT:  No.  I --

18          MR. ABRAMS:  -- so I can go through on a --

19          THE COURT:  I'm going to cut you off again.

20          MR. ABRAMS:  Okay.

21          THE COURT:  This is not a plan that creditors, if it's

22  accepted, are all going to get shares of stock, which is what

23  happens in some cases.  We've spent a good part of today --

24          MR. ABRAMS:  Um-hum.

25          THE COURT:  -- and I'm sure many, many of the

(973)406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1    professionals and advisors have spent weeks and months putting

2    together the trust and the mechanisms for how you quantify the

3    claims and how --

4              MR. ABRAMS:  Um-hum.

5              THE COURT:  -- a check gets cut.  Ms. Green described

6    it this morning.

7              MR. ABRAMS:  Sure.

8              THE COURT:  She didn't say, at the end of the day,

9    you're going to get some shares.

10             MR. ABRAMS:  Um-hum.

11             THE COURT:  She said, you're going to get money.  And

12   it says it over and over again:  you don't have to take stock.

13             MR. ABRAMS:  Sure.

14             THE COURT:  So why would you want me to make the

15   disclosure more complicated by saying something that isn't

16   true?

17             MR. ABRAMS:  It's not more complicated; it's how it's

18   said.

19             THE COURT:  Okay.

20             MR. ABRAMS:  Maybe it will get a more clear, if I can,

21   please, just walk through my bullets.

22             THE COURT:  I've got it.

23             MR. ABRAMS:  You got --

24             THE COURT:  I've got it right here, in front of me.

25             MR. ABRAMS:  Great.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Um-hum.

2          MR. ABRAMS:  Thank you.

3          So the first three talk to what used to be called the

4    "Fire Victim Claims Resolution Procedure".  Now, apparently,

5    it's the "Victim Claim Plan Treatment Summary", but talk to

6    that.  So I think the first item there that needs to be

7    mentioned is that the trust agreement significantly limits the

8    ability of the trust manager --

9          THE COURT:  Wait.  Slow down.  Again --

10          MR. ABRAMS:  Sure.

11          THE COURT:  -- are you looking at the language on page

12    3 of your --

13          MR. ABRAMS:  So --

14          THE COURT:  -- objection, in the first bullet point?

15          MR. ABRAMS:  So we were asked to respond to the

16    original --

17          THE COURT:  Right.

18          MR. ABRAMS:  -- fire victims' claim.  So I neglected

19    to put a 5 there, but it's docket 5873.

20          THE COURT:  No, I -- no, I've got it.

21          MR. ABRAMS:  Okay.  So the trust agreement

22    significantly limits the ability of the trust manager to freely

23    manage the trust to the benefit of the victims.  The trust

24    agreement does not afford victims the same investor flexibility

25    of other shareholders, so will likely disadvantage the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   management of the trust, which is just a factual statement.

2          I, at the CPUC, asked Mr. Wells, the CFO, a lot of

3   these questions to inform some of this, and I can tell you that

4   it is their intention to make sure that there are limitations

5   to what can happen with the trusts and when shares can be sold,

6   how much can be sold at what time.  And those are limitations

7   that other shareholders do not have.  So we need to call that

8   out, I would say, in some way so that they understand that

9   there are limitations to the trust.

10         THE COURT:  Okay.  Stop there.

11         Mr. Karotkin, are the debtors willing to accept Mr.

12  Abrams' first proposal here?

13         MR. KAROTKIN:  No.

14         THE COURT:  And can you explain what's wrong with

15  doing it that way?

16         MR. KAROTKIN:  Because he's suggesting that it is

17  disadvantageous to the trust and the victims.  And in fact,

18  it's just the opposite, because if the trust tried to dump

19  twenty percent of the stock all at once, it would get killed.

20         THE COURT:  It would get killed, right.  But a

21  shareholder isn't subject to any of the trust rules.  If I'm a

22  shareholder, I can do what I want.  I can keep it or sell it;

23  that's my choice.  And I think what Mr. Abrams is saying is

24  that the trust --

25         MR. KAROTKIN:  But, Your Honor, the plan doesn't

PG&E Corp. and Pacific Gas and Electric Co.

1  provide for shares going to shareholders, so it's irrelevant

2  for disclosure purposes.

3          THE COURT:  How about the plan -- but some

4  shareholders keep their shares, right?

5          MR. KAROTKIN:  The existing shareholders retain their

6  interest.

7          THE COURT:  Right.

8          MR. KAROTKIN:  It has nothing to do with the treatment

9  of the fire victims.

10          THE COURT:  No, no, I understand.  But what I'm saying

11  is, at the end of the day, when the plan is effective and these

12  shares will be in the trust, and they will be treated

13  differently from shares that are held by a preexisting

14  shareholder who's free to do whatever he or she wants to do out

15  there in the marketplace.

16          MR. ABRAMS:  Yes.

17          MR. KAROTKIN:  Not necessarily.  There may be some

18  restrictions on other shareholders -- big shareholders as well.

19          THE COURT:  Well, but there's nothing in the plan that

20  does that, right?

21          MR. KAROTKIN:  Not yet.

22          THE COURT:  Okay.  Well, what -- I'm not sure what

23  that means.

24          MR. KAROTKIN:  I think that putting that disclosure,

25  Your Honor, is really misleading.

of 282
(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Yeah.  Well, that's really where I'm

2  leaning.

3    Mr. Abrams, I'm going to take Mr. Karotkin's view on

4  this and say, I think it's more confusing than anything else,

5  because I think it's too abstract in the sense that, sure,

6  if -- when the trust is in place and the trustee is in office,

7  and the trustee is holding twenty percent of the stock --

8    MR. ABRAMS:  Right.

9    THE COURT:  -- there are rules that will govern what

10  the trustee and his professionals will be doing.  But that goes

11  just with the nature of the relationship that's been agreed

12  upon.  And I don't think it's particularly helpful to make the

13  kind of statement you made.  And again --

14    MR. ABRAMS:  If --

15    THE COURT:  -- this is not a perfect system.

16    MR. ABRAMS:  Sure.

17    THE COURT:  You are free, as a citizen and as a

18  person, to express your views, but I'm not going to require

19  the --

20    MR. ABRAMS:  Okay.

21    THE COURT:  -- claims in the disclosure.

22    MR. ABRAMS:  If I can just illustrate it really --

23    THE COURT:  No.  Let's just go to the next --

24    MR. ABRAMS:  Okay.

25    THE COURT:  I've made my decision on the first point.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. ABRAMS:  Sure.  Thank you, Your Honor.

2        On the second bullet in the fire victims' claims-

3   resolution procedure, I believe the following statement needs

4   to be added.  If an attorney inadvertently solicited your

5   approval to waive your vote prior to finalizing the proposed

6   plan or soliciting your vote prior to plan approval, you still

7   have the right to change your vote now that the proposed plan

8   has been prepared for a vote.

9        And this is in direct response, Your Honor, to

10  attorneys going out there earlier to solicit votes to have

11  victims waive their vote.

12       THE COURT:  But there's no evidence that anybody has

13  solicited votes.

14       MR. ABRAMS:  There absolutely is, Your Honor.

15       THE COURT:  Well -- but not in big --

16       MR. ABRAMS:  I have been communicated --

17       THE COURT:  Well, there are remedies for that.

18  There's no -- there's been no approval of any solicitation

19  process.

20       MR. ABRAMS:  So --

21       THE COURT:  I'm just --

22       MR. ABRAMS:  -- I know for a fact -- I mean, Your

23  Honor, I know for a fact that there's been multiple incidences

24  where attorneys have gone out in whole cloth soliciting votes,

25  asking folks to waive --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Well, soliciting votes or soliciting

2     clients, to let them represent them?

3          MR. ABRAMS:  Soliciting, saying vote yes now because

4     folks are trying to take it away from you, or waive your vote,

5     let us do it ahead of schedule.  And those things are

6     occurring, so I think it would just be a prudent thing.  If it

7     hadn't occurred, then putting it in the disclosure statement,

8     for those attorneys that didn't do that, it shouldn't matter.

9          THE COURT:  Mr. Karotkin, your thought?

10         And I'd like to hear from the committee on this also.

11         MR. KAROTKIN:  Your Honor, as you know, there is no

12    evidence in the record of this.  I think it's confusing.  I

13    mean, if we want to have a telephone book, Mr. Abrams will make

14    sure we have a telephone book.

15         THE COURT:  No, let's take --

16         MR. KAROTKIN:  And this is really not relevant.

17         THE COURT:  Let's focus on this specific thing.  I

18    mean, the fact of the matter is, among the many, many letters

19    that I've gotten -- and therefore I'm sure that the TCC's

20    counsel have gotten them -- is people that are complaining

21    about percentage of fees for attorneys and attorneys not being

22    responsive and so on.  I don't know that it's my place to start

23    interfering with the relationship between an attorney and a

24    client here.

25         Ms. Green, or whoever wants to speak for the TC --

(970) 503-7800   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MS. GREEN:  Your Honor, we don't have any evidence
2  that there's been solicitation that has taken place.  And as
3  you know, there is a remedy for that under the Bankruptcy Code
4  if there is premature solicitation.  There has been no ballot
5  out there, so --
6    THE COURT:  But what about Mr. Abrams' proposed
7  language?  Is there a downside that you see, a confusion?
8    MS. GREEN:  I think it's a little unclear, because
9  nobody's really been asked to vote, and it's saying that they
10  have been.  So --
11    THE COURT:  Yeah.
12    MR. ABRAMS:  As a remedy --
13    MS. GREEN:  -- it could cause more confusion, maybe,
14  than it remedies.
15    THE COURT:  Mr. Abrams, I'm going to, again, to move
16  along, I'm not going to agree with you on this one, although I
17  will simply state that -- and you can do with it what you
18  will -- if an attorney has -- or a nonattorney -- has contacted
19  you or any other fire victim and said give me your vote, that,
20  in and of itself, is improper and unauthorized, because every
21  draft of the disclosure statement plainly says that this -- the
22  Court has to approve the disclosure before there can be
23  solicitation.
24    So if there's been improper conduct by an attorney,
25  there are remedies under state bar laws, maybe under the

PG&E Corp. and Pacific Gas and Electric Co.

1    Bankruptcy Code.  But I -- although you have a good motive

2    here, if there's been mischief, I'm afraid that this is

3    invitation for more mischief.  And I'm just not -- I'm not

4    going to -- I don't think it's proper for a disclosure.  Let me

5    state it again.  Disclosure is to give the affected parties a

6    choice to vote up or down on a plan --

7              MR. ABRAMS:  Um-hum.

8              THE COURT:  -- not how to take care of any conduct

9    that they might be victims of by mischief by attorneys or

10   nonattorneys --

11             MR. ABRAMS:  Okay.

12             THE COURT:  -- let's say.  I don't want to make this

13   an attorney comment.

14             MR. ABRAMS:  Sure.

15             THE COURT:  There could be -- there could be

16   nonattorneys who are out there ---

17             MR. ABRAMS:  Um-hum.

18             THE COURT:  -- hustling people to get their claims.

19   And they're, assign me your claim, assign me your vote, let me

20   vote for you, give me a power of attorney, let me have a fee.

21   Any variety.  The imagination of people is unlimited when it

22   comes time to figure out a way to get money.  And for our

23   purposes, it's not appropriate for here.

24             So let's go to the next one.

25             MR. ABRAMS:  Okay.  Related to the prior statement,

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    Your Honor, I'm looking to have it added that -- a one line

2    that says, accordingly, the fire victim claim trust is

3    associated with significant financial risk.

4         THE COURT:  But that doesn't tell us what that means.

5    See, that doesn't answer the question of the disclosure that

6    I'm about to approve that says you don't have to take stock.

7    Look --

8         MS. GREEN:  Your Honor, can I comment on that?

9         THE COURT:  Yes.

10        MS. GREEN:  The TCC had significant comments to the

11   disclosure statement, starting on page 33 of the redline, that

12   says -- talks about certain significant benefits and then

13   potential detriments, including change in value of the stock

14   being held in the trust, potential admin claims, cash payments

15   after the effective date, tax benefit payments, et cetera.  So

16   I think that most of these issues have already been added to

17   the plan.

18        THE COURT:  Did you see the changes that she referred

19   to?

20        MR. ABRAMS:  I did, Your Honor.  In fairness, I

21   believe that that downplays the risks, and I think that, as I

22   raised in earlier motions, my concern that streamlining is to

23   provide more of a one-sided disclosure that leads to plan

24   approval rather than showing both sides of the equation in

25   burying some of those disclosures well down below in the fine

(972) 503-3377 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    print towards the bottom of the disclosure.

2            But I'll move on.

3            THE COURT:  Okay.  The next one is aspirational, that

4    I could somehow magically agree with you that no lawyer can get

5    more than fourteen percent.  But I don't think I have any

6    authority to do that.  I just -- again, what I might want to

7    have, personally, for the benefit of fire victims isn't the

8    legal standard, so I cannot authorize or direct the debtor to

9    just make that kind of a statement without denying lots of

10   lawyers' due process, if not clients.  Clients have the right

11   to agree to pay their lawyers what they agreed to.  And there

12   may be -- so I just -- again, I can't fix the problem for you

13   here.

14           MR. ABRAMS:  Okay.  I'll skip the next bullet, Your

15   Honor.

16           THE COURT:  The next one seems to be a different

17   variation on what we've already said.

18           MR. ABRAMS:  Exactly, because it was repeated several

19   times --

20           THE COURT:  Um-hum.

21           MR. ABRAMS:  -- throughout the disclosure statement.

22   I feel it needs to be corrected, but I'll move on.

23           The next bullet is to call out how the trustee and

24   the -- specifically, what are the costs associated with the

25   management of the trust.  Given that those costs are going to

(971)  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    be coming out of the victims' settlement, I think it's

2    important to disclose those.

3         THE COURT:  But, Mr. Abrams, I almost agree with you,

4    except that you've tied two concepts.  If there was just a

5    statement of what the professional fees for the trustee would

6    be, that'd be one thing.  But you didn't say just that.  You

7    said, therefore, there will be no incentive to take -- will not

8    have financial incentives tied to the performance of the trust.

9    And I'm not in a position to start telling professionals who

10   are going to be appointed and who are taking on an enormous

11   responsibility for billions of dollars of claims to say, you're

12   not going to be -- you're not going to do your job because

13   you're in it for yourself or your hourly rate.  That's just

14   not -- that's just not appropriate, and --

15        MR. ABRAMS:  And, Your Honor, I wouldn't nec -- and I

16   agree.  I'm not calling that out.  What I am calling out that I

17   think it is a conflict, how much of a conflict.  If I'm being

18   paid over time, say, over a three-year period to manage the

19   stock, if there's an opportunity to sell it earlier and I have

20   to forego two years of payment --

21        THE COURT:  But he is -- they're being paid to manage

22   the trust --

23        MR. ABRAMS:  I understand.  As it --

24        THE COURT:  -- not just manage -- not just sell the

25   stock.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      MR. ABRAMS:  But if I wish to go to a different

2  investor who is investing my money, oftentimes, they're taking

3  a percentage so that they have an incentive.  They make money

4  when I make money --

5      THE COURT:  But this isn't --

6      MR. ABRAMS:  -- the same way the attorneys behind

7  me --

8      THE COURT:  But, Mr. Abrams, this isn't what we're --

9      MR. ABRAMS:  -- are making money based on the

10  settlement.

11      THE COURT:  -- this isn't what we're talking about.

12      MR. ABRAMS:  Okay.

13      THE COURT:  We're talking about two people who have

14  been picked out for their own qualifications who are taking on

15  a job that is almost immeasurably complicated.

16      MR. ABRAMS:  Um-hum.

17      THE COURT:  And if I thought they didn't have the

18  right motives or if the lawyers and the professionals on the

19  TCC didn't, I'd wonder why they'd even be doing it in the first

20  place.

21      MR. ABRAMS:  Well, there are differences of opinion.

22      THE COURT:  I know there are.

23      MR. ABRAMS:  Financial analysts --

24      THE COURT:  Yeah.

25      MR. ABRAMS:  -- are looking at this differently and

PG&E Corp. and Pacific Gas and Electric Co.

1    feel that this is not --

2            THE COURT:  But what I'm trying to tell you is --

3            MR. ABRAMS:  Um-hum.

4            THE COURT:  -- this isn't like hiring your own

5    financial analyst.

6            MR. ABRAMS:  Yes, it isn't, but --

7            THE COURT:  If you decided to invest in a --

8            MR. ABRAMS:  I agree.

9            THE COURT:  -- company, and you said -- you called up

10   Charles Schwab and said, give me your best analysts, I'll pay

11   them on a percentage basis, and I'll --

12           MR. ABRAMS:  Um-hum.

13           THE COURT:  -- share the profits with them, that's

14   fine, but this isn't what we're talking about.

15           So anyway, moving on.  I'm not going to --

16           MR. ABRAMS:  Okay.

17           THE COURT:  -- go with that.

18           MR. ABRAMS:  I'll move on.  I'll skip the next item.

19   I'm still unclear about what the one billion left from FEMA

20   and --

21           THE COURT:  Take --

22           MR. ABRAMS:  -- and how that will be --

23           THE COURT:  -- take free advice from me, from what I

24   heard.

25           MR. ABRAMS:  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  There's nobody messing around with your

2   thirteen and a half billion anymore.  That -- it's the federal

3   government or a state --

4          MR. ABRAMS:  Good.

5          THE COURT:  -- the OES.

6          MR. ABRAMS:  Good.

7          THE COURT:  There may be some smaller state claims,

8   and that's an enormous development as far as --

9          MR. ABRAMS:  Yes.

10          THE COURT:  -- I can tell.

11          MR. ABRAMS:  It is, Your Honor.

12          THE COURT:  Okay.

13          MR. ABRAMS:  I appreciate that.

14          THE COURT:  Okay.

15          MR. ABRAMS:  So moving on to the next bullet, on page

16   5, line 15 through 17, what I'm asking here, Your Honor, is to

17   add, the debtors have provided no evidence through this plan of

18   restructuring that they have reoriented their company to

19   provide safe and reliable service, nor have they tied their

20   bottom line financials to wildfire mitigation --

21          THE COURT:  But you --

22          MR. ABRAMS:  -- performance metrics.

23          THE COURT:  -- again, and I continue to interrupt you,

24   not to be rude but to move along.

25          MR. ABRAMS:  Um-hum.

(972) 982-6070 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  You want me to say to the lawyers for the

2    debtor -- kindly say that you haven't provided proof that your

3    plan is feasible.  And their job is to represent their clients

4    and get a plan that is feasible and is confirmable.  And I

5    don't then say, would you please say that what you've done

6    isn't going to accomplish what you say it's going to do.  You

7    have the right to challenge the plan and to say this plan is

8    not feasible, it shouldn't be approved.

9    MR. ABRAMS:  Yes, Your Honor.  And I put in an appeal

10   on the TCC RSA along those lines --

11   THE COURT:  Um-hum.

12   MR. ABRAMS:  -- but I think, given the fact that this

13   is moving at such a speedy pace, that those issues -- we

14   haven't discussed the business judgment rule.  We haven't

15   addressed feasibility, and we're writing a disclosure

16   statement.  So I think talking about those issues now, rather

17   than addressing them later, seems to me is a prudent

18   approach --

19   THE COURT:  You have --

20   MR. ABRAMS:  -- but I'll leave it at that.

21   THE COURT:  -- you have free right --

22   MR. ABRAMS:  Um-hum.

23   THE COURT:  -- to express yourself to your fellow

24   voters.

25   MR. ABRAMS:  Okay.

(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  But I'm not going to let it be your

2    platform to give your view --

3          MR. ABRAMS:  That's not why I'm here, Your Honor.

4          THE COURT:  Well, again, I'm not -- now, I don't mean

5    this as a personal insult or a criticism of you.  But it

6    doesn't belong in the disclosure statement.

7          MR. ABRAMS:  Okay.

8          THE COURT:  You did hear Mr. Karotkin and Mr. Bennett

9    agree with other counsel, where it's okay to put in contentions

10   a little bit.  But --

11         MR. ABRAMS:  Um-hum.

12         THE COURT:  -- but for this, it's much different.

13   So --

14         MR. ABRAMS:  Okay.

15         THE COURT:  -- let's move on with what's next.

16         MR. ABRAMS:  Okay.  I'll move on --

17         THE COURT:  And --

18         MR. ABRAMS:  -- to the next page, Your Honor.

19         THE COURT:  Okay.

20         MR. ABRAMS:  So on the next page, when we talk about

21   this wildfire fund, I think it's important to note that there

22   are no assurances that this wildfire fund will be sufficient to

23   support the debtors through another PG&E-caused wildfire.  I

24   think --

25         THE COURT:  Well, how about a somebody else-caused

PG&E Corp. and Pacific Gas and Electric Co.

1    wildfire?  What if there's another wildfire that's as terrible

2    as some of the ones that you went through with your family --

3            MR. ABRAMS:  Um-hum.

4            THE COURT:  -- in Paradise, but PG&E didn't cause it?

5    We still have the problem on whether the fund will be adequate

6    and what will happen, right?  Isn't that true?  Isn't that --

7            MR. ABRAMS:  Well, with all due respect, Your Honor,

8    there's a history with PG&E of starting wildfires.

9            THE COURT:  I know that.

10           MR. ABRAMS:  And so I think providing that -- and I

11   think that that would affect victims more, associated with this

12   bankruptcy, that it's PG&E --

13           THE COURT:  No, but you're --

14           MR. ABRAMS:  -- starting the wildfire.

15           THE COURT:  Mr. Abrams, your statement is that the

16   wildfire fund won't be sufficient.  And again, if I have to

17   make a finding that the company is likely to cause other, giant

18   wildfires that will be -- won't even be covered by the wildfire

19   fund, I probably won't approve the plan.  I've got to be

20   satisfied --

21           MR. ABRAMS:  Sure.

22           THE COURT:  -- from the evidence -- and again, I'll

23   use a corollary from other tests -- is it -- the company coming

24   out of reorganization more likely or less likely to do what it

25   says it's going to do?  There are no promises --

(971) 836-6258   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. ABRAMS:  Sure.

2          THE COURT:  -- and no assurances.  But if the

3   management of the company comes in this court and stands in the

4   witness stand and when asked if you think the plan can be

5   performed, and the CEO says, no, I don't think it can be

6   performed, it's going to be a very short hearing.

7          MR. ABRAMS:  Okay.  Well --

8          THE COURT:  Like, it will be over at that point.

9          MR. ABRAMS:  Okay.

10         THE COURT:  Okay?  So --

11         MR. ABRAMS:  Understood.

12         THE COURT:  -- I'm not going to do that here.

13         MR. ABRAMS:  I would say that perhaps a remedy to

14  that, even though the other utilities have markedly improved

15  their safety more than PG&E, is to cross out PG&E and just put

16  in utilities or investor-owned utilities or --

17         THE COURT:  But that's just a fact of life.  If we

18  have a continued dry spell, if we have another devastating

19  series of fires, regardless of whether it's caused by

20  negligence or act of somebody else, there are ramifications

21  that impact every citizen of Northern California and even

22  probably some in Southern California.

23         MR. ABRAMS:  Right.

24         THE COURT:  But it certainly will impact the wildfire

25  fund.

PG&E Corp. and Pacific Gas and Electric Co.

1    So no, let's go on down the line.

2    MR. ABRAMS:  Okay.  Moving on to the next bullet, Your

3 Honor, this plan will tether the financial interests for

4 victims to debtors.  These financial interests are inextricably

5 linked to the degree to which PG&E will be able to --

6    THE COURT:  Well, that --

7    MR. ABRAMS:  -- successfully mitigate risks.

8    THE COURT:  -- that really is more of the same.  And

9 again, it's the same view.  And I don't see a substantive

10 difference between that point and the prior ones.

11    MR. ABRAMS:  Understood, Your Honor.  Part of this is,

12 if we just say life happens, we might as well have a very short

13 disclosure statement that says life happens, things can go up,

14 things can go down, life happens, and that really doesn't paint

15 a real clear disclosure.  So I think describing both sides of

16 this, rather than one side, makes sense.  But I'll move on.

17    THE COURT:  Okay.

18    MR. ABRAMS:  The next bullet on page line 920 (sic):

19 The criminal convictions, neglected infrastructure, and lack of

20 measurable wildfire mitigation contributed to the PG&E entering

21 into Chapter 11.  These matters largely remain unresolved and

22 represent outstanding liabilities and risks that victims need

23 to consider.

24    THE COURT:  Mr. Karotkin, do you have a thought on

25 that point?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. KAROTKIN:  I think, Your Honor, the risk factors

2  that have been included in the plan are pretty extensive and

3  adequately explain the risk to the people voting on the plan.

4    Look, I think the whole purpose of Mr. Abrams'

5  submission is his campaign against this plan.

6    MR. ABRAMS:  No, it is not.

7    MR. KAROTKIN:  Yes, it is.

8    THE COURT:  Well, let him finish.

9    MR. KAROTKIN:  I think it is.

10    THE COURT:  Let him finish, Mr. Abrams.

11    MR. KAROTKIN:  So I think -- look, I think the

12  disclosure is more than adequate for people to make an informed

13  decision.  This is --

14    THE COURT:  Well, my question is --

15    MR. KAROTKIN:  -- this is historical.

16    THE COURT:  -- my question is, do you have an

17  objection to that sentence being inserted?

18    MR. KAROTKIN:  Yes, I do.  I don't think it adds

19  anything, and I think it's really his argumentative position to

20  sustain his position that he doesn't believe the plan should be

21  voted and approved.

22    MR. ABRAMS:  And, Your Honor, I object --

23    THE COURT:  Okay.

24    MR. ABRAMS:  -- to the fact that Mr. Karotkin is --

25    THE COURT:  Okay.  Okay.  Gentlemen.  Gentlemen.

escribers
(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  You're both being argumentative --

2       MR. ABRAMS:  -- is stating my --

3       THE COURT:  -- for now.

4       MR. ABRAMS:  -- motives for doing this, and I

5  assure ---

6       THE COURT:  Mr. Abrams, I --

7       MR. ABRAMS:  -- Your Honor that my motives here --

8       THE COURT:  -- Mr. Abrams, I --

9       MR. KAROTKIN:  -- are to make sure that it's safe.

10       THE COURT:  Mr. Abrams, I've asked Mr. Karotkin not to

11  be argumentative, and so --

12       MR. ABRAMS:  But he was.

13       THE COURT:  Well -- but I've asked him on to.  And

14  I -- but I don't think it's -- I don't think it's constructive

15  to insert that language.  Again, it's -- I don't think it

16  affects the decision-making.

17       Let me just take one second, though.  Maybe I'll agree

18  with you.  Let me just see where you want it.  That's page 9.

19  Is that the page 9 of 71 or --

20       MR. ABRAMS:  Page 9 of 20 was the --

21       THE COURT:  Well, which document are you looking at?

22       MR. ABRAMS:  That was the document that was --

23       THE COURT:  I think that's a prior version.

24       MR. ABRAMS:  -- that we were asked to respond to, Your

25  Honor, which is docket 5700.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      THE COURT:  Yeah.  Unfortunately, that's two drafts

2   prior.

3      MR. ABRAMS:  Well, I think that --

4      THE COURT:  Yeah.

5      MR. ABRAMS:  -- this line could be inserted in a

6   similar spot in the new --

7      THE COURT:  Let me --

8      MR. ABRAMS:  I'm happy to confer --

9      THE COURT:  Let me --

10     MR. ABRAMS:  -- with Mr. Karotkin after about an --

11     THE COURT:  No, that's okay.

12     MR. ABRAMS:  -- appropriate place to put it.

13     THE COURT:  I'll confer with both of you.  One second.

14     MR. KAROTKIN:  Let me just address it, Your Honor.

15   First of all --

16     THE COURT:  Well, wait.  Gentlemen --

17     MR. KAROTKIN:  -- the debtor --

18     THE COURT:  -- I just want to read something here on

19   my own here, and then I'll talk to you.

20     Okay.  Yes, Mr. Karotkin.

21     MR. KAROTKIN:  The debtors have explained in detail

22   the reasons why the Chapter 11 cases were commenced.  And the

23   fact of the matter is, we don't agree with the last sentence --

24   that's what he's really focused on -- that they're unresolved

25   and represent outstanding liabilities and risks that the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    victims need to consider.  I don't think that's an accurate

2    statement.  That's his view of things.

3            THE COURT:  Okay.  Hold on.

4            MR. KAROTKIN:  As you said, Your Honor, he's free to

5    say whatever he wants once this disclosure statement's approved

6    and rally fire victims in any way he chooses and that he thinks

7    is appropriate.

8            MR. ABRAMS:  That's not my intent, Your Honor.  My

9    intent --

10            THE COURT:  Okay.  Gentlemen, I can't multitask.  I

11    can't listen to you and read what I want to read, and so I'm

12    asking, wait one second, and I will give you a ruling on it.

13            Well, unfortunately, Mr. Abrams, you're looking at a

14    prior draft, and I'm looking at a current draft.  And at the

15    moment, I'm just not finding where to put it.  So I'm going to

16    stick with Mr. Karotkin's point of view and move on and not --

17            MR. ABRAMS:  All right.

18            THE COURT:  -- direct that that statement be in there.

19            So --

20            MR. ABRAMS:  Okay.

21            THE COURT:  -- let's go to the next one.  And I think

22    the next one seems to be very similar to the prior comment.

23            MR. ABRAMS:  Yeah.  I'll skip that one, Your Honor --

24            THE COURT:  Yeah, okay.

25            MR. ABRAMS:  -- for the interest of time.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          Moving on to the next bullet.  So adding the

2   statement, there can be no assurance that this wildfire fund

3   will be sufficient to support another PG&E-caused wildfire.

4   Victims will be further tethered to these wildfire risks

5   through the victim trust and will hold approximately twenty-one

6   percent of PCG shares.

7          THE COURT:  So that's -- again, it's not true.

8          MR. ABRAMS:  All right.  Oh --

9          THE COURT:  It's not true because --

10          MR. ABRAMS:  All right.

11          THE COURT:  -- there will be distributions.

12          MR. ABRAMS:  All the evidence --

13          THE COURT:  And now, again, it would be nice to know

14   exactly when they will be, but it's not true.  And the same

15   with the next thing.  You talk about tethered to the wildfire

16   risk through the trust.  Well, they won't be.  There will be

17   distributions when the trust agreement --

18          MR. ABRAMS:  So --

19          THE COURT:  -- when it's in place.  And you heard

20   earlier today Ms. Green explained there will be distributions.

21   So you'll be untethered as soon as the money starts a-flowing,

22   and it may well be that there are claimants, fire victims, who

23   will be paid --

24          MR. ABRAMS:  Um-hum.

25          THE COURT:  -- rather quickly.  And that will be the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   end of it for them.

2          MR. ABRAMS:  Yeah.  And if I'm a victim who is

3   rebuilding my home, Your Honor, and I'm halfway through, and

4   I'm saying, well, pretty soon, I should be able to get the

5   payout from those shares, yet I can't because of the trust

6   agreement rules that don't allow the shares to be sold, I would

7   say that my financial interests --

8          THE COURT:  But --

9          MR. ABRAMS:  -- of finishing the rebuilding of my home

10  are tethered --

11         THE COURT:  But you're talking about --

12         MR. ABRAMS:  -- to this trust.

13         THE COURT:  -- you're talking about a provision of a

14  trust that you're not even referring to.  So again, if --

15         MR. ABRAMS:  I --

16         THE COURT:  -- if somehow, it proves that the plan is

17  simply not feasible because there's no mechanism to get people

18  paid, I'll take that up as a confirmation issue.

19         MS. GREEN:  Your Honor --

20         MR. ABRAMS:  Okay.

21         MS. GREEN:  -- there is going to be a registration

22  rights agreement that's to be negotiated between the TCC and

23  the debtors, and it's contemplated in the disclosure statement.

24  So -- just so you know that.

25         THE COURT:  Yes, I was aware of that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MS. GREEN: Okay.

2          THE COURT: Okay. Mr. Abrams, keep going.

3          MR. ABRAMS: Sure. So I'm sorry, Your Honor, did you

4 react to the second from the bottom there, on page 13, line 13?

5          THE COURT: The one that's all caps?

6          MR. ABRAMS: Yes.

7          THE COURT: Well, I guess what I don't understand is

8 this.

9          MR. ABRAMS: Um-hum.

10         THE COURT: If the victims' trust is in place, and it

11 has thirteen and a half billion dollars in it, why does what

12 PG&E does going forward suffer some adverse penalties? Why

13 does that affect the trust?

14         MR. ABRAMS: Because those things affect the stock

15 price, Your Honor --

16         THE COURT: Well --

17         MR. ABRAMS: -- and the stock price --

18         THE COURT: -- then it affects --

19         MR. ABRAMS: -- affects the trust.

20         THE COURT: But that's -- what about all the cash

21 that's in the trust? And what about the stock --

22         MR. ABRAMS: But that's why I painted the picture of,

23 I'm halfway done with my home -- so let's say, in that

24 hypothetical, I've gotten half the money to build my house.

25 And so I'm halfway done, and I'm waiting for the other half.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  And what about the company, if it emerges,

2    and we don't have a virus scare and we don't have an

3    international oil crisis, and the market says, you know, PG&E

4    is out of bankruptcy, guess what?  The stock goes up.

5          MR. ABRAMS:  Um-hum.

6          THE COURT:  Is that a negative impact?

7          MR. ABRAMS:  I'm trying to describe the --

8          THE COURT:  Is that a bad tether?

9          MR. ABRAMS:  I'm trying to describe the reasonable

10   expectations given PG&E's history, and I think that those are

11   completely relevant to this.  And sure, life can happen, but I

12   think describing a pattern and a history and what we're

13   actually counting on for the second half of our home is

14   important to describe.

15         THE COURT:  Okay.  It's too far attenuated --

16         MR. ABRAMS:  Okay.

17         THE COURT:  -- for me to think that if there is a

18   determination, for example, that the Kincade Fire was caused by

19   PG&E, that somehow the trustees are going to be stuck and

20   you're locked into the value.  I have no way of knowing.  It

21   may be that you're right.

22         MR. ABRAMS:  Um-hum.

23         THE COURT:  It may be that you're wrong, but I don't

24   think I'm comfortable telling the debtor, you're going to have

25   to make that as part of your disclosure.

of 282   (973)  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          Again, we're back to the point where everyone,

2    including you, can express your views about that.  Look, these

3    guys caused another fire.  Look, these guys caused this problem

4    or that problem, or there's the CPUC fine, or Judge Alsup has

5    just done whatever he's done.  Those are all things that might

6    affect the stock but might not affect the stock.

7          MR. ABRAMS:  Well, and they're in the dis --

8          THE COURT:  We don't know.

9          MR. ABRAMS:  And a lot of these things are in the

10   disclosure statement; they're just completely disconnected.

11   It's as if it's unrelated to what victims need to be concerned

12   about when, unfortunately, they're very tied together.

13         THE COURT:  Okay.  I'm not going to insist on that

14   change.

15         MR. ABRAMS:  Okay.  So moving on to the last page,

16   Your Honor.

17         THE COURT:  And the other one that I didn't understand

18   at all, because you said it doesn't preclude the Tubbs Fire

19   victims from seeking criminal or civil actions, I mean, it

20   doesn't preclude anybody from seeking criminal remedies.  If

21   someone has a complaint to take to a district attorney or a

22   criminal prosecutor, no one says they can't.

23         MR. ABRAMS:  Right.

24         THE COURT:  But civil actions, they do.  So what do --

25         MR. ABRAMS:  So I'm just --

(971) 224-0098 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  -- what do you mean by that?

2    MR. ABRAMS:  So again, part of what I -- I feel like

3  my -- I'm trying to provide here is some ground truth to

4  disclosures, and I can tell you that there's a lot of confusion

5  out there associated with that settlement and what it means to

6  victims.  And does that mean that this is dismissed and can

7  never be looked at again?  And so I think it's important to

8  call out.

9    THE COURT:  But what if it's -- what if your statement

10  is incorrect?

11    MR. ABRAMS:  Well, then --

12    THE COURT:  Your --

13    MR. ABRAMS:  -- you can correct it, but --

14    THE COURT:  -- your statement says, "Approval of the

15  plan does not preclude" -- and skip the criminal --

16    MR. ABRAMS:  Um-hum.

17    THE COURT:  -- "other Tubbs victims from civil actions

18  against debtors."  It does.

19    MR. ABRAMS:  Okay.  So then --

20    THE COURT:  They're --

21    MR. ABRAMS:  -- that should be called out as well.

22    THE COURT:  But it's everywhere in this document.

23  It's not -- and I know that you and your family were a victim

24  of the Tubbs Fire --

25    MR. ABRAMS:  Um-hum.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  -- but it's not unique to Tubbs.  It's

2    every fire.  It's every claim that existed pre-bankruptcy --

3    MR. ABRAMS:  Yeah.

4    THE COURT:  -- civil, not criminal --

5    MR. ABRAMS:  Yeah.  I think that --

6    THE COURT:  -- civil -- is impacted by this.  And

7    that's what this plan is all about.

8    MR. ABRAMS:  I'm trying to clarify, Your Honor.  I

9    think that the difference is, is that the Tubbs Fire is

10   specifically called out that that case was dismissed.

11   THE COURT:  No.

12   MR. ABRAMS:  Okay.

13   THE COURT:  The reason why it was called out, Mr.

14   Abrams, is because I granted permission for a small number of

15   Tubbs Fire victims to go to trial --

16   MR. ABRAMS:  Yes.

17   THE COURT:  -- and that was one of the things, as you

18   well recall, that led to the settlement.

19   MR. ABRAMS:  Yes.

20   THE COURT:  Now, you weren't happy, perhaps, with the

21   way the RSA came out.

22   MR. ABRAMS:  Um-hum.

23   THE COURT:  But again, these things change every day.

24   Twenty-four hours ago, there was several billion dollars less

25   available, in theory, to the trust.  Now, there's more, if --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1     MR. ABRAMS:  Okay.

2     THE COURT:  -- assuming I approve that.

3     MR. ABRAMS:  Sure.

4     THE COURT:  So I'm not going to make this change here.

5     Let's go --

6     MR. ABRAMS:  Okay.

7     THE COURT:  Keep going.

8     MR. ABRAMS:  All right.  Next one, Your Honor, the ad

9     hoc committee of unsecured noteholders was --

10     THE COURT:  Yeah.  Actually, let me just read it with

11     you.  I mean, you don't have to read it again; I can read it

12     myself.

13     MR. ABRAMS:  So --

14     THE COURT:  Just tell --

15     MR. ABRAMS:  -- I'm concerned that --

16     THE COURT:  I guess I don't understand what you're

17     concerned about.

18     MR. ABRAMS:  I'm concerned, Your Honor, that, because

19     the noteholder RSA was agreed to after the TCC RSA, and in the

20     TCC RSA, it specifically called out that those types of issues

21     could not be discussed with -- amongst TCC attorneys and their

22     clients, that it's important to note this in the disclosure

23     statement that the implications of that -- because they are

24     also investors, and it affects the victims' trust -- that that

25     should be called out as an implication.  They've received asset

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  liens associated with this deal; victims did not.  They're the

2  only ones who didn't.

3          THE COURT:  What asset liens --

4          MR. ABRAMS:  And so --

5          THE COURT:  What asset liens are you referring to?

6          MR. ABRAMS:  As part of this that moved them from

7  being unsecured to being secured and dropping their plan was

8  they were able to get asset liens.  Just -- that's a factual

9  statement, and I think that that needs to be disclosed.

10          THE COURT:  Mr. Karotkin, is that a true statement?

11  Refresh my memory.  The first sentence that Mr. Abrams wanted.

12  I mean, asset lien, perhaps, is --

13          MR. KAROTKIN:  There was a -- there --

14          THE COURT:  -- not exactly correct.

15          MR. KAROTKIN:  There was a comprehensive settlement

16  approved by the Court with the noteholder -- with the

17  noteholders reflected in the noteholder RSA, which provides as

18  to how their claims will be treated under the plan.

19          THE COURT:  Right.

20          MR. KAROTKIN:  Some are reinstated.

21          THE COURT:  But there was a lien.  There's a --

22          MR. KAROTKIN:  Some claims get new --

23          THE COURT:  Some get secured --

24          MR. KAROTKIN:  -- securities --

25          THE COURT:  -- that's right.

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. KAROTKIN:  -- which will be secured.

2        THE COURT:  Right.  But it's all dependent upon

3   confirmation?

4        MR. KAROTKIN:  It's all dependent on confirmation,

5   yes.

6        THE COURT:  Right.

7        MR. KAROTKIN:  So I don't understand what's not

8   disclosed.  What's not --

9        THE COURT:  Okay.  Mr. Abrams, what is -- what would

10  be disclosed when this is already the case?  I mean, it is

11  true; I -- Mr. Karotkin reminded me --

12       MR. ABRAMS:  Um-hum.

13       THE COURT:  -- because I can't keep trap of all these

14  details --

15       MR. ABRAMS:  Sure.

16       THE COURT:  -- under the settlement with the

17  noteholders --

18       MR. ABRAMS:  Yes.

19       THE COURT:  -- and their RSA, there's a -- some

20  collateralization.

21       MR. ABRAMS:  Yes.

22       THE COURT:  What else is there to disclose about that?

23       MR. ABRAMS:  Well, that's an important disclosure,

24  because --

25       THE COURT:  But it's already in the document.  It's

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    already in the -- it's already in the document.  The RSA has

2    its own provisions.

3              MR. ABRAMS:  In --

4              THE COURT:  Right?

5              MR. ABRAMS:  -- this disclosure statement for victims,

6    that is not called out, and what I'm asking is that that be

7    called out for victims, because it's very important in

8    different ways.  If there's liquidation, that they are going to

9    get theirs before victims' stock is considered, I think it's

10   important to call out.  It's a fact associated with the plan,

11   and I think it's important to call out.

12             THE COURT:  Let me look on the existing disclosure

13   statement and look at the disclosure of the RSAs.

14             Page 19 of 71, "Debtor's Settle Plan Treatment with

15   Public Entities" -- no, that's not it.  Next one's several.

16   Next is page -- paragraph 10, "Debtor's Settle Plan Treatment

17   with Fire Victims' Claims and Enter into Tort" -- no, next one.

18   11:  "Settle with Ad Hoc Noteholders' Committee and Enter into

19   Noteholder RSA."

20             So what would you have me do to --

21             MR. ABRAMS:  I would -- what I'm suggesting, Your

22   Honor, is that this statement here, on line 4, be added to the

23   document so that that is clear to victims.

24             THE COURT:  Okay.  Mr. Karotkin, make a change to

25   paragraph 11, on page 20 of 71, so as to put a parenthetical --

(97 $\emptyset \emptyset$ 28 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   I'll let you draft it -- but -- so that, one, has the

2   noteholders withdrawing their plan; two, suspending their

3   reconsideration, et cetera.  Add one that, perhaps, would be a

4   new 4 with the old 4 being 5 to say, and a portion of their

5   debt was provided with security, and just something -- I don't

6   need a great detail.  It's just a fact.  It's just a fact

7   that's in the RSA, and if we went back and dug through the RSA,

8   it would be there and clear as can be.

9          Right?  I mean, you don't have to agree with me, but

10  yet that's a fact, isn't it?  He just reminded me that's a

11  fact.

12         MR. KAROTKIN:  Yes.

13         THE COURT:  Yeah.  All right.  So that -- Mr. Abrams,

14  there'll be a provision like that.  In the interest of time,

15  however, I'm not going to -- I'm just directing Mr. Karotkin to

16  make sure words to that effect -- and let him phrase it -- but

17  that there was a securitization of a portion of the debt -- I

18  mean, it's a grant of security for a portion of the claim of

19  the noteholders' R- -- excuse me, noteholders that's disclosed.

20  And leave it at that.  And I'll --

21         MR. ABRAMS:  Okay.

22         THE COURT:  -- expect that he'll put that in there

23  when I announce to approve this.

24         MR. ABRAMS:  Okay.

25         THE COURT:  Okay?

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. ABRAMS:  Thank you, Your Honor.

2          On the next line, I'm asking that the statement be

3     struck in relation to the PSPS.

4          THE COURT:  And why?

5          MR. ABRAMS:  Because it's an outstanding liability,

6     and I do not agree that --

7          THE COURT:  Well, you heard the --

8          MR. ABRAMS:  -- this is not a risk.

9          THE COURT:  -- you heard the argument today.  I'm

10    going to make a ruling soon, and I'll either throw the PSPS

11    lawsuit out, or it'll stay alive.  So what -- the debtors are

12    certainly entitled to assert that they don't think there's any

13    merit to that claim.  They made the argument this afternoon.

14    They said, we don't think there's any merit.  And I don't --

15         MR. ABRAMS:  I --

16         THE COURT:  -- I don't rule because they said that.  I

17    rule if I make that determination.  So if I toss the PSPS

18    lawsuit, it's because I didn't determine -- I determined it

19    didn't have any merit.  But the debtors are entitled to express

20    themselves.

21         MR. ABRAMS:  Right.  And where that goes from here in

22    terms of others that seek further class action around that, who

23    knows.  But I think it's important --

24         THE COURT:  Well, some experienced lawyers look to see

25    how a judge rules on something and anticipates that maybe the

PG&E Corp. and Pacific Gas and Electric Co.

1    judge will rule --

2        MR. ABRAMS:  Yeah.

3        THE COURT:  -- the same way on a similar matter.

4    Sometimes the judges fool them and go a different way.

5        MR. ABRAMS:  Okay.  And I was --

6        THE COURT:  Anyway, I'm not going to --

7        MR. ABRAMS:  -- just suggesting it be disclosed.

8        THE COURT:  -- I'm -- that doesn't add anything.

9        MR. ABRAMS:  Okay.

10       THE COURT:  The debtor has disclosed the presence of

11   it.  The fact of the matter is, if I make a quick ruling that's

12   favorable to the debtor, it'll -- it is what it is.  If I make

13   it unfavorable to the debtor, they'll just have to deal with

14   it.  And it's one of those things that, frankly, if you are

15   interested in PG&E's wellbeing, you'll hope that they win that

16   lawsuit.  If you're interested in punishing them or beating

17   them up for mischief, then you'll support the plaintiffs.

18       I don't -- it doesn't matter.  Your position is what

19   it is.

20       MR. ABRAMS:  I am interested in them providing safe

21   and reliable service.  It doesn't necessarily --

22       THE COURT:  Right.

23       MR. ABRAMS:  -- mean that fewer PSPSs or --

24       THE COURT:  Okay.  Next.

25       MR. ABRAMS:  -- more PSPSs lead to that.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    Moving on to the next --

2    THE COURT:  That's just a repeat of the same thing you

3    had before, about if the -- comparing the rights of other

4    shareholders compared in the trust.  I think that's more of the

5    same.  I've already dealt with that.

6    MR. ABRAMS:  Okay.

7    THE COURT:  Financial incentives, I've already talked

8    about that.  I'm not going to revisit that.

9    And -- okay.  Your last comment is, because there's

10   going to be fifty percent of the consideration to the trust's

11   stock, the degree to which victims will be made whole will be

12   left unresolved.  Well --

13   MR. ABRAMS:  Yes.

14   THE COURT:  -- will it?  Well, isn't that a matter of

15   proof?  Again, what do I if the stock goes up?  Take it back?

16   I mean, it is what it is, and the AB 1054 says what it says.

17   The negotiated settlement says what the fund must be.  And if,

18   at the day of the hearing on confirmation, Mr. Karotkin says,

19   you know what, we don't have 15- -- 13.5 billion, we're a

20   couple of billion short, you know what I'll say?  I'll say,

21   then your plan isn't confirmed.

22   MR. ABRAMS:  Well --

23   THE COURT:  So --

24   MR. ABRAMS:  -- I just don't see any evidence to that.

25   At least all the reports that I have looked at, in terms of

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    financial projections about what's going to occur, it doesn't

2    see that happening.  But --

3              THE COURT:  But that's, again, a proof.  The burden is

4    on the debtors and the shareholders to prove to me, over --

5    even in the absence of objections, that they can do what they

6    say they can do, that they're not likely to back into

7    bankruptcy again.

8              Now, we can't now and sit here in this courtroom and

9    say there won't be another horrible fire --

10             MR. ABRAMS:  Um-hum.

11             THE COURT:  -- next week or next month or next year.

12   But the evidence will be necessary for me to make a finding

13   that the plan is feasible and not likely to be followed by

14   further reorganization --

15             MR. ABRAMS:  Yeah.

16             THE COURT:  -- needs under the Bankruptcy Code.

17             MR. ABRAMS:  Yes, Your Honor.  This is my larger

18   objection to this, is that I think the TCC and the debtors are

19   largely writing a disclosure statement on what they would like

20   the eventual plan to be and are expecting it to be in a

21   positive sense.  And I think that that only provides a one-

22   sided view.  And I think there needs to be not things go up and

23   down, life happens, but a real -- just as they're describing

24   the positive things of what could happen, is a real analysis of

25   what those negative things are, a real analysis of

PG&E Corp. and Pacific Gas and Electric Co.

1  liquidation --

2          THE COURT:  I --

3          MR. ABRAMS:  -- a real analysis --

4          THE COURT:  Mr. Abrams --

5          MR. ABRAMS:  -- of those things.  And I don't know why

6  that is not reasonable or prudent to put in the disclosure

7  statement.

8          THE COURT:  Because it's not what belongs in a

9  disclosure statement.

10          MR. ABRAMS:  Okay.

11          THE COURT:  The point of a plan has a

12  responsibility -- lawyers, as officers of the Court, have a

13  responsibility -- not to me, personally, but to the

14  institution -- to present plans that are feasible and legally

15  permissible and in good faith, that each lawyer who supports it

16  has to have a belief that he or she can get that result at the

17  start of it.

18          So that's a predicate to begin with.  And if somebody

19  comes in and says, I'm going to file a plan that will pay my

20  creditors because I intend to win the lottery next week, that

21  would not pass muster.  So inherent in this is a good-faith

22  belief by the proponents, not only the lawyers but the clients

23  that are taking their advice and signing the document, that

24  this is doable.  Every opponent, whether it's you,

25  individually, or a creditor group, or a United States trustee,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  or anyone --

2          MR. ABRAMS:  Um-hum.

3          THE COURT:  -- who wants to take issue with that is

4  allowed to do so, and challenge it.

5          And you are allowed to challenge it.  But you

6  challenge it by your case, not by saying, well, there's another

7  alternative here.

8          MR. ABRAMS:  Right.  And I'm happy -- Your Honor, part

9  of this is -- I put these things out here, and I'm happy to

10 make the case as to why these things need to be included, why

11 PG&E hasn't done the things that they need to do in a plan of

12 reorganization to reorient to company.  I'm happy to make an

13 argument associated with the victims' trust and why I don't

14 think it's a good financial path forward.

15         I'm happy to make those arguments, but if the

16 disclosure statement is done, I'm not quite sure where those

17 things land, because --

18         THE COURT:  But I'm sure where they land.

19         MR. ABRAMS:  Okay.

20         THE COURT:  I'm happy that you're making the argument.

21 I'm not faulting you for making the argument.  I'm trying to

22 explain to you my view of the function of the disclosure

23 statement and your options.  And your options, some of them are

24 unrealistic.  I don't expect you could fund a plan yourself.

25 But you have the option, as Mr. Karotkin repeated, and I've

PG&E Corp. and Pacific Gas and Electric Co.

1   repeated, of lobbying against this plan, because -- if you

2   think it's the wrong result.

3           And if you carry that ball and persuade the voters to

4   vote it down, it's like voting your candidate in an election.

5   If --

6           MR. ABRAMS:  But --

7           THE COURT:  -- your guy wins and the other guy loses,

8   that's what you wanted.

9           MR. ABRAMS:  But I don't see how that could happen

10  given the fact that this disclosure statement is where it is,

11  because someone will turn to it and say, well, that's not what

12  this says.  And second of all, given the TCC RSA and that it

13  ties the hands and binds the lips of the TCC attorneys, as I

14  could reference in the CPUC proceedings, where there was

15  executive-after-executive in PG&E, and the TCC asked no

16  questions.  The reason for that is the TCC RSA, because they

17  knew they could not open their mouths.

18          The same thing holds true with how this plan is moving

19  forward, and I'm very concerned about that.  And we can ignore

20  the evidence that is in the TCC RSA or how they were conducted

21  in the CPUC, but I don't think that that would be a prudent

22  path.

23          THE COURT:  Okay.  I understand, and I understand

24  you --

25          MR. ABRAMS:  Okay.

(970) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  -- may have a different opinion.

2          Mr. Karotkin, I have received something that isn't on

3     your list.  I received two filings by Ginn Dose -- Doose.

4          Is Ms. [Doos] or [Dose] either in court or on the

5     phone?

6          Did you see the document that she filed?

7          MR. KAROTKIN:  No, I did not.

8          THE COURT:  Well, it was a little confusing because

9     she used -- she expressed her views about something, but she

10    did it showing your law firm and --

11         MR. KAROTKIN:  Oh.

12         THE COURT:  -- Keller & Benvenutti's heading.

13         MR. KAROTKIN:  Oh, actually, I think I did see that.

14         THE COURT:  But she filed it twice.  Well, I'm giving

15    her the opportunity -- if she were here in court or on the

16    phone, I would let her be heard.  She filed what she called a

17    response, and she makes a number of observations.  I have

18    reviewed them carefully, and I've decided that she's not

19    entitled to any relief today.  And if she's entitled to some

20    relief at some point in the future, that's for another day.

21    But her submission is not relevant to the question of whether

22    the disclosure statement should be approved.

23         So you're down to me, unless you have something more

24    to go for --

25         MR. KAROTKIN:  No.  No, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MS. GREEN:  Your Honor, I have one thing.

2          THE COURT:  Yes, Ms. Green.

3          MS. GREEN:  The --

4          THE COURT:  Yeah, go ahead.

5          MS. GREEN:  We've been discussing -- the TCC's been

6    discussing the subros, certain data that they are going to

7    provide to the TCC so that we'll be able to value the claims

8    and have that information that the insurance companies have.

9    That will either be included in the disclosure statement or in

10   a separate document, and so I just wanted to make sure that the

11   Court knew that.

12         THE COURT:  Okay.  Got it.

13         So -- wait, someone's standing up in the back.

14         MR. PITRE:  If I could, Your Honor?

15         THE COURT:  Yes, sir.  Yes.

16         MR. PITRE:  Very brief, because I know it's been a

17   long day for this Court.

18         But I just couldn't let a comment --

19         THE COURT:  It's another day at the office.

20         Just state your appearance.

21         MR. PITRE:  Thank you, Your Honor.  Your Honor, Frank

22   Pitre, appearing on behalf of various plaintiffs.

23         The only reason I'm here is because there was a

24   statement that was made by Mr. Abrams about lawyers for victims

25   being tongue-tied and not being able to tell the truth to their

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1    clients about concerns that might be raised.  I want the public

2    to know, I want this Court to know that all the lawyers who

3    represent victims have an ethical responsibility to tell the

4    truth and to make sure that their clients are properly educated

5    as to the matters that are going to go out on this disclosure

6    statement.

7            Nobody's voice is tied.  Nobody's hands are tied.  We

8    have a responsibility to tell the truth and will do so.  Thank

9    you, Your Honor.

10           THE COURT:  Thank you, Mr. Pitre.

11           Mr. Karotkin, I really have just a few points to make.

12   So do you want me to go through them now, or do you want to

13   talk about scheduling, or where -- where do we go from here?

14           MR. KAROTKIN:  Why don't you go through your points,

15   and then we can talk about scheduling?

16           THE COURT:  The -- I'm looking at the motion itself,

17   the motion for approval of the form and manner of notice.  Let

18   me look to -- well, okay.  Actually, one of my first comments

19   had to do with the one-dollar vote issue, and that's been

20   resolved.  So --

21           MR. KAROTKIN:  I'm sorry; are you looking at the

22   motion or the proposed order?

23           THE COURT:  No.  I'm -- no, I told you before, I never

24   have gotten to the proposed order --

25           MR. KAROTKIN:  Okay.

PG&E Corp. and Pacific Gas and Electric Co.

1  THE COURT:  -- now, and the motion, which is doc 5835

2  that you filed on February 19th.  But I -- my first comment has

3  been mooted because I was raising the question of the one-

4  dollar vote.

5  And -- yeah, it's -- just bear with me, because --

6  MR. KAROTKIN:  Sure.

7  THE COURT:  -- we've covered so much today.  Yeah,

8  well, I had some comments about some of these other cases.  But

9  I've -- you and the other parties have resolved the issue.  So

10  it's not something I want to talk to you about.

11  Yeah.  On page 21 of 36 --

12  MR. KAROTKIN:  Yes.

13  THE COURT:  -- there is a reference to -- under the --

14  in reference to the fire victims' solicitation procedures and

15  the solicitation directive, Exhibit B -- and I don't think

16  that's made it to me.  I don't think.  And I -- because Exhibit

17  B -- oh, you know what?

18  MR. KAROTKIN:  That --

19  THE COURT:  Give me one second.  Maybe I mis --

20  MR. KAROTKIN:  That document has already, in fact,

21  gone out to all of the attorneys in order to --

22  THE COURT:  Well, let me -- oh, okay.  Okay.  Just

23  bear with me.

24  You know what happened?  I saw a reference to two

25  documents, and one was the notice, and one was the directive.

eScribers
(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. KAROTKIN:  Um-hum.

2          THE COURT:  And I looked at your hard copies, and I

3   saw Exhibit B notice.  And I just didn't see -- I thought I was

4   missing the directive.  No, I see it.

5          So my question for you was, what was the return rate

6   by the March 3rd deadline?  Was -- can you just give a --

7          MR. KAROTKIN:  Yes.

8          THE COURT:  -- an update on what happened?

9          MR. KAROTKIN:  Over 200 out of 239 have been returned.

10         THE COURT:  200 returned?  So --

11         MR. KAROTKIN:  Out of 239 sent.

12         THE COURT:  And so that's what you were hoping for.

13         MR. KAROTKIN:  Yes.

14         THE COURT:  A high --

15         MR. KAROTKIN:  A high turnout, yes.

16         THE COURT:  -- a high return.  Okay.  No, that's --

17  it's good to know that.

18         Okay.  One second.

19         Well, there'll obviously be some conforming changes on

20  things we've talked about today.

21         MR. KAROTKIN:  Yes.

22         THE COURT:  No, I had a -- I had some questions about

23  the balloting.  Well, no, we're going to come back to the

24  question of the release and the exculpation.

25         So now I'm going to go to the confirmation hearing

PG&E Corp. and Pacific Gas and Electric Co.

1  notice, which was the third -- or Exhibit E that you prepared.

2       MR. KAROTKIN:  Just bear --

3       THE COURT:  And --

4       MR. KAROTKIN:  Can you bear with me a minute?

5       THE COURT:  Confirmation hearing notice was Exhibit E

6  to the motion.

7       MR. KAROTKIN:  Okay, wait.

8       THE COURT:  It's doc 58355.

9       (Counsel confer.)

10      MR. KAROTKIN:  Okay.  I have it.

11      THE COURT:  Oh, this was a very minor point.  No,

12  never mind.  I'll let you off the hook on minor points.  You

13  let me off; I'll let you off.

14      Page 11, the channeling injunction.  The channeling

15  injunction, again, that's a bigger question.  It's a very

16  narrow point, and that is that it affects and enjoins

17  recoupment of any type.  I mean, there may not be any, but I'm

18  not sure that recoupment can be -- is subject to the automatic

19  stay.  The question is, would a -- wouldn't a creditor have a

20  right of recoupment if it existed under applicable

21  nonbankruptcy law?  And that can't be impacted -- I mean, it's

22  such a -- it's a narrow concept, but it's still a concept

23  that's well established in the law.

24      MR. KAROTKIN:  I think that -- I don't know the

25  answer, sitting here.  I think that that can be reserved for

PG&E Corp. and Pacific Gas and Electric Co.

1    confirmation.

2         THE COURT:  Well, let's not even reserve it for

3    anything until somebody raises it.

4         MR. KAROTKIN:  That's fine.

5         THE COURT:  I'm just --

6         MR. KAROTKIN:  Okay.

7         THE COURT:  I'm just thinking out loud about it.

8    There are a lot of fish to fry with the injunction and the

9    exculpation of releases.

10        Okay.  Now, I want to go to the master ballots.  Yeah,

11   I think back to our discussions at prior hearings about making

12   things simple for people for whom it should be simple.  And I

13   don't mind -- I don't want to make an improper statement to

14   think that fire victims can't understand things any more than

15   the rest of us.  But it seem --

16        MR. KAROTKIN:  Just so you know, Your Honor, we have

17   reviewed this at length with the TCC.

18        THE COURT:  It just seems like there's far too much

19   information in there.  Like, it almost is so repetitive

20   about -- why is it necessary -- when you think about a

21   ballot -- a traditional ballot, you've read your voter's

22   pamphlet, and you've listened to campaign speeches.  And you go

23   in the booth, and you vote for your candidate.  And it takes

24   hours to understand this ballot.

25        So maybe I'm asking the question for Ms. Green or

(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    anyone else.  Why is --

2            MR. KAROTKIN:  The fire --

3            THE COURT:  -- there is a sense that --

4            MR. KAROTKIN:  -- victims, Your Honor, do not get the

5    master ballot.  That goes to the attorneys.

6            THE COURT:  But even -- okay.  On -- the master

7    ballot?

8            MR. KAROTKIN:  Correct.

9            THE COURT:  The master ballot goes to the people like

10   Mr. Pitre --

11           MR. KAROTKIN:  Correct.

12           THE COURT:  -- and his group?

13           MR. KAROTKIN:  Yes.

14           THE COURT:  Okay.  But -- all right, fair enough.

15           Let's go over to the individual ballot now.  And I

16   appreciate the complexity of the need to use the master ballot

17   process.  And I have no dispute with it.  But even the direct

18   fire claim ballot, does it -- well, why does it need to be five

19   pages long?

20           MR. KAROTKIN:  Because --

21           THE COURT:  Why can't it be just either vote yes or

22   no?

23           MR. KAROTKIN:  Because, for purposes of the releases,

24   we're required to set forth the amount, all of that detail.

25           THE COURT:  Well, I --

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net
of 282

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. KAROTKIN:  I think it's pretty --

2        THE COURT:  -- I realize --

3        MR. KAROTKIN:  -- straight for --

4        THE COURT:  -- you've been telling me it has to be

5   there, but I still don't know why it has to be there.

6        MR. KAROTKIN:  Well --

7        THE COURT:  Ms. Green, why does it need to be there?

8      (Counsel confer.)

9        THE COURT:  We've got a seventy-page disclosure

10  statement.

11       MS. GREEN:  Yeah, it's the releases that are attached.

12       THE COURT:  A seventy-page disclosure statement that

13  maybe you people will read and maybe won't.  And the fire

14  victim -- on the fifth pa -- the ninth page is where you vote.

15  And -- or maybe it's not 9.  Maybe I'm miscounting the pages.

16  Why is it -- just a -- I want a broad question.  I mean, why

17  can't we have a simple ballot?

18     (Counsel confer.)

19       MS. GREEN:  Your Honor, I think it's an attempt to

20  have the releases outlined so that the party knows that they're

21  opting into the release, what the release is.

22       THE COURT:  What are they releasing?  If they're

23  not -- if they're not -- if they're just victims, they don't

24  have any insurance.

25       MR. KAROTKIN:  Can I point something out?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT: Who are they releasing? Well, let me

2  get -- maybe --

3    MR. KAROTKIN: No?

4    THE COURT: Maybe I'm forgetting something. We had a

5  lot of discussion about the make-wholes and releases. If Mr. X

6  is a fire victim who had no insurance -- he lost his car, or he

7  lost his home, or he lost his spouse, but he has no insurance,

8  what's he releasing?

9    MR. KAROTKIN: But, Your Honor, we don't individually

10 know who has insurance or who doesn't have insurance when we

11 send these forms out. And I'd also point out that, if you look

12 at the first page of the direct fire claim form, it has

13 brackets. These will be tailored appropriately. This is a

14 form. It's not go -- this exact form will not go -- you see

15 the bracketed language.

16    THE COURT: Well, I see the bracketed language.

17    MR. KAROTKIN: Some of that will be taken out. And if

18 you look at page 7 and 8, a lot of that will be deleted for the

19 fire claimants, because it talks about treatment of other

20 classes. So they will be tailored and narrowed within this

21 form to address the particular --

22    THE COURT: Well, let's --

23    MR. KAROTKIN: -- fire claims.

24    THE COURT: -- let's make sure -- let's make sure

25 that's true.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    So I accept your explanation on the master ballot.  So
2    I'm past that.  And I'm looking at the direct ballot.  A direct
3    ballot is tailormade for two different kinds of --
4    MR. KAROTKIN:  It's tailor --
5    THE COURT:  -- wildfire -- or I mean, it's --
6    MR. KAROTKIN:  It's for --
7    THE COURT:  It's for public entities and wildfire
8    claim victims.
9    MR. KAROTKIN:  And subrogation.  It's a form.
10   THE COURT:  Okay.  So for my example of Mr. Smith, who
11   suffered the loss of a -- his property but didn't have
12   insurance, how is it going to be tailored so it gets to him
13   or -- so all it is, is a fire victim claim, period, without any
14   need to have releases?
15   MR. KAROTKIN:  Well, if there are going to be
16   releases, the release language needs to be in there.
17   THE COURT:  Why?
18   MR. KAROTKIN:  If a person is going to have --
19   THE COURT:  Why?  Tell me why.
20   MR. KAROTKIN:  Because the plan provides for the
21   ability to opt into releases.
22   THE COURT:  Why do -- why -- who is the person opting
23   in or out of -- if there's nobody to -- there's no relea -- no
24   third party.  There's no insurance company.  There's nothing.
25   MR. KAROTKIN:  It's releasing --

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  There's just the debtor.

2          MR. KAROTKIN:  -- other parties under the plan.  The

3    release provisions in the plan, there's an --

4          THE COURT:  Well, refresh --

5          MR. KAROTKIN:  -- opt-in --

6          THE COURT:  But, Mr. Karotkin, I need to know why

7    that's important.

8          MR. KAROTKIN:  Because, Your Honor, without that

9    disclosure in the ballot, they're not making an informed

10   judgment as to whether to opt in or opt -- or not opt in.

11         THE COURT:  Okay.  I'll try it a different way.  If my

12   hypothetical victim, who had no insurance, wants to vote for

13   the plan or vote against the plan -- but let's say vote for the

14   plan -- what is he -- why does he need to release anybody?  Why

15   can't he just vote for the plan?

16         MR. KAROTKIN:  Because the way the plan is drafted, it

17   provides for optional releases of third parties if people opt

18   in.

19         THE COURT:  But there's nobody --

20         MR. KAROTKIN:  There's nothing -- I mean --

21         THE COURT:  There's nothing opting in or out.  So

22   I'll --

23         MR. KAROTKIN:  Well, I --

24         THE COURT:  What is the legal effect of that person

25   signing a release, then there's no one -- there's -- he's

PG&E Corp. and Pacific Gas and Electric Co.

1    not -- there's no -- nothing to release?  Who is being

2    released --

3              MR. KAROTKIN:  Third --

4              THE COURT:  -- by that vote?

5              MR. KAROTKIN:  -- third parties, creditors -- there's

6    a list of release parties in the plan.  And if you look at the

7    release provisions, that explains who's being released.

8              THE COURT:  Okay.  Let's try it a different way, Mr.

9    Karotkin.  Where is there some advice to tell this person what

10   are the consequences or the ramifications of not signing the

11   release?

12             MR. KAROTKIN:  If you don't sign the release, there's

13   no impact.

14             THE COURT:  There's no release?

15             MR. KAROTKIN:  Correct.

16             THE COURT:  So -- but there's no incen -- there's no

17   consequence, except that he doesn't release you and Ms. Green

18   and --

19             MR. KAROTKIN:  Correct.

20             THE COURT:  -- everybody else.

21             MR. KAROTKIN:  Correct.  There's no consequence.

22             THE COURT:  But then what's the point?  Why are we

23   doing this?

24             MR. KAROTKIN:  I'm not following, Your Honor.

25             THE COURT:  Why are we taking something which then has

PG&E Corp. and Pacific Gas and Electric Co.

1    an annex that is several more pages?  I mean, I think what --

2         MR. KAROTKIN:  Because we're asking them if they would

3    like to release.  They have the ability to opt into a release.

4    They don't have to.

5         MS. GREEN:  Your Honor, would it solve the problem if

6    we, in bold, referred to the release pages of the plan so that

7    you didn't have a five-page ballot?  Because I understand

8    that --

9         THE COURT:  Well, I want some opinion from you and the

10   people you and your colleagues are dealing with, these

11   thousands and thousands of victims.

12        UNIDENTIFIED SPEAKER:  Your Honor --

13        THE COURT:  I don't want to -- I don't want to make

14   life complicated for them, and I already think the disclosure

15   statement is longer than it needs to be.  And I think the

16   ballot is necessarily longer than it needs to be.  So convince

17   me that it's -- there's a good reason to have it be so much

18   more complicated than it needs, like -- it seems like it needs

19   to be.

20        UNIDENTIFIED SPEAKER:  Your Honor, I was just going to

21   point out the fact that there is a provision -- I believe it's

22   in the plan or the disclosure statement -- that says that you

23   don't have to sign the release, it's totally optional.  There's

24   a descriptive provision, which was an earlier comment you made,

25   that that -- I was just pointing out that was one of your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    questions.

2         THE COURT:  So the question then is, well, why should

3    the person who doesn't have the benefit of the legal advice or

4    help the person, why should he or she release?  What is the

5    reason to do it?  Why should you -- if one of them calls you

6    and says, why should I sign this -- I realize you'll tell me,

7    well, you can't act as their lawyer.  I understand that, but

8    let's get past that.  Why should anybody do it?

9         I'm having --

10        UNIDENTIFIED SPEAKER:  Your Honor, there's no benefit

11   to -- there is no benefit to not signing -- there's no harm to

12   not signing the release.  There's no benefit to you to --

13        THE COURT:  But there are consequences of --

14        UNIDENTIFIED SPEAKER:  There are consequences.

15        THE COURT:  -- having signed it.  So the question is,

16   why?  And why, in a situation that is so complicated -- the

17   most complicated that I have seen -- why are we making it more

18   complicated when there is no apparent reason to do it?

19        MR. KAROTKIN:  Can I have a minute?

20        THE COURT:  Yes --

21        MR. KAROTKIN:  Okay.

22        THE COURT:  -- you may.

23     (Counsel confer.)

24        MR. KAROTKIN:  Your Honor, perhaps it would be best to

25   discuss this -- let us try to think about this overnight and

(971) 741-9043 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    discuss it tomorrow.

2         THE COURT:  Yeah.  Yeah, we have to talk about what's

3    the next discussion.

4         MR. KAROTKIN:  Yeah.

5         THE COURT:  Okay.  And again, Mr. Karotkin, I want to

6    thank you and all of you for the -- putting together this

7    complicated thing, and so I don't -- I hope you don't take it

8    as criticism.  It's --

9         MR. KAROTKIN:  Sometimes.

10        THE COURT:  Well, that's okay.  Sometimes you deserve

11   it.

12        But maybe I'm listening to Mr. Abrams and other people

13   more than you would want me to.  But the point is, I'm not

14   worried about the subrogation, the hundred insurance companies'

15   general counsel.

16        MR. KAROTKIN:  Right.  I understand.

17        THE COURT:  I'm not worried about the ten counsels

18   that -- the county counsel for the public entities.  I'm

19   worried about the tens of thousands of people that don't want

20   anything to do with this, and you go -- and I think about, it's

21   so complicated, why should I even bother.  So that's -- yes,

22   I'll let you think about it.

23        MR. KAROTKIN:  Okay.

24        THE COURT:  And I think that was my only other

25   question.  Let me just -- but I -- but I'm going to come back

PG&E Corp. and Pacific Gas and Electric Co.

1   to the disclosure statement for the same question.  So -- and I

2   know you're going to tell me I should do it.

3        But I -- if you would take it up with your colleagues

4   my concerns for the vic -- the individual ballots, that's what

5   we're talking about.

6        MR. KAROTKIN:  Yes, I understand.

7        THE COURT:  On the disclosure statement, we won't have

8   anymore examples of what city's phone books -- one second,

9   please.  But -- oh.  And again, I apologize if I'm sounding

10  like I'm nitpicking.  It's 5 o'clock on a long day.  But this

11  reminds me of the lawyer that submits the brief that says, I'm

12  sorry my brief is so long, I didn't have enough time.  I mean,

13  there's redundancy in this thing.  The very same sentence

14  appears twice on a -- on one page, and I wouldn't want to waste

15  time about that.  But it goes to the question -- and this is

16  perhaps my favorite subject that I've taken up with the United

17  States Trustee on countless cases.

18       But looking at the clean version of the disclosure

19  statement and starting at page 7 of 71, and I'm holding my

20  finger all the way to page 24, I'm going, why don't we just get

21  rid of all of that?  I mean, who cares about the business

22  operation and the natural gas utility operations and the

23  corporate structure and the definition of the notes that are

24  all over the place elsewhere?  And it's certainly in the plan.

25  And who cares about the history of the wildfire litigation -- I

PG&E Corp. and Pacific Gas and Electric Co.

1   mean, excuse me, legislation and all the things going on at the

2   CPUC?

3           And then switching the -- and the locate and mark OII,

4   I mean, that's -- talk about important stuff for a voter on a

5   plan.  And yet in significant events, there's not a word that I

6   can find about the Kincade Fire.  We talked about -- earlier

7   about, what do you do about the Kincade Fire?  Well, you

8   reminded me that there's been no determination of liability,

9   and I agree.  But I thought, well, wait a minute.  These are --

10  it still was a significant event that may or may not have legal

11  consequences.

12          But forgetting that, then I switch topics to page 13

13  and the overview of the Chapter 11, and I start thinking, this

14  is like my work diary.  The first day motions, the appointment

15  of the committee.  Do you know how many times I've seen --

16          MR. KAROTKIN:  We wanted you --

17          THE COURT:  -- about the appointment of the

18  committee --

19          MR. KAROTKIN:  -- to reminisce a little bit when you

20  were reading this.

21          THE COURT:  Huh?  What?

22          MR. KAROTKIN:  We wanted you to reminisce a little bit

23  while you --

24          THE COURT:  Yeah.

25          MR. KAROTKIN:  -- reading this.

(972)  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Reminisce.  The claims bar date, the

2  determination of exclusivity, and the day Mr. Karotkin ran into

3  the door, and -- we should put that in here.  And I'm going,

4  you know -- Mr. Laffredi will come and say, the United States

5  Trustee wants a full explanation of everything.  And I'm going,

6  I don't want a full explanation of all this stuff, because it's

7  not relevant.

8    Now, Mr. Karotkin, you haven't even heard me begin to

9  get warmed up on the tax language.  And --

10    MR. KAROTKIN:  Yeah, well, I won't take responsibility

11  for the tax language.

12    THE COURT:  And so I'm wondering, does this advance

13  the ball?  And I know that a hundred pages won't bother those

14  hundred general counsels of insurance companies.  But why do --

15  why is it important for me to approve or for you to send twenty

16  or thirty pages of no significance to the decision making of

17  the people that are going to vote on this plan?

18    MR. KAROTKIN:  And I think that's why we have or will

19  have that short thing as well.

20    THE COURT:  Well, how about instead, in lieu of?

21    MR. KAROTKIN:  Well --

22    THE COURT:  In other words -- I mean, I'd like you at

23  least to think about it --

24    MR. KAROTKIN:  Okay.

25    THE COURT:  -- and tell me -- I'm not -- I'm reluctant

escribers
(973) operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    to second guess all of your thinking about this, but I have to

2    be honest with you.  I don't know that it's constructive, and I

3    don't think the law requires it.  And I believe the flexibility

4    in the statute that allows something -- and again, you're

5    talking to one of the creators of our simplified plan for

6    simplified cases.  This is not a simple case, but I don't know

7    that the disclosure statement needs to be as proposed and as

8    redundant and as duplicative of information.

9          So I'll leave it at that for now.  And if certain tax

10   disclosures must be made, I'm almost back to -- as counsel this

11   afternoon told me, he told I'd find the argument in a footnote

12   in a URL.  Well, how about a footnote with a URL for the entire

13   tax disclosures for anybody that cares?

14         MR. KAROTKIN:  It's okay with me.

15         THE COURT:  What --

16         MS. GREEN:  Your Honor, we did file the short form

17   statement together with the Q&A, which we thought was --

18         THE COURT:  Yes.

19         MS. GREEN:  -- in a format that made a lot of sense

20   for the --

21         THE COURT:  And that was very helpful.  And so all I'm

22   doing is saying, what's wrong with that, and take out all this

23   other stuff.  I'll be open -- and, Mr. Karotkin, you got to

24   tell me what's the next time we should convene, because when I

25   started the hearing, I thought maybe we're going to have to go

PG&E Corp. and Pacific Gas and Electric Co.

1   into tomorrow, maybe we have to go to Monday.  My sense is --

2   well, we still have to deal with the -- well, don't we?

3           What do we have to deal with?  We have to deal with --

4   nothing?  Nothing left?

5           MR. KAROTKIN:  I think we have to deal with the UCC.

6           THE COURT:  Yes.  But if that's --

7           MR. KAROTKIN:  I think that's it.

8           THE COURT:  And that's something we should talk about.

9   So we're not going to have to -- is it something you're going

10  to want to have a briefing schedule?

11          MR. KAROTKIN:  No.

12          THE COURT:  Well, you tell me.

13          MR. KAROTKIN:  That's an easy answer.

14          THE COURT:  Give -- look, you --

15          MR. KAROTKIN:  I think --

16          THE COURT:  -- are going to -- you -- promise me you

17  will take into consideration and talk to the other principal

18  counsel and see if you can make a case to support what I think

19  would be a better result.  I won't fall on my sword if

20  you're -- if you commit to me to at least discuss it and say,

21  no, we want to leave it in.  Then I won't revisit it.  I'll

22  just --

23          MR. KAROTKIN:  What are you referring to now?

24          THE COURT:  The stuff I just talked about, all the --

25          MR. KAROTKIN:  All that stuff?

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  -- unnecessary stuff.

2          MR. KAROTKIN:  Yeah, okay.  Okay, okay.

3          THE COURT:  And so the question is, do you want --

4          MR. KAROTKIN:  When should we --

5          THE COURT:  -- to convene tomorrow?  Do you want to

6    convene Thursday?  If you or any of the others are traveling

7    back to the East, we can do it by phone.  We have to have some

8    hearing next Monday anyway.  I'm mindful of what you said about

9    the need to turn things around.

10         MR. KAROTKIN:  Yeah.

11         THE COURT:  And the one thing that I simply couldn't

12   get to was to try to work my way through the proposed order.

13   But whenever you lodge the proposed order, I will -- I'll get

14   through it and be ready to go.

15         MR. KAROTKIN:  Okay.

16         THE COURT:  So I think it'd be -- probably be

17   constructive to have a follow-up hearing.  But you tell me what

18   works for, not only your own personal convenience, but the

19   principal lawyers that are involved here with the travel and

20   the --

21         MR. KAROTKIN:  Well, I think --

22         THE COURT:  -- and this health issue that everybody's

23   struggling with, too.  So --

24         MR. KAROTKIN:  Okay.  I think, since everybody is

25   here, and I think everyone expected to be here tomorrow as

PG&E Corp. and Pacific Gas and Electric Co.

1    well, I would suggest tomorrow -- reconvening tomorrow

2    afternoon at 1 o'clock, if that's okay with you.

3            THE COURT:  If you don't mind sitting through the

4    Chapter 13 calendar.

5            MR. KAROTKIN:  2 o'clock?

6            THE COURT:  Well, here's the deal.  I normal -- I --

7    no, you have to be here at 1 o'clock.  I normally do the

8    Chapter 13s one day a month in Santa Rosa, which --

9            MR. KAROTKIN:  Um-hum.

10           THE COURT:  -- is up north.  But tomorrow, I scheduled

11   to do it by video so that I could be available.  But it happens

12   to be at 1 o'clock.  From 1 to 1, and I'm sure we'll be done by

13   2.  So we could do late morning, or we could do it at 2

14   o'clock.

15           MR. KAROTKIN:  2.

16           THE COURT:  Or if it's convenient, I can do it on

17   Thursday if people are going to be here.  So I'll --

18           MR. KAROTKIN:  I'd rather start --

19           THE COURT:  -- accommodate you.

20           MR. KAROTKIN:  I would rather start tomorrow at 2.

21           THE COURT:  Okay.  Are you speaking for all the

22   principal lawyers that need to -- that are going to be here?  I

23   don't --

24           MR. KAROTKIN:  You said my convenience, Your Honor.

25   You didn't --

PG&E Corp. and Pacific Gas and Electric Co.

1        THE COURT:  All right.  Well, if you come earlier,

2  your bonus will be to sit in on the Chapter 13 calendar --

3        MR. KAROTKIN:  Okay.  Well, I might like that.

4        THE COURT:  -- on video.

5        Thank you for the long day.  I will look forward to --

6  well, Mr. -- before I hand out anymore compliments, you've got

7  to give me something earlier than 12:30 tomorrow if you want me

8  to review it.

9        MR. KAROTKIN:  Understood.

10        THE COURT:  So is that reasonable, to be able to turn

11  something around?

12        MR. KAROTKIN:  I would think so.

13        THE COURT:  Well -- but don't promise something that

14  you can't --

15        MR. KAROTKIN:  I said, I think.  I think --

16        THE COURT:  But I mean, do you want to -- do you want

17  to think about it and just --

18        MR. KAROTKIN:  No.

19        THE COURT:  -- tell me later?

20        MR. KAROTKIN:  Let -- if -- let's plan on 2, okay?

21        THE COURT:  And you tell me; what are we going to do

22  at 2?

23        MR. KAROTKIN:  I think we're going to try to resolve

24  Mr. Bray's issue.  I think we can address the issue of what we

25  will either delete or not delete from the disclosure statement.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp. and Pacific Gas and Electric Co.

1   I don't believe there's any other --

2           THE COURT:  And the one ballot.

3           MR. KAROTKIN:  And the ballot.  Yeah, yeah, yeah.  The

4   ballot.

5           I don't believe there's anything else outstanding from

6   today, other than the proposed order.  There will be further

7   modifications to be made to address some of the things that

8   were determined today.  And --

9           THE COURT:  Well, you're going to have to make some

10  changes because of the tender of settlement, too, right?

11          MR. KAROTKIN:  Yes.  Yes.  Yes.

12          THE COURT:  Yeah.  Right.

13          Well, you decide.  I'm at your pleasure.  And if it's

14  better for you and all the lawyers working with you to get it

15  done tomorrow, then I'm sorry we have this one little

16  interruption, but it'll be short.  And I'll accommodate you,

17  and we'll run late if we have to.  And if that's better than

18  doing it on Thursday, then I'll see you tomorrow.

19          But we still have the hearing on next Monday, unless

20  there's some resolution.  So --

21          MR. KAROTKIN:  I understand.

22          THE COURT:  So if --

23          MR. KAROTKIN:  But I think it's important to -- if we

24  can, to get this completed this week.

25          THE COURT:  Well, again, I'm going to let you make the

PG&E Corp. and Pacific Gas and Electric Co.

1    call on that.

2          MR. KAROTKIN:  Okay.

3          THE COURT:  I don't know what's going to happen

4    between tomorrow afternoon and Monday, but you know better than

5    I do.  So --

6          MR. KAROTKIN:  Okay.

7          THE COURT:  Okay.  Thank you all for your --

8          MR. KAROTKIN:  Thank you very much.

9          THE COURT:  -- hard work today and the progress we

10   made, and --

11      (Whereupon these proceedings were concluded at 5:12 PM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        I N D E X

2    RULINGS:                                    PAGE LINE

3    The committee's motion to establish          20    16

4    procedures for discovery preceding plan

5    confirmation is denied.

6    Matter 8:  Objection by Eric Carlson is       89    21

7    overruled.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1          C E R T I F I C A T I O N

2

3     I, Clara Rubin, certify that the foregoing transcript is a true

4     and accurate record of the proceedings.

5

6

7

8

9

10

11    _____

12    /s/ CLARA RUBIN

13

14    eScribers

15    7227 N. 16th Street, Suite #207

16    Phoenix, AZ 85020

17

18    Date:  March 11, 2020

19

20

21

22

23

24

25



(973) 406-2250 | operations@escribers.net | www.escribers.net

[

**[Doos] (1)**
223:4
**[Dose] (1)**
223:4

**A**

**AB (6)**
40:15;42:22;59:15;
110:10;126:8;218:16
**abbreviated (1)**
110:25
**ability (20)**
15:21;46:24;64:4;
86:20;88:1;92:6,18;
93:3,5,10,17;94:14;
102:2;110:8;156:8;
170:21;181:8,22;
233:21;236:3
**able (20)**
9:14;11:3;27:20;
46:19;54:9,13,14;
110:18;113:23;123:10;
147:14;159:1;174:19;
179:2;199:5;205:4;
212:8;224:7,25;246:10
**ably (1)**
174:12
**above (1)**
115:2
**Abrams (257)**
173:10,11,13,14,19,
21,25;174:5,9,15,24;
175:11,13,17,20,24;
176:1,5,7,9,13;177:10,
13,15,19,21,23;178:2,
5,7,10,17,20;179:4,6,9,
18,20,24;180:4,7,10,
13,17,20,23,25;181:2,
10,13,15,18,21;182:23;
183:16;184:3,8,14,16,
20,22,24;185:1,14,16,
20,22;186:3,13;187:12,
15;188:7,11,14,17,25;
189:20;190:14,18,21;
191:3,15,23;192:1,6,8,
9,12,16,21,23,25;
193:3,6,8,12,16,18,22,
25;194:4,6,9,11,13,15,
22,25;195:9,12,20,22,
25;196:3,7,11,14,16,
18,20;197:3,7,10,14,
15,21;198:1,7,9,11,13,
23;199:2,7,11,18;
200:6,10,22,24;201:2,
4,6,7,8,10,12,20,22,24;
202:3,5,8,10,12;203:8,
13,17,20,23,25;204:8,
10,12,18,24;205:2,9,
12,15,20;206:2,3,6,9,
14,17,19,22;207:5,7,9,
16,22;208:7,9,15,23,
25;209:2,11,13,16,19,
21,25;210:3,5,8,12,14,
16,19,22;211:1,3,6,8,
13,15,18;212:4,6,11;
213:9,12,15,18,21,23;
214:3,5,21;215:13,21,
24;216:1,5,8,15,21;
217:2,5,7,9,20,23,25;
218:6,13,22,24;219:10,
15,17;220:3,4,5,10;
221:2,8,19;222:6,9,25;
224:24;238:12
**Abrams' (3)**
182:12;187:6;200:4
**absence (1)**
219:5
**absent (1)**
139:17
**Absolutely (9)**
23:17;24:8;53:12;
62:24;127:8,8;132:23;
176:13;185:14
**absorb (3)**
129:25;132:9;170:21
**abstract (1)**
184:5
**accept (9)**
81:12,17;82:6;132:1;
146:6,25;164:10;
182:11;233:1
**acceptable (5)**
37:7;134:6,7;163:2;
170:1
**accepted (2)**
119:19;179:22
**accepts (1)**
102:22
**accommodate (4)**
13:23;129:24;
245:19;247:16
**accomplish (1)**
195:6
**accomplished (2)**
126:18,20
**accordance (1)**
160:19
**accordingly (1)**
189:2
**account (1)**
49:14
**accrual (1)**
28:17
**accrue (1)**
29:18
**accrued (1)**
30:12
**accruing (1)**
28:14
**accurate (2)**
69:18;203:1
**accurately (2)**

14,17,19,22;207:5,7,9,
16,22;208:7,9,15,23,
25;209:2,11,13,16,19,
21,25;210:3,5,8,12,14,
16,19,22;211:1,3,6,8,
13,15,18;212:4,6,11;
213:9,12,15,18,21,23;
214:3,5,21;215:13,21,
24;216:1,5,8,15,21;
217:2,5,7,9,20,23,25;
218:6,13,22,24;219:10,
15,17;220:3,4,5,10;
221:2,8,19;222:6,9,25;
224:24;238:12
**Abrams' (3)**
182:12;187:6;200:4
**absence (1)**
219:5
**absent (1)**
139:17
**Absolutely (9)**
23:17;24:8;53:12;
62:24;127:8,8;132:23;
176:13;185:14
**absorb (3)**
129:25;132:9;170:21
**abstract (1)**
184:5
**accept (9)**
81:12,17;82:6;132:1;
146:6,25;164:10;
182:11;233:1
**acceptable (5)**
37:7;134:6,7;163:2;
170:1
**accepted (2)**
119:19;179:22
**accepts (1)**
102:22
**accommodate (4)**
13:23;129:24;
245:19;247:16
**accomplish (1)**
195:6
**accomplished (2)**
126:18,20
**accordance (1)**
160:19
**accordingly (1)**
189:2
**account (1)**
49:14
**accrual (1)**
28:17
**accrue (1)**
29:18
**accrued (1)**
30:12
**accruing (1)**
28:14
**accurate (2)**
69:18;203:1
**accurately (2)**

85:5;93:6
**acknowledge (3)**
31:19;114:5;177:22
**acknowledged (2)**
108:3;140:13
**act (2)**
198:20;237:7
**action (9)**
90:8;96:1;105:18;
107:5;109:24;115:14;
164:25;169:19;216:22
**actions (5)**
115:6;163:23;
208:19,24;209:17
**active (2)**
36:22;173:16
**activities (1)**
109:4
**actual (7)**
12:7;66:10,19;98:21,
22;99:6;161:18
**actually (27)**
14:21;17:15;18:9;
27:9;33:5;55:11;60:18;
86:2;96:16;111:24;
124:7;135:4;138:18,
23;147:17;153:1,3;
161:17;163:7;165:13;
168:9;177:6;179:12;
207:13;211:10;223:13;
225:18
**ad (9)**
26:8;27:2;32:6;
33:10,13;120:15;
121:16;211:8;214:18
**add (9)**
46:14,16,18;70:22;
149:5;150:10;194:17;
215:3;217:8
**added (9)**
66:5;70:13,23;
130:21;173:24;185:4;
189:1,16;214:22
**addendum (1)**
9:17
**adding (1)**
204:1
**addition (4)**
32:11;78:5;95:25;
115:13
**additional (6)**
9:13;76:10;107:4;
115:7;116:6;130:21
**address (20)**
10:22;32:11;33:24;
34:4;66:5;73:5;80:25;
108:22;120:1;127:15,
24;132:6;137:14;
156:13;171:14;173:25;
202:14;232:21;246:24;
247:7
**addressed (8)**
27:24;37:24;79:3;

98:6;127:12;129:12;
174:3;195:15
**addresses (4)**
76:9;116:23,24;
131:12
**addressing (1)**
195:17
**adds (1)**
200:18
**adequate (17)**
26:14;33:25;34:14;
42:19;60:14;69:4;92:5,
11,17;93:16;97:8;
102:6;107:6;112:1;
165:3;197:5;200:12
**adequately (4)**
40:14;75:22;87:10;
200:3
**adjust (1)**
86:20
**admin (1)**
189:14
**administer (1)**
36:9
**administrative (13)**
47:24;101:6;102:19;
103:4,14,15,18;104:1;
108:8,9,18;109:2,2
**administrator (4)**
35:20;50:14;62:13;
64:1
**admitted (2)**
40:19,20
**advance (1)**
241:12
**advantage (1)**
7:10
**Adventist (19)**
13:4;22:7;23:7,10;
25:14;33:20,21;34:19;
36:19,21;38:6;66:7;
68:7;73:3;131:12,16,
17,18;133:6
**adversary (5)**
18:23;101:19;
107:10;110:5;177:11
**adverse (1)**
206:12
**adversely (3)**
92:5,17;93:17
**advice (4)**
193:23;220:23;
235:9;237:3
**advisors (1)**
180:1
**advocate (2)**
177:11,11
**affect (9)**
91:21;93:4;163:24;
164:7;197:11;206:13,
14;208:6,6
**affected (2)**
163:20;188:5

**affects (7)**
69:16;97:15;201:16;
206:18,19;211:24;
228:16
**affirmatively (1)**
117:22
**afford (1)**
181:24
**a-flowing (1)**
204:21
**afraid (1)**
188:2
**afternoon (22)**
7:16;14:17;56:25;
77:19;85:8;106:11;
107:25;111:18;112:5,
9,10;118:22;125:4;
130:4;134:10;137:2;
172:21;175:16;216:13;
242:11;245:2;248:4
**again (95)**
11:13;12:1;13:19;
15:7,12,19;17:1,7;
18:19,21;23:23;25:4;
34:17;39:7,25;42:3;
43:18,24;44:10;48:25;
49:3,22;50:9;59:18;
61:1;62:22,25;63:16;
64:9,12;65:17,19,25;
66:14;68:24;70:14;
72:2;79:11;82:5;91:1,
16;107:22;110:25;
113:9;118:10;128:4,
13;129:6,14;130:14;
143:25;147:6;148:25;
149:21;153:10;155:1,
14;159:14;166:3;
170:21;175:22;176:4;
177:5,10;178:8;
179:19;180:12;181:9;
184:13;187:15;188:5;
190:6,12;194:23;
196:4;197:16,22;
199:9;201:15;204:7,
13;205:14;208:1;
209:2,7;210:23;
211:11;218:15;219:3,
7;228:15;238:5;239:9;
242:4;247:25
**against (24)**
14:15;36:4;65:6,12;
67:11;68:2;84:14,15;
85:2;97:19;101:5;
115:15;122:18,20;
123:2;133:14;164:4;
166:21;167:10;170:8;
200:5;209:18;222:1;
234:13
**agencies (6)**
10:17;39:20;47:23;
49:24;68:5;133:1
**Agency (3)**
78:20,22;83:4

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 251
of 282

**aggregate (1)**
 96:17
**aggregated (1)**
 49:16
**ago (6)**
 16:9;35:25;79:14;
 90:16;155:18;210:24
**agree (35)**
 26:24;27:6;31:2;
 54:12;55:3;56:13;
 58:21;75:5,6;86:21;
 88:25;101:3,8;103:5,
 10,21;109:7;118:17;
 121:7;123:7;124:1;
 152:14,15;187:16;
 190:4,11;191:3,16;
 193:8;196:9;201:17;
 202:23;215:9;216:6;
 240:9
**agreeable (4)**
 77:2;111:12;125:6;
 134:5
**agreed (12)**
 32:13;55:19,24;98:1;
 131:14;132:15;168:15;
 172:13,22;184:11;
 190:11;211:19
**agreeing (1)**
 87:6
**agreement (21)**
 12:8;32:7,12;33:16;
 60:16,18;62:16;63:8;
 78:3;85:21;87:22;
 130:20;136:20;152:6,
 19;181:7,21,24;
 204:17;205:6,22
**agreements (3)**
 10:19;11:3,24
**agrees (1)**
 103:16
**ahead (12)**
 10:9;88:6,8;97:13;
 113:16,16;116:17;
 117:11;173:21;174:14;
 186:5;224:4
**airbags (1)**
 75:17
**Alan (1)**
 81:2
**aligned (1)**
 177:16
**alive (1)**
 216:11
**allegations (1)**
 109:3
**allow (4)**
 36:8;89:22;131:23;
 205:6
**allowability (2)**
 131:22;154:7
**allowable (2)**
 153:6,8
**allowance (7)**

 24:1;80:8;102:19;
 103:15,17,25;132:21
**allowances (1)**
 141:5
**allowed (18)**
 26:11;28:10;29:5;
 30:14,22,24;43:5;83:8,
 11;108:18;135:12;
 141:16;159:11;160:5;
 161:5,22;221:4,5
**allowing (2)**
 124:14;163:13
**allows (2)**
 35:5;242:4
**almost (6)**
 113:7;168:8;191:3;
 192:15;229:19;242:10
**alone (1)**
 140:10
**along (4)**
 45:7;187:16;194:24;
 195:10
**Alsup (1)**
 208:4
**altering (1)**
 147:2
**alternative (2)**
 156:11;221:7
**although (5)**
 40:23;141:2;159:19;
 187:16;188:1
**always (3)**
 65:1;114:4;136:16
**amend (1)**
 11:22
**amended (8)**
 9:7;86:24;112:2,12,
 16;127:15,17;136:10
**amendment (2)**
 98:7;149:16
**American (2)**
 122:4,4
**among (1)**
 186:18
**amongst (1)**
 211:21
**amount (43)**
 38:14;39:23;40:5;
 41:13;42:21;49:16;
 50:1;53:18,22;54:10;
 83:12,13;110:6,6,8,17;
 133:8,10;138:8,20,21;
 139:10;140:9,10;
 148:24;149:1,1;
 150:13,17;151:1,2,3,4;
 152:25;158:9,18;
 159:11,24;160:4,5;
 161:20,23;230:24
**amounts (7)**
 41:16,17,17;86:19;
 138:8;139:6,6
**ample (1)**
 165:7

**analysis (10)**
 34:12;42:1,3;59:11,
 18,23;145:6;219:24,
 25;220:3
**analyst (1)**
 193:5
**analysts (2)**
 192:23;193:10
**and/or (2)**
 38:13;110:4
**Andrew (3)**
 76:2;130:17;137:3
**animal (1)**
 21:22
**annex (1)**
 236:1
**announce (2)**
 134:18;215:23
**announced (2)**
 83:1;132:13
**answered (1)**
 65:18
**Anthony (1)**
 107:21
**anticipate (3)**
 8:14;12:5;148:5
**anticipates (1)**
 216:25
**anymore (5)**
 65:15;94:3;194:2;
 239:8;246:6
**AP (1)**
 101:17
**apologies (1)**
 23:7
**apologize (6)**
 67:7;70:7,13;128:22;
 147:17;239:9
**apparent (1)**
 237:18
**apparently (4)**
 40:19;103:9,16;
 181:4
**appeal (5)**
 20:25;31:24,24;
 81:17;195:9
**appealability (1)**
 31:23
**appealing (1)**
 27:15
**appear (3)**
 47:7;146:10;152:23
**appearance (4)**
 14:11;137:1;172:19;
 224:20
**appearing (3)**
 99:20,23;224:22
**appears (2)**
 159:4;239:14
**apple (1)**
 147:4
**applicable (4)**
 93:11;119:7;127:7;

 228:20
**applies (2)**
 158:15;159:5
**apply (1)**
 162:3
**appointed (2)**
 55:13;191:10
**appointment (2)**
 240:14,17
**appreciate (15)**
 10:2;23:23;24:10,12;
 53:1;55:25;59:2;63:23;
 66:4;69:1;88:13;89:24;
 108:2;194:13;230:16
**approach (3)**
 54:7;99:11;195:18
**appropriate (11)**
 15:12,16;35:7;41:7;
 151:19;169:16;172:18;
 188:23;191:14;202:12;
 203:7
**appropriately (1)**
 232:13
**approval (10)**
 80:13,24;126:7;
 127:13;185:5,6,18;
 189:24;209:14;225:17
**approvals (2)**
 78:25;83:4
**approve (8)**
 10:18;50:13;187:22;
 189:6;197:19;211:2;
 215:23;241:15
**approved (11)**
 53:16;58:17;59:7;
 125:11;126:10;132:15;
 195:8;200:21;203:5;
 212:16;223:22
**approves (2)**
 49:23;118:3
**approving (2)**
 81:10;82:2
**approximately (1)**
 204:5
**April (9)**
 12:16,17;139:1;
 140:20;154:15,22,23;
 155:6;161:7
**area (3)**
 175:5,7,8
**areas (1)**
 121:15
**Arent (2)**
 76:3;130:17
**arguably (1)**
 72:5
**argue (3)**
 14:15;38:3;146:11;
 155:9
**argued (3)**
 75:8;79:12;164:5
**arguing (1)**
 147:4

**argument (11)**
 27:7;36:5;37:1;
 79:14;175:18;216:9,
 13;221:13,20,21;
 242:11
**argumentative (3)**
 200:19;201:1,11
**arguments (2)**
 125:19;221:15
**arises (2)**
 142:7;157:9
**arms (1)**
 135:6
**Arnold (1)**
 73:22
**around (7)**
 99:17;119:23;135:7;
 194:1;216:22;244:9;
 246:11
**Article (2)**
 107:9;148:7
**ascertain (3)**
 138:18;139:12;144:8
**aside (1)**
 62:4;92:22
**aspect (1)**
 58:25
**aspirational (1)**
 190:3
**assert (2)**
 32:6;216:12
**asserted (5)**
 40:2;67:10;68:2;
 122:18;159:24
**asserting (2)**
 93:2;140:1
**assertion (2)**
 111:6;124:6
**asset (5)**
 211:25;212:3,5,8,12
**assets (4)**
 35:6;84:19,19;90:15
**assign (2)**
 188:19,19
**assigned (13)**
 18:14;90:8;94:19;
 95:25;96:11;113:13,
 22;114:15;115:6,7,14;
 116:16;122:14
**assignee (1)**
 123:4
**assigning (2)**
 90:15;116:7
**assignment (6)**
 48:15;95:15;113:19;
 115:5;123:23;168:14
**assigns (1)**
 166:23
**associated (13)**
 120:24;175:3,4;
 176:18,22;177:8;
 189:3;190:24;197:11;
 209:5;212:1;214:10;

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 252
of 282

221:13
**assume (10)**
26:19;49:23;81:19,
20;85:4;132:24;153:2;
156:22;160:16;174:6
**assumed (1)**
167:13
**assuming (9)**
29:1;51:6;122:15;
139:1;140:3;149:8;
154:23;164:3;211:2
**assurance (2)**
57:9;204:2
**assurances (2)**
196:22;198:2
**assure (1)**
201:5
**AT&T (8)**
25:14;73:7,23;
131:12,16,20;133:14;
134:9
**attached (5)**
32:25;51:5,16;173:4;
231:11
**attempt (2)**
56:15;231:19
**attenuated (1)**
207:15
**attorney (8)**
17:11;185:4;186:23;
187:18,24;188:13,20;
208:21
**attorneys (11)**
185:10,24;186:8,21,
21;188:9;192:6;
211:21;222:13;226:21;
230:5
**attribute (1)**
46:8
**August (2)**
30:7,7
**authority (1)**
190:6
**authorize (1)**
190:8
**automatic (2)**
104:6;228:18
**automatically (1)**
16:16
**availability (1)**
154:8
**available (6)**
43:15;55:1;57:12;
84:19;210:25;245:11
**Avenue (1)**
103:2
**avenues (1)**
27:25
**average (2)**
142:11,13
**awards (1)**
86:18
**aware (11)**

8:8,23;20:3;33:5;
39:18;40:9;55:9;76:18;
128:23,24;205:25
**away (3)**
21:13;167:10;186:4

**B**

**back (46)**
13:3;14:1;23:22;
25:2;36:22,23;39:7;
44:6;50:22;61:1;62:22;
74:17;75:1;99:14;
104:2;113:22;115:18,
25;117:4;121:16;
127:20;132:12;134:24;
135:23;139:25;141:8;
145:8;152:19;154:4;
155:1,14;156:8;
157:17;159:13,15;
172:3;208:1;215:7;
218:15;219:6;224:13;
227:23;229:11;238:25;
242:10;244:7
**Background (2)**
94:2;153:15
**backing (1)**
97:22
**backwards (1)**
160:9
**bad (4)**
63:14;119:11,13;
207:8
**Baker (3)**
14:13;19:12;77:24
**ball (3)**
107:23;222:3;241:13
**ballot (23)**
61:2;133:9,13;187:4;
229:21,21,24;230:5,7,
9,15,16,18;231:17;
233:1,2,3;234:9;236:7,
16;247:2,3,4
**balloting (1)**
130:1;227:23
**ballots (4)**
156:14;164:20;
229:10;239:4
**ballpark (1)**
48:25
**Bank (5)**
106:3,5,6,14;170:15
**bankruptcy (18)**
11:1;17:2,11,20;
18:21;51:14;104:8;
110:9;158:2,2,3;
174:21;187:3;188:1;
197:12;207:4;219:7,16
**Bank's (2)**
106:7,9
**bar (8)**
41:6,6;139:1;140:18;
154:21;163:23;187:25;

241:1
**bare (1)**
165:6
**Barton (2)**
104:14,21
**base (1)**
146:20
**based (12)**
42:3;50:9;54:2,9;
58:17;69:18;110:19;
123:17;146:25;150:10,
18;192:9
**basic (2)**
49:3;62:15
**basically (6)**
35:19;87:22;88:10;
139:11;150:21;167:4
**basics (1)**
59:19
**basis (5)**
13:9;22:3,5;152:13;
193:11
**basket (1)**
178:25
**Bear (5)**
166:6;226:5,23;
228:2,4
**beat (1)**
111:3
**beating (1)**
217:16
**beauty (1)**
92:21
**become (2)**
48:21;117:4
**becomes (1)**
146:5
**beg (1)**
70:15
**begin (4)**
123:15;135:6;
220:18;241:8
**behalf (11)**
14:13;27:2;32:17;
34:24;38:6;82:21;83:2;
105:18;112:6;137:3;
224:22
**behind (3)**
17:19;139:21;192:6
**BEHLMANN (109)**
137:2,3,5,8,21;
139:24;140:5,16,18;
141:1,19,21,25;142:2,
6,13,19,22;143:1,3,6,8,
11,14,17,22;144:1;
145:16,18;146:9,15;
147:17,21,23;148:6,10,
14,16,18,21,24;149:6,
8,11,15,18,23;150:2,4,
6,9,13,17,21,24;151:3,
6,8,10,12,23;152:1,4;
154:6,10,11;155:3;
156:3,7,16,19;157:4,6,

8,20,22;158:7,15,19,
21;159:14,17;161:11,
17;163:3,5,7,17,19;
165:18;166:1,6,10,13,
15,17;167:1,3,20,24;
168:5,12,16;170:2,6,
13;171:1,5,10
**beholder (1)**
92:21
**belief (2)**
220:16,22
**believes (7)**
34:19;36:11;45:25;
128:3,3,10;172:16
**belong (2)**
64:24;196:6
**belongs (1)**
220:8
**below (2)**
95:17;189:25
**benchmark (1)**
142:8
**beneficial (1)**
10:10
**benefit (8)**
179:15;181:23;
189:15;190:7;237:3,
10,11,12
**benefits (1)**
189:12
**Benjamin (2)**
73:22;134:10
**Bennett (44)**
100:16;104:24;
105:4;151:14,16,17;
152:5,9,11,22;153:3,
12,14,20,24;154:2,7;
156:10;159:23;160:1,
8,17;161:1,17;162:8,
10,15,17,22;163:2;
165:19,21;168:14,17,
19,21,24;169:3,4,8,11;
170:7;172:15;196:8
**Bennett's (1)**
170:16
**bent (1)**
160:9
**Benvenutti's (1)**
223:12
**Berkeley (2)**
171:22,25
**best (16)**
36:7;41:3;43:14,17,
21;44:23;45:4;56:5;
156:17,23;158:4;
161:14;169:12,17;
193:10;237:24
**bet (1)**
104:5
**better (14)**
20:9;31:25;38:16;
44:3;47:16;108:25;
115:18;170:4;177:18;

8,20,22;158:7,15,19,
21;159:14,17;161:11,
17;163:3,5,7,17,19;
165:18;166:1,6,10,13,
15,17;167:1,3,20,24;
168:5,12,16;170:2,6,
13;171:1,5,10
**beyond (3)**
111:10;116:13;
178:11
**big (6)**
19:3;74:14;93:25;
124:12;145:22;155:24;
183:18;185:15
**bigger (4)**
18:11;121:8;125:1;
228:15
**billion (33)**
41:18;42:13,24;
44:11;50:2,4;66:10;
68:8,15;75:17;83:13,
14,15;84:1,10;85:1;
90:13,17;97:21;108:4,
16,17;144:13,14;145:3,
3;147:10;193:19;
194:2;206:11;210:24;
218:19,20
**billion-dollar (1)**
45:21
**billions (1)**
191:11
**bind (2)**
164:9;166:21
**binds (1)**
222:13
**bit (6)**
75:8;138:17;153:9;
159:4;170:17;196:10;
240:19,22
**Black (8)**
18:4;19:8,8,12;
20:18;148:13;166:8;
174:7
**blackline (10)**
67:6,15,18;70:14,25;
71:5;98:15,20,21;99:5
**blacklined (1)**
71:15
**blackout (1)**
101:21
**blaming (1)**
94:13
**blank (1)**
60:22
**blanket (1)**
168:7
**blocked (1)**
12:16
**board (2)**
100:13;131:15
**body (1)**
120:22
**bogged (1)**
89:8
**BOKF (5)**
75:20,24,25;76:3;
130:18
**bold (1)**

178:14;243:19;247:14,
17;248:4
**beyond (3)**
111:10;116:13;
178:11
**big (6)**
19:3;74:14;93:25;
124:12;145:22;155:24;
183:18;185:15
**bigger (4)**
18:11;121:8;125:1;
228:15
**billion (33)**
41:18;42:13,24;
44:11;50:2,4;66:10;
68:8,15;75:17;83:13,
14,15;84:1,10;85:1;
90:13,17;97:21;108:4,
16,17;144:13,14;145:3,
3;147:10;193:19;
194:2;206:11;210:24;
218:19,20
**billion-dollar (1)**
45:21
**billions (1)**
191:11
**bind (2)**
164:9;166:21
**binds (1)**
222:13
**bit (6)**
75:8;138:17;153:9;
159:4;170:17;196:10;
240:19,22
**Black (8)**
18:4;19:8,8,12;
20:18;148:13;166:8;
174:7
**blackline (10)**
67:6,15,18;70:14,25;
71:5;98:15,20,21;99:5
**blacklined (1)**
71:15
**blackout (1)**
101:21
**blaming (1)**
94:13
**blank (1)**
60:22
**blanket (1)**
168:7
**blocked (1)**
12:16
**board (2)**
100:13;131:15
**body (1)**
120:22
**bogged (1)**
89:8
**BOKF (5)**
75:20,24,25;76:3;
130:18
**bold (1)**

Min-U-Script®
Case: 19-30088 Doc# 6258 Filed: 03/11/20 Entered: 03/11/20 16:57:04 Page 253
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
of 282
**(3) assume - bold**

236:6
**bonus (1)**
246:2
**book (9)**
171:18,19,21,22,25;
176:4,14;186:13,14
**books (1)**
239:8
**booth (1)**
229:23
**bootstrap (2)**
129:3,5
**both (16)**
12:13;15:15;19:7;
54:9;98:7;104:7;114:3;
118:18;127:14;137:13,
25;138:16;189:24;
199:15;201:1;202:13
**bother (3)**
135:19;238:21;
241:13
**bottom (7)**
105:8;113:4;149:23;
169:18;190:1;194:20;
206:4
**Botts (1)**
19:12
**bought (1)**
47:3
**box (2)**
82:13;158:1
**bracketed (2)**
232:15,16
**brackets (1)**
232:13
**Bray (29)**
18:13;118:17,21,21;
119:5,9,15;120:4,11,
14,19;121:4,7,12,15,
22;122:1,3;123:3,7,9,
14,17,20;124:1,19;
128:16,22;129:22
**Bray's (2)**
127:24;246:24
**break (13)**
77:10,11,13,16,17;
79:23;80:1,14;83:1;
125:4;129:14;130:6,19
**brief (7)**
10:7;14:11,18;
128:17;224:16;239:11,
12
**briefed (1)**
75:7
**briefing (7)**
25:19;80:4,6;120:3,
12;134:18;243:10
**bring (2)**
71:16;123:1
**bringing (1)**
123:4
**broad (5)**
22:9;169:15,21;

172:17;231:16
**broader (2)**
36:21;161:19
**brought (2)**
32:24;105:13
**brownie (1)**
105:5
**bucket (4)**
94:8,9,10;168:6
**bucks (1)**
19:4
**budget (3)**
53:13;54:16;55:8
**budgets (2)**
53:2,22
**build (1)**
206:24
**building (1)**
104:3
**built (2)**
62:8;138:4
**bullet (9)**
49:12;181:14;185:2;
190:14,23;194:15;
199:2,18;204:1
**bulleted (1)**
174:16
**bullets (2)**
174:19;180:21
**bump (1)**
105:10
**bunch (2)**
16:8;92:25
**bundle (1)**
114:14
**burden (6)**
16:14,15,16;19:3;
143:22;219:3
**burying (1)**
189:25
**business (3)**
93:22;195:14;239:21
**busy (2)**
7:15;76:5
**Butte (1)**
50:5
**buy (1)**
167:8

**C**

**cabinet (1)**
56:9
**Cal (9)**
10:19;67:24;78:5,8;
79:15;82:13;101:9;
120:9;124:15
**calculate (1)**
152:12
**calculated (2)**
138:22;149:1
**calculation (5)**
73:1,6;80:16;145:13;

152:13
**calendar (10)**
12:14,14;15:15;18:7;
19:17;20:19;23:25;
24:6;245:4;246:2
**CALIFORNIA (8)**
7:1;39:24;78:20;
81:4;104:7;178:12;
198:21,22
**Call (17)**
7:3;16:5;75:15;
120:13;130:6;136:9;
141:18;169:23;178:25,
25;179:1;182:7;
190:23;209:8;214:10,
11;248:1
**called (14)**
18:21;44:9;93:25;
115:14;181:3;193:9;
209:21;210:10,13;
211:20,25;214:6,7;
223:16
**calling (2)**
191:16,16
**calls (3)**
21:10;30:8;237:5
**came (3)**
14:17;17:9;210:21
**campaign (4)**
178:4,7;200:5;
229:22
**can (149)**
8:11;10:7,17;11:8,
16;14:22;15:1;16:12;
18:25,25;19:6;20:21;
21:11,14,21;22:2;
23:19,25;25:11;28:25;
29:24;33:24;39:13;
40:17;41:3;43:17,18;
45:6,12,14;48:14;
49:15;52:8,25;54:11;
55:5;58:3;61:8,8,24;
66:2;67:6,9;71:12,14;
72:8;73:2,5;75:16;
77:6;80:4,25;81:8;
86:24;87:3;88:12,16;
93:13;94:21;98:11;
102:22;103:4;117:19;
120:5;125:8,24;126:4,
22;127:1,9;128:4,5;
129:7,20,24;130:12;
131:6;134:24;135:1;
137:13;142:19;144:6,
8;147:7,13;151:13;
152:6;155:11;158:4;
161:7;164:25;166:1,8;
168:15;169:23,23;
170:3,7,13,14,16,24;
171:6;174:13;177:8;
179:18;180:20;182:3,
5,5,6,14,22,22;184:22;
187:17,22;189:8;
190:4;194:10;198:4,5;

199:13,14;204:2;
207:11;208:2;209:4,6,
13;211:11;215:8;
219:5,6;220:16;
222:19;225:15;227:6;
228:4,18,25;231:25;
237:19;240:6;243:18;
244:7;245:16;246:24;
247:24
**candidate (5)**
63:12,14;159:19;
222:4;229:23
**cap (6)**
138:9;144:5,12,21;
145:14;147:10
**capital (1)**
35:10
**capitalization (8)**
144:11,18;147:7;
149:2,9;150:10;
151:19;152:12
**caps (1)**
206:5
**car (3)**
46:8;47:3;232:6
**care (6)**
72:23;125:24;172:8,
12,23;188:8
**carefully (2)**
169:13;223:18
**cares (3)**
239:21,25;242:13
**Carlin (19)**
107:18,19,20,21;
108:2,13,21,23;109:15,
20,23;110:12,16;
111:12,14,16,18,20
**Carlson (23)**
85:11,13,14,15,15,
17,24;86:3,4,7,9;87:14,
17,21;88:4,7,9,25;89:4,
5;90:2,4,5
**Carlson's (1)**
87:1
**carry (2)**
30:18;222:3
**carryover (1)**
9:1
**cart (2)**
147:4
**carve-out (1)**
168:7
**case (39)**
17:7;19:7;24:5;
26:17;34:10,11;36:3,
22;38:12;39:17;40:19;
45:16;47:2;59:12,14,
16;60:3,3,4;105:18;
121:24;122:22;124:7;
140:8;143:8,11;
145:23;146:13,21;
169:20,25;175:19;
177:7;210:10;213:10;

221:6,10;242:6;243:18
**cases (9)**
122:23,24;141:2;
158:4;179:23;202:22;
226:8;239:17;242:6
**cash (3)**
95:21;189:14;206:20
**casualty (2)**
46:6;112:6
**cataclysmic (1)**
120:25
**catch (3)**
71:11;113:6;147:15
**categories (1)**
53:23
**Cathy (1)**
50:14
**caught (1)**
17:13
**cause (6)**
92:25;93:24;120:25;
187:13;197:4,17
**caused (6)**
92:1;105:14;198:19;
207:18;208:3,3
**causes (4)**
90:8;96:1;115:6,14
**causing (2)**
94:14;176:23
**caveat (1)**
113:20
**cell (3)**
91:13;94:8,11
**cents (6)**
40:18;42:20;44:18,
19,19;59:13
**CEO (1)**
198:5
**certain (11)**
63:13;95:15;113:19,
21;115:6;116:23,23;
164:4;189:12;224:6;
242:9
**certainly (20)**
16:12;19:19;22:11,
13;32:12;34:7;39:21;
93:21;122:24;124:19;
128:5;137:2;142:22;
154:6;170:6;174:5;
178:21;198:24;216:12;
239:24
**certainty (1)**
157:25
**cetera (4)**
19:1;132:22;189:15;
215:3
**CFO (1)**
182:2
**challenge (6)**
36:12;81:12;195:7;
221:4,5,6
**challenges (3)**
92:16;93:16;97:7

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 254
of 282

**chance (4)**
25:24;135:18,18;
155:18
**change (29)**
62:19;63:16;66:15,
22;68:21;75:11;86:14;
88:1;89:25;95:4;97:25;
102:10;111:10;117:11;
121:2;138:14;145:5;
147:16;149:4;159:2,9;
163:16,20;185:7;
189:13;208:14;210:23;
211:4;214:24
**changed (13)**
17:13;23:12;72:5;
87:3;88:16;127:15,22,
23;128:4,12;129:9;
156:15;166:3
**changes (13)**
33:15;34:22;37:6;
72:10;86:22;92:4;97:8;
102:22;174:11,19;
189:18;227:19;247:10
**changing (1)**
147:2
**channeled (1)**
83:19;84:2,4,5
**channeling (2)**
228:14,14
**Chapter (12)**
34:11;38:25;39:9;
59:12;60:6;174:6;
199:21;202:22;240:13;
245:4,8;246:2
**characterize (1)**
87:18
**charge (1)**
54:5
**Charles (1)**
193:10
**chart (7)**
24:17;25:9;33:22;
95:9;107:8;134:25;
137:15
**cheat (1)**
172:3
**check (2)**
28:15;180:5
**chicken (1)**
140:19
**chip (1)**
25:3
**choice (7)**
89:17;140:11;
141:17;142:17;144:20;
182:23;188:6
**choices (1)**
38:18
**choose (1)**
61:6
**chooses (1)**
203:6
**chose (1)**

92:24
**chosen (1)**
144:21
**circles (1)**
13:3
**Circuit (1)**
164:15
**circulated (1)**
135:24
**circumstance (1)**
122:16
**circumstances (3)**
45:4;102:9;122:22
**cite (1)**
105:17
**citizen (2)**
184:17;198:21
**city (1)**
93:25
**city's (1)**
239:8
**Civil (6)**
82:21;208:19,24;
209:17;210:4,6
**claim (117)**
7:25;18:24;23:12;
25:13;28:13;29:16,17,
18;30:22,24;31:1;32:6,
24;33:1;42:21;43:7,10;
45:21;50:3,4;51:5,17;
57:20;61:15;62:4,10;
66:9,10;79:3,8,15;83:6,
8,9,11,19,25;84:14,15,
18,25;85:2;97:23;
103:4,14,15,15,18,22;
104:1;108:3,8,9,15,16,
18;109:11,18,19,25;
110:3,4,17;111:4,4,6,8;
116:13,15,15,16;123:1,
5;131:16;134:19;
138:8,12,21;139:5,11;
141:16,22;145:25;
148:20,25;150:6;
153:5;154:15,16,25;
155:13,19;157:2,2;
159:6,12;160:6,10;
161:19,21,21;162:1;
163:13,15;164:4;
166:21;181:5,18;
188:19;189:2;210:2;
215:18;216:13;230:18;
232:12;233:8,13
**claimant (9)**
36:4,4,6;86:19;
88:18;124:14;131:23;
145:12;159:25
**claimants (22)**
14:14;23:7;34:3,13;
38:6,11;39:12;40:25;
41:8;50:21;51:9;78:2;
82:13;88:15;97:21;
98:3;99:24;139:16;
143:4;160:14;204:22;

232:19
**claimants' (1)**
44:20
**claimed (2)**
145:24;153:1
**claims (163)**
10:2;19,20,22,24;
18:14;23:10;26:9,12;
27:2;28:10;29:2,2,4,5;
30:14;31:11;33:25;
34:8,8;35:20;38:8,14;
39:24;40:2,4,6,7;
41:13;42:4,6,13,19;
43:4;44:4;45:15,18;
46:3;49:14,15,17;
50:22;52:1;53:7,7,10,
11,15,20,22;54:8,10,
16,16;55:7;60:19;
61:16;62:2,3,5,13;
63:5;64:11;67:10;68:2,
8;69:18,20,23;70:18;
75:18;78:4,5,9,12,21,
22;79:16;82:4;83:20;
84:7,20;86:19;88:11;
91:10;92:2;93:3;94:17,
19;101:5,6;102:19;
103:12;105:12;109:1,
2,3;111:7;115:15;
122:14,18;131:16;
133:25;135:11;136:8,
11,11,15,16;137:25;
138:24;139:4,10,22;
140:7,21,22;141:25;
145:11,23;146:20;
149:12;153:6,8;154:8;
155:11,17;156:19;
158:12,23,24;159:5,11;
160:2,11,19,20;161:4;
162:1,18;163:1;
164:12,25;165:13;
167:10,10;168:1,6,9;
170:8;180:3;181:4;
184:21;188:18;189:14;
191:11;194:7;212:18,
22;214:17;224:7;
232:23;241:1
**claims' (4)**
50:14;55:13;60:21;
64:1
**claims- (2)**
34:17;185:2
**claims-resolution (5)**
34:6;44:21;87:23;
88:4,9
**claim-treatment (1)**
9:8
**clarification (3)**
37:23;63:19;117:19
**clarified (2)**
34:20;101:4
**clarifies (1)**
136:13
**clarify (5)**

34:18;83:1;118:10;
123:10;210:8
**class (44)**
49:17;75:18;109:10,
19,24,24;110:3;119:2;
134:3;135:2;137:11;
138:1,17;140:14,14;
141:12,16,22;142:24;
143:14,18,20;144:1,2;
145:20;146:6,19,19,20;
147:1;154:5,15;
155:24;156:11;158:9,
12,23;159:5,14;161:2,
3,25;169:19;216:22
**classes (1)**
232:20
**classification (9)**
12:24;80:7;81:8;
82:5;137:9,23,24;
138:2;163:21
**classified (1)**
136:17
**classify (1)**
136:11
**clauses (1)**
124:18
**clean (10)**
67:5,23;98:16;
148:13,14;149:18;
166:4,11;174:7;239:18
**cleaner (1)**
99:13
**clear (19)**
21:7;29:9;31:9,22;
34:19;58:11;72:14;
74:24;88:15;102:15;
113:18;122:11;127:17;
153:4;165:11;180:20;
199:15;214:23;215:8
**clearer (1)**
127:18
**clearly (3)**
27:10;36:6;54:4
**CLERK (2)**
7:4,12
**clerks (1)**
9:25
**client (10)**
21:7;23:24;69:11;
106:23;110:2;116:12,
12,14;134:5;186:24
**clients (12)**
54:12;55:11;93:20;
156:23;186:2;190:10,
10;195:3;211:22;
220:22;225:1,4
**client's (1)**
19:18;69:6
**clock (1)**
130:7
**close (2)**
147:9;149:9
**closer (2)**

24:6;44:4
**closes (1)**
36:16
**cloth (1)**
185:24
**clue (2)**
60:18;142:14
**CN (2)**
90:6,24
**co-counsel (1)**
112:7
**Code (6)**
110:9;119:15;158:2;
187:3;188:1;219:16
**coffer (1)**
151:13
**cognizant (1)**
176:23
**collateralization (1)**
213:20
**colleague (2)**
23:24;70:7
**colleagues (6)**
7:15;17:14;98:11;
177:25;236:10;239:3
**collectively (1)**
158:6
**column (1)**
113:3
**combined (2)**
63:8;141:4
**comfortable (4)**
94:17;124:21;
127:20;207:24
**coming (9)**
8:2,8;58:9;78:19;
91:23;173:13,13;
191:1;197:23
**coming-up (1)**
8:1
**commenced (2)**
44:23;202:22
**comment (11)**
89:24;100:1;122:10;
135:19;188:13;189:8;
203:22;218:9;224:18;
226:2;236:24
**comments (13)**
9:13;13:25;31:21;
118:25;119:5,19,20;
120:14;121:17;122:6;
189:10;225:18;226:8
**commercial (1)**
47:20
**Commission (1)**
81:4
**commit (1)**
243:20
**committed (1)**
141:15
**committee (37)**
14:9,14;20:17;26:9,
19,23;32:15;33:11;

Min-U-Script®

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 255
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) chance - committee

34:3;35:20;37:6,20,21;
41:11;44:2,20;47:12;
78:1;87:4,11,25;
118:13,22;120:15;
121:17,23,23;127:25;
128:3,10,23;131:15;
186:10;211:9;214:18;
240:15,18
**committee's (1)**
124:5
**common (2)**
136:12;138:13
**communicated (1)**
185:16
**community (1)**
69:16
**companies (2)**
224:8;241:14
**companies' (1)**
238:14
**company (18)**
38:25;60:9;85:2;
100:23;106:15;112:7;
120:6;122:9;174:21,
25;193:9;194:18;
197:17,23;198:3;
207:1;221:12;233:24
**company's (4)**
56:8;93:10;102:2;
110:8
**compared (2)**
62:11;218:4
**comparing (1)**
218:3
**competing (1)**
177:14
**complain (1)**
16:17
**complained (2)**
16:20;88:19
**complaining (1)**
93:2;186:20
**complaint (2)**
109:3;208:21
**complaints (1)**
17:23
**completed (4)**
9:11,12;55:15;
247:24
**completely (10)**
121:12,17;123:7;
124:16;129:12;162:12;
164:14;165:21;207:11;
208:10
**complex (2)**
13:16;169:11
**complexity (1)**
230:16
**complicated (13)**
74:12;135:8;162:24;
180:15,17;192:15;
236:14,18;237:16,17,
18;238:7,21

**complimented (1)**
74:7
**compliments (1)**
246:6
**components (1)**
39:25
**comprehensive (3)**
74:9;119:17;212:15
**compressed (1)**
24:6
**compromise (2)**
26:18;47:22
**concept (4)**
162:9;165:17;
228:22,22
**concepts (1)**
191:4
**concern (23)**
16:18;18:10;72:11;
113:25;114:7,10;
115:11;121:4;122:12;
123:20;124:1;138:2,
20;142:6;147:5;
151:22;156:4;157:8;
158:21;164:1,2;173:3;
189:22
**concerned (12)**
16:13;74:19;108:7;
113:10,20;119:25;
176:11;208:11;211:15,
17,18;222:19
**concerning (1)**
122:7
**concerns (15)**
24:10;33:24;66:5;
119:24;120:7;137:12,
24;138:3,15;154:5;
173:8;174:12,20;
225:1;239:4
**concessions (1)**
176:21
**concluded (1)**
248:11
**conclusion (1)**
111:2
**conduct (2)**
187:24;188:8
**conducted (1)**
222:20
**conduit (1)**
105:4
**confer (8)**
19:2;81:5;202:8,13;
228:9;231:8,18;237:23
**conference (1)**
18:11
**confidence (1)**
63:7
**confined (1)**
160:15
**confirm (7)**
43:17;106:8;121:6;
122:15;128:12;134:5,

13
**confirmable (5)**
28:21;129:9;143:21;
155:21;195:4
**confirmation (65)**
11:22;16:13;18:12;
26:12;29:6,7,9,21,23,
24;31:2,20;36:13,17;
39:6,6;63:23;76:12;
78:23;86:12,21;87:8,
15,24;88:14,17;101:10,
11,16;106:17;111:6;
118:16,17;128:1;
129:7;130:24,24;
138:16;144:23,24;
146:5,8,9,10,24;
153:17,21;164:16,17;
165:6,24,25;166:20;
167:22;170:10,14;
174:3,11;205:18;
213:3,4;218:18;
227:25;228:5;229:1
**confirmed (10)**
36:15;38:20;60:10;
82:18;120:21;121:11;
156:2,23;157:24;
218:21
**conflict (2)**
191:17,17
**conforming (1)**
227:19
**confuse (1)**
174:11
**confusing (3)**
184:4;186:12;223:8
**confusion (3)**
187:7,13;209:4
**Congratulations (1)**
85:9
**conjunction (1)**
87:25
**connection (5)**
11:23;23:11;73:25;
123:22;167:16
**consensually (1)**
170:17
**consent (1)**
17:22
**consequence (2)**
235:17,21
**consequences (5)**
92:1;235:10;237:13,
14;240:11
**consider (3)**
118:25;199:23;203:1
**consideration (4)**
96:17;174:17;
218:10;243:17
**considered (2)**
174:21;214:9
**consistency (1)**
47:14
**consistent (15)**

20:4;22:25;26:13;
27:3;32:13,21;35:3;
36:15;37:14;41:5;71:3;
72:17;117:5;137:15;
150:15
**consistently (1)**
135:24
**conspicuously (1)**
139:17
**constituency (1)**
119:22
**constituent (1)**
169:25
**constituents (3)**
119:2,10;156:1
**constructive (4)**
63:6;201:14;242:2;
244:17
**consult (4)**
9:14;86:13;87:11;
162:18
**Consulting (1)**
90:25
**contacted (1)**
187:18
**contain (1)**
153:6
**contains (1)**
32:7
**contemplate (1)**
26:11
**contemplated (2)**
37:13;205:23
**contemplates (1)**
53:2
**contend (2)**
169:14,15
**contends (1)**
169:20
**contention (1)**
36:25
**contentions (1)**
196:9
**contested (1)**
18:23;21:8
**context (5)**
90:12;91:7;96:17;
127:13;161:25
**contingencies (1)**
161:6
**contingent (2)**
78:21;158:24
**continuation (1)**
28:20
**continue (6)**
92:6;19;93:18;122:8;
124:2;194:23
**continued (1)**
198:18
**continues (1)**
166:23
**contractors (2)**
91:10;93:22

**contractual (1)**
122:19
**contrary (1)**
23:21
**contributed (3)**
96:1,2;199:20
**control (2)**
142:25;143:9
**controls (1)**
32:10
**convene (3)**
242:24;244:5,6
**convenience (4)**
77:9;125:23;244:18;
245:24
**convenient (1)**
245:16
**conversation (2)**
64:24;130:19
**convictions (1)**
199:19
**convince (3)**
157:14;161:13;
236:16
**copies (1)**
227:2
**copy (4)**
67:23;112:13;
147:18;174:7
**corner (1)**
98:25
**corollary (1)**
197:23
**coronavirus (2)**
11:7;94:10
**Corp (1)**
159:7
**corporate (1)**
239:23
**Corporation (1)**
7:12
**corrected (1)**
190:22
**correctly (1)**
64:9
**costs (3)**
15:9;190:24,25
**counsel (41)**
15:6;18:4;19:8;
21:25;26:23;32:14;
68:11;75:24;76:3;86:4;
96:6;98:10;99:19;
106:7,10;107:17;
108:11;111:11;112:3;
115:12,17;116:10;
118:22;124:23;130:17;
135:18,25;136:20;
152:6;165:22;175:18;
186:20;196:9;228:9;
231:8,18;237:23;
238:15,18;242:10;
243:18
**counselors (1)**

Min-U-Script®

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 256
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) committee's - counselors

125:3
**counsels (2)**
238:17;241:14
**counsel's (2)**
102:11;134:8
**count (2)**
133:6;159:1
**counterclaims (1)**
122:19
**counting (1)**
207:13
**countless (2)**
56:1;239:17
**county (1)**
238:18
**couple (10)**
7:13;21;12:10;
124:13;125:7;151:24;
152:13;166:24;171:15;
218:20
**course (10)**
7:17;29:4;41:20;
79:20;101:7;108:19;
124:13;126:5,5;165:10
**Court (1186)**
7:3,4,6,8,13,21,22,
24;8:5,10,19,22,24;9:4,
11,16,21;10:5,9,12,20,
21,23;11:4,6,12,18,25;
12:4,14,20,22,24;13:1,
3,7,11,13,15,22;14:4,8,
18,19,21,22,24;15:1,5,
17,19,24;16:1,4,14,15,
19,22,24;17:14,16;
18:2,4,13,15,19;19:8,
15,23,25;20:2,6,8,13,
15,24;21:10,18,20,21,
24;22:2,12,16,20;23:3,
5,8,14,16,18,22;24:4,9,
11,12,21,24;25:2,5,22;
26:2,7,16,18;27:6,12;
28:4,8,12,17,21,24;
29:8,12,20,24,25;30:6,
12,17,20;31:2,8,13,24;
32:2,4,14,22;33:4,5,8,
10,18;34:21;35:12,15,
18,23,25;36:10,15,20,
24;37:3,11,15,17;38:1,
18,20,23;39:3,18,23;
40:23;41:7,9,14,19,21,
23;42:5,7,9,11,14,17,
20;43:1,3,6,12,16,19,
23,25;44:6,18,25;45:2,
6,10,12,14,17,22,25;
46:5,12,14,16,18,24;
47:3,5,7,9;48:2,5,15,
17,19;49:2,5,11,18,22,
23;50:12,15,18,23;
51:1,7,12,18,23;52:5,8,
12,14,16,20,23,25;
53:5,8,13,25;54:18,21,
24;55:4,6,9,14,16,20,
25;56:14,20,22,24;

57:10,13,15,17,24;
58:3,20;59:4,6,9,21;
60:24;61:4,6,12,18,23;
62:22,25;63:19,24;
64:5,6,8,17,19,23;65:5,
8,11,14,16,19;66:13,
18,21,25;67:5,8,12,14,
16,20,22;68:4,9,12,15,
18,24;69:2,6,10,14,19,
22,24;70:2,5,9,15,21;
71:5,8,10,14,21,24;
72:2,8,16,19,21,23,25;
73:6,10,13,17,19;74:2,
5,7,21,23;75:4,10,13,
16,24;76:7,14,21,25;
77:4,8,13,16,18,21,23,
25;78:3,8,11,14,16,18;
79:1,5,8,11,17,20,22,
25;80:9,14,16,20;81:1,
11,14,16,19,24;82:8,
10,17,19;83:5,12,14,
16,21,23,25;84:4,8,10,
13,17,21;85:13,14,16,
22;86:1,3,8,10,22;87:5,
8,14,20;88:3,6,8,19;
89:3,5;90:3,5,11,16,20,
20,23;91:1,3,12,15,19,
22;92:20;93:8,19;94:4,
8,21;95:1,3,7,10,13,19,
22,25;96:3,5,20,25;
97:3,9,11,13,17;98:5,9,
15,20,22,24;99:2,4,6,9,
12,19,22,25;100:5,7,
10,13,20;101:3,8,13,
15,19,21,24;102:5,8,
11,14,16,20,21,23;
103:1,3,8,10,17,19,21,
23;104:2,4,7,10,12,19;
105:5,10,17,21,25;
106:3,5,9,13,19,22;
107:2,7,15,17,20,22;
108:10,14,24;109:5,7,
9,9,14,21;110:1,13,21;
111:15,17,19,21,23;
112:3,9,14,17,20,22;
113:1,6,12,16,17;
114:4,14,17,19,21,23;
115:1,4,12,19,21,25;
116:2,11;117:1,8,10,
13,15,17,19;118:2,3,6,
10,13,17;119:4,8,13;
120:2,5,8,12,18,21,25;
121:3,5,8,13,20,25;
122:2,23;123:4,8,12,
15,19,25;124:3,8;
125:9,14,16,21;126:2,
5,11,13,17,19,22;
127:3,5,21;128:6,20;
129:11,13;130:4,11,14,
16,20,22,25;131:3,7,8,
13,19,23;132:2,7,20,
24;133:3,9,11,13,17,
20,24;134:2,4,8,12,14,

18,22;135:1,4,16,23;
136:2,5,8,14,18,20,24;
137:4,7,17,20;139:19;
140:3,6,17,25;141:2,
20,24;142:1,4,12,16,
20,23;143:2,5,7,10,12,
16,19,25;145:8,17,21;
146:13;147:13,20,22,
25;148:8,12,15,17,20,
23;149:3,7,10,13,16,
21,24;150:3,5,8,12,14,
20,23,25;151:5,7,9,11,
13,21,25;152:2,5,10,
18;153:2,10,13,19,21,
25;154:3,10;155:1,4;
156:6,10,18,20;157:7,
19,21,23;158:14,17,20;
159:13,15,18;160:7,16,
24;161:10,24;162:14,
16,20,23;163:3,6,11,
18;165:16,19;166:1,8,
12,14,16,25;167:2,17,
23;168:4,11,13,18,20,
23;169:2,4,9,20;170:1,
5,12,14;171:3,7,12,15,
21,24;172:3,6,10,19,
23;173:1,6,9,15,21;
174:4,10,23;175:10,12,
14,18,21,25;176:2,6,8,
10;177:10,14,16,20,22;
178:3,6,8,11,18;179:3,
5,7,17,19,21,25;180:5,
8,11,14,19,22,24;
181:1,9,11,14,17,20;
182:10,14,20;183:3,7,
10,19,22;184:1,9,15,
17,21,23,25;185:12,15,
17,21;186:1,9,15,17;
187:6,11,15,22;188:8,
12,15,18;189:4,9,18;
190:3,16,20;191:3,21,
24;192:5,8,11,13,17,
22,24;193:2,4,7,9,13,
17,21,23;194:1,5,7,10,
12,14,21,23;195:1,11,
19,21,23;196:1,4,8,12,
15,17,19,25;197:4,9,
13,15,22;198:2,3,8,10,
12,17,24;199:6,8,17,
24;200:8,10,14,16,23,
25;201:3,6,8,10,13,21,
23;202:1,4,7,9,11,13,
16,18;203:3,10,18,21,
24;204:7,9,11,13,19,
25;205:8,11,13,16,25;
206:2,5,7,10,16,18,20;
207:1,6,8,15,17,23;
208:8,13,17,24;209:1,
9,12,14,17,20,22;
210:1,4,6,11,13,17,20,
23;211:2,4,7,10,14,16;
212:3,5,10,14,16,19,21,
23,25;213:2,6,9,13,16,

19,22,25;214:4,12,24;
215:13,22,25;216:4,7,
9,16,24;217:3,6,8,10,
22,24;218:2,7,14,23;
219:3,11,16;220:2,4,8,
11,12;221:3,18,20;
222:7,23;223:1,4,8,12,
14,15;224:2,4,11,12,
15,17,19;225:2,10,16,
23;226:1,7,13,19,22;
227:2,8,10,12,14,16,
22;228:3,5,8,11;229:2,
5,7,18;230:3,6,9,12,14,
21,25;231:2,4,7,9,12,
22;232:1,4,16,22,24;
233:5,7,10,17,19,22;
234:1,4,6,11,19,21,24;
235:4,8,14,16,20,22,
25;236:9,13;237:2,13,
15,20,22;238:2,5,10,
17,24;239:7;240:17,21,
24;241:1,12,20,22,25;
242:15,18,21;243:6,8,
12,14,16,24;244:1,3,5,
11,16,22;245:3,6,10,
16,19,21;246:1,4,10,
13,16,19,21;247:2,9,
12,22,25;248:3,7,9
**courtroom (2)**
225:5;219:8
**Court's (7)**
14:16,17;15:15;
22:11;53:17;54:3;
112:13
**coverage (3)**
92:17;93:17;161:5
**covered (5)**
118:18;121:17;
163:18;197:18;226:7
**CPUC (10)**
80:16,20,22;101:10;
132:4;182:2;208:4;
222:14,21;240:2
**cram (2)**
143:23;144:3
**cramdown (1)**
146:7
**create (3)**
53:22;54:8;123:23
**creates (1)**
140:19
**creating (1)**
176:14
**creators (1)**
242:5
**credentials (1)**
62:7
**credit (1)**
156:22
**crediting (1)**
34:15
**creditor (19)**
28:12;30:3,6,20,23,

24;59:13;62:9,10,11;
69:12;123:15;136:14;
139:12;142:13;145:19;
155:24;220:25;228:19
**creditors (8)**
30:2;124:6;146:18;
150:21;164:9;179:21;
220:20;235:5
**creditors' (5)**
118:13;127:25;
128:3,10,22
**creditor's (1)**
30:8
**criminal (6)**
199:19;208:19,20,
22;209:15;210:4
**crisis (1)**
207:3
**criticism (3)**
56:2;196:5;238:8
**criticizing (1)**
37:1
**cross (1)**
198:15
**crossed (2)**
61:10;154:9
**crowded (1)**
7:9
**crystal (1)**
153:4
**cue (1)**
52:1
**Cupertino (1)**
91:2;93:20;115:1
**current (3)**
63:21;146:18;203:14
**currently (1)**
96:3,4,6
**cursory (1)**
154:17
**curve (1)**
107:23
**cut (4)**
30:17;162:2;179:19;
180:5
**cuts (1)**
27:18
**cutting (1)**
28:2

**D**

**damage (9)**
34:8;69:23;109:11;
140:7;145:11;146:1;
149:12;150:6;154:15
**damaged (1)**
155:17
**damages (8)**
47:1;53:24;66:10,11;
105:14;139:7;152:25;
159:7
**Daniel (1)**

33:12
**data (8)**
45:3;46:6;48:10;
53:12;54:7;152:6;
161:9;224:6
**date (48)**
26:12;27:19,23;28:2,
5,7,14,20,22;29:14,15;
30:1,7,14,16,22,25;
31:5;41:6;119:24;
127:1;138:10,14;
139:1;140:18;142:8,
10,11,15;144:5,10,20,
21;149:9;150:1,14,15,
16,25;151:2;154:21;
156:21;157:3;162:17,
19;166:20;189:15;
241:1
**David (2)**
8:3;14:12
**day (25)**
9:14,16;15:20;17:17;
34:7;71:1;110:2,5;
126:18;144:13;147:10;
148:5;154:1;180:8;
183:11;210:23;218:18;
223:20;224:17,19;
239:10;240:14;241:2;
245:8;246:5
**days (8)**
10:20;11:2;12:10;
17:12;51:13;81:12;
98:18;126:10
**de (1)**
165:12
**deadline (9)**
80:7;154:14,21,22,
23;162:2,10;163:9;
227:6
**deal (27)**
21:9;24:18;38:16;
39:7;45:23;55:17;
106:24;108:19;110:10;
111:1;122:8,24;
140:11;141:25;145:22;
165:25;169:17,23;
174:13;178:1;212:1;
217:13;243:2,3,3,5;
245:6
**dealing (8)**
21:23;22:17;89:21;
107:24;120:9;155:6,
11;236:10
**dealt (8)**
36:18;101:7;109:11;
110:7;129:24;130:24;
160:19;218:5
**death (2)**
23:1;111:4
**debt (2)**
215:5,17
**debtor (45)**
33:2;37:19;40:4,9;

41:2;45:5,7;60:20;
61:8;71:2;72:5;73:24;
76:18;81:6,9;84:14;
92:14;93:14;96:5,8;
97:16;103:25;105:19;
108:19;119:1,19,25,25;
121:1;123:1;162:4;
163:24,25;167:12;
177:18,22;178:3;
190:8;195:2;202:17;
207:24;217:10,12,13;
234:1
**debtors (57)**
27:20;32:11;37:7;
40:20;41:24;82:2,3;
84:15,16;92:8;95:15;
96:12;101:6;115:5;
119:17;122:9;123:11;
124:2;131:6;137:24;
138:12;139:2;142:7;
143:23;144:2,6,11,12,
18;146:11;147:7;
149:8,20;150:9;
154:16;159:2;162:18;
164:2,6,7,19;165:4;
166:22;167:12;168:7;
169:21;182:11;194:17;
196:23;199:4;202:21;
205:23;209:18;216:11,
19;219:4,18
**debtors' (15)**
15:8;25:9;47:13;
48:22;59:24;60:13;
64:19;75:5;86:4,6;
94:14;97:25;100:18;
138:9;165:8
**Debtor's (3)**
214:14,16
**December (1)**
18:13
**decide (6)**
8:1;11:13;24:2;
74:15;79:13;247:13
**decided (4)**
129:16;155:10;
193:7;223:18
**deciding (1)**
142:14
**decision (28)**
17:19;26:4,16,17;
27:15,23;58:16;62:23;
63:15;76:24;79:12;
81:10;82:7;89:18;
97:18;116:18;118:6;
125:18;129:15;145:9;
148:3;155:12;156:12;
176:11;178:9;184:25;
200:13;241:16
**decision-maker (1)**
17:25
**decision-making (1)**
201:16
**decisions (5)**

65:21;110:19;161:8,
9;170:23
**decree (1)**
89:11
**deemed (3)**
119:21;121:24;
161:22
**deems (1)**
35:6
**defective (2)**
75:17;157:15
**defending (1)**
64:16
**defenses (1)**
123:6
**defer (4)**
19:16;56:12,14;82:8
**deferral (2)**
15:12,15
**deferring (1)**
15:5
**defined (4)**
148:7,11;149:20;
150:18
**definitely (1)**
76:15
**definition (6)**
43:1,3;148:17;149:4;
150:16;239:23
**definitive (2)**
25:16;32:9
**defrauded (1)**
155:18
**degree (2)**
199:5;218:11
**delay (1)**
126:7
**delays (1)**
19:20
**delete (2)**
246:25,25
**deleted (1)**
232:18
**demonstrates (1)**
40:14
**denied (4)**
20:17,17;39:6;
110:22
**Dennis (1)**
7:5
**denominated (2)**
137:25;138:1
**denominator (5)**
142:8;144:19;145:2;
146:12;147:2
**dental (1)**
91:20
**deny (2)**
18:5,6
**denying (4)**
15:2;22:24;31:19;
190:9
**Department (1)**

82:20
**dependent (3)**
54:15;213:2,4
**depending (2)**
81:9;82:6
**Depends (2)**
46:13;159:24
**derived (1)**
133:5
**describe (4)**
168:7;207:7,9,14
**described (4)**
34:22;125:1;136:24;
180:5
**describing (3)**
199:15;207:12;
219:23
**description (3)**
70:23;71:18;169:24
**descriptive (1)**
236:24
**deserve (1)**
238:10
**designated (1)**
17:24
**desk (1)**
147:22
**detail (3)**
202:21;215:6;230:24
**detailed (1)**
34:12
**details (2)**
13:18;213:14
**determination (8)**
86:16;101:1,9;109:9;
207:18;216:17;240:8;
241:2
**determine (2)**
138:11;216:18
**determined (9)**
88:20;96:10,13;
110:7;138:8,23;139:6;
216:18;247:8
**determining (1)**
139:7
**detriments (1)**
189:13
**Deutsche (6)**
106:3,5,6,7,9,14
**devastating (1)**
198:18
**develop (1)**
64:2
**development (1)**
194:8
**device (1)**
18:21
**devil's (1)**
177:11
**diary (1)**
240:14
**die (1)**
23:1

**difference (7)**
62:22;68:19;72:15;
87:15;116:9;144:15;
199:10;210:9
**differences (4)**
15:4;74:10;88:14;
192:21
**different (33)**
16:1;21:22;22:6;
27:25;39:15;47:2;
58:14;60:3,3;65:25;
82:13;85:3;86:23;
101:23;108:12;109:22,
23;110:15;115:16;
137:15;139:7;144:4;
152:14;156:25;190:16;
192:1;196:12;214:8;
217:4;223:1;233:3;
234:11;235:8
**differently (5)**
87:18;89:19;155:16;
183:13;192:25
**difficult (6)**
13:15;41:22,24;57:3;
138:17;155:12
**dilute (1)**
76:22
**diluted (1)**
177:1
**dinner (1)**
125:17
**direct (7)**
185:9;190:8;203:18;
230:17;232:12;233:2,2
**directing (1)**
215:15
**directive (3)**
226:15,25;227:4
**directly (2)**
163:24,24
**dis (1)**
208:7
**disadvantage (1)**
181:25
**disadvantageous (1)**
182:17
**disagree (6)**
27:8;65:23;128:13;
129:10;165:21;169:21
**disallowed (2)**
162:13,16
**disapproval (1)**
126:7
**disapprove (1)**
31:18
**disapproved (1)**
59:9
**disassociated (1)**
175:2
**disassociates (1)**
174:25
**discharge (3)**
99:12;118:15;128:9

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 258
of 282

**disclaimer (1)**
56:8
**disclose (8)**
61:17;75:22;92:14;
171:4,4;179:6;191:2;
213:22
**disclosed (15)**
40:21;87:10;88:21,
23;94:19;168:25,25;
169:1;175:1;212:9;
213:8,10;215:19;
217:7,10
**disclosing (1)**
43:25
**disclosure (199)**
9:7,19;10:13;11:21;
14:1;24:15;26:14,15;
27:14,17;31:18;33:16,
23;34:14;35:11;38:2;
43:19,22;44:9;47:17;
48:9;54:24;55:17,18;
56:4;58:12;59:6;60:16,
25;62:1,23;66:19;69:4;
70:19,25;71:2,15;
73:15,23,25;74:11;
75:21;76:11,15;80:24;
81:6,7,21;87:12,15;
88:14;90:9,14;92:13;
93:8,14;94:15,16,22;
95:4;96:14;97:14;98:7,
9;100:7;102:7,22;
105:15;106:16;107:4,
5;109:16;110:14,24;
111:25;112:12;114:5;
118:3,19;119:6,18;
125:11;126:7,9;128:2,
5,8,14;129:8;130:9,21;
132:6;137:13;138:16;
139:13,17;140:12,13;
141:5,14;142:9,9;
144:7,25;145:22;
146:5,18;147:6,11,14,
15,17,18;150:15;151:1,
18;152:8,11,16;157:11,
15,16;164:18,20,23;
165:2,7,11,22,24;
166:2;167:13,21,22;
170:3,15;171:8;173:3,
24;174:7,18,22;175:5,
25;176:3,25;179:5;
180:15;183:2,24;
184:21;186:7;187:21,
22;188:4,5;189:5,11,
23;190:1,21;195:15;
196:6;199:13,15;
200:12;203:5;205:23;
207:25;208:10;211:22;
213:23;214:5,12,13;
219:19;220:6,9;
221:16,22;222:10;
223:22;224:9;225:5;
231:9,12;234:9;

236:14,22;239:1,7,18;
242:7;246:25
**disclosures (5)**
58:22;189:25;209:4;
242:10,13
**disclosure-statement (9)**
78:25;82:22;85:6;
107:25;118:25;129:19;
148:10;165:7;171:5
**disconnected (1)**
208:10
**discount (1)**
58:18
**discovery (7)**
14:10;18:12,18,22;
40:21;96:9;102:5
**discretion (2)**
51:22;62:20
**discuss (3)**
25:16;66:2;237:25;
238:1;243:20
**discussed (6)**
65:4;77:20;78:2;
92:22;195:14;211:21
**discussing (3)**
155:22;224:5,6
**discussion (19)**
8:13;21:14;36:23;
39:24;41:6;51:15;63:4;
97:1;108:10;114:2;
124:21;125:5;126:3;
162:19,20;166:17;
167:25;232:5;238:3
**discussions (1)**
229:11
**disenfranchised (1)**
119:10
**dismiss (2)**
110:23;130:8
**dismissed (2)**
209:6;210:10
**disparate (1)**
57:22
**disposes (1)**
11:10
**dispute (1)**
230:17
**disputed (6)**
29:4;61:16;160:2,6,
20;161:21
**disputes (2)**
25:14;76:6
**disqualify (1)**
160:10
**disregard (1)**
88:12
**disrupt (1)**
135:10
**disruptive (1)**
141:17
**distress (1)**
53:9
**distribution (7)**

34:2;35:1,3;37:13,
13;145:5;146:22
**distributions (5)**
48:21;76:19;204:11,
17,20
**district (7)**
36:24;169:20;208:21
**divided (2)**
138:9;149:1
**Division (1)**
82:21
**doable (2)**
89:14;220:24
**doc (2)**
226:1;228:8
**docket (7)**
32:23;48:11;67:3;
70:24;112:24;181:19;
201:25
**doctrine (2)**
104:14,21
**document (32)**
9:17,18;25:6,23;
32:9,25;37:9;44:9,15;
49:13;56:10;60:20;
66:18;74:9;86:6;
112:23;149:19;165:23;
166:13;169:5;170:20;
173:4;201:21,22;
209:22;213:25;214:1,
3,23;220:23;223:6;
224:10;226:20
**documentation (2)**
41:12;83:3
**documented (1)**
78:4
**documents (13)**
13:16;22:19;25:8;
44:22;65:2;71:11;
78:24;89:2;135:25;
164:22;165:2;170:22;
226:25
**DOJ (1)**
83:4
**dollar (41)**
35:17;37:25;40:19;
42:21;49:16;59:13;
70:3;74:4,5,22;75:17;
85:2;124:14;125:8;
127:9;131:7,17;133:8,
24;134:19;140:10;
147:10;148:24,25;
149:1;150:13,17;
151:1,1,3,4;158:10,11,
18;159:2,4,9;160:11;
163:9,13;226:4
**dollars (40)**
28:13;29:13;30:6,9;
41:18;42:13;43:7,8,10;
44:11;47:6,8,21;50:4;
51:19;55:7;61:19;
64:18;66:10;83:13;
90:13;97:21;108:16,

17;131:18,21,24;
133:14,15;138:1;
144:8,14;145:3,3,25;
159:7;163:14;191:11;
206:11;210:24
**done (25)**
16:7;18:24;20:10;
35:23;41:4,25;70:8;
106:25;108:1;120:12;
140:23;148:2,4;157:1;
158:3;170:5;195:5;
206:23,25;208:5,5;
221:11,16;245:12;
247:15
**door (6)**
7:8;36:16;126:13,15;
145:12;241:3
**Doose (1)**
223:3
**Dose (1)**
223:3
**dotted (1)**
61:12
**doubt (4)**
41:19,21;143:20;
178:11
**doubts (1)**
139:3
**down (40)**
8:2;24:4,17;25:10,
25;39:4;52:21,25;57:5;
65:8;66:1;68:1;82:10;
84:22;89:8,15;90:6;
99:18;103:1;110:23;
112:14;143:20,23;
144:3,6;145:10;
155:24;170:6;171:22;
173:11,17;178:19;
181:9;188:6;189:25;
199:1,14;219:23;
222:4;223:23
**downplays (1)**
189:21
**downside (1)**
187:7
**draft (8)**
17:13;56:21;60:21;
127:15;187:21;203:14,
14;215:1
**drafted (3)**
27:4;169:13;234:16
**drafts (1)**
202:1
**drive (1)**
145:9
**drop (2)**
19:16,20
**dropping (1)**
212:7
**drug (3)**
47:19;56:8,8
**dry (1)**
198:18

17;131:18,21,24;
133:14,15;138:1;
144:8,14;145:3,3,25;
159:7;163:14;191:11;
206:11;210:24

**Ds (2)**
164:4;167:10
**duck (1)**
16:5
**due (3)**
113:19;190:10;197:7
**dug (1)**
215:7
**dumb (1)**
145:9
**dump (1)**
182:18
**Dunn (1)**
27:2
**duplicative (1)**
242:8
**during (3)**
77:6;94:10;125:3
**duties (1)**
93:10
**dwell (1)**
85:6

**E**

**earlier (15)**
20:10;56:25;60:8;
89:9;92:22;154:13;
155:23;185:10;189:22;
191:19;204:20;236:24;
240:6;246:1,7
**early (2)**
17:12;126:23
**easier (3)**
11:9;141:22;168:21
**East (1)**
244:7
**easy (7)**
70:12;89:10;129:6;
139:23;147:6;169:9;
243:13
**ECF (2)**
148:16;149:19
**edit (1)**
96:22
**educated (3)**
20:4;177:9;225:4
**education (1)**
174:6
**effect (7)**
92:24;93:4;120:25;
164:12;165:1;215:16;
234:24
**effective (19)**
26:12;27:19,23;28:2,
5,7,14,22;29:14,15;
30:1,7,14,15,22,25;
166:20;183:11;189:15
**effectively (3)**
19:21;80:19;164:13
**effort (4)**
47:16;56:4,18;141:9
**efforts (1)**

24:13

**egg (1)**
140:19

**eight (1)**
55:14

**either (28)**
26:18;39:5,23;55:17;
56:25;58:1;60:24;64:5;
74:16;85:14;109:10;
110:5;118:4,7;126:7;
133:13;137:13;140:20;
142:17;149:11;151:4;
164:5;174:7;216:10;
223:4;224:9;230:21;
246:25

**elbow (1)**
105:10

**election (3)**
61:7,7;222:4

**Electric (5)**
21:4,4;91:2;93:21;
115:1

**electronic (1)**
7:16

**Elizabeth (2)**
32:17;34:24

**else (30)**
11:15;17:22;25:17;
26:20,21;39:8;40:3;
48:19;58:24;60:10;
65:20;83:9;89:2;
117:10;123:1;125:1;
132:10;139:21;151:14;
159:20;167:12,13;
177:23;178:14;184:4;
198:20;213:22;230:1;
235:20;247:5

**else-caused (1)**
196:25

**else's (1)**
158:11

**elsewhere (2)**
31:14;239:24

**emerge (1)**
102:2

**emerges (1)**
207:1

**emotional (1)**
53:9

**end (22)**
9:25;18:10;21:5;
24:18;34:6;35:21;68:6;
74:17;84:8,10;88:10;
110:2,5;126:14;
127:13;129:12;130:13;
147:10;169:3;180:8;
183:11;205:1

**ends (1)**
171:2

**enjoins (1)**
228:16

**enjoy (1)**
77:13

**enormous (3)**
41:23;191:10;194:8

**enough (10)**
55:2;61:22;63:7;
64:15;77:8;124:23;
148:4;152:16;230:14;
239:12

**enter (3)**
80:10;214:17,18

**entered (2)**
41:11;73:25

**entering (1)**
199:20

**entire (4)**
40:25;71:1;242:12

**entirely (4)**
22:6;84:18;138:5;
161:1

**entities (5)**
55:8;57:14;214:15;
233:7;238:18

**entitled (10)**
110:6;146:13;
148:18;156:24,25;
157:2;216:12,19;
223:19,19

**entity (2)**
42:15;105:14

**entreaty (1)**
128:24

**equal (1)**
37:13

**equally (1)**
62:12

**equation (1)**
189:24

**equitable (3)**
35:3;37:14;122:18

**equity (11)**
136:11;137:11,25;
138:21;143:12,13;
146:2,20,20,21;159:7

**equity-based (2)**
158:12,22

**equity-subordinated (1)**
159:25

**Eric (3)**
77:24;85:11,15

**essence (1)**
169:14

**essentially (4)**
35:21;122:11;
123:22;131:11

**establish (3)**
14:9;35:6;54:8

**established (1)**
228:23

**establishing (1)**
109:1

**estate (1)**
163:25

**estates (1)**
164:7

**estim (1)**
12:22

**estimate (4)**
7:25;41:4;46:7;82:4

**estimated (2)**
38:14;49:16

**estimates (1)**
54:2,9

**estimation (1)**
40:12

**et (4)**
19:1;132:21;189:15;
215:3

**ethical (1)**
225:3

**evaluate (4)**
38:15;57:23;59:20;
110:19

**evaluating (1)**
97:4

**even (46)**
9:23;17:9;19:9;38:9;
44:15;47:19;48:21;
51:20;55:1;58:6;60:19;
63:12;64:20;74:11,12;
110:3;111:1,11;115:9;
124:17;126:25;134:20;
135:6,19,20;139:22;
140:9;144:6,10;146:4;
155:5;159:23;161:5;
164:23;167:14;192:19;
197:18;198:14,21;
205:14;219:5;229:2;
230:6,17;238:21;241:8

**evening (2)**
25:7;86:5

**event (5)**
38:16;101:2,25;
104:16;240:10

**events (1)**
240:5

**eventual (1)**
219:20

**eventuality (1)**
176:24

**eventually (1)**
40:13

**everybody (11)**
22:17;44:11;52:21;
57:2;58:23,24;76:5;
132:2;158:11;235:20;
244:24

**everybody's (2)**
64:20;244:22

**everyone (15)**
7:6;22:9;24:5;25:5;
61:22;77:9,13;85:3;
89:2;127:16;176:22;
178:12,14;208:1;
244:25

**everyone's (2)**
24:12;125:23

**everywhere (1)**

209:22

**evidence (10)**
58:18;185:12;
186:12;187:1;194:17;
197:22;204:12;218:24;
219:12;222:20

**evident (1)**
167:5

**exacerbated (1)**
92:2

**exact (2)**
167:4;232:14

**exactly (13)**
12:19;72:4;89:12;
105:24;109:13;121:7;
138:20;147:8;160:17;
165:23;190:18;204:14;
212:14

**exam (1)**
23:20

**examination (1)**
125:5

**example (15)**
22:7;53:17;62:18;
63:14;67:3;68:6;104:2;
120:14;121:23;161:3;
168:2;176:17;177:5;
207:18;233:10

**examples (1)**
239:8

**except (4)**
62:15;174:16;191:4;
235:17

**exception (1)**
128:9

**excess (1)**
46:3

**exclusivity (1)**
241:2

**Exculpation (7)**
71:19;124:17;
166:18;172:14,17;
227:24;229:9

**excuse (6)**
31:23;120:8;139:19;
149:17;215:19;240:1

**executive-after-executive (1)**
222:15

**exercise (1)**
76:24

**Exhibit (5)**
226:15,16;227:3;
228:1,5

**existed (3)**
138:13;210:2;228:20

**existence (1)**
111:5

**existing (5)**
146:20,21;159:8;
183:5;214:12

**exists (1)**
139:16

**exit (1)**

12:15

**exit-financing (1)**
8:12

**expect (13)**
8:12;22:20;49:15;
65:21;124:23;138:25;
139:4;146:23;153:20;
156:12;160:15;215:22;
221:24

**expectations (2)**
147:3;207:10

**expected (4)**
9:21;49:6,14;244:25

**expecting (2)**
160:13;219:20

**expedited (2)**
13:9;125:4

**expense (2)**
101:6;108:18

**expenses (3)**
47:24;75:23;76:18

**experienced (9)**
44:8;62:6;63:1,1,2,3,
9;158:2;216:24

**experts (4)**
46:5,5;48:13;53:21

**explain (7)**
41:4;145:1;165:14;
174:24;182:14;200:3;
221:22

**explained (5)**
39:19;65:22;165:22;
202:21;204:20

**explaining (1)**
167:24

**explains (1)**
235:7

**explanation (5)**
54:19;56:9;60:13;
63:10;167:3,7;233:1;
241:5,6

**express (4)**
184:18;195:23;
208:2;216:19

**expressed (2)**
174:12;223:9

**expressing (1)**
121:4

**extended (3)**
139:1;140:18;154:21

**extending (1)**
82:3

**extensive (1)**
200:2

**extent (21)**
25:11,13;28:10;29:4;
30:24;31:22;32:9;
33:23;37:20;43:18;
84:19;101:4;102:9;
114:11,12;119:6;
121:2;123:17;124:15;
129:15;153:7

**extreme (2)**

Min-U-Script®

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 260
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(10) egg - extreme

15:3;50:3
**eye (1)**
92:21
**eyes (1)**
169:6

## F

**facade (1)**
165:4
**face (3)**
53:18;122:3;167:5
**fact (30)**
16:15;31:11;38:23;
41:16;42:22;47:16;
53:14;61:18;97:22;
110:17;119:24;165:3,
9;182:17;185:22,23;
186:18;195:12;198:17;
200:24;202:23;214:10;
215:6,6,10,11;217:11;
222:10;226:20;236:21
**facto (1)**
165:12
**factor (1)**
110:18
**Factors (3)**
67:21;173:24;200:1
**facts (2)**
109:22;158:14
**factual (2)**
182:1;212:8
**fair (10)**
21:14;35:2;37:7,13,
14;53:11;54:3;56:2;
160:8;230:14
**fairly (2)**
62:12;120:25
**fairness (4)**
54:12;69:10;115:12;
189:20
**faith (2)**
122:10;220:15
**fall (1)**
243:19
**falls (1)**
175:5
**familiar (2)**
19:25;20:2
**families (1)**
178:15
**family (2)**
197:2;209:23
**far (9)**
18:10;58:22;116:17;
156:13;157:1;159:4;
194:8;207:15;229:18
**Farr (1)**
33:13
**fashion (2)**
123:21;154:17
**fatal (2)**
31:17;128:4

**fatally (1)**
15:9
**fate (1)**
63:10
**faulting (1)**
221:21
**faulty (1)**
140:1
**favorable (1)**
217:12
**favorite (2)**
159:19;239:16
**feasibility (8)**
18:14;22:8;101:12,
15;102:10;174:2;
175:6;195:15
**feasible (6)**
195:3,4,8;205:17;
219:13;220:14
**Feather (1)**
68:7
**feathers (1)**
16:4
**February (1)**
226:2
**fed (1)**
29:14
**federal (7)**
27:11;28:7,14;44:12;
78:22;132:25;194:2
**fee (1)**
188:20
**feel (5)**
115:17;124:21;
190:22;193:1;209:2
**fees (4)**
75:22;76:18;186:21;
191:5
**feet (1)**
44:7
**fellow (2)**
177:25;195:23
**FEMA (19)**
10:19;39:24;67:23;
78:2,4,6,11,22;79:16;
82:14,17,18,21;83:6,8;
84:25;120:9;124:15;
193:19
**few (6)**
24:18;81:11;98:18;
126:10;158:3;225:11
**fewer (1)**
217:23
**fifth (2)**
163:21;231:14
**fifty (3)**
30:9;44:18;218:10
**fight (1)**
25:2
**figure (4)**
18:7;25:13;151:19;
188:22
**figures (1)**

62:10
**figuring (1)**
38:12
**file (19)**
7:17;12:10;20:24;
40:13;82:4;102:18;
103:3,4,12,14,15;
104:4;132:19;154:15;
155:19;157:2;158:25;
220:19;242:16
**filed (37)**
9:7;12:12;25:7,23;
32:19;33:17;41:8;
43:20;45:15,20;50:4;
60:20,21;62:10;66:18;
68:8;69:18,20;83:9,12;
86:5;103:25;109:19,
24,24;112:15;132:8;
133:25;154:24;161:19,
20;163:8;166:4;223:6,
14,16;226:2
**files (4)**
103:3;105:18;159:6;
160:9
**file's (1)**
155:12
**filing (6)**
7:17;27:21;91:24;
112:24;139:5;156:19
**filings (1)**
223:3
**final (6)**
65:21;70:18;78:24;
86:15;158:8;163:19
**finalized (2)**
12:9,9
**finalizing (1)**
185:5
**finally (1)**
70:23
**financial (12)**
173:3;178:22;189:3;
191:8;192:23;193:5;
199:3,4;205:7;218:7;
219:1;221:14
**financials (1)**
194:20
**financing (2)**
12:15;13:17
**find (9)**
18:23;39:1;43:20;
67:9;98:17;128:17;
150:24;240:6;242:11
**finding (3)**
197:17;203:15;
219:12
**Fine (21)**
10:12;19:19;20:1;
51:18;63:4;68:22;71:2;
72:15;96:19,20,21,24;
106:19;118:11;120:4,
4;170:18;189:25;
193:14;208:4;229:4

**finger (1)**
239:20
**fingers (1)**
154:9
**finish (4)**
128:21;173:22;
200:8,10
**finished (1)**
170:18
**finishing (1)**
205:9
**finite (4)**
39:23;50:1;141:10;
155:6
**fire (77)**
32:7;33:25;34:2,16;
36:4,4,6,10;46:6;49:14,
15;50:2,5;57:16,20,22;
64:13,14,14;66:2;
67:11;68:2;78:5,20;
81:10;83:20;84:6,20;
85:8;88:15,17;96:18;
98:5;101:9,25;102:17;
108:11;111:5;112:6;
131:15;140:7,8;155:4,
23;157:24;162:1;
177:25;181:4,18;
183:9;185:2;187:19;
189:2;190:7;203:6;
204:22;207:18;208:3,
18;209:24;210:2,9,15;
214:17;219:9;226:14;
229:14;230:2,18;
231:13;232:6,12,19,23;
233:13;240:6,7
**fires (3)**
50:6;100:19;198:19
**Firm (2)**
100:15;223:10
**first (32)**
18:22;24:19;26:8;
29:3;35:17;38:16;49:6,
12;67:23;70:16;92:7;
100:25;108:3;115:9;
120:15;126:6;129:2;
137:9;138:20;160:3;
181:3,6,14;182:12;
184:25;192:19;202:15;
212:11;225:18;226:2;
232:12;240:14
**first-hand (1)**
178:21
**fish (1)**
229:8
**fit (2)**
89:6;168:6
**five (5)**
137:9;139:23,25;
141:12;230:18
**five-page (1)**
236:7
**fix (16)**
70:12;139:15;

140:14;144:17;147:6;
148:2;151:15,16,18;
158:6,6;165:4,5,20;
168:12;190:12
**fixed (2)**
122:6;161:14
**fixes (1)**
32:20
**fixture (1)**
69:15
**flag (1)**
169:22
**flaw (5)**
31:17;128:4;157:16,
23,25
**flawed (1)**
15:10
**flexibility (1)**
181:24;242:3
**floating (2)**
21:16;31:15
**flow (1)**
50:11
**fluid (1)**
161:12
**focus (9)**
121:15;174:10;
176:12;186:17
**focused (2)**
27:14;202:24
**focusing (1)**
61:14
**folks (18)**
18:24;139:5;141:1;
142:24;143:14;145:1,
24;146:23;154:14,24;
156:19;157:11;158:22;
159:10;163:9;164:21;
168:1;170:9;185:25;
186:4
**follow (4)**
24:15;25:6;133:20;
174:18
**followed (1)**
219:13
**following (4)**
49:22;89:9;185:3;
235:24
**follow-up (1)**
244:17
**fool (1)**
217:4
**footer (5)**
99:7;112:17,19;
148:16;149:19
**footnote (2)**
242:11,12
**forego (1)**
191:20
**foregoing (1)**
164:1
**foreign (1)**
141:7

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 261
of 282

**FOREMAN (2)**
33:12,13
**forever (1)**
28:25
**forget (1)**
163:12
**forgetting (2)**
232:4;240:12
**forgot (1)**
134:8
**form (12)**
32:24;33:1;51:6,17;
146:18;225:17;232:12,
14,14,21;233:9;242:16
**formal (2)**
20:20,21
**formality (1)**
45:10
**format (1)**
242:19
**former (1)**
11:1
**forms (1)**
232:11
**formula (1)**
139:11
**formulated (2)**
138:4,6
**forth (4)**
33:22;54:6;87:23;
230:24
**fortunately (1)**
145:12
**forty- (1)**
55:13
**forty-percent (1)**
58:18
**forward (6)**
22:18;27:16;30:18;
48:24;93:5;97:16;
128:25;136:3;160:4;
173:17;177:9;206:12;
221:14;222:19;246:5
**foul (2)**
93:1;103:7
**found (1)**
73:19
**founders (1)**
141:4
**four (5)**
54:14;61:5,14;84:1;
85:1
**fourteen (1)**
190:5
**Fox (2)**
76:3;130:17
**fraction (11)**
138:7,11;142:8;
144:19;145:2;146:12;
147:2;148:21;150:18;
151:10;153:22
**frame (1)**
57:3

**FRANCISCO (3)**
7:1;171:21;178:19
**Frank (1)**
224:21
**frankly (15)**
58:5;103:6;137:10;
138:15;139:14,24;
141:21;142:10;144:21;
146:10;154:6;156:3;
167:25;171:5;217:14
**fraud (1)**
139:7
**free (10)**
25:3;29:22,23;
177:23,24;183:14;
184:17;193:23;195:21;
203:4
**freely (2)**
179:13;181:22
**frequently (1)**
33:1
**fresh (1)**
84:22
**front (3)**
104:3;147:18;180:24
**fry (1)**
229:8
**Fulbright (2)**
8:4;38:6
**fulfilling (1)**
40:15
**full (16)**
34:13;42:6,8,10,10,
13,19,20,21;43:1;60:6,
7;64:20;103:22;241:5,
6
**full-pay (1)**
60:4
**fully (2)**
55:25;78:4
**function (1)**
221:22
**fund (13)**
36:3,7,8;64:13;
196:21,22;197:5,16,19;
198:25;204:2;218:17;
221:24
**funding (5)**
42:18;43:10;113:18,
24;114:2
**funny (1)**
58:8
**further (17)**
25:18;38:3;56:15;
60:7;75:8;89:24;111:3;
112:2;117:2;124:21;
125:5;126:3;170:23;
204:4;216:22;219:14;
247:6
**future (4)**
22:8;24:22;94:15;
223:20

**G**

**Gallagher (1)**
33:13
**game (2)**
13:9;116:17
**Gantner (10)**
101:19,22,25;
106:23;107:21;109:3,
14;111:4;129:16;130:8
**Gantner's (1)**
107:17
**Garrison (1)**
81:3
**gas (1)**
239:22
**Gate (2)**
103:1,2
**Gates (1)**
90:24
**gather (1)**
54:7
**Gattner (1)**
175:19
**gave (1)**
98:13
**gazillion (1)**
64:18
**gears (1)**
19:5
**General (7)**
21:3,4;31:11;124:6;
169:18;238:15;241:14
**generally (2)**
114:17;166:19
**gentlemen (5)**
152:18;200:25,25;
202:16;203:10
**gets (11)**
24:6;74:11;135:7;
146:21;151:12;155:21;
157:9;170:17,20;
180:5;233:12
**giant (1)**
197:17
**Gibson (1)**
27:1
**Ginn (1)**
223:3
**given (15)**
15:14;24:1;25:24;
47:1;89:21;119:23;
121:19;154:18;160:10;
178:22;190:25;195:12;
207:10;222:10,12
**gives (3)**
44:16;47:17;92:11
**giving (3)**
121:24;128:1;223:14
**glad (2)**
13:22;145:15
**global (1)**

53:22
**goal (1)**
64:15
**goes (13)**
25:9;40:14;50:20;
70:19;76:15;158:5;
184:10;207:4;216:21;
218:15;230:5,9;239:15
**going- (1)**
97:15
**Goldberger (1)**
112:7
**Golden (1)**
103:1,2
**golly (1)**
157:15
**Good (42)**
7:6,7;10:21;14:5,5,
12;33:11,12;76:2;77:8,
19,19,25;78:16;81:2;
85:16,16;90:19;
106:11,22;112:5,9,9,
10;118:22;119:11;
122:9;130:25;131:8;
134:10;137:2;172:21;
178:1;179:11,23;
188:1;194:4,6;220:15;
221:14;227:17;236:17
**good-faith (2)**
56:3;220:21
**GOODMAN (13)**
77:15,17,19,22,24,
24;78:1,10,13,15;
82:25;84:24;94:12
**gotcha (1)**
162:3
**Gotshal (1)**
131:6
**govern (1)**
184:9
**government (5)**
10:16;40:20;44:13;
55:7;194:3
**governmental (5)**
39:20;47:23;49:24;
68:5;97:21
**Governor (1)**
134:22
**governor's (1)**
8:17
**grand (2)**
58:23;91:7
**grant (2)**
31:4;215:18
**granted (2)**
110:24;210:14
**granting (1)**
15:2
**great (7)**
33:18;130:22,25;
171:8;173:9;180:25;
215:6
**greater (2)**

50:1;69:21
**Green (114)**
32:16,17,17,23;33:7,
9;34:24,24;35:14,16,
19,24;36:2,14,17;37:2,
8,12;45:6,9,11,13,15,
18,24;46:2,11,13,15,
17,23,25;47:4,6,8,9;
48:1,3,13,16;49:18,19,
21;50:12,16,19,25;
51:3,8,16,22;52:3,5,7,
10;56:6,21,23;64:8,11,
18,22;65:4,7,9,12,15,
22;72:19,20;85:22,24,
25;86:2,10,11;87:2,6,
10;89:20;94:12,16;
95:1,2;96:19,20;
117:20,24;118:5,9,11;
180:5;186:25;187:1,8,
13;189:8,10;204:20;
205:19,21;206:1;
224:1,2,3,5;229:25;
231:7,11,19;235:17;
236:5;242:16,19
**Green's (1)**
64:6
**Gregory (1)**
118:21
**GRIMSHAW (7)**
99:21,21,22,23;
100:3,6,9
**ground (1)**
209:3
**group (15)**
16:14;28:13;30:2;
33:14;57:18;64:4;
98:10;99:19;141:9,10,
10;156:13;177:16;
220:25;230:12
**guarantee (1)**
43:18
**guaranteeing (2)**
42:16;43:11
**guess (19)**
16:6;40:2,5;43:14;
60:10;94:24;97:11;
108:6;116:2;132:10;
134:19;145:8;155:16;
156:17;157:8;206:7;
207:4;211:16;242:1
**guesstimates (1)**
54:1
**guidance (1)**
15:1
**guidelines (2)**
49:4;59:19
**guy (3)**
50:3;222:7,7
**guys (2)**
208:3,3

**H**

Min-U-Script®
Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 262
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(12) FOREMAN - guys

**half (13)**
46:7;50:2;61:19;
90:13,17;97:20;
108:16,17;194:2;
206:11,24,25;207:13
**half- (1)**
144:14
**halfway (3)**
205:3;206:23,25
**hand (4)**
50:5;51:4;99:12;
246:6
**handful (1)**
137:12
**handle (3)**
141:3;151:15;152:20
**hands (3)**
63:11;222:13;225:7
**hang (1)**
147:24
**hang-up (1)**
46:20
**happen (19)**
12:6;22:21;38:24;
56:5,17;60:11;81:11;
117:21;143:19;155:9,
11;156:12,22;182:5;
197:6;207:11;219:24;
222:9;248:3
**happened (6)**
36:1;117:25;157:14;
173:16;226:24;227:8
**happening (2)**
146:8;219:2
**happens (16)**
30:1;39:7;56:2;
93:25;102:1;128:18;
155:23;157:10;177:1,
1;179:23;199:12,13,
14;219:23;245:11
**happy (19)**
7:10;55:10;68:11;
70:16;85:8;103:7;
128:9,13;129:8;
131:23;133:3;137:16;
202:8;210:20;221:8,9,
12,15,20
**hard (5)**
11:2;18:25;155:25;
227:2;248:9
**Hardwoods (2)**
122:4,5
**harm (3)**
93:1;103:7;237:11
**hate (1)**
64:20
**heading (1)**
223:12
**heads-up (1)**
8:11
**Health (5)**
23:11;33:21;66:7;
68:7;244:22

**hear (16)**
13:22;14:8;15:6;
23:23;37:17;64:21;
70:16;72:11;73:20,21;
106:9,19;130:16;
175:15;186:10;196:8
**heard (39)**
12:11;13:8;14:9;
18:5;19:9,14;21:2;
22:24;26:4,24;52:11,
16;64:6;70:16;77:14;
79:9;82:18;84:24;89:8;
100:11;108:10;122:12;
129:2;132:11;153:16;
156:14;168:19,24;
169:5;172:1,1;175:15,
18;193:24;204:19;
216:7,9;223:16;241:8
**hearing (21)**
64:5;82:24;88:2,17;
89:9;91:15;101:17;
124:10;125:5,21;
126:23;152:20;171:2;
198:6;218:18;227:25;
228:5;242:25;244:8,
17;247:19
**hearings (1)**
229:11
**heart (1)**
105:8
**heavily (1)**
175:21
**held (4)**
113:22;179:12;
183:13;189:14
**help (5)**
38:11;49:22;161:14;
178:8;237:4
**helpful (5)**
18:9;176:6,8;184:12;
242:21
**here's (2)**
158:21;245:6
**hey (1)**
146:6
**high (3)**
227:14,15,16
**higher (1)**
144:22
**highlight (1)**
124:3
**hinted (2)**
154:12;161:18
**hiring (1)**
193:4
**historical (1)**
200:15
**historically (1)**
17:9
**history (14)**
175:1,9,14,15,15,21,
22;176:3;177:5;
178:12;197:8;207:10,

12;239:25
**hit (1)**
104:3
**hits (1)**
103:2
**Hm (1)**
43:2
**hoc (9)**
26:9;27:2;32:6;
33:10,13;120:15;
121:16;211:9;214:18
**hold (10)**
11:21;27:20;60:25;
91:12;95:6;113:6;
135:3;179:10;203:3;
204:5
**Holdco (8)**
136:12,12;148:18,
20;149:12;150:6,11;
154:14
**Holdco's (1)**
149:2
**holder (3)**
27:2;51:12;166:21
**holders (7)**
26:9;32:6;76:16,17,
23,24;166:22
**holding (3)**
26:24;184:7;239:19
**holds (1)**
222:18
**Holland (1)**
106:14
**home (5)**
205:3,9;206:23;
207:13;232:7
**homes (2)**
178:15;179:2
**homework (2)**
48:15;168:14
**honest (1)**
242:2
**Honor (252)**
7:7,23;8:3;14:12,15;
18:10;19:6,11,20;20:3,
23;21:5;22:5;23:2,4,6,
17;24:3,8,25;27:1;
29:1;32:3,17,19;33:12;
34:11,24;36:2;38:5,7;
39:1,10;41:5,12;43:11;
44:2,17;45:13;48:18;
49:10;52:11,13;54:5;
56:21;57:6,19;58:17,
17;59:2,5,10;60:17;
61:21;62:15,21,24;
65:18;66:5,23;67:2,7;
68:17,20,23;69:1,13,
17;70:8,20;71:1,16,17;
72:24;73:23;75:9,12;
76:2;78:17,20;81:2,18,
23;82:1,2,9,20,22;
83:22,24;85:15,25;
86:7,11;87:17;88:25;

90:2,12,22;91:17;93:7;
94:7,16;95:9;96:15;
99:21;100:3,12,25;
102:13;103:5;104:16,
22;105:7;106:1,11;
107:19;108:22;110:16;
111:16;112:5;115:17;
116:20;117:14,24;
118:21,24;121:12;
122:15;123:7;125:7;
126:25;127:16,19;
128:17;130:12;131:11;
132:17;133:1;134:7,
10;137:2,8,14,23;
139:24,25;140:16,21;
141:22;143:1,23;
144:17;145:18;146:16;
147:3,17;148:6;
151:17;152:9,22,24;
153:4,24;154:6,11,12;
156:3,16;157:6,15;
158:7;159:10;160:1;
161:1;163:2;165:21;
166:7;168:17;169:1,
11;170:2;171:6,10,11;
172:21;173:2;174:15,
25;176:13,17;178:7,
20;182:25;183:25;
185:1,9,14,23;186:11;
187:1;189:1,8,20;
190:15;191:15;194:11,
16;195:9;196:3,18;
197:7;199:3,11;200:1,
22;201:7,25;202:14;
203:4,8,23;205:3,19;
206:3,15;208:16;
210:8;211:8,18;
214:22;216:1;219:17;
221:8;224:1,14,21,21;
225:9;229:16;230:4;
231:19;232:9;234:8;
235:24;236:5,12,20;
237:10,24;242:16;
245:24
**Honorable (1)**
7:5
**Honor's (1)**
156:5
**hook (2)**
116:13;228:12
**hope (11)**
9:3,4;12:9,12;44:16;
154:7;156:17;157:6;
167:5;217:15;238:7
**hopeful (2)**
8:15,17
**hopefully (3)**
54:1;96:22;139:2
**hoping (3)**
14:22,25;227:12
**horrible (1)**
219:9
**hospital (2)**

36:11;68:7
**Hostetler (2)**
14:13;77:24
**hour (3)**
77:11;130:7;131:1
**hourly (1)**
191:13
**hours (5)**
55:14;90:16;148:5;
210:24;229:24
**house (5)**
46:13;47:6;53:3,4;
206:24
**huge (2)**
93:12;124:22
**Huh (1)**
240:21
**hundred (9)**
40:18;42:20;50:4;
54:15;55:3;126:16;
238:14;241:13,14
**hundreds (1)**
102:18
**hundredth (1)**
60:2
**hurry (1)**
176:20
**hustling (1)**
188:18
**hypothetical (11)**
29:12;46:18;62:9;
75:19;142:13;157:8,
20;159:22;178:9;
206:24;234:12

**I**

**idea (7)**
38:8;40:6;53:13,14;
59:11;120:22;132:17
**ideal (2)**
165:4;170:2
**identify (2)**
26:2;129:23
**ignore (2)**
127:6;222:19
**ii (1)**
95:18
**iii (2)**
95:18;115:2
**illustrate (1)**
184:22
**imagination (1)**
188:21
**imaginative (1)**
178:11
**imagine (3)**
20:22,25;155:25
**Iman (1)**
40:4
**immeasurable (1)**
146:1
**immeasurably (1)**

Min-U-Script®

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 263
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
of 282

(13) half - immeasurably
Page 263

192:15
**impact (12)**
55:8;92:5,17;93:17;
114:2;159:16;165:8;
167:11;198:21,24;
207:6;235:13
**impacted (5)**
163:20;168:2;170:9;
210:6;228:21
**impacts (2)**
102:2;110:8
**impaired (14)**
31:11;76:17;120:3;
123:13,16,18;128:18;
136:18;140:14,14;
144:2;145:20;146:22;
158:23
**impairment (3)**
123:23;128:8,17
**impermissible (1)**
164:15
**implication (1)**
211:25
**implications (3)**
113:24;178:24;
211:23
**importance (1)**
69:11
**important (25)**
16:10;40:11;59:14;
68:12;69:14;76:23;
96:14;103:9;145:6;
155:13;179:6;191:2;
196:21;207:14;209:7;
211:22;213:23;214:7,
10,11;216:23;234:7;
240:4;241:15;247:23
**imported (1)**
162:9
**impose (1)**
61:8
**impossible (3)**
41:3;46:3;139:11
**improper (3)**
187:20,24;229:13
**improve (2)**
170:24,25
**improved (1)**
198:14
**inaccurate (1)**
66:7
**inadequate (1)**
58:12
**inadvertently (1)**
185:4
**inappropriate (2)**
21:7;41:7
**incapable (1)**
160:13
**incen (1)**
235:16
**incentive (3)**
28:24;191:7;192:3

**incentives (2)**
191:8;218:7
**incidences (1)**
185:23
**inclined (2)**
25:15;89:11
**include (4)**
56:23;107:4;128:2;
147:12
**included (7)**
76:9;10;81:6;96:9;
200:2;221:10;224:9
**including (7)**
35:11;57:2;78:22;
85:21;127:16;189:13;
208:2
**incomplete (1)**
166:2
**inconsistent (2)**
32:8,10
**inconvenience (1)**
125:23
**incorrect (4)**
15:10;66:14;154:7;
209:10
**incorrectly (1)**
92:25
**indemnification (2)**
164:3;167:14
**indemnified (2)**
164:4,6
**indemnity (2)**
122:19,19
**indenture (4)**
76:3,19,20;130:18
**indentures (1)**
76:4
**independent (1)**
64:5
**indicate (1)**
51:23
**indicated (1)**
154:16
**indicating (2)**
108:8;166:18
**indication (2)**
148:25;154:19
**indicative (1)**
40:24
**indirectly (4)**
163:24,24;164:6;
167:11
**indiscernible (10)**
7:14;8:9;87:24;91:7,
7,8,9;92:9;96:9;108:8
**individual (9)**
36:11;42:14,15;
45:20,20;46:15;47:2;
230:15;239:4
**individually (3)**
109:10;220:25;232:9
**inequitable (1)**
57:21

**inextricably (1)**
199:4
**infinite (1)**
141:10
**influence (1)**
146:3
**inform (3)**
33:4;130:20;182:3
**information (33)**
16:11;17:6;33:25;
38:10;39:2;41:8;42:2;
43:14,15;44:3,5,23;
48:11;49:6,13;51:4;
55:1,1,11,12;56:4;
57:11,23;58:15;92:11;
112:1;139:9;161:6;
173:3,4;224:8;229:19;
242:8
**informed (7)**
58:16;92:15;93:14;
125:18;178:9;200:12;
234:9
**infrastructure (1)**
199:19
**inherent (3)**
175:3,4;220:21
**injunction (14)**
163:22,23;164:9,13;
165:5,8,15;168:1,9;
169:18;170:10;228:14,
15;229:8
**injunctions (1)**
167:25
**injury (1)**
34:8
**input (1)**
41:10
**insert (2)**
167:18;201:15
**inserted (3)**
108:3;200:17;202:5
**insist (2)**
97:25;208:13
**instance (2)**
162:12;167:8
**instead (3)**
92:23;145:3;241:20
**instincts (1)**
155:14
**institution (1)**
220:14
**institutional (1)**
167:15
**insult (1)**
196:5
**insurance (29)**
34:15,19;57:21;92:3,
5,17;93:16;97:5,8;
112:1;113:20;116:7;
120:10;138:9;153:8,9;
154:8;161:4;224:8;
231:24;232:6,7,10,10;
233:12,24;234:12;

238:14;241:14
**insurers (2)**
91:11;92:2
**integrated (1)**
100:18
**intend (3)**
125:17;154:20;
220:20
**intended (2)**
139:10;165:15
**intending (1)**
15:1
**intent (6)**
116:6;165:3,9,10;
203:8,9
**intention (1)**
182:4
**intentions (1)**
138:23
**interest (27)**
26:11;27:11,15,19,
23,24;28:2,6,20;29:5,
14,17;30:12,15,18;
31:5;59:15,17;85:7;
120:16;129:4;136:12;
137:25;166:22;183:6;
203:25;215:14
**interested (3)**
217:15,16,20
**interesting (1)**
122:10
**interests (4)**
137:12;199:3,4;
205:7
**interfere (1)**
89:18
**interfering (1)**
186:23
**internal (3)**
41:25;42:3;78:24
**international (1)**
207:3
**interpretation (2)**
42:22;169:5
**interpreted (1)**
123:21
**interrupt (3)**
128:22;175:12;
194:23
**interruption (1)**
247:16
**Interstate (6)**
111:23;112:3,6;
113:25;114:10;115:10
**intertwined (1)**
138:16
**into (29)**
17:3;63:4;69:3;
96:25;100:18;129:3,5;
138:1,4;141:8;152:7;
161:25;162:20;164:11;
168:6;170:18,20;
174:17;199:21;207:20;

214:17,18;219:6;
231:21;233:21;236:3;
241:2;243:1,17
**invest (1)**
193:7
**investigation (1)**
137:6
**investing (1)**
192:2
**investment (1)**
178:24
**investor (5)**
145:25;167:8,15;
181:24;192:2
**investor-owned (1)**
198:16
**investors (2)**
145:7;211:24
**invitation (1)**
188:3
**invoke (2)**
15:23;146:7
**involved (3)**
83:4;134:22;244:19
**involvement (1)**
11:1
**involving (1)**
39:19
**iron (1)**
151:20
**irrelevant (2)**
145:14;183:1
**irrespective (1)**
164:10
**issuance (1)**
91:25
**issue (90)**
15:8;16:20;18:16,25;
21:21;26:14,20;27:3,
24;29:6;31:2,14,20,24;
32:20;38:17;48:20;
63:23;70:2;73:9,11,23;
74:3,14,18;76:12,15;
82:6;87:6,9,13,15,15;
91:9;92:13;97:7,14;
98:5;101:12,15;
102:10;104:24;114:8;
118:14,18;122:13,24;
123:9;128:1;130:24;
131:12;134:19;144:4,
4,20,23;146:8,10;
151:18,23;152:24;
153:21;156:13,25;
158:8,10,11;163:19,20,
21;164:16,16,18;165:6,
22,24;167:22,22;
169:22;170:15;171:14;
172:25;178:8;205:18;
221:3;225:19;226:9;
244:22;246:24,24
**issued (7)**
8:25;10:8;14:18;
16:16;17:16;22:25;

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 264
of 282

92:25
**issues (35)**
8:15;13:18;37:19;
38:2;59:14;73:4;76:9;
78:25;79:3;81:7,8;
86:21;106:17;118:16;
122:10;124:4;127:16;
128:24;131:7;132:5;
136:4;137:10;139:13;
141:22;151:24;152:1;
153:17;163:18;172:14;
173:25;174:11;189:16;
195:13,16;211:20
**item (16)**
48:12;74:15;85:6;
94:15,17;101:11,11,16;
140:12;145:22;146:5,
5;152:8;175:25;181:6;
193:18
**items (9)**
10:13;12:13;124:11,
12;125:1;129:19,24;
174:1,17
**iv (2)**
116:3;117:4

**J**

**January (1)**
24:5
**Jason (1)**
21:3
**jeopardize (1)**
93:3
**jeopardizes (1)**
93:10
**job (6)**
36:8;46:17;62:7;
191:12;192:15;195:3
**joining (1)**
26:20
**Jonathan (1)**
19:11
**Jose (1)**
17:16
**judge (13)**
9:25;11:1;17:20,21;
53:16;56:7;58:8;
134:20;146:24;158:3;
208:4;216:25;217:1
**judges (1)**
217:4
**judgment (19)**
27:11;28:7,14;41:3;
46:19;50:5;51:2,5,13,
15,17,19;52:6;53:18,
18;56:6;62:11;195:14;
234:10
**judgments (1)**
50:24
**juggling (1)**
98:16
**Julian (2)**

35:25;36:5
**Julian's (1)**
36:25
**Julie (1)**
85:11
**jump (1)**
49:19
**jumping (1)**
57:25
**June (3)**
24:7;119:23;176:20
**jury (16)**
34:7;35:8,9,12;36:1,
12,16,19;63:19;64:5,7,
16;65:1,3,6,12
**Justice (2)**
50:13;82:21

**K**

**K&L (1)**
90:24
**Karotkin (475)**
7:14,19;8:11,15,21,
23;9:3,10,12,18;10:4,7,
10,13,22,25;11:5,8,17,
20;12:3,7,19,21,23,25;
13:2,6,10,12,14,21;
14:3,7;24:14,20,23,25;
25:4,12,20;26:1,6,8;
28:4,6,10,16,19,23;
29:1,11,19,22;30:4,11,
13,19,23;31:7;19;32:4,
5;33:19,21;34:22;37:6,
23;39:19;40:23;41:5,
10,15,22,24;42:6,8,10,
12,16,18,25;43:2,4,9,
13,17,22,24;44:2,17,
20;45:1,3;48:9;56:24;
57:24;58:2,5,21;59:24;
62:25;67:17,18,21,25;
68:20;69:17;72:8,13,
25;73:4,8,12,15;74:8;
75:11,15,21;77:1,2,6;
79:24;80:2,18,21;81:5;
83:7,10,13,15,18;84:5,
9,12,14,18;85:4,11,18,
20;86:5;90:6,7,12,19;
94:21,25;95:6,8,17,20,
23;96:2,4,15,21;98:1,4,
6,13,19,21,23;99:1,3,5,
8,11,17;100:1,20,25;
101:4,12,14,18,20,22;
102:4,6,9;103:5,9;
104:5,15,18,20;105:1,
3,8,9,12,23;106:1,4,6,
25;107:1,3,13,16;
108:1,22,25;109:6,13;
111:21,22,24;113:2,10;
114:7,9,16,18,20,22,
25;115:2,5,17,20;
116:9,20,22;117:6,7,
12,16,18;118:8,12,14;

124:9,10;125:7,12,15,
20;126:1,4,6,12,15,18,
20,24;127:4,5,8,22;
128:7,21;129:12,21;
130:3,10;131:4,5,5,9,
14,20,25;132:4,14,23;
133:2,8,10,12,16,19,23,
25;134:3,16,20,24;
135:3,4,14,22,24;
136:3,6,10,16,19,23;
137:17,19,22;151:13;
155:7;162:23;170:7,
19;171:7,11,13,17,23;
172:1,5,8,11;173:18,
20,23;182:11,13,16,25;
183:5,8,17,21,24;
186:9,11,16;196:8;
199:24;200:1,7,9,11,
15,18,24;201:9,10;
202:10,14,17,20,21;
203:4;212:10,13,15,20,
22,24;213:1,4,7,11;
214:24;215:12,15;
218:18;221:25;223:2,
7,11,13,25;225:11,14,
21,25;226:6,12,18,20;
227:1,7,9,11,13,15,21;
228:2,4,7,10,24;229:4,
6,16;230:2,4,8,11,13,
20,23;231:1,3,6,25;
232:3,9,17,23;233:4,6,
9,15,18,20,25;234:2,5,
6,8,16,20,23;235:3,5,9,
12,15,19,21,24;236:2;
237:19,21,24;238:4,5,
9,16,23;239:6;240:16,
19,22,25;241:2,8,10,
18,21,24;242:14,23;
243:5,7,11,13,15,23,
25;244:2,4,10,15,21,
24;245:5,9,15,18,20,
24;246:3,9,12,15,18,
20,23;247:3,11,21,23;
248:2,6,8
**Karotkin's (6)**
25:7;86:25;117:3;
161:7;184:3;203:16
**keep (12)**
7:19;24:21;57:25;
71:11;72:10;166:3;
171:18;182:22;183:4;
206:2;211:7;213:13
**Keller (1)**
223:12
**KELLY (23)**
52:11,13,15,18,18,
20,21,22,24;53:6,9;
54:1,18,20,23;55:3,5,
10,16,19,24;56:13,19
**key (1)**
61:14
**killed (2)**
182:19,20

**Kincade (10)**
98:5;100:24;101:2,5,
25;108:11;111:5;
207:18;240:6,7
**kind (15)**
13:1;17:5;59:22;
64:3;75:18;92:20;
93:12;109:21;124:25;
139:20;140:13;155:22;
160:22;184:13;190:9
**kindly (1)**
195:2
**kinds (1)**
233:3
**knew (2)**
222:17;224:11
**Knight (1)**
106:14
**knowing (3)**
143:3;144:5;207:20
**knowledgeable (1)**
89:1
**known (4)**
53:6,19;93:22;140:9
**knows (5)**
24:5;45:25;178:12;
216:23;231:20
**Koegel (1)**
74:23
**Kornberg (11)**
80:25;81:1,2,3,13,15,
17,23;82:1,9,11
**Kornberg's (1)**
80:23

**L**

**LABATE (5)**
106:11,12,14,21;
112:24
**lack (3)**
49:6;120:16;199:19
**Laffredi (6)**
172:20,21,25;173:2,
7;241:4
**land (2)**
221:17,18
**LANDRY (21)**
112:5,6,10,16,19,21;
113:5,11,15,16,17;
115:22,24;116:1,5,19,
21;117:1,9,14,15
**language (49)**
12:8;14:20;43:6;
48:22;56:7,21;66:4;
70:23;71:4;72:3,3;
77:7;81:6;94:22;97:25;
100:1,18;103:7;
105:16;115:13,22;
116:6;117:5;120:22;
121:21;130:21;135:19;
136:25;165:17;166:2;
167:4,7,17,20,22;

168:15;169:13;170:16,
19;172:15,22;181:11;
187:7;201:15;232:15,
16;233:16;241:9,11
**large (4)**
16:13;91:10;92:1;
119:6
**largely (3)**
165:6;199:21;219:19
**larger (2)**
47:5;219:17
**largest (1)**
69:12
**Larkin (1)**
103:2
**Last (25)**
9:12;11:2;24:5;25:7;
32:19;33:3;38:23;46:6;
53:15;70:8;76:9;86:5;
91:8;95:23;107:8;
117:25;118:8;124:22;
127:13;130:19;135:6;
141:6;202:23;208:15;
218:9
**late (6)**
28:18;33:3;70:8;
156:13;245:13;247:17
**later (20)**
14:7;30:9,10;41:16;
66:2;73:5;75:2,8;81:9;
88:1;101:17;111:1;
120:1;125:8,10,10,10,
12;195:17;246:19
**latest (4)**
94:22;126:25,25;
174:7
**law (10)**
17:10;26:17;27:5;
100:15;121:10;164:15;
223:10;228:21,23;
242:3
**laws (2)**
93:11;187:25
**lawsuit (5)**
17:3;101:21;216:11,
18;217:16
**lawyer (7)**
30:8;52:18;64:19;
190:4;220:15;237:7;
239:11
**lawyers (19)**
17:1;18:20;44:8;
47:13;60:2;61:9;63:3;
104:8;190:11;192:18;
195:1;216:24;220:12,
22;224:24;225:2;
244:19;245:22;247:14
**lawyers' (1)**
190:10
**lay (1)**
89:6
**lead (6)**
24:15;135:1;136:8,

Min-U-Script®
Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 265
of 282
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
**(15) issues - lead**

21;137:5;217:25
**lead-in (2)**
166:17;174:20
**leads (1)**
189:23
**leaning (1)**
184:2
**learn (1)**
18:24
**learned (3)**
8:7;20:24;165:22
**least (20)**
14:25;25:24;27:21;
31:5;53:23;59:18;60:6;
73:1;76:16;86:25;
100:22;103:16;119:19,
22;124:5;141:17;
164:12;218:25;241:23;
243:20
**Leave (7)**
8:10;48:12;70:6;
195:20;215:20;242:9;
243:21
**leaving (1)**
92:22
**led (1)**
210:18
**left (6)**
142:1;171:16;172:4;
193:19;218:12;243:4
**legal (5)**
127:7;190:8;234:24;
237:3;240:10
**legally (1)**
220:14
**legislation (1)**
240:1
**legitimate (2)**
43:9;162:4
**length (1)**
229:17
**lengthy (1)**
167:3
**Leonard (1)**
112:7
**less (6)**
38:15;40:2;48:24;
138:8;197:24;210:24
**Lets (1)**
172:3
**letter (1)**
114:1
**letters (3)**
35:10;40:24;186:18
**level (2)**
136:12;146:9
**leverage (2)**
58:13;59:3
**liabilities (2)**
199:22;202:25
**liability (7)**
42:1;75:18;100:24;
101:1;108:20;216:5;

240:8
**liberty (1)**
83:5
**lien (2)**
212:12,21
**liens (4)**
212:1,3,5,8
**lieu (1)**
241:20
**life (9)**
11:9;93:25;198:17;
199:12,13,14;207:11;
219:23;236:14
**light (1)**
48:22
**likely (10)**
12:6;22:15;41:1;
146:10;181:25;197:17,
24,24;219:6,13
**limitations (3)**
182:4,6,9
**limited (4)**
36:2,7;64:13;129:17
**limits (3)**
160:22;181:7,22
**line (14)**
98:16;112:8;148:13;
166:8;174:7;189:1;
194:16,20;199:1,18;
202:5;206:4;214:22;
216:2
**lines (3)**
99:17;169:6;195:10
**linked (1)**
199:5
**lips (1)**
222:13
**liquidated (10)**
38:25;41:17;51:25;
60:9;159:5,10,11;
160:4,19;161:20
**liquidation (11)**
34:12;38:16,21;39:9;
59:11,18,23;60:11;
177:2;214:8;220:1
**list (14)**
24:17;25:10,25;33:6;
57:5;70:22;74:19;
82:10;124:11;129:18;
173:12,17;223:3;235:6
**listed (1)**
174:17
**listen (3)**
125:18;174:5;203:11
**listened (1)**
229:22
**listening (2)**
18:20;238:12
**litigation (3)**
122:18;170:9;239:25
**little (19)**
56:4,9;75:8;87:18;
89:20;91:15,20;

101:22;113:10;115:2;
138:17;159:4;170:17;
187:8;196:10;223:8;
240:19,22;247:15
**live (1)**
178:18
**lives (2)**
46:15;179:2
**LLP (1)**
118:22
**lobbying (1)**
222:1
**locate (1)**
240:3
**located (1)**
71:5
**locked (1)**
207:20
**lodge (1)**
244:13
**lodged (1)**
19:24
**long (10)**
19:1;37:5;79:11;
129:18;171:9;224:17;
230:19;239:10,12;
246:5
**longer (6)**
48:23;114:6;138:2;
176:16;236:15,16
**look (42)**
17:1;47:13,15,21;
48:6;55:16;57:1;74:7;
75:4;93:19;94:22;95:8,
17,23;107:9,9;111:3;
113:8;115:2;135:20;
147:15,25;155:6;
156:18;161:2;167:9;
169:23;176:3;189:7;
200:4,11;208:2,3;
214:12,13;216:24;
225:18;232:11,18;
235:6;243:14;246:5
**looked (9)**
15:20,20;85:18;
107:7,7;161:4;209:7;
218:25;227:2
**looking (28)**
49:5,8;57:10;66:18;
67:5,17;86:25;95:11;
99:5;112:17,22;
120:12;123:9;144:10;
148:12,14;166:4;
169:5;181:11;189:1;
192:25;201:21;203:13,
14;225:16,21;233:2;
239:18
**looks (1)**
67:22
**loose (2)**
11:6;21:5
**lose (2)**
123:5;153:5

**loses (1)**
222:7
**loss (8)**
46:8,8,9,9,9;144:7,
15;233:11
**losses (1)**
53:7
**lost (7)**
98:14;141:1;145:24;
178:15;232:6,7,7
**lot (32)**
7:8;11:10;13:20;
17:1;18:24;20:24;
36:23;39:15;40:12;
41:6,10;43:13;44:3;
45:3;69:16;74:11;
109:3;117:24;118:24;
135:10;139:4,6;
141:22;170:4;175:23;
182:2;208:9;209:4;
229:8;232:5,18;242:19
**lots (2)**
140:8;190:9
**lottery (1)**
220:20
**loud (1)**
229:7
**loved (1)**
46:9
**Lowenstein (1)**
137:3
**Lubic (25)**
90:20,22,24,24;91:2,
6,12,14,17,20,24;93:7,
13;95:3,5,11;96:5,8,21,
24;97:2,4,10,12,14
**lumped (1)**
138:1
**lunch (5)**
77:11;125:3,13,17;
129:16

## M

**machinations (1)**
87:22
**Made-Whole (2)**
71:22,24
**magically (1)**
190:4
**main (2)**
110:18;176:17
**maintains (1)**
35:2
**major (4)**
39:25,25;70:17;
97:21
**majority (3)**
86:13;87:3,12
**makes (8)**
9:8;67:16;102:23;
103:7;115:17;169:6;
199:16;223:17

**make-whole (2)**
70:24;71:18
**make-wholes (1)**
232:5
**making (15)**
11:8;17:24;28:18;
37:3;58:22;141:6;
155:12;177:17;192:9;
221:20,21;229:11;
234:9;237:17;241:16
**manage (6)**
24:7;161:8;181:23;
191:18,21,24
**managed (2)**
169:24;174:25
**management (3)**
182:1;190:25;198:3
**manager (2)**
181:8,22
**Manges (1)**
131:6
**manifestation (1)**
101:9
**manner (6)**
16:13;35:3;37:14;
137:15;163:10;225:17
**many (27)**
9:24;16:19,20,24;
37:18;53:6,10,11;60:2;
66:17;76:6;92:15;
93:15;107:23;113:7;
119:2;135:9;139:22;
140:4,10;142:24;
155:7;179:25,25;
186:18,18;240:15
**MARCH (5)**
7:1;81:13;82:3;
127:1;227:6
**Marchand (1)**
172:7
**mark (1)**
240:3
**markedly (1)**
198:14
**marker (1)**
92:3
**market (20)**
53:11;97:6,15;138:9;
144:5,11,12,18,21;
145:14;147:7,9,10;
149:2,9,9;150:10;
151:19;152:12;207:3
**marketplace (1)**
183:15
**markup (3)**
115:23;119:18;
120:17
**Marshack (27)**
100:10,12,15;
102:13,14,15,17,21,25;
103:6,11,13,20;104:5,
9,11,13,16,22;105:1,2,
4,7,20,24;106:2,3

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(16) lead-in - Marshack

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 266
of 282

**master (12)**
15:8,21;17:8,16,21;
20:11;229:10;230:5,6,
9,16;233:1
**material (10)**
92:9,10;94:18;96:11,
12,13,17;97:24;102:1;
164:2
**materially (1)**
145:5
**materials (1)**
9:20
**Matt (1)**
99:21
**Matter (21)**
7:12;17:15;18:23;
21:8;27:5;31:5;68:12;
130:8;142:16,24;
153:22,23;160:25;
163:14;186:8,18;
202:23;217:3,11,18;
218:14
**matters (5)**
79:12;142:16,19;
199:21;225:5
**Matthew (1)**
82:20
**may (46)**
8:25;9:1;15:14;
18:11,11;21:25;24:18;
47:3,20;52:11,16,23;
55:14;66:23;68:20;
81:7,7;82:5,5;89:5,8;
91:21;92:17;93:9,17;
99:11;101:22;122:17;
124:14;154:14,23;
157:9;160:20,23;
168:19;183:17;190:12;
194:7;204:22;207:21,
23;223:1;228:17;
237:22;240:10,10
**maybe (41)**
15:10;18:20;21:5;
27:22;34:22;47:12;
61:25;62:19;69:7;83:7;
88:22;89:19,20;92:25;
93:24;97:23,23;99:10;
102:10;110:22,24;
125:4;127:9;146:3;
157:19;180:20;187:13,
25;201:17;216:25;
226:19;229:25;231:13,
13,15,15;232:2,4;
238:12;242:25;243:1
**McDonell (8)**
21:3,3,13,19,22,25;
22:22;23:2
**mean (110)**
12:18;13:13,15;
14:24;15:6,23;17:1,7;
19:15,16,19;25:17;
27:7,10;30:17;35:12;
38:23;42:5,7,20;43:25;

44:2;55:10;61:9,18;
66:3;67:9:68:16;71:24;
72:11;73:10;74:2;75:4;
82:17;88:20;93:1,11,
19,19;95:15;96:12;
98:15,24;99:7;100:7;
101:16;107:8;108:15;
109:8,14,18,24;113:14;
114:10;116:13,14;
120:5;121:8;123:1,5;
125:10,10,10,21;132:2;
133:3,7;135:7;136:24;
143:8;145:14;147:25;
148:17;149:17;155:9;
156:18;159:18,20;
160:5;173:15;175:14;
176:2;178:3;179:7;
185:22;186:13,18;
196:4;208:19;209:1,6;
211:11;212:12;213:10;
215:9,18;217:23;
218:16;228:17,21;
231:16;233:5;234:20;
236:1;239:12,21;
240:1,4;241:22;246:16
**meaning (1)**
72:6
**meaningful (1)**
110:8
**meaningfully (1)**
39:17
**means (8)**
36:10;42:14;85:1;
88:23;174:23;183:23;
189:4;209:5
**meant (3)**
65:10;125:12,12
**measurable (1)**
199:20
**mechanics (1)**
34:15
**mechanism (2)**
140:18;205:17
**mechanisms (1)**
180:2
**mediation (2)**
33:3;117:25
**mediator (1)**
17:24
**mediator/thing (1)**
17:22
**medicine (1)**
56:9
**meet (3)**
19:2;81:5;126:8
**meet-and-confer (1)**
16:25
**meeting (4)**
64:3;118:1,5,8
**Meister (2)**
100:16;104:24
**member (1)**
100:21

**members (4)**
66:11;87:25;138:17;
140:14
**memorize (1)**
132:3
**memorized (2)**
94:23,24
**memory (1)**
212:11
**mention (1)**
75:13
**mentioned (3)**
135:5,14;181:7
**merit (3)**
216:13,14,19
**mess (2)**
18:11;71:9
**messing (1)**
194:1
**Mester (1)**
152:22
**metaphor (1)**
142:4
**methodology (1)**
163:1
**metrics (1)**
194:22
**Michael (2)**
52:18;90:24
**Michelle (1)**
112:6
**microphone (2)**
49:20;58:3
**middle (1)**
161:6
**might (35)**
10:10;15:12;21:19;
22:21;25:12;29:20;
41:2;44:18;46:22;56:5;
61:6;65:1;75:19;84:8;
89:1;93:3;101:11,12;
102:10;120:5;122:20;
135:19;136:5;139:22,
23;159:17;168:23;
177:17;188:9;190:6;
199:12;208:5,6;225:1;
246:3
**mightily (1)**
171:19
**Mike (1)**
27:1
**Milbank (1)**
118:21
**Mileage (1)**
47:3
**million (10)**
28:13,15;29:13,14;
30:6,8;47:6;61:19;
138:14;163:14
**million-dollar (1)**
144:15
**mind (16)**
15:5;54:25;60:8;

75:11;81:20;98:12;
110:21;124:18;125:2;
135:13;156:15;162:6;
170:6;228:12;229:13;
245:3
**mindful (1)**
244:8
**minimizing (1)**
69:11
**minimum (2)**
92:14;165:6
**minor (2)**
228:11,12
**MINTZ (13)**
73:18,22,22;74:4,6,
18,20,22;75:3,9;
134:10,11,13
**minus (1)**
47:21
**minute (7)**
91:6;141:6;149:13,
21;228:4;237:19;240:9
**minutes (3)**
20:15,16;77:10
**mirror (1)**
47:5
**mis (1)**
226:19
**mischief (4)**
188:2,3,9;217:17
**miscommunicating (1)**
99:10
**miscounting (1)**
231:15
**mislead (1)**
68:15
**misleading (2)**
66:8;183:25
**misleads (1)**
68:14
**missing (4)**
21:6;146:4;157:16;
227:4
**misspeaking (1)**
10:17
**misstate (1)**
131:10
**mistaking (1)**
75:4
**misunderstanding (1)**
84:23
**mitigate (1)**
199:7
**mitigation (2)**
194:20;199:20
**model (1)**
162:25
**modification (2)**
34:1,5
**modifications (2)**
81:18;247:7
**modified (1)**
34:18

**moment (8)**
66:24;81:22;117:20;
140:11;166:6;203:15
**Monday (1)**
126:23;243:1;244:8;
247:19;248:4
**monetized (1)**
54:11
**money (22)**
40:12;47:24;48:3;
50:1,6,10;54:0;61:22;
62:4;64:15;78:7;110:6;
155:19;170:15;180:11;
188:22;192:2,3,4,9;
204:21;206:24
**Montali (2)**
7:5;171:3
**month (4)**
16:9;126:14;219:11;
245:8
**months (6)**
27:22;28:18;44:9;
49:1;128:24;180:1
**mood (1)**
77:2
**moot (3)**
7:25;10:23;12:17
**mooted (2)**
124:14;226:3
**more (58)**
7:11;16:14;25:15;
38:10;48:21;51:10,24;
52:18;56:4,13;58:19;
65:2,21;68:11;69:3;
74:11;76:8;80:2;86:19;
88:22;89:1,21;90:14;
107:5;108:6;128:21;
146:14;161:6;163:11;
169:9;171:6,15;175:7;
176:3;178:18;179:12;
180:15,17,20;184:4;
187:13;188:3;189:23;
190:5;197:11,24;
198:15;199:8;200:12;
210:25;217:25;218:4;
223:23;229:14;236:1,
18;237:17;238:13
**morning (15)**
7:6,7;14:12;33:11,
12;70:16;76:2;77:19;
81:2;85:16,17;112:9;
130:5;180:6;245:13
**most (7)**
155:13;164:22;
173:7,25;178:23;
189:16;237:17
**motion (46)**
7:25;8:12;11:15,20;
12:5,10,12;13:17;14:9;
15:2,5,11,12,20;18:5,7;
19:21;20:17,18;22:24;
23:1,25;78:23;81:25;
82:4;92:24;96:10;

Min-U-Script®

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 267
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(17) master - motion

103:15,17,23,25;
106:24;107:24;109:18;
110:22,23;129:16;
130:8;132:21;140:1;
158:25;225:16,17,22;
226:1;228:6
**motions (8)**
10:18;15:15;16:14;
19:7;80:8;102:18;
189:22;240:14
**motion's (1)**
110:22
**motivate (1)**
152:18
**motive (1)**
188:1
**motives (3)**
192:18;201:4,7
**mouths (1)**
222:17
**move (15)**
19:2;60:15;102:12;
105:25;162:7;163:16;
187:15;190:2,22;
193:18;194:24;196:15,
16;199:16;203:16
**moved (3)**
107:24;136:3;212:6
**moving (11)**
65:20;70:19;177:9;
193:15;194:15;195:13;
199:2;204:1;208:15;
218:1;222:18
**Mrs (2)**
85:13,13
**much (26)**
17:10;38:15;48:3;
51:20;54:15;55:12,22,
23;69:15,20,21;76:16;
85:2,6;111:4;118:19;
161:18;171:6;174:15;
182:6;191:17;196:12;
226:7;229:18;236:17;
248:8
**multiple (2)**
103:12;185:23
**multiplied (2)**
138:12;151:12
**multitask (1)**
203:10
**Murphy (1)**
17:12
**music (2)**
94:2,4
**must (8)**
9:23;39:13;54:4;
59:22;60:17;87:11;
218:17;242:10
**muster (1)**
220:21
**myself (2)**
20:4;211:12
**mystery (1)**

176:2
**mysticism (2)**
152:24,25

## N

**name (8)**
16:1;52:14;75:15,16;
76:1;77:21,23;99:24
**name's (1)**
19:11
**Napa (1)**
53:4
**narrow (2)**
228:16,22
**narrowed (1)**
232:20
**national (2)**
61:7;106:15
**natural (2)**
23:1;239:22
**nature (2)**
116:14;184:11
**near (2)**
49:20;58:3
**nearby (1)**
173:16
**nec (1)**
191:15
**necessarily (8)**
14:15;27:10,14;53:1;
55:8;183:17;217:21;
236:16
**necessary (17)**
9:1,2,3,5;34:9;35:7;
58:22;75:6;83:4;92:19;
93:18;117:11;129:19,
23;165:24;219:12;
229:20
**need (51)**
8:18;11:12,15;13:20;
19:13;20:20,23;25:18;
34:10;48:7;49:25;
58:15,19;73:20;77:21;
79:3;80:2;85:5;91:3;
97:2;99:25;103:12;
106:19;112:2;124:4;
126:2,9;132:5;150:9;
151:18;155:7;160:23;
165:14;166:9;176:16,
16;182:7;199:22;
203:1;208:11;215:6;
221:10,11;230:16,18;
231:7;233:14;234:6,
14;244:9;245:22
**needed (1)**
100:17
**needs (18)**
37:8;70:11,18;92:10,
14;124:20;181:6;
185:3;190:22;212:9;
219:16,22;233:16;
236:15,16,18,18;242:7

**negative (2)**
207:6;219:25
**neglected (2)**
181:18;199:19
**negligence (1)**
198:20
**negotiated (5)**
12:8;42:23;47:22;
205:22;218:17
**negotiating (1)**
71:1
**negotiation (1)**
42:25
**negotiations (1)**
44:23
**Neumeister (8)**
27:1,1,9,13;31:9;
32:1,3;41:20
**neutral (2)**
63:22,24
**neutrals (2)**
63:22;86:18
**nevertheless (1)**
51:1
**new (13)**
8:23;17:2;48:22,22;
66:4;95:2;138:5;
146:19;176:4,14;
202:6;212:22;215:4
**news (4)**
10:21;14:5;78:16;
85:7
**Newsome (4)**
11:1;17:21;134:20,
22
**next (51)**
7:8;8:12;9:6,14;
10:20;11:7;12:10,13;
57:1;69:24;73:6;81:11,
16;95:20;98:2;125:22;
126:10,23;173:12;
184:23;188:24;190:3,
14,16,23;193:18;
194:15;196:15,18,20;
199:2,18;203:21,22;
204:1,15;211:8;
214:15,16,17;216:2;
217:24;218:1;219:11,
11,11;220:20;238:3;
242:24;244:8;247:19
**nice (1)**
204:13
**night (10)**
9:12;32:20;33:3;
70:8;76:9;107:8;
117:25;118:8;124:22;
135:6
**ninety (3)**
44:19;153:16,17
**ninety-two (1)**
54:13
**Ninth (2)**
164:15;231:14

**nitpicking (1)**
239:10
**nobody (7)**
45:25,25;103:3;
140:5;194:1;233:23;
234:19
**nobody's (3)**
187:9;225:7,7
**nomination (1)**
159:20
**nonattorney (1)**
187:18
**nonattorneys (2)**
188:10,16
**nonbankruptcy (1)**
228:21
**non-blackline (1)**
71:14
**nonconsensual (1)**
122:5
**non-consensual (1)**
164:13
**none (2)**
157:13;162:11
**noneconomic (1)**
53:7
**non-fire (1)**
79:3
**non-governmental (1)**
69:12
**nonissue (1)**
155:15
**nor (1)**
194:19
**normal (2)**
65:10;160:20;245:6
**normally (3)**
59:23;62:16;245:7
**north (1)**
245:10
**Northern (2)**
178:12;198:21
**Norton (2)**
8:4;38:6
**notably (1)**
164:22
**note (3)**
130:13;196:21;
211:22
**noted (4)**
124:19,20;140:21;
153:6
**noteholder (4)**
211:19;212:16,17;
214:19
**noteholders (5)**
211:9;212:17;
213:17;215:2,19
**Noteholders' (2)**
214:18;215:19
**notes (2)**
76:4;239:23
**notice (15)**

12:2;13:17;20:25;
88:1,17;112:24;139:2;
140:1,3;154:24;
225:17;226:25;227:3;
228:1,5
**noticed (1)**
16:8
**notion (1)**
74:9
**nuisance (1)**
53:9
**number (64)**
7:17;25:6;27:25;
32:23;33:22;35:5,17;
40:24;45:19,19;49:7,
13;51:1,25;67:3,12;
68:5;70:24;71:12;
82:12,12,13;85:10;
86:6;91:10;92:1;
111:22;112:17,18,19,
24;117:16;118:12;
119:20;136:6;138:13;
141:11;143:3;144:5,9;
145:1,4,24;146:12;
147:1,8;149:19,22,25;
150:3,18;151:8,9,19;
152:15,15;158:20;
160:2;161:5;166:13;
172:5;173:24;210:14;
223:17
**numbered (1)**
68:2
**numbers (7)**
41:23;83:25;133:5,
18;146:11;160:12,21
**numeral (1)**
115:18
**numerator (2)**
145:2;152:25

## O

**Oakland (1)**
142:5
**object (9)**
34:1;58:9,9;96:16;
157:11;162:1,5,6;
200:22
**objected (2)**
22:9;160:21
**objecting (6)**
25:9,15;38:4;58:11,
12,13
**objection (76)**
7:25;8:16;18:13;
19:24;22:8,14;23:10,
12;24:1;26:9,13,15;
27:13,17,21;29:10,16,
17,21;30:1;31:17;32:5,
11,12;33:15;34:5,17;
35:7,11;36:18;37:16,
18,24;39:5;56:2,3;
57:10;58:6,22;59:21;

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 268
of 282

60:1;12;70:11;73:16;
74:22,24;79:9;80:24;
85:12,20;86:5;87:1,2;
89:7,22;92:7,12;
104:23;108:3,7;
109:16;111:25;120:15;
128:7;129:7;130:23;
160:7;161:21;162:4;
163:8;167:18;170:10;
174:1;181:14;200:17;
219:18
**objections (22)**
8:20;10:15,23;24:19;
33:22;37:18;49:5;
63:17;69:3;82:22;
85:19;86:12;106:16;
108:5;111:10;112:11;
131:11;137:15;162:11,
17;171:15;219:5
**objection's (2)**
58:25;163:10
**Objects (2)**
47:5;161:22
**obligations (2)**
164:3;167:14
**observant (1)**
89:1
**observation (1)**
109:17
**observations (1)**
223:17
**obtain (1)**
16:11
**obtaining (2)**
83:3;92:16
**obviously (12)**
17:6;23:12;41:25;
70:18;76:12;79:18;
82:22;118:3;135:21;
138:25;164:15;227:19
**occur (1)**
219:1
**occurred (1)**
186:7
**occurrence (1)**
166:19
**occurring (1)**
186:6
**occurs (1)**
154:22
**o'clock (8)**
124:22;125:10;
239:10;245:2,5,7,12,14
**October (8)**
114:1;138:10;
139:18;142:7;144:11;
147:8;149:2;150:11
**oddball (1)**
17:8
**OES (6)**
67:24;78:5,8;79:15;
124:15;194:5
**off (18)**

18:7;20:19;23:25;
27:18,20;28:2,9,11;
30:17;47:13;64:16;
94:11;97:22;158:5;
179:19;228:12,13,13
**offer (1)**
14:10
**offered (1)**
173:19
**office (4)**
8:17;25:7;184:6;
224:19
**officers (1)**
220:12
**officer's (1)**
82:6
**official (5)**
14:13;37:20;78:1;
118:13,22
**offline (1)**
170:17
**offset (1)**
153:8
**oftentimes (1)**
192:2
**OII (1)**
240:3
**oil (1)**
207:3
**old (2)**
72:3;215:4
**Olsen (1)**
112:4
**Once (5)**
12:9;138:11;141:11;
182:19;203:5
**One (156)**
9:22,25;17:8,14,17,
22,23;20:25;21:1;22:5;
23:9;26:8;28:13;30:2;
32:5;45:20;46:9;47:2;
49:6;50:3,5,12;51:11;
52:25;53:12,18;59:14;
60:2;61:15,16,22;63:5;
65:23;66:9,10;67:3;
68:6,21;70:3;74:4,5,8,
22;75:6;77:15,25;
79:25;82:13;83:14,15;
84:1;86:18;87:2;93:21;
95:2,14;98:2,17;
100:24;102:13,17;
103:16;104:10,22;
108:6;109:12;112:14;
117:11;120:13;121:15,
22;122:11;124:11,13,
14;126:18,20;127:9,9;
128:21;130:6;131:12,
12;133:20,24;135:5;
141:3,12;142:20;
144:6;145:11;147:20,
24;148:12,13;153:4;
154:12;155:20;157:13;
158:3,8,15;160:2;

161:20;163:11,14,19;
166:6,9;168:2,12;
170:8;174:16;175:4;
176:17;178:13;179:7;
187:16;188:24;189:1;
190:3,16;191:6;
193:19;199:16;201:17;
202:13;203:12,21,22,
23;206:5;208:17,22;
210:17;211:8;214:17;
215:1,3;217:14;224:1;
225:18;226:19,25,25;
227:18;234:25;236:25;
237:5;239:8,14;242:5;
244:11;245:8;247:2,15
**one- (3)**
70:2;219:21;226:3
**one-dollar (4)**
25:13;73:10;74:14;
225:19
**one-on- (1)**
22:4
**one-on-one (1)**
22:3
**ones (5)**
25:18;45:19;197:2;
199:10;212:2
**one's (1)**
214:15
**one-sided (1)**
189:23
**only (34)**
8:16;9:24;16:16;
23:14;27:3;37:19;
38:18,21;39:8,11;
45:18;55:21;74:18,22;
77:15;83:3;107:12;
128:14;133:17;143:7,
12;151:17,21;158:15;
159:3,9;161:14;
173:16;212:2;219:21;
220:22;224:23;238:24;
244:18
**onus (1)**
158:24
**oOo- (1)**
7:2
**open (5)**
15:13;48:12;145:13;
222:17;242:23
**opening (1)**
171:13
**operates (1)**
165:14
**operation (2)**
97:16;239:22
**operations (1)**
239:22
**operative (4)**
26:17;109:22;110:4;
155:22
**opinion (5)**
56:3;124:25;192:21;

223:1;236:9
**opponent (3)**
127:5;148:1;220:24
**opportunities (1)**
140:23
**opportunity (8)**
82:23;87:19;156:5;
157:3,11;164:21;
191:19;223:15
**oppose (1)**
177:23
**opposed (4)**
15:7;36:4;64:14;
129:5
**opposes (1)**
177:23
**opposite (1)**
182:18
**opposition (3)**
15:9;16:7;158:22
**oppositions (1)**
132:8
**opt (8)**
164:21,24;233:21;
234:10,10,10,17;236:3
**opted (1)**
164:11
**opt-in (2)**
127:18;234:5
**opting (3)**
231:21;233:22;
234:21
**option (5)**
38:21;39:8,11;110:4;
221:25
**optional (2)**
234:17;236:23
**options (2)**
221:23,23
**order (46)**
7:3,19;8:24;10:8;
14:2,17,20;15:3;17:16;
20:20,21;21:11;27:4;
41:6,11;66:14;73:18,
24;74:12,12;82:2;
86:13;89:25;122:16;
124:5;126:13;134:17;
135:5,7,7,9,11,17,20,
25;154:17;162:21,24;
174:18;177:2;225:22,
24;226:21;244:12,13;
247:6
**ordinary (2)**
101:7;108:19
**original (1)**
181:16
**Os (2)**
164:4;167:10
**others (3)**
89:15;216:22;244:6
**otherwise (2)**
11:11;178:1
**ought (2)**

46:19;58:24
**out (109)**
9:19;12:16;14:17;
16:8;18:7,23;19:2;
21:8,16;31:15;33:4;
38:12,12;39:1,16,24;
43:14;44:7;46:21;50:7,
11,20;51:10;52:4;55:6;
63:2;64:25;70:19;
76:19;81:9;89:6,10;
91:7;104:3;119:24;
120:19,23;121:22;
126:13,15;127:12;
128:17;134:15;137:18;
139:20;140:12;142:18;
144:9;145:4;146:17;
147:11;150:22;151:19,
20;154:17,24;160:21;
161:11;162:2;164:19,
20,20;165:2;168:9;
169:12;182:8;183:14;
185:10,24;187:5;
188:16,22;190:23;
191:1,16,16;192:14;
197:24;198:15;207:4;
209:5,8,21;210:10,13,
21;211:20,25;214:6,7,
10,11;216:11;221:9;
225:5;226:21;227:9,
11;229:7;231:25;
232:11,11,17;233:23;
234:21;236:21,25;
242:22;246:6
**outcome (11)**
26:3;40:1,1;66:1;
85:9;88:21;142:25;
143:8;156:24;159:24;
163:16
**outline (3)**
31:20;107:8;174:19
**outlined (2)**
18:13;231:20
**outset (2)**
17:6;51:21
**outside (1)**
64:4
**outspoken (1)**
175:22
**outstanding (5)**
149:25;199:22;
202:25;216:5;247:5
**over (25)**
7:10;9:14;11:2;29:4;
44:10,10,19;45:16;60:16;
68:8;85:7;86:15;
119:17;121:16;142:5;
148:21;160:9;180:12,
12;191:18,18;198:8;
219:4;227:9;230:15;
239:24
**overflow (1)**
7:9
**overheated (1)**

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 269
of 282

7:16
**overlap (1)**
74:11
**overnight (1)**
237:25
**overrule (5)**
58:21;59:21;60:12;
63:17;89:22
**overruled (1)**
26:15;59:1
**oversight (3)**
87:4,11,25
**overview (1)**
240:13
**overwhelmed (1)**
135:5
**owed (2)**
29:12;30:6
**own (13)**
24:18;41:25;130:1;
143:14,17;158:12,23;
170:22;192:14;193:4;
202:19;214:2;244:18

**P**

**pa (1)**
231:14
**pace (1)**
195:13
**package (1)**
115:14
**packages (2)**
146:17;164:19
**page (59)**
25:8;32:20;35:4;
37:3;49:10;67:4,8,12,
13,22;70:24;71:12;
94:23,25;95:6,10,11;
98:13,19,21,22;99:6,7;
107:10,13,15;112:11,
12,18,19;113:2;
148:16;149:19,21;
166:10,24;181:11;
189:11;194:15;196:18,
20;199:18;201:18,19,
20;206:4;208:15;
214:14,16,25;226:11;
228:14;231:14;232:12,
18;239:14,19,20;
240:12
**pages (11)**
7:17;113:7;114:6;
166:24;171:8;230:19;
231:15;236:1,6;
241:13,16
**paid (20)**
28:11;29:5,15,18;
30:3,14,24;34:13;
51:10;52:4,9;62:5;
64:20;84:20;103:22;
104:1;191:18,21;
204:23;205:18

**paint (1)**
199:14
**painted (1)**
206:22
**pamphlet (4)**
44:1;47:9,10;229:22
**pamphlets (1)**
55:18
**panel (4)**
35:21;86:18,23;87:7
**panels (2)**
86:17,18
**paper (1)**
99:25
**papers (4)**
74:24;124:22;
137:10;163:22
**Parada (1)**
20:16
**Paradise (5)**
45:20;53:3;69:15;
178:1;197:4
**paragraph (9)**
67:23;95:20;99:3;
116:20,22,23;167:6;
214:16,25
**parameters (1)**
62:16
**pardon (3)**
33:21;40:20;154:22
**parenthetical (1)**
214:25
**part (17)**
47:22;59:19;79:8;
113:17;114:16,20;
119:22;122:21;137:9;
147:5;176:15;179:23;
199:11;207:25;209:2;
212:6;221:8
**participate (2)**
141:11;145:13
**participation (1)**
90:5
**particular (9)**
46:4;121:16;138:10,
11;152:10;158:9;
163:15;167:6;232:21
**particularly (8)**
34:12;57:21;76:23;
119:6;121:19;145:7;
164:2;184:12
**parties (21)**
12:4;17:23;21:4;
22:5;23:9,19;25:15;
39:12;40:11;57:8;58:9,
11;121:24;164:4;
176:20;188:5;226:9;
234:2,17;235:5,6
**partly (1)**
139:19
**party (5)**
25:9;162:4;164:6;
231:20;233:24

**PASCUZZI (16)**
78:17,18,19;79:2,6,
10,15,18,21;82:17;
83:2;132:12,14,17,21,
25
**pass (1)**
220:21
**passes (2)**
139:1;156:9
**passu (1)**
78:11
**past (3)**
135:8;233:2;237:8
**patently (3)**
26:10;27:18;122:3
**path (3)**
27:16;221:14;222:22
**pattern (2)**
40:25;207:12
**Paul (1)**
81:3
**Pause (2)**
67:1;70:15
**pay (17)**
28:5,6,8,22,24;29:2;
42:19;52:10;60:6,7;
76:18;116:14,15,15;
190:11;193:10;220:19
**paying (1)**
27:22
**payment (10)**
26:11;28:18;30:21,
21;43:4;49:16;51:11;
84:6;120:16;191:20
**payments (7)**
51:10;54:9;105:13,
14;177:3;189:14,15
**payout (1)**
205:5
**PCG (1)**
204:6
**penalties (1)**
206:12
**pending (8)**
10:23;17:4;29:10;
30:1;70:11;80:12;
103:17;163:8
**people (65)**
9:24;13:20;16:20;
20:24;25:23;39:16;
41:11,15,17;44:7;
47:18;51:24,25;53:3,
20;54:4;56:1,10;60:5;
61:25;62:5,6;63:9,11;
65:25;68:14;69:16;
92:11;107:23;113:13;
126:16;128:24;140:4;
141:10,10,11;143:13;
154:18;155:7;156:14;
160:4;164:23;167:14;
171:20;175:23;176:10;
178:14,15,18;186:20;
188:18,21;192:13;

**PASCUZZI** (continued)
200:3,12;205:17;
229:12;230:9;231:13;
234:17;236:10;238:12,
19;241:17;245:17
**per (4)**
73:23;74:4;145:25,
25
**perceive (1)**
88:23
**percent (13)**
45:18;54:13,14,15;
55:3;76:5;153:16,17;
182:19;184:7;190:5;
204:6;218:10
**percentage (8)**
38:8,9,13;49:14;
57:7;186:21;192:3;
193:11
**percentages (1)**
54:2
**perfect (4)**
42:2;56:16;58:23;
184:15
**perfectly (4)**
22:15;127:20;128:9;
163:2
**perform (7)**
92:19;93:5,10,18;
94:15;102:2;110:8
**performance (2)**
191:8;194:22
**performed (2)**
198:5,6
**Perhaps (13)**
10:10;15:15;36:18;
96:15;125:2;169:17;
174:16;198:13;210:20;
212:12;215:3;237:24;
239:16
**period (5)**
12:1;20:17;85:1;
191:18;233:13
**permissible (1)**
220:15
**permission (2)**
78:2;210:14
**person (14)**
50:4;100:21;103:16;
116:12;123:13;152:20;
159:8;184:18;233:18,
22;234:24;235:9;
237:3,4
**personal (4)**
34:7;63:3;196:5;
244:18
**personally (2)**
190:7;220:13
**perspective (1)**
124:5
**persuade (4)**
61:25;89:15;170:16;
222:3
**persuaded (2)**

59:24;156:11
**pet (1)**
46:9
**petition (3)**
27:11;138:14;150:1
**PG&E (31)**
7:12;34:11;36:5,6;
64:14;65:13;93:22,24;
103:1;104:3;138:13;
144:8,15,16;159:7;
167:9;176:23;177:6;
178:23;197:4,8,12;
198:15,15;199:5,20;
206:12;207:3,19;
221:11;222:15
**PG&E-caused (2)**
196:23;204:3
**PG&E's (4)**
178:12;179:1;
207:10;217:15
**phase (1)**
162:9
**philosophy (1)**
17:19
**phone (21)**
25:6;82:19;85:14;
90:21,22;91:13;94:1,5,
6,11;171:18,19,21,22,
25;176:4,14;223:5,16;
239:8;244:7
**phones (1)**
94:9
**phonetic (3)**
100:17;152:22;
175:19
**phrase (1)**
215:16
**pick (1)**
130:9
**picked (1)**
192:14
**picking (1)**
131:4
**picture (1)**
206:22
**piece (2)**
16:10;54:25
**pike (1)**
8:2
**pile (1)**
15:19
**pin (2)**
39:4;84:21
**pitch (1)**
177:17
**PITRE (6)**
224:14,16,21,22;
225:10;230:10
**place (13)**
53:16,20;141:15;
151:4;161:25;184:6;
186:22;187:2;192:20;
202:12;204:19;206:10;

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 270
of 282

239:24
**plain (1)**
167:7
**plainly (1)**
187:21
**plaintiff (7)**
103:3;109:10;110:6;
111:2;137:5;169:19,23
**plaintiffs (6)**
135:2,2;136:21;
169:14;217:17;224:22
**plan (188)**
11:22;16:12;18:12;
22:8,14;26:10,13;27:4,
10,18,18,19;28:1,3,4,6,
19,21;29:3,13,16,19;
30:11,13,13,17;31:1;
32:8,8,10,10,21;33:15;
36:15;38:20;46:22;
48:24;53:20;58:7,16;
59:20;60:9;61:25;62:7;
65:3,6;66:1;71:2,3;
72:4,7,17;78:23;91:24;
97:19;98:7;100:18;
105:12;110:9;113:18,
24;114:2;115:10;
117:23;118:15;119:18,
19;120:19,22;121:6,10,
18;122:15,25;123:21;
127:12,14;128:4,10,12,
19,23,25;129:9;
136:10;138:4,6,19,21;
142:14;144:9,16;
145:4,19;146:1,7,25;
148:7,11;149:5;
150:25;153:7;155:21,
24;156:1,24;157:24;
163:22,23;164:13;
165:8,11;166:18,20,21;
167:4,12;168:8;
169:21;174:2;175:3;
176:18,22,24;177:6,7,
14,17,18,23;179:21;
181:5;182:25;183:3,
11,19;185:6,6,7;188:6;
189:17,23;194:17;
195:3,4,7,7;197:19;
198:4;199:3;200:2,3,5,
20;205:16;209:15;
210:7;212:7,18;
214:10,14,16;215:2;
218:21;219:13,20;
220:11,19;221:11,24;
222:1,18;233:20;
234:2,3,13,13,14,15,
16;235:6;236:6,22;
239:24;240:5;241:17;
242:5;246:20
**plans (2)**
141:4;220:14
**plan's (1)**
143:21
**platform (1)**

196:2
**play (2)**
139:20;141:23
**pleading (1)**
40:13
**please (11)**
7:11;76:1;83:18;
87:20;99:20;131:3;
137:1;156:20;180:21;
195:5;239:9
**pleased (2)**
10:15;137:11
**pleasure (2)**
11:18;247:13
**plug (1)**
152:6
**plus (4)**
28:15;29:14;30:10;
66:11
**pm (3)**
131:2,2;248:11
**podium (1)**
23:22
**point (51)**
15:11;21:15;22:22;
36:3,6,18;43:19;46:2;
49:12;51:18,18;55:12;
61:8,12;64:25;69:24;
75:5;88:22;89:7,25;
94:18;98:9;100:22;
101:24;108:14;113:13;
121:22;127:11,24;
143:24;147:4,9,13;
154:9;155:10;181:14;
184:25;198:8;199:10,
25;203:16;208:1;
220:11;223:20;228:11,
16;231:25;232:11;
235:22;236:21;238:13
**pointed (2)**
55:6;140:12
**pointing (1)**
236:25
**points (6)**
25:25;38:3;105:5;
225:11,14;228:12
**policies (1)**
112:2
**policy (2)**
113:20;116:8
**Porter (1)**
73:22
**portion (6)**
47:23;50:8;147:13;
215:4,17,18
**position (12)**
26:21,25;31:23;
58:13;93:9;129:3;
157:2;159:25;191:9;
200:19,20;217:18
**positive (2)**
219:21,24
**possessions (1)**

178:16
**possible (4)**
48:3;55:12;159:23;
161:1
**possibly (1)**
163:16
**post- (2)**
27:10,22
**post-confirmation (1)**
103:24
**post-effective (1)**
31:5
**post-petition (7)**
26:11;27:24;98:3;
99:23;100:19;103:22;
110:4
**posture (2)**
21:23;23:13
**pot (2)**
38:11,14
**potential (3)**
100:23;189:13,14
**potentially (6)**
113:18;156:8;164:5,
25;167:11;168:1
**power (3)**
86:15;128:11;188:20
**practicable (2)**
30:15,25
**practicing (1)**
17:12
**practitioners (1)**
158:3
**pre-bankruptcy (1)**
210:2
**precedent (1)**
27:25
**precise (1)**
169:13
**precisely (1)**
146:15
**preclude (3)**
208:18,20;209:15
**predicate (1)**
220:18
**predict (1)**
158:4
**preexisting (1)**
183:13
**prefer (1)**
22:4
**preference (1)**
105:18
**preferences (1)**
104:23
**prejudging (1)**
120:21
**prejudice (1)**
18:6
**premature (1)**
187:4
**premise (1)**
146:25

**prepare (1)**
16:12
**prepared (10)**
18:5;21:25;24:15;
44:21;89:23;117:21,
22;153:18;185:8;228:1
**pre-petition (1)**
109:4
**presence (1)**
217:10
**present (2)**
21:23;220:14
**presented (1)**
20:5
**preserve (4)**
26:20;34:6;36:7;
65:5
**preserved (3)**
31:21;36:1;122:20
**presidential (1)**
63:12
**presiding (2)**
7:5;82:6
**press (1)**
129:17
**pressure (1)**
160:25
**presumably (3)**
140:23;163:9;164:6
**presume (5)**
12:1,16,16;21:20;
162:8
**pretend (1)**
161:15
**Pretty (7)**
49:3;58:11;74:24;
111:11;200:2;205:4;
231:1
**prevailing (1)**
103:21
**previous (1)**
138:6
**Previously (3)**
8:13;122:24;137:24
**price (2)**
206:15,17
**primary (1)**
173:3
**principal (6)**
64:19;73:13;125:3;
243:17;244:19;245:22
**principle (1)**
122:4
**principles (1)**
127:7
**print (1)**
190:1
**prior (14)**
21:12,13;34:11;78:6;
108:11;185:5,6;
188:25;199:10;201:23;
202:2;203:14,22;
229:11

**priority (1)**
177:2
**pro (8)**
34:2;35:1;37:12,15;
51:20;62:18;119:11,13
**probably (8)**
17:25;44:3;56:16;
158:5;165:7;197:19;
198:22;244:16
**problem (32)**
15:17;18:17;20:11;
22:18;57:4;58:25;72:8,
19;88:23;91:20;92:8;
94:10;97:5;104:17,19;
121:2,5,8;129:20;
139:16;141:15;146:16;
148:1;161:13;162:10;
168:3;169:14;190:12;
197:5;208:3,4;236:5
**problematic (2)**
48:21;120:24
**problems (10)**
93:24;94:14;140:20;
153:20;154:12;159:21,
22;161:15,15;178:13
**procedural (2)**
23:13,14
**procedurally (1)**
11:25
**procedure (10)**
18:17;20:2,3;22:12;
35:22;51:23;54:8;
141:4;181:4;185:3
**procedures (34)**
14:10;15:3;18:18;
34:2,6,18;35:8,10,16;
37:25;38:2;44:21;54:6;
58:10;60:22;63:21;
64:12;74:10;86:14,14,
24;87:3,23;88:5,9,16;
96:10;130:2;154:20;
157:1,12,17;159:3;
226:14
**proceed (2)**
16:12;18:8;22:13;
137:14
**proceeded (2)**
92:23,24
**proceeding (6)**
18:23;81:10;101:19;
107:11;110:5;176:21
**proceedings (4)**
22:7;60:16;222:14;
248:11
**process (18)**
11:22;12:8;17:25;
21:14;22:1;50:17;53:1;
54:22;87:7;88:11;
110:3;122:21;136:1;
141:14;157:18;185:19;
190:10;230:17
**processes (2)**
53:16;54:17

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 271
of 282

**processing (1)**
54:8
**processor (1)**
53:20
**producing (1)**
22:19
**product (1)**
170:18
**productive (1)**
89:7
**professional (2)**
62:6;191:5
**professionals (8)**
54:6,16;55:13;89:13;
180:1;184:10;191:9;
192:18
**profits (1)**
193:13
**program (3)**
139:2;140:1,3
**progress (2)**
39:21;248:9
**project (2)**
9:24;91:18
**projections (1)**
219:1
**promise (4)**
24:17;48:23;243:16;
246:13
**promised (1)**
77:9
**promises (1)**
197:25
**promptly (2)**
12:11;135:21
**promulgate (1)**
118:4
**proof (8)**
51:5;103:14;109:24;
139:5;159:6;195:2;
218:15;219:3
**proofs (2)**
154:15,25
**proper (2)**
145:1;188:4
**properly (2)**
21:14;225:4
**Property (7)**
34:8;46:8;69:23;
163:25;164:8;167:11;
233:11
**proponent (1)**
45:7
**proponents (3)**
162:5;169:21;220:22
**proposal (5)**
19:16;50:7;51:9;
133:21;182:12
**propose (5)**
160:18;162:17,18;
169:1;171:11
**proposed (24)**
33:1;50:13;74:12;

81:9,17;95:5;96:21;
111:25;134:17;135:7,
20,25;165:16;167:17;
177:14;185:5,7;187:6;
225:22,24;242:7;
244:12,13;247:6
**proposing (2)**
15:2;164:19
**proposition (1)**
160:3
**propriety (1)**
164:16
**prosecute (1)**
93:3
**prosecutor (1)**
208:22
**protected (1)**
19:21
**prove (1)**
219:4
**proved (1)**
153:3
**proven (1)**
43:9
**proves (1)**
205:16
**provide (17)**
28:19;32:9;34:2;
35:9;40:10;41:12;
59:18;64:12;86:14;
92:6;154:20;159:3;
183:1;189:23;194:19;
209:3;224:7
**provided (7)**
34:14;49:13;51:16;
57:8;194:17;195:2;
215:5
**providers (6)**
92:4,16,18;93:15,18;
97:6
**provides (15)**
27:10;29:19;30:13;
33:24;35:2;51:3,10;
86:12;112:1;166:19;
170:8;212:17;219:21;
233:20;234:17
**providing (2)**
197:10;217:20
**provision (11)**
120:20,23;128:8,11,
23;153:7;169:19;
205:13;215:14;236:21,
24
**provisions (11)**
32:7;66:6;118:15;
121:18;123:21;166:20;
172:14,17;214:2;
234:3;235:7
**prudent (4)**
186:6;195:17;220:6;
222:21
**PSPS (3)**
216:3,10,17

**PSPSs (2)**
217:23,25
**public (11)**
11:14;12:2;57:14;
81:4;85:7;100:21;
107:11;214:15;225:1;
233:7;238:18
**published (1)**
19:1
**PUC (2)**
82:3;93:11
**punishing (1)**
217:16
**punitive (1)**
66:11
**purchase (1)**
159:7
**pure (3)**
118:25;167:21;170:3
**purely (1)**
127:18
**purporting (2)**
119:2;165:12
**purports (2)**
163:23;164:9
**purpose (1)**
200:4
**purposes (21)**
8:1;31:16;62:1;73:2;
82:5;83:5;100:4,6,8;
107:25;128:14;131:21;
132:6;133:10;135:12;
144:22;152:17;153:15;
183:2;188:23;230:23
**pursuant (2)**
161:23;163:8
**purview (1)**
44:22
**pushed (1)**
171:17
**put (45)**
13:7;31:4;37:15;
40:17;41:16,17;47:15,
16;48:7,11;56:4;63:8;
71:2;82:12;89:13,20;
93:8,13;94:8;110:17;
115:18;116:20,22;
117:3;135:6;150:5;
151:18;152:12,15;
161:25;172:15;173:17;
174:19;179:11;181:19;
195:9;196:9;198:15;
202:12;203:15;214:25;
215:22;220:6;221:9;
241:3
**puts (1)**
115:25
**Putting (9)**
38:10;54:5;74:8;
150:14,15;180:1;
183:24;186:7;238:6

**Q**

**Q&A (1)**
242:17
**quacks (1)**
16:4
**qualifications (1)**
192:14
**quantified (2)**
46:12;92:10
**quantify (2)**
91:4;180:2
**quash (5)**
15:2,6,11;20:18;
22:14
**questionnaire (2)**
50:20,22
**quick (3)**
10:11;78:19;217:11
**quickly (7)**
13:11;19:2;65:20;
129:24,25;175:8;
204:25
**quid (2)**
119:10,13
**quite (8)**
36:25;60:22;69:17;
153:9;169:4;174:6,12;
221:16
**quo (2)**
119:11,14
**quote (1)**
144:12

**R**

**R- (1)**
215:19
**rails (1)**
158:5
**raise (8)**
27:3,13;29:7,8,22,
23;137:12;164:17
**raised (14)**
8:16;10:15;18:14;
31:13;72:5;97:7;
103:13;104:23;120:15;
137:10;163:21;173:25;
189:22;225:1
**raises (3)**
31:17;138:15;229:3
**raising (2)**
31:10;226:3
**rally (1)**
203:6
**ramifications (2)**
198:20;235:10
**ran (1)**
241:2
**range (12)**
38:9;39:12,13;40:8,
10,17;41:3;44:24;45:5;

46:7;47:19;53:14
**ranged (1)**
144:13
**rare (1)**
146:21
**rata (6)**
34:2;35:1;37:12,15;
51:21;62:18
**rate (9)**
27:11,15;28:7,14;
29:14,17;32:1;191:13;
227:5
**rather (11)**
14:1;50:10;53:11;
120:1;155:22;189:24;
195:16;199:16;204:25;
245:18,20
**rational (1)**
161:8
**re (1)**
107:11
**reach (4)**
11:3;111:2;152:6,13
**reached (2)**
130:20;133:4
**react (1)**
206:4
**reaction (1)**
174:4
**read (16)**
7:17;40:13;56:10;
87:21;99:15;165:9;
167:15;170:19;202:18;
203:11,11;211:10,11,
11;229:21;231:13
**reader (1)**
89:1
**reading (3)**
165:23;240:20,25
**ready (3)**
24:14,16;244:14
**real (9)**
159:21;161:13,15;
175:8;199:15;219:23,
24,25;220:3
**realistic (2)**
41:20;60:8
**realistically (2)**
143:5,7
**reality (1)**
154:21
**realize (6)**
36:20;47:12;58:23;
108:15;231:2;237:6
**really (33)**
22:23;26:21;36:3;
38:24;46:4;58:12;60:5;
63:22;68:16,19;86:17;
93:2;102:15;103:6,11;
145:9;151:15;154:12;
159:15;168:21;173:7;
174:2,21;183:25;
184:1,22;186:16;

187:9;199:8,14;
200:19;202:24;225:11
**reason (21)**
30:2;31:10;39:6;
47:19;59:12;64:12;
72:5;86:17;89:11,13;
116:16;128:14;132:18;
142:23,23;210:13;
222:16;224:23;236:17;
237:5,18
**reasonable (8)**
46:7;54:2;160:22,22;
161:8;207:9;220:6;
246:10
**reasons (4)**
50:12;141:8;144:20;
202:22
**Rebecca (2)**
23:6;38:5
**rebound (1)**
93:4
**rebuild (1)**
179:2
**rebuilding (3)**
53:11;205:3,9
**recall (3)**
36:25;79:4;210:18
**receive (4)**
40:18,22;49:16;
76:23
**received (6)**
9:12;54:11;138:8;
211:25;223:2,3
**receiving (3)**
9:25;76:16;105:14
**recess (4)**
77:6,9;80:15;131:2
**reciprocal (1)**
127:25
**recognition (1)**
111:5
**recognize (2)**
52:21;165:5
**reconsideration (1)**
215:3
**reconvening (1)**
245:1
**record (7)**
23:21;58:18;77:21;
82:23;99:24;131:5;
186:12
**record's (1)**
31:9
**recoupment (4)**
123:8;228:17,18,20
**recourse (2)**
88:2,17
**recover (1)**
105:13
**recoveries (7)**
38:8,9;39:12,13;
40:9,10;49:7
**recovery (5)**

38:9,13;39:16;40:17;
48:23
**redline (6)**
32:19;95:12,12;
113:1,3;189:11
**redlines (2)**
66:16,17
**reduce (1)**
76:22
**reduced (1)**
84:1
**reduces (1)**
39:23
**reduction (1)**
83:16
**redundancy (1)**
239:13
**redundant (1)**
242:8
**refer (1)**
41:16
**reference (8)**
9:8;70:10;148:10;
158:10;222:14;226:13,
14,24
**referral (1)**
36:24
**referred (2)**
189:18;236:6
**referring (5)**
66:13;144:6;205:14;
212:5;243:23
**refers (1)**
138:21
**reflect (5)**
11:22;20:16,16;
68:10;134:16
**reflected (4)**
11:23;70:18;135:16;
212:17
**Refresh (2)**
212:11;234:4
**refunds (1)**
50:10
**regard (7)**
35:1;41:4;63:17;
104:23;159:10;165:15;
173:2
**regarding (6)**
33:25;48:22;49:13;
66:7;112:1;163:22
**regardless (1)**
198:19
**registration (1)**
205:21
**regular (2)**
37:20;179:14
**regularly (1)**
64:3
**reinstated (1)**
212:20
**reinstatement (1)**
129:5

**reject (1)**
144:1
**rejected (2)**
22:6;122:11
**rejecting (1)**
144:2
**relate (1)**
37:19
**related (11)**
10:13;15:7;18:14;
22:14;78:21;87:7;
100:19;144:25;158:8;
159:7;188:25
**relates (2)**
114:8;178:13
**relation (1)**
216:3
**relationship (2)**
184:11;186:23
**relatively (1)**
160:15
**relea (1)**
233:23
**release (41)**
71:19;118:15;
121:18;122:1,5;
123:20;127:11,25;
128:1;164:11,14,21,24;
165:1,12,13;168:2;
169:15,20;172:14,16;
227:24;231:21,21;
233:16;234:3,14,25;
235:1,6,7,11,12,14,17;
236:3,3,6,23;237:4,12
**released (2)**
235:2,7
**releases (21)**
70:24;71:19,23,24;
121:24;124:17;127:12,
17,18,19;166:18,23;
229:9;230:23;231:11,
20;232:5;233:14,16,
21;234:17
**releasing (4)**
231:22;232:1,8;
233:25
**relevance (1)**
116:17
**relevant (13)**
57:15;58:7;97:4,18;
102:3,3;116:25;
133:19;144:22;186:16;
207:11;223:21;241:7
**reliability (5)**
92:4,15,18;93:15;
97:6
**reliable (2)**
194:19;217:21
**relied (1)**
175:21
**relief (2)**
223:19,20
**reluctant (1)**

241:25
**rely (1)**
152:5
**remain (2)**
131:3;199:21
**remaining (2)**
84:15;129:18
**remains (1)**
83:3
**remarks (1)**
171:13
**remedies (4)**
185:17;187:14,25;
208:20
**remedy (7)**
30:3,21;36:12;
140:23;187:3,12;
198:13
**remember (4)**
8:19;12:19;141:16;
161:24
**reminded (3)**
213:11;215:10;240:8
**reminds (1)**
239:11
**reminisce (2)**
240:19,22;241:1
**remotely (2)**
116:25;159:23
**removed (1)**
17:15
**renders (1)**
28:2
**renewed (1)**
139:25
**reorganization (8)**
110:9;176:22,25;
177:6,7;197:24;
219:14;221:12
**reorganized (5)**
27:20;84:16;85:2;
163:25;167:11
**re-organized (1)**
164:7
**reorient (1)**
221:12
**reoriented (1)**
194:18
**repeat (2)**
163:11;218:2
**repeated (3)**
190:18;221:25;222:1
**repetitive (1)**
229:19
**reply (1)**
154:16
**report (2)**
10:15;131:6
**reported (1)**
13:23
**reports (1)**
218:25
**represent (5)**

186:2;195:3;199:22;
202:25;225:3
**representative (1)**
109:11
**representing (1)**
61:9
**request (2)**
72:13;159:9
**requested (1)**
85:21
**require (2)**
41:12;184:18
**required (2)**
11:23;230:24
**requirements (3)**
40:15;143:23;144:3
**requires (1)**
121:10;242:3
**Rescission (5)**
148:19,20;149:12;
150:6;154:14
**reservation (3)**
114:1,5;117:2
**reservations (1)**
114:3
**reserve (11)**
37:9;61:16;62:2,3,4;
63:5;81:24;114:12,12;
144:24;229:2
**reserved (3)**
122:20;132:5;228:25
**reserves (2)**
35:5,6
**reserving (1)**
106:18
**reset (1)**
20:19
**resetting (1)**
18:17
**resisting (1)**
24:24
**resolution (17)**
12:17;13:4;49:23;
56:15;60:22;70:17;
88:16;105:11,11;
124:15;127:9;131:7;
133:4;165:16;181:4;
185:3;247:20
**resolutions (1)**
34:18
**resolve (10)**
76:6;77:7;78:20;
88:11;124:2;137:23;
168:13;170:10,14;
246:23
**resolved (29)**
8:17;10:18;29:4;
33:15;40:7;62:5;73:1,
2;78:22,25;79:13;81:7;
82:22;92:8;100:19;
104:24;105:6;106:7,
16;117:16;124:4,16;
130:23;157:9;163:10;

Min-U-Script®

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 273
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(23) reason - resolved

167:21,24;225:20;
226:9
**resolves (1)**
173:7
**respect (36)**
10:19;12:4,13;23:10;
27:14,24;28:3;24:7,15;
48:20;57:21;76:16;
80:4;82:25;90:7;92:7,
12;101:5;106:17,18;
107:5;122:17;131:15,
17;137:8;138:24;
139:15;154:11;156:4,
19;160:11,14;164:3,
12;172:13;197:7
**respective (1)**
166:22
**respond (7)**
21:19;25:24;59:4;
108:5;126:4;181:15;
201:24
**responded (1)**
59:25
**respondent (1)**
22:23
**respondents (2)**
91:8;93:4
**response (9)**
25:10;59:25;60:14;
86:6;96:8,9;132:3;
185:9;223:17
**responses (1)**
173:19
**responsibility (7)**
101:1;191:11;
220:12,13;225:3,8;
241:10
**responsive (2)**
68:25;69:2;186:22
**rest (4)**
47:24;169:24;173:8;
229:15
**restart (3)**
21:14;22:1;157:18
**restates (1)**
86:5
**restrictions (2)**
179:12;183:18
**restructuring (1)**
194:18
**result (8)**
31:6;25;82:24;
102:21;105:14;220:16;
222:2;243:19
**resulted (1)**
91:10
**results (1)**
14:5
**resume (1)**
130:9
**retail (1)**
167:8
**retain (2)**

59:15;183:5
**retaining (1)**
59:17
**retired (1)**
17:15
**return (4)**
49:14;57:8;227:5,16
**returned (2)**
227:9,10
**revenue (1)**
92:3
**reverses (2)**
26:19;31:25
**review (7)**
33:2;51:4;52:5;
82:23;111:3;160:13;
246:8
**reviewed (5)**
10:2;51:8;100:3;
223:18;229:17
**reviews (2)**
52:3,4
**revise (2)**
107:3;118:9
**revised (6)**
32:8,13;33:16,23;
75:22;173:23
**revisions (1)**
82:24
**revisit (4)**
70:5;89:24;218:8;
243:21
**RICHARDSON (31)**
14:12,13,20,22,25;
15:14,18,22,25;16:3,
10,18,21,23;17:1,11;
18:1,3,9,16;19:6;20:9,
12,14,21,23;21:10;
22:2,4,17;23:4
**rid (2)**
90:18;239:21
**Rifkind (1)**
81:3
**right (206)**
8:10;10:9;12:17;
13:7;16:5;19:23;21:24,
24;23:3,5,8;24:13,14;
25:10;26:7;27:6,12;
28:1,9,16;31:5;32:4;
33:19;34:6;35:9,12,18;
36:1,12,19;38:1;41:9;
45:17,24;47:4;48:6;
50:15,18,24,25;51:2,3,
7,15;52:22;53:8,25;
59:8;60:15;62:5,8;
64:9;65:1,2,5,8,24;
67:24;69:9,12,13;70:9;
72:2,21,25;73:6,12;
74:19;75:16;76:7,14,
21;79:1,6,6,9;81:5,12,
14,19;82:17;85:10;
86:8;87:5,20;88:21,24;
90:6,23;91:19;92:21;

93:2;95:8;97:3;99:15;
101:13,13;102:4;
103:4,8,20;104:9;
105:25;106:3,23;
109:5,19;110:16;
111:2,14,17,21;112:10;
113:7,8;114:5,17,21;
115:4,21;117:6,9,13,
14,23;119:4,8;120:11,
18;121:1,25;122:2;
123:3,8,16,19;126:17;
129:16;132:17,19;
133:5;134:2;135:1,12,
22;140:15;143:13,16;
144:24;145:17;151:15,
20;153:25;154:3,4,13;
156:10,21;158:18,19;
160:8,16;162:5,6,9;
165:17;173:6;175:16;
178:2;180:24;181:17;
182:20;183:4,7,20;
184:8;185:7;190:10;
192:18;195:7,21;
197:6;198:23;203:17;
204:8,10;207:21;
208:23;211:8;212:19,
25;213:2,6;214:4;
215:9,13;216:21;
217:22;221:8;228:20;
230:14;238:16;246:1;
247:10,12
**right-hand (2)**
98:24;113:2
**rights (26)**
90:8,15;95:15;96:1,
11;106:18;113:12,19,
21,22;114:1,3,12,12,
14;115:6,6,14;116:7,
23;117:3;122:17;
123:22;132:5;205:22;
218:3
**right-upper (1)**
113:3
**rise (1)**
7:4
**Risk (8)**
67:21;97:15;173:24;
189:3;200:1,3;204:16;
216:8
**risks (12)**
175:1,3,4;176:17,18;
177:8,9;189:21;199:7,
22;202:25;204:4
**River (1)**
68:7
**road (2)**
24:4;110:23
**Robert (1)**
106:11
**roll (3)**
33:19;90:18;169:6
**Roman (2)**
115:2,18

romanette (5)**
115:23;116:2,3;
117:4,4
**romanettes (1)**
95:18
**room (3)**
7:8;32:24;157:13
**Rosa (2)**
177:25;245:8
**Rose (2)**
8:4;38:6
**Rosenzweig (3)**
8:3,3,7
**round (1)**
83:25
**RSA (17)**
40:13;127:14,14;
195:10;210:21;211:19,
19,20;212:17;213:19;
214:1,19;215:7,7;
222:12,16,20
**RSAs (2)**
122:25;214:13
**rude (1)**
194:24
**ruin (1)**
14:7
**rule (16)**
16:24;19:22;21:21,
22;29:24;92:23;
105:17;121:9;158:17,
25;162:1;171:3;
195:14;216:16,17;
217:1
**ruled (1)**
103:19
**rules (8)**
15:25;158:2;160:20;
161:23;182:21;184:9;
205:6;216:25
**ruling (9)**
22:11;25:16;26:13;
27:7,8;75:7;203:12;
216:10;217:11
**rulings (2)**
14:16;25:11
**run (1)**
247:17
**running (2)**
50:20;62:7
**rush (2)**
125:24,25

# S

**safe (3)**
194:19;201:9;217:20
**safety (7)**
92:3,15,18;93:15;
97:6;107:11;198:15
**sailed (2)**
142:3,5
**sake (1)**

romanette... 100:20
**same (37)**
32:25;37:3;48:20;
57:7;75:18;78:24;96:6;
101:16;105:15,21;
109:17,22,25;112:22;
114:14,19;123:4;
129:4;132:25;141:15;
143:13;145:18;162:3,
8;163:1;170:11;
181:24;192:6;199:8,9;
204:14;217:3;218:2,5;
222:18;239:1,13
**SAN (4)**
7:1;17:16;171:21;
178:19
**sanction (1)**
105:21
**Sandler (1)**
137:3
**Santa (2)**
177:25;245:8
**satisfaction (3)**
19:18;48:8,9
**satisfied (14)**
59:16;75:25;76:10;
81:21;84:15,18;100:4,
6;102:11,12;108:1;
110:20;111:9;197:20
**satisfies (3)**
96:22,22,23
**satisfy (6)**
42:4,6,9,13;137:7;
143:23
**Saturday (1)**
152:21
**saw (5)**
33:5;89:6;120:21;
226:24;227:3
**saying (21)**
13:19;25:22;31:7;
37:5;72:12;84:25;
93:23;94:17;97:11;
104:14;146:24;150:10;
177:18;180:15;182:23;
183:10;186:3;187:9;
205:4;221:6;242:22
**scare (1)**
207:2
**schedule (10)**
10:8;25:16;55:17;
80:4,7;120:6,13;
134:19;186:5;243:10
**scheduled (1)**
245:10
**schedules (1)**
19:20
**scheduling (8)**
13:23;14:2;24:7;
27:4;107:23;126:13;
225:13,15
**Schwab (1)**
193:10

Min-U-Script®
Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 274
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(24) resolves - Schwab

**scope (3)**
73:18,24;121:18
**se (1)**
73:24
**sealed (1)**
51:13
**seated (2)**
7:11;131:3
**second (27)**
9:22;25:8;32:5;
35:19;52:25;87:6;
92:12;95:14;99:15;
113:25;119:23;139:17;
140:2;147:24;148:12;
152:3;185:2;201:17;
202:13;203:12;206:4;
207:13;222:12;226:19;
227:18;239:8;242:1
**Secondly (3)**
57:7;63:7;115:10
**secret (1)**
11:4
**Section (8)**
35:5;37:9;71:19;
105:13;108:4,8;167:1,
4
**secured (3)**
212:7,23;213:1
**securities (9)**
136:11;137:5;139:7;
159:8;169:14,19,22;
170:9;212:24
**securitization (1)**
215:17
**security (5)**
136:8,11;167:9;
215:5,18
**seeing (2)**
99:10;170:7
**seek (2)**
111:2;216:22
**seeking (4)**
68:8;73:25;208:19,
20
**seem (5)**
47:5;129:18;145:10;
146:3;229:15
**seemed (3)**
15:7,9;20:9
**seems (16)**
26:16;29:15;39:7;
41:1;77:1;93:1;97:14;
145:14;146:4;155:15;
168:7;190:16;195:17;
203:22;229:18;236:18
**sees (1)**
77:3
**segregation (1)**
127:14
**selected (1)**
142:7
**sell (4)**
179:13;182:22;

**sending (2)**
191:19,24
**send (6)**
120:19;164:19,20,
20;232:11;241:15
**sending (2)**
150:21;165:2
**senior (2)**
76:4;130:18
**sense (10)**
16:6;21:15;67:16;
178:22;184:5;199:16;
219:21;230:3;242:19;
243:1
**sensitivity (1)**
145:6
**sent (4)**
9:19;113:25;119:17;
227:11
**sentence (9)**
95:24;100:24;
110:25;169:18;170:8;
200:17;202:23;212:11;
239:13
**sentences (5)**
76:8,10;77:2,4,5
**separate (7)**
137:11,23;146:19;
152:20;158:11,23;
224:10
**separated (1)**
138:2
**separately (2)**
136:12,17
**series (2)**
140:19;198:19
**serve (1)**
21:11
**served (2)**
21:6;22:6
**service (9)**
92:4,15,18;93:5,15,
18;97:6;194:19;217:21
**services (3)**
92:6,19;93:18
**session (1)**
7:4
**set (6)**
33:22;35:16;60:13;
62:4;63:21;230:24
**setting (1)**
87:22
**Settle (3)**
214:14,16,18
**settlement (22)**
10:18;13:18;39:19;
42:23;49:24;58:17;
80:13;81:10;82:25;
83:2;132:13,15,18;
177:3;191:1;192:10;
209:5;210:18;212:15;
213:16;218:17;247:10
**settlement- (1)**
12:7

**seven (1)**
62:10
**seventeen (1)**
53:23
**seventy-page (4)**
44:15;56:10;231:9,
12
**several (7)**
10:20;11:2;126:15;
190:18;210:24;214:15;
236:1
**shall (2)**
105:12;166:21
**shape (1)**
133:22
**Shapiro (7)**
19:11,11,19,24;20:1,
3,7
**Share (3)**
150:7;156:24;193:13
**sharehold (1)**
59:16
**shareholder (5)**
45:7;179:15;182:21,
22;183:14
**shareholders (12)**
59:15,17;178:23;
181:25;182:7;183:1,4,
5,18,18;218:4;219:4
**shares (23)**
137:25;138:13;
144:9,16,16;145:4;
146:2,2;147:1;149:25;
151:8,9;177:1;179:22;
180:9;182:5;183:1,4,
12,13;204:6;205:5,6
**sharing (1)**
90:17
**sheet (4)**
10:3;78:21;118:9;
172:3
**ship (1)**
142:2
**ship's (1)**
142:5
**short (13)**
8:5,7;12:1;32:24;
33:1;77:9;175:5;198:6;
199:12;218:20;241:19;
242:16;247:16
**shortened (1)**
13:17
**shorter (1)**
171:25
**shortlist (3)**
124:16,25;126:2
**shot (2)**
168:12;170:11
**show (3)**
142:24;143:6;166:1
**showed (1)**
100:1
**showing (2)**

**shows (1)**
189:24;223:10
**shows (1)**
150:3
**shut (1)**
161:11
**sic (5)**
53:10;63:4;68:6;
115:18;199:18
**side (6)**
46:21;59:24;119:11,
12;171:4;199:16
**sided (1)**
219:22
**sides (2)**
189:24;199:15
**sign (3)**
235:12;236:23;237:6
**signed (5)**
47:13;51:13;74:24;
82:2;237:15
**significance (1)**
241:16
**significant (14)**
25:18;67:10;68:2;
92:4,16;93:16;97:8;
101:11;129:23;189:3,
10,12;240:5,10
**significantly (3)**
86:19;181:7,22
**signing (5)**
220:23;234:25;
235:10;237:11,12
**silent (1)**
139:13
**Silfen (12)**
76:2,2,8,15,22;77:1,
3;130:12,15,17,17,23
**similar (8)**
34:11;86:19;120:8;
121:21;172:15;202:6;
203:22;217:3
**similarly (1)**
57:9
**simple (9)**
40:17;43:6;121:5;
144:17;170:8;229:12,
12;231:17;242:6
**simpler (1)**
161:18
**simplest (1)**
168:8
**simplified (2)**
242:5,6
**simply (10)**
20:18;68:10;83:1;
84:22;129:25;165:5;
174:13;187:17;205:17;
244:11
**single (2)**
22:23;138:1
**single-spaced (1)**
169:6
**Singleton (3)**

**sit (5)**
28:25;39:11;144:6;
219:8;246:2
**sits (1)**
67:11
**sitting (4)**
51:14;170:6;228:25;
245:3
**situated (1)**
45:4
**situation (6)**
108:12;120:9;127:2;
160:14;161:12;237:16
**six (3)**
27:22;53:15;99:17
**six-plus-billion (1)**
55:7
**sixty (1)**
76:4
**size (1)**
133:21
**skeptical (1)**
60:5
**skip (4)**
190:14;193:18;
203:23;209:15
**slew (1)**
99:23
**SLF (1)**
100:15
**slight (1)**
96:22
**slightest (1)**
40:6
**slightly (2)**
141:3;144:3
**slow (4)**
52:21,25;112:14;
181:9
**small (4)**
40:24;51:1,25;
210:14
**smaller (3)**
141:3;158:3;194:7
**Smith (1)**
233:10
**snapshot (1)**
100:23
**Sold (4)**
170:5;182:5,6;205:6
**sole (1)**
151:23
**solely (1)**
131:21
**solicit (7)**
126:9;154:18;155:8,
8;161:2,3;185:10
**solicitation (24)**
11:21;37:24;38:2;
58:10;73:4,8;74:10;
118:18,19;131:7;
146:17,17;154:5,20;

**showing (2)**

**100:15;172:6,7**

**Singleton (3)**

**100:15;172:6,7**

**146:17,17;154:5,20;**

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 275
of 282

157:12,17;159:2;
164:19;185:18;187:2,
4,23;226:14,15
**solicitation-procedures (1)**
81:25
**solicitation-related (2)**
137:13;151:24
**solicited (2)**
185:4,13
**soliciting (5)**
185:6,24;186:1,1,3
**solution (6)**
19:17;90:19;129:6;
151:13;161:18;168:8
**solve (6)**
58:25;72:8;89:10;
129:20;161:15;236:5
**solved (4)**
20:10;68:24;104:17,
19
**solvent (1)**
105:18
**somebody (26)**
18:22;46:12,19;
90:16;100:22;101:10;
103:2,11;104:3;111:7;
132:10;142:17;144:14;
155:12;157:10;159:6,
19;161:19,22;163:13;
164:5;171:24;196:25;
198:20;220:18;229:3
**Somebody's (2)**
46:10;48:11
**somehow (5)**
123:13;179:15;
190:4;205:16;207:19
**someone (10)**
8:20;16:16;17:22;
131:9;145:11;151:14;
155:17;160:9;208:21;
222:11
**someone's (1)**
224:13
**sometime (2)**
12:12;56:25
**sometimes (4)**
13:16;217:4;238:9,
10
**somewhat (3)**
13:15;111:12;138:15
**somewhere (4)**
110:23;135:11;
167:12,13
**Sonoma (1)**
53:4
**soon (7)**
30:14,25;50:19;
171:1;204:21;205:4;
216:10
**sooner (1)**
120:1
**sophisticated (2)**
58:10;167:15

**sorry (29)**
38:19;59:10;67:5;
71:10;79:24;80:21,21,
21;85:25;88:7;91:17;
95:16;97:13;99:4,9;
103:25;105:2,4;
107:22;109:14;130:12,
15;151:7;153:3;
173:21;206:3;225:21;
239:12;247:15
**sort (7)**
27:21,22;39:4;40:13;
47:16;154:17;174:4
**sound (2)**
56:8;64:23
**sounded (2)**
170:16,24
**sounding (1)**
239:9
**sounds (5)**
62:19;111:11;
130:25;137:21;179:11
**Southern (1)**
198:22
**space (1)**
7:11
**span (1)**
49:15
**speak (5)**
44:5;122:13;156:1;
171:1;186:25
**SPEAKER (18)**
69:20;71:17;77:12;
80:6,10,11,12;82:16;
94:3,5,6;113:4;132:1;
157:5;236:12,20;
237:10,14
**speaking (1)**
245:21
**spearheaded (2)**
100:12,16
**special (6)**
15:8,21;17:8,16,21;
20:11
**specific (7)**
13:25;66:6;112:11;
113:22;164:1;167:20;
186:17
**specifically (9)**
10:2;49:9;51:24;
124:18;167:19;176:25;
190:24;210:10;211:20
**specification (1)**
113:21
**specifics (1)**
175:8
**specify (6)**
138:22;144:10,11,
18;147:7;167:20
**speech (3)**
91:21;178:4,7
**speeches (1)**
229:22

**speedy (1)**
195:13
**spell (3)**
147:11;169:12;
198:18
**spending (2)**
40:11;64:16
**spent (3)**
71:1;179:23;180:1
**spot (1)**
202:6
**spouse (1)**
232:7
**staff (2)**
7:15;74:8
**staffed (1)**
63:9
**stage (3)**
164:18;165:7;171:6
**stand (7)**
58:3;128:16;129:7;
139:14;154:9;168:6;
198:4
**standalone (4)**
9:17,18;11:18;15:10
**standard (1)**
190:8
**standing (3)**
146:23;147:3;224:13
**standpoint (2)**
167:21;170:3
**stands (1)**
198:3
**start (13)**
24:24;50:16;118:4;
124:10;130:7,8;160:3;
186:22;191:9;220:17;
240:13;245:18,20
**started (2)**
160:2;242:25
**starting (5)**
166:10;189:11;
197:8,14;239:19
**starts (4)**
25:7;50:10;99:17;
204:21
**state (17)**
10:16,19;52:14,16;
78:20;82:13;83:2;
89:19;92:8;137:1;
155:16;187:17,25;
188:5;194:3,7;224:20
**statement (142)**
9:7,19;10:14;11:21;
14:1;22:9;23:20;24:15;
26:15;27:14,17;31:18;
33:16,23;35:11;37:7;
43:19,21,22;44:10;
47:17;48:10;54:25;
55:17;56:5;59:7;60:2;
61:1;66:19;70:25;71:3,
15;73:16,23;74:1;
75:21;80:24;81:6,21;

90:9;93:9,12,14;94:22;
95:4;98:8,10;102:22;
105:15;106:17;107:4;
109:16;110:24;112:1,
12;119:6,18;126:8,10;
128:2,8;129:8;130:9,
21;139:13;142:10;
144:7,25;146:18;
147:11,14,18;148:8;
149:19;151:1;152:11;
157:12,15;161:19;
164:20,23;165:11;
167:13;170:15;171:8;
173:24;174:8,18,22;
175:5;176:3,25;179:5;
182:1;184:13;185:3;
186:7;187:21;188:25;
189:11;190:9,21;
191:5;195:16;196:6;
197:15;199:13;203:2,
18;204:2;205:23;
208:10;209:9,14;
211:23;212:9,10;
214:5,13,22;216:2;
219:19;220:7,9;
221:16,23;222:10;
223:22;224:9,24;
225:6;229:13;231:10,
12;236:15,22;239:1,7,
19;242:7,17;246:25
**statements (4)**
55:18;78:6;114:6;
141:5
**statement's (3)**
97:1;125:11;203:5
**States (7)**
10:16;129:22;
172:10,13;220:25;
239:17;241:4
**stating (1)**
201:2
**status (1)**
18:11
**statute (1)**
242:4
**stay (6)**
9:5;49:19;71:4;
104:6;216:11;228:19
**step (4)**
35:17,19,21;44:6
**steps (1)**
138:7
**Steven (1)**
131:5
**stick (4)**
21:12;97:24;129:17;
203:16
**still (23)**
8:20;25:14;38:8;
60:19;79:3,6;81:24;
92:13;106:25;111:7;
116:5;132:4,19;
151:21;164:24;185:6;

193:19;197:5;228:22;
231:5;240:10;243:2;
247:19
**stipulated (11)**
50:5;24:54;51:2,5,13,15,
16,19;52:6;53:18;
62:11
**stipulation (1)**
82:2
**stipulations (1)**
80:10
**stock (27)**
44:13;54:11;95:21;
97:5;138:13;144:8;
179:7,11,12,14,22;
180:12;182:19;184:7;
189:6,13;191:19,25;
206:14,17,21;207:4;
208:6,6;214:9;218:11,
15
**stood (1)**
156:10
**stop (2)**
51:12;182:10
**story (1)**
129:12
**straight (1)**
231:3
**stream (1)**
92:3
**streamlining (1)**
189:22
**stricken (2)**
115:20;116:24
**strike (1)**
110:23
**strip (1)**
123:22
**strips (1)**
168:1
**struck (3)**
17:5;124:12;216:3
**structure (5)**
36:16;78:24;159:8;
179:1;239:23
**structured (2)**
27:20;28:1
**struggling (2)**
62:21;244:23
**stuck (1)**
207:19
**studied (1)**
33:6
**studying (1)**
46:6
**stuff (12)**
9:1;12:17;36:25;
49:3;64:3;129:25;
240:4;241:6;242:23;
243:24,25;244:1
**styled (2)**
164:14;165:13
**subcontractors (2)**

Min-U-Script®

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 276
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(26) solicitation-procedures - subcontractors

114:23;115:15

**subheading (1)**
68:1
**subject (17)**
22:24;25:18;74:16;
77:8;78:23,23;79:5,18;
82:23;83:3;132:15;
144:3;146:19;169:11;
182:21;228:18;239:16
**submission (2)**
200:5;223:21
**submit (3)**
19:6;23:19;156:14
**submits (3)**
133:9,13;239:11
**submitted (3)**
10:20;79:12,13
**submitting (1)**
19:13
**subordinated (9)**
78:4,8;83:8,11,17,
20;84:4,6,25
**subpoena (14)**
19:20;21:6,8,9,12,13,
16,21;22:1,7,10,12,24;
23:18
**subpoenas (12)**
16:19;19:1;22:6,14,
25;23:11;91:9,25;92:1,
25;97:1,2
**subrogation (7)**
32:6,15;33:10,13;
58:16;233:9;238:14
**Subros (2)**
57:14;224:6
**subsection (2)**
71:20,21
**subset (2)**
164:12;178:13
**substance (1)**
25:25
**substantial (1)**
93:22
**substantially (1)**
78:24
**substantive (4)**
72:14;165:1,8;199:9
**subsumed (1)**
34:23
**succeed (2)**
22:15,15
**success (1)**
179:1
**successful (2)**
109:1;110:2
**successfully (1)**
199:7
**successors (1)**
166:22
**sue (1)**
104:14
**sued (1)**
93:23

**suffer (1)**
206:12
**suffered (4)**
144:7;145:11;159:6;
233:11
**sufficient (7)**
42:4,13;43:10;90:14;
196:22;197:16;204:3
**suggest (3)**
55:14;88:25;245:1
**suggested (2)**
76:8;158:21
**suggesting (4)**
89:16;182:16;
214:21;217:7
**suggestion (2)**
68:20;89:12
**suggests (1)**
15:3
**suing (1)**
18:22
**suit (3)**
103:3,4;104:4
**suitable (1)**
169:25
**summarize (1)**
93:6
**summarized (2)**
85:4,5
**summary (8)**
9:8;31:20;32:25;
33:1;47:16;86:4,25;
181:5
**summer (1)**
176:23
**super (1)**
88:15
**superior (2)**
103:3;104:4
**supplemental (1)**
14:18
**support (6)**
117:21,22;196:23;
204:3;217:17;243:18
**supporting (1)**
47:10
**supports (1)**
220:15
**suppose (1)**
37:15
**supposed (3)**
29:13;62:14;152:24
**supposedly (1)**
64:2
**sure (75)**
13:12,14;14:3;20:12,
14;23:20;25:20;26:6;
29:9;30:4;37:3;39:18;
56:11;60:22,24;64:15;
66:25;84:23;85:7,8;
99:12;104:13;109:15;
111:24;113:11,15;
114:9;116:12;120:4;

127:1;131:9;132:2;
136:3,5;153:14;
155:21;158:4;159:21;
170:20;175:13;176:1,
7,9;177:13,21;179:13,
25;180:7,13;181:10;
182:4;183:22;184:5,
16;185:1;186:14,19;
188:14;197:21;198:1;
201:9;206:3;207:11;
211:3;213:15;215:16;
221:16,18;224:10;
225:4;226:6;228:18;
232:24,24;245:12
**surprise (1)**
25:13
**surprising (1)**
133:4
**survive (1)**
116:3
**survives (2)**
101:17;109:18
**suspect (1)**
89:5
**suspend (2)**
80:5,12
**suspended (1)**
94:9
**suspending (1)**
215:2
**sustain (2)**
111:10;200:20
**sustained (1)**
39:5
**switch (2)**
19:5;240:12
**switching (1)**
240:3
**sword (1)**
243:19
**sync (1)**
123:24
**system (5)**
62:2,8;63:21,22;
184:15
**System/West (1)**
68:7

**T**

**table (2)**
24:16;60:10
**tactical (2)**
162:7,11
**tailing (1)**
139:21
**tailor (1)**
233:4
**tailored (3)**
232:13,20;233:12
**tailormade (1)**
233:3
**Takata (1)**

75:13
**talent (1)**
63:8
**talk (32)**
25:16;26:21;38:1;
48:13;56:25;75:7;81:8;
97:2;120:6;122:8;
125:3,8,9;129:21,22,
23;130:13;154:4;
156:8;161:24;181:3,5;
196:20;202:19;204:15;
225:13,15;226:10;
238:2;240:4;243:8,17
**talked (10)**
14:4;64:10;113:14;
114:24;119:1;162:23;
218:7;227:20;240:6;
243:24
**talking (21)**
34:23;36:20,21;
48:25;49:1,1;57:13;
143:12;149:14;155:2,
4;163:6;172:16;
176:14;192:13;193:14;
195:16;205:11,13;
239:5;242:5
**talks (4)**
67:23;158:14;
189:12;232:19
**tally (1)**
10:3
**target (1)**
70:19
**tax (6)**
50:9;189:15;241:9,
11;242:9,13
**TC (1)**
186:25
**TCC (48)**
7:25;9:13;10:16;
32:15,16,18;33:17;
34:21,25;35:1;40:14;
45:8;47:14;61:9,21,23;
66:12;72:13;85:22;
92:23;93:2,9;96:6,16,
21;114:17;117:17,20,
22,25;118:6;127:14;
155:23;189:10;192:19;
195:10;205:22;211:19,
20,21;219:18;222:12,
13,15,16,20;224:7;
229:17
**TCC's (3)**
48:10;186:19;224:5
**team (1)**
161:7
**technical (1)**
116:16
**tee (4)**
120:2;125:4;128:25,
25
**teed (2)**
89:23;124:20

**teeing (1)**
120:6
**telephone (2)**
186:13,14
**telling (11)**
11:14;44:14;51:20;
52:2;96:5;155:14;
156:7;164:23;191:9;
207:24;231:4
**tells (1)**
56:11
**temporary (3)**
23:25;80:8;132:21
**ten (4)**
53:15;77:10;145:2;
238:17
**ten- (1)**
45:20
**tend (1)**
49:24
**tended (1)**
63:13
**tender (1)**
247:10
**ten-minute (3)**
79:22,25;80:14
**tens (2)**
140:8;238:19
**tentative (5)**
14:16;19:7,13;70:17;
141:5
**term (8)**
15:23;64:21;78:21;
118:9;119:13;148:7,
11;149:20
**terminology (1)**
60:6
**terms (11)**
31:23;38:19;39:21;
60:6;64:1,23;107:23;
177:2,2;216:22;218:25
**terrible (1)**
197:1
**terrific (2)**
62:6;100:17
**testimony (2)**
8:13,18
**tests (1)**
197:23
**tether (2)**
199:3;207:8
**tethered (3)**
204:4,15;205:10
**textual (1)**
67:8
**thanks (6)**
10:25;33:8,9,18;
91:22;106:21
**that'd (1)**
191:6
**that'll (1)**
10:23
**theirs (1)**

Min-U-Script®
Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 277
of 282

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(27) subheading - theirs

214:9
**theory (1)**
210:25
**thereafter (2)**
30:15,25
**there'd (1)**
160:7
**therefore (11)**
22:25;23:11;119:5;
127:6;130:23;144:8;
145:23,25;146:7;
186:19;191:7
**there'll (4)**
12:1;140:21;215:14;
227:19
**there're (1)**
151:21
**thinking (5)**
29:25;85:24;229:7;
240:13;242:1
**third (9)**
16:21,22;35:21;
108:7;228:1;233:24;
234:17;235:3,5
**third-party (3)**
164:11,13,21
**thirteen (6)**
50:2;90:13,17;97:20;
194:2;206:11
**thirteen-and-a-half (3)**
42:12,23;44:11
**thirteen-and-a-half-billion (1)**
47:21
**thirty (4)**
44:18;145:3;171:8;
241:16
**though (10)**
8:5;31:17;36:19;
63:12;131:24;144:4;
146:16;170:22;198:14;
201:17
**thought (14)**
15:21;71:15;85:1;
100:13;120:5;135:14;
157:13;186:9;192:17;
199:24;227:3;240:9;
242:17,25
**thoughtful (1)**
89:6
**thoughts (1)**
74:16
**thousand (3)**
52:19;126:16;144:8
**thousands (5)**
140:8;176:10;
236:11,11;238:19
**three (5)**
66:6;69:25;76:4;
155:18;181:3
**three-step (1)**
87:7
**three-year (1)**
191:18

**thrity (1)**
144:14
**throughout (1)**
190:21
**throw (2)**
107:22;216:10
**throws (1)**
164:25
**Thursday (3)**
244:6;245:17;247:18
**ticket (3)**
74:14;124:12;125:1
**tied (11)**
27:10;175:6,9,14;
176:16;191:4,8;
194:19;208:12;225:7,7
**tiered (1)**
63:22
**ties (3)**
176:24;179:1;222:13
**tight (1)**
28:25
**til (1)**
171:7
**till (1)**
156:17
**timeline (1)**
126:8
**timeout (2)**
124:8;130:6
**times (3)**
124:13;190:19;
240:15
**timetable (1)**
21:17
**timing (7)**
14:16;48:21;50:10;
54:8,10;120:16;139:21
**tinker (1)**
147:5
**TOC (2)**
86:12;87:11
**today (53)**
11:9,11;15:15;16:11;
22:10;24:2;39:5;40:4;
48:7,12;49:25;65:18,
21;66:2;74:9,15;75:6;
76:13;88:13;89:9;
92:22;100:7;101:17;
102:1,3;104:4;106:20;
107:24;117:21;120:16;
125:17;127:10;128:15,
16;129:2,20;132:6;
139:14;155:23;168:6,
13;170:23;173:10,17;
179:23;204:20;216:9;
223:19;226:7;227:20;
247:6,8;248:9
**today's (6)**
31:16;73:2;82:24;
100:4,6;110:21
**to-do (1)**
33:6

**together (16)**
9:19;54:17;57:2,3;
63:8;25;64:2;89:13;
135:25;141:6;176:15;
179:4;180:2;208:12;
238:6;242:17
**token (1)**
145:18
**told (13)**
17:17;35:25;44:10;
55:22;57:11;65:2;
124:11;126:3;155:18;
171:24;225:23;242:11,
11
**tomorrow (16)**
102:1;125:22;
129:20;130:5;238:1;
243:1;244:5,25;245:1,
1,10,20;246:7;247:15,
18;248:4
**tongue-tied (1)**
224:25
**tonight (2)**
125:17;151:20
**took (2)**
14:10;172:7
**tool (2)**
158:1,1
**top (2)**
38:7;112:18
**topic (1)**
26:3
**topics (1)**
240:12
**tort (18)**
14:9,14;34:3;37:19;
38:10,11;39:11,13;
40:10,18;41:10;44:2,
20;78:1;131:14;
160:14;163:1;214:17
**toss (1)**
216:17
**total (1)**
40:5
**Totally (5)**
61:11,13;113:18;
158:10;236:23
**touched (1)**
124:13
**toward (1)**
40:12
**towards (1)**
190:1
**track (5)**
71:11;72:7;105:15;
119:18;153:5
**tracking (1)**
72:4
**tracks (3)**
24:16;109:22,23
**trade (5)**
26:9,19,23;27:2;
28:12

**traditional (1)**
229:21
**train (1)**
142:1
**transferred (1)**
96:18
**Translate (1)**
43:6
**trap (1)**
213:13
**trash (1)**
164:25
**travel (1)**
244:19
**traveling (1)**
244:6
**treat (1)**
119:2
**treated (10)**
57:9;60:19;62:12;
75:23;109:2;136:21,
23;143:13;183:12;
212:18
**treatment (25)**
33:25;57:20,22;
58:14;62:18;76:17;
81:8;136:13,25;138:3,
4,7;142:9;147:23;
149:12,14,15,17;153:7;
157:23;181:5;183:8;
214:14,16;232:19
**tree (1)**
46:9
**trial (10)**
34:7;35:8,9;36:19;
63:19;64:5,5,7;65:12;
210:15
**trials (1)**
64:16
**trickle (1)**
50:7
**tried (8)**
9:6;129:4;132:9;
160:8;171:18,18;
174:18;182:18
**Trotter (3)**
50:13;53:16;56:7
**trouble (1)**
91:15
**troubling (1)**
120:19
**Troy (10)**
82:20,20;83:18,22,
22,24,24;84:3,21;85:5
**truck (2)**
103:1;104:3
**true (14)**
46:1;53:2;89:6;
118:24;140:17;180:16;
197:6;204:7,9,14;
212:10;213:11;222:18;
232:25
**trust (83)**

**trustee (39)**
35:6,17,20;36:8;
49:3;50:13;51:9,22;
52:3;59:19;60:1;61:9;
62:13,20;64:16;76:3,
19;86:13,15;87:12,24;
88:11;121:20;124:19;
129:22;130:18,18;
172:6,10,13,16;184:6,
7,10;190:23;191:5;
220:25;239:17;241:5
**trustees (1)**
207:19
**trustee's (1)**
75:22
**trusts (1)**
182:5
**trust's (1)**
218:10
**truth (4)**
209:3;224:25;225:4,
8
**try (18)**
22:13;39:7;46:21;
56:15;91:16,17;
110:15;117:2;125:18;
161:15;162:2;168:13;
174:24;234:11;235:8;
237:25;244:12;246:23
**trying (32)**
7:19;18:17;24:7;
39:1,3,4;53:15;57:23;
59:3;68:25;69:2,7;
76:6;84:21;88:11;91:4;
98:16;123:12;124:2;
129:3;135:17;145:21;
157:25;158:1;176:19;
186:4;193:2;207:7,9;
209:3;210:8;221:21
**Tubbs (6)**
208:18;209:17,24;
210:1,9,15

32:7,12,19,20;33:16;
34:1;35:2,6;36:9;42:3;
43:11;44:21;50:19;
51:3,11;57:20;60:16,
18;62:7,13,16;63:8;
64:1;67:11;68:3;83:19;
84:4,5,6,19;85:21;
86:12;87:4,21,25;
88:16;89:13,23;90:13,
15;94:20;96:18;
106:15;115:8;122:15;
131:16,25;178:25;
179:11;180:2;181:7,8,
21,22,23,23;182:1,9,
17,18,21,24;183:12;
184:6;189:2,14;
190:25;191:8,22;
204:5,16,17;205:5,12,
14;206:10,13,19,21;
210:25;211:24;218:4;
221:13

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 278
of 282

**tuned (1)**
  9:5
**turkey (1)**
  16:5
**turn (7)**
  11:6;66:6;69:3;
  94:10;222:11;244:9;
  246:10
**turnout (1)**
  227:15
**turns (2)**
  119:24;160:21
**TV (1)**
  7:10
**tweak (1)**
  170:17
**twenty (6)**
  114:6;130:7;169:6;
  182:19;184:7;241:15
**twenty-five (1)**
  108:17
**Twenty-four (1)**
  210:24
**twenty-one (1)**
  204:5
**twenty-six (1)**
  144:13
**twice (3)**
  67:2;223:14;239:14
**two (39)**
  9:16,25;25:8;28:17;
  38:18;51:13;59:14,15;
  62:6;68:21;76:8,9;
  77:2,4,5;79:14;82:12;
  90:16;108:16,17;
  109:21,23;110:25;
  112:11;115:7;131:11;
  138:7;141:25;152:18;
  154:12;176:15;191:4,
  20;192:13;202:1;
  215:2;223:3;226:24;
  233:3
**two-billion-dollar (1)**
  66:9
**twofold (1)**
  87:2
**two-step (1)**
  142:9
**tying (6)**
  176:15;177:4,5,5,7;
  179:4
**type (4)**
  39:16;57:7;105:16;
  228:17
**types (4)**
  47:1;122:5;177:4;
  211:20
**typical (2)**
  59:12;167:8

**U**

**UCC (1)**

243:5
**ultimate (2)**
  40:1;62:23
**ultimately (2)**
  43:4;86:15
**Um (1)**
  49:2
**Um-hum (38)**
  37:11;39:22;49:11;
  148:23;149:10;150:8;
  166:25;175:20,24;
  176:5;177:15;179:24;
  180:4,10;181:1;188:7,
  17;190:20;192:16;
  193:3,12;194:25;
  195:11,22;196:11;
  197:3;204:24;206:9;
  207:5,22;209:16,25;
  210:22;213:12;219:10;
  221:2;227:1;245:9
**unallowed (1)**
  29:2
**unauthorized (1)**
  187:20
**uncertain (1)**
  91:5
**unclear (4)**
  60:20;113:10;187:8;
  193:19
**uncommon (1)**
  141:7
**unconfirmable (5)**
  26:10;27:5,18;28:3;
  122:3
**under (45)**
  19:21;21:21;22:6;
  27:25;29:13;42:22;
  45:4;49:12;50:6;57:3;
  62:7,13;64:1;65:2;
  67:11;71:22;76:4;78:3;
  79:14;92:23,24;93:10;
  105:13;110:9;113:19;
  114:5;115:7,23;116:7;
  122:21;138:18;144:16;
  145:19;146:1;159:8;
  164:15;187:3,25,25;
  212:18;213:16;219:16;
  226:13;228:20;234:2
**underinsurance (1)**
  53:10
**Understood (13)**
  18:1;53:25;74:25;
  141:19;142:6;148:6;
  153:15;156:16;158:7;
  163:5;198:11;199:11;
  246:9
**undertake (1)**
  165:12
**undoubtedly (1)**
  164:17
**unfair (2)**
  17:25;89:15
**unfavorable (1)**

217:13
**unfortunate (1)**
  15:22
**unfortunately (6)**
  140:19;169:12;
  179:9;202:1;203:13;
  208:12
**UNIDENTIFIED (18)**
  69:20;71:17;77:12;
  80:6,10,11,12;82:16;
  94:3,5,6;113:4;132:1;
  157:5;236:12,20;
  237:10,14
**unimpaired (10)**
  31:12;119:3,11,21;
  121:19;122:16,21;
  123:18;124:6;136:17
**unimpairment (3)**
  122:14,25;129:5
**uninsurance (1)**
  53:10
**unintended (1)**
  91:25
**unique (1)**
  210:1
**UNISON (1)**
  7:7
**United (7)**
  10:16;129:22;
  172:10,13;220:25;
  239:16;241:4
**universe (4)**
  40:25;160:13,15;
  168:5
**unknown (10)**
  21:16;45:15;46:3;
  50:22,23;54:21;96:3,4,
  6;141:10
**unless (13)**
  14:4;18:2,4;26:18;
  39:15;52:8,9;117:8;
  128:3,12;163:10;
  223:23;247:19
**unlike (1)**
  140:7
**unlimited (1)**
  188:21
**unliquidated (7)**
  51:25;62:10;139:4,5;
  140:7;158:24;160:10
**unnecessary (1)**
  244:1
**unrealistic (1)**
  221:24
**unreasonable (2)**
  41:2;175:9
**unrecognizable (1)**
  52:24
**unrelated (2)**
  7:21;208:11
**unresolved (4)**
  25:14;199:21;
  202:24;218:12

**unsecured (5)**
  31:11;121:23;124:6;
  211:9;212:7
**unsophisticated (2)**
  56:9;58:9
**untethered (1)**
  204:21
**up (95)**
  7:19;11:21;13:12,14,
  14:10;18:10;21:10;
  23:22;30:8;32:24;
  33:20;35:16,17;41:25;
  43:9;44:5;48:14;49:19;
  50:19,22;56:7;57:25;
  58:9;59:11;60:13,25;
  62:20;63:21;70:7;
  71:11;72:10;73:14;
  78:19;80:16;84:8,10;
  87:22;89:23;94:25;
  98:11,24;106:23;
  110:21,22;113:6;
  120:2,6,16;121:13;
  124:21;125:4;127:9;
  128:16,25,25;129:7;
  130:9;131:4,25;
  132:10;135:1;136:21;
  141:5;142:24;143:6,
  20;144:24;145:10;
  147:1,15,18;155:20;
  157:12;158:6;166:3;
  168:15;170:7;173:13,
  13,15,15;176:20;
  188:6;193:9;199:13;
  205:18;207:4;217:17;
  218:15;219:22;224:13;
  239:3,16;241:9;245:10
**upbeat (1)**
  130:13
**update (4)**
  9:14;10:7,11;227:8
**updated (2)**
  9:10;70:12
**upon (12)**
  42:3;50:9;54:2,9,15;
  61:8;123:17;150:10;
  159:24;166:20;184:12;
  213:2
**upper (2)**
  98:24;160:22
**upset (2)**
  147:4;169:24
**upwards (1)**
  153:16
**urge (1)**
  129:21
**URL (2)**
  242:12,12
**USC (1)**
  105:13
**use (13)**
  8:25;15:22;62:9;
  67:3;93:19;119:13;
  147:9;149:20;158:1;

162:25,25;197:23;
  230:16
**used (5)**
  104:10;115:22;
  117:4;181:3;223:9
**using (5)**
  18:18;144:19;
  146:11;149:8;150:18
**Usually (1)**
  77:3
**Utilities (4)**
  81:4;198:14,16,16
**Utility (4)**
  90:6,24;91:4;239:22
**utility's (1)**
  93:5

**V**

**valid (2)**
  101:5;119:25
**valuable (1)**
  97:23
**value (13)**
  53:3,11;90:7,9;92:9;
  95:25;96:10,12;97:4;
  114:11;189:13;207:20;
  224:7
**valued (1)**
  139:10
**values (1)**
  46:8
**valuing (1)**
  138:24
**variables (1)**
  39:15
**variation (3)**
  19:16;20:13;190:17
**variety (2)**
  144:20;188:21
**various (3)**
  47:1;132:8;224:22
**vary (2)**
  47:3,20
**Veatch (4)**
  18:4;19:9;12;20:18
**vendor (1)**
  123:2
**vendors (4)**
  122:13,17;123:5,22
**version (5)**
  67:6;138:6;166:4;
  201:23;239:18
**versions (1)**
  166:4
**versus (9)**
  36:6;63:13,19,19;
  64:5,13,14,21;65:9
**veto (1)**
  86:15
**viable (1)**
  111:7
**vic (1)**

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Case: 19-30088   Doc# 6258   Filed: 03/11/20   Entered: 03/11/20 16:57:04   Page 279 of 282

239:4
**victim (33)**
32:7;36:11;42:14;
43:7;46:4;49:15;57:20;
64:13,14,14,21,21;
65:9,10;67:11;68:3;
69:15;83:20;84:6,20;
96:18;101:25;181:4,5;
187:19;189:2;204:5;
205:2;209:23;231:14;
232:6;233:13;234:12
**victims (69)**
34:16;38:10;39:14;
40:10,18;47:25;48:4,
23;50:2,11;52:19;
53:13;57:16,22;61:15;
63:2;64:25;66:2;78:5,
7;85:8;97:18;102:17;
111:5;133:21,23;
155:5,23;157:24;
162:1;175:1,4;176:18;
177:8,25;178:21,23;
179:2;181:23,24;
182:17;183:9;185:11;
188:9;190:7;197:11;
199:4,22;203:1,6;
204:4,22;208:11,19;
209:6,17;210:15;
212:1;214:5,7,23;
218:11;224:24;225:3;
229:14;230:4;231:23;
233:8;236:11
**victims' (9)**
181:18;185:2;191:1;
206:10;211:24;214:9,
17;221:13;226:14
**video (2)**
245:11;246:4
**view (16)**
21:16;41:25;60:8;
75:5;87:18;103:21,23;
118:15;153:21;184:3;
196:2;199:9;203:2,16;
219:22;221:22
**views (4)**
175:22;184:18;
208:2;223:9
**violated (3)**
31:1;104:13,20
**violates (1)**
122:4
**violating (2)**
29:16;104:6
**violation (1)**
139:8
**virtually (1)**
29:3
**virus (1)**
207:2
**vis-a-vis (1)**
158:15
**visceral (1)**
178:21

**vividly (1)**
36:25
**voice (1)**
225:7
**volume (1)**
124:22
**voluntarily (1)**
22:18
**volunteering (1)**
117:3
**vote (67)**
37:25;39:17;46:22;
47:11,18;55:20;58:7,
16;61:2,6,25;65:6;
66:1;69:7;74:14;76:24;
97:19;100:22;119:23;
125:8;127:10;128:19;
131:7,17,18,20;133:6;
134:19;142:14;145:10;
146:3,22;155:24;
157:3;159:1,1,4,11;
160:24;161:22,23;
162:2;163:9;185:5,6,7,
8,11;186:3,4;187:9,19;
188:6,19,20;222:4;
225:19;226:4;229:23;
230:21;231:14;234:12,
13,13,15;235:4;241:17
**voted (9)**
66:1;89:15;143:19;
144:1;146:24;163:14;
164:10,11;200:21
**voter (2)**
178:9;240:4
**voters (6)**
46:21;47:11;63:10;
113:23;195:24;222:3
**voters' (3)**
47:9,10;55:18
**voter's (2)**
43:25;229:21
**votes (13)**
57:15;115:10;126:9;
133:6;143:20;154:18;
155:14,20;159:20;
185:10,13,24;186:1
**voting (30)**
63:14;73:10;82:4;
116:18;120:24;131:21;
134:1;141:5,14;
143:12,17;154:11,13,
13,21,22,23;155:15;
156:4;158:8,9,10,11,
17,23;159:9,18;
176:11;200:3;222:4
**voting-related (1)**
152:1

**W**

**wait (19)**
28:25;52:1;69:2;
83:21;86:1,1;95:14;

130:14;149:13,21;
156:17;171:7;173:13;
181:9;202:16;203:12;
224:13;228:7;240:9
**waiting (3)**
44:9;51:14;206:25
**waive (4)**
185:5,11,25;186:4
**walk (1)**
180:21
**walking (1)**
20:5
**wants (16)**
16:17;22:12;26:4,20;
37:15;56:16;77:2;
88:12;137:14;171:4;
183:14;186:25;203:5;
221:3;234:12;241:5
**warmed (1)**
241:9
**waste (2)**
163:12;239:14
**water (3)**
94:8,9,10
**way (69)**
13:8;16:11;17:5;
18:7,25;27:19;28:1;
31:4;34:15;36:7,22,23;
37:5,18;47:15;57:25;
60:13;65:15,22;76:5;
80:3;87:10,21;89:22,
23;108:25;109:12;
110:5,13,15;111:7;
119:15;120:13;121:18;
129:23;133:20;136:21,
23,24;137:18;138:6;
139:20;148:2;151:15;
156:13;161:8;163:15,
15;164:23;166:24;
168:25;169:12,17;
174:25;178:21;182:8,
15;188:22;192:6;
203:6;207:20;210:21;
217:3,4;234:11,16;
235:8;239:20;244:12
**ways (4)**
139:7;152:14;
178:20;214:8
**weapon (1)**
11:4
**Wednesday (1)**
81:16
**week (8)**
8:12;12:13;125:22;
126:21;154:24;219:11;
220:20;247:24
**weeks (3)**
53:15;79:14;180:1
**weigh (1)**
57:24
**Weil (2)**
130:19;131:5
**Weir (1)**

17:12
**Weiss (1)**
81:3
**welcome (2)**
17:4;174:5
**wellbeing (1)**
217:15
**Wells (1)**
182:2
**weren't (4)**
8:8;79:5,8;210:20
**Wharton (1)**
81:3
**whatever's (1)**
11:23
**what's (26)**
8:2;11:18;12:21;
28:24;41:7;43:1,3;
57:1;75:25;94:1;
105:11;116:17;151:5;
172:4;175:1;182:14;
196:15;213:7,8;219:1;
232:8;235:22;238:2;
242:22,24;248:3
**whatsoever (1)**
142:10
**whenever (2)**
8:25;244:13
**where's (1)**
30:8
**Whereupon (1)**
248:11
**whole (11)**
63:21;64:15;141:17;
155:10;168:5;170:3;
176:3;179:5;185:24;
200:4;218:11
**who're (1)**
18:20
**who's (7)**
11:1;17:11,14;19:9;
24:5;44:12;75:24;
116:13;158:3;183:14;
235:7
**who've (1)**
46:6
**wild (1)**
81:10
**wildfire (20)**
176:19,23;194:20;
196:21,22,23;197:1,1,
14,16,18;198:24;
199:20;204:2,3,4,15;
233:5,7;239:25
**wildfires (3)**
105:15;197:8,18
**willing (3)**
85:18;148:2;182:11
**willingness (2)**
46:21,23
**Willkie (1)**
33:13
**win (2)**

217:15;220:20
**wind (1)**
147:1
**wins (1)**
222:7
**Winthrop (100)**
7:22,23,24;23:6,6,9,
15,17,19;24:3,8,10;
37:17;38:1,5,5,19,22;
39:1,10,22;40:8;44:8;
47:17;48:18,19,20;
49:3,10,12;56:1,16;
57:5,6,11,14,16,19;
58:20;59:2,5,8,10;
60:15;61:3,5,11,13,21;
62:15,24;63:18,25;
64:7,8;65:16,18;66:4,
16,20,23;67:2,7,10,13,
15;68:1,5,10,14,17,22,
24;69:1,5,9,13,23;70:1,
4,6,10,20,22;71:7,9,10,
13,16,18,22;72:1,3,10,
18,22,24;129:22;134:4,
7
**Winthrop's (2)**
37:24;48:8
**wipes (1)**
168:9
**wish (3)**
16:8,8;192:1
**withdraw (1)**
22:1
**withdrawal (2)**
7:24;24:1
**withdrawing (2)**
78:9;215:2
**withdrawn (6)**
22:10;23:11;78:6,7;
80:19,19
**withdrew (1)**
80:20
**within (10)**
10:20;12:1;44:22;
57:20;73:18,24;
126:10;159:14;161:4;
232:20
**without (20)**
18:6,22,22;27:22;
40:6;63:16;113:21;
129:9;134:20;139:9,9;
143:3;144:4;150:25;
151:2;164:22;165:2;
190:9;233:13;234:8
**witness (1)**
198:4
**woah (3)**
146:24,24,24
**wonder (1)**
192:19
**wondering (1)**
241:12
**word (5)**
59:16;116:23;

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 280
of 282

153:22;170:24;240:5
**words (15)**
37:15;61:19;62:4;
88:20;92:21;102:24;
108:14;110:15;145:10,
22;146:6;150:12;
151:20;215:16;241:22
**work (20)**
19:2;53:21;55:15;
68:11;74:9,13;75:19;
79:6;122:9;124:3;
127:17,19;128:19;
162:25;165:15;171:22;
177:20;240:14;244:12;
248:9
**workarounds (1)**
121:14
**worked (3)**
89:10;100:16;155:20
**working (8)**
9:24;11:2;56:1;57:2;
63:25;64:2;134:14;
247:14
**works (11)**
19:17;29:3;34:19;
63:5;65:22;87:11;
119:16;138:7;139:2;
158:4;244:18
**world (6)**
17:2;38:24;58:23;
103:13;165:4;177:24
**worried (3)**
238:14,17,19
**worries (1)**
157:22
**worry (3)**
111:13;159:21;
179:10
**worrying (1)**
163:12
**worth (2)**
84:8,10
**write (1)**
28:15
**writing (2)**
195:15;219:19
**written (2)**
44:12;107:6
**wrong (17)**
17:21;43:13;65:23;
83:19;84:24;89:14;
128:11;145:1;146:12;
153:25;155:15;156:2,
18;182:14;207:23;
222:2;242:22

**Y**

**Yanni (3)**
50:14;53:16;56:6
**year (5)**
27:22;35:25;46:6;
127:13;219:11

**years (3)**
48:25;155:18;191:20
**Yep (4)**
117:18;163:17;
165:18;178:10
**yesterday (14)**
7:16;8:8,25;14:17;
25:23;33:17;43:20;
55:6,6;66:19;78:21;
102:1;112:15;166:5
**York (2)**
176:4,14

**Z**

**Zero (1)**
16:25

**1**

**1 (9)**
66:10;67:4;123:8;
125:10;245:2,7,12,12,
12
**1,200 (1)**
131:24
**1,212 (2)**
131:18;133:14
**1.109 (2)**
148:7,18
**1.5 (1)**
68:15
**10 (3)**
7:1;49:10;214:16
**10,000 (2)**
144:16;146:2
**10.6 (1)**
167:4
**1054 (6)**
40:15;42:22;59:15;
110:10;126:8;218:16
**107 (3)**
91:9;92:1;148:16
**11 (12)**
34:11;59:12;60:6;
105:13,18;174:6;
199:21;202:22;214:18,
25;228:14;240:13
**11:26 (1)**
80:15
**11:38 (1)**
80:15
**12:30 (1)**
246:7
**12:40 (1)**
131:2
**13 (6)**
111:22;206:4,4;
240:12;245:4;246:2
**13.5 (1)**
218:19
**13.5-billion-dollar (1)**
38:11

**13s (1)**
245:8
**14 (1)**
117:16
**15 (2)**
118:12;194:16
**15- (1)**
218:19
**15th (3)**
30:7;154:14,23
**16 (2)**
136:6,8
**16th (15)**
12:15;30:7;139:1;
140:20;142:7;144:12;
147:8;149:2;150:11;
154:15,22,23;156:9,17;
157:10
**17 (2)**
172:5;194:16
**17th (1)**
155:6
**18 (1)**
81:13
**19 (1)**
214:14
**19th (2)**
18:11;226:2
**1c (1)**
71:24
**1st (3)**
12:16,17,21

**2**

**2 (11)**
35:4;49:10;68:8;
130:7;245:5,13,13,15,
20;246:20,22
**2.1 (1)**
35:5
**2.122 (1)**
37:10
**2.5 (1)**
108:4
**20 (4)**
82:3;148:16;201:20;
214:25
**200 (2)**
227:9,10
**2004 (10)**
16:7,14;17:3;18:21;
20:2;21:11,21;23:16,
19;92:23
**2004s (2)**
16:8,11
**2004's (1)**
21:22
**2015 (3)**
50:6;113:19;116:7
**2017 (6)**
138:10;142:8;
144:12;147:8;149:2;

150:11
**2019 (1)**
114:1
**2020 (1)**
7:1
**21 (1)**
226:11
**22 (1)**
35:5
**239 (2)**
227:9,11
**24 (1)**
239:20
**25 (1)**
107:15
**28 (2)**
149:19,23
**2-A (1)**
167:1

**3**

**3 (2)**
99:3;181:12
**3:03 (1)**
131:2
**30 (2)**
119:23;147:9
**30.27 (1)**
147:10
**3018 (4)**
8:9;80:8;132:19;
158:25
**30th (1)**
24:7
**31st (1)**
127:1
**32 (2)**
112:11;113:2
**33 (2)**
67:22;189:11
**35,000 (1)**
44:7
**36 (7)**
95:12;112:12,19,20,
21;113:4;226:11
**37 (2)**
67:4,13
**3d2 (1)**
108:4
**3d3 (1)**
107:9
**3rd (3)**
60:18,21;227:6

**4**

**4 (3)**
214:22;215:4,4
**4.3 (1)**
45:18
**40 (1)**
166:10

**43 (1)**
166:24
**46 (1)**
98:19,21,22;99:6
**47 (1)**
70:24

**5**

**5 (8)**
32:20;139:22;
140:21;155:2;181:19;
194:16;215:4;239:10
**5:12 (1)**
248:11
**5:29 (1)**
66:19
**50 (1)**
99:7
**50,000 (12)**
43:7,8,10;47:8;
51:19;53:7;139:23;
140:22;141:12;145:23,
24;155:2
**500 (1)**
163:14
**500,000 (1)**
159:6
**506,000 (1)**
66:10
**510b (6)**
136:9;146:20;147:1;
158:12,22;159:25
**510-B (1)**
138:21
**520 (1)**
151:5
**526 (1)**
138:14
**540 (2)**
131:21;133:14
**547 (1)**
105:13
**5700 (1)**
201:25
**576 (1)**
41:18
**5835 (1)**
226:1
**58355 (1)**
228:8
**5873 (1)**
181:19

**6**

**6 (2)**
80:18;124:22
**6164 (1)**
49:13
**6219 (3)**
67:6;149:19;166:13
**6220 (1)**

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

112:25
**6220- (1)**
67:3
**6220-1 (1)**
70:24
**6221 (1)**
86:6
**6221-1 (1)**
25:6
**6224 (1)**
32:23
**6th (1)**
139:18

---

**7**

---

**7 (8)**
38:25;39:9;80:18;
82:12,12,13;232:18;
239:19
**7,000 (1)**
89:4
**70,000 (1)**
64:25
**7023 (1)**
140:1
**71 (11)**
67:22;107:15;
112:20;149:19,23;
166:10,24;201:19;
214:14,25;239:19
**77,000 (4)**
46:2,3;47:18;50:21
**77,626 (1)**
45:15
**79 (6)**
67:4,13;70:24;95:12;
99:7;112:21

---

**8**

---

**8 (2)**
85:10;232:18
**8,000 (1)**
146:2
**8,600 (1)**
144:15
**80,000 (2)**
40:4;44:7
**831 (1)**
71:17

---

**9**

---

**9 (4)**
201:18,19,20;231:15
**9019 (4)**
11:15,20;12:5;78:23
**90s (1)**
17:13
**920 (1)**
199:18

Case: 19-30088    Doc# 6258    Filed: 03/11/20    Entered: 03/11/20 16:57:04    Page 282
of 282