1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                      -oOo-

4   In Re:                    ) Case No. 19-30088
                              ) Chapter 11
5   PG&E CORPORATION AND PACIFIC   )
    GAS AND ELECTRIC COMPANY   ) San Francisco, California
6                             ) Tuesday, March 11, 2020
                    Debtors.  ) 2:00 PM
7   _____ )
                              DEBTORS' MOTION FOR ENTRY OF
8                             AN ORDER (I) APPROVING FORM
                              AND MANNER OF NOTICE OF
9                             HEARING ON PROPOSED
                              DISCLOSURE STATEMENT; (II)
10                            ESTABLISHING AND APPROVING
                              PLAN-SOLICITATION AND VOTING
11                            PROCEDURES; (III) APPROVING
                              FORMS OF BALLOTS;
12                            SOLICITATION PACKAGES, AND
                              RELATED NOTICES; AND
13                            (IV) GRANTING RELATED RELIEF
                              (THE "SOLICITATION PROCEDURES
14                            MOTION") [#5835]

15                            HEARING ON APPROVAL OF (A)
                              PROPOSED DISCLOSURE STATEMENT
16                            FOR DEBTORS' AND SHAREHOLDER
                              PROPONENTS' JOINT CHAPTER 11
17                            PLAN OF REORGANIZATION (B)
                              PLAN-SOLICITATION AND VOTING
18                            PROCEDURES; (V) FORMS OF
                              BALLOTS, SOLICITATION
19                            PACKAGES, AND RELATED
                              NOTICES; AND (D) OTHER
20                            RELATED RELIEF [#5700]

21              TRANSCRIPT OF PROCEEDINGS
            BEFORE HONORABLE DENNIS MONTALI
22          UNITED STATES BANKRUPTCY JUDGE

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

APPEARANCES:

| | |
|---|---|
| For the Debtors: | STEPHEN KAROTKIN, ESQ. |
| | Weil, Gotshal & Manges LLP |
| | 767 Fifth Avenue |
| | New York, NY 10153 |
| | (212) 310-8000 |
| | |
| For the United States Trustee: | TIMOTHY S. LAFFREDI, AUST |
| | Office of the U.S. Trustee - SF |
| | 450 Golden Gate Avenue |
| | Suite 05-0153 |
| | San Francisco, CA 94102 |
| | (415) 705-3333 |
| | |
| For the Official Committee of Tort Claimants: | ELIZABETH A. GREEN, ESQ. |
| | Baker Hostetler LLP |
| | 200 S. Orange Avenue |
| | Suite 2300 |
| | Orlando, FL 32801 |
| | (407) 649-4000 |
| | |
| For the Official Committee of Unsecured Creditors: | GREGORY A. BRAY, ESQ. |
| | Milbank LLP |
| | 2029 Century Park East |
| | 33rd Floor |
| | Los Angeles, CA 90067 |
| | (424) 386-4000 |
| | |
| For Adventist Health System/West and Feather River Hospital: | REBECCA J. WINTHROP, ESQ. |
| | Norton Rose Fulbright US LLP |
| | 555 South Flower Street |
| | 41st Floor |
| | Los Angeles, CA 90071 |
| | (213) 892-9200 |
| | |
| For California State Agencies: | PAUL J. PASCUZZI, ESQ. |
| | (Telephonically) |
| | Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP |
| | 500 Capitol Mall |
| | Suite 2250 |
| | Sacramento, CA 95814 |
| | (916) 329-7400 |

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Fire Victims:            AMANDA L. RIDDLE, ESQ.
                                  Corey, Luzaich, De Ghetaldi &
 2                                Riddle LLP
                                  700 El Camino Real
 3                                P.O. Box 669
                                  Millbrae, CA 94030
 4                                (650) 871-5666

 5   ALSO PRESENT:               WILLIAM B. ABRAMS, Individual and
                                  Tubbs Fire Victim
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20   Court Recorder:             ANKEY THOMAS

21   Transcriber:                CLARA RUBIN
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (973) 406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

SAN FRANCISCO, CALIFORNIA, MARCH 11, 2020, 2:03 PM

-oOo-

1

2

3     (Call to order of the Court.)

4          THE CLERK:  All rise.  Court is now in session, the

5     Honorable Dennis Montali presiding.

6          THE COURT:  Good afternoon.

7          IN UNISON:  Good afternoon, Your Honor.

8          THE CLERK:  Matter of PG&E Corporation.

9          THE COURT:  Mr. Karotkin, I miss you at the Chapter 13

10    calendar.

11         MR. KAROTKIN:  Feelings are mutual.

12         THE COURT:  You had a -- got a chance to be on TV.

13         What can you do for me?  What do we got left?

14         MR. KAROTKIN:  It's a good question.

15         Steven Karotkin, Weil, Gotshal & Manges, for the

16    debtors.

17         I guess, as the first order of business -- you made

18    some remarks at the end of the hearing yesterday, about the

19    length of the disclosure statement.

20         THE COURT:  Right.

21         MR. KAROTKIN:  So if I could approach with the new

22    disclosure statement.

23         THE COURT:  I don't know; should I touch it?

24         Ah.  There's a ballot; it says, "yes or no".  Very

25    good.  I'll frame that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. KAROTKIN:  So let me try to update the Court as

2  to, I think, where we are, and other people in the room can

3  feel free, obviously, to disagree.  I think that we have

4  largely resolved every issue other than I believe that Ms.

5  Winthrop's issue with respect to additional information about

6  the potential recoveries for the class of fire claimants, I

7  think, is still outstanding.  And I know that the tort

8  committee has drafted some language to try to address that

9  issue.  And it was just furnished to her, so she hasn't,

10  obviously, had time --

11    THE COURT:  Okay.

12    MR. KAROTKIN:  -- had time to look at that.

13    I think we have a couple of other issues to address

14  with the TCC in order to finalize the draft of the disclosure

15  statement and the plan.  And I think that we should be able to

16  resolve those, I would say, hopefully in the next twenty-four

17  hours or so.

18    And I think there's an issue with Mr. Bray that --

19    You don't have to get up yet.

20    -- the issue that Mr. Bray raised yesterday.  We have

21  not resolved it, but I think that --

22    THE COURT:  On the release.  The release language.

23    MR. KAROTKIN:  On the release language.  I think that

24  there may be some language we could put in the disclosure

25  statement, as I suggested yesterday, that they believe this --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  and we don't agree.  I don't think Mr. Bray -- and he can

2  confirm it for himself and the unsecured creditors'

3  committee -- that they want to hold up approval of the

4  disclosure statement over that issue.  But again, he can

5  confirm that.

6        So I think that's sort of the state of play, where we

7  are.  I would like just to put on the record, we mentioned

8  yesterday, Your Honor, that we had resolved the FEMA claims and

9  the state-agency claims, and I think there was some statements

10 on the record as to how we had resolved the FEMA claims but not

11 as to how we had resolved the state-agency claims.  And --

12        THE COURT:  Well, there was one brief passing, but go

13 ahead and --

14        MR. KAROTKIN:  Yes.  So I think it just would be

15 appropriate just to advise the Court --

16        THE COURT:  Sure.

17        MR. KAROTKIN:  -- and the parties, of that agreement

18 in principle.  Again, that's subject to definitive -- each of

19 those are subject to definitive documentation and, as I

20 mentioned yesterday, approval of the Court.  But I'd just like

21 to give a brief summary.  And I know Mr. Pascuzzi said he would

22 be on the phone and can certainly correct me if I make any

23 mistakes.  But this is just a summary.

24        Under the agreement in principle, the claims that were

25 filed by Cal OES would be withdrawn, completely withdrawn.  The

PG&E Corp. and Pacific Gas and Electric Co.

1    CAL FIRE claim would be allowed in the amount of 115.3 million

2    dollars.

3             THE COURT:  115?

4             MR. KAROTKIN:  115.3.  It would be payable from the

5    fire-victim trust, solely from accrued interest.  And I'll tell

6    you what that is, in a second.  That would be paid over a

7    period of years, as more fully set forth in the --

8             THE COURT:  Based upon --

9             MR. KAROTKIN:  -- agreement.

10            THE COURT:  -- the current market situation, the

11   accrued interest might be a negative number.  But --

12            MR. KAROTKIN:  No, well, we don't think so.

13            THE COURT:  Okay.

14            MR. KAROTKIN:  Accrued interest is cash -- interest

15   earned on the cash assets held by the rust.

16            THE COURT:  No, I was --

17            MR. KAROTKIN:  Okay.

18            THE COURT:  -- making a joke about --

19            MR. KAROTKIN:  Yes, I know.

20            THE COURT:  -- the current marketplace.

21            MR. KAROTKIN:  And the first 70 million of that 115

22   would be paid over the years ending -- for interest accrued

23   over the years ending 2021 through 2025.  And the balance would

24   be paid thereafter.

25            The other state-agency claims -- and those are -- and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    these are -- well, actually I can tell you:  California

2    Department of Developmental Services; California Department of

3    Toxic Substances -- and these are fire claims, just fire

4    claims.  There are some other claims that the state agencies

5    have filed that are not fire claims.

6         THE COURT:  Well, are they even in the fund -- they're

7    not even in the trust; are they?

8         MR. KAROTKIN:  Correct.

9         THE COURT:  Yeah.  Right.

10        MR. KAROTKIN:  And so just to be clear, it doesn't

11   affect those claims.

12        THE COURT:  Right.  Okay.

13        MR. KAROTKIN:  -- the California Department of

14   Forestry and Fire Protection; California Governor's Office of

15   Emergency Services, which is Cal OES; California Department of

16   Parks and Recreation; California State University; and

17   California Department of Transportation; and the California

18   Department of Veterans Affairs.

19        So those other state-agency claims, excluding CAL FIRE

20   and Cal OES, would have an aggregate allowed claim of eighty-

21   nine million dollars, again, payable only from the fire-victim

22   trust over a period of several years.  The first sixty million

23   is paid over the years ending 2021 to 2023, solely from

24   what's -- the defined term is "excess monetization", which is

25   defined as net cash proceeds from the monetization of the stock

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    of reorganized PG&E, going to the trust.  And that's

2    monetization in excess of the 6.75 billion dollars' value

3    attributed to that stock, less the cost of administration of

4    the trust.  And the balance of twenty-nine million would be

5    payable from available interest and excess monetization.  The

6    available interest is a little different than the accrued

7    interest; it's accrued interest less the costs of administering

8    the trust.

9           There would be --

10           THE COURT:  And this is already spelled out in the --

11           MR. KAROTKIN:  This will be completely spelled out in

12    a document and in a motion that will be -- that will be filed

13    with the Court.  And as a consequence of this, there will be no

14    claims asserted -- no other claims that will be asserted

15    against the debtors, the debtors' estates; no other

16    distributions under the plan.

17           THE COURT:  So the --

18           MR. KAROTKIN:  And there'll be mutual releases.

19           THE COURT:  -- the 13.5 billion is not offset at all

20    by this settlement?  The --

21           MR. KAROTKIN:  That's --

22           THE COURT:  The payout --

23           MR. KAROTKIN:  That's the idea.  It's from --

24           THE COURT:  The payout comes out of the surplus?

25           MR. KAROTKIN:  Exactly; it's basically surplus.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    And again, if Mr. Pascuzzi has any corrections, I

2 would invite him to please correct me.

3    THE COURT: Mr. Pascuzzi, any corrections?

4    MR. PASCUZZI: Yeah. Yes, Your Honor. Paul Pascuzzi,

5 Felderstein Fitzgerald Willoughby Pascuzzi & Rios, for the

6 California state agencies.

7    Your Honor, I think the gist of what Mr. Karotkin

8 said -- obviously, we're not bound by what he said on the

9 record. We've got a term sheet drafted and documented. But the

10 general gist -- the CAL FIRE claims that are going in the trust

11 under the plan are being settled for 115.3 million dollars.

12 This is also contingent on the settlement with the federal

13 agencies, which includes a release of duplication of benefits

14 claims from FEMA that we're talking to FEMA about and working

15 on. It's also contingent on, as I said yesterday in court, the

16 plan, in its substantially current form, being confirmed. So

17 this isn't a settlement but it'd be binding on anybody if

18 things aren't going forward as they are right now.

19    And it's important to note that there are some CAL

20 FIRE claims, fire claims that do not get channeled to the

21 trust. They're general unsecured claims under the plan, and

22 those are not affected by this settlement, as well.

23    And then as Mr. Karotkin noted, there's other non-fire

24 claims; there's risk contingencies that are not affected.

25    THE COURT: So let me --

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. PASCUZZI:  And there are some other issues --

2          THE COURT:  Wait.

3          MR. PASCUZZI:  -- that we have with the plan.

4          THE COURT:  Let me back you up for a minute.  So --

5          MR. PASCUZZI:  Sorry.

6          THE COURT:  The term "CAL FIRE", referring to the

7    organization, is different from the term "the fire fund".  In

8    other words, what I heard you say is some claims that relate to

9    the recovery efforts from the actual fires are in the thirteen-

10   and-a-half fund but being paid out of the surplus, but some

11   other amounts are by CAL FIRE that are just claims that are

12   being allowed?  Did I confuse that?

13         MR. KAROTKIN:  There're other claims by CAL FIRE that

14   are not, quote-unquote, "fire claims".

15         THE COURT:  Right, but they're by CAL FIRE, the name,

16   the entity --

17         MR. KAROTKIN:  Yes.

18         THE COURT:  -- CAL FIRE; right?

19         MR. KAROTKIN:  And they will be treated under other

20   provisions of the plan.

21         THE COURT:  General unsecured, I presume.

22         MR. KAROTKIN:  General unsecured claims.  They are

23   neither, at this point, allowed or disallowed.  They are just

24   claims.

25         THE COURT:  Yeah, I just wanted to -- I just want to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  make sure there is a distinction.  And I think, Mr. Karotkin,

2  you're confirming it.  Mr. Pascuzzi, you confirm it.  The words

3  "CAL FIRE" have two different meanings in these contexts.

4  But --

5           MR. KAROTKIN:  Yes.

6           THE COURT:  Right?

7           MR. KAROTKIN:  Well, the words "CAL" --

8           MR. PASCUZZI:  Yeah, CAL FIRE --

9           MR. KAROTKIN:  CAL FIRE is the agency.

10          THE COURT:  The agency is one.

11          MR. PASCUZZI:  Yeah.

12          THE COURT:  The fires generically is what -- as the

13  plan defines as the wildfires.  Okay.

14          MR. KAROTKIN:  Okay.

15          THE COURT:  I'm on the same -- I got you.  And the

16  definitive agreement will state it out in any --

17          MR. KAROTKIN:  Yes --

18          THE COURT:  -- in any event.

19          MR. KAROTKIN:  -- in detail.

20          Okay, so I think that --

21          THE COURT:  And give me your best judgment on the

22  timing you're going to tee that up, because, again, this will

23  come as no surprise, because everybody in the entire country is

24  concerned -- in the world, is concerned about this world

25  crisis.  And we're trying to make sure the calendars get more

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    user-friendly and when we've matched things up and -- so I

2    presume you'll pick it for one of the hearings that we've got

3    designated --

4            MR. KAROTKIN:  Yes.

5            THE COURT:  -- coming up.  And so what's it likely to

6    be:  early, like, the 25th?  That's pretty soon.  Or --

7            MR. KAROTKIN:  I think that's --

8            THE COURT:  There's a calendar on the 1st --

9            MR. KAROTKIN:  Yeah.

10           THE COURT:  -- calendar on the 7th.

11           MR. KAROTKIN:  I would --

12           THE COURT:  Somewhere in that time frame?

13           MR. KAROTKIN:  I would say more likely the 7th.

14           THE COURT:  Okay.  What I'm trying to avoid is what

15   was a necessary evil with the disclosure statement, is these

16   last-minute enormously complex filings.  And maybe this is

17   nowhere near as enormously complex, but I want to make sure

18   that not only I but the principal constituents in this case

19   have the more traditional time to reflect on these things if

20   necessary.

21           So I won't -- Mr. Karotkin, I'll just leave it to you

22   to do the right thing there, and --

23           MR. KAROTKIN:  It'll be slightly longer than that

24   piece of paper --

25           THE COURT:  Yeah

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MR. KAROTKIN:  -- I gave you before.

2        THE COURT:  Slightly longer.  That's fine.  Well, no,

3   this is -- I've already approved this amended plan.  Okay.

4        MR. KAROTKIN:  Actually, we have, I would say,

5   significantly trimmed down the draft; probably not as much as

6   you would like, but --

7        THE COURT:  Well, I told you I was going to let you do

8   it.

9        MR. KAROTKIN:  Yes.

10       THE COURT:  If I saw the things that you filed last

11   night, you actually have gone to the short ballot for the --

12       MR. KAROTKIN:  Yes, sir.

13       THE COURT:  -- the filing.  Well, that, to me, was a

14   very significant change, and I appreciate you doing that.

15   So --

16       MR. KAROTKIN:  Yeah, so I was just going to mention

17   that we did file last night a revised order with the revised

18   ballot, to address the concerns you had raised yesterday.

19       THE COURT:  Right.

20       MR. KAROTKIN:  So I think that, hopefully, that does

21   address your concerns.

22       THE COURT:  No, I looked over the order.  Obviously, I

23   couldn't go through all the --

24       MR. KAROTKIN:  No, no.

25       THE COURT:  -- exhibits.  But I took your word for it

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   and I was pleased to see that the ballot looks more user-

2   friendly for the vast number of people that are going to be

3   using it.  So that's fine.  That's good news.

4           MR. KAROTKIN:  So as I said, I think, other than some

5   issues with the TCC, Ms. Winthrop's -- the issue she raised

6   yesterday as to the disclosure on the trust, and Mr. Bray, I

7   think we have -- I think we have resolved everything else.

8           THE COURT:  Well, let me clarify something --

9           MR. KAROTKIN:  Yeah.

10          THE COURT:  -- that maybe was perfectly clear to you

11  and others.  But at the end of the day, after the long day

12  yesterday, I was simply -- my notes -- and I even talked to my

13  law clerk about it -- were just a little unclear.  What's the

14  disposition of the issue raised by the U.S. Trustee?  Did

15  you -- is that just deferred to confirmation?

16          MR. KAROTKIN:  No, no.  I think we resolved the

17  U.S. -- yes.  The answer is yes.  On the releases and

18  exculpation?

19          THE COURT:  Yeah.

20          MR. KAROTKIN:  Yes, what we agreed to do -- and my

21  colleagues can correct me if I'm wrong -- is to include

22  something in the disclosure statement that the U.S. Trustee

23  believes the release and exculpation provisions are too broad.

24  The debtors -- the plan proponents do not agree.  And the U.S.

25  Trustee agreed that that could be deferred to confirmation.

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  And, Mr. Bray -- oh, Mr. Laffredi --

2    MR. LAFFREDI:  That's correct, Your Honor.

3    THE COURT:  -- you confirm that?

4    MR. LAFFREDI:  That's correct.

5    THE COURT:  That's what I thought you said.  Everybody

6  had a lot on their plate yesterday and I just want to make sure

7  we're clear.  We can't pick up all the stuff in the minutes.

8    But, Mr. Bray, are you in the -- is it same with you?

9  You can stay there by that microphone if you'd like.  Is it

10  something that you want to discuss today or is it something

11  that should be just flagged in the disclosure statement and

12  deferred for confirmation?

13    MR. BRAY:  Your Honor, Gregory Bray, Milbank LLP,

14  counsel for the committee.

15    We're not going to object to the disclosure statement

16  going out.

17    THE COURT:  Okay.

18    MR. BRAY:  If Mr. Karotkin wants to put a sentence in

19  there about our views and his, that's fine.  But since we're

20  not voting, it's sort of an -- it's just a different situation.

21    Having said that, we certainly reserve -- preserve all

22  of the rights we've raised.  And there's a lot of wood to chop

23  between now and confirmation --

24    THE COURT:  No, I understand that --

25    MR. BRAY:  -- to be sure.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  -- and -- but my point is there's no wood

2     to chop today --

3          MR. BRAY:  That's correct.

4          THE COURT:  -- I think.

5          MR. BRAY:  As far as we're concerned --

6          THE COURT:  And --

7          MR. BRAY:  -- when you're ready, you're ready.

8          THE COURT:  And there's nothing for me to chop with

9     the U.S. Trustee.  And maybe as soon as Ms. Winthrop has an

10    opportunity to look at whatever Ms. Green or others have

11    drafted, maybe that's resolved.  I'll call on them in a minute.

12          And, Mr. Karotkin, sort of the other issues with the

13    TCC -- any open issues with the TCC, and those things, you're

14    going to just work on your own and put it in the order, or is

15    it something that I need to listen --

16          MR. KAROTKIN:  No, I think that we'll work on that on

17    our own.  And --

18          THE COURT:  Okay.

19          MR. KAROTKIN:  -- I'm relatively confident we'll work

20    those out --

21          THE COURT:  Well, give me your --

22          MR. KAROTKIN:  -- in the next day or two.

23          THE COURT:  -- best judgment on the timing, then, of

24    where we go from here --

25          MR. KAROTKIN:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      THE COURT:  -- in terms of when the disclosure

2  statement will be the real thing, which --

3      MR. KAROTKIN:  I think that --

4      THE COURT:  And I'll be signing an order, and so on.

5      MR. KAROTKIN:  Yes.  I think that no later than -- I

6  hate to say "over the weekend", but over the weekend we will

7  file a revised plan -- a new revised plan and disclosure

8  statement, which I think should be the final version of both.

9  We're going to be here Monday either in person or by phone, in

10  any event.  And it would be my hope and expectation that on

11  Monday everyone will be here who wants to be here and can sign

12  off on that document and could, hopefully, enter the order that

13  day.

14      THE COURT:  Well, do we really need to have that

15  formality?  In other words, are you going to be -- do you think

16  you'll be in a position -- again, I'm not pinning you down

17  personally or your staff whether it's Friday or Saturday or

18  Sunday or Monday morning.  It is something that you're going to

19  want to have more feedback from counsel, or is it something

20  that you can upload it as your signal to me that it's a done

21  deal?  Which I'd prefer.

22      MR. KAROTKIN:  I would like to do that, but I don't

23  know whether you need to confirm with the parties they're

24  signed off.

25      THE COURT:  In a simple case involving two lawyers or

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    three, I have the two or three sign approved as to form.

2    That's not workable here.  I'd be more inclined to put the ball

3    in your court to communicate as you see fit with the lawyers

4    who have been vociferous or acting -- not everybody; the ones

5    that you're having this dialogue with.  And if they are

6    satisfied, you upload the order.

7              And so --

8              MR. KAROTKIN:  Okay.

9              THE COURT:  -- my instructions to my staff and my own

10   intention is, when the so-called final order approving the

11   disclosure statement is uploaded by your law firm, that's the

12   final deal.  And it'll come as no surprise -- and I'm probably

13   not going to re-read it.  I'll sign it.  Whether it's before or

14   after the Monday hearing isn't the point.

15             MR. KAROTKIN:  Okay.

16             THE COURT:  I want this thing to go.  So --

17             MR. KAROTKIN:  Okay.  And if there are --

18             THE COURT:  -- let's put it this --

19             MR. KAROTKIN:  -- any issues outstanding --

20             THE COURT:  Yeah.

21             MR. KAROTKIN:  -- presumably --

22             THE COURT:  And --

23             MR. KAROTKIN:  -- they could be raised on Monday.

24             THE COURT:  And we have -- everyone in the case knows

25   how to communicate with my courtroom deputy.  An email to my

PG&E Corp. and Pacific Gas and Electric Co.

1  courtroom deputy that says, "I have a problem with the form of

2  order that Mr. Karotkin uploaded or is submitting," that's good

3  enough for me.  And if necessary, I can take it up with

4  everybody when we're convened --

5          MR. KAROTKIN:  Exactly.

6          THE COURT:  -- however we're convened, on Monday.

7          And then if I'm clear on what you said, it's the

8  logistical burden of you and Prime Clerk and everybody else to

9  get it out the door over a period of time.  And we're go on

10  that; right?

11          MR. KAROTKIN:  Exactly.

12          THE COURT:  So can you give me more of a preview of

13  what will happen on Monday now, still, or you still don't know

14  about --

15          MR. KAROTKIN:  The current -- on the financing?

16          THE COURT:  About whether we have testimony.  We have

17  a deadline for the objections, of Friday, but --

18          MR. KAROTKIN:  I'm hopeful that -- as I said

19  yesterday, that -- as I said, the only outstanding objection

20  was the prior objection filed by the governor's office.

21          THE COURT:  Right.

22          MR. KAROTKIN:  I'm hopeful that that will be resolved

23  before the hearing; there will not be testimony.

24          THE COURT:  But there could be an objection by any

25  party, by the debtor.

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. KAROTKIN:  There could.  I forgot when the

2    objection deadline is.  Isn't it --

3    THE COURT:  It's Friday.  I checked it.

4    MR. KAROTKIN:  Yeah.

5    THE COURT:  It's Friday, because again, we're on a

6    short schedule.

7    MR. KAROTKIN:  There could be.  There could be.  And I

8    don't -- I can't predict whether -- what that objection would

9    say or whether it would require testimony.

10   THE COURT:  Well, let me make, again, the obvious

11   statement.  We in the federal court, like everybody else in the

12   world, are concerned about these developments.  And one of

13   the -- I was talking to some fellow judges today at lunch who

14   are district judges, who are debating what do they do about

15   juries that're convening next week.  And my only response is,

16   what do I do about a PG&E hearing I'm convening next week?  And

17   the answer is, I don't want to do it if we don't have to do it.

18   And I want every single lawyer in this case to feel comfortable

19   appearing by phone and, if necessary, questioning witnesses by

20   phone, to establish things.  And the witnesses can be on the

21   phone.  I might be home on the phone.  That doesn't mean I

22   won't do it.  But I don't want people to feel obliged to come

23   to a hearing, to watch and then go home wondering, "Well, why

24   did I do that?" when everybody in the world is telling us don't

25   have these large gatherings of people in closed --

of 58
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. KAROTKIN:  Right.  I'm told the objection deadline

2  is tomorrow at 4 o'clock, so we'll know --

3    THE COURT:  Okay, so I'm wrong about that.

4    MR. KAROTKIN:  -- better then.  And --

5    THE COURT:  But having said what I said, if for some

6  reason you believe it's necessary to have live testimony or

7  live argument, I intend to be here and I will be here.

8    MR. KAROTKIN:  Okay.

9    THE COURT:  But I don't want to make an imposition on

10  people.  And for further hearings coming up, we have another

11  calendar on the 25th.  We might have to make some adjustments.

12  We just don't know.  And I'm particularly mindful of the

13  burdens on you and others who travel.  Not that we don't

14  travel.  We just don't travel as far.  Okay.

15    MR. KAROTKIN:  Well, we appreciate that.

16    THE COURT:  Back to you.

17    MR. KAROTKIN:  We do.

18    THE COURT:  Okay.

19    MR. KAROTKIN:  I don't know that I have anything else

20  today.

21    We have anything else today?

22    THE COURT:  Well, Mr. Bray, from what you said,

23  there's nothing else to burden you with today.  Your position's

24  taken -- I mean stated and preserved.  And there we are.

25    MR. BRAY:  Yes, Your Honor.

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Ms. Green, have you managed to get some

2    language that Ms. Winthrop is happy with?

3    MS. WINTHROP:  I think she's still reviewing it.

4    Unfortunately, I think we emailed it and she didn't have it.  I

5    handed her a hard copy in the courtroom.

6    THE COURT:  Okay, well, Mr. Karotkin, let me raise

7    another issue from my point of view, and that is that, as I

8    look at that calendar and think about -- again, forget

9    coronavirus and assume that we're all back in business with no

10   interruptions.  We have a status hearing nine -- eight days

11   before the confirmation hearing.  And I don't want to have one

12   of these situations where somebody says, "I got only a twenty-

13   page brief to file" and somebody's got a fifty-page reply.

14   I don't have a solution.  I'm going to ask you to put

15   on your thinking cap and, at the next hearing, whenever that

16   is -- maybe not Monday, but maybe by that hearing on the 25th,

17   please have had some discussion with the principal players --

18   again, the two committees, the governmental agencies if there

19   is any active involvement -- about getting more creative on how

20   to make everything happen smoothly.

21   But as I said, I don't expect you all to put together

22   these complex documents on short notice.  And I just cannot

23   absorb volumes and volumes of stuff on short notice.  But we

24   have that deadline, and I intend the confirmation hearing to go

25   off -- to happen.  And -- whatever it takes.

PG&E Corp. and Pacific Gas and Electric Co.

1        So there's no answer here.  And if we weren't dealing

2   with the coronavirus, it'd be -- it would still be a problem;

3   not as great a problem as we have to deal with.

4        So, Ms. Winthrop, are you there?

5        MS. WINTHROP:  I am, Your Honor.

6        THE COURT:  Do you want -- do you want some more time

7   just to reflect and be heard on this subject?  Or -- on the

8   subject of the language.

9        MS. WINTHROP:  Your Honor, we just -- Rebecca Winthrop

10  of Norton Rose Fulbright, on behalf of the Adventist claimants.

11       So we have just literally been handed it to it (sic).

12  I will be happy to review it promptly.

13       THE COURT:  Okay.

14       MS. WINTHROP:  I am not willing to commit now on the

15  record today, right now --

16       THE COURT:  Okay.

17       MS. WINTHROP:  -- that whatever they handed me is

18  okay.  I'm sure it's trying to be compliant with Your Honor

19  (sic) --

20       THE COURT:  Well --

21       MS. WINTHROP:  -- instructions.

22       THE COURT:  -- but it's not just compliant with me;

23  it's -- we can't make it -- probably can't solve all the

24  problems.  And so I'm just urging you to be as flexible as you

25  can and recognize what we're up against.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        Are you able to tell me yet where you are on that

2   April 7th date, and again, you don't have to tell me, but the

3   date that's on calendar for your claim estimation?  Which I

4   think should be moot.

5        MS. WINTHROP:  Yes, Your Honor, it is moot.  And --

6        THE COURT:  Okay.

7        MS. WINTHROP:  -- we just -- we will officially advise

8   your courtroom, if you need --

9        THE COURT:  I mean, just file a one-line withdrawal of

10  the papers; that's all.

11        MS. WINTHROP:  We'll do a notice, yes.

12        THE COURT:  Yeah.  Again, this shouldn't be an

13  imposition any more than the minimal filing.  But for balloting

14  purposes, again --

15        MS. WINTHROP:  Absolutely.

16        THE COURT:  -- going back to what I was talking about,

17  we're making every effort to get these calendars more concise

18  and less a burden on everybody.

19        MS. WINTHROP:  Absolutely, Your Honor.

20        THE COURT:  I can take a recess.  I can adjourn the

21  hearing and ask you and Ms. Green to reach an agreement and

22  give Mr. Karotkin agreed language, or I can do something else.

23  Tell me what works best for you.

24        MS. WINTHROP:  I think the current structure, where

25  the parties are looking at the documents and Mr. Karotkin is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   going to upload the order when everything's done, works for me,

2   Your Honor.

3           THE COURT:  Okay.  So --

4           MR. KAROTKIN:  Your Honor, if possible -- I'm sorry; I

5   don't -- it would -- this is, I guess, a relatively significant

6   issue.  I mean, if we could possibly get this -- I don't want

7   to impose too much on everybody.  If we could take a short

8   recess so Ms. Winthrop could look at it, and at least get some

9   indication of where we are, that would be helpful.

10          THE COURT:  You tell me whether that's --

11          MS. WINTHROP:  I will be more than happy to look at

12  what was literally handed to me two minutes ago and give you a

13  preview of coming attractions, if that would help.

14          THE COURT:  Well, let's take about maybe a fifteen-

15  minute break.  And after that -- I think, unless I'm forgetting

16  something, there's nothing else for us to do today.  Right?

17  We're going to be done.  And if you aren't able to commit, then

18  we'll figure out a way to let you submit something, and let me

19  make a final decision.  I mean, that's the other way to do it

20  is to ask -- for one side to tell me what you want, the other

21  side tell me what -- I'll make a decision and I'll deliver it

22  expeditiously to Mr. Karotkin to put it into the document.

23          So we'll take just a few minutes, then.

24          MS. GREEN:  Judge, may I --

25          THE COURT:  Ms. Green?

PG&E Corp. and Pacific Gas and Electric Co.

1          MS. GREEN:  Yes.  I think the outstanding issue had to

2    do with the language in the trust, related to the distributions

3    to the fire claimants.

4          THE COURT:  The estimations, yes.

5          MS. GREEN:  Right.  So I'm not quite sure that

6    Adventist could provide an estimation at all.  But we took you

7    up on your offer and we provided language that basically goes

8    through the different types of claims and how they'll be

9    analyzed.  But we don't have percentages.  So I want to alert

10   the Court to that.  But we definitely do have detailed language

11   talking about the budgeting and the estimates and what's going

12   into each claim, and what will be evaluated.  And so I think

13   it --

14         THE COURT:  But isn't -- excuse me.  Isn't the biggest

15   thing already behind us, that these two great, big, 800-pound

16   gorillas are no longer participating in this fund --

17         MS. GREEN:  Correct.

18         THE COURT:  -- Cal FEMA and Cal OES -- and therefore

19   the -- leaving aside administrative expenses, the fund is there

20   for fire victims?

21         MS. GREEN:  Correct.

22         THE COURT:  Fire victims.  People or entities or

23   hospitals that suffered the loss in the fire.

24         MS. GREEN:  Yes.

25         THE COURT:  So it's go to be -- you know, okay,

PG&E Corp. and Pacific Gas and Electric Co.

1   let's -- I'm going to take my -- stick with my proposal to Ms.

2   Winthrop to take a short break to see if she's comfortable with

3   it.  If she's not comfortable with it, I'm not going to make

4   her uncomfortable.  I'm going to give both of you a deadline to

5   submit something that either is agreed language or not.

6           MS. GREEN:  Okay.

7           THE COURT:  And leave it there.

8           Mr. Abrams, I see you in the back.  Good afternoon,

9   again.

10          MR. ABRAMS:  Good afternoon.  Thank you, Your Honor.

11  I know I'm not a court party, so I understand that and

12  appreciate that.

13          THE COURT:  There's no -- there's no rule here.

14  You're heard to be heard.  What can I do for you?

15          MR. ABRAMS:  Thank you.  I'm just concerned with this

16  streamlining that, given all of the objections, that

17  streamlining is looked at by all parties, so that they

18  understand the implications for that, because --

19          THE COURT:  What do you mean?  I don't know what -- I

20  don't understand your statement.  You mean the streamlining of

21  the disclosure statement?

22          MR. ABRAMS:  Yes.

23          THE COURT:  Have you ever had to read a disclosure

24  statement?

25          MR. ABRAMS:  I have been reading the disclosure

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   statement.  That's why I've been here, Your Honor.  And so --

2           THE COURT:  I know.  But they're horribly difficult

3   and tedious, aren't they?

4           MR. ABRAMS:  I -- they are, but unfortunately, I feel

5   that by streamlining, it can be horribly easy to vote yes or it

6   can be transparent regarding --

7           THE COURT:  Did you see Mr. Karotkin's revised

8   disclosure statement?

9           MR. ABRAMS:  Yeah, Your Honor --

10          THE COURT:  This is my wish list, but he couldn't do

11  it.  He couldn't it down to one paragraph.

12          MR. ABRAMS:  And, Your Honor, I appreciate that, but I

13  have to tell you, I don't find it a joke at all.

14          THE COURT:  It's not a joke.

15          MR. ABRAMS:  And it's not a joke.  And streamlining

16  this to the point of not disclosing risks to victims is not a

17  joke to me.

18          THE COURT:  Mr. Abrams, I don't think you heard what

19  we talked about yesterday.  I complained about twenty pages of

20  background, detailed descriptions of what's happening at the

21  CPUC.  I am of the view that the people who aren't as well-

22  informed as you are and aren't as involved as you are are going

23  to be turned off, rather than turned on and deterred from

24  making a decision if they feel they have to read a seventy-page

25  document.

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. ABRAMS:  Yeah, but putting the --

2          THE COURT:  And you have a different point of view.  I

3    agree.

4          MR. ABRAMS:  I do.

5          THE COURT:  And I said to you yesterday, you are free

6    to take a contrary view.  But I have to make the decision on

7    what's adequate disclosure.  And what I said yesterday was --

8    and I pointed specifically to blocks of the disclosure

9    statement -- but I also said I didn't insist I was going to let

10   the principal drafters, including principally, Mr. Karotkin and

11   his side, to come up with something less voluminous and that's

12   what I'm going to stick with, not more voluminous.

13         MR. ABRAMS:  Absolutely.  And I'm not trying to add

14   volumes.  I'm just saying, moving the vote to the front page to

15   say vote and then find out what your risks are, to me, usual

16   people who sign a contract online are used to looking at the

17   risks first and then signing at the bottom.

18         THE COURT:  I don't know what's usual.

19         MR. ABRAMS:  So I --

20         THE COURT:  I have a lot of experience with

21   bankruptcy.  I don't have any experience with mass casualties,

22   involving tens of thousands of people who are waiting longer

23   than you, in some instances, to get money.  And in my

24   experience, giving them a fifty-page legal document is not

25   constructive.  But it doesn't matter.  It's not going to be one

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  piece of paper. It's going to be a description indication. Do

2  you vote yes or vote no?

3  MR. ABRAMS: All right. I'm just worried that the

4  debtors' view of streamlining might be a little different than

5  other parties.

6  THE COURT: How about my view? That's what I'm --

7  that's my job, is to -- if the statute is to satisfy the

8  statute, adequate disclosure to make an informed decision.

9  MR. ABRAMS: One other issue, if I may, given the

10  situation of dialing into the hearing. This, amongst many

11  other things, is very difficult for folks who are not core

12  parties like myself. So if there's a phone number, I

13  understand that there may be ways to go about that, and fees --

14  THE COURT: Well, it's been published as long as this

15  case has been -- everyone in the world can call in to CourtCall

16  and pay a modest fee and be on the phone.

17  MR. ABRAMS: Okay, thank you.

18  THE COURT: They're on the phone right now. I don't

19  know how many, but there are lots of people listening by phone

20  right now. And if it were a perfect world, I would make it so

21  they didn't have to pay anything. But it's, what, twenty-five

22  dollars? I mean, it's a modest fee.

23  MR. ABRAMS: Okay.

24  THE COURT: But I'm not sure of your point. I'm

25  trying to -- I'm trying to simplify it and even more obligated

PG&E Corp. and Pacific Gas and Electric Co.

1    to simplify it, in view of the virus crisis.

2           MR. ABRAMS:  Absolutely.

3           THE COURT:  So whereas I appreciate your being here,

4    you don't have to be here.  You can --

5           MR. ABRAMS:  Absolutely.

6           THE COURT:  -- do it by phone.

7           MR. ABRAMS:  I appreciate that.  Thank you.

8           THE COURT:  All right.  Well, then, further to my

9    discussion with Ms. Winthrop, I'll take about a fifteen-minute

10   break or earlier, if she tells my deputy that I'm ready --

11   she's ready.  If not, I intend to either get language and hear

12   the two principal counsel who have been working on this

13   inserted language and approve it or disapprove it.  And if that

14   doesn't work, I will have either of them -- both of them submit

15   alternative language and intend probably later today, if I can,

16   or certainly no later than tomorrow morning, to provide

17   something by way of the brief document or a docket text or

18   something to communicate my decision.

19           And then, my intention would be Mr. Karotkin would see

20   to it that that language is inserted into the document.  I'm

21   going to take his word that all the other changes that were

22   discussed throughout the hearing yesterday, either discussed

23   openly between me and him and others or separately worked out

24   by other lawyers for their clients.  It's all going to be

25   incorporated into this disclosure statement, which will be of

PG&E Corp. and Pacific Gas and Electric Co.

1　some length.  And as you can see, in addition to the disclosure

2　statement, there is this other extremely extensive document

3　that's variations of the ballots and the various related

4　documents that all go together and then the attention will be

5　to -- no later than Monday, if not earlier, the actual, final

6　version of the order proving the disclosure statement will be

7　uploaded.  So I'll wait to call or I'll come back and say that

8　we're going to conclude or -- without any further decision in

9　the next few minutes, okay?  Thanks.

10　　　(Recess from 2:36 p.m., until 3:41 p.m.)

11　　　　　THE CLERK:  Court's back in session.

12　　　　　THE COURT:  (Indiscernible) good afternoon, again.

13　　　　　Mr. Karotkin, I've got some drafts here.  You want me

14　to give you a review of it?  Or Ms. Green, I -- I wasn't clear

15　what --

16　　　　　MS. GREEN:  Your Honor, that came from Mr. Karotkin

17　because it included changes that we've accepted from the

18　debtors.  And so that's the document that the TCC is

19　recommending get included in the disclosure statement.

20　　　　　THE COURT:  Okay.

21　　　　　And, Ms. Winthrop, are you a party -- are you on board

22　with this or not?

23　　　　　MS. WINTHROP:  I wish I could say yes, Your Honor.

24　　　　　THE COURT:  Well, tell me what you want to do?  Do you

25　want to edit this or do you want to offer some alternative

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    items or what?

2           MS. WINTHROP:  Your Honor, we did propose some edits

3    and they were rejected.  Those were settlement negotiations, so

4    I don't feel comfortable disclosing them to the Court.

5           THE COURT:  Okay.

6           MS. WINTHROP:  So you know, my position is all of this

7    describes basically the claims analysis process.  And it boils

8    down to they don't know or they're not willing to say what the

9    percentage of recovery is or when they're going to -- the

10   monies will be distributed.  Percentage recovery is usually

11   what you see in a disclosure statement.  It's in the U.S.

12   Trustee's guidelines.  People are entitled to know what they're

13   going to get, even if it's a range of recoveries, would be

14   acceptable to us.  And if you know enough to say this is a

15   better deal, then you should be able to tell people why it is a

16   better deal.

17          THE COURT:  Well, but -- but the alternative to this

18   plan is itself an unknown.  So it's a better deal because the

19   alternative is unknown, right?  And so the legal --

20          MS. WINTHROP:  I don't know that that's --

21          THE COURT:  Well, as a legal matter, the perception is

22   that it's better than (indiscernible) and that's what the

23   statute says.  So I mean, I have to make that finding at a

24   trial.

25          MS. WINTHROP:  Without a liquidation analysis.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  Well, at trial, if contested or if not

2    contested, but as a personal requirement, prove to me your plan

3    is better than Chapter 7.  That doesn't mean there has to be a

4    liquidation in the house.  It's because in a full-pay plan,

5    it's better -- or not worse than.  So a full-pay plan, by

6    definition, is no worse than a Chapter 7.  And admittedly,

7    because of the cap trust and the uncertainty as to the amount

8    of the claims, we can't be more precise.

9         I guess what I'm struggling with is you make a good

10   argument in theory, but in practice, what do you want me to do?

11   Suspend everything while somebody analyzes and shakes down the

12   claims and gets a better fix?  It makes no sense.  Because

13   everyone knows from experience that claims sometimes include

14   inflated or phony claims.  So why -- what would I accomplish by

15   making the TCC or anyone else try to be more precise?  They

16   didn't say we know and we're not telling you.  They said it is

17   not possible to predict.  I'm trying to say that if I'm -- I

18   don't know what it's like to be a victim of this fire -- these

19   fires and happily, that's not my problem.

20        But if I look at something that says I'm going to

21   share in thirteen-and-a-half billion dollars and the

22   alternative is I'm not going to get anything for now and maybe

23   I don't know what I'll get.  I don't know why I need to know

24   more than that.  I mean, what if I can magically say we predict

25   you'll get 79.6 percent?  What would that do to influence

PG&E Corp. and Pacific Gas and Electric Co.

1  someone to vote?

2  MS. WINTHROP: Your Honor, I'm just asking for some

3  basic information that is in -- because my client has been

4  saying to me, so what can we expect from this case? And I

5  can't tell him what we can expect from this case.

6  THE COURT: I understand. But if I -- if I said,

7  okay, Ms. Green, you're going to have to give Ms. Winthrop a

8  better answer and she says, I can't give you a better answer.

9  What would you want to do? What would you have me order

10  someone to do to give you the benefit -- more information for

11  your file? Give me -- it's your wish list. Tell me what you

12  want me to order and I'll see if I can do it.

13  MS. WINTHROP: If there is a range of recovery that

14  they can predict, and I would think after a year in this case

15  and millions of dollars in professionals, including preparing

16  for an estimation, that they should be able to at least provide

17  a range of recoveries. That's all we're suggesting.

18  THE COURT: Well, I -- Ms. Green, what would you do if

19  I said you have to do that? Well, tell me what -- what it

20  would say? I mean, what would be the -- I mean, I'm going to

21  think you --

22  MS. GREEN: I think we would tell you that we can't do

23  that. And let me explain -- you know, we're used to the

24  bankruptcy lawyers saying we need to add -- put information to

25  determine whether a hypothetical investor would vote for or

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  against the plan.

2          THE COURT:  Right, right.

3          MS. GREEN:  Simple, black letter law, right?

4          THE COURT:  Right.

5          MS. GREEN:  Well, here, what these people are voting

6  for is a process for how they're going to get their money.

7  We're not telling them they're going to get X potentially,

8  because we can't do that.  Because everybody's damages are

9  different.  You have certain people who have emotional distress

10  damages, who might've had a different job, who might've had

11  different trauma.  And we can't figure out what all of those

12  are.

13          THE COURT:  Well, I didn't --

14          MS. GREEN:  So we're telling people --

15          THE COURT:  But I didn't expect me to order you to

16  tell any individual person what he or she may get, but rather,

17  in aggregate, what might be the result.

18          MS. GREEN:  Right.  And -- and so taking all those

19  people and piling them together, we don't know what those

20  damages even are.  And so, it's impossible to figure that out.

21          THE COURT:  Okay.  I've --

22          THE COURT:  I think it is more intellectually honest

23  to tell them what the process is and that there really is no

24  other plan right now.  And so if they vote for this plan,

25  they're going to get money sooner, rather than later, and that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    there's 13.5 billion dollars here.

2         And frankly, you know, Adventist is super-

3    sophisticated.  They're a company.  We have people in here who

4    represent thousands and thousands of plaintiffs who are sitting

5    in the courtroom who aren't making this argument because they

6    know it's a process and that that's how that -- their world

7    works.  It's not our world, it's theirs.

8         THE COURT:  Well, I -- but that's okay, I don't mind

9    people making arguments.  That's why I get to make decisions

10   about this.  And I'm -- Ms. Winthrop, I will -- hopefully it

11   won't come to this, but I'm going to say that I'm going to take

12   the advice of the people that have -- I'll say your opponents

13   on this issue -- and go with their language with the

14   understanding that if it comes down to the time for your client

15   to cast its vote, you can have another time -- another round,

16   if you will, to see if you can get more information, either by

17   formal or informal discovery or just plain asking.

18        I don't think I'm willing to take the risk of delaying

19   the disclosure process by asking Ms. Green or all the other

20   professionals to try to be more specific.  I'll accept their

21   statement that it is not currently possible, this realistic

22   statement.

23        And the language reads not currently possible to

24   predict what any specific claimant will be paid.  I'm going to

25   take that to be the same as not currently possible to predict

PG&E Corp. and Pacific Gas and Electric Co.

1  that you'll get seventy-eight percent or eighty-two percent or

2  ninety-three percent or 105 percent, except we know that it

3  can't be more than 100 percent, except the way it is.  And

4  obviously, it's not a perfect system.  But I'll stick with

5  that.

6          I do have a couple of minor points to ask about on

7  this draft that Mr. Karotkin's handed up.  And the first one is

8  almost just terminology.  I am aware that we talked about the

9  2017 Butte fires, that here there's reference to the Butte

10  County fires, in the plural in 2018 and then a few lines down

11  below, it's in the singular Butte fire.  And there's no

12  reference to Camp.  And so I just want to make sure the

13  language is consistent.  And I don't care what the answer is.

14  The people that are personally involved in this know the right

15  terminology.  Let's just be consistent with the terminology.

16          MS. RIDDLE:  Good afternoon, Your Honor.  Amanda

17  Riddle, this -- for the fire victims.  This one, I do know.

18  The 2015 Butte fire is in Calaveras County.  The 2018 --

19          THE COURT:  Right, that's right.  I do remember that.

20          MS. RIDDLE:  -- and the 2018 Camp fire was in Butte

21  County.  So there were a couple of other small 2018 fires in

22  Butte County.  I think the Honey fire was one of them --

23          THE COURT:  So do you -- so let me interrupt you.  So

24  do you think the bottom line on the first page, it says

25  detailed claims information, singular, the Butte fire, means

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    the 2015 fire?

2           MS. RIDDLE:  It does mean the 2015 fire.  And that's

3    what we should say, you're right.

4           THE COURT:  Then why don't we just put the 2015 in

5    there?

6           MS. RIDDLE:  The 2015 Butte fire?

7           THE COURT:  Yeah.

8           MS. RIDDLE:  Yes.

9           THE COURT:  And -- but in 2018, am I correct, there

10   was more than one fire in Butte County.

11          MS. RIDDLE:  There was, but now that I think about it,

12   the Trust only includes the Camp fire for 2018, right?

13          THE COURT:  Then shouldn't --

14          MS. RIDDLE:  So, yes.

15          THE COURT:  Shouldn't that be corrected there?  Ms.

16   Green, do you agree with that?  Well, we're talking one, two,

17   three, five lines from the bottom.

18          MS. GREEN:  Yes.

19          THE COURT:  So that first bullet point will say a

20   lesser number of the --

21          MS. RIDDLE:  And you know, that first bullet point,

22   insurance claim file data, that's actually -- we need to be

23   more clear there, because the 2017 fires were not only Sonoma

24   and Napa.  So I think we should say the 2017 North Bay fires.

25   And I think those are probably defined somewhere else in the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    disclosure statement, so we'll use the appropriate definition.

2            THE COURT:  Just be consistent, so there's no

3    confusion.

4            MS. RIDDLE:  Right.

5            THE COURT:  The other one, again, I'm almost

6    embarrassed to ask this question.  But on the second page, in

7    the middle of the page with the paragraph that begins with

8    distribution estimates, it says distribution estimates for

9    emotional distress, pain and suffering, bodily injury, nuisance

10   zone of danger, but doesn't say anything about death.  And

11   obviously, that's a serious fact.  There are some wrongful

12   death claims, also.

13           MS. RIDDLE:  There are several of them and we should

14   add that, yes.

15           THE COURT:  Shouldn't that phrase be in there, Ms.

16   Green?  Do you agree with that?

17           MS. GREEN:  Yes.

18           THE COURT:  Okay.  And the last point is nothing more

19   than a nitpick.  But I have to do one nitpick.  No, I don't.

20   The last paragraph makes reference to initial caps assembly

21   bill and then in parenthesis, in quotes, AB.  And then there's

22   no further reference to it, so --

23           MS. RIDDLE:  That's because we cut that out.  You're

24   right, thank you.

25           THE COURT:  Okay.  So take it out.  I mean, everybody

PG&E Corp. and Pacific Gas and Electric Co.

1    knows it's Assembly Bill 1054, or AB 1054.

2            Mr. Abrams, did I see you standing again?  Did you

3    want to be heard?

4            MS. RIDDLE:  Thank you, Your Honor.

5            THE COURT:  Okay.  Thank you, Ms. Riddle.

6            MR. ABRAMS:  Sorry, yes, Your Honor.  Just one quick

7    suggestion for a remedy.  One of the things that is widely

8    understood by victims is consideration of their homes.  And so

9    if there's an estimation of a price per square foot or

10   something like that per county, per ZIP code or something like

11   that.  I think that that would go a long way for victims to

12   understand what this settlement might look like.  And --

13           THE COURT:  Did you read this document, this draft?

14           MR. ABRAMS:  I have not received that draft, because

15   it was not provided.

16           THE COURT:  Well, this is -- I mean, it was just

17   created in the last little while.  And it was talking about,

18   based on preliminary budgeting and analysis performed to-date,

19   estimates are being developed concerning potential recovery

20   ranges.  Well, you can see it for yourself.  Just look at the

21   bottom of the second page.  I was about to point out, analysis

22   of publicly available data representing cost of property

23   values, published reconstruction and rebuilding costs.  And

24   then the other two are a little more unrelated.  But that seems

25   to cover a pretty broad range of what the information is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    that's --

2          MR. ABRAMS:  And I was just thinking that a percent

3    recovery based upon that would be a good thing.  So if --

4          THE COURT:  But again, there's no -- there's no way of

5    translating that to a percent recovery, because we're

6    dealing -- it's a lot of data, including those two categories,

7    plus payments made by insurance, plus claims information from

8    the 2015 fires.  All of those are going into the coffer, as I

9    see it.

10         And the Trustee is hand -- I presume, his

11   professionals are analyzing that to come up with a measure or a

12   benchmark to pay, in particular, claims to see what fits the

13   reasonable.  So if someone has a claim that says I'm really

14   owed 200,000 dollars and the data suggests that historically,

15   even regionally and comparably a more typical claim should be

16   150,000 dollars, that might be a different result and that

17   might be persuasive to get the claimant to accept that or to

18   hang tough and reject that, in which case, he'll then go to the

19   next level of the process.

20         MR. ABRAMS:  I just think that there could be a

21   formula that's provided that would give victims a better sense

22   of what that end-dollar would look like and a range --

23         THE COURT:  Again, you're making the same argument.

24   Not the same.  You're making the kind of argument that Ms.

25   Winthrop made and I expressed -- respect both of your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   arguments, but I have to rely on Ms. Green and the people she's

2   working with saying we just can't quantify it the way you would

3   like us to at this point.  Again, this is not ultimately --

4   well, I shouldn't say this Mr. Abrams, but everything else --

5   you or others who believe there should -- that the information

6   is flawed or, in fact, the projection of this outcome versus

7   the alternative suggests that this outcome should not be

8   approved is for proof and evidence.  And again, I hate to sound

9   like a lawyer, but that's the way we have to approach it, in

10  terms of the proponents will carry their burden to prove why

11  this plan is preferable as a matter of law and if they don't

12  carry the burden, then they won't get their plan confirmed.

13  And if they do carry their burden, at least on that point, they

14  will --

15          MR. ABRAMS:  There are unknowns on both sides.  And I

16  just wish --

17          THE COURT:  There are unknowns on both sides.

18          MR. ABRAMS:  And I wish that the known quantities were

19  a little more spelled out so --

20          THE COURT:  I wish they were, too.

21          MR. ABRAMS:  Thank you.

22          THE COURT:  Okay.  Mr. Karotkin, the counsel who just

23  spoke are going to give you consistent language for how we

24  reference the various fires and I don't --

25          MR. KAROTKIN:  Yes, sir.  I think we have it.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  I don't need any further discussion on

2 that.  And so, I'll say okay, then these changes, the two

3 places indicated with the changes to be made on the record will

4 be incorporate and that'll be the -- that'll be the disclosure

5 statement.

6    So I'll go back to what I said before, I will depend

7 upon you and your office to promulgate out what you think is

8 the final of the disclosure and your signal to me, not that you

9 send me signals, but when you upload that order, that's the

10 signal that says you have circulated it and -- and I'm just

11 saying that anyone who wants to be heard, and for some reason

12 believes that I shouldn't sign that order, you can communicate

13 to my courtroom deputy and I'll decide whether to consider that

14 or not.  That's not an invitation to reopen the argument.

15 It's -- again, it's to make sure that the changes that have

16 been made and discussed over the last day and a half are --

17 correctly, you might make an innocent error by forgetting

18 something and someone will call it to your attention and you'll

19 fix it.  That's all.  Okay?

20    MR. KAROTKIN:  Yes, we've already circulated some of

21 the things to counsel already.  And I will note, Your Honor,

22 the proposed order, which we filed last night, has been

23 circulated.  I mean, people have had the opportunity to look at

24 that --

25    THE COURT:  Well, do you want me to sign that ahead of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    time?  Should I sign --

2              MR. KAROTKIN:  No, no, no.

3              THE COURT:  I should sign them all at the same time.

4              MR. KAROTKIN:  There's only one order approving the

5    disclosure statement, as well as everything else.  And I think

6    we need to wait until it's right.

7              THE COURT:  Oh, yeah, that's right.  It is -- it is in

8    the singular.  Yeah, okay.

9              MR. KAROTKIN:  Yes.

10             THE COURT:  Well, it was one of those things where

11   it's in the singular.  Well, no, you know what, though, the --

12             MR. KAROTKIN:  It's one order.

13             THE COURT:  Well, but let me just -- let me make sure

14   the (indiscernible) are the same.  Yeah, well, here's what

15   I've -- and there's a well-known politician who frequently uses

16   the term here's the deal.  So --

17             MR. KAROTKIN:  Do I have an opportunity to say yes or

18   no?

19             THE COURT:  Former Vice President Biden uses the term

20   here's the deal.  So the document called notice of filing, et

21   cetera, is notice of filing of second revised proposed order

22   approving solicitation proceedings.  Period.  The document

23   attached is order approving proposed disclosure statement, et

24   cetera, et cetera: 2, approving forming matter of notice and

25   then goes on to about and so on.  We're not going to get hung

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    up on that.  I'll take your word for it.  It's one order that

2    will then implement all of these things.

3         MR. KAROTKIN:  Yes.

4         THE COURT:  And that's the order that I will look

5    forward to having you upload and I will look forward to signing

6    it.

7         MR. KAROTKIN:  Thank you, sir.

8         THE COURT:  Anyone else?  Okay.  Stay tuned.  I will

9    stay tuned as things develop for the hearing on Monday, based

10   upon what the debtor wants, in terms of whether they're sending

11   opposition or -- and any need for testimony, whether as a

12   matter of court policy, we are going to not have live hearings

13   next week, because that may be what's happening.

14        I'll tell you that since I was here an hour ago, I've

15   been in touch with the judges in San Jose division.  They are

16   going to have no live hearings the next couple weeks.  I'm not

17   sure I'm prepared to get to that point.  But I will do my best

18   to keep people informed via our docket and if I decide that,

19   for all the reasons that I've stated -- and I may have no

20   control over it.  It may be someone else's decision that we are

21   not in a position to have a lot of things, we'll do it all

22   through CourtCall and take it up then.

23        Meanwhile, I hope you all do well.  I'll look forward

24   to either talking to you or seeing you next week.  Thank you.

25        (Whereupon these proceedings were concluded at 4:01 PM)

(973) 406-2250 | operations@escribers.net | www.escribers.net

1    C E R T I F I C A T I O N

2

3    I, Clara Rubin, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8

9

10

11    _____

12    /s/ CLARA RUBIN

13

14    eScribers

15    7227 N. 16th Street, Suite #207

16    Phoenix, AZ 85020

17

18    Date:   March 12, 2020

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**AB (2)**
41:21;42:1
**able (5)**
5:15;25:1;26:17;
34:15;36:16
**Abrams (30)**
28:8,10,15,22,25;
29:4,9,12,15,18;30:1,4,
13,19;31:3,9,17,23;
32:2,5,7;42:2,6,14;
43:2,20;44:4,15,18,21
**Absolutely (5)**
25:15,19;30:13;32:2,
5
**absorb (1)**
23:23
**accept (2)**
38:20;43:17
**acceptable (1)**
34:14
**accepted (1)**
33:17
**accomplish (1)**
35:14
**accrued (6)**
7:5,11,14,22;9:6,7
**acting (1)**
19:4
**active (1)**
23:19
**actual (2)**
11:9;33:5
**actually (4)**
8:1;14:4,11;40:22
**add (3)**
30:13;36:24;41:14
**addition (1)**
33:1
**additional (1)**
5:5
**address (4)**
5:8,13;14:18,21
**adequate (1)**
30:7;31:8
**adjourn (1)**
25:20
**adjustments (1)**
22:11
**administering (1)**
9:7
**administration (1)**
9:3
**administrative (1)**
27:19
**admittedly (1)**
35:6
**Adventist (3)**
24:10;27:6;38:2
**advice (1)**
38:12

**advise (2)**
6:15;25:7
**Affairs (1)**
8:18
**affect (1)**
8:11
**affected (2)**
10:22,24
**afternoon (6)**
4:6,7;28:8,10;33:12;
39:16
**again (22)**
6:4,18;8:21;10:1;
12:22;18:16;21:5,10;
23:8,18;25:2,12,14;
28:9;33:12;41:5;42:2;
43:4,23;44:3,8;45:15
**against (3)**
9:15;24:25;37:1
**agencies (4)**
8:4;10:6,13;23:18
**agency (1)**
12:9,10
**aggregate (2)**
8:20;37:17
**ago (2)**
26:12;47:14
**agree (5)**
6:1;15:24;30:3;
40:16;41:16
**agreed (4)**
15:20,25;25:22;28:5
**agreement (5)**
6:17,24;7:9;12:16;
25:21
**Ah (1)**
4:24
**ahead (2)**
6:13;45:25
**alert (1)**
27:9
**allowed (4)**
7:1;8:20;11:12,23
**almost (1)**
39:8;41:5
**alternative (6)**
32:15;33:25;34:17,
19;35:22;44:7
**Amanda (1)**
39:16
**amended (1)**
14:3
**amongst (1)**
31:10
**amount (2)**
7:1;35:7
**amounts (1)**
11:11
**analysis (4)**
34:7,25;42:18,21
**analyzed (1)**
27:9
**analyzes (1)**

35:11
**analyzing (1)**
43:11
**and-a-half (1)**
11:10
**appearing (1)**
21:19
**appreciate (6)**
14:14;22:15;28:12;
29:12;32:3,7
**approach (2)**
4:21;44:9
**appropriate (2)**
6:15;41:1
**approval (2)**
6:3,20
**approve (1)**
32:13
**approved (3)**
14:3;19:1;44:8
**approving (5)**
19:10;46:4,22,23,24
**April (1)**
25:2
**argument (6)**
22:7;35:10;38:5;
43:23,24;45:14
**arguments (2)**
38:9;44:1
**aside (1)**
27:19
**assembly (2)**
41:20;42:1
**asserted (2)**
9:14,14
**assets (1)**
7:15
**assume (1)**
23:9
**attached (1)**
46:23
**attention (2)**
33:4;45:18
**attractions (1)**
26:13
**attributed (1)**
9:3
**available (3)**
9:5,6;42:22
**avoid (1)**
13:14
**aware (1)**
39:8

## B

**back (8)**
11:4;22:16;23:9;
25:16;28:8;33:7,11;
45:6
**background (1)**
29:20
**balance (2)**

7:23;9:4
**ball (1)**
19:2
**ballot (4)**
4:24;14:11,18;15:1
**balloting (1)**
25:13
**ballots (1)**
33:3
**bankruptcy (2)**
30:21;36:24
**Based (4)**
7:8;42:18;43:3;47:9
**basic (1)**
36:3
**basically (3)**
9:25;27:7;34:7
**Bay (1)**
40:24
**begins (1)**
41:7
**behalf (1)**
24:10
**behind (1)**
27:15
**believes (2)**
15:23;45:12
**below (1)**
39:11
**benchmark (1)**
43:12
**benefit (1)**
36:10
**benefits (1)**
10:13
**best (4)**
12:21;17:23;25:23;
47:17
**better (11)**
22:4;34:15,16,18,22;
35:3,5,12;36:8,8;43:21
**Biden (1)**
46:19
**big (1)**
27:15
**biggest (1)**
27:14
**bill (2)**
41:21;42:1
**billion (4)**
9:2,19;35:21;38:1
**binding (1)**
10:17
**black (1)**
37:3
**blocks (1)**
30:8
**board (1)**
33:21
**bodily (1)**
41:9
**boils (1)**
34:7

**both (6)**
18:8;28:4;32:14;
43:25;44:15,17
**bottom (2)**
30:17;39:24;40:17;
42:21
**bound (1)**
10:8
**Bray (15)**
5:18,20;6:1;15:6;
16:1,8,13,18,25;
17:3,5,7;22:22,25
**break (3)**
26:15;28:2;32:10
**brief (4)**
6:12,21;23:13;32:17
**broad (2)**
15:23;42:25
**budgeting (2)**
27:11;42:18
**bullet (2)**
40:19,21
**burden (6)**
20:8;22:23;25:18;
44:10,12,13
**burdens (1)**
22:13
**business (2)**
4:17;23:9
**Butte (9)**
39:9,9,11,18,20,22,
25;40:6,10

## C

**Cal (18)**
6:25;7:1;8:15,19,20;
10:10,19;11:6,11,13,
15,18;12:3,7,8,9;27:18,
18
**Calaveras (1)**
39:18
**calendar (6)**
4:10;13:8,10;22:11;
23:8;25:3
**calendars (2)**
12:25;25:17
**CALIFORNIA (10)**
4:1;8:1,2,13,14,15,
16,17,17;10:6
**Call (5)**
4:3;17:11;31:15;
33:7;45:18
**called (1)**
46:20
**came (1)**
33:16
**Camp (3)**
39:12,20;40:12
**can (33)**
4:13;5:2;6:1,4,22;
8:1;15:21;16:9;18:11,
20;20:3,12;21:20;

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 49
of 58

24:25;25:20,20,22;
28:14;29:5,6;31:15;
32:4,15;33:1;35:24;
36:4,5,12,14;38:15,16;
42:20;45:12
**cap (2)**
23:15;35:7
**caps (1)**
41:20
**care (1)**
39:13
**carry (3)**
44:10,12,13
**case (9)**
13:18;18:25;19:24;
21:18;31:15;36:4,5,14;
43:18
**cash (3)**
7:14,15;8:25
**cast (1)**
38:15
**casualties (1)**
30:21
**categories (1)**
43:6
**certain (1)**
37:9
**certainly (3)**
6:22;16:21;32:16
**cetera (3)**
46:21,24,24
**chance (1)**
4:12
**change (1)**
14:14
**changes (5)**
32:21;33:17;45:2,3,
15
**channeled (1)**
10:20
**Chapter (3)**
4:9;35:3,6
**checked (1)**
21:3
**chop (3)**
16:22;17:2,8
**circulated (3)**
45:10,20,23
**claim (7)**
7:1;8:20;25:3;27:12;
40:22;43:13,15
**claimant (2)**
38:24;43:17
**claimants (3)**
5:6;24:10;27:3
**claims (8)**
6:8,9,10,11,24;7:25;
8:3,4,4,5,11,19;9:14,
14;10:10,14,20,20,21,
24;11:8,11,13,14,22,
24;27:8;34:7;35:8,12,
13,14;39:25;41:12;
43:7,12

**clarify (1)**
15:8
**class (1)**
5:6
**clear (6)**
8:10;15:10;16:7;
20:7;33:14;40:23
**CLERK (5)**
4:4,8;15:13;20:8;
33:11
**client (2)**
36:3;38:14
**clients (1)**
32:24
**closed (1)**
21:25
**code (1)**
42:10
**coffer (1)**
43:8
**colleagues (1)**
15:21
**comfortable (4)**
21:18;28:2,3;34:4
**coming (3)**
13:5;22:10;26:13
**commit (2)**
24:14;26:17
**committee (3)**
5:8;6:3;16:14
**committees (1)**
23:18
**communicate (4)**
19:3,25;32:18;45:12
**company (1)**
38:3
**comparably (1)**
43:15
**complained (1)**
29:19
**completely (2)**
6:25;9:11
**complex (3)**
13:16,17;23:22
**compliant (2)**
24:18,22
**concerned (5)**
12:24,24;17:5;21:12;
28:15
**concerning (1)**
42:19
**concerns (2)**
14:18,21
**concise (1)**
25:17
**conclude (1)**
33:8
**concluded (1)**
47:25
**confident (1)**
17:19
**confirm (5)**
6:2,5;12:2;16:3;

18:23
**confirmation (6)**
15:15,25;16:12,23;
23:11,24
**confirmed (2)**
10:16;44:12
**confirming (1)**
12:2
**confuse (1)**
11:12
**confusion (1)**
41:3
**consequence (1)**
9:13
**consider (1)**
45:13
**consideration (1)**
42:8
**consistent (4)**
39:13,15;41:2;44:23
**constituents (1)**
13:18
**constructive (1)**
30:25
**contested (2)**
35:1,2
**contexts (1)**
12:3
**contingencies (1)**
10:24
**contingent (2)**
10:12,15
**contract (1)**
30:16
**contrary (1)**
30:6
**control (1)**
47:20
**convened (2)**
20:4,6
**convening (2)**
21:15,16
**copy (1)**
23:5
**core (1)**
31:11
**coronavirus (2)**
23:9;24:2
**Corporation (1)**
4:8
**corrected (1)**
40:15
**corrections (2)**
10:1,3
**correctly (1)**
45:17
**cost (2)**
9:3;42:22
**costs (2)**
9:7;42:23
**counsel (5)**
16:14;18:19;32:12;
44:22;45:21

**country (1)**
12:23
**County (6)**
39:10,18,21,22;
40:10;42:10
**couple (4)**
5:13;39:6,21;47:16
**Court (191)**
4:3,4,6,9,12,20,23;
5:1,11,22;6:12,15,16,
20;7:3,8,10,13,16,18,
20;8:6,9,12;9:10,13,17,
19,22,24;10:3,15,25;
11:2,4,6,15,18,21,25;
12:6,10,12,15,18,21;
13:5,8,10,12,14,25;
14:2,7,10,13,19,22,25;
15:8,10,19;16:1,3,5,17,
24;17:1,4,6,8,18,21,23;
18:1,4,14,25;19:3,9,16,
18,20,22,24;20:6,12,
16,21,24;21:3,5,10,11;
22:3,5,9,16,18,22;23:1,
6;24:6,13,16,20,22;
25:6,9,12,16,20;26:3,
10,14,25;27:4,10,14,
18,22,25;28:7,11,13,
19,23;29:2,7,10,14,18;
30:2,5,18,20;31:6,14,
18,24;32:3,6,8;33:12,
20,24;34:4,5,17,21;
35:1;36:6,18;37:2,4,13,
15,21,22;38:8;39:19,
23;40:4,7,9,13,15,19;
41:2,5,15,18,25;42:5,
13,16;43:4,23;44:17,
20,22;45:1,25;46:3,7,
10,13,19;47:4,8,12
**CourtCall (2)**
31:15;47:22
**courtroom (6)**
19:25;20:1;23:5;
25:8;38:5;45:13
**Court's (1)**
33:11
**cover (1)**
42:25
**CPUC (1)**
29:21
**created (1)**
42:17
**creative (1)**
23:19
**creditors' (1)**
6:2
**crisis (2)**
12:25;32:1
**current (5)**
7:10,20;10:16;20:15;
25:24
**currently (3)**
38:21,23,25
**cut (1)**

41:23

## D

**damages (3)**
37:8,10,20
**danger (1)**
41:10
**data (4)**
40:22;42:22;43:6,14
**date (2)**
25:2,3
**day (5)**
15:11,11;17:22;
18:13;45:16
**days (1)**
23:10
**deadline (2)**
20:17;21:2;22:1;
23:24;28:4
**deal (8)**
18:21;19:12;24:3;
34:15,16,18;46:16,20
**dealing (2)**
24:1;43:6
**death (2)**
41:10,12
**debating (1)**
21:14
**debtor (2)**
20:25;47:10
**debtors (4)**
4:16;9:15;15:24;
33:18
**debtors' (2)**
9:15;31:4
**decide (2)**
45:13;47:18
**decision (8)**
26:19,21;29:24;30:6;
31:8;32:18;33:8;47:20
**decisions (1)**
38:9
**deferred (3)**
15:15,25;16:12
**defined (3)**
8:24,25;40:25
**defines (1)**
12:13
**definitely (1)**
27:10
**definition (2)**
35:6;41:1
**definitive (3)**
6:18,19;12:16
**delaying (1)**
38:18
**deliver (1)**
26:21
**Dennis (1)**
4:5
**Department (6)**
8:2,2,13,15,17,18

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 50
of 58

**depend (1)**
45:6
**deputy (4)**
19:25;20:1;32:10;
45:13
**describes (1)**
34:7
**description (1)**
31:1
**descriptions (1)**
29:20
**designated (1)**
13:3
**detail (1)**
12:19
**detailed (3)**
27:10;29:20;39:25
**determine (1)**
36:25
**deterred (1)**
29:23
**develop (1)**
47:9
**developed (1)**
42:19
**Developmental (1)**
8:2
**developments (1)**
21:12
**dialing (1)**
31:10
**dialogue (1)**
19:5
**different (11)**
9:6;11:7;12:3;16:20;
27:8;30:2;31:4;37:9,
10,11;43:16
**difficult (2)**
29:2;31:11
**disagree (1)**
5:3
**disallowed (1)**
11:23
**disapprove (1)**
32:13
**disclosing (2)**
29:16;34:4
**disclosure (31)**
4:19,22;5:14,24;6:4;
13:15;15:6,22;16:11,
15;18:1,7;19:11;28:21,
23,25;29:8;30:7,8;
31:8;32:25;33:1,6,19;
34:11;38:19;41:1;45:4,
8;46:5,23
**discovery (1)**
38:17
**discuss (1)**
16:10
**discussed (3)**
32:22,22;45:16
**discussion (3)**
23:17;32:9;45:1

**disposition (1)**
15:14
**distinction (1)**
12:1
**distress (2)**
37:9;41:9
**distributed (1)**
34:10
**distribution (2)**
41:8,8
**distributions (2)**
9:16;27:2
**district (1)**
21:14
**division (1)**
47:15
**docket (2)**
32:17;47:18
**document (12)**
9:12;18:12;26:22;
29:25;30:24;32:17,20;
33:2,18;42:13;46:20,
22
**documentation (1)**
6:19
**documented (1)**
10:9
**documents (3)**
23:22;25:25;33:4
**dollars (9)**
7:2;8:21;10:11;
31:22;35:21;36:15;
38:1;43:14,16
**dollars' (1)**
9:2
**done (3)**
18:20;26:1,17
**door (1)**
20:9
**down (7)**
14:5;18:16;29:11;
34:8;35:11;38:14;
39:10
**draft (5)**
5:14;14:5;39:7;
42:13,14
**drafted (3)**
5:8;10:9;17:11
**drafters (1)**
30:10
**drafts (1)**
33:13
**duplication (1)**
10:13

**E**

**earlier (2)**
32:10;33:5
**early (1)**
13:6
**earned (1)**
7:15

**easy (1)**
29:5
**edit (1)**
33:25
**edits (1)**
34:2
**effort (1)**
25:17
**efforts (1)**
11:9
**eight (7)**
23:10
**eighty- (1)**
8:20
**eighty-two (1)**
39:1
**either (7)**
18:9;28:5;32:11,14,
22;38:16;47:24
**else (13)**
15:7;20:8;21:11;
22:19,21,23;25:22;
26:16;35:15;40:25;
44:4;46:5;47:8
**else's (1)**
47:20
**email (1)**
19:25
**emailed (1)**
23:4
**embarrassed (1)**
41:6
**Emergency (1)**
8:15
**emotional (2)**
37:9;41:9
**end (2)**
4:18;15:11
**end-dollar (1)**
43:22
**ending (3)**
7:22,23;8:23
**enormously (2)**
13:16,17
**enough (2)**
20:3;34:14
**enter (1)**
18:12
**entire (1)**
12:23
**entities (1)**
27:22
**entitled (1)**
34:12
**entity (1)**
11:16
**error (1)**
45:17
**establish (1)**
21:20
**estates (1)**
9:15
**estimates (4)**

27:11;41:8,8;42:19
**estimation (4)**
25:3;27:6;36:16;
42:9
**estimations (1)**
27:4
**et (3)**
46:20,23,24
**evaluated (1)**
27:12
**even (7)**
8:6,7;15:12;31:25;
34:13;37:20;43:15
**event (2)**
12:18;18:10
**everybody (10)**
12:23;16:5;19:4;
20:4,8;21:11,24;25:18;
26:7;41:25
**everybody's (1)**
37:8
**everyone (4)**
18:11;19:24;31:15;
35:13
**everything's (1)**
26:1
**evidence (1)**
44:8
**evil (1)**
13:15
**Exactly (3)**
9:25;20:5,11
**except (2)**
39:2,3
**excess (3)**
8:24;9:2,5
**excluding (1)**
8:19
**exculpation (2)**
15:18,23
**excuse (1)**
27:14
**exhibits (1)**
14:25
**expect (4)**
23:21;36:4,5;37:15
**expectation (1)**
18:10
**expeditiously (1)**
26:22
**expenses (1)**
27:19
**experience (4)**
30:20,21,24;35:13
**explain (1)**
36:23
**expressed (1)**
43:25
**extensive (1)**
33:2
**extremely (1)**
33:2

**F**

**fact (2)**
41:11;44:6
**far (2)**
17:5;22:14
**federal (2)**
10:12;21:11
**fee (2)**
31:16,22
**feedback (1)**
18:19
**feel (6)**
5:3;21:18,22;29:4,
24;34:4
**Feelings (1)**
4:11
**fees (1)**
31:13
**Felderstein (1)**
10:5
**fellow (1)**
21:13
**FEMA (5)**
6:8,10;10:14,14;
27:18
**few (3)**
26:23;33:9;39:10
**fifteen- (1)**
26:14
**fifteen-minute (1)**
32:9
**fifty-page (2)**
23:13;30:24
**figure (3)**
26:18;37:11,20
**file (6)**
14:17;18:7;23:13;
25:9;36:11;40:22
**filed (6)**
6:25;8:5;9:12;14:10;
20:20;45:22
**filing (4)**
14:13;25:13;46:20,
21
**filings (1)**
13:16
**final (6)**
18:8;19:10,12;26:19;
33:5;45:8
**finalize (1)**
5:14
**financing (1)**
20:15
**find (2)**
29:13;30:15
**finding (1)**
34:23
**fine (3)**
14:2;15:3;16:19
**fire (36)**
5:6;7:1;8:3,3,5,14,

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 51
of 58

19;10:10,20,20;11:6,7,
11,13,14,15,18;12:3,8,
9;27:3,20,22,23;35:18;
39:11,17,18,20,22,25;
40:1,2,6,10,12
**fires (10)**
11:9;12:12;35:19;
39:9,10,21;40:23,24;
43:8;44:24
**fire-victim (2)**
7:5;8:21
**firm (1)**
19:11
**first (8)**
4:17;7:21;8:22;
30:17;39:7,24;40:19,
21
**fit (1)**
19:3
**fits (1)**
43:12
**Fitzgerald (1)**
10:5
**five (1)**
40:17
**fix (2)**
35:12;45:19
**flagged (1)**
16:11
**flawed (1)**
44:6
**flexible (1)**
24:24
**folks (1)**
31:11
**foot (1)**
42:9
**Forestry (1)**
8:14
**forget (1)**
23:8
**forgetting (2)**
26:15;45:17
**forgot (1)**
21:1
**form (3)**
10:16;19:1;20:1
**formal (1)**
38:17
**formality (1)**
18:15
**Former (1)**
46:19
**forming (1)**
46:24
**formula (1)**
43:21
**forth (1)**
7:7
**forward (4)**
10:18;47:5,5,23
**frame (2)**
4:25;13:12

**FRANCISCO (1)**
4:1
**frankly (1)**
38:2
**free (2)**
5:3;30:5
**frequently (1)**
46:15
**Friday (4)**
18:17;20:17;21:3,5
**friendly (1)**
15:2
**front (1)**
30:14
**Fulbright (1)**
24:10
**full-pay (2)**
35:4,5
**fully (1)**
7:7
**fund (5)**
8:6;11:7,10;27:16,19
**furnished (1)**
5:9
**further (3)**
22:10;32:8;33:8;
41:22;45:1

**G**

**gatherings (1)**
21:25
**gave (1)**
14:1
**general (4)**
10:10,21;11:21,22
**generically (1)**
12:12
**gets (1)**
35:12
**gist (2)**
10:7,10
**given (2)**
28:16;31:9
**giving (1)**
30:24
**goes (2)**
27:7;46:25
**Good (12)**
4:6,7,14,25;15:3;
20:2;28:8,10;33:12;
35:9;39:16;43:3
**gorillas (1)**
27:16
**Gotshal (1)**
4:15
**governmental (1)**
23:18
**Governor's (2)**
8:14;20:20
**great (2)**
24:3;27:15
**Green (26)**

17:10;23:1;25:21;
26:24,25;27:1,5,17,21,
24;28:6;33:14,16;36:7,
18,22;37:3,5,14,18;
38:19;40:16,18;41:16,
17;44:1
**Gregory (1)**
16:13
**guess (3)**
4:17;26:5;35:9
**guidelines (1)**
34:12

**H**

**half (1)**
45:16
**hand (1)**
43:10
**handed (5)**
23:5;24:11,17;26:12;
39:7
**hang (1)**
43:18
**happen (3)**
20:13;23:20,25
**happening (2)**
29:20;47:13
**happily (1)**
35:19
**happy (3)**
23:2;24:12;26:11
**hard (1)**
23:5
**hate (2)**
18:6;44:8
**hear (1)**
32:11
**heard (7)**
11:8;24:7;28:14,14;
29:18;42:3;45:11
**hearing (14)**
4:18;19:14;20:23;
21:16,23;23:10,11,15,
16,24;25:21;31:10;
32:22;47:9
**hearings (4)**
13:2;22:10;47:12,16
**held (1)**
7:15
**help (1)**
26:13
**helpful (1)**
26:9
**here's (3)**
46:14,16,20
**himself (1)**
6:2
**historically (1)**
43:14
**hold (1)**
6:3
**home (2)**

21:21,23
**homes (1)**
42:8
**honest (1)**
37:22
**Honey (1)**
39:22
**Honor (26)**
4:7;6:8;10:4,7;16:2,
13;22:25;24:5,9,18;
25:5,19;26:2,4;28:10;
29:1,9,12;33:16,23;
34:2;36:2;39:16;42:4,
6;45:21
**Honorable (1)**
4:5
**hope (2)**
18:10;47:23
**hopeful (2)**
20:18,22
**hopefully (4)**
5:16;14:20;18:12;
38:10
**horribly (1)**
29:2,5
**hospitals (1)**
27:23
**hour (1)**
47:14
**hours (1)**
5:17
**house (1)**
35:4
**hung (1)**
46:25
**hypothetical (1)**
36:25

**I**

**idea (1)**
9:23
**implement (1)**
47:2
**implications (1)**
28:18
**important (1)**
10:19
**impose (1)**
26:7
**imposition (1)**
22:9;25:13
**impossible (1)**
37:20
**inclined (1)**
19:2
**include (2)**
15:21;35:13
**included (2)**
33:17,19
**includes (2)**
10:13;40:12
**including (3)**

30:10;36:15;43:6
**incorporate (1)**
45:4
**incorporated (1)**
32:25
**indicated (1)**
45:3
**indication (2)**
26:9;31:1
**Indiscernible (3)**
33:12;34:22;46:14
**individual (1)**
37:16
**inflated (1)**
35:14
**influence (1)**
35:25
**informal (1)**
38:17
**information (9)**
5:5;36:3,10,24;
38:16;39:25;42:25;
43:7;44:5
**informed (3)**
29:22;31:8;47:18
**initial (1)**
41:20
**injury (1)**
41:9
**innocent (1)**
45:17
**inserted (2)**
32:13,20
**insist (1)**
30:9
**instances (1)**
30:23
**instructions (2)**
19:9;24:21
**insurance (2)**
40:22;43:7
**intellectually (1)**
37:22
**intend (4)**
22:7;23:24;32:11,15
**intention (2)**
19:10;32:19
**interest (9)**
7:5,11,14,14,22;9:5,
6,7,7
**interrupt (1)**
39:23
**interruptions (1)**
23:10
**into (6)**
26:22;27:12;31:10;
32:20,25;43:8
**investor (1)**
36:25
**invitation (1)**
45:14
**invite (1)**
10:2

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 52
of 58

**involved (2)**
29:22;39:14
**involvement (1)**
23:19
**involving (2)**
18:25;30:22
**issue (13)**
5:4,5,9,18,20;6:4;
15:5,14;23:7;26:6;
27:1;31:9;38:13
**issues (6)**
5:13;11:1;15:5;
17:12,13;19:19
**items (1)**
34:1

## J

**job (2)**
31:7;37:10
**joke (5)**
7:18;29:13,14,15,17
**Jose (1)**
47:15
**Judge (1)**
26:24
**judges (3)**
21:13,14;47:15
**judgment (2)**
12:21;17:23
**juries (1)**
21:15

## K

**Karotkin (105)**
4:9,11,14,15,21;5:1,
12,23;6:14,17;7:4,9,12,
14,17,19,21;8:8,10,13;
9:11,18,21,23,25;10:7,
23;11:13,17,19,22;
12:1,5,7,9,14,17,19;
13:4,7,9,11,13,21,23;
14:1,4,9,12,16,20,24;
15:4,9,16,20;16:18;
17:12,16,19,22,25;
18:3,5,22;19:8,15,17,
19,21,23;20:2,5,11,15,
18,22;21:1,4,7;22:1,4,
8,15,17,19;23:6;25:22,
25;26:4,22;30:10;
32:19;33:13,16;44:22,
25;45:20;46:2,4,9,12,
17;47:3,7
**Karotkin's (2)**
29:7;39:7
**keep (1)**
47:18
**kind (1)**
43:24
**known (1)**
44:18
**knows (3)**

19:24;35:13;42:1

## L

**Laffredi (3)**
16:1,2,4
**language (19)**
5:8,22,23,24;23:2;
24:8;25:22;27:2,7,10;
28:5;32:11,13,15,20;
38:13,23;39:13;44:23
**large (1)**
21:25
**largely (1)**
5:4
**last (7)**
14:10,17;41:18,20;
42:17;45:16,22
**last-minute (1)**
13:16
**later (5)**
18:5;32:15,16;33:5;
37:25
**law (4)**
15:13;19:11;37:3;
44:11
**lawyer (2)**
21:18;44:9
**lawyers (4)**
18:25;19:3;32:24;
36:24
**least (3)**
26:8;36:16;44:13
**leave (2)**
13:21;28:7
**leaving (1)**
27:19
**left (1)**
4:13
**legal (3)**
30:24;34:19,21
**length (2)**
4:19;33:1
**less (4)**
9:3,7;25:18;30:11
**lesser (1)**
40:20
**letter (1)**
37:3
**level (1)**
43:19
**likely (2)**
13:5,13
**line (1)**
39:24
**lines (2)**
39:10;40:17
**liquidation (2)**
34:25;35:4
**list (2)**
29:10;36:11
**listen (1)**
17:15

**listening (1)**
31:19
**literally (2)**
24:11;26:12
**little (6)**
9:6;15:13;31:4;
42:17,24;44:19
**live (4)**
22:6,7;47:12,16
**LLP (1)**
16:13
**logistical (1)**
20:8
**long (3)**
15:11;31:14;42:11
**longer (4)**
13:23;14:2;27:16;
30:22
**look (13)**
5:12;17:10;23:8;
26:8,11;35:20;42:12,
20;43:22;45:23;47:4,5,
23
**looked (2)**
14:22;28:17
**looking (2)**
25:25;30:16
**looks (1)**
15:1
**loss (1)**
27:23
**lot (5)**
16:6,22;30:20;43:6;
47:21
**lots (1)**
31:19
**lunch (1)**
21:13

## M

**magically (1)**
35:24
**makes (2)**
35:12;41:20
**making (8)**
7:18;25:17;29:24;
35:15;38:5,9;43:23,24
**managed (1)**
23:1
**Manges (1)**
4:15
**many (2)**
31:10,19
**MARCH (1)**
4:1
**market (1)**
7:10
**marketplace (1)**
7:20
**mass (1)**
30:21
**matched (1)**

13:1
**Matter (6)**
4:8;30:25;34:21;
44:11;46:24;47:12
**may (8)**
5:24;26:24;31:9,13;
37:16;47:13,19,20
**maybe (8)**
13:16;15:10;17:9,11;
23:16,16;26:14;35:22
**mean (17)**
21:21;22:24;25:9;
26:6,19;28:19,20;
31:22;34:23;35:3,24;
36:20,20;40:2;41:25;
42:16;45:23
**meanings (1)**
12:3
**means (1)**
39:25
**Meanwhile (1)**
47:23
**measure (1)**
43:11
**mention (1)**
14:16
**mentioned (2)**
6:7,20
**microphone (1)**
16:9
**middle (1)**
41:7
**might (9)**
7:11;21:21;22:11;
31:4;37:17;42:12;
43:16,17;45:17
**might've (2)**
37:10,10
**Milbank (1)**
16:13
**million (6)**
7:1,21;8:21,22;9:4;
10:11
**millions (1)**
36:15
**mind (1)**
38:8
**mindful (1)**
22:12
**minimal (1)**
25:13
**minor (1)**
39:6
**minute (3)**
11:4;17:11;26:15
**minutes (4)**
16:7;26:12,23;33:9
**miss (1)**
4:9
**mistakes (1)**
6:23
**modest (2)**
31:16,22

**Monday (10)**
18:9,11,18;19:14,23;
20:6;13;23:16;33:5;
47:9
**monetization (4)**
8:24,25;9:2,5
**money (3)**
30:23;37:6,25
**monies (1)**
34:10
**Montali (1)**
4:5
**moot (2)**
25:4,5
**more (29)**
7:7;12:25;13:13,19;
15:1;18:19;19:2;20:12;
23:19;24:6;25:13,17;
26:11;30:12;31:25;
35:8,15,24;36:10;
37:22;38:16,20;39:3;
40:10,23;41:18;42:24;
43:15;44:19
**morning (2)**
18:18;32:16
**motion (1)**
9:12
**moving (1)**
30:14
**much (2)**
14:5;26:7
**mutual (1)**
4:11;9:18
**myself (1)**
31:12

## N

**name (1)**
11:15
**Napa (1)**
40:24
**near (1)**
13:17
**necessary (5)**
13:15,20;20:3;21:19;
22:6
**need (10)**
17:15;18:14,23;25:8;
35:23;36:24;40:22;
45:1;46:6;47:11
**negative (1)**
7:11
**negotiations (1)**
34:3
**neither (1)**
11:23
**net (1)**
8:25
**new (2)**
4:21;18:7
**news (1)**
15:3

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 53
of 58

**next (10)**
5:16;17:22;21:15,16;
23:15;33:9;43:19;
47:13,16,24
**night (3)**
14:11,17;45:22
**nine (2)**
8:21;23:10
**ninety-three (1)**
39:2
**nitpick (2)**
41:19,19
**non-fire (1)**
10:23
**North (1)**
40:24
**Norton (1)**
24:10
**note (2)**
10:19;45:21
**noted (1)**
10:23
**notes (1)**
15:12
**notice (6)**
23:22,23;25:11;
46:20,21,24
**nowhere (1)**
13:17
**nuisance (1)**
41:9
**number (4)**
7:11;15:2;31:12;
40:20

**O**

**object (1)**
16:15
**objection (6)**
20:19,20,24;21:2,8;
22:1
**objections (2)**
20:17;28:16
**obligated (1)**
31:25
**obliged (1)**
21:22
**obvious (1)**
21:10
**obviously (6)**
5:3,10;10:8;14:22;
39:4;41:11
**o'clock (1)**
22:2
**OES (4)**
6:25;8:15,20;27:18
**off (4)**
18:12,24;23:25;
29:23
**offer (2)**
27:7;33:25
**Office (3)**

8:14;20:20;45:7
**officially (1)**
25:7
**offset (1)**
9:19
**one (22)**
6:12;12:10;13:2;
21:12;23:11;26:20;
29:11;30:25;31:9;39:7,
17,22;40:10,16;41:5,
19;42:6,7;46:4,10,12;
47:1
**one-line (1)**
25:9
**ones (1)**
19:4
**online (1)**
30:16
**only (8)**
8:21;13:18;20:19;
21:15;23:12;40:12,23;
46:4
**oOo- (1)**
4:2
**open (1)**
17:13
**openly (1)**
32:23
**opponents (1)**
38:12
**opportunity (3)**
17:10;45:23;46:17
**opposition (1)**
47:11
**order (25)**
4:3,17;5:14;14:17,
22;17:14;18:4,12;19:6,
10;20:2;26:1;33:6;
36:9,12;37:15;45:9,12,
22;46:4,12,21,23;47:1,
4
**organization (1)**
11:7
**others (5)**
15:11;17:10;22:13;
32:23;44:5
**out (18)**
9:10,11,24;11:10;
12:16;16:16;17:20;
20:9;26:18;30:15;
32:23;37:11,20;41:23,
25;42:21;44:19;45:7
**outcome (2)**
44:6,7
**outstanding (4)**
5:7;19:19;20:19;
27:1
**over (12)**
6:4;7:6,22,23;8:22,
23;14:22;18:6,6;20:9;
45:16;47:20
**owed (1)**
43:14

**own (3)**
17:14,17;19:9

**P**

**page (6)**
23:13;30:14;39:24;
41:6,7;42:21
**pages (1)**
29:19
**paid (6)**
7:6,22,24;8:23;
11:10;38:24
**pain (1)**
41:9
**paper (2)**
13:24;31:1
**papers (1)**
25:10
**paragraph (3)**
29:11;41:7,20
**parenthesis (1)**
41:21
**Parks (1)**
8:16
**participating (1)**
27:16
**particular (1)**
43:12
**particularly (1)**
22:12
**parties (6)**
6:17;18:23;25:25;
28:17;31:5,12
**party (3)**
20:25;28:11;33:21
**Pascuzzi (12)**
6:21;10:1,3,4,4,5;
11:1,3,5;12:2,8,11
**passing (1)**
6:12
**Paul (1)**
10:4
**pay (3)**
31:16,21;43:12
**payable (3)**
7:4;8:21;9:5
**payments (1)**
43:7
**payout (2)**
9:22,24
**people (23)**
5:2;15:2;21:22,25;
22:10;27:22;29:21;
30:16,22;31:19;34:12,
15;37:5,9,14,19;38:3,9,
12;39:14;44:1;45:23;
47:18
**per (3)**
42:9,10,10
**percent (8)**
35:25;39:1,1,2,2,3;
43:2,5

**percentage (2)**
34:9,10
**percentages (1)**
27:9
**perception (1)**
34:21
**perfect (2)**
31:20;39:4
**perfectly (1)**
15:10
**performed (1)**
42:18
**period (4)**
7:7;8:22;20:9;46:22
**person (2)**
18:9;37:16
**personal (1)**
35:2
**personally (2)**
18:17;39:14
**persuasive (1)**
43:17
**PG&E (3)**
4:8;9:1;21:16
**phone (11)**
6:22;18:9;21:19,20,
21,21;31:12,16,18,19;
32:6
**phony (1)**
35:14
**phrase (1)**
41:15
**pick (2)**
13:2;16:7
**piece (2)**
13:24;31:1
**piling (1)**
37:19
**pinning (1)**
18:16
**places (1)**
45:3
**plain (1)**
38:17
**plaintiffs (1)**
38:4
**plan (21)**
5:15;9:16;10:11,16,
21;11:3,20;12:13;14:3;
15:24;18:7,7;34:18;
35:2,4,5;37:1,24,24;
44:11,12
**plate (1)**
16:6
**play (1)**
6:6
**players (1)**
23:17
**please (2)**
10:2;23:17
**pleased (1)**
15:1
**plural (1)**

39:10
**plus (2)**
43:7,7
**PM (4)**
4:1;33:10,10;47:25
**point (14)**
11:23;17:1;19:14;
23:7;29:16;30:2;31:24;
40:19,21;41:18;42:21;
44:3,13;47:17
**pointed (1)**
30:8
**points (1)**
39:6
**policy (1)**
47:12
**politician (1)**
46:15
**position (3)**
18:16;34:6;47:21
**position's (1)**
22:23
**possible (5)**
26:4;35:17;38:21,23,
25
**possibly (1)**
26:6
**potential (2)**
5:6;42:19
**potentially (1)**
37:7
**practice (1)**
35:10
**precise (2)**
35:8,15
**predict (6)**
21:8;35:17,24;36:14;
38:24,25
**prefer (1)**
18:21
**preferable (1)**
44:11
**preliminary (1)**
42:18
**prepared (1)**
47:17
**preparing (1)**
36:15
**preserve (1)**
16:21
**preserved (1)**
22:24
**President (1)**
46:19
**presiding (1)**
4:5
**presumably (1)**
19:21
**presume (3)**
11:21;13:2;43:10
**pretty (2)**
13:6;42:25
**preview (2)**

Case: 19-30088    Doc# 6267    Filed 03/12/20    Entered: 03/12/20 13:53:26    Page 54
of 58

20:12;26:13
**price (1)**
  42:9
**Prime (1)**
  20:8
**principal (4)**
  13:18;23:17;30:10;
  32:12
**principally (1)**
  30:10
**principle (2)**
  6:18,24
**prior (1)**
  20:20
**probably (5)**
  14:5;19:12;24:23;
  32:15;40:25
**problem (4)**
  20:1;24:2,3;35:19
**problems (1)**
  24:24
**proceedings (2)**
  46:22;47:25
**proceeds (1)**
  8:25
**process (6)**
  34:7;37:6,23;38:6,
  19;43:19
**professionals (3)**
  36:15;38:20;43:11
**projection (1)**
  44:6
**promptly (1)**
  24:12
**promulgate (1)**
  45:7
**proof (1)**
  44:8
**property (1)**
  42:22
**proponents (2)**
  15:24;44:10
**proposal (1)**
  28:1
**propose (1)**
  34:2
**proposed (3)**
  45:22;46:21,23
**Protection (1)**
  8:14
**prove (2)**
  35:2;44:10
**provide (3)**
  27:6;32:16;36:16
**provided (3)**
  27:7;42:15;43:21
**proving (1)**
  33:6
**provisions (2)**
  11:20;15:23
**publicly (1)**
  42:22
**published (2)**

31:14;42:23
**purposes (1)**
  25:14
**put (11)**
  5:24;6:7;16:18;
  17:14;19:2,18;23:14,
  21;26:22;36:24;40:4
**putting (1)**
  30:1

**Q**

**quantify (1)**
  44:2
**quantities (1)**
  44:18
**quick (1)**
  42:6
**quite (1)**
  27:5
**quotes (1)**
  41:21
**quote-unquote (1)**
  11:14

**R**

**raise (1)**
  23:6
**raised (6)**
  5:20;14:18;15:5,14;
  16:22;19:23
**range (5)**
  34:13;36:13,17;
  42:25;43:22
**ranges (1)**
  42:20
**rather (3)**
  29:23;37:16,25
**reach (1)**
  25:21
**read (3)**
  28:23;29:24;42:13
**reading (1)**
  28:25
**reads (1)**
  38:23
**ready (4)**
  17:7,7;32:10,11
**real (1)**
  18:2
**realistic (1)**
  38:21
**really (3)**
  18:14;37:23;43:13
**reason (2)**
  22:6;45:11
**reasonable (1)**
  43:13
**reasons (1)**
  47:19
**Rebecca (1)**
  24:9

rebuilding (1)
  42:23
**received (1)**
  42:14
**recess (3)**
  25:20;26:8;33:10
**recognize (1)**
  24:25
**recommending (1)**
  33:19
**reconstruction (1)**
  42:23
**record (5)**
  6:7,10;10:9;24:15;
  45:3
**recoveries (3)**
  5:6;34:13;36:17
**recovery (7)**
  11:9;34:9,10;36:13;
  42:19;43:3,5
**Recreation (1)**
  8:16
**reference (5)**
  39:9,12;41:20,22;
  44:24
**referring (1)**
  11:6
**reflect (2)**
  13:19;24:7
**regarding (1)**
  29:6
**regionally (1)**
  43:15
**reject (1)**
  43:18
**rejected (1)**
  34:3
**relate (1)**
  11:8
**related (2)**
  27:2;33:3
**relatively (2)**
  17:19;26:5
**release (5)**
  5:22,22,23;10:13;
  15:23
**releases (2)**
  9:18;15:17
**rely (1)**
  44:1
**remarks (1)**
  4:18
**remedy (1)**
  42:7
**remember (1)**
  39:19
**reopen (1)**
  45:14
**reorganized (1)**
  9:1
**reply (1)**
  23:13
**represent (1)**

38:4
**representing (1)**
  42:22
**require (1)**
  21:9
**requirement (1)**
  35:2
**re-read (1)**
  19:13
**reserve (1)**
  16:21
**resolve (1)**
  5:16
**resolved (9)**
  5:4,21;6:8,10,11;
  15:7,16;17:11;20:22
**respect (2)**
  5:5;43:25
**response (1)**
  21:15
**result (2)**
  37:17;43:16
**review (2)**
  24:12;33:14
**reviewing (1)**
  23:3
**revised (6)**
  14:17,17;18:7,7;
  29:7;46:21
**RIDDLE (14)**
  39:16,17,20;40:2,6,8,
  11,14,21;41:4,13,23;
  42:4,5
**Right (35)**
  4:20;8:9,12;10:18;
  11:15,18;12:6;13:22;
  14:19;20:10,21;22:1;
  24:15;26:16;27:5;31:3,
  18,20;32:8;34:19;37:2,
  2,3,4,18,24;39:14,19,
  19;40:3,12;41:4,24;
  46:6,7
**rights (1)**
  16:22
**Rios (1)**
  10:5
**rise (1)**
  4:4
**risk (2)**
  10:24;38:18
**risks (3)**
  29:16;30:15,17
**room (1)**
  5:2
**Rose (1)**
  24:10
**round (1)**
  38:15
**rule (1)**
  28:13
**rust (1)**
  7:15

**S**

**same (7)**
  12:15;16:8;38:25;
  43:23,24;46:3,14
**SAN (2)**
  4:1;47:15
**satisfied (1)**
  19:6
**satisfy (1)**
  31:7
**Saturday (1)**
  18:17
**saw (1)**
  14:10
**saying (5)**
  30:14;36:4,24;44:2;
  45:11
**schedule (1)**
  21:6
**second (4)**
  7:6;41:6;42:21;
  46:21
**seeing (1)**
  47:24
**seems (1)**
  42:24
**send (1)**
  45:9
**sending (1)**
  47:10
**sense (2)**
  35:12;43:21
**sentence (1)**
  16:18
**separately (1)**
  32:23
**serious (1)**
  41:11
**Services (2)**
  8:2,15
**session (2)**
  4:4;33:11
**set (1)**
  7:7
**settled (1)**
  10:11
**settlement (6)**
  9:20;10:12,17,22;
  34:3;42:12
**seventy-eight (1)**
  39:1
**seventy-page (1)**
  29:24
**several (2)**
  8:22;41:13
**shakes (1)**
  35:11
**share (1)**
  35:21
**sheet (1)**
  10:9

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 55
of 58

**short (6)**
14:11;21:6;23:22,23;
26:7;28:2
**sic (2)**
24:11,19
**side (3)**
26:20,21;30:11
**sides (2)**
44:15,17
**sign (8)**
18:11;19:1,13;30:16;
45:12,25;46:1,3
**signal (3)**
18:20;45:8,10
**signals (1)**
45:9
**signed (1)**
18:24
**significant (2)**
14:14;26:5
**significantly (1)**
14:5
**signing (3)**
18:4;30:17;47:5
**simple (2)**
18:25;37:3
**simplify (2)**
31:25;32:1
**simply (1)**
15:12
**single (1)**
21:18
**singular (4)**
39:11,25;46:8,11
**sitting (1)**
38:4
**situation (3)**
7:10;16:20;31:10
**situations (1)**
23:12
**sixty (1)**
8:22
**slightly (2)**
13:23;14:2
**small (1)**
39:21
**smoothly (1)**
23:20
**so-called (1)**
19:10
**solely (2)**
7:5;8:23
**solicitation (1)**
46:22
**solution (1)**
23:14
**solve (1)**
24:23
**somebody (2)**
23:12;35:11
**somebody's (1)**
23:13
**someone (5)**

**sometimes (1)**
35:13
**Somewhere (2)**
13:12;40:25
**Sonoma (1)**
40:23
**soon (2)**
13:6;17:9
**sooner (1)**
37:25
**sophisticated (1)**
38:3
**Sorry (3)**
11:5;26:4;42:6
**sort (3)**
6:6;16:20;17:12
**sound (1)**
44:8
**specific (2)**
38:20,24
**specifically (1)**
30:8
**spelled (3)**
9:10,11;44:19
**spoke (1)**
44:23
**square (1)**
42:9
**staff (2)**
18:17;19:9
**standing (1)**
42:2
**state (5)**
6:6;8:4,16;10:6;
12:16
**state-agency (4)**
6:9,11;7:25;8:19
**stated (2)**
22:24;47:19
**statement (30)**
4:19,22;5:15,25;6:4;
13:15;15:22;16:11,15;
18:2,8;19:11;21:11;
28:20,21,24;29:1,8;
30:9;32:25;33:2,6,19;
34:11;38:21,22;41:1;
45:5;46:5,23
**statements (1)**
6:9
**status (1)**
23:10
**statute (3)**
31:7,8;34:23
**stay (3)**
16:9;47:8,9
**Steven (1)**
4:15
**stick (3)**
28:1;30:12;39:4
**still (5)**
5:7;20:13,13;23:3;

24:2
**stock (2)**
8:25;9:3
**streamlining (6)**
28:16,17,20;29:5,15;
31:4
**structure (1)**
25:24
**struggling (1)**
35:9
**stuff (2)**
16:7;23:23
**subject (4)**
6:18,19;24:7,8
**submit (3)**
26:18;28:5;32:14
**submitting (1)**
20:2
**Substances (1)**
8:3
**substantially (1)**
10:16
**suffered (1)**
27:23
**suffering (1)**
41:9
**suggested (1)**
5:25
**suggesting (1)**
36:17
**suggestion (1)**
42:7
**suggests (2)**
43:14;44:7
**summary (2)**
6:21,23
**Sunday (1)**
18:18
**super- (1)**
38:2
**Sure (13)**
6:16;12:1,25;13:17;
16:6,25;24:18;27:5;
31:24;39:12;45:15;
46:13;47:17
**surplus (3)**
9:24,25;11:10
**surprise (2)**
12:23;19:12
**Suspend (1)**
35:11
**system (1)**
39:4

**T**

**talked (3)**
15:12;29:19;39:8
**talking (7)**
10:14;21:13;25:16;
27:11;40:16;42:17;
47:24
**TCC (6)**

5:14;15:5;17:13,13;
33:18;35:15
**tedious (1)**
29:3
**tee (1)**
12:22
**telling (4)**
21:24;35:16;37:7,14
**tells (1)**
32:10
**tens (1)**
30:22
**term (6)**
8:24;10:9;11:6,7;
46:16,19
**terminology (3)**
39:8,15,15
**terms (3)**
18:1;44:10;47:10
**testimony (5)**
20:16,23;21:9;22:6;
47:11
**Thanks (1)**
33:9
**that'll (2)**
45:4,4
**that're (1)**
21:15
**theirs (1)**
38:7
**theory (1)**
35:10
**thereafter (1)**
7:24
**therefore (1)**
27:18
**there'll (1)**
9:18
**There're (1)**
11:13
**thinking (2)**
23:15;43:2
**thirteen- (1)**
11:9
**thirteen-and-a-half (1)**
35:21
**though (1)**
46:11
**thought (1)**
16:5
**thousands (3)**
30:22;38:4,4
**three (3)**
19:1,1;40:17
**throughout (1)**
32:22
**timing (2)**
12:22;17:23
**to-date (1)**
42:18
**today (9)**
16:10;17:2;21:13;
22:20,21,23;24:15;

26:16;32:15
**together (3)**
23:21;33:4;37:19
**told (2)**
14:7;22:1
**tomorrow (2)**
22:2;32:16
**took (2)**
14:25;27:6
**tort (1)**
5:7
**touch (2)**
4:23;47:15
**tough (1)**
43:18
**Toxic (1)**
8:3
**traditional (1)**
13:19
**translating (1)**
43:5
**transparent (1)**
29:6
**Transportation (1)**
8:17
**trauma (1)**
37:11
**travel (3)**
22:13,14,14
**treated (1)**
11:19
**trial (2)**
34:24;35:1
**trimmed (1)**
14:5
**trust (12)**
7:5;8:7,22;9:1,4,8;
10:10,21;15:6;27:2;
35:7;40:12
**Trustee (5)**
15:14,22,25;17:9;
43:10
**Trustee's (1)**
34:12
**try (4)**
5:1,8;35:15;38:20
**trying (7)**
12:25;13:14;24:18;
30:13;31:25,25;35:17
**tuned (2)**
47:8,9
**turned (2)**
29:23,23
**TV (1)**
4:12
**twenty (1)**
29:19
**twenty- (1)**
23:12
**twenty-five (1)**
31:21
**twenty-four (1)**
5:16

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(8) short - twenty-four
Page 56

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 56
of 58

**twenty-nine (1)**
9:4
**two (12)**
12:3;17:22;18:25;
19:1;23:18;26:12;
27:15;32:12;40:16;
42:24;43:6;45:2
**types (1)**
27:8
**typical (1)**
43:15

**U**

**ultimately (1)**
44:3
**uncertainty (1)**
35:7
**unclear (1)**
15:13
**uncomfortable (1)**
28:4
**Under (5)**
6:24;9:16;10:11,21;
11:19
**understood (1)**
42:8
**Unfortunately (2)**
23:4;29:4
**UNISON (1)**
4:7
**University (1)**
8:16
**unknown (2)**
34:18,19
**unknowns (2)**
44:15,17
**unless (1)**
26:15
**unrelated (1)**
42:24
**unsecured (4)**
6:2;10:21;11:21,22
**up (16)**
5:19;6:3;11:4;12:22;
13:1,5;16:7;20:3;
22:10;24:25;27:7;
30:11;39:7;43:11;47:1,
22
**update (1)**
5:1
**upload (5)**
18:20;19:6;26:1;
45:9;47:5
**uploaded (3)**
19:11;20:2;33:7
**upon (4)**
7:8;43:3;45:7;47:10
**urging (1)**
24:24
**use (1)**
41:1
**used (2)**

30:16;36:23
**user- (1)**
15:1
**user-friendly (1)**
13:1
**uses (2)**
46:15,19
**using (1)**
15:3
**usual (2)**
30:15,18
**usually (1)**
34:10

**V**

**value (1)**
9:2
**values (1)**
42:23
**variations (1)**
33:3
**various (2)**
33:3;44:24
**vast (1)**
15:2
**version (2)**
18:8;33:6
**versus (1)**
44:6
**Veterans (1)**
8:18
**via (1)**
47:18
**Vice (1)**
46:19
**victim (1)**
35:18
**victims (7)**
27:20,22;29:16;
39:17;42:8,11;43:21
**view (7)**
23:7;29:21;30:2,6;
31:4,6;32:1
**views (1)**
16:19
**virus (1)**
32:1
**vociferous (1)**
19:4
**volumes (3)**
23:23,23;30:14
**voluminous (2)**
30:11,12
**vote (9)**
29:5;30:14,15;31:2,
2;36:1,25;37:24;38:15
**voting (2)**
16:20;37:5

**W**

**Wait (3)**

11:2;33:7;46:6
**waiting (1)**
30:22
**wants (4)**
16:18;18:11;45:11;
47:10
**watch (1)**
21:23
**way (8)**
26:18,19;32:17;39:3;
42:11;43:4;44:2,9
**ways (1)**
31:13
**week (4)**
21:15,16;47:13,24
**weekend (2)**
18:6,6
**weeks (1)**
47:16
**Weil (1)**
4:15
**well- (1)**
29:21
**well-known (1)**
46:15
**weren't (1)**
24:1
**what's (8)**
8:24;13:5;15:13;
27:11;29:20;30:7,18;
47:13
**whenever (1)**
23:15
**whereas (1)**
32:3
**Whereupon (1)**
47:25
**widely (1)**
42:7
**wildfires (1)**
12:13
**willing (3)**
24:14;34:8;38:18
**Willoughby (1)**
10:5
**Winthrop (31)**
17:9;23:2,3;24:4,5,9,
9,14,17,21;25:5,7,11,
15,19,24;26:8,11;28:2;
32:9;33:21,23;34:2,6,
20,25;36:2,7,13;38:10;
43:25
**Winthrop's (2)**
5:5;15:5
**wish (6)**
29:10;33:23;36:11;
44:16,18,20
**withdrawal (1)**
25:9
**withdrawn (2)**
6:25,25
**without (2)**
33:8;34:25

**witnesses (2)**
21:19,20
**wondering (1)**
21:23
**wood (2)**
16:22;17:1
**word (3)**
14:25;32:21;47:1
**words (4)**
11:8;12:2,7;18:15
**work (4)**
17:14,16,19;32:14
**workable (1)**
19:2
**worked (1)**
32:23
**working (3)**
10:14;32:12;44:2
**works (3)**
25:23;26:1;38:7
**world (8)**
12:24,24;21:12,24;
31:15,20;38:6,7
**worried (1)**
31:3
**worse (2)**
35:5,6
**wrong (2)**
15:21;22:3
**wrongful (1)**
41:11

**Y**

**year (1)**
36:14
**years (5)**
7:7,22,23;8:22,23
**yesterday (15)**
4:18;5:20,25;6:8,20;
10:15;14:18;15:6,12;
16:6;20:19;29:19;30:5,
7;32:22

**Z**

**ZIP (1)**
42:10
**zone (1)**
41:10

**1**

**100 (1)**
39:3
**105 (1)**
39:2
**1054 (2)**
42:1,1
**11 (1)**
4:1
**115 (2)**
7:3,21

**115.3 (3)**
7:1,4;10:11
**13 (1)**
4:9
**13.5 (2)**
9:19;38:1
**150,000 (1)**
43:16
**1st (1)**
13:8

**2**

**2 (1)**
46:24
**2:03 (1)**
4:1
**2:36 (1)**
33:10
**200,000 (1)**
43:14
**2015 (6)**
39:18;40:1,2,4,6;
43:8
**2017 (3)**
39:9;40:23,24
**2018 (6)**
39:10,18,20,21;40:9,
12
**2020 (1)**
4:1
**2021 (2)**
7:23;8:23
**2023 (1)**
8:23
**2025 (1)**
7:23
**25th (3)**
13:6;22:11;23:16

**3**

**3:41 (1)**
33:10

**4**

**4 (1)**
22:2
**4:01 (1)**
47:25

**6**

**6.75 (1)**
9:2

**7**

**7 (2)**
35:3,6
**70 (1)**
7:21

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 57
of 58

**79.6 (1)**
  35:25
**7th (3)**
  13:10,13;25:2

8

**800-pound (1)**
  27:15

Case: 19-30088    Doc# 6267    Filed: 03/12/20    Entered: 03/12/20 13:53:26    Page 58
of 58