# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **THIRD INTERIM APPLICATION OF MILBANK LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020** |

☐    Affects PG&E Corporation

☐    Affects Pacific Gas and Electric Company

☑    Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Re:   Docket Nos.: 4884, 5408, 5817 and 6207

**Objection Deadline:**   April 2, 2020, at 4:00 p.m. (PT)

| | |
|---|---|
| Name of Applicant: | Milbank LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | April 29, 2019 *nunc pro tunc* to February 12, 2019 |
| Time Period for which compensation and reimbursement are sought: | October 1, 2019 through January 31, 2020 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $7,182,215.25 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $252,836.83 |
| Total Compensation and Expenses Requested for Compensation Period: | $7,435,052.08 |

1   This is a(n): ___ monthly _X_ interim ___ final application

2

3   This is the third interim fee application filed by Milbank LLP in these cases.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Summary of Monthly Fee Statements for Compensation Period:**

| Filing | Period Covered | Requested | | Approved/ Pending Approval | | Holdback Fees (20%) Requested Fees |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees (80%) | Expenses (100%) | |
| *Ninth Monthly Fee Statement*<br><br>Docket No. 4884<br><br>Date Filed: 11/27/19 | 10/1/19 - 10/31/19 | $2,139,056.00 | $50,825.55 | $1,711,244.80 | $50,825.55 | $427,811.20 |
| *Tenth Monthly Fee Statement*<br><br>Docket No. 5408<br><br>Date Filed: 9/20/19 | 11/1/19 - 11/30/19 | $2,004,837.50 | $87,672.04 | $1,603,870.00 | $87,672.04 | $400,967.50 |
| *Eleventh Monthly Fee Statement*<br><br>Docket No. 5817<br><br>Date Filed: 2/18/19 | 12/1/19- 12/31/19 | $1,441,306.50 | $70,574.91 | $1,153,045.20 | $70,574.91 | $288,261.30 |
| *Twelfth Monthly Fee Statement*<br><br>Docket No. 6207<br><br>Date Filed: 3/9/20 | 1/1/20 - 1/31/20 | $1,597,015.25 | $43,764.33 | $1,277,612.20 | $43,764.33 | $319,403.05 |
| **TOTALS:** | | **$7,182,215.25** | **$252,836.83** | **$5,745,772.20** | **$252,836.83** | **$1,436,443.05** |

**Summary of Any Objections to Monthly Fee Applications:** No objections were filed with respect to the Ninth, Tenth or Eleventh Monthly Fee Statements. See *Certificates of No Objection* [Docket Nos. 5170, 5816 and 6251]. The objection deadline with respect to the Twelfth Monthly Fee Statement is March 31, 2020.

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

**THIRD INTERIM FEE APPLICATION OF MILBANK LLP
FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020**

TO THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

Milbank LLP ("Milbank"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "Debtors") in the above-captioned chapter 11 cases (these "Chapter 11 Cases"), hereby submits its third interim application (this "Third Interim Application"), seeking entry of an order pursuant to: (i) sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"); (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); (iii) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals*, dated February 27, 2019 [Docket No. 701] (the "Interim Compensation Order"); (iv) the *Order Pursuant to 11 U.S.C. Section 1103(a) and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Retention and Employment of Milbank LLP as Counsel for the Official Committee of Unsecured Creditors Effective as of February 12, 2019* [Docket No. 1766] (the "Retention Order"); (v) the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses by*

*Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"); (vi) the Bankruptcy Local Rules for the Northern District of California (the "Local Rules"); (vii) the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "Local Guidelines" and together with the U.S. Trustee Guidelines, the "Fee Guidelines"); and (viii) the *Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company*, filed on October 24, 2019 [Docket No. 4473-1] (the "Fee Examiner Protocol").

By this Third Interim Application, Milbank seeks the allowance, on an interim basis, and payment (to the extent not previously paid) of: (i) compensation for professional services rendered during the period from October 1, 2019 through and including January 31, 2020 (the "Compensation Period") in the aggregate amount of $7,182,215.25, including amounts previously held back pursuant to the Interim Compensation Order; and (ii) reimbursement of actual and necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $252,836.83. In support of this Third Interim Application, Milbank respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     Filed in the aftermath of the horrific 2017 and 2018 wildfires in Northern California, these chapter 11 cases represent one of the largest and most complex chapter 11 filings in United States history. From its formation, the Committee has undertaken its duties with two goals – to attempt to work consensually with all of the various constituents to bring these cases to an expeditious conclusion, while at the same time working to ensure that the various rights and ultimate recovery of the Committee's unsecured creditor constituency are protected. With these goals in mind, Milbank has advised the Committee on the numerous plan, financing, regulatory and confirmation issues.

2. Milbank's efforts during this Compensation Period have largely been focused on the Debtors' plan process. At the beginning of the Compensation Period, the Debtors, on the one hand, and the Official Committee of Tort Claimants (the "TCC") and the Ad Hoc Committee of Senior Unsecured Noteholders (the "AHG"), on the other hand, were fighting over whether the Debtors' exclusive periods should be terminated to permit the TCC and AHG to file a plan of reorganization. Subsequently, the Debtors settled with, and entered into restructuring support agreements with, three of their largest creditor constituencies – the subrogation claimants, the tort claimants and the noteholders. These settlements now form the core of the Debtors' chapter 11 plan which is designed to have the Debtors emerge by the June 30, 2020 deadline imposed by A.B. 1054.

3. In connection with these settlements, Milbank advised the Committee with respect to, among other things:

- The *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization*, filed on January 31, 2020 [Docket No. 5590] (the "Plan");

- *Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Approving and Authorizing the Debtors to Enter Into Restructuring Support Agreement with Consenting Noteholders and Shareholder Proponents, and (II) Granting Related Relief* [Docket No. 5519] (the "Noteholder RSA Motion");

- *Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors and TCC to Enter into Restructuring Support Agreement with the TCC, Consenting Fir Claimant Professionals, and Shareholder Proponents, and (II) Granting Related Relief* [Docket No. 5038] (the "Tort Claimants RSA Motion")

- *Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (i) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (ii) Approving the Terms of Settlement with Such Consenting Subrogation Claimholders, including the Allowed Subrogation Claim Amount, and (iii) Granting Related Relief* [Docket No. 3992] (the "Subrogation RSA Motion").

Milbank attorneys were significantly involved in analyzing and reviewing each of the above

referenced pleadings, as well as the related restructuring support agreements, term sheets, orders, objections and other pleadings. Milbank attorneys also prepared and submitted statements with respect to the TCC RSA Motion [Docket No. 5595], the Subrogation RSA Motion [Docket No. 5342] and an objection with respect to the TCC RSA Motion [Docket No. 5132].

4. In addition, in connection with the Plan, during the Compensation Period, the Debtors also filed their: (i) *Amended Motion for Entry of Orders (I) Approving Terms of, and Debtors' Entry into and Performance Under, Equity Backstop Commitment Letters, (II) Approving Terms of, and Debtors' Entry into and Performance Under, Debt Financing Commitment Letters and (III) Authorizing Incurrence, Payment and Allowance of Related Fees and/ Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims* [Docket No. 5267] (the "Amended Exit Financing Motion"); and (ii) *Motion for Entry of Orders (I) Approving Terms of, and Debtors' Entry into and Performance Under, Exit Financing Commitment Letters and (II) Authorizing Incurrence, Payment, and Allowance of Related Fees and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims* [Docket No. 4446] ("Exit Financing Motion," and together with the Amended Exit Financing Motion, the "Financing Motions"). Milbank attorneys similarly reviewed, advised the Committee on, and participated in discovery and depositions with respect to the Financing Motions.

5. Also in connection with the Plan, the Court issued its *Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues* [Docket No. 4540] ("Confirmation Briefing Order"), which sought to determine parties legal rights with respect the following confirmation issues:

- Inverse condemnation;
- Post-petition interest for unsecured creditors;
- Make-whole/0ptional redemptions; and
- Impairment of subrogation claims (collectively, the "Confirmation Issues").

6.     Milbank attorneys were significantly involved in briefing and arguing the above-listed issues before the Court at numerous hearings.  Milbank attorneys also spent considerable time analyzing and reviewing all of the various pleadings filed by the Debtors and other parties in interest related to the Confirmation Issues, as well as all related materials, orders, objections and other pleadings.

7.     Outside of the plan issues, Milbank attorneys appeared on behalf of the Committee at all of the Debtors' omnibus and telephonic hearings before the Bankruptcy Court, on all motions and applications, in addition to numerous other matters.  Milbank attorneys also participated in numerous meetings, depositions and conferences with the Debtors, representatives of the other major case constituents, Committee members and other unsecured creditors and drafted and filed on behalf of the Committee numerous pleadings, including objections, statements, discovery requests, notices and stipulations with respect to, among other things, the various motions and applications listed above.  Milbank also attended numerous hearings before the California Public Utilities Commission ("CPUC").

8.     All of these efforts have allowed the Committee to carry out its fiduciary responsibilities to the Debtors' unsecured creditors.  The professional services performed and expenses incurred by Milbank were actual and necessary to preserve and maximize the value of the Debtors' estates for the benefit of general unsecured creditors.

9.     In light of the size, complexity and nature of these cases, Milbank's charges for professional services performed and expenses incurred are reasonable under the applicable standards.  Milbank respectfully requests that the Court grant this Third Interim Application and allow interim compensation for professional services and reimbursement for expenses as requested herein.

## BACKGROUND

10.     Bankruptcy Filing.  On January 29, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.  On February 1, 2019 the Court entered an order consolidating these cases for procedural purposes only [Docket No. 207].

11.     Creditors' Committee.  On February 12, 2019, the United States Trustee for the Northern District of California (the "U.S. Trustee") appointed the Committee [Docket No. 409]. The Committee currently consists of the following nine members: (i) BOKF, N.A., as indenture trustee under unsecured bond indentures; (ii) The Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.; (iii) Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as indenture trustee; (iv) G4S Secure Solutions (USA) Inc. and G4S Secure Integration LLC; (v) International Brotherhood of Electrical Workers, Local 1245; (vi) Mizuho Bank, Ltd.; (vii) NextEra Energy, Inc.; (viii) Pension Benefit Guaranty Corporation; and (ix) Roebbelen Contracting, Inc.

12.     Jurisdiction.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

13.     Authorization for Milbank's Retention.  On April 3, 2019, the Committee filed its *Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as February 12, 2019* [Docket No. 1208] (the "Retention Application").  In connection with the Retention Application, Milbank filed the *Declaration of Thomas R. Kreller in Support of Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors,*

6

*Effective as of February 12, 2019* (the "Kreller Declaration") [Docket No. 1210]. On April 29, 2019, the Court authorized Milbank's retention as counsel to the Committee. The Retention Order provides that Milbank will be compensated on an hourly basis for services rendered to the Committee and reimbursed for actual and necessary out-of-pocket expenses. This Third Interim Application is Milbank's third interim application for the payment of its fees and reimbursement of its expenses as well the release of the twenty-percent holdback (the "Holdback") maintained during the Compensation Period. Milbank is not holding, and has not held, any retainer in connection with these cases or work performed on behalf of the Committee.

14. Fee Examiner. On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner (the "Fee Examiner") in these cases [Docket No. 2267]. Subsequently, the parties have agreed to the Fee Protocol. Milbank has provided certain information to the Fee Examiner, including copies of pertinent receipts, as requested by the Fee Examiner so that he may evaluate the reasonableness of certain expenses sought in this Third Interim Application. Milbank is in the process of providing additional expense information to the Fee Examiner with respect to certain information related to this Third Interim Fee Application as well.

15. Status of Cases. The Debtors are continuing their operations as debtors in possession. The Debtors filed their proposed disclosure statement on February 7, 2020 [Docket No. 5700] and certain schedules and exhibits thereto on February 18, 2020 [Docket No. 5801]. Most recently, the Debtors filed the Plan on January 31, 2020, which remains pending.

16. Monthly Fee Statements. In accordance with the Interim Compensation Order, each Retained Professional (as defined therein) is required to file monthly fee statements. To the extent there are no objections to a monthly fee statement, the relevant Retained Professional is authorized to file a certification of no objection, after which the Debtors are authorized to pay such professional eighty percent (80%) of the fees and one hundred percent (100%) of the expenses

requested in such monthly fee statement. Interim Compensation Order ¶ 2(f). Pursuant to the Interim Compensation Order, Milbank submitted the following monthly fee statements (each a "Monthly Fee Statement"):

a. On November 27, 2019, Milbank filed its ninth fee statement for the period from October 1, 2019 through and including October 31, 2019 [Docket No. 4884] (the "Ninth Fee Statement"). The Ninth Fee Statement sought: (i) compensation for services rendered, in the amount of $2,139,056.00; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $50,825.55.

b. On January 17, 2020, Milbank filed its tenth fee statement for the period from November 1, 2019 through and including November 30, 2019 [Docket No. 5408] (the "Tenth Fee Statement"). The Tenth Fee Statement sought: (i) compensation for services rendered, in the amount of $2,004,837.50; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $87,672.04.

c. On February 18, 2020, Milbank filed its eleventh fee statement for the period from December 1, 2019 through and including December 31, 2019 [Docket No. 5817] (the "Eleventh Fee Statement"). The Eleventh Fee Statement sought: (i) compensation for services rendered, in the amount of $1,441,306.50; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $70,574.91.

d. On March 9, 2020, Milbank filed its twelfth fee statement for the period from January 1, 2020 through and including January 31, 2020 [Docket No. 6207] (the "Twelfth Fee Statement"). The Twelfth Fee Statement sought: (i) compensation

for services rendered, in the amount of $1,597,015.25; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $43,764.33.[1]

17.     Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in the Chapter 11 Cases.  No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## **RELIEF REQUESTED**

18.     By this Third Interim Application, Milbank seeks: (i) interim allowance and award of 100% of the compensation for professional services rendered by Milbank, as counsel to the Committee, during the Compensation Period in the amount of $7,182,215.25; (ii) reimbursement of actual and necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $252,836.83; and (iii) the release of the Holdback.

19.     As stated in the certification (the "Kreller Certificate") attached hereto as **Exhibit G**, which certifies Milbank's compliance with the Fee Guidelines, all of the services for which compensation is sought herein were rendered solely for or on behalf of the Committee in connection with these cases.

20.     Pursuant to the Interim Compensation Order, Milbank has already received payment for the Compensation Period in the total amount of $3,453,612.39.  Milbank seeks further

---

[1]     The objection deadlines for the Ninth Fee Statement, the Tenth Fee Statement and the Eleventh Fee Statement expired on December 18, 2019, February 7, 2020 and March 10, 2020, respectively.  No objections were filed with respect to the Ninth, Tenth or Eleventh Fee Statements, and a *Certificate of No Objection* has been filed with respect to each [Docket Nos. 5170, 5816 and 6251, respectively].  The objection deadline with respect to the Twelfth Fee Statement (filed on March 9, 2020) has not yet passed, thus, the amounts requested therein have not yet been allowed.  To date, no objections have been filed with respect this fee statement either.

payment of $3,981,439.69 pursuant to this Third Interim Application, which amount represents the portion of Milbank's fees for legal services rendered and expenses incurred during the Compensation Period not previously paid to Milbank pursuant to the Monthly Fee Statements.

21.    The fees sought by this Third Interim Application reflect an aggregate of 7,097.20 hours of attorney and paraprofessional time spent and recorded in performing services to the Committee during the Compensation Period, at a blended average hourly rate of $1,011.79 for both attorneys and paraprofessionals.  The blended hourly rate for attorneys is $1,052.55.

22.    The fees charged by Milbank in these cases are billed in accordance with Milbank's existing billing rates and procedures in effect during the Compensation Period.  The rates Milbank charges for the services rendered by its professionals in these cases generally are the same rates Milbank charges for professional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive legal market.

23.    Copies of Milbank's invoices detailing the services rendered and expenses incurred during the Compensation Period are attached to the Monthly Fee Statements, which have been filed on the docket and furnished to the Debtors, counsel to the TCC, the U.S. Trustee and the Fee Examiner. Milbank has provided the Fee Examiner and U.S. Trustee with the Monthly Fee Statements in an electronic LEDES format Milbank believes is acceptable to these parties.

24.    Milbank has made every effort to ensure that this Third Interim Application complies with the Fee Guidelines and Fee Protocol to the extent applicable.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

25.     In the ordinary course of its practice, Milbank maintains written records of the time expended by professionals and paraprofessionals in the rendition of professional services.[2]  A chart showing the name of each relevant professional or paraprofessional, each attorney's year of bar admission, the aggregate time expended by each such professional or paraprofessional, the hourly billing rate for each such professional or paraprofessional in effect during the Compensation Period, and the amount requested for each such professional or paraprofessional is attached hereto as **Exhibit A**.  A schedule of the project categories and amounts for which compensation is requested in each category is attached hereto as **Exhibit B**.

26.     In the ordinary course of its practice, Milbank also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the performance of professional services, all of which are available for inspection.  A detailed summary of the expenses incurred during the Compensation Period is attached hereto as **Exhibit C**.

27.     Milbank respectfully submits that the services that it has rendered on behalf of the Committee during the Compensation Period were necessary and appropriate and have directly contributed to the effective administration of these cases.

28.     Annexed hereto as **Exhibit D** is a summary and comparison of the aggregate blended hourly rates billed by Milbank's timekeepers in all domestic offices to non-bankruptcy matters during the preceding fiscal year and the blended hourly rates billed to the Debtors during the Compensation Period.

29.     Milbank discussed its rates, fees, and staffing with the Committee at the outset of its retention in these cases.  Milbank provided the Committee with the *Budget for Milbank LLP,*

---

[2]     Copies of these computerized records (as modified to address privileged and confidential matters) have been filed on the docket with the Monthly Fee Statements and furnished to the Debtors, the TCC, the U.S. Trustee, and the Fee Examiner.

*Counsel to the Official Committee of Unsecured Creditors of PG&E Corporation and Pacific Gas and Electric Company for the Period from October 1, 2019 through January 31, 2020* (the "Budget") and the *Staffing Plan for Milbank LLP, Counsel to the Official Committee of Unsecured Creditors of PG&E Corporation and Pacific Gas and Electric Company, for the Period from October 1, 2019 through January 31, 2020* (the "Third Staffing Plan") attached hereto as **Exhibit E**. The Committee is aware of the complexities of these cases, the many issues that need to be addressed, the various disciplines involved, and that the staffing needs are dynamic and based on a number of factors, many of which are unpredictable, including the activities of other parties in interest in these cases. **Exhibit F** is a summary of fees and hours budgeted compared to fees and hours billed. Lastly, **Exhibit G** is the *Certification of Thomas R. Kreller*, certifying certain matters addressed in this Third Interim Fee Application.

### Summary of Services Performed by Milbank by Project Code

30. The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed. Rather, it merely highlights certain project billing categories areas in which significant services were rendered by Milbank, as well as identifies some of the issues Milbank was required to address. Detailed descriptions of the day-to-day services provided by Milbank and the time expended performing such services in each project billing category were attached as exhibits to the Monthly Fee Statements. Such detailed descriptions demonstrate that Milbank was heavily involved in the performance of services for the Committee on a daily basis, including night and weekend work, often under extreme time constraints, to meet the needs of the Committee.

### Automatic Stay
(Fees: $59,033.50; Hours 64.60)

31. During the Compensation Period, Milbank attorneys reviewed various motions asking the Court to: (a) lift the automatic stay; (b) abstain from addressing certain matters; and/or

(c) find that the automatic stay did not apply, including those filed by, among others: (i) certain Ghost Ship Plaintiffs; (ii) Cara Feneis; (iii) Michael Marroquin; (iv) Todd Hearn; (v) George M. Vlazakis; (vi) Michael S. Danko and Mary S. Danko; (vii) United Energy Trading, LLC; (viii) Tiger Natural Gas, Inc.; and (ix) Henrietta D Energy Storage LLC. In connection with the various stay motions, Milbank researched legal issues where necessary, drafted memoranda to the Committee regarding the issues raised therein, corresponded and worked with counsel to the Debtors to address and resolve any issues where possible, filed statements in support of the Debtors' position where appropriate, and appeared at hearings regarding those motions.

**Bankruptcy Litigation**
(Fees: $73,928.00; Hours: 82.90)

32.	During the Compensation Period, Milbank attorneys engaged in various litigation and discovery related activities in connection with the adversary proceeding initiated by the Debtors for a preliminary injunction against the FERC (Adv. Pro. 19-03003) and related appeals to the Ninth Circuit Court of Appeals.[3]  Among other things, Milbank attorneys reviewed the underlying pleadings, including motions and proposed orders, researched relevant legal issues and diligenced factual issues, received and reviewed discovery in connection with certain matters, drafted related memoranda for the Committee, and prepared and filed pleadings in support of the Committee's positions.

**Case Administration**
(Fees: $123,457.50; Hours: 185.50)

33.	During the Compensation Period, Milbank expended substantial time attending to various case administrative matters, including among other things: (i) preparing and updating an internal calendar of critical dates for the Committee; (ii) maintaining an internal task list to monitor the status of pending matters; (iii) coordinating critical work streams among Milbank attorneys

---

[3]	Where appropriate, Milbank moved litigation time to other submatters, such as plan or wildfire matters below.

13

and the Committee's various other advisors; and (iv) reviewing the docket for new pleadings and distributing such filings to the Committee and its advisors along with summaries of such pleadings. Milbank attorneys endeavored to minimize such administration matters while at the same time ensuring that all of the Committee's various activities were performed in the most expeditious manner possible.

**Claims Reconciliation/Objections**
(Fees: $200,168.50; Hours: 195.70)

34. While the Committee reviewed various creditors' claims, including those filed by numerous governmental entities, by far the largest amount of time in this category was spent with respect to the Confirmation Issues. Specifically, the Committee reviewed and analyzed the noteholders claims for billions of dollars in make-whole payments, and the Committee closely followed and participated in the briefing and discovery related to such claims. Such efforts included reviewing the various underlying indentures, the various briefs filed by the Debtors and indenture trustees, and participating in the arguments before the court related to these claims. These claims were eventually settled as part of the Noteholders RSA.

**Plan of Reorganization**
(Fees: $1,863,009.00; Hours: 1,610.30)

35. The Debtors filed the first iteration of their chapter 11 plan on September 9, 2019 [Docket No. 3841]. Subsequently, both the Debtors and the AHG and TCC filed competing chapter 11 plans. Following settlements with each of the Subrogation Group, the AHG and the TCC, the Debtors filed the current Plan.

36. Throughout this time, Milbank attorneys reviewed the various issues raised in the Debtors' Plan and each of the settlements and related RSAs. Milbank also reviewed the Debtors proposed exit financing and plan related documents, including the Disclosure Statement and solicitation materials. Importantly, with respect to the Confirmation Issues, Milbank briefed and argued the inverse condemnation, post-petition interest and subrogation impairment issues.

37.     In connection with the Plan, Milbank attorneys researched and analyzed a number of other confirmation issues, including, but not limited to, reinstatement and cram down in a solvent debtor case.  Milbank attorneys held numerous meetings and calls with various parties with respect to the various plans and settlement agreements, drafted memoranda with respect to issues raised in the plans and settlements for dissemination to the Committee, and participated in hearings before the Court with respect to the Plan.

### Communications with Client
(Fees: $184,047.50; Hours: 180.40)

38.     During the Compensation Period, in coordination with the Committee's financial advisors, Milbank attorneys spent a substantial amount of time coordinating, preparing materials (including meeting agendas, factual and legal memoranda, summaries, and presentations) for Committee meetings.  In advance of such meetings, Milbank attorneys drafted memoranda for the Committee summarizing and providing analyses and recommendations with respect to each substantive matter that was scheduled for an upcoming hearing or was otherwise active.  Milbank attorneys also drafted substantive memoranda on numerous case topics, including, among other things: (i) the Debtors' Plan; (ii) the TCC RSA Motion; (iii) the Subrogation RSA Motion; (iv) the Noteholder RSA Motion; (v) lift stay issues; (vi) certain executory contract motions; (vii) certain plan issues including various issues related to solvent debtors; (viii) the Debtors' proposed exit financing; (ix) certain retention applications filed by the Debtors and other parties; (x) certain exclusivity related filings; and (vii) each of the Debtors' substantive motions.

39.     Milbank attorneys also prepared for and participated in numerous calls and other communications, including via email, with individual Committee members and their counsel, as well as with the subcommittees established by the Committee.

### Communications with Unsecured Creditors
(Fees: $40,508.00; Hours: 31.20)

Case: 19-30088   Doc# 6278   Filed: 03/13/20   Entered: 03/13/20 10:48:18   Page 18 of 50

40. During the Compensation Period, in accordance with the Committee's statutory duties under section 1102(b) of the Bankruptcy Code, Milbank attorneys responded electronically and telephonically to various inquires received from the Debtors' unsecured creditors regarding these cases. Milbank also maintained frequent contact with advisors to major constituencies in these cases, including the Debtors, the TCC, the AHC and the Subrogation Group, to discuss open issues and upcoming matters important to the Committee, communicate the Committee's positions and seek mutually acceptable courses of action.

**Committee Meetings**
(Fees: $397,596.50; Hours: 334.30)

41. Given the significant size of the Debtors' cases and the sheer amount of materials that the Committee's advisors were tasked with handling, including multiple plans, substantial settlements between the Debtors and the: (i) TCC; (ii) the AHG and (iii) the Subrogation Group, each week (and sometimes, on additional occasions) Milbank conducted a telephonic meeting with the Committee. Milbank also conducted a number of in-person meetings with the Committee (collectively, with all telephonic meetings, "Committee Meetings"). During Committee Meetings, Milbank attorneys discussed key issues with the Committee, including the upcoming matters scheduled for hearing by the Court. Prior to such meetings, Milbank attorneys reviewed pending matters requiring the Committee's attention and the underlying documentation and coordinated advice with the Committee's other professionals. Milbank attorneys also drafted agendas for all such meetings, and distributed pertinent information in advance to the Committee. Thereafter, Milbank discussed each of these matters with the Committee, as well as individual Committee members on separate occasions, and assisted the Committee in formulating a position with respect to each matter. Milbank also provided Committee members with regular, and sometimes daily, update emails regarding the status of these cases.

**General Case Strategy**
(Fees: $533,720.00; Hours: 459.40)

42. As Committee counsel, Milbank expended significant time organizing the Committee by, among other things: (i) conducting numerous calls, both internally, with Milbank attorneys, and externally, with the Committee's other professionals to discuss and analyze pending motions and applications, as well as other tasks and projects; (ii) corresponding with the Debtors and their advisors regarding various work streams and diligence items; and (iii) analyzing new pleadings filed on the bankruptcy docket.

43. Further, on a weekly basis during the Compensation Period, Milbank attorneys led advisors-only calls with the Committee's financial advisors to prepare for regular Committee meetings and other matters. During such calls, the Committee's advisors discussed general case strategy, issues that may be appropriate for special attention by the Committee and proposed recommendations with respect to such issues. Also during the Compensation Period, Milbank attorneys drafted minutes to memorialize the Committee's resolutions during Committee meetings.

**Court Hearings**
(Fees: $676,814.50; Hours: 628.60)

44. During the Compensation Period, Milbank attorneys spent considerable time preparing for and attending (either in person or telephonically) all significant hearings and Court conferences in these cases and related adversary proceedings. Significant hearings were held with regard to: (i) the Confirmation Issues, including make-whole and post-petition interest issues; (ii) the Exit Financing Motion; (iii) the Subrogation RSA Motion; (iv) the TCC and AHG's Exclusivity Termination Motion [Docket No. 4167]; (v) the Second Exclusivity Extension Motion [Docket No. 4005]; (vi) the TCC RSA Motion; (vii) the FEMA and Cal OES Claims Objections; (viii) the Tubbs Settlement Motion [Docket No. 5282]; (ix) numerous retention applications filed

by the Debtors; and (x) numerous other motions by non-debtor parties to modify or lift the automatic stay, among other matters.

45.     Milbank attorneys communicated in advance of hearings with other parties in interest, including the Debtors, the TCC, the Subrogation Group, the AHC and the U.S. Trustee regarding the relief requested and any issues raised thereby, in an effort to consensually resolve concerns prior to the applicable hearing.  Given the nature of these cases, many matters went forward during the Compensation Period on a contested basis, necessitating active Committee participation to advance and protect the interests of its constituency.  Moreover, because the issues that arose implicated numerous nuanced areas of the law, the contribution of Milbank attorneys spanning multiple specialties was necessary to properly represent the Committee.

### DIP Financing/Cash Management/Exit Financing
(Fees: $823,173.00; Hours: 901.70)

46.     The Debtors filed both Financing Motions during the Compensation Period.  The Financing Motions seek billions of dollars and to remake the Debtors' capital structure.  As such, Milbank and the Committee's other advisors spent considerable time reviewing and analyzing the various financing components, explaining the related issues to the Committee and participating in the discovery process commenced with respect to the financing.  This required reviewing voluminous amounts of documents related to the Debtors' financing efforts, and prepping for and participating in depositions of the Debtors' experts.

### Non-Working Travel
(Fees: $185,751.25; Hours: 297.50)

47.     Non-working travel time spent by Milbank attorneys traveling to and from meetings, conferences, hearings and similar events in connection with Milbank's representation of the Committee was either not billed or charged at 50% of such attorney's normal billing rate.  Most significantly, during the Compensation Period, Milbank attorneys were required to travel to and from San Francisco on a regular basis – sometimes making multiple trips in a single week – for

18

court hearings, meetings with the Debtors and their respective advisors. Efforts were made to use travel time productively, for performing work for the estates or for other client-related matters, but this was not always possible or practicable.[4]

## Retention/Fee Applications
(Fees: $258,069.00; Hours: 286.20)

48.     During the Compensation Period, Milbank worked with the Committee and its financial advisors to draft and/or finalize each professional's fee applications and exhibits thereto. Specifically, Milbank prepared its own fee applications and assisted with the preparation of the fee applications of FTI Consulting, Inc., as the Committee's financial advisor, Centerview Partners LLC, as the Committee's investment banker, and Axiom Advisors, as the Committee's government affairs consultant.

## Wildfire Claims and Treatment
(Fees: $1,074,468.50; Hours: 1,140.50)

49.     During the Compensation Period, Milbank attorneys researched and addressed a host of issues for the Committee related to mass tort cases, including the claims estimation process and potential mechanisms or structures to address those claims and other liability issues. In addition, Milbank reviewed various issues related to the possible treatment of the wildfire claims.

50.     Following the entry into the Subrogation and TCC RSAs, Milbank reviewed and analyzed the related materials and reviewed drafts of the various documents intended to govern the trusts and distribution of funds to be made pursuant to these agreements.

51.     Milbank also drafted numerous memoranda regarding issues related to the wildfire claims, inverse condemnation and the proposed wildfire fund established by A.B. 1054. Milbank

---

[4]     During the Compensation Period, the Court entered an order instituting certain guidelines with respect to non-working travel. Specifically, non-working travel was limited to two hours per trip, rather than billed at 50% such attorney's billing rate. Milbank intends to work with the Fee Examiner to conform its expense requests to the fee protocol agreed to by the Court.

also worked with the Committee's other advisors in researching and analyzing valuations for the Committee with respect to the aggregate amount of wildfire claims.

## ALLOWANCE OF COMPENSATION

52.     In light of the size and complexity of these Chapter 11 Cases, the professional services rendered by Milbank required the expenditure of substantial time and effort by a large but lean team of attorneys and a high degree of professional competence and expertise across multiple specialties. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited unsecured creditors and the Debtors' estates.

53.     The interim allowance of compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> … any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

54.     With respect to the level of compensation, Bankruptcy Code section 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]" See In re Manoa Finance Co., 853 F.2d 687, 689 (9th Cir. 1988) (stating that section 330 authorizes reasonable compensation for certain services and costs). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The clear Congressional intent and policy expressed by the statute is to provide for adequate compensation to professionals in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. In re Fleming Cos., 304 B.R. 85, 92 (Bankr. D. Del. 2003) ("in enacting the Bankruptcy Code provisions which allow compensation to attorneys, Congress sought to encourage qualified attorneys to develop bankruptcy expertise by assuring that they would be compensated at the *same level* as their peers in other practice areas.").

55.     The total time spent by Milbank attorneys and paraprofessionals during the Compensation Period was 7,097.20 hours and has a fair market value of $7,182,215.25.   As demonstrated by this Third Interim Application and supporting exhibits, Milbank submits that its services were rendered economically and without unnecessary duplication of efforts. In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.  The compensation requested in the Third Interim Fee Application is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

56.     As reflected in this Third Interim Fee Application and the supporting documents, Milbank spent its time efficiently and without unnecessary duplication of time. Nonetheless,

Milbank has voluntarily agreed to reduce its fees during the Compensation Period in the amount of $528,451.00 (the "Voluntary Reduction").[5]

### EXPENSES

57.     Bankruptcy Code Section 330 also authorizes "reimbursement for actual, necessary expenses" incurred by a retained professional. 11 U.S.C. § 330(a)(1)(B). "Once documented, 'actual and necessary expenses' are automatically reimbursable." In re Wendy's of Montana, Inc., 111 B.R. 314, 315 (Bankr. N.D. Mont. 1988).  Milbank seeks reimbursement for actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $252,836.83.  The disbursements have been incurred in accordance with Milbank's normal practice of charging clients for expenses clearly related to and required by particular matters.  In accordance with section 330 of the Bankruptcy Code, Milbank seeks reimbursement only for the actual cost of such expenses to Milbank.  Milbank charges for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients. Milbank has minimized these expenses to the greatest extent possible.  A detailed summary of the expenses is attached hereto as **Exhibit C**.  Copies of supporting documentation for the out-of-pocket expenses (receipts, statements, invoices, etc.) will be provided to the Court, the U.S. Trustee and the Fee Examiner upon request.

58.     Milbank's hourly billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services

---

[5]     Milbank reserves the right to seek allowance of all or a portion of such fees in connection with its final fee application or in advance thereof.

Case: 19-30088     Doc# 6278     Filed: 03/13/20     Entered: 03/13/20 10:48:18     Page 25 of 50

differ. Milbank believes that it is more appropriate to charge each client only for the expenses actually incurred in performing services therefor.

59.     Milbank seeks reimbursement at the following rates for the following expenses: (i) ten cents ($0.10) per page for photocopying; (ii) ten cents ($0.10) per page for black and white printing; and (iii) ten cents ($0.10) per page for color printing. Milbank's charges for internal duplicating are well below the $.50 per page rate authorized by statute for copies made by the clerks of the United States Courts. See 28 U.S.C. § 1914(b); Judicial Conference Schedule of Fees n.4. Milbank currently does not charge for facsimile transmissions. Milbank has negotiated a discounted transactional rate for computer assisted legal research. Milbank is not seeking reimbursement of hourly fees of its secretarial services in this Third Interim Fee Application. Further, in providing or obtaining services from third parties that are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment, or capital outlay.

60.     Throughout the Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

### NO FEE SHARING; DISINTERESTEDNESS OF MILBANK; NO PRIOR APPLICATIONS

61.     No agreement or understanding exists between Milbank and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

62.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

### RESERVATION OF RIGHTS

63.     Although every effort has been made to include all fees and expenses incurred during the Compensation Period, some fees and expenses incurred during the period might not be

23

included in this Third Interim Fee Application due to delays caused in connection with the accounting and processing of such time and expenses. Accordingly, Milbank reserves the right to make further application to this Court for allowance of such fees and expenses incurred during this Compensation Period but not included herein.

## NOTICE

64. No trustee or examiner has been appointed in the Chapter 11 Cases. Pursuant to the Interim Compensation Order, notice of this Application has been served upon: (i) the Debtors c/o Pacific Gas & Electric Company, 77 Beale Street, San Francisco, CA 94105 (Attn: Janet Loduca, Esq.); (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Rachael Foust, Esq.) and Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S. Keller, Esq. and Jane Kim, Esq.); (iii) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, CA 94102 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (iv) counsel for the TCC, Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509 (Attn: Eric Sagerman, Esq. and Cecily Dumas, Esq.); and (v) counsel to the Fee Examiner, Scott McNutt, 324 Warren Road, San Mateo, CA 94402 (Attn: Scott McNutt).

## CONCLUSION

WHEREFORE, Milbank respectfully requests that the Court enter an order: (i) allowing Milbank (a) interim compensation for professional services rendered as counsel for the Committee during the Compensation Period in the amount of $7,182,215.25; and (b) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $252,836.83, for a total award of $7,435,052.08; (ii) authorizing and directing the Debtors to pay (to the extent not previously paid in accordance with the Interim Compensation Order) to Milbank $3,981,439.69 which is an amount equal to the difference between (a) this $7,435,052.08 award;

and (b) $3,453,612.39, the total of all amounts that the Debtors have previously paid to Milbank pursuant to the Interim Compensation Order for services rendered and expenses incurred during the Compensation Period; and (iii) granting such further relief as is just and appropriate.

Dated: March 13, 2020

Respectfully submitted,

MILBANK LLP

By: */s/ Dennis F. Dunne*
Dennis F. Dunne (admitted pro hac vice)
Samuel A. Khalil (admitted pro hac vice)
Gregory A. Bray
Thomas R. Kreller

*Counsel for the Official Committee of Unsecured Creditors*

# EXHIBIT A
## COMPENSATION BY PROFESSIONAL

The attorneys who rendered professional services in these Chapter 11 Cases from October 1, 2019 through January 31, 2020 (the "Fee Period") are:

| NAME OF PROFESSIONAL PARTNERS, COUNSEL & SENIOR ATTORNEYS: | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| William Bice | Global Project, Energy and Infrastructure Finance | 1996 | $1,615 | 9.30 | $15,019.50 |
| | | | $1,540 | 64.20 | $98,868.00 |
| | | | $770* | 11.00 | $8,470.00 |
| Gregory Bray | Financial Restructuring | 1984 | $1,615 | 126.60 | $204,459.00 |
| | | | $1,540 | 449.20 | $691,768.00 |
| | | | $770* | 10.50 | $8,085.00 |
| Dennis Dunne | Financial Restructuring | 1991 | $1,615 | 36.70 | $59,270.50 |
| | | | $1,540 | 139.90 | $215,446.00 |
| Thomas Kreller | Financial Restructuring | 1992 | $1,615 | 42.70 | $68,960.50 |
| | | | $1,540 | 203.00 | $312,620.00 |
| | | | $770* | 10.40 | $8,008.00 |
| Andrew Leblanc | Litigation | 2000 | $1,615 | 8.80 | $14,212.00 |
| | | | $1,540 | 185.00 | $284,900.00 |
| | | | $770 | 67.20 | $51,744.00 |
| Alan Stone | Litigation | 1988 | $1,615 | 43.80 | $70,737.00 |
| | | | $1,540 | 125.20 | $192,808.00 |
| | | | $807.5* | 13.70 | $11,062.75 |
| | | | $770* | 34.60 | $26,642.00 |
| Paul Aronzon | Financial Restructuring | 1979 | $1,540 | 28.20 | $43,428.00 |
| Russell Kestenbaum | Tax | 1999 | $1,540 | 18.30 | $28,182.00 |
| Nicholas Smith | Global Corporate | 2003 | $1,465 | 3.00 | $4,395.00 |
| Samuel Khalil | Financial Restructuring | 2004 | $1,425 | 14.80 | $21,090.00 |
| Manan Shah | Tax | 2002 | $1,425 | 8.60 | $12,255.00 |
| Aaron Renenger | Litigation | 2002 | $1,335 | .60 | $801.00 |
| Dennis O'Donnell | Financial | 1992 | $1,250 | 28.40 | $35,500.00 |

1

| | | | | | |
|---|---|---|---|---|---|
| | Restructuring | | | | |
| Craig Price | Financial Restructuring | 2000 | $1,175 | 175.30 | $205,977.50 |
| | | | $1,120 | 527.30 | $590,576.00 |
| Samir Vora | Litigation | 2007 | $1,175 | 150.20 | $176,485.00 |
| | | | $1,120 | 420.20 | $470,624.00 |
| | | | $587.5* | 8.00 | $4,700.00 |
| | | | $560* | 23.20 | $12,992.00 |
| Jennifer Harris | Alternative Investments | 2000 | $1,120 | 8.90 | $9,968.00 |
| Brian Kinney | Financial Restructuring | 2004 | $1,120 | 6.30 | $7,056.00 |
| Lena Mandel | Financial Restructuring | 1991 | $1,175 | 53.50 | $62,862.50 |
| | | | $1,080 | 188.80 | $203,904.00 |
| **Total Partners, Counsel & Senior Attorneys:** | | | **$1,304.57** | **3,245.40** | **$4,233,876.25** |

2

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT | YEAR ADMITTED[*] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| James Beebe | Tax | 2011 | $995 | 5.90 | $5,870.50 |
| Daniel Denny | Financial Restructuring | 2005 | $995 | 65.60 | $65,272.00 |
| | | | $497.50* | 3.00 | $1,492.50 |
| Erin Dexter | Litigation | 2014 | $995 | 110.20 | $109,649.00 |
| | | | $920 | 340.00 | $312,800.00 |
| | | | $460* | 2.80 | $1,288.00 |
| Rachael Franzoia | Financial Restructuring | 2013 | $995 | 29.60 | $29,452.00 |
| | | | $920 | 3.40 | $3,128.00 |
| Matthew Koch | Financial Restructuring | 2014 | $995 | 115.60 | $115,022.00 |
| | | | $920 | 458.10 | $421,452.00 |
| Jordan Weber | Financial Restructuring | 2015 | $995 | 143.20 | $142,484.00 |
| | | | $920 | 393.00 | $361,560.00 |
| | | | $497.5* | 17.20 | $8,557.00 |
| | | | $460* | 33.50 | $15,410.00 |
| Chad Richards | Global Project, Energy and Infrastructure Finance | 2015 | $875 | 102.10 | $89,337.50 |
| | | | $437.5* | 4.00 | $1,750.00 |
| Christina Skaliks | Tax | 2015 | $875 | 9.30 | $8,137.50 |
| Julie Wolf | Litigation | 2016 | $965 | 14.20 | $13,703.00 |
| | | | $875 | 185.10 | $161,962.50 |
| | | | $437.5* | 58.40 | $25,550.00 |
| James Behrens | Financial Restructuring | 2011 | $955 | 2.50 | $2,387.50 |
| Archan Hazra | Tax | 2017 | $830 | 10.80 | $8,964.00 |
| Kavon Khani | Litigation | 2017 | $920 | 148.50 | $136,620.00 |
| | | | $830 | 406.10 | $337,063.00 |
| Adeola Adeyosoye | Financial Restructuring | 2018 | $735 | 1.30 | $955.50 |
| Yuliya Zahoroda | Financial Restructuring | 2018 | $735 | 15.30 | $11,245.50 |
| Henry Seeley | Global Project, Energy and Infrastructure Finance | 2018 | $735 | 3.60 | $2,646.00 |
| Anna Bergstrom | Litigation | Not Yet Admitted | $625 | 95.10 | $59,437.50 |
| | | | $450 | 106.20 | $47,790.00 |
| Jeff Snyder | Financial Restructuring | 2019 | $625 | 14.90 | $9,312.50 |
| | | | $450 | 26.20 | $11,790.00 |

3

| NAME OF PROFESSIONAL ASSOCIATES | DEPARTMENT | YEAR ADMITTED* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Margherita Capolino | Litigation | 2019 | $770 | 34.80 | $26,796.00 |
|  |  |  | $595 | 136.60 | $81,277.00 |
| Kathrine Gutierrez | Financial Restructuring | Not Yet Admitted | $595 | 13.20 | $7,854.00 |
| Alice O'Brien | Litigation | 2019 | $595 | 85.90 | $51,110.50 |
| Jonathan Sorger | Tax | 2019 | $595 | 16.20 | $9,639.00 |
| Christopher Kim | Global Project, Energy and Infrastructure Finance | 2019 | $595 | 9.40 | $5,593.00 |
| Julia Wu | Litigation | 2018 | $595 | 10.40 | $6,188.00 |
|  |  |  | $297.5* |  |  |
| Andrew Abell | Financial Restructuring | Not Yet Admitted | $625 | 27.70 | $17,312.50 |
|  |  |  | $450 | 186.50 | $83,925.00 |
| Tyler Krenek | Transportation & Space | Not Yet Admitted | $450 | 5.40 | $2,430.00 |
| **Total Associates:** |  |  | **$815.52** | **3,450.80** | **$2,814,214.00** |

| NAME OF PARAPROFESSIONALS: | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Angel Anderson | Litigation | $350 | 6.90 | $2,415.00 |
| Abayomi Ayandipo | Litigation | $365 | 15.40 | $5,621.00 |
|  |  | $350 | 35.70 | $12,495.00 |
| Jenifer Gibbs | Litigation | $365 | 4.30 | $1,569.50 |
|  |  | $350 | 17.00 | $5,950.00 |
| David McCracken | Litigation | $365 | 14.70 | $5,365.50 |
|  |  | $350 | 28.70 | $10,045.00 |
| Doug Shannon | Litigation | $360 | 2.50 | $900.00 |
| Paul Butters | Litigation | $325 | 7.90 | $2,567.50 |
| Charmaine Thomas | Financial Restructuring | $320 | 45.50 | $14,560.00 |
|  |  | $300 | 87.10 | $26,130.00 |
| Ricky Windom | Litigation | $300 | 20.30 | $6,090.00 |
| Jacqueline Brewster | Financial | $300 | 4.90 | $1,470.00 |

Case: 19-30088   Doc# 6278   Filed: 03/13/20   Entered: 03/13/20 10:48:18   Page 32 of 50

| NAME OF PARAPROFESSIONALS: | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | Restructuring | $290 | 16.00 | $4,640.00 |
| Brandon Fiscina | Litigation | $250 | | |
| Cecelia Kim | Financial Restructuring | $270 | 10.00 | $2,700.00 |
| | | $235 | 10.10 | $2,373.50 |
| James Mcguire | Practice Support | $375 | 9.70 | $3,637.50 |
| | | $360 | 55.40 | $19,944.00 |
| James Liles | Practice Support | $635 | 8.90 | $5,651.50 |
| **Total Paraprofessionals and other non-legal staff:** | | **$334.47** | **401.00** | **$134,125.00** |

| PROFESSIONALS TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | $1,304.57 | 3,245.40 | $4,233,876.25 |
| Associates | $815.52 | 3,450.80 | $2,814,214.00 |
| Paraprofessionals and other non-legal staff | $334.47 | 401.00 | $134,215.00 |
| **Blended Attorney Rate** | **$1,052.55** | **6,696.20** | **$7,048,090.25** |
| **Total Fees Incurred** | **$1,011.79** | **7,097.20** | **$7,182,215.25** |

## EXHIBIT B

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| 00003 Automatic Stay | 64.60 | $59,033.50 |
| 00004 Bankruptcy Litigation | 82.90 | $73,928.00 |
| 00005 Bar Date | 29.00 | $30,647.00 |
| 00006 Claims Reconciliation/Objections | 195.70 | $200,168.50 |
| 00007 Case Administration (Dockets updates, WIP and calendar) | 185.50 | $123,457.50 |
| 00009 Plan of Reorganization | 1,610.30 | $1,863,009.00 |
| 00010 Communications with Client | 180.40 | $184,047.50 |
| 00011 Communications with Unsecured Creditors | 31.20 | $40,508.00 |
| 00012 Committee Meetings | 334.30 | $397,596.50 |
| 00014 Corporate Governance and Board Issues | 16.20 | $15,587.50 |
| 00016 DIP Financing/Cash Management/Exit Financing | 901.70 | $823,173.00 |
| 00017 Executory Contracts/Lease issues | 7.20 | $7,557.00 |
| 00018 General Case Strategy(includes calls with client | 459.40 | $533,720.00 |
| 00020 Court Hearings | 628.60 | $676,814.50 |
| 00023 Non-Working Travel | 297.50 | $185,751.25 |
| 00024 Power Purchase Agreements | 18.60 | $17,442.00 |
| 00025 Reclamation/503(b)(9) Claims | .60 | $801.00 |
| 00026 Regulatory, Political and Legislative | 70.10 | $68,644.50 |
| 00027 CPUC | 287.60 | $266,740.50 |
| 00028 FERC | 18.80 | $16,150.50 |
| 00029 Retention/Fee Applications | 286.20 | $258,069.00 |
| 00030 Retention/Fee Applications Ordinary Course | 3.20 | $2,944.00 |
| 00032 Subrogation Issues | 142.80 | $166,812.00 |

| | | |
|---|---|---|
| 00033 Tort Committee | 54.10 | $44,708.00 |
| 00034 Tax Issues | 14.60 | $16,628.00 |
| 00038 Wildfire Claims and Treatment | 1,140.50 | $1,074,468.5 |
| 00039 Employee Benefits/Severance Issues | 35.60 | $33,808.50 |
| **Total** | **7,097.20** | **$7,182,215.25** |

**EXHIBIT C**

**EXPENSE SUMMARY**

| Expense Category | Total Expenses |
|---|---|
| Airfreight/Messenger | $2,945.56 |
| Cab Fares/Local Transportation | $17,328.58 |
| Computerized Database Research | $89,467.37 |
| Filing Fees | $1,188.57 |
| Lodging | $52,179.55 |
| Meals | $7,950.33 |
| Photocopies/Printing | $6,686.00 |
| Telephone | $4,390.45 |
| Transcript Expenses | $28,967.84 |
| Travel | $41,732.58 |
| **TOTAL** | **$252,836.83** |

**EXHIBIT D**

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES**

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | Billed<br>Firm-wide for preceding<br>Fiscal year (FY2018)[1] | Billed<br>October 1, 2019 through<br>January 31, 2020 |
| Partner | $1,329.38 | $1,481.95 |
| Counsel | $1,053.49 | $1,119.83 |
| Associate | $753.07 | $815.52 |
| Paralegal | $281.10 | $334.47 |
| Aggregated | $869.72 | $1,011.79 |

---

[1] As requested in the U.S. Trustee Guidelines, the calculations in this column exclude members of Milbank's Financial Restructuring Group.

9

# **EXHIBIT E**

## **BUDGET AND STAFFING PLAN**

Case: 19-30088   Doc# 6278   Filed: 03/13/20   Entered: 03/13/20 10:48:18   Page 38 of 50

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **- and -** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | |
| ☐    Affects PG&E Corporation<br>☐    Affects Pacific Gas and Electric Company<br>☑    Affects both Debtors<br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **BUDGET FOR MILBANK LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020** |

Date Retention Approved:   April 29, 2019 *nunc pro tunc* to February 12, 2019

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES[2] |
|---|---|---|
| Administrative Expense Claims (00001) | 5 | $5,335.60 |
| Asset Sales/363 Sales (00002) | 5 | $5,335.60 |
| Automatic Stay (00003) | 125 | $133,390.00 |
| Bankruptcy Litigation (00004) | 100 | $106,712.00 |
| Bar Date (00005) | 65 | $69,362.80 |
| Claims Reconciliation/Objections (00006) | 275 | $293,458.00 |
| Case Administration (Docket Updates, WIP and calendar) (00007) | 250 | $266,780.00 |
| CCA and Aggregator Issues (00008) | 25 | $26,678.00 |
| Plan of Reorganization (00009) | 1,800 | $1,920,816.00 |

---

[2]   The estimated fees contained herein are calculated by multiplying the estimated hours by $1,067.12, the average blended rate of the Milbank professionals and paraprofessionals working on these cases for the month of September 2019.

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES[2] |
|---|---|---|
| Communications with Client (00010) | 250 | $266,780.00 |
| Communications with Unsecured Creditors (00011) | 50 | $53,356.00 |
| Committee Meetings (00012) | 450 | $480,204.00 |
| Committee Governance (00013) | 60 | $64,027.20 |
| Corporate Governance and Board Issues (00014) | 50 | $53,356.00 |
| Customer, Supplier and Vendor Issues (00015) | 10 | $10,671.20 |
| DIP Financing/Cash Management/Exit Financing (00016) | 750 | $800,340.00 |
| Executory Contracts/Lease Issues (00017) | 25 | $26,678.00 |
| General Case Strategy (includes calls with clients and team calls and meetings) (00018) | 450 | $480,204.00 |
| Insurers and Insurance Claims (00019) | 15 | $16,006.80 |
| Court Hearings (00020) | 700 | $746,984.00 |
| Mediation and Alternative Dispute Resolution (00021) | 10 | $10,671.20 |
| Non-Bankruptcy Litigation (00022) | 10 | $10,671.20 |
| Non-Working Travel (00023) | 400 | $426,848.00 |
| Power Purchase Agreements (00024) | 50 | $53,356.00 |
| Reclamation/503(b)(9) Claims (00025) | 10 | $10,671.20 |
| Regulatory, Political and Legislative (00026) | 125 | $133,390.00 |
| CPUC (00027) | 450 | $480,204.00 |
| FERC (00028) | 45 | $48,020.40 |
| Retention/Fee Applications (00029) | 350 | $373,492.00 |
| Retention/Fee Application Ordinary Course Professionals (00030) | 10 | $10,671.20 |
| Schedules/Statements of Financial Affairs (00031) | 5 | $5,335.60 |
| Subrogation Issues (00032) | 150 | $160,068.00 |

Case: 19-30088   Doc# 6278   Filed: 03/13/20   Entered: 03/13/20 10:48:18   Page 40 of 50

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES[2] |
|---|---|---|
| Tort Committee (00033) | 95 | $101,376.40 |
| Tax Issues (00034) | 50 | $53,356.00 |
| Trust Structure, Corpus and Terms (00035) | 5 | $5,335.60 |
| U.S. Trustee (00036) | 10 | $10,671.20 |
| Adequate Assurance Issues (00037) | 5 | $5,335.60 |
| Wildfire Claims and Treatment (00038) | 1,600 | $1,707,392.00 |
| Employee Benefits and Severance Issues (00039) | 100 | $106,712.00 |
| **TOTAL** | **8,940** | **$9,540,052.80** |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case<br>No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **- and -** | Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | |

☐    Affects PG&E Corporation
☐    Affects Pacific Gas and Electric Company
☑    Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

**STAFFING PLAN FOR MILBANK LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020**

Date Retention Approved:   April 29, 2019 *nunc pro tunc* to February 12, 2019

| CATEGORY OF TIMEKEEPER | NUMBER OF TIMEKEEPERS EXPECTED TO WORK ON THE MATTER DURING THE BUDGET PERIOD | AVERAGE HOURLY RATE[1] |
|---|---|---|
| Partners | 12 | $1,488.66 |
| Counsel | 5 | $1,126.66 |
| Sr. Associates (7+ years experience) | 5 | $1,035.40 |
| Associates (4-6 years experience) | 9 | $912.44 |
| Jr. Associates (1-3 years experience) | 10 | $632.98 |
| Paralegals | 10 | $302.63 |
| Staff Attorneys, Case Managers, and Specialists | 3 | $368.99 |

---

[1]   Milbank's hourly rates are subject to customary annual firm-wide adjustments in the ordinary course of business, notice of which adjustments shall be provided to the Committee and the U.S. Trustee.

1

**EXHIBIT F**

2
**SUMMARY OF FEES AND HOURS BUDGETED
COMPARED TO FEES AND HOURS BILLED**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| PROJECT CATEGORY | Budgeted Hours | Billed Hours | Budgeted Fees | Billed Fees |
|---|---|---|---|---|
| Administrative Expense Claims (00001) | 5.00 | 0 | $5,335.60 | 0 |
| Asset Sales/363 Sales (00002) | 5.00 | 0 | $5,335.60 | 0 |
| Automatic Stay (00003) | 125.00 | 64.60 | $133,390.00 | $59,033.50 |
| Bankruptcy Litigation (00004) | 100.00 | 82.90 | $106,712.00 | $73,928.00 |
| Bar Date (00005) | 65.00 | 29.00 | $69,362.80 | $30,647.00 |
| Claims Reconciliation/Objections (00006) | 275.00 | 195.70 | $293,458.00 | $200,168.50 |
| Case Administration (Docket Updates, WIP and calendar) (00007) | 250.00 | 185.50 | $266,780.00 | $123,457.50 |
| CCA and Aggregator Issues (00008) | 25.00 | 0 | $26,678.00 | 0 |
| Plan of Reorganization (00009) | 1,800.00 | 1,610.30 | $1,920,816.00 | $1,863,009.00 |
| Communications with Client (00010) | 250.00 | 180.40 | $266,780.00 | $184,047.50 |
| Communications with Unsecured Creditors (00011) | 50.00 | 31.20 | $53,356.00 | $40,508.00 |
| Committee Meetings (00012) | 450.00 | 334.30 | $480,204.00 | $397,596.50 |
| Committee Governance (00013) | 60.00 | 0 | $64,027.20 | 0 |
| Corporate Governance and Board Issues (00014) | 50.00 | 16.20 | $53,356.00 | $15,587.50 |
| Customer, Supplier and Vendor Issues (00015) | 10.00 | 0 | $10,671.20 | 0 |
| DIP Financing/Cash Management (00016) | 750.00 | 901.70 | $800,340.00 | $823,173.00 |
| Executory Contracts/Lease Issues (00017) | 25.00 | 7.20 | $26,678.00 | $7,557.00 |
| General Case Strategy (includes calls with clients and team calls and meetings) (00018) | 450.00 | 459.40 | $480,204.00 | $533,720.00 |
| Insurers and Insurance Claims (00019) | 15.00 | 0 | $16,006.80 | 0 |
| Court Hearings (00020) | 700.00 | 628.80 | $746,984.00 | $676,814.50 |
| Mediation and Alternative Dispute Resolution (00021) | 10.00 | 0 | $10,671.20 | 0 |

| PROJECT CATEGORY | Budgeted Hours | Billed Hours | Budgeted Fees | Billed Fees |
|---|---|---|---|---|
| Non-Bankruptcy Litigation (00022) | 10.00 | 0 | $10,671.20 | 0 |
| Non-Working Travel (00023) | 400.00 | 297.50 | $426,848.00 | $185,751.25 |
| Power Purchase Agreements (00024) | 50.00 | 18.60 | $53,356.00 | $17,442.00 |
| Reclamation/503(b)(9) Claims (00025) | 10.00 | .60 | $10,671.20 | $801.00 |
| Regulatory, Political and Legislative (00026) | 125.00 | 70.10 | $133,390.00 | $68,644.50 |
| CPUC (00027) | 450.00 | 287.60 | $480,204.00 | $266,740.50 |
| FERC (00028) | 45.00 | 18.80 | $48,020.40 | $16,150.50 |
| Retention/Fee Applications (00029) | 350.00 | 286.20 | $373,492.00 | $258,069.00 |
| Retention/Fee Application Ordinary Course Professionals (00030) | 10.00 | 3.20 | $10,671.20 | $2,944.00 |
| Schedules/Statements of Financial Affairs (00031) | 5.00 | 0 | $5,335.60 | 0 |
| Subrogation Issues (00032) | 150.00 | 142.80 | $160,068.00 | $166,812.00 |
| Tort Committee (00033) | 95.00 | 54.10 | $101,376.40 | $44,708.00 |
| Tax Issues (00034) | 50.00 | 14.60 | $53,356.00 | $16,628.00 |
| Trust Structure, Corpus and Terms (00035) | 5.00 | 0 | $5,335.60 | 0 |
| U.S. Trustee (00036) | 10.00 | 0 | $10,671.20 | 0 |
| Adequate Assurance Issues (00037) | 5.00 | 0 | $5,335.60 | 0 |
| Wildfire Claims and Treatment (00038) | 1,600.00 | 1,140.50 | $1,707,392.00 | $1,074,468.50 |
| Employee Benefits and Severance Issues (00039) | 100.00 | 35.60 | $106,712.00 | $33,808.50 |
| **TOTAL** | **8,940.00** | **7,097.20** | **$9,540,052.80** | **$7,182,215.25** |

1

2                    **EXHIBIT G**

3               **KRELLER DECLARATION**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **CERTIFICATION OF THOMAS R. KRELLER REGARDING THIRD INTERIM APPLICATION OF MILBANK LLP FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020** |

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☑ Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

1.　I am a partner in the Financial Restructuring Group of the firm Milbank LLP ("Milbank"), counsel to the official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases. I am admitted to the bar of the State of California.

2.　I make this certification regarding the *Third Interim Application of Milbank LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period from October 1, 2019 through January 31, 2020* (the "Third Interim Fee Application"). I am familiar with: (i) the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701] (the "Interim Compensation Order"); (ii) the *Guidelines for Compensation and*

*Expense Reimbursement of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "<u>Local Guidelines</u>"); (iii) the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "<u>U.S. Trustee Guidelines</u>"); and (iv) the *Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company*, filed on October 24, 2019 [Docket No. 4473-1] (the "<u>Fee Examiner Protocol</u>" and collectively, the "<u>Fee Guidelines</u>").

3.     I have reviewed the Third Interim Fee Application and hereby certify that, to the best of my knowledge, information and belief, it complies with the Fee Guidelines and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.   The fees and disbursements sought are billed at rates in accordance with those generally charged by Milbank and generally accepted by Milbank's clients.   I certify that: (i) all of the services for which compensation is sought in the Third Interim Fee Application were rendered for or on behalf of the Committee solely in connection with the Chapter 11 Cases; and (ii) the Third Interim Fee Application is being served on the Debtors, the TCC, the U.S. Trustee and the Fee Examiner in accordance with the Interim Compensation Order.   Additionally, I hereby certify that, in accordance with the Interim Compensation Order, and in connection with preparing this Third Interim Fee Application, Milbank has made a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures set forth in the U.S. Trustee Guidelines.   To that end, Milbank specifically responds to certain questions identified in the U.S. Trustee Guidelines as follows:

<u>Question 1</u>:   Did Milbank agree to any variations from, or alternatives to, Milbank's standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

<u>Answer</u>:     No.

**Question 2:** If the fees sought in the Third Interim Fee Application as compared to the fees budgeted for the time period covered by the Application are higher by 10% or more, did Milbank discuss the reasons for the variation with the client?

        Answer: The fees sought in the Third Interim Fee Application are less than the fees budgeted for the time period covered by such application.

**Question 3:** Have any of the professionals included in the Third Interim Fee Application varied their hourly rate based on geographic location of the bankruptcy case?

        Answer: No.

**Question 4:** Does the Third Interim Fee Application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices?

        Answer: The Third Interim Fee Application includes a small amount of time and fees related to reviewing or revising time records for privileged or confidentiality and preparing, reviewing or revising invoices in connection with the preparation of Monthly Fee Statements relating to the period covered by this Third Interim Fee Application.

**Question 5:** Does the Third Interim Fee Application include time for fees for reviewing time records to redact any privileged or other confidential information?

        Answer: Yes. See above.

**Question 6:** Does the Third Interim Fee Application include any rate increases since retention in these cases:

        Answer: Yes. The Third Interim Fee Applications does include rate increases since retention in these cases.

**Question 7:** Did the client agree when retaining Milbank to accept all future rate increases? If not, did Milbank inform the client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

        Answer: The client did not prospectively approve such rate increases but was notified at the outset of the engagement that Milbank's hourly rates are reviewed and revised from time to time. In accordance with ABA Formal Ethics Opinion 11-458, Milbank also notified the Committee at the outset of the representation that it need not agree to any modified rates or terms in order to have Milbank continue its representation of the Committee.

1

2     _/s/ Thomas R. Kreller_
      Thomas R. Kreller

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28