Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone:     415.659.2600
Facsimile:      415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Telephone:     310.820.8800
Facsimile:      310.820.8859
Email:  esagerman@bakerlaw.com
Email:  drichardson@bakerlaw.com
Email:  lattard@bakerlaw.com

*Counsel for the Official Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | |
| **- and -** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **THIRD INTERIM APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020** |
| □ Affects PG&E Corporation | |
| □ Affects Pacific Gas and Electric Company | Date: TBD Time: TBD |
| ■ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Objection Date: April 2, 2020 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**COVERSHEET FOR THIRD INTERIM APPLICATION OF THE LAW FIRM OF BAKER & HOSTETLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020**

| | |
|---|---|
| Name of Applicant: | Baker & Hostetler LLP |
| Name of Client: | Official Committee of Tort Claimants |
| Time period covered by this application: | 10/1/2019-1/31/2020 |
| Total fees sought this period: | $15,252,640.50* |
| Total expenses sought this period: | $3,574,530.67 |
| Petition Date: | 1/29/2019 |
| Retention Date: | *Effective* 2/15/2019 |
| Date of order approving employment | 4/10/2019 |
| Total compensation approved by interim order to date: | $6,820,134.67 |
| Total expenses approved by interim order to date: | $233,430.74 |
| Total allowed compensation paid to date: | $25,689,728.87 |
| Total allowed expenses paid to date: | $5,391,864.46 |
| Blended rate in this application for all attorneys | $649.05 |
| Blended rate in this application for all timekeepers | $609.99 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $9,673,951.60 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $3,259,330.58 |
| Number of professionals included in this application | 96 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | 0 |
| If applicable, difference between fees budgeted and compensation sought for this period | Actual: $15,252,640.50 <br> Budget Range: $12,800,320-$18,091,320 |
| Number of professionals billing fewer than 15 hours to the case during the period | 16 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No |

*In each of the four months covered by this Third Interim Application, Applicant reduced the amount of fees sought prior to generating its monthly fee statements. For the months of October, November, December and January, Applicant voluntarily wrote off a grand total of fees in the amount of $696,318.50.

Case: 19-30088    Doc# 6286    Filed: 03/13/20    Entered: 03/13/20 13:47:21    Page 2 of 44

## SUMMARY OF THIRD INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 12/2/2019 (DE 4937) (9th) | 10/1/19-10/31/19 | $4,533,957.00 | $1,006,053.04 | $3,627,165.60 | $1,006,053.04 | $3,627,165.60 | $1,006,053.04 | $906,791.40 |
| 1/2/2020 (DE 5247) (10th) | 11/1/19-11/30/19 | $4,342,021.00 | $554,112.16 | $3,473,616.80 | $554,112.16 | $3,473,616.80 | $554,112.16 | $868,404.20 |
| 1/30/2020 (DE 5557) (11th) | 12/1/19-12/31/19 | $3,216,461.50 | $1,699,165.38 | $2,573,169.20 | $1,699,165.38 | $2,573,169.20 | $1,699,165.38 | $643,292.30 |
| 3/2/2020 (DE 5980) (12th) | 1/1/20-1/31/20 | $3,160,201.00 | $315,200.09 | $2,528,160.80 | $315,200.09 | $0 | $0 | $3,475,401.09 |
| **Total for Third Interim Fee Application** | | **$15,252,640.50** | **$3,574,530.67** | **$12,202,112.40** | **$3,574,530.67** | **$9,673,951.60** | **$3,259,330.58** | **$5,893,888.99** |

Objections to Monthly Fee Statements:  No objections have been filed regarding the Ninth, Tenth or Eleventh Monthly Fee Statements.  The deadline for objections to the Twelfth Monthly Fee Statement is March 23, 2020.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**THIRD INTERIM APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020**

**TO THE HONORABLE DENNIS MONTALI,**
**UNITED STATES BANKRUPTCY JUDGE**

Baker & Hostetler, LLP ("**Baker**" or "**Applicant**"), counsel to the Official Committee of Tort Claimants ("**TCC**") appointed in the above-captioned voluntary Chapter 11 bankruptcy cases (the "**Bankruptcy Cases**"), hereby submits its *Third Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period October 1, 2019 through January 31, 2020* (the "**Application**") seeking entry of an order, on an interim basis, pursuant to sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules**"), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines"**), the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the  revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**") for interim allowance of compensation for professional services and reimbursement of actual and necessary expenses in connection with Baker's representation of the TCC in the above captioned cases.

The Applicant seeks interim approval of compensation and reimbursement of expenses from October 1, 2019 through January 31, 2020 (the "**Application Period**") totaling **$18,827,171.17** which sum represents compensation for legal services rendered in the amount of $15,252,640.50 and reimbursement for expenses incurred in the amount of $3,574,530.67.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

This Application is based upon the contents hereof, together with the exhibits, the declaration of Cecily A. Dumas filed concurrently herewith, the pleadings, papers, and records on file in these cases, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit G**.

## **RELEVANT BACKGROUND**

1. On January 29, 2019 (the "**Petition Date**") the Debtors filed the Bankruptcy Cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Bankruptcy Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2. On February 15, 2019, the Office of the United States Trustee ("**UST**") filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453]. Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530]. The current members of the TCC are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v) Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen M. Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson.

3. The TCC represents the interests of fire claimants, whose claims arose as a result of the Debtors' long history of unsafe operations.

4. As permitted in the Guidelines, Baker incorporates by reference the narrative history furnished in the contemporaneous applications filed by the Debtors' professionals.

5. On March 17, 2019, the TCC filed its *Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket

Case: 19-30088 Doc# 6286 Filed: 03/13/20 Entered: 03/13/20 13:47:21 Page 5 of 44

5

No. 934] (the "**Retention Application**").  On April 10, 2019, the Court entered its *Order Granting the Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket No. 1331] (the "**Retention Order**").  A true and correct copy of the Retention Order is attached hereto as **Exhibit E**.  Baker is not holding, and has not held, any retainer in connection with the Bankruptcy Cases or the work performed on behalf of the TCC.

6.      As specifically detailed and set forth below, Baker worked with the TCC, its financial advisors, the Official Committee of Unsecured Creditors (the "**OCUC**"), its financial advisors, the Debtors, and their financial advisors to address the numerous critical issues arising in the Bankruptcy Cases during the Application Period.

7.      On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("**Fee Examiner**") in the Bankruptcy Cases. [Docket No. 2267].    Baker has communicated with the Fee Examiner and has supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

**RELIEF REQUESTED AND BASIS FOR RELIEF**

8.      This Application is Baker's third interim request for allowance and payment of fees and expenses as counsel to the TCC.

9.      Pursuant to Bankruptcy Code §§ 330 and 331, Baker respectfully requests entry of an order, on an interim basis, allowing and approving **$18,827,171.17** which sum represents compensation for legal services rendered in the amount of $15,252,640.50 and reimbursement for expenses incurred in the amount of $3,574,530.67.  Copies of Baker's invoices detailing the services rendered and expenses incurred during the Application Period have been filed on the docket as attachments to Baker's monthly fee statements and have been furnished to the Debtors, counsel for the OCUC, the UST and the Fee Examiner (see Docket Nos. 4937, 5247, 5557 and 5980).

10.     Baker has made every effort to ensure that this Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its attorneys and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

paraprofessionals, as well as with other retained professionals in these cases. Baker has supplied the Fee Examiner with Baker's monthly fee statements in an electronic LEDES format Baker believes is acceptable to the Fee Examiner.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

11.     Baker's attorneys spent 25,004.60 hours in performing the services described in the Application, at an average billing rate of $649.05 per hour. Baker's blended hourly rate for all timekeepers in this Application is $609.99

## PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED

12.     In addition to the requirement that a description of the general services rendered by a professional be provided in a fee application, the Guidelines also require that applications for compensation should:

> "…categorize by subject matter and separately discuss, each project or task. With respect to each project or task, the number of hours spent, the results obtained, and the amount of compensation and expenses requested should be set forth at the conclusion of the discussion of that project or task."

13.     Accordingly, Baker established separate project billing categories for its representation of the TCC during the Application Period, as follows:

| CODE | DESCRIPTION |
|------|-------------|
| 001 | Administrative Expense Claims |
| 002 | Asset Sales/363 Sales |
| 003 | Automatic Stay |
| 004 | Bankruptcy Litigation |
| 005 | Bar Date Motion/Claims Noticing |
| 006 | Case Administration (docket updates, WIP, and calendar) |
| 007 | CCA and other Aggregator Issues |
| 008 | Chapter 11 Plan/Plan Confirmation |
| 009 | Committee Meetings and Preparation |
| 010 | Corporate and Board Issues |
| 011 | Customer, Supplier and Vendor Issues |
| 012 | DIP Financing/Cash Mgmt./Hedging Transactions |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| CODE | DESCRIPTION |
|------|-------------|
| 013 | Disclosure Statement |
| 014 | Employee Issues |
| 015 | Equity Security Holders |
| 016 | Exclusivity |
| 017 | Executory Contract/Lease Issues |
| 018 | General Case Strategy (includes communication with Committee) |
| 019 | Hearings and Court Matters |
| 020 | Legislative Issues |
| 021 | Non-Bankruptcy Litigation |
| 022 | Non-Working Travel |
| 023 | FERC Adversary Proceeding |
| 024 | District Court Litigation |
| 025 | Regulatory Issues including CPUC and FERC |
| 026 | Retention Applications |
| 027 | Fee Application: Baker |
| 028 | Fee Application: Other Professionals |
| 029 | Schedules/Statement of Financial Affairs |
| 030 | Tax Issues |
| 031 | U.S. Trustee/Fee Examiner Issues |
| 032 | Unsecured Creditor Issues/ Communications/ Meetings |
| 033 | Utility Issues/Adequate Assurance/Insurance |
| 034 | Withdraw Reference |
| 035 | Real Estate and Real Property Issues |
| 036 | Avoidance Action Analysis/Lien Avoidance Analysis |
| 037 | Investigations |
| 038 | Financial Advisors |
| 039 | Other Contested Matters |
| 040 | Operations |
| 041 | KEIP Issues |
| 042 | Subrogation |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| CODE | DESCRIPTION |
|------|-------------|
| 043 | Securities |
| 044 | Wildfire Assistance Program |
| 045 | Asset Analysis and Recovery |
| 046 | Tort Claims Estimation |
| 047 | Class Claims Issues |
| 048 | Kincade Fire Issues |
| 049 | Mediation |
| 050 | Government Claims |
| 051 | CPUC BK OII 19-09-016 |
| 052 | Tort Claims |

14.     These distinct, numbered project billing categories* enabled Baker to monitor its activities and appropriately account for the time expended by its professionals and paraprofessionals. This procedure enables Baker to better inform the TCC, the Court, the UST and the Fee Examiner regarding the nature of the services provided and time expended by its professionals and paraprofessionals. The project billing categories adopted by Baker are consistent with those used by the Debtors in order to ease the burden of the Fee Examiner's review. To the extent the project billing categories are not identical to those used by the Debtors, it is because representing the TCC requires services somewhat different than those the Debtors' professionals are providing to the Debtors, so Baker tailored certain task code descriptions and may have added task codes as necessary to more accurately reflect the nature of the work being performed by Baker on the TCC's behalf.

15.     In an effort to streamline and control legal fees and expenses, Baker endeavored to minimize the expenditure of time by its senior partners and to delegate responsibilities to junior partners, associates and other paraprofessional employees as appropriate. In addition, because Baker does not charge national rates, Baker has endeavored to minimize fees and expenses by

---

* In certain instances, where more than one category of issues might have been addressed during the course of a meeting or telephone conference, Baker's time records may include that time in only one billing category.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

staffing the matter with partners and associates from a cross-section of its offices, in order to take advantage of lower rates charged in certain markets. The blended hourly rate for all Baker professionals and paraprofessionals who provided services during the Application Period is $609.99. Attached hereto as **Exhibit B** is a Summary of the Timekeepers included in this Application, including the name and billing rate of each Baker professional and paraprofessional who provided services to the TCC.

16. In compliance with the Guidelines, a description of the people employed by Baker who rendered services to the TCC in the Bankruptcy Cases during the Application Period and whose time entries appear in the invoices is included in **Exhibit F**, attached hereto.

17. Pursuant to Bankruptcy Code § 504, Baker has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Baker in the Bankruptcy Cases, other than as may be shared among the members of the Baker firm.

18. Set forth below is a summary description, by project billing category, of the services rendered by Baker during the Application Period. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below and are detailed in the invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos. 4937, 5247, 5557 and 5980).

a. <u>Administrative Expense Claims (001)</u>: Baker's work in this category focused on evaluating whether certain claims arising post-petition could be treated as administrative claims as necessary to determine what, if any, position the TCC should take concerning the Debtors' plans for treatment of such claims.

The total hours and amount charged by Baker to this matter during the Application Period represents **15.00 hours** and **$3,000.00** in fees.

b. <u>Automatic Stay (003)</u>: Baker professionals reviewed and analyzed all motions for relief from stay and related exhibits, joinders, stipulations, and oppositions, including but not limited to those filed by Valero Refining Company, the Ghost Ship plaintiffs, Henrietta Energy Storage, Cristina Mendoza, Vlazakis, Hearn, and Tiger Natural Gas as necessary to inform,

Case: 19-30088    Doc# 6286    Filed: 03/13/20    Entered: 03/13/20 13:47:21    Page 10 of 44

advise, and protect the interests of the TCC. When necessary, Baker drafted joinders relating to stay relief filed by other parties.

The total hours and amount charged by Baker to this matter during the Application Period represents **10.30 hours** and **$8,609.00** in fees.

      c.    <u>Bankruptcy Litigation (004)</u>:  Baker continued to perform extensive work during the Application Period in the area of efficiently developing, executing, and coordinating all litigation-related activities.  Baker evaluated all relevant filings to address potential impacts on the TCC and the fire victims.  Baker spent substantial time on discovery related to the issues impacting the TCC and its constituency.  Baker's work encompassed addressing protective orders and related issues, preparing for and attending depositions and preparing summaries of the deposition testimony, and tracking, analyzing, and summarizing hundreds of thousands of pages of discovery for use in litigation focused on protecting the interests of the TCC and recovery on victims' claims.

Baker also analyzed issues relating to post-petition interest, exit financing, subrogation, make-whole premiums and bar dates.  Baker reviewed and analyzed proofs of claim, and post-petition complaints filed against one or both Debtors.  Baker addressed and drafted memoranda and pleadings on matters relating to exclusivity and claims allocation.  Baker engaged in motion practice, including drafting motions to extend the bar date for filing fire proofs of claim, and summary affirmance, and opposing a motion to permit a class proof of claim.

Baker communicated with counsel of record in the bankruptcy case regarding all aspects of litigation including discovery disputes, the bar date and protective orders.  In addition, Baker continued to work on issues concerning each fire caused or allegedly caused by the Debtors and gathered and analyzed background facts in various state court cases as necessary to develop and execute a strategy most effective to the TCC in the Bankruptcy Cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **1,123.00 hours** and **$501,719.00** in fees.

      d.    <u>Bar Date Motion/Claims Noticing (005)</u>: This category includes time spent by Baker professionals seeking an extension of the claims bar date and related motion practice, including depositions and discovery related to bar date extension issues and notice. Baker worked

Case: 19-30088   Doc# 6286   Filed: 03/13/20   Entered: 03/13/20 13:47:21   Page 11 of 44

on the selection and appointment of a fiduciary to administer fire victim claims and conferred with California agencies regarding treatment of fire claims. Baker professionals participated in negotiating a stipulation to extend the bar date. Baker developed a media strategy with respect to communication of the bar date extension and worked with the media and Trident as appropriate on victim outreach, communicating with fire victims to increase their participation in the Chapter 11 cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **360.90 hours** and **$287,742.50** in fees.

 e. <u>Case Administration (docket updates, WIP, and calendar) (006)</u>:  Baker's work in this category encompasses ongoing docket review for maintenance of a master service list and the receipt, review, and tracking of statutory deadlines in the firm's docketing system for all pleadings filed in the bankruptcy court and in related cases pending in other forums.  In addition, this work includes ongoing:  (i) discussions, planning, and strategizing regarding the client communication platform for sharing of documents and information; (ii) maintaining the workspace layout, daily updates to the Magnum tool, and managing account access; (iii) collaboration on case management, staffing and administration; (iv) updates and maintenance of protocols and procedures regarding review and evaluation of pleadings filed to assess potential impacts upon the TCC; (v) distribution of e-filing notices, document management protocols, e-filing procedures and team calendars; (vi) maintaining and updating case-specific discovery management protocols; and (vii) preparation of a weekly Critical Dates Memo for communications with the TCC and core team.

The total hours and amount charged by Baker to this matter during the Application Period represents **372.80 hours** and **$156,927.50** in fees.

 f. <u>CCA and other Aggregator Issues (007)</u>: Baker spent time during the Application Period reviewing CCA comments to the Chapter 11 plan.

The total hours and amount charged by Baker to this matter during the Application Period represents **0.60 hours** and **$570.00** in fees.

 g. <u>Chapter 11 Plan/Plan Confirmation (008)</u>: The work performed in this task code included discussions with and advisement of the TCC regarding the potential framework and

Case: 19-30088 Doc# 6286 Filed: 03/13/20 Entered: 03/13/20 13:47:21 Page 12 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

plan structures available and the development of potential plan terms and related restructuring support agreements. In addition, this task code encompassed significant plan-related research and analysis concerning the types of assets available to tort claimants, exclusivity issues, estimation, inverse condemnation, possible plan trust terms, structures, and implementation, CPUC plan related matters, issues concerning third-party releases, issues particular to tort claimants and plan treatment of mass tort claimants, and issues regarding trustee appointment. This task code also reflects time spent engaged in plan-related discovery, and drafting memoranda concerning plan confirmation issues and standards in the Ninth Circuit and the potential impacts of channeling injunctions. Further encompassed in this task code are negotiations with other constituencies regarding potential plan terms and discussions with the TCC's financial advisors regarding valuation issues as relevant to plan development.

In addition, this task code includes time for meetings, analysis, and negotiation regarding the terms of a potential plan of reorganization, including meeting with the Ad Hoc Group of Bondholders to negotiate a term sheet for a consensual plan. Further, the time spent in this category includes interaction with the TCC's plan subcommittee as necessary to facilitate a plan of reorganization. The task code also includes time for reviewing and objecting to various elements of the Debtors' competing proposed plan.

The total hours and amount charged by Baker to this matter during the Application Period represents **3,041.60 hours** and **$2,238,277.00** in fees.

h. <u>Committee Meetings and Preparation (009)</u>: This task code generally reflects three categories of work. First, attendance at and preparation for (generally weekly) meetings of the TCC, including identification of important topics for presentation to the TCC requiring a TCC vote. Second, this task code reflects conferring with and/or advising the TCC membership and their individual counsel on issues of general strategy and advice concerning new case developments. Third, senior members of the Baker core PG&E team participate in weekly teleconferences to: (i) coordinate activities and strategy in advance of the TCC meetings; (ii) ensure that all Baker professionals are aware of key priorities and overall strategies; and (iii) strategize on

how to efficiently and effectively implement TCC directives, gather specific information important to TCC objectives, and educate the TCC about facets of the case.

Specifically, the time Baker spent in this category includes but is not limited to: (i) ongoing population of the TCC website; (ii) advising TCC members of their rights and duties as committee members; (iii) reporting to the TCC on various regulatory and legislative issues; (iv) working with the TCC's financial advisors to coordinate reporting to the TCC; (v) drafting required TCC meeting agendas, minutes, and reports; (vi) advising the TCC regarding the motion to extend the claims bar date for fire victims; (vii) alerting and advising the TCC regarding newly filed documents in the Chapter 11 cases; (viii) advising the TCC on estimation issues; (ix) informing and educating the TCC in regards to the RSA proposal and RSA amendments; (x) informing the TCC of the Ghost Ship settlement efforts; and (xi) educating the TCC regarding the trust to be formed under the plan to administer claims of fire victims.

The total hours and amount charged by Baker to this matter during the Application Period represents **931.00 hours** and **$757,557.50** in fees.

i. Corporate and Board Issues (010): Baker's work in this task code focused on reviewing and analyzing the Debtors' motion for retention of director and officer liability defense counsel as well as legal research and analysis into the Debtors' proposed payment of said counsel and the Debtors' director and officer liability insurance policies in connection with same. Baker prepared a memorandum and objection regarding the legal issues presented by the relief sought by the Debtors as necessary to protect the interests of the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **54.00 hours** and **$35,167.00** in fees.

j. DIP Financing/Cash Mgmt./Hedging Transactions (012): During the Application Period, Baker advised the TCC with respect to the Debtors' motion for entry of orders approving the terms of certain exit financing commitment letters and authorizing the Debtors to incur related fees and premiums as administrative expense claims. Among other tasks, Baker analyzed the terms of the proposed exit financing with the assistance of the TCC's financial advisors, evaluated legal issues concerning the propriety of the requested relief under the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Bankruptcy Code and other applicable law, and conducted discovery on the financing motion. Baker also prepared an opposition to the motion. However, while discovery on the motion was pending, the TCC and the Debtors negotiated the Tort Claimants RSA to resolve the treatment of fire victim claims under a plan of reorganization. As part of the Tort Claimants RSA, the TCC agreed that upon approval of the RSA the TCC would suspend discovery on the financing motion, and subsequent amendments or modifications to the motion. The Court approved the RSA and therefore, the TCC ceased all discovery on the financing motion and did not file its opposition. Baker continued to monitor and evaluate subsequent amendments to the financing motion to inform the TCC regarding changes, if any, bearing on the Tort Claimants RSA and the Debtors' proposed plan.

The total hours and amount charged by Baker to this matter during the Application Period represents **164.80 hours** and **$128,969.50** in fees.

k.      Disclosure Statement (013):   This task code encompasses the work performed by Baker reviewing issues related to disclosure, solicitation procedures, and voting procedures, as necessary for Baker to advise and protect the interests of the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **5.80 hours** and **$4,670.00** in fees.

l.      Employee Issues (014):  During the Application Period, Baker's activities included addressing applications by the Debtors to retain McKinsey & Company Inc. United States, and to retain a CEO and President and establish compensation for the Debtors' board members.

The total hours and amount charged by Baker to this matter during the Application Period represents **4.10 hours** and **$3,116.00** in fees.

m.      Equity Security Holders (015):  This task code encompasses the time Baker spent preparing for and attending meetings with equity security holders and the TCC plan subcommittee and reviewing the Debtors' equity holders' public securities filings.

The total hours and amount charged by Baker to this matter during the Application Period represents **18.80 hours** and **$18,250.00** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

n.     Exclusivity (016):  This task category includes time spent by Baker addressing the TCC's joint motion with the Ad Hoc Committee of Senior Unsecured Noteholders to terminate exclusivity and addressing the Debtors' motion to extend the exclusivity period.  Baker analyzed all responses to the motions filed within the Application Period, including those of the Debtors, certain PG&E shareholders, and the Ad Hoc Group of Subrogation Claim Holders.  Baker also conferred with multiple professionals in the cases regarding the potential impacts of continued exclusivity.  Baker conducted extensive discovery relating to exclusivity, including preparing for and attending depositions.  Further, Baker prepared for and attended court relating to the exclusivity motions.

The total hours and amount charged by Baker to this matter during the Application Period represents **161.30 hours** and **$130,365.50** in fees.

o.     Executory Contracts/Lease Issues (017):   During the Application Period, Baker assisted the TCC by analyzing certain contracts to ascertain whether assumption or rejection would be more beneficial to the TCC and drafted a memorandum analyzing issues with respect to 11 U.S.C. § 365.  Baker reviewed motions to assume non-residential lease agreements and analyzed issues related to the potential rejection of power purchase agreements by the Debtors. Baker anticipates providing further assistance to the TCC on matters relating to the assumption and rejection of executory contracts and unexpired leases throughout the course of the Bankruptcy Cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **31.50 hours** and **$37,261.00** in fees.

p.     General Case Strategy (includes communication with Committee) (018): Baker's work in this task code encompassed frequent, ongoing communications (orally and in the form of memoranda) with members of the TCC as necessary to keep the TCC continuously and timely updated with respect to all bankruptcy court, state court, district court, and regulatory proceedings impacting the TCC. In addition, time in this category included working with TCC subcommittees to prioritize tasks and achieve TCC goals and addressing discovery matters.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Communications with the TCC include drafting summaries of hearings, and analysis of pleadings and other documents filed in the bankruptcy court, district court, state court and CPUC. Baker also communicated with the TCC and its members regarding strategic action and progress in the cases. Baker advised the TCC regarding its financial advisors, methods of providing victim outreach, and other media coverage concerning case developments. Communications in this task category also include maintaining an efficient system for tracking and responding to TCC member requests and maintaining and expanding the Magnum database and data room.

The total hours and amount charged by Baker to this matter during the Application Period represents **209.20 hours** and **$157,918.00** in fees.

q. Hearings and Court Matters (019): Services performed by Baker in this category include preparing for and attending hearings, in person or by phone, and drafting summaries of the hearings. In addition, this task code encompasses Baker's meetings with members of the TCC before and after hearings, and internal team meetings to discuss research needed for hearings and hearing coverage among team members.

During the Application Period, Baker prepared for and attended hearings on pleadings relating to establishment of an extended fire claims bar date, retention of professionals, entry into restructuring support agreements, exclusivity, claims estimation, inverse condemnation, post-petition interest, lifting the automatic stay to allow the Ghost Ship cases to proceed to judgment, and authorizing the Debtors to enter into a settlement with the Tubbs Fire preference plaintiffs.

The total hours and amount charged by Baker to this matter during the Application Period represents **225.90 hours** and **$192,082.50** in fees.

r. Legislative Issues (020): Baker continued to perform substantial services for the TCC during the Application Period in the area of legislative tracking and analysis of proposed legislation, including AB 235 and AB 1054 and their potential impacts upon the various pending aspects of the Chapter 11 cases of importance to the TCC. Baker researched new legislation introduced in the California legislature regarding emergency public safety power shutoffs and de-energization and emergency cellular telephone infrastructure and procedure, amd

monitored proceedings in the California Senate Committee on Energy, Utilities and Communications, as necessary to advise the TCC.

Baker also analyzed and prepared extensive memoranda on significant timing issues related to AB 1054 potentially impacted by the U.S. Constitution and various other aspects of federal law. In addition, Baker drafted extensive briefing on inverse condemnation, devoted substantial attention to the appeal of the inverse condemnation ruling and related issues of equitable mootness, and responding to the Debtors' request for a stay.

The total hours and amount charged by Baker to this matter during the Application Period represents **825.10 hours** and **$927,742.50** in fees.

s. <u>Non-Bankruptcy Litigation (021)</u>: Work performed on this matter during the course of the Application Period included research and analysis of legal issues concerning moving to compel production of certain relevant evidence from state and local government agencies related to ongoing criminal investigations, including available remedies, options and appropriate procedures for moving to compel such evidence, operative analysis in Northern District of California and Ninth Circuit for assertion of police law enforcement privilege, and application of legal framework to assertion of said privilege by state agency to prevent disclosure of relevant evidence to non-party. Examination of these legal issues also included research concerning the assertion of law enforcement privilege by state government agencies to shield disclosure of evidence in response to motions to compel said evidence brought by civil non-party, including operative legal and procedural issues regarding the same when such agencies were served with Rule 45 or Rule 2004 subpoenas by non-parties with interest in the underlying evidence, as well as assessment of operative balancing test and factors involved in weighing disclosure versus production.

After conducting the above-referenced research, Baker attorneys drafted their analysis of the legal issues and related guidance as applied to a motion filed by wild fire claimants, including the TCC, to compel certain evidence related to the Camp Fire from state and/or city government agencies that was relevant to the claims estimation proceeding pending before Judge Donato. This legal research and analysis was also utilized in preparing letter briefs submitted to Judge Donato in

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   support of the motion filed by wild fire claimants to compel evidence from Cal Fire and the

2   California AG's investigative unit in connection with the claims estimation proceeding including

3   to formulate and present legal arguments and factual support for the TCC's positions on issues

4   related to Cal Fire's proposed redactions to investigation report, grand jury secrecy, scope of

5   investigative powers for relevant agencies, privilege waiver issues, and issues related to privileges

6   for certain materials related to grand jury.

7       The total hours and amount charged by Baker to this matter during the Application Period

8   represents **50.00 hours** and **$31,186.50** in fees.

9           t.      Non-Working Travel (022): This task code encompassed the time spent by

10  Baker personnel travelling to and from hearings, depositions, meetings with the TCC, meetings

11  with experts, and meetings with bondholders and various other interested parties. Baker

12  professionals spent over **1427.30 hours**  related to non-working travel during the Application

13  Period, which was reduced to **602.80 hours** per the applicable guidelines.

14      The total hours and amount charged by Baker to this matter during the Application Period

15  represents **602.80 hours** and **$385,190.50** in fees.

16          u.      <u>District Court Litigation (024)</u>:  During the Application Period, Baker

17  continued to actively monitor criminal and civil matters involving the Debtors as relevant to

18  ascertaining possible impacts upon the TCC.  Work performed in this task code during the

19  Application Period included identifying and analyzing specific relevant filings in the district court

20  action, *U.S. v. Pacific Gas and Electric Company*, 3:14-cr-000175-WHA, in connection with

21  PG&E's criminal probation.  Many of the filings in this action during the Application Period were

22  relevant to the TCC, its interests, and its planning and strategy for both current and potential future

23  litigation.

24      In addition, Baker evaluated and drafted substantive analysis and recommendations with

25  respect to court orders and responsive filings concerning: (i) PG&E's public safety power shutoffs

26  during the period of October 9th-12th and again in later October, along with details concerning

27  related instances of vegetation or infrastructure damage that could have caused arcing; (ii) 2019

28  fires of more than 10 acres that involved PG&E equipment, including information regarding the

Kincade Fire; (iii) filings related to certain exhibits and portions of the CPUC Report on the Camp Fire; and (iv) issues related to PG&E's compliance with the conditions of its probation concerning vegetation management and its wildfire mitigation plan, as well as possible modifications to said conditions. Evaluating these issues entailed the targeted assessment of specific orders and requests for information issued by Judge William Alsup and the corresponding responses, exhibits, admissions, photographs, declarations and other related relevant filings.

After identifying and analyzing the relevant filings, Baker drafted substantive memoranda of key issues and information of particular importance to the TCC, which was then used to inform certain aspects of litigation strategy and global case planning. This analysis included identifying specific issues warranting further examination and evidence to target during potential future litigation. Given the relevance of certain filings in the instant action, Judge Alsup would later issue an order permitting the TCC and one of its expert witnesses to be heard and to submit evidence.

The total hours and amount charged by Baker to this matter during the Application Period represents **452.60 hours** and **$263,947.50** in fees.

v.      <u>Regulatory Issues including CPUC and FERC (025)</u>:  Baker performed extensive monitoring and review of proceedings pending before CPUC and FERC to identify those which could have a material direct or indirect effect on the timing and amount of recoveries by the tort claimants. This important work required Baker to become familiar with the procedural posture of numerous pending proceedings and the filings, rulings, and decisions made in each to date. Baker monitored and tracked ongoing developments and upcoming deadlines and events in spreadsheet form for the TCC's discussion and planning purposes. This work included a daily review of filings, issuances, and transcripts and occasional attendance at prehearing conferences as necessary to the frequent meetings scheduled with the TCC in order to inform them of relevant developments. In addition, Baker monitored CPUC and FERC filings and issuances generally to identify any new proceedings, and reported to the TCC, both orally and in written memoranda, with respect to such new proceedings.

Specifically, as necessary to inform and advise the TCC, Baker: (i) conducted research analyzed CPUC filings and public records for PG&E's Exponent Reports regarding transmission

line inspections and the Caribou Palermo pipeline; (ii) reviewed and analyzed the settlement in the CPUC Locate and Mark proceeding; (iii) researched news releases and reviewed protest letters on deenergization issues; (iv) drafted memoranda regarding CPUC proposed decision on non-bypassable charge to support wildfire fund; (v) drafted memoranda regarding PG&E's settlement with the Safety and Enforcement Division in Locate and Mark proceeding; (vi) researched CPUC policy regarding treatment of NOL's; (vii) analyzed OIR's and scoping memos of CPUC rulemaking proceedings bearing on tort claims; (viii) drafted memoranda regarding the ruling in CPUC proceeding on potential PG&E penalties and other remedies; (ix) conferred with bondholders and public advocates regarding reorganization issues, alternative plan, and concerns in OII proceeding; (x) attended webcasts of CPUC emergency hearings regarding PG&E power shut off; (xi) analyzed responses to PG&E briefing in CPUC and review of CPUC briefs on unresolved issues of law; (xii) drafted memoranda regarding CPUC measures to address planned safety power shut off events; (xiii) drafted memoranda regarding CPUC order on non-bypassable charge to recover contributions to wildfire fund; (xiv) drafted memoranda regarding CPUC commissioners amended scoping ruling; (xv) analyzed adversary complaint filed against PG&E by various qualifying small power producers; (xvi) analyzed ongoing regulatory and legislative matters as relevant to plan confirmation and TCC strategic concerns; (xvii) conducted research regarding CPUC authority over liens on utility assets; (xviii) analyzed Safety and Enforcement Division's report on Camp Fire and prepared related memoranda on report and subsequent settlement filings; and (xix) drafted memoranda regarding PG&E's motion to dismiss complaint seeking billions in damages in connection with planned power outages.

The total hours and amount charged by Baker to this matter during the Application Period are **613.80 hours** representing **$405,949.50** in fees.

w. <u>Retention Applications (026)</u>: During the Application Period, Baker continued to provide substantial assistance to the TCC in seeking and obtaining the professional representation desired by the TCC and evaluating whether the retention of certain professionals by the Debtors was necessary and appropriate. With respect to the TCC's professionals, Baker prepared an application to employ Professor Lynn Baker as special counsel, and assisted Professor

Baker with the related disclosures and declaration. Baker also prepared and filed a reply to an application to clarify or amend the scope of Baker's representation of the TCC.

With respect to other retention applications, Baker reviewed the Debtors' applications to retain PricewaterhouseCoopers LLP and McKinsey & Company, Inc. United States and advised the TCC with respect to relevant considerations. In the case of McKinsey & Company, Inc. United States, Baker prepared a conditional consent to retention. In addition, Baker analyzed issues concerning disclosures.

The total hours and amount charged by Baker to this matter during the Application Period represents **95.70 hours** and **$71,189.50** in fees.

x.    Fee Application – Baker (027): During the Application Period, Baker reviewed all expenses and billing entries for the months of October, November, December, and January as necessary to prepare monthly fee statements and to confirm that billing for both fees and costs substantially complied with UST guidelines, the Revised Protocol, and Judge Montali's rules in terms of the adequacy of task descriptions and to confirm tasks were properly categorized consistent with the task codes established for use by professionals in the Bankruptcy Cases. Baker made discretionary downward adjustments in fees for the benefit of the estate each month, and prepared certificates of no objection for each month for which no objection was filed to Baker's fee statement. Baker also conferred with the TCC chair regarding Baker's monthly fee statements and billing protocols and responded to questions by TCC members regarding the fee application.

In addition, Baker continued to communicate with the Fee Examiner and/or his team regarding preferences for receiving billing data and billing protocols. Baker worked closely with the Fee Examiner to come to an agreement on a reduction in fees and prepared and revised an amendment to Baker's First Interim Fee Application as requested by the Fee Examiner. Baker also prepared a proposed order reflecting these changes pursuant to the Fee Examiner's request.

Baker also drafted and filed its Second Interim Fee Application. This work included reviewing all work performed during the Application Period and drafting narrative summaries for activities in each particular billing task code, drafting responses to the questions listed in the UST

Guidelines for larger Chapter 11 cases, preparing a staffing plan and budget, and preparing all exhibit attachments to Baker's Second Interim Fee Application.

The total hours and amount charged by Baker to this matter during the Application Period represents **229.50 hours** and **$108,943.50** in fees.

y.　Fee Application – Other Professionals (028):　Baker's work this task code consisted of assisting the TCC's professionals, including Dundon Advisers LLC, Lincoln Partners Advisors LLC, Development Specialists, Inc. and Trident DMG LLC, in preparing their fee statements and fee applications in accordance with established protocols in the Chapter 11 Cases and in preparing certificates of no objection.　In addition, Baker reviewed fee statements filed by other professionals including those for Weil, Gotshal & Manges LLP, Cravath, Swaine & Moore LLP, Munger Tolles & Olson LLP, Coblentz Patch Duffy & Bass LLP and KPMG LLP, as necessary to advise the TCC as to the amounts sought.　Baker consulted with the Fee Examiner and/or his professionals, the Office of the United States Trustee as well as other case professionals to address billing procedures and protocols.

The total hours and amount charged by Baker to this matter during the Application Period represents **105.80 hours** and **$62,650.00** in fees.

z.　Tax Issues (030):　Baker professionals performed substantial analysis of tax issues during the Application Period in connection with the development of the trust being established pursuant to the plan for the treatment of fire claims. Baker analyzed issues concerning the impacts of Net Operating Losses ("NOLs") and carry forwards in connection with a potential settlement with equity holders, performed research regarding preservation of NOLs and related research regarding IRC 382, reviewed PG&E NOL monetization considerations prepared by Lincoln, reviewed PG&E SEC filings which include Tax Receivable Agreements, performed analysis and review of Tax Benefit Agreements and letters of credit, analysis of income taxation of trusts under various domiciles as relevant to situs of plan trust, researched whether certain provisions of the IRC were incorporated into the California Revenue and Taxation Code, analyzed California Franchise Tax Board rulings, and provided input on tax issues for the plan term sheet as relevant to the interests of the TCC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The total hours and amount charged by Baker to this matter during the Application Period represents **151.00 hours** and **$116,321.00** in fees.

aa. <u>U.S. Trustee/Fee Examiner Issues (031)</u>: During the Application Period, Baker communicated with Debtors' counsel and counsel to the OCUC regarding mutual concerns with procedures as proposed by the Fee Examiner in instances where they differed from longstanding procedures established by Judge Montali. Baker prepared for and attended a hearing on the Fee Examiner's proposed procedures and provided input on a response objecting to certain of the Fee Examiner's proposed procedures drafted by the Debtors' professionals. In addition, Baker prepared a non-disclosure agreement for the Fee Examiner in order to permit the Fee Examiner to review confidential materials associated with Baker's, experts, case strategy and work product for the TCC.

Baker's professionals worked with the Fee Examiner to resolve disputed issues concerning fees and/or costs and reached an agreement with the Fee Examiner as to the fees and costs in Baker's First Interim Fee Application and drafted proposed orders and revised proposed orders documenting the agreements as requested by counsel for the Fee Examiner. In addition, Baker timely responded to all requests of the Fee Examiner for backup information on fees and costs.

The total hours and amount charged by Baker to this matter during the Application Period represents **46.90 hours** and **$23,863.50** in fees.

bb. <u>Unsecured Creditor Issues/ Communications/ Meetings (032)</u>: This task code reflects Baker's time addressing two substantive issues in connection with the proposed plans of reorganization filed by the Debtors and the Bondholders: (i) the application of the appropriate post-petition interest; and (ii) the treatment of "make whole" premiums of the Bondholders in these cases. Legal research was conducted on both issues for their treatment by various courts across the country. Certain of the bonds at issue with respect to the "make whole" premiums were analyzed for potential treatment under the competing plans of reorganization and articulated analysis by various courts.

Baker drafted a memorandum incorporating the analysis of the applicable case law, statutory authority and bond terms and circulated for discussion amongst the case team and

members of the TCC. Correspondence and meetings were held regarding the analysis and the TCC's position with respect to same and the then-competing plans in the case. Additional revisions to the memorandum on both issues were conducted to incorporate the discussion points and collateral issues raised by the legal issues as well as Fifth Circuit case law issued subsequent to development of the memorandum. Briefing on these issues by the parties in this case were reviewed and analyzed and court appearances by the TCC's counsel before the Bankruptcy Court were made on the issues briefed.

This task code was also utilized by Baker regarding disclosure issues in the proposed plans, Restructuring Support Agreement issues, claims classification and claims trading, and for correspondence with members of the TCC regarding these issues.

The total hours and amount charged by Baker to this matter during the Application Period represents **434.80 hours** and **$417,832.00** in fees.

cc. <u>Withdraw Reference (034)</u>: During the Application Period, Baker reviewed and analyzed issues concerning withdrawal of the reference and assessed impacts of the order withdrawing the reference upon the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **1.40 hours** and **$1,162.00** in fees.

dd. <u>Real Estate and Real Property Issues (035)</u>: This task focused on reviewing and analyzing the Debtors' motion for assumption of certain real property leases in connection with the continued operations of its business. The motion and supporting declaration were reviewed and a summary of same was prepared and discussed to determine what position, if any, the Committee would take with respect to the motion.

The total hours and amount charged by Baker to this matter during the Application Period represents **2.90 hours** and **$1,769.00** in fees.

ee. <u>Avoidance Action Analysis/Lien Avoidance Analysis (036)</u>: During the Application Period, Baker assisted the TCC by analyzing pleadings filed in the Winding Creek Solar LLC and Gantner adversary proceedings. Baker also conferred internally regarding the potential impact of the adversary proceedings on fire victims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The total hours and amount charged by Baker to this matter during the Application Period represents **2.00 hours** and **$1,428.50** in fees.

ff.　　Underline: Investigations (037): Baker's work in this task code was limited to research necessary to identify registered agents for various entities.

The total hours and amount charged by Baker to this matter during the Application Period represents **0.80 hours** and **$160.00** in fees.

gg.　　Financial Advisors (038):　This task code reflects time Baker spent reviewing Lincoln's report concerning the impacts of planned outages, governmental fines, and changes to PG&E's financial picture as relevant to the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **2.70 hours** and **$2,607.00** in fees.

hh.　　Other Contested Matters (039):　Baker's work in this task category encompassed several different issues that arose in the course of the Debtors' Chapter 11 Cases during the Application Period, but which do not lend themselves to placement into other task categories.　Baker examined filings as they came in in order to remain apprised of developments in the Bankruptcy Cases and to determine whether there was a need for the TCC to respond to a filing, either formally or informally.　Baker's work for the TCC in these areas included analysis of complaints filed against the Debtors' post-petition, analysis of transfers of claims, analysis of issues concerning production of claimant data, analysis of issues concerning the RSA agreements and amendments, and analysis of volumes of document production from Bondholders and the Subrogation Committee related to various claims. Baker analyzed the fiduciary duty issues for TCC members with respect to RSA and bondholder proposals and advised the TCC on related strategy issues.

The total hours and amount charged by Baker to this matter during the Application Period represents **107.00 hours** and **$66,516.00** in fees.

ii.　　Operations (040):　This task addressed TCC decision making and potential conflict of interest and ethical issues that arose during TCC interactions and discussions.　Legal research and analysis were conducted outlining the obligations and considerations of those issues

for TCC members, memorandums were prepared regarding same and discussions were held regarding analysis and next steps for the TCC, as well as communications with proposed special counsel to Committee regarding same.

This task code was also used for handling administrative tasks carried out by counsel and staff in connection with TCC work, TCC reimbursement issues, the TCC website, and communications with the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represent **186.20 hours** and **$116,650.50** in fees.

jj.     Subrogation (042):     This category includes time spent by Baker professionals analyzing the treatment of subrogation claims against the Debtors and the impact such claims could have on recoveries for tort claimants. Baker also engaged in extensive discovery relevant to subrogation issues, including, among other things, preparing for and participating in depositions. As necessary to protect the TCC's interests, Baker analyzed and then drafted and argued an opposition to the Debtors' motion for the entry of an order authorizing the Debtors to enter into a Restructuring Support Agreement with certain subrogation claim holders and approving the terms of a settlement. Baker also addressed issues relating to an extension of additional living expense insurance coverage for eligible fire victims. In addition, Baker professionals continued to address issues relating to third-party releases. Baker engaged in extensive discussions with other professionals, including the mediator, regarding issues connected to the subrogation claims.

The total hours and amount charged by Baker to this matter during the Application Period represent **423.10 hours** and **$331,897.00** in fees.

kk.     Securities (043): Baker's work for the TCC in this task category consisted of a review of PG&E's SEC litigation reserve disclosures in relation to compliance with contingency disclosure requirements, analysis of PG&E's duties to reveal estimates and review of related authority, and research regarding securities causes of action. In addition, Baker reviewed all pleadings related to issues concerning the securities class motion as necessary to formulate whether the TCC should assert a position.

The total hours and amount charged by Baker to this matter during the Application Period represent **31.70 hours** and **$29,152.50** in fees.

    ll. <u>Wildfire Assistance Fund (044)</u>: During the Application Period, Baker monitored the Quarterly Reporting of the Administrator of the Wildfire Assistance Program.

The total hours and amount charged by Baker to this matter during the Application Period represent **0.40 hours** and **$218.00** in fees.

    mm. <u>Asset Analysis and Recovery (045)</u>: In asset analysis and recovery, Baker's primary focus during the Application Period was to perform a due diligence analysis on the value and extent of the rights being transferred to fire victims under the restructuring support agreement ("RSA") as a way to confirm the value of the RSA prior to plan confirmation.

To achieve that goal, Baker analyzed the volumes of documents, including contracts, work reports and databases, and emails produced by the Debtors that shed light on various third parties that performed work relevant to specific wildfires. In addition, Baker analyzed insurance-related documents produced by the Debtors corresponding to those third parties to assess the value of any potential insurance claims associated with the rights being transferred.

Baker also issued third-party discovery to the Debtors' contractors and consultants related to their work for the Debtors in connection with the wildfires. This discovery sought documents pertaining to contractors' indemnity agreements with the Debtors, work agreements, work summaries, and insurance-related documents, including claims notices. Baker analyzed documents that it received from some of the contractors and consultants to determine the extent of the claims of Debtors being assigned to the fire victims and the potential value of those claims.

The total hours and amount charged by Baker to this matter during the Application Period represent **2,585.10 hours** and **$1,213,471.00** in fees.

    nn. <u>Tort Claims Estimation (046)</u>: On October 11, 2019, Judge Donato entered a Scheduling Order that established the timing for fact and expert discovery and set the trial for tort claims estimation for February 18, 2020. Baker's work related to tort claims estimation during the Application Period encompasses all preparations for the estimation trial, including, analysis and determination of an estimation trial structure, creation of discovery and trial plans, meetings with

Case: 19-30088 Doc# 6286 Filed: 03/13/20 Entered: 03/13/20 13:47:21 Page 28 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

the Debtors and the Subrogation Claimants regarding all facets of the estimation trial, preparation for and hearings before Judge Donato on estimation, discovery related to estimation, including reviewing several million pages of documents, investigating, vetting, hiring liability and damages experts for use in the estimation trial, conferences with retained experts regarding their work, analysis of the experts' work in the estimation trial, analysis of fact witnesses for depositions and for use at trial, conferences with potential fact witnesses and/or their counsel with regard to their testimony, preparing for and deposing fact witnesses, defending depositions of fire victims, drafting briefs and memoranda on the various legal and factual issues related to estimation, including inverse condemnation and negligence, analysis of discovery and pleadings in other PG&E liability cases, such as the North Bay JCCP 4995, and preparing strategy and presentation of the estimation trial, including pre-trial exchanges, briefing, and presentations.

Specifically, Baker and the Debtors served document requests, interrogatories, and requests for admissions. Pursuant to the document requests, the Debtors produced and the Baker reviewed over 5 million pages of documents. In response to the Debtors' document requests, Baker worked with plaintiffs' counsel and produced documents for fire victims that Baker expected to call at trial as well as additional fire victims the Debtors sought to test the validity of victims' claims. In addition, the Debtors' refusal to produce relevant documents forced Baker to file and argue motions to compel before Judge Donato. Pursuant to Baker's interrogatories, the Debtors produced and Baker also reviewed thousands of pages of responses, and Baker reviewed a high volume of material associated with respect to the Debtors' responses to the TCC's Request for Admissions as well.

Pursuant to the Judge Donato's scheduling order, the parties exchanged witness lists. The Debtors initially identified hundreds of potential witnesses before finally narrowing the list of witnesses it intended to call at the Estimation Trial to approximately 20. Baker prepared to depose, and in some cases did depose, these witnesses to prepare for trial. In addition, Baker identified several relevant witnesses with important evidence of the Debtors' negligence that the Debtors had not identified. This list of approximately 20-30 witnesses were comprised of current and former PG&E employees as well as several third parties. Baker prepared to interview and depose the

witness to develop further evidence of PG&E's negligence in support of the TCC's case at trial. Given that PG&E caused over 20 trials in the North Bay and Camp fires, both document and deposition discovery comprised a significant portion of the TCC's work.

The TCC hired several experts to support its case at trial. Baker worked with approximately six [6] experts on issues related to the Debtors' liability. Baker also worked with approximately seven [7] experts related to the damages suffered by the Fire Victims: one [1] overall damages expert supported by several subject matter experts. By way of comparison, the Debtor disclosed twenty-five [25] experts on liability and damages issues. Baker worked and coordinated with each of the experts that it retained in anticipation that each expert would be required to prepare initial and rebuttal reports, be deposed and potentially testify at trial. In addition, Baker anticipated and began to prepare to evaluate and depose each of the Debtors' experts.

The total hours and amount charged by Baker to this matter during the Application Period represent **9,078.20 hours** and **$4,238,832.50** in fees.

oo. <u>Class Claims Issues (047)</u>: Baker's work in the Class Claims category during the Application Period pertained to a pending District Court Securities lawsuit, and the motion filed in the Bankruptcy Court by the Securities Plaintiffs to obtain leave to file a class proof of claim on behalf of their putative class of shareholders. The motion was late-filed after the claims bar date, and the TCC believed the lawsuit was without merit as a direct securities action when there were pending derivative actions that sought to recover the same damages.

For several reasons, Baker was required to oppose the motion for a class proof of claim to protect the TCC. If granted, it could have had a dilutive effect on the Debtors' post-effective date stock, which would impact the stock holdings subject to the trust, adding a $2 billion claim into the mix on the eve of plan confirmation. In addition, such could have had a negative impact on the 500 million in insurance proceeds available for the derivative actions assigned to the trust, diminishing the policy proceeds available for Fire Victims.

In addition to opposing the motion to establish a class proof of claim, Baker drafted a motion for standing to file a complaint and the related complaint for declaratory relief finding that the alleged direct securities claims are derivative claims at their core, as they seek to recover the same

Case: 19-30088    Doc# 6286    Filed: 03/13/20    Entered: 03/13/20 13:47:21    Page 30 of 44

damages as the pending derivative actions. Because of the substantial value that the derivative actions could bring to the Trust (approximately $500MM in available policy coverage), Baker anticipates continuing to pursue this issue during the next application period.

The total hours and amount charged by Baker to this matter during the Application Period represent **170.60 hours** and **$106,527.00** in fees.

pp. <u>Kincade Fire Issues (048)</u>:  Baker's work in this task code addressed legal questions regarding the potential claims of post-petition wildfire claimants, including those from the Kincade Fire.  Baker researched the treatment of those claims under bankruptcy law, the effect of those claims on existing claimants' rights, the interests and obligations of the TCC respecting these new claims and claimants, and substantive and procedural issues regarding such claims. Baker prepared legal memoranda analyzing these issues, responded to specific questions regarding these issues, and also provided advice to the TCC.  Those activities, in turn, informed the TCC's work respecting estimation and settlement.

The total hours and amount charged by Baker to this matter during the Application Period represent **122.60 hours** and **$113,340.50** in fees.

qq. <u>Mediation (049)</u>:  During the Application Period, court appointed mediator Newsome ordered multiple mediations to resolve the TCC's objections to FEMAs $3.9 billion claim, federal agency claims of $207 million, Cal OES claims exceeding $3 billion, multiple local municipal claims against the fire victim trust, and the TCC's objections to certain plan terms. Baker led the TCC role on the mediations which resulted in settlement of all federal and state agency claims. The mediations of the municipal local agency claims and plan terms is ongoing.

The total hours and amount charged by Baker to this matter during the Application Period represent **355.30 hours** and **$333,137.50** in fees.

rr. <u>Government Claims (050)</u>:  This category includes time spent by Baker professionals reviewing, analyzing and preparing objections to multi-billion claims filed by the Department of Homeland Security / Federal Emergency Management Agency ("FEMA") and the California Governor's Office of Emergency Services ("Cal OES").  During the Application Period, Baker developed a litigation strategy to challenge the proofs of claim filed by FEMA and Cal OES,

which claims, if allowed as filed, could have substantially diluted the recovery of fire victims in the Debtors' bankruptcy. Baker researched and analyzed the various statutes and legal theories advanced by FEMA and Cal OES in their proofs of claim. Baker prepared and filed objections to the claims filed by FEMA and Cal OES, which objections sought the complete disallowance of FEMA's claims and Cal OES' claims. Baker also prepared and served requests for admission, interrogatories, request for production and deposition notices on FEMA and Cal OES. Baker's work on this matter ultimately led to FEMA agreeing to reduce its claims and to completely subordinating its recovery to the fire victims receiving full payment on account of their claims, and to Cal OES agreeing to withdraw its claims against the Debtors.

The total hours and amount charged by Baker to this matter during the Application Period represent **955.20 hours** and **$723,689.00** in fees.

ss. <u>CPUC BK OII 19-09-016 (051)</u>: Baker analyzed the OII filed during the Application Period, drafted memoranda to the TCC regarding the OII and prepared all papers necessary to permit the TCC to intervene in the OII, requiring analysis of 3292(b) and other PUC provisions relevant to the determination. Baker analyzed the Debtors' amended chapter 11 plan with respect to evaluating, researching, and briefing whether it triggered a change in control pursuant to PUC 854. Substantial research, analysis, and briefing was required in connection with PUC 254, 1054, and 854 applicability to the Debtor's plan and implications of same. Baker's professionals attended all OII proceedings, prepared testimony, and analyzed all filings therein as necessary to protect the position of the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represent **279.80 hours** and **$257,251.00** in fees.

tt. <u>Tort Claims (052)</u>: Baker's work in this category during the Application Period encompasses due diligence, research, valuation and analysis of the tort claims assigned to the Tort Claimants Committee in the term sheet attached to the Restructuring Support Agreement (RSA), including reviewing documents produced by the Debtors in the estimation proceedings before Judge Donato, requesting and reviewing additional data from the Debtors and third parties relating to the claims and their value, researching certain issues that could impact the value of the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

claims such as statutes of limitation and insurance notification requirements, and preparing the Schedule of Assigned Rights and Causes of Action for the plan documents as contemplated by the RSA. Baker also analyzed pending third party causes of action filed by others currently pending in the bankruptcy and other courts against the same claimants, including the securities claimants' claims against the Debtors directors and officers. In connection with that suit, Baker filed legal briefs to protect the value of certain D&O claims assigned to the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represent **361.00 hours** and **$237,813.50** in fees.

19. <u>Costs and Expenses</u>: Baker requests allowance and reimbursement of actual, reasonable, and necessary out-of-pocket expenses in the amount of $3,574,530.67 incurred while rendering professional services on behalf of the TCC during the Application Period.

20. Expenses incurred by Baker during the Application Period are set forth in detail on the invoices found on the docket as attachments to Baker's monthly fee statements (see Docket Nos. 4937, 5247, 5557 and 5980) and are summarized in **Exhibit D-2.**

21. Baker submits that all expenses incurred during the Application Period were reasonable and necessary, are sought in compliance with the Guidelines, and should be allowed on an interim basis by the Court.

### THE FEES AND EXPENSES REQUESTED
### SHOULD BE AWARDED BASED UPON APPLICABLE LAW

22. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330 provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

23. In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988).

24. In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974, a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F 2d. 67, 70 (9th Cir. 1975), *cert denied*, 425 U.S. 951 (1976): (a) the time and labor required, (b) the novelty and difficulty of the questions, (c) the skill requisite to perform the service properly, (d) the preclusion of other employment by the professional due to acceptance of the case, (e) the customary fee, (f) whether fee is fixed or contingent, (g) time limitations imposed by client or the circumstances, (h) the amount involved and the results obtained, (i) the experience, reputation and ability of the professionals, (j) the undesirability of the case, (k) the nature and length of the professional relationship with the client,

and (l) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F. 2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases):

a. <u>the time and labor required</u>: Baker and the TCC represent the interests of the most vulnerable and important constituency in these cases. Unlike the Debtors and other creditors, the TCC had no relationship with PG&E pre-petition. The time required to protect the interests of the victims the TCC represents is substantial, and the labor is complicated and multifaceted.

Baker meets with the TCC in person on a monthly basis, and weekly by phone. Multiple attorneys frequently attend these meetings to field questions from the eleven [11] members of the TCC and sometimes also from counsel for individual TCC members. These meetings cover numerous agenda items, and involve a broad area of topics and expertise, often including claims estimation, financial analysis, updates on pending motions and objections, corporate governance, criminal issues, committee operations, website updates, legislative updates, and Chapter 11 plan analysis. Baker has different attorneys working on different issues and each attorney briefs the TCC on the issues for which they are responsible.

In addition, Baker has a weekly "core" PG&E team meeting that lasts approximately one hour. These meetings always include a number of attorneys (more than four), each of whom leads a particular project or work team and/or specializes in a particular practice area. These meetings involve high-level and substantive strategy considerations and are essential to avoid duplication of effort. The meetings are critical to coordination of case strategy and are where the core team communicates on how best to achieve the objectives of the TCC. For example, Baker's professionals working on claims estimation need to communicate with Baker's professionals working on Chapter 11 plan issues, and each need to be apprised of legislative developments. The weekly calls are where ideas and information are shared among Baker's work teams so strategic decisions can be made.

Finally, a number of attorneys (more than four) frequently attend hearings that involve multiple or complex issues. The TCC's lead counsel, generally Ms. Dumas and Mr. Julian, attend hearings together with other litigation counsel and/or the attorneys on the team responsible for

working on the matter being heard. Given the number of firms and professionals employed by the Debtors, and the complicated issues the Debtors' cases present, representation of the TCC requires the attendance of multiple attorneys at hearings.

> b. <u>the novelty and difficulty of the questions</u>: Many of the issues related to this case are novel, due to the significant issues presented regarding the fire victims' claims and the nature of the Debtors' business.

> c. <u>the skill requisite to perform the service properly</u>: The skill to perform the representation of the TCC properly is significant. There are numerous complex issues presented by these cases, as evidenced by the number of professionals the Debtors have employed.

> d. <u>the preclusion of other employment by the professional due to acceptance of the case</u>: Other employment of Baker has been precluded due to conflict issues created by this representation.

> e. <u>the customary fee</u>: Baker is charging its customary hourly fees in this matter.

> f. <u>whether fee is fixed or contingent</u>: Baker's fee is an hourly fee.

> g. <u>time limitations imposed by client or the circumstances</u>: There have been constrained time limitations in this representation due to the pace of legislation enacted pertaining to the Debtors' cases and the need to evaluate volumes of critical information to the TCC's interests on an expedited basis.

> h. <u>the amount involved and the results obtained</u>: The blended rate of Baker is lower than the other professionals in these cases, and the TCC has been instrumental in issues related to the DIP, the claim form for fire claimants, the victims' compensation fund, and other matters.

> i. <u>the experience, reputation and ability of the professionals</u>: Baker is well known for its experience and expertise in bankruptcy matters. Cecily Dumas and Elizabeth Green are fellows in the American College of Bankruptcy, and Baker's team is comprised of seasoned litigators and well-respected lawyers in every diverse aspect of Baker's representation of the TCC.

> j. <u>the undesirability of the case</u>: Representing the TCC in the Debtors' cases is not undesirable, but the representation is multi-faceted, time-consuming, and complicated.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1          k.     the nature and length of the professional relationship with the client: Baker

2 had no professional relationship with the TCC prior to these cases.

3          l.     awards in similar cases: Baker's fee application is comparable with other

4 awards in similar cases involving representation of a committee of tort victims.

5     25.     The time for which compensation is sought is detailed in Baker's professional fee

6 invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos.

7 4937, 5247, 5557 and 5980). Baker's services and time expenditures are reasonable considering

8 the labor required and outcome achieved to date in these complicated cases. Baker charges for its

9 professional services based upon the time, nature, extent and value of such services and the cost of

10 comparable services in the San Francisco bay area, other than in a case under the Bankruptcy Code.

11 The compensation Baker seeks by way of this Application is the customary compensation

12 commonly sought by the Baker and other professionals representing trustees, committees, and

13 debtors in similar circumstances.

14     26.     Further, the Debtors spent in excess of $80 million preparing to file the Bankruptcy

15 Cases, and Baker was not appointed as counsel to the TCC until several weeks after the Bankruptcy

16 Cases were filed. The Debtors' cases draw on a number of specialties as evidenced by the Debtors'

17 employment of a number of firms, including firms to handle fire claims and criminal issues. The

18 specialties required for the complex issues presented by the Debtors' wrongdoing and

19 circumstances include constitutional law, white collar criminal practice, and regulatory issues

20 involving FERC and CPUC, and are at the higher end of Baker's rate structure due to the skill and

21 experience associated with these specialties.

22     27.     To wit, Mr. Rivkin ($1,625) is a nationally known constitutional lawyer in Baker's

23 Washington, D.C. office. Mr. Dettelbach ($1,015) is the former U.S. Attorney for the Northern

24 District of Ohio and is a leader of Baker's white-collar practice. Jerry Bloom ($1,145), based in

25 Los Angeles, California, and Elizabeth Foley ($1,100), based in Washington D.C., are of counsel

26 to Baker in the Debtors' Chapter 11 Cases. Mr. Bloom is one of very few of lawyers in the United

27 States who specializes in CPUC matters and is nationally recognized in Chambers as Band One in

28 the field of energy and regulatory matters. Ms. Foley is a nationally recognized constitutional

lawyer and a Professor of Law at Florida International University, where she teaches constitutional law. The two specialties in which Mr. Bloom and Ms. Foley practice are essential to representation of the TCC and the rates these specialties command are significantly higher than the rates Baker's other attorneys of Counsel, who practice in less specialized areas, enjoy.

28. Simply put, Baker has staffed the Debtors' Chapter 11 Cases with its best and brightest lawyers because the complexities of the cases demand it. It is worth noting that Baker's blended rate for all timekeepers in Baker's Second Interim Application, including Baker's partners and counsel, was approximately $295 less than Debtors' counsel's blended rate for all timekeepers during the same time period.

**ADDITIONAL QUESTIONS FROM THE
UST GUIDELINES FOR LARGER CHAPTER 11 CASES**

29. Pursuant to Appendix B of the UST Guidelines, Applicant answers the questions below as follows:

30. Did Applicant agree to any variations from, or alternatives to, Applicants' standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

*ANSWER: No.*

31. If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher than 10% or more, did Applicant discuss the reasons for the variation with the client?

*ANSWER: The fees sought in Baker's Application fell in line with those budgeted as a whole. On occasion, fees associated with one particular task code may have exceeded the fees budgeted for that task code. For other task codes, however, Baker's fees were less than the amount budgeted, bringing the total amount of fees sought by Baker in this Application in line to the fees budgeted for at the inception of this engagement. As such, the fees sought did not exceed the fees budgeted by 10% or more in the period covered by this Application.*

32. Have any of the professionals in this fee application varied their hourly rate based on the geographic location of the bankruptcy cases?

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    ***ANSWER:*** *No.*

2        33.    Does the fee application include time or fees related to reviewing or revising time

3    records or preparing, reviewing or revising invoices?  (This is limited to work involved in preparing

4    and editing billing records that would not be compensable outside of bankruptcy and does not

5    include reasonable fees for preparing a fee application.)  If so, please quantify by hours and fees.

6        ***ANSWER:***  *Baker reviewed each time entry in the billing records submitted with this*

7    *Application in connection with preparation of the required monthly fee statements for the TCC as*

8    *necessary to confirm tasks were allocated to an appropriate task code by each timekeeper and that*

9    *each task was adequately described as required by the Guidelines and as necessary to facilitate the*

10   *Fee Examiner's evaluation of the reasonableness of the fees requested by this Application.  On*

11   *occasion during this review, time entries may have been moved from one task code to another task*

12   *code as appropriate or divided up and apportioned between two or more task codes[†] where the*

13   *time entry clearly reflected work performed that impacted more than one area of Baker's*

14   *representation of the TCC, as necessary to adhere to the budget.  Baker estimates that between*

15   *eight [8] to twelve [12] hours each month for the period covered by this Application was spent*

16   *performing such work.  The Application does not include time or fees related to preparing,*

17   *reviewing, or revising invoices.*

18       34.    Does this fee application include time or fees for reviewing time records to redact

19   any privileged or other confidential information?  If so, please quantify by hours and fees.

20       ***ANSWER:***  *As stated above, Baker reviewed each time entry in the Application to confirm*

21   *tasks were allocated to an appropriate task code by each timekeeper and that each task was*

22   *adequately described as required by the Guidelines and as necessary to facilitate the Fee*

23   *Examiner's evaluation of the reasonableness of the fees requested by this Application.  Each of*

24   *Applicant's timekeepers have been instructed to consider issues of confidentiality*

25   *contemporaneously with drafting his or her time entries so that a further subsequent review of time*

---

[†]For instance, a time entry reflecting 1.5 hours may have been broken down into smaller increments and spread between two or more task code categories.  For example, where a task described research performed that could impact both Chapter 11 plan structure and the treatment of particular claims, the 1.5 hour entry may have been apportioned so that .7 was allocated to Task Code 008 (concerning Chapter 11 Plan/Plan Confirmation) and .8 was allocated to Task Code 005 (concerning, among other things, claims).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*records in connection with an assessment of privilege or confidentiality is, for the most part, unnecessary. Baker's billing records submitted with this Application contain very few redactions, and Baker has submitted unredacted invoices to the Fee Examiner and believes the Fee Examiner possesses sufficient information with which to evaluate the reasonableness of fees charged. Baker estimates no more than two [2] hours were spent evaluating confidentiality of time entries for this Application Period.*

35.     If this fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**ANSWER:**  *The Application contains no rate increases.*

36.     Pursuant to the UST Guidelines, required exhibits are attached as:

a.     **Exhibit A** – "Customary and Comparable Compensation Disclosure with Fee Applications"

b.     **Exhibit B** – "Summary of Timekeepers Included in this Application".

c.     **Exhibit C-1** – "Budget"

d.     **Exhibit C-2** – "Staffing Plan"

e.     **Exhibit D-1** – "Summary of Compensation Requested by Project Category"

f.     **Exhibit D-2** –"Summary of Expense Reimbursement Requested by Category"

## AVAILABLE FUNDS

37.     Baker understands that the Debtors have sufficient funds available for the payment of interim fees and costs requested herein.

## CONCLUSION

38.     Baker believes that this Application appropriately sets forth the significant matters handled on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered.

Thus, Baker respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient and economical. Accordingly, Baker respectfully requests that this Application for allowance of fees and expenses, on an interim basis, be granted in all respects.

WHEREFORE, Baker respectfully seeks entry of an order, essentially in the form as attached **Exhibit H**:

1.      Awarding interim allowance of compensation for professional services rendered during the Application Period in the amount of **$18,827,171.17**, consisting of $15,252,640.50 in reasonable fees incurred and $3,574,530.67 in actual and necessary expenses.

2.      Authorizing and directing the Debtors to make prompt payment to Baker in the total amount of **$5,893,888.99**, which is the difference between the amount requested and the amount already paid by the Debtors pursuant to the Interim Compensation Order.

3.      Granting such other and further relief as the Court may deem just and proper.

Dated:  March 13, 2020          BAKER & HOSTETLER LLP

                            By: */s/ Cecily A. Dumas*
                            Cecily A. Dumas
                            Counsel to the Official Committee of Tort Claimants

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**CERTIFICATION**

I, Cecily A. Dumas, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1.       I am a partner in the law firm of Baker & Hostetler LLP ("**Baker**").  I submit this certification in support of the *Third Interim Application of Baker & Hostetler LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period October 1, 2019 through January 31, 2020* (the "**Application**").[‡]

2.       I have personally reviewed the information contained in the Application and believe its contents to be true to the best of my knowledge, information and belief.

3.       The compensation and expense reimbursement sought in this Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules'**), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**), and the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**").

4.       The compensation and expense reimbursement requested in this Application are billed at rates, in accordance with Baker's practices, no less favorable than those customarily charged by Baker and generally accepted by Baker's clients.

---

[‡]Capitalized terms not defined have the meanings used in the Application.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2  Dated:  March 13, 2020                    BAKER & HOSTETLER LLP

3

4                                            By:  /s/ Cecily A. Dumas

5                                            Cecily A. Dumas

6                                            Counsel to the Official Committee of Tort Claimants

7

8

9

10

11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice Parties**

| | |
|---|---|
| PG&E Corporation<br>c/o Pacific Gas & Electric Company<br>Attn:  Janet Loduca, Esq.<br>77 Beale Street<br>San Francisco, CA 94105 | Keller & Benvenutti LLP<br>Attn:   Tobias S. Keller, Esq.<br>          Jane Kim, Esq.<br>650 California Street, Suite 1900<br>San Francisco, CA 94108 |
| The Office of the United States Trustee for Region 17<br>Attn:   James L. Snyder, Esq.<br>           Timothy Laffredi, Esq.<br>450 Golden Gate Avenue, 5th Floor, Suite #05-0153<br>San Francisco, CA 94102 | Milbank LLP<br>Attn:   Dennis F. Dunne, Esq.<br>           Sam A. Khalil, Esq.<br>55 Hudson Yards<br>New York, NY 10001-2163 |
| Milbank LLP<br>Attn:   Paul S. Aronzon, Esq.<br>           Gregory A. Bray, Esq.<br>           Thomas R. Kreller, Esq.<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067 | Weil, Gotshal & Manges LLP<br>Attn:  Stephen Karotkin, Esq.<br>Jessica Liou, Esq.<br>Matthew Goren, Esq.<br>767 Fifth Avenue<br>New York, NY 10153-0119 |
| Bruce A. Markell<br>Fee Examiner<br>541 N. Fairbanks Court<br>Suite 2200<br>Chicago, IL 60611-3710 | Scott H. McNutt<br>Attorney for the Fee Examiner<br>324 Warren Road<br>San Mateo, CA 94402 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO