Exhibit A

# FIRE VICTIM CLAIM PLAN TREATMENT SUMMARY

**PLEASE READ THE FOLLOWING SUMMARY IF YOU FILED A FIRE VICTIM CLAIM IN THE PG&E CHAPTER 11 CASES. THIS SUMMARY PROVIDES INFORMATION ON HOW YOUR CLAIM WILL BE PROCESSED AFTER PG&E RECEIVES BANKRUPTCY COURT APPROVAL OF ITS PLAN OF REORGANIZATION AND THE PLAN BECOMES EFFECTIVE.**

**STEPS TO REORGANIZATION:** PG&E's and the Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (the "Plan") will govern the terms of PG&E's emergence from chapter 11. Enclosed with this summary is a copy of the Plan and the related Disclosure Statement that describes the Plan and how PG&E proposes to implement it, and a ballot for you to vote to accept or reject the Plan. **Your vote is important.** The Bankruptcy Court will conduct a hearing after all ballots have been tallied to determine whether it will approve the Plan. IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, YOUR CLAIM WILL BE PROCESSED AND MAY BE PAID EVEN IF YOU DID NOT CAST A VOTE OR VOTED TO REJECT THE PLAN. IF THE PLAN IS NOT CONFIRMED, YOUR CLAIM WILL NOT BE PAID UNTIL ANOTHER PLAN IS CONFIRMED OR THERE IS ANOTHER RESOLUTION OF PG&E's CHAPTER 11 CASES.

**YOUR VOTE COUNTS:** You have the right to accept or reject the Plan if you or your attorney filed a claim against the Debtors. **Ballots must be RECEIVED by May 15, 2020,** in order to be counted.

**HOW TO VOTE:** You have received a ballot with instructions that explain how you can vote. If you are represented by counsel, consult your attorney on the appropriate voting method. If you have questions about the voting materials, you can call (844) 339-4217 (domestic toll-free) or +1 (929) 333-8977 (international) or email pgeinfo@primeclerk.com.

**FIRE VICTIM TRUST:** Pursuant to the Plan, PG&E will fund a resolution trust ("Fire Victim Trust") for the benefit of Fire Victim Claimants (as defined below) in the amount of approximately $13.5 billion, consisting of $6.75 billion in cash (of which $1.35 billion will be paid over an 18-month period from PG&E's tax attributes) and $6.75 billion of common stock of reorganized PG&E Corporation. Your claim will be processed by the Claims Administrator in conjunction with the Trustee of the Fire Victim Trust and, if your claim is approved, it will be paid from the Fire Victim Trust assets. NOTHING IN THE PLAN OR THE FIRE VICTIM TRUST AGREEMENT REQUIRES YOU TO RECEIVE PAYMENT IN STOCK. HOLDERS OF FIRE VICTIM CLAIMS' SOLE SOURCE OF RECOVERY

SHALL BE FROM THE FIRE VICTIM TRUST. THEY WILL NOT BE ABLE TO PURSUE THEIR CLAIMS AGAINST PG&E CORPORATION OR PACIFIC GAS AND ELECTRIC COMPANY.

**HOW TO GET YOUR CLAIM PROCESSED:** The Fire Victim Trust is set up for the benefit of the Fire Victims of the Butte Fire (2015), the North Bay Fires (2017)[1] and the Camp Fire (2018) who have filed claims in the PG&E Chapter 11 Cases ("Fire Victim Claimants"). The Fire Victim Trust will treat all Fire Victim Claimants fairly and with dignity. The Trustee and Claims Administrator are developing objective criteria for approval of claims, as well as valuation of both "economic damages" such as destruction or damage to real estate and personal property, additional living expenses, lost wages, and business losses, personal injury or death and related medical expenses, and "non-economic damages" such as emotional distress related to bodily injury or death or the trauma of a dangerous evacuation from the fire and/or the loss of use and enjoyment of your property and community.

The Trustee and the Claims Administrator will develop detailed claims procedures that will guide your attorney or you, if you do not have an attorney, in how your claim will be evaluated, including what, if any, information and documents you will need to provide to support your claim. For example, you may be asked to submit information and documents needed to verify your claim, which may include proof of ownership or residence at the time of the fire, information regarding damage to your home and its contents, land, rental agreements and receipts for additional living costs, documents related to business income loss or lost wages, and information regarding the emotional impact of your evacuation from the fire and the loss of use and enjoyment of your home, in addition to other relevant information and documents the Fire Victim Trust may need to evaluate your claim. If the Fire Victim Trust determines that it needs more information to evaluate your claim, you may be requested to submit it. If you have an attorney, all communications with the Fire Victim Trust will go through your attorney. Any information and documents that you provide will be considered confidential and used only for evaluating your claim.

The Fire Victim Trust will also have access to publicly available and other information related to your claim, such as information from your insurance company, and it will use all of the appropriate available information including the information you provide to evaluate and process your claim.

---

[1] The North Bay Fires (2017) consist of the following fires: LaPorte, McCourtney, Lobo, Honey, Redwood/Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Partrick, Pythian/Oakmont, Maacama, Tubbs, Point, and Sullivan.

If you already settled your claim with PG&E before PG&E filed for chapter 11 or during the Chapter 11 Cases, your attorney should provide a copy of the settlement agreement to the Fire Victim Trust.

**EXPLANATION OF HOW YOUR CLAIM IS ALLOWED FOR PAYMENT:** The Fire Victim Trust will review your claim and the information and documents that relate to your claim. The Fire Victim Trust will determine if your claim is eligible or ineligible for payment and, if eligible, in what amount. If you accept the Fire Victim Trust's determination and your claim has been determined to be eligible, your claim will be paid from the Fire Victim Trust. The Trustee will have full discretion in managing the funds in the Fire Victim Trust, and may decide to pay claims in installments.

The Plan does not absolve the insurance carriers of their obligations to fulfill their coverage obligations under their policies of insurance with you. The Fire Victim Trust will not take on any responsibility for your insurance carrier's obligations to you.

**WHAT TO DO IF YOU CONTEST THE FIRE VICTIM TRUST'S TREATMENT OF YOUR CLAIM:** If you do not wish to accept either: (1) the Fire Victim Trust's determination that your claim is ineligible for payment; or (2) the amount awarded by the Fire Victim Trust for your claim, you will have options to seek the review of the determination. Each of these options will be explained in detail in the forthcoming procedures. In all circumstances, after the exhaustion of the review processes contained in the forthcoming procedures, the determination from the Fire Victim Trust, in accordance with the procedures, will be final. If you contest the Fire Victim Trust's award and are not represented by legal counsel, you may wish to consult with legal counsel of your choice.

**TIMING:** PG&E currently intends to present the Plan to the Bankruptcy Court for confirmation and approval on **May 27, 2020** and PG&E is seeking to obtain an order from the Bankruptcy Court confirming the Plan before June 30, 2020, the deadline set by the California Legislature for PG&E to meet the requirements of AB 1054.

The Fire Victim Trust will not begin processing claims unless and until the Plan is approved and confirmed and becomes effective.

**THE PLAN HAS BENEFITS AND RISKS FOR FIRE VICTIMS. BELOW IS A SUMMARY OF SOME OF THE BENEFITS AND RISKS. FOR A COMPLETE DESCRIPTION OF BENEFITS AND RISKS, PLEASE SEE PAGES 27 TO 28 OF THE DISCLOSURE STATEMENT.**

**BENEFIT:** One of the main benefits of the Plan is that it provides for compensation to Fire Victim Claimants sooner rather than later. If the Plan is rejected, it is unknown how long it will take to negotiate and obtain approval of another plan and what kind of recovery such a plan would provide for Fire Victim Claimants.

**RISK:** The $6.75 billion value of the common stock of reorganized PG&E Corporation does not necessarily reflect the actual value of the stock to be held by the Fire Victim Trust on the Plan effective date and thereafter. The actual value of the stock on the Plan effective date and thereafter could be greater or less than $6.75 billion based on the future trading value of the common stock of reorganized PG&E Corporation.

**PLEASE VOTE.**

# Frequently Asked Questions (FAQ's) for Fire Victims

1. How will PG&E pay wildfire claims in this case?

Answer: PG&E's plan of reorganization will establish a trust fund to pay wildfire claims. This trust fund is called the "Fire Victim Trust."

2. Does the Bankruptcy Court need to approve PG&E's plan of reorganization?

Answer: Yes.

3. Do fire victims get to vote on whether the Bankruptcy Court should approve or not approve PG&E's plan of reorganization?

Answer: Yes, fire victims can vote yes or no on whether they accept or reject PG&E's plan of reorganization. However, if the plan of reorganization is accepted by fire victims on a class basis and approved by the Bankruptcy Court, the treatment of fire victim claims provided in PG&E's plan of reorganization will apply to all fire victims.

4. How many individual fire victims must vote in favor of the PG&E plan of reorganization for the fire victims to accept the plan as a class?

Answer: Voting in Bankruptcy Court is typically determined by the amount of the voting claim. Because we do not know the exact amount of every fire victim's claim, for voting purposes only, each victim has a vote worth $1. This means that fire victim votes are equal. If at least 66 2/3% of fire victims who vote, vote to accept the plan, then the fire victims will have accepted the plan as a class.

5. If less than 66 2/3% of fire victims who vote, vote to accept the plan, can the Bankruptcy Court still approve the plan without further hearings regarding the claim amounts?

Answer: The Bankruptcy Court will hold a hearing on approval of the plan. At that hearing, the Bankruptcy Court would not be able to approve the plan over the objection of fire victims without determining that the plan's treatment of fire victims, including the amount distributed to the Fire Victim Trust meets the Bankruptcy Code's requirements.

6. Who will run the Fire Victim Trust?

Answer: The Fire Victim Trust will be run by an individual known as a Trustee. The trust documents propose that a well-respected retired judge will be the Trustee to oversee and pay claims from the Trust. His name is Justice John Trotter. His biography can be found at https://www.jamsadr.com/trotter/

7. What fire claims will be paid from the Fire Victim Trust?

Answer: The Fire Victim Trust will pay claims from the 2015 Butte Fire, the 2017 North Bay Fires, and the 2018 Camp Fire. A full list of those fires is available at www.pgefiresurvivors.com.

8. How will the Fire Victim Trust be funded?

Answer: PG&E will contribute approximately $13.5 billion to the Fire Victim Trust. $6.75 billion will be in cash ($1.35 billion of which is to be paid over time), and $6.75 billion will be in PG&E stock.

9. How will the Trustee use PG&E stock to pay fire claims?

Answer: The Trustee will sell the PG&E stock over a period of time for cash that will be used to pay fire victim claims. The Trustee does not currently intend to distribute stock to fire victims.

10. Will I receive PG&E stock?

Answer: Nothing in the plan or the Trust Agreement requires any fire victim to accept stock as payment on his or her claim.

11. Could the value of PG&E stock change?

Answer: Yes, the value of the stock may go up or down, or stay the same. The trust documents require the Trustee to use prudent financial methods to sell the stock – although there can be no guarantees regarding how this stock will perform.

12. If the stock loses value, will I get less money for my claim?

Answer: If the stock loses value, it may reduce the amount that all fire victims will receive on their claims. Any reduction will apply to all fire victims equally – it will be shared "pro rata."

13. If the stock increases in value, will I get more money for my claim?

Answer: If the stock increases in value, the increase in the value of the stock will not change the amount of your claim, but it may increase the amount of money that the Trust has available to satisfy all eligible fire victim claims.

14. What are the risks and benefits to the stock going into the Fire Victim Trust?

Answer: Stock value can change. The Trustee will use prudent financial methods to convert the stock to cash. The Trustee cannot guarantee that the stock will keep its value. The stock may go down and it may reduce the amount of funds available, or it may go up and increase the amount of funds available, for distribution from the Fire Victim Trust to satisfy fire victim claims.

15. When is the stock transferred to the Fire Victim Trust?

Answer: The stock is transferred to the Fire Victim Trust on the "effective date," which is a date after approval of the plan by the

Bankruptcy Court. We believe the effective date will not be determined until the beginning of June, and that the effective date may occur by late summer or early fall of 2020.

16. What if there are more than $13.5 billion in eligible claims against the Fire Victim Trust?

Answer: All fire victims will share in the money equally, or "pro rata" based on the amount of their eligible claims. This means that each victim will be paid the same percentage of his or her individual eligible claim. To make sure that all victims receive the same percentage of their eligible claim, the Trustee may pay claims in installments.

17. What does the Trustee do?

Answer: The Trustee will oversee and manage the Fire Victim Trust. This means that he and his staff will determine the amount of eligible fire victim claims, pay them, oversee the money and stock in the trust and make sure that all fire victims are treated equally. The Trustee will also have the right to sue certain companies who worked with PG&E and that the Trustee believes may have liability with respect to the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp Fire. Any money recovered from those lawsuits will go into the Fire Victim Trust.

18. Are there any other parties involved with the Fire Victim Trust?

Answer: The trust will employ a Claims Administrator. The Claims Administrator will assist the Trustee in resolving fire victim claims. This person's employment has not been approved by the Bankruptcy Court yet. However, the trust documents propose Cathy Yanni as the Claims Administrator. Ms. Yanni also has served as the claims administrator for the Wildfire Assistance Program. You can read more about her in her bio at https://www.jamsadr.com/yanni/.

19. Who will decide whether my claim is an eligible claim?

Answer: If you have a claim because of either the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp fire, the Trustee and the Claims Administrator, together with their staff, will review and determine whether your claim is an eligible claim.

20. Do I have to give the Fire Victim Trust any information about my claim?

Answer: Yes. The Fire Victim Trust will require that you answer a questionnaire that explains the losses that you have suffered and verifies your identity. Depending on the nature of your claim, the Fire Victim Trust will also require that you provide certain documents and other evidence to support your claim.

21. How will the Fire Victim Trust decide if my claim is eligible?

Answer: If you have a claim because of either the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp Fire, the Trustee, the Claims Administrator and their staff will look at publicly available information, information from experts, and the information and documents you submit in support of your claim in order to determine the eligible amount of your claim.

22. What kinds of losses will be paid by the Fire Victim Trust?

Answer: The losses to be paid by the Fire Victim Trust include wrongful death, personal injury, property damage, lost wages, business losses, and emotional distress. The Trustee and the Claims Administrator will describe the various types of damages that will be eligible to be paid in a document called the <u>Claims Resolution Procedures</u>. The Trustee and the Claims Administrator will look at each claim individually and determine whether to pay losses, other than the types set forth above.

23. Can I receive punitive damages?

9

Answer: The Trustee and the Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay punitive damages.

24. Can I receive interest on my claim?

Answer: The Trustee and the Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay interest.

25. Where can I find a copy of the Claims Resolution Procedures?

Answer: The current draft of the Claims Resolution Procedures can be found at www.pgefiresurvivors.com. A substantially final copy of the Claims Resolution Procedures will be publicly available on May 1, 2020 at https://restructuring.primeclerk.com/pge/Home-DocketInfo.

26. Where can I find a copy of the Trust Agreement?

Answer: The current draft of the Trust Agreement can be found at www.pgefiresurvivors.com. A substantially final copy of the Trust Agreement will be publicly available on May 1, 2020 at https://restructuring.primeclerk.com/pge/Home-DocketInfo.

27. Are business claims being paid from the Fire Victim Trust?

Answer: Yes, business claims are being paid from the Fire Victim Trust.

28. What if I do not agree with the amount that the Trustee and Claims Administrator determines is eligible to be paid by the Fire Victim Trust?

Answer: The options and avenues for review of the Trustee's and Claims Administrator's determination will be set out in the Claims Resolution Procedures. As a general matter, if you do not agree with the determination of the eligible amount of your claim, you may ask the

Claims Administrator to reconsider the determination. If you still do not agree with the Claims Administrator's decision, you can appeal to a neutral arbitrator, who will hold a hearing on the issue. Finally, if you do not agree with the decision of the neutral arbitrator, you may ask for a panel of three neutral arbitrators to review the decision. Then, the Trustee may accept, reject, or revise the decision of this panel. The Trustee will then issue a Trustee Determination to you. The Trustee Determination is final with no further ability to appeal the determination.

29. Is every fire victim getting the same amount?

Answer: No. Each fire victim's claim is determined individually based on each fire victim's losses.

30. I did not have insurance. Do I still have a claim?

Answer: Yes. The Fire Victim Trust will pay claims that were not covered by insurance.

31. I received insurance for my claim. Does that affect the amount of my claim?

Answer: Yes. You cannot receive money from the Fire Victim Trust for the same exact losses that were paid from insurance. In other words, you cannot receive a "double recovery." Your recovery may be reduced by the amount of your insurance.

32. How would PG&E pay victims of future fires?

Answer: PG&E would pay claims from future fires from PG&E's insurance, the Wildfire Fund established by AB 1054, and funds generated from PG&E operations, and other potential sources. These claims would not be paid by the Fire Victim Trust.

33. What happens if the state or city takes over PG&E?

11

Answer: The current plan does not address a state or city takeover.

34. What is the Wildfire Fund created by AB 1054?

Answer: In 2019, California passed a law, AB 1054, that created a wildfire fund for future fires. This wildfire fund would apply to all investor owned California utilities and help pay the costs of future fires. It cannot be used to pay claims from any fires before July 12, 2019.

35. What if PG&E does not meet the AB 1054 deadline to have a plan approved by the Bankruptcy Court on or before June 30, 2020?

Answer: AB 1054 created a wildfire fund for future wildfires. In order for PG&E to participate in the wildfire fund, it must have a plan of reorganization approved by the Bankruptcy Court on or before June 30, 2020. If PG&E does not meet that deadline, it cannot participate in the wildfire fund created by AB 1054.

36. How will PG&E pay claims arising from the Ghost Ship Fire?

Answer: Victims of the Ghost Ship Fire have agreed to limit their recoveries to amounts paid by PG&E's insurance carriers. Ghost Ship claims will not be paid by the Fire Victim Trust.

37. What will Ghost Ship claimants need to do to obtain payment from PG&E's insurance carriers?

Answer: Ghost Ship claimants can receive payment by settling their claims with PG&E's insurance carriers or by trying their lawsuits in court and obtaining a judgment or verdict that requires the insurers to pay.