Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2900
Facsimile: 415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>　　　　　　　　　　**Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**RESPONSE OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO THE MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(c) FOR ENTRY OF AN ORDER APPROVING DEBTORS' 2020 (I) SHORT TERM INCENTIVE PLAN; (II) LONG TERM INCENTIVE PLAN; (III) PERFORMANCE METRICS FOR THE CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PG&E CORPORATION; AND (IV) GRANTING RELATED RELIEF**<br><br>Date: March 25, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>　　　　Courtroom 17, 16th Floor<br>　　　　San Francisco, CA 94102 |

The Official Committee of Tort Claimants (the "**TCC**") of PG&E Corporation and Pacific Gas and Electric Company (collectively, "**Debtors**") hereby submits its response (the "**Response**") to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 503(c) For Entry of an Order Approving Debtors' 2020 (I) Short Term Incentive Plan; (II) Long Term Incentive Plan; (III) Performance Metrics for the Chief Executive Officer and President of PG&E Corporation; And (IV) Granting Related Relief* (the "**Motion**") (Docket No. 6088). In support of this Response, the TCC respectfully represents as follows:

## SUMMARY OF ARGUMENT

The judgment of the Public Utilities Commission ("**Commission**") supersedes the Debtors' business judgment in matters of executive compensation and other financial, governance and safety issues pursuant to Cal. Public Utilities Code §3291. The administrative law judge ("**ALJ**") assigned by the Commission recently held seven days of hearings and heard testimony of more than 20 witnesses as part of the mandate of AB 1054. Instead of awaiting the Commission's determination on the proper guidelines for PG&E's executive compensation, the Debtors filed this Motion in the Bankruptcy Court seeking to circumvent the Commission's determination. This Court should decline to hear the Debtors' motion insofar as it pertains to performance compensation of executives, including Mr. William Johnson, CEO of the holding company.

With respect to the portion of the STIP that applies to rank and file employees, the TCC does not oppose performance bonuses. The TCC respectfully submits, however, that the metrics assigned to measure performance must be based on the Commission's judgment, not the Debtors' judgment.

## FACTUAL BACKGROUND

The Motion seeks several forms of relief: (i) approval of an annual short-term incentive compensation plan ("**STIP**"); (ii) approval of a long-term incentive compensation plan ("**LTIP**"); and (iii) approval of performance metrics for PG&E Corporation's Chief Executive Officer and President, Mr. Johnson.

**Original Compensation Motions**

As noted in the Motion, the Court previously granted the Debtors' 2019 STIP motion. The Court also approved the 2019 compensation package of Mr. Johnson. The Court denied the Debtors' 2019 motion for approval of senior executive compensation, but invited the Debtors to file an amended motion that tied safety performance to stock awards. In the current Motion, the Debtors' LTIP program is based entirely on the award of stock in reorganized PG&E. The TCC submits that the stock awards should not be on terms that are superior to the terms pursuant to which the wildfire victims' trust will receive stock under the Debtors' proposed plan.

**OII 19-09-016**

The landscape is different now. After the last round of compensation motions, the Commission commenced an investigation of PG&E's bankruptcy plan. Section 3291 of the California Public Utilities Code governs the operation of the State's Wildfire Fund (established under Section 3292), and section 3291(b)(1) provides that an entity cannot participate in the wildfire fund if it is in an insolvency proceeding unless it meets certain conditions. Subsection (C) provides as follows:

> The commission has approved the reorganization plan and other documents resolving the insolvency proceeding, including the electrical corporation's resulting governance structure, as being acceptable in light of the electrical corporation's safety history, criminal probation, recent financial condition, and other factors deemed relevant by the commission.

Hence, the Commission must approve a plan of reorganization resolving PG&E's insolvency proceedings and make determinations as to the acceptability of such plan considering factors relating to safety, California's climate goals, and ratepayer impacts, among other things.

Pursuant to that authority, on October 4, 2019, the Commission issued the Order Instituting Investigation, Number 19-09-016 ("**Plan OII**") to address issues relevant to Pacific Gas and Electric Company's eligibility for participation in the wildfire fund, including: (i) whether the Commission should approve of the Debtors' plan of reorganization, including PG&E's proposed corporate governance structure and financing structure; and (ii) whether the Commission should approve PG&E's proposed governance structure given PG&E's safety history, criminal probation, recent financial condition, and other factors. The Debtors' acknowledge this in the Motion, stating

that they submitted testimony to the Commission covering, among other things, the issue of executive compensation and their revised structure. Motion, Page 10.

**The Assigned Commissioner Proposals**

On February 18, 2020, Marybel Batjer, newly-appointed President of the Commission and assigned to oversee the Plan OII proceeding, issued a set of proposals on certain issues relating to the case, including executive compensation (the "**Assigned Commissioner Proposals**") and invited comments on same. The Assigned Commissioner Proposals are annexed hereto as Exhibit A. The TCC respectfully requests that the Court take judicial notice, to the extent the Court determines appropriate, of the Bankruptcy OII and the pleadings filed therein.

The Assigned Commissioner Proposals set forth the parameters of the Commission's oversight of PG&E:

> In making this determination, the Commission is guided by the imperative to ensure that PG&E is operationally and financially stable and can provide customers with safe, reliable, affordable and clean energy. *Any proposals for governance and operational changes should create incentives for risk reduction and improved performance and facilitate the financial stability of the utility*, which ultimately benefits ratepayers. We also recognize the critical need to *ensure that the reorganized companies*, both the utility and holding company, *must be fundamentally changed after their restructuring and the governance and operational changes we may impose pursuant to our statutory authority under AB 1054*.

Exhibit A, Page 1 (emphasis added). With respect to executive compensation, Ms. Batjer recommended several proposed terms that the Debtors' proposed plan of reorganization should contain, including:

- Basing a significant component of long-term incentive compensation on safety performance, as measured by a relevant subset of the Safety and Operational Metrics to be developed, as well as customer satisfaction, engagement, and welfare. The remaining portion may be based on financial performance or other considerations.

- A presumption that a material portion of executive incentive compensation shall be withheld if the PG&E is the ignition source of a catastrophic wildfire, unless the Commission determines that it would be inappropriate based on the conduct of the utility.

- Executive officer compensation policies will include provisions that allow for restrictions, limitations, and cancellations of severance payments in the event of any felony criminal conviction related to public health and safety or financial misconduct by the reorganized PG&E, for executive officers serving at the time of the underlying conduct that led to the conviction. Implementation of this policy

should take into account PG&E's need to attract and retain highly qualified executive officers.

Ms. Batjer set forth a schedule for testimony, hearings and briefing on the Assigned Commissioner Proposals, which dates carry through March 26, 2020. Pursuant to that schedule, the TCC and the Debtors, among other parties, filed briefs on the Assigned Commissioner Proposals on March 13, 2020.

**ARGUMENT**

Unsurprisingly, the Debtors do not agree with the Assigned Commissioner Proposals, but what is key for this Court's analysis of the instant motion is that the Debtors do not dispute that executive compensation is within the parameters of the Commission, and therefore executive compensation is subject to Commission review. This can be seen in both the Motion and the Declaration of John Lowe, the Senior Director of Total Rewards of Pacific Gas and Electric Company ("**Lowe Declaration**"), which is attached to the Motion.

As the Motion states: "As an administrative proceeding, the Plan OII affords parties the opportunity to be heard and comment on any Commission regulatory approvals required pursuant to Public Utilities Code section 3292 in order for PG&E to participate in the Go Forward Wildfire Fund, including executive compensation matters." Motion, Page 10. The Lowe Declaration states: "Specifically, AB 1054 requires that executive compensation be determined by a mix of safety and financial considerations." Further, Ms. Batjer notes that Mr. Lowe's testimony acknowledged that AB 1054 requires the Commission to determine that PG&E's executive incentive compensation structure is "designed to promote safety as a priority and ensure public safety and utility financial stability." Exhibit A, Pages 8–9.

Taking this into consideration, the TCC respectfully submits that the question of executive compensation for the Debtors is a matter reserved initially for the purview of the Commission, not this Court. In granting the Commission oversight over the Debtors, including oversight over executive compensation, the State of California in AB 1054 made the Commission a crucial part of the Debtors' emergence from bankruptcy. The Debtors' statement that, to the extent the Commission requires any changes to the STIP or LTIP, the Debtors will comply, showcases the

inherent infirmity in the Debtors' Motion because the issue of executive compensation is still one under active and disputed consideration before the Commission. To put it plainly and respectfully, the proper forum for the issue of executive compensation at this juncture is the Commission, not this Court.

The TCC submits that executive compensation must be in line with the conditions imposed by the Commission, and at a minimum include the following:

- At least 50% of an executive's compensation should be based on public safety performance, as measured by a relevant subset of the adopted Safety and Operational Metrics. Regarding a presumption that a material portion of executive compensation being withheld if PG&E is the ignition source of a catastrophic wildfire, the TCC submits that the words "a material portion" should be defined as at least 75%;

- Executive officer compensation policies should include provisions that allow for restrictions, limitations, and cancellations of severance payments in the event of any felony criminal conviction related to public health and safety or financial misconduct by the reorganized PG&E, for executive officers serving at the time of the underlying conduct that led to the conviction; and

- At least 35% of holding company and utility director compensation should be conditioned appropriately on public safety performance.

The Debtors' brief in response to the Assigned Commissioner Proposals disagreed with tying earnings to safety because the capital markets would be reluctant to invest due to regulatory unpredictability, i.e., investors need to know what costs the Commission will allow the utility to pass through to ratepayers. The TCC believes that the more palatable suggestion is through tying executive and board compensation to safety, which is one of the proposals that the Commission is currently considering.

Finally, the Debtors assert that the Motion should be approved now because any changes as a result of the Commission's conditions to Plan approval may be incorporated later. This suggestion is untenable. It would be unfair to employees to announce a 2020 performance compensation program that will be subject to alteration by the Commission. Moreover, the

Commission's rulings are expected within a period of several weeks.  There is no reason for the Court to proceed with this Motion in light of the imminent ruling of the Commission on compensation guidelines and metrics.

For the reasons argued herein, the TCC respectfully requests that this Court deny the Motion or, in the alternative, defer ruling on the Motion until the Commission has issued its conditions for approving the Plan.

Respectfully submitted,

Dated: March 18, 2020    BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
Cecily A. Dumas

Counsel to the Official Committee of Tort Claimants