WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF DANIEL BOWMAN IN SUPPORT OF DEBTORS' SECOND SUPPLEMENTAL APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AN ORDER AMENDING THE SCOPE OF THE RETENTION OF PRICEWATERHOUSECOOPERS LLP AS MANAGEMENT, TAX, AND ADVISORY CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE** |

I, Daniel Bowman, being duly sworn, state the following under penalty of perjury:

I am a principal at PricewaterhouseCoopers LLP ("**PwC**"), an accounting and financial services firm that maintains offices at Three Embarcadero Center, San Francisco, California 94111. I am duly authorized to make this declaration (this "**Second Supplemental Declaration**") on behalf of PwC and submit it (a) in support of the *Second Supplemental Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for an Order Amending the Scope of the Retention of PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* (the "**Second Supplemental Application**") and (b) in compliance with the *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 2230] (the "**Retention Order**") and the *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Amend the Scope of PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 4959] (the "**Supplemental Retention Order**", together with the Retention Order, the "**PwC Retention Orders**").[1] Unless otherwise stated in this Second Supplemental Declaration, I have personal knowledge of the facts set forth herein.[2]

More specifically, I submit this Second Supplemental Declaration in connection with the proposed continued and expanded retention of PwC as management, tax, and advisory consultants for PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") to perform those engagements summarized in the Second Supplemental

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Second Supplemental Application.
[2] Certain disclosures herein relate to matters within the personal knowledge of other professionals at PwC and are based on information provided by them.

Application (the "**Additional Supplemental Engagements**").[3]

By way of background, on May 1, 2019, the Debtors filed the *Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1791] (the "**Original Retention Application**"). In support of the Original Retention Application, the Debtors filed the *Declaration of Daniel Bowman in Support of Debtors' Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1792] (the "**Bowman Declaration**"). The various engagements described in the Original Retention Application and the Bowman Declaration (the "**Original Engagements**") included, but were not limited to various management, operations and legal support activities, strategic analysis services and bankruptcy tax and accounting advisory services.

On May 24, 2019, the Court entered the Retention Order approving the Original Retention Application and authorizing PwC to perform the Original Engagements *nunc pro tunc* to the Petition Date. Many of the Original Engagements were subject to work orders that, consistent with historical practice between PG&E and PwC, were for a set term of short duration (e.g., three to four months) and, by the terms of such agreements, required written extensions executed by the parties in order for such work to continue.

At various times following the Petition Date, the terms of the Original Engagements expired but the Debtors requested that PwC continue such work so that the various management, tax, and advisory consulting service projects that were the subject of the Original Engagements approved by the Retention Order could continue without interruption as any delay in the performance of such services would clearly be detrimental to the Debtors' estates. Additionally, following the Petition Date, the Debtors requested

---

[3] The summary of the Additional Supplemental Engagements included in this Second Supplemental Declaration is provided for purposes of convenience only and is qualified in its entirety by reference to the Additional Supplemental Engagements. To the extent that this Second Supplemental Declaration and the terms of each Additional Supplemental Engagement are inconsistent, the terms of the Additional Supplemental Engagement shall control.

that PwC undertake several entirely new projects in connection with the Chapter 11 Cases that were consistent with PwC's core capabilities and expertise.

On November 7, 2019, the Debtors filed a Supplemental Retention Application amending the scope of PwC's retention by requesting approval for its Supplemental Engagements representing continuation of expired Original Engagements and new projects requested to be performed by the Debtors (the "**Supplemental Engagements**"). On December 2, 2019, the Court entered the Supplemental Retention Order approving the Supplemental Retention Application and authorizing PwC to amend and expand their Original Engagements and approve Supplemental Engagements *nunc pro tunc* to the Petition Date.

Consistent with the previous Retention Orders, and in an effort to ensure continued and uninterrupted provision to the Debtors of necessary services, PwC and the Debtors have entered into agreements for several Additional Supplemental Engagements described in greater detail below, recognizing that such agreements would ultimately need to be approved by the Court upon Second Supplemental Application.

The scope of the continuing and additional work contemplated by the Additional Supplemental Engagements is summarized as follows:

Executed Extensions of Previously Approved Services. Pursuant to the terms and conditions of that certain Master Services Agreement, dated as of January 17, 2017 (previously attached to the *Bowman Declaration* [Docket No. 1792, Exhibit 1] (as amended December 13, 2019, the "**Master Services Agreement Amendment**", attached hereto as **Exhibit 1**), including nine expanded contracts and three new contracts related thereto (the "**Additional Supplemental MSA Contracts**") by and between the Debtors and PwC (such Supplemental MSA Contracts, collectively with the Master Services Agreement, and the Master Services Agreement Amendment, the "**MSA**"), attached hereto as **Exhibits 1-A through 1-L**, PwC continues to provide management and advisory services to the Debtors, to the extent expressly required by and as more particularly described in the applicable agreements.

A. Fixed-Fee Engagements – Extensions of Previously Approved Services
    (i) Assist the Debtors with their corporate incident reporting processes related to the 2018 Camp Fire and other major events in the Debtors' service

territory, including, operations and legal support activities (the "**Camp Fire Services**", as described in <u>**Exhibits 1-A**</u> hereto);

(ii) Assist the Debtors' Compliance and Ethics department ("**C&E**") in assessments of their compliance programs, including, but not limited to: reviews of the compliance program elements, analyzing documentation, drafting results of assessments, and supporting its compliance and ethics road map (the "**Compliance Services**", as described in <u>**Exhibit 1-B**</u> hereto);[4]

(iii) Assist the Debtors in the assessment of the design and operations of compliance controls across the Debtors' business, including, but not limited to: providing recommendations on the control design as a result of controls testing, and provide controls training to the Debtors' business units (the "**Controls Testing Services**", as described in <u>**Exhibit 1-C**</u> hereto); [4]

(iv) Assist the Debtors in assessments of their compliance with Rule 21 of the California Public Utilities Commission ("**CPUC Rule 21**"), including but not limited to: readiness assessment and roadmap (the "**Rule 21 Readiness Services**", as described in <u>**Exhibit 1-D**</u> hereto);[4]

(v) Assist the Debtors in pilot assessment of their compliance with CPUC Rule 21, including assessment of their program, including, but not limited to: reviews of the compliance program elements, analyzing documentation, drafting results of assessment, and supporting its compliance (the "**Rule 21 Pilot Testing Services**", as described in <u>**Exhibit 1-E**</u> hereto);

(vi) Assist the Debtors with their approach and response reporting processes related to the Community Wildfire Safety Program through the Public Safety Power Shutoff ("**PSPS**") program, including but not limited to: process development of the program, documentation and training, and execution of the PSPS program (the "**PSPS Program Support Services**", as described in <u>**Exhibit 1-F**</u> and <u>**1-G**</u> hereto);

(vii) Assist the Debtors with their approach and assessment of the organization of the Debtors' Chief Security Officer organization (the "**CSO**"), cybersecurity division, including but not limited to: recommendations regarding preliminary organization, governance, and operating model recommendations within the PG&E CSO organization (the "**Cybersecurity Assessment Services**", as described in <u>**Exhibit 1-H**</u> hereto);

(viii) Assist the Debtors with the implementation of a Governance Risk and Compliance ("**GRC**") software platform, including but not limited to:

---

[4] For the avoidance of doubt, this Change Order does not seek to increase or expand the fee for such services but only to amend the date terms or modify the services authorized by the Debtors.

supporting procedures, job aids, training materials and user guides (the "**Metric Stream Implementation Services**", as described in **Exhibit 1-I** hereto);[4]

    B.    Fixed Fee Engagements – Additional Services

        (ix)    Assist the Debtors with their consolidation of its 2020 Wildfire Mitigation Plan ("**WMP**") obligations to file in compliance with the California Public Utilities Commission (the "**2020 WMP Plan Support Services**", as described in **Exhibit 1-J** hereto);

        (x)    Assist the Debtors with the discovery process post-WMP submission (the "**2020 WMP Plan Post-Filing Support Services**", as described in **Exhibit 1-K** hereto);

        (xi)    Assist the Debtors' Compliance & Ethics team with certification requests, controls testing, assisting Debtors' management with development of reports and other C&E activities, as mutually agreed (the "**Compliance and Ethics Support Services**", as described in **Exhibit 1-L** hereto).

Bankruptcy Accounting Advisory Services. Pursuant to the terms and conditions of that certain Bankruptcy Accounting Advisory Services Engagement Letter (previously attached to the *Bowman Declaration* [Docket No. 1792, Exhibit 4], the Debtors and PwC have agreed to additional fee approvals associated with the Bankruptcy Accounting Services Engagement Letter, attached as **Exhibit 2** hereto, to further approve additional fees and expansion of the bankruptcy accounting advisory services requested by the Debtors (the "**Bankruptcy Accounting Advisory Services**").[5]

Recurring Tax Services. Pursuant to the terms and conditions of that certain engagement letter dated as of January 13, 2020, by and between the Debtors and PwC (the "**Recurring Tax Services Engagement Letter**", together with the Bankruptcy Accounting Advisory Services Engagement Letter, the "**Engagement Letters**"), attached hereto as **Exhibit 3**. PwC will provide various tax services at the request of the Debtors, including advice, answers to questions on federal, state and local, and international tax matters, and/or assistance with respect to matters involving the Internal Revenue Service or other tax authorities on an as-needed or as-requested basis (the "**Recurring Tax Services**").

PwC is well qualified and uniquely able to perform the services and represent the Debtors in

---

[5] For the avoidance of doubt, this Amendment does not seek to amend the Bankruptcy Accounting Advisory Services provided by PwC. Rather, the amendment is intended to provide disclosure of the expanded fee for such services authorized by the Debtors.

these Chapter 11 Cases in an efficient and timely manner. Therefore, PwC submits that continued employment and retention of PwC as management, tax, and advisory consultants to the Debtors as set forth in the agreements governing the Additional Supplemental Engagements is in the best interests of the Debtors, their creditors and all parties in interest.

It is my understanding that the Debtors intend that the services of PwC described herein will complement and will not duplicate the services rendered by any other professional retained by the Debtors in these Chapter 11 Cases. PwC understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors and avoid the duplication of services being rendered by PwC and other professionals in these Chapter 11 Cases.

To the extent that the Debtors and PwC later determine that PwC will perform additional services deemed appropriate and necessary to benefit the Debtors' estates, PwC and the Debtors may enter into additional agreements with respect to such services and will seek separate retention orders with regard to any such additional agreements.

PwC intends to apply to the Court for allowance of compensation and reimbursement of expenses for the services performed for the Debtors, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any applicable Orders of the Court, both in connection with this Second Supplemental Application and any interim and final fee applications to be filed by PwC in these Chapter 11 Cases, in accordance with the terms and conditions of the MSA and the Engagement Letters. Moreover, PwC will make reasonable efforts to comply with the requests of the United States Trustee ("the **U.S. Trustee**") for information and additional disclosures as set forth in the Fee Guidelines or any other applicable Orders.

PwC's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms set forth in the MSA and the Engagement Letters. Subject to this Court's approval, PwC, in accordance with its customary terms and conditions of employment, including the proposed compensation arrangements set forth in the respective MSA

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Contracts and Engagement Letters (the "**Fee Structures**"), for (a) compensation for the Bankruptcy Accounting Services and Recurring Tax Services, and on an hourly basis in accordance with PwC's ordinary and customary rates in effect on the date such services are rendered; (b) compensation for the Camp Fire Services, Compliance Services, Controls Testing Services, Rule 21 Readiness Services, Rule 21 Pilot Testing Services, PSPS Program Support Services, Cybersecurity Assessment Services, MetricStream Implementation Services, 2020 WMP Plan Support Services, 2020 WMP Plan Post-Filing Support Services, and Compliance and Ethics Support Services on a fixed-fee basis (summarized below) in accordance with the terms of each respective MSA Contract; and (c) reimbursement of actual and necessary costs and expenses incurred by PwC in connection with all services performed on behalf of the Debtors. I believe that these Fee Structures and compensation for each of the Additional Supplemental Engagements are market-based and reasonable considering PwC's knowledge and experience.

Hourly Fee Engagements. The hourly rates set forth below are PwC's applicable hourly rates for the work of its professionals and staff members for the different engagements set forth in the applicable MSA Contracts and Engagement Letters. These hourly rates reflect PwC's normal and customary billing practices for engagements of this complexity and magnitude. PwC's hourly rates are subject to periodic adjustment from time to time in accordance with PwC's established billing practices and procedures. PwC will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

| Billing Category | Bankruptcy Accounting Services[6] | Recurring Tax Services |
|---|---|---|
| Partner / Principal | $839 - $994 | $625 |
| Managing Director | $757 - $898 | n/a |
| Director/Senior Manager | $715 - $807 | $500 |
| Manager | $525 - $628 | $400 |
| Senior Associate | $460 - $517 | $325 |
| Associate | $415 - $450 | $250 |
| Administrative | $135 | $85 |

---

[6] PwC's rates for these services are not different from those disclosed in the Bowman Declaration. However, pursuant to the change orders that were executed as part of the Additional Supplemental Engagements, the Debtors agreed to raise the cap that was associated with the provision of these services in light of an increased scope of work. The disclosures made herein are intended to disclose such increases.

Fixed-Fee Engagements. The Debtors and PwC have agreed to fixed-fee compensation for several of the MSA Contracts. These fixed-fee estimates are based on the time required by the individuals assigned to the Debtors' engagements. In addition, the fee estimates are based on the assumption that the Debtors will provide certain information and assistance to PwC.

| Services | Fixed-Fee Amount |
|---|---|
| Camp Fire Services – Change Order No. 4 | $1,325,000 |
| Compliance Services – Change Order No. 1 | $0 |
| Control Testing Services – Change Order No. 1 | $0 |
| Rule 21 Readiness Services – Change Order No. 1 | $0 |
| Rule 21 Pilot Testing Services – Change Order No. 1 | $175,000 |
| PSPS Program Support Services – Change Order No. 2 | $1,363,000 |
| – Change Order No. 3 | $1,457,000 |
| Cybersecurity Assessment Services – Change Order No 1 | $869,366 |
| MetricStream Implementation Services – Change Order No. 1 | $0 |
| 2020 WMP Plan Support Services | $737,000 |
| 2020 WMP Plan Post-Filing Support Services | $1,035,000 |
| Compliance and Ethics Support Services | $530,000 |

Expenses. Additionally, as was the case with the expenses described in the Original Retention Application and the Bowman Declaration (and approved by the Retention Orders) PwC will continue to invoice the Debtors for its reasonable out-of-pocket expenses charged during the Chapter 11 Cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use or value added tax, as well as non-ordinary costs such as secretarial and other overtime.

It is PwC's intention to seek compensation for its services as described in the Second Supplemental Application and the MSA and Engagement Letters in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines and any and all rules and Orders of this Court. It is not the practice of PwC's professionals to keep detailed time records in one tenth-of-an-hour increments (i.e., six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of PwC's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5) increments. Thus, in the Second Supplemental Application, the Debtors

request that this Court allow PwC's professionals to provide the following in its monthly, interim, and final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly, interim, and final fee application that PwC files in these Chapter 11 Cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in half hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

Given the nature of the services to be provided by PwC, such billing format and associated time details will be sufficient for the Debtors and other parties-in-interest to make informed judgments regarding the nature and appropriateness of PwC's services and fees.

As part of the overall compensation payable to PwC under terms of certain of the MSA Contracts and Engagement Letters, the Debtors have agreed to certain indemnification obligations as described in such MSA Contracts and Engagement Letters. The terms of the MSA and Engagement Letters and the indemnification provisions contained therein were fully negotiated in good faith and at arm's length.

PwC should not be disqualified from acting as the Debtors' management, tax, internal accounting and advisory consultant merely because it represents the Debtors' creditors, equity holders or other parties in interests in matters unrelated to these Chapter 11 Cases.

To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of PwC's retention are discovered or arise, PwC will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

[*Signature on Next Page*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 18, 2020

By: _____
Daniel Bowman
Principal
PricewaterhouseCoopers LLP