| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:   (415) 496-6723
Fax:   (415) 636-9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF JASON P. WELLS IN SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER (I) APPROVING CASE RESOLUTION CONTINGENCY PROCESS AND (II) GRANTING RELATED RELIEF**<br><br>Related Docket Nos. [●]<br><br>Date:   April 1, 2020<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  U.S. Bankr. Court, Courtroom 17, 16th Floor<br>         San Francisco, CA 94102 |

I, Jason P. Wells, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

I am the Executive Vice President and Chief Financial Officer of PG&E Corporation ("**PG&E Corp.**"). Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corp., the "**Debtors**") is a wholly-owned subsidiary of PG&E Corp. In 2007, I joined PG&E Corp. as the Director of Technical Accounting and was promoted to Senior Director of Corporate Accounting and Assistant Controller in 2008. I became Vice President, Finance of PG&E Corp. in October 2011, and became Vice President, Business Finance of PG&E Corp. in August 2013, and became Senior Vice President and Chief Financial Officer in January 2016. I was appointed to my current position at PG&E Corp. in June 2019. I have a bachelor's degree and a master's degree in accounting from the University of Florida and I am a Certified Public Accountant in the State of Florida.

I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 9019 for Entry of an Order (i) Approving Case Resolution Contingency Process and (ii) Granting Related Relief* (the "**Motion**"), filed contemporaneously herewith.[1] The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information reviewed by me in the course of my duties and responsibilities. If called upon to testify, I would testify to the facts set forth in this Declaration.

The Debtors remain committed to achieving a fair and equitable resolution of these Chapter 11 Cases – a resolution that affords fair treatment to wildfire victims and other economic stakeholders, provides Californians with access to safe, reliable, and affordable service, results in a transformed utility, and satisfies the requirements of AB 1054. To that end, after filing their initial plan of reorganization in September of last year, the Debtors have engaged in ongoing, arms'-length, good faith discussions with the Governor's Office regarding the terms of the Debtors' restructuring,

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in the Motion.

the requirements of AB 1054, and the concerns expressed in Governor Newsom's December 13, 2019 letter [Docket No. 5138-1] (the "**December 13 Letter**"). These discussions have focused largely on safety, corporate governance and operation of the Utility, and assuring that the Reorganized Debtors' capital structure will be stable, flexible, and will position the Reorganized Debtors to attract long-term capital. The Plan Proponents have also sought to address a primary concern expressed by the Governor that the state of California must have some realistic alternative available if the Plan is not consummated within the timeframe set forth in AB 1054.

The Debtors' management and professionals worked diligently with the Governor's Office to build the state's confidence that the Reorganized Utility will meet the needs of the state while providing safe, reliable, and affordable service for its 16 million customers. Ultimately, these discussions culminated in an agreement with the Governor's Office on the case resolution contingency process set forth in **Exhibit A** to the Motion and described therein (the "**Case Resolution Contingency Process**"), and the Debtors' commitment to a number of changes to their corporate governance and regulatory affairs, which the Debtors believe will lead to the support of the Governor's Office for the Plan. As described in the Debtors' Post-Hearing Brief filed on March 13, 2020 in the Plan OII (the "**Debtors' OII Proposals**"), the Debtors have agreed to substantial modifications relating to PG&E's board of directors, Utility safety, general corporate governance and operations, and executive compensation, and an enhanced oversight and enforcement process. I understand the Debtors' OII Proposals, in large part, support the proposals in the ruling issued by the CPUC Assigned Commissioner in the Plan OII to address the Debtors' governance and organization, and the Debtors also have agreed to work with the Governor's Office on certain of the initial corporate governance matters.

In addition, the Debtors also have agreed in connection with and subject to, among other things, the approval of the Case Resolution Contingency Process and the Governor's support for the Plan and the Securitization, to implement certain other commitments as further described in the Motion relating to, among other things, dividend restrictions, the recovery in rates of Fire Victim Claims costs if Securitization is not approved, a purchase option in connection with extreme

circumstances where, after an extended period of time, the CPUC revokes the Utility's CPCN, and the usage of net operating losses.

The Debtors intend to fund the obligations under the Plan, including the Debtors' contributions to the Go-Forward Wildfire Fund created under AB 1054, from a variety of sources as described in the Plan OII and as set forth in the Motion. The Debtors also contemplate a single, post-emergence 30-year securitization transaction of approximately $7.5 billion (the "**Securitization**"), with reduced principal payments in the early years, which would replace the Temporary Utility Debt referenced in the Motion and be neutral, on average, to customers and also would accelerate the deferred payments to the Fire Victim Trust under the Plan. The Securitization includes offsetting credits to be funded initially from a reserve account and further funded with the value of net operating losses contributed in the year in which the net operating losses are utilized. The Securitization structure is anticipated to yield a full (nominal) offset each year to securitized charges. The Plan is not contingent on the approval of the Securitization and in the event the Securitization is not approved, the Debtors have committed to use the proceeds of the net operating losses to amortize the Temporary Utility Debt.

The Debtors also have agreed, subject to the approval of the Motion and the Governor's Office's support for the Plan and the Securitization, to the following:

- As a condition to the occurrence of the Plan Effective Date, the secured debt to be issued in connection with the funding of the Plan shall receive an investment grade rating from at least one of Standard & Poor's or Moody's on the Effective Date. This condition may be waived with the consent solely of the Plan Proponents and the Governor's Office; and

- The Plan Documents (including documents included in the Plan Supplement) and any amendments to the Plan will be in form and substance acceptable to the Governor's Office; provided, that if the Court declines to enter a form of Confirmation Order or to confirm the Plan unless the Plan Proponents modify the Confirmation Order or the Plan in a manner not acceptable to the Governor's Office, the Plan Proponents may modify the Confirmation Order to address the Court's requirements.

While the Debtors continue to believe that the Plan as previously proposed complies with AB 1054, the Debtors believe that the commitments discussed herein and in the Motion address all of the concerns raised in the Governor's December 13 Letter. Additionally, I believe the Case

Resolution Contingency Process is fair and reasonable and in the best interests of the Debtors, their estates, and all of their economic stakeholders. I believe approval of the Case Resolution Contingency Process will facilitate the Debtors' ability to timely exit these Chapter 11 Cases, provide a positive signal to the financing markets, and further solidify support for the Plan and the likelihood of a smooth and largely consensual resolution of the Chapter 11 Cases. Additionally, the Debtors' support for the Case Resolution Contingency Process Order is based on, and subject to, the Debtors' understanding that the Governor's Office will file a responsive pleading in the Bankruptcy Court prior to the hearing on the Motion stating (1) if the relief requested in the Motion is granted and the CPUC approves the Debtors' Plan with governance, financial and operational proposals consistent with the Debtors' OII Proposals, and such modifications as the CPUC believes are appropriate, the Plan will, in the Governor's judgment, be compliant with AB 1054 and (2) the Securitization (subject to CPUC approval), if it meets all legal requirements, would be in the public interest and would strengthen the Utility's go-forward business.

I believe approval of the Case Resolution Contingency Process (together with the filing of the Debtors' OII Proposals and the other undertakings described above and in the Motion) will eliminate the costs, potential litigation, and risks associated with the issues raised in the December 13 Letter, including the potential litigation that would arise from an attempted state takeover of the Utility, which could undermine the timely confirmation and consummation of the Plan. I understand such issues are complex, time consuming, and involve uncertain areas of state and federal law, including complicated issues of "just compensation" that would arise if the state attempted to acquire the Debtors by exercise of eminent domain. I believe the elimination of the risk and uncertainty of that potential litigation will, among other things, expedite distributions to fire victims.

Accordingly, I believe entry into, and approval of, the Case Resolution Contingency Process represents a sound exercise of the Debtors' business judgment and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: March 20, 2020

St. Helena, California

*/s/ Jason P. Wells*
Jason P. Wells