JACOB T. BEISWENGER (S.B. #321012)
jbeiswenger@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PETER FRIEDMAN (*pro hac vice*)
pfriedman@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

NANCY A. MITCHELL (*pro hac vice*)
nmitchell@omm.com
MATTHEW L. HINKER (*pro hac vice*)
mhinker@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (213) 326-2061

*Attorneys for Governor Gavin Newsom*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas & Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM)<br>Chapter 11 Lead Case<br>(Jointly Administered)<br><br>**GOVERNOR GAVIN NEWSOM'S STATEMENT IN SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER (I) APPROVING CASE RESOLUTION CONTINGENCY PROCESS AND (II) GRANTING RELATED RELIEF**<br><br>[Related to Docket No. 6398]<br><br>Date: March 20, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Governor Gavin Newsom, by and through his counsel, O'Melveny & Myers LLP, respectfully submits this statement (the "**Statement**") in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Approving Case Resolution Contingency Process and (II) Granting Related Relief* [Docket No. 6398] (the

"**Motion**").[1] Governor Newsom files this Statement in his official capacity as Governor of the state of California, but not on behalf of any agency, department, unit or entity of the state of California.[2] In support of this Statement, Governor Newsom respectfully states the following:

1.  Assembly Bill 1054 (Holden, Chapter 79, Statutes of 2019) ("**AB 1054**") was clear that any entity emerging from these Chapter 11 Cases could only benefit from the Go-Forward Wildfire Fund if it was positioned to provide Californians access to safe, reliable, and affordable power. On December 13, 2019, the Governor sent a letter to the Debtors describing, in his judgment, the changes necessary for the Plan to meet AB 1054 [Docket No. 5138-1] (the "**December 13 Letter**"). The December 13 Letter made it clear that the Debtors' Plan must result in a new and transformed utility, positioned to meet its commitments to the people of California, with transformed governance, operations and management, a capital structure that allows the reorganized Utility to make critical safety investments, and stringent oversight and enforcement mechanisms.

2.  Since the December 13 Letter, the Governor's Office and the Debtors have engaged in discussions regarding changes to the Plan necessary to meet the state's goals. As a result of those discussions and as set forth in more detail below, the Debtors have submitted constructive responses to the ruling issued by the CPUC Assigned Commissioner in the Plan OII, incorporated or agreed to incorporate modifications to the Plan and Plan Documents, and filed the Motion. These commitments include, among other things: (i) an enhanced regulatory and enforcement process that provides the CPUC greater visibility into the reorganized Utility's operations and course correction tools, and stronger enforcement tools if they become necessary; (ii) increased oversight and risk management, including more effective and targeted uses of public safety power shutoffs; (iii) a number of safety-oriented governance initiatives that include material changes at the board level and independent oversight; and (iv) financial commitments that include additional shareholder investment in the reorganized entity.

---

[1] Capitalized terms used but not defined herein have the meaning given to such terms in the Motion.
[2] The Attorney General has appeared in these proceedings on behalf of certain agencies and departments of the state of California. The Governor does not take a position on the issues raised in those filings in this pleading.

3. Entry of an order approving the Motion is a critical component of the Governor's willingness to support the Plan. In the Governor's view, the relief requested in the Motion responds to the Governor's previously stated concerns by (i) granting the state visibility into the safety and operational improvements being made in advance of the next fire season through the Operational Observer, (ii) providing for the appointment of a Chief Transition Officer to oversee, and take responsibility for, operational safety issues if the Debtors' exit from these Chapter 11 Cases is delayed, (iii) creating an organized process for a sale of the business before the 2021 fire season in the unlikely event the Plan cannot be consummated, and (iv) allowing the state of California, or a party supported by the state of California, to participate in the Sale Process if necessary.

4. The Debtors have made positive modifications to the Plan compared to the Debtors' Original Plan including:

   a. a commitment not to reinstate a common dividend for approximately three years, which is estimated to contribute an additional $4 billion of equity to pay down debt and invest in the business;

   b. a commitment to use approximately $7.6 billion of shareholder assets to repay or support a refinancing of the temporary utility debt;

   c. a commitment to utilize the interest rate savings realized from the refinancing of the prepetition funded debt obligations for the benefit of ratepayers;

   d. a revised governance structure designed to prioritize safety within the reorganized Utility;

   e. agreement to an Enhanced Oversight and Enforcement Process that provides the CPUC with course correction tools, as well as stronger enforcement tools if they become necessary;

   f. provisions allowing for the consensual resolution of the Chapter 11 Cases that results in Fire Claims being paid more quickly, positions the Utility to be an important partner in achieving climate goals, and positions the Utility to make necessary safety and mitigation investments;

g. an agreement that provides the state of California the ability to immediately appoint an operational observer to provide insight into the Debtors' progress on safety goals before the Debtors exit these Chapter 11 Cases;

h. a commitment by the Debtors to appoint a Chief Transition Officer to address safety issues if the Chapter 11 process is delayed; and

i. separate from the possible sale process as part of the Chapter 11 Cases, an agreement to a streamlined sale process using an agreed formula to establish the sale price if the CPUC were in the future to revoke the Reorganized Utility's license to operate at the end of a multi-step process.

Through these actions and commitments, the Debtors evidenced their responsiveness to the requirements of AB 1054 and commitment to financing the improvements necessary to transform to a safe and reliable Utility. As a result of these commitments and changes, the reorganized entity will not be the same as the company that filed the Chapter 11 Cases.

5. The Debtors' financial plan also contemplates an application to the CPUC for a securitization of up to $7.5 billion in wildfire claims costs. The Governor believes that a rate neutral securitization pursuant to Senate Bill 901 (Dodd, Chapter 626, Statutes of 2018) that meets all legal requirements as determined by the CPUC would, in his judgment, be in the public interest, as it would strengthen the going-forward business and support the reorganized Utility's ability to provide safe, reliable, affordable and clean energy to its customers.

6. The Governor believes that if the Motion is granted and the CPUC approves the Plan with the governance, financial and operational provisions submitted to the CPUC by the Utility or otherwise agreed by the Utility, with any modifications the CPUC believes appropriate or necessary, the Plan will, in the Governor's judgment, be compliant with AB 1054.

7. Finally, the Debtors' expedient exit from these Chapter 11 Cases is in the interests of all stakeholders. Exiting these Chapter 11 Cases allows wildfire victims to begin receiving compensation for their losses. Additionally, a strong utility is important to the state's ability to achieve its goals, including minimizing impacts to ratepayers, improving the safety and reliability of the Utility's electrical system, reducing fire risk, and achieving the state's climate goals.

8. Therefore, the Governor respectfully requests that the Court enter an order approving the Motion and such other relief as the Court deems appropriate.

Dated: March 20, 2020

**O'MELVENY & MYERS LLP**

By: /s/ Jacob T. Beiswenger

JACOB T. BEISWENGER

By: /s/ Nancy A. Mitchell

NANCY A. MITCHELL (*pro hac vice*)
PETER FRIEDMAN (*pro hac vice*)
MATTHEW HINKER (*pro hac vice*)

*Attorneys for Governor Gavin Newsom*