WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>      **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105 (a) AND 363(b) AND FED. R. BANKR. P. RULE 9019 FOR ENTRY OF AN ORDER APPROVING (I) AGREEMENT AND SETTLEMENT WITH PEOPLE OF THE STATE OF CALIFORNIA AND (II) GRANTING RELATED RELIEF**<br><br>**(THE "BUTTE COUNTY AGREEMENT MOTION")**<br><br>Date: April 14, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **Telephonic Appearances Only**<br>   United States Bankruptcy Court<br>   Courtroom 17, 16th Floor<br>   San Francisco, CA 94102<br>**Objection Deadline: April 7, 2020, 4:00 P.M (PT)** |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) approving the Plea Agreement and Settlement annexed hereto as **Exhibit A**, and the undertakings described below (collectively, the "**Butte County Agreement**"), entered into between the People of the State of California, represented by the District Attorney of Butte County (the "**Butte County DA**"), and the Utility to settle and resolve the criminal prosecution and investigation of the Utility arising from the November 8, 2018 Camp fire (the "**Camp Fire**"), and (ii) granting related relief. In support of this Motion, the Debtors respectfully submit the Declaration of Brad Brian (the "**Brian Declaration**"), filed contemporaneously herewith.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

On November 8, 2018, the Camp Fire devastated and destroyed the towns of Paradise, Concow, and Magalia and took the lives of more than 80 people. Cal Fire reported the destruction of approximately 150,000 acres, 14,000 residences, 500 commercial structures, and 4,300 other buildings.

The Debtors have acknowledged their role in the 2018 Camp Fire and accept that their equipment started the fire. Since the 2018 Camp Fire, the Debtors have worked side-by-side with the Butte County residents and public officials to help the Paradise region recover and rebuild, and that work is ongoing. Of course, no amount of rebuilding can replace the devastating loss of life that occurred.

As the Debtors have previously disclosed, the Butte County DA, working with the Office of the Attorney General of California, opened a criminal investigation of the 2018 Camp Fire. The Debtors have produced documents and have responded to other requests for information and witnesses in connection with that criminal investigation, including, but not limited to, documents related to the operation and maintenance of equipment owned or operated by the Debtors. The Debtors have also cooperated with the Butte County DA's Office in the collection of physical evidence from equipment owned or operated by the Debtors.

The Debtors have previously disclosed that criminal charges could be filed against the Debtors with respect to the 2018 Camp Fire. The Debtors also disclosed that they could be subject to material fines, penalties, or restitution orders if it is determined that the Debtors failed to comply with applicable laws and regulations in connection with the 2018 Camp Fire. If the Debtors were found criminally liable, the Debtors could also be liable for claims for restitution on behalf of certain Camp Fire victims under the California Penal Code. As disclosed, the Debtors believe that any such claims for restitution would constitute fire victim claims and under the Plan (as defined below) would be satisfied solely out of the trust to satisfy fire victim claims (the "**Fire Victim Trust**"). The Butte County criminal investigation is not subject to the automatic stay under the Bankruptcy Code.

As a result of this investigation and the potential criminal charges and fines involved, the Debtors have been engaged in ongoing negotiations with the Butte County DA to resolve the investigation and

3

any fines and charges involved. Recognizing their role in, and responsibility for, the 2018 Camp Fire, and the tragic and devastating loss of life and property damage incurred, the Debtors' goals in these negotiations have been to resolve the criminal investigation in a manner that will bring certainty and closure and, at the same time, not jeopardize confirmation and implementation of their Plan that will expedite distributions of the approximate $13.5 billion of value to be made available to compensate fire victims.

The negotiations with the Butte County DA have culminated in the Butte County Agreement. Notably, the Butte County Agreement recognizes the substantial compensation that the Debtors are providing to fire victims under the Plan, including by way of the Fire Victim Trust, as well as by compensation to the Public Entities, and by providing funds to reimburse the insurance carriers that have made substantial payments to fire victims, including the 2018 Camp Fire victims.

## II. JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court the Chapter 11 Cases. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 13, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**").

4

On December 12, 2019, the Debtors, together with certain funds and accounts managed or advised by Knighthead Capital Management, LLC and Abrams Capital Management, L.P. (together, the "**Shareholder Proponents**") as co-plan proponents, filed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated December 12, 2019* [Docket No. 5101], which was thereafter amended on January 31, 2020 [Docket No. 5590], March 9, 2020 [Docket No. 6217], and March 16, 2020 [Docket No. 6320] (and as may be further modified or amended from time to time, together with all exhibits and schedules thereto, the "**Plan**").

On February 7, 2020, the Debtors filed their proposed disclosure statement for the Plan [Docket No. 5700], which was thereafter amended on March 9, 2020 [Docket No. 6219], March 16, 2020 [Docket No. 6322], and March 17, 2020 [Docket No. 66353] (and as may be further modified or amended from time to time, together with all exhibits and schedules thereto, the "**Disclosure Statement**"). The Court held hearings on the adequacy of the Disclosure Statement on March 10, 2020 and March 11, 2020 (collectively, the "**Disclosure Statement Hearings**") and, by Order entered on March 17, 2020, approved the Disclosure Statement, paving the way for the Debtors to commence solicitation of their Plan and progress towards timely confirmation of the Plan well before the June 30, 2020 deadline imposed by California Assembly Bill 1054.

**IV.  THE BUTTE COUNTY AGREEMENT**

As stated above, the negotiations with the Butte County DA resulted in the Butte County Agreement. The principal terms of the Butte County Agreement are summarized as follows:[1]

1. The Utility agrees to plead guilty to 84 counts of involuntary manslaughter in violation of Cal. Penal Code § 192(b) and one (1) count of unlawfully causing a fire in violation of Cal. Penal Code § 452 and to admit to special allegations pursuant to California Penal Code §§ 452.1(a)(2), 452.1(a)(3), 452.1(a)(4).

2. The Utility agrees there exists a sufficient factual basis for the Butte County Superior Court to accept the Utility's plea of guilty to the charges set forth above.

3. The Utility will be sentenced to pay the maximum total fine and penalty of not more than $3,486,950.00, which includes any applicable base fine and related fees,

---

[1] This summary is qualified in its entirety by the provisions of the Butte County Agreement, which are controlling.

5

penalties, and assessments. No other or additional sentence will be imposed upon the Utility.

4. The Utility will pay $500,000.00 to the Butte County District Attorney Environmental and Consumer Protection Trust Fund to reimburse costs spent on the investigation of the Camp Fire.

5. Nothing in the Butte County Agreement prejudices the rights of any of the heirs of the decedents specified in the indictment in the criminal action against the Utility with respect to any claims filed on behalf of the decedents in the Chapter 11 Cases. The People, by and through the Butte County DA, have agreed not to oppose any effort by the Debtors to seek the discharge of claims for restitution pursuant to Cal. Penal Code § 1202.4 in the Chapter 11 Cases made on the grounds that such claims will be satisfied under the Plan.

6. Upon approval and acceptance of the Butte County Agreement by the Butte County Superior Court and the Bankruptcy Court, the People, by and through the Butte County DA, agree not to prosecute any further criminal charges related to or arising out of the 2018 Camp Fire against the Utility, PG&E Corp., any wholly-owned subsidiaries thereof, and their respective successors and assigns, including the Reorganized Debtors.

7. The People, by and through the Butte County DA, agree that implementation of the Butte County Agreement will be in full and final satisfaction, release, and discharge of the proofs of claim filed by the People, by and through the Butte County DA, in the Chapter 11 Cases (Proof of Claims Nos. 57948, 59642, 65945, 87014, and 87021).

8. The Utility will be entitled to withdraw the plea if: (a) the Butte County Agreement is not approved and accepted by the Butte County Superior Court; (b) any obligation, including any fines, penalties, assessments, obligations to pay restitution pursuant to Cal. Penal Code § 1202.4 in addition to the settlements set forth in the Butte County Agreement, and any non-monetary obligations, is imposed upon the Utility in the criminal case; or (c) the Butte County Agreement is not approved by the Bankruptcy Court or the Plan is not confirmed by the Bankruptcy Court on or before June 30, 2020, or does not become effective in accordance with the terms thereof. Should the Company withdraw its plea, the indictment referenced in the Butte County Agreement shall remain.

In addition to the terms described above, and as part of their ongoing commitment to further improvements in wildfire safety and to invest in their infrastructure to prevent future wildfires, in connection with the Butte County Agreement, the Utility has consented to the Butte County DA consulting, sharing information with, and receiving information from Judge Mark Filip (ret.), the Court-appointed monitor overseeing the Utility's probation, through the expiration of the Utility's term of probation in the case styled *United States v. Pacific Gas and Electric Co.*, 14 Cr. 00175-WHA (N.D. Cal.), and in no event until later than January 31, 2022. This consent is subject to the approval of the

6

Federal Court overseeing the Utility's probation and Judge Filip. The Debtors have also committed to working with the Butte County DA and the Butte County community, and to spending up to $15 million over the next five years, to implement a plan to provide water to residents impacted by damage to the Utility's Miocene Canal caused by the 2018 Camp Fire, while a long-term plan for water is developed.

## V. BASIS FOR RELIEF REQUESTED

By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors seek entry of an order approving their entry into the Butte County Agreement.

### A. The Butte County Agreement is a Sound Exercise of the Debtors' Business Judgment and should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code

The Court may approve, and authorize the Debtors to enter into and perform under, the Butte County Agreement pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the relief requested herein. *See In re TK Holdings Inc.*, Case No. 17-11375 (BLS) [Docket No. 2409] (Bankr. S.D.N.Y. 2017) (approving settlement agreement with multiple state attorney generals to resolve state consumer protection claims and conclude civil investigation of the debtors); *In re Adelphia Communications Corp.*, 327 B.R. 143, 161 (Bankr. S.D.N.Y. 2005) (approving settlement agreement among various parties, including the debtor and DOJ, to resolve a criminal prosecution); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

7

Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief, that the action was in the best interests of the company. *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re AWTR Liquidation Inc.,* 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) (referencing the Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C); *In re Johns-Manville Corp.*, 60 B.R. at 615–16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Thus, if, as they clearly do here, a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

The Butte County Agreement is the product of substantial arm's-length, good faith negotiations and resolves the ongoing criminal investigation and all of the potential charges that could be brought against the Debtors in connection therewith. The Butte County Agreement avoids the risk of additional fines, penalties, awards and associated uncertainties. Additionally, the Butte County Agreement manifestly demonstrates the degree to which the Debtors recognize their responsibilities and hope that it will bring some degree of closure for the families affected by the Camp Fire. The Butte County Agreement will also avoid protracted proceedings and potential fines and penalties that could adversely impact the path to Plan confirmation and the commencement of prompt distributions to all fire claimants.

After assessing and, with the assistance of counsel, fully evaluating all aspects of the Butte County Agreement, including the risks, expenses, and uncertainty of not resolving the investigation, the Debtors concluded that entry into the Butte County Agreement is in the best interests of the Debtors as well as all stakeholders in these Chapter 11 Cases.

**B.     Entry into the Butte County Agreement is in the Best Interests of the Debtors' Estates and should be Approved Pursuant to Bankruptcy Rule 9019**

Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel*

8

*Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation and expedite the administration of the bankruptcy estate. *See Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The decision to approve a particular compromise lies within the sound discretion of the Court. *See In re A&C Props.*, 784 at 1380. A proposed compromise and settlement should be approved when it is "fair and equitable" and "in the best interest of the [debtor's] estate." *Id.* at 1381. The court must apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

Courts in this jurisdiction typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties, if any, to be encountered in the matter of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (iv) the paramount interest of the creditors and the proper deference to their reasonable views. *A&C Props.*, 784 F.2d at 1380. It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, the conclusions must favor the approval of the settlement. *See In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

The standard for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below the lowest point in the range of reasonableness in terms of benefits to the estate. *See City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to

9

some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim;" rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness.") (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.)); *see also, In re Pac. Gas & Elec. Co.*, 304 B.R. at 417; *In re Planned Prot. Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) (same).

While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair),* 538 F.2d 849, 851-52 (9th Cir. 1976), or conduct a full independent investigation. *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505; *see also In re Pac. Gas & Elec. Co.*, 304 B.R. at 417. As one court explained in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) (emphasis added).

As demonstrated above, the terms of the Butte County Agreement are in the best interests of the Debtors, their estates, creditors, shareholders, and other stakeholders, and should be approved. As stated, absent entry into this agreement, the Debtors would be subject to additional charges and the risks attendant thereto described above. The Butte County Agreement avoids these risks, provides for a monetary fine consistent with the statute, and facilitates these Chapter 11 Cases proceeding to a timely and successful conclusion.

Further, the Butte County Agreement eliminates the costs and risks associated with ongoing criminal litigation related to the 2018 Camp Fire. Courts have routinely acknowledged that uncertainty of litigation and federal policy weigh in favor of approval of settlements. *See In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9-10 (Bankr. D.P.R. Mar. 31, 2009) ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily

10

in favor of the approval of the Settlement Agreement."); *In re Manuel Mediavilla, Inc.*, 568 B.R. 551, 567 (B.A.P. 1st Cir. 2017) (recognizing "federal policy encouraging settlement of bankruptcy litigation.").

Lastly, the Butte County Agreement clearly is in the best interests of all creditors and stakeholders. After settling with all wildfire claimant constituencies in the Chapter 11 Cases, the Debtors have now resolved these criminal proceedings, which will further one of the Debtors' key goals in initiating these Chapter 11 Cases – fairly and equitably compensating fire victims as expeditiously as possible. As such, the Butte County Agreement should be approved.

**VI. NOTICE**

Notice of this Motion will be provided to (i) the U.S. Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the Butte County DA; (viii) the California Public Utilities Commission; (ix) the Nuclear Regulatory Commission; (x) the Federal Energy Regulatory Commission; (xi) the Office of the United States Attorney for the Northern District of California; (xii) counsel for the agent under the Debtors' debtor in possession financing facility; (xiii) counsel for the Ad Hoc Noteholder Committee; and (xiv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

11

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as appropriate under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: March 23, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By: /s/*Stephen Karotkin*
  Stephen Karotkin

*Attorneys for Debtors
and Debtors in Possession*