1   Paul F. Ready
    State Bar No. 107469
2   **FARMER & READY**
    A LAW CORPORATION
3   1254 Marsh Street
    Post Office Box 1443
4   San Luis Obispo, CA  93406
    Telephone: (805) 541-1626
5   Facsimile: (805) 541-0769
    Email: pfready@farmerandready.com

6

7   Attorneys for Creditor Sarah Pazdan

8                **UNITED STATES BANKRUPTCY COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
9                   **SAN FRANCISCO DIVISION**

10  In re                                    )    Case Nos. 19-30088 (DM)
                                             )    Chapter 11
11  PG&E CORPORATION,                        )    (Lead Case)
                                             )    (Jointly Administered)
12        and                                )
                                             )
13  PACIFIC GAS AND ELECTRIC                 )    **NOTICE OF HEARING ON**
    COMPANY,                                 )    **MOTION FOR RELIEF FROM**
14                                           )    **THE AUTOMATIC STAY AND**
          Debtors.                           )    **ABSTENTION PURSUANT TO 28**
15                                           )    **U.S.C. 1334(c)(1); MEMORANDUM**
                                             )    **OF POINTS AND AUTHORITIES**
16  _____         )    **IN SUPPORT**
                                             )
17  Affects Pacific Gas and Electric Company )    Date:   April 29, 2020
                                             )    Time:   10:00 AM
18  *All papers shall be filed in the Lease  )    Place:  Hon. Dennis Montali
    Case, No. 19-3008 (DM)                   )            United States Bankruptcy Court
19                                           )            Courtroom 17, 16th Floor
                                             )            450 Golden Gate Ave
20                                           )            San Francisco, CA  94102
                                             )
21                                           )
                                             )
22                                           )
                                             )
23  _____

                           <u>**MOTION**</u>
24
            SARAH PAZDAN ("Pazdan"), creditor of the above-named debtor, moves for an order:
25
        1.  Terminating, annulling, modifying, or conditioning the automatic stay of 11 U.S.C. §
26

27

28

362(a) to allow Pazdan to pursue her claims for Hostile Work Environment Harassment in Violation of Gov. Code §12940(j), Discrimination Based on Sex in Violation of Gov. Code §12940(a), Failure to Prevent Discrimination and Harassment in Violation of Gov. Code §12940(k), Retaliation for Engaging in a Protected Activity in Violation of Gov. Code §12940(h), Retaliation for Engaging in a Protected Activity in Violation of Lab. Code §1102.5, Negligent Hiring, Supervision and/or Retention, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress (the "Claims") against the Pacific Gas and Electric Company ("PG&E");

2. Abstaining pursuant to 28 U.S.C. § 1334(c)(1);

3. Providing that the 14-day stay prescribed by Federal Bankruptcy Rule 4001(a)(3) shall not apply to the Court's order issued pursuant to this motion; and

4. For such other and further relief as this Court deems just and proper pursuant to this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF THE PRINCIPLE ISSUES TO BE DECIDED:

Whether this Court should lift the automatic stay to allow Pazdan to pursue and thereby establish her Claims.

Whether the Court should abstain and let the Claims be pursued in the Superior Court.

### II. STATEMENT OF FACTS

Pazdan was hired by PG&E to work as an Administrative Assistant at its Diablo Canyon Nuclear Power Plant ("Diablo Canyon") in August of 2013. Over the course of her employment, she received accolades and demonstrated an ambitious work ethic, eager to take on new projects. However, she never received a change in title, or a substantial pay raise even when she was given the duties and responsibilities of retired colleagues. In fact, she had to fight to earn authorized overtime pay. Although Pazdan knew she was being treated differently and much less favorably than her largely male counterparts, she did not feel that she could challenge her treatment because doing so would be viewed as "rocking the boat,"

1 and would turn her into a "problem employee."

2 She became acutely aware of her status when a supervisor accidentally included an

3 attachment in an e-mail containing the salary information for Pazdan's peers and herself,

4 revealing that even though she was more qualified than most of her male peers, she made the

5 least amount of money. The attachment confirmed that Pazdan was paid significantly less

6 than her male counterparts with similar, or even fewer, responsibilities.

7 Around Mid-March of 2018, Pazdan co-authored an initial report from employee

8 evaluations. In her report, Pazdan identified safety issues pertaining to the negative behavior

9 of senior leadership personnel during outages, which could "chill the work environment" and

10 "deter employees from raising safety concerns."

11 Upon learning of Pazdan's initial findings, and wanting to avoid the ramifications of

12 any safety related issues coming to light in the operation of a nuclear power plant, two senior

13 managers immediately shutdown the outage assessment, the same assessment upon which

14 Pazdan conducted her employee evaluations. Although the assessment would have allowed

15 PG&E to better understand and mitigate safety risks, senior management were determined not

16 to allow this information to get out. From accounts later provided to Pazdan by colleagues at

17 Diablo Canyon, one manager, Susan Westcott, was particularly determined to learn who had

18 reported the safety risks associated with her "retaliatory" conduct.

19 In April of 2018, Pazdan met with a supervisor to discuss her findings from her

20 employee evaluations. She also raised the issue of unequal pay and the email attachment that

21 she had inadvertently been sent demonstrating that she was not being compensated equally.

22 Pazdan's supervisors treated her markedly differently after that meeting by

23 micromanaging her, arbitrarily changing procedures Pazdan was required to follow, and being

24 investigated by PG&E security.

25 On May 2, 2018, the retaliatory conduct culminated with Pazdan's access

26 authorization to Diablo Canyon being revoked and told not to return to work until further

27 notice. On June 30, 2018, Pazdan wrote a letter to PG&E requesting a formal review of the

28 decision to revoke her access to Diablo Canyon, and a copy of all documents related to the

"investigation" into her conduct. She also requested all of her personnel documents which

1    were required to be provided under the Labor Code. Pazdan subsequently followed up with

2    several letters requesting her personnel documents and information, which went unanswered.

3    Moreover, throughout this process, Pazdan repeatedly provided PG&E with an updated

4    mailing address, which it failed to use.

5            Although Pazdan never received an official termination letter from the PG&E, they

6    claim that she was terminated on July 5, 2018. A final paycheck was purportedly mailed to

7    Plaintiff on July 9, 2018; however, she did not receive it until several weeks later. At no point

8    in time have PG&E DEFENDANTS responded to Plaintiff's inquiries regarding her employee

9    file, the investigation into her conduct, or her termination.

10           On or about January 8, 2019, Pazdan filed a complaint against the PG&E and her

11   supervisors at Diablo Canyon with the California Department of Fair Employment and

12   Housing ("DFEH"), and received an immediate Notice of Right-to-Sue from the DFEH,

      which was served on PG&E and her supervisors.  Pazdan thus exhausted her filing

13   prerequisites and administrative remedies under the Fair Employment and Housing Act

14   ("FEHA"), California Government Code sections 12900, *et seq*.

15           Pursuant to Pazdan's Proofs of Claim, filed in the PG&E bankruptcy on November 11,

16   2019, her claims have an estimated value of $4,000,000.00.  Her claims are unsecured and are

17   not entitled to any priority under the Bankruptcy Code.  For further details regarding Pazdan's

18   Claims, please see the attached complaint Pazdan is prepared to file in the Superior Court

19   immediately upon being granted relief from the stay.  A true and correct copy of Pazdan's

20   proposed complaint is attached hereto as Exhibit "A," and is hereby incorporated.

21   III.    ARGUMENT

22           A.      The Court Should Lift the Stay

23           The Claims involve exclusively questions of California law and only California

24   parties.  It is "an action [that] could not have been commenced in a court of the United States

25   absent jurisdiction under" 28 U.S.C. § 1334(c).  In *In re Castlerock Properties*, 781 F.2d 159

26   (9th Cir. 1986), the Court of Appeal said, "A clear congressional policy exists to give state

27   law claimants a right to have claims heard in state court [citing 28 U.S.C. § 1334(c)]."  Lifting

28   the stay would promote that policy and ensure that Pazdan's Claims are heard by a court with

1  jurisdiction over all the defendants and all the claims, which has great experience in dealing

2  with such claims.

3      A creditor can move for relief from stay under 11 U.S.C. § 362, which provides this

4  Court "shall grant relief from the stay" on a showing of "cause." 11 U.S.C. § 362(d).

5  "Cause" is determined on a case-by-case basis. *In re Tuscon Estates, Inc.*, 912 F.2d 1162,

6  1166 (9th Cir. 1990). In determining whether there is cause to grant relief, courts often

7  consister the factors set out in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984):

8      (1) Whether the relief will result in a partial or complete resolution of the issues;
   (2) The lack of any connection with or interference with the bankruptcy case;
9      (3) Whether the foreign proceeding involves the debtor as a fiduciary;
10     (4) Whether a specialized tribunal has been established to hear the particular cause
   of action and whether that tribunal has the expertise to hear such cases;
11     (5) Whether the debtor's insurance carrier has assumed full financial
   responsibility for defending the litigation;
12     (6) Whether the action essentially involves third parties, and the debtor functions
13     only as a bailee or conduit for the goods or proceeds in question;
   (7) Whether the litigation in another forum would prejudice the interests of other
14     creditors, the creditor's committee and other interested parties;
   (8) Whether the judgment claim arising from the foreign action is subject to
15     equitable subordination;
   (9) Whether the movant's success in the foreign proceeding would result in a
16     judicial lien avoidable by the debtor under Section 522(f);
17     (10) The interests of judicial economy and the expeditious and economical
   determination of litigation for the parties;
18     (11) Whether the foreign proceedings have progressed to the point where the
   parties are prepared for trial, and
19     (12) The impact of the stay and the "balance of hurt."

20

21  40 B.R. at 799-800 (internal citations omitted). See also *In re Plumberex Specialty Prods.,*

22  *Inc.,* 311 B.R. 551, 559 (Bankr.C.D.Cal. 2004) and *In re Tuscon Estates, Inc.*, 912 F.2d at

23  1166-67.

24      Applying the pertinent *Curtis* factors to the Claims shows this Court should grant

25  relief from stay. Lifting the stay would allow the Claims to be heard in a forum that could

26  provide complete resolution of all the issues between Pazdan and defendants. All the

27  defendants are subject to the Superior Court's jurisdiction, while the United States District

28  Court may not be able to exercise jurisdiction over Defendants Susan Westcott, Mark

Frauenheim, and Anna Shatara. There is no real connection between the Claims and this PG&E bankruptcy case. Pazdan's Claims against PG&E are not related to the wild fire claims that forced PG&E into bankruptcy or to any other claim against PG&E. Pazdan's Claims are narrow, limited to one plaintiff, PG&E and three individual defendants relating to workplace violations. It should be noted, that the PG&E debtors were not acting as a fiduciary in regards to Pazdan.

Allowing Pazdan to pursue her Claims in Superior Court would not interfere with the bankruptcy case. Indeed, allowing Pazdan to proceed will only help the bankruptcy case. While the San Francisco County Superior Court is not a "specialized tribunal," the Superior Court certainly has a specialty in hearing workplace labor law cases brought in it that are based on state and local law. The Claims involve only state labor law with which the Superior Court is very experienced. There would be no prejudice to the interests of other creditors, the creditors' committees, or other interested parties. No creditors or parties other than the parties to the Claims have any interest in a lawsuit arising from the Claims. Pazdan only seeks relief from stay to file her complaint in Superior Court so that she may proceed against the other defendants and commence discovery. Lifting the stay would benefit the interests of other creditors because the Superior Court, and not this Court or the District Court, would be burdened with the trial of Pazdan's Claims, allowing this Court to deal with other claims.

The interest of judicial economy supports lifting the stay. See *In re Tuscon Estates, Inc.*, 912 F.2d 1162, 1169 (9th Cir. 1990). Because the Claims involve exclusively questions of state and local law, the Superior Court is better equipped than this Court of the District Court to handle the litigation.

Perhaps the most important factor is "the impact of the stay on the parties and the 'balance of the hurt.'" This Court may have no jurisdiction over the codefendants in a lawsuit arising from the Claims. Forcing Pazdan to proceed separately against PG&E in the District Court and Defendants Susan Westcott, Mark Frauenheim, and Anna Shatara in Superior Court would result in a great injustice to her, as she has already suffered humiliation and loss of earnings as a result of retaliatory actions and unilateral workplace policy decisions that violated state law and de-railed Pazdan's promising career.

The argument may be made that lifting the stay would result in litigation costs to the bankruptcy estate. However, "[o]rdinarily, litigation costs to a bankruptcy estate do not compel a court to stay relief." *In re Santa Clara Cty. Fair Ass'n, Inc*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995). Pazdan is entitled to prosecute her claims. As the bankruptcy court stated in *In re Bock Laundry Machine Company*, 37 B.R. 564 (BC WD OH 1984):

> Requiring the Movants to forego prosecution of their claims until such time as the stay is no longer in effect will effectively deny them an opportunity to be heard. This is especially significant in light of the size and nature of this Chapter 11 case. Removing the stay will not work a significant hardship on the Debtor-In-Possession, inasmuch as it will be made, at some point in the future, to participate in state court. The mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, their opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount.

*Id.* at 567. This Court should lift the stay and abstain from the litigation of Pazdan's claims because her claims can be timely adjudicated in the Superior Court.

   B.    This Court Should Abstain and Leave the Claims with the Superior Court

In addressing whether the Court should abstain from Pazdan's Claims, the Court must first consider whether it has jurisdiction over Pazdan's Claims. The Court has jurisdiction under the "related to" prong of 28 U.S.C. § 1334(b). The second statute to consider is 28 U.S.C. § 1334(c). This section provides for discretionary abstention and mandatory abstention. Because the Claims relate to labor law and discrimination, mandatory abstention pursuant to § 1334(c)(2) is not applicable. *Id.* The Court, though, may in its discretion abstain from hearing Pazdan's Claims pursuant to the discretionary abstention principles set out in § 1334(c)(1). *Id.* Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

In *In re Tucson Estates, Inc.*, 912 F.2d at 1166-67, the Ninth Circuit set out these factors to consider in determining whether to abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the

applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

Applying these factors, first, this Court's abstention would promote the efficient administration of the estate. Abstention would relieve this Court of the burden of the lawsuit Pazdan plans to file in state court immediately upon this court granting her Motion for Relief Stay. Second, the claims only involve state law issues. Third, the law applicable to the Claims may not be difficult for the Superior Court because it is California and San Francisco law, but this court may be unfamiliar with it. Fourth, the Claims will be in a related proceeding commenced in state court. Fifth, there is no jurisdictional basis other than § 1334. Sixth, there is little relationship between the Claims and the main bankruptcy case. Seventh, the Claims (and the anticipated state court lawsuit) are not "core" proceedings. Eighth, it would be feasible to sever the state law claims from the core bankruptcy matters to allow judgment to be entered in the Superior Court with enforcement left to this Court; there are no core matters. Ninth, this Court docket is already overly burdened with all matters PG&E; it would benefit all to leave the Claims to the Superior Court. The tenth factor does not apply; no one contends the Debtors engaged in forum shopping by their bankruptcy filing. The eleventh factor applies in favor of abstention; all the parties to the Claims have a right to a jury trial. The twelfth factor also applies in favor of abstention; there are three non-debtor defendants in Pazdan's proposed lawsuit. Thus, other than the tenth factor the Ninth Circuit factors weigh wholly in favor of abstention.

IV.    CONCLUSION

Pazdan is entitled to prosecute her Claims for discrimination against PG&E. The only feasible forum in which she can do so is in the state Superior Court. This Court should lift the stay, abstain from hearing Pazdan's claims, and allow Pazdan to file a lawsuit in Superior Court and allow that lawsuit to proceed to judgment. Once judgment has been entered,

1   Pazdan can return to this Court to seek enforcement, assuming this bankruptcy case is still

2   pending when the judgment is entered.

3

4

5   Date: March 23, 2020                                    FARMER & READY

6
                                                     By: _____
7
                                                         Paul F. Ready
8                                                        Attorneys for Creditor
                                                         Sarah Pazdan
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

1  Micha Star Liberty (SBN 215687)
   **LIBERTY LAW OFFICE**
2  1970 Broadway, Suite 700
3  Oakland, CA 94612
   Telephone: (510) 645-1000
4  Facsimile: (888) 645-2008
   E-Mail: team@libertylaw.com
5
6  Don A. Ernst (SBN 65726)
   **ERNST LAW GROUP**
7  1020 Palm Street
   San Luis Obispo, CA 93401
8  Telephone: (805) 541-0300
   Facsimile: (805) 541-5168
9  E-Mail: dae@ernstlawgroup.com
10
11 Attorneys for Plaintiff Sarah Pazdan
12
13                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
14                     **COUNTY OF SAN FRANCISCO**

15  SARAH PAZDAN, an individual,            | **CASE NO.**
16              Plaintiff,                  | **COMPLAINT FOR DAMAGES**
                                            | 1. Hostile Work Environment Harassment in
17      v.                                  |    Violation of Gov. Code §12940(j);
                                            | 2. Discrimination Based on Sex in Violation of
18  PG&E CORPORATION, PACIFIC GAS           |    Gov. Code §12940(a);
    AND ELECTRIC COMPANY, PACIFIC           | 3. Failure to Prevent Discrimination and
19  GAS AND ELECTRIC COMPANY                |    Harassment in Violation of Gov. Code
    EMPLOYEES COMMUNITY FUND, PG&E          |    §12940(k);
20  CORPORATION SUPPORT SERVICES,           | 4. Retaliation for Engaging in a Protected
    INC., PG&E NATIONAL ENERGY GROUP,       |    Activity in Violation of Gov. Code §12940(h);
21  LLC, SUSAN WESTCOTT, an individual,     | 5. Retaliation for Engaging in a Protected
    MARK FRAUENHEIM, an individual,         |    Activity in Violation of Lab. Code §1102.5;
22  ANNA SHATARA, an individual, and DOES   | 6. Negligent Hiring, Supervision and/or
    1-50,                                   |    Retention
23                                          | 7. Intentional Infliction of Emotional Distress
24           Defendants.                    | 8. Negligent Infliction of Emotional Distress
25                                          |
26                                          | **DEMAND FOR JURY TRIAL**
27                                          | **[UNLIMITED JURISDICTION]**
28

                                    1
                  COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, SARAH PAZDAN ("PAZDAN"), an individual, who is informed and believes, and thereon alleges as follows:

**PARTIES**

1.      At all times mentioned herein, Plaintiff PAZDAN was an adult woman residing in the State of California. At all material times, PAZDAN was employed by Defendants PG&E CORPORATION, PACIFIC GAS AND ELECTRIC COMPANY, PACIFIC GAS AND ELECTRIC COMPANY EMPLOYEES COMMUNITY FUND, PG&E CORPORATION SUPPORT SERVICES, INC., and PG&E NATIONAL ENERGY GROUP, LLC, (hereinafter collectively referred to as "PG&E DEFENDANTS"), and/or DOES 1 through 25, inclusive.

2.      Plaintiff alleges that at all times mentioned herein, Defendant PG&E CORPORATION, was and is a California Corporation conducting business in the State of California, with its principal place of business in the County of San Francisco.

3.      Plaintiff alleges that at all times mentioned herein, Defendant PACIFIC GAS AND ELECTRIC COMPANY, was and is a California Corporation conducting business in the State of California, with its principal place of business in the County of San Francisco.

4.      Plaintiff alleges that at all times mentioned herein, Defendant PACIFIC GAS AND ELECTRIC COMPANY EMPLOYEES COMMUNITY FUND, was and is a California Corporation conducting business in the State of California, with its principal place of business in the County of San Francisco.

5.      Plaintiff alleges that at all times mentioned herein, Defendant PG&E CORPORATION SUPPORT SERVICES, INC., was and is a California Corporation conducting business in the State of California, with its principal place of business in the County of San Francisco.

6.      Plaintiff alleges that at all times mentioned herein, Defendant PG&E NATIONAL ENERGY GROUP, LLC, was and is a California Limited Liability Company conducting business in the State of California, with its principal place of business in the County of San Francisco.

7.      PG&E DEFENDANTS are a natural gas and electric utility company which owns, operates, manages and controls the Diablo Canyon Nuclear Power Plant ("Diablo Canyon")

2

Case: 19-30088    Doc# 6423    Filed: 03/23/20    Entered: 03/23/20 13:42:42    Page 12 of 34

located in Avila Beach, California. At all material times, PG&E DEFENDANTS' headquarters were located in the County of San Francisco, State of California.

8. At the time of the events giving rise to this lawsuit, Defendant SUSAN WESTCOTT ("WESTCOTT") was employed by PG&E DEFENDANTS in a supervisory capacity at Diablo Canyon. Accordingly, PG&E DEFENDANTS and/or DOES 1 through 25, had authority and/or control over Defendant WESTCOTT.

9. At the time of the events giving rise to this lawsuit, Defendant MARK FRAUENHEIM ("FRAUENHEIM') was employed by PG&E DEFENDANTS in a supervisory capacity at Diablo Canyon. Accordingly, PG&E DEFENDANTS and/or DOES 1 through 25 had authority and/or control over Defendant FRAUENHEIM.

10. At the time of the events giving rise to this lawsuit, Defendant ANNA SHATARA ("SHATARA') was employed by PG&E DEFENDANTS in a supervisory capacity at Diablo Canyon. Accordingly, PG&E DEFENDANTS and/or DOES 1 through 25 had authority and/or control over Defendant SHATARA.

11. Plaintiff alleges that Defendant PG&E DEFENDANTS and/or DOES 1 through 25, at all relevant times herein mentioned, controlled, directed, managed, operated and/or owned Plaintiff PAZDAN'S employing entity. At all relevant times, Defendant PG&E DEFENDANTS and/or DOES 1 through 25 had authority and/or control over PAZDAN, as well as the ability to engage in tangible employment actions impacting her work environment, including but not limited to the hiring, firing, supervising, training, reassigning, compensating and investigating complaints.

12. Plaintiff alleges that DOES 26 through 50 were the employees, agents, officers, and/or directors of PG&E DEFENDANTS and/or DOES 1 through 25 and were acting within the scope of their employment or in an official capacity.

13. Plaintiff alleges that Defendant PG&E DEFENDANTS and/or DOES 1 through 25 are vicariously liable for the actions of their agents, employees, partners, joint ventures, and/or independent contractors.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

14. Plaintiff alleges that during the relevant times referenced herein, each named Defendant and/or Defendant DOES 1 through 50, inclusive, was legally responsible in some manner for the occurrences alleged, and that the injuries as alleged herein, were proximately and legally caused by the acts and/or omissions of such Defendants.

15. Plaintiff further alleges that during the relevant times referenced herein, that each of the Defendants sued herein was the agent, servant, employee, joint venture, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants, and was acting within the purpose, scope, course, and authority of such agency, servitude, employment, joint venture, partnership, division, ownership, subsidiary, alias, assignment, alter-ego, and with the authority, consent, approval and ratification of each remaining Defendant.

16. Plaintiff is ignorant of the true names or capacities, whether individual, corporate, partnership, joint venture, or otherwise of the Defendants sued herein under the fictitious names DOES 1 through 50, inclusive. When the true names and capacities of Defendant DOES 1 through 50 are ascertained, Plaintiff will seek leave to amend this complaint accordingly.

17. Plaintiff alleges that all the corporate Defendants are, and at all times herein mentioned were, corporations doing business in the State of California. Furthermore, all corporate Defendants are, and at all times mentioned herein were, the alter-egos of each and every other Defendant and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between said Defendants such that any separateness between them has ceased to exist in that the Defendants have completely controlled, dominated, managed, and operated the corporate Defendants and have intermingled the assets of each to suit their convenience. Further, the corporate Defendants are, and at all times mentioned herein were, mere shells, instrumentalities and conduits through which Defendants carried out their business in the corporate name while exercising complete control and dominance of the business such that individuality or separateness did not exist.

18. At all times herein mentioned, each Defendant authorized and/or ratified the acts of all employees, agents, servants, representatives, joint/venture's and co-Defendants under their supervision and/or control.

COMPLAINT AND DEMAND FOR JURY TRIAL

Case: 19-30088    Doc# 6423    Filed: 03/23/20    Entered: 03/23/20 13:42:42    Page 14
of 34

## JURISDICTION AND VENUE

19. This Court is the proper court and this action is properly filed in the County of San Francisco, and this judicial district, because (a) PG&E DEFENDANTS and/or DOES 1 through 25, inclusive, base their operations in the County of San Francisco, State of California, and (b) because the obligations and liabilities of all Defendants and/or DOES 1 through 50, inclusive, arise therein.

20. Each of the wrongful acts and omissions alleged herein was performed by Defendants, and each of them, in the State of California.

21. The amount in controversy exceeds the jurisdictional minimum of this Court.

## PLAINTIFF PAZDAN HAS COMPLIED WITH ALL
## ADMINISTRATIVE FILING PREREQUISITES

22. On or about January 8, 2019, Plaintiff PAZDAN filed her Complaint against the PG&E DEFENDANTS and Defendants WESTCOTT, FRAUENHEIM, and SHATARA, with the California Department of Fair Employment and Housing ("DFEH"), and received an immediate Notice of Right-to-Sue from the DFEH, which was served on Defendants. Plaintiffs PAZDAN thus exhausted her filing prerequisites and administrative remedies under the Fair Employment and Housing Act ("FEHA"), California Government Code sections 12900, *et seq*.

## STATEMENT OF FACTS

**A. Plaintiff, a Highly Motivated Young Woman Who Took on Ever Increasing Responsibilities, Was Initially Recognized for Her Efforts by the PG&E DEFENDANTS.**

23. Plaintiff was hired by PG&E DEFENDANTS to work as an Administrative Assistant at its Diablo Canyon Nuclear Power Plant ("Diablo Canyon") in August of 2013. Diablo Canyon was and is a male dominated work force comprised of approximately seventy percent male and thirty percent female employees. Of the female employees, nearly all are in purely administrative roles.

24. At the time of her hire, Plaintiff was tasked with supporting the entire Mechanical Maintenance organization. In November of 2013, only months after beginning her career with

5

Case: 19-30088   Doc# 6423   Filed: 03/23/20   Entered: 03/23/20 13:42:42   Page 15 of 34

1 PG&E, Plaintiff was asked to take on the additional responsibilities of a retiring colleague by

2 supporting the Instrument and Controls organization. Plaintiff accepted the new responsibilities

3 without hesitation, despite the fact that there would be no change in pay or title.

4      25.     After absorbing the responsibilities of her former colleague, Plaintiff supported the

5 efforts of two organizations within PG&E, consisting of approximately 135 employees, and

6 performed her new duties without difficulty.

7      26.     Plaintiff additionally volunteered for leadership project opportunities at Diablo

8 Canyon, including the design of a highly successful employee engagement and retention program

9 that received numerous accolades from senior leaders and management, in addition to being

10 featured in the Diablo Canyon site newsletter and the company-wide periodical.

11      27.     In March of 2015, following the initial success of the employee engagement and

12 retention program, Plaintiff was offered a temporary rotational position with the title of Employee

13 Engagement Specialist. This was a newly created position was a cross-functional role that required

14 collaboration with the leaders of numerous organizations across Diablo Canyon.

15      28.     In March of 2016, Plaintiff was quickly offered a permanent role as a Senior

16 Business Analyst for the Organizational Effectiveness and Strategy group based on the success of

17 the new cross-functional projects that she managed as part of the temporary rotation. Although

18 Plaintiff was keen to take on the new role, she was forced to decline the offer explaining that she

19 could not accept an increase in responsibilities at a lower base pay and without the ability to earn

20 overtime.

21      29.     Because PG&E understood that Plaintiff was uniquely qualified for this new role,

22 Pierre Dube ("Mr. Dube"), the then Senior Manager of Organizational Effectiveness Group,

23 pursued negotiations with Plaintiff which resulted in PG&E offering Plaintiff the role with the

24 eligibility for overtime pay for certain tasks. Plaintiff accepted the amended offer and began her

25 new role as Senior Business Analyst in mid-April of 2015.

26      30.     As anticipated, Plaintiff excelled in her new role receiving performance reviews

27 stating that Plaintiff "exceeds expectations," and earning a $10,000 bonus award in recognition of

28 the value she brought to Diablo Canyon.

**B. Despite Her Outstanding Performance, and Despite Having Taken on Substantial Additional Responsibilities, Plaintiff was Compensated Less than Nearly All of Her Male Counterparts.**

31.     Shortly after Plaintiff accepted the Senior Business Analyst role, PG&E hired Matt Andrews ("Mr. Andrews") to join its Organizational Effectiveness team. Although Mr. Andrews had significantly less experience in organizational effectiveness or employee engagement than Plaintiff, he was given the title "Principal," a title several levels above Plaintiff's, and was compensated with a base pay nearly $50,000 per year more than Plaintiff. Because of her superior knowledge regarding not only operations at Diablo Canyon but also the goals of the Organizational Effectiveness team, Plaintiff was responsible for the onboarding of Mr. Andrews.

32.     By September of 2017, Plaintiff was either leading or involved in so many of projects run by the Organizational Effectiveness group, that Mr. Dube recommended Plaintiff for his replacement as the Senior Manager of the Organizational Effectiveness and Strategy group upon his retirement. At the time of making this recommendation, Plaintiff had the lowest ranking title, and presumably pay, in her organization, despite being a leader with responsibilities exceeding most of her primarily male counterparts.

33.     Although a replacement for Mr. Dube was never named after he retired, Plaintiff effectively took on the majority of his responsibilities. This meant that Plaintiff was again doing the work of someone several titles her senior, without the commensurate title or pay.

34.     In December of 2017 or January of 2018, Plaintiff's group began reporting to Bobby Simpson ("Mr. Simpson"), a newly appointed manager with no prior experience with the Organizational Effectiveness group. In February of 2018, Plaintiff met with Mr. Simpson for her annual performance review. Despite telling Plaintiff, "I think you're doing a great job," Mr. Simpson only gave Plaintiff a review of "meets expectations."

35.     Given the tremendous responsibilities that Plaintiff had absorbed during her tenure at PG&E and in the wake of Mr. Dube's retirement, Plaintiff was confounded by the mediocre review. The review was additionally concerning to Plaintiff because her short-term incentive plan and bonus structure was tied to this review.

36.     When Plaintiff questioned Mr. Simpson about why she should receive a downgrade in performance review, Mr. Simpson brushed Plaintiff off, falsely claiming that Plaintiff did not have a performance review for the previous year in her file. Plaintiff later learned that her performance ranking had been discussed at a leadership meeting in which her additional workload and successes were recognized but were nevertheless ignored when it came to Plaintiff's performance review.

37.     Although Plaintiff knew she was being treated differently and much less favorably than her largely male counterparts, she did not feel that she could challenge the review because doing so would be viewed as "rocking the boat," and would turn her into a "problem employee."

38.     In March of 2018, Plaintiff was in continued conversations with Mr. Simpson regarding her short-term incentive bonus plan and annual raise. It was around this time that Mr. Simpson inadvertently included an attachment in an email to Plaintiff that listed the base salary, bonus structure, and raises for each employee in her group. The attachment confirmed that Plaintiff was one of the lowest paid members of her group, and that she was paid significantly less than her male counterparts with similar, or even fewer, responsibilities.

**C. Due to an Ever-Increasing Workload, Plaintiff Regularly Logged Overtime Hours Which Were Approved on a Weekly Basis by Management.**

39.     In early 2018, Plaintiff was tasked with working on a five-year business operating plan for the Diablo Canyon site, on a cross-functional team with the Director for Nuclear Business and the Senior Manager of Communications. This project was flagged as a "top priority" by senior management and required Plaintiff to log significant overtime, as this project was in addition to the daily responsibilities under Plaintiffs' own role, the responsibilities she had absorbed upon Mr. Dube's retirement, and responsibilities associated with projects that she was running related to outage support and culture evaluations for the Performance Monitoring Committee.

40.     In March of 2018, Plaintiff was selected to participate in a site assessment for Arizona Power & Electric Palo Verde Generation Station in Arizona, because of her cross-functional role working together with the Outage and Performance Monitoring groups. The site assessment required Plaintiff to travel to Arizona from March 18 through March 23.

COMPLAINT AND DEMAND FOR JURY TRIAL

41. Although Plaintiff had originally booked her flight to leave for Arizona late Sunday afternoon, a mandatory briefing scheduled for Sunday, March 18, 2018, required Plaintiff to re-book her flight for earlier in the day in order to attend the briefing. Due to the weekend travel required for this work trip, Plaintiff logged overtime hours, which was approved at the time her compensation was negotiated.

42. Shortly after returning from the Palo Verde assessment, Plaintiff was tasked with evaluating organizational and worker performance during an upcoming refueling outage at Diablo Canyon. The intensive nature of the outage performance evaluations, in addition to Plaintiff's regular workload, again required Plaintiff to put in significant overtime. All of Plaintiff's overtime hours were logged, as was her regular practice since she began working at Diablo Canyon. Additionally, all of Plaintiff's overtime hours were regularly reviewed and approved by management, payroll finance *and* HR for accuracy. Significantly, no concerns were ever raised regarding Plaintiff's overtime hours until her initial report of safety concerns and pay inequities at Diablo Canyon.

**D. Plaintiff was Retaliated Against and Harassed for Reporting Safety Concerns at the Diablo Canyon Nuclear Power Plant and for Raising Concerns About Her Unequal Pay.**

43. Around Mid-March of 2018, Plaintiff co-authored an initial report from her employee evaluations which had been conducted during the refueling outage. In her report, Plaintiff identified safety issues pertaining to the negative behavior of senior leadership personnel during outages, which could "chill the work environment" and "deter employees from raising safety concerns."

44. A number of employees that Plaintiff evaluated as part of the assessment went so far as to call out their direct supervisor, Defendant WESTCOTT, the Director of Organizational Effectiveness and Learning Services, as the "queen of retaliation." Plaintiff included these safety related issues in her initial report.

45. Upon learning of Plaintiff's initial findings, and wanting to avoid the ramifications of any safety related issues coming to light in the operation of a nuclear power plant, senior managers,

Defendant WESTCOTT, and Defendant FRAUENHEIM (Manager of Nuclear Performance
Improvement), immediately shutdown the outage assessment.

46.     Although the assessment would have allowed PG&E to better understand and
mitigate safety risks, Defendants WESTCOTT and FRAUENHEIM were determined not to allow
this information to get out. From accounts later provided to Plaintiff by colleagues at Diablo
Canyon, Defendant WESTCOTT was particularly determined to learn who had reported the safety
risks associated with her "retaliatory" conduct.

47.     In April of 2018, shortly after the outage assessment was shut down and the work
intensive site assessment at Palo Verde had been completed, Plaintiff learned that she would begin
reporting to Defendant SHATARA in the Performance Improvement group, in lieu of Mr. Simpson.
An initial meeting was scheduled with Defendant SHATARA to discuss Plaintiff's role and
responsibilities, which took place at the end of April 2018.

48.     Feeling mounting pressure from her increasing workload and knowing that she was
significantly underpaid, Plaintiff raised the issue of unequal pay with Defendant SHATARA, by
requesting a meeting with her and their manager Defendant FRAUENHEIM. Plaintiff additionally
told Defendant SHATARA about the email attachment that she had inadvertently been sent by Mr.
Simpson demonstrating that she was not being compensated equally, to which Defendant
SHATARA coldly replied, "We'll take care of all that."

49.     Irate that Plaintiff would attempt to go over her head by seeking to involve their
manager, Defendant FRAUENHEIM, in discussions about her unequal pay, Defendant SHATARA
took no steps to schedule a meeting with Defendant FRAUENHEIM.

**i. Plaintiff was Stripped of her Job Responsibilities and was
Micromanaged in Retaliation for Having Raised Safety Concerns and for
Seeking Equal Pay.**

50.     Instead of responding to or addressing Plaintiff's concerns regarding equal pay for
equal work, Defendant SHATARA unilaterally stripped Plaintiff of her cross-functional
responsibilities and instructed Plaintiff not to accept work assignments from other senior
management, which had been a regular part of her role for several years. This directive left Plaintiff
deeply concerned as she was in the midst of working on the five-year business operating plan for

10

1 which a significant amount of work had already been completed.

2     51. Over the next few weeks, Defendant SHATARA began to aggressively micromanage

3 Plaintiff's work and whereabouts. Defendant SHATARA also required Plaintiff to comply with a

4 different set of rules than her other direct reports, which included copying her on all emails sent out,

5 and attending every meeting in which Plaintiff participated. Defendant SHATARA additionally sent

6 out emails to senior leadership at Diablo Canyon stating that all communications with Plaintiff

7 needed to go through her. Despite Defendant SHATARA's retaliatory directives, senior leadership

8 continued to engage with Plaintiff due to her critical role on several major projects.

9         **ii. Plaintiff was Harassed, Subjected to an Unfounded Investigation, and**
        **Falsely Accused of Misstating her Work Hours, in Retaliation for Having**
10         **Raised Safety Concerns and for Seeking Equal Pay.**

11     52. On May 2, 2018, Plaintiff was called into a meeting with Greg Williams ("Mr.

12 Williams"), a Corporate Security Officer for PG&E. In this meeting, Plaintiff was grilled for over

13 an hour about Plaintiff's whereabouts on specific dates during the previous year. When Plaintiff

14 truthfully responded that she could not provide accurate responses without access to her calendar,

15 Mr. Williams accused her of not cooperating, warning her that "he could make [Plaintiff] look

16 really bad." Mr. Williams then informed Plaintiff that he would be conducting an investigation into

17 her conduct.

18     53. On May 4, 2018, Plaintiff's access authorization to Diablo Canyon was revoked and

19 she was asked not to return to work until further notice. Two weeks later, Plaintiff was asked to

20 attend a second meeting with Mr. Williams at an off-site facility. Stunned by the abrupt,

21 antagonistic, and unfounded investigation, Plaintiff requested to record the meeting. In order to

22 prevent Plaintiff from preserving the conversation, Mr. Williams refused. He then proceeded to

23 again accuse Plaintiff of misstating her hours worked, specifically highlighting two instances that

24 Plaintiff was easily able to explain.

25     54. The first instance involved Plaintiff's work trip to Arizona for the Palo Verde site

26 assessment. Mr. Williams asked Plaintiff why her time sheet indicated that she had left for the trip

27 on Sunday morning when her plane ticket was not booked until 4 p.m. Plaintiff truthfully explained

28 that while her original flight was scheduled for the afternoon, she re-booked onto an earlier flight

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    when she learned that she was required to attend a mandatory briefing earlier in the day.

2    55.    Mr. Williams then asked why Plaintiff had failed to attend an assessment meeting on

3    Friday, April 20, 2018. Plaintiff explained that she had not only attended the meeting but had

4    presented at it to the entire group in attendance. Mr. Williams dismissed Plaintiff's explanations,

5    telling her that he did not believe her.

6                  **iii. Plaintiff was Further Harassed by Being Questioned About a Decades**

7                      **Old Traffic Ticket, and was Required to Provide her College Transcripts**
                     **Five Years After Her Hire.**

8    56.    Approximately two weeks later, Plaintiff was called to attend another off-site

9    meeting with Access and Badging. During this meeting, Plaintiff was again asked about non-work-

10    related topics, such as a traffic ticket that she had received ten years before she began working for

11    PG&E. Plaintiff was also asked to provide her college transcripts, which she submitted the

12    following day. When Plaintiff asked why PG&E required her transcripts, she was not provided any

13    response.

14    **E.**      **Plaintiff Was Terminated in Retaliation for Blowing the Whistle on Safety**

15             **Concerns, and for Seeking Pay Equal to that of her Male Counterparts.**

16    57.    At the end of June 2018, and while waiting to hear back from PG&E regarding her

17    access to Diablo Canyon, Plaintiff received a letter from the Pacific Service Employees and

18    Benefits Association regarding her alleged "resignation." Plaintiff was shocked as she had never

19    tendered her resignation. This alerted Plaintiff to the possibility that PG&E was preparing to

20    terminate her employment.

21    58.    On June 30, 2018, Plaintiff wrote a letter to PG&E requesting a formal review of the

22    decision to revoke her access to Diablo Canyon, and a copy of all documents related to the

23    "investigation" into Plaintiff's conduct. She also requested all of her personnel documents which

24    were required to be provided under the Labor Code. Plaintiff has subsequently followed up with

25    several letters requesting her personnel documents and information, which went unanswered.

26    Moreover, throughout this process, Plaintiff repeatedly provided PG&E with an updated mailing

27    address, which it failed to use.

28    59.    Although Plaintiff never received an official termination letter from the PG&E

COMPLAINT AND DEMAND FOR JURY TRIAL

1  DEFENDANTS, they claim that she was terminated on July 5, 2018. A final paycheck was
2  purportedly mailed to Plaintiff on July 9, 2018; however, she did not receive it until several weeks
3  later. At no point in time have PG&E DEFENDANTS responded to Plaintiff's inquiries regarding
4  her employee file, the investigation into her conduct, or her termination.

**FIRST CAUSE OF ACTION**
**Hostile Work Environment Harassment in Violation of**
**Government Code Section 12940(j)**
**(Against PG&E DEFENDANTS, WESTCOTT,**
**FRAUENHEIM, SHATARA and DOES 1-50)**

9  60.  Plaintiff incorporates the allegations contained in the preceding paragraphs as though
10  fully set forth herein.

11  61.  Pursuant to California Government Code section 12940(j), it is an unlawful
12  employment practice for an employer to allow a hostile or abusive work environment to exist by
13  subjecting employees to harassment based on protected characteristics such as sex.

14  62.  At all times relevant to this Complaint, PG&E DEFENDANTS were covered
15  employers subject to the proscriptions of Government Code section 12940(j). (Gov. Code
16  §12926(d).) Plaintiff PAZDAN was PG&E DEFENDANTS' employee.

17  63.  As set forth in this Complaint, PG&E DEFENDANTS, WESTCOTT,
18  FRAUENHEIM, SHATARA and DOES 1-50 subjected Plaintiff to a hostile and/or abusive work
19  environment when Plaintiff was subjected to harassing conduct that was both severe and pervasive.

20  64.  Defendants subjected Plaintiff PAZDAN to a hostile and/or abusive work
21  environment because of her sex.

22  65.  Plaintiff alleges that a reasonable person in her circumstances would have considered
23  the work environment to be hostile and/or abusive, and that Plaintiff found her work environment to
24  be hostile and abusive.

25  66.  At all relevant times, PG&E DEFENDANTS participated in and/or ratified the
26  harassing conduct of its agents, including WESTCOTT, FRAUENHEIM, SHATARA and other
27  PG&E employees.  Because PG&E management participated in and condoned the conduct, PG&E
28  DEFENDANTS knew and/or should have known of the harassing conduct. It is further alleged that

13
**COMPLAINT AND DEMAND FOR JURY TRIAL**

despite having such knowledge, PG&E DEFENDANTS failed to take immediate and appropriate corrective action.

67. Plaintiff PAZDAN alleges that she was harmed by the harassing conduct, and that the harassing conduct described herein was a substantial factor in causing her harm.

68. Further, PG&E DEFENDANTS' participation in and ratification of the harassing and discriminatory conduct was done with malice and/or reckless indifference to Plaintiff's rights and well-being.

69. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

70. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

71. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

72. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's malice and/or reckless indifference toward Plaintiff's rights and well-being Plaintiff has suffered great harm, and accordingly seeks punitive damages, the precise amount of which will be proven at trial.

73. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's conduct, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Government Code Section 12965(b).

Case: 19-30088    Doc# 6423    Filed: 03/23/20    Entered: 03/23/20 13:42:42    Page 24
of 34

## SECOND CAUSE OF ACTION
### Discrimination Based on Sex in Violation of Government Code Section 12940(a)
### (Against PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50)

74. Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

75. Pursuant to California Government Code section 12940(a), it is an unlawful employment practice for an employer to treat an individual employee less favorably than another individual because of their protected status, and as set forth in this Complaint, because of their sex.

76. Plaintiff alleges that at all relevant times, PG&E DEFENDANTS were covered employers whose agents were included within the meaning of employer. (Gov. Code § 12926(d).) Plaintiff additionally alleges that she was employed by PG&E DEFENDANTS.

77. As set forth in this Complaint, PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50 wrongfully discriminated against Plaintiff when their conduct, taken as a whole, materially and adversely affected the terms, conditions and privileges of her employment. Further, PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's conduct impaired Plaintiff's job performance and her prospects for advancement or promotion.

78. Plaintiff alleges that her sex was a substantial motivating factor for the discriminatory conduct, that she was harmed by the discriminatory conduct, and that this conduct was a substantial factor in causing her harm.

79. Additionally, PG&E DEFENDANTS' participation in, and ratification of discriminatory conduct, was done with malice and/or reckless indifference to Plaintiff's rights and well-being.

80. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

81.     As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

82.     As a direct, proximate and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

83.     As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's malice, and/or reckless indifference toward Plaintiff's rights and well-being, Plaintiff has suffered great harm, and accordingly seeks punitive damages, the precise amount of which will be proven at trial.

84.     As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's conduct, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Government Code Section 12965(b).

## THIRD CAUSE OF ACTION
**Failure to Prevent Discrimination, Harassment, and Retaliation
in Violation of Government Code Section 12940(k)
(Against PG&E DEFENDANTS and DOES 1-25)**

85.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

86.     Pursuant to California Government Code section 12940(k), it is an unlawful employment practice for an employer to fail to take reasonable steps to prevent discrimination, harassment, and/or retaliation.

87.     Plaintiff alleges that at all relevant times, PG&E DEFENDANTS was a covered employer whose agents were included within the meaning of employer. (Gov. Code § 12926(d).) Additionally, Plaintiff alleges that they were employed by PG&E DEFENDANTS.

88. As set forth in this Complaint, Plaintiff was subjected to severe and pervasive harassment, discrimination, and retaliation by WESTCOTT, FRAUENHEIM, SHATARA and other employees, including senior management.

89. Despite having knowledge of the harassing, discriminatory, and retaliatory conduct, PG&E DEFENDANTS failed to take all reasonable steps to prevent the harassment, discrimination, and retaliation. Plaintiff further alleges that this failure to take reasonable steps was done with malice and/or reckless indifference to Plaintiff's rights and well-being.

90. Plaintiff was harmed by PG&E DEFENDANTS' unlawful conduct and that PG&E DEFENDANTS' conduct was a substantial factor in causing her harm.

91. As a direct, proximate, and foreseeable result PG&E DEFENDANTS' unlawful conduct, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

92. As a direct, proximate, and foreseeable result of Defendant PG&E DEFENDANTS' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

93. As a direct, proximate and foreseeable result of PG&E DEFENDANTS' unlawful conduct, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

94. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS' malice and/or reckless indifference toward Plaintiff's rights and well-being Plaintiff has suffered great harm and accordingly seeks punitive damages, the precise amount of which will be proven at trial.

95. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS' conduct, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Government Code Section 12965(b).

///
///

Case: 19-30088    Doc# 6423    Filed: 03/23/20    Entered: 03/23/20 13:42:42    Page 27
of 34

## FOURTH CAUSE OF ACTION
### Retaliation for Engaging in a Protected Activity in Violation of
### Government Code section 12940(h)
**(Against PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50)**

96.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

97.     Pursuant to California Government Code section 12940(h), it is an unlawful for an employer to retaliate against a person because that person has opposed, filed a complaint, testified or participated in any proceeding relating to discrimination or harassment that the person believes to be unlawful under this part.

98.     Plaintiff alleges that at all relevant times, PG&E DEFENDANTS were covered employers whose agents were included within the meaning of employer. Gov. Code § 12926(d). Additionally, Plaintiff alleges that she was employed by PG&E DEFENDANTS.

99.     As set forth in this Complaint, Plaintiff was subjected to severe and pervasive harassment, discrimination, and retaliation. In response, Plaintiff's engaged in a protected activity under Government Code section 12940(h), when she objected to the discriminatory gender-based pay differential, and when she brought safety concerns to the attention of the PG&E DEFENDANTS.

100.    The request for equal pay and the report of safety issues made by Plaintiff was a substantial motivating factor in PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's retaliatory conduct which, taken as a whole, materially and adversely affected the terms, conditions, or privileges of her employment.

101.    Plaintiff alleges that she was harmed, and that PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's conduct was a substantial factor in causing her harm.

102.    As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

18

103. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

104. As a direct, proximate and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

105. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's malice and/or reckless indifference toward Plaintiff's rights and well-being, Plaintiff has suffered great harm and, accordingly, seek punitive damages, the precise amount of which will be proven at trial.

106. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's conduct, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Government Code Section 12965(b).

## FIFTH CAUSE OF ACTION
### Retaliation for Engaging in a Protected Activity in Violation of Labor Code Section 1102.5
### (Against PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50)

107. Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

108. At all relevant times, California Labor Code section 1102.5 was in effect and binding on PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50. California Labor Code section 1102.5 prohibits employers and any persons acting on behalf of employers from discharging, constructively discharging, retaliating, or discriminating in any manner against any employee who has disclosed reasonably based suspicions of violations of state or federal statutes to a government agency.

109. Here, Plaintiff reported safety concerns to PG&E DEFENDANTS with the authority to investigate Plaintiff's claims.

110. Discrimination, harassment, and retaliation in the workplace are a violation of state and/or federal statute, rule, or regulation.

111. Plaintiff alleges that her disclosures to PG&E DEFENDANTS were a substantial motivating factor in PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's adverse retaliatory conduct towards her.

112. Additionally, Plaintiff alleges that she was harmed and that PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's conduct was a substantial factor in causing her harm.

113. As a direct, proximate, and foreseeable result of PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

114. As a direct, proximate, and foreseeable result of Defendant PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

115. As a direct, proximate, and foreseeable result of Defendant PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's unlawful conduct, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

116. As a direct, proximate, and foreseeable result of Defendant PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50's malice and/or reckless indifference toward Plaintiff's rights and well-being, Plaintiff has suffered great harm and, accordingly, seeks punitive damages, the precise amount of which will be proven at trial.

///

///

///

COMPLAINT AND DEMAND FOR JURY TRIAL

Case: 19-30088    Doc# 6423    Filed: 03/23/20    Entered: 03/23/20 13:42:42    Page 30 of 34

## SIXTH CAUSE OF ACTION
### Negligent Hiring, Supervision and Retention
### (Against PG&E DEFENDANTS and DOES 1-25)

117.    Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

118.    Plaintiff alleges that she was harmed by Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50 , and PG&E DEFENDANTS and DOES 1-25 are responsible for that harm because PG&E DEFENDANTS negligently hired, supervised, and/or retained Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50.

119.    Plaintiff alleges that PG&E DEFENDANTS hired Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50.

120.    As set forth in this Complaint, Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50 were and/or became unfit to perform the work for which they were hired, when they engaged in discriminatory and  harassing conduct towards Plaintiff.

121.    Plaintiff further alleges that PG&E DEFENDANTS knew, or should have known, that Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50 were and/or became unfit to perform the work for which they were hired. Additionally, that this unfitness created an unreasonable risk of harm to those who worked under Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50, in the course of their employment with PG&E DEFENDANTS .

122.    Plaintiffs allege that Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50's unfitness was the source of significant harm to Plaintiff. Additionally, that PG&E DEFENDANTS' negligence in its hiring, retention, training or supervision of Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50, was a substantial factor in causing Plaintiff's harm.

123.    As a direct, proximate, and foreseeable result of PG&E DEFENDANTS' negligence, Plaintiff has suffered injuries, damages, and losses – including, without limitation, severe emotional distress, humiliation, economic loss, and other consequential damages.

124.    Plaintiff further alleges that prior to the subject incidents, PG&E DEFENDANTS knew or should have known of Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES

26-50 unfitness for their jobs, including the unreasonable risk of harm they posed to their colleagues, vis-à-vis its agents, employees, servants, representatives and/or joint venturers, and yet failed to take adequate steps to protect Plaintiff, from Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50.

## SEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
**(Against PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50)**

125.    Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

126.    Defendants' conduct against Plaintiff, as herein alleged, was intentional and outrageous and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Alternatively, Defendants' actions were conducted with reckless disregard of the probability that Plaintiff would suffer severe distress.

127.    As set forth in this Complaint, Plaintiff was harmed, and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

128.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and had been injured in mind and body, the precise amount of which will be proven at trial.

129.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

130.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

131.    Defendants' behavior as alleged herein was willful, wanton, and malicious and was intended to oppress and cause injury to Plaintiff and as such, Plaintiff is entitled to an award of punitive damages.

///

# EIGHTH CAUSE OF ACTION
## Negligent Infliction of Emotional Distress
### (Against PG&E DEFENDANTS, WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50)

132. Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

133. Plaintiff alleges that PG&E DEFENDANTS and Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 1-50, were negligent as alleged herein.

134. Plaintiff alleges that at all times herein mentioned, Defendants WESTCOTT, FRAUENHEIM, SHATARA and DOES 26-50 were PG&E DEFENDANTS agents, employees, representatives and/or joint venturers.

135. Plaintiff alleges that she suffered serious emotional distress.

136. Plaintiff alleges that Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional distress. Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it.

137. As a direct, proximate, and foreseeable result of Defendants' negligence, Plaintiff has suffered injuries, damages, and losses – including, without limitation, severe emotional distress, humiliation, economic loss, and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants and DOES 1-50, and each of them, on all theories of action as follows:

1. For general damages according to proof;
2. For special damages, including but not limited to medical and incidental expenses according to proof;
3. For loss of past and future earnings and loss of earning capacity according to proof;
4. For punitive damages, as permitted by law;
5. For attorney's fees, as permitted by law;
6. For prejudgment interest as permitted by law;

COMPLAINT AND DEMAND FOR JURY TRIAL

7. For costs of suit herein;

8. For such further relief as the Court deems just and proper.

Dated: January____, 2020

Micha Star Liberty (SBN 215687)
**LIBERTY LAW OFFICE**
1970 Broadway, Suite 700
Oakland, CA 94612
Telephone: (510) 645-1000
Facsimile: (888) 645-2008
E-Mail: team@libertylaw.com

Don Ernst (SBN 65726)
**ERNST LAW GROUP**
1020 Palm St.
San Luis Obispo, CA 93401
Telephone: (805) 541-0300
Facsimile: (805) 541-5168
E-Mail: dae@ernstlawgroup.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all matters so triable.

Dated: January _____, 2020

Micha Star Liberty (SBN 215687)
**LIBERTY LAW OFFICE**
1970 Broadway, Suite 700
Oakland, CA 94612
Telephone: (510) 645-1000
Facsimile: (888) 645-2008
E-Mail: team@libertylaw.com

Don Ernst (SBN 65726)
**ERNST LAW GROUP**
1020 Palm St.
San Luis Obispo, CA 93401
Telephone: (805) 541-0300
Facsimile: (805) 541-5168
E-Mail: dae@ernstlawgroup.com
*Attorneys for Plaintiff*

24

**COMPLAINT AND DEMAND FOR JURY TRIAL**