WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                      **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF LAURIE EDELSTEIN IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(e), FED. R. BANKR. P. 2014(a) AND 2016, AND THE ORDER AUTHORIZING THE DEBTORS TO EMPLOY PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS FOR AUTHORITY TO RETAIN AND EMPLOY STEPTOE & JOHNSON LLP AS SPECIAL COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**<br><br>Date: April 14, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephonic Appearances Only)<br>       United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

Pursuant to 28 U.S.C. § 1746, I, Laurie Edelstein, hereby declare as follows:

1. I am a partner of Steptoe & Johnson LLP, and my office is located at One Market Plaza, Spear Tower, Suite 3900, San Francisco, CA 94105 ("**Steptoe**" or the "**Firm**").

2. I submit this Declaration in connection with the Application, submitted on the date hereof (the "**Application**"),[1] of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for authority to employ and retain Steptoe as their special counsel for certain matters, effective as of January 29, 2019 (the "**Petition Date**"), at its existing agreed-upon hourly rates in effect from time to time and in accordance with its existing reimbursement policies applicable to the Debtors, in compliance with section 327(e) of title 11 of the United States Code (the "**Bankruptcy Code**"), and to provide the disclosure under the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "**Bankruptcy Local Rules**") as applicable to retention under section 327(e) of the Bankruptcy Code. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon Steptoe's completion of further review, or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

3. Except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Steptoe, nor any partner of, counsel to, or associate of the Firm represents any entity other than the Debtors in connection with these Chapter 11 Cases. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Steptoe, nor any partner of, counsel to, or associate of the Firm represents any party in interest with respect to the matters for which Steptoe is to be employed. Additionally, Steptoe does not represent any party other than the Debtors in connection with the Specific Matters (as defined below) that are the subject of the Application.

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms in the Application.

Case: 19-30088    Doc# 6459    Filed: 03/24/20    Entered: 03/24/20 18:43:38    Page 2 of 15

**Background**

4. On February 27, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing the Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [Dkt No. 707] (the "**OCP Order**") authorizing the Debtors to retain and compensate legal services professionals that the Debtors employ in the ordinary course of business (collectively, the "**Ordinary Course Professionals**") subject to the terms of the OCP Order. Steptoe has served as counsel to the Debtors prior to the Petition Date and has continued to serve in such capacity pursuant to the OCP Order. Pursuant to the OCP Order, the Debtors previously filed the *Declaration and Disclosure Statement of Laurie Edelstein Behalf of Steptoe & Johnson LLP* (the "**Prior Edelstein Declaration**"), annexed as Exhibit A-58 to the *Notice of Filing of (I) Ordinary Course Professional Declarations and Retention Questionnaires and (II) List of Additional Ordinary Course Professionals* [Dkt. No 1130].

5. While Steptoe was approved and has been serving as an Ordinary Course Professional in the Chapter 11 Cases, recent developments—particularly in the certain litigation matters—have compelled Steptoe to dedicate significantly more time to its representation of the Debtors. Based on my discussions with the Debtors, the services they have asked, and expect to ask, Steptoe to perform in connection with the Specific Matters will exceed the caps set forth in the OCP Order; accordingly, the Debtors seek approval of Steptoe as special counsel in connection with the Specific Matters pursuant to section 327(e) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, as contemplated by paragraph 2(ix) of the OCP Order. Steptoe continued representation of PG&E in these matters, and specifically in the Ghost Ship Case and the Valero Case (as defined below), is the most efficient and cost-effective path for PG&E.

6. Steptoe has represented and continues to represent and advise PG&E in (i) the pre-petition Ghost Ship fire litigation pending in state court (the "Ghost Ship Case"); (ii) pre-petition litigation pending in federal court arising out of a May 5, 2017 power outage at a refinery owned Valero Refining Company – California (the "Valero Case"); and (iii) several other litigation and pre-litigation matters (together, (i) through (iii), the "Specific Matters"). The Specific Matters are described in more detail below.

### A. The Ghost Ship Case

7. Following the tragic fire at a warehouse in Oakland in December 2016, families of the victims of the fire, as well as survivors, filed suits in the Superior Court for the County of Alameda. Pacific Gas and Electric Company and PG&E Corporation were first named as defendants in the Master Complaint filed on May 16, 2017. Plaintiffs have alleged the following claims against PG&E: (1) negligence; (2) premises liability; (3) negligent hiring, supervision, training, and/or retention; (4) public nuisance; (5) strict liability; (6) survival; and (7) negligent infliction of emotional distress.

8. Currently, there are 53 pending suits involving 78 plaintiffs. The court has related these suits, which are proceeding under the caption, *In re Ghost Ship Fire Litigation*, Lead Case No. RG16843631 (and related cases) (Alameda County Superior Court).

9. The Ghost Ship Case was stayed as to PG&E upon PG&E's filing of these Chapter 11 cases on January 29, 2019. On November 26, 2019, the Plaintiffs' Executive Committee appointed by the Alameda Superior Court in the Ghost Ship Case filed a motion before this Court for relief from the automatic stay. [*See* Docket No. 4875.] A hearing on the motion was held on December 17, 2019. On January 6, 2020, the Court entered the *Order Re: Motion for Relief from Automatic Stay to Permit the Courts of the State of California to Conduct a Jury Trial and Related Pretrial and Post Trial Matters in Connection with the Ghost Ship Fire Cases* [Docket No. 5280].

10. Following the lifting of the stay, the Alameda County Superior Court set a trial date of October 19, 2020 in the Ghost Ship Case. Discovery and pretrial matters are proceeding.

### B. The Valero Case

11. On June 30, 2017, Valero Refining Company – California (Valero) filed a lawsuit against PG&E in the United States District Court for the Eastern District of California seeking $75 million in damages arising out of a May 5, 2017 outage at Valero's Benicia Refinery (the Refinery), *Valero Refining Company – California v. Pac. Gas & Elec. Co.*, No. 17 Civ. 1350 (E.D. Cal.). Valero alleged breach of contract and negligence claims against PG&E.

12. The Valero Case was set for trial on June 3, 2019, but the case was stayed upon PG&E's filing of these Chapter 11 cases on January 29, 2019. On February 5, 2019, Valero filed a motion before this Court for relief from the automatic stay. [*See* Docket No. 315.] On September 5, 2019, Valero and PG&E filed a stipulation agreeing to participate in a mediation. The parties further agreed that if the

mediation failed to result in a settlement of all claims in the federal district court litigation, Valero's motion for relief from stay would be deemed granted without further order of the Court to allow the completion of pretrial proceedings, trial, post-trial motions and any appellate proceedings in or in connection with the federal district court action, effective on November 25, 2019. On September 5, 2019, the Court entered the *Order Approving Stipulation Between Debtor Pacific Gas and Electric Company and Movant Valero Refining Company-California for Limited Relief from the Automatic Stay and Limited Preservation of Jury Trial Rights* [Docket No. 3819].

13. The parties held a mediation on October 22, 2019 that did not result in a settlement of all claims in the federal district court litigation. On November 25, 2019, Valero filed a Notice of Stipulation to Lift Bankruptcy Stay with the federal district court. That same day, the federal district court issued a minute order stating that pursuant to the Notice of Stipulation to Lift Bankruptcy Stay, the stay was lifted and case was reopened. The federal district court ordered the parties to file a Joint Status Report within 30 days.

On December 20, 2020, the parties filed a Supplemental Joint Status Report proposing new pretrial and trial dates and deadlines. On January 14, 2020, the federal district court issued a minute order reinstating Valero's motion for leave to amend its complaint to add a punitive damages claim and stating that the court will issue a written order on that motion. The court ordered the parties to file a second Supplemental Joint Status Report proposing new dates and deadlines within 30 days after the court issues a ruling on the motion to amend. On March 3, 2020, Valero filed a motion to enforce certain deadlines and for depositions. That motion is set to be heard on April 30, 2020.

C. **Other Matters**

14. Steptoe continues to represent PG&E and three current and former employees in an action brought by Tiger Natural Gas, Inc. (Tiger), a core gas transport agent, alleging RICO and federal antitrust claims, among others, arising out of PG&E's billing and collections role, *Tiger Natural Gas, Inc.* v. *Pac. Gas & Elec. Co.*, No. 16 Civ. 6711 (N.D. Cal.). On October 18, 2019, Tiger filed before this Court a motion for relief from stay. [*See* Docket No. 4322.] On January 21, 2020, Tiger and PG&E filed a stipulation with this Court for limited relief from the automatic stay to participate in mediation. [*See* Docket No. 5431]. On January 22, 2020, the Court entered the *Order Approving Stipulation Between*

*Debtor Pacific Gas and Electric Company and Tiger Natural Gas, Inc. for Limited Relief from the Automatic Stay* [Docket No. 5455]. The parties have a scheduled a mediation for May 11, 2020.

15. Steptoe also has been advising PG&E in connection with issues and litigation arising out of the Public Power Safety Shutoffs (PSPS).

16. In addition, Steptoe is representing and advising PG&E regarding a dispute with a customer arising out of a scheduled transmission clearance.

**Scope of Services**

17. As contemplated by the Application, the Debtors seek to engage Steptoe as special counsel to provide professional services in connection with the Specific Matters.

18. As to the Ghost Ship Case, Steptoe's representation of PG&E includes, but is not limited to, overall case management, development of legal strategy, conducting and responding to discovery, appearing and participating at hearings, drafting and responding to motions and briefs, working with experts, preparing PG&E's case for trial, and participating in potential settlement efforts.

19. With respect to the Valero Case, Steptoe's representation includes, but is not limited to, working with experts, completion of discovery, drafting and responding to motions, appearing and participating in hearings, preparing PG&E's case for trial, and participating in potential settlement efforts.

20. With respect to the Other Matters, Steptoe will be preparing for and participating in a mediation with Tiger on May 11, 2020 and in connection with that mediation analyzing Tiger's alleged damages.

21. Steptoe also will continue to provide advice to PG&E in connection with issues and litigation arising out of the Public Power Safety Shutoffs (PSPS) and the dispute with a customer arising out of a scheduled transmission clearance.

22. Steptoe also will perform all other necessary legal services for the Debtors, as related to the above matters, in connection with the Chapter 11 Cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

### Steptoe's Qualifications

23. Steptoe is well-qualified to represent the Debtors on all matters with the scope of the proposed engagement. The Specific Matters for which Steptoe's retention is sought as special counsel in connection are expected to be substantially the same as those performed under the OCP Order, although the scope of such services is expected to increase in connection with the Chapter 11 Cases, necessitating the filing of the Application. The Debtors seek to retain Steptoe in connection with the Specific Matters because of Steptoe's recognized expertise in matters such as the Specific Matters, and extensive experience and knowledge in connection with the Specific Matters themselves as a result of representing the Debtors in connection with such matters before and during the Chapter 11 Cases.

24. Steptoe is exceptionally qualified with respect to litigation matters in general and with litigation involving the energy industry in particular. Steptoe has a long history of success in representing many of the nation's leading energy companies in litigation and regulatory matters. Steptoe's Energy group is widely recognized as one of the nation's premier energy practices. Steptoe has represented clients in many of the most important cases in the electric industry in federal court proceedings and at the Federal Energy Regulatory Commission. Steptoe's commercial litigation lawyers are known for combining their deep understanding of the energy industry and with their litigation skills and have earned a national reputation for successful advocacy in litigation matters.

25. Further, as noted above, Steptoe already has extensive experience advising and representing the Debtors on the various pending litigation matters. In addition, prior to the Petition Date, Steptoe represented the Debtors in a number of matters, acquiring considerable knowledge of Debtors' business and operations. Accordingly, Steptoe is both well qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

26. Accordingly, I believe that Steptoe is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

### Terms of Steptoe's Engagement

27. The terms of Steptoe's current representations of the Debtors in the above-referenced matters are set forth in the Master Services Agreement between PG&E and Steptoe, dated January 16, 2018, as modified by a Letter Agreement between PG&E and Steptoe, dated January 16, 2018, and as

further amended by an Addendum, dated November 12, 2019, and an Addendum to a Retention Letter, dated December 26, 2019 (collectively, the "Engagement Agreement"). A copy of the Engagement Agreement is attached as **Exhibit A**.

**Coordination With the Debtors' Other Professionals**

28. Steptoe is aware that the Debtors have retained other law firms in connection with the Chapter 11 Cases, including in connection with various civil litigation matters. Steptoe has been coordinating and will continue to coordinate closely with the Debtors and their other retained professionals to delineate the scope of services and avoid duplication of services wherever reasonably possible.

**Compensation and Fee Applications**

29. Prior to the filing of this Application, Steptoe was compensated pursuant to the OCP Order. Pursuant to the OCP Order, between the Petition Date and the date hereof, Steptoe has been paid in the amount of $140,809.56 on account of its post-petition fees and expenses. Currently, Steptoe is owed approximately $606,913.63 in fees and expense on account of its post-petition services as an ordinary course professional for the Debtors for the months of October 2019 through January 2020.

30. Subject to Court approval of this Application, Steptoe intends to apply for compensation for professional services rendered on an hourly basis and the reimbursement of reasonable expenses. The hourly rates and corresponding rate structure Steptoe will apply reflect Steptoe's negotiated hourly rates with respect to the Debtors' engagement of Steptoe in connection with the Specific Matters. These rates are consistent with the rates charged by Steptoe under the OCP Order and are not varied based on whether a fee application is required.

31. In accordance with the OCP Order, following entry of the order approving the Application (or, in accordance with the OCP Order, for any prior period to the extent Steptoe's fees and expenses will exceed the applicable caps set forth in the OCP Order), Steptoe will seek allowance of its fees and reimbursement of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, effective February 19, 2014, and the United States Trustee Guidelines Region 17, updated December 16, 2016 (the "**Local**

Guidelines"), the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**"), the OCP Orders, and any additional further Order of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**"). Steptoe will seek allowance of all fees and expenses for the period beginning February 1, 2020. Fees attributable to the period after December 31, 2019, will be charged at Steptoe's 2020 hourly rates.[2]

32. Steptoe and the Debtors have not agreed to any variations from, or alternatives to, Steptoe's standard billing arrangements negotiated with the Debtors and also used under the OCP Order. As discussed in more detail below, Steptoe rates are subject to periodic change in the ordinary course of business. The Steptoe 2020 hourly rates for the attorneys presently working on the engagement range as follows:

| **Billing Category** | **Range** |
|---|---|
| Partners | $775 to $925 |
| Counsel | $625 |
| Associates | $450 to $615 |
| Paraprofessionals | $250 |

33. The Steptoe hourly rates are set at a level designed to compensate Steptoe fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[3] In addition, the Engagement Agreement attached as Exhibit A sets forth certain volume discounts.

---

[2] Steptoe's 2020 rates are subject to customary rate adjustment to be negotiated and agreed to by the Debtors and Steptoe in a manner consistent with past practice.

[3] Like many other law firms, Steptoe typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (i) ordinary course step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "**Step Increase**"), and (ii) periodic (generally yearly) rate increases with respect to each level of seniority (a "**Rate Increase**"). The Step Increases do not constitute "rate increases" (as the term is used in the U.S. Trustee Guidelines). The proposed order provides that Steptoe will provide reasonable advance notice to the Debtors and the U.S. Trustee of any Rate Increase.

34. Steptoe will maintain detailed, contemporaneous time records in six-minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, the Fee Guidelines, and the Orders. Steptoe timekeepers will record time using billing categories that substantially conform to those categories set forth at section 8(b) of the U.S. Trustee Guidelines, and will record the amount of time per task within each billing category. Furthermore, Steptoe will maintain records of expenses incurred and itemize those expenses as well as summarize them by expense categories established as part of Steptoe's customary billing procedures.

35. Steptoe's policy is to charge its clients in all areas of practice for out-of-pocket expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, mail and express mail, special or hand delivery, messengers, photocopying, scanning and/or printing, computerized research fees (which shall not be more than the actual cost Steptoe incurs), travel expenses, "working meals," transcription, as well as non-ordinary overhead expenses such as secretarial and other overtime. For disbursements over $1,500, we may request specific payment arrangements or that advances be provided. Our personnel bill for travel time, but if they work on another matter while traveling for the Debtors, the Debtors will not be billed for that time.

36. Steptoe will charge for these expenses in a manner and at rates consistent with charges made generally to its other clients, in accordance with the terms and conditions set forth in the Engagement Agreement, and in compliance with all applicable rules, procedures and orders of the Court.

37. Steptoe understands that interim and final fee awards are subject to approval by this Court.

**Steptoe's Prepetition Claims**

38. On September 5, 2019, Steptoe filed a proof of claim related a pre-petition claim held against the Utility in the amount of $81,268.85.

**No Interest Adverse to the Debtors With Respect to the Specific Matters**

39. Steptoe maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client

Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the Steptoe personnel who are or were responsible for current or former matters for such clients. The Client Database also includes the name of former clients of Steptoe attorneys while such attorneys were at a prior firm. Steptoe's policy is that no new matter may be accepted or opened within Steptoe without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by Steptoe. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

40. In connection with the Debtors' proposed retention of Steptoe, the Firm undertook to determine whether it has any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtors or their estates with respect to the Specific Matters. To do so, Steptoe searched the names of each Debtor to determine whether it represented any party adverse to the Debtors. To the best of my knowledge, there are no matters in which Steptoe personnel are currently representing parties adverse (or potentially adverse) to the Debtors.

41. Steptoe may have previously represented parties adverse to the Debtors in matters unrelated to the Chapter 11 Cases, which, to the best of my knowledge, after due inquiry, are no longer active or have concluded.

42. In addition, on December 20, 2020, counsel for the Debtors provided Steptoe with a list of creditors of the Debtors and other persons and entities who potentially have an interest in the Chapter 11 Cases (collectively, the "**Interested Parties List**"). The Interested Parties List may change during the pendency of these Chapter 11 Cases without our knowledge. Steptoe will update this Declaration as necessary when new names of parties in interest are made available.

43. To the extent I have been able to ascertain based on the search of the Client Database and reasonable inquiry, **Schedule 1** to this Declaration identifies those Interested Parties, or affiliates, that are or have been Steptoe clients within the immediately prior two years. None of the representations listed on **Schedule 1** or described below is materially adverse to the interests of the Debtors or their

estates with respect to the Specific Matters, and all prior and current Steptoe representations of the clients, former clients, or their affiliates and/or subsidiaries are or have been in matters unrelated to the Specific Matters.

44. To the best of my knowledge, after due inquiry, none of the representations identified in **Schedule 1** is related to the Specific Matters for which the Debtors seek to engage Steptoe pursuant to the Application.

45. In addition, as part of its intake process in connection with each of the Specific Matters and again in connection with this Application, Steptoe performed a conflicts search regarding the names of adversaries in the Specific Matters. To the best of my knowledge, after due inquiry, Steptoe does not represent any adversary of the Debtors in the Specific Matters.

46. Accordingly, to the best of my knowledge, after due inquiry, Steptoe does not represent or hold any interest adverse to the Debtors or their estates with respect to the Specific Matters.

47. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to the Chapter 11 Cases, for persons that are creditors or other parties in interest in the Debtors' Chapter 11 Cases. As part of Steptoe's customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these Chapter 11 Cases. The Firm does not perform services for any such person in connection with these Chapter 11 Cases. The Firm does not have any relationship with any person, or such person's attorneys, or such person's accountants that would be adverse to the Debtors or their estates with respect to the Specific Matters. From time to time, Steptoe has referred work to other professionals retained or to be retained in these Chapter 11 Cases, and certain such professionals have referred work to Steptoe. Also, as part of its practice, Steptoe appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in this case. Except as disclosed in the Application, Steptoe does not represent any such parties in relation to the Debtors or these Chapter 11 Cases, and will not do so in the future without the Debtors' consent. Steptoe does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their

estates in connection with the Specific Matters.

48. Steptoe may currently represent or formerly may have represented certain of the Debtors' other professionals in matters unrelated to the Debtor and these Chapter 11 Cases. I do not believe that Steptoe's past or current representation of these other professionals in matters unrelated to the Debtors or these Chapter 11 Cases creates any interest materially adverse to the Debtors with respect to the Specific Matters.

49. Certain insurance companies pay the legal bills of Steptoe clients. Some of these insurance companies may be involved in these Chapter 11 Cases. None of these insurance companies, however, is a Steptoe client as a result of the fact that it pays legal fees on behalf of a client of Steptoe.

50. From time to time, Steptoe partners, counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds, through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without the knowledge of Steptoe. To the extent that Steptoe partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, Steptoe has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work. In this regard, all Steptoe attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

51. Based on the inquiry above, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, I can attest that Steptoe neither holds nor represents an interest adverse to the Debtors or their estates with respect to the Specific Matters. Steptoe will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Steptoe will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**Attorney Statement Pursuant to U.S. Trustee Guidelines**

The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Fee Guidelines.

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? **Response**: Yes. The rates in the Engagement Agreement, attached as Exhibit A, were specifically negotiated with the Debtors and are significantly lower than Steptoe's standard hourly rates.

**Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? **Response**: No.

**Question**: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. **Response**: Steptoe represented the Debtors in connection with the Specific Matters prior to the Petition Date. The applicable rates for 2018 for the individuals working on the Specific Matters are set forth in the Engagement Agreement, attached as Exhibit A. Hourly rates for partners ranged from $625 to $795; $525 for counsel; $395 to $515 for associates; and $225 for paraprofessionals. The 2018 rates were negotiated as part of the Debtors' competitive Request for Proposal solicitation process, with an agreement that the 2018 rates would remain in place for 2019 without any increases. At the end of 2019, Steptoe negotiated increases in its billing rates for 2020 because of expiration of the two-year rate agreement. The 2020 hourly rates for lawyers presently working on the engagement are $775 to $925 for partners; $625 for counsel; $450 to $615 for associates; and $250 for paraprofessionals. The increase in hourly rates reflects changes in economic conditions and other factors. The 2020 hourly rates negotiated with Debtors remain significantly lower than Steptoe's standard hourly rates.

**Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period? **Response**: Steptoe has submitted budget and staffing plans for its work relating to the Ghost Ship Case and the Valero Case, which are under review.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this declaration was executed at San Francisco, California on this 24th day of March, 2020.

                                            */s/ Laurie Edelstein*
                                            Laurie Edelstein