WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors,**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF DAVID B. GOODWIN IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(e), FED. R. BANKR. P. 2014(a) AND 2016, AND THE ORDER AUTHORIZING THE DEBTORS TO EMPLOY PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS FOR AUTHORITY TO RETAIN AND EMPLOY COVINGTON & BURLING LLP AS SPECIAL COUNSEL FOR THE DEBTORS EFFECTIVE JANUARY 1, 2020**<br><br>Date: April 14, 2020<br>Time: 10:00 a.m.<br>Place: (Telephonic Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Pursuant to 28 U.S.C. § 1746, I, David B. Goodwin, hereby declare as follows:

1. I am a partner of Covington & Burling LLP, and my office is located at 415 Mission Street, Suite 5400, San Francisco, CA 94105 ("**Covington**" or the "**Firm**").

2. I submit this Declaration in connection with the Application, to be submitted on the date hereof (the "**Application**"),[1] of PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"),[2] for authority to employ and retain Covington as their special counsel for certain matters, effective as of January 1, 2020, at its existing agreed upon hourly rates in effect from time to time and in accordance with its existing reimbursement policies applicable to the Debtors, in compliance with section 327(e) of the **Bankruptcy Code**, and to provide the disclosure under the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "**Bankruptcy Local Rules**") as applicable to retention under section 327(e) of the Bankruptcy Code. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon Covington's completion of further review, or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

3. Except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Covington, nor any partner of, counsel to, or associate of the Firm currently represents any entity other than the Debtors in connection with these Chapter 11 Cases. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Covington, nor any partner of, counsel to, or associate of the Firm represents any party in interest with respect to the matters for which Covington is to be employed. Additionally, Covington does not represent any party other than the Debtors in

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms in the Application.

[2] On January 29, 2019 (the "Petition Date"), the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

connection with the Specific Matters (as defined below) that are the subject of the Application.

**Background**

4.   On February 27, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing the Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [Dkt No. 707] (the "**OCP Order**") authorizing the Debtors to retain and compensate legal services professionals that the Debtors employ in the ordinary course of business (collectively, the "**Ordinary Course Professionals**") subject to the terms of the OCP Order. Covington has served as counsel to the Debtors since January 1, 2020 and has continued to serve in such capacity pursuant to the OCP Order. Pursuant to the OCP Order, on January 9, 2020, the Debtors previously filed the *Declaration and Disclosure Statement of David B. Goodwin, on Behalf of Covington & Burling LLP* (the "**Prior Goodwin Declaration**") and *Retention Questionnaire*, annexed as Exhibit A to the *Notice of Filing of Third List of Additional Ordinary Course Professionals* [Dkt. No. 5316].

5.   While Covington was approved and has been serving as an Ordinary Course Professional in the Chapter 11 Cases, recent developments—particularly in the insurance recovery work regarding the underlying derivative and securities class actions—have compelled Covington to dedicate significantly more time to its representation of the Debtors than initially anticipated. Based on my discussions with the Debtors, the services they have asked, and expect to ask, Covington to perform in connection with the Specific Matters will exceed the caps set forth in the OCP Order; accordingly, the Debtors seek approval of Covington as special counsel in connection with the Specific Matters pursuant to section 327(e) of the Bankruptcy Code, *nunc pro tunc* to January 1, 2020, as contemplated by paragraph 2(ix) of the OCP Order. Covington intends to apply for all compensation and reimbursement and for all additional expenses incurred after January 1, 2020 pursuant to the procedures approved by the Court in the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered on February 27, 2019 [Dkt. No. 701]. Covington's continued representation of PG&E in these matters, and specifically in the insurance recovery efforts in the matters defined below, is the most efficient and cost-effective path for PG&E.

6.   Covington currently represents and/or advises PG&E in insurance counseling related to

(i) two securities class actions, one filed pre-petition and one filed post-petition; (ii) six pre-petition derivative actions pending in federal and state court related to the 2017 and 2018 Northern California wildfires; (iii) various books and records demands to the Company related to the above; (iv) activities related to the settlement of the securities actions and derivative actions, including issues stemming from the settlement of a derivative action in connection with the San Bruno accident; and (v) the Company's current and proposed renewal D&O liability insurance programs (together, (i) through (v), the "**Specific Matters**"). The Specific Matters are described in more detail below.

### A. The Securities Class Actions

#### 1. The Pre-Petition Securities Class Action

7. On September 10, 2018, the District Court for the Northern District of California entered an order appointing plaintiff Public Employees Retirement Association of New Mexico ("**PERA**") as lead plaintiff in a securities class action initially filed in June 2018 styled *In re PG&E Corporation Securities Litigation* (No. 18-cv-359, N.D. Cal.) (the "**Pre-Petition Securities Class Action**"). *See In re PG&E Corporation Securities Litigation* (Case No. 18-CV-359, N.D. Cal.), Dkt. No. 62. On November 9, 2018, PERA filed its consolidated class action complaint on behalf of a putative class of current and former PG&E shareholders, alleging that 13 representations made by certain of PG&E's officers regarding PG&E's fire safety practices were false and constituted violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 promulgated thereunder. *Id.*, Dkt. No. 83. PERA alleged that the falsity of those statements was revealed by the 2017 and 2018 Northern California wildfires (the "**North Bay Fires**") and the ensuing investigations. PERA alleged a class period from April 29, 2015 through June 8, 2018. On December 14, 2018, PERA amended its complaint to include allegations related to the 2018 Northern California wildfire that started in Camp Creek Road (the "**Camp Fire**"). The second amended complaint alleged 19 misrepresentations regarding PG&E's fire safety practices, and alleged the same class period and violations of the Exchange Act.

8. On February 22, 2019, after the Debtors filed the bankruptcy petitions, a new securities class action was filed by plaintiffs York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System and Mid-Jersey Trucking Industry & Local No. 701

Pension Fund (the "**Noteholder Plaintiffs**"). *See York County, et al. v. Rambo, et al*. (Case No. 19-cv-994, N.D. Cal.), Dkt. No. 1. The Noteholder Plaintiffs alleged that they purchased senior notes issued by the Utility on alleged misrepresentations by underwriters and certain of PG&E's current and former officers and directors. The Noteholder Plaintiffs alleged violations of Sections 11 and 15 of the Securities Act of 1933.

9. On May 28, 2019, PERA and the Noteholder Plaintiffs (together, the "**Securities Plaintiffs**") filed the Third Amended Complaint (the "**TAC**"). The TAC combines the allegations from the two securities class actions and asserts putative classes of both equityholders and noteholders. *See In re PG&E Corporation Securities Litigation* (Case No. 18-CV-359, N.D. Cal.), Dkt. No. 121. The TAC names PG&E and certain current and former directors and officers as defendants.

10. On October 21, 2019 (the bar date), the Securities Plaintiffs filed proofs of claim against both Debtors in the Chapter 11 Cases. On December 9, 2019, nearly two months after the Securities Plaintiffs filed their proofs of claim, the Securities Plaintiffs filed a motion requesting (1) that the Court apply Bankruptcy Rule 7023 to their proofs of claim, and (2) that the Court enter an order establishing a briefing schedule for the Securities Plaintiffs' motion to certify the putative classes asserted in the TAC. *See* Dkt. No. 5042.

### 2. The Post-Petition Securities Class Action

11. On October 25, 2019, a purported PG&E shareholder filed a securities class action alleging that certain of PG&E's officers had made pre- and post-petition misrepresentations regarding PG&E's wildfire prevention and safety protocols related to rolling power cuts that PG&E implemented to minimize wildfire risk. *Vataj v. Johnson, et al.* (Case No. 19-cv-6996, N.D. Cal.), Dkt. No. 1. The plaintiff asserts a class period from December 11, 2018 through October 11, 2019, and allege violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

### B. The Pending Derivative Actions

12. PG&E has been named as a nominal defendant in six pre-petition derivative actions (the "**Derivative Actions**"). The three pending federal derivative actions are styled *Oklahoma Firefighters Pension & Retirement System v. Chew et al.* (No. 18-cv-04698, N.D. Cal.), *Williams v. Earley et al.* (No. 18-cv-7128, N.D. Cal.), and *Blackburn v. Meserve et al.* (No. 19-cv-00501, N.D. Cal.). The three

pending state derivative actions are styled *In re California North Bay Fire Derivative Litigation* (No. CGC-17-562591), *Bowlinger v. Chew et al.* (No. CGC-18-572326), and *Hagberg v. Chew et al.* (No. CGC-19-573190). The plaintiffs in the Derivative Actions allege that certain current and former officers and directors failed to implement fire safety measures in advance of the North Bay Fires and/or the Camp Fire. Although plaintiff in the *Bowlinger* action argued that the automatic stay should not extend to the individual defendants, on April 30, 2019, this Court entered an order granting the Debtors' motion enjoin plaintiff from proceeding against the individual defendants. Dkt. No. 1770.

13. Various books and records demands also were served on Debtors in connection with the events at issue in the North Bay Fires derivative actions or the Camp Fire derivative actions.

14. Covington has been assisting PG&E in its efforts to settle the securities and derivative actions described above. To that end, Covington has attended mediations, spoken with the mediators, counsel for the plaintiffs, defense counsel, and representatives of the insurers, has analyzed insurance coverage issues, and has communicated with the insurers regarding insurance coverage and settlement issues.

### C. The San Bruno Derivative Action

15. Covington has advised PG&E in connection with its insurance recovery efforts relating to the settlement of the San Bruno Fire Derivative Cases (Case No. JCCP 4648-C).

### D. Insurance Renewal Advice

16. Covington has advised PG&E in connection with the extension and/or renewal of its director and officer liability insurance program.

### Scope of Services

17. As contemplated by the Application, the Debtors seek to engage Covington as special counsel to provide professional services in connection with the Specific Matters.

18. As to the Pre-Petition Securities Class Action, the Pending Derivative Actions, and the San Bruno Derivative Action, Covington has been assisting with potential settlement efforts regarding the pending securities class actions, which has required and will continue to require a significant amount of work coordinating and negotiating with the various interested parties, including counsel for the various plaintiffs, the current and former officer defendants, the current and former director defendants,

the underwriter defendants, and the insurance carriers whose coverage may be applicable to any award or settlement related to those actions. In connection with these potential settlement and insurance recovery efforts, Covington has been analyzing the merits of the securities claims; conferring with experts and analyzing insurance issues arising from possible exposure of the securities claims; and advising PG&E in all respects related to the insurance recovery for the underlying securities class actions. Covington expects to continue those efforts going forward. In addition, Covington has been advising PG&E with respect to its pending and proposed renewal director and officer liability insurance program.

19. Covington will also provide all other necessary legal services for the Debtors, as related to the above matters, in connection with the above-captioned Chapter 11 Cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

**Covington's Qualifications**

20. Covington is well-qualified to represent the Debtors on all matters with the scope of the proposed engagement. The Specific Matters for which Covington's retention is sought as special counsel in connection are expected to be substantially the same as those performed under the OCP Order, although the scope of such services is expected to increase in connection with the Chapter 11 Cases, necessitating the filing of the Application. The Debtors seek to retain Covington as retained counsel in connection with the Specific Matters because of Covington's recognized expertise in matters such as the Specific Matters, and extensive experience and knowledge in connection with the Specific Matters themselves as a result of representing the Debtors in connection with such matters during the Chapter 11 Cases.

21. Covington is highly-qualified with respect to insurance recovery matters. Covington's insurance recovery practice has been recognized as a top-tier policyholder-side practice by legal rating services.

22. Further, as noted above, Covington already has extensive experience advising and representing the Debtors on the various insurance recovery matters relating to the pending litigation and environmental law matters.

23. Accordingly, I believe that Covington is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

**Terms of Covington's Engagement**

24. The terms of Covington's current representation of the Debtors in the above-referenced matters are set forth herein.

**Coordination With the Debtors' Other Professionals**

25. Covington is aware that the Debtors have retained other law firms in connection with the Chapter 11 Cases, including in connection with various civil litigation matters. Covington has been coordinating and will continue to coordinate closely with the Debtors and their other retained professionals to delineate the scope of services and avoid duplication of services wherever reasonably possible.

**Compensation and Fee Applications**

26. Prior to the filing of the Application, Covington has submitted invoices pursuant to the OCP Order but has not yet been paid for those invoices. Currently, Covington is owed approximately $3,008.50 on account of its post-petition services as an ordinary course professional for the Debtors for the month of December 2019 and $138,425.00 on account of its post-petition services as an ordinary course professional for the Debtors for the month of January 2020. Covington also incurred $141,816.11 in fees and expenses for the month of February 2020, which have not yet been billed.

27. Subject to Court approval of the Application, Covington intends to apply for compensation for professional services rendered on an hourly basis and the reimbursement of reasonable expenses. The hourly rates and corresponding rate structure Covington will apply reflect Covington's negotiated hourly rates with respect to the Debtors' engagement of Covington in connection with the Specific Matters. These rates are consistent with the rates charged by Covington under the OCP Order and are not varied based on whether a fee application is required.

28. In accordance with the OCP Order, following entry of the order approving the

Application (or, in accordance with the OCP Order, for any prior period to the extent Covington's fees and expenses exceeded the applicable caps set forth in the OCP Order), Covington will seek allowance of its fees and reimbursement of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, effective February 19, 2014, and the United States Trustee Guidelines Region 17, updated December 16, 2016 (the "**Local Guidelines**"), the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**"), the OCP Orders, and any additional or further Order of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "Orders"). Covington will seek allowance of its fees and reimbursement of its expenses incurred after January 1, 2020.[3]

29. Covington and the Debtors have not agreed to any variations from, or alternatives to, Covington's standard billing arrangements negotiated with the Debtors and also used under the OCP Order. As discussed in more detail below, Covington rates are subject to periodic change in the ordinary course of business. The Covington 2020 hourly rates for the attorneys presently working on the engagement range as follows:

| Billing Category | Range |
|---|---|
| Partners | $870 to $1,270 |
| Associates | $480 to $860 |
| Paraprofessionals | $340 to $525 |

30. The Covington hourly rates are set at a level designed to compensate Covington fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates

---

[3] As further discussed below, Covington's 2020 rates are subject to customary rate adjustment to be negotiated and agreed to by the Debtors and Covington in a manner consistent with past practice.

vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[4]

31. Covington will maintain detailed, contemporaneous time records in six-minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, the Fee Guidelines, and the Orders. Covington timekeepers will record time using billing categories that substantially conform to those categories set forth at section 8(b) of the U.S. Trustee Guidelines, and will record the amount of time per task within each billing category. Furthermore, Covington will maintain records of expenses incurred and itemize those expenses as well as summarize them by expense categories established as part of Covington's customary billing procedures. These will include such items as photocopying and scanning documents ($0.20 per page); at-cost expense for large-volume print jobs over 100 pages when formatted in Word or Adobe Acrobat applications; long-distance and roaming mobile phone charges; use of fee-based research databases; couriers and air freight; messengers; client-specific work by staff; staff overtime meals (as defined by federal or local law); transportation (where dictated by safety reasons, and which may include a transaction fee); word processing; postage, at cost; supplies (for large volume only); and other reasonable costs and expenses. For disbursements over $1,500, we may request specific payment arrangements or that advances be provided. In addition, when Covington personnel travel, Covington generally utilizes business class for international flights. Through a third-party travel management company, in-house travel services are provided for our U.S. offices. A ticketing fee of $37 will be charged. Our personnel bill for travel time, but if they work on another matter while traveling for the Debtors, the Debtors will not be billed for that time. Covington will charge the Debtors for these

---

[4] Like many other law firms, Covington typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (i) ordinary course step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "**Step Increase**"), and (ii) periodic (generally yearly) rate increases with respect to each level of seniority (a "**Rate Increase**"). The Step Increases do not constitute "rate increases" (as the term is used in the U.S. Trustee Guidelines). As noted above, Covington's 2020 rates are subject to customary Rate Increases to be negotiated and agreed to by the Debtors and Covington in a manner consistent with past practice. Covington shall provide notice to the U.S. Trustee in the event that Covington's 2020 rates increase and those rates are agreed upon by Covington and the Debtors.

expenses in compliance with all applicable rules, procedures and orders of the Court. Covington understands that interim and final fee awards are subject to approval by this Court.

**No Interest Adverse to the Debtors With Respect to the Specific Matters**

32. Covington maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "Client Database"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the Covington personnel who are or were responsible for current or former matters for such clients. The Client Database also includes names of former clients of Covington attorneys while such attorneys were at a prior firm. Covington's policy is that no new matter may be accepted or opened within Covington without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by Covington. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

33. In connection with the Debtors' proposed retention of Covington, the Firm undertook to determine whether it has any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtors or their estates with respect to the Specific Matters. To do so, Covington searched the names of each Debtor to determine whether it represented any party adverse to the Debtors. The matters, which are not substantially related to the Specific Matters and in which Covington personnel are currently representing parties adverse (or potentially adverse) to the Debtors, with the Debtors' consent, are as follows:

1. San Diego Gas & Electric, in connection with negotiating and advising on California refund issues and settlement;

2. Calpine Corporation, in connection with advising on federal regulatory issues, as well as implications for agreements with Western Area Power Administration; and

3. Procter & Gamble Company, in connection with conducting an in-depth review and assessment of the company's SEC disclosures.

34. Further, Covington may have previously represented parties adverse to the Debtors in matters unrelated to the Chapter 11 Cases, which, to the best of my knowledge, after due inquiry, are no longer active or have concluded. In addition, Richard Meserve, a Senior Counsel at Covington, is a former member of Debtors' board of directors and a defendant in certain of the derivative actions. Furthermore, Covington has represented investors in subrogation rights against PG&E, including The Baupost Group LLC and Elliott Management, in matters adverse to various insurers or third parties. Finally, William Massey, a Senior Counsel at Covington, provided an expert declaration on behalf of ConEd Development, NextEra, and Calpine.

35. To the best of my knowledge, after due inquiry, none of the matters set forth above is related to the Specific Matters for which the Debtors seek to engage Covington pursuant to the Application.

36. In addition to the foregoing, as part of its intake process in connection with each of the Specific Matters and again in connection with the Application, Covington performed a conflicts search regarding the names of adversaries in the Specific Matters. To the best of my knowledge, after due inquiry, Covington does not represent any adversary of the Debtors in the Specific Matters.

37. Further, counsel for the Debtors provided Covington with a list on February 26, 2020 of creditors of the Debtors and other persons and entities who potentially have an interest in the Chapter 11 Cases (the "**Debtors' Parties in Interest List**"). Although, to the best of my knowledge, the matters in which Covington is adverse to the Debtors are identified above, by way of additional disclosure, I also caused attorneys and other professionals working under my supervision to evaluate whether any of Covington's one hundred largest clients by revenue in 2019 (the "**Top 100 Clients**") appeared on the Debtors' Parties in Interest List by checking these names in the Client Database. The chart annexed

hereto as **Exhibit 1** identifies Top 100 Clients that also appeared on the Debtors' Parties in Interest List.[5]

38. As noted above, to the best of my knowledge, after due inquiry, Covington's representation of such parties is unrelated to the Specific Matters. While many of the parties on the Debtors' Parties in Interest List may be current or former clients of Covington, or may otherwise be involved in litigation or transactional matters in which Covington represents a client, based on the review described above, I do not believe that Covington holds or represents any interest adverse to the estates with respect to the matters for which Covington is retained by the estates.

39. Accordingly, to the best of my knowledge, after due inquiry, Covington does not represent or hold any interest adverse to the Debtors or their estates with respect to the Specific Matters.

40. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to the Chapter 11 Cases, for persons that are creditors or other parties in interest in the Debtors' Chapter 11 Cases (including those set forth on the Debtors' Parties in Interest List). As part of Covington's customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these Chapter 11 Cases. The Firm does not perform services for any such person in connection with these Chapter 11 Cases, except with the Debtors' express written consent, and as to the matters set forth above. The Firm does not have any relationship with any person, or such person's attorneys, or such person's accountants that would be adverse to the Debtors or their estates with respect to the Specific Matters. From time to time, Covington has referred work to other professionals retained or to be retained in these Chapter 11 Cases, and certain such professionals have referred work to Covington. Also, as part of its practice, Covington appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent

---

[5] As referenced in Exhibit 1, the term "Current Client" refers to an entity listed as a client in Covington's Client Database for whom time has been recorded in the past two years and Covington has at least one open matter. The term "Former Client" refers to an entity listed as a client in Covington's Client Database for whom time has been recorded in the past two years, but all matters for such client have since been closed. Covington does not disclose connections if time was recorded more than two years before the Petition Date.

claimants and other parties in interest in this case. Except as disclosed in the Application, Covington does not represent any such parties in relation to the Debtors or these Chapter 11 Cases, and will not do so in the future without the Debtors' consent. Covington does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates in connection with the Specific Matters.

41. Covington may currently represent or formerly may have represented certain of the Debtors' other professionals in matters unrelated to the Debtor and these Chapter 11 Cases. I do not believe that Covington's past or current representation of these other professionals in matters unrelated to the Debtors or these Chapter 11 Cases creates any interest materially adverse to the Debtors with respect to the Specific Matters.

42. Occasionally, an insurance company might pay the legal bills of Covington clients. Some of these insurance companies may be involved in these Chapter 11 Cases. None of these insurance companies, however, is a Covington client as a result of the fact that it pays legal fees on behalf of a client of Covington.

43. From time to time, Covington partners, counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds, through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without the knowledge of Covington. To the extent that Covington partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, Covington has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work. In this regard, all Covington attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

44. Based on the inquiry above, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, I can attest that Covington neither holds nor represents an interest adverse to the Debtors or their estates with respect to the Specific Matters. Covington will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships

are discovered or arise, Covington will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Attorney Statement Pursuant to U.S. Trustee Guidelines

45. The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Fee Guidelines.

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? **Response**: No.

**Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? **Response**: No.

**Question**: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. **Response**: N/A.

**Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period? **Response**: Yes, through July 1, 2020.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this declaration was executed at Oakland, California on this 24th day of March 2020.

/s/ *David B. Goodwin*
David B. Goodwin