Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:	415.659.2600
Facsimile:	415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:	310.820.8800
Facsimile:	310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

Elizabeth A. Green (*pro hac vice*)
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone:	407.649.4036
Facsimile:	407.841.0168
Email: egreen@bakerlaw.com

Elyssa S. Kates (*pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone:	212.589.4227
Facsimile:	212.589.4201
Email: ekates@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>     **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                            **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REQUEST FOR HEARING ON APPLICATIONS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002 TO RETAIN AND EMPLOY HON. JOHN K. TROTTER (RET.) AS TRUSTEE AND CATHY YANNI AS CLAIMS ADMINISTRATOR** *NUNC PRO TUNC* **TO JANUARY 13, 2020 THROUGH THE EFFECTIVE DATE OF THE RESOLUTION TRUST AGREEMENT**<br><br>Date:    April 7, 2020<br>Time:   10:00 a.m. (Pacific Time)<br>Place:   United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102<br>**Objection Deadline: Passed** |

The Official Committee of Tort Claimants (the "**TCC**") of PG&E Corporation and Pacific Gas and Electric Company (collectively the "**Debtors**"), pursuant to the Court's March 6, 2020 Docket Text Order (the "**Order**"), hereby requests a hearing on April 7, 2020, or as soon thereafter as the TCC may be heard, on the (1) *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Hon. John K. Trotter (Ret.) as Trustee Nunc Pro Tunc to January 13, 2020 Through the Effective Date of the Resolution Trust Agreement* (the "**Trotter Application**") (Dkt. No. 5726), and (2) *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Cathy Yanni as Claims Administrator Nunc Pro Tunc to January 13, 2020 Through the Effective Date of the Resolution Trust Agreement* (the "**Yanni Application**") (Dkt. No. 5723).

## REQUEST FOR HEARING

1. As directed by the Court in the Order, the TCC and Debtors have conferred regarding a budget for fees, costs and expenses incurred, and to be incurred, by Justice Trotter, Ms. Yanni[1] and their employees and proposed professionals. Unfortunately, the TCC and Debtors have not been able to reach an agreement.

2. The Debtors seek to cap the aggregate amount of administrative fees, costs and expenses they will cover on behalf of the Fire Victim Trust from January 13, 2020 through an uncertain Plan Effective Date[2] at $2.5 million for all Fire Victim Trust professionals and staff. This amount, as originally proposed in and agreed upon pursuant to a budget provided to the Debtors, was to cover *solely* the fees and expenses of Justice Trotter and Ms. Yanni (and three members of their staff for prescribed roles) from January 13, 2020 through a presumed Plan Effective Date (and attendant funding of the Trust) of June 30, 2020. The cap, as now proposed by the Debtors, extends

---

[1] Capitalized terms used but not defined herein shall have the meanings given them in the Trotter Application and Yanni Application.

[2] On March 20, 2020, the Debtors filed a Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Approving Case Resolution Contingency Process and (II) Granting Related Relief (the "**Contingency Plan Motion**") [Dkt. No. 6398] seeking entry of an order approving two contingency processes in the event that confirmation of the Plan does not occur by June 30, 2020. The Contingency Plan Motion allows the Debtors to push the Effective Date of the Plan as late as December 31, 2020. As a result, Fire Victims who first suffered losses as long as five years ago may have to wait six months longer than originally contemplated after the passage of AB 1054 to begin to receive distributions.

to all administrative fees and expenses of the Fire Victim Trust through a funding date that is yet to be determined, and the cap amount is woefully insufficient given the amount of work necessary and that is already underway to get the Fire Victim Trust operational so that it can commence making distributions to Fire Victims contemporaneously with funding on the Effective Date.

3. It is imperative that the Fire Victim Trust be in a position to begin to disburse payments on account of Fire Victim Claims as soon as possible after the initial funding of the Trust.[3] If the Fire Victim Trust cannot become operational on the occurrence of the Effective Date (which requires months of advance preparation) and begin making distributions shortly thereafter, thousands of Fire Victims who first suffered devastating losses as long as five years ago would be forced to endure many more months of undue hardship before they receive any distributions. The Fire Victims are creditors of the Debtors who have suffered devastating and catastrophic personal injuries and property losses, some of which the Debtors have been found criminally liable for, yet they are not being paid in full on the Effective Date as other unsecured creditors are. The Fire Victims have suffered undue and unwarranted hardships waiting for compensation for their injuries and losses, and if the Fire Victim Trust only has the ability to go operational as of the initial funding date (which could take some time), these victims will be forced to wait even longer to receive payments they may be entitled to from the Fire Victim Trust, as the Trust only then will be able to hire the professionals it needs and will subsequently only then be equipped to take the time it requires to build and implement the claims administration and resolution architecture that has to be in place before it can distribute monies to eligible victims. The Fire Victims should not have to continue to bear the brunt of these Chapter 11 Cases when that could be minimized by providing the Fire Victim Trust with the necessary means to prepare in advance for the Debtors' emergence.

4. At this time, Justice Trotter and Ms. Yanni and a select number of their employees have, on their own time and without any present funding, begun the foundational work necessary to make the Trust operational, but they require a significantly larger budget than the one proposed

---

[3] While the Debtors routinely point to the "$13.5 billion" they are providing for the benefit of the Fire Victims, the reality of the funding plan for the Fire Victim Trust is that the Debtors will contribute only $5.4 billion in cash on the Effective Date. Even if the Fire Victim Trust is operational as of the date it is funded, Fire Victims will only receive compensation on account of a fraction of their claims initially.

by the Debtors if they are to have any chance at providing Fire Victims with initial distributions before the end of this year. In order to ensure that the Fire Victim Trust is operating efficiently and is prepared to make initial distributions soon after it is funded, claim evaluation protocols need to be established and functioning properly and claims software needs to be developed. Justice Trotter and Ms. Yanni propose to use BrownGreer as the Fire Victim Trust's claims processing experts, which will streamline the start-up work necessary due to BrownGreer's familiarity with the claims. This undertaking alone is enormous as more than 77,000 Fire Victims have filed in excess of 82,000 Fire Victim Claims, asserting numerous categories of damages. These claims must be processed, large amounts of data obtained from insurance files must be analyzed, data storage and security must be addressed, and payment structures must be established. This process will require the coordinated efforts of hundreds of BrownGreer employees, necessitating some new hires, and will include employees who will become experts on each of the numerous categories of claims, employees who will help develop and implement the claims evaluation protocols and software developers who will create a customized database. It is impossible for BrownGreer to start assembling this significant workforce without the promise of any compensation while waiting for the Debtors to fund the Fire Victim Trust.

5. Justice Trotter and Ms. Yanni also cannot navigate the various other issues they face in setting up and administering a multi-billion dollar victim trust of this size and complexity without advice of independent counsel. In that regard, they have retained Brown Rudnick LLP ("**Brown Rudnick**") as counsel to them in their capacities as putative Trustee and Claims Administrator. It is prudent for Justice Trotter and Ms. Yanni to retain counsel separate from TCC counsel now, several months before the Fire Victim Trust is funded, to advise them on the fundamental construction of the Fire Victim Trust documents and all other material agreements and settlements that indisputably will impact their ability to operate the Fire Victim Trust and fulfill their respective mandates for the Fire Victims. This case requires extraordinary participation from Brown Rudnick *prior to the Effective Date* due to the complexity and magnitude of the issues raised by numerous parties involved in these Chapter 11 Cases that directly impact the Fire Victim Trust. By way of example only, the Trustee will be a steward of more than 20% of New HoldCo Common Stock.

No qualified candidate for Trustee or Claims Administrator would agree to take on this mandate *on day one* of the Effective Date without the assurance that his or her counsel, at a minimum, undertook a substantial review and analysis of the various operative documents and related agreements and settlements that directly govern or impact the rights, obligations and liabilities of the Trust. Not only does the Trust need independent advice on navigating its rights and duties as a significant stockholder but also needs representation at this critical stage when those rights and duties are currently being negotiated among various parties in these Chapter 11 Cases.[4] The Fire Victim Trust will also need asset management relationships, negotiated and established to hold and manage its cash and non-cash assets prior to the funding date in order to ensure a smooth transition with minimal frictional costs. In that vein, fiduciary insurance for the Trustee, the Claims Administrator and the Trust Oversight Committee must be negotiated, purchased *and in place* as of the Effective Date. Brown Rudnick has already started and progressed each of these tasks in a meaningful way, as is necessary for good trust governance and timely compensating the Fire Victims.

6. The extensive work described above cannot be done without significant input from a financial advisor, especially because half of the total amount of funding being contributed to the Fire Victim Trust will come in the form of New HoldCo common stock, which will be restricted from sale for some period after it is transferred. It would be grossly irresponsible to expect Justice Trotter and Ms. Yanni to attempt to guide a trust containing billions of dollars in new common stock for the benefit of tens of thousands of individual Fire Victim claimants without the advice of financial experts. The financial advisor will provide the Fire Victim Trust and the Trustee expert guidance concerning, among other things, (i) the value of all securities and other rights proposed

---

[4] The agreements that impact, or burden the Trustee's and Claim Administrator's ability to carry out their mandates to maximize the value of the Trust's assets (and deliver that value in a timely manner) for the benefit of the Fire Victims include, but not limited to, the Trust Agreement, the Plan, the Claims Resolution Procedures, various settlement agreements that are being negotiated between various parties-in-interest that must be administered from the Trust or impact the Trust's corpus, a shareholder agreement, registration rights agreement, Tax Benefit Payment Agreement and many other documents. Many of these documents and the surrounding issues have not yet been resolved but will have a direct impact on the putative Trustee and Claims Administrator's ability to operate the Trust. Justice Trotter and Ms. Yanni were also asked by the parties to the RSA for their input on the trust documents and assurance that they were comfortable with the documents. Brown Rudnick expended dozens of hours working with the interested parties and Justice Trotter and Ms. Yanni to reach an agreement on documents that were fair, efficient, and acceptable to all interested parties and that ultimately were included in the Disclosure Statement's solicitation package.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to be contributed to the Fire Victim Trust, (ii) the capitalization of the reorganized Debtors and any funding arrangements (debt or equity) relating to the Plan, (iii) the financial aspects of all agreements relating to the non-cash securities and other assets and rights to be distributed to the Fire Victim Trust, especially those impacting future monetization of the relevant securities and other assets and (iv) all aspects concerning the monetization of the non-cash securities and other assets and rights contributed to the Trust.

7. The TCC, Justice Trotter and Ms. Yanni take seriously the admonition not to duplicate work that can be handled by counsel and financial advisor to the TCC. In recognition of that concern, the Trust's professionals are only focused on issues that directly impact the fair, efficient and orderly operation and administration of the Trust – a role that is not and should not be fulfilled by the TCC's professionals who are directly negotiating with the Debtors and other parties-in-interest on all other aspects of these Chapter 11 Cases. No qualified candidate for the Trustee or Claims Administrator positions would agree to serve in those roles on the Effective Date without having the guidance of independent counsel and financial advisors to set up the complicated trust structure that will have to properly function quickly and for some time.

8. Accordingly, Justice Trotter and Ms. Yanni request a budget in the amount of approximately $22 million (as further described in the Budget attached hereto as Exhibit A) through August 2020, which is comprised of (i) $3.5 million in fees and expenses for Ms. Yanni, Justice Trotter and their staff, (ii) $4.3 million for the fees and expenses of Ms. Yanni and Justice Trotter's counsel, (iii) $1 million for the fees and expenses of a financial advisor, and (iv) $12.5 million for the fees and expenses of claims processing experts. For every month the Trust is not funded after August 31, 2020, Justice Trotter and Ms. Yanni will require an additional budget of $5.15 million, which is comprised of (i) $500,000 in fees and expenses for Ms. Yanni, Justice Trotter and their staff, (ii) $800,000 for the fees and expenses of Ms. Yanni and Justice Trotter's counsel, and (iii) $3.5 million for the fees and expenses of claims processing experts, and (iv) $350,000 for a financial advisor. Without the necessary pre-Effective Date funds, it will be fiscally impossible to begin any significant preparatory work, and it will take several months after the Effective Date to

Case: 19-30088    Doc# 6486    Filed: 03/25/20    Entered: 03/25/20 19:49:04    Page 6 of 7

make the Trust operational and able to begin making distributions. The resulting delay will needlessly harm the Fire Victims, who already have waited years to recover damages.

**NOTICE**

Notice of this Request will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Debtors; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) counsel for the Fee Examiner, Bruce A. Markell, and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The TCC respectfully submits that no further notice is required.

**WHEREFORE**, the TCC respectfully requests that this Court schedule a hearing on the Trotter Application and Yanni Application on April 7, 2020.

Dated: March 25, 2020

BAKER & HOSTETLER LLP

By: */s/ Elizabeth A. Green*
    Elizabeth A. Green (*pro hac vice*)

*Counsel to the Official Committee of Tort Claimants*