PILLSBURY WINTHROP SHAW PITTMAN LLP

Leo T. Crowley (*pro hac vice*)
31 West 52nd Street
New York, NY 10019-6131
(212) 858-1000
leo.crowley@pillsburylaw.com

Matthew S. Walker
12255 El Camino Real, Suite 300
San Diego, CA 92130-4088
(858) 847-4158
matthew.walker@pillsburylaw.com

Dania Slim (*pro hac vice*)
324 Royal Palm Way, Suite 220
Palm Beach, FL 33480-4309
(561) 232-3300
dania.slim@pillsburylaw.com

*Counsel for Wilmington Trust, National Association,
as the HoldCo Revolver Loan Administrative Agent*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>　　- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>　　　　　　　　　**Debtors.** | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **WILMINGTON TRUST, NATIONAL ASSOCIATION'S MOTION FOR AN ORDER ALLOWING PROOFS OF CLAIM NOS. 31005 AND 55147 AND REQUIRING PLAN TREATMENT CONSISTENT THEREWITH, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Hearing Date and Time**<br>Date:　April 29, 2020<br>Time:　10:00 a.m.<br>Place:　U.S. Bankruptcy Court<br>　　　　Courtroom 17, 16th Floor<br>　　　　San Francisco, CA 94102<br><br>**Objections Due:　April 15, 2020** |

Wilmington Trust, National Association ("**Wilmington Trust**"), in its capacity as successor administrative agent under that certain Second Amended and Restated Credit Agreement among PG&E Corporation ("**HoldCo**") as borrower and the agents and lenders thereunder, dated as of April 27, 2015 (as amended, the "**Credit Agreement**"), respectfully moves this Court for an order allowing Proofs of Claim Nos. 31005 and 55147 in full (collectively, the "**HoldCo Revolver Claims**") and requiring Plan treatment consistent therewith, such that the treatment will include all of the fees and expenses incurred under the Credit Agreement, including those of the administrative agents and their counsel and the prepetition facility fee due under Section 2.6 of the Credit Agreement (the "**Prepetition Facility Fee**"). In support thereof, Wilmington Trust states as follows:[1]

## PRELIMINARY STATEMENT

1. The Plan purports to leave the Holdco Revolver Claims unimpaired, but the treatment provisions of the Plan actually propose to impair them. Throughout the Debtors' bankruptcy cases, the Court has welcomed and encouraged the resolution of issues early instead of waiting until confirmation. For weeks, Wilmington Trust has tried to engage the Debtors regarding the treatment of the HoldCo Revolver Claims in the Plan, but its concerns seemingly have been overlooked or ignored. Save one issue that the Debtors addressed immediately before the deadline for formally objecting to the Disclosure Statement, Wilmington Trust's objections regarding the allowed amount of the HoldCo Revolver Claims were deferred until confirmation when the Debtors revised the proposed order for the Solicitation Procedures Motion (defined below) to reflect that the HoldCo Revolver Claims were unimpaired "*[s]olely* for purposes of approving the Proposed Disclosure Statement and soliciting, voting, and tabulating Ballots on the Plan." *See* Doc. No. 6244-1 at 6 (emphasis added).

---

[1] Capitalized terms used but not defined in this Motion have the meanings given such terms in the Plan.

1

2. Despite multiple iterations of the Plan, Wilmington Trust continues to have two issues with the treatment of the HoldCo Revolver Claims under the Plan; a proposed treatment that effectively challenges or impairs the allowed amount of the HoldCo Revolver Claims. Although the Plan identifies the HoldCo Revolver Claims as unimpaired, the Plan actually impairs the HoldCo Revolver Claims by not expressly providing for payment of (i) the fees and expenses incurred under the Credit Agreement, including those of the administrative agents and their counsel; and (ii) the Prepetition Facility Fee.

3. As demonstrated below, the Credit Agreement obligates the Debtors to pay all fees and expenses incurred in connection with the Credit Agreement, as well as a facility fee for the account of each lender. Binding precedent in the Ninth Circuit is also clear and unequivocal that an unsecured creditor's legal fees, even those incurred postpetition, are properly included as part of the creditor's claim. *See In re SNTL Corp.*, 571 F.3d 826, 844 (9th Cir. 2009). Moreover, neither the Debtors nor any other party has formally objected to the calculation or allowance of the HoldCo Revolver Claims, and Wilmington Trust is not a party to any agreement that modifies its rights or the HoldCo Revolver Claims. For these reasons and those articulated below, the Court should allow the HoldCo Revolver Claims in full[2] and require Plan treatment consistent therewith.

## BACKGROUND

*A. The Credit Agreement*

4. That certain Credit Agreement, dated as of May 31, 2011, among HoldCo as borrower, Bank of America, N.A. ("**Bank of America**") as administrative agent, and the various lenders party thereto, provided certain credit facilities to HoldCo in the principal amount of $300

---

[2] Other than with respect to postpetition interest in excess of the Federal Judgment Rate, and the facility fee accruing postpetition, neither of which are sought in this Motion.

million. As of the petition date, the entire $300 million was drawn and outstanding.

5. The Credit Agreement has been amended several times, including on April 27, 2015, pursuant to the Second Amended and Restated Credit Agreement among HoldCo, Bank of America as administrative agent, and the various lenders party thereto. A copy of the Credit Agreement is attached to this Motion as **Exhibit A**.

6. Effective March 18, 2019, Bank of America resigned as administrative agent in accordance with the terms of the Credit Agreement.

7. By that certain Agency Appointment and Assumption Agreement dated as of September 13, 2019, the lenders under the Credit Agreement appointed Wilmington Trust as successor administrative agent, and Wilmington Trust succeeded to all of the rights, powers, privileges and duties of the administrative agent under the Credit Agreement.

### B. The HoldCo Revolver Claims

8. On October 15, 2019, Wilmington Trust timely filed proof of claim number 55147 (the "**Wilmington Trust Claim**") on behalf of the lenders and itself for no less than $300,398,500.00, which consisted of the principal amount of $300 million plus prepetition interest of $398,500.00. *See* Attachment to Proof of Claim No. 55147 at 2. Wilmington Trust also claimed unliquidated amounts for postpetition interest and for any fees and expenses incurred in connection with the Credit Agreement accrued through the date of distribution, including a facility fee under Section 2.6 of the Credit Agreement. *See id.* at 4–5.

9. On October 15, 2019, Bank of America also timely filed a proof of claim for $302,339.47 in fees and expenses that Bank of America disbursed in connection with the Credit Agreement while it was the administrative agent under the Credit Agreement. *See* Proof of Claim No. 31005.

3
Case: 19-30088    Doc# 6529    Filed: 03/30/20    Entered: 03/30/20 15:51:36    Page 4 of 11
4818-7533-1256

*C. The Plan, Disclosure Statement and the Solicitation Procedures Motion*

10. On January 31, 2020, the Debtors filed a Joint Chapter 11 Plan of Reorganization (as subsequently amended, the "**Plan**")[3] with certain shareholders (together with the Debtors, the "**Plan Proponents**"). *See* Doc. No. 5590. Under the Plan, the HoldCo Revolver Claims are included in the definition of "HoldCo Funded Debt Claims" and are in Class 3A. *See id.* at §§ 1.95, 1.105–1.107, 4.3. Although the Plan identifies the HoldCo Funded Debt Claims as unimpaired, the January 31, 2020 iteration of the Plan actually impaired the HoldCo Revolver Claims because it did not provide (i) for payment of fees or expenses incurred under the Credit Agreement;[4] (ii) for payment of the Prepetition Facility Fee; or (iii) that the Disbursing Agent would make distributions on account of the Wilmington Trust Claim to Wilmington Trust as required by Section 9.11(b) of the Credit Agreement.

11. The Debtors filed a Disclosure Statement for the Plan on February 7, 2020. *See* Doc. No. 5700.

12. On February 19, 2020, the Debtors moved for approval of solicitation and voting procedures (the "**Solicitation Procedures Motion**"). *See* Doc. No. 5835. Among other things, the proposed order for the Solicitation Procedures Motion included a finding that various classes of claims, including Class 3A, are "[u]nimpaired under the Plan, and . . . conclusively presumed to accept the Plan"—although, as drafted, the Plan impaired the HoldCo Revolver Claims. *See* Doc. No. 5835-1 at 5–6.

13. On February 6, 2020, the Court entered a scheduling order that allowed parties to

---

[3] As noted below, the most recent version of the Plan was filed on March 16, 2020. *See* Doc. No. 6320.

[4] As noted below, the Plan provides that the HoldCo Revolver Claims include "any Claim arising under, or related to, the [Credit Agreement]," which necessarily must include the administrative agents' fees and expenses as required by Section 10.5 of the Credit Agreement and the Prepetition Facility Fee. However, the treatment provision of the Plan at Section 4.3(a) excludes both the administrative agents' fees and expenses and the Prepetition Facility Fee.

4

send the Plan Proponents informal objections to the Disclosure Statement and the Solicitation Procedures Motion by February 28, 2020, and to file formal objections by March 6, 2020 if informal objections remained unresolved. *See* Doc. No. 5732 at 3–4.

14. To try to consensually resolve Wilmington Trust's objections to the Disclosure Statement and the Solicitation Procedures Motion, on February 20, 2020, Wilmington Trust sent Debtors' counsel specific edits to the Disclosure Statement and the Plan.[5] Wilmington Trust also sent informal objections to the Solicitation Procedures Motion and the Plan, to the Plan Proponents on February 28, 2020.

15. On March 5, 2020, prior to the deadline for formally objecting to the Disclosure Statement, Debtors' counsel revised the Disclosure Statement to provide that distributions for the Wilmington Trust Claim would be paid to Wilmington Trust for onward distribution to lenders, addressing one of Wilmington Trust's informal objections. *See* Doc. No. 6220-1 at 40–41. Wilmington Trust's other objections were not addressed. Debtors' counsel also revised the proposed order for the Solicitation Procedures Motion to clarify that Class 3A is unimpaired "[s]olely for purposes of approving the Proposed Disclosure Statement and soliciting, voting, and tabulating Ballots on the Plan." *See* Doc. No. 6244-1 at 6. This change deferred the issue of whether the HoldCo Revolver Claims are impaired (and the allowed amount of the HoldCo Revolver Claims) until confirmation and obviated the need for Wilmington Trust to formally object to the Solicitation Procedures Motion. Indeed, in their reply in further support of the Proposed Disclosure Statement, the Debtors acknowledged that objections that did not relate to the adequacy of the Disclosure Statement, but instead related to the Plan, were reserved for

---

[5] Daniel Mayer of Davis Polk & Wardell LLP sent Debtors' counsel joint comments to the Disclosure Statement and Plan on behalf of the Utility Revolver Agent, HoldCo Revolver Agent (*i.e.*, Wilmington Trust), and HoldCo Term Loan Agent on February 20, 2020 at 5:43 p.m. (ET).

5

confirmation. *See* Doc. Nos. 6221 at 16–18.[6]

16. On March 16, 2020, the Plan Proponents filed a revised version of the Plan. *See* Doc. No. 6320. As amended, the Plan still identifies the HoldCo Funded Debt Claims, which includes the HoldCo Revolver Claims, as unimpaired even though it does not provide for payment of (i) the fees and expenses incurred under the Credit Agreement; or (ii) the Prepetition Facility Fee.

17. Throughout the Debtors' bankruptcy cases, the Court has encouraged the resolution of issues early and proactively instead of having issues accumulate for confirmation. *See, e.g.*, Doc. No. 4540 (*Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues*). To that end, and given that Wilmington Trust has not received an explanation for the inconsistent provisions in the Plan, namely why Section 4.3(a) of the Plan does not expressly provide for payment of the fees and expenses incurred under the Credit Agreement or the Prepetition Facility Fee despite the alleged unimpairment of the HoldCo Revolver Claim, Wilmington Trust is moving proactively to have the HoldCo Revolver Claims allowed in full and their treatment determined prior to confirmation.

## **ARGUMENT**

### A. *The Administrative Agents' Fees and Expenses Must Be Paid Under the Terms of the Credit Agreement and Under Binding Ninth Circuit Law*

18. The Credit Agreement obligates HoldCo to reimburse the lenders and the administrative agents for various fees, expenses and disbursements, including those of their counsel.

---

[6] *See also* Doc. No. 6221-1 at 9 (in response to Deutsche Bank's request that the Plan provide for reimbursement of the trustee's fees and expenses, the Debtors replied, "[s]tyled as an objection to the Proposed Disclosure Statement . . . . This is a confirmation objection. The Debtors will be prepared to address such objection in connection with the confirmation process . . . .").

6

Case: 19-30088    Doc# 6529    Filed: 03/30/20    Entered: 03/30/20 15:51:36    Page 7 of 11

4818-7533-1256

19. Most relevant for purposes of this Motion is Section 10.5 of the Credit Agreement, which requires HoldCo to pay the administrative agent all "reasonable out of pocket costs and expenses incurred in connection with the . . . [Credit] Agreement" and "all its costs and expenses incurred in connection with the enforcement or preservation of its rights under this [Credit] Agreement." *See* Exhibit A § 10.5. The fee and expense reimbursement due Wilmington Trust pursuant to the Credit Agreement is approximately $350,000 as of the date hereof, and will continue to accrue until the date of distribution.

20. In addition to HoldCo's obligations under the Credit Agreement, binding precedent in the Ninth Circuit is unequivocal that an unsecured creditor's pre- and postpetition contractually-owed legal fees are properly included as part of the creditor's claim. *See In re SNTL Corp.*, 571 F.3d 826, 844 (9th Cir. 2009) ("Because we hold that attorneys' fees arising out of a prepetition contract but incurred postpetition fall within the Bankruptcy Code's broad definition of claim, we reject the position of the majority line of cases that section 502(b) precludes such fees."); *see also Qmect, Inc. v. Burlingame Capital Partners II (In re Qmect, Inc.)*, 368 B.R. 882 (Bankr. N.D. Cal. 2007) (unsecured creditor was entitled to include its contract-based attorneys' fees incurred postpetition in its prepetition claim).[7]

21. Conflicting provisions in the Plan—the definition of the HoldCo Revolver Claims versus their treatment in Section § 4.3(a) of the Plan—refute the notion that the Plan Proponents intend to pay all of the fees and expenses incurred under the Credit Agreement. The Plan identifies the HoldCo Funded Debt Claims as unimpaired and defines the HoldCo Revolver Claims as "any Claim arising under, or related to, the [Credit Agreement]," which necessarily

---

[7] *Accord In re Baroni*, No. AP 13-01071-MB, 2017 WL 3014268 (B.A.P. 9th Cir. July 14, 2017) (citing *In re SNTL Corp.*, 571 F.3d 826); *In re Paxton*, 596 B.R. 686, 693 (Bankr. N.D. Cal. 2019), *amended on reconsideration in part*, No. 12-33036 HLB, 2019 WL 2462797 at *693 (Bankr. N.D. Cal. June 12, 2019) (citing *In re SNTL Corp.*, 571 F.3d 826).

must include the administrative agents' fees and expenses as required by Section 10.5 of the Credit Agreement. Yet neither the Disclosure Statement nor Section 4.3(a) of the Plan explain how payment of the administrative agents' fees and expenses will be given effect. Indeed, the treatment section contradicts the definition and the unimpairment language in Section 4.3(b) of the Plan by excluding payment of the fees and expenses. Moreover, the Debtors' silence and unwillingness to revise the Plan and Disclosure Statement to address this issue after addressing one of Wilmington Trust's other objections indicates that they do not intend to include the fees and expenses incurred under the Credit Agreement in the allowed amount of the HoldCo Revolver Claims despite their contractual and legal obligation to do so.

### B. The Prepetition Facility Fee Must Be Paid Under the Terms of the Credit Agreement

22. Among the fees and expenses that HoldCo is obligated to pay under the Credit Agreement is a facility fee for the account of each lender. Section 2.6(a) of the Credit Agreement provides:

> The Borrower agrees to pay to the Administrative Agent for the account of each Lender (other than a Defaulting Lender to the extent provided in Section 2.20) a facility fee for the period from and including the date hereof to the last day of the Commitment Period, computed at the Facility Fee Rate on the Commitment of such Lender during the period for which payment is made, payable quarterly in arrears on each Fee Payment Date, commencing on the first such date to occur after the Effective Date. In addition, if the principal amount of any Loan or any Reimbursement Obligations shall remain outstanding and unpaid after the last day of the Commitment Period, the Borrower agrees to pay to the Administrative Agent, for the account of each Lender, a facility fee for the period from the last day of the Commitment Period until the date on which such amounts are repaid in full, computed at the Facility Fee Rate on such amounts, payable quarterly in arrears on each Fee Payment Date, commencing on the first such date after the last day of the Commitment Period.

*See* Exhibit A at § 2.6(a).

23.     Although the Debtors' apparent position is that postpetition accruals of the facility fee are not payable because they are a form of interest disallowed under the Court's Memorandum Decision providing for postpetition interest at the Federal Judgment Rate, there is no legal justification for not paying the *Prepetition* Facility Fee.[8]  As with the other fees incurred under the Credit Agreement, HoldCo is contractually and legally obligated to pay the Prepetition Facility Fee.

24.     Unlike other creditors, Wilmington Trust is not a party to any restructuring support or other agreement that modifies its rights or the HoldCo Revolver Claims.  Failing to include the Prepetition Facility Fee in the allowed amount of the HoldCo Revolver Claims and in Section 4.3(a) of the Plan would alter Wilmington Trust's legal and contractual rights (and impair the HoldCo Revolver Claims contrary to Section 4.3(b) of the Plan, which identifies the HoldCo Revolver Claims as unimpaired).

25.     Accordingly, the Court should allow the HoldCo Revolver Claims in full (other than with respect to the postpetition facility fee and with respect to postpetition interest in excess of the Federal Judgment Rate) and require treatment in the Plan consistent therewith.

## CONCLUSION

WHEREFORE, Wilmington Trust respectfully requests entry of an order (i) allowing the HoldCo Revolver Claims as filed (save for the postpetition facility fee and postpetition interest other than at the Federal Judgment Rate); (ii) requiring the Plan Proponents, if they wish the Holdco Revolver Claims to be unimpaired, to revise the Plan (including the treatment paragraph

---

[8] The "Facility Fee Rate" for any day is the rate per annum determined based on the Applicable Ratings then in effect.  As explained in the Addendum to the Wilmington Trust Claim, as of February 5, 2019, Moody's Investors Service ("**Moody's**") had withdrawn its rating of HoldCo.  However, prior to the withdrawal, Moody's had assigned HoldCo the Rating of Caa3. As of January 29, 2019, S&P Global ("**S&P**") had assigned HoldCo the Rating of D. Both the Rating assigned by S&P and the Rating assigned by Moody's prior to its withdrawal are "Below BBB/Baa2," and thus the applicable Facility Fee Rate under the Credit Agreement is 0.275%.  *See* Exhibit A § 1.1 (definition of "Facility Fee Rate").

9

in Section 4.3(a) of the Plan) to cause the allowed amount of the HoldCo Revolver Claims, and the amount that will be paid on the Effective Date on the HoldCo Revolver Claims, to include all of the fees and expenses incurred under the Credit Agreement, including those of the administrative agents and their counsel and the Prepetition Facility Fee all as set forth in clause (i) above; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: March 30, 2020          **PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: /s/ *Leo Crowley*
Leo T. Crowley (*pro hac vice*)

31 West 52nd Street
New York, NY 10019-6131
(212) 858-1000
leo.crowley@pillsburylaw.com

Dania Slim (*pro hac vice*)
324 Royal Palm Way, Suite 220
Palm Beach, FL 33480-4309
(561) 232-3300
dania.slim@pillsburylaw.com

*Counsel for Wilmington Trust, National Association, as the HoldCo Revolver Loan Administrative Agent*