REBECCA J. WINTHROP (CA Bar No. 116386)
ROBIN D. BALL (CA Bar No. 159698)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com

Attorneys for Creditors ADVENTIST HEALTH
SYSTEM/WEST and FEATHER RIVER
HOSPITAL D/B/A ADVENTIST
HEALTH FEATHER RIVER

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19 - 30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**RESERVATION OF RIGHTS RE: REQUEST FOR HEARING ON APPLICATIONS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002 TO RETAIN AND EMPLOY HON. JOHN K. TROTTER (RET.) AS TRUSTEE AND CATHY YANNI AS CLAIMS ADMINISTRATOR *NUNC PRO TUNC* TO JANUARY 13, 2020 THROUGH THE EFFECTIVE DATE OF THE RESOLUTION TRUST AGREEMENT**<br>[ECF Nos. 5723, 5726 and 6486]<br><br>**Hearing Date and Time:**<br>Date: April 7, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA 94102 |

Creditors Adventist Health System/West, a California religious non-profit corporation ("Adventist Health"), and Feather River Hospital, a California religious non-profit corporation, d/b/a Adventist Health Feather River ("AHFR" and, collectively with Adventist Health, the "Adventist Claimants"), submit this Reservation of Rights in response to the *Request for Hearings On Applications of the Official Committee of Tort Claimants ("TCC") to Retain and Employee Hon. John K. Trotter (Ret.) as Trustee and Cathy Yanni as Claims Administrator Nunc Pro Tunc to January 13, 2020 Through the Effective Date of the Resolution Trust Agreement* (the "Request for Hearing") [ECF No. 6486].

**Background**

Adventist Health is a faith-based, nonprofit integrated health delivery system headquartered in Roseville, California. AHFR is part of the Adventist Health hospital system. Before the Camp Fire, AHFR was a 100-bed acute care, community hospital with extensive operations in Butte County, but primarily in Paradise, California. The hospital was staffed by nearly 200 physicians and advance practice professionals, approximately 1,200 employees and more than 400 volunteers. It was the largest business and the largest employer in Paradise.

AHFR was devastated by the Camp Fire. The fire swept over large portions of its main hospital campus in Paradise (the "Main Hospital Campus"), destroying the lower level of the hospital and 15 other hospital buildings, as well as valuable medical equipment, furniture, medicines and inventory inside those buildings. It also seriously damaged the upper level of the hospital, its contents, and nine other buildings and their contents, the Feather River Health Center (located outside of the Main Hospital Campus and once one of the largest rural health clinics in Adventist Health's system) and pharmacy, medical office building space, and three leased locations (including valuable medical equipment, furniture, medicines and inventory at those locations). Vehicles, landscaping, service roads, parking lots and walkways throughout the Main Hospital Campus, and acres of woodland adjacent to the Main Hospital Campus, were destroyed or seriously damaged. The Main Hospital Campus has been incapable of operation since the Camp Fire, and nearly all other services provided on the Main Hospital Campus remain closed. The Feather River Health Center has reopened, but offers only limited services. It cannot handle

Document Prepared on Recycled Paper

99674913.3

2

Case: 19-30088    Doc# 6567    Filed: 03/31/20    Entered: 03/31/20 16:12:26    Page 2 of 5

patients with emergencies or other acute care needs, and must send them out of town to other facilities.

The Adventist Claimants have incurred (and continue to incur) staggering financial losses from the extensive damage to their real and personal property, including the loss of business operations at the Main Hospital Campus and each of AHFR's other locations, which has had a direct impact on the entire Adventist Health system. The Adventist Claimants timely filed proofs of claim for actual damages (i.e. property damage, business losses, economic damages and others losses and expenses) in an amount not less than $506,030,602.00, plus punitive damages in at least an equal amount.

## **Reservation of Rights**

The TCC seeks approval of a request for a budget for Justice Trotter and Ms. Yanni in the amount of approximately $22 million through August 2020, comprising certain items, including $12.5 million for the "fees and expenses of claims processing experts." [Request for Hearing, ¶ 8.] The TCC states that this funding is necessary for "preparatory work" to be undertaken before the Effective Date of the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020. (the "Proposed Plan") [ECF No. 6320].[1] *Id.*

The Adventist Claimants have no objection to Justice Trotter and Ms. Yanni's pre-Effective Date work and preparation related to operation of the trust or the funding thereof by the Debtors. The Adventist Claimants, however, are concerned that the request for such work and a large budget may suggest that the proposed claims resolution procedures may begin to be built-in and made a *fait accompli* before the Court's consideration of objections to the Proposed Plan, and to the proposed Fire Victim Claims Resolution Procedures and the proposed Fire Victim Trust Agreement (together, the "Proposed Claims Resolution Procedures").

The Proposed Claims Resolution Procedures as currently described contain certain objectionable provisions and features. If substantial funds are used for "preparatory work" regarding these procedures, the TCC, the Debtors and others may claim and argue at confirmation that it is difficult to change course, that actions have been taken that cannot be undone, that

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Proposed Plan.

99674913.3

DOCUMENT PREPARED ON RECYCLED PAPER

significant dollars have already been spent on this course, or even that parties somehow have waived their rights in some respect. For instance, the TCC discusses the need to hire employees to "develop and implement the claims evaluation protocols and software developers who will create a customized database." [Request for Hearing, ¶ 4.] Presumably, these "claims evaluation protocols" and the associated "customized database" need to be developed based on the actual claims evaluation procedures that will be implemented pursuant to the Proposed Claim Resolution Procedures.

Some of the objectionable provisions in the Proposed Plan and Proposed Claims Resolution Procedures are evident on the face of the recently filed Disclosure Statement [ECF No. 6353], which describes the procedures regarding the treatment and satisfaction of Fire Victim Claims. Below is sampling of some of these objectionable features:

- The Disclosure Statement provides that losses "will be calculated, after setting off <u>available insurance policy limits</u>," regardless of whether those limits were actually collected by the insurers. [ECF No. 6353, at p. 28 (emphasis added).] Distributions for business losses will take into consideration <u>amounts received **or potentially recoverable** from applicable insurance policies</u>. [*Id.* (emphasis added).] Reducing claims by the amount of "available" insurance limits or "potentially recoverable" insurance amounts is wholly improper. Under the collateral source rule, recoverable damages against the debtor are not reduced by amounts the claimant has been partially or even wholly indemnified for its loss by insurance or another collateral source. Since insurance payments received by the claimant should not be deducted from a claim under the collateral source rule, it would be completely inappropriate to deduct "potential" or "available" insurance where the insurance company has not paid, and may not ever pay. There is absolutely no authority for such a result.

- The Disclosure Statement provides that holders of large claims might have their claims reduced—not based on their merits—but simply because they are large and might impact what other claimants receive. According to the Disclosure Statement, "<u>**special consideration** may be given to the **treatment** of those claims in the **discretion of the Trustee and the Claims Administrator** to ensure that all **other** claimants receive fair and expeditious compensation</u>." [ECF No. 6353, at p. 28 (emphasis added).] This statement indicates the Proposed Plan and the Proposed Claims Resolution Procedures are being set up to deprive certain large (i.e. business) claimants of their rights to fair, equitable and similar treatment. This is an astounding position.

- At the same time, and to further exacerbate the problem, *pro rata* treatment of all Fire Victim Claims is not assured in the Proposed Plan or Proposed Claims Resolution Procedures. There is no requirement for *pro rata* treatment in the

DOCUMENT PREPARED ON RECYCLED PAPER

99674913.3

- 4 -

- proposed operative documents; nor is there the any disputed claims reserve mechanism, which is in every plan and is geared to ensure *pro rata* treatment. The procedures appear to envision the possibility of unequal treatment depending not only on the type of claimant but also the timing of the claim's determination.

- Finally, Fire Victims are deprived of the right to have this or any other Court determine their claims. The procedures deny any right to a Court hearing on claims, leaving the matter totally in the "discretion" of the Trustee and Claims Administrator, with limited appeal rights to an in house group of mediators who work for and are part of the Trustee's apparatus of initial claims determination. So, the "neutrals" are reviewing their own collective work and the work of their superior officer.

The Adventist Claimants reserve all rights with respect to the issues raised in connection with the Request for Hearing and the related application, as well as all rights to object to the Proposed Plan, including the Fire Victim Claims Procedures and the Fire Victim Trust Agreement.

Dated: March 31, 2020

REBECCA J. WINTHROP
ROBIN D. BALL
NORTON ROSE FULBRIGHT US LLP

By: */s/ Rebecca J. Winthrop*
REBECCA J. WINTHROP
Attorneys for Creditors ADVENTIST HEALTH SYSTEM/WEST and FEATHER RIVER HOSPITAL D/B/A ADVENTIST HEALTH FEATHER RIVER

DOCUMENT PREPARED ON RECYCLED PAPER

99674913.3