# Milbank

**ALAN J. STONE**

*Partner*
55 Hudson Yards | New York, NY 10001
T: 212.530.5285
astone@milbank.com | milbank.com

April 1, 2020

**VIA ECF**

Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

      Re: *In re PG&E Corporation*, Case No. 19-30088 (DM) (Jointly Administered)

Dear Judge Montali:

    I write on behalf of the Official Committee of Unsecured Creditors (the "OCUC") of PG&E Corporation and Pacific Gas & Electric Company (collectively, the "Debtors") regarding a discovery dispute between the OCUC and the Debtors, on the one hand, and the Official Committee of Tort Claimants (the "TCC"), on the other.[1] The dispute concerns discovery subpoenas served (and to be served) by the TCC upon certain of the Debtors' vendors pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "Vendor Subpoenas"). The OCUC and the Debtors met and conferred with the TCC over the past two weeks but were unable to resolve their respective issues.

    The OCUC submits this letter and statement to (i) apprise the Court of the dispute and the OCUC's position thereon and (ii) request a telephonic conference at the Court's earliest convenience.

## Statement of the OCUC

    Although the TCC has corrected procedural defects in its previous service of the Vendor Subpoenas, the fundamental problem with the TCC's discovery efforts remain. As explained

---

[1] The OCUC understands the Debtors will file a separate letter with the Court concerning the dispute.

**MILBANK LLP**

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

below, the Vendor Subpoenas are not appropriately served prior to the effectiveness of the Plan[2] and, in any event, represent a questionable cost-shifting from the Fire Victim Trust to the Debtors' estates.

*The TCC's Prior Discovery Procedures Motion*

As the Court is aware, this issue does not arise on a blank slate. The TCC served 107 subpoenas upon the Debtors' vendors pursuant to Fed. R. Civ. P. 45 and then moved to establish a process to resolve mounting disputes arising from the service of those subpoenas. *See The Official Committee of Tort Claimants' Motion to Establish Procedure for Discovery Preceding Plan Confirmation* [Docket No. 5840] (the "TCC Discovery Motion"). The TCC represented that the "***ultimate goal of [the TCC's] investigative process [is] to obtain for the benefit of fire victims an understanding of the potential claims***." TCC Discovery Motion at 3 (emphasis added). The TCC said nothing about the discovery being needed in connection with any potential objections from the OCUC to the confirmation of the Plan.

Both the OCUC and the Debtors objected to the TCC Discovery Motion. After identifying the Motion's procedural defects, the OCUC questioned the wisdom of burdening this Court "with an influx of discovery disputes that are more appropriate for determination after the Effective Date"—*i.e.*, after the Vendor Claims have been assigned to the Fire Victim Trust for settlement or prosecution. *See OCUC's Statement Regarding TCC Discovery Motion* [Docket No. 6118] at 2. The OCUC further questioned the TCC's use of estate resources to determine the "nature and value" of the Assigned Claims as those efforts are contrary to the deal the TCC struck in its restructuring support agreement. *Id.* at 3; *See Debtors' Motion For Order Authorizing Entry Into Restructuring Support Agreement with the TCC, Consenting Fire Claimant Professionals, and Shareholder Proponents* [Docket No. 5038] (the "RSA").

The Debtors objected to the TCC Discovery Motion because, among other things, "the appropriate manner in which to proceed is to defer all discovery relating to the Assigned Claims and Causes of Action to after the Plan Effective Date. That is when the Fire Victim Trust will have the right to pursue such claims and that is when the expenses therewith should be incurred." *Debtors' Objection to TCC Discovery Motion* [Docket No. 5995] at 2. The Debtors also recognized that in view of the $13.5 billion in cash and equity to be contributed to the Fire Victim Trust under the Plan, "it is difficult to conceive that the Assigned Rights and Causes of Action could be material in this context." *Id.*

Following the OCUC's and the Debtors' submissions, the Court entered a docket text order stating its inclination to deny the TCC Discovery Motion and identifying, among other things, "***the prematurity of the process (before the Effective Date of a Plan), and the questionable cost-shifting from the Trust to the Debtors***" as "***appear[ing] fatal to the proposal***." Docket Text Order, March 5, 2020 (emphasis added).

---

[2] The "Plan" refers to the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket No. 6320].

In response, the TCC filed a "Supplemental Brief" shifting its position. *See TCC's Supplemental Brief in Support of its Motion to Establish Discovery Procedures* [Docket No. 6200] (the "TCC Supp. Br."). No longer was the "ultimate goal" of the requested discovery to obtain an understanding of the potential claims for the benefit of the fire victims. Now the "primary purpose of the Contractor discovery is to prepare for the OCUC's confirmation objection." TCC Supp. Br. at 7 (emphasis in original). The TCC justified this "primary" purpose by citing a few comments OCUC counsel, Mr. Bray, made at the December 2019 hearing on the RSA, in which Mr. Bray flagged, so that it did not "get lost in the shuffle," the assignment of vendor claims as an important issue that "may" impact AB 1054. Dec. 17, 2019 Hr'g Tr. at 186:9-24. Mr. Bray made no mention of an OCUC objection to plan confirmation.

The Court denied the TCC Discovery Motion without reaching the substantive deficiencies identified by the OCUC and the Debtors.

*The Present Dispute*

Following the denial of the TCC Discovery Motion, the TCC served the Vendor Subpoenas through *ex parte* applications for discovery pursuant to Federal Rule of Bankruptcy Procedure 2004. The TCC's service of the Vendor Subpoenas remains improper.

The TCC states that it needs the requested discovery, *still on the estates' dime*, to (i) prepare for a hypothetical objection from the OCUC that the Plan is not feasible because vendors will stop working with the Debtors if claims against them are assigned to the Fire Victim Trust and (ii) determine the nature and value of the Assigned Claims to "ensure that the prospective value of the Assigned Claims is not lost…" *See, e.g., Ex Parte Application of the TCC Pursuant to Fed R. Bankr. P. 2004 for Entry of an Order Authorizing Service of a Subpoena on Davey Tree Expert Company* at 3 [Docket No. 6347]. These newly-minted rationales do not cure the deficiencies that the OCUC, the Debtors, and this Court previously identified.

A review of the Vendor Subpoenas confirms they are intended to further the TCC's **initial** articulation of its "ultimate goal": determining the sources and *quantum* of potential recoveries on Assigned Claims—an undertaking reserved for the post-Effective Date Fire Victim Trust. But even taking at face value the TCC's post-hoc explanation that this discovery is needed, prophylactically, against a future objection to the feasibility of the Plan based on these assignment provisions, the broad discovery of work summaries, all forms of insurance policies and other information that the TCC seeks from the vendors does not speak to that issue. The Court acknowledged this very point at the RSA hearing. Mr. Julian represented on behalf of the TCC that "we are going to present evidence on [AB 1054 compliance], and we will get the insurance policies from Davey Tree that show they are fully insured for these claims that we will bring against them, and that's going to be the proof." Dec. 17, 2019 Hr'g Tr. at 250:12-15. But the Court correctly recognized that this information was beside the point, observing: "Well, but whether you bring claims against them or not, ***the question is will they be – or will someone in their place, if they're not the ones – [be] in a position to do what the company needs to do to satisfy the governor and the CPUC about all the remediation that's necessary to avoid 2020 and 2021 fires, and beyond.***" *Id.* at 250:16-20 (emphasis added). The burdensome discovery

the TCC seeks to inflict upon third-party vendors, at the estates' expense, is not relevant to its "primary purpose."

The TCC's alternative rationale for needing the discovery—to preserve the benefit of its bargain—fares no better. This rationale, unmentioned by the TCC in its Discovery Motion, is not a sufficient basis for granting discovery now given that the assignment of the Fire Victim Trust of the Assigned Claims is not dependent on the value of the assigned claims. *See* RSA at 8. Despite assigning no particular value to the Assigned Claims, the TCC's counsel told the Court that the deal, as struck, "satisfied the requirements of thousands of individually represented tort claimants, *and the fiduciaries to all tort claimants, the TCC*." Dec. 17, 2019 Hr'g Tr. at 225:3-8 (comments from C. Dumas) (emphasis added). The TCC further explained that "the assignment of [the Assigned Claims] was material to the TCC's and the consenting professionals' view that the consideration of 13.5 billion, plus the assignments, *made this AB 1054 compliant*." *Id.* at 248:24-249:2 (comments from R. Julian) (emphasis added).

The TCC did not condition its deal, and its accompanying commitment to support the Plan, on having continued access to estate resources to determine or preserve the value of the Assigned Claims. As fiduciaries to all tort claimants, the TCC bargained for the transfer of the Assigned Claims to the Fire Victim Trust upon the Effective Date, whatever their value. The TCC did not bargain for a budget to vet, investigate, or caretake those claims. Nor does the RSA include a termination right if the Assigned Claims, whatever their composition, fail to yield a certain value. It is simply inappropriate for the TCC to take discovery, at the estates' expense, to assess the value of a deal that it accepted as a sound exercise of its fiduciary duty and that this Court has approved.

Given that several Vendor Subpoenas are pending, and the impact that resolution of these issues may have upon the Debtors' vendors, the OCUC respectfully requests that the Court schedule a telephonic conference at its earliest convenience to allow the parties to be heard.

Sincerely,

*/s/ Alan J. Stone*
Alan J. Stone
*Counsel for the Official Committee of Unsecured Creditors*

cc: Andrew M. Leblanc
    Samir L. Vora
    Theodore E. Tsekerides
    Kevin J. Orsini
    David J. Richardson
    Kimberly S. Morris