# BakerHostetler

**BakerHostetler**
600 Montgomery St.
Suite 3100
San Francisco, CA 94111
T: 415.659.2900
F: 415.659.2601
www.bakerlaw.com

David J. Richardson
direct dial: 415.659.2583
drichardson@bakerlaw.com

April 1, 2020

**VIA ECF**

Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

Re:   In re PG&E Corporation and Pacific Gas and Electric Company, Case No. 19-30088 (DM) (Jointly Administered)

Dear Judge Montali:

     I write on behalf of the Official Committee of Tort Claimants (the "**TCC**") in response to the letter briefs filed by PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**") and the Official Committee of Unsecured Creditors (the "**OCUC**") objecting to certain discovery that has been propounded by the TCC in earlier subpoenas and recent motions filed pursuant to F.R.B.P. 2004.

     The TCC's discovery has its roots in the OCUC's objection to the TCC's Restructuring Support Agreement with the Debtors and other parties (the "**RSA**"). The OCUC filed that objection with this Court on December 16, 2019 [Dkt. No. 5132], and objected to the RSA on the grounds that its assignment of claims against vendors, suppliers, third-party contractors, and consultants, represent claims against "the very same people that the Debtors will rely on to carry out the various programs to make the grid more resilient and to prevent future wildfires … and the UCC reserves all rights to raise this issue as well before the Court." Dkt. No. 5132, p. 3, fn. 4.

     At the hearing in this Court, the following day, counsel to the OCUC raised this objection to the RSA in an exchange that confirmed that this was not an objection to approval of the RSA, but a future feasibility objection to Plan confirmation:

> Mr. Bray:  … The UCC doesn't dispute, with the exception of the assignment of the vendor claims, which you flagged -- let me just set that

> aside for a moment, because it's a significant issue, and it does raise its own set of 1054 issues and the possibility of litigation that essentially thwarts a company's ability to proceed with its remediation efforts. …
>
> … MR. BRAY: It is, Your Honor, and just one final comment back to the assignment of the vendor claims.
>
> THE COURT: Yeah, right.
>
> MR. BRAY: I don't have an answer for you about this today, or a proposed solution, other than it's a significant problem, and we think it may actually going to the ability by 1054 --
>
> THE COURT: Well, and that's right, and if the debtor and TCC worked a deal that chancers away the debtor's ability to comply with 1054, then do you know what? Be careful what you wish for. But that's not a today issue, I don't think.
>
> MR. BRAY: It's really more of a plan, 1054 issue.
>
> THE COURT: Yeah, right.
>
> MR. BRAY: I just want to make sure it doesn't get lost in the shuffle.

Transcript of Proceedings of December 17, 2019, Pages 169: 12-18, and 186: 9-24.

The OCUC absurdly focuses on Mr. Bray's final words in the above-quoted passage about not wanting the issue to get "lost in the shuffle" to minimize the issue that was raised. But in Mr. Bray's own words, it is "a plan, 1054 issue." *Id*.

In response to Mr. Bray's comments, Mr. Julian engaged in a lengthy discussion with this Court about this plan objection, and the discovery that would need to be taken, summarized by the following statements:

> MR. JULIAN: Your Honor, briefly I would just like to respond to the UCC's objection to the assignment. I acknowledge Your Honor's point that that's a subject to be taken up at plan confirmation time; we intend to do that …
>
> … we are going to present evidence on that, and we will get the insurance policies from Davey Tree that show they are fully insured for these claims that we will bring against them, and that's going to be the proof. … We will present evidence to you, though, at plan confirmation, after taking the deposition of Davey Tree and the rest of them, over their insurance policies – that will show that this will not impact the reorganized debtor.

*Id*., 248:18-21; 250:12-15: 251:1-4. No one objected to Mr. Julian's announcement that the TCC would take discovery of contractors/vendors to prepare for testimony at Plan confirmation. The OCUC's efforts to recast these events as a recently invented excuse for discovery, and to mischaracterize the TCC's efforts on behalf on fire victims, should be rejected.

All parties know the tight schedule for Plan confirmation that is before us. No party that is aware of an announced Plan objection to a Plan term that they seek to protect can be foolish enough to sit back and refrain from taking discovery in preparation for that objection. The TCC will not be able to complete necessary discovery between the May 15 objection deadline and the May 22 reply deadline, let alone before June 30, 2020. The TCC commenced this discovery in January. It is now April, and the TCC is still attempting to obtain compliance with subpoenas. If discovery is delayed until May 15, due process will be denied.

The OCUC's objection reaches beyond its proper role in these cases. It is not within the scope of its duties to seek to protect certain creditors from post-petition litigation. It is not within the scope of its duties to seek to minimize or erase the value of estates assets being assigned to other unsecured creditors. Its entire grounds for objection are misplaced.

A second reason that has driven the TCC's discovery has been the need to ensure that the assigned claims are not compromised by the passage of time, such as by the Debtors' failure to meet deadlines to provide notices of claims to vendors' insurance companies, in order to protect the estates' rights as an "additional insured" under those vendors' policies. The OCUC oddly argues that the TCC negotiated for the assigned claims without regard to their value, and therefore should be expected to sit back and take no action to ensure that these assets of the estate are preserved for the Fire Victim Trust to pursue. The Debtors appear to concur. But given the Debtors' recent contingency filing, it is clear that the Fire Victim Trust may not be formed until more than a year after the RSA was negotiated. During that time, notice periods under applicable insurance policies may expire. The TCC has attempted to obtain complete information from the Debtors pertaining to their status as an "additional insured," the policy terms and the Debtors' notice of claims to vendors' insurance companies either as "additional insureds" or otherwise, but the Debtors have been unable or unwilling to produce this information. The solution proposed in their letter is that the TCC should be denied discovery until after the fluctuating Effective Date, regardless of the asset value that may be lost. The Debtors are fiduciaries of their creditors. They have assigned these claims to help pay their debts to these creditors. And now they come before this Court and argue that these assets should be allowed to potentially expire to the detriment of their own creditors, as long as they don't have to pay for any discovery. The OCUC similarly seems to believe that the TCC should just give up and let valuable assets expire. **It is beyond unreasonable for a Debtor to argue that the preservation of estate assets should not be an estate expense simply because that asset is being assigned to pay the debts of creditors post-confirmation**.

The Debtors and OCUC argue that this discovery should not be an expense of the Debtors' estates. It should go without saying that an official committee's discovery in anticipation of an announced plan objection is a typical and ordinary expense of the estate. It should also go without saying that pre-confirmation efforts to protect and preserve assets of the estate are typical and

ordinary expenses of the estate. The TCC negotiated to obtain assignments of these estate assets for the future Fire Victim Trust, but is receiving stonewalling from all sides in its efforts to preserve the value of those estate assets, and ensure that the assignment of those estate assets is not compromised by the Plan confirmation process. All of these efforts are proper expenses of the estates.

Both letter misrepresent this Court's ruling when it denied the TCC's motion to establish dispute resolution procedures for its discovery. The Debtors' letter characterizes the Court's ruling as a denial of the TCC's discovery, "albeit primarily on procedural grounds." It was a procedural motion. It was not a request to take discovery, but a request to set up a procedure to resolve disputes and avoid dozens of motions to compel/quash, and the Court's statements at the hearing clearly redirected the TCC to utilize the Rule 2004 process. The TCC has embarked on that process, and should be permitted to complete that process so that all parties may engage in Plan confirmation with a full and fair opportunity to have taken discovery.

Sincerely,

*/s/ David J. Richardson*

David J. Richardson
*Counsel to the Official Committee of Tort Claimants*