Andrew I. Silfen (*pro hac vice*)
Beth M. Brownstein (*pro hac vice*)
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone:  (212) 484-3900
Facsimile:  (212) 484-3990
Email:  andrew.silfen@arentfox.com
    beth.brownstein@arentfox.com

Aram Ordubegian (SBN 185142)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA  94105
Telephone:  (415) 757-5500
Facsimile:  (415) 757-5501
Email:  aram.ordubegian@arentfox.com

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF BOKF, NA AS INDENTURE TRUSTEE TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER (I) APPROVING CASE RESOLUTION CONTINGENCY PROCESS, AND (II) GRANTING RELATED RELIEF.** |

**Hearing**
Date: April 7, 2020
Time: 10:00 a.m. (Pacific time)
Place: Courtroom 17
      450 Golden Gate Ave, 16th Floor
      San Francisco, CA 94102
      (Telephonic via CourtCall)

**Objection Deadline: April 5, 2020**
                    4:00 p.m. (Pacific time)

BOKF, NA ("BOKF"), in its capacity as successor indenture trustee (the "Trustee") under the Indentures dated as of (i) April 22, 2005 Supplementing, Amending and Restating the Indenture of Mortgage Dated March 11, 2004 (ii) November 29, 2017 and (iii) August 6, 2018, each as supplemented or amended, pursuant to which Pacific Gas and Electric Company issued the senior notes (the "Senior Notes"), by and through its counsel, Arent Fox LLP, submits this Limited Objection and Reservation of Rights in response to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Case Resolution Contingency Process, and (II) Granting Related Relief* [Docket No. 6398] (the "Motion").[1] In support of its hereof, BOKF states as follows:

## PRELIMINARY STATEMENT

BOKF, as Trustee for the holders of Senior Notes owed more than $17.525 billion, applauds the efforts of the Debtors and Governor's Office in finding common ground upon which these cases may continue to move towards the goal of a consensual plan of reorganization and emergence as soon as possible. BOKF also appreciates the Governor's leadership and interest in ensuring the safe and affordable supply of energy to Californians post-emergence. The significance of the milestone now before the Court however, does not modify the rights of BOKF and other unsecured creditors under the Bankruptcy Code to have a meaningful voice in the resolution of these cases and the future of the Debtors thereafter, particularly in a situation where these cases have either not confirmed by June 30th or gone effective by September 30th and are thus operating pursuant to the Case Resolution Contingency Process. Indeed, the enhanced risks to creditors associated with a substantial delay of the effective date of the current Plan or an

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion.

- 2 -

AFDOCS/21957184.6

alternative plan or sale transaction underscore the need for such unsecured creditor participation. Although BOKF does not construe the Debtors' Motion as an attempt to silence that voice or usurp its rights under the Bankruptcy Code, BOKF is concerned that certain provisions of the Case Resolution Contingency Process could be deemed or later interpreted to eliminate or restrict the ability of BOKF and unsecured creditors to protect their substantial interests, participate and be heard as contemplated by the Bankruptcy Code, or utilize available provisions or seek relief under the Bankruptcy Code.

In addition, BOKF is concerned that approval of the Case Resolution Contingency Process could be viewed as determining now that fixed extensions and/or absolute deadlines are appropriate. Such a determination seems premature. Similarly, BOKF is concerned that the Case Resolution Contingency Process could be construed to prequalify certain unknown bidders under bid procedures that have not yet been developed—let alone approved. Establishing the criteria for qualified bidders and other parameters for a sale process should be done as part of the bid procedures process based on the circumstances and justification described at such time. In a case as complex as this, it is important that the Court preserve sufficient flexibility to account for shifting dynamics and unknowns, including those that continue to unfold in connection with the public health crisis and uncertain economic fallout from the spread of COVID-19.

In sum, BOKF does not object to the creation of a contingency or alternative sale process but seeks clarification and, if necessary, revision of certain aspects of the Debtors' proposal, particularly to the extent it is susceptible to interpretations that minimize the role of BOKF and other unsecured creditors or that constrict the flexibility needed to navigate the coming months. BOKF represents one of the largest, if not the largest, creditors in these cases. The Bankruptcy Code requires that it be permitted to participate in any sale or alternative plan process. Moreover, BOKF believes that the other significant creditor constituencies, including the Creditors' Committee, the TCC and the Ad Hoc Group of Noteholders should participate in any sale or alternative plan process. BOKF presumes the Debtors and Governor do not intend to override or supplant the provisions of the Bankruptcy Code or restrict or impede BOKF or any other unsecured creditors in the future. Nonetheless, BOKF reserves all rights under the Bankruptcy Code to

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AFDOCS/21957184.6

participate and raise objections in connection with plan confirmation, bid procedures, and any sale without hinderance from a hypothetical contingency process that may be obsolete in 6 – let alone 18 – months.

**SPECIFIC CONCERNS AND ISSUES**

BOKF seeks clarification of the following provisions of the Case Resolution Contingency Process and objects to such provisions only to the extent they are inconsistent with the understanding set forth below:

1. **Delay between confirmation and the effective date.** BOKF understands the nature of the Debtors' Motion is to secure the Governor's support of the Plan by planning for contingencies. In this regard, BOKF has no objection to *the Governor* consenting to an effective date of the Plan six months after a confirmation date of June 30, 2020. *See* Motion, p. 9. But approval of the Case Resolution Contingency Process does not bind *creditors* or the Court to a six-month delay between a June 30 confirmation date and a December 31 effective date while creditors bear the execution risk. The Debtors have stated their goal is to emerge before the end of August. The Plan is structured to go effective by no later than September 2020. It is self-evident that execution and market risks are borne by the holders of the Senior Notes and other unsecured creditors and, thus, such an extended time period or delay may not be warranted or appropriate. It may be in the interests of the estates and unsecured creditors to pivot sooner rather than later. The Governor's agreement to permit even more time between confirmation and the effective date should not be endorsed by the Court or set in stone. Indeed, any agreement between the Debtors and Governor should not impede the rights of other stakeholders to seek relief (including accelerated relief) from the Court in the event of an undue delay or other circumstances justifying action; nor should it impede the ability of the Court to grant such relief if appropriate.

2. **Deadline for sale or effective date of a plan.** The Debtors and Governor have agreed to a deadline of September 30, 2021 to close on a sale or effectuate any plan. *See* Motion, p. 16. Again, to be clear, such agreement only affects the rights of the Debtors and Governor vis-à-vis the *Debtors*' efforts to effectuate a plan or close on a sale. It should not be construed as limiting the rights of other stakeholders or as granting the Debtors an 18-month exclusivity runway insulated from the challenges of creditors. Moreover, it is simply impossible to predict in the present climate whether such a deadline is appropriate or would even be met. If it is not met, there are no apparent benefits to the estate in barring creditors or other constituencies from later effectuating a plan or sale process. *See In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("debtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification"). It is in the interest of all stakeholders to preserve flexibility in the face of rapidly evolving economic realities. BOKF therefore does not understand this deadline to apply to any party other than the Debtors and, even then, does not preclude the Debtors from seeking leave from the Court for extensions (subject to the caveats regarding exclusivity noted below).

3. **Termination of exclusivity.** In the event the Sale Process is terminated or extended beyond September 30, 2021 without the Governor's consent, the Case Resolution Contingency Process provides that the exclusivity period will be terminated as to the Governor and its designee. *See* Motion, pp. 16-17. It is unclear what purpose this provision serves given that the Debtors will hit the 20-month cap on exclusivity one year earlier. *See* 11 U.S.C. § 1121(d)(2)(B). In any event, the expiration of exclusivity should not be limited to the Governor or some unknown and unidentified party, nor construed as limiting the ability of other constituencies to also file plans upon the termination of exclusivity or take positions if the Debtors seek to extend exclusivity beyond the current June 30, 2020 deadline. Indeed, exclusivity has already been terminated as to certain creditor groups and will be terminated as to others as of September 30, *2020* if the Debtors do not secure acceptance of their Plan. Accordingly, BOKF does not understand the Case Resolution Contingency Process to undermine the ability of the Court to authorize other parties to prosecute plans as permitted under the Bankruptcy Code.

4. **Prequalification of bidders.** The Case Resolution Contingency Process envisions the development of qualification requirements for potential bidders but does not spell out the specifics of those requirements other than that they "shall permit the state of California or a party supported by the state of California to qualify as a bidder." Motion, p. 17. BOKF reads this language to mean that the state or its designee will qualify as a bidder so long as it meets all of the other requirements set for bidders. Otherwise, this provision would pose a substantial risk to creditors and the estate because the successful bidder (qualified solely by virtue of state support) may not meet the financial and operational requirements otherwise deemed necessary to make a bid and meet its obligations to the estate. Nor should the criteria for determining a qualified bidder be fixed to ensure later that a selected bidder can satisfy such criteria if not in the best interest of the estates. Such a process could have unintended consequences. For example, the prequalification of a bidder selected by the State for a sale process overseen by the Governor-selected committee might give the misguided impression that the result is preordained and chill bidding as a result. To prequalify an unidentified and unknown bidder is extraordinary, unwarranted, and prejudicial to other stakeholders. BOKF presumes there will be a formal process for approval of bid procedures that will spell out the requirements for all bidders and provide an opportunity for input by creditors in a manner consistent with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

## RESERVATION OF RIGHTS

The provisions highlighted herein represent those lacking in clarity and therefore most susceptible to interpretations that would undermine the rights of BOKF and other creditors or predetermine and affect potential outcomes of these cases despite the need for a fluid and elastic process. By highlighting these provisions, BOKF does not waive its rights to object to other interpretations or applications of these or other provisions that would undermine the rights of

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AFDOCS/21957184.6

creditors under the Bankruptcy Code. As explained herein, BOKF does not understand the Case Resolution Contingency Process as an attempt to extinguish or replace the rights of creditors or to undermine the Court's ability to enforce those rights. Nonetheless, to the extent its terms may be construed otherwise, BOKF reserves all of its rights under the Bankruptcy Code to object to such treatment whether in connection with plan confirmation, the development of bid procedures, the conduct of a sale, the termination of exclusivity, or otherwise.

## CONCLUSION

BOKF objects to the Motion only to the extent that the Case Resolution Process would predetermine and prematurely fix a prejudicial, unwarranted, or unnecessary case process, or otherwise impair the rights of BOKF and other unsecured creditors under the Bankruptcy Code and other applicable law.

Respectfully submitted,

Dated: April 5, 2020     **ARENT FOX LLP**

By: */s/ Aram Ordubegian*
Aram Ordubegian (SBN 185142)
Andrew I. Silfen (*pro hac vice*)
Beth M. Brownstein (*pro hac vice*)

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee*