1  RICHARD A. MARSHACK, SBN 107291
   rmarshack@marshackhays.com
2  D. EDWARD HAYS, SBN162507
   ehays@marshackhays.com
3  LAILA MASUD, SBN 311731
   lmasud@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt, Irvine, CA 92620
5  Tel: 949-333-7777

6  Gerald Singleton (SBN 208783)
   gerald@slffirm.com
7  Gary LoCurto, SBN 270372
   glocurto@slffirm.com
8  SINGLETON LAW FIRM, APC
   450 A Street, 5th Floor
9  San Diego, CA 92101
   Tel. (619) 771-3473
10
   Attorneys for SLF Fire Victim Claimants
11

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION and<br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM) | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OPPOSITION TO MOTION BY THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO SUPPLEMENT THE COURT-APPROVED DISCLOSURE STATEMENT**<br><br>Date: April 7, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>[Re Dkt. No. 6636] |

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD

The Singleton Law Firm, APC ("SLF"), Marshack Hays LLP, and their co-counsel represent approximately 7,000 victims of the 2015 Butte Fire, the 2017 North Bay Fires, and the 2018 Camp

1

Fire ("SLF Fire Victim Claimants"). On Monday, April 6, at 7:36 a.m., the Official Committee of Tort Creditors ("TCC") filed a *Motion for Entry of an Order Directing Supplemental Disclosure in fhe Form of a Letter from fhe TCC* ("Motion"). The SLF Fire Victim Claimants object to this request and respectfully submit that the Motion should be denied for at least the following resons:

1. The TCC's request is untimely and, absent a motion under Rule 59, is an impermissible modification of the Disclosure Statement already approved by this Court;

2. The TCC does <u>not</u> speak for the majority of the Wildfire Victims;

3. The TCC's request, to the extent it is a request to approve dissemination of solicitation materials, should be denied because a solicitation does not require court authorization;

4. The TCC's request violates the RSA between the Debtors, the TCC and the Consenting Fire Claimant Professionals who represent the vast majority of the Wildfire Victims;

5. The ramifications of the TCC's request cannot be adequately analyzed and evaluated on such short notice. Given the risks, the court should deny the relief; and

6. The content of the proposed letter interferes with the bankruptcy principle that claimants should be free to exercise their voting rights after being provided a neutral statement approved by the Court. The Court should deny TCC's request that it put its "finger on the scale" by entering an order approving the proposed letter after voting as already commenced.

**OBJECTION**

**1.    The request is untimely and impermissible.**

The Debtors first circulated its proposed disclosure statement over a month ago. On March 9, 2020, the TCC, the Consenting Fire Claimant Professionals[1], and the Debtors conducted a mediation regarding outstanding issues. Following the mediation, Debtors filed an amended Proposed Disclosure Statement that evening. On March 10, 2020, the Court held a hearing regarding the remaining objections to the Proposed Disclosure Statement.

---

[1] The "Consenting Fire Claimant Professionals" consist of attorneys who represent well over 70% of the individual wildfire victim claimants.

On March 17, 2020, the Court entered an Order approving the Disclosure Statement. [Dk. No. 6353.]

Since that time, the Court-approved Disclosure Statement has been printed and disseminated to tens of thousands of fire victims. Voting on the Plan began on April 1, 2020, and tens of thousands of wildfire victim claimants have already voted.

The time to object to the Disclosure Statement was *before* it was approved by the Court and served on all creditors including the wildfire victim claimants. Because this request is not timely, it must be denied.

Moreover, if TCC wants the Court to reconsider its order approving Disclosure Statement, it must file a motion under Rule 9024 of the Federal Rules of Bankruptcy Procedure and satisfy its burden of proof why reconsideration is appropriate and attach evidence to support its contentions. The present Motion, filed 20 days after entry of the Order approving the Disclosure Statement, fails to meet the 14-day time period for seeking reconsideration under Rule 9023.

**2. The TCC does not speak for the majority of the wildfire victim claimants.**

The TCC consists of eight individuals, only six of whom are wildfire victim claimants whose claims are impaired. The other two TCC members are victims of the "Ghost Ship" fire whose claimsare not impaired under the plan because they agreed to limit their recourse to PG&E's insurance through the state court process.[2]

The TCC was one of two groups of claimants who signed the Restructuring Support Agreement ("RSA") with PG&E. The other group, the Consenting Fire Claimant Professionals, represent over 70% of all wildfire victim claimants in this case. Counsel for the TCC members

---

[2] After counsel for the Ghost Ship Claimants represented to the Court that (1) the Ghost Ship Claimants' cases could be completely satisfied by the available insurance, and (2) Claimants would not seek any amount in excess of available insurance, the Court granted the Ghost Ship Claimants' motion to lift the stay to allow their cases to proceed in state court. Accordingly, their claims are unimpaired.

3

represent significantly less than 10%. The majority of the claimants represented by the Consenting Fire Claimant Professionals do not support the Motion.[3]

Balloting has already occurred and most of the Consenting Fire Claimant Professionals have conducted online town hall meetings and have had other communications with their clients. Their clients have, to date, overwhelming voted in support of the plan. Further communications (with the imprimatur of this Court) will cause confusion and disruption.

Finally, there is a strong argument that the TCC has fulfilled its function and should be disbanded now that the voting has commenced. While that request is not being made at this time, the Court should consider its composition when evaluating the message it asks for approval to send.

3. **To the extent TCC is a requesting approval to circulate solicitation materials, such a request does not require Court approval and should be denied**.

Creditors, including committees, may send appropriate materials soliciting votes after a disclosure statement has been approved. 11 U.S.C. § 1125(b). Court authorization is not required. An excellent summary of the case law on solicitation is found in *In re Apex Oil Co.*, 111 B.R. 245 (Bankr. E.D. Mo. 1990). Assuming that the debtor's exclusivity period has expired, *soliciting parties need not obtain prior court approval of solicitation materials*. The only requirements are that:

(1) the information provided is truthful and absent of any false or misleading statements or legal or factual mischaracterizations;

(2) the information is presented in good faith; and

(3) the soliciting party does not propose or suggest an alternative plan which has yet to gain court approval or otherwise failed to travel through the appropriate legal channels, as dictated by the Bankruptcy Code.

*Id.*, at 249.

If the TCC wishes to send out any solicitation materials, it can do so within the limits of the law *and at its own peril*. However, the Court need not, and should not, enter an order approving such action.

---

[3] Attached as Exhibit A is a recent article in Bloomberg News setting forth the support for the plan among the claimants represented by the Consenting Fire Claimant Professionals.

4

There are compelling reasons for the Court to refrain from entering orders similar to the one requested, particularly when such issues and materials could have been heard concurrent with the hearings to approve the Disclosure Statement. Specifically, such order may lead to an inference that the Court endorses or approves the concerns TCC has identified in the proposed letter. Court approval may also inadvertently act to provide quasi-judicial immunity where no party should be immunized for the potentially catastrophic damages that could arise from defeating plan confirmation when it is already overwhelmingly on its way towards approval. The TCC may argue that the proposed letter is not a solicitation. Anyone reading the letter, however, would reasonably conclude that the intent is to dissuade a vote in favor of the plan.

**4. TCC's request violates the RSA between the Debtor and the Wildfire Victims.**

This Court approved the RSA between the Debtors and Wildfire Victims. The TCC was a signatory. Under the RSA, the TCC is obligated to support the plan. Mailing the letter will likely be viewed by the Debtors and most Consenting Fire Claimant Professionals as a breach of the RSA. If this Court grants the motion, it will later have to address the issue of whether the breach of the RSA was permissible because it was an action approved pursuant to court order.

**5. The TCC's request is risky and cannot be properly evaluated on such an expedited basis.**

The TCC's request is substantial and the ramifications simply cannot be adequately analyzed and evaluated on such short notice. A key issue, for example, is whether such a letter will affect the financing PG&E has in place. Given the unknown impact and the fact that the counsel for the vast majority of wildfire victims (and their professionals) have had no time to analyze its effects, the Court should deny the requested relief.

**6. The content of the proposed letter interferes with the principle that creditors should be free to exercise their voting rights after being provided a neutral statement approved by the Court.**

The content of the TCC's proposed letter is not neutral; it casts the Plan in a negative light and asks wildfire victims to refrain from voting until the TCC has had even more time to prepare

5

additional information. As such, it interferes with the individual wildfire claimants' free exercise of their voting rights. A neutral statement has already been approved by the bankruptcy court and disseminated to claimants. Voting has begun, and the deadline for impaired claimsants to vote on the Plan have already been established. Asking people to delay their votes to a time shortly before the deadline is not proper, and the Court should deny blessing the TCC's request for this interference with the voting process.

## CONCLUSION

For the reasons set forth above, the SLF Fire Victim Claimants respectfully request that the Court deny the TCC's motion to supplement the Court's approved Disclosure Statement.

Dated: April 6, 2020                    Respectfully submitted,

MARSHACK HAYS, LLP

By:     /s Richard Marshack
        Richard A. Marshack, Esq.
        D. Edward Hays, Esq.
        Laila Masud, Esq.

SINGLETON LAW FIRM, APC

By:     /s Gerald Singleton
        Gerald Singleton, Esq.
        Gary LoCurto, Esq.
Attorneys for SLF Fire Victim Claimants

# EXHIBIT A

**PG&E Plan Gaining Broad Support From Fire Victims, Lawyers Say**
2020-04-03

**By Scott Deveau**

(Bloomberg) -- Lawyers for more than half the wildfire victims who negotiated a $13.5 billion settlement with PG&E Corp. say their clients plan to vote overwhelmingly in favor of the bankrupt utility's reorganization plan.

The attorneys represent about 40,300 of the estimated 70,000 who lost homes, businesses and other property in blazes blamed on PG&E equipment. Members of the largest group, represented by the firm Watts Guerra LLP, have voted nearly unanimously in favor of the deal, with more than half of 18,000 total votes already cast, according to people familiar with the matter.

The vast majority of the second largest group, represented by the Singleton Law Firm, also solidly back the plan, although most haven't voted yet, a senior partner said. "So far, the response has been overwhelming," said the partner, Gerald Singleton, whose firm represents roughly 7,000 victims.

The preliminary tallies come as attorneys for a committee representing fire victims in the bankruptcy have asked a federal judge to modify the settlement because half of the payout will be funded with stock that's been battered by the coronavirus fallout. PG&E's Chapter 11 plan must win support from two thirds of wildfire victims who cast a ballot. Voting began this week and concludes May 15. PG&E did not immediately comment. The company's shares fell as much as 5.2% Friday.

Despite optimism among some lawyers, there are signs of dissension. At least three fire victims have resigned in protest from the 11-member committee appointed to represent those who lost homes and loved ones. One of them, Kirk Trostle, whose home burned in the 2018 Camp Fire, said he was stepping down so he could speak out against the settlement, calling it "flawed." (Read More: PG&E Fire Victims Ask Judge to Guarantee Value of Their Deal)

As voting continues, lawyers who still back the deal are clashing with those who don't, hosting competing conference calls and virtual town-hall meetings to win victims to their side. Earlier this week, the activist Erin Brockovich, who has worked with one of the firms Watts Guerra partnered with, wrote an op-ed for the San Francisco Chronicle urging victims to accept the deal, saying it's one of the largest settlements in history and that there's no other deal on the table.

Richard Bridgford, founding partner of Bridgford, Gleason & Artinian, represents 4,300 of the victims and said he believes his clients will vote overwhelmingly for the plan. Jim Frantz, an attorney with the Frantz Law Group, represents 5,000 victims and said almost all his clients support the deal. Many have been living in trailers since their homes were burned and want to get on with their lives, he said. "It's not a perfect solution," Frantz said. "But this is as perfect as it will get at this time."

Mike Danko, an attorney with Corey Danko Gibbs, said most of the 6,000 victims he represents support the plan too. There are no other alternatives on the table, which is why he is recommending they back it. A representative for the Watts group declined to comment.

Singleton said he's recommending his clients support the plan because he believes it will allow them to be paid out in six to 12 months. If it's rejected, it could take three to five years, he said. He said a "small but vocal" minority of victims oppose the plan in hopes of a better deal. "None of the alternatives are close to what this is offering," Singleton said. "There is no reason to believe that they would get more money if they rejected the deal."

--With assistance from Mark Chediak, Steven Church and David R. Baker.