William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Claimant and*

*Party to California Public Utilities Commission Proceeding I.19-09-016 to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19- 30088.*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    -and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>             Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**WILLIAM B. ABRAMS JOINDER TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' MOTION FOR ENTRY OF AN ORDER DIRECTING SUPPLEMENTAL DISCLOSURE IN THE FORM OF A LETTER FROM THE TCC [Dkt. 6636]**<br><br><u>Hearing:</u> Telephonic Appearances Only<br><br>Date: April 7, 2020 (requested)<br>Time: 10am PST<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA, 94102 |

**PLEASE TAKE NOTICE** that on April 6, 2020 the Official Tort Claimant Committee filed "The Official Committee of Tort Claimants' Motion for Entry of an Order Directing Supplemental Disclosure in the Form of a Letter from the TCC" **[Dkt. 6636].** Within that motion the TCC stated that "*At this point, the mediation is at an impasse*" and further states "*The TCC further requests that the supplemental statement be provided to the fire victim claimants so that they have all the information related to the plan. The TCC further requests that the solicitation agent be directed to serve the proposed letter on all Fire Victim Claimants immediately upon entering in the order on this motion.*"

**PLEASE TAKE FURTHER NOTICE** that I am in support of this supplement given that active and aggressive solicitation of votes is ongoing by proponents of the plan regardless of the omission of material facts and inadequate disclosure being represented to victims. There are robo-calls, text message campaigns, campaign events and other solicitation and advertising practices that paint a distorted view of the plan and its risks. This is particularly disconcerting in light of the impasse and lack of agreement around material issues of the plan and related victim settlement. Examples of these efforts can be viewed as Exhibit A and are attached to this joinder.

**PLEASE TAKE FURTHER NOTICE** that on April 5, 2020 I sent a letter to wildfire survivor groups urging victims to hold their vote until the end of the voting time-period given the material unresolved issues associated with the plan. The dollars, dates and rules associated with the trust are still unresolved and a premature vote based on misleading and incomplete information in manifestly unjust. I have attached my letter to the TCC, Fire Claimant Professionals and wildfire survivors as Exhibit B outlining a few of the many issues associated with the vote solicitation process.

**PLEASE TAKE FURTHER NOTICE** that in addition to providing the TCC supplement to the disclosure statement, I respectfully request that votes to date be withdrawn and that re-votes are requested. There has been a concerted effort from some parties to push for early voting before supplemental disclosures and other relevant information is brought to light. This heavily funded effort is undermining the due process rights of victims to push a particular agenda related to this case and should not be tolerated by the court.

Dated: April 6, 2020

                                                    Respectfully submitted,

                                                  /s/ William B. Abrams
                                                  William B. Abrams
                                                  Claimant

**Exhibit A**

The following are examples of ongoing solicitation for victim votes that do not adequately disclose plan benefits and risks for victims to make an informed vote:




# Exhibit B

The following is a letter that I sent to the TCC and wildfire survivor groups urging them to withhold their vote until material issues of the plan and associated trust agreement are resolved:

William B. Abrams
1519 Branch Owl Place
Santa Rosa, CA, 95409

RE: Case # 19-30088-DM

Tort Claimant Committee Members and Fire Claimant Professionals:

Given that my recent motion for reconsideration of the disclosure statement order [Dkt. 6488] was denied without a hearing, I wanted to send this note to you directly to implore you to reconsider the implications of the current course. I hope you agree that there is no chance the material issues that still need to be resolved (trust management, registration rights agreement, etc.) will be at all favorable for victims if the vote continues unobstructed by facts and full disclosure. I know from your recently filed motions that you agree that these yet to be resolved issues will have profound implications regarding the efficacy of the plan, settlement and degree to which it will be beneficial to victims. Given this, I do not understand how any TCC members or other victim attorneys could be in support of this approach of vote first and renegotiate after. Clearly, if this path continues to be pursued, you will have no leverage in negotiations with the debtors as the votes come in and certainly PG&E has not demonstrated that "doing the right thing" is part of their DNA. I know we can agree that the only reason they conceded to ensure the manslaughter penalty was not out of the victim trust was because of the public optics and not out of any sense of corporate morality. The argument that this $3.48M is relatively small compared to the overarching numbers involved misses the point. **The point is that without leverage we cannot assume the debtors will be motivated by any notion of fairness or justice**.

The June 30, 2020 AB1054 date which I worked to amend while the legislation was being drafted is certainly driving urgency now. However, we should make sure that this date puts pressure on PG&E and not on victims to concede major issues. **The added risks (COVID, market fluctuations, increased PG&E liabilities/debt, etc.) should provide more impetus to get these material items addressed first**. This notion described at prior hearings that later disclosures after a vote will provide an opportunity for a re-vote seems fanciful to me to provide the appearance of fairness without being practical. For certain, the victim trust and associated shares will be leveraged by the debtors to buffer the interests of the other entrenched investors. As you are aware, Mr. Johnson, CEO articulated under cross-examination at the CPUC that his expectation is that hedge funds and other entrenched investors will exit the stock after bankruptcy. Also, under cross examination Mr. Wells, CFO reluctantly agreed that the post-bankruptcy credit rating will be "junk". Given these facts, the debtors notion that they will be able to attract "traditional utility investors" after this stock exodus must either be a ploy or wishful thinking given that all indications are that this wildfire season and beyond will be a time period of a dramatic conflagration of risks. As an aside, I am not sure why TCC members signed an RSA that prevented them from cross-examining the PG&E executives in this forum which would have helped them gain ground for their clients but I am hoping this does not preclude you from leveraging the information that came out during these hearings.

Yes, the bondholders, subrogation claimants and other savvy investors know these facts and have positioned themselves accordingly given the risks. I know you agree that the victims should not be the only class of claimants left exposed to these risks. Given this shared sentiment, **I urge you to please resolve these items BEFORE you ask your clients to vote on the plan. Given that liquidity analysis, range of settlement and other usually disclosed information was not provided in the disclosure statement, it should be even more of an imperative to get these material issues resolved before the vote.** The disclosure statement in its current form reads as a one-sided document to encourage a YES vote and again I can only assume that the TCC concessions and lack of disclosure in this document is due to a premature execution of the TCC RSA well before the detrimental impacts of this plan came to light.

Despite the evidence to the contrary, I sincerely hope that PG&E is successful going forward. Like many of you, I have been working within the CPUC, through legislative efforts and in this proceeding to promote changes to their plan that will align their financial structures with their risks. I know we will all work over the remaining weeks to ensure there are substantial changes to the plan along these lines. That said, I know that some may be counting on the PG&E implosion this summer or fall as an opportunity for a public takeover or some other ownership structure that may or may not be beneficial to PG&E victims or the public. Despite the public safety risks this strategy portends, the assumption that victims will be "made whole" through that process seems similarly ill-conceived. As other investors cash out or are bought out through that process, it will not leave current or future PG&E victims in a good place. **These types of risks and others are why material issues like stock dilution, liquidation prioritization, stock sale restrictions and other matters MUST be resolved BEFORE the vote.** The fact that the Bondholder RSA was executed after the TCC RSA complicates these issues but it should NOT prevent the TCC from protecting victims through this deal. **Unless we have a solid executed agreement on these issues with the debtors, we must assume that PG&E will delay as long as possible any payments to victims and will do everything in their power to leverage the victim trust to mitigate their corporate risks and the risks to their more entrenched investors.** I believe these are huge risks that are being unfairly and unjustly passed along to victims. **However, even if you disagree with my assessment of the severity of these risks, you should still want these issues resolved BEFORE the vote. Regardless of whether or not you plan to urge your clients to vote for or against this plan, I urge you to hold the voting till the end of this time-period or until these issues are resolved (whichever comes first) so these issues have a chance of being resolved to the benefit of your clients.**

I appreciate and respect the work of the TCC, Fire Claimant Professionals and others in this case and hope that my engagement in this proceeding helps to support your work on behalf of victims. I only want to improve the plan so that victims are more financially secure going into this wildfire season and so that families like mine are less likely to be running from more PG&E caused wildfires. I appreciate that there are complexities regarding the negotiations not necessarily represented in this letter. Similarly, I would ask you to appreciate that there are complexities for your clients who are struggling to rebuild homes and lives that are not represented in the current path of this proceeding. I know and appreciate that any deal such as this contains compromises from all parties. That said, I believe it is safe to assume that a vote first and resolve material issues after approach is imprudent and will lead to detrimental implications. Thank you very much for considering this sentiment as you work on behalf of your clients.

Respectfully submitted,

/s/ William B. Abrams
William B. Abrams