**EXHIBIT B**

# THE OFFICIAL COMMITTEE OF TORT CLAIMANTS OF PG&E CORP. AND PACIFIC GAS AND ELECTRIC COMPANY

**TO**: Fire Victim Claimants of PG&E

**FROM**: The Official Committee of Tort Claimants of PG&E ("**TCC**")

**RE**: PG&E's Disclosure Statement and Plan[1]

---

Dear Fire Victim Claimants:

The TCC represents the interests of all fire victims in PG&E's bankruptcy cases~~.~~ (other than Governmental Units). The bankruptcy court approved or permitted the TCC sending this letter to you.

By now, you should have received a copy of PG&E's Disclosure Statement and Plan. If not, you will be receiving these materials shortly. You can also find the materials at https://restructuring.primeclerk.com/pge and at www.pgefiresurvivors.com. These documents ask you to vote on PG&E's Plan by May 15, 2020.

The report below explains problems and risks the TCC has identified with PG&E's Plan. The TCC intends to give PG&E until April ~~28~~25, 2020 to fix these problems. The TCC intends to provide a supplemental report to victims on or about ~~May 1~~April 26, 2020, explaining whether and how PG&E has fixed these problems.

**~~THE TCC RECOMMENDS THAT FIRE VICTIM CLAIMANTS DO NOT VOTE UNTIL AFTER VICTIMS RECEIVE THE TCC'S~~**

---

[1] On March 17, 2020 the bankruptcy court approved PG&E's Disclosure Statement, which explained PG&E's Plan [Docket Nos. 6340, 6353]. The Order and Disclosure Statement are available at https://restructuring.primeclerk.com/pge/. All capitalized terms in this letter have the same meaning as given in the Disclosure Statement, Docket No. 6353.

~~**MAY 1 SUPPLEMENTAL REPORT SO VICTIMS CAN DECIDE HOW TO VOTE THEN.**~~

**The TCC's View of the Current PG&E Plan**

1. In December 2019, the TCC, PG&E and certain Shareholder Plan Proponents entered into a settlement agreement named the Restructuring Settlement Agreement, or RSA, to resolve how Fire Victim Claimants would be treated and paid under a plan. The RSA provided $13.5 billion of cash and stock to the Fire Victim Trust. PG&E's multiple bankruptcy motions and press statements explain that "the Fire Victim Trust will be funded with $6.75 billion in cash and PG&E stock valued at $6.75 billion and the assignment of certain rights and causes of action." *See*, *e.g.*, PG&E's Estimation Motion,[2] PG&E's TCC RSA Approval Motion.[3]

2. The RSA required the parties to support PG&E's December 2019 plan of reorganization. However, since the TCC settled with PG&E, the TCC believes that PG&E changed the December 2019 plan. First, PG&E said it would obtain $9 billion of new equity cash instead of $12 billion as promised. Second, PG&E increased its total debt by $3.7 billion from the debt in the December 2019 plan. Both of those changes impact the value of PG&E's stock. PG&E and the Shareholder Plan Proponents amended that PG&E's entire debt and equity structure underlying the plan without seeking that consent. Furthermore, the coronavirus worldwide tragedy is devaluing the Fire Victim Claimants' share of PG&E's equity at an amount lower than the $6.75 billion value.

3. The RSA settlement contains a formula for calculating the value of stock. Under that formula, the value of the stock may change according to market conditions. The TCC requests PG&E to guarantee that the stock issued to the Fire Victim Trust will be "funded with $6.75 billion in cash

---

[2] Available at Docket No. 286, https://restructuring.primeclerk.com/pge/Home-DocketInfo?DocAttribute=4208&DocAttrName=CIVILDOCKETFORCASE3%3A19-CV-05257-JD.

[3] Available at Docket No. 5038, https://restructuring.primeclerk.com/pge/Home-DocketInfo ("The Fire Victim Trust shall be funded with an aggregate of $13.5 billion in value of cash and stock of reorganized PG&E Corp.").

and PG&E stock valued at $6.75 billion" as PG&E's estimation motion represents. To date, PG&E has declined.

4. Accordingly, the TCC believes that the changes to the plan, the coronavirus pandemic and the coronavirus' economic ripple effect present an unforeseeable and significant risk that the shares of stock will not have the value necessary to match the $13.5 billion that PG&E has stated would be available to pay Fire Victim Claimants. The TCC believes that the victims should not bear the economic risk or cost of the PG&E's change in the plan or the result the current economic turmoil.

5. The RSA settlement requires PG&E to agree to a registration rights agreement. This agreement would govern when the Fire Victim Trust and other shareholders may sell PG&E's stock in order to obtain the cash value of the stock. This agreement directly affects the Fire Victim Trust's ability to maximize the value of the stock at the time of sale. The TCC has requested PG&E to agree in writing that the stock being given to the Fire Victim Trust only be subject to reasonable restrictions but no worse off than another other party to a registration rights agreement. PG&E has not agreed to such a condition or term. Without a registration rights agreement, it is impossible to know whether the Fire Victim Trust will be able to sell the stock for cash in an amount consistent with the promise of the estimation motion and the Plan in any reasonable amount of time.

6. The RSA settlement requires PG&E to fund the cash and stock to the Fire Victim Trust before August 29, 2020, and the Plan requires PG&E to fund the cash and stock by December 31, 2020. The TCC has requested PG&E to state when they will fund the cash and stock. PG&E has not given the TCC any commitment that stock and cash will be funded before August 29, 2020, and PG&E's ability to fund the cash and stock before August 29, 2020 is uncertain.

7. The TCC contends that these facts establish that the Fire Victim Claimants' share of Plan value – less than $6.75 billion – is not fair, equitable or in good faith. The TCC also contends that if the Fire Victim Trust receives less than $6.75 billion of stock, that value would not be

consistent with the expectations of the victims and the statements that PG&E has made in its multiple bankruptcy filings and press statements in order to sell this settlement payment to the victims. The TCC believes that PG&E should amend the Plan so that it provides the Fire Victim Trust with "PG&E stock valued at $6.75 billion." However, to date, PG&E has declined. The TCC contends that these facts, among others, establish that PG&E and the Shareholder Plan Proponents are in breach of the RSA settlement.

9. If the RSA is determined to be invalid or unenforceable, Section 23 of the RSA provides that the parties must negotiate in good faith to modify the RSA to effect the original intent of the parties. As reflected in PG&E's motions and public statements, the intent of the parties is that "the Fire Victim Trust will be funded with $6.75 billion in cash and PG&E stock valued at $6.75 billion and the assignment of certain rights and causes of action." *See* PG&E's Estimation Motion. That $13.5 billion was the victims' material economic benefit of this settlement, as PG&E has represented to the courts and the public repeatedly. Section 20 of the RSA requires the parties to cooperate in carrying out that purpose.

10. Accordingly, pursuant to Sections 20 and 23 of the RSA, or alternatively Section 19 if necessary, the TCC requests PG&E and the Shareholder Plan Proponents to guarantee the $6.75 billion valuation at issuance of the stock in the Plan, and to agree to a reasonable registration rights agreement that protects the trustee's rights to liquidate the stock in a way that ensures that valuation. PG&E and Shareholder Plan Proponents have declined to provide those assurances to date. Accordingly, the TCC continues to demand that PG&E provide these assurances.

11. On February 27, 2020, a proposed decision was issued in the CPUC Safety proceeding that included the imposition of a $200 million fine on PG&E. PG&E appealed the fine but also argued, if imposed, it should be paid out of the Fire Victim Trust. The TCC filed in opposition to the fine and payment from the Fire Victim Trust. CPUC Commissioner Rechtschaffen filed for review of the decision; he agreed that the fine

should not be paid from the Fire Victim Trust and proposed that it be permanently suspended. The TCC will file comments supporting the Commissioner and protecting the Fire Victim Trust. A decision on the fine and the suspension is expected in the next several weeks.

12. One of the main benefits of the Plan is that it provides for compensation to Fire Victim Claimants sooner rather than later. If the Plan is rejected, it is unknown how long it will take to negotiate and obtain approval of another plan and what kind of recovery such a plan would provide for fire victims.

13. The TCC intends to give PG&E until April ~~28~~25, 2020 to fix these problems. The TCC intends to provide a supplemental report to victims on or about ~~May 1~~April 26, 2020, explaining whether and how PG&E has fixed these problems. **~~THE TCC RECOMMENDS THAT FIRE VICTIM CLAIMANTS DO NOT VOTE UNTIL AFTER VICTIMS RECEIVE THE TCC'S MAY 1 SUPPLEMENTAL REPORT SO VICTIMS CAN DECIDE HOW TO VOTE THEN.~~**

If you are represented by counsel and have questions about the voting process, please contact your lawyer. If you are not represented by counsel and have questions about the voting process, please contact Prime Clerk at 844.339.4217.

Sincerely,


The Official Committee of Tort Claimants

**THE TCC'S STATEMENT SHOULD NOT SERVE AS A SUBSTITUTE FOR EACH VICTIM'S OWN CAREFUL READING AND CONSIDERATION OF THE DISCLOSURE STATEMENT, PLAN, AND RELATED DOCUMENTS AND CONSULTATION WITH COUNSEL.**

**THIS LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE TCC'S VIEWS ON THE PLAN. THE TCC DOES NOT GUARANTEE ANY PARTICULAR RESULT IN THE PG&E BANKRUPTCY CASES.**

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE TCC.**