ASSIGNMENT OF CLAIM AGREEMENT

"**Seller**":
Rising Tree Wind Farm II LLC
c/o EDP Renewables North America LLC
808 Travis, Suite 700
Houston, TX 77002
Attention: Meredith Chambers/Bernardo Goarmon
Telephone: (713) 265-0350
Email: Meredith.Chambers@edpr.com/Bernardo.Goarmon@edpr.com

"**Buyer**" (together with Seller, each a "**Party**", collectively, the "**Parties**"):
JPMorgan Chase Bank, N.A.
500 Stanton Christiana Road, NCC5, Floor 01
Newark, DE 19713
Attention: Brian M. Ercolani
Telephone: 302-634-1486
e-mail address: CLS_Notices@jpmchase.com

DATE OF THIS AGREEMENT:     April 7, 2020

"**Debtor**":                Pacific Gas and Electric Company

"**Bankruptcy Case**":       19-30089

"**Bankruptcy Court**":      United States Bankruptcy Court for the Northern District of California

"**Petition Date**":         January 29, 2019

WHEREAS, Seller has been granted an allowed claim in the amount of $72,932.88 (the "**Claim Amount**") pursuant to the *Order Granting Debtors' First Omnibus Report and Objection to Claims Asserted Pursuant to 11 U.S.C. §503(b)(9)* entered on August 15, 2019 [ECF No. 3564] and attached as <u>Exhibit B</u> hereto (the "**Order**") in connection with certain accounts receivable owed by the Debtor to the Seller (the "**Accounts Receivable**");

WHEREAS, Seller wishes to sell to Buyer and Buyer wishes to buy from Seller the Assigned Rights (as set forth and defined below) pursuant to this Assignment of Claim Agreement (this "**Agreement**").

NOW THEREFORE, Buyer and Seller agree as follows:

1. Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer all of Seller's rights, title and interest in, to and under, or arising out of, in connection with and/or related to:

(a) the claims (including without limitation "claims" as defined in Section 101(5) of Title 11 of the United States Code, as amended (the "**Bankruptcy Code**")) of Seller including, without limitation, any and all right to receive all amounts paid or payable in respect of such claims (including principal, interest, penalties, expenses, fees, damages and any other amounts, and in each case whether accruing prior to, on or after the date of this Agreement), and all related accounts, voting rights and other rights and interest of Seller in, to and under and/or arising out of, in connection with and/or related to the Claim Amount (collectively, the "**Claim**");

(b) the proof of claim identified as Proof of Claim No. 2485 (the "**Proof of Claim**") allowed in the amount of the Claim Amount, including without limitation, all rights to lodge, withdraw, supplement or amend the Proof of Claim and any supporting documentation relating to the Claim in the Bankruptcy Case;

(c) all causes of action, claims, lawsuits, voting and other rights, whether against Debtor or any other party, in connection with the Claim and/or any of the foregoing, including, without limitation, under or in connection with the Claim, or arising under any law;

(d) all cash, securities, trust assets, amounts, and assets and other property distributed or received or payable on account of, or exchanged in return for, any of the foregoing; and

(e) all proceeds of the foregoing;

all of the foregoing, whether against the Debtor, any affiliate of the Debtor, any guarantor or third party in respect thereof, being collectively referred to herein as the "**Assigned Rights**". Buyer is not assuming, and will not acquire, any obligations or liabilities of any kind owing to Debtor or any other party with respect to, under or in connection with the Assigned Rights and/or the Accounts Receivable. This assignment shall be deemed an absolute and unconditional assignment of the Assigned Rights for the purpose of collection and satisfaction and shall not be deemed to create any debtor-creditor relationship or be construed to be a loan or a financing. From and after the date hereof, Buyer shall be deemed owner of the Assigned Rights, and shall be entitled to identify itself in the Bankruptcy Case for all purposes as the owner of the Proof of Claim and the Assigned Rights. For the avoidance of doubt, Buyer shall be entitled to all amounts in excess of the Claim Amount without additional consideration, solely to the extent arising out of the Claim.

2. The consideration payable by the Buyer to the Seller for the Assigned Rights, the receipt and sufficiency of which is hereby acknowledged by the Seller, is the purchase price set forth in the letter agreement between Seller and Buyer that specifies the calculations for determining the purchase price with respect to the Claim (such purchase price, the "**Purchase Price**", and, such letter, the "**Purchase Price Letter**"). On the date where all of the conditions in Section 3 of this Agreement are satisfied (the "**Closing Date**"), Buyer shall pay to Seller by wire

transfer to Buyer's account, the Purchase Price specified in the Purchase Price Letter. If Buyer fails to timely pay the Purchase Price in accordance with the Purchase Price Letter, this Agreement shall immediately terminate and any assignment made hereunder shall be null and void.

3. Buyer's obligation to pay the Purchase Price to Seller and to acquire the Assigned Rights on the Closing Date is subject to all of the following, unless waived by Buyer in its sole discretion: (a) Seller's representations and warranties being true and correct on the date of this Agreement and on the Closing Date, (b) Seller having complied with its covenants required by this Agreement to be complied with by it on or before the Closing Date, and (c) Buyer having received this Agreement, the Purchase Price Letter and the Evidence of Transfer substantially in the form attached hereto as Exhibit A (the "**Evidence of Transfer**" and, together with this Agreement and the Purchase Price Letter, each an "**Assignment Document**" and, collectively, the "**Assignment Documents**"), in each case duly executed on behalf of Seller. Seller's obligation to sell, transfer, assign, grant and convey the Assigned Rights to Buyer on the Closing Date is subject to the following, unless waived by Seller in its sole discretion: (i) Buyer's representations and warranties being true and correct on the date of this Agreement and on the Closing Date, (ii) Buyer having complied with its covenants required by this Agreement to be complied with by it on or before the Closing Date, (iii) Seller having received the Assignment Documents duly executed on behalf of Buyer, and (iv) Seller having received payment of the Purchase Price from Buyer.

4. Excluded Information

Each party hereto:

(a) acknowledges that (i) the other Party currently may have, and later may come into possession of, information relating to the Assigned Rights, the Debtor or the Debtor's affiliates, or the status of the Bankruptcy Case that is not known to it and that may be material to a decision to buy or sell the Assigned Rights (the "**Excluded Information**"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Assigned Rights hereunder without receiving the Excluded Information and (iii) the other Party shall have no liability to it, and each Party waives and releases any claims that it might have against another Party or such other Party's officers, directors, employees, agents and controlling persons and their respective successors and assigns, whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; provided, however, that each Party's Excluded Information shall not and does not affect the truth or accuracy of such Party's representations or warranties in this Agreement; and

(b) it is aware that the Purchase Price may differ both in kind and amount from any distributions ultimately made pursuant to any plan of reorganization confirmed by the Bankruptcy Court in the Bankruptcy Case.

5. Representations, Warranties and Covenants

(a) Mutual Representations, Warranties and Covenants of Seller and Buyer. Each of the Seller and Buyer hereby represents, warrants and covenants to each other Party, and to such other Party's successors and assigns, as of the date hereof and the Effective Date that:

(i) it is duly organized and validly existing under the laws of its jurisdiction of organization, in good standing under such laws, and has full power and authority and has taken all action necessary to execute and deliver each Assignment Document and to perform its obligations under each Assignment Document and to consummate the transactions contemplated by each Assignment Document;

(ii) the making and performance by it of each Assignment Document does not and will not violate any law or regulation of the jurisdiction under which it exists, any other law applicable to it or any other agreement to which it is a party or by which it is bound;

(iii) each Assignment Document has been duly and validly authorized, executed and delivered by it and is legal, valid, binding and enforceable against it in accordance with its terms except that the enforceability may be limited by bankruptcy, insolvency or laws governing creditors rights;

(iv) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required to be obtained or made by it as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein (other than any notice, consent, approval or action already given, obtained or taken);

(v) it is an "accredited investor" as such term is defined in Regulation D under the Securities Act of 1933, as amended; and

(vi) it has adequate information concerning the business and financial condition of the Debtor, the Assigned Rights and the status of the Bankruptcy Case in order to make an informed decision regarding the purchase and sale of the Assigned Rights, and it has independently and without reliance on any other Party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities in this Agreement.

(b) <u>Representations and Warranties of Seller</u>. Seller hereby further represents, warrants and covenants to Buyer and Buyer's successors and assigns that, as of the date of this Agreement and the Closing Date:

(i) The Proof of Claim has not been amended or withdrawn and no rights thereunder have been waived;

(ii) The Claim has been allowed by Final Order (as defined below) pursuant to ECF No. 3564 entered on August 15, 2019 in the amount of $72,932.88 against the Debtor;

(iii) The Claim Amount is not subject to setoff and is an allowed administrative claim under Section 503(b)(9) of the Bankruptcy Code claim against the Debtor in the amount of $72,932.88;

(iv) Seller is the sole legal and beneficial owner of, and has good legal, beneficial and marketable title to, the Assigned Rights, free and clear of (A) any legal, regulatory or contractual restriction on transfer or resale and (B) any pledge, lien, claim, option, subordination, setoff, right of recoupment, security interest, participation, hypothecation, factoring

agreement or encumbrance of any type or kind (collectively, any "**Liens**") and will transfer to Buyer good and marketable title to the Assigned Rights, free and clear of any Liens;

(v) Seller (A) has neither previously sold, conveyed, transferred, assigned, participated or otherwise encumbered or created or suffered a Lien on the Assigned Rights, nor, except as set forth in this Agreement, agreed to sell, convey, transfer, assign, participate or otherwise encumber or create or suffer a Lien on the Assigned Rights, in either case in whole or in part, to any person or entity, (B) is the original creditor of the Debtor in respect of the Accounts Receivable and the Assigned Rights; (C) has no other interest in any claims against the Debtor or any of its affiliates, and (D) owes no amount, asset or liability to the Debtor or any of its affiliates;

(vi) Seller has not engaged, and shall not engage, in any act, conduct or omission, or had (or shall have), any relationship with the Debtor or any of its affiliates that will reduce or impair or otherwise adversely affect the Assigned Rights or result in Buyer receiving proportionately less in payments or distributions under, or less favorable treatment (including the timing of payments or distributions) for the Assigned Rights than is received by other holders of unsecured claims against the Debtor generally;

(vii) Seller has obtained all consents and approvals pertaining to the Assigned Rights;

(viii) the Assigned Rights are not subject to any Lien; no objection to the Claim or the Assigned Rights has been made or, to the knowledge of the Seller, threatened, and there are no preference actions or fraudulent conveyance claims against Seller or with respect to the Assigned Rights, and no legal or equitable defenses, counterclaims or claims or offsets, disputes, objections, setoffs, delay, disgorgement, reductions, rejections, recoupments, impairments, avoidances, disallowances or subordinations (collectively, "**Disallowance**") have been or may be validly asserted by or on behalf of the Debtor or any of its affiliates or any other party that would reduce the amount or value of the Assigned Rights or would affect their validity or enforceability or otherwise be adverse to the Assigned Rights;

(ix) no payment or distribution has been received by or on behalf of Seller in full or partial satisfaction of the Assigned Rights;

(x) no actions under Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code have been asserted against Seller or the Assigned Rights, and no legal or equitable defenses, counterclaims, setoffs or offsets have been asserted by or on behalf of the Debtor to affect the validity or enforceability of the Assigned Rights;

(xi) Seller does not, and did not on the Petition Date, hold any funds or property of, or owe any amounts or property to, Debtor or any of its or their affiliates and has not effected or received, and shall not effect or receive, the benefit of any setoff against Debtor or any of its or their affiliates;

(xii) Seller is not, and has never been, an insider within the meaning of 11 U.S.C. Section 101(31) and is not, and has not been, a member of any official or unofficial committee appointed in the Bankruptcy Case;

(xiii) to the best of Seller's knowledge, there are no other contracts, documents, agreements, stipulations or orders that could materially or adversely affect the Assigned Rights or Buyer's rights under this Agreement;

(xiv) Seller has not received any notice, and to the best of its knowledge after due inquiry, is not aware, that the Assigned Rights, any of the Accounts Receivable or any portion thereof is void, voidable or unenforceable or subject to any Disallowance;

(xv) Seller is not an "affiliate" of Debtor or any of its affiliates (as such term is defined in either Section 101(2) of the Bankruptcy Code or Rule 144 of the Securities Act of 1933, as amended);

(xvi) The Claim is an allowed claim against the Debtor in an amount not less than the Claim Amount;

(xvii) Seller shall not amend, modify, terminate, waive, supplement, revoke, submit or withdraw the Proof of Claim without the prior written consent of Buyer;

(xviii) no broker, finder, agent, or other entity acting on behalf of Seller is entitled to any commission or fee for which Buyer could be responsible; and

(xix) either (A) no interest in the Assigned Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (B) the transaction exemption set forth in one or more PTEs (as defined below), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Assigned Rights. As used herein, "**Benefit Plan**" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("**ERISA**"), a "plan" as defined in Section 4975 of the Internal Revenue Code of 1986, as amended (the "**Code**") or any entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan." and "**PTE**" means the prohibited transaction class exemptions issued by the U.S. Department of Labor.

(c) Representations, Warranties and Covenants of Buyer. Buyer further represents, warrants and covenants to Seller and Seller's successors and assigns that, as of the date of this Agreement and as of the Closing Date:

(i) Buyer is a U.S. person for U.S. federal income tax purposes and will furnish to Seller such forms, certifications, statements and other documents as are reasonably necessary and as Seller may reasonably request from time to time to obtain any applicable reductions of or exemptions from the withholding of any tax imposed by any jurisdiction or to enable Seller to comply with any applicable laws or regulations relating thereto;

(ii) Buyer has (A) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein; (B) agreed to the Purchase Price, and the pricing details set forth in the Purchase Price Letter, based on its own independent

investigation and credit determination; and (C) not relied on any representation or warranty made by Seller, except as expressly set forth herein;

(iii) Buyer is entitled to receive any payments and distributions to be made to it hereunder without the withholding of any tax and will furnish to Seller such forms, certifications, statements and other documents as Seller may reasonably request from time to time to evidence Buyer's exemption from the withholding of any tax imposed by any jurisdiction or to enable Seller to comply with any applicable laws or regulations relating thereto;

(iv) Either (A) no interest in the Assigned Rights is being acquired by or on behalf of an Entity that is, or at any time while the Assigned Rights are held thereby will be, one or more Benefit Plans or (B) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Assigned Rights and the exercise of Buyer's rights thereunder.

6. Seller agrees that in the event Seller shall receive any distributions or any of the Assigned Rights or notices, documents, correspondence or other information or materials with respect to the Assigned Rights, Seller shall accept the same and shall hold the same in trust in a segregated account in the name of and for the sole benefit of Buyer, and Buyer shall have a proprietary interest in such Assigned Rights and distributions. Seller shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind) within five (5) business days in the case of cash (a "**Cash Distribution**") and within ten (10) business days in the case of a non-Cash Distribution, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notice from the Bankruptcy Court or the Debtor or their respective representatives in respect of the Assigned Rights, Seller shall promptly deliver the same to Buyer. In the event that all or any portion of the distributions on account of the Assigned Rights are not assignable by Seller to Buyer, then Seller grants to Buyer a 100% participation interest in the Assigned Rights and such distributions and shall hold such Assigned Rights and distributions in a segregated account in trust, in accordance with the provisions of this Agreement and applicable law. If Seller fails to make a payment or distribution to Buyer within the time period specified in this Agreement, Seller shall pay such amount due together with interest on it for each day from (and including) the date when due to (but excluding) the date when actually paid at a rate per annum equal to overnight LIBOR plus 5.00%.

7. Seller hereby irrevocably appoints Buyer as its true and lawful attorney with respect to the Assigned Rights and authorizes Buyer to act in Seller's name, place and stead, to negotiate, demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable for or on account of the Assigned Rights, and Seller grants unto Buyer full authority to do all things necessary or advisable regarding the Assigned Rights and Seller's rights thereunder or related thereto pursuant to this Agreement, including to vote and to take all actions relating to the Accounts Receivable and the Assigned Rights and to file all proofs of claim and filings creating or regarding security interests. If for any reason, Seller (and not Buyer) is

entitled to exercise any such rights after the date hereof (including, without limitation, the right to vote), Seller shall exercise such rights in a timely manner in accordance with Buyer's instructions, except as prohibited under any applicable law, rule or order. Seller agrees that the powers granted by this Section 7 are discretionary in nature and exercisable at the sole option of Buyer. Buyer shall have the sole right to take any action and/or make any omission, including with respect to any defense or enforcement of the Assigned Rights. Seller and Buyer expressly agree that Buyer shall have no obligation to take any action to prove, defend, demand or take any action or make any omission with respect to the Assigned Rights or otherwise in the Bankruptcy Case. In the event an objection to the Claim is received by Seller, Seller shall immediately notify Buyer in writing of such objection and the nature of such objection. Seller shall not compromise or settle the Assigned Rights or change the Claim Amount or take any action or, to the best of its knowledge, make any omission, with respect to any of the Assigned Rights, without the prior written consent of Buyer. Seller shall use its commercially reasonable efforts to assist and cooperate with Buyer in the defense and enforcement of the Assigned Rights.

8. Seller agrees to indemnify, defend and hold Buyer and its affiliates and its and their officers, directors, employees, and controlling persons and their respective successors and assigns (collectively, the "**Buyer Indemnitees**") harmless from and against any and all expenses, penalties, losses, claims, damages, suits, proceedings, objections and liabilities that are incurred by or threatened against the Buyer Indemnitees, including without limitation, reasonable attorneys' fees and expenses and costs incurred with in defending any such claims by third parties or in enforcing this Agreement directly in an action against the Seller, caused by, or in any way resulting from or relating to the breach of any of Seller's representations, warranties, agreements or covenants set forth in this Agreement.

9. Buyer agrees to indemnify, defend and hold Seller and its affiliates and its and their officers, directors, employees, and controlling persons and their respective successors and assigns (collectively, the "**Seller Indemnitees**") harmless from and against any and all expenses, penalties, losses, claims, damages, suits, proceedings, objections and liabilities that are incurred by or threatened against the Seller Indemnitees, including without limitation, reasonable attorneys' fees and expenses and costs incurred with in defending any such claims by third parties or in enforcing this Agreement directly in an action against the Buyer, caused by, or in any way resulting from or relating to: the breach of any of Buyer's representations, warranties, agreements or covenants set forth in this Agreement.

10. Buyer may at any time participate, transfer and/or assign all or any portion of the Assigned Rights, together with all rights, title and interests of Buyer in and to this Agreement including the representations, warranties and covenants contained herein, without the consent of, or notice to, Seller. Seller may not assign, transfer or participate its rights and/or obligations under this Agreement without the prior written consent of the Buyer. All representations, warranties, covenants, indemnities and agreements contained herein shall survive the execution and delivery of this Agreement, any due diligence performed by Buyer, and the purchase and sale of the Assigned Rights. This Agreement shall be binding upon, enforceable by, and inure to the benefit of the successors and assigns of each party hereto; provided, however, that the now existing and hereafter arising obligations of Seller contained herein shall continue and remain in full force and effect and binding on Seller until fully paid, performed and satisfied by Seller.

11. **This Agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions. Each Party hereto consents to service of process by certified mail at its address listed above. Each Party hereto irrevocably and unconditionally waives its right to trial by jury and consents to the exclusive jurisdiction, including personal jurisdiction and venue, of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement. In any action or proceeding brought or defended under the terms of this Agreement, the prevailing party shall be entitled to be reimbursed for any and all costs and expenses, including reasonable attorneys' fees, incurred in connection with such action or proceeding.**

12. This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument. Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart. No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party hereto from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall effective only in the specific instance and for the specific purpose for which given.

13. Seller agrees to (i) execute and deliver all such instruments and documents (including, without limitation, any supporting documents evidencing the Assigned Rights), and to promptly take all such action as Buyer may reasonably request, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement and to cause Buyer to become the legal and beneficial owner and holder of the Assigned Rights, (ii) cooperate with and assist Buyer in enforcing the Assigned Rights, (iii) cause its subsidiaries and their agents and professionals to cooperate and assist, if necessary or advisable, with Buyer, (iv) at all times retain and protect (and shall direct its professionals and agents to retain and protect) and shall deliver to Buyer promptly after its request true and complete copies of any relevant documents in its possession or that can reasonably be obtained by it, and (v) Seller shall cooperate with and assist Buyer in connection with any of the foregoing, including in connection with any proceeding, deposition and/or investigation in respect thereof. From and after the date hereof, Buyer shall have sole authority but not the obligation to exercise all voting and other rights and remedies in respect of the Assigned Rights. Notwithstanding the preceding sentence, if for any reason, Seller (and not Buyer) is entitled to exercise any such rights after the date hereof (including, without limitation, the right to vote), Seller shall exercise such rights in a timely manner in accordance with Buyer's instructions, except as prohibited under any applicable law, rule or order.

14. Seller and Buyer agree to maintain the confidentiality of this Agreement, except (i) to the extent (a) required by applicable laws, rules or regulations or by the order of any court or other governmental authority of competent jurisdiction or (b) requested by any regulatory or governmental body or agency with jurisdiction over it or purporting to have jurisdiction over it or (ii) disclosures to its own affiliates, owners and equity investors and its and their employees, managers, partners, professionals, financing sources and/or representatives; provided that Buyer may disclose this Agreement and the transactions contemplated hereby to the Debtor and/or any of its affiliates and/or in connection with enforcing or implementing this Agreement or the Assigned Rights and/or may disclose this Agreement (but not the Purchase Price (as defined in the

Purchase Price Letter) or Purchase Rate (as defined in the Purchase Price Letter)) to potential purchasers, transferees or assignees who agree to be bound by confidentiality provisions no less restrictive than those contained in this Agreement. This provision supersedes and replaces any prior confidentiality agreements regarding any of the Assigned Rights and/or the Claim.

15. Seller hereby waives any notice or hearing requirements imposed by Bankruptcy Rule 3001(e) or otherwise, and consents to the substitution of Buyer for Seller for all purposes in the Bankruptcy Case with respect to the Assigned Rights, including without limitation, for voting and distribution purposes. Seller grants Buyer the right to make any corrections to the Evidence of Transfer as may be necessary or appropriate to effect assignment of the Assigned Rights and/or the intent of this Agreement. Each of Seller and Buyer agree that if any of the provisions of this Agreement becomes invalid, illegal or unenforceable in any respect under any of the Bankruptcy Case, the validity, legality and enforceability of the remaining provisions herein, including but not limited to the Assigned Rights, shall not in any way be affected or impaired.

16. The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either party hereto by virtue of the authorship of any provision of this Agreement.

17. Each payment to be made by either Party hereunder shall be made without set-off, counterclaim or deduction of any kind, except as required by law, rule or regulation.

18. This Agreement, together with any schedules and exhibits hereto, constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior agreements (including confidentiality agreements), understandings or representations pertaining to the subject matter hereof, whether oral or written. There are no warranties, representations or other agreements between the Parties in connection with the subject matter hereof except as specifically and expressly set forth herein. The headings and captions herein are provided for reference and convenience only. They shall not be considered part of the Agreement and shall not be employed in the construction of the Agreement.

19. All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth herein, or such other address as may be furnished hereafter by notice in writing. All payments by Seller to Buyer and Buyer to Seller under this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds to Seller and Buyer, as applicable, in accordance with the wire instructions specified in Purchase Price Letter.

20. Notwithstanding anything to the contrary in this Agreement, to the extent that the assignment contemplated hereby is deemed not allowed or otherwise voided by a court or other governing body (and Buyer has remitted payment of the Purchase Price to Seller), then automatically and without further action by any Party hereto, Seller will be deemed to have granted and sold to Buyer, and Buyer will be deemed to have purchased and acquired from Seller, an undivided 100% participation interest in, to and under the Claim and the other Assigned Rights

(the "**Participation**") and the terms and conditions hereof shall be construed accordingly, modified mutatis mutandis. In connection with a Participation, Seller shall hold record title to the Claim and the other Assigned Rights for the sole benefit of the Buyer and Seller will have no beneficial or equitable interest in the Claim and the other Assigned Rights. It is the express intent of the Parties that in the event of a deemed sale of a Participation by Seller to Buyer hereunder, such sale will be treated for all purposes as a true sale by Seller to Buyer of the Participation.

*[Signature page follows]*

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement by their duly authorized representatives as of the date first written above.

SELLER:

RISING TREE WIND FARM II LLC

By: ___*Bernardo Goarmon*___
Name:
Title:

By: ___*S−PL*___
Name:
Title:

BUYER:

JPMORGAN CHASE BANK, N.A.

By: _____
Name: Brian M. Ercolani
Title: Operations Manager