Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:   415.659.2600
Facsimile:   415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.820.8800
Facsimile:   310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br>      -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br>                                  **Debtors.** <br><br> ☐ Affects PG&E Corporation <br><br> ☐ Affects Pacific Gas and Electric Company <br><br> ■ Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **OPPOSITION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO SECURITIES PLAINTIFFS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUR-REPLY** <br><br> **Hearing** <br> Date:    April 14, 2020 <br> Time:    10:00 a.m. (Pacific Time) <br> Place:   Courtroom 17 <br>               450 Golden Gate Ave., 16th Fl. <br>               San Francisco, CA 94102 |

The Official Committee of Tort Claimants (the "**TCC**") hereby files this opposition to the Securities Plaintiffs' Administrative Motion for Leave to File Sur-Reply (the "**Motion**") filed by the Former Shareholders who are defined in their Motion as the Securities Plaintiffs.[1]

The Motion asks this Court for leave to file a sur-reply to the TCC's motion for standing to file a declaratory/injunctive relief complaint [Dkt. No. 5972] (the "**Motion for Standing**") on the grounds that the TCC allegedly introduced new arguments in its reply brief (the "**Reply**"). This is incorrect. Both of the arguments that the Former Shareholders ask for leave to brief in a sur-reply were fully addressed in the TCC's Motion for Standing.

## DISCUSSION

### 1. The Priority of Unsecured Creditors Over Securities Claimholders

The Motion argues that the TCC failed to argue in its Motion for Standing that shareholder plaintiffs are subordinated to Fire Victims. The TCC argued in the Motion for Standing that:

> It would violate the absolute priority rule in chapter 11 to permit former shareholders to recover on a theory that their stock price was reduced as an incidental result of the billions of dollars in damages caused to wildfire victims, and asserted against the Debtors in these chapter 11 Cases.

Motion for Standing, p. 2:7-10. The TCC also argued in the Motion for Standing that any recovery of insurance proceeds by Former Shareholders would violate the absolute priority rule:

> Any settlement of the Pending Action—which is really a derivative action—that pays insurance proceeds to Former Shareholders without the TCC's consent instead of preserving those policies for acknowledged derivative actions that are being assigned to the Fire Victim Trust is a violation of the absolute priority rule. It is critical for the TCC to be able to obtain standing at this time to assert and protect the rights of the estate in the Assigned Claims that are intended to provide a further recovery for Fire Victims, and the insurance policies that cover those Assigned Claims.

Motion for Standing, p. 9:9-14.

The Draft Complaint, which was <u>Exhibit B</u> to the Motion for Standing [Dkt. 5972-2] (the "**Draft Complaint**"), further argued the same position:

---

[1] The TCC does not oppose the companion motion for shortened time filed by the Former Shareholders.

> These shareholders' efforts to recover their stock loss as a direct claim in the Pending Action is a violation of the absolute priority rule, and would improperly allow a recovery for shareholders at the expense of unsecured creditors.

See Draft Complaint, ¶ 2; and

> The Former Shareholders' efforts to litigate the derivative Shareholder Claims for their own benefit threaten to deprive the Fire Victim Trust, and therefore the Fire Victims, of substantial recoveries that it is their right to receive, in violation of the absolute priority rule.

See Draft Complaint, ¶ 65.

The Motion for Standing is simply that—a motion for standing—it is not the pleading in which all arguments must be briefed in substantial detail or even show a prima facie case. The TCC has argued a colorable claim, which is the general principle understood by all bankruptcy lawyers that a shareholder's claim arising from the sale of stock is subordinated to the rights of unsecured creditors. The Former Shareholders failed to notice or appreciate the argument, but neither is grounds for another round of briefing.

### 2. The Invalidity of the Securities Claims

The Motion claims that the TCC failed to argue in its Motion for Standing that the Shareholder Complaint does not present valid, direct securities claims.

The <u>primary</u> argument in the Motion for Standing is that the Shareholder Complaint does not present valid, direct securities claims: that once the invalid allegations of false statements, allegedly separate damages and a putative class are disregarded because they are thoroughly baseless, the pleading that remains is a classic derivative complaint for mismanagement—just like all the pending Self-Described Derivative Actions it was based on.

The Motion for Standing started with the following argument, pointing out in the Introduction that the Former Shareholders' damages theory is not a valid damages theory for direct shareholder claims:

> Under binding Ninth Circuit and California Supreme Court law, a shareholder only has a direct securities claim against a corporation and its officers and directors if the "gravamen of the complaint" shows that the shareholder experienced damages that are "independent" of any damages to the company. If the damages are "incidental" to damages to the company, such as a drop in stock price that takes place because of an event that

> exposes the company to massive liabilities, then the claims are derivative claims. On its face, the complaint filed in the Pending Action purports to assert direct shareholder claims for "false statements" made by the Debtors and their officers and directors. But all of the damages allegations that are pleaded in the Pending Action, and the companion Securities POCs, state incidental, derivative damages.

Motion for Standing, p. 3:27 – 4:6. The Motion for Standing went on to argue this point in more detail:

> If the Former Shareholders could plead a separate theory of damages, they would have done so in their Shareholder Complaint, instead of pleading the same theory of damages that is pleaded in each of the Derivative Shareholder Actions.
>
> Instead, after alleging twenty pages of stock loss following mounting wildfire liabilities asserted against the Debtors, the Former Shareholders summarize their damages as damage to the corporation's overall market value, and incidental damages to shareholders:
>
>> As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Lead Plaintiff and other Class members have suffered significant losses and damages. (Exhibit 1, ¶ 390).
>
> Former Shareholders seem to believe that they should recover a portion of the overall corporate damage caused by the North Bay Fires and Camp Fire, as a reflection of the "inflated value" that they believe they lost, like skimming cream off the top of milk. But case law does not permit the overall damages to the corporation to be split between derivative and direct claims in this manner, and such a theory has been dismissed by other courts. For example, in Schuster, supra, the court dismissed a plaintiff's efforts to create a class of injured shareholders holding direct claims by doing exactly what the Former Shareholders have done here—"limit the putative class" to those who acquired stock during a limited period of time, and argue that the claim is "direct because it does not concern 'the whole body' of the corporation's stock. Schuster, 127 Cal. App. 4th at 314 (dismissing separate damages argument as "specious," and stating that whether shareholder "seeks to recover on behalf of all the stockholders, or tries to pursue claims on behalf of some subset, the damages sought are still incidental to the alleged injury to Peregrine, and any recovery should go to the company."); see also Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035-36 (Del. 2004) (discarding Delaware law's "special injury" concept).

Motion for Standing, p. 12:10 – 13:4.

The Motion for Standing then pointed out that the putative class is invalid and does not support valid, direct securities claims:

> Despite allegations in the Shareholder Complaint, the putative class period is not based upon the timing of false statements made by the Debtors—the Debtors had been making promises about how great their vegetation management program was for years and years prior—but is based upon the convenient dates of when these four named plaintiffs bought and sold their securities. Attachments A-D to the Shareholder Complaint are the Certifications of Named Plaintiff Pursuant to Federal Securities Laws, detailing each of the Former Shareholders' dates of acquisition and sale of the Debtors' securities. The start of the putative class period, April 29, 2015, coincides with the first securities purchase by a named plaintiff (Warren, see Exhibit 1, Dkt. 121-3, page 4 of 4), and the end of the period, November 15, 2018, coincides with the last sale of securities by a named plaintiff (York, see Exhibit 1, Dkt. 121-2, p. 3 of 3). The Former Shareholders have done exactly what was rejected in Schuster—created a "subset" of shareholders by the dates of their own acquisitions in order to create the appearance that they hold separate direct claims, when the injury was actually felt by all shareholders. Schuster, 127 Cal. App. 4th at 314.

Motion for Standing, p. 13:6-19.

The Motion for Standing then addressed the failure of the Shareholder Complaint to allege actual false statements that any reasonable investor would be entitled to rely upon while turning a blind eye to real-world facts known by all investors—a necessary core allegation of any legitimate direct securities claim:

> The story that the Shareholder Complaint tries to tell is of trusting investors who were led astray by the Debtors' false statements about its vegetation management programs, which convinced the investors that the risk of wildfires was less than it actually was. But in the real world, the putative class period has nothing to do with alleged false statements, but is defined solely by the dates when the Former Shareholders first bought and sold their securities. In the real world, Governor Brown had issued a statewide state of emergency before the class period began, warning of an increased risk of wildfires. In the real world, the 2015 Butte Fire took place just a few months into the class period, yet this court and the District Court are asked to believe that investors properly ignored an actual catastrophic wildfire caused by vegetation management failures, and instead relied entirely on vague statements in press releases, all but one of which were made after the Butte Fire, and most of which were made after the Camp Fires. Mid-Jersey, one of the named plaintiffs, did not even start buying the Debtors' securities until after the Butte Fire, and sold off the last ones five months later (Exhibit 1, Dkt. 121-4, p. 3 of 3). That is not an investor trusting press releases, it is a speculative effort to make a fast profit from a stock that declined after a single wildfire.
>
> Indeed, the first allegedly false statement is actually true. It is simply misrepresented in the Shareholder Complaint. See Richardson Decl. at ¶ 9. And the other allegedly false statements are P.R. statements about the Debtors' vegetation management program made after the devastating Butte Fire had been caused by a vegetation management failure, made during a California state of emergency, and—for the majority—made after the catastrophic North Bay Fires. Id. at ¶ 10. Investors do not live in a vacuum,

cut off from the real world, entitled to rely on their interpretations of vague press releases while actual facts are plainly divulged in the daily news.

As the Ninth Circuit has held, "vague allegations about misrepresentations that caused [the plaintiff shareholder] to support the unsuccessful merger attempt and initiation of a receivership" were still derivative claims because "his only injury from those misrepresentations was the devaluation of his stock when Barbary Coast was taken over by the FDIC." *Pareto*, 139 F.3d at 700.

Motion for Standing, pp. 13:20 – 14:8. This latter argument is the argument that the TCC expanded upon for much of its Reply Brief, and that the Motion wrongly claims as "new." It was not a new argument. **All** of the above arguments are repeated and expanded upon in the Draft Complaint that was filed with the Motion for Standing, and will not be repeated here for the sake of brevity. *See* Draft Complaint, at ¶¶ 3-9, 28-53.

The Former Shareholders had complete and adequate notice of the arguments that the TCC is presenting in support of its Motion for Standing. It was only because the Former Shareholders filed an opposition brief that missed the mark that the TCC's reply brief expanded upon those arguments to ensure that any misunderstanding would be addressed in the papers.

The TCC agreed to a one-week continuance of the hearing not for the purpose of permitting a further round of briefing, but on the understanding that the parties wished to conduct discussions. The TCC awaits such discussions, while addressing this Opposition to a Motion that seeks another chance to brief issues that were fully addressed in the Motion for Standing.

## CONCLUSION

WHEREFORE, for all the reasons argued herein, and particularly for all of the reasons argued in the Motion for Standing, the TCC respectfully requests that this Court deny the Former Shareholders' Motion for a further round of briefing.

Dated: April 8, 2020

BAKER & HOSTETLER LLP

By: /s/ David J. Richardson
Robert A. Julian
Cecily A. Dumas
David J. Richardson

*Counsel to the Official Committee of Tort Claimants*