WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| | Chapter 11 (Lead Case) (Jointly Administered) |
| **PG&E CORPORATION,** | |
| | **DECLARATION OF STEVEN FRANK IN SUPPORT** |
| **- and -** | **OF DEBTORS' MOTION PURSUANT TO 11 U.S.C** |
| | **§ 105(a) AND FED. R. BANKR. P. 9019 FOR AN** |
| **PACIFIC GAS AND ELECTRIC** | **ORDER (I) APPROVING SETTLEMENT** |
| **COMPANY,** | **AGREEMENT RESOLVING EX PARTE OII AND** |
| | **(II) GRANTING RELATED RELIEF** |
| **Debtors.** | |
| | Date: April 29, 2020 |
| ☐ Affects PG&E Corporation | Time: 10:00 am (Pacific Time) |
| ☒ Affects Pacific Gas and Electric | Place: United States Bankruptcy Court |
| Company | Courtroom 17, 16th Floor |
| ☐ Affects both Debtors | San Francisco, CA 94102 |
| | Judge: Hon. Dennis Montali |
| *\* All papers shall be filed in the Lead* | **Objection Deadline: April 22, 2020, 4:00 pm (PT)** |
| *Case, No. 19-30088 (DM).* | |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Steven Frank, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

I am an attorney in the Law Department of Pacific Gas and Electric Company (the "**Utility**"), a position I have held since 1998. The Utility is a wholly-owned subsidiary of PG&E Corporation ("**PG&E Corp.**" and, together with the Utility, the "**Debtors**"). In my role in the Law Department, I have appeared on behalf of the Utility in numerous regulatory proceedings before the California Public Utilities Commission ("**CPUC**").

I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Debtors' Motion Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Approving Settlement Agreement Resolving Ex Parte OII and (II) Granting Related Relief* (the "**Motion**"), filed contemporaneously herewith.[1] The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or information provided to me by other members of my team working under my supervision and direction. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

As described in the Motion, the Utility has reached a settlement (the "**Phase II Settlement Agreement**") with the City of San Bruno, the City of San Carlos, the Public Advocates Office, the Safety and Enforcement Division ("**SED**") of the CPUC, and The Utility Reform Network ("**TURN**" and, collectively, the "**Parties**") that resolves a proceeding commenced by the CPUC to determine whether the Utility should be sanctioned for violations of Article 8 of the CPUC's Rules of Practice and Procedure (C.C.R. Title 20, Div. 1, Ch.1, Sections 8.1 *et seq.*), Rule 1.1 of the Rules of Practice and Procedure, and Public Utilities Code (Pub. Util. Code) §§ 1701.2(c) and 1701.3(c) (collectively, the "**Ex Parte Rules**") governing ex parte communications between the Utility and CPUC officials, including Administrative Law Judges, Commissioners, and Commissioners' advisors (the "**Ex Parte OII**").

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

### A.  The Ex Parte OII Proceeding and its Resolution

On November 23, 2015, the CPUC issued an Order Instituting Investigation 15-11-015, commencing the Ex Parte OII to determine whether communications reflected in certain emails sent or received by the Utility's officers and employees violate the Ex Parte Rules.

Resolution of the Ex Parte OII occurred in two phases.  The first phase of the Ex Parte OII ("**Phase I**") related to emails disclosed by the Utility in 2014 and 2015 and allegations of ex parte violations levied by the City of San Bruno in 2014 and was resolved by a settlement (the "**Phase I Settlement Agreement**").  The Phase I Settlement Agreement, which was submitted to the CPUC in March of 2017, proposed, among other things:

(a)  A total financial remedy of $86.5 million, allocated among:

    (i)  $1 million paid by the Utility to the State of California's General Fund (the "**California General Fund**");

    (ii)  A $63.5 million credit to ratepayers in the Utility's 2015 Gas Transmission and Storage rate case;

    (iii)  A $10 million credit to ratepayers in the Utility's 2020 General Rate Case; and

    (iv)  $6 million in compensatory payments each to the City of San Bruno and the City of San Carlos; and

(b)  Non-financial remedies in which the Utility agreed to:

    (i)  Provide notice to the Public Advocates Office, SED, and TURN (collectively, the "**Notice Parties**") of any tours of the Utility's facilities by a CPUC decisionmaker, from 2018- 2020;

    (ii)  Provide notice to the Notice Parties any time the Utility sends a CPUC decisionmaker any credit rating agency or investor report or analysis, for a period of three years;

    (iii)  Provide notice to the Notice Parties any time certain Utility officers attend certain planned meetings with a CPUC or Commissioner's advisor, for a period of two years; and

    (iv)  Provide training to the Utility's Regulatory Affairs employees and Law Department attorneys on the CPUC's ex parte rules, for a period of three years.

On September 1, 2017, the Administrative Law Judge ("**ALJ**") assigned to oversee the Phase I proceeding issued a proposed decision (the "**Proposed Decision**") that modified the financial remedy contemplated by the Parties, increasing the amount to be paid to the California General Fund

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

from $1 million to $12 million, resulting in a total financial remedy to be paid by the Utility for Phase I of $97.5 million. On September 21, 2017, the Utility filed a motion agreeing to the ALJ's proposed modifications in the Proposed Decision.

Along with the motion accepting the Proposed Decision's modifications, the Utility disclosed 16 additional emails from 2013 – 2014 (the "**September 2017 Disclosure**") that the Utility discovered while responding to an unrelated governmental inquiry that raised similar issues as the communications that were encompassed in the Phase I Settlement Agreement. Following several discussions, on November 1, 2017, the Parties, other than the Utility, submitted a joint filing accepting the Proposed Decision and requesting that the CPUC open a second phase (**"Phase II"**) of the Ex Parte OII to address the emails included in the Utility's September 2017 Disclosure. On May 3, 2018, the CPUC approved the Proposed Decision adopting the modified Phase I Settlement Agreement and commencing Phase II of the Ex Parte OII.

Following an initial meet and confer and discovery period, the CPUC held a prehearing conference on Phase II of the Ex Parte OII on March 9, 2019. During the latter half of 2018 and the first half of 2019, the Parties engaged in settlement discussions, which culminated in the Phase II Settlement Agreement, which resolves all remaining issues in the Ex Parte OII proceeding. The Parties filed a joint motion seeking CPUC approval of the Phase II Settlement Agreement on June 28, 2019, which was subsequently approved by the CPUC Order dated December 5, 2019. A true and correct copy of the CPUC Order, along with a copy of the Phase II Settlement Agreement, is attached hereto as **Annex 1**.

**B. The Material Terms of the Phase II Settlement Agreement**

The Phase II Settlement Agreement fully resolves Phase II of the Ex Parte OII and any disputed claims, allegations or outstanding issues related thereto. The key terms and provisions of the Phase II Settlement Agreement, as approved by the CPUC Order, are summarized below.[2]

**i.      Financial Remedies**

Pursuant to the Phase II Settlement Agreement, the Utility will pay financial remedies

---

[2] This summary is qualified in its entirety by reference to the provisions of the CPUC Order and of the Phase II Settlement Agreement. To the extent that any discrepancies exist between the summary described in this Declaration and the terms of the CPUC Order and Phase II Settlement Agreement, the CPUC Order and Phase II Settlement Agreement shall govern.

totaling $10 million (the "**Financial Remedies**"), none of which shall be borne by ratepayers. The Financial Remedies consist of the following: (i) $2 million to be contributed by the Utility to the California General Fund (the "**General Fund Claim**") pursuant to Section 2100 *et seq*. of the Public Utilities Code; (ii) the Utility forgoing a collection of $5 million in revenue requirements during the term of its 2019 Gas Transmission and Storage rate case (the "**Gas Transmission and Storage Ratemaking Remedy**"); (iii) the Utility foregoing a collection of $1 million in revenue requirements during the term of its 2020 General Rate Case cycle (the "**General Rate Case Ratemaking Remedy**" and, together with the Gas Transmission and Storage Ratemaking Remedy, the "**Ratemaking Remedies**"); (iv) $1 million to be contributed by the Utility to the City of San Bruno General Fund (the "**San Bruno Fund Claim**"); and (v) $1 million to be contributed by the Utility to the City of San Carlos General Fund (the "**San Carlos Fund Claim**" and together with the General Fund Claim and San Bruno Fund Claim, the "**Financial Claims**").

### ii. Non-Financial Remedies

In addition to the non-financial remedies agreed to in Phase 1, the Utility agreed to additional non-financial remedies that are tailored to the issues raised in Phase II of the Ex Parte OII (collectively, the **"Non-Financial Remedies"**). The Non-Financial Remedies consist of the following:

(a) Through December 31, 2025, if the Utility gives a tour of its facilities to a CPUC decisionmaker it will provide notice within three days of the tour in an open General Rate Case, Gas Transmission and Storage rate case, or other relevant cost recovery case if the facility, technology, process, or information to be addressed during the tour is at issue in such a case, and will additionally invite a representative of each of the Public Advocates Office, the SED, and TURN to attend the tour. This is intended as an extension of the remedy agreed to by the Utility in the settlement of Phase I;

(b) Through December 31, 2025, if the Utility transmits via email a credit rating agency or investor report or analysis to a CPUC decisionmaker, the Utility simultaneously will provide a copy to designated representatives of the Public Advocates Office, the SED, TURN, and all parties in the Utility's most recent cost of capital, General Rate Case, and Gas Transmission and Storage proceedings. This is intended as an extension of the remedy agreed to by the Utility in the settlement of Phase I;

(c) Through December 31, 2025, if the Corporation's Chief Executive Officer, the Utility's President, the Corporation's Chief Financial Officer, or the Corporation's General Counsel, participates in a meeting arranged or accepted by the Utility to be attended only by the Utility and its agents and the CPUC Commissioner and/or the Commissioner's advisors, the Utility will provide notice within three days to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

designated representatives of the Public Advocates Office and of TURN. This is intended as an extension of the remedy agreed to by the Utility in the settlement of Phase I;

(d) The Utility will provide training on the CPUC's ex parte communication rules, and through December 31, 2025, the Utility will provide to the other Parties to the Phase II Settlement Agreement (i) a copy of the training materials used for this purpose, and (ii) an annual certificate of completion for the training of all officers, Regulatory Affairs (or its successor) employees and Law Department attorneys. This is intended as an extension of the remedy agreed to by the Utility in the settlement of Phase I;

(e) The Utility will not contract with outside parties for "Advocacy Work" before the CPUC through December 31, 2025. "Advocacy Work" means lobbying on behalf of the Utility directly before the CPUC, other than in a public hearing, workshop, or other public forum, which has been noticed to the official service list or on the record of a CPUC proceeding. Advocacy Work does not include (i) testimony or participation in a public hearing, workshop, or other public forum, which has been noticed to the official service list or on the record of a CPUC proceeding, (ii) the provision of technical, advisory, or expert services to support the Utility's advocacy before the CPUC, where the primary purpose of such services is the technical, advisory, or expert services, and not lobbying, or (iii) lobbying work before any governmental body other than the CPUC;

(f) Commencing in January 1, 2026 and continuing through December 31, 2030, the Utility shall include in all contracts with outside parties for "Advocacy Work," as defined above, before the CPUC a summary of the CPUC's ex parte communication rules, as then in effect, and contractually obligate the outside parties to adhere to these rules. The Utility shall provide the summary of the ex parte rules it intends to include in such contracts to the Public Advocates Office, the SED, and TURN before January 1, 2026; and

(g) The Utility will not oppose a request by any of the Parties for a rulemaking to consider a change to the CPUC's rules that would extend the ex parte rules set forth in Article 8 of the CPUC's Rules of Practice and Procedure to cover, as a "ratesetting proceeding," the advice letter process for those instances where the process could result in a CPUC resolution.

### iii. Bankruptcy Court Approval and Timing of Payments

Pursuant to the CPUC Order, the Utility is required to seek Bankruptcy Court approval of the Phase II Settlement Agreement. *See* CPUC Order at 26, ¶2.

As set forth in the Phase II Settlement Agreement, the Parties agreed that the Utility will satisfy the Financial Claims in accordance with the terms of a Bankruptcy Court order authorizing payment of the Financial Claims, in full or in part, pursuant to the terms of a confirmed chapter 11 plan of reorganization. *See* Phase II Settlement Agreement ¶3.8. The Phase II Settlement Agreement further

provides that, if neither the confirmed chapter 11 plan of reorganization nor the CPUC specifies a time by which PG&E shall satisfy the Financial Claims, payments to the City of San Bruno, the City of San Carlos, and the California General Fund shall be received no later than any confirmed chapter 11 plan of reorganization's effective date, or, if not reasonably practicable, no later than thirty (30) days after such effective date. *Id.* Additionally, absent instruction by the CPUC and Bankruptcy Court otherwise, the Parties agree that satisfaction of the Ratemaking Remedies shall occur no later than the first reasonable opportunity to do so following the effective date of any confirmed plan. *Id.* The Phase II Settlement Agreement further provides that within ten (10) days of the effective date of any confirmed plan, the Utility shall file a report in the Ex Parte OII proceeding that explains the treatment of the Financial Remedies under the plan and indicates when and how the Utility will satisfy the Financial Remedies. *Id.*

The CPUC Order both approves the Phase II Settlement Agreement and orders PG&E to make payment to the State General Fund within 30 days of the Court's approval of this Motion, thus creating some ambiguity regarding timing of the satisfaction of the General Fund Claim. I believe that the CPUC Order should be interpreted to support the Parties' intention to satisfy the General Fund Claim, along with the other Financial Claims, within 30 days after a confirmed chapter 11 plan of reorganization becoming effective, not within 30 days of the Court's approval of the Motion.

### C. The Settlement Agreement Should Be Approved

I actively participated in the negotiations with the Parties, in subsequent discussions with the Utility's management and other advisors in evaluating the potential benefits of the Phase II Settlement Agreement, and the Utility's decision to enter into the Phase II Settlement Agreement.

The Phase II Settlement Agreement is the product of extensive good faith, arm's-length negotiations among the Parties. Other Utility representatives and I attended multiple settlement conferences and had numerous discussions with the Parties, which began in the latter half of 2018 and culminated in the filing of the motion to approve the Phase II Settlement Agreement on June 28, 2019. Throughout this process, the Parties had ample opportunity to participate in the Ex Parte OII proceeding and comment on the Phase II Settlement Agreement. All parties supported or did not oppose the Phase

II Settlement Agreement.

I believe that the terms of the Phase II Settlement Agreement are fair and reasonable and in the best interests of the Utility, its estate, creditors, and other stakeholders, and should be approved. The Phase II Settlement Agreement fully resolves the Ex Parte OII, eliminates the costs and uncertainties associated with further litigation, including the possible costs of rehearing, appeal, and additional penalties, and benefits the Utility's customers through the Ratemaking Remedies therein.

Entry into the Phase II Settlement Agreement allows the Utility to avoid the risks and uncertainties of a continued CPUC proceeding, including the potential for greater penalties. The Utility has admitted that certain communications at issue in the Phase II Settlement Agreement violated the Ex Parte Rules and all the Parties agree that communications in the jointly-approved evidentiary record reflect serious misconduct, raise new issues not addressed in the Phase I Settlement Agreement, and warrant additional remedies beyond those approved in connection with resolution of Phase I. The Parties did not, however, attempt to determine the specific number of violations at issue and, absent the Phase II Settlement Agreement, the CPUC could have determined that financial remedies in excess of the $10 million contemplated in the Phase II Settlement Agreement were warranted.

Additionally, the Financial Remedies were highly negotiated and tailored to these specific circumstances. The Financial Remedies take into account that the Utility has already paid substantial amounts ($97.5 million) in connection with the Phase I Settlement Agreement, which covered violations involving many of the same Utility employees and CPUC proceedings that are at issue in Phase II of the Ex Parte OII. The Non-Financial remedies are tailored to promote compliance with the Ex Parte Rules and provide greater transparency into the Utility's communications with the CPUC, to the benefit of the Utility, its estate, and its creditors and customers. Absent the Phase II Settlement Agreement, there is no guarantee that a final CPUC determination would take into account these circumstances and provide for similarly tailored remedies.

For the above reasons, and because the CPUC has already approved the Phase II Settlement Agreement and determined that it is "reasonable in light of the record, is consistent with law, and is in the public interest," I believe the Phase II Settlement Agreement should be approved.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 8, 2020
Orinda, California

/s/ *Steven Frank*
Steven Frank