Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>Annex 1</u>

**CPUC Order and Phase II Settlement Agreement**

**Date of Issuance  12/12/2019**

Decision 19-12-013  December 5, 2019

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation and Ordering Pacific Gas and Electric Company to Appear and Show Cause Why It Should Not Be Sanctioned for Violations of Article 8 and Rule 1.1 of the Rules of Practice and Procedure and Public Utilities Code Sections 1701.2 and 1701.3. | Investigation 15-11-015 |

**DECISION GRANTING JOINT MOTION OF THE CITY OF SAN BRUNO, THE CITY OF SAN CARLOS, THE PUBLIC ADVOCATES OFFICE, THE SAFETY AND ENFORCEMENT DIVISION, THE UTILITY REFORM NETWORK, AND PACIFIC GAS AND ELECTRIC COMPANY FOR ADOPTION OF PHASE II SETTLEMENT AGREEMENT**

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 2 of 42

# Table of Contents

**Title**                                                                 **Page**

DECISION GRANTING JOINT MOTION OF THE CITY OF SAN BRUNO, THE CITY OF SAN CARLOS, THE PUBLIC ADVOCATES OFFICE, THE SAFETY AND ENFORCEMENT DIVISION, THE UTILITY REFORM NETWORK, AND PACIFIC GAS AND ELECTRIC COMPANY FOR ADOPTION OF PHASE II SETTLEMENT AGREEMENT ...................................... 1
Summary ........................................................................................................... 2
1.  Background .................................................................................................. 3
    1.1.  The Phase I Settlement ...................................................................... 5
    1.2.  Phase II and the Resulting Settlement ............................................ 5
2.  Joint Motion and Phase II Settlement Agreement Terms ................... 6
    2.1.  Admissions ........................................................................................... 7
    2.2.  Financial Remedies ............................................................................ 8
    Non-Financial Remedies ............................................................................ 9
    2.3.  Impact of Bankruptcy Proceeding ................................................ 13
3.  Rules Applicable to Pacific Gas and Electric Company (PG&E) *Ex Parte* Communications ....................................................................................... 13
4.  Legal Standard for Evaluating Whether to Adopt or Reject Settlement Agreements ................................................................................................. 14
    4.1.  The Phase II Settlement Agreement is Reasonable in Light of the Stipulated Joint Evidentiary Record ............................................ 15
    4.1.1.  PG&E's Conduct .................................................................. 15
    4.1.2.  The Financial Remedies ..................................................... 17
    4.1.3.  The Non-Financial Remedies ........................................... 17
    4.2.  The Phase II Settlement Agreement is Consistent with Law ...... 18
    4.2.1.  Prior Precedent ................................................................... 19
    4.2.2.  The 98-12-075 Factors ........................................................ 20
    4.3.  The Phase II Settlement Agreement is in the Public Interest ........ 22
    4.4.  The Phase II Settlement Agreement has the Unanimous Sponsorshp of the Parties ....................................................................................... 22
    4.5.  The Sponsoring Parties are Fairly Reflective of the Affected Interests ............................................................................................... 22
    4.6.  No Term of the Phase II Settlement Contravenes Statutory Provisions or Prior Commission Decisions ................................... 23

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 3 of 42

## Table of Contents (cont.)

**Title**                                                                    **Page**

4.7.  The Phase II Settlement Agreement Conveys Sufficient Information to Allow the Commission to Discharge its Regulatory Obligations with Respect to the Parties and Their Interests ........................................ 23

5.    Waiver of Comment Period ................................................................ 24

6.    Assignment of Proceeding ................................................................. 24

Findings of Fact ............................................................................................ 24

Conclusions of Law ...................................................................................... 25

ORDER ......................................................................................................... 26

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 4 of 42

**DECISION GRANTING JOINT MOTION OF THE CITY OF SAN BRUNO, THE CITY OF SAN CARLOS, THE PUBLIC ADVOCATES OFFICE, THE SAFETY AND ENFORCEMENT DIVISION, THE UTILITY REFORM NETWORK, AND PACIFIC GAS AND ELECTRIC COMPANY FOR ADOPTION OF PHASE II SETTLEMENT AGREEMENT**

## Summary

This decision grants the *Joint Motion of the City of San Bruno, the City of San Carlos, the Public Advocates Office, the Safety and Enforcement Division, The Utility Reform Network, and Pacific Gas and Electric Company* (PG&E) (Parties), and adopts the Phase II Settlement Agreement the Parties entered into and executed. The Phase II Settlement Agreement resolves the Commission's investigation into eight separate proceedings in which PG&E admittedly failed to timely report *ex parte* communications, and engaged in improper *ex parte* communications, in violation of Commission Rules of Practice and Procedure, as well as certain provisions of the Public Utilities Code.

The decision adopts both the non-financial remedies articulated in the Phase II Settlement Agreement, as well as the following financial remedies:

| Financial Remedy | Amount |
|---|---|
| Gas Transmission and Storage Rate Case Ratemaking Remedy | PG&E shall forgo collection of $5,000,000 in revenue requirements during the term of its 2019 Gas Transmission and Storage general rate case |
| General Rate Case Ratemaking Remedy | PG&E shall forgo collection of $1,000,000 in revenue requirements in its 2020 General Rate Case cycle |
| Compensation payable to the City of San Bruno and the City of San Carlos | PG&E shall pay $1,000,000 to the City of San Bruno General Fund and $1,000,000 to the City of San Carlos General Fund |
| Payment to the State of California General Fund | $2,000,000 |

This proceeding is closed.

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 5 of 42

## 1.    Background

The Commission opened this investigation into Pacific Gas and Electric Company's (PG&E) failure to timely report *ex parte* communications and for engaging in improper *ex parte* communications in violation of Article 8 of the Rules of Practice and Procedure (C.C.R. Title 20, Div. 1, Ch. 1, Sections 8.1 *et seq.*), Rule 1.1 of the Rules of Practice and Procedure,[1] and Pub. Util. Code §§ 1701.2(c)[2] and 1701.3(c)[3] related to the following proceedings:

- Rulemaking (R.) 09-01-019, Rulemaking to Examine the Commission's Energy Efficiency Risk/Reward Incentive Mechanism (Energy Efficiency Risk/Reward Incentive Mechanism Rulemaking)

- R.11-02-019, Rulemaking to Adopt New Safety and Reliability Regulations for Natural Gas Transmission and Distribution Pipelines and Related Ratemaking Mechanisms (Gas Pipeline Safety and Reliability Rulemaking)

---

[1]  Rule 1.1 states:  Any person who signs a pleading or brief, enters an appearance, offers testimony at a hearing, or transacts business with the Commission, by such act represents that he or she is authorized to do so and agrees to comply with the laws of this State; to maintain the respect due to the Commission, members of the Commission and its Administrative Law Judges; and never to mislead the Commission or its staff by an artifice or false statement of fact or law.

[2]  Section 1701.2(c) states:  (c) The commission shall provide by rule for peremptory challenges and challenges for cause of the administrative law judge.  Challenges for cause shall include, but not be limited to, financial interests and prejudice.  The rule shall provide that all parties are entitled to one peremptory challenge of the assignment of the administrative law judge in all cases.  All parties are entitled to unlimited peremptory challenges in any case in which the administrative law judge has within the previous 12 months served in any capacity in an advocacy position at the commission, been employed by a regulated public utility, or has represented a party or has been an interested person in the case.

[3]  Section 1701.3(c) states:  (c) An alternate decision may be issued by the assigned commissioner or the assigned administrative law judge who is not the principal hearing officer.  Any alternate decision may be filed with the commission and served upon all parties to the proceeding any time prior to issuance of a final decision by the commission, consistent with the requirements of Section 311.

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 6 of 42

- Application (A.) 09-12-020, Application of PG&E for Authority, Among Other Things, to Increase Rates and Charges for Electric and Gas Service Effective on January 1, 2011 (PG&E's 2011 General Rate Case (GRC))

  A.09-09-021, Application of PG&E for Approval of 2008 Long-Term Request for Offer Results and for Adoption of Cost Recovery and Ratemaking Mechanisms (PG&E Application for Approval of 2008 LTRO Results)

- A.09-12-002, Application of PG&E for Approval of the Manzana Wind Project and Issuance of a Certificate of Public Convenience and Necessity (PG&E Application for Approval of Manzana Wind Project)

  A.10-02-028, Application of Pacific Gas and Electric Company for Approval of its 2010 Rate Design Window Proposal for 2-Part Peak Time Rebate and Recovery of Incremental Expenditures Required for Implementation, and consolidated matter A.10-08-005 (PG&E Application for Approval of Peak Time Rebate)

- A.14-02-008, Application of Pacific Gas and Electric Company for Compliance Review of Utility Owned Generation Operations, Electric Energy Resource Recovery Account Entries, Contract Administration, Economic Dispatch of Electric Resources, Utility Retained Generation Fuel Procurement, and Other Activities for the Period January 1 through December 31, 2013 (PG&E 2013 ERRA Application)

  Investigation (I.) 12-01-007, Investigation into the Operations and Practices of Pacific Gas and Electric Company to Determine Violations of Pub. Util. Code § 451, General Order 112, and Other Applicable Standards, Laws, Rules and Regulations in Connection with the San Bruno Explosion and Fire on September 9, 2010, and related investigations I.11-02-016 and I.11-11-009.  (Pipeline Investigations)

Additionally, PG&E was ordered to show cause why it should not also be found to have violated the prohibition on *ex parte* communications in the Pipeline Investigations, as alleged by the City of San Bruno in the Pipeline Investigations.

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 7 of 42

## 1.1.   The Phase I Settlement

In Decision (D.) 18-04-014, the Commission adopted the settlement agreement in Phase I of this proceeding with penalties and forbearances totaling $97.5 million.  But since PG&E produced, in September of 2017, additional e-mails from the 2013-2014 time frame that appeared to raise issues similar to other communications that the Non-PG&E parties sought to include in the record, the Commission ordered this Phase II of the proceeding in order to address whether any of the newly produced e-mails violate the Commission's *ex parte* rules.

## 1.2.   Phase II and the Resulting Settlement

During Phase II, PG&E searched for and reviewed e-mail and hard copy documents in its custody in response to Data Requests issued by the Public Advocates Office (PAO) and Safety and Enforcement Division (SED).  PG&E's investigation identified the following:

> Documents showing that former PG&E employee, Brian Cherry, sent or received information in his communications on behalf of PG&E regarding Commission jurisdictional matters.

> Documents showing that former Commissioners, Michael Peevey and Timothy Simon, and former General Counsel, Frank Lindh, sent or received information through their personal e-mail accounts, in addition to their Commission-issued e-mail accounts, regarding Commission jurisdictional matters.

> Documents showing that PG&E consultants, Susan Kennedy and Dan Richard, sent or received information using business and/or personal e-mail accounts regarding Commission jurisdictional matters.

PG&E also reviewed the hard copy documents collected from Thomas Bottorff (former Senior Vice President of Regulatory Affairs), Brian Cherry (former Vice President of Regulatory Relations), and Trina Horner (former

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 8 of 42

Vice President of Regulatory Proceedings and Rates) upon their departures from PG&E. Following discovery and negotiations, on May 15, 2019, the Parties submitted a proposed evidentiary record (the Joint Evidentiary Record). Also on May 15, 2019, the Parties filed a *Motion to Adopt Joint Evidentiary Record*.

With this Joint Evidentiary Record in place, the Parties engaged in settlement discussions. There were several in-person and telephonic discussions, which culminated in a term sheet and eventually because the Phase II Settlement Agreement that is attached to this decision. In reaching the Phase II Settlement Agreement, the Parties recognize that they are resolving claims that arise from serious misconduct on PG&E's part. But the Parties also recognize that they would unlikely be able to agree on the specific number of *ex parte* violations. Since such a disagreement could result in a lengthy and factually contentious evidentiary hearing, the Parties believe it prudent and expedient to reach the Phase II Settlement Agreement. Yet having done so, PG&E states it has condemned the conduct that is the subject of Phase II of this proceeding and asserts that it is committed to transparency and compliance with the Commission's rules and the provisions of the Public Utilities Code.

## 2. Joint Motion and Phase II Settlement Agreement Terms

On June 28, 2019, the Parties filed their *Joint Motion for Adoption of the Phase II Settlement Agreement (Motion)* which is divided into three major sections: admissions, financial remedies, and non-financial remedies. The terms are set forth verbatim below.

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 9 of 42

## 2.1. Admissions

Article II, Paragraph 2.1 of the Phase II Settlement Agreement sets forth
PG&E's admissions, including two admissions by PG&E in the Phase I
Settlement Agreement:

2.1.A  In 2012, PG&E retained former California Public
Utilities Commission Commissioner Susan Kennedy as a consultant
to lobby the Commission in proceedings, including the San Bruno
pipeline explosion investigations (I.12-01-007, I.11-11-009, and
I.11-02-016) and the Line 147 Order to Show Cause proceeding
(R.11-02-019), where ex parte communications were prohibited by
Commission rules.

2.1.B  During the time period in which Ms. Kennedy was
providing lobbying services to PG&E before the Commission, PG&E
Vice President Brian Cherry, acting on behalf of PG&E, was aware of
and authorized certain communications between Ms. Kennedy and
Commission decisionmakers in proceedings in which ex parte
communications were prohibited, which violated the Commission's
ex parte communication rules.

2.1.C  Ms. Kennedy was an agent of PG&E while also
representing another party (Bottle Rock Power, LLC) that was
negotiating with PG&E for contract approval before the
Commission.

2.1.D  As agreed to in the Phase I Settlement Agreement,
during the period from 2010 to 2014, PG&E committed multiple
violations of the Commission's ex parte communication rules in
Article 8 of the Rules of Practice and Procedure, through
communications that were either prohibited or not reported to the
Commission as required by these rules.  By the totality of these
violations, PG&E also violated Commission Rule of Practice and
Procedure 1.1.

2.1.E  As agreed to in the Phase I Settlement Agreement,
PG&E's employees and agents engaged in communications with
decisionmakers at the Commission, as well as related conduct that

- 7 -

was harmful to the regulatory process. Under the unique circumstances of this case, where the two Cities who are parties to this Settlement Agreement brought certain of these communications forward and participated in proceedings which the communications concerned, it is reasonable that compensation and other financial and non-financial remedies be awarded to those two Cities as part of a comprehensive Settlement Agreement resolving these issues, and to customers more generally.

## 2.2. Financial Remedies

Article II, Paragraph 2.2 sets forth the financial remedies to be paid by PG&E under the Settlement Agreement. The Parties have agreed that PG&E **"[r]atepayers will bear no costs associated with the financial remedies"** under the Phase II Settlement Agreement. (Bold added.) PG&E will pay a total financial penalty of $10 million, to be allocated as follows:

2.2.A <u>General Fund Remedy</u>

PG&E shall pay $2 million to the State of California General Fund. This shall be payable to the Government pursuant to Section 2100 *et seq.* of the Public Utilities Code.

2.2.B <u>Gas Transmission and Storage Rate Case Ratemaking Remedy</u>

PG&E shall additionally forego collection of $5,000,000 in revenue requirements during the term of its 2019 Gas Transmission and Storage rate case. This remedy shall be implemented through PG&E's Annual Gas True-up Advice Letter or such mechanism as may be agreed upon by the Parties. The amount above shall be allocated among and within customer classes in accordance with the applicable allocation and ratemaking methodologies then adopted by the Commission.

2.2.C <u>General Rate Case Ratemaking Remedy</u>

PG&E shall additionally forego collection of $1,000,000 in revenue requirements in its 2020 General Rate Case ("GRC") cycle, with such amount to be reduced from the overall amount authorized

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 11 of 42

by the Commission in its upcoming 2020 GRC decision. This remedy shall be implemented through PG&E's Annual Electric and Gas True-up Advice Letters, or such mechanisms as may be agreed upon by the Parties. The amount above shall be allocated among and within customer classes in accordance with the applicable allocation and ratemaking methodologies then adopted by the Commission.

2.2.D <u>Compensation Payable to the City of San Bruno and the City of San Carlos</u>

PG&E shall pay:

- $1,000,000 to the City of San Bruno General Fund.
- $1,000,000 to the City of San Carlos General Fund.

These payments are intended to compensate the City of San Bruno and the City of San Carlos for attorney's fees, expenses, and any other harm caused on account of the conduct described in Paragraphs 2.1.A, 2.1.B, 2.1.C, 2.1.D, and 2.1.E or reflected in (a) PG&E's September 2017 Disclosure or (b) the materials PG&E produced in discovery, including those Bates stamped EPOII0000001 – EPOII0011263, and under the unique circumstances of this proceeding.

### Non-Financial Remedies

Article II, Paragraph 2.3 provides for the non-financial remedies set forth in the Phase II Settlement Agreement. The non-financial remedies are meant to impose requirements on PG&E independent of the Commission's Rules. The Parties have agreed to extend the time period for the applicability of the non-financial remedies agreed to in Phase I, and have agreed to additional, new non-financial remedies that are tailored to the issues raised by Phase II. The non-financial remedies are as follows:

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 12 of 42

### 2.3.A  Notice of Tours Provided to CPUC Decisionmakers (Extension of Phase I Remedy)

Through December 31, 2025, if PG&E gives a tour of its facilities to a Commission decisionmaker ,[4] it will provide notice within three days of the tour in an open General Rate Case, Gas Transmission and Storage rate case, or other relevant cost recovery case if the facility, technology, process, or information to be addressed during the tour is at issue in such a case, and will additionally invite a representative of the Public Advocates Office, the Safety and Enforcement Division, and The Utility Reform Network to attend the tour.  The notice will include a summary of PG&E's oral presentation(s) during the tour and provide all written materials shown to or provided to a Commission decisionmaker during the tour.  This is intended as an extension of the remedy agreed to by PG&E in the settlement of Phase I of this OII, as reflected in D.18-04-014 at Ordering Paragraph 1 and the Phase I Settlement Agreement at Paragraph 2.3.A.

### 2.3.B  Notice of Transmittals of Rating Agency and Investor Analyses to CPUC Decisionmakers (Extension of Phase I Remedy)

Through December 31, 2025, if PG&E transmits via email a credit rating agency or investor report or analysis to a Commission decisionmaker, PG&E simultaneously will provide a copy to designated representatives of the Public Advocates Office, the Safety and Enforcement Division, The Utility Reform Network, and all parties in PG&E's most recent cost of capital, General Rate Case, and Gas Transmission and Storage proceedings.  This is intended as an extension of the remedy agreed to by PG&E in the settlement of Phase I of this OII, as reflected in D.18-04-014 at Ordering

---

[4] "Decisionmaker" means any Commissioner, the Chief Administrative Law Judge, any Assistant Chief Administrative Law Judge, the policy or legal advisory staff assigned to a Commissioner's office, the assigned Administrative Law Judge, or the Law and Motion Administrative Law Judge."  (Rule 8.1 of the Commission's Rules of Practice and Procedure).

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 13 of 42

Paragraph 1 and the Phase I Settlement Agreement at Paragraph 2.3.B.

2.3.C  <u>Notice of "Meet and Greet" Meetings Between Certain PG&E Officers and CPUC Decisionmakers (Extension of Phase I Remedy)</u>

Through December 31, 2025, if PG&E Corporation's Chief Executive Officer, PG&E's President, PG&E Corporation's Chief Financial Officer, or its General Counsel, participates in a meeting arranged or accepted by PG&E to be attended only by PG&E and its agents and the Commissioner and/or the Commissioner's advisors, PG&E will provide notice within three days to designated representatives of the Public Advocates Office and The Utility Reform Network.  Such notice will include any written materials used during the meeting or discussion and a summary of PG&E's oral communications.  This is intended as an extension of the remedy agreed to by PG&E in the settlement of Phase I of this OII, as reflected in D.18-04-014 at Ordering Paragraph 1 and the Phase I Settlement Agreement at Paragraph 2.3.C.

2.3.D  <u>Training for PG&E Employees (Extension of Phase I Remedy)</u>

PG&E provides training on the Commission's *ex parte* communication rules, and through December 31, 2025, PG&E will provide to the other Parties to I.15-11-015 (a) a copy of the training materials used for this purpose, and (b) an annual certificate of completion for the training of all officers, Regulatory Affairs (or its successor) employees and Law Department attorneys.  PG&E previously provided an initial training within one year of the Commission's approval of the Phase I Settlement Agreement in this matter.  This is intended as an extension of the remedy agreed to by PG&E in the settlement of Phase I of this OII, as reflected in D.18-04-014 at Ordering Paragraph 1 and the Phase I Settlement Agreement at Paragraph 2.3.D.

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 14 of 42

2.3.E   <u>Prohibition on Commission Advocacy Consultants Through 2025</u>

PG&E shall not contract with outside parties for "Advocacy Work" before the Commission through December 31, 2025. "Advocacy Work" as used herein means lobbying on behalf of PG&E directly before the Commission, other than in a public hearing, workshop, or other public forum, which has been noticed to the official service list or on the record of a Commission proceeding. Advocacy Work does not include (a) testimony or participation in a public hearing, workshop, or other public forum, which has been noticed to the official service list or on the record of a Commission proceeding, (b) the provision of technical, advisory, or expert services to support PG&E's advocacy before the Commission, where the primary purpose of such services is the technical, advisory, or expert services, and not lobbying, or (c) lobbying work before any governmental body other than the Commission.

2.3.F   <u>Advocacy Consultant Contracting Requirements From 2026-2030</u>

Commencing in January 1, 2026 and continuing through December 31, 2030, PG&E shall include in all contracts with outside parties for "Advocacy Work," as defined herein, before the Commission a summary of the Commission's *ex parte* communication rules, as then in effect, and contractually obligate the outside parties to adhere to these rules.  PG&E shall provide the summary of the *ex parte* rules it intends to include in such contracts to the Public Advocates Office, the Safety and Enforcement Division, and The Utility Reform Network before January 1, 2026.

2.3.G   <u>Non-Opposition To Request For Advice Letter Rulemaking</u>

PG&E will not oppose a request by any Party to this proceeding for a rulemaking to consider a change to the Commission's rules that would extend the ex parte rules set forth in Article 8 of the Commission's Rules of Practice and Procedure to cover, as a "ratesetting proceeding," the advice letter process for

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 15 of 42

those instances where the process could result in a Commission resolution.

## 2.3.  Impact of Bankruptcy Proceeding

Finally, because of PG&E's pending bankruptcy proceeding, the Phase II Settlement Agreement includes Paragraph 3.8, entitled "Term Relating to PG&E's Bankruptcy Status," and states, in part: "Except as may be otherwise instructed by the Commission and *ordered by the Bankruptcy Court*[.]"  (Italics added.)  Because of this inclusion, assigned Administrative Law Judge Robert M. Mason III wrote to the Parties via e-mail dated September 16, 2019, and requested an explanation regarding the Bankruptcy Court's potential involvement if the Commission approved the Phase II Settlement Agreement.

On September 19, 2019, Sean Coyle, counsel for PG&E, responded to the September 16, 2019 e-mail.  He states that the Bankruptcy Court must approve the Phase II Settlement Agreement before any monies can be paid as the settlement resolves prepetition claims against PG&E:

> ... it is appropriate for the Bankruptcy Court to approve the Phase II Settlement Agreement before any monies can be paid.  PG&E intends to submit the agreement to the Bankruptcy Court for approval, provided it is first approved by the Commission.  We intend to do so because the Settlement Agreement resolves and settles certain prepetition claims asserted against PG&E, which will then be satisfied pursuant to a chapter 11 plan of reorganization approved by the Bankruptcy Court.  PG&E cannot satisfy any prepetition claims absent express Bankruptcy Court authority permitting it to do so.

## 3.  Rules Applicable to PG&E *Ex Parte* Communications

The Commission will not repeat the *ex parte* rules (*i.e.* what is an *ex parte* communication, who are decisionmakers and interested persons, what are the *ex parte* restrictions and reporting requirements, and the public purposes served

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 16 of 42

by compliance with the *ex parte* rules) and their application to the Phase II Settlement Agreement. These rules were discussed extensively in D.18-04-014 and the Commission will, instead, incorporate that discussion herein by reference.

## 4. Legal Standard for Evaluating Whether to Adopt or Reject Settlement Agreements

In deciding whether the Settlement Agreement should be adopted, we are guided by Rule 12.1(d) of the Commission's Rules of Practice and Procedure. That Rule states: "The Commission will not approve settlements, whether contested or uncontested, unless the settlement is reasonable in light of the whole record, consistent with laws, and in the public interest." If the moving parties assert that the Settlement Agreement is supported by all parties, then the Commission must also confirm:

- that the settlement commands the unanimous sponsorship of all active parties to the instant proceeding;

- that the sponsoring parties are fairly reflective of the affected interests;

- that no term of the settlement contravenes statutory provision or prior Commission decisions; and

- that the settlement conveys to the Commission sufficient information to permit us to discharge our future regulatory obligations with respect of the parties and their interests.[5]

As a matter of policy, the Commission favors the settlement of disputes. (D.11-05-018, 16; D.07 05 060, 6; and D.88-12-083.) This policy supports many goals, including reducing the expense of litigation, conserving scarce

---

[5] D.92-12-019; and D.90-08-068, 37.

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 17 of 42

Commission resources, and allowing parties to reduce the risk that litigation will produce unacceptable results. As long as a settlement is reasonable in light of the whole record, consistent with the law, and in the public interest, it should normally be adopted without alteration. (D.06-06-014, 12; and D.90-08-068.)

There is, however, precedent that allows the Commission to reject a settlement either in its entirety or in part. Pursuant to Rule 12.4, the Commission "may reject a proposed settlement whenever it determines that the settlement is not in the public interest," and may also "propose alternative terms to the parties to the settlement." Although this authority seems, at first, to be contrary to the policy favoring settlements, both the authority to accept a settlement or to reject and propose alternative terms stem from the Commission's overarching duty to adopt a settlement that is in the public interest.

It is with these policy goals in mind that we analyze the proposed settlement that the Parties have presented to the Commission for approval.

### 4.1. The Phase II Settlement Agreement is Reasonable in Light of the Stipulated Joint Evidentiary Record

### 4.1.1. PG&E's Conduct

In reviewing the record, the Commission concurs with the agreements that the Parties have reached regarding the nature and scope of PG&E's misconduct. This OII has been a contentious and time-consuming proceeding with the Parties having to deal with a myriad of factual, procedural, and legal issues engendered by PG&E's release of approximately 67,000 e-mails.

Following the approval of the Phase I Settlement Agreement, the Parties engaged in additional extensive discovery and discussions regarding newly discovered documents to reach an agreement as to what would constitute the

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 18 of 42

Joint Evidentiary Record for Phase II.  This agreed upon document is divided into three sections:

> Section I describes the sources of information from which the documents were obtained;

> Section II consists of factual stipulations that the Parties reached concerning which documents would be included in the Joint Evidentiary Record and which Commission proceedings were implicated; and

> Section III is comprised of the underlying evidentiary materials developed through discovery of PG&E in Phase II, as well as the earlier September 2017 disclosure materials.

From the foregoing recitation, it is clear that a great deal of time has been allocated to identifying the scope of PG&E's misconduct, how the misconduct occurred, and which Commission proceedings were implicated, and it is doubtful that a clearer record could be developed if this matter were to proceed to an evidentiary hearing.

In particular, the Commission is impressed by the fact that the Parties have agreed to stipulations that have resolved all material issues of disputed fact. Through the stipulations, the Parties have agreed on PG&E's communications (identified and grouped at Tabs 1 through 98) and the Commission proceedings to which the communications are related.  Some of the proceedings identified in the Joint Evidentiary Record are the same proceedings identified, supra, at Section 1 of this decision, with additional Commission proceedings also being identified.  The Commission appreciates that a great deal of effort was undertaken, and that compromises were needed to reach a stipulation regarding the identity of the communications and the implicated Commission proceedings.

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 19 of 42

### 4.1.2. The Financial Remedies

The Commission agrees that the financial remedies set forth in the Phase II Settlement Agreement are appropriate considering the conduct and information reflected in the Joint Evidentiary Record. $10 million in penalties and forbearances is a significant amount that reflects the seriousness of PG&E's conduct and the harm it has caused to the Commission, the cities of San Carlos and San Bruno, and to PG&E ratepayers. In addition, this sum is a reflection of the fact that PG&E has previously paid monies for *ex parte* violations arising from the 2010-2014 time period involving many of the same PG&E employees who were trying to influence the outcomes of many of the same Commission proceedings that were covered in the Phase I Settlement Agreement. When we weigh all of these considerations, the Commission concludes that the financial remedies are reasonable in light of the record.

### 4.1.3. The Non-Financial Remedies

The Commission agrees that the non-financial remedies set forth in the Phase II Settlement Agreement are appropriate considering the conduct and information reflected in the Joint Evidentiary Record. The Parties have agreed to extend the transparency and training remedies adopted in the Phase I Settlement Agreement through 2025, by which PG&E has agreed to:

> Provide notice to Public Advocates Office, SED, and TURN [The Utility Reform Network] regarding tours of PG&E facilities by Commission decisionmakers, transmittals of rating agency or investor analyst reports to a decisionmaker, and planned meetings involving certain senior PG&E officials and Commissioners or their advisors.

> PG&E has also agreed to provide training to its Regulatory Affairs and Law Department personnel.

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 20 of 42

PG&E has also agreed to additional non-financial remedies as a result of the conduct and issues that comprise Phase II of this proceeding:

> PG&E agrees not to contract with any consultant for "Advocacy Work" (as that term is defined by Paragraph 2.3.E) before the Commission through 2025.  After this period and through 2030, PG&E has agreed to include summaries of the Commission's *ex parte* rules in all contracts for consultants providing PG&E "Advocacy Work" before the Commission.

> PG&E agrees not to oppose a request by any Non-PG&E Party for a Commission rulemaking to apply the *ex parte* rules to certain Advice Letter proceedings (Paragraph 2.3G).  The Parties agreed to include this provision because of the communications in the Joint Evidentiary Record that appear to reflect discussions between PG&E and Commission decisionmakers regarding a renewable power purchase agreement Advice Letter filing in 2012.

The Commission agrees that theses remedies are substantial and adequate to help prevent a recurrence of the type of conduct from PG&E that is the subject of this proceeding proceedings.

### 4.2.  The Phase II Settlement Agreement is Consistent with Law

The issue of sanctions, or an agreed upon fine or penalty, to be imposed encompasses consideration of Pub. Util. Code § 2107, which sets a $500 minimum and a $100,000 maximum fine for each offense, as well as the Commission precedent that has applied this law.  In addition, it is incumbent on the Commission to consider the five factors for assessing the size of the fines or penalties that the Commission identified in the Affiliate Rulemaking Decision, D.98-12-075.  We discuss each of these authorities below.

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 21 of 42

### 4.2.1. Prior Precedent

To assist the Commission in this endeavor, we must look at our precedent in other similar proceedings. As this Commission observed in *Decision Affirming Violations of Rule 8.4 and Rule 1.1 and Imposing Sanctions on Southern California Edison Company*,[6] "Commission precedent in imposing sanctions for *ex parte* violations has ranged from relatively minor fines, or none at all, to requiring training on ethics and the Commission's *ex parte* rules, to mere admonishments." Prior to December of 2015, the largest penalty imposed for violating the *ex parte* rules was imposed on PG&E for $1,050,000, coupled with the requirement that PG&E's shareholders fund a ratemaking disallowance (estimated at approximately $72 million) in reparation to ratepayers of a significant portion of the revenue requirement that would have been collected during the five-month delay caused by PG&E's actions.[7]

Since then, the fines and penalties have increased. On December 8, 2015, the Commission issued D.15-12-016 (*Decision Affirming Violations of Rule 8.4 and Rule 1.1 and Imposing Sanctions on Southern California Edison Company*), wherein SCE received a fine of $16,740,000 ($190,000 [eight *ex parte* violations]; $16,520,000 [continuing Rule 1.1 violation calculated at $20,000 x 826 days]; and $30,000 [for a second Rule 1.1 violation].) And in Phase I of this proceeding, the Commission

---

[6] D.15-12-016, 44; *see also Decision Modifying Law and Motion Judge's Ruling Imposing Sanctions for Violation of Ex Parte Rules* (D.14-11-041, 11 [same].)

[7] D.14-11-041, 13 (20 *ex parte* violations times $50,000, plus an additional $50,000 for the single violation of Rule 1.1); and Ordering Paragraph 3. PG&E estimates that the disallowance will ultimately total approximately $72 million. (Joint Motion at 20.) *See also Decision Affirming Violations of Rule 8.4 and Rule 1.1 and Imposing Sanctions on Southern California Edison Company* (D.15-12-016, 46 [eight *ex parte* violations and one non-continuing Rule 1.1 violation times $50,000 equals $450,000].

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 22 of 42

approved a settlement with penalties and forbearances totaling $97.5 million. This increase in the fines and settlements is a reflection of the seriousness in which the Commission views *ex parte* violations because of their negative impact on the Commission's goal of fostering transparency in its proceedings.

Compared with similar *ex parte* violations in other proceedings, and in Phase I of this proceeding, it appears that PG&E's agreement to forgo $6,000,000, to pay $2,000,000 to the State General Fund, and to pay $1,000,000 each to the Cities of San Bruno and San Carlos, would be in line with previous settlement ranges. Thus, the Commission concludes that that those aspects of the Phase II Settlement Agreement are consistent with the law.

### 4.2.2. The 98-12-075 Factors

In assessing the amount of a fine or penalty, the Commission focusses on the severity of the offense and the conduct of the utility. These two factors have various additional considerations that we address here because they are also relevant in determine if the settled on fine or penalty is reasonable.

*How many days did each violation continue*: In this instance, no party has advocated that in calculating the settlement, the number of days a violation occurred must be calculated. Instead, their focus has been on identifying the violations themselves, in which Commission proceedings the violations occurred, and how those violations should be punished and curbed in the future. The Commission agrees with that approach in evaluating the Phase II Settlement Agreement and will not attempt to determine if a daily fine should be imposed in addition to the fines that have been agreed to by the Parties.

*What harm was caused by virtue of the violations (This includes harm to the integrity of the regulatory process)*: There is no question that the *ex parte* violations have harmed the Commission's regulatory process. It is California's

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 23 of 42

public policy that public agencies conduct their business and meetings in public. This policy is memorialized in the Bagley-Keene Open Meeting Act (Government Code §§ 11120, *et seq.*)  Hand in hand with the need for openness in its proceedings is the requirement that *ex parte* restrictions and reporting obligations be adhered to in order to ensure due process.  The concept of due process of law is found both the United States Constitution[8] and our California Constitution.[9] Backchannel communications strike at the heart of the Commission's goals of openness and due process.  As such, it is appropriate that evidence of *ex parte* violations should warrant a financial penalty which the Phase II Settlement Agreement provides.

*What was the utility's conduct in preventing, detecting, correcting, disclosing and rectifying the violation*:  Once the additional *ex parte* violations came to light, PG&E disclosed them and cooperated by responding to Data Requests and working out a stipulation that became part of the Joint Evidentiary Record.  PG&E has also agreed to terms designed to prevent these *ex parte* violations from occurring in the future.

*What amount of fine will achieve the objective of deterrence:*  For the reasons set forth in Sections 4.1.2. and 4.1.3., we believe that the fine and the non-financial remedies will encourage compliance with the Commission's *ex parte* rules in the future.

---

[8]  U.S. Constitution, Fourteenth Amendment:  "No state shall…deprive any person of life, liberty or property without due process of law."

[9]  Cal. Const. Art. I, § 7(a):  "A person may not be deprived of life, liberty, or property without due process of law…"

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 24 of 42

*What fine or sanction has the Commission imposed under reasonably comparable factual circumstances*:  The Commission incorporates by reference, its discussion from Section 4.2.1. of this decision that the fine is comparable to fines imposed under similar circumstances.

The Commission concludes that the Phase II Settlement Agreement satisfies the D.98-12-075 factors for the determining the imposition of a fine or penalty.

### 4.3. The Phase II Settlement Agreement is in the Public Interest

As we recognized above, there is a strong public policy favoring the settlement of disputes to avoid costly and protracted litigation.  The Phase II Settlement Agreement has put an end to years of disputes between the Commission, Commission staff, PG&E, the City of San Bruno, the City of San Carlos, PAO, SED, and TURN that has spanned at least nine separate proceedings following the San Bruno tragedy.  This resolution has allowed all sides to avoid the cost of further proceedings as to these issues, the result of which is an uncertainty for the Parties.  As such, the Phase II Settlement Agreement furthers California's public interest in resolving disputes.

### 4.4. The Phase II Settlement Agreement has the Unanimous Sponsorshp of the Parties

PG&E, the City of San Bruno, the City of San Carlos, PAO, SED, and TURN are all the parties to this proceeding and have jointly agreed to the Phase II Settlement Agreement and the *Motion* for adoption of same.

### 4.5. The Sponsoring Parties are Fairly Reflective of the Affected Interests

The Parties to the Phase II Settlement Agreement consist of a utility (PG&E), municipalities (Cities of San Carlos and San Bruno), and public interest

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 25 of 42

groups (PAO, SED, and TURN). These municipalities and consumer interest groups are advocates for ratepayers and public entities affected by PG&E's conduct, so the positions they have taken in negotiating and executing the Phase II Settlement Agreement would reflect the views of the ratepaying public.

### 4.6. No Term of the Phase II Settlement Contravenes Statutory Provisions or Prior Commission Decisions

As set forth above, the Commission has found that the Phase II Settlement is in accordance with the standards set forth in Rule 12.4 for approving settlements, and D.98-12-075 in evaluating fines and penalties. The financial component of the Phase II Settlement Agreement is also consistent with Commission precedent. Finally, the non-financial remedies are designed to ensure compliance with the Commission's *ex parte* rules. Thus, the Commission concludes that no term of the Phase II Settlement Agreement contravenes either statutory provisions or Commission precedent.

### 4.7. The Phase II Settlement Agreement Conveys Sufficient Information to Allow the Commission to Discharge its Regulatory Obligations with Respect to the Parties and Their Interests

The Phase II Settlement Agreement, when combined with the stipulations and Joint Evidentiary Record, has sufficient factual information to allow this Commission to discharge its regulatory obligations. The Parties have detailed

the steps leading up to the terms of the Phase II Settlement Agreement;

the factors that the parties weighed in determining the payments;

the monies PG&E agreed to forgo; and

- 23 -

the steps PG&E has agreed to implement on a forward basis to ensure that the *ex parte* violations do not occur again in the future.

The Commission believes it has sufficient information to determine that the Phase II Settlement Agreement meets the criteria set forth in Rule 12.1(d) and in Commission precedent.

## 5. Waiver of Comment Period

As the Parties are in complete agreement regarding the Phase II Settlement Agreement, we deem this decision to be uncontested so that the 30-day comment period may be waived pursuant to Rule 14.6 (c)(2).

## 6. Assignment of Proceeding

Marybel Batjer is the assigned Commissioner and Robert M. Mason III is the assigned Administrative Law Judge in this proceeding.

### Findings of Fact

1. On November 23, 2015, the Commission instituted this Order Instituting Investigation (OII).

2. On May 3, 2018, the Commission issued D.18-04-014 which granted the Joint Motion to adopt the Phase I Settlement Agreement.

3. The Commission opened Phase II of this proceeding in light of newly discovered communications that PG&E first disclosed in September of 2017.

4. On May 15, 2019, the Parties submitted a proposed evidentiary record entitled the Joint Evidentiary Record.

5. On May 15, 2019, the Parties filed a *Motion to Adopt Joint Evidentiary Record*. This agreed upon document is divided into three sections:

Section I describes the sources of information from which the documents were obtained;

Case: 19-30088    Doc# 6708-1    Filed: 04/08/20    Entered: 04/08/20 18:27:24    Page 27 of 42

Section II consists of factual stipulations that the Parties reached concerning which documents would be included in the Joint Evidentiary Record and which Commission proceedings were implicated; and

Section III is comprised of the underlying evidentiary materials developed through discovery of PG&E in Phase II, as well as the earlier September 2017 disclosure materials.

6. On June 28, 2019, the Parties filed their *Joint Motion for Adoption of the Phase II Settlement Agreement*. Under the terms of the Phase II Settlement Agreement, PG&E has agreed to do the following:

Pay $2 million to the State of California General Fund;

Forego collection of $5,000,000 in revenue requirements during the term of its 2019 Gas Transmission and Storage rate case;

Forego collection of $1,000,000 in revenue requirements in its 2020 General Rate Case cycle;

Pay $1,000,000 each to the City of San Bruno and City of San Carlos General Funds; and

The Phase II Settlement Agreement includes a number of non-financial remedies that PG&E has agreed to undertake.

7. The Phase II Settlement Agreement states that before payments can be made, the settlement must be approved by the Bankruptcy Court as the Phase II Settlement Agreement covers prepetition claims.

**Conclusions of Law**

1. All issues in this proceeding are encompassed by and resolved in the Phase II Settlement Agreement.

2. The Parties to the Phase II Settlement Agreement are all the active parties in this proceeding.

3. The Parties are fairly reflective of the affected interests.

Case: 19-30088   Doc# 6708-1   Filed: 04/08/20   Entered: 04/08/20 18:27:24   Page 28 of 42

4. No term of the Phase II Settlement agreement contravenes statutory provisions or prior Commission decisions.

5. The Phase II Settlement Agreement is reasonable in light of the record, is consistent with law, and is in the public interest.

6. The Phase II Settlement Agreement fully resolves and settles all disputed issues in the OII.

7. The Phase II Settlement Agreement should be adopted.

8. The Parties' *Motion to Adopt Joint Evidentiary Record* should be granted.

# O R D E R

**IT IS ORDERED** that:

1. The Phase II Settlement Agreement between the City of San Bruno, the City of San Carlos, the Public Advocates Office, the Safety Enforcement Division, The Utility Reform Network, and Pacific Gas and Electric Company (The Parties), is approved. The Parties have agreed that Pacific Gas & Electric Company shall pay $2 million to the State of California General Fund.

2. Once this decision becomes final, Pacific Gas and Electric Company (PG&E) shall seek approval of the Phase II Settlement Agreement from the judge in the Bankruptcy Court who is overseeing PG&E bankruptcy filings. Within 30 days after the Bankruptcy Court has approved the Phase II Settlement Agreement, PG&E shall make a payment of $2 million, payable to the Commission and addressed as follows: California Public Utilities Commission Fiscal Office, Room 3000, 505 Van Ness Avenue, San Francisco, CA 94102, in the form of a certified check payable to the Public Utilities Commission for credit to the State General Fund.

Case: 19-30088 Doc# 6708-1 Filed: 04/08/20 Entered: 04/08/20 18:27:24 Page 29 of 42

3. The *Motion to Adopt Joint Evidentiary Record* is granted.

4. Investigation 15-11-015 is closed.

This order is effective today.

Dated December 5, 2019, at San Francisco, California.


MARYBEL BATJER
            President
LIANE M. RANDOLPH
MARTHA GUZMAN ACEVES
CLIFFORD RECHTSCHAFFEN
GENEVIEVE SHIROMA
            Commissioners

# SETTLEMENT AGREEMENT

**IN THE MATTER OF THE ORDER INSTITUTING INVESTIGATION AND ORDERING PACIFIC GAS AND ELECTRIC COMPANY TO APPEAR AND SHOW CAUSE WHY IT SHOULD NOT BE SANCTIONED FOR VIOLATIONS OF ARTICLE 8 AND RULE 1.1 OF THE RULES OF PRACTICE AND PROCEDURE AND PUBLIC UTILITIES CODE SECTIONS 1701.2 AND 1701.3
I. 15-11-015**

**SETTLEMENT AGREEMENT – PHASE II OF PROCEEDING**

**June 28, 2019**

The City of San Bruno, the City of San Carlos, the Public Advocates Office, the Safety and Enforcement Division, The Utility Reform Network (collectively, the "Non-PG&E Parties"), and Pacific Gas and Electric Company ("PG&E") (together with the Non-PG&E Parties, the "Parties") agree to settle Phase II of Investigation ("I.") 15-11-015 (the "OII") and resolve all remaining issues in this Phase II of the OII on the following terms and conditions, which will become effective on the date of a Final Order by the California Public Utilities Commission (the "CPUC" or "Commission") approving this Settlement Agreement.

<u>RECITALS</u>

The following recitals are provided to set forth the nature of the events that gave rise to Phase II of the OII and the resulting Settlement Agreement.

1.     The Commission instituted this OII on November 23, 2015 to assess whether certain PG&E communications constituted violations of the Commission's rules governing ex parte communications.

2.     On March 28, 2017, the Parties submitted a proposed settlement that, at the time, they expected to resolve all of the issues in the OII (the "Phase I Settlement Agreement").

3.     On September 21, 2017, while the Commission's consideration of the proposed settlement was pending, PG&E disclosed to the service list in the OII additional communications (the "September 2017 Disclosure") that the company recognized raised issues similar to some of those that were considered by the Parties in their proposed settlement of the OII.

4.     On April 26, 2018, in Decision ("D.") 18-04-014, the Commission approved the Parties' proposed settlement of the issues originally raised by the OII, with modifications, and ordered this Phase II of the OII in order to assess whether any of the communications in PG&E's September 2017 Disclosure constituted violations of the Commission's rules governing ex parte communications.

5. During Phase II, the Public Advocates Office and the Safety and Enforcement Division conducted discovery of PG&E in addition to the emails contained in PG&E's September 2017 Disclosure.

6. From among these discovery materials and the September 2017 Disclosure, the Parties compiled a proposed joint record for this Phase II (the "Joint Evidentiary Record"), which the Parties submitted to the Commission on May 15, 2019, in the interest of resolving all issues raised by these materials with respect to PG&E.

7. The Parties agree that some of the communications included in the Joint Evidentiary Record are, or likely would be found by the Commission to be, violations of the Commission's ex parte rules, but, recognizing that the Parties would have difficulty reaching agreement as to each communication, have not identified specific violations as part of this Settlement Agreement.

8. Throughout Phase II of the OII, the Parties engaged in multiple settlement discussions in person and by telephone.

9. On June 4, 2019, the Parties held a settlement conference, pursuant to Commission Rule 12.1.

10. As a result, the Parties have entered into this Settlement Agreement, subject to approval by the Commission.

ARTICLE I
JOINT EVIDENTIARY RECORD

1.1 The Parties agree that the Joint Evidentiary Record is a sufficient evidentiary basis for this Settlement Agreement. The Joint Evidentiary Record consists of three sections, as described below.

1.2 Section I describes the sources of information from which the documents in the Joint Evidentiary Record were obtained.

1.3 Section II consists of factual stipulations reached by the Parties concerning the documents included in Section III of the Joint Evidentiary Record.

1.4 Section III is comprised of the underlying evidentiary materials developed through discovery of PG&E in Phase II, as well as the September 2017 Disclosure materials.

2

## ARTICLE II
## TERMS OF THE SETTLEMENT

2.1     Admissions

     2.1.A     In 2012, PG&E retained former California Public Utilities Commission Commissioner Susan Kennedy as a consultant to lobby the Commission in proceedings, including the San Bruno pipeline explosion investigations (I. 12-01-007, I. 11-11-009, and I. 11-02-016) and the Line 147 Order to Show Cause proceeding (R. 11-02-019), where ex parte communications were prohibited by Commission rules.

     2.1.B     During the time period in which Ms. Kennedy was providing lobbying services to PG&E before the Commission, PG&E Vice President Brian Cherry, acting on behalf of PG&E, was aware of and authorized certain communications between Ms. Kennedy and Commission decisionmakers in proceedings in which ex parte communications were prohibited, which violated the Commission's ex parte communication rules.

     2.1.C     Ms. Kennedy was an agent of PG&E while also representing another party (Bottle Rock Power, LLC) that was negotiating with PG&E for contract approval before the Commission.

     2.1.D     As agreed to in the Phase I Settlement Agreement, during the period from 2010 to 2014, PG&E committed multiple violations of the Commission's ex parte communication rules in Article 8 of the Rules of Practice and Procedure, through communications that were either prohibited or not reported to the Commission as required by these rules. By the totality of these violations, PG&E also violated Commission Rule of Practice and Procedure 1.1.

     2.1.E     As agreed to in the Phase I Settlement Agreement, PG&E's employees and agents engaged in communications with decisionmakers at the Commission, as well as related conduct that was harmful to the regulatory process. Under the unique circumstances of this case, where the two Cities who are parties to this Settlement Agreement brought certain of these communications forward and participated in proceedings which the communications concerned, it is reasonable that compensation and other financial and non-financial remedies be awarded to those two Cities as part of a comprehensive Settlement Agreement resolving these issues, and to customers more generally.

2.2     Financial Remedies

In order to resolve all issues raised by the materials included in PG&E's September 2017 Disclosure and the materials produced by PG&E in discovery in Phase II (including those

3

materials Bates stamped EPOII0000001 – EPOII0011263), without the need for the Commission to rule on each communication included in the Joint Evidentiary Record, or determine which communications could be characterized as continuing violations, PG&E will pay a total financial remedy of $10 million as set forth in the following provisions. Ratepayers will bear no costs associated with the financial remedies set forth below.

### 2.2.A    General Fund Remedy

PG&E shall pay $2 million to the State of California General Fund. This shall be payable to the Government pursuant to Section 2100 *et seq.* of the Public Utilities Code.

### 2.2.B    Gas Transmission and Storage Rate Case Ratemaking Remedy

PG&E shall additionally forego collection of $5,000,000 in revenue requirements during the term of its 2019 Gas Transmission and Storage rate case. This remedy shall be implemented through PG&E's Annual Gas True-up Advice Letter or such mechanism as may be agreed upon by the Parties. The amount above shall be allocated among and within customer classes in accordance with the applicable allocation and ratemaking methodologies then adopted by the Commission.

### 2.2.C    General Rate Case Ratemaking Remedy

PG&E shall additionally forego collection of $1,000,000 in revenue requirements in its 2020 General Rate Case ("GRC") cycle, with such amount to be reduced from the overall amount authorized by the Commission in its upcoming 2020 GRC decision. This remedy shall be implemented through PG&E's Annual Electric and Gas True-up Advice Letters, or such mechanisms as may be agreed upon by the Parties. The amount above shall be allocated among and within customer classes in accordance with the applicable allocation and ratemaking methodologies then adopted by the Commission.

### 2.2.D    Compensation Payable to the City of San Bruno and the City of San Carlos

PG&E shall pay:

- $1,000,000 to the City of San Bruno General Fund.

- $1,000,000 to the City of San Carlos General Fund.

These payments are intended to compensate the City of San Bruno and the City of San Carlos for attorney's fees, expenses, and any other harm caused on account of the conduct described in Paragraphs 2.1.A, 2.1.B, 2.1.C, 2.1.D, and 2.1.E or reflected in (a) PG&E's September 2017 Disclosure or (b) the materials PG&E produced in discovery, including those Bates stamped EPOII0000001 – EPOII0011263, and under the unique circumstances of this proceeding.

4

2.3    Non-Financial Remedies[1]

The following remedies are meant to impose requirements on PG&E independent of the
Commission's Rules.  Therefore, these additional requirements shall not apply to any event or
communication for which PG&E, in conformance with Commission rules, files an ex parte
communication notice with the Commission.  The Parties do not intend these requirements to
reflect in any way their respective positions concerning the scope and applicability of the
Commission's Rules, nor are these requirements intended to apply in lieu of them.

>    2.3.A    Notice of Tours Provided to CPUC Decisionmakers (Extension of Phase I
>             Remedy)

Through December 31, 2025, if PG&E gives a tour of its facilities to a Commission
decisionmaker[2], it will provide notice within three days of the tour in an open General Rate Case,
Gas Transmission and Storage rate case, or other relevant cost recovery case if the facility,
technology, process, or information to be addressed during the tour is at issue in such a case, and
will additionally invite a representative of the Public Advocates Office, the Safety and
Enforcement Division, and The Utility Reform Network to attend the tour.  The notice will
include a summary of PG&E's oral presentation(s) during the tour and provide all written
materials shown to or provided to a Commission decisionmaker during the tour.  This is intended
as an extension of the remedy agreed to by PG&E in the settlement of Phase I of this OII, as
reflected in D. 18-04-014 at Ordering Paragraph 1 and the Phase I Settlement Agreement at
Paragraph 2.3.A.

>    2.3.B    Notice of Transmittals of Rating Agency and Investor Analyses to CPUC
>             Decisionmakers (Extension of Phase I Remedy)

Through December 31, 2025, if PG&E transmits via email a credit rating agency or investor
report or analysis to a Commission decisionmaker, PG&E simultaneously will provide a copy to
designated representatives of the Public Advocates Office, the Safety and Enforcement Division,
The Utility Reform Network, and all parties in PG&E's most recent cost of capital, General Rate
Case, and Gas Transmission and Storage proceedings.  This is intended as an extension of the
remedy agreed to by PG&E in the settlement of Phase I of this OII, as reflected in D. 18-04-014
at Ordering Paragraph 1 and the Phase I Settlement Agreement at Paragraph 2.3.B.

---

[1] The remedies described in Paragraphs 2.3.A, 2.3.B, 2.3.C, and 2.3.D are identical to those
adopted in D. 18-04-014, through the Phase I Settlement at Paragraphs 2.3.A, 2.3.B, 2.3.C, and
2.3.D, except as pertains to extending their period of applicability to December 31, 2025 and
other clerical corrections.

[2] "Decisionmaker" means any Commissioner, the Chief Administrative Law Judge, any
Assistant Chief Administrative Law Judge, the policy or legal advisory staff assigned to a
Commissioner's office, the assigned Administrative Law Judge, or the Law and Motion
Administrative Law Judge." (Rule 8.1 of the Commission's Rules of Practice and Procedure).

5

### 2.3.C Notice of "Meet and Greet" Meetings Between Certain PG&E Officers and CPUC Decisionmakers (Extension of Phase I Remedy)

Through December 31, 2025, if PG&E Corporation's Chief Executive Officer, PG&E's President, PG&E Corporation's Chief Financial Officer, or its General Counsel, participates in a meeting arranged or accepted by PG&E to be attended only by PG&E and its agents and the Commissioner and/or the Commissioner's advisors, PG&E will provide notice within three days to designated representatives of the Public Advocates Office and The Utility Reform Network. Such notice will include any written materials used during the meeting or discussion and a summary of PG&E's oral communications. This is intended as an extension of the remedy agreed to by PG&E in the settlement of Phase I of this OII, as reflected in D. 18-04-014 at Ordering Paragraph 1 and the Phase I Settlement Agreement at Paragraph 2.3.C.

### 2.3.D Training for PG&E Employees (Extension of Phase I Remedy)

PG&E provides training on the Commission's ex parte communication rules, and through December 31, 2025, PG&E will provide to the other Parties to I. 15-11-015 (a) a copy of the training materials used for this purpose, and (b) an annual certificate of completion for the training of all officers, Regulatory Affairs (or its successor) employees and Law Department attorneys. PG&E previously provided an initial training within one year of the Commission's approval of the Phase I Settlement Agreement in this matter. This is intended as an extension of the remedy agreed to by PG&E in the settlement of Phase I of this OII, as reflected in D. 18-04-014 at Ordering Paragraph 1 and the Phase I Settlement Agreement at Paragraph 2.3.D.

### 2.3.E Prohibition on Commission Advocacy Consultants Through 2025

PG&E shall not contract with outside parties for "Advocacy Work" before the Commission through December 31, 2025. "Advocacy Work" as used herein means lobbying on behalf of PG&E directly before the Commission, other than in a public hearing, workshop, or other public forum, which has been noticed to the official service list or on the record of a Commission proceeding. Advocacy Work does not include (a) testimony or participation in a public hearing, workshop, or other public forum, which has been noticed to the official service list or on the record of a Commission proceeding, (b) the provision of technical, advisory, or expert services to support PG&E's advocacy before the Commission, where the primary purpose of such services is the technical, advisory, or expert services, and not lobbying, or (c) lobbying work before any governmental body other than the Commission.

### 2.3.F Advocacy Consultant Contracting Requirements From 2026-2030

Commencing in January 1, 2026 and continuing through December 31, 2030, PG&E shall include in all contracts with outside parties for "Advocacy Work," as defined herein, before the Commission a summary of the Commission's ex parte communication rules, as then in effect, and contractually obligate the outside parties to adhere to these rules. PG&E shall provide the summary of the ex parte rules it intends to include in such contracts to the Public Advocates Office, the Safety and Enforcement Division, and The Utility Reform Network before January 1, 2026.

### 2.3.G    Non-Opposition To Request For Advice Letter Rulemaking

PG&E will not oppose a request by any Party to this proceeding for a rulemaking to consider a change to the Commission's rules that would extend the ex parte rules set forth in Article 8 of the Commission's Rules of Practice and Procedure to cover, as a "ratesetting proceeding," the advice letter process for those instances where the process could result in a Commission resolution.

### ARTICLE III
### GENERAL PROVISIONS

### 3.1    Settlement Effective Date

This Settlement Agreement will become effective upon issuance by the Commission of a Final Order approving this Settlement Agreement without modification or condition or, if modified or conditioned, upon its acceptance as so modified by the Parties.  For purposes of this Settlement Agreement, a Commission order will be deemed a Final Order on the last date for filing an application for rehearing if no application is filed by that date, or if any request for rehearing is filed, as of the date on which rehearing is denied, or a Final Order is issued after rehearing.

### 3.2    Confidentiality of Settlement Communications

This Settlement Agreement is submitted on the condition that, if the Settlement Agreement does not become effective, it will not constitute any part of the record in this proceeding or be used for any other purpose.  The communications among the Parties that have produced this Settlement Agreement have been conducted on the explicit understanding that they were undertaken subject to Rule 12.6 of the Commission's Rules of Practice and Procedure, and the rights of the Parties with respect thereto are not impaired or waived by this Settlement Agreement, or the Parties' Joint Motion for Adoption of Settlement Agreement.

### 3.3    Joint Support

The Parties shall jointly request Commission approval of this Settlement Agreement.  The Parties additionally agree to actively support prompt approval of the Settlement Agreement.  Active support shall include written and oral testimony if testimony is required, appearances, briefing, filing an Appeal of a Presiding Officer's decision, and other means as needed to obtain the approvals sought.

### 3.4    Issues Resolved

The Parties agree that this Settlement Agreement is entered to provide a comprehensive resolution of PG&E's alleged violations of the Commission's ex parte rules from 2010 through 2014, including the communications from:  (a) PG&E's September 2017 Disclosure; and (b) the materials PG&E produced in discovery in Phase II of this OII, including those at Bates numbers EPOII0000001 – EPOII0011263.  As such, the Non-PG&E Parties agree that they will not file or re-open any proceedings, or seek additional relief from the Commission or any other court, agency, or body for these alleged violations of the Commission's ex parte rules by PG&E.

7

3.5     Not Precedential in Any Further Proceedings

This Settlement Agreement will not be cited as an example of precedent, nor will it be deemed an admission to bind any Party (except in any proceeding to enforce this Settlement Agreement or as otherwise expressly provided for in Paragraphs 2.1.A, 2.1.B, 2.1.C, 2.1.D, and 2.1.E herein), in any future proceedings, including, but not limited to, any Commission proceedings or any other public utility commission proceedings in another state, and will not be deemed precedential or prejudicial to any Party's rights.

3.6     Applicable Standard of Review

Commission Rule of Practice and Procedure 12.1(d) provides that the Commission will not approve a settlement, whether contested or not, unless the settlement is "reasonable in light of the whole record, consistent with law, and in the public interest." The Parties agree that this standard applies to the Commission's review of this Settlement Agreement, and further agree that, in their view, this Settlement Agreement complies with this standard.

3.7     Governing Law

This Settlement Agreement shall be governed by the laws of the State of California and the Rules of the California Public Utilities Commission.

3.8     Term Relating to PG&E's Bankruptcy Status

Except as may be otherwise instructed by the Commission and ordered by the Bankruptcy Court, PG&E shall satisfy the financial remedies set forth in Paragraphs 2.2.A and 2.2.D , and shall treat and satisfy the claims relating to such remedies as general unsecured claims in accordance with the terms of a confirmed chapter 11 plan of reorganization.  In the event that neither the confirmed plan nor the Commission specifies a time by which PG&E shall satisfy these financial remedies or claims relating thereto, payments to the City of San Bruno, the City of San Carlos, and the State General Fund shall be received not later than any confirmed plan's effective date or, if not reasonably practicable, no later than thirty (30) days thereafter.  Unless the Commission or the Bankruptcy Court specifies a time by which PG&E shall satisfy the ratemaking remedies set forth in Paragraphs 2.2.B and 2.2.C, satisfaction shall occur as provided in such paragraphs no later than the first reasonable opportunity to do so following any confirmed plan's effective date.  PG&E shall file a report in this proceeding no more than 10 days after any confirmed plan's effective date that explains the treatment by the plan of the financial remedies set forth in Paragraphs 2.2.A, 2.2.B, 2.2.C, and 2.2.D and indicates when and how PG&E will satisfy those financial remedies.

3.9     Applicability to PG&E's Successors

The terms of this Settlement Agreement shall apply to PG&E and its successors, if any.

8

***

The Parties' authorized representatives have duly executed this Settlement Agreement on behalf of the Parties they represent.

**CITY OF SAN BRUNO**

Name: Jovan Grogan
Title:   City Manager

Date: _____

**CITY OF SAN CARLOS**

Name: Tara Peterson
Title:   Assistant City Manager

Date: _____

**THE PUBLIC ADVOCATES OFFICE**

Name: Elizabeth Echols
Title:   Director

Date: _____

**SAFETY AND ENFORCEMENT DIVISION**

Name: Amy Yip-Kikugawa
Title:   Attorney for Safety and Enforcement
          Division

Date: _____

**THE UTILITY REFORM NETWORK**

Name: Hayley Goodson
Title:   Staff Attorney

Date: _____

**PACIFIC GAS AND ELECTRIC COMPANY**

Name: Janet Loduca
Title:   General Counsel

Date: 6/28/19

9

***

The Parties' authorized representatives have duly executed this Settlement Agreement on behalf of the Parties they represent.

**CITY OF SAN BRUNO**

Name: Jovan Grogan
Title: City Manager

Date: _____

**SAFETY AND ENFORCEMENT DIVISION**

Name: Amy Yip-Kikugawa
Title: Attorney for Safety and Enforcement Division

Date: _____

**CITY OF SAN CARLOS**

Name: Tara Peterson
Title: Assistant City Manager

Date: 6|28|19

**THE UTILITY REFORM NETWORK**

Name: Hayley Goodson
Title: Staff Attorney

Date: 6/28/19

**THE PUBLIC ADVOCATES OFFICE**

Name: Elizabeth Echols
Title: Director

Date: _____

**PACIFIC GAS AND ELECTRIC COMPANY**

Name: Janet Loduca
Title: General Counsel

Date: 6/28/19

9

***

The Parties' authorized representatives have duly executed this Settlement Agreement on behalf of the Parties they represent.

**CITY OF SAN BRUNO**

Name: Jovan Grogan
Title:  City Manager

Date: _____

**CITY OF SAN CARLOS**

Name: Tara Peterson
Title:  Assistant City Manager

Date: _____

**THE PUBLIC ADVOCATES OFFICE**

Name: Elizabeth Echols
Title:  Director

Date:  4/28/19

**SAFETY AND ENFORCEMENT DIVISION**

Name: Amy Yip-Kikugawa
Title:  Attorney for Safety and Enforcement Division

Date:  June 28, 2019

**THE UTILITY REFORM NETWORK**

Name: Hayley Goodson
Title:  Staff Attorney

Date: _____

**PACIFIC GAS AND ELECTRIC COMPANY**

Name: Janet Loduca
Title:  General Counsel

Date: _____

9