**Annex 2**

**Scoping Memo**



**FILED**
05/07/19
08:17 AM

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation and Order to Show Cause on the Commission's Own Motion into the Operations and Practices of Pacific Gas and Electric Company with Respect to Locate and Mark Practices and Related Matters. | Investigation 18-12-007 |

### ASSIGNED COMMISSIONER'S SCOPING MEMO AND RULING

This scoping memo and ruling sets forth the category, issues to be addressed, and schedule of the proceeding pursuant to Public Utilities (Pub. Util.) Code Section 1701.1 and Article 7 of the Commission's Rules of Practice and Procedure.

### 1. Procedural Background

The Order Instituting Investigation (OII) initiating this proceeding was issued by the Commission on December 13, 2018. A Law and Motion Hearing (Hearing) was held on February 5, 2019 to address proposed redactions to the investigative report (and supporting attachments) prepared by the Commission's Safety and Enforcement Division (SED),[1] and to clarify the scope of the proceeding. The need for clarification of the scope of the proceeding was described as follows:

---

[1] *Investigative Report into the Operations and Practices of Pacific Gas & Electric Company's Damage Prevention and Locate & Mark Programs* (SED Report).

The text of the OII focuses upon the locating and marking of PG&E's natural gas facilities, but the case caption and the list of "Issues Presented" are more general, and could apply to electric facilities as well as gas facilities. In order to clarify the scope of the proceeding, at the Law and Motion Hearing:

1. Pacific Gas and Electric Company (PG&E) should be prepared to discuss the structure and organization of its locate and mark unit, in particular whether there are separate staff, management and processes for locating and marking electric facilities and gas facilities; and

2. SED should be prepared to discuss whether its allegations and contentions apply to the locating and marking of electric facilities as well as gas facilities. (Administrative Law Judge's Ruling Setting Law and Motion Hearing and Prehearing Conference (PHC) at 3.)

At the Hearing, in response to the ALJ's questions, PG&E explained:

So the structure is that gas facilities, both gas distribution and transmission facilities and, also, electric distribution facilities are handled by one group and, namely, the group in gas operations that is the subject of the OII. So electric distribution facilities are handled, marked, and processed in the same way that all gas facilities are processed. However, electric transmission facilities are handled in a completely separate process by a separate group and done in a different process altogether. (Transcript Vol. 1 at 11-12.)

SED indicated that this was consistent with their understanding. (*Id.* at 12.) In response, the assigned Administrative Law Judge (ALJ) indicated that he believed it would be reasonable for the scope of the proceeding to consider the work of the gas operations unit on both gas facilities and electric distribution facilities, and that SED should clarify the scope of the OII by the PHC scheduled for April 4, 2019. (*Id.* at 14-15.)

On February 25, 2019, the assigned ALJ issued a ruling on the redaction of information from the SED Report, determining that it was appropriate to

- 2 -

Case: 19-30088    Doc# 6711-2    Filed: 04/08/20    Entered: 04/08/20 20:54:27    Page 3 of 11

publicly disclose the names of PG&E employees with safety responsibilities.[2] PG&E subsequently filed a motion to clarify the ruling's application to one attachment to the SED Report.[3]

On March 14, 2019, PG&E filed its response to a series of questions in the OII.[4]

On March 22, 2019, SED filed a motion to address the questions raised by the ALJ whether locate and mark activities for electric distribution are within the scope of the OII.[5] In that motion, SED stated:

> Based upon the information that SED has discovered since the law and motion hearing, SED requests that the scope of the Order Instituting Investigation, I.18-12-007, be clarified to include the following:
>
> Has PG&E employed Locate and Mark practices related to its underground electric distribution infrastructure that were unsafe and/or in violation of requirements such as PG&E's procedures; and/or Federal, State, or Commission requirements? This question should include, but not necessarily be limited to whether PG&E:
>
> - Did not use a Qualified Electrical Worker when needed to complete a Locate and Mark ticket?
>
> - Did not follow its own procedures when they required the help of Qualified Electrical Workers to complete a Locate and Mark ticket?

---

[2] *Administrative Law Judge's Ruling on Redaction of Information in the Investigative Report of the Commission's Safety and Enforcement Division.*

[3] *Pacific Gas and Electric Company's Motion to Clarify Ruling on Redaction of Information in SED Report*, filed March 28, 2019.

[4] *Pacific Gas and Electric Company's 90-Day Report and Response to Locate and Mark OII Directives 1 to 9* (PG&E 90-Day Report).

[5] *Safety and Enforcement Division's Motion to Include Electric Distribution in the Scope of Proceeding.*

- Used techniques that were not allowed to complete a Locate and Mark when PG&E failed to provide a needed Qualified Electrical Worker to complete a Locate and Mark  (Not Allowed Locate and Mark Techniques)?

- Did not timely Locate and Mark its underground natural gas infrastructure in compliance with California Government Code Section 4216 when PG&E failed to provide a needed Qualified Electrical Worker to complete a Locate and Mark?

- Falsified Locate and Mark tickets so that they incorrectly showed as complete?

- Falsified Locate and Mark tickets so that they incorrectly showed as completed in a timely fashion in compliance with California Government Code Section 4216?

- Falsified Locate and Mark tickets so that they incorrectly omitted the use of "Not Allowed Locate and Mark Techniques"?

- Experienced dig-ins on its system due at least in part to Locate and Mark Practices that were unsafe, inaccurate, and/or in violation of requirements such as PG&E's procedures; and/or Federal, State, or Commission requirements.

- Experienced injuries or casualties on its system related to dig-ins due at least in part to Locate and Mark practices that were unsafe, inaccurate, and/or in violation of requirements such as PG&E's procedures; and/or Federal, State, or Commission requirements?

- Failed to properly acknowledge and assume responsibility for PG&E's fault related to any dig-ins (including injury or casualty resulting from such dig-ins) when PG&E employed Locate and Mark practices that were unsafe, inaccurate, and/or in

> violation of requirements such as PG&E's procedures; and/or Federal, State, or Commission requirements?
>
> - Experienced other safety related consequences and/or problems due at least in part to PG&E's employment of Locate and Mark practices related to its underground electric distribution infrastructure that were unsafe and/or in violation of requirements such as PG&E's procedures; and/or Federal, State, or Commission requirements?

PG&E responded that it believed the issues identified by SED relating to the use of Qualified Electrical Workers are encompassed within the scope of the OII; PG&E did not object to the inclusion of the other issues identified by SED if those are determined to be within the scope of the OII.[6]

A PHC was held on April 4, 2019. The primary focus of the discussion at the PHC was on the scope of the proceeding, the scope and granularity of evidentiary hearings, and the possibility of a partial settlement or factual stipulation. In addition, at the PHC the Coalition of California Utility Employees (CUE) sought to revisit the disclosure/redaction of employee names, arguing that more employee names should be redacted than was ordered in the prior ALJ Ruling. (Transcript v. PHC at 44-47.) That issue was taken under submission, and a ruling addressing it was issued on April 15, 2019.[7]

## 2. Issues

Based on the OII, the pleadings filed to date, and the discussions at the Law and Motion Hearing and the PHC, the main issues to be addressed in this proceeding are:

---

[6] *Pacific Gas and Electric Company's Response to Safety and Enforcement Division's Motion to Include Electric Distribution in the Scope of Proceeding*, filed April 2, 2019.

[7] *Administrative Law Judge's Ruling on Redaction of Information.*

1. Did PG&E's locate and mark procedures, practices and/or activities relating to its underground electric distribution and natural gas infrastructure violate any applicable statutes, rules, regulations or orders?

2. Did PG&E's locate and mark recordkeeping and reporting procedures, practices and/or activities violate any applicable statutes, rules, regulations or orders?  (PG&E has admitted that its recordkeeping and reporting contained inaccurate information, so that is not a contested issue.)

3. Did PG&E violate any applicable statutes, rules, regulations or orders relating to the use of Qualified Electrical Workers for locating and marking underground infrastructure?

4. What is the appropriate penalty or remedy for any violations?

In examining and considering these primary issues over the relevant period of time from 2012 through 2017, the specific issues identified in the OII and in SED's March 22, 2019 Motion are within the scope of the proceeding and may be taken into consideration as well.  Those issues relate to the severity of harm caused by any violations and the degree of culpability of PG&E, and can be summarized as focusing on:

1. The actual and potential consequences of any such violations, including dig-ins, injuries and fatalities, property damage, inaccurate records and statistics, or other harm;

2. Whether the violations were intentional or inadvertent; and

3. PG&E management's knowledge of any such violations.

This ruling does not narrow or expand the issues to be considered, but is intended to clarify and prioritize how they will be addressed in this proceeding.

### 3. Need for Evidentiary Hearing

PG&E attributes at least some of its problems with inaccurate tickets on an ongoing "glitch" in its IrthNet computerized tracking system.[8] PG&E describes a consequence of this as follows:

> PG&E also notes that it is difficult to discern, today, which responses and notes were literally falsified, which were accurate but designed to take advantage of the glitch, and which were accurate, good-faith recording of events that occurred prior to the due time -- with absolutely no intention of making a late ticket appear timely.  (PG&E 90-Day Report at 105.)

At the PHC, the assigned ALJ and Commissioner expressed concern that attempting to determine the answer to this question via cross-examination for each and every inaccuracy in PG&E's records for a period of years would be cumbersome, inefficient and would likely not provide clear answers.  (Transcript v. PHC at 19-32.)  Accordingly, the assigned ALJ and Commissioner encouraged SED and PG&E to engage in negotiations to reach a partial stipulation, such as a proxy number of violations (or at least a number of inaccurate tickets and/or unqualified crews), which would obviate the need for cross-examination of individual witnesses on this issue.  While such a stipulation may reduce the need for or duration of evidentiary hearings, it is not clear that it would eliminate the need for hearings.  Accordingly, this Scoping Memo determines that evidentiary hearings are needed.

### 4. Schedule

Until the nature and scope of any potential stipulation is determined, the scope and duration of any evidentiary hearings cannot be accurately determined.

---

[8] *See* generally, *Pacific Gas and Electric Company's 90-Day Report and Response to Locate and Mark OII Directives 1 to 9, Volume 1.*  (PG&E 90-Day Report)

To allow the parties time to negotiate, a second PHC is scheduled for May 29, 2019, at 1:30 p.m. in San Francisco, at which time the parties, particularly PG&E and SED, should be prepared to address whether a stipulation has been reached, the corresponding scope of evidentiary hearings and the ongoing procedural schedule. Prior to the PHC, no later than 12 noon on May 28, 2019, SED and PG&E are to file a status report that summarizes the status of negotiations, and that includes any stipulation that has been reached.[9]

Accordingly, the following interim schedule is adopted:

| Status report(s) filed | May 28, 2019 (12:00 noon) |
| Second prehearing conference | May 29, 2019 (1:30 p.m.) |

At the second PHC parties should be prepared to discuss the schedule going forward, including the scope of any evidentiary hearings. This schedule may be modified by the ALJ as required to promote the efficient and fair resolution of the proceeding.

The final schedule for this proceeding has not yet been established, but at this time we preliminarily determine that the proceeding will be resolved within 12 months, consistent with Pub. Util. Code § 1701.2(i).

## 5. Category of Proceeding/*Ex Parte* Restrictions

The Commission determined that this is an adjudicatory proceeding. (OII at 14.) Accordingly, *ex parte* communications are prohibited pursuant to Article 8 of the Commission's Rules of Practice and Procedure.

---

[9] SED and PG&E may file either a joint status report or separate status reports. Other parties may file a status report, but are not required to do so.

### 6. Public Outreach

Pursuant to Pub. Util. Code § 1711(a), the Commission sought the participation of those likely to be affected by this matter by noticing it in the Commission's monthly newsletter that is served on communities and businesses that subscribe to it and posted on the Commission's website.

### 7. Intervenor Compensation

Pursuant to Pub. Util. Code § 1804(a)(1), a customer who intends to seek an award of compensation must file and serve a notice of intent to claim compensation by May 6, 2019, 30 days[10] after the first PHC.

### 8. Public Advisor

Any person interested in participating in this proceeding who is unfamiliar with the Commission's procedures or has questions about the electronic filing procedures is encouraged to obtain more information at **http://consumers.cpuc.ca.gov/pao/** or contact the Commission's Public Advisor at 866-849-8390 or 415-703-2074 or 866-836-7825 (TYY), or send an e-mail to **public.advisor@cpuc.ca.gov**.

### 9. Service of Documents on Commissioners and Their Personal Advisors

Rule 1.10 requires only electronic service on any person on the official service list, other than the ALJ.

When serving documents on Commissioners or their personal advisors, whether or not they are on the official service list, parties must only provide electronic service. Parties must NOT send hard copies of documents to Commissioners or their personal advisors unless specifically instructed to do so.

---

[10] 30 days falls on Saturday, May 4, 2019.

## 10. Assignment of Proceeding

Clifford Rechtschaffen is the assigned Commissioner and Peter V. Allen is the assigned ALJ and presiding officer for this proceeding.

**IT IS RULED** that:

1. The scope of this proceeding is described above.
2. A preliminary schedule for this proceeding is as set forth above.
3. A prehearing conference is set for May 29, 2019, at 1:30 p.m. at the Commission Courtroom, 505 Van Ness Avenue, San Francisco, CA 94102.
4. Status reports are to be filed no later than 12 noon on May 28, 2019.
5. Evidentiary hearings are needed.
6. The presiding officer is Administrative Law Judge Peter V. Allen.
7. The category of the proceeding is adjudicatory.

Dated May 7, 2019, at San Francisco, California.

/s/  CLIFFORD RECHTSCHAFFEN
Clifford Rechtschaffen
Assigned Commissioner