Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:     415.659.2600
Facsimile:     415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:     310.820.8800
Facsimile:     310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for the Official Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>       **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                              **Debtors.**<br><br>□ Affects PG&E Corporation<br><br>□ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**AMENDED LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING (I) AGREEMENT AND SETTLEMENT WITH PEOPLE OF THE STATE OF CALIFORNIA AND (II) GRANTING RELATED RELIEF [Dkt. No. 6418]**<br><br>Date:      April 14, 2020<br>Time:      10:00 a.m. (Pacific Time)<br>Place:     **Telephonic Appearances Only**<br>           United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102 |

The Official Committee of Tort Claimants (the "**TCC**") in the above-captioned chapter 11 cases PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), files this amended limited objection and reservation of rights to the Debtors' Motion (the "**Motion**")[1] for entry of an order (i) approving the Butte County Agreement entered into between the People of the State of California and the Utility to settle and resolve the criminal prosecution and investigation of the Utility arising from the November 8, 2018 Camp Fire and (ii) granting related relief [Dkt. No. 6418].

## LIMITED OBJECTION

In the Motion, the Debtors take the position that any criminal fines, penalties, or restitution orders arising out of the Butte County Agreement would be paid from the fire victims' money in the Fire Victim Trust. Motion at 3. If upheld, this contention would mean that the survivors and heirs of the 84 people killed by PG&E in the Camp Fire, as well as the tens of thousands of victims who lost their homes as a result of the fire started by PG&E, would end up paying for PG&E's criminal fines, penalties and investigation costs for killing their loved ones and burning their homes.

After numerous objections and concerns were raised, including from the TCC and the District Attorney, on March 30, 2020, PG&E issued a press release stating that the $4 million fine would be paid from the Fire Victim Trust from "income earned on the distribution to be made to the subrogation claimants under the Plan."[2] As explained below, this solution does not resolve the TCC's objection to the Motion. The Debtors' solution maintains the Debtors' interpretation, and not the TCC's interpretation, of "Fire Claim" in the TCC RSA [Dkt. No. 5038-1 at 42] to include criminal fines and penalties. The TCC believes this double trust duplicative payment is an intentional move to receive an improper advisory opinion from the Court that the definition of "Fire Claim" in the TCC RSA, and the definition of "Fire Victim Claims" in the Plan, includes criminal fines and penalties. The TCC objects to the Motion to the extent that PG&E requests these criminal

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.
[2] *See Press Release,* available at
https://www.pge.com/en/about/newsroom/newsdetails/index.page?title=20200330_pge_resolves_4_million_butte_county_fine_issue_4_million_payment_will_not_reduce_the_amount_available_for_wildfire_victims

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  fines, penalties and investigation costs detailed in in the Butte County Agreement will be paid by

2  the Fire Victims Trust established for the welfare of PG&E's victims, even if the money for the

3  payment of the fine comes from the subrogation claimants.

4        The TCC, however, does not object to the Debtors paying the criminal fines and penalties

5  from the subrogation claimants directly.  PG&E's proposal requires a double trust duplicative

6  payment where money from the criminal fines and penalties are being routed through the Fire

7  Victim Trust, where the Trustee would then have to pay it.  Below is a chart of the strained artifice

8  of what PG&E is trying to accomplish in order for this Court's order to have an improper

9  precedential judicial finding that the Fire Victim Trust must pay its criminal fines and penalties:

10

11



12        PG&E's solution is an artifice used only to establish a precedent that criminal fines may be

13  paid from the Fire Victim Trust.  This settlement ruling should not be used to establish precedent

14  on the meaning of Fire Claims in the TCC RSA, and this settlement should not address that issue

15  if it can be resolved another way.

16        If this Court were to overrule the TCC's objection to the fine being placed within the Fire

17  Victim Trust on the facts before it, such a ruling would be an improper advisory opinion on an

18  incomplete record.  Under traditional notions of jurisprudence, a court should avoid issuing an

19  advisory opinion where the dispute is not ripe and where it has alternative grounds to do so.  Here

20  the Debtors admit that the payments will be made by subrogation claimants, and if PG&E pays the

21  fine directly through the subrogation claimants, without involving the Fire Victim Trust, the Court

22  does not need to address the TCC's objection.

23        The TCC contends that restitution, fines and penalties in the definition of "Fire Claim" in

24  the TCC RSA and any similar inclusion in the definition "Fire Victim Claims" in the Plan, includes

25  only civil restitution, fines and penalties recoverable by the individual victims and not criminal

26  restitution, fines and penalties under California law for the following reasons.

27        PG&E paying a criminal penalty from money set aside for victims of PG&E's involuntary

28  manslaughters could violate the law and certainly violates public policy.  The traditional aims of

criminal punishment are retribution and deterrence." *See Noriega-Perez v. U.S.,* 179 F.3d 1166, 1173 (9th Cir. 1999) (fine is civil in nature where imposed to deter but not for purposes of retribution). The TCC is not aware of any situation in which a convicted criminal has been allowed to force their victims to pay the criminal penalties imposed by the Court for victimizing them.

Further, the type of civil claims enumerated in the RSA mirror the language for civil claims in the California Public Utilities Code ("**CPUC**"). The definition of "Fire Claim" in the TCC RSA includes various types of civil claims, both under statute and common law, and, with the exception of "punitive and exemplary damages" all are of a compensatory nature. If the Debtors contend that CPUC section 2104 permits the Public Utilities Commission to recover "penalties and fines" under the Fire Claim definition, the Commission could recover these penalties and fines for the benefit of victims only, because the Fire Claim definition supports the Fire Victim Trust, which by definition is for victims only. The same analysis would hold for CPUC section 2601, which also allows for a civil punitive remedy.

Punitive damages, of course, are a regular part of the civil tort system. And, although civil penalties, including exemplary damages, may have a punitive aspect, *see Hudson v. United States*, 118 S.Ct. 488, 495 (1997), their purpose and effect are principally remedial and compensatory. Thus, for example, in *Schachter v. Commissioner,* 255 F.3d 1031, 1034 (9th Cir. 2001), *cert. denied, Schachter v. Rossotti*, 534 U.S. 826 (2001), the court noted in the tax context that "[c]ivil penalties for additions to tax are remedial in nature and are primarily imposed to reimburse the Government for investigation expenses, to cover the monetary loss due to the taxpayer's fraud, and to protect revenue."

Criminal fines are of a wholly different character. The purpose of such fines is primarily punitive. They are "penalties inflicted by the sovereign for the commission of offenses." *See Southern Union Co. v. United States*, 132 S. Ct. 2344, 2350 (2012). And, as a consequence, imposition of such fines are subject to the same constitutional safeguards and requirements as other forms of criminal punishment, including proof beyond and reasonable doubt, the right to have a jury determine relevant facts, and double jeopardy protections. *See, id* (There is no "principled basis" for treating such fines differently from other criminal punishments.); *Hudson*, 118 S.Ct. at

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

496. In determining whether a particular fine is civil or criminal for these purposes, the courts consider such factors as whether the fine is historically viewed as punishment, whether it may be imposed only upon a finding of scienter, and whether "'its operation will promote the traditional aims of punishment-retribution and deterrence.'" *Id.* at 493.

As a result, it would be unreasonable to conclude that, in the context of a definition that otherwise refers entirely to civil, compensatory awards, the term "fines or penalties" can be properly construed as applying to criminal sanctions. It cannot.

## CONCLUSION

WHEREFORE, the TCC respectfully requests that the Court deny the Motion to the extent that it permits the payment of criminal fines, penalties and investigation costs arising out of the Butte County Agreement to be paid from the Fire Victim Trust in any way.

Dated: April 9, 2020

BAKER & HOSTETLER LLP

By:    */s/ Robert A. Julian*
Robert A. Julian
Author: Lauren Attard

*Counsel for the Official Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO