1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                    ) Case No. 19-30088
                              ) Chapter 11
5   PG&E CORPORATION AND PACIFIC )
    GAS AND ELECTRIC COMPANY   ) San Francisco, California
6                             ) Tuesday, April 7, 2020
                    Debtors.  ) 10:00 AM
7   _____ )
                                DEBTORS' MOTION PURSUANT TO
8                               11 U.S.C. SECTIONS 105 AND
                                363 AND FED. R. BANKR. P.
9                               9019 FOR ENTRY OF AN ORDER
                                (I) APPROVING CASE RESOLUTION
10                              CONTINGENCY PROCESS AND (II)
                                GRANTING RELATED RELIEF
11                              [6398]

12                              APPLICATION OF THE OFFICIAL
                                COMMITTEE OF TORT CLAIMANTS,
13                              PURSUANT TO 11 U.S.C. SECTION
                                1103 AND FED. R. BANKR. P.
14                              2014 AND 5002, TO RETAIN AND
                                EMPLOY CATHY YANNI AS CLAIMS
15                              ADMINISTRATOR NUNC PRO TUNC
                                TO JANUARY 13, 2020 THROUGH
16                              THE EFFECTIVE DATE OF THE
                                RESOLUTION TRUST AGREEMENT
17                              [5723]

18                              APPLICATION OF THE OFFICIAL
                                COMMITTEE OF TORT CLAIMANTS,
19                              PURSUANT TO 11 U.S.C. SECTION
                                1103 AND FED. R. BANKR. P.
20                              2014 AND 5002, TO RETAIN AND
                                EMPLOY HON. JOHN K. TROTTER
21                              (RET.) AS TRUSTEE NUNC PRO
                                TUNC TO JANUARY 13, 2020
22                              THROUGH THE EFFECTIVE DATE OF
                                THE RESOLUTION TRUST
23                              AGREEMENT [5726]

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1                              THE OFFICIAL COMMITTEE OF
                               TORT CLAIMANTS' MOTION FOR
 2                             ENTRY OF AN ORDER DIRECTING
                               SUPPLEMENTAL DISCLOSURE IN
 3                             THE FORM OF A LETTER FROM THE
                               TCC [6636]
 4
                      TRANSCRIPT OF PROCEEDINGS
 5           BEFORE HONORABLE DENNIS MONTALI (TELEPHONICALLY)
                    UNITED STATES BANKRUPTCY JUDGE
 6
        APPEARANCES (TELEPHONIC):
 7      For the Debtors:            STEPHEN KAROTKIN, ESQ.
                                    Weil, Gotshal & Manges LLP
 8                                  767 Fifth Avenue
                                    New York, NY 10153
 9                                  (212) 310-8000

10      For the Official Committee  ELIZABETH A. GREEN, ESQ.
        of Tort Claimants:          Baker & Hostetler LLP
11                                  200 S. Orange Avenue
                                    Suite 2300
12                                  Orlando, FL 32801
                                    (407) 649-4000
13
                                    ROBERT A. JULIAN, ESQ.
14                                  Baker & Hostetler LLP
                                    600 Montgomery Street
15                                  Suite 3100
                                    San Francisco, CA 94111
16                                  (415) 659-2600

17      For the Official Committee  GREGORY A. BRAY, ESQ.
        of Unsecured Creditors:     Milbank LLP
18                                  2029 Century Park East
                                    33rd Floor
19                                  Los Angeles, CA 90067
                                    (424) 386-4000
20
        For the Ad Hoc Committee    ABID QURESHI, ESQ.
21      of Senior Unsecured         Akin Gump Strauss Hauer & Feld LLP
        Noteholders:                One Bryant Park
22                                  New York, NY 10036
                                    (212) 872-8027
23

24

25
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For BOKF, NA, Solely in      BETH M. BROWNSTEIN, ESQ.
     Its Capacity as Indenture    Arent Fox LLP
 2   Trustee:                     1301 Avenue of the Americas
                                  42nd Floor
 3                                New York, NY 10019
                                  (212) 484-3900
 4
     For Fire Victims:            THOMAS TOSDAL, ESQ.
 5                                Tosdal Law Firm
                                  777 S. Highway 101
 6                                Suite 215
                                  Solana Beach, CA 92075
 7                                (858) 704-4710

 8                                AMANDA L. RIDDLE, ESQ.
                                  Corey, Luzaich, De Ghetaldi &
 9                                Riddle LLP
                                  700 El Camino Real
10                                Millbrae, CA 94030
                                  (650) 871-5666
11
     For PG&E Shareholders:       BRUCE BENNETT, ESQ.
12                                Jones Day
                                  555 South Flower Street
13                                Fiftieth Floor
                                  Los Angeles, CA 90071
14                                (213) 489-3939

15   For SLF Fire Victim          GERALD SINGLETON, ESQ.
     Claimants:                   Singleton Law Firm
16                                450 A Street
                                  5th Floor
17                                San Diego, CA 92101
                                  (619) 771-3473
18
     Also Present:                WILLIAM B. ABRAMS, Individual and
19                                Tubbs Fire Victim

20   Court Recorder:              LORENA PARADA/ANKEY THOMAS

21   Transcriber:                 CLARA RUBIN
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (973)406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

PG&E Corp. and Pacific Gas and Electric Co.

SAN FRANCISCO, CALIFORNIA, TUESDAY, APRIL 7, 2020, 10:00 AM

-oOo-

1

2

3     (Call to order of the Court.)

4          THE COURT:  Okay, then I guess we're ready if you are.

5          THE CLERK:  Yes, on call with the case of PG&E

6     Corporation.

7          THE COURT:  All right, good morning, everyone.  This

8     is Judge Montali.  Apologize for the delays; technical problems

9     everywhere.  (Indiscernible - dubbed over by CourtCall

10    recording) things for you.  I am sorry for all of you who are

11    inconvenienced by the change in going from what we thought was

12    going to be our first video hearing, to go back to audio.

13    We're working on that.  Our next PG&E calendar is next week on

14    the 14th, and I hope we will have our video intact by then, and

15    you'll get notice at least through the docket.

16         I want to remind you that this call is being recorded.

17    Because our court is closed, CourtCall is subbing in place of

18    the court and maintaining the official record.  So, like we

19    have in the regular courtroom when we are keeping the record

20    electronically, for today's hearing and all the hearings,

21    CourtCall is doing that for us, and then ultimately the

22    electronic record will be transmitted back to our court for the

23    normal routines.

24         Because of the number of people on the call, and

25    because of the difficulties we're having, I just ask that you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  wait until I identify you by name to call on you.  I obviously

2  know the principal lawyers who expect to be making a

3  presentation today, or argument.  I have a list of all the

4  participants.  I believe I will be able to recognize you; if

5  not, I will ask for other counsel to -- or in the case of some

6  pro se parties, to identify themselves.  Just be mindful that

7  we can only have one person talking at a time.

8        We are going to hear very briefly from counsel

9  regarding the applications to employ Justice Trotter and Ms.

10  Yanni.  That hearing is going to be continued to next week on

11  the 14th, but I have just a -- want just a status report.  Then

12  I'm going to take up the motion for the contingency process

13  and, finally, the motion by the TCC for the letter that it

14  wishes to send to the fire claimants.

15        With that, I will ask Mr. -- or, Ms. Green, are you on

16  the call and want to speak?  Can you just give me a status

17  report on the Yanni-Trotter motion?

18        MS. GREEN:  Yes, Your Honor.  Elizabeth Green for the

19  TCC.  We have agreed with the debtors and equity to continue

20  the Trotter-Yanni motion until next week's calendar on the

21  14th, though we're having some additional discussions.

22        THE COURT:  That's all I wanted to clarify; you are

23  having some discussions.  And you needn't elaborate any

24  further.  I didn't know if it was just being continued for me

25  to hear argument, but I'm happy to hear the discussions are

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1    ongoing, and I'll leave it at that.  Thank you, Ms. Green.

2              MS. GREEN:  You're welcome.

3              THE COURT:  Mr. Karotkin, I believe you should take

4    the opening remarks on the contingency-process motion.

5              MR. KAROTKIN:  Sure.  Can you hear me?

6              THE COURT:  Yes.

7              MR. KAROTKIN:  Okay.  Good.  For the record, Your

8    Honor, Stephen Karotkin for the debtors; Weil, Gotshal &

9    Manges.

10             First, I hope that everyone is well and safe in these

11   troubled times.  So I wish everyone the best.

12             We're before the Court today, Your Honor, on what I

13   believe is the final piece of the puzzle to keep us on track

14   for a timely and successful emergence from Chapter 11, well in

15   time to meet the June 30th AB 1054 deadline.  And, Your Honor,

16   I say this fully taking into account the motion filed by the

17   TCC yesterday and which you will be addressing after this

18   motion is heard.

19             And that piece of the puzzle, Your Honor, is the

20   motion before you today that secures the governor's support for

21   the debtors' plan as being AB 1054-compliant, which we think is

22   vital for -- to all constituencies and in particular the fire

23   claimants.  And that motion also secures the governor's support

24   for a post-effective-date securitization that, in the

25   governor's words and quoting from his responsive pleading with

PG&E Corp. and Pacific Gas and Electric Co.

1    respect to the motion, would be in the public interest, as it

2    would strengthen the going-forward business of the utility and

3    support the reorganized utility's ability to provide safe,

4    reliable, affordable, and clean energy to its customers.

5            Your Honor, under these circumstances, it's hard for

6    the debtors to conceive how any constructive party could have

7    an objection to the relief requested in the motion today,

8    which, as we have noted in that motion, is purely contingency-

9    planning and, as the motion clearly states, contingency-

10   planning in the unlikely event that the dates are not met,

11   which, as I noted, we believe we are on track to meet.

12           In fact, Your Honor, the failure to approve the motion

13   and secure the governor's support would be a substantial

14   setback in these cases that would jeopardize the June 30th

15   date, with very serious consequences to all parties-in-interest

16   and, in particular, fire claimants.  Simply stated, Your Honor,

17   approval of the motion is critical to maintaining the time line

18   and, perhaps most importantly, to participation in the AB 1054

19   go-forward wildfire fund, and expediting distributions to fire

20   claimants.

21           And I think, Your Honor, the parties-in-interest in

22   these cases, as demonstrated by the responsive pleadings that

23   have been filed -- I think they recognize the importance of the

24   relief we're seeking today.  And I would say that, Your Honor,

25   cutting through some of the hyperbole, those objections

PG&E Corp. and Pacific Gas and Electric Co.

1    eventually amount to reservations of rights with respect to the

2    proposed bidding procedures and the sale process as they are

3    described in the motion, in the -- again, the unlikely event

4    these contingency circumstances arise.

5         And these reservations of rights can be easily

6    addressed.  I believe we did address those in our responsive

7    pleading filed yesterday afternoon to the limited objection

8    filed by the tort-claimants committee.  And I believe that Ms.

9    Mitchell, who I hope is on the phone on behalf of the

10   governor's office, can confirm that as well, that, as we noted,

11   any proposed bidding procedures, again, in the unlikely event

12   they come before the Court, will be subject to this Court's

13   approval on appropriate notice.  And as is customary, Your

14   Honor, those procedures, when they are formulated and submitted

15   to the Court, will address, among other things, what the

16   requirements will be for a qualified bidder, as well as --

17       (Noise broadcasting over phone line.)

18       MR. KAROTKIN:  Someone needs to mute -- I think

19   someone needs to mute their phone.

20       As I was saying, they will address what the

21   requirements will be for a qualified bidder, as well as other

22   material elements in the bidding procedures and sale process

23   itself.  The rights of all parties to be heard on these matters

24   is clear, including the selection of a successful bidder or

25   successful plan proponent, again, if we reach that stage, which

PG&E Corp. and Pacific Gas and Electric Co.

1   also will be submitted to the Court for approval.  Those

2   details, Your Honor, in view of the contingency nature of the

3   process, do not need to be addressed today, nor should they be

4   addressed today.  As I said, it's pure contingency-planning.

5   And the --

6          THE CLERK:  Hello.  Excuse me --

7          MR. KAROTKIN:  -- the parties --

8          THE CLERK:  -- Mr. Karotkin.  Mr. Karotkin, this is

9   Judge Montali's clerk.  May I interrupt?  Judge Montali was cut

10   off.

11          MR. KAROTKIN:  Okay.

12          THE CLERK:  Operator?

13          THE COURTCALL OPERATOR:  I will dial out to him.  One

14   moment.

15          THE CLERK:  If I can give you another phone number.

16   Can -- I need to provide you his personal number, or I can

17   email it to you.

18          THE COURTCALL OPERATOR:  He did provide me with that

19   earlier.

20          THE CLERK:  A (510) number?

21          THE COURTCALL OPERATOR:  Okay.

22          THE CLERK:  If you could please dial that number.

23          THE COURTCALL OPERATOR:  I certainly will.

24          THE CLERK:  Thank you.

25     (Pause.)

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURTCALL OPERATOR:  Hello, Your Honor.  This is

2  the moderator.

3          THE COURT:  Hello?

4          THE COURTCALL OPERATOR:  Hello, Your Honor.  This is

5  the moderator.  I do apologize.  We lost your connection.  You

6  are back --

7          THE COURT:  It's not your fault.

8          THE COURTCALL OPERATOR:  -- online now.

9          THE COURT:  It's my fault.  This is crazy.  Okay, can

10  you put me back in?

11          THE COURTCALL OPERATOR:  Yes, Your Honor; you are

12  connected.

13          THE COURT:  Okay, I'm sorry, everyone.  I -- that was

14  at my end.  That was my court computer phone that decided to go

15  on the blink.

16          Mr. Karotkin, you were halfway through your

17  presentation.  I would ask you just to pick it up where you

18  stopped.  I think you were starting just to address the

19  objections of the TCC.

20          MR. KAROTKIN:  Okay, I'm not sure exactly where you

21  dropped off, sir.  I'm trying to just --

22          THE COURT:  Well, I'm not sure either.  Just

23  summarize.  I'll tell you what; let's make it simple.

24          MR. KAROTKIN:  Okay.

25          THE COURT:  I've read the brief.  And tell me how you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    propose dealing with -- and are you willing to have the order

2    just reaffirm the TCC's point that the RSA is no longer

3    effective after August 29th, unless there's an agreement to

4    continue it, and also that nothing in the contingency process

5    changes the law, obviously, in the sense that exclusivity will

6    end regardless of anything else in September?  Those two --

7             MR. KAROTKIN:  Yes, I think that --

8             THE COURT:  -- points'd be --

9             MR. KAROTKIN:  I think that we can -- we're more than

10   happy to clarify the order to say that the granting of the

11   relief requested does not affect the RSA with the tort-

12   claimants committee, that that agreement says what it says,

13   including whatever rights to terminate they may have.  And

14   we're also prepared to say that the approval motion -- the

15   approval of the motion will not modify Section 1121 of the

16   Bankruptcy Code.

17            THE COURT:  And the last point, and then I will ask

18   Mr. Julian or whoever wishes to speak; just indicate to me

19   again how the TCC and other parties are protected in fact, not

20   in theory, for participation in any competitive or alternative

21   process that may come to play -- into play if the current plan

22   is not effective on schedule.

23            Are you there, Mr. --

24            MR. KAROTKIN:  Is that to me, sir, or --

25            THE COURT:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. KAROTKIN:  -- Mr. Julian?  I'm sorry.

2    THE COURT:  No, you.  I just asked you to just --

3    MR. KAROTKIN:  Oh, as I --

4    THE COURT:  -- reiterate --

5    MR. KAROTKIN:  Okay, as I -- yes.  I'm sorry.  As I

6  said, and I don't know if you heard this before, the objections

7  primarily are reservation of rights.  And as we said in the

8  response to the TCC limited objection, any proposed bidding

9  procedures will be subject to court approval on appropriate

10 notice as is customary.  And those procedures will address,

11 among other things, what the requirements would be for a

12 qualified bidder, as well other material elements in the

13 bidding procedures and the sale process itself.  And the rights

14 of all parties to be heard on these matters is reserved and

15 preserved, including ultimately, Your Honor, your choice of the

16 successful bidder, which will be presented to you for approval,

17 with the rights of all parties to be heard.

18        With respect to exclusivity, as I said, the statute

19 says what it says.  No one is precluded from filing a motion to

20 terminate exclusivity.  Of course, the TCC has obligations

21 under the RSA.  Any motion by them would be subject to those

22 obligations.  We're not waiving those, but we're also not

23 seeking to modify, by this -- by the relief we're requesting,

24 the provisions of Section 1121 of the Bankruptcy Code.

25        I will note that exclusivity expires on September 29th

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  in any event, as to everybody.

2  THE COURT:  Okay, Mr. Julian, do you wish to be heard,

3  or someone from -- someone else going to speak --

4  MS. GREEN:  Your Honor, this is Elizabeth Green.

5  THE COURT:  -- on behalf of the TCC?

6  All right, Ms. Green.

7  MS. GREEN:  Your Honor, Elizabeth Green for the TCC.

8  I think, with those changes, reserving the rights of the TCC

9  under the RSA, including the August 29th, 2020 termination

10  date, which is important to the fire victims in terms of them

11  getting paid, is a constructive response to our objection.  And

12  I think, with those changes and the reservation of rights,

13  including reservations of rights related to input into the sale

14  process, the TCC will be fine with that order as long as it's

15  run by us before it's submitted.

16  THE COURT:  Okay, thank you, Ms. Green.

17  Mr. Bray, do you wish to speak for the official

18  creditors' committee?

19  MR. BRAY:  Good morning, Your Honor.  Gregory Bray,

20  Milbank LLP.

21  Just briefly.  Based upon Mr. Karotkin's statements,

22  which I interpret to be consistent with our pleading -- the

23  pleadings, we don't have any further comments.  We'd just like

24  to review and sign off on the order before --

25  THE COURT:  Okay.  How about Orbadajian (phonetic) for

PG&E Corp. and Pacific Gas and Electric Co.

1  BOKF?

2  MS. BROWNSTEIN: Good morning, Your Honor. This is

3  Beth Brownstein from Arent Fox, on behalf of BOKF as trustee

4  for the senior notes.

5  We also understand Mr. Karotkin's representations as

6  being consistent with our pleading, and we would also just like

7  to review the proposed order once revised.

8  THE COURT: And counsel for the subrogation -- well,

9  let me state that, for subrogation committee and certainly for

10  Valley Clean Energy and CCSF -- I don't think I covered

11  everyone, but I believe all of those parties have simply made a

12  reservation of rights. And unless I'm overlooking someone on

13  my notes, that accounts for all the parties. Is there any

14  counsel or a party who wishes to be heard on this motion?

15  MR. QURESHI: Your Honor, very briefly. Abid Qureshi,

16  Akin Gump Strauss Hauer & Feld, on behalf of the ad hoc

17  noteholder group. May I very briefly be heard?

18  THE COURT: Yes, sir. Please, Mr. Qureshi.

19  MR. QURESHI: Thank you, Your Honor. Your Honor, I

20  metaphorically rise only to make two points: one, the ad hoc

21  group is and remains supportive of the amended plan, and we, of

22  course, look forward to that plan being confirmed by June the

23  30th; but secondly, Your Honor, in the unlikely event that the

24  company does need to pivot to an alternative process, creditor

25  involvement is going to be critical and should be encouraged.

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

   PG&E Corp. and Pacific Gas and Electric Co.

1 And in that respect, Your Honor, we reserve all of our rights

2 under the RSA and otherwise, in the event that either the

3 company or the shareholder proponents fail to do so.

4   That is all I have, Your Honor.  Thank you.

5   THE COURT:  Thank you.

6   Anyone else wish to be heard on this motion?

7   MR. ABRAMS:  Sorry, Your Honor.  This is Will Abrams.

8 I lost track a little bit.  Are we still on item number 4,

9 docket number 6636?

10   THE COURT:  I don't keep -- I can't keep track of the

11 docket numbers.  We're on the contingency process.  And I don't

12 believe you've weighed in on that.  Maybe I've forgotten you --

13   MR. ABRAMS:  Okay, the supplemental's coming later.

14   THE COURT:  Did you file --

15   MR. ABRAMS:  Sorry.

16   THE COURT:  Yeah, that's all right.  Does anyone --

17   MR. ABRAMS:  I did not.  I'm sorry, Your Honor.  It

18 must come later in the agenda.  I apologize.

19   THE COURT:  Mr. Abrams, we're operating under

20 extremely awkward circumstances, so you don't have to

21 apologize.

22   I have reviewed the governor's statement filed on

23 March 20th.  I reviewed the process itself and the detailed

24 step-by-step procedures that Mr. Karotkin, both in his writings

25 and in his oral statement, summarized, as I myself read them,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    as contingent-fee plans.  I take Mr. Karotkin's representation

2    on behalf of the debtors that the debtors are still of the

3    opinion and of the view that they are going to proceed towards

4    confirmation of their amended plan.  And what we call in this

5    long title, "case-resolution contingency process", which I call

6    a "contingency plan", is simply that.  And the best thing that

7    can happen from at least many points of view is that it'll

8    never see the light of day again.

9         But in any event, I will acknowledge that it's a

10   proper exercise of the debtors' judgment to have this second

11   plan in place.  I compliment the debtor and the governor's

12   office for coming to this point of resolution.  And there's

13   nothing need to be done further about it.  I will grant the

14   motion and ask Mr. Karotkin, in the normal course, to upload

15   the order that will reflect the changes that he mentioned on

16   the record, for preservation of the one point of law, another

17   point of simple clarification of the interplay of the TCC RSA

18   and the deadlines that could be reflected in the contingency --

19   contingencies of the process.

20        And, Mr. Karotkin, I think it would be helpful if you

21   would circulate that form of order for Ms. Green, particularly

22   to sign off on.  You can provide the other counsel with a

23   courtesy copy.  So with that, unless you, Mr. Karotkin, want to

24   raise anything further, that will conclude the discussion of

25   the contingency process.  Anything --

(973)
352-1300 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. KAROTKIN:  I have nothing else, Your Honor.

2          THE COURT:  You need anything further?

3          MR. KAROTKIN:  Thank you.

4          THE COURT:  Okay, well, thank you for your hard

5     work --

6          MR. KAROTKIN:  No -- thank you.

7          THE COURT:  -- and, again, your patience on my

8     inability to stay on this call.

9          I will now turn to the TCC's motion for approval of a

10    letter to the fire claimants.  Ms. Green, are you going to

11    present that, or is Mr. Julian, on that this morning?

12          MS. GREEN:  Your Honor, Mr. Julian is going to --

13          MR. JULIAN:  Robert --

14          MS. GREEN:  -- present that.

15          THE COURT:  All right, Mr. Julian.  You've read -- I

16    presume you've read the debtors' opposition?

17          MR. JULIAN:  Yes, Your Honor.  Good morning, Your

18    Honor.  Robert Julian for BakerHostetler, appearing on behalf

19    of the TCC.  And I'm ready to proceed on the motion.

20          THE COURT:  Yeah, just answer me one question before

21    you make your -- well, go ahead, make your argument, and then

22    I'll have some questions for you.

23          MR. JULIAN:  Well, thank you, Your Honor.  And I

24    appreciate your patience in having this call under difficult

25    circumstances.  And this is an important matter for the TCC

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    because our job, we believe, is to provide facts to empower the

2    victims to make an informed and meaningful decision.  And one

3    thing we have been focused on is, if three things happen before

4    the end of the year that we are hearing could happen, we, the

5    TCC and the lawyers, BakerHostetler, do not want to be the ones

6    who fail to show up and ask you to tell the victims about them.

7    We don't want someone to say, for example, if funding occurs on

8    December 31 or in the first quarter of January (sic), that

9    there's actually been a discussion within the debtor and their

10   financial advisors that they plan to do just that, without

11   having an opportunity to give the debtors an opportunity to say

12   whether or not those discussions are now happening.

13        And secondly, we don't want there to be a point in

14   time where the victims learn that there was a declaration filed

15   by one of the plaintiffs' lawyers in front of Judge Donato last

16   week that states that, because of the Coronavirus pandemic, the

17   stock, which was supposed to be 6.75 billion dollars' worth, is

18   now 4.75 billion dollars' worth.  I do not subscribe to that

19   number, but that pleading has been filed in front of Judge

20   Donato.

21        And third, we don't want victims to say that, when

22   they voted, they didn't know that registration-rights agreement

23   was negotiated three weeks after they voted, that prohibits the

24   trustee from liquidating the stock before the fire season and

25   might have a restriction on selling the stock in six months or

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  even a year.  We just don't know, because it's not been

2  negotiated.

3       So I'd like Your Honor to understand that, from our

4  perspective, the TCC represents the interests of all victims.

5  And from my perspective, Your Honor, I think the -- and this is

6  important; the victims now essentially fall into three

7  subgroups, looking at the plan to vote on.  We have one class

8  of victims and their lawyers, who believe -- they understand

9  the risks involved here.  They've been well advised.  And they

10 want to vote yes, and they voted yes early.  And some of those

11 victims may be --

12      THE CLERK:  Excuse me, Your Honor.  Mr. Julian?  Mr.

13 Julian, sorry to interrupt.  This is Judge Montali's clerk

14 calling (sic).  He needs to hang up.

15      And, Moderator, would you please call him at that same

16 number?

17      THE COURTCALL OPERATOR:  I certainly will.

18      THE CLERK:  He indicate -- Judge Montali indicated

19 that he was being muted.  He was trying to speak to Mr. Julian

20 and was unable to do so.

21      THE COURTCALL OPERATOR:  I do apologize.  I will dial

22 out to him again immediately.

23      THE CLERK:  Great.  Thank you.

24      THE COURTCALL OPERATOR:  My apologies.

25      (Pause.  The Court being dialed in.)

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURTCALL OPERATOR:  Your Honor, we do have you

2     back on the line.

3          Your Honor, are you able to hear me?

4          THE COURT:  Hello?  Can you hear me?

5          THE COURTCALL OPERATOR:  Thanks, Your Honor.  I do

6     have you connected back to the conference.  I do apologize.

7          THE COURT:  Did you hear what happened?  Did you hear

8     what happened?

9          THE COURTCALL OPERATOR:  I did hear what happened, and

10    I apologize.  I'm looking into that as a --

11         THE COURT:  Okay.

12         THE COURTCALL OPERATOR:  -- technical aspect on our

13    end.

14         THE COURT:  All right, let's go back to court.

15         Mr. Julian, I didn't mean to hang up on you, but

16    somebody hung up on you.  I'm sorry.

17         MR. JULIAN:  Okay.

18         THE COURT:  Not a good day.

19         MR. JULIAN:  It's been a long time since someone hung

20    up on me; long -- many years.

21         THE COURT:  I'll try not to do it again.  You were

22    just into your remarks.  I mean, I'm embarrassed at what's

23    happening, but it's happening.  So go ahead and pick up.  I

24    understand you were talking about the horrible situation if you

25    have to inform your clients that the plan isn't to become

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    effective.  But pick it up from there, please.

2         MR. JULIAN:  Yeah, there were three things that, if

3    they become true, I don't want anyone to say that the TCC or

4    BakerHostetler didn't stand up and try to get the word to the

5    victims.  And the first one is that is it true that the debtors

6    and their financial advisors are now having discussions about

7    funding the plan in the end of December/first quarter of --

8    January of next year; the second is, one of the plaintiffs'

9    lawyers filed a pleading in front of Judge Donato, where the

10   issue is whether 13.5 means 13.5, and that pleading says that,

11   under the current market conditions -- Your Honor, can you hear

12   me?

13        THE COURT:  Yes.

14        MR. JULIAN:  -- under current market conditions, the

15   6.75 billion of stock has a value of 4.75 billion.  I don't

16   subscribe to that number, but that pleading is of record now.

17   And the question is what's happening, because of the market, to

18   that stock?  And no one has explained that in the disclosure

19   statement.  They've explained risk -- typical market risk but

20   not what's happening with the Coronavirus.

21        And the third is I don't want victims to be able to

22   stand up and say, "You know, when I voted, I didn't know that,

23   three weeks after I voted, the registration-rights agreement

24   was negotiated that precluded the trustee from selling within

25   the first six months or made them sell after wildfire season,"

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    et cetera.

2           So what we want is some supplemental disclosure about

3    these points.  And I think it would be helpful if I explained

4    to you from my perspective the three types of victims that are

5    voting that are out there, that we're looking at, because the

6    TCC represents, and must be sensitive to, all interests.  And

7    in our view, there's a class of plaintiffs and their lawyers

8    who are well advised, I might add, in my view, and who are

9    voting yes early because they've looked at the risk.  And some

10   of these victims may be so destitute that they know that there

11   may not be full funding, the stock may go down in value, and

12   they simply decided that it's important, because they've been

13   promised that this money's coming in August, to vote and to get

14   their money quickly, because they understand that, if the plan

15   is defeated, it may be a year or two later before they see any

16   money.

17          And so that's what I call the practical view.  Or some

18   of those plaintiffs may very well just -- one lawyer has a lot

19   of smoke-and-ash claims, and he wants to have a yes vote

20   because his victims don't have the substantial economic damages

21   that everyone else have (sic), and they simply want to get a

22   quick payday here.

23          Then on the other side of the spectrum, represented by

24   the three people who resigned from the TCC to lead a no vote,

25   we have victims and their lawyers who are convinced that when

PG&E Corp. and Pacific Gas and Electric Co.

1    the insurance companies and hedge funds took all the cash in

2    this case and left the victims with no choice but to have half

3    cash, half stock, that that was a bad deal.  They don't like

4    what's happening with the value of the stock now, and they're

5    convinced that PG&E's not going to be able to fix it.  They

6    don't believe anything PG&E has to say in these plan-

7    confirmation hearings, and they're leading a no vote and their

8    minds can't be changed.

9         Then we've got what I consider to be the great bulk of

10   the victims in the middle:  victims who -- and their lawyers,

11   who are calling us and saying, what's the TCC position; you

12   haven't taken a position, whether it's yes or no; three of your

13   people just left the TCC and they're voting no.  The media

14   calls me every day:  what are you going to say about this?  And

15   I clam up.  And now I'm going to speak.

16        The TCC does not support the plan as changed, but

17   doesn't -- it's not a no vote either.  What we're trying to do

18   in the next twenty days is to address these three problems, get

19   them fixed.  And it's why we've been in a continuous mediation

20   from March 9 until March 27, trying to address these matters,

21   when we were told that anything that we said could not come out

22   and so could not be the subject of the disclosure statement,

23   because it was confidential.

24        And what we have now is we're faced with supplemental

25   disclosure under the law, which our view of the law is an

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    important committee like the TCC should be able to answer the

2    question that the debtors asked in the disclosure statement:

3    why hasn't the TCC supported the plan yet?  And second, what

4    are the supplemental facts about whether the debtors are really

5    planning to fund in December?  What's the true value today?

6    And what's going on with this registration-rights agreement?

7    We want to tell the victims, "Look, we're still working on

8    that," even though the mediation was at an impasse.  "We're

9    going to have more information over the next three weeks.  We

10   want you to know that these are important issues.  You keep

11   calling us about them.  You keep asking for the answers.  We're

12   still working on it."

13          And I'd like to go over those three issues now with

14   you, because they're important.  First, I've already mentioned

15   that the funding-date issue is addressed by the disclosure

16   statement.  And in their responsive papers, the debtors and the

17   shareholder plan proponents correctly note that the disclosure

18   statement identifies the fact that the plan now says there is

19   an end date of December 31 and that, if funding does not take

20   place by August 29 like we were promised when we negotiated

21   this deal in December, that the TCC and the outside consenting

22   professionals can extend it, which means the TCC, standing

23   alone, can simply refuse to extend and terminate.  But there's

24   our problem, Your Honor:  what fiduciary in the right mind

25   would say no at that point in time if funding is only two

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   months away?  Obviously, the pressure's going to be to give an

2   extension.

3       So some of the victims want to know, though -- either

4   certainly vote for quick money, those people in the middle that

5   I mentioned -- they want to know, though, is it true, as we've

6   been hearing, that the debtors and their financial advisors are

7   really planning, no matter what Mr. Karotkin says on the

8   record -- about how they're trying to -- which is true; they're

9   trying to do something by August 29.  But that's not the

10  question.  Is there real -- and maybe this has to be done by

11  depositions.  Is it true that that debtors and their financial

12  advisors really are working on a plan to obtain debt financing

13  in December because, as I'm told, the debt financing is cheaper

14  than -- and if the debt financing is obtained then, then the

15  net income will have a better number and the stock will be

16  worth more, which I applaud.  But is the real plan a bait-and-

17  switch here?  That's question number one.

18      Number two, what about the 6.75-billion-dollar value?

19  We allege that the debtors breached their obligations to ensure

20  6.75.  And it's only been compounded by the Coronavirus.  And

21  if you'll note in the response filed by the debtors and the

22  shareholder plan proponents, they say, you know, if you look at

23  the TCC -- or the tort committee -- the tort RSA, there's

24  nothing there that says that the victims are guaranteed twelve

25  billion dollars of equity -- or registration-rights agreement;

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    there's nothing there that prohibits an extra 3.7 billion

2    dollars of debt.  That is false.  That is false.  Those words

3    do not appear in the RSA, is true, but the RSA points you to

4    those words in other documents, as follows.

5         Your Honor, I don't know if you want to look at the

6    RSA, but I'm going to give you a short overview of it.  The RSA

7    was signed on December 6, 2019.  On page 1 of the RSA -- it's

8    page 2 of 52 in the court-filed document that I sent to your

9    clerk earlier today -- there're two Whereas clauses, and they

10   say that the debtors filed a plan on November 4, and that plan

11   referenced 12 to 14 billion dollars of equity backstops and it

12   did not reference 3.7 billion dollars of debt that they've

13   added in early February in the PUC hearings.

14        The fifth Whereas clause that is on that page, that

15   runs over to the second page, states that the debtors will file

16   an amended plan in December.  That is modified only in one

17   respect, Your Honor:  by the term sheet attached to the RSA.

18   That's the term sheet that, among other things, give us the

19   13.5.  And the term sheet also does one other thing on page 48

20   of the fifty-two-page document that I sent to you; it's page 8

21   of the term sheet.  It says that the TCC and the outside

22   consenting professionals must agree to all definitive documents

23   relating to the plan, the capitalization, the debt financing,

24   in form and substance, and it must be acceptable to them.  The

25   debtors' view, I guess, is that they can have debt-financing

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    documents that are acceptable us the day before the

2    confirmation hearing and are not disclosed to the victims.  I

3    don't think that is tenable in this case.

4         As late as January 29, Mr. Karotkin, in speaking on

5    the securities class action -- this is at the transcript, at

6    page 84 to 85 of the January 29 hearing -- said, quote, "The

7    debtors' plan is premised on twelve billion dollars of new-

8    equity investments."  And then he said a certified class would

9    gum up the works.

10        So the deal that we agreed to in the RSA was twelve

11   billion dollars of equity.  3.7 billion dollars of debt was not

12   there.  And after Mr. Karotkin said that -- reaffirmed the

13   twelve billion dollars of equity on January 29, what did they

14   do?  They went in front of the PUC and amended everything.  And

15   the current plan now, although it still refers to twelve

16   billion dollars of backstop, if you look at the documents that

17   everyone talks about we have to agree upon, there will be no

18   dispute, when I stop my talking here, that the intent is to

19   have -- and the plan is to have 9 billion dollars of equity and

20   3.7 billion dollars of extra debt laid on.

21        What did that extra debt and less equity do?  It

22   affects the value of that company in the markets; it does.

23   That's Financing 101.  It's Bankruptcy 101.  When we put on our

24   financial advisor on the stand, they'll say, in a case that's

25   this closely leveraged, that extra debt and less equity is a

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    bad thing.

2         And how did that become a heightened problem?  That

3    became a heightened problem because, when the Coronavirus hit

4    and drove the value of utility stocks downward by thirty

5    percent, then the formula in this case -- which has been

6    impacted not only by the breach of contract where they are no

7    longer supporting a plan at 12 billion of equity and 3.7

8    billion dollars of less debt.  That means that the value of

9    that stock is getting hurt even more.

10         How is that a breach of contract?  That's our dispute.

11   It's because in the RSA -- it's section 2(j), page 6 of the

12   fifty-two-page RSA document that I sent to you.  It's page 5 of

13   the RSA.  In paragraph 2(j), the debtor agrees to support the

14   December 2019 plan, which had 12 billion dollars of equity and

15   none of this 3.7 billion dollars of debt.

16         So when they agreed in the -- it's a two-way street.

17   They accuse us of not supporting the plan.  We agreed to

18   support a plan with that much equity, which was important to us

19   because it makes the value of our stock better.  We're the only

20   ones in this case, Your Honor, who have that problem.  Everyone

21   else is getting cash.  The fire victims, for whom this case was

22   supposedly filed for (sic), are the only ones who are standing

23   with this risk of not being paid or getting what they bargained

24   for.

25         And the debtors agreed to support a different plan.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   This is totally different from the Coronavirus impact.  But the

2   Coronavirus impact, when you combine it with the fact that

3   they're no longer having a plan that has twelve billion dollars

4   of equity, creates a problem for us.  And the debtors say,

5   well, we're trying to renegotiate.  We just want it to go back,

6   number one, to what it was and, if they can't, we do need to

7   renegotiate under the savings clause.  But also, I have a

8   disclosure issue.  Forget whether -- what the formula was.

9        If today it's true, as that affidavit from Judge

10  Donato says it's true, that this 6.75 billion dollars of stock

11  is now worth 4.75, we need to tell the victims of that, or we

12  need to tell them that we're trying to fix it, and what the

13  solution is, after another twenty-eight days.

14       So the third point is, there's a registration-rights

15  agreement.  The debtors say there's nothing in the RSA about a

16  registration-rights agreement being negotiated.  Well, those

17  words (sic) "negotiated" are not in there; that's true.  But

18  the registration-rights agreement is clearly in the first

19  amendment to the RSA, at paragraph 1.6, and it says that the

20  victims, through their trust, are going to get a registration-

21  rights agreement consistent with the debtors' underwriters'

22  recommendations.

23       And as we know, on page 8 of the term sheet of the

24  RSA, that guarantees that the TCC must consent to the

25  definitive documents, plan, capitalization, and debt financing,

PG&E Corp. and Pacific Gas and Electric Co.

1    with respect to their form and substance.  And the existence of

2    a shareholder-rights agreement that says when the trustee for

3    the victims can sell and liquidate that stock is important.

4    Are they going -- Your Honor, are they going to have -- let the

5    new equity come in and have greater rights to sell, while the

6    trustee for the victims is locked up and can't sell?  That's an

7    important issue.

8         And we get this -- we get this question repeatedly.

9    You'll see it in some of the -- Will Abrams has mentioned -- I

10   think Mr. Tosdal mentioned it.  We get this question

11   repeatedly:  why don't you have a registration-rights agreement

12   negotiated yet?  And here's the -- partially the answer, and it

13   responds to the idea that we have -- sat on our rights and not

14   done anything.

15        I told you how the debtors and the PUC changed their

16   debt structure and their capitalization at the end of

17   January/first week of February.  What did we do?  We responded

18   in a formal February 20 memo, saying we have these six or seven

19   problems with the plan, let's get ready.  We sent this to -- I

20   sent it to Mr. Karotkin and Mr. Bennett.  I didn't get any

21   formal response.  I did get a response in mediation when we

22   were in mediation, which I can't talk about, obviously, on

23   another matter.

24        So what happened?  I decided that it was time to go

25   public with this.  So on March 8 I drafted a public letter to

PG&E Corp. and Pacific Gas and Electric Co.

1    PG&E and to the shareholder plan proponents, identifying these

2    issues.  And we circulated it to get consensus among the

3    outside plaintiffs group and the TCC, before sending it to

4    them, to PG&E and the shareholder plan proponents.

5         We got word back from the shareholder plan proponents

6    and Mr. Wagner, through one of the plaintiffs' counsel, that

7    this would gum up the works in trying to get this plan

8    confirmed, and blow it up.  Again, the best way to do this --

9         (Hold music broadcasting over phone line.)

10        MR. JULIAN:  Hello?

11        THE COURT:  Hello.  I can hear you.  I can just hear

12   the music now too.  Can you hear that?

13        (Hold music ended.)

14        THE COURT:  Mr. Julian, are you there?

15        MR. JULIAN:  Yes, I am.

16        THE COURT:  Yeah, go ahead.  I don't know where that

17   music came from.

18        MR. JULIAN:  Okay.  We got word that the better thing

19   to do, the more constructive thing to do, would be to take

20   these formal objections to the plan, to take my argument that

21   the debtors and the plan proponents had breached, to take it to

22   Judge Newsome in mediation.  And we did.  We went into

23   mediation immediately the next day.  Judge Newsome called -- I

24   think he was actually traveling at the time, and was kind

25   enough to come back from his trip, to start the mediation on

PG&E Corp. and Pacific Gas and Electric Co.

1   March 9.  And we started in on these issues dealing with when

2   are they really going to fund, is there a -- is there a problem

3   with the value of the stock, caused by reducing the equity and

4   increasing the debt structure.  We still were -- we weren't yet

5   on the Coronavirus, by the way, at that point; it wasn't

6   impacting the value at that point.  And then the other issue,

7   the registration-rights agreement; pleading to sit down and

8   negotiate this registration-rights agreement, which is

9   guaranteed to us, on page 8 of the term sheet to the RSA, that

10  we will agree with the definitive documents of this case.

11          I can't say what went on in that mediation, as you

12  know, but I have put in my affidavit that the mediation -- the

13  last day of the mediation was on the 25th.  We didn't hear

14  anything in response to our proposals.  And so Thursday night I

15  filed the motion in front of Judge Donato, telling him the

16  truth; everything:  the problem with the 6.75; the breach-of-

17  contract allegation.  We had to finally put it forth.

18          And I -- on the day that the supplemental disclosures

19  were being discussed in your court, I pointed out to you

20  something's been in mediation.  And you said to me, well, it's

21  not ripe yet.  And I agree.  So we haven't sat on our rights

22  here.  This was in mediation for quite a while, specifically to

23  keep it out of the press and the public so that we could try to

24  resolve it in-house with the very good professionals that are

25  working hard on this case, on all sides.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    So that brings us to where we are today.  We want the

2  truth to be told to the victims, on a couple issues:  One,

3  question raised by Mr. Karotkin:  the disclosure statement.

4  The TCC has an obligation to support the plan.  The outside

5  professionals have an obligation to support the plan.  Why

6  haven't they?  It's in the supplemental disclosure.  We say

7  we'd never dispute.

8    The second thing is, what are the terms of the

9  registration-rights agreement?  It's not even negotiated yet.

10  Has to be negotiated this month so the terms can be tolled.

11    Next, what -- are the debtors really having these

12  serious discussions about funding this plan in December?  Why

13  is that important, Your Honor?  It's important because, as I

14  mentioned, some of the people have voted yes.  And some of the

15  people are considering voting yes, we think, because they view

16  time value of money as important.  But if they knew that they

17  weren't going to get their cash until December or first week of

18  next year, they might think differently about that.  And I

19  don't want to prejudice this at all.  Our job is not to

20  recommend yes or no under these circumstances.  Our job is to

21  find out what the true facts are and to tell them to the

22  victims through a supplemental disclosure.

23    And the law is pretty clear, the Adelphia case shows

24  it, that supplemental disclosures, after the disclosure

25  statement goes out, are proper, especially from a committee.

of 80

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    Prof. Gibson, who wrote the seminal article for the federal

2    judiciary, on the federal judiciary's website, says this is

3    typical for a tort-claimants committee to send out its position

4    to the victims.

5         And what we have, Your Honor, with people like Will

6    Abrams and other lawyers appearing in court, we have

7    allegations that the truth is not being told to the victims.

8    You've probably seen some of these things, that the lawyers

9    can't tell the truth.  I disagree with them.  I think our RSA

10   says the lawyers shall advise.  I think they've been doing a

11   good job advising.  But it's the job of the TCC, if it views

12   these three facts as being important, to come clean and to say,

13   here's the reason why we haven't supported the plan.  We view

14   there is a breach; the debtors disagree.  We think you need to

15   know about the registration-rights agreement that needs to be

16   negotiated this month.  And third, we think the impact from the

17   change in the plan, from twelve to nine billion of equity, and

18   the increase of debt -- that the impact on the valuation --

19   that needs to be told.  And last but not least, whether or not

20   the formula needs to be changed, the victims need to know if

21   there's a great impact that's going to cause twenty to thirty

22   percent of that stock value coming off.

23        I hope it's not true.  I hope the market comes back.

24   I hope we can get a confirmed plan.  But all we're trying to do

25   now is get out the supplemental disclosure so that no one can

PG&E Corp. and Pacific Gas and Electric Co.

1  stand up next year and say, "I wasn't told that they filed

2  these three things."

3  　　　　　Your Honor, you have some questions for me, I know.

4  Thank you for --

5  　　　　　THE COURT:  Just a question -- a couple of procedural

6  questions, and then I want to let the other counsel appear.

7  But I take it, as you know, there's no prohibition on

8  communications.  The question is you want the Court to approve

9  this disclosure.  And I presume, of course, you want the debtor

10 to pay for it.  What does that -- correct?  Is that correct to

11 both questions?

12 　　　　　MR. JULIAN:  Yes, Your Honor.

13 　　　　　THE COURT:  Okay.  I mean, what if I just say that

14 it's not appropriate for the Court to approve it but you're

15 free to disseminate it?  Does that make a difference?

16 　　　　　MR. JULIAN:  As long as you would add onto that two

17 things, I'd be happy; the first is we say in here that, under

18 the circumstances, we think these three facts need to be told

19 and known to the victims before they make an informed decision.

20 And I'm referring to that --

21 　　　　　THE COURT:  No, I --

22 　　　　　MR. JULIAN:  -- group of victims --

23 　　　　　THE COURT:  No, I --

24 　　　　　MR. JULIAN:  And don't want to be -- I don't want to

25 violate any solicitation rules of Your Honor -- of the Court.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  So --

2          THE COURT:  Mr. Julian, the --

3          MR. JULIAN:  -- that's fact one.  And we want --

4          THE COURT:  Hold on.  The second sentence of the

5  letter says the bankruptcy court approved TCC sending this

6  letter.  My question is, if I didn't approve it or we never had

7  this hearing, there's no prohibition -- now that the disclosure

8  statement has been approved, I'm not aware of any prohibition

9  on an individual, Mr. Abrams or another individual, or a

10 committee, disseminating its own information.  And I've had --

11 are you aware of any legal prohibition on the TCC promulgating

12 this statement?

13         MR. JULIAN:  I'm going to --

14         THE COURT:  I'm not.

15         MR. JULIAN:  I'm going to let Ms. -- I'm going to let

16 Ms. Green answer that.  But I don't want to run afoul of the

17 solicitation rule with the sentence that says we think you

18 should hold your vote until we talk to you again on May 1.  And

19 so that's the reason to getting Your Honor's imprimatur.

20         THE COURT:  Well, I want to stick with you for a

21 minute because I -- even if I accept all of your arguments and

22 disregard all of the arguments on the other side, I don't have

23 any experience, and I don't know if you have any experience, of

24 this ever happening before.  And I don't know what happens to

25 the votes that have been submitted.  I don't know what happens

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   if on May 1st there is a solicitation that creates an

2   incredibly short window for votes to come in.  It might

3   effectively disenfranchise people by making sure their vote --

4   guaranteeing that their votes won't come in on time.  There's

5   no authority that I'm aware of -- well, maybe there's authority

6   to extend the voting deadline, but not under the circumstances

7   of the June 30th deadline.

8        So I guess what I'm asking you is what happens if I

9   accept your recommendation and the votes are skewed because a

10  large number of people simply have lost the ability to vote?

11  Seems to me that's worse than voting with incomplete

12  information.  How do you respond to that?

13       MR. JULIAN:  A couple things, Your Honor.  Thank you

14  for that question.  I did consider it.  We did consider it.  We

15  also are considering asking you for an extension of the voting,

16  by five to seven days.  Let me tell you our thoughts on that.

17  First, the federal government, state government, and the banks

18  are all extending all deadlines by sixty to ninety days.  I

19  know you're aware of this.  The government in California has

20  not extended the AB 1054 20 -- 30 -- January -- the June

21  deadline.  And so we have not come to you and done what many

22  people have recommended that we do:  request an extension of

23  all deadlines in this case by sixty to ninety days.  That would

24  involve PUC, the legislature, the governor; of course, Your

25  Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          We sought to strike a balance and stay on track.  And

2   so the answer to your question is, there're no good

3   alternatives here.  We are up against two problems not of our

4   own making:  the June 30 deadline and the fact that a one-

5   hundred -- once-in-a-century pandemic has hit us.  The last

6   time was 1918.  So, hundred years later you get a repeat;

7   different flu.  And -- different virus, rather.

8          And so what we've tried to do is strike a balance

9   here.  Our proposal is not perfect; I'm the first one to admit

10  it.  But I take what everyone has said.  If we want to move

11  that date up to August 25 or something, I'm happy to do it.

12  And we can get our supplemental letter out then.  It puts a lot

13  of pressure on people to negotiate that registration-rights

14  agreement between now and August -- April 25, but I'm happy to

15  do it.  And perhaps extend voting by five days.  I think if we

16  did those two things, we'd have enough of a window.

17         But we do need to get the supplemental disclosure out.

18  And I think if we have enough of a window, it's not going to

19  stop voting.  And I am not calling -- I want to make this

20  clear:  I'm not calling for anyone to change the votes.  Not

21  request it.  As I said, there's a group of people with lawyers

22  who know what they're doing, and some of them have already

23  voted.  There is a process to vote a second time.  I don't want

24  to get into that.  It's not part of our motion.

25         But I think we just have to strike a balance with the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    problems that we have with June 30 and the pandemic.  And I

2    think we can strike a balance if I move my May 1 letter up to

3    August 25 and if we -- if Your Honor wants to extend voting

4    four days or so.  But it's not necessary.  That's my view.

5              THE COURT:  All right.  Who else wants to be heard in

6    support of the motion?  I know Mr. Abrams does.  Is there other

7    counsel on the phone that want to be heard in support of what

8    Mr. Julian has just argued?

9              MR. TOSDAL:  Yes, Your Honor.  Tom Tosdal.

10             THE COURT:  All right, Mr. Tosdal.  Go ahead, please.

11             MR. TOSDAL:  Good morning, Your Honor.  I saw the

12   joinder supporting the TCC's motion.  Whether the Court puts

13   its stamp on the letter or not, is really not the critical

14   thing.  The important fact is that the letter goes out.  So

15   there's a lot of debate and confusion out there about the risks

16   to the fire victims.  And so long as the letter can go out, I

17   think the Court and the debtor should not stand in the way of

18   having the fire victims fully informed about their rights.

19   That's all.

20             THE COURT:  Anyone else wish to be heard?  Mr. Abrams,

21   I'll come to you; I just want to -- and I'm not ignoring you.

22   I want to go down the line of the lawyers who have filed

23   things, and then I'm going to let you be heard.

24             Any lawyer on the phone wants to be heard in support

25   of the --

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MS. RIDDLE:  Your Honor, this is --

2          THE COURT:  -- the request?

3          MS. RIDDLE:  Your Honor, this is Amanda Riddle.  Can

4  you hear me?

5          THE COURT:  Yes, Ms. Riddle.

6          MS. RIDDLE:  Yeah.  Thank you.  Couple of things.  I

7  represent about 6,500 wildfire victims, and I'm one of the

8  members of the consenting fire-claimant-professional group.

9          Definitely appreciate the update from the TCC.  We

10  negotiated this deal, the TCC and the consenting fire-claimant-

11  professionals group, in the hopes of getting the best deal for

12  the wildfire victims.  I believe that we've done that, and I

13  believe that what the TCC is doing is trying to secure and firm

14  up that deal.  I don't believe they're attempting to trade up

15  that deal.  They're just trying to navigate some confusing

16  points that have arisen since we entered into the RSA.

17          I think it's incredibly important, and we've

18  maintained since we signed the RSA, that the victims need to be

19  informed and they need to make their decision.  And this

20  information is incredibly important.  We're providing all of

21  this information, of course, to our clients, as Mr. Julian

22  said.  And so we appreciate that update and that kind of

23  information being laid out.

24          My only concern is the statement in the letter, that

25  victims should hold off on voting.  I personally believe that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  that is advice that should come from their chosen retained

2  counsel.  I don't think that the TCC should be providing that

3  kind of legal advice.  So, providing the information, the

4  concerns about the ongoings of the negotiations, deal-point

5  issues, all of that information is incredibly important.

6       I do believe it should be left to the victims, upon

7  advice of their counsel, as to when they should vote.  And I

8  think that's especially true, considering that voting opened

9  for a lot of victims last week.  And as you've noted, a number

10  of them have already voted.  So I would be concerned that it

11  would create confusion to now issue something from the TCC,

12  saying that they should hold off on voting.

13       Otherwise, I appreciate the update from the TCC.

14  Frankly, it's been painted that the victims' lawyers and the

15  TCC are in a battle.  I've seen a number of articles.  I do not

16  think that that is in any way, shape, or form true.  We're just

17  trying to navigate, together, getting the best deal for all of

18  the wildfire victims.  There are a lot of us and we don't

19  always have the same strategy, and sometimes toes get stepped

20  on, but that does not in any way, shape, or form mean that

21  we're in any kind of battle or disagreement.

22       THE COURT:  Ms. Riddle --

23       MS. RIDDLE:  Thank you.

24       THE COURT:  -- what is your best judgment as the

25  percentage of fire claimants who do not have counsel?

PG&E Corp. and Pacific Gas and Electric Co.

1          MS. RIDDLE:  My understanding is that, out of the

2     78,000, there's about 12,000.  What is that?  Maybe one-sixth,

3     one-seventh.  And I would say that, even with unrepresented,

4     I'm not sure that it's appropriate for the TCC to be giving

5     that kind of legal advice, versus sharing information.

6          THE COURT:  So what does a -- what does one of those

7     12,000 unrepresented victims do with a long letter that is, at

8     best, if not confusing, it's distressing?  What does one --

9     what do they do?  For a year-and-a-half, this entity called the

10    TCC has acted on their behalf, and now this letter -- and your

11    recommendation is that it says, well, we don't make a

12    recommendation, go talk to your counsel.  I mean, what does

13    that do for those 12,000 people, other than confuse them

14    further?

15         MS. RIDDLE:  Well, the TCC already says, in the letter

16    that's proposed, at the end, that this is not a substitute for

17    talking to your counsel.  I still think it's confusing.

18    Frankly, I think all of these documents are incredibly

19    confusing for the fire victims.  I know that the TCC has a

20    website, and I think that they provide certain guidance there.

21    But I can't answer the question of what kind of advice the TCC

22    should be giving to unrepresented victims.

23         My understanding is the TCC should not be -- I just --

24    it concerns me that the wildfire victims have already started

25    voting, and now they're being told to hold off.  I think that

PG&E Corp. and Pacific Gas and Electric Co.

1  is totally confusing.

2  THE COURT:  Okay.  Any other counsel wish to be heard

3  in support of the request?

4  All right, Mr. Abrams, I'll let you speak now, please.

5  MR. ABRAMS:  Thank you, Your Honor.  I appreciate the

6  opportunity to speak.  And certainly I understand all of us are

7  in difficult times, and appreciate that this proceeding is seen

8  through that light.  Certainly, victims are seeing the

9  conflagration of the virus with wildfire risks with the risks

10 posed by PG&E and the risks of this deal coming together.  And

11 that is very concerning for folks.

12 I think it's easy for parties to get lost in the back

13 and forths of what happens in negotiations, of what happens in

14 this hearing room.  But I think it's important to shed light on

15 how this plays out amongst victims who are trying to get

16 informed about this plan.

17 This strategy of vote first, then we'll renegotiate

18 and work out the specifics of the deal is not a prudent path.

19 No other class of claimants would ever sign on to that path

20 associated with this proceeding to secure their dollars.  It is

21 not prudent.  There is no assurances of dollars or dates or

22 trust agreement rules or any of the things that any other

23 investor would be concerned about.  We are not voting on

24 incomplete information.  We are voting on no information.

25 The debtors clearly -- and I don't have to be in the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    negotiations to know -- want victims to not be paid for as long

2    as possible to buffer their other investors and to buffer their

3    companies during the most severe risks.  There is no other way

4    to read this.  Attorneys are not free to speak their minds.

5    That is not the case.  Attorneys are not free to speak their

6    minds.  Saying anything else is not factually correct.

7         In my joinder to the motion, I submitted a couple

8    exhibits just to provide examples of how this deal is being

9    sold to victims.  On Exhibit 1 of my joinder, you can see a

10   text message that is being sent by multiple attorneys to

11   victims.  Vote first, ask questions later.  Hurry up and vote.

12   Vote yes.  They are pitching this in a way that there's a pot

13   of gold and all you have to do is vote yes.  It's 13.5 billion.

14   That's the way this is being pitched.

15        Now, you can just ignore that and say, well, that's up

16   to the attorneys.  That's between the attorneys and their

17   clients.  We have nothing to do with that.  But we do.  We have

18   a fiduciary responsibility to be able to provide victims with

19   information to be able to make an informed decision.

20        I would tell you, Your Honor, that that exhibit on the

21   left, that text message, resembles in electronic form the notes

22   that Mr. Karotkin passed to you at the end of the hearing -- or

23   at the beginning of the hearing on March 11th.  This is no

24   joke.  This is how people are being solicited.  And it should

25   not be permitted.  We need to provide them with the information

                PG&E Corp. and Pacific Gas and Electric Co.

1    that they need to make an informed decision and then vote.

2            Let's look at the exhibit on the right that's being

3    put forward by many attorneys.  Fire Settlement Facts, this

4    isn't them speaking to just their own attorneys.  This is

5    attorneys speaking to the broad array of victims in the three

6    classes that Mr. Julian just described.  They are trying to

7    influence and cajole and push victims to vote yes quickly,

8    before this information comes out.  That is what is being

9    proposed.  If you look at the --

10           THE COURT:  Mr. Abrams, how do you know that?  Mr.

11   Abrams, how does one know that?  How can you attribute to

12   the --

13           MR. ABRAMS:  Okay, let me --

14           THE COURT:  -- author of those statements that they're

15   trying to force a vote before there's more information.  Where

16   do you see that in the document?

17           MR. ABRAMS:  Sure.  So let me -- so if you look on

18   that document on the right, this is Fire Settlement Facts,

19   right?  So that's the headline, Fire Settlement Facts.  And

20   then it provides the facts, right?  Three facts that you should

21   know, right?

22           The first fact is this settlement is an opportunity

23   for you and your families and your communities to continue to

24   be rebuilt and recover.  That's the first fact.  Second fact

25   is --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  No, you need to get to my point.  Mr.

2  Abrams, I don't have time to read something that I've already

3  read.

4    MR. ABRAMS:  Sure.

5    THE COURT:  You need to tell me where is there some

6  indication that this is being done, that the author of this

7  document is trying to get the vote before some facts come to

8  light.  That's your opinion and you're entitled to your

9  opinion.  But where do you attribute it to the author of this

10  document?

11    MR. ABRAMS:  So this document to the right was an ad

12  that ran in the Press Democrat.

13    THE COURT:  How do you attribute the fact that you

14  believe that there's a hidden agenda to the author of this

15  document?  I don't care where it came from.  I don't know how

16  you know that that's the motive of this author.

17    MR. ABRAMS:  So look, Your Honor, I'm certainly not a

18  mind reader.  But it is not a stretch to look at this document

19  and attend the meetings and come to the conclusion that this

20  was meant to get a broad spectrum of victims to come and attend

21  and be pushed to vote yes quickly.  And I'm not questioning the

22  hearts or the motives of those attorneys.  But there is no

23  other read of this document.

24    And if you look at the very bottom, very bottom, you

25  can't really see it.  But at the very bottom, the smallest

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    print there is at the bottom, that's where the attorneys are

2    listed.  I couldn't hardly read it, but that's where the

3    attorneys are listed.  So this is not -- there's just no room

4    to (indiscernible) --

5            THE COURT:  Okay.  Mr. Abrams, I need to move on.  Let

6    me -- what other point do you wish to make?  I don't need you

7    to read, again, what you've submitted to me.  I've got it in my

8    hand and I have read it.  Make any other point you want to

9    make.  I've got to move on.

10           MR. ABRAMS:  Sure, Your Honor.  Look, I believe that

11   it is not sufficient to leave it in the hands of all the

12   attorneys to be able to message this however way they want.  It

13   is not prudent.  I think what needs to happen is that the votes

14   that have occurred thus far were not based on whatever plan is

15   going to come out of these negotiations.  It wasn't.  It isn't

16   a vote on this plan.

17           And so, we need to, I suggest, proceed in a manner

18   that is prudent; which is get the negotiations largely done, at

19   least the material points.  Then go, provide that information

20   and let the victims vote.  Nobody else would do it any other

21   way.  And so, I'll just leave you with this, Your Honor --

22           THE COURT:  Okay, you've already said -- you've made

23   that point.  Mr. Abrams, you've made that point.  I got that

24   point.  Make your -- what's your final point?

25           MR. ABRAMS:  Okay.  Okay, so, Your Honor, my final

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    point is that the path that the debtors have set here is not

2    being presented and it needs to be presented.  Mr. Johnson

3    indicated that his expectation is that hedge funds are going to

4    exit the stock upon the exit of bankruptcy.  Then, the thoughts

5    that then they're going to be able to attract additional

6    traditional utility investors is not possible.  Then there's

7    going to be a dilution of the stock.  There's going to be a

8    conflagration of risks all laid upon the victims.  We can't

9    just skirt that issue.

10       And so I would just leave it with Your Honor to

11   consider that we need to make sure that the process, even

12   though we're rushing to get to the June 30th deadline, that we

13   don't shortchange all the victims to be victimized again.  And

14   so I would just ask Your Honor to please consider the

15   implications of this outside the courtroom.

16       THE COURT:  Okay.  Thank you, Mr. Abrams.

17       Mr. Karotkin, are you and Mr. Bennett, one of you or

18   both of you going to make your point?  Or what's your pleasure?

19       MR. KAROTKIN:  Yes.

20       MR. JULIAN:  Your Honor, it's Robert Julian.  May I

21   just interject a moment?

22       THE COURT:  Yes, sir.

23       MR. JULIAN:  So there have been two comments made I'd

24   like to say that I would amend the letter.  The first is Mr.

25   Pascuzzi, for the state government and he's asked me in the

PG&E Corp. and Pacific Gas and Electric Co.

1   beginning of the letter to make sure that the TCC represents

2   the interests of fire victims, but does not represent the

3   interest of the government entity fire victims.  That's fine

4   with me.

5           And Ms. Riddle made a point, which I have taken to

6   heart, about how this could be giving legal advice to her

7   clients.  I didn't intend it to be that way.  So I'm open to

8   changing this to stating that the TCC, you know, would give

9   PG&E until April 25 to fix the problems and send out our

10  supplemental note on or about April 25, something within that

11  timeframe.

12          And I would modify the language about recommending

13  that fire victims not vote.  I think it's -- if we're promising

14  to give them supplemental disclosure or recommendations or

15  supplemental report on or about April 25, I think that carries

16  the message without giving the legal advice.  So thank you,

17  Your Honor.  And I'll -- I've taken the comments to heart --

18          THE COURT:  Well, no.  So -- but, Mr. Julian,

19  you're -- on the first page, in all caps, you would simply

20  change that May 1 to April 25?

21          MR. JULIAN:  I would change where it says TCC intends

22  to give PG&E until April 24 to fix the problems.  And the May 1

23  date would change to April 25.

24          THE COURT:  So if they don't fixt the problems to your

25  satisfaction by April 24th, then you'll send out a letter that

PG&E Corp. and Pacific Gas and Electric Co.

1    presumably says they didn't fix it to our satisfaction and

2    therefore, what?  Now you vote?  Now we won't give you a

3    recommendation, but vote?

4            MR. JULIAN:  No, I'm withdrawing the paragraph that

5    says don't vote yet.  Ms. Riddle objects to that and I'll

6    take --

7            THE COURT:  So what is the purpose of the letter,

8    then, Mr. Julian?  If you're taking out --

9            MR. JULIAN:  The purpose of the letter is --

10           THE COURT:  Let me finish my point.  If you're taking

11   out the recommendation that you not vote, what does a person

12   getting this letter make of it?  Do I vote or not?

13           MR. JULIAN:  What we're saying is we're giving you

14   additional information on April 25 that you should take into

15   account in voting.  That's basically it.

16           THE COURT:  And what happens if you have no

17   information to give on April 25?

18           MR. JULIAN:  After telling them there are three

19   problems and we're trying to fix them and if -- first of all,

20   there is going to be some registration-rights agreement.  So we

21   will have a supplemental report.

22           THE COURT:  How do you know that it will be ready to

23   go on that date?

24           MR. JULIAN:  If it is not, then we will tell them,

25   unfortunately what we wanted to have happen in this period of

PG&E Corp. and Pacific Gas and Electric Co.

1     time has not occurred and that will be additional information

2     that they will use to vote.

3          THE COURT:  But you won't make -- the committee won't

4     make a recommendation?

5          MR. JULIAN:  The committee may or may not.  You know,

6     I don't make those decisions.

7          THE COURT:  Okay.

8          MR. JULIAN:  Right now what they're -- yeah.  The

9     committee may or may not have a recommendation by that point in

10    time.

11         THE COURT:  But today --

12         MR. JULIAN:  Right now --

13         THE COURT:  Today, April 7th, the committee is not

14    making a recommendation.  On April 25th, it might.

15         MR. JULIAN:  It could.

16         THE COURT:  Between now and then -- okay, I got it.

17    All right, I appreciate your point.

18         MR. JULIAN:  Thank you.

19         THE COURT:  Mr. Karotkin, how are you and Mr. Bennett

20    dividing up the chore?  What's your pleasure?

21         MR. KAROTKIN:  Let me start and I'll try to be

22    relatively brief, because I think Mr. Julian's last comments

23    kind of put this whole thing into perspective, because

24    effectively they are telling people not to vote by sending this

25    out.  And what he's asking, Your Honor, is for you to give him

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    a comfort order because he's worried about what he's writing in

2    this thing for obvious reasons because he's afraid of the

3    contents of it, he's afraid of the consequences of the contents

4    and he's asking for your imprimatur to shield him from

5    potential liability that may sink this plan because of this

6    silly letter that he wants to send out.

7           And I think it's really interesting.  When he was

8    making his presentation -- and I will confess, Your Honor, most

9    of it I couldn't understand.  But one thing was pretty clear.

10   He said, and I think this is word for word, that he admits the

11   words do not appear in the RSA.  They do not appear with

12   respect to any guarantee of the stock value.  And they do not

13   appear with respect to the timing of a registration-rights

14   agreement.

15          And by the way, Your Honor, as we've set forth at

16   length in our response of pleading together with the

17   shareholder proponents, all of these issues are not new.  All

18   of them are not new.  All of these issues could have been

19   raised and should have been raised at the disclosure statement

20   hearing and in connection with the approval of the disclosure

21   statement.

22          And this new element he's adding about Coronavirus,

23   well, by the way Your Honor, the last hearing at which the

24   disclosure statement was finally approved was done by telephone

25   because of the Coronavirus.  So I, frankly, don't understand

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    anything Mr. Julian is saying other than he wants you to give

2    him a totally, totally inappropriate comfort order.

3        And let's just see this for what it is. This is a

4    blatant attempt to renegotiate the deal they signed. The deal

5    is very clear. The deal was very heavily negotiated. They

6    signed it. It was approved by Your Honor. There is nothing in

7    that agreement that guarantees the value of the stock. And in

8    fact, Your Honor, as we've noted in our pleadings, the

9    disclosure statement supplement, as well as the disclosure

10   statement itself, but the disclosure statement supplement, the

11   executive summary for fire victims, in big letters, in big,

12   boldfaced letters, acknowledges the fact that there is no

13   guarantee for the stock and that the stock value could

14   fluctuate. And they drafted it. And that was approved by Your

15   Honor.

16       Again, that issue that they've been talking about was

17   there. They could've raised it, but they didn't. The plan and

18   the disclosure statement are religiously, religiously

19   consistent with the words of the RSA. There was specific

20   language to be added to the plan. It was included in the plan

21   that is now being solicited. They agreed to that language.

22   They agreed to the formula. And now they don't like it. They

23   want to recut it.

24       And additionally, as we noted in our pleadings -- and

25   I think this is very important to note -- that notwithstanding

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   the disruptions associated with COVID-19, the current market

2   price of PGE stock, that right now, as we sit here today, Your

3   Honor, is nearly nine dollars a share.  That's more, Your

4   Honor -- more than twelve percent higher than the average

5   trading price with $7.80 during the two months proceeding the

6   execution of the tort claim with RSA.  Your Honor, enough is

7   enough on this issue of the debtors promising or the equity

8   holders promising to guarantee the value of a stock.

9           And by the way, Your Honor, under the formula, taking

10   into account Mr. Julian's complaint about how the reorganized

11   company is going to be capitalized, under the formula, taking

12   it today, they would get a higher percentage of stock than is

13   reflected in the RSA than the 20.9 percent.  It would be

14   higher.

15           THE COURT:  And how do I know that?

16           MR. KAROTKIN:  But I will point that out --

17           THE COURT:  Mr. -- how do I know that?

18           MR. KAROTKIN:  It's a formula, Your Honor.  They

19   agreed to a formula.  You can mark my words, that based upon

20   today's situation and projections, they would receive a higher

21   percentage of the outstanding stock by about two percent.

22   That's how it would work.

23           THE COURT:  But -- but --

24           MR. KAROTKIN:  That could change.  That could change

25   over time.  But they agreed to a formula and that is precisely

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  how the formula will work.  And that's what they agreed to and

2  that's what the plan says.  And there is no mystery about that.

3         THE COURT:  No, I agree --

4         MR. KAROTKIN:  And with respect to registration

5  rights --

6         THE COURT:  Mr. Karotkin, hold on.  I agree that

7  you've set forth in your papers the formula.  The formula means

8  more stock, perhaps, more percentage of stock.  But it doesn't

9  change the value.  It's the value based on the formula, right?

10         MR. KAROTKIN:  No, it's amount of shares as based on

11  the formula.

12         THE COURT:  I'm sorry.  On the -- if the plan were

13  effective today, the --

14         MR. KAROTKIN:  If the plan were effective today and --

15         THE COURT:  -- the Trustee would get a certain number

16  of shares, but the formula, the value --

17         MR. KAROTKIN:  It's my understanding --

18         THE COURT:  -- the value would be the same, at

19  thirteen and a half million, wouldn't it?

20         MR. KAROTKIN:  No, the value is the value.  As you

21  have indicated yourself, Your Honor, the value of the stock

22  will be the actual trading value on the effective date.  It

23  could be more.  It could be less.  It could go up.  It could go

24  up substantially.  And typically, in utility companies, as you

25  noted yourself, Your Honor, in the last Chapter 11, it went up,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  okay?

2          THE COURT:  Right.

3          MR. KAROTKIN:  But is a formula, a negotiated formula

4  as to the percentage number of shares, they will get on the

5  effective date of the plan.  And as everyone has noted and as

6  you have noted and approved in the disclosure statement, that

7  actual value on the effective date could be higher or lower.

8  Nothing could be clearer, Your Honor.  Nothing could be

9  clearer.  It's in there at least three or four times.  And the

10  point they're raising about the registration-rights agreement,

11  there is nothing -- again, nothing in the RSA that provides

12  when that agreement is to be negotiated and finalized, nothing,

13  nothing.

14          And I'll tell you the reason for the delay.  The

15  reason for the delay in negotiating that agreement is not the

16  debtors.  The reason for the delay is that the tort-claimants

17  committee hasn't gotten around to retaining an advisor to

18  engage in the negotiations, despite the fact that we've prodded

19  them to do that.  And their letter as to the effective date is

20  wrong.  The RSA does not require that the funding take place by

21  August 29th.  Rather, as Mr. Julian indicated, once again, they

22  have a termination event in the event that it is not funded on

23  the 29th and no one is taking that away from them.

24          The problem is, Your Honor, is the letter is wrong.

25  The letter is misleading.  The letter suggests, in fact, that

PG&E Corp. and Pacific Gas and Electric Co.

1    there are going to be changes.  The letter clearly is designed

2    to get people to hold up their votes or to vote no and it's not

3    appropriate.  And if Mr. Julian thinks that letter is

4    appropriate to send out, Your Honor, as you indicated, let him

5    make a decision.  He's a big boy.  Let him make a decision as

6    to whether he wants to send it out.  He shouldn't be in a

7    position for asking you to put your imprimatur on that.  Thank

8    you.

9            THE COURT:  Mr. Bennett, do you want to add anything

10   for the shareholders?

11           MR. BENNETT:  Your Honor, I have nothing important to

12   add.  I just want to make sure, as Mr. Karotkin did it toward

13   the end of his remarks, that the focus is in the right place.

14   We can't prevent Mr. Julian from sending letters, of course.

15   He's permitted to do that now that the disclosure statement is

16   out there.  But what we can ask is that Your Honor not put your

17   imprimatur on it and give it more dignity than it deserves and

18   protect people, directly or indirectly, from the consequences

19   of making false statements.  Thank you.

20           THE COURT:  Does anyone on the call wish to be heard

21   in opposition to the TCC's motion, other than the two counsel

22   who spoke?

23           MR. SINGLETON:  Yes, Your Honor.  This is Gerald

24   Singleton.  We filed --

25           THE COURT:  Mr. Singleton, yes, thank you.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. SINGLETON:  -- an opposition -- thank you, sir.  I

2    wanted to thank Ms. Riddle for her comments.  I thought they

3    were very well-taken.  Certainly, all of us -- and I'm a member

4    of the consenting fire-claimant professionals.  I was involved

5    in negotiating this.  We're signatories and we represent around

6    7,000 people.

7          The two points that I wanted to make were, number one,

8    there has been a suggestion that was made that those of us who

9    signed the RSA are somehow not permitted to tell our clients

10   either our true feelings about it or to share any negative

11   facts.  And as Mr. Julian said, that's simply not correct.  We

12   have an absolute duty to share all the facts with our clients

13   and we do so.

14         And just speaking for myself, what I've told our

15   clients, my clients, is that there are risks here.  But

16   overall, we believe that the benefits outweigh the risks and

17   that's why we support it.  So I just wanted to make sure that

18   it was crystal clear that all of us not only have the right,

19   but the duty to make sure that we share all the information

20   with our clients.

21         The other thing I wanted to do was address, again,

22   something Ms. Riddle said and that was addressed by several

23   counsel.  When you talk about the bankruptcy court approving

24   the TCC sending this letter, as I understand bankruptcy and

25   certainly, I'm not as experienced as Mr. Bennett or Mr. Julian

PG&E Corp. and Pacific Gas and Electric Co.

1    or Mr. Karotkin, the appropriate function of the Court in

2    disseminating disclosure statements is to make sure they're

3    neutral and factually accurate.  And I believe the Court has

4    adequately done that.

5          This letter obviously is solicitation and it has a

6    point of view.  And while certainly, as I understand bankruptcy

7    law, anyone has the right to send one out, that is very

8    different than having the Court's imprimatur.  And that's our

9    concern.  I don't want my clients receiving a letter that I

10   think, with all due respect, there are some factual

11   inaccuracies in it, and having that blessed by the bankruptcy

12   court.

13         If anyone wants to send out information, whether it's

14   Mr. Abrams or anyone else, saying we believe you should vote no

15   and here's why, they certainly have the right to do that.  But

16   what we don't believe should happen is the TCC sending

17   something out that has the official imprimatur of the Court

18   that says something like this.  We just think that would not be

19   appropriate.  Those are the only comments --

20         THE COURT:  Well, I think the --

21         MR. SINGLETON:  -- I had.  I'm sorry, go ahead.

22         THE COURT:  Mr. Singleton, I think Mr. Julian conceded

23   the point that even without that second sentence of the letter,

24   he still believes it should go out.  But then, of course, he

25   doesn't need me to authorize it, does he?  He might need me to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    direct PG&E to pay for it.  I don't know.  That wasn't even a

2    discussion point here.  But my understanding of the law -- and

3    I'm supposed to be knowing it, too -- once the disclosure

4    statement is approved, then others may solicit and express

5    their views.  So you said that correctly.

6         But I have a question for you --

7         MR. SINGLETON:  Certainly.

8         THE COURT:  -- Mr. Singleton, because I know you and

9    your colleagues have been very active in this case from the

10   outset.  What do I do, as the judge -- or what do you do with

11   the kind of questions that Mr. Abrams has raised?  Mr. Abrams

12   says why would anybody vote until he finds out about the rights

13   offering or finds out about the funding?  So how would you help

14   me deal with that question?  In other words, why -- I'll put it

15   differently.  Why don't I -- why shouldn't I wait until some of

16   these questions are answered?

17        MR. SINGLETON:  Well, if the question is when a client

18   approaches us -- and clients ask questions like this all the

19   time and they say, I read something in the paper about X.  And

20   let's just say it's the reservation of rights issue.  Then we

21   respond truthfully.  And with respect to the reservation of

22   rights issue, the truthful response is part of the RSA says

23   that a registration-rights agreement has to be worked out.

24        Now, one of the problems and one of the reasons that

25   it hasn't been done yet, is that it requires the underwriters

PG&E Corp. and Pacific Gas and Electric Co.

1    to weigh in.  Obviously, this is, in terms of issuing billions

2    of dollars of stock, way above my paygrade.  But as it's been

3    explained to me by the financial advisors and by the other

4    knowledgeable people, the way this works is the underwriters

5    get together and they come up with how that stock is going to

6    be issued.

7         My understanding of where we are in the negotiations

8    is that PG&E has hired underwriters and the TCC has not yet put

9    forth anyone to fill that role.  That's something that we're

10   working on and we're trying to get done and I believe we will.

11   It simply hasn't been done yet, given the timing, but that

12   doesn't mean that PG&E is in breach of the RSA, because there's

13   no requirement that it be done now.

14        The other issue is very important and that is the

15   value of the stock.  And what I've said to my clients is what's

16   in the RSA, which is that the 6.75 billion is an estimation of

17   what the stock will be worth.  But it's actually based -- and

18   the agreement is based upon a formula that's based on 14.9

19   times the earnings.  Now, our financial advisors all believed

20   that the stock would be more than 6.75 billion at the time it

21   was issued.  However -- and this is something that I absolutely

22   tell my clients -- there are no guarantees.

23        And the main risk we're taking here is that the stock

24   may be worth less.  That's a risk that we took because we

25   wanted to maximize the amount of money we could get for our

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   clients and we did not want to settle for less than sixty cents

2   on the dollar, as subrogation did.  People often bring up the

3   point -- Mr. Julian raised this -- subrogation took all the

4   money.  I think it's important to remember that subrogation had

5   claims of approximately 19.5 billion dollars and they settled

6   for eleven billion in cash.  That, again, is a substantial

7   discount.

8        Our clients were not willing to take that discount.

9   But the only way they could get at or near a hundred cents on

10  the dollar was to accept an amount in stock.  Stock, by

11  definition is potentially volatile and can go up or down.  We

12  still believe that it will be worth more than 6.75 billion.

13  But I tell my clients there are absolutely no guarantees and if

14  you want to vote no based on that, you have that right.

15       My position isn't to tell my clients how to vote.

16  It's just to make sure that they get accurate information.  And

17  one of the concerns I have about this letter is, again, with

18  all due respect, because I've worked very closely with the TCC,

19  I don't know that everything in it is accurate.  And because of

20  that, I think it is more properly submitted as a solicitation,

21  as opposed to a statement coming from the Court.

22       THE COURT:  Okay, thank you very much, Mr. Singleton.

23       Anyone else who hasn't been heard?  I don't want to

24  take the time now -- it's important, but I need to absorb this.

25  So anyone on the call who has not been heard wish to be heard?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    All right.  I will take that as a no.  I want to thank
2    everyone for tolerating the confusion, partly with my phone.
3    And I'm going to reflect on the arguments that were submitted,
4    both in writing and on the -- in the presentation and within a
5    day or two I intend to issue something in writing.  It won't be
6    extensive.  It'll just be a decision to either authorize this
7    letter or not.

8    And again, I'll just repeat the obvious.  If I choose
9    to disapprove or to deny the motion, that does not mean that
10   the TCC or any individual is prohibited in any way from
11   communicating his or her own views about where things stand and
12   what others ought to vote or not vote.  But it's simply
13   consistent with what's been said.

14   So with that, I will thank you all.  I hope --
15   UNIDENTIFIED SPEAKER:  Your Honor?  Your Honor?
16   THE COURT:  Yes, sir?
17   UNIDENTIFIED SPEAKER:  I'm sorry.  I assume that -- I
18   assume your last remarks as to people are free to say what they
19   want applies to the debtors, as well?
20   THE COURT:  Of course.  I think that's what the law
21   and the First Amendment -- both the First Amendment and the law
22   seem to have something to be said, more than I do.
23   UNIDENTIFIED SPEAKER:  Okay, thank you.
24   THE COURT:  Again, I hope for our next hearing on the
25   14th, we'll do better with the technical end of it.  But thank

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  you all for your time --

2          MS. GREEN:  Your Honor?  Your Honor, this is Elizabeth

3  Green.  Can I just say one thing in response to your --

4          THE COURT:  Yes, ma'am.

5          MS. GREEN:  -- question earlier about the approval

6  process and whether the Court can do that?  This is cited in

7  our memo, but if you could just take a look at the Adelphia

8  case where (indiscernible) Cohen did discussion about

9  supplemental disclosures by constituents.  It's 352 B.R. 592.

10  It's cited in the materials --

11          THE COURT:  No, I'm aware.  I'm aware of the case, Ms.

12  Green.

13          MS. GREEN:  Okay.  Okay.  And the other thing is --

14          THE COURT:  Okay.

15          MS. GREEN:  -- we would request that if you do not

16  approve the letter, that you permit us to have it served

17  through Prime Clerk by the debtors.

18          THE COURT:  Mr. Karotkin, what about that?  If the TCC

19  wishes to promulgate a letter without the Court's endorsement

20  in any way, is there any reason why they can't ask Prime Clerk

21  to promulgate it?

22          MR. KAROTKIN:  Can we speak with our clients about

23  that?  I mean, the TCC has a habit of asking us to pay for lots

24  of things.

25          THE COURT:  Well, there is an expense involved, I'm

PG&E Corp. and Pacific Gas and Electric Co.

1  sure.  Why don't you do this --

2         MR. KAROTKIN:  Yes.  I --

3         THE COURT:  Why don't I -- let's leave it this way,

4  Mr. Karotkin and Ms. Green, I will issue a decision promptly.

5  If I grant the motion, then I believe by granting it, I'm

6  approved and I will permitively (sic) approve that the debtor

7  should have to undertake the expense of promulgating it.  If I

8  deny it, I will not address that issue.  If the company is

9  willing to do it consensually, then the problem goes away.  And

10 if the company does not, I guess I'll have to decide again.

11 I'm not -- I simply don't want to focus on that at the moment.

12 I want to focus on the merits.

13        MR. KAROTKIN:  Very well.  Thank you, sir.

14        THE COURT:  Okay, thank you again.  Thank you all for

15 your time and effort today.

16        MS. GREEN:  Thank you.

17        THE COURT:  Bye.  Have a -- be well, everyone.

18    (Whereupon these proceedings were concluded at 11:32 AM)

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                            I N D E X

2     RULINGS:                                    PAGE LINE

3     Debtors' motion for order approving          16    13

4     case-resolution contingency process and

5     related relief is granted as amended on the

6     record.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Clara Rubin, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

/s/ CLARA RUBIN

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:  April 9, 2020

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

**$**

**$7.80 (1)**
54:5

**A**

**AB (4)**
6:15,21;7:18;37:20
**Abid (1)**
14:15
**ability (2)**
7:3;37:10
**able (9)**
5:4;20:3;21:21;23:5;
24:1;44:18,19;47:12;
48:5
**above (1)**
61:2
**ABRAMS (29)**
15:7,7,13,15,17,19;
30:9;34:6;36:9;39:6,
20;43:4,5;45:10,11,13,
17;46:2,4,11,17;47:5,
10,23,25;48:16;59:14;
60:11,11
**absolute (1)**
58:12
**absolutely (2)**
61:21;62:13
**absorb (1)**
62:24
**accept (1)**
36:21;37:9;62:10
**acceptable (2)**
26:24;27:1
**account (3)**
6:16;50:15;54:10
**accounts (1)**
14:13
**accurate (3)**
59:3;62:16,19
**accuse (1)**
28:17
**acknowledge (1)**
16:9
**acknowledges (1)**
53:12
**acted (1)**
42:10
**action (1)**
27:5
**active (1)**
60:9
**actual (2)**
55:22;56:7
**actually (3)**
18:9;31:24;61:17
**ad (3)**
14:16,20;46:11
**add (4)**
22:8;35:16;57:9,12

**added (2)**
26:13;53:20
**adding (1)**
52:22
**additional (4)**
5:21;48:5;50:14;
51:1
**additionally (1)**
53:24
**address (9)**
8:6,15,20;10:18;
12:10;23:18,20;58:21;
65:8
**addressed (5)**
8:6;9:3,4;24:15;
58:22
**addressing (1)**
6:17
**Adelphia (2)**
33:23;64:7
**adequately (1)**
59:4
**admit (1)**
38:9
**admits (1)**
52:10
**advice (7)**
41:1,3,7;42:5,21;
49:6,16
**advise (1)**
34:10
**advised (2)**
19:9;22:8
**advising (1)**
34:11
**advisor (2)**
27:24;56:17
**advisors (6)**
18:10;21:6;25:6,12;
61:3,19
**affect (1)**
11:11
**affects (1)**
27:22
**affidavit (2)**
29:9;32:12
**affordable (1)**
7:4
**afoul (1)**
36:16
**afraid (2)**
52:2,3
**afternoon (1)**
8:7
**again (22)**
8:3,11,25;11:19;
16:8;17:7;19:22;20:21;
31:8;36:18;47:7;48:13;
53:16;56:11,21;58:21;
62:6,17;63:8,24;65:10,
14
**against (1)**
38:3

**agenda (2)**
15:18;46:14
**agree (6)**
26:22;27:17;32:10,
21;55:3,6
**agreed (10)**
5:19;27:10;28:16,17,
25;53:21,22;54:19,25;
55:1
**agreement (26)**
11:3,12;18:22;21:23;
24:6;25:25;29:15,16,
18,21;30:2,11;32:7,8;
33:9;34:15;38:14;
43:22;50:20;52:14;
53:7;56:10,12,15;
60:23;61:18
**agrees (1)**
28:13
**ahead (5)**
17:21;20:23;31:16;
39:10;59:21
**Akin (1)**
14:16
**allegation (1)**
32:17
**allegations (1)**
34:7
**allege (1)**
25:19
**alone (1)**
24:23
**alternative (2)**
11:20;14:24
**alternatives (1)**
38:3
**although (1)**
27:15
**always (1)**
41:19
**Amanda (1)**
40:3
**amend (1)**
48:24
**amended (4)**
14:21;16:4;26:16;
27:14
**amendment (3)**
29:19;63:21,21
**among (4)**
8:15;12:11;26:18;
31:2
**amongst (1)**
43:15
**amount (4)**
8:1;55:10;61:25;
62:10
**answered (1)**
60:16
**apologies (1)**
19:24
**Apologize (7)**
4:8;10:5;15:18,21;

19:21;20:6,10
**appear (5)**
26:3;35:6;52:11,11,
13
**appearing (2)**
17:18;34:6
**applaud (1)**
25:16
**applications (1)**
5:9
**applies (1)**
63:19
**appreciate (7)**
17:24;40:9,22;41:13;
43:5,7;51:17
**approaches (1)**
60:18
**appropriate (8)**
8:13;12:9;35:14;
42:4;57:3,4;59:1,19
**approval (10)**
7:17;8:13;9:1;11:14,
15;12:9,16;17:9;52:20;
64:5
**approve (6)**
7:12;35:8,14;36:6;
64:16;65:6
**approved (8)**
36:5,8;52:24;53:6,
14;56:6;60:4;65:6
**approving (1)**
58:23
**approximately (1)**
62:5
**APRIL (13)**
4:1;38:14;49:9,10,
15,20,22,23,25;50:14,
17;51:13,14
**Arent (1)**
14:3
**argued (1)**
39:8
**argument (4)**
5:3,25;17:21;31:20
**arguments (3)**
36:21,22;63:3
**arise (1)**
8:4
**arisen (1)**
40:16
**around (2)**
56:17;58:5
**array (1)**
45:5
**article (1)**
34:1
**articles (1)**
41:15
**aspect (1)**
20:12
**associated (2)**
43:20;54:1
**assume (2)**

19:21;20:6,10
63:17,18
**assurances (1)**
43:21
**attached (1)**
26:17
**attempt (1)**
53:4
**attempting (1)**
40:14
**attend (2)**
46:19,20
**Attorneys (12)**
44:4,5,10,16,16;45:3,
4,5;46:22;47:1,3,12
**attract (1)**
48:5
**attribute (3)**
45:11;46:9,13
**audio (1)**
4:12
**August (9)**
11:3;13:9;22:13;
24:20;25:9;38:11,14;
39:3;56:21
**author (5)**
45:14;46:6,9,14,16
**authority (2)**
37:5,5
**authorize (1)**
59:25;63:6
**average (1)**
54:4
**aware (5)**
36:8,11;37:5,19;
64:11,11
**away (3)**
25:1;56:23;65:9
**awkward (1)**
15:20

**B**

**back (12)**
4:12,22;10:6,10;
20:2,6,14;29:5;31:5,
25;34:23;43:12
**backstop (1)**
27:16
**backstops (1)**
26:11
**bad (2)**
23:3;28:1
**bait-and- (1)**
25:16
**BakerHostetler (3)**
17:18;18:5;21:4
**balance (4)**
38:1,8,25;39:2
**Bankruptcy (9)**
11:16;12:24;27:23;
36:5;48:4;58:23,24;
59:6,11
**banks (1)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(1) $7.80 - banks

Case: 19-30088   Doc# 6715   Filed: 04/09/20   Entered: 04/09/20 09:02:31   Page 68
of 80

37:17
**bargained (1)**
28:23
**Based (9)**
13:21;47:14;54:19;
55:9,10;61:17,18,18;
62:14
**basically (1)**
50:15
**battle (2)**
41:15,21
**became (1)**
28:3
**become (3)**
20:25;21:3;28:2
**beginning (2)**
44:23;49:1
**behalf (7)**
8:9;13:5;14:3,16;
16:2;17:18;42:10
**believes (1)**
59:24
**benefits (1)**
58:16
**Bennett (6)**
30:20;48:17;51:19;
57:9,11;58:25
**best (7)**
6:11;16:6;31:8;
40:11;41:17,24;42:8
**Beth (1)**
14:3
**better (3)**
25:15;28:19;31:18;
63:25
**bidder (5)**
8:16,21,24;12:12,16
**bidding (5)**
8:2,11,22;12:8,13
**big (3)**
53:11,11;57:5
**billion (28)**
18:17,18;21:15,15;
25:25;26:1,11,12;27:7,
11,11,13,16,19,20;
28:7,8,14,15;29:3,10;
34:17;44:13;61:16,20;
62:5,6,12
**billions (1)**
61:1
**bit (1)**
15:8
**blatant (1)**
53:4
**blessed (1)**
59:11
**blink (1)**
10:15
**blow (1)**
31:8
**BOKF (1)**
14:1,3
**boldfaced (1)**

53:12
**both (5)**
15:24;35:11;48:18;
63:4,21
**bottom (4)**
46:24,24,25;47:1
**boy (1)**
57:5
**BR (1)**
64:9
**Bray (3)**
13:17,19,19
**breach (4)**
28:6,10;34:14;61:12
**breached (2)**
25:19;31:21
**breach-of- (1)**
32:16
**brief (2)**
10:25;51:22
**briefly (4)**
5:8;13:21;14:15,17
**bring (1)**
62:2
**brings (1)**
33:1
**broad (2)**
45:5;46:20
**broadcasting (2)**
8:17;31:9
**BROWNSTEIN (2)**
14:2,3
**buffer (2)**
44:2,2
**bulk (1)**
23:9
**business (1)**
7:2
**Bye (1)**
65:17

**C**

**cajole (1)**
45:7
**calendar (2)**
4:13;5:20
**CALIFORNIA (2)**
4:1;37:19
**Call (14)**
4:3,5,16,24;5:1,16;
16:4,5;17:8,24;19:15;
22:17;57:20;62:25
**called (2)**
31:23;42:9
**calling (2)**
19:14;23:11;24:11;
38:19,20
**calls (1)**
23:14
**came (2)**
31:17;46:15
**can (37)**

5:7,16;6:5;8:5,10;
9:15,16,16;10:9;11:9;
16:7,22;20:4;21:11;
24:22,23;26:25;30:3;
31:11,11,12;33:10;
34:24,25;38:12;39:2,
16;40:3;44:9,15;45:11;
54:19;57:16;62:11;
64:3,6,22
**capitalization (3)**
26:23;29:25;30:16
**capitalized (1)**
54:11
**caps (1)**
49:19
**care (1)**
46:15
**carries (1)**
49:15
**case (16)**
4:5;5:5;23:2;27:3,
24;28:5,20,21;32:10,
25;33:23;37:23;44:5;
60:9;64:8,11
**case-resolution (1)**
16:5
**cases (2)**
7:14,22
**cash (5)**
23:1,3;28:21;33:17;
62:6
**cause (1)**
34:21
**caused (1)**
32:3
**CCSF (1)**
14:10
**cents (2)**
62:1,9
**certain (2)**
42:20;55:15
**certainly (12)**
9:23;14:9;19:17;
25:4;43:6,8;46:17;
58:3,25;59:6,15;60:7
**certified (1)**
27:8
**cetera (1)**
22:1
**change (9)**
4:11;34:17;38:20;
49:20,21,23;54:24,24;
55:9
**changed (4)**
23:8,16;30:15;34:20
**changes (2)**
11:5;13:8,12;16:15;
57:1
**changing (1)**
49:8
**Chapter (2)**
6:14;55:25
**cheaper (1)**

25:13
**choice (2)**
12:15;23:2
**choose (1)**
63:8
**chore (1)**
51:20
**chosen (1)**
41:1
**circulate (1)**
16:21
**circulated (1)**
31:2
**circumstances (7)**
7:5;8:4;15:20;17:25;
33:20;35:18;37:6
**cited (2)**
64:6,10
**claim (1)**
54:6
**claimants (8)**
5:14;6:23;7:16,20;
11:12;17:10;41:25;
43:19
**claims (2)**
22:19;62:5
**clam (1)**
23:15
**clarification (1)**
16:17
**clarify (2)**
5:22;11:10
**class (5)**
19:7;22:7;27:5,8;
43:19
**classes (1)**
45:6
**clause (2)**
26:14;29:7
**clauses (1)**
26:9
**clean (3)**
7:4;14:10;34:12
**clear (6)**
8:24;33:23;38:20;
52:9;53:5;58:18
**clearer (2)**
56:8,9
**clearly (4)**
7:9;29:18;43:25;
57:1
**CLERK (16)**
4:5;9:6,8,9,12,15,20,
22,24;19:12,13,18,23;
26:9;64:17,20
**client (1)**
60:17
**clients (18)**
20:25;40:21;44:17;
49:7;58:9,12,15,15,20;
59:9;60:18;61:15,22;
62:1,8,13,15;64:22
**closed (1)**

4:17
**closely (2)**
27:25;62:18
**Code (2)**
11:16;12:24
**Cohen (1)**
64:8
**colleagues (1)**
60:9
**combine (1)**
29:2
**comfort (2)**
52:1;53:2
**coming (6)**
15:13;16:12;22:13;
34:22;43:10;62:21
**comments (6)**
13:23;48:23;49:17;
51:22;58:2;59:19
**committee (14)**
8:8;11:12;13:18;
14:9;24:1;25:23;33:25;
34:3;36:10;51:3,5,9,
13;56:17
**communicating (1)**
63:11
**communications (1)**
35:8
**communities (1)**
45:23
**companies (3)**
23:1;44:3;55:24
**company (6)**
14:24;15:3;27:22;
54:11;65:8,10
**competitive (1)**
11:20
**complaint (1)**
54:10
**compliment (1)**
16:11
**compounded (1)**
25:20
**computer (1)**
10:14
**conceded (1)**
59:22
**conceive (1)**
7:6
**concern (2)**
40:24;59:9
**concerned (2)**
41:10;43:23
**concerning (1)**
43:11
**concerns (3)**
41:4;42:24;62:17
**conclude (1)**
16:24
**concluded (1)**
65:18
**conclusion (1)**
46:19

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 69
of 80

**conditions (2)**
21:11,14
**conference (1)**
20:6
**confess (1)**
52:8
**confidential (1)**
23:23
**confirm (1)**
8:10
**confirmation (3)**
16:4;23:7;27:2
**confirmed (3)**
14:22;31:8;34:24
**conflagration (2)**
43:9;48:8
**confuse (1)**
42:13
**confusing (5)**
40:15;42:8,17,19;
43:1
**confusion (3)**
39:15;41:11;63:2
**connected (2)**
10:12;20:6
**connection (2)**
10:5;52:20
**consensually (1)**
65:9
**consensus (1)**
31:2
**consent (1)**
29:24
**consenting (5)**
24:21;26:22;40:8,10;
58:4
**consequences (3)**
7:15;52:3;57:18
**consider (5)**
23:9;37:14,14;48:11,
14
**considering (3)**
33:15;37:15;41:8
**consistent (5)**
13:22;14:6;29:21;
53:19;63:13
**constituencies (1)**
6:22
**constituents (1)**
64:9
**constructive (3)**
7:6;13:11;31:19
**contents (2)**
52:3,3
**contingencies (1)**
16:19
**contingency (9)**
5:12;8:4;9:2;11:4;
15:11;16:5,6,18,25
**contingency- (2)**
7:8,9
**contingency-planning (1)**
9:4

**contingency-process (1)**
6:4
**contingent-fee (1)**
16:1
**continue (3)**
5:19;11:4;45:23
**continued (2)**
5:10,24
**continuous (1)**
23:19
**contract (3)**
28:6,10;32:17
**convinced (2)**
22:25;23:5
**copy (1)**
16:23
**Coronavirus (9)**
18:16;21:20;25:20;
28:3;29:1,2;32:5;
52:22,25
**Corporation (1)**
4:6
**correctly (2)**
24:17;60:5
**counsel (16)**
5:5,8;14:8,14;16:22;
31:6;35:6;39:7;41:2,7,
25;42:12,17;43:2;
57:21;58:23
**couple (5)**
33:2;35:5;37:13;
40:6;44:7
**course (9)**
12:20;14:22;16:14;
35:9;37:24;40:21;
57:14;59:24;63:20
**Court (134)**
4:3,4,7,17,18,22;
5:22;6:3,6,12;8:12,15;
9:1;10:3,7,9,13,14,22,
25;11:8,17,25;12:2,4,9;
13:2,5,16,25;14:8,18;
15:5,10,14,16,19;17:2,
4,7,15,20;19:25;20:4,7,
11,14,14,18,21;21:13;
31:11,14,16;32:19;
34:6;35:5,8,13,14,21,
23,25;36:2,4,5,14,20;
39:5,10,12,17,20;40:2,
5;41:22,24;42:6;43:2;
45:10,14;46:1,5,13;
47:5,22;48:16,22;
49:18,24;50:7,10,16,
22;51:3,7,11,13,16,19;
54:15,17,23;55:3,6,12,
15,18;56:2;57:9,20,25;
58:23;59:1,3,12,17,20,
22;60:8;62:21,22;
63:16,20,24;64:4,6,11,
14,18,25;65:3,14,17
**CourtCall (18)**
4:9,17,21;9:13,18,21,
23;10:1,4,8,11;19:17,

21,24;20:1,5,9,12
**courtesy (1)**
16:23
**court-filed (1)**
26:8
**courtroom (2)**
4:19;48:15
**Court's (3)**
8:12;59:8;64:19
**covered (1)**
14:10
**COVID-19 (1)**
54:1
**crazy (1)**
10:9
**create (1)**
41:11
**creates (2)**
29:4;37:1
**creditor (1)**
14:24
**creditors' (1)**
13:18
**critical (3)**
7:17;14:25;39:13
**crystal (1)**
58:18
**current (5)**
11:21;21:11,14;
27:15;54:1
**customary (2)**
8:13;12:10
**customers (1)**
7:4
**cut (1)**
9:9
**cutting (1)**
7:25

**D**

**damages (1)**
22:20
**date (10)**
7:15;13:10;24:19;
38:11;49:23;50:23;
55:22;56:5,7,19
**dates (2)**
7:10;43:21
**day (8)**
16:8;20:18;23:14;
27:1;31:23;32:13,18;
63:5
**days (7)**
23:18;29:13;37:16,
18,23;38:15;39:4
**deadline (6)**
6:15;37:6,7,21;38:4;
48:12
**deadlines (3)**
16:18;37:18,23
**deal (15)**
23:3;24:21;27:10;

21,24;20:1,5,9,12
**courtesy (1)**
16:23

40:10,11,14,15;41:17;
43:10,18;44:8;53:4,4,
5;60:14
**dealing (2)**
11:1;32:1
**deal-point (1)**
41:4
**debate (1)**
39:15
**debt (16)**
25:12,13,14;26:2,12,
23;27:11,20,21,25;
28:8,15;29:25;30:16;
32:4;34:18
**debt-financing (1)**
26:25
**debtor (6)**
16:11;18:9;28:13;
35:9;39:17;65:6
**debtors (29)**
5:19;6:8;7:6;16:2,2;
18:11;21:5;24:2,4,16;
25:6,11,19,21;26:10,
15;28:25;29:4,15;
30:15;31:21;33:11;
34:14;43:25;48:1;54:7;
56:16;63:19;64:17
**debtors' (6)**
6:21;16:10;17:16;
26:25;27:7;29:21
**December (10)**
18:8;24:5,19,21;
25:13;26:7,16;28:14;
33:12,17
**December/first (1)**
21:7
**decide (1)**
65:10
**decided (3)**
10:14;22:12;30:24
**decision (9)**
18:2;35:19;40:19;
44:19;45:1;57:5,5;
63:6;65:4
**decisions (1)**
51:6
**declaration (1)**
18:14
**defeated (1)**
22:15
**Definitely (1)**
40:9
**definition (1)**
62:11
**definitive (3)**
26:22;29:25;32:10
**delay (3)**
56:14,15,16
**delays (1)**
4:8
**Democrat (1)**
46:12
**demonstrated (1)**

7:22
**deny (2)**
63:9;65:8
**depositions (1)**
25:11
**described (2)**
8:3;45:6
**deserves (1)**
57:17
**designed (1)**
57:1
**despite (1)**
56:18
**destitute (1)**
22:10
**detailed (1)**
15:23
**details (1)**
9:2
**dial (3)**
9:13,22;19:21
**dialed (1)**
19:25
**difference (1)**
35:15
**different (5)**
28:25;29:1;38:7,7;
59:8
**differently (2)**
33:18;60:15
**difficult (2)**
17:24;43:7
**difficulties (1)**
4:25
**dignity (1)**
57:17
**dilution (1)**
48:7
**direct (1)**
60:1
**directly (1)**
57:18
**disagree (2)**
34:9,14
**disagreement (1)**
41:21
**disapprove (1)**
63:9
**disclosed (1)**
27:2
**disclosure (28)**
21:18;22:2;23:22,25;
24:2,15,17;29:8;33:3,6,
22,24;34:25;35:9;36:7;
38:17;49:14;52:19,20,
24;53:9,9,10,18;56:6;
57:15;59:2;60:3
**disclosures (3)**
32:18;33:24;64:9
**discount (2)**
62:7,8
**discussed (1)**
32:19

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 70
of 80

**discussion (4)**
16:24;18:9;60:2;
64:8
**discussions (6)**
5:21,23,25;18:12;
21:6;33:12
**disenfranchise (1)**
37:3
**dispute (3)**
27:18;28:10;33:7
**disregard (1)**
36:22
**disruptions (1)**
54:1
**disseminate (1)**
35:15
**disseminating (2)**
36:10;59:2
**distressing (1)**
42:8
**distributions (1)**
7:19
**dividing (1)**
51:20
**docket (3)**
4:15;15:9,11
**document (11)**
26:8,20;28:12;45:16,
18;46:7,10,11,15,18,23
**documents (7)**
26:4,22;27:1,16;
29:25;32:10;42:18
**dollar (2)**
62:2,10
**dollars (21)**
25:25;26:2,11,12;
27:7,11,11,13,16,19,
20;28:8,14,15;29:3,10;
43:20,21;54:3;61:2;
62:5
**dollars' (2)**
18:17,18
**Donato (5)**
18:15,20;21:9;29:10;
32:15
**done (13)**
16:13;25:10;30:14;
37:21;40:12;46:6;
47:18;52:24;59:4;
60:25;61:10,11,13
**down (4)**
22:11;32:7;39:22;
62:11
**downward (1)**
28:4
**drafted (2)**
30:25;53:14
**dropped (1)**
10:21
**drove (1)**
28:4
**dubbed (1)**
4:9

**due (2)**
59:10;62:18
**during (2)**
44:3;54:5
**duty (2)**
58:12,19

## E

**earlier (3)**
9:19;26:9;64:5
**early (3)**
19:10;22:9;26:13
**earnings (1)**
61:19
**easily (1)**
8:5
**easy (1)**
43:12
**economic (1)**
22:20
**effective (9)**
11:3,22;21:1;55:13,
14,22;56:5,7,19
**effectively (1)**
37:3;51:24
**effort (1)**
65:15
**either (6)**
10:22;15:2;23:17;
25:3;58:10;63:6
**elaborate (1)**
5:23
**electronic (2)**
4:22;44:21
**electronically (1)**
4:20
**element (1)**
52:22
**elements (2)**
8:22;12:12
**eleven (1)**
62:6
**Elizabeth (4)**
5:18;13:4,7;64:2
**else (12)**
11:6;13:3;15:6;17:1;
22:21;28:21;39:5,20;
44:6;47:20;59:14;
62:23
**email (1)**
9:17
**embarrassed (1)**
20:22
**emergence (1)**
6:14
**employ (1)**
5:9
**empower (1)**
18:1
**encouraged (1)**
14:25
**end (11)**

10:14;11:6;18:4;
20:13;21:7;24:19;
30:16;42:16;44:22;
57:13;63:25
**ended (1)**
31:13
**endorsement (1)**
64:19
**energy (2)**
7:4;14:10
**engage (1)**
56:18
**enough (5)**
31:25;38:16,18;54:6,
7
**ensure (1)**
25:19
**entered (1)**
40:16
**entitled (1)**
46:8
**entity (2)**
42:9;49:3
**equity (17)**
5:19;25:25;26:11;
27:8,11,13,19,21,25;
28:7,14,18;29:4;30:5;
32:3;34:17;54:7
**especially (2)**
33:25;41:8
**essentially (1)**
19:6
**estimation (1)**
61:16
**et (1)**
22:1
**even (9)**
19:1;24:8;28:9;33:9;
36:21;42:3;48:11;
59:23;60:1
**event (9)**
7:10;8:3,11;13:1;
14:23;15:2;16:9;56:22,
22
**eventually (1)**
8:1
**everybody (1)**
13:1
**everyone (12)**
4:7;6:10,11;10:13;
14:11;22:21;27:17;
28:20;38:10;56:5;63:2;
65:17
**everywhere (1)**
4:9
**exactly (1)**
10:20
**example (1)**
18:7
**examples (1)**
44:8
**exclusivity (4)**
11:5;12:18,20,25

**Excuse (2)**
9:6;19:12
**execution (1)**
54:6
**executive (1)**
53:11
**exercise (1)**
16:10
**Exhibit (3)**
44:9,20;45:2
**exhibits (1)**
44:8
**existence (1)**
30:1
**exit (2)**
48:4,4
**expect (1)**
5:2
**expectation (1)**
48:3
**expediting (1)**
7:19
**expense (2)**
64:25;65:7
**experience (2)**
36:23,23
**experienced (1)**
58:25
**expires (1)**
12:25
**explained (4)**
21:18,19;22:3;61:3
**express (1)**
60:4
**extend (5)**
24:22,23;37:6;38:15;
39:3
**extended (1)**
37:20
**extending (1)**
37:18
**extension (3)**
25:2;37:15,22
**extensive (1)**
63:6
**extra (4)**
26:1;27:20,21,25
**extremely (1)**
15:20

## F

**faced (1)**
23:24
**fact (15)**
7:12;11:19;24:18;
29:2;36:3;38:4;39:14;
45:22,24,24;46:13;
53:8,12;56:18,25
**facts (13)**
18:1;24:4;33:21;
34:12;35:18;45:3,18,
19,20,20;46:7;58:11,12

**factual (1)**
59:10
**factually (1)**
44:6;59:3
**fail (2)**
15:3;18:6
**failure (1)**
7:12
**fall (1)**
19:6
**false (3)**
26:2,2;57:19
**families (1)**
45:23
**far (1)**
47:14
**fault (2)**
10:7,9
**February (3)**
26:13;30:17,18
**federal (3)**
34:1,2;37:17
**feelings (1)**
58:10
**Feld (1)**
14:16
**fiduciary (2)**
24:24;44:18
**fifth (1)**
26:14
**fifty-two-page (2)**
26:20;28:12
**file (2)**
15:14;26:15
**filed (15)**
6:16;7:23;8:7,8;
15:22;18:14,19;21:9;
25:21;26:10;28:22;
32:15;35:1;39:22;
57:24
**filing (1)**
12:19
**fill (1)**
61:9
**final (3)**
6:13;47:24,25
**finalized (1)**
56:12
**finally (3)**
5:13;32:17;52:24
**financial (7)**
18:10;21:6;25:6,11;
27:24;61:3,19
**financing (6)**
25:12,13,14;26:23;
27:23;29:25
**find (1)**
33:21
**finds (2)**
60:12,13
**fine (2)**
13:14;49:3
**finish (1)**

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 71
of 80

50:10
**fire (19)**
5:14;6:22;7:16,19;
13:10;17:10;18:24;
28:21;39:16,18;41:25;
42:19;45:3,18,19;49:2,
3,13;53:11
**fire-claimant (1)**
58:4
**fire-claimant- (1)**
40:10
**fire-claimant-professional (1)**
40:8
**firm (1)**
40:13
**first (20)**
4:12;6:10;18:8;21:5,
25;24:14;29:18;33:17;
35:17;37:17;38:9;
43:17;44:11;45:22,24;
48:24;49:19;50:19;
63:21,21
**five (2)**
37:16;38:15
**fix (6)**
23:5;29:12;49:9,22;
50:1,19
**fixed (1)**
23:19
**fixt (1)**
49:24
**flu (1)**
38:7
**fluctuate (1)**
53:14
**focus (3)**
57:13;65:11,12
**focused (1)**
18:3
**folks (1)**
43:11
**follows (1)**
26:4
**force (1)**
45:15
**Forget (1)**
29:8
**forgotten (1)**
15:12
**form (6)**
16:21;26:24;30:1;
41:16,20;44:21
**formal (3)**
30:18,21;31:20
**formula (18)**
28:5;29:8;34:20;
53:22;54:9,11,18,19,
25;55:1,7,7,9,11,16;
56:3,3;61:18
**formulated (1)**
8:14
**forth (4)**
32:17;52:15;55:7;

61:9
**forths (1)**
43:13
**forward (2)**
14:22;45:3
**four (2)**
39:4;56:9
**Fox (1)**
14:3
**FRANCISCO (1)**
4:1
**Frankly (3)**
41:14;42:18;52:25
**free (4)**
35:15;44:4,5;63:18
**front (2)**
18:15,19;21:9;27:14;
32:15
**full (1)**
22:11
**fully (2)**
6:16;39:18
**function (1)**
59:1
**fund (3)**
7:19;24:5;32:2
**funded (1)**
56:22
**funding (8)**
18:7;21:7;22:11;
24:19,25;33:12;56:20;
60:13
**funding-date (1)**
24:15
**funds (2)**
23:1;48:3
**further (6)**
5:24;13:23;16:13,24;
17:2;42:14

## G

**Gerald (1)**
57:23
**Gibson (1)**
34:1
**given (1)**
61:11
**giving (5)**
42:4,22;49:6,16;
50:13
**goes (3)**
33:25;39:14;65:9
**go-forward (1)**
7:19
**going-forward (1)**
7:2
**gold (1)**
44:13
**good (10)**
4:7;6:7;13:19;14:2;
17:17;20:18;32:24;
34:11;38:2;39:11

Gotshal (1)
6:8
**government (5)**
37:17,19,19;48:25;
49:3
**governor (1)**
37:24
**governor's (7)**
6:20,23,25;7:13;
8:10;15:22;16:11
**grant (2)**
16:13;65:5
**granting (2)**
11:10;65:5
**Great (3)**
19:23;23:9;34:21
**greater (1)**
30:5
**Green (24)**
5:15,18,18;6:1,2;
13:4,4,6,7,7,16;16:21;
17:10,12,14;36:16;
64:2,3,5,12,13,15;65:4,
16
**Gregory (1)**
13:19
**group (7)**
14:17,21;31:3;35:22;
38:21;40:8,11
**guarantee (3)**
52:12;53:13;54:8
**guaranteed (2)**
25:24;32:9
**guaranteeing (1)**
37:4
**guarantees (4)**
29:24;53:7;61:22;
62:13
**guess (4)**
4:4;26:25;37:8;
65:10
**guidance (1)**
42:20
**gum (2)**
27:9;31:7
**Gump (1)**
14:16

## H

**habit (1)**
64:23
**half (3)**
23:2,3;55:19
**halfway (1)**
10:16
**hand (1)**
47:8
**hands (1)**
47:11
**hang (2)**
19:14;20:15
**happen (6)**

16:7;18:3,4;47:13;
50:25;59:16
**happened (4)**
20:7,8,9;30:24
**happening (7)**
18:12;20:23,23;
21:17,20;23:4;36:24
**happens (6)**
36:24,25;37:8;43:13,
13;50:16
**happy (5)**
5:25;11:10;35:17;
38:11,14
**hard (2)**
7:5;17:4;32:25
**hardly (1)**
47:2
**Hauer (1)**
14:16
**headline (1)**
45:19
**hear (15)**
5:8,25,25;6:5;20:3,4,
7,7,9;21:11;31:11,11,
12;32:13;40:4
**heard (19)**
6:18;8:23;12:6,14,
17;13:2;14:14,17;15:6;
39:5,7,20,23,24;43:2;
57:20;62:23,25,25
**hearing (14)**
4:12,20;5:10;18:4;
25:6;27:2,6;36:7;
43:14;44:22,23;52:20,
23;63:24
**hearings (3)**
4:20;23:7;26:13
**heart (2)**
49:6,17
**hearts (1)**
46:22
**heavily (1)**
53:5
**hedge (2)**
23:1;48:3
**heightened (1)**
28:2,3
**Hello (7)**
9:6;10:1,3,4;20:4;
31:10,11
**help (1)**
60:13
**helpful (2)**
16:20;22:3
**here's (5)**
30:12;34:13;59:15
**hidden (1)**
46:14
**higher (5)**
54:4,12,14,20;56:7
**hired (1)**
61:8
**hit (2)**

28:3;38:5
**hoc (2)**
14:16,20
**Hold (9)**
31:9,13;36:4,18;
40:25;41:12;42:25;
55:6;57:2
**holders (1)**
54:8
**Honor (91)**
5:18;6:8,12,15,19;
7:5,12,16,21,24;8:14;
9:2;10:1,4,11;12:15;
13:4,7,19;14:2,15,19,
19,23;15:1,4,7,17;17:1,
12,17,18,23;19:3,5,12;
20:1,3,5;21:11;24:24;
26:5,17;28:20;30:4;
33:13;34:5;35:3,12,25;
37:13,25;39:3,9,11;
40:1,3;43:5;44:20;
46:17;47:10,21,25;
48:10,14,20;49:17;
51:25;52:8,15,23;53:6,
8,15;54:3,4,6,9,18;
55:21,25;56:8,24;57:4,
11,16,23;63:15,15;
64:2,2
**Honor's (1)**
36:19
**hope (8)**
4:14;6:10;8:9;34:23,
23,24;63:14,24
**hopes (1)**
40:11
**horrible (1)**
20:24
**hundred (3)**
38:5,6;62:9
**hung (2)**
20:16,19
**Hurry (1)**
44:11
**hurt (1)**
28:9
**hyperbole (1)**
7:25

## I

**idea (1)**
30:13
**identifies (1)**
24:18
**identify (2)**
5:1,6
**identifying (1)**
31:1
**ignore (1)**
44:15
**ignoring (1)**
39:21
**immediately (2)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) fire - immediately

Page 72
of 80

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31

19:22;31:23
**impact (5)**
29:1,2;34:16,18,21
**impacted (1)**
28:6
**impacting (1)**
32:6
**impasse (1)**
24:8
**implications (1)**
48:15
**importance (1)**
7:23
**important (24)**
13:10;17:25;19:6;
22:12;24:1,10,14;
28:18;30:3,7;33:13,13,
16;34:12;39:14;40:17,
20;41:5;43:14;53:25;
57:11;61:14;62:4,24
**importantly (1)**
7:18
**imprimatur (6)**
36:19;52:4;57:7,17;
59:8,17
**inability (1)**
17:8
**inaccuracies (1)**
59:11
**inappropriate (1)**
53:2
**included (1)**
53:20
**including (5)**
8:24;11:13;12:15;
13:9,13
**income (1)**
25:15
**incomplete (2)**
37:11;43:24
**inconvenienced (1)**
4:11
**increase (1)**
34:18
**increasing (1)**
32:4
**incredibly (5)**
37:2;40:17,20;41:5;
42:18
**indicate (2)**
11:18;19:18
**indicated (5)**
19:18;48:3;55:21;
56:21;57:4
**indication (1)**
46:6
**indirectly (1)**
57:18
**Indiscernible (3)**
4:9;47:4;64:8
**individual (3)**
36:9,9;63:10
**influence (1)**

45:7
**inform (1)**
20:25
**information (22)**
24:9;36:10;37:12;
40:20,21,23;41:3,5;
42:5;43:24,24;44:19,
25;45:8,15;47:19;
50:14,17;51:1;58:19;
59:13;62:16
**informed (7)**
18:2;35:19;39:18;
40:19;43:16;44:19;
45:1
**in-house (1)**
32:24
**input (1)**
13:13
**insurance (1)**
23:1
**intact (1)**
4:14
**intend (2)**
49:7;63:5
**intends (1)**
49:21
**intent (1)**
27:18
**interest (2)**
7:1;49:3
**interesting (1)**
52:7
**interests (3)**
19:4;22:6;49:2
**interject (1)**
48:21
**interplay (1)**
16:17
**interpret (1)**
13:22
**interrupt (2)**
9:9;19:13
**into (12)**
6:16;11:21;13:13;
19:6;20:10,22;31:22;
38:24;40:16;50:14;
51:23;54:10
**investments (1)**
27:8
**investor (1)**
43:23
**investors (2)**
44:2;48:6
**involve (1)**
37:24
**involved (3)**
19:9;58:4;64:25
**involvement (1)**
14:25
**issue (15)**
21:10;24:15;29:8;
30:7;32:6;41:11;48:9;
53:16;54:7;60:20,22;

61:14;63:5;65:4,8
**issued (2)**
61:6;21
**issues (8)**
24:10,13;31:2;32:1;
33:2;41:5;52:17,18
**issuing (1)**
61:1
**item (1)**
15:8

---

**J**

---

**January (6)**
18:8;21:8;27:4,6,13;
37:20
**January/first (1)**
30:17
**jeopardize (1)**
7:14
**job (5)**
18:1;33:19,20;34:11,
11
**Johnson (1)**
48:2
**joinder (3)**
39:12;44:7,9
**joke (1)**
44:24
**Judge (13)**
4:8;9:9,9;18:15,19;
19:13,18;21:9;29:9;
31:22,23;32:15;60:10
**judgment (2)**
16:10;41:24
**judiciary (1)**
34:2
**judiciary's (1)**
34:2
**Julian (58)**
11:18;12:1;13:2;
17:11,12,13,15,17,18,
23;19:12,13,19;20:15,
17,19;21:2,14;31:10,
14,15,18;35:12,16,22,
24;36:2,3,13,15;37:13;
39:8;40:21;45:6;48:20,
20,23;49:18,21;50:4,8,
9,13,18,24;51:5,8,12,
15,18;53:1;56:21;57:3,
14;58:11,25;59:22;
62:3
**Julian's (2)**
51:22;54:10
**June (8)**
6:15;7:14;14:22;
37:7,20;38:4;39:1;
48:12
**Justice (1)**
5:9

---

**K**

---

Karotkin (52)
6:3,5,7,8;8:18;9:7,8,
8,11;10:16,20,24;11:7,
9,24;12:1,3,5;15:24;
16:14,20,23;17:1,3,6;
25:7;27:4,12;30:20;
33:3;44:22;48:17,19;
51:19,21;54:16,18,24;
55:4,6,10,14,17,20;
56:3;57:12;59:1;64:18,
22;65:2,4,13
**Karotkin's (3)**
13:21;14:5;16:1
**keep (6)**
6:13;15:10,10;24:10,
11;32:23
**keeping (1)**
4:19
**kind (8)**
31:24;40:22;41:3,21;
42:5,21;51:23;60:11
**knew (1)**
33:16
**knowing (1)**
60:3
**knowledgeable (1)**
61:4
**known (1)**
35:19

---

**L**

---

laid (3)
27:20;40:23;48:8
**language (3)**
49:12;53:20,21
**large (1)**
37:10
**largely (1)**
47:18
**last (10)**
11:17;18:15;32:13;
34:19;38:5;41:9;51:22;
52:23;55:25;63:18
**late (1)**
27:4
**later (5)**
15:13,18;22:15;38:6;
44:11
**law (9)**
11:5;16:16;23:25,25;
33:23;59:7;60:2;63:20,
21
**lawyer (2)**
22:18;39:24
**lawyers (14)**
5:2;18:5,15,19:8;
21:9;22:7,25;23:10;
34:6,8,10;38:21;39:22;
41:14
**lead (1)**
22:24
**leading (1)**

23:7
**learn (1)**
18:14
**least (5)**
4:15;16:7;34:19;
47:19;56:9
**leave (5)**
6:1;47:11,21;48:10;
65:3
**left (4)**
23:2,13;41:6;44:21
**legal (5)**
36:11;41:3;42:5;
49:6,16
**legislature (1)**
37:24
**length (1)**
52:16
**less (6)**
27:21,25;28:8;55:23;
61:24;62:1
**letter (35)**
5:13;17:10;30:25;
36:5,6;38:12;39:2,13,
14,16;40:24;42:7,10,
15;48:24;49:1,25;50:7,
9,12;52:6;56:19,24,25,
25;57:1,3;58:24;59:5,
9,23;62:17;63:7;64:16,
19
**letters (3)**
53:11,12;57:14
**leveraged (1)**
27:25
**liability (1)**
52:5
**light (4)**
16:8;43:8,14;46:8
**limited (2)**
8:7;12:8
**line (5)**
7:17;8:17;20:2;31:9;
39:22
**liquidate (1)**
30:3
**liquidating (1)**
18:24
**list (1)**
5:3
**listed (2)**
47:2,3
**little (1)**
15:8
**LLP (1)**
13:20
**locked (1)**
30:6
**long (8)**
13:14;16:5;20:19,20;
35:16;39:16;42:7;44:1
**longer (3)**
11:2;28:7;29:3
**look (13)**

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 73
of 80

14:22;24:7;25:22;
26:5;27:16;45:2,9,17;
46:17,18,24;47:10;
64:7
**looked (1)**
22:9
**looking (3)**
19:7;20:10;22:5
**lost (4)**
10:5;15:8;37:10;
43:12
**lot (5)**
22:18;38:12;39:15;
41:9,18
**lots (1)**
64:23
**lower (1)**
56:7

# M

**ma'am (1)**
64:4
**main (1)**
61:23
**maintained (1)**
40:18
**maintaining (2)**
4:18;7:17
**makes (1)**
28:19
**making (6)**
5:2;37:3;38:4;51:14;
52:8;57:19
**Manges (1)**
6:9
**manner (1)**
47:17
**many (4)**
16:7;20:20;37:21;
45:3
**March (6)**
15:23;23:20,20;
30:25;32:1;44:23
**mark (1)**
54:19
**market (6)**
21:11,14,17,19;
34:23;54:1
**markets (1)**
27:22
**material (3)**
8:22;12:12;47:19
**materials (1)**
64:10
**matter (3)**
17:25;25:7;30:23
**matters (3)**
8:23;12:14;23:20
**maximize (1)**
61:25
**May (23)**
9:9;11:13,21;14:17;

19:11;22:10,11,11,15,
18;36:18;37:1;39:2;
48:20;49:20,22;51:5,5,
9,9;52:5;60:4;61:24
**Maybe (4)**
15:12;25:10;37:5;
42:2
**mean (8)**
20:15,22;35:13;
41:20;42:12;61:12;
63:9;64:23
**meaningful (1)**
18:2
**means (4)**
21:10;24:22;28:8;
55:7
**meant (1)**
46:20
**media (1)**
23:13
**mediation (12)**
23:19;24:8;30:21,22;
31:22,23,25;32:11,12,
13,20,22
**meet (2)**
6:15;7:11
**meetings (1)**
46:19
**member (1)**
58:3
**members (1)**
40:8
**memo (2)**
30:18;64:7
**mentioned (6)**
16:15;24:14;25:5;
30:9,10;33:14
**merits (1)**
65:12
**message (4)**
44:10,21;47:12;
49:16
**met (1)**
7:10
**metaphorically (1)**
14:20
**middle (2)**
23:10;25:4
**might (5)**
18:25;22:8;33:18;
37:2;51:14;59:25
**Milbank (1)**
13:20
**million (1)**
55:19
**mind (2)**
24:24;46:18
**mindful (1)**
5:6
**minds (3)**
23:8;44:4,6
**minute (1)**
36:21

**misleading (1)**
56:25
**Mitchell (1)**
8:9
**moderator (3)**
10:2,5;19:15
**modified (1)**
26:16
**modify (3)**
11:15;12:23;49:12
**moment (3)**
9:14;48:21;65:11
**money (6)**
22:14,16;25:4;33:16;
61:25;62:4
**money's (1)**
22:13
**Montali (3)**
4:8;9:9;19:18
**Montali's (2)**
9:9;19:13
**month (2)**
33:10;34:16
**months (4)**
18:25;21:25;25:1;
54:5
**more (16)**
11:9;24:9;25:16;
28:9;31:19;45:15;54:3,
4;55:8,8,23;57:17;
61:20;62:12,20;63:22
**morning (6)**
4:7;13:19;14:2;
17:11,17;39:11
**most (3)**
7:18;44:3;52:8
**motion (33)**
5:12,13,17,20;6:4,16,
18,20,23;7:1,7,8,9,12,
17;8:3;11:14,15;12:19,
21;14:14;15:6;16:14;
17:9,19;32:15;38:24;
39:6,12;44:7;57:21;
63:9;65:5
**motive (1)**
46:16
**motives (1)**
46:22
**move (4)**
38:10;39:2;47:5,9
**much (2)**
28:18;62:22
**multiple (1)**
44:10
**music (4)**
31:9,12,13,17
**must (5)**
15:18;22:6;26:22,24;
29:24
**mute (2)**
8:18,19
**muted (1)**
19:19

**myself (2)**
15:25;58:14
**mystery (1)**
55:2

# N

**name (1)**
5:1
**nature (1)**
9:2
**navigate (2)**
40:15;41:17
**near (1)**
62:9
**nearly (1)**
54:3
**necessary (1)**
39:4
**need (25)**
9:3,16;14:24;16:13;
17:2;29:6,11,12;34:14,
20;35:18;38:17;40:18,
19;44:25;45:1;46:1,5;
47:5,6,17;48:11;59:25,
25;62:24
**needn't (1)**
5:23
**needs (8)**
8:18,19;19:14;34:15,
19,20;47:13;48:2
**negative (1)**
58:10
**negotiate (2)**
32:8;38:13
**negotiated (14)**
18:23;19:2;21:24;
24:20;29:16,17;30:12;
33:9,10;34:16;40:10;
53:5;56:3,12
**negotiating (2)**
56:15;58:5
**negotiations (7)**
41:4;43:13;44:1;
47:15,18;56:18;61:7
**net (1)**
25:15
**neutral (1)**
59:3
**new (4)**
30:5;52:17,18,22
**new- (1)**
27:7
**Newsome (2)**
31:22,23
**next (12)**
4:13,13;5:10,20;
21:8;23:18;24:9;31:23;
33:11,18;35:1;63:24
**night (1)**
32:14
**nine (2)**
34:17;54:3

**ninety (1)**
37:18,23
**Nobody (1)**
47:20
**Noise (1)**
8:17
**none (1)**
28:15
**nor (1)**
9:3
**normal (2)**
4:23;16:14
**note (5)**
12:25;24:17;25:21;
49:10;53:25
**noted (9)**
7:8,11;8:10;41:9;
53:8;24;55:25;56:5,6
**noteholder (1)**
14:17
**notes (3)**
14:4,13;44:21
**notice (3)**
4:15;8:13;12:10
**notwithstanding (1)**
53:25
**November (1)**
26:10
**number (20)**
4:24;9:15,16,20,22;
15:8,9;18:19;19:16;
21:16;25:15,17,18;
29:6;37:10;41:9,15;
55:15;56:4;58:7
**numbers (1)**
15:11

# O

**objection (4)**
7:7;8:7;12:8;13:11
**objections (4)**
7:25;10:19;12:6;
31:20
**objects (1)**
50:5
**obligation (2)**
33:4,5
**obligations (3)**
12:20,22;25:19
**obtain (1)**
25:12
**obtained (1)**
25:14
**obvious (2)**
52:2;63:8
**obviously (6)**
5:1;11:5;25:1;30:22;
59:5;61:1
**occurred (2)**
47:14;51:1
**occurs (1)**
18:7

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 74
of 80

**off (8)**
9:10;10:21;13:24;
16:22;34:22;40:25;
41:12;42:25
**offering (1)**
60:13
**office (2)**
8:10;16:12
**official (3)**
4:18;13:17;59:17
**often (1)**
62:2
**once (3)**
14:7;56:21;60:3
**once-in-a-century (1)**
38:5
**one (35)**
5:7;9:13;12:19;
14:20;16:16;17:20;
18:2,15;19:7;21:5,8,
18;22:18;25:17;26:16,
19;29:6;31:6;33:2;
34:25;36:3;38:9;40:7;
42:6,8;45:11;48:17;
52:9;56:23;58:7;59:7;
60:24,24;62:17;64:3
**one- (1)**
38:4
**ones (3)**
18:5;28:20,22
**one-seventh (1)**
42:3
**one-sixth (1)**
42:2
**ongoing (1)**
6:1
**ongoings (1)**
41:4
**online (1)**
10:8
**only (12)**
5:7;14:20;24:25;
25:20;26:16;28:6,19,
22;40:24;58:18;59:19;
62:9
**onto (1)**
35:16
**oOo- (1)**
4:2
**open (1)**
49:7
**opened (1)**
41:8
**opening (1)**
6:4
**operating (1)**
15:19
**Operator (16)**
9:12,13,18,21,23;
10:1,4,8,11;19:17,21,
24;20:1,5,9,12
**opinion (3)**
16:3;46:8,9

**opportunity (4)**
18:11,11;43:6;45:22
**opposed (1)**
62:21
**opposition (3)**
17:16;57:21;58:1
**oral (1)**
15:25
**Orbadajian (1)**
13:25
**order (10)**
4:3;11:1,10;13:14,
24;14:7;16:15,21;52:1;
53:2
**others (2)**
60:4;63:12
**otherwise (2)**
15:2;41:13
**ought (1)**
63:12
**out (38)**
9:13;19:22;22:5;
23:21;32:19,23;33:21,
25;34:3,25;38:12,17;
39:14,15,16;40:23;
42:1;43:15,18;45:8;
47:15;49:9,25;50:8,11;
51:25;52:6;54:16;57:4,
6,16;59:7,13,17,24;
60:12,13,23
**outset (1)**
60:10
**outside (5)**
24:21;26:21;31:3;
33:4;48:15
**outstanding (1)**
54:21
**outweigh (1)**
58:16
**over (7)**
4:9;8:17;24:9,13;
26:15;31:9;54:25
**overall (1)**
58:16
**overlooking (1)**
14:12
**overview (1)**
26:6
**own (4)**
36:10;38:4;45:4;
63:11

## P

**page (12)**
26:7,8,14,15,19,20;
27:6;28:11,12;29:23;
32:9;49:19
**paid (2)**
13:11;28:23;44:1
**painted (1)**
41:14
**pandemic (3)**

18:16;38:5;39:1
**paper (1)**
60:19
**papers (2)**
24:16;55:7
**paragraph (3)**
28:13;29:19;50:4
**part (2)**
38:24;60:22
**partially (1)**
30:12
**participants (1)**
5:4
**participation (2)**
7:18;11:20
**particular (2)**
6:22;7:16
**particularly (1)**
16:21
**parties (9)**
5:6;8:23;9:7;11:19;
12:14,17;14:11,13;
43:12
**parties-in-interest (2)**
7:15,21
**partly (1)**
63:2
**party (2)**
7:6;14:14
**Pascuzzi (1)**
48:25
**passed (1)**
44:22
**path (3)**
43:18,19;48:1
**patience (2)**
17:7,24
**Pause (1)**
9:25;19:25
**pay (3)**
35:10;60:1;64:23
**payday (1)**
22:22
**paygrade (1)**
61:2
**people (21)**
4:24;22:24;23:13;
25:4;33:14,15;34:5;
37:3,10,22;38:13,21;
42:13;44:24;51:24;
57:2,18;58:6;61:4;
62:2;63:18
**percent (5)**
28:5;34:22;54:4,13,
21
**percentage (5)**
41:25;54:12,21;55:8;
56:4
**perfect (1)**
38:9
**perhaps (3)**
7:18;38:15;55:8
**period (1)**

50:25
**permit (1)**
64:16
**permitively (1)**
65:6
**permitted (3)**
44:25;57:15;58:9
**person (2)**
5:7;50:11
**personal (1)**
9:16
**personally (1)**
40:25
**perspective (4)**
19:4,5;22:4;51:23
**PG&E (11)**
4:5,13;23:6;31:1,4;
43:10;49:9,22;60:1;
61:8,12
**PG&E's (1)**
23:5
**PGE (1)**
54:2
**phone (9)**
8:9,17,19;9:15;
10:14;31:9;39:7,24;
63:2
**phonetic (1)**
13:25
**pick (3)**
10:17;20:23;21:1
**piece (2)**
6:13,19
**pitched (1)**
44:14
**pitching (1)**
44:12
**pivot (1)**
14:24
**place (5)**
4:17;16:11;24:20;
56:20;57:13
**plaintiffs (3)**
22:7,18;31:3
**plaintiffs' (3)**
18:15;21:8;31:6
**plan (58)**
6:21;8:25;11:21;
14:21,22;16:4,6,11;
18:10;19:7;20:25;21:7;
22:14;23:16;24:3,17,
18;25:12,16,22;26:10,
10,16,23;27:7,15,19;
28:7,14,17,18,25;29:3,
25;30:19;31:1,4,5,7,20,
21;33:4,5,12;34:13,17,
24;43:16;47:14,16;
52:5;53:17,20,20;55:2,
12,14;56:5
**plan- (1)**
23:6
**planning (4)**
7:9,10;24:5;25:7

**plans (1)**
16:1
**play (2)**
11:21,21
**plays (1)**
43:15
**pleading (10)**
6:25;8:7;13:22;14:6;
18:19;21:9,10,16;32:7;
52:16
**pleadings (5)**
7:22;13:23;53:8,24
**please (7)**
9:22;14:18;19:15;
21:1;39:10;43:4;48:14
**pleasure (2)**
48:18;51:20
**point (29)**
11:2,17;16:12,16,17;
18:13;24:25;29:14;
32:5,6;46:1;47:6,8,23,
23,24,24;48:1,18;49:5;
50:10;51:9,17;54:16;
56:10;59:6,23;60:2;
62:3
**pointed (1)**
32:19
**points (7)**
14:20;16:7;22:3;
26:3;40:16;47:19;58:7
**points'd (1)**
11:8
**posed (1)**
43:10
**position (5)**
23:11,12;34:3;57:7;
62:15
**possible (2)**
44:2;48:6
**post-effective-date (1)**
6:24
**pot (1)**
44:12
**potential (1)**
52:5
**potentially (1)**
62:11
**practical (1)**
22:17
**precisely (1)**
54:25
**precluded (2)**
12:19;21:24
**prejudice (1)**
33:19
**premised (1)**
27:7
**prepared (1)**
11:14
**present (2)**
17:11,14
**presentation (4)**
5:3;10:17;52:8;63:4

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 75
of 80

**presented (3)**
12:16;48:2,2
**preservation (1)**
16:16
**preserved (1)**
12:15
**press (2)**
32:23;46:12
**pressure (1)**
38:13
**pressure's (1)**
25:1
**presumably (1)**
50:1
**presume (2)**
17:16;35:9
**pretty (2)**
33:23;52:9
**prevent (1)**
57:14
**price (2)**
54:2,5
**primarily (1)**
12:7
**Prime (2)**
64:17,20
**principal (1)**
5:2
**print (1)**
47:1
**pro (1)**
5:6
**probably (1)**
34:8
**problem (9)**
24:24;28:2,3,20;
29:4;32:2,16;56:24;
65:9
**problems (10)**
4:8;23:18;30:19;
38:3;39:1;49:9,22,24;
50:19;60:24
**procedural (1)**
35:5
**procedures (8)**
8:2,11,14,22;12:9,10,
13;15:24
**proceed (3)**
16:3;17:19;47:17
**proceeding (3)**
43:7,20;54:5
**proceedings (1)**
65:18
**process (17)**
5:12;8:2,22;9:3;11:4,
21;12:13;13:14;14:24;
15:11,23;16:5,19,25;
38:23;48:11;64:6
**prodded (1)**
56:18
**Prof (1)**
34:1
**professionals (6)**

24:22;26:22;32:24;
33:5;40:11;58:4
**prohibited (1)**
63:10
**prohibition (4)**
35:7;36:7,8,11
**prohibits (2)**
18:23;26:1
**projections (1)**
54:20
**promised (2)**
22:13;24:20
**promising (3)**
49:13;54:7,8
**promptly (1)**
65:4
**promulgate (2)**
64:19,21
**promulgating (2)**
36:11;65:7
**proper (2)**
16:10;33:25
**properly (1)**
62:20
**proponent (1)**
8:25
**proponents (8)**
15:3;24:17;25:22;
31:1,4,5,21;52:17
**proposal (1)**
38:9
**proposals (1)**
32:14
**propose (1)**
11:1
**proposed (6)**
8:2,11;12:8;14:7;
42:16;45:9
**protect (1)**
57:18
**protected (1)**
11:19
**provide (10)**
7:3;9:16,18;16:22;
18:1;42:20;44:8,18,25;
47:19
**provides (2)**
45:20;56:11
**providing (3)**
40:20;41:2,3
**provisions (1)**
12:24
**prudent (4)**
43:18,21;47:13,18
**public (4)**
7:1;30:25,25;32:23
**PUC (4)**
26:13;27:14;30:15;
37:24
**pure (1)**
9:4
**purely (1)**
7:8

**purpose (2)**
50:7,9
**push (1)**
45:7
**pushed (1)**
46:21
**put (10)**
10:10;27:23;32:12,
17;45:3;51:23;57:7,16;
60:14;61:8
**puts (2)**
38:12;39:12
**puzzle (2)**
6:13,19

### Q

**qualified (3)**
8:16,21;12:12
**quarter (2)**
18:8;21:7
**quick (2)**
22:22;25:4
**quickly (3)**
22:14;45:7;46:21
**quite (1)**
32:22
**quote (1)**
27:6
**quoting (1)**
6:25
**Qureshi (4)**
14:15,15,18,19

### R

**raise (1)**
16:24
**raised (6)**
33:3;52:19,19;53:17;
60:11;62:3
**raising (1)**
56:10
**ran (1)**
46:12
**rather (2)**
38:7;56:21
**reach (1)**
8:25
**read (12)**
10:25;15:25;17:15,
16;44:4;46:2,3,23;
47:2,7,8;60:19
**reader (1)**
46:18
**ready (4)**
4:4;17:19;30:19;
50:22
**reaffirm (1)**
11:2
**reaffirmed (1)**
27:12
**real (2)**

25:10,16
**really (8)**
24:4;25:7,12;32:2;
33:11;39:13;46:25;
52:7
**reason (6)**
34:13;36:19;56:14,
15,16;64:20
**reasons (2)**
52:2;60:24
**rebuilt (1)**
45:24
**receive (1)**
54:20
**receiving (1)**
59:9
**recognize (2)**
5:4;7:23
**recommend (1)**
33:20
**recommendation (8)**
37:9;42:11,12;50:3,
11;51:4,9,14
**recommendations (2)**
29:22;49:14
**recommended (1)**
37:22
**recommending (1)**
49:12
**record (7)**
4:18,19,22;6:7;
16:16;21:16;25:8
**recorded (1)**
4:16
**recording (1)**
4:10
**recover (1)**
45:24
**recut (1)**
53:23
**reducing (1)**
32:3
**reference (1)**
26:12
**referenced (1)**
26:11
**referring (1)**
35:20
**refers (1)**
27:15
**reflect (2)**
16:15;63:3
**reflected (2)**
16:18;54:13
**refuse (1)**
24:23
**regarding (1)**
5:9
**regardless (1)**
11:6
**registration (1)**
55:4
**registration- (1)**

29:20
**registration-rights (17)**
18:22;21:23;24:6;
25:25;29:14,16,18;
30:11;32:7,8;33:9;
34:15;38:13;50:20;
52:13;56:10;60:23
**regular (1)**
4:19
**reiterate (1)**
12:4
**related (1)**
13:13
**relating (1)**
26:23
**relatively (1)**
51:22
**reliable (1)**
7:4
**relief (4)**
7:7,24;11:11;12:23
**religiously (2)**
53:18,18
**remains (1)**
14:21
**remarks (4)**
6:4;20:22;57:13;
63:18
**remember (1)**
62:4
**remind (1)**
4:16
**renegotiate (4)**
29:5,7;43:17;53:4
**reorganized (2)**
7:3;54:10
**repeat (2)**
38:6;63:8
**repeatedly (2)**
30:8,11
**report (4)**
5:11,17;49:15;50:21
**represent (3)**
40:7;49:2;58:5
**representation (1)**
16:1
**representations (1)**
14:5
**represented (1)**
22:23
**represents (3)**
19:4;22:6;49:1
**request (5)**
37:22;38:21;40:2;
43:3;64:15
**requested (2)**
7:7;11:11
**requesting (1)**
12:23
**require (1)**
56:20
**requirement (1)**
61:13

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 76
of 80

**requirements (3)**
8:16,21;12:11
**requires (1)**
60:25
**resembles (1)**
44:21
**reservation (5)**
12:7;13:12;14:12;
60:20,21
**reservations (3)**
8:1,5;13:13
**reserve (1)**
15:1
**reserved (1)**
12:14
**reserving (1)**
13:8
**resigned (1)**
22:24
**resolution (1)**
16:12
**resolve (1)**
32:24
**respect (12)**
7:1;8:1;12:18;15:1;
26:17;30:1;52:12,13;
55:4;59:10;60:21;
62:18
**respond (2)**
37:12;60:21
**responded (1)**
30:17
**responds (1)**
30:13
**response (9)**
12:8;13:11;25:21;
30:21,21;32:14;52:16;
60:22;64:3
**responsibility (1)**
44:18
**responsive (4)**
6:25;7:22;8:6;24:16
**restriction (1)**
18:25
**retained (1)**
41:1
**retaining (1)**
56:17
**review (2)**
13:24;14:7
**reviewed (2)**
15:22,23
**revised (1)**
14:7
**RIDDLE (13)**
40:1,3,3,5,6;41:22,
23;42:1,15;49:5;50:5;
58:2,22
**right (27)**
4:7;13:6;15:16;
17:15;20:14;24:24;
39:5,10;43:4;45:2,18,
19,20,21;46:11;51:8,

12,17;54:2;55:9;56:2;
57:13;58:18;59:7,15;
62:14;63:1
**rights (21)**
8:1,5,23;11:13;12:7,
13,17;13:8,12,13;
14:12;15:1;29:21;30:5,
13;32:21;39:18;55:5;
60:12,20,22
**ripe (1)**
32:21
**rise (1)**
14:20
**risk (6)**
21:19,19;22:9;28:23;
61:23,24
**risks (9)**
19:9;39:15;43:9,9,
10;44:3;48:8;58:15,16
**Robert (3)**
17:13,18;48:20
**role (1)**
61:9
**room (2)**
43:14;47:3
**routines (1)**
4:23
**RSA (34)**
11:2,11;12:21;13:9;
15:2;16:17;25:23;26:3,
3,6,6,7,17;27:10;28:11,
12,13;29:15,19,24;
32:9;34:9;40:16,18;
52:11;53:19;54:6,13;
56:11,20;58:9;60:22;
61:12,16
**rule (1)**
36:17
**rules (2)**
35:25;43:22
**run (2)**
13:15;36:16
**runs (1)**
26:15
**rushing (1)**
48:12

**S**

**safe (2)**
6:10;7:3
**sale (4)**
8:2,22;12:13;13:13
**same (3)**
19:15;41:19;55:18
**SAN (1)**
4:1
**sat (2)**
30:13;32:21
**satisfaction (2)**
49:25;50:1
**savings (1)**
29:7

**saw (1)**
39:11
**saying (8)**
8:20;23:11;30:18;
41:12;44:6;50:13;53:1;
59:14
**schedule (1)**
11:22
**se (1)**
5:6
**season (2)**
18:24;21:25
**second (9)**
16:10;21:8;24:3;
26:15;33:8;36:4;38:23;
45:24;59:23
**secondly (2)**
14:23;18:13
**Section (3)**
11:15;12:24;28:11
**secure (3)**
7:13;40:13;43:20
**secures (2)**
6:20,23
**securities (1)**
27:5
**securitization (1)**
6:24
**seeing (1)**
43:8
**seeking (2)**
7:24;12:23
**seem (1)**
63:22
**Seems (1)**
37:11
**selection (1)**
8:24
**sell (4)**
21:5;30:3,5,6
**selling (2)**
18:25;21:24
**seminal (1)**
34:1
**send (9)**
5:14;34:3;49:9,25;
52:6;57:4,6;59:7,13
**sending (6)**
31:3;36:5;51:24;
57:14;58:24;59:16
**senior (1)**
14:4
**sense (1)**
11:5
**sensitive (1)**
22:6
**sent (6)**
26:8,20;28:12;30:19,
20;44:10
**sentence (3)**
36:4,17;59:23
**September (2)**
11:6;12:25

**serious (2)**
7:15;33:12
**served (1)**
64:16
**set (3)**
48:1;52:15;55:7
**setback (1)**
7:14
**settle (1)**
62:1
**settled (1)**
62:5
**Settlement (4)**
45:3,18,19,22
**seven (2)**
30:18;37:16
**several (1)**
58:22
**severe (1)**
44:3
**shall (1)**
34:10
**shape (2)**
41:16,20
**share (4)**
54:3;58:10,12,19
**shareholder (7)**
15:3;24:17;25:22;
31:1,4,5;52:17
**shareholder-rights (1)**
30:2
**shareholders (1)**
57:10
**shares (3)**
55:10,16;56:4
**sharing (1)**
42:5
**shed (1)**
43:14
**sheet (6)**
26:17,18,19,21;
29:23;32:9
**shield (1)**
52:4
**short (2)**
26:6;37:2
**shortchange (1)**
48:13
**show (1)**
18:6
**shows (1)**
33:23
**sic (2)**
18:8;19:14;22:21;
28:22;29:17;65:6
**side (2)**
22:23;36:22
**sides (1)**
32:25
**sign (3)**
13:24;16:22;43:19
**signatories (1)**
58:5

**signed (5)**
26:7;40:18;53:4,6;
58:9
**silly (1)**
52:6
**simple (2)**
10:23;16:17
**Simply (12)**
7:16;14:11;16:6;
22:12,21;24:23;37:10;
49:19;58:11;61:11;
63:12;65:11
**SINGLETON (10)**
57:23,24,25;58:1;
59:21,22;60:7,8,17;
62:22
**sink (1)**
52:5
**sit (2)**
32:7;54:2
**situation (2)**
20:24;54:20
**six (3)**
18:25;21:25;30:18
**sixty (3)**
37:18,23;62:1
**skewed (1)**
37:9
**skirt (1)**
48:9
**smallest (1)**
46:25
**smoke-and-ash (1)**
22:19
**sold (1)**
44:9
**solicit (1)**
60:4
**solicitation (5)**
35:25;36:17;37:1;
59:5;62:20
**solicited (2)**
44:24;53:21
**solution (1)**
29:13
**somebody (1)**
20:16
**somehow (1)**
58:9
**Someone (7)**
8:18,19;13:3,3;
14:12;18:7;20:19
**something's (1)**
32:20
**sometimes (1)**
41:19
**sorry (12)**
4:10;10:13;12:1,5;
15:7,15,17;19:13;
20:16;55:12;59:21;
63:17
**sought (1)**
38:1

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 77
of 80

**speak (11)**
5:16;11:18;13:3,17;
19:19;23:15;43:4,6;
44:4,5;64:22
**SPEAKER (3)**
63:15,17,23
**speaking (4)**
27:4;45:4,5;58:14
**specific (1)**
53:19
**specifically (1)**
32:22
**specifics (1)**
43:18
**spectrum (2)**
22:23;46:20
**spoke (1)**
57:22
**stage (1)**
8:25
**stamp (1)**
39:13
**stand (6)**
21:4,22;27:24;35:1;
39:17;63:11
**standing (2)**
24:22;28:22
**start (2)**
31:25;51:21
**started (2)**
32:1;42:24
**starting (1)**
10:18
**state (3)**
14:9;37:17;48:25
**stated (1)**
7:16
**statement (23)**
15:22,25;21:19;
23:22;24:2,16,18;33:3,
25;36:8,12;40:24;
52:19,21,24;53:9,10,
10,18;56:6;57:15;60:4;
62:21
**statements (4)**
13:21;45:14;57:19;
59:2
**states (3)**
7:9;18:16;26:15
**stating (1)**
49:8
**status (2)**
5:11,16
**statute (1)**
12:18
**stay (2)**
17:8;38:1
**step-by-step (1)**
15:24
**Stephen (1)**
6:8
**stepped (1)**
41:19

**stick (1)**
36:20
**still (9)**
15:8;16:2;24:7,12;
27:15;32:4;42:17;
59:24;62:12
**stock (36)**
18:17,24,25;21:15,
18;22:11;23:3,4;25:15;
28:9,19;29:10;30:3;
32:3;34:22;48:4,7;
52:12;53:7,13,13;54:2,
8,12,21;55:8,8,21;61:2,
5,15,17,20,23;62:10,10
**stocks (1)**
28:4
**stop (2)**
27:18;38:19
**stopped (1)**
10:18
**strategy (2)**
41:19;43:17
**Strauss (1)**
14:16
**street (1)**
28:16
**strengthen (1)**
7:2
**stretch (1)**
46:18
**strike (4)**
38:1,8,25;39:2
**structure (2)**
30:16;32:4
**subbing (1)**
4:17
**subgroups (1)**
19:7
**subject (4)**
8:12;12:9,21;23:22
**submitted (8)**
8:14;9:1;13:15;
36:25;44:7;47:7;62:20;
63:3
**subrogation (5)**
14:8,9;62:2,3,4
**subscribe (2)**
18:18;21:16
**substance (2)**
26:24;30:1
**substantial (3)**
7:13;22:20;62:6
**substantially (1)**
55:24
**substitute (1)**
42:16
**successful (4)**
6:14;8:24,25;12:16
**sufficient (1)**
47:11
**suggest (1)**
47:17
**suggestion (1)**

58:8
**suggests (1)**
56:25
**summarize (1)**
10:23
**summarized (1)**
15:25
**summary (1)**
53:11
**supplement (2)**
53:9,10
**supplemental (15)**
22:2;23:24;24:4;
32:18;33:6,22,24;
34:25;38:12,17;49:10,
14,15;50:21;64:9
**supplemental's (1)**
15:13
**support (15)**
6:20,23;7:3,13;
23:16;28:13,18,25;
33:4,5;39:6,7,24;43:3;
58:17
**supported (2)**
24:3;34:13
**supporting (3)**
28:7,17;39:12
**supportive (1)**
14:21
**supposed (2)**
18:17;60:3
**supposedly (1)**
28:22
**Sure (16)**
6:5;10:20,22;37:3;
42:4;45:17;46:4;47:10;
48:11;49:1;57:12;
58:17,19;59:2;62:16;
65:1
**switch (1)**
25:17

## T

**talk (4)**
30:22;36:18;42:12;
58:23
**talking (5)**
5:7;20:24;27:18;
42:17;53:16
**talks (1)**
27:17
**TCC (57)**
5:13,19;6:17;10:19;
11:19;12:8,20;13:5,7,8,
14;16:17;17:19,25;
18:5;19:4;21:3;22:6,
24;23:11,13,16;24:1,3,
21,22;25:23;26:21;
29:24;31:3;33:4;34:11;
36:5,11;40:9,10,13;
41:2,11,13,15;42:4,10,
15,19,21,23;49:1,8,21;

58:24;59:16;61:8;
62:18;63:10;64:18,23
**TCC's (4)**
11:2;17:9;39:12;
57:21
**technical (3)**
4:8;20:12;63:25
**telephone (1)**
52:24
**telling (3)**
32:15;50:18;51:24
**tenable (1)**
27:3
**term (6)**
26:17,18,19,21;
29:23;32:9
**terminate (3)**
11:13;12:20;24:23
**termination (2)**
13:9;56:22
**terms (4)**
13:10;33:8,10;61:1
**Thanks (1)**
20:5
**theory (1)**
11:20
**therefore (1)**
50:2
**there're (2)**
26:9;38:2
**third (4)**
18:21;21:21;29:14;
34:16
**thirteen (1)**
55:19
**thirty (2)**
28:4;34:21
**though (5)**
5:21;24:8;25:3,5;
48:12
**thought (2)**
4:11;58:2
**thoughts (2)**
37:16;48:4
**three (18)**
18:3,23;19:6;21:2,
23;22:4,24;23:12,18;
24:9,13;34:12;35:2,18;
45:5,20;50:18;56:9
**Thursday (1)**
32:14
**thus (1)**
47:14
**timeframe (1)**
49:11
**timely (1)**
6:14
**times (4)**
6:11;43:7;56:9;
61:19
**timing (2)**
52:13;61:11
**title (1)**

16:5
**today (18)**
5:3;6:12,20;7:7,24;
9:3,4;24:5;26:9;29:9;
33:1;51:11,13;54:2,12;
55:13,14;65:15
**today's (2)**
4:20;54:20
**toes (1)**
41:19
**together (4)**
41:17;43:10;52:16;
61:5
**told (10)**
23:21;25:13;30:15;
33:2;34:7,19;35:1,18;
42:25;58:14
**tolerating (1)**
63:2
**tolled (1)**
33:10
**Tom (1)**
39:9
**took (3)**
23:1;61:24;62:3
**tort (3)**
25:23,23;54:6
**tort- (1)**
11:11
**tort-claimants (3)**
8:8;34:3;56:16
**Tosdal (5)**
30:10;39:9,9,10,11
**totally (1)**
29:1;43:1;53:2,2
**toward (1)**
57:12
**towards (1)**
16:3
**track (5)**
6:13;7:11;15:8,10;
38:1
**trade (1)**
40:14
**trading (2)**
54:5;55:22
**traditional (1)**
48:6
**transcript (1)**
27:5
**transmitted (1)**
4:22
**traveling (1)**
31:24
**tried (1)**
38:8
**trip (1)**
31:25
**Trotter (1)**
5:9
**Trotter-Yanni (1)**
5:20
**troubled (1)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(11) speak - troubled

Case: 19-30088   Doc# 6715   Filed: 04/09/20   Entered: 04/09/20 09:02:31   Page 78
of 80

6:11
**true (15)**
  21:3,5;24:5;25:5,8,
  11;26:3;29:9,10,17;
  33:21;34:23;41:8,16;
  58:10
**trust (2)**
  29:20;43:22
**trustee (6)**
  14:3;18:24;21:24;
  30:2,6;55:15
**truth (4)**
  32:16;33:2;34:7,9
**truthful (1)**
  60:22
**truthfully (1)**
  60:21
**try (4)**
  20:21;21:4;32:23;
  51:21
**trying (19)**
  10:21;19:19;23:17,
  20;25:8,9;29:5,12;
  31:7;34:24;40:13,15;
  41:17;43:15;45:6,15;
  46:7;50:19;61:10
**TUESDAY (1)**
  4:1
**turn (1)**
  17:9
**twelve (8)**
  25:24;27:7,10,13,15;
  29:3;34:17;54:4
**twenty (2)**
  23:18;34:21
**twenty-eight (1)**
  29:13
**two (15)**
  11:6;14:20;22:15;
  24:25;25:18;26:9;
  35:16;38:3,16;48:23;
  54:5,21;57:21;58:7;
  63:5
**two-way (1)**
  28:16
**types (1)**
  22:4
**typical (2)**
  21:19;34:3
**typically (1)**
  55:24

**U**

**ultimately (2)**
  4:21;12:15
**unable (1)**
  19:20
**under (15)**
  7:5;12:21;13:9;15:2,
  19;17:24;21:11,14;
  23:25;29:7;33:20;
  35:17;37:6;54:9,11

**undertake (1)**
  65:7
**underwriters (3)**
  60:25;61:4,8
**underwriters' (1)**
  29:21
**unfortunately (1)**
  50:25
**UNIDENTIFIED (3)**
  63:15,17,23
**unless (3)**
  11:3;14:12;16:23
**unlikely (4)**
  7:10;8:3,11;14:23
**unrepresented (3)**
  42:3,7,22
**up (32)**
  5:12;10:17;18:6;
  19:14;20:15,16,20,23;
  21:1,4,22;23:15;27:9;
  30:6;31:7,8;35:1;38:3,
  11;39:2;40:14,14;
  44:11,15;51:20;55:23,
  24,25;57:2;61:5;62:2,
  11
**update (3)**
  40:9;22;41:13
**upload (1)**
  16:14
**upon (7)**
  13:21;27:17;41:6;
  48:4,8;54:19;61:18
**use (1)**
  51:2
**utility (4)**
  7:2;28:4;48:6;55:24
**utility's (1)**
  7:3

**V**

**Valley (1)**
  14:10
**valuation (1)**
  34:18
**value (27)**
  21:15;22:11;23:4;
  24:5;25:18;27:22;28:4,
  8,19;32:3,6;33:16;
  34:22;52:12;53:7,13;
  54:8;55:9,9,16,18,20,
  20,21,22;56:7;61:15
**versus (1)**
  42:5
**victimized (1)**
  48:13
**victims (63)**
  13:10;18:2,6,14,21;
  19:4,6,8,11;21:5,21;
  22:4,10,20,25;23:2,10,
  10;24:7;25:3,24;27:2;
  28:21;29:11,20;30:3,6;
  33:2,22;34:4,7,20;

35:19,22;39:16,18;
40:7,12,18,25;41:6,9,
18;42:7,19,22,24;43:8,
15;44:1,9,11,18;45:5,7;
46:20;47:20;48:8,13;
49:2,3,13;53:11
**victims' (1)**
  41:14
**video (2)**
  4:12,14
**view (12)**
  9:2;16:3,7;22:7,8,17;
  23:25;26:25;33:15;
  34:13;39:4;59:6
**views (3)**
  34:11;60:5;63:11
**violate (1)**
  35:25
**virus (2)**
  38:7;43:9
**vital (1)**
  6:22
**volatile (1)**
  62:11
**vote (40)**
  19:7,10;22:13,19,24;
  23:7,17;25:4;36:18;
  37:3,10;38:23;41:7;
  43:17;44:11,11,12,13;
  45:1,7,15;46:7,21;
  47:16,20;49:13;50:2,3,
  5,11,12;51:2,24;57:2;
  59:14;60:12;62:14,15;
  63:12,12
**voted (8)**
  18:22,23;19:10;
  21:22,23;33:14;38:23;
  41:10
**votes (7)**
  36:25;37:2,4,9;
  38:20;47:13;57:2
**voting (17)**
  22:5,9;23:13;33:15;
  37:6,11,15;38:15,19;
  39:3;40:25;41:8,12;
  42:25;43:23,24;50:15

**W**

**Wagner (1)**
  31:6
**wait (2)**
  5:1;60:15
**waiving (1)**
  12:22
**wants (8)**
  22:19;39:3,5,24;
  52:6;53:1;57:6;59:13
**way (20)**
  31:8;32:5;39:17;
  41:16,20;44:3,12,14;
  47:12,21;49:7;52:15,
  23;54:9;61:2,4;62:9;

63:10;64:20;65:3
**website (2)**
  34:2;42:20
**week (6)**
  4:13;5:10;18:16;
  30:17;33:17;41:9
**weeks (3)**
  18:23;21:23;24:9
**week's (1)**
  5:20
**weigh (1)**
  61:1
**weighed (1)**
  15:12
**Weil (1)**
  6:8
**welcome (1)**
  6:2
**well-taken (1)**
  58:3
**weren't (2)**
  32:4;33:17
**what's (12)**
  20:22;21:17,20;23:4,
  11;24:5,6;47:24;48:18;
  51:20;61:15;63:13
**Whereas (2)**
  26:9,14
**Whereupon (1)**
  65:18
**whole (1)**
  51:23
**wildfire (7)**
  7:19;21:25;40:7,12;
  41:18;42:24;43:9
**willing (3)**
  11:1;62:8;65:9
**window (3)**
  37:2;38:16,18
**wish (9)**
  6:11;13:2,17;15:6;
  39:20;43:2;47:6;57:20;
  62:25
**wishes (4)**
  5:14;11:18;14:14;
  64:19
**withdrawing (1)**
  50:4
**within (4)**
  18:9;21:24;49:10;
  63:4
**without (4)**
  18:10;49:16;59:23;
  64:19
**word (5)**
  21:4;31:5,18;52:10,
  10
**words (8)**
  6:25;26:2,4;29:17;
  52:11;53:19;54:19;
  60:14
**work (4)**
  17:5;43:18;54:22;

55:1
**worked (2)**
  60:23;62:18
**working (4)**
  4:13;24:7,12;25:12;
  32:25;61:10
**works (3)**
  27:9;31:7;61:4
**worried (1)**
  52:1
**worse (1)**
  37:11
**worth (7)**
  18:17,18;25:16;
  29:11;61:17,24;62:12
**writing (3)**
  52:1;63:4,5
**writings (1)**
  15:24
**wrong (2)**
  56:20,24
**wrote (1)**
  34:1

**Y**

**Yanni (1)**
  5:10
**Yanni-Trotter (1)**
  5:17
**year (6)**
  18:4;19:1;21:8;
  22:15;33:18;35:1
**year-and-a-half (1)**
  42:9
**years (2)**
  20:20;38:6
**yesterday (2)**
  6:17;8:7

**1**

**1 (6)**
  26:7;36:18;39:2;
  44:9;49:20,22
**1.6 (1)**
  29:19
**101 (2)**
  27:23,23
**1054 (3)**
  6:15;7:18;37:20
**1054-compliant (1)**
  6:21
**11 (2)**
  6:14;55:25
**11:32 (1)**
  65:18
**1121 (2)**
  11:15;12:24
**11th (1)**
  44:23
**12 (3)**
  26:11;28:7,14

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 79
of 80

**12,000 (3)**
  42:2,7,13
**13.5 (4)**
  21:10,10;26:19;
  44:13
**14 (1)**
  26:11
**14.9 (1)**
  61:18
**14th (4)**
  4:14;5:11,21;63:25
**19.5 (1)**
  62:5
**1918 (1)**
  38:6
**1st (1)**
  37:1

**2**

**2 (1)**
  26:8
**20 (2)**
  30:18;37:20
**20.9 (1)**
  54:13
**2019 (2)**
  26:7;28:14
**2020 (2)**
  4:1;13:9
**20th (1)**
  15:23
**24 (1)**
  49:22
**24th (1)**
  49:25
**25 (10)**
  38:11,14;39:3;49:9,
  10,15,20,23;50:14,17
**25th (2)**
  32:13;51:14
**27 (1)**
  23:20
**29 (5)**
  24:20;25:9;27:4,6,13
**29th (5)**
  11:3;12:25;13:9;
  56:21,23
**2j (2)**
  28:11,13

**3**

**3.7 (6)**
  26:1,12;27:11,20;
  28:7,15
**30 (3)**
  37:20;38:4;39:1
**30th (5)**
  6:15;7:14;14:23;
  37:7;48:12
**31 (2)**
  18:8;24:19

**352 (1)**
  64:9

**4**

**4 (2)**
  15:8;26:10
**4.75 (3)**
  18:18;21:15;29:11
**48 (1)**
  26:19

**5**

**5 (1)**
  28:12
**510 (1)**
  9:20
**52 (1)**
  26:8
**592 (1)**
  64:9

**6**

**6 (2)**
  26:7;28:11
**6,500 (1)**
  40:7
**6.75 (8)**
  18:17;21:15;25:20;
  29:10;32:16;61:16,20;
  62:12
**6.75-billion-dollar (1)**
  25:18
**6636 (1)**
  15:9

**7**

**7 (1)**
  4:1
**7,000 (1)**
  58:6
**78,000 (1)**
  42:2
**7th (1)**
  51:13

**8**

**8 (4)**
  26:20;29:23;30:25;
  32:9
**84 (1)**
  27:6
**85 (1)**
  27:6

**9**

**9 (3)**
  23:20;27:19;32:1

Case: 19-30088    Doc# 6715    Filed: 04/09/20    Entered: 04/09/20 09:02:31    Page 80
of 80