| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP**<br>Stephen Karotkin (*pro hac vice*)<br>  (stephen.karotkin@weil.com)<br>Jessica Liou (*pro hac vice*)<br>  (jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>  (matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel:    (212) 310 8000<br>Fax:   (212) 310 8007<br><br>**KELLER BENVENUTTI KIM LLP**<br>Tobias S. Keller (SBN 151445)<br>  (tkeller@kbkllp.com)<br>Jane Kim (SBN 298192)<br>  (jkim@kbkllp.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel:    (415) 496-6723<br>Fax:   (415) 636-9251<br><br>*Attorneys for Debtors and Debtors in Possession* | **JONES DAY**<br>Bruce S. Bennett (SBN 105430)<br>  (bbennett@jonesday.com)<br>Joshua M. Mester (SBN 194783)<br>  (jmester@jonesday.com)<br>James O. Johnston (SBN 167330)<br>  (jjohnston@jonesday.com)<br>555 South Flower Street<br>Fiftieth Floor<br>Los Angeles, CA 90071-2300<br>Tel:    (213) 489-3939<br>Fax:   (213) 243-2539<br><br>*Attorneys for the Shareholder Proponents* |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>  - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT RESPONSE TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' AMENDED LIMITED OBJECTION TO THE BUTTE SETTLEMENT**<br><br>Date: April 14, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Telephonic Hearing<br><br>Re: Docket Nos. 6418 and 6713 |

PG&E Corporation ("PG&E") and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, and certain funds and accounts managed or advised by Abrams Capital Management, LP, and certain funds and accounts managed or advised by Knighthead Capital Management, LLC (collectively, the "Shareholder Proponents"), each as Plan Proponents and parties to the Tort Claimants RSA, respond to the *Amended Limited Objection And Reservation Of Rights* [Docket No. 6713] (the "Objection") filed by the Official Committee of Tort Claimants (the "TCC") with respect to the *Motion Of Debtors Pursuant To 11 U.S.C. §§ 105 (a) and 363(b) And Fed. R. Bankr. P. Rule 9019 For Entry Of An Order Approving (I) Agreement And Settlement With People Of The State Of California And (II) Granting Related Relief* [Docket No. 6418] (the "Motion").[1]

## BACKGROUND

The Motion establishes that the Butte County Agreement will "resolve the criminal investigation in a manner that will bring certainty and closure and, at the same time, not jeopardize confirmation and implementation of the[] Plan that will expedite distributions of the approximate $13.5 billion of value to be made available to compensate fire victims." Motion at 4. There is universal consensus on this point. Not a single stakeholder has asserted otherwise.

The Butte County Agreement provides, among other things, for PG&E to pay fines, penalties and assessments of approximately $4 million. Motion at 5-6. As demonstrated below, those are unequivocally "Fire Victim Claims" payable from the Fire Victim Trust under the plain terms of the Plan and the Tort Claimants RSA to which the TCC is a signatory. Nevertheless, in order to ensure that the Fire Victim Trust is not reduced by those relatively *de minimis* sums, the Debtors have arranged for the amount of fines, penalties and assessments to be funded to the Fire Victim Trust with interest earned on the distribution to be transferred to the Subrogation Wildfire Trust pursuant to the Plan. As a consequence, **the amounts payable under the Butte County Agreement will not deplete the Fire Victim Trust or impact Fire Victim Claims at all**.

---

[1] Capitalized terms not defined here have the meanings given in the Motion and the *Debtors' And Shareholder Proponents' Joint Chapter 11 Plan Of Reorganization Dated March 16, 2020* [Docket No. 6320] (the "Plan").

Proving that no good deed goes unpunished, the TCC – whose constituency has the most to gain from resolution of the Butte County criminal proceedings and the most to lose from an ongoing prosecution that would endanger the Debtors' emergence from chapter 11 within the time required by AB 1054 – has lodged a disingenuous "limited objection" to the Motion. The TCC bizarrely claims that the Debtors' arrangement to have the Butte County fines, penalties and assessments funded in a manner that does not diminish the Fire Victim Trust "is an intentional move to receive an improper advisory opinion from the Court that the definition of 'Fire Claim' in the TCC RSA, and the definition of 'Fire Victim Claims' in the Plan, includes criminal fines and penalties." Objection at 2. The Plan Proponents are neither that clever nor that sinister. As shown below, they have arranged a way for a claim clearly and unequivocally payable from the Fire Victim Trust, as expressly agreed by the TCC, to be funded from another source. Nothing more, nothing less.

The TCC's Objection is yet one more blatant, misguided and, unfortunately, no longer astonishing effort to avoid the clear terms of the Court-approved settlement agreement the TCC negotiated and executed. This chronic behavior at one point was curious. Now, however, it has risen to an absurd and dangerous level, as the TCC is squandering estate assets to the detriment and prejudice of all stakeholders who must finance and bear the risk of this conduct. Enough is enough.

**RESPONSE**

The TCC's remarkable pleading is wrong for two reasons. First, the Debtors are not seeking any "advisory opinion." Second, criminal fines and penalties clearly and unambiguously *are* "Fire Victim Claims" payable from the Fire Victim Trust under the Plan and the Tort Claimants RSA. The TCC's convoluted argument to the contrary once again conflicts with the plain language of the Tort Claimants RSA it voluntarily executed and attempts to rewrite the history of these Chapter 11 Cases. The TCC's Objection should be seen for what it is – yet another baseless effort to have the Court relieve the TCC from its persistent disregard of binding contractual commitments under the Tort Claimants RSA that were approved by the Court and remain in full force and effect.

1.     The Motion does not request an "advisory opinion." The proposed Order approving the Motion provides for the Court to authorize the Debtors "to enter into and perform under the Butte County Agreement." It says nothing about the source of payment for the fines, penalties and assessments provided for in the Butte County Agreement, and it does not provide any interpretation of terms of the Plan or the Tort Claimants RSA.

The TCC remarkably claims that "PG&E's solution [of using interest on the distribution to be made to the Subrogation Wildfire Trust] is an artifice used only to establish a precedent that criminal fines may be paid from the Fire Victim Trust." Objection at 3. There was and is no such intention and, of course, no evidence of the same. As demonstrated below, under the express terms of the Tort Claimants RSA and the Plan that embodies it, the $4 million payable under the Butte County Agreement is a Fire Victim Claim to be satisfied by the Fire Victim Trust. Nevertheless, to avoid this result and benefit all of the holders of Fire Victim Claims, the Debtors arranged to have an additional $4 million funded to the Fire Victim Trust from the interest earned on the distribution to be made to the Subrogation Wildfire Trust.

Additionally, as the TCC well knows, the Debtors would jeopardize critical Plan financing commitments if they simply paid the $4 million themselves. Those commitments are subject to termination if the Debtors' aggregate liability with respect to Fire Claims exceeds $25.5 billion, which would occur if the Debtors had agreed to fund the $4 million directly. Termination of the financing commitments could jeopardize the Plan, delay payments to Fire Claimants and other stakeholders, and imperil the June 30, 2020 AB 1054 deadline.

As a consequence, the Debtors negotiated the arrangement by which the fines, penalties and assessments in the Butte County Agreement would be funded with interest earned on distributions to be made in respect of Subrogation Wildfire Claims. This is no "artifice." It is an invaluable way to preserve the Plan financing, maintain the corpus of the $13.5 billion funding for the Fire Victim Trust for the benefit of Fire Victim Claims, and keep confirmation on schedule.

**2.** Further, the TCC is wrong that criminal fines, penalties and assessments are not "Fire Victim Claims" within the meaning of the Plan and the Tort Claimants RSA that it negotiated.

A "*Fire Victim Claim*" under the Plan is "any Fire Claim that is not a Public Entities Wildfire Claim, Subrogation Wildfire Claim, or a Subrogation Butte Fire Claim." Plan § 1.79. The Tort Claimants RSA provides a substantively identical definition. Tort Claimants RSA, Ex. A at 3.

The Plan and Tort Claimants RSA in turn define "*Fire Claim*" as follows:

> **[A]ny Claim against the Debtors in any way arising out of the Fires, including, but not limited to**, any Claim resulting from the Fires for (a) general and/or specific damages, including any Claim for personal injury, wrongful death, emotional distress and similar claims, pavement fatigue, damage to culverts, ecosystem service losses, municipal budget adjustments/reallocation, lost revenue and tax impacts, local share of reimbursed fire clean-up costs, future estimated infrastructure costs, water service losses, lost landfill capacity, costs related to unmet housing (e.g., housing market impact due to the Fires and adjustments for increased homeless population), and/or hazard mitigation costs (including, watershed restoration and hazardous tree removal expenses); (b) damages for repair, depreciation and/or replacement of damaged, destroyed, and/or lost personal and/or real property; (c) damages for loss of the use, benefit, goodwill, and enjoyment of real and/or personal property; (d) damages for loss of wages, earning capacity and/or business profits and/or any related displacement expenses; (e) economic losses; (f) damages for wrongful injuries to timber, trees, or underwood under California Civil Code § 3346; (g) damages for injuries to trees under California Code of Civil Procedure § 733; (h) punitive and exemplary damages under California Civil Code §§ 733 and 3294, California Public Utilities Code § 2106, or otherwise, (i) restitution; (j) **fines or penalties**; (k) any and all costs of suit, including all attorneys' fees and expenses, expert fees, and related costs, including all attorneys and other fees under any theory of inverse condemnation; (l) for prejudgment and/or postpetition interest; (m) other litigation costs stemming from the Fires; and (n) declaratory and/or injunctive relief. For avoidance of doubt and without prejudice to the Debtors' right to object to any such Claim, "Fire Claim" shall not include any (x) Claim for substantial contribution under section 503(b) of the Bankruptcy Code, (y) Subordinated Debt Claim, HoldCo Common Interest or HoldCo Rescission or Damage Claim, or (z) Ghost Ship Fire Claim. The Fire Claims shall not include claims arising from any fire other than the Fires (including, without limitation, the Kincade Fire or any postpetition fire) or any Administrative Expense Claims.

Plan § 1.78 (emphasis added); *see* Tort Claimants RSA, Ex. A at 2-3. The Plan and Tort Claimants RSA define "*Claim*" to have "the meaning set forth in section 101(5) of the Bankruptcy Code." Plan § 1.26.[2]

Under the plain language of these documents, "fines and penalties" "in any way arising out of the Fires" are "Fire Claims" if the fines and penalties constitute "claims" within the meaning of section 101(5) of the Bankruptcy Code. Section 101(5) provides that a "claim" is any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). "Congress intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); 2 COLLIER ON BANKRUPTCY ¶ 101.05 (16th ed. 2020) ("By fashioning a single definition of "claim" in the Code, Congress intended to adopt the broadest available definition of that term. The Supreme Court has repeatedly reiterated this principle and has declined all invitations to exclude rights to payment from the definition of claim.") (footnotes omitted).

Under that broad definition, "criminal fines and restitution orders are 'debts' for purposes of the Bankruptcy Code." *In re Hardenberg*, 42 F.3d 986, 992 (6th Cir. 1994); *e.g.*, *In re Hubbard*, 161 B.R. 173, 176 (Bankr. N.D. Tex. 1993) ("The United States' right to payment includes not only the $10,000 fine in the criminal judgment, but also the statutory interest on that judgment."); *In re Gilliam*, 67 B.R. 83, 86 ("a criminal fine and court costs constitute debts") (Bankr. M.D. Tenn. 1986). Because a "debt" is defined to mean "liability on a claim," 11 U.S.C. § 101(12), criminal fines, penalties and assessments are "claims" within the meaning of the Bankruptcy Code.[3] The TCC's tortuous effort to avoid this well-settled authority is nonsensical.

---

[2] The Tort Claimants RSA (Ex. A, at 1) incorporates the definition of the term "Claim" from the joint plan of reorganization filed by the Debtors on November 4, 2019, which has the same definition as that provided in the current Plan. [Docket No. 4563 at § 1.23]

[3] As the Sixth Circuit observed, "[i]f Congress had believed that criminal fines were not 'debts' giving rise to 'claims,' it would have had no reason to except such obligations from discharge in section 523(a)(7)." *Hardenberg*, 42 F.3d at 991; *see In re Brown*, 39 B.R. 820, 822 (Bankr. M.D. Tenn. 1984) ("If the Bankruptcy Code said that only orders to pay money by civil courts are debts for bankruptcy purposes, then credence could be given to the defendant's argument that a criminal court restitution order does not embody a 'debt' dischargeable in bankruptcy. However, nothing

Case: 19-30088    Doc# 6732    Filed: 04/10/20    Entered: 04/10/20 14:08:51    Page 6 of 9

The fines, penalties, and assessments payable under the Butte County Agreement therefore would qualify even if the Plan and Tort Claimants RSA defined "Fire Claim" simply as "any Claim against the Debtors in any way arising out of the Fires." The Plan and Tort Claimants RSA, however, are even more explicit, as they specifically list "fines or penalties" among the types of obligations that are included, without limitation, in the definition of "Fire Claim." Plan § 1.78; Tort Claimants RSA, Ex. A at 2-3. This makes the point crystal clear.

3. In response, the TCC conspicuously, but not surprisingly, does not quote the applicable contract and Plan language to which it agreed or confront the governing statute and caselaw. The TCC instead argues that the definition of "Fire Claim" "includes only civil restitution, fines and penalties" for two reasons. Objection at 3. First, with typically irrelevant hyperbole, the TCC claims that it "is not aware of any situation in which a convicted criminal has been allowed to force their victims to pay the criminal penalties imposed by the Court for victimizing them." *Id.* at 4. This is rhetorical foolishness. The Debtors are satisfying Fire Victim Claims with consideration under the Plan of approximately $13.5 billion. Under the Tort Claimants RSA negotiated by the TCC, that sum is to satisfy *all* Fire Victim Claims, whether they be civil or criminal in nature. If the TCC had wanted to limit agreed-upon Plan distributions to a subset of Fire Victim Claims, the negotiated resolution would have differed from that embodied in the Tort Claimants RSA and the Plan. But that, once again, is not the agreement that the TCC negotiated and signed.

Next, the TCC says that "[t]he definition of 'Fire Claim' in the TCC RSA includes various types of civil claims, both under statute and common law, and, with the exception of 'punitive and exemplary damages' all are of a compensatory nature," whereas "[c]riminal fines are of a wholly different character." *Id.* The TCC argues that, "in the context of a definition that otherwise refers entirely to civil, compensatory awards, the term 'fines or penalties' can[not] be properly construed as applying to criminal sanctions." *Id.* at 5.

---

in the Bankruptcy Code suggests that only civil courts enter orders to pay money that are subject to discharge in bankruptcy.").

This is both untrue and beside the point. As the TCC concedes, the Plan expressly includes "fines or penalties" as examples of a "Fire Claim." Fine and penalties are not "compensatory." They are penal. *Penalty*, Black's Law Dictionary (11th ed. 2019) ("Punishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong (**as distinguished from compensation for the injured party's loss**).") (emphasis added). Similarly, "declaratory and/or injunctive relief" – also among the list of examples in the definition of "Fire Claim" – is not compensatory.

In any event, the list of examples in the definition of "Fire Claim" is representative and nonexclusive, preceded by "including, but not limited to." The Plan specifically states, as a "rule of construction," that "the words 'include' and 'including,' and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words 'without limitation.'" Plan at 36. The Plan also states that "the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan." *Id.* Section 102(3) of the Bankruptcy Code provides that "'includes' and 'including' are not limiting." 11 U.S.C § 102(3).

The TCC's effort to invoke the rule of *ejusdem genris* thus fails on multiple grounds. *Envtl. Prot. Info. Ctr. v. Carlson*, No. 19-CV-06643-EMC, ___ F. Supp. 3d ___, 2019 WL 6525683, *4 (N.D. Cal. Dec. 4 2019) ("*ejusdem genris* has far less, if any, force when the list of examples follows the words 'including, but not limited to'").

**4.** Finally, the TCC's continuing and utter disregard for its past actions, statements, and agreements must be noted here. As the Court will recall, on October 17, 2019, the TCC and the Ad Hoc Committee of Noteholders filed their own competing plan of reorganization. [Docket No. 4257] The definition of "Fire Claim" in that plan was substantively *identical* to the definition now in the Plan. *Id.* § 1.71. The TCC's own plan – which it presumably understood and endorsed – conspicuously included "fines or penalties" as examples of "Fire Claims" to be channeled to the Fire Victim Trust and discharged. *Id.* It did not limit the definition of Fire Claims to civil fines and penalties or otherwise exempt claims arising from criminal proceedings.

When settlement discussions between the TCC and the Shareholder Proponents began, the TCC insisted that the Shareholder Proponents match each and every term of the TCC's agreements with the Ad Hoc Noteholder Committee, including the definition of Fire Claims and the scope of the class of claims to be channeled to the Fire Victim Trust. In the hard fought negotiations that followed, the Debtors and Shareholders Proponents agreed to the TCC's demand and adopted the TCC's formulation and definition of the claims to be satisfied by the Fire Victim Trust.

The TCC bound itself to that formulation and definition in the Tort Claimants RSA. The TCC's contrary arguments in the Objection are a breach of the Tort Claimants RSA and yet another effort to recut the settlement. The Court should not countenance it.

Dated: April 10, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

By: */s/ Stephen Karotkin*
    Stephen Karotkin

*Attorneys for the Debtors and Debtors in Possession*

**JONES DAY**

By: */s/ James O. Johnston*
    James O. Johnston

*Attorneys for the Shareholder Proponents*