# EXHIBIT A

Robert A. Julian (SBN 88469)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email: rjulian@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

Elizabeth A. Green (*pro hac vice*)
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4036
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                     **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF PHILIP R. STRUNK IN SUPPORT OF SUPPLEMENT TO THE APPLICATIONS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002 TO RETAIN AND EMPLOY HON. JOHN K. TROTTER (RET.) AS TRUSTEE AND CATHY YANNI AS ADMINISTRATOR *NUNC PRO TUNC* TO JANUARY 13, 2020 THROUGH THE EFFECTIVE DATE OF THE RESOLUTION TRUST AGREEMENT**<br>(Relates to Dkt. Nos. 5723, 5724, 5726, 5727, 5967 & 5976)<br><br>Date: April 14, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **Telephonic Appearances Only**<br>Objection Deadline: Passed |

PHILIP R. STRUNK declares as follows under penalty of perjury:

1. I am a Partner at BrownGreer PLC ("**BrownGreer**" or "**Claims Processor**"). I have experience as a lawyer handling class action settlements and multiple claim resolution programs; as a claims processor designing and implementing class action settlements, notice plans, and notices to claimants and counsel; and as a project team leader working in support of courts, administrators, trustees, and special masters involved in complex claim settlement facilities. I have personal knowledge of the facts stated herein except as to matters where I indicate otherwise, and as to those matters, I believe them to be true.

2. I make this declaration in support of the supplement (the "**Supplement**") to the (1) *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Hon. John K. Trotter (Ret.) as Trustee Nunc Pro Tunc to January 13, 2020 Through the Effective Date of the Resolution Trust Agreement* (Dkt. No. 5726), and (2) *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Cathy Yanni as Claims Administrator Nunc Pro Tunc to January 13, 2020 Through the Effective Date of the Resolution Trust Agreement* (Dkt. No. 5723).

3. BrownGreer has specialized in settlement administration since it was founded in 2002. We are experienced in the legal and administrative aspects of the design, approval, and implementation of settlement programs, as well as the operation of claims facilities to provide damages payments or other benefits for the resolution of multiple claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles. As part of our work, BrownGreer regularly handles complex and confidential case-specific information in class action or mass tort contexts (for example, federal MDLs or California JCCPs). BrownGreer is often appointed by a supervising court to perform the functions described above. BrownGreer and its principals have performed crucial administration, information management, or claim evaluation roles in more than 75 major

programs involving approximately 31 million class members and the disposition of over $33 billion in payments to qualifying claimants.

4. I have reviewed the Proposed Fire Victim Trust Agreement and the planned Claims Resolution Procedures ("**CRP**"). I understand the duties and responsibilities assigned to the Trustee, Claims Administrator, and Claims Processor[1], particularly in regard to the evaluation of claims from Fire Victims and the prompt payment to qualifying applicants. Before the Fire Victim Trust can even begin to accept claims, let alone evaluate them as to their eligibility and value, the Trustee, Claims Administrator and Claims Processor will need to take several important steps. Accordingly, Justice Trotter, Cathy Yanni and BrownGreer have been actively engaged in planning Trust operations since January of 2020. At BrownGreer, that process has required the full or partial commitment of approximately 60 different employees to date, including attorneys, project managers, software developers and communications specialists.

5. While not an exhaustive list of steps that need to be completed before determinations and compensation may be accomplished, each one of the items listed below is a general prerequisite to the commencement of the Claims Review Process:

    a. **Development of a Program Database.** The Fire Victim Trust will require a program database for electronic storage of all claims-related documents and information submitted by claimants or their counsel. The Trustee, Claims Administrator, Claims Processor and other Trust professionals will use this program database as the centralized repository for all functions related to the processing of claims submitted by approximately 80,000 Fire Victims. Because the CRP contemplate that a single claimant might file multiple types of claims for different damages and causes of action, the true number of claims requiring adjudication by Trust will be much higher. Additionally, as required by the CRP, the program database will also incorporate relevant data and information already submitted to BrownGreer, while adding the functions and capabilities necessary to execute the tasks assigned to the Trustee, Claims Administrator, and Claims Processor. It is my experience that in order to develop a database that satisfactorily achieves these functions will require a full time commitment of experienced

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Supplement.

BrownGreer programmers and will take between 90 to 150 days. The development of this database must be complete prior to receiving any claims data from the claimants.

        b.    **Development of Online Web Portal.** The CRP contemplate the submission of a claims questionnaire (the "**Claims Questionnaire**") by claimants who seek compensation from the Trust. The most efficient way for claimants and/or their attorneys to submit their claims, the Claims Questionnaire and supporting documentation, is through an online interface. The Claims Administrator and Claims Processor must plan the design of the online portal, decide on the functions it will include, and create the software packages necessary to deploy the portal. This will require the time and attention of the Claims Administrator and her professionals, as well as the software developers employed by BrownGreer, and will occur during the same 90 to 150-day period listed above.

        c.    **Design and Maintenance of Trust Website.** To communicate with attorneys and claimants who are eligible to file claims, the Trust must establish and maintain a public website. This website will provide important information about the CRP, including Court documents, frequently asked questions, and announcements of deadlines and other updates with respect to process and timing. While the Trust website would not be deployed until after the effective date of the Plan, it is necessary to begin its planning and design well in advance of that date. The creation of a public facing informational website will require the Trustee, Claims Administrator and Claims Processor to devote resources to creating helpful and accurate content to advise attorneys and claimants who will file claims, and to maintain that information over time.

        d.    **Integration of Third-Party Data Sources.** To process claims efficiently, lessen the burden on Fire Victims, generate accurate claim evaluations, and prevent fraudulent submissions, the Trustee, Claims Administrator and Claims Processor must utilize certain external data sources, which will require time and expense to incorporate into the Trust database. These external, third-party resources will include data and documents: (i) produced by insurance providers, (ii) information from county assessor databases on properties impacted by the fires, (iii) address confirmation data, and (iv) claimant identity verification resources and other tools.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The integration and careful use of these resources are a best practice in this instance, particularly given the complexity of the resolution plan and the high number of claims to be evaluated.

    e. **Curating the Subrogation Claim Files Repository.** Pursuant to the stipulation entered on April 3, 2020 BrownGreer is currently obligated to perform specific functions relating to the receipt, storage, and delivery of subrogation claim files and data to attorneys and claimants. Under the terms of the stipulation, BrownGreer is required to receive and process tens of thousands of insurance claim files, while administering an online objection and redaction process at the direction of the individual claimant attorneys. BrownGreer is under strict timelines for these tasks, which require action in 30- and 60-day time periods from the date of the entry of the order. In the past week BrownGreer has received more than 5,000 insurance claim files and we expect to receive some 20,000 more in the coming weeks. The stipulation directs BrownGreer to perform these essential functions now, even before the formal creation of the Trust, because the provision of these claim files to attorneys and claimants is an essential step in the preparation of their claims.

    f. **Design of the Claims Questionnaire.** The Claims Administrator and the Claims Processor must create a Claims Questionnaire and other form documents tailored to the different damage categories covered by the CRP, including real property, personal property, personal income loss, business loss, wrongful death and serious personal injury, emotional distress, and other damages. The Claims Questionnaire must be accessible and user-friendly, while also soliciting all information necessary for the objective evaluation of claims to the Trust. The creation of the Claims Questionnaire will require the establishment of rules for system coding in order to accurately and properly organize the data for analysis and review by the Claims Administrator and Trust professionals. To perform this function BrownGreer will need to engage attorneys, project managers and software developers in a process that will take 60 days or more in advance of processing claims.

    g. **Establishing Claim Review Protocols.** The Trustee, Claims Administrator and Claims Processor must define the requirements for claimants to qualify for a payment under each damage category. These requirements are driven by data and the budget and

Case: 19-30088 Doc# 6746-1 Filed: 04/13/20 Entered: 04/13/20 15:06:11 Page 6 of 10

5

will require careful analysis and policy decisions to define the parameters of the program. Once defined, these eligibility requirements must be clearly communicated to attorneys and claimants who will file claims. Without this information, claimants would have no way of knowing whether they might qualify for a particular claim type or how to apply.

        h.    **Identify Required Supporting Documents.**  The claims evaluation process will require the submission of evidence in order to establish the eligibility of each claim. This evidence will include insurance records, construction estimates, historical tax or revenue documents, victim testimonials, medical records and other materials.  The Trustee, the Claims Administrator and the Claims Processor must determine the documents necessary to support each claim type before the program can begin to accept claims.  Attorneys and claimants must know the proof requirements that apply to their claims in order to prepare complete and adequate submissions.

        i.    **Claimant Communications Resources.**  It is my experience that many attorneys and claimants will have questions regarding each stage of the claims process from filing to final determination.  In order to service claimants appropriately and answer their questions, the Claims Administrator and Claims Processor will have to develop and dedicate significant resources.  Among other resources, the Claims Processor will have to retain and train personnel to address the unique and specific questions related to the claims process.  Additionally, the Claims Processor will need to develop tools and guidelines to assist in the submission of claims, including frequently asked questions, online tutorials and other useful aides.  Of particular concern are the claimants who filed a proof of claim form without the aid of an attorney.  There are approximately 12,000 *pro se* claimants. These *pro se* claimants will require additional guidance to navigate the complex claim submission process.  BrownGreer will create a *pro se* team to supervise all inquiries from unrepresented claimants which will include a dedicated Project Manager.  We will also require a team of approximately 25 communications specialists to field phone calls and other inquiries from claimants and unrepresented claimants.

    6.    While the preceding items are all necessary to the opening of the CRP, there are also a number of tasks and functions that must be addressed before the Trust, once active, may

Baker & Hostetler LLP
Attorneys at Law
San Francisco

begin to process claims and issue payments. For benefits to be conferred on qualifying Fire Victims, the Trust will require:

      a.    **Fully Trained Staff of Claim Evaluators.** Before any claim can be reviewed for eligibility the Claims Processor will need to prepare its staff of claim evaluators. These individuals will be trained in the intake, review, and analysis of claims to the Trust. Claim evaluators must undergo rigorous education that is tailored to the specific damage categories contemplated by the CRP. Their competence must be tested and monitored by supervisors to ensure consistent and objective outcomes. While the number of claim evaluators necessary to process all claims will depend on several factors yet to be determined, BrownGreer estimates that it may need as many as 200 full time employees for this task at the peak of the claims resolution process.

      b.    **Development of Programmatic Claim Review Algorithms.** To support the work of claim evaluators, the Claims Processor will develop coded claim review algorithms. These algorithms will use information submitted by claimants and vetted by claim evaluators to tabulate the payment amount of each eligible claims. Such programmatic claim review systems are essential to the responsible and efficient operation of a claims facility. They require careful planning and testing to ensure precision in the important payment outcomes they generate. These functions will be performed by attorneys, project managers and programmers at BrownGreer.

      c.    **Program Budget.** Because the Fire Victims' Trust will operate from a capped fund, it is essential that the allocation of payments be carefully planned and budgeted. No payments can be made to eligible claims without first considering the implications of those payments to the corpus of the fund and those claimants whose claims will be evaluated in the future. The Trustee and the Claims Administrator have engaged Eric Kennedy, an attorney with significant experience in the allocation of benefits in settlement programs, to assist in this process. The Trustee, Claims Administrator and Mr. Kennedy must have the opportunity to plan the allocation of money to eligible claimants and subject those allocations to careful analysis and modeling. The budgeting plan is crucial to allocation and must be developed in advance of the Claims Questionnaire and the Claims Processing Procedures as it will help to inform both the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

information required of claimants and the ultimate value of the claims. Postponing this important budgeting process until the Trust is funded will cause a significant delay in the distribution of funds to the victims for whose benefit the Trust is being established.

    d. **Process for Notification of Claim Evaluation Outcomes.** The Claims Processor must develop various notice templates and communication tools to inform attorneys and claimants of the status of their claims. These program notices will require coding to determine when each notification should programmatically be issued to an attorney or claimant and how that information will be recorded in the Trust Database.

    e. **Internal Audit and Fraud Prevention.** To satisfy best practices, the Claims Processor must implement a robust internal audit program that will perform valuable cross checks of claim outcomes. As part of this process, the Claims Processor must also implement reasonable measures to prevent the submission of fraudulent claims, which unchecked would diminish the amount available to deserving claimants. These procedures will include the use of random sampling to identify potential problems and the utilization of external databases to verify information about claimant identities and the validity of supporting documentation. Considering the number of claims and the complexity of this process, it is possible that the fraud prevention functions described here will require a team of approximately 20 experienced auditors and analysts.

  7. Each of the items identified above are necessary to the planning or operation of the Trust and will require significant time and resources from the Trustee, Claims Administrator and Claims Processor. In many instances, the functions outlined here will require hiring, training, testing and other essential start up activities across a range of skill positions. The magnitude of the tasks necessary to commence claims processing will entail some 90 to 150 days of startup time. To provide the swiftest possible compensation to the Fire Victims, the Trustee, Claims Administrator and Claims Processor need months of advance preparation.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of April, 2020,
at Richmond, Virginia,

               */s/ Philip R. Strunk*
               PHILIP R. STRUNK

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO