1               UNITED STATES BANKRUPTCY COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                          -oOo-

4  In Re:                    ) Case No. 19-30088
                             ) Chapter 11
5  PG&E CORPORATION          )
                             ) San Francisco, California
6        - and -             ) Tuesday, April 14, 2020
                             ) 10:00 AM
7  PACIFIC GAS AND ELECTRIC  )
   COMPANY                   ) APPLICATION OF THE OFFICIAL
8                            ) COMMITTEE OF TORT CLAIMANTS
                  Debtors.   ) PURSUANT TO 11 U.S.C. SECTION
9  _____ ) 1103 AND FED. R. BANKR. P.
                                 2014 AND 5002 TO RETAIN AND
10                               EMPLOY CATHY YANNI AS CLAIMS
                                 ADMINISTRATOR NUNC PRO TUNC
11                               TO JANUARY 13, 2020 THROUGH
                                 THE EFFECTIVE DATE OF THE
12                               RESOLUTION TRUST AGREEMENT
                                 [5723]
13
                                 APPLICATION OF THE OFFICIAL
14                               COMMITTEE OF TORT CLAIMANTS
                                 PURSUANT TO 11 U.S.C. SECTION
15                               1103 AND FED. R. BANKR. P.
                                 2014 AND 5002 TO RETAIN AND
16                               EMPLOY HON. JOHN K. TROTTER
                                 (RET.) AS TRUSTEE NUNC PRO
17                               TUNC TO JANUARY 13, 2020
                                 THROUGH THE EFFECTIVE DATE OF
18                               THE RESOLUTION TRUST
                                 AGREEMENT [5726]
19
                                 MOTION OF DEBTORS PURSUANT TO
20                               11 U.S.C. SECTIONS 105(a) AND
                                 363(b) AND FED. R. BANKR. P.
21                               9019 FOR ENTRY OF AN ORDER
                                 APPROVING (I) AGREEMENT AND
22                               SETTLEMENT WITH PEOPLE OF THE
                                 STATE OF CALIFORNIA AND (II)
23                               GRANTING RELATED RELIEF FILED
                                 BY PG&E CORPORATION [6418]
24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          THE OFFICIAL COMMITTEE OF
                          TORT CLAIMANTS' MOTION FOR
2                         STANDING TO PROSECUTE CLAIMS
                          OF THE DEBTORS ESTATES'
3                         [5972]

4

5                    TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE DENNIS MONTALI
6                    UNITED STATES BANKRUPTCY JUDGE

7

8   APPEARANCES (ALL TELEPHONICALLY):
    For the Debtor:          STEPHEN KAROTKIN, ESQ.
9                            RICHARD W. SLACK, ESQ.
                             Weil, Gotshal & Manges LLP
10                           767 Fifth Avenue
                             New York, NY 10153
11                           (212) 310-8000

12  For Official Committee of  GREGORY A. BRAY, ESQ.
    Unsecured Creditors:       Milbank, LLP
13                             2029 Century Park East, 33rd Floor
                               Los Angeles, CA 90067
14                             (424) 386-4000

15                             ALAN J. STONE, ESQ.
                               Milbank LLP
16                             55 Hudson Yards
                               New York, NY 10001
17                             (212) 530-5000

18  For Official Committee of  ELIZABETH A. GREEN, ESQ.
    Tort Claimants:            Baker & Hostetler LLP
19                             200 S. Orange Ave. #2300
                               Orlando, FL 32801
20                             (407) 649-4000

21                             ROBERT A. JULIAN, ESQ.
                               Baker & Hostetler LLP
22                             600 Montgomery St., #3100
                               San Francisco, CA 94111
23                             (415) 659-2600

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1                              DAVID J. RICHARDSON, ESQ.
                                Baker & Hostetler LLP
 2                              11601 Wilshire Blvd., 14th Floor
                                Los Angeles, CA 90025
 3                              (310) 442-8858

 4   For SLF Fire Victim        GERALD SINGLETON, ESQ.
     Claimants:                 Singleton Law Firm
 5                              450 A St., 5th Fl.
                                San Diego, CA 92101
 6                              (619) 771-3473

 7   For AT&T Corp.:            BENJAMIN MINTZ, ESQ.
                                Arnold & Porter Kaye Scholer LLP
 8                              250 West 55th Street
                                New York, NY 10019
 9                              (212) 836-8000
     For Ad Hoc Group of        MATTHEW A. FELDMAN, ESQ.
10   Subrogation Claim Holders: Willkie Farr & Gallagher LLP
                                787 7th Ave.
11                              New York, NY 10019
                                (212) 728-8000
12
     For Public Employees       JEFFREY A. DUBBIN, ESQ.
13   Retirement Association of   Labaton Sucharow LLP
     New Mexico:                140 Broadway
14                              New York, NY 10005
                                (212) 907-0700
15
                                MICHAEL S. ETKIN, ESQ.
16                              ANDREW BEHLMANN, ESQ.
                                Lowenstein Sandler LLP
17                              One Lowenstein Drive
                                Roseland, NJ 07068
18                              (973) 597-2500

19   Also Present:             WILLIAM B. ABRAMS, Individual and
                                Tubbs Fire Victim
20

21

22

23

24

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   Court Recorders:              LORENA PARAD AND ANKEY THOMAS
                                   United States Bankruptcy Court
 2                                 450 Golden Gate Ave.
                                   San Francisco, CA 94102
 3

 4   Transcriber:                  HANA COPPERMAN
                                   eScribers, LLC
 5                                 7227 N. 16th Street
                                   Suite #207
 6                                 Phoenix, AZ 85020
                                   (973)406-2250
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript provided by transcription service.
25
```

PG&E Corp. and Pacific Gas and Electric Co.

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, APRIL 14, 2020, 10:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Calling the matter of PG&E Corporation.

5            THE COURT:  All right.  Good morning, everyone.  This

6    is Judge Montali remotely.  Welcome everyone to the court.

7    Hope you're all well, and I hope you can all hear me.  We have

8    quite a number of people on the line today, so I remind you

9    again, because of the remote connections, I'll try to identify

10   and recognize the person who I believe will be speaking next,

11   and if someone else is waiting to be called or to be heard,

12   please be patient.  I'll try to ask for any of you to speak

13   next.  I think I know who the principal players are, but I

14   won't leave anybody out.

15           Unless counsel for the debtor wishes to proceed in a

16   different manner, I thought I would start with the motions by

17   the TCC for appointment of Justice Trotter and Ms. Yanni.  Then

18   we go to the motion by the debtors for the Butte fire

19   settlement, and then finally the TCC dispute with the

20   litigation plaintiffs on their standing issues.

21           So Ms. Green, are you appearing for the TCC on the

22   first matter?

23           MS. GREEN:  Yes, sir.

24           THE COURT:  Okay.  So I see that you uploaded an

25   order.  Does that mean peace has broken out between TCC --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        MS. GREEN:  Yes.

2        THE COURT:  -- and the debtor?

3        MS. GREEN:  Your Honor, I'm actually pleased to say

4   we've done this issue.  We have uploaded orders, both for the

5   Justice Trotter and Cathy Yanni retentions, that have been

6   approved by the plan proponents, meaning the debtor and equity

7   and the reservation of rights parties -- the various parties

8   who filed reservation of rights statements -- and so that order

9   is good to go if Your Honor is happy with it.

10       THE COURT:  Well, I'm not --

11       MS. GREEN:  I can go through --

12       THE COURT:  I'm not trying to --

13       MS. GREEN:  -- what it says if you would like me to.

14       THE COURT:  Well, no.  I've read it.  No, I want to

15  cut this short.  I'm not going to deny it, but I need to get

16  some clarification.

17       MS. GREEN:  Yes, sir.

18       THE COURT:  So let's see if you can answer, and then

19  if not, Mr. Karotkin or someone from the debtor can answer.

20       So I was comparing the motion -- or excuse me, the

21  request -- that the TCC filed on March 25th.  That was doc

22  6486.  And it seems to have changed a little bit.

23       So first of all, in that motion there was a million

24  dollar funding for a financial advisor.  That appears to have

25  disappeared.  Is that correct?

PG&E Corp. and Pacific Gas and Electric Co.

1    MS. GREEN:  Your Honor, there is a budget which was

2   attached, actually, to the request for hearing and also to

3   the --

4    THE COURT:  Yes, I --

5    MS. GREEN:  -- supplement, which we filed yesterday.

6   And there is a financial advisor line item for 1,375,000

7   dollars, but that is included in the payment set forth on

8   paragraph 6 of the proposed orders.

9    THE COURT:  Well, I'm looking at the -- oh, I'm sorry.

10  There it is.  It's -- okay.  It kicks in later.  I think what

11  threw me off was -- I do see financial.  Right.  So has that

12  financial advisor been identified?

13   MS. GREEN:  Your Honor, I think that Ms. Yanni and

14  Justice Trotter have spoken to financial advisors, although I

15  don't know that they've actually been retained yet.

16   THE COURT:  And then another mystery, because there

17  was in the -- excuse me one second here.  I'll get my -- ask my

18  question more carefully.

19   The 2.5 million dollars to be paid to BrownGreer,

20  based upon the order from last September, that wasn't mentioned

21  anywhere, and now it's in the proposed order, or the proposed

22  disposition.  So can you --

23   MS. GREEN:  Yes, Your Honor.  I can address that.  So

24  there was an order related to the BrownGreer database for

25  information that BrownGreer was providing both to the debtors

PG&E Corp. and Pacific Gas and Electric Co.

1    and to the TCC related to estimation and claims amounts, and

2    that order provided that BrownGreer would get paid.

3            As part of the negotiation of this order, I believe

4    that Judge Newsome suggested that we put this provision in this

5    order just so we tied everything up in a bow and that payment

6    to BrownGreer got made.  And that's why it's in the order,

7    although it was not in the request.  I did try to reference

8    that by docket number so that everything will link up on the

9    docket, and then we'd file this.

10           THE COURT:  But that's what threw me off a bit,

11   because I went back and looked at the prior order, and the

12   prior order doesn't say anything about payment.  Now, again,

13   I'm not here to complain if there's an agreed payment, but the

14   order was very, very sparse and scant.

15           Are you representing, and Mr. Karotkin can confirm,

16   that the debtor is agreeing to pay that additional 2.5 million

17   dollars?

18           MS. GREEN:  Yes, Your Honor.  It was set forth,

19   really, in paragraph number 11 of the order, production of the

20   BrownGreer database, and there has been discussions between the

21   debtor and the TCC.  And Mr. Karotkin can speak for himself,

22   but he has agreed to that provision, yes.

23           THE COURT:  He doesn't need to.  I'll take your

24   representation, because I --

25           MS. GREEN:  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      THE COURT:  I know him well enough to say and know

2  that he will speak up if he didn't agree.  But my point is, I

3  went back and just simply didn't relate the thing.  Okay.

4      A couple of more questions.  One of the things that --

5  well, as I read it, and let's make sure I've got it right.

6  Originally, going back to last month, the debtors -- or the TCC

7  was looking for additional -- a much larger amount to come from

8  the debtor.  The debtor said no.  And now this agreed order has

9  the debtor paying 2.5 million dollars twice, one 2.5 million

10  dollar amount to BrownGreer, which is kind of on the side, and

11  another 2.5 million to I'll just say Trotter/Yanni, but meaning

12  them and their immediate organizations.

13      And then after that, all the payments that are made

14  under this broader proposal is ultimately going to be borne

15  from the 13.5-billion-dollar settlement trust.

16      I got it right?

17      MS. GREEN:  Correct.  Yes, you do.

18      THE COURT:  Okay.  Okay.  So one of the things, again,

19  not to second guess all the professionals that are working on

20  this, is, nevertheless, I'm kind of in the dark, because all I

21  get was what I got yesterday.  There is nothing that --

22      First of all, I would have liked to have had an

23  affirmative statement from either Justice Trotter or Ms. Yanni

24  to the effect that they've agreed to all this, but I'll take

25  your representation that they have.  But more importantly, I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    need a clarification of paragraph 21 of the document, the

2    supplement that you filed yesterday, that says the payments

3    terminate if the wildfire victims do not accept the plan at the

4    conclusion of the confirmation hearing.

5    Well, does that mean if the impaired class votes

6    against the plan that paragraph 21 is triggered, and this whole

7    thing explodes?  What does that mean?

8    MS. GREEN:  So if you look, actually, I think it's a

9    little clearer in the order, Your Honor, but basically the

10   first payment -- other than the 2.5 million that is due to

11   Trotter and Yanni -- of 9,767,593 is due on May the 30th, 2020.

12   And the reason for that is Mr. Karotkin made it clear that he

13   did not intend to make those payments if the wildfire victims

14   voted against the plan.

15   Also, the provision related to confirmation is if the

16   Court does not confirm the plan, obviously these payments will

17   cease to be made.

18   THE COURT:  But what if the victims vote against the

19   treatment, but the plan gets confirmed anyway?  Then what

20   happens?

21   MS. GREEN:  Then these payments would be made after

22   confirmation.  So --

23   THE COURT:  Okay.

24   MS. GREEN:  This would be basically --

25   THE COURT:  I'm going to --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MS. GREEN:  -- in between confirmation and the

2    effective date.

3         THE COURT:  Okay.  But if there's no confirmation of

4    this plan -- and I don't want to go to the contingency.  But if

5    this -- this is -- we're talking about the plan that's on the

6    table that is the subject of all the activity now.  If that

7    plan gets confirmed, and then everything goes according to the

8    schedule here, and let's assume the wildfire class votes to

9    accept the plan, and the plan is confirmed.  Fine.

10        If the plan is not confirmed, or the wildfire victims

11   do not accept the plan, then if I understand you correctly,

12   this thing, kind of, runs aground.  Is that what --

13        MS. GREEN:  Correct.

14        THE COURT:  Okay.

15        MS. GREEN:  Because there's no reason for the trust to

16   be up and running if the plan isn't confirmed.

17        THE COURT:  Well, but there will have been -- well,

18   maybe you already said this.  No, there's a five-million-dollar

19   payment that needs to be made within days.  So if I

20   understand --

21        MS. GREEN:  Your Honor, you're looking at my

22   supplement and not at the order.  We uploaded that change in

23   the order, and so the order provides 2.5 -- it's on page 4 --

24   2.5 million dollars within three business days of the order.

25   So that's basically for the work that Justice Trotter and Cathy

PG&E Corp. and Pacific Gas and Electric Co.

1    Yanni and their team have begun in January and are continuing

2    to do.

3          The second payment is due on May the 30th, fifteen

4    days after the voting deadline now, and that's 9,767,093.  And

5    then the third payment on June 30th and the fourth on July

6    31st.

7          THE COURT:  Okay.  Ms. Green, I know you've been busy,

8    and some of us have spare time, but I didn't see your

9    supplement until 3 o'clock yesterday when you filed it, and I

10   think you uploaded the order this morning, so --

11         MS. GREEN:  I apologize.  It was --

12         THE COURT:  Oh, no.  You don't have to apologize.  I

13   just can't keep up with you.

14         MS. GREEN:  Right.

15         THE COURT:  Okay.

16         MS. GREEN:  So there's cat herding, but I think we did

17   a --

18         THE COURT:  I am not critical of anything.  I'm glad

19   to see it happening.  But I still have some more questions.

20         MS. GREEN:  Yes, sir.

21         THE COURT:  So going to the budget and then the

22   supplement, I learned for the first time about Mr. Kennedy, but

23   I don't see -- is Mr. Kennedy a line item in the budget, or is

24   he part of BrownGreer, or where does he fit in the process?

25         MS. GREEN:  Your Honor, I think he's part of the

                PG&E Corp. and Pacific Gas and Electric Co.

1    administrative staff line item on the budget.

2            THE COURT:  Okay.  So one thing that's unclear.

3    Again --

4            MS. GREEN:  Oh, no.  I know where he is.  He's the

5    fire claims budgeting staff.  I apologize.

6            THE COURT:  He's in the budgeting staff, but for some

7    reason you saw a need to separate him out.  Again, I don't

8    care.  It's okay.  But I just, you know, one of these mysteries

9    where late yesterday I learn about Mr. Kennedy, and I got to

10   know what his role is.

11           So what I'm having trouble understanding is -- well,

12   first of all, what's just not clear at all is that if I approve

13   this today, as I assume I will, or today or tomorrow promptly,

14   then things start to happen, and the budget certainly says that

15   if substantial sums of money are accrued or paid -- if they

16   haven't already accrued or paid -- and yet there's been no

17   disclosure of any detail or explanation of why, with two very

18   qualified and very well compensated senior people in the form

19   of Justice Trotter and Ms. Yanni, plus now Mr. Kennedy, who's a

20   lawyer, plus an enormously complicated staff of various people,

21   as described in the supporting declaration, we also have seven

22   lawyers in, essentially, like, a separate law firm.  It's not a

23   separate law firm.  I understand.  But it's a practice group,

24   and there's no explanation as to what they are doing and why

25   they're doing it.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        So again, I don't want to sound like a scrooge here,

2   but you need to explain to me why there is a --

3        MS. GREEN:  Yes, Your Honor.

4        THE COURT:  -- 4.5-million-dollar item for what looks

5   like an extra layer of very, very high-priced legal assistance

6   of three very qualified legal people running the show in any

7   event.  So help me understand that a little better, please.

8        MS. GREEN:  Yes, Your Honor.  So Justice Trotter and

9   Ms. Yanni have retained Brown Rudnick as counsel to Justice

10  Trotter as trustee and Ms. Yanni as claims administrator.  And

11  so these are fees related to Brown Rudnick's work that they did

12  with creating the trust document itself.  They did a lot of

13  work making sure that the rights of the trustee and the claims

14  administrator were protected in connection with that and in

15  connection with the CRP.  And then their work is going to

16  relate to the claims process under the trust agreement itself.

17       And so that's the legal that is referred to there.  It

18  is not a Baker & Hostetler legal team. It's the legal team for

19  the trustee himself.

20       As you might imagine --

21       THE COURT:  Just there's no --

22       MS. GREEN:  The trustee is going to have 13.5 billion

23  dollars in money that's going to come to him.  He wants to be

24  well protected and make sure that he's properly taking care of

25  the various issues related to the trust on the legal side.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1        THE COURT:  Ms. Green, I understand that.  I don't

2   want to spend a large portion of that 13.5 billion dollars on

3   people that weren't fire victims, and I --

4        MS. GREEN:  Thank you.

5        THE COURT:  I just need to have a better sense.

6        So think about the basic bankruptcy analysis here.  We

7   don't have a confirmed plan.  We don't have a trust in place.

8   And yet high-paid professionals are being not hired or

9   authorized their employment under Section 330, but effectively

10   that's what's happening, and yet there's virtually no

11   traditional oversight or review process.

12        I'm told in your papers that Justice Trotter himself

13   is going to review the time records.  Well, frankly, I don't

14   really want a senior person, who is paid a very high amount of

15   money, reviewing fee applications.  It's not efficient.  But I

16   don't know how this thing has any kind of protection for the

17   benefit of the beneficiaries in a more traditional way when you

18   think about the role the Court has played to date with the fee

19   examiner and so on.  So tell me why this should be treated

20   differently, so we are not -- obviously I don't want my

21   comments to be construed as faulting or questioning the

22   integrity or the value of the services.  But it's just a very

23   unconventional alignment of professionals.  So help me

24   understand that better, please.

25        MS. GREEN:  Yes, Your Honor.  So since it is post-

PG&E Corp. and Pacific Gas and Electric Co.

1   confirmation money, essentially, that's being transferred to

2   the trust, because the funds are being deducted from the

3   payment to the victims, we thought it appropriate that the

4   trustee be the party who is reviewing fees, or his team, so

5   that he's ensuring that they're doing the work related to the

6   trust itself.

7          They're not really technically 1103 or 330

8   professionals, because they're working for this putative

9   trustee.  And I understand the complexity of the issues related

10  to the trust agreement, and that we're, sort of, in a pre-

11  confirmation stage.  But in terms of talking with Justice

12  Trotter, he believes that he is the person who would have the

13  most knowledge about what these people are doing and whether or

14  not their fees are reasonable, which is where we came up with

15  the reporting requirements that Justice Trotter has to the

16  Court.

17         THE COURT:  Well, I wish him well, but I'm looking at

18  his credentials and his experience.  I think he's got better

19  things to do than review fee applications.

20         But tell me this, Ms. Green.  Does the bankruptcy

21  court -- not me personally, but the institution -- have any

22  role at all in any of these post-effective date reviews of

23  payments of professionals and adequacy of fees and what have

24  you or not?

25         MS. GREEN:  Well, normally there would be some type of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    quarterly reporting of the trust to the Court as to what the

2    professionals fees were, et cetera, in a traditional trust

3    agreement, as opposed to an actual fee application to the

4    Court, because they're not actually being employed by the

5    estate or the committee.  They're being employed by the post-

6    confirmation liquidating trust.

7              THE COURT:  I know.  But that sounds good, but it's

8    not true, because they're being employed, essentially, today,

9    by a trust that isn't in place yet, under a plan that hasn't

10   been confirmed yet.  So again, I'm not going to block the

11   process.  I just want to understand the process.

12             You've explained it adequately.  Again, this is going

13   to sound like I am being a scrooge, but I'm not, I hope.  When

14   I look at the budget, and I see Ms. Yanni, and I know her not

15   personally, but I know her by reputation, and I see that she's

16   budgeted to work 175 hours a month.  That's better than forty

17   hours a day on a work day (sic), all the way through to August,

18   and I'm wondering, is that really going to happen?

19             If we have this very complex claims process, with all

20   of these professionals that are described in the supporting

21   declaration, I'm just wondering whether Ms. Yanni and Justice

22   Trotter are actually going to be doing the kind of thing that

23   the budget, at least, says they're going to be doing.

24             And again, in the interest of making this simple, I'll

25   take your -- just summary of what's the plan here, rather than

PG&E Corp. and Pacific Gas and Electric Co.

1    ask them to file any declarations or anything.  If we had a

2    traditional court hearing, I might ask them just to stand up

3    and describe something, but I'm not going to do that today.

4         So tell me why I shouldn't think this is just a risk

5    to have a very large amount of money be paid out without any

6    kind of control over what happens.

7         MS. GREEN:  So Your Honor, two things.  One is that

8    Justice Trotter has agreed to charge a flat fee, which is what

9    the line item of 150,000 dollars a month is in his budget.  Ms.

10   Yanni's time is based upon estimates that she provided.  Of

11   course, it's an estimate, and she won't be paid the amount if

12   she doesn't work that amount, but I will tell you that I

13   personally spent almost ten hours this weekend talking to Ms.

14   Yanni.  I've talked to her at 6 o'clock in the morning

15   California time and at midnight California time, and so I do

16   know that she has spent a great number of hours working on this

17   trying to set up the process.  And so I think that basically

18   her time down there on the budget is an estimate, and to the

19   extent that she doesn't work that time, of course she won't be

20   paid for it.

21        THE COURT:  My last question is -- I think I know the

22   answer, but it's purely coincidence, isn't it, that BrownGreer

23   and Brown Rudnick both start with the word Brown, and it's

24   not --

25        MS. GREEN:  Yes, Your Honor.

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  There's no connection between the two; is

2  that correct?

3    MS. GREEN:  There is no connection between the two.

4    THE COURT:  All right.  Thank you, Ms. Green.

5    MR. SINGLETON:  Your Honor --

6    THE COURT:  Mr. Karotkin?

7    MR. SINGLETON:  I'm sorry.

8    THE COURT:  Who's that speaking?

9    MR. SINGLETON:  Your Honor, I'm sorry to interrupt.

10  This is Gerald Singleton.  I just wanted to very briefly echo

11  the comments of Ms. Green.  Ms. Yanni has worked extremely

12  hard.

13    THE COURT:  Okay.  Now, wait a minute, would you?  Mr.

14  Singleton, what I --

15    MR. SINGLETON:  Understood.

16    THE COURT:  -- said before, I want to wait, and I'm

17  calling on people, and then I'll call on everyone else.

18    MR. SINGLETON:  I apologize, Your Honor.

19    THE COURT:  Mr. Karotkin, can you confirm?  Does the

20  debtor agree to everything that Ms. Green has just summarized

21  and has committed to this share of the undertaking, or the

22  financial portions of it, et cetera?

23    MR. KAROTKIN:  Your Honor, Stephen Karotkin, Weil,

24  Gotshal, for the debtors.  I can confirm that we have agreed to

25  the form of both orders with Ms. Green, and I would like to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    make one other statement. Notwithstanding the fact that the

2    TCC has not agreed to support the plan, we are still willing to

3    go forward with this funding.

4         THE COURT: Okay. So that means, then, Mr. Karotkin,

5    if I sign the order today or tomorrow, literally within two or

6    three days 2.5 million will go out to BrownGreer, and 2.5

7    million will go out to Trotter/Yanni, and another 5 million --

8    I'm sorry. No. Ms. Green described the next payment is later.

9    Originally it would have been within three days. Now it's

10   going to be later in the month. Is that -- I mean, next month.

11   Do I have that right?

12        MS. GREEN: May 30th, Your Honor.

13        THE COURT: Yes. May 30th.

14        MR. KAROTKIN: That's correct, Your Honor.

15        THE COURT: Okay. Right.

16        MR. KAROTKIN: Subject to the --

17        THE COURT: Okay.

18        MR. KAROTKIN: Subject to the conditions in the order.

19        THE COURT: Okay. All right.

20        Mr. Singleton, you're welcome to make comments, but in

21   the interest of time, you have to understand, I am flying blind

22   here until late yesterday afternoon I get this information.

23   And I'm happy to hear it, and I'm quite satisfied with what

24   I've heard under the circumstances, and I don't need more

25   support by others, but you're welcome to express it. So I'll

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    call on you first, and then I'll ask if anyone else wishes to

2    be heard.  So Mr. Singleton?

3            MR. SINGLETON:  Thank you, Your Honor.  I'm sorry for

4    interrupting.  I can certainly take yes for an answer.  I just

5    wanted to underscore what Ms. Green was saying.  Ms. Yanni has

6    worked extraordinarily hard.  All of us who've been fortunate

7    enough to be involved in this process and have had the

8    opportunity to work with her, she's been available all the day

9    and has been working incredibly hard on this.  So I just wanted

10   to underscore that,  Because of the fact that Your Honor

11   doesn't have the type of information you normally would, I just

12   wanted to speak up on behalf of a number of us who've had the

13   opportunity to work very closely with her.

14           THE COURT:  Okay.  Well, I appreciate that.  And

15   again, all I want you to appreciate is I simply don't have any

16   context other than what I'm presented yesterday.  And I don't

17   at all question the professionalism or the commitment of any of

18   the people that I've asked about.  I just don't understand how

19   it's going to happen.

20           And I will say further that I am quite pleased to see

21   that the differences of opinion between the debtor and the TCC

22   were worked out, and so I'm happy this will be another

23   milestone to achieve getting towards what everybody is trying

24   to get to.

25           There is, as you all know, a high degree of so-called

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    transparency and visibility to what's going on here, and when

2    suddenly twenty million dollars is being earmarked for certain

3    things, there just has to be some acknowledgement that there's

4    at least someone in the neutral position, like yours truly, who

5    understands it.  I do understand it.  I think it's the good

6    thing to do.  I'm happy to approve it.

7                Does anyone else wish --

8                MR. SINGLETON:  Understood, Your Honor.  Thank you.

9                THE COURT:  -- to be heard on this motion?  Anyone on

10   the call wish to be heard?  State your name first, and then

11   I'll get to you.

12               MR. BRAY:  Your Honor, it's Gregory --

13               UNIDENTIFIED SPEAKER:  Your Honor.

14               MR. BRAY:  -- Bray of Milbank LLP.

15               THE COURT:  Mr. Bray.

16               MR. BRAY:  Counsel for the committee.

17               THE COURT:  Good morning, Mr. Bray.

18               MR. BRAY:  How are you, Your Honor?

19               THE COURT:  Well, I'm just like the rest of us.

20               MR. BRAY:  I understood.  We have not seen the

21   proposed revised order.  Obviously, our interests are fairly

22   narrow.  The concern would be the amounts or the commitment

23   being made by the estate prior to confirmation of the plan.

24   And we certainly don't want to throw an unnecessary monkey

25   wrench.  We would like to see the order, and we'd understand

PG&E Corp. and Pacific Gas and Electric Co.

1   what commitments the estate is making outside of the trust

2   itself.

3           THE COURT:  Well, the proposed order was at least

4   provided to my staff this morning.

5           And Ms. Green, is there any reason why you can't share

6   that with Mr. Bray?

7           MS. GREEN:  I would be happy to.  And the only

8   commitment the estate's making that is not related to money

9   being paid to the trust is the 2.5 million for the previous

10  work of BrownGreer plus the 2.5 million to Cathy Yanni and

11  Justice Trotter that they agreed to in previous pleadings, and

12  the rest will be deducted from payments to the trust.

13          And I apologize.  I should have forwarded it to Mr.

14  Bray.  I thought I caught everybody.  And I will do that right

15  now.

16          THE COURT:  Mr. Bray, I was --

17          MR. BRAY:  Thank you.

18          THE COURT:  Mr. Bray, there were two orders that were

19  uploaded, but they appear to be similar.  I didn't -- I'm just

20  pulling up on my screen here the Yanni order, and it's nunc pro

21  tunc to January, and it identifies her team as the

22  professionals, and it attaches as an exhibit the budget.

23          And then there's another provision in there that deals

24  with the BrownGreer order, which I say that seemed to be a

25  mystery, but it's an explained mystery on this record.

PG&E Corp. and Pacific Gas and Electric Co.

1          And then the operative provision for payment seems to
2  be in paragraph 6, which is largely a restatement of what's in
3  the supplement that Ms. Green filed yesterday, except for that
4  deferred payment.

5          And then the provision that -- what happens if the
6  plan is not voted up affirmatively by the victims or not
7  confirmed -- is there.  Oh, you'll have -- I'll tell you why I
8  don't.

9          You go ahead and review it today, and if you have any
10  objections to the form of order, communicate it to Ms. Green.
11  I will plan on signing the order late today, so if you have any
12  concerns you can also notify my courtroom deputy, and if I
13  don't hear from you, it'll be my intention to sign the order
14  late in the day, so it can be docketed by close of business
15  today.

16          MS. GREEN:  It's --

17          (Indiscernible - simultaneous speech)

18          MS. GREEN:  -- for Mr. Bray right as we were speaking,
19  Your Honor.

20          THE COURT:  Okay.  Mr. Bray, does that work from a
21  timing point of view?

22          MR. BRAY:  Yes.  Yes, that's fine, Your Honor.

23          THE COURT:  All right.

24          MR. BRAY:  Thank you.

25          THE COURT:  Anyone else wish to be heard on this

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    matter?

2           MR. MINTZ:  Your Honor, this is Benjamin Mintz from

3    Arnold & Porter.

4           THE COURT:  Yes, sir.

5           MR. MINTZ:  I'm counsel for AT&T.  I'm speaking on

6    behalf of those parties that filed the reservation of rights.

7    That includes AT&T, my client, as well as Adventist,

8    represented by Norton Rose, and certain Paradise municipal

9    entities that are represented by Reed Smith.

10           Our concern in filing the reservation of rights was

11    about potential prejudice.  We didn't want the Court's approval

12    or the monies that were going to be spent in developing the

13    trust procedures to be used as the shield to any arguments that

14    we might later advance, including at confirmation.

15           As Ms. Green indicated, we resolved our issues for

16    today insofar as the order reflects agreed-upon no prejudice

17    language that provided the Court's approval and the parties'

18    actions will not prejudice our ability to challenge the claims

19    procedure in trust matters.

20           But just to be clear, our fundamental substantive

21    issues have not been resolved.  Our issues relate to the terms

22    of the fire victim claims resolution procedures, and we're

23    concerned that they're being designed in a way that will

24    disadvantage larger claimants like our clients.  We're focused

25    on a number of provisions, and we're trying to work to resolve

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  these matters consensually without judicial intervention.

2  We've reached out to the TCC and the debtors with a list of

3  issues that go to providing that the trust procedures are fair,

4  that the eligibility criteria are fair and appropriate, that

5  claims are treated on a pro rata basis, issues of that nature.

6  We recognize they're not issues for today, but we

7  wanted to bring them to Your Honor's attention and indicate

8  that if we're not able to resolve those consensually we will be

9  bringing those matters to the Court's attention, either at

10  confirmation or at some appropriate time before then.  We're

11  also undertaking a discovery process in connection with those

12  issues, and again, we hope we can resolve them consensually,

13  and we're going to work as hard as we can to try to do that.

14  Thank you, Your Honor.

15  THE COURT:  Well, thank you, Mr. Mintz.  I had

16  reviewed reservations that you and Adventist and the others had

17  filed, and I do appreciate that that's important to state that

18  and that it's also helpful that we get past it today.  But it

19  really triggers something that I want to state to Mr. Karotkin

20  as well as the rest of the counsel.

21  Maybe given this incredibly difficult scheduling with

22  stay-at-homes and no ability for people to meet and confer,

23  that we pencil in yet another date on the calendar that we look

24  at dealing with some of these issues that are not directly

25  confirmation issues but certainly impact trust issues.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    So Mr. Karotkin, you don't have to respond now, but

2  I'd like you to think about it over the next few days and

3  figure out whether it might be a good idea to schedule a date,

4  either on an existing calendar or we can give you a new date,

5  prior to the confirmation schedule, to have a pre-hearing, if

6  you will, or something to discuss these issues.  I find it'd be

7  very difficult if we have to do all of this by phone, but if we

8  have to do it all by phone or video, we'll do it.  But I'll ask

9  you just to put that on your to-do list to think about

10  conferring with the principal counsel, like Mr. Mintz and Ms.

11  Winthrop and others, to talk about an appropriate time to air

12  out any differences on the kinds of things that Mr. Mintz just

13  described.

14    But for now --

15    MR. KAROTKIN:  Okay.

16    THE COURT:  -- I will conclude the matter on the

17  Trotter/Yanni motion and thank Ms. Green for leadings to the

18  resolution here.  And I'll look forward to getting the order

19  later today.

20    MS. GREEN:  Thank you, Your Honor.

21    THE COURT:  Mr. Karotkin?  You want to go, Mr.

22  Karotkin, to the Butte fire settlement?

23    MR. KAROTKIN:  Yes, sir.  Thank you.  Again, for the

24  record, Stephen Karotkin, Weil, Gotshal & Manges, for the

25  debtors.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    Your Honor, we've reviewed your tentative ruling and

2    really don't have much to raise today.  And I don't want to

3    belabor it, but I feel compelled to make a few remarks, because

4    in my view the debtors have been subject to inappropriate

5    criticism for arranging to have the fine satisfied in a manner

6    that would be completely, and I mean completely, neutral to the

7    Fire Victim Trust to be created under the plan.  So if Your

8    Honor would just indulge me for a few minutes, so you can

9    become (indiscernible - skip in audio) aware of why the

10   satisfaction of the fine was structured in the way it was

11   structured, and Your Honor, that is in a way to assure the

12   timely and successful conclusion of these cases.

13   So first, Your Honor, under the terms --

14   THE COURT:  Okay.  That's fine.  Yes.

15   MR. KAROTKIN:  Okay.  Under the terms of the --

16   THE COURT:  Please --

17   MR. KAROTKIN:  Okay.  Thank you, sir.  Under the terms

18   of the equity financing agreements that were approved by the

19   Court and that, as you know, Your Honor, are critical to the

20   debtors' plan emerging financing, and of course, the funding of

21   the Fire Victim Trust, the determination right of the debtors'

22   liability for fire claims under the plan is in excess of 25.5

23   billion dollars.  And that 25.5 billion dollars is easily

24   calculated.  It's the one billion for the public entities under

25   the plan.  It's the eleven billion that is to be deposited in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   the subrogation claimants' trust under the plan.  And it's the

2   13.5 billion dollars in approximate value for the Fire Victim

3   Trust to be deposited under the plan in the form of cash and

4   stock.

5          And it's also clear, Your Honor, from the plan and the

6   tort claimants RSA, and this is despite what the Baker firm has

7   raised, that the fire claims that are subject to that 25.5-

8   billion-dollar cap include fines and penalties, and therefore

9   cover the 4-million-dollar Butte settlement.  And as a result

10  of that, Your Honor, it's absolutely clear that the debtors

11  could not directly pay that four-million-dollar fine from their

12  own assets without presenting a clear termination right under

13  the equity backstop agreements.  There's no question about

14  that.

15         Now, people can try to ignore that language, or try to

16  interpret it otherwise, or say that the plan can be amended to

17  avoid this conclusion, but the debtors, Your Honor, who have

18  fiduciary duties to all stakeholders in these cases, they

19  cannot do that, and they did not think it was appropriate to

20  take the risk of a termination of the equity backstop

21  agreements.  That would not be in the interests of getting this

22  case concluded.  That would not be in the interest of any

23  stakeholders.

24         We have an obligation to keep those equity commitments

25  in place and to avoid giving any of the backstop parties a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   right to terminate, whether or not others think they will

2   exercise that right or won't exercise that right.

3           And that, Your Honor, is precisely what we sought to

4   accomplish with the way we structured the payment and what we,

5   in fact, did accomplish.  There was no sinister motive.  There

6   was no backdoor attempt to get an advisory opinion.  There was

7   nothing other, Your Honor, than the debtors being extremely

8   careful to, as Your Honor says, and I'm going to use your

9   words, because you know I like to do that.  As Your Honor says,

10  to keep this train on track.  To keep this train on track, so

11  that we can confirm on time, and so that distributions can be

12  made to fire victims, and that can commence as soon as

13  possible.

14          And Your Honor, what we came up with, with the help of

15  Mr. Feldman and his clients, was a way to keep the satisfaction

16  of the fine completely, and I mean completely, neutral to the

17  Fire Victim Trust, and in the same fashion, not providing any

18  of the backstop parties the ability to terminate and

19  jeopardizing the funding that is critical to the debtors

20  emerging from Chapter 11 prior to the June 30th AB 1054 date

21  and to getting funding to the trust as soon as possible.

22          That is it, Your Honor.  There's nothing more to what

23  we did.  And if the debtors are to be criticized for developing

24  and presenting an approach which is in the best interest of all

25  stakeholders in these cases, and in particular, the Fire Victim

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   Trust, and assure that this train keeps moving as smoothly as

2   possible, then so be it.  Mea culpa for that, Your Honor.

3          And I'd just like to say in conclusion, all that being

4   said -- all that being said, Your Honor, if you prefer, and I

5   think that -- I certainly gleam that from your tentative

6   ruling -- that the payment of the fine be made directly from

7   the escrow account held for the benefit of the subrogation

8   claimants when that interest is earned in that account, post-

9   effective date, rather than being channeled through the fire

10  claims trust, as would be required by the plan, Your Honor, we

11  will be happy to do it as long as no other parties have any

12  objection, and as long as Your Honor approves the payment to be

13  made in that fashion.  We have absolutely no objection to doing

14  that.  And that's really all I have --

15          THE COURT:  Well, since you're --

16          MR. KAROTKIN:  -- plaintiff --

17          THE COURT:  Since you're complimenting me by quoting

18  me about my metaphors, I might have a couple for you today, but

19  I have a couple of questions first.  Here's my question.  And I

20  must say, I went back and reread the papers in anticipation of

21  today's hearing, and it was a little unclear, and I, of course,

22  I'm aware, as you're aware, of the public -- I think the

23  company made a public statement, and there was a little bit of

24  publicity about how the payment was going to be made.  But I'm

25  a little unclear on the timing.  So if I sign -- leave aside

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  what the order will -- how it works, but let's go to the

2  concept of it.

3       If I approve this motion today, when does Butte County

4  get its 4 million or 3.5 million?  The difference between 3.5

5  and 4 is not important here.

6       MR. KAROTKIN:  Right.

7       THE COURT:  When do they get it, right?  Soon?

8       MR. KAROTKIN:  No.  They would get it, let's say,

9  roughly approximately fifteen days after the effective date of

10  the plan.  The way it would work, Your Honor, is that under the

11  plan the eleven billion dollar -- there's an eleven-billion

12  distribution to the subrogation claimants' trust.

13       THE COURT:  Okay.

14       MR. KAROTKIN:  Under our proposal, 10.9 billion

15  dollars of that 11 billion, on the effective date, would be put

16  into an escrow account for the benefit of the trust.  That 10.9

17  billion dollars would earn interest in the escrow account.  We

18  anticipate it would take approximately fifteen days or so for

19  the approximately four-million-dollar amount to be -- for

20  approximately four million dollars to be earned in that account

21  for the benefit of satisfying the Butte County claim.  And the

22  other hundred million to be distributed to the subrogation

23  trust would go immediately to the subrogation trust on the

24  effective date.

25       So there would be a period of time in which 10.9

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    billion would sit in an escrow account, earn interest.  When

2    that interest reached about four million dollars, the amount of

3    the fine, what we had proposed was that amount of money would

4    be then transferred to the Fire Victim Trust, and the Butte

5    County claim would be treated as other fire victim claims under

6    that.  But if you would like us to have that interest paid

7    directly to Butte County after that fifteen-day period, we're

8    happy to do that, as long as you order us to do that.

9         THE COURT:  Well, the Butte County deal, which was

10   summarized in your original motion, and maybe there was a

11   backup detail.  Again, I can't keep track of everything.  The

12   district attorney or the county treasurer, somebody is

13   expecting to get a 3.5 or 4-million-dollar payment around that

14   time.  I don't imagine that that public official cares where it

15   came from, as long as it's good funds.  And if he got it from

16   Mr. Feldman's trust account or the trust that's been set up for

17   the subrogation trust, it has a certain degree of simplicity to

18   it that, in my mind, it has the same economic effect, but it

19   doesn't have, sort of, the appearance of payment by the Fire

20   Victim Trust.

21        So let me ask if Mr. Julian is going to speak to this

22   issue, or others.  Just focusing on that issue, you're on the

23   call, aren't you, Mr. Julian?

24        MR. JULIAN:  Yes, I am, Your Honor.  I'm happy to

25   speak.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    THE COURT:  And without getting into the rhetoric or

2    the motions that are expressed here, are you satisfied if we

3    just do it the way Mr. Karotkin and I just described?  Does it

4    make a difference to you?

5    MR. JULIAN:  If it's paid directly from the subro --

6    yes, Your Honor.  Robert Julian of Baker & Hostetler for the

7    TCC, responding to your questions.  If the four million dollars

8    or so is paid from the subro trust or PG&E, as you order,

9    approving this settlement, to Butte County, the TCC is fine

10   with that.

11   I do have one clarification for you, if you have time.

12   THE COURT:  Yes.  I just want to make one question,

13   and then I'll certainly listen to your clarification.  Again, I

14   can't keep track of all the details, but when the victims trust

15   is in place, 13.5 billion or some amount like that amount goes

16   to the trustee, and then they are off and running on all the

17   things that we talked about this morning and otherwise.

18   And what you don't want, and frankly, I don't want, I

19   don't want Justice Trotter or anybody else to be writing a

20   check from their money they are holding to pay PG&E's fire

21   liability to Butte County.  I mean, criminal liability.

22   So it seemed to me, if I approve what Mr. Karotkin is

23   suggesting, and he doesn't have any serious objection from

24   anybody, and the TCC's satisfied with it, we've solved the

25   problem.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1            But go ahead.  You wanted to make a point of

2    clarification.

3            MR. JULIAN:  Yes.  We have solved the problem, Your

4    Honor.  And just so the record's clear, just as Mr. Karotkin

5    explained their position, I want to explain to you why the TCC

6    and its professionals have always believed that things like

7    your March settlement of the first Butte criminal settlement

8    fine does not come out of the fire trust, and so this one did

9    not either.  And I think it's important for Your Honor to

10   remember this, because recently you said I had forgotten about

11   the settlement.

12           So in March -- there are two settlements from this

13   Butte County District Attorney, one for --

14           THE COURT:  Yes.

15           MR. JULIAN:  -- 1.5 million dollars for the 2017 fires

16   in the Butte County, and this recent one for 4 million dollars

17   for the 2018 Camp Fire.  Your Honor approved the first Butte

18   County 1.5-million-dollar settlement in docket number 1092.

19   The settlement agreement for that Butte settlement was docket

20   770.

21           And Your Honor, what's interesting about this, and it

22   proves our point of why we've been right about this criminal

23   penalty, both the 1.5 million settlement that you approved

24   previously and this 4 million that you're about to approve now

25   involve Penal Code 452, recklessly starting a fire.  And PG&E

PG&E Corp. and Pacific Gas and Electric Co.

1    did not include Penal Code fines in the definition of fire

2    claim.  And they did it when Judge Alsup criticized them for

3    not disclosing the first Butte settlement investigation.

4          And Your Honor knows, we're all careful lawyers here.

5    I know the Weil, Gotshal folks.  They wouldn't have hidden this

6    from us.  Judge Alsup found that PG&E had violated its

7    probation by not disclosing the Penal Code 452 investigation

8    that resulted in the first 1.5-million-dollar settlement.

9          In the face of that lack of disclosure, PG&E's lawyers

10   drafted the fire claim definition to include references to only

11   three codes:  the Civil Code, the Code of Civil Procedure, and

12   the Public Utilities Code.  They did not mention the Penal Code

13   at all.

14         THE COURT:  Where is that --

15         MR. JULIAN:  And that's why we --

16         THE COURT:  -- in the plan with -- Mr. Julian, where

17   is that in the plan?

18         UNIDENTIFIED SPEAKER:  Your Honor, may I --

19         THE COURT:  Okay.  Gentlemen, let's -- let's not --

20   I'm trying to avoid this.

21         MR. JULIAN:  And so anyway, Your Honor --

22         THE COURT:  Trying to put the fire out, this fire out.

23         Go ahead, Mr. Julian.

24         MR. JULIAN:  Yes.  I mean, the bottom line is when we

25   were in front of Judge Newsome settling this thing, and we saw

PG&E Corp. and Pacific Gas and Electric Co.

1    the word "penalties and fines", it all looked civil to us.  And

2    I know they feel passionately today on this, but we can't let

3    the record, after that speech, go uncorrected that just as you

4    ordered them in your March order to pay that fine, which is not

5    yet paid fully under that settlement, right?  They have paid

6    some of it.  But it goes on for four years, unless they paid it

7    in advance, which I don't know.

8         The point is, they didn't put that in there.  And so

9    our view is -- I'll just wrap it up -- our view is that the

10   fire claims are civil claims.  And I know we're not getting

11   into it today, but I just had to correct the record.

12        THE COURT:  Okay.

13        MR. JULIAN:  They've got their view.  We've got our

14   view.  And I applaud Your Honor for coming up with a pragmatic

15   solution that avoids this --

16        THE COURT:  Well, I just, I have to say that I've

17   watched Mr. Karotkin in action for almost a year-and-a-half,

18   and sometimes I know his emotions take over, but generally it's

19   very rationale and very lawyer-like.  But I counted the adverbs

20   and the words, and I wanted to make a list of them for my

21   thesaurus.  I got rhetorical foolishness, typically irrelevant,

22   hyperbole, continuing utter disregard.  And I'm trying to avoid

23   all that.

24        So I don't have a favorite here.  I just wanted to get

25   the job done.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          Mr. Karotkin, I'm going to authorize --

2          MR. FELDMAN:  Your Honor.

3          THE COURT:  -- or direct --

4          MR. FELDMAN:  Your Honor.  Your Honor.

5          THE COURT:  Yes, sir?

6          MR. FELDMAN:  I apologize.  It's Matthew Feldman on

7   behalf of the subrogation group.  Could I be heard briefly?

8          THE COURT:  Yes, sir.  I was thinking --

9          MR. FELDMAN:  Your Honor, we --

10         THE COURT:  -- about you, Mr. Feldman.

11         MR. FELDMAN:  Yes.  We have no issues with the

12  solution that Mr. Karotkin proposed to the Court, and we've

13  tried very hard to be supportive of finding a way to keep the

14  train on the track.  But I do want to make one comment.

15         Mr. Julian has repeatedly filed papers that challenge

16  the definition in the plan and seem to suggest other claims

17  might be part of the subrogation trust.  While we've agreed to

18  make the payment here, I don't want this to be used in any

19  future pleading or proceeding before this Court to suggest that

20  other similar claims belong in our trust, as opposed to being

21  paid by the company.  I'm not suggesting whether they belong in

22  the victim trust or the municipal trust or anyplace else, but

23  this should not open a door, Your Honor, and I want to be

24  crystal clear about that.

25         THE COURT:  Okay.  Well, again, I've complimented all

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    the lawyers in this case for being masters of reservations of

2    rights, and I want everyone to reserve their rights.  My right

3    here is to not tell the fire victims you're going to pay four

4    million dollars to the company that has confessed guilt under

5    the criminal laws.

6          And Mr. Feldman, your clients, and Mr. Karotkin, your

7    clients, have agreed to, I think, a very satisfactory

8    resolution.  I don't have to make any fine legal distinctions

9    about definitions of terms.

10         And I will approve the debtors' motion, with the

11   provision being that the money to be paid to Butte County under

12   the terms of the Butte settlement, when that's supposed to

13   happen, will go from the subrogation trust's accrued interest

14   and be paid directly, or through some intermediate steps, if

15   necessary, but not through the Fire Victim Trust.  If it has to

16   go through Weil, Gotshal or a trust account or some other

17   intermediate step from a lawyer to a lawyer, that's nobody's

18   business.  But the source of the money will be accrued interest

19   from the subrogation trust, and the recipient of that money

20   will be Butte County under the Criminal Procedures, and that's

21   the end of it.  And I'm happy to see that it's going to get

22   resolved.

23         And Mr. Karotkin, I appreciate your expression as to

24   why you think it was a good result.  I'm not saying it's not a

25   good result.  I think it's a satisfactory solution today, and

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    I'm going to put this baby to bed.  And thank you all,

2    unless --

3              MR. ABRAMS:  Your Honor.

4              THE COURT:  -- anyone else wishes to be heard.

5              Yes, sir?

6              MR. ABRAMS:  Your Honor --

7              THE COURT:  Yes, Mr. --

8              MR. ABRAMS:  This is Will Abrams.  I filed a joinder

9    to the TCC objection and just wanted to raise a couple of

10   points.

11             THE COURT:  Well, I've already disposed of yours in my

12   tentative ruling, so I don't know what's the point.  I'm not

13   going to change my opinion.  I'll let you make a brief

14   statement, if you want.

15             MR. ABRAMS:  Thank you, Your Honor.  Just very

16   briefly.  I'm just very concerned, especially given the subro's

17   comment associated with this that we're going to see similar

18   debates about whether it should or should not come out of the

19   victims trust with future fines and penalties.  PG&E has

20   already shown a predisposition to these types of actions that

21   lead to criminal penalties, and I would be very concerned going

22   into this that future fines and penalties should be brought out

23   of that, so I would expect that there would be some

24   clarification that that wouldn't occur.

25             The second point, and just very quickly, is that I

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1    largely think that the reason why there was so much upset over

2    this victims is because the notion that we are having a

3    discussion about these -- and I'm sorry if it's uncord (sic) to

4    mention it, these manslaughter charges, and that we're having a

5    discussion about which pot of money that the fine comes from,

6    as opposed to a reorganization of a company so that these

7    actions don't happen again.  And that's --

8           THE COURT:  Okay.  Mr. Abrams.  Mr. Abrams, I'm going

9    to stop you now.  I've got your point.  I made my point in my

10   tentative ruling.  The debtor accepted it.  We are not dealing

11   with any other fines and penalties today.  I am approving the

12   debtors' settlement of the Butte County -- actual settlement

13   that's in the record, consistent with what's been said today.

14          I want to make sure you understand.  I've said this

15   too many times.  I respect you from your point of view.  I

16   absolutely encourage you to express yourself.  But here, it's

17   just not a today matter.  So I'm going to close the subject and

18   leave it at that.

19          If there is another future fine or penalty that comes

20   before this Court, I will listen to you or anyone else that

21   wants to be heard.  Today there is no such one.  And I'll leave

22   it at that.

23          So I'm going to conclude the matter on the fire

24   settlement.

25          Mr. Karotkin, I will assume that the parties that you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp. and Pacific Gas and Electric Co.

1   are dealing with, whether it be the backstop group or the

2   shareholder group, everyone else, I know you well enough to

3   know you would have been in touch with them before agreeing to

4   what you ask me to approve, so I'll assume that you'll submit

5   an order that Mr. Julian can sign off on, and be glad to put

6   this behind all of us.

7           MR. KAROTKIN:  Okay.  We'll circulate an order.

8           THE COURT:  By my calculation -- thank you.  By my

9   calculation, all we have left today on today's schedule is what

10  we call the standing motion.

11          Am I correct, Mr. Karotkin?  Is there anything else

12  that you think we need to attend to this morning?

13          MR. KAROTKIN:  No, I think that's it, sir.

14          THE COURT:  Okay.  Thank you.  So on that one, let's

15  see.  I believe we have Mr. Behlmann.  Are you made the

16  appearance or Mr. Etkin?

17          MR. BEHLMANN:  Mr. Etkin is, Your Honor.

18          THE COURT:  And Mr. Julian, are you, or Mr. Rad?

19  Who's --

20          MR. RICHARDSON:  Good morning, Your Honor.  It's David

21  Richardson of Baker & Hostetler for --

22          THE COURT:  Oh, I'm sorry.  Yes.  Yes.

23          Mr. Richardson.  I had just too many people to keep

24  track of.  I did anticipate it would be you and not Mr. Julian,

25  because you were on the briefs.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1      Okay.  Well, you've got my thoughts about things.  Do

2 you want to proceed, Mr. Richardson?

3      MR. RICHARDSON:  Thank you, Your Honor.  I want to

4 start just by restating that what we're here to decide or ask

5 the Court to decide today is a motion for standing, not any of

6 the substantive issues that we hope to raise down the road in a

7 motion for summary judgment or preliminary injunction, but

8 simply whether an official committee should be given standing

9 to pursue the debtors' rights for declaratory relief that

10 certain claims are property of the estate.

11      Now, I want to address all of the Court's issues, even

12 though, unfortunately, some of those are not fully briefed

13 before the Court, because the debtor raised them in a brief

14 filed on Friday afternoon.  If what I say this morning does not

15 convince the Court that the debtors' concerns are misplaced, I

16 would ask for the opportunity to brief the Court on the twelve

17 Madoff cases that deal with the procedures that apply, the

18 standards that apply, why it is not an overlap with motions to

19 dismiss pending in other courts, so that the Court can make a

20 ruling based upon the case law that applies and not just an

21 unsupported concern addressed on Friday.

22      THE COURT:  You --

23      MR. RICHARDSON:  But the relief --

24      THE COURT:  But you've got to convince me to make a

25 ruling based upon the points that I raised in my tentative.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  MR. RICHARDSON:  I understand, Your Honor.  Now, to

2  address the Court's first concern.  The relief that we want in

3  our motion is the relief in the motion.  There's not a pivot.

4  We're not asking for something different from our motion.  If a

5  future MSJ goes beyond the standard of how a court should

6  address the direct versus derivative issue, those issues

7  shouldn't be addressed.

8  The scope that a direct/derivative covers and why it

9  does not conflict with the motion to dismiss, can most clearly

10  be demonstrated by focusing on a single allegation to start

11  with, being the securities complaint.  In paragraph 233, the

12  securities plaintiffs describe a May 23rd, 2016 press release,

13  where the debtors announce an increase in dividends and quote a

14  Mr. Earley, an officer of the corporation, stating, "we've

15  continued to demonstrate leadership and commitment on safety."

16  That rather bland statement, in bold and put in italics, and

17  treated as a misrepresentation that caused a select group of

18  shareholders to believe that their dividends would never be

19  threatened by a wildfire.  That's what the complaint alleges.

20  That same allegation appears in the second complaint.

21  In our motion for standing, we describe the derivative actions

22  that are pending in the state in various courts.  And one of

23  those one described as Williams v. Earley, and we mention that

24  it also pleads the Securities and Exchange Act of 1934 claim

25  for misrepresentations.  But that claim is pleaded as a

PG&E Corp. and Pacific Gas and Electric Co.

1   derivative claim, even though it's based on many of the same

2   press releases and other statements that are also pleaded in

3   the securities complaint.

4           And in paragraph 227 of that Williams complaint, it

5   alleges that the same May 23rd, 2016 press release was false,

6   and it bolds and italicizes the exact same statement of Mr.

7   Earley that I quoted earlier.  The only difference between

8   those allegations in those two complaints is that one of them

9   is alleged to be a derivative claim, because that press release

10  that was sent out to the entire world deceived all shareholders

11  in the same way, whereas the security plaintiffs claim that

12  they got -- the press release states a direct claim, because

13  that press release only deceived a very select group of

14  investors.

15          Both of those allegations can't be true.  As we

16  briefed in our motion, the direct/derivative analysis looks to

17  whether or not the putative class of shareholders that claim a

18  direct claim can show particularized harm, or if it was harm

19  experienced by all shareholders.  If that bland statement --

20  we've continued to demonstrate leadership and commitment on

21  safety -- is actionable for a federal securities claim, which

22  we acknowledge is before the district court, it's only

23  actionable by all shareholders as a derivative claim.  That's

24  an analysis that applies to the entire complaint, and I think

25  by focusing on that single allegation it demonstrates the type

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1     of argument that we want to present to the Court.

2           A motion to dismiss does not overlap with that

3     argument.  The director and officer defendants have not waived

4     the direct/derivative issue in their motion to dismiss, and

5     it's perfectly understandable that they did not.  It's an

6     argument of last resort in a direct shareholder claim.

7           They have a lot of arguments to raise, and they have,

8     but to raise the direct/derivative argument at this time in a

9     motion to dismiss would be asking the district court to find

10     that the scope of damages is not to a small group of

11     shareholders, but it reaches everybody, every shareholder, and

12     it's much larger than is already alleged.  It's not in their

13     interest to ask that the Court find that it's a derivative

14     claim.

15           If six months from now there's another motion to

16     dismiss, and the directors and officers argue that the claim is

17     derivative, I would absolutely understand if it's raised at

18     that time, but anything still happening in the proceeding that

19     we wish to begin be stayed until that motion to dismiss is

20     resolved.  But at this time --

21           THE COURT:  Wait, say that again, you're --

22           MR. RICHARDSON:  -- we don't believe that issue --

23           THE COURT:  Wait.  Repeat that please.

24           MR. RICHARDSON:  If six months from now there's a

25     second motion to dismiss, and the defendants and the directors,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 91

PG&E Corp. and Pacific Gas and Electric Co.

1   and officer defendants then do argue the derivative argument

2   that we're raising here, and we're still before the Court in

3   the adversary proceeding we want to file, then I would

4   understand that the issue of overlap is something the Court has

5   to address.

6           But right now, that issue isn't in front of the

7   district court, and it's unlikely to ever come before the

8   district court.  We --

9           THE COURT:  Well, wait.  I'm missing something.  Was I

10  incorrect, and has the derivative/direct issue been addressed

11  in the motion that's pending?

12          MR. RICHARDSON:  No, it has not.  They've chosen not

13  to raise it.

14          THE COURT:  So therefore, if the judge denied the

15  motion to dismiss, presumably he would have determined that

16  there are direct claims that survive, right?

17          MR. RICHARDSON:  No, Your Honor, he's not -- the judge

18  is not --

19          THE COURT:  Well, how --

20          MR. RICHARDSON:  -- going to have to determine the

21  direct versus derivative issue.  The complaint --

22          THE COURT:  I understand that.

23          MR. RICHARDSON:  -- can show that's there's --

24          THE COURT:  Wait, I understand that.  He hasn't been

25  asked to decide it, but have the defendants said this is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    derivative action.

2          MR. RICHARDSON:  No, they have not raised the issue.

3          THE COURT:  Well, if they haven't raised it, and he

4    says that the motion to dismiss is denied, doesn't that

5    implicitly say he has determined that it's a direct claim?

6          MR. RICHARDSON:  No, I don't --

7          THE COURT:  What's wrong with that thinking?

8          MR. RICHARDSON:  -- believe that that is the case law.

9          THE COURT:  What am I missing?  What am I missing on

10   that point?

11         MR. RICHARDSON:  If the allegations in the complaint

12   saying that there is harm to a select group of creditors has

13   not been put before the Court as an improper allegation, the

14   Court is not making a ruling.  The Court is not being asked to

15   determine if it's correct or not.  The Court accepts it as true

16   for purposes of the motion to dismiss.

17         The direct v. derivative analysis that a bankruptcy

18   court looks at is not bound by the motion to dismiss standard

19   of accepting all allegations as true.  It can receive evidence.

20   It can examine whether the allegations are conflicted within

21   the complaint.  They can -- it looks at a much broader analysis

22   than a motion to dismiss, and I'm not dismissing --

23         THE COURT:  I guess I'm missing something.

24         MR. RICHARDSON:  Your Honor --

25         THE COURT:  Wait.  Wait.  I guess I am -- if I let the

PG&E Corp. and Pacific Gas and Electric Co.

1    committee file this, and if I say the committee can prosecute

2    this complaint now --

3            MR. RICHARDSON:  Yes.

4            THE COURT:  -- you're telling me there would not

5    likely be a motion to dismiss?

6            MR. RICHARDSON:  No, Your Honor.  I'm telling -- I'm

7    saying that the motion to dismiss that is pending in the

8    district court doesn't prevent this court from hearing the

9    direct v. derivative issue, and I'm not arguing that in a

10   vacuum.  The Madoff cases that have addressed -- that addressed

11   this issue, and have been affirmed up to the Second Circuit on

12   a case that we would've been citing in our substantive brief

13   down the road, and if the Court is concerned about that

14   issue --

15           THE COURT:  I think I've got so many briefs on this

16   case -- I got more briefs than I can count on this motion so

17   far, and you still haven't told me why it would be inconsistent

18   for me to act now while I'm waiting for Judge Davila to answer.

19           But let's switch gears because I'm not going to spend

20   all morning on this.  Why should I go forward with this anyway

21   in this action?  What do you want this adversary proceeding

22   that could be granted, and you could get?  What's the best you

23   could come out with in this adversary proceeding if you

24   prosecute it?

25           MR. RICHARDSON:  We want an injunction against the

                    PG&E Corp. and Pacific Gas and Electric Co.

1    shareholders from proceeding with this action until the Fire

2    Victims Trust is up and running, or that the Court

3    determines --

4           THE COURT:  The shareholders aren't threatening an

5    action.  Mr. Richardson, the shareholders aren't doing

6    anything.  Why do I need to enjoin them from doing something

7    they're not doing?

8           MR. RICHARDSON:  Your Honor, the shareholders are

9    dealing with --

10          THE COURT:  Did you forget that there are a number of

11   other people that are going to be filing proofs of claim, we

12   assume?  Are you going to bring them in as defendants, too?

13          MR. RICHARDSON:  No, Your Honor, I don't think we need

14   to.  Should we prevail, the ruling would be the basis by which

15   the debtors can do an omnibus claim objection down the road,

16   but that would be their consent to a --

17          THE COURT:  And that would be binding -- if you

18   prevail in this adversary proceeding against five or six named

19   defendants, that's going to be binding on 5 or 6, or 5 or 600,

20   or 5- or 6,000 --

21          MR. RICHARDSON:  No.

22          THE COURT:  -- claimants?

23          MR. RICHARDSON:  No, Your Honor.  I'm not saying

24   that --

25          THE COURT:  Then why is this --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1          MR. RICHARDSON:  I think it would --

2          THE COURT:  -- efficient?

3          MR. RICHARDSON:  -- it would be the same argument.

4          THE COURT:  Wait a minute, Mr. Richardson.

5          Why is it efficient to waste the time to deal with

6  motions in an adversary proceeding that will be rendered moot

7  by the prosecution of claims that are filed, and perhaps

8  objections that are filed to those very same proofs of claim?

9          MR. RICHARDSON:  Your Honor, it's relevant because

10  most of what the TCC is doing right now is to protect the value

11  of the assets that we negotiated for the Fire Victims Trust

12  under the RSA.  One of those assets is the D&O claims subject

13  to the D&O insurance that covers them.

14          Our concern is that we'll get to a point perhaps

15  before plan confirmation where we discover that those claims

16  have no value because shareholders who have filed proofs of

17  claim in this case will receive part of their recovery from

18  this case, would also be receiving a recovery under those

19  insurance policies, and thereby leave part of the consideration

20  that the TCC has negotiated, valueless by the time we get to

21  plan confirmation.

22          The cases yet to be --

23          THE COURT:  So what if a shareholder who gets paid a

24  settlement by a director's insurance company, what do you think

25  the bankruptcy court can do about that?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. RICHARDSON:  The bankruptcy court can enjoin it

2  from happening in the interim.  And the case law for all of

3  that was provided to the Court in the surreply that the

4  securities plaintiffs filed.  That brief lays out how there are

5  two lines of authority, the Bolds (phonetic) and Reliance

6  authority, and the Fisher/Megliola authority (phonetic),

7  they're not competing in terms of what the law is, they apply

8  to distinct fact scenarios.  And the Bolds opinion in

9  particular, lays out the two lines of authority in great

10  detail.  It harmonizes the decisions that are within the

11  Fisher/Megliola line, and the difference comes down to whether

12  or not the shareholders have found proofs of claim against an

13  ongoing bankruptcy estate because if they have, under the

14  Fisher/Megliola line, the courts find that an injunction was

15  appropriate to determine what sort of a distribution they will

16  be receiving from the estate before allowing them to continue

17  against litigation that will affect recoveries of creditors.

18    In the Bolds and Reliance cases, they were post-

19  confirmation liquidating trusts that were trying to enjoin the

20  litigation and the courts found each time that those

21  shareholders had not filed the claims against the estate.

22    What we'll be asking the Court to do in a motion for a

23  preliminary injunction is to follow the Fisher line, and put a

24  preliminary injunction in place until the fire trust is up and

25  running because the distribution that shareholders are able to

                PG&E Corp. and Pacific Gas and Electric Co.

1    obtain under the plan will affect what additional recovery they

2    would still have against the insurance policies.

3            THE COURT:  Okay.  Do you want to reserve or do you

4    want to go forward, Mr. Richardson?

5            MR. RICHARDSON:  I would like to reserve the remainder

6    of my time to deal with --

7            THE COURT:  Okay.  I've got about -- you're about

8    halfway through.

9            All right.  Mr. Etkin, are you going to take the lead

10   here?  Mr. Etkin?  Hello?

11           Operator, can you hear me?

12           THE OPERATOR:  Your Honor, I can hear you.  Mr. Etkin

13   is no longer on the line.  My apologies.  My mute button was

14   on.

15           THE COURT:  Oh, how about Mr. Behlmann?

16           THE OPERATOR:  Mr. Behlmann is --

17           MR. DUBBIN:  Your Honor?  Your Honor?

18           THE COURT:  Yes.

19           MR. DUBBIN:  For the record --

20           THE COURT:  Yeah.

21           MR. DUBBIN:  -- this is Jeffry Dubbin of the Labaton

22   firm for New Mexico, PERA and the class.  I can speak if there

23   is nobody else on with Your Honor's permission.

24           THE COURT:  Yeah, but what happened?  I thought

25   Michael Etkin was going to participate?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. DUBBIN:  He was, and I was going to participate to

2  talk about the derivative versus direct case law or answer any

3  additional questions that Your Honor may have.

4    Briefly, as Your Honor pointed out, the claims here

5  and the claims before Judge Davila are based on the exact same

6  facts, and Your Honor is absolutely right that granting the

7  TCC's motion invites inconsistent judgment.

8    THE COURT:  Okay.  You have --

9    MR. DUBBIN:  Uh --

10    THE COURT:  You have thirty minutes if you want, but

11  you don't have to use it.

12    MR. DUBBIN:  Well, I will just say one more thing,

13  that could give Mr. Etkin time to rejoin the call if he's able

14  to, would just point out that notwithstanding anything in the

15  colloquy so far, VTCC cites no case law holding that claims

16  pled under Rule 10(b)(5) are derivative claims, are the claims

17  at issue that PERA asserts here and in the district court in

18  front of Judge Davila, and that leaves the TCC with no

19  colorable basis for the adversary proceeding.

20    THE COURT:  Okay.

21    MR. ETKIN:  Your Honor, it's Michael Etkin.  I

22  apologize.  I was dropped from the call, and I just was able to

23  dial back in.

24    THE COURT:  I thought you probably would be back.

25  Okay, Mr. Etkin.  Your colleague was pinch hitting for you but

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    go ahead, and make whatever argument you wish.

2    MR. ETKIN:  Okay.  Thank you, Your Honor.  I'm

3    actually going to try to answer some of the questions, and

4    address some of the issues that you laid out in what you filed

5    yesterday.  I'm going to refer to it as your issues list, Your

6    Honor.

7    THE COURT:  All right.

8    MR. ETKIN:  But first I'd like to address the initial

9    point we raised in our opposition, which is also a point the

10   Court makes in its issue list.

11   In fact, the premature nature of this motion is a

12   point the Court also made in its tentative ruling on the TCC's

13   discovery procedures motion, and a point made by both the

14   debtors' and the creditors' committee in correspondence

15   recently filed with the Court concerning a dispute over the

16   2004 applications that the TCC has filed.

17   I am at somewhat of a loss as to why the creditors'

18   committee and the debtors' positions are inconsistent with the

19   positions that they took in that correspondence to Your Honor,

20   but can't always find an explanation for everything.

21   THE COURT:  Well, what is inconsistent about it?  What

22   do you think is inconsistent --

23   MR. ETKIN:  Well --

24   THE COURT:  -- in the 2004, or directed at third

25   parties like contractors in contract with PG&E.  That's not the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   same as what we have here.

2   MR. ETKIN:  Well, here's the similarity, Your Honor.

3   For example, in Mr. Tsekerides' letter to the Court of April

4   1st, he described the debtors' position that the debtors'

5   estates and other economic stakeholders in the Chapter 11 cases

6   should not bear the costs associated with, in that situation

7   vendor subpoenas, in this situation, derivative standing to

8   file an adversary proceeding in advance of the effective date

9   of a plan where the TCC will or will not get an assignment of

10  claims that will eliminate the need for derivative standing.

11  And Mr. Tsekerides went onto say that the discovery

12  that the TCC seeks should proceed to the extent necessary or

13  appropriate, after the plan effective date, and they actually

14  noted the indication from the Court in connection with that

15  motion, that the discovery was premature, and presented

16  questionable cost shifting from the trust to the debtors, and

17  the Court noted that these assigned claims which could be the

18  vendor claims, could be the derivative claims that are the

19  subject of the RSA, that those assigned claims depend upon

20  whether the plan becomes effective or not.

21  So I see no distinction, Your Honor, with respect to

22  the circumstances here where we're less than two months away

23  from plan confirmation, and the TCC, hypothetically at best, is

24  claiming that these -- that claims can be settled out from

25  under them, which is not the case, and that's something that

PG&E Corp. and Pacific Gas and Electric Co.

1   the Court addressed in its issues list yesterday.

2          There's really no reason to move forward with this

3   right now, where the TCC's interest in these claims, whether

4   against the vendor, or whether in connection with the

5   derivative claims is contingent on the plan getting confirmed,

6   and the effective date occurring.

7          Actually, the creditors' committee took the same

8   position in Mr. Stone's letter to the Court of April 1st, and

9   again with respect to the Court's docket entry, they quoted the

10  prematurity of the process before the effective date of a plan,

11  and the questionable cost shifting from the trust to the

12  debtors appears fatal to the proposal.

13         So all I'm suggesting, Your Honor, by referencing that

14  correspondence is that it really blends into, and buttresses

15  the fact that as we argued, we believe that the motion for

16  derivative standing is premature, and would indeed be totally

17  unnecessary in the event that the plan is confirmed, the

18  effective date occurs, and then there will be a Fire Victims

19  Trust trustee in a position to evaluate what to do if anything

20  with respect to what we've indicated, and argued is a meritless

21  argument by the TCC regarding the direct versus derivative

22  dichotomy.

23         THE COURT:  But if there's a confirmed plan, and there

24  are hundreds, if not thousands of proofs of claim filed by

25  defrauded investors, then somebody has to deal with them,

PG&E Corp. and Pacific Gas and Electric Co.

1    right, and those have to be dealt with at some point.  If we

2    could have a confirmed solvent plan, then those claimants will

3    either be allowed or not allowed to have a share under 510(b)

4    claims.  That to me is much different from whether there's a

5    right to go after third parties for money owed to the estate.

6    In other words, I guess what I am having trouble in my mind is

7    your argument seems to be that I should deny the TCC's motion

8    for the same reason that I should deny the 2004, and the fact

9    is that the TCC wants to avoid your client from interfering

10   with their assertion of claims that they may have that are

11   derivative.  That's much different from whether you have claims

12   against third parties, at least in my mind, for damage done to

13   the debtor.

14          So am I missing something, or will you concede these

15   are different analyses?

16          MR. ETKIN:  Well, I think they're different analyses

17   only to the extent of the venue where the claims are pending,

18   and how the claims would necessarily get resolved.

19          I totally agree with Your Honor's observations in the

20   issues list, but because we don't have an order granting our

21   prior motion to apply 7023 to the claims against the debtor, we

22   now have a situation where individual proofs of claim are being

23   filed, and by my count thus far, there's clearly in excess of

24   1,000 claims that have been filed already, some of which may be

25   claims on behalf of multiple investors.  I just don't know the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1  answer but it appears, from the information that I've seen,

2  that certainly over 1,000 claims have been filed, and those

3  claims need to be resolved individually, collectively.  That's

4  an issue for another day.

5        But Your Honor is 100 percent correct, and it really

6  stems from the anomalous position that the TCC is taking with

7  respect to this motion.  They're saying that on the one hand,

8  the claims against the directors and officers pending before

9  Judge Davila, they'd like to shut those down, despite the fact

10  that the debtor tried to do that once before, and that effort

11  was rejected by Your Honor.

12        They're also arguing at the same time that the claims

13  that are the result of a court ordered extended claims process

14  based upon rescission or damages claims, as they've been

15  defined, and if Your Honor recalls that was a function of

16  utilizing the language from 510(b), that those claims against

17  the debtor, somehow are claims that the debtor owns, and that

18  can be enjoined by virtue of the position that the TCC is

19  taking with respect to all of those claims generally.

20        Your Honor, it's just a nonsensical position but the

21  issue that Your Honor pointed out is that if they're seeking to

22  enjoin the claims against the debtor as well, they can't just

23  look to my client who has filed an individual proof of claim.

24  They've got to deal with every investor, institutional,

25  individual, or otherwise, that files a proof of claim on or

PG&E Corp. and Pacific Gas and Electric Co.

1    before the April 16th extended bar date.  You can't just get

2    the relief from one, and not include the other in an adversary

3    proceeding that's intended to shut everyone down from

4    proceeding with claims against the estate.

5            So Your Honor, the claims against the debtor emanate

6    from the same securities violations that underlie the existing

7    complaint in the district court.

8            So to that extent, there very much similar, but the

9    fact is that you have bankruptcy claims pending in this court.

10   You have an extended bar date that's coming up on April 16th,

11   and a claims process would have to proceed when the dust

12   settles with respect to all of the filings.  So --

13           THE COURT:  Well, that's right, and they -- am I

14   right, that whether it's 1,000 proofs of claim or 10,000, the

15   debtor will have to decide what to do about it, because maybe

16   their claims are objectable, maybe they'll have to negotiate a

17   settlement, maybe something but at the end of the day, some

18   number of folks will either have or won't have claims that are

19   allowed against the debtors' estate.  That's the end of it

20   period.

21           MR. ETKIN:  That's absolutely correct, Your Honor.

22           THE COURT:  And I believe that unless your appeal of

23   my Rule 723 decision is successful, then there's nothing left.

24   I mean, you have no -- there's nothing left to do for your

25   client vis-a-vis the debtor; isn't that correct?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. ETKIN:  Well, I always like to think there's

2  something that we can try to do to make this process work, and

3  it might be a function of people feeling some regrets that we

4  weren't able to do this on a collective basis, that are now

5  compelled to do it on an individual basis, but absent some

6  resolution on a collective basis, Your Honor, you're a hundred

7  percent correct.  The debtor is going to have to deal with

8  1,000 plus independent claims.

9    THE COURT:  Well, but stated differently, am I

10  correct, Mr. Etkin, if Judge Davila, whether, procedurally, he

11  can't do it now, and procedurally it could happen later, if at

12  some point Judge Davila determines that the plaintiffs in the

13  action before him are asserting claims against the debtors,

14  then we're all done because the automatic stay, and the

15  discharge, and everything else is operative, and it's almost a

16  nonissue, and so whether Judge Davila can decide it now or

17  would have to decide it later, it seems to me that if PG&E gets

18  a discharge, and it's under -- confirming its plan, there's

19  nothing left for the plaintiffs to prosecute against the

20  corporate defendants -- the debtor defendant, and to the extent

21  that those plaintiffs have claims against Ds&Os, that's another

22  story.  But if they claims against the Ds&Os, it's because

23  they're direct claims, and also the investment bankers.

24    MR. ETKIN:  That --

25    THE COURT:  So -- okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    MR. ETKIN:  That's correct, Your Honor, and that leads

2    into another very important question that the Court posed, but

3    I didn't really hear an answer from Mr. Richardson, is that

4    there are motions to dismiss for failure to state direct

5    securities claims in the case before Judge Davila.  Those

6    claims were between nondebtors and before an Article III court.

7    Judge Davila is either going to dismiss those claims,

8    for one reason or another, because they fail to state a claim

9    under the federal securities laws, or he's going to deny the

10   motions to dismiss which necessarily means that claims have

11   been stated, not proven, but stated under the federal

12   securities laws.

13   So if this Court is being asked to deal with that very

14   same issue that's now before Judge -- and properly before Judge

15   Davila, and I think I heard Mr. Richardson acknowledge that

16   it's properly before Judge Davila, then how would you square a

17   potentially inconsistent ruling from this court on that issue?

18   Not that I believe at all that Your Honor would reach a

19   different conclusion, but the point is that that issue is

20   squarely before Judge Davila right now on the motions to

21   dismiss, and that's where it should remain, and that's where it

22   should be resolved.  So --

23   THE COURT:  Well, Mr. Etkin, let me try this question

24   on you.  What if Judge Davila determines that all of your

25   claims in his action are, in fact, against the debtors, and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    therefore, not again -- and then can't be prosecuted against

2    the D&Os, and therefore he determines that the case has to be

3    dismissed because the automatic stay has prevented the action

4    to go against the debtor, and then we're back in the same

5    point, you may -- right; I mean you're out of luck.

6         MR. ETKIN:  Well, I don't think we're going to be at

7    that point, Your Honor, because --

8         THE COURT:  No, I understand.

9         MR. ETKIN:  -- that's not an issue before Judge

10   Davila.  We're not prosecuting our claims against the debtors

11   before Judge Davila, and I don't believe, although maybe Mr.

12   Dubbin, who I think is on the phone call from Labaton, and has

13   more familiarity with the district court case than I do, but I

14   don't believe that any of the defendants in their motions to

15   dismiss have taken the position that you have no claim against

16   us, you only have a claim against the debtor.

17        What they're saying is that you failed to state a

18   claim against us, and they're asking Judge Davila to rule on

19   whether very traditional Rule 12(b)(6) motions that are made in

20   a securities case, a class action securities case, are premised

21   on violations of the securities laws.  So those are the issues

22   before Judge Davila.

23        Right now, there's nothing pending, nor could there be

24   by virtue of 362, any attempt to litigate against the debtors

25   in the district court.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1     THE COURT: Right. Okay. All right. I'm going to --

2  I don't think I need to hear from Mr. Dubbin. I think I know

3  what's going on. I'm going to let Mr. Richardson make -- well,

4  actually no, Mr. Richardson, I'm going to let you make any

5  further remarks, and I've certainly authorized the debtor to be

6  heard if he wishes to, so let's go with your --

7     MR. ETKIN: Your Honor, before --

8     THE COURT: -- Mr. Richardson.

9     MR. ETKIN: -- you move onto somebody else, there was

10  one thing I do want to raise that I think is also extremely

11  important here.

12     THE COURT: All right.

13     MR. ETKIN: Because I agree with much of what Your

14  Honor set forth in your issues list, but in terms of the so-

15  called pivoting that we've raised, and that the debtors raised

16  in its statement, I think that it's important to quote, not my

17  words, but the TCC's words, in their reply brief. And again,

18  I'm quoting here:

19     "The TCC is not arguing that a properly pleaded

20  securities claim for damages to a discrete group of securities

21  holders caused by actionable false statements that materially

22  changed the information available to potential investors could

23  be a derivative claim. Rather, the TCC is arguing that the

24  shareholder complaint does not plead such claims. It does not

25  properly plead valid securities claims because no reasonable

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    investor could've ignored the reality of the Butte fires and

2    its causation by vegetation management failures."

3           Now, Your Honor, that's where the TCC is at in their

4    last filed pleading in this case.  That's a focus of their

5    argument, and that's precisely what's before Judge Davila in

6    the district court, is whether the shareholder complaint pleads

7    claims and not proves claims, but pleads claims that are direct

8    claims under the federal securities laws, and Judge Davila is

9    going to make a call with respect to the mounds of paper that

10   have been put before him in connection with the securities

11   litigation.

12          So Your Honor, the TCC can't have it all ways, and the

13   fact is that this case is squarely before the district court as

14   it relates to the nondebtor defendants.  That's where it should

15   be resolved.

16          If the TCC at some point with the help of a seasoned

17   trustee, such as Justice Trotter, makes a determination at the

18   point in time where they've actually been assigned claims, and

19   where they do have an interest, if they make a judgment, that

20   they want to commence litigation, I can't stop them.  I think

21   it would be foolish, but I can't stop them, but now is not the

22   time.

23          And Your Honor, as you pointed out, and as you

24   indicated was your inclination, denying the motion, waiting for

25   the extended claims deadline to pass, and for Judge Davila to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    rule, and for the assignment of claims to the TCC to become

2    effective, that's on page 4 of your issues list, is what your

3    inclination was, and Your Honor, I think that inclination,

4    based upon all of the arguments and the facts here, is spot on.

5        THE COURT:  Okay.  Thank you.

6        Mr. Richardson, do you want to close?  I mean, not

7    close, be heard, and then I am going to hear from the debtor.

8        MR. RICHARDSON:  Your Honor, there's four things I'd

9    like to say.  First, with respect to the 2004 exam argument

10   that was raised, there actually is a great deal of similarity.

11   The TCC signed an RSA in early December that these claims would

12   be assigned to the Fire Victims Trust within nine months by the

13   end of August.  Nine months is an incredibly long time for

14   litigation claims to remain unfiled, or unpursued, or

15   unprotected.  Statutes of limitations can pass, insurance

16   issues can be unprotected, or competing claims can be settled

17   out from under us and insurance proceeds disappear.

18       Now we're learning that the effective date may be

19   December 31st, it may be next year.  You can't sit back and

20   just hope that by the time the Fire Victims Trust is formed,

21   that maybe those claims will still have value.  We have to act

22   now.  We have to ensure that the buyer -- the value that goes

23   to the Fire Victims Trust is the value that we negotiated.

24       Second --

25       THE COURT:  Wait.  Where's the statute of limitations

PG&E Corp. and Pacific Gas and Electric Co.

1   issue?  We got two years on the house from Congress.

2            MR. RICHARDSON:  The statute --

3            THE COURT:  You'll get two free years --

4            MR. RICHARDSON:  Yes.

5            THE COURT:  -- when the petition is filed, a little

6   over a year-and-three months ago.

7            MR. RICHARDSON:  It expires on January --

8            THE COURT:  The statute --

9            MR. RICHARDSON:  -- 29th, 2021.

10           THE COURT:  Yeah, I know.

11           MR. RICHARDSON:  And at this point, we don't know if

12  the Fire Victims Trust will actually be in place by then, or

13  will it be placed just a couple of weeks.  We've been trying to

14  take discovery into those claims for three months, and we still

15  haven't gotten most of the documents.  We can't expect the Fire

16  Victims Trust to get up to speed if all it had was a few weeks,

17  and that's why we're trying to act now --

18           THE COURT:  Well, you're arguing -- but you're

19  arguing -- Mr. Richardson, you're arguing the 2004 issue that's

20  not before me on this motion.

21           MR. RICHARDSON:  Yes.

22           THE COURT:  I realize that it's before me.

23           MR. RICHARDSON:  But it was --

24           THE COURT:  And I am dealing with it.

25           MR. RICHARDSON:  It was raised.

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  I will deal with it shortly.

2          MR. RICHARDSON:  But it was raised in the argument,

3   and the reason I raised it is because it's the same motivation,

4   and you're trying to protect the value of these assets of the

5   estate, so that they're still valuable when the Fire Victims

6   Trust finally gets established.  The --

7          THE COURT:  But the issue on standing, and the issue

8   about -- that you've got all these other issues is so -- that

9   is not the 2004 exam issue.  All right.  That was your first

10  point.  What's the second point?

11         MR. RICHARDSON:  The second point is the derivative

12  issue has not been in front of Judge Davila in a motion to

13  dismiss.  When he entered the ruling on that motion to dismiss,

14  if he denies it, it's simply a finding that the complaint

15  satisfied Rule 12(b)(6) on allegations that are taken as true,

16  and is not finding that they're absolutely valid direct --

17         THE COURT:  Well, it's --

18         MR. RICHARDSON:  -- securities claims --

19         THE COURT:  -- Mr. Richardson --

20         MR. RICHARDSON:  -- to satisfy a small class.

21         THE COURT:  -- findings are based upon facts.  It is

22  not a finding at all.  It's a legal conclusion.  So it's not a

23  finding.  He either grants the motion to dismiss or denies it.

24  He doesn't make any findings.

25         MR. RICHARDSON:  I appreciate the correction, Your

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    Honor, but that is my point.  Because there are no findings,

2    the directors and officers could file a motion for summary

3    judgment down the road, it takes a position they haven't yet

4    taken on that motion to dismiss, pertaining to the derivative

5    nature of the damage that was caused by the misrepresentations.

6          THE COURT:  Okay.

7          MR. RICHARDSON:  This concept that a motion to dismiss

8    overlaps with the request that we seek to bring was raised on

9    Friday afternoon, and it would deeply trouble me if it became a

10   major part of the Court's reasoning without us having an

11   opportunity to address case law that is already addressed in

12   these precise issues.

13         The relief that is brought before a court doesn't

14   conflict with motions to dismiss, and there are cases published

15   in the Southern District of New York that deal with that

16   precise issue where they reach that conclusion, and if the

17   Court is going to make a ruling based upon the debtors'

18   concerns raised on Friday, I request the opportunity to brief

19   those cases, so the Court can make a decision based on

20   understanding of what the law is.

21         And finally, if the Court is concerned that we're

22   asking for a ruling on the individual claims filed against the

23   estate, we would be happy to drop that aspect of the complaint.

24   The only relief that we require to protect fire victims is the

25   injunctive relief and declaratory relief relating to the claims

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1 | that are pending in the district court. The debtor could deal

2 | with the individual claims after the confirmation date. It's

3 | not an issue for the TCC.

4 | THE COURT: So what you're saying is you would narrow

5 | your complaint to be an action to enjoin the plaintiffs from

6 | going against the nondebtor defendants in the district court,

7 | right?

8 | MR. RICHARDSON: Correct, and asking for a --

9 | THE COURT: Why don't you --

10 | MR. RICHARDSON: -- finding --

11 | THE COURT: -- why don't you ask to intervene in the

12 | district court action, and ask the district judge to do it?

13 | MR. RICHARDSON: Well, perhaps we will have to, but it

14 | is traditionally done -- it's been done many times in

15 | bankruptcy courts, and I'd say there are twelve published

16 | opinions in Madoff --

17 | THE COURT: I know. I know.

18 | MR. RICHARDSON: -- that deal with this issue --

19 | THE COURT: -- I don't need to count them. How many

20 | Ninth Circuit decisions are in your twelve? Okay. I --

21 | MR. RICHARDSON: None against us, Your Honor. None

22 | against us.

23 | THE COURT: Okay. You want -- your proposal is to

24 | revise your complaint again, you'd have to show me an amendment

25 | if I were to get to there, to enjoin the action against --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    enjoin the plaintiffs from proceeding against the nondebtor

2    defendants.

3            MR. RICHARDSON:  We would remove the second cause of

4    action asking for declaratory relief about the proofs of claim,

5    and we would remove the proofs of claim from the third cause of

6    action which asks for injunctive relief.

7            THE COURT:  Okay.  I'll take that into account when I

8    decide what to do.

9            MR. RICHARDSON:  Thank you, Your Honor.

10           THE COURT:  Okay, Mr. Richardson.  Thank you, Mr.

11   Richardson for your time.

12           Mr. Slack, do you wish to be heard?

13           MR. SLACK:  Yeah, briefly, Your Honor.  Richard Slack,

14   Weil, Gotshal for the debtors.

15           You know, unless Your Honor has questions, I do intend

16   to be brief.  We really had set out two issues and the first of

17   those really only arises if the Court is inclined to reverse

18   its tentative, and grants the motion, and if it does that, it's

19   the debtors' position that in the order, it should be

20   consistent with the language in the stipulation between the

21   debtor and the TCC, and in particular, in paragraph 2 of the

22   stipulation, the TCC agrees that:

23           "The foregoing standing and prosecution shall be

24   limited to the sole purpose of a determination as to whether

25   the claims are derivative claims that belong to the debtors'

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1    estate, and if so, whether the pending action in the pursuit of

2    the securities proof of claim should be enjoined."  And

3    paragraph 3 goes and confirms those limitations.

4         And it's our position that the order again if Your

5    Honor is inclined to reverse the tentative should explicitly

6    include that limitation.

7         I would point out, Your Honor, that I was prepared to

8    point to the same language that Mr. Etkin talked to from the

9    TCC's reply because it -- that's language that concerned us,

10   and that quite frankly, caused us to file our statement because

11   whether or not a complaint alleges in particularized

12   allegations of direct harm to shareholders is not a question

13   about whether that complaint is properly pleaded.  It literally

14   is a characterization of the complaint.

15        And so when the TCC says that they want to bring

16   motion to dismiss kinds of issues before the Court on its

17   adversary complaint, that goes beyond what the debtors have

18   agreed to in the stipulation.  So that's point 1, Your Honor.

19        Again, and point 2 very simply, and I won't belabor it

20   is again, if Your Honor is going to reconsider the tentative

21   and grant it, it is important to us that the Court not reach

22   any insurance issues.  If Your Honor has any questions on that,

23   I would be happy to answer it but we think those are entirely

24   not relevant to the issue before the Court, and we set out the

25   reasons for that in our papers.

PG&E Corp. and Pacific Gas and Electric Co.

1          THE COURT:  Okay.

2          MR. SLACK:  So with that, Your Honor, unless you

3    have -- I was going to say, unless you have questions for me,

4    those are the points that I wanted to raise.

5          THE COURT:  I have no questions.  Thank you, Mr.

6    Slack.

7          And Mr. Bray, do you wish to be heard from the

8    committee's point of view?

9          MR. BRAY:  Your Honor, we submitted a pleading.  I

10   mean we essentially agree with the stipulation that was entered

11   into on this issue granting the TCC the standing, solely to

12   pursue the derivative action.

13         Other than that, we have no comments, Your Honor, and

14   of course we'll follow whatever ruling you wish to enter.

15         THE COURT:  Okay.  All right.  This has been a long

16   morning, I --

17         MR. RICHARDSON:  Your Honor, David Richardson, may I

18   just --

19         THE COURT:  -- will conclude the hearing unless

20   someone wants to be heard.  I'm sorry, yes, yes?

21         MR. RICHARDSON:  Your Honor, this is David Richardson

22   again.

23         May I just respond to what Mr. Slack said, and it's

24   actually purely with agreement.  We stand by the stipulation

25   that we filed with the debtors.  We are more than happy to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Co.

1   proceed under the limitations that are in that stipulation, and

2   as I mentioned earlier, we would even be fine removing the

3   reference that's in the proofs of claim, and we don't need

4   relief on those in the same way as we do against the pending

5   action in order to protect fire victims' rights.

6           THE COURT:  Okay.  Thank you, Mr. Richardson.

7           MR. STONE:  Your Honor?

8           THE COURT:  Anyone else?  Yes.

9           MR. STONE:  Yes, Your Honor.

10          THE COURT:  Who is that?

11          MR. STONE:  This is Alan Stone, Milbank, LLP on behalf

12  of the official committee of unsecured creditors.

13          THE COURT:  Yes, sir.

14          MR. STONE:  There was a good deal of discussion about

15  the 2004 subpoenas, and Your Honor alluded to the fact that you

16  would be dealing with that soon.  We simply wanted to make sure

17  it was still on the Court's radar and say that obviously the

18  comments today were a little strange in the context of another

19  argument, and I think Your Honor has our position in the

20  letters that we've written to the Court.

21          THE COURT:  I have your position.  I can't make up

22  many good excuses for having matters under submission when I've

23  got all this spare time, but I don't have so much spare time.

24  I've been reading a lot of stuff that gets filed at the last

25  minute, but I can assure you that on my to-do list is the open

PG&E Corp. and Pacific Gas and Electric Co.

1  issue of the 2004s, and I hope to have something very shortly

2  on that.

3          MR. STONE:  Thank you, Your Honor.

4          THE COURT:  Unless anyone on the call wants to be

5  heard on any subject, I will wish you all good luck, and good

6  well, good health, and our next scheduled hearing is on the

7  29th, I believe, or 27th, and my intention is to try again to

8  get the video up and running by then.  I think we may have

9  solved some of the problems that we had the last time I tried

10  unsuccessfully.  So I will look forward to hearing from you on

11  the 29th, pardon me.

12          And Mr. Karotkin, you will take under advisement, the

13  question of whether we should schedule some other kind of

14  hearing to deal with these preliminary matters.  You don't need

15  to respond now.  All right.

16          MR. KAROTKIN:  Yes, Judge.

17          THE COURT:  All right.  Thank you again.

18  Congratulations on getting the Butte matter out of the way, and

19  the situations with Justice Trotter and Ms. Yanni, and the

20  motions for standing issue is submitted for decision.  Thank

21  you all for your time.

22          MR. KAROTKIN:  Thank you.

23          THE COURT:  Operator, we can conclude the call.  Thank

24  you for standing by.

25          (Whereupon these proceedings were concluded at 11:46 AM)

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                        I N D E X

2    RULINGS:                                    PAGE LINE

3    Trotter and Yanni Retention Applications are   22     6

4    Approved

5    TCC Standing Motion is Granted                 39    10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1          C E R T I F I C A T I O N

2

3     I, Hana Copperman, certify that the foregoing transcript is a

4     true and accurate record of the proceedings.

5

6     *Hana Copperman*

7

8     _____

9     /s/ HANA COPPERMAN, CET-487

10

11    eScribers

12    7227 N. 16th Street, Suite #207

13    Phoenix, AZ 85020

14

15    Date:  April 16, 2020

16

17

18

19

20

21

22

23

24

25



**A**

**AB (1)**
30:20
**ability (3)**
25:18;26:22;30:18
**able (5)**
26:8;52:25;54:13,22;
61:4
**ABRAMS (7)**
40:3,6,8,8,15;41:8,8
**absent (1)**
61:5
**absolutely (7)**
29:10;31:13;41:16;
46:17;54:6;60:21;
68:16
**accept (3)**
10:3;11:9,11
**accepted (1)**
41:10
**accepting (1)**
48:19
**accepts (1)**
48:15
**accomplish (2)**
30:4,5
**according (1)**
11:7
**account (9)**
31:7,8;32:16,17,20;
33:1,16;39:16;71:7
**accrued (4)**
13:15,16;39:13,18
**achieve (1)**
21:23
**acknowledge (2)**
45:22;62:15
**acknowledgement (1)**
22:3
**Act (4)**
44:24;49:18;66:21;
67:17
**action (17)**
37:17;48:1;49:21;
50:1,5;61:13;62:25;
63:3,20;70:5,12,25;
71:4,6;72:1;73:12;74:5
**actionable (3)**
45:21,23;64:21
**actions (4)**
25:18;40:20;41:7;
44:21
**activity (1)**
11:6
**actual (2)**
17:3;41:12
**actually (14)**
6:3;7:2,15;10:8;17:4,
22;55:3;56:13;57:7;
64:4;65:18;66:10;
67:12;73:24

**additional (4)**
8:16;9:7;53:1;54:3
**address (8)**
7:23;43:11;44:2,6;
47:5;55:4,8;69:11
**addressed (7)**
43:21;44:7;47:10;
49:10,10;57:1;69:11
**adequacy (1)**
16:23
**adequately (1)**
17:12
**administrative (1)**
13:1
**administrator (2)**
14:10,14
**advance (3)**
25:14;37:7;56:8
**Adventist (2)**
25:7;26:16
**adverbs (1)**
37:19
**adversary (9)**
47:3;49:21,23;50:18;
51:6;54:19;56:8;60:2;
72:17
**advisement (1)**
75:12
**advisor (3)**
6:24;7:6,12
**advisors (1)**
7:14
**advisory (1)**
30:6
**affect (2)**
52:17;53:1
**affirmative (1)**
9:23
**affirmatively (1)**
24:6
**affirmed (1)**
49:11
**afternoon (3)**
20:22;43:14;69:9
**again (27)**
5:9;8:12;9:18;13:3,
7;14:1;17:10,12,24;
21:15;26:12;27:23;
33:11;34:13;38:25;
41:7;46:21;57:9;63:1;
64:17;70:24;72:4,19,
20;73:22;75:7,17
**against (37)**
10:6,14,18;49:25;
50:18;52:12,17,21;
53:2;57:4;58:12,21;
59:8,16,22;60:4,5,19;
61:13,19,21,22;62:25;
63:1,4,10,15,16,18,24;
69:22;70:6,21,22,25;
71:1;74:4
**ago (1)**
67:6

**agree (5)**
9:2;19:20;58:19;
64:13;73:10
**agreed (11)**
8:13,22;9:8,24;18:8;
19:24;20:2;23:11;
38:17;39:7;72:18
**agreed-upon (1)**
25:16
**agreeing (2)**
8:16;42:3
**agreement (5)**
14:16;16:10;17:3;
35:19;73:24
**agreements (3)**
28:18;29:13,21
**agrees (1)**
71:22
**aground (1)**
11:12
**ahead (4)**
24:9;35:1;36:23;
55:1
**air (1)**
27:11
**Alan (1)**
74:11
**alignment (1)**
15:23
**allegation (4)**
44:10,20;45:25;
48:13
**allegations (7)**
45:8,15;48:11,19,20;
68:15;72:12
**alleged (2)**
45:9;46:12
**alleges (3)**
44:19;45:5;72:11
**allowed (3)**
58:3,3;60:19
**allowing (1)**
52:16
**alluded (1)**
74:15
**almost (3)**
18:13;37:17;61:15
**Alsup (2)**
36:2,6
**although (3)**
7:14;8:7;63:11
**always (3)**
35:6;55:20;61:1
**amended (1)**
29:16
**amendment (1)**
70:24
**amount (11)**
9:7,10;15:14;18:5,
11,12;32:19;33:2,3;
34:15,15
**amounts (2)**
8:1;22:22

**analyses (2)**
58:15,16
**analysis (7)**
15:6;45:16,24;48:17,
21
**announce (1)**
44:13
**anomalous (1)**
59:6
**anticipate (2)**
32:18;42:24
**anticipation (1)**
31:20
**anyplace (1)**
38:22
**apologies (1)**
53:13
**apologize (7)**
12:11,12;13:5;19:18;
23:13;38:6;54:22
**appeal (1)**
60:22
**appear (1)**
23:19
**appearance (2)**
33:19;42:16
**appearing (1)**
5:21
**appears (4)**
6:24;44:20;57:12;
59:1
**applaud (1)**
37:14
**application (1)**
17:3
**applications (3)**
15:15;16:19;55:16
**applies (2)**
43:20;45:24
**apply (4)**
43:17,18;52:7;58:21
**appointment (1)**
5:17
**appreciate (5)**
21:14,15;26:17;
39:23;68:25
**approach (1)**
30:24
**appropriate (7)**
16:3;26:4,10;27:11;
29:19;52:15;56:13
**approval (2)**
25:11,17
**approve (7)**
13:12;22:6;32:3;
34:22;35:24;39:10;
42:4
**approved (4)**
6:6;28:18;35:17,23
**approves (1)**
31:12
**approving (2)**
34:9;41:11

**approximate (1)**
29:2
**approximately (4)**
32:9,18,19,20
**APRIL (5)**
5:1;56:3;57:8;60:1,
10
**argue (2)**
46:16;47:1
**argued (2)**
57:15,20
**arguing (7)**
49:9;59:12;64:19,23;
67:18,19,19
**argument (13)**
46:1,3,6,8;47:1;51:3;
55:1;57:21;58:7;65:5;
66:9;68:2;74:19
**arguments (1)**
25:13;46:7;66:4
**arises (1)**
71:17
**Arnold (1)**
25:3
**around (1)**
33:13
**arranging (1)**
28:5
**Article (1)**
62:6
**aside (1)**
31:25
**aspect (1)**
69:23
**asserting (1)**
61:13
**assertion (1)**
58:10
**asserts (1)**
54:17
**assets (4)**
29:12;51:11,12;68:4
**assigned (4)**
56:17,19;65:18;
66:12
**assignment (2)**
56:9;66:1
**assistance (1)**
14:5
**associated (2)**
40:17;56:6
**assume (5)**
11:8;13:13;41:25;
42:4;50:12
**assure (3)**
28:11;31:1;74:25
**AT&T (2)**
25:5,7
**attached (1)**
7:2
**attaches (1)**
23:22
**attempt (2)**

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 78
of 91

30:6;63:24
**attend (1)**
42:12
**attention (2)**
26:7,9
**attorney (2)**
33:12;35:13
**audio (1)**
28:9
**August (2)**
17:17;66:13
**authority (4)**
52:5,6,6,9
**authorize (1)**
38:1
**authorized (2)**
15:9;64:5
**automatic (2)**
61:14;63:3
**available (2)**
21:8;64:22
**avoid (5)**
29:17,25;36:20;
37:22;58:9
**avoids (1)**
37:15
**aware (3)**
28:9;31:22,22
**away (1)**
56:22

**B**

**baby (1)**
40:1
**back (8)**
8:11;9:3,6;31:20;
54:23,24;63:4;66:19
**backdoor (1)**
30:6
**backstop (5)**
29:13,20,25;30:18;
42:1
**backup (1)**
33:11
**Baker (4)**
14:18;29:6;34:6;
42:21
**bankers (1)**
61:23
**bankruptcy (8)**
15:6;16:20;48:17;
51:25;52:1,13;60:9;
70:15
**bar (2)**
60:1,10
**based (11)**
7:20;18:10;43:20,25;
45:1;54:5;59:14;66:4;
68:21;69:17,19
**basic (1)**
15:6
**basically (4)**

10:9,24;11:25;18:17
**basis (6)**
26:5;50:14;54:19;
61:4,5,6
**bear (1)**
56:6
**became (1)**
69:9
**become (2)**
28:9;66:1
**becomes (1)**
56:20
**bed (1)**
40:1
**begin (1)**
46:19
**begun (1)**
12:1
**behalf (5)**
21:12;25:6;38:7;
58:25;74:11
**behind (1)**
42:6
**Behlmann (4)**
42:15,17;53:15,16
**belabor (2)**
28:3;72:19
**believes (1)**
16:12
**belong (3)**
38:20,21;71:25
**beneficiaries (1)**
15:17
**benefit (4)**
15:17;31:7;32:16,21
**Benjamin (1)**
25:2
**best (3)**
30:24;49:22;56:23
**better (5)**
14:7;15:5,24;16:18;
17:16
**beyond (2)**
44:5;72:17
**billion (13)**
14:22;15:2;28:23,23,
24,25;29:2;32:11,14,
15,17;33:1;34:15
**billion-dollar (1)**
29:8
**binding (2)**
50:17,19
**bit (3)**
6:22;8:10;31:23
**bland (2)**
44:16;45:19
**blends (1)**
57:14
**blind (1)**
20:21
**block (1)**
17:10
**bold (1)**

44:16
**bolds (4)**
45:6;52:5,8,18
**borne (1)**
9:14
**both (7)**
6:4;7:25;18:23;
19:25;35:23;45:15;
55:13
**bottom (1)**
36:24
**bound (1)**
48:18
**bow (1)**
8:5
**BRAY (19)**
22:12,14,14,15,16,
17,18,20;23:6,14,16,
17,18;24:18,20,22,24;
73:7,9
**brief (8)**
40:13;43:13,16;
49:12;52:4;64:17;
69:18;71:16
**briefed (2)**
43:12;45:16
**briefly (5)**
19:10;38:7;40:16;
54:4;71:13
**briefs (3)**
42:25;49:15,16
**bring (4)**
26:7;50:12;69:8;
72:15
**bringing (1)**
26:9
**broader (2)**
9:14;48:21
**broken (1)**
5:25
**brought (2)**
40:22;69:13
**Brown (4)**
14:9,11;18:23,23
**BrownGreer (12)**
7:19,24,25;8:2,6,20;
9:10;12:24;18:22;20:6;
23:10,24
**budget (10)**
7:1;12:21,23;13:1,
14;17:14,23;18:9,18;
23:22
**budgeted (1)**
17:16
**budgeting (2)**
13:5,6
**business (3)**
11:24;24:14;39:18
**busy (1)**
12:7
**Butte (22)**
5:18;27:22;29:9;
32:3,21;33:4,7,9;34:9,

21;35:7,13,16,17,19;
36:3;39:11,12,20;
41:12;65:1;75:18
**button (1)**
53:13
**buttresses (1)**
57:14
**buyer (1)**
66:22

**C**

**calculated (1)**
28:24
**calculation (2)**
42:8,9
**calendar (2)**
26:23;27:4
**CALIFORNIA (3)**
5:1;18:15,15
**Call (2)**
5:3;19:17;21:1;
22:10;33:23;42:10;
54:13,22;63:12;65:9;
75:4,23
**called (2)**
5:11;64:15
**Calling (2)**
5:9;19:17
**came (3)**
16:14;30:14;33:15
**Camp (1)**
35:17
**can (48)**
5:7;6:11,18,19;7:22,
23;8:15,21;19:19,24;
21:4;24:12,14;26:12,
13;27:4;28:8;29:15,16;
30:11,11,11,12;42:5;
43:19;44:9;45:18;
47:23;48:19,20,21;
49:1,16;50:15;51:25;
52:1;53:11,12,22;
56:24;59:18;61:2,16;
66:15,16,16;69:19;
74:25;75:23
**cap (1)**
29:8
**care (2)**
13:8;14:24
**careful (2)**
30:8;36:4
**carefully (1)**
7:18
**cares (1)**
33:14
**case (20)**
29:22;39:1;43:20;
48:8;49:12,16;51:17,
18;52:2;54:2,15;56:25;
62:5;63:2,13,20,20;
65:4,13;69:11
**cases (10)**

21;35:7,13,16,17,19;
36:3;39:11,12,20;
41:12;65:1;75:18
**28:12;29:18;30:25;**
43:17;49:10;51:22;
52:18;56:5;69:14,19
**cash (1)**
29:3
**cat (1)**
12:16
**Cathy (3)**
6:5;11:25;23:10
**caught (1)**
23:14
**causation (1)**
65:2
**cause (2)**
71:3,5
**caused (4)**
44:17;64:21;69:5;
72:10
**cease (1)**
10:17
**certain (4)**
22:2;25:8;33:17;
43:10
**certainly (8)**
13:14;21:4;22:24;
26:25;31:5;34:13;59:2;
64:5
**cetera (1)**
17:2;19:22
**challenge (2)**
25:18;38:15
**change (1)**
11:22;40:13
**changed (2)**
6:22;64:22
**channeled (1)**
31:9
**Chapter (2)**
30:20;56:5
**characterization (1)**
72:14
**charge (1)**
18:8
**charges (1)**
41:4
**check (1)**
34:20
**chosen (1)**
47:12
**Circuit (2)**
49:11;70:20
**circulate (1)**
42:7
**circumstances (2)**
20:24;56:22
**cites (1)**
54:15
**citing (1)**
49:12
**Civil (4)**
36:11,11;37:1,10
**claim (38)**
32:21;33:5;36:2,10;

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 79
of 91

44:24,25;45:1,9,11,12,
17,18,21,23;46:6,14,
16;48:5;50:11,15;51:8,
17;52:12;57:24;58:22;
59:23,25;60:14;62:8;
63:15,16,18;64:20,23;
71:4,5;72:2;74:3
**claimants (5)**
25:24;29:6;31:8;
50:22;58:2
**claimants' (2)**
29:1;32:12
**claiming (1)**
56:24
**claims (91)**
8:1;13:5;14:10,13,
16;17:19;25:18,22;
26:5;28:22;29:7;31:10;
33:5;37:10,10;38:16,
20;43:10;47:16;51:7,
12,15;52:21;54:4,5,15,
16,16;56:10,17,18,18,
19,24;57:3,5;58:4,10,
11,17,18,21,24,25;
59:2,3,8,12,13,14,16,
17,19,22;60:4,5,9,11,
16,18;61:8,13,21,22,
23;62:5,6,7,10,25;
63:10;64:24,25;65:7,7,
7,8,18,25;66:1,11,14,
16,21;67:14;68:18;
69:22,25;70:2;71:25,
25
**clarification (6)**
6:16;10:1;34:11,13;
35:2;40:24
**class (6)**
10:5;11:8;45:17;
53:22;63:20;68:20
**clear (8)**
10:12;13:12;25:20;
29:5,10,12;35:4;38:24
**clearer (1)**
10:9
**clearly (2)**
44:9;58:23
**CLERK (1)**
5:4
**client (4)**
25:7;58:9;59:23;
60:25
**clients (4)**
25:24;30:15;39:6,7
**close (4)**
24:14;41:17;66:6,7
**closely (1)**
21:13
**Code (7)**
35:25;36:1,7,11,11,
12,12
**codes (1)**
36:11
**coincidence (1)**

18:22
**colleague (1)**
54:25
**collective (2)**
61:4,6
**collectively (1)**
59:3
**colloquy (1)**
54:15
**colorable (1)**
54:19
**coming (2)**
37:14;60:10
**commence (2)**
30:12;65:20
**comment (2)**
38:14;40:17
**comments (5)**
15:21;19:11;20:20;
73:13;74:18
**commitment (5)**
21:17;22:22;23:8;
44:15;45:20
**commitments (2)**
23:1;29:24
**committed (1)**
19:21
**committee (9)**
17:5;22:16;43:8;
49:1,1;55:14,18;57:7;
74:12
**committee's (1)**
73:8
**communicate (1)**
24:10
**company (5)**
31:23;38:21;39:4;
41:6;51:24
**comparing (1)**
6:20
**compelled (2)**
28:3;61:5
**compensated (1)**
13:18
**competing (2)**
52:7;66:16
**complain (1)**
8:13
**complaint (21)**
44:11,19,20;45:3,4,
24;47:21;48:11,21;
49:2;60:7;64:24;65:6;
68:14;69:23;70:5,24;
72:11,13,14,17
**complaints (1)**
45:8
**completely (4)**
28:6,6;30:16,16
**complex (1)**
17:19
**complexity (1)**
16:9
**complicated (1)**

13:20
**complimented (1)**
38:25
**complimenting (1)**
31:17
**concede (1)**
58:14
**concept (2)**
32:2;69:7
**concern (5)**
22:22;25:10;43:21;
44:2;51:14
**concerned (6)**
25:23;40:16,21;
49:13;69:21;72:9
**concerning (1)**
55:15
**concerns (3)**
24:12;43:15;69:18
**conclude (4)**
27:16;41:23;73:19;
75:23
**concluded (2)**
29:22;75:25
**conclusion (7)**
10:4;28:12;29:17;
31:3;62:19;68:22;
69:16
**conditions (1)**
20:18
**confer (1)**
26:22
**conferring (1)**
27:10
**confessed (1)**
39:4
**confirm (5)**
8:15;10:16;19:19,24;
30:11
**confirmation (18)**
10:4,15,22;11:1,3;
16:1,11;17:6;22:23;
25:14;26:10,25;27:5;
51:15,21;52:19;56:23;
70:2
**confirmed (12)**
10:19;11:7,9,10,16;
15:7;17:10;24:7;57:5,
17,23;58:2
**confirming (1)**
61:18
**confirms (1)**
72:3
**conflict (2)**
44:9;69:14
**conflicted (1)**
48:20
**Congratulations (1)**
75:18
**Congress (1)**
67:1
**connection (8)**
14:14,15;19:1,3;

26:11;56:14;57:4;
65:10
**connections (1)**
5:9
**consensually (3)**
26:1,8,12
**consent (1)**
50:16
**consideration (1)**
51:19
**consistent (2)**
41:13;71:20
**construed (1)**
15:21
**context (2)**
21:16;74:18
**contingency (1)**
11:4
**contingent (1)**
57:5
**continue (1)**
52:16
**continued (2)**
44:15;45:20
**continuing (2)**
12:1;37:22
**contract (1)**
55:25
**contractors (1)**
55:25
**control (1)**
18:6
**convince (2)**
43:15,24
**corporate (1)**
61:20
**Corporation (2)**
5:4;44:14
**correction (1)**
68:25
**correctly (1)**
11:11
**correspondence (3)**
55:14,19;57:14
**cost (2)**
56:16;57:11
**costs (1)**
56:6
**counsel (6)**
5:15;14:9;22:16;
25:5;26:20;27:10
**count (3)**
49:16;58:23;70:19
**counted (1)**
37:19
**County (14)**
32:3,21;33:5,7,9,12;
34:9,21;35:13,16,18;
39:11,20;41:12
**couple (5)**
9:4;31:18,19;40:9;
67:13
**course (5)**

18:11,19;28:20;
31:21;73:14
**Court (244)**
5:3,5,6,24;6:2,10,12,
14,18;7:4,9,16;8:10,23;
9:1,18;10:16,18,23,25;
11:3,14,17;12:7,12,15,
18,21;13:2,6,14;4,21;
15:1,5,18;16:16,17,21;
17:1,4,7;18:2,21;19:1,
4,6,8,13,16,19;20:4,13,
15,17,19;21:14;22:9,
15,17,19;23:3,16,18;
24:20,23,25;25:4;
26:15;27:16,21;28:14,
16,19;31:15,17;32:7,
13;33:9;34:1,12;35:14;
36:14,16,19,22;37:12,
16;38:3,5,8,10,12,19,
25;40:4,7,11;41:8,20;
42:8,14,18,22;43:5,13,
15,16,19,22,24;44:5;
45:22;46:1,9,13,21,23;
47:2,4,7,8,9,14,19,22,
24;48:3,7,9,13,14,14,
15,18,23,25;49:4,8,8,
13,15;50:2,4,10,17,22,
25;51:2,4,23,25;52:1,3,
22;53:3,7,15,18,20,24;
54:8,10,17,20,24;55:7,
10,12,15,21,24;56:3,
14,17;57:1,8,23;59:13;
60:7,9,13,22;61:9,25;
62:2,6,13,17,23;63:8,
13,25;64:1,8,12;65:6,
13;66:5,25;67:3,5,8,10,
18,22,24;68:1,7,17,19,
21;69:6,13,17,19,21;
70:1,4,6,9,11,12,17,19,
23;71:7,10,17;72:16,
21,24;73:1,5,15,19;
74:6,8,10,13,20,21;
75:4,17,23
**courtroom (1)**
24:12
**courts (2)**
43:19;44:22;52:14,
20;70:15
**Court's (8)**
25:11,17;26:9;43:11;
44:2;57:9;69:10;74:17
**cover (1)**
29:9
**covers (2)**
44:8;51:13
**created (1)**
28:7
**creating (1)**
14:12
**credentials (1)**
16:18
**creditors (3)**
48:12;52:17;74:12

Case: 19-30088     Doc# 6782     Filed: 04/16/20     Entered: 04/16/20 12:46:45     Page 80
of 91

creditors' (3)
55:14,17;57:7
criminal (6)
34:21;35:7,22;39:5,
20;40:21
criteria (1)
26:4
critical (3)
12:18;28:19;30:19
criticism (1)
28:5
criticized (2)
30:23;36:2
CRP (1)
14:15
crystal (1)
38:24
culpa (1)
31:2
cut (1)
6:15

**D**

D&O (2)
51:12,13
D&Os (1)
63:2
damage (2)
58:12;69:5
damages (3)
46:10;59:14;64:20
dark (1)
9:20
database (2)
7:24;8:20
date (20)
11:2;15:18;16:22;
26:23;27:3,4;30:20;
31:9;32:9,15,24;56:8,
13;57:6,10,18;60:1,10;
66:18;70:2
David (3)
42:20;73:17,21
Davila (21)
49:18;54:5,18;59:9;
61:10,12,16;62:5,7,15,
16,20,24;63:10,11,18,
22;65:5,8,25;68:12
day (6)
17:17,17;21:8;24:14;
59:4;60:17
days (8)
11:19,24;12:4;20:6,
9;27:2;32:9,18
deadline (2)
12:4;65:25
deal (15)
33:9;43:17;51:5;
53:6;57:25;59:24;61:7;
62:13;66:10;68:1;
69:15;70:1,18;74:14;
75:14

dealing (6)
26:24;41:10;42:1;
50:9;67:24;74:16
deals (1)
23:23
dealt (1)
58:1
debates (1)
40:18
debtor (30)
5:15;6:2,6,19;8:16,
21;9:8,8,9;19:20;
21:21;41:10;43:13;
58:13,21;59:10,17,17,
22;60:5,15,25;61:7,20;
63:4,16;64:5;66:7;
70:1;71:21
debtors (9)
5:18;7:25;9:6;19:24;
26:2;27:25;28:4;29:10,
17;30:7,19,23;44:13;
50:15;56:16;57:12;
61:13;62:25;63:10,24;
64:15;71:14;72:17;
73:25
debtors' (14)
28:20,21;39:10;
41:12;43:9,15;55:14,
18;56:4,4;60:19;69:17;
71:19,25
deceived (2)
45:10,13
December (2)
66:11,19
decide (7)
43:4,5;47:25;60:15;
61:16,17;71:8
decision (3)
60:23;69:19;75:20
decisions (2)
52:10;70:20
declaration (2)
13:21;17:21
declarations (1)
18:1
declaratory (1)
43:9;69:25;71:4
deducted (2)
16:2;23:12
deeply (1)
69:9
defendant (1)
61:20
defendants (11)
46:3,25;47:1,25;
50:12,19;61:20;63:14;
65:14;70:6;71:2
deferred (1)
24:4
defined (1)
59:15
definition (3)
36:1,10;38:16

definitions (1)
39:9
defrauded (1)
57:25
degree (2)
21:25;33:17
demonstrate (2)
44:15;45:20
demonstrated (1)
44:10
demonstrates (1)
45:25
denied (2)
47:14;48:4
denies (2)
68:14,23
deny (4)
6:15;58:7,8;62:9
denying (1)
65:24
depend (1)
56:19
deposited (2)
28:25;29:3
deputy (1)
24:12
derivative (26)
44:6,21;45:1,9,23;
46:13,17;47:1,21;48:1,
17;49:9;54:2,16;56:7,
10,18;57:5,16,21;
58:11;64:23;68:11;
69:4;71:25;73:12
derivative/direct (1)
47:10
describe (3)
18:3;44:12,21
described (7)
13:21;17:20;20:8;
27:13;34:3;44:23;56:4
designed (1)
25:23
despite (2)
29:6;59:9
detail (3)
13:17;33:11;52:10
details (1)
34:14
determination (3)
28:21;65:17;71:24
determine (3)
47:20;48:15;52:15
determined (2)
47:15;48:5
determines (4)
50:3;61:12;62:24;
63:2
developing (2)
25:12;30:23
dial (1)
54:23
dichotomy (1)
57:22

difference (4)
32:4;34:4;45:7;
52:11
differences (2)
21:21;27:12
different (7)
5:16;44:4;58:4,11,
15,16;62:19
differently (2)
15:20;61:9
difficult (2)
26:21;27:7
direct (17)
38:3;44:6;45:12,18;
46:6;47:16,21;48:5,17;
49:9;54:2;57:21;61:23;
62:4;65:7;68:16;72:12
direct/derivative (4)
44:8;45:16;46:4,8
directed (1)
55:24
directly (6)
26:24;29:11;31:6;
33:7;34:5;39:14
director (1)
46:3
directors (4)
46:16,25;59:8;69:2
director's (1)
51:24
disadvantage (1)
25:24
disappear (1)
66:17
disappeared (1)
6:25
discharge (2)
61:15,18
disclosing (2)
36:3,7
disclosure (2)
13:17;36:9
discover (1)
51:15
discovery (5)
26:11;55:13;56:11,
15;67:14
discrete (1)
64:20
discuss (1)
27:6
discussion (3)
41:3,5;74:14
discussions (1)
8:20
dismiss (27)
43:19;44:9;46:2,4,9,
16,19,25;47:15;48:4,
16,18,22;49:5,7;62:4,7,
10,21;63:15;68:13,13,
23;69:4,7,14;72:16
dismissed (1)
63:3

dismissing (1)
48:22
disposed (1)
40:11
disposition (1)
7:22
dispute (2)
5:19;55:15
disregard (1)
37:22
distinct (1)
52:8
distinction (1)
56:21
distinctions (1)
39:8
distributed (1)
32:22
distribution (3)
32:12;52:15,25
distributions (1)
30:11
district (18)
33:12;35:13;45:22;
46:9;47:7,8;49:8;
54:17;60:7;63:13,25;
65:6,13;69:15;70:1,6,
12,12
dividends (2)
44:13,18
doc (1)
6:21
docket (5)
8:8,9;35:18,19;57:9
docketed (1)
24:14
document (2)
10:1;14:12
documents (1)
67:15
dollar (3)
6:24;9:10;32:11
dollars (20)
7:7,19;8:17;9:9;
11:24;14:23;15:2;18:9;
22:2;28:23,23;29:2;
32:15,17,20;33:2;34:7;
35:15,16;39:4
done (6)
6:4;37:25;58:12;
61:14;70:14,14
door (1)
38:23
down (8)
18:18;43:6;49:13;
50:15;52:11;59:9;60:3;
69:3
drafted (1)
36:10
drop (1)
69:23
dropped (1)
54:22

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 81
of 91

**Ds&Os (2)**
61:21,22
**DUBBIN (9)**
53:17,19,21,21;54:1,
9,12;63:12;64:2
**due (3)**
10:10,11;12:3
**dust (1)**
60:11
**duties (1)**
29:18

**E**

**Earley (3)**
44:14,23;45:7
**earlier (2)**
45:7;74:2
**early (1)**
66:11
**earmarked (1)**
22:2
**earn (2)**
32:17;33:1
**earned (2)**
31:8;32:20
**easily (1)**
28:23
**echo (1)**
19:10
**economic (2)**
33:18;56:5
**effect (2)**
9:24;33:18
**effective (13)**
11:2;31:9;32:9,15,
24;56:8,13,20;57:6,10,
18;66:2,18
**effectively (1)**
15:9
**efficient (2)**
15:15;51:2,5
**effort (1)**
59:10
**either (8)**
9:23;26:9;27:4;35:9;
58:3;60:18;62:7;68:23
**eleven (2)**
28:25;32:11
**eleven-billion (1)**
32:11
**eligibility (1)**
26:4
**eliminate (1)**
56:10
**else (15)**
5:11;19:17;21:1;
22:7;24:25;34:19;
38:22;40:4;41:20;42:2,
11;53:23;61:15;64:9;
74:8
**emanate (1)**
60:5

**emerging (2)**
28:20;30:20
**emotions (1)**
37:18
**employed (3)**
17:4,5,8
**employment (1)**
15:9
**encourage (1)**
41:16
**end (4)**
39:21;60:17,19;
66:13
**enjoin (7)**
50:6;52:1,19;59:22;
70:5,25;71:1
**enjoined (2)**
59:18;72:2
**enormously (1)**
13:20
**enough (3)**
9:1;21:7;42:2
**ensure (1)**
66:22
**ensuring (1)**
16:5
**enter (1)**
73:14
**entered (2)**
68:13;73:10
**entire (2)**
45:10,24
**entirely (1)**
72:23
**entities (2)**
25:9;28:24
**entry (1)**
57:9
**equity (5)**
6:6;28:18;29:13,20,
24
**escrow (4)**
31:7;32:16,17;33:1
**especially (1)**
40:16
**essentially (4)**
13:22;16:1;17:8;
73:10
**established (1)**
68:6
**estate (11)**
17:5;22:23;23:1;
43:10;52:13,16,21;
58:5;60:4,19;68:5;
69:23;72:1
**estates (1)**
56:5
**estate's (1)**
23:8
**estimate (2)**
18:11,18
**estimates (1)**
18:10

**estimation (1)**
8:1
**et (2)**
17:2;19:22
**Etkin (27)**
42:16,17;53:9,10,12,
25;54:13,21,21,25;
55:2,8,23;56:2;58:16;
60:21;61:1,10,24;62:1,
23;63:6,9;64:7,9,13;
72:8
**evaluate (1)**
57:19
**even (3)**
43:11;45:1;74:2
**event (2)**
14:7;57:17
**everybody (3)**
21:23;23:14;46:11
**everyone (6)**
5:5,6;19:17;39:2;
42:2;60:3
**evidence (1)**
48:19
**exact (2)**
45:6;54:5
**exam (2)**
66:9;68:9
**examine (1)**
48:20
**examiner (1)**
15:19
**example (1)**
56:3
**except (1)**
24:3
**excess (2)**
28:22;58:23
**Exchange (1)**
44:24
**excuse (2)**
6:20;7:17
**excuses (1)**
74:22
**exercise (2)**
30:2,2
**exhibit (1)**
23:22
**existing (2)**
27:4;60:6
**expect (2)**
40:23;67:15
**expecting (1)**
33:13
**experience (1)**
16:18
**experienced (1)**
45:19
**expires (1)**
67:7
**explain (2)**
14:2;35:5
**explained (3)**

17:12;23:25;35:5
**explanation (3)**
13:17,24;55:20
**explicitly (1)**
72:5
**explodes (1)**
10:7
**express (2)**
20:25;41:16
**expressed (1)**
34:2
**expression (1)**
39:23
**extended (4)**
59:13;60:1,10;65:25
**extent (5)**
18:19;56:12;58:17;
60:8;61:20
**extra (1)**
14:5
**extraordinarily (1)**
21:6
**extremely (3)**
19:11;30:7;64:10

**F**

**face (1)**
36:9
**fact (12)**
20:1;21:10;30:5;
52:8;55:11;57:15;58:8;
59:9;60:9;62:25;65:13;
74:15
**facts (3)**
54:6;66:4;68:21
**fail (1)**
62:8
**failed (1)**
63:17
**failure (1)**
62:4
**failures (1)**
65:2
**fair (2)**
26:3,4
**fairly (1)**
22:21
**false (2)**
45:5;64:21
**familiarity (1)**
63:13
**far (3)**
49:17;54:15;58:23
**fashion (2)**
30:17;31:13
**fatal (1)**
57:12
**faulting (1)**
15:21
**favorite (1)**
37:24
**federal (4)**

45:21;62:9,11;65:8
**fee (5)**
15:15,18;16:19;17:3;
18:8
**feel (2)**
28:3;37:2
**feeling (1)**
61:3
**fees (5)**
14:11;16:4,14,23;
17:2
**Feldman (9)**
30:15;38:2,4,6,6,9,
10,11;39:6
**Feldman's (1)**
33:16
**few (4)**
27:2;28:3,8;67:16
**fiduciary (1)**
29:18
**fifteen (3)**
12:3;32:9,18
**fifteen-day (1)**
33:7
**figure (1)**
27:3
**file (7)**
8:9;18:1;47:3;49:1;
56:8;69:2;72:10
**filed (29)**
6:8,21;7:5;10:2;
12:9;24:3;25:6;26:17;
38:15;40:8;43:14;51:7,
8,16;52:4,21;55:4,15,
16;57:24;58:23,24;
59:2,23;65:4;67:5;
69:22;73:25;74:24
**files (1)**
59:25
**filing (2)**
25:10;50:11
**filings (1)**
60:12
**finally (3)**
5:19;68:6;69:21
**financial (6)**
6:24;7:6,11,12,14;
19:22
**financing (1)**
28:18,20
**find (5)**
27:6;46:9,13;52:14;
55:20
**finding (6)**
38:13;68:14,16,22,
23;70:10
**findings (3)**
68:21,24;69:1
**Fine (16)**
11:9;24:22;28:5,10,
14;29:11;30:16;31:6;
33:3;34:9;35:8;37:4;
39:8;41:5,19;74:2

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 82
of 91

**fines (6)**
29:8;36:1;37:1;
40:19,22;41:11
**fire (41)**
5:18;13:5;15:3;
25:22;27:22;28:7,21,
22;29:2,7;30:12,17,25;
31:9;33:4,5,19;34:20;
35:8,17,25;36:1,10,22,
22;37:10;39:3,15;
41:23;50:1;51:11;
52:24;57:18;66:12,20,
23;67:12,15;68:5;
69:24;74:5
**fires (2)**
35:15;65:1
**firm (4)**
13:22,23;29:6;53:22
**first (19)**
5:22;6:23;9:22;
10:10;12:22;13:12;
21:1;22:10;28:13;
31:19;35:7,17;36:3,8;
44:2;55:8;66:9;68:9;
71:16
**Fisher (1)**
52:23
**Fisher/Megliola (3)**
52:6,11,14
**fit (1)**
12:24
**five (1)**
50:18
**five-million-dollar (1)**
11:18
**flat (1)**
18:8
**flying (1)**
20:21
**focus (1)**
65:4
**focused (1)**
25:24
**focusing (3)**
33:22;44:10;45:25
**folks (2)**
36:5;60:18
**follow (2)**
52:23;73:14
**foolish (1)**
65:21
**foolishness (1)**
37:21
**foregoing (1)**
71:23
**forget (1)**
50:10
**forgotten (1)**
35:10
**form (4)**
13:18;19:25;24:10;
29:3
**formed (1)**

**66:20**
**forth (3)**
7:7;8:18;64:14
**fortunate (1)**
21:6
**forty (1)**
17:16
**forward (6)**
20:3;27:18;49:20;
53:4;57:2;75:10
**forwarded (1)**
23:13
**found (3)**
36:6;52:12,20
**four (6)**
32:20;33:2;34:7;
37:6;39:3;66:8
**four-million-dollar (2)**
29:11;32:19
**fourth (1)**
12:5
**FRANCISCO (1)**
5:1
**frankly (3)**
15:13;34:18;72:10
**free (1)**
67:3
**Friday (4)**
43:14,21;69:9,18
**front (4)**
36:25;47:6;54:18;
68:12
**fully (2)**
37:5;43:12
**function (2)**
59:15;61:3
**fundamental (1)**
25:20
**funding (5)**
6:24;20:3;28:20;
30:19,21
**funds (2)**
16:2;33:15
**further (2)**
21:20;64:5
**future (5)**
38:19;40:19,22;
41:19;44:5

---

**G**

**gears (1)**
49:19
**generally (2)**
37:18;59:19
**Gentlemen (1)**
36:19
**Gerald (1)**
19:10
**gets (6)**
10:19;11:7;51:23;
61:17;68:6;74:24
**given (3)**

26:21;40:16;43:8
**giving (1)**
29:25
**glad (2)**
12:18;42:5
**gleam (1)**
31:5
**goes (7)**
11:7;34:15;37:6;
44:5;66:22;72:3,17
**Good (15)**
5:5;6:9;17:7;22:5,
17;27:3;33:15;39:24,
25;42:20;74:14,22;
75:5,5,6
**Gotshal (5)**
19:24;27:24;36:5;
39:16;71:14
**grant (1)**
72:21
**granted (1)**
49:22
**granting (5)**
54:6;58:20;73:11
**grants (2)**
68:23;71:18
**great (3)**
18:16;52:9;66:10
**Green (55)**
5:21,23;6:1,3,11,13,
17;7:1,5,13,23;8:18,25;
9:17;10:8,21,24;11:1,
13,15,21;12:7,11,14,
16,20,25;13:4;14:3,8,
22;15:1,4,25;16:20,25;
18:7,25;19:3,4,11,20,
25;20:8,12;21:5;23:5,
7;24:3,10,16,18;25:15;
27:17,20
**Gregory (1)**
22:12
**group (9)**
13:23;38:7;42:1,2;
44:17;45:13;46:10;
48:12;64:20
**guess (4)**
9:19;48:23,25;58:6
**guilt (1)**
39:4

---

**H**

**halfway (1)**
53:8
**hand (1)**
59:7
**happen (6)**
13:14;17:18;21:19;
39:13;41:7;61:11
**happened (1)**
53:24
**happening (4)**
12:19;15:10;46:18;

52:2
**happens (3)**
10:20;18:6;24:5
**happy (12)**
6:9;20:23;21:22;
22:6;23:7;31:11;33:8,
24;39:21;69:23;72:23;
73:25
**hard (5)**
19:12;21:6,9;26:13;
38:13
**harm (4)**
45:18,18;48:12;
72:12
**harmonizes (1)**
52:10
**health (1)**
75:6
**hear (8)**
5:7;20:23;24:13;
53:11,12;62:3;64:2;
66:7
**heard (16)**
5:11;20:24;21:2;
22:9,10;24:25;38:7;
40:4;41:21;62:15;64:6;
66:7;71:12;73:7,20;
75:5
**hearing (9)**
7:2;10:4;18:2;31:21;
49:8;73:19;75:6,10,14
**held (1)**
31:7
**Hello (1)**
53:10
**help (4)**
14:7;15:23;30:14;
65:16
**helpful (1)**
26:18
**herding (1)**
12:16
**Here's (2)**
31:19;56:2
**hidden (1)**
36:5
**high (2)**
15:14;21:25
**high-paid (1)**
15:8
**high-priced (1)**
14:5
**himself (3)**
8:21;14:19;15:12
**hired (1)**
15:8
**hitting (1)**
54:25
**holders (1)**
64:21
**holding (2)**
34:20;54:15
**Honor (130)**

6:3,9;7:1,13,23;8:18;
10:9;11:21;12:25;14:3,
8;15:25;18:7,25;19:5,
9,18,23;20:12,14;21:3,
10;22:8,12,13,18;
24:19,22;25:2;26:14;
27:20;28:1,8,11,13,19;
29:5,10,17;30:3,7,8,9,
14,22;31:2,4,10,12;
32:10;33:24;34:6;35:4,
9,17,21;36:4,18,21;
37:14;38:2,4,4,9,23;
40:3,6,15;42:17,20;
43:3,44:1;47:17;48:24;
49:6;50:8,13,23;51:9;
53:12,17,17;54:3,4,6,
21;55:2,6,19;56:2,21;
57:13;59:5,11,15,20,
21;60:5,21;61:6;62:1,
18;63:7;64:7,14;65:3,
12,23;66:3,8;69:1;
70:21;71:9,13,15;72:5,
7,18,20,22;73:2,9,13,
17,21;74:7,9,15,19;
75:3
**Honor's (3)**
26:7;53:23;58:19
**hope (7)**
5:7,7;17:13;26:12;
43:6;66:20;75:1
**Hostetler (3)**
14:18;34:6;42:21
**hours (4)**
17:16,17;18:13,16
**house (1)**
67:1
**hundred (2)**
32:22;61:6
**hundreds (1)**
57:24
**hyperbole (1)**
37:22
**hypothetically (1)**
56:23

---

**I**

**idea (1)**
27:3
**identified (1)**
7:12
**identifies (1)**
23:21
**identify (1)**
5:9
**ignore (1)**
29:15
**ignored (1)**
65:1
**III (1)**
62:6
**imagine (2)**
14:20;33:14

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 83
of 91

**immediate (1)**
9:12
**immediately (1)**
32:23
**impact (1)**
26:25
**impaired (1)**
10:5
**implicitly (1)**
48:5
**important (7)**
26:17;32:5;35:9;
62:2;64:11,16;72:21
**importantly (1)**
9:25
**improper (1)**
48:13
**inappropriate (1)**
28:4
**inclination (3)**
65:24;66:3,3
**inclined (2)**
71:17;72:5
**include (5)**
29:8;36:1,10;60:2;
72:6
**included (1)**
7:7
**includes (1)**
25:7
**including (1)**
25:14
**inconsistent (6)**
49:17;54:7;55:18,21,
22;62:17
**incorrect (1)**
47:10
**increase (1)**
44:13
**incredibly (3)**
21:9;26:21;66:13
**indeed (1)**
57:16
**independent (1)**
61:8
**indicate (1)**
26:7
**indicated (3)**
25:15;57:20;65:24
**indication (1)**
56:14
**Indiscernible (2)**
24:17;28:9
**individual (6)**
58:22;59:23,25;61:5;
69:22;70:2
**individually (1)**
59:3
**indulge (1)**
28:8
**information (5)**
7:25;20:22;21:11;
59:1;64:22

**initial (1)**
55:8
**injunction (5)**
43:7;49:25;52:14,23,
24
**injunctive (2)**
69:25;71:6
**insofar (1)**
25:16
**institution (1)**
16:21
**institutional (1)**
59:24
**insurance (7)**
51:13,19,24;53:2;
66:15,17;72:22
**integrity (1)**
15:22
**intend (2)**
10:13;71:15
**intended (1)**
60:3
**intention (2)**
24:13;75:7
**interest (14)**
17:24;20:21;29:22;
30:24;31:8;32:17;33:1,
2,6;39:13,18;46:13;
57:3;65:19
**interesting (1)**
35:21
**interests (2)**
22:21;29:21
**interfering (1)**
58:9
**interim (1)**
52:2
**intermediate (2)**
39:14,17
**interpret (1)**
29:16
**interrupt (1)**
19:9
**interrupting (1)**
21:4
**intervene (1)**
70:11
**intervention (1)**
26:1
**into (9)**
32:16;34:1;37:11;
40:22;57:14;62:2;
67:14;71:7;73:11
**investigation (2)**
36:3,7
**investment (1)**
61:23
**investor (2)**
59:24;65:1
**investors (4)**
45:14;57:25;58:25;
64:22
**invites (1)**

54:7
**involve (1)**
35:15
**involved (1)**
21:7
**irrelevant (1)**
37:21
**issue (35)**
6:4;33:22,22;44:6;
46:4,22;47:4,6,10,21;
48:2;49:9,11,14;54:17;
55:10;59:4,21;62:14,
17,19;63:9;67:1,19;
68:7,7,9,12;69:16;70:3,
18;72:24;73:11;75:1,
20
**issues (31)**
5:20;14:25;16:9;
25:15,21,21;26:3,5,6,
12,24,25,25;27:6;
38:11;43:6,11;44:6;
55:4,5;57:1;58:20;
63:21;64:14;66:2,16;
68:8;69:12;71:16;
72:16,22
**italicizes (1)**
45:6
**italics (1)**
44:16
**item (5)**
7:6;12:23;13:1;14:4;
18:9

**J**

**January (3)**
12:1;23:21;67:7
**Jeffry (1)**
53:21
**jeopardizing (1)**
30:19
**job (1)**
37:25
**joinder (1)**
40:8
**Judge (31)**
5:6;8:4;36:2,6,25;
47:14,17;49:18;54:5,
18;59:9;61:10,12,16;
62:5,7,14,14,16,20,24;
63:9,11,18,22;65:5,8,
25;68:12;70:12;75:16
**judgment (4)**
43:7;54:7;65:19;
69:3
**judicial (1)**
26:1
**Julian (17)**
33:21,23,24;34:5,6;
35:3,15;36:15,16,21,
23,24;37:13;38:15;
42:5,18,24
**July (1)**

12:5
**June (2)**
12:5;30:20
**Justice (17)**
5:17;6:5;7:14;9:23;
11:25;13:19;14:8,9;
15:12;16:11,15;17:21;
18:8;23:11;34:19;
65:17;75:19

**K**

**Karotkin (40)**
6:19;8:15,21;10:12;
19:6,19,23,23;20:4,14,
16,18;26:19;27:1,15,
21,22,23,24;28:15,17;
31:16;32:6,8,14;34:3,
22;35:4;37:17;38:1,12;
39:6,23;41:25;42:7,11,
13;75:12,16,22
**keep (9)**
12:13;29:24;30:10,
10,15;33:11;34:14;
38:13;42:23
**keeps (1)**
31:1
**Kennedy (4)**
12:22,23;13:9,19
**kicks (1)**
7:10
**kind (7)**
9:10,20;11:12;15:16;
17:22;18:6;75:13
**kinds (2)**
27:12;72:16
**knowledge (1)**
16:13
**knows (1)**
36:4

**L**

**Labaton (2)**
53:21;63:12
**lack (1)**
36:9
**laid (1)**
55:4
**language (6)**
25:17;29:15;59:16;
71:20;72:8,9
**large (2)**
15:2;18:5
**largely (2)**
24:2;41:1
**larger (3)**
9:7;25:24;46:12
**last (7)**
7:20;9:6;18:21;46:6;
65:4;74:24;75:9
**late (4)**
13:9;20:22;24:11,14

**later (7)**
7:10;20:8,10;25:14;
27:19;61:11,17
**law (10)**
13:22,23;43:20;48:8;
52:2,7;54:2,15;69:11,
20
**laws (5)**
39:5;62:9,12;63:21;
65:8
**lawyer (3)**
13:20;39:17,17
**lawyer-like (1)**
37:19
**lawyers (4)**
13:22;36:4,9;39:1
**layer (1)**
14:5
**lays (2)**
52:4,9
**lead (2)**
40:21;53:9
**leadership (2)**
44:15;45:20
**leadings (1)**
27:17
**leads (1)**
62:1
**learn (1)**
13:9
**learned (1)**
12:22
**learning (1)**
66:18
**least (4)**
17:23;22:4;23:3;
58:12
**leave (5)**
5:14;31:25;41:18,21;
51:19
**leaves (1)**
54:18
**left (4)**
42:9;60:23,24;61:19
**legal (8)**
14:5,6,17,18,18,25;
39:8;68:22
**less (1)**
56:22
**letter (2)**
56:3;57:8
**letters (1)**
74:20
**liability (3)**
28:22;34:21,21
**liked (1)**
9:22
**likely (1)**
49:5
**limitation (1)**
72:6
**limitations (4)**
66:15,25;72:3;74:1

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 84
of 91

**limited (1)**
71:24
**line (10)**
5:8;7:6;12:23;13:1;
18:9;36:24;52:11,14,
23;53:13
**lines (2)**
52:5,9
**link (1)**
8:8
**liquidating (2)**
17:6;52:19
**list (10)**
26:2;27:9;37:20;
55:5,10;57:1;58:20;
64:14;66:2;74:25
**listen (2)**
34:13;41:20
**literally (2)**
20:5;72:13
**litigate (1)**
63:24
**litigation (6)**
5:20;52:17,20;65:11,
20;66:14
**little (8)**
6:22;10:9;14:7;
31:21,23,25;67:5;
74:18
**LLP (2)**
22:14;74:11
**long (6)**
31:11,12;33:8,15;
66:13;73:15
**longer (1)**
53:13
**look (6)**
10:8;17:14;26:23;
27:18;59:23;75:10
**looked (2)**
8:11;37:1
**looking (4)**
7:9;9:7;11:21;16:17
**looks (4)**
14:4;45:16;48:18,21
**loss (1)**
55:17
**lot (3)**
14:12;46:7;74:24
**luck (2)**
63:5;75:5

## M

**Madoff (3)**
43:17;49:10;70:16
**major (1)**
69:10
**makes (2)**
55:10;65:17
**making (5)**
14:13;17:24;23:1,8;
48:14

**management (1)**
65:2
**Manges (1)**
27:24
**manner (2)**
5:16;28:5
**manslaughter (1)**
41:4
**many (7)**
41:15;42:23;45:1;
49:15;70:14,19;74:22
**March (4)**
6:21;35:7,12;37:4
**masters (1)**
39:1
**materially (1)**
64:21
**matter (7)**
5:4,22;25:1;27:16;
41:17,23;75:18
**matters (6)**
25:19;26:1,9;74:22;
75:14
**Matthew (1)**
38:6
**May (16)**
10:11;12:3;20:12,13;
36:18;44:12;45:5;54:3;
58:10,24;63:5;66:18,
19;73:17,23;75:8
**maybe (8)**
11:18;26:21;33:10;
60:15,16,17;63:11;
66:21
**Mea (1)**
31:2
**mean (12)**
5:25;10:5,7;20:10;
28:6;30:16;34:21;
36:24;60:24;63:5;66:6;
73:10
**meaning (2)**
6:6;9:11
**means (2)**
20:4;62:10
**meet (1)**
26:22
**mention (3)**
36:12;41:4;44:23
**mentioned (2)**
7:20;74:2
**meritless (1)**
57:20
**metaphors (1)**
31:18
**Mexico (1)**
53:22
**Michael (2)**
53:25;54:21
**midnight (1)**
18:15
**might (7)**
14:20;18:2;25:14;

27:3;31:18;38:17;61:3
**Milbank (2)**
22:14;74:11
**milestone (1)**
21:23
**million (25)**
6:23;7:19;8:16;9:9,9,
11;10:10;11:24;20:6,7,
7;22:2;23:9,10;32:4,4,
20,22;33:2;34:7;35:15,
16,23,24;39:4
**mind (3)**
33:18;58:6,12
**Mintz (6)**
25:2,2,5;26:15;
27:10,12
**minute (3)**
19:13;51:4;74:25
**minutes (2)**
28:8;54:10
**misplaced (1)**
43:15
**misrepresentation (1)**
44:17
**misrepresentations (2)**
44:25;69:5
**missing (5)**
47:9;48:9,9,23;58:14
**money (13)**
13:15;14:23;15:15;
16:1;18:5;23:8;33:3;
34:20;39:11,18,19;
41:5;58:5
**monies (1)**
25:12
**monkey (1)**
22:24
**Montali (1)**
5:6
**month (5)**
9:6;17:16;18:9;
20:10,10
**months (7)**
46:15,24;56:22;
66:12,13;67:6,14
**moot (1)**
51:6
**more (11)**
7:18;9:4,25;12:19;
15:17;20:24;30:22;
49:16;54:12;63:13;
73:25
**morning (11)**
5:5;12:10;18:14;
22:17;23:4;34:17;
42:12,20;43:14;49:20;
73:16
**most (4)**
16:13;44:9;51:10;
67:15
**motion (51)**
5:18;6:20,23;22:9;
27:17;32:3;33:10;

39:10;42:10;43:5,7;
44:3,3,4,9,21;45:16;
46:2,4,9,15,19,25;
47:11,15;48:4,16,18,
22;49:5,7,16;52:22;
54:7;55:11,13;56:15;
57:15;58:7,21;59:7;
65:24;67:20;68:12,13,
23;69:2,4,7;71:18;
72:16
**motions (11)**
5:16;34:2;43:18;
51:6;62:4,10,20;63:14,
19;69:14;75:20
**motivation (1)**
68:3
**motive (1)**
30:5
**mounds (1)**
65:9
**move (2)**
57:2;64:9
**moving (1)**
31:1
**MSJ (1)**
44:5
**much (10)**
9:7;28:2;41:1;46:12;
48:21;58:4,11;60:8;
64:13;74:23
**multiple (1)**
58:25
**municipal (2)**
25:8;38:22
**must (1)**
31:20
**mute (1)**
53:13
**mysteries (1)**
13:8
**mystery (3)**
7:16;23:25,25

## N

**name (1)**
22:10
**named (1)**
50:18
**narrow (2)**
22:22;70:4
**nature (2)**
26:5;55:11;69:5
**necessarily (2)**
58:18;62:10
**necessary (2)**
39:15;56:12
**need (16)**
6:15;8:23;10:1;13:7;
14:2;15:5;20:24;42:12;
50:6,13;56:10;59:3;
64:2;70:19;74:3;75:14
**needs (1)**

11:19
**negotiate (1)**
60:16
**negotiated (3)**
51:11,20;66:23
**negotiation (1)**
8:3
**neutral (1)**
22:4;28:6;30:16
**nevertheless (1)**
9:20
**new (3)**
27:4;53:22;69:15
**Newsome (2)**
8:4;36:25
**next (7)**
5:10,13;20:8,10;
27:2;66:19;75:6
**nine (2)**
66:12,13
**Ninth (1)**
70:20
**nobody (1)**
53:23
**nobody's (1)**
39:17
**nondebtor (3)**
65:14;70:6;71:1
**nondebtors (1)**
62:6
**None (2)**
70:21,21
**nonissue (1)**
61:16
**nonsensical (1)**
59:20
**nor (1)**
62:3
**normally (2)**
16:25;21:11
**Norton (1)**
25:8
**noted (2)**
56:14,17
**notify (1)**
24:12
**notion (1)**
41:2
**Notwithstanding (2)**
20:1;54:14
**number (9)**
5:8;8:8,19;18:16;
21:12;25:25;35:18;
50:10;60:18
**nunc (1)**
23:20

## O

**objectable (1)**
60:16
**objection (5)**
31:12,13;34:23;40:9;

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 85
of 91

50:15
**objections (2)**
24:10;51:8
**obligation (1)**
29:24
**observations (1)**
58:19
**obtain (1)**
53:1
**obviously (4)**
10:16;15:20;22:21;
74:17
**occur (1)**
40:24
**occurring (1)**
57:6
**occurs (1)**
57:18
**o'clock (2)**
12:9;18:14
**off (4)**
7:11;8:10;34:16;
42:5
**officer (3)**
44:14;46:3;47:1
**officers (3)**
46:16;59:8;69:2
**official (3)**
33:14;43:8;74:12
**omnibus (1)**
50:15
**once (1)**
59:10
**one (26)**
7:17;9:4,9,18;13:2,8;
18:7;20:1;28:24;34:11,
12;35:8,13,16;38:14;
41:21;42:14;44:22,23;
45:8;51:12;54:12;59:7;
60:2;62:8;64:10
**ongoing (1)**
52:13
**only (9)**
23:7;36:10;45:7,13,
22;58:17;63:16;69:24;
71:17
**onto (2)**
56:11;64:9
**oOo- (1)**
5:2
**open (2)**
38:23;74:25
**operative (2)**
24:1;61:15
**Operator (4)**
53:11,12,16;75:23
**opinion (4)**
21:21;30:6;40:13;
52:8
**opinions (1)**
70:16
**opportunity (5)**
21:8,13;43:16;69:11,

18
**opposed (3)**
17:3;38:20;41:6
**opposition (1)**
55:9
**order (43)**
5:3,25;6:8;7:20,21,
24;8:2,3,5,6,11,12,14,
19;9:8;10:9;11:22,23,
23,24;12:10;20:5,18;
22:21,25;23:3,20,24;
24:10,11,13;25:16;
27:18;32:1;33:8;34:8;
37:4;42:5,7;58:20;
71:19;72:4;74:5
**ordered (2)**
37:4;59:13
**orders (4)**
6:4;7:8;19:25;23:18
**organizations (1)**
9:12
**original (1)**
33:10
**Originally (2)**
9:6;20:9
**others (5)**
20:25;26:16;27:11;
30:1;33:22
**otherwise (3)**
29:16;34:17;59:25
**out (31)**
5:14,25;13:7;18:5;
20:6,7;21:22;26:2;
27:3,12;35:8;36:22,22;
40:18,22;45:10;49:23;
52:4,9;54:4,14;55:4;
56:24;59:21;63:5;
65:23;66:17;71:16;
72:7,24;75:18
**outside (1)**
23:1
**over (7)**
18:6;27:2;37:18;
41:1;55:15;59:2;67:6
**overlap (3)**
43:18;46:2;47:4
**overlaps (1)**
69:8
**oversight (1)**
15:11
**owed (1)**
58:5
**own (1)**
29:12
**owns (1)**
59:17

**P**

**page (2)**
11:23;66:2
**paid (19)**
7:19;8:2;13:15,16;

15:14;18:5,11,20;23:9;
33:6;34:5,8;37:5,5,6;
38:21;39:11,14;51:23
**paper (1)**
65:9
**papers (4)**
15:12;31:20;38:15;
72:25
**Paradise (1)**
25:8
**paragraph (9)**
7:8;8:19;10:1,6;
24:2;44:11;45:4;71:21;
72:3
**pardon (1)**
75:11
**part (7)**
8:3;12:24,25;38:17;
51:17,19;69:10
**participate (2)**
53:25;54:1
**particular (3)**
30:25;52:9;71:21
**particularized (2)**
45:18;72:11
**parties (10)**
6:7,7;25:6;29:25;
30:18;31:11;41:25;
55:25;58:5,12
**parties' (1)**
25:17
**party (1)**
16:4
**pass (2)**
65:25;66:15
**passionately (1)**
37:2
**past (1)**
26:18
**patient (1)**
5:12
**pay (5)**
8:16;29:11;34:20;
37:4;39:3
**paying (1)**
9:9
**payment (19)**
7:7;8:5,12,13;10:10;
11:19;12:3,5;16:3;
20:8;24:1,4;30:4;31:6,
12,24;33:13,19;38:18
**payments (7)**
9:13;10:2,13,16,21;
16:23;23:12
**peace (1)**
5:25
**Penal (4)**
35:25;36:1,7,12
**penalties (6)**
29:8;37:1;40:19,21,
22;41:11
**penalty (2)**
35:23;41:19

**pencil (1)**
26:23
**pending (11)**
43:19;44:22;47:11;
49:7;58:17;59:8;60:9;
63:23;70:1;72:1;74:4
**people (13)**
5:8;13:18,20;14:6;
15:3;16:13;19:17;
21:18;26:22;29:15;
42:23;50:11;61:3
**PERA (2)**
53:22;54:17
**percent (2)**
59:5;61:7
**perfectly (1)**
46:5
**perhaps (3)**
51:7,14;70:13
**period (3)**
32:25;33:7;60:20
**permission (1)**
53:23
**person (3)**
5:10;15:14;16:12
**personally (2)**
16:21;17:15;18:13
**pertaining (1)**
69:4
**petition (1)**
67:5
**PG&E (7)**
5:4;34:8;35:25;36:6;
40:19;55:25;61:17
**PG&E's (2)**
34:20;36:9
**phone (3)**
27:7,8;63:12
**phonetic (2)**
52:5,6
**pinch (1)**
54:25
**pivot (1)**
44:3
**pivoting (1)**
64:15
**place (6)**
15:7;17:9;29:25;
34:15;52:24;67:12
**placed (1)**
67:13
**plaintiff (1)**
31:16
**plaintiffs (9)**
5:20;44:12;45:11;
52:4;61:12,19,21;70:5;
71:1
**plan (48)**
6:6;10:3,6,14,16,19;
11:4,5,7,9,9,10,11,16;
15:7;17:9,25;20:2;
22:23;24:6,11;28:7,20,
22,25;29:1,3,5,16;

31:10;32:10,11;36:16,
17;38:16;51:15,21;
53:1;56:9,13,20,23;
57:5,10,17,23;58:2;
61:18
**played (1)**
15:18
**players (1)**
5:13
**plead (2)**
64:24,25
**pleaded (4)**
44:25;45:2;64:19;
72:13
**pleading (3)**
38:19;65:4;73:9
**pleadings (1)**
23:11
**pleads (3)**
44:24;65:6,7
**please (5)**
5:12;14:7;15:24;
28:16;46:23
**pleased (2)**
6:3;21:20
**pled (1)**
54:16
**plus (5)**
13:19,20;23:10;61:8
**point (34)**
9:2;24:21;35:1,22;
37:8;40:12,25;41:9,9,
15;48:10;51:14;54:14;
55:9,9,12,13;58:1;
61:12;62:19;63:5,7;
65:16,18;67:11;68:10,
10,11;69:1;72:7,8,18,
19;73:8
**pointed (3)**
54:4;59:21;65:23
**points (3)**
40:10;43:25;73:4
**policies (2)**
51:19;53:2
**Porter (1)**
25:3
**portion (1)**
15:2
**portions (1)**
19:22
**posed (1)**
62:2
**position (14)**
22:4;35:5;56:4;57:8,
19;59:6,18,20;63:15;
69:3;71:19;72:4;74:19,
21
**positions (2)**
55:18,19
**possible (3)**
30:13,21;31:2
**post- (4)**
15:25;17:5;31:8;

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 86
of 91

52:18
post-effective (1)
16:22
pot (1)
41:5
potential (2)
25:11;64:22
potentially (1)
62:17
practice (1)
13:23
pragmatic (1)
37:14
pre- (1)
16:10
precise (2)
69:12,16
precisely (2)
30:3;65:5
predisposition (1)
40:20
prefer (1)
31:4
pre-hearing (1)
27:5
prejudice (3)
25:11,16,18
preliminary (4)
43:7;52:23,24;75:14
premature (3)
55:11;56:15;57:16
prematurity (1)
57:10
premised (1)
63:20
prepared (1)
72:7
present (1)
46:1
presented (2)
21:16;56:15
presenting (2)
29:12;30:24
press (6)
44:12;45:2,5,9,12,13
presumably (1)
47:15
prevail (2)
50:14,18
prevent (1)
49:8
prevented (1)
63:3
previous (2)
23:9,11
previously (1)
35:24
principal (2)
5:13;27:10
prior (6)
8:11,12;22:23;27:5;
30:20;58:21
pro (2)

23:20;26:5
probably (1)
54:24
probation (1)
36:7
problem (2)
34:25;35:3
problems (1)
75:9
procedurally (2)
61:10,11
procedure (2)
25:19;36:11
procedures (6)
25:13,22;26:3;39:20;
43:17;55:13
proceed (5)
5:15;43:2;56:12;
60:11;74:1
proceeding (13)
38:19;46:18;47:3;
49:21,23;50:1,18;51:6;
54:19;56:8;60:3,4;71:1
proceedings (1)
75:25
proceeds (1)
66:17
process (13)
12:24;14:16;15:11;
17:11,11,19;18:17;
21:7;26:11;57:10;
59:13;60:11;61:2
production (1)
8:19
professionalism (1)
21:17
professionals (9)
9:19;15:8,23;16:8,
23;17:2,20;23:22;35:6
promptly (1)
13:13
proof (3)
59:23,25;72:2
proofs (10)
50:11;51:8,16;52:12;
57:24;58:22;60:14;
71:4,5;74:3
properly (6)
14:24;62:14,16;
64:19,25;72:13
property (1)
43:10
proponents (1)
6:6
proposal (4)
9:14;32:14;57:12;
70:23
proposed (7)
7:8,21,21;22:21;
23:3;33:3;38:12
prosecute (3)
49:1,24;61:19
prosecuted (1)

63:1
prosecuting (1)
63:10
prosecution (2)
51:7;71:23
protect (4)
51:10;68:4;69:24;
74:5
protected (2)
14:14,24
protection (1)
15:16
proven (1)
62:11
proves (2)
35:22;65:7
provided (5)
8:2;18:10;23:4;
25:17;52:3
provides (1)
11:23
providing (3)
7:25;26:3;30:17
provision (7)
8:4,22;10:15;23:23;
24:1,5;39:11
provisions (1)
25:25
public (5)
28:24;31:22,23;
33:14;36:12
publicity (1)
31:24
published (2)
69:14;70:15
pulling (1)
23:20
purely (1)
18:22;73:24
purpose (1)
71:24
purposes (1)
48:16
pursue (2)
43:9;73:12
pursuit (1)
72:1
put (11)
8:4;27:9;32:15;
36:22;37:8;40:1;42:5;
44:16;48:13;52:23;
65:10
putative (2)
16:8;45:17

Q

qualified (2)
13:18;14:6
quarterly (1)
17:1
questionable (2)
56:16;57:11

quickly (1)
40:25
quite (4)
5:8;20:23;21:20;
72:10
quote (2)
44:13;64:16
quoted (2)
45:7;57:9
quoting (2)
31:17;64:18

R

Rad (1)
42:18
radar (1)
74:17
raise (8)
28:2;40:9;43:6;46:7,
8;47:13;64:10;73:4
raised (15)
29:7;43:13,25;46:17;
48:2,3;55:9;64:15,15;
66:10;67:25;68:2,3;
69:8,18
raising (1)
47:2
rata (1)
26:5
rather (4)
17:25;31:9;44:16;
64:23
rationale (1)
37:19
reach (3)
62:18;69:16;72:21
reached (2)
26:2;33:2
reaches (1)
46:11
read (2)
6:14;9:5
reading (1)
74:24
reality (1)
65:1
realize (1)
67:22
really (13)
8:19;15:14;16:7;
17:18;26:19;28:2;
31:14;57:2,14;59:5;
62:3;71:16,17
reason (9)
10:12;11:15;13:7;
23:5;41:1;57:2;58:8;
62:8;68:3
reasonable (2)
16:14;64:25
reasoning (1)
69:10
reasons (1)

72:25
recalls (1)
59:15
receive (2)
48:19;51:17
receiving (2)
51:18;52:16
recent (1)
35:16
recently (2)
35:10;55:15
recipient (1)
39:19
recklessly (1)
35:25
recognize (2)
5:10;26:6
reconsider (1)
72:20
record (6)
23:25;27:24;37:3,11;
41:13;53:19
records (1)
15:13
record's (1)
35:4
recoveries (1)
52:17
recovery (3)
51:17,18;53:1
Reed (1)
25:9
refer (1)
55:5
reference (2)
8:7;74:3
references (1)
36:10
referencing (1)
57:13
referred (1)
14:17
reflects (1)
25:16
regarding (1)
57:21
regrets (1)
61:3
rejected (1)
59:11
rejoin (1)
54:13
relate (3)
9:3;14:16;25:21
related (8)
7:24;8:1;10:15;
14:11,25;16:5,9;23:8
relates (1)
65:14
relating (1)
69:25
release (5)
44:12;45:5,9,12,13

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(10) post-effective - release

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 87
of 91

**releases (1)**
45:2
**relevant (2)**
51:9;72:24
**Reliance (2)**
52:5,18
**relief (12)**
43:9,23;44:2,3;60:2;
69:13,24,25;71:4,6;
74:4
**remain (2)**
62:21;66:14
**remainder (1)**
53:5
**remarks (2)**
28:3;64:5
**remember (1)**
35:10
**remind (1)**
5:8
**remote (1)**
5:9
**remotely (1)**
5:6
**remove (2)**
71:3,5
**removing (1)**
74:2
**rendered (1)**
51:6
**reorganization (1)**
41:6
**Repeat (1)**
46:23
**repeatedly (1)**
38:15
**reply (2)**
64:17;72:9
**reporting (2)**
16:15;17:1
**representation (2)**
8:24;9:25
**represented (2)**
25:8,9
**representing (1)**
8:15
**reputation (1)**
17:15
**request (5)**
6:21;7:2;8:7;69:8,18
**require (1)**
69:24
**required (1)**
31:10
**requirements (1)**
16:15
**reread (1)**
31:20
**rescission (1)**
59:14
**reservation (4)**
6:7,8;25:6,10
**reservations (2)**

26:16;39:1
**reserve (3)**
39:2;53:3,5
**resolution (4)**
25:22;27:18;39:8;
61:6
**resolve (3)**
25:25;26:8,12
**resolved (8)**
25:15,21;39:22;
46:20;58:18;59:3;
62:22;65:15
**resort (1)**
46:6
**respect (9)**
41:15;56:21;57:9,20;
59:7,19;60:12;65:9;
66:9
**respond (3)**
27:1;73:23;75:15
**responding (1)**
34:7
**rest (3)**
22:19;23:12;26:20
**restatement (1)**
24:2
**restating (1)**
43:4
**result (4)**
29:9;39:24,25;59:13
**resulted (1)**
36:8
**retained (2)**
7:15;14:9
**retentions (1)**
6:5
**reverse (2)**
71:17;72:5
**review (4)**
15:11,13;16:19;24:9
**reviewed (2)**
26:16;28:1
**reviewing (2)**
15:15;16:4
**reviews (1)**
16:22
**revise (1)**
70:24
**revised (1)**
22:21
**rhetoric (1)**
34:1
**rhetorical (1)**
37:21
**Richard (1)**
71:13
**RICHARDSON (70)**
42:20,21,23;43:2,3,
23;44:1;46:22,24;
47:12,17,20,23;48:2,6,
8,11,24;49:3,6,25;50:5,
8,13,21,23;51:1,3,4,9;
52:1;53:4,5;62:3,15;

64:3,4,8;66:6,8;67:2,4,
7,9,11,19,21,23,25;
68:2,11,18,19,20,25;
69:7;70:8,10,13,18,21;
71:3,9,10,11;73:17,17,
21,21;74:6
**right (44)**
5:5;7:11;9:5,16;
12:14;19:4;20:11,15,
19,23;14;24:18,23;
28:21;29:12;30:1,2,2;
32:6,7;35:22;37:5;
39:2;47:6,16;51:10;
53:9;54:6;55:7;57:3;
58:1,5;60:13,14;62:20;
63:5,23;64:1,1,12;
68:9;70:7;73:15;75:15,
17
**rights (9)**
6:7,8;14:13;25:6,10;
39:2,2;43:9;74:5
**risk (2)**
18:4;29:20
**road (4)**
43:6;49:13;50:15;
69:3
**Robert (1)**
34:6
**role (3)**
13:10;15:18;16:22
**Rose (1)**
25:8
**roughly (1)**
32:9
**RSA (4)**
29:6;51:12;56:19;
66:11
**Rudnick (2)**
14:9;18:23
**Rudnick's (1)**
14:11
**Rule (6)**
54:16;60:23;63:18,
19;66:1;68:15
**ruling (14)**
28:1;31:6;40:12;
41:10;43:20,25;48:14;
50:14;55:12;62:17;
68:13;69:17,22;73:14
**running (6)**
11:16;14:6;34:16;
50:2;52:25;75:8
**runs (1)**
11:12

**S**

**safety (2)**
44:15;45:21
**same (20)**
30:17;33:18;44:20;
45:1,5,6,11;51:3,8;
54:5;56:1;57:7;58:8;

59:12;60:6;62:14;63:4;
68:3;72:8;74:4
**SAN (1)**
5:1
**satisfaction (2)**
28:10;30:15
**satisfactory (2)**
39:7,25
**satisfied (5)**
20:23;28:5;34:2,24;
68:15
**satisfy (1)**
68:20
**satisfying (1)**
32:21
**saw (2)**
13:7;36:25
**saying (8)**
21:5;39:24;48:12;
49:7;50:23;59:7;63:17;
70:4
**scant (1)**
8:14
**scenarios (1)**
52:8
**schedule (5)**
11:8;27:3,5;42:9;
75:13
**scheduled (1)**
75:6
**scheduling (1)**
26:21
**scope (2)**
44:8;46:10
**screen (1)**
23:20
**scrooge (2)**
14:1;17:13
**seasoned (1)**
65:16
**second (11)**
7:17;9:19;12:3;
40:25;44:20;46:25;
49:11;66:24;68:10,11;
71:3
**Section (1)**
15:9
**securities (20)**
44:11,12,24;45:3,21;
52:4;60:6;62:5,9,12;
63:20,20,21;64:20,20,
25;65:8,10;68:18;72:2
**security (1)**
45:11
**seek (1)**
69:8
**seeking (1)**
59:21
**seeks (1)**
56:12
**seem (1)**
38:16
**seemed (2)**

23:24;34:22
**seems (4)**
6:22;24:1;58:7;
61:17
**select (3)**
44:17;45:13;48:12
**senior (2)**
13:18;15:14
**sense (1)**
15:5
**sent (1)**
45:10
**separate (3)**
13:7,22,23
**September (1)**
7:20
**serious (1)**
34:23
**services (1)**
15:22
**set (7)**
7:7;8:18;18:17;
33:16;64:14;71:16;
72:24
**settled (2)**
56:24;66:16
**settlement (21)**
5:19;9:15;27:22;
29:9;34:9;35:7,7,11,18,
19,19,23;36:3,8;37:5;
39:12;41:12,12,24;
51:24;60:17
**settlements (1)**
35:12
**settles (1)**
60:12
**settling (1)**
36:25
**seven (1)**
13:21
**shall (1)**
71:23
**share (3)**
19:21;23:5;58:3
**shareholder (6)**
42:2;46:6,11;51:23;
64:24;65:6
**shareholders (15)**
44:18;45:10,17,19,
23;46:11;50:1,4,5,8;
51:16;52:12,21,25;
72:12
**shield (1)**
25:13
**shifting (2)**
56:16;57:11
**short (1)**
6:15
**shortly (2)**
68:1;75:1
**show (4)**
14:6;45:18;47:23;
70:24

Case: 19-30088   Doc# 6782   Filed: 04/16/20   Entered: 04/16/20 12:46:45   Page 88
of 91

**shown (1)**
40:20

**shut (2)**
59:9;60:3

**sic (2)**
17:17;41:3

**side (2)**
9:10;14:25

**sign (4)**
20:5;24:13;31:25;
42:5

**signed (1)**
66:11

**signing (1)**
24:11

**similar (4)**
23:19;38:20;40:17;
60:8

**similarity (2)**
56:2;66:10

**simple (1)**
17:24

**simplicity (1)**
33:17

**simply (6)**
9:3;21:15;43:8;
68:14;72:19;74:16

**simultaneous (1)**
24:17

**single (2)**
44:10;45:25

**SINGLETON (11)**
19:5,7,9,10,14,15,18;
20:20;21:2,3;22:8

**sinister (1)**
30:5

**sit (2)**
33:1;66:19

**situation (3)**
56:6,7;58:22

**situations (1)**
75:19

**six (3)**
46:15,24;50:18

**skip (1)**
28:9

**Slack (6)**
71:12,13,13;73:2,6,
23

**small (2)**
46:10;68:20

**Smith (1)**
25:9

**smoothly (1)**
31:1

**so- (1)**
64:14

**so-called (1)**
21:25

**sole (1)**
71:24

**solely (1)**
73:11

**solution (3)**
37:15;38:12;39:25

**solved (1)**
34:24;35:3;75:9

**solvent (1)**
58:2

**somebody (3)**
33:12;57:25;64:9

**somehow (1)**
59:17

**someone (4)**
5:11;6:19;22:4;
73:20

**sometimes (1)**
37:18

**somewhat (1)**
55:17

**soon (4)**
30:12,21;32:7;74:16

**sorry (8)**
7:9;19:7,9;20:8;
21:3;41:3;42:22;73:20

**sort (3)**
16:10;33:19;52:15

**sought (1)**
30:3

**sound (2)**
14:1;17:13

**sounds (1)**
17:7

**source (1)**
39:18

**Southern (1)**
69:15

**spare (3)**
12:8;74:23,23

**sparse (1)**
8:14

**speak (7)**
5:12;8:21;9:2;21:12;
33:21,25;53:22

**SPEAKER (2)**
22:13;36:18

**speaking (4)**
5:10;19:8;24:18;
25:5

**speech (2)**
24:17;37:3

**speed (1)**
67:16

**spend (2)**
15:2;49:19

**spent (3)**
18:13,16;25:12

**spoken (1)**
7:14

**spot (1)**
66:4

**square (1)**
62:16

**squarely (2)**
62:20;65:13

**staff (5)**

13:1,5,6,20;23:4

**stage (1)**
16:11

**stakeholders (4)**
29:18,23;30:25;56:5

**stand (2)**
18:2;73:24

**standard (2)**
44:5;48:18

**standards (1)**
43:18

**standing (13)**
5:20;42:10;43:5,8;
44:21;56:7,10;57:16;
68:7;71:23;73:11;
75:20,24

**start (5)**
5:16;13:14;18:23;
43:4;44:10

**starting (1)**
35:25

**State (7)**
22:10;26:17,19;
44:22;62:4,8;63:17

**stated (3)**
61:9;62:11,11

**statement (9)**
9:23;20:1;31:23;
40:14;44:16;45:6,19;
64:16;72:10

**statements (3)**
6:8;45:2;64:21

**states (1)**
45:12

**stating (1)**
44:14

**statute (3)**
66:25;67:2,8

**Statutes (1)**
66:15

**stay (2)**
61:14;63:3

**stay-at-homes (1)**
26:22

**stayed (1)**
46:19

**stems (1)**
59:6

**step (1)**
39:17

**Stephen (2)**
19:23;27:24

**steps (1)**
39:14

**still (10)**
12:19;20:2;46:18;
47:2;49:17;53:2;66:21;
67:14;68:5;74:17

**stipulation (6)**
71:20,22;72:18;
73:10,24;74:1

**stock (1)**
29:4

**STONE (6)**
74:7,9,11,11,14;75:3

**Stone's (1)**
57:8

**stop (3)**
41:9;65:20,21

**story (1)**
61:22

**strange (1)**
74:18

**structured (3)**
28:10,11;30:4

**stuff (1)**
74:24

**subject (9)**
11:6;20:16,18;28:4;
29:7;41:17;51:12;
56:19;75:5

**submission (1)**
74:22

**submit (1)**
42:4

**submitted (2)**
73:9;75:20

**subpoenas (2)**
56:7;74:15

**subro (2)**
34:5,8

**subrogation (10)**
29:1;31:7;32:12,22,
23;33:17;38:7,17;
39:13,19

**subro's (1)**
40:16

**substantial (1)**
13:15

**substantive (3)**
25:20;43:6;49:12

**successful (2)**
28:12;60:23

**suddenly (1)**
22:2

**suggest (2)**
38:16,19

**suggested (1)**
8:4

**suggesting (3)**
34:23;38:21;57:13

**summarized (2)**
19:20;33:10

**summary (3)**
17:25;43:7;69:2

**sums (1)**
13:15

**supplement (6)**
7:5;10:2;11:22;12:9,
22;24:3

**support (2)**
20:2,25

**supporting (2)**
13:21;17:20

**supportive (1)**
38:13

**supposed (1)**
39:12

**sure (5)**
9:5;14:13,24;41:14;
74:16

**surreply (1)**
52:3

**survive (1)**
47:16

**switch (1)**
49:19

---

## T

**table (1)**
11:6

**talk (2)**
27:11;54:2

**talked (3)**
18:14;34:17;72:8

**talking (3)**
11:5;16:11;18:13

**TCC (38)**
5:17,19,21,25;6:21;
8:1,21;9:6;20:2;21:21;
26:2;34:7,9;35:5;40:9;
51:10,20;54:18;55:16;
56:9,12,23;57:21;58:9;
59:6,18;64:19,23;65:3,
12,16;66:1,11;70:3;
71:21,22;72:15;73:11

**TCC's (7)**
34:24;54:7;55:12;
57:3;58:7;64:17;72:9

**team (5)**
12:1;14:18,18;16:4;
23:21

**technically (1)**
16:7

**telling (2)**
49:4,6

**ten (1)**
18:13

**tentative (9)**
28:1;31:5;40:12;
41:10;43:25;55:12;
71:18;72:5,20

**terminate (3)**
10:3;30:1,18

**termination (2)**
29:12,20

**terms (9)**
16:11;25:21;28:13,
15,17;39:9,12;52:7;
64:14

**thereby (1)**
51:19

**therefore (4)**
29:8;47:14;63:1,2

**thesaurus (1)**
37:21

**thinking (2)**
38:8;48:7

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 89
of 91

**third (5)**
  12:5;55:24;58:5,12;
  71:5
**thirty (1)**
  54:10
**though (2)**
  43:12;45:1
**thought (5)**
  5:16;16:3;23:14;
  53:24;54:24
**thoughts (1)**
  43:1
**thousands (1)**
  57:24
**threatened (1)**
  44:19
**threatening (1)**
  50:4
**three (6)**
  11:24;14:6;20:6,9;
  36:11;67:14
**threw (2)**
  7:11;8:10
**throw (1)**
  22:24
**thus (1)**
  58:23
**tied (1)**
  8:5
**timely (1)**
  28:12
**times (2)**
  41:15;70:14
**timing (2)**
  24:21;31:25
**today (26)**
  5:8;13:13,13;17:8;
  18:3;20:5;24:9,11,15;
  25:16;26:6,18;27:19;
  28:2;31:18;32:3;37:2,
  11;39:25;41:11,13,17,
  21;42:9;43:5;74:18
**today's (2)**
  31:21;42:9
**to-do (2)**
  27:9;74:25
**told (2)**
  15:12;49:17
**tomorrow (2)**
  13:13;20:5
**took (2)**
  55:19;57:7
**tort (1)**
  29:6
**totally (2)**
  57:16;58:19
**touch (1)**
  42:3
**towards (1)**
  21:23
**track (6)**
  30:10,10;33:11;
  34:14;38:14;42:24

**traditional (5)**
  15:11,17;17:2;18:2;
  63:19
**traditionally (1)**
  70:14
**train (4)**
  30:10,10;31:1;38:14
**transferred (2)**
  16:1;33:4
**transparency (1)**
  22:1
**treasurer (1)**
  33:12
**treated (4)**
  15:19;26:5;33:5;
  44:17
**treatment (1)**
  10:19
**tried (3)**
  38:13;59:10;75:9
**triggered (1)**
  10:6
**triggers (1)**
  26:19
**Trotter (18)**
  5:17;6:5;7:14;9:23;
  10:11;11:25;13:19;
  14:8,10;15:12;16:12,
  15;17:22;18:8;23:11;
  34:19;65:17;75:19
**Trotter/Yanni (3)**
  9:11;20:7;27:17
**trouble (3)**
  13:11;58:6;69:9
**true (5)**
  17:8;45:15;48:15,19;
  68:15
**truly (1)**
  22:4
**trust (60)**
  9:11;15:11,15;14:12,16,
  25;15:7;16:2,6,10;
  17:1,2,6,9;23:1,9,12;
  25:13,19;26:3,25;28:7,
  21;29:1,3;30:17,21;
  31:1,10;32:12,16,23,
  23;33:4,16,16,17,20;
  34:8,14;35:8;38:17,20,
  22,22;39:15,16,19;
  40:19;50:2;51:11;
  52:24;56:16;57:11,19;
  66:12,20,23;67:12,16;
  68:6
**trustee (9)**
  14:10,13,19,22;16:4,
  9;34:16;57:19;65:17
**trusts (1)**
  52:19
**trust's (1)**
  39:13
**try (10)**
  5:9,12;8:7;26:13;
  29:15,15;55:3;61:2;

62:23;75:7
**trying (11)**
  6:12;18:17;21:23;
  25:25;36:20,22;37:22;
  52:19;67:13,17;68:4
**Tsekerides (1)**
  56:11
**Tsekerides' (1)**
  56:3
**TUESDAY (1)**
  5:1
**tunc (1)**
  23:21
**twelve (3)**
  43:16;70:15,20
**twenty (1)**
  22:2
**twice (1)**
  9:9
**two (14)**
  13:17;18:7;19:1,3;
  20:5;23:18;35:12;45:8;
  52:5,9;56:22;67:1,3;
  71:16
**type (3)**
  16:25;21:11;45:25
**types (1)**
  40:20
**typically (1)**
  37:21

**U**

**Uh (1)**
  54:9
**ultimately (1)**
  9:14
**unclear (3)**
  13:2;31:21,25
**unconventional (1)**
  15:23
**uncord (1)**
  41:3
**uncorrected (1)**
  37:3
**under (36)**
  9:14;14:16;15:9;
  17:9;20:24;28:7,13,15,
  17,22,24;29:1,3,12;
  32:10,14;33:5;37:5;
  39:4,11,20;51:12,18;
  52:13;53:1;54:16;
  56:25;58:3;61:18;62:9,
  11;65:8;66:17;74:1,22;
  75:12
**underlie (1)**
  60:6
**underscore (2)**
  21:5,10
**understandable (1)**
  46:5
**understands (1)**
  22:5

**Understood (3)**
  19:15;22:8,20
**undertaking (2)**
  19:21;26:11
**unfiled (1)**
  66:14
**unfortunately (1)**
  43:12
**UNIDENTIFIED (2)**
  22:13;36:18
**Unless (9)**
  5:15;37:6;40:2;
  60:22;71:15;73:2,3,19;
  75:4
**unlikely (1)**
  47:7
**unnecessary (2)**
  22:24;57:17
**unprotected (2)**
  66:15,16
**unpursued (1)**
  66:14
**unsecured (1)**
  74:12
**unsuccessfully (1)**
  75:10
**unsupported (1)**
  43:21
**up (22)**
  8:5,8;9:2;11:16;
  12:13;16:14;18:2,17;
  21:12;23:20;24:6;
  30:14;33:16;37:9,14;
  49:11;50:2;52:24;
  60:10;67:16;74:21;
  75:8
**uploaded (5)**
  5:24;6:4;11:22;
  12:10;23:19
**upon (9)**
  7:20;18:10;43:20,25;
  56:19;59:14;66:4;
  68:21;69:17
**upset (1)**
  41:1
**use (2)**
  30:8;54:11
**used (2)**
  25:13;38:18
**Utilities (1)**
  36:12
**utilizing (1)**
  59:16
**utter (1)**
  37:22

**V**

**vacuum (1)**
  49:10
**valid (2)**
  64:25;68:16
**valuable (1)**

68:5
**value (8)**
  15:22;29:2;51:10,16;
  66:21,22,23;68:4
**valueless (1)**
  51:20
**various (4)**
  6:7;13:20;14:25;
  44:22
**vegetation (1)**
  65:2
**vendor (3)**
  56:7,18;57:4
**venue (1)**
  58:17
**versus (4)**
  44:6;47:21;54:2;
  57:21
**victim (11)**
  25:22;28:7,21;29:2;
  30:17,25;33:4,5,20;
  38:22;39:15
**victims (22)**
  10:3,13,18;11:10;
  15:3;16:3;24:6;30:12;
  34:14;39:3;40:19;41:2;
  50:2;51:11;57:18;
  66:12,20,23;67:12,16;
  68:5;69:24
**victims' (1)**
  74:5
**video (2)**
  27:8;75:8
**view (8)**
  24:21;28:4;37:9,9,
  13,14;41:15;73:8
**violated (1)**
  36:6
**violations (2)**
  60:6;63:21
**virtually (1)**
  15:10
**virtue (2)**
  59:18;63:24
**vis-a-vis (1)**
  60:25
**visibility (1)**
  22:1
**vote (1)**
  10:18
**voted (2)**
  10:14;24:6
**votes (2)**
  10:5;11:8
**voting (1)**
  12:4
**VTCC (1)**
  54:15

**W**

**wait (10)**
  19:13,16;46:21,23;

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 90
of 91

47:9,24;48:25,25;51:4;
66:25
**waiting (2)**
5:11;49:18;65:24
**waived (1)**
46:3
**wants (5)**
14:23;41:21;58:9;
73:20;75:4
**waste (1)**
51:5
**watched (1)**
37:17
**way (13)**
15:17;17:17;25:23;
28:10,11;30:4,15;
32:10;34:3;38:13;
45:11;74:4;75:18
**ways (1)**
65:12
**weekend (1)**
18:13
**weeks (2)**
67:13,16
**Weil (5)**
19:23;27:24;36:5;
39:16;71:14
**Welcome (3)**
5:6;20:20,25
**weren't (2)**
15:3;61:4
**what's (13)**
13:12;15:10;17:25;
22:1;24:2;35:21;40:12;
41:13;48:7;49:22;64:3;
65:5;68:10
**whereas (1)**
45:11
**Where's (1)**
66:25
**Whereupon (1)**
75:25
**whole (1)**
10:6
**who's (3)**
13:19;19:8;42:19
**who've (2)**
21:6,12
**wildfire (5)**
10:3,13;11:8,10;
44:19
**Williams (2)**
44:23;45:4
**willing (1)**
20:2
**Winthrop (1)**
27:11
**wish (10)**
16:17;22:7,10;24:25;
46:19;55:1;71:12;73:7,
14;75:5
**wishes (4)**
5:15;21:1;40:4;64:6

**within (7)**
11:19,24;20:5,9;
48:20;52:10;66:12
**without (5)**
18:5;26:1;29:12;
34:1;69:10
**wondering (2)**
17:18,21
**word (2)**
18:23;37:1
**words (5)**
30:9;37:20;58:6;
64:17,17
**work (17)**
11:25;14:11,13,15;
16:5;17:16,17;18:12,
19;21:8,13;23:10;
24:20;25:25;26:13;
32:10;61:2
**worked (3)**
19:11;21:6,22
**working (4)**
9:19;16:8;18:16;
21:9
**works (1)**
32:1
**world (1)**
45:10
**wrap (1)**
37:9
**wrench (1)**
22:25
**writing (1)**
34:19
**written (1)**
74:20
**wrong (1)**
48:7

**Y**

**Yanni (17)**
5:17;6:5;7:13;9:23;
10:11;12:1;13:19;14:9,
10;17:14,21;18:14;
19:11;21:5;23:10,20;
75:19
**Yanni's (1)**
18:10
**year (1)**
66:19
**year-and-a-half (1)**
37:17
**year-and-three (1)**
67:6
**years (3)**
37:6;67:1,3
**yesterday (10)**
7:5;9:21;10:2;12:9;
13:9;20:22;21:16;24:3;
55:5;57:1
**York (1)**
69:15

**1**

**1 (1)**
72:18
**1,000 (4)**
58:24;59:2;60:14;
61:8
**1,375,000 (1)**
7:6
**1.5 (2)**
35:15,23
**1.5-million-dollar (2)**
35:18;36:8
**10,000 (1)**
60:14
**10.9 (3)**
32:14,16,25
**100 (1)**
59:5
**1054 (1)**
30:20
**1092 (1)**
35:18
**10b5 (1)**
54:16
**11 (4)**
8:19;30:20;32:15;
56:5
**11:46 (1)**
75:25
**1103 (1)**
16:7
**12b6 (2)**
63:19;68:15
**13.5 (4)**
14:22;15:2;29:2;
34:15
**13.5-billion-dollar (1)**
9:15
**14 (1)**
5:1
**150,000 (1)**
18:9
**16th (2)**
60:1,10
**175 (1)**
17:16
**1934 (1)**
44:24
**1st (2)**
56:4;57:8

**2**

**2 (2)**
71:21;72:19
**2.5 (12)**
7:19;8:16;9:9,9,11;
10:10;11:23,24;20:6,6;
23:9,10
**2004 (7)**
55:16,24;58:8;66:9;

67:19;68:9;74:15
**2004s (1)**
75:1
**2016 (1)**
44:12;45:5
**2017 (1)**
35:15
**2018 (1)**
35:17
**2020 (2)**
5:1;10:11
**2021 (1)**
67:9
**21 (2)**
10:1,6
**227 (1)**
45:4
**233 (1)**
44:11
**23rd (2)**
44:12;45:5
**25.5 (2)**
28:22,23
**25.5- (1)**
29:7
**25th (1)**
6:21
**27th (1)**
75:7
**29th (3)**
67:9;75:7,11

**3**

**3 (2)**
12:9;72:3
**3.5 (3)**
32:4,4;33:13
**30th (6)**
10:11;12:3,5;20:12,
13;30:20
**31st (2)**
12:6;66:19
**330 (2)**
15:9;16:7
**362 (1)**
63:24

**4**

**4 (6)**
11:23;32:4,5;35:16,
24;66:2
**4.5-million-dollar (1)**
14:4
**452 (2)**
35:25;36:7
**4-million-dollar (2)**
29:9;33:13

**5**

**5 (3)**

20:7;50:19,19
**5- (1)**
50:20
**510b (2)**
58:3;59:16

**6**

**6 (4)**
7:8;18:14;24:2;
50:19
**6,000 (1)**
50:20
**600 (1)**
50:19
**6486 (1)**
6:22

**7**

**7023 (1)**
58:21
**723 (1)**
60:23
**770 (1)**
35:20

**9**

**9,767,093 (1)**
12:4
**9,767,593 (1)**
10:11

Case: 19-30088    Doc# 6782    Filed: 04/16/20    Entered: 04/16/20 12:46:45    Page 91
of 91