# Exhibit B-1

IT Software Services -- Phase III



# Contract Work Authorization (CWA) Change Order

This change order to Contract Work Authorization (this "CWA") No. C14760 is issued under and pursuant to the Master Service Agreement No. 4400011340 (C73), dated January 19, 2017, as amended (the "MSA"), between KPMG LLP ("Contractor"), a Delaware limited liability partnership, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

| | | |
|---|---|---|
| **Contractor's Legal Name:** | KPMG, LLP | **This Change Order consists of 11 pages.** |
| **Contractor's Address:** | PO Box 120001<br>Dallas, TX 75312 | |
| **Project Name**: | SiteMinder to Ping Migration | |
| **Job Location**: | San Francisco and other various PG&E locations, KPMG office and KPMG other locations | |
| **PG&E WORK SUPERVISOR**: | Jacob Heffelfinger | |
| **PHONE**: | | |
| **DATE PREPARED**: | December 20, 2019 | |

**CHANGES:** The Parties hereby modify the Contract Work Authorization referenced above as follows:

1. The Parties hereby modify the Contract Work Authorization referenced above as follows: CWA Term is amended to expire on 5/22/2020, CWA Completion is amended to expire on 5/2/2020, CWA funding increased to extend KPMG team for additional 18 weeks.
2. Additional professional fees totaling $588,120 as noted below.
3. Your work under this Agreement is subject to the applicable procedures and/or processes approved by the Bankruptcy Court in

    PG&E's bankruptcy proceeding (Bankruptcy Case No. 19-30088 (DM)) in the United States Bankruptcy Court, Northern District of California, San Francisco Division for the retention of counsel [outside professionals] and those procedures and processes are expressly incorporated herein, as they may be changed from time to time by the Bankruptcy Court.

**ATTACHMENTS:** The following are attached to this CWA Change Order and incorporated herein by this reference.

| **PRICING CHANGES**: | Previous Total CWA Value: | $ __1,062,135__ |
|---|---|---|
| | Addition or Deduction: | $___588,120__ |
| | Revised Total CWA Value: | $___1,650,255___ |

All other terms and conditions of the CWA, as it may have been amended by previous CWA Change Order(s), if any, shall remain the same.

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CWA CHANGE ORDER.**

| **PACIFIC GAS AND ELECTRIC COMPANY** | | **CONTRACTOR: CONSULTANT NAME** | |
|---|---|---|---|
| Signature | *Lazaro Hernandez* | Signature | *Michael Gomez* |
| Name | Lazaro Hernandez | Name | Michael Gomez |
| Title | Manager, Sourcing Operations | Title | Principal |
| Date | 12/23/2019 | Date | 12/20/19 |



Contract Work Authorization No.

CWA Change Order No.3

| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | | **Contractor Representative** | |
| **Phone** | | **Phone** | |
| **Email:** | | **Email:** | |
| **Accounting Reference** | Invoices should be sent to PG&E Law Department Finance Group, P. O. Box 7133, San Francisco, CA 94120 or emailed to GenlCnslLawPaymentProcessingGroup@pge.com. | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies:** | ☐ Document Services (Signed Original Copy) Mail Code N5D | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |



**PG&E BILLING REQUIREMENTS AND PROCEDURES**

(References herein to "we" are to PG&E and references to "you" herein are to Contractor.)

**Billing Requirements:**

1. We agree to reimburse you for your out-of-pocket expenses at your actual net cost. All disbursements (including lodging, travel, out-of-pocket copying service, transcripts, and the like) must be included with your statements with supporting documentation for all lodging and travel expenses (other than nominal amounts) and for each individual item the cost of which is $75.00 or greater.

2. All expenses shall be reasonable, ordinary, actual net cost incurred and paid by you. All expenses shall be billed at cost. Please note that air travel must be at coach rates and all rental car costs must be at subcompact rates unless otherwise expressly authorized in writing. We agree that expenses for lodging, meals, and transportation shall be at reasonable rates and that you will exercise prudence in incurring such expenses. Mileage will be paid at the Internal Revenue Service's current year approved standard rate.

3. Normal overheads shall be considered a bundled component of your hourly fees and not charged or invoiced to PG&E. If any such charge appears, we will automatically deduct it from your invoice. Normal overheads for purposes of this Contract are secretarial services, administrative, library services, clerical support, office supplies, postage, routine office copying, telecopying or "fax," local telephone, filing, file indexing, bill preparation, staff overtime, word processing, and meals or snacks (unless while travelling or otherwise approved in advance). Time spent in the preparation of fee applications to the bankruptcy court is not considered normal overhead, except to the extent the activities are substantially similar to Contractor's routine bill preparation outside of bankruptcy proceedings.

4. When photocopying jobs, other than routine office copying, are required, you must use the least expensive service available. In any event, we will pay no more than $0.10 per page other than for unusually sized documents or color photocopying. Any job, whether by you, a vendor, or a service, exceeding $1,000 requires advance approval confirmed in writing.

5. Travel time shall not be considered as actual time worked unless approved, in advance, by the principal PG&E attorney assigned to the matter. In the event you or your employee works during travel time, such efforts shall not be considered travel time for the purpose of this Contract. Air travel time shall be billed at one-half the hourly rate of straight time rates unless you work during air travel.

**Billing Procedures:**

In order to process your statements, PG&E must have the following information with *every* monthly statement:

1. <u>A cover summary sheet on your letterhead that includes</u>:

    - Your remittance address if different than your letterhead address;

    - Your taxpayer ID number;

    - The project name;

    - The calendar period covered by the statement; and,

    - A summary statement of the professional fees and disbursements together with the invoice total.



2. <u>A separate statement of supporting detail on your letterhead with</u>:

    - The Project Name;

    - Name and job title (e.g., consultant) of each worker on each date work is done;

    - Time worked on each date work is done, separated by function;

    - Description of work done on each date;

    - Hourly rates for each worker;

    - Disbursements;

    - Total amount billed; and,

3. <u>Additional materials to include with your statement</u>:

    - You should attach receipts or other documentation for individual items costing $75 or greater, including photocopying and lodging.



# Change Order #3 – SiteMinder to Ping Migration 2020 Extension

This Change Order ("CO") outlines changes to the SiteMinder to Ping Migration Initiatives engagement between Pacific Gas and Electric Company ("PG&E," "Company," or "Client") with KPMG LLP ("KPMG" or "Contractor") to perform the services described below.

The governing Master Services Agreement for this work is **#4400011340**, executed January 19, 2017 and supersedes all other oral and written representations, understandings, or agreements relating to the subject matter hereof, as amended and as supplemented by the Systems Implementation Addendum in Appendix A.

### 1.0    SCOPE OF WORK

This section of the SOW does not change

### 1.1 ACTIVITIES NOT IN SCOPE

This section of the SOW does not change

### 2.0    DELIVERABLES

This section of the SOW does not change

### 3.0    KEY PERSONNEL

This section of the SOW does not change

### 5.0    ENGAGEMENT FEES and EXPENSES

This section supersedes section 5 of the SOW.

KPMG's professional fees are based upon the specified skill level of the professionals providing the services and the amount of time and materials required to complete the engagement.

**Fees.** Based upon the engagement scope, assumptions, and estimated hours, KPMG anticipates total fees of **$1,592,520.** Our professional fees for the services outlined in the SOW and this Change Order are further discounted from the professional fee hourly rates outlined in the MSA. As such, the professional fees included in the SOW and this Change Order are not subject to further discounting, and both the volume rebate and early pay provisions included in the MSA does not apply. Execution of this Change Order shall satisfy the requirement of the MSA Exhibit C regarding hourly rates.

**Expenses.** KPMG team members' out-of-pocket expenses will be capped at 10 percent of total fees, or **$57,735.** These expenses will cover the travel costs of non-local professionals to and from the Client's primary office of 77 Beale St, San Francisco, CA, or other location as deemed necessary by Client. Meals will be covered for non-local professionals based upon a per diem rate of $76 per day. KPMG will bill its actual cost for hotel at a rate not to exceed $300 per night, which shall satisfy the provisions of section 5.1.7 of Exhibit A of Attachment 1 to the MSA.



The table below shows the estimated fees and expenses for the period of 1/2/2020 through 5/1/2020.

| KPMG Professional | Level | Duration | Hours | Fee |
|---|---|---|---|---|
| **Michael Gomez** | Principal | January – May 2020 | 18 | $0 |
| **Robert Villegas** | Manager | January – May 2020 | 174 | $260.00 |
| **Matt Rice** | Lead Specialist | January – May 2020 | 696 | $260.00 |
| **Rohit Nagdeo** | Lead Specialist | January – May 2020 | 696 | $260.00 |
| **Rama Bhaskara** | Senior Associate | January – May 2020 | 696 | $260.00 |
| **Sub-total of additional hours and fees** | | | **2,280** | **$588,120** |
| ***Expenses** | | | | **$57,735** |
| **2019 Services Fee Amount** | | | | **$1,004,400** |
| **Total fees and expenses** | | | | **$1,650,255** |

## 6.0 ENGAGEMENT ASSUMPTIONS

This section of the SOW is modified to reflect the updated PG&E timeline commitments as noted below: The success of this Project is highly dependent on Project coordination and support from PG&E:

PG&E will work with KPMG to resolve any and all issues related to the Project in a timely fashion
- PG&E will identify a program manager and technical architect to work with KPMG. The PG&E program manager will assist in identifying appropriate resources to engage to help obtain relevant technical information, actively participate in technical analysis and performing Project management and status reporting tasks. PG&E will also identify a Project owner for this project. KPMG will transfer the information and knowledge of the Project to the identified Project owner.
- The PG&E program manager will oversee the conduct of this project, including coordination of PG&E resources needed and review of draft deliverables. PG&E personnel assigned to the Project will review draft deliverables on a timely basis.
- PG&E and KPMG will conduct this Project collaboratively, whereby PG&E will assign representatives to work with KPMG professionals throughout the project. Should PG&E be unable to assign representatives to work with KPMG, KPMG and the Project sponsor would agree to meet and determine the impact and the appropriate course of action.
- PG&E personnel will perform the actual migration of policies and configurations to the upper environments with KPMG providing assistance/support to PG&E personnel should issues arise
- PG&E management is responsible for establishing and maintaining an effective internal communication and control structure.
- PG&E will provide appropriate workspace for the KPMG resources on-site, including, but not limited to, telephones, workstations, printers, whiteboards, office supplies, photocopiers, internet access, and fax machines.
- PG&E will provide timely sign-off for each Project phase. Deliverable sign-off will occur within five working days from the submission of deliverables.
- PG&E will provide resources, including hardware, software, and personnel
- PG&E will be responsible for the purchase and acquisition of hardware and software necessary to complete the scope of this engagement

- PG&E will be responsible for the hardening of operating systems on the in-scope servers, according to PG&E's information security and support standards
- PG&E will provide all necessary software, hardware, and resources necessary for testing activities
- PG&E will assign resources for the purpose of user acceptance testing. Applicable acceptance criteria and acceptance testing protocols will be developed in conjunction with the identification of the business, functional, and technical requirements, and in the development of the testing plans
- Any enhancements or requirement changes after implementation will require additional KPMG hours and effort
- KPMG will not be directly responsible to fix any product defects, but will work with product vendor to resolve the defects under PG&E's vendor support contract
- The first level of operational support will be provided by PG&E
- Authorized support activities may include:
  - Completion of items identified on the issue log
  - Assigned KPMG resource will work with the KPMG engagement manager to complete all necessary issue tracking and resolution documentation
- KPMG will not be responsible for cleansing of inaccurate data within the current directories or data sources
- KPMG will not be responsible for technical troubleshooting non-production and production system
- While KPMG is being selected as the business integrator of the Ping implementation, KPMG will not be responsible for activities related to technical support of production solutions after deployment is complete
- The responsibility for establishing and maintaining adequacy of the controls in place over security and directing activities related to the assessment of business processes and controls rests with management of PG&E. With regard to KPMG's services, PG&E is responsible for:
  - Designating a management-level individual who will have responsibility to oversee, along with the KPMG team, the Project progress and address issues as they arise
- KPMG efforts and timelines were created based on assumptions of PG&E maintaining Project deliverable timeline commitments. Should PG&E delay in delivery of Project commitments, KPMG timelines will be impacted and may result in the need for additional time, effort and budget.
  - This effort as modified by this Change Order is updated based on PG&E's timeline commitments:
    - Wave 1 applications being deployed to PROD environment by 12/6/19
      - Wave 1:
        - Mobile Home Park
        - EIMP
    - Wave 2 applications being deployed to QA environment by 2/14/20
      - Wave 2:
        - ExpressConnect (with proxy app and legacy version, "CCOWeb")
    - Wave 3 applications being deployed to QA environment by 3/13/20
      - Wave 3:
        - MyAccount (with proxy app)
        - ShareMyData (all 3 portals)
        - DownloadMyData
    - Wave 1, Wave 2 and Wave 3 applications being deployed to PROD environment by **4/10/2020**
    - Additional applications in scope, but not in Wave 1, Wave 2 and Wave 3, will be deployed as schedule and resources allow, and are not guaranteed to be deployed to PROD before the end of this SOW
      - Applications may include, but are not limited to:
        - SAP HR "MyPortal"
        - BOBJ
        - OMT Mobile
      - Application scope contains the following additional applications:
        - Building Benchmarking
        - Property Management Portal
        - Mapping apps (PV RAM Maps, GasInterconnect, etc)
        - CC&B
        - EI
        - ESFT
        - RPMS (legacy MetricStream)
        - eTransDataFileShare



- GenRef
- GTS
- Monitoring Tool
- ODMS (internal and external)
- Outage Tool
- PGE Connect NPS
- Remote Connect/Disconnect
- Customer Care Rule 24
- JUMP

▪ PG&E gives KPMG the right to use PG&E's logo on documents prepared for PG&E internally (e.g., internal presentations, etc.) and for no other purpose.

## 7.0 OTHER MATTERS

This section of the SOW does not change

## 8. SYSTEMS IMPLEMENTATION

This section of the SOW does not change

# Systems Implementation Addendum to

# Master Professional Services Agreement

This SI Addendum ("**SI Addendum**") is made and entered into by and between PG&E ("**PG&E**") and KPMG LLP ("**Consultant**") and, for purposes of the SOW (as defined below), amends the Master Professional Services Agreement ("**Agreement**"), incorporated by reference into the statement of work executed by and between PG&E and Consultant (the "**SOW**"). In the event of a conflict between (on the one hand) the provisions of this SI Addendum and (on the other hand) the provisions of the SOW and Agreement, this SI Addendum will govern with respect to the system implementation services described in the SOW ("**SI Services**"). Any capitalized term not otherwise defined in this SI Addendum will have the meaning ascribed to it in the SOW or the Agreement (as applicable).

1. **Definitions**. "**PG&E Materials**" shall mean any and all materials, facilities, network, hardware, systems, software, data and other equipment or information, owned by or licensed or leased to PG&E (including any Third Party Materials (as defined in Paragraph 3(d) below)), to which Consultant is provided with access in connection with the SI Services and which may be used by Consultant in providing the SI Services, Deliverables and/or Configured System pursuant to the SOW. "**Configured System**" means the Third Party Materials as configured by the SI Services. "**Consultant Knowledge**" includes, in addition to the items enumerated in Section 16 of the Agreement, the following materials and Project tools: (i) components, programs, systems, analysis, frameworks, documentation, drawings, configuration techniques and specifications, owned by or licensed or leased to Consultant or any of the other Consultant Parties, and (ii) any modifications, enhancements, improvements or derivative works of any Consultant Knowledge, irrespective of their date of creation.

2. **Use of PG&E Materials and Acceptance.**

    a. With respect to any PG&E Materials to which Consultant is provided with access in connection with the SI Services, PG&E hereby grants to Consultant a non-exclusive, transferable, sublicensable, paid-up, royalty-free right and license to use, copy, modify and make derivative works of, and transmit such PG&E Materials to the extent necessary for Consultant to provide the SI Services to PG&E.

    b. Upon delivery of a Deliverable or Configured System to PG&E, PG&E shall review the Deliverable or Configured System in accordance with the acceptance procedure and within the acceptance period specified in the SOW, or where no such acceptance period is specified, within ten (10) business days of delivery. PG&E may reject the Deliverable or Configured System within the applicable acceptance period by providing to Consultant a notice of rejection ("**Rejection Notice**") specifying a list of material non-conformities with the specifications set forth in the SOW (the "**Specifications**"). To be effective, the Rejection Notice shall be in writing (email being acceptable) and sent to the Consultant Project Manager specified in the SOW or otherwise identified to PG&E in writing by Consultant. Consultant shall then conform the Deliverable or Configured System to the Specifications and resubmit it to PG&E for review and acceptance in accordance with this Paragraph 2(b). This process will continue until the Deliverable or Configured System is accepted under this Paragraph 2(b). The Deliverable or Configured System will be accepted when the applicable acceptance period has expired without Consultant receiving an effective Rejection Notice, or when PG&E uses such Deliverable or Configured System (notwithstanding any rejection of such Deliverable or Configured System) in a production environment, whichever occurs first.

3. **Warranties and Disclaimers.**

    a. Consultant warrants to PG&E that (i) Consultant will provide the SI Services using reasonable care and skill, and (ii) for a period of ninety (90) days after acceptance thereof, each Deliverable or Configured System as delivered by Consultant will conform to its Specifications in all material respects. Any claim for breach of Consultant's warranties in this Paragraph 3(a) with respect to any SI Service, Deliverable or Configured System must be made by written notice to Consultant within thirty (30) days of provision of such SI Service or within ninety (90) days of acceptance of such Deliverable or Configured System (as applicable). For any such breach, PG&E's exclusive remedies, and Consultant's entire liability, shall be, at Consultant's option, (i) the re-provision of such SI Service, or the repair and replacement of the Deliverable or Configured System (as applicable), or (ii) the refund to PG&E



of the amount paid to Consultant for the specific SI Service, Configured System or Deliverable.

PG&E represents, warrants and covenants to Consultant that (i) PG&E has obtained all consents, permits, licenses and other approvals required (if any) to grant Consultant the rights under Paragraph 2(a) of this SI Addendum, (ii) Consultant's exercise of its rights under Paragraph 2(a) will not infringe, misappropriate or otherwise violate the rights of any third party (including the rights of any owner of Third Party Materials), or violate any applicable law, rule, regulation or other official government release and (iii) PG&E will use the Configured System in accordance with applicable law.

c. **PG&E UNDERSTANDS THAT CONTRACTOR IS PROVIDING THE SI SERVICES HEREUNDER IN RELATION TO PG&E MATERIALS (INCLUDING THIRD PARTY MATERIALS) FOR WHICH CONTRACTOR HAS NO RESPONSIBILITY. EXCEPT AS EXPRESSLY STATED IN PARAGRAPH 3(a) ABOVE, CONTRACTOR EXPRESSLY DISCLAIMS AND MAKES NO WARRANTIES OF ANY KIND OR NATURE WITH RESPECT TO THE SI SERVICES, PG&E MATERIALS (INCLUDING THIRD PARTY MATERIALS), DELIVERABLES, CONFIGURED SYSTEM OR OTHERWISE, WHETHER EXPRESSLY IN THE SOW OR OTHERWISE EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR USE, OR NON-INFRINGEMENT, OR THE APPROPRIATENESS OF PG&E OR THIRD-PARTY SPECIFICATIONS. IN ADDITION, CONTRACTOR EXPRESSLY DISCLAIMS ANY WARRANTY OR LIABILITY WITH RESPECT TO DESIGN OR LATENT DEFECTS OR COMPLIANCE WITH LAWS, RULES, REGULATIONS, OR OTHER OFFICIAL GOVERNMENT RELEASES APPLICABLE TO PG&E, WHICH SHALL BE THE SOLE RESPONSIBILITY OF PG&E.**

d. The SI Services may include providing assistance to PG&E with PG&E's procurement of third-party hardware, software or other items which will be identified in the SOW (such items, together with all other third party items used or provided in connection with the Work and/or Deliverables provided pursuant to the SOW shall be referred to as the "**Third Party Materials**"). Unless otherwise expressly stated in the SOW, PG&E will license or purchase such Third Party Materials directly from the vendor or reseller (which may be an affiliate of Consultant). PG&E retains sole responsibility for compliance with the license terms governing such Third Party Materials, the selection of such Third Party Materials, and, unless the SOW expressly specifies otherwise, the payment therefor. If Consultant agrees in the SOW or otherwise to provide any Third Party Materials, such THIRD PARTY MATERIALS ARE PROVIDED ON AN "AS IS" "AS AVAILABLE" BASIS WITHOUT WARRANTY FROM CONSULTANT, with the exception of any manufacturers' or licensors' warranties which Consultant is able to arrange for PG&E's benefit. Consultant, its Member Firms, and its and their subcontractors, reserve the right to retain ancillary benefits, including credits, rebates or referral fees, they may receive relating to such Third Party Materials, regardless of whether PG&E pays for such Third Party Materials directly, on a pass-through basis, or otherwise. PG&E agrees that the retention of such benefits shall not constitute a conflict of interest.

4. **Deliverables.** Upon full and final payment by PG&E of all amounts due under the SOW, Consultant hereby grants to PG&E a perpetual, non-exclusive, non-transferable, paid-up, royalty-free right and license to use, copy, modify, make derivative works of, distribute, display and perform the Deliverables or Configured System, and any Consultant Knowledge to the extent embedded therein, solely for PG&E's own internal business purposes and subject to any other restrictions specifically set forth in the SOW; provided that PG&E may provide the Deliverables or Configured System to an affiliate or third party (each, an "**Approved Sublicensee**") solely for purposes of operating, maintaining and enhancing PG&E's internal use of the Deliverables or Configured System in PG&E's business. PG&E shall ensure that each such Approved Sublicensee complies with all applicable terms of this SI Addendum and shall be liable to Consultant for any damages caused by an Approved Sublicensee's failure to do so. Except as expressly provided in this Paragraph 4, PG&E may not sell or license, in whole or in part, the Deliverables or Configured System. Consultant shall own all right, title and interest in and to any Deliverables or Configured System produced under this SI Addendum, including any modifications, enhancements, improvements or derivative works of any PG&E Materials (including modifications, enhancements, improvements or derivative works of any Third Party Materials), whether developed by or on behalf of Consultant solely or both parties jointly, other than any PG&E Materials incorporated therein, the rights in which shall remain in PG&E (subject to the license to Consultant granted under Paragraph 2(a) above).

5. **Indemnification.** Without limiting Section 28.2 of the Agreement, PG&E shall indemnify, hold harmless and defend the Consultant from and against any and all Liabilities incurred or suffered by or asserted against the Consultant in connection with a third party claim to the extent resulting from (a) the PG&E Materials and/or any other materials provided by or on behalf of any of the PG&E Parties, (b) Consultant's compliance with any designs, specifications, or instructions provided by or on behalf of any of the PG&E Parties, (c) PG&E's breach or alleged breach of Paragraph 3(b) or Paragraph 4 hereof, (d) use by or on behalf of PG&E of any Deliverables or Configured System other than as provided or updated by Consultant, and (e) any unauthorized use of any Deliverables or Configured System in the possession or control of PG&E or any Approved Sublicensee.

6. **Changes and Adjustment Events**.
    a. The parties acknowledge and agree that the occurrence of any of the following events (each, an **"Adjustment Event"**) may require an extension in the schedule set forth in the SOW and/or an increase in the fees and expenses and/or a change to the nature of the SI Services: (i) a change to, deficiency in, or retraction of information or materials supplied to Consultant by or on behalf of any of PG&E; (ii) a failure by PG&E and/or its vendors to perform any of their respective responsibilities in a timely manner, including the supply to Consultant of adequate resources and information; (iii) the failure of any PG&E Materials provided by or on behalf of PG&E to perform in accordance with applicable specifications; (iv) circumstances beyond the reasonable control of Consultant, including actual or potential force majeure events; (v) any assumption in the SOW not being fully realized; or (vi) PG&E's failure to timely obtain pursuant to Paragraph 3(b) above all of the consents, permits, licenses and other approvals necessary for Consultant to provide the SI Services in the manner, and accordance with the schedule, set forth in the SOW.
    b. In the event an Adjustment Event occurs or the parties agree on a change to the scope of SI Services, Consultant may prepare and provide to PG&E a proposed change order identifying the impact and setting forth any applicable adjustments in the schedule and/or payments to Consultant. An authorized representative of each party shall promptly sign each such proposed change order to acknowledge the impact and to indicate that party's agreement to the adjustments.
    c. Notwithstanding Paragraph 6(a) above, if any delays or deficiencies in the SI Services, or with respect to the Deliverables or Configured System, occur as a result of Adjustment Events, the scheduled completion date under the SOW for the affected SI Services, Deliverables and/or Configured System shall be extended to the extent of any such delays or deficiencies, and Consultant shall not incur any liability to PG&E as a result of such delays or deficiencies.