William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Claimant and*

*Party to California Public Utilities Commission Proceeding I.19-09-016 to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19- 30088.*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>　　　　　　　　　　　Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>***EX PARTE* MOTION OF WILLIAM B. ABRAMS PURSUANT TO B.L.R. 9006-1 REQUESTING ORDER SHORTENING TIME FOR HEARING ON WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019**<br><br><u>Hearing:</u> **Telephonic Appearances Only**<br>Date Request: April 21, 2020<br>Time: 10am PT<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA, 94102 |

William B. Abrams in the above-captioned chapter 11 case, hereby submits this Motion (the "**Motion to Shorten**"), pursuant to Rule 9006-1 of the Bankruptcy Local Rules for United States District Court for the Northern District of California (the "Bankruptcy Local Rules"), for entry of an order shortening time for a hearing on Tuesday, April 21, 2020 at 10:00 a.m. (prevailing Pacific Time), on the *WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019* (the "**Motion to Designate Votes**") filed contemporaneously herewith. William B. Abrams requests that any responses or objections to the Motion to Designate Votes be in writing and filed with the Court and served by 4:00 p.m. (prevailing Pacific Time) on Monday, January 20, 2020.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. SHORTENING TIME FOR HEARING ON THE MOTION TO DESIGNATE VOTES IS WARRANTED

The victim claimant voting process began on March 31, 2020 with a concerted effort by some prominent victim claimant attorneys to drive up the yes-votes before material matters of the settlement (trust agreement, registration rights agreement, dilution terms, etc.) were negotiated and disclosable to victims. There is no rational reason why any victim attorney looking out for their clients' best interests would look to drive to 2/3 vote before these material issues are resolved. This effort to drive up the vote is guaranteed to reduce to leverage of TCC attorneys in the negotiations and undermine the victim's ability to have trust agreement terms in their favor. So, given those facts, why would victim attorneys drive yes-votes prematurely and disadvantage their clients? Are there motivations and incentive structures that would drive victim attorneys to undermine TCC negotiations on behalf of victims?

The more I saw signs of the well-funded strategic effort on behalf of victim attorneys to drive a premature yes-vote (robo-calls, text-message campaigns, primetime TV spots, etc.) the more I questioned the motivations and incentives behind those effort. Even if you are an attorney that believes the eventual trust agreement and registration rights agreement is going to be good, wouldn't you want to hold the voting process until the terms were improved for your clients (early trust funding dates, favorable stock terms)? Why was it that the TCC did not participate in the cross-examination of PG&E witnesses at the California Public Utilities Commission to advance their clients' interest? Why would TCC and Fire Claimant Professional attorneys sign a Restructuring Support Agreement (RSA) that would prevent them from speaking to their clients about the risks of the plan and the yet to be completed trust agreement? Why did the TCC members resign? Why was every disclosure I requested to be in the disclosure statement so that victims could get a fair and balanced view of the plan unsupported by the TCC and argued against by the Debtors?

One of the first questions that Your Honor asked me when I first got engaged in this case was to ask if I was here in "good-faith"? This question kept me up all the following night not because I was bothered by the question but because I realized it was the most salient question in this case. Of course, I was there in good-faith given that I lost money every time I went into the courtroom or put pen to paper to write a motion. I needed to go home in the evenings and look my wife and my kids in the eyes knowing that we all almost lost our lives the night of October 8, 2017. There could be no other reason other than good-faith that I was in the courtroom.

Now, I know for certain that many of the attorneys and others that represent parties to this proceeding are also here in good-faith and acting in the best interests of their clients. There are certainly many in the courtroom looking out for the interests of victims. However, there is too much evidence coming to the surface not to consider this matter in full. We must consider whether or not the tens of billions of dollars at stake in this proceeding have resulted in conflicts of interests that are driving adverse outcomes for victims and the public. These conflicts with victim interests increasingly appear to be alignments of interests with shareholders, bondholders and/or other investor interests and at a minimum are deserving of full disclosure to victims and this court. The litigation financing, "lines of credit" and other potential conflicts interwoven across these stakeholders deserves sunlight. I sincerely hope that through this full disclosure there are not the types of

prevalent conflicts that appear to be present at the surface. I hope that PG&E victims are not being revictimized again through this bankruptcy process. However, hope alone is not sufficient to drive a just plan and voting process for PG&E victims.

The court should consider the breadth of names mentioned close to material matters in this case with the half disclosures connected to these "lines of credit" and litigation financing issues. It is not enough to half disclose conflicts to distract from intermingled funding in order to partially comply with bankruptcy rule 2019. It is not enough to deliver misleading advertising vote solicitations void of disclosures and call that compliant with 11 U.S.C. §§ 1125(B) AND 1126(E). There is more evidence that needs to be considered by the court and I urge Your Honor not to wait until a later date. These matters are too critical to the case to be pushed to a later date when more votes and the voting process itself would undermine the plan and the process as a whole. As a PG&E wildfire survivor, it is with respect and a heavy heart that I request a hearing to be set to consider these issues.

### III. NOTICE

Notice of this Motion to Shorten will be provided to (i) counsel to the Debtors; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) counsel to the Creditors Committee; (iv) counsel to the Tort Claimants Committee; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the Office of the California Attorney General; (viii) the California Public Utilities Commission; (ix) the Nuclear Regulatory Commission; (x) the Federal Regulatory Commission; (xi) the Office of the United States Attorney for the Northern District of California; (xii) counsel for the agent under the Debtors' debtor in possession financing facility; and (xiii) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002. As a Pro Se party to this proceeding, William B. Abrams respectfully submits that this will be accomplished through email to the service list and that no further notice is required. I have filed this Motion to Shorten and the "*WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019*" according to the court COVID procedures for Pro Se parties.

No previous request for the relief sought herein has been made by William B. Abrams to this or any other court.

**WHEREFORE** William B. Abrams respectfully requests entry of an order granting (i) the relief requested herein and (ii) such other and further relief as the Court may deem just and proper.

Dated: April 19, 2020

Respectfully submitted,

William B. Abrams
Claimant