WATTS GUERRA LLP
Mikal C. Watts
Paige Boldt (Cal. State Bar No. 308772)
70 Stony Point Road, Suite A
Santa Rosa, California 95401
Phone: (707) 241-4567
2561 California Park Drive, Suite 100
Chico, California 95928
Phone: (530) 240-6116
Email: mcwatts@wattsguerra.com

*Attorneys for Numerous Wild Fire Claimants*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**PRELIMINARY OPPOSITION TO WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019**<br><br>Date: April 27, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 6799 & 6798 |

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD

WATTS GUERRA LLP and their co-counsel represent thousands of wildfire victims who have timely filed Notices of Claim in this proceeding. On April 20, 2020, at 9:16:03 a.m., William Abrams ("Abrams") filed his Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §1125(B) AND 1126(E) and Bankruptcy Rule 2019 ("Motion"). WATTS GUERRA

- 1 -

objects to the Motion and respectfully submits that the Motion should be denied for at least the following reasons:

1. The Motion is an attempt by a single paid Objector (or Unknown Others) to disenfranchise all other wild fire victims from voting on the Amended Plan in time for PG&E to exit bankruptcy by June 30, 2020;

2. Courts Across the Nation Have Authorized the Use of Credit Facilities by Law Firms;

3. WATTS GUERRA's Credit Facility is Not Contingent Upon This Litigation;

4. WATTS GUERRA's Lenders Have Been Given No Right of Control Over the Firm's Decisions Concerning this (or any other) Litigation;

5. WATTS GUERRA has disclosed to its Clients and to Others its Communications in this Case with Assignees of portions of its Credit Facility, and its subsequent conversations with principals of both the Debt and the Equity;

6. WATTS GUERRA digitally provided the Required Disclosure Statement Immediately on March 31, 2020, *before* its Communications Program Concerning the Vote Began;

7. WATTS GUERRA continues to Provide Appropriate and Good Faith Information to Its Clients with Update Letters and Emails, and Generally through a Website and During Weekly Telephonic Town Hall Meetings.

8. ABRAMS' Motion Should Summarily be Denied, as it is merely A Facially-Illegitimate Maneuver Designed to Achieve Earned Media from *Bloomberg News* in Advance of His Next Facebook Live event Scheduled for Tonight.

## **OBJECTION**

**1. The Motion is an attempt by a single paid Objector (or Unknown Others) to disenfranchise all other wild fire victims from voting on the Amended Plan in time for PG&E to exit bankruptcy by June 30, 2020.**

Movant William B. Abrams ("Abrams") is well-known to this Court and to the CPUC. He somehow prolifically objects to every aspect of the Amended Plan of Reorganization ("Plan"), says in this Motion "I lost money every time I went into the courtroom or put pen to paper to write a motion," (Motion, p. 3, lines 16-17), but is apparently may be doing so while being paid $290 an hour.[1] However, he is merely *one* of many wildfire victims, each of whom has their own right to

---

[1] *See* Abrams Notice of Intent to Claim Intervenor Compensation and, If Requested, Administrative Law Judge's Ruling on William B. Abrams's Showing of Significant Financial

- 2 -
Case: 19-30088   Doc# 6801   Filed: 04/20/20   Entered: 04/20/20 12:10:34   Page 2 of 16

vote whether to approve this Plan under 11 U.S.C. §1126.  This Court appropriately ordered the Disclosure Statement, one containing adequate information under 11 U.S.C. §1125, and ordered the voting to take place between March 31, 2020 and May 15, 2020.

Now, in the middle of this court-ordered voting period, Abrams seeks to unilaterally halt the vote with a Motion that is wrong on the facts and wrong on the law.  Of course, he does so knowing that obtaining the relief he seeks would prevent PG&E from exiting by June 30, 2020, destroying access to a $20.5 billion fund created by A.B. 1054 to protect this and other utilities from the ruinous costs of future wildfires, and thereby destroying the access the tens of billions of dollars in investments it will take to pay PG&E's creditors, including the wildfire survivors.

Abrams' communications with others have now also become important, since he is coordinating FaceBook Live meetings including Jim Chanos at Kynikos Associates, a registered investment advisor focused on short selling of PG&E.[2]  Causing PG&E's plan to fail, and its stock to consequently crash, enriches nobody more than Chanos, with whom Abrams is quite evidently conferring.[3]  After all, while Abrams' sister is a lawyer at Wilkie, representing the subrogation carriers, and therefore unavailable to help him, it appears that someone not named Abrams is cranking out very extensive legal motions, evidencing an impressive knowledge of an array of Bankruptcy rules and statutory provisions.

Nonetheless, this Motion is wrong on the facts and wrong on the law.

---

Hardship, filed November 13, 2019. CPUC Doc. No. 308 - Docs.cupc.ca.gov/PublishedDocs/Efile/G000/M319/K837/319837292.PDF

[2] https://www.ft.com/content/8cd39266-fc1e-11e9-98fd-4d6c20050229

https://www.institutionalinvestor.com/article/b1jjgrgk9qnplr/PG-amp-E-s-Big-Settlement-Excited-Investors-Short-Sellers-Aren-t-Impressed

https://www.zerohedge.com/markets/bear-party-short-seller-chanos-records-best-month-ever-after-grubhub-pge-implode

[3]

- 2 -

2. **Courts Across the Nation Have Authorized the Use of Credit Facilities by Law Firms**

"Litigation funding is not a new phenomenon in the United States. Contingent fee lawyers fund their clients' cases--class and non-class actions alike--and make significant investments in developing cases, investments that are not recoverable unless and until their clients prevail." Deborah R. Hensler, *The Future of Mass Litigation: Global Class Actions and Third-Party Litigation Funding*, 79 Geo. Wash. L. Rev. 306, 320 (Feb. 2011).

*Traditional law firm credit facilities* involve a banking institution providing operational and case investment capital to a law firm through a credit line, with such credit being collateralized by the income produced by the law firm, and with such risk to the banking institution then being spread out via assignment rights maintained by the bank. Importantly, the lender is granted no control whatsoever over litigation decisions, nor are its assignees. This is the type of facility long-utilized by WATTS GUERRA and its predecessor firms.

By contrast, "[i]n recent years, there has also been a proliferation of for-profit firms offering nonrecourse loans to plaintiffs in return for a share of any funds recovered." Hensler, *supra*, 79 Geo. Wash. L. Rev. at 320. These rights to share in a percentage of funds recovered also can be assigned out by the litigation funder. In such instances, some legal commentators have expressed concern about potential conflicts of interest. *See* A. Marco Turk, *A Changing Professional Ethics Landscape to Allow Litigation Funding*, California Lawyer Daily Journal, March 20, 2020. This is *not* the kind of credit facility used by WATTS GUERRA.

Regardless of whether a traditional credit facility is used – as WATTS GUERRA employs, or whether a litigation funding facility is secured by assigning a percentage of the claim to such a third-party – which WATTS GUERRA has not employed here – courts across the nation have authorized the use of either type of credit facility by law firms.

### (A) The Supreme Court of the United States Has Acknowledged the Role of Funding Litigation as Important to the First Amendment

The Supreme Court noted that "[i]t is fundamental that the First Amendment "'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001), citing *New York Times v. Sullivan,* 376 U.S. 254, 269 (1964), quoting *Roth v. United States*, 354 U.S. 476, 484 (1957), and observed that "[t]here can be little doubt that the LSC Act funds constitutionally protected expression." Later, the Court upheld national litigation expense service fees "that the national union uses to pay for litigation expenses incurred in large part on behalf of other local units" as "appropriately related to collective bargaining." *Locke v. Karass*, 555 U.S. 207, 210, 221 (2009). The Supreme Court has never condemned the traditional financing arrangement so disparaged by Abrams in his Motion.

### (B) The Ninth Circuit Has Enforced Litigation Funding Agreements

In January of this year, the United States Court of Appeals for the Ninth Circuit affirmed the enforcement of a litigation funding agreement originally calling for the return of the funding advanced and 40% of any recovery, as revised into a $50,713,000 liquidated amount calculated by applying a 35% annual contract rate, and held that "[b]ased on the record before it, the bankruptcy court did not abuse its discretion in declining to make an equitable adjustment of the contract rate." *In re: Epicenter Partners, L.L.C.*, 789 Fed. Appx. 632, 634 (9th Cir., Jan. 9, 2020).

Likewise, the Bankruptcy Appellate Panel of the Ninth Circuit twice has held that bankruptcy courts appropriately enforced litigation funding agreements. In *In re Hall*, 2011 WL 4485774 (United States Bankruptcy Appellate Panel of the Ninth Circuit, Aug. 22, 2011), the Court found "no error with the bankruptcy court's factual finding that there was simply no exercise of control over the lawsuit," and therefore agreed that the funding agreement stands. More recently, in *In re Burton*, 610 B.R. 633, 640 (United States Bankruptcy Appellate Panel of the Ninth Circuit,

Jan. 14, 2020), while the Court affirmed the dismissal of the bankruptcy case because it involved proceeds of an illegal business criminalized by the Controlled Substances Act, it expressed no concern about the legality of litigation finance agreements.

(C) <u>District Courts Within the Ninth Circuit Have Enforced Litigation Funding Agreements</u>

For almost a half-century, district courts within the Ninth Circuit have authorized the use of litigation funding agreements. In *Sierra Club v. Butz*, 349 F. Supp. 934 (N.D. Cal., 1972), the Sierra Club and four individuals filed suit to prohibit logging by Humboldt Fir, Inc. near the Salmon-Trinity Alps Primitive Area. Humboldt filed both a cross-complaint and a counterclaim against the four individuals financing the Sierra Club lawsuit. The district judge entered an order dismissing the counterclaim and the cross-complaint for failure to state a claim upon which relief can be granted, concluding that "nothing more is alleged than that plaintiffs intentionally exercised their right to petition the government, and this is precisely that with which this court cannot interfere." *Id.*, 349 F. Supp. at 939.

More recently, Magistrate Judge Westmore granted a summary judgment in favor of a creditor against defenses to an asserted litigation funding agreement, concluding that litigation finance agreements are valid purchase agreements under New York law, and neither usurious nor champertous. *Fast Trak Investment Co., LLC v. Sax*, 2018 WL 2183237, at **6-7 (N.D. Cal., May 11, 2018) (Westmore, Mag. J.).

Most courts in this circuit have concluded that such litigation funding agreements are not even discoverable, *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 2019 WL 118595, at **1-2 (N.D. Cal., Jan. 7, 2019) (Micron seeks discovery regarding "persons and entities that have a financial interest in this litigation," including an identification of any third party that is funding this litigation; the Court concludes that Micron is not entitled to the discovery it seeks because it is not relevant.); *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal., June 11,

2018) (Cousins, Mag. J.) (Defendants Google and Alphabet move to compel discovery as to litigation funding; the Court concludes that "[e]ven if litigation funding were relevant (which is contestable), potential litigation funding is a side issue at best," and therefore holds that "defendants' request to compel further discovery is DENIED."); *V5 Technnologies v. Switch, Ltd.*, 2019 WL 7489108, at *4 (D. Nev., Dec. 20, 2019) ("the Court agrees with Plaintiff that its litigation funding is not relevant to the claims or defenses in this case" because "[t]his Court similarly agrees with Plaintiff here that the requests for discovery into its source of litigation funding is not relevant."); *Odyssey Wireless, Inc. v. Samsung Electronics Co., Ltd.*, 2016 WL 7665898, at *5 (S.D. Cal., Sept. 20, 2016) (finding that the work product doctrine applies to litigation funding documents); *WHT, Inc. v. Zillow Group, Inc.*, 2016 WL 7077235, at *1 (W.D. Wash., Sept. 8, 2016) (finding litigation funding agreements "negligibly relevant, minimally important in resolving the issues, and unduly burdensome," and therefore "disproportional to the needs of the case."), unless adequacy of counsel is being litigation in the context of selecting class counsel. *Gharabe v. Chevron Corp.*, 2016 WL 4154849, at *2 (N.D. Cal., Aug. 5, 2016) (Illston, J.) (discovery of litigation funding agreement relevant to the adequacy of class counsel determination); *Haghayeghi v. Guess?, Inc.*, 2016 WL 9526465, at *1 (S.D. Cal., Mar. 21, 2016) (Storms, Mag. J.) ("The litigation funding documents and retainer and fee agreements are relevant to whether Plaintiff would adequately protect the interests of the class.").

    (D) California State Courts Have Refused to Permit Attacks on Litigation Funding Agreements

    Thirty years ago, the California Supreme Court published a unanimous opinion in *PG&E v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 791 P.2d 587 (1990), which should provide guidance to this Court in evaluating Abrams' Motion here. Bear Stearns financed litigation brought by Placer County Water Agency to terminate its power supply contract with PG&E "in return for 15 percent of any resulting increase in the Agency's revenues above $2.5 million for 20 years." *Id.*, 50 Cal.3d

at 1124.  PG&E sought an injunction restraining Bear Stearns from continuing to encourage, finance or participate in the Agency's efforts to terminate the contract.  The trial court sustained Bear Stearn's demurrer without leave to amend. *Id*.  Posed with the question "whether it is proper to impose liability for inducing a potentially meritorious lawsuit," the California Supreme Court answered that "it is not."  The Court concluded:" [i]n fact we have no public policy against the funding of litigation by outsiders." 50 Cal.3d at 1136.  To "assess court liability" for "provid[ing] financial assistance in support of the lawsuit" "would defeat the purpose of assuring free access to courts." *Id*.  "To permit a cause of action for interference with contract or prospective economic advantage to be based on inducing potentially meritorious litigation on the contract would threaten free access to the courts by providing an end run around the limitations on the tort of malicious prosecution." 50 Cal.3d at 1137.

Likewise, a California Court of Appeal has since held that litigation funding decisions "constitute protected speech and petitioning activities" in *Tuszynska v. Cunningham*, 199 Cal. App. 4th 257, 259 (2011).

(E) <u>Courts in the Ninth Circuit and the State of California Have Followed the almost Unanimous Consensus Nationally that Litigation Funding Agreements are Permissible</u>

"[C]ourts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case." *Fulton v. Foley*, Case No. 17-CV-8696, 2019 WL 6609298, at *2 (N.D. Ill., Dec. 5, 2019) (collecting cases).

Almost twenty years ago, the United States Court of Appeals for the First Circuit affirmed the propriety of litigation funding in the case of Jan Schlictmann, the east coast lawyer portrayed by John Travolta in the 1998 film, *A Civil Action*.  After the Woburn litigation portrayed in the film, Schlictmann took out three loans with Boston Trade Bank by offering a security interest in the firm's assets, in particular the money to be received from the imminent settlement of the firm's Groton water pollution litigation.  The First Circuit observed that the bank "held a security interest

- 8 -
Case: 19-30088   Doc# 6801   Filed: 04/20/20   Entered: 04/20/20 12:10:34   Page 8 of 16

in the firm's contingency fee agreement relating to the Groton matter and the proceeds from that agreement," *Cradle Co. v. Schlictmann*, 267 F.3d 14, 20 (1st Cir. 2001), and held that the company to whom it assigned that security interest "was entitled to judgment as a matter of law." *Id.*, 267 F.3d at 21.

Since then, the party making an objection to litigation funding agreements that were overruled by a bankruptcy court then saw that court affirmed by the United States Court of Appeals for the Fifth Circuit in *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 174-75 (5th Cir. 2011) ("The litigation funding came directly from one of S.O.S.'s donors, so the bankruptcy court correctly concluded that that funding would continue even if S.O.S.'s plan were not confirmed," and therefore, "Sweetwater's vote was not dependent on its interest in avoiding litigation.").

Other courts of appeals also have generally acknowledged the propriety of litigation funding agreements. *See In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 544 F.3d 1323, 1328 (Fed. Cir. 2008) (holding settlements reached between a patent holder and a generic manufacturer did not violate antitrust laws, even when litigant brought case funded by a third party in exchange for half of any profits realized from Barr's sale of ciprofloxacin.); *Williams v. Principi*, 310 F.3d 1374, 1381 (Fed. Cir. 2002) (disagreeing with argument that litigation funding supporting "VA research into the effects of dioxin exposure could be the 'act or administrative issue' pursuant to which … benefits were awarded."). *Cf.*, *National Football League Players' Concussion Injury Litigation*, 923 F.3d 96, 113 (3d Cir. 2019) (vacating district court's prohibition of cash advance agreements between litigation funders and plaintiffs, holding: "Going forward, the litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they may continue to have under their cash advance agreements with class members."). *But see Boling v.*

- 9 -

*Prospect Funding Holdings, LLC*, 2019 WL 1858506 (6th Cir. April 25, 2019) (upholding a ruling that such agreements are voidable under Kentucky law).

### 3. WATTS GUERRA's Credit Facility is Not Contingent Upon This Litigation

As indicated in the Declaration of Mikal Watts ("Declaration"), WATTS GUERRA's credit facility is not contingent upon this litigation. Rather, it is a general credit facility collateralized by all income to be received by the firm; a facility no different than any other facility provided by banking institutions across the United States. Declaration, ¶7.

### 4. WATTS GUERRA's Lenders Have Been Given No Right of Control Over the Firm's Decisions Concerning this (or any other) Litigation

As indicated in the Declaration of Mikal Watts, WATTS GUERRA's lenders have been given no right of control over the firm's decisions concerning this (or any other) litigation. Declaration, ¶8.

### 5. WATTS GUERRA has disclosed to its Clients and to Others its Communications in this Case with Assignees of portions of its Credit Facility, and its Subsequent Conversations with Principals of both the Debt and the Equity

This Court has not entered an order requiring private counsel not on the Tort Claimants Committee ("TCC") to make disclosures pursuant to Bankruptcy Rule 2019, and a reading of the rule suggests that it probably does not apply to private counsel representing individual fire survivors. Declaration, ¶10.

WATTS GUERRA is not a group or committee from which disclosure under Bankruptcy Rule 2019(c)(1)(A) is required. Declaration, ¶11.

With respect to the required disclosure under Bankruptcy Rule 2019(c)(1)(B), each fire survivor's Notice of Claim filed by this Court's amended Bar Date of December 31, 2019 sets forth the name of the law firm representing each such fire survivor. Declaration, ¶12.

With respect to the disclosure required under Bankruptcy Rule 2019(c)(2)(B), WATTS GUERRA has no disclosable economic interest held in relation to the debtor, and no economic

interest in it that is affected by the value, acquisition, or disposition of a claim or interest, as defined by Bankruptcy Rule 2019(a)(1)(A). Declaration, ¶13.

With respect to the disclosure required under Bankruptcy Rule 2019(c)(2)(C), WATTS GUERRA is not a member of a group or committee that claims to represent any entity; rather WATTS GUERRA represents its individual clients alone as single creditors, not with some official committee. Declaration, ¶14.

With respect to the disclosure required under Bankruptcy Rule 2019(c)(3), WATTS GUERRA is not a creditor or equity security holder represented by an entity, group, or committee. Declaration, ¶15.

While WATTS GUERRA does not see how Bankruptcy Rule 2019 applies to it since it represents single creditors for purpose of the rule, should the Court disagree, WATTS GUERRA is happy to voluntarily make such a disclosure upon order of the Court pursuant to Bankruptcy Rule 2019(e)(3). Declaration, ¶16. *See Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 229 B.R. 119, 122 n. 3 (E.D. Tex. 1999) ("the instant motion to dismiss also complains that the law firm of Calhoun and Stacy has violated Bankruptcy Rule 2019(a) by failing to file a verified statement disclosing its representation of SP, SSW, and UPRR. As with the Committee's first claim, the court has serious doubts about the applicability of Rule 2019(a) here. It would appear to the court that SP, SSW, and UPRR are most appropriately characterized as a single creditor for purposes of that rule. Nevertheless, for the sake of clarity and to avoid further confusion and dispute about this matter, the court directs Calhoun and Stacy to file a document that satisfies the dictates of Rule 2019(a). Such document shall be filed by February 10, 1999.").

Nonetheless, as indicated in the Declaration of Mikal Watts, WATTS GUERRA already has disclosed to its clients and to others its communications in this case with assignees of portions of its credit facility, and its consequent communications with principals of both the Debt and the

Equity.  Specifically, Mikal Watts conducted an in-person town hall to WATTS GUERRA's clients in Chico on December 12, 2020, and in Santa Rosa later the same day.  This town hall was filmed, and all WATTS GUERRA clients received an update email or letter shortly thereafter with a link to the video of those town hall meetings.  A link to a Power Point setting forth the nature of the disclosure made in Santa Rosa on December 12, 2019 is provided herewith,[4] and specific reference is made to slides 53-80 therein.  A link to a Power Point setting forth the nature of the disclosure made in Chicco on December 12, 2019 is provided herewith,[5] and specific reference is made to slides 53-80 therein.  Likewise, a second version of the same disclosure occurred most recently on April 18, 2020 on a telephonic town hall that was open to the public.  A transcript of that meeting is made available herewith as well.[6]  Declaration, ¶17.

**6. WATTS GUERRA digitally provided the Required Disclosure Statement Immediately on March 31, 2020, _before_ its Communications Program During the Voting Period;**

As indicated in the Declaration of Mikal Watts, WATTS GUERRA provided the disclosure statement and other materials required by this Court digitally early in the morning on March 31, 2020, before beginning its communications program during the voting period.  The Restructuring Support Agreement specifically provided for "approval by the Bankruptcy Court of procedures to allow distribution of solicitation materials and casting of ballots for holders of Fire Victim Claims by digital means."  Doc. # 50380-1, p. 4, ¶2(a)(ii).  WATTS GUERRA confirmed that the court-ordered disclosure statement and other materials would be available beginning March 31, 2020, prepared its digital disclosure plan, and began appropriately executing on it early in the morning

---

[4] Click here to download the file

[5] Click here to download the file

[6] Click here to download the file

on March 31, 2020 for the very purpose of ensuring compliance with 11 U.S.C. §1125(b). Declaration, ¶18.

### 7. WATTS GUERRA Continues to Provide Appropriate and Good Faith Information to Its Clients with Update Letters and Emails, and Generally through a Website and During Weekly Telephonic Town Hall Meetings.

As indicated in the Declaration of Mikal Watts, WATTS GUERRA continues to provide information both to its clients with update letters and emails. During the litigation, WATTS GUERRA conducted quarterly in-person town hall meetings and provided systematic written updates as well. More recently, WATTS GUERRA has been providing weekly written updates to its clients as well. Declaration, ¶19.

Since the COVID-19 "shelter in place" orders, has and will continue to conduct ten (10) weekly telephonic town hall meetings where people can call in and listen to various lawyers discussing the issues relating to the Amended Plan of Reorganization, and to answer any questions fire survivors may have.

For the very reason that opponents of the plan might use Abrams as a mouthpiece for their alleged grievances, each of these telephonic town hall meetings has been recorded and transcribed, and are available to the Court for its inspection upon request.

Additionally, WATTS GUERRA provides such information on its website, www.firesettlementfacts.com. As questions are presented by fire survivors, those questions are sent to Watts, who prepares an answer that is then recorded on video, and put up on the website for all to see. A repeated disclosure of the information concerning credit facilities was made again during our April 18, 2020 telephonic town hall, and a dropbox of that disclosure is available herewith. [7] Likewise, that disclosure has been made available to all on www.firesettlementfacts.com. Declaration, ¶20.

---

[7] https://www.dropbox.com/s/pvzk6o5jl92f9y8/20200418%20town%20hall%20v1.1%20clip%201_1.mp4?dl=0

This kind of transparency was provided exactly to be the vehicle that self-evidently would defeat an manuever to be executed on later by someone using Abrams to argue that persons whose acceptance or rejection of such plan… was not solicited or procured in good faith" under 11 U.S.C. §1126(e). Of course, that argument now is demonstrably false because of the documentation of every communication made by WATTS GUERRA.

Since the COVID-19 "shelter in place" orders, WATTS GUERRA has and will continue to conduct ten (10) weekly telephonic town hall meetings where fire survivors can call in and listen to various lawyers discuss the issues relating to the plan, and to answer questions fire survivors may have. Those telephonic town hall meetings have occurred on March 21, March 26, March 31, April 4 and April 11, and future telephonic town hall meetings scheduled for April 18, April 25, May 2, May 9 and May 15, 2020. Declaration, ¶21.

In addition, at Abrams' invitation, fire survivor attorneys Mikal Watts and Gerald Singleton appeared on a two-hour long Facebook Live forum Abrams organized on April 14, 2020, where the pros and cons of the Amended Plan being voted on were debated with Mr. Abrams himself, and with attorneys Bonnie Kane and Francis Scarpulla, who represent former TCC members. Declaration, ¶22.

**8. ABRAMS' Motion Should Summarily be Denied, as it is merely A Facially-Illegitimate Maneuver Designed to Achieve Earned Media from *Bloomberg News* in Advance of His Next Facebook Live event Scheduled for Tomorrow Night.**

On Thursday, April 16, 2020, Mikal Watts filed three lawsuits for twenty-three Plaintiffs alleging the Mike Bloomberg Presidential Campaign reneged on its promises made to its campaign workers to employ them through the November election, regardless of whether he won or lost the Democratic primary. Declaration, ¶23.

On Sunday evening, April 19, 2020, Mikal Watts received a phone call from *Bloomberg News* reporter Mark Chediak, stating that he was writing a story on Abrams' filing. Watts asked to

see Abrams' filing before giving comment, and was told that Abrams had specifically told Mark Chediak not to share his filing with Watts. A search of the Court's docket late Sunday night contained no such filing, but *Bloomberg*'s Mark Chediak confirmed to Watts that Abrams had already sent it to him. While Mark Chediak asked for comment on a Sunday night, he honorably agreed that perhaps it would not be fair to require Watts to comment on a filing pre-supplied to a national reporter, but withheld from its subject. Declaration, ¶24.

Abrams' motion is a facially-illegitimate maneuver designed to achieve earned media from *Bloomberg News* in advance of Abrams' next Facebook Live event scheduled for tomorrow night. Given that his motion is wrong on the facts and wrong on the law, this Court – while wasting its time – should give Abrams what he asks for – an immediate ruling signaling that it will not be used as a tool to create a media event for Abrams.

## **CONCLUSION**

The fire survivors are voting. In the midst of this vote, this Court rejected a previous motion with the following reasoning:

> A massive undertaking for sending voluminous materials and soliciting votes on the Plan is well-underway. Hundreds, if not thousands, of members of the class have already voted. The TCC apparently does not want to upset those votes, but it is beyond doubt that confusion will reign if the court permits the proposed letter to go out, leaving countless fire victims confused even more than they might be now. Are their cast votes valid? Should they ask to withdraw them? And what happens if there is a pause, and voters do not recast their votes in time? …
> What little law there is on the subject makes clear that once a disclosure statement is approved, parties are free to attempt to persuade voters to vote for or against a plan. But that is not the same as asking the court to approve a post-approval plea to delay a vote while future events unfold, if indeed they do at all within the time frame suggested.

Doc. No. 6692 (entered April 7, 2020). While Abrams no doubt filed this motion in order to achieve earned media in advance of his next Facebook Live event scheduled for tomorrow evening at 5 p.m. PDT, his Motion should summarily be denied. After all, if Abrams and renown short-

seller Jim Chanos cannot convince their Facebook Live viewers to vote "no" by themselves tomorrow night, there is probably no need for this Court to give them a helping hand.

Moreover, because of his gamesmanship where he purposefully denied the undersigned valuable time with which to respond to his Motion that someone had already written and supplied to *Bloomberg News* by Sunday, the *Ex Parte* Motion of William B. Abrams Pursuant to B.L.R. 9006-1 Requesting Order Shortening Time for Hearing should be denied as well. After all, perhaps those representing 70,000 other fire survivors while not seeking $290 an hour from the CPUC to do so would like the opportunity to timely file their responsive papers as well. Moreover, this Preliminary Opposition was written in less than three hours, a pace made necessary by the ongoing vote and a desire not to permit Abrams to have tonight's earned media to himself with no response. Given the strategy now being employed by Abrams and those who may be behind him, the undersigned respectfully requests that this Court deny the Motion to Shorten time, allow the parties to appropriately brief the issue with typical notice, and conduct the hearing on this Motion on April 27, 2020.

Respectfully submitted,

Dated: April 20, 2020   WATTS GUERRA LLP

By:   */s/ Mikal C. Watts*
      Mikal C. Watts

*Attorney for Numerous Wild Fire Claimants*