**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>**- and -**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.** | **Bankruptcy Case No. 19-30088 (DM)**<br>**Chapter 11**<br>**(Lead Case)**<br>**(Jointly Administered)** |

**CERTIFICATE OF SERVICE**

I, Christina Pullo, depose and say that:

1. I am employed by Prime Clerk LLC ("***Prime Clerk***"), the claims, noticing, and solicitation agent for the debtors (collectively, the "***Debtors***") in the above-captioned chapter 11 bankruptcy cases. At my direction and under my supervision, employees of Prime Clerk caused the following materials to be served:

a. a flash drive containing PDF images of the: (1) *Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Docket No. 6353] with all exhibits thereto, including, among others, the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket No. 6320] and (2) *Order (I) Approving Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization; (II) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (III) Establishing and Approving Plan Solicitation and Voting Procedures; (IV) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (V) Granting Related Relief* [Docket No. 6340] (collectively, the "**Disclosure Statement Flash Drive**");

b. a book containing PDF images of the: (1) *Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Docket No. 6353] with all exhibits thereto, including, among others, the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket No. 6320] (collectively, the ***"Disclosure Statement Book***");

c. the *Order (I) Approving Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization; (II) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (III) Establishing and Approving Plan Solicitation and Voting Procedures; (IV) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (V) Granting Related Relief* without exhibits attached thereto [Docket No. 6340] (the "***Disclosure Statement Order***");

d. the Notice of (I) Approval of Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization; (II) Establishment and Approval of Record Date, Voting Deadline, and Other Plan Solicitation and Voting Procedures; (III) Approval of Forms of Ballots, Solicitation Packages, and Related Notices; (IV) Establishment of Plan Confirmation Notice Procedures; and (V) Other Related Relief, a copy of which is attached hereto as **Exhibit A** (the "***Confirmation Hearing Notice***");

e. the Fire Victim Claim Plan Treatment Summary, a copy of which is attached hereto as **Exhibit B** (the "***TCC Summary***");

f. the Supplement to Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a copy of which is attached hereto as **Exhibit C** (the "***Disclosure Statement Supplement***");

g. the Class 3B-IV Utility Funded Debt Claims and Class 10A-II HoldCo Recession or Damage Claims Standard Impaired Debt Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a form of which is attached hereto as **Exhibit D** (the "***Standard Impaired Debt Ballot***");

h. the Class 3B-1 Utility Impaired Senior Note Claims or Class 3B-III Utility Short-Term Senior Note Claims Impaired Debt Master Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a copy of which is attached hereto as **Exhibit E** (the "***Impaired Debt Master Ballot***");

i. the Class 3B-1 Utility Impaired Senior Note Claims or Class 3B-III Utility Short-Term Senior Note Claims Impaired Debt Beneficial Owner Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a form of which is attached hereto as **Exhibit F** (the "***Impaired Debt Beneficial Ballot***");

j. the Class 5A-[I/II] HoldCo [Public Entities Wildfire/Subrogation Wildfire] Claims and Class 5B-[I/II] Utility [Public Entities Wildfire/Subrogation Wildfire] Claims Public Entity/Subrogation Claimant Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a form of which is attached hereto as **Exhibit G** (the "***Public Entity/Subrogation Claimant Ballot***");

k. the Class 5A-III HoldCo Fire Victim Claims and Class 5B-III Fire Victim Claims Individual Fire Claimant Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a form of which is attached hereto as **Exhibit H** (the "***Individual Fire Claimant Ballot***");

l. the Class 5A-III HoldCo Fire Victim Claims and Class 5B-III Utility Fire Victim Claims Fire Victim Master Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a copy of which is attached hereto as **Exhibit I** (the "***Fire Victim Master Ballot***");

m. the Class 10A-I Standard HoldCo Common Interest Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a form of which is attached hereto as **Exhibit J** (the "***Standard HoldCo Common Interest Ballot***");

n. the Class 10A-I HoldCo Common Interest Master Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a copy of which is attached hereto as **Exhibit K** (the "***HoldCo Common Interest Master Ballot***");

o. the Class 10A-I HoldCo Common Interest Beneficial Owner Ballot for Accepting or Rejecting Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a form of which is attached hereto as **Exhibit L** (the "***HoldCo Common Interest Beneficial Ballot***");

p. the Notice of Non-Voting Status to Unimpaired Classes Presumed to Accept, or Creditors and Interest Holders Otherwise Not Entitled to Vote on, the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, a copy of which is attached hereto as **Exhibit M** (the "***Non-Voting Notice***");

q. a pre-addressed, postage paid return envelope (the "***Return Envelope***"), a sample of which is not attached hereto.

2. Unless otherwise stated, at my direction and under my supervision, commencing on March 30, 2020, employees of Prime Clerk caused true and correct copies of the above materials to be served as follows:

a. the Disclosure Statement Flash Drive, Confirmation Hearing Notice, Disclosure Statement Supplement, Standard HoldCo Common Interest Ballot and Return Envelope

were served via First Class Mail on the parties identified on a service list which is not attached hereto, as these individuals were deemed to be fully redacted;

b. the Disclosure Statement Flash Drive, Confirmation Hearing Notice, Disclosure Statement Supplement, HoldCo Common Interest Master Ballot, HoldCo Common Interest Beneficial Ballot and Return Envelope were served via overnight mail or next day business service on the banks, brokers, dealer agents, nominees or their agents (collectively, the "***Equity Nominees***") identified on the service list attached hereto as **Exhibit N**. The Equity Nominees were provided with instructions and sufficient quantities to distribute the aforementioned documents to the beneficial holders of the Debtors' publicly traded equity securities;

c. the Disclosure Statement Flash Drive, Confirmation Hearing Notice, Disclosure Statement Supplement, Impaired Debt Master Ballot, Impaired Debt Beneficial Ballot and Return Envelope were served via overnight mail or next day business service on the banks, brokers, dealer agents, nominees or their agents (collectively, the "***Impaired Notes Nominees***") identified on the service list attached hereto as **Exhibit O**. The Impaired Notes Nominees were provided with instructions and sufficient quantities to distribute the aforementioned documents to the beneficial holders of the Debtors' publicly traded debt securities;

d. the Confirmation Hearing Notice, Disclosure Statement Supplement and Non-Voting Notice were served via overnight mail or next day business service on the banks, brokers, dealer agents, nominees or their agents (collectively, the "***Unimpaired Nominees***") identified on the service list attached hereto as **Exhibit P**. The Unimpaired Nominees were provided with instructions and sufficient quantities to distribute the aforementioned documents to the beneficial holders of the Debtors' publicly traded securities;

e. the Disclosure Statement Flash Drive, Confirmation Hearing Notice, Disclosure Statement Supplement, Public Entity/Subrogation Claimant Ballot and Return Envelope were served were served via First Class Mail on the parties identified on the service list attached hereto as **Exhibit Q**;

f. the Disclosure Statement Flash Drive, Confirmation Hearing Notice, Disclosure Statement Supplement, Standard Impaired Debt Ballot and Return Envelope were served were served via First Class Mail on the parties identified on the service list attached hereto as **Exhibit R**;

g. the Confirmation Hearing Notice, Disclosure Statement Supplement and Non-Voting Notice were served were served via First Class Mail on the parties identified on the service list attached hereto as **Exhibit S**;

h. the Disclosure Statement Flash Drive, Confirmation Hearing Notice, TCC Summary, Disclosure Statement Supplement, Fire Victim Master Ballot and Return Envelope were served were served via overnight mail or next day business service on the parties identified on the service list attached hereto as **Exhibit T**;

i. the Disclosure Statement Book, Disclosure Statement Order, Confirmation Hearing Notice, TCC Summary, Disclosure Statement Supplement, Individual Fire Claimant Ballot, applicable cover memo (as appropriate) and Return Envelope were served were served via First Class Mail on the parties identified on the service list attached hereto as **Exhibit U** and such party's family members, as applicable;

j. the Disclosure Statement Book, Disclosure Statement Order, Confirmation Hearing Notice, TCC Summary, Disclosure Statement Supplement and applicable cover memo (as appropriate) were served via First Class Mail on the parties identified on the service list attached hereto as **Exhibit V**;

k. the Disclosure Statement Flash Drive, Disclosure Statement Book, Disclosure Statement Order, Confirmation Hearing Notice, TCC Summary, Disclosure Statement Supplement, Standard HoldCo Common Interest Ballot, HoldCo Common Interest Master Ballot, HoldCo Common Interest Beneficial Ballot, Standard Impaired Debt Ballot, Public Entity/Subrogation Claimant Ballot, Fire Victim Master Ballot, Individual Fire Claimant Ballot, Non-Voting Notice, Impaired Debt Beneficial Ballot, Impaired Debt Master Ballot, and Return Envelope were served via First Class Mail on the party identified on the service list attached hereto as **Exhibit W**;

l. the Disclosure Statement Flash Drive, Confirmation Hearing Notice, TCC Summary and Disclosure Statement Supplement were served were served via First Class Mail on the Core/2002 Service List attached hereto as **Exhibit X**;

m. the Confirmation Hearing Notice was served via First Class Mail on the parties identified on the service list attached hereto as **Exhibit Y**.

3. As a courtesy, in addition to the hard copy service described above, on April 1, 2020, at my direction and under my supervision, employees of Prime Clerk caused electronic copies of the above materials to be served as follows:

a. The documents contained on the Disclosure Statement Flash Drive, Confirmation Hearing Notice, Disclosure Statement Supplement, HoldCo Common Interest Master

Ballot, HoldCo Common Interest Beneficial Ballot, Impaired Debt Master Ballot, Impaired Debt Beneficial Ballot and Non-Voting Notice were served via email on the parties identified on the service list attached hereto as **Exhibit Z**.

4. As a courtesy, in addition to the hard copy service described above, on April 2, 2020, at my direction and under my supervision, employees of Prime Clerk caused electronic copies of the above materials to be served as follows:

    a. The documents contained in the Disclosure Statement Book, Confirmation Hearing Notice, TCC Summary, Disclosure Statement Supplement and Fire Victim Master Ballot were served via email on the parties identified on the service list attached hereto as **Exhibit AA**.

5. As a courtesy, in addition to the hard copy service described above, on April 3, 2020, at my direction and under my supervision, employees of Prime Clerk caused electronic copies of the above materials to be served as follows:

    a. The documents contained on the Disclosure Statement Flash Drive, Confirmation Hearing Notice and Disclosure Statement Supplement were served via email on the parties identified on the service list attached hereto as **Exhibit BB**.

    b. The documents contained on the Disclosure Statement Flash Drive, Confirmation Hearing Notice, TCC Summary and Disclosure Statement Supplement were served via email on the parties identified on the service list attached hereto as **Exhibit CC**.

6. As a courtesy, in addition to the hard copy service described above, on April 8, 2020, at my direction and under my supervision, employees of Prime Clerk caused electronic copies of the above materials to be served as follows:

    c. The Confirmation Hearing Notice was served via email on the parties identified on the service list attached hereto as **Exhibit DD**.

7. I declare under penalty of perjury under the laws of the United Stated of America, that the foregoing is true and correct and that if called upon as a witness, I could and would competently testify thereto.

Executed this 22nd day of April 2020, at New York, NY.

Christina Pullo

/s/ MARK M BROWN
Notary Public, State of New York No. 02BR6305738
Qualified in New York County
My Commission Expires June 09, 2022

**Exhibit A**

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors and Debtors in Possession*

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Chapter 11 Case

No. 19-30088 (DM)

(Lead Case)

(Jointly Administered)

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION; (II) ESTABLISHMENT AND APPROVAL OF RECORD DATE, VOTING DEADLINE, AND OTHER PLAN SOLICITATION AND VOTING PROCEDURES; (III) APPROVAL OF FORMS OF BALLOTS, SOLICITATION PACKAGES, AND RELATED NOTICES; (IV) ESTABLISHMENT OF PLAN CONFIRMATION NOTICE PROCEDURES; AND (V) OTHER RELATED RELIEF**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**PLEASE TAKE NOTICE** that:

1. **Approval of Disclosure Statement**. By Order, dated March 17, 2020 [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"), the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") approved the disclosure statement (the solicitation version of which is filed at Docket No. 6353, together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] as having adequate information as provided under section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"), and also approved certain procedures for the solicitation, distribution, and tabulation of votes to accept or reject the Plan. The Plan is annexed as **Exhibit A** to the Disclosure Statement. The Bankruptcy Court previously set certain dates and deadlines with respect to approval of the Disclosure Statement and confirmation of the Plan by Order, dated February 11, 2020 [Docket No. 5732] (the "**Scheduling Order**").

2. **The Voting Classes and Record Date**. Only parties that hold Claims against, or Interests in, the Debtors in the following Classes as of March 3, 2020 (the "**Record Date**") are entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**"):

| The Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 5A-I | HoldCo Public Entities Wildfire Claims | Impaired |
| Class 5A-II | HoldCo Subrogation Wildfire Claims | Impaired |
| Class 5A-III | HoldCo Fire Victim Claims | Impaired |
| Class 10A-I | HoldCo Common Interests | Impaired |
| Class 10A-II | HoldCo Rescission or Damage Claims | Impaired |
| Class 3B-I | Utility Impaired Senior Note Claims | Impaired |
| Class 3B-III | Utility Short-Term Senior Note Claims | Impaired |
| Class 3B-IV | Utility Funded Debt Claims | Impaired |
| Class 5B-I | Utility Public Entities Wildfire Claims | Impaired |

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order, as applicable.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| The Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 5B-II | Utility Subrogation Wildfire Claims | Impaired |
| Class 5B-III | Utility Fire Victim Claims | Impaired |

3. **The Voting Deadline**. Votes to accept or reject the Plan must be actually received by the Debtors' solicitation agent, Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**"), by no later than **May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time)** (the "**Voting Deadline**") in accordance with the procedures set forth in the Disclosure Statement and Solicitation Procedures Order and the instructions set forth on any Ballot. Failure to follow the voting instructions as set forth in the Disclosure Statement and Solicitation Procedures Order and any applicable Ballot may result in the vote of any such Claim or Interest holder not being counted for purposes of accepting or rejecting the Plan.

4. **The Non-Voting Classes and Other Parties Not Entitled to Vote on the Plan**. Holders of Unimpaired Claims or Interests in the Classes listed below are Unimpaired under the Plan (collectively, the "**Non-Voting Classes**"), are not entitled to vote to accept or reject the Plan, and will not receive a Ballot. Such holders will instead receive a Notice of Non-Voting Status.

| The Non-Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 1A | HoldCo Other Secured Claims | Unimpaired |
| Class 2A | HoldCo Priority Non-Tax Claims | Unimpaired |
| Class 3A | HoldCo Funded Debt Claims | Unimpaired |
| Class 4A | HoldCo General Unsecured Claims | Unimpaired |
| Class 5A-IV | HoldCo Ghost Ship Fire Claims | Unimpaired |
| Class 6A | HoldCo Workers' Compensation Claims | Unimpaired |
| Class 7A | HoldCo Environmental Claims | Unimpaired |
| Class 8A | HoldCo Intercompany Claims | Unimpaired |
| Class 9A | HoldCo Subordinated Debt Claims | Unimpaired |
| Class 11A | HoldCo Other Interests | Unimpaired |
| Class 1B | Utility Other Secured Claims | Unimpaired |
| Class 2B | Utility Priority Non-Tax Claims | Unimpaired |
| Class 3B-II | Utility Reinstated Senior Note Claims | Unimpaired |
| Class 3B-V | Utility PC Bond (2008 F and 2010 E) Claims | Unimpaired |
| Class 4B | Utility General Unsecured Claims | Unimpaired |
| Class 5B-IV | Utility Ghost Ship Fire Claims | Unimpaired |
| Class 6B | Utility Workers' Compensation Claims | Unimpaired |
| Class 7B | 2001 Utility Exchange Claims | Unimpaired |
| Class 8B | Utility Environmental Claims | Unimpaired |
| Class 9B | Utility Intercompany Claims | Unimpaired |
| Class 10B | Utility Subordinated Debt Claims | Unimpaired |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| The Non-Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 11B | Utility Preferred Interests | Unimpaired |
| Class 12B | Utility Common Interests | Unimpaired |

In addition, pursuant to the Disclosure Statement and Solicitation Procedures Order, the following holders of Claims and Interests **are not** entitled to vote to accept or reject the Plan:

(a) Any holder of a Claim that was not listed in the Schedules or was listed as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a Proof of Claim was not (i) filed by the applicable Bar Date or (ii) deemed timely filed by an Order of the Bankruptcy Court before the Voting Deadline unless the Debtors have consented in writing;

(b) Any holder of a Claim that is the subject of an objection or request for estimation filed by February 21, 2020 at 4 p.m. (Prevailing Pacific Time);

(c) Any holder of a Claim (i) filed in the amount of $0.00, (ii) where, as of the Record Date, the outstanding amount of a Claim is not greater than $0.00, or (iii) where a Claim has been disallowed, expunged, disqualified, or suspended; and

(d) Claimholders who are otherwise disqualified from voting to accept or reject the Plan pursuant to the procedures set forth in the Solicitation Procedures and Disclosure Statement Order.

5. **Objections to Claims or Requests to Estimate for Voting Purposes.** If an objection to, or request for estimation of, a Claim has been filed and served by any party in interest with appropriate standing by the deadline set forth in the Scheduling Order (February 21, 2020, at 4:00 p.m. (Prevailing Pacific Time)), such Claim shall be temporarily disallowed or estimated for voting purposes only with respect to the Plan and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection or request for estimation; *provided,* that the deadline for any party in interest with appropriate standing to file and serve an objection to, or request for estimation of, any timely filed HoldCo Rescission or Damage Claim has been extended through and including May 1, 2020, at 4:00 p.m. (Prevailing Pacific Time).

6. **Rule 3018 Motions.** Pursuant to the Scheduling Order, if you timely filed a Proof of Claim or Interest and disagreed with the Debtors' classification of, objection to, or request for estimation of, your Claim or Interest and believe that you should have been be entitled to vote to accept or reject the Plan, then you were required to file and serve a motion, pursuant to Bankruptcy Rule 3018(a) (a

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

"**3018 Motion**"), to temporarily allow such Claim or Interest in a different amount or in a different Class for purposes of voting to accept or reject the Plan by March 6, 2020 at 4:00 p.m. (Prevailing Pacific Time), unless such deadline has been extended by agreement of the Debtors; *provided, however,* that, notwithstanding anything in the Disclosure Statement and Solicitation Procedures Order or the Scheduling Order to the contrary, the deadline for any holder of a timely filed HoldCo Rescission or Damage Claim to file a 3018 Motion has been extended through and including April 23, 2020, at 4:00 p.m. (Prevailing Pacific Time). 3018 Motions that were not timely filed and served in accordance with the Scheduling Order shall not be considered. The rights of the Debtors and any other party in interest to respond or object to any 3018 Motion are hereby expressly reserved. Any claimant or interest holder that timely filed a 3018 Motion will be provided with a Ballot and such Ballot will be counted in accordance with the procedures set forth in the Disclosure Statement and Solicitation Procedures Order, unless temporarily allowed in a different amount by an Order of the Court entered prior to the Voting Deadline. For the avoidance of doubt, and notwithstanding any other provision in the Disclosure Statement and Solicitation Procedures to the contrary, any amount that is established or determined by the Court in connection with a timely filed 3018 Motion shall be allowed in the amount determined by the Court for voting purposes only with respect to the Plan, and not for purposes of allowance or distribution;[2]

7. **The Confirmation Hearing**. Pursuant to the Scheduling Order, the hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **May 27, 2020 at 10:00 a.m. (Pacific Time)**, before the Honorable Dennis Montali, United States Bankruptcy Judge, in Courtroom 17 of the Bankruptcy Court, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102. Pursuant to the *Order re: Coronavirus Disease Public Health Emergency*, General Order 38 (N.D. Cal. Mar. 18, 2020), **all hearings through May 1, 2020 will be conducted telephonically and the courtroom will be closed**. Although the Confirmation Hearing is scheduled for May 27, 2020,

[2] Claimants may contact PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-333-8977 (international), or by e-mail to pgeinfo@primeclerk.com to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a 3018 Motion has been filed.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

parties are encouraged to check back as to the status of the Confirmation Hearing or the manner in which the Confirmation Hearing will be conducted with the Clerk of the Bankruptcy Court (the "**Clerk**") by visiting at http://www.canb.uscourts.gov/ or with Prime Clerk by visiting the case website at https://restructuring.primeclerk.com/pge (the "**Case Website**").[3] The procedures for filing responses and objections to confirmation of the Plan are set forth below. The Confirmation Hearing and the deadlines related thereto may be continued from time to time by the Bankruptcy Court without further notice other than announcement by the Bankruptcy Court in open Court, as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court, or on the docket. The Plan may be modified, if necessary, before, during, or because of the Confirmation Hearing, without further notice to interested parties.

8. **Objections to Confirmation of the Plan**. Responses and objections to confirmation of the Plan must:

(a) Be in writing;

(b) State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c) State with particularity the basis and nature of any objection with respect to the Plan;

(d) Conform to the Bankruptcy Rules, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, the *Order Establishing Procedures for Disclosure Statement and Confirmation Hearing* (N.D. Cal. May 2017) (Montali, J.), and the Scheduling Order; and

(e) Be filed with the Bankruptcy Court and served in accordance with Bankruptcy Rule 3020(b)(1) so as to be actually received on or before **4:00 p.m. (Prevailing Pacific Time) on May 15, 2020** (the "**Objection Deadline**") by the following parties (the "**Notice Parties**"):

(i) Clerk, U.S. Bankruptcy Court for the Northern District of California, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102;

[3] All parties who wish to appear at hearings must make arrangements to appear telephonically with CourtCall at 1−866−582−6878 no later than 4:00 p.m. (Pacific Time) on the day before the hearing. Further information regarding telephonic appearances via CourtCall can be found on the court's website, at the following location: http://www.canb.uscourts.gov/procedure/district-oakland-san-jose-san-francisco/policy-and-procedure-appearances-telephone.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(ii) The Debtors, c/o PG&E Corporation and Pacific Gas and Electric Company, 77 Beale Street, P.O. Box 770000, San Francisco, California 94177 (Attn: Janet Loduca, Esq.);

(iii) The attorneys for the Debtors, (A) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. (stephen.karotkin@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), and Matthew Goren, Esq. (matthew.goren@weil.com)), (B) Keller Benvenutti Kim LLP, 650 California Street, Suite 1900, San Francisco, California 94108 (Attn: Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Jane Kim, Esq. (jkim@kbkllp.com)), and (C) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019 (Attn: Paul H. Zumbro, Esq. (pzumbro@cravath.com), Kevin J. Orsini, Esq. (korsini@cravath.com), and Omid H. Nasab, Esq. (onasab@cravath.com));

(iv) The U.S. Trustee, 450 Golden Gate Avenue, 5th Floor, Suite 05-0153, San Francisco, California 94102 (Attn: James L. Snyder, Esq. (James.L.Snyder@usdoj.gov) and Timothy Laffredi, Esq. (Timothy.S.Laffredi@usdoj.gov));

(v) The attorneys for the administrative agent under the Debtors' debtor-in-possession financing facility, (A) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982 (Attn: Kristopher M. Hansen, Esq. (khansen@stroock.com), Erez E. Gilad, Esq. (egilad@stroock.com), and Matthew G. Garofalo, Esq. (mgarofalo@stroock.com)) and (B) Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067-3086 (Attn: Frank A. Merola, Esq. (fmerola@stroock.com));

(vi) The attorneys for the collateral agent under the Debtors' debtor-in-possession financing facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut, Esq. (eli.vonnegut@davispolk.com), David Schiff, Esq. (david.schiff@davispolk.com), and Timothy Graulich, Esq. (timothy.graulich@davispolk.com));

(vii) The attorneys for the CPUC, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064 (Attn: Alan W. Kornberg, Esq. (akornberg@paulweiss.com), Brian S. Hermann, Esq. (bhermann@paulweiss.com), Walter R. Rieman, Esq. (wrieman@paulweiss.com), Sean A. Mitchell, Esq. (smitchell@paulweiss.com), and Neal P. Donnelly, Esq. (ndonnelly@paulweiss.com));

(viii) The attorneys for the Creditors Committee, (A) Milbank LLP, 55 Hudson Yards, New York, New York 10001-2163 (Attn: Dennis F. Dunne, Esq. (DDunne@milbank.com) and Samuel A. Kahlil, Esq. (skhalil@milbank.com)) and (B) Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067 (Attn: Gregory A. Bray, Esq. (GBray@milbank.com) and Thomas R. Kreller, Esq. (TKreller@milbank.com));

(ix) The attorneys for the Tort Claimants Committee, (A) Baker & Hostetler LLP, 1160 Battery Street, Suite 100, San Francisco, California 94111 (Attn: Robert A. Julian, Esq. (rjulian@bakerlaw.com) and Cecily A. Dumas,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Esq. (cdumas@bakerlaw.com)) and (B) Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California, 90025-0509 (Attn: Eric E. Sagerman, Esq. (esagerman@bakerlaw.com) and Lauren T. Attard, Esq. (lattard@bakerlaw.com ));

(x) The attorneys for the Ad Hoc Group of Subrogation Claim Holders, (A) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Matthew A. Feldman, Esq. (mfeldman@willkie.com), Joseph G Minias Esq. (jminias@willkie.com), Benjamin P. McCallen Esq. (bmccallen@willkie.com), and Daniel I. Forman Esq. (dforman@willkie.com) and (B) Diemer & Wei, LLP, 100 West San Fernando Street, Suite 555, San Jose, California 95113 (Attn: Kathryn S. Diemer (kdiemer@diemerwei.com));

(xi) The attorneys for the Shareholder Proponents, Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300 (Attn: Bruce S. Bennett, Esq. (bbennett@jonesday.com), Joshua M. Mester, Esq. (jmester@jonesday.com), and James O. Johnston, Esq. (jjohnston@jonesday.com)); and

(xii) The attorneys for the Ad Hoc Committee of Senior Unsecured Noteholders, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036 (Attn: Michael S. Stamer, Esq. (mstamer@akingump.com), Ira S. Dizengoff, Esq. (idizengoff@akingump.com), David H. Botter, Esq. (dbotter@akingump.com), Abid Qureshi, Esq. (aqureshi@akingump.com) and (B) Akin Gump Strauss Hauer & Feld LLP, 580 California Street, Suite 1500, San Francisco, California 94104 (Attn: Ashley Vinson Crawford, Esq. (avcrawford@akingump.com)).

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

**PURSANT TO THE SCHEDULING ORDER, PRINCIPAL COUNSEL REPRESENTING A PARTY, OR ANY PRO SE PARTY, OBJECTING TO CONFIRMATION OF THE PLAN MUST APPEAR IN PERSON AT A PRE-CONFIRMATION SCHEDULING CONFERENCE ON MAY 19, 2020 AT 10:00 AM (PREVAILING PACIFIC TIME) TO DISCUSS SCHEDULING ANY EVIDENTIARY MATTERS TO BE DEALT WITH IN CONNECTION WITH THE CONFIRMATION HEARING AND SCHEDULING FOR BRIEFING OF CONTESTED LEGAL ISSUES. FAILURE TO APPEAR MAY RESULT IN THE OBJECTION BEING STRICKEN.**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**9. Plan Releases. INFORMATION REGARDING CERTAIN INJUNCTIONS, EXCULPATIONS, AND RELEASES UNDER THE PLAN IS SET FORTH ON ANNEX A HERETO. YOU SHOULD CAREFULLY REVIEW THE PLAN AND THE INFORMATION ON ANNEX A IN ITS ENTIRETY AS IT MAY AFFECT YOUR RIGHTS.**

10. **Executory Contracts and Unexpired Leases**. Pursuant to the Plan, as of, and subject to, the occurrence of the Effective Date of the Plan and the payment of any applicable Cure Amount (as defined in the Plan), all executory contracts and unexpired leases of the Reorganized Debtors shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order (as defined in the Plan), (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date (as defined in the Plan), or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as defined in the Plan) by the Debtors. The Debtors shall serve all applicable notices regarding cure amounts or rejection as set forth in the Plan on the appropriate parties no later than fourteen (14) days before the Objection Deadline.

11. **Additional Information**. Copies of the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, the Plan, and the other solicitation materials are on file with the Clerk and may be examined by interested parties on the Case Website. Copies of the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, the Plan, and the other solicitation materials may also be: (i) examined by interested parties during normal business hours at the office of the Clerk; (ii) accessed for a fee via PACER at http://www.canb.uscourts.gov/; and (iii) obtained by written request to the Solicitation Agent, at the address or e-mail address set forth below:

40662-01

| **If by e-mail to:** | **If by standard, overnight, or hand delivery:** |
|---|---|
| pgeinfo@primeclerk.com | PG&E Information<br>c/o Prime Clerk, LLC<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 |

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

Dated: March 18, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By: /s/ Stephen Karotkin
Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

10

**ANNEX A**

**NOTICE OF INJUNCTION, EXCULPATION AND RELEASE PROVISIONS[4]**

**Binding Effect, Injunctions, Exculpations, and Releases. If the Plan is confirmed by the Bankruptcy Court, the Plan, including the injunctions, exculpations, and releases contained in, among others, Sections 4.6(a), 4.7(a), 4.25(e), 4.26(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 thereof, will be binding on you, regardless of whether you are Impaired under the Plan and whether you have accepted the Plan. If the Plan is confirmed by the Bankruptcy Court, the following key injunction, exculpation, and release provisions will apply, subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER:**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner**

[4] Capitalized terms used in this Annex but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction.***

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

***Section 10.9 – Releases.***

**(a) *Releases by the Debtors*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b) *Releases by Holders of Claims and Interests*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d) *Release of Liens.* Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e) *Waiver of Statutory Limitations on Releases*. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Exhibit B**

# FIRE VICTIM CLAIM PLAN TREATMENT SUMMARY

**PLEASE READ THE FOLLOWING SUMMARY IF YOU FILED A FIRE VICTIM CLAIM IN THE PG&E CHAPTER 11 CASES. THIS SUMMARY PROVIDES INFORMATION ON HOW YOUR CLAIM WILL BE PROCESSED AFTER PG&E RECEIVES BANKRUPTCY COURT APPROVAL OF ITS PLAN OF REORGANIZATION AND THE PLAN BECOMES EFFECTIVE.**

**STEPS TO REORGANIZATION:** PG&E's and the Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (the "Plan") will govern the terms of PG&E's emergence from chapter 11. Enclosed with this summary is a copy of the Plan and the related Disclosure Statement that describes the Plan and how PG&E proposes to implement it, and a ballot for you to vote to accept or reject the Plan. **Your vote is important.** The Bankruptcy Court will conduct a hearing after all ballots have been tallied to determine whether it will approve the Plan. IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, YOUR CLAIM WILL BE PROCESSED AND MAY BE PAID EVEN IF YOU DID NOT CAST A VOTE OR VOTED TO REJECT THE PLAN. IF THE PLAN IS NOT CONFIRMED, YOUR CLAIM WILL NOT BE PAID UNTIL ANOTHER PLAN IS CONFIRMED OR THERE IS ANOTHER RESOLUTION OF PG&E's CHAPTER 11 CASES.

**YOUR VOTE COUNTS**: You have the right to accept or reject the Plan if you or your attorney filed a claim against the Debtors. **Ballots must be RECEIVED by May 15, 2020,** in order to be counted.

**HOW TO VOTE:** You have received a ballot with instructions that explain how you can vote. If you are represented by counsel, consult your attorney on the appropriate voting method. If you have questions about the voting materials, you can call (844) 339-4217 (domestic toll-free) or +1 (929) 333-8977 (international) or email pgeinfo@primeclerk.com.

**FIRE VICTIM TRUST:** Pursuant to the Plan, PG&E will fund a resolution trust ("Fire Victim Trust") for the benefit of Fire Victim Claimants (as defined below) in the amount of approximately $13.5 billion, consisting of $6.75 billion in cash (of which $1.35 billion will be paid over an 18-month period from PG&E's tax attributes) and $6.75 billion of common stock of reorganized PG&E Corporation. Your claim will be processed by the Claims Administrator in conjunction with the Trustee of the Fire Victim Trust and, if your claim is approved, it will be paid from the Fire Victim Trust assets. NOTHING IN THE PLAN OR THE FIRE VICTIM TRUST AGREEMENT REQUIRES YOU TO RECEIVE PAYMENT IN STOCK. HOLDERS OF FIRE VICTIM CLAIMS' SOLE SOURCE OF RECOVERY

SHALL BE FROM THE FIRE VICTIM TRUST. THEY WILL NOT BE ABLE TO PURSUE THEIR CLAIMS AGAINST PG&E CORPORATION OR PACIFIC GAS AND ELECTRIC COMPANY.

**HOW TO GET YOUR CLAIM PROCESSED:** The Fire Victim Trust is set up for the benefit of the Fire Victims of the Butte Fire (2015), the North Bay Fires (2017)[1] and the Camp Fire (2018) who have filed claims in the PG&E Chapter 11 Cases ("Fire Victim Claimants"). The Fire Victim Trust will treat all Fire Victim Claimants fairly and with dignity. The Trustee and Claims Administrator are developing objective criteria for approval of claims, as well as valuation of both "economic damages" such as destruction or damage to real estate and personal property, additional living expenses, lost wages, and business losses, personal injury or death and related medical expenses, and "non-economic damages" such as emotional distress related to bodily injury or death or the trauma of a dangerous evacuation from the fire and/or the loss of use and enjoyment of your property and community.

The Trustee and the Claims Administrator will develop detailed claims procedures that will guide your attorney or you, if you do not have an attorney, in how your claim will be evaluated, including what, if any, information and documents you will need to provide to support your claim. For example, you may be asked to submit information and documents needed to verify your claim, which may include proof of ownership or residence at the time of the fire, information regarding damage to your home and its contents, land, rental agreements and receipts for additional living costs, documents related to business income loss or lost wages, and information regarding the emotional impact of your evacuation from the fire and the loss of use and enjoyment of your home, in addition to other relevant information and documents the Fire Victim Trust may need to evaluate your claim. If the Fire Victim Trust determines that it needs more information to evaluate your claim, you may be requested to submit it. If you have an attorney, all communications with the Fire Victim Trust will go through your attorney. Any information and documents that you provide will be considered confidential and used only for evaluating your claim.

The Fire Victim Trust will also have access to publicly available and other information related to your claim, such as information from your insurance company, and it will use all of the appropriate available information including the information you provide to evaluate and process your claim.

[1] The North Bay Fires (2017) consist of the following fires: LaPorte, McCourtney, Lobo, Honey, Redwood/Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Partrick, Pythian/Oakmont, Maacama, Tubbs, Point, and Sullivan.

If you already settled your claim with PG&E before PG&E filed for chapter 11 or during the Chapter 11 Cases, your attorney should provide a copy of the settlement agreement to the Fire Victim Trust.

**EXPLANATION OF HOW YOUR CLAIM IS ALLOWED FOR PAYMENT:** The Fire Victim Trust will review your claim and the information and documents that relate to your claim. The Fire Victim Trust will determine if your claim is eligible or ineligible for payment and, if eligible, in what amount. If you accept the Fire Victim Trust's determination and your claim has been determined to be eligible, your claim will be paid from the Fire Victim Trust. The Trustee will have full discretion in managing the funds in the Fire Victim Trust, and may decide to pay claims in installments.

The Plan does not absolve the insurance carriers of their obligations to fulfill their coverage obligations under their policies of insurance with you. The Fire Victim Trust will not take on any responsibility for your insurance carrier's obligations to you.

**WHAT TO DO IF YOU CONTEST THE FIRE VICTIM TRUST'S TREATMENT OF YOUR CLAIM:** If you do not wish to accept either: (1) the Fire Victim Trust's determination that your claim is ineligible for payment; or (2) the amount awarded by the Fire Victim Trust for your claim, you will have options to seek the review of the determination. Each of these options will be explained in detail in the forthcoming procedures. In all circumstances, after the exhaustion of the review processes contained in the forthcoming procedures, the determination from the Fire Victim Trust, in accordance with the procedures, will be final. If you contest the Fire Victim Trust's award and are not represented by legal counsel, you may wish to consult with legal counsel of your choice.

**TIMING:** PG&E currently intends to present the Plan to the Bankruptcy Court for confirmation and approval on **May 27, 2020** and PG&E is seeking to obtain an order from the Bankruptcy Court confirming the Plan before June 30, 2020, the deadline set by the California Legislature for PG&E to meet the requirements of AB 1054.

The Fire Victim Trust will not begin processing claims unless and until the Plan is approved and confirmed and becomes effective.

**THE PLAN HAS BENEFITS AND RISKS FOR FIRE VICTIMS. BELOW IS A SUMMARY OF SOME OF THE BENEFITS AND RISKS. FOR A COMPLETE DESCRIPTION OF BENEFITS AND RISKS, PLEASE SEE PAGES 27 TO 28 OF THE DISCLOSURE STATEMENT.**

**BENEFIT:** One of the main benefits of the Plan is that it provides for compensation to Fire Victim Claimants sooner rather than later. If the Plan is rejected, it is unknown how long it will take to negotiate and obtain approval of another plan and what kind of recovery such a plan would provide for Fire Victim Claimants.

**RISK:** The $6.75 billion value of the common stock of reorganized PG&E Corporation does not necessarily reflect the actual value of the stock to be held by the Fire Victim Trust on the Plan effective date and thereafter. The actual value of the stock on the Plan effective date and thereafter could be greater or less than $6.75 billion based on the future trading value of the common stock of reorganized PG&E Corporation.

**PLEASE VOTE.**

**Frequently Asked Questions (FAQ's) for Fire Victims**

1. How will PG&E pay wildfire claims in this case?

Answer: PG&E's plan of reorganization will establish a trust fund to pay wildfire claims. This trust fund is called the "Fire Victim Trust."

2. Does the Bankruptcy Court need to approve PG&E's plan of reorganization?

Answer: Yes.

3. Do fire victims get to vote on whether the Bankruptcy Court should approve or not approve PG&E's plan of reorganization?

Answer: Yes, fire victims can vote yes or no on whether they accept or reject PG&E's plan of reorganization. However, if the plan of reorganization is accepted by fire victims on a class basis and approved by the Bankruptcy Court, the treatment of fire victim claims provided in PG&E's plan of reorganization will apply to all fire victims.

4. How many individual fire victims must vote in favor of the PG&E plan of reorganization for the fire victims to accept the plan as a class?

Answer: Voting in Bankruptcy Court is typically determined by the amount of the voting claim. Because we do not know the exact amount of every fire victim's claim, for voting purposes only, each victim generally has a vote worth $1, which means that those fire victim votes are equal. If at least 66 2/3% of the dollar amount of fire victim claims that vote, vote to accept the plan, then the fire victims will have accepted the plan as a class.

5. If less than 66 2/3% of the dollar amount of fire victim claims that vote, vote to accept the plan, can the Bankruptcy Court still

approve the plan without further hearings regarding the claim amounts?

Answer: The Bankruptcy Court will hold a hearing on approval of the plan. At that hearing, the Bankruptcy Court would not be able to approve the plan over the objection of fire victims without determining that the plan's treatment of fire victims, including the amount distributed to the Fire Victim Trust meets the Bankruptcy Code's requirements.

6. Who will run the Fire Victim Trust?

Answer: The Fire Victim Trust will be run by an individual known as a Trustee. The trust documents propose that a well-respected retired judge will be the Trustee to oversee and pay claims from the Trust. His name is Justice John Trotter. His biography can be found at https://www.jamsadr.com/trotter/

7. What fire claims will be paid from the Fire Victim Trust?

Answer: The Fire Victim Trust will pay claims from the 2015 Butte Fire, the 2017 North Bay Fires, and the 2018 Camp Fire. A full list of those fires is available at www.pgefiresurvivors.com.

8. How will the Fire Victim Trust be funded?

Answer: PG&E will contribute approximately $13.5 billion to the Fire Victim Trust. $6.75 billion will be in cash ($1.35 billion of which is to be paid over time), and $6.75 billion will be in PG&E stock.

9. How will the Trustee use PG&E stock to pay fire claims?

Answer: The Trustee will sell the PG&E stock over a period of time for cash that will be used to pay fire victim claims. The Trustee does not currently intend to distribute stock to fire victims.

10. Will I receive PG&E stock?

Answer: Nothing in the plan or the Trust Agreement requires any fire victim to accept stock as payment on his or her claim.

11. Could the value of PG&E stock change?

Answer: Yes, the value of the stock may go up or down, or stay the same. The trust documents require the Trustee to use prudent financial methods to sell the stock – although there can be no guarantees regarding how this stock will perform.

12. If the stock loses value, will I get less money for my claim?

Answer: If the stock loses value, it may reduce the amount that all fire victims will receive on their claims. Any reduction will apply to all fire victims equally – it will be shared "pro rata."

13. If the stock increases in value, will I get more money for my claim?

Answer: If the stock increases in value, the increase in the value of the stock will not change the amount of your claim, but it may increase the amount of money that the Trust has available to satisfy all eligible fire victim claims.

14. What are the risks and benefits to the stock going into the Fire Victim Trust?

Answer: Stock value can change. The Trustee will use prudent financial methods to convert the stock to cash. The Trustee cannot guarantee that the stock will keep its value. The stock may go down and it may reduce the amount of funds available, or it may go up and increase the amount of funds available, for distribution from the Fire Victim Trust to satisfy fire victim claims.

15. When is the stock transferred to the Fire Victim Trust?

Answer: The stock is transferred to the Fire Victim Trust on the "effective date," which is a date after approval of the plan by the Bankruptcy Court. We believe the effective date will not be determined until the beginning of June, and that the effective date may occur by late summer or early fall of 2020.

16. What if there are more than $13.5 billion in eligible claims against the Fire Victim Trust?

Answer: All fire victims will share in the money equally, or "pro rata" based on the amount of their eligible claims. This means that each victim will be paid the same percentage of his or her individual eligible claim. To make sure that all victims receive the same percentage of their eligible claim, the Trustee may pay claims in installments.

17. What does the Trustee do?

Answer: The Trustee will oversee and manage the Fire Victim Trust. This means that he and his staff will determine the amount of eligible fire victim claims, pay them, oversee the money and stock in the trust and make sure that all fire victims are treated equally. The Trustee will also have the right to sue certain companies who worked with PG&E and that the Trustee believes may have liability with respect to the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp Fire. Any money recovered from those lawsuits will go into the Fire Victim Trust.

18. Are there any other parties involved with the Fire Victim Trust?

Answer: The trust will employ a Claims Administrator. The Claims Administrator will assist the Trustee in resolving fire victim claims. The trust documents propose Cathy Yanni as the Claims Administrator. Ms. Yanni also has served as the claims administrator for the Wildfire

Assistance Program. You can read more about her in her bio at https://www.jamsadr.com/yanni/.

19. Who will decide whether my claim is an eligible claim?

Answer: If you have a claim because of either the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp fire, the Trustee and the Claims Administrator, together with their staff, will review and determine whether your claim is an eligible claim.

20. Do I have to give the Fire Victim Trust any information about my claim?

Answer: Yes. The Fire Victim Trust will require that you answer a questionnaire that explains the losses that you have suffered and verifies your identity. Depending on the nature of your claim, the Fire Victim Trust will also require that you provide certain documents and other evidence to support your claim.

21. How will the Fire Victim Trust decide if my claim is eligible?

Answer: If you have a claim because of either the 2015 Butte Fire, the 2017 North Bay Fires, or the 2018 Camp Fire, the Trustee, the Claims Administrator and their staff will look at publicly available information, information from experts, and the information and documents you submit in support of your claim in order to determine the eligible amount of your claim.

22. What kinds of losses will be paid by the Fire Victim Trust?

Answer: The losses to be paid by the Fire Victim Trust include wrongful death, personal injury, property damage, lost wages, business losses, and emotional distress. The Trustee and the Claims Administrator will describe the various types of damages that will be eligible to be paid in a document called the Claims Resolution

Procedures.  The Trustee and the Claims Administrator will look at each claim individually and determine whether to pay losses, other than the types set forth above.

23.    Can I receive punitive damages?

Answer:  The Trustee and the Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay punitive damages.

24.    Can I receive interest on my claim?

Answer:  The Trustee and the Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay interest.

25.    Where can I find a copy of the Claims Resolution Procedures?

Answer:  The current draft of the Claims Resolution Procedures can be found at www.pgefiresurvivors.com.  A substantially final copy of the Claims Resolution Procedures will be publicly available on May 1, 2020 at https://restructuring.primeclerk.com/pge/Home-DocketInfo.

26.     Where can I find a copy of the Trust Agreement?

Answer:  The current draft of the Trust Agreement can be found at www.pgefiresurvivors.com.  A substantially final copy of the Trust Agreement will be publicly available on May 1, 2020 at https://restructuring.primeclerk.com/pge/Home-DocketInfo.

27.     Are business claims being paid from the Fire Victim Trust?

Answer:  Yes, business claims are being paid from the Fire Victim Trust.

28. What if I do not agree with the amount that the Trustee and Claims Administrator determines is eligible to be paid by the Fire Victim Trust?

Answer: The options and avenues for review of the Trustee's and Claims Administrator's determination will be set out in the Claims Resolution Procedures. As a general matter, if you do not agree with the determination of the eligible amount of your claim, you may ask the Claims Administrator to reconsider the determination. If you still do not agree with the Claims Administrator's decision, you can appeal to a neutral arbitrator, who will hold a hearing on the issue. Finally, if you do not agree with the decision of the neutral arbitrator, you may ask for a panel of three neutral arbitrators to review the decision. Then, the Trustee may accept, reject, or revise the decision of this panel. The Trustee will then issue a Trustee Determination to you. The Trustee Determination is final with no further ability to appeal the determination.

29. Is every fire victim getting the same amount?

Answer: No. Each fire victim's claim is determined individually based on each fire victim's losses.

30. I did not have insurance. Do I still have a claim?

Answer: Yes. The Fire Victim Trust will pay claims that were not covered by insurance.

31. I received insurance for my claim. Does that affect the amount of my claim?

Answer: Yes. You cannot receive money from the Fire Victim Trust for the same exact losses that were paid from insurance. In other words, you cannot receive a "double recovery." Your recovery may be reduced by the amount of your insurance.

32.   How would PG&E pay victims of future fires?

Answer:  PG&E would pay claims from future fires from PG&E's insurance, the Wildfire Fund established by AB 1054, and funds generated from PG&E operations, and other potential sources.  These claims would not be paid by the Fire Victim Trust.

33.   What happens if the state or city takes over PG&E?

Answer:  The current plan does not address a state or city takeover.

34.   What is the Wildfire Fund created by AB 1054?

Answer:  In 2019, California passed a law, AB 1054, that created a wildfire fund for future fires.  This wildfire fund would apply to all investor owned California utilities and help pay the costs of future fires. It cannot be used to pay claims from any fires before July 12, 2019.

35.   What if PG&E does not meet the AB 1054 deadline to have a plan approved by the Bankruptcy Court on or before June 30, 2020?

Answer:  AB 1054 created a wildfire fund for future wildfires.  In order for PG&E to participate in the wildfire fund, it must have a plan of reorganization approved by the Bankruptcy Court on or before June 30, 2020.  If PG&E does not meet that deadline, it cannot participate in the wildfire fund created by AB 1054.

36.   How will PG&E pay claims arising from the Ghost Ship Fire?

Answer:  Victims of the Ghost Ship Fire have agreed to limit their recoveries to amounts paid by PG&E's insurance carriers.  Ghost Ship claims will not be paid by the Fire Victim Trust.

37. What will Ghost Ship claimants need to do to obtain payment from PG&E's insurance carriers?

Answer: Ghost Ship claimants can receive payment by settling their claims with PG&E's insurance carriers or by trying their lawsuits in court and obtaining a judgment or verdict that requires the insurers to pay.

# **Exhibit C**

40662-22

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

JONES DAY
Bruce S. Bennett (SBN 105430)
(bbennett@jonesday.com)
Joshua M. Mester (SBN 194783)
(jmester@jonesday.com)
James O. Johnston (SBN 167330)
(jjohnston@jonesday.com)
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Tel: 213 489 3939
Fax: 213 243 2539

*Attorneys for Shareholder Proponents*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)*

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**SUPPLEMENT TO DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

[Related Dkt. No. 6353]

**ON MARCH 17, 2020, THE BANKRUPTCY COURT APPROVED THE DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION (THE SOLICITATION VERSION OF WHICH IS FILED AT DOCKET NO. 6353, TOGETHER WITH ALL SCHEDULES AND EXHIBITS THERETO, AND AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "<u>DISCLOSURE STATEMENT</u>").[1]**

**THE FOLLOWING INFORMATION RELATES TO CERTAIN EVENTS THAT OCCURRED AFTER THE APPROVAL OF THE DISCLOSURE STATEMENT AND SUPPLEMENTS THE DISCLOSURE STATEMENT. ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS ARE ENCOURAGED TO READ THIS SUPPLEMENT, THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.**

### A. Governor's Letter Regarding Compliance with Wildfire Legislation and Recent Motion Filed with the Bankruptcy Court

As set forth in Section III.B of the Disclosure Statement, on December 13, 2019, Governor Gavin Newsom (the "**Governor**" and his office, the "**Governor's Office**") sent a letter [Docket No. 5138] (the "**December 13 Letter**") to the Utility's management stating, among other things, that the Governor believed that the draft *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* shared on December 6, 2019 with the Governor's Office (the "**December 6 Plan**") did not comply with AB 1054. The Governor's December 13 Letter set forth a number of governance and management requirements that the Governor believed were necessary to comply with AB 1054. The Governor's December 13 Letter further stated that the capital structure set forth in the December 6 Plan would contribute to a reorganized company that, in the Governor's view, would not be positioned to provide safe, reliable, and affordable electric service. The Disclosure Statement further states that the Debtors and the Governor's Office have been in continuing discussions as to these matters.

As previously disclosed, in response to the concerns raised by the Governor, the Debtors have committed to a number of changes in connection with the Plan regarding governance, operations and financial structure, together designed to prioritize safety and expedite the Debtors' successful emergence from chapter 11.

In addition, on March 20, 2020 the Debtors filed a motion [Docket No. 6398] (the "**CRCP**

[1] Unless otherwise defined, capitalized terms used herein have the meanings given to such terms in the Disclosure Statement.

**Motion**") with the Bankruptcy Court for entry of an order approving a case resolution contingency process to address the circumstance in which the Plan is not confirmed or the Plan fails to go effective in accordance with certain required dates (the "**Case Resolution Contingency Process**"). As further described in the CRCP Motion, the Case Resolution Contingency Process contemplates a process for the sale of PG&E Corporation or the Utility in the event that the Plan is not confirmed or the Plan fails to go effective in accordance with certain required dates, including the appointment of a Chief Restructuring Officer to manage such process. The Case Resolution Contingency Process also contemplates an operational observer selected by the state of California.

In addition, the CRCP Motion describes certain other commitments that the Debtors have agreed to undertake in connection with the confirmation process and implementation of the Plan (the "**Other Commitments**"). The Other Commitments (which are described in more detail below) include, among other things, a limitation on the ability of Reorganized PG&E Corporation to pay dividends over a period of time after emergence from chapter 11; commitments by the Utility with respect to cost recovery of amounts paid in respect of "Fire Claims" under the Plan; the terms of a purchase option in favor of the state of California (which would be exercisable only in limited circumstances); and commitments with respect to the Utility's utilization of wildfire-related net operating losses.

Also on March 20, 2020, counsel for the Governor filed a statement with the Bankruptcy Court in support of the CRCP Motion [Docket No. 6402] (the "**Governor's Statement**"). The Governor's Statement indicates that entry of an order approving the CRCP Motion is a critical component of the Governor's willingness to support the Plan and that, in the Governor's view, the relief requested in the CRCP Motion responds to the Governor's previously stated concerns. In the Governor's Statement, the Governor further stated that a rate-neutral securitization transaction pursuant to Senate Bill 901 that meets all legal requirements as determined by the California Public Utilities Commission ("**CPUC**") would, in the Governor's judgment, be in the public interest, as it would strengthen the going-forward business and support the reorganized Utility's ability to provide safe, reliable, affordable and clean energy to its customers. The Governor's Statement also indicates that the Governor believes that if the CRCP Motion is granted and the CPUC approves the Plan with the governance, financial and operational

provisions submitted to the CPUC by the Utility or otherwise agreed by the Utility, with any modifications the CPUC believes appropriate or necessary, the Plan will, in the Governor's judgment, be compliant with Assembly Bill 1054.

A hearing in the Bankruptcy Court to consider approval of the CRCP Motion is currently scheduled for April 7, 2020.

A summary of the terms and provisions of the Case Resolution Contingency Process is set forth in detail in the CRCP Motion, which can be viewed for free at the website maintained by the Debtors in the Chapter 11 Cases at https://restructuring.primeclerk.com/pge/ (the "**Case Website**"). A summary of the Other Commitments is set forth below. Capitalized terms used in the following section, but not defined herein or in the Disclosure Statement have the meanings given to them in the CRCP Motion.

The Other Commitments. In connection with and subject to the approval of the Case Resolution Contingency Process, the Governor's Office's support for the Plan and the Securitization (as defined below), and the occurrence of the Effective Date, the Debtors have agreed to certain other matters as follows:

a) Dividend Restriction. Reorganized HoldCo (Reorganized PG&E Corporation) will not pay common dividends until it has recognized $6.2 billion in non-GAAP Core Earnings following the Plan Effective Date. That amount would be deployed as capital investment or reduction in debt. "**Non-GAAP Core Earnings**" means GAAP earnings adjusted for those non-core items identified in the Disclosure Statement;[2]

b) Fire Victim Claims Costs. The Reorganized Utility (Reorganized Pacific Gas and Electric Company) intends to file an application with the CPUC for approval of a single post-emergence 30-year securitization transaction of approximately $7.5 billion (the "**Securitization**"). If the CPUC does not grant approval of the Securitization, the Reorganized Utility will not seek to recover in rates any portion of the amounts paid in respect of "Fire Claims" under the Plan; and

c) Net Operating Losses. The Debtors' payment of wildfire claims under the Plan are expected to result in substantial net operating losses ("**NOLs**"). Consistent with the Debtors' financial projections provided in the Disclosure Statement, the Reorganized Utility will use cash flows generated by application of these NOLs in future years in connection with the Securitization. If this Securitization is not approved or

[2] *See* Disclosure Statement, Exhibit B, p. 168 [Docket No. 6353]. The non-core items identified in the Disclosure Statement are Bankruptcy and Legal Costs; Investigation Remedies and Delayed Cost Recovery; GT&S Capital Audit; Amortization of Wildfire Insurance Fund Contribution; and Net Securitization Inception Charge. *Id*. at 174

consummated, the Reorganized Utility will use these cash flows to amortize the $6 billion in Temporary Utility Debt that is part of the Debtors' exit financing under the Plan.

Post Plan Effective Date Purchase Option in Favor of State of California.

The Other Commitments also include a post Plan Effective Date purchase option in favor of the state of California as follows:

- On February 18, 2020, in the proceedings before the CPUC related to approval of the Plan, the Assigned Commissioner issued a ruling that set forth various proposals. One such proposal was an Enhanced Regulatory Reporting and Enforcement Process ("**Enhanced Regulatory Process**") that includes six steps to be implemented over an extended period of time which could, under certain circumstances, culminate in a review and potential revocation of the Reorganized Utility's certificate of public convenience and necessity ("**CPCN**"), i.e., its license to operate as a public utility. The Debtors agree that if the CPUC revokes the CPCN through the Enhanced Regulatory Process, the state of California will have the option to purchase all of the issued and outstanding equity interests of the Reorganized Utility (including common stock and any options or other equity awards issued or granted by the Reorganized Utility), directly or via a state-designated entity, at an aggregate price to the holders of such equity interests equal to (i) the estimated one-year forward income computed by reference to rate base times equity ratio times return on equity (in each case as authorized by the CPUC and Federal Energy Regulatory Commission), multiplied by (ii) the average one-year forward price to earnings ratio of the utilities then comprising the Philadelphia Utilities Index ("**PHLX**"), multiplied by (iii) 0.65.

The Debtors also have agreed, subject to the approval of the CRCP Motion and the Governor's Office's support for the Plan and the Securitization, to the following:

- As a condition to the occurrence of the Effective Date, the secured debt to be issued in connection with the funding of the Plan must receive an investment grade rating from at least one of Standard & Poor's or Moody's on the Effective Date. This condition may be waived with the consent solely of the Plan Proponents and the Governor's Office; and

- The Plan Documents (as defined in the Plan), including the documents included in the Plan Supplement (as defined in the Plan) and any amendments to the Plan must be in form and substance acceptable to the Governor's Office.

## B. Butte County District Attorney Investigation and potential Claims

As set forth in Section II.C.2 of the Disclosure Statement, the Butte County District Attorney's Office (the "**Butte County DA**") and the California Attorney General's Office opened a criminal investigation of the November 8, 2018 Camp fire (the "**Camp Fire**"). The Disclosure Statement further discloses that potential criminal charges that could be filed against the Debtors and current or former

employees with respect to the Camp Fire include recklessly causing a fire, manslaughter, and related environmental charges. The Debtors could be subject to material fines, penalties, or restitution orders if it is determined that the Debtors failed to comply with applicable laws and regulations in connection with the Camp Fire, as well as non-monetary remedies such as oversight requirements. If the Debtors were found criminally liable, the Debtors could also be liable for claims of restitution on behalf of certain Fire Victims under the California Penal Code. The Debtors believe that any claims for such restitution would constitute Fire Victim Claims and under the Plan would be satisfied solely out of the Fire Victim Trust.

Pursuant to a Motion filed with the Bankruptcy Court on March 23, 2020 [Docket No. 6418] (the "**Butte County Motion**"), the Debtors are seeking approval of a Plea Agreement and Settlement with the People of the State of California (the "**People**"), represented by the Butte County DA (the "**Butte County Agreement**"), that resolves the criminal prosecution and investigation of the Utility arising from the Camp Fire. The Butte County Motion and any related pleadings can be viewed for free on the Case Website. The principal terms of the Butte County Agreement, which are more fully set forth in the Butte County Motion, are as follows:

1. The Utility agrees to plead guilty to 84 counts of involuntary manslaughter and one count of unlawfully causing a fire;

2. The Utility will be sentenced to pay the maximum total fine and penalty of not more than $3,486,950.00. The Utility will also pay $500,000.00 to reimburse costs spent on the investigation of the Camp Fire;

3. Upon approval and acceptance of the Butte County Agreement by the Butte County Superior Court and the Bankruptcy Court, the People, by and through the Butte County DA, agree not to prosecute any criminal charges relating to the Camp Fire against the Debtors or Reorganized Debtors;

4. The Butte County Agreement will be in full and final satisfaction, release and discharge of the proofs of claim filed by the People, through the Butte County DA, in the Chapter 11 Cases;

5. The People, by and through the Butte County DA, agree not to oppose any effort by the Utility to seek the discharge of claims for restitution pursuant to Cal. Penal Code § 1202.4 in the Chapter 11 Cases made on the grounds that such claims are satisfied pursuant to the agreements referenced in the Butte County Agreement and the Plan; and

6. The Utility will be entitled to withdraw the plea if: (i) the Butte County Agreement is not approved by the Butte County Superior Court; (ii) any obligation, including fines,

> penalties, assessments, obligations to pay restitution in addition to the settlements described in the Butte County Agreement are imposed on the Utility; or (iii) the Butte County Agreement is not approved by the Bankruptcy Court, or the Plan is not confirmed by June 30, 2020 or does not become effective in accordance with its terms. If the plea is withdrawn by the Utility, the indictment shall remain.

The Debtors believe the Plan is clear that the fine and penalty set forth above is a Fire Victim Claim to be paid from the Fire Victim Trust. The Tort Claimants Committee has advised the Debtors that they disagree and assert that such fine and penalty is not to be paid from the Fire Victim Trust.

Simultaneous with entry into the Butte County Agreement, but separate from such Butte County Agreement, the Utility has committed to spend up to $15 million over five years to provide water to Butte County residents impacted by damage to the Utility's Miocene Canal caused by the Camp Fire. In addition, the Utility has separately consented to the Butte County DA consulting, sharing information with and receiving information from the monitor overseeing the Utility's probation related to the San Bruno explosion through the expiration of the Utility's term of probation, and in no event until later than January 31, 2022. This consent is subject to the approval of the federal court overseeing the Utility's probation and the monitor.

A hearing on the Butte County Motion is currently scheduled for April 14, 2020 in the Bankruptcy Court.

**C. Financial Projections**

Attached hereto as **Exhibit A** are updated financial projections that reflect, among other things, the information set forth above.

Dated: March 25, 2020
San Francisco, California

Respectfully submitted,

PG&E CORPORATION

By: /s/ Jason P. Wells
Name: Jason P. Wells
Title: Executive Vice President and Chief Financial Officer

PACIFIC GAS AND ELECTRIC COMPANY

By: ______________________________
Name: David S. Thomason
Title: Vice President, Chief Financial Officer and Controller

SHAREHOLDER PROPONENTS

Abrams Capital Management, L.P.,
on behalf of certain funds and accounts it manages or advises
By: Abrams Capital Management LLC,
its general partner

By: ______________________________
Name: David Abrams
Title: Manager

Knighthead Capital Management, LLC,
on behalf of certain funds and accounts it manages or advises

By: ______________________________
Name: Thomas A. Wagner
Title: Managing Member

Dated: March 25, 2020
San Francisco, California

Respectfully submitted,

PG&E CORPORATION

By: ________________________________
Name: Jason P. Wells
Title: Executive Vice President and Chief Financial Officer

PACIFIC GAS AND ELECTRIC COMPANY

By: David Thomason
Name: David S. Thomason
Title: Vice President, Chief Financial Officer and Controller

SHAREHOLDER PROPONENTS

Abrams Capital Management, L.P.,
on behalf of certain funds and accounts it manages or advises
By: Abrams Capital Management LLC,
its general partner

By: ________________________________
Name: David Abrams
Title: Manager

Knighthead Capital Management, LLC,
on behalf of certain funds and accounts it manages or advises

By: ________________________________
Name: Thomas A. Wagner
Title: Managing Member

Dated: March 25, 2020
San Francisco, California

Respectfully submitted,

PG&E CORPORATION

By: ______________________________
Name: Jason P. Wells
Title: Executive Vice President and Chief Financial Officer

PACIFIC GAS AND ELECTRIC COMPANY

By: ______________________________
Name: David S. Thomason
Title: Vice President, Chief Financial Officer and Controller

SHAREHOLDER PROPONENTS:

Abrams Capital Management, L.P., on behalf of certain funds and accounts it manages or advises
By: Abrams Capital Management LLC, its general partner

By: [signature]
Name: David Abrams
Title: Manager

Knighthead Capital Management, LLC, on behalf of certain funds and accounts it manages or advises

By: ______________________________
Name: Thomas A. Wagner
Title: Managing Member

Dated: March 25, 2020
San Francisco, California

Respectfully submitted,

PG&E CORPORATION

By: ______________________________
Name: Jason P. Wells
Title: Executive Vice President and Chief Financial Officer

PACIFIC GAS AND ELECTRIC COMPANY

By: ______________________________
Name: David S. Thomason
Title: Vice President, Chief Financial Officer and Controller

SHAREHOLDER PROPONENTS:

Abrams Capital Management, L.P., on behalf of certain funds and accounts it manages or advises
By: Abrams Capital Management LLC, its general partner

By: ______________________________
Name: David Abrams
Title: Manager

Knighthead Capital Management, LLC, on behalf of certain funds and accounts it manages or advises

By: ______________________________
Name: Thomas A. Wagner
Title: Managing Member

## Exhibit A

**Updated Financial Projections**

**Exhibit B to Disclosure Statement**

## Financial Projections

### Introduction[1]

The following income and cash flow statements for the annual periods from January 1, 2020 through December 31, 2024 (the "**Projection Period**") and the balance sheet as of the end of the year for each of the years 2020 through 2024 for the Debtors ("**Consolidated Financial Projections**") are based on forecasts of operating results during the five-year period ending December 31, 2024. Included below is a summary of key assumptions to the Consolidated Financial Projections (in each case, the "**Assumptions**"). The Consolidated Financial Projections and the Assumptions should be read in conjunction with the Plan and the Disclosure Statement.

The Debtors, with the assistance of their advisors, have prepared these Consolidated Financial Projections to assist the Bankruptcy Court in determining whether the Plan meets the feasibility test of section 1129(a)(11) of the Bankruptcy Code.

Other than limited information related to rate base and capital expenditures, the Debtors generally do not publish their projections or their anticipated financial position or results of operations. Accordingly, the Debtors do not anticipate that they will, and disclaim any obligation to, furnish updated projections to holders of Claims or Interests, or to include such information in documents required to be filed with the U.S. Securities and Exchange Commission (the "**SEC**") or otherwise make public such information.

The Consolidated Financial Projections have been prepared by the management of the Debtors, in consultation with the Debtors' financial and restructuring advisors, Lazard Freres & Co. LLC and AP Services, LLC. The Consolidated Financial Projections were not prepared to comply with the guidelines for prospective financial statements published by the American Institute of Certified Public Accountants or the rules and regulations of the SEC, and by their nature are not financial statements prepared in accordance with accounting principles generally accepted in the United States of America.

The Debtors' independent accountants have neither examined nor compiled the accompanying Consolidated Financial Projections and accordingly do not express an opinion or any other form of assurance with respect to the Consolidated Financial Projections, assume no responsibility for the Consolidated Financial Projections and disclaim any association with the Consolidated Financial Projections.

The Consolidated Financial Projections do not reflect the impact of fresh start reporting in accordance with American Institute of Certified Public Accountants statement of position 90-7, financial reporting by entities in reorganization under the Bankruptcy Code. The Debtors do not expect to be subject to fresh start reporting at or following the Effective Date.

The Consolidated Financial Projections contain forward-looking statements that are not historical facts, including statements about the beliefs, expectations, estimates, future plans and strategies of the Debtors, as well as forecasts based on our Plan which reflects settlements reached with various parties regarding settlement of liabilities in connection with the 2018 Camp fire, 2017 Northern California wildfires and the 2015 Butte fire, the confirmation of the Plan on the Effective Date, the continuing availability of sufficient borrowing capacity or other financing to fund operations, the Utility's participation in the

[1] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Disclosure Statement to which this Appendix is attached.

statewide wildfire fund created by AB 1054, the Debtors' anticipated sources and uses upon emergence from Chapter 11, the outcome of regulatory cases and the effect on earnings of such cases, projections of wildfire-related expenditures, anticipated regulatory and legislative policy, anticipated capital expenditures of the Debtors, anticipated costs of operations of the Debtors, efficiency initiatives, dividend payments (both Utility preferred stock and PG&E Corporation common stock), credit ratings, securitization transactions and the various assumptions described in detail below. These statements are based on current expectations and assumptions, which management believes are reasonable, and on information currently available to management, but are necessarily subject to various risks and uncertainties. In addition to the risk that these assumptions prove to be inaccurate, factors that could cause actual results to differ materially from those contemplated by the forward-looking statements include factors disclosed in PG&E Corporation's and the Utility's annual report on Form 10-K for the year ended December 31, 2019 and other reports filed with the SEC, which are available on PG&E Corporation's website at www.pgecorp.com and on the SEC website at www.sec.gov. Additional factors include, but are not limited to, those associated with the Chapter 11 cases of PG&E Corporation and the Utility that commenced on January 29, 2019. PG&E Corporation and the Utility undertake no obligation to publicly update or revise any forward-looking statements, whether due to new information, future events or otherwise, except to the extent required by law.

The Consolidated Financial Projections, while presented with numerical specificity, are necessarily based on a variety of estimates and assumptions which, though considered reasonable by the Debtors, may not be realized and are inherently subject to significant business, economic, competitive, industry, regulatory, market and financial uncertainties and contingencies, many of which are beyond the control of the Debtors. The Debtors caution that no representations can be made or are made as to the accuracy of the Consolidated Financial Projections or to the Debtors' ability to achieve the projected results. Some assumptions inevitably will be incorrect. Moreover, events and circumstances occurring subsequent to the date on which these Consolidated Financial Projections were prepared may be different from those assumed, or, alternatively, may have been unanticipated, and thus the occurrence of these events may affect financial results in a materially adverse or materially beneficial manner. The Debtors do not intend and do not undertake any obligation to update or otherwise revise the Consolidated Financial Projections to reflect events or circumstances existing or arising after the date of these Consolidated Financial Projections. Therefore, the Consolidated Financial Projections may not be relied upon as a guarantee or other assurance of the actual results that will occur. In deciding whether to vote to accept or reject the Plan, holders of Claims and Interests must make their own determinations as to the reasonableness of such assumptions and the reliability of the Consolidated Financial Projections.

These Consolidated Financial Projections were developed for purposes of the formulation and negotiation of the Plan and to enable the holders of Claims and Interests entitled to vote under the Plan to make an informed judgment about the Plan and should not be used or relied upon for any other purpose, including the purchase or sale of securities of, or Claims or Interests in, the Debtors or any of their affiliates.

**Use of Non-GAAP Financial Measures**

The Consolidated Financial Projections contain financial information based on "Non-GAAP Core Earnings" in order to provide a measure that allows investors to compare the underlying financial performance of the business from one period to another, exclusive of non-core items.

"Non-GAAP Core Earnings" is a non-GAAP financial measure and is calculated as income available for common shareholders less non-core items. "Non-core items" includes items that management does not consider representative of ongoing earnings and affect comparability of financial results between periods. The Debtors use Non-GAAP Core Earnings to understand and compare operating results across reporting periods for various purposes including internal budgeting and forecasting, short- and long-term operating

planning, and employee incentive compensation. The Debtors believe that Non-GAAP Core Earnings provides additional insight into the underlying trends of the business, allowing for a better comparison against historical results and expectations for future performance.

Non-GAAP Core Earnings is not a substitute or alternative for GAAP measures such as consolidated income available for common shareholders and may not be comparable to similarly titled measures used by other companies.

**Select Assumptions for PG&E's Financial Forecast 2020-2024**

The Consolidated Financial Projections contained herein are based on, but not limited to, factors such as general business, economic, competitive, regulatory, market, financial and environmental conditions, as well as the assumptions detailed below. Many of these factors and assumptions are beyond the control of the Debtors and do not take into account the uncertainty and disruptions of business that may accompany an in-court restructuring. Accordingly, the assumptions should be reviewed in conjunction with a review of the risk factors set forth in the Disclosure Statement and in the Debtors' public filings.

**General Assumptions**

- In light of the forms of distribution contemplated by the Plan (which include cash as well as new PG&E Corporation common stock and the new debt securities of the Utility), the Consolidated Financial Projections were developed on a consolidated basis rather than on a separate legal entity basis. The Consolidated Financial Projections were developed by management with the assistance of the Debtors' advisors and are presented solely for purposes of the formulation and negotiation of the Plan in order to present the anticipated impact of the Plan. No representation or warranty, express or implied, is provided in relation to the fairness, accuracy, correctness, completeness, or reliability of the information, opinions, or conclusions expressed herein.
- The Consolidated Financial Projections assume that the Plan will be consummated in accordance with its terms and that all transactions contemplated by the Plan will be consummated on June 30, 2020.
- The Consolidated Financial Projections assume that the Utility secures an investment grade rating from at least one rating agency on the secured debt of the Utility.
- The Consolidated Financial Projections assume the achievement of various efficiency initiatives, including, among other things, resource planning, contract management, monetization of excess renewable energy, and real estate optimizations. These efficiency initiatives reduce operating and capital expenditures by approximately $1 billion on average through 2024.
- The Consolidated Financial Projections also assume that: (1) there will be no material change in legislation or regulations, or the administration thereof, that would have an unexpected effect on the operations of the Debtors; and (2) there will be no change in generally accepted accounting principles in the United States that would have a material effect on the reported financial results of the Debtors.
- The Consolidated Financial Projections do not reflect the impact of any actual or expected business disruptions relating to the worldwide health crisis due to COVID-19.

**Assumptions Underlying Revenue Projections and Cost Recovery**

***Base Revenue***

The Consolidated Financial Projections assume:

- Base revenues for electric distribution, natural gas distribution and electric generation operations are consistent with the Utility's proposed settlement agreement (the "2020 GRC Settlement")

filed on December 20, 2019 with the California Public Utility Commission ("**CPUC**") in its 2020 General Rate Case ("**GRC**") for 2020-2022. Spending for wildfire-related programs included in the 2020 GRC Settlement associated with system hardening, vegetation management, public safety power shutoffs and excess liability insurance, is anticipated to be well above amounts specified, and this incremental spending is recoverable through balancing accounts up to a two-year lag. Base revenue for the years 2023 and 2024 assumes an increase in authorized annual revenue requirement sufficient to cover the forecasted GRC costs and authorized rate of return.

- Formula rates for the recovery of costs for electric transmission facilities are determined by the Transmission Owner ("**TO**") rate cases with the Federal Energy Regulatory Commission ("**FERC**"). Under the formula rate mechanism, transmission revenues are updated to the actual cost of service annually. All prudently incurred transmission wildfire-related costs are assumed to be fully recoverable consistent with the formula rate mechanism.
- Base revenues for the Utility's natural gas transmission and storage services are consistent with the final decision issued in the Utility's 2019 gas transmission and storage ("**GT&S**") case, as approved by the CPUC on September 12, 2019 for 2019-2022. Base revenue for the years 2023 and 2024 assumes an increase in the authorized GT&S annual revenue requirement sufficient to cover forecasted expenses, except for amounts not recoverable. Aggregate GT&S capital expenditures of $576 million over the years 2011 through 2014 (the "**GT&S Expenditures**") that are currently subject to audit by the CPUC are assumed to be approved by the CPUC and restored to the Utility's rate base in 2020. Restoration of the GT&S Expenditures is subject to a subsequent CPUC proceeding following the audit. The CPUC has advised the Utility that litigation in respect of such proceeding will likely commence in the second half of 2020 with resolution occurring in 2021. The impact of this delay may result in a shift of the associated earnings available for common stock from 2020 to 2021 and a potential delay in associated cost recovery.
- Base operating and maintenance expenses excluding wildfire-related costs are forecast to be generally in line with the Utility's settlements and final decisions in its rate cases, including those described above.

***Incremental Wildfire-Related and Other Costs***

The Consolidated Financial Projections assume full recovery of wildfire-related costs currently deferred as regulatory assets on the balance sheet and additional future spending beyond the programs included in the 2020 GRC Settlement:

- Full recovery over the Projection Period of approximately $2.5 billion of costs related to restoration, prevention, and insurance that are on the Utility's balance sheet as deferred costs as of December 31, 2019. Interim rate relief and accelerated recovery will be granted by the CPUC allowing approximately $1.4 billion of these costs to be recovered in 2020 and 2021 on an accelerated basis.
- Consistent with the Utility's settlement agreement in the Order Instituting Investigation into the 2017 Northern California Wildfires and the 2018 Camp Fire (the "Wildfire OII") submitted to the CPUC on December 17, 2019, the Utility will receive no recovery of costs totaling approximately $1.675 billion contemplated by the Wildfires OII settlement relating to certain wildfire-related costs and shareholder-funded system enhancement initiatives. On February 27, 2020, a Presiding Officer's Decision (POD) was issued in the Wildfire OII proceeding which proposes modifications to the settlement agreement (as so modified, the "Revised Settlement") that would add $462 million of disallowances for wildfire mitigation ($198 million) and system enhancement initiatives ($64 million), and a payment to the state general fund ($200 million). The Revised Settlement, if accepted, is subject to Bankruptcy Court approval. PG&E has filed an appeal. The impact of the modifications to the settlement proposed by the POD is not reflected in the

Consolidated Financial Projections. The impact of the modifications to the settlement proposed by the POD on the Consolidated Financial Projections, if implemented, would be a decrease in earnings available for common stock and cashflow in 2020 as it relates to the payment to the general fund. Additionally, the proposed disallowed wildfire mitigation and system enhancement costs would impact earnings available for common stock primarily in 2020 and 2021, and cash flow impacts from the loss of anticipated revenue would be expected to impact future years. The modifications to the settlement proposed by the POD, if implemented, would also require any tax savings associated with the shareholder payments under the settlement agreement to be applied to wildfire mitigation expenses that would otherwise have been recovered from ratepayers when realized. The initial settlement of $1.675 billion and the additional $262 million established by the POD are assumed to be tax deductible and the resulting tax savings could be as much as $542 million based on the company's 28% effective net tax rate. The realization of these tax savings depends on many other variables and the timing of any savings is expected after 2024.

- For wildfire-related programs, including wildfire-related inspections and maintenance costs, that are in addition to programs requested in the 2020 GRC Settlement, recovery of costs will be allowed by the CPUC through memorandum accounts and collected on a three-year lag.

- Recovery of incremental capital expenditures in 2020 and 2021 related to implementing microgrid-enabling distributed generation, consistent with its proposal for cost recovery authorization submitted to the CPUC in connection with the CPUC's Order Instituting Rulemaking regarding microgrids.

- Pursuant to the requirements of Assembly Bill ("**AB**") 1054, approximately $3.2 billion of fire risk mitigation capital expenditures will be excluded from the Utility's equity rate base and will therefore not earn a return on equity. Such expenditures are assumed to be substantially incurred over the period from August 2019 through December 31, 2022 and are assumed to be funded with debt until securitization bond proceeds are received.

- On March 17, 2020, the Utility entered into a Plea Agreement and Settlement (the "Agreement") with the People of the State of California, by and through the Butte County District Attorney's office to resolve the criminal prosecution of the Utility in connection with the 2018 Camp fire. Pursuant to the Agreement, the Utility will be sentenced to pay the maximum total fine and penalty of approximately $3.5 million. The Agreement provides that no other or additional sentence will be imposed on the Utility in the criminal action in connection with the 2018 Camp fire. The Utility has also agreed to pay $500,000 to the Butte County District Attorney Environmental and Consumer Protection Fund to reimburse costs spent on the investigation of the 2018 Camp fire. Simultaneous with entry into the Agreement, but separate from such Agreement, the Utility has committed to spend up to $15 million over five years to provide water to Butte County residents impacted by damage to the Utility's Miocene Canal caused by the 2018 Camp fire. The Debtors believe that the Utility will have sufficient cash and other financial resources to satisfy these commitments following emergence.

**Assumptions Underlying Regulatory and Policy Projections**

The Consolidated Financial Projections assume:

- The Utility's authorized Return on Equity will be 10.25% (as authorized through 2023 by the CPUC in its final decision issued December 19, 2019) throughout the Projection Period. The Consolidated Financial Projections also reflect a capital structure that is consistent with the terms of the Restructuring Support Agreement (the "**Noteholder RSA**") dated January 22, 2020,

resulting in a weighted-average cost of debt of approximately 4.3%[2] upon PG&E Corporation's and the Utility's emergence from Chapter 11.

- Consistent with the terms of AB 1054, an initial contribution by the Utility to the Go-Forward Wildfire Fund established thereunder of $4.8 billion upon emergence, to be amortized over ten years and ongoing contributions by the Utility to the Go-Forward Wildfire Fund of $193 million per year over the Projection Period.
- The payment of various penalties by the Utility, including general fund payments, shareholder-paid initiatives, and agreements not to seek rate recovery for specified expenses pursuant to the following Orders Instituting Investigation ("**OIIs**"):
  - Locate & Mark OII: In February 2020, the presiding officer in this OII issued a decision modifying the settlement agreement between the Utility and the CPUC submitted on October 3, 2019. Consistent with the terms of the settlement agreement, as modified, the Consolidated Financial Projections assume payments and unrecovered expenses by the Utility in the amount of $110 million during 2020-2022.
  - Phase II Ex-Parte OII: On December 5th, 2019, the CPUC approved a settlement agreement between certain public entities and the Utility pursuant to which the Utility agreed to pay an incremental penalty of $10 million. The Consolidated Financial Projections assume that this penalty is paid in 2020.
  - Wildfires OII: As described above, on December 17, 2019, the Utility submitted a settlement agreement to the CPUC in connection with the Wildfires OII in which it agreed not to seek cost recovery for $1.675 billion of wildfire-related expenditures. The Consolidated Financial Projections assume that these costs will not be recovered (See above for information related to the February 27, 2020 POD, which the Utility has appealed).

**Financing Considerations**

- The financing assumptions underlying the Consolidated Financial Projections are consistent with the Utility's testimony filed with the CPUC on January 31, 2020 in connection with the CPUC's Plan of Reorganization OII. The Consolidated Financial Projections assume total sources of funding and corresponding uses of approximately $59 billion ($57.65 billion upon emergence), as summarized in the following tables:

| ***Expected Sources (in millions)*** | |
|---|---|
| Equity issuance for cash | $9,000 |
| Equity issued into Fire Victim Trust (as defined below) | 6,750 |
| New PG&E Corporation Debt | 4,750 |
| Reinstated Utility Debt | 9,575 |
| New Utility Notes | 23,775 |
| Insurance Proceeds | 2,200 |
| Cash immediately prior to Emergence | 1,600 |
| Deferred Wildfire Claims Settlement | 1,350 |
| **Total Sources** | **$59,000** |

[2] Inclusive of amortization of fees.

| *Expected Uses (in millions)* | |
|---|---|
| Payment to holders of wildfire-related claims | $24,150 |
| 2017/2018 Wildfire Claims Settlement (Deferred Payment) | 1,350 |
| Contributions to Go-Forward Wildfire Fund pursuant to AB 1054 | 5,000 |
| Repayment of Debtor-In-Possession Financing | 2,000 |
| Pre-petition Debt to be repaid or reinstated | 22,180 |
| Trade Claims and Other Costs | 2,300 |
| Accrued Interest | 1,270 |
| Cash immediately following Emergence | 750 |
| **Total Uses** | **$59,000** |

- The Consolidated Financial Projections assume, in connection with PG&E Corporation and the Utility's exit financing, that the CPUC will authorize the exclusion of $6 billion of temporary New Utility Notes from the Utility's capital structure. The Consolidated Financial Projections further assume that the CPUC will authorize the securitization of $7.5 billion of wildfire-related claims costs by March 31, 2021 that is contemplated to be neutral on average to customers, the proceeds of which will be used to retire the $6 billion of temporary New Utility Notes and to make payments as part of the $1.35 billion deferred settlement to the trust to be established under the Plan for the benefit of holders of wildfire-related claims ("**Fire Victim Trust**"). The authorization to securitize $7.5 billion of wildfire claims results in a $1.9 billion charge at inception as a result of an undiscounted regulatory liability associated with revenue credits funded by the NOL monetization. The Securitization includes offsetting credits to be funded initially from a shareholder funded reserve account and further funded with the value of shareholder NOLs contributed in the year in which the NOLs are utilized. The combination of the up-front contributions to the reserve account and the monetization of the NOLs are expected to yield a full (nominal) offset each year to securitized charges. Net operating revenues are shown net of contributions to the reserve account in the year in which contributions are made. The Securitization proposal reflected in the forecast includes contribution to the reserve account of $1.8 billion in 2021 that are not funded by NOL monetization. The reserve account is not reflected on the Debtors' balance sheet.
- The Consolidated Financial Projections assume that the equity commitment premium due under the equity backstop letters will equal 119 million shares of PG&E Corporation common stock, payable on the Effective Date. Assuming that the Debtors implement the capital structure described above by drawing on the equity backstop commitments and based on the Debtors' forecasted Normalized Estimated Net Income (as defined in the equity backstop commitment letters), the value of the equity commitment premium would be approximately $1.2 billion at the Backstop Price (as defined in the equity backstop commitment letters) without adjustments related to changes in the Applicable Utility Index Multiple. The value of the equity commitment premium could exceed this amount in the event that PG&E Corporation successfully consummates a marketed equity offering or rights offering in lieu of drawing on the equity backstop commitments or if the Debtors implement an alternative capital structure, under certain conditions.
- The Consolidated Financial Projections assume that the Debtors will face no incremental wildfire liabilities related to pre-petition wildfires beyond the $25.5 billion of wildfire-related claims that the Debtors have committed as of the date hereof to pay under the Plan pursuant to various settlement agreements with the holders of wildfire-related claims. The Consolidated Financial Projections further assume the Debtors will not face any liabilities related to postpetition wildfires that are not covered by insurance.

- Common dividends will not be paid until PG&E Corporation has recognized $6.2 billion in Non-GAAP Core Earnings following the Effective Date. That amount would be deployed as capital investment or reduction in debt. Common dividends are assumed to be restored once the Non-GAAP Core Earnings threshold has been met and are moderated to allow PG&E Corporation debt reduction. This assumption does not reflect a commitment on the Board or management's part to a specific future dividend policy.
- The Consolidated Financial Projections assume that additional equity is raised in 2021. This financing need may either be met through equity issuance or maintaining Holding Company debt levels.

**PG&E Corporation Consolidated**
**CONDENSED CONSOLIDATED PROJECTED INCOME STATEMENTS**
**($ millions)**

| | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| **INCOME STATEMENT** | | | | | |
| **Net Operating Revenues** | 15,512 | 14,649 | 17,170 | 18,163 | 18,925 |
| *Memo: Total Cost of Energy* | *3,400* | *3,716* | *3,684* | *3,450* | *3,490* |
| **Operating Expenses** | | | | | |
| Operating and maintenance | (8,807) | (8,869) | (8,700) | (8,921) | (8,972) |
| Depreciation, amort. & decommissioning | (3,444) | (3,693) | (3,916) | (4,229) | (4,510) |
| Net securitization regulatory deferral | | (144) | (89) | (91) | (84) |
| **Total Operating Expenses** | (12,251) | (12,706) | (12,705) | (13,241) | (13,565) |
| **Operating Income** | 3,261 | 1,943 | 4,465 | 4,922 | 5,360 |
| **Total Interest Expense** | (1,296) | (1,683) | (1,766) | (1,835) | (1,891) |
| **State Wildfire Insurance Fund Contribution and Prepayment Amortization** | (672) | (672) | (672) | (672) | (672) |
| **Other Income/(Expense), net** | (1,479) | (166) | (166) | (180) | (193) |
| **Income Before Income Taxes** | (186) | (578) | 1,861 | 2,235 | 2,604 |
| Income tax provision | 232 | 721 | 17 | (82) | (196) |
| Preferred dividend requirement | (14) | (14) | (14) | (14) | (14) |
| **TOTAL EARNINGS AVAIL FOR COMMON STOCK** | **32** | **129** | **1,864** | **2,139** | **2,394** |
| **Non-GAAP Core Earnings Adjustments** | | | | | |
| Bankruptcy and Legal Costs | 1,487 | 28 | | | |
| Investigation Remedies and Delayed Cost Recovery | 110 | 42 | 48 | | |
| GT&S Capital Audit | (191) | | | | |
| Amortization of Wildfire Insurance Fund Contribution | 484 | 484 | 484 | 484 | 484 |
| Net Securitization Inception Charge | | 1,361 | | | |
| **NON-GAAP CORE EARNINGS** | **1,922** | **2,044** | **2,395** | **2,623** | **2,878** |

Forecasted 2021 Normalized Estimated Net Income ("NENI"), as defined in the Backstop Commitment Letter filed with the SEC on December 26, 2019, excludes the following items that are otherwise included in the presentation of forecasted 2021 Core Earnings: approximately $55 million related to unrecoverable Gas Transmission and Storage costs, approximately $45 million related to delayed capital recovery and approximately $20 million of earnings below authorized amounts. In addition to the adjustments referenced above, NENI includes the post-tax annual contribution to the Go-Forward Wildfire Fund, which is excluded from Core Earnings.

**PG&E Corporation Consolidated**
**CONDENSED CONSOLIDATED PROJECTED BALANCE SHEETS**
**($ millions)**

| | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| **Current Assets** | | | | | |
| Cash and Cash Equivalents | 757 | 504 | 491 | 471 | 428 |
| Accounts Receivable | 2,788 | 2,721 | 2,937 | 3,166 | 3,283 |
| Regulatory Balancing Accounts, net of Liabilities (1) | 747 | 1,619 | 1,677 | 1,040 | 743 |
| Prepaid Expenses, Inventories and Collateral | 1,742 | 1,836 | 1,920 | 1,993 | 2,057 |
| **Total Current Assets** | 6,035 | 6,679 | 7,024 | 6,670 | 6,511 |
| **Net Property, Plant and Equipment** | 66,340 | 71,347 | 75,809 | 80,991 | 85,277 |
| **Other Noncurrent Assets** | | | | | |
| Nuclear Decommissioning Assets | 3,291 | 3,409 | 3,527 | 3,645 | 3,763 |
| Wildfire Fund Contribution | 4,320 | 3,840 | 3,360 | 2,880 | 2,400 |
| Regulatory Assets and Other | 8,804 | 8,551 | 8,343 | 8,372 | 8,568 |
| **Total Other Noncurrent Assets** | 16,415 | 15,800 | 15,230 | 14,897 | 14,730 |
| **TOTAL ASSETS** | **88,790** | **93,826** | **98,064** | **102,558** | **106,519** |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | | | | |
| **Current Liabilities** | | | | | |
| Accounts Payable | 2,152 | 2,140 | 2,063 | 2,005 | 1,986 |
| Short Term Borrowing | 1,720 | 2,000 | 2,000 | 2,000 | 2,000 |
| Other Current Liabilities | 1,648 | 1,853 | 1,631 | 1,421 | 1,350 |
| Accrued Wildfire Liability (Gross) | 1,350 | 0 | 0 | 0 | 0 |
| **Total Current Liabilities** | 6,870 | 5,992 | 5,694 | 5,426 | 5,336 |
| **Noncurrent Liabilities** | | | | | |
| Deferred Income Taxes | (320) | (1,041) | (1,069) | (996) | (811) |
| Long-term debt | 37,843 | 34,238 | 35,253 | 36,253 | 36,441 |
| *Memo: HoldCo Portion of Long Term Debt* | *4,750* | *3,025* | *2,425* | *2,250* | *1,650* |
| Securitized bonds | 0 | 8,218 | 8,873 | 9,495 | 9,992 |
| Regulatory Liabilities | 9,716 | 10,311 | 10,942 | 11,804 | 12,736 |
| Asset Retirement Obligations | 6,002 | 6,161 | 6,320 | 6,320 | 6,320 |
| Other | 6,099 | 6,086 | 6,328 | 6,673 | 7,005 |
| **Total Noncurrent Liabilities** | 59,340 | 63,975 | 66,647 | 69,550 | 71,683 |
| **Shareholders' Equity** | | | | | |
| Total Shareholders' Equity | 22,328 | 23,607 | 25,470 | 27,329 | 29,248 |
| Noncontrolling Interest - Preferred Stock of Subsidiary | 252 | 252 | 252 | 252 | 252 |
| **Total Shareholders' Equity** | 22,580 | 23,859 | 25,722 | 27,581 | 29,500 |
| **TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY** | **88,790** | **93,826** | **98,064** | **102,558** | **106,519** |

(1)Includes accounts classified as noncurrent in GAAP financial statements

**PG&E Corporation Consolidated**

**CONDENSED CONSOLIDATED PROJECTED STATEMENTS OF CASH FLOWS**

**($ millions)**

| | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| **CASH FLOW STATEMENT** | | | | | |
| **Cash Flows From Operations:** | | | | | |
| Net Income | 46 | 143 | 1,878 | 2,153 | 2,408 |
| Depreciation and Amortization | 3,439 | 3,683 | 3,907 | 4,219 | 4,500 |
| Net Amortization of Securitization Regulatory Assets and Liabilities | | (1,746) | 89 | 91 | 84 |
| Share-Based Equity Backstop Commitment Premium | 1,222 | | | | |
| Wildfire Insurance Fund Amortization | 480 | 480 | 480 | 480 | 480 |
| Wildfire Insurance Fund Contribution | (4,800) | | | | |
| Change in Deferred Taxes | (232) | (721) | (28) | 73 | 184 |
| Changes in Operating Assets and Liabilities | 52 | 192 | (374) | (340) | (208) |
| Change in Balancing Accounts and Regulatory Assets | (221) | 1,205 | 125 | 815 | 479 |
| Other Noncurrent Assets and Liabilities | 110 | 42 | 39 | 55 | 25 |
| Change in Other Working Capital | 155 | 50 | 68 | (71) | (57) |
| Payment of Liabilities Subject to Compromise, net of Insurance Proceeds | (25,547) | (1,350) | | | |
| Net Cash from Operations | (25,295) | 1,978 | 6,183 | 7,474 | 7,896 |
| **Investing Activities:** | | | | | |
| Capital Expenditures | (8,086) | (8,140) | (7,730) | (8,702) | (8,015) |
| Net Change in Nuclear Decommissioning Funds | (118) | (118) | (118) | (118) | (118) |
| Proceeds from Asset Sales | 1,322 | 0 | 0 | 0 | 0 |
| Net Cash Used In Investing | (6,882) | (8,258) | (7,848) | (8,820) | (8,133) |
| **Financing Activities:** | | | | | |
| Holding Company Financing | 19,850 | (575) | (600) | (175) | (600) |
| Short and Long Term Utility Debt Issued (Matured/Repurchased) | 11,552 | (1,603) | 1,612 | 1,172 | 784 |
| Securitization Bonds Issued | 0 | 8,218 | 654 | 622 | 497 |
| Preferred Dividends Disbursed | (42) | (14) | (14) | (14) | (14) |
| Common dividends | 0 | 0 | 0 | (280) | (475) |
| Net Cash Provided by Financing | 31,360 | 6,026 | 1,652 | 1,326 | 193 |
| **NET CHANGE IN CASH** | **(817)** | **(253)** | **(13)** | **(19)** | **(43)** |

**Exhibit D**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**STANDARD IMPAIRED DEBT BALLOT**

**[CLASS 3B-IV – UTILITY FUNDED DEBT CLAIMS]**

**[CLASS 10A-II – HOLDCO RESCISSION OR DAMAGE CLAIMS]**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be

modified, amended, or supplemented from time to time, the "**Plan**")[1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because you have asserted Claims against the Debtors [arising under or relating to certain of the Utility's funded debt facilities (the "**Utility Funded Debt Claims**")] [for recession or damages arising from or relating to your purchase or acquisition of the Debtors' publicly traded equity securities ("**HoldCo Rescission or Damage Claims**")]. Your Claims are classified in Class [3B-IV/10A-II] under the Plan.

Your rights are described in the Disclosure Statement for the Plan, filed on March March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class [3B-IV/10A-II] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of holders of Claims in Class [3B-IV/10A-II] that vote on the Plan. In the event that holders of Claims in Class 3B-IV vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Claims in Class [3B-IV/10A-II] if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Claims in Class [3B-IV/10A-II] and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent at the appropriate address listed below no later than the Voting Deadline of May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time). Ballots must be delivered to the Solicitation Agent (a) at the appropriate address listed below (or in the enclosed envelope, which may have a different zip code) or (b) via Prime Clerk's E-Ballot platform by visiting https://restructuring.primeclerk.com/pge, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one form of return for your Ballot.**

| **If by E-Ballot** | **If by standard or overnight mail, or hand delivery:** |
|---|---|
| Visit https://restructuring.primeclerk.com/pge and click on the "Submit E-Ballot" link | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except via Prime Clerk's E-Ballot platform).**

To properly complete this Ballot, you must follow the procedures described below:

a.  Item 1 (Amount of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims).  Make sure that the information contained in Item 1 below regarding the principal amount of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] you held on the Record Date is correct.

b.  Item 2 (Vote on the Plan).  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

c.  If you hold Claims or Interests in a Class other than Class [3B-IV/10A-II], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d.  If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, provided that, if a holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] submits both a paper Ballot and E-Ballot on account of the same [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims], the E-Ballot shall supersede the paper Ballot, unless the holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] receives Bankruptcy Court approval otherwise.

e.  Item 3 (Optional Release Election).  If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 3 below.

f.  Item 4 (Acknowledgements and Certifications).  Item 4 contains certain required certifications which you are making by signing and returning this Ballot.  Please ensure that you have read and understood the certifications prior to signing this Ballot.  Provide your name, mailing address, and any remaining information requested in Item 4 below.

g.  If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4 below.  By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

h.  Sign and date your Ballot.

i.  Return your Ballot with an original signature to the Solicitation Agent so as to be received by the Solicitation Agent before the Voting Deadline.  For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**[IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 3B-IV – UTILITY FUNDED DEBT CLAIMS UNDER THE PLAN**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Funded Debt Claims shall receive Cash equal to their Utility Funded Debt Claim Interest and Charges Amount and equal amounts of each issue of the New Utility Funded Debt Exchange Notes in an aggregate amount equal to such holder's Utility Funded Debt Claim Principal Amount. On the Effective Date, any Utility Letters of Credit outstanding shall be replaced or canceled and returned to the issuing Utility Revolver Lender in accordance with the terms of the applicable Utility Letter of Credit and the Utility Revolver Documents.]**

**[IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 10A-II – HOLDCO RESCISSION OR DAMAGE CLAIMS UNDER THE PLAN**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, in full and final satisfaction, settlement, release, and discharge of any HoldCo Rescission or Damage Claims, except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a holder of an Allowed HoldCo Rescission or Damage Claim agree to a less favorable treatment of such Claim, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed HoldCo Rescission or Damage Claim shall receive a number of shares of New HoldCo Common Stock equal to such holder's HoldCo Rescission or Damage Claim Share of the outstanding number of common stock of HoldCo as of the Petition Date (526,118,408).]**

# BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/pge. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:______________________**

**Prime Clerk's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.

---

**Item 1. Amount of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims].** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] in the principal amount set forth below.

**Claim(s) Amount**: ______________________________________________

**Item 2. Vote on the Plan.** The undersigned holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] in the principal amount set forth in Item 1 above hereby votes to:

**Check one box:** ☐ **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐ **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**Item 3. Optional Release Election.**

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF [UTILITY FUNDED DEBT CLAIMS/HOLDCO RESCISSION OR DAMAGE CLAIMS] UNDER THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below. If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Claims in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto. You are advised to carefully review and consider these releases in their entirety.**

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.

☐ **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

**Item 4. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of [Utility Funded Debt Claims/HoldCo Rescission or Damage Claims] in the principal amount identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claim Holder: ______________________________

Social Security or
Federal Tax I.D. No. of Claim Holder: ______________________________

Signature: ______________________________

Name of Signatory
(if different than Claim Holder): ______________________________

If by Authorized Agent, Title of Agent: ______________________________

Street Address: ______________________________

Street Address (continued): ______________________________

City, State, and Zip Code: ______________________________

Country: ______________________________

E-mail Address: ______________________________

Date Completed: ______________________________

Please check one or both of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Claims in these Chapter 11 Cases

## ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

### Optional Release Provisions under the Plan

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other**

**occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**<u>Other Key Injunction, Exculpation, and Release Provisions under the Plan</u>**

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms**

**of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction.***

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

     **(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any**

**time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

**(a)** ***Releases by the Debtors*****. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon**

**the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b)** ***Releases by Holders of Claims and Interests*. [excerpted above]**

**(c)** ***Only Consensual Non-Debtor Releases.*** **Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d)** ***Release of Liens*.** **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e)** ***Waiver of Statutory Limitations on Releases*.** **Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

**Exhibit E**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**MASTER BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**IMPAIRED DEBT MASTER BALLOT**

**CLASS 3B-I – UTILITY IMPAIRED SENIOR NOTE CLAIMS**
**OR**
**CLASS 3B-III – UTILITY SHORT-TERM SENIOR NOTE CLAIMS**

**APPLICABLE IMPAIRED DEBT NOTE DESCRIPTIONS, CLASSES, AND CUSIP NUMBERS:**

| **Class 3B-I – Utility Impaired Senior Note Claims** | |
|---|---|
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| **Class 3B-III – Utility Short-Term Senior Note Claims** | |
| 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15. 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Master Ballot because you are a broker, bank, or other nominee; or the agent of a broker, bank, or other nominee (each of the foregoing, together with any mailing agents thereof, a "**Master Ballot Agent**") for one or more beneficial owners (the "**Beneficial Owners**") of certain funded debt securities issued by the Utility and listed in **Annex A** hereto (collectively, the "**Impaired Debt Securities**" and any claims arising under or relating to the Impaired Debt Securities, the "**Impaired Debt Claims**"); or you are the proxy holder of a Master Ballot Agent or Beneficial Owner. Impaired Debt Claims are classified under the Plan in (i) Class 3B-I – Utility Impaired Senior Note Claims or (ii) Class 3B-III – Utility Short-Term Senior Note Claims. You should use this Master Ballot to transmit to the Solicitation Agent the votes of Beneficial Owners in respect of their Impaired Debt Claims to accept or reject the Plan, as recorded on the beneficial owner ballots delivered to them (the "**Beneficial Owner Ballots**").

Beneficial Owners' rights are described in the Disclosure Statement for the Plan, filed on March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Master Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For votes to be counted, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**INFORMATION REGARDING (I) THE TREATMENT OF THE BENEFICIAL OWNERS' IMPAIRED DEBT CLAIMS UNDER THE PLAN AND (II) THE PLAN'S INJUNCTION, EXCULPATION AND RELEASE PROVISIONS, INCLUDING THE OPTIONAL RELEASE UNDER SECTION 10.9(b) OF THE PLAN WHICH BENEFICIAL OWNERS WILL ELECT WHETHER TO OPT-IN ON THEIR BENEFICIAL OWNER BALLOTS, IS CONTAINED IN ANNEX B OF THIS MASTER BALLOT AND ON THE BENEFICIAL OWNER BALLOTS. HOLDERS OF IMPAIRED DEBT CLAIMS SHOULD CAREFULLY REVIEW THESE PROVISIONS AND THE PLAN AS THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

# INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

This Master Ballot is submitted to you to solicit votes of Beneficial Owners to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

Master Ballots must be delivered to the Solicitation Agent at the appropriate address listed below so it is actually received by the Solicitation Agent prior to the Voting Deadline:

| **If by e-mail to:** | **If by standard or overnight mail, or hand delivery:** |
| --- | --- |
| pgeballots@primeclerk.com | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to pgeballots@primeclerk.com).**

**HOW TO VOTE:**

A holder of Impaired Debt Claims who holds the Impaired Debt Claims on its own behalf through DTC (*i.e.*, is both the Beneficial Owner and Master Ballot Agent for the same Impaired Debt Claims) must vote by returning a Master Ballot to the Solicitation Agent and indicating that it is both the Beneficial Owner and Master Ballot Agent for the Impaired Debt Claims.

If you are transmitting the votes of any Beneficial Owners other than yourself, you may either:

1. Forward Solicitation Packages (with the applicable Beneficial Owner Ballot) to each Beneficial Owner of Impaired Debt Claims entitled to vote on the Plan within five (5) business days of the receipt of the Solicitation Packages and include a return envelope provided by and addressed to you, so that the Beneficial Owner may return the completed Beneficial Owner Ballot to you. You should advise the Beneficial Owners to return their individual Beneficial Owner Ballots to you by a date calculated by you to allow you to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline.

In addition, you are authorized to convey the Solicitation Packages and collect votes to accept or to reject the Plan from Beneficial Owners in accordance with your customary practices, including the use of a "voting instruction form", e-mail, online voting, phone call, or other customary methods for conveying solicitation materials and collecting votes in lieu of (or in addition to) an actual Beneficial Owner Ballot.

OR

2. "Prevalidate" the Beneficial Owner Ballots contained in your Solicitation Package and then forward Solicitation Packages to each Beneficial Owner of Impaired Debt Claims for voting on the Plan within five (5) business days of receipt of your Solicitation Package, with the Beneficial Owner then returning the applicable Beneficial Owner Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. You "prevalidate" a Beneficial Owner's Beneficial Owner Ballot by (i) checking the appropriate CUSIP/ISIN number on Annex A to the Beneficial Owner Ballot, (ii) indicating thereon the name and address of the record holder of the Impaired Debt Claims to be voted with respect to the Plan, the amount of Impaired Debt Claims held by the Beneficial Owner as of the Record Date, and the appropriate account numbers through which the Beneficial Owner's holdings are derived, (iii) certifying the accuracy of the information included on the Beneficial Owner Ballot by stamping the prevalidated Beneficial Owner Ballot with a medallion guarantee, and (iv) executing the Beneficial Owner's Beneficial Owner Ballot. The Beneficial Owner shall return the "prevalidated" Beneficial Owner Ballot directly to the Solicitation Agent by the Voting Deadline.

With respect to all Beneficial Owner Ballots returned to you, you must properly complete the Master Ballot, as follows:

a. Item 1 (Certification of Authority to Vote). Check the appropriate box in Item 1 below.

b. Please check one (and only one) box on **Annex A** attached to this Master Ballot to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on this Master Ballot or on a schedule hereto). If you check more than one CUSIP/ISIN or do not clearly indicate which CUSIP/ISIN is being voted through this Master Ballot, the Voting Agent will invalidate this Master Ballot.

c. Item 2 (Votes of Beneficial Owners). Provide the information requested in Item 2 below, as transmitted to you by the Beneficial Owners in Items 2 and 4 of the Beneficial Owner Ballot. To identify Beneficial Owners without disclosing their names, please use the customer account number assigned by you to each such Beneficial Owner, or if no such customer account number exists, please assign a number to each account (making sure to retain a separate list of each Beneficial Owner and the assigned number). **IMPORTANT: EACH BENEFICIAL OWNER MUST VOTE ALL OF ITS IMPAIRED DEBT CLAIMS, EITHER TO ACCEPT OR REJECT THE PLAN, AND MAY NOT SPLIT SUCH VOTE IN RESPECT OF THE PLAN. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT THEIR VOTE, PLEASE CONTACT THE SOLICITATION AGENT IMMEDIATELY.** Any Beneficial Owner Ballot that is signed, dated, and timely received, but does not indicate acceptance or rejection of

a Plan, or indicates both an acceptance and rejection of a Plan, by order of the Bankruptcy Court, will not be counted in respect of that Plan.

d. Item 3 (Certification of Beneficial Owner Votes on Other Ballots). Transcribe the information provided by each Beneficial Owner in Item 3 of each completed Beneficial Owner Ballot relating to other holdings of Impaired Debt Claims voted in Item 3 below.

e. Item 4 (Acknowledgements and Certifications). Item 4 contains certain required certifications which you are making by signing and returning this Master Ballot. Please ensure that you have read and understood the certifications prior to signing this Master Ballot. Provide your name, mailing address, and any remaining information requested in Item 4 below.

f. Sign and date the Master Ballot, and provide the remaining information requested.

g. If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding.

h. Deliver the completed, executed Master Ballot so as to be received by the Solicitation Agent before the Voting Deadline. For each completed, executed Beneficial Owner Ballot returned to you by a Beneficial Owner, you must retain such Beneficial Owner Ballot in your files for one year from the Voting Deadline and produce the same upon the written request of the Debtors, the Reorganized Debtors, or their respective counsel.

**PLEASE NOTE:**

**The Master Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.** At this time, holders should not surrender certificates representing their securities. Neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates surrendered together with the Master Ballot.

No Beneficial Owner Ballot or Master Ballot shall constitute or be deemed a proof of Claim or an assertion of a Claim.

No fees, commissions, or other remuneration will be payable to any Master Ballot Agent for soliciting votes on the Plan. The Debtors will, however, reimburse you for reasonable, documented, actual costs and expenses incurred by you in forwarding the Beneficial Owner Ballots and other enclosed materials to the Beneficial Owners held by you as a Master Ballot Agent or in a fiduciary capacity and in tabulating the Beneficial Owner Ballots.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS, THE SHAREHOLDER PROPONENTS, OR THE SOLICITATION AGENT**

**WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

## MASTER BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Certification of Authority to Vote.** The undersigned certifies that as of March 3, 2020 (the "**Record Date**"), the undersigned (please check appropriate box):

☐ Is a broker, bank, or other nominee for the Beneficial Owners of Impaired Debt Claims in the principal amount listed in Item 2 below, and is the registered holder of such securities; or

☐ Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee, or a Beneficial Owner that is the registered holder of Impaired Debt Claims in the principal amount listed in Item 2 below; or

☐ Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Owner, that is the registered holder of Impaired Debt Claims in the principal amount listed in Item 2 below;

and accordingly, has full power and authority to vote to accept or reject the Plan and elect to grant certain releases pursuant to the Plan, on behalf of the Impaired Debt Claims held by the Beneficial Owners described in Item 2.

**Item 2. Votes of Beneficial Owners.** The undersigned transmits the following votes and release elections of Beneficial Owners, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are beneficial owners of such securities as of the Record Date, and have delivered to the undersigned, as Master Ballot Agent, Beneficial Owner Ballots casting such votes and release elections. Indicate in the appropriate column the aggregate number voted for each account and each account's release election, or attach such information to this Master Ballot in the form of the following table. Please note each Beneficial Owner must vote all of its Impaired Debt Claims to accept or to reject the Plan and may not split such vote or vote to both accept and reject the Plan.

Please check one (and only one) box on **Annex A** attached to this Master Ballot to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on this Master Ballot or on a schedule hereto). If you check more than one CUSIP/ISIN or do not clearly indicate which CUSIP/ISIN is being voted through this Master Ballot, the Voting Agent will invalidate this Master Ballot.

| Your Customer Account Number for Each Beneficial Owner Voted on this Master Ballot | Principal Amount of Impaired Debt Claims Held as of Record Date | Indicate the Vote Cast on the Plan on the Beneficial Owner Ballots by Checking the Appropriate Box Below.<br><br>(Transcribe from Item 2 of the Beneficial Owner Ballot) | | | Indicate Whether the Releases Were Granted in Relation to the Plan on the Beneficial Owner Ballots by Checking the Box Below.<br><br>(Transcribe from Item 4 of the Beneficial Owner Ballot) |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | Opt-In to Granting Releases |
| 1 | | ☐ | | ☐ | ☐ |
| 2 | | ☐ | | ☐ | ☐ |
| 3 | | ☐ | | ☐ | ☐ |
| 4 | | ☐ | | ☐ | ☐ |
| 5 | | ☐ | | ☐ | ☐ |
| 6 | | ☐ | | ☐ | ☐ |
| 7 | | ☐ | | ☐ | ☐ |
| 8 | | ☐ | | ☐ | ☐ |
| 9 | | ☐ | | ☐ | ☐ |
| 10 | | ☐ | | ☐ | ☐ |
| **TOTALS** | | | | | |

CUSIP/ISIN and Plan Class see Annex A

**Item 3. Certification as to Transcription of Information from Item 3 as to Impaired Debt Claims Voted through Other Ballots.** The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by Beneficial Owners in Item 3 of each Beneficial Owner Ballot, identifying any Impaired Debt Claims for which such Beneficial Owners have submitted Ballots other than those listed in Item 2 above:

| YOUR Customer Account Number for Each Beneficial Owner Who Completed Item 3 of the Beneficial Owner Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL OWNER BALLOTS: | | | | | | |
|---|---|---|---|---|---|---|---|
| | Name of Other Master Ballot Agent through which Your Beneficial Owner Client Voted | Other Master Ballot Agent's DTC Participant Number | Beneficial Owner's Account Number with Other Broker (if applicable) | CUSIP / ISIN of Impaired Debt Claims Voted | Principal Amount of Impaired Debt Claims Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 89 of 250

**Item 4. Acknowledgements and Certifications.** By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) its certification of authority to vote in Item 1 above is accurate and (b) it has full power and authority to vote to accept or reject the Plan and to elect to grant certain releases pursuant to the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Master Ballot Agent: ______________________________

DTC Participant Number: ______________________________

Name of Proxy Holder or Agent (if applicable): ______________________________

Signature: ______________________________

Name of Signatory (if different than Claim holder): ______________________________

Title: ______________________________

Street Address: ______________________________

City, State, Zip Code: ______________________________

Telephone Number: ______________________________

E-mail Address: ______________________________

Date Completed: ______________________________

## ANNEX A

**Check the box below to indicate the series of Impaired Debt Securities and CUSIP/ISIN to which this Master Ballot pertains, or otherwise provide that information to the Solicitation Agent. If more than one box below is checked, you risk the votes submitted through this Master Ballot being deemed defective and invalid.**

| **Class 3B-I – Utility Impaired Senior Note Claims** | | |
|---|---|---|
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| ☐ | 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| ☐ | 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| ☐ | 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| ☐ | 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| **Class 3B-III – Utility Short-Term Senior Note Claims** | | |
| ☐ | 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| ☐ | 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| ☐ | 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| ☐ | 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

## ANNEX B

**The provisions of the Plan excerpted in this Annex B are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. HOLDERS OF IMPAIRED DEBT CLAIMS ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

## PLAN TREATMENT SUMMARY

### Class 3B-I: Utility Impaired Senior Note Claims

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Impaired Senior Note Claims shall receive Cash equal to their Utility Impaired Senior Note Claim Interest Amount and equal amounts of each issue of the New Utility Long-Term Notes in an aggregate amount equal to such holder's Utility Impaired Senior Note Claim Principal Amount.**

### Class 3B-III Utility Short-Term Senior Note Claims

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Short-Term Senior Note Claims shall receive Cash equal to their Utility Short-Term Senior Note Claim Interest Amount and equal amounts of each issue of New Utility Short-Term Notes in an aggregate amount equal to such holder's Utility Short-Term Senior Note Claim Principal Amount.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 92 of 250

# PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

## Optional Release Provisions under the Plan

**Holders of Impaired Debt Claims can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**A holder of Impaired Debt Claims' election to opt-in to the releases does not affect the classification or treatment of their Claims in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan. Section 10.9(b) of the Plan, which holders of Impaired Debt Claims can elect to opt-in to by their Beneficial Owner Ballots, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would**

**have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**Other Key Injunction, Exculpation, and Release Provisions under the Plan**

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on holders of Impaired Debt Claims whether or not they elect to opt-in to the releases in Section 10.9(b) of the Plan by their Beneficial Owner Ballots.**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct**

**or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction.***

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award,**

**decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

**(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support**

**Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

(a) ***Releases by the Debtors*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires,**

**the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b) *Releases by Holders of Claims and Interests*. [excerpted above]**

**(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d) *Release of Liens*. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 98 of 250

**(e)** ***Waiver of Statutory Limitations on Releases*****. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 99 of 250

**Exhibit F**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| In re: PG&E CORPORATION, - and - PACIFIC GAS AND ELECTRIC COMPANY, Debtors. | Chapter 11 Case No. 19-30088 (DM) (Lead Case) (Jointly Administered) |
|---|---|
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**IMPAIRED DEBT BENEFICIAL OWNER BALLOT**

**CLASS 3B-I – UTILITY IMPAIRED SENIOR NOTE CLAIMS**
**OR**
**CLASS 3B-III – UTILITY SHORT-TERM SENIOR NOTE CLAIMS**

**APPLICABLE IMPAIRED DEBT NOTE DESCRIPTIONS, CLASSES, AND CUSIP NUMBERS:**

| **Class 3B-I – Utility Impaired Senior Note Claims** | |
|---|---|
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| **Class 3B-III – Utility Short-Term Senior Note Claims** | |
| 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

[CUSIP/ISIN AND PLAN CLASS SEE ANNEX A]

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR MASTER BALLOT AGENT:**

**YOU MUST RETURN THIS BALLOT TO YOUR MASTER BALLOT AGENT IN THE ENVELOPE PROVIDED OR IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR MASTER BALLOT AGENT.**

**OR**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT"):**

**THIS BALLOT MUST BE COMPLETED AND RETURNED DIRECTLY TO THE SOLICITATION AGENT SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because, as of March 3, 2020 (the "**Record Date**"), you are the beneficial owner (a "**Beneficial Owner**") of certain funded debt securities issued by Utility (the "**Impaired Debt Securities**", and any claims arising under or relating to the Impaired Debt Securities, the "**Impaired Debt Claims**") bearing one of the CUSIP / ISIN numbers indicated in **Annex A** of this Ballot. Your Impaired Debt Claims are classified in Class 3B-[I/III] – Utility [Impaired Senior Note/Short-Term Senior Note] Claims under the Plan. Your broker, bank, dealer, agent or nominee is acting as ballot agent (the "**Master Ballot Agent**") for the solicitation of your votes on the Plan.

Your rights are described in the Disclosure Statement for the Plan, filed on March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**If you received a return envelope addressed to Prime Clerk, your Ballot must be properly completed and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

**If you received a return envelope addressed to your Master Ballot Agent, or other instructions to return this Ballot to your Master Ballot Agent, your Ballot must be properly completed, signed and returned to your Master Ballot Agent by the date and time specified to permit your Master Ballot Agent to deliver your votes to the Solicitation Agent on or before the Voting Deadline.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class 3B-[I/III] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of holders of Claims in Class 3B-[I/III] that vote on the Plan. In the event that holders of Claims in Class 3B-[I/III] vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Claims in Class 3B-[I/III] if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Claims in Class 3B-[I/III] and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**In order for your vote to be counted, this Ballot must be properly completed, signed (unless it has been prevalidated by your Master Ballot Agent), and returned in the envelope provided (or otherwise in accordance with the instructions of your Master Ballot Agent) so that it received by the Voting Deadline or such other date specified by your Master Ballot Agent.**

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except as instructed by your Master Ballot Agent).**

To properly complete this Ballot, you must follow the procedures described below:

a. Item 1 (Amount of Impaired Debt Claims). Insert the principal amount of Impaired Debt Claims you held as of the Record Date, or if your Master Ballot Agent pre-printed a principal amount, make sure that the information contained in Item 1 below regarding the principal amount of Impaired Debt Claims you held on the Record Date is correct.

b. Check the applicable box on Annex A to indicate the appropriate CUSIP/ISIN number for your Impaired Debt Claims. Check one and only one box on Annex A. If you check more than one box on Annex A, you risk invalidating your vote.

c. Item 2 (Vote on the Plan). Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

d. If you hold Claims or Interests in a Class other than Class 3B-[I/III], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you

complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

e. If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by your Master Ballot Agent or the Solicitation Agent will be counted, unless the holder of Impaired Debt Claims receives Bankruptcy Court approval otherwise.

f. Item 3 (Certification as to Impaired Debt Claims). If you hold Impaired Debt Claims in other accounts or other record names through other Master Ballot Agents and have voted such Impaired Debt Claims to accept or reject the Plan on other Ballots: (i) you must vote all Impaired Debt Claims in the same manner and make the same election with respect to plan releases on each Ballot you vote and (ii) you must include details of the other accounts or record names you have submitted Ballots in respect of in Item 3 below. Any vote that attempts to partially accept and partially reject the Plan will not be counted.

g. Item 4 (Optional Release Election). If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 4 below.

h. Item 5 (Acknowledgements and Certifications). Item 5 contains certain required certifications which you are making by signing and returning this Ballot. Please ensure that you have read and understood the certifications prior to signing this Ballot. Provide your name, mailing address, and any remaining information requested in Item 5 below.

i. If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

j. Sign and date your Ballot (if your Ballot has not been prevalidated by your Master Ballot Agent).

k. Return your Ballot with an original signature using the enclosed pre-addressed return envelope (or otherwise in accordance with the instructions of your Master Ballot Agent). If your Ballot is not received by your Master Ballot Agent in sufficient time to be included on a timely submitted Master Ballot, it will not be counted. In all cases, Beneficial Owners should allow sufficient time to assure timely delivery of your Ballot to your Master Ballot Agent. No Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT YOUR MASTER BALLOT AGENT OR THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 3B-[I/III] – UTILITY [IMPAIRED SENIOR NOTE/SHORT-TERM SENIOR NOTE] CLAIMS UNDER THE PLAN**

[Class 3B-I]

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Impaired Senior Note Claims shall receive Cash equal to their Utility Impaired Senior Note Claim Interest Amount and equal amounts of each issue of the New Utility Long-Term Notes in an aggregate amount equal to such holder's Utility Impaired Senior Note Claim Principal Amount.**

[Class 3B-III]

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, holders of Utility Short-Term Senior Note Claims shall receive Cash equal to their Utility Short-Term Senior Note Claim Interest Amount and equal amounts of each issue of New Utility Short-Term Notes in an aggregate amount equal to such holder's Utility Short-Term Senior Note Claim Principal Amount.**

**BALLOT**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Impaired Debt Claims.** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds Impaired Debt Claims as indicated on **Annex A** hereto as of the Record Date in the principal amount set forth below.

| **Claim(s) Amount**: $_______________________________________________ |
|---|

Please be certain to check only one box on **Annex A** to this Beneficial Owner Ballot to indicate the CUSIP/ISIN to which this Beneficial Owner Ballot pertains. If you check more than one CUSIP/ISIN, you risk having your vote deemed invalid.

**Item 2. Vote on the Plan.** The undersigned holder of Impaired Debt Claims in the principal amount set forth in Item 1 above hereby votes to:

**Check one box:** ☐ **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐ **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

**Item 3. Certification as to Impaired Debt Claims.** By completing and returning this Ballot, you certify that either (i) you have not submitted any other Ballots for other Impaired Debt Claims, held in other accounts or record names; or (ii) you have provided the information specified in the following table for all other Impaired Debt Claims for which you have submitted additional Ballots, each of which indicates the same votes to accept or reject the Plan, and the same elections as to the grant of releases under the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER CLASS 3B-[I/III] BALLOTS OTHER THAN THIS BALLOT.

| Name of Other Master Ballot Agent through which you voted Impaired Debt Securities | Other Master Ballot Agent's DTC Participant Number | Account Number with Other Master Ballot Agent | CUSIP / ISIN of Impaired Debt Securities Voted | Principal Amount of Impaired Debt Claims Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2 | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 108 of 250

**Item 4. Optional Release Election.**

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF IMPAIRED DEBT CLAIMS UNDER THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below. If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Claims in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex B hereto. You are advised to carefully review and consider these releases in their entirety.**

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.

☐ **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

**Item 5. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of Impaired Debt Claims in the principal amount identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Print or Type Name of Claim holder: | ______________________ |
| Account Number(s) (if applicable) | ______________________ |
| DTC Participant Number: | ______________________ |
| Social Security or Federal Tax I.D. No. of Claim holder: | ______________________ |
| Signature: | ______________________ |
| Name of Signatory (if different than Claim holder): | ______________________ |
| If by Authorized Agent, Title of Agent: | ______________________ |
| Street Address: | ______________________ |
| City, State, Zip Code: | ______________________ |
| Telephone Number: | ______________________ |
| E-mail Address: | ______________________ |
| Date Completed: | ______________________ |

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 110 of 250

40662-16

Please check one or both of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Claims in these Chapter 11 Cases

11

[CUSIP/ISIN AND PLAN CLASS SEE ANNEX A]

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 111 of 250

**Annex A**

**The Solicitation Agent or your Master Ballot Agent may have checked a box below to indicate the series of Impaired Debt Securities and CUSIP/ISIN to which this Beneficial Owner Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Owner Ballot. If more than one box below is checked, you risk the votes submitted through this Beneficial Owner Ballot being deemed defective and invalid.**

| **Class 3B-I – Utility Impaired Senior Note Claims** | | |
|---|---|---|
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GE1 / ISIN US694308GE15 |
| ☐ | 6.05% Senior Notes due March 1, 2034 | CUSIP 694308GH4 / ISIN US694308GH46 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GJ0 / ISIN US694308GJ02 |
| ☐ | 5.8% Senior Notes due March 1, 2037 | CUSIP 694308GK7 / ISIN US694308GK74 |
| ☐ | 6.35 % Senior Notes due February 15, 2038 | CUSIP 694308GM3 / ISIN US694308GM31 |
| ☐ | 6.25% Senior Notes due March 1, 2039 | CUSIP 694308GQ4 / ISIN US694308GQ45 |
| ☐ | 5.4% Senior Notes due January 15, 2040 | CUSIP 694308GS0 / ISIN US694308GS01 |
| ☐ | 5.125% Senior Notes due November 15, 2043 | CUSIP 694308HF7 / ISIN US694308HF70 |
| **Class 3B-III – Utility Short-Term Senior Note Claims** | | |
| ☐ | 3.5% Senior Notes due October 1, 2020 | CUSIP 694308GT8 / ISIN US694308GT83 |
| ☐ | 4.25% Senior Notes due May 15, 2021 | CUSIP 694308GV3 / ISIN US694308GV30 |
| ☐ | 3.25% Senior Notes due September 15, 2021 | CUSIP 694308GW1 / ISIN US694308GW13 |
| ☐ | 2.45% Senior Notes due August 15, 2022 | CUSIP 694308HB6 / ISIN US694308HB66 |

**ANNEX B: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS**

**The provisions of the Plan excerpted in this Annex B are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

**Optional Release Provisions under the Plan**

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other**

**occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**Other Key Injunction, Exculpation, and Release Provisions under the Plan**

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms**

**of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction.***

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 115 of 250

  **(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any**

**time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

**(a)** ***Releases by the Debtors*****. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an*** ***ex officio*** **basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon**

**the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b)** ***Releases by Holders of Claims and Interests*. [excerpted above]**

**(c)** ***Only Consensual Non-Debtor Releases.*** **Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d)** ***Release of Liens*.** **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e)** ***Waiver of Statutory Limitations on Releases*.** **Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

**Exhibit G**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**PUBLIC ENTITY/SUBROGATION CLAIMANT BALLOT**

**CLASS 5A-[I/II] HOLDCO [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE] CLAIMS**
**CLASS 5B-[I/II] UTILITY [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE] CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may

be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because you have asserted a Claim against the Debtors arising out of or relating to the Fires[2] that occurred in Northern California (each, a "**Fire Claim**"). Your Fire Claims are classified under the Plan in Class 5A-[I/II] (HoldCo [Public Entities Wildfire/Subrogation Wildfire] Claims) and Class 5B-[I/II] (Utility [Public Entities Wildfire/Subrogation Wildfire] Claims). Except as otherwise set forth in the Bar Date Order, all timely filed Fire Claims have been deemed filed against both of the Debtors and, therefore, you are entitled to vote to accept or reject the Plan in Class 5A-[I/II] and Class 5B-[I/II].

Your rights are described in the Disclosure Statement for the Plan, filed on March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020. If you have received instructions from the**

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

[2] "Fires" means the following fires that occurred in Northern California: (i) 2015 Butte Fire (but only with respect to Fire Claims in Classes 5A-I and 5B-I); (ii) 2017 North Bay Fires (LaPorte, McCourtney, Lobo, Honey, Redwood / Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Partrick, Pythian / Oakmont, Maacama, Tubbs, Point, and Sullivan); and (iii) 2018 Camp Fire.

**attorney or law firm (each, a "Firm") representing you in connection with your Fire Victim Claim to return your completed Ballot to the Firm who will, in turn, submit the completed Ballot to the Solicitation Agent, you must allow sufficient time for the Firm to submit your completed Ballots to the Solicitation Agent so that it is actually received by the Voting Deadline.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class 5A-[I/II] and Class 5B-[I/II] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Fire Claims that vote on the Plan in each such Class. In the event that Class 5A-[I/II] and Class 5B-[I/II] vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Fire Claims if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Fire Claims and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent at the appropriate address listed below no later than the Voting Deadline of May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time). Ballots must be delivered to the Solicitation Agent (a) at the appropriate address listed below (or in the enclosed envelope, which may have a different zip code) or (b) via Prime Clerk's E-Ballot platform by visiting https://restructuring.primeclerk.com/pge, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one form of return for your Ballot. If the Firm representing you in connection with your Fire Victim Claim has instructed you to return your completed Ballot to the Firm who will, in turn, submit the completed Ballot to the Solicitation Agent, you must allow sufficient time for the Firm to submit your completed Ballots to the Solicitation Agent so that it is actually received by the Voting Deadline.**

| **If by E-Ballot:** | **If by standard or overnight mail:** | **If by hand delivery:** |
|---|---|---|
| Visit https://restructuring.primeclerk.com/pge and click on the "Submit E-Ballot" link | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except via Prime Clerk's E-Ballot platform).**

To properly complete this Ballot, you must follow the procedures described below:

a. Item 1 (Amount of Fire Claims). Make sure that the information contained in Item 1 below regarding the amount of your Fire Claims is correct.

b. Item 2 (Vote on the Plan). Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below. You must vote the entire amount of your Fire Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c. If you hold Claims or Interests in a Class other than the Class 5A-[I/II] and Class 5B-[I/II], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d. The Debtors and the Solicitation Agent have used reasonable efforts to identify each additional family member identified on any Fire Claimant Proof of Claim Form that would be entitled to vote in accordance with the instructions set forth in such form and the Bar Date Order. To the extent you have received two (2) or more duplicative ballots on account of the same family member or Claim, please note that each family member is authorized to submit only one ballot on account of such Claim.

e. If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted; *provided that*, if a holder of Fire Claims timely submits both a paper Ballot and E-Ballot on account of the same Fire Claims, the E-Ballot shall supersede the paper Ballot, unless the holder of the Fire Claims receives Bankruptcy Court approval otherwise.

f. Item 3 (Optional Release Election). If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 3 below.

g. Item 4 (Acknowledgements and Certifications). Item 4 contains certain required certifications which you are making by signing and returning this Ballot. Please ensure that you have read and understood the certifications prior to signing this Ballot. Provide your name, mailing address, and any remaining information requested in Item 4 below.

h. If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4 below. By submitting the Ballot you are certifying that

you have authority to so act and agree to provide documents evidencing such authority upon request (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act).

i. Sign and date your Ballot.

j. Return your Ballot with an original signature to the Solicitation Agent so as to be received by the Solicitation Agent before the Voting Deadline. For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS OR YOU BELIEVE THAT ADDITIONAL MEMBERS OF YOUR FAMILY WERE ENTITLED TO BUT DID NOT RECEIVE SEPARATE BALLOTS TO VOTE TO ACCEPT OR REJECT THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 5A-[I/II] HOLDCO [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE/FIRE VICTIM] CLAIMS AND CLASS 5B-[I/II] UTILITY [PUBLIC ENTITIES WILDFIRE/SUBROGATION WILDFIRE/FIRE VICTIM] CLAIMS UNDER THE PLAN**

[Class 5A-I and 5B-I Claims]

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, in full and final satisfaction, settlement, release, and discharge of the Debtors' liability for all Class 5A-I and 5B-I Claims, holders of Class 5A-I and 5B-I Claims shall receive an aggregate Cash amount of $1.0 billion, as provided in the Public Entities Plan Support Agreements, to be distributed in accordance with the Public Entities Settlement Distribution Protocol. The Reorganized Debtors shall also establish the Public Entities Segregated Defense Fund, in accordance with the terms of the Public Entities Plan Support Agreements, in an amount of $10 million.**

[Class 5A-II and 5B-II Claims]

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed the Debtors' liability for all Class 5A-II and 5B-II Claims shall be fully assumed by, and be the sole responsibility of the Subrogation Wildfire Trust, and all such Claims shall be satisfied solely from the assets of the Subrogation Wildfire Trust. Pursuant to a Channeling Injunction, each holder of a Class 5A-II and 5B-II Claim shall have its Claim**

**permanently channeled to the Subrogation Wildfire Trust, and such Claim shall be asserted exclusively against the Subrogation Wildfire Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.**

**The Subrogation Wildfire Trust will be funded with $11 billion in cash. Pursuant to the Subrogation Claims Resolution Procedures, the trustee of the Subrogation Wildfire Trust will satisfy Class 5A-II and 5B-II Claims from these assets.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 127 of 250

# FIRE VICTIM BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/pge. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:______________________**

**Prime Clerk's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.

**Item 1. Amount of Fire Claims**. For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds Fire Claims in the amount set forth below.

**Claim(s) Amount**: $_____________________________________________

**Item 2. Vote on the Plan.** The undersigned holder of Fire Claims in the amount set forth in Item 1 above hereby votes to:

**Check one box:**

☐ **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐ **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**Item 3. Optional Release Election.**

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF FIRE CLAIMS IN THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below. If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Fire Claims in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto. You are advised to carefully review and consider these releases in their entirety.**

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.

☐ **Opt-In:** The undersigned elects to **GRANT** (***I.E.***, **OPT-IN TO**) the releases contained in Section 10.9(b) of the Plan.

**Item 4. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of the Fire Claims identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Print or Type Name of Claimant: | ______________________________ |
| Social Security or Federal Tax I.D. No. of Claimant: | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory (if different than Claimant): | ______________________________ |
| If by Authorized Agent, Title of Agent: | ______________________________ |
| Street Address: | ______________________________ |
| City, State, Zip Code: | ______________________________ |
| Telephone Number: | ______________________________ |
| E-mail Address: | ______________________________ |
| Date Completed: | ______________________________ |

Please check one <u>or both</u> of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Claims in these Chapter 11 Cases

**ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS**

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

**Optional Release Provisions under the Plan**

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or**

**any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

Other Key Injunction, Exculpation, and Release Provisions under the Plan

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms**

**of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction.***

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

      **(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 134 of 250

**time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

**(a)** ***Releases by the Debtors*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon**

**the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b)** ***Releases by Holders of Claims and Interests*****. [excerpted above]**

**(c)** ***Only Consensual Non-Debtor Releases.*** **Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d)** ***Release of Liens*****. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e)** ***Waiver of Statutory Limitations on Releases*****. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

**Exhibit H**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**INDIVIDUAL FIRE CLAIMANT BALLOT**

**CLASS 5A-III HOLDCO FIRE VICTIM CLAIMS**
**CLASS 5B-III FIRE VICTIM CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may

be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because you have asserted a Claim against the Debtors arising out of or relating to the Fires[2] that occurred in Northern California (each, a "**Fire Claim**"). Your Fire Claims are classified under the Plan in Class 5A-III (HoldCo Fire Victim Claims) and Class 5B-III (Utility Fire Victim Claims). Except as otherwise set forth in the Bar Date Order, all timely filed Fire Claims have been deemed filed against both of the Debtors and, therefore, you are entitled to vote to accept or reject the Plan in Class 5A-III and Class 5B-III.

Your rights are described in the Disclosure Statement for the Plan, filed on March March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020. If you have received instructions from the attorney or law firm (each, a "Firm") representing you in connection with your Fire Victim**

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

[2] "Fires" means the following fires that occurred in Northern California: (i) 2015 Butte Fire (but only with respect to Fire Claims in Classes 5A-III and 5B-III); (ii) 2017 North Bay Fires (LaPorte, McCourtney, Lobo, Honey, Redwood / Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Partrick, Pythian / Oakmont, Maacama, Tubbs, Point, and Sullivan); and (iii) 2018 Camp Fire.

**Claim to return your completed Ballot to the Firm who will, in turn, submit the completed Ballot to the Solicitation Agent, you must allow sufficient time for the Firm to submit your completed Ballots to the Solicitation Agent so that it is actually received by the Voting Deadline.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**HOLDERS OF FIRE VICTIM CLAIMS SHOULD CAREFULLY REVIEW THE PLAN, INCLUDING THE PLAN'S INJUNCTION, EXCULPATION AND RELEASE PROVISIONS, AS THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 141 of 250

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class 5A-III and Class 5B-III if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Fire Claims that vote on the Plan in each such Class. In the event that Class 5A-III and Class 5B-III vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Fire Claims if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Fire Claims and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent at the appropriate address listed below no later than the Voting Deadline of May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time). Ballots must be delivered to the Solicitation Agent (a) at the appropriate address listed below (or in the enclosed envelope, which may have a different zip code) or (b) via Prime Clerk's E-Ballot platform by visiting https://restructuring.primeclerk.com/pge, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one form of return for your Ballot. If the Firm representing you in connection with your Fire Victim Claim has instructed you to return your completed Ballot to the Firm who will, in turn, submit the completed Ballot to the Solicitation Agent, you must allow sufficient time for the Firm to submit your completed Ballots to the Solicitation Agent so that it is actually received by the Voting Deadline.**

| **If by E-Ballot:** | **If by standard or overnight mail:** | **If by hand delivery:** |
|---|---|---|
| Visit https://restructuring.primeclerk.com/pge and click on the "Submit E-Ballot" link | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except via Prime Clerk's E-Ballot platform).**

To properly complete this Ballot, you must follow the procedures described below:

a. Item 1 (Amount of Fire Claims). Make sure that the information contained in Item 1 below regarding the amount of your Fire Claims is correct. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Fire Victim Claim in Class 5A-III and Class 5B-III has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

b. Item 2 (Vote on the Plan). Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below. You must vote the entire amount of your Fire Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c. If you hold Claims or Interests in a Class other than the Class 5A-III and Class 5B-III, you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d. The Debtors and the Solicitation Agent have used reasonable efforts to identify each additional family member identified on any Fire Claimant Proof of Claim Form that would be entitled to vote in accordance with the instructions set forth in such form and the Bar Date Order. To the extent you have received two (2) or more duplicative ballots on account of the same family member or Claim, please note that each family member is authorized to submit only one ballot on account of such Claim.

e. If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted; *provided that*, if a holder of Fire Claims timely submits both a paper Ballot and E-Ballot on account of the same Fire Claims, the E-Ballot shall supersede the paper Ballot, unless the holder of the Fire Claims receives Bankruptcy Court approval otherwise.

f. Item 3 (Acknowledgements and Certifications). Item 3 contains certain required certifications which you are making by signing and returning this Ballot. Please ensure that you have read and understood the certifications prior to signing this Ballot. Provide your name, mailing address, and any remaining information requested in Item 3 below.

g. If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the

appropriate line in Item 3 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act).

h. Sign and date your Ballot.

i. Return your Ballot with an original signature to the Solicitation Agent so as to be received by the Solicitation Agent before the Voting Deadline. For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS OR YOU BELIEVE THAT ADDITIONAL MEMBERS OF YOUR FAMILY WERE ENTITLED TO BUT DID NOT RECEIVE SEPARATE BALLOTS TO VOTE TO ACCEPT OR REJECT THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 5A-III HOLDCO FIRE VICTIM CLAIMS AND CLASS 5B-III UTILITY FIRE VICTIM CLAIMS UNDER THE PLAN**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed the Debtors' liability for all Class 5A-III and 5B-III Claims shall be fully assumed by, and be the sole responsibility of the Fire Victim Trust, and all such Claims shall be satisfied solely from the assets of the Fire Victim Trust. Pursuant to a Channeling Injunction, each holder of a Class 5A-III and 5B-III Claim shall have its Claim permanently channeled to the Fire Victim Trust, and such Claim shall be asserted exclusively against the Fire Victim Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.**

**The Fire Victim Trust will be funded with assets of an aggregate value of $13.5 billion. As set forth in the Disclosure Statement and the Plan, these assets will comprise (i) $5.4 billion in cash to be contributed on the Effective Date; (ii) $650 million in cash to be contributed on or before January 15, 2021; (iii) $700 million in cash to be contributed on or before January 15, 2022; (the payments in (ii) and (iii) being pursuant to the Tax Benefits Payment Agreement) (iv) $6.75 billion in common stock of PG&E Corp. to be contributed on the Effective Date; and (v) the assignment of certain causes of action and insurance rights. Pursuant to the Fire Victim Claims Resolution Procedures, the trustee of the Fire Victim Trust will satisfy Class 5A-III and 5B-III Claims from these assets.**

# FIRE VICTIM BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/pge. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:________________________**

**Prime Clerk's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.

**Item 1. Amount of Fire Claims**. For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds Fire Claims in the amount set forth below. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Fire Victim Claim in Class 5A-III and Class 5B-III has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

| **Claim(s) Amount**: $1.00 |
|---|

**Item 2. Vote on the Plan.** The undersigned holder of Fire Claims in the amount set forth in Item 1 above hereby votes to:

**Check one box:**

☐ **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐ **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**Item 3. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that it is the holder of the Fire Claims identified in Item 1 above. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Print or Type Name of Claimant: | ______________________________ |
| Social Security or Federal Tax I.D. No. of Claimant: | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory (if different than Claimant): | ______________________________ |
| If by Authorized Agent, Title of Agent: | ______________________________ |
| Street Address: | ______________________________ |
| City, State, Zip Code: | ______________________________ |
| Telephone Number: | ______________________________ |
| E-mail Address: | ______________________________ |
| Date Completed: | ______________________________ |

Please check one <u>or both</u> of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Claims in these Chapter 11 Cases

**Exhibit I**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**MASTER BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**FIRE VICTIM MASTER BALLOT**

**CLASS 5A-III HOLDCO FIRE VICTIM CLAIMS AND**
**CLASS 5B-III UTILITY FIRE VICTIM CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be

modified, amended, or supplemented from time to time, the "**Plan**"[1]) from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You represent certain clients that may hold claims against the Debtors arising out of or relating to the Fires[2] that occurred in Northern California (each, a "**Fire Victim Claim**" and the clients that you represent that may hold such claims, your "**Fire Victim Clients**"). Fire Victim Claims are classified under the Plan in Class 5A-III (HoldCo Fire Victim Claims) and Class 5B-III (Utility Fire Victim Claims). Pursuant to the Bar Date Order, all timely filed Fire Victim Claims have been deemed filed against both of the Debtors and, therefore, each of your Fire Victim Clients is entitled to vote to accept or reject the Plan in Class 5A-III and Class 5B-III. You are receiving this Master Ballot because you previously certified to the Solicitation Agent in a Fire Victim Plan Solicitation Directive that (i) you will collect and record the votes of your Fire Victim Clients through customary and accepted practices, or that you have obtained authority to procedurally cast each of your Fire Victim Client's votes (provided that you have complied with the voting procedures set forth in the Disclosure Statement and Solicitation Procedures Order and each of your Fire Victim Clients has indicated an informed decision on such vote) or (ii) you have the authority under applicable law to vote to accept or reject the Plan on behalf of your Fire Victim Clients and have provided a valid power of attorney to the Solicitation Agent. **To use this Master Ballot, you must meet all applicable standards to receive informed consent from your Fire Victim Clients.** In addition, you must either (i) provide the Disclosure Statement, either in hard copy or electronic format, to your Fire Victim Clients, or (ii) have requested that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on your Fire Victim Clients.

The rights of holders of Fire Victim Claims in Classes 5A-III and 5B-III are described in the Disclosure Statement for the Plan, filed on March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Master Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

[2] "Fires" means the following fires that occurred in Northern California: (i) 2015 Butte Fire; (ii) 2017 North Bay Fires (LaPorte, McCourtney, Lobo, Honey, Redwood / Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Partrick, Pythian / Oakmont, Maacama, Tubbs, Point, and Sullivan); and (iii) 2018 Camp Fire.

339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Master Ballot may not be used for any purpose other than to record the votes of your Fire Victim Clients to accept or reject the Plan. If you believe that you have received this Master Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For the votes of your Fire Victim Clients to be counted, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020. As set forth below, you will need to attach or otherwise submit an exhibit to this Master Ballot containing details of the Fire Victim Clients you represent and for whom you are voting on their behalf under this Master Ballot (the "Exhibit").**

If you have any questions on how to properly complete this Master Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**HOLDERS OF FIRE VICTIM CLAIMS SHOULD CAREFULLY REVIEW THE PLAN, INCLUDING THE PLAN'S INJUNCTION, EXCULPATION AND RELEASE PROVISIONS, AS THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

## INSTRUCTIONS FOR COMPLETING THE FIRE VICTIM MASTER BALLOT

This Master Ballot is submitted to you to solicit, collect, and record the votes of your Fire Victim Clients to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class 5A-III and Class 5B-III if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Fire Victim Claims that vote on the Plan in each such Class. In the event that Class 5A-III and Class 5B-III vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Fire Victim Claims if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Fire Victim Claims and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or vote to reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have the votes of your Fire Victim Clients reflected on this Master Ballot counted, this Master Ballot must be completed, signed, and returned to the Solicitation Agent so that it is actually received no later than Voting Deadline of <u>May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time)</u>.** Master Ballots must be delivered to the Solicitation Agent at the appropriate address listed below:

| **If by e-mail:** | **If by standard or overnight mail:** | **If by hand delivery:** |
|---|---|---|
| pgeballots@primeclerk.com | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to pgeballots@primeclerk.com).**

You must properly complete the Master Ballot as follows:

a. <u>Item 1 (Exhibit)</u>. Item 1 below requires that you include with this Master Ballot an exhibit (the "**Exhibit**"), in electronic format (Excel or a comparable application), that lists the information set forth herein with respect to each of your Fire Victim Clients. Enclosed with this Ballot is a USB drive with a prepopulated Exhibit, in

Excel format, with the Fire Victim Client information you submitted with your Fire Victim Plan Solicitation Directive. For each of the Fire Victim Clients for which you are casting votes to accept or reject the Plan on this Master Ballot you must include on the Exhibit: (a) the Proof of Claim number or Schedule number that corresponds to such Fire Victim Client's Fire Victim Claim; (b) the amount of such Fire Victim Client's Fire Victim Claim; (c) the last name of the Fire Victim Client; (d) the first name of the Fire Victim Client; (e) the address of the Fire Victim Client; and (f) whether the Fire Victim Client votes to accept or reject the Plan. Please ensure that columns on the Exhibit are no greater than 45 characters wide.

| Claim Number | Schedule Number | Claim Amount | Last Name | First Name | Address | Vote on the Plan | |
|---|---|---|---|---|---|---|---|
| | | | | | | Class 5A-III | Class 5B-III |
| 1001 | 1502 | $1 | Smith | Alex | 123 Main St, City, California 9000 | Accept | Accept |
| 1002 | 1501 | $1 | Jones | John | 321 Side St, City, California 9000 | Reject | Reject |

**Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Fire Victim Claim has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose**.

If you have any technical questions or need to arrange for special delivery of your Exhibit, please contact the Solicitation Agent at pgeballots@PrimeClerk.com or by telephone at 844-339-4217 (domestic toll-free) or 929-333-8977 (international).

b. Any vote included on the Exhibit that is submitted without the inclusion of the Fire Victim Client's name and the Proof of Claim number or Schedule number that corresponds to such party's Fire Victim Claim will not be counted.

c. Item 2 (Voting Summary). Item 2 below requires you to summarize the votes of your Fire Victim Clients for the Solicitation Agent. If all of your Fire Victim Clients set forth in the Exhibit have voted in the same manner (*e.g.*, all such Fire Victim Clients have voted to accept the Plan or all such Fire Victim Clients have voted to reject the Plan), please check the applicable box marked "A" or "B" in Item 2 below. If certain of your Fire Victim Clients set forth in the Exhibit have voted to accept the Plan and others have voted to reject the Plan, please check the box marked "C" in Item 2 below. **Please note that the Solicitation Agent will review the Exhibit to collect and record the individual votes of each of your Fire Victim Clients regardless of your answer in Item 2 below.** In the event there is a discrepancy between your response to Item 2 and the individual votes of any of the Fire Victim Clients included in the Exhibit, the individual vote reflected on the Exhibit will govern and will supersede your response in Item 2 below.

d.  Each Fire Victim Client that votes must vote the entire amount of his, her, or its claim to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and may not split such vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

e.  If the Exhibit to this Master Ballot fails to designate either an acceptance or rejection of the Plan or designates both an acceptance and rejection of the Plan for any particular Fire Victim Client, the Solicitation Agent may, in its discretion, either contact the party submitting the Master Ballot to attempt to cure the defect or the vote of that particular Fire Victim Client shall not be counted as either an acceptance or rejection of the Plan.

f.  <u>Item 3 (Acknowledgements and Certifications)</u>. Item 3 contains certain required certifications which you are making by signing and returning the Master Ballot. Please ensure that you have read and understood the certifications prior to signing the Master Ballot and the certifications are correct for each Fire Victim Claim voted on the Master Ballot. Provide your name, mailing address and any remaining information requested in Item 4 below.

g.  Sign and date the Master Ballot.

h.  If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding.

i.  Deliver the completed, executed Master Ballot so as to be <u>received</u> by the Solicitation Agent before the Voting Deadline.

**PLEASE NOTE:**

No Master Ballot shall constitute or be deemed a Proof of Claim or an assertion of a Claim. No fees, commissions, or other remuneration will be payable for soliciting votes on the Plan.

**NOTHING CONTAINED HEREIN OR IN THE SOLICITATION PACKAGES SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS, THE SHAREHOLDER PROPONENTS, OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING**

**PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 5A-III HOLDCO FIRE VICTIM CLAIMS AND CLASS 5B-III UTILITY FIRE VICTIM CLAIMS UNDER THE PLAN**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed the Debtors' liability for all Class 5A-III and 5B-III Claims shall be fully assumed by, and be the sole responsibility of the Fire Victim Trust, and all such Claims shall be satisfied solely from the assets of the Fire Victim Trust. Pursuant to a Channeling Injunction, each holder of a Class 5A-III and 5B-III Claim shall have its Claim permanently channeled to the Fire Victim Trust, and such Claim shall be asserted exclusively against the Fire Victim Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.**

**The Fire Victim Trust will be funded with assets of an aggregate value of $13.5 billion. As set forth in the Disclosure Statement and the Plan, these assets will comprise (i) $5.4 billion in cash to be contributed on the Effective Date; (ii) $650 million in cash to be contributed on or before January 15, 2021; (iii) $700 million in cash to be contributed on or before January 15, 2022 (the payments in (ii) and (iii) being pursuant to the Tax Benefits Payment Agreement); (iv) $6.75 billion in common stock of PG&E Corp. to be contributed on the Effective Date; and (v) the assignment of certain causes of action and insurance rights. Pursuant to the Fire Victim Claims Resolution Procedures, the trustee of the Fire Victim Trust will satisfy Class 5A-III and 5B-III Claims from these assets.**

# FIRE VICTIM MASTER BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Required Exhibit List of Fire Victim Clients.** Please include the Exhibit described above, in electronic format (Excel or a comparable application), with respect to each Fire Victim Client for whom you are submitting a vote to accept or reject the Plan herein. For the votes of your Fire Victim Clients to be counted, the Exhibit must be in the format and include all of the information set forth in paragraph (a) of the Instructions to this Master Ballot.

**Item 2. Summary of Votes with Respect to Plan.**

The undersigned certifies that:

*CHECK ONE BOX ONLY*

A ☐ **ALL** of the Fire Victim Clients listed on the Exhibit required in Item 1 **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan.

B ☐ **ALL** of the Fire Victim Clients listed on the Exhibit required in Item 1 **REJECT (*I.E.*, VOTE AGAINST)** the Plan.

C ☐ Certain of the Fire Victim Clients listed on the Exhibit required in Item 1 **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan, while other Fire Victim Clients **REJECT (*I.E.*, VOTE AGAINST)** the Plan.

**Item 3. Acknowledgments and Certification.** By signing this Master Ballot, the undersigned certifies that the following matters are true and correct:

a) I have been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits.

b) Each of the individuals set forth on the Exhibit attached hereto is a Fire Victim Client holding a Fire Victim Claim under the Plan.

c) Each of the Fire Victim Clients set forth on the Exhibit is represented by me and, through the execution and filing of this Master Ballot with the Solicitation Agent, I either (i) have collected and recorded the votes of my Fire Victim Clients through customary and accepted practices, or have obtained authority to procedurally cast each Fire Victim Clients' vote, and I have complied with the voting procedures set forth in the Disclosure Statement and Solicitation Procedures Order and each of my Fire Victim Clients has indicated an informed decision on such vote; or (ii) have the authority under applicable law to vote to accept or reject the Plan on behalf of my Fire Victim Clients and I have provided a valid power of attorney to the Solicitation Agent.

     d) I have met all applicable standards to receive informed consent from each of my Fire Victim Clients with respect to his, her, or its vote on this Master Ballot.

e) I have either (i) provided the Disclosure Statement, either in hard copy or electronic format, to each of my Fire Victim Clients, or (ii) requested that the Solicitation Agent serve Solicitation Packages (without a Ballot) on my Fire Victim Clients.

The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Attorney: ______________________________

Signature: ______________________________

Name of Law Firm: ______________________________

Street Address: ______________________________

City, State, Zip Code: ______________________________

Telephone Number: ______________________________

E-mail Address: ______________________________

Date Completed: ______________________________

**Exhibit J**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**STANDARD HOLDCO COMMON INTEREST BALLOT**
**(CUSIP 69331C108 / ISIN US69331C1080)**

**CLASS 10A-I HOLDCO COMMON INTERESTS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may

be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because, as of March 3, 2020 (the "**Record Date**"), you are the holder of shares of PG&E Corp. Common Stock ("**HoldCo Common Interests**") that are directly registered on PG&E Corp.'s share register. HoldCo Common Interests are classified under the Plan in Class 10A-I. Pursuant to the Disclosure Statement and Solicitation Procedures Order, solely for the purpose of voting to accept or reject the Plan, the amount of HoldCo Common Interests held by a particular holder that will be used to tabulate acceptances or rejections of the Plan will be the number of shares of Common Stock held by such holder as of the Record Date as evidenced on PG&E Corp's share register for registered holders.

Your rights are described in the Disclosure Statement for the Plan, filed on March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above. **For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by the holders of HoldCo Common Interests if it is accepted by the holders of at least two-thirds (2/3) in amount of HoldCo Common Interests voted. In the event that holders of HoldCo Common Interests reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on holders of HoldCo Common Interests if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of HoldCo Common Interests and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent at the appropriate address listed below no later than the Voting Deadline of May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time). Ballots must be delivered to the Solicitation Agent (a) at the appropriate address listed below (or in the enclosed envelope, which may have a different zip code) or (b) via Prime Clerk's E-Ballot platform by visiting https://restructuring.primeclerk.com/pge, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one form of return for your Ballot.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 160 of 250

| If by E-Ballot: | If by standard or overnight mail: | If by hand delivery: |
|---|---|---|
| Visit https://restructuring.primeclerk.com/pge and click on the "Submit E-Ballot" link | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165 | PG&E Ballot Processing<br>c/o Prime Clerk, LLC<br>One Grand Central Place<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165<br><br>If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery. |

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except via Prime Clerk's E-Ballot platform).**

To properly complete this Ballot, you must follow the procedures described below:

a. Item 1 (Amount of HoldCo Common Interests). Make sure that the information contained in Item 1 below regarding the amount of HoldCo Common Interests you held on the Record Date is correct.

b. Item 2 (Vote on the Plan). Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

c. If you hold Claims or Interests in a Class other than HoldCo Common Interests, you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d. If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, provided that, if a holder of HoldCo Common Interests submits both a paper Ballot and E-Ballot on account of the same HoldCo Common Interest, the E-Ballot shall supersede the paper Ballot, unless the holder of the HoldCo Common Interests receives Bankruptcy Court approval otherwise.

e. Item 3 (Certification as to HoldCo Common Interests). If you hold HoldCo Common Interests in other accounts or other record names either as a registered holder on the books and records of the Debtors' transfer agent or as a beneficial owner holding through a Master Ballot Agent, please note: (i) you must vote all HoldCo Common Interests in the same manner and make the same election with respect to plan releases on each Ballot you vote and (ii) you must include details of the other accounts or record names you have submitted Ballots in respect of in Item 3 below. Any vote that attempts to partially accept and partially reject the Plan will not be counted.

f. Item 4 (Optional Release Election). If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 4 below.

g. Item 5 (Acknowledgements and Certifications). Item 5 contains certain required certifications which you are making by signing and returning this Ballot. Please ensure that you have read and understood the certifications prior to signing this Ballot. Provide your name, mailing address, and any remaining information requested in Item 5 below.

h. If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

i. Sign and date your Ballot.

j. Return your Ballot with an original signature to the Solicitation Agent so as to be received by the Solicitation Agent before the Voting Deadline. For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 10A-1 HOLDCO COMMON INTERESTS UNDER THE PLAN**

As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, subject to the New Organizational Documents, each holder of a HoldCo Common Interest shall retain such Interest subject to dilution from any New HoldCo Common Stock, or securities linked to New HoldCo Common Stock, issued pursuant to the Plan and, if applicable, shall receive a pro rata distribution of any subscription rights to be distributed to holders of HoldCo Common Interests in connection with a Rights Offering.

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 162 of 250

# BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/pge. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:______________________**

**Prime Clerk's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Interests described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.

**Item 1. Amount of HoldCo Common Interests**. For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds HoldCo Common Interests (CUSIP 69331C108 / ISIN US69331C1080) directly on the books and records of the Debtors' transfer agent in the number set forth below.

| **Number of Shares Held**: | ______________________________________________ |
|---|---|

**Item 2. Vote on the Plan.** The undersigned holder of HoldCo Common Interests in the amount set forth in Item 1 above hereby votes to:

**Check one box:** ☐ **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐ **REJECT (*I.E.*, VOTE AGAINST)** the Plan

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 163 of 250

**Item 3. Certification as to HoldCo Common Interests.** By completing and returning this Ballot, you certify that either (i) you have not submitted any other Ballots for other HoldCo Common Interests held in other accounts or record names either as a registered holder directly on the books and records of the Debtors' transfer agent or as a beneficial owner through a Master Ballot Agent; or (ii) you have provided the information specified in the following table for all other HoldCo Common Interests for which you have submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan, and the same elections as to the grant of releases under the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER HOLDCO COMMON INTEREST BALLOTS OTHER THAN THIS BALLOT.

| Name of Registered Holder (if you voted additional Holdco Common Interests as a registered holder Or Name of Master Ballot Agent (if you voted additional Holdco Common Interests as a beneficial owner) | Master Ballot Agent's DTC Participant Number (if applicable) | Account Number | Number of Shares Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2 | | | | | |
| 3. | | | | | |
| 4. | | | | | |

**Item 4. Optional Release Election.**

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLASS 10A-I HOLDCO COMMON INTERESTS UNDER THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below. If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Claims or Interests in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto. You are advised to carefully review and consider these releases in their entirety.**

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.

☐ **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

**Item 5. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of the HoldCo Common Interests identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Print or Type Name of Interest holder: | ______________________________ |
| Social Security or Federal Tax I.D. No. of Interest holder: | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory (if different than Interest holder): | ______________________________ |
| If by Authorized Agent, Title of Agent: | ______________________________ |
| Street Address: | ______________________________ |
| City, State, Zip Code: | ______________________________ |
| Telephone Number: | ______________________________ |
| E-mail Address: | ______________________________ |
| Date Completed: | ______________________________ |

Please check one or both of the below boxes if the above address is a change of address for the purpose(s) of:

- ☐ Future notice mailings in these Chapter 11 Cases; and/or
- ☐ Distributions, if any, upon your Interests in these Chapter 11 Cases

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 167 of 250

## ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

### Optional Release Provisions under the Plan

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other**

**occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**Other Key Injunction, Exculpation, and Release Provisions under the Plan**

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms**

**of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction*.**

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

      **(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any**

**time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

**(a)** ***Releases by the Debtors*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon**

**the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b)** ***Releases by Holders of Claims and Interests*****. [excerpted above]**

**(c)** ***Only Consensual Non-Debtor Releases.*** **Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d)** ***Release of Liens*****. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e)** ***Waiver of Statutory Limitations on Releases*****. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 174 of 250

**Exhibit K**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**MASTER BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

**HOLDCO COMMON INTEREST MASTER BALLOT**
**(CUSIP 69331C108 / ISIN US69331C1080)**

**CLASS 10A-1 – HOLDCO COMMON INTERESTS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") [1] from the holders of certain Impaired Claims against, and Interests in, the Debtors.

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

You are receiving this Master Ballot because you are a broker, bank, or other nominee; or the agent of a broker, bank, or other nominee (each of the foregoing, together with any mailing agents thereof, a "**Master Ballot Agent**") for one or more beneficial owners (the "**Beneficial Owners**") of shares of PG&E Corp. Common Stock ("**HoldCo Common Interests**"); or you are the proxy holder of a Master Ballot Agent or Beneficial Owner. HoldCo Common Interests are classified under the Plan in Class 10A-I. You should use this Master Ballot to transmit to the Solicitation Agent the votes of Beneficial Owners in respect of their HoldCo Common Interests to accept or reject the Plan, as recorded on the beneficial owner ballots delivered to them (the "**Beneficial Owner Ballots**").

Beneficial Owners' rights are described in the Disclosure Statement for the Plan, filed on March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Master Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For votes to be counted, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

If you have any questions on how to properly complete this Ballot, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**INFORMATION REGARDING (I) THE TREATMENT OF THE BENEFICIAL OWNERS' HOLDCO COMMON INTERESTS UNDER THE PLAN AND (II) THE PLAN'S INJUNCTION, EXCULPATION AND RELEASE PROVISIONS, INCLUDING THE OPTIONAL RELEASE UNDER SECTION 10.9(b) OF THE PLAN WHICH BENEFICIAL OWNERS WILL ELECT WHETHER TO OPT-IN ON THEIR BENEFICIAL OWNER BALLOTS, IS CONTAINED IN ANNEX A OF THIS MASTER BALLOT AND ON THE BENEFICIAL OWNER BALLOTS. HOLDERS OF HOLDCO COMMON INTERESTS SHOULD CAREFULLY REVIEW THESE PROVISIONS AND THE PLAN AS THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

This Master Ballot is submitted to you to solicit votes of Beneficial Owners to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

Master Ballots must be delivered to the Solicitation Agent at the appropriate address listed below so it is actually received by the Solicitation Agent prior to the Voting Deadline:

**If by e-mail to:**

pgeballots@primeclerk.com

**If by standard, overnight, or hand delivery:**

PG&E Ballot Processing
c/o Prime Clerk, LLC
One Grand Central Place
60 East 42nd Street
Suite 1440
New York, NY 10165

If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail pgeballots@primeclerk.com at least one (1) hour in advance to arrange delivery.

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to pgeballots@primeclerk.com).**

**HOW TO VOTE:**

A holder of HoldCo Common Interests who holds the HoldCo Common Interests on its own behalf through DTC (*i.e.*, is both the Beneficial Owner and Master Ballot Agent for the same HoldCo Common Interests) must vote by returning a Master Ballot to the Solicitation Agent and indicating that it is both the Beneficial Owner and Master Ballot Agent for the HoldCo Common Interests.

If you are transmitting the votes of any Beneficial Owners other than yourself, you may either:

1. Forward Solicitation Packages (with the applicable Beneficial Owner Ballot) to each Beneficial Owner of HoldCo Common Interests entitled to vote on the Plan within five (5) business days of the receipt of the Solicitation Packages and include a return envelope provided by and addressed to you, so that the Beneficial Owner may return the completed Beneficial Owner Ballot to you. You should advise the Beneficial Owners to return their individual Beneficial Owner Ballots to you by a date calculated by you to allow you to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline.

In addition, you are authorized to convey the Solicitation Packages and collect votes to accept or to reject the Plan from Beneficial Owners in accordance with your customary practices, including the use of a "voting instruction form", e-mail, online voting, phone call, or other customary methods for conveying solicitation materials and collecting votes in lieu of (or in addition to) an actual Beneficial Owner Ballot.

OR

2. "Prevalidate" the Beneficial Owner Ballots contained in your Solicitation Package and then forward Solicitation Packages to each Beneficial Owner of HoldCo Common Interests for voting on the Plan within five (5) business days of receipt of your Solicitation Package, with the Beneficial Owner then returning the applicable Beneficial Owner Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. You "prevalidate" a Beneficial Owner's Beneficial Owner Ballot by (i) indicating thereon the name and address of the record holder of the HoldCo Common Interests to be voted with respect to the Plan, the amount of HoldCo Common Interests held by the Beneficial Owner as of the Record Date, and the appropriate account numbers through which the Beneficial Owner's holdings are derived, (ii) certifying the accuracy of the information included on the Beneficial Owner Ballot by stamping the prevalidated Beneficial Owner Ballot with a medallion guarantee, and (iii) executing the Beneficial Owner's Beneficial Owner Ballot. The Beneficial Owner shall return the "prevalidated" Beneficial Owner Ballot directly to the Solicitation Agent by the Voting Deadline.

With respect to all Beneficial Owner Ballots returned to you, you must properly complete the Master Ballot, as follows:

a. Item 1 (Certification of Authority to Vote). Check the appropriate box in Item 1 below.

b. Item 2 (Votes of Beneficial Owners). Provide the information requested in Item 2 below, as transmitted to you by the Beneficial Owners in Items 2 and 4 of the Beneficial Owner Ballot. To identify Beneficial Owners without disclosing their names, please use the customer account number assigned by you to each such Beneficial Owner, or if no such customer account number exists, please assign a number to each account (making sure to retain a separate list of each Beneficial Owner and the assigned number). **IMPORTANT: EACH BENEFICIAL OWNER MUST VOTE ALL OF ITS HOLDCO COMMON INTERESTS, EITHER TO ACCEPT OR REJECT THE PLAN, AND MAY NOT SPLIT SUCH VOTE IN RESPECT OF THE PLAN. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT THEIR VOTE, PLEASE CONTACT THE SOLICITATION AGENT IMMEDIATELY.** Any Beneficial Owner Ballot that is signed, dated, and timely received, but does not indicate acceptance or rejection of a Plan, or indicates both an acceptance and rejection of a Plan, by order of the Bankruptcy Court, will not be counted in respect of that Plan.

c. Item 3 (Certification of Beneficial Owner Votes on Other Ballots). Transcribe the information provided by each Beneficial Owner in Item 3 of each completed

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 180 of 250

Beneficial Owner Ballot relating to other holdings of HoldCo Common Interests voted in Item 3 below.

d. Item 4 (Acknowledgements and Certifications). Item 4 contains certain required certifications which you are making by signing and returning this Master Ballot. Please ensure that you have read and understood the certifications prior to signing this Master Ballot. Provide your name, mailing address, and any remaining information requested in Item 4 below.

e. Sign and date the Master Ballot, and provide the remaining information requested.

f. If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding.

g. Deliver the completed, executed Master Ballot so as to be received by the Solicitation Agent before the Voting Deadline. For each completed, executed Beneficial Owner Ballot returned to you by a Beneficial Owner, you must retain such Beneficial Owner Ballot in your files for one year from the Voting Deadline and produce the same upon the written request of the Debtors, the Reorganized Debtors, or their respective counsel.

**PLEASE NOTE:**

**The Master Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.** At this time, holders should not surrender certificates representing their securities. Neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates surrendered together with the Master Ballot.

No Beneficial Owner Ballot or Master Ballot shall constitute or be deemed a proof of Claim or an assertion of a Claim.

No fees, commissions, or other remuneration will be payable to any Master Ballot Agent for soliciting votes on the Plan. The Debtors will, however, reimburse you for reasonable, documented, actual costs and expenses incurred by you in forwarding the Beneficial Owner Ballots and other enclosed materials to the Beneficial Owners held by you as a Master Ballot Agent or in a fiduciary capacity and in tabulating the Beneficial Owner Ballots.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS, THE SHAREHOLDER PROPONENTS, OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN,**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 181 of 250

**OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE) OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

# MASTER BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Certification of Authority to Vote.** The undersigned certifies that as of March 3, 2020 (the "**Record Date**"), the undersigned (please check appropriate box):

☐ Is a broker, bank, or other nominee for the Beneficial Owners of the amount of the HoldCo Common Interests listed in Item 2 below, and is the registered holder of such securities; or

☐ Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee, or a Beneficial Owner that is the registered holder of the aggregate number of HoldCo Common Interests listed in Item 2 below; or

☐ Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Owner, that is the registered holder of the aggregate number of HoldCo Common Interests listed in Item 2 below;

and accordingly, has full power and authority to vote to accept or reject the Plan and elect to grant certain releases pursuant to the Plan, on behalf of the HoldCo Common Interests held by the Beneficial Owners described in Item 2.

**Item 2. Votes of Beneficial Owners.** The undersigned transmits the following votes and release elections of Beneficial Owners, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are beneficial owners of such securities as of the Record Date, and have delivered to the undersigned, as Master Ballot Agent, Beneficial Owner Ballots casting such votes and release elections. Indicate in the appropriate column the aggregate number voted for each account and each account's release election, or attach such information to this Master Ballot in the form of the following table. Please note each Beneficial Owner must vote all of its HoldCo Common Interests to accept or to reject the Plan and may not split such vote or vote to both accept and reject the Plan.

| Your Customer Account Number for Each Beneficial Owner Voted on this Master Ballot | Number of Shares Held as of Record Date | Transcribe from Item 2 of the Beneficial Owner Ballot<br><br>Indicate the Vote Cast on the Plan on the Beneficial Owner Ballots by Checking the Appropriate Box Below. | | | Transcribe from Item 4 of the Beneficial Owner Ballot<br><br>Indicate Whether the Releases Were Granted in Relation to the Plan on the Beneficial Owner Ballots by Checking the Box Below. |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | Opt-In to Granting Releases |
| 1 | | ☐ | | ☐ | ☐ |
| 2 | | ☐ | | ☐ | ☐ |
| 3 | | ☐ | | ☐ | ☐ |
| 4 | | ☐ | | ☐ | ☐ |
| 5 | | ☐ | | ☐ | ☐ |
| 6 | | ☐ | | ☐ | ☐ |
| 7 | | ☐ | | ☐ | ☐ |
| 8 | | ☐ | | ☐ | ☐ |
| 9 | | ☐ | | ☐ | ☐ |
| 10 | | ☐ | | ☐ | ☐ |
| **TOTALS** | | | | | |

**Item 3. Certification as to Transcription of Information from Item 3 as to HoldCo Common Interests Voted Through Other Ballots.** The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by Beneficial Owners in Item 3 of each Beneficial Owner Ballot, identifying any HoldCo Common Interests for which such Beneficial Owners have submitted Ballots other than those listed in Item 2 above:

| YOUR Customer Account Number for Each Beneficial Owner Who Completed Item 3 of the Beneficial Owner Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL OWNER BALLOTS: | | | | | |
|---|---|---|---|---|---|---|
| | Name of Registered Holder (if your Beneficial Owner client voted additional HoldCo Common Interests as a registered holder) Or Name of Other Master Ballot Agent (if your Beneficial Owner client voted additional HoldCo Common Interests as a beneficial holder) | Other Master Ballot Agent, such other Agent's DTC Participant Number (if applicable) | Beneficial Owner's Account Number with Other Master Ballot Agent (if applicable) | Number of Shares Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |

**Item 4. Acknowledgements and Certifications.** By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) its certification of authority to vote in Item 1 above is accurate and (b) it has full power and authority to vote to accept or reject the Plan and to elect to grant certain releases pursuant to the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Print or Type Name of Master Ballot Agent: | ______________________________ |
| DTC Participant Number: | ______________________________ |
| Name of Proxy Holder or Agent (if applicable): | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory (if different than Interest holder): | ______________________________ |
| Title: | ______________________________ |
| Street Address: | ______________________________ |
| City, State, Zip Code: | ______________________________ |
| Telephone Number: | ______________________________ |
| E-mail Address: | ______________________________ |
| Date Completed: | ______________________________ |

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 186 of 250

**ANNEX A**

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. HOLDERS OF HOLDCO COMMON INTERESTS ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE THEIR RIGHTS MAY BE AFFECTED THEREUNDER.**

**PLAN TREATMENT SUMMARY**

**Class 10A-1: HoldCo Common Interests**

**As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, subject to the New Organizational Documents, each holder of a HoldCo Common Interest shall retain such Interest subject to dilution from any New HoldCo Common Stock, or securities linked to New HoldCo Common Stock, issued pursuant to the Plan and, if applicable, shall receive a pro rata distribution of any subscription rights to be distributed to holders of HoldCo Common Interests in connection with a Rights Offering.**

**PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS**

**Optional Release Provisions under the Plan**

**Holders of HoldCo Common Interests can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**A holder of HoldCo Common Interests' election to opt-in to the releases does not affect the classification or treatment of their Interests in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan. Section 10.9(b) of the Plan, which holders of HoldCo Common Interests can elect to opt-in to by their Beneficial Owner Ballots, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would**

**have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**<u>Other Key Injunction, Exculpation, and Release Provisions under the Plan</u>**

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on holders of HoldCo Common Interests whether or not they elect to opt-in to the releases in Section 10.9(b) of the Plan by their Beneficial Owner Ballots.**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct**

**or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction.***

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award,**

**decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

**(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support**

**Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

**(a)** ***Releases by the Debtors.*** **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires,**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 192 of 250

**the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b) *Releases by Holders of Claims and Interests*. [excerpted above]**

**(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d) *Release of Liens*. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e)** ***Waiver of Statutory Limitations on Releases*****. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

**Exhibit L**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case<br><br>No. 19-30088 (DM)<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**BALLOT FOR ACCEPTING OR REJECTING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |
|---|---|

**COMMON INTEREST BENEFICIAL OWNER BALLOT**
**(CUSIP 69331C108 / ISIN US69331C1080)**

**CLASS 10A-I – HOLDCO COMMON INTERESTS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR MASTER BALLOT AGENT:**

**YOU MUST RETURN THIS BALLOT TO YOUR MASTER BALLOT AGENT IN THE ENVELOPE PROVIDED OR IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR MASTER BALLOT AGENT.**

**OR**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT"):**

**THIS BALLOT MUST BE COMPLETED AND RETURNED DIRECTLY TO THE SOLICITATION AGENT SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING PACIFIC TIME) ON MAY 15, 2020 (THE "VOTING DEADLINE").**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 196 of 250

The Solicitation Agent, on behalf of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and the Shareholder Proponents, is soliciting votes to accept or reject the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**[1]") from the holders of certain Impaired Claims against, and Interests in, the Debtors.

You are receiving this Ballot because, as of March 3, 2020 (the "**Record Date**"), you are the beneficial owner (a "**Beneficial Owner**") of shares of PG&E Corp. Common Stock ("**HoldCo Common Interests**") for which Cede & Co. is the registered owner of (*e.g.* you hold HoldCo Common Interets through a broker, bank, dealer, agent or nominee). HoldCo Common Interests are classified under the Plan in Class 10A-I. Your broker, bank, dealer, agent or nominee is acting as ballot agent (the "**Master Ballot Agent**") for the solicitation of your votes on the Plan.

Your rights are described in the Disclosure Statement for the Plan, filed on March 17, 2020 [Docket No. 6353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Disclosure Statement, the Plan, the Disclosure Statement and Solicitation Procedures Order, and certain other materials are included in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Prime Clerk by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/pge/; (ii) writing PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing pgeballots@primeclerk.com, or (iv) calling the Solicitation Agent at 844-339-4217 (domestic toll-free) or 929-333-8977 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at http://www.canb.uscourts.gov/.

The United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**If you received a return envelope addressed to Prime Clerk, your Ballot must be properly completed and returned to the Solicitation Agent so that it is actually received no later than 4:00 p.m. (Prevailing Pacific Time) on May 15, 2020.**

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

**If you received a return envelope addressed to your Master Ballot Agent, or other instructions to return this Ballot to your Master Ballot Agent, your Ballot must be properly completed, signed and returned to your Master Ballot Agent by the date and time specified to permit your Master Ballot Agent to deliver your votes to the Solicitation Agent on or before the Voting Deadline.**

If you have any questions on how to properly complete this Ballot, please contact your Master Ballot Agent. If you have any questions about the solicitation of the Plan, please call Prime Clerk at 844-339-4217 (domestic toll-free) or 929-333-8977 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 198 of 250

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by the holders of HoldCo Common Interests if it is accepted by the holders of at least two-thirds (2/3) in amount of HoldCo Common Interests voted. In the event that holders of HoldCo Common Interests reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on holders of HoldCo Common Interests if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of HoldCo Common Interests and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**In order for your vote to be counted, this Ballot must be properly completed, signed (unless it has been prevalidated by your Master Ballot Agent), and returned in the envelope provided (or otherwise in accordance with the instructions of your Master Ballot Agent) so that it received by the Voting Deadline or such other date specified by your Master Ballot Agent.**

**Ballots will not be accepted by email, telecopy, facsimile, or other electronic means of transmission (except as instructed by your Master Ballot Agent).**

To properly complete this Ballot, you must follow the procedures described below:

a. Item 1 (Amount of HoldCo Common Interests). Make sure that the information contained in Item 1 below regarding the amount of HoldCo Common Interests you held on the Record Date is correct.

b. Item 2 (Vote on the Plan). Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below.

c. If you hold Claims or Interests in a Class other than HoldCo Common Interests, you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims or Interests. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims or Interests only if you complete, sign, and return the Ballot labeled for such Class of Claims or Interests in accordance with the instructions on that Ballot.

d. If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by your Master Ballot Agent or the Solicitation Agent will be counted, unless the holder of the HoldCo Common Interests receives Bankruptcy Court approval otherwise.

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 199 of 250

e. Item 3 (Certification as to HoldCo Common Interests). If you hold HoldCo Common Interests in other accounts or other record names either as a registered holder holding such HoldCo Common Interests directly on the books and records of the Debtors' transfer agent or as a beneficial owner holding through a different Master Ballot Agent, please not that: (i) you must vote all HoldCo Common Interests in the same manner and make the same election with respect to plan releases on each Ballot you vote and (ii) you must include details of the other accounts or record names you have submitted Ballots in respect of in Item 3 below. Any vote that attempts to partially accept and partially reject the Plan will not be counted.

f. Item 4 (Optional Release Election). If you wish to opt-in to granting the releases contained in Clause 10.9(b) of the Plan, check the box in Item 4 below.

g. Item 5 (Acknowledgements and Certifications). Item 5 contains certain required certifications which you are making by signing and returning this Ballot. Please ensure that you have read and understood the certifications prior to signing this Ballot. Provide your name, mailing address, and any remaining information requested in Item 5 below.

h. If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

i. Sign and date your Ballot (if your Ballot has not been prevalidated by your Master Ballot Agent).

j. Return your Ballot with an original signature using the enclosed pre-addressed return envelope (or otherwise in accordance with the instructions of your Master Ballot Agent). If your Ballot is not received by your Master Ballot Agent in sufficient time to be included on a timely submitted Master Ballot, it will not be counted. In all cases, Beneficial Owners should allow sufficient time to assure timely delivery of your Ballot to your Master Ballot Agent. No Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (C) DID NOT RECEIVE COPIES OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (D) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT YOUR MASTER BALLOT AGENT. IF YOU HAVE ANY GENERAL QUESTIONS ABOUT THE SOLICITATION OF THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT AT 844-339-4217 (DOMESTIC TOLL-FREE)**

**OR 929-333-8977 (INTERNATIONAL), OR BY E-MAILING PGEBALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING THE TREATMENT OF CLASS 10A-I HOLDCO COMMON INTERESTS UNDER THE PLAN**

As described in further detail in the Disclosure Statement and the Plan, if the Plan is confirmed, on the Effective Date, subject to the New Organizational Documents, each holder of a HoldCo Common Interest shall retain such Interest subject to dilution from any New HoldCo Common Stock, or securities linked to New HoldCo Common Stock, issued pursuant to the Plan and, if applicable, shall receive a pro rata distribution of any subscription rights to be distributed to holders of HoldCo Common Interests in connection with a Rights Offering.

# BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of HoldCo Common Interests.** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 3, 2020, the undersigned holds HoldCo Common Interests (CUSIP 69331C108 / ISIN US69331C1080) in the number set forth below.

| | |
|---|---|
| **Number of Shares Held**: | ________________________________________ |

**Item 2. Vote on the Plan.** The undersigned holder of HoldCo Common Interests in the amount set forth in Item 1 above hereby votes to:

**Check one box:** ☐ **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐ **REJECT (*I.E.*, VOTE AGAINST)** the Plan

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 202 of 250

**Item 3. Certification as to HoldCo Common Interests.** By completing and returning this Ballot, you certify that either (i) you have not submitted any other Ballots for other HoldCo Common Interests held in other accounts or record names either as a registered holder directly on the books and records of the transfer agent or as a beneficial holder through a different Master Ballot Agent; or (ii) you have provided the information specified in the following table for all other HoldCo Common Interests for which you have submitted additional Ballots, each of which indicates the same votes to accept or reject the Plan, and the same elections as to the grant of releases under the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER HOLDCO COMMON INTEREST BALLOTS OTHER THAN THIS BALLOT.

| Name of Registered Holder (if you voted additional HoldCo Common Interests as a registered holder) or Name of Other Master Ballot Agent (if you voted additional HoldCo Common Interests as a beneficial holder) | If you voted HoldCo Common Interests as a beneficial holder, voted through a different Master Ballot Agent, such Agent's "DTC Participant Number" | Account Number (if applicable) | Number of Shares Voted | Vote (Accept or Reject) | Opt-In to Releases (Yes or No) |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2 | | | | | |
| 3. | | | | | |
| 4. | | | | | |

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 203 of 250

**Item 4. Optional Release Election.**

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF HOLDCO COMMON INTERESTS UNDER THE PLAN:**

**You can elect, pursuant to Section 10.9(b) of the Plan, to release certain persons, collectively, and in each case in their capacities as such: (a) the Debtors and Reorganized Debtors; (b) the Tort Claimants Committee; (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Released Parties").**

**To grant these releases you must check the box below. If you elect not to check the box below, you will not grant the releases.**

**Your election to opt-in to the releases does not affect the classification or treatment of your Interests in any way pursuant to the Plan.**

**Please note that the release pursuant to Section 10.9(b) is in addition to the release and discharge of Claims and Interests against the Debtors which arose prior to the Effective Date pursuant to Section 10.3 of the Plan, and the injunctions supporting such release and discharge in Sections 10.6 and 10.7 of the Plan, and opting-out of granting the releases in Section 10.9(b) does not affect the operation of these or any other provision of the Plan.**

**Please be advised that the complete text of the releases set forth in Section 10.9(b) of the Plan is set forth on Annex A hereto. You are advised to carefully review and consider these releases in their entirety.**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 204 of 250

Check the box below to opt-in to granting the releases contained in Section 10.9(b) of the Plan. For the avoidance of doubt, if you elect not to check the box below, you will not grant the releases.

☐ **Opt-In:** The undersigned elects to **GRANT (*I.E.*, OPT-IN TO)** the releases contained in Section 10.9(b) of the Plan.

**Item 5. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Disclosure Statement and Solicitation Procedures Order without exhibits. The undersigned certifies that (a) it is the holder of the HoldCo Common Interests identified in Item 1 above and (b) it has full power and authority to vote to accept or reject the Plan and to elect to opt-in to the optional releases under the Plan. The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Print or Type Name of Interest holder: | ____________________ |
| Account Number(s) (if applicable) | ____________________ |
| DTC Participant Number: | ____________________ |
| Social Security or Federal Tax I.D. No. of Interest holder: | ____________________ |
| Signature: | ____________________ |
| Name of Signatory (if different than Interest holder): | ____________________ |
| If by Authorized Agent, Title of Agent: | ____________________ |
| Street Address: | ____________________ |
| City, State, Zip Code: | ____________________ |
| Telephone Number: | ____________________ |
| E-mail Address: | ____________________ |
| Date Completed: | ____________________ |

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 205 of 250

Please check one <u>or both</u> of the below boxes if the above address is a change of address for the purpose(s) of:

☐ Future notice mailings in these Chapter 11 Cases; and/or

☐ Distributions, if any, upon your Interests in these Chapter 11 Cases

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 206 of 250

## ANNEX A: PLAN INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS

**The provisions of the Plan excerpted in this Annex A are subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

### Optional Release Provisions under the Plan

**Please be advised that Section 10.9(b) of the Plan, which you can elect to opt-in to by this Ballot, contains the following releases by Holders of Claims and Interests:**

> **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other**

**occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**<u>Other Key Injunction, Exculpation, and Release Provisions under the Plan</u>**

**Please be advised that the Plan also contains the following key injunction, exculpation, and release provisions. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt-in to the releases in Section 10.9(b) of the Plan by this Ballot.**

***Section 10.6 – Injunction.***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms**

**of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction.***

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

      **(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any**

**time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

**(a)** ***Releases by the Debtors*****. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an** ***ex officio*** **basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon**

**the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b)** ***Releases by Holders of Claims and Interests*****. [excerpted above]**

**(c)** ***Only Consensual Non-Debtor Releases.*** **Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d)** ***Release of Liens*****. Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e)** ***Waiver of Statutory Limitations on Releases*****. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

**Exhibit M**

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors and Debtors in Possession*

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Chapter 11 Case
No. 19-30088 (DM)
(Lead Case)
(Jointly Administered)

**NOTICE OF NON-VOTING STATUS TO UNIMPAIRED CLASSES PRESUMED TO ACCEPT, OR CREDITORS AND INTEREST HOLDERS OTHERWISE NOT ENTITLED TO VOTE ON, THE DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE** that by Order, dated March 17, 2020 [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"), the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") approved the disclosure statement (the solicitation version of which is filed at Docket No. 6353, together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] as having adequate information as provided under section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"), and also approved the certain procedures for the solicitation, distribution, and tabulation of votes to accept or reject the Plan. The Bankruptcy Court previously set certain dates and deadlines with respect to approval of the Disclosure Statement and confirmation of the Plan by Order, dated February 11, 2020 [Docket No. 5732] (the "**Scheduling Order**").

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE UNDER THE TERMS OF THE PLAN, YOUR CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS ARE EITHER (I) NOT IMPAIRED AND, THEREFORE, PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, YOU ARE PRESUMED TO HAVE ACCEPTED THE PLAN, OR (II) AS OF THE DEADLINE SET FORTH IN THE SCHEDULING ORDER, ARE SUBJECT TO A PENDING OBJECTION OR OTHERWISE DEEMED NOT ENTITLED TO VOTE ON THE PLAN IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES ORDER. ACCORDINGLY, YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN WITH RESPECT TO YOUR CLAIMS OR INTERESTS.**

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**PLEASE TAKE FURTHER NOTICE** that the classes of Claims and Interests which are not Impaired under the Plan are listed in the table below:

| Class | Designation | Impairment |
|---|---|---|
| Class 1A | HoldCo Other Secured Claims | Unimpaired |
| Class 2A | HoldCo Priority Non-Tax Claims | Unimpaired |
| Class 3A | HoldCo Funded Debt Claims | Unimpaired |
| Class 4A | HoldCo General Unsecured Claims | Unimpaired |
| Class 5A-IV | HoldCo Ghost Ship Fire Claims | Unimpaired |
| Class 6A | HoldCo Workers' Compensation Claims | Unimpaired |
| Class 7A | HoldCo Environmental Claims | Unimpaired |
| Class 8A | HoldCo Intercompany Claims | Unimpaired |
| Class 9A | HoldCo Subordinated Debt Claims | Unimpaired |
| Class 11A | HoldCo Other Interests | Unimpaired |
| Class 1B | Utility Other Secured Claims | Unimpaired |
| Class 2B | Utility Priority Non-Tax Claims | Unimpaired |
| Class 3B-II | Utility Reinstated Senior Note Claims | Unimpaired |
| Class 3B-V | Utility PC Bond (2008 F and 2010 E) Claims | Unimpaired |
| Class 4B | Utility General Unsecured Claims | Unimpaired |
| Class 5B-IV | Utility Ghost Ship Fire Claims | Unimpaired |
| Class 6B | Utility Workers' Compensation Claims | Unimpaired |
| Class 7B | 2001 Utility Exchange Claims | Unimpaired |
| Class 8B | Utility Environmental Claims | Unimpaired |
| Class 9B | Utility Intercompany Claims | Unimpaired |
| Class 10B | Utility Subordinated Debt Claims | Unimpaired |
| Class 11B | Utility Preferred Interests | Unimpaired |
| Class 12B | Utility Common Interests | Unimpaired |

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Scheduling Order, if you timely filed a Proof of Claim or Interest and disagreed with the Debtors' classification of, objection to, or request for estimation of, your Claim or Interest and believe that you should have been be entitled to vote to accept or reject the Plan, then you were required to file and serve a motion, pursuant to Bankruptcy Rule 3018(a) (a "**3018 Motion**"), to temporarily allow such Claim or Interest in a different amount or in a different Class for purposes of voting to accept or reject the Plan by March 6, 2020 at 4:00 p.m. (Prevailing Pacific Time), unless such deadline has been extended by agreement of the Debtors; *provided, however,* that, notwithstanding anything in the Disclosure Statement and Solicitation Procedures Order or the Scheduling Order to the contrary, the deadline for any holder of a timely filed HoldCo Rescission or Damage Claim to file a 3018 Motion has been extended through and including April 23, 2020, at 4:00 p.m. (Prevailing Pacific Time). The rights of the Debtors and any other party in

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

interest to respond or object to any 3018 Motion are hereby expressly reserved. 3018 Motions that were not timely filed and served in accordance with the Scheduling Order shall not be considered.[2]

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Scheduling Order, the hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **May 27, 2020 at 10:00 a.m. (Prevailing Pacific Time)**, before the Honorable Dennis Montali, United States Bankruptcy Judge, in Courtroom 17 of the Bankruptcy Court, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102. Pursuant to the *Order re: Coronavirus Disease Public Health Emergency*, General Order 38 (N.D. Cal. Mar. 18, 2020), **all hearings through May 1, 2020 will be conducted telephonically and the courtroom will be closed**. Although the Confirmation Hearing is scheduled for May 27, 2020, parties are encouraged to check back as to the status of the Confirmation Hearing or the manner in which the Confirmation Hearing will be conducted with the Clerk of the Bankruptcy Court (the "**Clerk**") by visiting at http://www.canb.uscourts.gov/ or with Prime Clerk, LLC (the "**Solicitation Agent**") by visiting the case website at https://restructuring.primeclerk.com/pge (the "**Case Website**").[3] The Confirmation Hearing and the deadlines related thereto may be continued from time to time by the Bankruptcy Court without further notice other than announcement by the Bankruptcy Court in open Court, as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court, or on the docket. The Plan may be modified, if necessary, before, during, or because of the Confirmation Hearing, without further notice to interested parties.

**PLEASE TAKE FURTHER NOTICE** that responses and objections to confirmation of the Plan must:

[2] Claimants may contact PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-333-8977 (international), or by e-mail to pgeinfo@primeclerk.com to receive an appropriate Ballot for any Claim for which a proof of claim and a 3018 Motion have been timely filed.

[3] All parties who wish to appear at hearings must make arrangements to appear telephonically with CourtCall at 1−866−582−6878 no later than 4:00 p.m. (Pacific Time) on the day before the hearing. Further information regarding telephonic appearances via CourtCall can be found on the court's website, at the following location: http://www.canb.uscourts.gov/procedure/district-oakland-san-jose-san-francisco/policy-and-procedure-appearances-telephone.

(a)    Be in writing;

(b)    State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)    State with particularity the basis and nature of any objection with respect to the Plan;

(d)    Conform to the Bankruptcy Rules, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, the *Order Establishing Procedures for Disclosure Statement and Confirmation Hearing* (N.D. Cal. May 2017) (Montali, J.), and the Scheduling Order; and

(e)    Be filed with the Bankruptcy Court and served in accordance with Bankruptcy Rule 3020(b)(1) so as to be actually received on or before **4:00 p.m. (Prevailing Pacific Time) on May 15, 2020** (the "**Objection Deadline**") by the following parties (the "**Notice Parties**"):

(i)    Clerk, U.S. Bankruptcy Court for the Northern District of California, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102;

(ii)    The Debtors, c/o PG&E Corporation and Pacific Gas and Electric Company, 77 Beale Street, P.O. Box 770000, San Francisco, California 94177 (Attn: Janet Loduca, Esq.);

(iii)    The attorneys for the Debtors, (A) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. (stephen.karotkin@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), and Matthew Goren, Esq. (matthew.goren@weil.com)), (B) Keller Benvenutti Kim LLP, 650 California Street, Suite 1900, San Francisco, California 94108 (Attn: Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Jane Kim, Esq. (jkim@kbkllp.com)), and (C) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019 (Attn: Paul H. Zumbro, Esq. (pzumbro@cravath.com), Kevin J. Orsini, Esq. (korsini@cravath.com), and Omid H. Nasab, Esq. (onasab@cravath.com));

(iv)    The U.S. Trustee, 450 Golden Gate Avenue, 5th Floor, Suite 05-0153, San Francisco, California 94102 (Attn: James L. Snyder, Esq. (James.L.Snyder@usdoj.gov) and Timothy Laffredi, Esq. (Timothy.S.Laffredi@usdoj.gov));

(v)    The attorneys for the administrative agent under the Debtors' debtor-in-possession financing facility, (A) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982 (Attn: Kristopher M. Hansen, Esq. (khansen@stroock.com), Erez E. Gilad, Esq. (egilad@stroock.com), and Matthew G. Garofalo, Esq. (mgarofalo@stroock.com)) and (B) Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067-3086 (Attn: Frank A. Merola, Esq. (fmerola@stroock.com));

(vi)    The attorneys for the collateral agent under the Debtors' debtor-in-possession financing facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut, Esq. (eli.vonnegut@davispolk.com), David Schiff, Esq.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(david.schiff@davispolk.com), and Timothy Graulich, Esq. (timothy.graulich@davispolk.com));

(vii) The attorneys for the CPUC, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064 (Attn: Alan W. Kornberg, Esq. (akornberg@paulweiss.com), Brian S. Hermann, Esq. (bhermann@paulweiss.com), Walter R. Rieman, Esq. (wrieman@paulweiss.com), Sean A. Mitchell, Esq. (smitchell@paulweiss.com), and Neal P. Donnelly, Esq. (ndonnelly@paulweiss.com));

(viii) The attorneys for the Creditors Committee, (A) Milbank LLP, 55 Hudson Yards, New York, New York 10001-2163 (Attn: Dennis F. Dunne, Esq. (DDunne@milbank.com) and Samuel A. Kahlil, Esq. (skhalil@milbank.com)) and (B) Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067 (Attn: Gregory A. Bray, Esq. (GBray@milbank.com) and Thomas R. Kreller, Esq. (TKreller@milbank.com));

(ix) The attorneys for the Tort Claimants Committee, (A) Baker & Hostetler LLP, 1160 Battery Street, Suite 100, San Francisco, California 94111 (Attn: Robert A. Julian, Esq. (rjulian@bakerlaw.com) and Cecily A. Dumas, Esq. (cdumas@bakerlaw.com)) and (B) Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California, 90025-0509 (Attn: Eric E. Sagerman, Esq. (esagerman@bakerlaw.com) and Lauren T. Attard, Esq. (lattard@bakerlaw.com ));

(x) The attorneys for the Ad Hoc Group of Subrogation Claim Holders, (A) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Matthew A. Feldman, Esq. (mfeldman@willkie.com), Joseph G Minias Esq. (jminias@willkie.com), Benjamin P. McCallen Esq. (bmccallen@willkie.com), and Daniel I. Forman Esq. (dforman@willkie.com) and (B) Diemer & Wei, LLP, 100 West San Fernando Street, Suite 555, San Jose, California 95113 (Attn: Kathryn S. Diemer (kdiemer@diemerwei.com));

(xi) The attorneys for the Shareholder Proponents, Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300 (Attn: Bruce S. Bennett, Esq. (bbennett@jonesday.com), Joshua M. Mester, Esq. (jmester@jonesday.com), and James O. Johnston, Esq. (jjohnston@jonesday.com)); and

(xii) The attorneys for the Ad Hoc Committee of Senior Unsecured Noteholders, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036 (Attn: Michael S. Stamer, Esq. (mstamer@akingump.com), Ira S. Dizengoff, Esq. (idizengoff@akingump.com), David H. Botter, Esq. (dbotter@akingump.com), Abid Qureshi, Esq. (aqureshi@akingump.com) and (B) Akin Gump Strauss Hauer & Feld LLP, 580 California Street, Suite 1500, San Francisco, California 94104 (Attn: Ashley Vinson Crawford, Esq. (avcrawford@akingump.com)).

**PLEASE TAKE FURTHER NOTICE THAT IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT TIMELY FILED AND SERVED STRICTLY AS**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

**PLEASE TAKE FURTHER NOTICE THAT PRINCIPAL COUNSEL REPRESENTING A PARTY, OR ANY PRO SE PARTY, OBJECTING TO CONFIRMATION OF THE PLAN MUST APPEAR IN PERSON AT A PRE-CONFIRMATION SCHEDULING CONFERENCE ON MAY 19, 2020 AT 10:00 AM (PREVAILING PACIFIC TIME) TO DISCUSS SCHEDULING ANY EVIDENTIARY MATTERS TO BE DEALT WITH IN CONNECTION WITH THE CONFIRMATION HEARING AND SCHEDULING FOR BRIEFING OF CONTESTED LEGAL ISSUES. FAILURE TO APPEAR MAY RESULT IN THE OBJECTION BEING STRICKEN.**

**PLEASE TAKE FURTHER NOTICE THAT SCHEDULE A TO THIS NOTICE SETS FORTH A SUMMARY OF THE KEY INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS IN THE PLAN. IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, THE PROVISIONS OF THE CONFIRMED PLAN, INCLUDING THE INJUNCTIONS, EXCULPATIONS, AND RELEASES CONTAINED THEREIN, WILL BE BINDING ON YOU, REGARDLESS OF WHETHER YOU ARE IMPAIRED OR NOT UNDER THE CONFIRMED PLAN. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN, INCLUDING THE INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS, CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 221 of 250

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of your Claims or Interests, or wish to request a copy of the Plan, the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, or any of the other solicitation materials, contact the Solicitation Agent by mail, overnight, or hand delivery at PG&E Information, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-333-8977 (international), by e-mail to pgeinfo@primeclerk.com, or by visiting the Case Website. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Dated: March 18, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By: /s/ Stephen Karotkin
Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**SCHEDULE A**

**Summary of Key Injunction, Exculpation, and Release Provisions of the Plan**

**If the Plan is confirmed by the Bankruptcy Court, the Plan, including the injunctions, exculpations, and releases contained in, among others, Sections 4.6(a), 4.7(a), 4.25(e), 4.26(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 thereof, will be binding on you, regardless of whether you are Impaired or not under the Plan. If the Plan is confirmed by the Bankruptcy Court, the following key injunction, exculpation, and release provisions will apply, subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER:**

***Section 10.6 – Injunction***

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation**

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 223 of 250

**Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

**(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.**

***Section 10.7 – Channeling Injunction*.**

**(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;**

**(ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;**

**(iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;**

**(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and**

**(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

**(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:**

**(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.**

**(c) Modifications. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.**

**(d) No Limitation on Channeling Injunction. Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.**

**(e) Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

***Section 10.8 - Exculpation.*** **Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

***Section 10.9 – Releases.***

**(a) *Releases by the Debtors.* As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 225 of 250

**Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b) *Releases by Holders of Claims and Interests*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.**

**(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.**

**(d) *Release of Liens.* Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**(e) *Waiver of Statutory Limitations on Releases*. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.**

**(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-30088 Doc# 6893 Filed: 04/22/20 Entered: 04/22/20 20:00:31 Page 228 of 250

**Exhibit N**

Exhibit N

Equity Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| BROADRIDGE | JOBS: Y99762 | 51 MERCEDES WAY | | EDGEWOOD | NY | 11717 | US |
| MEDIANT COMMUNICATIONS | ATTN: STEPHANIE FITZHENRY/PROXY CENTER | 100 DEMAREST DRIVE | | WAYNE | NJ | 07470 | US |
| DEPOSITORY TRUST CO. | ATTN: ED HAIDUK | 55 WATER STREET | 25TH FLOOR | NEW YORK | NY | 10041 | US |
| DEPOSITORY TRUST CO. | ATTN: HORACE DALEY | 55 WATER STREET | 25TH FLOOR | NEW YORK | NY | 10041 | US |
| AMALGAMATED BANK (2352) | ATTN: BOB WINTERS OR PROXY MGR | 275 7TH AVENUE | | NEW YORK | NY | 10001 | US |
| AMALGAMATED BANK OF CHICAGO/IPA (1574/2567) | ATTN: BERNETTA SMITH OR PROXY MGR | ONE WEST MONROE STREET | | CHICAGO | IL | 60603 | US |
| AMERICAN ENTERPRISE (0216/0756/2146) | ATTN: GREG WRAALSTAD | 901 3RD AVE SOUTH | | MINNEAPOLIS | MN | 55474 | US |
| AMERICAN ENTERPRISE (0216/0756/2146) | ATTN: ERIN M STIELER | 682 AMP FINANCIAL CENTER | | MINNEAPOLIS | MN | 55474 | US |
| AMERICAN ENTERPRISE (0216/0756/2146) | ATTN: PROXY MGR | 2178 AMERIPRISE FINANCIAL CENTER | ROUTING: S6/2178 | MINNEAPOLIS | MN | 55474 | US |
| APEX CLEARING CORPORATION (0158) | ATTN: BRIAN DARBY | 350 M. ST. PAUL SUITE 1300 | | DALLAS | TX | 75201 | US |
| APEX CLEARING CORPORATION (0158) | ATTN; SHERRY MUSMAR | 350 N ST. PAUL STREET | SUITE 1300 | DALLAS | TX | 75201 | US |
| APEX CLEARING CORPORATION (0158) | ATTN: SHERRY MUSMAR | 1700 PACIFIC AVENUE, SUITE 1400 | | DALLAS | TX | 75201 | US |
| BAIRD & CO. INCORPORATED (0547) | ATTN: JAN SUDFELD | 777 E. WISCONSIN AVENUE | 19TH FLOOR | MILWAUKEE | WI | 53202 | US |
| BAIRD & CO. INCORPORATED (0547) | ATTN: JANE ERBE OR PROXY MGR | 777 E. WISCONSIN AVENUE | | MILWAUKEE | WI | 53202 | US |
| BANK OF AMERICA, NA/GWI M (0955) | ATTN: SHARON BROWN OR PROXY MGR | 1201 MAIN STREET | 9TH FLOOR | DALLAS | TX | 75202 | US |
| BANK OF AMERICA/LASALLE BANK NA (2251) | ATTN: RICK LEDENBACH OR PROXY MGR | 135 SOUTH LASALLE STREET SUITE 1811 | | CHICAGO | IL | 60603 | US |
| BARCLAY CAPITAL (0229/7256/7254/8455/7263) | ATTN: Anthony Sciaraffo or Proxy MGR | 745 SEVENTH AVENUE | 16TH FLOOR | NEW YORK | NY | 10019 | US |
| BB & T SECURITIES(0702) | ATTN: Proxy Dept | 8006 Discovery Drive | Suite 200 | Richmond | VA | 23229 | US |
| BBS SECURITIES INC./CDS** (5085) | DEBORAH CARLYLE | 4100 YONGE ST | SUITE 506 | TORONTO | ON | M2P 2B5 | CA |
| BMO CAPITAL MARKETS CORP. (0045) | ATTN: JOHN FINERTY OR PROXY MGR | 3 TIMES SQUARE | | NEW YORK | NY | 10036 | US |
| BMO NESBITT BURNS INC. /CDS (5043) | ATTN: LOUISE TORANGEAU | 1 FIRST CANADIAN PLACE | 38th FLOOR, P.O. BOX 150 | TORONTO | ON | M5X 1H3 | CA |
| BMO NESBITT BURNS INC. /CDS (5043) | ATTN: PHUTHORN PENIKETT/DINA FERNANDES | BMO FINANCIAL GROUP | 250 YONGE ST., 8TH FLOOR | TORONTO | ON | M5B 2M8 | CA |
| BNP PARIBAS PRIME BROKERAGE, INC. (2154) | ATTN: RONALD PERSAUD | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS PRIME BROKERAGE, INC. (2154) | ATTN: GENE BANFI OR PROXY MGR | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS, NEW YORK BRANCH (1569/2787) | BNP PARIBAS, NEW YORK BRANCH (1569/2787) | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS, NEW YORK BRANCH (1569/2787) | ATTN: DEAN GALLI OR PROXY MGR | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS, NEW YORK BRANCH (2147) | ATTN: GENE BANFI OR AARON COLIE PROXY MGR | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS, NEW YORK BRANCH (2147) | ATTN: RONALD PERSAUD | 525 WASHINGTON BLVD | 9TH FLOOR | JERSEY CITY | NJ | 7310 | US |
| BNP PARIBAS, PITTSBURGH BRANCH (2787) | ATTN: ANDREW TAYLOR OR PROXY MGR | 525 WILLIAM PENN PLACE | | PITTSBURGH | PA | 15219 | US |
| BNY CONVERGEX EXECUTION (0100) | ATTN: PROXY MGR | 500 GRANT STREET | ROOM 151-2700 | PITTSBURGH | PA | 15258 | US |
| BNY MELLON/ NEW ENGLAND (0954) | ATTN: EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151-2700 | PITTSBURGH | PA | 15258 | US |
| BNY/CACLUX (8320) | ATTN: EVENT CREATION DEPARTMENT | 500 GRANT STREET ROOM 151-2700 | | PITTSBURGH | PA | 15258 | US |
| BNY/CACLUX (8320) | ATTN: MITCHEL SOBEL OR PROXY MGR | 401 SOUTH SALINA STREET 2ND FLOOR | | SYRACUSE | NY | 13202 | US |
| BNY/CHARLE (2336) | ATTN: EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151-2700 | PITTSBURGH | PA | 15258 | US |
| BNY/NA (8420) | ATTN: EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151-2700 | PITTSBURGH | PA | 15258 | US |
| BNY/WEALTH (8275) | ATTN: KEVIN KELLY | ONE WALL STREET | | NEW YORK | NY | 10005 | US |
| BNY/WEALTH (8275) | ATTN: BETH COYLE OR PROXY MGR | TWO BNY MELLON CENTER | 525 WILLIAM PENN PL, STE 1215 | PITTSBURGH | PA | 15259 | US |
| BNYMELLON/RE CACEIS BANK LUXEMBOURG (8320) | ATTN: MITCHEL SOBEL OR PROXY MGR | 401 SOUTH SALINA STREET 2ND FLOOR | | SYRACUSE | NY | 13202 | US |
| BRANCH BANKING AND TRUST COMPANY (5385) | ATTN: TANJI BASS OR PROXY MGR | 223 W. NASH STREET 3RD FLOOR | | WILSON | NC | 27893 | US |
| BROWN BROTHERS HARRIMAN & CO. (0010) | ATTN: JERRY TRAVERS | 525 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| BROWN BROTHERS HARRIMAN & CO. (0010) | ATTN: PAUL NONNON OR PROXY MGR | 525 WASHINGTON BLVD. NEW PORT TOWERS | | JERSEY CITY | NJ | 07310-1607 | US |
| BROWN BROTHERS HARRIMAN & CO. (0010) | ATTN: ANTHONY BONACETO | 50 POST OFFICE SQUARE | | BOSTON | MA | 02110 | US |
| BROWN BROTHERS HARRIMAN & CO. (0010) | ATTN: PAUL NONNON OR REORG MGR. | HARBORSIDE FINANCIAL CENTER | 185 HUDSON STREET | JERSEY CITY | NJ | 07311-0000 | US |
| CANACCORD FINANCIAL LTD.** (5046) | ATTN: AARON CAUGHLAN OR PROXY MGR | P.O. BOX 10337, PACIFIC CENTER 2200-609 GRANVILLE STREET | | VANCOUVER | BC | V7Y 1H2 | CA |
| CANACCORD FINANCIAL LTD.** (5046) | ATTN: ALMA GOCA OR PROXY MGR | P.O. BOX 10337, PACIFIC CENTER 2200-609 GRANVILLE STREET | | VANCOUVER | BC | V7Y 1H2 | CA |
| CDS CLEARING AND DEPOSITORY (5099) | ATTN: LORETTA VERELLI OR PROXY MGR | 600 BOUL.DE MAISONNEUVE OUEST BUREAU 210 | | MONTREAL | QC | H3A 3J2 | CA |

# Exhibit N

Equity Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| CGM/SALOMON BROTHER (0274) | ATTN: PATRICIA HALLER OR PROXY MGR | 111 WALL ST. 4TH FLOOR | | NEW YORK | NY | 10005 | US |
| CHARLES SCHWAB & CO., INC. (0164) | ATTN: CHRISTINA YOUNG | 2423 E LINCOLN DRIVE | | PHOENIX | AZ | 85016-1215 | US |
| CHARLES SCHWAB & CO., INC. (0164) | ATTN: JANA TONGSON OR PROXY MGR | 2423 EAST LINCOLN DRIVE PHXPEAK-01-1B571A | | PHOENIX | AZ | 85016 | US |
| CIBC WORLD MARKETS INC./CDS (5030) | ATTN: NICASTRO JERRY OR PROXY MGR | 161 BAY ST 10TH FL | | TORONTO | ON | M5J 258 | CA |
| CIBC WORLD MARKETS INC./CDS (5030) | ATTN: REED JON | CANADIAN IMPERIAL BANK OF COMMERCE | 22 FRONT ST. W. 7TH FL (ATTN. CORP. ACT) | TORONTO | ON | M5J 2W5 | CA |
| CIBC WORLD MARKETS INC./CDS (5030) | ATTN: HENRY H. LIANG | 22 FRONT ST. W | 7TH FLOOR | TORONTO | ON | M5J 2W5 | CA |
| CIT SECLLC (8430) | ATTN: KEVIN NEWSTEAD | 131 SOUTH DEARBORN STREET | 35TH FLOOR | CHICAGO | IL | 60603 | US |
| CITADEL SECURITIES LLC (0395) | ATTN: MARCIA BANKS OR PROXY MGR | 131 SOUTH DEARBORN STREET | | CHICAGO | IL | 60603 | US |
| CITIBANK, N.A. (0908) | ATTN: PAUL WATTERS | 3801 CITIBANK CENTER | B/3RD FLOOR/ZONE 12 | TAMPA | FL | 33610 | US |
| CITIBANK, N.A. (0908) | ATTN: CAROLYN TREBUS OR PROXY MGR | 3800 CITIBANK CENTER B3-12 | | TAMPA | FL | 33610 | US |
| CITIGROUP GLOBAL MARKETS INC. (0418/0505) | ATTN: SHERRYL NASH-COOK | 388 GREENWICH STREET 11TH FLOOR | | NEW YORK | NY | 10013 | US |
| CITIGROUP GLOBAL MARKETS INC. (0418/0505) | ATTN: ROSE MARIE YODICE OR PROXY MGR | 388 GREENWHICH STREET 11TH FLOOR | | NEW YORK | NY | 10013 | US |
| COMERICA BANK (2108) | ATTN: LATASHA ELLIS OR PROXY MGR | 411 WEST LAFAYETTE | | DETROIT | MI | 48226 | US |
| COMERICA BANK (2108) | ATTN: LEWIS WISOTSKY OR PROXY MGR | 411 WEST LAFAYETTE MAIL CODE 3530 | | DETROIT | MI | 48226 | US |
| COMMERCE BANK, N.A. (2170) | ATTN: CINDY LAWRENCE OR PROXY MGR | 922 WALNUT STREET | | KANSAS CITY | MO | 64106 | US |
| COMMERZ MARKETS LLC (0126) | ATTN: ROBERT ORTEGA OR PROXY MGR | 225 LIBERTY STREET | | NEW YORK | NY | 10281 | US |
| COR LLC (0052) | ATTN: CORPORATE ACTION | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC (0052) | ATTN: LUKE HOLLAND | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC (0052) | ATTN: ANH MECHALS | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC (0052) | ISSUER SERVICES | 1299 FARNAM STREET | SUITE 800 | OMAHA | NC | 68102 | US |
| COR LLC (0052) | ATTN: AMBRA MOORE OR PROXY MGR | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| CREDENTIAL SECURITIES INC/ CDS (5083) | ATTN: PROXY DEPARTMENT | 700-1111 WEST GEORGIA ST | | VANCOUVER | BC | V6E4T6 | CA |
| CREDIT SUISSE SECURITIES (0355) | ATTN: ANTHONY MILO | 7033 LOUIS STEVENS DRIVE | GLOBAL PROXY SERVICES | RESEARCH TRIANGLE PARK | NC | 27560 | US |
| CREDIT SUISSE SECURITIES (0355) | ATTN: ASHWINEE SAWH OR PROXY MGR | 11 MADISON AVENUE | 23RD FLOOR | NEW YORK | NY | 10010 | US |
| CREST INTL NOMINEES LIMITED (2012) | ATTN: JASON MURKIN OR PROXY MGR | 33 CANNON STREET | | LONDON | UK | EC4M 5SB | UK |
| CREST INTL NOMINEES LIMITED (2012) | ATTN: NATHAN ASHWORTH OR PROXY MGR | 33 CANNON STREET | | LONDON | UK | UK EC4M 5SB | UK |
| D.A. DAVIDSON & CO. (0361) | ATTN: RITA LINSKEY OR PROXY MGR | 8 THIRD STREET NORTH P.O. BOX 5015 | | GREAT FALLS | MT | 59403 | US |
| DAVENPORT & COMPANY LLC (0715) | ATTN: KIM NIEDING OR PROXY MGR | 901 EAST CARY ST 11TH FLOOR | | RICHMOND | VA | 23219 | US |
| Desjardins Securities inc (5028) | A/S Reorganisation Dept | 1 Complexe Desjardins | C.P. 1200 | Montreal | QC | H5B 1C3 | CA |
| DESJARDINS SECURITIES INC.** (5028) | ATTN: VERONIQUE LEMIEUX | 1060 UNIVERSITY STREET | SUITE 101 | MONTREAL | QC | H5B 5L7 | CA |
| DESJARDINS SECURITIES INC.** (5028) | ATTN: KARLA DIAZ FOR MATERIALS | VALEURS MOBILIARES DESJARDINS | 2, COMPLEXE DESJARDINS TOUR EST | NIVEAU 62, E1-22 | QC | H5B 1J2 | CA |
| DESJARDINS SECURITIES INC.** (5028) | ATTN: REORG DEPT-MTL-1060-1ER-E | 1060 ROBERT-BOURASSA BLVD, SUITE 101 | | MONTREAL | QC | H3B 5L7 | CA |
| DESJARDINS SECURITIES INC.** (5028) | 1253 MCGILL COLLEGE AVEENUE | 10TH FLOOR | | MONTREAL | QC | H3B2Y5 | CA |
| E- TRANSACTION CLEARING (0873) | ATTN: KEVIN MURPHY | 660 S. FIGUEROA STREET | SUITE 1450 | LOS ANGELES | CA | 90017 | US |
| E- TRANSACTION CLEARING (0873) | ATTN: JANE BUHAIN OR PROXY MGR | 660 S. FIGUEROA STREET SUITE 1450 | | LOS ANGELES | CA | 90017 | US |
| E*TRADE CLEARING LLC (0385) | ATTN: VICTOR LAU OR PROXY MGR | 34 EXCHANGE PLACE | PLAZA II | JERSEY CITY | NJ | 07311 | US |
| EDWARD D. JONES & CO. (0057) | ATTN: ELIZABETH ROLWES | 201 PROGRESS PARKWAY | | MARYLAND HEIGHTS | MO | 63043-3042 | US |
| EDWARD D. JONES & CO. (0057) | ATTN: A.J. MAYTAS OR PROXY MGR | CORPORATE ACTIONS & DISTRIBUTION 12555 MANCHESTER ROAD | | ST. LOUIS | MO | 63141 | US |
| EDWARD JONES/CDS (5012) | ATTN: NICK HUMMELL OR PROXY MGR | 700 MARYVILLE CENTRE DRIVE | | ST. LOUIS | MO | 63141 | US |
| EDWARD JONES/CDS** (5012) | ATTN: KENNIQUE MEALS OR PROXY MGR | 700 MARYVILLE CENTRE DRIVE | | ST LOUIS | MO | 63141 | US |
| EDWARD JONES/CDS** (5012) | ATTN: DIANE YOUNG | 1255 MANCHESTER ROAD | | ST. LOUIS | MO | 63141 | US |
| EDWARD JONES/CDS** (5012) | ATTN: KENNIQUE MEALS | CORP ACTION AND DISTRIBUTION | 12555 MANCHESTER ROAD | ST. LOUIS | MO | 63131 | US |
| FIDELITY CLEARING CANADA (5040) | ATTN: STEVE ADAMS OR PROXY MGR | 401 BAY STREET SUITE 2910 | | TORONTO | ON | M5H 2Y4 | CA |
| FIDELITY CLEARING CANADA (5040) | ATTN: CAROL ANDERSON | 483 BAY STREET, SOUTH TOWER | SUITE 200 | TORONTO | ON | M5G 2N7 | CA |
| FIDELITY CLEARING CANADA (5040) | ATTN: LINDA SARGEANT | BELL TRINITY SQUARE, SOUTH TOWER | 483 BAY STREET SUITE 200 | TORONTO | ON | M5G 2N7 | CA |

# Exhibit N

Equity Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| FIDUCIARY SSB (0987) | ATTN: PROXY MGR | 225 FRANKLIN STREET MAO-3 | | BOSTON | MA | 02110 | US |
| FIDUCIARY SSB (0987) | ATTN: STEPHEN M. MORAN | 225 FRANKLIN STREET MAO-3 | | BOSTON | MA | 02110 | US |
| FIFTH THIRD BANK, THE (2116) | ATTN: LANCE WELLS | 5001 KINGSLEY DRIVE | MAIL DROP 1MOB2D | CINCINNATI | OH | 45227 | US |
| FIFTH THIRD BANK, THE (2116) | ATTN: CARRIE POTTER OR PROXY MGR | 5001 KINGSLEY DRIVE MAIL DROP 1M0B2D | | CINCINNATI | OH | 45227 | US |
| FIRST CLEARING, LLC (0141) | ATTN: PROXY DEPARTMENT | 2801 MARKET STREET | H0006-08N | ST. LOUIS | MO | 63103 | US |
| FIRST CLEARING, LLC (0141) | ATTN: FINESSA ROSSON OR PROXY MGR | ONE NORTH JEFFERSON STREET 9-F | | ST. LOUIS | MO | 63103 | US |
| FOLIO (FN) INVESTMENTS, INC. (0728) | ATTN: ASHLEY THEOBALD OR PROXY MGR | 8180 GREENSBORO DRIVE 8TH FLOOR | | MCLEAN | VA | 22102 | US |
| FORTIS CLEARING AMERICAS LLC (0695/0396) | ATTN: KIM VILARA | 175 W. JACKSON BLVD SUITE 400 | | CHICAGO | IL | 60605 | US |
| GLENMEDE TRUST CO (2139) | ATTN: DARLENE WARREN OR PROXY MGR | ONE LIBERTY PLACE SUITE 1200 | 1650 MARKET STREET | PHILADELPHIA | PA | 19103 | US |
| GLENMEDE TRUST CO (2139) | ATTN: LINDA BELLICINI OR PROXY MGR | ONE LIBERTY PLACE, SUITE 1200 1650 MARKET STREET | | PHILADELPHIA | PA | 19103 | US |
| GMP SECURITIES L.P.** (5016) | ATTN: TERRY YOUNG OR PROXY MGR | 145 KING STREET WEST SUITE 1100 | | TORONTO | ON | M5H 1J8 | CA |
| GMP SECURITIES L.P.** (5016) | ATTN: MARINO MEGGETTO | 145 KING STREET WEST | SUITE 300 | TORONTO | ON | M5H 1J8 | CA |
| GOLDMAN SACHS INTERNATIONAL (5208) | ATTN: DEVIN GEIMAN OR PROXY MGR | 30 HUDSON STREET PROXY DEPARTMENT | | JERSEY CITY | NJ | 07302 | US |
| GOLDMAN, SACHS & CO. (0005) | ATTN: DEVIN GEIMAN OR PROXY MGR | 30 HUDSON STREET PROXY DEPARTMENT | | JERSEY CITY | NJ | 07302 | US |
| GOLDMAN, SACHS & CO. (0005) | ATTN: VANESSA CAMARDO | 30 HUDSON ST. | | JERSEY CITY | NJ | 07302-0000 | US |
| HSBC/CLEAR (8396) | ATTN: BARBARA SKELLY | 545 WASHINGTON BLVD. | | JERSEY CITY | NJ | 07310 | US |
| HUNTINGTON BK/SCHOOL (2898) | ATTN: BEVERLY REYNOLDS OR PROXY MGR | 7 EASTON OVAL EA4E62 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK (2305) | ATTN: ALLAN BURKHART OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK (2305) | ATTN: BEVERLY REYNOLDS OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK (2305) | ATTN: RITA BOLTON OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK (2305) | ATTN: TAMMY MOWREY OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK (2305) | ATTN: TINA MOX OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| INDUSTRIAL & COMMERCIAL BANK OF CHINA FINANCIAL SERVICES, LLC/EQUITY CLEARANCE (0824) | ATTN: PROXY MGR | PARAMOUNT PLAZA, 1633 BROADWAY | | NEW YORK | NY | 10019 | US |
| ING FINANCIAL MARKETS LLC (0270) | ATTN: STEPHEN WIZNIUK OR PROXY MGR | 1325 AVENUE OF THE AMERICAS 6TH FLOOR | | NEW YORK | NY | 10019 | US |
| INTERACTIVE BROKERS (0017/0534) | ATTN: KARIN MCCARTHY | 8 GREENWICH OFFICE PARK, 2ND FLOOR | | GREENWICH | CT | 06831 | US |
| INTERACTIVE BROKERS (0017/0534) | ATTN: KARIN MCCARTHY | 2 Pickwick Plaza, 2nd Floor | | GREENWICH | CT | 06830-0000 | US |
| INTL FCSTONE, INC.f.k.a STERNE, AGEE & LEACH, INC. (0750) | ATTN: KEN SIMPSON OR PROXY MGR | 2 PERIMETER PARK SOUTH, STE 100 W | | BIRMINGHAM | AL | 35243 | US |
| ITG INC/SECS. LENDING (7539) | ATTN: PROXY MGR | 1 LIBERTY PLAZA 5ND FLOOR | | New York | NY | 10006 | US |
| ITG INC/SECS. LENDING (7539) | ATTN: PROXY MGR | 165 BROADWAY 5ST FLOOR | | New York | NY | 10006 | US |
| J.P. MORGAN CLEARING CORP. (0352) | ATTN: BRODERICK WALKER OR PROXY MGR | DEPT. C, CASHIERS DEPARTMENT ONE METROTECH | CENTER NORTH REORG DEPT 4TH FLOOR | BROOKLYN | NY | 11201-3862 | US |
| JANNEY MONTGOMERY SCOTT INC. (0374) | ATTN: BOB MARTIN OR PROXY MGR | 1801 MARKET STREET 9TH FLOOR | | PHILADELPHIA | PA | 19103-1675 | US |
| JEFFERIES & COMPANY, INC. (0019) | ATTN: ROBERT MARANZANO | 34 EXCHANGE PL | | JERSEY CITY | NJ | 07311 | US |
| JEFFERIES & COMPANY, INC. (0019) | ATTN: RAY DESOUZA OR PROXY MGR | HARBORSIDE FINANCIAL CENTER 705 PLAZA 3 | | JERSEY CITY | NJ | 07311 | US |
| JMS LLC (0374) | ATTN: MARK F. GRESS | C/O MEDIANT COMMUNICATIONS INC. | 200 REGENCY FOREST DRIVE | CARY | NC | 27518 | US |
| JPMC / EURO (1970) | ATTN: Proxy Dept | 4 METROTECH CENTER 3RD FLOOR | | BROOKLYN | NY | 11245 | US |
| JPMORGAN CHASE BANK, N.A. (0902) | ATTN: PROXY MGR | PARADIGM, B WING , FLOOR 6 MINDSPACE, MALAD (W) | | MUMBAI | INDIA | 400 064 I00000 | IN |
| JPMORGAN CHASE BANK, NA (0902) | ATTN: SACHIN GOYAL | 500 STANTON CHRISTIANA ROAD, OPS 4 | FLOOR 02 | NEWARK | DE | 19713-2107 | US |
| JPMORGAN CHASE BANK, NA (0902) | ATTN: JACOB BACK OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK, NA (0902) | ATTN: ARMANDO MORALES OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK, NA (0902) | ATTN: MARVIN KINES OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK/IA (2357) | ATTN: PROXY MGR | PARADIGM, B WING, FLOOR 6 MINDSPACE, MALAD (W) | | MUMBAI | INDIA | 400 064 I00000 | IN |
| JPMORGAN CHASE BANK/IA (2357) | ATTN: SUSHIL PATEL OR PROXY MGR | 14201 DALLAS PARKWAY SUITE 121 | | DALLAS | TX | 75254 | US |

# Exhibit N

Equity Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| JPMORGAN CHASE/PUBLIC EMPLOYEES (2975) | ATTN: PROXY MGR | PARADIGM, B WING, FLOOR 6 MINDSPACE, MALAD | | MUMBAI | | 400 064 I00000 | IN |
| JPMORGAN CHASE/TREASURER OF OHIO (2609) | ATTN: WENDY WUJCIKOWSKI OR PROXY MGR | 14201 DALLAS PARKWAY | | DALLAS | TX | 75254 | US |
| JPMORGAN/TREASURER OHIO (2609) | ATTN: PROXY MGR | PARADIGM, B WING, FLOOR 6 MINDSPASE, MALAD (W) | | MUMBAI | INDIA | 400 064 I00000 | IN |
| JPMS/JPMC (0352) | ATTN: JOHN FAY | 500 STANTON CHRISTIANA ROAD, OPS 4 | FLOOR: 03 | NEWARK | DE | 19713-2107 | US |
| KEYBANK NATIONAL ASSOCIATION (2205) | ATTN: ADAM BORYENACE OR PROXY MGR | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| KEYBANK NATIONAL ASSOCIATION (2205) | ATTN: WILLIAM WEBBER | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| KEYBANK NATIONAL ASSOCIATION (2205) | ATTN: SCOTT MACDONALD | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| KEYBANK NATIONAL ASSOCIATION (2205) | ATTN: KAREN BEDNARSKI OR PROXY MGR | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| LAURENTIAN BANK OF CANADA** (5001) | ATTN: SARAH QUESNEL OR PROXY MGR | 1981 MCGILL COLLEGE AVE SUITE 100 | | MONTREAL | QC | H3A 3K3 | CA |
| LAURENTIAN BANK OF CANADA/CDS (5001) | ATTN: ESTELLE COLLE OR PROXY MGR | 1981 MCGILL COLLEGE AVE SUITE 100 | | MONTREAL | QC | H3A 3K3 | CA |
| LAURENTIAN BANK OF CANADA/CDS (5001) | ATTN: FRANCESCA MAIORINO | 1360 Rene-levesque Bldv. West | Suite 620 | Montreal | QC | H3G 0E8 | CA |
| LAURENTIAN BANK OF CANADA/CDS (5001) | ATTN: FRANCESCA MAIORINO | 1981 MCGILL COLLEGE AVE | SUITE 100 | MONTREAL | QC | H3A 3K3 | CA |
| LEK SECURITIES CORPORATION (0512) | ATTN: DANIEL HANUKA OR PROXY MGR | 140 BROADWAY, 29TH FLOOR | | NEW YORK | NY | 10005 | US |
| LEK SECURITIES CORPORATION (0512) | ATTN: DANIEL HANUKA OR PROXY MGR | 1 LIBERTY PLAZA 52ND FLOOR | | NEW YORK | NY | 10006 | US |
| LINCOLN TRUST COMPANY (5998) | ATTN: BRETT DAVIS OR PROXY MGR | 717 17TH STREET SUITE 21 | | DENVER | CO | 80202 | US |
| LPL FINANCIAL CORPORATION (0075) | Attn: Corporate Actions Dept. | 1055 LPL Way | | FORT MILL | SC | 29715 | US |
| LPL FINANCIAL CORPORATION (0075) | ATTN: KRISTIN KENNEDY | 9785 TOWNE CENTER DRIVE | | SAN DIEGO | CA | 92121-1968 | US |
| LPL FINANCIAL CORPORATION (0075) | ATTN: MARTHA LANG | 4828 PARKWAY PLAZA BLVD | | CHARLOTTE | NC | 28217 | US |
| LPL FINANCIAL CORPORATION (0075) | ATTN: CORPORATE ACTIONS | 4707 EXECUTIVE DRIVE | | SAN DIEGO | CA | 92121 | US |
| M&I MARSHALL & ILSLEY BANK (0992) | ATTN: PROXY MGR | 111 W MONROE ST | | CHICAGO | IL | 60603 | US |
| M&I MARSHALL & ILSLEY BANK (0992) | ISSUER SERVICES | C/O BROADRIDGE | 51 MERCEDES WAY | EDGEWOOD | NY | 11717 | US |
| M&I MARSHALL & ILSLEY BANK (0992) | ATTN: CYNTHIA HAMMERELL OR PROXY MGR | 1000 N. WATER STREET -TR 14 | | MILWAUKEE | WI | 53202 | US |
| MANUFACTURERS AND TRADERS (0990) | ATTN: TONY LAGAMBINA | ONE M&T PLAZA 8TH FLOOR | | BUFFALO | NY | 14203 | US |
| MANUFACTURERS AND TRADERS (0990) | ATTN: DON SCHMIDT OR PROXY MGR | ONE M&T PLAZA 8TH FLOOR | | BUFFALO | NY | 14240 | US |
| MANULIFE SECURITIES /CDS (5047) | ATTN: PROXY MGR | 85 RICHMOND STREET WEST | | TORONTO | ON | M5H 2C9 | CA |
| MANULIFE SECURITIES /CDS (5047) | ATTN: PROXY MGR | 100 ADELAIDE St WEST | 3RD FLOOR | TORONTO | ON | M5H 1S3 | CA |
| MANULIFE SECURITIES INC /CDS (5047) | ATTN: BARBARA MORGAN | 1375 KERNS ROAD | PO BOX 5083 | BURLINGTON | ON | L7R OA8 | CA |
| MARSCO INVESTMENT CORPORATION (0287) | ATTN: MARK KADISON | 101 EISENHOWER PARKWAY | | ROSELAND | NJ | 07068 | US |
| MARSCO INVESTMENT CORPORATION (0287) | ATTN: KAREN JACOBSEN OR PROXY MGR | 101 EISENHOWER PARKWAY | | ROSELAND | NJ | 07068 | US |
| MERRILL LYNCH (5198) | ATTN: EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| MERRILL LYNCH, PIERCE, FENNER (0161/8862) | ATTN: EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| MORGAN STANLEY & CO LLC. (0050) | ATTN: KENNETH EWING OR PROXY MGR | 1300 THAMES STREET WHARF 7TH FLOOR | | BALTIMORE | MD | 21231 | US |
| MORGAN STANLEY & CO LLC. (0050) | ATTN: RAQUEL DEL MONTE OR PROXY MGR | ONE NEW YORK PLAZA 7TH FLOOR | | NEW YORK | NY | 10004 | US |
| MORGAN STANLEY & CO LLC. (0050) | ATTN: MICHELLE FORD | 901 SOUTH BOND ST, 6TH FL | | BALTIMORE | MD | 21231 | US |
| MORGAN STANLEY & CO LLC. (0050) | ATTN: JONATHAN GOLDMAN OR PROXY MGR | 1300 THAMES STREET WHARF 7TH FLOOR | | BALTIMORE | MD | 21231 | US |
| MORGAN STANLEY SMITH BARNEY LLC (0015) | ATTN: JOHN BARRY OR PROXY MGR | 1300 THAMES STREET | 6TH FLOOR | BALTIMORE | MD | 21231 | US |
| MORGAN STANLEY SMITH BARNEY LLC (0015) | ATTN: PROXY/Reorg MGR | 1 New York Plaza | 41st Floor | New York | NY | 10004 | US |
| NATIONAL FINANCIAL SERVICES LLC (0226) | ATTN: PROXY MANAGER | 499 WASHINGTON BLVD. 5TH FL | | JERSEY CITY | NJ | 07310 | US |
| NATIONAL FINANCIAL SERVICES LLC (0226) | ATTN: JOANNE PADARATHSINGH | 499 WASHINGTON BLVD. | | JERSEY CITY | NJ | 07310 | US |
| NATIONAL FINANCIAL SERVICES LLC (0226) | ATTN: SEAN COLE OR PROXY MGR | 499 WASHINGTON BLVD. | | JERSEY CITY | NJ | 07310 | US |
| NBCN INC. /CDS (5008) | ATTN: GESTION DE l'INFORMATION – TR: 5609-1 | 1010 RUE DE LA GAUCHETIERE OUEST. 17e étage | | MONTREAL | QC | H3B 5J2 | CA |
| NOMURA SECURITIES (0180/7507/7584) | ISSUER SERVICES | 309 WEST 49TH STREET | 10TH FLOOR | NEW YORK | NY | 10019-7316 | US |
| NOMURA SECURITIES (0180/7507/7584) | ATTN: ADRIAN ROCCO | 309 WEST 49TH STREET | 10TH FLOOR | NEW YORK | NY | 10019-7316 | US |
| NOMURA SECURITIES (0180/7507/7584) | ATTN: HERNAN SANCHEZ OR PROXY MGR | 309 WEST 49TH STREET | WORLDWIDE PLAZA 10TH FLOOR | NEW YORK | NY | 10019 | US |
| OPPENHEIMER & CO. INC. (0571/0303) | ATTN: OSCAR NAZARIO OR PROXY MGR | 85 BROAD STREET, 4TH FL | | NEW YORK | NY | 10004 | US |
| OPPENHEIMER & CO. INC. (0571/0303) | ATTN: OSCAR MAZARIO OR PROXY MGR | 85 BROAD STREET, 4TH FL | | NEW YORK | NY | 10004 | US |
| PENSCO TRUST COMPANY (5998) | ATTN: HOLLY NICKERSON | 560 MISSION STREET | SUITE 1300 | SAN FRANCISCO | CA | 94105 | US |
| PENSCO TRUST COMPANY (5998) | ATTN: PROXY MGR | 1560 BROADWAY, SUITE 400 | | DENVER | CO | 80202-3308 | US |
| PERSHING LLC (0443) | ATTN: JOSEPH LAVARA | ONE PERSHING PLAZA | | JERSEY CITY | NJ | 07399 | US |

Exhibit N

Equity Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| PERSHING LLC (0443) | ATTN: AL HERNANDEZ OR PROXY MGR | SECURITIES CORPORATION 1 PERSHING PLAZA 7TH FLOOR -REORG. | | JERSEY CITY | NJ | 07399 | US |
| PHILLIP CAPITAL INC. (8460) | ATTN: PROXY MGR | 141 W Jackson Blvd Suite 1531A | | CHICAGO | IL | 60604 | US |
| PHILLIP CAPITAL INC. (8460) | P.O. Box 2594 | | | CHICAGO | IL | 60690 | US |
| PI FINANCIAL CORP./CDS** (5075) | ATTN: ROB MCNEIL OR PROXY MGR | 666 BURRARD STREET SUITE 1900 | | VANCOUVER | BC | V6C 2G3 | CA |
| PI FINANCIAL CORP./CDS** (5075) | ATTN: LAURA BLISS | 666 BURRARD ST. | SUITE 1900 | VANCOUVER | BC | V6C 3N1 | CA |
| PNC BANK, NATIONAL ASSOCIATION (2616) | ATTN: JUANITA NICHOLS | 8800 TINICUM BLVD | MAILSTOP F6-F266-02-2 | PHILADELPHIA | PA | 19153 | US |
| PNC BANK, NATIONAL ASSOCIATION (2616) | ATTN: EILEEN BLAKE OR PROXY MGR | 8800 TINICUM BLVDT MS F6-F266-02-2 | | PHILADELPHIA | PA | 19153 | US |
| PRIMEVEST (0701) | ATTN: ANGELA HANDELAND OR PROXY MGR | 400 1ST STREET SOUTH SUITE 300 ST. | | CLOUD | MN | 56301 | US |
| PRIMEVEST (0701) | ATTN: MARK SCHOUVILLER OR PROXY MGR | 400 1ST STREET SOUTH SUITE 300 ST. | | CLOUD | MN | 56301 | US |
| QTRADE SECURITIES INC. (5084) | ATTN: MARY KORAC OR PROXY MGR | 505 BURRARD STREET, SUITE 1920 | | VANCOUVER | BC | V7X 1M6 | CA |
| QUESTRADE INC. (5084) | ATTN: MAURIZIO ARANI OR PROXY MGR | 5650 YONGE STREET, SUITE 1700 | | TORONTO | ON | M2M 4G3 | CA |
| RAYMOND JAMES & ASSOCIATES, INC. (0725) | ATTN: ROBERTA GREEN | 880 CARILION PARKWAY | | ST. PETERSBURG | FL | 33716 | US |
| RAYMOND JAMES & ASSOCIATES, INC. (0725) | ATTN: ROBERTA GREEN OR PROXY MGR | 880 CARILION PARKWAY TOWER 2, 4TH FLOOR | | ST. PETERSBURG | FL | 33716 | US |
| RAYMOND JAMES ASSOCIATES, INC. (5179) | ATTN: REORG MGR | 880 Carillon Parkway | | ST. PETERSBURG | FL | 33716 | US |
| RAYMOND JAMES LTD./CDS** (5076) | ATTN: GINA HAYDEN | 925 GEORGIA STREET | SUITE 2200 | VANCOUVER | BC | V6C 3L2 | CA |
| RBC CAPITAL MARKETS CORPORATION (0235) | ATTN: STEVE SCHAFER | 60 S 6TH ST - P09 | | MINNEAPOLIS | MN | 55402-4400 | US |
| RBC CAPITAL MARKETS CORPORATION (0235) | ATTN: STEVE SCHAFER OR PROXY MGR | 510 MARQUETTE AVE SOUTH | | MINNEAPOLIS | MN | 55402 | US |
| RBC DOMINION /CDS (5002) | ATTN: SHAREHOLDER SERVICES | 180 WELLINGTON ST W, 9TH FLOOR | | TORONTO | ON | M5J 0C2 | CA |
| RBC DOMINION /CDS (5002) | ATTN: KAREN OLIVERES | 200 BAY STREET, 6TH FLOOR | ROYAL BANK PLAZA NORTH TOWER | TORONTO | ON | M5J 2W7 | CA |
| RBC INVESTOR SERVICES (0901) | ATTN: EMMA SATTAR OR PROXY MGR | 155 WELLINGTON ST W, 3RD FLOOR | | TORONTO | ON | M5V 3L3 | CA |
| RELIANCE TRUST COMPANY (5962) | ATTN: CORPORATE ACTIONS GROUP | 1100 ABERNATHY RD SUITE 400 | | ATLANTA | GA | 30328-5634 | US |
| RELIANCE TRUST COMPANY/SWMS1 (2042) | ATTN: CORPORATE ACTIONS GROUP | 1100 ABERNATHY RD SUITE 400 | | ATLANTA | GA | 30328-5634 | US |
| RELIANCE TRUST COMPANY/SWMS2 (2085) | ATTN: TONIE MONTGOMERY OR CORPORATE ACTIONS GROUP | 1100 ABERNATHY RD SUITE 400 | | ATLANTA | GA | 30328-5634 | US |
| RIDGE CLEARING (0158) | ATTN: MATTHEW FREIFELD OR PROXY MGR | 1981 MARCUS AVENUE 1ST FLOOR | | LAKE SUCCESS | NY | 11042 | US |
| SANFORD C. BERNSTEIN & CO., LLC (0013) | ATTN: ANITA BACTAWAR | 1 NORTH LEXINGTION AVE | C/O RIDGE | WHITE PLAINS | NY | 10601 | US |
| SANFORD C. BERNSTEIN & CO., LLC (0013) | ATTN: RYAN CONNORS OR PROXY MGR | ONE NORTH LEXINGTON AVENUE | | WHITE PLAINS | NY | 10601-1785 | US |
| SCOTIA CAPITAL INC. (0096) | ATTN: JOE LAPORTA OR PROXY MGR | 250 ZESEY STREET | | NEW YORK | NY | 10281 | US |
| SCOTIA CAPITAL INC. /CDS (5011) | ATTN: CAROL ANDERSON | 40 KING STREET WEST | | TORONTO | ON | M5H 1H1 | CA |
| SCOTIA CAPITAL INC. /CDS (5011) | ATTN: NORMITA RAMIREZ CORP ACTIONS DEPT | 40 KING STREET WEST | | TORONTO | ON | M5H 1H1 | CA |
| SEI PRIVATE TRUST COMPANY (2039/2663) | ATTN: ERIC GREENE OR PROXY MGR | ONE FREEDOM VALLEY DRIVE | | OAKS | PA | 19456 | US |
| SEI PRIVATE TRUST COMPANY (2039/2663) | ATTN: MELVIN ALLISON OR PROXY MGR | ONE FREEDOM VALLEY DRIVE | | OAKS | PA | 19456 | US |
| SG AMERICAS SECURITIES, LLC (0286) | ATTN: CHARLES HUGHES OR PROXY MGR | 245 PARK AVE | | NEW YORK | NY | 10167 | US |
| SOUTHWEST SECURITIES, INC. (0279) | ATTN: RHONDA JACKSON | 1201 ELM STREET SUITE 3500 | | DALLAS | TX | 75270 | US |
| SOUTHWEST SECURITIES, INC. (0279) | ATTN: CHRISTINA FINZEN OR PROXY MGR | 1201 ELM STREET SUITE 3700 | | DALLAS | TX | 75270 | US |
| SSB - BLACKROCK TRUST (2767) | ATTN: TRINA ESTREMERA OR PROXY MGR | 1776 HERITAGE DRIVE | | NORTH QUINCY | MA | 02171 | US |
| SSB - TRUST CUSTODY (2319) | ATTN: ED CHANEY OR PROXY MGR | 1200 CROWN COLONY DRIVE | | QUINCY | MA | 02169 | US |
| SSB- IBT/BGI (2767) | ATTN: TOM BRODERICK OR PROXY MGR | 1776 HERITAGE DRIVE NORTH | | QUINCY | MA | 02171 | US |
| SSB&T CO/CLIENT CUSTODY SERVICES (2678) | ATTN: MYRIAM PIERVIL OR PROXY MGR | 1776 HERITAGE DRIVE NORTH | | QUINCY | MA | 02171 | US |
| SSB-TRUST CUSTODY (2319) | ATTN: MANNY PINA OR PROXY MGR | 1200 CROWN COLONY DRIVE | | QUINCY | MA | 02169 | US |
| STATE STREET (0997) | ATTN: CHRISTINE SULLIVAN | 1776 HERITAGE DR | | NORTH QUINCY | MA | 02171 | US |
| STATE STREET (0997) | ATTN: MIKE FEELEY/ROB RAY OR PROXY MGR | CORP ACTIONS - JAB5E 1776 HERITAGE DRIVE NORTH | | QUINCY | MA | 02171 | US |
| STATE STREET (2375) | ATTN: MYRIAM PIERVIL OR PROXY MGR | 1776 HERITAGE DRIVE NORTH | | QUINCY | MA | 02171 | US |
| STATE STREET (2399) | ATTN: KAREN T JOHNDROW | 1776 HERITAGE DRIVE | | NORTH QUINCY | MA | 02171 | US |
| STATE STREET (2399) | ATTN: MARIA SASINOSKI OR PROXY MGR | 525 WILLIAM PENN PLACE ROOM 0300 | | PITTSBURGH | PA | 15259 | US |
| STATE STREET BANK & TRUST/STATE STREET TOTAL ETF (2950) | ATTN: MIKE FEELEY/ROB RAY OR PROXY MGR | CORP ACTIONS - JAB5E 1776 HERITAGE DRIVE NORTH | | QUINCY | MA | 02171 | US |

Exhibit N
Equity Nominees Service List
Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| STATE STREET BANK & TRUST/STATE STREET TOTAL ETF (2950) | ATTN: JOSEPH J CALLAHAN | GLOBAL CORP ACTION DEPT JAB5W P.O. BOX 1631 | | BOSTON | MA | 02105-1631 | US |
| STERNE, AGEE & LEACH, INC. (0750) | ATTN: JAMES MEZRANO | 2 PERIMETER PARK | SUITE 100W | BIRMINGHAM | AL | 35209 | US |
| STERNE, AGEE & LEACH, INC. (0750) | ATTN: WENDY FLETCHER OR PROXY MGR | 813 SHADES CREEK PARKWAY SUITE 100-B | | BIRMINGHAM | AL | 35209 | US |
| STIFEL, NICOLAUS & CO (0793) | ATTN: CHRIS WIEGAND | C/O MEDIANT COMMUNICATIONS INC. | 200 REGENCY FOREST DRIVE | CARY | NC | 27518 | US |
| STIFEL, NICOLAUS & CO (0793) | ATTN: CHRIS WIEGAND OR PROXY MGR | 501 N. BROADWAY 7TH FL STOCK RECORD DEPT | | ST. LOUIS | MO | 63102 | US |
| STOCKCROSS FINANCIAL (0445) | ATTN: DIANE TOBEY | 77 SUMMER STREET | | BOSTON | MA | 02110 | US |
| STOCKCROSS FINANCIAL (0445) | ATTN: ELEANOR PIMENTEL OR PROXY MGR | 77 SUMMER STREET 2ND FLOOR | | BOSTON | MA | 02210 | US |
| TD AMERITRADE CLEARING, INC. (0188) | ATTN: MANDI FOSTER | 1005 N. AMERITRADE PLACE | | BELLEVUE | NE | 68005 | US |
| TD AMERITRADE CLEARING, INC. (0188) | ATTN: GARY SWAIN OR PROXY MGR | 1005 AMERITRADE PLACE | | BELLEVUE | NE | 68005 | US |
| TD WATERHOUSE CANADA INC. /CDS (5036) | ATTN: YOUSEF AHMED | 77 BLOOR STREET WEST | 3RD FLOOR | TORONTO | ON | M4Y 2T1 | CA |
| TD WATERHOUSE CANADA INC. /CDS (5036) | ATTN: PROXY MANAGER | 77 BLOOR STREET WEST 3RD FLOOR | | TORONTO | ON | M5S 1M2 | CA |
| TEXAS TREASURY SAFEKEEPING (2622) | ATTN: JANIE DOMINGUEZ OR PROXY MGR | 208 E. 10TH STREET ROOM 410 | | AUSTIN | TX | 78701 | US |
| THE BANK OF NEW YORK MELLON (0901/2510/2209) | ATTN: JENNIFER MAY | 525 WILLIAM PENN PLACE SUITE 153-0400 | | PITTSBURGH | PA | 15259 | US |
| THE BANK OF NEW YORK MELLON (0901/2510/2209) | ATTN: EVENT CREATION DEPARTMENT | 500 GRANT STREET ROOM 151-2700 | | PITTSBURGH | PA | 15258 | US |
| THE BANK OF NEW YORK MELLON (0901/2510/2209) | ATTN: BRIAN MARNELL OR PROXY MGR | 525 WILLIAM PENN PLACE ROOM 0300 | | PITTSBURGH | PA | 15259 | US |
| THE NORTHERN TRUST COMPANY (2669) | ATTN: ANDREW LUSSEN, CAPITAL STRUCTURES-C1N | 801 S CANAL STREET | | CHICAGO | IL | 60607 | US |
| THE NORTHERN TRUST COMPANY (2669) | ATTN: JOSEPH RAMPP | 2099 GAITHER ROAD | | ROCKVILLE | MD | 20850 | US |
| THE NORTHERN TRUST COMPANY (2669) | ATTN: ROBERT VALENTIN OR PROXY MGR | 801 S. CANAL STREET REORG DEPT. FLOOR C1N | | CHICAGO | IL | 60607 | US |
| TOTALS TRADEBOT SYSTEMS, INC. (0083) | ATTN: KIRK VIETTI OR PROXY MGR | 1251 NW BRIARCLIFF PARKWAY SUITE 700 | | KANSAS CITY | MO | 64116 | US |
| TRADESTATION (0271) | ATTN: PROXY MGR | 8050 SW 10th Street | | Plantation | FL | 33324 | US |
| U.S. BANCORP INVESTMENTS, INC. (0280) | ATTN: KATHY DABRUZZI OR PROXY MGR | 60 LIVINGSTON AVE EP-MN-WN2H | | ST. PAUL | MN | 55107-1419 | US |
| U.S. BANK N.A. (2803) | ATTN: STEPHANIE KAPTA | 1555 N. RIVERCENTER DRIVE SUITE 302 | | MILWAUKEE | WI | 53212 | US |
| U.S. BANK N.A. (2803) | ATTN: PAUL KUXHAUS OR PROXY MGR | 1555 N. RIVER CENTER DRIVE SUITE 302 | | MILWAUKEE | WI | 53212 | US |
| UBS FINANCIAL SERVICES LLC (0221) | ATTN: JANE FLOOD OR PROXY MGR | 1000 HARBOR BLVD | | WEEHAWKEN | NJ | 07086 | US |
| UBS SECURITIES LLC (0642) | ATTN: GREG CONTALDI OR PROXY MGR | 1000 HARBOR BLVD | 5TH FLOOR | WEEHAWKEN | NJ | 07086 | US |
| UBS SECURITIES LLC (0642) | ATTN: MICHAEL HALLETT | 315 DEADERICK STREET | | NASHVILLE | TN | 37238 | US |
| UNION BANK OF CALIFORNIA, N.A. (2145) | ATTN: MAGGI BOUTELLE | 530 B STREET, SUITE 204 | | SAN DIEGO | CA | 92101 | US |
| UNION BANK OF CALIFORNIA, N.A. (2145) | ATTN: JOYCE LEE OR PROXY MGR | 350 CALIFORNIA STREET 8TH FLOOR | | SAN FRANCISCO | CA | 94104 | US |
| US BANCORP INVESTMENTS, INC. (0280) | ATTN: KEVIN BROWN | 60 LIVINGSTON AVE | | ST. PAUL | MN | 55107-1419 | US |
| US BANCORP INVESTMENTS, INC. (0280) | ATTN: TARA TUCHSCHERER OR PROXY MGR | 60 LIVINGSTON AVENUE EP-MN-WN2H | | ST. PAUL | MN | 55107-1419 | US |
| VANGUARD (0062) | ATTN: BEN BEGUIN OR CORPORATE ACTION | 14321 N. NORTHSIGHT BLVD | | SCOTTSDALE | AZ | 85260 | US |
| VANGUARD MARKETING CORPORATION (0062) | ATTN: CORPORATE ACTIONS | 100 VANGUARD BOULEVARD | | MALVERN | PA | 19355 | US |
| VISION FINANCIAL MARKETS LLC (0595) | ATTN: ANA MARTINEZ | 4 HIGH RIDGE PARK | | STAMFORD | CT | 06804 | US |
| VISION FINANCIAL MARKETS LLC (0595) | ATTN: ANA MARTINEZ/MARVIN MONZON | 120 LONG RIDGE ROAD | 3 NORTH | STAMFORD | CT | 06902 | US |
| WEDBUSH MORGAN SECURITIES, INC. (0103) | ATTN: ALAN FERREIRA OR PROXY MGR | 1000 WILSHIRE BLVD | | LOS ANGELES | CA | 90017 | US |
| WEDBUSH STOCK LOAN (5166/8199) | ATTN: ALAN FERREIRA OR PROXY MGR | 1000 WILSHIRE BLVD | SUITE 850 | LOS ANGELES | CA | 90017 | US |
| WELLS FARGO BANK, N.A. (2027) | ATTN: LORA DAHLE | 550 SOUTH 4TH STREET | MAC N9310-141 | MINNEAPOLIS | MN | 55415 | US |
| WELLS FARGO BANK, N.A. (2027) | ATTN: LAURA DAHLE OR PROXY MGR | 733 MARQUETTE AVENUE MAC N9306-057 5TH FLOOR | | MINNEAPOLIS | MN | 55479 | US |
| WELLS FARGO BANK, N.A. (2027) | ATTN: NICHOLAS DOOLEY OR PROXY MGR | 733 MARQUETTE AVENUE MAC N9306-057 5TH FLOOR | | MINNEAPOLIS | MN | 55479 | US |
| WELLS FARGO BANK, N.A./SIG (2072) | ATTN: SCOTT NELLIS OR PROXY MGR | 1525 W T HARRIS BLVD 1ST FLOOR | | CHARLOTTE | NC | 28262-8522 | US |
| WELLS FARGO SECURITIES, LLC (0250) | ATTN: SCOTT NELLIS OR PROXY MGR | CORP ACTIONS - MAC D109-010 1525 WEST W.T. HARRRIS BLVD, 1B1 | | CHARLOTTE | NC | 28262 | US |

Exhibit N

Equity Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| WELLS FARGO SECURITIES, LLC (0250) | ATTN: STEVE TURNER OR PROXY MGR | CORP ACTIONS - NC0675 1525 WEST W.T. HARRIS BLVD, 1B1 | | CHARLOTTE | NC | 28262 | US |
| WELLS FARGO SECURITIES, LLC (0250) | ATTN: ROBERT MATERA OR PROXY MGR | CORP ACTIONS - NC0675 | 1525 WEST W.T. HARRIS BLVD, 1B1 | CHARLOTTE | NC | 28262 | US |
| WESBANCO BANK, INC. (2271) | ATTN: SUSAN KOVAL | ONE BANK PLAZQ | | WHEELING | WV | 26003 | US |
| WESBANCO BANK, INC. (2271) | ATTN: CAROLYN NELSON OR PROXY MGR | C/O TRUST OPERATIONS ONE BANK PLAZA | | WHEELING | WV | 26003 | US |
| WESBANCO BANK, INC. (2271) | ATTN: CINDY BOWMAN OR PROXY MGR | C/O TRUST OPERATIONS ONE BANK PLAZA | | WHEELING | WV | 26003 | US |
| WILSON-DAVIS & CO., INC. (0283) | ATTN: BILL WALKER OR PROXY MGR | 236 SOUTH MAIN STREET | | SALT LAKE CITY | UT | 84101 | US |
| WILSON-DAVIS & CO., INC. (0283) | ATTN: JANET TAYLOR OR PROXY MGR | 236 SOUTH MAIN STREET | | SALT LAKE CITY | UT | 84101 | US |

**Exhibit O**

## Exhibit O

Impaired Notes Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| BROADRIDGE | JOBS Y99763 | 51 MERCEDES WAY | | EDGEWOOD | NY | 11717 | US |
| MEDIANT COMMUNICATIONS | ATTN STEPHANIE FITZHENRY PROXY CTR | 100 DEMAREST DRIVE | | WAYNE | NJ | 07470-0000 | US |
| DEPOSITORY TRUST CO | ATTN ED HAIDUK | 55 WATER STREET | 25TH FLOOR | NEW YORK | NY | 10041 | US |
| DEPOSITORY TRUST CO | ATTN HORACE DALEY | 55 WATER STREET | 25TH FLOOR | NEW YORK | NY | 10041 | US |
| AMALGAMATED BANK 2352 | ATTN BOB WINTERS OR PROXY MGR | 275 7TH AVENUE | | NEW YORK | NY | 10001 | US |
| AMALGMATED BNK OF CHI IPA 1574 2567 | ATTN BERNETTA SMITH OR PROXY MGR | ONE WEST MONROE STREET | | CHICAGO | IL | 60603 | US |
| AMERICAN ENTERPRISE 0216 0756 2146 | ATTN ERIN M STIELER | 682 AMP FINANCIAL CENTER | | MINNEAPOLIS | MN | 55474 | US |
| APEX CLEARING CORPORATION 0158 | ATTN BRIAN DARBY | 350 M ST PAUL SUITE 1300 | | DALLAS | TX | 75201 | US |
| APEX CLEARING CORPORATION 0158 | ATTN SHERRY MUSMAR | 350 N ST PAUL STREET | SUITE 1300 | DALLAS | TX | 75201 | US |
| APEX CLEARING CORPORATION 0158 | ATTN SHERRY MUSMAR | 1700 PACIFIC AVENUE SUITE 1400 | | DALLAS | TX | 75201 | US |
| ASSOCIATED BANK GREEN BAY 2257 | ATTN BETH CRAVILLION OR PROXY MGR | 2985 SOUTH RIDGE RD STE C | | GREEN BAY | WI | 54304 | US |
| ASSOCIATED BNK GRN BAY NA 2257 | ATTN SANDY LACY OR PROXY MGR | 2985 SOUTH RIDGE ROAD SUITE C | | GREEN BAY | WI | 54304 | US |
| BAIRD CO INCORPORATED 0547 | ATTN JAN SUDFELD | 777 E WISCONSIN AVENUE | 19TH FLOOR | MILWAUKEE | WI | 53202 | US |
| BAIRD CO INCORPORATED 0547 | ATTN JANE ERBE OR PROXY MGR | 777 E WISCONSIN AVENUE | | MILWAUKEE | WI | 53202 | US |
| BANC OF AMERICA SECURITIES LLC 0773 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEAR LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| BANC OF AMERICA SECURITIES LLC 0773 | ATTN JOHN DOLAN OR PROXY MGR | 100 W 33RD STREET 3RD FLOOR | | NEW YORK | NY | 10001 | US |
| BANK OF AMERI LASALLE BANK NA 2251 | ATTN RICK LEDENBACH OR PROXY MGR | 135 SOUTH LASALLE STREET SUITE 1811 | | CHICAGO | IL | 60603 | US |
| BANK OF AMERICA NA GWI M 0955 | ATTN SHARON BROWN OR PROXY MGR | 1201 MAIN STREET | 9TH FLOOR | DALLAS | TX | 75202 | US |
| BARCLY CAP 0229 7256 7254 8455 7263 | ATTN ANTHONY SCIARAFFO OR PRXY MGR | 745 SEVENTH AVENUE | 16TH FLOOR | NEW YORK | NY | 10019 | US |
| BB T SECURITIES 0702 | ATTN PROXY DEPT | 8006 DISCOVERY DRIVE | SUITE 200 | Richmond | VA | 23229 | US |
| BBS SECURITIES INC CDS 5085 | ATTN DEBORAH CARLYLE | 4100 YONGE ST | SUITE 506 | TORONTO | ON | M2P 2B5 | CA |
| BMO CAPITAL MARKETS CORP 0045 | ATTN JOHN FINERTY OR PROXY MGR | 3 TIMES SQUARE | | NEW YORK | NY | 10036 | US |
| BMO NESBITT BURNS INC CDS 5043 | ATTN LOUISE TORANGEAU | 1 FIRST CANADIAN PLACE 13TH FL | PO BOX 150 | TORONTO | ON | M5X 1H3 | CA |
| BMO NESBITT BURNS INC CDS 5043 | ATTN LOUISE TORANGEAU | 1 FIRST CANADIAN PLACE | 38th FLOOR P O BOX 150 | TORONTO | ON | M5X 1H3 | CA |
| BMO NESBITT BURNS INC CDS 5043 | ATTN PHUTHORN PENIKET DINA FERNNDES | BMO FINANCIAL GROUP | 250 YONGE ST 8TH FLOOR | TORONTO | ON | M5B 2M8 | CA |
| BNP PARIBAS NEW YORK BRANCH 2147 | ATTN GENE BANFI AARON COLIE PRX MG | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 7310 | US |
| BNP PARIBAS NEW YORK BRANCH 2147 | ATTN RONALD PERSAUD | 525 WASHINGTON BLVD | 9TH FLOOR | JERSEY CITY | NJ | 7310 | US |
| BNP PARIBAS NY BRANCH 1569 2787 | ATTN DEAN GALLI OR PROXY MGR | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 7310 | US |
| BNP PARIBAS PITTSBURGH BRANCH 2787 | ATTN ANDREW TAYLOR OR PROXY MGR | 525 WILLIAM PENN PLACE | | PITTSBURGH | PA | 15219 | US |
| BNY CACLUX 8320 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET ROOM 151-2700 | | PITTSBURGH | PA | 15258 | US |
| BNY CACLUX 8320 | ATTN MITCHEL SOBEL OR PROXY MGR | 401 SOUTH SALINA STREET 2ND FLOOR | | SYRACUSE | NY | 13202 | US |
| BNY CHARLE 2336 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151-2700 | PITTSBURGH | PA | 15258 | US |
| BNY CONVERGEX EXECUTION 0100 | ATTN PROXY MGR | 500 GRANT STREET | ROOM 151-2700 | PITTSBURGH | PA | 15258 | US |
| BNY MELLON NEW ENGLAND 0954 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151 2700 | PITTSBURGH | PA | 15258 | US |
| BNY MELLON NEW ENGLAND 0954 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151 2700 | PITTSBURGH | PA | 15258 | US |
| BNY NA 8420 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151-2700 | PITTSBURGH | PA | 15258 | US |
| BNY WEALTH 8275 | ATTN KEVIN KELLY | ONE WALL STREET | | NEW YORK | NY | 10005 | US |
| BNY WEALTH 8275 | ATTN BETH COYLE OR PROXY MGR | TWO BNY MELLON CENTER | 525 WILLIAM PENN PL STE 1215 | PITTSBURGH | PA | 15259 | US |
| BNYMLLON RE CCEIS BNK LUXMBURG 8320 | ATTN MITCHEL SOBEL OR PROXY MGR | 401 SOUTH SALINA STREET 2ND FLOOR | | SYRACUSE | NY | 13202 | US |
| BROWN BROS HARRIMAN CO ETF 0109 | ATTN SHELDON BROUTMAN OR PROXY MGR | 140 BROADWAY | | NEW YORK | NY | 10005 | US |
| BROWN BROS HARRIMAN CO ETF 0109 | ATTN SHELDON BROUTMAN OR REORG MGR | 140 BROADWAY | | NEW YORK | NY | 10005 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN JERRY TRAVERS | 525 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN PAUL NONNON OR PROXY MGR | 525 WASHINGTON BLVD | NEW PORT TOWERS | JERSEY CITY | NJ | 07310 1607 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN ANTHONY BONACETO | 50 POST OFFICE SQUARE | | BOSTON | MA | 02110 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN PAUL NONNON OR REORG MGR | HARBORSIDE FINANCIAL CENTER | 185 HUDSON STREET | JERSEY CITY | NJ | 07311 0000 | US |
| CANACCORD FINANCIAL LTD 5046 | ATTN AARON CAUGHLAN OR PROXY MGR | P O BOX 10337 PACIFIC CENTER | 2200-609 GRANVILLE STREET | VANCOUVER | BC | V7Y 1H2 | CA |

Exhibit O

Impaired Notes Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| CANACCORD FINANCIAL LTD 5046 | ATTN ALMA GOCA OR PROXY MGR | P O BOX 10337 PACIFIC CENTER | 2200-609 GRANVILLE STREET | VANCOUVER | BC | V7Y 1H2 | CA |
| CANTOR FITZGERALD CO CANTOR 197 | ATTN BRIAN GRIFITH OR PROXY MGR | 135 EAST 57TH ST | | NEW YORK | NY | 10022 | US |
| CANTOR SVC 197 | ATTN BRIAN GRIFITH OR PROXY MGR | 135 EAST 57TH ST | | NEW YORK | NY | 10022 | US |
| CDS CLEARING AND DEPOSITORY 5099 | ATTN LORETTA VERELLI OR PROXY MGR | 600 BOUL DE MAISONNEUVE OUEST | BUREAU 210 | MONTREAL | QC | H3A 3J2 | CA |
| CGM SALOMON BROTHER 0274 | ATTN PATRICIA HALLER OR PROXY MGR | 111 WALL ST 4TH FLOOR | | NEW YORK | NY | 10005 | US |
| CHARLES SCHWAB CO INC 0164 | ATTN CHRISTINA YOUNG | 2423 E LINCOLN DRIVE | | PHOENIX | AZ | 85016 1215 | US |
| CHARLES SCHWAB CO INC 0164 | ATTN JANA TONGSON OR PROXY MGR | 2423 EAST LINCOLN DRIVE | PHXPEAK 01 1B571A | PHOENIX | AZ | 85016 | US |
| CIT SECLLC 8430 | ATTN KEVIN NEWSTEAD | 131 SOUTH DEARBORN STREET | 35TH FLOOR | CHICAGO | IL | 60603 | US |
| CITADEL SECURITIES LLC 0395 | ATTN MARCIA BANKS OR PROXY MGR | 131 SOUTH DEARBORN STREET | | CHICAGO | IL | 60603 | US |
| CITIBANK N A 0908 | ATTN PAUL WATTERS | 3801 CITIBANK CENTER | B 3RD FLOOR ZONE 12 | TAMPA | FL | 33610 | US |
| CITIBANK N A 0908 | ATTN CAROLYN TREBUS OR PROXY MGR | 3800 CITIBANK CENTER B3 12 | | TAMPA | FL | 33610 | US |
| CITIGROUP GLBL MRKET INC 0418 0505 | ATTN ROSE MARIE YODICE OR PRXY MGR | 388 GREENWHICH STREET 11TH FLOOR | | NEW YORK | NY | 10013 | US |
| COMERICA BANK (2108) | ATTN: LATASHA ELLIS OR PROXY MGR | 411 WEST LAFAYETTE | | DETROIT | MI | 48226 | US |
| COMERICA BANK (2108) | ATTN: LEWIS WISOTSKY OR PROXY MGR | 411 WEST LAFAYETTE MAIL CODE 3530 | | DETROIT | MI | 48226 | US |
| COMMERCE BANK N A 2170 | ATTN CINDY LAWRENCE OR PROXY MGR | 922 WALNUT STREET | | KANSAS CITY | MO | 64106 | US |
| COMMERZ MARKETS LLC 0126 | ATTN ROBERT ORTEGA OR PROXY MGR | 225 LIBERTY STREET | | NEW YORK | NY | 10281 | US |
| COR LLC 0052 | ATTN CORPORATE ACTION | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC 0052 | ATTN LUKE HOLLAND | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC 0052 | ATTN ANH MECHALS | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC 0052 | ATTN ISSUER SERVICES | 1299 FARNAM STREET | SUITE 800 | OMAHA | NC | 68102 | US |
| COR LLC 0052 | ATTN AMBRA MOORE OR PROXY MGR | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| CREDIT SUISSE SECURITIES 0355 | ATTN ANTHONY MILO | 7033 LOUIS STEVENS DRIVE | GLOBAL PROXY SERVICES | RESEARCH TRIANGLE PARK | NC | 27560 | US |
| CREDIT SUISSE SECURITIES 0355 | ATTN ASHWINEE SAWH OR PROXY MGR | 11 MADISON AVENUE | 23RD FLOOR | NEW YORK | NY | 10010 | US |
| CREST INTL NOMINEES LIMITED 2012 | ATTN JASON MURKIN OR PROXY MGR | 33 CANNON STREET | | LONDON | | EC4M 5SB | UK |
| CREST INTL NOMINEES LIMITED 2012 | ATTN NATHAN ASHWORTH OR PROXY MGR | 33 CANNON STREET | | LONDON | | UK EC4M 5SB | UK |
| D A DAVIDSON CO 0361 | ATTN RITA LINSKEY OR PROXY MGR | 8 THIRD STREET NORTH P O BOX 5015 | | GREAT FALLS | MT | 59403 | US |
| DAVENPORT COMPANY LLC 0715 | ATTN KIM NIEDING OR PROXY MGR | 901 EAST CARY ST 11TH FLOOR | | RICHMOND | VA | 23219 | US |
| DESJARDINS SECURITIES INC 5028 | ATTN VERONIQUE LEMIEUX | 1060 UNIVERSITY STREET | SUITE 101 | MONTREAL | QC | H5B 5L7 | CA |
| DESJARDINS SECURITIES INC 5028 | A S REORGINIZATION | 1 COMPLEXE DESJARDINS | C P 1200 | MONTREAL | QC | H5B 1C3 | CA |
| DESJARDINS SECURITIES INC 5028 | ATTN KARLA DIAZ FOR MATERIALS | VALEURS MOBILIARES DESJARDINS | 2 COMPLEXE DESJARDINS TOUR EST | NIVEAU 62 E1-22 | QC | H5B 1J2 | CA |
| DESJARDINS SECURITIES INC 5028 | ATTN REORG DEPT-MTL-1060-1ER-E | 1060 ROBERT-BOURASSA BLVD SUITE 101 | | MONTREAL | QC | H3B 5L7 | CA |
| DESJARDINS SECURITIES INC 5028 | 1253 MCGILL COLLEGE AVEENUE | 10TH FLOOR | | MONTREAL | QC | H3B2Y5 | CA |
| DEUTSCHE BANK SECURITIES INC 0573 | ATTN MICHAEL GARDINER | 199 BAY STREET SUITE 4700 | PO BOX 263 COMMERCE COURT | TORONTO | ON | M5L 1E9 | CA |
| DEUTSCHE BANK SECURITIES INC 0573 | ATTN ERIC HERBST | 5021 GATE PARKWAY SUITE | | JACKSONVILLE | FL | 32256 | US |
| DEUTSCHE BANK SECURITIES INC 0573 | ATTN SARA BATTEN | 5022 GATE PARKWAY SUITE 100 | | JACKSONVILLE | FL | 32256 | US |
| DEUTSCHE BANK SECURITIES INC 0573 | ATTN ASHLEY RICHEY OR PROXY MGR | 5022 GATE PARKWAY SUITE 100 | | JACKSONVILLE | FL | 32256 | US |
| E TRADE CLEARING LLC 0385 | ATTN VICTOR LAU OR PROXY MGR | 34 EXCHANGE PLACE | PLAZA II | JERSEY CITY | NJ | 07311 | US |
| E- TRANSACTION CLEARING 0873 | ATTN KEVIN MURPHY | 660 S FIGUEROA STREET | SUITE 1450 | LOS ANGELES | CA | 90017 | US |
| E- TRANSACTION CLEARING 0873 | ATTN JANE BUHAIN OR PROXY MGR | 660 S FIGUEROA STREET SUITE 1450 | | LOS ANGELES | CA | 90017 | US |
| EDWARD D JONES CO 0057 | ATTN ELIZABETH ROLWES | 201 PROGRESS PARKWAY | | MARYLAND HEIGHTS | MO | 63043 3042 | US |
| EDWARD D JONES CO 0057 | ATTN A J MAYTAS OR PROXY MGR | CORPORATE ACTIONS DISTRIBUTION | 12555 MANCHESTER ROAD | ST LOUIS | MO | 63141 | US |
| EDWARD JONES CDS 5012 | ATTN NICK HUMMELL OR PROXY MGR | 700 MARYVILLE CENTRE DRIVE | | ST LOUIS | MO | 63141 | US |
| EDWARD JONES CDS 5012 | ATTN KENNIQUE MEALS OR PROXY MGR | 700 MARYVILLE CENTRE DRIVE | | ST LOUIS | MO | 63141 | US |
| EDWARD JONES CDS 5012 | ATTN DIANE YOUNG | 1255 MANCHESTER ROAD | | ST LOUIS | MO | 63141 | US |
| EDWARD JONES CDS 5012 | ATTN KENNIQUE MEALS | CORP ACTION AND DISTRIBUTION | 12555 MANCHESTER ROAD | ST LOUIS | MO | 63131 | US |
| FIDELITY CLEARING CANADA 5040 | ATTN STEVE ADAMS OR PROXY MGR | 401 BAY STREET SUITE 2910 | | TORONTO | ON | M5H 2Y4 | CA |

Exhibit O

Impaired Notes Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| FIDELITY CLEARING CANADA 5040 | ATTN CAROL ANDERSON | 483 BAY STREET SOUTH TOWER | SUITE 200 | TORONTO | ON | M5G 2N7 | CA |
| FIDELITY CLEARING CANADA 5040 | ATTN LINDA SARGEANT | BELL TRINITY SQUARE SOUTH TOWER | 483 BAY STREET SUITE 200 | TORONTO | ON | M5G 2N7 | CA |
| FIDUCIARY SSB 0987 | ATTN PROXY MGR | 225 FRANKLIN STREET MAO-3 | | BOSTON | MA | 2110 | US |
| FIFTH THIRD BANK, THE (2116) | ATTN: LANCE WELLS | 5001 KINGSLEY DRIVE | MAIL DROP 1MOB2D | CINCINNATI | OH | 45227 | US |
| FIFTH THIRD BANK, THE (2116) | ATTN: CARRIE POTTER OR PROXY MGR | 5001 KINGSLEY DRIVE MAIL DROP 1M0B2D | | CINCINNATI | OH | 45227 | US |
| FIRST CLEARING LLC 0141 | ATTN PROXY DEPARTMENT | 2801 MARKET STREET | H0006 08N | ST LOUIS | MO | 63103 | US |
| FIRST CLEARING LLC 0141 | ATTN FINESSA ROSSON OR PROXY MGR | ONE NORTH JEFFERSON STREET 9 F | | ST LOUIS | MO | 63103 | US |
| FOLIO FN INVESTMENTS INC 0728 | ATTN ASHLEY THEOBALD OR PROXY MGR | 8180 GREENSBORO DRIVE 8TH FLOOR | | MCLEAN | VA | 22102 | US |
| FORTIS CLEARING AMERI LLC 0695 0396 | ATTN KIM VILARA | 175 W JACKSON BLVD SUITE 400 | | CHICAGO | IL | 60605 | US |
| GLENMEDE TRUST CO (2139) | ATTN: DARLENE WARREN OR PROXY MGR | ONE LIBERTY PLACE SUITE 1200 | 1650 MARKET STREET | PHILADELPHIA | PA | 19103 | US |
| GLENMEDE TRUST CO (2139) | ATTN: LINDA BELLICINI OR PROXY MGR | ONE LIBERTY PLACE, SUITE 1200 1650 MARKET STREET | | PHILADELPHIA | PA | 19103 | US |
| GMP SECURITIES L P 5016 | ATTN TERRY YOUNG OR PROXY MGR | 145 KING STREET WEST SUITE 1100 | | TORONTO | ON | M5H 1J8 | CA |
| GMP SECURITIES L P 5016 | ATTN MARINO MEGGETTO | 145 KING STREET WEST | SUITE 300 | TORONTO | ON | M5H 1J8 | CA |
| GOLDMAN SACHS CO 0005 | ATTN DEVIN GEIMAN OR PROXY MGR | 30 HUDSON STREET PROXY DEPARTMENT | | JERSEY CITY | NJ | 07302 | US |
| GOLDMAN SACHS CO 0005 | ATTN VANESSA CAMARDO | 30 HUDSON ST | | JERSEY CITY | NJ | 07302 0000 | US |
| GOLDMAN SACHS INTERNATIONAL 5208 | ATTN DEVIN GEIMAN OR PROXY MGR | 30 HUDSON STREET PROXY DEPARTMENT | | JERSEY CITY | NJ | 07302 | US |
| HSBC CLEAR 8396 | ATTN BARBARA SKELLY | 545 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| HUNTINGTON BK SCHOOL 2898 | ATTN BEVERLY REYNOLDS OR PROXY MGR | 7 EASTON OVAL EA4E62 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK 2305 | ATTN ALLAN BURKHART OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK 2305 | ATTN BEVERLY REYNOLDS OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK 2305 | ATTN RITA BOLTON OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK 2305 | ATTN TAMMY MOWREY OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| HUNTINGTON NATIONAL BANK 2305 | ATTN TINA MOX OR PROXY MGR | 7 EASTON OVAL - EA4 E78 | | COLUMBUS | OH | 43219 | US |
| ING FINANCIAL MARKETS LLC 0270 | ATTN STEPHEN WIZNIUK OR PROXY MGR | 1325 AVENUE OF THE AMERICA | 6TH FLOOR | NEW YORK | NY | 10019 | US |
| INTERACTIVE BROKERS 0017 0534 | ATTN KARIN MCCARTHY | 8 GREENWICH OFFICE PARK | | GREENWICH | CT | 06831 | US |
| INTERACTIVE BROKERS 0017 0534 | ATTN KARIN MCCARTHY | 8 GREENWICH OFFICE PARK 2ND FLOOR | | GREENWICH | CT | 06831 | US |
| INTERACTIVE BROKERS 0017 0534 | ATTN KARIN MCCARTHY | 2 PICKWICK PLAZA 2ND FLOOR | | GREENWICH | CT | 06830 0000 | US |
| INTL FCSTNE INC STRNE AG LH INC 750 | ATTN KEN SIMPSON OR PROXY MGR | 2 PERIMETER PARK SOUTH STE 100 W | | BIRMINGHAM | AL | 35243 | US |
| J P MORGAN CLEARING CORP 0352 | ATTN BRODERICK WALKER OR PROXY MGR | DEPT C CASHIERS DEPARTMENT 1 METROTECH | CENTER NORTH REORG DEPT 4TH FLOOR | BROOKLYN | NY | 11201 3862 | US |
| J P MORGAN SECURITIES INC 0187 | ATTN MICHAEL PELLEGRINO | 500 STANTON CHRISTIANA ROAD | CORP ACTIONS 3RD FL | NEWARK | DE | 19713 2107 | US |
| J P MORGAN SECURITIES INC 0187 | ATTN JOHN HALLORAN OR PROXY MGR | 500 STANTON CHRISTIANA ROAD | CORP ACTIONS 3RD FL | NEWARK | DE | 19713 2107 | US |
| JANNEY MONTGOMERY SCOTT INC 0374 | ATTN BOB MARTIN OR PROXY MGR | 1801 MARKET STREET 9TH FLOOR | | PHILADELPHIA | PA | 19103 1675 | US |
| JEFFERIES COMPANY INC 0019 | ATTN ROBERT MARANZANO | 34 EXCHANGE PL | | JERSEY CITY | NJ | 07311 | US |
| JEFFERIES COMPANY INC 0019 | ATTN RAY DESOUZA OR PROXY MGR | HARBORSIDE FINANCIAL CENTER | 705 PLAZA 3 | JERSEY CITY | NJ | 07311 | US |
| JMS LLC 0374 | ATTN MARK F GRESS | C O MEDIANT COMMUNICATIONS INC | 200 REGENCY FOREST DRIVE | CARY | NC | 27518 | US |
| JPMC EURO 1970 | ATTN PROXY DEPT | 4 METROTECH CENTER 3RD FLOOR | | BROOKLYN | NY | 11245 | US |
| JPMORGAN CHASE BANK N A 0902 | ATTN PROXY MGR | PARADIGM B WING FLOOR 6 | MINDSPACE MALAD W | MUMBAI | | 400 064 I00000 | IN |
| JPMORGAN CHASE BANK NA 0902 | ATTN SACHIN GOYAL | 500 STANTON CHRISTIANA ROAD OPS 4 | FLOOR 02 | NEWARK | DE | 19713 2107 | US |
| JPMORGAN CHASE BANK NA 0902 | ATTN JACOB BACK OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK NA 0902 | ATTN ARMANDO MORALES OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK NA 0902 | ATTN MARVIN KINES OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BNK NA TRST 2424 | ATTN JOHN P FAY | 500 STANTON CHRISTIANA ROAD OPS 4 | FLOOR 03 | NEWARK | DE | 19713 2107 | US |
| JPMORGAN CHASE BNK NA TRST 2424 | ATTN DARRIN NELSON OR PROXY MGR | 14201 DALLAS PARKWAY | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE PUBLIC EMPLOYEE 2975 | ATTN PROXY MGR | PARADIGM B WING FLOOR 6 | MINDSPACE MALAD | MUMBAI | | 400 064 I00000 | IN |
| JPMORGAN CHASE TREASURER OF OH 2609 | ATTN WENDY WUJCIKOWSKI OR PROXY MGR | 14201 DALLAS PARKWAY | | DALLAS | TX | 75254 | US |
| JPMORGAN TREASURER OHIO 2609 | ATTN PROXY MGR | PARADIGM B WING FLOOR 6 | MINDSPASE MALAD W | MUMBAI | | 400 064 I00000 | IN |

# Exhibit O

Impaired Notes Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| JPMS JPMC 0352 | ATTN JOHN FAY | 500 STANTON CHRISTIANA ROAD OPS 4 | FLOOR 03 | NEWARK | DE | 19713 2107 | US |
| LPL FINANCIAL CORPORATION 0075 | ATTN CORPORATE ACTIONS DEPT | 1055 LPL WAY | | FORT MILL | SC | 29715 | US |
| LPL FINANCIAL CORPORATION 0075 | ATTN KRISTIN KENNEDY | 9785 TOWNE CENTER DRIVE | | SAN DIEGO | CA | 92121 1968 | US |
| LPL FINANCIAL CORPORATION 0075 | ATTN MARTHA LANG | 4828 PARKWAY PLAZA BLVD | | CHARLOTTE | NC | 28217 | US |
| LPL FINANCIAL CORPORATION 0075 | ATTN CORPORATE ACTIONS | 4707 EXECUTIVE DRIVE | | SAN DIEGO | CA | 92121 | US |
| M I MARSHALL ILSLEY BANK 0992 | ATTN PROXY MGR | 111 W MONROE ST | | CHICAGO | IL | 60603 | US |
| M I MARSHALL ILSLEY BANK 0992 | ATTN CYNTHIA HAMMERELL OR PRXY MGR | 1000 N WATER STREET TR 14 | | MILWAUKEE | WI | 53202 | US |
| MERRILL LNCH PEIRCE FNER 0161 8862 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| MERRILL LYNCH 5143 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| MERRILL LYNCH 5198 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| MITSUBISHI UFJ TRUST 2932 | ATTN RICHARD WENSHOSKI OR PRXY MGR | 420 FIFTH AVENUE 6TH FLOOR | | NEW YORK | NY | 10018 | US |
| MLPF&S-MLIM GBL SECS FINANCING (7268) | ATTN: RAY KARTANOWITZ OR PROXY MGR | 101 HUDSON STREET | | JERSEY CITY | NJ | 7302.00 | US |
| MORGAN STANLEY CO LLC 0050 | ATTN KENNETH EWING OR PROXY MGR | 1300 THAMES STREET WHARF 7TH FLOOR | | BALTIMORE | MD | 21231 | US |
| MORGAN STANLEY CO LLC 0050 | ATTN RAQUEL DEL MONTE OR PROXY MGR | ONE NEW YORK PLAZA 7TH FLOOR | | NEW YORK | NY | 10004 | US |
| MORGAN STANLEY CO LLC 0050 | ATTN MICHELLE FORD | 901 SOUTH BOND ST 6TH FL | | BALTIMORE | MD | 21231 | US |
| MORGAN STANLEY CO LLC 0050 | ATTN JONATHAN GOLDMAN OR PROXY MGR | 1300 THAMES STREET WHARF 7TH FLOOR | | BALTIMORE | MD | 21231 | US |
| MORGAN STANLEY CO LLC 050 | ATTN MS PROXY DEPT | 1300 THAMES STREET WHARF | | BALTIMORE | MD | 21231 | US |
| MRGAN STNLEY SMTH BRNEY LLC 0015 | ATTN JOHN BARRY OR PROXY MGR | 1300 THAMES STREET | 6TH FLOOR | BALTIMORE | MD | 21231 | US |
| MRGAN STNLEY SMTH BRNEY LLC 0015 | ATTN PROXY REORG MGR | 1 NEW YORK PLAZA | 41ST FLOOR | New York | NY | 10004 | US |
| NATIONAL FINANCIAL SERV LLC 0226 | ATTN PROXY MANAGER | 499 WASHINGTON BLVD 5TH FL | | JERSEY CITY | NJ | 07310 | US |
| NATIONAL FINANCIAL SERV LLC 0226 | ATTN JOANNE PADARATHSINGH | 499 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| NATIONAL FINANCIAL SERV LLC 0226 | ATTN SEAN COLE OR PROXY MGR | 499 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| OPPENHEIMER CO INC 0571 0303 | ATTN OSCAR MAZARIO OR PROXY MGR | 85 BROAD STREET 4TH FL | | NEW YORK | NY | 10004 | US |
| PENSON FINANCIAL SERVICES | ATTN BILIANA STOIMENOVA | 1700 PACIFIC AVENUE SUITE 1400 | | DALLAS | TX | 75201 | US |
| PERSHING LLC 0443 | ATTN JOSEPH LAVARA | ONE PERSHING PLAZA | | JERSEY CITY | NJ | 07399 | US |
| PERSHING LLC 0443 | ATTN AL HERNANDEZ OR PROXY MGR | SECURITIES CORPORATION | 1 PERSHING PLAZA 7TH FLOOR REORG | JERSEY CITY | NJ | 07399 | US |
| PRIMEVEST 0701 | ATTN ANGELA HANDELAND OR PROXY MGR | 400 1ST STREET SOUTH SUITE 300 ST | | CLOUD | MN | 56301 | US |
| PRIMEVEST 0701 | ATTN MARK SCHOUVILLER OR PROXY MGR | 400 1ST STREET SOUTH SUITE 300 ST | | CLOUD | MN | 56301 | US |
| RAYMOND JAMES ASSOCIATES INC 0725 | ATTN ROBERTA GREEN | 880 CARILION PARKWAY | | ST PETERSBURG | FL | 33716 | US |
| RAYMOND JAMES ASSOCIATES INC 0725 | ATTN ROBERTA GREEN OR PROXY MGR | 880 CARILION PARKWAY TOWER 2 | 4TH FLOOR | ST PETERSBURG | FL | 33716 | US |
| RBC CAPITAL MARKETS CORP 0235 | ATTN STEVE SCHAFER | 60 S 6TH ST P09 | | MINNEAPOLIS | MN | 55402 4400 | US |
| RBC CAPITAL MARKETS CORP 0235 | ATTN STEVE SCHAFER OR PROXY MGR | 510 MARQUETTE AVE SOUTH | | MINNEAPOLIS | MN | 55402 | US |
| RBC INVESTOR SERVICES 0901 | ATTN EMMA SATTAR OR PROXY MGR | 155 WELLINGTON ST W 3RD FLOOR | | TORONTO | ON | M5V 3L3 | CA |
| RELIANCE TRUST COMP SWMS2 2085 | ATTN TONIE MONTGOMRY OR CORP ACT GP | 1100 ABERNATHY RD SUITE 400 | | ATLANTA | GA | 30328 5634 | US |
| RIDGE CLEARING 0158 | ATTN MATTHEW FREIFELD OR PROXY MGR | 1981 MARCUS AVENUE 1ST FLOOR | | LAKE SUCCESS | NY | 11042 | US |
| SAFRA SECURITIES LLC 8457 | ATTN PROXY DEPARTMENT | 3050 AVENTURA BLVD | | AVENTURA | FL | 33180 | US |
| SANFORD C BERNSTEIN CO LLC 0013 | ATTN ANITA BACTAWAR | 1 NORTH LEXINGTION AVE | C O RIDGE | WHITE PLAINS | NY | 10601 | US |
| SANFORD C BERNSTEIN CO LLC 0013 | ATTN RYAN CONNORS OR PROXY MGR | ONE NORTH LEXINGTON AVENUE | | WHITE PLAINS | NY | 10601-1785 | US |
| SEI PRIVATE TRST COMP 2039 2663 | ATTN MELVIN ALLISON OR PROXY MGR | ONE FREEDOM VALLEY DRIVE | | OAKS | PA | 19456 | US |
| SOUTHWEST SECURITIES INC 0279 | ATTN RHONDA JACKSON | 1201 ELM STREET SUITE 3500 | | DALLAS | TX | 75270 | US |
| SOUTHWEST SECURITIES INC 0279 | ATTN CHRISTINA FINZEN OR PROXY MGR | 1201 ELM STREET SUITE 3700 | | DALLAS | TX | 75270 | US |
| STATE ST BNK TRST ST TOT ETF 2950 | ATTN MIKE FEELEY ROB RAY OR PRX MGR | CORP ACTIONS JAB5E | 1776 HERITAGE DRIVE NORTH | QUINCY | MA | 02171 | US |
| STATE ST BNK TRST ST TOT ETF 2950 | ATTN JOSEPH J CALLAHAN | GLOBAL CORP ACTION DEPT JAB5W | P O BOX 1631 | BOSTON | MA | 02105 1631 | US |
| STATE STREET 0997 | ATTN CHRISTINE SULLIVAN | 1776 HERITAGE DR | | NORTH QUINCY | MA | 02171 | US |
| STATE STREET 0997 | ATTN MIKE FEELEY ROB RAY OR PRX MGR | CORP ACTIONS JAB5E | 1776 HERITAGE DRIVE NORTH | QUINCY | MA | 02171 | US |
| STERNE AGEE LEACH INC 0750 | ATTN JAMES MEZRANO | 2 PERIMETER PARK | SUITE 100W | BIRMINGHAM | AL | 35209 | US |
| STERNE AGEE LEACH INC 0750 | ATTN WENDY FLETCHER OR PROXY MGR | 813 SHADES CREEK PARKWAY | SUITE 100 B | BIRMINGHAM | AL | 35209 | US |

Exhibit O

Impaired Notes Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| STIFEL NICOLAUS CO 0793 | ATTN CHRIS WIEGAND | C O MEDIANT COMMUNICATIONS INC | 200 REGENCY FOREST DRIVE | CARY | NC | 27518 | US |
| STIFEL NICOLAUS CO 0793 | ATTN CHRIS WIEGAND OR PROXY MGR | 501 N BROADWAY 7TH FL | STOCK RECORD DEPT | ST LOUIS | MO | 63102 | US |
| STOCKCROSS FINANCIAL 0445 | ATTN DIANE TOBEY | 77 SUMMER STREET | | BOSTON | MA | 02110 | US |
| STOCKCROSS FINANCIAL 0445 | ATTN ELEANOR PIMENTEL OR PROXY MGR | 77 SUMMER STREET 2ND FLOOR | | BOSTON | MA | 02210 | US |
| TD AMERITRADE CLEARING INC 0188 | ATTN MANDI FOSTER | 1005 N AMERITRADE PLACE | | BELLEVUE | NE | 68005 | US |
| TD AMERITRADE CLEARING INC 0188 | ATTN GARY SWAIN OR PROXY MGR | 1005 AMERITRADE PLACE | | BELLEVUE | NE | 68005 | US |
| THE BNK OF NY MELLON 0901 2510 2209 | ATTN JENNIFER MAY | 525 WILLIAM PENN PLACE | SUITE 153 0400 | PITTSBURGH | PA | 15259 | US |
| THE NORTHERN TRUST COMPANY 2669 | ATTN ANDREW LUSSEN CAPTL STRT C1N | 801 S CANAL STREET | | CHICAGO | IL | 60607 | US |
| THE NORTHERN TRUST COMPANY 2669 | ATTN JOSEPH RAMPP | 2099 GAITHER ROAD | | ROCKVILLE | MD | 20850 | US |
| THE NORTHERN TRUST COMPANY 2669 | ATTN ROBERT VALENTIN OR PROXY MGR | 801 S CANAL STREET | REORG DEPT FLOOR C1N | CHICAGO | IL | 60607 | US |
| U S BANCORP INVESTMENTS INC 0280 | ATTN KATHY DABRUZZI OR PROXY MGR | 60 LIVINGSTON AVE EP MN WN2H | | ST PAUL | MN | 55107 1419 | US |
| U S BANK N A 2803 | ATTN STEPHANIE KAPTA | 1555 N RIVERCENTER DRIVE SUITE 302 | | MILWAUKEE | WI | 53212 | US |
| U S BANK N A 2803 | ATTN PAUL KUXHAUS OR PROXY MGR | 1555 N RIVER CENTER DRIVE SUITE 302 | | MILWAUKEE | WI | 53212 | US |
| UBS AG STAMFORD UBS AG LON 2507 | ATTN JOSEPH POZOLANTE OR PROXY MGR | 315 DEADERICK STREET | | NASHVILLE | TN | 37238 | US |
| UBS SECURITIES LLC 0642 | ATTN GREG CONTALDI OR PROXY MGR | 1000 HARBOR BLVD | 5TH FLOOR | WEEHAWKEN | NJ | 07086 | US |
| UBS SECURITIES LLC 0642 | ATTN MICHAEL HALLETT | 315 DEADERICK STREET | | NASHVILLE | TN | 37238 | US |
| US BANCORP INVESTMENTS INC 0280 | ATTN KEVIN BROWN | 60 LIVINGSTON AVE | | ST PAUL | MN | 55107 1419 | US |
| US BANCORP INVESTMENTS INC 0280 | ATTN TARA TUCHSCHERER OR PROXY MGR | 60 LIVINGSTON AVENUE EP MN WN2H | | ST PAUL | MN | 55107 1419 | US |
| VANGUARD 0062 | ATTN BEN BEGUIN OR CORP ACTION | 14321 N NORTHSIGHT BLVD | | SCOTTSDALE | AZ | 85260 | US |
| VANGUARD MARKETING CORP 0062 | ATTN CORPORATE ACTIONS | 100 VANGUARD BOULEVARD | | MALVERN | PA | 19355 | US |
| WEDBUSH MRGAN SECURITIES INC 0103 | ATTN ALAN FERREIRA OR PROXY MGR | PO BOX 30014 | | LOS ANGELES | CA | 90030 | US |
| WEDBUSH MRGAN SECURITIES INC 0103 | ATTN ALAN FERREIRA OR PROXY MGR | 1000 WILSHIRE BLVD | | LOS ANGELES | CA | 90017 | US |
| WELLS FARGO BANK N A 2027 | ATTN LORA DAHLE | 550 SOUTH 4TH STREET | MAC N9310 141 | MINNEAPOLIS | MN | 55415 | US |
| WELLS FARGO BANK N A 2027 | ATTN LAURA DAHLE OR PROXY MGR | 733 MARQUETTE AVENUE | MAC N9306 057 5TH FLOOR | MINNEAPOLIS | MN | 55479 | US |
| WELLS FARGO BANK N A 2027 | ATTN NICHOLAS DOOLEY OR PROXY MGR | 733 MARQUETTE AVENUE | MAC N9306 057 5TH FLOOR | MINNEAPOLIS | MN | 55479 | US |

**Exhibit P**

## Exhibit P

Unimpaired Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| BROADRIDGE | JOBS N43791 N43792 | N43793, N44158 | 51 MERCEDES WAY | EDGEWOOD | NY | 11717 | US |
| MEDIANT COMMUNICATIONS | ATTN STEPHANIE FITZHENRY PROXY CTR | 100 DEMAREST DRIVE | | WAYNE | NJ | 07470 0000 | US |
| DEPOSITORY TRUST CO | ATTN ED HAIDUK | 55 WATER STREET | 25TH FLOOR | NEW YORK | NY | 10041 | US |
| DEPOSITORY TRUST CO | ATTN HORACE DALEY | 55 WATER STREET | 25TH FLOOR | NEW YORK | NY | 10041 | US |
| AMERICAN ENTERPRISE 0216 0756 2146 | ATTN ERIN M STIELER | 682 AMP FINANCIAL CENTER | | MINNEAPOLIS | MN | 55474 | US |
| APEX CLEARING CORPORATION 0158 | ATTN BRIAN DARBY | 350 M ST PAUL SUITE 1300 | | DALLAS | TX | 75201 | US |
| APEX CLEARING CORPORATION 0158 | ATTN SHERRY MUSMAR | 350 N ST PAUL STREET | SUITE 1300 | DALLAS | TX | 75201 | US |
| APEX CLEARING CORPORATION 0158 | ATTN SHERRY MUSMAR | 1700 PACIFIC AVENUE SUITE 1400 | | DALLAS | TX | 75201 | US |
| BAIRD CO INCORPORATED 0547 | ATTN JAN SUDFELD | 777 E WISCONSIN AVENUE | 19TH FLOOR | MILWAUKEE | WI | 53202 | US |
| BAIRD CO INCORPORATED 0547 | ATTN JANE ERBE OR PROXY MGR | 777 E WISCONSIN AVENUE | | MILWAUKEE | WI | 53202 | US |
| BANC OF AMERICA SECURITIES LLC 0773 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEAR LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| BANC OF AMERICA SECURITIES LLC 0773 | ATTN JOHN DOLAN OR PROXY MGR | 100 W 33RD STREET 3RD FLOOR | | NEW YORK | NY | 10001 | US |
| BANK OF AMERICA LASALLE BNK NA 2251 | ATTN RICK LEDENBACH OR PROXY MGR | 135 SOUTH LASALLE STREET SUITE 1811 | | CHICAGO | IL | 60603 | US |
| BANK OF AMERICA MORTAGE 8862 | ATTN EARL WEEKS | 4804 DEERLAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| BANK OF AMERICA MORTAGE 8862 | ATTN EARL WEEKS | 4804 DEERLAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| BANK OF AMERICA NA GWI M 0955 | ATTN SHARON BROWN OR PROXY MGR | 1201 MAIN STREET | 9TH FLOOR | DALLAS | TX | 75202 | US |
| BARCLY CAP 229 7256 7254 8455 7263 | ATTN ANTHONY SCIARAFOO PROX MGR | 745 SEVENTH AVENUE | 16TH FLOOR | NEW YORK | NY | 10019 | US |
| BB T SECURITIES 0702 | ATTN PROXY DEPT | 8006 DISCOVERY DRIVE | Suite 200 | RICHMOND | VA | 23229 | US |
| BMO NESBITT BURNS INC CDS 5043 | ATTN LOUISE TORANGEAU | 1 FIRST CANADIAN PLACE 13TH FL | PO BOX 150 | TORONTO | ON | M5X 1H3 | CA |
| BMO NESBITT BURNS INC CDS 5043 | ATTN LOUISE TORANGEAU | 1 FIRST CANADIAN PLACE | 38th FLOOR P O BOX 150 | TORONTO | ON | M5X 1H3 | CA |
| BMO NESBITT BURNS INC CDS 5043 | ATTN PHUTHORN PENIKET DINA FERNANDE | BMO FINANCIAL GROUP | 250 YONGE ST 8TH FLOOR | TORONTO | ON | M5B 2M8 | CA |
| BNP PARIBAS NEW YORK BRANCH 2147 | ATTN GENE BANFI OR AARON COLIE | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS NEW YORK BRANCH 2147 | ATTN RONALD PERSAUD | 525 WASHINGTON BLVD | 9TH FLOOR | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS NEW YORK BRANCH 2322 | ATTN RUPERT KENNEDY OR PROXY MGR | 787 7TH AVENUE 8TH FLOOR | | NEW YORK | NY | 10019 | US |
| BNP PARIBAS NY BRANCH 1569 2787 | ATTN DEAN GALLI OR PROXY MGR | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS PITTSBURGH BRANCH 2787 | ATTN ANDREW TAYLOR OR PROXY MGR | 525 WILLIAM PENN PLACE | | PITTSBURGH | PA | 15219 | US |
| BNP PARIBAS PRIME BROKERGE INC 2154 | ATTN RONALD PERSAUD | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNP PARIBAS PRIME BROKERGE INC 2154 | ATTN GENE BANFI OR PROXY MGR | 525 WASHINGTON BLVD 9TH FLOOR | | JERSEY CITY | NJ | 07310 | US |
| BNY CONVERGEX EXECUTION 0100 | ATTN PROXY MGR | 500 GRANT STREET | ROOM 151 2700 | PITTSBURGH | PA | 15258 | US |
| BNY MELLON NEW ENGLAND 0954 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151 2700 | PITTSBURGH | PA | 15258 | US |
| BNY MELLON NEW ENGLAND 0954 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151 2700 | PITTSBURGH | PA | 15258 | US |
| BNY WEALTH 8275 | ATTN KEVIN KELLY | ONE WALL STREET | | NEW YORK | NY | 10005 | US |
| BNY WEALTH 8275 | ATTN BETH COYLE OR PROXY MGR | TWO BNY MELLON CENTER | 525 WILLIAM PENN PL STE 1215 | PITTSBURGH | PA | 15259 | US |
| BNYM OZDTC 2731 | ATTN EVENT CREATION DEPARTMENT | 500 GRANT STREET | ROOM 151 2700 | PITTSBURGH | PA | 15258 | US |
| BROWN BROS HARRIMAN CO ETF 0109 | ATTN SHELDON BROUTMAN OR PROXY MGR | 140 BROADWAY | | NEW YORK | NY | 10005 | US |
| BROWN BROS HARRIMAN CO ETF 0109 | ATTN SHELDON BROUTMAN OR REORG MGR | 140 BROADWAY | | NEW YORK | NY | 10005 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN JERRY TRAVERS | 525 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN PAUL NONNON OR PROXY MGR | 525 WASHINGTON BLVD NEW PORT TOWERS | | JERSEY CITY | NJ | 07310 1607 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN ANTHONY BONACETO | 50 POST OFFICE SQUARE | | BOSTON | MA | 02110 | US |
| BROWN BROTHERS HARRIMAN CO 0010 | ATTN PAUL NONNON OR REORG MGR | HARBORSIDE FINANCIAL CENTER | 185 HUDSON STREET | JERSEY CITY | NJ | 07311 0000 | US |
| CANTOR FITZGERALD CO CANTOR 197 | ATTN BRIAN GRIFITH OR PROXY MGR | 135 EAST 57TH ST | | NEW YORK | NY | 10022 | US |
| CANTOR SVC | ATTN BRIAN GRIFITH OR PROXY MGR | 135 EAST 57TH ST | | NEW YORK | NY | 10022 | US |
| CGM SALOMON BROTHER 0274 | ATTN PATRICIA HALLER OR PROXY MGR | 111 WALL ST 4TH FLOOR | | NEW YORK | NY | 10005 | US |
| CHARLES SCHWAB CO INC 0164 | ATTN CHRISTINA YOUNG | 2423 E LINCOLN DRIVE | | PHOENIX | AZ | 85016 1215 | US |
| CHARLES SCHWAB CO INC 0164 | ATTN JANA TONGSON OR PROXY MGR | 2423 EAST LINCOLN DRIVE PHXPEAK 01 | 1B571A | PHOENIX | AZ | 85016 | US |
| CIBC WORLD MARKETS INC CDS 5030 | ATTN NICASTRO JERRY OR PROXY MGR | 161 BAY ST 10TH FL | | TORONTO | ON | M5J 258 | CA |
| CIBC WORLD MARKETS INC CDS 5030 | ATTN REED JON | CANADIAN IMPERIAL BANK OF COMMERCE | 22 FRONT ST W 7TH FL ATTN CORP ACT | TORONTO | ON | M5J 2W5 | CA |
| CIBC WORLD MARKETS INC CDS 5030 | ATTN HENRY H LIANG | 22 FRONT ST W | 7TH FLOOR | TORONTO | ON | M5J 2W5 | CA |
| CIT SECLLC 8430 | ATTN KEVIN NEWSTEAD | 131 SOUTH DEARBORN STREET | 35TH FLOOR | CHICAGO | IL | 60603 | US |

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| CITIBANK N A 0908 | ATTN PAUL WATTERS | 3801 CITIBANK CENTER | B 3RD FLOOR ZONE 12 | TAMPA | FL | 33610 | US |
| CITIBANK N A 0908 | ATTN CAROLYN TREBUS OR PROXY MGR | 3800 CITIBANK CENTER B3 12 | | TAMPA | FL | 33610 | US |
| CITIGROUP GLOB MRKETS INC 0418 0505 | ATTN ROSE MARIE YODICE OR PROXY MGR | 388 GREENWHICH STREET 11TH FLOOR | | NEW YORK | NY | 10013 | US |
| CLEARSTREAM BANKING AG 2000 | ATTN PROXY DEPT | 4 CHASE MICROTECH CENTER | | BROOKLYN | NY | 11245 | US |
| COMERICA BANK 2108 | ATTN LATASHA ELLIS OR PROXY MGR | 411 WEST LAFAYETTE | | DETROIT | MI | 48226 | US |
| COMERICA BANK 2108 | ATTN LEWIS WISOTSKY OR PROXY MGR | 411 WEST LAFAYETTE MAIL CODE 3530 | | DETROIT | MI | 48226 | US |
| COMMERCE BANK N A 2170 | ATTN CINDY LAWRENCE OR PROXY MGR | 922 WALNUT STREET | | KANSAS CITY | MO | 64106 | US |
| COR LLC 0052 | ATTN CORPORATE ACTION | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC 0052 | ATTN LUKE HOLLAND | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC 0052 | ATTN ANH MECHALS | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| COR LLC 0052 | ATTN ISSUER SERVICES | 1299 FARNAM STREET | SUITE 800 | OMAHA | NC | 68102 | US |
| COR LLC 0052 | ATTN AMBRA MOORE OR PROXY MGR | 1299 FARNAM STREET | SUITE 800 | OMAHA | NE | 68102 | US |
| CREDIT SUISSE SECURITIES 0355 | ATTN ISSUER SERVICES | C O BROADRIDGE | 51 MERCEDES WAY | EDGEWOOD | NY | 11717 | US |
| CREDIT SUISSE SECURITIES 0355 | ATTN ANTHONY MILO | 7033 LOUIS STEVENS DRIVE | GLOBAL PROXY SERVICES | RESEARCH TRIANGLE PARK | NC | 27560 | US |
| CREDIT SUISSE SECURITIES 0355 | ATTN ASHWINEE SAWH OR PROXY MGR | 11 MADISON AVENUE | 23RD FLOOR | NEW YORK | NY | 10010 | US |
| D A DAVIDSON CO 0361 | ATTN RITA LINSKEY OR PROXY MGR | 8 THIRD STREET NORTH P O BOX 5015 | | GREAT FALLS | MT | 59403 | US |
| DAVENPORT COMPANY LLC 0715 | ATTN KIM NIEDING OR PROXY MGR | 901 EAST CARY ST 11TH FLOOR | | RICHMOND | VA | 23219 | US |
| DEUTSCHE BNK SECURITIES INC 573 | ATTN MICHAEL GARDINER | 199 BAY STREET SUITE 4700 | PO BOX 263 COMMERCE COURT | TORONTO | ON | M5L 1E9 | CA |
| DEUTSCHE BNK SECURITIES INC 573 | ATTN ERIC HERBST | 5021 GATE PARKWAY SUITE | | JACKSONVILLE | FL | 32256 | US |
| DEUTSCHE BNK SECURITIES INC 573 | ATTN SARA BATTEN | 5022 GATE PARKWAY SUITE 100 | | JACKSONVILLE | FL | 32256 | US |
| DEUTSCHE BNK SECURITIES INC 573 | ATTN ASHLEY RICHEY OR PROXY MGR | 5022 GATE PARKWAY SUITE 100 | | JACKSONVILLE | FL | 32256 | US |
| E TRANSACTION CLEARING 0873 | ATTN KEVIN MURPHY | 660 S FIGUEROA STREET | SUITE 1450 | LOS ANGELES | CA | 90017 | US |
| E TRANSACTION CLEARING 0873 | ATTN JANE BUHAIN OR PROXY MGR | 660 S FIGUEROA STREET SUITE 1450 | | LOS ANGELES | CA | 90017 | US |
| E TRADE CLEARING LLC 0385 | ATTN VICTOR LAU OR PROXY MGR | 34 EXCHANGE PLACE | PLAZA II | JERSEY CITY | NJ | 07311 | US |
| EDWARD D JONES CO 0057 | ATTN ELIZABETH ROLWES | 201 PROGRESS PARKWAY | | MARYLAND HEIGHTS | MO | 63043 3042 | US |
| EDWARD D JONES CO 0057 | ATTN A J MAYTAS OR PROXY MGR | CORPORATE ACTIONS DISTRIBUTION | 12555 MANCHESTER ROAD | ST LOUIS | MO | 63141 | US |
| FIDUCIARY TRUST COMP OF BOSTON 2126 | ATTN BRAD FINNIGAN OR PROXY MGR | 175 FEDERAL STREET | | BOSTON | MA | 02110 | US |
| FIDUCIARY TRUST COMP OF BOSTON 2126 | ATTN JERRY KRALL OR PROXY MGR | 175 FEDERAL STREET | | BOSTON | MA | 02110 | US |
| FIFTH THIRD BANK THE 2116 | ATTN LANCE WELLS | 5001 KINGSLEY DRIVE | MAIL DROP 1MOB2D | CINCINNATI | OH | 45227 | US |
| FIFTH THIRD BANK THE 2116 | ATTN CARRIE POTTER OR PROXY MGR | 5001 KINGSLEY DRIVE MAIL DRP 1M0B2D | | CINCINNATI | OH | 45227 | US |
| FIRST CLEARING LLC 0141 | ATTN PROXY DEPARTMENT | 2801 MARKET STREET | H0006 08N | ST LOUIS | MO | 63103 | US |
| FIRST CLEARING LLC 0141 | ATTN FINESSA ROSSON OR PROXY MGR | ONE NORTH JEFFERSON STREET 9 F | | ST LOUIS | MO | 63103 | US |
| FOLIO FN INVESTMENTS INC 0728 | ATTN ASHLEY THEOBALD OR PROXY MGR | 8180 GREENSBORO DRIVE 8TH FLOOR | | MCLEAN | VA | 22102 | US |
| FORTIS CLEARING AMERI LLC 0695 0396 | ATTN KIM VILARA | 175 W JACKSON BLVD SUITE 400 | | CHICAGO | IL | 60605 | US |
| GOLDMAN SACHS CO 0005 | ATTN DEVIN GEIMAN OR PROXY MGR | 30 HUDSON STREET PROXY DEPARTMENT | | JERSEY CITY | NJ | 07302 | US |
| GOLDMAN SACHS CO 0005 | ATTN VANESSA CAMARDO | 30 HUDSON ST | | JERSEY CITY | NJ | 07302 0000 | US |
| GOLDMAN SACHS INTERNATIONAL 5208 | ATTN DEVIN GEIMAN OR PROXY MGR | 30 HUDSON STREET PROXY DEPARTMENT | | JERSEY CITY | NJ | 07302 | US |
| HSBC CLEAR 8396 | ATTN BARBARA SKELLY | 545 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| INGALLS SNYDER L L C 0124 | ATTN LES BIANCO OR PROXY MGR | 1325 AVENUE OF THE AMERICAS | | NEW YORK | NY | 10019 | US |
| INTERACTIVE BROKERS 0017 0534 | ATTN KARIN MCCARTHY | 8 GREENWICH OFFICE PARK | | GREENWICH | CT | 06831 | US |
| INTERACTIVE BROKERS 0017 0534 | ATTN KARIN MCCARTHY | 8 GREENWICH OFFICE PARK 2ND FLOOR | | GREENWICH | CT | 06831 | US |
| INTERACTIVE BROKERS 0017 0534 | ATTN KARIN MCCARTHY | 2 Pickwick Plaza 2nd Floor | | GREENWICH | CT | 06830 0000 | US |
| INTL FCSTNE IN STRNE AGE LCH IN 750 | ATTN KEN SIMPSON OR PROXY MGR | 2 PERIMETER PARK SOUTH STE 100 W | | BIRMINGHAM | AL | 35243 | US |
| J P MORGAN CLEARING CORP 0352 | ATTN BRODERICK WALKER OR PROXY MGR | DEPT C CASHIERS DEPT ONE METROTECH | CENTER NORTH REORG DEPT 4TH FLOOR | BROOKLYN | NY | 11201 3862 | US |
| J P MORGAN SECURITIES INC 0187 | ATTN MICHAEL PELLEGRINO | 500 STANTON CHRISTIANA ROAD | CORP ACTIONS 3RD FL | NEWARK | DE | 19713 2107 | US |
| J P MORGAN SECURITIES INC 0187 | ATTN JOHN HALLORAN OR PROXY MGR | 500 STANTON CHRISTIANA ROAD | CORP ACTIONS 3RD FL | NEWARK | DE | 19713 2107 | US |
| JANNEY MONTGOMERY SCOTT INC 0374 | ATTN BOB MARTIN OR PROXY MGR | 1801 MARKET STREET 9TH FLOOR | | PHILADELPHIA | PA | 19103 1675 | US |
| JEFFERIES COMPANY INC 0019 | ATTN ROBERT MARANZANO | 34 EXCHANGE PL | | JERSEY CITY | NJ | 07311 | US |
| JEFFERIES COMPANY INC 0019 | ATTN RAY DESOUZA OR PROXY MGR | HARBORSIDE FINANCIAL CENTER 705 | PLAZA 3 | JERSEY CITY | NJ | 07311 | US |

Exhibit P

Unimpaired Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| JMS LLC 0374 | ATTN MARK F GRESS | C O MEDIANT COMMUNICATIONS INC | 200 REGENCY FOREST DRIVE | CARY | NC | 27518 | US |
| JPMC EURO 1970 | ATTN PROXY DEPT | 4 METROTECH CENTER 3RD FLOOR | | BROOKLYN | NY | 11245 | US |
| JPMORGAN CHASE BANK N A 0902 | ATTN PROXY MGR | PARADIGM B WING FLOOR 6 | MINDSPACE MALAD W | MUMBAI | INDIA | 400 064 I00000 | IN |
| JPMORGAN CHASE BANK N A TRUST 2424 | ATTN JOHN P FAY | 500 STANTON CHRISTIANA ROAD OPS 4 | FLOOR 03 | NEWARK | DE | 19713 2107 | US |
| JPMORGAN CHASE BANK N A TRUST 2424 | ATTN DARRIN NELSON OR PROXY MGR | 14201 DALLAS PARKWAY | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK NA 0902 | ATTN SACHIN GOYAL | 500 STANTON CHRISTIANA ROAD OPS 4 | FLOOR 02 | NEWARK | DE | 19713 2107 | US |
| JPMORGAN CHASE BANK NA 0902 | ATTN JACOB BACK OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK NA 0902 | ATTN ARMANDO MORALES OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMORGAN CHASE BANK NA 0902 | ATTN MARVIN KINES OR PROXY MGR | 14201 DALLAS PARKWAY 12TH FLOOR | | DALLAS | TX | 75254 | US |
| JPMS JPMC 0352 | ATTN JOHN FAY | 500 STANTON CHRISTIANA ROAD OPS 4 | FLOOR 03 | NEWARK | DE | 19713 2107 | US |
| KEYBANK NATIONAL ASSOCIATION 2205 | ATTN ADAM BORYENACE OR PROXY MGR | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| KEYBANK NATIONAL ASSOCIATION 2205 | ATTN WILLIAM WEBBER | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| KEYBANK NATIONAL ASSOCIATION 2205 | ATTN SCOTT MACDONALD | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| KEYBANK NATIONAL ASSOCIATION 2205 | ATTN KAREN BEDNARSKI OR PROXY MGR | 4900 TIEDEMAN ROAD | | BROOKLYN | OH | 44144 | US |
| LPL FINANCIAL CORPORATION 0075 | Attn CORPARARTE ACTION DEPT | 1055 LPL WAY | | FORT MILL | SC | 29715 | US |
| LPL FINANCIAL CORPORATION 0075 | ATTN KRISTIN KENNEDY | 9785 TOWNE CENTER DRIVE | | SAN DIEGO | CA | 92121 1968 | US |
| LPL FINANCIAL CORPORATION 0075 | ATTN MARTHA LANG | 4828 PARKWAY PLAZA BLVD | | CHARLOTTE | NC | 28217 | US |
| LPL FINANCIAL CORPORATION 0075 | ATTN CORPORATE ACTIONS | 4707 EXECUTIVE DRIVE | | SAN DIEGO | CA | 92121 | US |
| MANUFACTURERS AND TRADERS 0990 | ATTN TONY LAGAMBINA | ONE M T PLAZA 8TH FLOOR | | BUFFALO | NY | 14203 | US |
| MANUFACTURERS AND TRADERS 0990 | ATTN DON SCHMIDT OR PROXY MGR | ONE M T PLAZA 8TH FLOOR | | BUFFALO | NY | 14240 | US |
| MERRILL LYNCH 5143 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| MERRILL LYNCH 5198 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| MITSUBISHI UFJ TRUST 2932 | ATTN RICHARD WENSHOSKI OR PROXY MGR | 420 FIFTH AVENUE 6TH FLOOR | | NEW YORK | NY | 10018 | US |
| MORGAN STANLEY | ATTN MS PROXY DEPT | 1300 THAMES STREET WHARF | | BALTIMORE | MD | 21231 | US |
| MORGAN STANLY SMTH BARNEY LLC 015 | ATTN JOHN BARRY OR PROXY MGR | 1300 THAMES STREET | 6TH FLOOR | BALTIMORE | MD | 21231 | US |
| MORGAN STANLY SMTH BARNEY LLC 015 | ATTN PROXY Reorg MGR | 1 New York Plaza | 41st FLOOR | NEW YORK | NY | 10004 | US |
| MRRILL LYNH PIERCE FENER 161 8862 | ATTN EARL WEEKS OR PROXY MGR | 4804 DEER LAKE DR E | | JACKSONVILLE | FL | 32246 | US |
| NATIONAL FINANCIAL SERV LLC 0226 | ATTN PROXY MANAGER | 499 WASHINGTON BLVD 5TH FL | | JERSEY CITY | NJ | 07310 | US |
| NATIONAL FINANCIAL SERV LLC 0226 | ATTN JOANNE PADARATHSINGH | 499 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| NATIONAL FINANCIAL SERV LLC 0226 | ATTN SEAN COLE OR PROXY MGR | 499 WASHINGTON BLVD | | JERSEY CITY | NJ | 07310 | US |
| NBCN INC CDS 5008 | ATTN GESTION DE INFO TR 5609 1 | 1010 RUE DE LA GAUCHETIERE | OUEST 17e étage | MONTREAL | QC | H3B 5J2 | CA |
| NOMURA SECURITIES 0180 7507 7584 | ATTN ADRIAN ROCCO | 309 WEST 49TH STREET | 10TH FLOOR | NEW YORK | NY | 10019 7316 | US |
| OPPENHEIMER CO INC 0571 0303 | ATTN OSCAR MAZARIO OR PROXY MGR | 85 BROAD STREET 4TH FL | | NEW YORK | NY | 10004 | US |
| PENSON FINANCIAL SERVICES | ATTN BILIANA STOIMENOVA | 1700 PACIFIC AVENUE SUITE 1400 | | DALLAS | TX | 75201 | US |
| PERSHING LLC 0443 | ATTN JOSEPH LAVARA | ONE PERSHING PLAZA | | JERSEY CITY | NJ | 07399 | US |
| PERSHING LLC 0443 | ATTN AL HERNANDEZ OR PROXY MGR | SECURITIES CORPORATION | 1 PERSHING PLAZA 7TH FLOOR REORG | JERSEY CITY | NJ | 07399 | US |
| PNC BANK NATIONAL ASSOCIATION 2616 | ATTN JUANITA NICHOLS | 8800 TINICUM BLVD | MAILSTOP F6 F266 02 2 | PHILADELPHIA | PA | 19153 | US |
| PNC BANK NATIONAL ASSOCIATION 2616 | ATTN EILEEN BLAKE OR PROXY MGR | 8800 TINICUM BLVDT MS F6 F266 02 2 | | PHILADELPHIA | PA | 19153 | US |
| PRIMEVEST 0701 | ATTN ANGELA HANDELAND OR PROXY MGR | 400 1ST STREET SOUTH SUITE 300 ST | | CLOUD | MN | 56301 | US |
| PRIMEVEST 0701 | ATTN MARK SCHOUVILLER OR PROXY MGR | 400 1ST STREET SOUTH SUITE 300 ST | | CLOUD | MN | 56301 | US |
| RAYMOND JAMES ASSOCIATES INC 0725 | ATTN ROBERTA GREEN | 880 CARILION PARKWAY | | ST PETERSBURG | FL | 33716 | US |
| RAYMOND JAMES ASSOCIATES INC 0725 | ATTN ROBERTA GREEN OR PROXY MGR | 880 CARILION PARKWAY TOWER 2 | 4TH FLOOR | ST PETERSBURG | FL | 33716 | US |
| RBC CAPITAL MARKET CORPORATION 0235 | ATTN STEVE SCHAFER | 60 S 6TH ST P09 | | MINNEAPOLIS | MN | 55402 4400 | US |
| RBC CAPITAL MARKET CORPORATION 0235 | ATTN STEVE SCHAFER OR PROXY MGR | 510 MARQUETTE AVE SOUTH | | MINNEAPOLIS | MN | 55402 | US |
| RBC DOMINION CDS 5002 | ATTN SHAREHOLDER SERVICES | 180 WELLINGTON ST W 9TH FLOOR | | TORONTO | ON | M5J 0C2 | CA |
| RBC DOMINION CDS 5002 | ATTN KAREN OLIVERES | 200 BAY STREET 6TH FLOOR | ROYAL BANK PLAZA NORTH TOWER | TORONTO | ON | M5J 2W7 | CA |
| RBC INVESTOR SERVICES 0901 | ATTN EMMA SATTAR OR PROXY MGR | 155 WELLINGTON ST W 3RD FLOOR | | TORONTO | ON | M5V 3L3 | CA |
| RBS SECURITIES INC OCC CUST 0261 | ATTN BRYAN BURNS OR PROXY MGR | 600 WASHINGTON BOULEVARD | | STAMFORD | CT | 06901 | US |
| RELIANCE TRUST COMPANY 5409 | ATTN JULIE MCGUINESS | 1100 ABERNATHY ROAD NE | SUITE 400 | ATLANTA | GA | 30328 | US |

# Exhibit P

Unimpaired Nominees Service List

Served via Overnight or Next Day Business Service

| NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|
| RELIANCE TRUST COMPANY 5409 | ATTN JULIE MCGUINESS | 1100 ABERNATHY ROAD NE | SUITE 400 | ATLANTA | GA | 30328 | US |
| RIDGE CLEARING 0158 | ATTN MATTHEW FREIFELD OR PROXY MGR | 1981 MARCUS AVENUE 1ST FLOOR | | LAKE SUCCESS | NY | 11042 | US |
| SCOTIA TAXABLE ACCO 4816 | ATTN LETTY ECHEVARRIA OR PROXY MGR | 23RD FL 40 KING STREET | WEST SCOTIA PLAZA | TORONTO | ON | M5H 1H1 | CA |
| SEI PRIVATE TRUST COMPANY 2039 2663 | ATTN ERIC GREENE OR PROXY MGR | ONE FREEDOM VALLEY DRIVE | | OAKS | PA | 19456 | US |
| SEI PRIVATE TRUST COMPANY 2039 2663 | ATTN MELVIN ALLISON OR PROXY MGR | ONE FREEDOM VALLEY DRIVE | | OAKS | PA | 19456 | US |
| SG AMERICAS SECURITIES LLC 0286 | ATTN CHARLES HUGHES OR PROXY MGR | 245 PARK AVE | | NEW YORK | NY | 10167 | US |
| SOUTHWEST SECURITIES INC 0279 | ATTN RHONDA JACKSON | 1201 ELM STREET SUITE 3500 | | DALLAS | TX | 75270 | US |
| SOUTHWEST SECURITIES INC 0279 | ATTN CHRISTINA FINZEN OR PROXY MGR | 1201 ELM STREET SUITE 3700 | | DALLAS | TX | 75270 | US |
| SSB BLACKROCK TRUST 2767 | ATTN TRINA ESTREMERA OR PROXY MGR | 1776 HERITAGE DRIVE | | NORTH QUINCY | MA | 02171 | US |
| SSB IBT BGI 2767 | ATTN TOM BRODERICK OR PROXY MGR | 1776 HERITAGE DRIVE NORTH | | QUINCY | MA | 02171 | US |
| STATE STREET 0997 | ATTN CHRISTINE SULLIVAN | 1776 HERITAGE DR | | NORTH QUINCY | MA | 02171 | US |
| STATE STREET 0997 | ATTN MIKE FEELEY ROB RAY OR PRX MGR | JAB5E 1776 HERITAGE DRIVE NORTH | CORP ACTIONS | QUINCY | MA | 02171 | US |
| STERNE AGEE LEACH INC 0750 | ATTN JAMES MEZRANO | 2 PERIMETER PARK | SUITE 100W | BIRMINGHAM | AL | 35209 | US |
| STERNE AGEE LEACH INC 0750 | ATTN WENDY FLETCHER OR PROXY MGR | 813 SHADES CREEK PARKWY STE 100 B | | BIRMINGHAM | AL | 35209 | US |
| STIFEL NICOLAUS CO 0793 | ATTN CHRIS WIEGAND | C O MEDIANT COMMUNICATIONS INC | 200 REGENCY FOREST DRIVE | CARY | NC | 27518 | US |
| STIFEL NICOLAUS CO 0793 | ATTN CHRIS WIEGAND OR PROXY MGR | 501 N BROADWAY 7TH FL STCK REC DEPT | | ST LOUIS | MO | 63102 | US |
| STOCKCROSS FINANCIAL 0445 | ATTN DIANE TOBEY | 77 SUMMER STREET | | BOSTON | MA | 02110 | US |
| STOCKCROSS FINANCIAL 0445 | ATTN ELEANOR PIMENTEL OR PROXY MGR | 77 SUMMER STREET 2ND FLOOR | | BOSTON | MA | 02210 | US |
| TD AMERITRADE CLEARING INC 0188 | ATTN MANDI FOSTER | 1005 N AMERITRADE PLACE | | BELLEVUE | NE | 68005 | US |
| TD AMERITRADE CLEARING INC 0188 | ATTN GARY SWAIN OR PROXY MGR | 1005 AMERITRADE PLACE | | BELLEVUE | NE | 68005 | US |
| TD WATERHOUSE CANADA INC CDS 5036 | ATTN YOUSEF AHMED | 77 BLOOR STREET WEST | 3RD FLOOR | TORONTO | ON | M4Y 2T1 | CA |
| TD WATERHOUSE CANADA INC CDS 5036 | ATTN PROXY MANAGER | 77 BLOOR STREET WEST 3RD FLOOR | | TORONTO | ON | M5S 1M2 | CA |
| TEXAS TREASURY SAFEKEEPING 2622 | ATTN JANIE DOMINGUEZ OR PROXY MGR | 208 E 10TH STREET ROOM 410 | | AUSTIN | TX | 78701 | US |
| THE BNK OF NY MELLON 0901 2510 2209 | ATTN JENNIFER MAY | 525 WILLIAM PENN PLACE STE 153 0400 | | PITTSBURGH | PA | 15259 | US |
| THE NORTHERN TRUST COMPANY 2669 | ATTN ANDREW LUSSEN CAPIT STRUCT C1N | 801 S CANAL STREET | | CHICAGO | IL | 60607 | US |
| THE NORTHERN TRUST COMPANY 2669 | ATTN JOSEPH RAMPP | 2099 GAITHER ROAD | | ROCKVILLE | MD | 20850 | US |
| THE NORTHERN TRUST COMPANY 2669 | ATTN ROBERT VALENTIN OR PROXY MGR | 801 S CANAL STREET REORG DEPT | FLOOR C1N | CHICAGO | IL | 60607 | US |
| U S BANCORP INVESTMENTS INC 0280 | ATTN KATHY DABRUZZI OR PROXY MGR | 60 LIVINGSTON AVE EP MN WN2H | | ST PAUL | MN | 55107 1419 | US |
| U S BANK N A 2803 | ATTN STEPHANIE KAPTA | 1555 N RIVERCENTER DRIVE SUITE 302 | | MILWAUKEE | WI | 53212 | US |
| U S BANK N A 2803 | ATTN PAUL KUXHAUS OR PROXY MGR | 1555 N RIVER CENTER DRIVE SUITE 302 | | MILWAUKEE | WI | 53212 | US |
| UBS AG STAMFORD UBS AG LONDON 2507 | ATTN JOSEPH POZOLANTE OR PROXY MGR | 315 DEADERICK STREET | | NASHVILLE | TN | 37238 | US |
| UBS FINANCIAL SERVICES LLC 0221 | ATTN JANE FLOOD OR PROXY MGR | 1000 HARBOR BLVD | | WEEHAWKEN | NJ | 07086 | US |
| UBS SECURITIES LLC 0642 | ATTN GREG CONTALDI OR PROXY MGR | 1000 HARBOR BLVD | 5TH FLOOR | WEEHAWKEN | NJ | 07086 | US |
| UBS SECURITIES LLC 0642 | ATTN MICHAEL HALLETT | 315 DEADERICK STREET | | NASHVILLE | TN | 37238 | US |
| US BANCORP INVESTMENTS INC 0280 | ATTN KEVIN BROWN | 60 LIVINGSTON AVE | | ST PAUL | MN | 55107 1419 | US |
| US BANCORP INVESTMENTS INC 0280 | ATTN TARA TUCHSCHERER OR PROXY MGR | 60 LIVINGSTON AVENUE EP MN WN2H | | ST PAUL | MN | 55107 1419 | US |
| VANGUARD 0062 | ATTN BEN BEGUIN OR CORPORATE ACTION | 14321 N NORTHSIGHT BLVD | | SCOTTSDALE | AZ | 85260 | US |
| VANGUARD MARKETING CORP 0062 | ATTN CORPORATE ACTIONS | 100 VANGUARD BOULEVARD | | MALVERN | PA | 19355 | US |
| VIRTU FINANCIAL BD LLC (0063) | ATTN: PROXY MGR | 787 Seventh Avenue | | New York | NY | 10019 | US |
| WEDBUSH MORGAN SEC INC 103 | ATTN ALAN FERREIRA OR PROXY MGR | PO BOX 30014 | | LOS ANGELES | CA | 90030 | US |
| WEDBUSH MORGAN SEC INC 103 | ATTN ALAN FERREIRA OR PROXY MGR | 1000 WILSHIRE BLVD | | LOS ANGELES | CA | 90017 | US |
| WELLS FARGO BANK N A 2027 | ATTN LORA DAHLE | 550 SOUTH 4TH STREET | MAC N9310 141 | MINNEAPOLIS | MN | 55415 | US |
| WELLS FARGO BANK N A 2027 | ATTN LAURA DAHLE OR PROXY MGR | 733 MARQUETTE AVENUE MAC N9306 057 | 5TH FLOOR | MINNEAPOLIS | MN | 55479 | US |
| WELLS FARGO BANK N A 2027 | ATTN NICHOLAS DOOLEY OR PROXY MGR | 733 MARQUETTE AVENUE MAC N9306 057 | 5TH FLOOR | MINNEAPOLIS | MN | 55479 | US |
| WELLS FARGO BANK N A SIG 2072 | ATTN SCOTT NELLIS OR PROXY MGR | 1525 W T HARRIS BLVD 1ST FLOOR | | CHARLOTTE | NC | 28262 8522 | US |
| WELLS FARGO SECURITIES LLC 0250 | ATTN SCOTT NELLIS OR PROXY MGR | CORP ACTIONS MAC D109 010 1525 WEST | W T HARRRIS BLVD 1B1 | CHARLOTTE | NC | 28262 | US |
| WELLS FARGO SECURITIES LLC 0250 | ATTN STEVE TURNER OR PROXY MGR | CORP ACTIONS NC0675 1525 WEST | W T HARRIS BLVD 1B1 | CHARLOTTE | NC | 28262 | US |
| WELLS FARGO SECURITIES LLC 0250 | ATTN ROBERT MATERA OR PROXY MGR | CORP ACTIONS NC0675 | 1525 WEST W T HARRIS BLVD 1B1 | CHARLOTTE | NC | 28262 | US |
| WILSON DAVIS CO INC 0283 | ATTN BILL WALKER OR PROXY MGR | 236 SOUTH MAIN STREET | | SALT LAKE CITY | UT | 84101 | US |
| WILSON DAVIS CO INC 0283 | ATTN JANET TAYLOR OR PROXY MGR | 236 SOUTH MAIN STREET | | SALT LAKE CITY | UT | 84101 | US |

**Exhibit Q**

Exhibit Q
Public Entity/Subrogation Claimant Ballot Service List
Served via First Class Mail

| MMLID | NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | ADDRESS 4 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|---|---|
| 7227652 | ACE America Insurance Company, Allianz Global Risks US Insurance Company, Inc., Liberty Internationa | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | Attn: Martin C. Sener | Chicago | IL | 60603 | |
| 7311975 | ACE America Insurance Company, Inc. (by Starr Technical Risks Agency) | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7311975 | ACE America Insurance Company, Inc. (by Starr Technical Risks Agency) | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7311975 | ACE America Insurance Company, Inc. (by Starr Technical Risks Agency) | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7215609 | Ace American Insurance Company, Bankers Standard Insurance Company, Chubb Custom Insurance Company, | TLFI Investments, LLC | Attention: Joshua Peck | 2100 McKinney Avenue | Suite 1500 | Dallas | TX | 75201 | |
| 7215869 | ACE American Insurance, General Security Indemnity Company of Arizona, Starr Surplus Lines Insurance | Denenberg Tuffley, PLLC | Attn: Paul Casetta | 28411 Northwestern Hwy | Suite 600 | Southfield | MI | 48034 | |
| 7209874 | ACWA JPIA | Edward S. Diab, Esq. | Wildfire Recovery Attorneys | 3102 Oak Lawn Ave., Suite 1100 | | Dallas | TX | 75219 | |
| 7209874 | ACWA JPIA | Edward S. Diab, Esq. | Wildfire Recovery Attorneys | 3102 Oak Lawn Ave., Suite 1100 | | Dallas | TX | 75219 | |
| 7209874 | ACWA JPIA | Edward S. Diab, Esq. | Wildfire Recovery Attorneys | 3102 Oak Lawn Ave., Suite 1100 | | Dallas | TX | 75219 | |
| 7238648 | Admiral Insurance Company | Watkins & Letofsky, LLP | Jeffery A. Korinko, Esq. | 2900 S. Harbor Boulevard, Suite 240 | | Santa Ana | CA | 92704 | |
| 7212847 | AIG Europe Limited | Attn: Paul Casetta | Denenberg Tuffley, PLLC | 28411 Northwestern Hwy., Suite 600 | | Southfield | MI | 48034 | |
| 6029979 | AIS Specialty Insurance Company a/s/o Paradise Moose Lodge #2227 | White and Williams LLP | David S. Huberman, Esquire | 1650 Market Street, Suite 1800 | | Philadelphia | PA | 19103 | |
| 5855600 | AIX Specialty Insurance Company a/s/o Paradise Moose Lodge #2227 | White and Williams LLP | David S. Huberman, Esquire | 1650 Market Street, Suite 1800 | | Philadelphia | PA | 19103 | |
| 7158058 | Allianz Global Risks US Insurance Company, Inc | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7158058 | Allianz Global Risks US Insurance Company, Inc | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7232962 | Allianz Global Risks US Insurance Company, Inc. | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7206572 | Allied P&C Insurance Company | Berger Kahn ALC | Nationwide c/o Craig S. Simon | 1 Park Plaza, Suite 340 | | Irvine | CA | 92614 | |
| 5913304 | Allied World Assurance Company, Allied World Assurance Co (US) Inc., Allied World Assurance Company, | Cozen O'Connor | c/o Kevin Bush, Esq and Howard Maycon, Esq | 501 West Broadway | Suite 1610 | San Diego | CA | 92101 | |
| 5913304 | Allied World Assurance Company, Allied World Assurance Co (US) Inc., Allied World Assurance Company, | Cozen O'Connor | c/o Kevin Bush, Esq and Howard Maycon, Esq | 501 West Broadway | Suite 1610 | San Diego | CA | 92101 | |
| 7593530 | Allied World Insurance Company, etc. | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 7337478 | Allied World Insurance Company; Allied World Assurance Company, Ltd; Syndicate 2232, at Lloyd's Lond | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 7209187 | Allmerica Financial Benefit Insurance Co., Citizens Insurance Co. of America, Hanover American Insur | Grotefeld Hoffman LLP | 700 Larkspur Landing Circle | Suite 280 | | Larkspur | CA | 94939 | |
| 7147016 | Allstate Insurance Company | Amanda Stevens, Esq. | 252350 | 7410 Greenhaven Drive, Suite 200 | | Sacramento | CA | 95831 | |
| 7212882 | Allstate Insurance Company | Eric Schroeder | Schroeder Loscotoff LLP | 7410 Greenhaven Drive, Suite 200 | | Sacramento | CA | 95831 | |
| 7217466 | Allstate Insurance Company, Allstate Indemnity Company, Allstate Northbrook Indemnity Company, Encom | Eric Schroeder | Schroeder Loscotoff LLP | 7410 Greenhaven Drive, Suite 200 | | Sacramento | CA | 95831 | |
| 7216196 | American Alternative Insurance Company, American Family Home Insurance Company, The Princeton Excess | Denenberg Tuffley, PLLC | Attn: Paul Casetta | 28411 Northwestern Hwy., Suite 600 | | Southfield | MI | 48034 | |
| 7209691 | American Alternative Insurance Company, The Princeton Excess & Surplus Lines Insurance Company, Amer | Denenberg Tuffley, PLLC | c/o Paul Casetta | 28411 Northwestern Hwy., Suite 600 | | Southfield | MI | 48034 | |
| 5951527 | American Bankers Insurance Company | c/o Berger Kahn | Attn: Craig Simon | 1 Park Plaza | Suite 340 | Irvine | CA | 92614 | |
| 7207062 | American Bankers Insurance Company, Standard Guaranty Insurance Company, American Security Insurance | Assurant | c/o Peter Loughlin VP, Litigation | Legal Dept. 260 Interstate North Circle SE | | Atlanta | GA | 30229 | |
| 7214081 | American Casualty Company, Continental Casualty Company, Continental Insurance Company, National Fir | Cozen O'Connor | c/o Kevin Bush, Esq. | Howard Maycon, Esq. | 501 West Broadyway, Suite 1610 | San Diego | CA | 92101 | |

# Exhibit Q

Public Entity/Subrogation Claimant Ballot Service List
Served via First Class Mail

| MMLID | NAME | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 | ADDRESS 4 | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|---|---|---|
| 7214081 | American Casualty Company, Continental Casualty Company, Continental Insurance Company, National Fir | Cozen O'Connor | c/o Kevin Bush, Esq. | Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | San Diego | CA | 92101 | |
| 7215239 | American Family Home Insurance Company, American Modern Home Insurance Company | Attn: Paul Casetta | Denenberg Tuffley, PLLC | 28411 Northwestern Hwy., Suite 600 | | Southfield | MI | 48034 | |
| 7215239 | American Family Home Insurance Company, American Modern Home Insurance Company | Attn: Paul Casetta | Denenberg Tuffley, PLLC | 28411 Northwestern Hwy., Suite 600 | | Southfield | MI | 48034 | |
| 7212607 | American Guarantee and Liability Insurance Company | Denenberg Tuffley, PLLC | Attn: Paul Casetta | 28411 Northwestern Hwy., Suite 600 | | Southfield | MI | 48034 | |
| 7212607 | American Guarantee and Liability Insurance Company | Denenberg Tuffley, PLLC | Attn: Paul Casetta | 28411 Northwestern Hwy., Suite 600 | | Southfield | MI | 48034 | |
| 7214473 | American International Group, Inc | c/o: Russell L. Lippman | 80 Pine Street | 13th Floor | | New York | NY | 10005 | |
| 7214576 | American International Group, Inc. | c/o: Russel L. Lippman | 80 Pine Street | 13th Floor | | New York | NY | 10005 | |
| 5829960 | American Modern A/S/O Fierro, Gloria | Wilber & Associates | 210 Landmark Dr | | | Normal | IL | 61761 | |
| 7211221 | American Modern Home Insurance Company | Equian | Attn: Eric Ashley | 9390 Bunsen Parkway | | Louisville | KY | 40220 | |
| 7209844 | American National Insurance Company, Certain Underwriters at Lloyd's of London, UK Subscribing to Po | Denenberg Tuffley, PLLC | Attn: Paul Casetta | 28411 Northwestern Hwy | Suite 600 | Southfield | MI | 48034 | |
| 7209844 | American National Insurance Company, Certain Underwriters at Lloyd's of London, UK Subscribing to Po | Denenberg Tuffley, PLLC | Attn: Paul Casetta | 28411 Northwestern Hwy | Suite 600 | Southfield | MI | 48034 | |
| 7162271 | American National Property & Casualty Company, Pacific Property and Casualty Company | Jang & Associates, LLP | Alan J. Jang / Stephanie A. Yee | 1766 Lacassie Avenue, Suite 200 | | Walnut Creek | CA | 94596 | |
| 7216820 | American Reliable Insurance Company | c/o Berger Kahn | Attn: Craig Simon | 1 Park Plaza, Suite 340 | | Irvine | CA | 92614 | |
| 7206761 | American Reliable Insurance Company, United National Insurance Company, Diamond States Insurance Com | Global Indemnity Group | c/o Joan Greco | P.O. Box 532 | | Willow Grove | PA | 19090 | |
| 7216579 | American Zurich Insurance Company, American Guarantee & Liability Insurance Company, et al | Cozen O'Connor | c/o Kevin Bush, Esq. & Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 7216579 | American Zurich Insurance Company, American Guarantee & Liability Insurance Company, et al | Cozen O'Connor | c/o Kevin Bush, Esq. & Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 7210113 | AmGUARD Insurance Company | Grotefeld Hoffmann LLP | 700 Larkspur Landing Circle | Suite 280 | | Larkspur | CA | 94939 | |
| 7210113 | AmGUARD Insurance Company | Grotefeld Hoffmann LLP | 700 Larkspur Landing Circle | Suite 280 | | Larkspur | CA | 94939 | |
| 6030116 | Amguard Insurance Company and Browns Towing. | North American Risk | PO Box 166002 | Claim: KBAMG18110157 | | Altamonte Springs | FL | 32716 | |
| 7206865 | Amica Mutual Insurance Company, Amica Property and Casualty Insurance Company, Amica General Agency, | Attn: Joshua Terry | 100 Amica Way | | | Lincoln | RI | 02865 | |
| 7215985 | AmTrust International, Security National Insurance Company, Sequoia Insurance Company, Technology In | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 7215985 | AmTrust International, Security National Insurance Company, Sequoia Insurance Company, Technology In | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 4945375 | AmTrust Syndicate 1206 | Cozen O'Connor | Kevin Bush, Esq. & Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 4945375 | AmTrust Syndicate 1206 | Cozen O'Connor | Kevin Bush, Esq. & Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 4945375 | AmTrust Syndicate 1206 | Cozen O'Connor | Kevin Bush, Esq. & Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 7156022 | Aon UK, Ltd., fo and on behalf of London Market Placement underwriters identified in the attachment | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7248952 | Aon UK, Ltd., for and on behalf of London Market Placement underwriters identified | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7248952 | Aon UK, Ltd., for and on behalf of London Market Placement underwriters identified | Clausen Miller, PC | Attn: Martin C. Sener | 10 South LaSalle Street | | Chicago | IL | 60603 | |
| 7217136 | Apollo Credit Strategies Master Fund Ltd. | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway | Suite 1610 | San Diego | CA | 92101 | |
| 7217136 | Apollo Credit Strategies Master Fund Ltd. | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway | Suite 1610 | San Diego | CA | 92101 | |
| 7214503 | Arch Insurance Company, Arch Specialty Insurance Company | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |
| 7214503 | Arch Insurance Company, Arch Specialty Insurance Company | Cozen O'Connor | c/o Kevin Bush, Esq. and Howard Maycon, Esq. | 501 West Broadway, Suite 1610 | | San Diego | CA | 92101 | |