# Exhibit A

## Case Resolution Contingency Process

1. **Failure to Meet Required Dates**

<u>Required Dates</u>. The Required Dates Approval Order (as defined below) shall include a requirement that the Confirmation Order[1] be entered by June 30, 2020 (the "**Confirmation Order Required Date**"). The Required Dates Approval Order shall also provide that neither of the following shall constitute a failure to meet the Confirmation Order Required Date: (i) the Confirmation Order contains conditions subsequent related to the entry of, appeal of, or compliance with the CPUC's decision in the PG&E Bankruptcy OII or (ii) the pendency of any appeal, motion for reconsideration or similar relief of the Confirmation Order.

In the event the Confirmation Order Required Date does not occur on or prior to June 30, 2020:

- The Debtors shall be authorized and directed, no later than ten business days after the Confirmation Order Required Date has not been met, to appoint a Chief Transition Officer as described below.

- The Debtors and the Governor's Office shall agree to (or, if no such agreement is reached, the Bankruptcy Court shall order pursuant to the process set forth below) a form of bidding procedures (as ordered by the Bankruptcy Court, the "**Bidding Procedures**"). The Bidding Procedures shall include, among other things, the following:

    - Provisions authorizing and directing the Debtors to conduct the Sale Process (defined below).

    - A schedule that allows for the closing of a sale (or effective date of a plan) no later than September 30, 2021.

    - Provisions that allow the state of California or a bidder supported by the state of California to participate as a bidder in the process.

    - Customary confidentiality and non-disclosure provisions applicable to all bidders or potential bidders participating in the process.

    - Provisions that prohibit extension or modification of any dates set forth in the Bidding Procedures to the extent such extensions or

---

[1] "Confirmation Order" means an order of the Bankruptcy Court on the docket confirming the Plan in form and substance acceptable to the Governor's Office; provided, that if the Bankruptcy Court declines to enter a form of Confirmation Order unless the Debtors modify the Confirmation Order in a manner not acceptable the Governor's Office, the Debtors may modify the Confirmation Order to address the Bankruptcy Court's requirements.

> > modifications would result in a process being unable to be completed by September 30, 2021 or would limit the ability of a bidder supported by the state of California to participate as a bidder in the process, without such extension or modification being consented to by the Governor's Office or approved by the Bankruptcy Court; provided, that in the event such a modification or extension is ordered without the consent of the Governor's Office, exclusivity shall be immediately terminated without further order of the Bankruptcy Court for the state of California, or a party supported by the state of California to sponsor a plan for either or both Debtors.
>
> > - Provisions that permit the Debtors' boards of directors to exercise their fiduciary duties under applicable law in connection with the Sale Process; provided, that (i) the Debtors shall not terminate the Sale Process without the consent of the Governor's Office or approval of the Bankruptcy Court and (ii) in the event the Debtors terminate the Sale Process without the consent of the Governor's Office, exclusivity shall be immediately terminated without further order of the Bankruptcy Court for the state of California or a party supported by the state of California to sponsor a plan for either or both Debtors.
>
> > - Provisions setting forth the responsibilities of the Sale Committee(s) (defined below).
>
> > - Provisions setting forth qualification requirements for bidders, which shall permit the state of California or a party supported by the state of California to qualify as a bidder.
>
> - The Debtors shall be authorized and directed to commence the Sale Process in accordance with the Bidding Procedures.
>
> - The Chief Transition Officer shall remain in place until the completion of the Sale Process.

The Plan Commitments Approval Order and the Confirmation Order shall provide that the Effective Date of the Plan shall occur by September 30, 2020 subject to the following:

- If the Effective Date has not occurred by September 30, 2020, the Debtors shall be authorized and directed, no later than ten business days after such date, to appoint a Chief Transition Officer as described below to the extent not already appointed.

- The Chief Transition Officer shall remain in place until the earlier of (a) completion of the Sale Process, if a Sale Process is required, or (b) the Effective Date of a Plan.

- If the Chief Transition Officer is appointed as required above, then the deadline for the Effective Date shall be extended to December 31, 2020 (the "**Effective Date Required Date**"). If (i) the Chief Transition Officer is not appointed or retained as required above or (ii) the Effective Date has not occurred by the Effective Date Required Date, then the Debtors shall pursue a Sale Process in accordance with the Bidding Procedures.

Chief Transition Officer.

- When a Chief Transition Officer is required to be appointed pursuant to the terms hereof, the Debtors shall select the Operational Observer (defined below) as the Chief Transition Officer, or, if the Operational Observer is not available or able to take on the role, another individual or firm from the following list of candidates: [NAMES].[2]

- The Chief Transition Officer shall have the authority and scope of responsibility set forth on Annex A.

- If the Chief Transition Officer is replaced, the subsequent Chief Transition Officer must also be selected from the list of candidates set forth in this section.

Sale Process.

- No later than ten business days after the date on which a Sale Process is required to be pursued pursuant to the terms hereof, the Debtors shall be authorized and directed to appoint a sale committee (the "**Sale Committee**") of the board of directors of PG&E Corp. (and, to the extent necessary, to appoint a similar committee with the same members and scope of the Utility). The members of such Sale Committee(s) shall be selected by the Debtors' boards of directors and be acceptable to the Governor's Office. The Sale Committee(s) shall oversee the Sale Process and make recommendations to the full boards of directors regarding the Sale Process.

- The Debtors shall appoint a Chief Restructuring Officer to manage the Sale Process and report to the Sale Committee. The Debtors' current Chief

---

[2] The Governor's Office has proposed two names. The Debtors will diligence those names and revert with any questions or concerns.

Restructuring Officer shall fulfill that function; provided, that if the Debtors' current Chief Restructuring Officer is not available to fulfill such function, the Sale Committee shall select a nationally recognized replacement with similar characteristics and experience to fulfill such function.

- If a Sale Process is required, the Debtors shall be authorized and directed to implement the Sale Process in a manner consistent with the Bidding Procedures and on the timeframes set forth therein and subject to the terms hereof.

- Unless the Governor's Office otherwise agrees, the Debtors shall be authorized and directed, no later than ten business days after the later of (i) the date on which a Sale Process is required to be pursued pursuant to the terms hereof, and (ii) the date of entry of the Bidding Procedures, to file a motion (the "**Sale Motion**") with the Bankruptcy Court proposing a sale process that contains provisions allowing qualified bidders to bid for either a purchase of substantially all of the assets or a plan sponsorship proposal that would result in the plan sponsor owning the equity of the Reorganized Debtors or the Reorganized Utility and is consistent with the Bidding Procedures and otherwise in form and substance acceptable to the Governor's Office, the Sale Committee(s), and the Board(s) (the "**Sale Process**").

- The Sale Process shall be conducted in accordance with the Bankruptcy Code and the California Public Utilities Code.

The Debtors shall be authorized and directed to do the following:

- Take all actions necessary to implement this requirement as soon as possible.

- Take all actions necessary to prepare for the Sale Process so that the Sale Process, if required hereunder, can be implemented as and on the timeframes set forth herein.

Operational Observer.

The Required Dates Approval Order shall provide that, upon entry of such Order, the state of California can select an operational observer (the "**Operational Observer**").[3] The Operational Observer shall have the right to observe the Debtors' compliance and progress with respect to natural gas operations and safety and wildfire and other disaster mitigation activities including: vegetation

---

[3] Consider naming the Operational Observer in the document.

management programs; system hardening programs (both electrical infrastructure and microgrid implementation); risk analysis; implementation of mitigation measures (including the use and effectiveness of the emergency operations center and PSPS); public and workforce safety; and programs to assure compliance with any applicable safety and operational metrics. The Operational Observer shall have the authority to observe meetings of the boards of directors (including committee meetings) and management meetings related to performance and safety issues, conduct field visits, interviews and inspections, review documentation related to safety performance, and undertake any other tasks reasonably required in furtherance of its duties.[4] The Operational Observer shall provide periodic reports to the Utility CEO, the Debtors' boards of directors and the Governor's Office. The Operational Observer shall not divulge confidential or proprietary information of the Debtors without the Debtors' consent; provided, that the Debtors shall be deemed to have consented to the disclosure of such information to the Governor's Office and its advisors. The Operational Observer shall keep a record of information shared with the Governor's Office and shall make such information available to the Debtors.

Required Dates Approval Motion

On or prior to March 20, 2020, the Debtors shall file a motion seeking approval of the foregoing procedure, which motion and related form of order shall be in form and substance acceptable to the Governor's Office (the "**Required Dates Approval Motion**"). The Debtors shall request expedited hearing of the Required Dates Approval Motion on a schedule acceptable to the Governor's Office. The Order approving the Required Dates Approval Motion, which shall be in form and substance acceptable to the Governor's Office, shall be referred to as the "**Required Dates Approval Order**".

---

[4] The Reorganized Debtors may limit the Operational Observer's attendance at meetings or access to information based on a claim of privilege only if, in the opinion of counsel, such restriction is necessary to preserve the privilege.

# ANNEX A

# SCOPE OF CHIEF TRANSITION OFFICER

The Chief Transition Officer shall report to the Utility CEO and shall provide updates to the SNO Committees (as applicable) and the Debtors' boards of directors with regard to safety and operational matters.

Subject to the direction and oversight as set forth above, the Chief Transition Officer's scope of responsibility shall include the following:

1. Responsibility for overseeing, and managing to the extent necessary, PG&E's progress respect to vegetation management programs, system hardening programs (both electrical infrastructure and microgrid implementation), risk analysis, and other issues that impact public safety.

2. Monitoring the use of the Emergency Operations Center and PSPS.

3. Responsibility for overseeing, and managing to the extent necessary, financial reporting related to issues that impact public safety and the public interest.

4. Interfacing with the CRO and the CSO.

5. Responsibility for overseeing, and managing to the extent necessary, PG&E's progress toward and compliance with its Safety and Operational Metrics (to the extent the CPUC has approved such Metrics or PG&E has adopted or proposed such Metrics).

6. Providing periodic (and no less than monthly) reporting to the CPUC.

The Chief Transition Officer's authority does not alter the authority, responsibility, or accountability of other members of management except to the extent of the scope specifically delegated to the Chief Transition Officer. Notwithstanding the foregoing, the Chief Transition Officer shall not be authorized to dispose of the assets, business or stock of the Debtors. The Chief Transition Officer shall not divulge confidential or proprietary information of the Debtors without the Debtors' consent; provided, that the Debtors shall be deemed to have consented to the disclosure of such information to the Governor's Office and its advisors. The Chief Transition Officer shall keep a record of information shared with the Governor's Office and shall make such information available to the Debtors.