QUENTIN L. KOPP (SBN _25070)
DANIEL S. MASON (SBN 54065)
THOMAS W. JACKSON (SBN 107608)
FURTH SALEM MASON & LI LLP
640 Third Street, 2nd Floor
Santa Rosa, CA  95404-4445
Telephone: (707) 244-9422
Email:  quentinlkopp@gmail.com
        dmason@fsmllaw.com
        tjackson@fsmllaw.com

JEREMIAH F. HALLISEY (SBN 4001)
KAREN J. CHEDISTER (SBN 99473)
HALLISEY AND JOHNSON PC
465 California St, Ste 405
San Francisco, CA  94104
Telephone: (415) 433—5300
Email:  jfhallisey@h-jlaw.com

FRANCIS O. SCARPULLA (SBN 41059)
PATRICK B. CLAYTON (SBN 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Tel: (415) 788-7210
Email:  fos@scarpullalaw.com
        pbc@scarpullalaw.com

*[Attorneys for clients as listed on signature page]*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-30088 (DM) |
| PG&E CORPORATION, | Chapter 11 |
| - and - | (Lead Case) |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Jointly Administered) |
| Debtors. | **JOINDER OF CERTAIN FIRE VICTIMS IN WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019** |

# I

## INTRODUCTION

This Joinder is submitted by a substantial group of fire victims who suffered injuries and were damaged by the PG&E fires in Sonoma, Napa, Mendocino and Butte Counties both for themselves and as advocates for all fire victims injured by the 2015, 2017, and 2018 Northern

California wildfires who are considering the settlement offer by PG&E.

## II

### THE PG&E SETTLEMENT IS NOT GOOD FOR FIRE VICTIMS

The settlement proposed by PG&E, which was then negotiated by the Tort Claimants Committee ("TCC"), allegedly as intended to pay fire victims $13.5 billion in consideration. The terms of that settlement are contained in a Restructuring Support Agreement ("RSA") purportedly entered into on or about December 5, 2019, which provides for the $13.5 billion to be paid one-half in cash and one-half in post-bankruptcy PG&E common stock. Pursuant to the RSA, the cash portion is to be paid into a new "Fire Victims' Trust Account" (the "Trust") in three installments -- $5.4 billion on August 29, 2020; $650 million by January 15, 2021 and $700 million by January 15, 2022. The later two payments bear no interest and have questionable security.[1] The stock portion likewise would be paid on August 29, 2020 into the Trust, and then sold over a period of time. At the time the the TCC signed the RSA with PG&E, the real value of the $13.5 billion was less than that amount and has further decreased as the economy declined, and financial markets have been disrupted. It is now time to expose this settlement for what it is – a terrible deal for the fire victims.

We agree with the TCC that PG&E has breached the RSA by making material changes to that document, to which changes the TCC did not agree. As the charts below show, the agreed-upon value of $6.75 billion in PG&E stock does not have that value, so the fire victims are not getting a total of $13.5 billion as promised. See, Declaration of Eric Lowrey, CIRA, In Support of Objection by Certain Fire Victims to Debtors' Motion Pursuant to 11 U.S.C. 105(A) and 502(C) to Establish Amount of Fire Victim Claims for all Purposes of the Chapter 11, I re PG&E Corporation, Civil Case No. 19-05257 (JD), Doc. No. 307 (04/03/20), a copy of which is attached hereto as Exhibit A.

PG&E unilaterally amended its capitalization by reducing equity by $3 billion and increasing its debt-load by more than $3.7 billion than was agreed to with the TCC, thereby

---

[1] The security hinges on a successful IRS ruling that net operating losses ("NOLs") will not be lost if the amount of stock transferred upon exit from bankruptcy creates a change in ownership, which usually places the NOL in jeopardy.

OBJECTION BY CERTAIN FIRE VICTIMS TO CONFIRMATION OF DEBTORS'
MOTION

1    lowering the value of the stock.  Neither the TCC nor any of the fire victims agreed to that

2    increase in debt.

3        Moreover, because of the recent dramatic downturn in the economy due to coronavirus,

4    the value of any post-petition PG&E stock will be greatly reduced.

5        Thus, it is obvious that the value of the consideration to be transferred to the Trust is

6    substantially less than the promised $13.5 billion, and current economic conditions puts the value

7    and timing of that consideration at risk of further reduction and threatens to delay  payment of the

8    cash portion of the settlement consideration.  Forty percent of the cash portion of the

9    consideration – *i.e.*, $5.4 billion – would be paid when PG&E exits bankruptcy which is supposed

10   to be by August 29, 2020.  However, that effective date is problematical due to the Contingency

11   Plan added to the Plan of Reorganization as part of the agreement between PG&E and Governor

12   Newsom's office, which now could extend the time of the first payment to December 31. 2020.

13       Additionally, 10% of the total cash consideration – *i.e.*, $1.35 billion – is deferred without

14   interest until January 15, 2021 ($650 million) and January 15, 2022 ($700 million)[2] and is based

15   on questionable security.  Such deferred "cash" is not cash set aside by PG&E and held for the

16   benefit of the fire victims, but rather this "cash" is yet to be earned by PG&E and is subject to

17   various uncertainties and risks related to PG&E's ability to realize cash benefits from tax

18   attributes as well as any traditional business and credit risks.

19       The other half of the $13.5 billion in consideration – *i.e.*, $6.75 billion – is in common

20   stock in the reorganized PG&E, which currently is worth substantially less than the touted $6.75

21   billion.  This stock will be liquidated in order to provide much-needed cash for the fire victims.

22   However, the sale of this stock will be subject to restrictions on timing of the liquidation by

23   PG&E alone, which restrictions have not been disclosed as yet.  In fact, PG&E has failed to

24   deliver the stock Registration Rights Agreement, that is an important part of the deal, and which

25   impacts the $6.75 billion stock value.  Moreover, because PG&E is not going to be able to pay

26   dividends for 3 years, the market price of this common stock will be negatively affected because

27

28   ---

   [2] Because there is no interest on the two deferred payments, they would need to be discounted by
       about $45 million.

| | |
|---|---|
| 1 | most institutional investors manage funds that are prohibited from acquiring a stock that pays no |
| 2 | dividends. |
| 3 | Eric Lowrey, a Certified Restructuring and Insolvency Advisor, has advised the U.S. |
| 4 | District Court that the true value of the PG&E stock is only $4.85 billion, not the $6.75 billion |
| 5 | PG&E and the proponents of that plan assert.  And Mr. Lowrey has further advised the Court that |
| 6 | there is substantial risk that PG&E will fail to raise the necessary financing to exit bankruptcy on |
| 7 | the timeline contemplated, *i.e*. August 2020.  See, Declaration of Eric Lowrey, CIRA, In Support |
| 8 | of Objection by Certain Fire Victims to Debtors' Motion Pursuant to 11 U.S.C. 105(A) and |
| 9 | 502(C) to Establish Amount of Fire Victim Claims for all Purposes of the Chapter 11, I re PG&E |
| 10 | Corporation, Civil Case No. 19-05257 (JD), Doc. No. 307 (04/03/20), a copy of which is attached |
| 11 | hereto as Exhibit A.  Mr. Lowrey correctly points out that among the subrogation claimants, |
| 12 | unsecured noteholder claimants, and tort victims, everyone receives cash except the victims as |
| 13 | shown below:hereto as Exhibit A.  Mr. Lowrey correctly points out that among the subrogation |
| 14 | claimants, unsecured noteholder claimants, and tort victims, everyone receives cash except the |
| 15 | victims as shown on the next page. |
| 16 | / / / |
| 17 | / / / |
| 18 | / / / |
| 19 | / / / |
| 20 | / / / |
| 21 | / / / |
| 22 | / / / |
| 23 | / / / |
| 24 | / / / |
| 25 | / / / |
| 26 | / / / |
| 27 | / / / |
| 28 | / / / |

JOINDER OF CERTAIN FIRE VICTIMS IN ABRAMS
MOTION

- 4 -

USBC/NDCA NO. 19-30088 (DM)

### Individual Fire Victims the Only Claimant Group to Receive Deferred Cash & Equity

**While every other claimant group is to receive 100% cash or secured debt, 60% of the consideration to be transferred to the Victim Trust is exposed to the risk of diminution of value prior to receipt**

*$Millions*

| CLAIMANT GROUPS | TREATMENT OF CLAIMS | | | TOTAL |
|---|---|---|---|---|
| | Cash / New Debt | Deferred Cash | Equity | |
| Debtor-In-Possession Financing | 2,000 | 0 | 0 | 2,000 |
| Trade Claims and Other Costs | 2,300 | 0 | 0 | 2,300 |
| Prepetition Debt & Accrued Interest | 23,450 | 0 | 0 | 23,450 |
| Subrogated Wildfire Liability Claims | 11,000 | 0 | 0 | 11,000 |
| Public Entities Wildfire Liability Claims | 1,000 | 0 | 0 | 1,000 |
| **Individual Fire Victim Liability Claims** | 5,400 | 1,350 | 6,750 | 13,500 |
| | | | | 53,250 |

- Individual victims are the <u>only claimants to receive at-risk deferred cash and/or equity</u>
- The $1.35 billion of deferred cash and the Fire Victim Equity are exposed to significant risks
  - Fire Victim Equity to be contributed to the Victim Trust currently estimated to be worth approximately $4.85 billion, materially less than $6.75 billion, and it could decline further
  - Significant risk of negative impacts due to current economic downturn, including the potential for the Debtors' earnings forecast to be reduced and reduced liquidity due to customer non-payment
  - Cash tax benefits needed to fund $1.35 billion of deferred cash payments may not be realized
  - Potential future wildfire liability claims made against PG&E would be senior to Victim Equity

Source: Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization.
1) Based on uses of $59.0 billion in PG&E POR, including $1.35 billion in deferred cash for the Victim Trust. Not shown is the $5.0 billion wildfire fund contribution and $0.75 billion of B/S cash.
2) Comprised of $13.875 billion in cash and $9.575 billion in new secured debt. The $9.575 billion of new, secured debt to be senior in priority to deferred cash and equity yet to be contributed to Victim Trust upon PG&E's exit from bankruptcy. Secured debt will also be senior in priority to any future wildfire liability claims filed against PG&E (deferred cash and equity will not be).

It is woefully apparent that this PG&E "new deal" is a bad deal for fire victims, especially when one considers that all other creditors, along with Equity and the Noteholders, are getting all cash payments and stand to make billions of dollars upon PG&E's exit from this Chapter 11 proceeding. The only group of creditors who are at risk of getting less than they deserve are the fire victims – the very individuals who suffered the most from the PG&E-caused wide fires. The vast majority of fire victims, who were not members of any committee and therefore whose voices were not heard, but to whom the TCC nevertheless has a fiduciary obligation to maximize their recoveries, did not agree to take less than the $13.5 billion they were promised they would receive. That is why three members of the TCC have resigned because they cannot support the proposed settlement in such circumstances.

Meanwhile, the proponents of the PG&E settlement are broadcasting to fire victims that the only way to get paid promptly is to vote "Yes" on the PG&E plan. But that representation is

| | |
|---|---|
| 1 | inaccurate and misleading, because it will be years before any payments are made from the Trust |
| 2 | to the fire victims.  Indeed, the statements by the proponents of the PG&E plan that a "No" vote |
| 3 | will result in years of chaos and litigation and the possible breakup of the company is not correct |
| 4 | because there is a viable back-up plan proposed by the Customer-Owned Utility ("C-OU") group, |
| 5 | which would provide the fire victims with $13.5 billion all cash, meet the June 30, 2020 deadline |
| 6 | for joining the wildfire insurance fund, and be paid into the Fire Victims Trust by September 30, |
| 7 | 2020.  See Declaration of Francis O. Scarpulla In Support of Objection to Debtors' Motion, Case |
| 8 | No.: 19-cv-05257-JD, Doc. No.: 306-1, attached hereto as Exhibit B. |

### III

### HOW DID THIS HAPPEN TO FIRE VICTIMS?

It appears to an independent observer that a number of mistakes were made which materially affected the fire victims' settlement.  Initially, it appears that the subrogation claimants (many of whom are hedge funds who purchased such insurance subrogation claims at thirty cents on the dollar) abandoned any meaningful negotiations with the TCC and obtained an $11 billion all-cash deal with the PG&E equity group (also led by a group of hedge funds which would make billions of dollars upon exit from bankruptcy).  Once the subrogation claimants joined PG&E any negotiating strength of the TCC was greatly weakened.

Another mistake was not to engage with the noteholders (possessing trillions of dollars in assets) who apparently were ready, willing and able to offer an all-cash $13.5 billion deal for the fire victims.  While it is common knowledge that a mediation session took place, one wonders why the noteholders' settlement proposal was not accepted, which caused them to join with equity and effectively eliminate all competition for the fire victims' damages amount.[3]  Once that happened, all fire victims were at the mercy of PG&E and Equity, except that the TCC had an automatic RSA withdrawal provision if Governor Newsom rejected PG&E's proposal, as he eventually did.  However, rather than terminate the deal, the TCC agreed to revise the RSA by deleting such automatic withdrawal right. After that revision, the TCC could escape from the

---

[3] When two competitors enter into a contract to the injury of a party, that may be deemed to be a violation of Section 1 of the Sherman Act for which the combining parties can be liable for treble damages.

Case: 19-30088   Doc# 6939   Filed: 04/24/20   Entered: 04/24/20 19:44:19   Page 6 of 29

1    RSA only if its fiduciary obligations required it to withdraw from the PG&E RSA.

2          Now that it is obvious to anyone examining the PG&E "deal" objectively that it is not in

3    the interests of fire victims to approve it, the TCC still has not utilized the fiduciary-out provision

4    of the RSA.

5          We do not propose that this Court scrap the PG&E plan altogether, but rather that it

6    consider how to resolve all of the outstanding issues so that the fire victims receive $13.5 billion

7    as they were promised.

8          One way is for the subrogation claimants, who currently are to receive $11 billion in cash,

9    to contribute $3.7 billion in cash to the fire victims' Trust and take $3.7 billion in stock.  Thus,

10   the fire victims would receive $10.45 billion in cash and $3.05 billion in stock.

11         Then, there are the noteholders who originally offered the fire victims $13.5 billion in

12   cash.  These same noteholders could contribute $3.05 billion in cash to the fire victims and take

13   for themselves an additional $3.05 billion in stock, so that the victims would receive $13.5 billion

14   in cash.

15         Alternatively, or in addition, the noteholders could agree to convert some or all of their

16   debt to equity thereby reducing the debt-load on PG&E and presumably increasing the value of

17   the stock post-bankruptcy.

18         Additionally, there is now a back-up proposal from the C-OU group which would provide

19   the fire victims with an all-cash payment of $13.5 billion and permit PG&E to meet the June 30,

20   2020 wildfire insurance fund requirements of AB1054, with payment of the all-cash $13.5 billion

21   into the Fire Victims Trust by September 30, 2020.  See Declaration of Francis O. Scarpulla In

22   Support of Objection to Debtors' Motion, Case No.: 19-cv-05257-JD, Doc. No.: 306-1.

23   However, the fire victims have not been permitted to even consider that proposal.

24         While it is not known exactly why a group of 13 plaintiffs firms, who allege they

25   represent thousands of fire-victim claims, keep advocating for the obviously-flawed PG&E

26   settlement, one could guess it is because certain law firms may reap hundreds of millions in fees

27   while avoiding a trial of the Tubbs preference cases (which the TCC asked be sent to the San

28   Francisco Superior Court for a jury trial when Cal Fire did not find PG&E at fault for the Tubbs

1 | Fire). After those Tubbs preference cases were before a state-court judge for trials, PG&E and

2 | certain lawyers who represented Tubbs preference clients, and who also had clients on the TCC,

3 | entered into settlement agreements which are to be paid from the Trust – unlike the unliquidated

4 | fire victims' claims which may take years to process and fully pay. The amount of those

5 | settlements, however, are <u>secret</u>. As these settlement amounts are to be paid from the Trust,

6 | PG&E could care less how much the Tubbs plaintiffs were paid in settlements, which are now

7 | liquidated claims and can be paid immediately from the Trust once it is funded. The attorneys can

8 | be expected to seek fees for those settlements. Because of the settlement with PG&E, the Tubbs

9 | claimants also were able to avoid any damages estimation trial, were the District Court Judge was

10 | to rule on the total damages caused by PG&E. As only PG&E could settle the Tubbs preference

11 | lawsuits and avoid an estimation trial, the Tubbs claimants had no incentive to pursue other non-

12 | PG&E settlements, even though at least two of them – the noteholders and, more recently, the

13 | C-OU, both of whom offered fire victims $13.5 billion all cash.

14 |    The proponents of the PG&E plan are inundating their clients as well as all fire victims,

15 | whether represented by them or not, with misinformation. These proponents claim that rejecting

16 | the PG&E plan will not lead to a better deal because PG&E cannot pay out more to the fire

17 | victims and emerge from bankruptcy as a viable utility. This is simply not true, because the

18 | claims of individual wildfire victims are senior in priority to pre-petition equity claims, which

19 | means fire victims will get paid in full before equity. However, as the plan now stands, rather

20 | than equity getting paid last – if at all – it will reap about $5.8 billion under the current plan of

21 | reorganization. So, rather than fight for the fire victims, the lawyers who were supposed to be

22 | protecting fire victims left about $5.8 billion on the table.

23 | **IV**

24 | **CONCLUSION**

25 |    We respectfully submit that this Court should not confirm the PG&E plan, but rather now

26 | order all interested parties to a mediation beginning as soon as possible with the two mediators

27 | who almost had this complex litigation case settled – The Honorable Daniel Weinstein (Ret.) and

28 | Robert Meyer – and allow the parties one week to resolve all outstanding issues and achieve a

JOINDER OF CERTAIN FIRE VICTIMS IN ABRAMS MOTION    - 8 -    USBC/NDCA NO. 19-30088 (DM)

Case: 19-30088  Doc# 6939  Filed: 04/24/20  Entered: 04/24/20 19:44:19  Page 8 of 29

$13.5 billion all cash fund for the fire victims and a plan that can be confirmed.

Dated: April 24, 2020

By: /s/ Quentin L. Kopp
      Quentin L. Kopp

QUENTIN L. KOPP (SBN 25070)
DANIEL S. MASON (SBN 54065)
THOMAS W. JACKSON (SBN 107608)
FURTH SALEM MASON & LI LLP
640 Third Street, 2nd Floor
Santa Rosa, CA 95404-4445
Telephone: (707) 244-9422
Email: quentinlkopp@gmail.com
       dmason@fsmllaw.com
       tjackson@fsmllaw.com

Attorneys for Ken Born, Christine Born, Cathy Ference, William Ference, Allen Goldberg, Robert Johnson, Patricia Goodberg, Paul Goodberg, Terence Redmond, Melissa Redmond, Sonoma Court Shops, Inc., and Rita Godward

By: /s/ Jeremiah F. Hallisey
      Jeremiah F. Hallisey

JEREMIAH F. HALLISEY (SBN 40001)
Hallisey and Johnson, PC
465 California Street, Suite 405
San Francisco, CA 94104-1812
Telephone: (415) 433-5300
Email: jfhallisey@gmail.com

Attorneys for William, Ming, and Fuguan O'Brien; Kye and Michael Heinstein; Clint Reilly; Karen Roberds and Anita Freeman; and William N. Steel

By: /s/ Francis O. Scarpulla
      Francis O. Scarpulla

FRANCIS O. SCARPULLA (SBN 41059)
PATRICK B. CLAYTON (SBN 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: (415) 788-7210
Email: fos@scarpullalaw.com
       pbc@scarpullalaw.com

Attorneys for GER HOSPITALITY, LLC and ADOLFO VERONESE FAMILY

1

## CERTIFICATE OF SERVICE

I, Quentin L. Kopp, declare as follows:

I am a citizen of the United States and over the age of eighteen (18) years and not a party to the within action. My business address is 456 Montgomery Street, 17th Floor, San Francisco, CA 94014.

On April 24, 2020, I served document(s) described as:

**JOINDER OF CERTAIN FIRE VICTIMS IN ABRAMS**

**MOTION**

on the interested parties in this action as follows:

[ ]  BY MAIL: Service was accomplished by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, addressed as set forth above.

[X]  BY E-MAIL/NEF: Service was accomplished through the Notice of Electronic Filing ("NEF") for all parties and counsel who are registered ECF Users and those identified below:

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. This declaration was executed on April 24, 2020 at San Francisco, California.

 __/s/ Quentin L. Kopp_____
 Quentin L. Kopp

# ATTACHMENT A

1   Jeremiah F. Hallisey, Esq. (SBN 40001)
    Karen J. Chedister, Esq. (SBN 99473)
2   HALLISEY & JOHNSON, P.C.
    465 California Street, Suite 405
3   San Francisco, CA 94104
    Tel:    (415) 433-5300
4   Fax:    (415) 230-5792

5   Richard A. Lapping (SBN 107496)
6   TRODELLA & LAPPING, LLP
    540 Pacific Avenue
7   San Francisco, CA  94133-4608
    Telephone: (415) 399-1015
8   Email:  rich@trodellalapping.com

9   Co-Counsel for Creditors
    KAREN ROBERDS and ANITA FREEMAN,
10  for themselves and on behalf of all others similarly,
    situated, WILLIAM N. STEEL, for himself and on
11  behalf of all others similarly situated;
    WILLIAM O'BRIEN, MING O'BRIEN,
12  FUGUAN O'BRIEN; MICHAEL HEINSTEIN,
    KYE HEINSTEIN; CLINTON REILLY,
13  Class Claimant GER HOSPITALITY, LLC,
    and RICHARD CARPENETI
14

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18  | In re:                                    | Civil Case No. 19-05257 (JD)                      |
19  |                                           | Bankruptcy Case No. 19-30088 (DM)                 |
    | PG&E CORPORATION                          |                                                   |
20  |                                           | **DECLARATION OF ERIC LOWREY,**                   |
    |              -and-                        | **CIRA IN SUPPORT OF OBJECTION BY**               |
21  |                                           | **CERTAIN FIRE VICTIMS TO**                       |
    | PACIFIC GAS AND ELECTRIC COMPANY,         | **DEBTORS' MOTION PURSUANT TO 11**                |
22  |                                           | **U.S.C. 105(A) AND 502(C) TO**                   |
    |              Debtors.                     | **ESTABLISH AMOUNT OF FIRE**                      |
23  |                                           | **VICTIM CLAIMS FOR ALL PURPOSES**                |
    |                                           | **OF THE CHAPTER 11 CASES**                       |
24  |                                           | Date:   May 21, 2020                              |
    |                                           | Time:   10:00 a.m.                                |
25  |                                           | Ctrm.:  11                                        |
26  |                                           | Judge:  Hon. James Donato                         |
27

                                               1
    . ──────────────────────────────────────────────────────────────
       DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO
28     DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM
       CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

1      I, ERIC LOWREY, CIRA, declare as follows:

2          1.      I am a restructuring professional with over 15 years of financial and strategic

3   advisory experience, particularly to companies in the power and utilities industry, and am a

4   Certified Restructuring and Insolvency Advisor (CIRA) by the Association of Insolvency &

5   Restructuring Advisors. I have led the day-to-day work on engagements for Jefferies Financial

6   Group, Miller Buckfire & Co., PwC Advisory Services, and New Harbor Incorporated and been a

7   member of the investment banking groups at Deutsche Bank and Barclays. I have advised

8   companies, creditors and other stakeholders on the negotiation and execution of in-court and out-

9   of-court restructurings and issues related to capital structure, financing, liquidity, and valuation,

10  and advised distressed companies, official creditor and equity committees, and investors on

11  restructurings in the consumer, energy, healthcare, and metals and mining industries. Each

12  restructuring engagement on which I advised involved the analysis of detailed financial data and

13  projections, which I conducted and/or oversaw. I have a BA in Economics from Boston College

14  (*Magna Cum Laude*) and an MBA from Columbia University.

15         2.      This Declaration pertains to the Aggregate Fire Victim Consideration to be used to

16  fund the Fire Victim Trust under the Plan, as defined below, for the benefit of all of the individual

17  Fire Victim Claimants and is offered in support of the Objection by Certain Fire Victims to

18  Debtors' Motion Pursuant t 11 U.S.C. 105(A) And 502(C) to Establish Amount of Fire Victim

19  Claims for All Purposes of the Chapter 11 Case.

20         3.      I was asked to review and analyze the Aggregate Fire Victim Consideration to be

21  used to fund the Fire Victim Trust as described in the Disclosure Statement for the Debtors' and

22  Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 17, 2020 (the

23  "Plan"). Pursuant to the Plan filed, the consideration to be used to fund the Fire Victim Trust

24  includes $13.5 billion[1], consisting of $5.4 billion in cash, $1.35 billion in deferred cash, and $6.75

25  billion in common stock of Reorganized PG&E Corp. (the "Fire Victim Equity").

26         4.      I have reviewed numerous documents which constitute or relate to the above-

27  mentioned Plan of Reorganization and the Aggregate Fire Victim Consideration thereunder.

28
---
                                             2
.   DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO
    DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM
    CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

Documents reviewed include, but are not limited to:

- The Disclosure Statement for the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization

- The Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization

- The Supplement to the Disclosure Statement for the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (the "Supplement")

- The Tort Claimants Restructuring Support Agreement (the "Tort Claimant RSA")

- Various news and research reports relating to PG&E Corporation, its bankruptcy proceedings, and the power and utilities industry

5.      As more fully set out in the paragraphs below, my analysis and conclusions are (1) the value of the consideration to be transferred to the Fire Victim Trust is now substantially less than $13.5 billion[(1)]; and (2) the current unprecedented economic conditions put the value and timing of the consideration to be transferred to the Fire Victim Trust at risk of reduction and/or payment delay.   Specifically,

- The funding for the five, primary creditor/claimant groups other than the individual Fire Victim Claimants is 100% cash (Please see **Exhibit A**, which I prepared and lists the respective claimant groups and their settlement amounts). The consideration[(1)] to be transferred to the Victim Trust to satisfy individual Fire Victim Claims is 40% cash, 10% deferred cash and 50% new common stock in the Reorganized PG&E Corp., which exposes the Fire Victim Claimants to significant risk of value reduction prior to receipt.

- The estimated value of the Victim Equity to be transferred to the Victim Trust has fluctuated downward since the Tort Claimants RSA was entered into in December 2019 (See **Exhibit B**, which I prepared and sets out a summary of the change in value). The amount of $6.75 billion as described in the TCC Claimants RSA is a component in a formula used to calculate the percentage of the common stock in Reorganized PG&E Corporation's equity to be contributed to the Fire Victim Trust, subject to a minimum of

3

.    DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

20.9%. This formula contemplates valuing the common stock of Reorganized PG&E as a function of the Normalized Net Income for 2021, as defined in the Plan, multiplied by 14.9. Using the Debtors forecast of $2.04 billion for 2021 non-GAAP Core Earnings included in the Debtors' updated financial projections included (the "Supplement") would imply an equity value of $30.4 billion of which $6.75 billion would represent 22.2%.  To estimate what this may be worth one could use Edison International (NYSE: EIX) as a proxy for how the equity market may value PG&E's common equity.

- Currently, EIX trades at 10.7 multiplied by the consensus 2021 earnings estimates for EIX[2]. Multiplying the 2021 non-GAAP Core Earnings of $2.04 billion by the same multiple of 10.7 would imply an equity market capitalization of approximately $21.8 billion for Reorganized PG&E, implying a value of approximately $4.85 billion for the Victim Equity to be contributed to the Fire Victim Trust. However, this value is still at significant risk of further decline in the wake of the COVID-19 pandemic as utility companies face the potential to underperform forecasts in the near-term and other potential financial challenges as a result, such as reduced liquidity due to "no disconnect" orders and/or agreements.

- Additionally, there are a number of PG&E-specific issues that may cause the market to value Reorganized PG&E at lower multiple than the one at which Edison International trades. One of the most notable of these issues is that PG&E has agreed not to pay dividends, an attribute typically sought by utility investors, for a minimum of three years.

- The $1.35 billion of deferred cash payments to the Fire Victim Trust (to be funded through an as of yet uncertain securitization and/or by the realization of cash tax benefits resulting from tax attributes of the Debtors) is exposed to several risks.  Those risks include the potential for a change of control as part of the Debtors' equity financing ,which could limit the company's ability to use its NOLs to offset future taxes; the failure of Reorganized PG&E to generate earnings sufficient to realize the requisite cash tax benefits necessary to fund the deferred cash payments; and general business and credit risk due to among other things potential future wildfire liability claims that could be disallowed or not covered in a

4

. DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

1     timely manner by the Go-Forward Wildfire Fund;

2     6.     The timing of contributions to the Fire Victim Trust is also uncertain. Expectations

3     for the timing of the initial cash and equity contributions have been based on the Debtors' Plan of

4     Reorganization becoming effective on or before August 29, 2020.  However, under the recently

5     announced as Case Resolution Contingency Process the date by which the Debtors emerge from

6     bankruptcy could be as late as December 31, 2020.

7     7.     PG&E's ability to successfully finance its exit from bankruptcy and fund the cash

8     transfer to the Fire Victim Trust was not 100% certain prior to the recent health and economic

9     crises. With the recent economic downturn and disruption in the financial markets caused by the

10    COVID-19 pandemic the risk that the Debtors will fail to raise the financing necessary to exit

11    bankruptcy on the timeline contemplated at the time the TCC Claimants RSA was entered into has

12    increased substantially.

13    8.     Should PG&E fail to emerge from bankruptcy by December 31, 2020 and be

14    required to initiate a sale process for the company, as agreed to and outlined in the Case Resolution

15    Contingency Process, the resulting sale could further delay and potentially negatively impact the

16    funding of the Fire Victim Trust. The potential for such a scenario creates additional risk and

17    uncertainty for the payments agreed under the TCC Claimants RSA as there is no guarantee that a

18    sale process would result in sale proceeds sufficient to meet the Debtors' commitments under the

19    TCC Claimant RSA.

20    I declare under penalty of perjury that the foregoing is true and correct. Executed on April

21    3, 2020 at New York, New York.

22                              /s/ Eric Lowrey_____
                                ERIC LOWREY
23    Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in filing this document has been obtained

24    from the signatory, Eric Lowrey.
                                __/s/ Jeremiah F. Hallisey_____
25                              Jeremiah F. Hallisey

26

27    (1) Exclusive of certain rights and causes of action to be transferred to Victim Trust under the Plan

28    _____
      .     DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO
            DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM
            CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

                                         5

1    (2) The 10.7 multiple of earnings for Edison International (NYSE: EIX) is based on the consensus

2        2021 earnings estimates and closing stock price for EIX as of April 3, 2020 per CapIQ.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO
DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM
CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

**EXHIBIT A TO**

**DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY
CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A)
AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL
PURPOSES OF THE CHAPTER 11 CASES**

# Individual Fire Victims the Only Claimant Group to Receive Deferred Cash & Equity

**While every other claimant group is to receive 100% cash or secured debt, 60% of the consideration to be transferred to the Victim Trust is exposed to the risk of diminution of value prior to receipt**

*$Millions*

| CLAIMANT GROUPS | TREATMENT OF CLAIMS | | | TOTAL |
|---|---|---|---|---|
| | Cash / New Debt | Deferred Cash | Equity | |
| Debtor-In-Possession Financing | 2,000 | 0 | 0 | **2,000** |
| Trade Claims and Other Costs | 2,300 | 0 | 0 | **2,300** |
| Prepetition Debt & Accrued Interest | 23,450 | 0 | 0 | **23,450** |
| Subrogated Wildfire Liability Claims | 11,000 | 0 | 0 | **11,000** |
| Public Entities Wildfire Liability Claims | 1,000 | 0 | 0 | **1,000** |
| **Individual Fire Victim Liability Claims** | **5,400** | **1,350** | **6,750** | **13,500** |
| | | | | **$53,250** |

- **Individual victims** are the **only claimants to receive at-risk deferred cash and/or equity**

- The $1.35 billion of deferred cash and the Fire Victim Equity are exposed to significant risks

  - Fire Victim Equity to be contributed to the Victim Trust currently estimated to be worth approximately $4.85 billion, materially less than $6.75 billion, and it could decline further

  - Significant risk of negative impacts due to current economic downturn, including the potential for the Debtors' earnings forecast to be reduced and reduced liquidity due to customer non-payment

  - Cash tax benefits needed to fund $1.35 billion of deferred cash payments may not be realized

  - Potential future wildfire liability claims made against PG&E would be senior to Victim Equity

Source: Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization.
1) Based on uses of $59.0 billion in PG&E POR, including $1.35 billion in deferred cash for the Victim Trust. Not shown is the $5.0 billion wildfire fund contribution and $0.75 billion of B/S cash.
2) Comprised of $13.875 billion in cash and $9.575 billion in new secured debt. The $9.575 billion of new, secured debt to be senior in priority to deferred cash and equity yet to be contributed to Victim Trust upon PG&E's exit from bankruptcy. Secured debt will also be senior in priority to any future wildfire liability claims filed against PG&E (deferred cash and equity will not be).

**EXHIBIT B TO**

**DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES**

# Value of Equity Allocated to Individual Victims Estimated to be $4.85B, Not $6.75B[1]

**As of early April 2020, the value of the equity in Reorganized PG&E Corp. to be contributed to the Victim Trust estimated at only $4.85 billion, 28% (or $1.9 billion) less than the headline amount of $6.75 billion**



Equity Value Used to Determine Allocation of Equity in Reorganized PG&E for Individual Victims[2][3]
December 2019

Total = $30.4 Billion[2][3]

22.2% ($6.75B)

Then

Allocation for Victim Trust

Now

Decrease of $1.9B

Estimated Reorganized PG&E Equity Value[1]
April 3, 2020

Total = $21.8 Billion[1]

22.2% ($4.85B)

14.9 x $2.04 billion = $30.4 Billion[2][3]

10.7 x $2.04 billion = $21.8 Billion[1][2]

1) Value of Fire Victim Equity estimated using Edison International (NYSE: EIX) as a proxy, which trades at a multiple of 10.7x consensus 2021 earnings estimates as of April 3, 2020 per CapIQ.
2) Based on 2021 forecasted earnings of $2.04 billion per the Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization.
3) Based on 2021 forecasted earnings multiplied by 14.9 per the Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization.

# ATTACHMENT B

1   Richard A. Lapping (SBN 107496)
    TRODELLA & LAPPING, LLP
2   540 Pacific Avenue
    San Francisco, CA  94133-4608
3   Telephone:  (415) 399-1015
    Email:  rich@trodellalapping.com
4
5   Co-Counsel for Creditors
    KAREN ROBERDS and ANITA FREEMAN,
6   for themselves and on behalf of all others similarly,
    situated
7   [additional creditors and counsel
    listed on signature page]
8
9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11                     SAN FRANCISCO DIVISION
12

| In re: | Case No. 19-cv-05257-JD |
|---|---|
| PG&E CORPORATION | Bankruptcy Case No.: 19-30088-DM |
| -and- | **OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(a) AND 502(c) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASE; JOINDER IN RESPONSE OF TCC** |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Debtors. | |
| | Date:   May 21, 2020 |
| | Time:  10:00 a.m. |
| | Ctrm:  11 |
| | Judge:  Hon. James Donato |

                                  **I**

                           **INTRODUCTION**

        The Debtors, PG&E Corporation and Pacific Gas & Electric ("Debtors" or "PG&E") have

moved this Court for an order establishing by estimation the total amount of all fire victims' claims

for all purposes in the Debtors' Chapter 11 bankruptcy cases.  In essence, the Debtors propose

funding a trust for fire victims with $6.75 billion in cash and PG&E stock allegedly valued at $6.75

                                        1

.   CERTAIN FIRE VICTIMS' OBJECTION TO MOTION TO ESTABLISH AMOUNT OF FIRE VICTIMS'
    CLAIM FOR ALL CHAPTER 11 CASES                        USDC/NDCA Case No. 19-cv-05257-JD

1  billion and the assignment of certain rights and causes of action.  The Debtors define "fire victim"

2  as any tort claimant affected by any PG&E-caused wildfires in 2015, 2016 (Ghost Ship), 2017 and

3  2018 anywhere in Northern California, including not only individuals who lost loved-ones, or real

4  and personal property, but also business entities and public entities.

5          For two major reasons, this group of individual fire victims opposes that motion and joins in

6  the Response of the Official Committee of Tort Claimants ("TCC") filed herein at ECR No. 295

7  (Apr. 2, 2020).  <u>First</u>, Debtors' current Plan[1] classifies claims of creditors with substantially similar

8  legal claims against the Debtors, i.e., claims of fire victims in their own right and claims of their

9  insurers for losses paid due to fires, in different classes with profoundly different treatment, and

10 therefore cannot be confirmed under 11 U.S.C. §§ 1129(a)(1) and 1122.  Whereas fire victims and

11 their insurers each have legal claims for damages, the Plan pays the insurers in cash whereas the

12 fire victims trust, unlike all other creditors, must accept the highly speculative risk of holding

13 PG&E stock as half of their consideration, instead of cash.

14         <u>Second</u>, this unequal treatment is exacerbated by the massive changes in circumstances,

15 including the current economic downturn caused by COVID-19 and the recent criminal plea

16 entered by the Debtors for involuntary manslaughter in connection with the Camp Fire, raise

17 serious questions about the value of the PG&E stock proposed for fire victims in the Plan.

18 Therefore, any estimation of the capped amount of fire victims' claims must take into account that

19 the supposedly absolute value of $13.5 billion (to be paid half in cash and half in stock) is at least

20 partly illusory and not worth that amount anymore.

21                                            **II**

22                                       **ARGUMENT**

23     **A.     All Similarly-Situated Creditors Must be Treated Equally**

24         Under the provisions of 11 U.S.C. §§ 1129(a)(1), (a)(7), and 1122, all similar claims of

25 creditors must be treated equally or the plan cannot be confirmed.  Here, the fire victims (both

26 those individuals and entities that suffered damages from the 2015, 2017 and 2018 wildfires, as

27 _____

28 [1] *Debtors' Amended Plan of Reorganization*, Bankr. Dkt. No. 6320 (Mar. 16, 2020).

.     CERTAIN FIRE VICTIMS' OBJECTION TO MOTION TO ESTABLISH AMOUNT OF FIRE VICTIMS'
      CLAIM FOR ALL CHAPTER 11 CASES                              USDC/NDCA Case No. 19-cv-05257-JD

well as the public entities and subrogation insurance entities) are all similarly situated in that their losses were caused by fires attributable to the Debtors' equipment or operations. However, only the individual fire victims, who lost loved-ones, homes, personal property, businesses, and other damages, are at risk of receiving less than they were guaranteed under the proposed settlement agreement with the Debtors. These fire victims are required to accept half of the $13.5 billion in cash and half in stock in the new company exiting bankruptcy. On the other hand, the subrogation insurance companies are receiving an all-cash payment amounting to $11 billion. The current public entity settlements likewise are all cash. Only the individual fire victims are treated differently and unfairly. Thus, this motion to finally fix the amount of the fire victims' claim should not be granted unless and until this gross disparity is remedied and the fire victims are guaranteed that they will actually receive the full value of the proposed estimated $13.5 billion as the Debtors promised.

**B.      Changed Circumstances Dictate Denial of the Motion**

**1.      The Economic Crash**

The now-worldwide onset of the Coronavirus has caused a massive economic crash, causing the U.S. economy to slide into what appears to be a deep recession, with all closely-watched averages down to bear-market levels. Additionally, there is an historic number of Americans filing for unemployment benefits -- over 6 million during the last week of March, 2020. In short, most economic experts assert that the U.S. in this deep economic recession for a long period of time. None of these factors existed when the Debtors proposed their half-cash/half-stock $13.5 billion settlement with the fire victims. Based on the current economic circumstances, the $13.5 billion is no longer worth $13.5 billion, a risk that fire victims should not shoulder on their own, when other creditors with the same legal claims receive all cash.

A substantial portion of the $13.5 billion – $6.75 billion is to be paid in stock in the new company exiting bankruptcy. But that stock is no longer worth $6.75 billion, but only $4.85 billion – *i.e.*, about $1.9 billion less than promised. *See* accompanying Declaration of Eric Lowrey in support of this objection ("Lowrey Decl.) para.. 5, second bullet point. This decline in stock value could further deteriorate given several factors:  PG&E's ongoing wildfire risks; its weak credit

3

portfolio; the potential for its earnings forecast to be revised downward due to further economic downturns; and its inability to pay any dividends for a minimum of three years, something that is a key attribute that potential utility investors look for when deciding whether to purchase stock. *See* Lowrey Decl., ¶ 5.

Not only is there a very real risk that the stock going to the fire victims trust will be worth less than the promised $6.75 billion, but the $6.75 billion cash portion of the fire victims' settlement may also turn out to be less. The cash portion of the settlement calls for the payment of $5.4 billion on the effective date (assuming the Debtors are able to obtain financial commitments to come up with the capital to make that payment, which at this point is still unclear), with a deferred payment of $1.35 billion paid in two installments ($650 Million on January 15, 2021 and $700 Million on January 15, 2022), without interest and with questionable security. (*See*, Plan section 1.208). Because the deferred payments do not bear any interest, that amount needs to be discounted, which results in a deduction of $45 Million from the $1.35 billion. Additionally, the deferred payments means that the new PG&E will have to make it through two fire seasons while, at the same time, these deferred payments are generated by tax attributes that may never occur because if there is a mass sale of PG&E stock shortly after exit from bankruptcy, the IRS might consider that a change of control such that the net operating losses essentially disappear. Lowrey Decl. ¶ 5, 3rd bullet point. Moreover, upon exit, the new PG&E will have some $38 billion in debt, leaving little margin for error if it is to achieve enough money to pay the $1.35 billion in deferred payments. Finally, the current economic downturn is very likely to have a material negative impact on the Debtors' financial forecast over the next 12 to 18 months, which could put a significant portion of the deferred cash payments at substantial risk to the fire victims. Lowrey Decl. ¶ 7.

Therefore, these objecting fire victims respectfully suggest that this Court should not confirm the $13.5 billion to the tort claimants unless and until that full amount is certain to get to those claimants without any deductions whatsoever.

### 2. The Guilty Pleas

Recently, the Debtors pleaded guilty to 84 counts of felony involuntary manslaughter in violation of Cal. Penal Code § 192(b) and one count of unlawfully causing a fire in violation of Cal.

4

.   CERTAIN FIRE VICTIMS' OBJECTION TO MOTION TO ESTABLISH AMOUNT OF FIRE VICTIMS'
    CLAIM FOR ALL CHAPTER 11 CASES                    USDC/NDCA Case No. 19-cv-05257-JD

Case: 19-30088   Doc# 6939   Filed: 04/24/20   Entered: 04/24/20 19:44:19   Page 26 of 29

1   Penal Code § 452 bringing a fine of $4 Million[2] (which the Debtors initially stated was to paid out of the

2   fire victims' trust, but relented when faced with overwhelming objections from fire victims).  However,

3   because the Debtors are convicted felons for causing the Camp Fire, they are now subject to punitive

4   damages from those fire victims whose losses are attributable to that fire.  When the Debtors proposed the

5   $13.5 billion settlement there was no real threat of punitive damages, which there is now,  and which makes

6   the $13.5 billion inadequate to pay all fire victims' claims, as well as any substantial punitive damages to the

7   Camp Fire victims.  Therefore, the motion to establish the $13.5 billion should be denied unless and until the

8   Debtors prove to this Court that the fire victims will receive consideration actually worth $13.5 billion, plus

9   any additional amount to satisfy any punitive damages claims by the Camp Fire victims.

10                                          **III**

11                        **RESOLUTION OF THE PROBLEM**

12          Providing $13.5 billion for the fire victims is achievable without dismantling the entire

13   settlement with the Debtors.  Either the Debtors can amend the settlement to provide for an all-cash

14   payment to the fire victims on the effective date, or if the Debtors are unable to accomplish that,

15   they should include a backup plan – *i.e.*, a backstop, if you will – that protects the $13.5 billion all-

16   cash amount, and there are at least two groups that can provide that backstop.  First there is the

17   Customer-Owned Utility proposal, which assures that fire victims will receive the $13.5 billion in

18   cash upon the effective date.  Declaration of Francis .O. Scarpulla in support of this objection

19   ("Scarpulla Decl."), Exhibit A, response no. 8.  In fact, the Customer-Owned Utility propose the

20   following, among other provisions: 1) to fully fund the fire victims' trust with $13.5 billion all cash

21   on or before September 30, 2020; 2) treat all other creditors exactly the same as in the current

22   Debtors' agreement, including the $11 billion cash to the subrogation insurance group; 3) pay the

23   settling public entities their $1 billion in cash; and 4) fully comply with all requirements of AB

24   1054.  Scarpulla Decl., Exhibit A.

25

26   _____

27   [2] Debtors' motion before the Bankruptcy Court to approve the plea agreement, and the plea

28   agreement are filed at Bankr. Dkt No. 6418 (Mar. 23, 2020).

.    CERTAIN FIRE VICTIMS' OBJECTION TO MOTION TO ESTABLISH AMOUNT OF FIRE VICTIMS'
     CLAIM FOR ALL CHAPTER 11 CASES                    USDC/NDCA Case No. 19-cv-05257-JD

1    A second potential backstop could be from the Bondholders, who proposed a $13.5 billion

2 all cash payment to the fire victims, but who eventually joined the Equity group in the current

3 proposal.  In fact, there could be an amalgamation of both the Customer-Owned Utility group, with

4 the Bondholders and with the Equity group to resolve this bankruptcy case for the benefit of all

5 creditors.

6                                          IV

7                                    CONCLUSION

8    As the objecting fire victims have pointed out, this Court should not grant the Debtors'

9 motion without guaranteeing that the fire victims shall receive the full value of the promised

10 $13.5 billion payable into their trust fund for future distributions to the claimants.  If the Debtors

11 are not willing to so guarantee that the fire victims will receive the $13.5 billion, undiluted in any

12 way, then this Court could order all interested parties to a mediation with the previously-agreed to

13 mediators, Judge Daniel Weinstein (Ret.) and Robert Mayer, which would end with a unified

14 agreement on behalf of the fire victims.

15

16 Dated:  April 3, 2020                    TRODELLA & LAPPING, LLP

17

18                                         By ____/s/ Richard A. Lapping_____

19                                               Richard A. Lapping

20                                         Co-Counsel for Creditors Listed Below

21                                         Jeremiah F. Hallisey, Esq. (SBN 40001)
                                          Karen J. Chedister, Esq. (SBN 99473)
22                                         HALLISEY & JOHNSON, P.C.
                                          465 California Street, Suite 405
23                                         San Francisco, CA 94104
                                          Tel:    (415) 433-5300
24                                         Fax:    (415) 230-5792
25

26                                         Attorneys for Creditors
                                          KAREN ROBERDS and ANITA FREEMAN, for
27                                         themselves and on behalf of all others similarly
                                          situated; WILLIAM N. STEEL, for himself and on
28

                                              6
    .   CERTAIN FIRE VICTIMS' OBJECTION TO MOTION TO ESTABLISH AMOUNT OF FIRE VICTIMS'
        CLAIM FOR ALL CHAPTER 11 CASES                        USDC/NDCA Case No. 19-cv-05257-JD

behalf of all others similarly situated; WILLIAM O'BRIEN, MING O'BRIEN, and FUGUAN O'BRIEN by her Guardian ad Litem, Ming O'Brien; MICHAEL HEINSTEIN, KYE HEINSTEIN; and CLINTON REILLY

Francis O. Scarpulla (SBN 41059)
Patrick Clayton (SBN 240191)
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: 415.788.7210
Fax: 415.788.0706

Attorneys for Creditors
Class Claimant GER Hospitality, LLC and Richard Carpeneti

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in filing this document has been obtained from the signatories.

    /s/ Richard A. Lapping
        Richard A. Lapping

---

.   CERTAIN FIRE VICTIMS' OBJECTION TO MOTION TO ESTABLISH AMOUNT OF FIRE VICTIMS'
    CLAIM FOR ALL CHAPTER 11 CASES                          USDC/NDCA Case No. 19-cv-05257-JD