WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (415) 636-9251

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENTS WITH FEDERAL AND STATE AGENCIES OF GOVERNMENTAL AGENCY FIRE CLAIMS, AND (II) GRANTING RELATED RELIEF**<br><br>**(THE "GOVERNMENTAL FIRE CLAIMS SETTLEMENTS MOTION")**<br><br>Proposed Hearing Date:  May 6, 2020<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  (Telephonic Appearances Only)<br>   United States Bankruptcy Court<br>   Courtroom 17, 16th Floor<br>   San Francisco, CA 94102<br><br>**Proposed Obj. Deadline:    May 4, 2020,<br>   4:00 p.m. (Pacific Time)** |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) approving (a) the settlement, entered into as of April 21, 2020, by and among the Debtors, the TCC, FEMA, the SBA, and the other Federal Agencies (each as defined below), substantially in the form annexed hereto as **Exhibit A** (the "**Federal Agency Settlement**"), and (b) the settlement, entered into as of April 21, 2020, by and among the Debtors, the TCC, and the State Agencies (as defined below), substantially in the form annexed hereto as **Exhibit B** (the "**State Agency Settlement**" and, together with the Federal Agency Settlement, the "**Governmental Fire Claims Settlements**" and the various state and federal agencies parties thereto, the "**Governmental Agencies**"), and (ii) granting related relief.

In support of the Motion, the Debtors submit the Declaration of Stephen Karotkin (the "**Karotkin Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit C** (the "**Proposed Order**").

**Table of Contents**

**Page**

I.  PRELIMINARY STATEMENT .................................................................................6

II.  JURISDICTION .............................................................................................................7

III.  BACKGROUND .............................................................................................................7

    A.  General Background ...........................................................................................7

    B.  The Federal and State Agency Claims .............................................................8

    C.  The Plan and Disclosure Statement ...............................................................11

IV.  MATERIAL TERMS OF THE GOVERNMENTAL FIRE CLAIMS SETTLEMENTS.....11

    A.  The Federal Agency Settlement......................................................................12

    B.  The State Agency Settlement ..........................................................................15

V.  BASIS FOR RELIEF REQUESTED ........................................................................22

    A.  Entry into the Governmental Fire Claims Settlements is in the Best Interests of the Debtors' Estates and Should be Approved under Bankruptcy Rule 9019. ...............22

        1.  The Probability of Success in Litigation..............................................24

        2.  The Difficulties to be Encountered in Collecting Any Litigated Judgment ..25

        3.  The Complexity and Expense of Any Litigation .........................................26

        4.  The Interests of Creditors........................................................................26

    B.  Entry into the Governmental Fire Claims Settlements is a Sound Exercise of the Debtors' Business Judgment and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code. ........................................................................27

VI.  NOTICE.......................................................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re ASARCO, L.L.C.*,
650 F.3d 593 (5th Cir. 2011) ...................................................................................27

*In re AWTR Liquidation Inc.*,
548 B.R. 300 (Bankr. C.D. Cal. 2016)........................................................................28

*City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*,
656 F.3d 82 (1st Cir. 2011).......................................................................................23

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
60 B.R. 612 (Bankr. S.D.N.Y. 1986) ....................................................................27, 28

*In re Cresta Tech. Corp.*,
No. 16-50808 MEH, 2018 WL 2422415 (Bankr. N.D. Cal. May 29, 2018) ..............26

*In re Drexel Burnham Lambert Grp., Inc.*,
134 B.R. 499 (Bankr. S.D.N.Y. 1991) ..................................................................22, 25

*In re Equa-Chlor LLC*,
No. 08-40599, 2008 WL 1927066 (Bankr. W.D. Wash. Apr. 29, 2008)....................25

*In re Integrated Resources, Inc.*,
147 B.R. 650 (Bankr. S.D.N.Y. 1992) .......................................................................28

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
Nos. 04–10585 (GAC), 04–12634 (GAC), 07–00067 (GAC), 2009 WL 2913685 (Bankr. D.P.R.
Mar. 31, 2009).........................................................................................................25

*In re Lionel Corp.*,
722 F.2d 1063 (2d Cir. 1983).....................................................................................27

*Martin v. Kane (In re A&C Props.)*,
784 F.2d 1377 (9th Cir. 1986) .............................................................................23, 24

*In re Montgomery Ward Holding Corp.*,
242 B.R. 147 (D. Del. 1999)......................................................................................27

*Myers v. Martin (In re Martin)*,
91 F.3d 389 (3d Cir. 1996)....................................................................................22, 26

*Nellis v. Shugrue*,
165 B.R. 115 (S.D.N.Y. 1994)...............................................................................23, 26

*In re Pac. Gas & Elec. Co.*,
   304 B.R. 395 (Bankr. N.D. Cal. 2004) ...............................................................23, 24, 25

*In re Planned Prot. Servs., Inc.*,
   130 B.R. 94 (Bankr. C.D. Cal. 1991)...............................................................................23

*Port O'Call Invest. Co. v. Blair (In re Blair)*,
   538 F.2d 849 (9th Cir. 1976) ...........................................................................................25

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968)...................................................................................................23, 25

*In re Walter*,
   83 B.R. 14 (B.A.P. 9th Cir. 1988)....................................................................................27

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................2, 27, 29

11 U.S.C. § 363(b) .......................................................................................2, 27, 28, 29

11 U.S.C. § 1107(a) ..................................................................................................7

11 U.S.C. § 1108 ......................................................................................................7

28 U.S.C. § 157 ........................................................................................................7

28 U.S.C. § 1334 ......................................................................................................7

28 U.S.C. § 1408 ......................................................................................................7

28 U.S.C. § 1409 ......................................................................................................7

31 U.S.C. § 3729-3733.............................................................................................14

42 U.S.C. § 5155 ...............................................................................................13, 22

**Other Authorities**

B.L.R. 5011-1(a) ......................................................................................................7

Fed. R. Bankr. P. 1015(b) .........................................................................................7

Fed. R. Bankr. P. 2002 ............................................................................................28

Fed. R. Bankr. P. 9019 ..........................................................................2, 22, 23, 24, 29

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT[1]

By this Motion, the Debtors seek authority for the Debtors and the TCC to enter into the Governmental Fire Claims Settlements and remove two of the last major hurdles remaining to confirmation of the Plan by resolving the treatment of the Fire Claims asserted in these Chapter 11 Cases by FEMA, SBA, the other Federal Agencies,[2] and the State Agencies.[3]  The Governmental Fire Claims Settlements are comprised of two agreements that resolve the treatment of approximately $7.5 billion in aggregate of Fire Claims that have been asserted by the various Governmental Agencies in these Chapter 11 Cases for an allowed $1 billion, Subordinated Claim (to be subordinated and junior in right of payment to all other Fire Victim Claims that may be asserted against the Fire Victim Trust) and certain additional allowed Claims that total approximately $321.3 million in the aggregate, which will be payable over a period of years and solely, as applicable, from (i) interest earned on cash assets of the Fire Victim Trust, (ii) any net proceeds in excess of the Effective Date Equity Value (as defined below) realized by the Fire Victim Trust from the sale of the Reorganized PG&E Corp. common stock to be funded into the Fire Victim

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to them in Governmental Fire Claims Settlements or the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all exhibits and schedules thereto and as may be modified, supplemented, or amended from time to time, the "**Plan**"), as applicable.

[2] "**FEMA**" is the United States Department of Homeland Security / Federal Emergency Management Agency, "**SBA**" is the United States Small Business Administration, and the "**Federal Agencies**" are (i) the United States Department of Agriculture and the United States Forest Service (together, the "**Department of Agriculture**"), (ii) the United States Department of the Interior, the United States Fish and Wildlife Service, the National Park Service, and the Bureau of Land Management (collectively, the "**Department of the Interior**"), (iii) the United States Department of Housing and Urban Development ("**HUD**"), and (iv) the General Services Administration ("**GSA**").

[3] The "**State Agencies**" are (i) California Department of Developmental Services ("**Cal DDS**"), (ii) California Department of Toxic Substances Control ("**Cal DTSC**"), (iii) California Department of Forestry and Fire Protection ("**CAL FIRE**"), (iv) California Governor's Office of Emergency Services ("**Cal OES**"), (v) California Department of Parks and Recreation ("**Cal Parks**"), (vi) California State University ("**CSU**"), (vii) California Department of Transportation ("**Caltrans**"), and (viii) California Department of Veterans Affairs ("**Cal Vet**").

Trust on the Effective Date, and (iii) any net recovery from the prosecution of the Assigned Rights and Causes of Action to be assigned to the Fire Victim Trust on the Effective Date under the Plan. These settlements thus resolve the substantial Fire Claims that have been asserted by the Governmental Agencies in these Chapter 11 Cases while, importantly, limiting the impact on the consideration to be transferred to the Fire Victim Trust that will be available for all other holders of allowed Fire Victim Claims.

In addition, the Governmental Fire Claims Settlements eliminate ongoing and potential future litigation among the parties regarding, among other things, the classification and allowance of the substantial Fire Claims asserted by the Governmental Agencies, along with the uncertainty those disputes impose on both the timely confirmation of the Plan by the June 30, 2020 deadline set by AB 1054 and the expediency of distributions to holders of allowed Fire Victim Claims.

Accordingly, entry into the Governmental Fire Claims Settlements is an appropriate exercise of the Debtors' business judgment, satisfies all of the requirements under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and should be approved.

## II. JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24* (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

### A. General Background

On January 29, 2019, the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter

11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 13, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**TCC**").

By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases [Docket No. 2806] (the "**Bar Date Order**"). On November 11, 2019, the Bar Date was extended by the Court for unfiled, non-governmental Fire Claimants (as defined in the Bar Date Order) to December 31, 2019 [Docket No. 4672].

### B. The Federal and State Agency Claims

FEMA, the SBA, and the other Federal Agencies filed the following proofs of claim in the Chapter 11 Cases:

a. <u>FEMA</u>: Proofs of Claim Nos. 59692, 59734, and 59783 (collectively, along with any other proof of claim filed by FEMA in the Chapter 11 Cases that is a Fire Claim (as defined in the Plan) regardless of whether such claim is specifically set forth in the Federal Agency Settlement, the "**FEMA Fire Claims**").

b. <u>SBA</u>: Proofs of Claim Nos. 62342, 86438, and 86440 (collectively, along with any other proof of claim filed by the SBA in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth the Federal Agency Settlement, the "**SBA Fire Claims**").

c. <u>Department of Agriculture</u>: Proofs of Claim Nos. 57937 and 59572 (collectively, along with any other proof of claim filed by the Department of Agriculture in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth the Federal Agency Settlement, the "**Department of Agriculture Fire Claims**"). The Department of Agriculture filed other Proofs of Claim Nos. 59493, 59662, 59664, 59712, and 63837 that are not "Fire Victim Claims" under the Plan (collectively, the "**Non-Channeled Department of Agriculture Claims**").

d. <u>Department of the Interior</u>: Proofs of Claim Nos. 56756, 59675, 59682, 63744, 63797, and 65522 (collectively, along with any other proof of claim filed by the Department of the Interior in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the Federal Agency Settlement, the "**Department of the Interior Fire Claims**"). The Department of the Interior filed other Proofs of

Claim Nos. 62632, 63092, 63748, and 63756 that are not "Fire Victim Claims" under the Plan (collectively, the "**Non-Channeled Department of the Interior Claims**").

e. <u>HUD</u>: Proof of Claim No. 57078 (collectively, along with any other proof of claim filed by HUD in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the Federal Agency Settlement, the "**HUD Fire Claims**").

f. <u>GSA</u>: Proof of Claim No. 62051 (collectively, along with any other proof of claim filed by GSA in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the Federal Agency Settlement, the "**GSA Fire Claims**" and, collectively with the Department of Agriculture Fire Claims, the Department of the Interior Fire Claims, and the HUD Fire Claims, the "**Federal Agency Fire Claims**"). The Non-Channeled Department of Agriculture Claims, the Non-Channeled Department of the Interior Claims and any other claims of any of the Federal Agencies that are not Fire Victim Claims as of the date of the Federal Agency Settlement are, collectively, referred to as the "**Non-Channeled Federal Agency Claims**."

The State Agencies filed the following proofs of claim in the Chapter 11 Cases:

a. <u>Cal DDS</u>: Proofs of Claim Nos. 73262, 87491, and 97058 (collectively, along with any other proof of claim filed by Cal DDS in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the in the State Agency Settlement, the "**Cal DDS Fire Claims**").

b. <u>Cal DTSC</u>: Proofs of Claim Nos. 77351 and 96454 (collectively, along with any other proof of claim filed by Cal DTSC in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the State Agency Settlement, the "**Cal DTSC Fire Claims**"). Cal DTSC filed other Proofs of Claim Nos. 76655, 77441, 76355, 77344, 79285, 72174, 79397, and 79715 that are not "Fire Victim Claims" under the Plan (collectively, the "**Non-Channeled Cal DTSC Claims**").

c. <u>CAL FIRE</u>: Proofs of Claim Nos. 77897, 78467, 79729, 77727, 79752, 77667, and 75665 (collectively, along with any other proof of claim filed by CAL FIRE in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the State Agency Settlement, the "**CAL FIRE Fire Claims**"). CAL FIRE filed other Proofs of Claim Nos. 65505, 76888, 77538, 77564, 77572, 77581, 77586, 77595, 77661, 77678, 77030, 77745, 78866, 79338, 79403, and 79602 that are not "Fire Victim Claims" under the Plan (collectively, the "**Non-Channeled CAL FIRE Claims**").

d. <u>Cal OES</u>: Proofs of Claim Nos. 77624, 78495, 79398, 79429, 78463, 87755, 87754, and 87748 (collectively, along with any other proof of claim filed by Cal OES in the Chapter 11 Cases that is a Fire Claim regardless of whether such claims are specifically set forth in the State Agency Settlement, the "**Cal OES Fire Claims**").

e. <u>Cal Parks</u>: Proofs of Claim Nos. 87627, 87626, 87620, 77696, 77861, 79533, 60117, 61514, 79781, 77009, 60322, and 60103 (collectively, along with any other proof of claim filed by Cal Parks in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the State Agency Settlement, the "**Cal Parks Fire Claims**"). Cal Parks filed other Proofs of Claim Nos. 77642, 87625, 77859, 87617, 77799, and 60303 that are not "Fire Victim Claims" under the Plan (collectively, the "**Non-Channeled Cal Parks Claims**").

f. <u>CSU</u>: Proof of Claim No. 79746 (collectively, along with any other proof of claim filed by CSU in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the State Agency Settlement, the "**CSU Fire Claims**"). CSU filed other Proofs of Claim Nos. 4372, 10041, and 16874 that are not "Fire Victim Claims" under the Plan (collectively, the "**Non-Channeled CSU Claims**").

g. <u>Caltrans</u>: Proofs of Claim Nos. 68782 and 72321 (collectively, along with any other proof of claim filed by Caltrans in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth in the State Agency Settlement, the "**Caltrans Fire Claims**"). Caltrans filed another Proof of Claim No. 77714 that is not a "Fire Victim Claim" under the Plan (the "**Non-Channeled Caltrans Claim**").

h. <u>Cal Vet</u>: Proof of Claim No. 79878 (collectively, along with any other proof of claim filed by Cal Vet in the Chapter 11 Cases that is a Fire Claim regardless of whether such claim is specifically set forth State Agency Settlement, the "**Cal Vet Fire Claims**" and, collectively with the Cal DDS Fire Claims, the Cal DTSC Fire Claims, the CAL FIRE Fire Claims, the Cal OES Fire Claims, the Cal Parks Fire Claims, the CSU Fire Claims, and the Caltrans Fire Claims, the "**State Agency Fire Claims**" and, together with the Federal Agency Fire Claims, the "**Governmental Agency Fire Claims**"). The Non-Channeled Cal DTSC Claims, the Non-Channeled CAL FIRE Claims, the Non-Channeled Cal Parks Claims, the Non-Channeled CSU Claims, and the Non-Channeled Caltrans Claim and any other claims of any of the State Agencies that are not Fire Victim Claims as of the date of the State Agency Settlement are collectively referred to herein as the "**Non-Channeled State Agency Claims**."

On December 2, 2019, the TCC filed an objection to the FEMA Fire Claims [Docket No. 4943] (as supplemented on January 9, 2020 [Docket No. 5319], the "**FEMA Objection**"), which objection was joined in by the Debtors on February 5, 2020 [Docket No. 5639]. On December 12, 2019, the TCC filed an objection to the Cal OES Fire Claims [Docket No. 5096] (as supplemented on January 9, 2020 [Docket No. 5319], the "**Cal OES Objection**" and, together with the FEMA Objection, the "**Claims Objections**"), which objection was joined in by the Debtors on February 11, 2020 [Docket No. 5734]. The Claims Objections were argued and submitted to the Bankruptcy Court following a hearing held on February 26, 2020.

### C.    The Plan and Disclosure Statement

On December 12, 2019, the Debtors, together with certain funds and accounts managed or advised by Knighthead Capital Management, LLC and certain funds and accounts managed or advised by Abrams Capital Management, L.P. (together, the "**Shareholder Proponents**") as co-plan proponents, filed the Plan [Docket No. 5101], which was thereafter amended on January 31, 2020 [Docket No. 5590], March 9, 2020 [Docket No. 6217], and March 16, 2020 [Docket No. 6320].

On February 7, 2020, the Debtors filed their proposed disclosure statement for the Plan [Docket No. 5700], which was thereafter amended on March 9, 2020 [Docket No. 6219], March 16, 2020 [Docket No. 6322], and March 17, 2020 [Docket No. 6353], and supplemented on March 25, 2020 [Docket No. 6483] (and as may be further modified, supplemented, or amended from time to time, together with all exhibits and schedules thereto, the "**Disclosure Statement**").  The Court held hearings on the adequacy of the Disclosure Statement on March 10, 2020 and March 11, 2020 (collectively, the "**Disclosure Statement Hearings**") and, by Order entered on March 17, 2020, approved the Disclosure Statement, paving the way for the Debtors to commence solicitation of the Plan and progress toward timely confirmation of the Plan well in advance of the June 30, 2020 deadline imposed by AB 1054.

### IV.    MATERIAL TERMS OF THE GOVERNMENTAL FIRE CLAIMS SETTLEMENTS

On February 27, 2020, the TCC, the Consenting Fire Claimant Professionals (as defined in the Plan), FEMA, the SBA, the Federal Agencies, Cal OES, and the Plan Proponents participated in a mediation in San Francisco, California in an effort to resolve the Governmental Agency Fire Claims.  That mediation culminated in the Governmental Fire Claims Settlements.

The principal terms of the Federal Agency Settlement and the State Agency Settlement are summarized below.[4]

---

[4] These summaries are qualified in their entirety by reference to the provisions of each of the Federal Agency Settlement and the State Agency Settlement, respectively.  To the extent that any discrepancies exist between the summaries described in this Motion and the terms of the Federal Agency Settlement or the State Agency Settlement, the terms of the Federal Agency Settlement or the State Agency Settlement, as applicable, shall govern.

### A. The Federal Agency Settlement[5]

| | |
|---|---|
| **Effective Date** | The **Federal Agency Settlement Effective Date** shall be the date on which each of the following conditions to the effectiveness of the Federal Agency Settlement has been satisfied:<br>    o  Each Party's execution and delivery of the Federal Agency Settlement;<br>    o  The approval by a duly authorized official of the United States Department of Justice of the Federal Agency Settlement as evidenced by the signature of FEMA, the SBA, and the Federal Agencies to the Federal Agency Settlement;<br>    o  The Bankruptcy Court's entry of an order granting this Motion; and<br>    o  The Effective Date of the Plan. |
| **Federal Agency Claim Treatment** | **FEMA Fire Claims and SBA Fire Claims**<br><br>In full and final satisfaction and discharge of the FEMA Fire Claims and the SBA Fire Claims, FEMA and the SBA shall have an Allowed, undisputed $1,000,000,000.00 claim against the Fire Victim Trust that is subordinate and junior in right of payment to the prior payment in full of all Fire Victim Claims from the Fire Victim Trust (the "**Subordinated Claim**"). FEMA and the SBA shall not receive any payment on the Subordinated Claim unless and until all Fire Victim Claimants receive payment in full on their Fire Claims, including all compensatory, punitive, exemplary, and other damages and amounts owed on such Fire Claims, as determined by the Fire Victim Trustee and the Claims Administrator. The FEMA Fire Claims and the SBA Fire Claims shall receive no other distributions under the Plan or in the Chapter 11 Cases.<br><br>Upon the Effective Date, the TCC shall withdraw with prejudice the FEMA Objection.<br><br>**Federal Agency Fire Claims**<br><br>In full and final satisfaction and discharge of the Federal Agency Fire Claims, $117,000,000.00 shall be paid to the United States Department of Justice (the "**Federal Agency Settlement Amount**"), which amount shall be payable solely and exclusively from any recoveries on the Assigned Rights and Causes of Action—first dollars collected after the payment of all Professional Fees and Costs incurred in connection with the prosecution and settlement of such Assigned Rights and Causes of Action that generate or are otherwise the source of the first $117,000,000.00 recovered on such Assigned Rights and Causes of Action. The Federal Agency Settlement Amount shall be an Allowed Fire Victim Claim (not subject to reduction, dispute, contest, credit, setoff or other deduction) under the Plan. The Federal Agencies shall |

---

[5] Capitalized terms used in this section but not herein defined have the meanings ascribed to such terms in the Federal Agency Settlement.

have no right to recover on account of the Federal Agency Fire Claims from the Fire Victim Trust Corpus,[6] the Debtors, the Reorganized Debtors, or any source other than the Assigned Rights and Causes of Action. To the extent that the sources of payment identified in the Federal Agency Settlement are not sufficient to pay the Federal Agency Settlement Amount in full, no further amounts shall be due and owing for the Federal Agency Settlement Amount. For the avoidance of doubt, no claims asserted by the Federal Agencies that are not Fire Claims are being settled, compromised, resolved, or affected in any way by the Federal Agency Settlement.

**Duplication of Benefit Claims**

- FEMA (i) releases any Duplication of Benefit Claims[7] against any State Agency, Public Entity, individual, or any other recipient of disaster assistance for payments received from the Debtors and the Fire Victim Trust and (ii) deems any State Agency, Public Entity, individual, or any other recipient of disaster assistance to have acted in a commercially reasonable

---

[6] The term "**Fire Victim Trust Corpus**" means the aggregate consideration used to fund the Fire Victim Trust of (a) $5.4 billion in cash to be contributed on the Effective Date, (b) $1.35 billion consisting of (i) $650 million to be paid in cash on or before January 15, 2021 pursuant to the Tax Benefits Payment Agreement, and (ii) $700 million to be paid in cash on or before January 15, 2022 pursuant to the Tax Benefits Payment Agreement; (c) $6.75 billion in New HoldCo Common Stock (issued at Fire Victim Equity Value), which shall not be less than 20.9% of the New HoldCo Common Stock based on the number of fully diluted shares of Reorganized HoldCo (calculated using the treasury stock method (using an Effective Date equity value equal to Fire Victim Equity Value)) that will be outstanding as of the Effective Date (assuming all equity offerings and all other equity transactions specified in the Plan, including without limitation, equity issuable upon the exercise of any rights or the conversion or exchange of or for any other securities, are consummated and settled on the Effective Date, but excluding any future equity issuance not specified by the Plan) assuming the Utility's allowed return on equity as of the date of the Tort Claimants RSA and reasonable registration rights consistent with the recommendations of the Debtors' equity underwriter and tax rules and regulations; and (d) assignment of rights, other than the rights of the Debtors to be reimbursed under the 2015 insurance policies for claims submitted to and paid by the Debtors prior to the Petition Date, under the 2015 insurance policies to resolve any claims related to Fires in those policy years. The Fire Victim Trust Corpus shall not include (x) the Assigned Rights and Causes of Action, (y) any interest earned on the Cash Holdings of the Fire Victim Trust (or the proceeds of those Cash Holdings) after the Effective Date, and (z) any net cash proceeds from the monetization of New HoldCo Common Stock at a price per share greater than $6.75 billion divided by the number of shares of New HoldCo Common stock issued to the Fire Victim Trust under the Plan.

[7] The term "**Duplication of Benefits Claim**" means a claim against a person, business concern, or any other entity receiving federal assistance for a major disaster or emergency under Section 312 of the Stafford Act (42 U.S.C. § 5155) and its implementing regulations.

manner in pursuing other available assistance from the Debtors and the Fire Victim Trust.

- The release provided by FEMA under the Federal Agency Settlement with respect to any assistance received from the Wildfire Assistance Program shall be effective upon the Bankruptcy Court's entry of an order granting this Motion; provided, however, that such release shall become void and of no force and effect if the Effective Date of the Plan does not occur by December 31, 2020. For the avoidance of doubt, the administrator of the Wildfire Assistance Program is entitled to rely on the release provided by FEMA in sections 2.2(c) and 2.2(d) of the Federal Agency Settlement, and FEMA shall not assert any Duplication of Benefit Claims against such administrator for, or on account of, any financial assistance provided to fire victims under the Wildfire Assistance Program after the entry of an order granting this Motion and prior to December 31, 2020.

**State Agency Claims**

No State Agency shall be permitted to obtain any recovery from the Fire Victim Trust Corpus.

**Release of Claims**

Except for the rights expressly arising out of, provided for, or reserved in the Federal Agency Settlement, upon the Federal Agency Settlement Effective Date, FEMA, the SBA, and the Federal Agencies, on their own behalf and in every other capacity in which they may now or in the future act, voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably release the Fire Victim Trust for the FEMA Fire Claims, the SBA Fire Claims, and the Federal Agency Fire Claims.

Except as specifically addressed by the Federal Agency Settlement, the Federal Agency Settlement does not release, waive, relinquish, discharge, resolve, or settle any claims of any agency of the Federal Agencies, including, without limitation, the Non-Channeled Federal Agency Claims, all of which claims and rights thereto are expressly reserved. Notwithstanding any other provisions of the Federal Agency Settlement, the Federal Agency Settlement does not affect the rights and claims of any other agency of the United States other than FEMA, the SBA, and the Federal Agencies, including, without limitation, any claims against the Debtors under the False Claims Act, 31 U.S.C. § 3729-3733, or for common law fraud, any civil, criminal, or administrative liability arising under title 26 of the United States Code, and any criminal liability. FEMA and the SBA reserve all rights with respect to the Plan, the final form of the Fire Victim Trust Agreement and the Claims Resolution Procedures. All of the Debtors' rights and the TCC's rights with respect to the foregoing are also reserved.

| Trust Administration | FEMA, the SBA, and the Federal Agencies do not and will not object to the appointment of the Fire Victim Trustee, the Claims Administrator, or any advisors, consultants, professionals or representatives selected or retained by the Fire Victim Trust, the Fire Victim Trustee, or the Claims Administrator to the Fire Victim Trust. FEMA, the SBA, and the Federal Agencies shall have no role in the Fire Victim Trust administration; provided, however, if the Fire Victim Trustee fails to perform under Sections 2.2(a) and 2.2(b) of the Federal Agency Settlement, the affected Federal Agency (or Agencies) may seek to enforce the Federal Agency Settlement by motion to the Bankruptcy Court, or if the Bankruptcy Court determines that it lacks jurisdiction, any other forum having jurisdiction to enforce the Federal Agency Settlement. |
|---|---|
| | The Fire Victim Trustee shall provide to FEMA, the SBA, and the Federal Agencies the reports of the Fire Victim Trust as provided to the Bankruptcy Court in accordance with the Fire Victim Trust Agreement, when in effect. FEMA and the SBA shall have the same rights as a non-subordinated Fire Victim Claimant, if any, to contest the administration of the Fire Victim Trust. |
| The Plan | The Federal Agency Settlement shall be null and void if the Plan is amended, modified or supplemented in a manner that either (a) has a material adverse impact on the treatment, payment, or source of payment of the FEMA Fire Claims, the SBA Fire Claims, or the Federal Agency Fire Claims against the Debtors, or (b) channels or seeks to channel the Non-Channeled Federal Agency Claims to the Fire Victim Trust, in each case, without first obtaining the prior written consent of the TCC, the Debtors, and FEMA, the SBA, and the Federal Agencies, as applicable. |
| Binding on Trustee and Claims Administrator | The Federal Agency Settlement shall be binding upon and inure to the benefit of the Fire Victim Trustee, the Claims Administrator, respective predecessors, successors, assigns, heirs, legatees, affiliates, parents, subsidiaries, shareholders, officers, directors, employees, partners, agents, principals, attorneys, representatives, and professionals (as applicable) of the Parties to the extent provided by law. |

**B.    The State Agency Settlement**[8]

| Effective Date | The **State Agency Settlement Effective Date** shall be the date on which each of the following conditions to the effectiveness of the State Agency Settlement has been satisfied: |
|---|---|
| | o   Each Party's execution and delivery of the State Agency Settlement; |

---

[8] Capitalized terms used in this section but not herein defined have the meanings ascribed to such terms in the State Agency Settlement.

| | |
|---|---|
| | o The approval by a duly authorized official of each of the State Agencies to the terms of the State Agency Settlement, as evidenced by the signatures of Cal DDS, Cal DTSC, CAL FIRE, Cal OES, Cal Parks, CSU, Caltrans, and Cal Vet; <br> o The effective date of the Federal Agency Settlement and the release of the Duplication of Benefits Claims against the State Agencies, as provided in the Federal Agency Settlement; <br> o The Bankruptcy Court's entry of an order granting this Motion; and <br> o The Effective Date of the Plan. |
| **Payment Sources** | Payment for the State Agency Fire Claims shall come from the following sources, as applicable: <br> • **"Earned Interest"** means, for each period when a payment is due, as applicable, (a) any interest earned and realized in the accounts of the Fire Victim Trust, determined on an annual basis, on the Cash Holdings of the Fire Victim Trust as of the end of each calendar year (or in the case of a Fire Victim Trust year of less than twelve months, such applicable portion thereof), less (b) all Federal, state and local taxes payable with respect to such interest. For the avoidance of doubt, (i) any deductions for Federal, state and local taxes shall only be made to the extent of gains or income that result in a payment under section 2.2(b) or 2.2(c) of the State Agency Settlement, and (ii) interest shall include yield earned on treasury securities. <br> • **"Available Interest"** means, for each period when such payment is due, as applicable, (a) Earned Interest less (b)(i) all expenses of administering the Fire Victim Trust accrued during such calendar year (or portion thereof), including, without limitation, any Professional Fees and Costs incurred in connection with the administration of the Fire Victim Trust, and (ii) all amounts paid on account of the CAL FIRE Priority Settlement Amount (as defined below). For the avoidance of doubt, (x) there shall be no "double counting" of administrative expenses based upon whether such expenses are incurred, due or payable in a later period, (y) all administrative expenses which can be taken into consideration in more than one of the following definitions shall be taken into account in this order, without double counting: (1) Available Interest and (2) Available Excess Monetization, and (z) to the extent Professional Fees and Costs incurred in connection with the prosecution and settlement of Assigned Rights and Causes of Action can be deducted under Section 2.2(b) of the Federal Agency Settlement from the amounts payable for the Federal Agency Settlement Amount, they shall not reduce Available Interest. |

- "**Excess Monetization**" means, for each period when a payment is due, as applicable, (a) the net cash proceeds received by and credited to the account of the Fire Victim Trust during the calendar year from (i) the sale of New Holdco Common Stock issued to the Fire Victim Trust under the Plan and (ii) any derivative or hedging instruments for the New HoldCo Common Stock issued to the Fire Victim Trust under the Plan, less (b)(i) the Effective Date Equity Value[9] of such shares of New Holdco Common Stock multiplied by the number of shares of New Holdco Common Stock sold during such calendar year, and (ii) the Federal, state and local taxes payable with respect to the gain, if any, realized by the Fire Victim Trust on the sale of such shares of New Holdco Common Stock, including reserves for such taxes to the extent required to be paid after end of the calendar year. For the avoidance of doubt, (i) any deductions for Federal, state and local taxes shall only be made to the extent of gains or income that result in a payment under Section 2.2(c) of the State Agency Settlement, and (ii) the use of the term "net cash proceeds" shall only allow for the deduction of expenses directly related to the disposition of the New HoldCo Common Stock and shall not include any attorney's fees or accountant's fees.
- "**Available Excess Monetization**" means, for each period when a payment is due, as applicable, (a) Excess Monetization less (b)(i) all expenses of administering the Fire Victim Trust that are accrued during such calendar year (or portion thereof), including, without limitation, any Professional Fees and Costs incurred in connection with the administration of the Fire Victim Trust, and (ii) all amounts paid or payable with respect to the Cal State Agency Priority Settlement Amount. For the avoidance of doubt, (x) there shall be no "double counting" of administrative expenses based upon whether such expenses are incurred, due or payable in a later period, (y) all administrative expenses which can be taken into consideration in more than one of the following definitions shall be taken into account in this order, without double counting: (1) Available Interest and (2) Available Excess Monetization; and (z) to the extent Professional Fees and Costs incurred in connection with the prosecution and settlement of Assigned Rights and Causes of Action can be deducted under Section 2.2(b) of the Federal Agency Settlement from the amounts

---

[9] The term "**Effective Date Equity Value**" means the share price of New Holdco Common Stock on the Effective Date calculated by dividing $6.75 billion by the number of shares of New Holdco Common Stock issued to the Fire Victim Trust under the Plan.

| | | payable for the Federal Agency Settlement Amount, they shall not reduce Available Excess Monetization. |
| --- | --- | --- |
| | | None of Earned Interest, Available Interest, Excess Monetization, or Available Excess Monetization shall include the Fire Victim Trust Corpus or the Assigned Rights and Causes of Action (including any cash proceeds resulting from such Assigned Rights and Causes of Action). |
| **State Agency Claim Treatment** | | **Cal OES Fire Claims** |
| | | Upon the State Agency Settlement Effective Date, the Cal OES Fire Claims shall be deemed withdrawn with prejudice and Cal OES shall have no right of recovery against the Fire Victim Trust, the Debtors, or the Reorganized Debtors. |
| | | Upon the Effective Date, the TCC shall withdraw with prejudice the Cal OES Objection, and all other joinders or objections shall be deemed withdrawn. |
| | | **CAL FIRE Fire Claims** |
| | | In full and final settlement of the CAL FIRE Fire Claims, CAL FIRE shall have an Allowed Fire Victim Claim (not subject to reduction, dispute, contest, credit, setoff or other deduction) under the Plan in the amount of $115,300,000.00 (the "**CAL FIRE Settlement Amount**") to be channeled to and satisfied solely and exclusively from the Fire Victim Trust, as follows: |
| | | i. The first $70,000,000.00 of the CAL FIRE Settlement Amount shall be payable solely and exclusively from the first dollars of Earned Interest (with priority over administrative expenses of the Fire Victim Trust) (the "**CAL FIRE Priority Settlement Amount**) as follows: |
| | | &bull; $10,000,000.00 for the period beginning on the Effective Date and ending December 31, 2021; |
| | | &bull; $20,000,000.00 for the period beginning January 1, 2022 ending December 31, 2022; |
| | | &bull; $20,000,000.00 for the period beginning January 1, 2023 ending December 31, 2023; and |
| | | &bull; $20,000,000.00 for the period beginning January 1, 2024 ending December 31, 2024. |
| | | In the event that there is insufficient Earned Interest in any of the foregoing periods to make any of the above payments of the CAL FIRE Priority Settlement Amount, such unpaid amounts shall roll forward and shall be payable from Earned Interest earned in subsequent periods through December 31, 2025, which amounts shall be payable annually. |
| | | ii. After payment in full of the CAL FIRE Priority Settlement Amount, the remaining $45,300,000.00 of the CAL FIRE Settlement Amount (plus any amounts not paid as described |

above) shall be paid solely and exclusively from Available Interest in annual installments until the Fire Victim Trust is terminated or the CAL FIRE Settlement Amount is paid in full.

iii. CAL FIRE shall not be entitled to any interest on the CAL FIRE Settlement Amount. CAL FIRE shall have no right of recovery for the CAL FIRE Fire Claims against the Fire Victim Trust Corpus, the Debtors, the Reorganized Debtors, the Assigned Rights and Causes of Action, the Excess Monetization, the Available Excess Monetization, or any source other than the Earned Interest and the Available Interest, as set forth above. To the extent that the source of payment identified is not sufficient to pay the CAL FIRE Settlement Amount in full, no further amounts shall be due and owing for the CAL FIRE Settlement Amount. For the avoidance of doubt, no claims asserted by CAL FIRE that are not Fire Claims are being settled, compromised, resolved, or affected in any way by the State Agency Settlement, including, without limitation, the Non-Channeled CAL FIRE Claims.

iv. In each calendar year in which there is Earned Interest in excess of the amounts payable under Section 2.2(b)(i) of the State Agency Settlement (described in (i) above) with respect to any calendar year, the amount of such excess for such year shall be credited to a cash reserve by the Fire Victim Trust for future payments (the "**FVT CAL FIRE Reserve**") until the amount of the FVT CAL FIRE Reserve equals the CAL FIRE Priority Settlement Amount, provided, however, that any amounts held in the FVT CAL FIRE Reserve in excess of the aggregate amount required to be paid under Section 2.2(b)(i) of the State Agency Settlement determined as of December 31, 2024, shall be held in reserve for the payment, if any, of the CAL FIRE Settlement Amount and the Cal Agency Settlement Amount, and any amount held in the FVT CAL FIRE Reserve in excess of the aggregate amount required to be paid as describe above and in the State Agency Settlement, if any, shall be released from the FVT CAL FIRE Reserve and considered part of the Fire Victim Trust Corpus.

**Other State Agency Fire Claims**

In full and final settlement of the Cal DDS Fire Claims, the Cal DTSC Fire Claims, the Cal Parks Fire Claims, the CSU Fire Claims, the Caltrans Fire Claims, and the Cal Vet Fire Claims (collectively, the "**Cal Agency Fire Claims**"), the State Agencies (excluding CAL FIRE) shall have an Allowed Fire Victim Claim (not subject to reduction, dispute, contest, credit, setoff or other deduction) under the Plan in the aggregate amount of $89,000,000.00 (the "**Cal Agency**

**Settlement Amount**") to be channeled to and satisfied solely and exclusively from the Fire Victim Trust, as follows:

i. The first $60,000,000.00 of the Cal Agency Settlement Amount shall be payable solely and exclusively from the first dollars of Excess Monetization and, only after the CAL FIRE Settlement Amount has been satisfied in full, from Available Interest (the "**Cal State Agency Priority Settlement Amount**") as follows:

- $10,000,000.00 for the period beginning on the Effective Date and ending December 31, 2021;
- $20,000,000.00 for the period beginning on January 1, 2022 and ending December 31, 2022; and
- $30,000,000.00 for the period beginning on January 1, 2023 and ending December 31, 2023.

In the event that there is insufficient Excess Monetization and Available Interest in any of the foregoing periods to make any of the above payments of the Cal State Agency Priority Settlement Amount, such unpaid amounts shall roll forward and shall be payable from Excess Monetization and Available Interest earned in subsequent periods through December 31, 2024.

ii. After payment in full of the Cal Agency Priority Settlement Amount, the remaining $29,000,000.00 of the Cal Agency Settlement Amount (plus any amounts not paid as described above) shall be paid solely and exclusively from Available Interest and Available Excess Monetization in annual installments until the Fire Victim Trust is terminated or the Cal Agency Settlement Amount is paid in full.

iii. The State Agencies shall not be entitled to any interest on the Cal Agency Settlement Amount. Cal DDS, Cal DTSC, Cal Parks, CSU, Caltrans, and Cal Vet shall have no right of recovery for the Cal Agency Fire Claims against the Fire Victim Trust Corpus, the Debtors, the Reorganized Debtors, the Assigned Rights and Causes of Action, or any source other than the Available Interest, the Excess Monetization, and the Available Excess Monetization, as set forth above. To the extent that the source of payment identified is not sufficient to pay the Cal Agency Settlement Amount in full, no further amounts shall be due and owing for the Cal Agency Settlement Amount. For the avoidance of doubt, no claims asserted by the State Agencies that are not Fire Claims are being settled, compromised, resolved, or affected in any way by the State Agency Settlement.

iv. In each calendar year in which there is Excess Monetization in excess of the amounts payable as described above and in

the State Agency Settlement with respect to any calendar year, the amount of such excess for such year shall be credited to a cash reserve by the Fire Victim Trust for the future payments described above and in section 2.2(c)(i) of the State Agency Settlement, if applicable (the "**FVT Cal State Agency Reserve**"), until the amount of the FVT Cal State Agency Reserve equals the Cal State Priority Settlement Amount, provided, however, that any amounts held in the FVT Cal State Agency Reserve in excess of the amounts required to be paid as described above and in section 2.2(c)(i) of the State Agency Settlement, determined as of December 31, 2023, shall be held in reserve for the payment, if any, of Available Excess Monetization for payment of the Cal Agency Settlement Amount under section 2.2(c)(ii) of the State Agency Settlement and any amount held in the FVT Cal State Agency Reserve in excess of the aggregate amount required to be paid under section 2.2(c)(ii) of the State Agency Settlement, if any, shall be released from the FVT Cal State Agency Reserve and considered part of the Fire Victim Trust Corpus.

**Release of Claims**

Except for the rights expressly arising out of, provided for, or reserved in the State Agency Settlement, upon the State Agency Settlement Effective Date, the State Agencies, on their own behalf and in every other capacity in which they may now or in the future act, hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably release the Fire Victim Trust for the State Agency Fire Claims.

Except as specifically addressed by the State Agency Settlement, the State Agency Settlement does not release, waive, relinquish, discharge, resolve, or settle any claims of any agency of the State of California, including, without limitation, the Non-Channeled State Agency Claims, all of which claims and rights thereto are expressly reserved. The State Agencies reserve all rights with respect to the Plan, the final form of the Fire Victim Trust Agreement and the Claims Resolution Procedures. All of the Debtors' rights and the TCC's rights with respect to the foregoing are also reserved.

| | |
|---|---|
| **Trust Administration** | The State Agencies do not and will not object to the appointment of the Fire Victim Trustee, the Claims Administrator, or any advisors, consultants, professionals or representatives selected or retained by the Fire Victim Trust, the Fire Victim Trustee, or the Claims Administrator to the Fire Victim Trust. The State Agencies shall have no role in the Fire Victim Trust administration; provided, however, if the Fire Victim Trustee fails to perform under sections 2.2(b) and 2.2(c) of the State Agency Settlement, the affected Agency (or Agencies) may seek to enforce the State Agency Settlement by motion |

| | |
|---|---|
| | to the Bankruptcy Court, or if the Bankruptcy Court determines that it lacks jurisdiction, any other forum having jurisdiction to enforce the State Agency Settlement. |
| | The Fire Victim Trustee shall provide the State Agencies the reports of the Fire Victim Trust during the covered periods as provided to the Bankruptcy Court in accordance with the Fire Victim Trust Agreement, when in effect. The State Agencies shall have the same rights as a Fire Victim Claimant, if any, to contest the administration of the Fire Victim Trust. |
| **The Plan** | The State Agency Settlement shall be null and void if the Plan is amended, modified, or supplemented in a manner that either (a) has a material adverse impact on the treatment, payment, or source of payment of the State Agency Fire Claims against the Debtors, as provided in the State Agency Settlement, or (b) channels or seeks to channel the Non-Channeled State Agency Claims to the Fire Victim Trust, in each case, without first obtaining the prior written consent of the TCC, the Debtors, and the State Agencies. |
| **California Public Entity Release** | Upon the State Agency Settlement Effective Date, Cal OES, on behalf of itself and the state of California, (i) releases any and all California public entities of any claims the state of California or Cal OES may have under Section 312 of the Stafford Act, its implementing regulations, and any similar provisions of California law for payments received from the Debtors and the Fire Victim Trust and (ii) deems the California public entities to have fully cooperated in all efforts necessary to recover the costs of assistance from the Debtors and the Fire Victim Trust. |
| **Binding on Trustee and Claims Administrator** | The State Agency Settlement shall be binding upon and inure to the benefit of the Trustee, Claims Administrator, respective predecessors, successors, assigns, heirs, legatees, affiliates, parents, subsidiaries, shareholders, officers, directors, employees, partners, agents, principals, attorneys, representatives, and professionals (as applicable) of the Parties to the extent provided by law. |

## V.   BASIS FOR RELIEF REQUESTED

### A.   Entry into the Governmental Fire Claims Settlements is in the Best Interests of the Debtors' Estates and Should be Approved under Bankruptcy Rule 9019.

Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Grp.*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).

Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation over contentious issues and expedite the administration of the bankruptcy estate. *See Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The decision to approve a particular compromise lies within the sound discretion of the Court. *In re A&C Props.*, 784 F.2d at 1380-81. A proposed compromise and settlement should be approved when it is "fair and equitable" and "in the best interest of the [debtor's] estate." *Id.* at 1381.

The standard for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below the lowest point in the range of reasonableness in terms of benefits to the estate. *See City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim;" rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness'") (*quoting In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.)); *see also In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004); *In re Planned Prot. Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) (same).

Courts in this jurisdiction typically consider four factors in determining whether a settlement should be approved: (1) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (2) the difficulties, if any, to be encountered in the matter of collecting any litigated judgment; (3) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and the proper

deference to their reasonable views. *In re A&C Props.*, 784 F.2d at 1380. It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, the conclusions must favor the approval of the settlement. *See In re Pac. Gas & Elec. Co.*, 304 B.R. at 417 (citing *In re WCI Cable, Inc*., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

The Governmental Fire Claims Settlements represent a reasonable compromise among the Debtors, the TCC, and the Governmental Agencies. Although the Parties have briefed the Claims Objections, the Court has not yet ruled on these matters, thus leaving substantial uncertainty over the size and amount of Fire Victim Claims to be asserted by the Governmental Agencies against the Fire Victim Trust, which uncertainty will be eliminated with approval of the Governmental Fire Claims Settlements. Additionally, approval of the Governmental Fire Claims Settlements will obviate the further time and expense of briefing the issue of classification of the Governmental Agency Fire Claims under the Plan and any further objections or litigation with respect to allowance or amount of the Governmental Agency Fire Claims. And significantly, the compromise reflected in the Governmental Fire Claims Settlements limits the impact on the consideration transferred to the Fire Victim Trust that will be available for Fire Victim Claims other than the Governmental Agency Fire Claims. The Governmental Fire Claims Settlements also fully resolve the Governmental Agency Fire Claims and provide that all recoveries thereon shall be from the Fire Victim Trust and not from any other source.

Each of the factors that Courts consider in connection with a request to approve a settlement under Bankruptcy Rule 9019, and why each of the relevant factors weighs in favors of approving the Governmental Fire Claims Settlements, is set forth below.

### 1. The Probability of Success in Litigation

The Governmental Fire Claims Settlements fully resolve substantial ongoing and potential future litigation regarding the Governmental Agency Fire Claims. Although the Debtors are confident that their proposed classification of the Governmental Agency Fire Claims under the Plan is appropriate, and the Debtors and the TCC are confident that they would be meritorious in their

pursuit of the Claims Objections, the Federal and State Agencies disagree, and neither issue has been resolved by the Court at this time. The Governmental Fire Claims Settlements recognize and appropriately take into account the risk of an adverse outcome in these litigations and also account for the Governmental Agency Fire Claims that are not subject to the Claims Objections, and thus satisfy this factor. *See In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, Nos. 04–10585 (GAC), 04–12634 (GAC), 07–00067 (GAC), 2009 WL 2913685, at *3 (Bankr. D.P.R. Mar. 31, 2009) ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily in favor of the approval of the Settlement Agreement."). Additionally, although a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851-52 (9th Cir. 1976), or conduct a full independent investigation, *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. *See also In re Pac. Gas & Elec. Co.*, 304 B.R. at 417.

The Debtors, with the assistance and advice of their retained professionals, have carefully considered the risks, complexity, and expense associated with litigating the Governmental Agency Fire Claims, the potential delays that would be occasioned by such litigation, and the potential of the Claims to affect timely confirmation of the Plan and negatively impact the recoveries of the individual Fire Victim Claimants. In so doing, the Debtors have determined that resolving the Governmental Agency Fire Claims as provided in the Governmental Fire Claims Settlements is a prudent exercise of business judgment on behalf of the Debtors and in the best interests of the Debtors' estates.

    2.    *The Difficulties to be Encountered in Collecting Any Litigated Judgment*

The difficulties of collection inherent to the litigation at issue are not a relevant consideration here, as the Debtors are seeking to settle claims asserted against them, not claims for recovery they may have against another party. *See In re Equa-Chlor LLC*, No. 08-40599, 2008 WL 1927066, at *6 (Bankr. W.D. Wash. Apr. 29, 2008) ("The Court places little weight on this factor. The proposed

settlement involves a claim that the Debtor is defending against rather than seeking any affirmative relief. Collectability is therefore irrelevant.").

### 3. The Complexity and Expense of Any Litigation

The costs associated with litigation can erode stakeholder recoveries—separate and apart from the risk generally inherent in the pursuit of uncertain litigation and its impact on the expeditious administration of these cases. *See Nellis*, 165 B.R. at 124. Compromises are favored precisely to "minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F.3d at 393. This settlement is no different. Entry into the Governmental Fire Claims Settlements now saves the time and expense associated with briefing and preparing for oral argument on the Classification Issue, which was scheduled to commence on March 13, 2020, as well as other potential objections the Governmental Agencies may have later raised regarding the allowance or treatment of the Governmental Agency Fire Claims, including issues relating to the treatment of such Claims in connection with Plan confirmation. This factor thus favors approval of the settlements.

### 4. The Interests of Creditors

This factor overwhelmingly supports entry into the Governmental Fire Claims Settlements, which minimizes the impact of the Governmental Agency Fire Claims on other holders of allowed Fire Victim Claims, and protects the estates from any further recoveries on account of the Governmental Agency Fire Claims. Additionally, under the Governmental Fire Claims Settlements the allowed amount of the Governmental Agency Fire Claims will be reduced from an asserted amount of approximately $7.5 billion to approximately $1.3 billion, $1 billion of which, as described above, will be subordinated in payment to all other holders of Fire Victim Claims. Approval of the Governmental Fire Claims Settlements now will also eliminate further issues that could, potentially, have delayed confirmation of the Plan and distributions to the Debtors' creditors and other stakeholders, including Fire Victims. *See In re Cresta Tech. Corp.*, No. 16-50808 MEH, 2018 WL 2422415, at *5 (Bankr. N.D. Cal. May 29, 2018) ("This interest [of the creditors] reflects

the desire of creditors to obtain the maximum possible recovery but also their competing desire that recovery occur in the least amount of time.") (quotation marks omitted).

In the Debtors' and the TCC's sound business judgment, the Governmental Fire Claims Settlements are fair, reasonable, and equitable, and in the best interests of their estates. They should thus be approved.

**B. Entry into the Governmental Fire Claims Settlements is a Sound Exercise of the Debtors' Business Judgment and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code.**

The Court may also authorize the Debtors to enter into the Governmental Fire Claims Settlements pursuant to sections 363(b) and 105(a) of the Bankruptcy Code because entry into the Governmental Fire Claims Settlements falls well within the Debtors' sound business judgment.

Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the relief requested herein. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification."); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also, In re AWTR Liquidation Inc.,* 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) (referencing the Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C); *In re Johns-Manville Corp.*, 60 B.R. at 615–16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Thus, if a debtor's actions satisfy the business judgment rule, then the transactions in question should be approved under section 363(b)(1) of the Bankruptcy Code. For all the reasons discussed above, the Debtors' actions here easily meet this requirement and, therefore, the Debtors' entry into the Governmental Fire Claims Settlements should be approved.

## VI.  NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the TCC; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) counsel for FEMA, the SBA, and the Federal Agencies; (xiii) counsel for the State Agencies; and (xiv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment, appropriate under sections 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) the Debtors such other and further relief as the Court may deem just and appropriate.

Dated: April 25, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By: ___/s/ Stephen Karotkin_
Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*