Steven S. Kane, Esq., SBN: 061670
Bonnie E. Kane, Esq., SBN: 167700
**THE KANE LAW FIRM**
402 W. Broadway, Suite 2500
San Diego, CA 92101
Telephone: (619) 236-8700
Facsimile: (619) 236-1370
E-mail: skane@thekanelawfirm.com
E-mail: bonnie@thekanelawfirm.com

Attorneys for KAREN GOWINS Creditor

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re:* | ) |
| | ) **Case No. 19-30088 (DM)** |
| PG&E CORPORATION | ) Chapter 11 |
| | ) (Lead Case) |
| -and- | ) (Jointly Administered) |
| | ) |
| PACIFIC GAS AND ELECTRIC | ) **JOINDER ON BEHALF OF KAREN** |
| COMPANY | ) **GOWINS IN WILLIAM B. ABRAMS'** |
| Debtors. | ) **MOTION TO DESIGNATE** |
| | ) **IMPROPERLY SOLICITED VOTES** |
| ☐ Affects PG&E Corporation | ) **PURSUANT TO 11 U.S.C. §§ 1125(b) AND** |
| | ) **11226 (e) AND BANKRUPTCY RULE** |
| ☐ Affects Pacific Gas & Electric | ) **2019** |
| | ) |
| ■ Affects Both Debtors | ) Docket Nos. 6799, 6798, 6801 |
| | ) |
| *All papers shall be filed in the Lead Case,* | ) Date: TBD |
| *No.19-30088 (DM)* | ) Time: TBD |
| | ) Place: United States Bankruptcy Court |
| | ) Courtroom 17, 16th Floor |
| | ) San Francisco, CA 94102 |

Undersigned Counsel submits this joinder in the Motion to Designate Improperly Solicited

Votes Pursuant to 11 U.S.C. §§ 1125 (b) and 1126 (e) and Bankruptcy Rule 2019, on behalf of

Camp Fire survivor and creditor, Karen Gowins.

## I. Introduction

Karen Gowins, a fire victim claimant in this Chapter 11 case, and, a former member of the

Official Committee of Tort Claimants, hereby joins in the Motion of William B. Abrams To

JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE
IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND11226(e) AND BANKRUPTCY
RULE 2019

Case: 19-30088    Doc# 6944    Filed: 04/25/20    Entered: 04/25/20 14:48:34    Page 1 of
10

Designate Improperly Solicited Votes Pursuant to 11 U.S.C §§ 1125(b) and 1126(e) and

Bankruptcy Rule 2019, and, moves the Court for an Order that Attorney Mikal Watts and

affiliated counsel representing fire victim claimants in this case, (1) pursuant to California Rule of

Professional Conduct 1.7, disclose in form and content approved in advance by the Court to each

and every such client in this case all real or potential conflicts of interest arising from litigation

financing obtained by their counsel to finance their claimant cases, and, (2) after such disclosure

request each client to execute a waiver of the designated conflict. The litigation financing

obligations at issue have been assigned to Apollo Group, an entity providing $604,000,000 in

financing to the proposed Plan.

The conflict exists because Mr. Mikal Watts, and, potentially lawyers affiliated with him

have obtained litigation financing held by Apollo Group. In short, Apollo Group is one of Mr.

Watts' litigation lenders and stands to reap great rewards if the proposed Plan is approved.

Exhibit 1, p.8, *Third Amended Verified Statement of the Ad Hoc Committee of Senior Unsecured*

*Noteholders Pursuant to Bankruptcy Rule 2019* Dkt. 6747 (April 13, 2020) to this Joinder

contains a detailed statement showing that Apollo holds interests in the proposed plan totaling

$604,000,000 in value.

Mr. Watts has not disclosed the amount that he and his affiliated counsel owe to Apollo

nor has he revealed the terms of the loan transaction. However, he has admitted in his town hall

meeting on December 12, 2020 that Apollo holds his notes for his line of credit. *See* Exhibit D, p.

2, at 4:17, 4:30 to *William B. Abrams Mot. To Designate Improperly Solicited Votes,* Dkt

No.6799-1. Further, Mr. Watts states in his Declaration that "Watts Guerra has disclosed to its

clients and to others its communications in this case with **assignees of portions of its credit**

**facility**, and its subsequent communications with principals of the Debt and the Equity."

JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE
IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND1226(e) AND BANKRUPTCY
RULE 2019
USBE/NDCA No. 19-30088 (DM)

*Declaration of Mikal Watts in Support of His Preliminary Opposition to William B. Abrams Motion to Designate Improperly Solicited Votes,* Dkt. No. 6801-1, 3:19-20 (*Watts Dec*). Although he recognizes the conflict sufficiently to disclose it, he does not do so in a manner which complies wit*h the California State Bar Rules.*

*Significantly*, Mr. Watts and his affiliated lawyers are conducting an extensive, intense, expensive and almost frantic campaign through multiple media to convince not only their own clients, but all other fire victims to vote for the Plan. *See* Exhs. A, B and C to *William B. Abrams Mot. To Designate Improperly Solicited Votes,* Dkt. 6799-1, examples of advertising.) The targets of this tidal wave of lawyer advertising include thousands of claimants who have not retained attorneys and thus cannot verify what they are being told by Mr. Watts and his affiliated lawyers by contacting their own counsel. To moving party's knowledge, none of the ads contain detailed disclaimers revealing the financial position of their litigation lender in the case or the conflict created by that situation.

In addition to complete disclosure of the admitted conflict, moving party requests a further Order of the Court that "Yes" votes in favor of the plan received from clients of Mr. Watts and his affiliated counsel should be designated as not obtained in good faith and not counted in the Plan vote unless the appropriate conflict waiver has been obtained from those voting claimants.

**II. Mr. Watts' Own Declaration in Opposition to Mr. Abrams' Motion Shows that a Conflict Exists between Watts and Affiliated Firms and their Clients Concerning Respondents' Advice to Their Clients and All Fire Claimants to Vote "Yes" in support of the Proposed Plan.**

Significantly, Mr. Watts' Declaration shows that he fundamentally misconstrues the purpose and function of rules relating to attorney conflicts of interest. In almost his entire Declaration, Mr. Watts goes to great lengths to give detailed assurances that he has not committed deliberate misconduct by following the instructions or requests of his lender to campaign in favor of the

3

Case: 19-30088    Doc# 6944    Filed: 04/25/20    Entered: 04/25/20 14:48:34    Page 3 of 10

USBE/NDCA No. 19-30088 (DM)

proposed Plan.  However, he "protests too much," since he is not being accused here of such misconduct.   Indeed, no actual violation of the attorney client relationship is necessary in order to invoke the rules regarding conflicts or the procedures required to mitigate them.  Under California State Bar Rules and the Rules of this Court, the attorney faced with a real or potential conflict is required to take specified action to deal with those conflicts, which Mr. Watts has not done.

The clear and admitted conflict of Mr. Watts and his affiliated attorneys between themselves and major investors in the proposed Plan is concisely described and summarized in a news story dated April 25, 2020 written by Lily Jamali of KQED, San Francisco, the local KPBS outlet. (*See* Ex. 3).  The KQED article identifies and describes Mr. Watts' knowledge of the conflict he had arising from ownership of his litigation funding debt by plan investor Apollo, as well as plan investor Centerbridge.  His knowledge was admitted by him to be as early as November 5, 2019 nearly five months before the beginning of the plan voting process as shown by the transcript of his meeting with clients   (*See* Exhibit D, p. 2, at 4:17, 5:26, 5:40 to *William B. Abrams Mot. To Designate Improperly Solicited Votes,* Dkt No.6799-1.)

The purpose of this Motion is to secure compliance with conflict rules and protect the integrity of the Plan vote by assuring that Mr. Watts' clients casting an effective vote will have done so after waiving the conflict.

4

JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 11226(e) AND BANKRUPTCY RULE 2019

Case: 19-30088   Doc# 6944   Filed: 04/25/20   Entered: 04/25/20 14:48:34   Page 4 of 10

USBE/NDCA No. 19-30088 (DM)

### III. California Rule of Professional Conduct Rule 1.7(b) Requires Mr. Watts and his Affiliated Lawyers Resolve the Serious Conflict Created by Their Litigation Financing held by a Major Financial Participant in the Proposed Plan, But They Have Failed to Do So.

Rule 1.7(b) of the California State Bar Rules of Professional Conduct requires with respect to conflicts of interest that:

> "A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests." Cal. Rules of Prof'l Conduct R.1.7(b) (2018)

Lawyers practicing in this Court are required to "Be familiar and comply with the standards of professional conduct required of members of the State Bar of California." (Rule 11-4 (1)(a)(1) Local Civil Rules of the U.S. District Court of the Northern District of California as incorporated by Rule 1001-2 (a) of the Bankruptcy Local Rules of the U.S. Bankruptcy Court for the Northern District of California)

Comment 4 to Rule 1.7 states that:

> "Even where there is no direct adversity, a conflict of interest requiring informed written consent under paragraph (b) exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal." Cal. Rules of Prof'l Conduct R. 1.7 com. 4 (2018)

Admittedly, Mr. Watts has a significant interest in his obligation to the Apollo Group which will certainly benefit from approval of the proposed Plan. However, he has also admitted that he has failed to comply with Rule 1.7 concerning the conflict arising from his litigation financing and he continues to advise his 16,000 clients, and, indeed all other fire victims whether they are represented by counsel or not, to vote for that proposed Plan. In this regard, Mr. Watts' interest

5

aligns precisely with the interest of his lender, but not necessarily with that of his clients. Conflict rules were created to cure precisely this kind of situation.

Conflicts of interest between plaintiffs' counsel and their clients in mass tort cases have attracted more attention from judges and commentators as these cases have ballooned in numbers of plaintiffs and size of fees. In a case arising out of the World Trade Center attack on 9/11 the Court dealt with such issues in *In re World Trade Center Disaster Site Litigation,* 769 F.Supp.2d 650, 651 (S.D.N.Y 2011). The plaintiffs in *World Trade Center* were 10,500 individuals who were rescue and clean-up workers who "performed heroic service on the World Trade Center pile of smoldering debris." *Id.* at 657. Concerning conflicts involving plaintiffs' lawyers, Judge Hellerstein stated:

> Napoli Bern, in the expectation of a contingency fee, had advanced over 10,000 cases for nine years without compensation. As I learned later in the litigation, from a motion that Napoli Bern withdrew, the firm was deeply in debt, to the extent of millions of dollars, secured by personal guarantees of the principals of the firm, payable at high, compounding interest rates. Approval of the SPA would produce approximately $150 million for the firm in fees, plus expenses, and would allow the firm to liquidate its debt. *Id.* at 652.)

> Their need to finance their cases over several years of hard-fought and expensive litigation creates substantial financial debts, financed at high compound interest rates. Repayment of the loans tends to depend on settlements or recoveries of the lawsuits, the outcomes of which tend to be far from certain. These debts create powerful motivations that potentially can interfere with the lawyers' professional obligation to serve clients' interests first and foremost"[1] *Id* at 657.

In the present case the Court is faced with a conflict situation very similar to the one confronted by Judge Hellerstein in *World Trade Center, supra,* in which the lawyers' objectivity in rendering objective, unbiased advice and representation to a number of clients was made questionable due to the lawyers' high litigation expense debt. The Court solved the problem by

---

[1]  The subject of conflicts of interest of plaintiffs' lawyers in mass tort cases is explored further in Nancy J. Moore, *Ethical Issues in Mass Tort Plaintiffs' Representation: Beyond the Aggregate Settlement Rule.* 81 Fordham L. Rev. 3233 (2013).

6

It is easy to imagine parties who want to control the creditor vote in a mass tort Chapter 11 case purchasing obligations of plaintiffs' counsel to repay litigation cost loans in order to obtain undue and improper influence over those counsel regarding their advice to their clients on plan voting. There is no evidence that this has occurred in the present case, but compliance with conflict of interest rules has the salutary effect of preventing even the appearance of such a bad faith scheme which would undermine the integrity of the voting and plan confirmation processes.

Here, the Court can, and should resolve the conflict by requiring clients of Mr. Watts and his affiliated lawyers to give written waivers of the conflict after full disclosure in order for their votes in favor of the Plan to be counted.

**IV. Mr. Watts' Declaration In Opposition to The Abrams' Motion Shows That He has Never Made a full Disclosure of the Conflict to his Clients, and, That He Has Failed to Obtain the Written Conflict Waivers Required by Rule 1.7.**

Mr. Watts' Declaration conclusively shows that he has failed to make the disclosures and obtain the client waivers required by Rule 1.7. In this regard, the pleadings filed by Mr. Watts in opposition to Mr. Abrams' Motion allege with regard to disclosure of the real or potential conflict with the litigation finance company that:

> "Watts Guerra has disclosed to its clients and to others its communications in this case with assignees of portions of its credit facility, and its subsequent communications with principals of the Debt and Equity. Specifically, Mikal Watts conducted an in-person town hall to WATTS-GUERRA'S clients in Chico on December 12, 2020, and in Santa Rosa later the same day. This town hall was filmed and all WATTS-GUERRA clients received an update email or letter shortly thereafter with a link to those town meeting…" (Ex. 3, Declaration of Mikal Watts in Support of His Preliminary To William B. Abrams' Motion

---

[2] Judge Hellerstein could not resolve the conflict in *World Trade Center* by requiring notice to the clients and waiver as can be done here because one of the conflicts in *World Trade Center* involved conflicting interests of two client groups both represented by plaintiffs' counsel. That situation required appointment of the Court of separate counsel for one group.

to Designate Improperly Solicited Votes Pursuant to 11 U.S.C 6(e) and Bankruptcy Rule 2019.)

"Watts Guerra provided the disclosure statement and other materials required by this Court digitally early in the morning of March 31, 2020, before beginning its communications program during the voting period." (Dec. of Mikal Watts, 4:6-8.) [3]

Mr. Watts also indicated that he provided the conflict information on his website.

Despite these claims, Mr. Watts does not describe a complete disclosure of the existing conflict to his 16,000 clients. Rather, he refers to "town meetings" which were certainly not attended by all of his 16,000 clients with a "link" to clients who did not attend if they choose to utilize it. This is puzzling since a good-faith effort to disclose the conflict would have employed a letter or email message sent at the same time to all clients. Mr. Watts does not explain why he did not utilize these simple communications methods.

Mr. Watts does not allege that he ever made the required specific, detailed and complete disclosure of his conflict relationship with the Apollo Group in a letter to all of his clients including a form which could be returned by each client who chose to waive the conflict. Most significantly, Mr. Watts fails to explain why he did not comply with Bankruptcy Rule 2019 by filing the required disclosure of his business relationship with Plan investors with this Court.

---

[3]   Interestingly enough, Mr. Watts may have transferred to his own clients the Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, the supplement thereto, the Fire Victim Plan Treatment Summary and related documents that were provided by Prime Clerk with the ballots, but he did not provide those to other fire victims prior to his affiliate counsel publishing a public ad soliciting affirmation of the plan on March 31, 2020, which was many days prior to all fire victims receiving the Disclosure Statement information by mail. This appears to be in violation of the solicitation rules under 11 U.S.C.S 1125(b). *See* Exh. A to *William B. Abrams Mot. To Designate Improperly Solicited Votes,* Dkt. No.6799-1 (Press Democrat ad placed by Watts affiliate with reference to website containing Watts videos, but no Disclosure Statements.).

8

## V. The Court has Authority Under Bankruptcy Rule 2019(b) to Require Full Disclosure of the Admitted Conflict By Attorney Watts and his Affiliated Counsel to All of Their Clients In This Case, and, to Require Proof of Waiver of that Conflict by all Clients Casting "Yes" Votes in Favor of the Plan.

Clearly, the Court has authority to make the requested disclosure orders in this case. In *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.* 321 B.R. 147 (D.N.J. 2005) the District Court upheld an order of the Bankruptcy Court requiring law firms who represented numerous asbestos tort claimants to file statements under Bankruptcy Rule 2019(b) disclosing the referral fee and fee-sharing arrangements among those firms. Concerning its jurisdiction and authority to order the disclosures, the Court stated that: "Regulation of professional responsibility with respect to creditors' or debtors' counsel is squarely within the purview of the bankruptcy court regardless of whether third-party non-debtors are involved." *Id.* at 163.

In *In Re Washington Mutual* 442 B.R. 314, 326 (Bankr. D. Del. 2011) The Court stated that "The Court takes seriously any allegation that professionals involved in case before it are conflicted or have acted reorganization *has not been proposed in good faith."* citing *In Re Coram Health Care Corp.* 271 B.R. 228, 234-40 (Bankr. D. Del 2004). (Emphasis added.)

The admitted failure of Mr. Watts and his affiliated lawyers to make the required disclosure of a serious conflict and obtain waivers from his 16,000 clients as required by the California Rules of Professional Conduct fundamentally undermines the integrity of the plan voting process and will result in a Plan which has been proposed in bad faith.

Finally, the seriousness Mr. Watts' failure to fully disclose the conflict is made much more serious since he and his affiliates have conducted a massive advertising campaign directed to *all* fire claimants urging a "yes" vote on the proposed plan. To Moving Party's knowledge, none of this advertising contains a disclaimer or disclosure of the admitted conflict of interest described in this Motion. As a result, not only the "yes" votes of Mr. Watts' 16,000 clients are

9

USBE/NDCA No. 19-30088 (DM)

tainted by his conflict, but, those of *all* fire claimants voting on the Plan.

**ORDER REQUESTED**

Moving party, Karen Gowins, requests that the Court issue the following order with respect to the established conflict of interest with regard to Mr. Watts, the Watts Guerra law firm, his affiliates and their 18,000 clients who are tort claimants in this case:

1. Within 5 days of the date of the order, Respondents shall present a factual and concise but complete disclosure of any and all conflicts of interest or potential conflict regarding litigation financing which Respondents have obtained with regard to representing clients in this case for approval by the Court;

2. After approval, Respondents shall mail, send by U.S. mail or deliver each of their clients in this case by some other reliable method the approved disclosure along with a form by which clients may, at their discretion, waive the conflict in writing.

3. Votes of Respondents' clients who have not executed the written waiver required by the Order shall be designated as not being in good faith and shall not be counted in the Plan vote tally.

Respectfully submitted.

Dated: April 24, 2020.       **THE KANE LAW FIRM**

By: /s/ *Steven S. Kane*_____

STEVEN S. KANE
*Attorneys for Creditor KAREN GOWINS*

10

JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE
IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND11226(e) AND BANKRUPTCY
RULE 2019

Case: 19-30088    Doc# 6944    Filed: 04/25/20    Entered: 04/25/20 14:48:34    Page 10 of 10

USBE/NDCA No. 19-30088 (DM)