William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Claimant and*

*Party to California Public Utilities Commission Proceeding I.19-09-016 to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19- 30088.*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**RESPONSE TO THE OPPOSITION OF WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019 [Dkt. 6891]**<br><br><u>Hearing:</u> Telephonic Appearances Only<br>Date: TBD<br>Time: TBD<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA, 94102 |

**PRELIMINARY STATEMENT**

1.  I, William B. Abrams, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

2.  First, I want to state for the record that I will not be deterred by the baseless lies that have been lodged against me and that are joined and referenced in the subsequent opposition to my motion. Along with other wildfire survivors, I sought to secure the participation of Tom Wagner, Knighthead Capital Management LLC and Jim Chanos, Kynikos Associates LP in a public forum to discuss opposing positions on the stock to help inform victims about the risks and benefits of the stock-component in this settlement. Our intention, along with the journalist who planned to moderate, was to create a balanced discussion with a panelist that has a short-position on the stock (Chanos) and another stakeholder that is long and heavily invested in the stock (Wagner). When Mr. Wagner indicated that he was unable to attend, we cancelled the event because it was always our intention to have a balanced forum. Moreover, I have not and will not receive any financial compensation for engagement in this proceeding and I have zero interest in PG&E stock unless it is forced upon me through the victim trust as the only recourse to recover for the damages to my family and my home at the hands of Pacific Gas and Electric Company (PG&E).

3.  To be clear, the only incentives myself and other victims need in to engage in this proceeding are to work to advance the safety and security interests of our families and our communities through supporting a reimagined and reorganized PG&E along with just settlement for all PG&E victims. The efforts by certain parties within this proceeding and outside the courtroom are clearly designed to intimidate me, other like-minded wildfire survivors and the press who have chosen to shed light on these critical issues. These attacks also seem to be designed to distract from the central issues I raise in my motion (financial disclosure and the designation of improperly solicited votes). Given this, I would ask the court to consider the following response to the seemingly substantive objections from The Singleton Law Firm, APC, Marshack Hays LLP and their co-counsel

("SLF and co-counsel") which at their core are nothing more than convenient misinterpretations of tangential issues that are not core to my arguments.

**RESPONSE**

4. Initially, SLF and co-counsel, rather than addressing the material issues I raise in my motion, suggest that I must have ulterior motives for "suggesting an alternative plan".[1] However, I have not in any way endorsed or promoted an alternative plan. My goal at every step of this proceeding has been to work collaboratively with other parties to improve the existing plan and other plans in a manner that is consistent with a just and transparent process. In fact, due to my personal experience running from the fires and my active participation in wildfire related California Public Utility Commission (CPUC) proceedings, my initial filings in this court were focused on improving the plan and related documents like the RSAs to ensure that safety and wildfire risk mitigation concerns were made more of a central focus given the "business judgement rule" [Dkt. 3828, 3906, 4468, 5139]. In these same filings and at the CPUC, I expressed significant reservations regarding alternate plans for those same reasons. I was and remain concerned that this plan and the plan alternatives focus on the structure (customer-ownership vs. public-ownership vs. investor-ownership) and the dollars (bondholder vs. shareholder vs. ratepayer vs. taxpayer) and yet spend very little time articulating how any of these combinations will provide real restructuring focused on measured risk reduction on a road to provide safe and reliable service.

5. Now, articulating these safety concerns and making recommendations for changes to the PG&E corporate structure to address the risks are NOT inconsistent with the mutual goal of ensuring victims receive fair and just compensation. I do not accept the false choice that we must either push for a just settlement for victims OR a restructured PG&E oriented to provide safe and reliable service. After all, victims are rebuilding their homes and their lives alongside the PG&E lines and understand first-hand the implications of an ill-structured PG&E. Many climate and utility

---

[1] See "Opposition to William B. Abrams Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §§ 1125(B) and 1126(E) and Bankruptcy Rule 2019; and joinder to preliminary opposition to William B. Abrams Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §1125(B) and 1126(E) and Bankruptcy Rule 2019 Filed by Numerous Wild Fire Claimants", pg. 2-3 [Dkt. 6891]

experts believe that this summer poses even greater utility-caused wildfire risks for PG&E than existed in 2017 and 2018. Indeed, this risk analysis has precipitated key executives and investors to position themselves for a quick exit and/or to ensure securitization in this deal before the start of wildfire season. It is because of these issues and not in spite of them that we must ensure that victims are not victimized again by exposing their settlement to these risks while entrenched investors like shareholders and bondholders that signed up for those risks are buffered by early cash-out clauses and the victim trust management rules they hope to set.

6. Next, SLF and co-counsel seem to indicate that the misleading pressure campaign and disinformation vote solicitation practices that started on March 31, 2020 are somehow OK because electronic disclosure statements were reportedly sent at the same time to some victims. This fails to recognize both the plainly wrong content of those solicitations like *"We alone have the power to decide whether to force PG&E to pay the $13.5 billion..."* or the fact that the vast majority of victim claimants purposely targeted by those public solicitations didn't get the disclosure statement until much later. In fact, 11 U.S.C. §§ 1125(B) states directly that disclosure statements must be provided *"at the time of or before such solicitation"*. There is no such qualification or stipulation to suggest that vote solicitation in public to ALL claimants is permitted because SOME claimants receive the disclosure statement.

7. I ask the court to consider that nowhere in the SLF and co-counsel filed opposition to my motion does it defend or justify the incorrect content or misleading message framing in the vote solicitation examples I call out. I believe that this is because no reasonable defense could or should be provided. Simply stated, it is indefensible. However, if SLF and co-counsel or other parties want to defend the vote solicitation practices referenced in my motion then they are certainly welcome to take that position. However, I am confident that myself and other parties will be able to clearly demonstrate to the court how and why these are NOT "good-faith" solicitations according to 11 U.S.C. §§ 1126(E) and welcome the opportunity to present those findings at a hearing time convenient for the court. The degree to which these same solicitation practices were or were not influenced by undisclosed violations of bankruptcy rule 2019 is also critical for the court to determine.

8. Now, the SLA and co-counsel opposition to my motion seems to sing a familiar refrain that the Restructuring Support Agreement (RSA) does not interfere with the ability of Fire Claimant Professional to speak openly about the plan. This is in direct contradiction with statements from other attorneys that do feel significantly restricted from informing their clients about the risks of the plan due to the many RSA provisions. If fact, some TCC members and their counsel felt so constrained that they were compelled to resign from the TCC in protest. This and other matters relating to their resignations remain largely unaddressed by the court to date.

9. Moreover, it is very disingenuous for SLA and co-counsel to point to the one forum that myself and other volunteer wildfire survivors organized as proof for how victim attorneys are free to voice their views. All evidence points to the contrary. PG&E wildfire survivors held this forum because balanced views were not represented in the other town-hall-style meetings and within other vote solicitation practices. It should NOT be incumbent upon victims to organize these events in order to hear different views of the plan and to uncover the real risks that are largely unexplored and not discussed by victim attorneys. In fact, despite encouragement from myself and other victims to ensure more balance and disclosure of risks in how presentations were managed, this forum was and remains an outlier among stilted and one-sided campaign rally type events. In point-of-fact, victim attorneys who are proponents of the plan have changed their campaign in recent days to ease up on the hard-sell messaging. This is likely due to their early vote tabulation and resulting confidence that they have the votes regardless of what other votes are cast and/or due to push back from undecided voters that have gotten unfairly inundated with robo-calls, text messages and emails to vote "yes".

10. Lastly, I would like to point out that SLF and co-counsel in no way address bankruptcy rule 2019 and they do not seem to object to its enforcement in this proceeding. I sincerely hope that is due to a general willingness by SLF and other victim attorneys to make known to the court and to their clients these "disclosable economic interests". I certainly understand and appreciate that there are some victim attorneys who have provided these disclosures willingly to their clients. That said, the information that I brought to light in my motion should compel the court to question the extent to which there is or is not undisclosed financial conflicts. Did financial incentives for victim attorneys motivate them to help facilitate a deal to align shareholders and bondholders

around the current plan and push out the other plans that would have gotten victims an all-cash settlement? What other attorney disclosable economic interests don't victims know that might help inform their vote on this plan? I ask the court to consider the information I provided in my motion and the subsequent support and validation it has received.

11. Furthermore, I urge the court not to be dissuaded by the immaterial arguments posed by SLF and co-counsel. Understanding the financial incentives and disincentives of core stakeholders in this bankruptcy process is critical particularly given the fiduciary obligations of the TCC attorneys and those of the Fire Claimant Professionals. Victims should not be the only class of claimants kept in the dark regarding the financial incentives surrounding this case. I sincerely hope that these undisclosed economic interests at no time and in no way unduly influenced victim attorneys. However, given the information that has been shared with me and which in-turn I have and will share with the court, I respectfully ask for Your Honors' ongoing thoughtful consideration.

## **CONCLUSION**

12. For the reasons set forth above, I respectfully request that the court order the designation of improperly solicited votes in accordance with 11 U.S.C. §§ 1125(B) and 1126(E). Additionally, I request that the court order the disclosure of economic interests as stipulated in bankruptcy rule 2019.

Dated: April 27, 2020

Respectfully submitted,

William B. Abrams
Claimant