WATTS GUERRA LLP
Mikal C. Watts
Paige Boldt, SBN 308772
70 Stony Point Road, Suite A
Santa Rosa, California 95401
Phone: (707) 241-4567
2561 California Park Drive, Suite 100
Chico, California 95928
Phone: (530) 240-6116
Email: mcwatts@wattsguerra.com
       pboldt@wattsguerra.com

*Attorney for Numerous Wild Fire Claimants*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REPLY TO DOC. #6944 (KANE/GOWINS) REGARDING WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019** |
| ☐Affects PG&E Corporation<br>☐Affects Pacific Gas and Electric Company<br>☒Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: TBD<br>Time: TBD<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>[Re: Docket No. 6799, 6964, 6963] |

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD

On April 20, 2020, William Abrams ("Abrams") filed his Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §1125(B) and 1126(E) and Bankruptcy Rule 2019 ("Motion") (Doc. #6799), and an *Ex Parte* Motion Pursuant to B.L.R. 9006-1 Requesting Order

- 1 -

Shortening Time for Hearing (Doc. #6798). As the attorneys for numerous wildfire claimants, WATTS GUERRA filed its Preliminary Opposition to Abrams' Motion the same day (Doc. #6801) "Opposition"), and this Court denied Abrams' Ex Parte Motion on the same day (Doc. #6800).

Since then, attorney Steven Kane on behalf of Karin Gowins (Doc. #6944) filed a joinder to Abrams' Motion (the "Joinder"), and then Abrams himself filed a Response (Doc. #6946) (the "Response"), an *Ex Parte* Motion for Order Shortening Time (Doc. #6963) and a Declaration in Support of the same (Doc. #6964).

WATTS GUERRA hereby replies herein to Kane/Gowins and Abrams' *Ex Parte* Motion.

I. **REPLY TO KANE/GOWINS**

Kane/Gowins erroneously allege noncompliance with Rule 1.7 of the California Bar Rules of Professional Conduct, and seek an order requiring a court-approved written disclosure and conflict waiver form, then a disallowance of the votes of all those clients not signing and returning it. Both the allegation made and the requested remedy sought are legally erroneous.

A. **WATTS GUERRA HAS COMPLIED WITH RULE 1.7**

Rule 1.7 has four parts, none of which has been violated here.

*First*, Rule 1.7(a) states that "A lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter." Kane/Gowins allege no violation of 1.7(a). Indeed, Watts Guerra's standard retention agreement makes a disclosure that the firm represents multiple clients, and secures permission to do so:

> **MULTIPLE CLIENTS.** Client understands and agrees that the Firms may be representing more than one client in this matter and that the following aspects of joint representation have been disclosed: (1) that the Client might gain or lose some advantages if represented by separate counsel; (2) that the Firms cannot serve as an advocate for one client against another client, but must assist all clients in pursuing their common purposes; (3) that the Firms must deal impartially with every client; (4) that information received by the Firms from or on behalf of any jointly represented client concerning the matter may not be confidential or privileged as

- 2 -

between the jointly-represented clients and may be disclosed to other jointly-represented clients as is deemed proper or necessary; (5) if a conflict arises between clients that results in the discharge or withdrawal of the Firms, the Firms might not be able to continue representing any of the clients involved; and (6) that the representation of all clients by the Firms will not necessarily expedite handling of the matter or reduce associated attorneys' fees and expenses. **Client consents to the Firms representing more than one client in this matter.**

Declaration of Mikal Watts, attached as Exhibit "A" hereto, p. 2, ¶3. Furthermore, there is no direct adversity between clients represented by WATTS GUERRA, and none has been alleged by Kane/Gowins in their filing. Thus, Rule 1.7(a) has been complied with by WATTS GUERRA.

*Second*, Rule 1.7(b) has been complied with by WATTS GUERRA. It states that

> A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests.

Because there is no "significant risk" that WATTS GUERRA's representation of its clients will be "materially limited" by its credit facility – as explained in Section I(C)(1)(a-c) herein, it is not required to obtain written consent. Rather, it merely needs to make the disclosure required by Rule 1.7(c), which it has done repeatedly.

*Third*, Rule 1.7(c) requires merely written disclosure – but not a written waiver – under the following scenarios:

> Even when a significant risk requiring a lawyer to comply with paragraph (b) is not present, a lawyer shall not represent a client without written disclosure of the relationship to the client and compliance with paragraph (d) where:
>
> (1) the lawyer has, or knows that another lawyer in the lawyer's firm has, a legal, business, financial, professional, or personal relationship with or responsibility to a party or witness in the same matter; or
> (2) the lawyer knows or reasonably should know that another party's lawyer is a spouse, parent, child, or sibling of the lawyer, lives with the lawyer, is a client of the lawyer or another lawyer in the lawyer's firm, or has an intimate personal relationship with the lawyer.

Subpart two does not apply; however, subpart one – "the lawyer has…. a … business, [or] financial … relationship with or responsibility to a party or witness in the same matter" – possibly could.  So, WATTS GUERRA repeatedly has disclosed both orally and in writing to its entire client base detailed information concerning its credit facility in detail, the assignees thereof whom it met, and those with whom it negotiated whom were introduced to WATTS GUERRA by such assignees, and repeatedly has passed those disclosures along to all its clients in writing, and also made such disclosures publicly.  Declaration of Mikal Watts, attached as Exhibit "A" hereto, pp. 2-3, ¶5.

> ***Fourth***, Watts Guerra is in compliance with Rule 1.7(d), which states:
>
> Representation is permitted under this rule only if the lawyer complies with paragraphs (a), (b), and (c), and:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law; and
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

As indicated above, WATTS GUERRA complied with paragraphs (a), (b), and (c). WATTS GUERRA meets paragraphs (1), (2) and (3) of Rule 1.7(d) as well.

WATTS GUERRA complies with paragraph (1) of Rule 1.7(d) because Mikal Watts reasonably believed and believed that he "will be able to provide competent and diligent representation to each affected client," and continues to provide that competent and diligent representation to each affected client.  Declaration of Mikal Watts, attached as Exhibit "A" hereto, p. 3, ¶5.

WATTS GUERRA complies with  paragraph (2) of Rule 1.7(d) because a law firm taking out a general credit facility "is not prohibited by law." *See* Opposition (Doc. #6801), §2, pp. 4-10 ("Courts Across the Nation Have Authorized the Use of Credit Facilities by Law Firms.").

WATTS GUERRA complies with paragraph (3) of Rule 1.7(d) because WATTS GUERRA's representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal. Neither the Motion, the joinders thereto, nor the Response take this position.

Accordingly, WATTS GUERRA complies with Rule 1.7.

Furthermore, nothing about WATTS GUERRA's credit facility has impacted the fair and just result achieved by the PG&E Amended Plan of Reorganization; consequently, even if WATTS GUERRA were wrong about Rule 1.7 – and it is not – no remedy by this Court is needed.[1]

**B. THE CASES CITED BY KANE/GOWINS DO NOT SUPPORT ITS JOINDER POSITION NOR THE RELIEF SOUGHT THEREIN**

Kane/Gowins cite a total of three cases in support of their Joinder:

(1) *In re World Trade Center Disaster Site Litigation*, 769 F.Supp.2d 650, 651 (S.D.N.Y 2011), cited in Joinder, at pp. 6-7;

(2) *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147 (D.N.J. 2005), cited in Joinder, at p. 9; and

(3) *In Re Washington Mutual*, 442 B.R. 314, 326 (Bankr. D. Del. 2011), citing *In Re Coram Health Care Corp.*, 271 B.R. 228, 234-40 (Bankr. D. Del. 2004), cited in Joinder, at p. 9.

These cases are inapposite to the situation at bar.

    1. *In Re World Trade Center* Involved a Rule 1.7(a) Conflict Between Clients Represented by The Same Law Firm

Grasping at financial straws, Kane/Gowins find only one case - *In Re World Trade Center* - that mentions a law firm's financial status in *dicta*, but ignore the holding of that case which addresses a conflict between different clients represented by the same law firm. But the facts there

---

[1] *Agway, Inc v. Wells Fargo Financial Leasing, Inc.*, 2005 WL 3806043, at *5 (N.D.N.Y., Dec. 9, 2005) (where the court's ability to reach a "fair and just result" exists, a remedy may be sought not with the Court by "through the appropriate state of federal bar disciplinary body."); *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp.2d 449, 455-56 (S.D.N.Y. 2000) (With "no real risk of tainting the trial," declining to disqualify, noting the "proper place for this controversy is in the appropriate professional disciplinary body").

differ dramatically from those here, and involved conflicts between clients proscribed by Rule 1.7(a) – a rule not being suggested by Kane/Gowins as having been violated here.

The *In Re World Trade Center* case involved more than 10,000 individuals represented by the Napoli Bern law firm suing the City of New York and its contractors for health issues arising from rescue and cleanup work after the 9-11 terrorism attacks. A proposed aggregate settlement exceeding $700 million "required at least 95 percent of the Plaintiffs eligible to settle to choose to do so. If fewer than 95 percent of these Plaintiffs opted into the SPA, it would not be effective, and the 10,000 to 11,000 cases on the Court's docket would proceed toward trial." 769 F.Supp.2d at 651. "The Plaintiffs eligible to settle were compiled on a list by Plaintiffs' Liaison Counsel, mainly Napoli Bern," a list called "the Eligible Plaintiff List" ("EPL"), which "was not filed and was considered confidential to the parties." With 10,500 Plaintiffs on the EPL, "[i]f 5 percent, approximately 525 eligible Plaintiffs, chose not to opt in," then "the settlement would not be effective." *Id*.

Napoli Bern apparently then Napoli asked Judge Hellerstein to dismiss fifty-nine (59) of their cases. David Marcus, *From "Cases" to "Litigation" to "Contract": A Comment on Stability in Civil Procedure*, 56 St. Louis U. L.J. 1231, 1261-62 & n. 197 (Summer 2012), citing 769 F. Supp. 2d at 653-54. When Judge Hellerstein "discuss[ed] the issue of these 59 Plaintiffs informally with counsel," Mr. Napoli told the Court that "he would opt out these 59 Plaintiffs – without consulting with his clients, it appeared." *In Re World Trade Center*, 769 F. Supp. 2d at 653. The Court observed that "if the 59 Plaintiffs opted out of the SPA, the ability of the Plaintiffs to attain the 95 percent threshold, and to attain the higher percentages yielding larger settlement payments, would be jeopardized." *Id*. Thereafter, "Mr. Napoli simply removed these 59 Plaintiffs from the EPL. Now, he would neither have to opt in or opt out for them. The 59 Plaintiffs thus became non-persons for purposes of the SPA." *Id*.

The Court concluded that "[a]ny way one looks at it, Napoli Bern's common representation of these 59 Plaintiffs and its thousands of other Plaintiffs put the firm in conflict," *Id*., reasoning that "[t]he interests of Napoli Bern's clients were "differing," as contemplated by Rule 1.7(a), and Napoli Bern's obligation to provide loyal and zealous advocacy for each of its clients was compromised." 769 F. Supp. 2d at 655-56. The Court recognized that "Napoli Bern took on these 59 Plaintiffs with the promise, implicit in any representation, that it would provide zealous advocacy, free from dilution by concerns about how other clients would be affected. To provide that service, Napoli Bern would have had to advocate that these 59 Plaintiffs should not be barred from suit by the ATSSSA, and that they should be able to settle." 769 F. Supp. 2d at 655. The Court observed that "some of the 59 Plaintiffs pleaded to the Court at the public meetings and in letters that they wanted—even needed—to settle. But Napoli Bern did not respond to the problem; instead, it removed these 59 Plaintiffs from the EPL." *Id*., at 656. "Noting the obvious conflict of interest" under Rule 1.7(a), "Judge Hellerstein appointed separate counsel for those disfavored clients." Marcus, *supra*, at 1262.

Significantly, the author of the law review article cited in Kane/Gowins (Joinder, p. 6, n. 1) – Nancy J. Moore, *Ethical Issues in Mass Tort Plaintiffs' Representation: Beyond the Aggregate Settlement Rule*, 81 Fordham L. Rev. 3233 (2013), in discussing *In re World Trade Center*, specifically observed that "Judge Hellerstein did not specify whether the client-lawyer conflict he was describing constituted material limitation conflicts under Rule 1.7" and concluded that financing arrangements did not create a conflict "governed by Rule 1.7," but rather, "[t]hey constitute a type of agency problem that permeates legal and other professional practice and must be controlled either by other rules (such as Rule 1.5, which governs legal fees) or by 'relaying on lawyers' professionalism and their willingness to exercise good judgment and self-restraint.' *Id*.,

p. 3244 & n.68, citing Nancy J. Moore, *Who Should Regulate Class Action Lawyers?*, 2003 U. ILL. L. REV. 1477, 1490.

    2. <u>*Baron & Budd, P.C.* Does Not Support a Request to Disallow Votes Already Cast</u>

  Judge Ferguson ordered *Baron & Budd, P.C.* ordered a law firm to disclose its co-counsel and fee-sharing relationships with other law firms. But Kane/Gowins cite it for the proposition that the Court has the authority to make disclosure orders in this case, Joinder, Doc. #6944, p. 9, but WATTS GUERRA does not contest that authority. Opposition, p. 11 ("While WATTS GUERRA does not see how Bankruptcy Rule 2019 applies to it since it represents single creditors for purpose of the rule, should the Court disagree, WATTS GUERRA is happy to voluntarily make such a disclosure upon order of the Court pursuant to Bankruptcy Rule 2019(e)(3)."). Nothing in *Baron & Budd, P.C.,* however, supports the relief sought by Kane/Gowins to not count the votes of more than 13,000 WATTS GUERRA clients who already have voted. Indeed, the third case cited by Kane/Gowins suggests otherwise.

    3. <u>*In Re Washington Mutual* Rejects the Notion to a Potential Conflict Alleged by Others Taints a Settlement or Makes it Unapprovable by the Voters or the Court</u>

  While Kane/Gowins quote *In Re Washington Mutual* as taking seriously any allegation that a reorganization "has not been proposed in good faith," that Court "reject[ed] the Plan Objectors' argument that the potential conflict taints the Global Settlement or makes it unapprovable." 432 B.R. at 327. Just as WATTS GUERRA has disclosed to its client its credit facility and the introductions that came therefrom, the Court noted there that counsel for the Debtors there did disclose the alleged conflict at issue. *Id*. Moreover, while Kane/Gowins show *In re Washington Mutual* as citing *In Re Coram Health Care Corp*., 271 B.R. 228, 234-40 (Bankr. D. Del 2004) (Joinder, Doc. #6944, p. 9), that Court distinguished *Coram Health, id*. ("This case is clearly distinguishable from the Coram case where direct evidence of an actual conflict was presented (that

- 8 -

the Debtor's CEO was being paid $1 million a year as a "consultant" by one of the largest creditors while serving as an officer of the Debtor)," just as this Court should. *See also In re Paige*, 685 F.3d 1160, 1179 (10th Cir. 2012) (distinguishing *Coram Health*, affirming "the bankruptcy court's decision because no conflict of interest or unethical action on the part of ConsumerInfo or the Trustee demonstrated a lack of good faith in this case."); *In re Unbreakable Nation Co.*, 437 B.R. 189, 200 (E.D. Pa. 2010) (distinguishing *Coram Health*, finding "that, upon a consideration of the totality of the circumstances, the Debtor has provided sufficient evidence that its auction and Plan were proposed in good faith."); *In re TCI 2 Holdings LLC*, 428 B.R. 117, 145 (D.N.J. 2010) (distinguishing *Coram Health*, noting that "the actions of the officers and directors of the debtors, and the manner in which the case has proceeded do not constitute the sort of breach of fiduciary duty that would defeat the confirmation of the AHC/Debtor Plan."); *In re Granite Broadcasting Corp.*, 369 B.R. 120, 137 (S.D.N.Y. 2007) (distinguishing *Coram Health*, noting that "[t]here is no evidence that the Plan provisions relating to Cornwell's compensation and benefits are unusual or unreasonable based on the market or other plans of reorganization.").

### C. THERE IS NO JUSTIFICATION FOR THE RELIEF SOUGHT

There is no justification for the relief sought by Kane/Gowins, neither legally under the text of Rule 1.7(b & c), nor practically, given the time constraints involved here. Instead, the Joinder by Kane/Gowins appears to be merely tactical, a bald attempt to snatch defeat from the jaws of victory by preventing an Amended Plan presently being overwhelmingly supported by the wildfire survivors from being confirmed. Disenfranchising over 13,000 individuals represented by WATTS GUERRA after they already have received a written disclosure and thereafter voted to "ACCEPT" the settlement is not appropriate.

#### 1. Rule 1.7 (b & c) Do Not Require The Order Requested

On page 10 of their Joinder, Kane/Gowins seek an order requiring a disclosure they like to be sent via a delivery method they like to clients of others who then must sign a paper and then deliver it via the mail, or see their vote not counted. There are at least five reasons not to do so.

### (a) Kane/Gowins Have Made No Showing of a Significant Risk that WATTS GUERRA's representation of its own clients will be Materially Limited here.

WATTS GUERRA's credit facility is a normal bank loan, like one that it and its predecessor entities have enjoyed for twenty-three years. It has a typical four-year term. It has flat, non-usurious interest. Its debt compounds annually, like a normal loan from a bank. It is not secured by personal guaranties of the principals of the firm. The amount of the credit facility is less than 25% of the anticipated fees calculated into the firm's borrowing base. It is not a "litigation financing" vehicle, whereby an investor funds a project, and thereby earns a percentage of the fees earned from that project. Rather, it is a facility from which WATTS GUERRA runs eight offices in multiple states, and makes large investments in many mass torts at once across the United States, including tens of thousands of Syngenta corn clients and 3M Earplug clients, thousands of Valsartan, Zantac and JUUL clients, and large exposures to clients in the Opioids litigation and the COVID-19 business interruption litigation. Declaration of Mikal Watts, attached as Exhibit "A" hereto, p. 2, ¶4. Simply put, there are none of the singular financial pressures here that were identified *in dicta* by Judge Hellerstein in *In re World Trade Center*, 769 F.Supp.2d at 652 ("deeply in debt…, secured by personal guarantees of the principals of the firm, payable at high, compounding interest rates.").

Thus, Kane/Gowins have made no showing of a significant risk that WATTS GUERRA's representation of its own clients will be materially limited here.

### (b) Kane/Gowins Have Made No Showing of an Action by WATTS GUERRA Suggesting Its Representation of its own clients has been Materially Limited here.

Unlike the underlying facts from *In re World Trade Center* where Napoli Bern's actions created an actual conflict between its clients under Rule 1.7(a), WATTS GUERRA has done everything to conscientiously represent all its clients in this case. WATTS GUERRA signed a Restructuring Support Agreement with the Equity, despite the fact that of the two assignees complained of, Apollo on the bondholder's side had a much higher investment in PG&E's debt than Centerbridge did in its stock.[2] WATTS GUERRA participated in extensive mediations led by this Court's appointed mediator, Hon. Randall Newsome, achieving successful resolutions of (1) the Restructuring Support Agreement, signed not merely by Watts, but by twelve other Consenting Fire Claimant Professionals without his firm's credit facility, and agreed to at that time by all eleven (11) members of the Official Committee of Tort Claimants; (2) negotiated agreements with the subrogation carriers to harmonize the agreement between the fire victims and PG&E with that agreement reached between PG&E and the subrogation carriers; (3) FEMA's $3.9 billion claim into a $1 billion subordinated claim; (4) the $2.4 billion claim of California's Office of Emergency Services being waived; (5) several hundred million dollars in claims by other federal agencies settled for $117 million to be paid only if additional lawsuits against third-party tree trimmers, safety consultants and former executives of PG&E insured by Directors and Officers coverage; (6) several hundred million dollars in claims by other California agencies settled for $140 million to be paid only from interest earned on the Trust corpus or by appreciation on its stock; (7) first converting a requested $200 million criminal fine sought by the Butte County District Attorney into a $4 million fine; second, working with the equity and the subrogation carriers to cause that $4 million fine to come from the subrogation carriers, so as to not risk the backstop commitment letters, and finally, after this Court's Tentative Ruling on that subject, working with the subrogation

---

[2] Kane/Gowins do not appear to understand the Apollo – aligned with the bondholders – lost a bidding war with the Equity, resulting in the TCC and Consenting Fire Claimant Professionals signing an RSA with the Equity on December 6, 2019. *See* Joinder, #6944, p. 2.

carriers to pay the fine directly; (8) working with counsel for the TCC and the Equity concerning appeals of the $200 million CPUC fine against PG&E in an effort to keep it from coming out of the Wildfire Victims' Trust; (9) working to resolve remaining issues between the TCC and PG&E concerning disclosures and shareholder rights; and (10) to finalize various documents executing the previously-negotiated settlement terms between the fire survivors and PG&E. In summary, Kane/Gowins can point to no action by WATTS GUERRA creating a conflict between its clients, as the one created in *In re World Trade Center*.

Thus, Kane/Gowins have made no showing of an action by WATTS GUERRA suggesting its representation of its own clients has been materially limited here.

### *(c) WATTS GUERRA's Post-Disclosure Statement Activities Do Not Demonstrate a Significant Risk that WATTS GUERRA's representation of its own clients will be Materially Limited here*

The singular action by WATTS GUERRA complained of by Kane/Gowins is that "he and his affiliates have conducted a massive advertising campaign directed to *all* fire claimants urging a 'yes' vote on the proposed plan." Joinder, Doc. #6944, p. 9. Of course, there are four reasons that this does nothing to support its Joinder in Abrams' Motion.

*First*, the fact that Kane/Gowins are now against a Plan they once voted for, while WATTS GUERRA supports the Plan does not bad faith make. Indeed, the RSA signed by all thirteen Consenting Fire Claimant Professionals, and unanimously approved by the TCC on December 6, 2020, called for each signatory thereof to use "reasonable efforts to advise and recommend to its existing and future clients' (who hold Fire Victim Claims) to support and vote to accept the Amended Plan." Restructuring Support Agreement (Doc. #5038-1; Case: 19-30088, Entered 12/09/19, p. 6, ¶2(g)). The fact that WATTS GUERRA is doing what it agreed to do under the RSA by supporting an Amended Plan tentatively approved by this Court for a vote is not evidence of bad faith. Instead, persistently attacking an Equity plan they twice voted to support as TCC

members smells closer to bad faith than anything WATTS GUERRA is alleged to have done, and brings back political humor from a previous era.[3]

**Second**, any solicitation made on March 31, 2020 or later is temporally appropriate, and authorized under 11 U.S.C. §1125(b).

**Third**, the intensity of WATTS GUERRA's communication with its clients through both private and public communication methods is not evidence of bad faith. As this Court itself recently has said, "once a disclosure statement is approved, parties are free to attempt to persuade voters to vote for or against a plan." Order Denying Motion for Entry of an Order Directing Supplemental Disclosure in the Form of a Letter from the TCC, Doc. #6692, p. 3, line 28 – p. 4, line 1.

**Fourth**, the content of the communications being delivered by WATTS GUERRA is evidence of its good faith. WATTS GUERRA's advertising encourages its viewers to review www.firesettlementfacts.com. The Court can review that website and decide for itself whether the information contained therein is offered in good faith. It is. The website contains transcripts of previous weekly town hall meetings were WATTS GUERRA and other lawyers answer the questions sent to them and thereby educate thousands of fire survivors at once. Sharing that information online is yet another good faith vehicle to get questions posed by fire survivors answered for all to see.

Thus, WATTS GUERRA's Post-Disclosure Statement Activities Do Not Demonstrate a Significant Risk that WATTS GUERRA's representation of its own clients will be Materially Limited here.

> ***(d) The Attempt by Kane/Gowin to Require Use of the U.S. Mail is Unreasonable in the Midst of the COVID-19 Shelter-in-Place Orders***

---

[3] https://www.cnn.com/2004/ALLPOLITICS/09/30/kerry.comment/ ("As he tried to explain that he had voted for an earlier version of the bill before opposing final passage, [Senator] Kerry said, "I actually did vote for the $87 billion before I voted against it.").

With barely fifteen (15) days left in the voting period, Kane/Gowins seek an order requiring WATTSGUERRA to send via U.S. mail a form to its clients within five (5) days of this Court ruling, which then would be signed, and presumably placed back in the mail, in an effort to have a vote already cast counted in the Plan vote tally. This is contrary to the voting procedures agreed upon in the RSA and approved by this Court, is both impractical and unreasonable, and is designed solely to disenfranchise more than 13,000 WATTS GUERRA clients who already have voted "yes."

*(1) The RSA and this Court's Order Approving Voting Procedures Permit the Electronic Solicitation and Collection of Votes*

As authorized by both the Restructure Support Agreement (ECF # 5038-1, p. 4; ¶2(a)(ii)) ("the Debtors shall… seek approval by the Bankruptcy Court of procedures to allow distribution of solicitation materials and casting of ballots for holders of Fire Victim Claims by digital means"), and by Order of the Bankruptcy Court Establishing and Approving Plan Solicitation and Voting Procedures (ECF #6340, p. 12, ¶13(a)) (Each firm selecting the Master Ballot Solicitation Method… shall … "provide the Disclosure Statement, either in hard copy of electronic format, to its Fire Victim Clients"), our firms have been soliciting and collecting votes both electronically and by mail.

*(2) Requiring the Collection of More Than 16,000 Written Waivers is Not Possible by the May 15 Voting Deadline, Further Causing Delays in the Confirmation of the Amended Plan*

The author of the Motion to which Kane/Gowins join, William Abrams, has today filed his second *Ex Parte* Motion Pursuant to B.L.R. 9006-1 Requesting Order Shortening Time for Hearing on William B. Abrams Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §§1125(B) and 1126(E) and Bankruptcy Rule 2019. (Doc. #6963). In his Declaration in Support thereof, Doc. #6964, Abrams proposes a hearing on his motion on May 6, 2020 (Doc. #6964, p. 4, ¶4), which is nine days before the close of voting on May 15, 2020.

Kane/Gowins then request that on that date the Court to order that "Respondents shall mail, send by U.S. mail or deliver each of their clients … approved disclosure along with a form by which clients may, at their discretion, waive the conflict in writing," but "clients who have not executed the written waiver required by the Order shall be designated as not being in good faith and shall not be counted in the Plan vote tally."

Preparation of 16,000 pieces of mail takes time and labor. That labor presently is "sheltered in place" under COVID-19 orders. All 111 of WATTS GUERRA's employees presently are working at home, without access to printers, paper and envelope supplies, stamps or pre-paid stamping machines. Declaration of Mikal Watts, attached as Exhibit "A" hereto, p. 3, ¶6.

Moreover, assuming such mail could be prepared and 16,000 pieces could be delivered to the U.S. Postal Service as Kane/Gowins desire, significant delays likely await. *See* https://www.macombdaily.com/news/coronavirus/covid-19-causing-some-postal-service-delays/article_1669e050-80bf-11ea-b84f-475aa3fb01e7.html ("mail delivery has been sporadic"). The U.S. Postal Service has put out a statement acknowledging these delays: "Some customers may experience a lighter volume of mail and a temporary delay in package delivery as we are flexing our available resources to match the workload created by the impacts of the ongoing Coronavirus (COVID-19) pandemic." *Id*.

As a result, the waiver forms desired by Kane/Gowins will never be back in time to be "counted in the Plan vote tally." (Joinder, Doc. #6944, p. 10). With respect to attorney disqualification motions when there is little risk of a tainted solution, an alleged appearance of impropriety is "simply too slender a reed on which to rest a disqualification order except in the rarest of cases." *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979). Likewise, dog whistles concerning conflicts that do not exist are not justifications for disenfranchising thousands of voters.

The relief sought by this Motion and Joinder also implicates the Motion for Estimation scheduled for May 21, the planned CPUC meeting scheduled for the same day, briefing on objections to the confirmation of the Plan, perhaps the Confirmation Hearing itself, and even remotely, the likelihood that PG&E exits bankruptcy by A.B. 1054's June 30, 2020 deadline.

Thus, the attempt by Kane/Gowin to require use of the U.S. mail is unreasonable in the midst of the COVID-19 shelter-in-place orders. Like in *Jones v. Parmley*, 2015 WL 13821160, at *6 (N.D.N.Y., Jan. 7, 2015), the relief requested here "would clearly force a stay of the matter for an unacceptable amount of time" and "would harm the Plaintiffs for whom no good cause has been shown; it would harm the judicial system; and it would harm the Plaintiffs who continue to be represented" by counsel.

2. <u>The Motion and the Joinder Are Nothing More than a Tactical Effort to Undo the Will of the Overwhelming Percentage of Fire Survivors Who Favor This Plan</u>

Over and above the obvious deficiencies in their standing to insist on a communication to another lawyer's clients, Kane/Gowins really seek a process designed to cause the votes of WATTS GUERRA's clients to not count. Why? Because they know from attending or reading from the transcripts of publicly-available WATTS GUERRA weekly town hall meetings. The fact that the overwhelming majority of WATTS GUERRA's clients already have voted to "ACCEPT" has been communicated, and thus, is now publicly known. As of 2:30 p.m. PDT on April 27, 2020, 13,329 Watts Guerra clients have voted to "ACCEPT," while 148 have voted to "REJECT," a rate of acceptance exceeding 98.9%. *See* Doc. #345; Case No. 19-cv-05257-JD; filed April 28, 2020. I am aware of vote tallies from other firms with large numbers of cases, including (1) Singleton Law Firm, (2) Frantz Law Group, APLC, (3) Bridgford, Gleason & Artinian, (4) Robins Cloud LLP; and (5) another firm affiliated with the Singleton Law Firm's effort in this case. As of 2:30 p.m. PDT on April 27, 2020, These firms collectively had seen from their clients 20,146 "ACCEPT"

votes and 253 "REJECT" votes, for a combined acceptance rate of 98.76%. Declaration of Mikal Watts, attached as Exhibit "A" hereto, pp. 3-4, ¶8.

While Abrams and Kane/Gowins have every right to file the motions they like, this Court also has the right to see the Motion and the Joinders to it, as the tactical maneuvers they are. *See Agway, Inc v. Wells Fargo Financial Leasing, Inc.*, 2005 WL 3806043, at *5 (N.D.N.Y., Dec. 9, 2005) (Court compelled to suspect that the filing party ""pursued this motion solely to obtain a tactical advantage."). The Motion and the Joinder are nothing more than a tactical effort to undo the will of the overwhelming percentage of fire survivors who favor this plan.

## II.  REPLY TO ABRAMS' *EX PARTE* MOTION

Abrams' most recent *Ex Parte* Motion for Order Shortening Time (Doc. #6963) supported by his Declaration in Support of the same (Doc. #6964) still does not comply with B.L.R. 9006-1(4). *See* Declaration of Mikal Watts, attached as Exhibit "A" hereto, p. 4, ¶9. The subject matter of this Motion has been shopped first by the Movant and others to the *San Francisco Chronicle*, *Bloomberg News*, *KQED*, *The Wall Street Journal* and *The New York Times*. Declaration of Mikal Watts, attached as Exhibit "A" hereto, p. 3, ¶7. This Court should take the matter under submission and deny the Motion, the joinders thereto, and the second *Ex Parte* Motion without wasting the Court's time with a live hearing. This way, whatever earned media Movant has achieved can be confined to what the papers say and the fire survivors can proceed voting on the plan for which this Court already has ordered them provided a neutral Disclosure Statement.

Respectfully submitted,

Dated: April 28, 2020         WATTS GUERRA LLP

By:  */s/ Mikal C. Watts*
Mikal C. Watts
Paige Boldt

*Attorney for Numerous Wild Fire Claimants*