# Labaton Sucharow

**Thomas A. Dubbs**
Partner
212 907 0871  direct
212 907 0700  main
212 883 7071  fax
tdubbs@labaton.com

New York Office
140 Broadway
New York, NY 10005

 **Lowenstein Sandler**

**Michael S. Etkin**
Partner
973 597 2312  direct
973 597 2313  fax
metkin@lowenstein.com

New Jersey Office
One Lowenstein Drive
Roseland, NJ 07068

April 29, 2020

Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

Re:    *In re PG&E Corporation and Pacific Gas and Electric Co.* (the "Debtors") Case No. 19-30088 (DM) (Jointly Administered)

Dear Judge Montali:

We are counsel to the Public Employees Retirement Association of New Mexico, which is the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Ligation**"), pending in the U.S. District Court for the Northern District of California, on behalf of itself and the proposed class it represents in the Securities Litigation, and collectively, with certain Securities Act plaintiffs, the "**Securities Plaintiffs**".

Now that the April 16, 2020 extended bar date set by the Court (the "**Extended Bar Date**") pursuant to its *Order (I) Denying Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim and (II) Extending Bar Date for Certain Holders of Securities Claims for Rescission or Damage*, dated February 27, 2020 (Dkt. No.5943) has passed, we are writing to request that the Court schedule a telephonic status conference rather than engaging in any formal motion practice, being mindful of the Court's recent admonitions concerning the number of pleadings filed on the docket and the amount of paper that such motion practice has generated. Specifically, we suggest that such a conference is currently the best way to deal with issues that the Court previously identified as they relate to holders of Rescission and Damage Claims that are currently classified as Class 9A HoldCo Subordinated Debt Claims, Class 10B Utility Subordinated Debt Claims, and Class 10A-II HoldCo



Rescission or Damage Claims (collectively, the "**Rescission or Damage Claimants**") pursuant to the Debtors' proposed Plan of Reorganization (the "**Plan**"), as well as other related issues.

According to the Debtors' claims agent Prime Clerk's website listing the registry of filed claims (the "**Claims Registry**"), as of April 26, 2020, more than 4,400 proofs of claim were filed by Rescission or Damage Claimants, in the aggregate amount of well over $6.0 billion.[1]

The issues we would like to address with Your Honor include:

(i) the Debtors' intentions regarding the proposed schedule and process for soliciting votes to accept or reject the Plan from holders of Class 10A-II Rescission and Damage Claims who:

    a. have filed a proof of claim; or

    b. were not timely served (or served at all) with notice of the Extended Bar Date and the accompanying proof of claim form (collectively, the "**Extended Bar Date Notice**");

(ii) the ability of Rescission or Damage Claimants to take a position on the Disclosure Statement and the Plan since most have not received timely notice, or notice at all, with respect to their right to do so;

(iii) notice issues that have recently been identified by several individual *pro se* Rescission or Damage Claimants and acknowledged in the Debtors' omnibus response thereto, and which are further evidenced by supplemental declarations of service filed by the Debtors; and

(iv) a process for dealing with the resolution of the thousands of proofs of claim filed by Rescission or Damage Claimants.

In late February 2020, when setting the confirmation procedures schedule, the Court noted ". . . the fact that there is insufficient time to provide notice [to Rescission or Damage Claimants] of the

---

[1] The number of filed proofs of claim listed on Prime Clerk's website is substantially understated because the total does not account for "consolidated" or "aggregated" claims, which were filed under the cover of a single proof of claim form by the authorized agents of a number of Rescission or Damage Claimants. For instance, one agent, Chicago Clearing Corporation, submitted two consolidated claims (one against PG&E and one against Pacific Gas & Electric), each covering 2000 individual claims. Moreover, some institutional claimants submitted claims covering numerous individual accounts. Similarly, the actual dollar amount is significantly higher because the reflected amount does not include Rescission or Damage Claimants who filed their claims in an unliquidated amount.



deadline to object to the adequacy of the Disclosure Statement is a problem of concern to the court that must be dealt with in the coming weeks."[2]  Similarly, at the March 10, 2020 hearing to consider approval of the Disclosure Statement, the Securities Plaintiffs raised concerns that there would be insufficient time for the Debtors to provide notice and to mail ballots or notice of non-voting status to all Rescission or Damage Claimants, given the April 16 Extended Bar Date and the May 15th deadline by which completed ballots must be returned and confirmation objections filed.[3]

**Solicitation and Confirmation Objection Issues**

Class 10A-II Rescission or Damage Claimants are impaired and entitled to vote to accept or reject the Plan.  The deadline for parties to submit their completed ballots and to file objections to the Plan is May 15, 2020 at 4:00 p.m. (PT).  Given this fast approaching deadline, we believe it would be productive for all parties to obtain guidance from the Court, as the Court contemplated, concerning the proposed process for ensuring that all Rescission or Damage Claimants receive copies of the Standard Impaired Debt Ballot, or, as the case may be, notice of non-voting status, and the notice of the confirmation hearing, in sufficient time to allow such claimants to complete and return their ballots and/or prepare and file an objection to the Plan and Disclosure Statement by the May 15, 2020 deadline.

In addition, we seek the Court's guidance on how best to address issues, as further discussed below, where known Rescission or Damage Claimants either received untimely Extended Bar Date Notices or, now by the Debtors' own admission, have not received any notice at all.  We are concerned that a significant number of these known creditors, through no fault of their own, have been and will be completely excluded from the Plan confirmation process.

**Extended Bar Date Notice Issues**

Based upon recent communications and pleadings filed with the Court, it has been confirmed that a significant number of Rescission or Damage Claimants did not receive the Extended Bar Date Notice until just days before, or even *after* the Extended Bar Date had passed.  In fact, the Debtors recently conceded that an unknown number of Rescission or Damage Claimants were *not provided with any notice.*

---

[2]  *See Court's Intentions re Proposed Order,* dated February 24, 2020 (Dkt. No. 5888) at p. 4.

[3]  *See* Transcript of March 10, 2020, Disclosure Statement Hearing at p. 155 ("THE COURT: . . .So on April 17th I will look to Mr. Karotkin and say, do you know how many people you need to solicit, and how are you going to solicit them?  And he'll answer, and you'll argue with me, and it'll happen.  I mean, that was the whole point that [sic] why I decided to go with the claims thing is that we can make it happen.  We're not dealing with very difficult decision making.  And if somebody file's a claim, I would think that's the most important thing, not how he or she votes.").


Specifically, the following documents on the docket confirm that notice of the Extended Bar Date was insufficient to allow all Rescission or Damage Claimants to meet the April 16 deadline:

1. *Certificate of Service* by Christina Pullo, dated April 13, 2020 (Dkt. No. 6749), stating that the Extended Bar Date Notice was sent ***via first class mail*** on ***Thursday, April 9, 2020***, to a list of approximately 48,000 recipients identified only as "Beneficial Holder" with "Address on File".

   a. Because service was made by first class mail prior to a weekend, it is likely that the recipients did not receive the Extended Bar Date Notice until Tuesday, April 14, at the earliest.

2. Similarly, on April 15, 2020, a *Certificate of Service* prepared by Christina Pullo, dated April 15, 2020 (Dkt. No. 6776) was filed, stating that the Extended Bar Date Notice was sent ***via first class mail*** on **Tuesday, April 14, 2020**, to a list of approximately 2,340 recipients referenced as "Beneficial Holder" with "Address on File".

   a. Because service was made by first class mail on April 14, it is nearly certain that none of these Rescission and Damage Claimants received the Extended Bar Date Notice until after the Extended Bar Date.

   b. The Certificate of Service also states that the Extended Bar Date Notice was served via first class mail on "Broadridge" on April 13, 2020. According to the Debtors, Broadridge Financial Solutions is the primary mailing agent contracted by at least 90% of nominees to distribute materials to beneficial holders on behalf of such nominees.

3. Four *pro se* motions to further enlarge the Extended Bar Date have been filed to date. *See* Dkt. No. 6888 at ¶ 6 (Extended Bar Date Notice received April 16, 2020); Dkt. No. 6898 at p. 1 (Extended Bar Date Notice received April 17, 2020); Dkt. No. 6899 at p. 1 (mail segregated and delayed due to Covid-19 concerns); Dkt. No. 6900 at p.1 (Extended Bar Date Notice received April 17, 2020).

The Debtors filed their *Omnibus Response to Motion to Enlarge Time to File Rescission or Damage Claims Proof of Claim Forms* (Dkt. No. 6934) (the "**Omnibus Reply**") on April 24, 2020. Through the Omnibus Reply, the Debtors squarely acknowledge that Prime Clerk did not even begin to mail out copies of the Extended Bar Date Notice for over 100,000 claimants until well into April. *Id.* at ¶ 8. The Debtors also concede that certain nominees requested Extended Bar Date Notices, for an undisclosed number of claimants, which the Debtors directed Prime Clerk *not to mail. Id.* at fn. 3. The Court, in its Docket Text Order dated April 27, 2020, has properly resolved the issue with respect to these individuals who formally filed correspondence on the docket, but the Text Order


does not address the tens of thousands of other claimants who, through no fault of their own, may be unaware of their rights and the steps to take to have their claims considered as timely filed, even if filed after the Extended Bar Date.

Also, the Debtors' suggested approach offers no proposed solution for how to address the rights of an undisclosed significant number of claimants where their agents requested Extended Bar Date Notices, but the Debtors instructed Prime Clerk not to provide them. These are known creditors, entitled to timely and sufficient notice, who the Debtors have now conceded received no notice at all.

While we reserve all rights to fully address these issues as necessary, it is telling that the Debtors blame any and all shortcomings in executing the noticing program, which the Debtors proposed, upon certain unnamed "Nominees". *See id.* at ¶¶ 7-8. The matter of who is to blame is not really the issue. The admitted fact is that an undisclosed number of *known creditors* did not receive actual notice of the Extended Bar Date; and over 100,000 creditors did not receive the Extended Bar Date Notice until just days before, or after, the bar date had passed. In fact, according to the Debtors' own statements, it appears that nearly one third of all known Rescission or Damage Claimants were not mailed the Extended Bar Date Notice until a week or less before the Extended Bar Date.

The Extended Bar Date Notice program was implemented with a tight timeframe under any circumstances, but obviously and unfortunately further complicated by what is likely the worst national health and economic crisis in our lifetime.

With the benefit of hindsight, we now know that 4,400 proofs of claim have been filed by Rescission or Damage Claimants, totaling more than $6.0 billion. Given the sheer volume and amount of these claims now asserted, any attempt to reconcile the thousands of proofs of claim on an individualized basis is at best problematic. We believe that the results of the Extended Bar Date Notice program warrant the collective adjudication of claims and would like to discuss, and receive the Court's guidance, with respect establishing an efficient and uniform process for reconciling such claims. The implementation of a post-confirmation consolidated procedure appears to be particularly appropriate, as we anticipate the Debtors will likely be taking a uniform position with respect to the merits of the Rescission or Damage Claims.

Accordingly, we respectfully request that the Court schedule a telephonic conference at the Court's earliest convenience to address the issues raised above as we move forward into the next phase of the Debtors' Chapter 11 cases.

**Labaton Sucharow**



Respectfully submitted,

*/s/ Thomas A. Dubbs*

Thomas A. Dubbs


*/s/ Michael Etkin*

Michael Etkin


*/s/ Randy Michelson*

Randy Michelson