# Exhibit 6

Case: 19-30088    Doc# 7069-6    Filed: 05/05/20    Entered: 05/05/20 14:05:28    Page 1 of 5

Inform. Inspire. Involve.    Always free. Subscribe

News    Election 2020    Politics    Education    Housing    Immigration    Criminal Justice    Silico...

THE CALIFORNIA REPORT

# As PG&E Fire Survivors Near Deadline to Vote on Settlement, Some Still Don't Have Ballots

By Lily Jamali    May 4



The PG&E logo is displayed on a sign in front of the PG&E Service Center on Jan. 15, 2019, in San Rafael. *(Justin Sullivan/Getty Images)*

With less than two weeks to go in a six-week vote by Northern California fire victims on a multibillion-dollar settlement deal with PG&E, some are still waiting to receive ballots.

"I haven't received anything, and my friend in Paradise has not received one either," said Camp Fire survivor Vada Bouffard, who lost her home in Paradise and now lives in Knoxville, Tennessee.

Carolyn Acosta finds herself in the same situation. She got an email message from the court on April 3 informing her that she would be receiving a customized ballot in the mail.

"Here is it, May, and no ballot," said Acosta, who relocated to Nampa, Idaho, from the Butte County community of Magalia after her rented home was damaged in the Camp Fire. "There may be thousands of others who haven't gotten it."

Case: 19-30088    Doc# 7069-6    Filed: 05/05/20    Entered: 05/05/20 14:05:28    Page 2 of 5

Voting began on April 1 for wildfire victims with claims against PG&E — a group comprised of about 70,000 people. For PG&E's bankruptcy plan to move forward, two-thirds of those who vote on the plan must must approve it. Voting ends on May 15 as the utility races to exit bankruptcy by June 30 so it can tap a state wildfire insurance fund.

Sponsored

personal CAPITAL    Learn More

Neither Bouffard nor Acosta are represented by attorneys. They, and as many as 15,000 other PG&E fire survivors who don't have legal representation in the case, are relying on PG&E and legal services contractor Prime Clerk to receive the settlement and voting information.

After KQED first reported on potential ballot delays last week, lawyer and Nuns Fire survivor Helen Sedwick started checking in with fellow fire victims.

She says about 50 fire survivors have emailed or messaged her to say that they have not received voting materials by mail.

"I would say something has gone terribly wrong in the ballot distribution process that cannot be ignored," Sedwick said. "PG&E or the attorneys must reach out to claimants with this information. Claimants should not be expected to go looking for the materials."

The problem is not limited to victims without lawyers.

Pleasant Hill-based law firm Rains Lucia Stern, which represents about 50 fire victims, told the bankruptcy court in an affidavit filed April 30 that the coronavirus pandemic caused a weeks-long slowdown in the process of getting voting materials to clients.

Attorney Joseph Lucia wrote that Prime Clerk alerted his office in mid-April "that COVID-19 had caused delays in mail arriving in a timely manner." In response, he said his firm electronically sent solicitation packages with ballots to clients starting on April 21. It wasn't until last week, Lucia wrote, that the hard-copy solicitation documents started to show up in the mail at the firm.

Prime Clerk did not respond to KQED's request for comment.

A spokesperson for PG&E did not directly address questions about the delay, but said, "We continue to work diligently to obtain approval for our plan of reorganization by the Bankruptcy Court as soon as possible, so victims will be paid fairly and quickly."

The involvement of Wall Street interests poised to reap a windfall from the bankruptcy has left survivors like Acosta on edge. A group of mass tort lawyers has also been pushing for approval of the settlement, securing thousands of "yes" votes by text and other electronic methods. Voting

online may end up being the only option, even for those wary of the integrity of the voting process.

"Why should I have to do that? They said they were going to mail it. How many others have not received theirs?" Acosta asked, noting that some fire survivors cannot afford reliable internet and cellular service or do not have easy access because of where they live. "You wonder who is actually overseeing the mailing."

Jared Ellias, a professor of bankruptcy law at UC Hastings, said the responsibility of ensuring claimants receive their solicitation packages rests with PG&E and Prime Clerk, the claims agent. But given the number of people making claims in the case, he said it's not surprising that there might be problems reaching them all.

"This is a big, complicated, messy process and it was never going to be 100 percent perfect," Ellias said. "And it's up to the bankruptcy judge to make sure that it's close enough so we can all feel confident that justice was done when it comes to the outcome of this voting process."

## Voting on a Plan That's 'Not Completed'

Bouffard, the fire refugee now living in Tennessee, says that even if she had her ballot, it's still not completely clear what survivors are voting on.

Lawyers for the official committee that represents survivors in the case said last week that even as the vote takes place, they are in mediation with PG&E and other stakeholders over key terms of the deal, like when and how much the utility will pay into the survivors' trust.

"Why are we being asked to vote on something that's not completed? That just seems crazy," Bouffard said.

On paper, the settlement is worth $13.5 billion, with PG&E paying half in cash and half as PG&E stock. But with the COVID-19 pandemic roiling financial markets, the stock component may be worth less than what PG&E promised, say lawyers for the official committee of fire survivors.

"This case is not over," wrote committee attorney Robert Julian Wednesday in a brief to U.S. District Judge James Donato, who is charged with estimating the total amount of PG&E's liabilities.

In hopes of preventing "current fire victims from bearing the financial risk of a future wildfire," Julian wrote, the committee is seeking guarantees that PG&E will not withhold the first round of payment to the victims' trust until after the coming fire season.

In early April, Julian told U.S. Bankruptcy Judge Dennis Montali that when the committee agreed to the settlement, it believed PG&E would pay the cash portion by Aug. 29, before the height of the 2020 fire season.

**RELATED COVERAGE**

**PG&E to Remove Most of Its Board, But Plan Still Falls Short of Governor's Demands**

**PG&E 'Cheated on Maintenance,' Judge Says — Then Orders New Probation Conditions**

**Wall Street Ties of Lawyer for PG&E Fire Victims Have Some Survivors Querying Settlement Vote**

PG&E bankruptcy attorney Steven Karotkin told Montali PG&E never offered a concrete commitment to pay the cash by that date.

"We will make the initial funding to the Fire Victim Trust upon our emergence from Chapter 11," a PG&E spokesperson said this week. "We are on track to have our plan confirmed by June 30, 2020, and are currently targeting our emergence from Chapter 11 on or before August 29, 2020."

Some fire survivors are laying blame not just at the feet of PG&E, but on the survivors' committee, which saw three fire victims resign in protest in late March and early April. Camp Fire survivor Kirk Trostle, who was the first to step down, called the settlement "deeply flawed and very risky for all fire victims" in his resignation letter.

After those resignations, the committee started publicly pushing for the guarantees from PG&E.

"The [committee] is finally waking up to how they were outlawyered by PG&E and Wall Street," said Sedwick.

# KQED
# Stay in touch. Sign up for our daily newsletter.

Enter your email    Sign Up

## KQED
## Local. Trusted. Essential.
### Donate Now

Copyright © 2020 KQED Inc. All Rights Reserved.    Terms of Service    Privacy Policy    Inside the Reporting Process    Contact Us

CORONAVIRUS